# **EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CV-235-FL

| | |
|---|---|
| JANE DOE (L.M.), an individual, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| 42 HOTEL RALEIGH, LLC d/b/a Hilton ) | |
| Hampton Inn and HILTON DOMESTIC ) | |
| OPERATING COMPANY, INC., ) | |
| ) | |
| Defendants. ) | |

This matter is before the court upon defendants' motions to dismiss plaintiff's second amended complaint. (DE 25, 27). The motions have been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, defendants' motions are granted.

### STATEMENT OF THE CASE

Plaintiff, an alleged victim of sex trafficking, commenced suit by filing complaint in this court April 28, 2023. (Compl. (DE 1)). Plaintiff has since amended her complaint twice, once May 17, 2023, and again July 17, 2023. (Am. Compl. (DE 6); Second Am. Compl. (DE 20) ("Compl.")).[1] Plaintiff asserts a single claim under the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595 (the "TVPRA"), under the theory that defendants are liable both as "perpetrators" and "beneficiaries" of sex trafficking. (Compl. ¶¶ 70-71). Plaintiff seeks

---

[1] Hereinafter, all references in this order to the "complaint" refer to the operative second amended complaint at docket entry (DE) 20.

damages and costs, and the imposition of a constructive trust on defendants to sequester any benefits plaintiff alleges they wrongfully received through their conduct. (See Compl. ¶¶ 80–87).

Defendants filed the instant motions to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff responded in opposition and defendants replied. Scheduling conference activities have been stayed pending ruling on the instant motions.

## STATEMENT OF FACTS

The facts alleged in the complaint are as follows. Defendant 42 Hotel Raleigh, LLC (hereinafter "42 Hotel") operates a Hampton Inn in Raleigh, North Carolina (hereinafter the "hotel"), as a franchisee of defendant Hilton Domestic Operating Company, Inc. (hereinafter "Hilton"). (Compl. ¶ 3). Plaintiff is a natural person identified in the complaint by the initials "L.M.," who was "repeatedly trafficked for sex at [the hotel][.]" (Compl. ¶¶ 7, 20).

L.M.'s trafficker knew the staff at the hotel, who called him by "his pimp name, not his legal name." (Id. ¶ 21). The hotel rooms in which L.M. were trafficked were frequently paid for in cash. (Id. ¶ 22). Men who were not guests frequently entered and left L.M.'s room at unusual hours, and were present for only brief periods of time. (See id. ¶ 23). Hotel staff observed this activity. (See id.). Hotel staff further observed L.M.'s trafficker standing in the hallway or in the hotel's parking lot. (Id. ¶ 24). Finally, defendants continued to rent rooms to L.M.'s trafficker after observing these "apparent warning signs." (Id. ¶ 57).[2]

Defendant Hilton has enacted and purportedly enforced policies designed to identify and prevent sex trafficking, which defendant 42 Hotel allegedly failed to properly implement. (See id. ¶ 25). As a Hilton franchisee, 42 Hotel was required to comply with "robust reporting

---

[2] Some portions of the complaint reference a singular "trafficker," while others reference "traffickers" in the plural. (See Compl. ¶¶ 21, 57). For the sake of consistency, the court will refer to "trafficker" in the singular throughout this order.

2

requirements" about crime on its premises, and with a second reporting policy on sex trafficking in particular. (See id. ¶¶ 29–31, 37, 41(g)). Hilton closely enforced these policies, regularly advised 42 Hotel on compliance, and had the right to impose fees or to cancel the franchise agreement for failure to comply. (See id. ¶¶ 35–36, 42–44). Plaintiff alleges that defendants failed to adequately train and educate their staff on these policies, including on how to identify and prevent sex trafficking. (See id. ¶¶ 47–56).

Defendant 42 Hotel allegedly benefitted financially from L.M.'s trafficking through room rental fees. (Id. ¶ 63). Hilton allegedly benefited financially from L.M.'s trafficking by receiving a portion of 42 Hotel's room rental fees as franchisor. (Id. ¶ 64).

**COURT'S DISCUSSION**

A.   Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).[3] "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

---

[3]   Throughout this order, internal quotation marks and citations are omitted unless otherwise specified.

