875

## DOCKET NO. 875

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

---

## MOTION TO VACATE CONDITIONAL TRANSFER ORDER

## AND SUPPORTING BRIEF

---

RE:    *William and Valorie Johnston v. W.R. Grace & Co., et al,* Case No. CV-99-127

# MOTION

COME NOW the plaintiffs in the above-captioned case and move the Panel for an order vacating its conditional transfer of these cases (CTO-191) to the Eastern District of Pennsylvania, MDL-875, for the reasons set forth below. This judicial Panel lacks jurisdiction to issue a transfer order; the transfer alone is so great an interference with states' constitutional powers that transfer without a finding of federal jurisdiction exceeds the scope of constitutional power under Article III of the United Stated Constitution. Moreover, these cases have no common nexus of fact with the products liability cases in MDL-875, and transfer would not serve the convenience of the parties and witnesses. Therefore, plaintiffs request that the conditional transfer order be vacated as to these cases.

# BRIEF

## I. FACTUAL SYNOPSIS

The above-captioned case arises out of asbestos exposure occurring in Libby, a small town in northwestern Montana. The exposure occurred at the Zonolite

LAW OFFICES
McGARVEY, HEBERLING,
SULLIVAN & McGARVEY, P.C.
KALISPELL, MONTANA

Motion to Vacate Transfer and Supporting Brief
\\Patrice\clients\Johnston, W\Legal Docs\motion to vacate transfer Johnston.wpd

1

IMAGED MAR 2 1 '01
OFFICIAL FILE COPY

1  vermiculite mine and mill, where veins of asbestos existed throughout the vermiculite

2  ore deposits.  During the mining and milling process, the asbestos was repeatedly

3  disturbed, such that Zonolite employees worked in clouds of asbestos dust, and family

4  members or members of the Libby community were exposed to asbestos when the

5  employees brought it home on their clothing.

6  Conditions at Zonolite, which operated from the 1930s until 1990, flagrantly

7  violated Montana workplace safety standards.  Thus, over the last twenty-five years

8  alone, over 200 people from Libby have been diagnosed with asbestos-related

9  diseases as a direct result of Zonolite's unsafe workplace. Many of these individuals

10  filed lawsuits, a number of which have already been settled or tried to verdict.

11  This law firm represents over one hundred former employees of Zonolite

12  (owned by W.R. Grace), their family members and members of the Libby community,

13  including these plaintiffs.  There is no class action for Zonolite cases.  The same

14  Montana defense counsel represents defendants in all of the cases.  **None of these**

15  **cases is a products liability case**, as the exposure here did not involve a "product" but

16  was derived directly from the Zonolite mine and mill.

17  All of the Zonolite cases were originally filed in the Montana state court system,

18  in the county in which Zonolite operated and where most of the plaintiffs still reside.

19  Most of them remain in state court where they are being tried on a docket.  This case

20  is among the relatively few Libby cases that were removed to federal court.  Plaintiffs

21  contend that the removals are wrongful, bad faith abuses of the removal and MDL

22  procedures.  Knowing that it will be **years** before the transferee court addresses the

23  removal, Grace is merely buying delay for the nominal expense of an award of costs

24  upon remand years hence.  It is essential to stay transfer of these cases until the

25  transferor court has ruled on the issue of federal court jurisdiction. (*See* § II A, *infra.*)

26  Despite having been removed to federal court, this case involves identical

LAW OFFICES
McGARVEY, HEBERLING,
SULLIVAN & McGARVEY, P.C. Motion to Vacate Transfer and Supporting Brief
KALISPELL, MONTANA     \\Patrice\clients\Johnston, W\Legal Docs\motion to vacate transfer Johnston.wpd

2

1  issues as the Zonolite cases which remain in state court, as well as the same

2  defendants, the same discovery, the same exhibits, and the same counsel.  It is

3  brought pursuant to Montana state law legal theories, including negligence and safe

4  place to work laws.

