**MDL 875**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 10 2001

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| IN RE ASBESTOS PRODUCTS LIAB. LITIG. (NO. VI) | ) ) ) ) |
|  | MDL 875 (Hon. Charles Weiner) |
| This Document Relates to: | ) ) |
| DOVAL ET AL., | ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) No. C-01-0540 JL (N.D. Cal.) |
| MAREMONT CORPORATION, | ) ) |
| Defendant. | ) ) |

### MOTION OF DEFENDANT
### MAREMONT CORPORATION TO
### TRANSFER AND CONSOLIDATE WITH MDL 875

Pursuant to 28 U.S.C. §1407, defendant Maremont Corporation ("Maremont") moves the

Panel to transfer the above-captioned action, presently pending in the United States District

Court for the Northern District of California, to the United States District Court for the Eastern

District of Pennsylvania for coordinated or consolidated pretrial proceedings as part of MDL 875.

The grounds for this motion are as follows:

    1.    This case involves issues arising from a series of settlement agreements resolving

the various plaintiffs' asbestos personal injury claims against numerous defendants that were

**IMAGED** APR 12 '01

- 2 -

members of the Center for Claims Resolution, Inc. ("CCR").  Defendant Maremont and various

other CCR members duly paid their shares of the settlement, but former CCR members

Armstrong World Industries, Inc. ("Armstrong") and Asbestos Claims Management Corporation

("ACMC") have defaulted on all of their obligations under thousands of settlement agreements

negotiated by the CCR and thus have failed to pay their shares of the settlement here.  The

complaint alleges that the asbestos personal injury settlement agreement makes all of the CCR

defendants jointly and severally liable for the entire amount of the settlement and that Maremont

is therefore required to pay Armstrong's and ACMC's defaulted shares of the settlement

agreement.

        2.      As part of his responsibilities in managing MDL No. 875, Judge Weiner has

already repeatedly addressed the exact same issue raised in the case at bar, namely, whether the

many thousands of asbestos personal injury settlement agreements negotiated by the CCR with

numerous plaintiffs' counsel across the country on behalf of various defendants should be con-

strued to create joint or separate liability.  Copies of such rulings are attached to the accompany-

ing memorandum.  Those rulings also make clear that the dispute here, as in those cases, raises

issues concerning the nature of the CCR, the CCR membership agreement, the course of conduct

with the plaintiffs' lawyer, the well-known agency relationship between the CCR and its member

companies, and the sophistication of the plaintiffs' counsel who negotiated these settlement

agreements -- all of which are precisely the kinds of matters that are properly within Judge

Weiner's expertise and jurisdiction.

        3.      In short, precisely these issues have already arisen in other MDL 875 matters and

Judge Weiner -- on whom the Panel relies to determine, at least in the first instance, whether

- 3 -

matters should be adjudicated within the MDL docket -- has found it proper to resolve them within MDL 875.

4.      It makes no difference that the present case does not simply present a garden-variety asbestos personal injury claim.  As part of MDL 875, the Panel not only has transferred cases alleging individual personal injuries from exposure to asbestos, but also has repeatedly transferred (or refused to remand) lawsuits that were related to such personal injury claims, as long as it made sense for Judge Weiner to handle such matters.  Such satellite litigation has included suits between traditional asbestos defendants for indemnification or contribution of monies paid in personal injury actions, claims against attorneys involved in asbestos litigation, suits involving workers' compensation issues, and even more exotic claims such as antitrust, racketeering, and fraud.

WHEREFORE, and for the reasons more fully stated in the accompanying memorandum, defendant Maremont respectfully moves the Panel to transfer the above-captioned case to the Eastern District of Pennsylvania as part of MDL 875.

Respectfully submitted,

Richard M. Wyner
Shea & Gardner
1800 Massachusetts Ave., N.W.
Washington, D.C.  20036
(202) 828-2000

Counsel for Defendant Maremont
Corporation

April 5, 2001

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 1 0 2001

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE ASBESTOS PRODUCTS
  LIAB. LITIG. (NO. VI)                    )    MDL 875 (Hon. Charles Weiner)

This Document Relates to:

DOVAL ET AL.,

    Plaintiffs,

v.                                        )    No. C-01-0540 JL (N.D. Cal.)

MAREMONT CORPORATION,

    Defendant.

### MEMORANDUM IN SUPPORT OF THE MOTION OF
### DEFENDANT MAREMONT CORPORATION
### TO TRANSFER AND CONSOLIDATE WITH MDL 875

    In the years since the Panel's 1991 consolidation of federal asbestos personal injury

litigation, the Panel not only has transferred personal injury cases, but also has repeatedly trans-

ferred (or refused to remand) lawsuits involving non-tort claims arising out of or otherwise relat-

ing to asbestos personal injury litigation claims.  Such satellite litigation has included, for exam-

ple, suits between traditional asbestos defendants for indemnification or contribution of monies

paid in personal injury actions, claims against attorneys involved in asbestos litigation, suits

involving workers' compensation issues, and even more exotic claims such as antitrust, racket-

eering, and fraud.  Ever since its original order creating MDL 875, the Panel has regularly reject-

- 2 -

ed arguments that such cases do not belong in MDL 875 because they involve claims other than personal injury claims, and has held that Judge Weiner is the best arbiter of what does, and does not, belong in MDL 875. See In re Asbestos Products Liab. Litig. (No. VI), 771 F. Supp. 415, 421-22 (J.P.M.L. 1991); Exhibits E-M hereto.

The present lawsuit is eminently within the scope of the MDL 875 docket: the defendant is a traditional asbestos defendant and the issue presented is whether it should be held liable for the defaults of another traditional asbestos defendant on asbestos personal injury settlements to which they (and still other asbestos defendants) were all parties. Indeed, as part of the MDL 875 proceedings over the past year, Judge Weiner has repeatedly addressed precisely the same issue presented here: namely, whether asbestos personal injury settlement agreements negotiated by the Center for Claims Resolution, Inc. ("CCR"), an asbestos claims handling facility, create joint or separate liability for the defendant companies.   See Exhibits B-D hereto. Those rulings also make it clear that the issue here should be addressed within MDL 875 because it involves facts and circumstances that are known to Judge Weiner and that have been addressed in that litigation, including the nature of the CCR, the practice and custom of asbestos personal injury settlement agreements, and the knowledge of the asbestos personal injury lawyers who negotiate these agreements.

A transfer is also necessary and appropriate to achieve the purposes of §1407. The present suit is one part of hundreds of millions of dollars worth of asbestos settlement litigation caused by the nationwide settlement defaults of several former CCR members. Hence transfer is essential in order to enable Judge Weiner to manage the entire MDL 875 docket, including such matters as the effect of co-defendant defaults on settlement efforts, settlement funding, and

- 3 -

proper claim sequencing.  The Panel has recognized that Judge Weiner's role as the transferee judge involves taking precisely those considerations into account in managing the entire MDL 875 docket.

## BACKGROUND

### A.    Settlement Enforcement Litigation

This case and hundreds of others like it in courts across the United States have arisen from the recent defaults by several former CCR members on asbestos personal injury settlements negotiated by the CCR on their behalf.  Specifically, Armstrong World Industries, Inc. ("Armstrong"), GAF Corporation ("GAF"), and Asbestos Claims Management Corporation ("ACMC") were each formerly CCR members, but they each stopped paying their shares of CCR settlement obligations when they either withdrew from CCR membership or entered into bankruptcy reorganization.  Their defaults have impacted thousands of asbestos personal injury settlements and raised litigation in numerous courts to determine who will bear the burden of those defaults.

The CCR is a nonprofit Delaware corporation organized to represent its member asbestos companies in asbestos litigation.  Among other things, the CCR negotiates settlements on behalf of its members in asbestos personal injury lawsuits, and apportions shares of the resulting settlement obligations to the members according to a sharing formula agreed to by the members in the first instance.  GAF's membership was terminated in early 2000, and GAF thereupon refused to pay its share under any pending CCR settlement.  ACMC, itself the product of a prior bankruptcy reorganization, was long a regular member of the CCR, but now has withdrawn from the CCR and has ceased paying its settlement shares.  Armstrong, another long-time member, recently petitioned for bankruptcy reorganization and has likewise stopped paying.

- 4 -

In the face of these defaults, the CCR has forwarded to settling plaintiffs the amounts due under the settlements by its remaining members. Thousands of disappointed plaintiffs have moved to enforce their settlements in such cases, sometimes against the defaulting company, sometimes against the other CCR members, and occasionally against the CCR itself. As part of his responsibilities as the transferee judge in MDL 875, Judge Weiner has addressed this issue three times, ruling each time that only the defaulting member companies are liable for their unpaid settlement shares. See In re Aldridge (MDL 875, E.D. Pa. June 19, 2000) (Exhibit B); In re Bernhardt (MDL 875, E.D. Pa. June 14, 2000) (Exhibit C); In re Benson (MDL 875, E.D. Pa. June 9, 2000) (Exhibit D).

**B.     The Doval Complaint**

The Doval plaintiffs' personal injury claims were settled by the CCR on behalf of its member companies, who were sued in each case, by various settlement agreements during 2000. Their instant suit seeks to recover shortfall amounts caused by defaults of Armstrong and ACMC. The instant action alleges that Maremont, which is a CCR member, should be held liable for the unpaid Armstrong and ACMC settlement shares. See Doval Complaint, attached as Exhibit A hereto.

**ARGUMENT**

**A.     The Standards for Transfer Under §1407**

The MDL statute provides that "civil actions involving one or more common questions of fact" may be transferred for coordinated or consolidated pretrial proceedings if the Panel finds "that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. §1407(a).

- 5 -

**B.    The Panel Has Repeatedly Transferred Non-Personal Injury
        Claims Relating to Asbestos Personal Injury Litigation**

On July 29, 1991, the Panel transferred all federal cases "involving allegations of per-

sonal injury or wrongful death caused by asbestos" to the Eastern District of Pennsylvania, and

assigned them to Judge Weiner, under §1407.  In re Asbestos Prods. Liab. Litig., 771 F. Supp.

415, 416 (J.P.M.L. 1991).  In doing so, the Panel specifically held that all cases involving such

allegations should be transferred, regardless of allegedly unique or different claims or circum-

stances.  See id. at 421-22.  This was necessary, the Panel explained, because giving Judge

Weiner authority over even allegedly divergent claims is necessary to achieve pre-trial procedural

economies and because such claims may "affect the overall management of this litigation."  Id. at

422.

In subsequent orders within MDL 875, the Panel has consistently required that all cases

relating to asbestos personal injuries be transferred to Judge Weiner.  In doing so, the Panel has

repeatedly explained that "in the Panel's original decision distinctions based on such matters as

. . . the uniqueness of a party's status, the type of defendant, [and] the presence of unique claims

or additional claims not relating to asbestos injury or death, . . . were considered and rejected by

the Panel as grounds for carving out exceptions to transfer in this extraordinary docket."  Order

filed February 4, 2000, transferring Givens v. Witco Corp., C.A. No. 2:99-2283 (E.D. La.) et al.

(emphasis added) (Exhibit E).  The Panel has also repeatedly noted that parties who believe that

their actions should not be handled under MDL 875 can make their arguments to Judge Weiner,

and that the Panel is "not persuaded to depart from this approach."  Id.

- 6 -

Accordingly, the Panel has transferred numerous cases that did not present claims for asbestos personal injuries, but instead related to such claims. For example, the Panel has repeatedly transferred indemnification and contribution actions between traditional asbestos defendants.[1] In doing so, the Panel has recognized that such litigation necessarily impacts the direct litigation (because of its effect on the defendants' litigation and financial resources) and is likely to involve factual and evidentiary overlap with the direct litigation. As a result, the Panel has been unmoved by arguments that the lawsuit "technically . . . is not a claim for asbestos related personal injuries, but is rather one seeking indemnification for the sums previously paid . . . ." Order filed May 31, 1994, transferring American President Cos., Ltd. v. Babcock & Wilcox Co., No. 2:94-91 (W.D. Wash.) (Exhibit F).

Similarly, the Panel just last year transferred an action by Owens-Illinois, Inc., a major asbestos defendant, alleging that another traditional asbestos defendant had violated antitrust, fraud, and racketeering laws. Recognizing the factual overlap of the claims alleged with indemnification actions, and the fact that the damages sought would simply have produced the same effect as indemnification, the Panel transferred the action to Judge Weiner, reiterating its basic view of the breadth of MDL 875. See Order filed November 22, 2000, transferring Owens-Illinois, Inc. v. T&N, Ltd., C.A. No. 2:99-117 (E.D. Tex.) (Exhibit I).

The Panel has transferred actions even more removed from the core of asbestos personal injury litigation. For example, the Panel has transferred lawsuits challenging the professional

---

[1] See, e.g., Order filed May 31, 1994, transferring American President Cos., Ltd. v. Babcock & Wilcox Co., No. 2:94-91 (W.D. Wash.) (Exhibit F); Order filed February 26, 1993, transferring Conwed Corp. v. Union Carbide Corp., No. 5:92-88 (D. Minn.) (Exhibit G); Order filed October 5, 1999, denying remand in Conwed Corp. v. Union Carbide Corp., No. 5:92-88 (D. Minn.) (Exhibit H).

- 7 -

conduct of attorneys representing asbestos claimants, notwithstanding arguments that such cases

did not present claims for asbestos personal injuries.  See Order filed September 29, 1998,

transferring Raymark Indus., Inc. v. Baron, No. 3:98-673 (N.D. Tex.) (Exhibit J).  In particular,

the Panel held that such cases "can be expected to raise issues concerning not only the viability

of the underlying asbestos products liability claims, but also questions of judicial management

and discovery that are already (with respect to the MDL-875 cases) subject to the jurisdiction and

control of Judge Weiner."  Id. at 1.  Accord, Order filed September 25, 1996, transferring

Raymark Indus., Inc. v. Angelos, No. 1:96-940 (N.D. Ga.) (Exhibit K) (same); Order filed

January 29, 1998, transferring Raymark Corp. v. Baron, No. 1:97-109 (D. Utah) (Exhibit L)

(same).[2]

    In short, the Panel has repeatedly characterized MDL 875 as an "extraordinary docket"[3] to

which all cases with factual issues relating to asbestos personal injuries -- specifically including

indemnification cases -- should be transferred as an initial matter, regardless of "the presence of

unique claims or additional claims not relating to injury or death."[4]  The Panel has also consis-

tently held that parties who believe that "the uniqueness of their particular situation renders . . .

---

    [2] See also Order filed October 5, 1999, denying remand of Conwed Corp. v. Union
Carbide Corp., No. 5:92-88 (D. Minn.) (Exhibit H) (irrelevant that case involved workers'
compensation issues); Order filed October 1, 1993, transferring Keene Corp. v. Fiorelli, No.
1:93-2129 (E.D.N.Y.) (Exhibit M) (transferring "limited fund" class action filed by asbestos
defendant against asbestos plaintiffs, seeking to force a negotiated resolution of liabilities to
present and future claimants).

    [3] See Order filed September 29, 1998, transferring Raymark Indus., Inc. v. Baron, No.
3:98-673 (N.D. Tex.) (Exhibit J); Order filed February 4, 2000, transferring Givens v. Witco
Corp., C.A. No. 2:99-2283 (E.D. La.) (Exhibit E).

    [4] See Order filed September 29, 1998, transferring Raymark Indus., Inc. v. Baron, No.
3:98-673 (N.D. Tex.) (Exhibit J).

- 8 -

inclusion of their action in MDL-875 unnecessary or inadvisable" must present those arguments

to Judge Weiner, who is in the best position to determine whether the case should be handled as

part of the MDL docket.[5]  If Judge Weiner determines that the claims will not benefit from con-

solidated treatment, he can suggest that the Panel remand the claims.[6]

### C.     Judged Against Those Standards, The Present Case Plainly Should Be Transferred to Judge Weiner

When tested against those sweeping standards in this extraordinary MDL docket, it is

clear that the present case should be transferred to Judge Weiner, at least in the first instance.  To

begin with, it is evident that the issue here is closely intertwined with Judge Weiner's existing

jurisdiction and responsibilities in MDL 875, given that Judge Weiner has already repeatedly

addressed the precise issues presented by this case in the context of MDL 875.  See In re

---

[5]  See In re Asbestos Prods. Liab. Litig. (No. VI), 771 F. Supp. at 422 ("[B]ecause many
of the arguments of parties seeking exclusion from transfer are intertwined with the merits of
their claims or defenses and affect the overall management of this litigation, we are unwilling
* * * to carve out exceptions to transfer.  We prefer instead to give the transferee court the
opportunity to conduct a substantive review of such contentions and how they affect the whole
proceedings.").

[6]  See Order filed September 29, 1998, transferring Raymark Indus., Inc. v. Baron, No.
3:98-673 (N.D. Tex.) (Exhibit J) ("[A]ny parties that believe the uniqueness of their particular
situation renders inclusion of their action in MDL-875 unnecessary or inadvisable [may] then
present their arguments to the transferee judge, who, whenever he deems remand of any claims or
actions proper, invokes the available procedures whereby this may be accomplished with a
minimum of delay. . . .  We are confident that Judge Weiner will continue to promptly review
arguments for returning transferred actions or claims to their transferor courts and will take all
appropriate steps to assure their speedy return whenever he is convinced that retention in the
MDL-875 proceedings is no longer needed."); Order filed May 31, 1994, transferring American
President Cos. v. Babcock & Wilcox Co., No. 2:94-91 (W.D. Wash.) (Exhibit F) ("It may be on
further refinement of the issues and close scrutiny by the transferee court, American can be
remanded in advance of the other actions in the transferee district.  Should the transferee court
deem remand of any claims or actions appropriate, the transferee court can communicate this to
the Panel, and the Panel will accomplish remand with a minimum of delay.").

- 9 -

<u>Aldridge</u> (MDL 875, E.D. Pa. June 19, 2000) (Exhibit B); <u>In re Bernhardt</u> (MDL 875, E.D. Pa.

June 14, 2000) (Exhibit C); <u>In re Benson</u> (MDL 875, E.D. Pa. June 9, 2000) (Exhibit D).  Thus

the transferee judge in this matter, in whom the Panel's rules and precedents unambiguously vest

the authority to decide whether matters belong in MDL 875 in the first instance, has already

found it appropriate to rule on the very issues in this case in the context of MDL 875.[7]

This conclusion is also strongly supported by the fact that the claim at issue here raises

facts and evidence that are an integral part of the MDL 875 litigation.  As Judge Weiner's prior

rulings expressly show, the issue here raises such matters as the historical understandings of the

counsel and parties to asbestos personal injury litigation, their course of dealing, the level of

sophistication of the plaintiffs' asbestos bar, and the nature of the relationships among the

defendants.  Plainly those issues overlap with the existing MDL 875 docket, thereby making it

appropriate to handle any discovery and other proceedings in a coordinated fashion as part of that

docket.

Finally, this conclusion is confirmed by the substantial impact that the litigation arising

from the settlement defaults of former CCR members Armstrong, ACMC, and GAF could have

on the overall asbestos personal injury litigation.  As set forth above, those defaults amount of

---

[7] The Panel's Rule 7.6(d) provides that "[t]he Panel is reluctant to order remand absent a suggestion of remand from the transferee district court," and in the context of MDL 875 the Panel has repeatedly emphasized its desire that the decision whether an asbestos-related case belongs in MDL 875 rest, in the first instance, with Judge Weiner.  <u>See, e.g.</u>, Order filed May 31, 1994, transferring <u>American President Cos., Ltd.</u> v. <u>Babcock & Wilcox Co.</u>, No. 2:94-91 (W.D. Wash.) (Exhibit F); Order filed February 26, 1993, transferring <u>Conwed Corp.</u> v. <u>Union Carbide Corp.</u>, No. 5:92-88 (D. Minn.) (Exhibit G); Order filed October 5, 1999, denying remand in <u>Conwed Corp.</u> v. <u>Union Carbide Corp.</u>, No. 5:92-88 (D. Minn.) (Exhibit H);  Order filed September 25, 1996, transferring <u>Raymark Indus., Inc.</u> v. <u>Angelos</u>, No. 1:96-940 (N.D. Ga.) (Exhibit K); Order filed January 29, 1998, transferring <u>Raymark Corp.</u> v. <u>Baron</u>, No. 1:97-109 (D. Utah) (Exhibit L).

- 10 -

many millions of dollars and impact thousands of asbestos personal injury cases.  It is imperative

to Judge Weiner's "overall management of this litigation" that he have jurisdiction over matters

like Doval, which is part of a nationwide wave of litigation involving the disposition of very

large sums of settlement monies, the ultimate resolution of which will have significant impacts

on the prosecution and settlement of asbestos lawsuits.

In sum, extensive Panel precedent in MDL 875 shows that Doval should be transferred to

Judge Weiner for consolidated or coordinated pre-trial proceedings as part of MDL 875.  If the

Doval plaintiffs believe their claims should not be processed as part of MDL 875, that question

should be presented in the first instance to Judge Weiner, not to this Panel.

### Conclusion

The motion to transfer should be granted.

Respectfully submitted,

Richard M. Wyner
Shea & Gardner
1800 Massachusetts Ave., N.W.
Washington, DC  20036
(202) 828-2000

Counsel for Defendant Maremont
Corporation

April 5, 2001

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

APR 1 0 2001

FILED
CLERK'S OFFICE

|  |  |  |
|---|---|---|
| IN RE ASBESTOS PRODUCTS LIAB. LITIG. (NO VI) | ) ) ) ) | MDL 875 (Hon. Charles Weiner) |
| This Document Relates to: | ) ) ) |  |
| DOVAL ET AL., | ) ) |  |
| Plaintiffs, | ) ) ) |  |
| v. | ) ) | No. C-01-0540 JL (N.D. Cal.) |
| MAREMONT CORPORATION, | ) ) ) |  |
| Defendant. | ) ) ) |  |

### RULE 7.2(A)(ii) SCHEDULE ACCOMPANYING
### MOTION OF DEFENDANT MAREMONT
### CORPORATION TO TRANSFER AND CONSOLIDATE WITH MDL 875

The motion requests the transfer of one action, as follows:

| Complete Name of Action | Court in Which Action is Pending | Civil Action No. | Judge Assigned to Action |
|---|---|---|---|
| Rolando Doval, Consuelo Doval, Floyd Rogers, Herbert Grosswich, Elaine Grosswich, Dall Deweese, Tomianne Wiley, Diane Edwards as personal representative of Maurice Apley, and Margaret Rogers v. Maremont Corporation | U.S. District Court for the Northern District of California | No. C 01-0540 JL | The Honorable Maxine M. Chesney |

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 1 0 2001

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| IN RE ASBESTOS PRODUCTS LIAB. LITIG. (NO VI) | ) ) ) ) | MDL 875 (Hon. Charles Weiner) |
| This Document Relates to: | ) ) ) | |
| DOVAL ET AL., | ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. C-01-0540 JL (N.D. Cal.) |
| MAREMONT CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |

**RULE 7.2(A)(ii) SCHEDULE ACCOMPANYING
MOTION OF DEFENDANT MAREMONT
CORPORATION TO TRANSFER AND CONSOLIDATE WITH MDL 875**

The motion requests the transfer of one action, as follows:

| Complete Name of Action | Court in Which Action is Pending | Civil Action No. | Judge Assigned to Action |
|---|---|---|---|
| Rolando Doval, Consuelo Doval, Floyd Rogers, Herbert Grosswich, Elaine Grosswich, Dall Deweese, Tomianne Wiley, Diane Edwards as personal representative of Maurice Apley, and Margaret Rogers v. Maremont Corporation | U.S. District Court for the Northern District of California | No. C 01-0540 JL | The Honorable Maxine M. Chesney |

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 1 0 2001

## **PROOF OF SERVICE**

FILED
CLERK'S OFFICE

      I hereby certify that copies of the foregoing Motion of Defendant Maremont Corporation to Transfer and Consolidate with MDL 875 and supporting documents were served on April 9, 2001 by first-class mail on the following:

Clerk of the Court
United States District Court
Northern District of California
U.S. Courthouse
450 Golden Gate Avenue
P.O. Box 36060
San Francisco, CA  94102-3489

Harry F. Wartnick
Wartnick, Chaber, Harowitz & Tigerman
101 California St., Ste. 2200
San Francisco, CA  94111
      Counsel for Plaintiffs

Gene Locke
Greitzer & Locke
1500 Walnut Street
Philadelphia, PA  19102
      Plaintiff's Liaison Counsel

Richard C. Binzley
Thompson, Hine & Plory
127 Public Square
3900 Key Center
Cleveland, OH  44114
      Lead Counsel for Defendants in the Seamen Cases

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH  44115
      Counsel for the Goodall Defendants

David A. Damico
Burns, White & Hickton
2400 Fifth Avenue Place
120 Fifth Avenue
Pittsburgh, PA  15222
      Counsel for Fela Defendant

Raymond P. Porceno
Porceno & Hannon
Philadelphia Bourse Building, Suite 1000
Independence Mall East
Philadelphia, PA  19106
      Counsel for Fela Plaintiffs

Ellen B. Furman
Goldfein & Joseph
1600 Market Street, 33rd Floor
Philadelphia, PA 19103
      National Counsel

Susan M. Hanson
Stich, Angell, Kreidler & Muth, P.A.
The Crossings, Suite 120
250 2nd Avenue South
Minneapolis, MN  55401
      National Counsel

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
991 East Byrd Street
Richmond, VA  23219
      Counsel for Peripheral Defendant

Ronald L. Motley
Ness, Motley, Loadholt, Richardson & Poole
38 Bridgeside Boulevard
P.O. Box 1792
Mt. Pleasant, SC  29465
      Plaintiff's Liaison Counsel

Donald A. Powell
Buckingham, Doolittle & Burroughs
50 South Main Street
P.O. Box 1500
Akron, OH  44309
     National Counsel

John J. Repcheck
Marks, O'Neill
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA  15219
     Counsel for Peripheral Defendant

John D. Roven
John Roven & Associates
2190 North Loop West, Suite 410
Houston, TX  77018
     Counsel for Fela Plaintiffs

Richard D. Schuster
Vorys,m Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH  43216
     National Coordinating Counsel for BFGoodrich Co.

