MDL 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 13 2001

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE ASBESTOS PRODUCTS LIAB. LITIG. (NO. VI) | MDL 875 (Hon. Charles Weiner) |
| This Document Relates to: | |
| LOWRY ET AL., | |
| Plaintiffs, | |
| v. | No. 00-1454 (C.D. Ill. – Peoria Div.) |
| CENTER FOR CLAIMS RESOLUTION, INC. ET AL., | |
| Defendants. | |

PLEADING NO. 3124

## DEFENDANTS' MOTION TO
## TRANSFER AND CONSOLIDATE WITH MDL 875

Pursuant to 28 U.S.C. §1407, defendants Center for Claims Resolution, Inc.; Amchem

Products, Inc.; C.E. Thurston & Sons, Inc.; CertainTeed Corporation; Dana Corporation; Pfizer

Inc.; Quigley Company, Inc.; Shook & Fletcher Insulation Company; T&N plc; and Union

Carbide Corporation ("Defendants") move the Panel to transfer the above-captioned action,

presently pending in the United States District Court for the Central District of Illinois, Peoria

Division, to the United States District Court for the Eastern District of Pennsylvania for

coordinated or consolidated pretrial proceedings as part of MDL 875. The grounds for this

motion are as follows:

1.  This case involves issues arising from a settlement agreement resolving the

various plaintiffs' asbestos personal injury claims against numerous defendants that were mem-

OFFICIAL FILE COPY
IMAGED APR 16 '01

-2-

bers of the Center for Claims Resolution, Inc. ("CCR"). The CCR member defendants duly paid

their shares of the settlement, but former CCR member Armstrong World Industries, Inc.

("Armstrong") has defaulted on all of its obligations under thousands of settlement agreements

negotiated by the CCR and thus has failed to pay its share of the settlement here. The complaint

alleges that the asbestos personal injury settlement agreement makes the CCR itself and the CCR

defendants jointly and severally liable for the entire amount of the settlement and that they are

therefore required to pay Armstrong's defaulted share of the settlement agreement.

     2.      As part of his responsibilities in managing MDL No. 875, Judge Weiner has

already repeatedly addressed the exact same issue raised in the case at bar, namely, whether the

many thousands of asbestos personal injury settlement agreements negotiated by the CCR with

numerous plaintiffs' counsel across the country on behalf of various defendants should be con-

strued to create joint or separate liability. Copies of such rulings are attached to the accompany-

ing memorandum. Those rulings also make clear that the dispute here, as in those cases, raises

issues concerning the nature of the CCR, the CCR membership agreement, the course of conduct

with the plaintiffs' lawyer, the well-known agency relationship between the CCR and its member

companies, and the sophistication of the plaintiffs' counsel who negotiated these settlement

agreements – all of which are precisely the kinds of matters that are properly within Judge

Weiner's expertise and jurisdiction.

     3.      In short, precisely these issues have already arisen in other MDL 875 matters and

Judge Weiner – on whom the Panel relies to determine, at least in the first instance, whether

matters should be adjudicated within the MDL docket – has found it proper to resolve them

within MDL 875.

-3-

4.     It makes no difference that the present case does not simply present a garden-variety asbestos personal injury claim.  As part of MDL 875, the Panel not only has transferred cases alleging individual personal injuries from exposure to asbestos, but also has repeatedly transferred (or refused to remand) lawsuits that were related to such personal injury claims, as long as it made sense for Judge Weiner to handle such matters.  Such satellite litigation has included suits between traditional asbestos defendants for indemnification or contribution of monies paid in personal injury actions, claims against attorneys involved in asbestos litigation, suits involving workers' compensation issues, and even more exotic claims such as antitrust, racketeering, and fraud.

WHEREFORE, and for the reasons more fully stated in the accompanying memorandum, defendants respectfully move the Panel to transfer the above-captioned case to the Eastern District of Pennsylvania as part of MDL 875.

Respectfully submitted,

Elizabeth Runyan Geise
Reena N. Glazer
Shea & Gardner
1800 Massachusetts Ave., N.W.
Washington, D.C.  20036
(202) 828-2000

Counsel for Defendants Center for Claims
    Resolution, Inc.; Amchem Products, Inc.;
    C.E. Thurston & Sons, Inc.; CertainTeed
    Corporation; Dana Corporation; Pfizer Inc.;
    Quigley Company, Inc.; Shook & Fletcher
    Insulation Company; T&N plc; and Union
    Carbide Corporation

April 12,  2001

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 1 3 2001

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| IN RE ASBESTOS PRODUCTS ) | |
| LIAB. LITIG. (NO. VI) ) | MDL 875 (Hon. Charles Weiner) |
| ) | |
| ) | |
| This Document Relates to: ) | |
| ) | |
| LOWRY ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 00-1454 (C.D. Ill. – Peoria Div.) |
| ) | |
| CENTER FOR CLAIMS RESOLUTION, ) | |
| INC. ET AL., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM IN SUPPORT OF THE DEFENDANTS'
## MOTION TO TRANSFER AND CONSOLIDATE WITH MDL 875

In the years since the Panel's 1991 consolidation of federal asbestos personal injury

litigation, the Panel not only has transferred personal injury cases, but also has repeatedly trans-

ferred (or refused to remand) lawsuits involving non-tort claims arising out of or otherwise relat-

ing to asbestos personal injury litigation claims.  Such satellite litigation has included, for exam-

ple, suits between traditional asbestos defendants for indemnification or contribution of monies

paid in personal injury actions, claims against attorneys involved in asbestos litigation, suits

involving workers' compensation issues, and even more exotic claims such as antitrust, racket-

eering, and fraud.  Ever since its original order creating MDL 875, the Panel has regularly reject-

ed arguments that such cases do not belong in MDL 875 because they involve claims other than

personal injury claims, and has held that Judge Weiner is the best arbiter of what does, and does

-2-

not, belong in MDL 875. See In re Asbestos Products Liab. Litig. (No. VI), 771 F. Supp. 415,

421-22 (J.P.M.L. 1991); Exhibits E-M hereto.

The present lawsuit is eminently within the scope of the MDL 875 docket: the defendants

are traditional asbestos defendants and the issue presented is whether they should be held liable

for the defaults of another traditional asbestos defendant on asbestos personal injury settlements

to which they (and still other asbestos defendants) were all parties. Indeed, as part of the MDL

875 proceedings over the past year, Judge Weiner has repeatedly addressed precisely the same

issue presented here: namely, whether asbestos personal injury settlement agreements negotiated

by the Center for Claims Resolution, Inc. ("CCR"), an asbestos claims handling facility, create

joint or separate liability for the defendant companies. See Exhibits B-D hereto. Those rulings

also make it clear that the issue here should be addressed within MDL 875 because it involves

facts and circumstances that are known to Judge Weiner and that have been addressed in that

litigation, including the nature of the CCR, the practice and custom of asbestos personal injury

settlement agreements, and the knowledge of the asbestos personal injury lawyers who negotiate

these agreements.

A transfer is also necessary and appropriate to achieve the purposes of § 1407. The pres-

ent suit is one part of hundreds of millions of dollars worth of asbestos settlement litigation

caused by the nationwide settlement defaults of several former CCR members. Hence transfer is

essential in order to enable Judge Weiner to manage the entire MDL 875 docket, including such

matters as the effect of co-defendant defaults on settlement efforts, settlement funding, and

proper claim sequencing. The Panel has recognized that Judge Weiner's role as the transferee

-3-

judge involves taking precisely those considerations into account in managing the entire MDL
875 docket.

## BACKGROUND

### A.    Settlement Enforcement Litigation

This case and hundreds of others like it in courts across the United States have arisen
from the recent defaults by several former CCR members on asbestos personal injury settlements
negotiated by the CCR on their behalf.  Specifically, Armstrong World Industries, Inc. ("Arm-
strong"), GAF Corporation ("GAF"), and Asbestos Claims Management Corporation ("ACMC")
were each formerly CCR members, but they each stopped paying their shares of CCR settlement
obligations when they either withdrew from CCR membership or entered into bankruptcy reor-
ganization.  Their defaults have impacted thousands of asbestos personal injury settlements and
raised litigation in numerous courts to determine who will bear the burden of those defaults.

The CCR is a nonprofit Delaware corporation organized to represent its member asbestos
companies in asbestos litigation.  Among other things, the CCR negotiates settlements on behalf
of its members in asbestos personal injury lawsuits, and apportions shares of the resulting set-
tlement obligations to the members according to a sharing formula agreed to by the members in
the first instance.  GAF's membership was terminated in early 2000, and GAF thereupon refused
to pay its share under any pending CCR settlement.  ACMC, itself the product of a prior bank-
ruptcy reorganization, was long a regular member of the CCR, but now has withdrawn from the
CCR and has ceased paying its settlement shares.  Armstrong, another long-time member, recent-
ly petitioned for bankruptcy reorganization and has likewise stopped paying.

-4-

In the face of these defaults, the CCR has forwarded to settling plaintiffs the amounts due under the settlements by its remaining members. Thousands of disappointed plaintiffs have moved to enforce their settlements in such cases, sometimes against the defaulting company, sometimes against the other CCR members, and occasionally against the CCR itself. As part of his responsibilities as the transferee judge in MDL 875, Judge Weiner has addressed this issue three times, ruling each time that only the defaulting member companies are liable for their unpaid settlement shares. See In re Aldridge (MDL 875, E.D. Pa. June 19, 2000) (Exhibit B); In re Bernhardt (MDL 875, E.D. Pa. June 14, 2000) (Exhibit C); In re Benson (MDL 875, E.D. Pa. June 9, 2000) (Exhibit D).

### B.   The Lowry Complaint

The Lowry plaintiffs' claims were settled by the CCR on behalf of its member companies, who were sued in each case, by settlement agreement dated August 31, 2000 (and confirmed by letter dated September 8, 2000). Their instant suit seeks to recover shortfall amounts caused by Armstrong's default. The instant action alleges that the CCR itself and other defendants should be held liable for the unpaid Armstrong settlement share. See Lowry Complaint, attached as Exhibit A hereto.

### ARGUMENT

### A.   The Standards for Transfer Under § 1407

The MDL statute provides that "civil actions involving one or more common questions of fact" may be transferred for coordinated or consolidated pretrial proceedings if the Panel finds "that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).

-5-

**B.    The Panel Has Repeatedly Transferred Non-Personal Injury**
**       Claims Relating to Asbestos Personal Injury Litigation**

On July 29, 1991, the Panel transferred all federal cases "involving allegations of per-

sonal injury or wrongful death caused by asbestos" to the Eastern District of Pennsylvania, and

assigned them to Judge Weiner, under § 1407.  In re Asbestos Prods. Liab. Litig., 771 F. Supp.

415, 416 (J.P.M.L. 1991).  In doing so, the Panel specifically held that all cases involving such

allegations should be transferred, regardless of allegedly unique or different claims or circum-

stances.  See id. at 421-22.  This was necessary, the Panel explained, because giving Judge

Weiner authority over even allegedly divergent claims is necessary to achieve pre-trial procedural

economies and because such claims may "affect the overall management of this litigation."  Id. at

422.

In subsequent orders within MDL 875, the Panel has consistently required that all cases

relating to asbestos personal injuries be transferred to Judge Weiner.  In doing so, the Panel has

repeatedly explained that "in the Panel's original decision distinctions based on such matters as

. . . the uniqueness of a party's status, the type of defendant, [and] the presence of unique claims

or additional claims not relating to asbestos injury or death, . . . were considered and rejected by

the Panel as grounds for carving out exceptions to transfer in this extraordinary docket."  Order

filed February 4, 2000, transferring Givens v. Witco Corp., C.A. No. 2:99-2283 (E.D. La.) et al.

(emphasis added) (Exhibit E).  The Panel has also repeatedly noted that parties who believe that

their actions should not be handled under MDL 875 can make their arguments to Judge Weiner,

and that the Panel is "not persuaded to depart from this approach."  Id.

-6-

Accordingly, the Panel has transferred numerous cases that did not present claims for asbestos personal injuries, but instead related to such claims.  For example, the Panel has repeatedly transferred indemnification and contribution actions between traditional asbestos defendants.[1/]  In doing so, the Panel has recognized that such litigation necessarily impacts the direct litigation (because of its effect on the defendants' litigation and financial resources) and is likely to involve factual and evidentiary overlap with the direct litigation.  As a result, the Panel has been unmoved by arguments that the lawsuit "technically . . . is not a claim for asbestos related personal injuries, but is rather one seeking indemnification for the sums previously paid . . . ."  Order filed May 31, 1994, transferring American President Cos., Ltd. v. Babcock & Wilcox Co., No. 2:94-91 (W.D. Wash.) (Exhibit F).

Similarly, the Panel just last year transferred an action by Owens-Illinois, Inc., a major asbestos defendant, alleging that another traditional asbestos defendant had violated antitrust, fraud, and racketeering laws.  Recognizing the factual overlap of the claims alleged with indemnification actions, and the fact that the damages sought would simply have produced the same effect as indemnification, the Panel transferred the action to Judge Weiner, reiterating its basic view of the breadth of MDL 875.  See Order filed November 22, 2000, transferring Owens-Illinois, Inc. v. T&N, Ltd., C.A. No. 2:99-117 (E.D. Tex.) (Exhibit I).

The Panel has transferred actions even more removed from the core of asbestos personal injury litigation.  For example, the Panel has transferred lawsuits challenging the professional

---

[1/] See, e.g., Order filed May 31, 1994, transferring American President Cos., Ltd. v. Babcock & Wilcox Co., No. 2:94-91 (W.D. Wash.) (Exhibit F); Order filed February 26, 1993, transferring Conwed Corp. v. Union Carbide Corp., No. 5:92-88 (D. Minn.) (Exhibit G); Order filed October 5, 1999, denying remand in Conwed Corp. v. Union Carbide Corp., No. 5:92-88 (D. Minn.) (Exhibit H).

-7-

conduct of attorneys representing asbestos claimants, notwithstanding arguments that such cases

did not present claims for asbestos personal injuries.  See Order filed September 29, 1998,

transferring Raymark Indus., Inc. v. Baron, No. 3:98-673 (N.D. Tex.) (Exhibit J).  In particular,

the Panel held that such cases "can be expected to raise issues concerning not only the viability

of the underlying asbestos products liability claims, but also questions of judicial management

and discovery that are already (with respect to the MDL-875 cases) subject to the jurisdiction and

control of Judge Weiner."  Id. at 1.  Accord, Order filed September 25, 1996, transferring

Raymark Indus., Inc. v. Angelos, No. 1:96-940 (N.D. Ga.) (Exhibit K) (same); Order filed

January 29, 1998, transferring Raymark Corp. v. Baron, No. 1:97-109 (D. Utah) (Exhibit L)

(same).[2]

    In short, the Panel has repeatedly characterized MDL 875 as an "extraordinary docket"[3]

to which all cases with factual issues relating to asbestos personal injuries – specifically

including indemnification cases – should be transferred as an initial matter, regardless of "the

presence of unique claims or additional claims not relating to injury or death."[4]  The Panel has

also consistently held that parties who believe that "the uniqueness of their particular situation

---

[2] See also Order filed October 5, 1999, denying remand of Conwed Corp. v. Union
Carbide Corp., No. 5:92-88 (D. Minn.) (Exhibit H) (irrelevant that case involved workers'
compensation issues); Order filed October 1, 1993, transferring Keene Corp. v. Fiorelli, No.
1:93-2129 (E.D.N.Y.) (Exhibit M) (transferring "limited fund" class action filed by asbestos
defendant against asbestos plaintiffs, seeking to force a negotiated resolution of liabilities to
present and future claimants).

[3] See Order filed September 29, 1998, transferring Raymark Indus., Inc. v. Baron, No.
3:98-673 (N.D. Tex.) (Exhibit J); Order filed February 4, 2000, transferring Givens v. Witco
Corp., C.A. No. 2:99-2283 (E.D. La.) (Exhibit E).

[4] See Order filed September 29, 1998, transferring Raymark Indus., Inc. v. Baron, No.
3:98-673 (N.D. Tex.) (Exhibit J).

-8-

renders . . . inclusion of their action in MDL-875 unnecessary or inadvisable" must present those

arguments to Judge Weiner, who is in the best position to determine whether the case should be

handled as part of the MDL docket.[5/]  If Judge Weiner determines that the claims will not benefit

from consolidated treatment, he can suggest that the Panel remand the claims.[6/]

**C.    Judged Against Those Standards, The Present Case Plainly Should Be Transferred to Judge Weiner**

When tested against those sweeping standards in this extraordinary MDL docket, it is

clear that the present case should be transferred to Judge Weiner, at least in the first instance.  To

begin with, it is evident that the issue here is closely intertwined with Judge Weiner's existing

jurisdiction and responsibilities in MDL 875, given that Judge Weiner has already repeatedly

addressed the precise issues presented by this case in the context of MDL 875.  See In re

---

[5/]  See In re Asbestos Prods. Liab. Litig. (No. VI), 771 F. Supp. at 422 ("[B]ecause many
of the arguments of parties seeking exclusion from transfer are intertwined with the merits of
their claims or defenses and affect the overall management of this litigation, we are unwilling . . .
to carve out exceptions to transfer.  We prefer instead to give the transferee court the opportunity
to conduct a substantive review of such contentions and how they affect the whole
proceedings.").

