MDL **875**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 25 2001

FILED
CLERK'S OFFICE

## JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

—————————————————— X

Julita Szewczyk, as Administratrix of the
Estate of Jan Szewczyk

    Plaintiff

Civil Action   NYS
No. 01 Civ. 0199 (WK)
**MDL- 875**

VS.

Metro-North Railroad Company

    Defendant

—————————————————— X

### MOTION TO VACATE CONDITIONAL TRANSFER ORDER

    Pursuant to Rule 7.4, the plaintiff moves to vacate the March 27, 2001 dated Conditional Transfer Order (CTO-194) insofar as it pertains to the above captioned case. This case is not appropriate for inclusion in MDL-875 because defendant Metro-North's negligence was conclusively established in a prior action, the plaintiff does not need to conduct any discovery relating to asbestos exposure and liability, and the United States District Court for the Southern District of New York is a more convenient forum for the parties and will result in a more just and efficient resolution to this action.

    A Memorandum of Law accompanies the instant motion.

OFFICIAL FILE COPY
IMAGED APR 26 '01

Date: 4/24/01                          FOR THE PLAINTIFF,


                                       BY _Scott Perry_____
                                          Charles C. Goetsch (CG-9082)
                                          Scott Perry (SP 3604)
                                          CAHILL & GOETSCH, P.C.
                                          43 Trumbull Street
                                          New Haven, Connecticut  06511
                                          (203) 777-1000

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 25 2001

FILED
CLERK'S OFFICE

### Certificate of Service

This is to certify that a copy of the foregoing was sent via first class mail, postage prepaid to:

See attached Panel Service List (Excerpted from CTO-194)
Docket No. 875
In Re Asbestos Products Liability Litigation (No. VI)

and

Philip DiBerardino, Esq.
Landman Corsi Ballaine & Ford
120 Broadway - 27th Floor
NY, NY 10271

on this 24 day of April, 2001.

Scott E. Perry

**PANEL SERVICE LIST (Excerpted from CTO-194)**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

Richard C. Binzley
Thompson, Hine & Flory
127 Public Square
3900 Key Center
Cleveland, OH  44114

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH  44115

David A. Damico
Burns, White & Hickton
2400 Fifth Avenue Place
120 Fifth Avenue
Pittsburgh, PA  15222

Raymond P. Forceno
Forceno & Hannon
Philadelphia Bourse Building, Suite 1000
Independence Mall East
Philadelphia, PA  19106

Ellen B. Furman
Goldfein & Joseph
1600 Market Street, 33rd Floor
Philadelphia, PA  19103

Charles C. Goetsch
Cahill & Goetsch, P.C.
43 Trumbull Street
New Haven, CT  06511

Susan M. Hanson
Stich, Angell, Kreidler & Muth, P.A.
The Crossings, Suite 120
250 2nd Avenue South
Minneapolis, MN  55401

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA  23219

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA  19102

Ronald L. Motley
Ness, Motley, Loadholt, Richardson & Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC  29465

Donald A. Powell
Buckingham, Doolittle & Burroughs
50 South Main Street
P.O. Box 1500
Akron, OH  44309

John J. Repcheck
Marks, O'Neill
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA  15219

John D. Roven
John Roven & Associates
2190 North Loop West
Suite 410
Houston, TX  77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH  43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA  90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA  19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
Detroit, MI  48226

Andrew J. Trevelise
Reed, Smith, Shaw & McClay
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103

James K. Weston II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA  52406

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 2 5 2001

FILED
CLERK'S OFFICE

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

————————————————————X

Julita Szewczyk, as Administratrix of the
Estate of Jan Szewczyk

    Plaintiff

Civil Action
No. 01 Civ. 0199 (WK)
**MDL- 875**

VS.

Metro-North Railroad Company

    Defendant

————————————————————X

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF
## MOTION TO VACATE CONDITIONAL TRANSFER ORDER

    The Court should vacate the conditional transfer order it entered in connection with this action because: the defendant Metro-North's negligence was conclusively established in a prior action, the plaintiff does not need to conduct any discovery relating to asbestos exposure and liability, and the United States District Court for the Southern District of New York is a more convenient forum for the parties and will result in a more just and efficient resolution to this action.

