MDL 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 3 0 2001

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION | ) ) ) |
| ROLANDO DOVAL; CONSUELO DOVAL; FLOYD ROGERS; MARGARET ROGERS; HERBERT GROSSICH; ELAINE GROSSICH; DALL DEWEESE; TOMIANNE WILEY; DIANNA EDWARDS, as Personal Representative of MAURICE APLEY, Decedent; | MDL 875 (Hon. Charles Weiner) |

) MDL 875
) (Hon. Charles Weiner)
)
)
)
)
)
) CASE No. C01-00540 JL
) (N.D. CAL)
)
Plaintiffs, )
) **PLAINTIFFS'**
) **RESPONSE TO**
v. ) **DEFENDANT**
) **MAREMONT'S**
) **MOTION TO**
MAREMONT CORPORATION, ) **TRANSFER AND**
) **CONSOLIDATE WITH**
Defendant. ) **MDL 875**
_____ )

Pursuant to Rule 7.2(c) of the Rules of Procedure of the Judicial Panel on Multidistrict

Litigation, Plaintiffs file their response to Defendant Maremont's motion to transfer this action

and consolidate this action with MDL 875. Plaintiffs oppose the transfer of this action to MDL

875 because this action does not involve allegations of personal injury or wrongful death caused

by asbestos or asbestos-containing products. This action is a straightforward breach of contract

action in which plaintiffs allege that under California law defendant, Maremont is jointly liable

for the portions of the previously agreed to settlement amounts not yet tendered by the Center

for Claims Resolution.

Each plaintiff here previously filed a personal injury action in state court in California,

alleging either injury to themselves as a result of exposure to asbestos or loss of consortium

2

resulting from their spouse's exposure to asbestos. Each plaintiff settled their personal injury action with the Center for Claims Resolution ("CCR") for a single lump sum amount. Maremont was a member of CCR at the time of each of the subject settlements.

CCR tendered settlement drafts to each of the plaintiffs in sums far less than the agreed to settlement amount. CCR claimed that it was entitled to tender less than the agreed to amount due to the bankruptcy of one of its members, Armstrong World Industries, and in one case also because of the default by another CCR member, Asbestos Claims Management Corporation.

Plaintiffs filed their breach of contract action in the Superior Court of California for the City and County of San Francisco. Defendant, Maremont, removed the action to federal court on the basis of diversity jurisdiction. Thus, the original underlying action was brought in California State Court, as was the pending breach of contract action. Since the basis for federal jurisdiction is diversity, this case must be decided under California law, which the local federal district court is far more familiar with than the proposed transferor court, the Eastern District of Pennsylvania. Further, plaintiffs have already filed a dispositive motion for summary judgment that is pending in the district court. Defendant seeks this transfer and consolidation solely as a means to prevent the district court from ruling on plaintiffs' meritorious motion and to delay resolution of this action for along as possible.

Plaintiffs respond to defendants motion to transfer as follows:

1.      Plaintiffs admit the averments in paragraph 1 of defendants' motion except plaintiffs are without sufficient information to admit or deny whether or not defendant Maremont paid its share of the settlements allocated to it by the CCR.

2.      Plaintiffs deny the averments in paragraph two in that Judge Weiner has not

3

already already repeatedly addressed the exact same issue raised in this case, namely, whether the settlement agreements at issue here create joint and several liability under California law on the remaining members of CCR. Plaintiffs also deny that this action raises issues concerning the nature of CCR, the CCR membership agreement, the course of conduct with plaintiffs' counsel, the alleged well known agency relationship between CCR and its member companies, and the sophistication of plaintiffs' counsel. Unlike the previous rulings by Judge Weiner, this case arises from actions brought by the plaintiffs in California state court. Plaintiffs initially brought this breach of contract claim in California state court. Defendant removed the action to federal court based on diversity jurisdiction. Since the district court's jurisdiction is based on diversity, California state applies to this action. By contrast, the previous actions referred to by defendant where all initially in federal court and were assigned to MDL 875 and Judge Weiner prior to the settlements in those actions. In each previous instance Judge Weiner ruled in the context of a motion to enforce the settlement agreements against a previous member of CCR whose membership was terminated by CCR and who refused to honor the settlements entered into during the time it was a member of CCR. Here, plaintiffs contend that defendant under California law is jointly liable for the amount of the settlements not yet tendered. This is a straightforward breach of contract action and the court need only review the terms of the settlement agreements and apply established California law to resolve the issues presented by this case.

3.  Plaintiffs deny the averments in paragraph three for the reasons stated in response to paragraph two, namely, that Judge Weiner has not decided the issue of joint and several liability under California law.

4.  Plaintiffs deny that it makes no difference that this case does not simply present

4

a garden-variety asbestos personal injury claim. Plaintiffs admit that the Panel has in the past transferred cases to Judge Weiner that included satellite claims. However, the Panel's previous transfers to Judge Weiner of non-traditional claims all arose in connection with matters already a part of MDL 875. Defendants present no evidence that the Panel has previously transferred an action to Judge Weiner that was solely a breach of contract action where the underlying personal injury suit had not been previously transferred to MDL 875. Unlike here, it made sense to have Judge Weiner handle the satellite claims because they dealt with matters already assigned to MDL 875. Since Judge Weiner was overseeing the matters at the time of those settlements the motions to enforce the settlement agreements had to be heard by him.

None of Judge Weiner's previous rulings were made under California law. The Orders attached as Exhibits B, C and D involve cases from the Southern District of Georgia, the Eastern District of Pennsylvania and the District of Nevada. That Judge Weiner has previously ruled in the issue of joint and several liability under different facts and under the laws of other states supplies no support for Maremont's request for transfer of this action.

///

///

///

5

WHEREFORE, for the reasons stated in the accompanying memorandum of points and

authorities, plaintiffs respectfully request that the Panel deny defendant maremont's motion to

transfer this action to the Eastern District of Pennsylvania as part of MDL 875.

DATED:  April 27, 2001                          Respectfully submitted,


Mark L. Nissenbaum
WARTNICK,CHABER, HAROWITZ & TIGERMAN
101 California Street, Suite 2200
San Francisco, Ca.  94111
(415) 986-5566

Counsel for Plaintiffs
ROLANDO DOVAL; CONSUELO DOVAL;
FLOYD      ROGERS;  MARGARET ROGERS;
HERBERT GROSSICH; ELAINE GROSSICH;
DALL DEWEESE; TOMIANNE WILEY; DIANNA
EDWARDS,  as  Personal  Representative  of
MAURICE APLEY, Decedent

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 3 0 2001

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE:                                              )
                                                    )
ASBESTOS PRODUCTS LIABILITY LITIGATION              )      MDL 875
                                                    )      (Hon. Charles Weiner)
ROLANDO DOVAL; CONSUELO DOVAL; FLOYD                )
ROGERS; MARGARET ROGERS; HERBERT GROSSICH;          )      CASE No. C01-00540 JL
ELAINE GROSSICH; DALL DEWEESE; TOMIANNE             )      (N.D. CAL)
WILEY; DIANNA EDWARDS, as Personal Representative   )
of MAURICE APLEY, Decedent;                         )
                                                    )      **PLAINTIFFS'**
                                                    )      **MEMORANDUM IN**
        Plaintiffs,                                 )      **RESPONSE TO**
                                                    )      **DEFENDANT**
    v.                                              )      **MAREMONT'S**
                                                    )      **MOTION TO**
MAREMONT CORPORATION,                               )      **TRANSFER AND**
                                                    )      **CONSOLIDATE WITH**
        Defendant.                                  )      **MDL 875**
                                                    )
                                                    )

## I.    INTRODUCTION

Plaintiffs[1] strongly oppose defendant Maremont's motion to transfer this matter to the

Eastern District of Pennsylvania as part of MDL 875.  This case is a straightforward breach of

contract action.  Each of the plaintiffs here previously filed a personal injury action alleging

either injury to themselves from exposure to asbestos or loss of consortium resulting from their

spouses asbestos-related diseases.  Each plaintiff settled their claims with the Center for Claims

Resolution ("CCR") for a single lump sum figure.  Plaintiffs' counsel was never told how the

settlement amount was allocated among the CCR members or what formula was used to assign

---

[1].  Plaintiffs in this action are Rolando and Consuelo Doval, Floyd and Margaret Rogers, Herbert and Elaine
Grossich, Dall Deweese and Tomianne Wiley and Diana Edwards As personal representative of Maurice Apley.

2

each CCR member its share of the settlement amount. Maremont was a member of CCR when each of the plaintiffs settled their claims with the CCR defendants. CCR acts as an agent for Maremont and the other companies that comprise the CCR in the litigation, negotiation and settlement of asbestos-related claims.

Each plaintiff was required to execute a Comprise and Release of All Claims drafted by CCR on behalf of Maremont and the other members of CCR. Each plaintiff was also required to sign a Hold Harmless Agreement that obligated their estates to defend Maremont and the other members of CCR in the event any of the plaintiffs heirs later sued Maremont for wrongful death. Each plaintiff also was required to dismiss Maremont with prejudice from their personal injury actions. Each plaintiff fully complied with their obligations under the settlement agreement.

When it came time for CCR to pay the plaintiffs settlement amount, CCR tendered checks to each plaintiff in amounts substantially less than the previously agreed to amount. CCR blamed this shortfall on the bankruptcy of one of its members, Armstrong World Industries and in one case also because of the withdrawal of another member of CCR. CCR claimed that the plaintiffs' remedy was to file a claim in Armstrong's bankruptcy proceedings.

Plaintiffs seek the remaining amounts they are due according to the settlement agreements from defendant Maremont because under California law, Maremont is jointly and severely liable for the full amount of the settlement. Under California law, a settlement agreement is a contract and is to be interpreted in the same manner as any other contract. California Civil Code section 1659 provides that where all parties who unite in a promise receive some benefit from the consideration, their promise is presumed to be joint and several.

Here, Maremont, as a subscriber to the Center for Claims Resolution Agreement was

3

named as a releasee in each of the settlement agreements executed by the moving plaintiffs. Thus, Maremont received consideration from each of the moving plaintiffs. Having received consideration, both present and future, Maremont's liability is presumed to be joint and several pursuant to Civil Code section 1659.

Plaintiffs' counsel was never told during negotiation of the subject settlement agreements that the bankruptcy of one CCR member or the refusal by a CCR member to pay its allocated share would reduce the amount tendered or that plaintiffs would have to pursue the bankrupt CCR member's share in that company's bankruptcy proceedings. The settlement releases prepared by the CCR show on their face that the settlement was with all subscribers to the CCR in return for a lump sum payment. Consequently, Maremont is unable to rebut the presumption of joint and several liability and plaintiffs are entitled to judgment against Maremont for the total amount still owing under the settlement agreements.

Maremont has filed this motion to transfer the action to MDL 875 as a tactic designed to delay plaintiffs from receiving the full consideration they were promised. Plaintiffs initially brought this action in California State Court. Maremont removed the action to Federal Court based on diversity jurisdiction. Upon the removal of the action to the United States District Court for the Northern District of California, plaintiffs filed a motion for summary judgment which is presently pending in the district court. Plaintiffs contend that there is no need for discovery and that they are entitled to judgment against Maremont as a matter of law.

Maremont, recognizing that it has no defense to plaintiffs' claims under California law, makes a desperate attempt to avoid an early resolution of this case by asking this Panel to transfer the action to MDL 875 and Judge Weiner. This case is not appropriate for transfer to the MDL

4

875 for several reasons. First, this action does not meet the criteria for inclusion in MDL 875 because it does not involve a common issue of fact with the matters already consolidated as part of MDL 875. Second, transfer of this action will not be for the convenience of the parties and witnesses and will not promote the just and efficient conduct of the action. Rather, transfer to the MDL will delay resolution of the matter.

Maremont argues that this Panel has previously transferred lawsuits to MDL 875 that involved non-tort claims arising out of or otherwise related to asbestos personal injury claims. While it may be true that the Panel has transferred some satellite litigation to MDL 875, Maremont fails to present any case where the Panel transferred to MDL 875 a breach of contract action arising from a settlement of state court litigation where the breach of contract action was filed in state court and removed to federal court by the defendant based on diversity jurisdiction.

While it may make sense to have non-personal injury claims transferred to Judge Weiner when he is also overseeing the related personal injury action that justification does not exist in this case. Here, because the underlying action was brought and resolved in state court Judge Weiner has no familiarity with the issues involved in this case and there would be saving of judicial resources by having Judge Weiner, rather than the court where the matter is presently pending, handle the pre-trial aspects of this case.

Maremont's argument that Judge Weiner has already ruled on the precise issue raised by this case is false. Maremont provides three instances where Judge Weiner ruled on the issue of joint and several liability of CCR members. However, Judge Weiner's ruling arose in the context of motions to enforce settlements by plaintiffs in action that were already transferred to his docket by this Panel. Since those matters settled while they were on Judge Weiner's docket, motions

5

to enforce the settlements had to be heard by Judge Weiner. None of these actions involved Judge Weiner deciding the issue of joint and several liability under California law.

It appears that Maremont by making this motion to transfer the case to Judge Weiner is engaging in forum shopping. Believing that Judge Weiner has already ruled in its favor on this issue, Maremont is attempting to have this Panel transfer this case to Judge Weiner so it can make a motion for summary judgment before that Court.

## II.    ARGUMENT

### A.    <u>This Action Does Not meet the Standards For Transfer Under Section 1407</u>

The statute that authorizes the Panel to transfer an action for consolidation and coordinated pretrial proceedings requires a finding that the action involves one or more common questions of fact and that the transfer will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. <u>**28 U.S.C.1407 (a)**</u>. This action meets none of the requirements for transfer and the Panel should deny Maremont's motion.

This is a straightforward breach of contract action brought by several state court plaintiffs who settled their personal injury actions with the several members of the Center for Claims Resolution for a single lump sum amount. Each plaintiff fulfilled all of their obligations under the settlement agreements. When it came time for the CCR to forward the settlement checks each plaintiff received substantially less than the agreed to amount. CCR claimed it was entitled to tender less than the agreed to amount due to the bankruptcy filing by Armstrong World Industries, a CCR member at the time of the settlement with each plaintiff. In one instance, CCR also claimed that another CCR member had withdrawn from CCR and refused to pay its share of the settlements made while it was still a member of CCR.

6

The plaintiffs filed a breach of contract action against defendant Maremont in California Superior Court for the City and County of San Francisco, the court where their personal injury actions were venued. On February 1, 2001, Maremont removed the action to federal court based on the diversity jurisdiction under 28 U.S.C. 1441. The matter was assigned to the Honorable James Larson, Magistrate, for all purposes. Believing that the issues raised by their complaint are questions of law, plaintiffs filed a motion for summary judgment against Maremont and the motion is scheduled to be heard by the Court on May 16, 2001. A copy of plaintiffs' motion for summary judgment is attached as Exhibit A.

In order to avoid the quick resolution of this case, defendant Maremont on April 10, 2001 filed its motion to transfer this action to MDL 875. This action should not be transferred to MDL 875 because it does not meet the requirements for transfer.

This action does not involve one or more common questions of fact with the actions already transferred to Judge Weiner. Defendant Maremont argues that the common issue of fact is whether or not the individual members of CCR are jointly liable for the entire settlement amount agreed to between CCR and each of the individual plaintiffs in this action. Maremont also argues that Judge Weiner has already ruled on this precise issue. **Memorandum In Support of Motion By Maremont To Transfer And Consolidate With MDL 875 ("Maremont's Brief")**, pp. 2,4 & 8-9.

Maremont is wrong on both issues. Because this case was removed to federal court on the basis of diversity jurisdiction, the law of the transferor court would follow the transfer of this action to MDL 875. **Van Dusen v. Barrack**, 376 U.S. 612 (1964); **In Re Dow Co. "Sarabond" Products Liability Litigation**, 666 F.Supp. 1466, 1468 (D.Colo.1987). Thus, if the Panel were

7

to transfer this action to MDL 875, Judge Weiner would have to decide issues under California law. It is the requirement that this case be decided under California law that results in this action not meeting the requirements for transfer under section 1407. This case simply has no common issue of fact with any other case already a part of MDL 875.

Likewise, the potential transfer of this action to MDL 875 would not be for the convenience of the parties or witnesses and certainly will not promote the just and efficient conduct of this action. This is a simple breach of contract action. Under California law when all parties who unite in a promise receive some benefit from the consideration their promise is presumed to be joint and several. **California Civil Code**, Section 1659.

Here, Maremont cannot argue that it did not receive some consideration from each of the plaintiffs here. Each plaintiff released Maremont, and all other CCR members, from all claims arising from the plaintiffs exposure to asbestos and each plaintiff executed a Hold Harmless agreement that binds their estate to defend and indemnify Maremont if any plaintiffs' heirs sue as a result of asbestos exposure. Maremont also received a dismissal with prejudice as to each plaintiffs' pending personal injury action. Maremont lacks any evidence that could rebut the presumption of joint and several liability under California law.

Transfer of this action will not promote the just and efficient conduct of this action. This matter should be resolved as a matter of law as the facts are not in dispute. Unlike the traditional tort action transferred to Judge Weiner, this case does not need extensive pre-trial discovery. Plaintiffs have already filed a summary judgment motion arguing that they are entitled to judgment as a matter of law.

With all due respect to Judge Weiner, the fact is that the district court in which this matter

8

is pending is in at least an equal position to decide this case under California law.  It is only happenstance that this breach of contract action involves asbestos-related issues.  The mere fact that the underlying litigation involved claims relating to asbestos exposure does not require the Panel to send this case to MDL 875.

Maremont argues that Judge Weiner's previous rulings on the issue of joint and several liability among the CCR members shows that this case raises matters such as the historical understandings of the counsel and parties to asbestos litigation and the nature of the relationships among the defendants.  **Maremont's Brief**, p.9, and Exhibit B-D.  This argument lacks merit. Judge Weiner's previous rulings were not made under California law as is required here.

Previously, Judge Weiner ruled on plaintiffs' motions to enforce settlement agreement against another CCR member, GAF.  GAF's membership in CCR was terminated and GAF refused to pay its allocated share of settlements entered into while it was still a member of CCR. There, the underlying actions were part of MDL 875 at the time of the settlement between those plaintiffs and CCR.  Given that the cases settled while still part of Judge Weiner's docket meant that Judge Weiner was required to resolve the motions to enforce the settlement agreements.

The moving plaintiffs there sought enforcement against GAF, not the other members of CCR.  Unlike here where the defaulting CCR members are not parties to plaintiffs' breach of contract action, GAF was a party to the actions where Judge Weiner previous ruled.  All Judge Weiner's ruling held was that GAF was required to pay those plaintiffs its share of the settlements entered into while GAF was a member of CCR.  None of Judge Weiner's previous ruling involved the application of California contract law.  **Maremont's Brief**, Exhibits B-D.

Further, unlike here we do not know the terms and conditions of the settlement

9

agreements involved in Judge Weiner's previous rulings.  Here, the terms of the settlement agreements clearly indicate that Maremont was a party to each of the settlements.  Each settlement agreement specifically names Maremont as one of the releasees.  Copies of the subject settlement agreements are attached hereto as Exhibit B.

Maremont also argues that Armstrong's bankruptcy impacts thousands of asbestos personal injury actions and that is "imperative" to Judge Weiner's "overall management of this litigation" that he have jurisdiction over matters such as this.  **Maremont's Brief**, p. 10.  This is also a false argument.  Maremont provides no other pending cases where the issue of its joint liability for settlements by CCR must be decided under California law.  A ruling by the court where this matter is now pending will have no impact on Judge Weiner's overall management of his docket.

It is clear that Maremont is using the fact that Judge Weiner has ruled on the issue of joint and several liability by CCR members in other contexts to persuade this Panel to transfer this case to Judge Weiner.  In effect, by seeking transfer to MDL 875, Maremont is engaging in forum shopping because Maremont believes that Judge Weiner may be predisposed to ruling in its favor. Under the guise of requesting transfer of this action to MDL 785 for pre-trial proceedings, Maremont is hoping to get this matter before a Court where it believes it will prevail.  The Panel should not reward such blatant forum shopping by granting Maremont's motion.

**B.      That This Panel Had Previously Transferred Non-Personal Injury Claims Relating To Asbestos Personal Injury Litigation Does Not Justify Transferring This Action To MDL 875**

Maremont argues that because the Panel has previously transferred non-personal injury claims arising in the asbestos context to MDL 875 the Panel should likewise transfer this action. **Maremont's Brief** pp. 5-8, Exhibits E-M.  This again is a meritless argument by Maremont.

10

While it is true that the Panel has transferred actions containing unique claims to MDL 875, Maremont offers no example where the Panel has sent a breach of contract action involving the settlement of state court litigation to Judge Weiner's docket after the defendant removed the state court action to federal court based on diversity jurisdiction.

Each of the examples cited by Maremont involves matters originally brought in federal court and related to matters already on Judge Weiner's docket.  For instance, in transferring **American President Companies v. Babcock & Wilcox**, **Id.**, Exhibit F, an indemnification action between asbestos defendants, the Panel found that resolution of the indemnification issue would involve the same questions of fault and liability found not only in the MDL 875 actions in general, but in particular in the cross-claims filed or anticipated to be filed by ship owners in the MDL 875 maritime asbestos actions.  **Id.**, Exhibit F, p.1.

Likewise, in the transfer order involving **Owens-Illinois v. T&N Ltd**, **Id.**, Exhibit I, the Panel found that the factual allegations of that complaint overlapped with those in many cases already on the MDL 875 docket where both the plaintiff's and defendants' knowledge of and conduct concerning the health hazards of asbestos were at issue.  **Id.**, Exhibit I, p.1.  In **Raymark Industries v. Baron et al.**, Exhibits J,K & L. the Panel found that this action challenging attorneys professional conduct in asbestos cases was expected to raise issues concerning the viability of the underlying asbestos products liability claims and also raises questions of judicial management and discovery that are already subject to the jurisdiction of Judge Weiner.  **Id.** Exhibit J, p. 1.

None of these decisions involve a case where this Panel transferred a non-personal injury action arising from asbestos litigation to MDL 875.  Here, the present action is not related to any

11

action already on Judge Weiner's docket. Plaintiffs are unaware of any matter now pending on Judge Weiner's docket that solely involves the interpretation of settlement agreements under California law. A transfer of this action to MDL 875 would in no way promote the just and efficient conduct of this action. Rather, transfer to MDL 875 of this action would result in the delay of plaintiffs obtaining the justice they are entitled to. Many of the plaintiffs in this action are seriously ill from their asbestos-related disease and are expected to die soon. Delaying resolution of their claims by transferring this action to the already extremely crowded MDL 875 docket would result in their inability during their lifetime to obtain the full consideration they agreed to in turn for dismissing their claims against Maremont.[2]

Maremont finally speculates that there will be substantial litigation resulting from the settlement defaults by former CCR members, Armstrong, ACMC and GAF and that this somehow justifies sending this action to Judge Weiner. **Maremont's Brief**, pp.9-10. This is an internal issue among the present and former members of CCR and should not impact the Panels decision as to whether this case requires transfer to MDL 875. Maremont alleges that those defaults amount to many of millions of dollars and impact thousands of personal injury cases, thus it is imperative to Judge Weiner's "overall management of this litigation" that he have jurisdiction over matters like the one at issue. **Id.** This argument has already been rejected by several district courts in either remanding actions back to state court or in refusing to transfer similar actions to the Armstrong bankruptcy proceedings.

In **In Re All Kelly & Ferraro Asbestos Cases v. G-1 Holdings**, U.S.D.C. Northern

---

[2]. As noted by the caption of this action one of the original plaintiffs, Maurice Apley has already succumbed to his asbestos-related mesothelioma and his personal representative is the named plaintiff in the action.

12

District of Ohio, Case No. 1:00CV20010[3], the plaintiffs moved to enforce their settlement agreements entered into with CCR in Ohio State Court.  One of the defendants removed the action to federal court claiming that the federal courts had jurisdiction over the matter because of the bankruptcy filing by Armstrong. **Id.,** p.1-2.  Plaintiffs moved to either remand the action or in the alternative, asked the Court abstain from exercising its jurisdiction. **Id.,** p.2.

The Court ruled that it had jurisdiction over the matter as a result of Armstrong's bankruptcy filing.  **Id.** at pp.7-8.  However, the Court also exercised its discretion under 28 U.S.C. 1452 (b) and remanded the matter to state court. **Id.** at pp.12-13.  The Court relying on the district court's decision in **Painter v. Certainteed Corp and T&N,** U.S.D.C. (N.D.Texas) held that the case involved state issues easily handled by a state court.  The Court also found that allowing those proceedings to remain in federal court will not cure duplication of judicial resources and that the potential for inconsistent results from divergent judgments on the same state law issues required that the matter be remanded.  **Id.**

In **Painter**, the plaintiffs filed a motion in state court to enforce the settlement agreement against two members of CCR after the Armstrong bankruptcy filing.   The defendants removed the action to federal court.  Plaintiffs moved that the case be remanded back to state court because the enforcement action was not a core proceeding of Armstrong's bankruptcy filing and therefore the court lacked subject matter jurisdiction.[4]  The Court also held that even if it had subject matter jurisdiction it had discretion not to exercise its jurisdiction and determined it would

---

[3].  A copy of the Court's Memorandum Of Opinion and Order is attached hereto as Exhibit C.

[4].  A copy of the transcript of the motions hearing and a copy of the court's order remanding the matter to state court is attached as Exhibit D.

13

not exercise jurisdiction in that case.

Both of these Courts rejected CCR's argument that the number of cases resulting from Armstrong's bankruptcy requires the matters be consolidated in one court, there the Armstrong bankruptcy proceedings.  Thus, it follows, that Maremont's allegations of a potential onslaught of litigation over this issue does not require the Panel to transfer this case to the coordinated asbestos docket.

## III.   CONCLUSION

By filing this motion to transfer the action to MDL 875 it is clear that Maremont is attempting to delay resolution of the matter and at the same time is engaging in forum shopping because it believes that Judge Weiner is predisposed to its position based on his prior rulings. This Court should not allow Maremont to avoid its obligation to pay the settlement amounts these plaintiffs accepted in return for releasing, defending and indemnifying Maremont and the other CCR members.

This action does not belong in MDL 875.  The action does not meet the requirements for transfer under section 1407 and the Panel should deny Maremont's motion to transfer.

DATED:  April 27, 2001          Respectfully submitted,

MARK L. NISSENBAUM
WARTNICK, CHABER, HAROWITZ & TIGERMAN
101 California Street, Suite 2200
San Francisco, CA 94121
(415) 986-5566

Counsel for Plaintiffs
ROLANDO DOVAL; CONSUELO DOVAL; FLOYD
ROGERS; MARGARET ROGERS; HERBERT GROSSICH;

14

ELAINE GROSSICH; DALL DEWEESE; TOMIANNE
WILEY; DIANNA EDWARDS, as Personal Representative
of MAURICE APLEY, Decedent;

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 3 0 2001

FILED
CLERK'S OFFICE

1

## PROOF OF SERVICE BY MAIL

2   I, the undersigned, declare that I am over the age of 18 years, and not a party to the within
entitled cause of action.  My business address is 101 California Street, Suite 2200, San Francisco,
3   California 94111, and I am employed in the City and County of San Francisco, State of California.

4   On the date last written herein, I served the following documents:

5   **PLAINTIFFS' MEMORANDUM IN RESPONSE TO DEFENDANT MAREMONT'S
MOTION TO TRANSFER AND CONSOLIDATE WITH MDL 875; PROOF OF
6   SERVICE; REASONS WHY ORAL ARGUMENT SHOULD BE HEARD**

7   by placing for collection and deposit in the United States mail a copy of said document at 101
California Street, Suite 2200, in San Francisco, California, in a sealed envelope, with postage fully
8   prepaid, addressed to:

9   Clerk of the U.S. District Court
Northern District of California
10   450 Golden Gate Avenue
P.O. Box 36060
11   San Francisco, CA  94102-3489

12   Chris Sagers, Esq.
Shea & Gardner
13   1800 Massachusetts Ave., N.W.
Washington, D.C.  20036-1872
14   Counsel for Maremont Corp.

15   Gene Lock, Esq.
Greitzer & Locke
16   1500 Walnut Street
Philadelphia, PA  19102
17   Plaintiffs' Liaison Counsel

18   Richard C. Binzley, Esq.
Thompson, Hine & Plory
19   127 Public Square
3900 Key Center
20   Cleveland, OH  44114
Lead Counsel for Defts in
21   Seaman Cases

22   Edward J. Cass, Esq.
Gallagher, Sharp, et al.
23   Bulkley Bldg., 7th Floor
1501 Euclid Avenue
24   Cleveland, OH  44115
Counsel for Goodall Defts
25
David a. Damico, Esq.
26   Burns, White & Hickton
2400 Fifth Avenue Place
27   120 Fifth Avenue
Pittsburg, PA  15222
28   Counsel for Fela Deft.

Raymond P. Porceno, Esq.
Porceno & Hannon
Philadelphia Bourse Bldg., Suite 1000
Independence Mall East
Philadelphia, PA 19106
Counsel for Fela Plaintiffs

Ellen B. Furman, Esq.
Goldfein & Joseph
1600 Market Street, 33rd Floor
Philadelphia, PA 19103
National Counsel

Susan M. Hanson, Esq.
Stich, Angell, Kreidler & Muth
The Crossings, Suite 120
250 - 2nd Avenue South
Minneapolis, MN 55401
National counsel

David C. Landin, Esq.
Hunton & Williams
Riverfront Plaza, East Tower
991 East Byrd Street
Richmond, VA 23219
Counsel for Peripheral Deft.

Ronald L. Motley, Esq.
Ness, Motley, et al.
38 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465
Plaintiffs' Liaison Counsel

Donald A. Powell, Esq.
Buckingham, Doolittle & Burroughs
50 South Main Street
P.O. Box 1500
Akron, OH 44309
National Counsel

John J. Repcheck
Marks O'Neill
3200 Gulf Tower
707 Grant Street
Pittsburg, PA 15219
Counsel for Peripheral Deft.

John D. Roven, Esq.
John Roven & Associates
2190 North Loop West, Suite 410
Houston, TX 77018
Counsel for Fela Plaintiffs

Richard D. Schuster, Esq.
Vorys, Sater, Seymour & Pease
51 East Gay Street
P.O. Box 1008
Columbus, OH  43216
National Coordinating Counsel for BF Goodrich Co.

Robert N. Spinelli, Esq.
Kelley, Jasons, McGuire & Spinelli, LLP
Centre Square West, 15th Floor
Philadelphia, PA  19102
Deft's Liaison Counsel

Robert E. Swickle, Esq.
Jaques Admiralty Law Firm
1370 Penobacot Bldg.
Detroit, MI  48226
National Counsel

Andrew J. Trevelise
Reed, Smith, Shaw & McClay
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103
Deft's Liaison Counsel

Neil Selman, Esq.
Selman, Breitman & Burgess
11766 Wilshire Blvd., 6th Floor
Los Angeles, CA  90025
National Counsel

James K. Weston II
Tom Riley Law Firm
4040 First Avenue NE
P.O. Box 998
Cedar Rapids, IA  52406
National Counsel for Raymark Industries, Inc.

Executed on April 27, 2001 at San Francisco, California.

Christina Kane

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 3 0 2001

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| ASBESTOS PRODUCTS LIABILITY LITIGATION | ) MDL 875 |
| | ) (Hon. Charles Weiner) |
| ROLANDO DOVAL; CONSUELO DOVAL; FLOYD | ) |
| ROGERS; MARGARET ROGERS; HERBERT GROSSICH; | ) CASE No. C01-00540 JL |
| ELAINE GROSSICH; DALL DEWEESE; TOMIANNE | ) (N.D. CAL) |
| WILEY; DIANNA EDWARDS, as Personal Representative | ) |
| of MAURICE APLEY, Decedent; | ) **PLAINTIFFS' REASONS** |
| | ) **WHY ORAL** |
| Plaintiffs, | ) **ARGUMENT SHOULD** |
| | ) **BE HEARD** |
| v. | ) |
| | ) |
| MAREMONT CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Pursuant to Rules of Procedure 16.1(b), Plaintiffs hereby provide the Panel their reasons why the Panel should hear oral argument on Defendant Maremont's Motion to Transfer and Consolidate with MDL 875:

2

The Panel should hold oral argument on this motion because defendant Maremont's motion raises unique issues. Primarily, the motion asks the Panel to transfer a straightforward breach of contract action originally filed in California State Court and removed to Federal Court by the Defendant on the basis of diversity jurisdiction. Whether a simple breach of contract action that merely arises out of a state court asbestos-related personal injury action, requires transfer to MDL 875 for coordinated pretrial proceedings has not been decided by this panel.

While defendant points out that this Panel has previously transferred matters to MDL 875, that included claims other than asbestos-related personal injury actions the Panel noted in transferring those prior satellite actions that there was always related actions already a part of MDL 875. Here, the pending action is not related to any matters now pending on the MDL 875 docket because since the Federal Court jurisdiction is based on diversity, the law of the forum state must be applied.

This motion raises issue not previously ruled on by the Panel and oral argument may assist the Panel in reaching a fair and just result.

Dated:  April 27, 2001          Respectfully submitted,

*Mark L. Nissenbaum*

Mark L. Nissenbaum
WARTNICK, CHABER, HAROWITZ & TIGERMAN
101 California Street, Suite 2200
San Francisco, CA 94111

Attorneys for Plaintiffs
Rolando and Consuelo Doval, Floyd and Margaret Rogers, Herbert and Elaine Grossich, Dall Deweese and Tomianne Wiley, and Diana Edwards as Personal Representative of Maurice Apley

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 3 0 2001

FILED
CLERK'S OFFICE

**EXHIBIT A**

1   HARRY F. WARTNICK  (Bar No. 54761)
    MARK L. NISSENBAUM (Bar No. 102211)
2   WARTNICK, CHABER, HAROWITZ & TIGERMAN
    101 California Street, Suite 2200
3   San Francisco, California  94111
    Telephone    (415) 986-5566
4
5   Attorneys for Plaintiff

6
7                    UNITED STATES DISTRICT COURT

8                    NORTHERN DISTRICT OF CALIFORNIA

9                            SAN FRANCISCO

10
    ROLANDO DOVAL; CONSUELO DOVAL; FLOYD          )   CASE No. C01-00540 JL
11  ROGERS; MARGARET ROGERS; HERBERT              )   ARB
    GROSSICH; ELAINE GROSSICH; DALL DEWEESE;      )
12  TOMIANNE WILEY; DIANNA EDWARDS, as Personal   )
    Representative of MAURICE APLEY, Decedent;    )
13                                                )   PLAINTIFFS' NOTICE
            Plaintiffs,                           )   OF MOTION FOR
14                                                )   SUMMARY JUDGMENT
        vs.                                       )
15                                                )
    MAREMONT CORPORATION,                         )   DATE: May 16, 2001
16                                                )   TIME: 9:30 a.m.
            Defendant.                            )   COURTROOM: C
17                                                )   JUDGE:  Magistrate
                                                  )   James Larson
18  _____     )

19

20      TO ALL PARTIES HEREIN AND TO THEIR ATTORNEYS OF RECORD:

21          NOTICE IS HEREBY GIVEN that on May 16, 2001, at 9:30 a.m., or as soon

22  thereafter as this matter can be heard in Courtroom C, of the above-entitled Court, located at

23  450 Golden Gate Avenue, San Francisco, California, plaintiffs will move this Court for an

24  order granting summary judgment.

25          Plaintiffs request that this Court grant summary judgment pursuant to F.R.C.P. section

26  56(c) because there is no genuine issue as to any material fact and plaintiffs are entitled to

27  judgment in their favor as a matter of law because under California law defendant, as a

28  member of the Center for Claims Resolution, is jointly and severally liable for that portion of

1  the agreed upon settlement amounts that reflect shares of other members of the Center for

2  Claims Resolution that failed to pay their share of the settlement amount.  Plaintiffs are also

3  entitled to reasonable attorneys fees and interest in the amount of 10% per annum since the

4  date of breach.

5       This motion is based on this Notice of Motion and Motion, the accompanying

6  Memorandum of Point and Authorities, the Declaration of Harry F. Wartnick, all pleadings

7  and papers on file in this action and upon such other matters as may be presented to the Court

8  at the time of the hearing.

9  DATED:  April 3, 2001

10                WARTNICK, CHABER, HAROWITZ

                         & TIGERMAN

12  BY

13                Mark L. Nissenbaum

              Attorney for Plaintiffs

1  HARRY F. WARTNICK  (Bar No. 54761)
   MARK L. NISSENBAUM (Bar No. 102211)
2  WARTNICK, CHABER, HAROWITZ & TIGERMAN
   101 California Street, Suite 2200
3  San Francisco, California  94111
   Telephone     (415) 986-5566
4
5  Attorneys for Plaintiff

6
               UNITED STATES DISTRICT COURT
7
             NORTHERN DISTRICT OF CALIFORNIA
8
                     SAN FRANCISCO
9

10
   ROLANDO DOVAL; CONSUELO DOVAL; FLOYD      )   CASE No. C01-00540 JL
11 ROGERS; MARGARET ROGERS; HERBERT          )   ARB
   GROSSICH; ELAINE GROSSICH; DALL DEWEESE;  )
12 TOMIANNE WILEY; DIANNA EDWARDS, as Personal )
   Representative of MAURICE APLEY, Decedent; )
13                                           )   **PLAINTIFFS'**
          Plaintiffs,                        )   **MEMORANDUM OF**
14                                           )   **POINTS AND**
       vs.                                   )   **AUTHORITIES IN**
15                                           )   **SUPPORT OF MOTION**
   MAREMONT CORPORATION,                     )   **FOR SUMMARY**
16                                           )   **JUDGMENT**
          Defendant.                         )
17                                           )   **DATE:** May 16, 2001
                                             )   **TIME:** 9:30 a.m.m
18 _____   **COURTROOM:** C
                                                 **JUDGE:** Magistrate
19                                               James Larson

20

21                      **INTRODUCTION**

22        This is a straightforward breach of contract action brought against Defendant Maremont

23 Corporation ("Maremont).  The underlying facts are not in dispute.  Thus, plaintiffs[1] move

24 the Court for summary judgment under FRCP 56(c) because there is no genuine issue of fact

25

26 _____
      [1]. Plaintiffs in this action are ROLANDO DOVAL and CONSUELO DOVAL; FLOYD
27 ROGERS and MARGARET ROGERS; HERBERT GROSSICH and ELAINE GROSSICH; DALL
   DEWEESE and TOMIANNE WILEY; and DIANNA EDWARDS, as Personal Representative
28 of MAURICE APLEY, Decedent.

1  Corporation.

2        Each plaintiff previously filed a personal injury action against numerous defendants

3  alleging injuries either as a result of their exposure to asbestos or claims for loss of

4  consortium resulting from their spouses asbestos-related illnesses.  During the course of these

5  personal injury actions plaintiffs agreed to settle their claims with the defendants who made up

6  the Center for Claims Resolution, ("CCR").  Maremont was a member of CCR when each of

7  the plaintiffs settled their claims with the CCR defendants.  CCR acts as an agent for

8  Maremont and the other companies that comprise the CCR in the litigation, negotiation and

9  settlement of asbestos-related claims.

10        Since late 1988, the CCR defendants, including Maremont, have settled

11  approximately 1,100 asbestos-related personal injury and wrongful death claims with clients

12  represented by Mr. Wartnick.  Each time the CCR defendants demanded, as a condition of the

13  settlement, that the plaintiffs release each and every member of the CCR regardless of whether

14  or not the particular CCR defendant was actually named in the individual lawsuit. The CCR

15  defendants also demanded that each plaintiff execute a dismissal with prejudice of any pending

16  action and also required plaintiffs to defend and indemnify each CCR member if plaintiffs'

17  heirs filed a wrongful death action.

18        In each of these settlements CCR offered and settled for one lump sum on behalf of all

19  of the CCR defendants, including Maremont.  Plaintiffs' counsel was never informed as to

20  how the settlement amount was allocated among the various CCR defendants.  Plaintiffs, in

21  consideration of the lump sum settlement amount, provided each of the CCR defendants,

22  including Maremont, with a signed compromise and release of all claims including unknown

23  and future claims and a dismissal with prejudice of any action or actions for asbestos-related

24  personal injury or death.  As to each of the previous settlements, the settlement payment was

25  tendered by a single check issued by CCR.

26        Following the pattern established between CCR and plaintiffs' counsel, Mr. Wartnick,

27  each plaintiff in this case, agreed to settle his or her asbestos-related injury claims with the

28  CCR defendants, including Maremont, for a lump sum amount.  In each instance, the

1    plaintiffs, executed compromises and releases of all of their present and future, known and

2    unknown claims against all CCR members including Maremont. CCR prepared each of the

3    release and compromise and hold harmless agreement and prepared the dismissal with

4    prejudice as to all CCR members. Each plaintiff complied with the terms of the settlement

5    agreement by executing a compromise and release drafted by CCR and executing and filing a

6    dismissal with prejudice of their pending personal injury actions as to all the CCR defendants.

7            Regarding each of the settlements at issue here, initially CCR sent plaintiffs' counsel a

8    check in an amount substantially less than the agreed to settlement amount. CCR informed

9    plaintiffs' counsel that the amount tendered differed from the agreed to amount due to the

10   bankruptcy filing of Armstrong World Industries. CCR claimed that the amount tendered

11   reflected the shares allocated to all of the CCR members except for the share allocated to

12   Armstrong. CCR also added an endorsement to the settlement checks indicating if plaintiffs

13   negotiated these checks they were waiving their rights to seek payment from each of the CCR

14   defendants except Armstrong. CCR indicated that plaintiffs would be required to make claims

15   for the amount owing in the ongoing Armstrong bankruptcy proceeding.[2]

16           Plaintiffs refused to accept the settlement checks which included this endorsement.

17   Further negotiations between CCR and plaintiffs counsel resulted in CCR issuing new

18   settlement drafts still in amounts less than previously agreed to but without the previous

19   endorsement. CCR has subsequently made payments to plaintiffs that CCR claims reflects the

20   total amount of the agreed to settlement minus the amount the CCR claim it allocated to

21   Armstrong and in the Apley case the refusal by the Asbestos Claims Management Corporation

22   to pay its allocated share. Plaintiffs here seek the remaining amounts they are due according

23   to the settlement agreements from defendant Maremont because under California law,

24   Maremont is jointly and severally liable for the full amount of the settlement.

25

26   _____

27   [2]. In the Apley matter, CCR also claimed that its payment was less than the agreed to amount
     because another former CCR member, Asbestos Claims Management Corporation had withdrawn
     from the CCR and had refused to pay its allocated share even though it had been billed for these
28   sums.

1      Under California law, a settlement agreement is a contract and is to be interpreted in

2  same manner as any other contract.  California Civil Code section 1659 provides that where

3  all parties who unite in a promise receive some benefit from the consideration, their promise is

4  presumed to be joint and several.

5      Here, Maremont, as a subscriber to the Center for Claims Resolution Agreement was

6  named as a releasee in each of the settlement agreements executed by the moving plaintiffs.

7  Thus, Maremont received consideration from each of the moving plaintiffs in that the plaintiffs

8  released Maremont from all claims relating to asbestos exposure suffered by plaintiff and all

9  wrongful death claims by plaintiffs' heirs.  Having received consideration, both present and

10  future, Maremont's liability is presumed to be joint and several pursuant to Civil Code section

11  1659.

12      Maremont lacks any evidence that the parties understood that Maremont's liability was

13  anything but joint and several. Plaintiffs' counsel was never told during negotiation of the

14  subject settlement agreements that the bankruptcy of one CCR member or the refusal by a

15  CCR member to pay its allocated share would reduce the amount tendered or that plaintiffs

16  would have to pursue the bankrupt CCR member's share in that company's bankruptcy

17  proceedings. The settlement releases prepared by the CCR show on their face that the

18  settlement was with all subscribers to the CCR in return for a lump sum payment.

19  Consequently, Maremont is unable to rebut the presumption of joint and several liability and

20  plaintiffs are entitled to judgment against Maremont for the total amount still owing under the

21  settlement agreements.

22      Under California law, plaintiffs are also entitled to recover the reasonable attorney's

23  fees expended in bringing this action and interest on the amount of money owed.  Each of the

24  settlement agreements at issue include a provision requiring plaintiffs to pay for attorneys'

25  fees, expenses and costs incurred as a result of any proceedings brought by plaintiffs.

26  California Civil Code section 1717 provides that in a breach of contract action if the contract

27  provides for payment of attorneys fees and costs in the event of a breach then this obligation is

28  reciprocal and the prevailing party in a breach of contract action is entitled to attorneys fees.

1    California Civil Code section 3289(b) provides that for all contracts entered into after

2    January 1, 1986 that do not stipulate a legal rate of interest, the obligation shall bear 10%

3    interest per year after a breach.  Each of the subject settlement agreements is silent regarding

4    the rate of interest in the event of a breach.  Thus, plaintiffs are entitled to interest from the

5    date of breach at rate of 10% per annum.

6        Each of the moving plaintiffs are entitled to summary judgment on their breach of

7    contract action against Maremont.  Maremont received consideration from each of the

8    plaintiffs in the form of a release of all present and future claims against Maremont for any

9    asbestos exposure for which Maremont could be found liable.  Maremont continues to receive

10   consideration from plaintiffs because they also agreed that their estates would indemnify and

11   hold harmless Maremont against any future claims brought by plaintiffs' heirs.  Having now

12   received this valuable consideration, California law provides that Maremont is jointly and

13   severally liable for the entire amount agreed to be paid by the Center for Claims Resolution

14   defendants as memorialized in the settlement agreements.

15                                    **STATEMENT OF FACTS.**

16       Defendant Maremont has been a member of the Center for Claims Resolution ("CCR")

17   since September 28, 1988.  **Answer of Maremont Corporation ("Maremont")**, para.2, p.1.

18   CCR has jointly represented numerous defendants in the litigation, negotiation and settlement

19   of asbestos claims since 1988.  Since its inception, the subscribers to the Center for Claims

20   Resolution Agreement have settled approximately 1,100 asbestos-caused personal injury and

21   wrongful death claims with clients represented by Harry F. Wartnick.  As a condition of each

22   settlement the CCR members demanded that the plaintiffs execute a release, as to each and

23   every then subscriber to the CCR agreement including Maremont, extinguishing all claims for

24   all injuries from these victims asbestos exposure.  Defendants also demanded and received a

25   dismissal with prejudice of the pending actions against all CCR members.  **Declaration of**

26   **Harry F. Wartnick ("Wartnick Declaration")**, para.2.

27       In each of these approximately 1,100 settlements, the negotiations took place between

28   Mr. Wartnick and a representative of CCR, acting as an agent for all CCR members.  The

1    CCR members, including Maremont, offered one lump sum settlement amount, in return for a

2    signed compromise and release of all claims against all CCR members and a dismissal with

3    prejudice. **Id.** para.3.

4           On October 22, 1999, plaintiff Dall Deweese and his spouse, Tomianne Wiley filed a

5    personal injury action in San Francisco Superior Court alleging that Mr. Deweese contracted

6    lung cancer resulting from exposure to asbestos fibers.  Ms. Wiley alleged loss of consortium

7    resulting from her spouse contracting lung cancer.  This complaint named several defendants

8    who were members of CCR. **Id.**, para.4.  On or about August 25, 2000, James McFadden, an

9    employee of CCR, acting on behalf of the CCR members, and Harry Wartnick, on behalf of

10   Mr. Deweese and Ms. Wiley, agreed to settle plaintiffs' asbestos-related personal injury and

11   potential wrongful death claims against the CCR members for the total payment of $135,000.

12   **Id.**,para. .

13          As conditions of the settlement, plaintiffs were required to sign a compromise and

14   release of all claims including unknown and future claims as to all CCR members.  Plaintiffs

15   were also required to execute a Hold Harmless Agreement, agreeing to indemnify and hold

16   harmless each and any CCR member in the event of any suit by plaintiffs' heirs.  **Id.**, para. .

17   The subscribers to the CCR Agreement prepared and sent to plaintiffs' counsel a compromise

18   and release of all claims and a request for dismissal with prejudice as to each subscriber to the

19   CCR Agreement was filed in the San Francisco Superior Court.  The executed settlement

20   agreement and filed copy of the dismissal with prejudice were returned to CCR in October of

21   2000.  Plaintiffs have performed all conditions, covenants and promises required on their part

22   in accordance with the settlement agreement.  **Id.**, para. .   A copy of the signed settlement

23   agreement and copy of the dismissal with prejudice are attached as Exhibit A to the

24   Declaration of Harry F. Wartnick.

25          On January 2, 2001, plaintiffs counsel received a payment from CCR in the amount of

26

27

28

1   $34,694.46, reflecting a partial amount of the agreed to settlement amount of $135,000.[3]

2   CCR informed plaintiffs counsel that the amount of the check tendered was less than the

3   agreed to amount due to the bankruptcy filing of one of the CCR members, Armstrong World

4   Industries on December 6, 2000.  Id., para..  A copy of the December 21, 2000 letter from

5   Jim McFadden to Harry Wartnick with attachment and a copy of the December 21, 2000

6   check from CCR in the amount of $762,688.11 with the endorsement regarding CCR's attempt

7   to claim accord and satisfaction is attached as Exhibit B to the Declaration of Harry F.

8   Wartnick.

9        CCR claimed that it was entitled to tender less than agreed to amount because under its

10   internal agreement between its member companies. there existed no joint and several liability

11   between the CCR defendants.  This assertion was made unilaterally and without regard to

12   California Law.  The tendered check also included an endorsement which attempted to impose

13   a condition that plaintiffs  negotiation of the check would constitute a full and complete accord

14   and satisfaction of all obligations owing by CCR members except Armstrong and will forever

15   discharge and release any and all claims against those member companies.  Id..

16        Plaintiffs refused to accept this partial payment and refused to negotiate the check

17   containing the endorsement.  Negotiations between plaintiffs counsel and CCR resulted in

18   CCR issuing a new payment in the amount of $34,694.46 which did not include any

19   endorsement regarding accord and satisfaction.  Presently, plaintiffs are entitled to

20   $100,305.54  more, which reflects the total agreed to settlement amount.  Id., para. 9.

21        On April 3, 2000, Rolando and Consuelo Doval filed a personal injury action in San

22   Francisco Superior Court alleging that Mr. Doval contracted mesothelioma as a result of his

23   exposure to asbestos.  Mrs. Doval alleged loss of consortium resulting from Mr. Doval's

24   contracting mesothelioma.  Plaintiffs' complaint named several CCR members, including

25   _____

26   [3].  On January 2, 2001, plaintiffs received several checks from CCR.  One of those checks
     was in the amount of $762,688.11 which CCR represented was payment for five separate

27   settlements of which four of those involved moving plaintiffs here including the Deweese, Doval,
     Grossich and Rogers settlements.  On that date, Plaintiffs also received a separate check in the

28   Apley settlement.

defendants' counsel.                                    6              PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1   defendant Maremont. On or about September 12, 2000, James McFadden, on behalf of the

2   CCR defendants including defendant Maremont, and Harry Wartnick, on behalf of the Dovals,

3   agreed to settle plaintiffs' asbestos-related personal injury and wrongful death claims against

4   the CCR members for the amount of $335,000. **Id.**, para.10.

5       Plaintiffs were required to sign a compromise and release of all claims including

6   unknown and future claims as to all CCR members.  Plaintiffs were also required to execute a

7   Hold Harmless Agreement, agreeing to indemnify and hold harmless each and any CCR

8   member in the event of any suit by plaintiffs' heirs. **Id.**, para.11.

9       The subscribers to the CCR Agreement prepared and sent to plaintiffs' counsel a

10  compromise and release of all claims and a request for dismissal with prejudice as to each

11  subscriber to the CCR Agreement.  The executed settlement agreement and filed copy of the

12  dismissal with prejudice were returned to CCR in late October or early November of 2000.

13  Plaintiffs have performed all conditions, covenants and promises required on their part in

14  accordance with the settlement agreement. **Id.**, para. 12.  A copy of the settlement agreement

15  and request for dismissal are attached as Exhibit C to the Declaration of Harry F. Wartnick.

16      On January 2, 2001, plaintiffs counsel received a payment from CCR in the amount of

17  $280,201.80, reflecting a partial amount of the agreed to settlement amount of $335,000.

18  CCR informed plaintiffs counsel that the amount of the check tendered was less than the

19  agreed to amount due to the bankruptcy filing of one of the CCR members, Armstrong World

20  Industries on December 6, 2000. **Id.**, para. 13.

21      CCR claimed that it was entitled to tender less than agreed to amount because under its

22  internal agreement between its member companies. there existed no joint and several liability

23  between the CCR defendants.  This assertion was made unilaterally and without regard to

24  California Law.  The tendered check also included an endorsement which attempted to impose

25  a condition that plaintiffs negotiation of the check would constitute a full and complete accord

26  and satisfaction of all obligations owing by CCR members except Armstrong and will forever

27  discharge and release any and all claims against those member companies. **Id.**, para. 14.

28      Plaintiffs refused to accept this partial payment and refused to negotiate the check

1   containing the endorsement.  Negotiations between plaintiffs counsel and CCR resulted in

2   CCR issuing a new check in the amount of $280,201.80, which did not include any

3   endorsement regarding accord and satisfaction.  Presently, plaintiffs are entitled to $54,798.20

4   more, which reflects the total agreed to settlement amount.  **Id.**, para. 15.

5        On February 24, 2000, Margaret and Floyd Rogers filed a personal injury action in San

6   Francisco Superior Court alleging that Floyd Rogers contracted mesothelioma as a result of his

7   exposure to asbestos.  Mrs. Rogers alleged loss of consortium resulting from her husband's

8   contracting mesothelioma.  Their complaint named several CCR members including defendant

9   Maremont.  On or about August 25, 2000, James McFadden on behalf of the CCR defendants

10   including defendant Maremont, and Harry Wartnick, on behalf of the Rogers, agreed to a

11   settlement of plaintiffs' asbestos-related personal injury and wrongful death claims against the

12   CCR members in the amount of $200,000.  **Id.**, para.16.

13        As conditions of the settlement, plaintiffs were required to sign a compromise and

14   release of all claims including unknown and future claims as to all CCR members.  Plaintiffs

15   were also required to execute a Hold Harmless Agreement, agreeing to indemnify and hold

16   harmless each and any CCR member in the event of any suit by plaintiffs' heirs.  **Id.**, para. .

17   The subscribers to the CCR Agreement prepared and sent to plaintiffs' counsel a compromise

18   and release of all claims and a request for dismissal with prejudice as to each subscriber to the

19   CCR Agreement.  The executed settlement agreement and filed copy of the dismissal with

20   prejudice were returned to CCR in late October or early November of 2000.  Plaintiffs have

21   performed all conditions, covenants and promises required on their part in accordance with the

22   settlement agreement.  **Id.**, para. .  A copy of the settlement agreement and request for

23   dismissal are attached as Exhibit D to the Declaration of Harry F. Wartnick.

24        On January 2, 2001, plaintiffs counsel received a payment from CCR in the amount of

25   $119,106.29, reflecting a partial amount of the agreed to settlement amount of $200,000.

26   CCR informed plaintiffs counsel that the amount of the check tendered was less than the

27   agreed to amount due to the bankruptcy filing of one of the CCR members, Armstrong World

28   Industries on December 6, 2000.

1    CCR claimed that it was entitled to tender less than agreed to amount because under its

2    internal agreement between its member companies. there existed no joint and several liability

3    between the CCR defendants.  This assertion was made unilaterally and without regard to

4    California Law.  The tendered check also included an endorsement which attempted to impose

5    a condition that plaintiffs  negotiation of the check would constitute a full and complete accord

6    and satisfaction of all obligations owing by CCR members except Armstrong and will forever

7    discharge and release any and all claims against those member companies.  **Id.**, para. 18.

8         Plaintiffs refused to accept this partial payment and refused to negotiate the check

9    containing the endorsement.  Negotiations between plaintiffs counsel and CCR resulted in

10   CCR issuing a new payment in the amount of $119,106.29, which did not include any

11   endorsement regarding accord and satisfaction.  Presently, plaintiffs are entitled to $80,893.71

12   more, which reflects the total agreed to settlement amount.  **Id.**, para. 19.

13        On February 24, 2000, Herbert and Elaine Grossich filed a personal injury action in

14   San Francisco Superior Court alleging that Mr. Grossich contracted mesothelioma as a result

15   of his exposure to asbestos.  Mrs. Grossich alleged loss of consortium resulting from her

16   spouse's contracting mesothelioma.  Their complaint named several CCR members including

17   defendant Maremont.  On or about August 25, 2000, James McFadden on behalf of the CCR

18   defendants, including defendant Maremont, and Harry Wartnick, on behalf of the Grossichs,

19   agreed to a settlement of plaintiffs' asbestos-related personal injury and wrongful death claims

20   against the CCR members in the amount of $300,000. **Id.**, para. 20.

21        As conditions of the settlement, plaintiffs were required to sign a compromise and

22   release of all claims including unknown and future claims as to all CCR members.  Plaintiffs

23   were also required to execute a Hold Harmless Agreement, agreeing to indemnify and hold

24   harmless each and any CCR member in the event of any suit by plaintiffs' heirs.  The

25   subscribers to the CCR Agreement prepared and sent to plaintiffs' counsel a compromise and

26   release of all claims and a request for dismissal with prejudice as to each subscriber to the

27   CCR Agreement.  The executed settlement agreement and filed copy of the dismissal with

28   prejudice were returned to CCR in late October or early November of 2000.  Plaintiffs have

1   performed all conditions, covenants and promises required on their part in accordance with the

2   settlement agreement.  **Id.**, para. 21.  A copy of the settlement agreement and request for

3   dismissal are attached as Exhibit E to the Declaration of Harry F. Wartnick.

4       On January 2, 2001, plaintiffs counsel received a payment from CCR in the amount of

5   $99,948.74, reflecting a partial amount of the agreed to settlement amount of $300,000.  CCR

6   informed plaintiffs counsel that the amount of the check tendered was less than the agreed to

7   amount due to the bankruptcy filing of one of the CCR members, Armstrong World Industries

8   on December 6, 2000.  **Id.**, para. 22.

9       CCR claimed that it was entitled to tender less than agreed to amount because under its

10  internal agreement between its member companies. there existed no joint and several liability

11  between the CCR defendants.  This assertion was made unilaterally and without regard to

12  California Law.  The tendered check also included an endorsement which attempted to impose

13  a condition that plaintiffs negotiation of the check would constitute a full and complete accord

14  and satisfaction of all obligations owing by CCR members except Armstrong and will forever

15  discharge and release any and all claims against those member companies.  **Id.**, para. 23.

16      Plaintiffs refused to accept this partial payment and refused to negotiate the check

17  containing the endorsement.  Negotiations between plaintiffs counsel and CCR resulted in

18  CCR issuing a new check in the amount of $99,948.74, which did not include any

19  endorsement regarding accord and satisfaction.  Presently, plaintiffs are entitled to

20  $200,051.26 more, which reflects the total agreed to settlement amount plus interest and

21  attorneys fees.  **Id.**, para. 24.

22      On October 22, 1999, Maurice Apley filed a personal injury action in San Francisco

23  Superior Court alleging that he contracted mesothelioma as a result of his exposure to

24  asbestos.  Mr. Apley's complaint named several CCR members including defendant

25  Maremont.  On or about May 18, 2000, James McFadden on behalf of the CCR defendants,

26  including defendant Maremont, and Harry Wartnick, on behalf of Mr. Apley, agreed to a

27  settlement of plaintiffs' asbestos-related personal injury and wrongful death claims against the

28  CCR members in the amount of $200,000.  **Id.**, para. 25.  Mr. Apley passed away on June 21,

1   2000.  On August 15, 2001, Dianna Edwards, Mr. Apley's daughter, was named his personal

2   representative by the Superior Court of California, Calaveras County.[4]

3       As conditions of the settlement, Mrs. Edwards, as Mr. Apley's personal representative,

4   was required to sign a compromise and release of all claims including unknown and future

5   claims as to all CCR members.  Mrs. Edwards was also required to execute a Hold Harmless

6   Agreement, agreeing to indemnify and hold harmless each and any CCR member in the event

7   of any suit by plaintiffs' heirs.  The subscribers to the CCR Agreement prepared and sent to

8   plaintiffs' counsel a compromise and release of all claims and a request for dismissal with

9   prejudice as to each subscriber to the CCR Agreement was filed in the San Francisco Superior

10  Court.  The executed settlement agreement and filed copy of the dismissal with prejudice were

11  returned to CCR in November of 2000.  Plaintiff has performed all conditions, covenants and

12  promises required on her part in accordance with the settlement agreement.  **Id.**, para. 26.   A

13  copy of the settlement agreement and request for dismissal are attached as Exhibit G to the

14  Declaration of Harry F. Wartnick.

15      On January 2, 2001, plaintiffs counsel received a check from CCR in the amount of

16  $42.836.74, reflecting a partial amount of the agreed to settlement amount of $200,000.  CCR

17  informed plaintiffs counsel that the amount of the check tendered was less than the agreed to

18  amount due to the bankruptcy filing of one of the CCR members, Armstrong World Industries

19  on December 6, 2000 and the fact that another former CCR member, Asbestos Claims

20  Management Corporation ("ACMC") have refused to pay their share of previously negotiated

21  settlements, despite being billed for those sums.  **Id.** para. 27.  A copy of the December 21,

22  2000 letter from Jim McFadden to Harry F. Wartnick and a copy of the December 21, 2000,

23  check from CCR are attached as Exhibit H to the Declaration of Harry F. Wartnick.

24      CCR claimed that it was entitled to tender less than agreed to amount because under its

25  internal agreement between its member companies. there existed no joint and several liability

26

27  _____

28  [4].  A copy of Letters Testamentary and Order For Probate are attached as Exhibit F to the
    Declaration of Harry F. Wartnick.

1  between the CCR defendants. This assertion was made unilaterally and without regard to

2  California Law. The tendered check also included an endorsement which attempted to impose

3  a condition that plaintiff's negotiation of the check would constitute a full and complete accord

4  and satisfaction of all obligations owing by CCR members except Armstrong and ACMC and

5  will forever discharge and release any and all claims against those member companies. **Id.**,

6  para. . Plaintiff refused to accept this partial payment and refused to negotiate the check

7  containing the endorsement. Negotiations between plaintiff's counsel and CCR resulted in

8  CCR issuing a new check in the amount of $42,836.74, which did not include any

9  endorsement regarding accord and satisfaction. Presently, plaintiff is entitled to $157,163.26

10 more, which reflects the total agreed to settlement amount. **Id.**, para. 28.

11      Defendant Maremont's refusal to pay the agreed upon settlement amount to plaintiffs

12 unilaterally changes the material terms of the settlement agreements signed by plaintiffs by

13 dramatically reducing the sums to be paid each of the plaintiffs. It attempts to do so based on

14 some mysterious allocation formula that is known only to the CCR members. Plaintiffs were

15 not aware of any allocation formula between the CCR members at the time they agreed to

16 settle their cases, nor did they negotiate with CCR on the basis of any particular allocation of

17 responsibility among the defendants. **Id.**, para. 29.

18      When the plaintiffs agreed to settle their cases they only knew that the CCR was

19 responsible for the payment of the sums to which it was bound under the individual contracts.

20 The allocation question was a wholly internal issue among the CCR members. Moreover,

21 plaintiffs detrimentally relied upon the promise of full payment by the CCR defendants when

22 they agreed to a ninety day payment period. If plaintiffs' counsel was aware that a withdrawal

23 or bankruptcy by one or more members of CCR would result in their receiving less than the

24 agreed to amount, plaintiffs would have insisted on full payment well before the ninety day

25 period granted in each case. **Id.**, para. 30.

26      Under the subject settlement agreements, each plaintiff released <u>each and every</u>

27 member of CCR, even those not named in the complaint, and agreed not to pursue claims

28 against all CCR defendants in any future wrongful death action. Maremont's attempt to

1   unilaterally impose "take it or leave it" conditions to the settlement agreements attempts to

2   impose upon plaintiffs adhesion contracts to which plaintiffs never consented.  Furthermore,

3   these partial payments attempt to foist the burden of pursuing delinquent defendants in the

4   bankruptcy proceedings upon plaintiffs rather than on the other CCR members who have both

5   contractual rights and rights of contribution against their fellow CCR members.

6                                      **LEGAL ARGUMENT**

7   **I.**      **The Settlement Agreements Are Contracts And Are To Be Interpreted As**
             **Any Other Contract**

8
     In **Winet v. Price**, (1992) 4 Cal. App. 4th 1163. the Court was required to interpret
9
10   the language of a settlement agreement.  The settlement agreement contained the standard

11   language waiving the benefits of Civil Code section 1542 by agreeing to release presently

     unknown future claims.  Plaintiff argued that he was unaware of a future claim that arose and
12
13   did not intend to waive that claim when he signed the original release.  **Id**. at p.1164.  The

14   Court of Appeal held that a settlement agreement is a contract and the interpretation of a

15   settlement agreement is governed by the same principles applicable to any other contractual

16   agreement.  **Id.** at 1165.  This rule was re-affirmed in **Gouvis Engineering v. Superior**

17   **Court**, (1995) 37 Cal. App. 4th 642, where the Court was required to interpret a settlement

     agreement in the context of a motion for good faith settlement.
18
19   Here, each of the plaintiffs executed a Compromise and Release of all Claims and an

20   Addendum To Personal Injury Release Hold Harmless Agreement that was prepared by CCR

21   and sent to plaintiffs' counsel for execution.[5]  Each of the settlement agreements contains the

22   exact same terms except for the amount of the particular settlement and utilizes the same exact

     language.  Plaintiffs have entered into contracts with the CCR members the terms of which are
23
24   included in the settlement agreements.  California's rules regarding interpretation of Contracts,

25   Civil Code section 1635 et seq. control this Court's interpretation of the subject settlement

26   agreements.

27   _____

     [5]. Copies of these settlement agreements are attached as exhibits to the Declaration of Harry
28   F. Wartnick.

## II.   Defendant Maremont Corporation Received Consideration From Each Plaintiff

Obviously, in order for Maremont to be bound by the terms of the settlement agreements, it must have received some consideration from each of the plaintiffs. **Civil Code section 1450.** Here, Maremont received substantial consideration from each plaintiff. In each of the personal injury action, except the Dall Deweese and Tomianne Wiley actions, Maremont was a named defendant in the action.[6] More importantly, as a subscriber to the CCR Agreement, Maremont was specifically named as a releasee in each settlement agreement. **Wartnick Declaration**, Exhibit A, p.1, para. 3. Each settlement agreement provides that plaintiffs, as Releasors, release and discharge Releasees from any and all claims arising from or related to any asbestos exposure experienced by the plaintiff alleging an asbestos-related illness. **Id.**, p.2, para.5. This release and discharge of Maremont by each plaintiff of any and all claims resulting from asbestos exposure is sufficient consideration by itself to bind Maremont to the terms of the settlement agreement.

However, Maremont received even more consideration from the moving plaintiffs. Each plaintiff who alleged exposure to asbestos was required to sign a Hold Harmless Agreement which obligates each plaintiffs' estate to defend, indemnify and hold Maremont harmless if any plaintiffs' heir were to bring a future suit against Maremont. This agreement provides in part that:

> I understand that this is a contractual undertaking on my part which is binding upon me and my estate and is given by me in return for fair and valuable consideration to wit, **the agreement by Center for Claims Resolution Defendants** in reliance, in part, upon this document, to **pay me funds** which I believe to be fair and reasonable in settlement of claims for my personal injury and wrongful death.

**Id.**, p. 8.  (emphasis added)

Maremont received even further consideration because each plaintiff executed a dismissal with prejudice as to all CCR defendants including Maremont. **Id.** Maremont is

---

[6]. Whether Maremont was actually named in plaintiffs' complaint is immaterial as each settlement agreement provides the release of all CCR members and each Hold Harmless Agreement requires plaintiffs to defend and indemnify all CCR defendants, including Maremont.

1   unable to honestly argue that as a CCR member it was not a party to the subject settlement

2   agreements, nor that it did not receive adequate consideration from each of the moving

3   plaintiffs.  Maremont is bound by the terms of the settlement agreements as memorialized in

4   each Compromise and Release at issue, drafted by CCR.

5   **III.   Under California Law Maremont Is Jointly And Severely Liable To**
    **Plaintiffs For The Entire Settlement Amount Due Plaintiffs.**

6

7            Having received consideration from each of the plaintiffs, Maremont is jointly and

    severally liable to each plaintiff for the amount still owing under the settlement agreement.
8
    California Civil Code section 1659 provides that "where all parties who unite in a promise
9
    receive some benefit from the consideration, whether past or present, their promise is
10
    presumed to be joint and several".
11

12           Here, Maremont has received benefits from the consideration both past and present.  It

13   received a release of claims, a dismissal with prejudice of the pending actions and the future

     promise to defend and indemnify it if any of plaintiffs' heirs sue Maremont regarding exposure
14
     to asbestos.
15

16           That Maremont was not named as a defendant in one of the plaintiffs' personal injury

17   actions and thus arguably received less consideration in that case than the CCR

     members who were named does not relieve Maremont of its joint obligation to pay the
18
     settlement amount.  In **Olson v. Foster**, (1941) 42 Cal. App. 2d 493 the Court held that
19
     section 1659 does not require that several obligees to a promise receive benefits in equal
20
     proportions, but only that the several obligees receive some benefit from the contract.  **Id.** at
21
     p.498-99. In **Olson**, attorneys sued the trustee of several trusts for which they had provided
22
     legal services under one agreement. **Id.** at 498.  Partial payments to the attorneys had been
23
     made on behalf of all of the trust.  **Id.**  The Court held that since each of the trusts received
24
     benefits from the attorneys' services and consequently it must be held that the trusts' liability
25
     was both joint and several.  **Id.**
26

27           Here, Maremont received and continues to receive benefits under the settlement

28   agreements and since it is undisputed that only partial payment has been made by the CCR

1   defendants, Maremont's liability is both joint and several.  Under Civil Code section 1659,

2   Maremont's liability is presumed to be joint and several and Maremont can present no

3   evidence that rebuts this presumption of joint liability.  Nowhere in the Compromise and

4   Release Agreement, drafted by CCR on behalf of Maremont, is it stated that the obligation to

5   pay the settlement amount is several as to each CCR member.  Nor does the settlement

6   agreement state that withdrawal or bankruptcy of any CCR member would reduce the

7   settlement amount by the absent CCR member's share.

8        The promise to pay the settlement amount also appears in the Hold Harmless

9   Agreement.  There, the consideration for the hold harmless agreement is described as "the

10   agreement by Center for Claims Resolution defendants...to pay me funds which I believe to be

11   fair and reasonable in settlement of claims..."  **Wartnick Declaration**, Exhibit A, p. 8.

12   Rather than rebut the presumption of joint liability, this language supports plaintiffs' position

13   that Maremont is jointly liable for the remaining settlement amount due.  The obligors of the

14   promise to pay the settlement amount are described as the Center for Claims Resolution

15   defendants.  No distinction is made between any individual CCR member.  No one or group

16   of CCR members is identified as having the obligation to pay the settlement amount.  The

17   express language of the agreements offers no evidence that would allow Maremont to rebut the

18   presumption of joint liability.

19        In tendering to plaintiffs less than the full amount of the settlement, CCR contended

20   that its internal agreement between it member companies provides that there is no joint and

21   several liability between the CCR members.  This assertion was made unilaterally and without

22   regard to California law.  the internal agreement between the CCR members applies only

23   between themselves.  It does not bind plaintiffs who are not parties to the internal CCR

24   agreement.  In the approximately 1,100 negotiated settlements conducted between Mr.

25   Wartnick and a representative of CCR, the CCR defendants always offered a single lump sum

26   figure in exchange for the release, hold harmless agreement and dismissal with prejudice of

27   the pending action against all CCR members.  **Id.**, para. 3.

28        When Mr. Wartnick settled the moving plaintiffs' actions with the CCR representative,

1   Mr. McFadden offered a single lump sum amount to settle on behalf of all CCR members.

2   Mr. Wartnick was never told the amounts allocated to each individual CCR member and

3   plaintiffs' counsel to this day has never been told the allocation formula used by CCR to assess

4   shares of the settlement amount to the individual members. **Id.** para. 29.

5   By withholding sums previously agreed to and settled upon in good faith by the moving

6   plaintiffs, the CCR defendants seek to shift the risk of bankruptcy and/or default by a CCR

7   member from the other CCR members to plaintiffs, notwithstanding the requirement of joint

8   and several liability under California law and the specific terms of the settlement papers

9   prepared by CCR. This attempt at burden shifting is predicated on an agreement between

10  CCR members to which the moving plaintiffs were not a party and is based on the unilateral

11  assertion by Maremont that it is not subject to joint and several liability.

12  Absent any evidence by Maremont that the moving plaintiffs were informed that they

13  would bear the risk of the bankruptcy and/or default by a CCR member, the presumption of

14  joint liability under Civil Code section 1659 prevails and Maremont is jointly liable for the

15  portion of the settlement amount still owing plaintiffs. Obviously, Maremont is entitled to

16  contribution from Armstrong for having paid its share of the settlement amounts. **Civil Code**

17  **Section 1432.** However, it is Maremont and not the moving plaintiffs who must seek a

18  remedy in Armstrong's bankruptcy.

19  Other Courts have held individual CCR members jointly liable for the settlement shares

20  CCR allocated to bankrupt members of CCR. In **James Chapman v. The E.J. Bartells Co.**

21  **et al.**, Superior Court of Washington, Kings County, No. 00-2-00095-2SEA the Court entered

22  summary judgment against a number of CCR members for the amounts withheld by CCR

23  because of the bankruptcy of Armstrong World Industries and the withdrawal of National

24  Gypsum from the CCR. A certified copy of the judgment in that action is attached as Exhibit

25  I.

26  Plaintiffs have fulfilled all of their obligations under the settlement agreements and

27  defendant Maremont continues to enjoy the benefits contemplated under the agreement in that

28  plaintiffs' estates remain contractual liable to defend and indemnify Maremont should any of

1   plaintiffs' heirs sue Maremont regarding asbestos exposure suffered by the injured plaintiffs.

2   Maremont has breached the settlement agreements by failing to pay the agreed to settlement

3   amount.   This Court should grant plaintiffs' motion for summary judgment as the plaintiffs

4   because there is no material issue of fact in dispute and plaintiffs are entitled to judgment as a

5   matter of law.

6       **IV.    Plaintiffs Are Entitled To Attorneys Fees and Interest**

7           Each of the subject settlement agreements contains an attorneys fees provision as a

8   remedy for breach of the agreement.  While the agreements only require plaintiffs to pay the

9   CCR defendants' attorneys fees in any breach of contract action, California law makes the

10  terms of this provision reciprocal and requires that Maremont pay the reasonable attorneys fees

11  expended by plaintiffs in bringing this breach of contract action against Maremont.  Civil

12  Code section 1717 provides that in an action on a contract, when the contract contains an

13  attorneys fees provision even if that provision provides for payment of attorneys fees to only

14  one of the parties to the contract, the prevailing party in a breach of contract action is entitled

15  to attorneys fees regardless of whether that party was specified in the contract.  Thus,

16  plaintiffs are entitled to recover their attorneys fees for bringing this action to enforce the

17  settlement agreement against Maremont.

18          California law also provides that plaintiffs are entitled to receive from Maremont ten

19  percent (10%) interest per annum on the amount of the settlement wrongfully withheld by

20  Maremont from the date of the breach of the contract.  Civil Code section 3289(b) provides

21  that for any contract entered into after January 1, 1986, if the contract does not specify a legal

22  rate of interest, the obligation shall bear interest at the rate of 10 percent per annum after a

23  breach.  Here, the settlement agreements are silent as to the rate of interest thus plaintiffs are

24  entitled to interest at a rate of 10% per annum from the date of the breach of the contract.

25  Here, the breach of contract occurred on the date when CCR tendered plaintiffs less than the

26  agreed to settlement amount.

27                    **CONCLUSION**

28          The moving plaintiffs all agreed in good faith to settle their personal injury actions with

1   the defendants represented by the Center for Claims Resolution for a single lump sum amount.

2   Plaintiffs complied with all of their obligations under the settlement agreements yet defendant

3   Maremont has failed to live up to its obligation to pay the agreed to settlement amount to each

4   of the moving plaintiffs.  The facts are in dispute and each of the moving plaintiffs are entitled

5   to judgment as a matter of law.  This Court should grant plaintiffs' motion for summary

6   judgment and order Maremont to pay the amounts remaining due to the plaintiffs and award

7   plaintiffs reasonable attorneys fees and interest at the rate of 10% per annum from the date of

8   the breach of agreements.

10   Dated: *April 5 2001*     Respectfully submitted,

11                WARTNICK, CHABER, HAROWITZ & TIGERMAN

14            By: _____

15                Mark L. Nissenbaum
                  Attorneys for Plaintiffs

1  HARRY F. WARTNICK  (Bar No. 54761)
   MARK L. NISSENBAUM (Bar No. 102211)
2  WARTNICK, CHABER, HAROWITZ & TIGERMAN
   101 California Street, Suite 2200
3  San Francisco, California  94111
   Telephone     (415) 986-5566
4
   Attorneys for Plaintiff
5

6
                    UNITED STATES DISTRICT COURT
7
                 NORTHERN DISTRICT OF CALIFORNIA
8
                         SAN FRANCISCO
9

10
   ROLANDO DOVAL; CONSUELO DOVAL; FLOYD      )   CASE No. C01-00540 JL
11 ROGERS; MARGARET ROGERS; HERBERT          )   ARB
   GROSSICH; ELAINE GROSSICH; DALL DEWEESE;  )
12 TOMIANNE WILEY; DIANNA EDWARDS, as Personal )
   Representative of MAURICE APLEY, Decedent; )   DECLARATION OF
13                                            )   HARRY F. WARTNICK
                 Plaintiffs,                  )   IN SUPPORT OF
14                                            )   PLAINTIFFS' MOTION
        vs.                                   )   FOR SUMMARY
15                                            )   JUDGMENT
   MAREMONT CORPORATION,                      )
16                                            )   DATE:  May 16, 2001
                 Defendant.                   )   TIME:  9:30 a.m.
17                                            )   COURTROOM: C
   _____)   JUDGE:  Magistrate
18                                                James Larson
19
20
21
22      I, Harry F. Wartnick, declare as follows:

23      1.     I am an attorney at law, licensed to practice in the courts of the State of

24 California.  I am a member of the law firm of Wartnick, Chaber, Harowitz, Smith &

25 Tigerman, attorneys of record for plaintiff herein.  I have knowledge of the matters stated

26 herein and if called as a witness, could competently testify thereto.

27      2.     I have represented  over two thousand plaintiffs in asbestos-related personal

28 injury actions since 1979.  The Center for Claims Resolution ("CCR") was formed in 1988

1    and since then has represented numerous defendants in the litigation, negotiation and

2    settlement of asbestos-related personal injury and wrongful death actions filed against its

3    members.  Since its inception in 1988, I have personally settled approximately 1,100 asbestos-

4    caused personal injury and wrongful claims of my clients with employees of CCR, acting as

5    an agent for all members of CCR, including defendant Maremont Corporation.  As a condition

6    of each settlement the CCR members demanded that the plaintiffs execute a release and Hold

7    Harmless Agreement as to each and every then subscriber to the CCR agreement including

8    Maremont extinguishing all claims for all injuries from these victims asbestos exposure.

9    Defendants also demanded and received a dismissal with prejudice of the pending actions

10   against all CCR members.

11        3.    In each of these approximately 1,100 settlements, the negotiations took place

12   between myself and a representative of CCR, acting as an agent for all CCR members.  The

13   CCR members, including Maremont, offered one lump sum settlement amount, in return for a

14   signed compromise and release of all claims against all CCR members, a Hold Harmless

15   Agreement and a dismissal with prejudice.

16        4.    On October 22, 1999, plaintiff Dall Deweese and his spouse, Tomianne Wiley

17   filed a personal injury action in San Francisco Superior Court alleging that Mr. Deweese

18   contracted lung cancer resulting from exposure to asbestos fibers.  Ms. Wiley alleged loss of

19   consortium resulting from her spouse contracting lung cancer.  This complaint named several

20   defendants who were members of CCR.

21        5.    On or about August 25, 2000, James McFadden, an employee of CCR, acting

22   on behalf of the CCR members, and myself, on behalf of Mr. Deweese and Ms. Wiley,

23   confirmed a settlement of plaintiffs' asbestos-related personal injury and potential wrongful

24   death claims against the CCR members for the total payment of $135,000.

25        6.    As conditions of the settlement, plaintiffs were required to sign a compromise

26   and release of all claims including unknown and future claims as to all CCR members,

27   including Maremont.  Plaintiffs were also required to execute a Hold Harmless Agreement,

28   agreeing to indemnify and hold harmless each and any CCR member in the event of any suit

1   by plaintiffs' heirs.

2       7.    The subscribers to the CCR Agreement prepared and sent to plaintiffs' counsel a

3   compromise and release of all claims and a request for dismissal with prejudice as to each

4   subscriber to the CCR Agreement was filed in the San Francisco Superior Court. The

5   executed settlement agreement and filed copy of the dismissal with prejudice were returned to

6   CCR in October of 2000. Plaintiffs have performed all conditions, covenants and promises

7   required on their part in accordance with the settlement agreement. A true and correct copy

8   of the signed settlement agreement and copy of the dismissal with prejudice are attached hereto

9   as Exhibit A.

10       8.    On January 2, 2001, our office received a payment from CCR in the amount of

11   $34,694.46, reflecting a partial amount of the agreed to settlement amount of $135,000. This

12   was part of a check in the amount of $762,688.11 which CCR represented was payment for

13   five separate settlements of which four of those involved moving plaintiffs here including the

14   Deweese, Doval, Grossich and Rogers settlements. CCR informed me that the amount of the

15   check tendered was less than the agreed to amount due to the bankruptcy filing of one of the

16   CCR members, Armstrong World Industries on December 6, 2000. A true and correct copy

17   of the December 21, 2000 letter from Jim McFadden to myself with attachment and a copy of

18   the December 21, 2000 check from CCR in the amount of $762,688.11 with the endorsement

19   regarding CCR's attempt to claim accord and satisfaction is attached hereto as Exhibit B.

20       9.    Plaintiffs refused to accept this partial payment and refused to negotiate the

21   check containing the endorsement. Discussions between myself and representatives of CCR

22   resulted in CCR issuing a new payment in the amount of $34,694.46 which did not include

23   any endorsement regarding accord and satisfaction. Presently, plaintiffs Deweese and Wiley

24   are entitled to $100,305.54  more, which reflects the total agreed to settlement amount

25       10.    On April 3, 2000, Rolando and Consuelo Doval filed a personal injury action in

26   San Francisco Superior Court alleging that Mr. Doval contracted mesothelioma as a result of

27   his exposure to asbestos. Mrs. Doval alleged loss of consortium resulting from Mr. Doval's

28   contracting mesothelioma. Plaintiffs' complaint named several CCR members, including

1    defendant Maremont. On or about September 12, 2000, James McFadden, on behalf of the

2    CCR defendants including defendant Maremont, and myself, on behalf of the Dovals,

3    confirmed a settlement of plaintiffs' asbestos-related personal injury and wrongful death claims

4    against the CCR members for the amount of $335,000.

5         11.    Plaintiffs were required to sign a compromise and release of all claims including

6    unknown and future claims as to all CCR members. Plaintiffs were also required to execute a

7    Hold Harmless Agreement, agreeing to indemnify and hold harmless each and any CCR

8    member in the event of any suit by plaintiffs' heirs.

9         12.    The subscribers to the CCR Agreement prepared and sent to plaintiffs' counsel a

10   compromise and release of all claims, a Hold Harmless Agreement and a request for dismissal

11   with prejudice as to each subscriber to the CCR Agreement. The executed settlement

12   agreement and filed copy of the dismissal with prejudice were returned to CCR in late October

13   or early November of 2000. Plaintiffs have performed all conditions, covenants and promises

14   required on their part in accordance with the settlement agreement. A true and correct copy

15   of the settlement agreement and request for dismissal are attached hereto as Exhibit C

16        13.    On January 2, 2001, our office received a payment from CCR in the amount of

17   $280,201.80, reflecting a partial amount of the agreed to settlement amount of $335,000.

18   CCR informed plaintiffs counsel that the amount of the check tendered was less than the

19   agreed to amount due to the bankruptcy filing of one of the CCR members, Armstrong World

20   Industries on December 6, 2000.

21        14.    CCR claimed that it was entitled to tender less than agreed to amount because

22   under its internal agreement between its member companies. there existed no joint and several

23   liability between the CCR defendants. This assertion was made unilaterally and without

24   regard to California Law. The tendered check also included an endorsement which attempted

25   to impose a condition that plaintiffs negotiation of the check would constitute a full and

26   complete accord and satisfaction of all obligations owing by CCR members except Armstrong

27   and will forever discharge and release any and all claims against those member companies.

28        15.    Plaintiffs refused to accept this partial payment and refused to negotiate the

1    check containing the endorsement. Discussions between myself and representatives of CCR

2    resulted in CCR issuing a new check in the amount of $280,201.80, which did not include any

3    endorsement regarding accord and satisfaction. Presently, the Dovals are entitled to

4    $54,798.20 more, which reflects the total agreed to settlement amount.

5        16.    On February 24, 2000, Margaret and Floyd Rogers filed a personal injury

6    action in San Francisco Superior Court alleging that Floyd Rogers contracted mesothelioma as

7    a result of his exposure to asbestos. Mrs. Rogers alleged loss of consortium resulting from

8    her husband's contracting mesothelioma. Their complaint named several CCR members

9    including defendant Maremont. On or about August 25, 2000, James McFadden on behalf of

10   the CCR defendants including defendant Maremont, and myself, on behalf of the Rogers,

11   confirmed a settlement of plaintiffs' asbestos-related personal injury and wrongful death claims

12   against the CCR members in the amount of $200,000.

13       17.    As conditions of the settlement, plaintiffs were required to sign a compromise

14   and release of all claims including unknown and future claims as to all CCR members.

15   Plaintiffs were also required to execute a Hold Harmless Agreement, agreeing to indemnify

16   and hold harmless each and any CCR member in the event of any suit by plaintiffs' heirs.

17   The subscribers to the CCR Agreement prepared and sent to plaintiffs' counsel a compromise

18   and release of all claims, a Hold Harmless Agreement and a request for dismissal with

19   prejudice as to each subscriber to the CCR Agreement. The executed settlement agreement

20   and filed copy of the dismissal with prejudice were returned to CCR in late October or early

21   November of 2000. Plaintiffs have performed all conditions, covenants and promises required

22   on their part in accordance with the settlement agreement. A true and correct copy of the

23   settlement agreement and request for dismissal are attached hereto as Exhibit D.

24       18.    On January 2, 2001, our office received a payment from CCR in the amount of

25   $119,106.29, reflecting a partial amount of the agreed to settlement amount of $200,000.

26   CCR informed plaintiffs counsel that the amount of the check tendered was less than the

27   agreed to amount due to the bankruptcy filing of one of the CCR members, Armstrong World

28   Industries on December 6, 2000.    CCR claimed that it was entitled to tender less than agreed

1    to amount because under its internal agreement between its member companies, there existed

2    no joint and several liability between the CCR defendants.  This assertion was made

3    unilaterally and without regard to California Law.  The tendered check also included an

4    endorsement which attempted to impose a condition that plaintiffs  negotiation of the check

5    would constitute a full and complete accord and satisfaction of all obligations owing by CCR

6    members except Armstrong and will forever discharge and release any and all claims against

7    those member companies.

8         19.    Plaintiffs refused to accept this partial payment and refused to negotiate the

9    check containing the endorsement.  Discussions between myself and representatives of CCR

10   resulted in CCR issuing a new payment in the amount of $119,106.29, which did not include

11   any endorsement regarding accord and satisfaction.  Presently, the Rogers are entitled to

12   $80,893.71 more, which reflects the total agreed to settlement amount.

13        20.    On February 24, 2000, Herbert and Elaine Grossich filed a personal injury

14   action in San Francisco Superior Court alleging that Mr. Grossich contracted mesothelioma as

15   a result of his exposure to asbestos.  Mrs. Grossich alleged loss of consortium resulting from

16   her spouse's contracting mesothelioma.  Their complaint named several CCR members

17   including defendant Maremont.  On or about August 25, 2000, James McFadden on behalf of

18   the CCR defendants, including defendant Maremont, and myself, on behalf of the Grossichs,

19   confirmed a settlement of plaintiffs' asbestos-related personal injury and wrongful death claims

20   against the CCR members in the amount of $300,000.

21        21.    As conditions of the settlement, plaintiffs were required to sign a compromise

22   and release of all claims including unknown and future claims as to all CCR members.

23   Plaintiffs were also required to execute a Hold Harmless Agreement, agreeing to indemnify

24   and hold harmless each and any CCR member in the event of any suit by plaintiffs' heirs.

25   The subscribers to the CCR Agreement prepared and sent to plaintiffs' counsel a compromise

26   and release of all claims, a Hold Harmless Agreement and a request for dismissal with

27   prejudice as to each subscriber to the CCR Agreement.  The executed settlement agreement

28   and filed copy of the dismissal with prejudice were returned to CCR in late October or early

1   November of 2000.  Plaintiffs have performed all conditions, covenants and promises required

2   on their part in accordance with the settlement agreement.    A true and correct copy of the

3   settlement agreement and request for dismissal are attached hereto as Exhibit E.

4          22.    On January 2, 2001, our office received a payment from CCR in the amount of

5   $99,948.74, reflecting a partial amount of the agreed to settlement amount of $300,000.  CCR

6   informed plaintiffs counsel that the amount of the check tendered was less than the agreed to

7   amount due to the bankruptcy filing of one of the CCR members, Armstrong World Industries

8   on December 6, 2000.

9          23.    CCR claimed that it was entitled to tender less than agreed to amount because

10  under its internal agreement between its member companies, there existed no joint and several

11  liability between the CCR defendants.  This assertion was made unilaterally and without

12  regard to California Law.  The tendered check also included an endorsement which attempted

13  to impose a condition that plaintiffs negotiation of the check would constitute a full and

14  complete accord and satisfaction of all obligations owing by CCR members except Armstrong

15  and will forever discharge and release any and all claims against those member companies.

16         24.    Plaintiffs refused to accept this partial payment and refused to negotiate the

17  check containing the endorsement.  Discussions between myself and representatives of CCR

18  resulted in CCR issuing a new check in the amount of $99,948.74, which did not include any

19  endorsement regarding accord and satisfaction.  Presently, the Grossichs are entitled to

20  $200,051.26 more, which reflects the total agreed to settlement amount plus interest and

21  attorneys fees.

22         25.    On October 22, 1999, Maurice Apley filed a personal injury action in San

23  Francisco Superior Court alleging that he contracted mesothelioma as a result of his exposure

24  to asbestos.  Mr. Apley's complaint named several CCR members including defendant

25  Maremont.  On or about May 18, 2000, James McFadden on behalf of the CCR defendants,

26  including defendant Maremont, and myself, on behalf of Mr. Apley, confirmed a settlement of

27  plaintiff's asbestos-related personal injury and wrongful death claims against the CCR

28  members in the amount of $200,000. Mr. Apley passed away on June 21, 2000.  On August

1   15, 2001, Dianna Edwards, Mr. Apley's daughter, was named his personal representative by

2   the Superior Court of California, Calaveras County.  A true and correct copy of Letters

3   Testamentary and Order For Probate are attached hereto as Exhibit F.

4         26.    As conditions of the settlement, Mrs. Edwards, as Mr. Apley's personal

5   representative, was required to sign a compromise and release of all claims including unknown

6   and future claims as to all CCR members.  Mrs. Edwards was also required to execute a Hold

7   Harmless Agreement, agreeing to indemnify and hold harmless each and any CCR member in

8   the event of any suit by plaintiffs' heirs.  The subscribers to the CCR Agreement prepared and

9   sent to plaintiffs' counsel a compromise and release of all claims, a Hold Harmless Agreement

10  and a request for dismissal with prejudice as to each subscriber to the CCR Agreement was

11  filed in the San Francisco Superior Court.  The executed settlement agreement and filed copy

12  of the dismissal with prejudice were returned to CCR in November of 2000.  Plaintiff has

13  performed all conditions, covenants and promises required on her part in accordance with the

14  settlement agreement.  A true and correct copy of the settlement agreement and request for

15  dismissal are attached hereto as Exhibit G.

16        27.    On January 2, 2001, our office received a check from CCR in the amount of

17  $42.836.74, reflecting a partial amount of the agreed to settlement amount of $200,000.  CCR

18  informed plaintiffs counsel that the amount of the check tendered was less than the agreed to

19  amount due to the bankruptcy filing of one of the CCR members, Armstrong World Industries

20  on December 6, 2000 and the fact that another former CCR member, Asbestos Claims

21  Management Corporation ("ACMC") have refused to pay their share of previously negotiated

22  settlements, despite being billed for those sums.  A true and correct copy of the December 21,

23  2000 letter from Jim McFadden to Harry F. Wartnick and a copy of the December 21, 2000,

24  check from CCR are attached hereto as Exhibit H.

25        28.    CCR claimed that it was entitled to tender less than agreed to amount because

26  under its internal agreement between its member companies, there existed no joint and several

27  liability between the CCR defendants.  This assertion was made unilaterally and without

28  regard to California Law.  The tendered check also included an endorsement which attempted

1   to impose a condition that plaintiff's negotiation of the check would constitute a full and

2   complete accord and satisfaction of all obligations owing by CCR members except Armstrong

3   and ACMC and will forever discharge and release any and all claims against those member

4   companies.  Plaintiff refused to accept this partial payment and refused to negotiate the check

5   containing the endorsement.  Discussions between myself and representatives of CCR resulted

6   in CCR issuing a new check in the amount of $42,836.74, which did not include any

7   endorsement regarding accord and satisfaction.  Presently, plaintiff is entitled to $157,163.26

8   more, which reflects the total agreed to settlement amount.

9          29.    Defendant Maremont's refusal to pay the agreed upon settlement amount to

10  plaintiffs unilaterally changes the material terms of the settlement agreements signed by

11  plaintiffs by dramatically reducing the sums to be paid each of the plaintiffs.  It attempts to do

12  so based on an internal allocation formula that is known only to the CCR members.  Plaintiffs

13  did not know the allocation formula between the CCR members at the time they agreed to

14  settle their cases, nor did they negotiate with CCR on the basis of any particular allocation of

15  responsibility among the defendants.

16         30.    When the plaintiffs agreed to settle their cases they only knew that the CCR was

17  responsible for the payment of the sums to which it was bound under the individual contracts.

18  The allocation question was a wholly internal issue among the CCR members.  Moreover,

19  plaintiffs detrimentally relied upon the promise of full payment by the CCR defendants when

20  they agreed to a ninety day payment period.

21         31.    A true and correct copy of the Court's Judgment in **James Chapman v. The E.J.**

22  **Bartells Co. et al.**, Superior Court of Washington, Kings County, No. 00-2-00095-2SEA is

23  attached hereto as Exhibit I.

24  ///

25  ///

26  ///

27  ///

28  ///

1   Executed this _3rd_ of ~~March~~ _April_, 2001, at San Francisco, California.

2   I declare under penalty of perjury under the laws of the State of California that the

3   foregoing is true and correct.

4

5

6   _____
    Harry F. Warthick

7

**EXHIBIT  A**

1999247869
CASF

## COMPROMISE AND RELEASE OF ALL CLAIMS
### INCLUDING UNKNOWN AND FUTURE CLAIMS

1. Release of all Personal Injury and Death Claims:

(a)  THIS RELEASE EXTINGUISHES ALL CLAIMS FOR ALL INJURIES ARISING FROM OR RELATED TO ANY EXPOSURE TO ASBESTOS EXPERIENCED BY DALL DAVID DEWEESE INCLUDING BUT NOT LIMITED TO THOSE INJURIES NOW KNOWN, THOSE NOW EXISTING BUT UNKNOWN, THOSE THAT MANIFEST THEMSELVES IN THE FUTURE, AND THOSE THAT CAUSE HIS/HER DEATH.  THIS RELEASE SPECIFICALLY EXTINGUISHES ALL CLAIMS BASED ON ANY CANCER OR MALIGNANCY.

2. Releasors:

(a)  Plaintiff:  DALL DAVID DEWEESE
   Social Security Number:  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

(b)  Plaintiff's spouse:  TOMIANNE WILEY
   Social Security Number:

(c)  Plaintiff's children:  WILEY DALLAS DEWEESE

(d)  Plaintiff's heirs, as defined by California Code of Civil Procedure Section 377(b).

3. Releasees:

The Releasees are all subscribers to the Agreement Concerning Asbestos-Related Claims signed October 6, 1988 (The Center for Claims Resolution Agreement), and all of their predecessors and successors, their parent and subsidiary companies and divisions, and their current and former attorneys, liability insurance carriers, to the extent of their liability for Center non-insurance company subscribers only, officers, directors, agents, and employees.  The names of the subscribers are set out below:

Manufacturers: Amchem Products, Inc.; Armstrong World Industries, Inc.; C.E. Thurston and Sons, Incorporated; Certain Teed Corporation; Dana Corporation; I.U. North America, Inc.; Maremont Corporation; National Services Industries Inc.; Nosroc Corp.; Pfizer Inc; Quigley Company, Inc.; Shook & Fletcher Insulation Co.; T & N, plc; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company;, Incorporated, and all distributors insofar as the liability of any distributor is predicated upon the distribution of products manufactured by Rhone Poulenc (Tendered To Amc)

1


EXHIBIT A

4. Preliminary Facts:

DALL DAVID DEWEESE alleges that he has been exposed to asbestos that the asbestos was produced by or came from a product produced by one or more of the Releasees, and that the exposure to asbestos has injured him.

Based on this exposure, DALL DAVID DEWEESE has filed suit, or is considering filing suit, for damages arising from his personal injury.

Releasees desire to compromise and obtain a general release of all existing and future claims that could possibly arise from these facts, without admitting liability.

5. Terms of Settlement:

In consideration of $135,000.00, in total, Releasors release and forever discharge Releasees from any and all claims arising from or related to any exposure to asbestos experienced by DALL DAVID DEWEESE. This release specifically includes, but is not limited to, all wrongful death claims, all loss of consortium claims, and all claims based on presently undiscovered or unmanifested injures (including any cancer and any malignancy) arising from or related to any exposure to asbestos experienced by DALL DAVID DEWEESE.

For the purpose of this release, the word "claims" includes all claims, demands, actions, and suits of any kind. For the purposes of this release, the word "injuries" includes all injuries, illnesses, disabilities, losses, and harms of any kind including but not limited to all emotional injuries.

This release does not cover claims for injuries allegedly suffered by the plaintiff's spouse and children because of their personal exposure to asbestos or property damage claims.

The consideration specified in this release shall be paid in the form of drafts or checks payable to Releasor's counsel as trustee for Releasors.

6. Unknown Injuries and Potential Wrongful-Death Claims:

Releasors understand that people exposed to asbestos may be subject to an increased risk of contracting cancer, including but not limited to lung cancer and mesothelioma. Releasors also understand that DALL DAVID DEWEESE may have suffered injuries that are as yet unknown to him/her and that unknown complications may arise from conditions of which he/she is not aware. Nevertheless, Releasors intend to release and forever discharge Releasees from any claim for any injury arising from or related to any exposure to asbestos experienced by DALL DAVID DEWEESE, including

but not limited to those injuries now known, those now existing but unknown, those that manifest themselves in the future, and those that cause his/her death.

Releasors hereby waive any right or benefit that Releasors may have, now or in the future, under Section 1542 of the Civil Code of the State of California, which reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

7.   Indemnity Against Claims by Lienholders:

Releasors warrant that they, or some of them are the sole owners of all claims of any kind arising out of the injuries covered in this Release.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim, brought by any holder of a lien or encumbrance, that is related to the injuries covered in this release, other than cross-complaints or cross-actions of co-defendants.   This indemnity agreement specifically does not cover cross-complaints or cross-actions of co-defendants.

8.   Indemnity Against Inaccuracy of Representation:

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting directly or indirectly from any falsity or inaccuracy of any representation made in this release by Releasors.

9.   Indemnity Against Wrongful-Death Claims:

Releasors warrant and represent that only they, or only some of them, would be legally entitled to bring suit based on an allegedly wrongful death of DALL DAVID DEWEESE.   Furthermore, they warrant that no wrongful death suit based on any exposure to asbestos experienced by DALL DAVID DEWEESE will be brought by anyone against Releasees.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any wrongful death suit, brought by anyone, based on any exposure to asbestos experienced by DALL DAVID DEWEESE.

10.   Indemnity Against Claims by Minors and Unborn Children:

3

Releasors understand that any minors among the Releasors may have the legal right to disaffirm this contract. Releasors agree that this release is not intended to expand whatever legal rights a minor may have to disaffirm this release and Releasees reserve the right to challenge any attempted disaffirmance of it. All Releasors who are not minors agree that this release will remain binding on them even if a minor disaffirms it.

Furthermore, all Releasors who are not minors agree to indemnify Releasees against all liability, including, but not limited to, all attorneys' fees and expenses, resulting from (1) any attempted disaffirmance, whether successful or not, and (2) any claim brought by a Releasor who is now a minor that arises from or is related to any exposure to asbestos experienced by DALL DAVID DEWEESE.

Releasors also agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim brought by any child now unborn that arises from or is related to any exposure to asbestos experienced by DALL DAVID DEWEESE

11.  Warranty of Good-Faith Compromise of Disputed Claims:

Releasors warrant and represent the following:

(a)  Releasors agree that this release is a compromise of doubtful and disputed claims, and that payment is not to be construed as an admission of liability. Releasors also agree that this release shall not be admissible as evidence in any suit of proceeding whatsoever as evidence or admission of any liability.

(b)  Releasors warrant that this release has been entered into in good faith for the purpose of resolving disputed and uncertain claims.

(c)  Releasors warrant that they will use their best efforts to obtain court approval of this release, including a determination that this settlement has been entered into in good faith, and that they will fully cooperate with Releasees and their counsel in their efforts to obtain the determination and an order, in accordance with Section 877.6 of the Code of Civil Procedure dismissing cross- complaints.

12.  Persons Bound:

This release is binding on Releasors, collectively and individually, and on all their heirs, devisees, executors, administrators, personal representatives, and assigns. Each warranty and each agreement in this release is enforceable against Releasors collectively and each Releasor individually.

13.  Remedies for Breach:

Releasors agree to pay for attorneys' fees, expenses, and costs incurred by Releasees as a result of any proceeding brought or maintained by Releasors or by any Releasor in breach of this release.

14.   Authorization to File Dismissal:

Releasors authorize their counsel to execute a request for dismissal with prejudice of Releasees in the SUPERIOR COURT in SAN FRANCISCO COUNTY, CALIFORNIA - NORTH,   DOCKET#: 307382, which is entitled "DALL DAVID DEWEESE V RAYBESTOS-MANHATTAN ET AL".   Releasors authorize counsel for Releasees to file the request for dismissal after Releasees have paid Releasors, or Releasors' counsel as their trustee, the consideration specified in this release.   Releasors also agree to dismiss Releasees from all other past or future claims, brought by any of them, that are in any way connected with any exposure to asbestos experienced by DALL DAVID DEWEESE.

15. Releasors Warrant That They Have Read This Release:

RELEASORS HEREBY WARRANT THAT THEY HAVE READ THIS RELEASE IN ITS ENTIRETY, HAVE HAD IT FULLY EXPLAINED TO THEM, AND FULLY UNDERSTAND AND APPRECIATE ITS TERMS AND THEIR CONSEQUENCES.

Releasors understand that this release is a full, complete and final release and that the sum of $135,000.00 is the total amount asbestos experienced by DALL DAVID DEWEESE.

Dated: 9-27-00

DALL DAVID DEWEESE

Subscribed and sworn to before me this 27 day of September, 2000

NOTARY PUBLIC

NIKKI G. SULLIVAN
COMM. # 1201314
NOTARY PUBLIC-CALIFORNIA
City & County of San Francisco
COMM. EXP. DEC. 9, 2002

My Commission Expires: Dec. 9, 2002

6

_V. Tomianne Wiley_                  Dated:   9-27-00
TOMIANNE WILEY

Subscribed and sworn to before me this 27 day of _September 2000_

_Nikki G. Sullivan_
NOTARY PUBLIC

<table>
<tr><td>NIKKI G. SULLIVAN<br>COMM. # 1201314<br>NOTARY PUBLIC-CALIFORNIA<br>City & County of San Francisco<br>COMM. EXP. DEC. 9, 2002</td></tr>
</table>

My Commission Expires: _Dec. 9, 2002_

This release was executed with my approval, and under my direction and advice. Its provisions and their consequences have been fully explained to Releasors.

_Warynick, Chaber,_                  Dated:   10/6/00
WARYNICK, CHABER,
HAROWITZ, SMITH & TIGERMAN

7

## ADDENDUM TO PERSONAL INJURY RELEASE
## HOLD HARMLESS AGREEMENT

### (To be used as Missing Heir(s) Provision)

I, DALL DAVID DEWEESE, recognize that as a part of the settlement of my personal injury case, the Center for Claims Resolution defendants wish to obtain releases and buy their peace with respect to potential claims that could be brought by my estate or my heirs should I die of asbestos related disease. It is my intention and desire to conclude a settlement in which the Center for Claims Resolution defendants will be released from any personal injury claim and also from any potential claim for wrongful death that might follow.

By this document I do the following:

I, on behalf of myself and my estate, agree to indemnify and hold harmless any Center for Claims Resolution defendants against any claims presented in the future by said potential heirs. It is my wish and intention that should said heirs present a claim, my estate will upon tender undertake to defend said Center for Claims Resolution defendants against such claim, and should such defense be unsuccessful, indemnify and hold harmless said Center for Claims Resolution defendants against any judgment obtained by said heirs. I understand that this is a contractual undertaking on my part which is binding upon me and my estate and is given by me in return for fair and valuable consideration to wit, the agreement by Center for Claims Resolution defendants in reliance, in part, upon this document, to pay me funds which I believe to be fair and reasonable in settlement of claims for my personal injury and potential wrongful death.

DATED: _9-27-00_____

SIGNED: X _____

(Please attach notary's acknowledgement)

CAWCPIFL
September 18, 2000
3:42 PM

8

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*: | TELEPHONE NO.: 415-986-5566 | FOR COURT USE ONLY |
|---|---|---|

Wartnick, Chaber, Harowitz, Tigerman, et al.
101 California Street, Suite 2200
San Francisco, CA  94111-5802

ATTORNEY FOR *(Name)*:   PLAINTIFF(S)

Insert name of court and name of judicial district and branch court, if any:
Superior Court of the State of California
City and County of San Francisco

PLAINTIFF/PETITIONER: Dall D. DeWeese, et al.

DEFENDANT/RESPONDENT: RAYBESTOS-MANHATTAN, INC. et.al.

**ENDORSED**
**F I L E D**
*San Francisco County Superior Court*

**OCT 1 0 2000**

**GORDON PARK-LI, Clerk**
BY:   MANUELITA ECHEVERRIA
Deputy Clerk

**REQUEST FOR DISMISSAL**

[X] Personal Injury, Property Damage, or Wrongful Death
  [ ] Motor Vehicle      [ ] Other
[ ] Family Law
[ ] Eminent Domain
[X] Other *(specify)*: ASBESTOS

CASE NUMBER:
307382

— A conformed copy will not be returned by the clerk unless a method of return is provided with the document. —

**1. TO THE CLERK:** Please dismiss this action as follows:

a. (1) [X] With prejudice    (2) [ ] Without prejudice

b. (1) [X] Complaint    (2) [ ] Petition
  (3) [ ] Cross-complaint filed by *(name)*:                    on *(date)*:
  (4) [ ] Cross-complaint filed by *(name)*:                    on *(date)*:
  (5) [ ] Entire action of all parties and all causes of action
  (6) [X] Other *(specify)*:* As to the defendant(s) on attached list, only.

Date: October 6, 2000

HARRY F. WARTNICK
(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

WARTNICK, CHABER, HAROWITZ, et al.

*(SIGNATURE)*
Attorney or party without attorney for:  PLAINTIFF(S)

* If dismissal requested is of specified parties only, of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

[ ] Plaintiff/Petitioner    [ ] Defendant/Respondent
[ ] Cross-complainant

**2. TO THE CLERK:** Consent to the above dismissal is hereby given.**
Date:

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

*(SIGNATURE)*
Attorney or party without attorney for:

** If a cross-complaint - or Response (Family Law) seeking affirmative relief - is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581(i) or (j).

[ ] Plaintiff/Petitioner    [ ] Defendant/Respondent
[ ] Cross-complainant

*(To be completed by clerk)*
3. [ ] Dismissal entered as requested on *(date)*:
4. [ ] Dismissal entered on *(date)*:                    as to only *(name)*:
5. [ ] Dismissal not entered as requested for the following reasons *(specify)*:

6. [ ] a. Attorney or party without attorney notified on *(date)*:
   b. Attorney or party without attorney not notified.  Filing party failed to provide
      [ ] a copy to conform    [ ] means to return conformed copy

Date:                                        Clerk, by _____, Deputy

Form Adopted by the
Judicial Council of California
982(a)(5) [Rev. January 1, 1997]

**REQUEST FOR DISMISSAL**

LEGAL SOLUTIONS

Code of Civil Procedure, § 581 et seq.
Cal. Rules of Court, rules 383, 1233

This dismissal applies only to defendant members as follows:

Anchem Products, Inc.; Armstrong World Industries, Inc., formerly known as Armstrong Cork Company; CertainTeed Corporation; C.E. Thurston and Sons, Inc.; Dana Corporation; (Formerly known as Nuturn Corporation); I.U. North America, Inc.; Maremont Corporation; (The Grizzly Manufacturing Company; The Grizzly Division of Maremont Corporation); National Service Industries, Inc.; NOSROC Corp.; Pfizer, Inc.; Quigley Company, Inc.; Shook & Fletcher Insulation Company; T&N plc, formerly known as Turner & Newall PLC, formerly known as Turner & Newall LTD; Turner & Newall Industries; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company.

**EXHIBIT  B**

# CENTER FOR CLAIMS RESOLUTION

504 CARNEGIE CENTER • 2nd FLOOR • PRINCETON, NJ 08540
MAILING ADDRESS: CN 5319  PRINCETON, NJ 08543-5319

December 21, 2000

Wartnick, Chaber, Harowitz
Harry Wartnick, Esq.
101 California St, Suite 2200
San Francisco, CA 94111-5802

Dear Harry:

As you are aware, on December 6, 2000, Armstrong World Industries, Inc. filed a petition under the federal Bankruptcy Code, and therefore has stopped paying its share of previously-negotiated settlements.

The CCR and its members have consistently understood and taken the position that under settlement agreements negotiated by the CCR on behalf of its then-member companies, each member company is liable under the settlement only for its share of the settlement as calculated by the CCR, and that no CCR member is liable for any other CCR member's settlement share. However, in certain recent proceedings arising from GAF's refusal to pay its share of previously-negotiated settlements, plaintiffs have sought to hold other CCR member companies liable for GAF's unpaid share of the settlement. This was contrary to what we believe to have been the shared understanding that each member is responsible only for its own settlement share, and also contrary to the fundamental purposes of the settlements (including avoiding the risks of joint and several liability in the case).

In these circumstances, the CCR member companies other than Armstrong have no choice but to ensure that acceptance of their payment of funds under the settlement will be deemed, both by your clients and by the CCR member companies, to constitute full payment and satisfaction of all amounts due under the settlement by the CCR member companies other than Armstrong.

Accordingly, pursuant to the settlement negotiated by the CCR on behalf of its then-member companies who were defendants and your firm on behalf of its clients, enclosed please find a check in the amount of $762,688.11. This check constitutes full and final payment of the amounts due under the settlement for each of the claims on the enclosed list by each of the CCR member companies other than Armstrong. This check is tendered in full settlement of any and all claims of any kind by your clients against all the CCR member companies other than Armstrong, including (but not limited to) claims for unpaid amounts under the settlement. Negotiation of the check will constitute a full and complete accord and satisfaction of all

EXHIBIT _B_

# CENTER FOR CLAIMS RESOLUTION

504 CARNEGIE CENTER • 2nd FLOOR • PRINCETON, NI 08540
MAILING ADDRESS: CN 5319  PRINCETON, NI 08543-5319

obligations owed to your clients by the CCR member companies other than Armstrong, and will forever release and discharge any and all claims against those member companies.

If you have any questions concerning this matter, please contact me at.

Very truly yours,

Jim McFadden

Enlcosures

Law Firm:                              Wartnick

Total Number of Plaintiffs:            5

Check Number:                          64639

| Claimant Name | SS Number | CCR Settlement Amount | AWI Portion | NET AMOUNT PAID |
|---|---|---|---|---|
| DEWEESE, DALL | 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 | 135,000.00 | 100,305.54 | 34,694.46 |
| DOVAL, ROLANDO | 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 | 335,000.00 | 54,798.20 | 280,201.80 |
| GROSSICH, HERBERT | 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 | 300,000.00 | 200,051.26 | 99,948.74 |
| KINSMAN, RAY | 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 | 290,000.00 | 61,263.18 | 228,736.82 |
| ROGERS, FLOYD | 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 | 200,000.00 | 80,893.71 | 119,106.29 |
| **Total dollars** | | **1,260,000.00** | **497,311.89** | **762,688.11** |

THIS CHECK IS VOID WITHOUT ... BLUE & RED BACKGROUND AND AN ARTIFICIAL WATERMARK ... THE BACK - HOLD AT ANGLE TO VIEW

PNC BANK, N.A.
NEW JERSEY
METROPARK PLAZA, EDISON, NJ, 08818
55-277-312

**CENTER FOR CLAIMS RESOLUTION**
INDEMNITY ACCOUNT
VOID AFTER 180 DAYS

| DATE | AMOUNT |
|------|--------|
| 12/21/2000 | $*****762,688.11 |

Seven Hundred Sixty-Two Thousand Six Hundred Eighty-Eight  And 11/100 Dollars

PAY
TO THE
ORDER
OF

WARTNICK, CHABER, HAROWITZ, SMITH & TIGERMAN AS
ATTORNEYS FOR 5 PLAINTIFFS

Joseph J. Jordan

SIGNATURE HAS A COLORED BACKGROUND • BORDER CONTAINS MICROPRINTING

⑈064639⑈ ⑆031202770⑆ 8009244104⑈

**EXHIBIT  C**

2000266787
CASF

## COMPROMISE AND RELEASE OF ALL CLAIMS
## INCLUDING UNKNOWN AND FUTURE CLAIMS

1. Release of all Personal Injury and Death Claims:

(a)  THIS RELEASE EXTINGUISHES ALL CLAIMS FOR ALL INJURIES ARISING FROM OR RELATED TO ANY EXPOSURE TO ASBESTOS EXPERIENCED BY ROLANDO DOVAL INCLUDING BUT NOT LIMITED TO THOSE INJURIES NOW KNOWN, THOSE NOW EXISTING BUT UNKNOWN, THOSE THAT MANIFEST THEMSELVES IN THE FUTURE, AND THOSE THAT CAUSE HIS/HER DEATH. THIS RELEASE SPECIFICALLY EXTINGUISHES ALL CLAIMS BASED ON ANY CANCER OR MALIGNANCY.

2. Releasors:

(a)  Plaintiff: ROLANDO DOVAL
Social Security Number: 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

(b)  Plaintiff's spouse: CONSUELO DOVAL
Social Security Number:

(c)  Plaintiff's children: GILBERT DOVAL and  RICHARD ANTHONY DOVAL

(d)  Plaintiff's heirs, as defined by California Code of Civil Procedure Section 377(b).

3. Releasees:

The Releasees are all subscribers to the Agreement Concerning Asbestos-Related Claims signed October 6, 1988 (The Center for Claims Resolution Agreement), and all of their predecessors and successors, their parent and subsidiary companies and divisions, and their current and former attorneys, liability insurance carriers, to the extent of their liability for Center non-insurance company subscribers only, officers, directors, agents, and employees.  The names of the subscribers are set out below:

Manufacturers: Amchem Products, Inc.; Armstrong World Industries, Inc.; C.E. Thurston and Sons, Incorporated; Certain Teed Corporation; Dana Corporation; I.U. North America, Inc.; Maremont Corporation; National Services Industries Inc.; Nosroc Corp.; Pfizer Inc; Quigley Company, Inc.; Shook & Fletcher Insulation Co.; T & N, plc; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company;, Incorporated, and all distributors insofar as the liability of any distributor is predicated upon the distribution of products manufactured by Rhone Poulenc (Tendered To Amc)

1


EXHIBIT C

4. Preliminary Facts:

ROLANDO DOVAL alleges that he has been exposed to asbestos that the asbestos was produced by or came from a product produced by one or more of the Releasees, and that the exposure to asbestos has injured him.

Based on this exposure, ROLANDO DOVAL has filed suit, or is considering filing suit, for damages arising from his personal injury.

Releasees desire to compromise and obtain a general release of all existing and future claims that could possibly arise from these facts, without admitting liability.

5. Terms of Settlement:

In consideration of $335,000.00, in total, Releasors release and forever discharge Releasees from any and all claims arising from or related to any exposure to asbestos experienced by ROLANDO DOVAL. This release specifically includes, but is not limited to, all wrongful death claims, all loss of consortium claims, and all claims based on presently undiscovered or unmanifested injures (including any cancer and any malignancy) arising from or related to any exposure to asbestos experienced by ROLANDO DOVAL.

For the purpose of this release, the word "claims" includes all claims, demands, actions, and suits of any kind. For the purposes of this release, the word "injuries" includes all injuries, illnesses, disabilities, losses, and harms of any kind including but not limited to all emotional injuries.

This release does not cover claims for injuries allegedly suffered by the plaintiff's spouse and children because of their personal exposure to asbestos or property damage claims.

The consideration specified in this release shall be paid in the form of drafts or checks payable to Releasor's counsel as trustee for Releasors.

6. Unknown Injuries and Potential Wrongful-Death Claims:

Releasors understand that people exposed to asbestos may be subject to an increased risk of contracting cancer, including but not limited to lung cancer and mesothelioma. Releasors also understand that ROLANDO DOVAL may have suffered injuries that are as yet unknown to him/her and that unknown complications may arise from conditions of which he/she is not aware. Nevertheless, Releasors intend to release and forever discharge Releasees from any claim for any injury arising from or related to any exposure to asbestos experienced by ROLANDO DOVAL, including but not limited

2

to those injuries now known, those now existing but unknown, those that manifest themselves in the future, and those that cause his/her death.

Releasors hereby waive any right or benefit that Releasors may have, now or in the future, under Section 1542 of the Civil Code of the State of California, which reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

7. Indemnity Against Claims by Lienholders:

Releasors warrant that they, or some of them are the sole owners of all claims of any kind arising out of the injuries covered in this Release.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim, brought by any holder of a lien or encumbrance, that is related to the injuries covered in this release, other than cross-complaints or cross-actions of co-defendants. This indemnity agreement specifically does not cover cross-complaints or cross-actions of co-defendants.

8. Indemnity Against Inaccuracy of Representation:

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting directly or indirectly from any falsity or inaccuracy of any representation made in this release by Releasors.

9. Indemnity Against Wrongful-Death Claims:

Releasors warrant and represent that only they, or only some of them, would be legally entitled to bring suit based on an allegedly wrongful death of ROLANDO DOVAL. Furthermore, they warrant that no wrongful death suit based on any exposure to asbestos experienced by ROLANDO DOVAL will be brought by anyone against Releasees.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any wrongful death suit, brought by anyone, based on any exposure to asbestos experienced by ROLANDO DOVAL.

10. Indemnity Against Claims by Minors and Unborn Children:

Releasors understand that any minors among the Releasors may have the legal right to disaffirm this contract.  Releasors agree that this release is not intended to expand whatever legal rights a minor may have to disaffirm this release and Releasees reserve the right to challenge any attempted disaffirmance of it.  All Releasors who are not minors agree that this release will remain binding on them even if a minor disaffirms it.

Furthermore, all Releasors who are not minors agree to indemnify Releasees against all liability, including, but not limited to, all attorneys' fees and expenses, resulting from (1) any attempted disaffirmance, whether successful or not, and (2) any claim brought by a Releasor who is now a minor that arises from or is related to any exposure to asbestos experienced by ROLANDO DOVAL.

Releasors also agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim brought by any child now unborn that arises from or is related to any exposure to asbestos experienced by ROLANDO DOVAL

11.  Warranty of Good-Faith Compromise of Disputed Claims:

Releasors warrant and represent the following:

(a)   Releasors agree that this release is a compromise of doubtful and disputed claims, and that payment is not to be construed as an admission of liability.  Releasors also agree that this release shall not be admissible as evidence in any suit of proceeding whatsoever as evidence or admission of any liability.

(b)   Releasors warrant that this release has been entered into in good faith for the purpose of resolving disputed and uncertain claims.

(c)   Releasors warrant that they will use their best efforts to obtain court approval of this release, including a determination that this settlement has been entered into in good faith, and that they will fully cooperate with Releasees and their counsel in their efforts to obtain the determination and an order, in accordance with Section 877.6 of the Code of Civil Procedure dismissing cross- complaints.

12.  Persons Bound:

This release is binding on Releasors, collectively and individually, and on all their heirs, devisees, executors, administrators, personal representatives, and assigns.  Each warranty and each agreement in this release is enforceable against Releasors collectively and each Releasor individually.

13.  Remedies for Breach:

Releasors agree to pay for attorneys' fees, expenses, and costs incurred by Releasees as a result of any proceeding brought or maintained by Releasors or by any Releasor in breach of this release.

14.  Authorization to File Dismissal:

Releasors authorize their counsel to execute a request for dismissal with prejudice of Releasees in the SUPERIOR COURT in SAN FRANCISCO COUNTY, CALIFORNIA - NORTH, DOCKET#: 311206, which is entitled "ROLANDO DOVAL VS RAYBESTOS-MANHATTAN INC ET AL".  Releasors authorize counsel for Releasees to file the request for dismissal after Releasees have paid Releasors, or Releasors' counsel as their trustee, the consideration specified in this release.  Releasors also agree to dismiss Releasees from all other past or future claims, brought by any of them, that are in any way connected with any exposure to asbestos experienced by ROLANDO DOVAL.

15. Releasors Warrant That They Have Read This Release:

RELEASORS HEREBY WARRANT THAT THEY HAVE READ THIS RELEASE IN ITS ENTIRETY, HAVE HAD IT FULLY EXPLAINED TO THEM, AND FULLY UNDERSTAND AND APPRECIATE ITS TERMS AND THEIR CONSEQUENCES.

Releasors understand that this release is a full, complete and final release and that the sum of $335,000.00 is the total amount asbestos experienced by ROLANDO DOVAL.

Dated: 09/29/00

ROLANDO DOVAL

Subscribed and sworn to before me this 29 day of SEPTEMBER, 2000

NOTARY PUBLIC

My Commission Expires: 12/15/00

Rolando Palou
Notary Public, State of Florida
My Comm. Expires Dec 15, 2000
No. CC607682
Bonded Thru: Official Notary Service
1-(800) 723-0121

---

Dated: 09/29/00

CONSUELO DOVAL

Subscribed and sworn to before me this 29 day of SEPTEMBER, 2000

NOTARY PUBLIC

My Commission Expires: 12/15/00

Rolando Palou
Notary Public, State of Florida
My Comm. Expires Dec 15, 2000
No. CC607682
Bonded Thru: Official Notary Service
1-(800) 723-0121

---

*Gilbert Doval*
GILBERT DOVAL

Dated: 09/29/00

Subscribed and sworn to before me this 29 day of SEPtEM bER 2000.

*Rolando Palou*
NOTARY PUBLIC

My Commission Expires: 12/15/00

Rolando Palou
Notary Public, State of Florida
My Comm. Expires Dec. 15, 2000
No. CC607682
Bonded Thru: Official Notary Service
1-(800) 723-0121

*Richard Anthony Doval*
RICHARD ANTHONY DOVAL

Dated: 09/29/00

Subscribed and sworn to before me this 29 day of SEptEMbER, 2000.

*Rolando Palou*
NOTARY PUBLIC

My Commission Expires: 12/15/00

Rolando Palou
Notary Public, State of Florida
My Comm. Expires Dec. 15, 2000
No. CC607682
Bonded Thru: Official Notary Service
1-(800) 723-0121

This release was executed with my approval, and under my direction and advice. Its provisions and their consequences have been fully explained to Releasors.

*signature*
WARTNICK, CHABER,
HAROWITZ, SMITH & TIGERMAN

Dated: 10/17/00

7

## ADDENDUM TO PERSONAL INJURY RELEASE
## HOLD HARMLESS AGREEMENT

### (To be used as Missing Heir(s) Provision)

I, ROLANDO DOVAL, recognize that as a part of the settlement of my personal injury case, the Center for Claims Resolution defendants wish to obtain releases and buy their peace with respect to potential claims that could be brought by my estate or my heirs should I die of asbestos related disease. It is my intention and desire to conclude a settlement in which the Center for Claims Resolution defendants will be released from any personal injury claim and also from any potential claim for wrongful death that might follow.

By this document I do the following:

I, on behalf of myself and my estate, agree to indemnify and hold harmless any Center for Claims Resolution defendants against any claims presented in the future by said potential heirs. It is my wish and intention that should said heirs present a claim, my estate will upon tender undertake to defend said Center for Claims Resolution defendants against such claim, and should such defense be unsuccessful, indemnify and hold harmless said Center for Claims Resolution defendants against any judgment obtained by said heirs. I understand that this is a contractual undertaking on my part which is binding upon me and my estate and is given by me in return for fair and valuable consideration to wit, the agreement by Center for Claims Resolution defendants in reliance, in part, upon this document, to pay me funds which I believe to be fair and reasonable in settlement of claims for my personal injury and potential wrongful death.

DATED: _09/29/00_

SIGNED: _Rolando Doval_

(Please attach notary's acknowledgement)

CAWCPIFL
September 18, 2000
3:42 PM

STATE OF FLORIDA
COUNTY OF DADE
ON 09-29-00
BEFOREME ROLANDO Palo
SIGNER ROLANDO DOVA

Rolando Palou
Notary Public, State of Florida
My Comm. Expires Dec. 15, 2000
No. CC607682
Bonded Thru: Official Notary Service
1-(800) 723-0121

Rolando Palou

8

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address):

TELEPHONE NO.: 415-986-5566

Wartnick, Chaber, Harowitz, Tigerman, et al.
101 California Street, Suite 2200
San Francisco, CA  94111-5802

ATTORNEY FOR (Name):   PLAINTIFF(S)

Insert name of court and name of judicial district and branch court, if any:

Superior Court of the State of California
City and County of San Francisco

PLAINTIFF/PETITIONER: Rolando Doval, et al.

DEFENDANT/RESPONDENT: RAYBESTOS-MANHATTAN, INC. et.al.

FOR COURT USE ONLY

ENDORSED
F I L E D
San Francisco County Superior Court

OCT 2 0 2000

ALAN CARLSON, Clerk
BY: KEVIN R. DOUGHERTY
Deputy Clerk

**REQUEST FOR DISMISSAL**

[X] Personal Injury, Property Damage, or Wrongful Death
    [ ] Motor Vehicle   [ ] Other
[ ] Family Law
[ ] Eminent Domain
[X] Other (specify): ASBESTOS

CASE NUMBER:
311206

— A conformed copy will not be returned by the clerk unless a method of return is provided with the document. —

1. **TO THE CLERK: Please dismiss this action as follows:**

  a. (1) [X] With prejudice   (2) [ ] Without prejudice

  b. (1) [X] Complaint   (2) [ ] Petition
    (3) [ ] Cross-complaint filed by (name):
    (4) [ ] Cross-complaint filed by (name):
    (5) [ ] Entire action of all parties and all causes of action
    (6) [X] Other (specify):* As to the defendant(s) on the attached list only.

on (date):
on (date):

WARTNICK, CHABER, HAROWITZ, et al.

Date: October 11, 2000

HARRY F. WARTNICK

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

(SIGNATURE)

Attorney or party without attorney for:   PLAINTIFF(S)

* If dismissal requested is of specified parties only, of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

[ ] Plaintiff/Petitioner  [ ] Defendant/Respondent
[ ] Cross-complainant

2. **TO THE CLERK: Consent to the above dismissal is hereby given.**

Date:

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

(SIGNATURE)

Attorney or party without attorney for:

** If a cross-complaint - or Response (Family Law) seeking affirmative relief - is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581(i) or (j).

[ ] Plaintiff/Petitioner  [ ] Defendant/Respondent
[ ] Cross-complainant

(To be completed by clerk:)

3. [ ] Dismissal entered as requested on (date):
4. [ ] Dismissal entered on (date):    as to only (name):
5. [ ] Dismissal not entered as requested for the following reasons (specify):

6. [ ] a. Attorney or party without attorney notified on (date):
    b. Attorney or party without attorney not notified.  Filing party failed to provide
    [ ] a copy to conform  [ ] means to return conformed copy

Date:                   Clerk, by _____ , Deputy

Form Adopted by the
Judicial Council of California

**REQUEST FOR DISMISSAL**

LEGAL SOLUTIONS

Code of Civil Procedure, § 581 et seq.
Cal. Rules of Court, rules 383, 1233

This dismissal applies only to defendant members as follows:

Anchem Products, Inc.; Armstrong World Industries, Inc., formerly known as Armstrong Cork Company; CertainTeed Corporation; C.E. Thurston and Sons, Inc.; Dana Corporation; (Formerly known as Nuturn Corporation); I.U. North America, Inc.; Maremont Corporation; (The Grizzly Manufacturing Company; The Grizzly Division of Maremont Corporation); National Service Industries, Inc.; NOSROC Corp.; Pfizer, Inc.; Quigley Company, Inc.; Shook & Fletcher Insulation Company; T&N plc, formerly known as Turner & Newall PLC, formerly known as Turner & Newall LTD; Turner & Newall Industries; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company.

**EXHIBIT D**

2000260943
CASF

# COMPROMISE AND RELEASE OF ALL CLAIMS
## INCLUDING UNKNOWN AND FUTURE CLAIMS

1. Release of all Personal Injury and Death Claims:

(a)  THIS RELEASE EXTINGUISHES ALL CLAIMS FOR ALL INJURIES ARISING FROM OR RELATED TO ANY EXPOSURE TO ASBESTOS EXPERIENCED BY FLOYD ED ROGERS INCLUDING BUT NOT LIMITED TO THOSE INJURIES NOW KNOWN, THOSE NOW EXISTING BUT UNKNOWN, THOSE THAT MANIFEST THEMSELVES IN THE FUTURE, AND THOSE THAT CAUSE HIS/HER DEATH. THIS RELEASE SPECIFICALLY EXTINGUISHES ALL CLAIMS BASED ON ANY CANCER OR MALIGNANCY.

2. Releasors:

(a)  Plaintiff: FLOYD ED ROGERS
     Social Security Number: 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

(b)  Plaintiff's spouse: MARGARET ROGERS
     Social Security Number:

(c)  Plaintiff's children: DONALD ROGERS and MARY KATHLEEN ROGERS

(d)  Plaintiff's heirs, as defined by California Code of Civil Procedure Section 377(b).

3. Releasees:

The Releasees are all subscribers to the Agreement Concerning Asbestos-Related Claims signed October 6, 1988 (The Center for Claims Resolution Agreement), and all of their predecessors and successors, their parent and subsidiary companies and divisions, and their current and former attorneys, liability insurance carriers, to the extent of their liability for Center non-insurance company subscribers only, officers, directors, agents, and employees.  The names of the subscribers are set out below:

Manufacturers: Amchem Products, Inc.; Armstrong World Industries, Inc.; C.E. Thurston and Sons, Incorporated; Certain Teed Corporation; Dana Corporation; I.U. North America, Inc.; Maremont Corporation; National Services Industries Inc.; Nosroc Corp.; Pfizer Inc; Quigley Company, Inc.; Shook & Fletcher Insulation Co.; T & N, plc; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company;, Incorporated, and all distributors insofar as the liability of any distributor is predicated upon the distribution of products manufactured by Rhone Poulenc (Tendered To Amc)

1

EXHIBIT _D_

4.  Preliminary Facts:

FLOYD ED ROGERS alleges that he has been exposed to asbestos that the asbestos was produced by or came from a product produced by one or more of the Releasees, and that the exposure to asbestos has injured him.

Based on this exposure, FLOYD ED ROGERS has filed suit, or is considering filing suit, for damages arising from his personal injury.

Releasees desire to compromise and obtain a general release of all existing and future claims that could possibly arise from these facts, without admitting liability.

5.  Terms of Settlement:

In consideration of $200,000.00, in total, Releasors release and forever discharge Releasees from any and all claims arising from or related to any exposure to asbestos experienced by FLOYD ED ROGERS.  This release specifically includes, but is not limited to, all wrongful death claims, all loss of consortium claims, and all claims based on presently undiscovered or unmanifested injures (including any cancer and any malignancy) arising from or related to any exposure to asbestos experienced by FLOYD ED ROGERS.

For the purpose of this release, the word "claims" includes all claims, demands, actions, and suits of any kind.  For the purposes of this release, the word "injuries" includes all injuries, illnesses, disabilities, losses, and harms of any kind including but not limited to all emotional injuries.

This release does not cover claims for injuries allegedly suffered by the plaintiff's spouse and children because of their personal exposure to asbestos or property damage claims.

The consideration specified in this release shall be paid in the form of drafts or checks payable to Releasor's counsel as trustee for Releasors.

6.  Unknown Injuries and Potential Wrongful-Death Claims:

Releasors understand that people exposed to asbestos may be subject to an increased risk of contracting cancer, including but not limited to lung cancer and mesothelioma.  Releasors also understand that FLOYD ED ROGERS may have suffered injuries that are as yet unknown to him/her and that unknown complications may arise from conditions of which he/she is not aware.  Nevertheless, Releasors intend to release and forever discharge Releasees from any claim for any injury arising from or related to any exposure to asbestos experienced by FLOYD ED ROGERS, including but not limited

2

to those injuries now known, those now existing but unknown, those that manifest themselves in the future, and those that cause his/her death.

Releasors hereby waive any right or benefit that Releasors may have, now or in the future, under Section 1542 of the Civil Code of the State of California, which reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

7. Indemnity Against Claims by Lienholders:

Releasors warrant that they, or some of them are the sole owners of all claims of any kind arising out of the injuries covered in this Release.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim, brought by any holder of a lien or encumbrance, that is related to the injuries covered in this release, other than cross-complaints or cross-actions of co-defendants. This indemnity agreement specifically does not cover cross-complaints or cross-actions of co-defendants.

8. Indemnity Against Inaccuracy of Representation:

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting directly or indirectly from any falsity or inaccuracy of any representation made in this release by Releasors.

9. Indemnity Against Wrongful-Death Claims:

Releasors warrant and represent that only they, or only some of them, would be legally entitled to bring suit based on an allegedly wrongful death of FLOYD ED ROGERS. Furthermore, they warrant that no wrongful death suit based on any exposure to asbestos experienced by FLOYD ED ROGERS will be brought by anyone against Releasees.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any wrongful death suit, brought by anyone, based on any exposure to asbestos experienced by FLOYD ED ROGERS.

10. Indemnity Against Claims by Minors and Unborn Children:

Releasors understand that any minors among the Releasors may have the legal right to disaffirm this contract. Releasors agree that this release is not intended to expand whatever legal rights a minor may have to disaffirm this release and Releasees reserve the right to challenge any attempted disaffirmance of it. All Releasors who are not minors agree that this release will remain binding on them even if a minor disaffirms it.

Furthermore, all Releasors who are not minors agree to indemnify Releasees against all liability, including, but not limited to, all attorneys' fees and expenses, resulting from (1) any attempted disaffirmance, whether successful or not, and (2) any claim brought by a Releasor who is now a minor that arises from or is related to any exposure to asbestos experienced by FLOYD ED ROGERS.

Releasors also agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim brought by any child now unborn that arises from or is related to any exposure to asbestos experienced by FLOYD ED ROGERS

11.   Warranty of Good-Faith Compromise of Disputed Claims:

Releasors warrant and represent the following:

(a)   Releasors agree that this release is a compromise of doubtful and disputed claims, and that payment is not to be construed as an admission of liability. Releasors also agree that this release shall not be admissible as evidence in any suit of proceeding whatsoever as evidence or admission of any liability.

(b)   Releasors warrant that this release has been entered into in good faith for the purpose of resolving disputed and uncertain claims.

(c)   Releasors warrant that they will use their best efforts to obtain court approval of this release, including a determination that this settlement has been entered into in good faith, and that they will fully cooperate with Releasees and their counsel in their efforts to obtain the determination and an order, in accordance with Section 877.6 of the Code of Civil Procedure dismissing cross- complaints.

12.   Persons Bound:

This release is binding on Releasors, collectively and individually, and on all their heirs, devisees, executors, administrators, personal representatives, and assigns. Each warranty and each agreement in this release is enforceable against Releasors collectively and each Releasor individually.

13.   Remedies for Breach:

Releasors agree to pay for attorneys' fees, expenses, and costs incurred by Releasees as a result of any proceeding brought or maintained by Releasors or by any Releasor in breach of this release.

14.  Authorization to File Dismissal:

Releasors authorize their counsel to execute a request for dismissal with prejudice of Releasees in the SUPERIOR COURT in SAN FRANCISCO COUNTY, CALIFORNIA - NORTH, DOCKET#: 310210, which is entitled "FLOYD ED ROGERS V RAYBESTOS-MANHATTAN ET AL". Releasors authorize counsel for Releasees to file the request for dismissal after Releasees have paid Releasors, or Releasors' counsel as their trustee, the consideration specified in this release. Releasors also agree to dismiss Releasees from all other past or future claims, brought by any of them, that are in any way connected with any exposure to asbestos experienced by FLOYD ED ROGERS.

15. Releasors Warrant That They Have Read This Release:

RELEASORS HEREBY WARRANT THAT THEY HAVE READ THIS RELEASE IN ITS ENTIRETY, HAVE HAD IT FULLY EXPLAINED TO THEM, AND FULLY UNDERSTAND AND APPRECIATE ITS TERMS AND THEIR CONSEQUENCES.

Releasors understand that this release is a full, complete and final release and that the sum of $200,000.00 is the total amount asbestos experienced by FLOYD ED ROGERS.

_Floyd Ed Rogers_          Dated: _9-25-2000_
FLOYD ED ROGERS

Subscribed and sworn to before me this _25_ day of _Sept._, _2000_.

_Mary de Jesus Guerrero_
NOTARY PUBLIC

> **MARY DE JESUS GUERRERO**
> Commission # 1126829
> Notary Public — California
> Tulare County
> My Comm. Expires Feb 9, 2001

My Commission Expires: _2-9-2001_

_Margaret Rogers_          Dated: _9-25-00_
MARGARET ROGERS

Subscribed and sworn to before me this _25_ day of _Sept._, _2000_.

_Mary de Jesus Guerrero_
NOTARY PUBLIC

> **MARY DE JESUS GUERRERO**
> Commission # 1126829
> Notary Public — California
> Tulare County
> My Comm. Expires Feb 9, 2001

My Commission Expires: _2-9-2001_

_____     Dated:_____
DONALD ROGERS


Subscribed and sworn to before me this _____ day of _____, ____.


_____
NOTARY PUBLIC


My Commission Expires:_____


*Mary Kathleen Rogers*     Dated: _9/28/00_
MARY KATHLEEN ROGERS


Subscribed and sworn to before me this _28th_ day of _September_, _2000_


*Eva Guralny*
NOTARY PUBLIC

> EVA GURALNY
> Notary Public - Nevada
> No. 99-38043-1
> My appt. exp. Jan. 26, 2003


My Commission Expires:_____

    This release was executed with my approval, and under my direction and advice. Its provisions and their consequences have been fully explained to Releasors.


_____     Dated: _10-17-00_
WARTNICK, CHABER,
HAROWITZ, SMITH & TIGERMAN


7

_Donald E. Rogers_                Dated: _Oct. 3/2000_
DONALD ROGERS

Subscribed and sworn to before me this _3rd_ day of _October, 2000_

_Angie Van Rooyen_
NOTARY PUBLIC

My Commission Expires: _July 18, 2002_

ANGIE VAN ROOYEN
COMM. # 1187778
NOTARY PUBLIC-CALIFORNIA
CONTRA COSTA COUNTY
COMM. EXP. JULY 18, 2002

_____        Dated:_____
MARY KATHLEEN ROGERS

Subscribed and sworn to before me this _____ day of _____, _____.

_____
NOTARY PUBLIC

My Commission Expires:_____

    This release was executed with my approval, and under my direction and advice.
Its provisions and their consequences have been fully explained to Releasors.

_____        Dated: _10-17-00_
WARTNICK, CHABER,
HAROWITZ, SMITH & TIGERMAN

## ADDENDUM TO PERSONAL INJURY RELEASE
## HOLD HARMLESS AGREEMENT

(To be used as Missing Heir(s) Provision)

I, FLOYD ED ROGERS, recognize that as a part of the settlement of my personal injury case, the Center for Claims Resolution defendants wish to obtain releases and buy their peace with respect to potential claims that could be brought by my estate or my heirs should I die of asbestos related disease. It is my intention that it is my intention to conclude a settlement in which the Center for Claims Resolution defendants will be released from any personal injury claim and also from any potential claim for wrongful death that might follow.

By this document I do the following:

I, on behalf of myself and my estate, agree to indemnify and hold harmless any Center for Claims Resolution defendants against any claims presented in the future by said potential heirs. It is my wish and intention that should said heirs present a claim, my estate will upon tender undertake to defend said Center for Claims Resolution defendants against such claim, and should such defense be unsuccessful, indemnify and hold harmless said Center for Claims Resolution defendants against any judgment obtained by said heirs. I understand that this is a contractual undertaking on my part which is binding upon me and my estate and is given by me in return for fair and valuable consideration to wit, the agreement by Center for Claims Resolution defendants in reliance, in part, upon this document, to pay me funds which I believe to be fair and reasonable in settlement of claims for my personal injury and potential wrongful death.

DATED: _9 - 25 - 2000_____

SIGNED: _Floyd Ed Rogers_____

(Please attach notary's acknowledgement)

> MARY DE JESUS GUERRERO
> Commission # 1126829
> Notary Public — California
> Tulare County
> My Comm. Expires Feb 9, 2001

_Mary di Jesus Guerrero_
_9-25-2000_

CAWCPIFL
September 18, 2000
3:42 PM

## NOTARY ACKNOWLEDGEMENT

State of  CALIFORNIA

County of  TULARE

On 9-25-2000, before me  MARY DE JESUS GUERRERO
                                    Notary Public

personally appeared  FLOYD EDWARD ROGERS
                          Name(s) of Signer(s)

         X  personally known to me

         X  proved to me on the basis of
               satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s), or the entity upon behalf
of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*Mary de Jesus Guerrero*
            signature of notary public

MARY DE JESUS GUERRERO
Commission # 1126629
Notary Public — California
Tulare County
My Comm. Expires Feb 9, 2001

• place notary seal above •

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address): | TELEPHONE NO.: 415-986-5566 | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address):  
TELEPHONE NO.: **415-986-5566**

Wartnick, Chaber, Harowitz, Tigerman, et al.
101 California Street, Suite 2200
San Francisco, CA  94111-5802

ATTORNEY FOR (Name): PLAINTIFF(S)

Insert name of court and name of judicial district and branch court, if any:
Superior Court of the State of California
City and County of San Francisco

PLAINTIFF/PETITIONER: Floyd Rogers, et al.

DEFENDANT/RESPONDENT: RAYBESTOS-MANHATTAN, INC. et.al.

**FOR COURT USE ONLY**

ENDORSED
F I L E D
San Francisco County Superior Court

OCT 2 0 2000

ALAN CARLSON, Clerk
BY: KEVIN R. Bell
Deputy Clerk

**REQUEST FOR DISMISSAL**

[X] Personal Injury, Property Damage, or Wrongful Death
    [ ] Motor Vehicle   [ ] Other
[ ] Family Law
[ ] Eminent Domain
[X] Other (specify): ASBESTOS

CASE NUMBER: 310210

—— A conformed copy will not be returned by the clerk unless a method of return is provided with the document. ——

1. **TO THE CLERK:** Please dismiss this action as follows:
  a. (1) [X] With prejudice  (2) [ ] Without prejudice
  b. (1) [X] Complaint  (2) [ ] Petition
    (3) [ ] Cross-complaint filed by (name):         on (date):
    (4) [ ] Cross-complaint filed by (name):         on (date):
    (5) [ ] Entire action of all parties and all causes of action
    (6) [X] Other (specify):* As to the defendant(s) on the attached list, only.

Date: October 13, 2000

HARRY F. WARTNICK

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

WARTNICK, CHABER, HAROWITZ, et al.

(SIGNATURE)
Attorney or party without attorney for: PLAINTIFF(S)

* If dismissal requested is of specified parties only, of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

[ ] Plaintiff/Petitioner    [ ] Defendant/Respondent
[ ] Cross-complainant

2. **TO THE CLERK:** Consent to the above dismissal is hereby given.**

Date:

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

(SIGNATURE)
Attorney or party without attorney for:

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581(i) or (j).

[ ] Plaintiff/Petitioner    [ ] Defendant/Respondent
[ ] Cross-complainant

(To be completed by clerk)
3. [ ] Dismissal entered as requested on (date):
4. [ ] Dismissal entered on (date):        as to only (name):
5. [ ] Dismissal **not** entered as requested for the following reasons (specify):

6. [ ] a. Attorney or party without attorney notified on (date):
      b. Attorney or party without attorney not notified. Filing party failed to provide
        [ ] a copy to conform    [ ] means to return conformed copy

Date:           Clerk, by _____, Deputy

Form Adopted by the
Judicial Council of California
982(a)(5) [Rev. January 1, 1997]

**REQUEST FOR DISMISSAL**

LEGAL SOLUTIONS

Code of Civil Procedure, § 581 et seq.
Cal. Rules of Court, rules 383, 1233

This dismissal applies only to defendant members as follows:

Anchem Products, Inc.; Armstrong World Industries, Inc., formerly known as Armstrong Cork Company; CertainTeed Corporation; C.E. Thurston and Sons, Inc.; Dana Corporation; (Formerly known as Nuturn Corporation); I.U. North America, Inc.; Maremont Corporation; (The Grizzly Manufacturing Company; The Grizzly Division of Maremont Corporation); National Service Industries, Inc.; NOSROC Corp.; Pfizer, Inc.; Quigley Company, Inc.; Shook & Fletcher Insulation Company; T&N plc, formerly known as Turner & Newall PLC, formerly known as Turner & Newall LTD; Turner & Newall Industries; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company.

2000262081
CASF

**COMPROMISE AND RELEASE OF ALL CLAIMS
INCLUDING UNKNOWN AND FUTURE CLAIMS**

1. Release of all Personal Injury and Death Claims:

(a)  THIS RELEASE EXTINGUISHES ALL CLAIMS FOR ALL INJURIES ARISING FROM OR RELATED TO ANY EXPOSURE TO ASBESTOS EXPERIENCED BY HERBERT GROSSICH INCLUDING BUT NOT LIMITED TO THOSE INJURIES NOW KNOWN, THOSE NOW EXISTING BUT UNKNOWN, THOSE THAT MANIFEST THEMSELVES IN THE FUTURE, AND THOSE THAT CAUSE HIS/HER DEATH. THIS RELEASE SPECIFICALLY EXTINGUISHES ALL CLAIMS BASED ON ANY CANCER OR MALIGNANCY.

2. Releasors:

(a)  Plaintiff: HERBERT GROSSICH
Social Security Number: 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

(b)  Plaintiff's spouse: ELAINE GROSSICH
Social Security Number:

(c)  Plaintiff's children: ANGELINE GIBALA, SUSAN GROSSICH, NANCY LANG, SHARON BREMER and HERBERT GROSSICH

(d)  Plaintiff's heirs, as defined by California Code of Civil Procedure Section 377(b).

3. Releasees:

The Releasees are all subscribers to the Agreement Concerning Asbestos-Related Claims signed October 6, 1988 (The Center for Claims Resolution Agreement), and all of their predecessors and successors, their parent and subsidiary companies and divisions, and their current and former attorneys, liability insurance carriers, to the extent of their liability for Center non-insurance company subscribers only, officers, directors, agents, and employees. The names of the subscribers are set out below:

Manufacturers: Amchem Products, Inc.; Armstrong World Industries, Inc.; C.E. Thurston and Sons, Incorporated; Certain Teed Corporation; Dana Corporation; I.U. North America, Inc.; Maremont Corporation; National Services Industries Inc.; Nosroc Corp.; Pfizer Inc; Quigley Company, Inc.; Shook & Fletcher Insulation Co.; T & N, plc; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company;, Incorporated, and all distributors insofar as the liability

EXHIBIT _E_

of any distributor is predicated upon the distribution of products manufactured by Rhone Poulenc (Tendered To Amc)

4.  Preliminary Facts:

HERBERT GROSSICH alleges that he has been exposed to asbestos that the asbestos was produced by or came from a product produced by one or more of the Releasees, and that the exposure to asbestos has injured him.

Based on this exposure, HERBERT GROSSICH has filed suit, or is considering filing suit, for damages arising from his personal injury.

Releasees desire to compromise and obtain a general release of all existing and future claims that could possibly arise from these facts, without admitting liability.

5.  Terms of Settlement:

In consideration of $300,000.00, in total, Releasors release and forever discharge Releasees from any and all claims arising from or related to any exposure to asbestos experienced by HERBERT GROSSICH.  This release specifically includes, but is not limited to, all wrongful death claims, all loss of consortium claims, and all claims based on presently undiscovered or unmanifested injures (including any cancer and any malignancy) arising from or related to any exposure to asbestos experienced by HERBERT GROSSICH.

For the purpose of this release, the word "claims" includes all claims, demands, actions, and suits of any kind.  For the purposes of this release, the word "injuries" includes all injuries, illnesses, disabilities, losses, and harms of any kind including but not limited to all emotional injuries.

This release does not cover claims for injuries allegedly suffered by the plaintiff's spouse and children because of their personal exposure to asbestos or property damage claims.

The consideration specified in this release shall be paid in the form of drafts or checks payable to Releasor's counsel as trustee for Releasors.

6.  Unknown Injuries and Potential Wrongful-Death Claims:

Releasors understand that people exposed to asbestos may be at increased risk of contracting cancer, including but not limited to lung cancer and mesothelioma.  Releasors also understand that HERBERT GROSSICH may have suffered injuries that are as yet unknown to him/her and that unknown complications may arise from conditions of which he/she is not aware.  Nevertheless, Releasors intend release and forever discharge Releasees from any claim for any injury arising from or

2

related to any exposure to asbestos experienced by HERBERT GROSSICH, including but not limited to those injuries now known, those now existing but unknown, those that manifest themselves in the future, and those that cause his/her death.

Releasors hereby waive any right or benefit that Releasors may have, now or in the future, under Section 1542 of the Civil Code of the State of California, which reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

7. Indemnity Against Claims by Lienholders:

Releasors warrant that they, or some of them are the sole owners of all claims of any kind arising out of the injuries covered in this Release.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim, brought by any holder of a lien or encumbrance, that is related to the injuries covered in this release, other than cross-complaints or cross-actions of co-defendants.   This indemnity agreement specifically does not cover cross-complaints or cross-actions of co-defendants.

8. Indemnity Against Inaccuracy of Representation:

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting directly or indirectly from any falsity or inaccuracy of any representation made in this release by Releasors.

9. Indemnity Against Wrongful-Death Claims:

Releasors warrant and represent that only they, or only some of them, would be legally entitled to bring suit based on an allegedly wrongful death of HERBERT GROSSICH.   Furthermore, they warrant that no wrongful death suit based on any exposure to asbestos experienced by HERBERT GROSSICH will be brought by anyone against Releasees.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any wrongful death suit, brought by anyone, based on any exposure to asbestos experienced by HERBERT GROSSICH.

10. Indemnity Against Claims by Minors and Unborn Children:

Releasors understand that any minors among the Releasors may have the legal right to disaffirm this contract. Releasors agree that this release is not intended to expand whatever legal rights a minor may have to disaffirm this release and Releasees reserve the right to challenge any attempted disaffirmance of it. All Releasors who are not minors agree that this release will remain binding on them even if a minor disaffirms it.

Furthermore, all Releasors who are not minors agree to indemnify Releasees against all liability, including, but not limited to, all attorneys' fees and expenses, resulting from (1) any attempted disaffirmance, whether successful or not, and (2) any claim brought by a Releasor who is now a minor that arises from or is related to any exposure to asbestos experienced by HERBERT GROSSICH.

Releasors also agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim brought by any child now unborn that arises from or is related to any exposure to asbestos experienced by HERBERT GROSSICH

11.   Warranty of Good-Faith Compromise of Disputed Claims:

Releasors warrant and represent the following:

(a)   Releasors agree that this release is a compromise of doubtful and disputed claims, and that payment is not to be construed as an admission of liability. Releasors also agree that this release shall not be admissible as evidence in any suit of proceeding whatsoever as evidence or admission of any liability.

(b)   Releasors warrant that this release has been entered into in good faith for the purpose of resolving disputed and uncertain claims.

(c)   Releasors warrant that they will use their best efforts to obtain court approval of this release, including a determination that this settlement has been entered into in good faith, and that they will fully cooperate with Releasees and their counsel in their efforts to obtain the determination and an order, in accordance with Section 877.6 of the Code of Civil Procedure dismissing cross- complaints.

12.   Persons Bound:

This release is binding on Releasors, collectively and individually, and on all their heirs, devisees, executors, administrators, personal representatives, and assigns. Each warranty and each agreement in this release is enforceable against Releasors collectively and each Releasor individually.

13.   Remedies for Breach:

Releasors agree to pay for attorneys' fees, expenses, and costs incurred by Releasees as a result of any proceeding brought or maintained by Releasors or by any Releasor in breach of this release.

14.  Authorization to File Dismissal:

Releasors authorize their counsel to execute a request for dismissal with prejudice of Releasees in the SUPERIOR COURT in SAN FRANCISCO COUNTY, CALIFORNIA - NORTH,   DOCKET#: 310196, which is entitled "HERBERT GROSSICH VS RAYBESTOS-MANHATTAN INC ET AL".   Releasors authorize counsel for Releasees to file the request for dismissal after Releasees have paid Releasors, or Releasors' counsel as their trustee, the consideration specified in this release. Releasors also agree to dismiss Releasees from all other past or future claims, brought by any of them, that are in any way connected with any exposure to asbestos experienced by HERBERT GROSSICH.

15. Releasors Warrant That They Have Read This Release:

RELEASORS HEREBY WARRANT THAT THEY HAVE READ THIS RELEASE IN ITS ENTIRETY, HAVE HAD IT FULLY EXPLAINED TO THEM, AND FULLY UNDERSTAND AND APPRECIATE ITS TERMS AND THEIR CONSEQUENCES.

Releasors understand that this release is a full, complete and final release and that the sum of $300,000.00 is the total amount asbestos experienced by HERBERT GROSSICH.

_Herbert Grossich_          Dated: _Sept. 26, 2000_
HERBERT GROSSICH

Subscribed and sworn to before me this _26_ day of _September_, _2000_.

_Brenda Irene Buske_
NOTARY PUBLIC

| "OFFICIAL SEAL" |
| Brenda Irene Buske |
| Notary Public, State of Illinois |
| My Commission Exp. 12/27/2002 |

My Commission Expires: _12/27/2002_

_Elaine W. Grossich_
_(Power of Attorney)_          Dated: _Sept. 26, 2000_
ELAINE GROSSICH

Subscribed and sworn to before me this _26_ day of _September_, _2000_.

_Brenda Irene Buske_
NOTARY PUBLIC

| "OFFICIAL SEAL" |
| Brenda Irene Buske |
| Notary Public, State of Illinois |
| My Commission Exp. 12/27/2002 |

My Commission Expires: _12/27/2002_

Dated: _10-17-00_

WARTNICK, CHABER,
HAROWITZ, & TIGERMAN

6

## ADDENDUM TO PERSONAL INJURY RELEASE
## HOLD HARMLESS AGREEMENT

### (To be used as Missing Heir(s) Provision)

I, HERBERT GROSSICH, recognize that as a part of the settlement of my personal injury case, the Center for Claims Resolution defendants wish to obtain releases and buy their peace with respect to potential claims that could be brought by my estate or my heirs should I die of asbestos related disease. It is my intention and desire to conclude a settlement in which the Center for Claims Resolution defendants will be released from any personal injury claim and also from any potential claim for wrongful death that might follow.

By this document I do the following:

I, on behalf of myself and my estate, agree to indemnify and hold harmless any Center for Claims Resolution defendants against any claims presented in the future by said potential heirs. It is my wish and intention that should said heirs present a claim, my estate will upon tender undertake to defend said Center for Claims Resolution defendants against such claim, and should such defense be unsuccessful, indemnify and hold harmless said Center for Claims Resolution defendants against any judgment obtained by said heirs. I understand that this is a contractual undertaking on my part which is binding upon me and my estate and is given by me in return for fair and valuable consideration to wit, the agreement by Center for Claims Resolution defendants in reliance, in part, upon this document, to pay me funds which I believe to be fair and reasonable in settlement of claims for my personal injury and potential wrongful death.

DATED: _Sept. 26, 2000_

SIGNED: _Herbert Grossich_

(Please attach notary's acknowledgement)

CAWCPIFL
September 18, 2000
3:42 PM

"OFFICIAL SEAL"
Brenda Irene Buske
Notary Public, State of Illinois
My Commission Exp. 12/27/2002

State of IL
County of Cook

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):* | TELEPHONE NO.: 415-986-5566 | *FOR COURT USE ONLY* |
|---|---|---|

Wartnick, Chaber, Harowitz, Tigerman, et al.
101 California Street, Suite 2200
San Francisco, CA  94111-5802

ATTORNEY FOR *(Name):*   PLAINTIFF(S)

Insert name of court and name of judicial district and branch court, if any:
Superior Court of the State of California
City and County of San Francisco

PLAINTIFF/PETITIONER: Herbert Grossich, et al.

DEFENDANT/RESPONDENT: RAYBESTOS-MANHATTAN, INC. et.al.

**ENDORSED**
**F I L E D**
*San Francisco County Superior Court*

**OCT 2 0 2000**

**ALAN CARLSON, Clerk**
BY: KEVIN R. DOUGHERTY
Deputy Clerk

| **REQUEST FOR DISMISSAL** | CASE NUMBER: |
|---|---|
| [X] Personal Injury, Property Damage, or Wrongful Death<br>[ ] Motor Vehicle  [ ] Other<br>[ ] Family Law<br>[ ] Eminent Domain<br>[X] Other *(specify):* ASBESTOS | 310196 |

— A conformed copy will not be returned by the clerk unless a method of return is provided with the document. —

1. TO THE CLERK: Please dismiss this action as follows:

  a. (1) [X] With prejudice    (2) [ ] Without prejudice

  b. (1) [X] Complaint    (2) [ ] Petition
    (3) [ ] Cross-complaint filed by *(name):*        on *(date):*
    (4) [ ] Cross-complaint filed by *(name):*        on *(date):*
    (5) [ ] Entire action of all parties and all causes of action
    (6) [X] Other *(specify):** As to the defendant(s) on the attached list, only.

Date: October 13, 2000

HARRY F. WARTNICK
(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

\* If dismissal requested is of specified parties only, of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

WARTNICK, CHABER, HAROWITZ, et al.

*(SIGNATURE)*
Attorney or party without attorney for:  PLAINTIFF(S)

[ ] Plaintiff/Petitioner    [ ] Defendant/Respondent
[ ] Cross-complainant

2. TO THE CLERK: Consent to the above dismissal is hereby given.**
Date:

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

*(SIGNATURE)*
Attorney or party without attorney for:

\*\* If a cross-complaint - or Response (Family Law) seeking affirmative relief - is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581(i) or (j).

[ ] Plaintiff/Petitioner    [ ] Defendant/Respondent
[ ] Cross-complainant

*(To be completed by clerk)*
3. [ ] Dismissal entered as requested on *(date):*
4. [ ] Dismissal entered on *(date):*    as to only *(name):*
5. [ ] Dismissal **not** entered as requested for the following reasons *(specify):*

6. [ ] a. Attorney or party without attorney notified on *(date):*
    b. Attorney or party without attorney not notified. Filing party failed to provide
    [ ] a copy to conform    [ ] means to return conformed copy

Date:    Clerk, by _____, Deputy

| Form Adopted by the<br>Judicial Council of California<br>982(a)(5) [Rev. January 1, 1997]<br>Mandatory Form | **REQUEST FOR DISMISSAL** | LEGAL SOLUTIONS | Code of Civil Procedure, § 581 et seq.<br>Cal. Rules of Court, rules 383, 1233 |
|---|---|---|---|

This dismissal applies only to defendant members as follows:

Anchem Products, Inc.; Armstrong World Industries, Inc., formerly known as Armstrong Cork Company; CertainTeed Corporation; C.E. Thurston and Sons, Inc.; Dana Corporation; (Formerly known as Nuturn Corporation); I.U. North America, Inc.; Maremont Corporation; (The Grizzly Manufacturing Company; The Grizzly Division of Maremont Corporation); National Service Industries, Inc.; NOSROC Corp.; Pfizer, Inc.; Quigley Company, Inc.; Shock & Fletcher Insulation Company; T&N plc, formerly known as Turner & Newall PLC, formerly known as Turner & Newall LTD; Turner & Newall Industries; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company.

EXHIBIT F

DE-150

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(bar number, and address):*
CARTER WARMKE, SBN 63135       (209) 951-5922
WARMKE & WARMKE              Fax (209) 9515925
P. O. Box 690728
Stockton, California 95269-0728
**ATTORNEY FOR** *(Name):* Executor

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** CALAVERAS
**STREET ADDRESS:** 891 Mountain Ranch Road
**MAILING ADDRESS:**
**CITY AND ZIP CODE:** San Andreas, California 95249-9709
**BRANCH NAME:**

**ESTATE OF** *(Name):* MAURICE APLEY, also known as
Maurice W. Apley,
**DECEDENT**

**FOR COURT USE ONLY**

(ENDORSED)
FILED

AUG 15 2000

CALAVERAS COUNTY COURTS
M. B. Todd, Clerk of Court
JUDITH GOFFE , Deputy

**LETTERS**

| | |
|---|---|
| [X] | TESTAMENTARY |
| [ ] | OF ADMINISTRATION WITH WILL ANNEXED |
| [ ] | OF ADMINISTRATION |
| [ ] | SPECIAL ADMINISTRATION |

**CASE NUMBER:**
6176

## LETTERS

1. [ ] The last will of the decedent named above having been proved, the court appoints *(name):*
DIANNA EDWARDS

   a. [X] executor.
   b. [ ] administrator with will annexed.

2. [ ] The court appoints *(name):*

   a. [ ] administrator of the decedent's estate.
   b. [ ] special administrator of decedent's estate
      (1) [ ] with the special powers specified in the *Order for Probate.*
      (2) [ ] with the powers of a general administrator.
      (3) [ ] letters will expire on *(date):*

3. [X] The personal representative is authorized to administer the estate under the Independent Administration of Estates Act [X] with full authority
[ ] with limited authority (no authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or (3) borrow money with the loan secured by an encumbrance upon real property).

4. [ ] The personal representative is not authorized to take possession of money or any other property without a specific court order.

WITNESS, clerk of the court, with seal of the court affixed.

(SEAL)

Date: AUG 15 2000
Clerk, by
JUDITH GOFFE
(DEPUTY)

## AFFIRMATION

1. [ ] PUBLIC ADMINISTRATOR: No affirmation required (Prob. Code, § 7621(c)).

2. [X] INDIVIDUAL: I solemnly affirm that I will perform the duties of personal representative according to law.

3. [ ] INSTITUTIONAL FIDUCIARY *(name):*

   I solemnly affirm that the institution will perform the duties of personal representative according to law. I make this affirmation for myself as an individual and on behalf of the institution as an officer.
   *(Name and title):*

4. Executed on *(date):* July 13, 2000
at *(place):* Stockton , California.

Dianna Edwards
(SIGNATURE)

## CERTIFICATION

I certify that this document is a correct copy of the original on file in my office and the letters issued the personal representative appointed above have not been revoked, annulled, or set aside, and are still in full force and effect.

Date: AUG 15 2000
M. B. TODD
Clerk, by
(DEPUTY)

(SEAL SUPERIOR COURT OF CALIFORNIA COUNTY OF CALAVERAS)

Form Approved by the
Judicial Council of California
DE-150 [Rev. January 1, 1998]

**LETTERS**
**(Probate)**

Probate Code, §§ 1001, 8403,
8405, 8544, 8545,
Code of Civil Procedure, § 2015.6

EXHIBIT F



8-15
DE-140

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | TELEPHONE AND FAX NOS.: | FOR COURT USE ONLY |
|---|---|---|

CARTER WARMKE, SBN 63135      (209) 951-5922
WARMKE & WARMKE      Fax (209) 951-5925
P. O. Box 690728
Stockton, CA 95269-0728

ATTORNEY FOR *(Name):* Executor

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   CALAVERAS
STREET ADDRESS: 891 Mountain Ranch Road
MAILING ADDRESS:
CITY AND ZIP CODE: San Andreas, California 95249-9709
BRANCH NAME:

ESTATE OF *(Name):*   MAURICE APLEY, also known as
Maurice W. Apley
                                   DECEDENT

**(ENDORSED)
FILED**

AUG 1 5 2000

CALAVERAS COUNTY COURTS
M. B. Todd, Clerk of Court
_____, Deputy

**ORDER FOR PROBATE**

ORDER
APPOINTING

[X] Executor
[ ] Administrator with Will Annexed
[ ] Administrator   [ ] Special Administrator

[X] Order Authorizing Independent Administration of Estate
    [X] with full authority   [ ] with limited authority

CASE NUMBER:

6176

**WARNING: THIS APPOINTMENT IS NOT EFFECTIVE UNTIL LETTERS HAVE ISSUED.**

1. Date of hearing: August 15, 2000   Time:   9:00 A.M.   Dept./Room: 1      Judge: JOHN E. MARTIN

THE COURT FINDS

2. a. All notices required by law have been given.
   b. Decedent died on *(date):*   June 21, 2000
      (1) [X] a resident of the California county named above.
      (2) [ ] a nonresident of California and left an estate in the county named above.
   c. Decedent died
      (1) [ ] intestate
      (2) [X] testate
      and decedent's will dated:   August 16, 1999      and each codicil dated:
      was admitted to probate by Minute Order on *(date):*   August 15, 2000.

THE COURT ORDERS

3. *(Name):*   Dianna Edwards

   is appointed personal representative:
   a. [X] executor of the decedent's will      d. [ ] special administrator
   b. [ ] administrator with will annexed          (1) [ ] with general powers
   c. [ ] administrator                        (2) [ ] with special powers as specified in Attachment 3d(2)
                                (3) [ ] without notice of hearing
                                (4) [ ] letters will expire on *(date):*

   and letters shall issue on qualification.

4. a. [X] Full authority is granted to administer the estate under the Independent Administration of Estates Act.
   b. [ ] Limited authority is granted to administer the estate under the Independent Administration of Estates Act (there is no
      authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or
      (3) borrow money with the loan secured by an encumbrance upon real property).

5. a. [X] Bond is not required.
   b. [ ] Bond is fixed at: $                           to be furnished by an authorized surety company or as otherwise
      provided by law.
   c. [ ] Deposits of: $                           are ordered to be placed in a blocked account at *(specify institution and*
      *location):*
      and receipts shall be filed. No withdrawals shall be made without a court order.   [ ] Additional orders in Attachment 5c.
   d. [ ] The personal representative is not authorized to take possession of money or any other property without a specific court order.

6. [X] *(Name):*   MICHAEL WRIGHT
          (209) 532-6079                is appointed probate referee.

Date:   August 15, 2000                                   JOHN E. MARTIN
                                           JUDGE OF THE SUPERIOR COURT

7. Number of pages attached:   O          [ ] SIGNATURE FOLLOWS LAST ATTACHMENT

Form Approved by the
Judicial Council of California
DE-140 [Rev. January 1, 1998]             **ORDER FOR PROBATE**             Probate Code, §§ 8006, 8400

**EXHIBIT  G**

1999247878
CASF

## COMPROMISE AND RELEASE OF ALL CLAIMS

1.  Release of all Personal Injury and Death Claims:

(a)  THIS RELEASE EXTINGUISHES ALL CLAIMS FOR ALL INJURIES ARISING FROM OR RELATED TO ANY EXPOSURE TO ASBESTOS EXPERIENCED BY MAURICE APLEY INCLUDING BUT NOT LIMITED TO ALL WRONGFUL DEATH CLAIMS AND ALL SURVIVING PERSONAL INJURY CLAIMS.

2.  Releasors:

(a)  Estate of Decedent:  MAURICE APLEY
Social Security Number:  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

(b)  Decedent's spouse:  N/A
Social Security Number:

(c)  Decedent's children:  DIANNA EDWARD and  DEBRA LOPEZ

(d)  Plaintiff's heirs, as defined by California Code of Civil Procedure Section 377(b).

3.  Releasees:

The Releasees are all subscribers to the Agreement Concerning Asbestos-Related Claims signed October 6, 1988 (The Center for Claims Resolution Agreement), and all of their predecessors and successors, their parent and subsidiary companies and divisions, and their current and former attorneys, liability insurance carriers, to the extent of their liability for Center non-insurance company subscribers only, officers, directors, agents, and employees.  The names of the subscribers are set out below:

Manufacturers: Amchem Products, Inc.; Armstrong World Industries, Inc. formerly known as Armstrong Cork Company; The Asbestos Claims Management Corporation (formerly known as National Gypsum Company) and the NGC Asbestos Disease and Property Damage Settlement Trust; CertainTeed Corporation; C.E. Thurston and Sons, Inc.; Dana Corporation; (Formerly known as Nuturn Corporation); I.U. North America, Incorporated; Rhone Poulenc (Tendered To Amc) Maremont Corporation; (The Grizzly Manufacturing Company; The Grizzly Division of Maremont Corporation); National Service Industries, Inc.; NOSROC Corp.; Pfizer, Inc.; Quigley Company, ?· Shook & Fletcher Insulation Company; T&N plc, formerly known as Turner & Newall PLC, formerly known as Turner & Newall LTD; Turner & Newall Industries; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company.

1

EXHIBIT _6_

4.  Preliminary Facts:

The Plaintiff alleges that decedent was exposed to asbestos, that the asbestos was produced by or came from a product produced by the Releasees, and that the exposure to asbestos has injured him or led to his death.

Based on this exposure, the plaintiff has filed suit, or is considering filing suit, for damages arising from decedent's personal injury or death.

Releasees desire to compromise and obtain a general release of all existing and future claims that could possibly arise from these facts, without admitting liability.

5.  Terms of Settlement:

In consideration of $200,000.00, in total, Releasors release and forever discharge Releasees from any and all claims arising from or related to any exposure to asbestos experienced by MAURICE APLEY.  This release specifically includes, but is not limited to, all wrongful death claims, all loss of consortium claims, and all surviving personal injury claims arising from or related to any exposure to asbestos experienced by MAURICE APLEY.

For the purpose of this release, the word "claims" includes all claims, demands, actions, and suits of any kind.  For the purposes of this release, the word "injuries" includes all injuries, illnesses, disabilities, losses, and harms of any kind including but not limited to all emotional injuries.

This release does not cover claims for injuries allegedly suffered by the decedent's spouse and children because of their personal exposure to asbestos or property damage claims.

The consideration specified in this release shall be paid in the form of drafts or checks payable to Releasor's counsel as trustee for Releasors.

6.  Unknown Injuries:

Releasors hereby waive any right or benefit that Releasors may have, now or in the future, under Section 1542 of the Civil Code of the State of California, which reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in this favor at the  time of executing the release, which if known by him must have materially affected his settlement with the debtor."

2

7.  Indemnity Against Claims by Lienholders:

Releasors warrant that they, or some of them are the sole owners of all claims of any kind arising out of the injuries covered in this release.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim, brought by any holder of a lien or encumbrance, that is related to the injures covered in this release, other than cross-complaints or cross-actions of co-defendants.   This indemnity agreement specifically does not cover cross-complaints or cross-actions of co-defendants.

8.  Indemnity Against Inaccuracy of Representation:

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting directly or indirectly from any falsity or inaccuracy of any representation made in this release by Releasors.

9.  Indemnity Against Wrongful-Death Claims:

Releasors warrant and represent that they are legally empowered to settle surviving personal injury claims on behalf of the estate of MAURICE APLEY and that only they, or only some of them, would be legally entitled to bring suit based on a allegedly wrongful death of MAURICE APLEY.  Furthermore, they warrant that no survival or wrongful death suit based on any exposure to asbestos experienced by MAURICE APLEY will be brought by anyone against Releasees.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any wrongful death suit, brought by anyone, based on any exposure to asbestos experienced by MAURICE APLEY.

10.  Indemnity Against Claims by Minors and Unborn Children:

Releasors understand that any minors among the Releasors may have the legal right to disaffirm this contract.  Releasors agree that this release is not intended to expand whatever legal rights a minor may have to disaffirm this release and Releasees reserve the right to challenge any attempted disaffirmance of it.  All Releasors who are not minors agree that this release will remain binding on them even if a minor disaffirms it.

Furthermore, all Releasors who are not minors agree to indemnify Releasees against all liability, including but not limited to all attorneys' fees and expenses, resulting from (1) any attempted disaffirmance, whether successful or not, and (2) any claim brought by any Releasor who is now a minor that arises from or is related to any exposure to asbestos experienced by MAURICE APLEY.

Releasors also agree to indemnify Releasees against all liability, including, but not limited to, attorneys' fees and expenses, resulting from any claim brought by any child now unborn that arises from or is related to any exposure to asbestos experienced by MAURICE APLEY.

11. Warranty of Good-Faith Compromise of Disputed Claims:

Releasors warrant and represent the following:

(a)   Releasors agree that this release is a compromise of doubtful and disputed claims, and that payment is not to be construed as an admission of liability.  Releasors also agree that this release shall not be admissible as evidence in any suit or proceeding whatsoever as evidence or admission of any liability.

(b)   Releasors warrant that this release has been entered into in good faith for the purpose of resolving disputed and uncertain claims.

(c)   Releasors warrant that they will use their best efforts to obtain court approval of this release, including a determination that this settlement has been entered into in good faith, and that they will fully cooperate with Releasees and their counsel in their efforts to obtain the determination and an order, in accordance with Section 877.6 of the Code of Civil Procedure dismissing cross-complaints.

12. Persons Bound:

This release is binding on the estate of MAURICE APLEY, on Releasors collectively and individually, and on all their heirs, devisees, executors, administrators, personal representatives, and assigns.  Each warranty and each agreement in this release is enforceable against Releasors collectively and each Releasor individually.

13. Remedies for Breach:

Releasors agree to pay for attorneys' fees, expenses, and costs incurred by Releasees as a result of any proceeding brought or maintained by Releasors or by any Releasor in breach of this release.

14. Authorization to File Dismissal:

Releasors authorize their counsel to execute a request for dismissal with prejudice of Releasees in the SUPERIOR COURT in SAN FRANCISCO COUNTY, CALIFORNIA - NORTH, DOCKET#: 307384, which is entitled "MAURICE APLEY V RAYBESTOS-MANHATTAN ET AL".  Releasors authorize counsel for Releasees to file the request for dismissal after Releasees have paid Releasors, or Releasors' counsel as their trustee, the consideration specified in this release.  Releasors also agree to dismiss

Releasees from all other past of future claims, brought by any of them, that are in any way connected with any exposure to asbestos experienced by MAURICE APLEY.

15.   Releasors Warrant That They Have Read This Release:

RELEASORS HEREBY WARRANT THAT THEY HAVE READ THIS RELEASE IN ITS ENTIRETY, HAVE HAD IT FULLY EXPLAINED TO THEM, AND FULLY UNDERSTAND AND APPRECIATE ITS TERMS AND THEIR CONSEQUENCES.

Releasors understand that this release is a full, complete and final release and that the sum of $200,000.00 is the total amount to be paid to them by Releasees as a result of any exposure to asbestos experienced by MAURICE APLEY.

*Dianna Edwards*   Dated: _10-20-00_
DIANNA EDWARD

Subscribed and sworn to before me this _20_ day of _October_, _2000_

*B Rodriguez*
Notary Public

My Commission Expires: _2-1-04_

> B. RODRIGUEZ
> Comm. # 1251695
> NOTARY PUBLIC-CALIFORNIA
> Calaveras County
> My Comm. Expires Feb. 1, 2004

_____   Dated: _____
DEBRA LOPEZ

Subscribed and sworn to before me this ____ day of _____, ____.

_____
Notary Public

My Commission Expires: _____

5

This release was executed with my approval, and under my direction and advice. Its provisions and their consequences have been fully explained to Releasors.

Dated: 11-3-00

WARTNICK, CHABER,
HAROWITZ, SMITH & TIGERMAN

## HOLD HARMLESS AGREEMENT

I, recognize that as a part of the settlement of my wrongful death case, the Center for Claims Resolution defendants wish to obtain release and buy their peace with respect to potential claims that could be brought by the estate of MAURICE APLEY or its heirs. It is my intention and desire to conclude a settlement in which the Center for Claims Resolution defendants will be released from any personal injury claim and wrongful death claim.

By this document, I do the following:

I, on behalf of myself and the estate of MAURICE APLEY, agree to indemnify and hold harmless the Center for Claims Resolution defendants against any claims presented in the future by potential heirs. It is my wish and intention that should the heirs present a claim, the estate will upon tender undertake to defend the Center for Claims Resolution defendants against any claim made by the heirs and will indemnify the Center for Claims Resolution defendants against any judgment obtained by them against the Center for Claims Resolution defendants. I understand that this is a contractual undertaking on my part which is binding upon me and the estate and is given by me in return for fair and valuable consideration - to wit, the agreement by the Center for Claims Resolution defendants in reliance, in part, upon this document, to pay me funds which I believe to be fair and reasonable in settlement of claims for wrongful death.

Individually and on behalf of
MAURICE APLEY

DATED: _Dianne Edwards_ 10-20-00

CAWCWDFL
July 21, 2000
9:17 AM

7

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*: | | FOR COURT USE ONLY |
|---|---|---|
| **TELEPHONE NO.:** 415-986-5566 | | |

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*:          TELEPHONE NO.: **415-986-5566**

Wartnick, Chaber, Harowitz, Tigerman,et al.
101 California Street, Suite 2200
San Francisco, CA  94111-5802

ATTORNEY FOR *(Name)*:   PLAINTIFF(S)

Insert name of court and name of judicial district and branch court, if any:
Superior Court of the State of California
City and County of San Francisco

PLAINTIFF/PETITIONER: Maurice W. Apley, et al.

DEFENDANT/RESPONDENT: RAYBESTOS-MANHATTAN, INC. et.al.

FOR COURT USE ONLY

**ENDORSED**
**F I L E D**
*San Francisco County Superior Court*

**NOV 0 8 2000**

**GORDON PARK-LI, Clerk**
BY:     JUN P. PANELO
              **Deputy Clerk**

**REQUEST FOR DISMISSAL**
[X] Personal Injury, Property Damage, or Wrongful Death
　　[ ] Motor Vehicle　　[ ] Other
[ ] Family Law
[ ] Eminent Domain
[X] Other *(specify):* ASBESTOS

CASE NUMBER:
307384

— A conformed copy will not be returned by the clerk unless a method of return is provided with the document. —

1. TO THE CLERK: Please dismiss this action as follows:
　a. (1) [X] With prejudice　(2) [ ] Without prejudice
　b. (1) [X] Complaint　(2) [ ] Petition
　　(3) [ ] Cross-complaint filed by *(name)*:　　on *(date)*:
　　(4) [ ] Cross-complaint filed by *(name)*:　　on *(date)*:
　　(5) [ ] Entire action of all parties and all causes of action
　　(6) [X] Other *(specify):** As to the defendant(s) on the attach list, only.

Date: October 24, 2000

HARRY F. WARTNICK

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

* If dismissal requested is of specified parties only, of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

WARTNICK, CHABER, HAROWITZ, et al.

(SIGNATURE)
Attorney or party without attorney for:  PLAINTIFF(S)

[ ] Plaintiff/Petitioner　　[ ] Defendant/Respondent
[ ] Cross-complainant

2. TO THE CLERK: Consent to the above dismissal is hereby given.**
Date:

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

** If a cross-complaint - or Response (Family Law) seeking affirmative relief - is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581(i) or (j).

(SIGNATURE)
Attorney or party without attorney for:

[ ] Plaintiff/Petitioner　　[ ] Defendant/Respondent
[ ] Cross-complainant

*(To be completed by clerk)*
3. [ ] Dismissal entered as requested on *(date)*:
4. [X] Dismissal entered on *(date)*:   NOV - 8 2000   as to only *(name)*: **SEE ABOVE**
5. [ ] Dismissal not entered as requested for the following reasons *(specify)*:

6. [ ] a. Attorney or party without attorney notified on *(date)*:
　　b. Attorney or party without attorney not notified. Filing party failed to provide
　　　[ ] a copy to conform　　[ ] means to return conformed copy

Date:   NOV - 8 2000          JUN P. PANELO
GORDON PARK-LI Clerk, by _____, Deputy

Form Adopted by the
Judicial Council of California
982(a)(5) [Rev. January 1, 1997]
Mandatory Form

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.
Cal. Rules of Court, rules 383, 1233

This dismissal applies only to defendant members as follows:

Anchem Products, Inc.; Armstrong World Industries, Inc., formerly known as Armstrong Cork Company; The Asbestos Claims Management Corporation (formerly known as National Gypsum Company) and the NGC Asbestos Disease and Property Damage Settlement Trust; CertainTeed Corporation; C.E. Thurston and Sons, Inc.; Dana Corporation; (Formerly known as Nuturn Corporation); I.U. North America, Inc.; Maremont Corporation; (The Grizzly Manufacturing Company; The Grizzly Division of Maremont Corporation); National Service Industries, Inc.; NOSROC Corp.; Pfizer, Inc.; Quigley Company, Inc.; Shook & Fletcher Insulation Company; T&N plc, formerly known as Turner & Newall PLC, formerly known as Turner & Newall LTD; Turner & Newall Industries; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company.

**EXHIBIT  H**

# CENTER FOR CLAIMS RESOLUTION

504 CARNEGIE CENTER • 2nd FLOOR • PRINCETON, NJ 08540
MAILING ADDRESS: CN 5319 PRINCETON, NJ 08543-5319

December 21, 2000

Harry Wartnick, Esq.
Wartnick, Chaber, Harowitz, Et Al.
101 California Street
Ste. 2200
San Francisco, CA 94111-5802

Dear Harry:

As you are aware, on December 6, 2000, Armstrong World Industries, Inc. filed a petition under the federal Bankruptcy Code, and therefore has stopped paying its share of previously-negotiated settlements. In addition, former CCR member Asbestos Claims Management Corporation (ACMC) has refused to pay their share of previously negotiated settlements, despite being billed for those sums.

The CCR and its members have consistently understood and taken the position that under settlement agreements negotiated by the CCR on behalf of its then-member companies, each member company is liable under the settlement only for its share of the settlement as calculated by the CCR, and that no CCR member is liable for any other CCR member's settlement share. However, in certain recent proceedings arising from GAF's refusal to pay its share of previously-negotiated settlements, plaintiffs have sought to hold other CCR member companies liable for GAF's unpaid share of the settlement. This was contrary to what we believe to have been the shared understanding that each member is responsible only for its own settlement share, and also contrary to the fundamental purposes of the settlements (including avoiding the risks of joint and several liability in the case).

In these circumstances, the CCR member companies other than Armstrong and ACMC have no choice but to ensure that acceptance of their payment of funds under the settlement will be deemed, both by your clients and by the CCR member companies, to constitute full payment and satisfaction of all amounts due under the settlement by the CCR member companies other than Armstrong and ACMC.

Accordingly, pursuant to the settlement negotiated by the CCR on behalf of its then-member companies who were defendants and your firm on behalf of its clients, enclosed please find a check in the amount of $42,836.74. This check constitutes full and final payment of the amounts due under the settlement for each of the claims on the enclosed list by each of the CCR member companies other than Armstrong and ACMC. This check is tendered in full settlement of any and all claims of any kind by your clients against all the CCR member companies other than Armstrong and ACMC, including (but not limited to) claims for unpaid amounts under the settlement. Negotiation of the check will constitute a full and complete accord and satisfaction of all obligations owed to your clients by the CCR member companies other than Armstrong and ACMC, and will forever release and discharge any and all claims against those member companies.

**EXHIBIT  H**

If you have any questions concerning this matter, please contact me.

Very truly yours,


Jim McFadden



Enlcosures

THIS CHECK IS VOID WITHOUT A BLUE & RED BACKGROUND AND AN ARTIFICIAL WATERMARK ON THE BACK - HOLD AT ANGLE TO VIEW

PNC BANK, N.A.
METROPARK, EDISON, NJ 08818

**CENTER FOR CLAIMS RESOLUTION**
INDEMNITY ACCOUNT
VOID AFTER 180 DAYS

DATE
12/21/2000

Forty-Two Thousand Eight Hundred Thirty-Six  And 74/100 Dollars

PAY         WARTNICK, CHABER, HAROWITZ, SMITH & TIGERMAN AS
TO THE      ATTORNEYS FOR 1 PLAINTIFF, MAURICE APLEY        ;
ORDER
OF

SIGNATURE HAS A COLORED BACKGROUND

⑈064626⑈ ⑈031202770⑈ 8009244104⑈

EXHIBIT I

FILED

01 JAN 16 PH 5: 17

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA.

THE HONORABLE ANN SCHINDLER



**CERTIFIED COPY**

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

JAMES CHAPMAN and CARRIE CHAPMAN, husband and wife,

Plaintiffs,

v.

THE E.J. BARTELLS COMPANY; et al.,

Defendants.

No. 00-2-00095-2 SEA

JUDGMENT AS TO DEFENDANTS T&N, PLC, S/K/A TURNER & NEWALL, PLC, ARMSTRONG WORLD INDUSTRIES, INC.; THE ASBESTOS CLAIMS MANAGEMENT CORPORATION F/K/A NATIONAL GYPSUM COMPANY; AND UNITED STATES GYPSUM COMPANY.

Pursuant to the Order Granting Motion to Enforce Settlement entered by this Court:

**JUDGMENT SUMMARY**

1.  Judgment Creditor:  James Chapman and Carrie Chapman, husband and wife.

2.  Attorney for Judgment Creditor:  Matthew P. Bergman, Bergman & Pageler, 1201 Third Avenue, Suite 5300, Seattle, WA 98101-3000.

3.  Judgment Debtors:  T&N, plc, s/k/a Turner & Newall, plc, Armstrong World Industries, Inc.; The Asbestos Claims Management Corporation f/k/a National Gypsum Company; and United States Gypsum Company.

4.  Attorney for Judgment Debtors:  Diane Kero, Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, 2101 One Union Square, 600 University Street, Seattle, WA 98101.

JUDGMENT AS TO DEFENDANTS. - 1

CC ~~ORIGINAL~~

BERGMAN & PAGELER
A PROFESSIONAL SERVICES CORPORATION
1201 THIRD AVENUE, SUITE 5300
SEATTLE, WASHINGTON 98101-3000
TELEPHONE: 206.583.2190
FACSIMILE: 206.583.2191

EXHIBIT  T

3.     Principal Judgment Amount: $73,093.60 (original settlement amount of $225,000.00 less partial payment of $151,906.40)

4.     Interest to Date of Judgment: None

5.     Attorney's Fees: None

6.     Costs: None

7.     Other Recovery Amounts: None

8.     Total Judgment: $73,093.60

9.     Principal Judgment Amount Shall Bear Interest at 12% per annum.

THIS MATTER having been negotiated between the parties for settlement prior to trial,

NOW, THEREFORE, it is hereby

ORDERED that judgment be entered against defendants T&N, plc, s/k/a Turner & Newall, plc, Armstrong World Industries, Inc.; The Asbestos Claims Management Corporation f/k/a National Gypsum Company; and United States Gypsum Company in the sum of $73,093.60.

DONE IN OPEN COURT this 16th day of January, 2001.

_____
JUDGE ANN SCHINDLER

Presented by:

BERGMAN & PAGELER

_____
Matthew P. Bergman, WSBA 20894
Meg Pageler, WSBA 28265
David S. Frockt, WSBA 28568
Counsel for Plaintiff

JUDGMENT AS TO DEFENDANTS. - 2
3 Documents Orient CHAPMAN, Jenuer PLD-ss/ext CVX settlement judgments Chapman pursuant to Schindler order doc

BERGMAN & PAGELER
A PROFESSIONAL SERVICES CORPORATION
1201 THIRD AVENUE, SUITE 5300
SEATTLE, WASHINGTON 98101-3000
TELEPHONE: 206.583.2190
FACSIMILE: 206.583.2191

<u>PROOF OF SERVICE</u>

I am employed in the City and County of San Francisco, California, I am over the age of eighteen years and not a party to the within action; my business address is 101 California Street, 22nd Floor, San Francisco, California 94111.  On the date last written herein, I served the following documents:

**PLAINTIFFS' NOTICE OF MOTION FOR SUMMARY JUDGMENT**

on the parties, through their attorneys of record, by placing true copies thereof in sealed envelopes addressed as shown below for service as designated below:

(A)  <u>By First Class Mail</u> - I caused each such envelope, with first-class postage thereon fully prepaid, to be deposited in a recognized place of deposit of the U.S. mail in San Francisco, California, for collection and mailing to the office of the addressee on the date shown herein following ordinary business practices.

(B)  <u>By Personal Service</u> - I caused each such envelope to be personally delivered to the office of the addressee by a member of the staff of this law firm on the date last written below.

(C)  <u>By Personal Service</u> - I caused each such envelope to be delivered to a courier employed by, with whom we have a direct billing account, who personally delivered each such envelope to the office of the addressee on the date last written below.

(D)  <u>By Federal Express</u> - I caused each such envelope to be delivered to Federal Express Corporation at San Francisco, California, with whom we have a direct billing account to be delivered to the office of the addressee on the next business day.

| TYPE OF SERVICE | ADDRESSEE |
| --- | --- |
| B | William E. Ireland, Esq.<br>Camille Fong, Esq.<br>HAIGHT, BROWN & BONESTEEL<br>100 Bush Street, 27th Fl.<br>San Francisco, CA  94104 |
| D | William F. Sheehan, Esq.<br>David R. Esquivel, Esq.<br>SHEA & GARDNER<br>1800 Massachusetts Ave., N.W.<br>Washington, DC  20036 |

I declare under penalty of perjury that the foregoing is true and correct.  Executed this    4/4/01    at San Francisco, California.

Linda Thorpe



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE: ALL KELLEY & FERRARO      )     JUDGE PAUL R. MATIA
ASBESTOS CASES                   )
            Plaintiff      )     CASE NO. 1:00CV20010
                                 )
     -vs-                       )
                                 )     MEMORANDUM OF OPINION
G-1 HOLDINGS, INC., et al.       )     AND ORDER
                                 )
          Defendants       )


     This omnibus action for recovery of damages for exposure to asbestos was commenced in the Court of Common Pleas of Cuyahoga County, Ohio.  The plaintiffs are a group of personal injury claimants represented by Kelley & Ferraro and who entered into a Settlement Agreement with the defendant Center for Claims Resolution (CCR) as agent for nineteen different individual companies.  On December 7, 2000, one of the defendants, G-I Holdings, Inc. (G-I), not a member of CCR, was served with the plaintiffs' fourth motion to enforce settlement that was entered into on July 26, 1999 which pertained to a number of defendants. The day before service of the fourth motion to enforce settlement, one of the defendants, Armstrong World Industries (AWI), filed for chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware, Case No. 004471.  Because of the bankruptcy filing, G-I caused the action to be removed to this Court pursuant to 28 U.S.C. § 1452, the

Court allegedly having jurisdiction under 28 U.S.C. § 1334(b).

The removal concerns only plaintiffs' fourth motion to enforce

settlement as the original complaint against the defendants has

been dismissed.  G-I asserts in its notice of removal that

central to the bankruptcy proceeding are future claims for

contribution and indemnity between G-I and AWI, the outcome of

which will have a substantial effect on AWI's financial

obligations and will further effect the amount of property

available for distribution in the bankruptcy proceeding among the

asbestos claimants.  This matter is before the Court upon the

plaintiffs' motion to remand, or in the alternative, motion for

mandatory and/or discretionary abstention (ECF 16) and the CCR

defendant's motion to transfer the action to the United States

District Court for the District of Delaware (ECF 19).  The Court

has reviewed CCR's and G-I's memoranda in opposition to

plaintiffs' motion to remand (ECF 15, 17), the reply brief of CCR

in opposition to plaintiffs' motion to remand. (ECF 25),

plaintiffs' supplemental authority in support of motion to remand

(ECF 22), the plaintiffs' opposition to defendant CCR's motion to

transfer (ECF 21), and the reply memorandum of the defendant CCR

in support of its motion to transfer (ECF 26).

    28 U.S.C. § 1452(a) provides in pertinent part:

> A party may remove any claim or cause of action in a
> civil action ... to the district court for the district
> where such civil action is pending, if such district
> court has jurisdiction of such claim or cause of action
> under § 1334 of this Title.

Pursuant to 28 U.S.C. § 1334(a), the district court has original
and exclusive jurisdiction of all cases under title 11.
Bankruptcy Rule 9027 sets forth the form and content required of
a notice of removal. It must contain a short and plain statement
of the facts which entitle the party filing the notice to remove,
contain a statement whether the claim or cause of action is a
core or non-core proceeding, and if non-core, whether the party
filing the notice consents to entry of judgment by the bankruptcy
judge. In addition, the notice of removal shall be accompanied
by a copy of the process and pleadings.

The defendant contends that this Court lacks subject
matter jurisdiction requiring immediate dismissal. If at any
time before final judgment it appears that the court lacks
subject matter jurisdiction over a case that has been removed
from state court, the case must be remanded. 28 U.S.C. §
1447(c). If jurisdiction is in doubt, removal is not favored.
*Chamberlain v. American Tobacco Co., Inc.*, 70 F. Supp.2d 788, 792
(N.D. Ohio 1999). Removal is proper if the face of the complaint
shows the existence of a federal question. *Long v. Bando Mfg. of
America, Inc.*, 201 F.3d 754, 758 (6th Cir. 2000); *Rivet v.
Regions Bank of Louisiana.*, 522 U.S. 470 (1998). A federal
question is presented on the face of the complaint if an issue of
federal law is a necessary element of plaintiff's claim or if
federal law completely preempts plaintiff's state law claims.

3

*Id.; Toledo Fair Housing Center v. Farmers Ins. Group of Companies,* 61 F. Supp.2d 681, 682 (N.D. Ohio 1999).

Plaintiffs argue that the notice of removal does not meet the requirements for the exercise of federal jurisdiction. Neither this Court nor the state court knows what state court claims or actions the notice of removal seeks to remove. The notice of removal merely alleges that "certain claims" within the "omnibus action" were being removed. The notice of removal stated:

> 1. G-I is a defendant in actions in the Court of Common Pleas of the State of Ohio, County of Cuyahoga, jointly captioned in omnibus fashion as: All Kelley & Ferraro Asbestos Cases v. G-I Holdings, Inc., and Armstrong World Industries, et al., Case Number CV-07358 (the "Omnibus Action"). G-I hereby removes certain claims in the Omnibus Action ... pursuant to 28 U.S.C. § 1452. A list of those claims is separately submitted to the Court under seal. This removal is not intended to remove every claim in the Omnibus Action from the trial court. Rather, G-I is removing only those claims that are subject to the fourth motion to enforce settlement filed separately under seal.

A footnote stated:

> Defendant, GAF will submit a case list to which this Motion to Enforce is applicable on a supplemental basis due to the number of plaintiffs involved in this action and the fact that relevant numbers and case names are not included in the Motion to Enforce.

The plaintiffs point out in their brief that the omnibus action that was removed by G-I and designated No. CV-073958 is not an actual matter and the case number is not related to any individual asbestos complaint. It is the case number assigned to

the special docket of asbestos cases used by the state court for administrative purposes. Actually, each asbestos complaint is assigned by random lot to a separate judge and has its own case number, even after it is referred to the asbestos docket. For example, an amendment of a complaint would be ineffective for any case that did not refer to the case number on the motion to amend.

G-I stated in its notice of removal that certain claims in the omnibus action filed in state court were being removed. A list of these claims has been submitted to this Court. Examination of the submission shows that it contains names and social security numbers. Case numbers are not included. However, the names and social security numbers can be easily matched to their respective cases. Plaintiffs filed their fourth motion to enforce settlement in state court captioning their motion as "All Kelley and Ferraro Asbestos Cases v. G-I Holdings, Inc. and Armstrong World Industries, et al." They did not name a single case nor did they list an individual case number. Apparently, the state court had notice or understood which cases were affected. The defendants' removal was based on the plaintiffs' fourth motion to enforce settlement. Amendments to motions for removal are allowed for technical defects even if they involve the court's jurisdiction, *Jones v. Kremer,* 28 F. Supp.2d 1112, 1113 (D. Minn. 1998); *Gafford v. General Electric Co.,* 997 F.2d 150, 164 (6th

5

Cir. 1993). Plaintiffs are partly responsible for the defect in the notice of removal. Defendants should not be penalized for a defect in their notice of removal that was not completely their fault. Any defect can be cured by the defendants.

The plaintiffs contend that the action should be remanded because this Court lacks subject matter jurisdiction. 28 U.S.C. § 1334 gives a district court jurisdiction over four types of bankruptcy matters: (1) cases under title 11; (2) proceedings under title 11; (3) proceedings arising in cases under title 11; and (4) proceedings related to cases under title 11. Cases "under title 11" refer to the bankruptcy case. *In re Best Reception Systems, Inc.*, 220 B.R. 932, 942 (Bkrtcy E.D. Tenn. 1998). The phrase "arising under title 11" describes a proceeding that involves a cause of action created or determined by a statutory provision of title 11. *Id.* at 943. Proceedings "arising in a case under title 11" refers to administrative matters that arise only in bankruptcy cases. *Id.* They are proceedings that are not based on any right created by title 11 but would have no existence outside of bankruptcy. *Id.* If a proceeding removed to federal court is merely related to a bankruptcy case this court has subject matter jurisdiction. *Loomis Electric, Inc., v. Lucerne Products, Inc.*, 225 B.R. 381, 386 (Bkrtcy N.D. Ohio 1998).

The Sixth Circuit adopted the test for relatedness set forth in *Pacor, Inc., v. Higgins*, 743 F.2d 984, 994 (3rd Cir.

6

1984):

> The usual articulation of the test for determining
> whether a civil proceeding is related to bankruptcy is
> whether the outcome of [that] proceeding could
> conceivably have any effect on the estate being
> administered in bankruptcy.  Thus, the proceeding need
> not necessarily be against the debtor or against the
> debtor's property.  An action is related to bankruptcy
> if the outcome could alter the debtor's rights,
> liabilities, options or freedom of action (either
> positively or negatively) and which in any way impacts
> upon the handling and administration of the bankrupt
> estate.

The facts in the present case are similar to those in *In re Dow Corning Corp.*, 86 F.3d 482 (6th Cir. 1996), *cert. denied*, 519 U.S. 1071 (1997).  Dow Corning filed bankruptcy as a result of numerous personal injury lawsuits arising from its manufacture of silicone breast implants.  The Sixth Circuit held that numerous actions against other non-debtor manufacturers had a "conceivable effect" on the bankruptcy and were related because the non-debtor defendants had contingent claims for contribution and indemnity based on joint and several liability.

G-I Holdings and CCR have contingent contribution claims against AWI.  AWI has defaulted on numerous settlement agreements causing plaintiffs to file actions against the other defendants seeking to hold them -including AWI - jointly and severally liable.  These claims against AWI would affect the size of the estate and the length of time the bankruptcy proceeding will be pending.  The Court concludes that the removed matter is at least related to the *Armstrong* bankruptcy case and that this Court has

jurisdiction over this matter.

Alternatively, the plaintiffs move the Court for abstention. Abstention regarding bankruptcy proceedings is set forth in 28 U.S.C. § 1334(c).

> (1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a claim under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Subsection (c)(1) provides for permissive abstention while abstention referred to in (c)(2) is mandatory. Since the Court has determined that this proceeding is related to a case under title 11, mandatory abstention is applicable provided that the factors set forth for such determination by the Sixth Circuit are satisfied.

> For mandatory abstention to apply to a particular proceeding in the Sixth Circuit, there must be a timely motion by a party to that proceeding, and the proceeding must; (1) be based on a state law claim or cause of action; (2) lack a federal jurisdictional basis absent bankruptcy; (3) be commenced in a state forum of appropriate jurisdiction; (4) be capable of timely adjudication; and (5) be a non-core proceeding.

*In re Dow Chemical Co.*, 113 F.3d 565, 570 (6th Cir. 1997), *cert.*

8

*denied,* 522 U.S. 977 (1997).

Whether or not abstention is mandatory depends in large part on whether the matter removed to federal court is core or non-core.  Section 1334 gives the court jurisdiction over four types of bankruptcy matters; (1) cases under title 11; (2) proceedings arising under title 11; (3) proceedings arising in cases under title 11; and (4) proceedings related to cases under title 11.  The first three categories are core proceedings.

The term core proceeding has no statutory definition but a non-exclusive list is set forth in 28 U.S.C. § 157(b)(2). Section 157(b)(2)(A) is one of two provisions applicable to this discussion.  Under § 157(b)(2)(A) matters concerning the administration of the estate are core.  28 U.S.C. § 157(b)(3) provides that a determination that a proceeding is not a core proceeding should not be made solely on the basis that its resolution may be affected by state law.  Bankruptcy courts in Ohio have held:

> A non-core [or related to] proceeding is one filed in
> the bankruptcy court alleging a cause of action which:
>> (1) is not specifically identified as a core
>> proceeding under  § 157(b)(2)(B) through (N);
>> (2) existed prior to the filing of the bankruptcy
>> case;
>> (3) would continue to exist independent of the
>> provisions of title 11; and
>> (4) the parties' rights, obligations, or both are
>> not significantly affected as a result of the
>> filing of the bankruptcy case.

*In re G.T. Corp.,* 211 B.R. 241, 246 (Bkrtcy S.D. Ohio 1997,

quoting *In re Parke Imperial Canton, Ltd,* 177 B.R. 544, 548
(Bkrtcy N.D. Ohio 1994). Congress intended to interpret core
proceedings broadly so any proceeding that does not contain all
the characteristics of a non-core proceeding will be determined to
be core. *In re Webb,* 227 B.R. 494, 498 (Bkrtcy S. D. Ohio 1998).

CCR asserts that there are hundreds of other pending and
impending motions arising from G-I's and AWI's nationwide default
in their settlement obligations. The rights and obligations are
significantly affected as a result of the filing of the bankruptcy
case. The state court held in prior motions to enforce settlement
that all members of the CCR, including AWI are jointly and
severally liable to the plaintiffs. There has been no decision as
to the liabilities of the defendants as to one another for the
settlement amounts in question in the fourth motion to enforce
settlement. A determination will have to be made in accordance
with the Armstrong Bankruptcy. The ultimate determination will
effect the distribution of AWI's assets and the restructuring of
its business. Since the removed proceeding will have a
significant impact on the administration of the AWI estate, this
matter must be considered a core proceeding. *In re U.S. Lines,
Inc.,* 197 F.3d 631, 638 (2d Cir. 1999), *cert. denied,* 529 U.S.
1038 2000). Because it is a core proceeding, mandatory abstention
is not available.

28 U.S.C. § 1334(c)(1) gives the court discretion to

10

abstain from hearing a matter when mandatory abstention is inappropriate or the court may decide to remand for equitable reasons pursuant to 28 U.S.C. § 1452(b).[1]  The factors to be considered are essentially identical and the court's analysis is basically the same for both.  *Mann v. Waste management of Ohio, Inc.*, 253 B.R. 211, 215 (Bkrtcy N.D. Ohio 2000).  The factors for the court to consider under § 1334(c)(1) are:

> (1) the effect or lack of effect on the efficient administration of the estate if the court abstains;
> (2) the extent to which state law issues predominate over bankruptcy issues;
> (3) the difficulty or unsettled nature of the applicable state law;
> (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;
> (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;
> (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
> (7) the substance rather than the form of an asserted "core" proceeding;
> (8) the feasability of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
> (9) the burden of this court's docket;
> (10) the likelihood that the commencement of the proceeding in bankruptcy involves forum shopping by one of the parties;
> (11) the existence of the right to a jury trial;
> (12) the presence in the proceeding of non-debtor parties; and
> (13) any unusual or other significant factors.  *Id.*

The factors to consider for equitable remand pursuant to § 1452

---

[1]   28 U.S.C. § 1452(b) provides: "The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."

include:

(1) duplicative and uneconomical use of judicial
resources in two forums;
(2) prejudice to the involuntarily removed parties;
(3) forum non conveniens;
(4) the state court's ability to handle a suit involving
questions of state law;
(5) comity considerations;
(6) lessened possibility of an inconsistent result; and
(7) the expertise of the court in which the matter was
originally pending.

Id. at 215; citing In re Revco D.S., Inc., 99 B.R. 768, 775-76

(Bkrtcy N.D. Ohio 1989).

Consideration of the factors for equitable consideration

favor remand of the fourth motion to enforce settlement agreement.

If remand is not granted there will still be duplication of

judicial resources because of the numerous cases involving the

same defendants and issue that are in existence in state courts

throughout the country.  In fact, a judge in the United States

District Court for the Northern District of Texas, ruling on the

same issue, granted the plaintiffs' motion to remand to state

court.  Painter v. Certainteed Corp. T & N, PLC, United States

District Court for the Northern District of Texas, Case No. 3:00-

CV-2714-M.  Allowing these proceedings to remain in federal court

will not cure duplication.  There are no involuntarily removed

parties to consider.  The proceedings involve state issues easily

handled by the state court. Plaintiffs state in their brief that

the same issues are pending in the Ohio Eighth Appellate Court of

Appeals.  Inconsistent results might occur because of the

12

possibility of divergent judgements on the same state law issues. Retention of this proceeding would not lessen the possibility of inconsistent results.

Accordingly, for the foregoing reasons, the plaintiffs' motion to remand is granted pursuant to 28 U.S.C. § 1452(b). Defendant CCR's motion to transfer the action to the United States District Court for the District of Delaware is denied as moot.

IT IS SO ORDERED.

*Paul R. Matia*

JUDGE PAUL R. MATIA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

### CERTIFICATE OF SERVICE

A copy of the foregoing Memorandum of Opinion and Order was sent by United States mail to Eric H. Zagrans, Esq., The Zagrans Law Firm, 5338 Meadow Lane Court, Elyria, Ohio 44035-1469; Michael Smith, Esq., Frantz Ward LLP, 55 Public Square, 19th Floor, Cleveland, Ohio 44113-1900; and Thomas M. Wilson, Esq., Kelley & Ferraro LLP, 1901 Bond Court Building, 1300 East Ninth Street, Cleveland, Ohio 44114.

*Paul R. Matia*

JUDGE PAUL R. MATIA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED
01 FEB 20 AM 11:18
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN RE: ALL KELLEY & FERRARO ) JUDGE PAUL R. MATIA
ASBESTOS CASES )
                    Plaintiff ) CASE NO. 1:00CV20010
                             )
       -vs-                  )
                             ) ORDER OF REMAND
G-1 HOLDINGS, INC., et al.   )
                             )
                    Defendants )

Pursuant to this Court's Memorandum of Opinion and Order filed contemporaneously with this Order of Remand,

It is hereby ordered that this action is remanded to the Common Pleas Court of Cuyahoga County, Ohio.

IT IS SO ORDERED.

*Paul R. Matia*

JUDGE PAUL R. MATIA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

CERTIFICATE OF SERVICE

A copy of the foregoing Order Of Remand was sent by United States mail to Eric H. Zagrans, Esq., The Zagrans Law Firm, 5338 Meadow Lane Court, Elyria, Ohio 44035-1469; Michael Smith, Esq., Frantz Ward LLP, 55 Public Square, 19th Floor, Cleveland, Ohio 44113-1900; and Thomas M. Wilson, Esq., Kelley &

MERLEY PUBLICATIONS, INC.
Doc.# 01-010223-014

AO 72A
(Rev.8/82)

1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| PATRICIA PAINTER AND JERRY | ( | CIVIL ACTION NUMBER |
| PAINTER, et al. | ( | |
| Plaintiff, | ( | |
| | ( | 3:00-CV-2714-M |
| VERSUS | ( | |
| | ( | |
| CERTAINTEED CORP. T&N, PLC, | ( | December 18, 2000 |
| UNITED STATES GYPSUM CO. | ( | |
| Defendant. | ( | 2:30 p.m. |

### TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

FOR THE PLAINTIFF:     KAY GUNDERSON REEVES
                       JUDY BRADSHAW
                       MEGAN KRAMER
                       KAESKE - REEVES LLP
                       6301 Gaston Avenue, Suite 735
                       Dallas, Texas 75214
                            214.821.1221


FOR THE DEFENDANT:     GARY D. ELLISTON
                       DEHAY & ELLISTON LLP
                       3500 Bank of America Plaza
                       901 Main Street
                       Dallas, Texas 75202-3736
                            214.210.2400

                       LAWRENCE GERMER
                       GERMER BERNSEN & GERTZ LLP
                       805 Park Street
                       Beaumont, Texas 77701
                            409.828.2080

#01-010119-102

2

:04

1   COURT REPORTER:          P. SUB ENGLEDOW RPR/CSR NO. 1170
2                            P.O. Box 1247
3                            Red Oak, Texas 75154
                                  214/753-2325

4        Proceedings reported by mechanical stenography,
    transcript produced by computer.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1:07:04

**P R O C E E D I N G S**
December 18, 2000
2:30 p.m.
MOTIONS HEARING

1    
2    
3    

4    (Judge enters courtroom.)

5    (Court opening.)

6    THE COURT:  Good afternoon everyone.  I appreciate

7 everybody coming by on such short notice.

8    We're here on Painter versus Certainteed Corporation,

9 cause number 3:00-CV-2714-M.  We're here on the motion filed

10 by the plaintiffs for remand, the response to the motion for

11 remand, and a motion to transfer to Delaware where the

12 Armstrong bankruptcy is pending.

1:54:30 13    Let me have the announcements first for the plaintiff,

14 please.

15    MS. REEVES:  Yes, your Honor.  Kay Reeves appearing

16 on behalf of the plaintiffs Painter.

17    THE COURT:  For the defendant?

18    MR. ELLISTON:  Gary Elliston and Larry Germer on

19 behalf of the defendants, your Honor.

20    THE COURT:  Thank you.

21    Mr. Germer, I appreciate your coming up on such short

22 notice.

23    For the record, we had a conference call on Friday in

24 which Ms. Reeves and Mr. Germer and I participated.  I think

25 you all have met my law clerk, Raman Gill, who also was

4

1   present during the call.

2       I have received filings by the defendants since our

3   Friday telephone conference pursuant to my request.  Those

4   have been served on you, have they not, Ms. Reeves?

5           MS. REEVES:  Yes, your Honor, they have.

6           THE COURT:  So we're here on the motion to remand

7   and then I'll hear from the defendants on their response and

8   their motion to transfer.

9       I'll hear from you first, Ms. Reeves.

10          MS. REEVES:  Thank you, your Honor.  As set forth in

11  my brief, and as we discussed on Friday, I have a three

12  pronged -- three prongs to support my motion for remand.

13      First, the jurisdictional facts alleged in the notice of

14  removal were incorrect, in the first place.  There is nothing

56:00  15  in the underlying motion that was removed from state -- County

16  Court at Law Number 3 that impacted in any way the estate, the

17  right, the obligations of the bankrupt.  The underlying motion

18  was a motion to compel settlement funds.  It did not mention a

19  bankrupt party, did not allege joint conduct by a bankrupt

20  party, did not allege joint and several liability between the

21  defendants, the removing defendants here, and any bankrupt

22  entity.

23      And I would note at this point that that is one key

24  ground on which this case is distinct from the Wood case

25  relied upon heavily by the movant and defendant.

5

1      This is not a case where I have brought the removed

2   motion against a party alleging that they have joint conduct

3   and that that joint conduct is the substance of the instant

4   motion against these defendants.

5          THE COURT:  Well, let me step ahead for a minute.

6   Let's get to the point, as I understand what the point is

7   here.  I mean, what will happen here, as I understand it, if I

8   remand this case, there will be a hearing before Judge

9   Jenevein in County Court Number 3, the plaintiffs will be

10   taking the position that the full settlement amount, which in

11   the documents I have shows up as                    Am I

12   remembering that correct?

13          MS. REEVES:  Correct, your Honor.

14          THE COURT:  A portion of which is allocable to these

15   plaintiffs, but that number is ascertainable not from the

16   papers, but from what you have represented to me, that that's

17   an allocation that's been made by plaintiffs' counsel among

18   a variety of plaintiffs, these plaintiffs and others.  That

19   amount is not reflected in the documents that I have before

20   me.  It's in the

21          MS. REEVES:  That's correct, your Honor, although I

22   would say that                  was consideration for the entire

23   agreement, including the settlement, so what was out to

24   Mr. Painter.  So what was allocated to the Painters --

25          THE COURT:  That's your internal business.  My point

1:59:00  1    is, I don't want the record to be misstated.  There is not an

2    agreement that you're trying to enforce before Judge Jenevein

3    to get                    for the Painters, or are you?

4            MS. REEVES:  Well, the settlement agreement was a

5    settlement agreement for the Painters' claims, consideration

6    of which was the settlement of nine additional claims for a

7    total.

8            THE COURT:  What are you going to be asking Judge

9    Jenevein to do?

10           MS. REEVES:  We have asked Judge Jenevein to compel

11   the removing parties to either pay the full amount of the

12                   or to compel CCR, their agent, to pay that

13   money.  The CCR is the sole and exclusive party that

14   negotiated the settlement amount and has exclusive right to do

1:59:00  15   that and to make payment to the plaintiffs.

16       CCR is not itself a party to the underlying action, we do

17   not believe that the Court can enter a judgment against CCR,

18   and we will not be asking them to do that, but these

19   defendants can be ordered to compel their agent to pay the

20   funds to us.

21           THE COURT:  Well, the original motion to compel,

22   which is attached to the notice of removal, was in fact a

23   motion to compel CCR, the Center for Claims Resolution, to

24   settle pursuant to the terms of that.  And that motion says

25   the agreement indicated that the plaintiffs would settle their

| | |
|---|---|
| 1:...:30 | 1 |
| | 2 |
| | 3 |
| | 4 |
| | 5 |
| | 6 |
| | 7 |
| | 8 |
| | 9 |
| | 10 |
| | 11 |
| | 12 |
| | 13 |
| | 14 |
| 1:01:00 | 15 |
| | 16 |
| | 17 |
| | 18 |
| | 19 |
| | 20 |
| | 21 |
| | 22 |
| | 23 |
| | 24 |
| | 25 |

1 claims as against CCR in return for payment in the amount of

2 That's what the original motion says.

3 There is now an amended motion which I had received

4 subsequent to the initial notice of removal, I believe, as an

5 attachment to your papers.

6 MS. REEVES:  Yes, your Honor.

7 THE COURT:  And it reflects -- Ms. Reeves, if you

8 can direct me to it.

9 MS. REEVES:  Your Honor, the amended motion was

10 filed in large part because we felt that the original motion

11 was really not correct on what the terms of the settlement had

12 actually been.

13 THE COURT:  For the moment I just want to find it.

14 MS. REEVES:  If you are asking me what are we

15 seeking?

16 THE COURT:  I just want you to tell me where it is

17 in the record for the moment.

18 MS. REEVES:  The attachment B to our motion for

19 expedited remand.

20 THE COURT:  The confusion I have got, there is two

21 Exhibits B.  I guess some of the exhibits are exhibits to

22 other exhibits.

23 All right.  So the amended motion was filed against four

24 named defendants:  United States Gypsum, Federal Mogul, T&N,

25 PLC, and Certainteed, which are jointly represented by the

8

1:00:30  1   Center for Claims Resolution.

2            As I understand the facts, there were, is it correct,

3   five defendants; that is, these four and Armstrong in the

4   original action?

5            MS. REEVES:  Actually, your Honor, there were more

6   defendants that were members of the CCR in the original action

7   National Gypsum.  The Asbestos Claims Management Trust had

8   been a member of the CCR and declared bankruptcy.

9            THE COURT:  Let me ask you --

10           MS. REEVES:  Armstrong was, yes, your Honor, named

11  in the original petition.

12           THE COURT:  Okay.  I'm not asking my question

13  clearly.

14           As of the time of the agreement to settle, who was left

1:02:30  15   in the case?

16           MS. REEVES:  Of the CCR?

17           THE COURT:  Who was left in the case as to -- well,

18  let me put it this way.

19           Are there additional defendants remaining in the case

20  after the settlement with the CCR parties?

21           MS. REEVES:  There were, yes.  The case was set for

22  trial on September the 18th and there were parties remaining

23  in the case on the trial setting date and settlements were

24  made with those parties.

25           THE COURT:  Well, right now the only parties

9

1   remaining whose elements are in issue then are these four

2   defendants and Armstrong; is that correct?

3          MS. REEVES:  There are other parties whose

4   settlement payments are late, your Honor, but we seem to have

5   been having more progress in working something out with them

6   and so we have not yet filed with Judge Jenevein a comparable

7   motion for those other defendants, but it is my understanding

8   that all of the defendants named in the original Painter

9   action have been resolved by settlement or nonsuit.

10          THE COURT:  Well, let me put the question this way.

11   Was it contemplated by the plaintiffs that the parties

12   behind the settlement with the Center for Claims Resolution

13   were United States Gypsum, Federal Mogul, T&N, Certainteed,

14   and Armstrong?

15          MS. REEVES:  Your Honor, the Center for Claims

16   Resolution is not very forthcoming about how payments are made

17   and who among the CCR members are obligated when they settle

18   any particular case.  I myself do not know how they decide who

19   pays.

20          It is my general understanding that it does not matter

21   how many CCR defendants are paid, that they all contribute to

22   settlement payments, and when a release is signed, all of the

23   CCR parties are released, not just those named in the

24   petition, and not just those sued in counterclaims or

25   something of that nature.

1    So when you ask what we contemplated, the CCR is murky,

2    but we knew that they would ask for a release to be signed as

3    to all, and such a release was executed, your Honor.  In terms

4    of who made what particular --

5            THE COURT:  Okay.  I wasn't getting to that.  I

6    wasn't getting to that issue.

7        Then these parties that are listed as release parties in

8    the release, which is --

9            MS. REEVES:  Include Armstrong, your Honor. ._

10           THE COURT:  They include Armstrong.  Do they also

11   include parties who were not -- let me say it differently --

12   persons or entities who were not parties to your lawsuit at

13   all?

14           MS. REEVES:  Yes, your Honor.

15           THE COURT:  What you're representing to me,

16   Ms. Reeves, is that you had no communication of any kind with

17   the Center for Claims Resolution as to who would be paying

18   what?

19           MS. REEVES:  My partner is the primary negotiator

20   for us, your Honor, but neither he nor I was told what

21   percentage any particular defendant would be paying.  And I

22   can represent that in previous conversations I have had about

23   how the CCR worked, I have been told that CCR doesn't tell how

24   that all works out.

25       Having seen the producers' agreement this morning for the

1    first time and learning that perhaps even what was tendered to

2    the Court is not the up to date producers' agreement, the way

3    the attachments explain the allocation is utterly unclear to

4    me and it seems that as to high value claims like this one, a

5    little bit ad hoc and not even described in the producers'

6    agreement appropriately.

7          THE COURT:  That's the first time you have seen

8    that, or some iteration of that?

9          MS. REEVES:  Yes, your Honor.

10         THE COURT:  Let me try to just cut to the chase

11   here, and if I'm missing something, by all means correct me,

12   but it's my understanding that essentially the plaintiffs'

13   position is, look, we had an agreement with CCR, the parties

14   that are alive and well that we know to be members of CCR are

15   the parties who we have named now in connection with our

16   amended motion, we want to go before Judge Jenevein and get

17   Judge Jenevein to compel that the full payment be made, if the

18   parties that pay have a claim for contribution against

19   Armstrong, God be with them, they may go to Delaware and

20   assert it if they like?

21         MS. REEVES:  That's correct, your Honor, although I

22   think that there are other possibilities of what could happen

23   with Judge Jenevein.  I mean, in the event that he doesn't

24   decide to enter judgment for the total amount against the

25   three, I can ask for a trial setting on the underlying claim.

7:00  1  He could enter judgment severally against the four named

2  defendants, each of them, you know, responsible for a quarter.

3  There are various options, none of which would directly

4  impact -- or even absent another action or two, and I would

5  say it would be at least two, having looked at the producers'

6  agreement and seeing that they have to do an ABR, I think,

7  before they can prosecute an action, that this is far too

8  removed to constitute related to jurisdiction.

9       Finally, your Honor, I think it's important to note that

10  because there is such a lot in the record from the defendants

11  about the producers' agreement and how it works that really

12  wasn't in the underlying pleading that your Honor looked at to

13  determine if there is removal jurisdiction, that your Honor

14  does not have to get into all of the details about what's

08:00  15  going to happen and how it might work and what the play would

16  be and what are the steps, because at the end of the day the

17  best they can show with all of this is related to

18  jurisdiction, the very Wood case upon which they rely for

19  their support that this is related to is -- says at the end of

20  the case that what -- regardless, that joint conduct was

21  insufficient to demonstrate a core proceeding.

22       This is not a core proceeding.  And so given that, even

23  if it is related to, and we can test that for the reasons your

24  Honor outlined, your Honor must abstain.  There is a state

25  court proceeding that's been on file, my motion is timely for

1  you to abstain, Judge Jenevein was going to hear this action

2  on Friday when this case ensued.

3  　　　The Celotex case that was cited by the defendants

4  absolutely says nothing about abstention except that the party

5  in that case waived their right to waive an abstention

6  argument.  I would say that the producers' agreement does not

7  provide for the sort of indemnification or any indemnification

8  such as what is at issue in the Celotex case in which a

9  finding would have triggered an automatic indemnification

10  obligation by the debtor.

11  　　　So, Your Honor, I think you don't have to involve

12  yourself in what perhaps would be a morass of possibilities

13  and what's the nature of their agreement by looking at the

14  mandatory abstention provisions and the elements which are

15  present here.  So I think that your Honor could rule on that

16  basis alone.

17  　　　　　THE COURT:  All right.  You didn't fly all the way

18  up here for nothing, did you, Mr. Germer, you're not going to

19  let Mr. Elliston have all the fun, are you?

20  　　　　　MR. GERMER:  I asked him to let me talk, but he

21  said, Germer, I have seen you in action, you better let me

22  handle this.

23  　　　　　THE COURT:  Well, I have seen him in action.

24  　　　　　MR. GERMER:  Your Honor, I did want to say that I do

25  appreciate very much you giving us this additional time.  As

9:10:00   1   you can see, a lot of work was done over the weekend.  We've

2   tried to get more information to the Court.  We appreciate

3   you, number one, giving us the time today and for letting us

4   have this hearing.

5            THE COURT:  That's fine.  Obviously, Mr. Elliston,

6   I'm pulling your leg.  I'm happy to hear from you.

7        Let me just say before you begin, and obviously I

8   continue to interrupt with questions, as is my nature.

9        I remain concerned -- having read the papers and looked

10   at the cases, I remain concerned that this issue is at best

11   premature, because I do not know what Judge Jenevein will do.

12   This is, at this juncture, to me, very hypothetical.

13        I do not want that quoted back to me in the event that I

14   remand you and you try to come back here again, that I invited

9:11:00   15   you to do that.  I'm not addressing if, as, and when I would

16   look at it again.  But at this juncture I don't know that

17   Judge Jenevein would conclude that Armstrong has any

18   responsibility here at all.  He may.  But he may also conclude

19   that there is no responsibility of Armstrong, and the only way

20   that the plaintiffs can collect from Armstrong is to go file a

21   claim in Armstrong's bankruptcy, and clearly that would be

22   something that would need to be filed in Armstrong's

23   bankruptcy.

24        I don't predict what Judge Jenevein would do, but this

25   notion that because of what the plaintiffs are doing that

1  inevitably this involves a contribution claim is based on a

2  series of assumptions that may turn out to be invalid.

3          MR. ELLISTON:  Your Honor, thank you.  If I could

4  address that, and actually the reason I asked Mr. Germer to

5  let me speak first was I anticipated that you would want to

6  cut to the chase and ask some questions, so I wanted to stand

7  first because I do have a little more factual background in

8  this than Mr. Germer, and hopefully we can work through this

9  and address your Honor's question.

10         The defendants, as I understand it, at the time of the

11  settlement that were members of the CCR were in fact

12  Certainteed, T&N, U.S. Gypsum, the three removing defendants,

13  and Armstrong World Industries, who we refer to as AWI.

14         That settlement was negotiated by the CCR representative

15  on behalf of its disclosed principals, which would be those

16  four defendants.

17         And plaintiffs' counsel is correct, the CCR manages the

18  asbestos personal injury litigation for its members, it

19  negotiates the settlements.  CCR was not a defendant in that

20  plaintiff case, but they negotiated the settlement on behalf

21  of those four disclosed principals at the time.

22         Now, on december 6, as your Honor knows, AWI declared

23  bankruptcy.

24         THE COURT:  What is Federal Mogul?

25         MR. ELLISTON:  Federal Mogul, your Honor, is not a

16

13:00

1    member of the CCR, but Federal Mogul purchased the assets of

2    T&N and other related companies, and so there is an allegation

3    by plaintiffs in the underlying case that Federal Mogul would

4    ultimately be responsible for T&N's liabilities.  But Federal

5    Mogul itself is not a member of the CCR.

6         So, in any event, the three members of the CCR that are

7    solvent, U.S. Gypsum, Certainteed, and T&N have tendered

8    checks to the plaintiff paying their allocated shares of the

9    settlement, which of course plaintiffs have rejected, and what

10   plaintiffs seek to do here is to have the three solvent

11   defendant members of the CCR pay the share of the insolvent

12   member, which would be Armstrong World Industries.

13        In other words, even though they don't plead it as such,

14   what they're seeking to impose is joint and several liability

14:00   15   under this settlement agreement.

16        And, your Honor, maybe -- I understand your Honor's

17   concern about this being premature, but what the CCR solvent

18   members are attempting to do is to get these matters into the

19   federal court system and get them to the bankruptcy court,

20   because this is not an isolated event, as you might imagine.

21        As we set forth in our motion, AWI is -- owes in excess

22   of $50 million for settlements that have previously been

23   negotiated, and it will involve thousands of claimants across

24   America, not just these folks, and so we believe that the

25   evidence is clear that this is related to the bankruptcy.

THE COURT:  Well, they're not going to be -- they won't be bound in any way.  If I'm missing this, correct me, but let's say that Judge Jenevein concludes that you are responsible for their share.  Then -- and I left you to your own devices in state court -- you would either come back here and try to get it over there, or you would go there directly. But Armstrong is not going to be bound by that decision by Judge Jenevein, is it?

MR. ELLISTON:  I agree with your Honor.

THE COURT:  The reason I'm asking you that, Mr. Elliston, with all respect to your clients -- and I invite you to correct me on this, I really do not pretend to be an expert in this particular matter, but as I understand it, the issue of my jurisdiction here is really predicated -- my potential jurisdiction, because this is related to a bankruptcy, is predicated on the notion that I should not let something untoward happen to the debtor.  Not that I should look out for anybody in your client's position who might in turn be asserting a claim against the debtor.  Because if you do, that will certainly be in the bankruptcy court.

Now, I may be wrong, and I invite you to correct me, but unless I'm missing something, the notion that I should be sympathetic to the fact that -- and in a global sense, I am. It's a question of whether I'm sympathetic to the extent that it results in my exercising jurisdiction -- should I be

18

07:00

1   sympathetic to the fact that there is going to be a lot of

2   litigation where all of the parties are not present in one

3   particular matter, which certainly would be more convenient

4   for your clients, but at the same time plaintiffs are going to

5   be dragged up to Delaware when they are not asserting claims

6   against Armstrong.  It would be you, your clients, who would

7   be asserting -- I think it's fair to say contribution claims,

8   because this is not an indemnity situation, is it, it's just a

9   contribution claim?

10          MR. ELLISTON:  Actually, your Honor, we believe it

11  is an indemnity.  It's a contractual indemnity situation

12  because of the cost-sharing arrangement and the agreement in

13  the CCR between the parties.

14          THE COURT:  But -- I'm not using it in the artful

17:30  15  way I should.  It is for a percentage of the total, not for

16  the total?

17          MR. ELLISTON:  Correct, your Honor.

18          THE COURT:  That's what I meant.

19          MR. ELLISTON:  Well, your Honor, I'm not sure I can

20  fairly say that your understanding is incorrect as to why the

21  related-to language is there, but it is our position that if

22  in fact the plaintiffs win, what occurs here is that -- and

23  I'm talking about in Judge Jenevein's court.  If in fact they

24  were to prevail and these defendants, the solvent defendants,

25  had to step forward and pay the share of AWI, as a practical

1  matter it affects the estate because the obligation of AWI to

2  the plaintiffs is wiped out.   It does put these defendants in

3  a position where they would have to go to Delaware to seek

4  indemnification.

5  On the other hand, if we prevail, if the defendants

6  prevail before Judge Jenevein below and it is determined that

7  these are several obligations, then the AWI estate would be

8  impacted because they would be put in a position that they

9  would owe their entire share and it would not be the

10  bankruptcy court who's making that determination, who we

11  believe should be making the determination, but rather it

12  would be Judge Jenevein.

13  THE COURT:  But Ms. Reeves would have to go then to

14  Delaware -- no disrespect to Judge Jenevein, nor would the

15  situation be any different if it were me, as I understand it,

16  if Judge Jenevein said these checks that have been tendered by

17  you on behalf of Certainteed, T&N, U.S. Gypsum, that's all you

18  need to tender, so Ms. Reeves comes up short, whatever the

19  number is, she has got to go to the bankruptcy court to

20  collect that.   And what Judge Jenevein did isn't going to make

21  a hill of beans of difference to the bankruptcy court.

22  If I'm correct in my understanding, that's what I started

23  with earlier, that Armstrong cannot be bound by that

24  determination, they're not there.

25  MR. ELLISTON:  I agree with your Honor.  It's the

third scenario -- the third scenario would be that Judge

Jenevein would rescind the contract for a number of reasons,

it's not specific enough, it's not specific to the Painters or

to the amount that would be owed to the Painters, that they

would rescind the contract, then you would have AWI put in a

position where they have an unliquidated claim, an indefinite

claim against them that would be reinstated here in the state

court.  When in fact the bankruptcy estate might prefer to

have it remain a liquidated claim, and the bankruptcy court

make that determination there.

So in fact Judge Jenevein could make a determination that

would impact the estate.  Not because he's simply saying you

don't owe it, defendants, you have to go seek indemnity, or

you do owe your several share and the bankruptcy court could

say, well, we don't care what you say, Judge Jenevein.  But

the third alternative is the contract could be rescinded for a

number of reasons.

THE COURT:  The settlement contract?  Is that what

you're referring to?

MR. ELLISTON:  Correct.

THE COURT:  And --

MR. ELLISTON:  And the determination there, your

Honor, because if -- you have seen the letter agreement, it's

not specific as to the Painters, there's not separate amounts

for any of the defendants or the plaintiffs.  And, of course,

1:??:00

1   your Honor can imagine, there is a lot of dispute between the

2   parties as to values for each of the individual cases and who

3   would owe what under each of those individual cases.  And I

4   don't want to go too deep there, because I'll be frank with

5   your Honor, I don't know what would occur in front of Judge

6   Jenevein with regard to motions and defenses, but I can see

7   where certainly in this particular case the administration of

8   the estate of AWI in front of the bankruptcy court could be

9   affected.  Certainly understanding that we're not just talking

10   about this case or these ten cases, but we're talking about

11   thousands of cases nationwide.  What your Honor does here, and

12   what we anticipate other federal court judges will do here,

13   will be extremely important and will have an impact upon the

14   estate of AWI.

1:22:00

15           THE COURT:  Let me say that back to you,

16   Mr. Elliston.  I just want to make sure I'm understanding

17   that.

18       So with respect to your third scenario, what you're

19   envisioning here is that Armstrong might think this is a good

20   deal and it would rather pay its share, the bankruptcy

21   notwithstanding, but Judge Jenevein would determine that the

22   agreement is unenforceable on its terms and set it aside

23   but -- I can't take judicial notice of this, but just on a

24   visceral level, I have to assume that Armstrong knows

25   something about what's happening here.  They're not here.  But

presumably based on the agreement the Center has had to advise Armstrong about the goings on here.

Is it fair for me to assume that? You're asking me to assume that Armstrong is sort of looking over these proceedings and really wanting to enforce the settlement agreement, but not ponying up the money in effect.

MR. ELLISTON: No, Your Honor, I did not intend to indicate that. And I think your Honor should not assume that AWI is aware of what's transpiring here. Once they went into bankruptcy court and sought the bankruptcy protection -- and I'm going to speak a little bit out of turn myself -- it is my assumption, your Honor, that they were suspended or terminated as part of the CCR.

In any event, your Honor, I believe that all actions against AWI would be stayed under the bankruptcy court, so therefore I would not anticipate that they are watching or overseeing this.

THE COURT: I'm not making myself clear, and it was my use of language, not the way you heard it. Let me step back a minute.

What I meant to say, Mr. Elliston, was this.

It would not be a hasty assumption on my part that in September, which is about two and a half months before the bankruptcy was filed based on the information I have before me, that Armstrong, which indisputably was a member of CCR --

23

1          MR. ELLISTON:  Correct.

2          THE COURT:  -- would know that an agreement was

3     struck with the plaintiff, and whatever the deal was with

4     respect to Armstrong's participation, it knew that.

5          MR. ELLISTON:  Correct, they did.

6          THE COURT:  So when it went into bankruptcy, even

7     though obviously all the actions are stayed, Armstrong would

8     know what deal it had.

9          MR. ELLISTON:  Correct.

10          THE COURT:  So that if it considered it a good deal,

11     it would have the knowledge to -- if those in charge of the

12     administration of the estate wanted to, to make contact with

13     the parties and say we're in bankruptcy, but this is a sweet

14     deal here, we still want to do it, which is in affect what you

15     are asking me to protect it from.  And -- protect it from

16     losing that deal, and the point I was making, I didn't mean to

17     be as specific as my language indicated, I don't mean that the

18     debtor is necessarily aware of the fact that we have a hearing

19     today, but the debtor would have known whether it eventually

20     was evicted -- or tossed out or whatever terms of art might be

21     applicable -- from CCR, it would know what agreement it had

22     made prior to the bankruptcy.  And if it thought that was such

23     a great deal, there are parties that it could contact to say

24     don't leave us out, we want to stay a part of that agreement.

25          MR. ELLISTON:  Without a doubt, your Honor, AWI

1:05:30   1  would have been aware of the settlement and would have been in

2  a position to make the determination whether to fund the

3  outstanding settlements or not fund the outstanding

4  settlements.  And as we have indicated, on a motion they have

5  not funded those outstanding settlements, rather choosing to

6  go into the bankruptcy court.

7      As to what authority they might have or what ability they

8  might have to fund these settlements separate and apart from

9  the -- or as part of the bankruptcy action, I would profess or

10  proclaim my ignorance, but certainly they were aware of the

11  underlying agreement.

12          THE COURT:  All right.  Does the plaintiff -- I want

13  to make sure I know what facts are not disputed.

14      Is it known at the time of the settlement who the CCR

1:26:30   15  members were; that is, who of the defendants here were in CCR?

16          MR. ELLISTON:  Yes, your Honor.

17          THE COURT:  So -- again, if I'm misstating this,

18  Mr. Elliston, I advise you that you should correct me.  I

19  really am just trying to make sure I understand the facts.

20      So in September CCR would know and the plaintiffs would

21  know that the defendants who were members of CCR were

22  Armstrong, Gypsum, Certainteed, and T&N?

23          MR. ELLISTON:  That were being sued in that

24  particular case.

25          THE COURT:  In the Painter litigation?

~7:00   1          MR. ELLISTON:  Yes, ma'am.

2          THE COURT:  And the contribution of those four

3     entities to the settlement would not have been known to the

4     plaintiffs?

5          MR. ELLISTON:  Would not have been known to

6     plaintiffs, that's correct.

7          THE COURT:  And the plaintiffs were required to

8     execute settlements -- excuse me -- releases of all of those

9     parties and others as part of the settlement?

10          MR. ELLISTON:  That is also correct, your Honor.

11          THE COURT:  All right.  And there was no

12    communication from CCR or any of the defendant separately to

13    the plaintiffs describing what would happen in the event of a

14    bankruptcy or some other kind of insolvency?

28:00  15          MR. ELLISTON:  I cannot agree to that.  I cannot

16    dispute it, but I cannot agree to it.  And if I may explain.

17          The negotiations do not occur between my law firm and

18    plaintiffs' counsel.  They occur between an individual at the

19    CCR in Princeton and plaintiffs' counsel.

20          There have been discussions between CCR and numerous

21    plaintiffs' counsel -- and I would anticipate this particular

22    plaintiffs' counsel -- concerning what happens, or what would

23    happen if one of the members of the CCR became insolvent, or

24    if one of the members of the CCR were to leave.

25          THE COURT:  Let me ask it differently then.

1     Based on the documents before me, including the documents

2   that are the basis for the removal, I don't have anything that

3   tells me that such a discussion occurred.  I don't have

4   anything referring to that at all.

5         MR. ELLISTON:  I would not expect your Honor to have

6   that, no.

7         THE COURT:  So I don't know whether that discussion

8   occurred or not, but on the face of it it just says we're

9   settling ten cases for                , we expect releases,

10  here's a form of release and here's the docket number and the

11  CCR number for all of these parties for whom you are settling.

12  That's essentially what I have before me about the settlement?

13        MR. ELLISTON:  I believe that's correct, your Honor.

14     If I may address your specific point, I will agree with

15  your Honor that none of the documentation before you would

16  allow you to determine whether that communication occurred

17  with regard to these specific cases.

18        THE COURT:  All right.  Go ahead then, Mr. Elliston.

19  I led you down the long road here.  If you can get back to

20  where you were.

21        MR. ELLISTON:  And, your Honor, I think we have

22  covered most of the points here, but as I have indicated, this

23  is not an isolated event.  We anticipate that this will be a

24  nationwide occurrence in light of the number of cases and the

25  amount of money that's involved.  And clearly whatever

27

```
 ^:00    1    determination is made concerning whether these settlement
         2    obligations are joint and several or several will dramatically
         3    impact the estate of AWI.  And we believe under the case law
         4    of the Wood case that in fact when you're addressing the
         5    situation where you have the obligations, an obligor a debtor
         6    and a co-obligor that in fact this would be a circumstance
         7    where a claim against the co-obligor would be related to the
         8    bankruptcy action and therefore should in fact go to federal
         9    court because it is related.
        10         Now, as your Honor knows, we filed a motion to transfer.
        11    In fairness to plaintiffs' counsel, we faxed or had that
        12    hand-delivered this morning, and I don't know if they
        13    anticipated having it heard, but they have not had a chance to
        14    respond to that.
31:00   15         What I came prepared to do today, your Honor, is just to
        16    address your jurisdiction, and we believe you do have the
        17    jurisdiction because it is conceivably -- that it could
        18    conceivably affect the estate of Armstrong.
        19         What we're talking about here is not a contribution claim
        20    in an underlying mass tort case.  What we're talking about
        21    here is joint conduct, a joint obligation under a settlement
        22    agreement.  And under the Wood case we believe in fact it is
        23    related to bankruptcy, and I have gone through the various
        24    reasons -- scenarios in front to Judge Jenevein that we
        25    believe would indicate that it could in fact affect the
```

1    estate.

2         Just let me briefly address the mandatory abstention and

3    then I will be done.

4         We believe it is part of a core proceeding, because it

5    does affect the creditor-debtor relationship, and it does

6    affect the administration of the estate.

7         If your Honor looks at the press release concerning the

8    AWI bankruptcy, this bankruptcy was caused in large part

9    because of this ongoing asbestos litigation and the potential

10   liability from that.  And we believe that it is critical that

11   the bankruptcy court, one court, deal with these issues on a

12   nationwide basis.

13        Your Honor is correct, you could send this back down to

14   Judge Jenevein and he could make a ruling and we could take it

15   up through the state court system.  And yet it's our position,

16   your Honor, that it makes imminently more sense that your

17   Honor maintain jurisdiction of this, that it go to the

18   bankruptcy court rather than having various state courts and

19   county courts around this state and around this country make

20   differing determinations, go up through the appellate process

21   on numerous occasions.  Rather it makes more sense to go to

22   the bankruptcy court and the federal court system to take

23   jurisdiction of this.

24        And, your Honor, unless you have more questions, that's

25   our presentation.

29

~3:00  1            THE COURT:  Okay.  Thank you very much,

2    Mr. Elliston.

3            MR. GERMER:  Your Honor, I don't how --

4            THE COURT:  That's fine, Mr. Germer.

5            MR. GERMER:  I would like to add one fact.  Thank

6    you.

7        You've asked several times about the underlying case, and

8    Kay can help more than I can, but one thing that's interesting

9    here that I don't think has been brought out, this group of

10   plaintiffs, of ten plaintiffs or so that are going to get

11   :              and have been offered, in fact, that money less the

12   Armstrong portion, these are not plaintiffs in this case, this

13   Painter case.  Only the Painters are plaintiffs in this case.

14       What they have done to get to this          that they're

33:30  15   now asking for in the amended motion is lumped together some

16   cases, I think, from Nueces County --

17           THE COURT:  I understand that, and whether Judge

18   Jenevein would consider himself empowered to enforce a

19   settlement for           , when the amended motion to compel

20   and the original motion to compel both refer to a

21   settlement -- well, the original one does, the amended one

22   refers to the entire amount, so that's an issue that would be

23   for Judge Jenevein to determine.

24       I don't purport to have an opinion about that issue, but

25   I understand the point.  That's why I asked the question.

~4:30   1         MR. GERMER:  Thank you.  Well, you were ahead of me.

2   I just wanted to be sure that you did understand that, because

3   I could see you were focusing on that.

4         Thank you.

5         MS. REEVES:  Your Honor, briefly, a couple of

6   things.

7         First, I need to correct a factual misstatement

8   Mr. Elliston made.  He said that the plaintiffs have been

9   tendered the settlement funds in the amount equal to the share

10  owed by the CCR removing defendants here.

11        There is no showing that that has been made.  We don't

12  know what share they allocated to Armstrong.  There has never

13  been any demonstration of how that was done in the first

14  place, number one.

35:00   15        Number two, what the plaintiffs were given was a check

16  that said if you negotiate this check, you agree that it's in

17  full accord and satisfaction, and that extinguishes any rights

18  I have against any of the CCR members other than these

19  removing defendants.  And that is not a check that I have the

20  authority from my clients to accept, and certainly I would

21  argue and will argue to Judge Jenevein that it is not tender

22  of the settlement of their portion of the settlement amount.

23        Second, as to the disclosed principal, it's not really

24  an, issue but I don't want there to be any argument that I

25  waived the ability to complain that there were only four

1    disclosed principals.  The principals -- the entities upon

2    which the CCR defendants negotiate are all of the CCR

3    entities, these other people in the release, so I speak

4    necessarily for principals at issue here, everything that

5    Mr. Elliston said, every argument that he made, puts this case

6    squarely within the reach of Pacor and its progeny.  He said

7    nothing to distinguish this case from a situation in which a

8    defendant has a right of contribution.

9        This whole argument was there is going to be joint and

10   several liability, any finding that might compel us to pay

11   this money necessarily is a finding that liability is joint

12   and several.  That's the same thing that's at issue in the

13   contribution claim.  That was the same thing that was at issue

14   in Pacor, it's the same thing that was at issue in the

15   asbestos cases cited in my brief where other courts have held

16   that this is not related to jurisdiction and it's the same

17   sort of claim that the Walker versus Cadle court, Fifth

18   Circuit 1995, said this is the sort of third-party complaint

19   that is simply too intenuated to constitute related to

20   jurisdiction.

21       It's certainly -- I mean, if Mr. Elliston is making the

22   argument that there is something unique about a CCR defendant

23   because of the producers' agreement, it certainly wasn't

24   unique enough for the bankruptcy court to take notice of it

25   when issuing its stay.  It certainly could have issued in an

32

appropriate case a section 105 discretionary stay. It's done that in the Babcock and Wilcox bankruptcy. It extends the stay to nondebtor parties where there is the sort of interconnection that Mr. Elliston is trying to establish exists here, but does not, your Honor. The kind of interconnection that the Wood court was talking about is not present here. This is -- on all fours analogous to what has been found time after time not to be related to.

And, again, there has been no showing that this is in any way a core proceeding. And under the very holding of Wood, the last paragraph of the opinion says, even in a joint conduct situation, which this is not, the downstream consequences against the debtor estate are too speculative to constitute a core proceeding. The right claim does not arise out of the bankruptcy code and the right claim does exist outside of the bankruptcy context. Those are two prongs of the test for a core proceeding enunciated in the Fifth Circuit in the Wood case. Those prongs are not met here, and so this is a mandatory abstention situation even if your Honor finds related to jurisdiction.

THE COURT: All right. I'm going to be in recess for 15 minutes. I'll be back and announce my decision from the bench.

(Brief recess.)

THE COURT: All right. Counsel, thank you for a

1   very fine informative argument, which I appreciate.  I have

2   reviewed the materials, as I had before we began the hearing,

3   and I have concluded that the subject issue is not a core

4   proceeding and I conclude it is not related to -- in the sense

5   that is as that phrase is used under the bankruptcy -- under

6   the bankruptcy code and, therefore, I conclude that I do not

7   have subject matter jurisdiction.

8        In the alternative, if I did have subject matter

9   jurisdiction, I believe I have discretion not to exercise, and

10   I determine not to exercise it in this case.

11        It appears to me that the matter is properly before Judge

12   Jenevein and should be determined by him depending on what

13   scenario of those outlined by Mr. Elliston or others in the

14   scenarios that I can think of develop.  It may be appropriate

15   for one or more of the parties to take action in the Court

16   where the bankruptcy against Armstrong is pending, but I do

17   not believe that there is a sufficient relationship for the

18   Court to conclude that it has subject matter jurisdiction and,

19   therefore, I decline to conclude otherwise.

20        In light of that determination, the motion to transfer

21   that has been filed by the defendants is rendered moot by my

22   decision, and consequently I will not determine that.

23        Is there anything further that I need to decide today, or

24   any other finding that the parties wish me to make?

25        Anything, Ms. Reeves?

34

1:75:30

1        MS. REEVES:  No, your Honor.  Thank you.

2        THE COURT:  All right.  Mr. Elliston?

3        MR. ELLISTON:  In light of your ruling, no, ma'am.

4        THE COURT:  Then the -- so that the record is clear,

5  the Court has granted the plaintiffs' motion for remand, and

6  the case will be remanded.

7     As I have indicated in our conference call last week, I

8  did advise Judge Jenevein that we were having the hearing

9  today.  I had told him that the hearing was at 11:30.  I did

10  not advise him that we moved the hearing to this afternoon.  I

11  told him that either my office or one of the parties would

12  advise him of the outcome of our hearing here.  So I would

13  appreciate if you, Ms. Reeves, if you want to use the phone in

14  my conference room to do that, you may do so.

1:56:30

15        MS. REEVES:  Thank you, your Honor.

16        MR. ERVOES:  All rise.

17        ---oOo---

18

19

20

21

22

23

24

25

35

C E R T I F I C A T E:

I, P. Sue Engledow RPR/CSR, certify that the foregoing is a transcript from the record of the proceedings in the foregoing entitled matter.

I further certify that the transcript fees format comply with those prescribed by the Court and the Judicial Conference of the United States.

This the 19th day of December, 2000.


P. SUE ENGLEDOW RPR/CSR No. 1170
Official Court Reporter
The Northern District of Texas
Dallas Division


My CSR license expires:   December 31, 2001

Business address:   P.O. Box 1247
                    Red Oak, Texas 75154-1247

Telephone Number:   214/753-2325

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

DEC 19 2000

CLERK, U.S. DISTRICT COURT
By _____ Deputy

PATRICIA PAINTER and JERRY
PAINTER, Individually and as Wrongful
Death Beneficiaries of Bennie Painter,

    Plaintiffs,

v.

CERTAINTEED CORP., T&N, PLC., and
UNITED STATES GYPSUM CO.,

    Defendants.

§
§
§
§
§
§
§
§
§
§
§

Civil Action No. 3:00-CV-2714-M

ENTERED ON DOCKET

DEC 20 2000

U.S. DISTRICT CLERK'S OFFICE

## ORDER

The Court has before it Plaintiffs' Motion for Expedited Remand, filed on December 15,

2000 in the above-entitled case, and Removing Defendants' Motion to Transfer to the District of

Delaware, filed on December 18, 2000. Having considered the motions, applicable law and

arguments of counsel at a hearing held on December 18, 2000, the Court is of the opinion that,

for reasons stated on the record in open court, Plaintiffs' Motion for Expedited Remand should

be GRANTED and Defendants' Motion to Transfer should be DENIED as moot. The Court,

however, will not assess costs against Defendants.

    The Court hereby REMANDS this case to the Dallas County Court at Law No. 3 and the

Clerk of Court is hereby ORDERED to effect the remand in the usual manner.

    SO ORDERED.

    DATED: December 19, 2000.

BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

6

MEALEY PUBLICATIONS, INC.

Doc. # 01-010119-007

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

DEC 19 2000

CLERK, U.S. DISTRICT COURT

By _____ Deputy

PATRICIA PAINTER and JERRY
PAINTER, Individually and as Wrongful
Death Beneficiaries of Bennie Painter,

Plaintiffs,

v.

CERTAINTEED CORP., T&N, PLC., and
UNITED STATES GYPSUM CO.,

Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§

Civil Action No. 3:00-CV-2714-M

ENTERED ON DOCKET

DEC 20 2000

U.S. DISTRICT CLERK'S OFFICE

## ORDER

The Court has before it Plaintiffs' Motion for Expedited Remand, filed on December 15,
2000 in the above-entitled case, and Removing Defendants' Motion to Transfer to the District of
Delaware, filed on December 18, 2000. Having considered the motions, applicable law and
arguments of counsel at a hearing held on December 18, 2000, the Court is of the opinion that,
for reasons stated on the record in open court, Plaintiffs' Motion for Expedited Remand should
be GRANTED and Defendants' Motion to Transfer should be DENIED as moot. The Court,
however, will not assess costs against Defendants.

The Court hereby REMANDS this case to the Dallas County Court at Law No. 3 and the
Clerk of Court is hereby ORDERED to effect the remand in the usual manner.

SO ORDERED.

DATED: December _19_, 2000.

BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

MEALEY PUBLICATIONS, INC.

Doc. # 01-010119-007

6



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE: ALL KELLEY & FERRARO    )    JUDGE PAUL R. MATIA
ASBESTOS CASES                 )
              Plaintiff        )    CASE NO. 1:00CV20010
                               )
     -vs-                      )
                               )    MEMORANDUM OF OPINION
G-1 HOLDINGS, INC., et al.     )    AND ORDER
                               )
              Defendants       )

This omnibus action for recovery of damages for exposure to asbestos was commenced in the Court of Common Pleas of Cuyahoga County, Ohio. The plaintiffs are a group of personal injury claimants represented by Kelley & Ferraro and who entered into a Settlement Agreement with the defendant Center for Claims Resolution (CCR) as agent for nineteen different individual companies. On December 7, 2000, one of the defendants, G-I Holdings, Inc. (G-I), not a member of CCR, was served with the plaintiffs' fourth motion to enforce settlement that was entered into on July 26, 1999 which pertained to a number of defendants. The day before service of the fourth motion to enforce settlement, one of the defendants, Armstrong World Industries (AWI), filed for chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware, Case No. 004471. Because of the bankruptcy filing, G-I caused the action to be removed to this Court pursuant to 28 U.S.C. $ 1452, the

AO 72A
(Rev.8/82)

Court allegedly having jurisdiction under 28 U.S.C. § 1334(b).
The removal concerns only plaintiffs' fourth motion to enforce
settlement as the original complaint against the defendants has
been dismissed.  G-I asserts in its notice of removal that
central to the bankruptcy proceeding are future claims for
contribution and indemnity between G-I and AWI, the outcome of
which will have a substantial effect on AWI's financial
obligations and will further effect the amount of property
available for distribution in the bankruptcy proceeding among the
asbestos claimants.  This matter is before the Court upon the
plaintiffs' motion to remand, or in the alternative, motion for
mandatory and/or discretionary abstention (ECF 16) and the CCR
defendant's motion to transfer the action to the United States
District Court for the District of Delaware (ECF 19).  The Court
has reviewed CCR's and G-I's memoranda in opposition to
plaintiffs' motion to remand (ECF 15, 17), the reply brief of CCR
in opposition to plaintiffs' motion to remand. (ECF 25),
plaintiffs' supplemental authority in support of motion to remand
(ECF 22), the plaintiffs' opposition to defendant CCR's motion to
transfer (ECF 21), and the reply memorandum of the defendant CCR
in support of its motion to transfer (ECF 26).

     28 U.S.C. § 1452(a) provides in pertinent part:

> A party may remove any claim or cause of action in a
> civil action ... to the district court for the district
> where such civil action is pending, if such district
> court has jurisdiction of such claim or cause of action
> under § 1334 of this Title.

2

Pursuant to 28 U.S.C. § 1334(a), the district court has original
and exclusive jurisdiction of all cases under title 11.
Bankruptcy Rule 9027 sets forth the form and content required of
a notice of removal.  It must contain a short and plain statement
of the facts which entitle the party filing the notice to remove,
contain a statement whether the claim or cause of action is a
core or non-core proceeding, and if non-core, whether the party
filing the notice consents to entry of judgment by the bankruptcy
judge.  In addition, the notice of removal shall be accompanied
by a copy of the process and pleadings.

        The defendant contends that this Court lacks subject
matter jurisdiction requiring immediate dismissal.  If at any
time before final judgment it appears that the court lacks
subject matter jurisdiction over a case that has been removed
from state court, the case must be remanded.  28 U.S.C. §
1447(c).  If jurisdiction is in doubt, removal is not favored.
*Chamberlain v. American Tobacco Co., Inc.,* 70 F. Supp.2d 788, 792
(N.D. Ohio 1999).  Removal is proper if the face of the complaint
shows the existence of a federal question.  *Long v. Bando Mfg. of
America, Inc.,* 201 F.3d 754, 758 (6th Cir. 2000); *Rivet v.
Regions Bank of Louisiana.,* 522 U.S. 470 (1998).  A federal
question is presented on the face of the complaint if an issue of
federal law is a necessary element of plaintiff's claim or if
federal law completely preempts plaintiff's state law claims.

3

*Id.; Toledo Fair Housing Center v. Farmers Ins. Group of Companies,* 61 F. Supp.2d 681, 682 (N.D. Ohio 1999).

Plaintiffs argue that the notice of removal does not meet the requirements for the exercise of federal jurisdiction. Neither this Court nor the state court knows what state court claims or actions the notice of removal seeks to remove. The notice of removal merely alleges that "certain claims" within the "omnibus action" were being removed. The notice of removal stated:

> 1. G-I is a defendant in actions in the Court of Common Pleas of the State of Ohio, County of Cuyahoga, jointly captioned in omnibus fashion as: All Kelley & Ferraro Asbestos Cases v. G-I Holdings, Inc., and Armstrong World Industries, et al., Case Number CV-07358 (the "Omnibus Action"). G-I hereby removes certain claims in the Omnibus Action ... pursuant to 28 U.S.C. § 1452. A list of those claims is separately submitted to the Court under seal. This removal is not intended to remove every claim in the Omnibus Action from the trial court. Rather, G-I is removing only those claims that are subject to the fourth motion to enforce settlement filed separately under seal.

A footnote stated:

> Defendant, GAF will submit a case list to which this Motion to Enforce is applicable on a supplemental basis due to the number of plaintiffs involved in this action and the fact that relevant numbers and case names are not included in the Motion to Enforce.

The plaintiffs point out in their brief that the omnibus action that was removed by G-I and designated No. CV-073958 is not an actual matter and the case number is not related to any individual asbestos complaint. It is the case number assigned to

4

the special docket of asbestos cases used by the state court for administrative purposes.  Actually, each asbestos complaint is assigned by random lot to a separate judge and has its own case number, even after it is referred to the asbestos docket.  For example, an amendment of a complaint would be ineffective for any case that did not refer to the case number on the motion to amend.

G-I stated in its notice of removal that certain claims in the omnibus action filed in state court were being removed.  A list of these claims has been submitted to this Court. Examination of the submission shows that it contains names and social security numbers.  Case numbers are not included.  However, the names and social security numbers can be easily matched to their respective cases.  Plaintiffs filed their fourth motion to enforce settlement in state court captioning their motion as "All Kelley and Ferraro Asbestos Cases v. G-I Holdings, Inc. and Armstrong World Industries, et al."  They did not name a single case nor did they list an individual case number.  Apparently, the state court had notice or understood which cases were affected. The defendants' removal was based on the plaintiffs' fourth motion to enforce settlement.  Amendments to motions for removal are allowed for technical defects even if they involve the court's jurisdiction, *Jones v. Kremer,* 28 F. Supp.2d 1112, 1113 (D. Minn. 1998); *Gafford v. General Electric Co.,* 997 F.2d 150, 164 (6th

5

Cir. 1993). Plaintiffs are partly responsible for the defect in the notice of removal. Defendants should not be penalized for a defect in their notice of removal that was not completely their fault. Any defect can be cured by the defendants.

The plaintiffs contend that the action should be remanded because this Court lacks subject matter jurisdiction. 28 U.S.C. § 1334 gives a district court jurisdiction over four types of bankruptcy matters: (1) cases under title 11; (2) proceedings under title 11; (3) proceedings arising in cases under title 11; and (4) proceedings related to cases under title 11. Cases "under title 11" refer to the bankruptcy case. *In re Best Reception Systems, Inc.*, 220 B.R. 932, 942 (Bkrtcy E.D. Tenn. 1998). The phrase "arising under title 11" describes a proceeding that involves a cause of action created or determined by a statutory provision of title 11. *Id.* at 943. Proceedings "arising in a case under title 11" refers to administrative matters that arise only in bankruptcy cases. *Id.* They are proceedings that are not based on any right created by title 11 but would have no existence outside of bankruptcy. *Id.* If a proceeding removed to federal court is merely related to a bankruptcy case this court has subject matter jurisdiction. *Loomis Electric, Inc., v. Lucerne Products, Inc.*, 225 B.R. 381, 386 (Bkrtcy N.D. Ohio 1998).

The Sixth Circuit adopted the test for relatedness set forth in *Pacor, Inc., v. Higgins*, 743 F.2d 984, 994 (3rd Cir.

6

1984):

> The usual articulation of the test for determining
> whether a civil proceeding is related to bankruptcy is
> whether the outcome of [that] proceeding could
> conceivably have any effect on the estate being
> administered in bankruptcy. Thus, the proceeding need
> not necessarily be against the debtor or against the
> debtor's property. An action is related to bankruptcy
> if the outcome could alter the debtor's rights,
> liabilities, options or freedom of action (either
> positively or negatively) and which in any way impacts
> upon the handling and administration of the bankrupt
> estate.

The facts in the present case are similar to those in *In re Dow Corning Corp.*, 86 F.3d 482 (6th Cir. 1996), *cert. denied*, 519 U.S. 1071 (1997). Dow Corning filed bankruptcy as a result of numerous personal injury lawsuits arising from its manufacture of silicone breast implants. The Sixth Circuit held that numerous actions against other non-debtor manufacturers had a "conceivable effect" on the bankruptcy and were related because the non-debtor defendants had contingent claims for contribution and indemnity based on joint and several liability.

G-I Holdings and CCR have contingent contribution claims against AWI. AWI has defaulted on numerous settlement agreements causing plaintiffs to file actions against the other defendants seeking to hold them  -including AWI - jointly and severally liable. These claims against AWI would affect the size of the estate and the length of time the bankruptcy proceeding will be pending. The Court concludes that the removed matter is at least related to the *Armstrong* bankruptcy case and that this Court has

7

jurisdiction over this matter.

Alternatively, the plaintiffs move the Court for abstention. Abstention regarding bankruptcy proceedings is set forth in 28 U.S.C. § 1334(c).

> (1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a claim under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Subsection (c)(1) provides for permissive abstention while abstention referred to in (c)(2) is mandatory. Since the Court has determined that this proceeding is related to a case under title 11, mandatory abstention is applicable provided that the factors set forth for such determination by the Sixth Circuit are satisfied.

> For mandatory abstention to apply to a particular proceeding in the Sixth Circuit, there must be a timely motion by a party to that proceeding, and the proceeding must; (1) be based on a state law claim or cause of action; (2) lack a federal jurisdictional basis absent bankruptcy; (3) be commenced in a state forum of appropriate jurisdiction; (4) be capable of timely adjudication; and (5) be a non-core proceeding.

In re Dow Chemical Co., 113 F.3d 565, 570 (6th Cir. 1997), cert.

8

*denied,* 522 U.S. 977 (1997).

Whether or not abstention is mandatory depends in large part on whether the matter removed to federal court is core or non-core. Section 1334 gives the court jurisdiction over four types of bankruptcy matters; (1) cases under title 11; (2) proceedings arising under title 11; (3) proceedings arising in cases under title 11; and (4) proceedings related to cases under title 11. The first three categories are core proceedings.

The term core proceeding has no statutory definition but a non-exclusive list is set forth in 28 U.S.C. § 157(b)(2). Section 157 (b)(2)(A) is one of two provisions applicable to this discussion. Under § 157 (b)(2)(A) matters concerning the administration of the estate are core. 28 U.S.C. § 157 (b)(3) provides that a determination that a proceeding is not a core proceeding should not be made solely on the basis that its resolution may be affected by state law. Bankruptcy courts in Ohio have held:

> A non-core [or related to] proceeding is one filed in
> the bankruptcy court alleging a cause of action which:
>> (1) is not specifically identified as a core
>> proceeding under § 157(b)(2)(B) through (N);
>> (2) existed prior to the filing of the bankruptcy
>> case;
>> (3) would continue to exist independent of the
>> provisions of title 11; and
>> (4) the parties' rights, obligations, or both are
>> not significantly affected as a result of the
>> filing of the bankruptcy case.

*In re G.T. Corp.,* 211 B.R. 241, 246 (Bkrtcy S.D. Ohio 1997,

quoting *In re Parke Imperial Canton, Ltd,* 177 B.R. 544, 548
(Bkrtcy N.D. Ohio 1994). Congress intended to interpret core
proceedings broadly so any proceeding that does not contain all
the characteristics of a non-core proceeding will be determined to
be core. *In re Webb,* 227 B.R. 494, 498 (Bkrtcy S. D. Ohio 1998).

CCR asserts that there are hundreds of other pending and
impending motions arising from G-I's and AWI's nationwide default
in their settlement obligations. The rights and obligations are
significantly affected as a result of the filing of the bankruptcy
case. The state *court held in prior motions to enforce settlement*
that all members of the CCR, including AWI are jointly and
severally liable to the plaintiffs. There has been no decision as
to the liabilities of the defendants as to one another for the
settlement amounts in question in the fourth motion to enforce
settlement. A determination will have to be made in accordance
with the Armstrong Bankruptcy. The ultimate determination will
effect the distribution of AWI's assets and the restructuring of
its business. Since the removed proceeding will have a
significant impact on the administration of the AWI estate, this
matter must be considered a core proceeding. *In re U.S. Lines,
Inc.,* 197 F.3d 631, 638 (2d Cir. 1999), *cert. denied,* 529 U.S.
1038 2000). Because it is a core proceeding, mandatory abstention
is not available.

28 U.S.C. § 1334(c)(1) gives the court discretion to

10

abstain from hearing a matter when mandatory abstention is inappropriate or the court may decide to remand for equitable reasons pursuant to 28 U.S.C. § 1452(b).[1]  The factors to be considered are essentially identical and the court's analysis is basically the same for both.  *Mann v. Waste management of Ohio, Inc.*, 253 B.R. 211, 215 (Bkrtcy N.D. Ohio 2000).  The factors for the court to consider under § 1334(c)(1) are:

> (1) the effect or lack of effect on the efficient administration of the estate if the court abstains;
> (2) the extent to which state law issues predominate over bankruptcy issues;
> (3) the difficulty or unsettled nature of the applicable state law;
> (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;
> (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;
> (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
> (7) the substance rather than the form of an asserted "core" proceeding;
> (8) the feasability of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
> (9) the burden of this court's docket;
> (10) the likelihood that the commencement of the proceeding in bankruptcy involves forum shopping by one of the parties;
> (11) the existence of the right to a jury trial;
> (12) the presence in the proceeding of non-debtor parties; and
> (13) any unusual or other significant factors.  *Id.*

The factors to consider for equitable remand pursuant to § 1452

---

[1]    28 U.S.C. § 1452(b) provides: "The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."

include:

>    (1) duplicative and uneconomical use of judicial
>    resources in two forums;
>    (2) prejudice to the involuntarily removed parties;
>    (3) forum non conveniens;
>    (4) the state court's ability to handle a suit involving
>        questions of state law;
>    (5) comity considerations;
>    (6) lessened possibility of an inconsistent result; and
>    (7) the expertise of the court in which the matter was
>        originally pending.

*Id.* at 215; *citing In re Revco D.S., Inc.,* 99 B.R. 768, 775-76

(Bkrtcy N.D. Ohio 1989).

Consideration of the factors for equitable consideration

favor remand of the fourth motion to enforce settlement agreement.

If remand is not granted there will still be duplication of

judicial resources because of the numerous cases involving the

same defendants and issue that are in existence in state courts

throughout the country.  In fact, a judge in the United States

District Court for the Northern District of Texas, ruling on the

same issue, granted the plaintiffs' motion to remand to state

court.  *Painter v. Certainteed Corp. T & N, PLC,* United States

District Court for the Northern District of Texas, Case No. 3:00-

CV-2714-M.  Allowing these proceedings to remain in federal court

will not cure duplication.  There are no involuntarily removed

parties to consider.  The proceedings involve state issues easily

handled by the state court. Plaintiffs state in their brief that

the same issues are pending in the Ohio Eighth Appellate Court of

Appeals.  Inconsistent results might occur because of the

12

possibility of divergent judgements on the same state law issues. Retention of this proceeding would not lessen the possibility of inconsistent results.

Accordingly, for the foregoing reasons, the plaintiffs' motion to remand is granted pursuant to 28 U.S.C. § 1452(b). Defendant CCR's motion to transfer the action to the United States District Court for the District of Delaware is denied as moot.

IT IS SO ORDERED.

JUDGE PAUL R. MATIA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

### CERTIFICATE OF SERVICE

A copy of the foregoing Memorandum of Opinion and Order was sent by United States mail to Eric H. Zagrans, Esq., The Zagrans Law Firm, 5338 Meadow Lane Court, Elyria, Ohio 44035-1469; Michael Smith, Esq., Frantz Ward LLP, 55 Public Square, 19th Floor, Cleveland, Ohio 44113-1900; and Thomas M. Wilson, Esq., Kelley & Ferraro LLP, 1901 Bond Court Building, 1300 East Ninth Street, Cleveland, Ohio 44114.

JUDGE PAUL R. MATIA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

13

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED
01 FEB 20 AM 11: 18
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

| | |
|---|---|
| IN RE: ALL KELLEY & FERRARO ASBESTOS CASES | ) JUDGE PAUL R. MATIA |
| Plaintiff | ) CASE NO. 1:00CV20010 |
| -vs- | ) |
| G-1 HOLDINGS, INC., *et al.* | ) ORDER OF REMAND |
| Defendants | ) |

Pursuant to this Court's Memorandum of Opinion and Order filed contemporaneously with this Order of Remand,

It is hereby ordered that this action is remanded to the Common Pleas Court of Cuyahoga County, Ohio.

IT IS SO ORDERED.

*Paul R. Matia*
——————————————
JUDGE PAUL R. MATIA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

CERTIFICATE OF SERVICE

A copy of the foregoing Order Of Remand was sent by United States mail to Eric H. Zagrans, Esq., The Zagrans Law Firm, 5338 Meadow Lane Court, Elyria, Ohio 44035-1469; Michael Smith, Esq., Frantz Ward LLP, 55 Public Square, 19th Floor, Cleveland, Ohio 44113-1900; and Thomas M. Wilson, Esq., Kelley &

KELLEY PUBLICATIONS, INC.
Doc. # 01-010223-014

2000266787
CASF

## COMPROMISE AND RELEASE OF ALL CLAIMS
## INCLUDING UNKNOWN AND FUTURE CLAIMS

1. Release of all Personal Injury and Death Claims:

(a)  THIS RELEASE EXTINGUISHES ALL CLAIMS FOR ALL INJURIES ARISING FROM OR RELATED TO ANY EXPOSURE TO ASBESTOS EXPERIENCED BY ROLANDO DOVAL INCLUDING BUT NOT LIMITED TO THOSE INJURIES NOW KNOWN, THOSE NOW EXISTING BUT UNKNOWN, THOSE THAT MANIFEST THEMSELVES IN THE FUTURE, AND THOSE THAT CAUSE HIS/HER DEATH. THIS RELEASE SPECIFICALLY EXTINGUISHES ALL CLAIMS BASED ON ANY CANCER OR MALIGNANCY.

2. Releasors:

(a)  Plaintiff:  ROLANDO DOVAL
     Social Security Number:  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

(b)  Plaintiff's spouse:  CONSUELO DOVAL
     Social Security Number:

(c)  Plaintiff's children:  GILBERT DOVAL and  RICHARD ANTHONY DOVAL

(d)  Plaintiff's heirs, as defined by California Code of Civil Procedure Section 377(b).

3. Releasees:

The Releasees are all subscribers to the Agreement Concerning Asbestos-Related Claims signed October 6, 1988 (The Center for Claims Resolution Agreement), and all of their predecessors and successors, their parent and subsidiary companies and divisions, and their current and former attorneys, liability insurance carriers, to the extent of their liability for Center non-insurance company subscribers only, officers, directors, agents, and employees. The names of the subscribers are set out below:

Manufacturers: Amchem Products, Inc.; Armstrong World Industries, Inc.; C.E. Thurston and Sons, Incorporated; Certain Teed Corporation; Dana Corporation; I.U. North America, Inc.; Maremont Corporation; National Services Industries Inc.; Nosroc Corp.; Pfizer Inc; Quigley Company, Inc.; Shook & Fletcher Insulation Co.; T & N, plc; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company;, Incorporated, and all distributors insofar as the liability of any distributor is predicated upon the distribution of products manufactured by Rhone Poulenc (Tendered To Amc)

1

4. Preliminary Facts:

ROLANDO DOVAL alleges that he has been exposed to asbestos that the asbestos was produced by or came from a product produced by one or more of the Releasees, and that the exposure to asbestos has injured him.

Based on this exposure, ROLANDO DOVAL has filed suit, or is considering filing suit, for damages arising from his personal injury.

Releasees desire to compromise and obtain a general release of all existing and future claims that could possibly arise from these facts, without admitting liability.

5. Terms of Settlement:

In consideration of $335,000.00, in total, Releasors release and forever discharge Releasees from any and all claims arising from or related to any exposure to asbestos experienced by ROLANDO DOVAL. This release specifically includes, but is not limited to, all wrongful death claims, all loss of consortium claims, and all claims based on presently undiscovered or unmanifested injures (including any cancer and any malignancy) arising from or related to any exposure to asbestos experienced by ROLANDO DOVAL.

For the purpose of this release, the word "claims" includes all claims, demands, actions, and suits of any kind. For the purposes of this release, the word "injuries" includes all injuries, illnesses, disabilities, losses, and harms of any kind including but not limited to all emotional injuries.

This release does not cover claims for injuries allegedly suffered by the plaintiff's spouse and children because of their personal exposure to asbestos or property damage claims.

The consideration specified in this release shall be paid in the form of drafts or checks payable to Releasor's counsel as trustee for Releasors.

6. Unknown Injuries and Potential Wrongful-Death Claims:

Releasors understand that people exposed to asbestos may be subject to an increased risk of contracting cancer, including but not limited to lung cancer and mesothelioma. Releasors also understand that ROLANDO DOVAL may have suffered injuries that are as yet unknown to him/her and that unknown complications may arise from conditions of which he/she is not aware. Nevertheless, Releasors intend to release and forever discharge Releasees from any claim for any injury arising from or related to any exposure to asbestos experienced by ROLANDO DOVAL, including but not limited

2

to those injuries now known, those now existing but unknown, those that manifest themselves in the future, and those that cause his/her death.

Releasors hereby waive any right or benefit that Releasors may have, now or in the future, under Section 1542 of the Civil Code of the State of California, which reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

7.  Indemnity Against Claims by Lienholders:

Releasors warrant that they, or some of them are the sole owners of all claims of any kind arising out of the injuries covered in this Release.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim, brought by any holder of a lien or encumbrance, that is related to the injuries covered in this release, other than cross-complaints or cross-actions of co-defendants. This indemnity agreement specifically does not cover cross-complaints or cross-actions of co-defendants.

8.  Indemnity Against Inaccuracy of Representation:

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting directly or indirectly from any falsity or inaccuracy of any representation made in this release by Releasors.

9.  Indemnity Against Wrongful-Death Claims:

Releasors warrant and represent that only they, or only some of them, would be legally entitled to bring suit based on an allegedly wrongful death of ROLANDO DOVAL. Furthermore, they warrant that no wrongful death suit based on any exposure to asbestos experienced by ROLANDO DOVAL will be brought by anyone against Releasees.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any wrongful death suit, brought by anyone, based on any exposure to asbestos experienced by ROLANDO DOVAL.

10.  Indemnity Against Claims by Minors and Unborn Children:

Releasors understand that any minors among the Releasors may have the legal right to disaffirm this contract.  Releasors agree that this release is not intended to expand whatever legal rights a minor may have to disaffirm this release and Releasees reserve the right to challenge any attempted disaffirmance of it.  All Releasors who are not minors agree that this release will remain binding on them even if a minor disaffirms it.

Furthermore, all Releasors who are not minors agree to indemnify Releasees against all liability, including, but not limited to, all attorneys' fees and expenses, resulting from (1) any attempted disaffirmance, whether successful or not, and (2) any claim brought by a Releasor who is now a minor that arises from or is related to any exposure to asbestos experienced by ROLANDO DOVAL.

Releasors also agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim brought by any child now unborn that arises from or is related to any exposure to asbestos experienced by ROLANDO DOVAL

11.   Warranty of Good-Faith Compromise of Disputed Claims:

Releasors warrant and represent the following:

(a)   Releasors agree that this release is a compromise of doubtful and disputed claims, and that payment is not to be construed as an admission of liability.  Releasors also agree that this release shall not be admissible as evidence in any suit of proceeding whatsoever as evidence or admission of any liability.

(b)   Releasors warrant that this release has been entered into in good faith for the purpose of resolving disputed and uncertain claims.

(c)   Releasors warrant that they will use their best efforts to obtain court approval of this release, including a determination that this settlement has been entered into in good faith, and that they will fully cooperate with Releasees and their counsel in their efforts to obtain the determination and an order, in accordance with Section 877.6 of the Code of Civil Procedure dismissing cross-complaints.

12.   Persons Bound:

This release is binding on Releasors, collectively and individually, and on all their heirs, devisees, executors, administrators, personal representatives, and assigns.  Each warranty and each agreement in this release is enforceable against Releasors collectively and each Releasor individually.

13.   Remedies for Breach:

Releasors agree to pay for attorneys' fees, expenses, and costs incurred by Releasees as a result of any proceeding brought or maintained by Releasors or by any Releasor in breach of this release.

14.   Authorization to File Dismissal:

Releasors authorize their counsel to execute a request for dismissal with prejudice of Releasees in the SUPERIOR COURT in SAN FRANCISCO COUNTY, CALIFORNIA - NORTH, DOCKET#: 311206, which is entitled "ROLANDO DOVAL VS RAYBESTOS-MANHATTAN INC ET AL". Releasors authorize counsel for Releasees to file the request for dismissal after Releasees have paid Releasors, or Releasors' counsel as their trustee, the consideration specified in this release. Releasors also agree to dismiss Releasees from all other past or future claims, brought by any of them, that are in any way connected with any exposure to asbestos experienced by ROLANDO DOVAL.

15. **Releasors Warrant That They Have Read This Release:**

RELEASORS HEREBY WARRANT THAT THEY HAVE READ THIS RELEASE IN ITS ENTIRETY, HAVE HAD IT FULLY EXPLAINED TO THEM, AND FULLY UNDERSTAND AND APPRECIATE ITS TERMS AND THEIR CONSEQUENCES.

Releasors understand that this release is a full, complete and final release and that the sum of $335,000.00 is the total amount asbestos experienced by ROLANDO DOVAL.

_____   Dated: _09/29/00_
ROLANDO DOVAL

Subscribed and sworn to before me this _29_ day of _SEPTEMBER_, _2000_

_____
NOTARY PUBLIC

My Commission Expires: _12/15/00_

> Rolando Palou
> Notary Public, State of Florida
> My Comm. Expires Dec 15, 2000
> No. CC607682
> Bonded Thru: Official Notary Service
> 1-(800) 723-0121

_____   Dated: _09/29/00_
CONSUELO DOVAL

Subscribed and sworn to before me this _29_ day of _SEPTEMBER_, _2000_

_____
NOTARY PUBLIC

My Commission Expires: _12/15/00_

> Rolando Palou
> Notary Public, State of Florida
> My Comm. Expires Dec 15, 2000
> No. CC607682
> Bonded Thru: Official Notary Service
> 1-(800) 723-0121

_(signature)_   Dated: _09/29/00_

GILBERT DOVAL

Subscribed and sworn to before me this _29_ day of _SEPTEM bER_, _2000_.

_(signature)_

NOTARY PUBLIC

My Commission Expires: _12/15/00_

Rolando Palou
Notary Public, State of Florida
My Comm. Expires Dec 15, 2000
No. CC607682
Bonded Thru: Official Notary Service
1-(800) 723-0121

_(signature)_   Dated: _09/29/00_

RICHARD ANTHONY DOVAL

Subscribed and sworn to before me this _29_ day of _SEPTEMbER_, _2000_.

_(signature)_

NOTARY PUBLIC

My Commission Expires: _12/15/00_

Rolando Palou
Notary Public, State of Florida
My Comm. Expires Dec 15, 2000
No. CC607682
Bonded Thru: Official Notary Service
1-(800) 723-0121

This release was executed with my approval, and under my direction and advice. Its provisions and their consequences have been fully explained to Releasors.

_(signature)_   Dated: _10/17/00_

WARTNICK, CHABER, HAROWITZ, SMITH & TIGERMAN

7

## ADDENDUM TO PERSONAL INJURY RELEASE
## HOLD HARMLESS AGREEMENT

### (To be used as Missing Heir(s) Provision)

I, ROLANDO DOVAL, recognize that as a part of the settlement of my personal injury case, the Center for Claims Resolution defendants wish to obtain releases and buy their peace with respect to potential claims that could be brought by my estate or my heirs should I die of asbestos related disease.  It is my intention and desire to conclude a settlement in which the Center for Claims Resolution defendants will be released from any personal injury claim and also from any potential claim for wrongful death that might follow.

By this document I do the following:

I, on behalf of myself and my estate, agree to indemnify and hold harmless any Center for Claims Resolution defendants against any claims presented in the future by said potential heirs.  It is my wish and intention that should said heirs present a claim, my estate will upon tender undertake to defend said Center for Claims Resolution defendants against such claim, and should such defense be unsuccessful, indemnify and hold harmless said Center for Claims Resolution defendants against any judgment obtained by said heirs.  I understand that this is a contractual undertaking on my part which is binding upon me and my estate and is given by me in return for fair and valuable consideration to wit, the agreement by Center for Claims Resolution defendants in reliance, in part, upon this document, to pay me funds which I believe to be fair and reasonable in settlement of claims for my personal injury and potential wrongful death.

DATED: _09/29/00_____

SIGNED: _Rolando Doval_____

(Please attach notary's acknowledgement)

CAWCPIFL
September 18, 2000
3:42 PM

State of Florida
County of Dade
on 09-29-00
Before me  Rolando Palo.
Signer   Rolando Dova

Rolando Palou
Notary Public, State of Florida
My Comm. Expires Dec 15, 2000
No. CC607682
Bonded Thru: Official Notary Service
1-(800) 723-0121



8

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):*

TELEPHONE NO.: 415-986-5566

Wartnick, Chaber, Harowitz, Tigerman, et al.
101 California Street, Suite 2200
San Francisco, CA  94111-5802

ATTORNEY FOR *(Name):* PLAINTIFF(S)

Insert name of court and name of judicial district and branch court, if any:
Superior Court of the State of California
City and County of San Francisco

PLAINTIFF/PETITIONER: Rolando Doval, et al.

DEFENDANT/RESPONDENT: RAYBESTOS-MANHATTAN, INC. et.al.

FOR COURT USE ONLY

ENDORSED
F I L E D
*San Francisco County Superior Court*

OCT 2 0 2000

ALAN CARLSON, Clerk
BY: KEVIN R. DOUGHERTY
Deputy Clerk

**REQUEST FOR DISMISSAL**

[X] **Personal Injury, Property Damage, or Wrongful Death**
[ ] **Motor Vehicle**    [ ] **Other**
[ ] **Family Law**
[ ] **Eminent Domain**
[X] **Other** *(specify):* ASBESTOS

CASE NUMBER:
311206

— A conformed copy will not be returned by the clerk unless a method of return is provided with the document. —

1. **TO THE CLERK: Please dismiss this action as follows:**
   a. (1) [X] With prejudice    (2) [ ] Without prejudice
   b. (1) [X] Complaint    (2) [ ] Petition
      (3) [ ] Cross-complaint filed by *(name):*    on *(date):*
      (4) [ ] Cross-complaint filed by *(name):*    on *(date):*
      (5) [ ] Entire action of all parties and all causes of action
      (6) [X] Other *(specify):** As to the defendant(s) on the attached list, only.

Date: October 11, 2000

HARRY F. WARTNICK
(TYPE OR PRINT NAME OF    [ ] ATTORNEY    [ ] PARTY WITHOUT ATTORNEY)

WARTNICK, CHABER, HAROWITZ, et al.
(SIGNATURE)
Attorney or party without attorney for:  PLAINTIFF(S)

* If dismissal requested is of specified parties only, of specified causes of
  action only, or of specified cross-complaints only, so state and identify
  the parties, causes of action, or cross-complaints to be dismissed.

[ ] Plaintiff/Petitioner    [ ] Defendant/Respondent
[ ] Cross-complainant

2. **TO THE CLERK: Consent to the above dismissal is hereby given.****
Date:

(TYPE OR PRINT NAME OF    [ ] ATTORNEY    [ ] PARTY WITHOUT ATTORNEY)
(SIGNATURE)
Attorney or party without attorney for:

** If a cross-complaint - or Response (Family Law) seeking affirmative
   relief - is on file, the attorney for cross-complainant (respondent)
   must sign this consent if required by Code of Civil Procedure section
   581(i) or (j).

[ ] Plaintiff/Petitioner    [ ] Defendant/Respondent
[ ] Cross-complainant

*(To be completed by clerk.)*
3. [ ] Dismissal entered as requested on *(date):*
4. [ ] Dismissal entered on *(date):*    as to only *(name):*
5. [ ] Dismissal not entered as requested for the following reasons *(specify):*

6. [ ] a. Attorney or party without attorney notified on *(date):*
       b. Attorney or party without attorney not notified.  Filing party failed to provide
          [ ] a copy to conform    [ ] means to return conformed copy

Date:

Clerk, by _____, Deputy

Form Adopted by the
Judicial Council of California
982(a)(5) [Rev. January 1, 1997]
Mandatory Form

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.
Cal. Rules of Court, rules 383, 1233

This dismissal applies only to defendant members as follows:

Anchem Products, Inc.; Armstrong World Industries, Inc., formerly known as Armstrong Cork Company; CertainTeed Corporation; C.E. Thurston and Sons, Inc.; Dana Corporation; (Formerly known as Nuturn Corporation); I.U. North America, Inc.; Maremont Corporation; (The Grizzly Manufacturing Company; The Grizzly Division of Maremont Corporation); National Service Industries, Inc.; NOSROC Corp.; Pfizer, Inc.; Quigley Company, Inc.; Shook & Fletcher Insulation Company; T&N plc, formerly known as Turner & Newall PLC, formerly known as Turner & Newall LTD; Turner & Newall Industries; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company.

*DOCKET NO. 875*

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*Jack Givens, et al. v. Witco Corp., Inc., et al.,* E.D. Louisiana, C.A. No. 2:99-2283
*Gary Clark v. CN North America,* E.D. Michigan, C.A. No. 2:99-71140
*David Cosey, et al. v. E.D. Bullard, et al.,* S.D. Mississippi, C.A. No. 1:99-164
*Patricia A. Kelly, et al. v. W.R. Grace & Co.-Conn., et al.,* D. Montana, C.A. No. 9:99-118
*Valorie R. Johnston, et al. v. W.R. Grace & Co.-Conn., et al.,* D. Montana, C.A. No. 9:99-128

## BEFORE JOHN F. NANGLE, CHAIRMAN, WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS,* LOUIS C. BECHTLE* AND JOHN F. KEENAN, JUDGES OF THE PANEL

### TRANSFER ORDER

Before the Panel are motions brought, pursuant to Rule 7.4, R.P.J.P.M.L., 181 F.R.D. 1, 10 (1998), by plaintiffs in the above-captioned Eastern District of Louisiana, Eastern District of Michigan, Southern District of Mississippi and District of Montana actions. All movants request that the Panel vacate the portions of its orders conditionally transferring their respective action to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner.

On the basis of the papers filed and/or the hearing held,[1] the Panel finds that these actions involve common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the actions to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of these actions is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI),* 771 F. Supp. 415 (J.P.M.L. 1991). In particular, we note that in the Panel's original decision distinctions based on such matters as the pendency of motions or other matters before the

---

*Judges Sanders and Bechtle took no part in the decision of this matter with respect to the Southern District of Mississippi action.

[1] The parties to all but the Southern District of Mississippi action waived oral argument and, accordingly, the question of Section 1407 transfer of those actions was submitted on the briefs. Rule 16.2, R.P.J.P.M.L., 181 F.R.D. 1, 14 (1998).

2000260943
CASF



## COMPROMISE AND RELEASE OF ALL CLAIMS
## INCLUDING UNKNOWN AND FUTURE CLAIMS

1. Release of all Personal Injury and Death Claims:

(a) THIS RELEASE EXTINGUISHES ALL CLAIMS FOR ALL INJURIES ARISING FROM OR RELATED TO ANY EXPOSURE TO ASBESTOS EXPERIENCED BY FLOYD ED ROGERS INCLUDING BUT NOT LIMITED TO THOSE INJURIES NOW KNOWN, THOSE NOW EXISTING BUT UNKNOWN, THOSE THAT MANIFEST THEMSELVES IN THE FUTURE, AND THOSE THAT CAUSE HIS/HER DEATH. THIS RELEASE SPECIFICALLY EXTINGUISHES ALL CLAIMS BASED ON ANY CANCER OR MALIGNANCY.

2. Releasors:

(a) Plaintiff: FLOYD ED ROGERS
Social Security Number: 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

(b) Plaintiff's spouse: MARGARET ROGERS
Social Security Number:

(c) Plaintiff's children: DONALD ROGERS and MARY KATHLEEN ROGERS

(d) Plaintiff's heirs, as defined by California Code of Civil Procedure Section 377(b).

3. Releasees:

The Releasees are all subscribers to the Agreement Concerning Asbestos-Related Claims signed October 6, 1988 (The Center for Claims Resolution Agreement), and all of their predecessors and successors, their parent and subsidiary companies and divisions, and their current and former attorneys, liability insurance carriers, to the extent of their liability for Center non-insurance company subscribers only, officers, directors, agents, and employees. The names of the subscribers are set out below:

Manufacturers: Amchem Products, Inc.; Armstrong World Industries, Inc.; C.E. Thurston and Sons, Incorporated; Certain Teed Corporation; Dana Corporation; I.U. North America, Inc.; Maremont Corporation; National Services Industries Inc.; Nosroc Corp.; Pfizer Inc; Quigley Company, Inc.; Shook & Fletcher Insulation Co.; T & N, plc; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company;, Incorporated, and all distributors insofar as the liability of any distributor is predicated upon the distribution of products manufactured by Rhone Poulenc (Tendered To Amc)

4.   Preliminary Facts:

FLOYD ED ROGERS alleges that he has been exposed to asbestos that the asbestos was produced by or came from a product produced by one or more of the Releasees, and that the exposure to asbestos has injured him.

Based on this exposure, FLOYD ED ROGERS has filed suit, or is considering filing suit, for damages arising from his personal injury.

Releasees desire to compromise and obtain a general release of all existing and future claims that could possibly arise from these facts, without admitting liability.

5.   Terms of Settlement:

In consideration of $200,000.00, in total, Releasors release and forever discharge Releasees from any and all claims arising from or related to any exposure to asbestos experienced by FLOYD ED ROGERS.  This release specifically includes, but is not limited to, all wrongful death claims, all loss of consortium claims, and all claims based on presently undiscovered or unmanifested injures (including any cancer and any malignancy) arising from or related to any exposure to asbestos experienced by FLOYD ED ROGERS.

For the purpose of this release, the word "claims" includes all claims, demands, actions, and suits of any kind.  For the purposes of this release, the word "injuries" includes all injuries, illnesses, disabilities, losses, and harms of any kind including but not limited to all emotional injuries.

This release does not cover claims for injuries allegedly suffered by the plaintiff's spouse and children because of their personal exposure to asbestos or property damage claims.

The consideration specified in this release shall be paid in the form of drafts or checks payable to Releasor's counsel as trustee for Releasors.

6.   Unknown Injuries and Potential Wrongful-Death Claims:

Releasors understand that people exposed to asbestos may be subject to an increased risk of contracting cancer, including but not limited to lung cancer and mesothelioma.  Releasors also understand that FLOYD ED ROGERS may have suffered injuries that are as yet unknown to him/her and that unknown complications may arise from conditions of which he/she is not aware.  Nevertheless, Releasors intend to release and forever discharge Releasees from any claim for any injury arising from or related to any exposure to asbestos experienced by FLOYD ED ROGERS, including but not limited

2

to those injuries now known, those now existing but unknown, those that manifest themselves in the future, and those that cause his/her death.

Releasors hereby waive any right or benefit that Releasors may have, now or in the future, under Section 1542 of the Civil Code of the State of California, which reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

### 7. Indemnity Against Claims by Lienholders:

Releasors warrant that they, or some of them are the sole owners of all claims of any kind arising out of the injuries covered in this Release.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim, brought by any holder of a lien or encumbrance, that is related to the injuries covered in this release, other than cross-complaints or cross-actions of co-defendants. This indemnity agreement specifically does not cover cross-complaints or cross-actions of co-defendants.

### 8. Indemnity Against Inaccuracy of Representation:

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting directly or indirectly from any falsity or inaccuracy of any representation made in this release by Releasors.

### 9. Indemnity Against Wrongful-Death Claims:

Releasors warrant and represent that only they, or only some of them, would be legally entitled to bring suit based on an allegedly wrongful death of FLOYD ED ROGERS. Furthermore, they warrant that no wrongful death suit based on any exposure to asbestos experienced by FLOYD ED ROGERS will be brought by anyone against Releasees.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any wrongful death suit, brought by anyone, based on any exposure to asbestos experienced by FLOYD ED ROGERS.

### 10. Indemnity Against Claims by Minors and Unborn Children:

3

Releasors understand that any minors among the Releasors may have the legal right to disaffirm this contract. Releasors agree that this release is not intended to expand whatever legal rights a minor may have to disaffirm this release and Releasees reserve the right to challenge any attempted disaffirmance of it. All Releasors who are not minors agree that this release will remain binding on them even if a minor disaffirms it.

Furthermore, all Releasors who are not minors agree to indemnify Releasees against all liability, including, but not limited to, all attorneys' fees and expenses, resulting from (1) any attempted disaffirmance, whether successful or not, and (2) any claim brought by a Releasor who is now a minor that arises from or is related to any exposure to asbestos experienced by FLOYD ED ROGERS.

Releasors also agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim brought by any child now unborn that arises from or is related to any exposure to asbestos experienced by FLOYD ED ROGERS

11.   Warranty of Good-Faith Compromise of Disputed Claims:

Releasors warrant and represent the following:

(a)   Releasors agree that this release is a compromise of doubtful and disputed claims, and that payment is not to be construed as an admission of liability. Releasors also agree that this release shall not be admissible as evidence in any suit of proceeding whatsoever as evidence or admission of any liability.

(b)   Releasors warrant that this release has been entered into in good faith for the purpose of resolving disputed and uncertain claims.

(c)   Releasors warrant that they will use their best efforts to obtain court approval of this release, including a determination that this settlement has been entered into in good faith, and that they will fully cooperate with Releasees and their counsel in their efforts to obtain the determination and an order, in accordance with Section 877.6 of the Code of Civil Procedure dismissing cross- complaints.

12.   Persons Bound:

This release is binding on Releasors, collectively and individually, and on all their heirs, devisees, executors, administrators, personal representatives, and assigns. Each warranty and each agreement in this release is enforceable against Releasors collectively and each Releasor individually.

13.   Remedies for Breach:

4

Releasors agree to pay for attorneys' fees, expenses, and costs incurred by Releasees as a result of any proceeding brought or maintained by Releasors or by any Releasor in breach of this release.

14.  Authorization to File Dismissal:

Releasors authorize their counsel to execute a request for dismissal with prejudice of Releasees in the SUPERIOR COURT in SAN FRANCISCO COUNTY, CALIFORNIA - NORTH, DOCKET#: 310210, which is entitled "FLOYD ED ROGERS V RAYBESTOS-MANHATTAN ET AL". Releasors authorize counsel for Releasees to file the request for dismissal after Releasees have paid Releasors, or Releasors' counsel as their trustee, the consideration specified in this release. Releasors also agree to dismiss Releasees from all other past or future claims, brought by any of them, that are in any way connected with any exposure to asbestos experienced by FLOYD ED ROGERS.

15. **Releasors Warrant That They Have Read This Release:**

RELEASORS HEREBY WARRANT THAT THEY HAVE READ THIS RELEASE IN ITS ENTIRETY, HAVE HAD IT FULLY EXPLAINED TO THEM, AND FULLY UNDERSTAND AND APPRECIATE ITS TERMS AND THEIR CONSEQUENCES.

Releasors understand that this release is a full, complete and final release and that the sum of $200,000.00 is the total amount asbestos experienced by FLOYD ED ROGERS.

Floyd Ed Rogers                    Dated: 9-25-2000
FLOYD ED ROGERS

Subscribed and sworn to before me this 25 day of Sept. , 2000.

Mary de Jesus Guerrero
NOTARY PUBLIC

```
MARY DE JESUS GUERRERO
Commission # 1126829
Notary Public — California
Tulare County
My Comm. Expires Feb 9, 2001
```

My Commission Expires: 2-9-2001

Margaret Rogers                    Dated: 9-25-00
MARGARET ROGERS

Subscribed and sworn to before me this 25 day of Sept. , 2000

Mary de Jesus Guerrero
NOTARY PUBLIC

```
MARY DE JESUS GUERRERO
Commission # 1126829
Notary Public — California
Tulare County
My Comm. Expires Feb 9, 2001
```

My Commission Expires: 2-9-2001

6

_____        Dated:_____

DONALD ROGERS

Subscribed and sworn to before me this _____ day of _____, _____.

_____

NOTARY PUBLIC

My Commission Expires:_____

*Mary Kathleen Rogers*        Dated: _9/28/00_

MARY KATHLEEN ROGERS

Subscribed and sworn to before me this 28th day of _September_, 2000

*Eva Guralny*
NOTARY PUBLIC

> EVA GURALNY
> Notary Public - Nevada
> No. 99-36043-1
> My appt. exp. Jan. 28, 2003

My Commission Expires:_____

        This release was executed with my approval, and under my direction and advice. Its provisions and their consequences have been fully explained to Releasors.

_____        Dated: _10-17-00_

WARTNICK, CHABER,
HAROWITZ, SMITH & TIGERMAN

_____  Dated: _Oct. 3 / 2000_____
DONALD ROGERS

Subscribed and sworn to before me this 3rd day of _October, 2000_

_____
NOTARY PUBLIC

My Commission Expires: _July 18, 2002_

_____  Dated: _____
MARY KATHLEEN ROGERS

Subscribed and sworn to before me this _____ day of _____, _____.

_____
NOTARY PUBLIC

My Commission Expires: _____

This release was executed with my approval, and under my direction and advice. Its provisions and their consequences have been fully explained to Releasors.

_____  Dated: _10-17-00_____
WARTNICK, CHABER,
HAROWITZ, SMITH & TIGERMAN

## ADDENDUM TO PERSONAL INJURY RELEASE
## HOLD HARMLESS AGREEMENT

### (To be used as Missing Heir(s) Provision)

I, FLOYD ED ROGERS, recognize that as a part of the settlement of my personal injury case, the Center for Claims Resolution defendants wish to obtain releases and buy their peace with respect to potential claims that could be brought by my estate or my heirs should I die of asbestos related disease. It is my intention and desire to conclude a settlement in which the Center for Claims Resolution defendants will be released from any personal injury claim and also from any potential claim for wrongful death that might follow.

By this document I do the following:

I, on behalf of myself and my estate, agree to indemnify and hold harmless any Center for Claims Resolution defendants against any claims presented in the future by said potential heirs. It is my wish and intention that should said heirs present a claim, my estate will upon tender undertake to defend said Center for Claims Resolution defendants against such claim, and should such defense be unsuccessful, indemnify and hold harmless said Center for Claims Resolution defendants against any judgment obtained by said heirs. I understand that this is a contractual undertaking on my part which is binding upon me and my estate and is given by me in return for fair and valuable consideration to wit, the agreement by Center for Claims Resolution defendants in reliance, in part, upon this document, to pay me funds which I believe to be fair and reasonable in settlement of claims for my personal injury and potential wrongful death.

DATED: _9 - 25 - 2000_____

SIGNED: _Floyd Ed Rogers_____

(Please attach notary's acknowledgement)

MARY DE JESUS GUERRERO
Commission # 1126629
Notary Public — California
Tulare County
My Comm. Expires Feb 9, 2001

_Mary de Jesus Guerrero_
_9-25-2000_

CAWCPIFL
September 18, 2000
3:42 PM

8

## NOTARY ACKNOWLEDGEMENT

State of **CALIFORNIA**

County of **TULARE**

On **9-25-2000**, before me **MARY DE JESUS GUERRERO**
*Notary Public*

personally appeared **FLOYD EDWARD ROGERS**
*Name(s) of Signer(s)*

        **X**   personally known to me

        **X**   proved to me on the basis of
            satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s), or the entity upon behalf
of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*Mary de Jesus Guerrero*
        *signature of notary public*

MARY DE JESUS GUERRERO
Commission # 1126629
Notary Public — California
Tulare County
My Comm. Expires Feb 9, 2001

• place notary seal above •

8

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address):

TELEPHONE NO.:
415-986-5566

Wartnick, Chaber, Harowitz, Tigerman, et al.
101 California Street, Suite 2200
San Francisco, CA  94111-5802

ATTORNEY FOR (Name):   PLAINTIFF(S)

Insert name of court and name of judicial district and branch court, if any:

Superior Court of the State of California
City and County of San Francisco

PLAINTIFF/PETITIONER: Floyd Rogers, et al.

DEFENDANT/RESPONDENT: RAYBESTOS-MANHATTAN, INC. et.al.

FOR COURT USE ONLY

ENDORSED
F I L E D
San Francisco County Superior Court

OCT 2 0 2000

ALAN CARLSON, Clerk
BY: _____ KEVIN B. Reilly _____
Deputy Clerk

## REQUEST FOR DISMISSAL

[X] Personal Injury, Property Damage, or Wrongful Death
    [ ] Motor Vehicle   [ ] Other
[ ] Family Law
[ ] Eminent Domain
[X] Other (specify): ASBESTOS

CASE NUMBER:
310210

— A conformed copy will not be returned by the clerk unless a method of return is provided with the document. —

1. TO THE CLERK: Please dismiss this action as follows:
  a. (1) [X] With prejudice   (2) [ ] Without prejudice
  b. (1) [X] Complaint   (2) [ ] Petition
    (3) [ ] Cross-complaint filed by (name):        on (date):
    (4) [ ] Cross-complaint filed by (name):        on (date):
    (5) [ ] Entire action of all parties and all causes of action
    (6) [X] Other (specify):* As to the defendant(s) on the attached list, only.

Date: October 13, 2000

HARRY F. WARTNICK

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

WARTNICK, CHABER, HAROWITZ, et al.

(SIGNATURE)

Attorney or party without attorney for:   PLAINTIFF(S)

* If dismissal requested is of specified parties only, of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

[ ] Plaintiff/Petitioner   [ ] Defendant/Respondent
[ ] Cross-complainant

2. TO THE CLERK: Consent to the above dismissal is hereby given.**

Date:

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

(SIGNATURE)

Attorney or party without attorney for:

** If a cross-complaint - or Response (Family Law) seeking affirmative relief - is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581(i) or (j).

[ ] Plaintiff/Petitioner   [ ] Defendant/Respondent
[ ] Cross-complainant

(To be completed by clerk)
3. [ ] Dismissal entered as requested on (date):
4. [ ] Dismissal entered on (date):   as to only (name):
5. [ ] Dismissal not entered as requested for the following reasons (specify):

6. [ ] a. Attorney or party without attorney notified on (date):
    b. Attorney or party without attorney not notified. Filing party failed to provide
      [ ] a copy to conform   [ ] means to return conformed copy

Date: _____            Clerk, by _____ , Deputy

Form Adopted by the
Judicial Council of California
982(a)(5) [Rev. January 1, 1997]
Mandatory Form

REQUEST FOR DISMISSAL

LEGAL SOLUTIONS

Code of Civil Procedure, § 581 et seq.
Cal. Rules of Court, rules 383, 1233

This dismissal applies only to defendant members as follows:

Anchem Products, Inc.; Armstrong World Industries, Inc., formerly known as Armstrong Cork Company; CertainTeed Corporation; C.E. Thurston and Sons, Inc.; Dana Corporation; (Formerly known as Nuturn Corporation); I.U. North America, Inc.; Maremont Corporation; (The Grizzly Manufacturing Company; The Grizzly Division of Maremont Corporation); National Service Industries, Inc.; NOSROC Corp.; Pfizer, Inc.; Quigley Company, Inc.; Shook & Fletcher Insulation Company; T&N plc, formerly known as Turner & Newall PLC, formerly known as Turner & Newall LTD; Turner & Newall Industries; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company.

2000262081
CASF



## COMPROMISE AND RELEASE OF ALL CLAIMS
## INCLUDING UNKNOWN AND FUTURE CLAIMS

1.  Release of all Personal Injury and Death Claims:

(a)  THIS RELEASE EXTINGUISHES ALL CLAIMS FOR ALL INJURIES ARISING FROM OR RELATED TO ANY EXPOSURE TO ASBESTOS EXPERIENCED BY HERBERT GROSSICH INCLUDING BUT NOT LIMITED TO THOSE INJURIES NOW KNOWN, THOSE NOW EXISTING BUT UNKNOWN, THOSE THAT MANIFEST THEMSELVES IN THE FUTURE, AND THOSE THAT CAUSE HIS/HER DEATH. THIS RELEASE SPECIFICALLY EXTINGUISHES ALL CLAIMS BASED ON ANY CANCER OR MALIGNANCY.

2.  Releasors:

(a)  Plaintiff: HERBERT GROSSICH
     Social Security Number: 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

(b)  Plaintiff's spouse: ELAINE GROSSICH
     Social Security Number:

(c)  Plaintiff's children: ANGELINE GIBALA, SUSAN GROSSICH, NANCY LANG, SHARON BREMER and HERBERT GROSSICH

(d)  Plaintiff's heirs, as defined by California Code of Civil Procedure Section 377(b).

3.  Releasees:

The Releasees are all subscribers to the Agreement Concerning Asbestos-Related Claims signed October 6, 1988 (The Center for Claims Resolution Agreement), and all of their predecessors and successors, their parent and subsidiary companies and divisions, and their current and former attorneys, liability insurance carriers, to the extent of their liability for Center non-insurance company subscribers only, officers, directors, agents, and employees. The names of the subscribers are set out below:

Manufacturers: Amchem Products, Inc.; Armstrong World Industries, Inc.; C.E. Thurston and Sons, Incorporated; Certain Teed Corporation; Dana Corporation; I.., North America, Inc.; Maremont Corporation; National Services Industries Inc.; Nosroc Corp.; Pfizer Inc; Quigley Company, Inc.; Shook & Fletcher Insulation Co.; T & N, plc; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company;, Incorporated, and all distributors insofar as the liability

of any distributor is predicated upon the distribution of products manufactured by Rhone Poulenc (Tendered To Amc)

4.  Preliminary Facts:

HERBERT GROSSICH alleges that he has been exposed to asbestos that the asbestos was produced by or came from a product produced by one or more of the Releasees, and that the exposure to asbestos has injured him.

Based on this exposure, HERBERT GROSSICH has filed suit, or is considering filing suit, for damages arising from his personal injury.

Releasees desire to compromise and obtain a general release of all existing and future claims that could possibly arise from these facts, without admitting liability.

5.  Terms of Settlement:

In consideration of $300,000.00, in total, Releasors release and forever discharge Releasees from any and all claims arising from or related to any exposure to asbestos experienced by HERBERT GROSSICH.  This release specifically includes, but is not limited to, all wrongful death claims, all loss of consortium claims, and all claims based on presently undiscovered or unmanifested injures (including any cancer and any malignancy) arising from or related to any exposure to asbestos experienced by HERBERT GROSSICH.

For the purpose of this release, the word "claims" includes all claims, demands, actions, and suits of any kind.  For the purposes of this release, the word "injuries" includes all injuries, illnesses, disabilities, losses, and harms of any kind including but not limited to all emotional injuries.

This release does not cover claims for injuries allegedly suffered by the plaintiff's spouse and children because of their personal exposure to asbestos or property damage claims.

The consideration specified in this release shall be paid in the form of drafts or checks payable to Releasor's counsel as trustee for Releasors.

6.  Unknown Injuries and Potential Wrongful-Death Claims:

Releasors understand that people exposed to asbestos may be still increased risk of contracting cancer, including but not limited to lung cancer and mesothelioma.  Releasors also understand that HERBERT GROSSICH may have suffered injuries that are as yet unknown to him/her and that unknown complications may arise from conditions of which he/she is not aware.  Nevertheless, Releasors intend release and forever discharge Releasees from any claim for any injury arising from or

related to any exposure to asbestos experienced by HERBERT GROSSICH, including but not limited to those injuries now known, those now existing but unknown, those that manifest themselves in the future, and those that cause his/her death.

Releasors hereby waive any right or benefit that Releasors may have, now or in the future, under Section 1542 of the Civil Code of the State of California, which reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

7.  Indemnity Against Claims by Lienholders:

Releasors warrant that they, or some of them are the sole owners of all claims of any kind arising out of the injuries covered in this Release.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim, brought by any holder of a lien or encumbrance, that is related to the injuries covered in this release, other than cross-complaints or cross-actions of co-defendants.    This indemnity agreement specifically does not cover cross-complaints or cross-actions of co-defendants.

8.  Indemnity Against Inaccuracy of Representation:

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting directly or indirectly from any falsity or inaccuracy of any representation made in this release by Releasors.

9.  Indemnity Against Wrongful-Death Claims:

Releasors warrant and represent that only they, or only some of them, would be legally entitled to bring suit based on an allegedly wrongful death of HERBERT GROSSICH.  Furthermore, they warrant that no wrongful death suit based on any exposure to asbestos experienced by HERBERT GROSSICH will be brought by anyone against Releasees.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any wrongful death suit, brought by anyone, based on any exposure to asbestos experienced by HERBERT GROSSICH.

10.  Indemnity Against Claims by Minors and Unborn Children:

Releasors understand that any minors among the Releasors may have the legal right to disaffirm this contract. Releasors agree that this release is not intended to expand whatever legal rights a minor may have to disaffirm this release and Releasees reserve the right to challenge any attempted disaffirmance of it. All Releasors who are not minors agree that this release will remain binding on them even if a minor disaffirms it.

Furthermore, all Releasors who are not minors agree to indemnify Releasees against all liability, including, but not limited to, all attorneys' fees and expenses, resulting from (1) any attempted disaffirmance, whether successful or not, and (2) any claim brought by a Releasor who is now a minor that arises from or is related to any exposure to asbestos experienced by HERBERT GROSSICH.

Releasors also agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim brought by any child now unborn that arises from or is related to any exposure to asbestos experienced by HERBERT GROSSICH

11.   Warranty of Good-Faith Compromise of Disputed Claims:

Releasors warrant and represent the following:

(a)   Releasors agree that this release is a compromise of doubtful and disputed claims, and that payment is not to be construed as an admission of liability. Releasors also agree that this release shall not be admissible as evidence in any suit of proceeding whatsoever as evidence or admission of any liability.

(b)   Releasors warrant that this release has been entered into in good faith for the purpose of resolving disputed and uncertain claims.

(c)   Releasors warrant that they will use their best efforts to obtain court approval of this release, including a determination that this settlement has been entered into in good faith, and that they will fully cooperate with Releasees and their counsel in their efforts to obtain the determination and an order, in accordance with Section 877.6 of the Code of Civil Procedure dismissing cross- complaints.

12.   Persons Bound:

This release is binding on Releasors, collectively and individually, and on all their heirs, devisees, executors, administrators, personal representatives, and assigns. Each warranty and each agreement in this release is enforceable against Releasors collectively and each Releasor individually.

13.   Remedies for Breach:

Releasors agree to pay for attorneys' fees, expenses, and costs incurred by Releasees as a result of any proceeding brought or maintained by Releasors or by any Releasor in breach of this release.

14. Authorization to File Dismissal:

Releasors authorize their counsel to execute a request for dismissal with prejudice of Releasees in the SUPERIOR COURT in SAN FRANCISCO COUNTY, CALIFORNIA - NORTH, DOCKET#: 310196, which is entitled "HERBERT GROSSICH VS RAYBESTOS-MANHATTAN INC ET AL". Releasors authorize counsel for Releasees to file the request for dismissal after Releasees have paid Releasors, or Releasors' counsel as their trustee, the consideration specified in this release. Releasors also agree to dismiss Releasees from all other past or future claims, brought by any of them, that are in any way connected with any exposure to asbestos experienced by HERBERT GROSSICH.

5

15.  **Releasors Warrant That They Have Read This Release:**

RELEASORS HEREBY WARRANT THAT THEY HAVE READ THIS RELEASE IN ITS ENTIRETY, HAVE HAD IT FULLY EXPLAINED TO THEM, AND FULLY UNDERSTAND AND APPRECIATE ITS TERMS AND THEIR CONSEQUENCES.

Releasors understand that this release is a full, complete and final release and that the sum of $300,000.00 is the total amount asbestos experienced by HERBERT GROSSICH.

_Herbert Grossich_                    Dated: _Sept. 26, 2000_
HERBERT GROSSICH

Subscribed and sworn to before me this _26_ day of _September_, _2000_.

_Brenda Irene Buske_
NOTARY PUBLIC

> "OFFICIAL SEAL"
> Brenda Irene Buske
> Notary Public, State of Illinois
> My Commission Exp. 12/27/2002

My Commission Expires: _12/27/2002_

_Held w. Gill_
_(Power of Attorney)_          Dated: _Sept. 26, 2000_
ELAINE GROSSICH

Subscribed and sworn to before me this _26_ day of _September_, _2000_.

_Brenda Irene Buske_
NOTARY PUBLIC

> "OFFICIAL SEAL"
> Brenda Irene Buske
> Notary Public, State of Illinois
> My Commission Exp. 12/27/2002

My Commission Expires: _12/27/2002_

Dated: _10-17-00_

WARTNICK, CHABER,
HAROWITZ, & TIGERMAN

6

## ADDENDUM TO PERSONAL INJURY RELEASE
## HOLD HARMLESS AGREEMENT

### (To be used as Missing Heir(s) Provision)

I, HERBERT GROSSICH, recognize that as a part of the settlement of my personal injury case, the Center for Claims Resolution defendants wish to obtain releases and buy their peace with respect to potential claims that could be brought by my estate or my heirs should I die of asbestos related disease. It is my intention and desire to conclude a settlement in which the Center for Claims Resolution defendants will be released from any personal injury claim and also from any potential claim for wrongful death that might follow.

By this document I do the following:

I, on behalf of myself and my estate, agree to indemnify and hold harmless any Center for Claims Resolution defendants against any claims presented in the future by said potential heirs. It is my wish and intention that should said heirs present a claim, my estate will upon tender undertake to defend said Center for Claims Resolution defendants against such claim, and should such defense be unsuccessful, indemnify and hold harmless said Center for Claims Resolution defendants against any judgment obtained by said heirs. I understand that this is a contractual undertaking on my part which is binding upon me and my estate and is given by me in return for fair and valuable consideration to wit, the agreement by Center for Claims Resolution defendants in reliance, in part, upon this document, to pay me funds which I believe to be fair and reasonable in settlement of claims for my personal injury and potential wrongful death.

DATED: _Sept. 26 2000_

SIGNED: _Herbert Grossich_

(Please attach notary's acknowledgement)

"OFFICIAL SEAL"
Brenda Irene Buske
Notary Public, State of Illinois
My Commission Exp. 12/27/2002

CAWCPIFL
September 18, 2000
3:42 PM

State of IL
County of Cook

9

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address):

TELEPHONE NO.: 415-986-5566

Wartnick, Chaber, Harowitz, Tigerman, et al.
101 California Street, Suite 2200
San Francisco, CA 94111-5802

ATTORNEY FOR (Name): PLAINTIFF(S)

Insert name of court and name of judicial district and branch court, if any:
Superior Court of the State of California
City and County of San Francisco

PLAINTIFF/PETITIONER: Herbert Grossich, et al.

DEFENDANT/RESPONDENT: RAYBESTOS-MANHATTAN, INC. et.al.

FOR COURT USE ONLY

ENDORSED
F I L E D
San Francisco County Superior Court

OCT 2 0 2000

ALAN CARLSON, Clerk
BY: KEVIN R. DOUGHERTY
Deputy Clerk

**REQUEST FOR DISMISSAL**

[X] Personal Injury, Property Damage, or Wrongful Death
  [ ] Motor Vehicle   [ ] Other
[ ] Family Law
[ ] Eminent Domain
[X] Other (specify): ASBESTOS

CASE NUMBER: 310196

— A conformed copy will not be returned by the clerk unless a method of return is provided with the document. —

1. TO THE CLERK: Please dismiss this action as follows:

a. (1) [X] With prejudice   (2) [ ] Without prejudice

b. (1) [X] Complaint   (2) [ ] Petition
  (3) [ ] Cross-complaint filed by (name):   on (date):
  (4) [ ] Cross-complaint filed by (name):   on (date):
  (5) [ ] Entire action of all parties and all causes of action
  (6) [X] Other (specify):* As to the defendant(s) on the attached list, only.

Date: October 13, 2000   WARTNICK, CHABER, HAROWITZ, et al.

HARRY F. WARTNICK
(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

(SIGNATURE)
Attorney or party without attorney for: PLAINTIFF(S)

* If dismissal requested is of specified parties only, of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

[ ] Plaintiff/Petitioner   [ ] Defendant/Respondent
[ ] Cross-complainant

2. TO THE CLERK: Consent to the above dismissal is hereby given.**
Date:

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

(SIGNATURE)
Attorney or party without attorney for:

** If a cross-complaint - or Response (Family Law) seeking affirmative relief - is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581(i) or (j).

[ ] Plaintiff/Petitioner   [ ] Defendant/Respondent
[ ] Cross-complainant

(To be completed by clerk)
3. [ ] Dismissal entered as requested on (date):
4. [ ] Dismissal entered on (date):   as to only (name):
5. [ ] Dismissal not entered as requested for the following reasons (specify):

6. [ ] a. Attorney or party without attorney notified on (date):
   b. Attorney or party without attorney not notified. Filing party failed to provide
      [ ] a copy to conform   [ ] means to return conformed copy

Date:   Clerk, by _____, Deputy

Form Adopted by the
Judicial Council of California
982(a)(5) (Rev. January 1, 1997)
Mandatory Form

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.
Cal. Rules of Court, rules 383, 1233

This dismissal applies only to defendant members as follows:

Anchem Products, Inc.; Armstrong World Industries, Inc., formerly known as Armstrong Cork Company; CertainTeed Corporation; C.E. Thurston and Sons, Inc.; Dana Corporation; (Formerly known as Nuturn Corporation); I.U. North America, Inc.; Maremont Corporation; (The Grizzly Manufacturing Company; The Grizzly Division of Maremont Corporation); National Service Industries, Inc.; NOSROC Corp.; Pfizer, Inc.; Quigley Company, Inc.; Shook & Fletcher Insulation Company; T&N plc, formerly known as Turner & Newall PLC, formerly known as Turner & Newall LTD; Turner & Newall Industries; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company.

1999247869
CASF



## COMPROMISE AND RELEASE OF ALL CLAIMS
## INCLUDING UNKNOWN AND FUTURE CLAIMS

1. Release of all Personal Injury and Death Claims:

(a)  THIS RELEASE EXTINGUISHES ALL CLAIMS FOR ALL INJURIES ARISING FROM OR RELATED TO ANY EXPOSURE TO ASBESTOS EXPERIENCED BY DALL DAVID DEWEESE INCLUDING BUT NOT LIMITED TO THOSE INJURIES NOW KNOWN, THOSE NOW EXISTING BUT UNKNOWN, THOSE THAT MANIFEST THEMSELVES IN THE FUTURE, AND THOSE THAT CAUSE HIS/HER DEATH.  THIS RELEASE SPECIFICALLY EXTINGUISHES ALL CLAIMS BASED ON ANY CANCER OR MALIGNANCY.

2. Releasors:

(a)  Plaintiff:  DALL DAVID DEWEESE
      Social Security Number:  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

(b)  Plaintiff's spouse:  TOMIANNE WILEY
      Social Security Number:

(c)  Plaintiff's children:  WILEY DALLAS DEWEESE

(d)  Plaintiff's heirs, as defined by California Code of Civil Procedure Section 377(b).

3. Releasees:

The Releasees are all subscribers to the Agreement Concerning Asbestos-Related Claims signed October 6, 1988 (The Center for Claims Resolution Agreement), and all of their predecessors and successors, their parent and subsidiary companies and divisions, and their current and former attorneys, liability insurance carriers, to the extent of their liability for Center non-insurance company subscribers only, officers, directors, agents, and employees.  The names of the subscribers are set out below:

Manufacturers: Amchem Products, Inc.; Armstrong World Industries, Inc.; C.E. Thurston and Sons, Incorporated; Certain Teed Corporation; Dana Corporation; I.U. North America, Inc.; Maremont Corporation; National Services Industries Inc.; Nosroc Corp.; Pfizer Inc; Quigley Company, Inc.; Shook & Fletcher Insulation Co.; T & N, plc; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company;, Incorporated, and all distributors insofar as the liability of any distributor is predicated upon the distribution of products manufactured by Rhone Poulenc (Tendered To Amc)

4.  Preliminary Facts:

DALL DAVID DEWEESE alleges that he has been exposed to asbestos that the asbestos was produced by or came from a product produced by one or more of the Releasees, and that the exposure to asbestos has injured him.

Based on this exposure, DALL DAVID DEWEESE has filed suit, or is considering filing suit, for damages arising from his personal injury.

Releasees desire to compromise and obtain a general release of all existing and future claims that could possibly arise from these facts, without admitting liability.

5.  Terms of Settlement:

In consideration of $135,000.00, in total, Releasors release and forever discharge Releasees from any and all claims arising from or related to any exposure to asbestos experienced by DALL DAVID DEWEESE. This release specifically includes, but is not limited to, all wrongful death claims, all loss of consortium claims, and all claims based on presently undiscovered or unmanifested injures (including any cancer and any malignancy) arising from or related to any exposure to asbestos experienced by DALL DAVID DEWEESE.

For the purpose of this release, the word "claims" includes all claims, demands, actions, and suits of any kind. For the purposes of this release, the word "injuries" includes all injuries, illnesses, disabilities, losses, and harms of any kind including but not limited to all emotional injuries.

This release does not cover claims for injuries allegedly suffered by the plaintiff's spouse and children because of their personal exposure to asbestos or property damage claims.

The consideration specified in this release shall be paid in the form of drafts or checks payable to Releasor's counsel as trustee for Releasors.

6.  Unknown Injuries and Potential Wrongful-Death Claims:

Releasors understand that people exposed to asbestos may be subject to an increased risk of contracting cancer, including but not limited to lung cancer and mesothelioma. Releasors also understand that DALL DAVID DEWEESE may have suffered injuries that are as yet unknown to him/her and that unknown complications may arise from conditions of which he/she is not aware. Nevertheless, Releasors intend to release and forever discharge Releasees from any claim for any injury arising from or related to any exposure to asbestos experienced by DALL DAVID DEWEESE, including

2

but not limited to those injuries now known, those now existing but unknown, those that manifest themselves in the future, and those that cause his/her death.

Releasors hereby waive any right or benefit that Releasors may have, now or in the future, under Section 1542 of the Civil Code of the State of California, which reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

7.   Indemnity Against Claims by Lienholders:

Releasors warrant that they, or some of them are the sole owners of all claims of any kind arising out of the injuries covered in this Release.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim, brought by any holder of a lien or encumbrance, that is related to the injuries covered in this release, other than cross-complaints or cross-actions of co-defendants.   This indemnity agreement specifically does not cover cross-complaints or cross-actions of co-defendants.

8.   Indemnity Against Inaccuracy of Representation:

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting directly or indirectly from any falsity or inaccuracy of any representation made in this release by Releasors.

9.   Indemnity Against Wrongful-Death Claims:

Releasors warrant and represent that only they, or only some of them, would be legally entitled to bring suit based on an allegedly wrongful death of DALL DAVID DEWEESE.   Furthermore, they warrant that no wrongful death suit based on any exposure to asbestos experienced by DALL DAVID DEWEESE will be brought by anyone against Releasees.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any wrongful death suit, brought by anyone, based on any exposure to asbestos experienced by DALL DAVID DEWEESE.

10.   Indemnity Against Claims by Minors and Unborn Children:

Releasors understand that any minors among the Releasors may have the legal right to disaffirm this contract. Releasors agree that this release is not intended to expand whatever legal rights a minor may have to disaffirm this release and Releasees reserve the right to challenge any attempted disaffirmance of it. All Releasors who are not minors agree that this release will remain binding on them even if a minor disaffirms it.

Furthermore, all Releasors who are not minors agree to indemnify Releasees against all liability, including, but not limited to, all attorneys' fees and expenses, resulting from (1) any attempted disaffirmance, whether successful or not, and (2) any claim brought by a Releasor who is now a minor that arises from or is related to any exposure to asbestos experienced by DALL DAVID DEWEESE.

Releasors also agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim brought by any child now unborn that arises from or is related to any exposure to asbestos experienced by DALL DAVID DEWEESE

11.   Warranty of Good-Faith Compromise of Disputed Claims:

Releasors warrant and represent the following:

(a)   Releasors agree that this release is a compromise of doubtful and disputed claims, and that payment is not to be construed as an admission of liability. Releasors also agree that this release shall not be admissible as evidence in any suit of proceeding whatsoever as evidence or admission of any liability.

(b)   Releasors warrant that this release has been entered into in good faith for the purpose of resolving disputed and uncertain claims.

(c)   Releasors warrant that they will use their best efforts to obtain court approval of this release, including a determination that this settlement has been entered into in good faith, and that they will fully cooperate with Releasees and their counsel in their efforts to obtain the determination and an order, in accordance with Section 877.6 of the Code of Civil Procedure dismissing cross- complaints.

12.   Persons Bound:

This release is binding on Releasors, collectively and individually, and on all their heirs, devisees, executors, administrators, personal representatives, and assigns. Each warranty and each agreement in this release is enforceable against Releasors collectively and each Releasor individually.

13.   Remedies for Breach:

4

Releaso·s agree to pay for attorneys' fees, expenses, and costs incurred by Releasees as a result of any proceeding brought or maintained by Releasors or by any Releasor in breach of this release.

14. Authorization to File Dismissal:

Releasors authorize their counsel to execute a request for dismissal with prejudice of Releasees in the SUPERIOR COURT in SAN FRANCISCO COUNTY, CALIFORNIA - NORTH, DOCKET#: 307382, which is entitled "DALL DAVID DEWEESE V RAYBESTOS-MANHATTAN ET AL". Releasors authorize counsel for Releasees to file the request for dismissal after Releasees have paid Releasors, or Releasors' counsel as their trustee, the consideration specified in this release. Releasors also agree to dismiss Releasees from all other past or future claims, brought by any of them, that are in any way connected with any exposure to asbestos experienced by DALL DAVID DEWEESE.

15. **Releasors Warrant That They Have Read This Release:**

RELEASORS HEREBY WARRANT THAT THEY HAVE READ THIS RELEASE IN ITS ENTIRETY, HAVE HAD IT FULLY EXPLAINED TO THEM, AND FULLY UNDERSTAND AND APPRECIATE ITS TERMS AND THEIR CONSEQUENCES.

Releasors understand that this release is a full, complete and final release and that the sum of $135,000.00 is the total amount asbestos experienced by DALL DAVID DEWEESE.

_____ Dated: 9-27-00 _____
DALL DAVID DEWEESE


Subscribed and sworn to before me this 27 day of September, 2000

_____
NOTARY PUBLIC

NIKKI G. SULLIVAN
COMM. # 1201314
NOTARY PUBLIC-CALIFORNIA
City & County of San Francisco
COMM. EXP. DEC. 9, 2002

My Commission Expires: Dec. 9, 2002 _____

6

_Tomianne Wiley_                    Dated: _9-27-00_
TOMIANNE WILEY

Subscribed and sworn to before me this _27_ day of _September 2000_

_Nikki G. Sullivan_
NOTARY PUBLIC

NIKKI G. SULLIVAN
COMM. # 1201314
NOTARY PUBLIC-CALIFORNIA
City & County of San Francisco
COMM. EXP. DEC. 9, 2002

My Commission Expires: _Dec. 9, 2002_

---

    This release was executed with my approval, and under my direction and advice. Its provisions and their consequences have been fully explained to Releasors.

_[signature]_                    Dated: _10/6/00_
WARTNICK, CHABER,
HAROWITZ, SMITH & TIGERMAN

7

## ADDENDUM TO PERSONAL INJURY RELEASE
## HOLD HARMLESS AGREEMENT

### (To be used as Missing Heir(s) Provision)

I, DALL DAVID DEWEESE, recognize that as a part of the settlement of my personal injury case, the Center for Claims Resolution defendants wish to obtain releases and buy their peace with respect to potential claims that could be brought by my estate or my heirs should I die of asbestos related disease. It is my intention and desire to conclude a settlement in which the Center for Claims Resolution defendants will be released from any personal injury claim and also from any potential claim for wrongful death that might follow.

By this document I do the following:

I, on behalf of myself and my estate, agree to indemnify and hold harmless any Center for Claims Resolution defendants against any claims presented in the future by said potential heirs. It is my wish and intention that should said heirs present a claim, my estate will upon tender undertake to defend said Center for Claims Resolution defendants against such claim, and should such defense be unsuccessful, indemnify and hold harmless said Center for Claims Resolution defendants against any judgment obtained by said heirs. I understand that this is a contractual undertaking on my part which is binding upon me and my estate and is given by me in return for fair and valuable consideration to wit, the agreement by Center for Claims Resolution defendants in reliance, in part, upon this document, to pay me funds which I believe to be fair and reasonable in settlement of claims for my personal injury and potential wrongful death.

DATED: _9-27-00_____

SIGNED: X _[signature]_____

(Please attach notary's acknowledgement)

CAWCPIFL
September 18, 2000
3:42 PM

8

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address):

TELEPHONE NO.:
415-986-5566

Wartnick, Chaber, Harowitz, Tigerman, et al.
101 California Street, Suite 2200
San Francisco, CA  94111-5802

ATTORNEY FOR (Name):   PLAINTIFF(S)

Insert name of court and name of judicial district and branch court, if any:

Superior Court of the State of California
City and County of San Francisco

PLAINTIFF/PETITIONER: Dall D. DeWeese, et al.

DEFENDANT/RESPONDENT: RAYBESTOS-MANHATTAN, INC. et.al.

**FOR COURT USE ONLY**

ENDORSED
F I L E D
San Francisco County Superior Court

OCT 1 0 2000

GORDON PARK-LI, Clerk
BY:   MANUELITA ECHEVERRIA
Deputy Clerk

**REQUEST FOR DISMISSAL**

[X] Personal Injury, Property Damage, or Wrongful Death
[ ] Motor Vehicle    [ ] Other
[ ] Family Law
[ ] Eminent Domain
[X] Other (specify): ASBESTOS

CASE NUMBER:
307382

— A conformed copy will not be returned by the clerk unless a method of return is provided with the document. —

1. TO THE CLERK: Please dismiss this action as follows:

a. (1) [X] With prejudice      (2) [ ] Without prejudice

b. (1) [X] Complaint      (2) [ ] Petition
   (3) [ ] Cross-complaint filed by (name):                    on (date):
   (4) [ ] Cross-complaint filed by (name):                    on (date):
   (5) [ ] Entire action of all parties and all causes of action
   (6) [X] Other (specify):* As to the defendant(s) on attached list, only.

Date: October 6, 2000                    WARTNICK, CHABER, HAROWITZ, et al.

HARRY F. WARTNICK
(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)    ► (SIGNATURE)
Attorney or party without attorney for:   PLAINTIFF(S)

* If dismissal requested is of specified parties only, of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

[ ] Plaintiff/Petitioner    [ ] Defendant/Respondent
[ ] Cross-complainant

2. TO THE CLERK: Consent to the above dismissal is hereby given.**

Date:                              ►

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)    (SIGNATURE)
Attorney or party without attorney for:

** If a cross-complaint - or Response (Family Law) seeking affirmative relief - is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581(i) or (j).

[ ] Plaintiff/Petitioner    [ ] Defendant/Respondent
[ ] Cross-complainant

(To be completed by clerk)

3. [ ] Dismissal entered as requested on (date):
4. [ ] Dismissal entered on (date):                    as to only (name):
5. [ ] Dismissal not entered as requested for the following reasons (specify):

6. [ ] a. Attorney or party without attorney notified on (date):
       b. Attorney or party without attorney not notified. Filing party failed to provide
          [ ] a copy to conform    [ ] means to return conformed copy

Date:                              Clerk, by _____, Deputy

Form Adopted by the
Judicial Council of California
982(a)(5) [Rev. January 1, 1997]
Mandatory Form

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.
Cal. Rules of Court, rules 383, 1233

This dismissal applies only to defendant members as follows:

Anchem Products, Inc.; Armstrong World Industries, Inc., formerly known as Armstrong Cork Company; CertainTeed Corporation; C.E. Thurston and Sons, Inc.; Dana Corporation; (Formerly known as Nuturn Corporation); I.U. North America, Inc.; Maremont Corporation; (The Grizzly Manufacturing Company; The Grizzly Division of Maremont Corporation); National Service Industries, Inc.; NOSROC Corp.; Pfizer, Inc.; Quigley Company, Inc.; Shook & Fletcher Insulation Company; T&N plc, formerly known as Turner & Newall PLC, formerly known as Turner & Newall LTD; Turner & Newall Industries; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company.

1999247878
CASF

# COMPROMISE AND RELEASE OF ALL CLAIMS

1. Release of all Personal Injury and Death Claims:

(a)  THIS RELEASE EXTINGUISHES ALL CLAIMS FOR ALL INJURIES ARISING FROM OR RELATED TO ANY EXPOSURE TO ASBESTOS EXPERIENCED BY MAURICE APLEY INCLUDING BUT NOT LIMITED TO ALL WRONGFUL DEATH CLAIMS AND ALL SURVIVING PERSONAL INJURY CLAIMS.

2. Releasors:

(a) Estate of Decedent:  MAURICE APLEY
    Social Security Number:  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

(b) Decedent's spouse:  N/A
    Social Security Number:

(c) Decedent's children:  DIANNA EDWARD and  DEBRA LOPEZ

(d) Plaintiff's heirs, as defined by California Code of Civil Procedure Section 377(b).

3. Releasees:

The Releasees are all subscribers to the Agreement Concerning Asbestos-Related Claims signed October 6, 1988 (The Center for Claims Resolution Agreement), and all of their predecessors and successors, their parent and subsidiary companies and divisions, and their current and former attorneys, liability insurance carriers, to the extent of their liability for Center non-insurance company subscribers only, officers, directors, agents, and employees. The names of the subscribers are set out below:

Manufacturers: Amchem Products, Inc.; Armstrong World Industries, Inc. formerly known as Armstrong Cork Company; The Asbestos Claims Management Corporation (formerly known as National Gypsum Company) and the NGC Asbestos Disease and Property Damage Settlement Trust; CertainTeed Corporation; C.E. Thurston and Sons, Inc.; Dana Corporation; (Formerly known as Nuturn Corporation); I.U. North America, Incorporated; Rhone Poulenc (Tendered To Amc) Maremont Corporation; (The Grizzly Manufacturing Company; The Grizzly Division of Maremont Corporation); National Service Industries, Inc.; NOSROC Corp.; Pfizer, Inc.; Quigley Company, Shook & Fletcher Insulation Company; T&N plc, formerly known as Turner & Newall PLC, formerly known as Turner & Newall LTD; Turner & Newall Industries; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company.

1

4. Preliminary Facts:

The Plaintiff alleges that decedent was exposed to asbestos, that the asbestos was produced by or came from a product produced by the Releasees, and that the exposure to asbestos has injured him or led to his death.

Based on this exposure, the plaintiff has filed suit, or is considering filing suit, for damages arising from decedent's personal injury or death.

Releasees desire to compromise and obtain a general release of all existing and future claims that could possibly arise from these facts, without admitting liability.

5. Terms of Settlement:

In consideration of $200,000.00, in total, Releasors release and forever discharge Releasees from any and all claims arising from or related to any exposure to asbestos experienced by MAURICE APLEY. This release specifically includes, but is not limited to, all wrongful death claims, all loss of consortium claims, and all surviving personal injury claims arising from or related to any exposure to asbestos experienced by MAURICE APLEY.

For the purpose of this release, the word "claims" includes all claims, demands, actions, and suits of any kind.  For the purposes of this release, the word "injuries" includes all injuries, illnesses, disabilities, losses, and harms of any kind including but not limited to all emotional injuries.

This release does not cover claims for injuries allegedly suffered by the decedent's spouse and children because of their personal exposure to asbestos or property damage claims.

The consideration specified in this release shall be paid in the form of drafts or checks payable to Releasor's counsel as trustee for Releasors.

6. Unknown Injuries:

Releasors hereby waive any right or benefit that Releasors may have, now or in the future, under Section 1542 of the Civil Code of the State of California, which reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in this favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

7. **Indemnity Against Claims by Lienholders:**

Releasors warrant that they, or some of them are the sole owners of all claims of any kind arising out of the injuries covered in this release.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any claim, brought by any holder of a lien or encumbrance, that is related to the injures covered in this release, other than cross-complaints or cross-actions of co-defendants.   This indemnity agreement specifically does not cover cross-complaints or cross-actions of co-defendants.

8. **Indemnity Against Inaccuracy of Representation:**

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting directly or indirectly from any falsity or inaccuracy of any representation made in this release by Releasors.

9. **Indemnity Against Wrongful-Death Claims:**

Releasors warrant and represent that they are legally empowered to settle surviving personal injury claims on behalf of the estate of MAURICE APLEY and that only they, or some of them, would be legally entitled to bring suit based on a allegedly wrongful death of MAURICE APLEY.   Furthermore, they warrant that no survival or wrongful death suit based on any exposure to asbestos experienced by MAURICE APLEY will be brought by anyone against Releasees.

Releasors agree to indemnify Releasees against all liability, including but not limited to attorneys' fees and expenses, resulting from any wrongful death suit, brought by anyone, based on any exposure to asbestos experienced by MAURICE APLEY.

10. **Indemnity Against Claims by Minors and Unborn Children:**

Releasors understand that any minors among the Releasors may have the legal right to disaffirm this contract.  Releasors agree that this release is not intended to expand whatever legal rights a minor may have to disaffirm this release and Releasees reserve the right to challenge any attempted disaffirmance of it.   All Releasors who are not minors agree that this release will remain binding on them even if a minor disaffirms it.

Furthermore, all Releasors who are not minors agree to indemnify Releasees against all liability, including but not limited to all attorneys' fees and expenses, resulting from (1) any attempted disaffirmance, whether successful or not, and (2) any claim brought by any Releasor who is now a minor that arises from or is related to any exposure to asbestos experienced by MAURICE APLEY.

3

Releasors also agree to indemnify Releasees against all liability, including, but not limited to, attorneys' fees and expenses, resulting from any claim brought by any child now unborn that arises from or is related to any exposure to asbestos experienced by MAURICE APLEY.

11.   Warranty of Good-Faith Compromise of Disputed Claims:

Releasors warrant and represent the following:

(a)   Releasors agree that this release is a compromise of doubtful and disputed claims, and that payment is not to be construed as an admission of liability.  Releasors also agree that this release shall not be admissible as evidence in any suit or proceeding whatsoever as evidence or admission of any liability.

(b)   Releasors warrant that this release has been entered into in good faith for the purpose of resolving disputed and uncertain claims.

(c)   Releasors warrant that they will use their best efforts to obtain court approval of this release, including a determination that this settlement has been entered into in good faith, and that they will fully cooperate with Releasees and their counsel in their efforts to obtain the determination and an order, in accordance with Section 877.6 of the Code of Civil Procedure dismissing cross-complaints.

12.   Persons Bound:

This release is binding on the estate of MAURICE APLEY, on Releasors collectively and individually, and on all their heirs, devisees, executors, administrators, personal representatives, and assigns.  Each warranty and each agreement in this release is enforceable against Releasors collectively and each Releasor individually.

13.   Remedies for Breach:

Releasors agree to pay for attorneys' fees, expenses, and costs incurred by Releasees as a result of any proceeding brought or maintained by Releasors or by any Releasor in breach of this release.

14.   Authorization to File Dismissal:

Releasors authorize their counsel to execute a request for dismissal with prejudice of Releasees in the SUPERIOR COURT in SAN FRANCISCO COUNTY, CALIFORNIA - NORTH, DOCKET#: 307384, which is entitled "MAURICE APLEY V RAYBESTOS-MANHATTAN ET AL".  Releasors authorize counsel for Releasees to file the request for dismissal after Releasees have paid Releasors, or Releasors' counsel as their trustee, the consideration specified in this release.  Releasors also agree to dismiss

4

Releasees from all other past of future claims, brought by any of them, that are in any way connected with any exposure to asbestos experienced by MAURICE APLEY.

15.  Releasors Warrant That They Have Read This Release:

RELEASORS HEREBY WARRANT THAT THEY HAVE READ THIS RELEASE IN ITS ENTIRETY, HAVE HAD IT FULLY EXPLAINED TO THEM, AND FULLY UNDERSTAND AND APPRECIATE ITS TERMS AND THEIR CONSEQUENCES.

Releasors understand that this release is a full, complete and final release and that the sum of $200,000.00 is the total amount to be paid to them by Releasees as a result of any exposure to asbestos experienced by MAURICE APLEY.


_Dianna Edwards_                Dated: _10-20-00_
DIANNA EDWARD

Subscribed and sworn to before me this _20_ day of _October_, _2000_


_B Rodriguez_
Notary Public

My Commission Expires: _2-1-04_

> B. RODRIGUEZ
> Comm. # 1251695
> NOTARY PUBLIC-CALIFORNIA
> Calaveras County
> My Comm. Expires Feb. 1, 2004


_____        Dated:_____
DEBRA LOPEZ


Subscribed and sworn to before me this ____ day of _____, _____.


_____
Notary Public


My Commission Expires:_____


5

This release was executed with my approval, and under my direction and advice. Its provisions and their consequences have been fully explained to Releasors.

WARTNICK, CHABER,
HAROWITZ, SMITH & TIGERMAN

Dated: 11-3-00

## HOLD HARMLESS AGREEMENT

I, recognize that as a part of the settlement of my wrongful death case, the Center for Claims Resolution defendants wish to obtain release and buy their peace with respect to potential claims that could be brought by the estate of MAURICE APLEY or its heirs. It is my intention and desire to conclude a settlement in which the Center for Claims Resolution defendants will be released from any personal injury claim and wrongful death claim.

By this document, I do the following:

I, on behalf of myself and the estate of MAURICE APLEY, agree to indemnify and hold harmless the Center for Claims Resolution defendants against any claims presented in the future by potential heirs. It is my wish and intention that should the heirs present a claim, the estate will upon tender undertake to defend the Center for Claims Resolution defendants against any claim made by the heirs and will indemnify the Center for Claims Resolution defendants against any judgment obtained by them against the Center for Claims Resolution defendants. I understand that this is a contractual undertaking on my part which is binding upon me and the estate and is given by me in return for fair and valuable consideration - to wit, the agreement by the Center for Claims Resolution defendants in reliance, in part, upon this document, to pay me funds which I believe to be fair and reasonable in settlement of claims for wrongful death.


Individually and on behalf of
MAURICE APLEY


DATED: _Deanne Edwards_ 10-20-00

CAWCWDFL
July 21, 2000
9:17 AM

7

DE-150

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):*

CARTER WARMKE, SBN 63135    (209) 951-5922
WARMKE & WARMKE    Fax(209) 9515925
P. O. Box 690728
Stockton, California 95269-0728

TELEPHONE AND FAX NOS.:

FOR COURT USE ONLY

**(ENDORSED) FILED**

AUG 1 5 2000

CALAVERAS COUNTY COURTS
M. B. Todd, Clerk of Court
JUDITH GOFFE , Deputy

ATTORNEY FOR *(Name):* Executor

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   CALAVERAS
STREET ADDRESS:  891 Mountain Ranch Road
MAILING ADDRESS:
CITY AND ZIP CODE:  San Andreas, California 95249-9709
BRANCH NAME:

ESTATE OF *(Name):* MAURICE APLEY, also known as
Maurice W. Apley,

DECEDENT

## LETTERS

| | | |
|---|---|---|
| [X] TESTAMENTARY | [ ] OF ADMINISTRATION | |
| [ ] OF ADMINISTRATION WITH WILL ANNEXED | [ ] SPECIAL ADMINISTRATION | |

CASE NUMBER:    6176

## LETTERS

1. [ ] The last will of the decedent named above having been proved, the court appoints *(name):*
   **DIANNA EDWARDS**

   a. [X] executor.
   b. [ ] administrator with will annexed.

2. [ ] The court appoints *(name):*

   a. [ ] administrator of the decedent's estate.
   b. [ ] special administrator of decedent's estate
      (1) [ ] with the special powers specified in the *Order for Probate.*
      (2) [ ] with the powers of a general administrator.
      (3) [ ] letters will expire on *(date):*

3. [X] The personal representative is authorized to administer the estate under the Independent Administration of Estates Act [X] with full authority
   [ ] with limited authority (no authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or (3) borrow money with the loan secured by an encumbrance upon real property).

4. [ ] The personal representative is not authorized to take possession of money or any other property without a specific court order.

WITNESS, clerk of the court, with seal of the court affixed.

(SEAL)

Date:  AUG 1 5 2000
Clerk, by

JUDITH GOFFE
(DEPUTY)

## AFFIRMATION

1. [ ] PUBLIC ADMINISTRATOR: No affirmation required (Prob. Code, § 7621(c)).

2. [X] INDIVIDUAL: I solemnly affirm that I will perform the duties of personal representative according to law.

3. [ ] INSTITUTIONAL FIDUCIARY *(name):*

   I solemnly affirm that the institution will perform the duties of personal representative according to law. I make this affirmation for myself as an individual and on behalf of the institution as an officer. *(Name and title):*

4. Executed on *(date):* July 13, 2000
   at *(place):* Stockton
   , California.

▶ *Dianna Edwards*
   (SIGNATURE)

## CERTIFICATION

I certify that this document is a correct copy of the original on file in my office and the letters issued the personal representative appointed above have not been revoked, annulled, or set aside, and are still in full force and effect.

Date:  AUG 1 5 2000
M. B. TODD
Clerk, by

J. Goffe
(DEPUTY)

Form Approved by the
Judicial Council of California
DE-150 [Rev. January 1, 1998]

**LETTERS**
(Probate)

Probate Code, §§ 1001, 8403,
8405, 8544, 8545,
Code of Civil Procedure, § 2015.6

8-15
DE-140

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address)*: | TELEPHONE AND FAX NOS.: | FOR COURT USE ONLY |
|---|---|---|

CARTER WARMKE, SBN 63135        (209) 951-5922
WARMKE & WARMKE              Fax (209) 951-5925
P. O. Box 690728
Stockton, CA 95269-0728
ATTORNEY FOR *(Name)*:  Executor

**(ENDORSED) FILED**

AUG 1 5 2000

CALAVERAS COUNTY COURTS
M. B. Todd, Clerk of Court
_____, Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  CALAVERAS
STREET ADDRESS:  891 Mountain Ranch Road
MAILING ADDRESS:
CITY AND ZIP CODE:  San Andreas, California 95249-9709
BRANCH NAME:

ESTATE OF *(Name)*:  MAURICE APLEY, also known as
Maurice W. Apley
                                                              DECEDENT

**ORDER FOR PROBATE**

ORDER
APPOINTING
- [X] Executor
- [ ] Administrator with Will Annexed
- [ ] Administrator    [ ] Special Administrator
- [X] Order Authorizing Independent Administration of Estate
  - [X] with full authority  [ ] with limited authority

CASE NUMBER:

6176

**WARNING: THIS APPOINTMENT IS NOT EFFECTIVE UNTIL LETTERS HAVE ISSUED.**

1. Date of hearing: August 15, 2000  Time:  9:00 A.M.  Dept./Room: 1     Judge: JOHN E. MARTIN

THE COURT FINDS
2. a. All notices required by law have been given.
   b. Decedent died on *(date)*:  June 21, 2000
      (1) [X] a resident of the California county named above.
      (2) [ ] a nonresident of California and left an estate in the county named above.
   c. Decedent died
      (1) [ ] intestate
      (2) [X] testate
      and decedent's will dated:  August 16, 1999   and each codicil dated:
      was admitted to probate by Minute Order on *(date)*:  August 15, 2000.

THE COURT ORDERS
3. *(Name)*:  Dianna Edwards
   is appointed personal representative:
   a. [X] executor of the decedent's will
   b. [ ] administrator with will annexed
   c. [ ] administrator

   d. [ ] special administrator
      (1) [ ] with general powers
      (2) [ ] with special powers as specified in Attachment 3d(2)
      (3) [ ] without notice of hearing
      (4) [ ] letters will expire on *(date)*:

   and letters shall issue on qualification.
4. a. [X] Full authority is granted to administer the estate under the Independent Administration of Estates Act.
   b. [ ] Limited authority is granted to administer the estate under the Independent Administration of Estates Act (there is no
      authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or
      (3) borrow money with the loan secured by an encumbrance upon real property).
5. a. [X] Bond is not required.
   b. [ ] Bond is fixed at: $                                        to be furnished by an authorized surety company or as otherwise
      provided by law.
   c. [ ] Deposits of: $                                        are ordered to be placed in a blocked account at *(specify institution and
      location)*:
      and receipts shall be filed. No withdrawals shall be made without a court order. [ ] Additional orders in Attachment 5c.
   d. [ ] The personal representative is not authorized to take possession of money or any other property without a specific court order.
6. [X] *(Name)*:  MICHAEL WRIGHT
      (209) 532-6079                              is appointed probate referee.

Date:  August 15, 2000

                                                 JOHN E. MARTIN
                                          JUDGE OF THE SUPERIOR COURT
7. Number of pages attached: __0__        [ ] SIGNATURE FOLLOWS LAST ATTACHMENT

Form Approved by the
Judicial Council of California        **ORDER FOR PROBATE**        Probate Code, §§ 8006, 8400
DE-140 [Rev. January 1, 1998]

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*: | | FOR COURT USE ONLY |
|---|---|---|

TELEPHONE NO.: 415-986-5566

Wartnick, Chaber, Harowitz, Tigerman, et al.
101 California Street, Suite 2200
San Francisco, CA  94111-5802

ATTORNEY FOR *(Name)*:  PLAINTIFF(S)

Insert name of court and name of judicial district and branch court, if any:
Superior Court of the State of California
City and County of San Francisco

PLAINTIFF/PETITIONER: Maurice W. Apley, et al.

DEFENDANT/RESPONDENT: RAYBESTOS-MANHATTAN, INC. et.al.

**ENDORSED
F I L E D**
*San Francisco County Superior Court*

**NOV 0 8 2000**

**GORDON PARK-LI, Clerk**
BY:  _____ **JUN P. PANELO** _____
Deputy Clerk

---

## REQUEST FOR DISMISSAL

[X] Personal Injury, Property Damage, or Wrongful Death
    [ ] Motor Vehicle    [ ] Other
[ ] Family Law
[ ] Eminent Domain
[X] Other *(specify)*: ASBESTOS

CASE NUMBER:
307384

— A conformed copy will not be returned by the clerk unless a method of return is provided with the document. —

1. TO THE CLERK: Please dismiss this action as follows:

  a. (1) [X] With prejudice  (2) [ ] Without prejudice

  b. (1) [X] Complaint  (2) [ ] Petition
    (3) [ ] Cross-complaint filed by *(name)*:      on *(date)*:
    (4) [ ] Cross-complaint filed by *(name)*:      on *(date)*:
    (5) [ ] Entire action of all parties and all causes of action
    (6) [X] Other *(specify)*:* As to the defendant(s) on the attach list only.

Date: October 24, 2000

HARRY F. WARTNICK

(TYPE OR PRINT NAME OF [ ] ATTORNEY [X] PARTY WITHOUT ATTORNEY)

WARTNICK, CHABER, HAROWITZ, et al.

(SIGNATURE)
Attorney or party without attorney for:  PLAINTIFF(S)

* If dismissal requested is of specified parties only, of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

[ ] Plaintiff/Petitioner    [ ] Defendant/Respondent
[ ] Cross-complainant

2. TO THE CLERK: Consent to the above dismissal is hereby given.**
Date:

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

(SIGNATURE)
Attorney or party without attorney for:

** If a cross-complaint - or Response (Family Law) seeking affirmative relief - is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581(i) or (j).

[ ] Plaintiff/Petitioner    [ ] Defendant/Respondent
[ ] Cross-complainant

---

*(To be completed by clerk)*
3. [ ] Dismissal entered as requested on *(date)*:
4. [X] Dismissal entered on *(date)*: NOV - 8 2000 as to only *(name)*: **SEE ABOVE**
5. [ ] Dismissal not entered as requested for the following reasons *(specify)*:

6. [ ] a. Attorney or party without attorney notified on *(date)*:
    b. Attorney or party without attorney not notified. Filing party failed to provide
    [ ] a copy to conform    [ ] means to return conformed copy

Date: NOV - 8 2000    GORDON PARK-LI Clerk, by **JUN P. PANELO** , Deputy

Form Adopted by the
Judicial Council of California
982(a)(5) [Rev. January 1, 1997]
Mandatory Form

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.
Cal. Rules of Court, rules 383, 1233

)

This dismissal applies only to defendant members as follows:

Anchem Products, Inc.; Armstrong World Industries, Inc., formerly known as Armstrong Cork Company; The Asbestos Claims Management Corporation (formerly known as National Gypsum Company) and the NGC Asbestos Disease and Property Damage Settlement Trust; CertainTeed Corporation; C.E. Thurston and Sons, Inc.; Dana Corporation; (Formerly known as Nuturn Corporation); I.U. North America, Inc.; Maremont Corporation; (The Grizzly Manufacturing Company; The Grizzly Division of Maremont Corporation); National Service Industries, Inc.; NOSROC Corp.; Pfizer, Inc.; Quigley Company, Inc.; Shook & Fletcher Insulation Company; T&N plc, formerly known as Turner & Newall PLC, formerly known as Turner & Newall LTD; Turner & Newall Industries; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company.