# MDL 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 1 7 2001

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE ASBESTOS PRODUCTS LIAB. LITIG. (NO. VI) | ) ) ) ) | MDL 875 (Hon. Charles Weiner) |
| This Document Relates to: | ) ) | |
| PEREZ ET AL., | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. C-01-1627 JCS (N.D. Cal.) |
| THE CENTER FOR CLAIMS RESOLUTION ET AL., | ) ) ) | |
| Defendants. | ) ) | |
| YOUNG ET AL., | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 4:00-CV-225-P-A (N.D. Miss.) |
| THE CENTER FOR CLAIMS RESOLUTION ET AL., | ) ) ) | |
| Defendants. | ) ) | |

PLEADING NO 3 1 7 0

**MOTION OF DEFENDANT
CENTER FOR CLAIMS RESOLUTION, INC. TO
TRANSFER AND CONSOLIDATE WITH MDL 875**

IMAGED MAY 2 1 '01

OFFICIAL FILE COPY

- 2 -

Pursuant to 28 U.S.C. §1407, defendant Center for Claims Resolution, Inc. ("CCR") moves the Panel to transfer the above-captioned actions, presently pending in the United States District Court for the Northern District of California and the United States District Court for the Northern District of Mississippi, to the United States District Court for the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings as part of MDL 875. The grounds for this motion are as follows:

1.      These cases involve yet additional lawsuits arising from the failure of certain asbestos defendants that were members of the CCR to pay their shares under settlement agreements that the CCR negotiated on their behalf. Motions to transfer similar cases to Judge Weiner are already pending before the Panel with respect to <u>Doval et al. v. Maremont Corp.</u>, No. C-01-0540 JL (N.D. Cal.) (transfer motion filed April 5, 2001), and <u>Lowry et al. v. Center for Claims Resolution, Inc. et al.</u>, No. 00-1454 (C.D. Ill.) (transfer motion filed April 12, 2001). The transfer issue here is essentially identical to the transfer issue raised in those other motions. For completeness, we reiterate the basic points below.

2.      These cases involve issues arising from a series of settlement agreements resolving the various plaintiffs' asbestos personal injury claims against certain companies that were members of the CCR. The CCR negotiated the settlements on behalf of those member companies and duly forwarded the payments owed by the members thereunder, except that former CCR members Armstrong World Industries, Inc. ("Armstrong") and GAF Corporation ("GAF") have defaulted on all of their obligations under thousands of settlement agreements negotiated by the CCR and thus has failed to pay their shares of the settlements here. Plaintiffs

- 3 -

have now initiated these new lawsuits against the CCR, alleging that the CCR itself is liable for Armstrong's and GAF's unpaid settlement shares.

3.      As part of his responsibilities in managing MDL No. 875, <u>Judge Weiner has already repeatedly addressed the exact same issue raised in the cases at bar</u>, namely, whether the many thousands of asbestos personal injury settlement agreements negotiated by the CCR, acting as the agent for its members, impose liability on the CCR in its personal capacity. Copies of such rulings are attached to the accompanying memorandum. Those rulings also make clear that the disputes here, as in those cases, raise issues concerning the nature of the CCR, the CCR membership agreement, the course of conduct with the plaintiffs' lawyers, the well-known agency relationship between the CCR and its member companies, and the sophistication of the plaintiffs' counsel who negotiated these settlement agreements -- all of which are precisely the kinds of matters that are properly within Judge Weiner's expertise and jurisdiction.

4.      In short, precisely these issues have already arisen in other MDL 875 matters and Judge Weiner -- on whom the Panel relies to determine, at least in the first instance, whether matters should be adjudicated within the MDL docket -- has found it proper to resolve them within MDL 875.

5.      It makes no difference that the present cases do not simply present garden-variety asbestos personal injury claims. As part of MDL 875, the Panel not only has transferred cases alleging individual personal injuries from exposure to asbestos, but also has repeatedly transferred (or refused to remand) lawsuits that were related to such personal injury claims, as long as it made sense for Judge Weiner to handle such matters. Such satellite litigation has included suits between traditional asbestos defendants for indemnification or contribution of

- 4 -

monies paid in personal injury actions, claims against attorneys involved in asbestos litigation,

suits involving workers' compensation issues, and even more exotic claims such as antitrust,

racketeering, and fraud.

WHEREFORE, and for the reasons more fully stated in the accompanying memorandum,

defendant CCR respectfully moves the Panel to transfer the above-captioned cases to the Eastern

District of Pennsylvania as part of MDL 875.

Respectfully submitted,

Richard M. Wyner
Shea & Gardner
1800 Massachusetts Ave., N.W.
Washington, D.C.  20036
(202) 828-2000

Counsel for Defendant Center for Claims
Resolution, Inc.

May 10, 2001

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 1 7 2001

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| IN RE ASBESTOS PRODUCTS LIAB. LITIG. (NO. VI) | ) ) ) ) | MDL 875 (Hon. Charles Weiner) |
| This Document Relates to: | ) ) ) | |
| PEREZ ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>THE CENTER FOR CLAIMS RESOLUTION ET AL.,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | No. C-01-1627 JCS (N.D. Cal.) |
| YOUNG ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>THE CENTER FOR CLAIMS RESOLUTION ET AL.,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | No. 4:00-CV-225-P-A (N.D. Miss.) |

**MEMORANDUM IN SUPPORT OF THE MOTION OF
DEFENDANT CENTER FOR CLAIMS RESOLUTION, INC.
TO TRANSFER AND CONSOLIDATE WITH MDL 875**

RECEIVED
CLERK'S OFFICE
2001 MAY 10 P 4: 59

JUDICIAL PANEL
MULTIDISTRICT
LITIGATION

- 2 -

As set forth in the accompanying motion, these cases involve yet additional lawsuits arising from the failure of a former CCR member to pay its settlement shares, and motions to transfer other such cases to Judge Weiner are already pending before the Panel with respect to Doval et al. v. Maremont Corp., No. C-01-0540 JL (N.D. Cal.) (transfer motion filed April 5, 2001), and Lowry et al. v. Center for Claims Resolution, Inc. et al., No. 00-1454 (C.D. Ill.) (transfer motion filed April 12, 2001). The transfer issue here is essentially identical to the transfer issue raised in those other motions. For completeness, we discuss the relevant facts and issues again below.

In the years since the Panel's 1991 consolidation of federal asbestos personal injury litigation, the Panel not only has transferred personal injury cases, but also has repeatedly transferred (or refused to remand) lawsuits involving non-tort claims arising out of or otherwise relating to asbestos personal injury litigation claims. Such satellite litigation has included, for example, suits between traditional asbestos defendants for indemnification or contribution of monies paid in personal injury actions, claims against attorneys involved in asbestos litigation, suits involving workers' compensation issues, and even more exotic claims such as antitrust, racketeering, and fraud. Ever since its original order creating MDL 875, the Panel has regularly rejected arguments that such cases do not belong in MDL 875 because they involve claims other than personal injury claims, and has held that Judge Weiner is the best arbiter of what does and does not belong in MDL 875. See In re Asbestos Products Liab. Litig. (No. VI), 771 F. Supp. 415, 421-22 (J.P.M.L. 1991); Exhibits E-M hereto.

The present lawsuits are eminently within the scope of the MDL 875 docket. In each, the Center for Claims Resolution, Inc. (the "CCR") negotiated the settlements at issue as the agent

for numerous traditional asbestos defendants. The issue presented in <u>Perez</u> is whether the CCR should be held liable for the defaults of its members on asbestos personal injury settlements that it negotiated as their agent. The issue in <u>Young</u> is whether the CCR, its members, and others should be held liable for the defaults of former CCR members on asbestos personal injury settlements that it negotiated as their agent. Indeed, <u>as part of the MDL 875 proceedings over the past year, Judge Weiner has repeatedly addressed precisely the same issue presented here</u>: namely, whether the CCR (or the nondefaulting CCR members) should be held liable for nonpayments by members or former members under settlement agreements that the CCR negotiated as their agent. See Exhibits B-D hereto. Those rulings also make it clear that the issue here should be addressed within MDL 875 because it involves facts and circumstances that are known to Judge Weiner and that have been addressed in that litigation, including the nature of the CCR, the practice and custom of asbestos personal injury settlement agreements, and the knowledge of the asbestos personal injury lawyers who negotiate these agreements.

A transfer is also necessary and appropriate to achieve the purposes of §1407. The present suits are part of hundreds of millions of dollars worth of asbestos settlement litigation caused by the nationwide settlement defaults of several former CCR members. Hence transfer is essential in order to enable Judge Weiner to manage the entire MDL 875 docket, including such matters as the effect of co-defendant defaults on settlement efforts, settlement funding, and proper claim sequencing. The Panel has recognized that Judge Weiner's role as the transferee judge involves taking precisely those considerations into account in managing the entire MDL 875 docket.

- 4 -

## BACKGROUND

### A.   Settlement Enforcement Litigation

These cases and hundreds of others like them in courts across the United States have arisen from the recent defaults by several former CCR members on asbestos personal injury settlements negotiated by the CCR on their behalf.  Specifically, Armstrong World Industries, Inc. ("Armstrong"), GAF Corporation ("GAF"), and Asbestos Claims Management Corporation ("ACMC") were each formerly CCR members, but they each stopped paying their shares of CCR settlement obligations when they either withdrew from CCR membership or entered into bankruptcy reorganization.  Their defaults have impacted thousands of asbestos personal injury settlements and raised litigation in numerous courts to determine who will bear the burden of those defaults.

Defendant CCR is a nonprofit Delaware corporation organized to represent its member asbestos companies in asbestos litigation.  Among other things, the CCR negotiates settlements on behalf of its members in asbestos personal injury lawsuits, and apportions shares of the resulting settlement obligations to the members according to a sharing formula agreed to by the members in the first instance.  GAF's membership was terminated in early 2000, and GAF thereupon refused to pay its share under any pending CCR settlement.  ACMC, itself the product of a prior bankruptcy reorganization, was long a regular member of the CCR, but now has with-drawn from the CCR and has ceased paying its settlement shares.  Armstrong, another long-time member, recently petitioned for bankruptcy protection and has likewise stopped paying.

In the face of these defaults, the CCR has forwarded to settling plaintiffs the amounts due under the settlements by its remaining members.  Thousands of impacted plaintiffs have moved

- 5 -

to enforce their settlements in such cases, sometimes against the defaulting company, sometimes

against the other CCR members, and occasionally against the CCR itself. As part of his respon-

sibilities as the transferee judge in MDL 875, Judge Weiner has addressed these issues three

times, ruling each time that only the defaulting member companies are liable for their unpaid

settlement shares. See In re Aldridge (MDL 875, E.D. Pa. June 19, 2000) (Exhibit B); In re

Bernhardt (MDL 875, E.D. Pa. June 14, 2000) (Exhibit C); In re Benson (MDL 875, E.D. Pa.

June 9, 2000) (Exhibit D).

### B.    The Perez Complaint

The Perez plaintiffs' personal injury claims were settled by the CCR on behalf of its

member companies, who were sued in each case, by various settlement agreements during 2000.

Their instant suit seeks to recover shortfall amounts caused by Armstrong's default. The action

alleges that the CCR, which negotiated the settlement as an agent for its members, should be held

liable for the unpaid Armstrong settlement shares. See Perez Complaint, attached as Exhibit A

hereto.

### C.    The Young Complaint

The Young plaintiffs' personal injury claims were settled by the CCR on behalf of its

member companies, who were sued in each case, by a settlement agreement entered into on

September 15, 1999. Their instant suit seeks to recover shortfall amounts caused by GAF's

default. The action alleges that the CCR, which negotiated the settlement as an agent for its

members, as well as each CCR member, several former CCR members (including GAF and

Armstrong), and others, should be held liable for the unpaid GAF settlement share. The action

was filed in the Circuit Court of Washington County, Mississippi, and removed to the United

States District Court for the Northern District of Mississippi.  See <u>Young</u> Complaint and removal papers, attached as Exhibit N hereto.

<div align="center">

**ARGUMENT**

</div>

**A.      The Standards for Transfer Under §1407**

The MDL statute provides that "civil actions involving one or more common questions of fact" may be transferred for coordinated or consolidated pretrial proceedings if the Panel finds "that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."  28 U.S.C. §1407(a).

**B.      The Panel Has Repeatedly Transferred Non-Personal Injury
          Claims Relating to Asbestos Personal Injury Litigation**

On July 29, 1991, the Panel transferred all federal cases "involving allegations of personal injury or wrongful death caused by asbestos" to the Eastern District of Pennsylvania, and assigned them to Judge Weiner, under §1407.  <u>In re Asbestos Prods. Liab. Litig.</u>, 771 F. Supp. 415, 416 (J.P.M.L. 1991).  In doing so, the Panel specifically held that <u>all</u> cases involving such allegations should be transferred, regardless of allegedly unique or different claims or circumstances.  See <u>id</u>. at 421-22.  This was necessary, the Panel explained, because giving Judge Weiner authority over even allegedly divergent claims is necessary to achieve pre-trial procedural economies and because such claims may "affect the overall management of this litigation."  <u>Id</u>. at 422.

In subsequent orders within MDL 875, the Panel has consistently required that <u>all</u> cases relating to asbestos personal injuries be transferred to Judge Weiner.  In doing so, the Panel has repeatedly explained that "in the Panel's original decision distinctions based on such matters as

. . . the uniqueness of a party's status, the type of defendant, [and] <u>the presence of unique claims</u>
<u>or additional claims not relating to asbestos injury or death</u>, . . . were considered and rejected by
the Panel as grounds for carving out exceptions to transfer in this extraordinary docket." Order
filed February 4, 2000, transferring <u>Givens</u> v. <u>Witco Corp.</u>, C.A. No. 2:99-2283 (E.D. La.) et al.
(emphasis added) (Exhibit E). The Panel has also repeatedly noted that parties who believe that
their actions should not be handled under MDL 875 can make their arguments to Judge Weiner,
and that the Panel is "not persuaded to depart from this approach." <u>Id</u>.

Accordingly, the Panel has transferred numerous cases that did not present claims for
asbestos personal injuries, but instead related to such claims. For example, the Panel has repeat-
edly transferred indemnification and contribution actions between traditional asbestos defen-
dants.[1] In doing so, the Panel has recognized that such litigation necessarily impacts the direct
litigation (because of its effect on the defendants' litigation and financial resources) and is likely
to involve factual and evidentiary overlap with the direct litigation. As a result, the Panel has
been unmoved by arguments that the lawsuit "technically . . . is not a claim for asbestos related
personal injuries, but is rather one seeking indemnification for the sums previously paid . . . ."
Order filed May 31, 1994, transferring <u>American President Cos., Ltd.</u> v. <u>Babcock & Wilcox Co.</u>,
No. 2:94-91 (W.D. Wash.) (Exhibit F).

Similarly, the Panel just last year transferred an action by Owens-Illinois, Inc., a major
asbestos defendant, alleging that another traditional asbestos defendant had violated antitrust,

---

[1] <u>See, e.g.</u>, Order filed May 31, 1994, transferring <u>American President Cos., Ltd.</u> v.
<u>Babcock & Wilcox Co.</u>, No. 2:94-91 (W.D. Wash.) (Exhibit F); Order filed February 26, 1993,
transferring <u>Conwed Corp.</u> v. <u>Union Carbide Corp.</u>, No. 5:92-88 (D. Minn.) (Exhibit G); Order
filed October 5, 1999, denying remand in <u>Conwed Corp.</u> v. <u>Union Carbide Corp.</u>, No. 5:92-88
(D. Minn.) (Exhibit H).

- 8 -

fraud, and racketeering laws. Recognizing the factual overlap of the claims alleged with indem-
nification actions, and the fact that the damages sought would simply have produced the same
effect as indemnification, the Panel transferred the action to Judge Weiner, reiterating its basic
view of the breadth of MDL 875. See Order filed November 22, 2000, transferring Owens-
Illinois, Inc. v. T&N, Ltd., C.A. No. 2:99-117 (E.D. Tex.) (Exhibit I).

The Panel has transferred actions even more removed from the core of asbestos personal
injury litigation. For example, the Panel has transferred lawsuits challenging the professional
conduct of attorneys representing asbestos claimants, notwithstanding arguments that such cases
did not present claims for asbestos personal injuries. See Order filed September 29, 1998,
transferring Raymark Indus., Inc. v. Baron, No. 3:98-673 (N.D. Tex.) (Exhibit J). In particular,
the Panel held that such cases "can be expected to raise issues concerning not only the viability
of the underlying asbestos products liability claims, but also questions of judicial management
and discovery that are already (with respect to the MDL-875 cases) subject to the jurisdiction and
control of Judge Weiner." Id. at 1. Accord, Order filed September 25, 1996, transferring
Raymark Indus., Inc. v. Angelos, No. 1:96-940 (N.D. Ga.) (Exhibit K) (same); Order filed
January 29, 1998, transferring Raymark Corp. v. Baron, No. 1:97-109 (D. Utah) (Exhibit L)
(same).[2]

---

[2] See also Order filed October 5, 1999, denying remand of Conwed Corp. v. Union
Carbide Corp., No. 5:92-88 (D. Minn.) (Exhibit H) (irrelevant that case involved workers'
compensation issues); Order filed October 1, 1993, transferring Keene Corp. v. Fiorelli, No.
1:93-2129 (E.D.N.Y.) (Exhibit M) (transferring "limited fund" class action filed by asbestos
defendant against asbestos plaintiffs, seeking to force a negotiated resolution of liabilities to
present and future claimants).

- 9 -

In short, the Panel has repeatedly characterized MDL 875 as an "extraordinary docket"[3] to
which all cases with factual issues relating to asbestos personal injuries -- specifically including
indemnification cases -- should be transferred as an initial matter, regardless of "the presence of
unique claims or additional claims not relating to injury or death."[4] The Panel has also consis-
tently held that parties who believe that "the uniqueness of their particular situation renders . . .
inclusion of their action in MDL-875 unnecessary or inadvisable" must present those arguments
to Judge Weiner, who is in the best position to determine whether the case should be handled as
part of the MDL docket.[5] If Judge Weiner determines that the claims will not benefit from con-
solidated treatment, he can suggest that the Panel remand the claims.[6]

---

[3] See Order filed September 29, 1998, transferring Raymark Indus., Inc. v. Baron, No.
3:98-673 (N.D. Tex.) (Exhibit J); Order filed February 4, 2000, transferring Givens v. Witco
Corp., C.A. No. 2:99-2283 (E.D. La.) (Exhibit E).

[4] See Order filed September 29, 1998, transferring Raymark Indus., Inc. v. Baron, No.
3:98-673 (N.D. Tex.) (Exhibit J).

[5] See In re Asbestos Prods. Liab. Litig. (No. VI), 771 F. Supp. at 422 ("[B]ecause many
of the arguments of parties seeking exclusion from transfer are intertwined with the merits of
their claims or defenses and affect the overall management of this litigation, we are unwilling
* * * to carve out exceptions to transfer. We prefer instead to give the transferee court the
opportunity to conduct a substantive review of such contentions and how they affect the whole
proceedings.").

[6] See Order filed September 29, 1998, transferring Raymark Indus., Inc. v. Baron, No.
3:98-673 (N.D. Tex.) (Exhibit J) ("[A]ny parties that believe the uniqueness of their particular
situation renders inclusion of their action in MDL-875 unnecessary or inadvisable [may] then
present their arguments to the transferee judge, who, whenever he deems remand of any claims or
actions proper, invokes the available procedures whereby this may be accomplished with a
minimum of delay. . . . We are confident that Judge Weiner will continue to promptly review
arguments for returning transferred actions or claims to their transferor courts and will take all
appropriate steps to assure their speedy return whenever he is convinced that retention in the
MDL-875 proceedings is no longer needed."); Order filed May 31, 1994, transferring American
President Cos. v. Babcock & Wilcox Co., No. 2:94-91 (W.D. Wash.) (Exhibit F) ("It may be on
further refinement of the issues and close scrutiny by the transferee court, American can be

- 10 -

**C.    Judged Against Those Standards, the Present Cases**
**Plainly Should Be Transferred to Judge Weiner**

When tested against those sweeping standards in this extraordinary MDL docket, it is

clear that the present cases should be transferred to Judge Weiner, at least in the first instance.

To begin with, it is evident that the issues in both cases are closely intertwined with Judge

Weiner's existing jurisdiction and responsibilities in MDL 875, given that he has already

repeatedly addressed the precise issues presented by these cases in the context of MDL 875.  See

In re Aldridge (MDL 875, E.D. Pa. June 19, 2000) (Exhibit B); In re Bernhardt (MDL 875, E.D.

Pa. June 14, 2000) (Exhibit C); In re Benson (MDL 875, E.D. Pa. June 9, 2000) (Exhibit D).

Thus the transferee judge in this matter, in whom the Panel's rules and precedents

unambiguously vest the authority to decide whether matters belong in MDL 875 in the first

instance, has already found it appropriate to rule on the very issues in these cases in the context

of MDL 875.[7]

---

remanded in advance of the other actions in the transferee district.  Should the transferee court
deem remand of any claims or actions appropriate, the transferee court can communicate this to
the Panel, and the Panel will accomplish remand with a minimum of delay.").

[7] The Panel's Rule 7.6(d) provides that "[t]he Panel is reluctant to order remand absent a
suggestion of remand from the transferee district court," and in the context of MDL 875 the
Panel has repeatedly emphasized its desire that the decision whether an asbestos-related case
belongs in MDL 875 rest, in the first instance, with Judge Weiner.  See, e.g., Order filed May 31,
1994, transferring American President Cos., Ltd. v. Babcock & Wilcox Co., No. 2:94-91 (W.D.
Wash.) (Exhibit F); Order filed February 26, 1993, transferring Conwed Corp. v. Union Carbide
Corp., No. 5:92-88 (D. Minn.) (Exhibit G); Order filed October 5, 1999, denying remand in
Conwed Corp. v. Union Carbide Corp., No. 5:92-88 (D. Minn.) (Exhibit H);  Order filed Sep-
tember 25, 1996, transferring Raymark Indus., Inc. v. Angelos, No. 1:96-940 (N.D. Ga.) (Exhibit
K); Order filed January 29, 1998, transferring Raymark Corp. v. Baron, No. 1:97-109 (D. Utah)
(Exhibit L).

- 11 -

This conclusion is also strongly supported by the fact that the claims at issue in these cases raise facts and evidence that are an integral part of the MDL 875 litigation. As Judge Weiner's prior rulings expressly show, the issue in these cases raises such matters as the historical understandings of the counsel and parties to asbestos personal injury litigation, their course of dealing, the level of sophistication of the plaintiffs' asbestos bar, and the nature of the relationships among the defendants. Plainly those issues overlap with the existing MDL 875 docket, thereby making it appropriate to handle any discovery and other proceedings in a coordinated fashion as part of that docket.

Finally, this conclusion is confirmed by the substantial impact that the litigation arising from the settlement defaults of former CCR members Armstrong, ACMC, and GAF could have on the overall asbestos personal injury litigation. As set forth above, those defaults amount of many millions of dollars and impact thousands of asbestos personal injury cases. It is imperative to Judge Weiner's "overall management of this litigation" that he have jurisdiction over matters like Perez and Young, which are part of a nationwide wave of litigation involving the disposition of very large sums of settlement monies, the ultimate resolution of which will have significant impacts on the prosecution and settlement of asbestos lawsuits.

In sum, extensive Panel precedent in MDL 875 shows that these cases should be transferred to Judge Weiner for consolidated or coordinated pre-trial proceedings as part of MDL 875. If the Perez and Young plaintiffs believe their claims should not be processed as part of MDL 875, that question should be presented in the first instance to Judge Weiner, not to this Panel.

- 12 -

## **Conclusion**

The motion to transfer should be granted.

Respectfully submitted,

Richard M. Wyner
Shea & Gardner
1800 Massachusetts Ave., N.W.
Washington, DC  20036
(202) 828-2000

Counsel for Defendant Center for Claims
Resolution, Inc.

