**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

This document relates to:                    )
                                             )
1.   *Steven J. Lukac v. GATX Corp.*         )
     N.D. Ohio Case No. 1:01CV20000    ) Conditional Transfer Order No. 203
                                             )
2.   *Paula A. Kubik v. GATX Corp.*          )
     N.D. Ohio Case No. 1:01CV20001    )

**PLAINTIFFS' REPLY BRIEF OPPOSING TRANSFER TO MDL 875**

Plaintiffs timely moved to vacate the Panel's conditional order transferring their cases to MDL 875. Defendant GATX/GATC opposes this motion. Plaintiffs provide this Reply to point out the insubstantiality of Defendant's arguments.

**REPLY ARGUMENT**

**1. No Common Factual Issues with "Maritime" Cases.** These two cases are claims for employer intentional tort. Such a remedy is uniquely available only under Ohio law, and focuses narrowly on the knowledge and conduct of GATX. Issues common to other asbestos cases – product identification, product characteristics and hazards, and so forth – are irrelevant to such a claim. Here, the only issues are (1) whether GATX knew of the existence of a hazardous condition in its workplace; (2) whether GATX knew that exposing its employees to that hazard was substantially certain to injure them; and (3) whether, despite that knowledge, GATX nevertheless required its employees to work in conditions exposing them to that hazard. *Fyffe v. Jeno's, Inc.*, 570 N.E.2d 1108, 1109



(Oh. 1991). These issues, and the facts that would establish them, are not relevant to any MDL 875 cases.

In its Brief, GATX first attempts to rebut this point by bluff and bluster. GATX claims that because the Panel rejected arguments brought by "shipowners in the thousands of maritime asbestos cases currently pending in the MDL," (Def.'s Br. at 2), Plaintiffs' arguments cannot be valid here. In making this argument, however, GATX relies entirely on bluff: it offers no comparison establishing similarities between these cases and the multitudinous maritime cases, and does not explain why these two cases should be treated the same way. Instead, the Panel is invited to accept GATX's vague conclusory claims.

In fact, these two cases have nothing in common with the "shipowner" cases. Unlike those cases, here we have:

- only two suits,
- from the same district court,
- against a single defendant that is not a party to any other asbestos action,
- with no asbestos manufacturers or suppliers as co-defendants,
- no product liability claims, and
- a unique state law cause of action for employer intentional tort.

Furthermore, the fact there are "thousands" of cases against "hundreds of shipowner defendants" (Def.'s Br. at 2, 3) in the maritime asbestos litigation stands

in startling contrast to these two suits. The sheer magnitude of the maritime asbestos litigation – thousands of suits from multiple districts, against hundreds of defendants (including not only shipowners but asbestos manufacturers and suppliers as well), and sharing many common factual issues – make those maritime actions suitable for MDL 875 for reasons of judicial economy. These two cases can most efficiently be handled by prompt remand to their common home district.

**2. Focus on GATX: No Common Issues with Other MDL 875 Cases.**
GATX eventually tries to show these cases do, in fact, have "common issues" with other MDL asbestos cases (Def.'s Br. at 2-3). On close examination, GATX's arguments are remarkably non-specific and even self-contradictory.

GATX's vague recitation of background matters common to other asbestos cases (Def.'s Br. at 2) misses the point: the issue in these two employer intentional tort actions is *what GATX knew, when it knew it, and what it did about it.* This does not lend itself to coordinated discovery in concert with the parties in other asbestos cases.

The one time GATX attempts to provide a specific example of a "common factual issue" between these two cases and other asbestos suits, it ultimately makes an argument that is patently self-defeating on its own terms. At the bottom of Page 2 of its Brief (continuing to Page 3), GATX makes the following remarkable statement:

3

> "[O]ne of the central themes of plaintiffs' cases is that GATX knew or should have known that decedents' exposure to asbestos was hazardous and that GATX should have taken precautions to protect its workers. *This issue is common to virtually all of the cases in the MDL and certainly is not unique to Lukac and Kubik.*

(Def.'s Br. at 2-3 (emphasis added).) GATX does not explain why an investigation into its own knowledge and conduct would be relevant in any way to cases in which it is not involved; indeed, this leap of illogic is so patently ridiculous that it scarcely requires further rebuttal.

