# MDL 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV - 5 2001

FILED
CLERK'S OFFICE

DOCKET NO.875
BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION
IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)
CONDITIONAL TRANSFER ORDER (CTO-205)

In re: Atkins, et al
v                              C.A. Action No1 2:01-781(S.D. West Virginia)
A. P. Green Services, Inc, et al,

MOTION TO
VACATE CONDITIONAL TRANSFER ORDER

The plaintiffs, by counsel, in action no. WVS 2 0-781, pending in the Southern District of West Virginia, hereby move to vacate to the conditional transfer order, and state as follows:

1. This action was brought in the Kanawha County Circuit Court, State of West Virginia, for the purpose of enforcing settlement agreements by and between the individual plaintiffs and certain members of the Center for Claims resolution, which settlements have not been paid.

2. Each of the settlements is less than the jurisdictional amount.

3. The defendants removed these cases to the Southern District of West Virginia. Pending before that court is a motion to remand.

4. The plaintiffs contend that there are no grounds for federal jurisdiction.

5. The plaintiffs object to being deprived of their right to have heard their motion to remand before the Southern District.

6. The plaintiffs object that there is no basis to transfer these cases, which are breach of contract claims, for substantially less than the jurisdictional amount.

7. The case does not present significant common issues of fact. Interests of judicial economy will not be promoted by the transfer. The case does not present significant discovery issues, the resolution of which would be promoted by the transfer.

**OFFICIAL FILE COPY**

IMAGED NOV 9 '01

7. The case does not present significant common issues of fact. Interests of judicial economy will not be promoted by the transfer. The case does not present significant discovery issues, the resolution of which would be promoted by the transfer.

Wherefore, in accordance with the notice of conditional transfer, the plaintiffs move to vacate and the conditional transfer order previously issued as to these cases.

The plaintiffs,
By counsel.

John H. Skaggs
THE LAW OFFICE OF STUART CALWELL, PLLC.
P. O. Box 113
Charleston, West Virginia 25321
(304) 343-4323
(304) 344-3684 (fax)
jskaggs@calwelllaw.com

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV - 5 2001

FILED
CLERK'S OFFICE

DOCKET NO.875
BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGA
IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)
CONDITIONAL TRANSFER ORDER (CTO-205)
WVS 2 0--781

MEMORANDUM IN SUPPORT OF MOTION TO
VACATE CONDITIONAL TRANSFER ORDER

The plaintiffs, by counsel, in action no. WVS 2 0-781, pending in the Southern District of West Virginia, submit the following in support of their objection to the conditional transfer order, and state as follows:

This action was brought in the Kanawha County Circuit Court, State of West Virginia, for the purpose of enforcing settlement agreements by and between the individual plaintiffs and certain members of the Center for Claims resolution, which settlements have not been paid. Each of the settlements is less than the jurisdictional amount. The defendants removed these cases to the Southern District of West Virginia. Pending before that court is a motion to remand. These plaintiffs contend that these are entirely state law claims, for breach of contract, which can best be resolved by the local courts.

The Members of the Center for Claims Resolution ("the CCR") settled with the Plaintiff. The CCR was a group of past manufacturers of asbestos containing products who banded together to defend and resolve claims against its members for asbestos related personal injury. While one or more members might be named in a suit, the release historically with this firm, and at issue here, has released all members. This makes some sense. Given the wide distribution of many of these products, and the

continuing discovery of product sources and uses, the fact that one defendant was not at issue in the pending cases does not mean that it could not be placed at issue in some future case, for mesothelioma. It therefore made sense for the members to settle these claims, and they received the benefit of the bargain in many hundreds and, indeed, thousands of cases. Likewise, the plaintiffs in the past received the benefit of the agreements. The present plaintiffs have not, and, indeed, as part of the settlement agreement, have foregone the opportunity to pursue their claims against the remaining solvent members.

Executed releases were then submitted to the CCR to effectuate the settlement (attached hereto as Exhibit 1)[1]. The settlement amount for each of the settlements was less than the jurisdictional amount of seventy five thousand dollars ($75,000.00). Each settlement was payable within ninety (90) days of the settlement.

