

MDL 875

BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV - 6 2001

FILED
CLERK'S OFFICE

| | | |
|---|---|---|
| John Todd, et. al. | : | MDL Docket No. 875 |
| Plaintiffs, | : | CTO-205 |
| v. | : | |
| ACandS, Inc., et al. | : | D.Del. C.A.No. 01-CV-0234 |
| Defendants. | : | |

.. .. .. .. .. .. .. .. .. .. .. .. .. ..

| | | |
|---|---|---|
| CLYDE BOWMAN | : | |
| HARRY ERNEST | | MDL Docket No. 875 |
| RAY HANEY | : | CTO-205 |
| WILLIAM SEITZ | | |
| MARTIN TILLER | : | |
| PAUL WEBB | | |
| STEPHEN ZIMMERMAN | : | |
| | | 01-318 |
| v. | : | D. Del. C.A. No.: 00-3026 |
| GAF, CORPORATION, | : | |
| n/k/a G-I HOLDINGS, INC., Successor by | | |
| Merger to GAF Corporation, et al., | : | |
| Defendants | : | |

.. .. .. .. .. .. .. .. .. .. .. .. .. ..

## MOTION TO
## VACATE CONDITIONAL TRANSFER ORDER

John Todd and Clyde Bowman, *et. al.*, Plaintiffs herein pursuant to Rule 12C of the Rules

of Procedure of the Judicial Panel of the Multidistrict Litigation, move the Panel to vacate its

order conditionally transferring the above captioned cases to the United States District Court for

the Eastern District of Pennsylvania. This motion is based upon the attached Brief in Support of

IMAGED NOV 14 '01

**OFFICIAL FILE COPY**

Motion to Vacated Conditional Transfer Order and such other materials as may be presented to the panel at the time of hearing on the motion.

Pursuant to Rule 12C, movants request the Court to set this motion for a hearing on the next session of the panel.

Respectfully Submitted,

Edward J. Lilly
Law Offices of Peter G. Angelos
One Charles Center
100 North Charles Street, 22nd Floor
Baltimore, Maryland 21201

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV - 6 2001

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| John Todd, et. al. : | MDL Docket No. 875 |
| Plaintiffs, : | CTO-205 |
| v. : |  |
| ACandS, Inc., et al. : | D.Del. C.A.No. 01-CV-0234 |
| Defendants. : |  |

CLYDE BOWMAN :
HARRY ERNEST :
RAY HANEY : MDL Docket No. 875
WILLIAM SEITZ : CTO-205
MARTIN TILLER :
PAUL WEBB :
STEPHEN ZIMMERMAN :

01-318
v. : D. Del. C.A. No.: 00-3026

GAF, CORPORATION, :
n/k/a G-I HOLDINGS, INC., Successor by
Merger to GAF Corporation, et al., :

Defendants :

BRIEF IN SUPPORT OF MOTION TO
VACATE CONDITIONAL TRANSFER ORDER

Plaintiffs' Todd Bowman, Case No. D. Delaware, C.A. No. 1:01-234, and Clyde Bowman, *et. al.*, Case No. D. Delaware, C.A. 1:01-318, by their undersigned attorneys, submit this brief filed pursuant to Rule 12C of the Rules of Procedure of the Judicial Panel on Multi-District Litigation, in support of Plaintiffs' Motion to Vacate the Conditional Transfer Order of

the Panel ordering transferring of this case to the Eastern District of Pennsylvania in accordance with 28 U.S.C.A. 1407. These cases were originally filed in the Circuit Court for Baltimore City and the Superior Court for the District of Columbia, respectively, and sought damages from the defendants who are all settling members of the Center for Claims Resolution. It is alleged that the Defendants have breached their settlement agreements with the named Plaintiffs by failing to pay varying portions of the agreed upon settlement amounts. The defendants removed these cases to the United States District Court for the Northern District of Maryland and the United States District Court for the District of Columbia, respectively, based upon 28 U.S.C. §1334 alleging that these cases are related to Armstrong World Industries' bankruptcy. The plaintiffs have filed motions to remand these proceedings to the appropriate state court. On the Defendants' motion, both district courts transferred these proceedings to Delaware. Both cases are now pending the U.S. District Court for the District of Delaware, the jurisdiction where Armstrong World Industries bankruptcy is pending.

