## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| CHARLES E. WARD, | ) | |
| | ) | |
| **Plaintiff,** | ) | No. 3-01-CV-433 |
| v. | ) | |
| | ) | Knox County Circuit Court No. |
| A-BEST PRODUCTS COMPANY, INC., et al., | ) | 2-496-01 |
| | ) | |
| **Defendants.** | ) | MDL# 875 |

### PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO VACATE THE CONDITIONAL TRANSFER ORDER

Comes now the Plaintiff, by and through counsel, and moves the Court to Vacate the Conditional Transfer Order and remand the above-styled and numbered action to the Circuit Court for Knox County, Tennessee. The Plaintiff respectfully submits that the defendant Union Carbide Corporation's Notice of Removal is not well taken and should be denied.

**A.     Union Carbide's Notice of Removal under the federal enclave theory is procedurally defective.**

The defendant states that the Department of Energy facilities in Oak Ridge, Tennessee is a federal enclave and thus subject to federal court jurisdiction and governed by federal law according to 28 U.S.C. §1331.

The law is clear that under federal enclave jurisdiction all defendants are required to join in the removal petition under 28 U.S.C §1441 and 28 U.S.C. §1446. Aiken v. Ashland Chemical, 156 F.3d 1030, 1034 (10th Cir. 1998). As the defendant has pointed out, this rule of unanimity requires that in order for a Notice of Removal to

1

## OFFICIAL FILE COPY

IMAGED NOV 2 0 '01

be properly before the Court, all defendants who have been served or otherwise properly joined in the action must either join in the removal, or file a written consent to the removal. Brierly v. Alusuisse Flexible Packaging, Inc., 184 F. 3d 527, 533, fn. 3 (6th Cir. 1999).

As stated in the defendant's Memorandum in Opposition To Plaintiff's Motion to Remand This Action to State Court, the United States Supreme Court recently stated in Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 349, 119 S. Ct. 1322, in the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party. Id. at 350, 1327.   Unless the named defendant agrees to waive service, the summons continues to function as the sine qua non directing an individual or entity to participate in a civil action or forego procedural or substantive rights. Id. at 351, 1327.

In this case the complaint was filed on August 8, 2001, and the defendant Union Carbide Corporation received a copy of Plaintiff's Complaint and a Request for Waiver of Service of Summons on August 14, 2001.   The defendant filed its Notice of Removal on September 10, 2001.  The defendant admits in its Notice of Removal that it has only obtained the consent of two defendants who have been served in this action  (ACandS, Inc. and General Electric Company) and that Rapid-American Corporation did not consent to the removal of this action.

In this case most of the defendants were served with a Waiver of Service of Summons pursuant to the Tennessee Rules of Civil Procedure 4.07.  Although the defendant Union Carbide has only received consent for removal of this action from two

2

of the defendants it appears, according to the Plaintiffs investigation, that fifteen defendants have either returned the Waiver of Service of Summons or answered Plaintiff's Complaint.  Plaintiff filed these waivers of service with the Knox County Circuit Court Clerk as required pursuant to Tennessee Rules of Civil Procedure 4.07 (4). Plaintiff submits with this Brief as collective exhibit "1" the Waivers of Service of Summons and the Answers to Plaintiff's Complaint.

Thus, all of the defendants in this action are subject to the jurisdiction of the state court, and have not joined in the defendant Union Carbide's removal petition as required by 28 U.S.C. §1441 and 28 U.S.C. § 1446, See, Aiken v. Ashland, 156 F.3d 1030(10th Cir. 1998).  The defendant, Union Carbide, freely admits in their Notice of Removal that the defendant Rapid-American Corporation does not consent to the removal of this action.  As the court can see from Plaintiff's collective exhibit "1", Rapid-American answered Plaintiff's Complaint on September 21, 2001.  Thus, Union Carbide's removal without the consent of all of the defendants is procedurally defective under their theory of federal enclave jurisdiction.

### B.    There is no federal officer jurisdiction under 28 U.S.C. § 1442

When presented with a motion to remand, the removing defendants have the burden of establishing that federal jurisdiction exists.  Wilson v. Republic Iron and Steel Co., 257 U.S. 92, 97, 42 S. Ct. 35 (1921); Allen v. R & H Oil and Gas Co., 63 F. 3d 1326, 1335 (5th Cir. 1995).  As stated in the defendant's Memorandum in Opposition to Plaintiff's Motion to Remand, in order to qualify for federal officer jurisdiction a removing party must be a federal officer or a "person" and demonstrate that: 1)  it acted under the

direction of a federal officer,  2)  that a causal nexus exists between the defendant's actions under color of federal office in the plaintiff's claims, and 3) the removing defendant asserts a colorable federal defense.  Mesa v. California, 489 U.S. 121, 131-132 (1989).

Union Carbide's role at the Department of Energy facilities has been discussed in the case of Morgan v. Brush Wellman, _____ F. Supp. _____ (E.D. Tenn. 2000), 2000 U.S. Dist. Lexis 9898 (Feb. 16, 2000), copy attached.  In this case the Court looked at the issue of whether or not the federal government had authority to control the detailed physical performance and exercise substantial supervision over the day to day activities of Union Carbide.  The Court concluded that there was not substantial supervision by the United States Government over the day-to-day operations of Union Carbide.  Additionally, in United States v. Boyd, 378 U.S. 39, 84 S. Ct. 1518, 1524 (1964) the United States Supreme Court stated that Union Carbide was not an instrumentality of the United States during its work at the Department of Energy facilities and that Union Carbide exercised independent skill and judgment.  Id. at 1524. Thus, Union Carbide, has not shown any federal officer direction or control as required under 28 U.S.C. § 1442.

Plaintiff submits to this Court that the defendant, Union Carbide, has misread the second requirement for federal officer jurisdiction.  In Union Carbide's memorandum they state that for federal officer jurisdiction to exist a "casual" nexus between Plaintiff's claims and it's role as a federal officer must be present.  Plaintiff submits that in Mesa v. California, 49 U.S. 121 (1989), for federal officer jurisdiction to exist there must be a

causal nexus between defendant's actions and their supposed action at the direction or control of a federal officer. The defendant has submitted no proof to this Court that any federal officer specifically controlled Union Carbide regarding the warnings about asbestos and the defendant does not state that it was compelled to use asbestos under the direction of a federal officer. Additionally, there is no proof in the record that the federal government provided direction or control on warnings when using asbestos and whether or not the federal government prevented defendant from taking its own safety precautions. Thus, there is no causal nexus between defendant's actions and response to any federal control and the Plaintiff's state law claims of strict liability, negligence, failure to warn, and breach of warranty. See, Faulk v. Owens-Corning Fiberglas Corp. , 48 F.Supp. 2d 643, 662 (E.D. Tex. 1999)

### C.   The defendant does not have a colorable federal defense

The Plaintiff concedes that a defendant need not show, for purposes of removal, that a defense is meritorious, but need only show that a colorable claim to such defense exists. Mesa v. California, 489 U.S. 121, 128-129 (1989). Plaintiff contends that defendants failure to establish a causal nexus between its actions under the control of a federal officer, if any, and the Plaintiff's claims shows that their government contractor defense is not colorable. See, Faulk v. Owens-Corning Fiberglas Corp., 48 F. Supp. 2d 643, 665 (E.D. Tex. 1999). Plaintiff's submit that there is no proof in the record which supports defendant's assertion of a government contractor defense. Thus, Plaintiff asserts that although the defendant has indeed "plead" a federal defense under the federal officer statute, it is not a "colorable" federal defense. Id. at 665.

5

**D.      Union Carbide's removal under federal enclave jurisdiction**

**pursuant to 28 U.S.C. §1441 is not proper.**

As stated in the defendant's memorandum, for property to be recognized as a

federal enclave entitling exclusive federal jurisdiction the property in question must have

been (1) "purchased" by the federal government, and (2) transferred with the consent of

the state legislature.  United States Constitution, Art. I, § 8, Cl.17; Humble Pipeline v.

Waggonner, 376 U.S. 369, 371, 84 S.Ct. 857, 859 (1964).  Plaintiff submits that the

defendant Union Carbide, has not presented this Court with any proof that the

Department of Energy facilities in Oak Ridge, Tennessee was purchased by the federal

government and transferred with the consent of the state legislature.   The removing

defendant has the burden of proving that federal jurisdiction exists.  Wilson v. Republic

Iron and Steel Co., 257 U.S. 92,97, 42 S. Ct. 35 (1921); Allen v. R & H Oil and Gas Co.,

63 F. 3d 1326, 1335 (5th Cir. 1995).

In Goodyear Atomic Corp., v. Miller, 486 U.S. 174, 183 fn. 4 (1988), the United

States Supreme Court stated that Department of Energy nuclear production facilities

are not federal enclaves.  Plaintiff would again note that under 28 U.S.C. §1441 and 28

U.S.C. §1446, the defendant has not met the requirement that all of the defendants join

in or consent to the removal petition and Union Carbide cannot ask for removal under

federal enclave jurisdiction without each of the defendants' consent.

## E.     Conclusion

Removal statutes are strictly construed and doubts should be resolved against removal. Butler v. Polk, 592 F. 2d 1293, 1296 (5th Cir. 1979); Breymann v. Pennsylvania O.& D. R., Co., 38 F. 2d 209 (6th Cir. 1930). In removed cases, the existence of federal subject matter jurisdiction is determined at the time of removal. Faulk v. Owens-Corning Fiberglas Corp., 48 F. Supp. 2d 653, 657 (E.D. Tx. 1999). Plaintiff submits that defendant, Union Carbide, has not proven that it is a federal officer under 28 U.S.C. §1442 and that the Department of Energy facilities in Oak Ridge, Tennessee are federal enclaves. Additionally, the defendant's petition for removal is procedural defective in that Union Carbide does not have the consent or joinder of all the defendants under their theory of federal enclave jurisdiction.

Plaintiff submits to this Honorable Court that the defendant, Union Carbide, has implicitly conceded that they have not proven that removal of this cause is proper when it asks this Court not to rule on this issue and to allow discovery to take place.

Plaintiff submits that the law is clear that Union Carbide was not a federal officer at the Department of Energy facilities in Oak Ridge, Tennessee, that the Department of Energy facilities is not a federal enclave, and that the removal has not been consented to by all of the defendants. Thus, this Court should remand this case back to the Knox County Circuit Court.

7

## Tennessee Rule of Civil Procedure 4.07
## Waiver of Service of Summons

TO:  The Law Offices of Peter G. Angelos, P.C.:

I acknowledge receipt of your request that I waive service of a summons in the action **Charles E. Ward   v. A-Best Company, Inc., et al.**, which is civil action number **2-496-01** in the Knox County Circuit Court. I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after **August 10, 2001**.

_____8/21/01_____
Date

_____Jennif A. Riester_____
Signature
Printed/typed name:_____Jennifer A. Riester_____

as _____Attorney_____
for _____A-Best Company, Inc._____

## Duty to Avoid Unnecessary Costs
## of Service of Summons

Rule 4 of the Tennessee Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of a summons, fails to do so will be required to bear the costs of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court. If the answer or motion is not served within this time, a default judgment, may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

G:\L..\summons\a-best\waiver.req

**PLAINTIFF'S EXHIBIT**

PENGAD-Bayonne, N. J.

**IN THE CIRCUIT COURT FOR KNOX COUNTY, TENNESSEE**

CHARLES E. WARD,

      Plaintiff,

vs.                                 No. 2-496-01

A-BEST COMPANY, INC., ET AL.,

      Defendants.

**SHORT FORM ANSWER OF DEFENDANT
A-BEST PRODUCTS COMPANY, INC.**

      Comes the defendant, A-Best Products Company, Inc., by and through counsel, pursuant to this Court's Order relating to asbestos litigation, entered herein on or about March 11, 1991, and Rule 10.04 of the Tennessee Rules of Civil Procedure, and answers the Complaint as follows:

      1.      This defendant adopts and incorporates by reference all affirmative defenses included in its Amended Master Answer, filed as though fully set forth herein.

      2.      Without waiving any of the defenses incorporated and referenced above, for further answer to the Complaint, this defendant adopts the following numbered paragraphs contained in its Master Answer:

COUNT I - STRICT LIABILITY

Paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11

COUNT II - BREACH OF WARRANTY

Paragraphs 12 and 13

COUNT III - NEGLIGENCE

Paragraphs 14, 15, 16, 17, 18, and 19

COUNT IV - FRAUD

Paragraphs 20, 21, 22, 23, 24, and 25

COUNT V - CONSPIRACY

Paragraphs 26 and 27

COUNT VI - MARKET SHARE LIABILITY

Paragraphs 28 and 29

3.    This defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraphs 8 through 12 of the Short Form Complaint. However, defendant denies the male plaintiff was exposed to any product for which this defendant would be responsible.

4.    Any other allegations of the Complaint not hereby admitted, denied or explained are denied insofar as they relate to this defendant and strict proof thereof is demanded.

5.    Defendant incorporates by reference all affirmative defenses as set out in Paragraphs 34 through 48 of its Amended Answer to the Master Complaint.

WHEREFORE, having answered the Complaint filed against it,   A-Best prays to be hence dismissed from this cause with its cost and demands a jury to try the issues joined.

Respectfully submitted,

BAKER, McREYNOLDS,
O'KANE & ATKINS


Michael K. Atkins (PID #439452)
Attorneys for Defendant,
A-Best Products Company, Inc.

P. O. Box 1708
Knoxville, TN  37901-1708
(865)637-5600

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing document was served upon counsel of record either by hand delivery or United States mail, this 25TH day of  Oct. ,
2001.

BAKER, McREYNOLDS,
O'KANE & ATKINS


Michael K. Atkins

## Tennessee Rule of Civil Procedure 4.07
## Waiver of Service of Summons

TO:  The Law Offices of Peter G. Angelos, P.C.:

I acknowledge receipt of your request that I waive service of a summons in the action of **Charles E. Ward    v. A-Best Company, Inc., et al.**, which is civil action number **2-496-01** in the Knox County Circuit Court.  I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after **August 10, 2001**.

_8-15-01_____
Date

Signature _____

Printed/typed name:_____

as _____
for _____ACandS, Inc._____

## Duty to Avoid Unnecessary Costs
## of Service of Summons

Rule 4 of the Tennessee Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint.  A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of a summons, fails to do so will be required to bear the costs of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property.  A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court.  If the answer or motion is not served within this time, a default judgment, may be taken against that defendant.  By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

G:\L..\summons\acands\waiver.req

# IN THE CIRCUIT COURT FOR
# KNOX COUNTY, TENNESSEE

| | | |
|---|---|---|
| **CHARLES E. WARD,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **vs.** | ) | **No:  2-496-01** |
| | ) | |
| **ACandS, INC., et al.,** | ) | |
| | ) | |
| **Defendants** | ) | |

## SHORT FORM ANSWER

COMES now the defendant, ACandS, Inc., and for answer to the Complaint filed herein hereby adopts and incorporates by reference the respective paragraphs set forth in the Master Answer previously filed on July 25, 1991, as follows:

Introduction - Paragraphs 1 - 4.

1.  Count One - Strict Liability - Paragraphs 1 through 11;

2.  Count Two - Breach of Warranty - Paragraphs 12 through 14;

3.  Count Three - Negligence - Paragraphs 15 through 19;

4.  Count Four - Fraud - Paragraphs 20 through 25;

5.  Count Five - Conspiracy - Paragraphs 26 through 30;

6.  Count Six - Market Share Liability - Paragraphs 31 through 33;

7.  This defendant denies that the male plaintiff has contracted asbestos lung disease and demands strict proof thereof.

8.    This defendant is without sufficient knowledge or information to either admit or deny the allegations contained in Paragraph 8 of the Short Form Complaint.

9.    This defendant is without sufficient knowledge or information to either admit or deny the allegations contained in Paragraph 9 of the Short Form Complaint.

10.    This defendant is without sufficient knowledge or information to either admit or deny the allegations contained in Paragraph 10 of the Short Form Complaint.

11.    This defendant is without sufficient knowledge or information to either admit or deny the allegations contained in Paragraph 11 of the Short Form Complaint.

12.    This defendant hereby adopts and incorporates the Affirmative Defenses set forth in the Master Answer.

WHEREFORE, having fully answered the Short Form Complaint filed herein against it, this defendant prays to be dismissed from this cause with its proper costs and alternatively demands a jury to try the issues when joined.

Respectfully submitted,

William D. Vines, III
Martin L. Ellis
Bruce A. Anderson

BUTLER, VINES & BABB, P.L.L.C.
P. O. Box 2649
Knoxville, TN  37901-2649
Attorneys for Defendant,
ACandS, Inc.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and exact copy of the foregoing Short Form Answer has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage to carry the same to its destination.

Michael Nassios, Attorney
LAW OFFICES OF PETER ANGELOS
2643 Kingston Pike, Suite 101
Knoxville, TN  37919

This the __22nd__ day of _August_____, 2001.

