JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**NOV 3 0 2001**

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION** | MDL Docket No. 875 |

| | |
|---|---|
| MARILYN TRIPLETT, Executrix of the Estate of ) | |
| JAMES K.TRIPLETT deceased, and ) | |
| MARILYN E. TRIPLETT, individually ) | |
| ) | |
| Plaintiff ) | Case No: 3:01-CV-11-S |
| ) | W.D. Kentucky |
| v. ) | Judge Charles R. Simpson, III |
| ) | |
| MINNESOTA MINING AND ) | |
| MANUFACTURING CO. ) | |
| ) | |
| Defendant ) | |

### MINNESOTA MINING AND MANUFACTURING COMPANY'S MOTION AND BRIEF FOR TRANSFER OF CASE TO THE EASTERN DISTRICT OF PENNSYLVANIA FOR INCLUSION IN THE MDL-875 DOCKET AS A TAG-ALONG ACTION

\* \* \* \* \*

Comes now the Defendant, Minnesota Mining and Manufacturing Company ("3M"), by

counsel, pursuant to 28 U.S.C. § 1407 and R.P.J.P.M.L. 7.5(e), for its motion to transfer this case

to the Eastern District of Pennsylvania for inclusion in the MDL-875 Docket as a "tag-along action"

states as follows:

OFFICIAL FILE COPY
IMAGED DEC 3 '01

## FACTUAL BACKGROUND

On January 4, 2001, the Plaintiff, Marilyn E. Triplett, Executrix of the Estate of James K. Triplett and Marilyn E. Triplett, individually, filed a personal injury and wrongful death action against 3M in the United States District Court for the Western District of Kentucky. The Complaint set forth claims for strict products liability, negligence, loss of consortium and wrongful death. It is clear from the face of the Complaint that the Plaintiff is alleging her decedent, James K. Triplett, sustained personal injuries and then death as a result of his exposure to "carcinogenic dust." This vague reference to "carcinogenic dust" was obviously designed to avoid referral to the MDL.

Plaintiff's Complaint alleges that 3M manufactured a dust mask which was used by the decedent during his employment at Colgate-Palmolive Company. Although not stated in the Complaint, Plaintiff has subsequently alleged that the product used was a 3M 8500 nuisance dust mask. Plaintiff further alleged that decedent used the dust mask to protect him against the inhalation of "carcinogenic dust" and that the masks were defective and caused decedent to inhale large quantities of dust. (Tab 1, Plaintiff's Complaint). In the Complaint, Plaintiff by design did not identify what type of "carcinogenic dust" that allegedly caused Mr. Triplett's lung cancer and eventual death.

However, since the Complaint was filed, counsel for Plaintiff has admitted that the "carcinogenic dust" referred to in Plaintiff's Complaint included asbestos. (Tab 2, Byron N. Miller's Affidavit). Plaintiff also admits in response to 3M's discovery requests that James K. Triplett was "required to remove asbestos-containing pipe covering, block, and cement in order to perform work on steam lines and on other insulated lines and vessels" while an employee at Colgate-Palmolive. It is claimed that as a result of such asbestos exposure Mr. Triplett developed lung cancer. (Tab 3, Plaintiff's Answers to Interrogatories 16 through18). Moreover, Plaintiff's position that asbestos

exposure was the cause of James K. Triplett's lung cancer is specifically delineated in a letter dated

October 13, 2001 from Plaintiff's counsel to 3M's counsel. The letter acknowledges that "[w]e have

always been forthright that **"Mr. Triplett's lung cancer was caused in part by his exposure to**

**asbestos,** since the 3M dust mask failed to protect him...."   (Tab 4, October 13, 2001 letter)

(emphasis added).   Plaintiff seeks damages for illnesses allegedly contracted by the decedent, one

of which was described by Plaintiff's counsel as "bilateral pleural asbestosis." (See Tab 2, Byron

Miller's Affidavit).

