

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 19 2001

FILED
CLERK'S OFFICE



BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

-----------------------------------------------------------------------
|  |  |
|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (No. VI) : | MDL Docket No. 875 |

-----------------------------------------------------------------------

|  |  |
|---|---|
| MARILYN E. TRIPLETT, Executrix of the Estate of JAMES K. TRIPLETT, deceased, and MARILYN E. TRIPLETT, Individually, : | An action pending in the United States District Court for the Western District of Kentucky, Louisville Division |
| Plaintiff, : | |
| vs. : | |
| MINNESOTA MINING AND MANUFACTURING CO., : | Civil Action No. 3:01-CV-11-S |
| Defendant. : | |

-----------------------------------------------------------------------

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
### MOTION TO TRANSFER TO THE EASTERN DISTRICT OF PENNSYLVANIA

Now comes the Plaintiff, Marilyn E. Triplett, Individually and as Executrix of the

Estate of James K. Triplett, and responds in opposition to Defendant Minnesota Mining

and Manufacturing Company's (hereinafter, "3M") Motion to Transfer this action to the

Eastern District of Pennsylvania, as an alleged tag-along action, on the following

grounds:

**OFFICIAL FILE COPY**

IMAGED DEC 26 '01

1.  This is a defective safety device case against one defendant, the manufacturer of the device.  No asbestos product suppliers or manufacturers are defendants in this action.

2.  The defective safety device was a dust mask manufactured by defendant 3M. The mask leaked and allowed a carcinogenic mix of dusts, one of which was asbestos, to be inhaled by the plaintiff's decedent.

3.  This claim is unique and has nothing in common with the cases pending in MDL Docket No. 875.

### FACTS

James K. Triplett died on July 17, 1999 at the age of 56 of lung cancer.  He was survived by his wife, Marilyn E. Triplett, and three children.  Mr. Triplett never smoked or used any tobacco products.  No member of his household were smokers.

From 1961 to 1994, Mr. Triplett was employed at the Colgate-Palmolive Company plant in Jeffersonville, Indiana.  He started at the plant at age 18 and worked as a production worker.  In 1976, he became a pipefitter in the maintenance department.

In his work at Colgate, Mr. Triplett had exposure to at least two known lung carcinogens: silica and asbestos.  Colgate used crystalline silica as a raw material in its manufacture of toothpaste and Ajax Cleanser at the Jeffersonville plant.  See material safety data sheets for crystalline silica used at the plant which were obtained from the Colgate-Palmolive Company, attached hereto at Exhibit "A."

According to the U. S. Department of Health and Human Services' Report on

2

Carcinogens, Ninth Edition (2000):

> [r]espirable crystalline silica (RCS), primarily quartz dusts occurring in industrial and occupational settings, is <u>known to be a human carcinogen</u>, based on sufficient evidence of carcinogenicity from studies in humans indicating a causal relationship between exposure to RCS and increased lung cancer rates in workers exposed to crystalline silica dust.

<u>Id</u>. at III-44 (citations omitted) (emphasis in the original).

As a pipefitter, James K. Triplett performed repair work throughout the plant and was exposed to silica from its use as a raw material in the plant. He also had exposure to asbestos, in the form of insulation, which he had to remove from pipes and vessels. According to the <u>Report on Carcinogens</u>:

> [a]sbestos and all commercial forms of asbestos are <u>known to be human carcinogens</u> based on sufficient evidence of carcinogenicity in humans. Occupational exposure to [the various forms of asbestos] has resulted in a high incidence of lung carcinomas.

<u>Id</u>. at III-6 (citations omitted) (emphasis in the original).

Rather than inhale these carcinogenic dusts, Mr. Triplett regularly wore a disposable dust mask which was manufactured and marketed by the defendant in this action, the Minnesota Mining and Manufacturing Company (3M). This mask was called the 3M 8500 Comfort Mask. Unknown to Mr. Triplett, this 3M dust mask would not protect him against the inhalation of these carcinogenic dusts. The 3M dust mask was never certified by the United States government for use where harmful dusts might be present. 3M failed to provide any warnings or instructions with these dust masks regarding this critical limitation of this product. <u>See</u> Plaintiff's Original Complaint at ¶¶ 11-15, attached at Tab 1 to 3M's Motion and Brief for Transfer.

3

In summary, this matter is a product liability action for damages caused by a defective safety device, here a dust mask manufactured and marketed by 3M. James K. Triplett was aware that the dusty air at the Colgate plant, containing silica and asbestos, was potentially harmful. Accordingly, he regularly wore a 3M dust mask in order to protect his health. The 3M dust mask failed him. Defendant 3M is liable in damages due to the defective design of its dust mask, specifically its lack of adequate warnings and instructions.

In its Motion, defendant 3M completely ignores the fact that silica was one of the carcinogenic dusts to which Mr. Triplett was exposed, and which leaked through the defective 3M dust mask. In chest x-rays taken of Mr. Triplett on January 5, 1999 and April 6, 1999, bilateral pleural plaques were noted on Mr. Triplett's lungs. Both silica and asbestos can cause bilateral pleural plaques. See report of L. Christine Oliver, M.D., attached hereto at Exhibit "B." The Affidavit of 3M attorney Byron N. Miller misrepresents these facts. Mr. Triplett did not have asbestosis. Rather his chest x-rays evidence changes that are consistent with the inhalation of both asbestos and silica.

Minnesota Mining and Manufacturing Company is the only defendant in this case. It has been sued because of the defects in its 8500 Comfort Mask. No asbestos product manufacturers are defendants in this action. Moreover, the U.S. District Court for the Western District of Kentucky set a July 1, 2001 deadline for the joinder of other parties. No other parties were joined.

Consequently, the instant case has nothing in common with the tens of

4

thousands of asbestos product liability claims which have been centralized in the U.S.
District Court in Philadelphia. There is no factual overlap. Indeed, counsel for 3M has
repeatedly stated that this claim is unique and has nothing in common with the other
dust mask cases which 3M is defending. See Certification of Steven H. Wodka,
attached hereto. The defective product in question is a 3M dust mask, not an asbestos-
containing product[1]. Second, the 3M dust mask also failed to protect Mr. Triplett from
exposure to silica. Clearly, silica exposure has nothing to do with MDL Docket 875.

## ARGUMENT

There are three prerequisites for transfer of cases under the Multidistrict
Litigation: "one or more common questions of fact," "the convenience of parties and
witnesses," and to "promote the just and efficient conduct of such actions." 28 U.S.C.
§1407(a). In moving to transfer a tag-along action, the moving party has the burden of
"demonstrating that transfer will further the purposes" of section 1407. In re G. D.
Searle & Co. "Copper 7" IUD Products Liability Litigation, 483 F.Supp. 1343, 1345
(Jud.Pan.Multi.Lit.1980).