B.  Analysis

Defendants argue that plaintiff's complaint must be dismissed because, among other reasons, it fails to establish that plaintiff was a victim of sex trafficking within the meaning of the pertinent statutes. Defendants further argue for dismissal on grounds that they did not participate in a sex trafficking enterprise as defined by the statutes, and that they lacked actual or constructive knowledge of plaintiff's trafficking. The court agrees dismissal is required on these grounds.[4]

1.  Applicable Law

The TVPRA creates a civil cause of action for "a victim of a violation of this chapter," which includes various provisions prohibiting slavery, forced labor and, as relevant here, "sex trafficking," under 18 U.S.C. § 1591, against "the perpetrator [or] whoever knowingly benefits . . . from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a). In turn, § 1591 criminalizes "sex trafficking" by means of "force, threats of force, fraud, coercion . . . or any combination of such means,"[5] and it provides criminal penalties for "[w]hoever knowingly" "benefits . . . from participation in a venture which has engaged" in sex trafficking. 18 U.S.C. §§ 1591(a), (e)(2); see

---

[4] Defendants also argue that dismissal of the complaint is warranted on statute of limitations grounds. The court disagrees. The TVPRA sets a 10-year statute of limitations. 18 U.S.C. § 1595(c). Plaintiff alleges that she was trafficked "from December 2012 to April 2013," and she filed her complaint April 28, 2023. (Compl. ¶ 20). Defendants therefore point out that plaintiff's claim is untimely insofar as it rests on any conduct occurring before April 28, 2013. However, defendants' conduct remained actionable if it took place April 28, 29, or 30, 2013. Because the complaint does not specify on which exact days the alleged conduct occurred, the facts necessary to this affirmative defense do not clearly appear "on the face of the complaint." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). The court therefore declines to grant defendants' motions on this basis.

[5] The term "coercion" in this statute means "(A) threats of serious harm to or physical restraint against any person; (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm or physical restraint against any person; or (C) the abuse or threatened abuse of law or the legal process." 18 U.S.C. § 1591(e)(2). An individual can violate § 1591 without using force, threats, fraud, or coercion if the victim is a minor. See id. § 1591(a); see also id. § 1591 ("[s]ex trafficking of children or by force, fraud, or coercion") (emphasis added). However, plaintiff does not allege that she was a minor at the time of her trafficking.

4

Roe v. Howard, 917 F.3d 229, 244 (4th Cir. 2019) (noting "[s]ection 1591 prohibit[s] sex trafficking.").

The United States Court of Appeals for the Fourth Circuit has not had occasion to interpret the requirements for civil liability against a beneficiary of sex trafficking under § 1595, and only one district court case from this circuit has substantively examined these issues. See A.D. v. Wyndham Hotels & Resorts, Inc., No. 4:19cv120, 2020 WL 8674205 (E.D. Va. July 22, 2020); cf. Roe, 917 F.3d at 244 (holding that the TVPRA applies extraterritorially for purposes of perpetrator liability, but not addressing claim elements or beneficiary liability); Doe v. Natraj Enters., Inc., No. 2:21-cv-1565, 2021 WL 3190386, at *2–4 (D.S.C. July 28, 2021) (examining motion to strike part of TVPRA complaint but not addressing substance of claims).

However, the Eleventh Circuit, in Doe #1 v. Red Roof Inns, Inc., 21 F.4th 714 (11th Cir. 2021) set out four elements for civil liability under § 1595: that the defendant "(1) knowingly benefited (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that the undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." Id. at 719.

Other circuit and district courts, including outside of the Eleventh Circuit, have largely followed or are consistent with the Doe #1 court's framing. See, e.g., G.G. v. Salesforce.com, Inc., 76 F.4th 544, 553 (7th Cir. 2023) (posing elements in materially the same way); A.D., 2020 WL 8674205, at *2 (same); A.B. v. Hilton Worldwide Holdings Inc., 484 F. Supp. 3d 921, 935–39 (D. Or. 2020) (same) [hereinafter "A.B. v. Hilton"]; M.A. v. Wyndham Hotels & Resorts, Inc.,

425 F. Supp. 3d 959, 964 (S.D. Ohio 2019) (same).[6]  These out-of-circuit cases are not binding here, but the court relies on them as persuasive authority in resolving the instant motions.