## II. DISCUSSION

**A.    The federal courts must not interfere with state court jurisdiction without _first_ examining federal court jurisdiction.**

When a motion to remand to state court is pending in the transferor court, transferring the case to MDL under the assumption that the transferee court will rule on the motion becomes, in effect, a gross denial of justice and an unconstitutional infringement on states rights.  Remand motions routinely languish in transferee court for **several years**.  Because the court lacks jurisdiction, literally nothing can be done.  This law firm represents other Libby clients whose threshold motions for remand to state court have been pending for more than a year in Pennsylvania.  Their wait is only beginning.  Hundreds of other cases have been pending in the transferee court for several years with no ruling on the question of jurisdiction.

In the meantime, these Montana citizens are sick and dying of an incurable disease as a result of Grace's conduct, which has been evaluated by a previous Montana jury to constitute malicious wrongdoing warranting punitive damages.

Analysis must begin with the premise that federal courts are courts of **limited** jurisdiction under the United States Constitution, Art. III, § 2.  It is not merely a procedural error, but "an unconstitutional invasion of the powers reserved to the states" if the federal court exercises any power not within its jurisdiction.  C.A. Wright, _Law of Federal Courts_, 3rd Ed., p.17:

> In 1864 former Justice Benjamin Curtis made the still-timely reminder: 'Let it be remembered, also, for just now we may be in some danger of forgetting it, that questions of jurisdiction were questions of power as between the United States and the several states.'  There is a recurring

LAW OFFICES
McGARVEY, HEBERLING,
SULLIVAN & McGARVEY, P.C.  Motion to Vacate Transfer and Supporting Brief
KALISPELL, MONTANA    \\Patrice\clients\Johnston, W\Legal Docs\motion to vacate transfer Johnston.wpd

3

temptation to view questions of federal jurisdiction as if they were simple procedural questions, to be resolved in whatever fashion will best serve the desirable goal of the judicial administration. Settled doctrine does give some play to such considerations. But when it is remembered that the delicate balance of a federal system is at stake, and that expansion of the jurisdiction of the federal courts diminishes the power of the states, it is apparent that efficiency cannot be the sole or controlling consideration.

*Id.* at 2.

Unfortunately, many federal courts have forgotten that jurisdiction is a question of constitutional power and therefore of first importance. These courts have permitted tying the state courts' hands, issuing a variety of substantive and procedural rulings, transferring cases literally across the country,[1] and years of delay **before** addressing the threshold question of jurisdiction.

Proper deference to the constitutional limits on federal court power requires that the grossly invasive interference with the state courts, instigated by the mere filing of a "notice of removal," must be cured by **presuming** that the federal court lacks jurisdiction[2] and by **timely** evaluating federal jurisdiction as the federal court's **first** order of business. Thus, courts which have considered the constitutional source of and limitation on their power have uniformly held that jurisdiction **must** be addressed as a "threshold matter":

> Because a federal court is under an unflagging duty to ensure that it has jurisdiction over the subject matter of the cases it proposes to adjudicate, we are obliged to addressed the propriety of removal as a threshold matter.

*Am. Policy Holders Ins. v. Nyacol Products,* 989 F.2d 1256, 1258 (1st Cir. 1993).

---

[1] Grace's removal paper has, for example, forced Libby plaintiffs to file and/or argue motions in venues as distant as Fort Meyers, Florida, Washington, D.C., and the Eastern District of Pennsylvania.

[2] *Metropolitan Property & Casualty v. J.C. Penney,* 780 F. Supp. 885, 886 (Conn. 1991); *B, Inc. v. Miller Brewing, Inc.,* 663 F.2d 545, 550 (5th Cir. 1981); *Emrich v. Touche Ross & Co.,* 846 F.2d 1190 (9th Cir. 1988).