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli, LLP
Centre Square West, 15th Floor
Philadelphia, PA  19102
     Defendant's Liaison Counsel

Robet E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobacot Building
Detroit, MI  48226
     National Counsel

Andrew J. Trevelise
Reed, Smith, Shaw & McClay
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103
      Defendant's Liaison Counsel

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard, Sixth Floor
Lost Angeles, CA  90025
      National Counsel

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, NE
P.O. Box 998
Cedar Rapids, IA  52406
      National Counsel for Raymark Industries, Inc.

Christopher L. Sagers

A

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**APR 1 0 2001**

FILED
CLERK'S OFFICE

RECEIVED
CLERK'S OFFICE

2001 APR -5  P 12: 59

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

US OFFICE PRODUCTS

1   HARRY F. WARTNICK  (Bar No. 54761)
2   MADELYN J. CHABER  (Bar No. 88950)
    STEVEN M. HAROWITZ  (Bar No. 71117)
3   STEPHEN M. TIGERMAN  (Bar No. 112127)
    WARTNICK, CHABER, HAROWITZ & TIGERMAN
4   101 California Street, Suite 2200
    San Francisco, California  94111
5   Telephone     (415) 986-5566

6   Attorneys for Plaintiff

ENDORSED
F I L E D
San Francisco County Superior Court

JAN - 2 2001

GORDON PARK-LI, Clerk
BY: MONICO SD. MATEO, JR.
Deputy Clerk

PLAN I
STATUS CONFERENCE DATE:  JUN - 8 2001

7
8                    SUPERIOR COURT OF CALIFORNIA
9                      COUNTY OF SAN FRANCISCO
10
11  ROLANDO DOVAL; CONSUELO DOVAL; FLOYD        3 No 17823
    ROGERS; MARGARET ROGERS; HERBERT
12  GROSSICH; ELAINE GROSSICH; DALL DEWEESE;    )
    TOMIANNE WILEY; DIANNA EDWARDS, as Personal )
13  Representative of MAURICE APLEY, Decedent;   )   VERIFIED
                                                 )   COMPLAINT FOR
14               Plaintiffs,                      )    DAMAGES
                                                 )
15       vs.                                      )   Breach of Contract -
                                                 )   Unlimited Jurisdiction
16  MAREMONT CORPORATION,                        )
                                                 )
17               Defendant.                       )
                                                 )
18  _____      )
19

20                          FIRST CAUSE OF ACTION

21       PLAINTIFF DALL DEWEESE AND TOMIANNE WILEY COMPLAIN OF

22  DEFENDANT FOR BREACH OF CONTRACT AS FOLLOWS:

23       1.    At all times herein mentioned, defendant Maremont Corporation is and has been

24  a Delaware corporation authorized to do business in the State of California.

25       2.    At all times herein mentioned, defendant Maremont Corporation has been a

26  subscriber to the Agreement Concerning Asbestos-Related Claims signed October 6, 1988 (The

27  Center for Claims Resolution agreement).

28       3.    At the time that each of the plaintiffs' settlements referenced herein were

1   negotiated and concluded, James McFadden was an employee of The Center for Claims

Resolution and was authorized by Maremont Corporation to settle asbestos personal injury and

wrongful death claims.

4.      Since late 1988, the subscribers to The Center for Claims Resolution agreement,

(hereinafter, the "CCR Agreement") including defendant Maremont Corporation, have settled

approximately 1,100 asbestos-caused personal injury and wrongful death claims with clients

represented by Harry F. Wartnick.  In each and every one of these claims, the subscribers to

CCR Agreement, including defendant Maremont, demanded as a condition of settlement and

9   received a release extinguishing all claims for all injuries arising from these victims' asbestos

10  exposure as to each and every then subscriber to the CCR Agreement, including defendant

11  Maremont.

12  5.      In each of the approximately 1,100 settlements referenced in Paragraph No. 4,

13  the subscribers to the CCR Agreement offered and settled for one lump sum on behalf of each

14  of these subscribers to the CCR Agreement, including defendant Maremont Corporation, in

15  return for a signed compromise and release of all claims and a dismissal with prejudice as to

16  all subscribers to the CCR Agreement, including defendant Maremont Corporation.

17  6.      In return for the lump sum settlement amount, each subscriber to the CCR

18  Agreement received the same consideration for each and every subscriber to the CCR

19  Agreement; to wit, a signed compromise and release of all claims including unknown and

20  future claims, and a dismissal with prejudice of any pending action or actions for asbestos-

21  related personal injury or death.

22  7.      On or about August 25, 2000, James McFadden, on behalf of the subscribers to

23  the CCR Agreement, including Maremont Corporation, and Harry F. Wartnick, on behalf of

4   Dall DeWeese and Tomianne Wiley, agreed to a settlement of plaintiffs' asbestos-related

5   personal injury and wrongful death claims against the subscribers to the CCR Agreement in

6   return for payment of $135,000.

7   8.      As a condition of settlement, plaintiffs were required to sign a compromise and

28

1    release of all claims including unknown and future claims as to all subscribers to the CCR

2    Agreement.  In addition, plaintiffs agreed to give to the subscribers to the CCR Agreement a

3    filed-endorsed request for dismissal with prejudice of their asbestos-related claims against all

4    of the subscribers to the CCR Agreement.  These subscribers to the CCR Agreement,

5    including defendant Maremont Corporation, agreed to pay the sum of $135,000 to Wartnick,

6    Chaber, Harowitz & Tigerman in trust for the plaintiffs, in San Francisco, California, within

7    90 days of the date referenced in the preceding paragraph, or upon return of the signed

8    compromise and release of all claims and request for dismissal with prejudice, whichever

9    occurred latest.

10        9.    The subscribers to the CCR Agreement prepared and sent to plaintiffs' counsel a

11    compromise and release of all claims, including unknown and future claims.  Said document

2    was duly signed by plaintiffs and a request for dismissal with prejudice as to each of the

3    subscribers to the CCR Agreement was filed in the San Francisco Superior Court.  Said

4    documents were returned to The Center for Claims Resolution in October, 2000.  Copies of

5    said compromise and release of all claims including unknown and future claims and request for

5    dismissal with prejudice are attached hereto, marked Exh. A, and incorporated herein as

17    though set in full.

18        10.   Plaintiffs have performed all conditions, covenants, and promises required on

19    their part to be performed in accordance with this settlement agreement.

20        11.   Plaintiffs have demanded payment of the $135,000 owed which defendant has

21    refused to do.

22        12.   Paragraph 13 of the Compromise and Release of All Claims including unknown

23    and future claims provides for the payment of attorneys' fees in the event of a breach of

24    contract.  This obligation is mutual, pursuant to Civil Code § 1717.

25                            **SECOND CAUSE OF ACTION**

26        PLAINTIFFS ROLANDO DOVAL AND CONSUELO DOVAL COMPLAIN OF

27    DEFENDANT FOR BREACH OF CONTRACT AS FOLLOWS:

28

13.    Plaintiffs incorporates by reference paragraphs 1 through 6, inclusive, as though set forth in full.

14.    On or about September 12, 2000, James McFadden, on behalf of the subscribers to the CCR Agreement, including Maremont Corporation, and Harry F. Wartnick, on behalf of Rolando Doval and Consuelo Doval, agreed to a settlement of plaintiffs' asbestos-related personal injury and wrongful death against the subscribers to the CCR Agreement in return for the payment of $335,000.

15.    As a condition of settlement, plaintiffs were required to sign a compromise and release of all claims including unknown and future claims as to all subscribers to the CCR Agreement.  In addition, plaintiffs agreed to give to the subscribers to the CCR Agreement a filed-endorsed request for dismissal with prejudice of their asbestos-related claims against all of the subscribers to the CCR Agreement.  These subscribers to the CCR Agreement, including defendant Maremont Corporation, agreed to pay the sum of $335,000 to Wartnick, Chaber, Harowitz & Tigerman in trust for the plaintiffs, within 90 days of the date referenced in the preceding paragraph or upon receipt of the signed compromise and release of all claims and request for dismissal with prejudice, whichever occurred latest.

16.    The subscribers to the CCR Agreement prepared and sent to plaintiffs' counsel a compromise and release of all claims, including unknown and future claims.  Said document was duly signed by plaintiffs and a request for dismissal with prejudice as to each of these subscribers to the CCR Agreement was filed in the San Francisco Superior Court.  Said documents were returned to The Center for Claims Resolution in late October or early November, 2000.  Copies of said compromise and release of all claims including unknown and future claims and requests for dismissal with prejudice are attached hereto, marked Exh. C, and incorporated herein as though set in full.

17.    Plaintiffs have performed all conditions, covenants, and promises required on their part to be performed in accordance with this settlement agreement.

18.    Plaintiffs have demanded payment of the $335,000 owed which defendant has

1    refused to do.

2        19.    Paragraph 13 of the Compromise and Release of All Claims including unknown

3    and future claims provides for the payment of attorneys' fees in the event of a breach of

4    contract.  This obligation is mutual, pursuant to Civil Code § 1717.

## THIRD CAUSE OF ACTION

6    PLAINTIFFS MARGARET ROGERS AND FLOYD ROGERS COMPLAIN OF

7    DEFENDANT FOR BREACH OF CONTRACT AS FOLLOWS:

8        20.    Plaintiff incorporates by reference paragraphs 1 through 6, inclusive, as though

9    set forth in full.

10        21.    On or about August 25, 2000, James McFadden, on behalf of the subscribers to

11    the CCR Agreement, including Maremont Corporation, and Harry F. Wartnick, on behalf of

12    Margaret Rogers and Floyd Rogers, agreed to a settlement of plaintiffs' asbestos-related

13    personal injury and wrongful death against the subscribers to the CCR Agreement in return for

14    the payment of $200,000.

15        22.    As a condition of settlement, plaintiffs were required to sign a compromise and

16    release of all claims including unknown and future claims as to all subscribers to the CCR

17    Agreement.  In addition, plaintiffs agreed to give to the subscribers to the CCR Agreement a

18    filed-endorsed request for dismissal with prejudice of their asbestos-related claims against all

19    of the subscribers to the CCR Agreement.  These subscribers to the CCR Agreement,

20    including defendant Maremont Corporation, agreed to pay the sum of $200,000 to Wartnick,

21    Chaber, Harowitz & Tigerman in trust for the plaintiffs, in San Francisco, California, within

22    90 days or upon receipt of the signed compromise and release of all claims and request for

23    dismissal with prejudice, whichever occurred latest.

24        23.    The subscribers to the CCR Agreement prepared and sent to plaintiffs' counsel a

25    compromise and release of all claims, including unknown and future claims.  Said document

26    was duly signed by plaintiffs and a request for dismissal with prejudice as to each of these

27    subscribers to the CCR Agreement was filed in the San Francisco Superior Court.  Said

28

1   documents were returned to The Center for Claims Resolution in late October or early

2   November, 2000.  Copies of said compromise and release of all claims including unknown and

3   future claims and requests for dismissal with prejudice are attached hereto, marked Exh. D,

4   and incorporated herein as though set in full.

5          24.    Plaintiffs have performed all conditions, covenants, and promises required on

6   their part to be performed in accordance with this settlement agreement.

7          25.    Plaintiffs have demanded payment of the $200,000 owed which defendant has

8   refused to do.

9          26.    Paragraph 13 of the Compromise and Release of All Claims including unknown

10  and future claims provides for the payment of attorneys' fees in the event of a breach of

11  contract.  This obligation is mutual, pursuant to Civil Code § 1717.

12                          **FOURTH CAUSE OF ACTION**

13  PLAINTIFFS HERBERT GROSSICH AND ELAINE GROSSICH COMPLAIN OF

14  DEFENDANT FOR BREACH OF CONTRACT AS FOLLOWS:

15         27.    Plaintiff incorporates by reference paragraphs 1 through 6, inclusive, as though

16  set forth in full.

17         28.    On or about August 25, 2000, James McFadden, on behalf of the subscribers to

18  the CCR Agreement, including Maremont Corporation, and Harry F. Wartnick, on behalf of

19  Herbert Grossich and Elaine Grossich, agreed to a settlement of plaintiffs' asbestos-related

20  personal injury and wrongful death against the subscribers to the CCR Agreement in return for

21  the payment of $300,000.

22         29.    As a condition of settlement, plaintiffs were required to sign a compromise and

23  release of all claims including unknown and future claims as to all subscribers to the CCR

24  Agreement.  In addition, plaintiffs agreed to give to the subscribers to the CCR Agreement a

25  filed-endorsed request for dismissal with prejudice of their asbestos-related claims against all

26  of the subscribers to the CCR Agreement.  These subscribers to the CCR Agreement,

27  including defendant Maremont Corporation, agreed to pay the sum of $300,000 to Wartnick,

28

1   Chaber, Harowitz & Tigerman in trust for the plaintiffs, in San Francisco, California, within

2   90 days or upon receipt of the signed compromise and release of all claims and request for

3   dismissal with prejudice, whichever occurred latest.

4       30.    The subscribers to the CCR Agreement prepared and sent to plaintiffs' counsel a

5   compromise and release of all claims, including unknown and future claims.  Said document

6   was duly signed by plaintiffs and a request for dismissal with prejudice as to each of these

7   subscribers to the CCR Agreement was filed in the San Francisco Superior Court.  Said

8   documents were returned to The Center for Claims Resolution in late October or early

9   November, 2000.  Copies of said compromise and release of all claims including unknown and

10  future claims and requests for dismissal with prejudice are attached hereto, marked Exh. E,

11  and incorporated herein as though set in full.

12      31.    Plaintiffs have performed all conditions, covenants, and promises required on

13  their part to be performed in accordance with this settlement agreement.

14      32.    Plaintiffs have demanded payment of the $300,000 owed which defendant has

15  refused to do.

16      33.    Paragraph 13 of the Compromise and Release of All Claims including unknown

17  and future claims provides for the payment of attorneys' fees in the event of a breach of

18  contract.  This obligation is mutual, pursuant to Civil Code § 1717.

19                  **FIFTH CAUSE OF ACTION**

20      **PLAINTIFF DIANNA EDWARDS, AS PERSONAL REPRESENTATIVE OF**

21  **MAURICE APLEY, DECEASED, COMPLAINS OF DEFENDANT FOR BREACH OF**

22  **CONTRACT AS FOLLOWS:**

23      34.    Plaintiff incorporates by reference paragraphs 1 through 6, inclusive, as though

24  set forth in full.

25      35.    On or about May 18, 2000, James McFadden, on behalf of the subscribers to

26  the CCR Agreement, including Maremont Corporation, and Harry F. Wartnick, on behalf of

27  Maurice Apley, agreed to a settlement of plaintiffs' asbestos-related personal injury and

28

1    wrongful death against the subscribers to the CCR Agreement in return for the payment of

2    $200,000.

3        36.    As a condition of settlement, plaintiffs were required to sign a compromise and

4    release of all claims including unknown and future claims as to all subscribers to the CCR

5    Agreement.  In addition, plaintiffs agreed to give to the subscribers to the CCR Agreement a

6    filed-endorsed request for dismissal with prejudice of their asbestos-related claims against all

7    of the subscribers to the CCR Agreement.  These subscribers to the CCR Agreement,

8    including defendant Maremont Corporation, agreed to pay the sum of $200,000 to Wartnick,

9    Chaber, Harowitz & Tigerman in trust for the plaintiffs, in San Francisco, California, within

10   90 days or upon receipt of the signed compromise and release of all claims and request for

11   dismissal with prejudice, whichever occurred latest.

12       37.    Maurice Apley passed away on June 21, 2000.  Dianna Edwards is his personal

13   representative.

14       38.    The subscribers to the CCR Agreement prepared and sent to plaintiffs' counsel a

15   compromise and release of all claims, including unknown and future claims.  Said document

16   was duly signed by Diana Edwards and a request for dismissal with prejudice as to each of

17   these subscribers to the CCR Agreement was filed in the San Francisco Superior Court.  Said

18   documents were returned to The Center for Claims Resolution in November, 2000.  Copies of

19   said compromise and release of all claims including unknown and future claims and requests

20   for dismissal with prejudice are attached hereto, marked Exh. H, and incorporated herein as

21   though set in full.

22       39.    Plaintiffs have performed all conditions, covenants, and promises required on

23   their part to be performed in accordance with this settlement agreement.

24       40.    Plaintiffs have demanded payment of the $200,000 owed which defendant has

25   refused to do.

26       41.    Paragraph 13 of the Compromise and Release of All Claims including unknown

27   and future claims provides for the payment of attorneys' fees in the event of a breach of

28

defendants/ccr/comp.boc.1-2-01

8

COMPLAINT FOR DAMAGES
BREACH OF CONTRACT

1  contract.  This obligation is mutual, pursuant to Civil Code § 1717.

2       WHEREFORE, plaintiffs pray judgment against defendant as follows:

3       1.    To plaintiffs Dall DeWeese and Tomianne Wiley, compensatory damages in the

4  amount of $135,000;

5       2.    To plaintiffs Dall DeWeese and Tomianne Wiley, interest on the sum of

6  $135,000 from and after November 25, 2000;

7       3.    To Dall DeWeese and Tomianne Wiley, reasonable attorneys' fees according to

8  proof;

9       4.    To Dall DeWeese and Tomianne Wiley, costs of suit herein;

10       5.    To plaintiffs Rolando Doval and Consuelo Doval, compensatory damages in the

11  sum of $335,000;

12       6.    To Rolando Doval and Consuelo Doval, interest on the sum of $335,000 from

13  and after December 12, 2000;

14       7.    To Rolando Doval and Consuelo Doval, reasonable attorneys' fees according to

15  proof;

16       8.    To Rolando Doval and Consuelo Doval, costs of suit herein;

17       9.    To Floyd and Margaret Rogers, compensatory damages in the sum of $200,000;

18       10.    To Floyd and Margaret Rogers, interest on the sum of $200,000 from and after

19  November 25, 2000;

20       11.    To Floyd and Margaret Rogers, reasonable attorneys' fees according to proof;

21       12.    To Floyd and Margaret Rogers, costs of suit herein;

22       13.    To Herbert and Elaine Grossich, compensatory damages in the sum of

23  $300,000;

24       14.    To Herbert and Elaine Grossich, interest on the sum of $300,000 from and after

25  November 25, 2000;

26       15.    To Herbert and Elaine Grossich, reasonable attorneys' fees according to proof;

27       16.    To Herbert and Elaine Grossich, costs of suit herein;

28

1    17.    To Dianna Edwards, as personal representative of Maurice Apley, deceased,

2  compensatory damages in the sum of $200,000;

3    18.    To Dianna Edwards, as personal representative of Maurice Apley, deceased,

4  interest on the sum of $200,000 from and after November 20, 2000;

5    19.    To Dianna Edwards, as personal representative of Maurice Apley, deceased,

6  reasonable attorneys' fees according to proof;

7    20.    To Dianna Edwards, as personal representative of Maurice Apley, deceased,

8  costs of suit herein;

9    21.    For such other and further relief as the Court may deem proper.

10                          Respectfully submitted,

11  Dated:  January 2, 2001

12                          WARTNICK, CHABER, HAROWITZ
                            & TIGERMAN

13

14  BY _____
                            Harry F. Wartnick
15                          Attorney for Plaintiffs

16

17

18

19

20

21

22

23

24

25

26

27

28

## VERIFICATION

I, HARRY F. WARTNICK, am the attorney for each of the plaintiffs in the above-entitled action.  Each of the plaintiffs are absent from San Francisco County, where I maintain my office.  I have read the complaint and I am informed and believe the matters therein to be true, and on that ground allege that the matters stated therein are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed this 2nd day of January 2001 at San Francisco, California.

_____

HARRY F. WARTNICK

1

2000266787
CASF

**IBIBICIDIDIOII**

## COMPROMISE AND RELEASE OF ALL CLAIMS
## INCLUDING UNKNOWN AND FUTURE CLAIMS

    1.  Release of all Personal Injury and Death Claims:

(a)  THIS RELEASE EXTINGUISHES ALL CLAIMS FOR ALL INJURIES ARISING FROM OR RELATED TO ANY EXPOSURE TO ASBESTOS EXPERIENCED BY ROLANDO DOVAL INCLUDING BUT NOT LIMITED TO THOSE INJURIES NOW KNOWN, THOSE NOW EXISTING BUT UNKNOWN, THOSE THAT MANIFEST THEMSELVES IN THE FUTURE, AND THOSE THAT CAUSE HIS/HER DEATH. THIS RELEASE SPECIFICALLY EXTINGUISHES ALL CLAIMS BASED ON ANY CANCER OR MALIGNANCY.

    2.  Releasors:

(a)  Plaintiff:  ROLANDO DOVAL
      Social Security Number:  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

(b)  Plaintiff's spouse:  CONSUELO DOVAL
      Social Security Number:

(c)  Plaintiff's children: GILBERT DOVAL and  RICHARD ANTHONY DOVAL

(d)  Plaintiff's heirs, as defined by California Code of Civil Procedure Section 377(b).

    3.  Releasees:

    The Releasees are all subscribers to the Agreement Concerning Asbestos-Related Claims signed October 6, 1988 (The Center for Claims Resolution Agreement), and all of their predecessors and successors, their parent and subsidiary companies and divisions, and their current and former attorneys, liability insurance carriers, to the extent of their liability for Center non-insurance company subscribers only, officers, directors, agents, and employees.  The names of the subscribers are set out below:

    Manufacturers: Amchem Products, Inc.; Armstrong World Industries, Inc.; C.E. Thurston and Sons, Incorporated; Certain Teed Corporation; Dana Corporation; I.U. North America, Inc.; Maremont Corporation; National Services Industries Inc.; Nosroc Corp.; Pfizer Inc; Quigley Company, Inc.; Shook & Fletcher Insulation Co.; T & N, plc; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company;, Incorporated, and all distributors insofar as the liability of any distributor is predicated upon the distribution of products manufactured by Rhone Poulenc (Tendered To Amc)

4.  Preliminary Facts:

ROLANDO DOVAL alleges that he has been exposed to asbestos that the
asbestos was produced by or came from a product produced by one or more of the
Releasees, and that the exposure to asbestos has injured him.

Based on this exposure, ROLANDO DOVAL has filed suit, or is considering
filing suit, for damages arising from his personal injury.

Releasees desire to compromise and obtain a general release of all existing and
future claims that could possibly arise from these facts, without admitting liability.

5.  Terms of Settlement:

In consideration of $335,000.00, in total, Releasors release and forever discharge
Releasees from any and all claims arising from or related to any exposure to asbestos
experienced by ROLANDO DOVAL.   This release specifically includes, but is not
limited to, all wrongful death claims, all loss of consortium claims, and all claims based
on presently undiscovered or unmanifested injures (including any cancer and any
malignancy) arising from or related to any exposure to asbestos experienced by
ROLANDO DOVAL.

For the purpose of this release, the word "claims" includes all claims, demands,
actions, and suits of any kind.  For the purposes of this release, the word "injuries"
includes all injuries, illnesses, disabilities, losses, and harms of any kind including but not
limited to all emotional injuries.

This release does not cover claims for injuries allegedly suffered by the plaintiff's
spouse and children because of their personal exposure to asbestos or property damage
claims.

The consideration specified in this release shall be paid in the form of drafts or
checks payable to Releasor's counsel as trustee for Releasors.

6.  Unknown Injuries and Potential Wrongful-Death Claims:

Releasors understand that people exposed to asbestos may be subject to an
increased risk of contracting cancer, including but not limited to lung cancer and
mesothelioma.  Releasors also understand that ROLANDO DOVAL may have suffered
injuries that are as yet unknown to him/her and that unknown complications may arise
from conditions of which he/she is not aware.  Nevertheless, Releasors intend to release
and forever discharge Releasees from any claim for any injury arising from or related to
any exposure to asbestos experienced by ROLANDO DOVAL, including but not limited

2

to those injuries now known, those now existing but unknown, those that manifest themselves in the future, and those that cause his/her death.