[6/]  See Order filed September 29, 1998, transferring Raymark Indus., Inc. v. Baron, No.
3:98-673 (N.D. Tex.) (Exhibit J) ("[A]ny parties that believe the uniqueness of their particular
situation renders inclusion of their action in MDL-875 unnecessary or inadvisable [may] then
present their arguments to the transferee judge, who, whenever he deems remand of any claims or
actions proper, invokes the available procedures whereby this may be accomplished with a
minimum of delay. . . .  We are confident that Judge Weiner will continue to promptly review
arguments for returning transferred actions or claims to their transferor courts and will take all
appropriate steps to assure their speedy return whenever he is convinced that retention in the
MDL-875 proceedings is no longer needed."); Order filed May 31, 1994, transferring American
President Cos. v. Babcock & Wilcox Co., No. 2:94-91 (W.D. Wash.) (Exhibit F) ("It may be on
further refinement of the issues and close scrutiny by the transferee court that American can be
remanded in advance of the other actions in the transferee district.  Should the transferee court
deem remand of any claims or actions appropriate, the transferee court can communicate this to
the Panel, and the Panel will accomplish remand with a minimum of delay.").

-9-

Aldridge (MDL 875, E.D. Pa. June 19, 2000) (Exhibit B); In re Bernhardt (MDL 875, E.D. Pa.

June 14, 2000) (Exhibit C); In re Benson (MDL 875, E.D. Pa. June 9, 2000) (Exhibit D). Thus

the transferee judge in this matter, in whom the Panel's rules and precedents unambiguously vest

the authority to decide whether matters belong in MDL 875 in the first instance, has already

found it appropriate to rule on the very issues in this case in the context of MDL 875.[7]

This conclusion is also strongly supported by the fact that the claim at issue here raises

facts and evidence that are an integral part of the MDL 875 litigation. As Judge Weiner's prior

rulings expressly show, the issue here raises such matters as the historical understandings of the

counsel and parties to asbestos personal injury litigation, their course of dealing, the level of

sophistication of the plaintiffs' asbestos bar, and the nature of the relationships among the

defendants. Plainly those issues overlap with the existing MDL 875 docket, thereby making it

appropriate to handle any discovery and other proceedings in a coordinated fashion as part of that

docket.

Finally, this conclusion is confirmed by the substantial impact that the litigation arising

from the settlement defaults of former CCR members Armstrong, ACMC, and GAF could have

on the overall asbestos personal injury litigation. As set forth above, those defaults amount of

---

[7] The Panel's Rule 7.6(d) provides that "[t]he Panel is reluctant to order remand absent a suggestion of remand from the transferee district court," and in the context of MDL 875 the Panel has repeatedly emphasized its desire that the decision whether an asbestos-related case belongs in MDL 875 rest, in the first instance, with Judge Weiner. See, e.g., Order filed May 31, 1994, transferring American President Cos., Ltd. v. Babcock & Wilcox Co., No. 2:94-91 (W.D. Wash.) (Exhibit F); Order filed February 26, 1993, transferring Conwed Corp. v. Union Carbide Corp., No. 5:92-88 (D. Minn.) (Exhibit G); Order filed October 5, 1999, denying remand in Conwed Corp. v. Union Carbide Corp., No. 5:92-88 (D. Minn.) (Exhibit H); Order filed September 25, 1996, transferring Raymark Indus., Inc. v. Angelos, No. 1:96-940 (N.D. Ga.) (Exhibit K); Order filed January 29, 1998, transferring Raymark Corp. v. Baron, No. 1:97-109 (D. Utah) (Exhibit L).

-10-

many millions of dollars and impact thousands of asbestos personal injury cases. It is imperative to Judge Weiner's "overall management of this litigation" that he have jurisdiction over matters like <u>Lowry</u>, which is part of a nationwide wave of litigation involving the disposition of very large sums of settlement monies, the ultimate resolution of which will have significant impacts on the prosecution and settlement of asbestos lawsuits.

In sum, extensive Panel precedent in MDL 875 shows that <u>Lowry</u> should be transferred to Judge Weiner for consolidated or coordinated pre-trial proceedings as part of MDL 875. If the <u>Lowry</u> plaintiffs believe their claims should not be processed as part of MDL 875, that question should be presented in the first instance to Judge Weiner, not to this Panel.

### Conclusion

The motion to transfer should be granted.

Respectfully submitted,

Elizabeth Runyan Geise
Reena N. Glazer
Shea & Gardner
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
(202) 828-2000

Counsel for Defendants Center for Claims
    Resolution, Inc.; Amchem Products, Inc.;
    C.E. Thurston & Sons, Inc.; CertainTeed
    Corporation; Dana Corporation; Pfizer Inc.;
    Quigley Company, Inc.; Shook & Fletcher
    Insulation Company; T&N plc; and Union
    Carbide Corporation

April 12, 2001

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 1 3 2001

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| ) | |
| IN RE ASBESTOS PRODUCTS ) | |
|     LIAB. LITIG. (NO VI) ) | MDL 875 (Hon. Charles Weiner) |
| ) | |
| ) | |
| This Document Relates to: ) | |
| ) | |
| LOWRY ET AL., ) | |
| ) | |
|         Plaintiffs, ) | |
| ) | |
| v. ) | No. 00-1454 (C.D. Ill. – Peoria Div.) |
| ) | |
| CENTER FOR CLAIMS RESOLUTION, ) | |
| INC. ET AL., ) | |
| ) | |
|         Defendants. ) | |

**RULE 7.2(A)(ii) SCHEDULE ACCOMPANYING
DEFENDANTS' MOTION TO TRANSFER
AND CONSOLIDATE WITH MDL 875**

The motion requests the transfer of one action, as follows:

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

2001 APR 12   A 11: 08

RECEIVED
CLERK'S OFFICE

-2-

| Complete Name of Action | Court in Which Action is Pending | Civil Action No. | Judge Assigned to Action |
|---|---|---|---|
| Thomas F. Lowry, III, Individually and as Special Administrator of the Estate of Thomas F. Lowry, Deceased; Lynne LaVetta Ricca, individually, and as Administrator of the Estate of Richard Q. Ricca, Deceased; and Freda Frazee, Individually and as Special Administrator of the Estate of George Joseph Frazee, Deceased, v. Center for Claims Resolution, Inc.; Amchem Products, Inc.; C.E. Thurston & Sons, Inc.; CertainTeed Corporation; Dana Corporation; Pfizer Inc.; Quigley Company, Inc.; Shook & Fletcher Insulation Co.; T&N plc; and Union Carbide Corporation | U.S. District Court for the Central District of Illinois – Peoria Division | No. 00-1454 | The Honorable John A. Gorman (Magistrate Judge) |

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 1 3 2001

FILED
CLERK'S OFFICE

## PROOF OF SERVICE

I hereby certify that copies of the foregoing Defendants' Motion to Transfer and Consolidate

with MDL 875 and supporting documents were served on April 12, 2001 by first-class mail on

the following:

Clerk of the Court
United States District Court
Central District of Illinois – Peoria Division
309 U.S. Courthouse
100 N.E. Monroe Street
Peoria, IL 61602

John A. Slevin
Vonachen, Lawless, Trager & Slevin
456 Fulton Street, Suite 425
Peoria, IL 61602
    Counsel for Plaintiffs

Gene Locke
Greitzer & Locke
1500 Walnut Street
Philadelphia, PA 19102
    Plaintiff's Liaison Counsel

Richard C. Binzley
Thompson, Hine & Flory
127 Public Square
3900 Key Center
Cleveland, OH 44114
    Lead Counsel for Defendants in the
    Seamen Cases

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115
    Counsel for the Goodall Defendants

David A. Damico
Burns, White & Hickton
2400 Fifth Avenue Place
120 Fifth Avenue
Pittsburgh, PA 15222
    Counsel for Fela Defendant

Raymond P. Porceno
Porceno & Hannon
Philadelphia Bourse Building, Suite 1000
Independence Mall East
Philadelphia, PA 19103
    Counsel for Fela Plaintiffs

Ellen B. Furman
Goldfein & Joseph
1600 Market Street, 33rd Floor
Philadelphia, PA 19103
    National Counsel

Susan M. Hanson
Stich, Angell, Kreidler & Muth, P.A.
The Crossings, Suite 120
250 2nd Avenue South
Minneapolis, MN 55401
    National Counsel

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
991 Easy Byrd Street
Richmond, VA 23219
    Counsel for Peripheral Defendant

2001 APR 12  A 11: 08

RECEIVED
CLERK'S OFFICE

-2-

Ronald L. Motley
Ness, Motley, Loadholt, Richardson & Poole
38 Bridgeside Boulevard
P.O. Box 1792
Mt. Pleasant, SC 29465
 Plaintiff's Liaison Counsel

Donald A. Powell
Buckingham, Doolittle & Burroughs
50 South Main Street
P.O. Box 1500
Akron, OH 44309
 National Counsel

John J. Repcheck
Marks, O'Neill
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219
 Counsel for Peripheral Defendant

John D. Roven
John Roven & Associates
2190 North Loop West, Suite 410
Houston, TX 77018
 Counsel for Fela Plaintiffs

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216
 National Coordinating Counsel for
 BFGoodrich Co.

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli, LLP
Centre Square West, 15th Floor
Philadelphia, PA 19102
 Defendant's Liaison Counsel

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
Detroit, MI 48226
 National Counsel

Andrew J. Trevelise
Reed, Smith, Shaw & McClay
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
 Defendant's Liaison Counsel

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard, Sixth Floor
Los Angeles, CA 90025
 National Counsel

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406
 National Counsel for Raymark
 Industries, Inc.

Reena N. Glazer

## PROOF OF SERVICE

I hereby certify that copies of the Defendants' Motion to Transfer and Consolidate with MDL

875 and supporting documents were served on April 11, 2001 on the following

                Russell K Scott
                Joseph B McDonnell
                Greensfelder, Hemker & Gale
                33 Bronze Pointe
                Belleville (Swansea), IL 62226
                      Local Counsel for Defendants (by Federal Express, priority delivery)

Reena N Glazer

2001 APR 12 P 3: 25

RECEIVED
CLERK'S OFFICE

MULTIDISTRICT
LITIGATION
... PANEL ON

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

A

**APR 1 3 2001**

FILED
CLERK'S OFFICE

US OFFICE PRODUCTS

o:\jas\wk\CCR cmp  JAS/bec 12/27/00

**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

DEC 27 2000

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

THOMAS F. LOWRY, III, Individually and
as Special Administrator of the Estate of
THOMAS F. LOWRY, Deceased; LYNNE
LaVETTA RICCA, Individually, and as
Administrator of the Estate of RICHARD Q.
RICCA, Deceased; and FREDA FRAZEE,
Individually and as Special Administrator of
the Estate of GEORGE JOSEPH FRAZEE,
Deceased,

        Plaintiffs,

   vs.

THE CENTER FOR CLAIMS RESOLUTION,
INC.; AMCHEM PRODUCTS, INC.; C.E.
THURSTON & SONS, INC.; CERTAINTEED
CORPORATION; DANA CORPORATION;
PFIZER, INC.; QUIGLEY COMPANY, INC.;
SHOOK & FLETCHER INSULATION CO.;
T & N PLC.; and UNION CARBIDE
CORPORATION (f/n/a UNION CARBIDE
CHEMICALS & PLASTICS COMPANY,
INC.),

        Defendants.

Case No. ___CV-1451___

## COMPLAINT

   Now come the Plaintiffs, THOMAS F. LOWRY, III, Individually and as Special

Administrator of the Estate of THOMAS F. LOWRY, Deceased; LYNNE LaVETTA

RICCA, Individually, and as Administrator of the Estate of RICHARD Q. RICCA,

Deceased; and FREDA FRAZEE, Individually and as Special Administrator of the

Estate of GEORGE JOSEPH FRAZEE, Deceased, by their attorney, JOHN A. SLEVIN

of VONACHEN, LAWLESS, TRAGER & SLEVIN, and for cause of action against the

VONACHEN,
LAWLESS, TRAGER
& SLEVIN

Suite 425
456 Fulton Street
Peoria, Illinois 61602
Fax (309) 676-4130
(309) 676-8986

Defendants, THE CENTER FOR CLAIMS RESOLUTION, INC. (hereinafter referred to as CCR); AMCHEM PRODUCTS, INC.; C.E. THURSTON & SONS, INC.; CERTAINTEED CORPORATION; DANA CORPORATION; PFIZER, INC.; QUIGLEY COMPANY, INC.; SHOOK & FLETCHER INSULATION CO.; T & N PLC.; and UNION CARBIDE CORPORATION (f/n/a UNION CARBIDE CHEMICALS & PLASTICS COMPANY, INC.) (hereinafter collectively referred to at the "ASBESTOS COMPANIES"), states as follows:

## Jurisdiction

1.    Each Plaintiff is a resident of the State of Illinois and each Plaintiff's Decedent was a resident of the State of Illinois at the time of his death.

2.    Defendant, CENTER FOR CLAIMS RESOLUTION ("CCR"), is a New Jersey Corporation with principal offices in New Jersey.

3.    Defendant, AMCHEM PRODUCTS, INC., is a Delaware Corporation with principal offices in New York.

4.    Defendant, C.E. THURSTON & SONS, INC., is a Virginia Corporation with principal offices in Virginia.

5.    Defendant, CERTAINTEED CORPORATION, is a Delaware Corporation with principal offices in Pennsylvania.

6.    Defendant DANA CORPORATION, is a Virginia Corporation with principal offices in Virginia.

7.    Defendant, PFIZER, INC., is a Connecticut Corporation with principal offices in New York.

8.    Defendant, QUIGLEY COMPANY, INC., is a New York Corporation with principal offices in New York.

VONACHEN,
LAWLESS, TRAGER
& SLEVIN

Suite 425
456 Fulton Street
Peoria, Illinois 61602
Fax (309) 676-4130
(309) 676-8986

2

9.    Defendant, SHOOK & FLETCHER INSULATION CO., is an Alabama corporation with principal offices in Alabama.

10.    Defendant, T & N PLC., is a foreign corporation with principal offices in England.

11.    Defendant, UNION CARBIDE CORPORATION (f/n/a UNION CARBIDE CHEMICALS & PLASTICS COMPANY, INC.), is a New York Corporation with principal offices in Connecticut.

12.    The amount in controversy is in excess of Seventy-five Thousand ($75,000) Dollars.

13.    Jurisdiction is based upon 28 U.S.C. §1332.

### Venue

14.    This is a suit on a contract to settle litigation pending in the Circuit Court of Peoria County, Illinois, and the contract was made and entered into in Illinois.

### COUNT I
### Breach of Contract to Settle

15.    On August 31, 2000, each Plaintiff, by and through his or her attorney, John A. Slevin, entered into an agreement to settle pending litigation with CCR on behalf of itself and as agent for the ASBESTOS COMPANIES and others.  The total settlement agreed on was Three Hundred Thousand ($300,000) Dollars – ($50,000 on behalf of the Estate of George Joseph Frazee; $200,000 on behalf of the Estate of Thomas F. Lowry; and $50,000 on behalf of the Estate of Richard Q. Ricca).  (See Exhibit #1 attached to the Complaint and incorporated herein).

16.    Each of the lawsuits involved was filed in the Circuit Court of the Tenth Judicial Circuit in Peoria County, as follows:  George J. Frazee, case number 98 L 16; Thomas F. Lowry, case number 95 L 166; Richard Q. Ricca, case number 93 L 604.

VONACHEN,
LAWLESS, TRAGER
& SLEVIN

Suite 425
456 Fulton Street
Peoria, Illinois 61602
Fax (309) 676-4130
(309) 676-8986

3

17.     Pursuant to the settlement agreement, each Plaintiff duly executed a Covenant Not to Sue and Settlement Agreement on a form provided by CCR on behalf of itself, the ASBESTOS COMPANIES and others.   These covenants were executed as follows:

Freda Frazee, Individually and as Special Administrator of the Estate of George Frazee – October 2, 2000 (Exhibit #2).  Thomas F. Lowry, III, Individually and as Special Administrator of the Estate of Thomas F. Lowry – October 2, 2000 (Exhibit #3).  Lynne LaVetta Ricca, Individually and as Special Administrator of the Estate of Richard Ricca – September 29, 2000.  (Exhibit #4).

18.     Each of the foregoing Covenants Not to Sue and Settlement Agreements were properly and timely forwarded by Federal Express to CCR.

19.     Notwithstanding this Settlement Agreement, Defendants have now failed and refused to pay the amount agreed upon, but seek to pay Plaintiffs only a fraction of the amount agreed upon, to-wit:  for the three settlement totalling $300,000, Defendants have sent a check as full and final settlement against CCR and all ASBESTOS COMPANIES in the amount of $105,640.87.  (Exhibit #5)

20.     At no time prior to December 18, 2000, has CCR conditioned settlements with it or any of its members on an understanding, that each member was liable in the settlement only for its share of the total settlement as calculated by CCR, and that no member was liable for any other CCR member's settlement share.  In fact, this contention was never disclosed to Plaintiffs until a phone conference with Joseph Genova, a zone manager for CCR, on December 14, 2000.