**I. Nature of Action**

    The instant lawsuit is a single count brought against a single defendant pursuant to the Federal Employers' Liability Act, 45 U.S.C. Section 51 ("FELA"). The plaintiff's decedent Jan Szewczyk worked for Metro-North Railroad Company as a painter from 1983 to 1984 and as an

iron worker from 1984 to 1999. The plaintiff Julita Szewczyk is Jan's widow. She alleges Metro-North failed to provide the decedent with a reasonably safe place to work by failing to eliminate or minimize conditions that posed a foreseeable risk of occupation disease and by failing to warn or instruct the decedent about the dangers involved in exposure to hazardous substances or chemicals. The hazardous substances or chemicals were asbestos, diesel exhaust fumes, and lead. (A copy of the Amended Complaint is attached hereto as Appendix 1.)

As a result of his exposure to the asbestos, diesel exhaust fumes, and lead, the plaintiff alleges the decedent developed kidney cancer that brought about his death.

## II. Standard For Transfer

"When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multi-district litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. In order to qualify for transfer, an action must involve one or more common questions of fact and pretrial consolidation must promote the just and efficient conduct of such action and be for the convenience of parties and witnesses. *See Ivy v. Diamond Shamrock Chemicals Co.*, 901 F.2d 7, 8 (2nd Cir. 1990).

## III. Discussion

### A. Transfer Is Not Appropriate Because The Trial Court Will, In All Likelihood, Conclude The Defendant's Negligence Is Conclusively Established Under The Doctrine Of Collateral Estoppel

Where liability has been resolved, transfer to panel for multi-district litigation is unwarranted. *In Re Air Crash Disaster At Pago Pago, American Samoa, On January 30, 1974. Marine National Bank v. Pan American World Airways, Inc.*, 394 F.Supp. 799 (J.P.M.L. 1975); *In Re Air Crash Disaster at Tenerife, Canary Islands on March 27, 1977*, 461 F.Supp. 671 (J.P.M.L. 1978). In *Marine National Bank*, the Judicial Panel granted the plaintiff's motion to vacate a conditional transfer order on the ground the parties resolved the issue of liability. *Id.* at 799. In the instant case, it is highly probable the district court will find that liability already has been conclusively established. Accordingly, the plaintiff's Motion to Vacate should be granted.

Jan Szewczyk was a co-worker of Michael Buckley at Grand Central Terminal in New York City. They were two of the "Snowmen of Grand Central Terminal" who brought an action against their employer Metro-North for negligently exposing them to asbestos during the 1980s. *Buckley v. Metro-North Commuter Railroad*, 89 Civ. 7170, 1995 U.S. Dist. Lexis 3081 (S.D.N.Y. March 15, 1995), *rev'd*, 79 F.3d 1337 (2nd Cir. 1996), *overruled*, 521 U.S. 424, 117 S.Ct. 2113 (1997). Jan Szewczyk was an iron worker who worked alongside Mr. Buckley in the steam tunnels below Grand Central Terminal. Jan set up the scaffolding for Mr. Buckley, removed the scaffolding, and swept large quantities of asbestos dust off the scaffolding. In the Snowmen case, the issue of Metro-North's liability applied equally to co-plaintiffs Jan Szewczyk and to Michael Buckley. Senior U.S. District Judge Whitman Knapp was the judge handling the case, and extensive discovery was conducted before Judge Knapp regarding Metro-North's negligence to all the Snowmen. After discovery was concluded the

3

parties agreed that Mr. Buckley would be the trial test co-plaintiff in order to present the issues of negligence, medical causation, and damages to a jury in Judge Knapp's courtroom.