May 10, 2001

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 17 2001

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE ASBESTOS PRODUCTS LIAB. LITIG. (NO. VI) | ) ) ) ) | MDL 875 (Hon. Charles Weiner) |
| This Document Relates to: | ) ) | |
| PEREZ ET AL., | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. C-01-1627 JCS (N.D. Cal.) |
| THE CENTER FOR CLAIMS RESOLUTION ET AL., | ) ) ) | |
| Defendants. | ) ) | |
| YOUNG ET AL., | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 4:00-CV-225-P-A (N.D. Miss.) |
| THE CENTER FOR CLAIMS RESOLUTION ET AL., | ) ) ) | |
| Defendants. | ) ) | |

### RULE 7.2(A)(ii) SCHEDULE ACCOMPANYING
### MOTION OF DEFENDANT CENTER FOR CLAIMS
### RESOLUTION, INC. TO TRANSFER AND CONSOLIDATE WITH MDL 875

The motion requests the transfer of two actions, as follows:

RECEIVED
CLERK'S OFFICE
2001 MAY 10 P 5:00
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| Complete Name of Action | Court in Which Action is Pending | Civil Action No. | Judge Assigned to Action |
|---|---|---|---|
| Joseph Perez individually and as successor to Christine Perez, Lawrence Cahill as successor to George Cahill, Mabel Glosenger individually and as successor to Robert Glosenger, Louis Hamilton, Olga Hamilton, James Jestes, Marjorie Jestes, Curtis Joyner, Conny Lloyd, Charity Lloyd, Everett Murray, Oneta Murry, Lory Payne as successor to Earl Palmer, James Pickle, Ruby Pickle, Susan Pope individually and as successor to Richard Pope, Janice Quigley individually and as successor to Arlen Quigley, Marjorie Smith individually and as successor to Bobby Smith, Marlowe Tolbertson and Shirley Tolbertson v. The Center for Claims Resolution and Does 1 to 10 | U.S. District Court for the Northern District of California, Oakland Division | No. C 01-1627 JCS | The Honorable Joseph C. Spero |
| Jake Allen, Jr., Milton Anderson, Willie Barnes, Moses Bell, Aubrey C. Belue, Willie Bennett (Dec.), Alvin Berkley (Dec.), Charley Bolden, Mose Bolden, Jr., Jimmie L. Bowdrey, James Boyles, T.C. Braboy, Charlie Bradley (Dec.), Frank H. Brooks, Curtis Brown, Robert Brown, Will A. Brown, Charlie B. Brown, Christine I. Brown, William Brown (Dec.), L.T. Bryant, Sylvester Bryant, Maxine L. Bussey, Eugene Cail, Frank A. Canada, Lindburgh Cannon, Theo Carbs, Rosie R. Carlton, Jessie L. Carter, Harold L. Caston, John Chapman, Verdell Christon, Willie J. Christon, George Clark, Jr. (Dec.), Clinton Cross, Myrtis I. Decaus, Julia Daniels, Doyle L. Daniels, Mary L. Daniels, Charles Davenport, Robert L. Davis, James A. Davis (Dec.), Levi Davis, Jr., Billy S. Dobbins, David A. Donham, Alonzo Dudley, Willie L. Duffin, Elizabeth Durastanti, Delbert Dyson, Eddie B. Eason, Allene Easterling, Gayle Easterling, Henry Edwards, Jr., Ester Ellis, Jerry L. Ellis, Maxine English, B.S. Ephrian, Leon Epson, Sr., Leroy Esco, Avanelle M. Evans, Helen W. Evans, Henderson Fields, L.C. Flowers, | U.S. District Court for the Northern District of Mississippi, Greenville Division | No. 4:00-CV-225-P-A | The Honorable W. Allen Pepper, Jr. |

| Complete Name of Action | Court in Which Action is Pending | Civil Action No. | Judge Assigned to Action |
|---|---|---|---|
| Walter Warfield, Charlie J. Washington, Percy L. Wells, Sr., Lester Williams, Arthur L. Williams, Willie L. Williams, Charles O. Williams, William P. Winters, Vane Wolfe, Robert L. Woodard, James R. Woods (Dec.), John J. Worbington (Dec.), Malcolm Wynn, Sr., Tony Yales, Jr., Mary Young, William Young v. Center for Claims Resolution, Inc., A.P. Green, Inc., Amchem Products, Inc., Armstrong World Industries, Inc., Asbestos Claims Management Corporation, CertainTeed Corporation, C.E. Thurston & Sons, Inc., Dana Corporation, Ferodo America, Inc., Flexitallic, Inc., GAF Corporation, I.U. North America, Inc., Maremont Corporation, National Service Industries, Inc., Nosroc Corporation, Pfizer, Inc., Quigley Company, Inc., Shook & Fletcher Insulation Co., T&N plc, Union Carbide Corporation, United States Gypsum Company, Wells, Moore, Simmons & Hubbard, PLLC, Samuel J. Heyman | | | |

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 17 2001

## PROOF OF SERVICE

FILED
CLERK'S OFFICE

    I hereby certify that copies of the foregoing Motion of Defendant the Center for Claims Resolution to Transfer and Consolidate with MDL 875 and supporting documents were served on May 10, 2001 by first-class mail on all counsel listed on the attached Panel Service List, as well as upon the following persons:

Clerk of the Court
United States District Court
Northern District of California
U.S. Courthouse
450 Golden Gate Avenue
P.O. Box 36060
San Francisco, CA  94102-3489

Thomas E. Vaughn
Allen, Vaughn, Cobb, & Hood, P.A.
P.O. Drawer 240
Gulfport, MS 39502-0240

Clerk of the Court
United States District Court
Northern District of Mississippi
Post Office Drawer 726
Aberdeen, MS 39730

Jeffrey P. Hubbard
Wells, Moore, Simmons, &
  Hubbard, PLLC
P.O. Box 1970
Jackson, MS 39215-1970

Dean A. Hanley
Paul & Hanley, LLP
4905 Central Ave., Ste. 200
Richmond, CA  94804

William B. Kirksey
Kirksey & Associates
P.O. Box 33
Jackson, MS 39205-0033

Joel J. Henderson
Henderson & Dantone
P.O. Box 778
Greenville, MS 38702-0778

Michael T. Lewis
Pauline S. Lewis
P.O. Box 1209
Cleveland, MS 38614-1600

Gerald H. Jacks
Jacks, Adams, & Westerfield
P.O. Box 1209
Cleveland, MS 38743-1209

Richard M. Wyner

May-15-2001  11:39     From-SHEA GARDNER                2027753074              T-372   P.006/008   F-115

These are the names of the counsel identified on the service list for the Motion of
Defendant Center for Claims Resolution, Inc. to Transfer and Consolidate with MDL 875 in
<u>Perez, et al.</u> v. <u>The Center for Claims Resolution, et al.</u>, No. C-01-1627 JCS (N.D. Cal.), and
<u>Young, et al.</u> v. <u>The Center for Claims Resolution, et al.</u>, No. 4:00-CV-225-P-A (N.D. Miss.).

Thomas E. Vaughn
Allen, Vaughn, Cobb, & Hood, P.A.
P.O. Drawer 240
Gulfport, MS 39502-0240
*Counsel for Defendant A.P Green in <u>Young</u>*

William B. Kirksey
Kirksey & Associates
P.O. Box 33
Jackson, MS 39205-0033
*Counsel for Defendant GAF
  Corporation in <u>Young</u>*

Jeffrey P. Hubbard
Wells, Moore, Simmons, &
Hubbard, PLLC
P.O. Box 1970
Jackson, MS 39215-1970
*Counsel for Defendant Wells, Moore,
  Simmons, & Hubbard, PLLC in <u>Young</u>*

Dean A. Hanley
Paul & Hanley, LLP
4905 Central Ave., Ste. 200
Richmond, CA  94804
*Counsel for Plaintiffs in <u>Perez</u>*

Joel J. Henderson
Henderson & Dantone
P.O. Box 778
Greenville, MS 38702-0778
*Counsel for Plaintiffs in <u>Young</u>*

Michael T. Lewis
Pauline S. Lewis
P.O. Box 1209
Cleveland, MS 38614-1600
*Counsel for Plaintiffs in <u>Young</u>*

Gerald H. Jacks
Jacks, Adams, & Westerfield
P.O. Box 1209
Cleveland, MS 38743-1209
*Counsel for Defendant Samuel J. Heyman in <u>Young</u>*

May-16-2001  08:24    From-SHEA GARDNER                    2027753074              T-986  P.003/004  F-135

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

## **SUPPLEMENTAL CERTIFICATE OF SERVICE**

MAY 1 7 2001

FILED
CLERK'S OFFICE

      I hereby certify that on this 16th day of May, 2001, I caused copies of the above-referenced Motion to be served upon the following by first-class mail:

Marcy L. Bryan
Forman, Perry, Watkins, Krutz & Tardy, PLLC
1200 One Jackson Place
188 E. Capitol Street
Jackson, Mississippi 39201
    *Counsel for Defendants Center for Claims Resolution, Inc., Amchem Products, Inc., Dana Corporation, CertainTeed Corporation, Ferodo America, Inc., Flexitallic, Inc., I U North America, Inc., Maremont Corporation, National Service Industries, Inc., Nosroc Corporation, Pfizer, Inc., Quigley Company, Inc., Shook & Fletcher Insulation Co., T&N plc, Union Carbide Corporation, and United States Gypsum Company, Wells, Moore, Simmons & Hubbard, PLLC in Young*

Thomas E. Vaughn
Allen, Vaughn, Cobb, & Hood, P.A.
P.O. Drawer 240
Gulfport, MS 39502-0240
    *Counsel for Defendant A P Green in Young*

Frank S Thackston, Jr.
Lake Tindall, LLP
Post Office Box 918
Greenville, Mississippi 38702-0918
    *Counsel for Defendant GAF Corporation in Young*

Benjamin E. Griffith
Griffith & Griffith
123 South Court Street
Post Office Box 1680
Cleveland, MS 38732-1680
    *Counsel for Defendant Samuel Heyman in Young*

Edward Houff
Church & Houff, P.A.
The B&O Building
Suite 600
2 North Charles Street
Baltimore, MD 21201
    *Counsel for Defendant Armstrong World Industries, Inc. in Young*

Adam M. Chud

JUDICIAL PANEL ON MULTIDISTRICT LITIGATION                              April 06, 2001


DOCKET: 875 - In re Asbestos Products Liability Litigation (No. VI)
STATUS: Transferred


TRANSFEREE INFORMATION
   Dist: PAE
   Judge: Weiner, Charles R.
   Date: 07/29/91


                                                                  Page:      1

| COUNSEL | PHONE<br>FAX | DESCRIPTION |
| --- | --- | --- |
| Locks, Gene<br>Greitzer & Locks<br>1500 Walnut Street<br>Philadelphia, PA 19102 | (215) 893-0100 | Pltfs. Liaison Counsel |
| Binzley, Richard C.<br>Thompson, Hine & Flory<br>127 Public Square<br>3900 Key Center<br>Cleveland, OH 44114 | (216) 566-5579<br>(216) 566-5583 | Lead Counsel for Defts. in the Seamen Cases |
| Cass, Edward J.<br>Gallagher, Sharp, Fulton & Norman<br>Bulkley Building<br>7th Floor<br>1501 Euclid Avenue<br>Cleveland, OH 44115 | (216) 241-5310 | Counsel for the Goodall Defendants. |
| Damico, David A.<br>Burns, White & Hickton<br>2400 Fifth Avenue Place<br>120 Fifth Avenue<br>Pittsburgh, PA 15222 | (412) 394-2500 | Fela Deft. |
| Forceno, Raymond P.<br>Forceno & Hannon<br>Philadelphia Bourse Building<br>Suite 1000<br>Independence Mall East<br>Philadelphia, PA 19106 | (215) 732-1630 | Fela Pltfs. |
| Furman, Ellen B.<br>Goldfein & Joseph<br>1600 Market Street<br>33rd Floor<br>Philadelphia, PA 19103 | (215) 979-8200<br>(215) 979-8201 | National Counsel |
| Hanson, Susan M.<br>Stich, Angell, Kreidler & Muth, P.A.<br>The Crossings, Suite 120<br>250 2nd Avenue South<br>Minneapolis, MN 55401 | (612) 333-6251 | National Counsel |

JUDICIAL PANEL ON MULTIDISTRICT LITIGATION                                    April 06, 2001

(0 Liaison Counsel Continued)

Page:        2

| COUNSEL | PHONE FAX | DESCRIPTION |
|---|---|---|
| Landin, David C.<br>Hunton & Williams<br>Riverfront Plaza<br>East Tower<br>951 East Byrd Street<br>Richmond, VA  23219 | (804) 788-8200<br>(804) 877-8218 | Peripheral Deft. |
| Motley, Ronald L.<br>Ness, Motley, Loadholt, Richardson & Poole<br>28 Bridgeside Blvd.<br>P.O. Box 1792<br>Mt. Pleasant, SC  29465 | (843) 216-9000 | Pltfs. Liaison Counsel |
| Powell, Donald A.<br>Buckingham, Doolittle & Burroughs<br>50 South Main Street<br>P.O. Box 1500<br>Akron, OH  44309 | (216) 376-5300 | National Counsel |
| Repcheck, John J.<br>Marks, O'Neill<br>3200 Gulf Tower<br>707 Grant Street<br>Pittsburgh, PA  15219 | (412) 391-6171 | Peripheral Deft. |
| Roven, John D.<br>John Roven & Associates<br>2190 North Loop West<br>Suite 410<br>Houston, TX  77018 | (713) 465-8522<br>(713) 465-3658 | Fela pltfs. |
| Schuster, Richard D.<br>Vorys, Sater, Seymour & Pease, LLP<br>52 East Gay Street<br>P.O. Box 1008<br>Columbus, OH  43216 | (614) 464-6439 | National Coordinating Counsel for BFGoodrich Co. |
| Spinelli, Robert N.<br>Kelley, Jasons, McGuire & Spinelli, L.L.P.<br>Centre Square West<br>15th Floor<br>Philadelphia, PA  19102 | (215) 854-0658<br>(215) 854-8434 | Defts. Liaison Counsel |
| Swickle, Robert E.<br>Jaques Admiralty Law Firm, P.C.<br>1370 Penobscot Building<br>Detroit, MI  48226 | (313) 961-1080 | National Counsel |
| Trevelise, Andrew J. | (215) 851-8250 | Defts. Liaison Counsel |

JUDICIAL PANEL ON MULTIDISTRICT LITIGATION                                    April 06, 2001

(0 Liaison Counsel Continued)

                                                                         Page:      3

| COUNSEL | PHONE | |
|---|---|---|
| | FAX | DESCRIPTION |

Reed, Smith, Shaw & McClay
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103


Selman, Neil                              National Counsel
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA  90025


Weston II., James K.          (319) 363-4040  National counsel for Raymark Industries. Inc. per letter dated
Tom Riley Law Firm                            4/16/97
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA  52406




NOTE: Liaison Counsel Are NOT Listed In Alphabetical Order

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 1 7 2001

FILED
CLERK'S OFFICE

US OFFICE PRODUCTS

1  Dean A. Hanley, Esq. (State Bar No. 169507)
   PAUL & HANLEY, LLP
2  4905 Central Avenue, Suite 200
   Richmond, California 94804
3  Telephone:    (510) 559-9980
   Facsimile:    (510) 559-9970
4

ORIGINAL
FILED

APR 2 5 2001

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

5  Attorney for Plaintiffs

6

7                UNITED STATES DISTRICT COURT

8                     NORTHERN DISTRICT

9                      OAKLAND DIVISION

10

11  JOSEPH PEREZ, individually and as            ) Case No. C 01 1627 JCS
    successor-in-interest to CHRISTINE PEREZ,    )
12  LAWRENCE CAHILL as successor-in-             ) VERIFIED COMPLAINT FOR
    interest to GEORGE G. CAHILL, MABEL          ) DAMAGES
13  GLOSENGER, individually and as successor-    ) (Breach of Contract)
    in-interest to ROBERT L. GLOSENGER,          )
14  LOUIS HAMILTON AND OLGA                      )
    HAMILTON, JAMES D. JESTES AND                )
15  MARJORIE JESTES, CURTIS JOYNER,              )
    CONNY A. LLOYD AND CHARITY E.                )
16  LLOYD, EVERETT FAY MURRAY AND                )
    ONETA MURRAY, LORY L. PAYNE as               )
17  successor in interest to EARL K. PALMER,     )
    JAMES E. PICKLE AND RUBY A. PICKLE,          )
18  SUSAN P. POPE, individually and as           )
    successor-in-interest to RICHARD R. POPE,    )
19  JANICE R. QUIGLEY, individually and as       )
    successor-in-interest to ARLEN D.            )
20  QUIGLEY, MARJORIE SMITH, individually        )
    and as successor-in-interest to BOBBY R.     )
21  SMITH,  MARLOWE G. TOLBERTSON                )
    AND SHIRLEY A. TOLBERTSON                    )
22                                               )
23          Plaintiffs,                          )
                                                 )
24                                               )
    vs.                                          )
25                                               )
                                                 )
26  THE CENTER FOR CLAIMS                        )
    RESOLUTION, DOES 1 TO 10                     )
27                                               )
            Defendants.                          )
28  _____          )

ARB

1

2 Plaintiffs allege:

3 <div align="center">**FIRST CAUSE OF ACTION**</div>

4 PLAINTIFF MABEL GLOSENGER, INDIVIDUALLY AND AS SUCCESSOR IN

5 INTEREST TO ROBERT L. GLOSENGER, PLAINTIFF LORY L. PAYNE, AS SUCESSOR-

6 IN-INTEREST TO EARL K. PALMER, PLAINTIFF JOSEPH PEREZ, INDIVIDUALLY AND

7 AS SUCCESSOR-IN-INTEREST TO CHRISTINE PEREZ, PLAINTIFF SUSAN P. POPE,

8

9 INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO RICHARD R. POPE, AND

10 PLAINTIFFS LOUIS HAMILTON, OLGA HAMILTON, JAMES D. JESTES, MARJOIRE

11 JESTES, CURTIS JOYNER, EVERETT FAY MURRAY, ONETA MURRAY, JAMES E.

12 PICKLE, RUBY A. PICKLE, MARLOWE G. TOLBERTSON AND SHIRLEY A.

13 TOLBERTSON COMPLAIN OF DEFENDANT FOR BREACH OF CONTRACT AS

14 FOLLOWS:

15 1. Plaintiff LAWRENCE CAHILL, individually and as successor-in-interest to GEORGE

16 G. CAHILL, plaintiff JOSEPH PEREZ, individually and as successor-in-interest to CHRISTINE

17 PEREZ, plaintiff SUSAN P. POPE, individually and as successor-in-interest to RICHARD R.

18 POPE, plaintiff JANICE R. QUIGLEY, individually and as successor-in-interest to ARLEN D.

19 QUIGLEY, plaintiff MARJORIE SMITH, individually and as successor-in-interest to BOBBY

20 R. SMITH, and plaintiffs LOUIS HAMILTON, OLGA HAMILTON, CURTIS JOYNER,

21

22 CONNY A. LLOYD, CHARITY E. LLOYD, MARLOWE G. TOLBERTSON AND SHIRLEY

23 A. TOLBERTSON are citizens of the State of California.  Plaintiff MABEL GLOSENGER,

24 individually and as successor in interest to ROBERT L. GLOSENGER, is a citizen of the State

25 of Oregon.  Plaintiffs JAMES D. JESTES and MARJORIE JESTES are citizens of the State of

26 Arizona.  Plaintiffs EVERETT FAY MURRAY and ONETA MURRAY are citizens of the State

27 of Texas.  Plaintiff LORY L. PAYNE, as successor-in-interest to EARL K. PALMER, is a

28

1    citizen of the State of Colorado.  Plaintiffs JAMES E. PICKLE and RUBY A. PICKLE are

2    citizens of the state of Arkansas.

3        2. Defendant The Center for Claims Resolution (hereinafter "CCR") is, and at all times

4    herein mentioned was,  a corporation incorporated under the laws of the State of Delaware and

5    having its principal place of business in the State of New Jersey.

6        3. The amount in controversy exceeds, exclusive of interests and costs, the sum specified

7    by 28 U.S.C. Sec. 1332.

8        4. Plaintiffs are ignorant of the true names and capacities of defendants sued herein as

9    DOES 1 to10, inclusive, and therefore sue these defendants by such fictitious names.  Plaintiffs

10   DOES 1 to10, inclusive, and therefore sue these defendants by such fictitious names.  Plaintiffs

11   will amend this complaint to allege their true names and capacities when ascertained.

12       5. At the time that each of the plaintiffs' settlements referenced herein was negotiated and

13   concluded, James McFadden was a CCR employee authorized to settle asbestos personal injury

14   and wrongful death claims.

15       6. On January 28, 1999 plaintiffs JAMES JESTES and MARJORIE JESTES filed a

16   complaint for asbestos-related personal injury against certain itemized defendants represented by

17   defendant CCR.  On February 19, 1999 plaintiff JOSEPH PEREZ filed a complaint for asbestos-

18   related personal injury against certain itemized defendants represented by defendant CCR.  On

19   June 11, 1999, plaintiff CURTIS JOYNER filed a complaint for asbestos-related personal injury

20   against certain itemized defendants represented by defendant CCR.  On September 24, 1999,

21   RICHARD R. POPE and plaintiff SUSAN P. POPE filed a complaint for asbestos-related

22   personal injury against certain itemized defendants represented by defendant CCR.  On

23   November 23, 1999 plaintiffs EVERETT FAY MURRAY AND ONETA MURAY filed a

24   complaint for asbestos-related personal injury against certain itemized defendants represented by

25   defendant CCR.  On Nobember 30, 1999 EARL K. PALMER, whose successor-in-interest is

26   LORY L. PAYNE, filed a complaint for asbestos-related personal injury against certain itemized

TITLE
S:\Client\Defendant\CCR\CCRcomplaint.wpd

1  defendants represented by defendant CCR. On December 29, 1999 CHRISTINE PEREZ, whose

2  successor in interest is JOSEPH PEREZ, filed a complaint for asbestos-related personal injury

3  against certain itemized defendants represented by defendant CCR. On January 28, 2000

4  ROBERT L. GLOSENGER and plaintiff MABEL GLOSENGER filed a complaint for asbestos-

5  related personal injury against certain itemized defendants represented by defendant CCR.  On

6  February 24, 2000 plaintiffs MARLOWE G. TOLBERTSON and SHIRLEY A. TOLBERTSON

7  filed a complaint for asbestos-related personal injury against certain itemized defendants

8  represented by defendant CCR.  On March 8, 2000, plaintiffs LOUIS HAMILTON and OLGA

9  HAMILTON filed a complaint for asbestos-related personal injury against certain itemized

10 defendants represented by defendant CCR. On March 24, 2000 plaintiffs JAMES E. PICKLE and

11 RUBY A. PICKLE filed a complaint for asbestos-related personal injury against certain itemized

12 defendants represented by defendant CCR.

13      7. On or about August 9, 2000, Dean A. Hanley, on behalf of CHRISTINE PEREZ,

14 ROBERT L.GLOSENGER, RICHARD POPE, plaintiff LORY L. PAYNE, who is successor-in-

15 interest to EARL K. PALMER, and plaintiffs JOSEPH PEREZ, MABEL GLOSENGER,

16 SUSAN P. POPE, JAMES JESTES, MARJORIE JESTES, CURTIS JOYNER, MARLOWE G.

17 .TOLBERTSON, SHIRLEY A. TOLBERTSON, LOUIS HAMILTON, OLGA HAMILTON,

18 JAMES E. PICKLE AND RUBY A. PICKLE, entered into an oral agreement whereby the

19 plaintiffs agreed to drop their lawsuits against the companies represented by defendant CCR, and,

20 in exchange, defendant CCR agreed to pay the sum of $1,760,000.00 to Paul and Hanley, LLP, in

21 trust for the  plaintiffs, on behalf of the certain itemized defendants represented by CCR.

22      8. Plaintiffs entered into the agreement with CCR, not with individual defendants, and

23 they contracted to be paid by CCR rather than by individual defendants.

24      9. The settlement agreement did not include any allocation of liability among the

25 companies represented by CCR.

26

27

28

TITLE
S:\Clients\Defendants\CCR\CCRcomplaint.wpd

10. CHRISTINE PEREZ, ROBERT L.GLOSENGER, RICHARD POPE, plaintiff LORY L. PAYNE, as successor-in-interest to EARL K. PALMER, and plaintiffs JOSEPH PEREZ, MABEL GLOSENGER, SUSAN P. POPE, JAMES JESTES, MARJORIE JESTES, CURTIS JOYNER, MARLOWE G. .TOLBERTSON, SHIRLEY A. TOLBERTSON, LOUIS HAMILTON, OLGA HAMILTON, JAMES E. PICKLE AND RUBY A. PICKLE have performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the contract, including executing compromise and release agreements and dismissing their lawsuits with prejudice as to all companies  represented by defendant CCR.

11. EARL K. PALMER died on May 30, 2000, leaving plaintiff LORY L. PAYNE as his successor-in-interest.  ROBERT L. GLOSENGER died on August 17, 2000, leaving MABEL GLOSENGER as his successor-in-interest.  CHRISTINE PEREZ died on September 21, 2000, leaving JOSEPH PEREZ as her successor-in-interest.  RICHARD R. POPE died on January 30, 2001, leaving SUSAN P. POPE as his successor-in-interest.

12. Defendant has failed and refused, and continues to fail and refuse, to perform the conditions of the contract on its part in that it refuses to pay the full amount agreed upon in the contract.

13. On December 21, 2000, defendant CCR paid $1,105,601.36 instead of the promised $1,760,000.00 for CHRISTINE PEREZ, ROBERT L.GLOSENGER, RICHARD POPE, plaintiff LORY L. PAYNE, as successor-in-interest to EARL K. PALMER, and plaintiffs JOSEPH PEREZ, MABEL GLOSENGER, SUSAN P. POPE, JAMES JESTES, MARJORIE JESTES, CURTIS JOYNER, MARLOWE G. .TOLBERTSON, SHIRLEY A. TOLBERTSON, LOUIS HAMILTON, OLGA HAMILTON, JAMES E. PICKLE AND RUBY A. PICKLE.

(Please see attached exhibit A.)

///

TITLE

## SECOND CAUSE OF ACTION

PLAINTIFF JANICE S. QUIGLEY, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO ARLEN D. QUIGLEY, COMPLAINS OF DEFENDANT FOR BREACH OF CONTRACT AS FOLLOWS:

14. Plaintiff incorporates by reference paragraphs 1 through 5, inclusive, as though set in full.

15. On March 7, 2000 ARLEN D. QUIGLEY and plaintiff JANICE R. QUIGLEY filed a complaint for asbestos-related personal injury against certain itemized defendants represented by defendant CCR.