That the knowledge and conduct of different defendants may be at issue in *other* MDL 875 cases is irrelevant here. If a defendant is accused of bank robbery, nothing is gained by consolidating discovery in his case with thousands of other bank robbery cases from across the country because only the actions of the specific defendant are at issue. Here, these two cases narrowly focus on GATX, which is *not a party in any other asbestos actions*. Transferring these two cases to MDL 875 for consolidated discovery and pretrial *with cases sharing no common factual or legal issues* will simply delay their swift adjudication within their home district.

**3. "Indemnity and Contribution?" Legal Hokum.** GATX elsewhere claims that these two cases should be assigned to MDL 875 in part because "GATX . . . will have claims against the product manufacturers for indemnity and contribution, another common issue GATX shares with the maritime lawsuits." (Def.'s Br. at 3.) This is absolute hogwash. GATX is ***prohibited*** from bringing

4

indemnity and contribution claims against product manufacturers in these employer intentional tort suits because ***such claims are barred by Ohio law***. Ohio Revised Code § 2307.31(A) ("There is no right of contribution in favor of any tortfeasor who intentionally caused or intentionally has contributed to the injury or loss to person or property or the wrongful death."). And the Ohio statute governs the right to indemnity or contribution here because the underlying claims are based on Ohio law (employer intentional tort) and not federal law. MOORE'S FEDERAL PRACTICE ¶ 14.03[3]. The fact that GATX would make such a specious argument to the Panel in apparent contravention of F.R.CIV.P. 11(b)(2) speaks volumes about the substance of GATX's representations in general.

**4. Future Claims? Hypocrisy and More Bluff.** Though these are the only two asbestos claims pending against it, GATX warns darkly that this may just be the tip of some vast asbestos-litigation iceberg. Once again, without presenting any facts to substantiate its fantastic claim, GATX asserts that future claims against it "undeniably" could be numerous, and that "thousands of potential claims on behalf of former employees . . . exist." (Def.'s Br. at 3-4.) This claim is cut from the same cloth as GATX's bogus "indemnity and contribution" argument.

First, GATX is estopped from making this argument altogether because GATX contends elsewhere that the opposite is true. In the Answers it filed in these two cases, GATX denies that its conduct could have harmed the employees

5

at its Masury facility. If GATX now wants to argue that "thousands" of potential claims "exist" against it from its former employees, it must first concede that those workers were indeed exposed to hazardous levels of asbestos dust in their plant. As long as it remains unwilling to do this, GATX cannot seek refuge on Plaintiffs' side of the facts.

Second, GATX's acts demonstrate that it disbelieves its own argument. If "thousands" of asbestos claims against it were truly in the offing, GATX had a statutory obligation to disclose this to its stockholders and the Securities Exchange Commission. (Securities Exchange Act of 1934.) Despite the filing of these two wrongful death suits – and despite its earlier awareness of its workers' asbestos exposure via the *Missik* case that settled in 1999 – GATX has not done this. Instead, GATX continues to assure the SEC and its stockholders that litigation against it and its subsidiaries is "not likely to be material to GATX's consolidated financial position or results of operations." (Excerpt from SEC Form 10-K, GATX Annual Report for FY 2000 (Note 14 to Consolidated Financial Statement), March 30, 2001; Exhibit 1.) GATX has concocted this argument solely to mislead the Panel, and such empty bluff should not be taken as a legitimate basis for transfer to MDL 875.