Armstrong World Industries, Inc. ("AWI"), a member of the CCR, filed for Chapter 11 bankruptcy protection under Title 11 on December 6, 2000 in the United States Bankruptcy Court for the District of Delaware. Other members have since filed bankruptcy, most recently Federal Mogul, which included members Turner & Newell and Flexitallic, among others.

---

[1] The Members of the CCR releases are listed in that release as A. p. Green Industries, inc.; Gasket Holdings, Inc. (F/K/A Flexitallic, Inc.); GAF Corporation, Ferodo America, Inc.; Armstrong World Industries, Inc.; The Asbestos Claims Management Corporation (formerly known as National Gypsum Company) and the NGC Asbestos Disease and Property Damage Settlement Trust; Certain Teed Corporation; C.E. Thurston & Sons, Inc.; Dana Corporation, I.U. North America, Inc.; Maremont Corporation; National Service Industries, Inc.; NOSROC Corp.; Pfizer, Inc.; Quigley Company,, Inc.; Shook & Flectcher Insulation Co.; T&N plc; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); and United States Gypsum Company.

After the passage of ample period of time, with no payment, the plaintiffs filed suit for breach of contract in the Kanawha County Circuit Court, Kanawha County, West Virginia.

This case sought to compel the parties named in the Motion to make immediate payment of the remainder of the settlement Plaintiffs entered into with the members of the CCR notwithstanding any dispute those members may have pursuant to their internal agreement. It was Plaintiffs' position that they should be made whole by the parties with whom they settled, i.e., <u>the members of the CCR at the time the settlement was negotiated</u>, and not be subject to an internal dispute between those members, a dispute in which Plaintiff has no involvement.

Thereafter, a Notice of Removal was filed by certain Defendants asserting that due to the AWI bankruptcy, the case was "related to" the bankruptcy proceeding, thus giving the federal court original jurisdiction pursuant to 28 U.S.C. §1334(b). By prior Conditional Transfer Order, these cases were then conditionally transferred to the Multidistrict Panel. The plaintiffs have objected to the conditional transfer order, and this is their brief in support of the objections.

The plaintiffs have a filed a motion to remand or for voluntary absention, in the alternative, which is pending before the United States District Court for the Southern District of West Virginia. The plaintiffs contend therein that the court first has no jurisdiction, in that the case is not "related to" the bankruptcy proceeding, for purposes of the jurisdiction, and that the court should exercise its power of voluntary abstention ion any event and remand the case. The claim of each plaintiff, whether paid by the remaining solvent members or asserted in bankruptcy, will not go away. Whther the

economic burden is borne by the plaintiffs or the solvent members, the effect on the bankruptcy is the same.

The plaintiffs object to the conditional transfer for each of the reasons set forth below. As shown below, the plaintiffs first object that there is no federal jurisdiction of these actions, due to the absence of an amount in controversy in excess of the jurisdictional minimum. The amount sought by each plaintiff is significantly less than seventy five thousand dollars ($75,000.00).

The claim is based on a breach of a settlement contract. The plaintiffs contend that each of them has performed in accordance with the terms of the settlement. The terms of the settlement agreement, as set forth in the form agreement attached hereto as Exhibit A, does not limit or make any provision for contribution. The terms of the document, on its face, without ambiguity, provide for each of the signatories to be liable for the full amount of the settlement.

Under the several threshold elements, there are no grounds for transfer. This claim is the only claim of its type pending in West Virginia, applying West Virginia law. While others are claiming a failure of solvent CCR members to satisfy settlements, the application of West Virginia law, in so far as joint and several liability is concerned, prevents the finding of common issues.

Efficiency in this case will be defeated, in that these West Virginia breach of contract cases will be inevitably swept up in much larger groups of cases, resulting in the potential for a significant delay in their resolution.

The courts in West Virginia, whether state or federal, are amply able to manage the pretrial issues, limited discovery, and resolution of these claims.

As the plaintiffs have argued in their motion to remand, the basis of removal is wrong. These claims will have no impact on any pending bankruptcy, because regardless of who pays, the claim will continue to exist. Nevertheless, even if the case remains in federal court, it should not be transferred.