## FACTUAL BACKGROUND

The Bowman Plaintiffs filed suit in the Superior Court for the District of Columbia seeking compensation for injuries incurred as a result of exposure to the asbestos products of these Defendants. Likewise, John Todd filed suit in the Circuit Court for Baltimore City on the same grounds. A trial date was set in both jurisdictions. In both cases, the Defendants forming the Center for Claims Resolution (CCR) opted not to proceed to trial, but rather to settle all claims with the plaintiffs. On December 10, 1999, a letter from CCR Zone Manager Daniel P. Myer was sent to the Mr. Todd confirming that the CCR members agreed to settle out all of Mr. Todd's claims for $250,000, payable within ninety (90) days of the settlement. On December 29, 1999, a letter was sent to the Bowman Plaintiffs from CCR Zone Manager Robert D. Cappritti

confirming that the CCR members agreed to pay the Bowman plaintiffs $180,000 for the seven plaintiffs involved, payable within ninety (90) days of the settlement.

Shortly after the execution of the settlement agreements, Defendant G-I Holdings withdrew from the membership of the CCR. The CCR thereafter made partial payments to the Bowman plaintiffs in the amount of $138, 065.75, a sum $41, 935.25 short of the $180,000 settlement amount originally agreed upon and to Mr. Todd in the amount of $153,160.35, a sum $96, 839.65 short of the $250,000 settlement amount originally agreed upon. Letters from Mr. Cappritti and Mr. Myer cited G-I Holdings withdrawal from the CCR as their excuse for breaching the CCR's settlement agreement with the Plaintiffs. Counsel for G-I Holdings advised Plaintiffs' counsel that arbitration proceedings were pending between CCR and G-I Holdings pursuant to the arbitration provisions applicable when G-I Holdings was a member of the CCR.

After eight months with no resolution of the matter, the Plaintiffs filed a Motion to Compel Enforcement of the Settlement Agreement. This motion sought to compel the parties named in the motion to make immediate payment of the remainder of the settlement Plaintiffs entere into with the members of the CCR notwithstanding any dispute those members may have pursuant to their internal agreement. It is the Plaintiffs' position that they should be made whole by the parties with whom they settled i.e., the members of the CCR at the time the settlement was negotiated, and not be subject to an internal dispute between those members, a dispute in which the plaintiffs have no involvement.

## ARGUMENT

An action may be transferred for coordinated or consolidated pretrial proceedings only when there are common issues of fact and when the transfer will "serve the convenience of the

parties and witnesses" and "promote the just and efficient conduct" of the action. 28 U.S. C. § 1407. The fact that a case has been designated a "tagalong case" does not preclude the necessity of that determination. InRe: Grain Shipments 319 at Supp. 533 (JPML 1970).

It is the position of the plaintiff, that transfer by this panel is not appropriate because there are no issues to be resolved in this proceeding which have commonality with the asbestos personal injury cases pending in the Eastern District of Pennsylvania, and that neither the convenience of the parties and witnesses nor the just and efficient conduct of the case will be served by transfer to the Eastern District of Pennsylvania.

The purpose of Multi-District Litigation is to resolve in one proceeding pre-trial issues which are common to all of the consolidated cases. 28 U.S. C. S. § 1407(a) provides:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the Judicial Panel on Multi-District Litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated: Provided, however, That the panel may separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded.