Attorney

## Tennessee Rule of Civil Procedure 4.07
## Waiver of Service of Summons

TO:  The Law Offices of Peter G. Angelos, P.C.:

I acknowledge receipt of your request that I waive service of a summons in the action of **Charles E. Ward   v.  A-Best Company, Inc., et al.**, which is civil action number **2-496-01** in the Knox County Circuit Court.  I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after **August 10, 2001.**

_8/13/01_
Date

Signature: _David R Morgan President_

Printed/typed name: _DAvid R. Morgan_

as _President_

for _ACME Plastering, Inc._

## Duty to Avoid Unnecessary Costs
## of Service of Summons

Rule 4 of the Tennessee Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint.  A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of a summons, fails to do so will be required to bear the costs of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property.  A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court.  If the answer or motion is not served within this time, a default judgment, may be taken against that defendant.  By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

G:\...\summons\acme plastering\waiver.req

**IN THE CIRCUIT COURT FOR KNOX COUNTY, TENNESSEE**

CHARLES E. WARD,         :
                             :

     Plaintiff,        :
                             :

vs.                     :     No: 2-496-01
                             :

A-BEST COMPANY, INC., et al.,  :
                             :

     Defendants.      :

**SHORT FORM ANSWER OF DEFENDANT ACME PLASTERING, INC.**

        Comes the Defendant Acme Plastering, Inc., by and through counsel, and for its answer to the Short Form Complaint filed against it in the above-action, says:

        1.  In response to paragraph 1, this Defendant adopts paragraphs 1 and 3 through 11 of its Master Answer.

        2.  In response to paragraph 2, this Defendant adopts paragraphs 12, 13 and 14 of its Master Answer.

        3.  In response to paragraph 3, this Defendant adopts paragraphs 15-19 of its Master Answer.

        4.  In response to paragraph 4, this Defendant adopts paragraphs 20-25 of its Master Answer.

        5.  In response to paragraph 5, this Defendant adopts paragraphs 26-30 of its Master Answer.

        6.  In response to paragraph 6, this Defendant adopts paragraphs 31, 32 and 33 of its Master Answer.

        7.  This Defendant denies the averment of paragraph 7 for lack of knowledge.

        8.  This Defendant denies the averment of paragraph 8 for lack of knowledge.

        9.  This Defendant denies the averments of paragraph 9 for lack of knowledge.

        10.  This Defendant denies the averments of paragraph 10.

        11.  This Defendant denies the averments of paragraph 11 for lack of knowledge.

        12.  For further answer to the Short Form Complaint filed in this cause, this Defendant adopts paragraphs 51-61 of its Master Answer.

And now, having fully answered the Complaint, this Defendant prays that it be dismissed from this action, for its costs, expenses and for a jury to try this case.

Respectfully submitted,

**FRANTZ, McCONNELL & SEYMOUR, LLP**

By: _____
Debra L. Fulton      BPR#009455
Attorney for Defendant
Acme Plastering, Inc.
Post Office Box 39
Knoxville, Tennessee  37901
(865) 546-9321

## CERTIFICATE OF SERVICE

I certify that an exact copy of the foregoing document has been served upon plaintiff's counsel of record in this litigation, either by hand delivery to the offices of said counsel or by mailing a copy to said counsel in a properly addressed and stamped envelope, regularly deposited in the United States Mail and by notifying defense counsel of the availability of copies upon request.

This the _____ day of September, 2001.

**FRANTZ, McCONNELL & SEYMOUR, LLP**

By: _____
Debra L. Fulton

S:\WPDOCS\JEW\ACME\WardChas.wpd

2



**State of Tennessee**

## Department of State

Division of Business Services
312 Eighth Avenue North
6th Floor Wm. R. Snodgrass Tower
Nashville, Tennessee 37243

9/27/01
**Date**

Atlas
return
Service
Sheet

RR 214 028 242 US
**Certifed Number**

**Case Number:** 2-496-01

HON. CATHERINE QUIST
KNOX COUNTY-CIRCUIT COURT
PO BOX 379
KNOXVILLE, TN 37902-1805

**RE:** CHARLES E. WARD

**VS:** A-BEST COMPANY, INC. ET AL

**Dear Clerk:**

Enclosed are the following papers in the above styled case:

☑ **Original Summons**

☑ **Affidavit and Endorsement**

☑ **Registered or Certified Return Receipt signed by:**

H WALLACE

☐ **Registered or Certified letter returned undelivered with notation:**

Sincerely:

*Riley C. Darnell*

**Riley C. Darnell**

enclosures

**Initials:** KDF
**CC:** PETER ANGELOS

SS-4210 (Rev. 12/96)                RDA No. 1003

Respectfully submitted this ___14___ day of November, 2001.

THE LAW OFFICES OF PETER G. ANGELOS, P.C.

by:_____

MIKE G. NASSIOS (PID No. 359581)
RANDALL E. REAGAN (PID No. 150)
TIMOTHY M. McLAUGHLIN (PID No. 402338)
ROBERT S. PATTERSON (PID No. 127776)
JAMES PATRICK HAWKINS (PID No. 304248)

8

## Tennessee Rule of Civil Procedure 4.07
## Waiver of Service of Summons

TO:  The Law Offices of Peter G. Angelos, P.C.:

I acknowledge receipt of your request that I waive service of a summons in the action of **Charles E. Ward   v. A-Best Company, Inc., et al.,** which is civil action number **2-496-01** in the Knox County Circuit Court.  I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after **August 10, 2001**.

_____8-15-01_____
Date

_____
Signature

Printed/typed name: __Charles L. Carver_____
as _____President_____
for _____Breeding Insulation Company, Inc.__

## Duty to Avoid Unnecessary Costs
## of Service of Summons

Rule 4 of the Tennessee Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint.  A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of a summons, fails to do so will be required to bear the costs of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property.  A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court.  If the answer or motion is not served within this time, a default judgment, may be taken against that defendant.  By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

G:\L..\summons\breeding\waiver.req

## Tennessee Rule of Civil Procedure 4.07
## Waiver of Service of Summons

TO:  The Law Offices of Peter G. Angelos, P.C.:

I acknowledge receipt of your request that I waive service of a summons in the action of **Charles E. Ward   v. A-Best Company, Inc., et al.**, which is civil action number **2-496-01** in the Knox County Circuit Court. I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after **August 10, 2001**.

_____8/22/01_____
Date

_____John J. Herguth Jr._____
Signature

Printed/typed name:  _John J. Herguth Jr._
Director of Risk Management
for  _Foster Wheeler, Inc., acting on behalf  of_
~~for~~  _____Foster Wheeler Corporation_____

## Duty to Avoid Unnecessary Costs
## of Service of Summons

Rule 4 of the Tennessee Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of a summons, fails to do so will be required to bear the costs of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court. If the answer or motion is not served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

G:\...\summons\foster-wheeler\waiver.req

## IN THE CIRCUIT COURT FOR KNOX COUNTY, TENNESSEE

CHARLES WARD

      Plaintiff,

vs.                            No. 2-496-01

FOSTER WHEELER
CORPORATION, et al.,

      Defendants.

### SHORT FORM ANSWER OF DEFENDANT FOSTER WHEELER CORPORATION

      Comes the defendant, Foster Wheeler Corporation (hereinafter "Foster Wheeler") by and through counsel, pursuant to this Court's Order relating to asbestos litigation entered on or about March 11, 1991, and Rule 10.04 of the Tennessee Rules of Civil Procedure, and answers the Short Form Complaint filed against it as follows:

      1.     Defendant Foster Wheeler adopts and incorporates by reference all affirmative defenses included in its Master Answer filed with this Court on January 19, 2001 as though fully set forth herein.

      2.     Without waiving any of the defenses incorporated and referenced above, defendant Foster Wheeler adopts the following numbered paragraphs contained in its Master Answer:

#### COUNT ONE - STRICT LIABILITY

Paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11;

#### COUNT TWO - BREACH OF WARRANTY

Paragraphs 12, 13, and 14;

#### COUNT THREE - NEGLIGENCE

Paragraphs 15, 16, 17, 18, and 19;

#### COUNT FOUR - FRAUD

Paragraphs 20, 21, 22, 23, 24, and 25;

#### COUNT FIVE - CONSPIRACY

Paragraphs 26, 27, 28, 29, and 30;

#### COUNT SIX - MARKET SHARE LIABILITY

Paragraphs 31, 32, and 33.

3.    Defendant Foster Wheeler is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraphs 7 through 11 of the Short Form Complaint. However, defendant Foster Wheeler denies the plaintiff was exposed to any product for which this defendant would be responsible.

4.    Any allegations of the Complaint not previously admitted, denied or explained are denied insofar as they relate to this defendant and strict proof thereof is demanded.

**WHEREFORE**, having answered the Short Form Complaint filed against it, defendant Foster Wheeler prays that it be dismissed with prejudice. Otherwise, defendant Foster Wheeler demands a trial by jury.

Respectfully submitted,

BAKER, McREYNOLDS,
O'KANE & ATKINS

Michael K. Atkins, PID #439452
Attorney for Defendant
Foster Wheeler Corporation

P. O. Box 1708
Knoxville, TN 37901-1708
(865) 637-5600

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing document was served upon counsel either by hand delivery or United States mail, this _19th_ day of _October_ , 2001.

BAKER, McREYNOLDS,
O'KANE & ATKINS

Michael K. Atkins

## Tennessee Rule of Civil Procedure 4.07
## Waiver of Service of Summons

TO:  The Law Offices of Peter G. Angelos, P.C.:

I acknowledge receipt of your request that I waive service of a summons in the action of **Charles E. Ward   v. A-Best Company, Inc., et al.,** which is civil action number **2-496-01** in the Knox County Circuit Court.  I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after **August 10, 2001**.

_____8/21/01_____
Date

_Barry Katz_ (Signature)
Signature

Printed/typed name:___Barry Katz_____
as _____President_____
for _____General Refractories Company_____

## Duty to Avoid Unnecessary Costs
## of Service of Summons

Rule 4 of the Tennessee Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of a summons, fails to do so will be required to bear the costs of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property.  A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court.  If the answer or motion is not served within this time, a default judgment, may be taken against that defendant.  By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

G:\L...\summons\general refractories\waiver.req

### Tennessee Rule of Civil Procedure 4.07
### Waiver of Service of Summons

TO:  The Law Offices of Peter G. Angelos, P.C.:

I acknowledge receipt of your request that I waive service of a summons in the action of **Charles E. Ward   v. A-Best Company, Inc., et al.**, which is civil action number **2-496-01** in the Knox County Circuit Court.  I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after **August 10, 2001.**

_9/6/01_
Date

_(signature)_
Signature

Printed/typed name:   T. H. Pinkley
as   Attorney
for  Harbison-Walker Refractories Company

### Duty to Avoid Unnecessary Costs
### of Service of Summons

Rule 4 of the Tennessee Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint.  A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of a summons, fails to do so will be required to bear the costs of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property.  A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court.  If the answer or motion is not served within this time, a default judgment, may be taken against that defendant.  By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

G:\...\summons\harbison walker\waiver.req

**IN THE CIRCUIT COURT FOR KNOX COUNTY,**

| | | |
|---|---|---|
| CHARLES E. WARD, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2-496-01 |
| | ) | |
| HARBISON-WALKER | ) | |
| REFRACTORIES COMPANY, et al., | ) | |
| | ) | |
|    Defendants. | ) | |

## NOTICE OF APPEARANCE

Please take notice that T. Harold Pinkley of the law firm of Miller & Martin LLP will be representing the defendant Harbison-Walker Refractories Company, a Delaware corporation, appearing herein as a potential Indemnifying Party to Dresser Industries, Inc. pursuant to a Distribution Agreement dated on or about July 21, 1992 in the above-styled action.

Respectfully submitted,

MILLER & MARTIN LLP

By: _____
    T. Harold Pinkley (#9830)
    1200 One Nashville Place
    150 4th Avenue North
    Nashville, TN 37219-2433
    (615) 244-9270

Attorney for Harbison-Walker Refractories Company

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document has been sent by U.S. Mail, postage prepaid to:

    Mike G. Nassios
    Randall E. Reagan
    Timothy M. McLaughlin
    Robert S. Patterson
    James Patrick Hawkins
    Law Offices of Peter G. Angelos, P.C.
    2643 Kingston Pike, First Floor
    Knoxville, TN 37919

This 7th day of September, 2001.

_____



**State of Tennessee**

## Department of State

Division of Business Services
312 Eighth Avenue North
6th Floor Wm. R. Snodgrass Tower
Nashville, Tennessee 37243

*Minnesota minning return service sheet*

**9/7/01**
**Date**

7114 5464 3550 0017 9127
**Certifed Number**

**Case Number:**   2-496-01

HON. CATHERINE QUIST
KNOX COUNTY-CIRCUIT COURT
PO BOX 379
KNOXVILLE, TN 37902-1805

    **RE:**   CHARLES E. WARD

    **VS:**   A-BEST COMPANY, INC. ET AL

    **Dear Clerk:**

        Enclosed are the following papers in the above styled case:

    ☑   **Original Summons**

    ☑   **Affidavit and Endorsement**

    ☑   **Registered or Certified Return Receipt signed by:**

        JUDITH C. HARBOUGH

    ☐   **Registered or Certified letter returned undelivered with notation:**

        Sincerely:

        *Riley C Darnell*

        **Riley C. Darnell**

**enclosures**

**Initials:**   MC
**CC:**   PETER G. ANGELOS

SS-4210 (Rev. 12/96)                    RDA No. 1003

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

|  |  |  |
|---|---|---|
| CHARLES E. WARD, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | No. 3–01–CV–433 |
| | ) | |
| A-BEST PRODUCTS | ) | |
| COMPANY, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## SHORT FORM ANSWER OF DEFENDANT,
## NATIONAL SERVICE INDUSTRIES, INC.

Comes now the defendant, National Service Industries, Inc., successor in interest to North Brothers (hereafter North Brothers) and for answer to the Complaint filed in Knox County Circuit Court on August 8, 2001, hereby adopts and incorporates by reference the respective paragraphs set forth in the Master Answer filed in Knox County Circuit Court on July 6, 2001 and attached hereto, as follows:

Introduction - Paragraphs 1-4, and 6.

1.  Count One - Strict Liability - Paragraphs 1,3, 4, 5, 6, 7, 8, 9, 10, and 10-D and 11;

2.  Count Two - Breach of Warranty - Paragraphs 12 through 14;

3.  Count Three - Negligence - Paragraphs 15 through 19;

4.  Count Four - Fraud - Paragraphs 20 through 25;

5.  Count Five - Conspiracy - Paragraphs 26 through 30;

09/18/01
251812.1

1

6.      <u>Count Six - Market Share Liability</u> - Paragraphs 31 through 33;

7.      National Service Industries, Inc. is without sufficient knowledge or information to either admit or deny the allegations contained in Paragraph 7 of the Short Form Complaint.

8.      National Service Industries, Inc. is without sufficient knowledge or information to either admit or deny the allegations contained in Paragraph 8 of the Short Form Complaint and demands strict proof thereof.

9.      Paragraph 9 contains no allegations directed at this defendant; therefore National Service Industries, Inc. is without sufficient knowledge or information to either admit or deny the allegations contained in Paragraph 9 of the Short Form Complaint.

10.     National Service Industries, Inc. denies the allegations of Paragraph 10 of the Short Form Complaint regarding plaintiff's exposure and demands strict proof thereof.

11.     National Service Industries, Inc. is without sufficient knowledge or information to either admit or deny the allegations contained in Paragraph 11 of the Short Form Complaint

12.     This defendant hereby adopts and incorporates the Affirmative Defenses set forth in the Master Answer.

Defendant North Brothers further relies upon any and all Master Answers filed with the Multi-District litigation.

WHEREFORE, having fully answered the Short Form Complaint filed against it, this defendant prays to be dismissed from this cause with its proper costs and alternatively demands a jury to try the issues when joined.

09/18/01
251812.1

Respectfully submitted,

M. Denise Moretz      (#010557)
Michael J. King       (#015523)

WOOLF, McCLANE, BRIGHT, ALLEN
   & CARPENTER, PLLC
900 S. Gay Street, Suite 900
Post Office Box 900
Knoxville, TN 37901-0900
(865) 215-1000

Attorneys for Defendant
National Service Industries, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing pleading has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

Patrick Hawkins, Esq.
Timothy McLaughlin, Esq.
Mike G. Nassios, Esq.
Robert Patterson, Esq.
Randall Reagan, Esq.
J. Quinn Windham, Esq.
Law Offices of Peter G. Angelos
2643 Kingston Pike, First Floor
Knoxville, TN  37919

This the 19 day of September , 2001.

Attorney

09/18/01
251812.1

3

## IN THE CIRCUIT COURT FOR KNOX COUNTY, TENNESSEE
### DIVISIONS I, II and III

IN RE:     ALL ASBESTOS PERSONAL  )
                INJURY CASES FILED BY     )
                THE LAW OFFICES OF        )
                PETER G. ANGELOS        )

## MASTER ANSWER OF NATIONAL SERVICE INDUSTRIES, INC.

Pursuant to the provisions of the court's Order entered on March 11, 1991, regarding personal injury asbestos cases, defendant National Service Industries, Inc., by and through its attorneys, Woolf, McClane, Bright, Allen & Carpenter, hereby files this Master Answer for all personal injury asbestos cases filed by the Law Offices of Peter G. Angelos.  Counsel for National Service Industries, Inc. have attempted to determine whether this defendant has been previously named in this litigation and whether this defendant has filed a Master Answer. To date, no Master Answer has been discovered.  To the extent a Master Answer has been previously filed by this defendant, the following Master Answer supercedes all previous answers filed by National Service Industries, Inc.

Upon service of a Short-form Complaint, this defendant shall file in response a Short-form Answer which adopts by specific reference the relevant portions of the Master Answer relied upon and shall set forth the defenses and responses unique to the particular Complaint.

In this Master Answer, where appropriate, the following applies:

1.     The singular shall include the plural and the plural shall include the singular.

2.     The present tense shall include the past tense and the past tense shall include the present tense.

3.     Reference to the male gender shall include the female gender.

4.     In survival actions, references to the term plaintiff shall include plaintiff's decedent, personal representative or surviving spouse.

Comes now the defendant, National Service Industries, Inc., and for answer to the First Amended Master Complaint dated August 27, 1993, Amended Complaint filed November 6, 1996 and Amended Master Complaint dated May 17, 2001, proceeds to answer the numbered paragraphs as follows:

1.    This defendant is incorporated under the laws of the State of Delaware and maintains its principal place of business elsewhere than in Tennessee.