## ARGUMENT

The Judicial Panel of Multidistrict Litigation, pursuant to 28 U.S.C. § 1407, centralized all

pending federal court actions which concerned asbestos related personal injury and/or wrongful

death to the MDL-875 docket in the United States District Court for the Eastern District of

Pennsylvania.   The ruling by the Panel, in fact, called  the **"centralization in a single district of**

**all pending federal personal injury and wrongful death asbestos actions... necessary**." *In Re*

*Asbestos Products Liability Litigation,* 771 F.Supp. 415, 420 (J.P.M.L. 1991). The Panel's authority

under § 1407 is to transfer cases for "pre-trial proceedings."  28 U.S.C. § 1407(a) reads:

> When civil actions *involving one or more common questions of fact are pending in different districts*, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings.  Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that *transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of the such actions.*

28 U.S.C. § 1407(a). (emphasis added).

The decision that asbestos related personal injury and wrongful death cases should be

coordinated and consolidated into one district for pretrial proceedings has been decided.  It is not

necessary for a case to have a majority of common factual issues with previously transferred cases

3

to be considered a tag-along action. It is also not fatal to the transfer of a tag-along action that there exists additional or differing legal theories as long as the underlying action arises from a common factual nexus. Therefore, it is only necessary for the Panel to determine if a case filed after *In Re Asbestos Products Liability Litigation*, 771 F.Supp. 415 (J.P.M.L. 1991) -- like the *Triplett* case -- has the same common factual nexus as the cases previously transferred to the MDL-875 docket. The threshold question then becomes whether the case in which a transfer is being sought involves a claim for personal injury or wrongful death associated with exposure to asbestos. In this case, the answer is a clear and resounding yes.

A brief review of Plaintiffs' Complaint, discovery responses and a letter from Plaintiff's counsel reveals that **this case does in fact involve common questions of fact with cases already assigned to the asbestos multidistrict litigation (MDL-875 docket),** pending before the United States District Court for the Eastern District of Pennsylvania. The MDL-875 docket was established by the Panel and was meant to include all federal asbestos personal injury and wrongful death actions. *In Re Asbestos Products Liability Litigation,* 771 F.Supp. 415, 420 (J.P.M.L. 1991). It was not merely created to deal only with cases which involve manufacturers being sued because of their asbestos containing products. In fact, the Judicial Panel for Multidistrict Litigation did not exclude any product liability action dealing with asbestos as long as personal injuries or wrongful death was involved. **The Triplett case certainly fits into the category of cases which are necessary to include in the MDL-875 Docket as a tag-along action.**

Here, the action filed by the Plaintiff concerns personal injury and wrongful death claims that Plaintiff alleges are related to asbestos exposure. Even though Plaintiff's counsel wished to avoid transfer of this case to the MDL-875 Docket by referring to asbestos as "carcinogenic dust" such ambiguous terminology cannot change the facts of this case as developed through initial discovery.

4

The Plaintiff, in answering discovery requests, acknowledged that Mr. Triplett was exposed to asbestos, and judicially admitted that his lung cancer was caused, at least in part, by asbestos. (Tab 2). Counsel for Plaintiff affirmed the causal connection by admitting in a letter dated October 13, 2001 that "Mr. Triplett's lung cancer was caused in part by his exposure to asbestos." (Tab 3).

There is no doubt that this case raises questions of fact which are common to the previously transferred actions concerning asbestos related injuries. In fact, as this Court knows, 3M currently has hundreds of cases pending in the MDL-875 Docket. Most of these cases involve product liability complaints regarding 3M masks or respirators. The Panel under R.P.J.P.M.L. 7.5(e) places the burden on parties such as 3M to notify the Panel of tag-along actions. The Judicial Panel of Multidistrict Litigation organized the asbestos MDL to lessen the burden on both the courts and the parties involved in asbestos litigation. In order to lessen the burden, the parties to the suit must take action to see that the case is rightfully transferred. 3M is accepting that responsibility by notifying the Panel of the present case. Because this case is in the early stages of pretrial proceedings, transferring it to the asbestos MDL Docket as a "tag-along action" will best serve the convenience of the parties, witnesses, and will promote a just and efficient resolution to this litigation.