None of the prerequisites have been met in this matter. This case does not
involve litigation with any of the traditional manufacturers of asbestos or asbestos

---

[1] On December 11, 2001, in response to a Rule 36 Request for Admissions, 3M
admitted that (a) it "did not sell or distribute any asbestos-containing products to the
Colgate-Palmolive Company in Jeffersonville, Indiana," (b) "James Kenneth Triplett did
not handle, use, or work in the vicinity of any asbestos-containing products
manufactured by 3M," and (c) "the 3M 8500 Comfort Mask does not contain and never
has contained asbestos fiber." See 3M's Objections and Responses to Plaintiff's First
Request for Admissions, attached hereto at Exhibit "C."

products whose cases are being handled in the MDL 875 docket. Discovery in this matter will focus on Mr. Triplett's work at the Colgate plant in Jeffersonville, Indiana, the diagnosis of and care of his lung cancer by his doctors in Louisville, Kentucky, and 3M's failure to properly design its dust mask. Transfer to Philadelphia will inconvenience the plaintiff and the fact witnesses, cause unnecessary expense, and hinder the progress of this case, all of which will only inure to the benefit of defendant 3M. Transfer will not "promote the just and efficient conduct" of the litigation, as required by the statute.

Nonetheless, 3M argues that because asbestos was one of the carcinogenic dusts to which Mr. Triplett was exposed, that fact is sufficient to tip the balance and permit this case to be transferred to the MDL-875 docket. Under 3M's theory, the MDL-875 docket would swallow every case that has anything to do with asbestos. For example, a physician who failed to make a timely diagnosis of an asbestos-related cancer in a patient could have such a medical malpractice claim against him transferred to the MDL docket. A lawyer who failed to make a timely filing of an asbestos product liability claim prior to the expiration of the statute of limitations could have such a legal malpractice claim against him transferred to the MDL docket. Presumably, this Panel would analyze the facts of such claims and would deny their transfer to the MDL docket. The same reasoning should apply to the instant matter.

Finally, this case has been actively managed by the Western District of Kentucky and is midway through the discovery process. The District Court conducted a Rule 16 Scheduling Conference on May 1, 2001 and set a deadline of June 1, 2002 for the

6

completion of all discovery.  The District Court has also ruled on discovery disputes and granted a Motion to Compel filed by the plaintiff.

In summary, this is not the type of case which was contemplated for inclusion in MDL-875.  It is a one defendant case and the product at issue is a dust mask.  There are no asbestos product manufacturers or suppliers as defendants.  The decedent's lung cancer is the result of a mixed dust exposure which the dust mask failed to prevent.  Silica was one of the dusts in this exposure mix.  The remaining discovery will focus on issues which are unique to the decedent's work history and medical history, and 3M's design of a defective dust mask.  This Panel is respectfully requested to deny the Motion to Transfer.

Respectfully submitted,

By: _Steve H. Wodka_

STEVEN H. WODKA
Co-Counsel for Plaintiff
577 Little Silver Point Road
P.O. Box 66
Little Silver, NJ 07739-0066
(732) 530-2815 (voice)
(732) 530-3627 (fax)

DAVID V. SCOTT
Scott & Forrest
409 Bank Street
P.O. Box 785
New Albany, IN 47151-0785
Co-Counsel for Plaintiff

ALTON D. PRIDDY
Priddy Isenberg Miller & Meade

7

800 Republic Building
429 W. Muhammad Ali Blvd.
Louisville, KY 40202
Co-Counsel for Plaintiff


Dated:   December /8 , 2001

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 1 9 2001

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

-----------------------------------------------------------------------

| | |
|---|---|
| : | |
| IN RE: ASBESTOS PRODUCTS LIABILITY | MDL Docket No. 875 |
| LITIGATION (No. VI)              : | |

-----------------------------------------------------------------------

| | |
|---|---|
| MARILYN E. TRIPLETT, Executrix of the     : | An action pending in the |
| Estate of JAMES K. TRIPLETT, deceased, | United States District |
| and MARILYN E. TRIPLETT, Individually,     : | Court for the Western |
| | District of Kentucky, |
|        Plaintiff,                  : | Louisville Division |
| | |
| vs.                                : | |
| | |
| MINNESOTA MINING AND MANUFACTURING CO., : | Civil Action No. |
| | 3:01-CV-11-S |
|        Defendant.              : | |

-----------------------------------------------------------------------

## CERTIFICATION OF STEVEN H. WODKA

I, Steven H. Wodka, do hereby certify, pursuant to 28 U.S.C. § 1746, as follows:

1. I am self employed as an attorney-at-law at 577 Little Silver Point Road in

Little Silver, New Jersey 07739-0066 and I am co-counsel to the plaintiff in this action.

2. I have had numerous discussions with Mr. Byron Miller, attorney for

defendant 3M, concerning discovery in this case. According to Mr. Miller, 3M has never had a claim against it solely for its 8500 Comfort Mask where 3M was the only defendant in the action.

3. Specifically, on November 30, 2001, Mr. Miller told me in a telephone conversation that the instant matter was a "weird, unique case" and that "3M has never seen one like this before."

4. A true and complete copy of three material safety data sheets for crystalline silica that was used at the Colgate-Palmolive plant in Jeffersonville, Indiana are attached hereto at Exhibit "A." These documents were obtained from the Colgate-Palmolive Company.

5. A true and complete copy of the letter report of L. Christine Oliver, M.D. dated December 15, 2001 is attached hereto at Exhibit "B."

6. A true and complete copy of Defendant Minnesota Mining and Manufacturing Company's Objections and Responses to Plaintiff's First Request for Admissions is attached hereto at Exhibit "C."

7. I certify under penalty of perjury that the foregoing is true and correct.

BY: _____
STEVEN H. WODKA

Executed on December /8, 2001.

2

ALL-STATE® LEGAL  800-222-0510   ED11   RECYCLED 

Exhibit A

*M - 2150*
*M - 2181*
*M 7200*

*1985*



**Pennsylvania Glass Sand Corporation**

*Route 522 North*
*P.O. Box 187*
*Berkeley Springs, WV 25411*
*(304) 258-2500*

# MATERIAL SAFETY DATA SHEET

**TRADE NAME:** All silica materials, including MIN-U-SIL, PENN SAND, Q-ROK and SUPERSIL (foregoing Reg. in U.S. Pat. & TM Off.).

**FAMILY NAME:** Silica sand; quartz; flint; crystalline silica; free silica (a natural mineral extracted from the earth).