      2.      Failure to Allege Sex Trafficking Within Meaning of Statutes

With this framework in mind, the court first addresses defendants' arguments that plaintiff does not allege that she was trafficked within the meaning of the statutes at issue here, implicating the third element as set forth in Doe #1.  (See Def. Hilton Reply (DE 34) 5; Def. Hotel 42 Reply (DE 33) 6–7).

Plaintiff's complaint invokes 18 U.S.C. §§ 1590(a) and 1591(a)(2) as the pertinent underlying criminal conduct.  (See Compl. ¶ 70).  However, the complaint does not include any factual allegations that any person "trafficked" plaintiff or any other person in violation of § 1590, which prohibits "trafficking with respect to . . . slavery," or that any person trafficked her in violation of § 1591(a)(2) which, as noted above, requires "force, threats of force, fraud, [or] coercion[.]"  Plaintiff's complaint merely states in conclusory terms that she was "trafficked[.]" (See Compl. ¶¶ 3, 20, 24). These statements are "labels and conclusions" that do not meet pleading standards.  See, e.g., Iqbal, 556 U.S. at 677–78.

Plaintiff alleges she was "was forced to have repeated visits from sex buyers" while her trafficker waited elsewhere.  (Compl. ¶ 24).  However, this allegation suffers from the same infirmity because it provides no facts from which any inference of force, threats, fraud, or coercion could be drawn, besides its conclusory invocation of force.  See Iqbal, 556 U.S. at 677–78.

---

[6]     Some courts have disagreed with Doe #1's holding that the latter two elements are victim-specific. See, e.g., G.G., 76 F.4th at 556–58 (discussing this disagreement at length).  This distinction does not ultimately affect the court's analysis and resolution of the motions, because the court concludes herein that defendants had no actual or constructive knowledge of any trafficking in violation of § 1591. The court thus does not address whether such knowledge is sufficient or whether they must have had further knowledge of trafficking of L.M. individually, as the Eleventh Circuit has held.  Accordingly, the court expresses no view on this circuit split.

In contrast, many courts that have upheld TVPRA claims have noted the presence of non-conclusory allegations of some form of violence or fraud.  See, e.g., A.B. v. Marriott Int'l, Inc., 455 F. Supp. 3d 171, 192–94 (E.D. Pa. 2020) [hereinafter "A.B. v. Marriott E.D. Pa."] (upholding TVPRA allegations that victim exhibited visible signs of injury and staff heard "constant and loud" assaults by trafficker upon victim); T.P. v. Wyndham Hotels & Resorts, Inc., No. 2:21-cv-04933, 2022 WL 17363234, at *8 (S.D. Ohio Dec. 1, 2022) (upholding TVPRA claim when plaintiff alleged visible injuries and that her trafficker openly beat her in front of hotel staff); Lundstrom v. Holiday Hosp. Franchising, LLC, No. 1:22-cv-056, 2023 WL 4424725, at *8 n.3 (D.N.D. May 22, 2023); K.B. v. Inter-Continental Hotels Corp., No. 19-cv-1213, 2020 WL 8674188, at *5–6 (D.N.H. Sept. 28, 2020) (extensive visible injuries, and a severe act of violence by trafficker against victim that caused damage to furniture which hotel noticed); A.B. v. Extended Stay Am., Inc., No. 3:22-cv-05939, 2023 WL 5951390, at *6 (W.D. Wash. Sept. 13 2023) [hereinafter "A.B. v. Extended Stay"] (collecting cases in which the plaintiff successfully pleaded TVPRA claims through non-conclusory allegations of violence by trafficker(s)).

Plaintiff's conclusory statement that she exhibited "signs of trafficking" fares no better, because it lacks any supporting facts.  (Compl. ¶ 25); see, e.g., Doe #9 v. Wyndham Hotels & Resorts, Inc., No. 4:19-cv-5016, 2021 WL 1186333, at *2 (W.D. Tex. Mar. 30, 2021) (rejecting argument that similar conclusory allegation supported TVPRA claim).