LAW OFFICES
McGARVEY, HEBERLING,
SULLIVAN & McGARVEY, P.C.
KALISPELL, MONTANA

Motion to Vacate Transfer and Supporting Brief
\\Patrice\clients\Johnston, W\Legal Docs\motion to vacate transfer Johnston.wpd

4

1    The United States Supreme Court explained this rule in *Shamrock Oil & Gas*

2    *Corp. v. Sheets,* 313 U.S. 100 (1941):

3        The power reserved to the states under the Constitution to provide for
         the determination of controversies in their courts, may be restricted only
4        by the action of Congress in conformity to the judiciary articles of the
         Constitution.   Due regard for the rightful independence for of state
5        governments which should actuate federal courts, requires that they
         scrupulously confine their own jurisdiction to the precise limits which the
6        statute has defined.

7    *Id.* at 313; *accord, Maxwell v. First Nat'l Bank of Monroeville,* 638 F.2d 32, 35 (5th

8    Cir. 1981) ("because federal courts are courts of limited jurisdiction, we must

9    scrupulously confine the use of our power"); *In re Carter,* 618 F.2d 1093, 1098 (5[th]

10   Cir. 1980) ("due regard for the constitutional allocation of powers . . . requires a

11   federal court to scrupulously to confine itself to the jurisdiction . . . permitted by the

12   Constitution"); *Ry. Labor Exec. V. Pittsburgh & Lake Erie Ry.,* 858 F.2d 1936, 943

13   (3rd Cir. 1988) ("a district court should remand the case to the state court **without**

14   **addressing other issues.**")

15       This scrupulous attention to the threshold question of jurisdiction protects

16   states' rights.  Similarly, Congress recognized the need to avoid excessive intrusion

17   on states from protracted litigation of jurisdictional issues in federal court by

18   eliminating appeals of remand orders.  28 U.S.C. §1447(c).

19       Plaintiffs believe that the presumptuous exercise of federal jurisdiction in the

20   form of a transfer order from the MDL Panel, whereby plaintiffs are denied prompt

21   adjudication of their state law rights and are forced to incur the difficulty and expense

22   of distant litigation and years of delay **before** the federal court addresses jurisdiction,

23   is a profound interference with the state's power and therefore is an unconstitutional

24   exercise of federal power.

25       It is no answer that the transferee court will **someday** address the remand

26   motion.  The years of delay coupled with the burdens of out-of-state litigation are of

LAW OFFICES
McGARVEY, HEBERLING,
SULLIVAN & McGARVEY, P.C. Motion to Vacate Transfer and Supporting Brief
KALISPELL, MONTANA      \\Patrice\clients\Johnston, W\Legal Docs\motion to vacate transfer Johnston.wpd

5

1   themselves such a gross interference with states' rights and the litigants' substantive

2   and procedural rights so as to transgress Article III of the Constitution.  The removal

3   statutes contemplate that federal jurisdiction will **immediately** be addressed (see, e.g.,

4   28 U.S.C. § 1446(c)(4) ("the United States district court . . . **shall examine the notice**

5   **promptly**").  Delays of 30 to 90 days to examine jurisdiction are tolerable intrusions

6   on state court powers.  Delays of months or years are not.

7        The Panel must not presume the existence of jurisdiction.  It must recognize

8   that the inherent delays of the MDL system make the transfer order itself an

9   unconstitutional intrusion on state power if federal jurisdiction is not **first** established.

10  **B.**    **A ruling on the transfer of these cases should be stayed until the
    motions to remand to state court, which are pending before the**

11  **transferor court, have been granted or denied.**

12       28 USC § 1407 governs when a case should be transferred to multidistrict

13  litigation:

14      When civil cases involving **one or more common questions of fact** are
    pending in different districts, such actions may be transferred to any

15      district for coordinated or consolidated pretrial proceedings.  Such
    transfers shall be made by the judicial panel on multidistrict litigation

16      authorized by this section upon its determination that transfers for such
    proceedings **will be for the convenience of parties and witnesses and will**

17      **promote the just and efficient conduct of such actions.**

18  28 USC § 1407.[3]  Crucial for transfer is the existence of one or more common

19  questions of fact.  *See, e.g., In re Japanese Elec. Prod. Antitrust Litig.,* 388 F. Supp.