Releasors hereby waive any right or benefit that Releasors may have, now or in the future, under Section 1542 of the Civil Code of the State of California, which reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

7.  Indemnity Against Claims by Lienholders:

Releasors warrant that they, or some of them are the sole owners of all claims of any kind arising out of the injuries covered in this Release.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim, brought by any holder of a lien or encumbrance, that is related to the injuries covered in this release, other than cross-complaints or cross-actions of co-defendants.   This indemnity agreement specifically does not cover cross-complaints or cross-actions of co-defendants.

8.  Indemnity Against Inaccuracy of Representation:

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting directly or indirectly from any falsity or inaccuracy of any representation made in this release by Releasors.

9.  Indemnity Against Wrongful-Death Claims:

Releasors warrant and represent that only they, or only some of them, would be legally entitled to bring suit based on an allegedly wrongful death of ROLANDO DOVAL.  Furthermore, they warrant that no wrongful death suit based on any exposure to asbestos experienced by ROLANDO DOVAL will be brought by anyone against Releasees.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any wrongful death suit, brought by anyone, based on any exposure to asbestos experienced by ROLANDO DOVAL.

10.  Indemnity Against Claims by Minors and Unborn Children:

Releasors understand that any minors among the Releasors may have the legal right to disaffirm this contract. Releasors agree that this release is not intended to expand whatever legal rights a minor may have to disaffirm this release and Releasees reserve the right to challenge any attempted disaffirmance of it. All Releasors who are not minors agree that this release will remain binding on them even if a minor disaffirms it.

Furthermore, all Releasors who are not minors agree to indemnify Releasees against all liability, including, but not limited to, all attorneys' fees and expenses, resulting from (1) any attempted disaffirmance, whether successful or not, and (2) any claim brought by a Releasor who is now a minor that arises from or is related to any exposure to asbestos experienced by ROLANDO DOVAL.

Releasors also agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim brought by any child now unborn that arises from or is related to any exposure to asbestos experienced by ROLANDO DOVAL

11.  Warranty of Good-Faith Compromise of Disputed Claims:

Releasors warrant and represent the following:

(a)  Releasors agree that this release is a compromise of doubtful and disputed claims, and that payment is not to be construed as an admission of liability. Releasors also agree that this release shall not be admissible as evidence in any suit of proceeding whatsoever as evidence or admission of any liability.

(b)  Releasors warrant that this release has been entered into in good faith for the purpose of resolving disputed and uncertain claims.

(c)  Releasors warrant that they will use their best efforts to obtain court approval of this release, including a determination that this settlement has been entered into in good faith, and that they will fully cooperate with Releasees and their counsel in their efforts to obtain the determination and an order, in accordance with Section 877.6 of the Code of Civil Procedure dismissing cross- complaints.

12.  Persons Bound:

This release is binding on Releasors, collectively and individually, and on all their heirs, devisees, executors, administrators, personal representatives, and assigns. Each warranty and each agreement in this release is enforceable against Releasors collectively and each Releasor individually.

13.  Remedies for Breach:

4

Releasors agree to pay for attorneys' fees, expenses, and costs incurred by Releasees as a result of any proceeding brought or maintained by Releasors or by any Releasor in breach of this release.

14.  Authorization to File Dismissal:

Releasors authorize their counsel to execute a request for dismissal with prejudice of Releasees in the SUPERIOR COURT in SAN FRANCISCO COUNTY, CALIFORNIA - NORTH, DOCKET#: 311206, which is entitled "ROLANDO DOVAL VS RAYBESTOS-MANHATTAN INC ET AL". Releasors authorize counsel for Releasees to file the request for dismissal after Releasees have paid Releasors, or Releasors' counsel as their trustee, the consideration specified in this release. Releasors also agree to dismiss Releasees from all other past or future claims, brought by any of them, that are in any way connected with any exposure to asbestos experienced by ROLANDO DOVAL.

15. Releasors Warrant That They Have Read This Release:

RELEASORS HEREBY WARRANT THAT THEY HAVE READ THIS RELEASE IN ITS ENTIRETY, HAVE HAD IT FULLY EXPLAINED TO THEM, AND FULLY UNDERSTAND AND APPRECIATE ITS TERMS AND THEIR CONSEQUENCES.

Releasors understand that this release is a full, complete and final release and that the sum of $335,000.00 is the total amount asbestos experienced by ROLANDO DOVAL.

_____   Dated: __09/29/00__
ROLANDO DOVAL

Subscribed and sworn to before me this 29 day of SEPTEMBER, 2000

_____
NOTARY PUBLIC

My Commission Expires: __12/15/00__

Rolando Palou
Notary Public, State of Florida
My Comm. Expires Dec 15, 2000
No. CC607682
Bonded Thru: Official Notary Service
1-(800) 723-0121

_____ Dated: 09/29/00
CONSUELO DOVAL

Subscribed and sworn to before me this 29 day of SEPTEMBER, 2000

_____
NOTARY PUBLIC

My Commission Expires: __12/15/00__

Rolando Palou
Notary Public, State of Florida
My Comm. Expires Dec 15, 2000
No. CC607682
Bonded Thru: Official Notary Service
1-(800) 723-0121

_Gilbert Doval_                    Dated: __09/29/00__
GILBERT DOVAL

Subscribed and sworn to before me this __29__ day of __SEPTEMBER__, __2000__.

_Rolando Palou_
NOTARY PUBLIC

Rolando Palou
Notary Public, State of Florida
My Comm. Expires Dec 15, 2000
No. CC607682
Bonded Thru: Official Notary Service
1-(800) 723-0121

My Commission Expires: __12/15/00__

_Richard A. Doval_          Dated: __09/29/00__
RICHARD ANTHONY DOVAL

Subscribed and sworn to before me this __29__ day of __SEPTEMBER__, __2000__.

_Rolando Palou_
NOTARY PUBLIC

Rolando Palou
Notary Public, State of Florida
My Comm. Expires Dec 15, 2000
No. CC607682
Bonded Thru: Official Notary Service
1-(800) 723-0121

My Commission Expires: __12/15/00__

This release was executed with my approval, and under my direction and advice. Its provisions and their consequences have been fully explained to Releasors.

Dated: __10/17/00__

WARTNICK, CHABER,
HAROWITZ, SMITH & TIGERMAN

7

## ADDENDUM TO PERSONAL INJURY RELEASE
## HOLD HARMLESS AGREEMENT

### (To be used as Missing Heir(s) Provision)

I, ROLANDO DOVAL, recognize that as a part of the settlement of my personal injury case, the Center for Claims Resolution defendants wish to obtain releases and buy their peace with respect to potential claims that could be brought by my estate or my heirs should I die of asbestos related disease. It is my intention and desire to conclude a settlement in which the Center for Claims Resolution defendants will be released from any personal injury claim and also from any potential claim for wrongful death that might follow.

By this document I do the following:

I, on behalf of myself and my estate, agree to indemnify and hold harmless any Center for Claims Resolution defendants against any claims presented in the future by said potential heirs. It is my wish and intention that should said heirs present a claim, my estate will upon tender undertake to defend said Center for Claims Resolution defendants against such claim, and should such defense be unsuccessful, indemnify and hold harmless said Center for Claims Resolution defendants against any judgment obtained by said heirs. I understand that this is a contractual undertaking on my part which is binding upon me and my estate and is given by me in return for fair and valuable consideration to wit, the agreement by Center for Claims Resolution defendants in reliance, in part, upon this document, to pay me funds which I believe to be fair and reasonable in settlement of claims for my personal injury and potential wrongful death.

DATED: 09/29/00

SIGNED: _Rolando Doval_

(Please attach notary's acknowledgement)

CAWCPIFL
September 18, 2000
3:42 PM

State of Florida
County of Dade
on 09-29-00
Before me Rolando Palo
signer Rolando Doval

Rolando Palou
Notary Public, State of Florida
My Comm. Expires Dec. 15, 2000
No. CC607682
Bonded Thru: Official Notary Service
1-(800) 723-0121

8

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*: | TELEPHONE NO.: 415-986-5566 | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*:

TELEPHONE NO.: 415-986-5566

Wartnick, Chaber, Harowitz, Tigerman, et al.
101 California Street, Suite 2200
San Francisco, CA  94111-5802

ATTORNEY FOR *(Name)*:   PLAINTIFF(S)

Insert name of court and name of judicial district and branch court, if any:

Superior Court of the State of California
City and County of San Francisco

PLAINTIFF/PETITIONER: Rolando Doval, et al.

DEFENDANT/RESPONDENT: RAYBESTOS-MANHATTAN, INC. et.al.

FOR COURT USE ONLY

**ENDORSED**
**F I L E D**
*San Francisco County Superior Court*

OCT 2 0 2000

**ALAN CARLSON, Clerk**
BY: ____KEVIN R. DOUGHERTY____
**Deputy Clerk**

**REQUEST FOR DISMISSAL**

[X] Personal Injury, Property Damage, or Wrongful Death
   [ ] Motor Vehicle   [ ] Other
[ ] Family Law
[ ] Eminent Domain
[X] Other *(specify)*: ASBESTOS

CASE NUMBER:
311206

— A conformed copy will not be returned by the clerk unless a method of return is provided with the document. —

1. TO THE CLERK: Please dismiss this action as follows:

  a. (1) [X] With prejudice   (2) [ ] Without prejudice

  b. (1) [X] Complaint   (2) [ ] Petition
    (3) [ ] Cross-complaint filed by *(name)*:                         on *(date)*:
    (4) [ ] Cross-complaint filed by *(name)*:                         on *(date)*:
    (5) [ ] Entire action of all parties and all causes of action
    (6) [X] Other *(specify)*:* As to the defendant(s) on the attached list, only.

Date: October 11, 2000

HARRY F. WARTNICK
(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

WARTNICK, CHABER, HAROWITZ, et al.

▶ _____
                        (SIGNATURE)
Attorney or party without attorney for:   PLAINTIFF(S)

\* If dismissal requested is of specified parties only, of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

[ ] Plaintiff/Petitioner      [ ] Defendant/Respondent
[ ] Cross-complainant

2. TO THE CLERK: Consent to the above dismissal is hereby given.**

Date:

▶ _____
                        (SIGNATURE)
Attorney or party without attorney for:

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

** If a cross-complaint - or Response (Family Law) seeking affirmative relief - is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581(i) or (j).

[ ] Plaintiff/Petitioner      [ ] Defendant/Respondent
[ ] Cross-complainant

*(To be completed by clerk)*

3. [ ] Dismissal entered as requested on *(date)*:
4. [ ] Dismissal entered on *(date)*:          as to only *(name)*:
5. [ ] Dismissal not entered as requested for the following reasons *(specify)*:

6. [ ] a. Attorney or party without attorney notified on *(date)*:
      b. Attorney or party without attorney not notified. Filing party failed to provide
        [ ] a copy to conform    [ ] means to return conformed copy

Date:                          Clerk, by _____ , Deputy

Form Adopted by the
Judicial Council of California
982(a)(5) [Rev. January 1, 1997]
Mandatory Form

**REQUEST FOR DISMISSAL**

LEGAL
SOLUTIONS

Code of Civil Procedure, § 581 et seq.
Cal. Rules of Court, rules 383, 1233

This dismissal applies only to defendant members as follows:

Anchem Products, Inc.; Armstrong World Industries, Inc., formerly known as Armstrong Cork Company; CertainTeed Corporation; C.E. Thurston and Sons, Inc.; Dana Corporation; (Formerly known as Nuturn Corporation); I.U. North America, Inc.; Maremont Corporation; (The Grizzly Manufacturing Company; The Grizzly Division of Maremont Corporation); National Service Industries, Inc.; NOSROC Corp.; Pfizer, Inc.; Quigley Company, Inc.; Shook & Fletcher Insulation Company; T&N plc, formerly known as Turner & Newall PLC, formerly known as Turner & Newall LTD; Turner & Newall Industries; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company.

2000260943
CASF



## COMPROMISE AND RELEASE OF ALL CLAIMS
## INCLUDING UNKNOWN AND FUTURE CLAIMS

1.  Release of all Personal Injury and Death Claims:

(a)  THIS RELEASE EXTINGUISHES ALL CLAIMS FOR ALL INJURIES ARISING FROM OR RELATED TO ANY EXPOSURE TO ASBESTOS EXPERIENCED BY FLOYD ED ROGERS INCLUDING BUT NOT LIMITED TO THOSE INJURIES NOW KNOWN, THOSE NOW EXISTING BUT UNKNOWN, THOSE THAT MANIFEST THEMSELVES IN THE FUTURE, AND THOSE THAT CAUSE HIS/HER DEATH. THIS RELEASE SPECIFICALLY EXTINGUISHES ALL CLAIMS BASED ON ANY CANCER OR MALIGNANCY.

2.  Releasors:

(a)  Plaintiff: FLOYD ED ROGERS
     Social Security Number: 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

(b)  Plaintiff's spouse: MARGARET ROGERS
     Social Security Number:

(c)  Plaintiff's children: DONALD ROGERS and MARY KATHLEEN ROGERS

(d)  Plaintiff's heirs, as defined by California Code of Civil Procedure Section 377(b).

3.  Releasees:

The Releasees are all subscribers to the Agreement Concerning Asbestos-Related Claims signed October 6, 1988 (The Center for Claims Resolution Agreement), and all of their predecessors and successors, their parent and subsidiary companies and divisions, and their current and former attorneys, liability insurance carriers, to the extent of their liability for Center non-insurance company subscribers only, officers, directors, agents, and employees. The names of the subscribers are set out below:

Manufacturers: Amchem Products, Inc.; Armstrong World Industries, Inc.; C.E. Thurston and Sons, Incorporated; Certain Teed Corporation; Dana Corporation; I.U. North America, Inc.; Maremont Corporation; National Services Industries Inc.; Nosroc Corp.; Pfizer Inc; Quigley Company, Inc.; Shook & Fletcher Insulation Co.; T & N, plc; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company;, Incorporated, and all distributors insofar as the liability of any distributor is predicated upon the distribution of products manufactured by Rhone Poulenc (Tendered To Amc)

4. Preliminary Facts:

FLOYD ED ROGERS alleges that he has been exposed to asbestos that the asbestos was produced by or came from a product produced by one or more of the Releasees, and that the exposure to asbestos has injured him.

Based on this exposure, FLOYD ED ROGERS has filed suit, or is considering filing suit, for damages arising from his personal injury.

Releasees desire to compromise and obtain a general release of all existing and future claims that could possibly arise from these facts, without admitting liability.

5. Terms of Settlement:

In consideration of $200,000.00, in total, Releasors release and forever discharge Releasees from any and all claims arising from or related to any exposure to asbestos experienced by FLOYD ED ROGERS. This release specifically includes, but is not limited to, all wrongful death claims, all loss of consortium claims, and all claims based on presently undiscovered or unmanifested injures (including any cancer and any malignancy) arising from or related to any exposure to asbestos experienced by FLOYD ED ROGERS.

For the purpose of this release, the word "claims" includes all claims, demands, actions, and suits of any kind. For the purposes of this release, the word "injuries" includes all injuries, illnesses, disabilities, losses, and harms of any kind including but not limited to all emotional injuries.

This release does not cover claims for injuries allegedly suffered by the plaintiff's spouse and children because of their personal exposure to asbestos or property damage claims.

The consideration specified in this release shall be paid in the form of drafts or checks payable to Releasor's counsel as trustee for Releasors.

6. Unknown Injuries and Potential Wrongful-Death Claims:

Releasors understand that people exposed to asbestos may be subject to an increased risk of contracting cancer, including but not limited to lung cancer and mesothelioma. Releasors also understand that FLOYD ED ROGERS may have suffered injuries that are as yet unknown to him/her and that unknown complications may arise from conditions of which he/she is not aware. Nevertheless, Releasors intend to release and forever discharge Releasees from any claim for any injury arising from or related to any exposure to asbestos experienced by FLOYD ED ROGERS, including but not limited

2

to those injuries now known, those now existing but unknown, those that manifest themselves in the future, and those that cause his/her death.

Releasors hereby waive any right or benefit that Releasors may have, now or in the future, under Section 1542 of the Civil Code of the State of California, which reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

7.   Indemnity Against Claims by Lienholders:

Releasors warrant that they, or some of them are the sole owners of all claims of any kind arising out of the injuries covered in this Release.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim, brought by any holder of a lien or encumbrance, that is related to the injuries covered in this release, other than cross-complaints or cross-actions of co-defendants.   This indemnity agreement specifically does not cover cross-complaints or cross-actions of co-defendants.

8.   Indemnity Against Inaccuracy of Representation:

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting directly or indirectly from any falsity or inaccuracy of any representation made in this release by Releasors.

9.   Indemnity Against Wrongful-Death Claims:

Releasors warrant and represent that only they, or only some of them, would be legally entitled to bring suit based on an allegedly wrongful death of FLOYD ED ROGERS.  Furthermore, they warrant that no wrongful death suit based on any exposure to asbestos experienced by FLOYD ED ROGERS will be brought by anyone against Releasees.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any wrongful death suit, brought by anyone, based on any exposure to asbestos experienced by FLOYD ED ROGERS.

10.   Indemnity Against Claims by Minors and Unborn Children:

Releasors understand that any minors among the Releasors may have the legal right to disaffirm this contract. Releasors agree that this release is not intended to expand whatever legal rights a minor may have to disaffirm this release and Releasees reserve the right to challenge any attempted disaffirmance of it. All Releasors who are not minors agree that this release will remain binding on them even if a minor disaffirms it.

Furthermore, all Releasors who are not minors agree to indemnify Releasees against all liability, including, but not limited to, all attorneys' fees and expenses, resulting from (1) any attempted disaffirmance, whether successful or not, and (2) any claim brought by a Releasor who is now a minor that arises from or is related to any exposure to asbestos experienced by FLOYD ED ROGERS.

Releasors also agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim brought by any child now unborn that arises from or is related to any exposure to asbestos experienced by FLOYD ED ROGERS

11. Warranty of Good-Faith Compromise of Disputed Claims:

Releasors warrant and represent the following:

(a) Releasors agree that this release is a compromise of doubtful and disputed claims, and that payment is not to be construed as an admission of liability. Releasors also agree that this release shall not be admissible as evidence in any suit of proceeding whatsoever as evidence or admission of any liability.

(b) Releasors warrant that this release has been entered into in good faith for the purpose of resolving disputed and uncertain claims.

(c) Releasors warrant that they will use their best efforts to obtain court approval of this release, including a determination that this settlement has been entered into in good faith, and that they will fully cooperate with Releasees and their counsel in their efforts to obtain the determination and an order, in accordance with Section 877.6 of the Code of Civil Procedure dismissing cross- complaints.

12. Persons Bound:

This release is binding on Releasors, collectively and individually, and on all their heirs, devisees, executors, administrators, personal representatives, and assigns. Each warranty and each agreement in this release is enforceable against Releasors collectively and each Releasor individually.

13. Remedies for Breach:

4

Releasors agree to pay for attorneys' fees, expenses, and costs incurred by Releasees as a result of any proceeding brought or maintained by Releasors or by any Releasor in breach of this release.

14.  Authorization to File Dismissal:

Releasors authorize their counsel to execute a request for dismissal with prejudice of Releasees in the SUPERIOR COURT in SAN FRANCISCO COUNTY, CALIFORNIA - NORTH, DOCKET#: 310210, which is entitled "FLOYD ED ROGERS V RAYBESTOS-MANHATTAN ET AL". Releasors authorize counsel for Releasees to file the request for dismissal after Releasees have paid Releasors, or Releasors' counsel as their trustee, the consideration specified in this release. Releasors also agree to dismiss Releasees from all other past or future claims, brought by any of them, that are in any way connected with any exposure to asbestos experienced by FLOYD ED ROGERS.

15. Releasors Warrant That They Have Read This Release:

RELEASORS HEREBY WARRANT THAT THEY HAVE READ THIS RELEASE IN ITS ENTIRETY, HAVE HAD IT FULLY EXPLAINED TO THEM, AND FULLY UNDERSTAND AND APPRECIATE ITS TERMS AND THEIR CONSEQUENCES.

Releasors understand that this release is a full, complete and final release and that the sum of $200,000.00 is the total amount asbestos experienced by FLOYD ED ROGERS.

_Floyd Ed Rogers_                     Dated: _9-25-2000_
FLOYD ED ROGERS

Subscribed and sworn to before me this _25_ day of _Sept._, _2000_.

_Mary de Jesus Guerrero_
NOTARY PUBLIC

MARY DE JESUS GUERRERO
Commission # 1126829
Notary Public — California
Tulare County
My Comm. Expires Feb 9, 2001

My Commission Expires: _2-9-2001_

_Margaret Rogers_                     Dated: _9.25.00_
MARGARET ROGERS

Subscribed and sworn to before me this _25_ day of _Sept._, _2000_

_Mary de Jesus Guerrero_
NOTARY PUBLIC

MARY DE JESUS GUERRERO
Commission # 1126829
Notary Public — California
Tulare County
My Comm. Expires Feb 9, 2001

My Commission Expires: _2-9-2001_

_____       Dated:_____
DONALD ROGERS


Subscribed and sworn to before me this _____ day of _____, _____.


_____
NOTARY PUBLIC


My Commission Expires:_____


*Mary Kathleen Rogers*      Dated: _9/28/00_
MARY KATHLEEN ROGERS


Subscribed and sworn to before me this 28th day of _September_, 2000


*Eva Guralny*
NOTARY PUBLIC

> **EVA GURALNY**
> Notary Public - Nevada
> No. 99-36043-1
> My appt. exp. Jan. 26, 2003


My Commission Expires:_____


    This release was executed with my approval, and under my direction and advice. Its provisions and their consequences have been fully explained to Releasors.


_____       Dated: _10-17-00_
WARTNICK CHABER,
HAROWITZ, SMITH & TIGERMAN


7

_Donald E. Rogers_      Dated: _Oct·3/2000_
DONALD ROGERS

Subscribed and sworn to before me this _3rd_ day of _October_, _2000_

_Angie Van Rooyen_
NOTARY PUBLIC

My Commission Expires: _July 18, 2002_

ANGIE VAN ROOYEN
COMM. # 1187778
NOTARY PUBLIC-CALIFORNIA
CONTRA COSTA COUNTY
COMM. EXP. JULY 18, 2002

_____      Dated:_____
MARY KATHLEEN ROGERS

Subscribed and sworn to before me this _____ day of _____, _____.

_____
NOTARY PUBLIC

My Commission Expires:_____

    This release was executed with my approval, and under my direction and advice. Its provisions and their consequences have been fully explained to Releasors.

_____      Dated: _10-17-00_
WARTNICK, CHABER,
HAROWITZ, SMITH & TIGERMAN

7

## ADDENDUM TO PERSONAL INJURY RELEASE
## HOLD HARMLESS AGREEMENT

### (To be used as Missing Heir(s) Provision)

I, FLOYD ED ROGERS, recognize that as a part of the settlement of my personal injury case, the Center for Claims Resolution defendants wish to obtain releases and buy their peace with respect to potential claims that could be brought by my estate or my heirs should I die of asbestos related disease. It is my intention and desire to conclude a settlement in which the Center for Claims Resolution defendants will be released from any personal injury claim and also from any potential claim for wrongful death that might follow.

By this document I do the following:

I, on behalf of myself and my estate, agree to indemnify and hold harmless any Center for Claims Resolution defendants against any claims presented in the future by said potential heirs. It is my wish and intention that should said heirs present a claim, my estate will upon tender undertake to defend said Center for Claims Resolution defendants against such claim, and should such defense be unsuccessful, indemnify and hold harmless said Center for Claims Resolution defendants against any judgment obtained by said heirs. I understand that this is a contractual undertaking on my part which is binding upon me and my estate and is given by me in return for fair and valuable consideration to wit, the agreement by Center for Claims Resolution defendants in reliance, in part, upon this document, to pay me funds which I believe to be fair and reasonable in settlement of claims for my personal injury and potential wrongful death.

DATED: _9 - 25 - 2000_

SIGNED: _Floyd Ed Rogers_

(Please attach notary's acknowledgement)

> MARY DE JESUS GUERRERO
> Commission # 1126829
> Notary Public — California
> Tulare County
> My Comm. Expires Feb 9, 2001

_Mary de Jesus Guerrero_
_9-25-2000_

CAWCPIFL
September 18, 2000
3:42 PM

8

## NOTARY ACKNOWLEDGEMENT

State of __CALIFORNIA__

County of __TULARE__

On __9-25-2000__, before me __MARY DE JESUS GUERRERO__
                                    Notary Public

personally appeared __FLOYD EDWARD ROGERS__
                        Name(s) of Signer(s)

_____X_____ personally known to me

_____X_____ proved to me on the basis of
            satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s), or the entity upon behalf
of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

MARY DE JESUS GUERRERO
Commission # 1126429
Notary Public — California
Tulare County
My Comm. Expires Feb 9, 2001

• place notary seal above •

_Mary de Jesus Guerrero_
        signature of notary public

8

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*: | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|

**TELEPHONE NO.:** 415-986-5566

Wartnick, Chaber, Harowitz, Tigerman,et al.
101 California Street, Suite 2200
San Francisco, CA  94111-5802

ATTORNEY FOR *(Name)*:   PLAINTIFF(S)

Insert name of court and name of judicial district and branch court, if any:
Superior Court of the State of California
City and County of San Francisco

PLAINTIFF/PETITIONER: Floyd Rogers, et al.