21.     The settlement agreed upon on August 31, 2000, was due and payable on November 29, 2000 (See ¶4 of Exhibit #1).

VONACHEN,
LAWLESS, TRAGER
& SLEVIN

Suite 425
456 Fulton Street
Peoria, Illinois 61602
Fax (309) 676-4130
(309) 676-8986

4

22.    Under the specific facts, CCR and the ASBESTOS COMPANIES are jointly and severally liable to Plaintiffs for the full amount of the settlement, to-wit: $300,000, plus interest calculated from the 29th of November, 2000.

WHEREFORE, Plaintiff prays judgment against Defendants, THE CENTER FOR CLAIMS RESOLUTION, INC.; AMCHEM PRODUCTS, INC.; C.E. THURSTON & SONS, INC.; CERTAINTEED CORPORATION; DANA CORPORATION; PFIZER, INC.; QUIGLEY COMPANY, INC.; SHOOK & FLETCHER INSULATION CO.; T & N PLC.; and UNION CARBIDE CORPORATION (f/n/a UNION CARBIDE CHEMICALS & PLASTICS COMPANY, INC.), in the sum of Three Hundred Thousand ($300,000) Dollars and all costs allowable by law, including, but not limited to, pre-judgment interest from November 29, 2000.

THOMAS F. LOWRY, III, Individually and as Special Administrator of the Estate of THOMAS F. LOWRY, Deceased; LYNNE LaVETTA RICCA, Individually, and as Administrator of the Estate of RICHARD Q. RICCA, Deceased; and FREDA FRAZEE, Individually and as Special Administrator of the Estate of GEORGE JOSEPH FRAZEE, Deceased, Plaintiffs

By: _____
JOHN A. SLEVIN
One of their Attorneys

JOHN A. SLEVIN
VONACHEN, LAWLESS, TRAGER & SLEVIN
456 Fulton Street, Suite 425
Peoria, Illinois  61602
Ph:    (309) 676-8986
Fax:   (309) 676-4130

VONACHEN,
LAWLESS, TRAGER
& SLEVIN

Suite 425
456 Fulton Street
Peoria, Illinois 61602
Fax (309) 676-4130
(309) 676-8986

5

# CENTER FOR CLAIMS RESOLUTION

504 CARNEGIE CENTER • 2nd FLOOR • PRINCETON, NJ 08540
MAILING ADDRESS: CN 5319 PRINCETON, NJ 08543-5319

September 8, 2000

RECEIVED BY
SEP 1 5 2000
VLT&S

John A. Slevin, Esquire
Vonachen, Lawless, Trager & Slevin
456 Fulton Street
Suite 425
Peoria, IL 61602-1240

RE:   Illinois Asbestos Litigation

Dear Mr. Slevin:

This letter will serve to confirm settlement of three (3) cases for $300,000. The date of this settlement is August 31, 2000. Attached is a listing of the plaintiffs for this settlement.

It is agreed and understood that this settlement fully releases all members of the Center for Claims Resolution, whether or not such members were made parties to these lawsuits. Furthermore, it is understood that this settlement includes any and all companion actions in this or any jurisdiction for the attached referenced plaintiffs.

You are aware that the Center for Claims Resolution (CCR) has independently and separately evaluated each of the claims, and the aggregate amount of the settlement is the total of those evaluations in the settlement negotiations process.

In accordance with our settlement agreement, settlement funds will be forwarded to your firm ninety (90) days from the date of settlement, conditional upon receipt of required supporting documentation, within 14 days from the date of this letter, as well as properly executed releases.

As you are aware, Gasket Holdings, Inc. (f/k/a Flexitallic, Inc.); GAF Corporation; and Ferodo America, Inc. are no longer members of the CCR effective January 17, 2000. Additionally, The Asbestos Claims Management Corporation (formerly known as National Gypsum Company) and the NGC Asbestos Disease and Property Damage Settlement Trust are no longer members of the CCR for purposes of this settlement. Accordingly, Flexitallic, GAF, Ferodo, and National Gypsum are not included in this settlement nor will they be included on the CCR prepared Release.

Enclosed you will find a release request form (RRF) which is to be completed for each of the settled cases. Please complete and return one form for each case included in the settlement to the attention of **Marc Strigel**, Paralegal, here at the CCR. Within five (5) business days of the CCR's receipt of the completed RRF, a Release will be sent to you for execution. **The executed Release must then be returned to the CCR. Please be advised that the CCR will accept only Releases prepared by the CCR and properly executed by the plaintiff. Please be further advised that payment will not be issued prior to the CCR's receipt of such properly executed Releases.**

EXHIBIT
1  #1  (4 pgs)

John A. Slevin, Esquire
September 8, 2000
Page 2

_____

If you have any questions concerning the contents of this letter, please contact me directly at (609) 951-6066.  Thank you for your anticipated cooperation.

Very truly yours,

Joseph Genova
Zone Manager

Enclosures

cc:    Marc Strigel, Paralegal
       Mark Eveland, Manager
       Michael Brewster, Paralegal
       Chris Wolfe, Esquire
       Chris Larson, Esquire

Vonachen, Lawless, Trager & Slevin
3 Cases - $300,000
Date Settled:  August 31, 2000

| Plaintiff | Jur | Docket Number | CCR Number | Release Type |
|-----------|-----|---------------|------------|--------------|
| Frazee, George J. | IL | 98L16 | 9808169555 | Full |
| Lowry, Thomas F. | IL | 95L166 | 9503022256 | Full |
| Ricca, Richard Q. | IL | 93L604 | 9503022112 | Full |

# RELEASE REQUEST FORM

# ILLINOIS

CCR Number _____

Notice to Plaintiff Counsel:  Please complete one (1) form for each settled claim, using the form labeled for use in the state in which the claim was filed.  If multiple actions are filed, please indicate the CAPTION, COURT TERM AND COURT NAME AND DOCKET NUMBER for each case.  Within five (5) business days of the CCR's receipt of this form completed by you, the Release will be sent to you for execution.  Thank you for your cooperation in returning this form to the attention of:  Release Coordinator, Center for Claims Resolution, CN 5319, Princeton, NJ 08543-5319.

Injured Plaintiff Name:  _____

Injured Plaintiff Social Security Number:  _____

Plaintiff Spouse Name (When Applicable):  _____

Estate Cases Only -
Estate Representative:  _____

Estate Representative Capacity:  _____

Case Caption:  _____ v. _____, et al.

Court Name:  _____

Docket Number:  _____

Settlement Amount to Husband (where applicable):  _____

Settlement Amount to Wife (where applicable):  _____

| CCR Word Processing Use Only | CCR Use Only | | |
|---|---|---|---|
| Form _____ | WP-1 _____ | WP-2 _____ | LA QC _____ |
| Type _____ | QC-1 _____ | QC-2 _____ | LC OK _____ |
| Scope _____ | LA-1 _____ | LA-2 _____ | SENT _____ |
| M/F _____ | | | |

# VONACHEN, LAWLESS, TRAGER & SLEVIN
## Attorneys at Law

Thomas H. Trager
John A. Slevin
John R. Pusey
Lawrence E. Schwenger, Jr.
John C. Brady
James E. Konsky
Stephen A. Kouri
M. Michael Waters
Mark E. Wertz
Mary A. Corrigan
S. Linn Perkins
Jonathan D. Ginzel
Katrina M. Taraska
Stephen C. Ferlmann

456 Fulton Street, Suite 425
Twin Towers Plaza
Peoria, Illinois 61602-1240

October 6, 2000

Of Counsel:
Donald F. Vonachen
J. Martin Lawless

Telephone:
(309) 676-8986
Facsimile:
(309) 676-4130
E-Mail:
vlts@vltslaw.com

Mr. Marc Strigel
Center for Claims Resolution
CN 5319
Princeton, NJ 08543-5319

**VIA FEDERAL EXPRESS: 823691937841**

RE:  Frazee- CCR Release for Settlement included

Dear Mr. Strigel:

The Release for Freda Frazee, on behalf of George Joseph Frazee, is being forwarded via Federal Express for processing purposes.

Thank you for your attention to this matter.

Very truly yours,

VONACHEN, LAWLESS, TRAGER & SLEVIN

BY: _Chris M. Gaspar_____
       CHRIS M. GASPAR
       Paralegal

JAS\cmg
Enclosure
O:\Cmg\Letters\Frazee CCR Release.doc


EXHIBIT
# 2 (4 pgs.)

9808169555
IL

# COVENANT NOT TO SUE AND SETTLEMENT AGREEMENT

FOR AND IN CONSIDERATION of the sum of One Dollar and 00/100 ($1.00), and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, I, FREDA FRAZEE, individually and as the SPECIAL ADMINISTRATOR/TRIX of the Estate of GEORGE JOSEPH FRAZEE, deceased, Social Security No. 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, do hereby agree and covenant on behalf of all my heirs, executors, administrators and assigns, and those of GEORGE JOSEPH FRAZEE, not to further prosecute or sue the Center for Claims Resolution or its members, at any time, either now or in the future specifically: Amchem Products, Inc.; Armstrong World Industries, Inc.; C.E. Thurston and Sons, Incorporated; CertainTeed Corporation; Dana Corporation; I.U. North America, Inc.; Maremont Corporation; National Services Industries Inc.; Nosroc Corp.; Pfizer Inc; Quigley Company, Inc.; Shook & Fletcher Insulation Co.; T & N, plc; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company;; ; their agents, employees, officers, directors, representatives, successors, assigns, and their insurers, (hereinafter collectively referred to as the "Covenantees"), for or on account of any action, lawsuit, cause and causes of action, injury, damage, claim and demand and expense of every kind and nature whatsoever which the undersigned, has or may in the future have against said Covenantees; and I, the undersigned especially hereby agree and covenant not further to prosecute or sue the said Covenantees for or on account of any injuries and damages sustained by GEORGE JOSEPH FRAZEE, which are alleged to arise out of or are in any way connected with the use of and/or exposure to any products, including but not limited to asbestos-containing minerals, materials and products manufactured, distributed, sold or otherwise delivered by said Covenantees, and, further, for or on account of any injuries and damages sustained by GEORGE JOSEPH FRAZEE, which are alleged to arise out of or are in any way connected to any action or inaction by said Covenantees.

IT IS FURTHER expressly understood and agreed that I, the undersigned, do hereby stipulate, covenant and agree to defend, indemnify, protect and hold harmless said Covenantees from and against any judgment, settlement, action, lawsuit, cause and causes of action, damage, claim, lien, compensation, judgment, demand and expense, of every kind and nature whatsoever, which has been or may hereafter be entered, made, brought or assessed against said Covenantees by any person, partnership, corporation, insurance company, other entity, public or private, tortfeasor, and parties of any description, for or on account of any injuries and damages sustained by GEORGE JOSEPH FRAZEE, which are alleged to arise out of, or are in any way connected with, the use of and/or exposure to any products, including, but not limited to, asbestos-containing minerals, materials and products manufactured, distributed, sold or otherwise delivered by the said Covenantees, and, further, for or on account of any injuries and damages sustained by GEORGE JOSEPH FRAZEE, which are alleged to arise out of, or are in any way connected to, any action or inaction by said Covenantees.

1

IT IS FURTHER expressly understood and agreed that the agreement now made covers, but is not limited to, the lawsuit pending in the CIRCUIT COURT in 10TH CIRCUIT PEORIA COUNTY, ILLINOIS, DOCKET#: 98L16, entitled FREDA E FRAZEE VS AMCHEM PRODUCTS INC ET AL. It is further expressly understood and agreed that said cause of action shall be dismissed with prejudice and without costs as against the Covenantees.

IT IS FURTHER expressly understood and agreed that I rely wholly upon my own judgment, belief and knowledge of the nature, extent and duration of any injuries sustained by GEORGE JOSEPH FRAZEE and have not been influenced to any extent whatsoever in making this covenant by any representations or statements regarding said injuries, or regarding any other matters, made by the Covenantees, or by any person or persons representing them, or by any physician or surgeon by them employed. This Agreement is intended to cover any and all injuries of any nature, including, but not limited to, asbestosis, cor pulmonale, lung cancer, and other forms of cancer or mesothelioma.

IT IS FURTHER expressly understood and agreed that I specifically reserve the right to make claims and prosecute actions against any and every person, firm or corporation not a party to this agreement, with whom I have not already covenanted or executed a settlement agreement, for damages arising from any exposure of GEORGE JOSEPH FRAZEE to asbestos or asbestos-containing materials and products.

IT IS FURTHER expressly understood and agreed that this settlement is a compromise of disputed claims, and that the payment is not to be construed as an admission of liability on the part of the Covenantees, by whom liability is expressly denied. The parties further agree that this Agreement shall not be admissible as evidence in any suit or proceeding whatsoever as evidence or admission of any liability. This Covenant Not to Sue and Settlement Agreement is entered into in good faith within the terms and provisions of the Illinois Contribution Act, Illinois Revised Statutes, Chapter 70, Section 301 et seq.

IT IS FURTHER expressly understood and agreed that this Covenant Not to Sue and Settlement Agreement contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this agreement are contractual and not a mere recital.

IT IS FURTHER expressly understood that this Covenant Not to Sue and Settlement Agreement expressly excludes any claims for injuries and damages to the body of FREDA E. FRAZEE which are alleged to arise out of or are in any way connected with the use of, and/or exposure to, if any, by FREDA E. FRAZEE to any asbestos-containing minerals, materials and products manufactured, distributed, sold or otherwise delivered by any person or party.

2

I further state that I have carefully read the foregoing instrument and know the contents thereof, and sign the same as my own free act in my own behalf, individually, and as the SPECIAL ADMINISTRATOR/TRIX of the Estate of GEORGE JOSEPH FRAZEE, and for the use and benefit of the next-of-kin of GEORGE JOSEPH FRAZEE.

WITNESS my hand and seal this _2nd_ day of _____OCT_____, _2000_ .

_Freda Frazee_
FREDA FRAZEE,
Individually and as
SPECIAL ADMINISTRATOR/TRIX
of the Estate of
GEORGE JOSEPH FRAZEE

STATE OF ~~ILLINOIS~~ FLORIDA

COUNTY OF ___PINELLAS___

On this _2nd_ day of ____OCT____, _2000_ , before me personally appeared FREDA FRAZEE, known to me to be the person who executed this Covenant Not to Sue and Settlement Agreement and who this day represented to me that he/she executed this instrument as his/her free act and deed for the uses and purposes therein set forth.

ILLINOIS D.L. PRESENTED AS ID.

_____
NOTARY PUBLIC

My Commission Expires: __2/17/04__

CHRISTIAN A. PALMER
MY COMMISSION # CC 911717
EXPIRES: February 17, 2004
Bonded Thru Notary Public Underwriters

ILXXESFL
September 21, 2000
8:24 AM

3

# VONACHEN, LAWLESS, TRAGER & SLEVIN
## Attorneys at Law

Thomas H. Trager
John A. Slevin
John R. Pusey
Lawrence E. Schwenger, Jr.
John C. Brady
James E. Konsky
Stephen A. Kouri
M. Michael Waters
Mark E. Wertz
Mary A. Corrigan
S. Linn Perkins
Jonathan D. Ginzel
Katrina M. Taraska
Stephen C. Ferlmann

456 Fulton Street, Suite 425
Twin Towers Plaza
Peoria, Illinois 61602-1240

October 5, 2000

Of Counsel:
  Donald F. Vonachen
  J. Martin Lawless

Telephone:
  (309) 676-8986
Facsimile:
  (309) 676-4130
E-Mail:
  vlts@vltslaw.com

Mr. Marc Strigel
Center for Claims Resolution
CN 5319
Princeton, NJ 08543-5319

**VIA FEDERAL EXPRESS: 823691937863**

RE:  Lowry- CCR Release for Settlement included

Dear Mr. Strigel:

The Release for Thomas F. Lowry, III, on behalf of Thomas F. Lowry, Jr., is being forwarded via Federal Express for processing purposes.

Thank you for your attention to this matter.

Very truly yours,

VONACHEN, LAWLESS, TRAGER & SLEVIN

BY:  *Chris M Gaspar*
     CHRIS M. GASPAR
     Paralegal

JAS\cmg
Enclosure
O:\Cmg\Letters\Lowry CCR Release.doc


EXHIBIT
#3 (4 pgs.)