When the Snowmen case was tried before Judge Knapp, Metro-North expressly conceded negligence and stipulated to the following facts: (1) Metro-North knew asbestos was present in Grand Central Terminal; (2) Metro-North knew the hazard that working with and around asbestos posed to the health of its employees; (3) Metro-North negligently exposed plaintiff to asbestos from June 1985 until early September of 1987; (4) Metro- North did not warn the plaintiff that he was being exposed to asbestos; and (5) Metro-North did not provide training to the plaintiff on how to safely handle asbestos. *Buckley v. Metro-North Commuter Railroad*, 89 Civ. 7170, 1995 U.S. Dist. Lexis 3081 (S.D.N.Y. March 15, 1995).  The district court granted Metro-North's motion for a directed verdict on the ground the plaintiff failed to prove he had sufficient impact with asbestos to result in a reasonable fear of developing an asbestos-related disease and because he failed to prove he suffered real emotional injury.  *Id.*  On appeal, in *Buckley v. Metro-North,* 79 F.3d 1337 (2nd Cir. 1996), the Court of Appeals reversed the district court, and thereafter the United States Supreme Court overruled the Second Circuit in *Metro-North v. Buckley*, 521 U.S. 424, 117 S.Ct. 2113 (1997).  All three courts--the district, circuit, and Supreme Court--confirmed that Metro-North had conceded its negligence and all three courts relied on that stipulation of negligence.  Indeed, the Supreme Court, like the District Court, expressly noted that "[Jan Szewczyk's co-plaintiff Mr. Buckley] has suffered a wrong at the hands of a negligent employer."  *Id.* at 443, 2113.  In a concurring opinion, Justice Ginsburg and Justice Stevens stated "the pipefitter would emerge from their work in the tunnels covered from head to toe with whit dust; for this appearance, they were dubbed 'the snowmen of Grand Central.'  The insulation material covering Grand Central's pipes was made of asbestos, widely

recognized as a carcinogen since the mid-1970's.  Metro-North did not tell the pipefitters of, or

provide protection against, the danger to which the workers were exposed until 1987 . . . ." 521

U.S. at 446; 117 S.Ct. at 2125.  The Supreme Court also noted that the New York Attorney

General's Office and the Office of the Inspector General of the Metropolitan Transportation

Authority conducted a joint investigation which lead to the following conclusions: "Metro-North

had 'seriously disregarded the health and safety of its workers'; the railroad's failings were

'particularly egregious' because Metro-North was on notice of the asbestos problem as a result of

complaints by its workers, a report by its own consultant, and inspections by the New York State

Department of Labor." *Id*. at 447; 2126.


### i. Standard For Offensive Use Of Collateral Estoppel

"Offensive collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from

relitigating an issue the defendant has previously litigated unsuccessfully in another action

against the same or a different party." *United States v. Mendoza,* 464 U.S. 154, 156 n.4, 104

S.Ct. 570 (1984).  The seminal case concerning the offensive use of collateral estoppel is

*Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645 (1979).  In *Parklane,* the

Supreme Court held that a trial court should permit the offensive use of collateral estoppel unless

the plaintiff could have easily joined the first action and did not or where the application of

offensive collateral estoppel would be unfair to a defendant.  439 U.S at 331, 99 S.Ct. at 651.

The purpose of assessing whether a plaintiff could have easily joined the first action is to prevent

the "wait and see" attitude where plaintiffs fail to join an earlier action in order to rely on a

favorable outcome in a later action.  *Id.* 439 U.S. at 329, 99 S.Ct at 651.  In the instant case, the

plaintiff's decedent did not take a "wait and see" position in the prior litigation but was a co-

plaintiff in the same case in which Mr. Buckley severed as a test co-plaintiff for the purposes of trial.

There are no factors present in the instant case that would make the offensive use of collateral estoppel unfair to the defendant Metro-North.   Examples of situations where application of offensive collateral estoppel would be unfair to a defendant are: (1) if the defendant in the first action is sued for small or nominal damages, and therefore, had little incentive to defend vigorously, particularly if future suits are not foreseeable; (2) if allowing offensive collateral estoppel involves reliance on a judgment that is inconsistent with one or more previous judgments in favor of the defendant; or (3) if applying offensive collateral estoppel in a second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result.   *Id.* at 330, 651.

None of the foregoing factors are present in the instant case.   First, in *Buckley* the co-plaintiffs sought damages for medical monitoring and mental anguish that were not "nominal." Second, plaintiff is not aware of any judgments that are inconsistent with the one in *Buckley*, wherein defendant Metro-North conceded liability and the District Court relied on this in reaching its final judgment.   Third, the plaintiff is not aware of any "procedural opportunities" that were unavailable in the first action and present in the instant action.