16. On or about  June 28, 2000, Dean A. Hanley, on behalf of  ARLEN D. QUIGLEY and plaintiff JANICE R. QUIGLEY, and James McFadden, on behalf of CCR, entered into an oral agreement whereby the QUIGLEY plaintiffs agreed to drop their lawsuits against the companies represented by defendant CCR, and, in exchange, defendant CCR agreed to pay the sum of $75,000.00 to Paul and Hanley, LLP, in trust for the QUIGLEY plaintiffs, on behalf of the certain itemized defendants represented by CCR.

17. Plaintiffs entered into the agreement with CCR, not with individual defendants, and they contracted to be paid by CCR rather than by individual defendants.

18. The settlement agreement did not include any allocation of liability among the companies represented by CCR.

19. ARLEN D. QUIGLEY and plaintiff JANICE R. QUIGLEY  have performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the contract, including executing a compromise and release agreement and dismissing their lawsuit with prejudice as to all companies  represented by defendant CCR.

20. ARLEN D. QUIGLEY died on August 16, 2000, leaving plaintiff JANICE R.

1  QUIGLEY as his successor-in-interest.

2    21. Defendant has failed and refused, and continues to fail and refuse, to perform the

3  conditions of the contract on its part in that it refuses to pay the full amount agreed upon in the

4  contract.

5    22. On January 5, 2001, defendant CCR paid $62,039.57 instead of the promised

6  $75,000.00 for plaintiff JANICE D. QUIGLEY, individually and as successor-in-interest to

7  ARLEN D. QUIGLEY. (Please see attached exhibit B.)

8

9                              **THIRD CAUSE OF ACTION**

10     PLAINTIFFS CONNY A. LLOYD AND CHARITY E. LLOYD COMPLAIN OF

11  DEFENDANT FOR BREACH OF CONTRACT AS FOLLOWS:

12     23. Plaintiffs  incorporate by reference paragraphs 1 through 5, inclusive, as though set in

13  full.

14     24. On April 20, 2000 plaintiffs CONNY A. LLOYD AND CHARITY E. LLOYD filed a

15  complaint for asbestos-related personal injury against certain itemized defendants represented by

16

17  defendant CCR.

18     25. On or about November 7, 2000, Dean A. Hanley, on behalf of plaintiffs CONNY A.

19  LLOYD and CHARITY E. LLOYD,  and James McFadden, on behalf of CCR, entered into an

20  oral agreement whereby the LLOYD plaintiffs agreed to drop their lawsuits against the

21  companies represented by defendant CCR, and, in exchange, defendant CCR agreed to pay the

22  sum of $120,000.00 to Paul and Hanley, LLP, in trust for the LLOYD plaintiffs, on behalf of the

23  certain itemized defendants represented by CCR.

24     26. Plaintiffs entered into the agreement with CCR, not with individual defendants, and

25  they contracted to be paid by CCR rather than by individual defendants.

26

27     27. The settlement agreement did not include any allocation of liability among the

28  companies represented by CCR.

TITLE

28. Plaintiffs CONNY A. LLOYD AND CHARITY E. LLOYD have performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the contract, including executing a compromise and release agreement and dismissing their lawsuit with prejudice as to all companies represented by defendant CCR. (Please see attached exhibit C.)

29. Defendant has failed and refused, and continues to fail and refuse, to perform the conditions of the contract on its part in that it refuses to pay the full amount agreed upon in the contract.

30. On February 2, 2001, defendant CCR paid $68,990.56 instead of the promised $120,000.00 for plaintiffs CONNY A. LLOYD and CHARITY E. LLOYD.

### FOURTH CAUSE OF ACTION

PLAINTIFF MARJORIE SMITH, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO BOBBY R. SMITH, COMPLAINS OF DEFENDANT FOR BREACH OF CONTRACT AS FOLLOWS:

31. Plaintiff incorporates by reference paragraphs 1 through 5, inclusive, as though set in full.

32. On April 20, 2000 BOBBY R. SMITH and plaintiff MARJORIE SMITH filed a complaint for asbestos-related personal injury against certain itemized defendants represented by defendant CCR.

33. On or about November 16, 2000, Dean A. Hanley, on behalf of BOBBY R. SMITH and plaintiff MARJORIE SMITH, and James McFadden, on behalf of CCR, entered into an oral agreement whereby the SMITH plaintiffs agreed to drop their lawsuits against the companies represented by defendant CCR, and, in exchange, defendant CCR agreed to pay the sum of $85,000.00 to Paul and Hanley, LLP, in trust for the SMITH plaintiffs, on behalf of the certain itemized defendants represented by CCR.

TITLE

34. Plaintiffs entered into the agreement with CCR, not with individual defendants, and they contracted to be paid by CCR rather than by individual defendants.

35. The settlement agreement did not include any allocation of liability among the companies represented by CCR.

36. BOBBY R. SMITH and plaintiff MARJORIE SMITH have performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the contract, including executing a compromise and release agreement and dismissing their lawsuit with prejudice as to all companies represented by defendant CCR. (Please see attached exhibit D.)

37. BOBBY R. SMITH died on December 23, 2000, leaving plaintiff MARJORIE SMITH as his successor-in-interest.

38. Defendant has failed and refused, and continues to fail and refuse, to perform the conditions of the contract on its part in that it refuses to pay the full amount agreed upon in the contract.

39. On January 5, 2001, defendant CCR paid $48,868.31 instead of the promised $85,000.00 for plaintiff MARJORIE SMITH, individually and as successor-in-interest to BOBBY R. SMITH.

## FIFTH CAUSE OF ACTION

PLAINTIFF LAWRENCE CAHILL, AS SUCCESSOR-IN-INTEREST TO GEORGE G. CAHILL, COMPLAINS OF DEFENDANT FOR BREACH OF CONTRACT AS FOLLOWS:

40. Plaintiff incorporates by reference paragraphs 1 through 5, inclusive, as though set in full.

41. On March 8, 2000 GEORGE G. CAHILL, whose successor-in-interest is plaintiff LAWRENCE CAHILL, filed a complaint for asbestos-related personal injury against certain

1  itemized defendants represented by defendant CCR.

2      42. On or about August 25, 2000, Dean A. Hanley, on behalf of GEORGE G. CAHILL,

3  and James McFadden, on behalf of CCR, entered into an oral agreement whereby CAHILL

4  agreed to drop his lawsuit against the companies represented by defendant CCR, and, in

5  exchange, defendant CCR agreed to pay the sum of $35,000.00 to Paul and Hanley, LLP, in trust

6  for CAHILL, on behalf of the certain itemized defendants represented by CCR.

7

8      43. The plaintiff entered into the agreement with CCR, not with individual defendants,

9  and  contracted to be paid by CCR rather than by individual defendants.

10      44. The settlement agreement did not include any allocation of liability among the

11  companies represented by CCR.

12      45.  GEORGE G. CAHIL and plaintiff LAWRENCE CAHILL  have performed all

13  conditions, covenants, and promises required on their part to be performed in accordance with

14  the terms and conditions of the contract, including executing a compromise and release

15  agreement and dismissing CAHILL'S lawsuit with prejudice as to all companies  represented by

16  defendant CCR. (Please see attached exhibit E.)

17

18      46. GEORGE G. CAHILL died on December 11, 2000, leaving plaintiff LAWRENCE

19  CAHILL as his successor-in-interest.

20      47. Defendant has failed and refused, and continues to fail and refuse, to perform the

21  conditions of the contract on its part in that it refuses to pay the full amount agreed upon in the

22  contract.

23      48. On March 7, 2001, defendant CCR paid $20,122.24 instead of the promised

24  $35,000.00 for plaintiff LAWRENCE CAHILL, successor-in-interest to GEORGE G. CAHILL.

25

26

27  ///

28  ///

TITLE

WHEREFORE, plaintiffs pray judgment against defendant as follows:

1. That defendant be ordered to pay the remaining money due under the settlement agreements as compensatory damages totaling $702,261.47, which can be broken down as follows:

| | |
|---|---|
| Lawrence Cahill | $ 14,877.76 |
| Mabel Glosenger | $ 11,959.29 |
| Louis Hamilton and Olga Hamilton | $  7,413.28 |
| James D. Jestes and Marjorie Jestes | $ 19,113.67 |
| Curtis Joyner | $ 22,245.77 |
| Conny A. Lloyd and Charity Lloyd | $ 51,009.44 |
| Everret Fay Murray and Oneta Murray | $ 61,636.41 |
| Lory L. Payne for Earl K. Palmer | $  1,530.66 |
| Joseph Perez for Christine Perez | $ 36,179.22 |
| Joseph Perez individually | $ 45,563.05 |
| James E. Pickle and Ruby A. Pickle | $ 21,553.22 |
| Susan P. Pope | $ 44,633.26 |
| Janice R.Quigley | $ 12,960.43 |
| Marjorie Smith | $ 36,131.69 |
| Marlowe G. Tolbertson and Shirley A. Tolbertson | $382,570.81 |

2. For costs of suit herein incurred;

3. Prejudgment interest from December 21, 2000 for plaintiffs GLOSENGER, HAMILTON, JESTES, JOYNER, MURRAY, PAYNE, PERZ, PICKLE, POPE and TOLBERTSON;

4. Prejudgment interest from January 5, 2001 for plaintiff QUIGLEY;

TITLE

1    5. Prejudgement interest from February 2, 2001 for plaintiffs LLOYD;

2    6. Prejudgment interest from February 15, 2001 for plaintiff SMITH;

3    7. Prejudgment interest from March 7, 2001 for plaintiff CAHILL;

4    8. Reasonable attorneys' fees according to proof,

5    9. For such other and further relief as the court may deem proper.

6

7

8    DATED: 4/24/01            PAUL & HANLEY, LLP

9

10                      By:_____

11                          Dean A. Hanley, Esq.
                           Attorney for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TITLE
S:\Clients\Defendants\CCR\CCRcomplaint.wpd

## VERIFICATION

I, Dean A. Hanley, am the attorney for each of the plaintiffs in the above-entitled action. Each of the plaintiffs is absent from Contra Costa County, where I maintain my office.  I have read the complaint and I am informed and believe the matters therein to be true, and on that ground allege that the matters stated therein are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed this twenty-fourth day of April, 2001 in Richmond, California.

DEAN A. HANLEY

TITLE

**EXHIBIT "A"**

PAGE.07

THIS CHECK IS VOID WITHOUT A RED BACKGROUND AND AN ARTIFICIAL WATERMARK ON THE BACK - HOLD AT ANGLE TO VIEW

PNC BANK, N.A
NEW JERSEY
METROPARK PLAZA - EDISON, NJ, 08818
55.277.312

64652

## CENTER FOR CLAIMS RESOLUTION
### INDEMNITY ACCOUNT
### VOID AFTER 180 DAYS

| DATE | AMOUNT |
|------|--------|
| 12/21/2000 | $***1,105,601.36 |

One Million One Hundred Five Thousand Six Hundred One   And 36/100 Dollars

PAY
TO THE
ORDER
OF

LAW OFFICES OF PAUL & HANLEY AS ATTORNEYS FOR
11 PLAINTIFFS

*Joseph J. Jackson*

SIGNATURE HAS A COLORED BACKGROUND - BORDER CONTAINS MICROPRINTING

⑈064652⑈ ⑆031202770⑆ 8009244104⑈



PAGE.05

*Exhibit*
*A*

# CENTER FOR CLAIMS RESOLUTION

504 CARNEGIE CENTER • 2nd FLOOR • PRINCETON, NJ 08540
MAILING ADDRESS: CN 5319, PRINCETON, NJ 08543-5319

December 22, 2000

Dean A. Hanley, Esq.
Paul & Hanley
5716 Corsa Ave., Ste. 203
Westlake Village, CA 91362

Dear Dean:

As you are aware, on December 6, 2000, Armstrong World Industries, Inc. filed a petition under the federal Bankruptcy Code, and therefore has stopped paying its share of previously-negotiated settlements.

The CCR and its members have consistently understood and taken the position that under settlement agreements negotiated by the CCR on behalf of its then-member companies, each member company is liable under the settlement only for its share of the settlement as calculated by the CCR, and that no CCR member is liable for any other CCR member's settlement share. However, in certain recent proceedings arising from GAF's refusal to pay its share of previously-negotiated settlements, plaintiffs have sought to hold other CCR member companies liable for GAF's unpaid share of the settlement. This was contrary to what we believe to have been the shared understanding that each member is responsible only for its own settlement share, and also contrary to the fundamental purposes of the settlements (including avoiding the risks of joint and several liability in the case).

In these circumstances, the CCR member companies other than Armstrong have no choice but to ensure that acceptance of their payment of funds under the settlement will be deemed, both by your clients and by the CCR member companies, to constitute full payment and satisfaction of all amounts due under the settlement by the CCR member companies other than Armstrong.

Accordingly, pursuant to the settlement negotiated by the CCR on behalf of its then-member companies who were defendants and your firm on behalf of its clients, enclosed please find a check in the amount of $1,105,601.36. This check constitutes full and final payment of the amounts due under the settlement for each of the claims on the enclosed list by each of the CCR member companies other than Armstrong. This check is tendered in full settlement of any and all claims of any kind by your clients against all the CCR member companies other than Armstrong, including (but not limited to) claims for unpaid amounts under the settlement. Negotiation of the check will constitute a full and complete accord and satisfaction of all obligations owed to your clients by the CCR member companies other than Armstrong, and will forever release and discharge any and all claims against those member companies.

If you have any questions concerning this matter, please contact me at.

Very truly yours,

Jim McFadden

Enlcosures

**EXHIBIT "B"**

PAGE.02

 

Law Firm:                PAUL

Total Number of Plaintiffs:  1

Check Number:            64720

| Claimant Name | SS Number | CCR Settlement Amount | AWI Portions | Net Amount Paid |
|---------------|-----------|-----------------------|--------------|-----------------|
| QUIGLEY, ARLEN | 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 | 75,000.00 | 12,960.43 | 62,039.57 |

PAGE.03

THIS CHECK IS VOID WITHOUT A ___ & RED BACKGROUND AND AN ARTIFICIAL WATERMARK O ___ BACK - HOLD AT ANGLE TO VIEW

PNC BANK, N.A.
NEW JERSEY
METROPARK PLAZA, EDISON, NJ. 08818
55-277-312

64720

## CENTER FOR CLAIMS RESOLUTION
### INDEMNITY ACCOUNT
### VOID AFTER 180 DAYS

| DATE | AMOUNT |
|------|--------|
| 01/04/2001 | $*****62,039.57 |

Sixty-Two Thousand Thirty-Nine  And 57/100 Dollars

PAY
TO THE
ORDER
OF

PAUL & HANLEY AS ATTORNEYS FOR 1 PLAINTIFF.
ARLEN D. QUIGLEY

Joseph J. Jordan

SIGNATURE HAS A COLORED BACKGROUND · BORDER CONTAINS MICROPRINTING

⑈064720⑈ ⑆031202770⑆ 8009244104⑈

FULL SATISFACTION AND DISCHARGE
OF ALL CLAIMS AGAINST ALL CCR
COMPANIES OTHER THAN
Armstrong

PAGE.05

 

APR 16 2001 11:10

# CENTER FOR CLAIMS RESOLUTION

504 CARNEGIE CENTER • 2nd FLOOR • PRINCETON NJ 08540
MAILING ADDRESS: CN 5319 PRINCETON NJ 08543-5319

January 5, 2001

Dean A. Hanley, Esquire
Paul & Hanley
5716 Corsa Ave.
Westlake Village, CA 91362

Dear Dean:

As you are aware, on December 6, 2000, Armstrong World Industries, Inc. filed a petition under the federal Bankruptcy Code, and therefore has stopped paying its share of previously-negotiated settlements.

The CCR and its members have consistently understood and taken the position that under settlement agreements negotiated by the CCR on behalf of its then-member companies, each member company is liable under the settlement only for its share of the settlement as calculated by the CCR, and that no CCR member is liable for any other CCR member's settlement share. However, in certain recent proceedings arising from GAF's refusal to pay its share of previously-negotiated settlements, plaintiffs have sought to hold other CCR member companies liable for GAF's unpaid share of the settlement. This was contrary to what we believe to have been the shared understanding that each member is responsible only for its own settlement share, and also contrary to the fundamental purposes of the settlements (including avoiding the risks of joint and several liability in the case).

In these circumstances, the CCR member companies other than Armstrong have no choice but to ensure that acceptance of their payment of funds under the settlement will be deemed, both by your clients and by the CCR member companies, to constitute full payment and satisfaction of all amounts due under the settlement by the CCR member companies other than Armstrong.

Accordingly, pursuant to the settlement negotiated by the CCR on behalf of its then-member companies who were defendants and your firm on behalf of its clients, enclosed please find a check in the amount of $62,039.57. This check constitutes full and final payment of the amounts due under the settlement for each of the claims on the enclosed list by each of the CCR member companies other than Armstrong. This check is tendered in full settlement of any and all claims of any kind by your clients against all the CCR member companies other than Armstrong, including (but not limited to) claims for unpaid amounts under the settlement. Negotiation of the check will constitute a full and complete accord and satisfaction of all obligations owed to your clients by the CCR member companies other than Armstrong, and will forever release and discharge any and all claims against those member companies.

If you have any questions concerning this matter, please contact me at.

Very truly yours,

Jim McFadden

Enlcosures

# **EXHIBIT "C"**

Case MDL No. 875   Document 3170   Filed 05/17/01   Page 51 of 159



2000268055
CASF

## COMPROMISE AND RELEASE

FOR AND IN CONSIDERATION of the sum of One Hundred Twenty Thousand Dollars and 00/100 ($120,000.00) to me in hand paid, receipt whereof is hereby acknowledged, I, CONNY ANTHONY LLOYD, Social Security No. 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, (hereinafter Releror) do for myself, my executors, administrators and assigns, fully and forever release and discharge the following: Amchem Products, Inc.; Armstrong World Industries, Inc.; C.E. Thurston and Sons, Incorporated; CertainTeed Corporation; Dana Corporation; I.U. North America, Inc.; Maremont Corporation; National Services Industries Inc.; Nosroc Corp.; Pfizer Inc; Quigley Company, Inc.; Shook & Fletcher Insulation Co.; T & N, plc; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company; the predecessors and successors of such firms, all of their successors and assigns, the agents, servants, employees and attorneys of such firms, and each of them (hereinafter "Releasees") of and from any and all claims, demands, actions or causes of actions, including without limitation, any future claim or claims of any of my heirs, administrators, executors or assigns or any other person, firm or corporation may or might have against them, or any of them, by reason of any damages or injuries whatsoever sustained by me and occasioned directly or indirectly from the beginning of time, without limitation, by reason of the events and circumstances of my disputed claims against said Releasees, or one or more of said Releasees, as alleged in my lawsuit, pending in the SUPERIOR COURT in SAN FRANCISCO COUNTY, CALIFORNIA - NORTH, DOCKET#: 311613.

This is intended as a full and complete release of all or any claims that I or any other person, firm, association or corporation may or might have against said Releasees only, and in accepting said sum I do so in full settlement of any and all such claims, and intend to and do hereby release all of said persons, firms, associations and corporations of any and from any and all liability of any nature whatsoever for all damage or injury to my person and property, specifically including all expenses to which I may have been put and also including all consequential damage to me on account of injuries to others, as well as for all consequences, effects and results of any such injury or damage, whether the same are now known or unknown to me, expected or unexpected by me or have already appeared to develop or may now be latent or may in the future appear to develop, and all rights under Section 1542 of the Civil Code are hereby expressly waived. Civil Code, Section 1542 states:

> "A general release does not extend to claims which
> the creditor does not know or suspect to exist in his
> favor at the time of executing the release, which if
> known by him must have materially affected his
> settlement with the debtor"

It is understood that this settlement is not an admission of any liability but is in compromise of a disputed claim and for said consideration I hereby assume the risk of any damages, injuries, death or disability which may now be latent or unexpected and I understand and agree that nothing contained in this document shall be construed or deemed an admission of wrongdoing or liability on the part of or by any party as to any of the claims or counterclaims which have been made or could have been made in this case. The parties further agree that this document shall not be admissible as evidence of any liability.

I, CONNY ANTHONY LLOYD, recognize that as a part of the settlement of my personal injury case, the Releasees wish to obtain releases and buy their peace with respect to potential claims that could be brought by my estate or my heirs should I die of asbestos related disease. It is my intention and desire to conclude a settlement in which Releasees will be released from any personal injury claim and also from any potential claim for wrongful death that might follow.

1

By this document I do two things. First, I express my honest opinion as to the lack of value of any potential claim my heirs might have. Second, I, on behalf of myself and my estate, agree to indemnify and hold harmless any Releasees against any claims presented in the future by said potential heirs. It is my wish and intention that should said heirs present a claim, my estate will upon tender undertake to defend said Releasees against such claim, and should such defense be unsuccessful, indemnify and hold harmless said Releasees against any judgment obtained by said heirs. I understand that this is a contractual undertaking on my part which is binding upon me and my estate and is given by me in return for fair and valuable consideration to wit, the agreement by Releasees in reliance, in part, upon this document, to pay me funds which I believe to be fair and reasonable in settlement of claims for my personal injury and potential wrongful death.

As a further consideration and inducement for this compromise settlement, Releasor agrees to hold harmless and indemnify said Releasees of and from any and all claims, demands, actions or causes of action, of subrogation asserted by any personal or legal entity which has or will in the future furnish, supply or pay benefits or anything of value, or any form of compensation to or for the Releasors or Releasor's heirs, executors or assigns, for any claimed expenses, detriment, or damages resulting to the Releasor or his said heirs, executors and assigns by reason of the promises hereof, and this instrument shall not operate as a retraxit nor otherwise affect any rights of Releasees.

I, CONNY ANTHONY LLOYD, also agree that as a part of the settlement if I am divorced or separated from my spouse, I will indemnify and hold harmless the Releasees from any and all claims that have been or may be made against them by my spouse, based upon, arising out of or as a consequence of CONNY ANTHONY LLOYD's exposure to asbestos and subsequent alleged injuries from exposure to asbestos.

As to my said pending action for damages, I direct that the same be dismissed with prejudice as to each of the Releasees forthwith.

If I, the Releasor, am a single person, I so affirm. If I, the Releasor, have no issue either of my body or by adoption, I so affirm.

But, if I am a married person or if I have issue whether of my body or by adoption, the signature below of said spouse, said issue or said minor, by and through the signature of a guardian ad litem appointed pursuant to California Code of Civil Procedure, Section 372, signifies each of their joinders in this compromise and Release Agreement and the surrender by each of them by reason of each of the injuries alleged in said action, for any and all causes now or in the future accrued or accruing, including without limitation, each cause of action for loss of consortium and for Releasor's alleged wrongful death in the event that Releasor dies directly or indirectly by reason of said injuries so alleged in each case

Approved as to form:

By: _____
    DEAN A. HANLEY, ESQ.
    Jerry M.J Paul

2

 

EACH OF THE UNDERSIGNED CERTIFY TO HAVING READ ALL OF THIS RELEASE AND CODE SECTIONS AND FULLY UNDERSTANDS ALL OF THE SAME, AND IN WITNESS THEREOF EXECUTED THIS RELEASE ON _Jan 15_ , AT _Beaumont_ STATE OF _California_

THE UNDERSIGNED AGREE, JOIN IN AND SUBSCRIBE TO THE FOREGOING AGREEMENT.

_Conne Anthony Lloyd_
CONNY ANTHONY LLOYD
Social Security No. 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

Subscribed and sworn to before me this _18th_ day of _January_, 2001.

_Kimbra K Stegge_
NOTARY PUBLIC

My Commission Expires: _4.26.03_

> KIMBERLY K. STELLJES
> Commission # 1217198
> Notary Public - California
> Riverside County
> My Comm. Expires Apr 26, 2003

_Charity E Lloyd_
CHARITY E. LLOYD
Social Security No. 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

Subscribed and sworn to before me this _18th_ day of _January_, 2001.

_Kimbra K Stegge_
NOTARY PUBLIC

My Commission Expires: _4.26.03_

> KIMBERLY K. STELLJES
> Commission # 1217198
> Notary Public - California
> Riverside County
> My Comm. Expires Apr 26, 2003

CAXXPIFL
December 15, 2000
4:33 PM

3

**EXHIBIT "D"**

2000264975
CASF

## COMPROMISE AND RELEASE

FOR AND IN CONSIDERATION of the sum of Eighty Five Thousand Dollars and 00/100 ($85,000.00) to me in hand paid, receipt whereof is hereby acknowledged, I, BOBBY R. SMITH, Social Security No. 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, (hereinafter Releasor) do for myself, my executors, administrators and assigns, fully and forever release and discharge the following: Amchem Products, Inc.; Armstrong World Industries, Inc.; C.E. Thurston and Sons, Incorporated; CertainTeed Corporation; Dana Corporation; I.U. North America, Inc.; Marcmont Corporation; National Services Industries Inc.; Nosroc Corp.; Pfizer Inc; Quigley Company, Inc.; Shook & Fletcher Insulation Co.; T & N, plc; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company; the predecessors and successors of such firms, all of their successors and assigns, the agents, servants, employees and attorneys of such firms, and each of them (hereinafter "Releasees") of and from any and all claims, demands, actions or causes of actions, including without limitation, any future claim or claims of any of my heirs, administrators, executors or assigns or any other person, firm or corporation may or might have against them, or any of them, by reason of any damages or injuries whatsoever sustained by me and occasioned directly or indirectly from the beginning of time, without limitation, by reason of the events and circumstances of my disputed claims against said Releasees, or one or more of said Releasees, as alleged in my lawsuit, pending in the SUPERIOR COURT in SAN FRANCISCO COUNTY, CALIFORNIA - NORTH, DOCKET#: 310899.