## CONCLUSION

These two cases have nothing in common with other asbestos suits and should not be transferred to MDL 875. GATX has offered only vague, unsupported, and legally invalid arguments to the contrary. Therefore, Plaintiffs respectfully ask the Panel to vacate that portion of Conditional Transfer Order No. 203 that transfers their cases, and ask the Panel to remand their cases to the Northern District of Ohio for all further proceedings.

                                    Respectfully,

                                    DEAN E. SWARTZ, ESQ.
                                    SWARTZ & REED
                                    1825 Jefferson Place, N.W.
                                    Washington, D.C. 20036
                                    Phone: (202) 429-0429
                                    [Ohio State Bar No. 0043469]

AND

                                    RONALD A. MARKS, ESQ.
                                    258 Seneca N.E.
                                    Warren, Ohio 44481
                                    Phone: (330) 373-1028
                                    [Ohio Bar No. 0000977]
                                    *Co-Counsel for Plaintiffs*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

SEP 24 2001

FILED
CLERK'S OFFICE

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiffs' Reply Brief Opposing Transfer to MDL 875 was mailed, first class postage prepaid, to counsel for Defendant GATX Corp./GATC Stephen H. Daniels, Esq., and Byron J. Horn, Esq., THOMPSON HINE, LLP, 3900 Key Center, 127 Public Square, Cleveland, OH 44114-1216, this 24th day of September 2001. In addition to counsel for Defendant GATX Corp., the "involved counsel" on the attached list (incorporated herein by reference) were also served with the Reply Brief this day.

DEAN E. SWARTZ, ESQ.

2001 SEP 24 P 1:46
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
RECEIVED
CLERK'S OFFICE

## PANEL SERVICE LIST (Excerpted from CTO-203)
## DOCKET NO. 875
## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, DC 20036

David A. Damico
Burns, White & Hickton
2400 Fifth Avenue Place
120 Fifth Avenue
Pittsburgh, PA 15222

Stephen H. Daniels
Thompson Hine, LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114

Raymond P. Forceno
Forceno & Hannon
Philadelphia Bourse Building
Suite 1000
Independence Mall East
Philadelphia, PA 19106

Ellen B. Furman
Goldfein & Joseph
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Susan M. Hanson
Stich, Angell, Kreidler & Muth, P.A.
The Crossings, Suite 120
250 2nd Avenue South
Minneapolis, MN 55401

Byron J. Horn
Thompson Hine, LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102

Ronald L. Motley
Ness, Motley, Loadholt, Richardson
& Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465

John J. Repcheck
Marks, O'Neill
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
John Roven & Associates
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA 19102

Dean E. Swartz
Swartz & Reed
1825 Jefferson Place, N.W.
Washington, DC 20036

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
Detroit, MI 48226

Andrew J. Trevelise
Reed, Smith, Shaw & McClay
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## Form 10-K

[X] ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF
THE SECURITIES EXCHANGE ACT OF 1934
For the fiscal year ended December 31, 2000

OR

[_] TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF
THE SECURITIES EXCHANGE ACT OF 1934

Commission File Number 1-2328

GATX Corporation

IRS Employer Identification Number
36-1124040

Incorporated in the
state of New York

500 West Monroe Street
Chicago, IL 60661-3676
(312) 621-6200

Securities Registered Pursuant to Section 12(b) of the Act:

| Title of each class or series | Name of each exchange on which registered |
|---|---|
| Common Stock | New York Stock Exchange<br>Chicago Stock Exchange |
| $2.50 Cumulative Convertible Preferred Stock, Series A | New York Stock Exchange<br>Chicago Stock Exchange |
| $2.50 Cumulative Convertible Preferred Stock, Series B | New York Stock Exchange<br>Chicago Stock Exchange |

Securities Registered Pursuant to Section 12(g) of the Act:
None

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15 (d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes /X/ No / /

As of March 23, 2001, 48,439,284 common shares were outstanding, and the aggregate market value of the common shares (based upon the March 23, 2001, closing price of these shares on the New York Stock Exchange) of GATX Corporation held by nonaffiliates was approximately $1,961.8 million.