The plaintiffs address below each of the grounds which must be met in order for the cases to be transferred. 28 U.S.C. § 1407. See also, Kyle, The Mechanics of Motion Practice Before the Judicial Panel on Multidistrict Litigation, 175 F.R.D. 589, Section III.

### The Cases Must Be Federal Civil Actions

The plaintiffs contend that the appropriate forum is the state court. The plaintiffs are aware of case law pertaining to the transfer of actions while motions to remand are pending. In Re Ivy, 901 F2d. 7 (C.A.2N.Y.). Nevertheless, the plaintiffs suggest that is but one factor to consider. In weighing the application of the other factors, the court should take into account the nature of these state law breach of contract claims. The appropriate forum for the resolution of these issues is local. The resolution of these cases will not affect the resolution of other cases with different settlement language or releases. In this case, the local court should be given deference in determining the local issues.

### The Cases Must Be Pending In Different Federal Judicial Districts

There are obviously other actions pending against former members of the CCR in other state and federal jurisdictions. However, the present action is the only action

pending in West Virginia. Further, the plaintiffs believe that the development of the case in discovery would show that there are significant differences in the pending cases. West Virginia is a state which applies joint and several liability. The release in West Virginia at issue here did not incorporate explicitly or by reference the terms of any "producer" agreement or provisions, which governed the funding of the settlements by the members. These cases will not be resolved based on some general provisions of the CCR producer agreement or by laws, but by the language of the releases on their face. For this reason, the rational of bundling cases from different jurisdictions in one action is defeated. The details of settlements with different offices in other jurisdictions has no impact on the resolution of these claims under West Virginia contract law.

### One Or More Common Questions of Disputed Fact Must Exist Among The Cases

There are no common questions. The precise issue in these cases, that is, are the remaining solvent parties to the release liable for the full amount, under its terms, has nothing to do with the form or language of releases in other jurisdictions, the application of the law to releases which included limiting language, which is not present in the West Virginia releases, or releases which incorporated by reference the CCR producer agreement. This case is in the nature of a breach of contract claim, which is based on clear and unambiguous language in the release. The only commonality is that other plaintiffs make similar claims, but there is no commonality on the merits. This of course is the rationale for transfer in the first instance. Here, the language of the West Virginia

releases under West Virginia law is not in common with other cases, such that the clams should be transferred.

### Whether Efficiency Will Be Achieved, and Whether The Resources Of The Parties, Their Counsel And The Judiciary Will Be Conserved By Transfer and Consolidation

No saving of judicial resources will be achieved by the transfer of these cases. The consideration of the merits involves limited discovery at most. The issue is one of application of West Virginia contract law to the claim of the plaintiffs that each of the releases is liable for the full amount of the consideration, in the absence of limiting language. This issue can be resolved by the local courts, whether state or federal, as expeditiously as the transferee court. Indeed, the cases may be resolved more quickly with the availability of local courts, and the separation from the tide of cases in before the panel. These cases present no novel issues, no significant pre trial or discovery issues, and turn strictly on the interpretation of language, which the plaintiffs contend, is clear and unambiguous.

The rationale of the panel is to achieve efficiency through pre-trial procedures and centralized discovery, which can fashioned in a way to benefit common litigants in multiple jurisdictions. Re New York City Municipal Secur. Litigation, 572 F2d 49 (1978 CA2 New York), In Re National Student Marketing Litigation (1973, Jud Pan Multi Lit) 368 F. Supp 1311. Cases transferred, as the panel is well aware, included claims of national wide interest, arising from claims which involve complicated and involved discovery, including anti trust actions, e.g. Re Marine Constr. Antitrust Litigation (1980, Jud Pan Mult Lit) 487 F. Supp 1355; airliner crashes, Re Mid Air Collision (1970 Jud

Pan multi Lit) 309 F Supp 621; civil rights and employment discrimination, <u>Re Roadway Express, In. Employment Practices Litigation</u> (1974, Jud Pan Multi Lit) 384 F Supp 612 and other similar types of cases. See also Kyle, supra, at footnote 14.