The transfer of this action to the Eastern District of Pennsylvania will not satisfy the requirement of factual commonality described within §1407. The whole premise behind consolidated pretrial proceedings for asbestos cases under MDL-875 is to conduct discovery and dispose of pretrial motions affecting the common factual questions for the liability portion of personal injury or wrongful death asbestos cases. The factual questions surrounding typical asbestos personal injury claims concentrate on whether an asbestos manufacturer owed a duty to

injured plaintiffs, whether such duty was breached by the manufacturer, and causation. Such common questions of fact include the defective nature of asbestos products, the knowledge that asbestos manufacturers had of the defective nature of asbestos products, and state of the art evidence affecting the manufacturers' notice of product defect.

These two cases conditionally transferred under CTO-205 involve a completely different set of facts and would require inconsistent discovery mechanisms than those issues of fact contemplated under MDL-875. The Bowman and Todd claims are solely contractual in nature. There is no question of fact regarding the Defendants' tort liability to the Plaintiffs' since all potential tort claims against the Defendants have been expressly released by the Plaintiffs in exchange for a negotiated settlement amount. Rather, the factual inquiry in these cases are limited to the four corners of the executed releases. The question of whether these Defendants breached their agreement to the Plaintiffs in their refusal to pay the whole of the settlements has no correlation with the tort liability these Defendants would have faced had the agreements never been made. In fact, by asking the Plaintiffs' to sign off on their product liability claims against the Defendants, the CCR Defendants' knowing took on a completely different obligation. The claims now pursued turn on the intent of the parties and state contract law, not the traditional product liability factual framework. Accordingly, these cases are not appropriate candidates for inclusion in MDL-875, and the Plaintiffs' Motion to Vacate Conditional Transfer Order should be granted.

Transfer of these cases to the U.S. District Court for the Eastern District of Pennsylvania is also not proper because such transfer will not promote the efficient conduct of these actions. In order to transfer a case to MDL, 28 U.S.C. §1407 requires that a determination be made that such transfer will promote the just a efficient conduct of the action. In this case, transfer to the United

States District Court for the Eastern District of Pennsylvania will not satisfy such requirement. These cases are pending in federal court on the suggestion that they are related to Armstrong World Industries bankruptcy. The actions, upon motion of the Defendants, have been transferred to The U.S. District Court for the District of Delaware, the jurisdiction in which AWI's bankruptcy is pending. It is in the best interest of these cases and the AWI bankruptcy that the Delaware courts retain jurisdiction over these matters.

Following the Plaintiffs' filing of their Motions to Remand in these cases, the Defendants filed Motions to Transfers these cases to the U.S. District Court for the District of Delaware. The premise behind such transfers was that the courts overseeing the AWI bankruptcy were in the best position to dispose of these proceedings. See Exhibit 1. Both cases were subsequently transferred to the U.S. District Court for the District of Delaware.

Leaving these cases as they stand now will ensure that the claims will be handled in the most efficient manner possible. The pretrial issues involved with these cases deal almost exclusively with bankruptcy law and specific determinations regarding the effect, if any, that these proceedings will have on the AWI bankruptcy. In fact, within their Motions to Transfer, the Defendants admit that there will be no need for extended discovery beyond the papaers already filed with the courts. See Exhibit 1. The bulk of the pretrial issues involved in this case relates to whether bankruptcy jurisdiction is proper in these cases and whether these actions are core in nature. Such issues can be disposed of more efficiently and in a manner that conforms more closely with the tenor of AWI's bankruptcy proceedings by the courts overseeing the bankruptcy. The Delaware District Court is particularly familiar with the issues presented in these cases and can act in a manner that best protects the interests of the AWI bankruptcy, a proceeding that may very well have a wide range effect on asbestos litigation. Accordingly, it is not in the best

interests of these parties or the parties involved with the AWI bankruptcy that this case be transferred to the United States District Court for the Eastern District of Pennsylvania.

For the foregoing reasons, the Plaintiffs respectfully request that this Panel grant the Plaintiffs' Motion to Vacate Conditional Transfer Order and send these cases back to the U.S. District Court for the District of Delaware.