2.    With regard to paragraph 6 of the introductory section of the First Amended Master Complaint, the allegations contained in said paragraph are not directed at this defendant; therefore, this defendant does not admit or deny the allegations of paragraph 6 of the introductory section.

## COUNT ONE - STRICT LIABILITY

1.    This defendant at one time sold, distributed and/or installed asbestos-containing material to various parties in various states. All other allegations of paragraph 1 are specifically denied.

2.    This defendant is without sufficient knowledge to either admit or deny the allegations of paragraph 2 of the Master Complaint.

3.    This defendant specifically denies that the plaintiff was exposed to asbestos-containing products sold, distributed and/or installed by it. As to the remaining allegations of paragraph 3, this defendant is without knowledge or information sufficient to form a belief as to the truth of said allegations, and demands strict proof thereof if its rights shall in any way be affected thereby.

4.    This defendant avers that the state of medical and scientific knowledge and all materials relating thereto at all times material herein were such that this defendant neither knew nor could have known that asbestos-containing industrial insulation products presented a significant risk of harm to workers if properly used; all allegations of the Mater Complaint to the contrary are denied.

5.    This defendant denies the allegations of paragraph 5 of the Master Complaint.

6.    This defendant denies the allegations of paragraph 6 of the Master Complaint.

7.    This defendant denies the allegations of paragraph 7 of the Master Complaint.

8.    The allegations of paragraphs 8(A) and 8(B) of the Master Complaint are denied, and specifically it is denied that any product sold, distributed and/or installed by this defendant and allegedly used by the plaintiff was in a defective and unreasonably dangerous condition. To the

contrary, products sold, distributed and/or installed by this defendant were manufactured in accordance with the then existing state of scientific knowledge regarding any hazards.

9-9(A).    This defendant denies that the plaintiff, at any time material, was exposed to asbestos and/or asbestos insulation materials sold, distributed and/or installed by it. They lack the knowledge that the plaintiff has contracted an asbestos-related illness, but in the event the plaintiff has contracted an asbestos-related illness, such illness is not causally related to exposure to products sold, distributed and/or installed by this defendant.

10-(10-A)   This defendant denies the allegations of paragraphs 10-10(A) of the Master Complaint and demands strict proof thereof.

(10-B) The allegations contained in (10-B) and its subparagraphs are not directed at this defendant; therefore, this defendant does not admit nor deny the allegations of paragraph (10-B) and its subparagraphs. To the extent any allegation contained in paragraph (10-B) and its subparagraphs are directed at this defendant, this defendant denies the allegations of paragraph (10-B) and its subparagraphs.

(10-C) This defendant denies the allegations and legal conclusions of paragraph (10-C).

(10-D) This defendant denies the allegations and legal conclusions of paragraph (10-D).

11.    This defendant denies the allegations of paragraph 11 of the Master Complaint. This defendant denies it is liable to the plaintiff in any amount for either compensatory or punitive damages.

## COUNT TWO - BREACH OF WARRANTY

12.    This defendant adopts and incorporates by reference its responses to paragraphs 1-11 of the Master Complaint.

13-13(A)   This defendant specifically denies it was guilty of any breach of implied warranty which proximately caused or contributed to the plaintiffs' claimed injuries, losses, or damages as set forth in paragraphs 13-13(A) of the Master Complaint.

14.    This defendant denies the allegations of paragraph 14 of the Master Complaint. This defendant denies it is liable to the plaintiff in any amount for either compensatory or punitive damages.

## COUNT THREE - NEGLIGENCE

15.    This defendant hereby adopts and incorporates by reference its responses to paragraph 1 through 14 of the Master Complaint.

16.    This defendant avers that the state of medical and scientific knowledge and all materials relating thereto at all times material herein were such that this defendant neither knew nor could have known that asbestos-containing industrial insulation products presented a significant risk of harm to workers if properly used; all allegations of the Master Complaint to the contrary are denied. This defendant specifically denies the allegations of paragraph 16, 16(A) and 16(B) of the Master Complaint.

17.    The allegations of paragraph 17, 17(a)-(g), (17-A) (a) - (g) are specifically denied and strict proof demanded thereof.

18.    This defendant denies that it was guilty of any act or omission which constituted gross negligence or conscious or reckless indifference or disregard to the safety of the plaintiff or the consuming public or that any such alleged conduct on the part of this defendant proximately caused or contributed to the plaintiffs' claimed injuries, losses or damages as alleged in the Master Complaint.

19.    This defendant denies the allegations of paragraph 19 of the Master Complaint. This defendant denies that it is liable to the plaintiffs in any amount for either compensatory or punitive damages.

## COUNT FOUR - FRAUD

20.    This defendant adopts and incorporates by reference its responses to paragraphs 1 through 19 of the Master Complaint as if fully set out herein.

21.    This defendant specifically denies the allegations contained in paragraph 21 of the Master Complaint.

22.    This defendant avers that the state of medical and scientific knowledge and all materials relating thereto at all times material herein were such that this defendant neither knew nor could have known that asbestos-containing industrial insulation products presented a significant risk or harm to workers if properly used; all allegations of the Master Complaint to the contrary are

242843.1                                         4

denied. This defendant specifically denies the allegations contained in paragraph 22 of the Master Complaint.

23.    This defendant specifically denies the allegations of paragraph 23 of the Master Complaint and demands strict proof thereof.

24.    This defendant specifically denies the allegations contained in paragraphs 24 and 24(A) of the Master Complaint.

25.    This defendant denies the allegations of paragraph 25 of the Master Complaint. This defendant denies that it is liable to the plaintiffs in any amount for either compensatory or punitive damages.

### COUNT FIVE - CONSPIRACY

26.    This defendant adopts and incorporates by reference its responses to paragraphs 1 through 25 of the Master Complaint.

27.    This defendant denies the allegations of paragraph 27 of the Master Complaint and demands strict proof thereof.

28.    This defendant denies the allegations of paragraph 28 of the Master Complaint and demands strict proof thereof.

28a.    This paragraph has been deleted from the Amended Master Complaint; therefore, this defendant has not provided a response to this paragraph.

28b.    The allegations contained in paragraph 28b are not directed at this defendant; therefore, this defendant does not admit nor deny the allegations of said paragraph. To the extent paragraph 28b is directed to this defendant, this defendant denies the allegations and legal conclusions of paragraph 28b.

28c.    This defendant denies the allegations of paragraph 28c of the Master Complaint and demands strict proof thereof.

This defendant is without sufficient knowledge, information or belief to either admit or deny the allegations of paragraphs 28d, 28e, 28f, 28g, 28h, 28i, 28j, 28k, 28l, 28m, 28n, 28o, 28p, 28q, 28r, 28s, 28t, 28u, 28v, 28w, 28x, 28y, 28z, 28aa, 28bb, 28cc, 28dd, 28ee, 28ff, 28gg, 28hh, 28ii, 28jj, 28kk, 28ll, 28mm, 29nn, 28oo, 28qq, 28rr, 28ss, 28tt, 28uu, 28vv, 28ww, 28xx, 28yy, 28zz, 28aaa, 28bbb, 28ccc, 28ddd, 28eee, and 28fff of the Master Complaint since these allegations do not

refer to or deal with this defendant. To the extent allegations contained in these paragraphs may be inferred to apply to this defendant, said allegations are denied.

This defendant specifically denies all allegations that it was involved in a conspiracy as alleged in paragraph 28ggg and would demand strict proof thereof.

29.   This defendant denies the allegations of paragraph 29 of the Master Complaint and demands strict proof thereof.

30.   This defendant denies the allegations of paragraph 30 of the Mater Complaint. This defendant denies that it is liable to the plaintiffs in any amount for either compensatory or punitive damages.

## COUNT SIX - MARKET SHARE LIABILITY

31.   This defendant adopts and incorporates by reference its responses to paragraphs 1 through 30 of the Master Complaint as if fully set forth herein.

32.   This defendant denies the allegations of paragraph 32 on the grounds that the Doctrines of "Enterprise of Liability," "Market Share Liability," or "Industry-Wide Liability" do not exist under the laws of the State of Tennessee; it avers that its asbestos-containing insulation products were distributed and/or installed in accordance with the then existing state of scientific knowledge regarding any hazards; and it further denies that the plaintiff was exposed to any asbestos-containing products sold, distributed and/or installed by it.

33.   This defendant denies the allegations of paragraph 33 of the Master Complaint. This defendant denies that it is liable to the plaintiff in any amount for either compensatory or punitive damages.

## COUNT SEVEN - LOSS OF CONSORTIUM

34.   This defendant adopts and incorporates by reference its response to paragraphs 1 through 33 of the Master Complaint.

35.   This defendant is without knowledge sufficient to either admit or deny the allegations of paragraph 35 of the Master Complaint.

36.   The averments of paragraph 36 are denied and it is specifically denied that the female plaintiff has suffered the damages claimed.

37.    This defendant denies the allegations of paragraph 37 of the Master Complaint. The defendant denies that it is liable to the plaintiffs in any amount for either compensatory or punitive damages.

## COUNT EIGHT - WRONGFUL DEATH

38.    This defendant adopts and incorporates by reference its responses to paragraphs 1 through 37 of the Master Complaint.

39.    This defendant is without knowledge sufficient either to admit or deny the allegations of paragraph 39 of the Master Complaint.

40.    The averments of paragraph 40 are denied and specifically it is denied that the female plaintiff has suffered the damages claimed.

41.    This defendant denies the allegations of paragraph 41 of the Master Complaint.

42.    This defendant is without knowledge sufficient to either admit or deny the allegations of paragraph 42 and 42(a) of the Master Complaint.

43.    This defendant denies the allegations of paragraph 43 of the Master Complaint.

44.    This defendant denies the allegations of paragraph 44 of the Master Complaint.

45.    This defendant denies the allegations of paragraph 45 of the Master Complaint. This defendant denies that it is liable to the plaintiffs in any amount for either compensatory or punitive damages.

## COUNT NINE - PREMISES LIABILITY

46.    This defendant adopts and incorporates by reference its responses to paragraphs 1 through 45 above.

47.    This defendant denies the allegations of paragraph 47 of the Master Complaint.

(47-A) This defendant denies the allegations of paragraph (47-A) of the Master Complaint.

48.    This defendant denies the allegations of paragraph 48 of the Master Complaint.

(48-A) This defendant denies the allegations of paragraph (48-A) of the Master Complaint.

49.    This defendant denies the allegations of paragraph 49 of the Master Complaint.

(49-A) This defendant denies the allegations of paragraph (49-A) of the Master Complaint.

50.    This defendant denies the allegations of paragraph 50 of the Master Complaint.

(50-A) This defendant denies the allegations of paragraph (50-A) of the Master Complaint.

51.    This defendant denies the allegations of paragraph 51 of the Master Complaint. This defendant denies that it is liable to the plaintiffs in any amount for either compensatory or punitive damages.

All allegations of the Master Complaint not heretofore admitted, denied or otherwise explained are hereby denied as if specifically denied and strict proof thereof is demanded.

## AFFIRMATIVE DEFENSES

This defendant hereby alleges the following as its affirmative defenses:

52.    The Master Complaint fails to state a claim upon which relief can be granted against this defendant.

53.    This defendant avers that the state of medical and scientific knowledge and all materials relating thereto at all times material herein were such that this defendant neither knew nor could have known that asbestos-containing industrial insulation products presented a significant risk of harm to the plaintiff if properly used.

54.    This defendant relies on the doctrine of comparative fault and avers that the plaintiffs' alleged injuries and damages, if any, were proximately caused or contributed to by the plaintiffs' intentional and/or negligent conduct on the date in question. Accordingly, the plaintiff is barred from any recovery against the defendant in this action or in the alternative, any recovery by the plaintiff shall be reduced pursuant to the principles of comparative fault.

55.    To the extent supported by investigation and discovery, the alleged injuries complained of in the Complaint were caused directly and proximately by the acts of persons other than this defendant and who are responsible, solely or in part, for any alleged damages caused thereby. As plaintiff's injuries and damages were caused by the acts of persons other than this defendant, the plaintiff should not be permitted to recover against this defendant or in the alternative, any recovery by the plaintiff should be determined pursuant to the principles of comparative fault.

56.    This defendant relies upon applicable statutes of limitation as a bar to plaintiffs' Complaint.

57.    Plaintiffs' claims are barred by the statute of repose as set forth in the Tennessee Products Liability Act of 1978, Tenn. Code Ann. § 29-28-103.

58.     Plaintiff's claims are barred by the statute of repose as set forth in Tenn. Code Ann. § 28-3-202.

59.     To the extent plaintiff seeks relief from this defendant pursuant to Tenn. Code Ann. § 29-28-106(a)(2) or (a)(3), and said plaintiff has settled with the manufacturer of the product in question, this defendant relies upon the defense of accord and satisfaction.

60.     With respect to whatever portion, if any, of the damages sought herein represent workman's compensation or similar benefits paid to the plaintiffs, this defendant avers that the plaintiffs' employer is guilty of negligence which proximately caused the injuries and damages alleged by the plaintiffs, and such employer, or its insured, should not recover any of such benefits by way of subrogation because of such negligence.

61.     This defendant further alleges that any exposure to asbestos-containing products may have occurred while the plaintiff was directly employed by this defendant.  Any recovery may therefore be barred by the exclusive remedy provisions, of the Tennessee Worker's Compensation Act.

62.     Defendant specifically avers that it cannot be liable for punitive damages for any act of a corporation which was or could be a predecessor in interest.

63.     Plaintiffs' claim for punitive damages cannot be sustained as a matter of law because there are no meaningful standards for determining the amount of any punitive damage award under Tennessee law, and because Tennessee law does not state with sufficient clarity the consequences of conduct giving rise to a claim for punitive damages. Any award of punitive damages, therefore, would violate this defendant's due process rights under the United States and Tennessee Constitutions.

64.     This defendant avers that the doctrines of Enterprise Liability, Market Share Liability or Industry-Wide Liability do not exist under the laws of the State of Tennessee.

65.     This defendant further alleges and denies that there was any concert or action or omission on its part with any other defendant and asserts, therefore, that it is not a joint tort-feasor with any other defendant and may not be held accountable as a joint tort-feasor.

66.     This defendant reserves the right to rely on all defenses available to it under the Tennessee Products Liability Act codified at Tenn. Code Ann. § 29-28-101, *et. seq.*

67.   This defendant moves the court for permission to amend this Answer at the conclusion of its investigation and discovery into the matters alleged in the Complaint.

WHEREFORE, premises considered, this defendant prays to be dismissed from this cause with costs taxed accordingly, and alternatively demands a jury to try the issues when joined.

Respectfully submitted,

WOOLF, McCLANE, BRIGHT,
ALLEN & CARPENTER, PLLC

By: _____
Hugh B. Bright, Jr.
M. Denise Moretz
Michael J. King

900 S. Gay Street
P.O. Box 900
Knoxville, Tennessee 37901-0900
(865) 215-1000

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing pleading has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

Law Offices of Peter G. Angelos, P.C.
2643 Kingston Pike, First Floor
Knoxville, Tennessee 37919

This the 6th day of ___July___, 2001.

_____
Attorney

242843.1                                    10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CHARLES E. WARD, | ) | |
| | ) | |
| Plaintiff, | ) | **Asbestos Litigation (VI.)** |
| | ) | **MDL 875** |
| | ) | **Case No. 3:01-CV-433** |
| vs. | ) | |
| | ) | |
| A-BEST PRODUCTS, CO., et al., | ) | |
| | ) | |
| Defendants. | ) | |

SHORT FORM ANSWER OF DEFENDANT
RAPID-AMERICAN CORPORATION

Comes now the defendant, Rapid-American Corporation, and for its answer to the Complaint

filed herein, hereby adopts and incorporates by reference the respective paragraphs set forth in the

Master Answer previously filed in the Circuit Court for Knox County, Tennessee, attached hereto

as **Exhibit 1**, for all personal injury asbestos cases filed by the Law Offices of Peter G. Angelos, on

March 6, 1996 as follows:

Introduction - Paragraphs 1 - 4 and 6.

1. Count One - Strict Liability - Paragraphs 1, 3 - 11.

2. Count Two - Breach of Warranty - Paragraphs 12 - 14.

3. Count Three - Negligence - Paragraphs 15 -19.

4. Count Four - Fraud - Paragraphs 20 - 25.

5. Count Five - Conspiracy - Paragraphs 26 - 30.

6. Count Six - Market Share Liability - Paragraphs 31 - 33.

7.      This defendant is without sufficient knowledge or information to either admit or deny the allegations contained in Paragraph 7 of the Short Form Complaint.

8.      This defendant is without sufficient knowledge or information to either admit or deny the allegations contained in Paragraph 8 of the Short Form Complaint.

9.      This defendant is without sufficient knowledge or information to either admit or deny the allegations contained in Paragraph 9 of the Short Form Complaint.

10.      This defendant is without sufficient knowledge or information to either admit or deny the allegations contained in Paragraph 10 of the Short Form Complaint.

11.      This defendant is without sufficient knowledge or information to either admit or deny the allegations contained in Paragraph 11 of the Short Form Complaint.

12.      This defendant hereby adopts and incorporates the Affirmative Defenses set forth in the Master Answer, and explicitly asserts that the applicable Statute of Repose bars this Complaint against Rapid.

WHEREFORE, having fully answered the Short Form Complaint filed herein against it, this defendant prays to be dismissed from this cause with its proper costs and alternatively demands a jury to try the issues when joined.

Dated this ____ day of September 2001.

Stephen J. Zralek, # 18971
Barbara J. Moss, # 5715
Jonathan D. Rose, # 20967
WYATT, TARRANT & COMBS, LLP
2525 West End Avenue, Suite 1500
Nashville, Tennessee  37203
(615) 244-0020

Attorneys for Defendant
Rapid-American Corporation

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and exact copy of the foregoing Answer by United States Mail, first-class postage prepaid, upon the following:

> Michael G. Nassios
> Randall E. Reagan
> Timothy M. McLaughlin
> J. Patrick Hawkins
> Robert S. Patterson
> LAW OFFICES OF PETER G. ANGELOS, P.C.
> 2643 Kingston Pike, First Floor
> Knoxville, Tennessee  37919

This the _21st_ day of September 2001.