## CONCLUSION

It is undisputed that this action involves allegations that Plaintiff's husband, James K. Triplett, sustained personal injuries (asbestosis and lung cancer) and death as a result of his exposure to asbestos. Wherefore, 3M respectfully requests that the Panel transfer this case to the Eastern District of Pennsylvania for inclusion in the MDL-875 Docket as a tag-along action.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV 3 0 2001

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

MDL Docket No. 875

IN RE: ASBESTOS PRODUCTS
LIABILITY LITIGATION

| PLAINTIFFS | DEFENDANTS | DIVISION/ CITY | CIVIL ACTION NO. | JUDGE | INDIVIDUAL OR CLASS ACTION |
|---|---|---|---|---|---|
| Marilyn Triplett, Executrix of the Estate of James K.Triplett, Deceased, and Marilyn E. Triplett, Individually | Minnesota Mining and Manufacturing Co. | W.D. Kentucky | Case No: 3:01-CV-11-S | Judge Charles R. Simpson, III | Individual |

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV 3 0 2001

FILED
CLERK'S OFFICE

Respectfully submitted,

THOMPSON  MILLER & SIMPSON PLC

_____

Byron N. Miller
The LG&E Building, Suite 1700
220 W. Main Street
Louisville, Kentucky 40202
(502) 585-9900
COUNSEL FOR DEFENDANT
MINNESOTA MINING AND
MANUFACTURING COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was served via U.S. Mail this 29th
day of November, 2001 upon the following:

| Counsel | Phone<br>Fax | Description |
|---|---|---|
| Wodka, Steven H.<br>577 Little Silver Point Road<br>P.O. Box 66<br>Little Silver, New Jersey 07739-0066 | (732) 530-2815<br>(732) 530-3627 | Co-Counsel for Plaintiff |
| Scott, David V.<br>Scott & Forrest<br>409 Bank Street<br>P. O. Box 785<br>New Albany, Indiana 47151-0785 | (812) 945-9151<br>(812) 945-6131 | Co-Counsel for Plaintiff |
| Priddy, Alton D.<br>Priddy, Isenberg, Miller & Meade<br>P.S.C.<br>Suite 800<br>429 W. Muhammad Ali Blvd.<br>Louisville, Kentucky 40202 | (502) 587-8600<br>(502) 569-2744 | Co-Counsel for Plaintiff |
| United States District Court<br>Western District of Kentucky<br>106 Gene Snyder, U. S. Courthouse<br>601 W. Broadway<br>Louisville, KY 40202-2249 | (502) 625-3500<br>(502) 625-3880 | |

6

| Counsel | Phone Fax | Description |
|---|---|---|
| Locks, Gene<br>Greitzer & Locke<br>1500 Walnut Street<br>Philadelphia, PA 19102 | (215) 893-0100 | Plfs. Liaison Counsel |
| Binzley, Richard C.<br>Thompson Hine, LLP<br>127 Public Square<br>3900 Key Center<br>Cleveland, OH 44114 | (215) 566-5579<br>(216) 566-5583 | Lead Counsel for Defts. in the Seamen Cases |
| Case, Edward J.<br>Gallagher, Sharp, Fulton & Norman<br>Bulkey Building<br>7th Floor<br>1501 Euclid Avenue<br>Cleveland, OH 44115 | (216) 241-5310 | Counsel for the Goodall Defts. |
| Damico, David A.<br>Burns, White & Hickton<br>2400 Fifth Avenue Place<br>120 Fifth Avenue<br>Pittsburgh, PA 15222 | (412) 394-2500 | FELA Defts. |
| Forceno, Raymond P.<br>Forceno & Hannon<br>Philadelphia Bourse Building<br>Suite 1000<br>Independence Mall East<br>Philadelphia, PA 19106 | (215) 732-1630 | FELA Pltfs. |
| Furman, Ellen E.<br>Goldfein & Joseph<br>1600 Market Street<br>33rd Floor<br>Philadelphia, PA 19103 | (215) 979-8200<br>(215) 979-8201 | National Counsel |
| Hanson, Susan M.<br>Stitch, Angell, Kridler & Muth, P.A.<br>The Crossings, Suite 120<br>250 2nd Avenue South<br>Minneapolis, MN 55401 | (612) 333-6251 | National Counsel |