**CHEMICAL NAME:** Silicon Dioxide ($SiO_2$)

**CHEMICAL ABSTRACT SERVICE NO.:** 7631-86-9

**HAZARDOUS INGREDIENTS:**

Silica (Quartz): 99.2% to 99.8% free silica.
PEL = 0.1 mg $SiO_2$ per cu m. of air
Formula: (10 mg/m³) / (%$SiO_2$ + 2)
(See OSHA regulations (CFR) Title 29, §1910.1000, Table Z-3 for respirable quartz)

**PHYSICAL DATA:**

Appearance: Sand — granular, crushed, or ground. No odor or taste.
Color: White or tan
Boiling Point: 4,046°F
Specific Gravity: 2.65 ($H_2O$ = 1)
Insoluble in water.
No vapor pressure, vapor density, percent volatile, or evaporation rates

**FIRE AND EXPLOSION HAZARD DATA:**

Not flammable.
No flash point.
No fire or explosion hazard.

**HEALTH HAZARD DATA:**

See Hazardous Ingredients data above.
PEL = 0.1 mg $SiO_2$ per cu m. of air

**OVEREXPOSURE EFFECTS:**

Harmful if inhaled.
Repeated and prolonged inhalation may cause delayed injury to lungs (silicosis).
Symptoms: Undue breathlessness, cough, sputum production.
Emergency first aid procedures: None

**EXHIBIT A**

ALL-STATE LEGAL SUPPLY CO.

*Pennsylvania Glass Sand Corporation*

# MATERIAL SAFETY DATA SHEET

for

Page 2

---

### REACTIVITY DATA:

**Stability:** Stable

**Incompatibility (materials to avoid):** Hydrofluoric acid (HF), in which silica will dissolve and produce the corrosive gas silicon tetraflouride ($SiF_4$).

Hazardous decomposition and hazardous polymerization will not occur.

### SPILL OR LEAK PROCEDURES:

**Spill Procedures:** Use dustless methods - vacuum and place into closable container for disposal, or flush with water. Do not dry sweep. Wear protective equipment specified below.

**Waste Disposal Methods:** Dispose in accordance with federal, state, and local regulations.

### SPECIAL PROTECTION INFORMATION

**Ventilation:** Use sufficient local exhaust to reduce the dust to the PEL for respirable quartz.

**Protective gloves:** Optional

**Eye protection:** Protect from dust particles.

**Respiratory protection:** Use NIOSH approved dust mask respirator under appropriate OSHA standards and regulations.

### SPECIAL PRECAUTIONS:

Use dustless systems for handling, storage, and clean up so that air borne dust does not exceed the PEL. Use adequate ventilation and dust collection. Practice good housekeeping. Do not permit dust to collect on walls, floors, sills, ledges, machinery, or equipment. Maintain, clean, and test respirators in accordance with OSHA regulations. Maintain and test ventilation and dust collection equipment. Wash clothing which has become dusty; do not beat the dust from the clothing. We recommend that smoking be prohibited in all areas where respirators must be used. WARN YOUR EMPLOYEES (AND YOUR CUSTOMER-USERS IN CASE OF RESALE) BY POSTING AND OTHER MEANS OF THE HAZARD AND OSHA PRECAUTIONS TO BE USED. PROVIDE TRAINING FOR YOUR EMPLOYEES ABOUT THE OSHA PRECAUTIONS.

### ISSUE DATE: April, 1985

The information and recommendations contained herein are based upon data believed to be correct. However, no guarantee or warranty of any kind, expressed or implied, is made with respect to the information contained herein.



# OTTAWA SILICA COMPANY

Corporate Offices
P.O. Box 577, Ottawa, Illinois 61350
Telephone: 815 / 434-0190

M2150

November 22, 1985


Attention:  President/Safety Director

Re:  Material Safety Data Sheet


In order for you to comply with OSHA Hazard Communications Standard 1910.1200, Ottawa Silica Company, on behalf of its subsidiaries,

Ottawa Industrial Sand Company

Michigan Silica Company

Connecticut Silica Company

Crystal Silica Company

Texas Industrial Minerals Company

Louisiana Industrial Sand Company

has enclosed an updated Material Safety Data Sheet.

I believe you will find this newly revised sheet meets your needs. In it, we have identified potential health hazards associated with unrestricted use of crystalline free silica.

We appreciate your company's use of our products.  We will make every effort to share with you safe handling procedures.

If we can be of further assistance, please let us know.

Sincerely,

William D. Darrow

William D. Darrow
Corporate Safety & Personnel Supervisor

mm

encls.



# OTTAWA SILICA COMPANY

*Corporate Offices*
*P.O. Box 577, Ottawa, Illinois 61350*
*Telephone: 815/434-0190*

| NPCA HMIS CODE | |
|---|---|
| Health Hazard | 3 |
| Flammability Hazard | 0 |
| Reactivity Hazard | 0 |
| Maximum Personal Protection | E |

*M 2150*

# MATERIAL SAFETY DATA SHEET

## SECTION I —— MATERIAL IDENTIFICATION

**Manufacturer's Name** OTTAWA INDUSTRIAL SAND COMPANY      **Telephone No.** 815/434-0188

**Address (Number, Street, City, State, Zip Code)** P. O. Box 577 , Ottawa, IL 61350

**Chemical Name and Synonyms** Silicone Dioxide; Crystalline Silica

**Chemical Family** Extracted Inorganic Material    **Chemical Abstract Number** CAS 01-4808-60-7    **Formula Number** $SiO_2$

**Trade Name and Synonyms**

| | | |
|---|---|---|
| FRAC SAND-2040;2050;3050;4060 | SIL-CO-SIL #270;#290;#295;#390;#395;#398;#400 | Crystal |
| Silurian Filtration Sand | Silicon Carbide Sand | Federal Fine |
| FLINT SHOT-2.4;2.6;2.8;3.0;4.0 | Sand Mill Media | #17 Silica |
| MELT-Standard;Fine; Extra Fine | ASTM-C-109; 190 | Special Bond |
| SPECIAL BLEND-Coarse; Medium; Fine | Cracked Grain | Bond |
| F-70;75;80;95;105;115;125;140 | AFS 50/70 | Flint Silica |
| | Engine Sand | Sawing Sand |

## SECTION II —— CHEMICAL AND PHYSICAL PROPERTIES

**Molecular Wt.** N/A      **Boiling Point** $4046^{\circ}F$      **Melting Point** $3050^{\circ}F$      **Specific Gravity (Water = 1) or Bulk Density** N/

**Odor/Appearance** White, granular, crushed or ground-like flour - No odor

## SECTION III —— FLAMMABILITY AND EXPLOSIVE PROPERTIES

No fire or explosion hazard.      Sand may be used to smother fire.