Defendants' motions thus draw a crucial distinction: that prostitution and sex trafficking by force or fraud are not coterminous.  See, e.g., A.B. v. Hilton, 484 F. Supp. 3d 921, 940–41 (discussing this principle in detail, and dismissing TVPRA claim against hotel at pleading stage on precisely this ground); A.B. v. Extended Stay, 2023 WL 5951390, at *6 (same); Lundstrom v.

Choice Hotels Int'l, Inc., No. 21-cv-619, 2021 WL 5579117, at *8 (D. Colo. Nov. 30, 2021) (same).

Plaintiff's cited cases in fact support this distinction, because each case that sustained a TVPRA claim through the pleading stage involved non-conclusory allegations from which inferences of force or fraud could be drawn. See, e.g., M.A., 425 F. Supp. 3d at 967 (allegation that hotel staff ignored "desperate pleas and screams for help" and defendant's open violence against victim); J.C. v. I Shri Khodiyar, LLC, 624 F. Supp. 3d 1307, 1319–20 (N.D. Ga. 2022) (victim visibly injured and emaciated); J.G. v. Northbrook Indus., Inc., 619 F. Supp. 3d 1228, 1238–39 (N.D. Ga. 2022) (visible injuries and physical "deterioration," and that hotel staff actively assisted the trafficking); A.B. v. Marriott E.D. Pa., 455 F. Supp. 3d at 192–94 (visible violence by trafficker against victim); S.Y. v. Naples Hotel Co., 476 F. Supp. 3d 1251, 1257 (M.D. Fla. 2020) (allegations similar to above cases); J.M. v. Choice Hotels Int'l, Inc., No. 2:22-cv-672, 2023 WL 3456619, at *2 (E.D. Cal. May 15, 2023) (same).

In sum, plaintiff has therefore failed to allege any underlying criminal violation that could support a claim under the TVPRA. Defendants' motions are granted on this basis.

3.   Actual or Constructive Knowledge

Additionally, and in the alterative, plaintiff fails to adequately allege that defendants had actual or constructive knowledge of any trafficking.[7]

Crucially, courts applying this element have adopted a negligence standard requiring that the defendant hotel "should have known" of sex trafficking, not merely that it "might have been

---

[7] Defendants assert several arguments for dismissal, including that plaintiff fails to allege that they participated in any sex trafficking venture, and that they lacked actual or constructive knowledge of any sex trafficking. Courts analyzing beneficiary liability under § 1595 have generally combined, at least in part, analysis of the third and fourth Doe #1 elements of participation and knowledge. See, e.g., M.A., 425 F. Supp. 3d at 968–69; A.B. v. Marriott E.D. Pa., 455 F. Supp. 3d at 191–92. The court therefore concludes that these two elements merge, and resolves both through the parties' arguments on knowledge.

able to guess" about sex trafficking.  S.J. v. Choice Hotels Int'l, Inc., 473 F. Supp. 3d 147, 153–54 (E.D.N.Y. 2020); see, e.g., J.L. v. Best Western Int'l, Inc., 521 F. Supp. 3d 1048, 1076 (D. Colo. 2021); M.A., 425 F. Supp. 3d at 965.

Plaintiff argues that defendants had at least constructive knowledge of sex trafficking here based on her allegations that 1) hotel staff knew L.M.'s trafficker and called him by his "pimp name"; 2) there was heavy foot traffic to and from L.M.'s room at unusual hours; 3) L.M.'s rooms were paid for in cash; and 4) hotel staff saw L.M.'s trafficker in the hallway and parking lot.  (See Compl. ¶¶ 21–24; Br. Opp'n Mot. Dismiss 42 Hotel Raleigh, LLC d/b/a Hilton Hampton Inn (DE 31) ("Br. Opp'n 42 Hotel") 17–21).  Plaintiff further invokes statistics about the prevalence of sex trafficking crimes in the hotel industry generally, and defendants' training and education on recognizing and preventing such crimes.  (See Compl. ¶¶ 11–18; Br. Opp'n 42 Hotel 17–21).  The court addresses each group of allegations in turn.