20  565 (1975); *In re Eastern Airlines, Inc. Flight Att. Weight Program Litig.,* 391 F. Supp.

21  763 (1975).  The Zonolite cases have virtually no factual issues in common with the

22  asbestos products liability cases which make up MDL-875.  In addition, transfer would

23  do nothing to enhance, and in fact would impair, the convenience of the parties and

24  witnesses in the Zonolite cases.  Therefore, plaintiffs request an order vacating the

25  

---

26  [3]Unless otherwise indicated, all emphasis (bold) is added by the author.

LAW OFFICES
McGARVEY, HEBERLING,
SULLIVAN & McGARVEY, P.C.
KALISPELL, MONTANA

Motion to Vacate Transfer and Supporting Brief
\\Patrice\clients\Johnston, W\Legal Docs\motion to vacate transfer Johnston.wpd

6

1    CTO for the Zonolite cases.

2        Removal in these cases was improper, because diversity does not exist.  In

3    September, 1999, plaintiffs filed a motion to remand to state court in the transferor

4    court.  That motions is still pending.  The Panel should not transfer this case until the

5    Montana Federal District Court rules on the motion to remand.  That court, in the

6    past, has declined to rule on motions to remand until after the Panel ruled on the

7    transfer order.  This ignores the fact that, if the court remands, the Panel need never

8    consider transfer at all.  Moreover, the court's rationale is exactly contrary to the

9    proper MDL procedure:

10       Unfortunately, some courts, upon being notified of the filing of a motion
         for transfer, have stayed discovery, postponed rulings on pending
11       motions, and generally suspended further proceedings in the case.
         **Rarely are such generalized delays advisable**.  Although deferral of some
12       activities in the case may be appropriate until the Panel has the
         opportunity to rule on transfer, often other matters — for example,
13       motions to dismiss and **motions to remand raising issues unique to the
         case** — should ordinarily be addressed before the Panel considers the
14       motion to transfer.

15   *Manual on Complex Litigation 2d,* § 31.121

16       In general, then, the Panel "is reluctant to transfer any action that has an

17   important motion under submission with the prospective transferor court. . . .

18   [M]otions to remand raising issues unique to the case, should ordinarily be addressed

19   before the Panel considers the motion to transfer."  32A Am Jur 2d, *Federal Courts,*

20   § 1738; *see also In re L.E. Lay & Co. Antitrust Litigation,* 391 F. Supp. 1054, 1056

21   (1975); *see also* 24 Fed. Proc., L. Ed., § 55:8 (the Panel ordinarily does not "transfer

22   any action that has an important motion under submission with the prospective

23   transferor court . . ."); *In re Plumbing Fixture Cases,* 208 F. Supp. 484, 496 (1968).

24   The motion to remand in these cases, raising as it does questions of constitutional

25   limits on the authority of federal courts **including this judicial Panel,** is clearly a matter

26   of utmost importance.  It requires immediate attention **before** the burdens of MDL

LAW OFFICES
McGARVEY, HEBERLING,
SULLIVAN & McGARVEY, P.C. Motion to Vacate Transfer and Supporting Brief
KALISPELL, MONTANA    \\Patrice\clients\Johnston, W\Legal Docs\motion to vacate transfer Johnston.wpd

7

1   litigation are imposed and **before** the delays of MDL litigation unconstitutionally

2   interfere with the power of the state court.