DEFENDANT/RESPONDENT: RAYBESTOS-MANHATTAN, INC. et.al.

*FOR COURT USE ONLY*

ENDORSED
F I L E D
San Francisco County Superior Court

OCT 2 0 2000

ALAN CARLSON, Clerk
BY: _____ KEVIN R. Berrill
Deputy Clerk

### REQUEST FOR DISMISSAL

[X] **Personal Injury, Property Damage, or Wrongful Death**
    [ ] **Motor Vehicle**    [ ] **Other**
[ ] **Family Law**
[ ] **Eminent Domain**
[X] **Other** *(specify)*: ASBESTOS

**CASE NUMBER:**
310210

— A conformed copy will not be returned by the clerk unless a method of return is provided with the document. —

**1. TO THE CLERK:** Please dismiss this action as follows:

  **a.** (1) [X] With prejudice    (2) [ ] Without prejudice

  **b.** (1) [X] Complaint    (2) [ ] Petition
    (3) [ ] Cross-complaint filed by *(name)*:    on *(date)*:
    (4) [ ] Cross-complaint filed by *(name)*:    on *(date)*:
    (5) [ ] Entire action of all parties and all causes of action
    (6) [X] Other *(specify)*:* As to the defendant(s) on the attached list, only.

Date: October 13, 2000

HARRY F. WARTNICK

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

* If dismissal requested is of specified parties only, of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

WARTNICK, CHABER, HAROWITZ, et al.

*(SIGNATURE)*
Attorney or party without attorney for:  PLAINTIFF(S)

[ ] Plaintiff/Petitioner    [ ] Defendant/Respondent
[ ] Cross-complainant

**2. TO THE CLERK:** Consent to the above dismissal is hereby given.**

Date:

_____
(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

** If a cross-complaint — or Response (Family Law) seeking affirmative relief — is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581(i) or (j).

*(SIGNATURE)*
Attorney or party without attorney for:

[ ] Plaintiff/Petitioner    [ ] Defendant/Respondent
[ ] Cross-complainant

*(To be completed by clerk)*
3. [ ] Dismissal entered as requested on *(date)*:
4. [ ] Dismissal entered on *(date)*:    as to only *(name)*:
5. [ ] Dismissal not entered as requested for the following reasons *(specify)*:

6. [ ] a. Attorney or party without attorney notified on *(date)*:
    b. Attorney or party without attorney not notified. Filing party failed to provide
      [ ] a copy to conform    [ ] means to return conformed copy

Date: _____    Clerk, by _____, Deputy

Form Adopted by the
Judicial Council of California
982(a)(5) [Rev. January 1, 1997]
Mandatory Form

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.
Cal. Rules of Court, rules 383, 1233

This dismissal applies only to defendant members as follows:

Anchem Products, Inc.; Armstrong World Industries, Inc., formerly known as Armstrong Cork Company; CertainTeed Corporation; C.E. Thurston and Sons, Inc.; Dana Corporation; (Formerly known as Nuturn Corporation); I.U. North America, Inc.; Maremont Corporation; (The Grizzly Manufacturing Company; The Grizzly Division of Maremont Corporation); National Service Industries, Inc.; NOSROC Corp.; Pfizer, Inc.; Quigley Company, Inc.; Shook & Fletcher Insulation Company; T&N plc, formerly known as Turner & Newall PLC, formerly known as Turner & Newall LTD; Turner & Newall Industries; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company.

2000262081
CASF



## COMPROMISE AND RELEASE OF ALL CLAIMS
## INCLUDING UNKNOWN AND FUTURE CLAIMS

1.  Release of all Personal Injury and Death Claims:

(a)  THIS RELEASE EXTINGUISHES ALL CLAIMS FOR ALL INJURIES ARISING FROM OR RELATED TO ANY EXPOSURE TO ASBESTOS EXPERIENCED BY HERBERT GROSSICH INCLUDING BUT NOT LIMITED TO THOSE INJURIES NOW KNOWN, THOSE NOW EXISTING BUT UNKNOWN, THOSE THAT MANIFEST THEMSELVES IN THE FUTURE, AND THOSE THAT CAUSE HIS/HER DEATH. THIS RELEASE SPECIFICALLY EXTINGUISHES ALL CLAIMS BASED ON ANY CANCER OR MALIGNANCY.

2.  Releasors:

(a)  Plaintiff: HERBERT GROSSICH
Social Security Number:  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

(b)  Plaintiff's spouse:  ELAINE GROSSICH
Social Security Number:

(c)  Plaintiff's children: ANGELINE GIBALA,  SUSAN GROSSICH,  NANCY LANG, SHARON BREMER and  HERBERT GROSSICH

(d)  Plaintiff's heirs, as defined by California Code of Civil Procedure Section 377(b).

3.  Releasees:

The Releasees are all subscribers to the Agreement Concerning Asbestos-Related Claims signed October 6, 1988 (The Center for Claims Resolution Agreement), and all of their predecessors and successors, their parent and subsidiary companies and divisions, and their current and former attorneys, liability insurance carriers, to the extent of their liability for Center non-insurance company subscribers only, officers, directors, agents, and employees.  The names of the subscribers are set out below:

Manufacturers: Amchem Products, Inc.; Armstrong World Industries, Inc.; C.E. Thurston and Sons, Incorporated; Certain Teed Corporation; Dana Corporation; I.U. North America, Inc.; Maremont Corporation; National Services Industries Inc.; Nosroc Corp.; Pfizer Inc; Quigley Company, Inc.; Shook & Fletcher Insulation Co.; T & N, plc; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company;, Incorporated, and all distributors insofar as the liability

of any distributor is predicated upon the distribution of products manufactured by Rhone Poulenc (Tendered To Amc)

4.  Preliminary Facts:

HERBERT GROSSICH alleges that he has been exposed to asbestos that the asbestos was produced by or came from a product produced by one or more of the Releasees, and that the exposure to asbestos has injured him.

Based on this exposure, HERBERT GROSSICH has filed suit, or is considering filing suit, for damages arising from his personal injury.

Releasees desire to compromise and obtain a general release of all existing and future claims that could possibly arise from these facts, without admitting liability.

5.  Terms of Settlement:

In consideration of $300,000.00, in total, Releasors release and forever discharge Releasees from any and all claims arising from or related to any exposure to asbestos experienced by HERBERT GROSSICH.  This release specifically includes, but is not limited to, all wrongful death claims, all loss of consortium claims, and all claims based on presently undiscovered or unmanifested injures (including any cancer and any malignancy) arising from or related to any exposure to asbestos experienced by HERBERT GROSSICH.

For the purpose of this release, the word "claims" includes all claims, demands, actions, and suits of any kind.  For the purposes of this release, the word "injuries" includes all injuries, illnesses, disabilities, losses, and harms of any kind including but not limited to all emotional injuries.

This release does not cover claims for injuries allegedly suffered by the plaintiff's spouse and children because of their personal exposure to asbestos or property damage claims.

The consideration specified in this release shall be paid in the form of drafts or checks payable to Releasor's counsel as trustee for Releasors.

6.  Unknown Injuries and Potential Wrongful-Death Claims:

Releasors understand that people exposed to asbestos may be sul increased risk of contracting cancer, including but not limited to lung cancer and mesothelioma.  Releasors also understand that HERBERT GROSSICH may have suffered injuries that are as yet unknown to him/her and that unknown complications may arise from conditions of which he/she is not aware.  Nevertheless, Releasors inten release and forever discharge Releasees from any claim for any injury arising from or

2

related to any exposure to asbestos experienced by HERBERT GROSSICH, including but not limited to those injuries now known, those now existing but unknown, those that manifest themselves in the future, and those that cause his/her death.

Releasors hereby waive any right or benefit that Releasors may have, now or in the future, under Section 1542 of the Civil Code of the State of California, which reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

7.  Indemnity Against Claims by Lienholders:

Releasors warrant that they, or some of them are the sole owners of all claims of any kind arising out of the injuries covered in this Release.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim, brought by any holder of a lien or encumbrance, that is related to the injuries covered in this release, other than cross-complaints or cross-actions of co-defendants.   This indemnity agreement specifically does not cover cross-complaints or cross-actions of co-defendants.

8.  Indemnity Against Inaccuracy of Representation:

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting directly or indirectly from any falsity or inaccuracy of any representation made in this release by Releasors.

9.  Indemnity Against Wrongful-Death Claims:

Releasors warrant and represent that only they, or only some of them, would be legally entitled to bring suit based on an allegedly wrongful death of HERBERT GROSSICH.   Furthermore, they warrant that no wrongful death suit based on any exposure to asbestos experienced by HERBERT GROSSICH will be brought by anyone against Releasees.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any wrongful death suit, brought by anyone, based on any exposure to asbestos experienced by HERBERT GROSSICH.

10.  Indemnity Against Claims by Minors and Unborn Children:

Releasors understand that any minors among the Releasors may have the legal right to disaffirm this contract. Releasors agree that this release is not intended to expand whatever legal rights a minor may have to disaffirm this release and Releasees reserve the right to challenge any attempted disaffirmance of it. All Releasors who are not minors agree that this release will remain binding on them even if a minor disaffirms it.

Furthermore, all Releasors who are not minors agree to indemnify Releasees against all liability, including, but not limited to, all attorneys' fees and expenses, resulting from (1) any attempted disaffirmance, whether successful or not, and (2) any claim brought by a Releasor who is now a minor that arises from or is related to any exposure to asbestos experienced by HERBERT GROSSICH.

Releasors also agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim brought by any child now unborn that arises from or is related to any exposure to asbestos experienced by HERBERT GROSSICH

11.   Warranty of Good-Faith Compromise of Disputed Claims:

Releasors warrant and represent the following:

(a)   Releasors agree that this release is a compromise of doubtful and disputed claims, and that payment is not to be construed as an admission of liability. Releasors also agree that this release shall not be admissible as evidence in any suit of proceeding whatsoever as evidence or admission of any liability.

(b)   Releasors warrant that this release has been entered into in good faith for the purpose of resolving disputed and uncertain claims.

(c)   Releasors warrant that they will use their best efforts to obtain court approval of this release, including a determination that this settlement has been entered into in good faith, and that they will fully cooperate with Releasees and their counsel in their efforts to obtain the determination and an order, in accordance with Section 877.6 of the Code of Civil Procedure dismissing cross- complaints.

12.   Persons Bound:

This release is binding on Releasors, collectively and individually, and on all their heirs, devisees, executors, administrators, personal representatives, and assigns. Each warranty and each agreement in this release is enforceable against Releasors collectively and each Releasor individually.

13.   Remedies for Breach:

4

Releasors agree to pay for attorneys' fees, expenses, and costs incurred by Releasees as a result of any proceeding brought or maintained by Releasors or by any Releasor in breach of this release.

14.   Authorization to File Dismissal:

Releasors authorize their counsel to execute a request for dismissal with prejudice of Releasees in the SUPERIOR COURT in SAN FRANCISCO COUNTY, CALIFORNIA - NORTH,   DOCKET#: 310196, which is entitled "HERBERT GROSSICH VS RAYBESTOS-MANHATTAN INC ET AL".   Releasors authorize counsel for Releasees to file the request for dismissal after Releasees have paid Releasors, or Releasors' counsel as their trustee, the consideration specified in this release. Releasors also agree to dismiss Releasees from all other past or future claims, brought by any of them, that are in any way connected with any exposure to asbestos experienced by HERBERT GROSSICH.

15. Releasors Warrant That They Have Read This Release:

RELEASORS HEREBY WARRANT THAT THEY HAVE READ THIS RELEASE IN ITS ENTIRETY, HAVE HAD IT FULLY EXPLAINED TO THEM, AND FULLY UNDERSTAND AND APPRECIATE ITS TERMS AND THEIR CONSEQUENCES.

Releasors understand that this release is a full, complete and final release and that the sum of $300,000.00 is the total amount asbestos experienced by HERBERT GROSSICH.

_Herbert Grossich_                       Dated: _Sept. 26, 2000_
HERBERT GROSSICH

Subscribed and sworn to before me this _26_ day of _September_ , _2000_.

_[signature]_
NOTARY PUBLIC

> "OFFICIAL SEAL"
> Brenda Irene Buske
> Notary Public, State of Illinois
> My Commission Exp. 12/27/2002

My Commission Expires: _12 / 27 / 2002_
_____

_Held w. Dil_
_(Power of Attorney)_                    Dated: _Sept. 26, 2000_
ELAINE GROSSICH

Subscribed and sworn to before me this _26_ day of _September_ , _2000_.

_[signature]_
NOTARY PUBLIC

> "OFFICIAL SEAL"
> Brenda Irene Buske
> Notary Public, State of Illinois
> My Commission Exp. 12/27/2002

My Commission Expires: _12 / 27 / 2002_
_____

_[signature]_                            Dated: _10 -17- 00_
WARTNICK, CHABER,
HAROWITZ, & TIGERMAN

6

## ADDENDUM TO PERSONAL INJURY RELEASE
## HOLD HARMLESS AGREEMENT

### (To be used as Missing Heir(s) Provision)

I, HERBERT GROSSICH, recognize that as a part of the settlement of my personal injury case, the Center for Claims Resolution defendants wish to obtain releases and buy their peace with respect to potential claims that could be brought by my estate or my heirs should I die of asbestos related disease. It is my intention and desire to conclude a settlement in which the Center for Claims Resolution defendants will be released from any personal injury claim and also from any potential claim for wrongful death that might follow.

By this document I do the following:

I, on behalf of myself and my estate, agree to indemnify and hold harmless any Center for Claims Resolution defendants against any claims presented in the future by said potential heirs. It is my wish and intention that should said heirs present a claim, my estate will upon tender undertake to defend said Center for Claims Resolution defendants against such claim, and should such defense be unsuccessful, indemnify and hold harmless said Center for Claims Resolution defendants against any judgment obtained by said heirs. I understand that this is a contractual undertaking on my part which is binding upon me and my estate and is given by me in return for fair and valuable consideration to wit, the agreement by Center for Claims Resolution defendants in reliance, in part, upon this document, to pay me funds which I believe to be fair and reasonable in settlement of claims for my personal injury and potential wrongful death.

DATED: _Sept. 26, 2000_

SIGNED: _Herbert Grossich_

(Please attach notary's acknowledgement)

"OFFICIAL SEAL"
Brenda Irene Buske
Notary Public, State of Illinois
My Commission Exp. 12/27/2002

CAWCPIFL
September 18, 2000
3:42 PM

State of IL
County of Cook

9

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*:<br>TELEPHONE NO.: 415-986-5566<br><br>Wartnick, Chaber, Harowitz, Tigerman,et al.<br>101 California Street, Suite 2200<br>San Francisco, CA  94111-5802<br><br>ATTORNEY FOR *(Name)*:   PLAINTIFF(S) | FOR COURT USE ONLY<br><br>**ENDORSED**<br>**F I L E D**<br>*San Francisco County Superior Court*<br><br>**OCT 2 0 2000**<br><br>**ALAN CARLSON, Clerk**<br>BY: ~~KEVIN R. DOUGHERTY~~<br>Deputy Clerk |
|---|---|

Insert name of court and name of judicial district and branch court, if any:
Superior Court of the State of California
City and County of San Francisco

PLAINTIFF/PETITIONER: Herbert Grossich, et al.

DEFENDANT/RESPONDENT: RAYBESTOS-MANHATTAN, INC. et.al.

| **REQUEST FOR DISMISSAL**<br>[X] Personal Injury, Property Damage, or Wrongful Death<br>   [ ] Motor Vehicle   [ ] Other<br>[ ] Family Law<br>[ ] Eminent Domain<br>[X] Other *(specify)*: ASBESTOS | CASE NUMBER:<br><br>310196 |
|---|---|

— A conformed copy will not be returned by the clerk unless a method of return is provided with the document. —

1. TO THE CLERK:  Please dismiss this action as follows:

   a. (1) [X] With prejudice   (2) [ ] Without prejudice

   b. (1) [X] Complaint   (2) [ ] Petition
      (3) [ ] Cross-complaint filed by *(name)*:           on *(date)*:
      (4) [ ] Cross-complaint filed by *(name)*:           on *(date)*:
      (5) [ ] Entire action of all parties and all causes of action
      (6) [X] Other *(specify)*:* As to the defendant(s) on the attached list, only.

Date: October 13, 2000

HARRY F. WARTNICK

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

WARTNICK, CHABER, HAROWITZ, et al.

▶ _____
(SIGNATURE)
Attorney or party without attorney for:  PLAINTIFF(S)

   * If dismissal requested is of specified parties only, of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

[ ] Plaintiff/Petitioner   [ ] Defendant/Respondent
[ ] Cross-complainant

2. TO THE CLERK:  Consent to the above dismissal is hereby given.**
Date:

▶ _____
(SIGNATURE)

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

Attorney or party without attorney for:

  ** If a cross-complaint - or Response (Family Law) seeking affirmative relief - is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581(i) or (j).

[ ] Plaintiff/Petitioner   [ ] Defendant/Respondent
[ ] Cross-complainant

*(To be completed by clerk)*
3. [ ] Dismissal entered as requested on *(date)*:
4. [ ] Dismissal entered on *(date)*:       as to only *(name)*:
5. [ ] Dismissal **not** entered as requested for the following reasons *(specify)*:

6. [ ] a. Attorney or party without attorney notified on *(date)*:
       b. Attorney or party without attorney not notified.  Filing party failed to provide
          [ ] a copy to conform   [ ] means to return conformed copy

Date:                   Clerk, by _____, Deputy

| Form Adopted by the<br>Judicial Council of California<br>982(a)(5) [Rev. January 1, 1997]<br>Mandatory Form | **REQUEST FOR DISMISSAL** | Code of Civil Procedure, § 581 et seq.<br>Cal. Rules of Court, rules 383, 1233 |
|---|---|---|

This dismissal applies only to defendant members as follows:

Anchem Products, Inc.; Armstrong World Industries, Inc., formerly known as Armstrong Cork Company; CertainTeed Corporation; C.E. Thurston and Sons, Inc.; Dana Corporation; (Formerly known as Nuturn Corporation); I.U. North America, Inc.; Maremont Corporation; (The Grizzly Manufacturing Company; The Grizzly Division of Maremont Corporation); National Service Industries, Inc.; NOSROC Corp.; Pfizer, Inc.; Quigley Company, Inc.; Shook & Fletcher Insulation Company; T&N plc, formerly known as Turner & Newall PLC, formerly known as Turner & Newall LTD; Turner & Newall Industries; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company.

1999247869
CASF



## COMPROMISE AND RELEASE OF ALL CLAIMS
## INCLUDING UNKNOWN AND FUTURE CLAIMS

1.  Release of all Personal Injury and Death Claims:

(a)  THIS RELEASE EXTINGUISHES ALL CLAIMS FOR ALL INJURIES ARISING FROM OR RELATED TO ANY EXPOSURE TO ASBESTOS EXPERIENCED BY DALL DAVID DEWEESE INCLUDING BUT NOT LIMITED TO THOSE INJURIES NOW KNOWN, THOSE NOW EXISTING BUT UNKNOWN, THOSE THAT MANIFEST THEMSELVES IN THE FUTURE, AND THOSE THAT CAUSE HIS/HER DEATH. THIS RELEASE SPECIFICALLY EXTINGUISHES ALL CLAIMS BASED ON ANY CANCER OR MALIGNANCY.

2.  Releasors:

(a)  Plaintiff:  DALL DAVID DEWEESE
     Social Security Number:  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

(b)  Plaintiff's spouse:  TOMIANNE WILEY
     Social Security Number:

(c)  Plaintiff's children: WILEY DALLAS DEWEESE

(d)  Plaintiff's heirs, as defined by California Code of Civil Procedure Section 377(b).

3.  Releasees:

The Releasees are all subscribers to the Agreement Concerning Asbestos-Related Claims signed October 6, 1988 (The Center for Claims Resolution Agreement), and all of their predecessors and successors, their parent and subsidiary companies and divisions, and their current and former attorneys, liability insurance carriers, to the extent of their liability for Center non-insurance company subscribers only, officers, directors, agents, and employees. The names of the subscribers are set out below:

Manufacturers: Amchem Products, Inc.; Armstrong World Industries, Inc.; C.E. Thurston and Sons, Incorporated; Certain Teed Corporation; Dana Corporation; I.U. North America, Inc.; Maremont Corporation; National Services Industries Inc.; Nosroc Corp.; Pfizer Inc; Quigley Company, Inc.; Shook & Fletcher Insulation Co.; T & N, plc; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company,, Incorporated, and all distributors insofar as the liability of any distributor is predicated upon the distribution of products manufactured by Rhone Poulenc (Tendered To Amc)

4. Preliminary Facts:

DALL DAVID DEWEESE alleges that he has been exposed to asbestos that the asbestos was produced by or came from a product produced by one or more of the Releasees, and that the exposure to asbestos has injured him.

Based on this exposure, DALL DAVID DEWEESE has filed suit, or is considering filing suit, for damages arising from his personal injury.

Releasees desire to compromise and obtain a general release of all existing and future claims that could possibly arise from these facts, without admitting liability.

5. Terms of Settlement:

In consideration of $135,000.00, in total, Releasors release and forever discharge Releasees from any and all claims arising from or related to any exposure to asbestos experienced by DALL DAVID DEWEESE. This release specifically includes, but is not limited to, all wrongful death claims, all loss of consortium claims, and all claims based on presently undiscovered or unmanifested injures (including any cancer and any malignancy) arising from or related to any exposure to asbestos experienced by DALL DAVID DEWEESE.

For the purpose of this release, the word "claims" includes all claims, demands, actions, and suits of any kind. For the purposes of this release, the word "injuries" includes all injuries, illnesses, disabilities, losses, and harms of any kind including but not limited to all emotional injuries.

This release does not cover claims for injuries allegedly suffered by the plaintiff's spouse and children because of their personal exposure to asbestos or property damage claims.

The consideration specified in this release shall be paid in the form of drafts or checks payable to Releasor's counsel as trustee for Releasors.

6. Unknown Injuries and Potential Wrongful-Death Claims:

Releasors understand that people exposed to asbestos may be subject to an increased risk of contracting cancer, including but not limited to lung cancer and mesothelioma. Releasors also understand that DALL DAVID DEWEESE may have suffered injuries that are as yet unknown to him/her and that unknown complications may arise from conditions of which he/she is not aware. Nevertheless, Releasors intend to release and forever discharge Releasees from any claim for any injury arising from or related to any exposure to asbestos experienced by DALL DAVID DEWEESE, including

2

but not limited to those injuries now known, those now existing but unknown, those that manifest themselves in the future, and those that cause his/her death.

Releasors hereby waive any right or benefit that Releasors may have, now or in the future, under Section 1542 of the Civil Code of the State of California, which reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

7.  Indemnity Against Claims by Lienholders:

Releasors warrant that they, or some of them are the sole owners of all claims of any kind arising out of the injuries covered in this Release.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim, brought by any holder of a lien or encumbrance, that is related to the injuries covered in this release, other than cross-complaints or cross-actions of co-defendants.   This indemnity agreement specifically does not cover cross-complaints or cross-actions of co-defendants.

8.  Indemnity Against Inaccuracy of Representation:

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting directly or indirectly from any falsity or inaccuracy of any representation made in this release by Releasors.

9.  Indemnity Against Wrongful-Death Claims:

Releasors warrant and represent that only they, or only some of them, would be legally entitled to bring suit based on an allegedly wrongful death of DALL DAVID DEWEESE.   Furthermore, they warrant that no wrongful death suit based on any exposure to asbestos experienced by DALL DAVID DEWEESE will be brought by anyone against Releasees.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any wrongful death suit, brought by anyone, based on any exposure to asbestos experienced by DALL DAVID DEWEESE.

10.  Indemnity Against Claims by Minors and Unborn Children:

Releasors understand that any minors among the Releasors may have the legal right to disaffirm this contract. Releasors agree that this release is not intended to expand whatever legal rights a minor may have to disaffirm this release and Releasees reserve the right to challenge any attempted disaffirmance of it. All Releasors who are not minors agree that this release will remain binding on them even if a minor disaffirms it.

Furthermore, all Releasors who are not minors agree to indemnify Releasees against all liability, including, but not limited to, all attorneys' fees and expenses, resulting from (1) any attempted disaffirmance, whether successful or not, and (2) any claim brought by a Releasor who is now a minor that arises from or is related to any exposure to asbestos experienced by DALL DAVID DEWEESE.

Releasors also agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim brought by any child now unborn that arises from or is related to any exposure to asbestos experienced by DALL DAVID DEWEESE

11.   Warranty of Good-Faith Compromise of Disputed Claims:

Releasors warrant and represent the following:

(a)   Releasors agree that this release is a compromise of doubtful and disputed claims, and that payment is not to be construed as an admission of liability. Releasors also agree that this release shall not be admissible as evidence in any suit of proceeding whatsoever as evidence or admission of any liability.