9503022256
IL

# COVENANT NOT TO SUE AND SETTLEMENT AGREEMENT

FOR AND IN CONSIDERATION of the sum of One Dollar and 00/100 ($1.00), and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, I, THOMAS F. LOWRY, III., individually and as SPECIAL ADMINISTRATOR/TRIX of the Estate of THOMAS F. LOWRY, deceased, Social Security No. 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, do hereby agree and covenant on behalf of myself and all the heirs, executors, administrators and assigns of THOMAS F. LOWRY, not to further prosecute or again sue the Center for Claims Resolution or its members, specifically: Amchem Products, Inc.; Armstrong World Industries, Inc.; C.E. Thurston and Sons, Incorporated; CertainTeed Corporation; Dana Corporation; I.U. North America, Inc.; Maremont Corporation; National Services Industries Inc.; Nosroc Corp.; Pfizer Inc; Quigley Company, Inc.; Shook & Fletcher Insulation Co.; T & N, plc; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company;; ; their agents, employees, officers, directors, representatives, successors, assigns, and their insurers, (hereinafter collectively referred to as the "Covenantees"), for or on account of any action, lawsuit, cause and causes of action, injury, damage, claim and demand and expense of every kind and nature whatsoever which the undersigned, has or may in the future have against said Covenantees; and I, the undersigned especially hereby agree and covenant not further to prosecute or again sue the said Covenantees for or on account of any injuries and damages sustained by THOMAS F. LOWRY, which are alleged to arise out of or are in any way connected with the use of and/or exposure to any products, including but not limited to asbestos-containing minerals, materials and products manufactured, distributed, sold or otherwise delivered by said Covenantees, and, further, for or on account of any injuries and damages sustained by THOMAS F. LOWRY, which are alleged to arise out of or are in any way connected to any action or inaction by said Covenantees.

IT IS FURTHER expressly understood and agreed that I, the undersigned, do hereby stipulate, covenant and agree to defend, indemnify, protect and hold harmless said Covenantees from and against any judgment, settlement, action, lawsuit, cause and causes of action, damage, claim, lien, compensation, judgment, demand and expense, of every kind and nature whatsoever, which has been or may hereafter be entered, made, brought or assessed against said Covenantees by any person, partnership, corporation, insurance company, other entity, public or private, tortfeasor, and parties of any description, for or on account of any injuries and damages sustained by THOMAS F. LOWRY, which are alleged to arise out of, or are in any way connected with, the use of and/or exposure to any products, including, but not limited to, asbestos-containing minerals, materials and products manufactured, distributed, sold or otherwise delivered by the said Covenantees, and, further, for or on account of any injuries and damages sustained by THOMAS F. LOWRY, which are alleged to arise out of, or are in any way connected to, any action or inaction by said Covenantees.

1

IT IS FURTHER expressly understood and agreed that the agreement now made covers, but is not limited to, the lawsuit pending in the CIRCUIT COURT in 10TH CIRCUIT PEORIA COUNTY, ILLINOIS, DOCKET#: 95L628 and CIRCUIT COURT in 10TH CIRCUIT PEORIA COUNTY, ILLINOIS, DOCKET#: 95L166, entitled THOMAS F LOWRY V A&M INSUL ET AL and MARVIN DAVIS V A AND M INSULATION CO ET AL. It is further expressly understood and agreed that said cause of action shall be dismissed with prejudice and without costs as against the Covenantees.

IT IS FURTHER expressly understood and agreed that I rely wholly upon my own judgment, belief and knowledge of the nature, extent and duration of any injuries sustained by THOMAS F. LOWRY and have not been influenced to any extent whatsoever in making this covenant by any representations or statements regarding said injuries, or regarding any other matters, made by the Covenantees, or by any person or persons representing them, or by any physician or surgeon by them employed. This Agreement is intended to cover any and all injuries of any nature, including, but not limited to, asbestosis, corpulmonale, lung cancer, and other forms of cancer or mesothelioma.

IT IS FURTHER expressly understood and agreed that I specifically reserve the right to make claims and prosecute actions against any and every person, firm or corporation not a party to this agreement, with whom I have not already covenanted or executed a settlement agreement, for damages arising from any exposure of THOMAS F. LOWRY to asbestos or asbestos-containing materials and products.

IT IS FURTHER expressly understood and agreed that this settlement is a compromise of disputed claims, and that the payment is not to be construed as an admission of liability on the part of the Covenantees, by whom liability is expressly denied. The parties further agree that this Agreement shall not be admissible as evidence in any suit or proceeding whatsoever as evidence or admission of any liability. This Covenant Not to Sue and Settlement Agreement is entered into in good faith within the terms and provisions of the Illinois Contribution Act, Illinois Revised Statutes, Chapter 70, Section 301 et seq.

IT IS FURTHER expressly understood and agreed that this Covenant Not to Sue and Settlement Agreement contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this agreement are contractual and not a mere recital.

I further state that I have carefully read the foregoing instrument and know the contents thereof, and sign the same as my own free act in my own behalf, individually, and as the SPECIAL ADMINISTRATOR/TRIX of the Estate of THOMAS F. LOWRY and for the use and benefit of the next-of-kin of THOMAS F. LOWRY.

2

WITNESS my hand and seal this _2nd_ day of _October_ ,_2000_.


_Thomas F. Lowry III_
THOMAS F. LOWRY, III.,
Individually and as
SPECIAL ADMINISTRATOR/TRIX
of the Estate of
THOMAS F. LOWRY


STATE OF ILLINOIS

COUNTY OF _Cook_


On this _2nd_ day of _October_ ,_2000_, before me
personally appeared THOMAS F. LOWRY, III., known to me to be the person who
executed this Covenant Not to Sue and Settlement Agreement and who this day
represented to me that he/she executed this instrument as his/her free act and deed for the
uses and purposes therein set forth.


_Debra K. Race_
NOTARY PUBLIC

OFFICIAL SEAL
DEBRA KATHERINE RACA
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/28/01

My Commission Expires: _2/28/01_


ILXXEEFL
September 21, 2000
8:24 AM


3

# VONACHEN, LAWLESS, TRAGER & SLEVIN
### Attorneys at Law

Thomas H. Trager
John A. Slevin
John R. Pusey
Lawrence E. Schwenger, Jr.
John C. Brady
James E. Konsky
Stephen A. Kouri
M. Michael Waters
Mark E. Wertz
Mary A. Corrigan
S. Linn Perkins
Jonathan D. Ginzel
Katrina M. Taraska
Stephen C. Ferlmann

456 Fulton Street, Suite 425
Twin Towers Plaza
Peoria, Illinois 61602-1240

October 2, 2000

Of Counsel:
    Donald F. Vonachen
    J. Martin Lawless

Telephone:
    (309) 676-8986
Facsimile:
    (309) 676-4130
E-Mail:
    vlts@vltslaw.com

Mr. Marc Strigel
Center for Claims Resolution
CN 5319
Princeton, NJ 08543-5319

**VIA FEDERAL EXPRESS: 820529903526**

RE:  Ricca- CCR Release for Settlement included

Dear Mr. Strigel:

The Release for Lynne LaVetta Ricca, on behalf of Richard Ricca, is being forwarded via Federal Express for processing purposes.

Thank you for your attention to this matter.

Very truly yours,

VONACHEN, LAWLESS, TRAGER & SLEVIN

BY: _Chris M Gaspar_
     CHRIS M. GASPAR
     Paralegal

JAS\cmg
Enclosure
O:\Cmg\Letters\Ricca CCR Release.doc

EXHIBIT
1  #4  (4 ꜱꜱ.)

9503022112
IL

## COVENANT NOT TO SUE AND SETTLEMENT AGREEMENT

FOR AND IN CONSIDERATION of the sum of One Dollar and 00/100 ($1.00), and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, I, LYNNE LAVETTA RICCA, individually and as the SPECIAL ADMINISTRATOR/TRIX of the Estate of RICHARD Q. RICCA, deceased, Social Security No. 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, do hereby agree and covenant on behalf of all my heirs, executors, administrators and assigns, and those of RICHARD Q. RICCA, not to further prosecute or sue the Center for Claims Resolution or its members, at any time, either now or in the future specifically: Amchem Products, Inc.; Armstrong World Industries, Inc.; C.E. Thurston and Sons, Incorporated; CertainTeed Corporation; Dana Corporation; I.U. North America, Inc.; Maremont Corporation; National Services Industries Inc.; Nosroc Corp.; Pfizer Inc; Quigley Company, Inc.; Shook & Fletcher Insulation Co.; T & N, plc; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company;; ; their agents, employees, officers, directors, representatives, successors, assigns, and their insurers, (hereinafter collectively referred to as the "Covenantees"), for or on account of any action, lawsuit, cause and causes of action, injury, damage, claim and demand and expense of every kind and nature whatsoever which the undersigned, has or may in the future have against said Covenantees; and I, the undersigned especially hereby agree and covenant not further to prosecute or sue the said Covenantees for or on account of any injuries and damages sustained by RICHARD Q. RICCA, which are alleged to arise out of or are in any way connected with the use of and/or exposure to any products, including but not limited to asbestos-containing minerals, materials and products manufactured, distributed, sold or otherwise delivered by said Covenantees, and, further, for or on account of any injuries and damages sustained by RICHARD Q. RICCA, which are alleged to arise out of or are in any way connected to any action or inaction by said Covenantees.

IT IS FURTHER expressly understood and agreed that I, the undersigned, do hereby stipulate, covenant and agree to defend, indemnify, protect and hold harmless said Covenantees from and against any judgment, settlement, action, lawsuit, cause and causes of action, damage, claim, lien, compensation, judgment, demand and expense, of every kind and nature whatsoever, which has been or may hereafter be entered, made, brought or assessed against said Covenantees by any person, partnership, corporation, insurance company, other entity, public or private, tortfeasor, and parties of any description, for or on account of any injuries and damages sustained by RICHARD Q. RICCA, which are alleged to arise out of, or are in any way connected with, the use of and/or exposure to any products, including, but not limited to, asbestos-containing minerals, materials and products manufactured, distributed, sold or otherwise delivered by the said Covenantees, and, further, for or on account of any injuries and damages sustained by RICHARD Q. RICCA, which are alleged to arise out of, or are in any way connected to, any action or inaction by said Covenantees.

1

IT IS FURTHER expressly understood and agreed that the agreement now made covers, but is not limited to, the lawsuit pending in the CIRCUIT COURT in 10TH CIRCUIT PEORIA COUNTY, ILLINOIS,   DOCKET#: 93L604, entitled LYNNE RICCA VS ARMSTRONG WORLD INDUSTRIES. It is further expressly understood and agreed that said cause of action shall be dismissed with prejudice and without costs as against the Covenantees.

IT IS FURTHER expressly understood and agreed that I rely wholly upon my own judgment, belief and knowledge of the nature, extent and duration of any injuries sustained by RICHARD Q. RICCA and have not been influenced to any extent whatsoever in making this covenant by any representations or statements regarding said injuries, or regarding any other matters, made by the Covenantees, or by any person or persons representing them, or by any physician or surgeon by them employed.  This Agreement is intended to cover any and all injuries of any nature, including, but not limited to, asbestosis, cor pulmonale, lung cancer, and other forms of cancer or mesothelioma.

IT IS FURTHER expressly understood and agreed that I specifically reserve the right to make claims and prosecute actions against any and every person, firm or corporation not a party to this agreement, with whom I have not already covenanted or executed a settlement agreement, for damages arising from any exposure of RICHARD Q. RICCA to asbestos or asbestos-containing materials and products.

IT IS FURTHER expressly understood and agreed that this settlement is a compromise of disputed claims, and that the payment is not to be construed as an admission of liability on the part of the Covenantees, by whom liability is expressly denied. The parties further agree that this Agreement shall not be admissible as evidence in any suit or proceeding whatsoever as evidence or admission of any liability. This Covenant Not to Sue and Settlement Agreement is entered into in good faith within the terms and provisions of the Illinois Contribution Act, Illinois Revised Statutes, Chapter 70, Section 301 et seq.

IT IS FURTHER expressly understood and agreed that this Covenant Not to Sue and Settlement Agreement contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this agreement are contractual and not a mere recital.

IT IS FURTHER expressly understood that this Covenant Not to Sue and Settlement Agreement expressly excludes any claims for injuries and damages to the body of LYNNE LAVETTA RICCA which are alleged to arise out of or are in any way connected with the use of, and/or exposure to, if any, by LYNNE LAVETTA RICCA to any asbestos-containing minerals, materials and products manufactured, distributed, sold or otherwise delivered by any person or party.

I further state that I have carefully read the foregoing instrument and know the contents thereof, and sign the same as my own free act in my own behalf, individually, and as the SPECIAL ADMINISTRATOR/TRIX of the Estate of RICHARD Q. RICCA, and for the use and benefit of the next-of-kin of RICHARD Q. RICCA.

WITNESS my hand and seal this 29 day of _September, 2000_

_Lynne LaVetta Ricca_

LYNNE LAVETTA RICCA,
Individually and as
SPECIAL ADMINISTRATOR/TRIX
of the Estate of
RICHARD Q. RICCA


STATE OF ILLINOIS

COUNTY OF _____

On this 29ᵗʰ day of _September_, 2000, before me personally appeared LYNNE LAVETTA RICCA, known to me to be the person who executed this Covenant Not to Sue and Settlement Agreement and who this day represented to me that he/she executed this instrument as his/her free act and deed for the uses and purposes therein set forth.

_E. Jane Smith_

NOTARY PUBLIC

```
OFFICIAL SEAL
E JANE SMITH
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/11/03
```

My Commission Expires:_____


ILXXESFL
September 21, 2000
8:25 AM

3

# CENTER FOR CLAIMS RESOLUTION

504 CARNEGIE CENTER • 2nd FLOOR • PRINCETON, NJ 08540
MAILING ADDRESS: CN 5319 PRINCETON, NJ 08543-5319

December 15, 2000



John S. Slevin, Esq.
Vonachen, Lawless, Trager, Et Al.
456 Fulton Street, Ste. 425
Peoria, IL 61602-1240

Dear John:

As you are aware, on December 6, 2000, Armstrong World Industries, Inc. filed a petition under the federal Bankruptcy Code, and therefore has stopped paying its share of previously-negotiated settlements.

The CCR and its members have consistently understood and taken the position that under settlement agreements negotiated by the CCR on behalf of its then-member companies, each member company is liable under the settlement only for its share of the settlement as calculated by the CCR, and that no CCR member is liable for any other CCR member's settlement share. However, in certain recent proceedings arising from GAF's refusal to pay its share of previously-negotiated settlements, plaintiffs have sought to hold other CCR member companies liable for GAF's unpaid share of the settlement. This was contrary to what we believe to have been the shared understanding that each member is responsible only for its own settlement share, and also contrary to the fundamental purposes of the settlements (including avoiding the risks of joint and several liability in the case).

In these circumstances, the CCR member companies other than Armstrong have no choice but to ensure that acceptance of their payment of funds under the settlement will be deemed, both by your clients and by the CCR member companies, to constitute full payment and satisfaction of all amounts due under the settlement by the CCR member companies other than Armstrong.

Accordingly, pursuant to the settlement negotiated by the CCR on behalf of its then-member companies who were defendants and your firm on behalf of its clients, enclosed please find a check in the amount of $105,640.87. This check constitutes full and final payment of the amounts due under the settlement for each of the claims on the enclosed list by each of the CCR member companies other than Armstrong. This check is tendered in full settlement of any and all claims of any kind by your clients against all the CCR member companies other than Armstrong, including (but not limited to) claims for unpaid amounts under the settlement. Negotiation of the check will constitute a full and complete accord and satisfaction of all obligations owed to your clients by the CCR member companies other than Armstrong, and will forever release and discharge any and all claims against those member companies.



EXHIBIT
#5  (2 pgs).

If you have any questions concerning this matter, please contact me at.

Very truly yours,


Joe Genova



Enlcosures

B

US OFFICE PRODUCTS

06/26/2000 15:51  FAX                                                    ☎02

**RECEIVED**

JUN 2 6 2000

Lane & Gossett, P.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2000 JUN 19  A 8:

IN RE: ASBESTOS PRODUCTS            :
LIABILITY LITIGATION (NO. VI)       :
——————————————————————————x

This Document Relates to:           :          CIVIL ACTION NO. MDL 875

United States District Court        :
Southern District of Georgia        :

(See attached list of cases)        :
——————————————————————————x


                              O R D E R

     THIS MATTER coming before the Court upon Plaintiff's Motion To Enforce Settlement

Agreement, and the Court having had an opportunity to review the submissions of the parties and

to hear argument thereon, FINDS as follows:

     1.    GAF Corporation, a defendant in this litigation, was a member of the Center For

           Claims Resolution for approximately twelve years until January, 2000 when such

           membership was terminated.

     2.    The Center For Claims Resolution (CCR) is an agency entity created for the sole

           purpose of negotiating settlements or otherwise handling asbestos claims and

           lawsuits which have been brought against its member companies. Each member

           company entered into an agency agreement with the CCR authorizing  CCR to act

           as its agent for the purpose of settling asbestos cases.

     3.    The CCR representatives who negotiate the settlements on behalf of the members

18

are not attorneys but are versed in the law for the jurisdictions where their cases

arc located and they have several attorneys on the CCR staff available for legal

consultation.

4.       The agreement between GAF and CCR provides a multitude of criteria and other

factors to be used in determining each members share of a settlement.  As the

settlements are completed, a monthly billing is submitted to the members for their

share of the payments to conclude the settlement.  CCR became a conduit and

monitor for the payment of the settlements made on behalf of its member

companies.

5.       The representative from CCR, Mr. Robert Capritti, settled these cases with

plaintiff on behalf of the CCR member companies on November 5, 1999.

6.       At the time these matters were settled between plaintiff and the CCR member

companies, GAF Corporation was a member company with CCR.

7.       On March 2, 2000, CCR submitted a check to the plaintiff which represented all

of the member companies' shares except for GAF Corporation[1] which did not

submit its share to CCR for disbursement.  The entire calculation of share amounts

was done by CCR.