Accordingly, the transferor court is likely to apply the doctrine of collateral estoppel in the instant case.   Thus the plaintiff will be able to conclusively established that defendant Metro-North (1) knew asbestos was present in Grand Central Terminal; (2) knew the hazard that working with and around asbestos posed to the health of its employees; (3) negligently exposed plaintiff's decedent to asbestos from June 1985 until early September of 1987; (4) did not warn the plaintiff's decedent that he was being exposed to asbestos; and (5) did not provide training to

6

the plaintiff's decedent on how to safely handle asbestos. For this reason, transfer is not warranted. *In Re Air Crash Disaster At Pago Pago, American Samoa, On January 30, 1974. Marine National Bank v. Pan American World Airways, Inc.*, 394 F.Supp. 799 (J.P.M.L. 1975) (where liability has been resolved, transfer to panel for multi-district litigation is unwarranted.), and *In Re Air Crash Disaster at Tenerife, Canary Islands on March 27, 1977*, 461 F.Supp. 671 (J.P.M.L. 1978). Accordingly, the plaintiff's Motion to Vacate should be granted.

## B. The Plaintiff Does Not Need To Conduct Any Discovery Related To Asbestos Or The Defendant's Asbestos-Related Liability

Even absent the application of collateral estoppel, there is no need to conduct any discovery regarding the issue of negligence here. All the interrogatories, document production, and depositions regarding the negligence of Metro-North in exposing Jan Szewczyk to asbestos in Grand Central Terminal already have been conducted during the discovery that led up to the *Buckley* test trial. Indeed, all that discovery is already in the possession of both parties because the attorneys in this case and *Buckley* are the same (Charles C. Goetsch for plaintiff Szewczyk and Mark Landman for defendant Metro-North). Even the trial judge in this case and *Buckley* is the same: Senior U.S. District Judge Whitman Knapp of the S.D.N.Y. So regardless of whether collateral estoppel is applied to establish Metro-North's negligence, the parties do not need to conduct any discovery concerning Metro-North's negligence in exposing the plaintiff to asbestos at Grand Central Terminal. Thus, transfer is unwarranted

**C. Transfer Is Not Warranted Because This Action Also Involves Allegations That Plaintiff's Decedent Died As A Result Of Exposure To Diesel Fumes And Lead Paint, In Addition To Asbestos.**

The plaintiff in this case alleges the decedent died as a result of exposure to other substances in addition to asbestos. Therefore, the only common fact with other cases in MDL-875 is that asbestos was involved. However, as pointed out above, there is no need to conduct any discovery concerning Metro-North's negligence because Metro-North conceded negligence in the related action and the doctrine of collateral estoppel applies. Moreover, all the discovery necessary to prove Metro-North's liability was completed in the related *Buckley* case. Therefore, there is no need for this case to resolve within the context of the MDL any issues of fact regarding negligence. Given that lack of need to resolve any common issues of fact regarding negligence, transfer to the MDL is unwarranted.

**D. Transfer Will Not Promote The Just And Efficient Conduct Of This Action And It Will Be Inconvenient For The Parties**

The plaintiff widow resides in Flushing, New York, and the defendant Metro-North is located in Manhattan, New York. Thus, it cannot be said that transfer to the Eastern District of Pennsylvania will assist the parties in resolving this litigation. This is especially true since the only discovery needed concerns Jan Szewczyk's medical causation and damages, which are unique to this action and cannot be handled more efficiently by the transferee court. See *In Re Richardson-Merrell, Inc. "Bendectin" Products Liability Litigation (No. II)*, 582 F.Supp. 890, 891 (J.P.M.L. 1984) (per curiam)(vacating conditional transfer orders in six cases and holding, in part, that transfer of the actions would not serve the convenience of the parties and witnesses or promote the just and efficient conduct of the litigation even though the actions shared questions of fact with the actions previously transferred.). Given these circumstances, transfer of this

8

single case to the MDL would be inconsistent with the requirement that the Federal Rules of Civil Procedure be "construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1.

Moreover, the transfer of this action will be detrimental to the financial well-being of the plaintiff Julita Szewczyk, who is a widow. She relied on her deceased husband for her financial support. The longer it takes to resolve this litigation, the more severe will be her financial hardship.

**CONCLUSION**

Accordingly, for the reasons set forth above, the plaintiff respectfully requests that the Court vacate the conditional transfer order and remand this case to Judge Whitman Knapp in the SDNY so the unique issues of medical causation and damages can be promptly and efficiently adjudicated.