This is intended as a full and complete release of all or any claims that I or any other person, firm, association or corporation may or might have against said Releasees only, and in accepting said sum I do so in full settlement of any and all such claims, and intend to and do hereby release all of said persons, firms, associations and corporations of any and from any and all liability of any nature whatsoever for all damage or injury to my person and property, specifically including all expenses to which I may have been put and also including all consequential damage to me on account of injuries to others, as well as for all consequences, effects and results of any such injury or damage, whether the same are now known or unknown to me, expected or unexpected by me or have already appeared to develop or may now be latent or may in the future appear to develop, and all rights under Section 1542 of the Civil Code are hereby expressly waived. Civil Code, Section 1542 states:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor"

It is understood that this settlement is not an admission of any liability but is in compromise of a disputed claim and for said consideration I hereby assume the risk of any damages, injuries, death or disability which may now be latent or unexpected and I understand and agree that nothing contained in this document shall be construed or deemed an admission of wrongdoing or liability on the part of or by any party as to any of the claims or counterclaims which have been made or could have been made in this case. The parties further agree that this document shall not be admissible as evidence of any liability.

I, BOBBY R. SMITH, recognize that as a part of the settlement of my personal injury case, the Releasees wish to obtain releases and buy their peace with respect to potential claims that could be brought by my estate or my heirs should I die of asbestos related disease. It is my intention and desire to conclude a settlement in which Releasees will be released from any personal injury claim and also from any potential claim for wrongful death that might follow.

By this document I do two things.  First, I express my honest opinion as to the lack of value of any potential claim my heirs might have.  Second, I, on behalf of myself and my estate, agree to indemnify and hold harmless any Releasees against any claims presented in the future by said potential heirs.  It is my wish and intention that should said heirs present a claim, my estate will upon tender undertake to defend said Releasees against such claim, and should such defense be unsuccessful, indemnify and hold harmless said Releasees against any judgment obtained by said heirs.  I understand that this is a contractual undertaking on my part which is binding upon me and my estate and is given by me in return for fair and valuable consideration to wit, the agreement by Releasees in reliance, in part, upon this document, to pay me funds which I believe to be fair and reasonable in settlement of claims for my personal injury and potential wrongful death.

As a further consideration and inducement for this compromise settlement, Releasor agrees to hold harmless and indemnify said Releasees of and from any and all claims, demands, actions or causes of action, of subrogation asserted by any personal or legal entity which has or will in the future furnish, supply or pay benefits or anything of value, or any form of compensation to or for the Releasors or Releasor's heirs, executors or assigns, for any claimed expenses, detriment, or damages resulting to the Releasor or his said heirs, executors and assigns by reason of the promises hereof, and this instrument shall not operate as a retraxit nor otherwise affect any rights of Releasees.

I, BOBBY R. SMITH, also agree that as a part of the settlement if I am divorced or separated from my spouse, I will indemnify and hold harmless the Releasees from any and all claims that have been or may be made against them by my spouse, based upon, arising out of or as a consequence of BOBBY R. SMITH's exposure to asbestos and subsequent alleged injuries from exposure to asbestos.

As to my said pending action for damages, I direct that the same be dismissed with prejudice as to each of the Releasees forthwith.

If I, the Releasor, am a single person, I so affirm.  If I, the Releasor, have no issue either of my body or by adoption, I so affirm.

But, if I am a married person or if I have issue whether of my body or by adoption, the signature below of said spouse, said issue or said minor, by and through the signature of a guardian ad litem appointed pursuant to California Code of Civil Procedure, Section 372, signifies each of their joinders in this compromise and Release Agreement and the surrender by each of them by reason of each of the injuries alleged in said action, for any and all causes now or in the future accrued or accruing, including without limitation, each cause of action for loss of consortium and for Releasor's alleged wrongful death in the event that Releasor dies directly or indirectly by reason of said injuries so alleged in each case.

Approved as to form:

By: _____

DEAN A. HANLEY, ESQ.

2

 

EACH OF THE UNDERSIGNED CERTIFY TO HAVING READ ALL OF THIS RELEASE AND CODE SECTIONS AND FULLY UNDERSTANDS ALL OF THE SAME, AND IN WITNESS THEREOF EXECUTED THIS RELEASE ON _Jan 5th, 2001_, AT _3:05 p.m._ STATE OF _California_

THE UNDERSIGNED AGREE, JOIN IN AND SUBSCRIBE TO THE FOREGOING AGREEMENT.

_Marianne Smith for Bobby R Smith_

**BOBBY R. SMITH**
Social Security No. 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

> MYRNA MONTES
> Commission # 1234474
> Notary Public - California
> San Joaquin County
> My Comm. Expires Mar 13, 2004

Subscribed and sworn to before me this 5th day of _Jan_, 2001.

_NOTARY PUBLIC_

My Commission Expires: _March 13, 2004_

_Marianne Ritter Smith_

**MARIANNE RITTER SMITH**
Social Security No. _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_

> MYRNA MONTES
> Commission # 1234474
> Notary Public - California
> San Joaquin County
> My Comm. Expires Mar 13, 2004

Subscribed and sworn to before me this 5th day of _Jan_, 2001.

_NOTARY PUBLIC_

My Commission Expires: _March 13, 2004_

CAXXPIFL
December 15, 2000
4:33 PM

3

Case MDL No. 875   Document 3170   Filed 05/17/01   Page 58 of 159

 





APR-20-2001  09:13                                                  P.15



UNLESS YOU DIRECT OTHERWISE ABOVE, THIS POWER OF ATTORNEY WILL CONTINUE UNTIL IT IS REVOKED.

This power of attorney will continue to be effective even though I become incapacitated.

**STRIKE THE PRECEDING SENTENCE IF YOU DO NOT WANT THIS POWER OF ATTORNEY TO CONTINUE IF YOU BECOME INCAPACITATED.**

EXERCISE OF POWER OF ATTORNEY WHERE
MORE THAN ONE AGENT DESIGNATED

If I have designated more than one agent, the agents are to act _Separately_

**IF YOU APPOINTED MORE THAN ONE AGENT AND YOU WANT EACH AGENT TO BE ABLE TO ACT ALONE WITHOUT THE OTHER AGENT JOINING, WRITE THE WORD "SEPARATELY" IN THE BLANK SPACE ABOVE. IF YOU DO NOT INSERT ANY WORD IN THE BLANK SPACE, OR IF YOU INSERT THE WORD "JOINTLY", THEN ALL OF YOUR AGENTS MUST ACT OR SIGN TOGETHER.**

I agree that any third party who receives a copy of this document may act under it. Revocation of the power of attorney is not effective as to a third party until the third party has actual knowledge of the revocation. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney.

Signed this _12_ day of _February_ 20_00_

_Bobby R. Smith_
Bobby R. Smith

_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_
(Your Social Security No.)

State of _California_          County of _San Joaquin_

**BY ACCEPTING OR ACTING UNDER THE APPOINTMENT, THE AGENT ASSUMES THE FIDUCIARY AND OTHER LEGAL RESPONSIBILITIES OF AN AGENT.**

State of California   }
County of San Joaquin }

On _February 12_, 20_00_ _ before me, _Carl H. Leiter_, Notary Public, personally appeared Bobby R. Smith, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_Carl H. Leiter_
Notary Public

CARL H. LEITER
Commission # 1222250
Notary Public - California
Orange County
My Comm. Expires Jul 2, 2003

** TOTAL PAGE.02 **

**EXHIBIT "E"**

2000263366
CASF

████████████

## RELEASE OF HEIRS FOR DEATH

WHEREAS, Plaintiff's decedent GEORGE HAROLD CAHILL, Social Security No. 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 (hereinafter Releasor(s)) allegedly died by reason of the matters alleged in the suit of the undersigned pending in the SUPERIOR COURT in SAN FRANCISCO COUNTY, CALIFORNIA - NORTH, DOCKET#: 310554, among other things, and

WHEREAS, it is contended by the undersigned that injuries sustained by decedent were caused by the legal fault of Releasees: Amchem Products, Inc.; Armstrong World Industries, Inc.; C.E. Thurston and Sons, Incorporated; CertainTeed Corporation; Dana Corporation; I.U. North America, Inc.; Maremont Corporation; National Services Industries Inc.; Nosroc Corp.; Pfizer Inc; Quigley Company, Inc.; Shook & Fletcher Insulation Co.; T & N, plc; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company;  their agents, successors, assigns, predecessors in interest, employees, subsidiaries, parents, attorneys and insurers (hereinafter Releasees) and each of them has resulted in the death of said decedent, which contention is denied, and

WHEREAS, the undersigned Releasors and each of them, jointly and severally represent and warrant that the undersigned Releasors are the only heirs at law of decedent.

NOW, THEREFORE, for and in consideration of the sum of Thirty Five Thousand Dollars and 00/100 ($35,000.00) to us in hand paid, receipt whereof is hereby acknowledged, we jointly and severally, for ourselves, our successors and assigns, fully and forever release said Releasees, only of, from and against any and all claims, demands, actions or causes of action of whatsoever kind and nature which we individually or collectively might have against them by reason of the alleged injuries to and death of said decedent, GEORGE HAROLD CAHILL, and for property damage, if any, including without limitation, all claims set forth in said SUPERIOR COURT in SAN FRANCISCO COUNTY, CALIFORNIA - NORTH, DOCKET#: 310554.

IN CONSIDERATION of the payment above made, we jointly and severally agree to and do save and hold harmless said Releasees, and their heirs, executors, administrators, assigns and all parties herein released, each, of and from any and all claims, demands, actions, or causes of action including without limitation all such claims, demands, actions and causes of action asserted by way of subrogation by any person, firm or corporation claiming to have paid to, for or on behalf of decedent or the undersigned and Releasees, each, which may be asserted against them, or any of them, based upon said injuries and death of GEORGE HAROLD CAHILL.

As a further consideration and inducement for this compromise settlement, the undersigned Releasors, individually and for their heirs, successors and assigns, do agree

1

to indemnify and hold harmless said Releasees of and from any liability, whatsoever, resulting from a civil action brought now or in the future by heirs of decedent, GEORGE HAROLD CAHILL based upon, arising out of or as a consequence of GEORGE HAROLD CAHILL's exposure to asbestos and subsequent alleged injuries and death resulting from GEORGE HAROLD CAHILL's exposure to asbestos.

The parties understand and agree that nothing contained in this document shall be construed or deemed an admission of wrongdoing or liability on the part of or by any party as to any of the claims or counterclaims which have been made or could have been made in this case. The parties further agree that this document shall not be admissible as evidence in any suit or proceeding whatsoever as evidence or admission of any liability.

If a Releasor named below is a minor, or an incompetent, the guardian ad litem, guardian or conservator signing for such person has been duly authorized by an order of a Court of California, pursuant to a petition duly filed, to execute this release on behalf of such persons.

We instruct and direct our attorney to dismiss said action with prejudice as to each of the Releasees.

Approved as to form:

By: _____
   DEAN A. HANLEY, ESQ.
   Jerry Neil Paul

2



EACH OF THE UNDERSIGNED CERTIFY TO HAVING READ ALL OF THIS RELEASE AND CODE SECTIONS AND FULLY UNDERSTANDS ALL OF THE SAME, AND IN WITNESS THEREOF EXECUTED THIS RELEASE ON ___02/24/01___, AT Los Angeles, STATE OF _California_.

THE UNDERSIGNED AGREE, JOIN IN AND SUBSCRIBE TO THE FOREGOING AGREEMENT.

_Lawrence Cahill_
LAWRENCE CAHILL
Social Security No. 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

Subscribed and sworn to before me this 24th day of _February_, 2001.

_(signature)_
NOTARY PUBLIC

SHAWN SULLIVAN
Commission # 1275323
Notary Public - California
Los Angeles County
My Comm. Exp. Aug 25, 2004

My Commission Expires: 08/25/04

3

2000263366
CASP

## ADDENDUM TO RELEASE
## HOLD HARMLESS AGREEMENT

I, **LAWRENCE CAHILL**, recognize that as a part of the settlement, the settling defendants wish to obtain releases and buy their peace with respect to potential claims that could be brought by the estate or the heirs of **GEORGE HAROLD CAHILL** and as a result of the alleged injuries and death of **GEORGE HAROLD CAHILL** based upon, arising out of or as a consequence of his/her exposure to asbestos and asbestos-containing products. It is my intention and desire to conclude a settlement in which settling defendants will be released from any personal injury claim and also from any claim for wrongful death that might follow:

**GEORGE HAROLD CAHILL** 's potential heir(s) is/are: **PATRICIA DUNBAR** and **JOANN HYDE**

I, on behalf of myself and the estate of **GEORGE HAROLD CAHILL**, agree to indemnify and hold harmless any settling defendants against any claims presented in the future by said potential heirs. It is my wish and intention that should said heirs present a claim, the estate of **GEORGE HAROLD CAHILL** will upon tender undertake to defend said settling defendants against such claim, and should such defense be unsuccessful, indemnify and hold harmless said settling defendants against any judgment obtained by said heirs. I understand that this is a contractual undertaking on my part which is binding upon me and the estate of and is given by me in return for fair and valuable consideration to with, the agreement by settling defendants in reliance, in part, upon this document, to pay me funds which I believe to be fair and reasonable in settlement of said claims.

_Lawrence Cahill_
**LAWRENCE CAHILL**

Subscribed and sworn to before me this 24th day of February, 2001.

_Shawn Sullivan_
**NOTARY PUBLIC**

> SHAWN SULLIVAN
> Commission # 1272223
> Notary Public - California
> Los Angeles County
> My Comm. Expires Aug 25, 2004

My Commission Expires: 08/25/04.

CAXXWD99
February 7, 2001
9:49 AM

1

I, George H. Cahill, am represented by Paul & Hanley, LLP in a civil action filed in the San Francisco Superior Court Case Number 310554 with respect to my asbestos exposure. It is my wish that in the event of my death, any outstanding settlement monies regarding my asbestos litigation be given directly to my son, Larry Cahill.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: 10 -28 -00          Signed: _George H Cahill_

Notary Statement:

STATE OF CALIFORNIA

County of _____)ss.

On this _____ day of _____, 2000, before me, a Notary Public for the State of California, personally appeared _____, known to me to be the person(s) whose name(s) is(are) subscribed to the within instrument, and acknowledged to me that (he)/(she)/(they) executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Notarial Seal the day and year first above written.

**SEE ATTACHED**

_____
Notary Public for the State of
California

Residing at _____

My Commission expires _____

APR-20-2001  09:09                                                    P.07

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of  San Diego                     } ss.

On  10-25-00  , before me,  **Deborah A. Lima** , Notary Public
                            Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared  George Harold Cahill                     .
                                    Name(s) of Signer(s)

☐ personally known to me

☑ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

**DEBORAH A. LIMA**
COMM. #1180599
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Comm. Expires November 2, 2001

_____
Signature of Notary Public

Place Notary Seal Above

─────────── OPTIONAL ───────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document:  Statement

Document Date:  10-25-00                     Number of Pages:  1

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer**

Signer's Name: _____

☐ Individual

☐ Corporate Officer — Title(s): _____

☐ Partner — ☐ Limited ☐ General

☐ Attorney in Fact

☐ Trustee

☐ Guardian or Conservator

☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org          Prod. No. 5907          Reorder: Call Toll-Free 1-800-876-6827

B

US OFFICE PRODUCTS

06/26/2000  15:51  FAX

☑02

## RECEIVED

JUN 2 6 2000

Lane & Gossett, P.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2020 JUN 19  A 8:

IN RE: ASBESTOS PRODUCTS
LIABILITY LITIGATION (NO. VI)

——————————————————— x

This Document Relates to:                    :          CIVIL ACTION NO. MDL 875

United States District Court                 :
Southern District of Georgia
                                             :
(See attached list of cases)                 :

——————————————————— x


## O R D E R

THIS MATTER coming before the Court upon Plaintiff's Motion To Enforce Settlement

Agreement, and the Court having had an opportunity to review the submissions of the parties and

to hear argument thereon, FINDS as follows:

1.    GAF Corporation, a defendant in this litigation, was a member of the Center For

Claims Resolution for approximately twelve years until January, 2000 when such

membership was terminated.

2.    The Center For Claims Resolution (CCR) is an agency entity created for the sole

purpose of negotiating settlements or otherwise handling asbestos claims and

lawsuits which have been brought against its member companies.  Each member

company entered into an agency agreement with the CCR authorizing  CCR to act

as its agent for the purpose of settling asbestos cases.

3.    The CCR representatives who negotiate the settlements on behalf of the members

18

are not attorneys but are versed in the law for the jurisdictions where their cases
are located and they have several attorneys on the CCR staff available for legal
consultation.

4.    The agreement between GAF and CCR provides a multitude of criteria and other
factors to be used in determining each members share of a settlement. As the
settlements are completed, a monthly billing is submitted to the members for their
share of the payments to conclude the settlement. CCR became a conduit and
monitor for the payment of the settlements made on behalf of its member
companies.

5.    The representative from CCR, Mr. Robert Capritti, settled these cases with
plaintiff on behalf of the CCR member companies on November 5, 1999.

6.    At the time these matters were settled between plaintiff and the CCR member
companies, GAF Corporation was a member company with CCR.

7.    On March 2, 2000, CCR submitted a check to the plaintiff which represented all
of the member companies' shares except for GAF Corporation[1] which did not
submit its share to CCR for disbursement. The entire calculation of share amounts
was done by CCR.

8.    GAF Corporation and CCR are currently in arbitration regarding their agreement
and the validity of the settlements and/or the amounts paid by CCR on behalf of
GAF Corporation.

9.    THE COURT FURTHER FINDS that the plaintiff relied upon the agency of CCR

---

[1] CCR calculated the share owing by GAF as $134,744.55. The remaining amount for the
other members of CCR was not disclosed to the Court and is not relevant to the Court's order.

on behalf of GAF Corporation and all of the other CCR members, and its conduct of business for the past twelve years and in this case. This business (agency) relationship is well-known throughout the asbestos litigation and CCR has settled hundreds of thousands of asbestos lawsuits and claims on behalf of its member companies.

10.  Other than providing services for its member companies as agent, CCR does not generate income or have any separate assets with which to fund settlements, but relies upon payments from the member companies to complete the settlements.

11.  GAF Corporation has no dispute with this plaintiff regarding the settlement, but controverts CCR and its actions as GAF Corporation's agent which is now the subject of a pending arbitration..

12.  The settlement agreement which plaintiff seeks to enforce was negotiated by legal counsel sophisticated in the asbestos litigation and knowledgeable of the structure and workings of CCR. To this end, plaintiff brought this action against GAF as a defendant and not CCR who is not a party to the litigation.

13.  The Court can find no reason or conduct on the part of CCR to allow GAF or plaintiff to alter CCR's position as agent for a disclosed principal, namely: GAF Corporation.

14.  The Court can find no reason or conduct on the part of CCR and the members other than GAF to allow any of the other named parties to be held responsible for the share allocated to GAF.

THE COURT THEREFORE ORDERS Judgment to enter on behalf of plaintiff and
against GAF Coporation in the amount·of $134,744 55 together with interest at the legal rate
from March 2, 2000[2].

BY THE COURT:

Date: 6/9/00

_Charles R. Weiner_

Charles R. Weiner                                                    J.

---

[1] The confirmation letter from CCR regarding the settlement states that the settlement
amount is due within 90 days from 9/5/99.  Interest was requested by plaintiff from 3/2/00, the
date of payment which is subsequent to the due date.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| Darrell Aldridge | | C/A No. 299-083 |
|---|---|---|
| Henry Allen | • | C/A No. 299-096 |
| Jackie Anderson | • | C/A No. 299-059 |
| James Ashley | • | C/A No. 199-033— |
| Howard Bentley | • | C/A No. 599-053 |
| James Beverly | • | C/A No. 599-054 |
| Roy Brewer | • | C/A No. 199-091 |
| Francis Cox | • | C/A No. 299-054 |
| Gered Crawford | • | C/A No. 599-041 |
| Warren Crews | • | C/A No. 599-044 |
| Walter Donaldson | • | C/A No. 199-093 |
| Cecil Dryden | • | C/A No. 599-042 |
| James Folmar | • | C/A No. 299-039 |
| Lloyd Gibson | • | C/A No. 299-056 |
| William Gray | • | C/A No. 299-058 |
| Max Harrill | • | C/A No. 199-093 |
| Thomas Hayes | • | C/A No. 299-057 |
| Carl Highsmith | • | C/A No. 299-032 |
| James Highsmith | • | C/A No. 299-040 |
| Victor Holland | • | C/A No. 199-057 |
| Robert Jones | • | C/A No. 299-019 |
| Willie Mells | • | C/A No. 299-073 |
| Waldo Moody | • | C/A No. 299-056 |
| Theodore Nobles | • | C/A No. 299-104 |
| Bobby Pierce | • | C/A No. 299-072 |
| Nathaniel Robinson | • | C/A No. 299-084 |
| Roy Speros | • | C/A No. 299-067 |
| Ralph Tabor | • | C/A No. 299-042 |
| Arthur Taylor | • | C/A No. 299-065 |
| Talmadge Tuten | • | C/A No. 299-055 |
| Claude Warren | • | C/A No. 599-043 |
| Edward Wilson | • | C/A No. 299-115 |
| Eddie Woodard | • | C/A No. 299-041 |
| Julian Woodcock | • | C/A No. 299-038 |
| | • | |

C

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS             :
LIABILITY LITIGATION (NO. VI)        :
                                     :
―――――――――――――――――――――――――――            x

This Document Relates to:            :        CIVIL ACTION NO. MDL 875
                                     :
United States District Court         :
Eastern District of Pennsylvania     :
                                     :
Valerie BERNHARDT. Executrix,        :   **F I L E D**
Estate of Roy BERNHARDT. dec.        :
C.A. No. 93-7086                     :   JUN 1 4 2000
――――――――――――――――――――――――――             x
                                         MICHAEL E. KUNZ, Clerk

                                         By ―――――――――― Dep. Clerk

### ORDER

THIS MATTER coming before the Court upon Plaintiff's Letter Motion To Enforce
Settlement Agreement With The Center For Claims Resolution and GAF Corporation, and the
Court having had an opportunity to review the submissions of the parties and to hear argument
thereon, FINDS as follows:

1.  GAF Corporation, a defendant in this litigation, was a member of the Center For
    Claims Resolution for approximately twelve years until January, 2000 when such
    membership was terminated.

2.  The Center For Claims Resolution (CCR) is an agency entity created for the sole
    purpose of negotiating settlements or otherwise handling asbestos claims and
    lawsuits which have been brought against its member companies. Each member
    company entered into an agency agreement with the CCR authorizing CCR to act

as its agent for the purpose of settling asbestos cases.

3. The CCR representatives who negotiate the settlements on behalf of the members are not attorneys but are versed in the law for the jurisdictions where their cases are located and they have several attorneys on the CCR staff available for legal consultation.

4. The agreement between GAF and CCR provides a multitude of criteria and other factors to be used in determining each members share of a settlement. As the settlements are completed, a monthly billing is submitted to the members for their share of the payments to conclude the settlement. CCR became a conduit and monitor for the payment of the settlements made on behalf of its member companies.

5. The representative from CCR, Mr. Kevin Guers, settled this case with plaintiff on behalf of the CCR member companies on October 22, 1999.

6. At the time this matter was settled between plaintiff and the CCR member companies, GAF Corporation was a member company with CCR.

7. CCR submitted a check to the plaintiff for an amount which represented all of the member companies' shares except for GAF Corporation which did not submit its share to CCR for disbursement. The entire calculation of share amounts was done by CCR. GAF's calculated amount was $237,643.09.

8. GAF Corporation and CCR are currently in arbitration regarding their agreement and the validity of the settlements and/or the amounts paid by CCR on behalf of GAF Corporation.

9. THE COURT FURTHER FINDS that the plaintiff relied upon the agency of CCR

on behalf of GAF Corporation and all of the other CCR members, and its conduct
of business for the past twelve years and in this case.  This business (agency)
relationship is well-known throughout the asbestos litigation and CCR has settled
hundreds of thousands of asbestos lawsuits and claims on behalf of its member
companies.

10.   Other than providing services for its member companies as agent, CCR does not
generate income or have any separate assets with which to fund settlements, but
relies upon payments from the member companies to complete the settlements.

11.   GAF Corporation has no dispute with this plaintiff regarding the settlement, but
controverts CCR and its actions as GAF Corporation's agent which is now the
subject of a pending arbitration..

12.   The settlement agreement which plaintiff seeks to enforce was negotiated by legal
counsel sophisticated in the asbestos litigation and knowledgeable of the structure
and workings of CCR.  To this end, plaintiff brought this action against GAF as a
defendant and not CCR who is not a party to the litigation.

13.   The Court can find no reason or conduct on the part of CCR to allow GAF or
plaintiff to alter CCR's position as agent for a disclosed principal, namely: GAF
Corporation.

14.   The Court can find no reason or conduct on the part of CCR and the members
other than GAF to allow any of the other named parties to be held responsible for
the share allocated to GAF.

THE COURT THEREFORE ORDERS Judgment to enter on behalf of plaintiff and against GAF Coporation in the amount of $237,643.03 together with interest at the legal rate from the date of this order.

BY THE COURT:

Date: 6/9/2000

_Charles R. Weiner_     J.