### Documents Incorporated by Reference

Portions of the GATX Annual Report to Shareholders for the year ended December 31, 2000, are incorporated by reference into Parts I and II. Portions of GATX's proxy statement dated March 30, 2001, are incorporated by reference into Part III.

## PART I

### Item 1. Business

During 2000, GATX Corporation redefined its strategic focus and undertook initiatives to position itself as a specialized finance and leasing company. To accomplish this goal, certain supply chain related businesses of the GATX Integrated Solutions Group (ISG) were sold in 2000 and all remaining ISG businesses have been targeted for divestiture in 2001. As a result of these actions, the financial data for the ISG segment is presented as discontinued operations for all periods presented.

GATX Corporation now has two operating segments: Financial Services and GATX Rail. Through these businesses, GATX combines asset knowledge and services, structuring expertise, creative partnering and risk capital to serve customers and partners worldwide. Information concerning financial data of business segments and the basis for grouping products or services is contained in Exhibit 13, GATX Annual Report to Shareholders for the year ended December 31, 2000 on pages 53 and 54, which is incorporated herein by reference (page references are to the Annual Report to Shareholders).

### Industry Segments

#### Financial Services

Financial Services represents GATX Capital Corporation and its subsidiaries and affiliates, which arrange and service the financing of equipment and other capital assets on a worldwide basis, and American Steamship Company, which operates self-unloading vessels on the Great Lakes. Headquartered in San Francisco, California, Financial Services provides financing primarily to the aircraft, rail, technology, venture finance and marine industries. These financings, which are held within Financial Services' own portfolio and through partnerships with coinvestors, are structured as leases and secured loans, and frequently include interests in an asset's residual value and warrants of non-public start-up companies. For its transaction structuring and portfolio management services, Financial Services receives fees at the time a transaction is completed, an asset is remarketed, and/or on an ongoing basis.

Financial Services primarily competes with captive leasing companies, leasing subsidiaries of commercial banks, independent leasing companies, lease brokers, investment bankers, financing arms of equipment manufacturers, and other Great Lakes commercial fleets. No single customer accounts for more than 5% of Financial Services' revenues. In addition to its San Francisco home office, Financial Services has 8 domestic and 18 foreign offices.

**Exhibit 1**
JPML Conditional Transfer Order #205
Lukac v. BATH (ND OH Case #1:01CV20000)
Kubik v. BATH (ND OH Case #1:01CV20001)

## Notes to Consolidated Financial Statements (continued)

For purposes of this pro forma disclosure, the estimated fair value of the options is amortized to expense over the option vesting period. The resultant pro forma net income and earnings per share were (in millions, except for earnings per share information):

```
YEAR ENDED DECEMBER 31                    2000        1999        1998
-----------------------------------------------------------------------
Pro forma net income                    $ 62.3      $ 148.5     $ 129.8
Pro forma earnings per share:
  Basic                                 $  1.30     $   3.01    $   2.64
  Diluted                               $  1.28     $   2.95    $   2.57
```

### NOTE 14 COMMITMENTS, CONTINGENCIES AND CONCENTRATIONS OF CREDIT RISK

GATX's revenues are derived from a wide range of industries and companies. Approximately 19% of total revenues are generated from the transportation of products for the chemical industry; for similar services, 11% of revenues are derived from the petroleum industry. In addition, approximately 17% of GATX's assets consist of commercial aircraft operated by various domestic and international airlines.

Under its lease agreements, GATX retains legal ownership of the asset except where such assets have been financed by sale-leasebacks. With most loan financings, the loan is collateralized by the equipment. GATX performs credit evaluations prior to approval of a lease or loan contract. Subsequently, the creditworthiness of the customer and the value of the collateral are monitored on an ongoing basis. GATX maintains an allowance for possible losses and other reserves to provide for potential losses that could arise should customers become unable to discharge their obligations to GATX and to provide for permanent declines in investment value.