The panel has held in cases involving small numbers of plaintiffs that movants have a heavy burden of showing that the common questions of fact are sufficiently complex and accompanying discovery would be so time consuming as to further the purposes of § 1407. <u>Re Garrison Diversion Unit Litigation (1978, Jud Pan Multi Lit)</u> 458 F Supp 223.

While this case presents more than one or two plaintiffs, by the same token it does not present such discovery challenges that transfer is appropriate. The purpose of the statute was to facilitate the resolution of complex litigation. The instant claim is not complex litigation. It involves more than one or two plaintiffs, but the merits turn on the application of the law of West Virginia to a settlement contract for a claim pending in West Virginia, for less than the jurisdictional amount. It is not consistent with the purpose of the statute for this case to be sent to the MDL.

The cases at issue here are strictly breach of contract claims. They require no significant discovery. They present no novel legal issues or discovery challenges, and no substantial savings would appear by transferring these cases. The rationale of the Multi District Panel does not support the transfer of these actions.

## Conclusion

For the reasons stated above, the conditional transfer order should be vacated, and the claims left to proceed in the local courts.

> The plaintiffs,
> By counsel.

_/s/_

John H. Skaggs
THE LAW OFFICE OF STUART CALWELL, PLLC.
P. O. Box 113
Charleston, West Virginia 25321
(304) 343-4323
(304) 344-3684 (fax)
jskaggs@calwelllaw.com



9504028055
WV

# AGREEMENT OF COMPROMISE, SETTLEMENT AND RELEASE

In consideration of the payment of the sum of One Dollar and 00/100 ($1.00), and other good and valuable consideration, to the undersigned, the receipt and sufficiency of which are hereby acknowledged,

We, EDSON WHITT, Social Security No. 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, and JANET A. WHITT (hereinafter "Releasors") for ourselves, our assigns, heirs, devisees, transferees, distributees, and personal representatives, do hereby release, acquit and forever discharge the Center for Claims Resolution members, including: A P Green Industries Inc.; Gasket Holdings, Inc. (f/k/a Flexitallic, Inc); GAF Corporation; The Asbestos Claims Management Corporation (formerly known as National Gypsum Company) and the NGC Asbestos Disease and Property Damage Settlement Trust; Ferodo America, Inc.; Amchem Products, Inc.; Armstrong World Industries, Inc.; C.E. Thurston and Sons, Incorporated; CertainTeed Corporation; Dana Corporation; I.U. North America, Inc.; Maremont Corporation; National Services Industries Inc.; Nosroc Corp.; Pfizer Inc; Quigley Company, Inc.; Shook & Fletcher Insulation Co.; T & N, plc; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company; , (hereinafter "Releasees") and their subsidiaries, predecessors, successors, officers, agents, servants, insurers and employees from any and all demands, claims or actions, including the action pending in the CIRCUIT COURT in 13TH CIRCUIT KANAWHA COUNTY, WEST VIRGINIA and DOCKET#: 95C1490, and any other causes of action, and claims for relief of any kind and nature, known and unknown, anticipated and unanticipated, suspected and unsuspected, including but not limited to, that we now have, by reason of EDSON WHITT's exposure to, inhalation or breathing of dust from any asbestos-containing products distributed and/or supplied and/or manufactured by and/or used by or at the direction of any of the Releasees, except claims for Workers' Compensation benefits arising under West Virginia Code Section 23-1-1, et seq. and except as may be preserved below.

It is not the intent of this Release, and we specifically do not release, claims for personal injury or death resulting from a qualifying lung cancer, mesothelioma, primary colon-rectal, laryngeal, esophageal or stomach cancer as defined and which are preserved in Attachment E of the Settlement Agreement memorializing the oral settlement of January 14, 1998, which was not alleged in the existing claim or suit allegedly resulting or to result from EDSON WHITT's exposure to asbestos and was not alleged for the purposes of settlement payment in Schedule A of the Settlement Agreement (hereinafter described as "future disease").