Respectfully Submitted,

_____
Edward J. Lilly
Law Offices of Peter G. Angelos
One Charles Center
100 North Charles Street, 22nd Floor
Baltimore, Maryland 21201

Case MDL No. 875   Document 3326   Filed 11/06/01   Page 10 of 20

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV - 6 2001

FILED
CLERK'S OFFICE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of November 2001, a copy of this Motion to Vacate Conditional Transfer Order was mailed, first class, postage prepaid, to:

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Robert N. Spinelli
Kelly, Jasons, McQuire
 & Spinelli
Centre Square West
Philadelphia, PA 19105

Edward J. Cass
Gallagher, Sharp,
Fulton & Norman
Bulkley Bldg., 7th Flr
1501 Euclid Avenue
Cleveland, OH 44115

Edward J. Lilly
Law Offices of
Peter G. Angelos, PC
100 N. Charles Street
22nd Floor
Baltimore, MD 21201

Robert E. Swickle
Jaques Admiralty Law Firm
1370 Penobscot Building
Detroit, MI 48226

Adam M. Chud
Shea & Gardner
1800 Massachusetts Ave, NW
Washington, DC 20036

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102

Andrew J. Trevelise
Reed Smith, OOP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 190103

David A. Damico
Burns, White & Hickton
2400 Fifth Ave Place
120 Fifth Avenue
Pittsburgh, PA 15222

Ronald L. Motley
Ness, Motley, Loadholt,
Richardson & Poole
28 Bridgeside Blvd.
PO Box 1792
Mt. Pleasant, SC 29465

Beth E. Valocchi
Valocchi & Sasso, P.A.
1200 Pennsylvania Avenue
Suite 303
Wilmington, DE 19806

Raymond P. Forceno
Forceno & Hannon
Philadelphia Bourse Bldg.
Suite 1000
Independence Mall East
Philadelphia, PA 19106

John J. Repcheck
Marks, O'Neill
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.W.
PO Box 998
Cedar Rapids, IA 52406

Ellen B. Furman
Goldfein & Joseph
1600 Market Street
33rd Floor
Philadelphia, PA 19103

John D. Roven
John Roven & Associates
2190 North Loop West
Suite 410
Houston, TX 77018

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Blvd
Sixth Floor
Los Angeles, CA 90025

Susan M. Hanson
Stich, Angell, Kreidler, Muth
The Crossings, Suite 120
250 2nd Avenue South
Minneapolis, MN 55401

Richard D. Schuster
Vorys, Sater, Seymour, Pease
52 East Gay Street
PO Box 1008
Columbus, OH 43216

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308

_____
Edward J. Lilly

Mar-19-2001 10:50 From-SHB GARDNER 875    Document 3326    Filed 10/06/01    Page 11 of 20
Case MDL No. 875 Document 3326 Filed 11/06/01 Page 11 of 20
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV - 6 2001

FILED
CLERK'S OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

In re: Personal Injury Asbestos Litigation

JOHN TODD,

    Plaintiff,

v.                                              No. CV-3642 (JFM)

ARMSTRONG WORLD INDUSTRIES,
INC., QUIGLEY COMPANY, INC.,
ET AL.,

    Defendants.

## MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

### INTRODUCTION

On December 14, 2000, the claims and/or causes of action raised by plaintiff's motion to enforce settlement in this case were removed to this Court pursuant to 28 U.S.C. § 1452(a). The basis for the removal was that, upon the filing on December 6, 2000 by defendant Armstrong World Industries, Inc. ("Armstrong") of a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), this Court acquired original jurisdiction of these claims and/or causes of action under 28 U.S.C. § 1334(b).