Barbara J. Moss

45203615.1

3

IN THE CIRCUIT COURT FOR KNOX COUNTY, TENNESSEE
DIVISIONS I, II AND III

IN RE:  ALL ASBESTOS PERSONAL    )
INJURY CASES FILED BY THE        )
LAW OFFICES OF PETER G. ANGELOS  )

## MASTER ANSWER OF DEFENDANT, RAPID AMERICAN CORPORATION

### INTRODUCTION

Defendant, Rapid American Corporation ("Rapid"), by its attorneys, Baker, Donelson, Bearman, & Caldwell, hereby files this Master Answer for all personal injury asbestos cases filed by the Offices of Peter G. Angelos on or after March 11, 1991.

Upon service of a Short-form Complaint, this defendant shall file in response a Short-form Answer which adopts by specific reference the relevant portions of the Master Answer relied upon and shall set forth the defenses and responses unique to the particular complaint.

In this Master Answer, where appropriate, the following applies:

1.  The singular shall include the plural and the plural shall include the singular.

2.  The present tense shall include the past tense and the past tense shall include the present tense.

3.  Reference to the male gender shall include the female gender.

4.  In survival actions, references to the term plaintiff shall include plaintiff's decedent, personal representative or surviving spouse.

Comes now the defendant, Rapid American Corporation and for answer to the First Amended Master Complaint filed herein proceeds to answer the numbered paragraphs of the Complaint as follows:

EXHIBIT
4

## COUNT ONE - STRICT LIABILITY

1. Defendant denies that it has ever been involved in any aspect of the asbestos business and denies that it has ever done business in Tennessee, related or unrelated to asbestos.

2. This defendant is without sufficient knowledge to either admit or deny the allegations of paragraph 2 of the First Amended Master Complaint.

3. This defendant specifically denies that the male plaintiff was exposed to asbestos-containing products manufactured and/or supplied by it. As to the remaining allegations of paragraphs 3 - 3-D, this defendant is without knowledge or information sufficient to form a belief as to the truth of said allegations, and demands strict proof thereof if its rights shall in any way be affected thereby.

4. - 10(A). In response to the allegations of paragraphs 4 - 10(A) of the First Amended Master Complaint, defendant denies that it has manufactured, mined, processed, imported, converted, compounded or sold any asbestos products. Defendant denies the remaining allegations in paragraphs 4 - 10(A) of the First Amended Master Complaint.

10(B). The allegations of paragraph 10(B) of the First Amended Master Complaint do not concern this defendant.

11. This defendant denies the allegations of paragraph 11 of the First Amended Master Complaint. This defendant denies it is liable to the plaintiffs in any amount for either compensatory or punitive damages.

## COUNT TWO - BREACH OF WARRANTY

12. This defendant adopts and incorporates by reference its responses to paragraphs 1 through 11 of the First Amended Master Complaint.

13. - 13(A). This defendant specifically denies it has manufactured, mined, processed, imported, converted, compounded or sold asbestos products and that it is guilty of any breach of implied warranty which proximately caused or contributed to the

plaintiffs' claimed injuries, losses, or damages as set forth in paragraphs 13 and 13(A) of the First Amended Master Complaint.

14. This defendant denies the allegations of paragraph 14 of the First Amended Master Complaint. This defendant denies it is liable to the plaintiff in any amount for either compensatory or punitive damages.

## COUNT THREE - NEGLIGENCE

15. This defendant hereby adopts and incorporates by reference its responses to paragraphs 1 through 14 of the First Amended Master Complaint.

16. This defendant specifically denies that it manufactured asbestos products and also denies the allegations of paragraphs 16, 16(A) and 16(B) of the First Amended Master Complaint.

17. The allegations of paragraphs 17, 17(a) - (g), (17-A) and (17-A)(a) - (f) are emphatically denied and strict proof demanded thereof. Defendant specifically denies it manufactured any asbestos products.

18. This defendant denies the allegations of paragraph 18 of the First Amended Master Complaint.

19. This defendant denies the allegations of paragraph 19 of the First Amended Master Complaint. This defendant denies it is liable to the plaintiff in any amount for either compensatory or punitive damages.

## COUNT FOUR - FRAUD

20. This defendant adopts and incorporates by reference its responses to paragraphs 1 through 19 of the First Amended Master Complaint as if fully set out herein.

21. This defendant specifically denies it was an "Asbestos Supplier" and denies the allegations contained in paragraph 21 of the First Amended Master Complaint.

22. This defendant specifically denies it manufactured, mined, processed, imported, converted, compounded or sold any

asbestos products and denies the allegations contained in paragraphs 22 of the First Amended Master Complaint.

23. This defendant emphatically denies the allegations of paragraph 23 of the First Amended Master Complaint and demands strict proof thereof. This defendant denies it has ever been an "Asbestos Supplier."

24. This defendant specifically denies the allegations contained in paragraphs 24 and 24(A) of the First Amended Master Complaint. This defendant denies it has manufactured asbestos products.

25. This defendant denies the allegations of paragraph 25 of the First Amended Master Complaint. This defendant denies that it is liable to the plaintiffs in any amount for either compensatory or punitive damages.

## COUNT FIVE - CONSPIRACY

26. This defendant adopts and incorporates by reference its responses to paragraphs 1 through 25 of the First Amended Master Complaint.

27. This defendant denies the allegations of paragraph 27 of the First Amended Master Complaint and demands strict proof thereof.

28. This defendant denies the allegations of paragraph 28 of the First Amended Master Complaint and demands strict proof thereof.

28(b). The allegations contained in paragraph 28(b) of the First Amended Master Complaint do not pertain to this defendant.

28(c). The defendant denies the allegations of paragraphs 28c, 28t, 28u, 28v, 28w, 28x, 28y, 28z, 28aa, 28bb, 28cc, 28dd, 28ee, 28nn and 28oo (a) - (f), 28ggg (a) - (f) of the First Amended Master Complaint and demands strict proof thereof.

This defendant is without sufficient knowledge, information or belief to either admit or deny the allegations of paragraphs 28d, 28e, 28f, 28g, 28h, 28i, 28j, 28k, 28l, 28m, 28n, 28o, 28p, 28q, 28r, 28s, 28ff, 28gg, 28hh, 28ii, 28jj, 28kk, 28ll, 28mm, 28qq,

28rr, 28ss, 28tt, 28uu, 28vv, 28ww, 28xx, 28yy, 28zz, 28aaa, 28bbb, 28ccc, 28ddd, 28eee, 28fff of the First Amended Master Complaint since these allegations do not refer to or deal with this defendant.

29. This defendant denies allegations of paragraph 29 of the First Amended Master Complaint and demands strict proof thereof.

30. This defendant denies that it is liable to the plaintiffs in any amount for either compensatory or punitive damages.

### COUNT SIX - MARKET SHARE LIABILITY

31. This defendant adopts and incorporates by referencing its responses to paragraphs 1 through 30 of the First Amended Master Complaint as if fully set forth herein.

32. This defendant denies the allegations of paragraph 32 on the grounds that the Doctrines of "Enterprise Liability," "Market Share Liability," or "Industry-Wide Liability" do not exist under the laws of the State of Tennessee.

33. This defendant denies the allegations of paragraph 33 of the First Amended Master Complaint. This defendant denies that it is liable to the plaintiff in any amount for either compensatory or punitive damages.

### COUNT SEVEN - LOSS OF CONSORTIUM

34. This defendant adopts and incorporates by reference its responses to paragraphs 1 through 33 of the First Amended Master Complaint.

35. This defendant is without knowledge sufficient to either admit or deny the allegations of paragraph 35 of the First Amended Master Complaint.

36. The averments of paragraph 36 are denied and specifically it is denied that the female plaintiff has suffered the damages claimed.

37. This defendant denies the allegations of paragraph 37 of the First Amended Master Complaint. This defendant denies that it

is liable to the plaintiff in any amount for either compensatory or punitive damages.

## COUNT EIGHT - WRONGFUL DEATH

38. This defendant adopts and incorporates by reference its responses to paragraphs 1 through 37 of the First Amended Master Complaint.

39. This defendant is without knowledge sufficient to either admit or deny the allegations of paragraph 39 of the First Amended Master Complaint.

40. The averments of paragraph 40 are denied and specifically it is denied that the female plaintiff has suffered the damages claimed.

41. This defendant denies the allegations of paragraph 41 of the First Amended Master Complaint.

42. This defendant is without knowledge sufficient to either admit or deny the allegations of paragraphs 42 and 42(A) of the First Amended Master Complaint.

43. This defendant denies the allegations of paragraph 43 of the First Amended Master Complaint.

44. This defendant denies the allegations of paragraph 44 of the First Amended Master Complaint.

45. This defendant denies the allegations of paragraph 45 of the First Amended Master Complaint. This defendant denies that it is liable to the plaintiffs in any amount for either compensatory or punitive damages.

## COUNT NINE - PREMISES LIABILITY

46. This defendant adopts and incorporates by reference its responses to paragraphs 1 through 45 of the First Amended Master Complaint.

47. This defendant denies the allegations of paragraph 47 and 47(A) of the First Amended Master Complaint inasmuch as it alleges that this defendant was one of the Premises Liability Defendants.

48. This defendant denies the allegations of paragraph 48 and 48(A) of the First Amended Master Complaint inasmuch as it alleges that this defendant was one of the Premises Liability Defendants.

49. This defendant denies the allegations of paragraph 49(a)-(e) and (49-A) (a) - (e) of the First Amended Master Complaint inasmuch as it alleges that this defendant was one of the Premises Liability Defendants.

50. This defendant denies the allegations of paragraph 50(a)-(e) and (50-A) (a) - (e) of the First Amended Master Complaint inasmuch as it alleges that this defendant was one of the Premises Liability Defendants.

51. This defendant denies the allegations of paragraph 51 of the First Amended Master Complaint inasmuch as it alleges that this defendant was one of the Premises Liability Defendants. This defendant denies that it is liable to the plaintiffs in any amount for either compensatory or punitive damages.

52. All allegations of the First Amended Master Complaint not heretofore admitted, denied or otherwise explained are hereby denied as if specifically denied and strict proof thereof is demanded.

## AFFIRMATIVE DEFENSES

53. This defendant denies it has any liability, in law or in fact, to plaintiffs, and further denies that it has ever been involved in any aspect of the asbestos business. To the extent that the court holds otherwise, this defendant hereby alleges the following affirmative defenses.

54. This court lacks jurisdiction over Rapid as a result of improper, and/or lack of, service of process.

55. Rapid does not now, nor at any time in the past have any contacts with the State of Tennessee, whatsoever, hence there is no basis for this court to exercise personal jurisdiction over Rapid.

56. Plaintiffs have failed to serve Rapid with the Master Asbestos Complaint and, by reason of the foregoing, the Complaint must be dismissed.

57.  The Complaint, and each and every allegation considered separately, fails to state a cause of action against Rapid upon which relief can be granted.

58.  The causes of action pleaded in the Complaint based upon misrepresentation fail to meet the requirements of Fed. R. Civ. P. 9 and therefore fail to state a claim upon which relief can be granted.

59.  To the extent that the causes of action pleaded by plaintiffs fail to accord with the Uniform Commercial Code, including but not limited to Section 2-725 thereof, plaintiffs' Complaint is time-barred.

60.  All claims are time-barred by the applicable Statute of Limitations.

61.  The causes of action pleaded in the Complaint have not been asserted in a timely fashion and plaintiffs have neglected same and are barred by the doctrine of laches.

62.  Plaintiffs are estopped from asserting the causes of action alleged in the Complaint.

63.  Plaintiffs have waived the causes of action and recovery alleged in the Complaint.

64.  While Rapid denies the plaintiffs' allegations of negligence, breach of warranty, strict product liability and enterprise liability, any injury and damages, to the extent that plaintiffs may be able to prove them, they were the result of intervening and/or interceding acts of superseding negligence on the part of parties over whom Rapid neither had control nor had the right to control.

65.  This defendant further avers that the doctrines of enterprise liability, market share liability or industry-wide liability do not exist under the laws of the State of Tennessee.

66.  Plaintiffs have failed to name and join essential and necessary parties.

67.  The within action cannot be maintained as there is another action pending between the same or similar parties for the

same cause of action in a court of another state or the United States.

68.   The injuries allegedly suffered by plaintiffs, if any (which injuries are specifically denied by Rapid), were the result of culpable conduct or fault of third persons for whose conduct Rapid is not legally responsible, and the damages recovered by plaintiffs, if any, should be diminished or reduced in the proportion to which said culpable conduct bears upon the culpable conduct which caused the damages.   Any liability on the part of Rapid (which liability is specifically denied) is fifty percent or less of the liability of all persons who are the cause of the alleged injuries, if any, and the liability of Rapid for non-economic loss should not exceed Rapid's equitable share determined in accordance with the relative culpability of each person causing or contributing to the total liability for non-economic loss.

69.   Plaintiffs were warned of risk of exposure to asbestos containing products.

70.   Plaintiff, his co-workers and employers misused, abused, mistreated and misapplied the products designated as asbestos material as alleged in the Complaint.

71.   This defendant relies upon the doctrines of comparative fault, misuse of this defendant's products, intervening cause and upon applicable statutes of limitations, and upon all provisions of the Tennessee Products Liability Act of 1978, T.C.A. § 29-28-101, and upon T.C.A. § 28-3-104.   This defendant contends that any exception to these statutes for asbestos products violates the United States and Tennessee Constitutions.

72.   If the court finds that any misuse, abuse, mistreatment and/or misapplication of the product caused and/or contributed to the alleged damages or injuries to the plaintiff, Rapid requests that the amount of damages which might be recoverable shall be diminished by the proportion which the same misuse, abuse, mistreatment and/or misapplication, attributed to the plaintiff, his coworkers and/or employers bear to the conduct which caused the alleged damages or injuries.

73. This defendant avers that the state of medical and scientific knowledge and all materials relating thereto at all times material herein were such that this defendant neither knew nor could have known that asbestos-containing industrial insulation products presented a significant risk of harm to the plaintiffs if properly used.

74. Plaintiffs' employer was, and is a sophisticated user, and knew independently or should have known of any danger or hazard associated with the use of a product containing asbestos and of exposure to asbestos dust or fibers. Furthermore, plaintiff's employer(s) was warned of the danger or hazard associated with the use of asbestos-containing products and that plaintiff's employer(s) failed to rely upon such warning resulting in alleged damages due to plaintiff's and plaintiff's employer's act or omission and failure to act as sophisticated users.

75. With respect to whatever portion, if any, of the damages sought herein represents Workmen's Compensation or similar benefits paid to the plaintiffs, this defendant avers that the plaintiff's employer is guilty of negligence which proximately caused the injuries and damages alleged by the plaintiffs, and such employer, or its insurer, should not recover any of such benefits by way of subrogation because of such negligence.

76. At the time of the injuries alleged in the Complaint, plaintiff was employed and was entitled to and did receive worker's compensation benefits from his employer. If the conditions as alleged in the Complaint are found to have existed, the plaintiffs' employer was negligent and careless in and about the matters referred to in the Complaint and said negligence on the part of the employer proximately caused or contributed to the injuries and damages, if any, complained of by plaintiffs and, further, plaintiffs' employer assumed the risk of the injury to the plaintiff, if any, in that at the time and place of the incident such conditions, if any, were open and apparent and were fully known to the plaintiffs' employer; by reason thereof, Rapid is entitled to set off any compensation benefits received or to be

received by the plaintiffs against any judgment which may be rendered in favor of the plaintiffs herein.

77.   Upon information and belief, plaintiffs failed to mitigate or otherwise act to lessen or reduce the injuries and disabilities alleged in the Complaint.

78.   There was no negligence, gross negligence, willful, wanton, or malicious misconduct, reckless indifference or reckless disregard of the rights of plaintiffs, or malice (actual, legal or otherwise) on the part of Rapid with respect to plaintiffs.

79.   Rapid is informed and believes and, therefore, alleges that plaintiffs are unable to identify the actual manufacturer or manufacturers of the asbestos products which allegedly caused the injury which forms the basis of the Complaint herein, and that said manufacturers were entities other than Rapid.  Therefore, Rapid may not be held liable for plaintiffs' injuries.

80.   Plaintiffs' claims for damages have not accrued, are purely speculative, uncertain and contingent.

81.   Plaintiffs did not directly or indirectly purchase any asbestos-containing products or materials from Rapid and plaintiffs neither received nor relied on any representation or warranty allegedly made by Rapid.

82.   As to all causes of action pleaded in the Complaint which are based upon express or implied warranties and/or representations, such causes of action are legally insufficient as against Rapid by reason of their failure to allege privity of contract between the plaintiffs and Rapid.

83.   In the event that any breach of warranty is proven, plaintiffs failed to give proper and prompt notice of any such breach of warranty to Rapid.

84.   Any oral warranties upon which plaintiffs may have relied are inadmissible and unavailable because of the provisions of the applicable Statute of Frauds.

85.   The causes of action may not be maintained because of arbitration and award, collateral estoppel, a discharge in

bankruptcy, infancy (or some other disability) of the plaintiffs, payment, release and/or res judicata.

86. Plaintiffs have released, settled, entered into an accord and satisfaction or otherwise compromised their claims herein, and, accordingly, said claims are barred by operation of law. Alternatively, plaintiffs have accepted compensation as partial settlement of those claims for which this defendant is entitled to a set-off.

87. Plaintiffs' cause of action for exemplary or punitive damages is barred because such damages are not recoverable or warranted in this action.