| Counsel | Phone<br>Fax | Description |
|---|---|---|
| Landin, David C.<br>Hunton & Williams<br>Riverfront Plaza<br>East Tower<br>951 East Byrd Street<br>Richmond, VA 23219 | (804) 788-8200<br>(804) 877-8218 | Peripheral Deft. |
| Motley, Ronald L.<br>Ness, Motley, Loadholt, Richardson &<br>Poole<br>28 Bridgeside Blvd.<br>P.O. Box 1792<br>Mt. Pleasant, SC 29465 | (843) 216-9000 | Pltfs. Liaison Counsel |
| Kramer, Reginald S.<br>Oldham & Dowling<br>195 South Main Street<br>Suite 300<br>Akron, OH 44308 | (330) 762-7377<br>(330) 762-7390 | National Counsel |
| Repcheck, John J.<br>Marke O'Neill<br>3200 Gulf Tower<br>707 Grant Street<br>Pittsburgh, PA 15219 | (412) 391-6171 | Peripheral Deft. |
| Roven, John D.<br>John Roven & Associates<br>2190 North Loop West<br>Suite 410<br>Houston, TX 77018 | (713) 465-8522<br>(713) 465-3658 | FELA Pltfs. |
| Schuster, Richard D.<br>Vorys, Jasons, McGuire & Spinelli,<br>L.L.P.<br>52 East Gay Street<br>P.O. Box 1008<br>Columbus, OH 43216 | (614) 464-6438 | National Coordinating Counsel<br>for BF Goodrich Co. |
| Spinelli, Robert N.<br>Kelley, Jasons, McGuire & Spinelli,<br>L.L.P.<br>Centre Square West<br>19th Floor<br>Philadelphia, PA 19102 | (215) 854-0658<br>(215) 854-8434 | Defts. Liaison Counsel |

| Counsel | Phone<br>Fax | Description |
|---|---|---|
| Swickle, Robert E.<br>Jaques Admiralty Law Firm, P.C.<br>1370 Penobscot Building<br>Detroit, MI 48226 | (313) 961-1080 | National Counsel |
| Trevelise, Andrew J.<br>Reed Smith LLP<br>2500 One Liberty Place<br>1650 Market Street<br>Philadelphia, PA 19103 | (215) 851-8250 | Defts. Liaison Counsel |
| Selman, Neil<br>Selman, Breitman & Burgess<br>11766 Wilshire Boulevard<br>Sixth Floor<br>Los Angeles, CA 90025 | | National Counsel |
| Weston, II., James K.<br>Tom Riley Law Firm<br>4040 First Avenue, N.E.<br>P.O. Box 998<br>Cedar Rapids, IA 52406 | (319) 363-4040 | National Counsel for Raymark Industries, Inc. per letter dated 4/16/97 |
| Chud, Adam.<br>Shea & Gardner<br>1800 Massachusetts Avenue, N.W.<br>Washington, DC 20036 | (202) 828-3005<br>(202) 828-2195 | JPML Service Counsel for Center for Claims Resolution |

Byron N. Miller
COUNSEL FOR DEFENDANT

9

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV 3 0 2001

FILED
CLERK'S OFFICE

1

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY

---------------------------------------

MARILYN E. TRIPLETT, Executrix of the   :
Estate of JAMES K. TRIPLETT, deceased,
and MARILYN E. TRIPLETT, Individually,   :

      Plaintiff,                     :

vs.                              :

MINNESOTA MINING AND MANUFACTURING CO.,  :

      Defendant.                  :

---------------------------------------

Civil Action No.

3:01CV-11-S

RECEIVED
JAN 15 2001
K.M.J.

01 JAN -4 PM 2:17

## PLAINTIFF'S ORIGINAL COMPLAINT
AND JURY TRIAL DEMAND

The Plaintiff, MARILYN E. TRIPLETT, Executrix of the Estate of JAMES K. TRIPLETT, deceased, and MARILYN E. TRIPLETT, Individually, by her attorneys, STEVEN H. WODKA, ESQ. and SCOTT & FORREST, for her complaint against the defendant, alleges:

### I.   JURISDICTION

1. Jurisdiction over the subject matter of this case is based upon the diversity of the citizenship of the parties as set forth under 28 U.S.C. §1332(a), and the amount in controversy which exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand ($75,000.00) Dollars.