## SECTION IV —— COMPOSITION

Crystalline Silica (quartz) CAS 01-4808-60-7 ranges from $\geq$ 49.5% to $\leq$ 99.8% total product composition.   Remainder is nonhazardous ingredients.

## SECTION V —— HEALTH HAZARD DATA

**Permissible Exposure Limits**

Threshold Limit Value $\dfrac{10 \ mg/M^3}{\% \ Respirable \ quartz + 2}$

Prolonged overexposure to Crystalline Free Silica Dust above the Threshold Limit Value specified above may cause scarring of the lungs with cough and shortness of breath. A delayed lung injury, silicosis, may result from breathing free silica. Silicosis is a form of disabling, progressive and sometimes fatal pulmonary fibrosis characterized by the presence of typical nodulation in the lungs.

**Emergency and First Aid Procedures**

EYES: Wash eyes with large amounts of water.   Obtain medical attention if irritation persist

## SECTION VI —— REACTIVITY DATA

**Stability**   **Unstable** ☐   **Conditions to Avoid** NONE

**Stable** ☒

**Incompatibility (Materials to Avoid)** Endorthermic - Dissolved by Hydrofluoric Acid (HF)

**Hazardous Decomposition Products** NONE

**Hazardous Polymerization**   **May Occur** ☐   **Conditions to Avoid** NONE

**Will Not Occur** ☒

SECTION VII————————ENVIRONMENTAL HAZARD — SPILL OR LEAK PRODECURES————————

Persons not wearing protective equipment as noted in Section VIII should be restricted from areas of spills or releases until cleanup has been completed.  If Crystalline free silica is spilled or released, the following steps should be taken:

<u>Waste Disposal Method:</u> Collect spilled material in the most convenient dustless, safe, manner.  Crystalline free silica may be reused or disposed of in an unrestricted sanitary landfill.

SECTION VIII———————SPECIAL PROTECTION INFORMATION————————

<u>Respiratory Protection</u> Good Industrial hygiene practices recommend that engineering controls be used to reduce environmental concentrations to the permissible exposure level.  However, there are some exceptions where respirators may be used to control exposure.  Respirators may be used when engineering and work practice controls are not technically feasible, when such controls are in the process of being installed, or when they fail and need to be supplemented.  If the use of respirators is necessary, the only respirators permitted are those that have been approved by the Mine Safety and Health Administration (formerly Mining Enforcement and Safety Administration) or by the National Institute for Occupational Safety and Health.

In addition to respirator selection, a complete respiratory protection program should be instituted which includes regular training, maintenance, inspection, cleaning and evaluation.

The chart below indicates the minimum respiratory protection required given a known exposure.

RESPIRATORY PROTECTION FOR CRYSTALLINE SILICA
(From September, 1978 Occupational Health Guideline
for Crystalline Silica, U.S. Department of Labor,
U.S. Department of Health and Human Services,et.al.)

| CONDITION | MINIMUM RESPIRATORY PROTECTION* REQUIRED ABOVE $X$**mg/m$^3$ |
|---|---|
| Particulate Concentration 5X** mg/m$^3$ or less | Any dust respirator |
| 10X** mg/m$^3$ or less | Any dust respirator, except single-use or quarter-mask respirator. Any fume respirator or high efficiency particulate filter respirator. Any supplied-air respirator. Any self-contained breathing apparatus. |
| 50X** mg/m$^3$ or less | A high efficiency particulate filter respirator with a full facepiece. Any supplied-air respirator with a full facepiece, helmet or hood. Any self-contained breathing apparatus with a full facepiece. |
| 500X** mg/m$^3$ or less | A powered air-purifying respirator with a high efficiency particulate filter. A Type C supplied-air respirator operated in pressure-demand or other positive pressure or continuous-flow mode. |
| Greater than 500X**mg/m$^3$ or entry and escape from unknown concentrations | Self-contained breathing apparatus with a full facepiece operated in pressure-demand or other positive pressure mode. A combination respirator which includes a Type C supplied-air respirator with a full facepiece operated in pressure-demand or other positive pressure or continuous-flow mode and an auxiliary self-contained breathing apparatus operated in pressure-demand or other positive pressure mode. |
| Fire Fighting | Self-contained breathing apparatus with a full facepiece operated in pressure-demand or other positive pressure mode. |

*Only NIOSH-approved or MSHA-approved equipment should be used.
** X indicates the permissible exposure as defined above.

SAFETY GLASSES AND GLOVES ARE OPTIONAL, DEPENDING ON PRODUCT USAGE.

SECTION IX——————————SHIPPING REGULATIONS FOR HAZARDOUS MATERIAL————————

Crystalline Silica (quartz) is not D.O.T. regulated.

SECTION X————— ———— SPECIAL PRECAUTION & CONCLUSION————————

<u>Precautions to be taken in handling and storage.</u>  Use dustless or wet systems when handling and clean-up so that exposure does not exceed Threshold Limit Value in Section V above.  <u>Other precautions.</u>  Practice good housekeeping, maintain ventilation system and post appropriate warning notices where product is used, stored and handled.  Employees likely to be exposed to potentially hazardous crystalline silica levels should receive pre-employment and periodic medical examinations in order to determine any pre-existing physical conditions which may place the exposed employee at increased risk, and to establish a baseline for future health monitoring.  Examination of the respiratory and cardiovascular system should be stressed.

| Prepared By William D. Darrow | Title Corporate Safety & Personnel Supervisor | Date 11/19/1985 |

Date: August 23, 1976

**U.S. DEPARTMENT OF LABOR**
Occupational Safety and Health Administration

Form Approved
OMB No. 44-R1...

# MATERIAL SAFETY DATA SHEET

Required under USDL Safety and Health Regulations for Ship Repairing,
Shipbuilding, and Shipbreaking (29 CFR 1915, 1916, 1917)

M-2150

## SECTION I

| | |
|---|---|
| MANUFACTURER'S NAME | EMERGENCY TELEPHONE NO. |
| Pennsylvania Glass Sand Corporation | |

ADDRESS (Number, Street, City, State, and ZIP Code)
P. O. Box 187, Berkeley Springs, West Virginia 25411

| | |
|---|---|
| CHEMICAL NAME AND SYNONYMS<br>Silicon Dioxide (Silica) | TRADE NAME AND SYNONYMS<br>Mill Creek 120 Mesh |
| CHEMICAL FAMILY<br>Natural Mineral, extracted from earth | FORMULA<br>$SiO_2$ ( 99.75% Free Silica) |