      a.      Hotel-Specific Allegations

The first group of allegations stated above does not give rise to constructive knowledge on defendants' part.  Courts have generally rejected arguments that such facts sufficiently impart constructive knowledge of sex trafficking to a hotel, on grounds that these allegations are consistent with prostitution, but do not evince sex trafficking, in line with the distinction discussed above.  E.g., A.B. v. Wyndham Hotels & Resorts, Inc., 532 F. Supp. 3d 1018, 1025–28 (D. Or. 2021) [hereinafter "A.B. v. Wyndham Or."]; E.S. v. Best Western Int'l, Inc., 510 F. Supp. 3d 420, 428 (N.D. Tex. 2021); A.B. v. Extended Stay, 2023 WL 5951390, at *6–7; L.H. v. Red Roof Inn., Inc., No. 3:22-cv-625, 2023 WL 5725574, at *5–7 (W.D. Ky. Sept. 5, 2023); J.B. v. G6 Hospitality, LLC, No. 19-cv-7848, 2020 WL 4901196, at *10–11 (N.D. Cal. Aug. 20, 2020).  Indeed, in A.B. v. Wyndham Or., the court rejected even more detailed allegations that, in addition to the

9

allegations made here, the hotel could monitor plaintiff's internet use, which revealed "unusual bookings," "consistent access to websites known for sexual exploitation," and "live video monitoring by her trafficker[.]" See A.B. v. Wyndham Or., 532 F. Supp. at 1026. The E.S. court did the same: the plaintiff there made similar allegations as those here, plus that hotel staff ejected her from the premises after seeing an advertisement for her on a sexual exploitation website, but these claims did not suffice. E.S., 510 F. Supp. 3d at 428.[8]

In contrast, courts have routinely found actual or constructive knowledge adequately pleaded when based on significantly more demonstrative allegations than those here. The court examines four examples in detail.

In Ricchio v. McLean, 853 F.3d 553 (1st Cir. 2017) (Souter, J.), the victim was "visibly haggard and bruised," the hotel proprietors observed the victim's "physical deterioration," and ignored her "plea[s] for help" and the trafficker's visible, violent attempts to prevent her from escaping. Id. at 555. The First Circuit held that these allegations sufficed to impute actual knowledge of sex trafficking by force or fraud to the proprietors. See id.

In C.S. v. Wyndham Hotels & Resorts, Inc., 538 F. Supp. 3d 1284 (M.D. Fla. 2021), the plaintiff alleged voluminous signs of sex trafficking including, in addition to the allegations made here, that 1) plaintiff and her traffickers would have few or no luggage or possessions for their extended stays; 2) plaintiff was confined to the rented rooms for long periods of time; 3) hotel staff actually entered rooms where victims were being held against their will, and which contained sex and drug paraphernalia and other pervasive signs of sex trafficking and drug use; 4) the traffickers consistently refused housekeeping services and otherwise prohibited staff from entering the rooms;

---

[8] See also Doe #1, 21 F.4th at 719–21 (recounting allegations that traffickers brazenly operated in hotels, hotel staff actively assisted trafficking, and that numerous third parties and charitable and religious organizations had complained about, and provided aid to, victims at the hotels); id. at 729 (Jordan, J., concurring) (stating that these allegations sufficiently pleaded beneficiary claim against hotel operators).

5) the traffickers frequently requested clean towels and linens; and 6) the victim displayed clear signs of physical abuse, diminished personal hygiene, submissiveness, and inappropriate attire. See id. at 1297–99.  The court found these allegations sufficient to impute constructive knowledge of sex trafficking by force or fraud to the hotel defendants.  Id. at 1299.

In A.B. v. Marriott E.D. Pa., in addition to the allegations here, the complaint alleged that 1) the victim came to the hotel with little if any luggage, and without a phone or any money or identification; 2) the victim's room was "littered with multiple broken objects, used condoms, and other sex paraphernalia which would have been noticed by staff"; 3) hotel staff observed the victim with signs of visible injury more than once; and 4) hotel staff and customers heard "constant and loud" physical assaults by the trafficker upon the victim.  A.B. v. Marriott E.D. Pa., 455 F. Supp. 3d at 193–94.  These allegations sufficed to plead constructive knowledge of sex trafficking by force or fraud.  See id.