3   The Panel itself may not rule on the issue of whether this case should be

4   remanded to state court, as "section 1407 does not empower the MDL Panel to

5   decide questions going to the jurisdiction or the merits of a case, including issues

6   relating to a motion to remand." *In re Ivy,* 901 F.2d 7, 9 (2d Cir. 1990).  Although

7   in some cases the transferee court may decide a motion to remand, the Montana

8   Federal District Court is in the best position to rule on these motions.  This case is

9   based on principles of Montana law, i.e. whether there is a colorable claim against in-

10   state defendants Earl Lovick and Montana Vermiculite Company.

11   Therefore, it would be appropriate for the Panel to either grant this motion to

12   vacate, thereby placing jurisdiction back in the hands of the transferor court, or stay

13   proceedings on the cases, asking the transferor court to rule on the motion to remand.

14   **C.     The Zonolite cases should not be transferred because they are not
            products liability cases and they do not share common issues of fact**

15   **with other MDL-875 cases.**

16   The cases which have been transferred to the Eastern District of Pennsylvania

17   under MDL-875 are collectively referred to by the panel as "asbestos **products liability**

18   litigation."     Those cases arise out of injuries caused to consumers by various

19   asbestos-containing products.  The Zonolite cases are not products liability cases, and

20   thus do not share the requisite common factual nexus with the MDL-875 cases.

21   The exposure of a mine worker to daily contact with unsafe dust levels creates

22   an employment-related claim for breach of the Montana statute and common law

23   requiring every employer to provide a safe workplace.  The Montana statute provides:

24   Each employer shall: (1) furnish a place of employment that is safe for
     each of his employees; (2) . . . require the use of . . . health and safety

25   items, including but not limited to air masks, hardhats, and protective
     gloves, that may be required by state of federal law, the employer, or

26   the terms of an employment contract, . . .; (3) adopt and use practices,

LAW OFFICES
McGARVEY, HEBERLING,
SULLIVAN & McGARVEY, P.C. Motion to Vacate Transfer and Supporting Brief
KALISPELL, MONTANA     \\Patrice\clients\Johnston, W\Legal Docs\motion to vacate transfer Johnston.wpd

8

1   means, methods, operations, and processes that are reasonably
2   adequate to render the place of employment safe; and (4) do any other
    thing reasonably necessary to protect the life, health, and safety of his
3   employees.

§ 50-71-201, MCA.

Such a claim is fundamentally different from the exposure experienced by a consumer who may, for example, work in a building containing asbestos pipe insulation manufactured, sold and installed by various entities. The claims involve different factual scenarios, different legal theories, and different discovery. The Zonolite workers have pled intentional conduct claims, alleging that defendants intentionally concealed from the mine workers and their families their knowledge of the dust hazard at the worksite. None of these theories is even distantly related to the product liability theories common to MDL-875. Thus the emphasis in the myriad products liability cases in MDL-875 is on the **products**, while the Zonolite cases emphasize **working conditions** and **knowledge** on the part of managers at Zonolite. These cases do not even involve a product.

The existence of common questions of fact is crucial to transfer. *See, e.g., In re Air Crash at Schenley Golf Course,* 509 F. Supp. 252, 255 (1979), (Utah action not transferred to MDL because "the nexus between the Utah action and the other actions in this litigation appears to be too tenuous . . . Discovery in the Utah action will this likely involve not only questions concerning the cause or causes of the crash, but equally important, also questions concerning possibly superseding events occurring over a ten-year period that have little in common with the other actions in this litigation.") Similarly, the **only** connection between this case and the MDL-875 cases is that they involve asbestos. This connection is too tenuous for transfer.

In the Zonolite cases, localized fact issues predominate. Therefore, transfer would not promote efficiency of discovery, because entirely different discovery is

LAW OFFICES
McGARVEY, HEBERLING,
SULLIVAN & McGARVEY, P.C.
KALISPELL, MONTANA

Motion to Vacate Transfer and Supporting Brief
\\Patrice\clients\Johnston, W\Legal Docs\motion to vacate transfer Johnston.wpd

9

1    necessary.  Attempts to transfer have been defeated in other cases where most

2    factual issues were localized or unique.  In *In re Grand Funk Railroad Trademark*

3    *Litigation,* 371 F. Supp. 1084 (1974), for example, because discovery would focus

4    on promotional activities which were localized, and because the existing action was

5    already in an advanced stage of discovery, transfer was not allowed.  The court found

6    that it would only have delayed progress on the underlying action.  *Id.* at 1085.