(b)   Releasors warrant that this release has been entered into in good faith for the purpose of resolving disputed and uncertain claims.

(c)   Releasors warrant that they will use their best efforts to obtain court approval of this release, including a determination that this settlement has been entered into in good faith, and that they will fully cooperate with Releasees and their counsel in their efforts to obtain the determination and an order, in accordance with Section 877.6 of the Code of Civil Procedure dismissing cross- complaints.

12.   Persons Bound:

This release is binding on Releasors, collectively and individually, and on all their heirs, devisees, executors, administrators, personal representatives, and assigns. Each warranty and each agreement in this release is enforceable against Releasors collectively and each Releasor individually.

13.   Remedies for Breach:

Releasors agree to pay for attorneys' fees, expenses, and costs incurred by Releasees as a result of any proceeding brought or maintained by Releasors or by any Releasor in breach of this release.

14.  Authorization to File Dismissal:

Releasors authorize their counsel to execute a request for dismissal with prejudice of Releasees in the SUPERIOR COURT in SAN FRANCISCO COUNTY, CALIFORNIA - NORTH,  DOCKET#: 307382, which is entitled "DALL DAVID DEWEESE V RAYBESTOS-MANHATTAN ET AL".  Releasors authorize counsel for Releasees to file the request for dismissal after Releasees have paid Releasors, or Releasors' counsel as their trustee, the consideration specified in this release.  Releasors also agree to dismiss Releasees from all other past or future claims, brought by any of them, that are in any way connected with any exposure to asbestos experienced by DALL DAVID DEWEESE.

5

15. Releasors Warrant That They Have Read This Release:

RELEASORS HEREBY WARRANT THAT THEY HAVE READ THIS RELEASE IN ITS ENTIRETY, HAVE HAD IT FULLY EXPLAINED TO THEM, AND FULLY UNDERSTAND AND APPRECIATE ITS TERMS AND THEIR CONSEQUENCES.

Releasors understand that this release is a full, complete and final release and that the sum of $135,000.00 is the total amount asbestos experienced by DALL DAVID DEWEESE.

_Dated:_ 9-27-00

DALL DAVID DEWEESE

Subscribed and sworn to before me this 27 day of September, 2000

NOTARY PUBLIC

NIKKI G. SULLIVAN
COMM. # 1201314
NOTARY PUBLIC-CALIFORNIA
City & County of San Francisco
COMM. EXP. DEC. 9, 2002

My Commission Expires: Dec. 9, 2002

_X. Tomianne Wiley_                     Dated: 9-27-00

TOMIANNE WILEY

Subscribed and sworn to before me this 27 day of _September_ 2000

_Nikki G. Sul_

NOTARY PUBLIC

> NIKKI G. SULLIVAN
> COMM. # 1201314
> NOTARY PUBLIC-CALIFORNIA
> City & County of San Francisco
> COMM. EXP. DEC. 9, 2002

My Commission Expires: _Dec. 9, 2002_

This release was executed with my approval, and under my direction and advice. Its provisions and their consequences have been fully explained to Releasors.

_WARTNICK, CHABER,_                     Dated: 10/6/00

WARTNICK, CHABER,
HAROWITZ, SMITH & TIGERMAN

7

## ADDENDUM TO PERSONAL INJURY RELEASE
## HOLD HARMLESS AGREEMENT

### (To be used as Missing Heir(s) Provision)

I, DALL DAVID DEWEESE, recognize that as a part of the settlement of my personal injury case, the Center for Claims Resolution defendants wish to obtain releases and buy their peace with respect to potential claims that could be brought by my estate or my heirs should I die of asbestos related disease. It is my intention and desire to conclude a settlement in which the Center for Claims Resolution defendants will be released from any personal injury claim and also from any potential claim for wrongful death that might follow.

By this document I do the following:

I, on behalf of myself and my estate, agree to indemnify and hold harmless any Center for Claims Resolution defendants against any claims presented in the future by said potential heirs. It is my wish and intention that should said heirs present a claim, my estate will upon tender undertake to defend said Center for Claims Resolution defendants against such claim, and should such defense be unsuccessful, indemnify and hold harmless said Center for Claims Resolution defendants against any judgment obtained by said heirs. I understand that this is a contractual undertaking on my part which is binding upon me and my estate and is given by me in return for fair and valuable consideration to wit, the agreement by Center for Claims Resolution defendants in reliance, in part, upon this document, to pay me funds which I believe to be fair and reasonable in settlement of claims for my personal injury and potential wrongful death.

DATED: _9-27-00_____

SIGNED: X _[signature]_____

(Please attach notary's acknowledgement)


CAWCPIFL
September 18, 2000
3:42 PM

8

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address):<br><br>Wartnick, Chaber, Harowitz, Tigerman, et al.<br>101 California Street, Suite 2200<br>San Francisco, CA  94111-5802<br><br>ATTORNEY FOR (Name):   PLAINTIFF(S)<br>TELEPHONE NO.:   415-986-5566 | FOR COURT USE ONLY<br><br>**ENDORSED**<br>**F I L E D**<br>*San Francisco County Superior Court*<br><br>**OCT 1 0 2000**<br><br>**GORDON PARK-LI, Clerk**<br>BY:   MANUELITA ECHEVERRIA<br>Deputy Clerk |
|---|---|

Insert name of court and name of judicial district and branch court, if any:
Superior Court of the State of California
City and County of San Francisco

PLAINTIFF/PETITIONER: Dall D. DeWeese, et al.

DEFENDANT/RESPONDENT: RAYBESTOS-MANHATTAN, INC. et.al.

| **REQUEST FOR DISMISSAL**<br>[X] Personal Injury, Property Damage, or Wrongful Death<br>    [ ] Motor Vehicle    [ ] Other<br>[ ] Family Law<br>[ ] Eminent Domain<br>[X] Other *(specify):* ASBESTOS | CASE NUMBER:<br><br>307382 |
|---|---|

— A conformed copy will not be returned by the clerk unless a method of return is provided with the document. —

**1. TO THE CLERK: Please dismiss this action as follows:**

a. (1) [X] With prejudice    (2) [ ] Without prejudice

b. (1) [X] Complaint    (2) [ ] Petition
    (3) [ ] Cross-complaint filed by *(name):*      on *(date):*
    (4) [ ] Cross-complaint filed by *(name):*      on *(date):*
    (5) [ ] Entire action of all parties and all causes of action
    (6) [X] Other *(specify):** As to the defendant(s) on attached list, only.

Date: October 6, 2000

HARRY F. WARTNICK

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

WARTNICK, CHABER, HAROWITZ, et al.

(SIGNATURE)
Attorney or party without attorney for:   PLAINTIFF(S)

* If dismissal requested is of specified parties only, of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

[ ] Plaintiff/Petitioner    [ ] Defendant/Respondent
[ ] Cross-complainant

**2. TO THE CLERK: Consent to the above dismissal is hereby given.**

Date:

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

(SIGNATURE)
Attorney or party without attorney for:

** If a cross-complaint - or Response (Family Law) seeking affirmative relief - is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581(i) or (j).

[ ] Plaintiff/Petitioner    [ ] Defendant/Respondent
[ ] Cross-complainant

*(To be completed by clerk)*
3. [ ] Dismissal entered as requested on *(date):*
4. [ ] Dismissal entered on *(date):*    as to only *(name):*
5. [ ] Dismissal not entered as requested for the following reasons *(specify):*

6. [ ] a. Attorney or party without attorney notified on *(date):*
    b. Attorney or party without attorney not notified. Filing party failed to provide
      [ ] a copy to conform    [ ] means to return conformed copy

Date:                Clerk, by _____, Deputy

| Form Adopted by the<br>Judicial Council of California<br>982(a)(5) [Rev. January 1, 1997]<br>Mandatory Form | **REQUEST FOR DISMISSAL** | LEGAL SOLUTIONS® | Code of Civil Procedure, § 581 et seq.<br>Cal. Rules of Court, rules 383, 1233 |
|---|---|---|---|

This dismissal applies only to defendant members as follows:

Anchem Products, Inc.; Armstrong World Industries, Inc., formerly known as Armstrong Cork Company; CertainTeed Corporation; C.E. Thurston and Sons, Inc.; Dana Corporation; (Formerly known as Nuturn Corporation); I.U. North America, Inc.; Maremont Corporation; (The Grizzly Manufacturing Company; The Grizzly Division of Maremont Corporation); National Service Industries, Inc.; NOSROC Corp.; Pfizer, Inc.; Quigley Company, Inc.; Shook & Fletcher Insulation Company; T&N plc, formerly known as Turner & Newall PLC, formerly known as Turner & Newall LTD; Turner & Newall Industries; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company.

1999247878
CASF

# COMPROMISE AND RELEASE OF ALL CLAIMS

1. Release of all Personal Injury and Death Claims:

(a)   THIS RELEASE EXTINGUISHES ALL CLAIMS FOR ALL INJURIES ARISING FROM OR RELATED TO ANY EXPOSURE TO ASBESTOS EXPERIENCED BY MAURICE APLEY INCLUDING BUT NOT LIMITED TO ALL WRONGFUL DEATH CLAIMS AND ALL SURVIVING PERSONAL INJURY CLAIMS.

2. Releasors:

(a)  Estate of Decedent: MAURICE APLEY
     Social Security Number: 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

(b)  Decedent's spouse: N/A
     Social Security Number:

(c)  Decedent's children: DIANNA EDWARD and DEBRA LOPEZ

(d)  Plaintiff's heirs, as defined by California Code of Civil Procedure Section 377(b).

3. Releasees:

The Releasees are all subscribers to the Agreement Concerning Asbestos-Related Claims signed October 6, 1988 (The Center for Claims Resolution Agreement), and all of their predecessors and successors, their parent and subsidiary companies and divisions, and their current and former attorneys, liability insurance carriers, to the extent of their liability for Center non-insurance company subscribers only, officers, directors, agents, and employees.  The names of the subscribers are set out below:

Manufacturers: Amchem Products, Inc.; Armstrong World Industries, Inc. formerly known as Armstrong Cork Company; The Asbestos Claims Management Corporation (formerly known as National Gypsum Company) and the NGC Asbestos Disease and Property Damage Settlement Trust; CertainTeed Corporation; C.E. Thurston and Sons, Inc.; Dana Corporation; (Formerly known as Nuturn Corporation); I.U. North America, Incorporated; Rhone Poulenc (Tendered To Amc) Maremont Corporation; (The Grizzly Manufacturing Company; The Grizzly Division of Maremont Corporation); National Service Industries, Inc.; NOSROC Corp.; Pfizer, Inc.; Quigley Company, Inc.; Shook & Fletcher Insulation Company; T&N plc, formerly known as Turner & Newall PLC, formerly known as Turner & Newall LTD; Turner & Newall Industries; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company.

4.  Preliminary Facts:

The Plaintiff alleges that decedent was exposed to asbestos, that the asbestos was produced by or came from a product produced by the Releasees, and that the exposure to asbestos has injured him or led to his death.

Based on this exposure, the plaintiff has filed suit, or is considering filing suit, for damages arising from decedent's personal injury or death.

Releasees desire to compromise and obtain a general release of all existing and future claims that could possibly arise from these facts, without admitting liability.

5.  Terms of Settlement:

In consideration of $200,000.00, in total, Releasors release and forever discharge Releasees from any and all claims arising from or related to any exposure to asbestos experienced by MAURICE APLEY.  This release specifically includes, but is not limited to, all wrongful death claims, all loss of consortium claims, and all surviving personal injury claims arising from or related to any exposure to asbestos experienced by MAURICE APLEY.

For the purpose of this release, the word "claims" includes all claims, demands, actions, and suits of any kind.  For the purposes of this release, the word "injuries" includes all injuries, illnesses, disabilities, losses, and harms of any kind including but not limited to all emotional injuries.

This release does not cover claims for injuries allegedly suffered by the decedent's spouse and children because of their personal exposure to asbestos or property damage claims.

The consideration specified in this release shall be paid in the form of drafts or checks payable to Releasor's counsel as trustee for Releasors.

6.  Unknown Injuries:

Releasors hereby waive any right or benefit that Releasors may have, now or in the future, under Section 1542 of the Civil Code of the State of California, which reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in this favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

2

7. Indemnity Against Claims by Lienholders:

Releasors warrant that they, or some of them are the sole owners of all claims of any kind arising out of the injuries covered in this release.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim, brought by any holder of a lien or encumbrance, that is related to the injures covered in this release, other than cross-complaints or cross-actions of co-defendants. This indemnity agreement specifically does not cover cross-complaints or cross-actions of co-defendants.

8. Indemnity Against Inaccuracy of Representation:

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting directly or indirectly from any falsity or inaccuracy of any representation made in this release by Releasors.

9. Indemnity Against Wrongful-Death Claims:

Releasors warrant and represent that they are legally empowered to settle surviving personal injury claims on behalf of the estate of MAURICE APLEY and that only they, or only some of them, would be legally entitled to bring suit based on a allegedly wrongful death of MAURICE APLEY. Furthermore, they warrant that no survival or wrongful death suit based on any exposure to asbestos experienced by MAURICE APLEY will be brought by anyone against Releasees.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any wrongful death suit, brought by anyone, based on any exposure to asbestos experienced by MAURICE APLEY.

10. Indemnity Against Claims by Minors and Unborn Children:

Releasors understand that any minors among the Releasors may have the legal right to disaffirm this contract. Releasors agree that this release is not intended to expand whatever legal rights a minor may have to disaffirm this release and Releasees reserve the right to challenge any attempted disaffirmance of it. All Releasors who are not minors agree that this release will remain binding on them even if a minor disaffirms it.

Furthermore, all Releasors who are not minors agree to indemnify Releasees against all liability, including but not limited to all attorneys' fees and expenses, resulting from (1) any attempted disaffirmance, whether successful or not, and (2) any claim brought by any Releasor who is now a minor that arises from or is related to any exposure to asbestos experienced by MAURICE APLEY.

3

Releasors also agree to indemnify Releasees against all liability, including, but not limited to, attorneys' fees and expenses, resulting from any claim brought by any child now unborn that arises from or is related to any exposure to asbestos experienced by MAURICE APLEY.

11.   Warranty of Good-Faith Compromise of Disputed Claims:

Releasors warrant and represent the following:

(a)   Releasors agree that this release is a compromise of doubtful and disputed claims, and that payment is not to be construed as an admission of liability.  Releasors also agree that this release shall not be admissible as evidence in any suit or proceeding whatsoever as evidence or admission of any liability.

(b)   Releasors warrant that this release has been entered into in good faith for the purpose of resolving disputed and uncertain claims.

(c)   Releasors warrant that they will use their best efforts to obtain court approval of this release, including a determination that this settlement has been entered into in good faith, and that they will fully cooperate with Releasees and their counsel in their efforts to obtain the determination and an order, in accordance with Section 877.6 of the Code of Civil Procedure dismissing cross-complaints.

12.   Persons Bound:

This release is binding on the estate of MAURICE APLEY, on Releasors collectively and individually, and on all their heirs, devisees, executors, administrators, personal representatives, and assigns.  Each warranty and each agreement in this release is enforceable against Releasors collectively and each Releasor individually.

13.   Remedies for Breach:

Releasors agree to pay for attorneys' fees, expenses, and costs incurred by Releasees as a result of any proceeding brought or maintained by Releasors or by any Releasor in breach of this release.

14.   Authorization to File Dismissal:

Releasors authorize their counsel to execute a request for dismissal with prejudice of Releasees in the SUPERIOR COURT in SAN FRANCISCO COUNTY, CALIFORNIA - NORTH, DOCKET#: 307384, which is entitled "MAURICE APLEY V RAYBESTOS-MANHATTAN ET AL".  Releasors authorize counsel for Releasees to file the request for dismissal after Releasees have paid Releasors, or Releasors' counsel as their trustee, the consideration specified in this release.  Releasors also agree to dismiss

Releasees from all other past of future claims, brought by any of them, that are in any way connected with any exposure to asbestos experienced by MAURICE APLEY.

15. Releasors Warrant That They Have Read This Release:

RELEASORS HEREBY WARRANT THAT THEY HAVE READ THIS RELEASE IN ITS ENTIRETY, HAVE HAD IT FULLY EXPLAINED TO THEM, AND FULLY UNDERSTAND AND APPRECIATE ITS TERMS AND THEIR CONSEQUENCES.

Releasors understand that this release is a full, complete and final release and that the sum of $200,000.00 is the total amount to be paid to them by Releasees as a result of any exposure to asbestos experienced by MAURICE APLEY.

*Dianna Edwards*　　　Dated: _10-20-00_
DIANNA EDWARD

Subscribed and sworn to before me this _20_ day of _October_ , _2000_

_[signature]_
Notary Public

B. RODRIGUEZ
Comm. # 1251695
NOTARY PUBLIC-CALIFORNIA
Calaveras County
My Comm. Expires Feb. 1, 2004

My Commission Expires: _2-1-04_

_____  Dated: _____
DEBRA LOPEZ

Subscribed and sworn to before me this _____ day of _____, _____.

_____
Notary Public

My Commission Expires: _____

This release was executed with my approval, and under my direction and advice. Its provisions and their consequences have been fully explained to Releasors.

_____

WARTNICK, CHABER,
HAROWITZ, SMITH & TIGERMAN

Dated: 11-3-00

## HOLD HARMLESS AGREEMENT

I, recognize that as a part of the settlement of my wrongful death case, the Center for Claims Resolution defendants wish to obtain release and buy their peace with respect to potential claims that could be brought by the estate of MAURICE APLEY or its heirs. It is my intention and desire to conclude a settlement in which the Center for Claims Resolution defendants will be released from any personal injury claim and wrongful death claim.

By this document, I do the following:

I, on behalf of myself and the estate of MAURICE APLEY, agree to indemnify and hold harmless the Center for Claims Resolution defendants against any claims presented in the future by potential heirs. It is my wish and intention that should the heirs present a claim, the estate will upon tender undertake to defend the Center for Claims Resolution defendants against any claim made by the heirs and will indemnify the Center for Claims Resolution defendants against any judgment obtained by them against the Center for Claims Resolution defendants. I understand that this is a contractual undertaking on my part which is binding upon me and the estate and is given by me in return for fair and valuable consideration - to wit, the agreement by the Center for Claims Resolution defendants in reliance, in part, upon this document, to pay me funds which I believe to be fair and reasonable in settlement of claims for wrongful death.


Individually and on behalf of
MAURICE APLEY

DATED: _Dianna Edwards_ 10-20-00


CAWCWDFL
July 21, 2000
9:17 AM


7

DE-150

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY

CARTER WARMKE, SBN 63135 (209) 951-5922
WARMKE & WARMKE Fax(209) 9515925
P. O. Box 690728
Stockton, California 95269-0728

ATTORNEY FOR (Name): Executor

SUPERIOR COURT OF CALIFORNIA, COUNTY OF CALAVERAS
STREET ADDRESS: 891 Mountain Ranch Road
MAILING ADDRESS:
CITY AND ZIP CODE: San Andreas, California 95249-9709
BRANCH NAME:

ESTATE OF (Name): MAURICE APLEY, also known as
Maurice W. Apley,
DECEDENT

(ENDORSED)
FILED

AUG 15 2000

CALAVERAS COUNTY COURTS
M. B. Todd, Clerk of Court
JUDITH GOFFE, Deputy

| LETTERS | CASE NUMBER: |
|---|---|
| [X] TESTAMENTARY    [ ] OF ADMINISTRATION | 6176 |
| [ ] OF ADMINISTRATION WITH WILL ANNEXED    [ ] SPECIAL ADMINISTRATION | |

## LETTERS

1. [ ] The last will of the decedent named above having been proved, the court appoints (name):
   DIANNA EDWARDS

   a. [X] executor.
   b. [ ] administrator with will annexed.

2. [ ] The court appoints (name):

   a. [ ] administrator of the decedent's estate.
   b. [ ] special administrator of decedent's estate
       (1) [ ] with the special powers specified in the Order for Probate.
       (2) [ ] with the powers of a general administrator.
       (3) [ ] letters will expire on (date):

3. [X] The personal representative is authorized to administer the estate under the Independent Administration of Estates Act [x] with full authority
   [ ] with limited authority (no authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or (3) borrow money with the loan secured by an encumbrance upon real property).

4. [ ] The personal representative is not authorized to take possession of money or any other property without a specific court order.

WITNESS, clerk of the court, with seal of the court affixed.

(SEAL)

Date: AUG 15 2000
M. B. TODD
Clerk, by

JUDITH GOFFE
(DEPUTY)

## AFFIRMATION

1. [ ] PUBLIC ADMINISTRATOR: No affirmation required (Prob. Code, § 7621(c)).

2. [X] INDIVIDUAL: I solemnly affirm that I will perform the duties of personal representative according to law.

3. [ ] INSTITUTIONAL FIDUCIARY (name):

   I solemnly affirm that the institution will perform the duties of personal representative according to law. I make this affirmation for myself as an individual and on behalf of the institution as an officer.
   (Name and title):

4. Executed on (date): July 13, 2000
   at (place): Stockton , California.

▶ *Dianna Edwards*
(SIGNATURE)

## CERTIFICATION

I certify that this document is a correct copy of the original on file in my office and the letters issued the personal representative appointed above have not been revoked, annulled, or set aside, and are still in full force and effect.

(SEAL)

Date: AUG 15 2000
M. B. TODD
Clerk, by

(DEPUTY)

Form Approved by the
Judicial Council of California
DE-150 [Rev. January 1, 1998]

**LETTERS**
(Probate)

Probate Code, §§ 1001, 8403,
8405, 8544, 8545;
Code of Civil Procedure, § 2015.6

8-15
DE-140

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): | TELEPHONE AND FAX NOS.: | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):
CARTER WARMKE, SBN 63135           (209) 951-5922
WARMKE & WARMKE            Fax (209) 951-5925
P. O. Box 690728
Stockton, CA 95269-0728
ATTORNEY FOR (Name):   Executor

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   CALAVERAS
STREET ADDRESS: 891 Mountain Ranch Road
MAILING ADDRESS:
CITY AND ZIP CODE: San Andreas, California 95249-9709
BRANCH NAME:

ESTATE OF (Name):   MAURICE APLEY, also known as
Maurice W. Apley
                                                    DECEDENT

**TELEPHONE AND FAX NOS.:**

**FOR COURT USE ONLY**

(ENDORSED)
FILED

AUG 1 5 2000

CALAVERAS COUNTY COURTS
M. B. Todd, Clerk of Court
_____ , Deputy

## ORDER FOR PROBATE

ORDER
APPOINTING
[X] Executor
[ ] Administrator with Will Annexed
[ ] Administrator   [ ] Special Administrator
[X] Order Authorizing Independent Administration of Estate
   [X] with full authority   [ ] with limited authority

CASE NUMBER:
6176

## WARNING: THIS APPOINTMENT IS NOT EFFECTIVE UNTIL LETTERS HAVE ISSUED.

1. Date of hearing: August 15, 2000   Time:   9:00 A.M.   Dept./Room: 1   Judge: JOHN E. MARTIN
THE COURT FINDS
2. a. All notices required by law have been given.
   b. Decedent died on (date):   June 21, 2000
      (1) [X] a resident of the California county named above.
      (2) [ ] a nonresident of California and left an estate in the county named above.
   c. Decedent died
      (1) [ ] intestate
      (2) [X] testate
      and decedent's will dated:   August 16, 1999   and each codicil dated:
      was admitted to probate by Minute Order on (date):   August 15, 2000.
THE COURT ORDERS
3. (Name):   Dianna Edwards
   is appointed personal representative:
   a. [X] executor of the decedent's will        d. [ ] special administrator
   b. [ ] administrator with will annexed            (1) [ ] with general powers
   c. [ ] administrator                              (2) [ ] with special powers as specified in Attachment 3d(2)
                                                     (3) [ ] without notice of hearing
                                                     (4) [ ] letters will expire on (date):
   and letters shall issue on qualification.
4. a. [X] Full authority is granted to administer the estate under the Independent Administration of Estates Act.
   b. [ ] Limited authority is granted to administer the estate under the Independent Administration of Estates Act (there is no
      authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or
      (3) borrow money with the loan secured by an encumbrance upon real property).
5. a. [X] Bond is not required.
   b. [ ] Bond is fixed at: $                         to be furnished by an authorized surety company or as otherwise
      provided by law.
   c. [ ] Deposits of: $                          are ordered to be placed in a blocked account at (specify institution and
      location):
      and receipts shall be filed. No withdrawals shall be made without a court order. [ ] Additional orders in Attachment 5c.
   d. [ ] The personal representative is not authorized to take possession of money or any other property without a specific court order.
6. [X] (Name): MICHAEL WRIGHT                        is appointed probate referee.
      (209) 532-6079

Date:   August 15, 2000

                                                    JOHN E. MARTIN
                                                    _____
                                                    JUDGE OF THE SUPERIOR COURT
7. Number of pages attached: 0          [ ] SIGNATURE FOLLOWS LAST ATTACHMENT

Form Approved by the
Judicial Council of California
DE-140 [Rev. January 1, 1998]                ORDER FOR PROBATE                Probate Code, §§ 8006, 8400

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*: | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*:

TELEPHONE NO.: 415-986-5566

Wartnick, Chaber, Harowitz, Tigerman, et al.
101 California Street, Suite 2200
San Francisco, CA  94111-5802

ATTORNEY FOR *(Name)*:   PLAINTIFF(S)

Insert name of court and name of judicial district and branch court, if any:
Superior Court of the State of California
City and County of San Francisco

PLAINTIFF/PETITIONER: Maurice W. Apley, et al.