8.       GAF Corporation and CCR are currently in arbitration regarding their agreement

and the validity of the settlements and/or the amounts paid by CCR on behalf of

GAF Corporation.

9.       THE COURT FURTHER FINDS that the plaintiff relied upon the agency of CCR

---

[1] CCR calculated the share owing by GAF as $134,744.55.  The remaining amount for the
other members of CCR was not disclosed to the Court and is not relevant to the Court's order.

on behalf of GAF Corporation and all ot the other CCR members, and its conduct of business for the past twelve years and in this case. This business (agency) relationship is well-known throughout the asbestos litigation and CCR has settled hundreds of thousands of asbestos lawsuits and claims on behalf of its member companies.

10.    Other than providing services for its member companies as agent, CCR does not generate income or have any separate assets with which to fund settlements, but relies upon payments from the member companies to complete the settlements.

11.    GAF Corporation has no dispute with this plaintiff regarding the settlement, but controverts CCR and its actions as GAF Corporation's agent which is now the subject of a pending arbitration..

12.    The settlement agreement which plaintiff seeks to enforce was negotiated by legal counsel sophisticated in the asbestos litigation and knowledgeable of the structure and workings of CCR. To this end, plaintiff brought this action against GAF as a defendant and not CCR who is not a party to the litigation.

13.    The Court can find no reason or conduct on the part of CCR to allow GAF or plaintiff to alter CCR's position as agent for a disclosed principal, namely: GAF Corporation.

14.    The Court can find no reason or conduct on the part of CCR and the members other than GAF to allow any of the other named parties to be held responsible for the share allocated to GAF.

06/28/2000 15:51 FAX                                         ☑05

THE COURT THEREFORE ORDERS Judgment to enter on behalf of plaintiff and against GAF Coporation in the amount of $134,744 55 together with interest at the legal rate from March 2, 2000[1]

BY THE COURT:

Date: 6/9/00

Charles R. Weiner                                    J.

---

[1] The confirmation letter from CCR regarding the settlement states that the settlement amount is due within 90 days from 9/5/99. Interest was requested by plaintiff from 3/2/00, the date of payment which is subsequent to the due date.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| Darrell Aldridge | . | C/A No. 299-083 |
| Henry Allen | . | C/A No. 299-096 |
| Jackie Anderson | . | C/A No. 299-059 |
| James Ashley | . | C/A No. 199-083 |
| Howard Bentley | . | C/A No. 599-053 |
| James Beverly | . | C/A No. 599-054 |
| Roy Brewer | . | C/A No. 199-091 |
| Francis Cox | . | C/A No. 299-054 |
| Gerod Crawford | . | C/A No. 599-041 |
| Warren Crews | . | C/A No. 599-044 |
| Walter Donaldson | . | C/A No. 199-093 |
| Cecil Dryden | . | C/A No. 599-042 |
| James Folmar | . | C/A No. 299-039 |
| Lloyd Gibson | . | C/A No. 299-066 |
| William Gray | . | C/A No. 299-058 |
| Max Harrill | . | C/A No. 199-093 |
| Thomas Hayes | . | C/A No. 299-057 |
| Carl Highsmith | . | C/A No. 299-032 |
| James Highsmith | . | C/A No. 299-040 |
| Victor Holland | . | C/A No. 199-037 |
| Robert Jones | . | C/A No. 299-019 |
| Willie Mells | . | C/A No. 299-073 |
| Waldo Moody | . | C/A No. 299-056 |
| Theodore Nobles | . | C/A No. 299-104 |
| Bobby Pierce | . | C/A No. 299-072 |
| Nathaniel Robinson | . | C/A No. 299-084 |
| Roy Spores | . | C/A No. 299-067 |
| Ralph Tabor | . | C/A No. 299-042 |
| Arthur Taylor | . | C/A No. 299-065 |
| Talmadge Tuten | . | C/A No. 299-055 |
| Claude Warren | . | C/A No. 599-043 |
| Edward Wilson | . | C/A No. 299-115 |
| Eddie Woodard | . | C/A No. 299-041 |
| Julian Woodcock | . | C/A No. 299-038 |

C

US OFFICE PRODUCTS

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS
LIABILITY LITIGATION (NO. VI)

    :
    :
    x

This Document Relates to:

    :    CIVIL ACTION NO. MDL 875

United States District Court
Eastern District of Pennsylvania

    :
    :

Valerie BERNHARDT, Executrix,
Estate of Roy BERNHARDT, dec.
C.A. No. 93-7086

**F I L E D**

**JUN 1 4 2000**

    :
    x

MICHAEL E. KUNZ, Clerk

By _____ Dep. Clerk

O R D E R

THIS MATTER coming before the Court upon Plaintiff's Letter Motion To Enforce
Settlement Agreement With The Center For Claims Resolution and GAF Corporation, and the
Court having had an opportunity to review the submissions of the parties and to hear argument
thereon, FINDS as follows:

1.    GAF Corporation, a defendant in this litigation, was a member of the Center For

Claims Resolution for approximately twelve years until January, 2000 when such

membership was terminated.

2.    The Center For Claims Resolution (CCR) is an agency entity created for the sole

purpose of negotiating settlements or otherwise handling asbestos claims and

lawsuits which have been brought against its member companies. Each member

company entered into an agency agreement with the CCR authorizing CCR to act

as its agent for the purpose of settling asbestos cases.

3.     The CCR representatives who negotiate the settlements on behalf of the members are not attorneys but are versed in the law for the jurisdictions where their cases are located and they have several attorneys on the CCR staff available for legal consultation.

4.     The agreement between GAF and CCR provides a multitude of criteria and other factors to be used in determining each members share of a settlement.  As the settlements are completed, a monthly billing is submitted to the members for their share of the payments to conclude the settlement.  CCR became a conduit and monitor for the payment of the settlements made on behalf of its member companies.

5.     The representative from CCR, Mr. Kevin Guers, settled this case with plaintiff on behalf of the CCR member companies on October 22, 1999.

6.     At the time this matter was settled between plaintiff and the CCR member companies, GAF Corporation was a member company with CCR.

7.     CCR submitted a check to the plaintiff for an amount which represented all of the member companies' shares except for GAF Corporation which did not submit its share to CCR for disbursement.  The entire calculation of share amounts was done by CCR.  GAF's calculated amount was $237,643.09.

8.     GAF Corporation and CCR are currently in arbitration regarding their agreement and the validity of the settlements and/or the amounts paid by CCR on behalf of GAF Corporation.

9.     THE COURT FURTHER FINDS that the plaintiff relied upon the agency of CCR

on behalf of GAF Corporation and all of the other CCR members, and its conduct of business for the past twelve years and in this case. This business (agency) relationship is well-known throughout the asbestos litigation and CCR has settled hundreds of thousands of asbestos lawsuits and claims on behalf of its member companies.

10.   Other than providing services for its member companies as agent, CCR does not generate income or have any separate assets with which to fund settlements, but relies upon payments from the member companies to complete the settlements.

11.   GAF Corporation has no dispute with this plaintiff regarding the settlement, but controverts CCR and its actions as GAF Corporation's agent which is now the subject of a pending arbitration..

12.   The settlement agreement which plaintiff seeks to enforce was negotiated by legal counsel sophisticated in the asbestos litigation and knowledgeable of the structure and workings of CCR. To this end, plaintiff brought this action against GAF as a defendant and not CCR who is not a party to the litigation.

13.   The Court can find no reason or conduct on the part of CCR to allow GAF or plaintiff to alter CCR's position as agent for a disclosed principal, namely: GAF Corporation.

14.   The Court can find no reason or conduct on the part of CCR and the members other than GAF to allow any of the other named parties to be held responsible for the share allocated to GAF.

THE COURT THEREFORE ORDERS Judgment to enter on behalf of plaintiff and against GAF Coporation in the amount of $237,643.09 together with interest at the legal rate from the date of this order.

BY THE COURT:

Date: 6/9/2000

_____
Charles R. Weiner                                    J.

ENTERED: _6/15/00_____

CLERK OF COURT

D

US OFFICE PRODUCTS

JUN-29-2000  13:55

F.2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS                    :
LIABILITY LITIGATION (NO. VI)               :
                                            :
————— ————— —————        x

This Document Relates to:                   :            CIVIL ACTION NO. MDL 875
                                            :
United States District Court                :
District of Nevada                          :
                                            :
James D. BENSON                             :
CV-S-98-00415-DWH (RLH)                      :
CV-S-99-2980-PMP(RLH)                        :
                                            :
————— ————— —————        x


O R D E R

THIS MATTER coming before the Court upon Plaintiff's Motion To Enforce Settlement

Agreement, and the Court having had an opportunity to review the submissions of the parties and

to hear argument thereon, FINDS as follows:

1.    GAF Corporation, a defendant in this litigation, was a member of the Center For

      Claims Resolution for approximately twelve years until January, 2000 when such

      membership was terminated.

2.    The Center For Claims Resolution (CCR) is an agency entity created for the sole

      purpose of negotiating settlements or otherwise handling asbestos claims and

      lawsuits which have been brought against its member companies.  Each member

      company entered into an agency agreement with the CCR authorizing CCR to act

      as its agent for the purpose of settling asbestos cases.

JUN-29-2000   13:55                                                                                      P.03

3.   The CCR representatives who negotiate the settlements on behalf of the members
     are not attorneys but are versed in the law for the jurisdictions where their cases
     are located and they have several attorneys on the CCR staff available for legal
     consultation.

4.   The agreement between GAF and CCR provides a multitude of criteria and other
     factors to be used in determining each members share of a settlement.  As the
     settlements are completed, a monthly billing is submitted to the members for their
     share of the payments to conclude the settlement.  CCR became a conduit and
     monitor for the payment of the settlements made on behalf of its member
     companies.

5.   The representative from CCR, Mr. Robert Caprini, settled this case with plaintiff
     on behalf of the CCR member companies on December 8, 1999 in the amount of
     $97,500.00.

6.   At the time this matter was settled between plaintiff and the CCR member
     companies, GAF Corporation was a member company with CCR.

7.   CCR submitted a check to the plaintiff in the amount of $68,033.60 which
     represented all of the member companies' shares except for GAF Corporation
     which did not submit its share to CCR for disbursement.  The entire calculation of
     share amounts was done by CCR.

8.   GAF Corporation and CCR are currently in arbitration regarding their agreement
     and the validity of the settlements and/or the amounts paid by CCR on behalf of
     GAF Corporation.

9    THE COURT FURTHER FINDS that the plaintiff relied upon the agency of CCR

on behalf of GAF Corporation and all of the other CCR members, and its conduct of business for the past twelve years and in this case. This business (agency) relationship is well-known throughout the asbestos litigation and CCR has settled hundreds of thousands of asbestos lawsuits and claims on behalf of its member companies.

10.   Other than providing services for its member companies as agent, CCR does not generate income or have any separate assets with which to fund settlements, but relies upon payments from the member companies to complete the settlements.

11.   GAF Corporation has no dispute with this plaintiff regarding the settlement, but controverts CCR and its actions as GAF Corporation's agent which is now the subject of a pending arbitration..

12.   The settlement agreement which plaintiff seeks to enforce was negotiated by legal counsel sophisticated in the asbestos litigation and knowledgeable of the structure and workings of CCR. To this end, plaintiff brought this action against GAF as a defendant and not CCR who is not a party to the litigation.

13.   The Court can find no reason or conduct on the part of CCR to allow GAF or plaintiff to alter CCR's position as agent for a disclosed principal, namely: GAF Corporation.

14.   The Court can find no reason or conduct on the part of CCR and the members other than GAF to allow any of the other named parties to be held responsible for the share allocated to GAF.

JUN-29-2000  13:55                                                                      P.25

THE COURT THEREFORE ORDERS Judgment to enter on behalf of plaintiff and

against GAF Corporation in the amount of $29,466.40 together with interest at the legal rate from

March 7, 2000[1].


BY THE COURT:

Date: __6/9/00__

Charles R. Weiner                                                                    J.


---

[1] The confirmation letter from CCR regarding the settlement states that the settlement
amount is due within 90 days from 12/8/99.  Interest requested by plaintiff from 2/17/00 is
premature.


TOTAL P.

E

US OFFICE PRODUCTS

*DOCKET NO. 875*

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

Jack Givens, et al. v. Witco Corp., Inc., et al., E.D. Louisiana, C.A. No. 2:99-2283
Gary Clark v. CN North America, E.D. Michigan, C.A. No. 2:99-71140
David Cosey, et al. v. E.D. Bullard, et al., S.D. Mississippi, C.A. No. 1:99-164
Patricia A. Kelly, et al. v. W.R. Grace & Co.-Conn., et al., D. Montana, C.A. No. 9:99-118
Valorie R. Johnston, et al. v. W.R. Grace & Co.-Conn., et al., D. Montana, C.A. No. 9:99-128

## BEFORE JOHN F. NANGLE, CHAIRMAN, WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS,* LOUIS C. BECHTLE* AND JOHN F. KEENAN, JUDGES OF THE PANEL

### TRANSFER ORDER

Before the Panel are motions brought, pursuant to Rule 7.4, R.P.J.P.M.L., 181 F.R.D. 1, 10 (1998), by plaintiffs in the above-captioned Eastern District of Louisiana, Eastern District of Michigan, Southern District of Mississippi and District of Montana actions. All movants request that the Panel vacate the portions of its orders conditionally transferring their respective action to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner.

On the basis of the papers filed and/or the hearing held,[1] the Panel finds that these actions involve common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the actions to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of these actions is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991). In particular, we note that in the Panel's original decision distinctions based on such matters as the pendency of motions or other matters before the

---

*Judges Sanders and Bechtle took no part in the decision of this matter with respect to the Southern District of Mississippi action.

[1]The parties to all but the Southern District of Mississippi action waived oral argument and, accordingly, the question of Section 1407 transfer of those actions was submitted on the briefs. Rule 16.2, R.P.J.P.M.L., 181 F.R.D. 1, 14 (1998).

- 2 -

transferor court,[2] the uniqueness of a party's status, the type of defendant, the docket condition of any specific federal district, the stage of pretrial proceedings, the presence of unique claims or additional claims not relating to asbestos injury or death, and/or the unanimity of opposition to transfer by the parties to an action, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket.

We are not persuaded to depart from this approach in dealing with the question of transfer of the actions now before the Panel. We note that under Judge Weiner's stewardship, as of February 1, 2000, i) nearly 60,000 actions have been closed in the transferee district, and ii) over 1,000 actions or claims therein have been returned to their originating transferor districts. To parties that believe the uniqueness of their particular situation renders inclusion of their action in MDL-875 unnecessary or inadvisable, we note that whenever the transferee judge deems remand of any claims or actions appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L., *supra*, 181 F.R.D. at 11-13. We are confident that Judge Weiner will continue to promptly review arguments for returning transferred actions or claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever he is convinced that retention in the MDL-875 proceedings is no longer needed.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the five above-captioned actions be, and the same hereby are, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

John F. Nangle
Chairman

---

[2]Parties in certain of the actions before the Panel have argued that transfer should be denied or deferred in order to permit the judges assigned the actions to rule on various potentially dispositive pending motions. There is no need to delay transfer in order to accommodate such an interest. We note that: 1) as a practical matter, there is a lag time of at least three or four months from the filing of an action, its identification as a potential tag-along action, issuance of a conditional transfer order, stay of transfer when a party timely objects to the conditional transfer, briefing on the question of transfer, the Panel hearing, and the issuance of the Panel's subsequent order; 2) Panel Rule 1.5, R.P.J.P.M.L., *supra*, 181 F.R.D. at 3, expressly provides that the pendency of a conditional transfer order does not in any way i) suspend orders and pretrial proceedings in the district court in which the action that is the subject of the conditional transfer order is pending, or ii) limit the pretrial jurisdiction of that court; and 3) accordingly, those courts wishing to address such motions have adequate time in which to do so, those courts concluding that such issues should be addressed by the transferee judge need not rule on them, and the process of 1407 transfer in MDL-875 can continue without any unnecessary interruption or delay.

F

US OFFICE PRODUCTS

A CERTIFIED TRUE COPY

FILED   JUN   c 1994

ATTEST ✓ ⁀⁀⁀⁀⁀⁀
FOR THE JUDICIAL PANEL OF
MULTIDISTRICT   LITIGATION

MULTIDISTRICT   LITIGATION
FILED

MAY 3 1 1994

PATRICIA D. HOWARD
CLERK OF THE PANEL

*DOCKET NO. 875*

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)   #1155

*American President Companies, Ltd., et al. v. Babcock & Wilcox Co., et al.*, W.D. Washington, C.A.
No. 2:94-91

## BEFORE JOHN F. NANGLE, CHAIRMAN, MILTON POLLACK,* ROBERT R. MERHIGE, JR., WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JOHN F. GRADY AND BAREFOOT SANDERS,* JUDGES OF THE PANEL

## TRANSFER ORDER

Presently before the Panel is a motion, pursuant to Rule 12, R.P.J.P.M.L., 147 F.R.D. 589, 596 (1993), by plaintiffs American President Companies, Ltd., and American President Lines, Ltd., in the above-captioned action (*American*) requesting that the Panel vacate the portion of its order conditionally transferring *American* to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner.