Date: 4/24/01                              FOR THE PLAINTIFF,

BY _____
                          Charles C. Goetsch (CG9082)
                          Scott E. Perry (SP3604)
                          CAHILL & GOETSCH, P.C.
                          43 Trumbull Street
                          New Haven, Connecticut 06511
                          (203) 777-1000

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 2 5 2001

FILED
CLERK'S OFFICE

## Certificate of Service

This is to certify that a copy of the foregoing was sent first class mail, postage prepaid to:

See attached Panel Service List (Excerpted from CTO-194)
Docket No. 875
In Re Asbestos Products Liability Litigation (No. VI)

and

Mark Landman Esq.
Philip DiBerardino, Esq.
Landman Corsi Ballaine & Ford
120 Broadway - 27th Floor
NY, NY 10271

on this 2⁴ day of April, 2001.

Scott E. Perry

**PANEL SERVICE LIST (Excerpted from CTO-194)**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

Richard C. Binzley
Thompson, Hine & Flory
127 Public Square
3900 Key Center
Cleveland, OH  44114

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH  44115

David A. Damico
Burns, White & Hickton
2400 Fifth Avenue Place
120 Fifth Avenue
Pittsburgh, PA  15222

Raymond P. Forceno
Forceno & Hannon
Philadelphia Bourse Building, Suite 1000
Independence Mall East
Philadelphia, PA  19106

Ellen B. Furman
Goldfein & Joseph
1600 Market Street, 33rd Floor
Philadelphia, PA  19103

Charles C. Goetsch
Cahill & Goetsch, P.C.
43 Trumbull Street
New Haven, CT  06511

Susan M. Hanson
Stich, Angell, Kreidler & Muth, P.A.
The Crossings, Suite 120
250 2nd Avenue South
Minneapolis, MN  55401

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA  23219

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA  19102

Ronald L. Motley
Ness, Motley, Loadholt, Richardson & Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC  29465

Donald A. Powell
Buckingham, Doolittle & Burroughs
50 South Main Street
P.O. Box 1500
Akron, OH  44309

John J. Repcheck
Marks, O'Neill
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA  15219

John D. Roven
John Roven & Associates
2190 North Loop West
Suite 410
Houston, TX  77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH  43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA  90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA  19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
Detroit, MI  48226

Andrew J. Trevelise
Reed, Smith, Shaw & McClay
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103

James K. Weston II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA  52406

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 2 5 2001

FILED
CLERK'S OFFICE

# *Appendix 1*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____X

Julita Szewczyk, as Administratrix of the
Estate of Jan Szewczyk

    Plaintiff

Civil Action
No. 01 Civ. 0199 (WK)

VS.

Metro-North Railroad Company

    Defendant

_____X

## AMENDED COMPLAINT

### NATURE OF THE ACTION

1.  The plaintiff brings this action against the defendant Railroads under the Federal Employers' Liability Act, 45 U.S.C. Section 51 (FELA), for personal injuries suffered by her decedent while in the course of his railroad employment.

### JURISDICTION

2.  This Court has subject matter jurisdiction in this case pursuant to 45 U.S.C. Section 56. Venue properly lies in this Court pursuant to 45 U.S.C. Section 56 and 28 U.S.C. Section 1391.

## PARTIES

3.  The plaintiff Julita Szewczyk is of Flushing, New York.  She is the wife of the late Jan Szewczyk and the administratrix of his Estate.

4.  The defendant Metro-North Railroad Company, also or formerly known as Metro-North Commuter Railroad (hereafter "Metro-North" or "Railroad"), is a railroad corporation duly established by law, having a usual place of business in New York,  New York.  During the relevant time period the defendant Metro-North was a common carrier engaged in the business of interstate commerce, and as such, operated a railroad in such business between, *inter alia*,  New York, New York, and New Haven, Connecticut.

## FACTS

5.  At the times the plaintiff's decedent received the injuries complained of, he was employed by the defendant Railroad as a painter and ironworker.

6.  At the times the plaintiff's decedent received the exposures and injuries complained of, the defendant Railroad was engaged in interstate commerce and the plaintiff was employed in furtherance of said commerce.

7.  The plaintiff's decedent Jan Szewczyk was employed as a painter by Metro-North from 1983 to 1984 and as an ironworker by Metro-North from 1984 to 2000.  During that time, he was assigned to work on or about the facilities of the Railroad, including but not limited to Grand Central Terminal and the 125th Street Station in New York, New York.  The buildings, tunnels, pipes, wires, rooms, ceilings, walls, plants, and all other structures and materials appurtenant to such facilities were owned or operated or controlled or maintained by the defendant Railroad.