ENTERED: _6/15/00_

CLERK OF COURT

**D**

US OFFICE PRODUCTS

JUN-29-2000   13:55

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS                        :
LIABILITY LITIGATION (NO. VI)                   :
_____                  x

This Document Relates to:                       :                    CIVIL ACTION NO. MDL 875

United States District Court                    :
District of Nevada                              :

James D. BENSON                                 :
CV-S-98-00415-DWH (RLH)                         :
CV-S-99-2980-PMP(RLH)                           :
_____                  x

ORDER

THIS MATTER coming before the Court upon Plaintiff's Motion To Enforce Settlement

Agreement, and the Court having had an opportunity to review the submissions of the parties and

to hear argument thereon, FINDS as follows.

1.      GAF Corporation, a defendant in this litigation, was a member of the Center For

        Claims Resolution for approximately twelve years until January, 2000 when such

        membership was terminated.

2.      The Center For Claims Resolution (CCR) is an agency entity created for the sole

        purpose of negotiating settlements or otherwise handling asbestos claims and

        lawsuits which have been brought against its member companies.  Each member

        company entered into an agency agreement with the CCR authorizing CCR to act

        as its agent for the purpose of settling asbestos cases.

3.   The CCR representatives who negotiate the settlements on behalf of the members are not attorneys but are versed in the law for the jurisdictions where their cases are located and they have several attorneys on the CCR staff available for legal consultation.

4.   The agreement between GAF and CCR provides a multitude of criteria and other factors to be used in determining each members share of a settlement.  As the settlements are completed, a monthly billing is submitted to the members for their share of the payments to conclude the settlement.  CCR becomes a conduit and monitor for the payment of the settlements made on behalf of its member companies.

5.   The representative from CCR, Mr. Robert Caprini, settled this case with plaintiff on behalf of the CCR member companies on December 8, 1999 in the amount of $97,500.00.

6.   At the time this matter was settled between plaintiff and the CCR member companies, GAF Corporation was a member company with CCR.

7.   CCR submitted a check to the plaintiff in the amount of $68,033.60 which represented all of the member companies' shares except for GAF Corporation which did not submit its share to CCR for disbursement.  The entire calculation of share amounts was done by CCR.

8.   GAF Corporation and CCR are currently in arbitration regarding their agreement and the validity of the settlements and/or the amounts paid by CCR on behalf of GAF Corporation.

9    THE COURT FURTHER FINDS that the plaintiff relied upon the agency of CCR

on behalf of GAF Corporation and all of the other CCR members, and its conduct of business for the past twelve years and in this case. This business (agency) relationship is well-known throughout the asbestos litigation and CCR has settled hundreds of thousands of asbestos lawsuits and claims on behalf of its member companies.

10. Other than providing services for its member companies as agent, CCR does not generate income or have any separate assets with which to fund settlements, but relies upon payments from the member companies to complete the settlements.

11. GAF Corporation has no dispute with this plaintiff regarding the settlement, but controverts CCR and its actions as GAF Corporation's agent which is now the subject of a pending arbitration..

12. The settlement agreement which plaintiff seeks to enforce was negotiated by legal counsel sophisticated in the asbestos litigation and knowledgeable of the structure and workings of CCR  To this end, plaintiff brought this action against GAF as a defendant and not CCR who is not a party to the litigation.

13. The Court can find no reason or conduct on the part of CCR to allow GAF or plaintiff to alter CCR's position as agent for a disclosed principal, namely: GAF Corporation.

14. The Court can find no reason or conduct on the part of CCR and the members other than GAF to allow any of the other named parties to be held responsible for the share allocated to GAF.

THE COURT THEREFORE ORDERS Judgment to enter on behalf of plaintiff and

against GAF Corporation in the amount of $29,466.10 together with interest at the legal rate from

March 7, 2000[1].

BY THE COURT:

Date: __6/9/00__      _Charles R. Weiner_    J.

Charles R. Weiner

---

[1] The confirmation letter from CCR regarding the settlement states that the settlement
amount is due within 90 days from 12/8/99.  Interest requested by plaintiff from 2/17/00 is
premature.

E

US OFFICE PRODUCTS

DOCKET NO. 875

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

Jack Givens, et al. v. Witco Corp., Inc., et al., E.D. Louisiana, C.A. No. 2:99-2283
Gary Clark v. CN North America, E.D. Michigan, C.A. No. 2:99-71140
David Cosey, et al. v. E.D. Bullard, et al., S.D. Mississippi, C.A. No. 1:99-164
Patricia A. Kelly, et al. v. W.R. Grace & Co.-Conn., et al., D. Montana, C.A. No. 9:99-118
Valorie R. Johnston, et al. v. W.R. Grace & Co.-Conn., et al., D. Montana, C.A. No. 9:99-128

BEFORE JOHN F. NANGLE, CHAIRMAN, WILLIAM B. ENRIGHT,
CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS,* LOUIS
C. BECHTLE* AND JOHN F. KEENAN, JUDGES OF THE PANEL

TRANSFER ORDER

Before the Panel are motions brought, pursuant to Rule 7.4, R.P.J.P.M.L., 181 F.R.D. 1, 10 (1998), by plaintiffs in the above-captioned Eastern District of Louisiana, Eastern District of Michigan, Southern District of Mississippi and District of Montana actions. All movants request that the Panel vacate the portions of its orders conditionally transferring their respective action to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner.

On the basis of the papers filed and/or the hearing held,[1] the Panel finds that these actions involve common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the actions to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of these actions is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. See In re Asbestos Products Liability Litigation (No. VI), 771 F. Supp. 415 (J.P.M.L. 1991). In particular, we note that in the Panel's original decision distinctions based on such matters as the pendency of motions or other matters before the

---

*Judges Sanders and Bechtle took no part in the decision of this matter with respect to the Southern District of Mississippi action.

[1]The parties to all but the Southern District of Mississippi action waived oral argument and, accordingly, the question of Section 1407 transfer of those actions was submitted on the briefs. Rule 16.2, R.P.J.P.M.L., 181 F.R.D. 1, 14 (1998).

- 2 -

transferor court,[2] the uniqueness of a party's status, the type of defendant, the docket condition of any specific federal district, the stage of pretrial proceedings, the presence of unique claims or additional claims not relating to asbestos injury or death, and/or the unanimity of opposition to transfer by the parties to an action, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket.

We are not persuaded to depart from this approach in dealing with the question of transfer of the actions now before the Panel. We note that under Judge Weiner's stewardship, as of February 1, 2000, i) nearly 60,000 actions have been closed in the transferee district, and ii) over 1,000 actions or claims therein have been returned to their originating transferor districts. To parties that believe the uniqueness of their particular situation renders inclusion of their action in MDL-875 unnecessary or inadvisable, we note that whenever the transferee judge deems remand of any claims or actions appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L., *supra*, 181 F.R.D. at 11-13. We are confident that Judge Weiner will continue to promptly review arguments for returning transferred actions or claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever he is convinced that retention in the MDL-875 proceedings is no longer needed.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the five above-captioned actions be, and the same hereby are, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

John F. Nangle
Chairman

---

[2] Parties in certain of the actions before the Panel have argued that transfer should be denied or deferred in order to permit the judges assigned the actions to rule on various potentially dispositive pending motions. There is no need to delay transfer in order to accommodate such an interest. We note that: 1) as a practical matter, there is a lag time of at least three or four months from the filing of an action, its identification as a potential tag-along action, issuance of a conditional transfer order, stay of transfer when a party timely objects to the conditional transfer, briefing on the question of transfer, the Panel hearing, and the issuance of the Panel's subsequent order; 2) Panel Rule 1.5, R.P.J.P.M.L., *supra*, 181 F.R.D. at 3, expressly provides that the pendency of a conditional transfer order does not in any way i) suspend orders and pretrial proceedings in the district court in which the action that is the subject of the conditional transfer order is pending, or ii) limit the pretrial jurisdiction of that court; and 3) accordingly, those courts wishing to address such motions have adequate time in which to do so, those courts concluding that such issues should be addressed by the transferee judge need not rule on them, and the process of 1407 transfer in MDL-875 can continue without any unnecessary interruption or delay.

**F**

US OFFICE PRODUCTS



A CERTIFIED TRUE COPY

ATTEST ✓ 7171.... 11.
FOR THE JUDICIAL PANEL OF
MULTIDISTRICT ....

FILED    JUN   2 1994

DOCKET NO. 875

MULTIDISTRICT LITIGATION
FILED

MAY 3 1 1994

PATRICIA D. HOWARD
CLERK OF THE PANEL

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI) #1155

*American President Companies, Ltd., et al. v. Babcock & Wilcox Co., et al.,* W.D. Washington, C.A. No. 2:94-91

### BEFORE JOHN F. NANGLE, CHAIRMAN, MILTON POLLACK,* ROBERT R. MERHIGE, JR., WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JOHN F. GRADY AND BAREFOOT SANDERS,* JUDGES OF THE PANEL

## TRANSFER ORDER

Presently before the Panel is a motion, pursuant to Rule 12, R.P.J.P.M.L., 147 F.R.D. 589, 596 (1993), by plaintiffs American President Companies, Ltd., and American President Lines, Ltd., in the above-captioned action (*American*) requesting that the Panel vacate the portion of its order conditionally transferring *American* to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner.

On the basis of the papers filed and the hearing held, the Panel finds that *American* involves common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of *American* to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of these actions is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI),* 771 F. Supp. 415 (J.P.M.L. 1991). Plaintiffs seek to exclude *American* from transfer on the ground that technically the action is not a claim for asbestos related personal injuries, but is rather one seeking indemnification for the sums previously paid by plaintiffs to settle an individual's claim against them for such asbestos injuries. Resolution of the indemnification claim, however, will involve the same kinds of questions of fault and liability found not only in the MDL-875 actions in general, but, in particular, in the cross-claims and third party claims for contribution and indemnity filed or anticipated to be filed by shipowners in the MDL-875 maritime asbestos actions (including the 972 actions already transferred in this docket in which American President Lines, Ltd., was named as a defendant). It may be on further refinement of the issues and close scrutiny by the transferee court, *American* can be remanded in advance of the

_____

*Judges Pollack and Sanders recused themselves and took no part in the decision of this matter.

- 2 -

other actions in the transferee district.  Should the transferee court deem remand of any claims or actions appropriate, the transferee court can communicate this to the Panel, and the Panel will accomplish remand with a minimum of delay.  *See* Rule 14, R.P.J.P.M.L., *supra*, 147 F.R.D. at 597-99.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the action entitled *American President Companies, Ltd., et al. v. Babcock & Wilcox Co., et al.*, W.D. Washington, C.A. No. 2:94-91 be, and the same hereby is, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

John F. Nangle
Chairman

ENTERED: 6/3/94

CLERK OF COURT

G

US OFFICE PRODUCTS

```
┌─────────────────────────────┐
│      JUDICIAL PANEL ON       │
│   MULTIDISTRICT LITIGATION   │
│           FILED              │
│  ┌───────────────────────┐   │
│  │     Feb. 26, 1993     │   │
│  └───────────────────────┘   │
│    PATRICIA D. HOWARD        │
│    CLERK OF THE PANEL        │
└─────────────────────────────┘
```

## DOCKET NO. 875

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

### (SEE ATTACHED SCHEDULE CTO-32)

## CONDITIONAL TRANSFER ORDER

On July 29, 1991, the Panel transferred 27,696 civil actions to the United States District Court for the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. §1407. Since that time, more than 10,200 additional actions have been transferred to the Eastern District of Pennsylvania. With the consent of that court, all such actions have been assigned to the Honorable Charles R. Weiner.

It appears that the actions listed on the attached schedule involve questions of fact which are common to the actions previously transferred to the Eastern District of Pennsylvania and assigned to Judge Weiner.

Pursuant to Rule 12 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 120 F.R.D. 251, 258, the actions on the attached schedule are hereby transferred under 28 U.S.C. §1407 to the Eastern District of Pennsylvania for the reasons stated in the opinion and order of July 29, 1991, (771 F.Supp. 415), as corrected on October 1, 1991, October 18, 1991, November 22, 1991, December 9, 1991, January 16, 1992, and March 5, 1992, with the consent of that court, assigned to the Honorable Charles R. Weiner.

This order does not become effective until it is filed in the office of the Clerk of the United States District Court for the Eastern District of Pennsylvania. The transmittal of this order to said Clerk shall be stayed fifteen (15) days from the entry thereof and if any party files a notice of opposition with the Clerk of the Panel within this fifteen (15) day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

*Patricia D. Howard*

Patricia D. Howard
Clerk of the Panel

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

Feb. 26, 1993

PATRICIA D. HOWARD
CLERK OF THE PANEL

## SCHEDULE CTO—32 — TAG ALONG CASES
## DOCKET NO. 875
## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

| DISTRICT | DIV | CIVIL ACTIONS | DISTRICT | DIV | CIVIL ACTIONS | DISTRICT | DIV | CIVIL ACTIONS | DISTRICT | DIV | CIVIL ACTIONS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| CONNECTICUT | | | MISSOURI WESTERN | | | OHN | 1 | 93-10021 | OHN | 1 | 93-10072 |
| CT | 2 | 92-448 | MOW | 4 | 92-222 | OHN | 1 | 93-10022 | OHN | 1 | 93-10073 |
| CT | 2 | 92-1026 | | | | OHN | 1 | 93-10023 | OHN | 1 | 93-10074 |
| CT | 2 | 92-1030 | MONTANA | | | OHN | 1 | 93-10024 | OHN | 1 | 93-10075 |
| CT | 3 | 93-128 | MT | 9 | 92-23 | OHN | 1 | 93-10025 | OHN | 1 | 93-10076 |
| | | | | | | OHN | 1 | 93-10026 | OHN | 1 | 93-10077 |
| GEORGIA NORTHERN | | | NORTH CAROLINA EASTERN | | | OHN | 1 | 93-10027 | OHN | 1 | 93-10078 |
| GAN | 1 | 92-1764 | NCE | 4 | 92-124 | OHN | 1 | 93-10028 | OHN | 1 | 93-10079 |
| GAN | 1 | 92-1782 | NCE | 4 | 92-125 | OHN | 1 | 93-10029 | OHN | 1 | 93-10080 |
| GAN | 1 | 92-1942 | NCE | 5 | 92-571 | OHN | 1 | 93-10030 | OHN | 1 | 93-10081 |
| GAN | 1 | 93-84 | NCE | 5 | 92-582 | OHN | 1 | 93-10031 | OHN | 1 | 93-10082 |
| GAN | 1 | 93-114 | NCE | 7 | 92-93 | OHN | 1 | 93-10032 | OHN | 1 | 93-10083 |
| | | | NCE | 7 | 92-120 | OHN | 1 | 93-10033 | OHN | 1 | 93-10084 |
| GEORGIA SOUTHERN | | | | | | OHN | 1 | 93-10034 | OHN | 1 | 93-10085 |
| GAS | 5 | 93-7 | NORTH CAROLINA MIDDLE | | | OHN | 1 | 93-10035 | OHN | 1 | 93-10086 |
| GAS | 5 | 93-8 | NCM | 2 | 93-57 | OHN | 1 | 93-10036 | OHN | 1 | 93-10087 |
| GAS | 5 | 93-16 | | | | OHN | 1 | 93-10037 | OHN | 1 | 93-10088 |
| GAS | 5 | 93-17 | NORTH CAROLINA WESTERN | | | OHN | 1 | 93-10038 | OHN | 1 | 93-10089 |
| GAS | 5 | 93-18 | NCW | 3 | 93-17 | OHN | 1 | 93-10039 | OHN | 1 | 93-10090 |
| GAS | 5 | 93-19 | | | | OHN | 1 | 93-10040 | OHN | 1 | 93-10091 |
| GAS | 5 | 93-20 | NEW HAMPSHIRE | | | OHN | 1 | 93-10041 | OHN | 1 | 93-10092 |
| GAS | 5 | 93-21 | NH | 1 | 92-32 | OHN | 1 | 93-10042 | OHN | 1 | 93-10093 |
| GAS | 5 | 93-22 | | | | OHN | 1 | 93-10043 | OHN | 1 | 93-10094 |
| GAS | 5 | 93-23 | NEW YORK SOUTHERN | | | OHN | 1 | 93-10044 | OHN | 1 | 93-10095 |
| GAS | 5 | 93-24 | NYS | 1 | 92-6377 | OHN | 1 | 93-10045 | OHN | 1 | 93-10096 |
| GAS | 5 | 93-25 | NYS | 1 | 92-6380 | OHN | 1 | 93-10046 | OHN | 1 | 93-10097 |
| GAS | 5 | 93-26 | | | | OHN | 1 | 93-10047 | OHN | 1 | 93-10098 |
| | | | NEW YORK WESTERN | | | OHN | 1 | 93-10048 | OHN | 1 | 93-10099 |
| HAWAII | | | NYW | 1 | 93-96 | OHN | 1 | 93-10049 | OHN | 1 | 93-10100 |
| HI | 1 | 92-802 | | | | OHN | 1 | 93-10050 | OHN | 1 | 93-10101 |
| | | | OHIO NORTHERN | | | OHN | 1 | 93-10051 | OHN | 1 | 93-10102 |
| IOWA SOUTHERN | | | OHN | 1 | 93-10001 | OHN | 1 | 93-10052 | OHN | 1 | 93-10103 |
| IAS | 4 | 93-80044 | OHN | 1 | 93-10002 | OHN | 1 | 93-10053 | OHN | 1 | 93-10104 |
| | | | OHN | 1 | 93-10003 | OHN | 1 | 93-10054 | OHN | 1 | 93-10105 |
| ILLINOIS NORTHERN | | | OHN | 1 | 93-10004 | OHN | 1 | 93-10055 | OHN | 1 | 93-10106 |
| ILN | 1 | 92-4662 | OHN | 1 | 93-10005 | OHN | 1 | 93-10056 | OHN | 1 | 93-10107 |
| | | | OHN | 1 | 93-10006 | OHN | 1 | 93-10057 | OHN | 1 | 93-10108 |
| KENTUCKY EASTERN | | | OHN | 1 | 93-10007 | OHN | 1 | 93-10058 | OHN | 1 | 93-10109 |
| KYE | 2 | 92-203 | OHN | 1 | 93-10008 | OHN | 1 | 93-10059 | OHN | 1 | 93-10110 |
| | | | OHN | 1 | 93-10009 | OHN | 1 | 93-10060 | OHN | 1 | 93-10111 |
| MAINE | | | OHN | 1 | 93-10010 | OHN | 1 | 93-10061 | OHN | 1 | 93-10112 |
| ME | 1 | 93-20 | OHN | 1 | 93-10011 | OHN | 1 | 93-10062 | OHN | 1 | 93-10113 |
| ME | 1 | 93-21 | OHN | 1 | 93-10012 | OHN | 1 | 93-10063 | OHN | 1 | 93-10114 |
| | | | OHN | 1 | 93-10013 | OHN | 1 | 93-10064 | OHN | 1 | 93-10115 |
| MICHIGAN WESTERN | | | OHN | 1 | 93-10014 | OHN | 1 | 93-10065 | OHN | 1 | 93-10116 |
| MIW | 2 | 92-239 | OHN | 1 | 93-10015 | OHN | 1 | 93-10066 | OHN | 1 | 93-10117 |
| | | | OHN | 1 | 93-10016 | OHN | 1 | 93-10067 | OHN | 1 | 93-10118 |
| MINNESOTA | | | OHN | 1 | 93-10017 | OHN | 1 | 93-10068 | OHN | 1 | 93-10119 |
| MN | 5 | 92-88 | OHN | 1 | 93-10018 | OHN | 1 | 93-10069 | OHN | 1 | 93-10120 |
| | | | OHN | 1 | 93-10019 | OHN | 1 | 93-10070 | OHN | 1 | 93-10121 |
| | | | OHN | 1 | 93-10020 | OHN | 1 | 93-10071 | OHN | 1 | 93-10122 |

H

US OFFICE PRODUCTS

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

OCT -5 1999

FILED
CLERK'S OFFICE

## DOCKET NO. 875

### BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

### IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*James R. Sweeney, et al. v. A-Best Products Co., et al.,* E.D. Pennsylvania (S.D. Indiana, C.A.
No. 1:98-118)
*Conwed Corp. v. Union Carbide Corp., et al.,* E.D. Pennsylvania (D. Minnesota, C.A. No.
5:92-88)

### BEFORE JOHN F. NANGLE,* CHAIRMAN, WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS,* LOUIS C. BECHTLE* AND JOHN F. KEENAN, JUDGES OF THE PANEL

### ORDER DENYING REMAND

Before the Panel are motions for remand brought, pursuant to Rule 7.6, R.P.J.P.M.L., 181
F.R.D. 1, 11-13 (1998), with respect to the two above-captioned actions (*Sweeney* and *Conwed,*
respectively). Plaintiffs in *Sweeney* seek remand of that action to the Southern District of Indiana;
and plaintiff in *Conwed* seeks remand of that action to the District of Minnesota. Three defendants
in *Sweeney* and the defendant in *Conwed* oppose remand of their respective action.

On the basis of the papers filed and the hearing held, the Panel finds that remand of neither
*Sweeney* nor *Conwed* is appropriate at this time. The following quotation from an earlier Panel
opinion is very instructive for situations such as this, where no recommendation of remand has been
made to the Panel by the transferee judge:

> The Panel's Rules of Procedure provide that the Panel shall consider the
> question of remand on the motion of any party, on the suggestion of the transferee
> court or on the Panel's own initiative. Rule [7.6(c)], R.P.J.P.M.L., [181] F.R.D. [1,
> 12 (1998)]. In considering the question of remand, the Panel has consistently given
> great weight to the transferee judge's determination that remand of a particular action
> at a particular time is appropriate because the transferee judge, after all, supervises
> the day-to-day pretrial proceedings. *See, e.g., In re IBM Peripheral EDP Devices
> Antitrust Litigation,* 407 F.Supp. 254, 256 (J.P.M.L. 1976). The transferee judge's
> notice of suggestion of remand to the Panel is obviously an indication that he

---

*Judges Nangle, Sanders and Bechtle took no part in the decision of this matter.

- 2 -

perceives his role under Section 1407 to have ended. *In re Air Crash Disaster Near Dayton, Ohio, on March 9, 1967,* 386 F.Supp. 908, 909 (J.P.M.L. 1975). Absent a notice of suggestion of remand from the transferee judge to the Panel, any party advocating remand before the Panel bears a strong burden of persuasion. We rule that movants have not met this burden here and that the motion for remand is premature.

*In re Holiday Magic Securities and Antitrust Litigation,* 433 F.Supp. 1125, 1126 (J.P.M.L. 1977).

We reiterate that Judge Weiner has become thoroughly familiar with the issues in MDL-875 and, especially in light of the unprecedented scale of this docket, is in the preferred position to determine the future course of the actions before him. We note that already in this docket nearly 1,000 actions or claims therein have been returned to their originating transferor districts, and that whenever Jude Weiner deems remand of *Sweeney* or *Conwed* (or any claims in either of them) appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L., *supra,* 181 F.R.D. at 11-13. We are confident that Judge Weiner will continue to promptly review arguments for returning transferred actions or claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever he is convinced that retention in the MDL-875 proceedings is no longer needed. In conclusion, we find that movants have failed both i) to persuade Judge Weiner of the desirability of remand, and ii) to offer the Panel a persuasive reason why it should order remand in the absence of a suggestion from Judge Weiner. Accordingly, we will deny remand.

IT IS THEREFORE ORDERED that the motions for Section 1407 remand of the two above-captioned actions be, and the same hereby are, DENIED.

FOR THE PANEL:

William B. Enright
Acting Chairman

# MDL 875

## BEFORE THE JUDICIAL PANEL FOR
## THE MULTIDISTRICT LITIGATION

IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)

FILED
CLERK'S OFFICE

This Document Relates To:

CONWED CORPORATION,

                Plaintiff,

v.

UNION CARBIDE CHEMICALS AND
PLASTICS COMPANY, INC.,

              Defendant and
              Third-Party Plaintiff,

v.

OWENS-CORNING FIBERGLAS CORPORATION, ET AL.,

              Third-Party Defendants.

CIVIL ACTION NO. MDL 875

Civil Action No. 5-92-88
DISTRICT OF MINNESOTA

TRANSFEREE JUDGE:
Judge Charles Weiner

---

## NOTICE OF MOTION AND
## MOTION TO REMAND

---

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that the undersigned, counsel for Conwed Corporation, will

bring this motion on before the Judicial Panel on Multidistrict Litigation on at a date and time to

be set by the Panel.

PLEADING NO. 2409

RECEIVED
CLERK'S OFFICE

## MOTION TO REMAND

## INTRODUCTION

Pursuant to Section 1407(a), Title 28, United States Code, Conwed Corporation (hereinafter "Conwed") brings this Motion before the Panel on Multidistrict Litigation ("the Panel") and requests that the Panel remand this case to its transferor court, the United States District Court for the District of Minnesota from the MDL 875. As discussed in detail, infra, Conwed has previously brought two Motions to Remand before the United States District Court for the Eastern District of Pennsylvania, on January 26, 1998, and on November 9, 1998. However, the presiding judge, the Honorable Charles Weiner took no action on either of Conwed's two Motions to Remand. In the interim, the Third Circuit has reiterated that the power to remand cases that have been transferred for pretrial proceedings rests with the Panel, not with the transferee court. See In re Roberts, -- F.3d --, 1999 WL 330198 (3d Cir. May 20, 1999) (citing Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 118 S. Ct. 956 (1998)). See Aff. of Kristi K. Warner, Ex. A.