At December 31, 2000, GATX and its aircraft joint ventures had commitments of $1.2 billion for orders and options for interests in 63 new aircraft to be delivered between 2001 and 2006. GATX also had other firm commitments totaling $124.1 million to acquire railcars in 2001.

GATX's subsidiaries had $405.3 million of residual and rental guarantees outstanding at December 31, 2000. Guarantees are commitments issued to guarantee performance of an affiliate to a third party, generally in the form of lease and loan payment guarantees, or to guarantee the value of an asset at the end of a lease. Lease and loan payment guarantees generally involve guaranteeing repayment of the financing required to acquire assets being leased by an affiliate to third parties, and are in lieu of making direct equity investments in the affiliate. Asset residual value guarantees represent GATX Capital Corporation's commitment to a third party that an asset or group of assets will be worth a specified amount at the end of a lease term. Exposure to certain supplier and loan payment guarantees at GATX's subsidiaries is mitigated by, among other things, a third-party cross guaranty. Based on known and expected market conditions, management does not believe that the asset residual value guarantees will result in any adverse financial impact to GATX.

GATX's subsidiaries are also parties to letters of credit and bonds totaling $30.5 million and $38.3 million at December 31, 2000 and 1999, respectively. In GATX's past experience, virtually no claims have been made against these financial instruments. Management does not expect any material losses to result from

---

## GATX CORPORATION AND SUBSIDIARIES 51

### Notes to Consolidated Financial Statements (continued)

these off-balance sheet instruments because performance is not expected to be required, and, therefore, is of the opinion that the fair value of these instruments is zero.

GATX and its subsidiaries are engaged in various matters of litigation and have a number of unresolved claims pending, including proceedings under governmental laws and regulations related to environmental matters. While the amounts claimed are substantial, and the ultimate liability with respect to such litigation and claims cannot be determined at this time, it is the opinion of management that amounts, if any, required to be paid by GATX and its subsidiaries in the discharge of such liabilities, are not likely to be material to GATX's consolidated financial position or results of operations.

### NOTE 15 DISCONTINUED OPERATIONS

In May 2000, GATX sold 81% of GATX Logistics, Inc. (Logistics), a member of the GATX Integrated Solutions Group (ISG) segment. The remaining 19% of Logistics was sold in December 2000. In July 2000, GATX announced its intent to sell GATX Terminals Corporation (Terminals), a member of ISG, and reached an agreement in November to sell substantially all of the U.S. terminals and pipeline assets, representing the bulk of Terminals' operations. A portion of this transaction closed in March 2001 and the remainder is expected to close following regulatory approval. GATX expects to complete the divestiture of the remaining terminals and supply chain businesses in 2001.

The overall sale of ISG is expected to generate a net gain. Losses on individual asset sales incurred after the measurement date have been deferred and will be recognized as a reduction of the overall gain realized on the sale. The sale of Logistics generated an after-tax gain, of which $8.4 million was recognized in 2000. The Logistics gain was recognized in the current period as the transaction occurred prior to the measurement date for discontinued operations treatment. An additional $4.2 million after-tax gain will be recognized in the first quarter of 2001 on the sale of Logistics.

GATX's financial statements have been restated to reflect the ISG segment as a discontinued operation for all periods presented. Corporate allocations to discontinued operations were for services provided. Operating results include interest expense on debt to be assumed by the buyer and an allocation of the interest expense on GATX's general credit facilities based on actual historical financing requirements.

Operating results of the discontinued ISG operation are presented below (in millions):

```
YEAR ENDED DECEMBER 31                                          2000       1999       1998
-------------------------------------------------------------------------------------------
Gross income                                                  $469.9     $599.4     $586.5
Income, net of income taxes of $16.8, $19.8 and $13.9           27.4       25.0       17.7
```

Assets and liabilities of the discontinued operations are summarized below (in millions):