Releasees, by making payment herein and agreeing to the form and content of this Release, are likewise not admitting or conceding any liability for any future disease that may occur, nor are they estopped in the future on grounds, other than those noted in the

1

Settlement Agreement, to contest their liability therefor, and neither settlement, payment nor the existence of this Release may be used against the Releasees or any of them in any way to attempt to prove liability or fault for any future disease or death.

We, EDSON WHITT and JANET A. WHITT, for our assigns, heirs, devisees, transferees, distributees, and personal representatives, do hereby release, acquit and forever discharge Releasees from any and all demands, claims, actions, causes of action, including, but not limited to theories of recovery based upon negligence, breach of warranty, strict liability, intentional tort, conspiracy, premises liability claims by employees and non-employees, any theories of recovery arising under the case of Mandolidis v. Elkins Indus., Inc., 161 W.Va. 695, 246 S.E.2d 907 (1978), and claims for relief of any kind and nature, known and unknown, anticipated and unanticipated, suspected and unsuspected, including any and all asbestos-related cancers and malignancies, now or arising hereafter that we now have, or may hereafter have by reason of the defending, handling, negotiating, settling and/or compromising of our aforesaid claims against Releasees, whether pursuant to West Virginia Code 33-11-1 et seq. or otherwise, except as may be preserved above, pursuant to the Settlement Agreement.

The parties to this Release further understand and agree that nothing in this Release and Agreement is intended to settle, waive or relinquish any claim that JANET A. WHITT may have individually against Releasees, or any other entity for an asbestos-related injury or disease which is the result of his/her personal exposure to asbestos-fibers and/or products manufactured, sold or distributed by Releasees, or any other manufacturer, supplier or distributor of asbestos-containing products.

It is understood that the payment of the consideration for this Release and Agreement is not an admission of liability, guilt, negligence or other evidence of fault on the part of the Releasees, but, rather, is made in compromise and settlement of a disputed claim and for the further promise by Releasors, evidenced by execution of this Release and Agreement, to credit said consideration to any judgment, if any, that may be rendered in the future against other manufacturers and/or distributors of asbestos-containing products. The parties further agree that this Agreement shall not be admissible in any suit or proceeding whatsoever as evidence or admission of any liability.

It is understood and agreed that the consideration paid for this Release and Agreement is a compromise of all claims of the Releasors against the Releasees, and may not constitute the full amount of damages allegedly sustained by the Releasors and that the Releasors hereby reserve the right to proceed against other manufacturers and/or distributors of asbestos-containing products, and any and all others who may be liable to the Releasors, except the Releasees, which reservation of right to proceed shall be for the purpose of enabling the Releasors to recover the balance, if any, of alleged damages.

It is understood and agreed that Releasors, for the consideration paid for this Release and Agreement, agree to credit and satisfy that portion of the total amount of their damages which has been caused by the negligence or fault, if any, of the Releasees

as may hereafter be determined to be the case in the trial or other disposition of any other action at law filed by them under the reservation of right to proceed under this Release and Agreement.

The consideration paid for this Release and Agreement is in full and final settlement and satisfaction of that fraction and portion and percentage of the total cause of action and claim for damages by or to the Releasors from the Releasees, which damages may hereafter, by further trial or other disposition of other actions, be determined to be the sum or fraction or portion or percentage of causal negligence or fault, if any, for which the Releasees are or may be found liable.

In further consideration of the above-described payment, Releasors, for themselves, their heirs, beneficiaries, successors and assigns, agree to hold Releasees harmless from any and all claims, demands, judgments, actions, and/or causes of action by them or any other person, firm or corporation for any amounts not to exceed the consideration paid for this Release and Agreement as the result of any disease sustained by EDSON WHITT either now or in the future, except as may be preserved above.

Releasors warrant that no promise or agreement not herein expressed has been made; that in executing this Release and Agreement, they are not relying upon any statement or representation made by the Releasees, their agents, servants or employees concerning the nature, extent or duration of any damages or injuries, or concerning any thing or matter, but are relying solely upon personal judgment and upon the advice of an attorney; that the above-mentioned sum is received by them in full settlement and satisfaction of all claims for disease or progression thereof, except as preserved above, that the Releasors may now have or may hereafter have against the Releasees arising out of the matters recited herein, including, but not limited to, claims for personal injury, loss of wages, medical expenses, loss of profits, damages, charges, expenses, any implied private cause of action pursuant to West Virginia Code Section 33-11-1, et seq., and any and all other claims that the Releasors might now have or may hereafter have against the Releasees, their subsidiaries, predecessors or successors; that Releasors are over the age of eighteen (18) years and are legally competent to execute this Release and Agreement; and before signing and sealing this Release and Agreement, the Releasors have been fully informed of its contents and meaning and are executing it with full knowledge thereof.