Defendant Quigley Company, Inc. now moves this Court, under 28 U.S.C. § 1412 and/or § 1404, to transfer the removed claims and/or causes of action to the United States District Court for the District of Delaware, the district where Armstrong's bankruptcy is pending. As explained below, this case is one of hundreds of actions, now pending and/or soon to be filed, seeking to enforce settlement agreements involving Armstrong and other member companies of the Center

- 2 -

for Claims Resolution ("CCR"). In other words, this case is a small part of a nationwide enforcement litigation involving Armstrong and the other CCR members. Rather than having this nationwide enforcement litigation resolved in a piecemeal fashion by courts all over the country – possibly with inconsistent and conflicting results – it would make more sense for these enforcement actions to be transferred to one forum for resolution, the District of Delaware, where Armstrong's bankruptcy is pending. Such a transfer would be in accordance with the well-settled presumption that all cases that, as here, are at least "related to" the bankruptcy should be transferred to the district where the bankruptcy is pending. In addition, such a transfer would serve "the interest of justice" and the "convenience of the parties," as specified in 28 U.S.C. § 1412 and § 1404.

### STATEMENT

On December 6, 2000, Armstrong filed a voluntary petition for relief under the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. The chapter 11 case is pending before United States District Court Judge Joseph J. Farnan, Jr. under the case name In re Armstrong World Industries, Inc. et al., Case No. 00-4471 (JJF).

On December 14, 2000 defendant Quigley Company, Inc. removed to this Court all of the claims and/or causes of action raised by the motion to enforce settlement that the plaintiff filed against Armstrong and other defendants on November 13, 2000. The motion asserts that Armstrong and other defendants jointly entered into a settlement agreement with plaintiff and are jointly and severally liable for certain amounts that have not been paid under that agreement.

At the time the settlement agreement at issue was entered into, Armstrong and the other defendants were all members of the Center for Claims Resolution ("CCR"). The CCR is a

- 3 -

nonprofit, nonstock Delaware corporation that was created in 1988 by a group of former asbestos producers to serve as a claims management facility for its member companies named as defendants in asbestos personal injury suits. This matter arises out of the failure of a CCR member, GAF Corporation ("GAF"), to pay its share of the settlement. Plaintiff seeks to recover GAF's share of the settlement from the other CCR defendants, despite the fact that the other CCR defendants have each paid their own shares of the settlement.

The removed claims are similar to other enforcement proceedings that have been brought during the past year involving Armstrong and the other CCR member companies in dozens of jurisdictions across the country. As here, these other enforcement proceedings have involved the question of whether the defaulting CCR member company is alone liable for the share of settlements that that defaulting company has failed to pay, or whether the non-defaulting CCR companies are also liable for the unpaid share. At the time of its bankruptcy filing, Armstrong was in the midst of this nationwide enforcement litigation. Thus, since the beginning of last year, asbestos plaintiffs' counsel have filed almost one hundred enforcement proceedings against various CCR member companies; Armstrong has been involved in virtually all of these enforcement actions. To date, these actions have been considered by almost 50 different courts in some 18 states, and by the U.S. District Court for the Eastern District of Pennsylvania, where the federal asbestos multidistrict litigation is pending. In the great majority of these proceedings, the courts have refused to find the non-defaulting CCR members liable for the unpaid share of the settlements. In a few jurisdictions, however, courts have imposed joint liability upon the non-defaulting CCR members for the unpaid amounts; these rulings are on appeal.

- 4 -

Many additional enforcement proceedings, including the one before this Court, are presently pending, and new enforcement actions are being filed every week. Armstrong is a party to virtually all of the settlements at issue in these enforcement proceedings. Hence, Armstrong has a keen interest in the outcome of these enforcement actions. Given Armstrong's participation in virtually all of these settlements, these enforcement actions have already and likely will continue to be removed to federal court under § 1334(b); it is also likely that the removing defendants will, as here, seek transfer to the District of Delaware, in order that this nationwide litigation will be pending in one forum.

The experience to date in this nationwide litigation has shown that resolution of these enforcement proceedings generally does not require witnesses or live testimony. Instead, these enforcement actions are usually decided on briefs and documentary exhibits, such as the settlement agreement, the CCR Producer Agreement (the agreement that created the CCR some 12 years ago), and one or two affidavits. In addition, many of these enforcement actions are brought by national plaintiffs' counsel who handle cases all over the country. Finally, although resolution of plaintiff's enforcement motion in this case will involve issues of Maryland agency and contract law, that law is neither complex nor unsettled. Again, the experience in these nationwide enforcement proceedings during the past year has shown that the state law involved in these proceedings is, in general, black letter agency and contract law that varies little from jurisdiction to jurisdiction.