88. Plaintiffs' demand for punitive damages is barred by the Due Process Clauses of the Fourteenth Amendment to the United States Constitution and §§ 8 and 21 of Article I of the Tennessee Constitution.

89. Plaintiffs' demand for punitive damages is barred by the proscription of the Eighth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and §16, Article 1 of the Tennessee Constitution prohibiting the imposition of excessive fines.

90. Plaintiffs' demand for punitive damages is barred by the "double jeopardy" clause of the Fifth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and Article I, §10 of the Tennessee Constitution.

91. Plaintiffs' demand for punitive damages is barred by the "ex post facto" clause of Article I, Section 10 of the United States Constitution.

92. Defendant specifically avers that it cannot be liable in punitive damages for any act of a corporation which was or could be a predecessor in interest.

93. Plaintiff's claim for punitive damages cannot be sustained as a matter of law because there are no meaningful standards for determining the amount of any punitive damage award under Tennessee law, and because Tennessee law does not state with

sufficient clarity the consequences of conduct giving rise to a claim for punitive damages. Any award of punitive damages, therefore, would violate this defendant's due process rights under the United States and Tennessee Constitutions.

94. This defendant further alleges and denies that there was any concert of action or omission on its part with any other defendant and asserts, therefore, that it is not a joint tortfeasor with any other defendant and may not be held accountable as a joint tortfeasor.

95. This defendant reserves the right to respond and assert defenses with respect to causes of action which have been dismissed, should they be reinstated through subsequent appeal after verdict.

96. Rapid incorporates by reference herein, as if fully set forth, all defenses, both affirmative and otherwise, raised, pleaded or asserted by all other answering defendants.

### AS AND FOR A CROSS-CLAIM
### AGAINST ALL OTHER DEFENDANTS

97. If plaintiffs sustained damages as set forth in the Complaint through any carelessness, recklessness, and/or negligence, other than that of plaintiff himself, including but not limited to, the manufacture and distribution of the asbestos product, breach of warranty or misrepresentations, either express or implied, and in strict liability in tort, these damages will have been caused and brought about by reason of the carelessness, recklessness, and/or negligence of the other defendants.

98. If plaintiffs should recover a judgment against Rapid by operation of law or otherwise, Rapid will be entitled to a judgment for contribution and/or indemnity over and against its co-defendants, their agents, servants and/or employees, by reason of their carelessness, recklessness and/or negligence, for the amount of any such recovery, or a portion thereof, in accordance with principles of law regarding apportionment of fault and damages, along with costs, disbursements and reasonable expenses of the

investigation and defense of this action, including **reasonable** attorneys' fees.

99.  This defendant moves the Court for permission to amend this Answer at the conclusion of its investigation and discovery into the matters alleged in the Complaint.

WHEREFORE, having fully answered the Complaint filed herein against it, this defendant prays to be dismissed from this cause with its proper costs, and alternatively demands a jury to try the issues when joined.

Respectfully submitted,

BAKER, DONELSON, BEARMAN
& CALDWELL

By: _____
Stephen E. Roth
Clarence Risin
2200 Riverview Tower
P.O. Box 1792
Knoxville, Tennessee 37901
(423) 549-7000

Counsel for Defendant,
Rapid American Corporation

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Master Answer of Defendant, Rapid American Corporation has been served upon Jere F. Ownby, III, Esq., Law Offices of Peter G. Angelos, 2643 Kingston Pike, Knoxville, TN 37919, by U.S. Mail this 6th day of March            , 1996.

_____

IN THE CIRCUIT COURT FOR KNOX COUNTY, TENNESSEE

| | | |
|---|---|---|
| CHARLES E. WARD, | ) | Civil Action No. 2-496-01 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| A-BEST PRODUCTS COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## RESPONSE
## TO PLAINTIFF'S SHORT FORM COMPLAINT
## AND PRAYER FOR JURY TRIAL

### PRELIMINARY STATEMENT

Defendant Shook & Fletcher Insulation Co., by and through its counsel of record, does hereby adopt and incorporate by reference all of its previously filed Master Responses to Plaintiffs' causes of action and relevant paragraphs set forth in its Master Answer to Plaintiffs' Master Complaint, specifically as follows. This Defendant hereby adopts the following paragraphs from its Master Answer:

1.    As to <u>Count One – Strict Liability</u> - Paragraphs 1, 3 (and all subparagraphs), 4, 5, 6, 7, 8 (and all subparagraphs), 9 (and all subparagraphs), 10 (and all subparagraphs) and 11 of this Defendant's Master Answer.

2.    As to <u>Count Two – Breach of Warranty</u> - Paragraphs 12, 13 (and all subparagraphs), and 14 of this Defendant's Master Answer.

3.    As to <u>Count Three - Negligence</u> - Paragraphs 15, 16 (and all subparagraphs), 17 (and all subparagraphs), 18 and 19 of this Defendant's Master Answer.

4.    As to <u>Count Four - Fraud</u> - Paragraphs 20, 21, 22, 23, 24 (and all subparagraphs) and 25 of this Defendant's Master Answer.

1

5.     As to <u>Count Five - Conspiracy</u> - Paragraphs 26, 27, 28 (and all subparagraphs contained therein), 29, and 30 of this Defendant's Master Answer.

6.     As to <u>Count Six – Market Share Liability</u> - Paragraphs 31, 32 and 33 of this Defendant's Master Answer.

7.     This Defendant denies that the Plaintiff, Charles E. Ward, has contracted asbestos lung disease, and/or any other disease, and demands strict proof thereof.

8.     This Defendant is without specific information to form a belief as to the truth of the allegations contained in Paragraphs 8 and 9 of the Plaintiff's Short Form Complaint and therefore denies the same.

9.     This Defendant denies the allegations contained in Paragraph 10 of the Short Form Complaint and demands strict proof thereof.

10.    This Defendant denies the allegations contained in Paragraph 11 of the Short Form Complaint regarding Plaintiff's exposure and demand strict proof thereof.   This Defendant is without sufficient information or belief to form a belief as to the truth of the remaining allegations of Paragraph 11 concerning Plaintiff's occupation.

Further, Shook & Fletcher Insulation Co. hereby adopts and incorporates by reference the affirmative defenses set forth in its Master Answer to the Master Complaint, specifically as follows:

<u>**AFFIRMATIVE DEFENSES**</u>

Paragraphs 46, 47, 48, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, and 76 of this Defendant's Master Answer.

WHEREFORE, having fully answered the Complaint filed against it herein, this Defendant prays to be dismissed from this cause with its proper costs, and further demands a jury to try the issues when joined.

Respectfully submitted,

PIERCE, HERNS, SLOAN & McLEOD, LLC
321 East Bay Street (29401)
P.O. Box 22437 (29413)
Charleston, South Carolina
PH: (843) 722-7733
FAX: (843) 722-7732

BY: _____
James D. Gandy, III
James G. Kennedy

_____9/4_____, 2001
Charleston, South Carolina

LITTLE & MILLIGAN
900 E. Hill Avenue
Suite 130
Knoxville, TN 37915

BY: _____
F. Scott Milligan (PID No. 207224)

_____9/7_____, 2001
Knoxville, Tennessee

Attorneys for Shook & Fletcher Insulation Co.

3

## CERTIFICATE OF SERVICE

I, the undersigned for this Defendant, hereby certify that I have served Counsel for the Plaintiff in this action with a copy of the pleadings herein below specified by causing a copy of the same to be mailed by United States Mail, postage prepaid, to the following addresses:

Pleading:     **RESPONSE TO PLAINTIFF'S COMPLAINT AND PRAYER FOR JURY TRIAL**

Counsel Served:     J. Patrick Hawkins, Esquire
LAW OFFICES OF PETER G. ANGELOS
2643 Kingston Pike, Suite 101
Knoxville, TN 37919

DEFENSE COUNSEL OF RECORD:     By Letter Only (Copies available upon request).

LITTLE & MILLIGAN
900 E. Hill Avenue
Suite 130
Knoxville, TN 37915

BY: _____
F. Scott Milligan (PID No. 207224)

This 7 day of _September_, 2001

IN THE CIRCUIT COURT FOR THE STATE OF TENNESSEE
SIXTH JUDICIAL DISTRICT, KNOX COUNTY

| | | |
|---|---|---|
| CHARLES E. WARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 2-496-01 |
| A-BEST PRODUCTS COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

---

### DEFENDANT TRECO CONSTRUCTION SERVICES, INC.'S ANSWER TO SHORT FORM COMPLAINT

---

The Defendant TRECO Construction Services, Inc. (hereinafter "TRECO"), for its answer to the cause of action asserted against it hereby adopts and incorporates by reference its Master Answer and states as follows:

Introduction. Defendant TRECO hereby adopts and incorporates by reference Paragraphs 1 through 5 of the Introduction of its Master Answer.

1.    Count One – Strict Liability: Defendant TRECO hereby adopts and incorporates by reference paragraphs 1, 3, 4, 5, 6, 7, 8, 9, 10, and 11 set forth in its Master Answer. Defendant TRECO denies the allegations contained in paragraph 10-D to Count One – Strict Liability, and specifically denies that it manufactured, sold, or supplied any asbestos-containing products.

2.    Count Two – Breach of Warranty: Defendant TRECO hereby adopts and incorporates by reference paragraphs 12, 13, and 14 set forth in its Master Answer.

3.    Count Three – Negligence: Defendant TRECO hereby adopts and incorporates by reference paragraphs 15, 16, 17, 18, and 19 set forth in its Master Answer.

4.    Count Four – Fraud: Defendant TRECO hereby adopts and incorporates by reference paragraphs 20, 21, 22, 23, 24, and 25 set forth in its Master Answer.

5.    Count Five – Conspiracy: Defendant TRECO hereby adopts and incorporates by reference paragraphs 26, 27, 28, 29, and 30 set forth in its Master Answer.

6.    Count Six – Market Share Liability:  Defendant TRECO hereby adopts

and incorporates by reference paragraphs 31, 32, and 33 set forth in its Master Answer.

## ADDITIONAL INFORMATION TO SHORT FORM COMPLAINT

7.    Defendant TRECO is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the Additional Information to Short Form Complaint, and therefore denies same.

8.    Defendant TRECO is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 of the Additional Information to Short Form Complaint, and therefore denies same.

9.    Defendant TRECO is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the Additional Information to Short Form Complaint, and therefore denies same.

10.    Defendant TRECO denies the allegations contained in paragraph 10 of the Additional Information to Short Form Complaint.

11.    Defendant TRECO denies the allegations contained in paragraph 11 of the Additional Information to Short Form Complaint.

## AFFIRMATIVE AND ADDITIONAL DEFENSES

12.    Defendant TRECO hereby adopts and incorporates by reference its Affirmative Defenses as set forth in its Master Answer.

WHEREFORE, PREMISES CONSIDERED, having fully answered the Short Form Complaint filed against it, Defendant TRECO Construction Services, Inc. prays to be dismissed from this action, for its costs, for a jury to try this case, and for such further and equitable relief as this Court deems appropriate.

Respectfully submitted,

BOULT, CUMMINGS, CONNERS & BERRY, PLC

By: _____
Russell B. Morgan (No. 20218)
Christopher E. Thorsen (No. 21049)
414 Union Street, Suite 1600
P.O. Box 198062
Nashville, Tennessee 37219
(615) 252-2328

*Attorneys for TRECO Construction Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing is being forwarded via U.S. Mail, postage prepaid, to:

> Mike G. Nassios, Esq.
> Randall E. Reagan, Esq.
> Timothy M. McLaughlin, Esq.
> Robert S. Patterson, Esq.
> J. Patrick Hawkins, Esq.
> Law Offices of Peter G. Angelos, P.C.
> 2643 Kingston Pike, First Floor
> Knoxville, Tennessee 37919

on this the _____ day of September, 2001.

_____
Christopher E. Thorsen

## Tennessee Rule of Civil Procedure 4.07
## Waiver of Service of Summons

TO:  The Law Offices of Peter G. Angelos, P.C.:

I acknowledge receipt of your request that I waive service of a summons in the action of **Charles E. Ward   v. A-Best Company, Inc., et al.**, which is civil action number **2-496-01** in the Knox County Circuit Court.  I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after **August 10, 2001.**

_____15-8-01_____
Date

Signature _____ Swift _____

Printed/typed name:_____E SWIFT____

as ____Employee____
for ____Turner-Newall, LTD____

## Duty to Avoid Unnecessary Costs
## of Service of Summons

Rule 4 of the Tennessee Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint.  A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of a summons, fails to do so will be required to bear the costs of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property.  A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court.  If the answer or motion is not served within this time, a default judgment, may be taken against that defendant.  By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

G:\L...\summons\turner newall\waiver.req

IN THE CIRCUIT COURT FOR KNOX COUNTY, TENNESSEE

| | |
|---|---|
| CHARLES E. WARD, | ) Civil Action No. 2-496-01 |
| Plaintiff, | ) |
| vs. | ) |
| A-BEST PRODUCTS COMPANY, et al., | ) |
| Defendants. | ) |

**RESPONSE
TO PLAINTIFF'S SHORT FORM COMPLAINT
AND PRAYER FOR JURY TRIAL**

**PRELIMINARY STATEMENT**

Defendant T&N, plc, by and through its counsel of record, does hereby adopt and incorporate by reference all of its previously filed Master Responses to Plaintiffs' causes of action and relevant paragraphs set forth in its Master Answer to Plaintiffs' Master Complaint, specifically as follows. This Defendant hereby adopts the following paragraphs from its Master Answer:

1.    As to <u>Count One – Strict Liability</u> - Paragraphs 1, 3 (and all subparagraphs), 4, 5, 6, 7, 8 (and all subparagraphs), 9 (and all subparagraphs), 10 (and all subparagraphs) and 11 of this Defendant's Master Answer.

2.    As to <u>Count Two – Breach of Warranty</u> - Paragraphs 12, 13 (and all subparagraphs), and 14 of this Defendant's Master Answer.

3.    As to <u>Count Three - Negligence</u> - Paragraphs 15, 16 (and all subparagraphs), 17 (and all subparagraphs), 18 and 19 of this Defendant's Master Answer.

4.    As to <u>Count Four - Fraud</u> - Paragraphs 20, 21, 22, 23, 24 (and all subparagraphs) and 25 of this Defendant's Master Answer.

5.    As to <u>Count Five - Conspiracy</u> - Paragraphs 26, 27, 28 (and all subparagraphs contained therein), 29, and 30 of this Defendant's Master Answer.

1

6.       As to <u>Count Six – Market Share Liability</u> - Paragraphs 31, 32 and 33 of this Defendant's Master Answer.

7.       This Defendant denies that the Plaintiff, Charles E. Ward, has contracted asbestos lung disease, and/or any other disease, and demands strict proof thereof.

8.       This Defendant is without specific information to form a belief as to the truth of the allegations contained in Paragraphs 8 and 9 of the Plaintiff's Short Form Complaint and therefore denies the same.

9.       This Defendant denies the allegations contained in Paragraph 10 of the Short Form Complaint and demands strict proof thereof.

10.      This Defendant denies the allegations contained in Paragraph 11 of the Short Form Complaint regarding Plaintiff's exposure and demand strict proof thereof.  This Defendant is without sufficient information or belief to form a belief as to the truth of the remaining allegations of Paragraph 11 concerning Plaintiff's occupation.

Further, T&N, plc hereby adopts and incorporates by reference the affirmative defenses set forth in its Master Answer to the Master Complaint, specifically as follows:

## AFFIRMATIVE DEFENSES

Paragraphs 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, and 76 of this Defendant's Master Answer.

WHEREFORE, having fully answered the Complaint filed against it herein, this Defendant prays to be dismissed from this cause with its proper costs, and further demands a jury to try the issues when joined.

Respectfully submitted,

PIERCE, HERNS, SLOAN & McLEOD, LLC
321 East Bay Street (29401)
P.O. Box 22437 (29413)
Charleston, South Carolina
PH: (843) 722-7733
FAX: (843) 722-7732

BY: _____
        James D. Gandy, III
        James G. Kennedy

_____8/31_____, 2001
Charleston, South Carolina


LITTLE & MILLIGAN
900 E. Hill Avenue
Suite 130
Knoxville, TN 37915

BY: _____
        F. Scott Milligan (PID No. 207224)

_____9/7_____, 2001
Knoxville, Tennessee


Attorneys for T&N, plc


3

## CERTIFICATE OF SERVICE

I, the undersigned for this Defendant, hereby certify that I have served Counsel for the Plaintiff in this action with a copy of the pleadings herein below specified by causing a copy of the same to be mailed by United States Mail, postage prepaid, to the following addresses:

Pleading:       **RESPONSE TO PLAINTIFF'S COMPLAINT**
                **AND PRAYER FOR JURY TRIAL**

Counsel Served:           J. Patrick Hawkins, Esquire
                          LAW OFFICES OF PETER G. ANGELOS
                          2643 Kingston Pike, Suite 101
                          Knoxville, TN 37919

DEFENSE COUNSEL OF RECORD:       By Letter Only (Copies available upon request).

LITTLE & MILLIGAN
900 E. Hill Avenue
Suite 130
Knoxville, TN 37915

BY: _____
    F. Scott Milligan (PID No. 207224)

This __7__ day of __Sept__, 2001

IN THE CIRCUIT COURT FOR KNOX COUNTY, TENNESSEE

| | | |
|---|---|---|
| CHARLES E. WARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2-496-01 |
| | ) | |
| A-BEST PRODUCTS COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### SHORT FORM ANSWER OF DEFENDANT

Comes now the defendant, Viacom Inc., successor to Westinghouse Electric Corporation (hereinafter "Westinghouse"), and for answer to the Complaint filed herein hereby adopts and incorporates by reference the respective paragraphs set forth in the Master Answer and all amendments thereto and Answer to First Amendment to Master Complaint previously filed on January 30, 1996 as follows:

Introduction - Paragraphs 1 – 4, and 6.