## II.   VENUE

2.   Defendant MINNESOTA MINING AND MANUFACTURING COMPANY (hereinafter, "3M") is registered to do business in the Commonwealth of Kentucky and its registered agent resides within the district in Louisville, Kentucky.  The decedent, JAMES K. TRIPLETT, suffered from his injuries and died while residing within the district in Louisville, Kentucky.  In addition, the Plaintiff, MARILYN E. TRIPLETT, is a citizen of the Commonwealth of Kentucky and resides within the district at 14105 Bentley Court in Louisville, Kentucky.  Therefore, venue is proper in the Western District of Kentucky under 28 U.S.C. §1391(a).

## III.   PARTIES

3.   That at all times hereinafter mentioned, the Plaintiff, MARILYN E. TRIPLETT, was and still is a citizen of the Commonwealth of Kentucky and the widow of JAMES K. TRIPLETT. That on December 20, 2000, the plaintiff, MARILYN E. TRIPLETT, was appointed and qualified as Executrix of the Estate of JAMES K. TRIPLETT pursuant to an order of the Jefferson County District Court.

4.   That upon information and belief, at all times hereinafter mentioned, the defendant MINNESOTA MINING AND MANUFACTURING COMPANY is a Delaware corporation with its

2

principal place of business in a state other than Kentucky; said

corporation may be served through its registered agent.

IV.   SUMMARY OF ACTION

5.   During the period of 1960 to 1994, JAMES K. TRIPLETT was

employed by the Colgate-Palmolive Company in Jeffersonville,

Indiana.   In the course of his employment, JAMES K. TRIPLETT

relied upon and used a dust mask in order to protect him against

the inhalation of carcinogenic dust.   This dust mask was

manufactured and marketed by defendant 3M.

6.   Unknown to JAMES K. TRIPLETT, this 3M dust mask was

defective in its design and was never certified by the United

States government for use with carcinogenic dust.

7.   As a result of his reliance upon the defective 3M dust

mask, JAMES K. TRIPLETT, inhaled great quantities of carcinogenic

dust which caused him to develop lung cancer which directly and

proximately caused his death on July 17, 1999 at the age of 56.

8.   JAMES K. TRIPLETT suffered permanent and total

disablement which impaired both his earning capacity and his

ability to enjoy a normal life.   JAMES K. TRIPLETT was caused to

endure severe pain and suffering, mental anguish, and depression.

JAMES K. TRIPLETT was forced to expend sums of money for medical

care and treatment.   The Estate of JAMES K. TRIPLETT has incurred

hospital, medical, nursing, funeral, and burial expenses for the decedent.

9.   This cause of action is predicated on products liability theories of strict liability and negligence, as more specifically set out herein.

## V.   CAUSES OF ACTION

## FIRST COUNT: STRICT LIABILITY OF DEFENDANT

10.   The Plaintiff repeats the allegations contained in paragraphs "1" through "9" of the Complaint.

11.   The 3M dust mask which JAMES K. TRIPLETT used was designed and manufactured by the defendant and subsequently sold, directly and indirectly, to the employer of JAMES K. TRIPLETT. The 3M dust mask left the hands of the defendant in a defective condition in that it failed to contain adequate instructions and warnings to the effect: (a) that death or serious physical harm would result if it was worn in an environment where harmful substances were present in the air, (b) that it would not protect the lungs, (c) that it would only provide comfort and not protection against harmful substances, and (d) that it was not certified by the government.

12.   Defendant 3M manufactured and/or distributed the 3M dust mask, which, without substantial change in its condition

4

after it was sold, was the producing cause of the injury to and death of JAMES K. TRIPLETT and his aforementioned damages.

13.   JAMES K. TRIPLETT was unaware of the defective condition of the 3M dust mask.  At the time when JAMES K. TRIPLETT used this product, such use was in a manner that was reasonably anticipated by the defendant.