## SECTION II - HAZARDOUS INGREDIENTS

| PAINTS, PRESERVATIVES, & SOLVENTS | % | TLV (Units) | ALLOYS AND METALLIC COATINGS | % | TLV (Units) |
|---|---|---|---|---|---|
| PIGMENTS | None | | BASE METAL | None | |
| CATALYST | None | | ALLOYS | None | |
| VEHICLE | None | | METALLIC COATINGS | None | |
| SOLVENTS | None | | FILLER METAL PLUS COATING OR CORE FLUX | None | |
| ADDITIVES | None | | OTHERS | None | |
| OTHERS | None | | | | |

| HAZARDOUS MIXTURES OF OTHER LIQUIDS, SOLIDS, OR GASES | % | TLV (Units) |
|---|---|---|
| None | | |
| | | |
| | | |
| | | |

## SECTION III - PHYSICAL DATA

| | | | |
|---|---|---|---|
| BOILING POINT (°F.) | N.A. | SPECIFIC GRAVITY (H₂O=1) | 2.65 |
| VAPOR PRESSURE (mm Hg.) | N.A. | PERCENT, VOLATILE BY VOLUME (%) | None |
| VAPOR DENSITY (AIR=1) | N.A. | EVAPORATION RATE ( ____ =1) | None |
| SOLUBILITY IN WATER | None | | |

APPEARANCE AND ODOR   Sand - whole grains or flour - No odor

## SECTION IV - FIRE AND EXPLOSION HAZARD DATA

| FLASH POINT (Method used) | FLAMMABLE LIMITS | Lel | Uel |
|---|---|---|---|
| | | | |

EXTINGUISHING MEDIA   No fire or explosive hazard

SPECIAL FIRE FIGHTING PROCEDURES

UNUSUAL FIRE AND EXPLOSION HAZARDS

(*)   See note below
(**)   See note below

M-7150

## SECTION V · HEALTH HAZARD DATA *

THRESHOLD LIMIT VALUE
As specified in OSHA Standard currently #1910.1000, table Z-3 for silica:crystallin

EFFECTS OF OVEREXPOSURE
Repeated inhalation of respirable dust for extended period of time may
cause injury to the lungs.                                         quart

EMERGENCY AND FIRST AID PROCEDURES
None

## SECTION VI - REACTIVITY DATA

| STABILITY | UNSTABLE | | CONDITIONS TO AVOID |
|---|---|---|---|
| | STABLE | X | |

INCOMPATABILITY (Materials to avoid)
None

HAZARDOUS DECOMPOSITION PRODUCTS

| HAZARDOUS POLYMERIZATION | MAY OCCUR | | CONDITIONS TO AVOID |
|---|---|---|---|
| | WILL NOT OCCUR | X | |

## SECTION VII - SPILL OR LEAK PROCEDURES *

STEPS TO BE TAKEN IN CASE MATERIAL IS RELEASED OR SPILLED
Clean up by use of recommended dustless methods – water or vacuum – Limit
exposure so that it does not exceed OSHA Standard TLV.

WASTE DISPOSAL METHOD
Any approved solid waste disposal method – Limit exposure so that it does not
exceed OSHA Standard TLV.

## SECTION VIII - SPECIAL PROTECTION INFORMATION *

RESPIRATORY PROTECTION (Specify type)
Dust respirator in compliance with OSHA Standard currently 29 CFR 1910.134

| VENTILATION | LOCAL EXHAUST Follow OSHA Standard | SPECIAL |
|---|---|---|
| | MECHANICAL (General) Follow OSHA Standard | OTHER |

| PROTECTIVE GLOVES As required | EYE PROTECTION As required |
|---|---|

OTHER PROTECTIVE EQUIPMENT
As required to meet applicable OSHA Standards

## SECTION IX - SPECIAL PRECAUTIONS *

PRECAUTIONS TO BE TAKEN IN HANDLING AND STORING
Use dustless systems for handling, storage and clean-up so that exposure does
not exceed OSHA Standard TLV.

OTHER PRECAUTIONS
Practice Good Housekeeping; Maintain and test equipment; Suggest posting work
areas where product is used, handled or stored warning employees that repeated
inhalation of respirable dust for extended period of time may cause injury to lungs

Exhibit B

# *Occupational Health Initiatives*

L.CHRISTINE OLIVER MD, MPH, MS
TEL (617) 232-1704
FAX (617) 232-3280

1101 BEACON STREET
FOUR WEST
BROOKLINE, MASSACHUSETTS 02446

December 15, 2001

Steven H. Wodka, Esq.
Attorney At Law
577 Little Silver Point Road
PO Box 66
Little Silver, NJ   07739-0066

RE: James K. Triplett – DOB 10/11/42, DOD 07/17/99, Social Security #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

Dear Mr. Wodka:

I am writing with regard to my medical evaluation of chest radiographs taken of Mr. Triplett and provided to me by your office. I am board certified in internal medicine and in preventive (occupational) medicine. My professional affiliation is with the Massachusetts General Hospital in Boston, MA where I am an Associate Physician in the Department of Medicine and with Harvard Medical School where I am an Assistant Clinical Professor of Medicine.

In addition, I am a NIOSH certified B-reader. The B-reader certification indicates 1) satisfactory completion of an instructional course on a standardized system of classification of chest X-rays for pneumoconiosis, and 2) passing an examination in the actual use of the system to classify a number of chest X-rays. The classification system was developed by the International Labor Organization (ILO) in the 1950's. It was last updated in 1980 and that is the system in use today. The instructional course is offered by the American College of Radiology; the exam is given by the National Institute of Occupational Safety and Health (NIOSH).

Those who take the course and pass the initial exam are certified as "B" readers. Those who take the course and fail to pass or do not take the exam are certified as "A" readers. B-readers must take and pass a recertification examination given by NIOSH every four years in order to retain their B-reader certification. I have been a B-reader since 1980.

You have provided me with posterior-anterior (PA) and lateral radiographic views of the chest taken of Mr. Triplett at the Baptist Hospital East in Louisville, KY on

EXHIBIT
B
ALL-STATE LEGAL SUPPLY CO.

January 5 and April 6, 1999, as well as a lateral view taken December 23, 1998.  PA view from December, 1998 was not available for review.  I performed B-readings on both PA views according to the ILO-1980 system of classification.  These have been provided to you.  Both showed a 5 cm mass in the upper lobe of the right lung, with an area of apparent cavitation on the X-ray taken January 5, 1999.  This mass is suspicious for lung cancer.

Both chest radiographs also showed bilateral pleural plaques.  On the film taken on January 5, these were classified as width B, extent 1 on the right and width A, extent 1 on the left using the ILO-1980 system.  Classification of plaques seen on the X-ray taken April 6, 1999 was width B, extent 1 on the right and width A, extent 2 on the left.