Finally, in J.G., the victim visibly exhibited "physical deterioration, poor hygiene, fatigue, sleep deprivation, injuries, a failure to make eye contact with others, no control of or possession of money," the traffickers carried weapons and "operated" on hotel premises, hotel employees entered the room, which contained "condoms, drugs, weapons, and many towels, sheets, and tissues[,]" and some hotel employees acted as lookouts for the traffickers.  These allegations pleaded constructive knowledge of sex trafficking by force or fraud.  See J.G., 619 F. Supp. 3d at 1238–39.

Numerous cases have reached the same result on similar allegations.  See, e.g., M.A., 425 F. Supp. 3d at 967; S.Y., 476 F. Supp. 3d at 1257–58; A.D. v. Best Western Int'l, Inc., No. 2:22-cv-651, 2023 WL 5510064, at *5 (M.D. Fla. Aug. 25, 2023); A.R. v. Wyndham Hotels & Resorts, Inc., No. 2:21-cv-04935, at *5–7 (S.D. Ohio Dec. 16, 2022); A.D., 2020 WL 8674205, at *5–6.

All these cases illustrate that the critical distinction discussed above applies, albeit in a different way, here: that knowledge of prostitution is not necessarily knowledge of sex trafficking by force or fraud as defined in 18 U.S.C. § 1591.  See, e.g., A.B. v. Hilton, 484 F. Supp. 3d 921, 940–41 (dismissing TVPRA claim against hotel at pleading stage on this basis); A.B. v. Extended Stay, 2023 WL 5951390, at *6 (same); Lundstrom, 2021 WL 5579117, at *8 (same).

Plaintiff argues against this distinction because § 1591 incorporates a general definition of prostitution.  (See Br. Opp'n 42 Hotel 19).  While § 1591's definition of sex trafficking does include and incorporate a definition of a "commercial sex act," it requires that a person use "force, threats of force, fraud, coercion . . . or any combination of such means . . . to cause the person to engage in a commercial sex act[.]"  18 U.S.C. § 1591(a); see, e.g., United States v. Wysinger, 64 F.4th 207, 211–13 (4th Cir. 2023); Doe #1, 21 F.4th at 725.  Contrary to plaintiff's argument, § 1591 therefore does not establish an offense coterminous with its own definition of "commercial sex act."

It is conceivable that plaintiff's allegations amount to constructive knowledge of prostitution, which is illegal, N.C. Gen. Stat. § 14-203 et seq., but plaintiff does not plead such knowledge of sex trafficking by force or fraud.  Plaintiff alleges only that 42 Hotel staff knew L.M.'s trafficker's "pimp name" and used it to address him, that L.M.'s rooms were paid for in cash, that there was heavy foot traffic in and out of L.M.'s room, and that hotel staff observed L.M.'s traffickers on the premises.  Plaintiff does allege, in conclusory fashion, that she was "forced" to have sex with "sex buyers," (Compl. ¶ 24), but this barebones allegation lacks force as discussed above.  Conspicuously absent from plaintiff's complaint are any allegations that could plausibly produce an inference of trafficking by force or fraud such as, for example, signs of physical abuse, actual assaults by a trafficker on the victim, lack of money or identification, or any

of the sufficient allegations indicating force or fraud made in any of the cases cited above.  See, e.g., M.A., 425 F. Supp. 3d at 967; C.S., 538 F. Supp. 3d at 1298–99; A.B. v. Marriott E.D. Pa., 455 F. Supp. 3d at 193; J.G., 619 F. Supp. 3d at 1238; see also A.B. v. Extended Stay, 2023 WL 5951390, at *6 (collecting cases in which the plaintiff successfully pleaded constructive knowledge through allegations of violence by trafficker(s)).

The complaint lists many of these factors in its introduction, which discusses sex trafficking generally, but does not allege any in its discussion of defendants' alleged conduct or knowledge.  (See Compl. ¶ 14; cf. id. ¶¶ 21–28).  Instead, plaintiff pleads only the allegations noted above, which perhaps create a plausible inference of constructive knowledge of prostitution, but certainly not of sex trafficking by force or fraud.