7    Discovery in the Zonolite cases has already been effectively combined in all related

8    Zonolite cases.  Moreover, this discovery is largely completed.  Indeed, several of

9    these cases have already proceeded to trial.  Remaining discovery issues are peculiar

10   to the dust hazards of the Zonolite work site, defendants' knowledge of such hazards,

11   and other issues unique to this litigation, such as how much dust the workers brought

12   home.  "The Panel must weigh any benefit that transfer would provide in the way of

13   eliminating the possibility of inconsistent pretrial decisions against the efficient

14   administration of the litigation as a whole."  *Id.*  Here, the efficient administration of

15   the asbestos cases clearly outweighs any possible benefits of transfer.

16          Moreover, in many of the MDL-875 cases, the plaintiff has sued multiple

17   defendants and conducts discovery largely to determine which of them manufactured

18   the product causing his injury.  This issue does not exist in the Zonolite cases.

19   Instead, the Zonolite cases focus on events occurring in Libby, and how they directly

20   impacted those particular employees, their families, or community members.  There

21   are virtually no common questions of fact between the Zonolite cases and the MDL-

22   875 cases.  Therefore, transfer would be improper and would cause inefficiency.

23          **D.    The Zonolite cases should not be transferred because transfer would not
              serve the convenience of the parties or of the witnesses.**

24

25          28 USC § 1407 states that transfer is proper only where it "will be for the

26   convenience of parties and witnesses and will promote the just and efficient conduct

LAW OFFICES
McGARVEY, HEBERLING,
SULLIVAN & McGARVEY, P.C. Motion to Vacate Transfer and Supporting Brief
KALISPELL, MONTANA      \\Patrice\clients\Johnston, W\Legal Docs\motion to vacate transfer Johnston.wpd

10

1    of such actions."  It is difficult to imagine how convenience would be furthered by

2    transferring the Zonolite cases to Pennsylvania.  A number of Zonolite cases have

3    already been tried or settled.  Many others are currently pending in Montana state

4    court.  The discovery for the Zonolite cases, to a great extent, overlaps from one case

5    to the next.  Thus, thousands of pages of discovery documents have already been

6    exchanged.  The bulk of these documents pertain to the Libby facility only, and would

7    not assist the MDL-875 parties in any way.  Furthermore, because discovery is in a

8    very advanced stage already, transfer would save neither side money.  In fact, great

9    economy would be achieved if the discovery and litigation of the Zonolite cases can

10   proceed parallel with those pending in Montana state court.

11        In 1991, with asbestos products liability cases multiplying, the Panel decided

12   to transfer over 26,000 of those cases for Multidistrict Litigation.  One of the primary

13   reasons was that ". . . Asbestos cases have infiltrated virtually every federal district.

14   Asbestos litigation must therefore be viewed as a national problem rather than merely

15   a local or regional one . . ."  (7/29/91 Opinion and Order, p. 6-7, quoting the *Report*

16   *of the Judicial Conference Ad Hoc Committee on Asbestos Litigation,* p. 9.)