DEFENDANT/RESPONDENT: RAYBESTOS-MANHATTAN, INC. et.al.

**ENDORSED**
**F I L E D**
*San Francisco County Superior Court*

NOV 0 8 2000

**GORDON PARK-LI, Clerk**
BY:  _____ JUN P. PANELO _____
Deputy Clerk

---

| REQUEST FOR DISMISSAL | CASE NUMBER: |
|---|---|

**REQUEST FOR DISMISSAL**
[X] Personal Injury, Property Damage, or Wrongful Death
　　[ ] Motor Vehicle 　　[ ] Other
[ ] Family Law
[ ] Eminent Domain
[X] Other *(specify)*: ASBESTOS

CASE NUMBER:
307384

— **A conformed copy will not be returned by the clerk unless a method of return is provided with the document.** —

1. TO THE CLERK: Please dismiss this action as follows:
　a. (1) [X] With prejudice 　　(2) [ ] Without prejudice
　b. (1) [X] Complaint 　　(2) [ ] Petition
　　(3) [ ] Cross-complaint filed by *(name)*: 　　　　on *(date)*:
　　(4) [ ] Cross-complaint filed by *(name)*: 　　　　on *(date)*:
　　(5) [ ] Entire action of all parties and all causes of action
　　(6) [X] Other *(specify)*:* As to the defendant(s) on the attach list, only.

Date: October 24, 2000

HARRY F. WARTNICK
(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

WARTNICK, CHABER, HAROWITZ, et al.

▶ _____
(SIGNATURE)
Attorney or party without attorney for:  PLAINTIFF(S)

* If dismissal requested is of specified parties only, of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

[ ] Plaintiff/Petitioner 　　[ ] Defendant/Respondent
[ ] Cross-complainant

2. TO THE CLERK: Consent to the above dismissal is hereby given.**
Date:

▶
_____
(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)
(SIGNATURE)
Attorney or party without attorney for:

** If a cross-complaint - or Response (Family Law) seeking affirmative relief - is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581(i) or (j).

[ ] Plaintiff/Petitioner 　　[ ] Defendant/Respondent
[ ] Cross-complainant

*(To be completed by clerk)*
3. [ ] Dismissal entered as requested on *(date)*:
4. [X] Dismissal entered on *(date)*: NOV - 8 2000 as to only *(name)*: **SEE ABOVE**
5. [ ] Dismissal not entered as requested for the following reasons *(specify)*:

6. [ ] a. Attorney or party without attorney notified on *(date)*:
　　b. Attorney or party without attorney not notified. Filing party failed to provide
　　　[ ] a copy to conform 　　[ ] means to return conformed copy

Date: NOV - 8 2000 　　GORDON PARK-LI Clerk, by ___ JUN P. PANELO ___ , Deputy

Form Adopted by the
Judicial Council of California
982(a)(5) [Rev. January 1, 1997]
Mandatory Form
**REQUEST FOR DISMISSAL**
Code of Civil Procedure, § 581 et seq.
Cal. Rules of Court, rules 383, 1233

This dismissal applies only to defendant members as follows:

Anchem Products, Inc.; Armstrong World Industries, Inc., formerly known as Armstrong Cork Company; The Asbestos Claims Management Corporation (formerly known as National Gypsum Company) and the NGC Asbestos Disease and Property Damage Settlement Trust; CertainTeed Corporation; C.E. Thurston and Sons, Inc.; Dana Corporation; (Formerly known as Nuturn Corporation); I.U. North America, Inc.; Maremont Corporation; (The Grizzly Manufacturing Company; The Grizzly Division of Maremont Corporation); National Service Industries, Inc.; NOSROC Corp.; Pfizer, Inc.; Quigley Company, Inc.; Shook & Fletcher Insulation Company; T&N plc, formerly known as Turner & Newall PLC, formerly known as Turner & Newall LTD; Turner & Newall Industries; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company.

B

US OFFICE PRODUCTS

06/26/2000 15:51 FAX

☑02

# RECEIVED

JUN 2 6 2000

Lane & Gossett, P.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

U.S. DISTRICT COURT

2000 JUN 19   A 8:

IN RE: ASBESTOS PRODUCTS
LIABILITY LITIGATION (NO. VI)

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ x

This Document Relates to:

United States District Court
Southern District of Georgia

(See attached list of cases)

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ x

:
:

:
:
:
:
:
:
:

CIVIL ACTION NO. MDL 875

## ORDER

THIS MATTER coming before the Court upon Plaintiff's Motion To Enforce Settlement

Agreement, and the Court having had an opportunity to review the submissions of the parties and

to hear argument thereon, FINDS as follows:

1. GAF Corporation, a defendant in this litigation, was a member of the Center For

   Claims Resolution for approximately twelve years until January, 2000 when such

   membership was terminated.

2. The Center For Claims Resolution (CCR) is an agency entity created for the sole

   purpose of negotiating settlements or otherwise handling asbestos claims and

   lawsuits which have been brought against its member companies. Each member

   company entered into an agency agreement with the CCR authorizing CCR to act

   as its agent for the purpose of settling asbestos cases.

3. The CCR representatives who negotiate the settlements on behalf of the members

18

are not attorneys but are versed in the law for the jurisdictions where their cases
are located and they have several attorneys on the CCR staff available for legal
consultation.

4.    The agreement between GAF and CCR provides a multitude of criteria and other
      factors to be used in determining each members share of a settlement.  As the
      settlements are completed, a monthly billing is submitted to the members for their
      share of the payments to conclude the settlement.  CCR became a conduit and
      monitor for the payment of the settlements made on behalf of its member
      companies.

5.    The representative from CCR, Mr. Robert Capritti, settled these cases with
      plaintiff on behalf of the CCR member companies on November 5, 1999.

6.    At the time these matters were settled between plaintiff and the CCR member
      companies, GAF Corporation was a member company with CCR.

7.    On March 2, 2000, CCR submitted a check to the plaintiff which represented all
      of the member companies' shares except for GAF Corporation[1] which did not
      submit its share to CCR for disbursement.  The entire calculation of share amounts
      was done by CCR.

8.    GAF Corporation and CCR are currently in arbitration regarding their agreement
      and the validity of the settlements and/or the amounts paid by CCR on behalf of
      GAF Corporation.

9.    THE COURT FURTHER FINDS that the plaintiff relied upon the agency of CCR

---

[1] CCR calculated the share owing by GAF as $134,744.55.  The remaining amount for the
other members of CCR was not disclosed to the Court and is not relevant to the Court's order.

on behalf of GAF Corporation and all of the other CCR members, and its conduct

of business for the past twelve years and in this case.  This business (agency)

relationship is well-known throughout the asbestos litigation and CCR has settled

hundreds of thousands of asbestos lawsuits and claims on behalf of its member

companies.

10.     Other than providing services for its member companies as agent, CCR does not

generate income or have any separate assets with which to fund settlements, but

relies upon payments from the member companies to complete the settlements.

11.     GAF Corporation has no dispute with this plaintiff regarding the settlement, but

controverts CCR and its actions as GAF Corporation's agent which is now the

subject of a pending arbitration..

12.     The settlement agreement which plaintiff seeks to enforce was negotiated by legal

counsel sophisticated in the asbestos litigation and knowledgeable of the structure

and workings of CCR  To this end, plaintiff brought this action against GAF as a

defendant and not CCR who is not a party to the litigation.

13.     The Court can find no reason or conduct on the part of CCR to allow GAF or

plaintiff to alter CCR's position as agent for a disclosed principal, namely: GAF

Corporation.

14.     The Court can find no reason or conduct on the part of CCR and the members

other than GAF to allow any of the other named parties to be held responsible for

the share allocated to GAF.

THE COURT THEREFORE ORDERS Judgment to enter on behalf of plaintiff and
against GAF Coporation in the amount of $134,744.55 together with interest at the legal rate
from March 2, 2000[2].

BY THE COURT:

Date: 6/9/00

_____
Charles R. Weiner                    J.

---

[2] The confirmation letter from CCR regarding the settlement states that the settlement
amount is due within 90 days from 9/5/99.  Interest was requested by plaintiff from 3/2/00, the
date of payment which is subsequent to the due date.

08/26/2000 15:51  FAX                                    P 06      R-281    Job-284                                                                                                                                        06

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| Name | | C/A No. |
|---|---|---|
| Darrell Aldridge | ▼ | C/A No. 299-083 |
| Henry Allen | ▼ | C/A No. 299-096 |
| Jackie Anderson | ▼ | C/A No. 299-059 |
| James Ashley | ▼ | C/A No. 199-088 |
| Howard Bentley | ▼ | C/A No. 599-053 |
| James Beverly | ▼ | C/A No. 599-054 |
| Roy Brewer | ▼ | C/A No. 199-091 |
| Francis Cox | ▼ | C/A No. 299-054 |
| Gerod Crawford | ▼ | C/A No. 599-041 |
| Warren Crews | ▼ | C/A No. 599-044 |
| Walter Donaldson | ▼ | C/A No. 199-093 |
| Cecil Dryden | ▼ | C/A No. 599-042 |
| James Folmar | ▼ | C/A No. 299-039 |
| Lloyd Gibson | ▼ | C/A No. 299-066 |
| William Gray | ▼ | C/A No. 299-058 |
| Max Harrill | ▼ | C/A No. 199-057 |
| Thomas Hayes | ▼ | C/A No. 299-057 |
| Carl Highsmith | ▼ | C/A No. 299-032 |
| James Highsmith | ▼ | C/A No. 299-040 |
| Victor Holland | ▼ | C/A No. 199-037 |
| Robert Jones | ▼ | C/A No. 299-019 |
| Willie Mells | ▼ | C/A No. 299-073 |
| Waldo Moody | ▼ | C/A No. 299-056 |
| Theodore Nobles | ▼ | C/A No. 299-104 |
| Bobby Pierce | ▼ | C/A No. 299-072 |
| Nathaniel Robinson | ▼ | C/A No. 299-084 |
| Roy Spores | ▼ | C/A No. 299-067 |
| Ralph Tabor | ▼ | C/A No. 299-042 |
| Arthur Taylor | ▼ | C/A No. 299-065 |
| Talmadge Tuten | ▼ | C/A No. 299-055 |
| Claude Warren | ▼ | C/A No. 599-043 |
| Edward Wilson | ▼ | C/A No. 299-115 |
| Eddie Woodard | ▼ | C/A No. 299-041 |
| Julian Woodcock | ▼ | C/A No. 299-038 |

C

US OFFICE PRODUCTS

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS
LIABILITY LITIGATION (NO. VI)

                                        :
                                        :
                                        :
                                        x

This Document Relates to:              :       CIVIL ACTION NO. MDL 875

United States District Court           :
Eastern District of Pennsylvania       :
                                        :
Valerie BERNHARDT, Executrix,
Estate of Roy BERNHARDT, dec.
C.A. No. 93-7086

**F I L E D**

JUN 1 4 2000

MICHAEL E. KUNZ, Clerk

By _____ Dep. Clerk

### ORDER

THIS MATTER coming before the Court upon Plaintiff's Letter Motion To Enforce Settlement Agreement With The Center For Claims Resolution and GAF Corporation, and the Court having had an opportunity to review the submissions of the parties and to hear argument thereon, FINDS as follows:

1.    GAF Corporation, a defendant in this litigation, was a member of the Center For Claims Resolution for approximately twelve years until January, 2000 when such membership was terminated.

2.    The Center For Claims Resolution (CCR) is an agency entity created for the sole purpose of negotiating settlements or otherwise handling asbestos claims and lawsuits which have been brought against its member companies. Each member company entered into an agency agreement with the CCR authorizing CCR to act

as its agent for the purpose of settling asbestos cases.

3.    The CCR representatives who negotiate the settlements on behalf of the members are not attorneys but are versed in the law for the jurisdictions where their cases are located and they have several attorneys on the CCR staff available for legal consultation.

4.    The agreement between GAF and CCR provides a multitude of criteria and other factors to be used in determining each members share of a settlement. As the settlements are completed, a monthly billing is submitted to the members for their share of the payments to conclude the settlement. CCR became a conduit and monitor for the payment of the settlements made on behalf of its member companies.

5.    The representative from CCR, Mr. Kevin Guers, settled this case with plaintiff on behalf of the CCR member companies on October 22, 1999.

6.    At the time this matter was settled between plaintiff and the CCR member companies, GAF Corporation was a member company with CCR.

7.    CCR submitted a check to the plaintiff for an amount which represented all of the member companies' shares except for GAF Corporation which did not submit its share to CCR for disbursement. The entire calculation of share amounts was done by CCR. GAF's calculated amount was $237,643.09.

8.    GAF Corporation and CCR are currently in arbitration regarding their agreement and the validity of the settlements and/or the amounts paid by CCR on behalf of GAF Corporation.

9.    THE COURT FURTHER FINDS that the plaintiff relied upon the agency of CCR

on behalf of GAF Corporation and all of the other CCR members, and its conduct of business for the past twelve years and in this case. This business (agency) relationship is well-known throughout the asbestos litigation and CCR has settled hundreds of thousands of asbestos lawsuits and claims on behalf of its member companies.

10. Other than providing services for its member companies as agent, CCR does not generate income or have any separate assets with which to fund settlements, but relies upon payments from the member companies to complete the settlements.

11. GAF Corporation has no dispute with this plaintiff regarding the settlement, but controverts CCR and its actions as GAF Corporation's agent which is now the subject of a pending arbitration..

12. The settlement agreement which plaintiff seeks to enforce was negotiated by legal counsel sophisticated in the asbestos litigation and knowledgeable of the structure and workings of CCR. To this end, plaintiff brought this action against GAF as a defendant and not CCR who is not a party to the litigation.

13. The Court can find no reason or conduct on the part of CCR to allow GAF or plaintiff to alter CCR's position as agent for a disclosed principal, namely: GAF Corporation.

14. The Court can find no reason or conduct on the part of CCR and the members other than GAF to allow any of the other named parties to be held responsible for the share allocated to GAF.

THE COURT THEREFORE ORDERS Judgment to enter on behalf of plaintiff and against GAF Coporation in the amount of $237,643.09 together with interest at the legal rate from the date of this order.

BY THE COURT:

Date: 6/9/2000

Charles R. Weiner                    J.

ENTERED: 6/15/00

CLERK OF COURT

D

US OFFICE PRODUCTS

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS            :
LIABILITY LITIGATION (NO. VI)       :
                                    :
_____ _____ ____      x

                                         CIVIL ACTION NO. MDL 875
This Document Relates to:           :

United States District Court        :
District of Nevada                  :

James D. BENSON                     :
CV-S-98-00415-DWH (RLH)             :
CV-S-99-2980-PMP(RLH)               :
_____ _____ ____      x


ORDER

THIS MATTER coming before the Court upon Plaintiff's Motion To Enforce Settlement

Agreement, and the Court having had an opportunity to review the submissions of the parties and

to hear argument thereon, FINDS as follows:

1.    GAF Corporation, a defendant in this litigation, was a member of the Center For

      Claims Resolution for approximately twelve years until January, 2000 when such

      membership was terminated.

2.    The Center For Claims Resolution (CCR) is an agency entity created for the sole

      purpose of negotiating settlements or otherwise handling asbestos claims and

      lawsuits which have been brought against its member companies.  Each member

      company entered into an agency agreement with the CCR authorizing CCR to act

      as its agent for the purpose of settling asbestos cases.

3. The CCR representatives who negotiate the settlements on behalf of the members are not attorneys but are versed in the law for the jurisdictions where their cases are located and they have several attorneys on the CCR staff available for legal consultation.

4. The agreement between GAF and CCR provides a multitude of criteria and other factors to be used in determining each members share of a settlement. As the settlements are completed, a monthly billing is submitted to the members for their share of the payments to conclude the settlement. CCR became a conduit and monitor for the payment of the settlements made on behalf of its member companies.

5. The representative from CCR, Mr. Robert Caprini, settled this case with plaintiff on behalf of the CCR member companies on December 8, 1999 in the amount of $97,500.00.

6. At the time this matter was settled between plaintiff and the CCR member companies, GAF Corporation was a member company with CCR.

7. CCR submitted a check to the plaintiff in the amount of $68,033.60 which represented all of the member companies' shares except for GAF Corporation which did not submit its share to CCR for disbursement. The entire calculation of share amounts was done by CCR.

8. GAF Corporation and CCR are currently in arbitration regarding their agreement and the validity of the settlements and/or the amounts paid by CCR on behalf of GAF Corporation.

9 THE COURT FURTHER FINDS that the plaintiff relied upon the agency of CCR

on behalf of GAF Corporation and all of the other CCR members, and its conduct of business for the past twelve years and in this case. This business (agency) relationship is well-known throughout the asbestos litigation and CCR has settled hundreds of thousands of asbestos lawsuits and claims on behalf of its member companies.

10. Other than providing services for its member companies as agent, CCR does not generate income or have any separate assets with which to fund settlements, but relies upon payments from the member companies to complete the settlements.

11. GAF Corporation has no dispute with this plaintiff regarding the settlement, but controverts CCR and its actions as GAF Corporation's agent which is now the subject of a pending arbitration..

12. The settlement agreement which plaintiff seeks to enforce was negotiated by legal counsel sophisticated in the asbestos litigation and knowledgeable of the structure and workings of CCR. To this end, plaintiff brought this action against GAF as a defendant and not CCR who is not a party to the litigation.

13. The Court can find no reason or conduct on the part of CCR to allow GAF or plaintiff to alter CCR's position as agent for a disclosed principal, namely: GAF Corporation.

14. The Court can find no reason or conduct on the part of CCR and the members other than GAF to allow any of the other named parties to be held responsible for the share allocated to GAF.

THE COURT THEREFORE ORDERS Judgment to enter on behalf of plaintiff and against GAF Corporation in the amount of $29,466.40 together with interest at the legal rate from March 7, 2000[1].

BY THE COURT:

_Charles R Weiner_ J.

Charles R. Weiner

Date: 6/9/00

---

[1] The confirmation letter from CCR regarding the settlement states that the settlement amount is due within 90 days from 12/8/99. Interest requested by plaintiff from 2/17/00 is premature.

E

US OFFICE PRODUCTS

FEB -4 2000

FILED
CLERK'S OFFICE

## DOCKET NO. 875

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

# IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*Jack Givens, et al. v. Witco Corp., Inc., et al.*, E.D. Louisiana, C.A. No. 2:99-2283
*Gary Clark v. CN North America*, E.D. Michigan, C.A. No. 2:99-71140
*David Cosey, et al. v. E.D. Bullard, et al.*, S.D. Mississippi, C.A. No. 1:99-164
*Patricia A. Kelly, et al. v. W.R. Grace & Co.-Conn., et al.*, D. Montana, C.A. No. 9:99-118
*Valorie R. Johnston, et al. v. W.R. Grace & Co.-Conn., et al.*, D. Montana, C.A. No. 9:99-128

# BEFORE JOHN F. NANGLE, CHAIRMAN, WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS,* LOUIS C. BECHTLE* AND JOHN F. KEENAN, JUDGES OF THE PANEL

## TRANSFER ORDER

Before the Panel are motions brought, pursuant to Rule 7.4, R.P.J.P.M.L., 181 F.R.D. 1, 10 (1998), by plaintiffs in the above-captioned Eastern District of Louisiana, Eastern District of Michigan, Southern District of Mississippi and District of Montana actions. All movants request that the Panel vacate the portions of its orders conditionally transferring their respective action to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner.

On the basis of the papers filed and/or the hearing held,[1] the Panel finds that these actions involve common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the actions to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of these actions is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991). In particular, we note that in the Panel's original decision distinctions based on such matters as the pendency of motions or other matters before the

---

*Judges Sanders and Bechtle took no part in the decision of this matter with respect to the Southern District of Mississippi action.

[1] The parties to all but the Southern District of Mississippi action waived oral argument and, accordingly, the question of Section 1407 transfer of those actions was submitted on the briefs. Rule 16.2, R.P.J.P.M.L., 181 F.R.D. 1, 14 (1998).

- 2 -

transferor court,[2] the uniqueness of a party's status, the type of defendant, the docket condition of any specific federal district, the stage of pretrial proceedings, the presence of unique claims or additional claims not relating to asbestos injury or death, and/or the unanimity of opposition to transfer by the parties to an action, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket.

We are not persuaded to depart from this approach in dealing with the question of transfer of the actions now before the Panel. We note that under Judge Weiner's stewardship, as of February 1, 2000, i) nearly 60,000 actions have been closed in the transferee district, and ii) over 1,000 actions or claims therein have been returned to their originating transferor districts. To parties that believe the uniqueness of their particular situation renders inclusion of their action in MDL-875 unnecessary or inadvisable, we note that whenever the transferee judge deems remand of any claims or actions appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L., *supra*, 181 F.R.D. at 11-13. We are confident that Judge Weiner will continue to promptly review arguments for returning transferred actions or claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever he is convinced that retention in the MDL-875 proceedings is no longer needed.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the five above-captioned actions be, and the same hereby are, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

John F. Nangle
Chairman

---

[2] Parties in certain of the actions before the Panel have argued that transfer should be denied or deferred in order to permit the judges assigned the actions to rule on various potentially dispositive pending motions. There is no need to delay transfer in order to accommodate such an interest. We note that: 1) as a practical matter, there is a lag time of at least three or four months from the filing of an action, its identification as a potential tag-along action, issuance of a conditional transfer order, stay of transfer when a party timely objects to the conditional transfer, briefing on the question of transfer, the Panel hearing, and the issuance of the Panel's subsequent order; 2) Panel Rule 1.5, R.P.J.P.M.L., *supra*, 181 F.R.D. at 3, expressly provides that the pendency of a conditional transfer order does not in any way i) suspend orders and pretrial proceedings in the district court in which the action that is the subject of the conditional transfer order is pending, or ii) limit the pretrial jurisdiction of that court; and 3) accordingly, those courts wishing to address such motions have adequate time in which to do so, those courts concluding that such issues should be addressed by the transferee judge need not rule on them, and the process of 1407 transfer in MDL-875 can continue without any unnecessary interruption or delay.

F

US OFFICE PRODUCTS

A CERTIFIED TRUE ~~

ATTEST _~~~~~~_
FOR THE JUDICIAL PANEL OF
MULTIDISTRICT LITIGATION

FILED   JUN  2 1994

*DOCKET NO. 875*

MULTIDISTRICT LITIGATION
FILED

MAY 3 1 1994

PATRICIA D. HOWARD
CLERK OF THE PANEL

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI) #1155

*American President Companies, Ltd., et al. v. Babcock & Wilcox Co., et al.,* W.D. Washington, C.A. No. 2:94-91

## BEFORE JOHN F. NANGLE, CHAIRMAN, MILTON POLLACK,* ROBERT R. MERHIGE, JR., WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JOHN F. GRADY AND BAREFOOT SANDERS,* JUDGES OF THE PANEL

## TRANSFER ORDER

Presently before the Panel is a motion, pursuant to Rule 12, R.P.J.P.M.L., 147 F.R.D. 589, 596 (1993), by plaintiffs American President Companies, Ltd., and American President Lines, Ltd., in the above-captioned action (*American*) requesting that the Panel vacate the portion of its order conditionally transferring *American* to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner.

On the basis of the papers filed and the hearing held, the Panel finds that *American* involves common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of *American* to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of these actions is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. See *In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991). Plaintiffs seek to exclude *American* from transfer on the ground that technically the action is not a claim for asbestos related personal injuries, but is rather one seeking indemnification for the sums previously paid by plaintiffs to settle an individual's claim against them for such asbestos injuries. Resolution of the indemnification claim, however, will involve the same kinds of questions of fault and liability found not only in the MDL-875 actions in general, but, in particular, in the cross-claims and third party claims for contribution and indemnity filed or anticipated to be filed by shipowners in the MDL-875 maritime asbestos actions (including the 972 actions already transferred in this docket in which American President Lines, Ltd., was named as a defendant). It may be on further refinement of the issues and close scrutiny by the transferee court, *American* can be remanded in advance of the

---

*Judges Pollack and Sanders recused themselves and took no part in the decision of this matter.