On the basis of the papers filed and the hearing held, the Panel finds that *American* involves common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of *American* to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of these actions is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991). Plaintiffs seek to exclude *American* from transfer on the ground that technically the action is not a claim for asbestos related personal injuries, but is rather one seeking indemnification for the sums previously paid by plaintiffs to settle an individual's claim against them for such asbestos injuries. Resolution of the indemnification claim, however, will involve the same kinds of questions of fault and liability found not only in the MDL-875 actions in general, but, in particular, in the cross-claims and third party claims for contribution and indemnity filed or anticipated to be filed by shipowners in the MDL-875 maritime asbestos actions (including the 972 actions already transferred in this docket in which American President Lines, Ltd., was named as a defendant). It may be on further refinement of the issues and close scrutiny by the transferee court, *American* can be remanded in advance of the

*Judges Pollack and Sanders recused themselves and took no part in the decision of this matter.

- 2 -

other actions in the transferee district. Should the transferee court deem remand of any claims or actions appropriate, the transferee court can communicate this to the Panel, and the Panel will accomplish remand with a minimum of delay. *See* Rule 14, R.P.J.P.M.L., *supra*, 147 F.R.D. at 597-99.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the action entitled *American President Companies, Ltd., et al. v. Babcock & Wilcox Co., et al.*, W.D. Washington, C.A. No. 2:94-91 be, and the same hereby is, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

John F. Nangle
Chairman

ENTERED: 6/3/94

CLERK OF COURT

G

US OFFICE PRODUCTS

```
┌─────────────────────────────┐
│      JUDICIAL PANEL ON      │
│   MULTIDISTRICT LITIGATION  │
│            FILED            │
│  ┌───────────────────────┐  │
│  │    Feb. 26, 1993      │  │
│  └───────────────────────┘  │
│    PATRICIA D. HOWARD       │
│    CLERK OF THE PANEL       │
└─────────────────────────────┘
```

## DOCKET NO. 875

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

### (SEE ATTACHED SCHEDULE CTO-32)

## CONDITIONAL TRANSFER ORDER

On July 29, 1991, the Panel transferred 27,696 civil actions to the United States District Court for the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. §1407. Since that time, more than 10,200 additional actions have been transferred to the Eastern District of Pennsylvania. With the consent of that court, all such actions have been assigned to the Honorable Charles R. Weiner.

It appears that the actions listed on the attached schedule involve questions of fact which are common to the actions previously transferred to the Eastern District of Pennsylvania and assigned to Judge Weiner.

Pursuant to Rule 12 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 120 F.R.D. 251, 258, the actions on the attached schedule are hereby transferred under 28 U.S.C. §1407 to the Eastern District of Pennsylvania for the reasons stated in the opinion and order of July 29, 1991, (771 F.Supp. 415), as corrected on October 1, 1991, October 18, 1991, November 22, 1991, December 9, 1991, January 16, 1992, and March 5, 1992, with the consent of that court, assigned to the Honorable Charles R. Weiner.

This order does not become effective until it is filed in the office of the Clerk of the United States District Court for the Eastern District of Pennsylvania. The transmittal of this order to said Clerk shall be stayed fifteen (15) days from the entry thereof and if any party files a notice of opposition with the Clerk of the Panel within this fifteen (15) day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

*Patricia D. Howard*

Patricia D. Howard
Clerk of the Panel

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

Feb. 26, 1993

PATRICIA D. HOWARD
CLERK OF THE PANEL

# SCHEDULE CTO—32 — TAG ALONG CASES
## DOCKET NO. 875
## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

| DISTRICT | DIV | CIVIL ACTION# | DISTRICT | DIV | CIVIL ACTION# | DISTRICT | DIV | CIVIL ACTION# | DISTRICT | DIV | CIVIL ACTION# |
|---|---|---|---|---|---|---|---|---|---|---|---|
| CONNECTICUT | | | MISSOURI WESTERN | | | OHN | 1 | 93-10021 | OHN | 1 | 93-10072 |
| CT | 2 | 92-448 | MOW | 4 | 92-222 | OHN | 1 | 93-10022 | OHN | 1 | 93-10073 |
| CT | 2 | 92-1026 | | | | OHN | 1 | 93-10023 | OHN | 1 | 93-10074 |
| CT | 2 | 92-1030 | MONTANA | | | OHN | 1 | 93-10024 | OHN | 1 | 93-10075 |
| CT | 3 | 93-128 | MT | 9 | 92-23 | OHN | 1 | 93-10025 | OHN | 1 | 93-10076 |
| | | | | | | OHN | 1 | 93-10026 | OHN | 1 | 93-10077 |
| GEORGIA NORTHERN | | | NORTH CAROLINA EASTERN | | | OHN | 1 | 93-10027 | OHN | 1 | 93-10078 |
| GAN | 1 | 92-1764 | NCE | 4 | 92-124 | OHN | 1 | 93-10028 | OHN | 1 | 93-10079 |
| GAN | 1 | 92-1782 | NCE | 4 | 92-125 | OHN | 1 | 93-10029 | OHN | 1 | 93-10080 |
| GAN | 1 | 92-1942 | NCE | 5 | 92-571 | OHN | 1 | 93-10030 | OHN | 1 | 93-10081 |
| GAN | 1 | 93-84 | NCE | 5 | 92-582 | OHN | 1 | 93-10031 | OHN | 1 | 93-10082 |
| GAN | 1 | 93-114 | NCE | 7 | 92-93 | OHN | 1 | 93-10032 | OHN | 1 | 93-10083 |
| | | | NCE | 7 | 92-120 | OHN | 1 | 93-10033 | OHN | 1 | 93-10084 |
| GEORGIA SOUTHERN | | | | | | OHN | 1 | 93-10034 | OHN | 1 | 93-10085 |
| GAS | 5 | 93-7 | NORTH CAROLINA MIDDLE | | | OHN | 1 | 93-10035 | OHN | 1 | 93-10086 |
| GAS | 5 | 93-8 | NCM | 2 | 93-57 | OHN | 1 | 93-10036 | OHN | 1 | 93-10087 |
| GAS | 5 | 93-16 | | | | OHN | 1 | 93-10037 | OHN | 1 | 93-10088 |
| GAS | 5 | 93-17 | NORTH CAROLINA WESTERN | | | OHN | 1 | 93-10038 | OHN | 1 | 93-10089 |
| GAS | 5 | 93-18 | NCW | 3 | 93-17 | OHN | 1 | 93-10039 | OHN | 1 | 93-10090 |
| GAS | 5 | 93-19 | | | | OHN | 1 | 93-10040 | OHN | 1 | 93-10091 |
| GAS | 5 | 93-20 | NEW HAMPSHIRE | | | OHN | 1 | 93-10041 | OHN | 1 | 93-10092 |
| GAS | 5 | 93-21 | NH | 1 | 92-32 | OHN | 1 | 93-10042 | OHN | 1 | 93-10093 |
| GAS | 5 | 93-22 | | | | OHN | 1 | 93-10043 | OHN | 1 | 93-10094 |
| GAS | 5 | 93-23 | NEW YORK SOUTHERN | | | OHN | 1 | 93-10044 | OHN | 1 | 93-10095 |
| GAS | 5 | 93-24 | NYS | 1 | 92-6377 | OHN | 1 | 93-10045 | OHN | 1 | 93-10096 |
| GAS | 5 | 93-25 | NYS | 1 | 92-6380 | OHN | 1 | 93-10046 | OHN | 1 | 93-10097 |
| GAS | 5 | 93-26 | | | | OHN | 1 | 93-10047 | OHN | 1 | 93-10098 |
| | | | NEW YORK WESTERN | | | OHN | 1 | 93-10048 | OHN | 1 | 93-10099 |
| HAWAII | | | NYW | 1 | 93-96 | OHN | 1 | 93-10049 | OHN | 1 | 93-10100 |
| HI | 1 | 92-802 | | | | OHN | 1 | 93-10050 | OHN | 1 | 93-10101 |
| | | | OHIO NORTHERN | | | OHN | 1 | 93-10051 | OHN | 1 | 93-10102 |
| IOWA SOUTHERN | | | OHN | 1 | 93-10001 | OHN | 1 | 93-10052 | OHN | 1 | 93-10103 |
| IAS | 4 | 93-80044 | OHN | 1 | 93-10002 | OHN | 1 | 93-10053 | OHN | 1 | 93-10104 |
| | | | OHN | 1 | 93-10003 | OHN | 1 | 93-10054 | OHN | 1 | 93-10105 |
| ILLINOIS NORTHERN | | | OHN | 1 | 93-10004 | OHN | 1 | 93-10055 | OHN | 1 | 93-10106 |
| ILN | 1 | 92-4662 | OHN | 1 | 93-10005 | OHN | 1 | 93-10056 | OHN | 1 | 93-10107 |
| | | | OHN | 1 | 93-10006 | OHN | 1 | 93-10057 | OHN | 1 | 93-10108 |
| KENTUCKY EASTERN | | | OHN | 1 | 93-10007 | OHN | 1 | 93-10058 | OHN | 1 | 93-10109 |
| KYE | 2 | 92-203 | OHN | 1 | 93-10008 | OHN | 1 | 93-10059 | OHN | 1 | 93-10110 |
| | | | OHN | 1 | 93-10009 | OHN | 1 | 93-10060 | OHN | 1 | 93-10111 |
| MAINE | | | OHN | 1 | 93-10010 | OHN | 1 | 93-10061 | OHN | 1 | 93-10112 |
| ME | 1 | 93-20 | OHN | 1 | 93-10011 | OHN | 1 | 93-10062 | OHN | 1 | 93-10113 |
| ME | 1 | 93-21 | OHN | 1 | 93-10012 | OHN | 1 | 93-10063 | OHN | 1 | 93-10114 |
| | | | OHN | 1 | 93-10013 | OHN | 1 | 93-10064 | OHN | 1 | 93-10115 |
| MICHIGAN WESTERN | | | OHN | 1 | 93-10014 | OHN | 1 | 93-10065 | OHN | 1 | 93-10116 |
| MIW | 2 | 92-239 | OHN | 1 | 93-10015 | OHN | 1 | 93-10066 | OHN | 1 | 93-10117 |
| | | | OHN | 1 | 93-10016 | OHN | 1 | 93-10067 | OHN | 1 | 93-10118 |
| MINNESOTA | | | OHN | 1 | 93-10017 | OHN | 1 | 93-10068 | OHN | 1 | 93-10119 |
| MN | 5 | 92-88 | OHN | 1 | 93-10018 | OHN | 1 | 93-10069 | OHN | 1 | 93-10120 |
| | | | OHN | 1 | 93-10019 | OHN | 1 | 93-10070 | OHN | 1 | 93-10121 |
| | | | OHN | 1 | 93-10020 | OHN | 1 | 93-10071 | OHN | 1 | 93-10122 |

H

US OFFICE PRODUCTS

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

OCT -5 1999

FILED
CLERK'S OFFICE

## DOCKET NO. 875

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*James R. Sweeney, et al. v. A-Best Products Co., et al.*, E.D. Pennsylvania (S.D. Indiana, C.A. No. 1:98-118)
*Conwed Corp. v. Union Carbide Corp., et al.*, E.D. Pennsylvania (D. Minnesota, C.A. No. 5:92-88)

## BEFORE JOHN F. NANGLE,* CHAIRMAN, WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS,* LOUIS C. BECHTLE* AND JOHN F. KEENAN, JUDGES OF THE PANEL

### ORDER DENYING REMAND

Before the Panel are motions for remand brought, pursuant to Rule 7.6, R.P.J.P.M.L., 181 F.R.D. 1, 11-13 (1998), with respect to the two above-captioned actions (*Sweeney* and *Conwed*, respectively). Plaintiffs in *Sweeney* seek remand of that action to the Southern District of Indiana; and plaintiff in *Conwed* seeks remand of that action to the District of Minnesota. Three defendants in *Sweeney* and the defendant in *Conwed* oppose remand of their respective action.

On the basis of the papers filed and the hearing held, the Panel finds that remand of neither *Sweeney* nor *Conwed* is appropriate at this time. The following quotation from an earlier Panel opinion is very instructive for situations such as this, where no recommendation of remand has been made to the Panel by the transferee judge:

> The Panel's Rules of Procedure provide that the Panel shall consider the question of remand on the motion of any party, on the suggestion of the transferee court or on the Panel's own initiative. Rule [7.6(c)], R.P.J.P.M.L., [181] F.R.D. [1, 12 (1998)]. In considering the question of remand, the Panel has consistently given great weight to the transferee judge's determination that remand of a particular action at a particular time is appropriate because the transferee judge, after all, supervises the day-to-day pretrial proceedings. *See, e.g., In re IBM Peripheral EDP Devices Antitrust Litigation*, 407 F.Supp. 254, 256 (J.P.M.L. 1976). The transferee judge's notice of suggestion of remand to the Panel is obviously an indication that he

---

*Judges Nangle, Sanders and Bechtle took no part in the decision of this matter.

- 2 -

perceives his role under Section 1407 to have ended.  *In re Air Crash Disaster Near Dayton, Ohio, on March 9, 1967*, 386 F.Supp. 908, 909 (J.P.M.L. 1975).  Absent a notice of suggestion of remand from the transferee judge to the Panel, any party advocating remand before the Panel bears a strong burden of persuasion.  We rule that movants have not met this burden here and that the motion for remand is premature.

*In re Holiday Magic Securities and Antitrust Litigation*, 433 F.Supp. 1125, 1126 (J.P.M.L. 1977).

We reiterate that Judge Weiner has become thoroughly familiar with the issues in MDL-875 and, especially in light of the unprecedented scale of this docket, is in the preferred position to determine the future course of the actions before him.  We note that already in this docket nearly 1,000 actions or claims therein have been returned to their originating transferor districts, and that whenever Jude Weiner deems remand of *Sweeney* or *Conwed* (or any claims in either of them) appropriate, procedures are available whereby this may be accomplished with a minimum of delay.  *See* Rule 7.6, R.P.J.P.M.L., *supra*, 181 F.R.D. at 11-13.  We are confident that Judge Weiner will continue to promptly review arguments for returning transferred actions or claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever he is convinced that retention in the MDL-875 proceedings is no longer needed.  In conclusion, we find that movants have failed both i) to persuade Judge Weiner of the desirability of remand, and ii) to offer the Panel a persuasive reason why it should order remand in the absence of a suggestion from Judge Weiner.  Accordingly, we will deny remand.

IT IS THEREFORE ORDERED that the motions for Section 1407 remand of the two above-captioned actions be, and the same hereby are, DENIED.

FOR THE PANEL:

William B. Enright
Acting Chairman

# MDL 875

## BEFORE THE JUDICIAL PANEL FOR
## THE MULTIDISTRICT LITIGATION

IN RE:  ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)

FILED
CLERK'S OFFICE

This Document Relates To:

CONWED CORPORATION,

Plaintiff,

v.

UNION CARBIDE CHEMICALS AND
PLASTICS COMPANY, INC.,

Defendant and
Third-Party Plaintiff,

v.

OWENS-CORNING FIBERGLAS CORPORATION, ET AL.,

Third-Party Defendants.

CIVIL ACTION NO. MDL 875

Civil Action No. 5-92-88
DISTRICT OF MINNESOTA

TRANSFEREE JUDGE:
Judge Charles Weiner

## NOTICE OF MOTION AND
## MOTION TO REMAND

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that the undersigned, counsel for Conwed Corporation, will

bring this motion on before the Judicial Panel on Multidistrict Litigation on at a date and time to

be set by the Panel.

## MOTION TO REMAND

## INTRODUCTION

Pursuant to Section 1407(a), Title 28, United States Code, Conwed Corporation (hereinafter "Conwed") brings this Motion before the Panel on Multidistrict Litigation ("the Panel") and requests that the Panel remand this case to its transferor court, the United States District Court for the District of Minnesota from the MDL 875. As discussed in detail, infra. Conwed has previously brought two Motions to Remand before the United States District Court for the Eastern District of Pennsylvania, on January 26, 1998, and on November 9, 1998. However, the presiding judge, the Honorable Charles Weiner took no action on either of Conwed's two Motions to Remand. In the interim, the Third Circuit has reiterated that the power to remand cases that have been transferred for pretrial proceedings rests with the Panel, not with the transferee court. See In re Roberts, -- F.3d --, 1999 WL 330198 (3d Cir. May 20, 1999) (citing Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 118 S. Ct. 956 (1998)). See Aff. of Kristi K. Warner, Ex. A.

Therefore, Conwed requests that the Panel remand this case for the following reasons: First, this case has been pending in the MDL 875 for over seven years, and has been ready for trial for some time. There is no remaining discovery. The parties have also engaged in extensive settlement discussions, without the resolution of Conwed's claims. Second, this case does not fit within the parameters set by the Panel in its July 29, 1991 Order creating the MDL 875. Finally, any matters that remain, including any motions for summary judgment, involve evaluating, under the unique statutory subrogation provisions of Minnesota Workers' Compensation laws, the claims of approximately 1,685 former Conwed employees with asbestos-related diseases. These

2

matters should be resolved by the transferor court in Minnesota, and are not matters appropriate for consolidated or coordinated proceedings.