8.  By no later than the mid-1980s the defendant Railroad had actual or constructive notice of the risk that exposure to hazardous substances or chemicals such as asbestos, diesel exhaust fumes, and lead posed to the health and welfare of its employees such as the plaintiff's decedent.

## AS AND FOR A FIRST CAUSE OF ACTION UNDER THE FELA

9.  The plaintiff adopts by reference and realleges each and every allegation set forth in paragraphs 1 through 8 of this Complaint with the same force and effect as if set forth under this cause of action.

10.  The defendant Metro-North owed a duty to the plaintiff's decedent under the FELA to provide him with a reasonably safe place to work and to furnish him with suitable tools, appliances, equipment, premises, assistance, training, and procedures.

11. The defendant Metro-North owed a duty to the plaintiff's decedent to provide him with a workplace reasonably safe from exposure to foreseeable conditions that it knew or should have known pose a risk of occupational injury or disease, and Metro-North had a duty to take steps to eliminate or minimize such risks of occupational injury or disease in the plaintiff's workplace.

12. The injuries of the plaintiff's decedent were caused in whole or in part by the negligence of the employees, agents, officers, and/or representatives of the defendant Metro-North in failing to provide him with a reasonably safe place to work---including suitable tools, appliances, equipment, premises, assistance, training, and procedures---and in failing to eliminate or minimize foreseeable conditions that pose a risk of occupational injury or disease. The defendant railroad negligently: failed to warn or instruct the plaintiff's decedent regarding

3

the dangers involved in exposure to hazardous substances or chemicals such as asbestos, diesel exhaust fumes, and lead; failed to protect the plaintiff's decedent from exposure to the hazards of such substances while working on or about Metro-North facilities; failed to provide the plaintiff's decedent with adequate protective equipment for such substances or training as to how to use such equipment; failed to discontinue the exposure of the plaintiff's decedent to such substances despite the fact the defendant knew or should have known that exposure to such substances present a scientifically recognized causal connection to cancer.

13. The injuries of the plaintiff's decedent were caused in whole or in part by the defendant Metro-North's failure to comply with its statutory duty under New York's Right To Know Law, NY Labor Law Section 875 *et seq*, to disclose to the plaintiff's decedent the nature of the hazardous substances and chemicals he was being exposed to on the job and to give him notice of the known and suspected health hazards associated with such exposure.

14. As a result of the negligence of the defendant Metro-North, the plaintiff's decedent developed kidney cancer that spread to various parts of his body, requiring extensive procedures, surgeries, and treatments.

15. The decedent Jan Szewczyk died on January 13, 2001 as a result of the cancer caused by the defendant Railroad's negligence and failure to provide him with a reasonably safe place to work. That cancer was first diagnosed in late 1999.

16. As a result of his injuries, the plaintiff's decedent suffered: lost earnings; expenses for medical services; physical pain and suffering; and mental anguish, including loss of normal function, enjoyment of life, and life expectancy. Also as a result of the defendant Railroad's negligence, the plaintiff decedent's wife has suffered and will suffer the loss of: the financial contributions and support which the decedent would reasonably be expected to have given her

4

had he lived, and the pecuniary value of the services which the decedent would reasonably be expected to have provided for her had he lived.

WHEREFORE, in order to fairly and justly compensate the negligently injured plaintiff and thereby promote safe operating conditions on the defendant Railroad, the plaintiff demands a jury verdict and judgment against the defendant Railroad in the amount of Ten Million Dollars ($10,000,000), in addition to any further relief which the Court deems just and equitable.


PLAINTIFF DEMANDS TRIAL BY JURY.


Date: 2/15/01                          FOR THE PLAINTIFF,

                                       BY _____
                                          Charles C. Goetsch
                                          CAHILL & GOETSCH, P.C.
                                          43 Trumbull Street
                                          New Haven, Connecticut  06511
                                          (203) 777-1000
                                          [CG9082]

## Certificate of Service

This is to certify that a copy of the foregoing was mailed, first class mail, postage prepaid to:

Philip DiBerardino, Esq.
Landman Corsi Ballaine & Ford
120 Broadway - 27th Floor
NY, NY 10271

on this __15[th]__ day of February, 2001.

Charles C. Goetsch

6