Therefore, Conwed requests that the Panel remand this case for the following reasons: First, this case has been pending in the MDL 875 for over seven years, and has been ready for trial for some time. There is no remaining discovery. The parties have also engaged in extensive settlement discussions, without the resolution of Conwed's claims. Second, this case does not fit within the parameters set by the Panel in its July 29, 1991 Order creating the MDL 875. Finally, any matters that remain, including any motions for summary judgment, involve evaluating, under the unique statutory subrogation provisions of Minnesota Workers' Compensation laws, the claims of approximately 1,685 former Conwed employees with asbestos-related diseases. These

2

matters should be resolved by the transferor court in Minnesota, and are not matters appropriate for consolidated or coordinated proceedings.

## BACKGROUND

Conwed instituted this action against Union Carbide over seven years ago, on June 10, 1992, in the United States District Court for the District of Minnesota, Fifth Division. See Warner Aff., Ex. B. This matter was transferred to the MDL 875 docket by Conditional Transfer Order of the Multi-District Litigation Panel dated February 26, 1993. In this action, Conwed seeks reimbursement for workers' compensation benefits paid to several hundred former employees of its Cloquet, Minnesota ceiling tile plant who suffer asbestos-related diseases from exposure to asbestos mineral mined, milled, and sold by Union Carbide. In addition, Conwed seeks damages from Union Carbide for claims payable in the future as a result of such exposure, as Conwed is entitled to do under the unique statutory reimbursement procedures of the Minnesota Workers' Compensation Act, Minn. Stat. § 176.061.

Since commencement of this action, the parties have engaged in exhaustive discovery, including multiple sets of interrogatories, requests for production of documents and requests for admissions. Further, the parties have taken countless depositions of both lay witnesses and experts. In fact, the final discovery deadline, which had been extended many times, was over two years ago, on January 17, 1997. As of that date, nearly all discovery was complete, and the parties have now resolved and completed all remaining discovery in the intervening two years.

Conwed and Union Carbide have also engaged in numerous settlement negotiations, including at least seven separate settlement conferences, which occurred from May 13, 1993 to the most recent conference on June 22, 1999. In the past two years alone, the parties have had

3

five settlement conferences, occurring on June 2, 1998, November 30, 1998, December 14, 1998, March 25, 1999 and June 22, 1999. At the June 22nd conference, Judge Weiner ordered that the corporate representatives personally meet and attempt to settle the case, which they did on July 7, 1999. On that date, the parties themselves met in New York and negotiated for the entire morning, concluding that negotiations had reached an end. Thus, once again, the parties' efforts to settle were to no avail, and the parties have reached an impasse. The extensive negotiations in this case have made it apparent that this is simply one of those cases that must be sent to trial.

Further, during the March 25, 1999 conference, Judge Weiner suggested that the parties submit the case to be tried in the Eastern District of Pennsylvania, the transferee court, in five separate "mini-trials," with each party choosing its five "best" cases of the underlying Conwed employee claims for trial. Thus, as discussed below, even though Judge Weiner, as the transferee court, would not have the authority to conduct such "mini-trials," the idea shows that even Judge Weiner has recognized that this case is trial-ready.

Because the case was ready for trial, Conwed brought its first Motion to Remand on January 26, 1998, and Union Carbide eventually filed a brief in opposition to the Motion, dated June 1, 1998.[1] Judge Weiner did not address these issues at the time, and did not rule on Conwed's Motion to Remand. Conwed renewed its Motion to Remand on November 9, 1998 before Judge Weiner. Union Carbide did not file any opposition to the Motion, but Judge Weiner

---

[1] Union Carbide set forth three reasons why the case should not be remanded at that time, claiming that discovery was not complete, that settlement discussions were not complete, and that the Eastern District of Pennsylvania was the appropriate forum to address motions for summary judgment. None of these old arguments made by Union Carbide are applicable to the present motion made 1 ½ years later.

4

again did not rule on the Motion. See Warner Aff.

Conwed now brings the present Motion for Remand before the Panel, which is the appropriate tribunal to consider the Motion. See In re Roberts, 1999 WL 330198 at *2 ("the power to remand a transferred case to the transferor court lies with the Panel, not the transferee district judge"). Thus, Conwed requests that the Panel grants this Second Renewed Motion to Remand in its entirety.

## DISCUSSION

I.   **The Judicial Panel on Multidistrict Litigation Has the Power to Remand the Present Case.**

The power to remand a transferred case rests with the Panel, and not with the transferee district judge. Id. In Roberts, an asbestos personal injury plaintiff brought suit against various asbestos manufacturers in the United States District for the Southern District of Indiana. Pursuant to 28 U.S.C. 1407, the Panel transferred the case to the Eastern District of Pennsylvania for consolidation with other cases in the MDL 875, over which Judge Weiner retained jurisdiction for three years. Id. at *1. The plaintiff then filed a motion to remand the case back to the transferor court, and has been his practice, Judge Weiner remanded only the compensatory portion of the case, retaining jurisdiction over the plaintiff's claim for punitive damages. Id. The plaintiff then sought a Writ of Mandamus, petitioning the Third Circuit Court of Appeals to order Judge Weiner to remand the punitive damages claim as well.

In considering the petition, the Third Circuit first addressed whether Judge Weiner possessed the authority in the first place to remand any claims to the transferor court. Relying on the language of 28 U.S.C. 1407(a), the Court held that Judge Weiner does not have such

5

authority. Id. at *2.[2] Instead the Court held "Section 1407(a) unequivocally places the authority

to remand a transferred case with the Panel, not the transferee district judge." Id. (citing Lexecon

Inc., 118 S. Ct. at 962 (Supreme Court determined that § 1407(a) imposes a mandatory

obligation on the Panel to remand transferred cases to their transferor court)). Finally, the

Roberts court noted that the plaintiff did not waive his rights to seek remand from the Panel by

filing the motion for remand in the transferee court. Id. at *3.

In the present case, following the directive of the Third Circuit Court of Appeals in

Roberts, supra, Conwed brings this Motion to Remand to the Panel, which is the only tribunal

with authority to remand this case. Further, it is well settled that a transferee court does not have

the power to try a transferred case. Lexecon Inc., 118 S. Ct. at 962 (§ 1407(a) precludes a

transferee district judge from assigning a transferred case to itself for trial). Thus, the entire case

must be remanded, and not split into separate "mini-trials" to be tried in the Eastern District of

Pennsylvania, as suggested by Judge Weiner at a recent settlement conference in this case.

## II.    This Lawsuit Has Been Pending for Over Seven Years and is Ripe for Trial.

In the seven years that this action has been pending, Conwed and Union Carbide have

engaged in extensive discovery, including many sets of interrogatories, requests for documents

---

[2]Section 1407(a) provides, in part, as follows:

When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings....Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred....

28 U.S.C. § 1407(a) (emphasis added).

6

and requests for admissions. The parties have also taken voluminous depositions of lay witnesses and experts, some of whose depositions lasted several days over the course of many months. Simply put, the parties have conducted exhaustive discovery which is now complete. Any argument by Union Carbide to the contrary is without merit, and would be nothing more than an effort to avoid trial.[3]

Likewise, Conwed and Union Carbide have engaged in extensive settlement negotiations, with the last settlement conference before the transferee court occurring on July 7, 1999. As with the prior settlement conferences, the parties were unable to settle.[4] Thus, despite numerous efforts to settle this case, Conwed's claim against Union Carbide have not been settled. Conwed believes that this is primarily because Union Carbide is unwilling to settle this case without facing the imminent threat of trial.

III.   **This Action is Not the Traditional Asbestos Personal Injury Action For Which the Judicial Panel on Multidistrict Litigation Created the MDL 875.**

Conwed's action against Union Carbide is not the traditional asbestos personal injury action which the MDL 875 was designed to handle.

On July 29, 1991, the Judicial Panel on Multidistrict Litigation entered an order transferring all pending federal actions involving allegations of personal injury or wrongful death caused by asbestos to the United States District Court for the Eastern District of Pennsylvania.

---

[3] The fact that this case has lasted seven years is, by itself, reason to remand the case for trial in Minnesota, where the District Court's calendar operates in an expeditious manner. Cases in the Minnesota District Court are typically set for trial within 12 to 18 months of filing.

[4] It should be noted that settlement efforts have not been entirely unsuccessful. Of the four third-party defendants impleaded by Union Carbide, Conwed has settled with two.

7

See Opinion and Order in In re: Asbestos Products Liability Litig. (No. VI), Docket No. 875 (July 29, 1991). See Warner Aff., Ex. B. In its order, the Panel determined that such cases involved common questions of fact relating to injuries or wrongful death allegedly caused by exposure to asbestos. Id. The Honorable Charles Weiner of the Eastern District of Pennsylvania was selected to preside over the coordinated pretrial procedures in the MDL 875.

Since the MDL 875 was formed, the MDL 875 has received tens of thousands of asbestos personal injury actions, and the Court has successfully resolved many of these cases. At the same time, cases that do not fall within the parameters established by the Panel in its July 29, 1991 Order have been routinely remanded. For instance, Barfield v. Texaco, Inc., Civ. No. 97-2621 (E.D. Pa. Apr. 1, 1998), was remanded to the Eastern District of Louisiana, where the plaintiffs had not alleged asbestos-related personal injuries against the "traditional" asbestos defendants. See Warner Aff., Ex. B. Rather, the plaintiffs asserted they were wrongfully exposed to asbestos and were wrongfully discharged by their employer, Texaco. Id.; see also In re: Rosenzweig, Civ. No. J-C-97099 (E.D. Pa. June 12, 1997) (asbestos personal injury claim remanded to the Eastern District of Arkansas where defendant was not a traditional asbestos defendant at time of remand); Mortensen v. Maxwell House Coffee Co., Civ. No. 4-95-736 (E.D. Pa. Sept. 14, 1995) (action remanded to Southern District of Texas where court found "defendant is not 'traditional' defendant in asbestos actions, and there are no other asbestos defendants"). See Id.

The present case is similar to those cases that have been remanded because they are not the type of cases for which the Panel created the MDL 875. Here, Conwed is not a "traditional" asbestos personal injury plaintiff claiming injuries or death as a result of exposure to asbestos. Nor is Conwed a "traditional" defendant. In fact, aside from this case, Conwed is a party to no

8

other MDL 875 case. Instead, Conwed is an employer who has paid and will pay workers' compensation benefits, as required by Minnesota workers' compensation laws, to Minnesota employees alleging asbestos-related illnesses. Similarly, while Union Carbide may be a miner, miller and supplier of asbestos, Conwed's lawsuit against Union Carbide is not an asbestos personal injury case as contemplated by the Panel. Rather, as discussed in detail below, Conwed is seeking contribution and indemnification from Union Carbide under Minnesota workers' compensation laws for benefits paid and payable to former Conwed Minnesota employees. Further, Union Carbide is the only defendant in this action, i.e. there are no other asbestos defendants.[5]

Although this case was conditionally transferred to this Court, Conwed's action does not fall within the parameters set by the Panel in establishing the MDL 875. Thus, the Panel should remand this unique action to its transferor court in Minnesota.

IV.    **This Action Involves the Specialized Application of the Minnesota Workers' Compensation Act, Which Should be Decided by the Transferor Court in Minnesota.**

Finally, in efforts to defeat Conwed's prior motions to remand, Union Carbide has claimed that the MDL 875 Court should consider motions for summary judgment and motions to dismiss. However, the determination of the parties' claims involves evaluating underlying claims by Conwed workers in light of the highly specialized Minnesota Workers' Compensation Act. Such complicated Minnesota-specific issues should be addressed by the court in Minnesota.

In Minnesota, third party actions under the Workers' Compensation Act are governed by

---

[5]While Union Carbide has impleaded four third-party defendants, only two remain. See n. 4, supra.

9

Minn. Stat. § 176.061(5)-(10). These provisions of the Minnesota Workers' Compensation Act provide that when an employee elects to receive workers' compensation benefits for an injury caused by a third party's negligence, the employer is subrogated to the employee's rights against the tortfeasor up to the total amount of workers' compensation liability. Kliniski v. Southdale Manor, Inc., 518 N.W.2d 7, 9 (Minn. 1994). The real party in interest in any such action is the insurer, or self-insured employer. Fidelity & Cas. Ins. Co. v. St. Paul Gas Light Co., 188 N.W. 265 (Minn. 1923). The Act provides in part, as follows:

> If an injury or death for which benefits are payable is caused under circumstances which created a legal liability for damages on the part of a party other than the employer, that party being then insured or self-insured in accordance with this chapter, and the provisions of subdivisions 1,2,3, and 4 do not apply, or the party other than the employer is not then insured or self insured as provided by this chapter, legal proceedings may be taken by the employee or the employee's dependents in accordance with clause (a), or by the employer, or by the attorney general on behalf of the special compensation fund, in accordance with clause (b), against the other party to recover damages, notwithstanding the payment of benefits by the employer or the special compensation fund or their liability to pay benefits.

Minn. Stat. § 176.061, subd. 5. Thus, subdivision 5 allows an employer to commence a subrogation action against a third party either in the employee's name or in the name of the employer. Minn. Stat. § 176.061, subd. 5.

Subdivision 7, which accords an employer a separate cause of action against a third party, extends such an action to compensation not yet payable. Minn. Stat.§ 176.061, subd. 7. It provides that the amount recovered by an employer for medical expenses or other compensation is for the benefit of the employer to the extent that the employer "has paid or will be required to pay compensation or pay for medical treatment of the injured employee." Id.; see Haase v. Haase, 369 N.W.2d 311, 314 (Minn. Ct. App. 1985) (following employee's Naig settlement,

10

employer has subrogation claim against tortfeasor for benefits payable in the future and benefits

already paid).[6] The calculation of contribution has spawned a large of amount of case law in

Minnesota. See, e.g., Lambertson v. Cincinnati Corp., 257 N.W.2d 679 (Minn. 1977);

Westendorf by Westendorf v. Stasson, 330 N.W.2d 699 (Minn. 1983); Paine v. Waterworks

Supply Co., 31 W.C.D. 18, 269 N.W.2d 725 (Minn. 1978); Hewitt v. Apollo Group, 490 N.W.2d

898 (Minn. Ct. App. 1992); Kuehn v. Jack Frost, Inc., 33 W.C.D. 476 (Minn. W.C. Ct. App.

1977); Duenow v. Midwest Excavating Co., 32 W.C.D. 511 (Minn. W.C. Ct. App. 1980);

Schmitt v. Anderson, 472 N.W.2d 189 (Minn. Ct. App. 1991); Kempa v. E.W. Constr. Co., 370

N.W.2d 414 (Minn. 1985).

The method for calculating any future contribution liability is currently delineated in

Minnesota, as follows:

> [T]he trial judge should determine the amount of benefits payable in the future on the
> evidence available (using affidavits, depositions, and exhibits) and make reasonable
> assumptions (such as life expectancy of the injured employee), and then reduce the
> benefits payable to present value.

Tyroll v. Private Label Chem., Inc., 505 N.W.2d 54, 61 (Minn. 1993).

Nevertheless, unresolved issues in this complex area of litigation remain. See, e.g.,

Kliniski v. Southdale Manor, Inc., 518 N.W.2d 7 (Minn. 1994); S.B. Foot Tanning Co. v.

Piotrowski, 554 N.W.2d 413 (Minn. Ct. App. 1996); Decker v. Oak Ridge Homes, SLS, Inc.,

557 N.W.2d 360 (Minn. Ct. App. 1996); Jackson v. Zurich Amer. Ins. Co., 542 N.W.2d 621

(Minn. 1996).

---

[6]Naig v. Bloomington Sanitation, 259 N.W.2d 891 (Minn. 1977), authorizes Conwed, as
an employer, to bring the present action.

Similarly, Subdivision 10 creates a statutory right of indemnity for compensation the

employer has already paid as well as compensation payable in the future, as follows:

> Notwithstanding the provisions of chapter 65B or any other law to the contrary, an
> employer has a right of indemnity for any compensation paid or payable pursuant to this
> chapter, including temporary total compensation, temporary partial compensation,
> permanent partial disability, economic recovery compensation, impairment
> compensation, medical compensation, rehabilitation, death, and permanent total
> compensation.

Minn. Stat. § 176.061, subd. 10.

Section 176.061, taken as a whole, presents a comprehensive plan for asserting the claims

of an employer and employee against third parties and for distributing any sums recovered.

Jackson v. Zurich Amer. Ins. Co., 542 N.W.2d 621 (Minn. 1996); see also Van Gordon v.

Beaver, 928 F. Supp. 858 (D. Minn. 1996).

Further, under Naig v. Bloomington Sanitation, 259 N.W.2d 891 (Minn. 1977), an

employee in a third-party tortfeasor action may separate his/her claim into subrogable and non-

subrogable portions, and settle the non-subrogable part without obligation to pay any part of the

recovery to the employer. Here, several hundred, but not entirely the same group, of employees,

brought state court asbestos-related tort claims in Minnesota. If the employee settles on a Naig

basis with a third-party tortfeasor, the settlement is not subject to the distribution formula set

forth in Minn. Stat. § 176.061, subd. 6, and the employer, here Conwed, is left to independently

pursue its subrogation claim against the tortfeasor. Id. at 894.[7] Likewise, an employer's

subrogation claim is not subject to the subdivision 6 distribution formula. Tyroll, 505 N.W.2d at

---

[7]All Conwed employees who brought state court claims settled on the basis of Naig
releases.

12

60. The proper measure of damages in an employer's subrogation action includes recovery of the employee's common law damages for past and future wage loss, loss of earning capacity and similar items of damages, as well as medical expenses, both paid and payable in the future. Id.

In the present case, Union Carbide's argument that these issues, in the form of motions to dismiss or motions for summary judgment, should be handled by this Court in the MDL 875 are without merit. To ask Judge Weiner in the Eastern District of Pennsylvania to consider complex legal issues that have spawned almost continuous litigation for twenty years in Minnesota is simply asking too much. Rather, these issues must be considered by the court in Minnesota, which is the proper court to apply the detailed provisions of the Minnesota Workers' Compensation Act, as interpreted by Minnesota courts. While the transferee court has overseen the pre-trial discovery in this case, any discovery issues which arose are much different than substantive issues of law under the Minnesota Workers' Compensation Act. Discovery issues involve the general interpretation of the Federal Rules of Civil Procedure, applicable to all federal courts. The only pre-trial issues that remain are limited to the Minnesota Workers' Compensation Act.

V.    **Despite its Status as an Atypical Case, the Transferee Court Has Successfully Overseen Discovery and the Case is Now Trial-Ready.**

Even though this case is not the typical case transferred to the MDL 875, the transferee court has taken commendable action in accepting and attempting to settle this matter. The transferee efforts include (1) overseeing voluminous discovery, including a number of disputes; (2) conducting seven settlement conferences over the course of seven years; (3) successfully overseeing Conwed's settlement with two third-party defendants who were impleaded by Union

13

Carbide; and (4) making the case ready for trial. These efforts are no small feat in light of the fact that this case arises under the unique and arcane issues of Minnesota Workers' Compensation laws.

Due to these efforts, and the efforts of the parties, no coordinated pretrial proceedings remain. This case is ready for trial. The United States District Court for the District of Minnesota will be more suited to determining the issues arising under Minnesota law involved in this case. For the convenience of the parties and in the interest of justice, Conwed respectfully requests that this action be returned to Minnesota for further proceedings.

## CONCLUSION

For the reasons set forth above, Conwed respectfully requests that the Panel remand this case to the United States District Court for the District of Minnesota for further proceedings.

Dated: _July 12, 1999_

STICH, ANGELL, KREIDLER, BROWNSON & BALLOU, P.A.

_____

Robert D. Brownson, Esq., #12245
Kristi K. Warner, Esq., #259986
The Crossings, Suite 120
250 Second Avenue South
Minneapolis, MN 55401
(612)333-6251


Michael Goldman
Rudnick & Wolfe
203 North LaSalle Street, Suite 1800
Chicago, IL 60601-1293
(312) 236-7516

ATTORNEYS FOR PLAINTIFF CONWED
CORPORATION

14

I

US OFFICE PRODUCTS

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV 2 2 2000

FILED
CLERK'S OFFICE

## DOCKET NO. 875

### BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

### IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*Owens-Illinois, Inc.* v. *T&N Ltd., et al.,* E.D. Texas, C.A. No. 2:99-117

### BEFORE JOHN F. NANGLE, CHAIRMAN, LOUIS C. BECHTLE, JOHN F. KEENAN, WM. TERRELL HODGES, MOREY L. SEAR, BRUCE M. SELYA* AND JULIA SMITH GIBBONS, JUDGES OF THE PANEL

### TRANSFER ORDER

Before the Panel is a motion brought, pursuant to 28 U.S.C. §1407, by defendants T&N plc and Federal-Mogul-Corp. for transfer of the above-captioned action (*Owens*) to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner. Plaintiff Owens-Illinois, Inc. opposes transfer.

On the basis of the papers filed and the hearing held, the Panel finds that *Owens* involves common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the action to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of this action is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI),* 771 F. Supp. 415 (J.P.M.L. 1991). Plaintiff seeks to exclude *Owens* from transfer on the ground that the action is not specifically a claim for asbestos related personal injuries, but rather is one sounding in antitrust, fraud and racketeering laws and involving an alleged conspiracy to allocate markets and fix prices for asbestos. Regardless of how plaintiff seeks to characterize the legal nature of its complaint, the factual allegations of the complaint overlap with those in many MDL-875 actions where both the *Owens* plaintiff's and the *Owens* defendants' knowledge of (and conduct concerning) the alleged health hazards of asbestos is at issue. The basic relief sought in the various counts of the complaint is damages equal to the sums that plaintiff has paid to defend and settle asbestos personal injury claims (precisely the damages in the cross-claims and third party claims for contribution found in many previously centralized MDL-875 actions). It may be that on further refinement of the issues and close scrutiny by the transferee court, *Owens* can be remanded in advance of the other actions in the transferee district. Should the transferee court deem remand of any claims or actions appropriate, the

---

*Judge Selya took no part in the decision of this matter.

- 2 -

transferee court can communicate this to the Panel, and the Panel will accomplish remand with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L., 192 F.R.D. 459, 470-72 (2000). We are confident that Judge Weiner will continue to promptly review arguments for returning transferred actions or claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever he is convinced that retention in the MDL-875 proceedings is no longer needed.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the above-captioned action entitled *Owens-Illinois, Inc. v. T&N Ltd., et al.*, E.D. Texas, C.A. No. 2:99-117, be, and the same hereby is, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

John F. Nangle
Chairman

J

US OFFICE PRODUCTS

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

SEP 29

FILED
CLERK'S OFFICE

## DOCKET NO. 875

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*Raymark Industries, Inc. v. Frederick M. Baron, et al.*, N.D. Texas, C.A. No. 3:98-673

## BEFORE JOHN F. NANGLE, CHAIRMAN, WILLIAM B. ENRIGHT,[*] CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS,[*] LOUIS C. BECHTLE AND JOHN F. KEENAN, JUDGES OF THE PANEL

### TRANSFER ORDER

Before the Panel is a motion brought, pursuant to Rule 12, R.P.J.P.M.L., 147 F.R.D. 589, 596 (1993), by plaintiff in the above-captioned action (*Raymark*) requesting that the Panel vacate the portion of its order conditionally transferring *Raymark* to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner. Defendants in *Raymark* support transfer of the action.

On the basis of the papers filed and the hearing held, the Panel finds that *Raymark* involves common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the action to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of *Raymark* is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial relating to allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991). In particular, we note that in the Panel's original decision distinctions based on such matters as the pendency of motions or other matters before the transferor court, the uniqueness of a party's status, the type of defendant, the docket condition of any specific federal district, and/or the presence of unique claims or additional claims not relating to injury or death, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket. We find no reason to depart from this approach in dealing with the question of transfer of the action now before the Panel. We point out that *Raymark*, an action that challenges attorney defendants' professional conduct of asbestos cases brought by them on behalf of personal injury claimants, can be expected to raise issues concerning not only the viability of the underlying asbestos products liability claims, but also questions of judicial management and discovery that are already (with respect to the MDL-875 cases) subject to the jurisdiction and control of Judge Weiner. In opposing transfer, plaintiff

---

[*]Judges Enright and Sanders took no part in the decision of this matter.

- 2 -

has placed great reliance on the fact that another action between these parties, ordered transferred by the Panel from the District of Utah following its January 1998 hearing, was almost immediately remanded by the Panel following a suggestion of remand from Judge Weiner who concluded, *inter alia*, that the action did not fall within the scope of his MDL-875 actions. The "precedential" value of the Utah case, however, is severely undercut by the fact that another action involving these parties and asserting claims of vexatious litigation (*Raymark Industries, Inc. v. Peter G. Angelos, et al.*, N.D. Georgia, C.A. No. 1:96-940) was ordered transferred by the Panel after a September 1996 hearing and remains pending before Judge Weiner. We therefore view the disposition of the Utah case as rather illustrating the continuing wisdom of the transfer approach adopted by the Panel in this docket: 1) actions meeting the Panel's threshold for transfer are ordered transferred under Section 1407; and 2) any parties that believe the uniqueness of their particular situation renders continued inclusion of their action in MDL-875 unnecessary or inadvisable then present their arguments to the transferee judge, who, whenever he deems remand of any claims or actions proper, invokes the available procedures whereby this may be accomplished with a minimum of delay. *See* Rule 14, R.P.J.P.M.L., *supra*, 147 F.R.D. at 597-99. We are confident that Judge Weiner will continue to promptly review arguments for returning transferred actions or claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever he is convinced that retention in the MDL-875 proceedings is no longer needed.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the action entitled *Raymark Industries, Inc. v. Frederick M. Baron, et al.*, N.D. Texas, C.A. No. 3:98-673, be, and the same hereby is, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

John F. Nangle
Chairman

**K**

US OFFICE PRODUCTS

SEP 25

ATTEST _Chula_
FOR THE JUDICIAL PANEL OF
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

SEP 25 96

PATRICIA D. HOWARD
CLERK OF THE PANEL

## DOCKET NO. 875
# FILED

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

SEP 3 0 1996

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

By _____ Dep. Clerk

Raymark Industries v. Peter G. Angelos, et al., N.D. Georgia, C.A. No. 1:96-940

BEFORE JOHN F. NANGLE, CHAIRMAN, ROBERT R. MERHIGE, JR.,
WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JOHN F. GRADY,
BAREFOOT SANDERS* AND LOUIS C. BECHTLE, JUDGES OF THE
PANEL

### TRANSFER ORDER

FILED   SEP 3 0 1996

Before the Panel is a motion brought, pursuant to Rule 12, R.P.J.P.M.L., 147 F.R.D. 589, 596 (1993), by plaintiff in the above-captioned action (*Raymark*) requesting that the Panel vacate the portion of its order conditionally transferring *Raymark* to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner. Six of the eight *Raymark* defendants oppose the motion and support transfer of the action.