It is further understood and agreed that the terms of this settlement shall be held strictly confidential and not disclosed to any person other than members of the immediate family of the Releasors, employees of the attorneys representing the Releasors and employees, agents and representatives of the Releasors, without the prior written consent of the Releasees, or their duly authorized representatives. The Releasees agree that any such written consent shall not be unreasonably withheld, consistent with the general purposes of this confidentiality agreement.

WITNESS the following signatures and seals this _____ day of _____, _____.

_Edson Whitt_ (SEAL)
EDSON WHITT
Social Security No. 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

_Janet A. Whitt_ (SEAL)
JANET A. WHITT

STATE OF _Rowan_

COUNTY OF _Kentucky_   to-wit:

I _Melissa J. Sargent_ a Notary Public in and for the County and State aforesaid, do hereby certify that EDSON WHITT and JANET A. WHITT, known to me to be the persons whose names are signed to the foregoing document, bearing date the ____ day of _____, 2001, have this day before me acknowledged same to be their free and voluntary act and deed.

Given under my hand this ____ day of _____, 2001.

_Melissa Sargent_
NOTARY PUBLIC

My Commission Expires: _2/24/2002_

WVMMHWLD
December 22, 2000
10:16 AM

4

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

CERTIFICATE OF SERVICE

NOV - 5 2001

FILED
CLERK'S OFFICE

The undersigned attorney hereby certifies that he has served the foregoing Motion to Vacate Conditional Transfer Order and Memorandum in Support thereof upon the counsel on the list attached hereto by depositing true copies thereof in the United States Mail, postage prepaid, this 2d day of November, 2001.

John H. Skaggs (WV Bar No. 3432)
The Law Offices of Stuart Calwell, PLLC
405 Capitol St., Suite 607
Charleston, WV 25301



# PANEL SERVICE LIST (Excerpted from CTO-205)
## DOCKET NO. 875
## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

Charles R. Bailey
Bailey & Wyant, PLLC
P.O. Box 3710
Charleston, WV  25337

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH  44114

Thomas E. Buck
Bailey & Wyant, PLLC
1233 Main Street
Suite 3002
Wheeling, WV  26003

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH  44115

Adam M. Chud
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, DC  20036

David A. Damico
Burns, White & Hickton
2400 Fifth Avenue Place
120 Fifth Avenue
Pittsburgh, PA  15222

J. Tyler Dinsmore
Flaherty, Sensabaugh & Bonasso
P.O. Box 3843
Charleston, WV  25338

Raymond P. Forceno
Forceno & Hannon
Philadelphia Bourse Building
Suite 1000
Independence Mall East
Philadelphia, PA  19106

Ellen B. Furman
Goldfein & Joseph
1600 Market Street
33rd Floor
Philadelphia, PA  19103

Susan M. Hanson
Stich, Angell, Kreidler & Muth, P.A.
The Crossings, Suite 120
250 2nd Avenue South
Minneapolis, MN  55401

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH  44308

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA  23219

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA  19102

Ronald L. Motley
Ness, Motley, Loadholt, Richardson
& Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC  29465

John J. Repcheck
Marks, O'Neill
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA  15219

John D. Roven
John Roven & Associates
2190 North Loop West, Suite 410
Houston, TX  77018

Ronald B. Rubin
Rubin & Rubin
One Church Street, Suite 301
Rockville, MD  20850

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH  43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA  90025

John H. Skaggs
Law Offices of Stuart Calwell, PLLC
405 Capitol Street, Suite 607
P.O. Box 113
Charleston, WV  25321

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA  19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
Detroit, MI  48226

Andrew J. Trevelise
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA  52406