- 5 -

## ARGUMENT

## THIS CASE SHOULD BE TRANSFERRED
## TO THE DISTRICT OF DELAWARE

As set forth in the Notice of Removal, the basis for this Court's jurisdiction in this case is 28 U.S.C. § 1334(b), which grants original jurisdiction in the federal courts over actions "arising under title 11, or arising in or related to [a case] under title 11." Although "most courts look to 28 U.S.C. § 1412 for authority to determine the outcome of a motion to transfer venue" of a case to the bankruptcy court, see A.B. Real Estate, Inc. v. Bruno's Inc. (In re Bruno's Inc.), 227 B.R. 311, 323 & n.39 (Bankr. N.D. Ala. 1998) (citing numerous cases), a few cases apply § 1404 to such cases. E.g., Jackson v. Venture Dep't Stores, Inc., 1998 U.S. Dist. LEXIS 17508, at *5 (N.D. Ill. Nov. 2, 1998). In any event, the issue "is a largely academic exercise," since "the factors to be considered under either statute are the same." Jackson, 1998 U.S. Dist. LEXIS 17508, *5 - 6. Thus, § 1412 states that transfer may be ordered "in the interest of justice or for the convenience of the parties," while § 1404 allows transfer "[f]or the convenience of parties and witnesses, in the interest of justice . . . ." In any event, defendant's motion here seeks transfer under § 1412 and/or § 1404.

In considering whether to transfer a § 1334(b) case under § 1412 or § 1404, the "general rule" is that "the court where the bankruptcy case is pending is the proper venue for all related proceedings within the court's jurisdiction." Howard Brown Co. v. Reliance Ins. Co., 66 B.R. 480, 482 (E.D. Pa. 1986). Accord In re Nixon Mach. Co., 27 B.R. 871, 873 (Bankr. E.D. Tenn. 1983); In re Vital Link Lodi, Inc., 240 B.R. 15, 19 (Bankr. W.D. Mo. 1999); Jackson v. Venture Dep't Stores, Inc., 1998 U.S. Dist. LEXIS 17508, at *7; Kotlicky v. Belford, 64 B.R. 679, 681

- 6 -

(N.D. Ill. 1986) (also citing other decisions). As explained in Kotlicky, this means that a court considering transfer must keep "this presumption in mind," while considering "whether the convenience of the parties and the interest of justice" support transfer to the jurisdiction where the bankruptcy case is pending. Id. at 681-82.

Court after court has held that the "most important" factor that a court contemplating transfer must consider is whether transfer would "promote the economic and efficient administration of the estate." Id. at 682 (also citing other decisions). See Indep. Stationers, Inc. v. Vaughn, 2000 U.S. Dist. LEXIS 14207, at *8 (S.D. Ind. Jan. 3, 2000); Jackson, 1998 U.S. Dist. LEXIS 17508, at *7 (describing "efficient administration of estate" as a "critical consideration" in deciding transfer), In re Vital Link Lodi, Inc., 240 B.R. at 19; In re Peachtree Lane Assoc., Ltd., 198 B.R. 272, 283 (Bankr. N.D. Ill. 1996); In re Butcher, 46 B.R. 109, 112 (Bankr. N.D. Ga. 1985). Other less important factors include convenience of the parties and witnesses, and the law to be applied. See Indep. Stationers, 2000 U.S. Dist. LEXIS 14207, at *21-23; Jackson, 1998 U.S. Dist. LEXIS 17508, at *8-9.