1.  Count One - Strict Liability - Paragraphs 1, 3 through 10, 10-D and 11;

2.  Count Two - Breach of Warranty - Paragraphs 12 through 14;

3.  Count Three - Negligence - Paragraphs 15 through 19;

4.  Count Four - Fraud - Paragraphs 20 through 25;

5.  Count Five - Conspiracy - Paragraphs 26 through 30;

6.  Count Six - Market Share Liability - Paragraphs 31 through 33;

7.  Westinghouse denies that the plaintiff has contracted asbestos lung disease and demands strict proof thereof.

8.  Westinghouse is without sufficient knowledge or information to either admit or deny the allegations contained in Paragraph 8 of the Short Form Complaint.

9.  Westinghouse is without sufficient knowledge or information to either admit or deny the allegations contained in Paragraph 9 of the Short Form Complaint.

10.  Westinghouse is without sufficient knowledge or information to either admit or deny the allegations contained in Paragraph 10 of the Short Form Complaint.

11.  Westinghouse is without sufficient knowledge or information to either admit or deny the allegations contained in Paragraph 11 of the Short Form Complaint.

12.    Westinghouse hereby adopts and incorporates the Affirmative Defenses

set forth in the Master Answer.

WHEREFORE, having fully answered the Short Form Complaint filed herein

against it, Westinghouse prays to be dismissed from this cause with its proper costs and

alternatively demands a jury to try the issues when joined.

Respectfully submitted,

Hugh B. Bright (PID# 006415)

Attorneys for Defendant,
Westinghouse

WOOLF, MCCLANE, BRIGHT, ALLEN
    & CARPENTER, PLLC
900 S. Gay Street, Suite 900
P.O. Box 900
Knoxville, Tennessee  37901

## CERTIFICATE OF SERVICE

83550-1                                                              2

The undersigned hereby certifies that a true and exact copy of the foregoing pleading or document has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

Mike G. Nassios
Randall E. Reagan
Timothy M. McLaughlin
Robert S. Patterson
James Patrick Hawkins
Law Offices of Peter G. Angelos, P.C.
2643 Kingston Pike, 1st Floor
Knoxville, Tennessee 37919

This the 4th day of October , 2001.

Attorney

83550-1                                  3

## Tennessee Rule of Civil Procedure 4.07
## Waiver of Service of Summons

TO:  The Law Offices of Peter G. Angelos, P.C.:

I acknowledge receipt of your request that I waive service of a summons in the action of **Charles E. Ward   v. A-Best Company, Inc., et al.**, which is civil action number **2-496-01** in the Knox County Circuit Court. I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after **August 10, 2001**.

_August 28, 2001_
Date

Signature

Printed/typed name:____Robert P. Morgan____
as _____Attorney_____
for ____Westinghouse Electric Corporation____

## Duty to Avoid Unnecessary Costs
## of Service of Summons

Rule 4 of the Tennessee Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of a summons, fails to do so will be required to bear the costs of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property.  A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court.  If the answer or motion is not served within this time, a default judgment, may be taken against that defendant.  By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

G:\...\summons\westinghouse\waiver.req

Source: All Sources > Federal Legal - U.S. > District Court Cases - By State > TN Federal District Courts ⓘ
Terms: **morgan w/sent brush w/sent wellman**  (Edit Search)

☞ Select for FOCUS™ or Delivery

*2000 U.S. Dist. LEXIS 9898, \**

TROY MURPHY **MORGAN**, et ux., Plaintiffs v. **BRUSH WELLMAN,** INC., et al., Defendants; GARY FOSTER, et ux., Plaintiffs v. **BRUSH WELLMAN,** INC., et al., Defendants; JAMES L. GRANT, et ux., Plaintiffs v. **BRUSH WELLMAN,** INC., et al., Defendants; JERRY HALL, et ux., Plaintiffs v. **BRUSH WELLMAN,** INC., et al., Defendants; MACK A. ORICK, et ux., Plaintiffs v. **BRUSH WELLMAN,** INC., et al., Defendants; ALFRED G. BELL, et ux., Plaintiffs v. UNITED STATES OF AMERICA, Defendant; ALBERT GLADSON, et ux., Plaintiffs v. UNITED STATES OF AMERICA, Defendant; ESTHER SHULAR, et vir., Plaintiffs v. UNITED STATES OF AMERICA, Defendant; JOYCE J. CABE, et vir., Plaintiffs v. UNITED STATES OF AMERICA, Defendant; ALFRED L. HAYNES, et ux., Plaintiffs v. UNITED STATES OF AMERICA, Defendant; BURLIN McKINNEY, et ux., Plaintiffs v. UNITED STATES OF AMERICA, Defendant; JOHN R. BURNUM, et al., Plaintiffs v. UNITED STATES OF AMERICA, Defendant; ROBERT G. FREELS, Plaintiff v. UNITED STATES OF AMERICA, Defendant

No. 3:94-cv-369, No. 3:97-cv-105, No. 3:97-cv-593, No. 3:99-cv-110, No. 3:98-cv-652, No. 3:95-cv-505, No. 3:96-cv-459, No. 3:96-cv-254, No. 3:96-cv-253, No. 3:96-cv-252, No. 3:96-cv-251, No. 3:97-cv-141, No. 3:97-cv-605

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

2000 U.S. Dist. LEXIS 9898

February 16, 2000, Filed

**DISPOSITION: [\*1]** Motions to dismiss for lack of subject matter jurisdiction granted. Actions dismissed.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant United States moved to dismiss for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), plaintiffs' tort claims against it under the Federal Torts Claims Act, 28 U.S.C.S. § 1346(b), et seq., for injuries allegedly suffered following their employment at nuclear plants.

**OVERVIEW:** Plaintiffs were employees or former employees of a government contractor who alleged they were injured by exposure to beryllium at federal nuclear power plants. Plaintiffs sued defendant federal government under the Federal Torts Claims Act (FTCA), 28 U.S.C.S. § 1346(b), et seq. Defendant moved to dismiss for lack of subject matter jurisdiction contending that all claims against it were barred either by the discretionary function exception to the FTCA or were claims against plaintiffs' employer, an independent contractor of the government, for whose negligence the United States was not liable. The court found none of the conduct plaintiffs alleged occurred demonstrated that the government violated any mandatory statutory or regulatory provisions with respect to which it had no discretion. Consequently, the discretionary function exception applied. Moreover, there was no substantial supervision over the day-to-day operations of the independent contractors by a federal agency, so defendant was not liable for the negligence of any of the employees of its independent contractors. Dismissal of the claims against defendant was ordered.

**OUTCOME:** The court granted the motion to dismiss, finding the claims were protected by the discretionary function exception, thus the court lacked subject matter jurisdiction; moreover, defendant could not be liable for the negligence of any of the employees of its independent contractors.

**CORE TERMS:** contractor, beryllium, exposure, workplace, hazard, regulation, discretionary function, mandatory, plant, exposed, monitoring, respirable, inspection, discretionary, imminent danger, subject matter jurisdiction, environmental protection, day-to-day, directive, monitor, safe, government employees, disease, prescribed, effective, independent contractor, supervision, chronic, duty, industrial

**CORE CONCEPTS -** ◆ Hide Concepts

Civil Procedure : Pleading & Practice : Defenses, Objections & Demurrers : Motions to Dismiss

When considering a factual Fed. R. Civ. P. 12(b)(1) motion, the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case, and no presumptive truthfulness attaches to the plaintiffs' allegations. Furthermore, plaintiffs will have the burden of proof that jurisdiction does in fact exist.

Torts : Public Entity Liability : Federal Causes of Action

The Federal Torts Claims Act (FTCA), 28 U.S.C.S. § 1346(b), et seq., authorizes suits against the United States for damages caused by the tortious conduct of federal employees when such conduct would render a private actor liable under the law of the place where the conduct occurred. 28 U.S.C.S. § 1346(b). However, the FTCA does not permit claims based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved is abused. 28 U.S.C. S. § 2680(a).

Torts : Public Entity Liability : Federal Causes of Action

The United States Supreme Court has provided a two-step analysis used to determine whether the discretionary function exception in the Federal Torts Claims Act (FTCA), 28 U.S.C.S. § 1346(b), et seq., applies in a particular case. First, the court must determine whether the challenged conduct involves an element of judgment or choice. It is crucial to first identify the actual conduct which is in question. In addition, the exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of conduct for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive. Second, if the challenged conduct involves discretion, the court must determine whether that discretion is of the kind the discretionary function exception was designed to shield. The purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.

Energy & Utilities Law : Nuclear Power Industry

The Atomic Energy Act of 1954 explicitly authorizes the Atomic Energy Commission and its successor agencies to regulate health and safety as deemed necessary. 42 U.S.C.S. § 2201(I)(3). Statutes and regulations authorizing a government agency to establish such health and safety standards do not impose mandatory or specific duties and the decisions to establish such standards are clearly susceptible to policy considerations.

Torts : Public Entity Liability : Federal Causes of Action

The first part of the test for whether the immunity exception under the Federal Torts

Claims Act (FTCA), 28 U.S.C.S. § 1346(b), et seq., applies requires a determination of whether the challenged act or omission violated a mandatory regulation or policy that allowed no judgment or choice. The requirement of judgment or choice is not satisfied if a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow, because the employee had no rightful option but no adhere to the directive.

📄 Torts : Public Entity Liability : Federal Causes of Action
⬆ The United States Court of Appeals for the Sixth Circuit has explicitly held that the discretionary function exception to tort liability under the Federal Torts Claims Act (FTCA), 28 U.S.C.S. § 1346(b), et seq., is applicable to alleged negligence in the delegation of safety responsibilities to a government contractor.

📄 Torts : Public Entity Liability : Federal Causes of Action
⬆ The discretionary function exception to tort liability under the Federal Torts Claims Act (FTCA), 28 U.S.C.S. § 1346(b), et seq., encompasses government decisions on how and how much to supervise the safety procedures of independent contractors. Moreover, the retention of open-ended supervisory authority that allows the government employees to exercise choice and discretion does not render the exception inapplicable.

📄 Torts : Public Entity Liability : Federal Causes of Action
⬆ Under the Federal Torts Claims Act (FTCA), 28 U.S.C.S. § 1346(b), et seq., the United States is subject to liability for the negligence of an independent contractor only if it can be shown that the government had authority to control the detailed physical performance of the contractor and exercised substantial supervision over its day-to-day activities. This exception is based on the language of the statute which provides that the United States is subject to liability for damages caused by the negligent or wrongful act or omission of any employee of the federal government. 28 U.S.C.S. § 1346(b).

📄 Torts : Public Entity Liability : Federal Causes of Action
⬆ The Federal Torts Claims Act (FTCA), 28 U.S.C.S. § 1346(b), et seq., defines employee of the Government as any employees of any federal agency. 28 U.S.C.S. § 2671. "Federal agency" is defined as executive departments, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, that does not include any contractor with the United States.

📄 Torts : Public Entity Liability : Federal Causes of Action
⬆ Under the Federal Torts Claims Act (FTCA), 28 U.S.C.S. § 1346(b), et seq., the United States cannot be found liable for the negligence of its independent contractors. There must be substantial supervision over the day-to-day operations of the contractor in order to find that the individual is acting as a government employee.

📄 Torts : Public Entity Liability : Federal Causes of Action
⬆ The United States Supreme Court has indicated that detailed regulation and inspections are no longer evidence of an employee relationship. The ability to compel compliance with federal regulations does not change a contractor's personnel into federal employees.

**COUNSEL:** For TROY M **MORGAN,** CORKY D MCCARTER, RICHARD E MYERS, SR, WILMA D MYERS, KATHLENE BEATTY, plaintiffs (94-CV-369): Elizabeth A Rowland, Michael Y Rowland,

Janet Edwards, Rowland & Rowland, Knoxville, TN.

For TROY M **MORGAN,** CORKY D MCCARTER, KAREN S MCCARTER, RICHARD E MYERS, SR, WILMA D MYERS, KATHLENE BEATTY, plaintiffs (94-CV-369): Alicia D Butler, Fredrick M Baron, Steve B Jensen, Baron & Budd, P.C., Dallas, TX.

For KAREN S MCCARTER, plaintiff (94-CV-369): W Andrew Fox, Stewart, Curry & Fox, Knoxville, TN.

For **BRUSH WELLMAN,** INCORPORATED, defendant (94-CV-369): W Kyle Carpenter, Woolf, McClane, Bright, Allen & Carpenter, Knoxville, TN.

**JUDGES:** James H. Jarvis, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** James H. Jarvis

**OPINION: MEMORANDUM OPINION**

The above-styled actions are all brought by employees or former employees of a government contractor against the United States under the Federal Torts Claims Act (FTCA), 28 U.S.C. § 1346(b), *et seq.* Plaintiffs in each case allege that they suffer from chronic beryllium disease (CBD) as a result of exposure to beryllium **[*2]** or beryllium-containing products while they were engaged in the manufacture of nuclear weapons at the Department of Energy's (formerly the Atomic Energy Commission's) K-25 and Y-12 Plants in Oak Ridge, Tennessee. In some cases, plaintiffs have also sued the manufacturers or sellers of the beryllium and/or beryllium-containing products. However, in each case the United States is a defendant and has moved to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, contending that all claims against it are barred either by the discretionary function exception to the FTCA or are claims against plaintiffs' employer, an independent contractor of the government, for whose negligence the United States is not liable. With respect to these motions, all of these cases raise identical issues and will be consolidated for purposes of these motions only. For the reasons that follow, the government's motions to dismiss each of the claims against it for lack of subject matter jurisdiction will be granted.

Plaintiffs claim that this court has subject matter jurisdiction over their FTCA claims pursuant to 28 U.S.C. § 1346(b). **[*3]** The United States has made a factual attack on the court's subject matter jurisdiction. *See RMI Titanium Company v. Westinghouse Electric Corporation,* 78 F.3d 1125, 1134 (6th Cir. 1996).* When considering a factual Rule 12(b)(1) motion, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," and "no presumptive truthfulness attaches to the plaintiffs' allegations." *Id.* Furthermore, "plaintiffs will have the burden of proof that jurisdiction does in fact exist." *Id.*

I.

*Factual Background*

The United States Department of Energy (DOE) owns a number of facilities throughout the United States, including the Y-12 and K-25 Plants in Oak Ridge, where work related to atomic energy, including nuclear weapons, is performed. DOE, as the owner of these facilities, is the successor of the Energy Research and Development Administration (ERDA) and the Atomic Energy Commission (AEC), and like its predecessors, DOE uses management and operating (M&O) contractors to operate these facilities, continuing the arrangements among federal, industrial and academic organizations that were initiated as part of the War **[*4]** Department's Manhattan Engineer District Project (Manhattan Project) to develop the atomic bomb during World War II. The initial M&O contractor hired to operate the K-25 and Y-12

Plants was Union Carbide and Carbon Corporation, which later became the Union Carbide Corporation (Union Carbide). In 1984, Union Carbide did not bid on the renewal contract and Martin Marietta Energy Systems (Martin Marietta) replaced Union Carbide as the M&O contractor. The current contractor at those facilities is Lockheed Martin Energy Systems (Lockheed Martin), the successor to Martin Marietta as a result of the merger of Lockheed Aircraft and Martin Marietta.

DOE's M&O contracts are characterized by their unique purpose and by the special relationship that exists between the government and the M&O contractor. 48 C.F.R. § 17.604 (1993). In essence, these are unique contracts, designed to facilitate long-term private management of government-owned facilities. See United States v. New Mexico, 455 U.S. 720, 723, 71 L. Ed. 2d 580, 102 S. Ct. 1373 (1982) (discussion of the nature and operation of M&O contracts).

The Atomic Energy Act of 1946 permits "management contracts for the operation **[*5]** of government-owned plants so as to gain full advantage of the skill and experience of American industry." S. Rep. No. 1211, 79th Cong., 2d Sess. 15 (1946). Although DOE is not compelled to use M&O contractors, they were first statutorily authorized to do so by the Atomic Energy Act of 1946.

Since the passage of the Atomic Energy Act of 1946, AEC, ERDA and DOE have established a comprehensive scheme governing the procedures used by the M&O contractors to perform a wide range of activities, including various forms of subcontracting. This scheme manifests itself through DOE's Acquisition Regulations (DEAR) and through DOE's contracts with its M&O contractors. The DEAR, 48 C.F.R. Chapter 9, implement and supplement the Federal Acquisition Regulation (FAR) as authorized by FAR Subparts 1.3 and 17.6. 48 C.F.R. Subparts 1.3, 17.6 (1993). DEAR Part 970, 48 C.F.R. Part 970 (1993), governs M&O contracting activities.

In 1946, the various arrangements with M&O contractors, as well as the Manhattan Project facilities operated by them, were transferred to the AEC by Executive Order 98.16. The Energy Reorganization Act of 1974 abolished AEC and established ERDA. In 1977, Congress passed the Department **[*6]** of Energy Organization Act, which established DOE and abolished ERDA.

AEC, ERDA and DOE were each given authority to enter into contractual arrangements "for the conduct of research and development activities," 42 U.S.C. § 2051(a); "for the production of special nuclear material in facilities owned by the Commission," 42 U.S.C. § 2061(b); "for the processing, fabricating, separating, or refining in facilities owned by the Commission of source, by-product, or other material, or special nuclear material," 42 U.S.C. § 2201(t); "for the purchase or acquisition of reactor services or services related to or acquired by the operation of reactors," 42 U.S.C. § 2201(u); "for the conduct of research and development activities with private or public institutions or persons," 42 U.S.C. § 5817(a); or "to carry out functions now or hereinafter vested in the [DOE] Secretary," 42 U.S.C. § 7256. In addition, DOE imposes on its M&O contractors requirements for public and employee safety and health at its nuclear facilities. 42 U.S.C. §§ 2051 **[*7]** (d), 2061(b)(2)(B) and (C), 2201(1)(3), and 7274(m).