## SECOND COUNT: NEGLIGENCE OF DEFENDANT

14.   The Plaintiff repeats the allegations contained in paragraphs "1" through "13" of the Complaint.

15.   The Plaintiff alleges that the defendant was negligent in the design, manufacture, production, testing and labeling of the aforementioned 3M dust mask in that the defendant, acting by and through its duly authorized agents, servants and employees, was guilty of the following acts and omissions, each of which were and do constitute negligence:

a.   Defendant 3M failed to adequately and timely warn JAMES K. TRIPLETT: (1) that death or serious physical harm would result if the 3M dust mask was worn in an environment where harmful substances were present in the air, (2) that the 3M dust mask would not protect the lungs, (3) that the 3M dust mask would only provide comfort and not protection against harmful substances, and (4) that the 3M dust mask was not certified by

5

the government;

b. Defendant 3M failed to properly design and manufacture said product for safe use under conditions of use that were reasonably anticipated;

c. Defendant 3M failed to properly and adequately test the said product before it was released for consumer use; and,

d. Defendant 3M failed to provide adequate instructions for the safe use of the product with the said product.

16. Each and all of the foregoing acts and omissions taken singularly or collectively were a direct and proximate cause of the injuries suffered by JAMES K. TRIPLETT and his subsequent death.

## VI.   <u>PUNITIVE DAMAGES</u>

17. The Plaintiff repeats the allegations contained in paragraphs "1" through "16" of the Complaint.

18. The actions and inactions of defendant MINNESOTA MINING AND MANUFACTURING COMPANY as specifically alleged herein above were aimed against the public as well as JAMES K. TRIPLETT, were grossly unjust and involved high moral culpability, and were of such a character as to indicate that they were the result of reckless, wanton, and willful disregard for the rights, welfare and safety of JAMES K. TRIPLETT.  Defendant 3M was aware that the

6

defective design of the 3M dust mask would likely result in serious injury or death to workers such as JAMES K. TRIPLETT. Therefore, defendant 3M is guilty of such negligence and conscious disregard for the rights of others for which it should be held liable in punitive and exemplary damages to the Plaintiff.

## VII.   LOSS OF CONSORTIUM

19.  The Plaintiff repeats the allegations contained in paragraphs "1" through "18" of the Complaint.

20.  At all times hereinafter mentioned, the Plaintiff, MARILYN E. TRIPLETT, was the spouse of the decedent JAMES K. TRIPLETT, and was entitled to his services, society, companionship, and consortium.

21.  As a direct and proximate result of the foregoing allegations, the Plaintiff MARILYN E. TRIPLETT has been deprived of the services, society, companionship, and consortium of the decedent JAMES K. TRIPLETT, and the care and comfort of his society because of his said injuries and death, and she underwent extreme shock, mental suffering, and anguish as a result of her husband's illness and death.

## VIII.   WRONGFUL DEATH

22.  The Plaintiff repeats the allegations contained in

paragraphs "1" through "21" of the Complaint.

23. The death of JAMES K. TRIPLETT was a direct and proximate consequence of the defendant's breach of its legal responsibilities.

24. JAMES K. TRIPLETT left a surviving spouse, MARILYN E. TRIPLETT, who was dependent upon him as of the date of death for her support and maintenance. MARILYN E. TRIPLETT has suffered and will continue to suffer such pecuniary losses.

## IX.   PRAYER FOR RELIEF

25. WHEREFORE, PREMISES CONSIDERED, the Plaintiff, MARILYN E. TRIPLETT, demands judgment against defendant MINNESOTA MINING AND MANUFACTURING COMPANY for compensatory and special damages in a sum in excess of $75,000.00, for punitive damages, for attorneys' fees, for her costs expended herein, for interest, and for such other and further relief both at law and in equity, to which the Plaintiff may show herself to be justly entitled.

## X.   JURY DEMAND

26. COMES NOW the Plaintiff, MARILYN E. TRIPLETT, and, pursuant to Rule 38 of the Federal Rules of Civil Procedure, demands that all issues of fact in this cause be tried to a properly impaneled jury.