Please be advised that bilateral pleural plaques such as those seen on Mr. Triplett's chest X-rays occur as a result of occupational exposure to either asbestos or silica.

If there are questions, or if I can be of further assistance, please let me know.


Very truly yours,

L. Christine Oliver, MD




Seaton A. Silicosis. In: Morgan WKC, Seaton A, eds. Occupational Lung Diseases. Philadelphia: WB Saunders Company, 1984.

ALL-STATE® LEGAL   800-222-0510   ED11   RECYCLED

Exhibit C

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CAUSE NO. 3:01-CV-11-S**

MARILYN E. TRIPLETT, Executrix of the                                      PLAINTIFF
Estate of JAMES K. TRIPLETT, deceased,
and MARILYN E. TRIPLETT, Individually


vs.   <u>**DEFENDANT MINNESOTA MINING AND MANUFACTURING COMPANY'S**</u>
<u>**OBJECTIONS AND RESPONSES TO**</u>
<u>**PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS**</u>

MINNESOTA MINING AND MANUFACTURING COMPANY                    DEFENDANT

*** ** ***

      Defendant Minnesota Mining and Manufacturing Company hereby files its Objections

and Responses to Plaintiff's First Request for Admissions to Defendant Minnesota Mining and

Manufacturing Company, pursuant to the Federal Rules of Civil Procedure.

<u>**PRELIMINARY STATEMENT**</u>

      These Responses are based upon an ongoing and diligent review of Minnesota Mining

and Manufacturing Company's ("3M") documents kept in the ordinary course of business in

those locations most likely to contain relevant and responsive documents. These Responses are

also based upon information obtained from an ongoing and diligent inquiry over a period of

years with various 3M personnel believed most likely to possess relevant and responsive

information. 3M has been diligent in responding to these Requests, but because much of the

information requested dates back many years, and because 3M is a multi-national corporation

currently employing approximately 70,000 persons, having previously employed several times

that number of persons since its inception, it is virtually impossible to assure that all potentially

responsive information and/or documents have been located, or that inquiries have been made of



all persons who might have knowledge. 3M's Responses reflect currently available, relevant, and responsive information. 3M's Responses also reflect its understanding (based upon the representation by Plaintiff's counsel in correspondence dated May 2, 2001) that the only 3M product at issue in this case is the "3M Comfort Mask 8500". By providing relevant and responsive information to Plaintiff's discovery, 3M does not concede that James K. Triplett used any 3M product (and in particular the 3M 8500 Comfort Mask), or that sufficient and accurate product identification has been established by the Plaintiff.

Additionally, to the extent Plaintiff served these Requests in an attempt to compel 3M to admit or deny matters that Plaintiff unilaterally deems determinative of the issue of proper forum, 3M affirmatively states that each Response provided herein incorporates 3M's position that the proper forum for this asbestos injury case rests in the Federal Multi-District Litigation -- the MDL-875 Docket -- pending in the Eastern District of Pennsylvania pursuant to the Judicial Panel of Multi-District Litigation's Opinion and Order entered on July 29, 1991. 3M does not concede that its Responses provide any factual or legal basis to continue this case in this forum.

Finally, 3M reserves its right to clarify and/or amend these Responses if new or different information responsive to these Requests is located.

## GENERAL OBJECTIONS

In addition to the specific objections stated within 3M's Response to each Request for Admissions, 3M makes the following General Objections to all of the Request for Admissions as follows:

- Plaintiff's Requests for Admission seek information regarding purported 3M asbestos-containing products. Yet Plaintiff's Complaint makes no allegation or claim that James Kenneth Triplett used or was exposed to any 3M asbestos-containing products. Plaintiff's

Complaint makes allegations against 3M relating to a "defective" dust mask and not for any 3M asbestos-containing products.  (Complaint, Paragraphs 5-6.)  3M therefore objects to Plaintiff's Requests for Admission because they are irrelevant to any legitimate issue in this case, are not reasonably calculated to lead to the discovery of any relevant or admissible evidence, and constitute nothing more than pure harassment by the Plaintiff.

- Furthermore, Plaintiff's Requests for Admission are not relevant to the issue of proper forum for this case because Plaintiff has repeatedly admitted and conceded that James Kenneth Triplett suffered from an asbestos-related disease as a result of exposure to asbestos. For example, Plaintiff's counsel stated in correspondence dated October 13, 2001, that, "We have always been forthright that Mr. Triplett's lung cancer was caused in part by his exposure to asbestos." (Correspondence dated October 13, 2001, Paragraph 2, emphasis added.)  Likewise, Plaintiff's counsel has stated that, "In his work at Colgate, Mr. Triplett had exposure to the dust of at least two known lung carcinogens: silica and asbestos." (Plaintiff's Motion to Compel Discovery at 2, emphasis added.)  As such, Plaintiffs have already conceded that this case belongs in the MDL 875-Docket pending in the Eastern District of Pennsylvania.  The standard for transfer to the MDL-875 is based upon an asbestos-related injury and not an asbestos-containing product.  Therefore, 3M's Responses to these Requests for Admission are neither relevant nor dispositive of 3M's pending Motion for Transfer of Case to the Eastern District of Pennsylvania for Inclusion in the MDL-875 Docket as a Tag-Along Action.

- All of 3M's General Objections are hereby expressly incorporated into each and every one of its Responses, regardless of whether they are specifically referenced or repeated within the Responses.

- 3M reserves its right to assert additional objections, and to clarify, amend, or modify these Responses at any time, as deemed necessary and appropriate by 3M.  Finally, 3M reserves the right to object to the use of any of these Responses at trial, or at any other proceeding, including 3M's pending Motion for Transfer of Case to the Eastern District of Pennsylvania for Inclusion in the MDL-875 Docket as a Tag-Along Action, as deemed necessary and appropriate by 3M.

## REQUEST FOR ADMISSIONS

**REQUEST NO. 1:**  Minnesota Mining and Manufacturing Company did not sell or distribute any asbestos-containing products to the Colgate Palmolive Company in Jeffersonville, Indiana.

**RESPONSE:**

- <u>3M's Response</u>:  Admit.  See also 3M's Objections as stated below.
    - Subject to and without waiving any of the Objections to this Request made below and without waiving the right to make additional arguments relating to the transfer of this case to the MDL 875-Docket:
        - To the best of 3M's knowledge, and after a reasonably diligent search, it has not located to date any documents reflecting the sale or distribution of any asbestos-containing products to the Colgate-Palmolive Company.