Finally, plaintiff contends that 42 Hotel should have exercised reasonable diligence to proactively investigate and prevent possible sex trafficking.  (See Br. Opp'n 42 Hotel 20).  But the TVPRA imposes no such duty, as courts routinely recognize.  See, e.g., A.B. v. Wyndham Or., 532 F. Supp. 3d at 1027; A.B. v. Marriott E.D. Pa., 455 F. Supp. 3d at 182; A.D., 2020 WL 8674205, at *3; B.M. v. Wyndham Hotels & Resorts, Inc., No. 20-cv-656, 2020 WL 4367214, at *7 (N.D. Cal. July 30, 2020).

In sum, plaintiff's allegations do not support any inferences adequate to impute actual or constructive knowledge of sex trafficking by force or fraud to defendants.

      b.      Industry-Wide Allegations

In addition to these specific allegations, plaintiff argues that industry-wide issues should have produced constructive knowledge.  The complaint states, and plaintiff argues, that general knowledge of the prevalence of sex trafficking in hotels, including Hampton Inn brand hotels, imputes constructive knowledge of sex trafficking here to defendants.  (See Compl. ¶¶ 16–17, 50).

But for support, plaintiff cites news stories from Burnsville, Minnesota, Kent, Washington, and Dickinson, North Dakota. (Compl. ¶ 16 n.8). Courts routinely have held, even at the pleading stage, that general allegations of sex trafficking in the hotel industry, and at other hotels, do not impute constructive knowledge as required here. See, e.g., A.B. v. Hilton, 484 F. Supp. 3d at 938–39; S.J., 473 F. Supp. 3d at 154 ("knowledge or willful blindness of a general sex trafficking problem in low-budget lodgings does not satisfy the mens rea requirements of the TVPRA").[9]

Plaintiff's citation to A.W. v. Red Roof Inns, Inc., No. 2:21-cv-04934, 2022 WL 17741050 (S.D. Ohio Dec. 16, 2022) is not to the contrary. There, the court did remark in general terms that "general knowledge and failure to act" could support a TVPRA claim. Id. at *7. However, that case involved far deeper allegations, including that the Columbus City Attorney had found the particular hotel a "public nuisance" and "haven for prostitution," and that specific guest reviews had complained about prostitution in clear and unmistakable terms. See Id. Such allegations are absent here.

Finally, plaintiff presents a perpetrator claim under §§ 1591 and 1595. (Compl. ¶ 70). A perpetrator claim under § 1595 imports § 1591's mens rea requirement, which in turn requires actual knowledge of sex trafficking by force or fraud. 18 U.S.C. § 1591 (stating mens rea as "knowingly"); id. § 1595 ("an individual who is a victim of a violation of this chapter"); Wysinger, 64 F.4th at 211 (noting § 1591's mens rea requirement); see, e.g., Noble v. Weinstein, 335 F. Supp. 3d 504, 515 (S.D.N.Y. 2018); A.D., 2020 WL 8674205, at *2 n.1; J.M. v. Choice Hotels Int'l, Inc., No. 2:22-cv-672, 2023 WL 3456619, at *2 (E.D. Cal. May 15, 2023) (collecting cases and noting that "perpetrator liability under [§] 1595 imputes [sic] [§] 1591's elements for criminal liability").

---

[9] Cf. G.G., 76 F.4th at 549–51, 555–58 (concluding that defendant's decision to work with a website with extraordinarily severe and well-documented history of sex trafficking created at least constructive knowledge).

14

Because plaintiff fails to plead constructive knowledge of sex trafficking, her perpetrator claim, which requires an even greater degree of knowledge, fails as well.

The complaint here fails to allege that defendants had actual or constructive knowledge of sex trafficking by force or fraud. Plaintiff's perpetrator and beneficiary claims therefore fail.

## CONCLUSION

For the forgoing reasons, defendants' motions to dismiss (DE 25, 27) are GRANTED. Plaintiff's claims are DISMISSED for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). The clerk is DIRECTED to close this case.

SO ORDERED, this the 13th day of February, 2024.

_____
LOUISE W. FLANAGAN
United States District Judge