17        This is not the case with the Zonolite cases.  As stated above, they concern

18   localized issues.  The Zonolite plaintiffs were all injured in Montana and, almost

19   without exception, still reside in Montana.  Their counsel and the lay witnesses reside

20   in Montana.   Defense counsel also resides in Montana.   Plaintiffs' main expert

21   witnesses, Dr. Whitehouse and Dr. Spear, reside near Libby, Montana.  The cases

22   concern issues of Montana law and facts occurring in Montana.   Transfer to

23   Pennsylvania certainly would not enhance convenience.

24        Moreover, the threat of the Zonolite cases burgeoning in numbers, as happened

25   with products liability cases, simply does not exist.  The number of Zonolite cases is

26   finite and self limiting — the cases only include Zonolite employees and community

LAW OFFICES
McGARVEY, HEBERLING,
SULLIVAN & McGARVEY, P.C.
KALISPELL, MONTANA

Motion to Vacate Transfer and Supporting Brief
\\Patrice\clients\Johnston, W\Legal Docs\motion to vacate transfer Johnston.wpd

11

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 1 9 2001

FILED
CLERK'S OFFICE

1  members who contracted asbestos diseases as a result of dangerous dust levels at

2  Zonolite's local worksite.  These cases should remain in Montana.

3  ### III. CONCLUSION

4  For the reasons stated above, plaintiffs now request that the Panel issue an

5  order vacating the conditional transfer order as to *William and Valorie Johnston v.*

6  *W.R. Grace, et al.,* Case No. CV-99-127.

7  DATED this _9_ day of _March_, 2001.

8
McGARVEY, HEBERLING, SULLIVAN
9  & McGARVEY, P.C.

10

11  By:
Allan M. McGarvey
12  Attorneys for Plaintiffs

13

### CERTIFICATE OF SERVICE
14
Pursuant to Rule 8(a) of the Rules of Procedure of the Judicial Panel on
15  Multidistrict Litigation under 28 U.S.C. § 1407, I hereby certify that a copy of the
foregoing has been served upon counsel of record as set forth in the attached service
16  list by placing a copy of same in the United States mail, postage prepaid and properly
addressed, this _13_ day of _March_, 2001.
17

18

19  Allan M. McGarvey

20

21

22

23

24

25

26

LAW OFFICES
McGARVEY, HEBERLING,
SULLIVAN & McGARVEY, P.C.  Motion to Vacate Transfer and Supporting Brief
KALISPELL, MONTANA   \\Patrice\clients\Johnston, W\Legal Docs\motion to vacate transfer Johnston.wpd

12

RECEIVED CLERK'S OFFICE
2001 MAR 15 P 2: 44
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## PANEL SERVICE LIST (Excerpted from CTO-191)
## DOCKET NO. 875
## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

Richard C. Binzley
Thompson, Hine & Flory
127 Public Square
3900 Key Center
Cleveland, OH  44114

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH  44115

David A. Damico
Burns, White & Hickton
2400 Fifth Avenue Place
120 Fifth Avenue
Pittsburgh, PA  15222

Raymond P. Forceno
Forceno & Hannon
Philadelphia Bourse Building
Suite 1000
Independence Mall East
Philadelphia, PA  19106

Ellen B. Furman
Goldfein & Joseph
1600 Market Street
33rd Floor
Philadelphia, PA  19103

Gary L. Graham
Garlington, Lohn & Robinson, PLLP
199 West Pine
P.O. Box 7909
Missoula, MT  59807

Susan M. Hanson
Stich, Angell, Kreidler & Muth, P.A.
The Crossings, Suite 120
250 2nd Avenue South
Minneapolis, MN  55401

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA  23219

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA  19102

Allan M. McGarvey
McGarvey, Heberling, Sullivan
& McGarvey
745 South Main Street
Kalispell, MT  59901

Ronald L. Motley
Ness, Motley, Loadholt, Richardson
& Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC  29464

Donald A. Powell
Buckingham, Doolittle & Burroughs
50 South Main Street
P.O. Box 1500
Akron, OH  44309

John J. Repcheck
Marks, O'Neill
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA  15219

John D. Roven
John Roven & Associates
2190 North Loop West
Suite 410
Houston, TX  77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease
52 East Gay Street
P.O. Box 1008
Columbus, OH  43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA  90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA  19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
Detroit, MI  48226

Andrew J. Trevelise
Reed, Smith, Shaw & McClay
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA  52406