- 2 -

other actions in the transferee district.  Should the transferee court deem remand of any claims or actions appropriate, the transferee court can communicate this to the Panel, and the Panel will accomplish remand with a minimum of delay.  *See* Rule 14, R.P.J.P.M.L., *supra*, 147 F.R.D. at 597-99.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the action entitled *American President Companies, Ltd., et al. v. Babcock & Wilcox Co., et al.*, W.D. Washington, C.A. No. 2:94-91 be, and the same hereby is, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

John F. Nangle
Chairman

ENTERED: 6/3/94

CLERK OF COURT

G

US OFFICE PRODUCTS

```
┌─────────────────────────────────┐
│        JUDICIAL PANEL ON        │
│    MULTIDISTRICT LITIGATION     │
│             FILED               │
│  ┌───────────────────────────┐  │
│  │       Feb. 26, 1993       │  │
│  └───────────────────────────┘  │
│       PATRICIA D. HOWARD        │
│       CLERK OF THE PANEL        │
└─────────────────────────────────┘
```

## DOCKET NO. 875

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

# IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

### (SEE ATTACHED SCHEDULE CTO-32)

## CONDITIONAL TRANSFER ORDER

On July 29, 1991, the Panel transferred 27,696 civil actions to the United States District Court for the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. §1407. Since that time, more than 10,200 additional actions have been transferred to the Eastern District of Pennsylvania. With the consent of that court, all such actions have been assigned to the Honorable Charles R. Weiner.

It appears that the actions listed on the attached schedule involve questions of fact which are common to the actions previously transferred to the Eastern District of Pennsylvania and assigned to Judge Weiner.

Pursuant to Rule 12 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 120 F.R.D. 251, 258, the actions on the attached schedule are hereby transferred under 28 U.S.C. §1407 to the Eastern District of Pennsylvania for the reasons stated in the opinion and order of July 29, 1991, (771 F.Supp. 415), as corrected on October 1, 1991, October 18, 1991, November 22, 1991, December 9, 1991, January 16, 1992, and March 5, 1992, with the consent of that court, assigned to the Honorable Charles R. Weiner.

This order does not become effective until it is filed in the office of the Clerk of the United States District Court for the Eastern District of Pennsylvania. The transmittal of this order to said Clerk shall be stayed fifteen (15) days from the entry thereof and if any party files a notice of opposition with the Clerk of the Panel within this fifteen (15) day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

*Patricia D. Howard*

Patricia D. Howard
Clerk of the Panel

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

Feb. 26, 1993

PATRICIA D. HOWARD
CLERK OF THE PANEL

## SCHEDULE CTO—32 — TAG ALONG CASES
## DOCKET NO. 875
## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

| DISTRICT | DIV | CIVIL ACTION# | DISTRICT | DIV | CIVIL ACTION# | DISTRICT | DIV | CIVIL ACTION# | DISTRICT | DIV | CIVIL ACTION# |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **CONNECTICUT** | | | **MISSOURI WESTERN** | | | OHN | 1 | 93-10021 | OHN | 1 | 93-10072 |
| CT | 2 | 92-448 | MOW | 4 | 92-222 | OHN | 1 | 93-10022 | OHN | 1 | 93-10073 |
| CT | 2 | 92-1026 | | | | OHN | 1 | 93-10023 | OHN | 1 | 93-10074 |
| CT | 2 | 92-1030 | **MONTANA** | | | OHN | 1 | 93-10024 | OHN | 1 | 93-10075 |
| CT | 3 | 93-128 | MT | 9 | 92-23 | OHN | 1 | 93-10025 | OHN | 1 | 93-10076 |
| | | | | | | OHN | 1 | 93-10026 | OHN | 1 | 93-10077 |
| **GEORGIA NORTHERN** | | | **NORTH CAROLINA EASTERN** | | | OHN | 1 | 93-10027 | OHN | 1 | 93-10078 |
| GAN | 1 | 92-1764 | NCE | 4 | 92-124 | OHN | 1 | 93-10028 | OHN | 1 | 93-10079 |
| GAN | 1 | 92-1782 | NCE | 4 | 92-125 | OHN | 1 | 93-10029 | OHN | 1 | 93-10080 |
| GAN | 1 | 92-1942 | NCE | 5 | 92-571 | OHN | 1 | 93-10030 | OHN | 1 | 93-10081 |
| GAN | 1 | 93-84 | NCE | 5 | 92-582 | OHN | 1 | 93-10031 | OHN | 1 | 93-10082 |
| GAN | 1 | 93-114 | NCE | 7 | 92-93 | OHN | 1 | 93-10032 | OHN | 1 | 93-10083 |
| | | | NCE | 7 | 92-120 | OHN | 1 | 93-10033 | OHN | 1 | 93-10084 |
| **GEORGIA SOUTHERN** | | | | | | OHN | 1 | 93-10034 | OHN | 1 | 93-10085 |
| GAS | 5 | 93-7 | **NORTH CAROLINA MIDDLE** | | | OHN | 1 | 93-10035 | OHN | 1 | 93-10086 |
| GAS | 5 | 93-8 | NCM | 2 | 93-57 | OHN | 1 | 93-10036 | OHN | 1 | 93-10087 |
| GAS | 5 | 93-16 | | | | OHN | 1 | 93-10037 | OHN | 1 | 93-10088 |
| GAS | 5 | 93-17 | **NORTH CAROLINA WESTERN** | | | OHN | 1 | 93-10038 | OHN | 1 | 93-10089 |
| GAS | 5 | 93-18 | NCW | 3 | 93-17 | OHN | 1 | 93-10039 | OHN | 1 | 93-10090 |
| GAS | 5 | 93-19 | | | | OHN | 1 | 93-10040 | OHN | 1 | 93-10091 |
| GAS | 5 | 93-20 | **NEW HAMPSHIRE** | | | OHN | 1 | 93-10041 | OHN | 1 | 93-10092 |
| GAS | 5 | 93-21 | NH | 1 | 92-32 | OHN | 1 | 93-10042 | OHN | 1 | 93-10093 |
| GAS | 5 | 93-22 | | | | OHN | 1 | 93-10043 | OHN | 1 | 93-10094 |
| GAS | 5 | 93-23 | **NEW YORK SOUTHERN** | | | OHN | 1 | 93-10044 | OHN | 1 | 93-10095 |
| GAS | 5 | 93-24 | NYS | 1 | 92-6377 | OHN | 1 | 93-10045 | OHN | 1 | 93-10096 |
| GAS | 5 | 93-25 | NYS | 1 | 92-6380 | OHN | 1 | 93-10046 | OHN | 1 | 93-10097 |
| GAS | 5 | 93-26 | | | | OHN | 1 | 93-10047 | OHN | 1 | 93-10098 |
| | | | **NEW YORK WESTERN** | | | OHN | 1 | 93-10048 | OHN | 1 | 93-10099 |
| **HAWAII** | | | NYW | 1 | 93-96 | OHN | 1 | 93-10049 | OHN | 1 | 93-10100 |
| HI | 1 | 92-802 | | | | OHN | 1 | 93-10050 | OHN | 1 | 93-10101 |
| | | | **OHIO NORTHERN** | | | OHN | 1 | 93-10051 | OHN | 1 | 93-10102 |
| **IOWA SOUTHERN** | | | OHN | 1 | 93-10001 | OHN | 1 | 93-10052 | OHN | 1 | 93-10103 |
| IAS | 4 | 93-80044 | OHN | 1 | 93-10002 | OHN | 1 | 93-10053 | OHN | 1 | 93-10104 |
| | | | OHN | 1 | 93-10003 | OHN | 1 | 93-10054 | OHN | 1 | 93-10105 |
| **ILLINOIS NORTHERN** | | | OHN | 1 | 93-10004 | OHN | 1 | 93-10055 | OHN | 1 | 93-10106 |
| ILN | 1 | 92-4662 | OHN | 1 | 93-10005 | OHN | 1 | 93-10056 | OHN | 1 | 93-10107 |
| | | | OHN | 1 | 93-10006 | OHN | 1 | 93-10057 | OHN | 1 | 93-10108 |
| **KENTUCKY EASTERN** | | | OHN | 1 | 93-10007 | OHN | 1 | 93-10058 | OHN | 1 | 93-10109 |
| KYE | 2 | 92-203 | OHN | 1 | 93-10008 | OHN | 1 | 93-10059 | OHN | 1 | 93-10110 |
| | | | OHN | 1 | 93-10009 | OHN | 1 | 93-10060 | OHN | 1 | 93-10111 |
| **MAINE** | | | OHN | 1 | 93-10010 | OHN | 1 | 93-10061 | OHN | 1 | 93-10112 |
| ME | 1 | 93-20 | OHN | 1 | 93-10011 | OHN | 1 | 93-10062 | OHN | 1 | 93-10113 |
| ME | 1 | 93-21 | OHN | 1 | 93-10012 | OHN | 1 | 93-10063 | OHN | 1 | 93-10114 |
| | | | OHN | 1 | 93-10013 | OHN | 1 | 93-10064 | OHN | 1 | 93-10115 |
| **MICHIGAN WESTERN** | | | OHN | 1 | 93-10014 | OHN | 1 | 93-10065 | OHN | 1 | 93-10116 |
| MIW | 2 | 92-239 | OHN | 1 | 93-10015 | OHN | 1 | 93-10066 | OHN | 1 | 93-10117 |
| | | | OHN | 1 | 93-10016 | OHN | 1 | 93-10067 | OHN | 1 | 93-10118 |
| **MINNESOTA** | | | OHN | 1 | 93-10017 | OHN | 1 | 93-10068 | OHN | 1 | 93-10119 |
| MN | 5 | 92-88 | OHN | 1 | 93-10018 | OHN | 1 | 93-10069 | OHN | 1 | 93-10120 |
| | | | OHN | 1 | 93-10019 | OHN | 1 | 93-10070 | OHN | 1 | 93-10121 |
| | | | OHN | 1 | 93-10020 | OHN | 1 | 93-10071 | OHN | 1 | 93-10122 |

H

US OFFICE PRODUCTS

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

OCT -5 1999

FILED
CLERK'S OFFICE

## DOCKET NO. 875

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*James R. Sweeney, et al. v. A-Best Products Co., et al.*, E.D. Pennsylvania (S.D. Indiana, C.A. No. 1:98-118)

*Conwed Corp. v. Union Carbide Corp., et al.*, E.D. Pennsylvania (D. Minnesota, C.A. No. 5:92-88)

## BEFORE JOHN F. NANGLE,* CHAIRMAN, WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS,* LOUIS C. BECHTLE* AND JOHN F. KEENAN, JUDGES OF THE PANEL

## ORDER DENYING REMAND

Before the Panel are motions for remand brought; pursuant to Rule 7.6, R.P.J.P.M.L., 181 F.R.D. 1, 11-13 (1998), with respect to the two above-captioned actions (*Sweeney* and *Conwed*, respectively). Plaintiffs in *Sweeney* seek remand of that action to the Southern District of Indiana; and plaintiff in *Conwed* seeks remand of that action to the District of Minnesota. Three defendants in *Sweeney* and the defendant in *Conwed* oppose remand of their respective action.

On the basis of the papers filed and the hearing held, the Panel finds that remand of neither *Sweeney* nor *Conwed* is appropriate at this time. The following quotation from an earlier Panel opinion is very instructive for situations such as this, where no recommendation of remand has been made to the Panel by the transferee judge:

The Panel's Rules of Procedure provide that the Panel shall consider the question of remand on the motion of any party, on the suggestion of the transferee court or on the Panel's own initiative. Rule [7.6(c)], R.P.J.P.M.L., [181] F.R.D. [1, 12 (1998)]. In considering the question of remand, the Panel has consistently given great weight to the transferee judge's determination that remand of a particular action at a particular time is appropriate because the transferee judge, after all, supervises the day-to-day pretrial proceedings. *See, e.g., In re IBM Peripheral EDP Devices Antitrust Litigation*, 407 F.Supp. 254, 256 (J.P.M.L. 1976). The transferee judge's notice of suggestion of remand to the Panel is obviously an indication that he

---

*Judges Nangle, Sanders and Bechtle took no part in the decision of this matter.

- 2 -

perceives his role under Section 1407 to have ended. *In re Air Crash Disaster Near Dayton, Ohio, on March 9, 1967*, 386 F.Supp. 908, 909 (J.P.M.L. 1975). Absent a notice of suggestion of remand from the transferee judge to the Panel, any party advocating remand before the Panel bears a strong burden of persuasion. We rule that movants have not met this burden here and that the motion for remand is premature.

*In re Holiday Magic Securities and Antitrust Litigation*, 433 F.Supp. 1125, 1126 (J.P.M.L. 1977).

We reiterate that Judge Weiner has become thoroughly familiar with the issues in MDL-875 and, especially in light of the unprecedented scale of this docket, is in the preferred position to determine the future course of the actions before him. We note that already in this docket nearly 1,000 actions or claims therein have been returned to their originating transferor districts, and that whenever Jude Weiner deems remand of *Sweeney* or *Conwed* (or any claims in either of them) appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L., *supra*, 181 F.R.D. at 11-13. We are confident that Judge Weiner will continue to promptly review arguments for returning transferred actions or claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever he is convinced that retention in the MDL-875 proceedings is no longer needed. In conclusion, we find that movants have failed both i) to persuade Judge Weiner of the desirability of remand, and ii) to offer the Panel a persuasive reason why it should order remand in the absence of a suggestion from Judge Weiner. Accordingly, we will deny remand.

IT IS THEREFORE ORDERED that the motions for Section 1407 remand of the two above-captioned actions be, and the same hereby are, DENIED.

FOR THE PANEL:

William B. Enright
Acting Chairman

MDL 875

BEFORE THE JUDICIAL PANEL FOR
THE MULTIDISTRICT LITIGATION

IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)

This Document Relates To:

CONWED CORPORATION,

                    Plaintiff,

v.

UNION CARBIDE CHEMICALS AND
PLASTICS COMPANY, INC.,

                    Defendant and
                    Third-Party Plaintiff,

v.

OWENS-CORNING FIBERGLAS CORPORATION, ET AL.,

                    Third-Party Defendants.

CIVIL ACTION NO. MDL 875

Civil Action No. 5-92-88
DISTRICT OF MINNESOTA

TRANSFEREE JUDGE:
Judge Charles Weiner

---

## NOTICE OF MOTION AND
## MOTION TO REMAND

---

### NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that the undersigned, counsel for Conwed Corporation, will

bring this motion on before the Judicial Panel on Multidistrict Litigation on at a date and time to

be set by the Panel.

## MOTION TO REMAND

## INTRODUCTION

Pursuant to Section 1407(a), Title 28, United States Code, Conwed Corporation

(hereinafter "Conwed") brings this Motion before the Panel on Multidistrict Litigation ("the

Panel") and requests that the Panel remand this case to its transferor court, the United States

District Court for the District of Minnesota from the MDL 875. As discussed in detail, infra,

Conwed has previously brought two Motions to Remand before the United States District Court

for the Eastern District of Pennsylvania, on January 26, 1998, and on November 9, 1998.

However, the presiding judge, the Honorable Charles Weiner took no action on either of

Conwed's two Motions to Remand. In the interim, the Third Circuit has reiterated that the power

to remand cases that have been transferred for pretrial proceedings rests with the Panel, not with

the transferee court. See In re Roberts, -- F.3d --, 1999 WL 330198 (3d Cir. May 20, 1999)

(citing Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 118 S. Ct. 956 (1998)). See Aff.

of Kristi K. Warner, Ex. A.

Therefore, Conwed requests that the Panel remand this case for the following reasons:

First, this case has been pending in the MDL 875 for over seven years, and has been ready for

trial for some time. There is no remaining discovery. The parties have also engaged in extensive

settlement discussions, without the resolution of Conwed's claims. Second, this case does not fit

within the parameters set by the Panel in its July 29, 1991 Order creating the MDL 875. Finally,

any matters that remain, including any motions for summary judgment, involve evaluating, under

the unique statutory subrogation provisions of Minnesota Workers' Compensation laws, the

claims of approximately 1,685 former Conwed employees with asbestos-related diseases. These

2

matters should be resolved by the transferor court in Minnesota, and are not matters appropriate for consolidated or coordinated proceedings.

## BACKGROUND

Conwed instituted this action against Union Carbide over seven years ago, on June 10, 1992, in the United States District Court for the District of Minnesota, Fifth Division. See Warner Aff., Ex. B. This matter was transferred to the MDL 875 docket by Conditional Transfer Order of the Multi-District Litigation Panel dated February 26, 1993. In this action, Conwed seeks reimbursement for workers' compensation benefits paid to several hundred former employees of its Cloquet, Minnesota ceiling tile plant who suffer asbestos-related diseases from exposure to asbestos mineral mined, milled, and sold by Union Carbide. In addition, Conwed seeks damages from Union Carbide for claims payable in the future as a result of such exposure, as Conwed is entitled to do under the unique statutory reimbursement procedures of the Minnesota Workers' Compensation Act, Minn. Stat. § 176.061.

Since commencement of this action, the parties have engaged in exhaustive discovery, including multiple sets of interrogatories, requests for production of documents and requests for admissions. Further, the parties have taken countless depositions of both lay witnesses and experts. In fact, the final discovery deadline, which had been extended many times, was over two years ago, on January 17, 1997. As of that date, nearly all discovery was complete, and the parties have now resolved and completed all remaining discovery in the intervening two years.

Conwed and Union Carbide have also engaged in numerous settlement negotiations, including at least seven separate settlement conferences, which occurred from May 13, 1993 to the most recent conference on June 22, 1999. In the past two years alone, the parties have had

five settlement conferences, occurring on June 2, 1998, November 30, 1998, December 14, 1998,

March 25, 1999 and June 22, 1999. At the June 22nd conference, Judge Weiner ordered that the

corporate representatives personally meet and attempt to settle the case, which they did on July 7,

1999. On that date, the parties themselves met in New York and negotiated for the entire

morning, concluding that negotiations had reached an end. Thus, once again, the parties' efforts

to settle were to no avail, and the parties have reached an impasse. The extensive negotiations in

this case have made it apparent that this is simply one of those cases that must be sent to trial.

Further, during the March 25, 1999 conference, Judge Weiner suggested that the parties

submit the case to be tried in the Eastern District of Pennsylvania, the transferee court, in five

separate "mini-trials," with each party choosing its five "best" cases of the underlying Conwed

employee claims for trial. Thus, as discussed below, even though Judge Weiner, as the transferee

court, would not have the authority to conduct such "mini-trials," the idea shows that even Judge

Weiner has recognized that this case is trial-ready.

Because the case was ready for trial, Conwed brought its first Motion to Remand on

January 26, 1998, and Union Carbide eventually filed a brief in opposition to the Motion, dated

June 1, 1998.[1] Judge Weiner did not address these issues at the time, and did not rule on

Conwed's Motion to Remand. Conwed renewed its Motion to Remand on November 9, 1998

before Judge Weiner. Union Carbide did not file any opposition to the Motion, but Judge Weiner

---

[1]Union Carbide set forth three reasons why the case should not be remanded at that time, claiming that discovery was not complete, that settlement discussions were not complete, and that the Eastern District of Pennsylvania was the appropriate forum to address motions for summary judgment. None of these old arguments made by Union Carbide are applicable to the present motion made 1 ½ years later.

again did not rule on the Motion. See Warner Aff.

Conwed now brings the present Motion for Remand before the Panel, which is the appropriate tribunal to consider the Motion. See In re Roberts, 1999 WL 330198 at *2 ("the power to remand a transferred case to the transferor court lies with the Panel, not the transferee district judge"). Thus, Conwed requests that the Panel grants this Second Renewed Motion to Remand in its entirety.

## DISCUSSION

I.     **The Judicial Panel on Multidistrict Litigation Has the Power to Remand the Present Case.**

The power to remand a transferred case rests with the Panel, and not with the transferee district judge. Id. In Roberts, an asbestos personal injury plaintiff brought suit against various asbestos manufacturers in the United States District for the Southern District of Indiana. Pursuant to 28 U.S.C. 1407, the Panel transferred the case to the Eastern District of Pennsylvania for consolidation with other cases in the MDL 875, over which Judge Weiner retained jurisdiction for three years. Id. at *1. The plaintiff then filed a motion to remand the case back to the transferor court, and has been his practice, Judge Weiner remanded only the compensatory portion of the case, retaining jurisdiction over the plaintiff's claim for punitive damages. Id. The plaintiff then sought a Writ of Mandamus, petitioning the Third Circuit Court of Appeals to order Judge Weiner to remand the punitive damages claim as well.

In considering the petition, the Third Circuit first addressed whether Judge Weiner possessed the authority in the first place to remand any claims to the transferor court. Relying on the language of 28 U.S.C. 1407(a), the Court held that Judge Weiner does not have such

5

authority. Id. at *2.[2] Instead the Court held "Section 1407(a) unequivocally places the authority

to remand a transferred case with the Panel, not the transferee district judge." Id. (citing Lexecon

Inc., 118 S. Ct. at 962 (Supreme Court determined that § 1407(a) imposes a mandatory

obligation on the Panel to remand transferred cases to their transferor court)). Finally, the

Roberts court noted that the plaintiff did not waive his rights to seek remand from the Panel by

filing the motion for remand in the transferee court. Id. at *3.

In the present case, following the directive of the Third Circuit Court of Appeals in

Roberts, supra, Conwed brings this Motion to Remand to the Panel, which is the only tribunal

with authority to remand this case. Further, it is well settled that a transferee court does not have

the power to try a transferred case. Lexecon Inc., 118 S. Ct. at 962 (§ 1407(a) precludes a

transferee district judge from assigning a transferred case to itself for trial). Thus, the entire case

must be remanded, and not split into separate "mini-trials" to be tried in the Eastern District of

Pennsylvania, as suggested by Judge Weiner at a recent settlement conference in this case.

## II.   This Lawsuit Has Been Pending for Over Seven Years and is Ripe for Trial.

In the seven years that this action has been pending, Conwed and Union Carbide have

engaged in extensive discovery, including many sets of interrogatories, requests for documents

---

[2]Section 1407(a) provides, in part, as follows:

When civil actions involving one or more common questions of fact are pending in
different districts, such actions may be transferred to any district for coordinated or
consolidated pretrial proceedings....Each action so transferred shall be remanded by the
panel at or before the conclusion of such pretrial proceedings to the district from which it
was transferred....

28 U.S.C. § 1407(a) (emphasis added).

and requests for admissions. The parties have also taken voluminous depositions of lay witnesses and experts, some of whose depositions lasted several days over the course of many months. Simply put, the parties have conducted exhaustive discovery which is now complete. Any argument by Union Carbide to the contrary is without merit, and would be nothing more than an effort to avoid trial.[3]

Likewise, Conwed and Union Carbide have engaged in extensive settlement negotiations, with the last settlement conference before the transferee court occurring on July 7, 1999. As with the prior settlement conferences, the parties were unable to settle.[4] Thus, despite numerous efforts to settle this case, Conwed's claim against Union Carbide have not been settled. Conwed believes that this is primarily because Union Carbide is unwilling to settle this case without facing the imminent threat of trial.

**III.    This Action is Not the Traditional Asbestos Personal Injury Action For Which the Judicial Panel on Multidistrict Litigation Created the MDL 875.**

Conwed's action against Union Carbide is not the traditional asbestos personal injury action which the MDL 875 was designed to handle.

On July 29, 1991, the Judicial Panel on Multidistrict Litigation entered an order transferring all pending federal actions involving allegations of personal injury or wrongful death caused by asbestos to the United States District Court for the Eastern District of Pennsylvania.

---

[3] The fact that this case has lasted seven years is, by itself, reason to remand the case for trial in Minnesota, where the District Court's calendar operates in an expeditious manner. Cases in the Minnesota District Court are typically set for trial within 12 to 18 months of filing.

[4] It should be noted that settlement efforts have not been entirely unsuccessful. Of the four third-party defendants impleaded by Union Carbide, Conwed has settled with two.

See Opinion and Order in In re: Asbestos Products Liability Litig. (No. VI), Docket No. 875

(July 29, 1991). See Warner Aff., Ex. B. In its order, the Panel determined that such cases

involved common questions of fact relating to injuries or wrongful death allegedly caused by

exposure to asbestos. Id. The Honorable Charles Weiner of the Eastern District of Pennsylvania

was selected to preside over the coordinated pretrial procedures in the MDL 875.

Since the MDL 875 was formed, the MDL 875 has received tens of thousands of asbestos

personal injury actions, and the Court has successfully resolved many of these cases. At the same

time, cases that do not fall within the parameters established by the Panel in its July 29, 1991

Order have been routinely remanded. For instance, Barfield v. Texaco, Inc., Civ. No. 97-2621

(E.D. Pa. Apr. 1, 1998), was remanded to the Eastern District of Louisiana, where the plaintiffs

had not alleged asbestos-related personal injuries against the "traditional" asbestos defendants.

See Warner Aff., Ex. B. Rather, the plaintiffs asserted they were wrongfully exposed to asbestos

and were wrongfully discharged by their employer, Texaco. Id.; see also In re: Rosenzweig, Civ.

No. J-C-97099 (E.D. Pa. June 12, 1997) (asbestos personal injury claim remanded to the Eastern

District of Arkansas where defendant was not a traditional asbestos defendant at time of remand);

Mortensen v. Maxwell House Coffee Co., Civ. No. 4-95-736 (E.D. Pa. Sept. 14, 1995) (action

remanded to Southern District of Texas where court found "defendant is not 'traditional'

defendant in asbestos actions, and there are no other asbestos defendants"). See Id.