## BACKGROUND

Conwed instituted this action against Union Carbide over seven years ago, on June 10, 1992, in the United States District Court for the District of Minnesota, Fifth Division. See Warner Aff., Ex. B. This matter was transferred to the MDL 875 docket by Conditional Transfer Order of the Multi-District Litigation Panel dated February 26, 1993. In this action, Conwed seeks reimbursement for workers' compensation benefits paid to several hundred former employees of its Cloquet, Minnesota ceiling tile plant who suffer asbestos-related diseases from exposure to asbestos mineral mined, milled, and sold by Union Carbide. In addition, Conwed seeks damages from Union Carbide for claims payable in the future as a result of such exposure, as Conwed is entitled to do under the unique statutory reimbursement procedures of the Minnesota Workers' Compensation Act, Minn. Stat. § 176.061.

Since commencement of this action, the parties have engaged in exhaustive discovery, including multiple sets of interrogatories, requests for production of documents and requests for admissions. Further, the parties have taken countless depositions of both lay witnesses and experts. In fact, the final discovery deadline, which had been extended many times, was over two years ago, on January 17, 1997. As of that date, nearly all discovery was complete, and the parties have now resolved and completed all remaining discovery in the intervening two years.

Conwed and Union Carbide have also engaged in numerous settlement negotiations, including at least seven separate settlement conferences, which occurred from May 13, 1993 to the most recent conference on June 22, 1999. In the past two years alone, the parties have had

3

five settlement conferences, occurring on June 2, 1998, November 30, 1998, December 14, 1998,

March 25, 1999 and June 22, 1999. At the June 22nd conference, Judge Weiner ordered that the

corporate representatives personally meet and attempt to settle the case, which they did on July 7,

1999. On that date, the parties themselves met in New York and negotiated for the entire

morning, concluding that negotiations had reached an end. Thus, once again, the parties' efforts

to settle were to no avail, and the parties have reached an impasse. The extensive negotiations in

this case have made it apparent that this is simply one of those cases that must be sent to trial.

Further, during the March 25, 1999 conference, Judge Weiner suggested that the parties

submit the case to be tried in the Eastern District of Pennsylvania, the transferee court, in five

separate "mini-trials," with each party choosing its five "best" cases of the underlying Conwed

employee claims for trial. Thus, as discussed below, even though Judge Weiner, as the transferee

court, would not have the authority to conduct such "mini-trials," the idea shows that even Judge

Weiner has recognized that this case is trial-ready.

Because the case was ready for trial, Conwed brought its first Motion to Remand on

January 26, 1998, and Union Carbide eventually filed a brief in opposition to the Motion, dated

June 1, 1998.[1] Judge Weiner did not address these issues at the time, and did not rule on

Conwed's Motion to Remand. Conwed renewed its Motion to Remand on November 9, 1998

before Judge Weiner. Union Carbide did not file any opposition to the Motion, but Judge Weiner

---

[1]Union Carbide set forth three reasons why the case should not be remanded at that time, claiming that discovery was not complete, that settlement discussions were not complete, and that the Eastern District of Pennsylvania was the appropriate forum to address motions for summary judgment. None of these old arguments made by Union Carbide are applicable to the present motion made 1 ½ years later.

again did not rule on the Motion. See Warner Aff.

Conwed now brings the present Motion for Remand before the Panel, which is the appropriate tribunal to consider the Motion. See In re Roberts, 1999 WL 330198 at *2 ("the power to remand a transferred case to the transferor court lies with the Panel, not the transferee district judge"). Thus, Conwed requests that the Panel grants this Second Renewed Motion to Remand in its entirety.

## DISCUSSION

I.  **The Judicial Panel on Multidistrict Litigation Has the Power to Remand the Present Case.**

The power to remand a transferred case rests with the Panel, and not with the transferee district judge. Id. In Roberts, an asbestos personal injury plaintiff brought suit against various asbestos manufacturers in the United States District for the Southern District of Indiana. Pursuant to 28 U.S.C. 1407, the Panel transferred the case to the Eastern District of Pennsylvania for consolidation with other cases in the MDL 875, over which Judge Weiner retained jurisdiction for three years. Id. at *1. The plaintiff then filed a motion to remand the case back to the transferor court, and has been his practice, Judge Weiner remanded only the compensatory portion of the case, retaining jurisdiction over the plaintiff's claim for punitive damages. Id. The plaintiff then sought a Writ of Mandamus, petitioning the Third Circuit Court of Appeals to order Judge Weiner to remand the punitive damages claim as well.

In considering the petition, the Third Circuit first addressed whether Judge Weiner possessed the authority in the first place to remand any claims to the transferor court. Relying on the language of 28 U.S.C. 1407(a), the Court held that Judge Weiner does not have such

5

authority. Id. at *2.[2] Instead the Court held "Section 1407(a) unequivocally places the authority to remand a transferred case with the Panel, not the transferee district judge." Id. (citing Lexecon Inc., 118 S. Ct. at 962 (Supreme Court determined that § 1407(a) imposes a mandatory obligation on the Panel to remand transferred cases to their transferor court)). Finally, the Roberts court noted that the plaintiff did not waive his rights to seek remand from the Panel by filing the motion for remand in the transferee court. Id. at *3.

In the present case, following the directive of the Third Circuit Court of Appeals in Roberts, supra, Conwed brings this Motion to Remand to the Panel, which is the only tribunal with authority to remand this case. Further, it is well settled that a transferee court does not have the power to try a transferred case. Lexecon Inc., 118 S. Ct. at 962 (§ 1407(a) precludes a transferee district judge from assigning a transferred case to itself for trial). Thus, the entire case must be remanded, and not split into separate "mini-trials" to be tried in the Eastern District of Pennsylvania, as suggested by Judge Weiner at a recent settlement conference in this case.

## II. This Lawsuit Has Been Pending for Over Seven Years and is Ripe for Trial.

In the seven years that this action has been pending, Conwed and Union Carbide have engaged in extensive discovery, including many sets of interrogatories, requests for documents

---

[2]Section 1407(a) provides, in part, as follows:

When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings....Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred....

28 U.S.C. § 1407(a) (emphasis added).

and requests for admissions. The parties have also taken voluminous depositions of lay witnesses and experts, some of whose depositions lasted several days over the course of many months. Simply put, the parties have conducted exhaustive discovery which is now complete. Any argument by Union Carbide to the contrary is without merit, and would be nothing more than an effort to avoid trial.[3]

Likewise, Conwed and Union Carbide have engaged in extensive settlement negotiations, with the last settlement conference before the transferee court occurring on July 7, 1999. As with the prior settlement conferences, the parties were unable to settle.[4] Thus, despite numerous efforts to settle this case, Conwed's claim against Union Carbide have not been settled. Conwed believes that this is primarily because Union Carbide is unwilling to settle this case without facing the imminent threat of trial.

**III.    This Action is Not the Traditional Asbestos Personal Injury Action For Which the Judicial Panel on Multidistrict Litigation Created the MDL 875.**

Conwed's action against Union Carbide is not the traditional asbestos personal injury action which the MDL 875 was designed to handle.

On July 29, 1991, the Judicial Panel on Multidistrict Litigation entered an order transferring all pending federal actions involving allegations of personal injury or wrongful death caused by asbestos to the United States District Court for the Eastern District of Pennsylvania.

---

[3] The fact that this case has lasted seven years is, by itself, reason to remand the case for trial in Minnesota, where the District Court's calendar operates in an expeditious manner. Cases in the Minnesota District Court are typically set for trial within 12 to 18 months of filing.

[4]It should be noted that settlement efforts have not been entirely unsuccessful. Of the four third-party defendants impleaded by Union Carbide, Conwed has settled with two.

See Opinion and Order in In re: Asbestos Products Liability Litig. (No. VI), Docket No. 875

(July 29, 1991). See Warner Aff., Ex. B. In its order, the Panel determined that such cases

involved common questions of fact relating to injuries or wrongful death allegedly caused by

exposure to asbestos. Id. The Honorable Charles Weiner of the Eastern District of Pennsylvania

was selected to preside over the coordinated pretrial procedures in the MDL 875.

Since the MDL 875 was formed, the MDL 875 has received tens of thousands of asbestos

personal injury actions, and the Court has successfully resolved many of these cases. At the same

time, cases that do not fall within the parameters established by the Panel in its July 29, 1991

Order have been routinely remanded. For instance, Barfield v. Texaco, Inc., Civ. No. 97-2621

(E.D. Pa. Apr. 1, 1998), was remanded to the Eastern District of Louisiana, where the plaintiffs

had not alleged asbestos-related personal injuries against the "traditional" asbestos defendants.

See Warner Aff., Ex. B. Rather, the plaintiffs asserted they were wrongfully exposed to asbestos

and were wrongfully discharged by their employer, Texaco. Id.; see also In re: Rosenzweig, Civ.

No. J-C-97099 (E.D. Pa. June 12, 1997) (asbestos personal injury claim remanded to the Eastern

District of Arkansas where defendant was not a traditional asbestos defendant at time of remand);

Mortensen v. Maxwell House Coffee Co., Civ. No. 4-95-736 (E.D. Pa. Sept. 14, 1995) (action

remanded to Southern District of Texas where court found "defendant is not 'traditional'

defendant in asbestos actions, and there are no other asbestos defendants"). See Id.

The present case is similar to those cases that have been remanded because they are not

the type of cases for which the Panel created the MDL 875. Here, Conwed is not a "traditional"

asbestos personal injury plaintiff claiming injuries or death as a result of exposure to asbestos.

Nor is Conwed a "traditional" defendant. In fact, aside from this case, Conwed is a party to no

8

other MDL 875 case. Instead, Conwed is an employer who has paid and will pay workers' compensation benefits, as required by Minnesota workers' compensation laws, to Minnesota employees alleging asbestos-related illnesses. Similarly, while Union Carbide may be a miner, miller and supplier of asbestos, Conwed's lawsuit against Union Carbide is not an asbestos personal injury case as contemplated by the Panel. Rather, as discussed in detail below, Conwed is seeking contribution and indemnification from Union Carbide under Minnesota workers' compensation laws for benefits paid and payable to former Conwed Minnesota employees. Further, Union Carbide is the only defendant in this action, i.e. there are no other asbestos defendants.[5]

Although this case was conditionally transferred to this Court, Conwed's action does not fall within the parameters set by the Panel in establishing the MDL 875. Thus, the Panel should remand this unique action to its transferor court in Minnesota.

IV. . **This Action Involves the Specialized Application of the Minnesota Workers' Compensation Act, Which Should be Decided by the Transferor Court in Minnesota.**

Finally, in efforts to defeat Conwed's prior motions to remand, Union Carbide has claimed that the MDL 875 Court should consider motions for summary judgment and motions to dismiss. However, the determination of the parties' claims involves evaluating underlying claims by Conwed workers in light of the highly specialized Minnesota Workers' Compensation Act. Such complicated Minnesota-specific issues should be addressed by the court in Minnesota.

In Minnesota, third party actions under the Workers' Compensation Act are governed by

---

[5]While Union Carbide has impleaded four third-party defendants, only two remain. See n. 4, supra.

9

Minn. Stat. § 176.061(5)-(10). These provisions of the Minnesota Workers' Compensation Act provide that when an employee elects to receive workers' compensation benefits for an injury caused by a third party's negligence, the employer is subrogated to the employee's rights against the tortfeasor up to the total amount of workers' compensation liability. Kliniski v. Southdale Manor, Inc., 518 N.W.2d 7, 9 (Minn. 1994). The real party in interest in any such action is the insurer, or self-insured employer. Fidelity & Cas. Ins. Co. v. St. Paul Gas Light Co., 188 N.W. 265 (Minn. 1923). The Act provides in part, as follows:

> If an injury or death for which benefits are payable is caused under circumstances which created a legal liability for damages on the part of a party other than the employer, that party being then insured or self-insured in accordance with this chapter, and the provisions of subdivisions 1,2,3, and 4 do not apply, or the party other than the employer is not then insured or self insured as provided by this chapter, legal proceedings may be taken by the employee or the employee's dependents in accordance with clause (a), or by the employer, or by the attorney general on behalf of the special compensation fund, in accordance with clause (b), against the other party to recover damages, notwithstanding the payment of benefits by the employer or the special compensation fund or their liability to pay benefits.

Minn. Stat. § 176.061, subd. 5. Thus, subdivision 5 allows an employer to commence a subrogation action against a third party either in the employee's name or in the name of the employer. Minn. Stat. § 176.061, subd. 5.

Subdivision 7, which accords an employer a separate cause of action against a third party, extends such an action to compensation not yet payable. Minn. Stat.§ 176.061, subd. 7. It provides that the amount recovered by an employer for medical expenses or other compensation is for the benefit of the employer to the extent that the employer "has paid or will be required to pay compensation or pay for medical treatment of the injured employee." Id.; see Haase v. Haase, 369 N.W.2d 311, 314 (Minn. Ct. App. 1985) (following employee's Naig settlement,

10

employer has subrogation claim against tortfeasor for benefits payable in the future and benefits already paid).[6] The calculation of contribution has spawned a large of amount of case law in Minnesota. See, e.g., Lambertson v. Cincinnati Corp., 257 N.W.2d 679 (Minn. 1977); Westendorf by Westendorf v. Stasson, 330 N.W.2d 699 (Minn. 1983); Paine v. Waterworks Supply Co., 31 W.C.D. 18, 269 N.W.2d 725 (Minn. 1978); Hewitt v. Apollo Group, 490 N.W.2d 898 (Minn. Ct. App. 1992); Kuehn v. Jack Frost, Inc., 33 W.C.D. 476 (Minn. W.C. Ct. App. 1977); Duenow v. Midwest Excavating Co., 32 W.C.D. 511 (Minn. W.C. Ct. App. 1980); Schmitt v. Anderson, 472 N.W.2d 189 (Minn. Ct. App. 1991); Kempa v. E.W. Constr. Co., 370 N.W.2d 414 (Minn. 1985).

The method for calculating any future contribution liability is currently delineated in Minnesota, as follows:

> [T]he trial judge should determine the amount of benefits payable in the future on the evidence available (using affidavits, depositions, and exhibits) and make reasonable assumptions (such as life expectancy of the injured employee), and then reduce the benefits payable to present value.

Tyroll v. Private Label Chem., Inc., 505 N.W.2d 54, 61 (Minn. 1993).

Nevertheless, unresolved issues in this complex area of litigation remain. See, e.g., Kliniski v. Southdale Manor, Inc., 518 N.W.2d 7 (Minn. 1994); S.B. Foot Tanning Co. v. Piotrowski, 554 N.W.2d 413 (Minn. Ct. App. 1996); Decker v. Oak Ridge Homes, SLS, Inc., 557 N.W.2d 360 (Minn. Ct. App. 1996); Jackson v. Zurich Amer. Ins. Co., 542 N.W.2d 621 (Minn. 1996).

---

[6]Naig v. Bloomington Sanitation, 259 N.W.2d 891 (Minn. 1977), authorizes Conwed, as an employer, to bring the present action.

Similarly, Subdivision 10 creates a statutory right of indemnity for compensation the employer has already paid as well as compensation payable in the future, as follows:

> Notwithstanding the provisions of chapter 65B or any other law to the contrary, an employer has a right of indemnity for any compensation paid or payable pursuant to this chapter, including temporary total compensation, temporary partial compensation, permanent partial disability, economic recovery compensation, impairment compensation, medical compensation, rehabilitation, death, and permanent total compensation.

Minn. Stat. § 176.061, subd. 10.

Section 176.061, taken as a whole, presents a comprehensive plan for asserting the claims of an employer and employee against third parties and for distributing any sums recovered. Jackson v. Zurich Amer. Ins. Co., 542 N.W.2d 621 (Minn. 1996); see also Van Gordon v. Beaver, 928 F. Supp. 858 (D. Minn. 1996).

Further, under Naig v. Bloomington Sanitation, 259 N.W.2d 891 (Minn. 1977), an employee in a third-party tortfeasor action may separate his/her claim into subrogable and non-subrogable portions, and settle the non-subrogable part without obligation to pay any part of the recovery to the employer. Here, several hundred, but not entirely the same group, of employees, brought state court asbestos-related tort claims in Minnesota. If the employee settles on a Naig basis with a third-party tortfeasor, the settlement is not subject to the distribution formula set forth in Minn. Stat. § 176.061, subd. 6, and the employer, here Conwed, is left to independently pursue its subrogation claim against the tortfeasor. Id. at 894.[7] Likewise, an employer's subrogation claim is not subject to the subdivision 6 distribution formula. Tyroll, 505 N.W.2d at

---

[7]All Conwed employees who brought state court claims settled on the basis of Naig releases.

12

60. The proper measure of damages in an employer's subrogation action includes recovery of the employee's common law damages for past and future wage loss, loss of earning capacity and similar items of damages, as well as medical expenses, both paid and payable in the future. Id.