On the basis of the papers filed and the hearing held, the Panel finds that *Raymark* involves common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the action to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of *Raymark* is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991). In particular, we note that in the Panel's original decision distinctions based on such matters as the uniqueness of a party's status, the type of defendant, the docket condition of any specific federal district, and/or the presence of unique claims or additional claims not relating to injury or death, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket. We find no reason to depart from this approach in dealing with the question of transfer of the action now before the Panel. We point out that *Raymark*, an action that challenges attorney defendants' professional conduct of asbestos cases brought by them on behalf of personal injury claimants, can be expected to raise issues concerning not only the viability of the underlying asbestos products liability claims, but also questions of judicial management, discovery, and supervision of attorney fees that are

---

* Judge Sanders took no part in the decision of this matter.

- 2 -

already (with respect to the MDL-875 cases) subject to the jurisdiction and control of Judge Weiner. We also note that should the transferee judge deem remand of *Raymark* in advance of other MDL-875 actions to be appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 14, R.P.J.P.M.L., 147 F.R.D. 589, 597-99 (1993).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the action entitled *Raymark Industries v. Peter G. Angelos, et al.*, N.D. Georgia, C.A. No. 1:96-940, be, and the same hereby is, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:



John F. Nangle
Chairman

ENTERED: _12/1/96_

CLERK OF COURT

L

US OFFICE PRODUCTS



## DOCKET NO. 875

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

JAN 29 1998

FILED
CLERK'S OFFICE

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*Raymark Corp., et al. v. Frederick M. Baron, et al.,* D. Utah, C.A. No. 1:97-109

## BEFORE JOHN F. NANGLE, CHAIRMAN, ROBERT R. MERHIGE, JR., WILLIAM B. ENRIGHT,* CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS* AND LOUIS C. BECHTLE, JUDGES OF THE PANEL

## TRANSFER ORDER

Before the Panel is a motion brought, pursuant to Rule 12, R.P.J.P.M.L., 147 F.R.D. 589, 596 (1993), by plaintiff in the above-captioned action (*Raymark*) requesting that the Panel vacate the portion of its order conditionally transferring *Raymark* to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner. Defendants in *Raymark* oppose the motion and support transfer of the action.

On the basis of the papers filed and the hearing held, the Panel finds that *Raymark* involves common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the action to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of *Raymark* is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial relating to allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991). In particular, we note that in the Panel's original decision distinctions based on such matters as the pendency of motions or other matters before the transferor court,[1] the uniqueness of a party's status, the type of defendant, the docket condition of any

---

*Judges Enright and Sanders took no part in the decision of this matter.

[1]Plaintiffs have argued that transfer should be denied or deferred in order to permit the judge assigned their action to rule on a pending remand motion. There is no need to delay transfer in order to accommodate such an interest. We note that: 1) as a practical matter, there is a lag time of at least three or four months from the filing of an action, its identification as a potential tag-along action, issuance of a conditional transfer order, stay of transfer when a party timely objects to the conditional transfer, briefing on the question of transfer, the Panel hearing, and the issuance of the Panel's subsequent order; 2) Panel Rule 18, R.P.J.P.M.L., *supra*, 147 F.R.D. at 601, expressly provides that the pendency of a conditional transfer order does not in any way i) suspend orders and pretrial
(continued...)

- 2 -

specific federal district, and/or the presence of unique claims or additional claims not relating to injury or death, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket.  We find no reason to depart from this approach in dealing with the question of transfer of the action now before the Panel. We point out that *Raymark,* an action that challenges attorney defendants' professional conduct of asbestos cases brought by them on behalf of personal injury claimants, can be expected to raise issues concerning not only the viability of the underlying asbestos products liability claims, but also questions of judicial management and discovery that are already (with respect to the MDL-875 cases) subject to the jurisdiction and control of Judge Weiner.  We also observe that should the transferee judge deem remand of *Raymark* in advance of other MDL-875 actions to be appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 14, R.P.J.P.M.L., *supra,* 147 F.R.D. at 597-99.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the action entitled *Raymark Corp., et al. v. Frederick M. Baron, et al.,* D. Utah, C.A. No. 1:97-109, be, and the same hereby is, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

John F. Nangle
Chairman

(...continued)

proceedings in the district court in which the action that is the subject of the conditional transfer order is pending, or ii) limit the pretrial jurisdiction of that court; and 3) accordingly, those courts wishing to address such motions have adequate time in which to do so, those courts concluding that such issues should be addressed by the transferee judge need not rule on them, and the process of 1407 transfer in MDL-875 can continue without any unnecessary interruption or delay.

**M**

US OFFICE PRODUCTS

FILED    OCT  4 199

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

OCT - 1 1993

PATRICIA D. HOWARD
CLERK OF THE PANEL

# 98¢

## DOCKET NO. 875

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*Keene Corp. v. Joseph Fiorelli, et al.,* E.D. New York, C.A. No. 1:93-2129

## BEFORE JOHN F. NANGLE, CHAIRMAN, MILTON POLLACK,* ROBERT R. MERHIGE, JR., WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JR., JOHN F. GRADY AND BAREFOOT SANDERS,* JUDGES OF THE PANEL

### TRANSFER ORDER

Presently before the Panel is a motion, pursuant to Rule 12, R.P.J.P.M.L., 147 F.R.D. 589, 596 (1993), by plaintiff Keene Corp. in the above-captioned action (*Keene*) to vacate the portion of the Panel order, issued on June 11, 1993, conditionally transferring *Keene* to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner.

On the basis of the papers filed and the hearing held, the Panel finds that *Keene* involves common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of *Keene* to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of *Keene* is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991). In particular, we note that in the Panel's original decision distinctions based on such matters as the pendency of motions or other matters before the transferor court, the uniqueness of a party's status, the docket condition of any specific federal district, the presence of unique or additional claims not relating to injury or death, and/or the advanced stage of proceedings in given actions, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket. In rejecting these distinctions, the Panel i) concluded that the need to have one judge with overall control and

---

*Judges Pollack and Sanders recused themselves and took no part in the decision of this matter.

- 2 -

responsibility for the resolution of federal asbestos personal injury claims was paramount, and ii) determined that, accordingly, before creating exceptions to handle any unusual developments, it was necessary to first transfer actions meeting the 1407 criteria to the Eastern District of Pennsylvania in order to permit the transferee judge to make his own assessment in light of his familiarity with the needs of the entire docket (recognizing that an array of devices — early remand of actions or claims, transfer under 28 U.S.C. §1404, appointment of additional transferee judges, etc. — were readily available for application to actions which the transferee judge concluded were deserving of special attention or treatment). We see no reason to depart from this approach in dealing with the question of transfer of *Keene*.

At oral argument on this matter attention was invited to the order of the United States Court of Appeals for the Second Circuit dated August 10, 1993, i) granting a motion for an expedited appeal of rulings in *Keene* by the transferor court, and ii) staying proceedings in *Keene* pending resolution of the appeal. We find that transfer of *Keene* under 1407 in no way affects the operation of the stay, as we are simply indicating the place where the pretrial proceedings in *Keene* will occur if and when they resume. *See, e.g., In re Franklin National Bank Securities Litigation*, 393 F.Supp. 1093, 1095-96 (J.P.M.L. 1975). And under the circumstances disclosed by the record in this matter, we are not persuaded that delay of transfer pending resolution of the appeal is warranted. *See, e.g., In re Multidistrict Private Civil Treble Damage Antitrust Litigation Involving IBM*, 302 F.Supp. 796, 800 (J.P.M.L. 1969). As to the effect of transfer on pending appeals, we note that this is a matter within the province of the concerned appellate courts. *See, e.g., Meat Price Investigators Association, et al. v. Spencer Foods*, 572 F.2d 163, 164 (8th Cir. 1978).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the action entitled *Keene Corp. v Joseph Fiorelli, et al.*, E.D. New York, C.A. No. 1:93-2129, be, and the same hereby is, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

John F. Nangle
Chairman

10/5/93

CLERK OE COURT

N

US OFFICE PRODUCTS

IN THE CIRCUIT COURT OF WASHINGTON COUNTY, MISSISSIPPI

WILLIAM YOUNG, ET AL.[1]                                      PLAINTIFFS

VS.                                       CAUSE NO. _____

CCR, INC., SAMUEL J. HEYMAN, et al.[2]                        DEFENDANTS

### COMPLAINT: JURY TRIAL REQUESTED

COME NOW Plaintiffs, by counsel, and for cause of action against the Defendants state the following:

1)   Plaintiffs are 183 in number.   All are asbestos victims who either suffer from asbestos-related diseases or represent the estate of asbestos victims.   Each of these Plaintiffs has filed suit or hold viable claims against various asbestos defendants.   Each of these Plaintiffs have signed a contractual release with the asbestos defendants.   A complete listing of the Plaintiffs is contained on Exhibit "A" attached hereto.

2)   The Defendants include Center for Claims Resolution, Inc. (CCR) and its 19 member companies in addition to A.P. Green, Inc.  More specifically, the Defendants are:

> (a) Center for Claims Resolution, Inc., a foreign corporation organized in the State of Delaware and not authorized to do business in the State of Mississippi.  This Defendant may be served with process of this

---

[1] See Exhibit "A".
[2] See Exhibit "B".

1

Court at 504 Carnegie Center, Second Floor,
Princeton, New Jersey 08540, Attn: John G.
Gaul;

(b)  A.  P.  Green,  Inc.,  a  Pennsylvania
corporation  organized  in  the  State  of
Delaware and authorized to do business in
the State of Mississippi on July 30, 1998,
which may be served with process of this
Court at C.T. Corporation, 631 Lakeland East
Drive, Flowood, MS  39208;

(c)  Amchem  Products,  Inc.,  a  Delaware
corporation  organized  in  the  State  of
Pennsylvania and authorized to do business
in the State of Mississippi on May 1, 1967,
which may be served with process of this
Court at C.T. Corporation, 631 Lakeland East
Drive, Flowood, MS  39208;

(d)  Armstrong World Industries, Inc.,  a
Pennsylvania corporation organized in the
State of Pennsylvania and authorized to do
business in the State of Mississippi on
April 23, 1942 which may be served with
process of this Court at C.T. Corporation,
631 Lakeland East Drive, Flowood, MS  39208;

(e) Asbestos Claims Management Corporation,
a North Carolina corporation organized in
the State of Delaware and authorized to do
business in the State of Mississippi on
April 5, 1945, which may be served with
process of this Court by service upon its
agent  for  process  Corporation  Service
Company, 327 Hillsborough St., Raleigh, NC
27603.

(f) Certainteed Corp., a foreign corporation
not authorized to do business in the State
of Mississippi. This Defendant may be served
with process of this Court by delivery of
the Summons and Complaint upon its lawyer
the Honorable Jeffrey Hubbard, Wells, Moore,
Simmons & Hubbard, PLLC, P.O. Box 1970, 1300

2

AmSouth Plaza, Jackson, Mississippi 39215-1970;

(g) C.E. Thurston and Sons, Inc., a foreign corporation not authorized to do business in the State of Mississippi. This Defendant may be served with process of this Court by delivery of the Summons and Complaint upon its lawyer the Honorable Jeffrey Hubbard, Wells, Moore, Simmons & Hubbard, PLLC, P.O. Box 1970, 1300 AmSouth Plaza, Jackson, Mississippi 39215-1970;

(h) Dana Corp., an Ohio corporation organized in the State of Virginia and authorized to do business in the State of Mississippi on December 20, 1982, which may be served with process of this Court at C.T. Corporation, 631 Lakeland East Drive, Flowood, MS 39208;

(i) Ferodo America, Inc. (formerly Nuturn Corp.), a foreign corporation not authorized to do business in the State of Mississippi. This Defendant may be served with process of this Court by delivery of the Summons and Complaint upon its lawyer the Honorable Jeffrey Hubbard, Wells, Moore, Simmons & Hubbard, PLLC, P.O. Box 1970, 1300 AmSouth Plaza, Jackson, Mississippi 39215-1970;

(j) Flexitallic, Inc., a foreign corporation not authorized to do business in the State of Mississippi. This Defendant may be served with process of this Court by delivery of the Summons and Complaint upon its lawyer the Honorable Jeffrey Hubbard, Wells, Moore, Simmons & Hubbard, PLLC, P.O. Box 1970, 1300 AmSouth Plaza, Jackson, Mississippi 39215-1970;

(k) GAF Corp., a foreign corporation not authorized to do business in the State of Mississippi. This Defendant may be served with process of this Court by delivery of the Summons and Complaint upon its lawyer

3

the Honorable Jeffrey Hubbard, Wells, Moore,
Simmons & Hubbard, PLLC, P.O. Box 1970, 1300
AmSouth Plaza, Jackson, Mississippi 39215-
1970;

(l) I.U. North America, Inc., a foreign
corporation not authorized to do business in
the State of Mississippi. This Defendant may
be served with process of this Court by
delivery of the Summons and Complaint upon
its lawyer the Honorable Jeffrey Hubbard,
Wells, Moore, Simmons & Hubbard, PLLC, P.O.
Box 1970, 1300 AmSouth Plaza, Jackson,
Mississippi 39215-1970;

(m) Maremont Corp., a foreign corporation
not authorized to do business in the State
of Mississippi. This Defendant may be served
with process of this Court by delivery of
the Summons and Complaint upon its lawyer
the Honorable Jeffrey Hubbard, Wells, Moore,
Simmons & Hubbard, PLLC, P.O. Box 1970, 1300
AmSouth Plaza, Jackson, Mississippi 39215-
1970;

(n) National Service Industries, Inc., a
Georgia corporation organized in the State
of Georgia and authorized to do business in
the State of Mississippi on September 23,
1998, which may be served with process of
this Court at Corporation Service Company,
506 S. President St., Jackson, MS    39201-
5301;

(o) Nosroc Corp., a foreign corporation not
authorized to do business in the State of
Mississippi. This Defendant may be served
with process of this Court by delivery of
the Summons and Complaint upon its lawyer
the Honorable Jeffrey Hubbard, Wells, Moore,
Simmons & Hubbard, PLLC, P.O. Box 1970, 1300
AmSouth Plaza, Jackson, Mississippi 39215-
1970;

(p) Pfizer, Inc., a  New York corporation
organized  in  the  State  of  Delaware  and

4

authorized to do business in the State of
Mississippi on June 24, 1961 which may be
served with process of this Court at C.T.
Corporation,   631   Lakeland   East   Drive,
Flowood, MS  39208;

(q)  Quigley  Company,  Inc.,  a  foreign
corporation not authorized to do business in
the State of Mississippi. This Defendant may
be served with process of this Court by
delivery of the Summons and Complaint upon
its lawyer the Honorable Jeffrey Hubbard,
Wells, Moore, Simmons & Hubbard, PLLC, P.O.
Box 1970, 1300 AmSouth Plaza, Jackson,
Mississippi 39215-1970;

(r)  Shook & Fletcher Insulation Co.,  an
Alabama corporation organized in the State
of Delaware and authorized to do business in
the State of Mississippi on January 20, 1977
which may be served with process of this
Court at C.T. Corporation, 631 Lakeland East
Drive, Flowood, MS  39208;

(s)  T&N  Plc,  a  foreign  corporation  not
authorized to do business in the State of
Mississippi. This Defendant may be served
with process of this Court by delivery of
the Summons and Complaint upon its lawyer
the Honorable Jeffrey Hubbard, Wells, Moore,
Simmons & Hubbard, PLLC, P.O. Box 1970, 1300
AmSouth Plaza, Jackson, Mississippi 39215-
1970;

(t)  Union  Carbide  Corp.,  a  Connecticut
corporation organized in the State of New
York and authorized to do business in the
State of Mississippi on 12/30/1949 which may
be served with process of this Court at C.T.
Corporation,   631   Lakeland   East   Drive,
Flowood, MS  39208;

(u)   United   States   Gypsum   Company,   an
Illinois corporation organized in the State
of Delaware and authorized to do business in
the State of Mississippi in June 27, 1966,

which may be served with process of this
Court at C.T. Corporation, 631 Lakeland East
Drive, Flowood, MS 39208;

(v) Wells, Moore, Simmons & Hubbard, PLLC,
P.O. Box 1970, 1300 AmSouth Plaza, Jackson,
Mississippi 39215-1970;

(w) Samuel J. Heyman, an adult resident of
New York, Borough of Manhattan.


3)    This    suit    arises    from    the    Defendants'    fraud,
conspiracy, negligence and tortious breach of their Settlement
Agreement with the Plaintiffs.    On September 15, 1999, the
Plaintiffs' lawyer Michael T. Lewis agreed with CCR to settle
Plaintiffs' asbestos-related claims against CCR members and A.P.
Green.    Plaintiffs are primary parties to and/or third party
beneficiaries to this contract.    This agreement is a preliminary
agreement, which sets out a mechanism under which the Plaintiffs
were to submit their claims to Defendants, who then become
obligated to pay settlement funds to the Plaintiffs provided
Plaintiffs claim documents meet the criteria of the agreement
(e.g., asbestos exposure and medical diagnosis).    At all
pertinent times, CCR included GAF as one of its members.
Although A.P. Green was not a member of CCR on September 15,
1999, it was a member of CCR during negotiation and consummation
of the Settlement Agreement.

6

4)    Pursuant to the CCR Settlement Agreement and in
reliance on Defendants' fraudulent mispresentations, the
Plaintiffs filed their claim documentation with CCR and signed
Releases which expunged the Defendants of any and all liability
for the Plaintiffs' asbestos injuries.   The Plaintiffs have
complied with each and every one of their obligations under the
Settlement Agreement.     All conditions precedent to the
Defendants' duty to pay settlement funds to the Plaintiffs have
been met by Plaintiffs and/or their attorneys, including
submission to CCR of appropriate documentation of asbestos
exposure and medical diagnosis.

5)    CCR acted as the sole agent for its disclosed
principals, consisting of the 19-member companies and A.P.
Green, thereby binding its principals to the September 15, 1999
Settlement Agreement.    Plaintiffs' attorneys are informed and
believe the Settlement Agreement was approved by the CCR Board
of Directors, which included representatives of GAF and A.P.
Green.

6)    The terms of the settlement agreement are purportedly
confidential.   However, the Agreement specifically excepts from
the confidentiality provision "action to enforce the terms and
conditions of the Agreement itself".   Therefore, the Plaintiffs
are attaching the Settlement Agreement as Exhibit "C".   On May

7

10, 2000, CCR tendered to Plaintiffs partial payment which did
not include the GAF contribution to the settlement which GAF and
the other CCR members had internally agreed would be payable by
GAF.  The payment should have been in the amounts disclosed on
attached Exhibit "A".  The total shortfall in the amount which
Defendants tendered to Plaintiffs is $303,009.17.

    7)   CCR has billed GAF for its appropriate portion of the
CCR payment and GAF has refused to make this payment to CCR.
GAF's failure to pay its obligations to CCR under the Settlement
Agreement is a deliberate and intentional breach of the
Settlement Agreement.  However, CCR's internal disagreement with
GAF does not relieve the CCR principals nor GAF of their
obligation to live up to the promises made in the CCR Settlement
Agreement, which is a joint and several undertaking that imposes
individual liability upon each Defendant to pay the entire
amount of the settlement, without regard to whether any
individual member of CCR made its allocable contribution.

    8)   The Defendants are well aware of their legal duties
under the CCR Settlement Agreement.  Many Plaintiffs in other
courts and other jurisdictions have filed appropriate legal
action to compel GAF and/or CCR to fulfill their obligations
under the Settlement Agreement.  Courts in other jurisdictions
have ordered GAF and/or CCR to fulfill their obligations under

8

the Settlement Agreement.   The Defendants know full well and
have known at all pertinent times that they have absolutely no
defense, either in fact or law, to the Plaintiffs' claim for
payment under the CCR Settlement Agreement.

     9)   The Defendants have joined in a conspiracy to defraud
the Plaintiffs by enticing the Plaintiffs into a Settlement
Agreement which the Defendants never intended to perform.   At
all material times, the Defendants had actual knowledge that
Defendant GAF had been gutted financially by its 96% stockholder
Samuel J. Heyman.   On January 1, 1997, Defendant GAF owned 100%
of the capital stock in International Specialty Products, Inc.
On that date GAF conveyed approximately 96% of its ISPH shares
to Defendant Heyman.   Neither Heyman nor GAF's minority
shareholders, who received approximately 4% of the ISPH stock,
paid any consideration for the ISPH shares.   Defendant GAF's
transfer of the ISPH stock eviscerated GAF of the ISPH stock,
which had a book value of $592,968,000.   At all material times
and long before September 15, 1999, the Defendants had actual
knowledge that GAF was unable to carry its contractual share of
the CCR settlement burden, yet continued to negotiate with
Plaintiffs' counsel in an effort to secure Plaintiffs'
attorney's signature on the CCR Settlement Agreement.   At all
material times the Defendants had a moral, ethical and legal

9

duty to inform Plaintiffs and their counsel of the financial difficulties which Defendant Heyman had caused GAF by his absconding with the ISPH stock.  However, none of the Defendants abided by their legal duty to speak and thereby perpetrated a fraud upon the Plaintiffs and upon this Court.

10)  Defendant Heyman's transfer of the ISPH stock from the books of GAF removed from GAF the financial and beneficial interest which GAF had enjoyed in the ISPH stock and placed the assets and business of ISPH beyond the reach of plaintiffs who were asserting asbestos claims against GAF.   In so doing, Defendant Heyman and Defendant GAF conspired to defraud the Plaintiffs by stripping GAF of the ISPH stock value.

11)  Unknown to Plaintiffs or their counsel, CCR terminated GAF's membership on January 17, 2000.   At that time the Plaintiffs had not yet signed their releases nor submitted them to CCR.  As of January, 2000, all Defendants including Defendant Wells, Moore, Simmons & Hubbard, PLLC, had actual knowledge of the internal conflict between GAF and the other CCR members.  At all material times, Defendant law firm Wells, Moore, Simmons & Hubbard, PLLC represented CCR and GAF in the suits which Plaintiffs sought to settle by virtue of the Settlement Agreement.   At all material times, Defendant Wells, Moore,

10

Simmons & Hubbard, PLLC and the other Defendants had a duty to inform the Plaintiffs that:

a) GAF had been rendered insolvent by Defendant Heyman's extraction of the ISP stock from GAF;

b) that CCR had terminated GAF's membership in CCR on January 17, 2000;

c) that GAF had refused to contribute its promised share to other CCR settlements;

d) that the other CCR members did not intend to pay the entire amount of the promised settlement to the Plaintiffs; and

e) that the CCR members remaining after GAF's ouster planned to use GAF's non-performance as an excuse to avoid their plain legal and moral duty to pay settlements to the Plaintiffs;

f) That GAF had, before March 30, 2000, established a track record of refusing to contribute to the other CCR settlements around the nation; yet, on that date, the Defendant law firm in concert with the other Defendants, submitted Release forms to all the Plaintiffs for their signature.

12) The Defendants' acts and omissions constitute breach of contract, conspiracy, fraud, outrage, negligent misrepresentation and intentional infliction of emotional distress. The Defendants' acts and omissions constitute an intentional wrong, insult, abuse and negligence so gross as to

11

constitute an independent tort which warrants Plaintiffs' claim
for tortious breach of contract.   The Defendants' refusal to
abide by their solemn written promises based upon their feigned
and deceitful excuse that GAF is not participating in the
settlement contribution is without legal, factual or moral
justification.   The Defendants' conduct is a dismal example of
corporate exertion of superior financial and bargaining might,
the effect of which is to trample upon the rights of the weak
and powerless who are unable to protect themselves.

   13)  The Defendants' acts and omissions are reasonably
calculated to advance the Defendants' financial position at the
expense of the Plaintiffs.   At all material times the Defendants
had actual knowledge that most of the Plaintiffs are among the
working poor, who because of their age and physical infirmities
caused by asbestos exposure are unable to weather a long
litigated war of attrition.   The Defendants' scheme is to wear
down the sick and infirm Plaintiffs, delaying settlement as the
Plaintiffs die one by one.    Thereby the Defendants reap
financial gain.   The Defendants at all material times knew that
the Plaintiffs, because of their physical illness and financial
status, could scarcely afford a protracted legal fight; the
Defendants thereby hoped to achieve financial gain at the
Plaintiffs' expense by breaching the Defendants' legal and moral
obligations under the Settlement Agreement and under Mississippi
common law.