Applying this analysis here, it is plain that this action should be transferred to District of Delaware. Not only would such a transfer accord with the "general rule" or "presumption" that Delaware is the proper venue for all actions involving Armstrong, but transfer to Delaware would promote the "efficient administration" of Armstrong's estate. As explained above, in the past year Armstrong and the other CCR members have been involved in over 100 enforcement proceedings across the country involving settlement agreements where, as here, a former CCR member has failed to pay its share of the settlement. In many cases, the defaulting CCR member company alone has been held liable for the unpaid share of the settlement, but, in other cases, the

- 7 -

non-defaulting CCR members have also been found jointly liable for the unpaid share. Many additional enforcement proceedings are pending, and it is likely that many more will be filed in the future. Virtually all of these enforcement actions are likely to involve Armstrong. It is also probable that, as here, the pending and future enforcement actions involving Armstrong will be removed to federal court and that transfer to the District of Delaware will be sought. It clearly would be more "economic" and "efficient" to resolve this and similar enforcement proceedings in one district – where the bankruptcy case is located – rather than having Armstrong (and the other parties) expend resources litigating these claims in courts across the country, possibly with inconsistent and conflicting results.

Closely on point is Jackson v. Venture Dep't Stores, Inc., 1998 U.S. Dist. LEXIS 17508 (N.D. Ill. 1998). In that case, the court granted transfer of multiple consumer fraud claims against the debtor to Delaware, the district where the bankruptcy was pending, in order to conserve the debtor's "finite funds." Id. at *7. Without such a transfer, the court explained, the debtor would be forced "to litigate multiple suits in distant fora," raising "litigation costs," and "thereby reducing the funds available to pay not only other creditors, but the plaintiffs themselves." Id. See also A.H. Robins v. Piccinin, 788 F.2d 994, 1012 (4th Cir. 1986) (purpose of bankruptcy will be "completely thwarted" if "resources of the debtor are dissipated in the expenses of litigating the trial of thousands of personal injury suits in courts throughout the land spread over an interminable period time."); In re Vital Link Lodi, Inc., 240 B.R. at 20 (transfer to bankruptcy district makes sense since similar actions pending there and court to which case was removed has "absolutely no connection" to debtor or bankruptcy proceedings).

- 8 -

The other lesser factors to be considered by the Court in ruling on transfer are either neutral or also favor transfer to Delaware. Convenience of witnesses is not relevant because, as noted above, these enforcement proceedings are generally resolved on the papers submitted, without live testimony. With respect to the convenience of the parties, the plaintiffs themselves do not generally participate in the enforcement proceedings, and it is likely to be more convenient for national plaintiffs' counsel to litigate these enforcement actions in one jurisdiction – the District of Delaware – rather than in multiple courts all over the country. And while these enforcement actions are governed by state agency and contract law, the relevant agency and contract principles are not complicated, vary little from state to state, and may be fairly applied by the United States District Court judge handling Armstrong's bankruptcy case. See Jackson, 1998 U.S. Dist. LEXIS 17508, at *9 (there is "no reason to believe" that a Delaware federal court will not accurately apply Illinois law after transfer).

In short, this Court should grant the motion to transfer this action to the U.S. District Court for the District of Delaware.

- 9 -

Respectfully submitted,

_____

F. Ford Loker, Jr.
Church & Houff, P.A.
2 North Charles Street, Suite 600
B&O Building
Baltimore, Maryland 21201

Of counsel:
Shea & Gardner
1800 Massachusetts Avenue, N.W
Washington, D.C. 20036

Counsel for Quigley Company, Inc.

March 2, 2001

- 10 -

## CERTIFICATE OF SERVICE

FILED
CLERK'S OFFICE

I hereby certify that on this 2nd day of March, 2001, I served a copy of the foregoing by causing a copy of same to be mailed, first-class postage prepaid, to:

Armand J. Volta, Esq.
Law Offices of Peter Angelos
One Charles Center
100 North Charles Street
Baltimore, MD 21201

Michael A. Rosenthal, Esq.
Gibson, Dunn, & Crutcher
2100 McKinney Avenue
Suite 1100
Dallas, TX 75201

James Ulwick, Esq.
Kramon & Graham
One South Street
Suite 2600
Baltimore, MD 21202

F. Ford Loker