AEC, ERDA and DOE all exercised the statutory authority to regulate employee safety and health at their contractor-operated facilities by a directives system composed of orders and contractual requirements issued by DOE. Contractors at the various sites have been responsible for day-to-day operations and safety decisions under the general oversight of DOE officials. Orders and directives related to the regulation of employee safety and health have been issued by AEC, ERDA and DOE. On September 30, 1995, DOE Order No. 440.1 was approved. That order replaced the then-existing employee safety and health orders, with the exception of DOE Order No. 5482.1B, which remained in full force and effect. Together

those two orders now form the basis of DOE's program for the protection of federal and contractor employees at DOE-owned, contractor-operated sites. DOE Order 440.1 establishes the framework for the worker protection program, and DOE Order 5482.1B establishes the program for appraisal of employee safety and health.

DOE Order 440.1 states an objective, "to establish the framework for an effective worker protection program that will **[*8]** reduce or prevent accidental losses, injuries, and illnesses and providing DOE Federal and contractor workers with a safe and healthful workplace." Under DOE Order 440.1 and an attachment to that order, both DOE and the contractor are required to participate in the maintenance of a safe workplace for the workers. The order requires that all elements of DOE are required to take enumerated steps to implement a worker protection program for all DOE employees. The order also requires DOE to implement procedures to allow workers, through their supervisors, to stop work when they discover employee exposures to imminent danger, to inform workers of their rights and responsibilities by appropriate means, to identify existing and potential workplace hazards and evaluate the risk of associated worker injury, to provide workers, supervisors, managers, visitors and worker protection professionals with worker protection training to insure that contractors implement effective worker protection programs, to review contractor worker protection program budgets and provide recommendations to the funding official of the appropriateness of the budget request, to provide contractors with technical direction, **[*9]** to insure that unannounced worker protection inspections of contractor workplaces are conducted at least annually to insure immediate and effective remedial actions are taken for imminent danger situations discovered during worker protection inspections, and to conduct an inspection as soon as possible after an imminent danger situation has been corrected to insure that appropriate actions have been taken to preclude recurrence.

DOE Order 440.1 also contains an Attachment 2 which sets out the "contractor requirements document" and describes "worker protection management for DOE contractor employees". This section requires the contractor to, among other things, implement a worker protection program that provides a place of employment free from recognized hazards, to establish written policies, goals and objectives for the worker protection program, to use qualified worker protection staff to direct and manage the worker protection program, to allow contractor workers the right, without reprisal, to accompany DOE protection personnel during workplace inspections, to express concerns related to worker protection, to provide contractor employees the right to be notified when monitoring **[*10]** results indicate that they were exposed to hazardous materials, to implement procedures to allow contractor workers, through their supervisors, to stop work when they discover employee exposures to imminent danger conditions or other serious hazards, and to assess worker exposure to chemical, physical, biological, or ergonomic hazards through appropriate workplace monitoring.

In essence, under DOE Order 440.1, the United States is required to take numerous steps to implement a safety program for its employees and to exercise supervisory or oversight control over the safety steps which the contractor is required to implement for the protection of the contractor's employees. Among other safety requirements, contractors are required to comply with Title 29 of the Code of Federal Regulations (C.F.R.), Part 1910, which are the Occupational Safety and Health Administration (OSHA) Rules and Standards adopted by OSHA after it was created by Congress in 1970. Included in the OSHA standards are the eight-hour time-weighted average exposure limit, the acceptable ceiling concentration, and the acceptable maximum peak exposure limit for beryllium and beryllium compounds. 29 C.F.R. § 1910.1000, **[*11]** Rules 7.1 and 7.2.

DOE Order 5482.1B applies to both DOE elements and contractors performing work for DOE. Under that order, government officials are responsible for most of the safety and health appraisal activities required. However, the contractors are required to perform internal appraisals of their safety and health programs.

Pursuant to congressional authority, the United States entered into an agreement with Union Carbide and Carbon Corporation in 1950, which predates the earliest hire date of any of the plaintiffs. Article XVII of that agreement required the contractor to "conform to all health and safety requirements as may be prescribed by the Commission." In addition, the contractor was directed to "take all reasonable steps and precautions to protect health and minimize danger from all hazards to life and property." Further, Article XVII required the contractor to permit the Commission to inspect the facilities with regard to health and safety. Between 1950 and 1984, the contract provision related to the contractor's responsibilities for health and safety did not change substantially.

The first agreement between DOE and Martin Marietta was dated March 30, 1984. Paragraph **[*12]** 14 of that contract addressed safety and health requirements and added provisions requiring the DOE contracting officer to notify the contractor not only of non-compliance with the safety and health provisions, but also corrective actions which must be taken by the contractor. In the event of contractor non-compliance with DOE's requirements, the contracting officer was authorized to issue a stop work order, and the contractor was prohibited from seeking compensation or damages for any work stoppage.

The DOE/Lockheed Martin contract was modified in 1995. That modification included the latest environment, safety and health provisions. Paragraph H.16(c)(1), dealing with DOE directives, was materially amended as it related to environment, safety and health requirements. It provided that those areas would be governed by an alternate set of requirements "identified in (1) the standards/requirements identification document(S/RID) approved on November 1, 1994, February 2, 1995, and April 18, 1995, by DOE, or (2) necessary and sufficient standards as approved by DOE." Lockheed Martin developed extensive standards/requirements identification document(S/RID) applicable to the Y-12 Plant and **[*13]** K-25 site. This is a four volume set of standards and requirements which comprehensively link the DOE directives with specific job functions and addresses the issues of environment, safety and health. This set of standards now forms the framework for worker protection at the DOE Oak Ridge facilities.

At both the Y-12 and K-25 locations, there are several hundred DOE employees who are engaged in a supervisory role with respect to the several thousand Martin Marietta employees who perform the day-to-day operations of the plants. The Martin Marietta workers are clearly employed by Martin Marietta and not by the Department of Energy.

II.

*Plaintiffs' Allegations Against the United States*

The plaintiffs allege that the United States and DOE employees negligently omitted and failed to do the following:

(1) to warn the plaintiffs and other employees of the health hazards and danger from exposure to respirable particles of beryllium dust,

(2) to warn the plaintiffs and other employees that some workers who became sensitive to beryllium would develop the disease of berylliosis or chronic disease (CBD) even if their exposures are below the two micrograms per cubic centimeter **[*14]** of air OSHA eight-hour workplace standard,

(3) to scientifically research and establish a threshold limit value standard to protect plaintiffs and other employees from the hazards of beryllium in their workplace environment,

(4) to warn the plaintiffs and other employees of the risk of developing berylliosis and progressive respiratory impairment even when exposed to levels below the OSHA workplace standard,

(5) to establish workplace preventative and protective procedures for their contractors' employees,

(6) to monitor respirable levels of beryllium particles in the area of the plant in which the plaintiffs were exposed,

(7) to establish and require the contractor to use adequate safety devices to prevent plaintiffs' exposure to beryllium particles,

(8) to require the contractor to monitor the medical conditions of workers known to be exposed to respirable beryllium,

(9) to establish, prescribe, require and enforce appropriate safety methods, standards and procedures for their contractors regarding exposure to respirable particles or dust from beryllium-containing products, and

(10) to perform and evaluate epidemiological studies of workers exposed to respirable levels of **[*15]** beryllium to determine whether a safe level of beryllium exposure existed.

III.

*Governmental Immunity and the Discretionary Function Exception*

The FTCA is a limited waiver of the United States' sovereign immunity. ⊤The FTCA authorizes suits against the United States for damages caused by the tortious conduct of federal employees when such conduct would render a private actor liable under the law of the place where the conduct occurred. 28 U.S.C. § 1346(b). However, the FTCA does not permit claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved is abused." 28 U.S.C. § 2680(a). ⊤The United States Supreme Court has provided a two-step analysis used to determine whether the discretionary function exception applies in a particular case. First, the court must determine whether the challenged conduct involves an element of judgment or choice. *Berkovitz v. United States*, 486 U.S. 531, 536, 100 L. Ed. 2d 531, 108 S. Ct. 1954 (1988). Prior to this first step **[*16]** of the analysis, it is crucial to first identify the actual conduct which is in question. In addition, the exception "will not apply when a federal statute, regulation, or policy specifically prescribes a course of conduct for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive." *Id.* Second, if the challenged conduct involves discretion, the court must determine whether that discretion is "of the kind that the discretionary function exception was designed to shield." *United States v. Gaubert*, 499 U.S. 315, 322-23, 113 L. Ed. 2d 335, 111 S. Ct. 1267 (1991). The purpose of the exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814, 81 L. 2d 660, 104 S. Ct. 2755 (1984). Thus, the court must determine whether the discretionary conduct was a policy decision. If so, the exception applies and shields the government from liability from the consequences of that conduct. **[*17]**

In *Gaubert*, the Court described the wide range of governmental decisions which are based on social, economic and political policy as follows:

When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. ... The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

_Gaubert_, 499 U.S. at 324-25. The Court rejected the argument that only high level planning or policy decisions were exempt from liability under the discretionary function exception, holding that day-to-day activities at the operational level may be immune from liability if the activities involved are grounded in policy considerations. _Id._ at 325. The Court further noted that the government need not demonstrate that each challenged action was rooted in a social, economic or political policy consideration. Rather, the **[*18]** Court held that, when statutes, regulations or guidelines allow a government agent to exercise discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." _Id._ at 324.

IV.

_Analysis_

Initially, the plaintiffs who sued only the United States have alleged that DOE violated certain mandatory federal regulations which purportedly required DOE to warn the plaintiffs of the dangers of beryllium exposure. Plaintiffs argue that because these duties were mandatory, DOE employees had no discretion but were required to follow these mandatory requirements, and therefore the discretionary function exception is inapplicable. Plaintiffs describe these mandatory requirements as follows:

"Occupational safety and health professionals of field organizations shall conduct unannounced compliance inspections of GOCO facilities using the DOE prescribed OSHA standards as requirements. These inspections are in addition to occupational safety and health appraisals or audits required by any other DOE Order, and shall be conducted on a priority basis with respect to the safety and health hazards involved and the number of employees **[*19]** affected. ... Where violations of the DOE prescribed OSHA standards are noted, appropriate follow-up actions shall be taken to assure the effectiveness of corrective actions taken on deficiencies noted during initial compliance inspections."

Chapter II, § 6(a) of DOE Order 5483.1A. In addition, § 6(c) of that same Order states, in pertinent part:

"In the event the inspector discovers a situation which presents an imminent danger to contractor employees' safety and health, he or she shall take immediate and effective remedial action to assure that employees are removed from the danger area and/or that the danger is eliminated. ... The field organization and the contractor shall assure that the matter is investigated and that prompt actions are taken to preclude recurrence of a similar imminent danger situation."

The plaintiffs further note that under DOE Order 5483.1A, a DOE inspector is required to take specific actions and institute specific procedures when a violation of the OSHA standards set forth in 29 C.F.R. § 1910 by the contractor is discovered. Plaintiffs contend that among the various OSHA standards set forth in 29 C.F.R. § 1910 is a requirement **[*20]** that an employer communicate to employees hazards posed by toxic materials to which employees are actually or potentially may be exposed. Plaintiffs contend that both the contractor and DOE knew of the dangers of exposure to even small amounts of beryllium dust and DOE inspectors failed to take action to "assure the effectiveness of corrective actions" taken by the contractor when the contractor was found to be in violation of the DOE-prescribed OSHA standard by failing to warn its employees of the health hazards of beryllium exposure.

Essentially the plaintiffs argue that they should have been warned of the dangers of exposure to even "trace" amounts of beryllium. However, ✝the Atomic Energy Act of 1954 explicitly authorized the AEC and its successor agencies to regulate health and safety as deemed necessary. 42 U.S.C. § 2201(I)(3). Statutes and regulations authorizing a government agency to establish such health and safety standards do not imposed mandatory or specific duties and the decisions to establish such standards are clearly susceptible to policy considerations. When the AEC prescribed the beryllium standard, which was later adopted by OSHA, the AEC **[*21]** balanced the nation's need for beryllium to manufacture nuclear weapons against the shortcomings of scientific knowledge regarding the potentially dangerous levels of beryllium. When plaintiffs make reference to DOE's failure to notify plaintiffs of the dangers of "trace" amounts of beryllium, they are essentially requesting the court to secondguess the beryllium standards set by OSHA. Deciding whether a lower standard should have been adopted or whether employees of independent contractors should be warned that any level of exposure was an unacceptable risk involves the type of fundamental discretion which the discretionary function exception is intended to protect. I cannot find that there is any mandatory standard set forth in DOE Order 5483.1A which DOE employees failed to comply with.

Other plaintiffs have identified other mandatory DOE orders which they claim DOE workers failed to follow. As noted, ✝the first part of the *Gaubert* test requires a determination of whether the challenged act or omission violated a mandatory regulation or policy that allowed no judgment or choice. "The requirement of judgment or choice is not satisfied if a federal statute, regulation or policy **[*22]** specifically prescribes a course of action for an employee to follow, because the employee had no rightful option but no adhere to the directive." *Berkowitz*, 486 U.S. at 536. The plaintiffs have identified multiple DOE orders which they claim had mandatory regulations or policies which did not allow for discretion on the part of DOE employees and were violated by those employees. These regulations are as follows:

(1) DOE Order 5480.1 (1980) [canceled by DOE Order 5480.1A in 1981]. This order states that it is the policy of DOE to "provide safe and healthful workplaces and conditions of employment for all employees of DOE and DOE contractors." This order also provides that "line organizations are assigned basic responsibility for implementing the DOE environmental protection, safety, and health protection program." This order does not provide a mandatory regulation or policy that allowed no judgment or choice. Rather, it leaves discretion to employees of DOE with respect to how to provide a safe and healthful workplace for its employees and the employees of the contractors. It gives basic responsibility for implementing worker protection programs to DOE line organizations, **[*23]** but it also clearly affords them discretion in how to implement those programs.

(2) DOE Order 5480.1A (1981). This order establishes the "Environmental Protection, Safety and Health Protection Program for Department of Energy (DOE) Operations." The order provides that DOE has authority to establish and enforce environmental protection, safety, and health protection program requirements. It again describes the policy of DOE to provide safe and healthful workplaces and conditions of employment for all employees of DOE and its

contractors. It also gives DOE "line management" responsibility for assuring that "DOE and Federal environmental protection, safety quality assurance, and health protection policies, directives and orders are adhered to continuously and vigorously in all DOE operations." DOE Program Secretarial Officers are also responsible for implementation of the Federal Employee Occupational Safety and Health Program. They are also required to "take such action as may be appropriate to assure safety, including directing the field office manager to curtail and suspend their operations when, in their opinion, such operation would result in undue environmental protection, safety, **[*24]** or health protection risks." Further, the order directs that heads of field organizations shall take such action as may be appropriate to assure safety, including curtailment and suspension of operations when, in their opinion, operation would result in undue environmental protection, safety, or health protection risks. They are further required to execute programs and assure that contractors and their subcontractors execute programs and policies in a manner that shall include compliance with prescribed environmental protection, safety, and health regulations.

This order also requires DOE employees to establish an industrial hygiene program to preserve employee health and well-being. It requires a DOE industrial hygienist to identify and document potential occupational health hazards, carry out periodic walk through surveys, document information provided by inter-organizational communication and coordination, and review proposed projects and facilities. Finally, the order provides that the affected employee "shall be notified promptly of any exposures or potential exposures exceeding the standards of Chapter 1 of this Order."

Again, with respect to this order, there are no mandatory **[*25]** regulations which allegedly have not been followed by DOE employees. They established the programs and set the standards which were required to be established. Plaintiffs simply disagree that these standards and programs as established sufficiently protected their health concerns. For example, plaintiffs do not allege that employees were exposed to levels of beryllium exceeding the standards of Chapter 1 of DOE Order 5480.1A, but DOE employees failed in their mandatory requirement to notify the employees of this exposure. Rather, it is apparently their position that the exposure standards in Chapter 1 were not sufficient to protect their health. Setting those exposure standards was a discretionary function based on policy considerations such as economics and the needs of national security.

(3) DOE Order 5480.10 (Chapter X of Order 5480.1A) (1985). This order states that it is the policy of the Department of Energy to provide places and conditions of employment that are free from or protected against recognized hazards that cause or are likely to cause sickness, impaired health and well-being, or significant discomfort and inefficiency among workers or those with whom they come into **[*26]** contact. The order requires an industrial hygiene program which has features such as requirements to identify and document existing and potential occupational health hazards through knowledge and assessment of the operations, periodic walk-through surveys, information provided by inter-organizational communication, review of proposed projects, facilities, engineering plans and specifications, and maintenance of a hazards inventory or tracking system. The order provides that control measures shall be implemented when it is determined that potential health hazards exist and the industrial hygiene staff shall formally recommend control measures to the first level supervisor who must respond promptly. The order also requires that the program shall include written notification of employees of environmental monitoring results when the results indicate that the employees are exposed above permissible limits. The order also provides for training to include information on operations that may lead to exposure, the potential health effects of the hazard, the content of applicable standards, and the purpose and results of environmental monitoring. That training is to be updated and repeated periodically. **[*27]**

Again, the identification of health hazards, the control measures to be taken, and the type of employee education to be provided are not mandatory requirements. It is within the discretion of DOE employees to implement appropriate control measures, appropriately

educate the employees, and appropriately monitor exposures.