8

Attorneys for Plaintiff


BY: _____
STEVEN H. WODKA
Attorney-At-Law
577 Little Silver Point Road
P. O. Box 66
Little Silver, NJ 07739-0066
(732) 530-2815


and


BY: _____
DAVID V. SCOTT
Scott & Forrest
409 Bank Street
P.O. Box 785
New Albany, IN 47151-0785
(812) 945-9151


ALTON D. PRIDDY
Priddy Isenberg Miller & Meade
800 Republic Building
429 W. Muhammad Ali Blvd.
Louisville, KY 40202
Of Counsel to Plaintiff


Dated: January 4 , 2001

9

2

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CAUSE NO. 3:01-CV-11-S**

MARILYN E. TRIPLETT, Executrix of the                                    PLAINTIFF
Estate of JAMES K. TRIPLETT, deceased,
and MARILYN E. TRIPLETT, Individually

v.                                  **AFFIDAVIT OF BYRON N. MILLER**

MINNESOTA MINING AND MANUFACTURING CO.,                    DEFENDANT

* * * * *

Affiant, Byron N. Miller, being first duly sworn, does hereby solemnly state as follows:

1.    I represent Minnesota Mining and Manufacturing Company in the above-styled action.

2.    On October 3, 2001, I spoke with Steven H. Wodka, the attorney representing the Plaintiff, Marilyn E. Triplett, Executrix of the Estate of James K. Triplett.

3.    In my telephone conversation with Mr. Wodka, he indicated that Mr. Triplett's exposure to asbestos began in 1976 when he became a pipefitter at the Colgate-Palmolive Plant in Jeffersonville, Indiana. Mr. Wodka stated that he had consulted with a B-reader (a radiologist certified to review films for occupational lung disease) to review Mr. Triplett's chest x-rays for the presence of an asbestos-related disease. Mr. Wodka indicated that the radiologist had opined that Mr. Triplett had the condition known as asbestosis. Mr. Wodka further informed me that his expert or experts would testify that Mr. Triplett's lung cancer was caused by his exposure to asbestos.

Further Affiant sayeth naught.

_____
BYRON N. MILLER

COMMONWEALTH OF KENTUCKY     )
                                    ) SS.
COUNTY OF JEFFERSON             )

      Subscribed and sworn to before me by Byron N. Miller, who is known personally by

me, this _29th_ day of November, 2001.

      My commission expires:     _November 6, 2004_

                                _Dana S. Summarell_
                                NOTARY PUBLIC

3

15.     If James Triplett ever personally performed or worked adjacent to others performing any of the following job duties- - sand-blasting, anodizing, electroplating, acid dipping. welding, grinding, chipping or sanding or metal, steel making, alloy manufacturing, smelting or other steel-related industries, remelting of scrap metal products, jewelry making, engraving, lithography, metal primer application, state the name, address and telephone number of the employer for whom James Triplett performed these job duties or worked adjacent to others performing these job duties, James Triplett's job title and work description, the frequency with which James Triplett performed these job duties or worked adjacent to others performing these job duties, and the safety precautions and equipment which James Triplett used while performing his job duties.

ANSWER:
Beginning in January, 1976 when James K. Triplett became a pipefitter at the Colgate-Palmolive plant in Jeffersonville, Indiana, he occasionally performed welding.  When welding he wore a welding helmet and used a welding booth with ventilation when welding in the maintenance shop.

16.     For each product, material or compound (collectively referred to hereafter as "product") which you claim contained asbestos and to which you claim James Triplett was exposed, describe each product as specifically as possible, inducing its trade

8

name, product type, asbestos content, color, packaging, and manufacturer, together

with a detailed description of when and how James Triplett became aware of this

information, and state the date(s)on which and places where James Triplett was

exposed or your best estimate thereof, together with the circumstances surrounding

such exposure to the product (i.e., was James Triplett working with it or was he you

simply near an area where it was being used?).
ANSWER:

Beginning in January, 1976 when James K. Triplett became a pipefitter at the Colgate-
Palmolive plant in Jeffersonville, Indiana, he was required to remove asbestos-
containing pipecovering, block, and cement in order perform repair work on steam lines
and on other insulated lines and vessels through out the plant.