- <u>3M's Objections</u>:
    - 3M objects to this Request because:
    - (A)    It is irrelevant, overly broad, unduly burdensome, and harassing; Plaintiff's Complaint does not claim that James Kenneth Triplett used or was exposed to <u>any</u> 3M asbestos-containing products;

**(B)**     It seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in this case, and constitutes an impermissible fishing expedition beyond the scope of reasonable or allowable discovery under the Federal Rules of Civil Procedure;

**(C)**     The sale or distribution of any 3M asbestos-containing product to the Colgate Palmolive Company located in Jeffersonville, Indiana, if any, is not relevant to the issue of whether the proper forum for this case lies within the MDL 875-Docket pending in the Eastern District of Pennsylvania.  This case belongs on the MDL-875 Docket because Plaintiff claims James Kenneth Triplett suffered from an asbestos-related injury.  Plaintiff's Complaint states James Kenneth Triplett "inhaled great quantities of carcinogenic dust which caused him to develop lung cancer."  (Complaint, Paragraph 7.)   Additionally, Plaintiff's counsel stated in correspondence dated October 13, 2001, that, "We have always been forthright that Mr. Triplett's lung cancer was caused in part by his exposure to <u>asbestos</u>." (Correspondence dated October 13, 2001, Paragraph 2, emphasis added.) Likewise, Plaintiff's counsel has stated that, "In his work at Colgate, Mr. Triplett had exposure to the dust of at least two known lung carcinogens: silica and <u>asbestos</u>."  (Plaintiff's Motion to Compel Discovery at 2, emphasis added.)  As such, Plaintiffs have already conceded that this case belongs in the MDL 875-Docket pending in the Eastern District of Pennsylvania.

**(D)**     3M objects to responding any further to this Request, based upon its objections to this Request.

**REQUEST NO. 2:**     James Kenneth Triplett did not handle, use, or work in the vicinity of any asbestos-containing products manufactured by the Minnesota Mining and Manufacturing Company.

**RESPONSE:**

- <u>3M's Response</u>: Admit.  See also 3M's Objections as stated below.

- <u>3M's Objections</u>:

    - 3M objects to this Request because:

    **(A)**     It is irrelevant, overly broad, unduly burdensome, and harassing; Plaintiff's Complaint does not claim that James Kenneth Triplett used or was exposed to <u>any</u> 3M asbestos-containing products;

    **(B)**     It is irrelevant; James Kenneth Triplett was not employed by 3M, and 3M's employees and worksites are not at issue in this litigation;

    **(C)**     Whether James Kenneth Triplett handled, used, or worked in the vicinity of any 3M asbestos-containing product is not relevant to the issue of whether the proper forum for this case lies within the MDL 875-Docket pending in the Eastern District of Pennsylvania.  This case belongs on the MDL-875 Docket because Plaintiff claims James Kenneth Triplett suffered from an asbestos-related injury.  Plaintiff's Complaint states James Kenneth Triplett "inhaled great quantities of carcinogenic dust which caused him to develop lung cancer."  (Complaint, Paragraph 7.)  Additionally, Plaintiff's counsel stated in correspondence dated October 13, 2001, that, "We have always been forthright that Mr. Triplett's lung cancer was caused in part by his exposure to <u>asbestos</u>."  (Correspondence dated October 13, 2001, Paragraph 2, emphasis added.)  Likewise, Plaintiff's counsel

has stated that, "In his work at Colgate, Mr. Triplett had exposure to the dust of at least two known lung carcinogens: silica and <u>asbestos</u>." (Plaintiff's Motion to Compel Discovery at 2, emphasis added.) As such, Plaintiffs have already conceded that this case belongs in the MDL 875-Docket pending in the Eastern District of Pennsylvania.

**(D)** . It seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in this case, and constitutes an impermissible fishing expedition beyond the scope of reasonable or allowable discovery under the Federal Rules of Civil Procedure;

**(E)** 3M objects to responding any further to this Request, based upon its objections to this Request.

## REQUEST NO. 3:

The 3M 8500 Comfort Mask does not contain and never has contained asbestos fiber.

## RESPONSE:

- <u>3M's Response</u>: Admit. See also 3M's Objection as stated below.

- <u>3M's Objections</u>:

  - 3M objects to this Request because:

  **(A)** The fact that the 3M 8500 Comfort Mask does not, and never has, contained any asbestos is not relevant to the issue of whether the proper forum for this case lies within the MDL 875-Docket pending in the Eastern District of Pennsylvania. This case belongs on the MDL-875 Docket because Plaintiff claims James Kenneth Triplett suffered from an asbestos-related injury. Plaintiff's Complaint states James Kenneth Triplett "inhaled great quantities of carcinogenic dust which

caused him to develop lung cancer." (Complaint, Paragraph 7.)  Additionally, Plaintiff's counsel stated in correspondence dated October 13, 2001, that, "We have always been forthright that Mr. Triplett's lung cancer was caused in part by his exposure to <u>asbestos</u>." (Correspondence dated October 13, 2001, Paragraph 2, emphasis added.)  Likewise, Plaintiff's counsel has stated that, "In his work at Colgate, Mr. Triplett had exposure to the dust of at least two known lung carcinogens: silica and <u>asbestos</u>." (Plaintiff's Motion to Compel Discovery at 2, emphasis added.)  As such, Plaintiffs have already conceded that this case belongs in the MDL 875-Docket pending in the Eastern District of Pennsylvania.

Respectfully submitted,

THOMPSON  MILLER & SIMPSON PLC

Byron N. Miller
The LG&E Building, Suite 1700
220 W. Main Street
Louisville, Kentucky 40202
(502) 585-9900
COUNSEL FOR DEFENDANT
MINNESOTA MINING AND
MANUFACTURING COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was served via U.S. Mail this 11th day of December, 2001 upon the following:

Steven H. Wodka, Esq.
577 Little Silver Point Road
P.O. Box 66
Little Silver, New Jersey 07739-0066
Co-Counsel for Plaintiff

David V. Scott, Esq.
Scott & Forrest
409 Bank Street
P. O. Box 785
New Albany, Indiana 47151-0785
Co-Counsel for Plaintiff

Alton D. Priddy
PRIDDY, ISENBERG, MILLER & MEADE P.S.C.
Suite 800
429 W. Muhammad Ali Blvd.
Louisville, Kentucky 40202
Co-Counsel for Plaintiff

_____
Byron N. Miller
COUNSEL FOR DEFENDANT

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 19 2001

## CERTIFICATE OF SERVICE

FILED
CLERK'S OFFICE

I hereby certify that on this _18th_ day of _December_, 2001, a

true and complete copy of the above and foregoing pleading or paper was served by

first class mail, postage prepaid, upon each counsel listed on the attached Panel

Service List and to:

Basil A. DiSipio                                    3M designated Counsel
Lavin Coleman O'Neil Ricci
 Finarelli & Gray
Suite 1000
510 Walnut Street
Philadelphia, PA 19106.