The present case is similar to those cases that have been remanded because they are not

the type of cases for which the Panel created the MDL 875. Here, Conwed is not a "traditional"

asbestos personal injury plaintiff claiming injuries or death as a result of exposure to asbestos.

Nor is Conwed a "traditional" defendant. In fact, aside from this case, Conwed is a party to no

8

other MDL 875 case. Instead, Conwed is an employer who has paid and will pay workers' compensation benefits, as required by Minnesota workers' compensation laws, to Minnesota employees alleging asbestos-related illnesses. Similarly, while Union Carbide may be a miner, miller and supplier of asbestos, Conwed's lawsuit against Union Carbide is not an asbestos personal injury case as contemplated by the Panel. Rather, as discussed in detail below, Conwed is seeking contribution and indemnification from Union Carbide under Minnesota workers' compensation laws for benefits paid and payable to former Conwed Minnesota employees. Further, Union Carbide is the only defendant in this action, i.e. there are no other asbestos defendants.[5]

Although this case was conditionally transferred to this Court, Conwed's action does not fall within the parameters set by the Panel in establishing the MDL 875. Thus, the Panel should remand this unique action to its transferor court in Minnesota.

## IV.   This Action Involves the Specialized Application of the Minnesota Workers' Compensation Act, Which Should be Decided by the Transferor Court in Minnesota.

Finally, in efforts to defeat Conwed's prior motions to remand, Union Carbide has claimed that the MDL 875 Court should consider motions for summary judgment and motions to dismiss. However, the determination of the parties' claims involves evaluating underlying claims by Conwed workers in light of the highly specialized Minnesota Workers' Compensation Act. Such complicated Minnesota-specific issues should be addressed by the court in Minnesota.

In Minnesota, third party actions under the Workers' Compensation Act are governed by

---

[5]While Union Carbide has impleaded four third-party defendants, only two remain. See n. 4, supra.

9

Minn. Stat. § 176.061(5)-(10). These provisions of the Minnesota Workers' Compensation Act provide that when an employee elects to receive workers' compensation benefits for an injury caused by a third party's negligence, the employer is subrogated to the employee's rights against the tortfeasor up to the total amount of workers' compensation liability. Kliniski v. Southdale Manor, Inc., 518 N.W.2d 7, 9 (Minn. 1994). The real party in interest in any such action is the insurer, or self-insured employer. Fidelity & Cas. Ins. Co. v. St. Paul Gas Light Co., 188 N.W. 265 (Minn. 1923). The Act provides in part, as follows:

> If an injury or death for which benefits are payable is caused under circumstances which created a legal liability for damages on the part of a party other than the employer, that party being then insured or self-insured in accordance with this chapter, and the provisions of subdivisions 1,2,3, and 4 do not apply, or the party other than the employer is not then insured or self insured as provided by this chapter, legal proceedings may be taken by the employee or the employee's dependents in accordance with clause (a), or by the employer, or by the attorney general on behalf of the special compensation fund, in accordance with clause (b), against the other party to recover damages, notwithstanding the payment of benefits by the employer or the special compensation fund or their liability to pay benefits.

Minn. Stat. § 176.061, subd. 5. Thus, subdivision 5 allows an employer to commence a subrogation action against a third party either in the employee's name or in the name of the employer. Minn. Stat. § 176.061, subd. 5.

Subdivision 7, which accords an employer a separate cause of action against a third party, extends such an action to compensation not yet payable. Minn. Stat.§ 176.061, subd. 7. It provides that the amount recovered by an employer for medical expenses or other compensation is for the benefit of the employer to the extent that the employer "has paid or will be required to pay compensation or pay for medical treatment of the injured employee." Id.; see Haase v. Haase, 369 N.W.2d 311, 314 (Minn. Ct. App. 1985) (following employee's Naig settlement,

employer has subrogation claim against tortfeasor for benefits payable in the future and benefits already paid).[6] The calculation of contribution has spawned a large of amount of case law in Minnesota. See, e.g., Lambertson v. Cincinnati Corp., 257 N.W.2d 679 (Minn. 1977); Westendorf by Westendorf v. Stasson, 330 N.W.2d 699 (Minn. 1983); Paine v. Waterworks Supply Co., 31 W.C.D. 18, 269 N.W.2d 725 (Minn. 1978); Hewitt v. Apollo Group, 490 N.W.2d 898 (Minn. Ct. App. 1992); Kuehn v. Jack Frost, Inc., 33 W.C.D. 476 (Minn. W.C. Ct. App. 1977); Duenow v. Midwest Excavating Co., 32 W.C.D. 511 (Minn. W.C. Ct. App. 1980); Schmitt v. Anderson, 472 N.W.2d 189 (Minn. Ct. App. 1991); Kempa v. E.W. Constr. Co., 370 N.W.2d 414 (Minn. 1985).

The method for calculating any future contribution liability is currently delineated in Minnesota, as follows:

> [T]he trial judge should determine the amount of benefits payable in the future on the evidence available (using affidavits, depositions, and exhibits) and make reasonable assumptions (such as life expectancy of the injured employee), and then reduce the benefits payable to present value.

Tyroll v. Private Label Chem., Inc., 505 N.W.2d 54, 61 (Minn. 1993).

Nevertheless, unresolved issues in this complex area of litigation remain. See, e.g., Kliniski v. Southdale Manor, Inc., 518 N.W.2d 7 (Minn. 1994); S.B. Foot Tanning Co. v. Piotrowski, 554 N.W.2d 413 (Minn. Ct. App. 1996); Decker v. Oak Ridge Homes, SLS, Inc., 557 N.W.2d 360 (Minn. Ct. App. 1996); Jackson v. Zurich Amer. Ins. Co., 542 N.W.2d 621 (Minn. 1996).

---

[6]Naig v. Bloomington Sanitation, 259 N.W.2d 891 (Minn. 1977), authorizes Conwed, as an employer, to bring the present action.

Similarly, Subdivision 10 creates a statutory right of indemnity for compensation the employer has already paid as well as compensation payable in the future, as follows:

> Notwithstanding the provisions of chapter 65B or any other law to the contrary, an employer has a right of indemnity for any compensation paid or payable pursuant to this chapter, including temporary total compensation, temporary partial compensation, permanent partial disability, economic recovery compensation, impairment compensation, medical compensation, rehabilitation, death, and permanent total compensation.

Minn. Stat. § 176.061, subd. 10.

Section 176.061, taken as a whole, presents a comprehensive plan for asserting the claims of an employer and employee against third parties and for distributing any sums recovered. Jackson v. Zurich Amer. Ins. Co., 542 N.W.2d 621 (Minn. 1996); see also Van Gordon v. Beaver, 928 F. Supp. 858 (D. Minn. 1996).

Further, under Naig v. Bloomington Sanitation, 259 N.W.2d 891 (Minn. 1977), an employee in a third-party tortfeasor action may separate his/her claim into subrogable and non-subrogable portions, and settle the non-subrogable part without obligation to pay any part of the recovery to the employer. Here, several hundred, but not entirely the same group, of employees, brought state court asbestos-related tort claims in Minnesota. If the employee settles on a Naig basis with a third-party tortfeasor, the settlement is not subject to the distribution formula set forth in Minn. Stat. § 176.061, subd. 6, and the employer, here Conwed, is left to independently pursue its subrogation claim against the tortfeasor. Id. at 894.[7] Likewise, an employer's subrogation claim is not subject to the subdivision 6 distribution formula. Tyroll, 505 N.W.2d at

---

[7] All Conwed employees who brought state court claims settled on the basis of Naig releases.

12

60. The proper measure of damages in an employer's subrogation action includes recovery of the employee's common law damages for past and future wage loss, loss of earning capacity and similar items of damages, as well as medical expenses, both paid and payable in the future. Id.

In the present case, Union Carbide's argument that these issues, in the form of motions to dismiss or motions for summary judgment, should be handled by this Court in the MDL 875 are without merit. To ask Judge Weiner in the Eastern District of Pennsylvania to consider complex legal issues that have spawned almost continuous litigation for twenty years in Minnesota is simply asking too much. Rather, these issues must be considered by the court in Minnesota, which is the proper court to apply the detailed provisions of the Minnesota Workers' Compensation Act, as interpreted by Minnesota courts. While the transferee court has overseen the pre-trial discovery in this case, any discovery issues which arose are much different than substantive issues of law under the Minnesota Workers' Compensation Act. Discovery issues involve the general interpretation of the Federal Rules of Civil Procedure, applicable to all federal courts. The only pre-trial issues that remain are limited to the Minnesota Workers' Compensation Act.

## V.   Despite its Status as an Atypical Case, the Transferee Court Has Successfully Overseen Discovery and the Case is Now Trial-Ready.

Even though this case is not the typical case transferred to the MDL 875, the transferee court has taken commendable action in accepting and attempting to settle this matter. The transferee efforts include (1) overseeing voluminous discovery, including a number of disputes; (2) conducting seven settlement conferences over the course of seven years; (3) successfully overseeing Conwed's settlement with two third-party defendants who were impleaded by Union

Carbide; and (4) making the case ready for trial. These efforts are no small feat in light of the fact that this case arises under the unique and arcane issues of Minnesota Workers' Compensation laws.

Due to these efforts, and the efforts of the parties, no coordinated pretrial proceedings remain. This case is ready for trial. The United States District Court for the District of Minnesota will be more suited to determining the issues arising under Minnesota law involved in this case. For the convenience of the parties and in the interest of justice, Conwed respectfully requests that this action be returned to Minnesota for further proceedings.

## CONCLUSION

For the reasons set forth above, Conwed respectfully requests that the Panel remand this case to the United States District Court for the District of Minnesota for further proceedings.

Dated: _July 12, 1999_

STICH, ANGELL, KREIDLER, BROWNSON & BALLOU, P.A.

Robert D. Brownson, Esq., #12245
Kristi K. Warner, Esq., #259986
The Crossings, Suite 120
250 Second Avenue South
Minneapolis, MN 55401
(612)333-6251


Michael Goldman
Rudnick & Wolfe
203 North LaSalle Street, Suite 1800
Chicago, IL 60601-1293
(312) 236-7516

ATTORNEYS FOR PLAINTIFF CONWED
CORPORATION

14

US OFFICE PRODUCTS

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV 2 2 2000

FILED
CLERK'S OFFICE

## DOCKET NO. 875

### BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

### IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*Owens-Illinois, Inc.* v. *T&N Ltd., et al.*, E.D. Texas, C.A. No. 2:99-117

### BEFORE JOHN F. NANGLE, CHAIRMAN, LOUIS C. BECHTLE, JOHN F. KEENAN, WM. TERRELL HODGES, MOREY L. SEAR, BRUCE M. SELYA\* AND JULIA SMITH GIBBONS, JUDGES OF THE PANEL

### TRANSFER ORDER

Before the Panel is a motion brought, pursuant to 28 U.S.C. §1407, by defendants T&N plc and Federal-Mogul-Corp. for transfer of the above-captioned action (*Owens*) to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner. Plaintiff Owens-Illinois, Inc. opposes transfer.

On the basis of the papers filed and the hearing held, the Panel finds that *Owens* involves common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the action to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of this action is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991). Plaintiff seeks to exclude *Owens* from transfer on the ground that the action is not specifically a claim for asbestos related personal injuries, but rather is one sounding in antitrust, fraud and racketeering laws and involving an alleged conspiracy to allocate markets and fix prices for asbestos. Regardless of how plaintiff seeks to characterize the legal nature of its complaint, the factual allegations of the complaint overlap with those in many MDL-875 actions where both the *Owens* plaintiff's and the *Owens* defendants' knowledge of (and conduct concerning) the alleged health hazards of asbestos is at issue. The basic relief sought in the various counts of the complaint is damages equal to the sums that plaintiff has paid to defend and settle asbestos personal injury claims (precisely the damages in the cross-claims and third party claims for contribution found in many previously centralized MDL-875 actions). It may be that on further refinement of the issues and close scrutiny by the transferee court, *Owens* can be remanded in advance of the other actions in the transferee district. Should the transferee court deem remand of any claims or actions appropriate, the

---

\*Judge Selya took no part in the decision of this matter.

- 2 -

transferee court can communicate this to the Panel, and the Panel will accomplish remand with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L., 192 F.R.D. 459, 470-72 (2000). We are confident that Judge Weiner will continue to promptly review arguments for returning transferred actions or claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever he is convinced that retention in the MDL-875 proceedings is no longer needed.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the above-captioned action entitled *Owens-Illinois, Inc. v. T&N Ltd., et al.*, E.D. Texas, C.A. No. 2:99-117, be, and the same hereby is, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

John F. Nangle
Chairman

**J**

US OFFICE PRODUCTS

*JUDICIAL PANEL*
*MULTIDISTRICT*
*LITIGATION*

*SEP 29   1998*

*FILED*
*CLERK'S OFFICE*

## DOCKET NO. 875

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*Raymark Industries, Inc. v. Frederick M. Baron, et al.*, N.D. Texas, C.A. No. 3:98-673

## BEFORE JOHN F. NANGLE, CHAIRMAN, WILLIAM B. ENRIGHT,* CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS,* LOUIS C. BECHTLE AND JOHN F. KEENAN, JUDGES OF THE PANEL

### TRANSFER ORDER

Before the Panel is a motion brought, pursuant to Rule 12, R.P.J.P.M.L., 147 F.R.D. 589, 596 (1993), by plaintiff in the above-captioned action (*Raymark*) requesting that the Panel vacate the portion of its order conditionally transferring *Raymark* to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner. Defendants in *Raymark* support transfer of the action.

On the basis of the papers filed and the hearing held, the Panel finds that *Raymark* involves common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the action to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of *Raymark* is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial relating to allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991). In particular, we note that in the Panel's original decision distinctions based on such matters as the pendency of motions or other matters before the transferor court, the uniqueness of a party's status, the type of defendant, the docket condition of any specific federal district, and/or the presence of unique claims or additional claims not relating to injury or death, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket. We find no reason to depart from this approach in dealing with the question of transfer of the action now before the Panel. We point out that *Raymark*, an action that challenges attorney defendants' professional conduct of asbestos cases brought by them on behalf of personal injury claimants, can be expected to raise issues concerning not only the viability of the underlying asbestos products liability claims, but also questions of judicial management and discovery that are already (with respect to the MDL-875 cases) subject to the jurisdiction and control of Judge Weiner. In opposing transfer, plaintiff

---

*Judges Enright and Sanders took no part in the decision of this matter.

- 2 -

has placed great reliance on the fact that another action between these parties, ordered transferred by the Panel from the District of Utah following its January 1998 hearing, was almost immediately remanded by the Panel following a suggestion of remand from Judge Weiner who concluded, *inter alia*, that the action did not fall within the scope of his MDL-875 actions. The "precedential" value of the Utah case, however, is severely undercut by the fact that another action involving these parties and asserting claims of vexatious litigation (*Raymark Industries, Inc. v. Peter G. Angelos, et al.*, N.D. Georgia, C.A. No. 1:96-940) was ordered transferred by the Panel after a September 1996 hearing and remains pending before Judge Weiner. We therefore view the disposition of the Utah case as rather illustrating the continuing wisdom of the transfer approach adopted by the Panel in this docket: 1) actions meeting the Panel's threshold for transfer are ordered transferred under Section 1407; and 2) any parties that believe the uniqueness of their particular situation renders continued inclusion of their action in MDL-875 unnecessary or inadvisable then present their arguments to the transferee judge, who, whenever he deems remand of any claims or actions proper, invokes the available procedures whereby this may be accomplished with a minimum of delay. *See* Rule 14, R.P.J.P.M.L., *supra*, 147 F.R.D. at 597-99. We are confident that Judge Weiner will continue to promptly review arguments for returning transferred actions or claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever he is convinced that retention in the MDL-875 proceedings is no longer needed.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the action entitled *Raymark Industries, Inc. v. Frederick M. Baron, et al.*, N.D. Texas, C.A. No. 3:98-673, be, and the same hereby is, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

John F. Nangle
Chairman

K

US OFFICE PRODUCTS

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

SEP 25 96

PATRICIA D. HOWARD
CLERK OF THE PANEL

SEP 25

ATTEST
FOR THE JUDICIAL PANEL OF
MULTIDISTRICT LITIGATION

*DOCKET NO. 875*
**FILED**

SEP 3 0 1996

By _____ Dep. Clerk

# *BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

## *IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)*

*Raymark Industries v. Peter G. Angelos, et al., N.D. Georgia, C.A. No. 1:96-940*

## *BEFORE JOHN F. NANGLE, CHAIRMAN, ROBERT R. MERHIGE, JR., WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS\* AND LOUIS C. BECHTLE, JUDGES OF THE PANEL*

**FILED    SEP 3 0 1996**

## *TRANSFER ORDER*

Before the Panel is a motion brought, pursuant to Rule 12, R.P.J.P.M.L., 147 F.R.D. 589, 596 (1993), by plaintiff in the above-captioned action (*Raymark*) requesting that the Panel vacate the portion of its order conditionally transferring *Raymark* to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner. Six of the eight *Raymark* defendants oppose the motion and support transfer of the action.

On the basis of the papers filed and the hearing held, the Panel finds that *Raymark* involves common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the action to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of *Raymark* is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991). In particular, we note that in the Panel's original decision distinctions based on such matters as the uniqueness of a party's status, the type of defendant, the docket condition of any specific federal district, and/or the presence of unique claims or additional claims not relating to injury or death, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket. We find no reason to depart from this approach in dealing with the question of transfer of the action now before the Panel. We point out that *Raymark*, an action that challenges attorney defendants' professional conduct of asbestos cases brought by them on behalf of personal injury claimants, can be expected to raise issues concerning not only the viability of the underlying asbestos products liability claims, but also questions of judicial management, discovery, and supervision of attorney fees that are

_____

\* Judge Sanders took no part in the decision of this matter.

- 2 -

already (with respect to the MDL-875 cases) subject to the jurisdiction and control of Judge Weiner. We also note that should the transferee judge deem remand of *Raymark* in advance of other MDL-875 actions to be appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 14, R.P.J.P.M.L., 147 F.R.D. 589, 597-99 (1993).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the action entitled *Raymark Industries v. Peter G. Angelos, et al.*, N.D. Georgia, C.A. No. 1:96-940, be, and the same hereby is, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

John F. Nangle
Chairman

ENTERED: 10/1/96

CLERK OF COURT



L

US OFFICE PRODUCTS

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

JAN 29 1998

FILED
CLERK'S OFFICE

## DOCKET NO. 875

### BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

### IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*Raymark Corp., et al. v. Frederick M. Baron, et al.*, D. Utah, C.A. No. 1:97-109

### BEFORE JOHN F. NANGLE, CHAIRMAN, ROBERT R. MERHIGE, JR., WILLIAM B. ENRIGHT,* CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS* AND LOUIS C. BECHTLE, JUDGES OF THE PANEL

### TRANSFER ORDER

Before the Panel is a motion brought, pursuant to Rule 12, R.P.J.P.M.L., 147 F.R.D. 589, 596 (1993), by plaintiff in the above-captioned action (*Raymark*) requesting that the Panel vacate the portion of its order conditionally transferring *Raymark* to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner. Defendants in *Raymark* oppose the motion and support transfer of the action.

On the basis of the papers filed and the hearing held, the Panel finds that *Raymark* involves common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the action to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of *Raymark* is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial relating to allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991). In particular, we note that in the Panel's original decision distinctions based on such matters as the pendency of motions or other matters before the transferor court,[1] the uniqueness of a party's status, the type of defendant, the docket condition of any

---

*Judges Enright and Sanders took no part in the decision of this matter.

[1]Plaintiffs have argued that transfer should be denied or deferred in order to permit the judge assigned their action to rule on a pending remand motion. There is no need to delay transfer in order to accommodate such an interest. We note that:  1) as a practical matter, there is a lag time of at least three or four months from the filing of an action, its identification as a potential tag-along action, issuance of a conditional transfer order, stay of transfer when a party timely objects to the conditional transfer, briefing on the question of transfer, the Panel hearing, and the issuance of the Panel's subsequent order; 2) Panel Rule 18, R.P.J.P.M.L., *supra*, 147 F.R.D. at 601, expressly provides that the pendency of a conditional transfer order does not in any way i) suspend orders and pretrial

(continued...)

- 2 -

specific federal district, and/or the presence of unique claims or additional claims not relating to injury or death, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket.  We find no reason to depart from this approach in dealing with the question of transfer of the action now before the Panel. We point out that *Raymark*, an action that challenges attorney defendants' professional conduct of asbestos cases brought by them on behalf of personal injury claimants, can be expected to raise issues concerning not only the viability of the underlying asbestos products liability claims, but also questions of judicial management and discovery that are already (with respect to the MDL-875 cases) subject to the jurisdiction and control of Judge Weiner.  We also observe that should the transferee judge deem remand of *Raymark* in advance of other MDL-875 actions to be appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 14, R.P.J.P.M.L., *supra*,147 F.R.D. at 597-99.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the action entitled *Raymark Corp., et al. v. Frederick M. Baron, et al.*, D. Utah, C.A. No. 1:97-109, be, and the same hereby is, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

John F. Nangle
Chairman

(...continued)

proceedings in the district court in which the action that is the subject of the conditional transfer order is pending, or ii) limit the pretrial jurisdiction of that court; and 3) accordingly, those courts wishing to address such motions have adequate time in which to do so, those courts concluding that such issues should be addressed by the transferee judge need not rule on them, and the process of 1407 transfer in MDL-875 can continue without any unnecessary interruption or delay.

M

US OFFICE PRODUCTS

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

OCT - 1 1993

PATRICIA D. HOWARD
CLERK OF THE PANEL

FILED   OCT  4 19

# DOCKET NO. 875

*# 98*

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*Keene Corp. v. Joseph Fiorelli, et al.*, E.D. New York, C.A. No. 1:93-2129

## BEFORE JOHN F. NANGLE, CHAIRMAN, MILTON POLLACK,* ROBERT R. MERHIGE, JR., WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JR., JOHN F. GRADY AND BAREFOOT SANDERS,* JUDGES OF THE PANEL

### TRANSFER ORDER

Presently before the Panel is a motion, pursuant to Rule 12, R.P.J.P.M.L., 147 F.R.D. 589, 596 (1993), by plaintiff Keene Corp. in the above-captioned action (*Keene*) to vacate the portion of the Panel order, issued on June 11, 1993, conditionally transferring *Keene* to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner.

On the basis of the papers filed and the hearing held, the Panel finds that *Keene* involves common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of *Keene* to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of *Keene* is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991). In particular, we note that in the Panel's original decision distinctions based on such matters as the pendency of motions or other matters before the transferor court, the uniqueness of a party's status, the docket condition of any specific federal district, the presence of unique or additional claims not relating to injury or death, and/or the advanced stage of proceedings in given actions, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket. In rejecting these distinctions, the Panel i) concluded that the need to have one judge with overall control and

---

*Judges Pollack and Sanders recused themselves and took no part in the decision of this matter.

- 2 -

responsibility for the resolution of federal asbestos personal injury claims was paramount, and ii) determined that, accordingly, before creating exceptions to handle any unusual developments, it was necessary to first transfer actions meeting the 1407 criteria to the Eastern District of Pennsylvania in order to permit the transferee judge to make his own assessment in light of his familiarity with the needs of the entire docket (recognizing that an array of devices — early remand of actions or claims, transfer under 28 U.S.C. §1404, appointment of additional transferee judges, etc. — were readily available for application to actions which the transferee judge concluded were deserving of special attention or treatment). We see no reason to depart from this approach in dealing with the question of transfer of *Keene*.

At oral argument on this matter attention was invited to the order of the United States Court of Appeals for the Second Circuit dated August 10, 1993, i) granting a motion for an expedited appeal of rulings in *Keene* by the transferor court, and ii) staying proceedings in *Keene* pending resolution of the appeal. We find that transfer of *Keene* under 1407 in no way affects the operation of the stay, as we are simply indicating the place where the pretrial proceedings in *Keene* will occur if and when they resume. *See, e.g., In re Franklin National Bank Securities Litigation*, 393 F.Supp. 1093, 1095-96 (J.P.M.L. 1975). And under the circumstances disclosed by the record in this matter, we are not persuaded that delay of transfer pending resolution of the appeal is warranted. *See, e.g., In re Multidistrict Private Civil Treble Damage Antitrust Litigation Involving IBM*, 302 F.Supp. 796, 800 (J.P.M.L. 1969). As to the effect of transfer on pending appeals, we note that this is a matter within the province of the concerned appellate courts. *See, e.g., Meat Price Investigators Association, et al. v. Spencer Foods*, 572 F.2d 163, 164 (8th Cir. 1978).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the action entitled *Keene Corp. v Joseph Fiorelli, et al.*, E.D. New York, C.A. No. 1:93-2129, be, and the same hereby is, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

John F. Nangle
Chairman

10/5/93

CLERK OF COURT