In the present case, Union Carbide's argument that these issues, in the form of motions to dismiss or motions for summary judgment, should be handled by this Court in the MDL 875 are without merit. To ask Judge Weiner in the Eastern District of Pennsylvania to consider complex legal issues that have spawned almost continuous litigation for twenty years in Minnesota is simply asking too much. Rather, these issues must be considered by the court in Minnesota, which is the proper court to apply the detailed provisions of the Minnesota Workers' Compensation Act, as interpreted by Minnesota courts. While the transferee court has overseen the pre-trial discovery in this case, any discovery issues which arose are much different than substantive issues of law under the Minnesota Workers' Compensation Act. Discovery issues involve the general interpretation of the Federal Rules of Civil Procedure, applicable to all federal courts. The only pre-trial issues that remain are limited to the Minnesota Workers' Compensation Act.

V.   **Despite its Status as an Atypical Case, the Transferee Court Has Successfully Overseen Discovery and the Case is Now Trial-Ready.**

Even though this case is not the typical case transferred to the MDL 875, the transferee court has taken commendable action in accepting and attempting to settle this matter. The transferee efforts include (1) overseeing voluminous discovery, including a number of disputes; (2) conducting seven settlement conferences over the course of seven years; (3) successfully overseeing Conwed's settlement with two third-party defendants who were impleaded by Union

Carbide; and (4) making the case ready for trial. These efforts are no small feat in light of the fact

that this case arises under the unique and arcane issues of Minnesota Workers' Compensation

laws.

Due to these efforts, and the efforts of the parties, no coordinated pretrial proceedings

remain. This case is ready for trial. The United States District Court for the District of Minnesota

will be more suited to determining the  issues arising under Minnesota law involved in this case.

For the convenience of the parties and in the interest of justice, Conwed respectfully requests that

this action be returned to Minnesota for further proceedings.

## CONCLUSION

For the reasons set forth above, Conwed respectfully requests that the Panel remand this

case to the United States District Court for the District of Minnesota for further proceedings.

STICH, ANGELL, KREIDLER, BROWNSON &
BALLOU, P.A.

Dated: _____July 12, 1999_____    _____

Robert D. Brownson, Esq., #12245
Kristi K. Warner, Esq., #259986
The Crossings, Suite 120
250 Second Avenue South
Minneapolis, MN 55401
(612)333-6251


Michael Goldman
Rudnick & Wolfe
203 North LaSalle Street, Suite 1800
Chicago, IL 60601-1293
(312) 236-7516

ATTORNEYS FOR PLAINTIFF CONWED
CORPORATION

14

US OFFICE PRODUCTS

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV 2 2 2000

FILED
CLERK'S OFFICE

## DOCKET NO. 875

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*Owens-Illinois, Inc.*, v. *T&N Ltd., et al.*, E.D. Texas, C.A. No. 2:99-117

## BEFORE JOHN F. NANGLE, CHAIRMAN, LOUIS C. BECHTLE, JOHN F. KEENAN, WM. TERRELL HODGES, MOREY L. SEAR, BRUCE M. SELYA* AND JULIA SMITH GIBBONS, JUDGES OF THE PANEL

## TRANSFER ORDER

Before the Panel is a motion brought, pursuant to 28 U.S.C. §1407, by defendants T&N plc and Federal-Mogul-Corp. for transfer of the above-captioned action (*Owens*) to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner. Plaintiff Owens-Illinois, Inc. opposes transfer.

On the basis of the papers filed and the hearing held, the Panel finds that *Owens* involves common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the action to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of this action is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991). Plaintiff seeks to exclude *Owens* from transfer on the ground that the action is not specifically a claim for asbestos related personal injuries, but rather is one sounding in antitrust, fraud and racketeering laws and involving an alleged conspiracy to allocate markets and fix prices for asbestos. Regardless of how plaintiff seeks to characterize the legal nature of its complaint, the factual allegations of the complaint overlap with those in many MDL-875 actions where both the *Owens* plaintiff's and the *Owens* defendants' knowledge of (and conduct concerning) the alleged health hazards of asbestos is at issue. The basic relief sought in the various counts of the complaint is damages equal to the sums that plaintiff has paid to defend and settle asbestos personal injury claims (precisely the damages in the cross-claims and third party claims for contribution found in many previously centralized MDL-875 actions). It may be that on further refinement of the issues and close scrutiny by the transferee court, *Owens* can be remanded in advance of the other actions in the transferee district. Should the transferee court deem remand of any claims or actions appropriate, the

---

*Judge Selya took no part in the decision of this matter.

- 2 -

transferee court can communicate this to the Panel, and the Panel will accomplish remand with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L., 192 F.R.D. 459, 470-72 (2000). We are confident that Judge Weiner will continue to promptly review arguments for returning transferred actions or claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever he is convinced that retention in the MDL-875 proceedings is no longer needed.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the above-captioned action entitled *Owens-Illinois, Inc. v. T&N Ltd., et al.*, E.D. Texas, C.A. No. 2:99-117, be, and the same hereby is, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

John F. Nangle
Chairman

J

US OFFICE PRODUCTS

JUDICIAL PANEL
MULTIDISTRICT
LITIGATION

SEP 29

FILED
CLERK'S OFFICE

*DOCKET NO. 875*

*BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

*IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)*

*Raymark Industries, Inc. v. Frederick M. Baron, et al.*, N.D. Texas, C.A. No. 3:98-673

*BEFORE JOHN F. NANGLE, CHAIRMAN, WILLIAM B. ENRIGHT,*
*CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS,* LOUIS*
*C. BECHTLE AND JOHN F. KEENAN, JUDGES OF THE PANEL*

*TRANSFER ORDER*

Before the Panel is a motion brought, pursuant to Rule 12, R.P.J.P.M.L., 147 F.R.D. 589, 596 (1993), by plaintiff in the above-captioned action (*Raymark*) requesting that the Panel vacate the portion of its order conditionally transferring *Raymark* to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner. Defendants in *Raymark* support transfer of the action.

On the basis of the papers filed and the hearing held, the Panel finds that *Raymark* involves common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the action to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of *Raymark* is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial relating to allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991). In particular, we note that in the Panel's original decision distinctions based on such matters as the pendency of motions or other matters before the transferor court, the uniqueness of a party's status, the type of defendant, the docket condition of any specific federal district, and/or the presence of unique claims or additional claims not relating to injury or death, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket. We find no reason to depart from this approach in dealing with the question of transfer of the action now before the Panel. We point out that *Raymark*, an action that challenges attorney defendants' professional conduct of asbestos cases brought by them on behalf of personal injury claimants, can be expected to raise issues concerning not only the viability of the underlying asbestos products liability claims, but also questions of judicial management and discovery that are already (with respect to the MDL-875 cases) subject to the jurisdiction and control of Judge Weiner. In opposing transfer, plaintiff

---

*Judges Enright and Sanders took no part in the decision of this matter.

- 2 -

has placed great reliance on the fact that another action between these parties, ordered transferred by the Panel from the District of Utah following its January 1998 hearing, was almost immediately remanded by the Panel following a suggestion of remand from Judge Weiner who concluded, *inter alia*, that the action did not fall within the scope of his MDL-875 actions. The "precedential" value of the Utah case, however, is severely undercut by the fact that another action involving these parties and asserting claims of vexatious litigation (*Raymark Industries, Inc. v. Peter G. Angelos, et al.*, N.D. Georgia, C.A. No. 1:96-940) was ordered transferred by the Panel after a September 1996 hearing and remains pending before Judge Weiner. We therefore view the disposition of the Utah case as rather illustrating the continuing wisdom of the transfer approach adopted by the Panel in this docket: 1) actions meeting the Panel's threshold for transfer are ordered transferred under Section 1407; and 2) any parties that believe the uniqueness of their particular situation renders continued inclusion of their action in MDL-875 unnecessary or inadvisable then present their arguments to the transferee judge, who, whenever he deems remand of any claims or actions proper, invokes the available procedures whereby this may be accomplished with a minimum of delay. *See* Rule 14, R.P.J.P.M.L., *supra*, 147 F.R.D. at 597-99. We are confident that Judge Weiner will continue to promptly review arguments for returning transferred actions or claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever he is convinced that retention in the MDL-875 proceedings is no longer needed.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the action entitled *Raymark Industries, Inc. v. Frederick M. Baron, et al.*, N.D. Texas, C.A. No. 3:98-673, be, and the same hereby is, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

John F. Nangle
Chairman

K

US OFFICE PRODUCTS

SEP 25

ATTEST _____
FOR THE JUDICIAL PANEL OF
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

SEP 25  96

PATRICIA D. HOWARD
CLERK OF THE PANEL

*DOCKET NO. 875*

**F I L E D**

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

SEP 3 0 1996

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

By _____ Dep. Clerk

*Raymark Industries v. Peter G. Angelos, et al., N.D. Georgia, C.A. No. 1:96-940*

## BEFORE JOHN F. NANGLE, CHAIRMAN, ROBERT R. MERHIGE, JR., WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS* AND LOUIS C. BECHTLE, JUDGES OF THE PANEL

FILED   SEP 3 0 1996

### TRANSFER ORDER

Before the Panel is a motion brought, pursuant to Rule 12, R.P.J.P.M.L., 147 F.R.D. 589, 596 (1993), by plaintiff in the above-captioned action (*Raymark*) requesting that the Panel vacate the portion of its order conditionally transferring *Raymark* to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner.  Six of the eight *Raymark* defendants oppose the motion and support transfer of the action.

On the basis of the papers filed and the hearing held, the Panel finds that *Raymark* involves common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the action to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.  We find that transfer of *Raymark* is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products.  *See In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991).  In particular, we note that in the Panel's original decision distinctions based on such matters as the uniqueness of a party's status, the type of defendant, the docket condition of any specific federal district, and/or the presence of unique claims or additional claims not relating to injury or death, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket. We find no reason to depart from this approach in dealing with the question of transfer of the action now before the Panel.  We point out that *Raymark*, an action that challenges attorney defendants' professional conduct of asbestos cases brought by them on behalf of personal injury claimants, can be expected to raise issues concerning not only the viability of the underlying asbestos products liability claims, but also questions of judicial management, discovery, and supervision of attorney fees that are

_____

* Judge Sanders took no part in the decision of this matter.

- 2 -

already (with respect to the MDL-875 cases) subject to the jurisdiction and control of Judge Weiner. We also note that should the transferee judge deem remand of *Raymark* in advance of other MDL-875 actions to be appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 14, R.P.J.P.M.L., 147 F.R.D. 589, 597-99 (1993).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the action entitled *Raymark Industries v. Peter G. Angelos, et al.*, N.D. Georgia, C.A. No. 1:96-940, be, and the same hereby is, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:



John F. Nangle
Chairman

ENTERED: _10/1/96_____

CLERK OF COURT

L

US OFFICE PRODUCTS

JUD... ....L ... ...
MULTIDISTRICT
LITIGATION

*DOCKET NO. 875*

JAN 29  19:5

*BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

FILED

*IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)* CLERK'S OFFICE

*Raymark Corp., et al. v. Frederick M. Baron, et al., D. Utah, C.A. No. 1:97-109*

*BEFORE JOHN F. NANGLE, CHAIRMAN, ROBERT R. MERHIGE, JR., WILLIAM B. ENRIGHT,\* CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS\* AND LOUIS C. BECHTLE, JUDGES OF THE PANEL*

*TRANSFER ORDER*

Before the Panel is a motion brought, pursuant to Rule 12, R.P.J.P.M.L., 147 F.R.D. 589, 596 (1993), by plaintiff in the above-captioned action (*Raymark*) requesting that the Panel vacate the portion of its order conditionally transferring *Raymark* to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner. Defendants in *Raymark* oppose the motion and support transfer of the action.

On the basis of the papers filed and the hearing held, the Panel finds that *Raymark* involves common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the action to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of *Raymark* is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial relating to allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991). In particular, we note that in the Panel's original decision distinctions based on such matters as the pendency of motions or other matters before the transferor court,[1] the uniqueness of a party's status, the type of defendant, the docket condition of any

---

\*Judges Enright and Sanders took no part in the decision of this matter.

[1]Plaintiffs have argued that transfer should be denied or deferred in order to permit the judge assigned their action to rule on a pending remand motion. There is no need to delay transfer in order to accommodate such an interest. We note that: 1) as a practical matter, there is a lag time of at least three or four months from the filing of an action, its identification as a potential tag-along action, issuance of a conditional transfer order, stay of transfer when a party timely objects to the conditional transfer, briefing on the question of transfer, the Panel hearing, and the issuance of the Panel's subsequent order; 2) Panel Rule 18, R.P.J.P.M.L., *supra*, 147 F.R.D. at 601, expressly provides that the pendency of a conditional transfer order does not in any way i) suspend orders and pretrial

(continued...)

- 2 -

specific federal district, and/or the presence of unique claims or additional claims not relating to injury or death, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket. We find no reason to depart from this approach in dealing with the question of transfer of the action now before the Panel. We point out that *Raymark*, an action that challenges attorney defendants' professional conduct of asbestos cases brought by them on behalf of personal injury claimants, can be expected to raise issues concerning not only the viability of the underlying asbestos products liability claims, but also questions of judicial management and discovery that are already (with respect to the MDL-875 cases) subject to the jurisdiction and control of Judge Weiner. We also observe that should the transferee judge deem remand of *Raymark* in advance of other MDL-875 actions to be appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 14, R.P.J.P.M.L., *supra*, 147 F.R.D. at 597-99.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the action entitled *Raymark Corp., et al. v. Frederick M. Baron, et al.*, D. Utah, C.A. No. 1:97-109, be, and the same hereby is, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

John F. Nangle
Chairman

---

(...continued)

proceedings in the district court in which the action that is the subject of the conditional transfer order is pending, or ii) limit the pretrial jurisdiction of that court; and 3) accordingly, those courts wishing to address such motions have adequate time in which to do so, those courts concluding that such issues should be addressed by the transferee judge need not rule on them, and the process of 1407 transfer in MDL-875 can continue without any unnecessary interruption or delay.

**M**

US OFFICE PRODUCTS



FILED   OCT 4 199

DOCKET NO. 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

OCT - 1 1993

PATRICIA D. HOWARD
CLERK OF THE PANEL

# 98 9

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*Keene Corp. v. Joseph Fiorelli, et al.*, E.D. New York, C.A. No. 1:93-2129

## BEFORE JOHN F. NANGLE, CHAIRMAN, MILTON POLLACK,* ROBERT R. MERHIGE, JR., WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JR., JOHN F. GRADY AND BAREFOOT SANDERS,* JUDGES OF THE PANEL

### TRANSFER ORDER

Presently before the Panel is a motion, pursuant to Rule 12, R.P.J.P.M.L., 147 F.R.D. 589, 596 (1993), by plaintiff Keene Corp. in the above-captioned action (*Keene*) to vacate the portion of the Panel order, issued on June 11, 1993, conditionally transferring *Keene* to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner.

On the basis of the papers filed and the hearing held, the Panel finds that *Keene* involves common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of *Keene* to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of *Keene* is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991). In particular, we note that in the Panel's original decision distinctions based on such matters as the pendency of motions or other matters before the transferor court, the uniqueness of a party's status, the docket condition of any specific federal district, the presence of unique or additional claims not relating to injury or death, and/or the advanced stage of proceedings in given actions, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket. In rejecting these distinctions, the Panel i) concluded that the need to have one judge with overall control and

---

*Judges Pollack and Sanders recused themselves and took no part in the decision of this matter.

- 2 -

responsibility for the resolution of federal asbestos personal injury claims was paramount, and ii) determined that, accordingly, before creating exceptions to handle any unusual developments, it was necessary to first transfer actions meeting the 1407 criteria to the Eastern District of Pennsylvania in order to permit the transferee judge to make his own assessment in light of his familiarity with the needs of the entire docket (recognizing that an array of devices — early remand of actions or claims, transfer under 28 U.S.C. §1404, appointment of additional transferee judges, etc. — were readily available for application to actions which the transferee judge concluded were deserving of special attention or treatment). We see no reason to depart from this approach in dealing with the question of transfer of *Keene*.

At oral argument on this matter attention was invited to the order of the United States Court of Appeals for the Second Circuit dated August 10, 1993, i) granting a motion for an expedited appeal of rulings in *Keene* by the transferor court, and ii) staying proceedings in *Keene* pending resolution of the appeal. We find that transfer of *Keene* under 1407 in no way affects the operation of the stay, as we are simply indicating the place where the pretrial proceedings in *Keene* will occur if and when they resume. *See, e.g., In re Franklin National Bank Securities Litigation*, 393 F.Supp. 1093, 1095-96 (J.P.M.L. 1975). And under the circumstances disclosed by the record in this matter, we are not persuaded that delay of transfer pending resolution of the appeal is warranted. *See, e.g., In re Multidistrict Private Civil Treble Damage Antitrust Litigation Involving IBM*, 302 F.Supp. 796, 800 (J.P.M.L. 1969). As to the effect of transfer on pending appeals, we note that this is a matter within the province of the concerned appellate courts. *See, e.g., Meat Price Investigators Association, et al. v. Spencer Foods*, 572 F.2d 163, 164 (8th Cir. 1978).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the action entitled *Keene Corp. v Joseph Fiorelli, et al.*, E.D. New York, C.A. No. 1:93-2129, be, and the same hereby is, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

John F. Nangle
Chairman

10/5/93

CLERK OF COURT