12

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully demand individual compensatory damages of and from the Defendants in the amounts listed in the "unpaid" column of Exhibit "A" which totals $303,009.17 for all (183) Plaintiffs. Also, Plaintiffs demand punitive damages as the Court and jury may deem appropriate under the facts, law and circumstances; and, attorneys' fees and litigation expenses (but not to exceed $75,000 for each Plaintiff total damages, litigation expenses and attorneys fees).

This, the _5th_ day of _July_, 2000.

Respectfully submitted,

MICHAEL T. LEWIS, MSB #1238

PAULINE S. LEWIS, MSB #1239

LEWIS & LEWIS, ATTORNEYS
P. O. Drawer 1600
Clarksdale, MS  38614-1600
(662) 627-4477
(662) 627-2267 (facsimile)

13

FILED

AUG 16 2000

1IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

ABLEN B COYLE CLERK
BY _____
                          Deputy

WILLIAM YOUNG, ET AL.                                    PLAINTIFFS

                                        4:00CV 225-P-A
VS.                                     CIVIL ACTION NUMBER: _____

CCR, INC., SAMUEL J. HEYMAN, ET AL.                      DEFENDANTS

                    NOTICE TO ALL PARTIES OF REMOVAL

        PLEASE TAKE NOTICE, that on August 16, 2000, the enclosed Notice of Removal was

filed, thereby removing this action from the Circuit Court for Washington County, Mississippi, to

the United States District Court for the Northern District of Mississippi.  In addition, a copy of the

Notice of Removal was delivered to the Circuit Court for Washington County, Mississippi.

                        RESPECTFULLY SUBMITTED,

                        BY: _____
                        MARCY L. BRYAN (MBN 10864)
                        ATTORNEY FOR WELLS MOORE SIMMONS & HUBBARD, PLLC

WALTER G. WATKINS, MSB 6988
MARCY L. BRYAN, MSB 10864
FORMAN PERRY WATKINS KRUTZ & TARDY, PLLC
188 East Capitol Street, Suite 1200
Post Office Box 22608
Jackson, Mississippi 39225-2608
Telephone: 601-960-8600
Facsimile: 601-960-8613

## CERTIFICATE OF SERVICE

I, Marcy L. Bryan, attorney for Wells Moore Simmons & Hubbard, PLLC, defendant herein,

hereby certify that I have this day mailed, via U.S. mail, postage pre-paid, a copy of the above and

foregoing document

THIS THE 16 day of August, 2000.

MARCY L. BRYAN (MSN 10864)

FILED

1IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI     AUG 16 2000
GREENVILLE DIVISION

ARLEN B. COYLE, CLERK
BY _____ Deputy

WILLIAM YOUNG, ET AL.                                    PLAINTIFFS

                                        4:00CV225-P-A

VS.                                      CIVIL ACTION NUMBER: _____

CCR, INC., SAMUEL J. HEYMAN, ET AL.                      DEFENDANTS

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that this Notice of Removal and the exhibits attached hereto have

been filed this day for and on behalf of Wells, Moore, Simmons & Hubbard, PLLC ("WMSH") in

the United States District Court for the Northern District of Mississippi, Greenville Division. You

are hereby served with a copy of this Notice of Removal of said cause to the United States District

Court from the Circuit Court of Washington County, Mississippi, upon the grounds stated herein.

Pursuant to said removal, you will proceed no further in said Circuit Court of Washington County,

Mississippi, and you will be mindful of the provisions of Title 28 U.S.C. Section 1441, et seq.

Please take notice hereof and govern yourselves accordingly.

Defendant WMSH, without waiving any defense available under Rule 12 of the Federal

Rules of Civil Procedure, petitions this Honorable Court for removal of this action from the Circuit

Court of Washington County, Mississippi pursuant to 28 U.S.C. Section 1441, et seq., 28 U.S.C.

Section 1332 (diversity jurisdiction), and Rule 81(c) of the Federal Rules of Civil Procedure. As

its short and plain statement of the grounds for removal of this civil action, WMSH would show unto

the Court the following:

I.

There is now pending in the Circuit Court of Washington County, Mississippi, a certain civil action styled "William Young, et al. v. CCR, Inc., Samuel J. Heyman, et al." being civil action number 20-0164 on the docket of said Court. The time within which WMSH is required to plead, answer or otherwise respond to the Complaint has not yet expired, and the thirty-day period within which to file for and obtain removal of said civil action has not yet expired.

II.

Complete diversity of citizenship exists between the plaintiffs and defendants (except with respect to WMSH, which was fraudulently joined as a party and which therefore is not considered for purposes of determining the existence of complete diversity), and the amount in controversy in this action exceeds the sum of $75,000.00, exclusive of interest and costs.

III.

Pursuant to the provisions of Title 28 U.S.C. Section 1441, et seq., this civil action is removable by the defendant.

IV.

WMSH attaches hereto, as Exhibit "A", a copy of its entire file in the above referenced action, Civil Action Number 20-0164, and asks that said Exhibit be considered a part hereof and fully incorporated herein by reference. Additionally, Defendant WMSH has requested a certified copy of the entire court file from the Circuit Court of Washington County, Mississippi.

V.

Given that GAF Corporation is filing its own Notice of Removal and that WMSH is believed to be the only defendant that has been served with the complaint, it is evident that all defendants that are parties to the case consent to its removal.

-2-

VI.

WMSH, upon the filing of this Notice of Removal, has given notice to all parties of the filing of said Notice of Removal of said civil action, and simultaneously therewith, WMSH has filed a true and correct copy of the Notice of Removal with the Clerk of the Circuit Court of Washington County, Mississippi, together with the exhibits thereto, all in compliance with Title 28 U.S.C. Section 1446(d).

WHEREFORE, PREMISES CONSIDERED, WMSH prays that this Notice of Removal and exhibits thereto be received and filed, and that the said Circuit Court of Washington County, Mississippi, proceed no further herein. WMSH further prays for all necessary writs to bring before this Honorable Court all records and proceedings in the said Circuit Court of Washington County, Mississippi, and the defendant prays for such other, further, special and general relief as it is entitled to receive.

RESPECTFULLY SUBMITTED,


BY: _____
MARCY L. BRYAN (MSN 10864)
ATTORNEY FOR WELLS MOORE SIMMONS & HUBBARD, PLLC


WALTER G. WATKINS, MSB 6988
MARCY L. BRYAN, MSB 10864
FORMAN PERRY WATKINS KRUTZ & TARDY, PLLC
188 East Capitol Street, Suite 1200
Post Office Box 22608
Jackson, Mississippi 39225-2608
Telephone: 601-960-8600
Facsimile: 601-960-8613

-3-

## CERTIFICATE OF SERVICE

I, Marcy L. Bryan, attorney for Wells Moore Simmons & Hubbard, PLLC, defendant herein, hereby certify that I have this day filed the original of the above and foregoing Notice of Removal and exhibits thereto in the United States District Court for the Northern District, Greenville Division and that upon the filing of the original notice and exhibits thereto, I have served a true and correct copy of the said notice and exhibits on all parties in order to effectuate the removal of a civil action entitled, "William Young, et al. v. CCR, Inc., Samuel J. Heyman, et al., being civil action number 20–0164 on the docket of said Circuit Court of Washington County, Mississippi, pursuant to the statutes and rules in such cases made and provided.

WITNESS MY SIGNATURE, this the 16th day of August, 2000.

MARCY L. BRYAN (MBN 10864)

-4-

# UNITED STATES DISTRICT COURT
## OFFICE OF THE CLERK
## NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

**ARLEN B. COYLE**
**CLERK**

**P. O. BOX 190**
**GREENVILLE, MS 38701**

**662-335-1651**

**YOUNG**

**vs.**                                            **NO:   4:00cv225-P-A**
                                                      **JURY TRIAL**

**CCR, INC.**

      **PLEASE TAKE NOTICE** that the above styled and captioned cause has been assigned to Judge W. Allen Pepper, Jr., whose address is P. O. Box 370, Greenville, MS 38702 and **Magistrate Judge S. Allan Alexander**, whose address is 911 Jackson Avenue, Suite 242, Oxford, MS 38655 in accordance with Uniform Local Rule 83.2.

**See Rule 38.1 which states:** "[a]ny case removed from the Circuit Courts of Mississippi shall be designated for jury trial; any case removed from the Chancery Courts of Mississippi shall be designated for non-jury trial."

It is the policy and requirement of this district court that the attorney removing cases to this court from state court will file, as soon as possible after filing the petition for removal, a certificate of the state court clerk certifying to the fact that copies of all records and proceedings in such state court are attached to his/her certificate.

NOTE:  All pretrial motions should be filed with the Clerk's Office and a copy mailed to the magistrate judge except those motions designated in Uniform Local Rule 72.5 that should be submitted to the District Judge.

                      ARLEN B. COYLE, CLERK.
                      By:
                      Frances C. Cauxton
                      Deputy Clerk

DATE:  August 16, 2000

Form AO 85 (Rev. 08/97) Notice, Consent, and Order of Reference - Exercise of Jurisdiction by a United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI

**NOTICE, CONSENT, AND ORDER OF REFERENCE -
EXERCISE OF JURISDICTION BY A UNITED STATES
MAGISTRATE JUDGE**

vs.

Case Number:

### NOTICE OF AVAILABILITY OF A UNITED STATES MAGISTRATE JUDGE
### TO EXERCISE JURISDICTION

In accordance with the provisions and 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, you are hereby notified that a United States magistrate judge of this district court is available to conduct any or all proceedings in this case including a jury or nonjury trial, and to order the entry of a final judgment. Exercise of this jurisdiction by a magistrate judge is, however, permitted only if all parties voluntarily consent.

You may, without adverse substantive consequences, withhold your consent, but this will prevent the court's jurisdiction from being exercised by a magistrate judge. If any party withholds consent, the identity of the parties consenting or withholding consent will not be communicated to any magistrate judge or to the district judge to whom the case has been assigned.

An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of a district court.

### CONSENT TO THE EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE

In accordance with the provisions of 28 U.S.C. 636(c), and Fed.R.Civ.P. 73, the parties in this case hereby voluntarily consent to have a United States magistrate judge conduct any and all further proceedings in the case, including trial, and order the entry of a final judgment, and conduct all post-judgment proceedings.

| Signatures | Party Represented | Date |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

### ORDER OF REFERENCE

**IT IS HEREBY ORDERED** that this case be referred to _____, United States Magistrate Judge for all further proceedings and the entry of judgment in accordance with 28 U.S.C. 636(c), Fed.R.Civ.P. 73 and the foregoing consent of the parties.

_____
Date

_____
United States District Judge

**NOTE: RETURN THIS FORM TO THE CLERK OF THE COURT <u>ONLY IF</u> ALL PARTIES HAVE CONSENTED <u>ON THIS FORM</u> TO THE EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE.**

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

WILLIAM YOUNG, ET AL.,                                    PLAINTIFFS

     v.                              CIVIL ACTION NO._____

CCR, INC., SAMUEL J. HEYMAN, ET AL.                       DEFENDANTS

## NOTICE TO ALL PARTIES OF REMOVAL

TO: ALL COUNSEL OF RECORD

    PLEASE TAKE NOTICE that GAF Corporation, defendant herein, has on this date filed a Notice of Removal to remove a certain action captioned "William Young, et al. v. CCR, Inc., Samuel J. Heyman, et al.," pending on the docket of the Circuit Court of Washington County, State of Mississippi, Civil Action No. CI20-0164, to the United States District Court for the Northern District of Mississippi.  A copy of the Notice of Removal is attached hereto.  You are hereby further notified that a copy of the Notice of Removal was delivered to the Circuit Court for Washington County, State of Mississippi, where the action is now pending, thereby effecting the removal of this action to federal court.

    This the 16th day of August, 2000.

Respectfully submitted,

GAF CORPORATION

*Frank Thackston*

Frank S. Thackston, Jr.
MSB#8058

Law Offices of Lake Tindall, LLP
127 South Poplar
P.O. Box 918
Greenville, MS 38702-0918
Telephone: (662)378-2121
Facsimile: (662)378-2183

## CERTIFICATE OF SERVICE

I, Frank S. Thackston, Jr., attorney of record for defendant in the above styled matter, do hereby certify that I have this day mailed, postage prepaid, a true and correct copy of the foregoing Notice of Removal to all counsel of record herein.

THIS, the 16th day of August, 2000.

*Frank Thackston*

Frank S. Thackston, Jr.
MSB#8058

W:\25013\YOUNG\PLE\Notice to All Parties.doc

2

IN THE CIRCUIT COURT OF WASHINGTON COUNTY, MISSISSIPPI

WILLIAM YOUNG, ET AL.,                                  PLAINTIFFS

     v.                                   CIVIL ACTION NO. CI-20-0164

CCR, INC., SAMUEL J. HEYMAN, ET AL.                     DEFENDANTS

### NOTICE OF REMOVAL

TO:  ALL COUNSEL OF RECORD

    PLEASE TAKE notice that GAF Corporation, defendant in the above styled cause has this date filed its Notice of Removal, copies of which are attached hereto, in the Office of the Clerk of the United States District Court for the Northern District of Mississippi, Greenville Division.

    THIS, the 16th day of August, 2000.

Frank S. Thackston, Jr.
ATTORNEY FOR DEFENDANT

MSB#8058

Law Offices of Lake Tindall, LLP
127 South Poplar
P.O. Box 918
Greenville, MS 38702-0918
Telephone: (662)378-2121
Facsimile: (662)378-2183

## CERTIFICATE OF SERVICE

I, Frank S. Thackston, Jr., attorney of record for defendant in the above styled matter, do hereby certify that I have this day mailed, postage prepaid, a true and correct copy of the foregoing Notice of Removal to all counsel of record herein.

THIS, the 16th day of August, 2000.

Frank S. Thackston, Jr.
MSB#8058

W:\25013\YOUNG\PLE\Not of Removal.doc

FRANK S. THACKSTON, JR.
CHARLES S TINDALL III
JEROME C. HAFTER
STEPHEN L THOMAS
EDWIN W. TINDALL
W. WAYNE DRINKWATER, JR.
DAVID W. CLARK
ANDREW N. ALEXANDER, III
C. W. WALKER III
MARIAN SYKES ALEXANDER
JENNY MYRES VIRDEN
PAUL MATHIS, JR.'
SHAWN N. SULLIVAN'
LAURA LIMERICK GIBBES
MARGARET STEWART OERTLING'
O. STEPHEN MONTAGNET, III
BRADLEY T. GOLMON
SUSAN ELIZABETH WRIGHT'
JEFFREY R. BLACKWOOD
NEELY C. CARLTON
SEALE PYLATE'

**LAW OFFICES**
# LAKE TINDALL, LLP

127 SOUTH POPLAR
P. O. Box 918
GREENVILLE, MS 38702-0918
(662) 378-2121
FACSIMILE (662) 378-2183

SUITE 450, ONE JACKSON PLACE
188 EAST CAPITOL STREET
P. O. BOX 1789
JACKSON, MISSISSIPPI 39215-1789
(801) 948-2121
FACSIMILE (801) 948-0603

OF COUNSEL
CHARLES S. TINDALL

WILLIAM T. WYNN
1890-1959
JEROME S. HAFTER
1895-1969
J. ALBERT LAKE
1905-1997

' ADMITTED IN MS AND MI AND US TAX COURT
' ADMITTED IN MS, LA AND D C
' ADMITTED IN MS AND D C
' ADMITTED IN MS, TX AND NC
' ADMITTED IN MS AND AR

August 16, 2000

Mrs. Joyce Almond
United States District Court
Northern District of Mississippi
P. O. Box 190
Greenville, MS  38702-0190

**Re: William Young, et al
v.
CCR, Inc., Samuel J. Heyman, et al**

Dear Mrs. Almond:

I enclose for filing in the above-referenced matter the following:

    (1)  Notice of Removal;

    (2)  Consent to Removal of Wells, Moore, Simmons & Hubbard, PLLC;

    (3)  Consent to Removal of A. P. Green, Inc.;

    (4)  Consent to Removal of Center for Claims Resolution, Inc.;

    (5)  Consent to Removal of Samuel J. Heyman;

    (6)  Civil Cover Sheet; and

    (7)  Our firm check in the  amount of  $150.00 to cover the filing fee.

LAKE TINDALL, LLP

August 16, 2000

Under separate cover, I have sent a Certificate of Removal to the Circuit Clerk of Washington County for her use in forwarding the state court pleadings and records to you.

Consistent with my Certificate of Service, I have also provided all of the counsel with copies of all pertinent documents.

Thank you for your help in this matter.

Very truly yours,

Frank S. Thackston, Jr.

FSTjr:emm

Enclosures

cc:  Gerald Jacks, Esquire
     Joel Henderson, Esquire
     Michael T. Lewis, Esquire
     Pauline S. Lewis, Esquire
     W. G. Watkins, Esquire
     Jeffrey P. Hubbard, Esquire
     Richard M. Wyner, Esquire
     Thomas E. Vaughn, Esquire

W:\25013\YOUNG\COR\Joyce Almond Ltr.doc

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION


WILLIAM YOUNG, ET AL.,                              PLAINTIFFS

        vs.                      CIVIL ACTION NO. _____

CCR, INC., SAMUEL J. HEYMAN, ET AL.                 DEFENDANTS


## NOTICE OF REMOVAL


        COMES NOW defendant, GAF Corporation ("GAF"), who gives
notice that it removes this action from the Circuit Court for
Washington County, State of Mississippi, to the United States
District Court for the Northern District of Mississippi, and
respectfully represents as follows:

        1.  On July 17, 2000, Wells, Moore, Simmons & Hubbard, PLLC
was served with a complaint purporting to assert claims for,
inter alia, breach of contract and fraud arising out of a
settlement agreement concerning certain asbestos bodily injury
claims.  The action, captioned "William Young, et al. v. CCR,
Inc., Samuel J. Heyman, et al.," bearing Civil Cause No. CI20-
0164 ("the *Young* Action"), was commenced in the Circuit Court of
Washington County, Mississippi and named as defendants Wells,
Moore, Simmons & Hubbard, PLLC, GAF and twenty-one other parties.

A copy of the Complaint is attached hereto as Exhibit A.  GAF
has never been served with the Complaint. GAF received a copy of
the Complaint subsequent to July 17, 2000.

2.   The Complaint names 183 plaintiffs and demands
$303,009.17 in individual compensatory damages from the
Defendants.  The Complaint also seeks punitive damages,
attorneys' fees and litigation expenses.

3.   Pursuant to 28 U.S.C. § 1332, this Court has subject
matter jurisdiction over the *Young* Action because there exists
complete diversity between all properly joined parties and the
amount in controversy exceeds $75,000 per Plaintiff.
Accordingly, removal is proper pursuant to 28 U.S.C. § 1441(a).

### Diversity

4.   According to the Complaint, the Plaintiffs in this
action are 183 in number.  Upon information and belief, they were
all residents of the State of Mississippi at the time of the
commencement of this suit.

5.   Defendant GAF is now and has been at all times pertinent
herein, a Delaware corporation with its principal place of
business in the State of New Jersey.

6.   Defendant the Center for Claims Resolution (the "CCR")is
now and has been at all times pertinent herein a Delaware
corporation with its principal place of business in the State of
New Jersey. Upon information and belief, the following member

2

companies of the CCR, each of which is named as a defendant in
the *Young* Action, is now and has at all times pertinent herein
been incorporated and maintained its principal place of business
in a state other than Mississippi: Amchem Products, Inc.,
Armstrong World Industries, Inc., Asbestos Claims Management
Corporation, Certainteed Corp., C.E. Thurston and Sons, Inc.,
Dana Corp., Ferodo America, Inc., Flexitallic, Inc., I.U. North
America, Inc., Maremont Corp., National Service Industries, Inc.,
Nosroc Corp., Pfizer, Inc., Quigley Company, Inc., Shook &
Fletcher Insulation Co., T&N Plc, Union Carbide Corp., and United
States Gypsum Company (collectively, the "CCR Member Companies").

7.   Upon information and belief, defendant A.P. Green, Inc.
is now and has been at all times pertinent herein, a Delaware
corporation with its principal place of business in the State of
Pennsylvania.

8.   Samuel J. Heyman is now and has been at all times
pertinent herein a citizen of a state other than Mississippi.

9.   The only defendant who is a citizen of Mississippi is
the law firm of Wells, Moore, Simmons & Hubbard, PLLC (the
"Wells, Moore" firm).   This defendant, however, has been
fraudulently joined to this suit for the purposes of defeating
this Court's diversity jurisdiction.   It is clear on the face of
the Complaint that Plaintiffs have no conceivable cause of action

3

against the Wells, Moore firm. See *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000)("[t]o prove their allegation of fraudulent joinder [removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against them in state court")(quoting *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42) (5th Cir. 1992)(citations omitted).

10.  The allegations against GAF in the *Young* Action are completely meritless.  For purposes of the present petition of removal, however, the Court need only review the substance of the allegations against the Wells, Moore firm, which on their face, fail to state any cause of action upon which relief could be granted.

11.  The Complaint contains no factual allegations of any kind against the Wells, Moore firm, other than identifying Jeffrey Hubbard as one of its lawyers and alleging that the firm "represented the CCR and GAF in the suits which the Plaintiffs sought to settle by virtue of the Settlement Agreement." Complaint ¶11.

12.  The Wells, Moore firm was clearly not a party to the Settlement Agreement and is not alleged by plaintiffs to have any obligations thereunder.  Moreover, there is no allegation that Mr. Hubbard or anyone else at the Wells, Moore firm participated

4

in any way in the negotiation, execution or performance of the

Settlement Agreement.  Plaintiffs have not alleged any basis for

imposing liability of any kind on the Wells, Moore firm arising

from or relating to any aspect of the Settlement Agreement.

Accordingly, there is no conceivable basis on which Plaintiffs

can maintain any claim against the Wells, Moore firm.

Thus, the naming of the Wells, Moore firm as a defendant does not

defeat diversity jurisdiction in this matter. *See Griggs v. State

Farm Lloyds*, 181 F.3d 694 (5th Cir. 1999).

### Amount in Controversy

13.  The amount in controversy clearly exceeds the sum or

value of $75,000, exclusive of interests or costs.  The Fifth

Circuit has recognized that the "peculiar nature of punitive

damages under Mississippi law" requires that the punitive damage

claims of all plaintiffs in a case be aggregated, and the entire

amount allocated to each plaintiff to determine the

jurisdictional amount. *Ard v. Transcontinental Gas Pipe Line

Corp.*, 138 F.3d 596, 602 (5th Cir. 1998).  Punitive damages in

Mississippi "are fundamentally collective," and each plaintiff

has an "integrated right to the full amount of the award." *Allen

v. R&H Oil & Gas Company*, 63 F.3d 1326, 1333-1334 (5th Cir.

1995).  Accordingly, "the full amount of the alleged damages

[can] be counted against each plaintiff in determining the jurisdictional amount." *Id.*

14. The Plaintiffs have not alleged a specific amount of punitive damages. Nonetheless, as the Fifth Circuit held in *Allen*, because this case involves multiple defendants and 183 plaintiffs, the Court "in applying common sense" can find that if the Plaintiffs were successful in their punitive damages claim, they would collect more than $75,000. *See Allen*, 63 F.3d at 1336 (finding that in a case involving "three companies, 512 plaintiffs, and a wide variety of harm allegedly caused by wanton and reckless conduct" a court "in applying only common sense, would find that if the plaintiffs were successful in their punitive damages claim, they would collect more than $50,000").

15. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between all properly joined parties and the amount in controversy exceeds $75,000 as to each Plaintiff.

### Consent of Defendants

16. As evidenced by the attached notice of consent, the only defendant that has been served with the Summons and Complaint, the Wells, Moore firm, has consented to the removal of this suit to federal court.

6

17. The remaining defendants have not been served. Such parties' consent to removal is not required. *Getty Oil Corp. v. Insurance Co. of North America,* 841 F.2d 1254, 1262-63 (5th Cir. 1988); *Hunt v. Smith,* 67 F.Supp.2d 675, 679-80 (E.D. Texas 1999). Nonetheless, as evidenced by the attached notices of consent, these defendants have likewise consented to removal, while preserving all of their jurisdictional and other defenses.

18. This action is timely under the provisions of 28 U.S.C. § 1446(b) because it was filed within 30 days of GAF's receipt of a copy of the Complaint.

19. Pursuant to 28 U.S.C. § 1446(d), undersigned counsel certifies that, promptly after the filing of this Notice of Removal, copies of the Notice will be served on opposing counsel and filed with the Clerk of Court of the Circuit Court of Washington County, State of Mississippi, as provided by law, to effect the removal of this action.

20. Based on the foregoing, this Court has removal jurisdiction over this action based on the existence of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441(a).

WHEREFORE, GAF prays that the above action, now pending against it in the Circuit Court of Washington County, State of Mississippi, be removed to the United States District Court for the Northern District of Mississippi, Greenville Division.

Dated this 16th day of August, 2000.

Respectfully submitted,

GAF CORPORATION

_Frank S. Thackston, Jr._
Frank S. Thackston, Jr.
MSB#8058

Law Offices of Lake Tindall, LLP
127 South Poplar
P.O. Box 918
Greenville, MS 38702-0918
Telephone: (662)378-2121
Facsimile: (662)378-2183

## C E R T I F I C A T E

I hereby certify that a copy of the foregoing Notice of

Removal has been served upon each counsel of record by placing

same in the United States mail, postage prepaid and properly

addressed, this 16th day of August, 2000.

_Frank S. Thackston, Jr._
Frank S. Thackston, Jr.
MSB#8058

W:\25013\YOUNG\PLE\young revised final.doc

8