(4) DOE Order 5480.1B (1986) [canceled by DOE Order 440.1 (1995)]. This order requires DOE line management to be responsible for effective Environment Safety and Health performance in their programs. It provides that the Assistant Secretary for Environment, Safety and Health shall curtail or suspend operations at DOE facilities when a clear and present danger exists to workers or members of the public. Again, this order gives to a DOE employee discretion regarding when to curtail or suspend operations at the DOE facilities. That employee must make a decision regarding when a clear and present danger exists and this decision is guided by economic and defense related policy considerations.

(5) DOE Order 440.1 (1995). This order requires that DOE elements shall implement a written worker protection program, provide workers the right, without reprisal, to have access **[*28]** to DOE worker protection publications, DOE-prescribed standards, and the organization's own worker protection standards or procedures applicable to the workplace, and to be notified when monitoring results indicate they were over-exposed to hazardous materials. It also provides that DOE is to identify existing and potential workplace hazards, assess worker exposure to such hazards through workplace monitoring, and for hazards identified in the workplace take abatement actions. There is no evidence in the record that the DOE employees failed to take any of these actions. Rather, plaintiffs are dissatisfied with the actions which were taken, contending that they were not sufficient to protect them.

(6) DOE Order 5483.1 (1979). This order requires DOE to establish a program to instruct all employees initially and periodically on matters pertaining to employee protections, establish a system that provides for meaningful employee participation in a safety and health program, establish a program to monitor the workplace for known toxic substances and harmful physical agents, advise employees or their authorized representatives that they are to be provided an opportunity to observe monitoring **[*29]** or measuring for toxic materials and have access to the results thereof, and notify the employee promptly of any information indicating that an exposure to toxic materials or harmful physical agents may have exceeded DOE standards. Plaintiffs do not contend that any employees were ever exposed to beryllium in levels that exceeded DOE standards, yet they were not advised of that exposure. Rather, their complaint is that the DOE standards were improperly high, and that any exposure to respirable beryllium poses an unacceptable risk. However, the decision on the appropriate DOE standard is a discretionary one based on policy considerations. Again, this order provides that employees would be notified promptly of any information indicating that an exposure to toxic materials or harmful physical agents may have exceeded DOE standards. However, there is no claim made that they were subjected to exposures in excess of DOE standards and not notified.

(7) DOE Order 5483.1A (1983). This order provides initially that the provisions of OSHA do not apply to the working conditions of DOE contractor employees since DOE exercises statutory authority to prescribe and enforce safety and health standards **[*30]** at these facilities. This order also requires contractors to fully inform their employees of rights, protections, obligations and responsibilities as required by Chapter 1 and to inform the employees of any information indicating their radiation dose or exposure to toxic materials or harmful physical agents may have exceeded the limits specified by DOE prescribed OSHA standards. Finally, in the event a DOE inspector discovers a situation which presents an imminent danger to contractor employee's safety or health, he or she shall take immediate and effective remedial action to assure that employees are removed from the danger area and/or that the danger is eliminated. This order also contains an element of discretion in that the DOE inspector must make a determination of when a situation which presents an imminent danger to a contractor employee's safety and health exists, and this determination could be based on policy considerations.

Some of the plaintiffs have set out ten areas in which the government failed in a particular

duty to the plaintiffs. Several of the ten identified areas are repetitive, and for purposes of analysis the court has identified five basic claims against the **[*31]** United States as follows:

> (1) Failure to warn the plaintiffs of dangers of beryllium, particularly that the applicable OSHA standard was not at a level that would protect all workers exposed to those levels from chronic beryllium disease;
>
> (2) Failure to adequately research the level at which beryllium exposure would be without danger;
>
> (3) Failure to establish workplace procedures to protect the plaintiffs from exposures to beryllium;
>
> (4) Failure to monitor respirable levels of beryllium in the K-25 or Y-12 Plants or to evaluate epidemiological studies of the workers; and
>
> (5) Failure to require the contractor take steps such as to monitor the medical condition of its employees and use adequate safety devices and procedures to protect them.

First, with respect to plaintiffs' claim that DOE employees failed to warn them of the dangers of beryllium, particularly that the applicable OSHA standard was not at a level that would protect all workers from chronic beryllium disease, it is clear that failing to provide the contractor's employees with such warnings did not violate any mandatory regulatory or statutory requirements. Further, any decision with respect to warning the **[*32]** contractor's employees of the dangers of beryllium was a discretionary one. With respect to the alleged failure to warn, the government's decision with regard to the dangers that might result from the exposure to low levels of beryllium is a policy decision and, therefore, protected by the discretionary function exception.

Second, the plaintiffs contend that the government failed to adequately research the level at which beryllium exposure could occur without danger to the plaintiffs. The decision by government officials with regard to how much research or the type of research to do regarding acceptable levels of beryllium exposure are clearly discretionary decisions which are subject to policy considerations.

In addition, the alleged failure of the United States to establish workplace procedures that would protect the plaintiffs from any danger are discretionary decisions based on policy considerations such as economics and the needs of national defense to keep a strong nuclear weapons arsenal. Accordingly, the government's alleged failure to establish workplace procedures to protect the plaintiffs from harm are protected by the discretionary function exception.

Again, the government's **[*33]** alleged failure to monitor respirable levels of beryllium in the plants or to evaluate epidemiological studies of workers are discretionary decisions based on policy considerations such as economics and the needs of national defense.

Finally, plaintiffs' claim that the government failed to require its contractor to take such steps as monitoring the medical condition of the contractor's employees and using adequate safety devices and procedures to protect them. ✠The United States Court of Appeals for the Sixth Circuit has explicitly held that the discretionary function exception is applicable to alleged negligence in the delegation of safety responsibilities to a government contractor. _Totten v. United States_, 806 F.2d 698, 701 (6th Cir. 1986). Cases such as _Totten_ recognize that the government may delegate such duties to government contractors and no exception is created

if the dangers are the result of "dangerous instrumentalities." In addition, the United States may not be liable for negligent failure to supervise its contractors. ✝The discretionary function exception encompasses government decisions on how and how much to supervise the safety procedures of independent **[*34]** contractors. *Varig Airlines*, 467 U.S. 797, 104 S. Ct. 2755, 81 L. Ed. 2d 660 (FAA's decision to delegate responsibility for inspection for inspecting aircraft to manufacturing manager and to conduct "spot check" monitoring of manufacturer are discretionary acts). Moreover, the retention of open-ended supervisory authority that "allow[s] the government employees to exercise choice and discretion" does not render the exception inapplicable. *Domme v. United States*, 61 F.3d 787, 791 (10th Cir. 1995).

In summary, the court finds that none of the conduct alleged by the plaintiffs with respect to the government employees demonstrates that the government violated any mandatory statutory or regulatory provisions with respect to which it had no discretion. Rather, all of the plaintiffs' claims of negligence by government employees challenge actions or omissions on the part of the government employees which involve elements of discretion. The court further finds that that discretion was of the kind that the discretionary function exception was designed to shield; that is, policy decisions. The decision of the United States regarding warnings to the plaintiffs of the dangers of beryllium at **[*35]** the levels to which they were exposed, the decision of government employees regarding the amount of research to do regarding safe levels of beryllium, the United States' decision to utilize an independent contractor to insure safety at the Y-12 and K-25 Plants, the decisions on what workplace procedures were necessary to protect the plaintiffs from harm, the decisions on monitoring respirable levels of beryllium in the plants, and evaluating epidemiological studies of workers, and the decisions on what safety steps to require its contractors to take were all decisions in which policy considerations played a factor. Whether or not the discretion involved was abused is irrelevant. *See* 28 U.S.C. § 2680(a). n1

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 The court is aware that many of the plaintiffs may have suffered very severe injuries as a result of performing dangerous and even heroic work essential to our national defense. President William Jefferson Clinton, in a memorandum dated July 15, 1999, observed that contractor personnel working for the Department of Energy and its predecessor agencies who helped our nation win the Cold War often faced dangerous working conditions and a small number of them were exposed to beryllium and subsequently contracted chronic beryllium disease. The President's memorandum announced that his administration would submit draft legislation to Congress which would create a new program to give DOE contractor employees with CBD and beryllium sensitivity the same benefits now available to federal employees under the Federal Employee Compensation Act (FECA), which currently provides federal workers a proportion of lost wages, medical costs, rehabilitation, and training. On November 16, 1999, the Clinton administration forwarded to Congress legislation which would, if enacted, provide benefits to employees of contractors with CBD, including an option for covered employees to elect a lump sum payment of $ 100,000. The decision with respect to whether the United States should compensate these contractor workers is one that must be made by Congress, as are all decisions with regard to the extent to which the federal government will waive its sovereign immunity. The only questions appropriate for this court's consideration are whether the United States has already waived its sovereign immunity, given the discretionary function exception and the independent contractor exceptions to liability under the FTCA.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - **[*36]**

V.

*The Government Contractor Exception*

The United States contends that many of the claims of negligence brought against its employees are actually allegations of negligent acts or omissions by its independent contractors, Union Carbide or Lockheed Martin, for which the United States has no liability. The court agrees.

*Under the FTCA, the United States is subject to liability for the negligence of an independent contractor only if it can be shown that the government had authority to control the detailed physical performance of the contractor and exercised substantial supervision over its day-to-day activities. *See United States v. Orleans*, 425 U.S. 807, 814-15, 48 L. Ed. 2d 390, 96 S. Ct. 1971 (1976). This exception is based on the language of the statute which provides that the United States is subject to liability for damages "caused by the negligent or wrongful act or omission of any employee of the Government. ..." 28 U.S.C. § 1346(b). *The FTCA defines "employee of the Government" as any "employees of any federal agency. ..." 28 U.S.C. § 2671. "Federal agency" is defined as

> (e) Executive departments, the **[*37]** military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, that does not include any contractor with the United States.

*Id.* Thus, *under the FTCA, the United States cannot be found liable for the negligence of its independent contractors. "There must be substantial supervision over the day-to-day operations of the contractor in order to find that the individual is acting as a government employee." *Laurence v. United States*, 59 F.3d 112, 114 (9th Cir. 1995). Upon a review of the evidence, it is evident that there was not substantial supervision over the day-to-day operations of Union Carbide, Martin Marietta or Lockheed Martin by the Department of Energy or its predecessor federal agencies. There were only several hundred DOE employees at the Y-12 and K-25 Plants who had oversight responsibility over several thousand employees of the contractors. This was in accordance with DOE Order 5480.19, which states that DOE's supervision of contract performance consists of "establishing written standards and operations, periodically monitoring and assessing performance, **[*38]** and holding personnel accountable for their performance."

*The United States Supreme Court has indicated that detailed regulation and inspections are no longer evidence of an employee relationship. *See Orleans*, 425 U.S. at 815. The ability to compel compliance with federal regulations does not change a contractor's personnel into federal employees. *Letnes v. United States*, 820 F.2d 1517, 1519 (9th Cir. 1997). The court concludes that the United States did not engage in substantial supervision over the day-to-day operations of its contractors with regard to the K-25 and Y-12 Plants such that those contractors were acting as government employees. Accordingly, the United States cannot be liable under any *respondeat superior* theory for any negligence on the part of its contractors.

VI.

*Conclusion*

Because all claims brought by the plaintiffs in these cases against the United States are protected by the discretionary function exception, this court lacks subject matter jurisdiction over the FTCA claims, and these claims will be dismissed pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure. Further, under the independent contractor exception, **[*39]** the United States cannot be liable for the negligence of any of the employees of its independent contractors. Accordingly, the following motions to dismiss for lack of subject matter jurisdiction will be granted: Court File # 149 in Civil Action No. 3:94-cv-369; Court File # 38

in Civil Action No. 3:97-cv-105; Court File # 62 in Civil Action No. 3:97-cv-593; Court File # 10 in Civil Action No. 3:98-cv-652; Court File # 16 in Civil Action No. 3:95-cv-505; Court File # 3 in Civil Action No. 3:97-cv-141; and Court File # 3 in Civil Action No. 3:97-cv-605.

As the United States is the only party, the following actions will be dismissed: Civil Action No. 3:95-cv-505; Civil Action No. 3:96-cv-459; Civil Action No. 3:96-cv-254; Civil Action No. 3:96-cv-253; Civil Action No. 3:96-cv-252; Civil Action No. 3:96-cv-251; Civil Action No. 3:97-cv-141; and Civil Action No. 3:97-cv-605.

Order accordingly.

James H. Jarvis,

UNITED STATES DISTRICT JUDGE

**ORDER**

For the reasons set forth in the Memorandum Opinion this day passed to the Clerk for filing, it is hereby ORDERED that the following motions to dismiss for lack of subject matter jurisdiction will be granted: Court File # 149 in **[\*40]** Civil Action No. 3:94-cv-369; Court File # 38 in Civil Action No. 3:97-cv-105; Court File # 62 in Civil Action No. 3:97-cv-593; Court File # 10 in Civil Action No. 3:98-cv-652; Court File # 16 in Civil Action No. 3:95-cv-505; Court File # 3 in Civil Action No. 3:97-cv-141; and Court File # 3 in Civil Action No. 3:97-cv-605.

It is further ORDERED that, as the United States is the only party, the following actions will be dismissed: Civil Action No. 3:95-cv-505; Civil Action No. 3:96-cv-459; Civil Action No. 3:96-cv-254; Civil Action No. 3:96-cv-253; Civil Action No. 3:96-cv-252; Civil Action No. 3:96-cv-251; Civil Action No. 3:97-cv-141; and Civil Action No. 3:97-cv-605.

James H. Jarvis,

UNITED STATES DISTRICT JUDGE

Source: All Sources > Federal Legal - U.S. > District Court Cases - By State > **TN Federal District Courts** ❶
Terms: **morgan w/sent brush w/sent wellman** (Edit Search)
View: Full
Date/Time: Monday, November 12, 2001 - 2:50 PM EST

About LexisNexis | Terms and Conditions

Copyright © 2001 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

CERTIFICATE OF SERVICE

NOV 16 2001

FILED
CLERK'S OFFICE

I hereby certify that I have served a true and exact copy of the foregoing Plaintiff's Supplemental Brief in Support of Motion to Vacate the Conditional Transfer Order by United States Mail, first-class postage pre-paid to the following:

Michael J. King, Esq.
Woolf, McClane, Bright, Allen & Carpenter
900 Gay Street, 9th Floor
Post Office Box 900
Knoxville, Tennessee  37901

Thomas A. Bickers, Esq.
800 S. Gay Street
Suite 1100
Knoxville, Tennessee 37929

Stephen Daves, Esq.
David L. Hill, Esq.
O'Neil, Parker & Williamson
416 Cumberland Avenue
Post Office Box 217
Knoxville, Tennessee  37901

James Gandy, Esquire
Pierce, Herns, Sloan & McLeod, LLC
P.O. Box 22437
Charleston, SC  29413

Steven L. Hurdle, Esq.
Arnett, Draper & Hagood
P.O. Box 300
Knoxville, Tennessee 37901

Martin L. Ellis, Esq.
William D.Vines, III, Esq.
Butler, Vines & Babb
Post Office Box 2649
Knoxville, Tennessee  37901

John Rose, Esq.
Wyatt, Tarrant & Combs, LLP
2525 West End Avenue
Suite 1500
Nashville, Tennessee 37203

John W. Baker, Esq.
Baker, McReynolds, Byrne, O'Kane,
Shea & Townsend
Post Office Box 1708
Knoxville, Tennessee 37901-1708

Russell B. Morgan, Esq.
Boult, Cummings, Conners & Berry, PLC
P.O. Box 198062
Nashville, Tennessee 37219

Harold T. Pinkley, Jr.
Miller & Martin
1200 First Union Tower
150 Fourth Avenue, North
Nashville, Tennessee 37219

Debra L. Fulton
Frantz, McConnell & Seymour
550 West Main Street, Suite 500
Knoxville, Tennessee 37902



and, to the following attorneys on the Panel Service List (Excerpted from CTO-206), Docket No. 875, In Re Asbestos Products Liability Litigation (No. VI):

Richard C. Binzley, Esq.
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, Ohio 44114

Edward J. Cass, Esq.
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, Ohio 44115

Adam M. Chud, Esq.
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, D.C.  20036

David A. Damico, Esq.
Burns, White & Hickton
2400 Fifth Avenue Place
120 Fifth Avenue
Pittsburgh, Pennsylvania 15222

Raymond P. Forceno, Esq.
Forceno & Hannon
Philadelphia Bourse Building
Suite 1000
Independence Mall East
Philadelphia, Pennsylvania 19106

Ellen B. Furman, Attorney
Goldfein & Joseph
1600 Market Street
33rd Floor
Philadelphia, Pennsylvania 19103

Susan M. Hanson, Attorney
Stich, Angell, Kreidler & Muth, P.A.
The Crossings, Suite 120
250 2nd Avenue South
Minneapolis, Minnesota 55401

Reginald S. Kramer, Esq.
Oldham & Dowling
195 South Main Street
Suite 300
Akron, Ohio 44308

David C. Landin, Esq.
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219

Gene Locks, Esq.
Greitzer & Locks
1500 Walnut Street
Philadelphia, Pennsylvania

Ronald L. Motley, Esq.
Ness, Motley, Loadholt, Richardson
& Poole
28 Bridgeside Boulevard
P.O. Box 1792
Mt. Pleasant, South Carolina 29465

John J. Repcheck, Esq.
Marks, O'Neil
3200 Gulf Tower
707 Grant Street
Pittsburgh, Pennsylvania 15219

John D. Roven, Esq.
John Roven & Associates
2190 North Loop West
Suite 410
Houston, Texas 77018

Richard D. Schuster, Esq.
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216

Neil Selman, Esq.
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, California 90025

Robert N. Spinelli, Esq.
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, Pennsylvania 19102

Robert E. Swickle, Esq.
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
Detroit, Michigan 48226

Andrew J. Trevelise, Esq.
Reed Smith, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, Pennsylvania 19103

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

This __14__ day of __November__, 2001.

_____
ATTORNEY

11