17.    If James Triplett ever used any device to reduce his exposure to, or

inhalation of, asbestos, silica or other chemical substance, state the type, make and/or

model of the device used, the date(s) the device was used, the length of time the

device was used, the location(s) where the device was used, and the names and

addresses of any witnesses that saw James Triplett wear or use such device(s).
ANSWER:

Beginning in January, 1976 when James K. Triplett became a pipefitter at the Colgate-
Palmolive plant in Jeffersonville, Indiana, he used 3M's Comfort Mask No. 8500 to
protect himself against exposure to asbestos, silica, and NTA.  His use of this device
was witnessed by Bill Sigman, 20017 U.S. 31, Henryville, IN 47126.

18.    If you contend that James Triplett incurred any injuries as a result of

exposure to asbestos, silica or chemicals, describe separately and in complete detail each and every complaint, symptom, adverse reaction or other injury (hereinafter collectively referred to as symptom") which you contend resulted from such exposure. Include in your answer the date, or if unknown, your best approximation of the date, on which James Triplett first began to exhibit each symptom, the name, address and telephone number of each physician to whom each symptom was reported, together with the date each symptom was reported, and what each physician told James Triplett was the cause of each symptom and the date James Triplett was told this.

ANSWER:

Lung cancer.  First symptoms, which consisted of a cough, were noticed in the fall of 1998.  On December 23, 1998, James K. Triplett reported this symptom to his personal doctor. Ronald J. Hamm, MD, 11901 Shelbyville Road, No. 225, Middletown, KY 40243. See medical records previously produced in this case on June 1, 2001.

19.    If James Triplett ever used tobacco products of any type, state fully and in detail the type of tobacco product James Triplett used, including brand names, and the daily frequency with which he smoked and the dates and time period during which he smoked.

ANSWER:

James K. Triplett never used any tobacco products of any type.

20.    Describe any and all safety devices manufactured and/or distributed by

10

4

# STEVEN H. WODKA

Member of Bar
New Jersey
District of Columbia

ATTORNEY AT LAW
577 LITTLE SILVER POINT ROAD
P.O. BOX 66
LITTLE SILVER, NEW JERSEY 07739-0066
(732) 530-2815

Fax (732) 530-3627

October 13, 2001
FEDERAL EXPRESS

Mr. Byron N. Miller
Thompson Miller & Simpson PLC
The LG&E Building
Suite 1700
220 West Main Street
Louisville, KY 40202

Re:   Triplett v. Minnesota Mining and Manufacturing Company
      C. A. No. 3:01-CV-11-S

Dear Mr. Miller:

3M Interrogatory No. 18 requests that the plaintiff identify the symptoms and injuries
that Mr. Triplett developed as a result of his unprotected exposure to asbestos, silica,
and other chemicals.  Mr. Triplett's death was due to lung cancer, and without any
objection, the plaintiff answered the interrogatory and provided the chronology of
symptoms which her husband experienced.

We have always been forthright that Mr. Triplett's lung cancer was caused in part by his
exposure to asbestos, since the 3M 8500 dust mask failed to protect him against this
dust.  See Plaintiff's Motion To Compel Discovery at 2: "In his work at Colgate, Mr.
Triplett had exposure to the dust of at least two known lung carcinogens: silica and
asbestos;" Plaintiff's Reply Memorandum In Support of The Motion To Compel
Discovery at 2: "The plaintiff's decedent, James Kenneth Triplett, relied upon the 3M
8500 Comfort Mask to protect him from exposure to two types of dust at the Colgate
plant which are known to cause lung cancer: asbestos and silica."

Rather, what you are now seeking to do with this interrogatory is to use it as a vehicle
to discover how our experts will prove these contentions.  It should be noted that you
previously agreed and the Court has ordered that the plaintiff's expert reports should be
submitted by March 1, 2002.  We intend to abide by that deadline and provide a proper
report at that time.  We object to any acceleration of that deadline.

-2-

Sincerely yours,

Steven H. Wodka

cc:    David Scott
       Al Priddy