By: _Steven H. Wodka_
          Steven H. Wodka
          Attorney-At-Law
          577 Little Silver Point Road
          P.O. Box 66
          Little Silver, NJ 07739-0066
          (732) 530-2815

          Attorney for Plaintiff

**INVOLVED COUNSEL LIST**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

*Marilyn E. Triplett, etc. v. Minnesota Mining & Manufacturing Co., et al.*, W.D. Kentucky, C.A. No. 3:01-11

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH  44114

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH  44115

Adam M. Chud
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, DC  20036

David A. Damico
Burns, White & Hickton
2400 Fifth Avenue Place
120 Fifth Avenue
Pittsburgh, PA  15222

Raymond P. Forceno
Forceno & Hannon
Philadelphia Bourse Building
Suite 1000
Independence Mall East
Philadelphia, PA  19106

Ellen B. Furman
Goldfein & Joseph
1600 Market Street
33rd Floor
Philadelphia, PA  19103

Susan M. Hanson
Stich, Angell, Kreidler & Muth, P.A.
The Crossings, Suite 120
250 2nd Avenue South
Minneapolis, MN  55401

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH  44308

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA  23219

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA  19102

Byron N. Miller
Thompson, Miller & Simpson, PLC
220 West Main Street
Suite 1700
Louisville, KY  40202

Ronald L. Motley
Ness, Motley, Loadholt, Richardson
& Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC  29465

Alton D. Priddy
Priddy, Isenberg, Miller & Meade
429 W. Muhammad Ali Blvd.
Republic Building, Suite 800
Louisville, KY  40202

John J. Repcheck
Marks, O'Neill
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA  15219

John D. Roven
John Roven & Associates
2190 North Loop West
Suite 410
Houston, TX  77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH  43216

David V. Scott
Scott & Forrest
409 Bank Street
P.O. Box 785
New Albany, IN  47150

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA  90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA  19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
Detroit, MI  48226

Andrew J. Trevelise
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA  52406

Steven H. Wodka
P.O. Box 66
Little Silver, NJ  07739

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 1 9 2001

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

------------------------------------------------------------------------

|  |  |  |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (No. VI) | : | MDL Docket No. 875 |

------------------------------------------------------------------------

|  |  |  |
|---|---|---|
| MARILYN E. TRIPLETT, Executrix of the Estate of JAMES K. TRIPLETT, deceased, and MARILYN E. TRIPLETT, Individually, | : : | An action pending in the United States District Court for the Western District of Kentucky, |
| Plaintiff, | : | Louisville Division |
| vs. | : |  |
| MINNESOTA MINING AND MANUFACTURING CO., | : | Civil Action No. 3:01-CV-11-S |
| Defendant. | : |  |

------------------------------------------------------------------------

## PLAINTIFF'S REASONS WHY ORAL ARGUMENT SHOULD BE HEARD

Now comes the Plaintiff, Marilyn E. Triplett, Individually and as Executrix of the

Estate of James K. Triplett, and requests this Panel to allow oral argument in

connection with Defendant Minnesota Mining and Manufacturing Company's

(hereinafter, "3M") Motion to Transfer this action to the Eastern District of Pennsylvania,

as an alleged tag-along action, on the following grounds:

In deciding this Motion, the issues to be determined are primarily fact intensive. Thus far, defendant 3M has been inaccurate in conveying the facts concerning James K. Triplett's work, his dust exposures, and his illness. These are all critical issues in deciding whether to transfer this matter as a tag-along action. If there are any further misrepresentations by 3M, oral argument will be the only opportunity for the plaintiff to offer her rebuttal and to correct the record. Accordingly, the plaintiff respectfully requests that oral argument be heard.

Respectfully submitted,

By: _Steve H. Wodka_

STEVEN H. WODKA
Co-Counsel for Plaintiff
577 Little Silver Point Road
P.O. Box 66
Little Silver, NJ 07739-0066
(732) 530-2815 (voice)
(732) 530-3627 (fax)

DAVID V. SCOTT
Scott & Forrest
409 Bank Street
P.O. Box 785
New Albany, IN 47151-0785
Co-Counsel for Plaintiff

ALTON D. PRIDDY
Priddy Isenberg Miller & Meade

2

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 1 9 2001

FILED
CLERK'S OFFICE

800 Republic Building
429 W. Muhammad Ali Blvd.
Louisville, KY 40202
Co-Counsel for Plaintiff

Dated:   December  $18$ , 2001

## CERTIFICATE OF SERVICE

I hereby certify that on this  18th  day of  December  , 2001, a

true and complete copy of the above and foregoing pleading or paper was served by

first class mail, postage prepaid, upon each counsel listed on the attached Panel

Service List and to:

Basil A. DiSipio                              3M designated Counsel
Lavin Coleman O'Neil Ricci
 Finarelli & Gray
Suite 1000
510 Walnut Street
Philadelphia, PA 19106.

By: _Steven H. Wodka_

Steven H. Wodka
Attorney-At-Law
577 Little Silver Point Road
P.O. Box 66
Little Silver, NJ 07739-0066
(732) 530-2815

Attorney for Plaintiff

3

# INVOLVED COUNSEL LIST
## DOCKET NO. 875
## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*Marilyn E. Triplett, etc. v. Minnesota Mining & Manufacturing Co., et al.*, W.D. Kentucky, C.A. No.
3:01-11

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, DC 20036

David A. Damico
Burns, White & Hickton
2400 Fifth Avenue Place
120 Fifth Avenue
Pittsburgh, PA 15222

Raymond P. Forceno
Forceno & Hannon
Philadelphia Bourse Building
Suite 1000
Independence Mall East
Philadelphia, PA 19106

Ellen B. Furman
Goldfein & Joseph
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Susan M. Hanson
Stich, Angell, Kreidler & Muth, P.A.
The Crossings, Suite 120
250 2nd Avenue South
Minneapolis, MN 55401

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102

Byron N. Miller
Thompson, Miller & Simpson, PLC
220 West Main Street
Suite 1700
Louisville, KY 40202

Ronald L. Motley
Ness, Motley, Loadholt, Richardson
& Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465

Alton D. Priddy
Priddy, Isenberg, Miller & Meade
429 W. Muhammad Ali Blvd.
Republic Building, Suite 800
Louisville, KY 40202

John J. Repcheck
Marks, O'Neill
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
John Roven & Associates
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

David V. Scott
Scott & Forrest
409 Bank Street
P.O. Box 785
New Albany, IN 47150

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA 19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
Detroit, MI 48226

Andrew J. Trevelise
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

Steven H. Wodka
P.O. Box 66
Little Silver, NJ 07739