MDL 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JAN 2 9 2002

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE ASBESTOS PRODUCTS<br>LIABILITY LITIGATION (No. VI) | §<br>§<br>§<br>§ | MDL DOCKET NO. 875 |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIAM CARDEN and ELLA CARDEN<br>    Plaintiffs<br><br>VS.<br><br>Able Supply Co., et al<br>    Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION<br>NO. 3-01-2396 |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| PHILLIP DONAKOWSKI;<br>ROALD ANDERSON and<br>DELORES ANDERSON;<br>PAMELA BARNES, Individually and as<br>Personal Representative of the Heirs and<br>Estate of THOMAS BARNES, Deceased;<br>JOHN MITCHELL and JUNE<br>MITCHELL; and CARL RHODES<br>and ELIZABETH RHODES,<br>    Plaintiffs | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION<br>NO. 4-01-968 |

OFFICIAL FILE COPY
IMAGED FEB 4 '02

VS.                                              §
                                                 §
Able Supply Company, et al                       §
        Defendants                               §

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RICKY HUMPHREY and LYDIA          §      CIVIL ACTION
HUMPHREY                          §      NO. 3-01-2447
        Plaintiffs                §
                                  §
                                  §
VS.                               §
                                  §
                                  §
ACandS, Inc., et al               §
        Defendants                §

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GEORGIA LEETH, Individually and as        §      CIVIL ACTION
Personal Representative of the Heirs and  §      NO. 3-01-2475
Estate of JERRY LEETH, Deceased,          §
        Plaintiff                         §
                                          §
                                          §
VS.                                       §
                                          §
                                          §
ACandS, Inc., et al                       §
        Defendants                        §

MOTION TO VACATE THE
CONDITIONAL TRANSFER ORDER

Plaintiffs, pursuant to Rule 12(c) of the Rules of Procedure of the Judicial Panel

on Multidistrict Litigation, move the Panel to vacate its order of December 28, 2001,

conditionally transferring the above-captioned cases to the United States District Court

for the Eastern District of Pennsylvania. This motion is based on the attached Brief in

Support of Motion to Vacate Conditional Transfer Order and such other materials as may

be presented to the Panel at the time of the hearing on the motion.

Pursuant to Rule 12(c), movants request the Clerk to set this motion for hearing at the next session of the Panel.

_1/28/02_
Date

Respectfully Submitted,

**WATERS & KRAUS, LLP**

Charles S. Siegel
Attorney In Charge
State Bar No.  18341875
Federal Bar No.  15736
3219 McKinney Avenue
Suite 3000
Dallas, Texas  75204
(214) 357-6244
(214) 357-7252 facsmile

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2002, a true and correct copy of the foregoing Motion to Vacate the Conditional Transfer Order was mailed, postage pre-paid to each of the attorneys listed on the attached Attorney Service List of the Judicial Panel on Multidistrict Litigation.

Charles S. Siegel

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JAN 2 9 2002

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE ASBESTOS PRODUCTS<br>LIABILITY LITIGATION (No. VI) | §<br>§<br>§<br>§ | MDL DOCKET NO. 875 |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIAM CARDEN and ELLA CARDEN<br>    Plaintiffs<br><br>VS.<br><br>Able Supply Co., et al<br>    Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION<br>NO. 3-01-2396 |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| PHILLIP DONAKOWSKI;<br>ROALD ANDERSON and<br>DELORES ANDERSON;<br>PAMELA BARNES, Individually and as<br>Personal Representative of the Heirs and<br>Estate of THOMAS BARNES, Deceased;<br>JOHN MITCHELL and JUNE<br>MITCHELL; and CARL RHODES<br>and ELIZABETH RHODES,<br>        Plaintiffs | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION<br>NO.  4-01-968 |

1

VS.                                    §
                                       §
Able Supply Company, et al             §
      Defendants                       §

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RICKY HUMPHREY and LYDIA        §        CIVIL ACTION
HUMPHREY                        §        NO.  3-01-2447
      Plaintiffs                §
                                §
                                §
VS.                             §
                                §
ACandS, Inc., et al             §
      Defendants                §

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GEORGIA LEETH, Individually and as       §        CIVIL ACTION
Personal Representative of the Heirs and §        NO. 3-01-2475
Estate of JERRY LEETH, Deceased,         §
      Plaintiff                          §
                                         §
VS.                                      §
                                         §
ACandS, Inc., et al                      §
      Defendants                         §

BRIEF TO VACATE THE CONDITIONAL TRANSFER ORDER

I.      PRELIMINARY STATEMENT

Plaintiffs respectfully file this brief in support of their Motion to Vacate the

Conditional Transfer Order (CTO-209) entered by the Judicial Panel on Multidistrict

Litigation on December 28, 2001.  Pursuant to Panel Rule 7.4(d), this Motion and Brief

to Vacate the Conditional Transfer Order are being filed in support of plaintiffs' Notices

of Opposition which were filed on January 14, 2002 (*See* notices attached as Exhibit A1-A4).

## II.   STATEMENT OF FACTS

Eight plaintiffs, represented in four separate cases, brought claims against various manufacturers and distributors of asbestos products for injuries and deaths incurred from their exposure to these products.  Despite the fact that all four cases were filed in state court against numerous defendants, only three defendants and, in one case, four defendants, filed notices of removal in the cases on or about November 20, 2001, alleging bankruptcy jurisdiction pursuant to 28 U.S.C. §1334.  Since that time, the Honorable Judge Alfred Wolin, who was appointed by the Third Circuit to supervise the asbestos-related bankruptcy cases pending in the District of Delaware, has granted a provisional transfer of these cases to Delaware.

Pursuant to Panel Rule 7.4(b), plaintiffs filed their Notices of Opposition to the Conditional Transfer Order on January 14, 2002.  Now, pursuant to Panel Rules 5.12(a), 5.13 and 7.4(d), plaintiffs file this Motion and Brief to Vacate the Conditional Transfer Order.  This submission is being filed within 15 days of the filing of the Notice of Opposition.  For the reasons stated below, the Conditional Transfer Order should be vacated so that the eight claimants represented in the four cases originally removed by Ford, Chrysler and General Motors—and, in one case, by Honeywell too—can proceed in the timely resolution of their claims in *state* court.

3

III.   ARGUMENT

A.   If These Cases Are To Be In Federal Court At All,
     They Should Be Transferred To The Bankruptcy
     Court in Delaware.

Plaintiffs maintain that the removal of their asbestos-related claims by Ford Motor Company, Chrysler, General Motors and, in Mr. and Mrs. Carden's case, by Honeywell as well, was unwarranted. Rather, these cases should have remained where they were filed—in state court. If these cases are to remain in federal court, however, they should be transferred to the bankruptcy court in Delaware—*not* to MDL. After all, the sole basis for removing over thirty asbestos-related cases by the "friction defendants" in the first place was the alleged relationship with the October 1, 2001, Federal-Mogul Global, Inc. bankruptcy. The removing defendants claim that the presence of a Federal-Mogul entity in the same case in which they were named as a defendant—one of many defendants named—confers bankruptcy jurisdiction over the case. Specifically, the removing defendants assert that, by virtue of any rights of indemnity or contribution against the debtor, Federal-Mogul, that they may have or claim to have, that they too should be able to claim the "safe harbor" that a bankrupt entity is able to enjoy.

It is important to note that two courts have already ruled on Motions for Remand filed in similar cases removed by three of the present removing defendants—Ford, Chrysler and General Motors. In <u>Dotson v. Owens Corning Fiberglass Corp.</u>, No. G-01-759 (S.D. Tex., Dec. 7, 2001), attached as Exhibit B, ruling on whether or not "related to" jurisdiction existed, which would invoke federal jurisdiction, Judge Kent held that "related to" jurisdiction was lacking because "[a]ny potential claims for contribution and/or indemnity that the Automobile Manufacturer defendants may have against

4

Federal-Mogul are merely speculative and, at best, manifestly premature. The Court cannot accept hypothetical claims as a proper basis for federal jurisdiction and therefore concludes that the Court lacks subject matter jurisdiction." (emphasis the Court's). Judge Kent then remanded nineteen asbestos cases removed by these three defendants.

The same day, Chief Judge Haden of the Southern District of West Virginia reached the same result. In In re Asbestos Litigation, he declared that, in an attempt to "sweep every 'friction products' claim to the Delaware court, including plaintiffs' completely non-derivative claims that the Automakers are subject to independent liability for failure to warn of the dangers of their products, whether or not those claims involve a Federal Mogul product," the removing defendants may claim that they maintain a "contractual indemnity" relationship with a Federal Mogul entity. In re Asbestos Litigation, 271 B.R. 118, 125 (S.D. W.Va. 2001)(See order attached as Exhibit C). However, not only has there been no evidence presented, via purchase agreements and purchase orders, establishing such a relationship with the Debtor, but each of the "Big 3" defendants—Ford, Chrysler and General Motors—have filed discovery answers in state court litigation reflecting *that none of them has any indemnity agreement with any Federal Mogul entity, or with anyone at all for that matter.* (*See* answers of Chrysler, Ford and General Motors, attached as Exhibits D1-D3). Despite an obligation pursuant to Tex.R.Civ.Proc. 194 to disclose the existence of any indemnity agreements, no defendant has disclosed the existence of any such agreement.

In addition, Honeywell, the fourth removing defendant in Mr. and Mrs. Carden's case, does not even claim *any* contractual indemnity relationship with any Federal-Mogul entity at all. In fact, Judge Haden, the same judge who issued the Order of Remand in In

re Asbestos Litigation, entered a similar order recently, finding removal was not warranted in cases removed by Honeywell International Inc. In re Claims Removed By Honeywell International Inc., __ F.Supp.2d __, 2002 WL 13277 (S.D. W.Va., Jan. 4, 2002)(See order attached as Exhibit E). Relying on the same analysis used in In re Asbestos Litigation, Chief Judge Haden granted Plaintiffs' motion to remand. Id. at *2.

Finally, it is important to mention that, at the time of removal, none of the removing defendants had ever pursued any cross-claims it alleges to have against various Federal-Mogul entities nor have any of the removing defendants ever sought contribution informally, conducted any discovery, or otherwise prosecuted any claims for contribution against any Federal Mogul entity.

Again, plaintiffs assert—and two courts thus far have ruled accordingly—that there is no bankruptcy jurisdiction present in any of these asbestos-related cases, or in any of the other cases removed for that matter. Ultimately, that is the determination that needs to be made—whether Ford, Chrysler, General Motors, and Honeywell's alleged relationship to the Federal-Mogul bankruptcy is a viable argument. Two federal district court judges have, thus far, found these claims to be without merit and, in turn, have entered their Orders of Remand

    B.    This Panel Should Vacate Its Conditional Transfer Order Because
          These Cases No More Belong In Federal Court Than They Do At
          MDL.

Rule 1 of the Federal Rules of Civil Procedure calls for the "just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1. In essence, every plaintiff is entitled to a speedy and efficient determination of his claim—that is, every plaintiff is entitled to his day in court. However, the transferee court's power does not allow it to

actually *try* asbestos cases which have been transferred to MDL-875 but, rather, it merely presides over pretrial matters. Therefore, should these cases be transferred, the eight plaintiffs here would be denied, as dictated by the Federal Rules of Civil Procedure, their opportunity—and their *right*—to have a timely jury trial. Plaintiffs such as Mr. Carden and Mr. Humphrey, who are currently suffering from terminal advanced asbestos-related cancer, will be denied an opportunity to their day in court while they are still alive and Mrs. Leeth and Mrs. Barnes will lose their chance to vindicate their deceased husbands' rights in a timely fashion.

As this MDL Panel is well aware, 28 U.S.C. §1407(a) states that "when civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. §1407(a). The statute authorizes the transfers of such cases to the Judicial Panel on Multidistrict Litigation upon a determination that transfers would be "for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." Id. Although the Panel may, sua sponte, consider and order transfer, the absence of any of the elements outlined in §1407 would make the Panel's application of the statute inappropriate.

      C.      Since Judge Wolin Has Provisionally Transferred These Cases To Delaware, Where All Bankruptcy Issues Will Be Determined, This Panel Should Refrain From Taking Any Action Regarding These Cases To Avoid Confusion and Conflicting Decisions.

As previously stated, on December 10, 2001, Judge Wolin, appointed by the Third Circuit to supervise the asbestos-related bankruptcy cases pending in the District of Delaware, granted a provisional transfer. This Order, a copy of which is attached as Exhibit D, states that "the Friction Product Claims are hereby provisionally transferred to

this Court pending. . .further Order of the Court providing for notice, a briefing schedule and hearing date for the Transfer Motion."  A briefing schedule was set, briefs were subsequently filed, and a hearing date of February 8, 2002, has been established for final decision on the transfer motion.

Plaintiffs thus submit that, although transfer from state court is not desired, should these cases be transferred, Delaware is the appropriate forum.  Since Judge Wolin has already provisionally transferred these cases, and a permanent transfer may soon follow, any action taken by this Panel regarding these cases would only cause conflicting decisions, cause inconsistencies and create confusion in all matters pertaining to these five cases.  Therefore, in an effort to avoid such pandemonium, this Panel should refrain from entertaining any matters relating to these cases.

> D.   Despite The Conditional Transfer Order, The District Court Judge Still Can Remand These Removed Cases To State Court.

Plaintiffs have filed their Motions for Remand in the four asbestos-related cases removed by defendants Ford, Chrysler, General Motors and Honeywell.  Despite the fact that the Panel entered its Conditional Transfer Order *before* the district court judge was able to rule on the motion, that judge has not lost jurisdiction over these cases and, therefore, *can* make a determination as to plaintiffs' Motion for Remand.  Faulk, et al. v. Owens-Corning Fiberglass Corp., et al., 48 F.Supp.2d 653, 657 (E.D. Tex. 1999); *See* Panel Rule 1.5, 181 F.R.D. 1,3 (1998); *See also* Bartley, et al. v. Borden, Inc., et al., 1996 WL 68482 (E.D. La. 1996)(citing Panel Rule 18 which states that the pendency of a conditional transfer order "does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court" within the prescribed fifteen day period.)

8

In fact, the facts of the <u>Faulk</u> case strongly resemble the four cases before us now. In that case, the defendants removed two separate asbestos cases from the 172nd Judicial District for Jefferson County, Texas. <u>Faulk</u>, supra at 656. Plaintiffs filed motions to remand in both cases but, as was the case here, the Panel conditionally transferred these cases to the United States District Court for the Eastern District of Pennsylvania. <u>Id</u>. at 657. In a footnote, the court cited the Panel Rules in pointing out that, despite the Conditional Transfer Order, the U.S. District judge retained jurisdiction since the order did not become effective until filed in the office of the Clerk of the United States District Court for the Eastern District of Pennsylvania. <u>Id</u>. Further, "transmittal of this conditional order to said Clerk shall be stayed fifteen days from the entry thereof and if any party files a notice of opposition with the Clerk of the Panel within this fifteen day period, the stay will be continued until further order of this Panel." <u>Id</u>.

In the cases presented before us now, plaintiffs filed their notices of opposition on January 14, 2002, within the prescribed fifteen-day period. Therefore, transmittal of CTO-209 was stayed and continues to be stayed until further action by this Panel. Finally, since the cases have not been finally transferred, but only "provisionally" transferred, pending a final decision on transfer, they are still technically pending in the original district court to which they were removed. Thus, not only does the United States District Court judge retain jurisdiction to rule on the Motions for Remand before him, but he may promptly do so and preserve the plaintiffs' right to a timely resolution of their claims.

IV.    CONCLUSION

The Conditional Transfer Order entered by the Judicial Panel on December 28,

2001, should be vacated.  The basis for removal, its alleged relationship to Federal-

Mogul's bankruptcy, is without merit.  Several district courts have already ruled

accordingly, finding no "related to" jurisdiction.  Not only was there no basis warranting

removal of these five asbestos-related cases to federal court in the first place, equity and

our Federal Rules demand that the eight plaintiffs represented in these lawsuits be

afforded their right to a timely resolution of their claims in court—*state* court.

Plaintiffs respectfully request that the Panel vacate CTO-209, its order

conditionally transferring these cases to MDL, so that these cases can proceed to trial in

timely fashion.

Respectfully Submitted,

**WATERS & KRAUS, LLP**
**Counsel for Plaintiffs**

Charles S. Siegel
Attorney in Charge
State Bar No.  18341875
Federal Bar No.  15736
3219 McKinney Avenue
Suite 3000
Dallas, Texas  75204
(214) 357-6244
(214) 357-7252 (facsimile)

10

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JAN 2 9 2002

FILED
CLERK'S OFFICE

A

1

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE ASBESTOS PRODUCTS | § | |
| LIABILITY LITIGATION (No. VI) | § | MDL DOCKET NO. 875 |
| | § | |
| | § | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIAM CARDEN and ELLA CARDEN | § | CIVIL ACTION |
|     Plaintiffs | § | NO. 3-01-2396 |
| | § | |
| VS. | § | |
| | § | |
| Able Supply Co., et al | § | |
|     Defendants | § | |

NOTICE OF OPPOSITION TO TRANSFER

Come now Plaintiffs and file this Notice of Opposition to the Conditional Transfer Order

(CTO-209) entered by the Panel on December 28, 2001.

WILLIAM CARDEN and ELLA CARDEN are plaintiffs in an action styled WILLIAM

CARDEN and ELLA CARDEN vs. Able Supply Co., et al; No. 3-01-2396, pending in the United

States District Court Northern District of Texas, Dallas Division.  Pursuant to Panel Rule 7.4(c), the

plaintiffs file this notice of opposition to apprise the Panel of their opposition to transfer.

1



Pursuant to Panel Rule 7.4(d), plaintiffs shall file, within 15 days of the filing of this notice, their motion to vacate conditional transfer order and supporting brief.

Respectfully submitted,

Charles S. Siegel
Texas State Bar No. 18341875
Federal ID No. 15736
Waters & Kraus, LLP
3219 McKinney Avenue, Suite 3000
Dallas, Texas 75204
(214) 357-6244
(214) 871-2263 Fax


Henry Simon
State Bar No. 18394000
Simon, Warner & Doby, LLP
1700 City Center Tower II
301 Commerce Street
Fort Worth, Texas 76102
(817) 810-5250
(817) 810-5255 Fax

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Notice of Opposition has been served by facsimile on all counsel of record on this 14th day of January, 2002.

Charles S. Siegel

**2**

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE ASBESTOS PRODUCTS<br>LIABILITY LITIGATION (No. VI) | §<br>§<br>§<br>§ | MDL DOCKET NO. 875 |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| PHILLIP DONAKOWSKI;<br>ROALD ANDERSON and<br>DELORES ANDERSON;<br>PAMELA BARNES, Individually and as<br>Personal Representative of the Heirs and<br>Estate of THOMAS BARNES, Deceased;<br>JOHN MITCHELL and JUNE MITCHELL;<br>and CARL RHODES and ELIZABETH<br>RHODES,<br>     Plaintiffs<br><br>VS.<br><br>Able Supply Company, et al<br>     Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION<br>NO.  4-01-968 |

1



## NOTICE OF OPPOSITION TO TRANSFER

Come now Plaintiffs and file this Notice of Opposition to the Conditional Transfer Order (CTO-209) entered by the Panel on December 28, 2001.

PHILLIP DONAKOWSKI; ROALD ANDERSON and DELORES ANDERSON; PAMELA BARNES, Individually and as Personal Representative of the Heirs and Estate of THOMAS BARNES, Deceased; JOHN MITCHELL and JUNE MITCHELL; and CARL RHODES and ELIZABETH RHODES are plaintiffs in an action styled PHILLIP DONAKOWSKI; ROALD ANDERSON and DELORES ANDERSON; PAMELA BARNES, Individually and as Personal Representative of the Heirs and Estate of THOMAS BARNES, Deceased; JOHN MITCHELL and JUNE MITCHELL; and CARL RHODES and ELIZABETH RHODES vs. Able Supply Co., et al; No. 4-01-968, pending in the United States District Court Northern District of Texas, Fort Worth Division.  Pursuant to Panel Rule 7.4(c), the plaintiffs file this notice of opposition to apprise the Panel of their opposition to transfer.

Pursuant to Panel Rule 7.4(d), plaintiffs shall file, within 15 days of the filing of this notice, their motion to vacate conditional transfer order and supporting brief.

Respectfully submitted,

Charles S. Siegel
Texas State Bar No. 18341875
Federal ID No. 15736
Waters & Kraus, LLP
3219 McKinney Avenue, Suite 3000
Dallas, Texas 75204
(214) 357-6244
(214) 871-2263 Fax

2

Henry Simon
State Bar No. 18394000
Simon, Warner & Doby, LLP
1700 City Center Tower II
301 Commerce Street
Fort Worth, Texas 76102
(817) 810-5250
(817) 810-5255 Fax

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Notice of Opposition has been served by facsimile on all counsel of record on this 14th day of January, 2002.

Charles S. Siegel

3

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE ASBESTOS PRODUCTS | § | |
| LIABILITY LITIGATION (No. VI) | § | MDL DOCKET NO. 875 |
| | § | |
| | § | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | | |
|---|---|---|---|
| RICKY HUMPHREY and LYDIA | § | CIVIL ACTION | |
| HUMPHREY | § | NO. 3-01-2447 | |
|     Plaintiffs | § | | § |
| VS. | § | | |
| | § | | |
| ACandS, Inc., et al | § | | |
|     Defendants | § | | |

NOTICE OF OPPOSITION TO TRANSFER

Come now Plaintiffs and file this Notice of Opposition to the Conditional Transfer Order

(CTO-209) entered by the Panel on December 28, 2001.

RICKY HUMPHREY and LYDIA HUMPHREY are plaintiffs in an action styled RICKY

HUMPHREY and LYDIA HUMPHREY vs. AcandS, Inc., et al; No. 3-01-2447, pending in the

United States District Court Northern District of Texas, Dallas Division.  Pursuant to Panel Rule

1



7.4(c), the plaintiffs file this notice of opposition to apprise the Panel of their opposition to transfer.

Pursuant to Panel Rule 7.4(d), plaintiffs shall file, within 15 days of the filing of this notice,

their motion to vacate conditional transfer order and supporting brief.

Respectfully submitted,

_____

Charles S. Siegel
Texas State Bar No. 18341875
Federal ID No. 15736
Waters & Kraus, LLP
3219 McKinney Avenue, Suite 3000
Dallas, Texas 75204
(214) 357-6244
(214) 871-2263 Fax


Henry Simon
State Bar No. 18394000
Simon, Warner & Doby, LLP
1700 City Center Tower II
301 Commerce Street
Fort Worth, Texas 76102
(817) 810-5250
(817) 810-5255 Fax

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Notice of Opposition has been served

by facsimile on all counsel of record on this 14th day of January, 2002.

_____

Charles S. Siegel

2

**4**

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE ASBESTOS PRODUCTS | § | |
| LIABILITY LITIGATION (No. VI) | § | MDL DOCKET NO. 875 |
| | § | |
| | § | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GEORGIA LEETH, Individually and as | § | CIVIL ACTION |
| Personal Representative of the Heirs and | § | NO. 3-01-2475 |
| Estate of JERRY LEETH, Deceased, | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | |
| | § | |
| ACandS, Inc., et al | § | |
| Defendants | § | |

NOTICE OF OPPOSITION TO TRANSFER

Come now Plaintiffs and file this Notice of Opposition to the Conditional Transfer Order

(CTO-209) entered by the Panel on December 28, 2001.

GEORGIA LEETH, Individually and as Personal Representative of the Heirs and Estate of

JERRY LEETH, Deceased is a plaintiff in an action styled GEORGIA LEETH, Individually and as

1



Personal Representative of the Heirs and Estate of JERRY LEETH, Deceased vs. AcandS, Inc., et al;

No. 3-01-2475, pending in the United States District Court Northern District of Texas, Dallas

Division.  Pursuant to Panel Rule 7.4(c), the plaintiffs file this notice of opposition to apprise the

Panel of their opposition to transfer.

Pursuant to Panel Rule 7.4(d), plaintiffs shall file, within 15 days of the filing of this notice,

their motion to vacate conditional transfer order and supporting brief.

Respectfully submitted,

_____
Charles S. Siegel
Texas State Bar No. 18341875
Federal ID No. 15736
Waters & Kraus, LLP
3219 McKinney Avenue, Suite 3000
Dallas, Texas 75204
(214) 357-6244
(214) 871-2263 Fax


Henry Simon
State Bar No. 18394000
Simon, Warner & Doby, LLP
1700 City Center Tower II
301 Commerce Street
Fort Worth, Texas 76102
(817) 810-5250
(817) 810-5255 Fax

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Notice of Opposition has been served

by facsimile on all counsel of record on this 14th day of January, 2002.

_____
Charles S. Siegel

2

B

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### GALVESTON DIVISION

United States Courts
Southern District of Texas
ENTERED

DEC 0 7 2001

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| ERNEST GLENN DOTSON et al. | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. G-01-759 |
| v. | § | |
| | § | |
| OWENS CORNING FIBERGLAS | § | |
| CORPORATION et al. | § | |
| Defendants. | § | |

## ORDER GRANTING PLAINTIFFS' EMERGENCY MOTION TO REMAND AND DENYING PLAINTIFFS' MOTION TO ABSTAIN AND DENYING PLAINTIFFS' MOTION FOR SANCTIONS

This state-law tort action is one of nineteen asbestosis cases recently removed to this court from various Texas state district courts by Defendants DaimlerChrysler Corporation, Ford Motor Company and General Motors Corporation (collectively, "Automobile Manufacturer Defendants") allegedly pursuant to this Court's bankruptcy jurisdiction. The Automobile Manufacturer Defendants cite the Chapter 11 bankruptcy filing of several entities under the umbrella of Federal Mogul Global, Inc. ("Federal Mogul") as the basis for their removal. Specifically, the Automobile Manufacturer Defendants allege removal is proper because this lawsuit is "related to" the Federal Mogul bankruptcy by virtue of their potential claims or cross-claims for indemnity and/or contribution against Federal Mogul. Now before the Court is Plaintiffs' Emergency Motion to Remand and Abstain, and for Sanctions, filed December 5, 2001. For the reasons articulated below, Plaintiffs' Motion to Remand is **GRANTED**, Plaintiffs' Motion to Abstain is **DENIED**, and Plaintiffs' Motion for Sanctions is **DENIED**.

### I.   *Claims Against the Defendants other than the Automobile Manufacturer Defendants*

At the outset, the Court concludes that the Plaintiffs' claims against the Defendants other than the Automobile Manufacturer Defendants ("Other Defendants") were improperly removed to



this Court. As such, the Court hereby **REMANDS** all claims brought by Plaintiffs against the Other

Defendants to the state district court from which they were removed for **LACK OF SUBJECT**

**MATTER JURISDICTION**.

## II.   *Claims against the Automobile Manufacturer Defendants*

After careful consideration of all of the pleadings and evidence submitted by the parties

herein to date, and extensive arguments of counsel, the Court finds that Plaintiffs' claims against the

Automobile Manufacturer Defendants do not relate to a case under Title 11 or arise under Title 11,

as a matter or law. Any potential claims for contribution and/or indemnity that the Automobile

Manufacturer Defendants may have against Federal Mogul are merely speculative and, at best,

manifestly premature. The Court cannot accept hypothetical claims as a proper basis for federal

jurisdiction and therefore, concludes that the Court **LACKS SUBJECT MATTER**

**JURISDICTION** over these claims as a matter of law. Accordingly, Plaintiff's claims against the

Automobile Manufacturer Defendants are hereby **REMANDED** to the state district court from

which they were removed. The Court further notes that pursuant to the clear language of 28 U.S.C.

§ 1447(d), this Order of Remand is "not reviewable on appeal or otherwise." See also, e.g., In re

Rayburn Enterprises, 781 F.2d 501, 502-03 (5th Cir. 1986); Compton v. Compton, 711 F.2d 626,

627 (5th Cir. 1983) (both holding in the context of bankrupty-related cases that "[w]hether the

remand order be viewed as one of abstention or as one grounded in a perceived want of jurisdiction,

we are not empowered to review it").

## III.   *Abstention*

Mandatory abstention becomes relevant only where a removed case "arises under" Title 11

or is "related to" a Title 11 proceeding. See 28 U.S.C. § 1334. Because this Court concludes that this

action does not "arise under" or "relate to" the Federal Mogul Bankruptcy, the Court does not need

to reach Plaintiffs' contention that the Court must abstain and remand this case. Likewise, the Court does not need to address Plaintiffs' request that the Court abstain and remand this action on equitable grounds. Accordingly, Plaintiffs' Motion to Abstain is hereby **DENIED** as moot.

## IV.   *Sanctions*

Plaintiffs seek reimbursement by the Automobile Manufacturer Defendants of the costs and expenses, including attorneys' fees, that they have incurred as a result of this removal. However, because the Court finds no suggestion that the action was removed to this Court in bad faith, Plaintiffs' Motion for Sanctions is hereby **DENIED**. All Parties are hereby **ORDERED** to bear their own costs, including attorneys' fees, incurred herein to date.

Any other pending Motions, filed any Party to this lawsuit, are hereby **DENIED** as moot.

**IT IS SO ORDERED**.

**DONE** this ___ day of December, 2001 at Galveston, Texas.

SAMUEL B. KENT
UNITED STATES DISTRICT JUDGE

C

Page 5

United States District Court, S.D. West Virginia.

In re ASBESTOS LITIGATION.

Civ. A. Nos. 2:01-1055 to 2:01-1074, 2:01-1085 to
2:01-1224.

Dec. 7, 2001.

State-court personal injury actions against automakers and numerous other defendants were removed by automakers on grounds of being related to pending bankruptcy of alleged parent of defendant auto parts companies. Plaintiffs moved to remand. The District Court, Haden, Chief Judge, held that: (1) removal was not warranted based on alleged debtor status of auto parts companies; (2) removal was not warranted by existence of unenforced boilerplate indemnity agreement between automaker and auto parts company; and (3) equitable remand was warranted.

Motion granted.

West Headnotes

[1] Bankruptcy ⬤═2086.1
51k2086.1

[1] Bankruptcy ⬤═2090
51k2090

[1] Removal of Cases ⬤═107(.5)
334k107(.5)

General principles of removal and remand apply to bankruptcy, as well as non-bankruptcy, actions.

[2] Bankruptcy ⬤═2089
51k2089

In bankruptcy removals, because any party may remove, there is no rule of unanimity. 28 U.S.C.A. § 1452(a).

[3] Removal of Cases ⬤═2
334k2

Removal statutes must be construed strictly against removal.

[4] Bankruptcy ⬤═2043(3)
51k2043(3)

Test for determining whether civil proceeding is "related to" bankruptcy is whether outcome of that proceeding could conceivably have any effect on estate being administered in bankruptcy; proceeding need not necessarily be against debtor or against debtor's property. 28 U.S.C.A. § 1334(b).

[5] Bankruptcy ⬤═2043(3)
51k2043(3)

Mere fact that there may be common issues of fact between civil proceeding and controversy involving bankruptcy estate does not make proceeding "related to" bankruptcy. 28 U.S.C.A. § 1334(b).

[6] Bankruptcy ⬤═2045
51k2045

[6] Bankruptcy ⬤═2087
51k2087

Auto parts manufacturers, two of many defendants in state personal injury actions, were not debtors, so as to render actions "related to" bankruptcy proceeding involving manufacturers' alleged parent and thus removable, merely by virtue of fact that debtor's subsidiary had assumed certain indemnity obligations of manufacturers' former parent; indemnity obligations had not been triggered, removing defendants did not have substantial claims against manufacturers within those limited obligations, and vast majority of defendants in removed actions were third-party nondebtors, including removing defendants. 28 U.S.C. §§ 1334(b), 1452(a).

[7] Bankruptcy ⬤═2087
51k2087

Removal of personal injury action against automaker, on theory that it was related to bankruptcy proceeding involving supplier's parent, was not warranted by mere existence of purported indemnity agreement between supplier and automaker, where agreement, contained in boilerplate on preprinted form, contained terms extremely wide-ranging and generous to automaker, as drafter, which were not bargained for; whether indemnity agreement would bind debtor was open question, and thus whether personal injury action

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works



271 B.R. 118
(Cite as: 271 B.R. 118, 2001 WL 1561793 (S.D.W.Va.))

would have substantial effect on debtor's estate was likewise open question.  28 U.S.C. / §§ 1334(b), 1452(a).

[8] Bankruptcy ☞2091
51k2091

Factors in determining whether to equitably remand action removed on grounds of being related to bankruptcy proceeding are as follows: (1) whether remand would prevent duplication or uneconomical use of judicial resources; (2) effect of remand on administration of bankruptcy estate; (3) whether case involves questions of state law better addressed by state court; (4) comity; (5) judicial economy; (6) prejudice to involuntarily removed parties; (7) effect of bifurcating action, including whether remand will increase or decrease possibility of inconsistent results; (8) predominance of state law issues and non-debtor parties; and (9) expertise of court in which action originated. 28 U.S.C. §§ 1334(b), 1452(a).

[9] Bankruptcy ☞2091
51k2091

Equitable remand was warranted in mass-tort personal injury actions removed as "related to" bankruptcy proceeding; actions involved approximately 150 defendants, all except two of which were nondebtors and strangers to bankruptcy proceeding, mechanism was already in place to try actions in state court, including mass litigation panel and procedure, and federal jurisdiction was doubtful since "related to" argument was based on untriggered indemnity agreements and attenuated business relationships. 28 U.S.C.. §§ 1334(b), 1452(a).

*119 Ronald L. Motley, Esquire, Ness, Motley, Loadholt, Richardson & Poole, P.A., Mt. Pleasant, SC, Scott S. Segal, Esquire, Segal Law Firm, J. David Cecil, Esquire, James Humphreys & Associates, L.C., Charleston, WV, for Plaintiffs.

J. Tyler Dinsmore, Esquire, Flaherty, Sensabaugh & Bonasso, Charleston, WV, Steven R. Williams, Esquire, McGuire Woods, LLP, Richmond, VA, David Bernick, Esquire, Kirkland & Ellis, Chicago, IL, John R. McGhee, Jr., Esquire, Kay, Casto & Chaney, Charleston, WV, for Removing Defendants.

*MEMORANDUM OPINION AND REMAND*

*ORDER*

HADEN, Chief Judge.

**1 Pending are the motions of Plaintiffs in these civil actions 1) to remand them to the Circuit Court of Kanawha County, West Virginia, 2) to abstain from hearing these claims, or 3) to enjoin their transfer to the District Court for the District of Delaware (Delaware court).  For reasons discussed below, the Court GRANTS the motion for remand. The remaining motions are DENIED as moot.

I. FACTUAL AND PROCEDURAL
BACKGROUND

On November 20, 2001 pursuant to 28 U.S. §. 1452(a) ar *Bankruptcy K* *12 9027(a), DaimlerChrysler Corporation, Ford Motor Company, and General Motors Corporation (the Removing Defendants or Automakers) removed civil actions numbered -1055 to -1074.  The same day they moved the Delaware court to transfer to that court "all claims and causes of action against the Automobile Manufacturers [Automakers] in state or federal court alleging injuries due to friction products, including brakes and other automotive parts[,]" pursuant to 28 U.S.( § 157(b)(5).  On November 26, 2001 the remaining civil actions numbered -1085 to 1224 were removed.  The Automakers contend the 160 actions removed here are related to the bankruptcy of Federal-Mogul Global, Inc. (Federal-Mogul). [FN1]

FN1. Federal-Mogul filed a petition for Chapter 11 bankruptcy on October 1, 2001, Bankruptcy Case No. 01-10578, United States Bankruptcy Court for the District of Delaware.

Plaintiffs immediately moved for an emergency hearing on motions to remand, abstain, or enjoin transfer of the cases.  Following an expedited briefing schedule, the Court heard extensive argument on December 4, 2001.  The parties have supplemented their initial briefing.  These matters are now ripe for disposition.

II. DISCUSSION
*A. Subject Matter Jurisdiction*

1. Jurisdiction of actions "related to" bankruptcy

[1][2][3] General principles of removal and remand

apply to bankruptcy, as well as non-bankruptcy, actions. *See Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 128, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995). Under the general removal statute, defendants may remove any case of which the district courts have original jurisdiction. [FN2] 28 U.S.C. 1441(a). Removal statutes must be construed strictly against removal. *See Mulcahey v. Columbia Organic Chem. Co., Inc.* 29 F.3d 148, 151 (4th Cir.1994). The party seeking to remove a case to federal court has the burden of establishing federal jurisdiction. *See id.* If federal jurisdiction is doubtful, a remand is necessary. *See id.*

> FN2. Under the statute governing removal of claims related to bankruptcy cases, not only defendants may remove, but removal may be effected by "a party. *Se₁* 28 U.S.C § 1452(a). Another relevant difference of bankruptcy removals: because any party may remove, there is no rule of unanimit *See Creasy v. Coleman Furniture Corp.,* 763 F.2d 656, 660 (4th Cir.1985)

The Automakers removed the state actions pursuant to 28 U.S.C § 1452(a), which provides, "A party may remove any claim or cause of action in any civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). Under Section 1334, district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or *related to a case under title* " 28 U.S.( § 1334(b)(emphasis added). All parties agree, if this Court has jurisdiction over these proceedings, it must be based on their relatedness to the Federal-Mogul bankruptcy.

**\*\*2 [4]** Our Court of Appeals has adopted the *Pacor* test for determining the existence of such related-to jurisdiction:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whethe₁ *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily \*121 be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

*A.H. Robins Co. v. Piccinin* 788 F.2d 994, 1002 n. 11 (4th Cir.1986)(quoting *Pacor v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984  *see also Celotex Corp. v. Edwards* 514 U.S. 300, 308 n. 6, 115 S.Ct. 1493, 131 L.Ed.2d 403 (recognizing the First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits have adopted th *Pacor* test, while the Second and Seventh Circuits have adopted a slight variant, and not choosing one test over the other).

Discussing the *Pacor* test, the Supreme Court said:

> We agree with the views expressed by the Court of Appeals for the Third Circuit in *Pacor* ] that "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate and that the 'related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate. *We also agree with that court's observation that a bankruptcy court's "related to" jurisdiction cannot be limitless.*
> *Celotex,* 514 U.S. at 308, 115 S.Ct. 1493 (citations omitted)(emphasis added).

**[5]** *Pacor'.* limiting language, approved by the Supreme Court, clarified that the related-to jurisdictional test is broad, but

> [o]n the other hand, the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of Section 1471(b). [FN3] Judicial economy itself does not justify federal jurisdiction. *See generally Aldinger v. Howard,* 427 U.S. 1, 15, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). "Jurisdiction over nonbankruptcy controversies with third parties who are otherwise strangers to the civil proceeding and to the parent bankruptcy does not exist.' *In re Haug* 19 B.R. 223, 224-25 (Bankr.D.Ore.1982). *See also In re McConaghy,* 15 B.R. 480, 481 (Bankr.E.D.Va.1981) (Bankruptcy court lacks jurisdiction to decide disputes in which the estate of the debtor has no interest.)

> FN3. Former Section 1471(b) of Title 28 was recodified in identical language as present Section 1334(b).

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

*Pacor,* 743 F.2d at 994.

*Pacor* presented circumstances not dissimilar to those before the Court today.  In *Pacor,* the Higgins (husband and wife) brought a products liability action against Philadelphia Asbestos Co. (trading as Pacor) in state court.  Pacor impleaded Johns-Manville Corporation (J-M) as the alleged manufacturer of the asbestos products Pacor distributed.  When J-M filed for bankruptcy protection, Pacor removed both the Higgins/Pacor and Pacor/J-M third-party claim.  The district court remanded the actions to state court. Pacor appealed.  The Third Circuit affirmed the remand, holding the Higgins/Pacor action was not related to the J-M bankruptcy, finding "[a]t best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville." *Id.* at 995.

*122 **3 The *Pacor* court suggested the outcome might have been different had there been an "explicit indemnification agreement" between Pacor and J-M or if Pacor had been J-M's "contractual guarantor." *I.* Relying on this implication of *Pacor,* our Court of Appeals found jurisdiction related to bankruptcy such that the automatic stay applied [FN4] under the "unusual circumstances" where "there is such an identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party will in effect be a judgment or finding against the debt  *A.H. Robins v. Piccin* 788 F.2d 994, 999 (4th Cir.1986).  On this premise, the Fourth Circuit determined that actions against officers or employees entitled to indemnification under the bankrupt employer's insurance, corporate bylaws, and the governing corporate statute were related to the bankruptcy. *Id.* at 1001-02, 1007.

> FN4. Section 362(a)(1), Title 11, imposes an automatic stay of any proceeding "commenced or [that] could have been commenced against the debtor" at the time of filing the Chapter 11 proceeding, while subsection (a)(3) provides the same protection from suits involving possession or custody of property of the debtor.  11 U.S §'. 362(a)(1);  (a)(3).

Considering these principles, the Court considers the Automakers' showing on the issue of jurisdiction related to the Federal-Mogul bankruptcy.

2. Automakers' Jurisdictional Claims

As an initial matter, the Court notes the Removing Defendants are all solvent, non-debtor defendants, as are all or almost all of the remaining non-removing defendants in these actions, [FN5] none of whom noticed an appearance at the hearing or otherwise expressed their views on removal. Also, the debtor Federal-Mogul has taken no position on these removals. (Mot. to Transfer ¶ 14.)

> FN5. Non-removing Defendants number more than 150.

a. Claims against the alleged debtor

[6] The Automakers removed these actions alleging that Plaintiffs assert various personal injury claims against Federal-Mogul, "its divisions and/or subsidiaries... and the Removing Defendants[.]" (Jt. Notice of Removal ¶ 1.) Federal-Mogul was not named among the multitudinous defendants in any of these actions.  At the hearing on this matter, the Court requested the Automakers provide a list of Defendants satisfying their claim relating these actions to the debtor.   The list subsequently produced showed either Abex Corporation (Abex), Wagner Electric Corporation (Wagner), or both named as a defendant in each of these actions and, according to a separate typed and unauthenticated list, each was an entity of Federal-Mogul.  In their Motion to Transfer, the Automakers state, "Both Abex and Wagner are now part of the Debtor." (Mot. to Transfer at 17.)

Plaintiffs dispute this claim, citing Federal-Mogul's own Informational Brief, which states that Abex "does not have a corporate relationship with any of the Debtors." (Pls.' Supp. Briefing, Objection of the Official Committee of Asbestos Claimants to [Automakers'] Mot. to Transfer at 12.)  The actual Federal-Mogul /Abex connection is delineated thus:
   (a) Abex sold its friction products assets to Moog Automotive, Inc. (Moog), a subsidiary of Cooper Industries, Inc. (Cooper);  (b) Cooper assumed liability under certain circumstances for asbestos personal injury claims alleging exposure to certain Abex friction materials;  and (c *123 a Federal-Mogul subsidiary purchased Moog's stock from Cooper and assumed Cooper's indemnity obligations for claims brought after 1998.
**4 There is no showing the indemnity obligations of Federal-Mogul's subsidiary actually have been

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

triggered, nor that any of the Automakers has a substantial claim against Abex within the limited obligation assumed by Federal-Mogul's subsidiary. The ostensible connection purporting to identify Abex with Federal-Mogul is far from convincing.

To the extent the Wagner/Federal-Mogul connection is supported, it also runs through the Moog/Cooper linkage. [FN6] Given this rickety platform for the Abex- or Wagner-as-debtor claim, the Court is unwilling to rest its jurisdiction on this basis alone. Additionally, as noted above, the vast majority of Defendants in these removed actions are third-party nondebtors, including the Removing Defendants.

> FN6. The transfer motion notes, "In 1998, Federal Mogul acquired Cooper Automotive Co., and, in doing so, assumed all asbestos-related liability of Cooper and Cooper's two former businesses, Abex and Wagner." (Mot. to Transfer at 17, n. 41 (citing *Asbestos Companies Report Annual Numbers of Pending Claims, New Filings in 2000,* 16 Mealey's Litig. Rep.: Asbestos 19 (May 18, 2001)).)

b. Import of indemnification claims

[7] The Motion to Transfer filed by the Removing Defendants in the Delaware court claims:
> 6. The Friction Product Claims have a substantial effect on the Debtor's estate. Their disposition will directly affect the Debtor's rights, property and liabilities. *For example, as a result of such claims, the Automobile Manufacturers will have thousands of claims for indemnification and contribution* [FN7] *against the Debtor, which will significantly impact the bankruptcy estate.*

> FN7. Under West Virginia law, joint tortfeasors are liable for contribution in proportion to their percentage of negligence as determined by a jury. *See Board of Educ. of McDowell County v. Zando, Martin & Milstead, Inc.,* 182 W.Va. 597, 602-03, 390 S.E.2d 796, 801-02 (1990). If the debtor is not a named defendant in these actions, however, the Automakers could have no basis for a contribution claim against them. As discussed above, the relation to the debtor of named Defendants Abex and Wagner remains an open factual question.

(Mot. to Transfer ¶ 6 (emphasis added).)

Of the three Removing Defendants, only

DaimlerChrysler actually claims to have indemnity agreements with Federal Mogul. The evidence thereof consists of an affidavit by a former employee who recalls issuing "purchase orders on Chrysler's behalf to Wagner Electric in the late 1960's and in the 1970's for the procurement of automotive brake components, including brake shoes, pads, linings, etc." (Mot. to Transfer, App. Tab 1 ¶¶ 8-10.) The employee avers the purchase orders would "include language incorporating General Terms and Conditions. *Id* ¶ 6. Nearly illegible purchase orders were attached as examples. The single purchase order addressed to Abex mentions no general terms and conditions. Those addressed to Wagner are filled out on a preprinted form which contains a small print boilerplate reference to general terms and conditions. The terms and conditions actually are found in a massive Chrysler handbook, containing a myriad of terms and conditions including a requirement found under an *Insurance* heading that suppliers must:
> defend, indemnify, and protect Purchaser against all claims, liabilities, losses and damages due to injury or death of any person and damage to or loss of an *12< property out of the improper performance of negligent work under this order or arising out of allegedly defective material or workmanship in the goods and services provided.
(*Id.* Tab. A at 3-72.) [FN8]

> FN8. At oral argument Plaintiffs represented the Automakers have never taken action to enforce this indemnity provision, a proposition the Removing Defendants did not dispute.

Considering Chrysler drafted the terms, which are extremely wide-ranging and generous to the drafter, which were not bargained for and are not present on the form presented to the suppliers (nor is any reference to them present on the form presented to Abex), the question whether this purported indemnity agreement would be determined to bind the suppliers is open and one not easily resolved. The Court is unwilling again to rest subject matter jurisdiction on this tenuous support.

c. Conceivability and mass tort claims

**5 In oral argument, the Removing Defendants emphasized "conceivability" as the crucial aspect of the *Pacoɪ* test and proposed a very broad test as applied by the Sixth Circuit i *In re Dow Corning Corp.,* 86 F.3d 482 (6th Cir.1996). There, the

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

271 B.R. 118                                                        **Page 10**
(Cite as: 271 B.R. 118, *124, 2001 WL 1561793, **5 (S.D.W.Va.))

Sixth Circuit held that even non-contractual claims for implied indemnity or contribution against a debtor supported related-to jurisdiction where the nondebtor defendants had "asserted repeatedly ... they intend to file claims for indemnification and contribution" against the debtor and the contingent claims "unquestionably could ripen into fixed claims." *Id.* at 494. The Sixth Circuit also observed, "A single possible claim for indemnification or contribution simply does not represent the same kind of threat to a debtor's reorganization plan as that posed by the thousands of potential indemnification claims at issue here." *Id.* The Automakers ask the Court to recognize these potential claims in a mass tort setting as sufficient basis to note bankruptcy-related jurisdiction.

The Automakers propose our Court of Appeals accepts this potentiality doctrine, quo *In re Celotex,* 124 F.3d 619, 626 (4th Cir.1997) that the test of related-to jurisdiction does not "require certain or likely alteration of the debtor's rights, liabilities, options or freedom of action" but "[t]he possibility of such alteration or impact is sufficient to confer jurisdiction." The Fourth Circuit, however, did not apply that standard in *Celotex,* but found jurisdiction based on a contractual obligation of indemnity. *See id.* at 627. While the court's general statement might be taken as an approving gloss on "conceivability," its application was limited to actuality.

The actual holding in *Celotex* exemplifies a point the Court finds worth noting: "common sense cautions against an open-ended interpretation of the 'related to' statutory language 'in a universe where everything is related to everything else.' *Matter of FedPak Systems, Inc.* 80 F.3d 207, 214 (7th Cir.1996) (quoting G. Dunne, *The Bottomless Pit of Bankruptcy Jurisdiction* 112 Banking L.J. 957 (Nov-Dec.1995)). The Automakers' claim, at root, is that "the claims against the automobile manufacturers are related to Federal-Mogul's bankruptcy proceedings because they 'arose from business dealings' with the debtor and, moreover, are 'derivative' in nature in that they are based on the same products that are the subject of the claims asserted against the debtor." [FN9] *125 (Mem. in Resp. to Pls.' Mot. to Remand or Abstain at 15-16.) Using this wide broom, the Automakers would sweep every "friction products" claim to the Delaware court, including Plaintiffs' completely non-derivative claims that the Automakers are subject to independent liability for failure to warn of the dangers of their products, whether or not those claims involve a Federal-Mogul product.

> FN9. For this proposition, the Removing Defendants cite *Caperton v. A.T. Massey Coal Co.,* 251 B.R. 322, 325-26 (S.D.W.Va.2000), possibly unaware that the ultimate disposition of that action, following the Bankruptcy Court's determination of the ownership of Plaintiff's claims, was remand to state court, pursuant to 28 U.S.C. § 1334(c)(2). *See Caperton v. A.T. Massey Coal Co.,* 270 B.R. 654 (S.D.W.Va.2001).

The law in this circuit does not support the Removing Defendants' arguments for jurisdiction, based on the incomplete and indeterminate factual showing presently before the Court. [FN10] Accordingly, the Court FINDS and CONCLUDES subject matter jurisdiction over these actions is lacking and they must be REMANDED to the Circuit Court of Kanawha County.

> FN10. "In all events, a jurisdictional inquiry is not the appropriate stage of litigation to resolve these various uncertain questions of ... fact.... Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss. *Hartley v. CSX Transp., Inc.,* 187 F.3d 422, 425 (4th Cir.1999)

**6 Alternatively, however, were the Court found to possess subject matter jurisdiction, nonetheless it would remand on equitable bases, for the reasons discussed below.

*B. Equitable Remand Considerations*

Title 28, Section 1452, governing removal of claims related to bankruptcy cases, provides:
(b) *The court to which such claim or cause of action is removed* may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of the title or by the Supreme Court of the United States under section 1254 of this title.
28 U.S.C. § 1452(b) (emphasis added). Because these actions were removed here, it is without doubt this Court may exercise the statutory authority to

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

remand.

[8] A noted commentator provides an apparently exhaustive list of factors for a court to apply in determining whether to remand for justice, comity, or equity. The Court should consider:

whether remand would prevent duplication or uneconomical use of judicial resources; the effect of the remand on the administration of the bankruptcy estate; whether the case involves questions of state law better addressed by a state court; comity; judicial economy; prejudice to involuntarily removed parties; the effect of bifurcating the action, including whether remand will increase or decrease possibility of inconsistent results; the predominance of state law issues and non-debtor parties; and the expertise of the court in which the action originated.

16 James Wm. Moore et al., Moore's Federal Practice § 107.15[8][e] (3d ed.2001).

At the outset, the Court notes each side questions the "forum shopping" of the other. Forum shopping, however, is merely venue selection with allegedly questionable motive. Plaintiffs always have initial choice of forum, while defendants may remove, when allowed by law. In this action, Plaintiffs and the Removing Defendants have put forward reasons in favor of their preferred forum, state or federal, and *126 the Court considers these reasons not as examples of bad motive or gaming the system, but to weigh the equities, as they appear to this judge.

[9] As the Plaintiffs state their view, these 160 civil action involve thousands of plaintiffs and some 150 defendants, apart from the Automakers. With the purported exception of Abex and Wagner, all these parties are non- debtors and total strangers to the bankruptcy action. The plaintiffs have procedural and substantive rights to have their claims resolved in a timely fashion. They chose the state forum and have been pursuing their claims diligently there. During the hearing, Plaintiffs reported that the state Mass Litigation Panel has set a February 2002 date for pretrial proceedings and a June 2002 date for commencing trials of certain representative actions. Absent the putative bankruptcy-related claims, no federal issues obtain and only state law applies.

**7 The Automakers' proposal, set out in their transfer motion and acceded to at oral argument, is to transfer these actions to Delaware where they

propose a *Daubert* [FN11] hearing on the issue of whether exposure to brake dust during brake maintenance causes illness. Resolution of this issue in their favor will support dismissal of all pending actions on summary judgment, an economical use of judicial resources, they argue, which avoids inconsistent outcomes and clears clogged dockets. Further, they say, there are no complex state-law issues, and thus, federal courts possess the expertise to adjudicate these tort cases.

FN11. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Considering the parties' divergent accounts and perspectives, the Court FINDS and CONCLUDES the balance of equities tips in favor of remand. A mechanism is already in place to try these actions in state court, including the Mass Litigation Panel and Procedure, implemented by the Supreme Court of Appeals of West Virginia *See West Virginia Trial Court Rule* 26.01. Although further refined by the 1999 implementation of this rule, the mass litigation procedure has been employed in the West Virginia courts on past occasions. Both the plaintiffs' bar and defense counsel involved in these actions are conversant with the process and procedures. As noted, that process was underway with regard to the 160 actions removed here. This Court believes federal courts ought not to intrude on state court proceedings, except where law and equity require it. The limited jurisdiction of Article III courts supports this view, as does the general removal rule: where federal jurisdiction is doubtful, remand is necessary. *Mulcahey,* 29 F.3d at 151.

This Court has no reason to doubt or question the capacity of the West Virginia court system to handle these actions, much less to apply state law, an area in which it is the undisputed expert. Application of *Daubert* and related principles to scientific evidentiary questions and proof problems is not the particular province of any system, federal or state. While the Automakers are correct that, if all friction products actions were removed to one court, and if that court were to determine their position on brake dust asbestos-related damage is correct, and if summary judgment were to be granted on all actions, the process would be efficient and the opportunity for inconsistent results would be lessened. This desirable result, however, requires several steps of speculative prognostication. If the

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

271 B.R. 118

(Cite as: 271 B.R. 118, *127, 2001 WL 1561793, **7 (S.D.W.Va.))

predictions are even slightl **127** off, unintended results from improvident removal could be severe. Inefficiencies and delay for these thousands of Plaintiffs, as well as the non-removing Defendants, and state and federal judicial systems could be extreme.

Prejudice to these involuntarily removed parties simply cannot be determined at this time, but the potential is great. What might be categorized as "temporal prejudice" is more likely. That is, these state tort actions have a schedule in place for trials to begin the next calendar year, following pretrial determinations in the next few months. The schedule of the Delaware court must be more uncertain, for initially the matter of transfer of tens of thousands of cases similar to these must be taken up before pretrial matters can be scheduled. Where the Plaintiffs will journey, state or federal courts, Delaware or West Virginia, and when pretrial issues, includin *Daube* will be considered, remain large and open questions. It would be presumptuous of this Court to speculate what effect remand of these 160 cases might have on administration of the bankruptcy estate. The jurisdictional analysis above suggests the impact on the Delaware case, comparatively, would be minimal.

**8 For all these reasons, economical use of judicial resources appears to be a neutral factor, although the efficiency of continuing an ongoing and well understood process weighs in Plaintiffs' favor. As previously recognized, questions of comity, accession to the state courts' knowledge of state law, prejudice to involuntarily removed parties, predominance of state law issues and non-debtor parties, and the expertise of the court in which the action originated all favor the Plaintiffs' argument for remand.

### III. CONCLUSION

Accordingly, the Court GRANTS Plaintiffs' motion and, pursuant to 28 U. : 1452(b), REMANDS these actions to the Circuit Court of Kanawha County, West Virginia for all further proceedings.

The Clerk is directed to provide a certified copy of this Memorandum Opinion and Remand Order to the Circuit Clerk of Kanawha County. The Clerk is directed also to send a copy to counsel for Plaintiffs and the Removing Defendants by facsimile transmission, to all counsel of record by first class mail, and to publish it on the Court's website at http://www.wvsd.uscourts.gov.

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

**D**

1

CAUSE NO. 01-06831-A

| | | |
|---|---|---|
| GEORGIA LEETH, Individually and as Personal Representative of the Heirs and Estate of JERRY LEETH, Deceased. | § § § § | IN THE COUNTY COURT |
| Plaintiffs, | § § | |
| vs. | § § | AT LAW NO. 1 |
| AcandS, INC., et al. | § § | |
| Defendants. | § | DALLAS COUNTY, TEXAS |

## DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES

To:   Plaintiff, Georgia Leeth, by and through her attorney of record, Leslie MacLean, Waters & Kraus, 3219 McKinney Ave., Suite 3000, Dallas, Texas 75204.

Defendant, DaimlerChrysler Corporation ("Chrysler"), submits its Responses to Plaintiff's Request for Disclosures.

## RESPONSES TO REQUEST FOR DISCLOSURE

(a)    the correct names of the parties to this lawsuit;

RESPONSE:  This request was intentionally omitted by plaintiffs.

(b)    the name, address and telephone number of potential parties;

RESPONSE:  Chrysler presently knows of none.

(c)    the legal theories and, in general, the factual bases for your claims or defenses;

RESPONSE:  At this time, Chrysler has not yet developed all of its legal theories and factual basis of defense.  However, responding generally to the assumed nature of Plaintiff's case, Chrysler states that the circumstances associated with the removal of automotive brake products would not have involved the inhalation of sufficient asbestos fibers, if any at all, to cause disease.  The intense heat that develops from the braking process converts more than 99% of the asbestos fibers in brake linings into nonpathogenic material, forsterite.  Based upon these facts, Plaintiff would not have been

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES  - PAGE 1**

Dallas3 721084 v 1, 43920.00588

71



exposed to a dose and concentration of respirable, intact chrysotile asbestos fibers of lengths or amounts that would cause disease. Moreover, processed chrysotile asbestos does not cause mesothelioma. Finally, Plaintiff has alleged exposure to asbestos-containing products that were not manufactured, sold, supplied or distributed by Chrysler. Plaintiff's alleged exposure to these other parties' products may constitute a producing cause of Plaintiff's alleged respiratory illness.

(d)    the amount and any method of calculating economic damages;

RESPONSE:  Not applicable.

(e)    The name, address and telephone number of persons having knowledge of relevant facts regarding this lawsuit, and a brief statement of each identified person's connection with the case;

RESPONSE:  The following persons may have knowledge of relevant facts:

> George Traylor
> 5034 County Road 15
> Wadley, Alabama 36276
> 256/395-4837
> Contact through undersigned counsel only.

George Traylor may testify about general practices relating to brake servicing and repair.

> Paul Kelly
> DaimlerChrysler Corporation
> 1000 Chrysler Drive
> Auburn Mills, Michigan 48326
> Contact through undersigned counsel.

Paul Kelly, a sales and marketing manager for DaimlerChrysler, may testify about the sale of Chrysler friction products.

> James Knoll
> DaimlerChrysler Corporation
> 1000 Chrysler Drive
> Auburn Hills, MI 48326
> Contact through undersigned counsel.

James Knoll, a former brake engineer for Daimler Chrysler, may testify about brake design, brake specifications, and brake manufacturing, including, but not limited to, the composition and asbestos content of brake linings, and the availability or lack of substitutes for asbestos in friction

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES - PAGE 2**

materials.

> Donald Kvarnberg
> DaimlerChrysler Corporation
> 1000 Chrysler Drive
> Auburn Hills, Michigan 48326
> Contact through undersigned counsel.

Donald Kvarnberg, a former brake engineer for Daimler Chrysler, may testify about brake design, brake specifications, and brake manufacturing, including, but not limited to, the composition and asbestos content of brake linings, and the availability or lack of substitutes for asbestos in friction materials..

> Robert Torney
> DaimlerChrysler Corporation
> 1000 Chrysler Drive
> Auburn Hills, Michigan 48326
> Contact through undersigned counsel.

Robert Torney, a packaging engineer for DaimlerChrysler, may testify about warnings on Chrysler friction products.

> Gerald Sattelmeier
> c/o DaimlerChrysler Corporation
> Auburn Hills, Michigan
> Contact through undersigned counsel.

Gerald Sattelmeier is expected to testify regarding DaimlerChrysler Corporation's industrial hygiene practices from 1968 through 1991.

> Vickie A.M. St. Hilaire
> P.O. Box 1842
> Lewiston, ME 04241
> (207) 784-8696

> Dr. Douglas Pohl
> Central Maine Medical Center
> 3300 Main Street
> Lewiston, ME 04240

Ms. St. Hilaire and Dr. Pohl have knowledge of the nature, content, and present location of

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES  - PAGE 3**

73

exhibits and documents produced at the January 4, 2001 deposition of Dr. Pohl and subsequent depositions of Dr. Pohl in this case as well as other asbestos-related personal injury actions. They may also testify regarding facts relevant to DaimlerChrysler Corporation's claim for spoliation of evidence.

> Larry Newton
> 3945 Lakefield Ct.
> Suwanee, Georgia 30024
> (770) 866-3200

Mr. Newton, a certified industrial hygienist, works with Plaintiffs' experts, William Longo, Ph.D. and Richard Hatfield. Mr. Newton may testify concerning the testing he has performed with Dr. Longo and Richard Hatfield on various asbestos containing products.

> Edward E. Hester, Jr.
> 2201 North Glenbrook Drive
> Garland, Texas 75040
> (972) 675-0134

Edward Hester has worked as a mechanic for more than 20 years in Dallas, Texas and is currently an automotive repair instructor at Cedar Valley College. Mr. Hester has performed many brake and clutch repairs throughout his career. Mr. Hester may testify regarding all aspects of brake and clutch repair, the function of brakes and clutches and the known benefits of using asbestos in friction products. Mr. Hester may testify about the differences between OEM and after market brake shoes. Mr. Hester may demonstrate all aspects of brake and clutch repair work, including how to perform a drum and disk brake job, how to arc brake shoes and clean a wheel drum and backing plate. Mr. Hester may testify the minimal amount of dust created, if any, during brake and clutch repair. Mr. Hester may testify about the general working conditions in automotive garages.

He may respond to any testimony by any fact or expert witness regarding the use, repair, manufacture for brakes, general practices in garages, which was known about asbestos in the garage industry and when.

> Bobby Unser
> 7700 Central Ave., SW
> Albuquerque, NM 87121-2113
> (281) 480-9847

Bobby Unser is a race car driver, mechanic, and automobile dealership owner. He will offer testimony regarding automotive repair both in the racing and private industry. Mr. Unser has performed many brake and clutch repairs throughout his career. Mr. Unser may testify regarding all

DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES  - PAGE 4

Dallas3 721084 v 1, 43920 00588

74

aspects of brake and clutch repair, the function of brakes and clutches and the known benefits of using asbestos in friction products. Mr. Unser may testify about the differences between OEM and after market brake shoes. Mr. Unser may demonstrate all aspects of brake and clutch repair work. Mr. Unser may testify regarding the minimal amount of dust created, if any, during brake and clutch repair. Mr. Unser may testify about the general working conditions in automotive garages in the racing and public industry. He may also testify about the availability and performance of non-asbestos containing friction products.

He may respond to any testimony by any fact or expert witness regarding the use, repair, manufacture of brakes, general practices in garages, and what was known about asbestos in the racing and private industry and in the garage industry and when it was known.

Hank Vaughn
Advance Auto Parts
3219 E. Highway 34, Suite A
Newnan, GA 30200

Mr. Vaughn may testify concerning the chain of custody for various friction products tested by William Longo. He may also testify regarding all aspects of brake and clutch repair, the function of brakes and clutches and the known benefits of using asbestos in friction products. Mr. Vaughn may testify about the differences between OEM and after market brake shoes. Mr. Vaughn may demonstrate all aspects of brake and clutch repair work, including how to perform a drum and disk brake job, how to arc brake shoes and clean a wheel drum and backing plate. Mr. Vaughn may testify the minimal amount of dust created, if any, during brake and clutch repair. Mr. Vaughn may testify about the general working conditions in automotive garages.

Denny Edmund Edwards, Sr.
2326 Linson
Beaumont, Texas 77703
(409) 832-6056

Mr. Edwards is a former mechanic. He may testify by deposition taken in Cause No. A-0162248; *Denny Edmund Edwards v. Allied Signal, et al.*, In the 58Th Judicial District of Jefferson, County, Texas, regarding all aspects of brake and clutch repairs. He may testify about how to perform a drum and disk brake job, how to arc brake shoes and clean a wheel drum and backing plate.

A.J. Priest
106 Reliance Court
Rockwall, Texas 75032
(214) 824-3087

DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES  - PAGE 5

Dallas3 721084 v 1, 43920 00588

75

Mr. Priest has a Bachelor of Science in Industrial Technology, Master's, completed course work for a Doctorate in Vocational Education, some 30 years of experience as an ASE Master Certified Mechanic, more than 25 years of experience as a teacher and college professor of automotive technology and education, as well as other training and experience. He may be called to testify concerning matters of fact and opinion relating to his knowledge, education, training and experience in areas relating to mechanic work, brake repair and maintenance and all related issues, the manner in which brake repair and maintenance is or was conducted at relevant times, the similarity of equipment, physical components of friction products and process of brake repair nationwide at relevant times, the lack of accuracy of the purported simulations or descriptions advanced by Plaintiffs' counsel and their witnesses and the bases therefor, the nature and few seconds involved in shaping activities, the absence of a need to shape friction products at various relevant times or circumstances, opinions relating to the Plaintiff's work history and descriptions of his work, and other issues responsive to the testimony of Plaintiffs' experts, once those opinions are provided to Defendants.

The custodian of records of jobsites/premises and of their owners.

Plaintiffs, or any Plaintiffs in any case involving the Plaintiffs' lawyers in these cases, who have been deposed.

Any persons needed for the authentication of any documents, medical records or other evidence.

Any representative of any company, manufacturer, supplier, or distributor who Plaintiff alleges manufactured, supplied, distributed or sold any product to which Plaintiff   allegedly was exposed.

Any records custodians from the Social Security Administration and/or the Bureau of Worker's Compensation, necessary to authenticate records.

Chrysler reserves the right to call at trial any fact witnesses listed by any other parties to this litigation, whether such parties are present at trial or not.

Corporate representatives, co-workers, employees, supervisors or managers of each corporation or employer identified by Plaintiffs in their work history or responses to discovery. These witnesses may testify, either live or by deposition, as to the  existence or lack thereof of Chrysler products at the work sites with which they are familiar.

Corporate Representative of the owner of each work site identified by Plaintiffs in their work history or responses to discovery. This witness will testify as to the existence, or  lack thereof, of Chrysler products at various plants.  In addition, the witness may authenticate photographs and

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S <u>REQUESTS FOR DISCLOSURES</u>  - PAGE 6**

documents from various sites.

Any fact witness necessary for rebuttal.

Chrysler reserves the right to call any co-worker, supervisor, or other person identified by Plaintiffs in their work history sheets, answers or supplemental answers to interrogatories, or depositions.

Chrysler also reserves the right to designate any other person with knowledge of relevant facts subject to further evidence or information that is disclosed by Plaintiffs prior to trial.

Chrysler reserves the right to call and/or cross-examine any witness called by Plaintiffs, or any other Defendant, any witness called for the purpose of laying predicate as to the admissibility of a particular matter and any witness who may be used for rebuttal whose presence cannot reasonably be anticipated by Chrysler at the time of the filing of its Witness List.

Current and former employees at any of Plaintiffs' jobsites, either live or by deposition.

Current and former employees of any insulation company that did work at worksite(s) where Plaintiffs worked, either live or by deposition.

Anyone identified by Plaintiffs or co-workers in depositions or other discovery.

Chrysler adopts the designation of all Independent Medical Examination doctors.

Non-plaintiff employees of worksites identified by Plaintiffs.

(f)     for Defendant's testifying experts:

(1)     the expert's name, address and telephone number;

(2)     the subject matter on which the expert will testify;

(3)     the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of the responding party, documents reflecting such information;

(4)     if the expert is retained by, employed by, or otherwise subject to the control of the responding party:

77

(A)   all documents, tangible things, models or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and

(B)   the expert's current resume and bibliography;

RESPONSE:   The following persons may give expert testimony at the time of trial:

Edward Gaensler, M.D.
Boston University Medical Center
80 East Concord Street
Boston, Massachusetts  02118
617/638-4077

Gerald Kerby, M.D.
University of Kansas Medical Center
3901 Rainbow
Kansas City, Kansas  66160-7381
913/588-5000

Dorsett Smith, M.D.
4301 Colby, Suite 201
Everett Washington  92203
206/259-5171

John Bass, M.D.
2451 Fillingham Street
Tenth Floor, Suite H
Mobile, Alabama 36617
334/471-7888

John R. Holcomb, M.D.
4410 Medical Drive, Suite 440
San Antonio. Texas  78229-3755
210/692-9400

Hans Weill, M.D.
Tulane University
School of Medicine
1700 Perdido Street, Second Floor

DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES  - PAGE 8

Dallas3 721084 v 1, 43920 00588

78

New Orleans, Louisiana 70112
504/588-5265

Drs. Gaensler, Kerby, Smith, Bass, Holcomb and Weill, if called to testify, are expected to provide testimony concerning the anatomy and function of the respiratory and circulatory systems; examinations conducted and opinions regarding tissue samples of decedents; the symptomatology, disease process and diagnosis of asbestosis and cancer of the respiratory system, peritoneum and peritoneal cavity; the nature and extent of medical and scientific knowledge regarding any association of pulmonary disease with asbestos fiber and the effect of exposure to substances other than asbestos in the development and manifestation of diseases of the respiratory system; the methods of diagnosis and means of establishing the differential diagnosis of asbestos-related diseases with non-asbestos related diseases; the incidence of lung cancer in the general population and those individuals exposed to asbestos; cigarette smoking and its effects on the lungs; the difference between impairment and disability; the effect of asbestosis on disability and life expectancy; the lack of relationship between pleural plaques and development of any cancer; the history, evolution and knowledge of asbestos-related diseases; and the evolution of the medical communities' awareness of the increased risks for an asbestos-related disease in the cases of prolonged exposure.

Francis W. Weir, Ph.D.
17350 Tomall Parkway
Suite 330, Willowbrook Place III
Houston, Texas 77064
713/893-4003

Defendant expects to call Francis W. Weir, Ph.D. as an expert witness at the trial of this matter. Dr. Weir's Curriculum Vitae has been previously provided to counsel.

The subjects of Dr. Weir's expected testimony include the fields of pharmacology, toxicology and industrial hygiene, generally, and particularly as they relate to asbestos fiber exposure in various work places. He is expected to testify concerning the types and characteristics of asbestos, as well as the recognized pathogenic potential from exposure to fibers of these substances. If asked, his testimony will include a discussion of the way asbestos containing materials were used generally within industry. He will also be prepared to discuss laws and regulations and relevant standards relating to asbestos exposure, the characteristics and epidemiology of asbestos-related or associated diseases and relevant medical and scientific literature on these subjects. Additionally, he is expected to discuss the evolution of the role of industrial hygiene professionals in the management of industrial health concerns within the U.S. industry. Dr. Weir may also discuss and describe the effects of chemicals, especially those contained in cigarettes, on human physiology.

It is expected that Dr. Weir will offer the opinion that, based on the description of work

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES** - PAGE 9

79

activities of concern in this matter, and assuming those descriptions are correct, there is no scientific basis or affirmative evidence to conclude that plaintiffs' exposures ever regularly exceeded the concurrently acceptable time weighted average values for this material.

Dr. Weir may also testify regarding the knowledge of the toxicology and appreciation for the hazards relating to the use of asbestos containing materials at various intervals throughout the twentieth century.

Dr. Weir's opinions will be based upon his education, experience and professional training, his review of relevant medical, epidemiological, scientific and technical literature, and, his review and analysis of the case specific materials provided to him concerning this matter.

Dr. Weir may also be asked to respond to the testimony of certain witnesses offered at the time of trial including, but not limited to, testimony offered by plaintiffs regarding tests of defendants' products. He, therefore, reserves the right to supplement, amend or otherwise modify the opinions to be offered accordingly. He will continue to review material, which may come to his attention regarding this matter and may utilize this material to develop additional opinions and conclusions or modify his opinions and conclusions, if warranted.

Dr. Weir may testify regarding the ability of friction products, including brakes, to release respirable asbestos during their intended uses. He may testify regarding the general scientific literature, or lack of if, regarding fiber release from friction products or adverse health effects associated with them. He may testify about tests he has done on, grinding, changing and otherwise manipulating friction products and that such activities do not release harmful levels of respirable asbestos fibers.

Philip T. Cagle, M.D.
Pathology Department, Room 220-B
Baylor College of Medicine
One Baylor Plaza
Houston, Texas  77030-3411
713/798-3671

Dr. Cagle is a pathologist. He may testify, live or by deposition, concerning his review of the medical records, pathology and/or work history of Plaintiff and Plaintiff's medical condition, and the cause of Plaintiff's medical condition. His testimony may also include discussion of asbestos and its effect on human health generally and Plaintiff's specifically, and the effect that other substances have on human health generally and Plaintiff's condition specifically. Dr. Cagle may also testify regarding the medical conditions of Plaintiff based on review of medical records, x-rays, Plaintiff's experts' reports and supplemental reports and his training, experience and other special expertise. Further, Dr. Cagle may testify concerning the increased risk, if any, of cancer faced by asbestos exposed

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S <u>REQUESTS FOR DISCLOSURES</u>  - PAGE 10**

$80$

workers and the prognosis of such individuals.

In addition, if called to testify, either live or by deposition, Dr. Cagle is expected to provide testimony regarding the areas stated below:

(1)     the anatomy and function of the respiratory and circulatory systems, including the protective systems of the body with regards to the inhalation and retention of dust, and the diagnosis and treatment of disease affecting such systems;

(2)     the nature of asbestos and asbestos-related diseases;

(3)     the symptomatology, disease process and diagnosis of asbestosis and cancer associated with the respiratory system, peritoneum and peritoneal cavity;

(4)     the nature and extent of medical and scientific knowledge regarding any association of obstructive pulmonary disease with asbestos fiber exposure;

(5)     the effect of exposure to substances other than asbestos on the development and manifestation of obstructive and restrictive conditions and diseases of the respiratory system and other causes of obstructive and restrictive disease or defects of the respiratory system;

(6)     methods of diagnosis of various diseases, especially the means of establishing the differential diagnosis of alleged asbestos-related diseases with other non-asbestos-related diseases;

(7)     incidence of lung cancer among individuals with asbestosis or asbestos exposure as compared to non-asbestotic asbestos workers, non-asbestos exposed workers and to the general population;

(8)     cigarette smoking and its effects on the lungs and other organs;

(9)     the relationship of cigarette smoking to cancer of the lung and cancers of other body parts with reference to epidemiology studies and physiologic effect;

(10)    the difference between impairment and disability;

(11)    the effect of asbestosis or other asbestos-related disease, or asbestos exposure without asbestosis or other asbestos-related disease, on disability and life expectancy;

(12)    the lack of relationship between the presence of pleural plaques and a later

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES  - PAGE 11**

Dallas3 721084 v 1, 43920.00588

81

development of any form of cancer;

(13)   the history of evolution and knowledge of asbestos related diseases;

(14)   the import of any exhibit introduced as evidence, or any items prepared for use or used for demonstrative purposed by any witness;

(15)   cancer incidence in the general population and among asbestos workers and its potential causes;

(16)   the incidence of mesothelioma among various kinds of workers exposed to asbestos, and the relative importance of various fiber types and the cause of mesothelioma; and

(17)   diagnosis of the physical condition and relationship, if any, between Plaintiff and/or Decedent's exposure to asbestos as well as asbestos exposure through brake or clutch servicing.

(18)   may testify in the area of the medical and scientific aspects of exposure to dust as produced by brake or clutch products and the development of asbestos-related disease generally.

(19)   the difference in fiber composition, fiber durability, the human body's ability to clear certain fibers and the fibers relation to types cancer, if any.

(20)   to the extent not covered above, asbestos medicine in general.


Dr. Mark Robert Wick
301 Peacock Drive
Charlottesville, VA 22903-9716
(804) 245-9613
(804) 245-9643

Dr. Wick is a pathologist. He may testify, live or by deposition, concerning his review of the medical records, pathology and/or work history of Plaintiff and Plaintiff's medical condition, and the cause of Plaintiff's medical condition   His testimony may also include discussion of asbestos and its effect on human health generally and Plaintiff's specifically, and the effect that other substances have on human health generally and Plaintiff's condition specifically. Dr. Wick may also testify regarding the medical conditions of Plaintiff based on review of medical records, x-rays, Plaintiff's experts' reports and supplemental reports and his training, experience and other special expertise. Further, Dr. Wick may testify concerning the increased risk, if any, of cancer faced by asbestos exposed

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES  - PAGE 12**

Dallas3 721084 v 1, 43920 00588

82

workers and the prognosis of such individuals.

In addition, if called to testify, either live or by deposition, Dr. Wick is expected to provide testimony regarding the areas stated below:

(1)     the anatomy and function of the respiratory and circulatory systems, including the protective systems of the body with regards to the inhalation and retention of dust, and the diagnosis and treatment of disease affecting such systems;

(2)     the nature of asbestos and asbestos-related diseases;

(3)     the symptomatology, disease process and diagnosis of asbestosis and cancer associated with the respiratory system, peritoneum and peritoneal cavity;

(4)     the nature and extent of medical and scientific knowledge regarding any association of obstructive pulmonary disease with asbestos fiber exposure;

(5)     the effect of exposure to substances other than asbestos on the development and manifestation of obstructive and restrictive conditions and diseases of the respiratory system and other causes of obstructive and restrictive disease or defects of the respiratory system;

(6)     methods of diagnosis of various diseases, especially the means of establishing the differential diagnosis of alleged asbestos-related diseases with other non-asbestos-related diseases;

(7)     incidence of lung cancer among individuals with asbestosis or asbestos exposure as compared to non-asbestotic asbestos workers, non-asbestos exposed workers and to the general population;

(8)     cigarette smoking and its effects on the lungs and other organs;

(9)     the relationship of cigarette smoking to cancer of the lung and cancers of other body parts with reference to epidemiology studies and physiologic effect;

(10)    the difference between impairment and disability;

(11)    the effect of asbestosis or other asbestos-related disease, or asbestos exposure without asbestosis or other asbestos-related disease, on disability and life expectancy;

(12)    the lack of relationship between the presence of pleural plaques and a later

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES  - PAGE 13**

83

development of any form of cancer;

(13)    the history of evolution and knowledge of asbestos related diseases;

(14)    the import of any exhibit introduced as evidence, or any items prepared for use or used for demonstrative purposed by any witness;

(15)    cancer incidence in the general population and among asbestos workers and its potential causes;

(16)    the incidence of mesothelioma among various kirds of workers exposed to asbestos, and the relative importance of various fiber types and the cause of mesothelioma; and

(17)    to the extent not covered above, asbestos medicine in general.

> Dr. John Ritter
> Division of Surgical Pathology
> Suite 300, Peters Building
> Washington University Medical Center
> One Banes Hospital Plaza
> St. Louis, Missouri 63110
> (314) 362-0101

Dr. Ritter is a pathologist. He may testify, live or by deposition, concerning his review of the medical records, pathology and/or work history of Plaintiffs and Plaintiffs' medical condition, and the cause of Plaintiffs' medical condition. His testimony may also include discussion of asbestos and its effect on human health generally and Plaintiffs' specifically, and the effect that other substances have on human health generally and Plaintiffs' condition specifically. Dr. Ritter may also testify regarding the medical conditions of each Plaintiff based on review of medical records, x-rays, Plaintiffs' experts' reports and supplemental reports and his training, experience and other special expertise. Further, Dr. Ritter may testify concerning the increased risk, if any, of cancer faced by asbestos exposed workers and the prognosis of such individuals.

In addition, if called to testify, either live or by deposition, Dr. Ritter is expected to provide testimony regarding the areas stated below:

(1)    the anatomy and function of the respiratory and circulatory systems, including the protective systems of the body with regards to the inhalation and retention of dust, and the diagnosis and treatment of disease affecting such systems;

(2)    the nature of asbestos and asbestos-related diseases;

DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES  - PAGE 14

Dallas3 721084 v 1, 43920 00588

84

(3)     the symptomatology, disease process and diagnosis of asbestosis and cancer associated with the respiratory system, peritoneum and peritoneal cavity;

(4)     the nature and extent of medical and scientific knowledge regarding any association of obstructive pulmonary disease with asbestos fiber exposure;

(5)     the effect of exposure to substances other than asbestos on the development and manifestation of obstructive and restrictive conditions and diseases of the respiratory system and other causes of obstructive and restrictive disease or defects of the respiratory system;

(6)     methods of diagnosis of various diseases, especially the means of establishing the differential diagnosis of alleged asbestos-related diseases with other non-asbestos-related diseases;

(7)     incidence of lung cancer among individuals with asbestosis or asbestos exposure as compared to non-asbestotic asbestos workers, non-asbestos exposed workers and to the general population;

(8)     cigarette smoking and its effects on the lungs and other organs;

(9)     the relationship of cigarette smoking to cancer of the lung and cancers of other body parts with reference to epidemiology studies and physiologic effect;

(10)    the difference between impairment and disability;

(11)    the effect of asbestosis or other asbestos-related disease, or asbestos exposure without asbestosis or other asbestos-related disease, on disability and life expectancy;

(12)    the lack of relationship between the presence of pleural plaques and a later development of any form of cancer;

(13)    the history of evolution and knowledge of asbestos related diseases;

(14)    the import of any exhibit introduced as evidence, or any items prepared for use or used for demonstrative purposed by any witness;

(15)    cancer incidence in the general population and among asbestos workers and its potential causes;

(16)    the incidence of mesothelioma among various kinds of workers exposed to asbestos,

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES  - PAGE 15**

and the relative importance of various fiber types and the cause of mesothelioma; and

(17)   to the extent not covered above, asbestos medicine in general.

J. LeRoy Balzer, Ph.D.
1052 Wickham Drive
Moraga, California 94556

Dr. Balzer has personal knowledge of relevant facts, but is also an expert based upon his specialized knowledge, skill and training. Dr. Balzer may testify, either live or by deposition, about his tests of friction products some of which have been outlined in his published articles. He may also evaluate the testing methods employed by Plaintiff's witnesses, and any conclusions reached. Dr. Balzer may testify about the size, construction, layout and working environment of facilities similar to those where the Plaintiff worked. As an industrial hygienist, Dr. Balzer may testify about the nature of the working environment in such locations. He may also testify about his knowledge of the composition and asbestos content, if any, of the products involved in this case, as well as other asbestos-containing products and may testify concerning the ability of such products to emit asbestos fibers under certain conditions. He may testify about his studies, published and unpublished, of work around, and ability of asbestos- containing products, to release asbestos fibers. He may testify about the characteristics and health effects, if any, associated with the various forms of asbestos fibers. Balzer may also testify about the history and use of threshold limit values. He may also testify as to any matter raised by experts called by Plaintiffs or any co-Defendants.

Victor L. Roggli, M.D.
Duke University Medical Center
Department of Pathology
Box 3712
Durham, North Carolina  27710
919/286-0411

Dr. Roggli is a pathologist. He may testify, live or by deposition, including, but not limited to, the deposition taken in *Edith B. King, Executrix of the Estate of William B. King, Deceased v. Allied Signal, Inc., et al.*, At Law No. 24242C-03, In the Circuit Court for the City of Newport News, Virginia, on January 18, 2001, concerning his review of the medical records, pathology and/or work history of Plaintiff and Plaintiff's medical condition, and the cause of Plaintiff's medical condition. His testimony may also include discussion of asbestos and its effect on human health generally and Plaintiff's specifically, and the effect that other substances have on human health generally and Plaintiff's condition specifically. Dr. Roggli may also testify regarding the medical conditions of Plaintiff based on review of medical records, x-rays, Plaintiff's experts' reports and supplemental reports and his training, experience and other special expertise. Further, Dr. Roggli may

DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES   - PAGE 16

86

testify concerning the increased risk, if any, of cancer faced by asbestos exposed workers and the prognosis of such individuals.

In addition, if called to testify, either live or by deposition, Dr. Roggli is expected to provide testimony regarding the areas stated below:

(1)     the anatomy and function of the respiratory and circulatory systems, including the protective systems of the body with regards to the inhalation and retention of dust, and the diagnosis and treatment of disease affecting such systems;

(2)     the nature of asbestos and asbestos-related diseases;

(3)     the symptomatology, disease process and diagnosis of asbestosis and cancer associated with the respiratory system, peritoneum and peritoneal cavity;

(4)     the nature and extent of medical and scientific knowledge regarding any association of obstructive pulmonary disease with asbestos fiber exposure;

(5)     the effect of exposure to substances other than asbestos on the development and manifestation of obstructive and restrictive conditions and diseases of the respiratory system and other causes of obstructive and restrictive disease or defects of the respiratory system;

(6)     methods of diagnosis of various diseases, especially the means of establishing the differential diagnosis of alleged asbestos-related diseases with other non-asbestos-related diseases;

(7)     incidence of lung cancer among individuals with asbestosis or asbestos exposure as compared to non-asbestotic asbestos workers, non-asbestos exposed workers and to the general population;

(8)     cigarette smoking and its effects on the lungs and other organs;

(9)     the relationship of cigarette smoking to cancer of the lung and cancers of other body parts with reference to epidemiology studies and physiologic effect;

(10)    the difference between impairment and disability;

(11)    the effect of asbestosis or other asbestos-related disease, or asbestos exposure without asbestosis or other asbestos-related disease, on disability and life expectancy;

87

(12)     the lack of relationship between the presence of pleural plaques and a later development of any form of cancer;

(13)     the history of evolution and knowledge of asbestos related diseases;

(14)     the import of any exhibit introduced as evidence, or any items prepared for use or used for demonstrative purposed by any witness;

(15)     cancer incidence in the general population and among asbestos workers and its potential causes;

(16)     the incidence of mesothelioma among various kinds of workers exposed to asbestos, and the relative importance of various fiber types and the cause of mesothelioma; and

(17)     diagnosis of the physical condition and relationship, if any, between Plaintiff and/or Decedent's exposure to asbestos as well as asbestos exposure through brake or clutch servicing.

(18)     may testify in the area of the medical and scientific aspects of exposure to dust as produced by brake or clutch products and the development of asbestos-related disease generally.

(19)     may testify that exposure to dust from brake and clutch products does not cause mesothelioma.

(20)     the difference in fiber composition, fiber durability, the human body's ability to clear certain fibers and the fibers relation to types cancer, if any.

(21)     to the extent not covered above, asbestos medicine in general.

John F. Craighead, M.D.
1845 Four Winds Road
Ferrisburgh, Vermont  05456
802/425-3480

Dr. Craighead is a pathologist. He may testify, live or by deposition, concerning his review of the medical records, pathology and/or work history of Plaintiff and Plaintiff's medical condition, and the cause of Plaintiff's medical condition. His testimony may also include discussion of asbestos and its effect on human health generally and Plaintiff's specifically, and the effect that other substances have on human health generally and Plaintiff's condition specifically. Dr. Craighead may also testify regarding the medical

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S <u>REQUESTS FOR</u> <u>DISCLOSURES</u>  - PAGE 18**

Dallas3 721084 v 1, 43920 00588

conditions of Plaintiff based on review of medical records, x-rays, Plaintiff's experts' reports and supplemental reports and his training, experience and other special expertise.  Further, Dr. Craighead may testify concerning the increased risk, if any, of cancer faced by asbestos exposed workers and the prognosis of such individuals.

In addition, if called to testify, either live or by deposition, Dr. Craighead is expected to provide testimony regarding the areas stated below:

(1)     the anatomy and function of the respiratory and circulatory systems, including the protective systems of the body with regards to the inhalation and retention of dust, and the diagnosis and treatment of disease affecting such systems;

(2)     the nature of asbestos and asbestos-related diseases;

(3)     the symptomatology, disease process and diagnosis of asbestosis and cancer associated with the respiratory system, peritoneum and peritoneal cavity;

(4)     the nature and extent of medical and scientific knowledge regarding any association of obstructive pulmonary disease with asbestos fiber exposure;

(5)     the effect of exposure to substances other than asbestos on the development and manifestation of obstructive and restrictive conditions and diseases of the respiratory system and other causes of obstructive and restrictive disease or defects of the respiratory system;

(6)     methods of diagnosis of various diseases, especially the means of establishing the differential diagnosis of alleged asbestos-related diseases with other non-asbestos-related diseases;

(7)     incidence of lung cancer among individuals with asbestosis or asbestos exposure as compared to non-asbestotic asbestos workers, non-asbestos exposed workers and to the general population;

(8)     cigarette smoking and its effects on the lungs and other organs;

(9)     the relationship of cigarette smoking to cancer of the lung and cancers of other body parts with reference to epidemiology studies and physiologic effect;

(10)    the difference between impairment and disability;

(11)    the effect of asbestosis or other asbestos-related disease, or asbestos exposure without

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES** - PAGE 19

Dallas3 721084 v 1, 43920 00588

89

asbestosis or other asbestos-related disease, on disability and life expectancy;

(12)    the lack of relationship between the presence of pleural plaques and a later development of any form of cancer;

(13)    the history of evolution and knowledge of asbestos related diseases;

(14)    the import of any exhibit introduced as evidence, or any items prepared for use or used for demonstrative purposed by any witness;

(15)    cancer incidence in the general population and among asbestos workers and its potential causes;

(16)    the incidence of mesothelioma among various kinds of workers exposed to asbestos, and the relative importance of various fiber types and the cause of mesothelioma; and

(17)    diagnosis of the physical condition and relationship, if any, between Plaintiff and/or Decedent's exposure to asbestos as well as asbestos exposure through brake or clutch servicing.

(18)    may testify in the area of the medical and scientific aspects of exposure to dust as produced by brake or clutch products and the development of asbestos-related disease generally.

(19)    the difference in fiber composition, fiber durability, the human body's ability to clear certain fibers and the fibers relation to types cancer, if any.

(20)    to the extent not covered above, asbestos medicine in general.


Gregory D. Foster, M.D.
and/or Custodian of Records
Pulmonary Medicine Consultants, P.A.
375 Municipal Drive, Suite 218
Richardson, Texas  75080
972/680-0666

Scott R. Donaldson, M.D.
and/or Custodian of Records
Pulmonary Medicine Consultants, P.A.
375 Municipal Drive, Suite 218

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES** - PAGE 20

Richardson, Texas  75080
972/680-0666

Kathryn A. Hale, M.D.
Baylor College of Medicine
Department of Internal Medicine
6550 Fannin, Suite Tower #1236
Houston, Texas 77030
713/790-2076

Robert M. Ross, M.D.
and/or Custodian of Records
17030 Nanes, Suite 214
Houston, Texas  77090
713/440-8851

George Delclos, M.D.
6550 Fannin Street, Suite 2403
Houston, Texas 77030
713/790-6250

David Weill, M.D.
and/or Custodian of Records
Medical City Hospital
Dallas, Texas
972/566-4866

Gail Diane Stockman, M.D., Ph.D.
701 E. Marshall, Suite 4002
Longview, Texas 75601
903/753-0787

Drs. Foster, Donaldson, Ross, Delclos, Hale, Weill and Stockman may testify concerning the examination and diagnosis of the physical condition of Plaintiffs and concerning the overall condition and relationship of that condition, if any, to Plaintiffs' alleged exposure to asbestos. Each doctor may also testify concerning the anatomy and function of the respiratory and circulatory system, the nature of asbestos, the disease process and diagnosis of asbestos and cancer associated with the respiratory system, the nature and extent of medical and scientific knowledge regarding the association of pulmonary disease with asbestos fiber exposure, the effect of exposure to substances other than asbestos on the development or manifestation of obstructive and restrictive conditions and diseases particularly in means of establishing the differential diagnosis of alleged asbestos diseases with other

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES  - PAGE 21**

Dallas3 721084 v 1, 43920 00588

91

government warnings, smoking and other areas of the state-of-the-art, incidents of lung cancer among individuals with asbestosis compared with non-asbestos exposed workers and with the general population, and cigarette smoking and its effects on the lungs.

Sam H. Cade, Jr., M.D.
Radiology Department
Baylor University Medical Center
3500 Gaston Avenue
Dallas, Texas 75242
214/820-3219

Dr. Cade is a B reader and may testify regarding the radiographs of Plaintiffs.

James Robert Shepherd, III, M.D.
University of Texas Health Center at Tyler
Department of Radiology
Post Office Box 2003
Tyler, Texas 75710-2003
903/877-7108

Dr. Shepherd is a B reader and may testify regarding the radiographs of Plaintiffs.

Robert Lampert, M.D.
Baylor College of Medicine
Department of Internal Medicine/Pulmonary Section
6550 Fannin, Suite 1220
Houston, Texas 77030
713/793-8988

Dr. Lampert may testify regarding his examination of Plaintiffs and/or Decedents.

Dr. Andrew Churg
Department of Pathology
University of British Columbia
2211 Wesbrook Mall
Vancouver, BC V6T BS Canada
604/732-0186

Dr. Churg is Board Certified in Anatomic Pathology by the American Board of Pathology. Dr. Churg may provide testimony regarding his examination of plaintiffs' medical records and pathology material. Dr. Churg may also testify regarding the biological effects of asbestos and the

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES** - PAGE 22

Dallas3 721084 v 1, 43920.00588

92

evidence of the relationship between the inhalation of various forms of asbestos fibers and asbestos-associated disease and the factors that go into evaluating whether there is any medical risk from asbestos-containing products. Dr. Churg may further testify regarding the physical and chemical changes that brake linings undergo during the braking process. Dr. Churg may further provide testimony based on biostatistics and his review and analysis of the epidemiological data and literature that brake mechanics and others are not at an increased risk to develop asbestos-related diseases as a result of their work on or around brakes and brake linings. Dr. Churg may also provide testimony regarding animal research concerning asbestos-related disease, the biological effects of asbestos and various other dusts, cancer research, the practices and protocols regarding publication of scientific research and the history of research into such matters in the United states and elsewhere including state of the art. Dr. Churg may also be asked to respond to the testimony from plaintiffs' experts regarding the alleged hazards of exposure to friction materials and their alleged propensity to release fibers.

The observations and opinions offered by Dr. Churg in this matter will be based on his review of the materials provided: a continuing review of the available scientific literature relating to the health effects of materials of interest in this matter and Dr. Churg's education and professional experience.

As Chrysler becomes aware of additional facts and the opinions of plaintiffs' experts, this witness may testify regarding his opinions of the additional facts or in response to the opinions of plaintiffs' experts.

Dr. Morton Corn
The Johns Hopkins University
Department of Environmental Health Sciences
Division of Environmental Health Engineering
615 North Wolfe Street, Room 6010
Baltimore, Maryland  21205
(410) 955-3602

Dr. Corn may testify, either live or by deposition, about the size, construction, layout and working environment of facilities such as where Plaintiff worked. Dr. Corn may testify about the nature of the working environment and the control and use of substances in such locations. He may testify about his knowledge of the composition and asbestos content, if any, of the products attributable to DaimlerChrysler by Plaintiffs, the ability of such products to emit asbestos fibers under certain conditions and the likelihood that Plaintiffs inhaled these fibers. He may testify regarding testimony given by Plaintiffs' experts regarding any industrial hygiene issue, including the OSHA regulations enforcement and practices. He may testify about industrial hygiene publications and literature from the 1940's to the present. He may also testify generally about the concept of dose-response, the evolution and use of threshold limit values and the knowledge that Plaintiffs'

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES** - PAGE 23

Dallas3 721084 v 1, 43920 00588

93

employers or other corporations, including DaimlerChrysler, had available to it during certain time periods. He may also testify regarding relative risk and OSHA risk models. He may testify as to any matter raised by experts called by Plaintiffs or any co-Defendants.

> Dr. I. Allan Feingold
> Chief, Division of Pulmonary Medicine
> South Miami Hospital
> 6200 Southwest 73rd Street
> Miami, FL 33143
> (305) 668-5229

Dr. Feingold may testify, in general, concerning asbestos-related diseases and the effects of exposure to asbestos upon persons in occupational settings, including the epidemiology of asbestos-related diseases and the criteria for the diagnosis of such diseases. He may also testify based upon his review of Plaintiff's records, radiology and pathology, regarding the existence or non-existence of any asbestos-related disease or abnormality in the plaintiffs including, but not limited to pleural changes, asbestosis, lung cancer and mesothelioma. Dr. Feingold may testify on whether any asbestos-related disease allegedly suffered by plaintiffs was medically or proximately caused by exposure to asbestos-containing products, including friction products. He may also testify on the existence of a dose response relationship between exposure to asbestos and asbestos-related disease. He may also testify on increased risk of cancer issues and whether a particular plaintiff has a reasonable fear of cancer due to exposure to asbestos. Dr. Feingold may also testify on the health consequences of smoking in individuals who are, or who are not, exposed to asbestos. With respect to particular plaintiffs, Dr. Feingold may testify as to his review and interpretation of x-ray films, pathology slides, pulmonary function test results and the determination of impairment and/or disability. Dr. Feingold may testify whether any disease or disability is progressive and whether other non-asbestos associated diseases or conditions are present in plaintiffs. Dr. Feingold''s testimony will be based on his training, experience, education and his long-term, on-going review and interpretation of the medical literature concerning asbestos-related disease. Dr. Feingold may offer testimony on any other matter addressed at his deposition in this case.

> Otto Wong, Sc.D.
> P.O. Box 2078
> San Mateo, CA 94401
> (650) 347-7898

Otto Wong may testify in the areas of epidemiology, industrial hygiene and toxicology, both generally and particularly as those areas relate to asbestos exposure and exposure to asbestos-containing friction products. His opinions and the grounds for same include the following matters: (1) the types, characteristics and chemical properties of asbestos and their respective pathogenic potential; (b) the types, composition and manufacture of friction materials; (c) the history of friction

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES** - PAGE 24

94

materials, the use of asbestos in friction materials and the lack of availability or feasibility of suitable substitute materials for such use at relevant times; (d) decomposition of asbestos in friction materials during the wear process; (e) the composition of residual materials after wear does not include significant asbestos; (f) the effects of wear and other aspects of the occupational environment of workers in which these products are used; (g) federal laws and regulations governing asbestos exposure; (h) threshold limit values and time-weighted averages; (i) characteristics and epidemiology of asbestos-related diseases; (j) relevant medical and scientific literature on these subjects; (k) the concepts of toxicity and hazard, including discussion of matters relating to nature, effect and significance of the human body's natural defense system; (l) dose response relationships; (m) potential for asbestos exposure in occupational settings; and (n) types, characteristics and uses of various types of asbestos. He may also be called to testify concerning certain (i) other details relating to aspects of and bases for these areas of opinions relating to this action or (ii) other matters of fact which because of technical nature may contain some opinions.

> Peter Barrett, M.D.
> 300 Boylston Street, Suite 714
> Boston, Massachusetts 02116-3923
> (617) 426-2110

Dr. Barrett is a radiologist and certified "B" Reader. He will testify to areas in science and medicine, which include but are not limited to radiology as a diagnostic aid in asbestos-related disease. He will further testify about his review and opinions of the radiographic findings and the correlation of those findings with the plaintiff's medical records, work history, and other diagnostic studies.

Dr. Barrett will further provide testimony based on his review of the medical and scientific literature that brake mechanics and others are not at an increased risk to develop asbestos-related disease as a result of their work around brakes and brake linings.

As Chrysler becomes aware of additional facts and the opinions of plaintiff's experts, Dr. Barrett will testify as to the opinions suggested by the additional facts or in response to the opinions of plaintiff's experts.

> Bruce W. Case, M.D.
> Department of Pathology
> McGill University
> 3775 University Street, Room 203
> Montreal, Canada 143A2B4
> (514) 398-7192 ext. 7466

Dr. Case may provide testimony regarding his examination of plaintiff's medical records, work

DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES   - PAGE 25

95

history and pathology material. Dr. Case may also testify regarding the biological effects of asbestos and the evidence of the relationship between the inhalation of various forms of asbestos fibers and asbestos-associated disease and the factors that go into evaluating whether there is any medical risk from asbestos-containing products. Dr. Case may further testify regarding the physical and chemical changes that brake linings undergo during the braking process. Dr. Case may further provide testimony based on biostatistics and his review and analysis of the epidemiological data and literature that brake mechanics and others are not at an increased risk to develop asbestos-related diseases as a result of their work on or around brakes and brake linings. Therefore, it would not be necessary to warn of such risks. Dr. Case may also provide testimony regarding animal research concerning asbestos-related disease, the biological effects of asbestos and various other dusts, cancer research and the history of protocols regarding publication of scientific research and the history of research into such matters in the United States and elsewhere including, state of the art. Dr. Case may also be asked to respond to the testimony of certain witnesses offered at the time of trial including, but not limited to, testimony from plaintiff's experts regarding the alleged hazards of exposure to friction materials and their alleged propensity to release fibers.

The observations and opinions offered by Dr. Case in this matter will be based on his review of the materials provided; a continuing review of the available scientific literature relating to the health effects of materials of interest in this matter and Dr. Case's education and professional experience. As Chrysler becomes aware of additional facts and the opinions of plaintiff's experts, Dr. Case will testify as to the opinions suggested by the additional facts or in response to the opinions of plaintiff's experts.

Alexander Walker, M.D.
Department of Epidemiology
677 Huntington Avenue
Boston, Massachusetts 02115
(617) 432-4565

Dr. Walker is the former Chairman of the Department of Epidemiology, Harvard School of Public Health. He received an M.D. from Harvard Medical School in 1974, and a Ph.D. in Epidemiology from Harvard School of Public Health in 1981. He is currently Senior Vice President for Epidemiology at Ingenix Pharmaceuticals Services. Dr. Walker has expertise in the areas of public health and epidemiology, generally and as those areas relate to asbestos exposure and particularly exposure to asbestos-containing friction products. He may testify regarding the epidemiology of asbestos-related diseases, and the relevant medical and scientific literature on these subjects. He may testify that it is his opinion that the relevant literature shows no increased risk of mesothelioma in individuals occupationally exposed to asbestos in friction products, including brakes and clutches. He may also testify that plaintiff's mesothelioma was not caused by his exposure to asbestos-containing friction products.

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES   - PAGE 26**

As Chrysler becomes aware of additional facts and the opinions of plaintiff's experts, Dr. Walker will testify as to the opinions suggested by the additional facts or in response to the opinions of plaintiff's experts.

Meir J. Stamfer, M.D.
Channing Laboratory Department of Medicine,
Brigham and Women's Hospital/Harvard Medical School
181 Longwood Avenue
Boston, Massachusetts 02115
(617) 525-2270

Dr. Stamfer is the Chairman of the Department of Epidemiology, Harvard School of Public Health. He received an M.D. from New York University School of Medicine in 1974, and a Ph.D. in Epidemiology from Harvard School of Public Health in 1985. Dr. Stamfer has expertise in the areas of public health and epidemiology, generally and as those areas relate to asbestos exposure and particularly exposure to asbestos-containing friction products. He may testify regarding the epidemiology of asbestos-related diseases, and the relevant medical and scientific literature on these subjects. He may testify that it is his opinion that the relevant literature shows no increased risk of mesothelioma in individuals occupationally exposed to asbestos in friction products, including brakes and clutches. He may also testify that plaintiff's mesothelioma was not caused by his exposure to asbestos-containing friction products.

As Chrysler becomes aware of additional facts and the opinions of plaintiff's experts, Dr. Stamfer will testify as to the opinions suggested by the additional facts or in response to the opinions of plaintiff's experts.

Michael A. Graham, M.D.
St. Louis University School of Medicine
1402 South Grand Boulevard
St. Louis, Missouri 63104
(314) 577-8475

Dr. Graham is Board Certified in Anatomic, Clinical and Forensic Pathology by the American Board of Pathology. Dr. Graham may provide testimony regarding his examination of plaintiff's medical records, work history, smoking history and pathological material. He may also testify regarding the biological effects of asbestos and the evidence of the relationship between the inhalation of various forms of asbestos fibers and asbestos-related disease and the factors that go onto evaluating whether there is any medical risk from asbestos-containing products. Dr. Graham may also provide testimony concerning animal research concerning asbestos-related disease, the biological effects of asbestos and various other dusts, cancer research, the practices and protocols regarding publication of scientific research and the history of research into such matters in the United States and

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S <u>REQUESTS FOR DISCLOSURES</u>  - PAGE 27**

97

elsewhere including state of the art. Dr. Graham may also be asked to respond to the testimony of certain witnesses offered at the time of trial including, but not limited to, testimony from plaintiff's experts regarding the alleged hazards of exposure to friction materials and their alleged propensity to release fibers. Dr. Graham will further testify in accordance with his report served in this case.

The observations and opinions offered by Dr. Graham in this matter will be based upon his review of the materials provided; a continuing review of the available scientific literature relating to the health effects of materials of interest in this matter and Dr. Graham's education and professional experience.

As Chrysler becomes aware of additional facts and the opinions of plaintiff's experts, Dr. Graham will testify as to the opinions suggested by the additional facts or in response to the opinions of plaintiff's experts.

> Dr. James D. Crapo
> 4650 South Forest Street
> Englewood, Colorado 80110
> 303/224-0681

Dr. Crapo is the Executive Vice President for Academic Affairs at the National Jewish Medical & Research Center in Colorado. Dr. Crapo may be called to testify with respect to medical condition and causation. Dr. Crapo may also testify with respect to the anatomy and function of the human respiratory system, pulmonary function testing, diseases allegedly associated with exposure to asbestos and the development of related scientific and medical knowledge. Dr. Crapo may further testify regarding the biological effects of asbestos and the evidence of the relationship between the inhalation of various forms of asbestos fibers and asbestos-associated disease and the factors to be considered in evaluating whether there is any medical risk from exposure to various asbestos-containing products. He may also provide testimony regarding animal research concerning asbestos-related disease, the biological effects of asbestos and various other dusts, cancer research, the practices and protocols regarding publication of scientific research and the history of research into such matters in the United states and elsewhere, including state of the art.

Dr. Crapo may further testify regarding radiology as a diagnostic aid in asbestos-associated disease as well as to his review and opinions of the radiographic findings and the correlation of those findings with plaintiff's medical records, work history and other diagnostic studies. Dr. Crapo may further provide testimony based on his review of the medical and scientific literature that brake mechanics and others are not at an increased risk to develop asbestos-related diseases as a result of their work on or around friction products.

Dr. Crapo may also be asked to respond to the testimony of certain plaintiffs' witnesses offered at the time of trial including, but not limited to, any testimony from plaintiffs' experts

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S <u>REQUESTS FOR DISCLOSURES</u> - PAGE 28**

Dallas3 721084 v 1, 43920 00588

98

regarding the alleged hazards of exposure to friction materials and their alleged propensity to release fibers.

The observations and opinions offered by Dr. Crapo in any matter will be based on his review of the materials provided; a continuing review of the available scientific literature relating to the health effects of material of interest in this matter and Dr. Crapo's education and professional experience.

As a Chrysler becomes aware of additional facts and the opinions of plaintiffs' experts, this witness may testify regarding his opinions of the additional facts or in response to the opinions of plaintiff's experts.

> William G. Hughson, M.D.
> University of California at San Diego
> LaJolla, California 92093
> 619/294-6001

Dr. Hughson is Board Certified in Internal Medicine and Pulmonary Medicine. Dr. Hughson may be called to testify with respect to the anatomy and function of the human respiratory system, pulmonary function testing, diseased allegedly associated with exposure to asbestos and the development of related scientific and medical knowledge. Dr. Hughson may be called to testify with respect to medical condition and causation in these cases. Dr. Hughson may also be asked to respond to the testimony of certain witnesses offered at the time of trial including, but not limited to, testimony from plaintiffs' experts regarding the alleged hazards of exposure to friction materials and their alleged propensity to release fibers.

Dr. Hughson may further provide testimony based on his review of the medical and scientific literature that brake mechanics and others are not at an increased risk to develop asbestos-related diseases as a result of their work on or around brakes and brake linings.

Dr. Hughson may further testify regarding radiology as a diagnostic aid in asbestos-associated disease as well as to his review and opinions of the radiographic findings and the correlation of those findings with plaintiffs' or plaintiffs' decedents' medical records, work history and other diagnostic studies.

The observations and opinions offered by Hughson in this matter will be based on his review of the materials provided; a continuing review of the available scientific literature relating to the health effects of materials of interest in this matter and Dr. Hughson's education and professional experience.

As Chrysler becomes aware of additional facts and the opinions of plaintiffs' experts, this witness may testify regarding his opinions of the additional facts or in response to the opinions of

plaintiffs' experts.

> Ronald F. Dodson, Ph.D
> Chairman, Department of Cell Biology and
> Environmental Sciences
> University of Texas Health Center at Tyler
> Office of Associate Director of Research
> P.O. Box 2003
> Tyler, Texas 75710

Dr. Dodson is an expert in microscopy relating to pathology. If called, Dr. Dodson will testify regarding: (a) pathology studies, if any, relating to the Plaintiff; (b) matters relating to whether the Plaintiff has a condition or illness caused by asbestos exposure; and (c) matters relating to lung fiber deposition.

> Sheldon H. Rabinovitz, Ph.D., C.I.H.
> Sandler Occupational Medicine Associates
> 966 Hungerford Drive, Suite 20
> Rockville, Maryland 20850
> (301) 217-0092
> (P.O. Box 7777, Melville, New York 11747)

Dr. Rabinovitz may be called to testify regarding mechanics' asbestos exposure conditions and health effects and the fact that mechanics are not exposed to levels of asbestos that result in any disease. Dr. Rabinovitz may also testify regarding mechanics' lack of asbestos exposure as evidenced through testing concerning brake and clutch servicing.

> Helen Reynolds, Ph.D.
> Consulting Economist
> 4316 Potomac
> Dallas, Texas 75205
> 214/443-0322

Dr. Reynolds is an economic consultant and may testify regarding the economic loss incurred by Plaintiffs, if any.

> Eric J. Chatfield, Ph.D.
> Chatfield Technical Consulting Firms
> 2071 Dickson Road
> Mississauga, Ontario
> Canada L5B 1Y8

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S <u>REQUESTS FOR DISCLOSURES</u> - PAGE 30**

100

Dr. Chatfield is an Electron Microscopist who may testify, either live or by deposition, regarding air sampling and testing procedures for analysis by electron microscope. He may testify about differences among types of asbestos fibers and their characteristics and uses in various products. He may testify about tests done on various asbestos containing products, including friction products, and the content and ratios of the constituents of those products. He may testify about any matter raised by experts called by Plaintiffs or any co-Defendant.

> Robert N. Sawyer, M.D.
> Preventive Occupational Medicine
> 149 Prospect Avenue
> Guildford, CT 06437
> 203453-3060

Dr. Sawyer may be asked to evaluate the Plaintiff's experts' methodology and reports regarding various tests performed on allegedly asbestos-containing products. He may testify that plaintiffs experts methods are scientifically invalid and unreliable, not representative of any work the plaintiff(s) did, not pertinent to health effects on workers of work actually done. He may also testify about the characteristics of various fiber types, the products in which they are used and the way these fibers behave when disturbed, as well as the manner in which these fibers are encapsulated.

> William H. Krebs, Ph.D.
> Assistant Director, Occupational Safety and Health
> General Motors Corporation
> 1014 Bishop Road
> Grosse Point, Michigan
> 303/885-9039

Dr. Krebs has a degree in public health and has had training in epidemiology. He may be called to testify with regard to friction products which contain asbestos, forsterite, release of asbestos fibers during the braking process, testing of brake products, medical and scientific literature which addresses the listed topics, and threshold limit values.

> Arnold E. Anderson
> Tribo Diagnostic Corporation
> P.O. Box 2008
> Livonia, Michigan 48151
> 313/427-6507

Mr. Anderson has expertise in the composition, manufacture, use and wear characteristics of friction materials. He may be asked to testify concerning the following matters: (a) how a brake job

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES** - **PAGE 31**

Dallas3 721084 v 1, 43920 00588

is performed and the potential for dust exposure; (b) the science of tribology; (c) the types, characteristics and chemical properties of asbestos used in friction materials and their pathogenic potential; (d) the types, composition and manufacture of friction materials; (e) the history of friction materials, the use of asbestos in friction materials and the availability of substitutes for asbestos; (f) decomposition of asbestos in friction materials during the wear process; (g) the nature of residual materials after wear; and (h) the effects of wear debris in the occupational environment of workers where friction materials are used.  If called, he is expected to testify concerning certain other aspects of and bases for these general areas of opinion relating to this cause, or other matters of fact regarding friction materials which because of their technical nature, may contain such opinions.

> Graham W. Gibbs
> 14-51221 Range Road
> 265 Spruce Grove
> Alberta, Canada  T7Y1E7
> 403/987-2883

Graham Gibbs has expertise in the areas of epidemiology, industrial hygiene, and toxicology, both generally and particularly as those areas relate to asbestos exposure and exposure to asbestos-containing friction products.  His opinions and the grounds for same include the following matters: (a) the types, characteristics and chemical properties of asbestos and their respective pathogenic potential; (b) the types, composition and manufacture of friction materials; (c) the history of friction materials, the use of asbestos in friction materials, and the lack of availability of suitable substitute materials for such use at relevant times; (d) decomposition of asbestos in friction materials during the wear process; (e) the composition of residual materials after wear does not include significant asbestos; (f) the effects of wear and the occupational environment of workers in which these products are used; (g) federal laws and regulations governing asbestos exposure; (h) threshold limit values and time-weighted averages; (i) characteristics and epidemiology of asbestos-related diseases, (j) relevant medical and scientific literature on these subjects; (k) the concepts of toxicity and hazard, including discussion of the human body's natural defense system; (l) dose response relationships; (m) potential for asbestos exposure in occupational settings; and (n) types, characteristics, and uses of various types of asbestos.  He may also be called to testify concerning certain (i) other details relating to aspects of and bases for these areas of opinions relating to this action; or, (ii) other matters of fact which because of technical nature may contain some opinions.

> John W. Kourik, P.E.
> 1136 Olivaire Lane
> St. Louis, Missouri 63132
> 314/994-7857

John Kourik may be called to testify about the braking systems of various vehicles and state of the art information.  He may also testify about developments in braking system design, manufacture

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES  - PAGE 32**

Dallas3 721084 v 1, 43920.00588

102

and testing. He may testify further concerning the mechanics of friction products, braking system repair procedures and consumer expectations of braking systems and vehicle safety. Mr. Kourik may testify about the characteristics of chrysotile asbestos and its use in friction products as well as substitute and replacement materials for asbestos in friction products.

Edward E. Hester, Jr.
2201 North Glenbrook Drive
Garland, Texas 75040
(972) 675-0134

Edward Hester has worked as a mechanic for more than 20 years in Dallas, Texas and is currently an automotive repair instructor at Cedar Valley College. Mr. Hester has performed many brake and clutch repairs throughout his career. Mr. Hester may testify regarding all aspects of brake and clutch repair, the function of brakes and clutches and the known benefits of using asbestos in friction products. Mr. Hester may testify about the differences between OEM and after market brake shoes. Mr. Hester may demonstrate all aspects of brake and clutch repair work, including how to perform a drum and disk brake job, ow to arc brake shoes and clean a wheel drum and backing plate. Mr. Hester may testify the minimal amount of dust created, if any, during brake and clutch repair. Mr. Hester may testify about the general working conditions in automotive garages.

He may respond to any testing by any fact or expert witness regarding the use, repair, manufacture for brakes, general practicing in garages, which was known about asbestos in the garage industry and when.

Bobby Unser
7700 Central Ave., SW
Albuquerque, NM 87121-2113
(281) 480-9847

Bobby Unser is a race car driver, mechanic, and automobile dealership owner. He will offer testimony regarding automotive repair both in the racing and private industry. Mr. Unser has performed many brake and clutch repairs throughout his career. Mr. Unser may testify regarding all aspects of brake and clutch repair, the function of brakes and clutches and the known benefits of using asbestos in friction products. Mr. Unser may testify about the differences between OEM and after market brake shoes. Mr. Unser may demonstrate all aspects of brake and clutch repair work. Mr. Unser may testify regarding the minimal amount of dust created, if any, during brake and clutch repair. Mr. Unser may testify about the general working conditions in automotive garages in the racing and public industry. He may also testify about the availability and performance of non-asbestos containing friction products.

DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES  - PAGE 33

Dallas3 721084 v 1; 43920 00588

103

He may respond to any testing by any fact or expert witness regarding the use, repair, manufacture of brakes, general practices in garages, and what was known about asbestos in the racing and private industry and in the garage industry and when it was known.

Hank Vaughn
Advance Auto Parts
3219 E. Highway 34, Suite A
Newnan, GA 30200

Mr. Vaughn may testify concerning the chain of custody for various friction products tested by William Longo. He may also testify regarding all aspects of brake and clutch repair, the function of brakes and clutches and the known benefits of using asbestos in friction products. Mr. Vaughn may testify about the differences between OEM and after market brake shoes. Mr. Vaughn may demonstrate all aspects of brake and clutch repair work, including how to perform a drum and disk brake job, how to arc brake shoes and clean a wheel drum and backing plate. Mr. Vaughn may testify the minimal amount of dust created, if any, during brake and clutch repair. Mr. Vaughn may testify about the general working conditions in automotive garages.

Denny Edmund Edwards, Sr.
2326 Linson
Beaumont, TX 77703
(409) 832-6056

Mr. Edwards is a former mechanic. He may testify by deposition taken in Cause No. A-0162248, *Denny Edmund Edwards v. Allied Signal, et al.*, In the 58Th Judicial District of Jefferson, County, Texas, regarding all aspects of brake and clutch repairs. He may testify about how to perform a drum and disk brake job, how to arc brake shoes and clean a wheel drum and backing plate.

Douglas P. Fowler, Ph.D.
Fowler Associates
Bayport Marina Plaza
540 West Cutting Boulevard
Richmond, CA 94804
(510) 233-5733

Frederick M. Toca, Ph.D.
Atlantic Environmental, Inc.
2 East Blackwell Street
Dover, NJ 07801
(973) 366-4660

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES** - PAGE 34

Dallas3 721084 v.1, 43920.00588

104

Mr. Fowler and Mr. Toca will testify generally about industrial hygiene, including proper methods of taking airborne samples of asbestos, as well as settled asbestos dust, and the health effect of different levels of airborne asbestos. They will critique the methods and tests of plaintiffs' experts who purport to do tests to measure the airborne asbestos released from manipulation of asbestos-containing products. These witnesses are designated live or by transcript in the matter of *Lambert v. Crane*, United States District Court for the Southern District of Indiana, Sept. 11, 2000. If called live, these witnesses may discuss the use of certain asbestos-containing products, the scientific literature regarding asbestos disease among various populations, the significance of different levels of exposure to asbestos, the physical characteristics, uses for and disease-causing potential, if any, of the various forms of asbestos, including chrysotile, amosite, and crocidolite. These witnesses may address any industrial hygiene matter raised by a witness called by any other party.

> Frederick William Boelter, C.I.H.
> 1300 Higgins Road #301
> Parkridge, Illinois 60069
> (847) 692-4700

Mr. Boelter is a certified industrial hygienist. He may give testimony regarding the foreseeable level of fiber release, if any, from asbestos-containing friction products. He may testify regarding the permissible exposure levels established by OSHA and the applicability of the OSHA and EPA guidelines as they relate to asbestos-containing materials. He may also testify regarding exposure levels associated with other types of asbestos products. He may complete cumulative asbestos exposure assessments on individual plaintiffs.

He may testify about the role of the industrial hygienist in assessing risk generally, and with respect to asbestos-containing products. He will provide current and historical information regarding air and dust sampling methods for asbestos in occupational settings and the proper use and application of all such methodology. He may also testify regarding the proper and improper methods for occupational sampling of asbestos. He may testify that the use of settled dust methods or Tyndall or refractive light methods do not provide a proper scientific basis for sampling and have no value in assessing occupational risk to asbestos exposure.

He may testify about his review and criticisms of the tests performed on friction products by plaintiff experts, Longo and Hatfield.

> John Spencer, C.I.H.
> Environmental Profiles
> 803 Frederick Road
> Baltimore, Maryland 21228
> (410) 744-0700

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES** - PAGE 35

105

Mr. Spencer is a certified industrial hygienist and certified safety professional. He may give testimony regarding the level of fiber release, if any, from asbestos-containing friction products in the occupational setting. He may testify regarding threshold limit values and permissible exposure levels as promulgated by private organizations and government agencies. He may testify as to issues involving reentrainment and fiber drift. He may testify as to work practices regarding various types of occupations using products that contained asbestos. He may testify as to the applicability of the OSHA and EPA's guidelines as they relate to various types of products including asbestos-containing friction products. He may testify as to exposure that may result from the use of other types of asbestos products. He may complete asbestos exposure assessments on individual plaintiffs.

A.J. Priest
106 Reliance Court
Rockwall, Texas 75032
(214) 824-3087

Mr. Priest has a Bachelor of Science in Industrial Technology, Master's, completed course work for a Doctorate in Vocational Education, some 30 years of experience as an ASE Master Certified Mechanic, more than 25 years of experience as a teacher and college professor of automotive technology and education, as well as other training and experience. He may be called to testify concerning matters of fact and opinion relating to his knowledge, education, training and experience in areas relating to mechanic work, brake repair and maintenance and all related issues, the manner in which brake repair and maintenance is or was conducted at relevant times, the similarity of equipment, physical components of friction products and process of brake repair nationwide at relevant times, the lack of accuracy of the purported simulations or descriptions advanced by Plaintiffs' counsel and their witnesses and the bases therefor, the nature and few seconds involved in shaping activities, the absence of a need to shape friction products at various relevant times or circumstances, opinions relating to the Plaintiff's work history and descriptions of his work, and other issues responsive to the testimony of Plaintiffs' experts, once those opinions are provided to Defendants.

George Traylor
5034 County Road 15
Wadley, Alabama 36276
256/395-4837
Contact through undersigned counsel only

George Traylor may testify about general practices relating to brake servicing and repair.

Paul Kelly
DaimlerChrysler Corporation
1000 Chrysler Drive

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES** - PAGE 36

          Auburn Mills, Michigan 48326
          Contact through undersigned counsel.

    Paul Kelly, a sales and marketing manager for DaimlerChrysler, may testify about the sale of Chrysler friction products.

          James Knoll
          DaimlerChrysler Corporation
          1000 Chrysler Drive
          Auburn Hills, MI 48326
          Contact through undersigned counsel.

    James Knoll, a former brake engineer for Daimler Chrysler, may testify about brake design, brake specifications, and brake manufacturing, including, but not limited to, the composition and asbestos content of brake linings, and the availability or lack of substitutes for asbestos in friction materials.

          Donald Kvarnberg
          DaimlerChrysler Corporation
          1000 Chrysler Drive
          Auburn Hills, Michigan 48326
          Contact through undersigned counsel.

    Donald Kvarnberg, a former brake engineer for Daimler Chrysler, may testify about brake design, brake specifications, and brake manufacturing, including, but not limited to, the composition and asbestos content of brake linings, and the availability or lack of substitutes for asbestos in friction materials..

          Robert Torney
          DaimlerChrysler Corporation
          1000 Chrysler Drive
          Auburn Hills, Michigan 48326
          Contact through undersigned counsel.

    Robert Torney, a packaging engineer for DaimlerChrysler, may testify about warnings on Chrysler friction products.

          Gerald Sattlemeier
          c/o DaimlerChrysler Corporation
          Auburn Hills, Michigan

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S <u>REQUESTS FOR DISCLOSURES</u>  - PAGE 37**

Dallas3 721084 v.1, 43920.00588

107

Contact through undersigned counsel.

Gerald Sattlemeier is expected to testify regarding DaimlerChrysler Corporation's industrial hygiene practices from 1968 through 1991.

> Larry Newton, CIH
> 3945 Lakefield Ct.
> Suwanee, Georgia 30024
> (770) 886-3200

Mr. Newton, a certified industrial hygienist, works with Plaintiffs' experts, William Longo, Ph.D. and Richard Hatfield. Mr. Newton may testify concerning the testing he has performed with Dr. Longo and Richard Hatfield on various asbestos containing products.

Additionally, the experts listed above may testify regarding the lack of information regarding ill health effects of chrysotile asbestos used in friction products, state of the art and knowledge in the industry during the relevant time frame.

A copy of each identified individual's curriculum vitae is presently in the possession of Plaintiffs' counsel. If an additional review of such is necessary, same will be available for review at the office of counsel for Chrysler at a mutually convenient time.

Chrysler also reserves the right to call any of the following expert witnesses at trial:

Any witnesses identified, listed or designated as an expert by any other party, whether live or by deposition.

Any treating or examining physician of Plaintiffs, whether live or by deposition.

Any physician or medical practitioner who has examined, treated, cared for or conducted and/or analyzed any tests (including, but not limited to, pulmonary function tests) on Plaintiffs, including, but not limited to, those listed in the medical records available to the parties, whether live or by deposition.

Any physician or medical practitioner who has examined Plaintiffs radiologically or who has reviewed or analyzed x-rays or other radiological studies of Plaintiffs.

Any physician or medical practitioner who has seen, reviewed, studied or examined any records, tissues or fluids of Plaintiffs.

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES** - PAGE 38

Dallas3 721084 v 1, 43920 00588

108

Custodians of all applicable medical records.

It is customary in this litigation for both Plaintiffs' and Defendants' counsel to arrange for independent medical examinations of Plaintiffs and/or arrange for review of medical records, x-rays, and pathology as may be appropriate.  Chrysler reserves the right to call any physician or other medical practitioner who has been involved in the examination of Plaintiffs and/or in the review of medical records, pathology or x-rays of Plaintiffs.

Chrysler further reserves the right to substitute an expert witness or witnesses in the event the witness(es) named herein are unable to appear at trial.

Chrysler reserves the right to call any expert witness necessary for rebuttal.

Chrysler reserves the right to call any current or former employee of Chrysler who is listed as a fact witness as an expert witness to the extent such individual is properly qualified and possesses expertise based upon years of training and work with Chrysler.

(g)    Any indemnity and insuring agreements;

RESPONSE.  Chrysler is presently self-insured and has been self-insured since 1972.  Chrysler was insured by the Hartford Insurance Company from 1926 through 1972.  There were separate policies for each year.

(h)    Any and all discoverable settlement agreements;

RESPONSE: None.

(i)    Any and all discoverable witness statements

RESPONSE: None.

(j)    If this suit alleges physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills that are reasonably related to the   injuries or damages asserted or, in lieu thereof, an authorization permitting the disclosure of such medical records and bills,

RESPONSE: Not applicable.

(k)    If this suit alleges physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills obtained by you by the virtue of an authorization furnished by the requesting party;

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES - PAGE 39**

109

RESPONSE: To the extent documents responsive to this request exist, they were previously produced by Chrysler to Waters & Kraus on September 22, 2000 in connection with Cause No. 26784; *Albert Douglas, Sr., et al. vs. ACandS, Inc., et al.*; In the 20th District Court of Milam County, Texas; and Cause No. 26642; *Jerry Dell Davis, et al. vs. ACandS, Inc, et al.*, in the 20th Judicial District Court of Milam County, Texas.

Respectfully submitted,

JENKENS & GILCHRIST
*A Professional Corporation*
1445 Ross Avenue, Suite 3200
Dallas, TX 75202
Telephone:    (214) 855-4500
Telecopy:     (214) 855-4300

By:

ROBERT THACKSTON
State Bar No. 00785487
JOSEPH BLIZZARD
State Bar No. 00789156

ATTORNEYS FOR
DAIMLERCHRYSLER CORPORATION

DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES  - PAGE 40

Dallas3 721084 v 1, 43920 00588

110

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to plaintiff's attorney, Leslie MacLean,   Waters & Kraus, L.L.P., 3219 McKinney Ave., Suite 3000, Dallas, Texas 75204, by certified mail, and to all other counsel of record via facsimile, by cover letter only,  on this _31_ day of August, 2001

Joseph Blizzard

DEFENDANT DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DISCLOSURES  - PAGE 41

Dallas3 721084 v 1, 43920 00588

**2**

REC'D AUG 3 1 2001

CAUSE NO. 01-06831-A

| | | |
|---|---|---|
| GEORGIA LEETH,<br>Individually, etc,<br>   Plaintiff | )<br>)<br>)<br>) | IN THE COUNTY COURT<br><br>AT LAW NO. 1 |
| v. | )<br>) | |
| AcandS, INC. , et al,<br>   Defendants. | )<br>) | DALLAS COUNTY, TEXAS |

## <u>FORD MOTOR COMPANY'S RESPONSE</u><br><u>TO PLAINTIFF'S RULE 194 REQUEST FOR DISCLOSURE</u>

**TO:** **Georgia Leeth, individually and as Personal Representative of the Heirs and Estate of Jerry Leeth, Plaintiff, by and through her attorney of record, Ms. Gayle Mortola, Waters & Kraus, L.L.P., 3219 McKinney Avenue, Suite 3000, Dallas, Texas 75204.**

FORD MOTOR COMPANY (hereinafter referred to as "**Ford**"), a Defendant herein, and makes

this its Response to Plaintiffs' Request for Disclosure pursuant TEX. R. CIV. P. 194.2, as follows:

**194.2(a)**  State the correct name of the parties to the lawsuit.

**RESPONSE:**

  **Ford Motor Company has been properly named in this lawsuit. Ford assumes that the Plaintiffs have been properly named. Ford cannot speak for other parties in this lawsuit.**

**194.2(b)**  State the name, address, and telephone number of any potential parties.

**RESPONSE:**

  **None known to Ford.**

**194.2(c)**  State each of your legal theories and, in general, factual bases for each of your claims or defenses.

DAL-399462.1
37354.100623



126

**RESPONSE:**

Ford denies that its vehicles, and particularly the component parts of which Plaintiff complains, were hazardous.

Ford contends that it has never manufactured its original or aftermarket brake linings or assemblies, but purchased these assemblies from outside suppliers.

Ford specifically denies that the replacement parts which included asbestos-containing brake linings, pads and clutch facings were hazardous and denies that these components were a producing cause of the asbestos-related disease(s) allegedly suffered by Plaintiff.

Ford contends that the asbestos once used in brake linings of Ford vehicles is chrysotile which is a water soluble mineral encapsulated in a resin bond. During braking, temperatures well in excess of 800 degrees Centigrade are reached, and the chrysotile fibers in the lining are transformed into forsterite, which is a nonfibrous dust. Ford further states that the brake lining dust contains extremely little chrysotile. The fibers which survive frequently are still embedded in resin which makes respiration very unlikely. The amount of surviving chrysotile is less than 0.1% to 1%. Rather than becoming a permanent fixture in the lung, chrysotile tends to dissolve and disappear from the lung.

Ford contends that because of the type, amount and length of asbestos present, brake lining dust has little or no fibrogenic potential. Forsterite is not know to have any harmful health effects.

Ford relies upon its rights under Texas law to have its liability limited to the percentage found by the jury under Tex. Civ. Prac. & Rem. Code Section 33.001, et seq., including its right to any settlement credits or reduction in liability based upon any percentage of liability the jury may assess against Plaintiff, Plaintiff-Intervenors, or any other party. In support of that right, Ford has exercised its right to plead in the alternative. Ford has thus pled that the act or omission of a person other than it was the sole proximate cause of this allegation; that if Plaintiff was injured as alleged, such injuries were caused or contributed to, in whole or in part, by a person or entity other then Ford for which Ford is not responsible; that the acts or omission of a person or entity other than Ford were the sole proximate cause or a new and independent cause of this allegation and injuries complained of in this lawsuit; and/or that the damages in this case, if any, were proximately caused by the negligence of a person or entity other than Ford and any recovery should be barred or diminished under the applicable provisions of the law. Ford thus contends that

in the event that the jury should assess some percentage of negligence against some party other than Ford, any liability assessed against Ford should be reduced by the percentages assessed against others, as required by the Texas Civil Practice & Remedies Code.

Ford also contends that its vehicle are not hazardous in their design, manufacture or marketing, and that these vehicle met all applicable Federal Motor Vehicle Safety Standards (FMVSS).

Ford further contends that an award of punitive damages in this case would violate the procedural due process guaranteed by the Constitution of the United States, because Texas Law, and the instructions given to the jury, are vague and standardless as to whether and how much to punish a defendant, and are likely to produce arbitrary and capricious results. Therefore, any award of punitive damages should be disallowed, or declared null and void.

Ford further contends that Plaintiff is not entitled to exemplary or punitive damages as alleged, for the reason that exemplary damages are unconstitutional and violative of the provisions of the United States Constitution and the Texas Constitution, including but not limited to the following provisions: (a) U. S. Constitution Amendment 8; Texas Constitution Article I, Section 13 (Proscription on excessive fines); (b) U. S. Constitution Amendments 5 and 14; Texas Constitution Article I, Sections 13 and 19 (Requirements of Due Process): (c) U. S. Constitution Amendments 5 and 14; Texas Constitution Article I, Sections 3 and 3a (Requirement of Equal Protection Under the Law); (d) U. S. Constitution Article I, Section 10; Texas Constitution Article I, Section 16 (Proscription on Ex Post Facto and Retroactive Law) and (e) U. S. Constitution, U. S. Constitution Article I, Section 10 (Contract Clause).

Ford reserves its rights under the Texas Rules of Civil Procedure to supplement this response if necessary.

**194.2(d)**        State the amount and any method of calculating economic damages.

**RESPONSE:**

Ford is not making a claim for damages in this case; therefore, this Request is not applicable to Ford.

194.2(e)   State the name, address, and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case.

**RESPONSE:**

1.   **Georgia Leeth, Plaintiff**

2.   **Unknown co-workers of decedent Jerry Leeth.**

3.   **Any medical providers who have rendered medical treatment or opinions of decedent's conditions. These medical providers may also offer opinions about the necessity and reasonableness of any expenses allegedly associated with decedent's physical condition.   Defendant has not been served with any discovery to allow them to list any specific medical providers of decedent. This disclosure may be supplemented once further discovery is conducted.**

4.   **Jack Ridenour**
     **Ford Motor Company**
     **Parklane Towers West, Suite 500**
     **Three Parklane Boulevard**
     **Dearborn, Michigan 48126**

**Mr. Ridenour has knowledge of Ford Motor Company's program for phasing out asbestos from Ford vehicles and the fact that Ford did not manufacture its own brakes or clutches, but purchased them through suppliers.**

5.   **Arnold Anderson**
     **30220 Rosemond Drive**
     **Franklin, MI 48025**

**Mr. Anderson has knowledge regarding the friction products used in Ford vehicles. A more detailed description of his knowledge is provided in response to 194.2(f) supra.**

**See Plaintiffs' Answers to all Defendants' Discovery Requests regarding additional fact witnesses designated by Plaintiffs.**

**Ford further reserves the right to designate any subsequently discovered treating physician(s) and any records generated by the subsequently discovered treating physician(s).**

129

Ford incorporates by reference all discovery responses or disclosures filed or served by Plaintiffs or any other Defendants in this matter, identifying persons with knowledge of relevant facts.

Discovery has not been completed and Ford reserves the right to supplement or amend its Response at a later date.

**194.2(f)**     For any testifying expert.

1.    The expert's name, address, and telephone number;

2.    The subject matter on which the expert will testify;

3.    The general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to control of you or your client, documents reflecting such information;

4.    If the expert is retained by, employed by, or otherwise subject to the control of you or your client;

    A.    All documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and

    B.    The expert's current resume and bibliography.

**RESPONSE:**

1.    **Arnold Anderson**
      **30220 Rosemond Drive**
      **Franklin, MI 48025**

      **Mr. Anderson has expertise in the composition, manufacture, use and wear characteristics of friction materials. He may be asked to testify concerning the following matters: (a) the types, characteristics and chemical properties of asbestos used in friction materials and their pathogenic potential; (b) the types, composition and manufacture of friction materials; (c) the history of friction materials, the use of asbestos in friction materials and the availability of substitutes for asbestos; (d) decomposition of asbestos in friction materials during the wear process;**

130

(e) the nature of residual materials after wear; and (f) the effects of wear debris in the occupational environment of workers where friction materials are used.

Mr. Anderson is expected to testify concerning certain other aspects of and bases for these general areas of opinions relating to this cause or other matters of fact regarding friction materials which because of technical nature may contain some opinions.

2.   William H. Krebs, Ph.D.
     Industrial Health Sciences, Inc.
     1014 Bishop Road
     Grosse Pointe Park, MI 48230

Dr. Krebs testifies in the area of industrial health and has conducted air sampling tests regarding asbestos in brake shoes. Dr. Krebs is of the opinion that automotive friction products are not defective, and asbestos brake linings and brake service operations do not present a risk of adverse health effects.

3.   John W. Kourik, P.E.
     1135 Olivaire Lane
     St. Louis, Missouri 63132

Mr. Kourik testifies in the area of physical and engineering aspects of brakes and brake products. Mr. Kourik is of the opinion that automotive friction products are not defective.

4.   Victor L. Roggli, M.D.
     Associate Professor of Pathology
     c/o Duke University Medical Center
     Department of Pathology
     P.O. Box 3712
     Durham, NC 27710

Dr. Roggli testifies in the area of the medical and scientific aspects of exposure to asbestos-related dust as produced by brake products and the development of asbestos-related disease.

5.   Hans Weill, M.D.
     755 Hearthstone Drive
     Basalt, Colorado 81621

DAL:399462.1
37354.100623

131

Dr. Weill is Board Certified in Pulmonary Diseases by the American board of Internal Medicine. However, he also has expertise in and will give opinions in the following areas; epidemiology, industrial hygiene, and toxicology, both generally and particularly as those areas relate to asbestos exposure and exposure to asbestos-containing friction products. He may be asked to testify concerning the following matters: (a) the types, characteristics and chemical properties of asbestos and their respective pathogenic potential; (b) the types, composition and manufacture of friction materials; (c) the history of friction materials, the use of asbestos in friction materials and the lack of availability of suitable substitute materials for such use at relevant times; (d) decomposition of asbestos in friction materia s during the wear process; (e) the composition of residual materials after wear does not include significant asbestos; (f) the effects of wear and the occupational environment of workers in which these products are used; (g) federal laws and regulations governing asbestos exposure; (h) threshold limit values and time-weighted averages; ( in) epidemiology of asbestos-related diseases; (j) relevant medical and scientific literature on these subjects; (k) the concepts of toxicity and hazard including discussion of the human body's natural defense system; and (1) dose response relationships. He may also be called to testify concerning certain (in) other details relating to aspects of and bases for these areas of opinions relating to this action or (ii) other matters of fact which because of technical nature may contain some opinions.

Dr. Weill may also be called to testify concerning all or some aspects of the following matters: (a) his conclusion pertaining to the concentration of asbestos in the working environment and the minimum levels which are necessary to cause a detectable disease in man; (b) the state of medical art at relevant times; (c) the medical condition(s) of any allegedly asbestos-exposed Plaintiff suing Ford Motor Company: (d) how that condition(s) relates to Plaintiff's allegations in this cause; (e) the lack of any causal relationship associated with exposure to any Ford Motor Company product; (f) other sources of Plaintiff's exposure to asbestos and the significance of same; and other aspects of and bases for these general areas of opinions relating tho this cause.

Dr. Weill may also testify regarding studies and research concerning exposure to asbestos and its effects on the human body, the exposure to asbestos and the development of lung cancer and other respiratory diseases, and whether Plaintiff suffers from a respiratory disease, including but not limited to asbestosis or lung cancer, the cause of such disease and the basis for such opinion; the effects of exposure to

132

chrysotile fibers on the human body, and the effects of cigarette smoking and other tobacco use on the human body.

Dr. Weill is expected to testify concerning certain other aspects of and bases for these general areas of opinions relating to this cause or other matters of fact regarding friction materials which because of technical nature may contain some opinions.

6.   Francis W. Weir, Ph.D.
     8131 Wycomb Drive
     Houston, Texas 77070

     Dr. Weir testifies in the areas of toxicology, industrial hygiene, inhalation toxicology and methodology, mechanisms of pulmonary irritant activity and the extrapolation of data from animals to man.

7.   John Craighead, M.D.
     Department of Pathology
     University of Pathology
     Burlington, Vermont 05405

     Dr. Craighead testifies in the areas of anatomy, physiology and the mechanisms of tissue responses to inhaled particles.

8.   Helen Reynolds, M.A., Ph.D.
     Ruhter & Reynolds, Inc.
     3625 North Hall Street, Suite 1060
     Dallas, Texas 75219
     (214) 219-8100

     Dr. Reynolds is an expert of economics and will testify about Plaintiff's earnings history, Plaintiff's claim for pecuniary losses, and present value of any damages that Plaintiff may seek to recover.

9.   Dr. Perry Berg
     345 East 37th Street
     New York, New York 10016
     (212) 661-2794

     Dr. Berg is board-certified in Internal Medicine, an Assistant Professor of Clinical Medicine, New York University Medical Center, and Assistant Attending, Department of Medicine, Tisch Hospital, New York University Medical Center and an Attending Physician, Manhattan

Veterans Administration, Bellevue Medical Center. Dr. Berg is a Fellow of the American College of Physicians and among the Board of Directors for the New York County Society of Internal Medicine.

10.   Dr. Peter Barrett
       300 Boyleston Street
       Suite 714
       Boston, Massachusetts 02116

Dr. Barrett is a radiologist and certified "B" Reader and may provide testimony with respect to radiology as a diagnostic aid in asbestos-associated disease as well as to his review and opinions of the radiographic findings and the correlation of those findings with plaintiff's medical records, work history, and other diagnostic studies.

Dr. Barrett may further provide testimony based on his review of the medical and scientific literature that brake mechanics and others are not at an increased risk to develop asbestos-related diseases as a result of their work on or around brakes and brake linings.

As defendant becomes aware of additional facts and the opinions of plaintiff's experts, this witness may testify as to the opinions suggested by the additional facts or in response to the opinions of Plaintiff's experts.

11.   Dr. William Easton Walker
       2831 Sackett Street
       Houston, Texas 77098-1125

Dr. Walker is a Diplomate of the American Board of Surgery, the American Board of Thoracic Surgery and the American Board of Vascular Surgery. Dr. Walker is an Associate Professor and Director of the Division of Thoracic and Cardiovascular Surgery, University of Texas Medical School, Houston and a consulting physician, Anderson Hospital, Houston. Dr. Walker is also a Fellow of the American College of Surgeons, the Royal College of Surgeons and the American College of Cardiology.

134

12.   **Dr. Kathryn A. Hale**
      **Assistant Professor of Medicine**
      **Baylor College of Medicine**
      **6550 Fannin, Smith Tower, #1236**
      **Houston, Texas 77030**
      **(713) 790-2076**

If called, Dr. Hale is expected to provide testimony concerning the anatomy and function of the respiratory and circulatory systems; examination conducted and opinions regarding tissue samples of decedents; the symptomatology, disease process and diagnosis of asbestosis and cancer of the respiratory system, peritoneum and peritoneal cavity; the nature and extent of medical and scientific knowledge regarding any association of pulmonary disease with asbestos fiber and the effect of exposure to substances other than asbestos in the development and manifestation of disease of the respiratory system; the methods of diagnosis and means of establishing the differential diagnosis of asbestos-related diseases with non-asbestos related diseases; the incidence of lung cancer in the general population and those individuals exposed to asbestos; cigarette smoking and its effects on the lungs; the difference between impairment and disability the effect of asbestosis on disability and life expectancy; the lack of relationship between pleural plaques and development of any cancer; the history, evolution and knowledge of asbestos-related diseases; and the evolution of the medical communities' awareness of the increased risks for an asbestos-related disease in the cases of prolonged exposure.

13.   **Dr. Gail D. Stockman, M.D., P.A.**
      **703 E. Marshall, Suite 4002**
      **Longview, Texas 75601**

If called, Dr. Stockman is expected to provide testimony concerning the anatomy and function of the respiratory and circulatory systems; examination conducted and opinions regarding tissue samples of decedents; the symptomatology, disease process and diagnosis of asbestosis and cancer of the respiratory system, peritoneum and peritoneal cavity; the nature and extent of medical and scientific knowledge regarding any association of pulmonary disease with asbestos fiber and the effect of exposure to substances other than asbestos in the development and manifestation of disease of the respiratory system; the methods of diagnosis and means of establishing the differential diagnosis of asbestos-related diseases with non-asbestos related diseases; the incidence of lung cancer in the general population and those individuals

135

exposed to asbestos; cigarette smoking and its effects on the lungs; the difference between impairment and disability the effect of asbestosis on disability and life expectancy; the lack of relationship between pleural plaques and development of any cancer; the history, evolution and knowledge of asbestos-related diseases; and the evolution of the medical communities' awareness of the increased risks for an asbestos-related disease in the cases of prolonged exposure.

14.   **Dr. Ronald Dodson**
      Chairman, Department of Cell Biology and Environmental Sciences
      University of Texas Health Center at Tyler
      Office of Associate Director of Research
      P.O. Box 2003
      Tyler, Texas 75710

      Dr. Dodson is an expert in microscopy relating to pathology.  If called, Dr. Dodson will testify regarding: (a) pathology studies, if any, relating to the Plaintiff; (b) matters relating to whether the Plaintiff has a condition or illness caused by asbestos exposure; and (c) matters relating to lung fiber deposition.

15.   **Dr. William G. Hughson**
      U.C.S.D. Center for Occupational and Environmental Health
      200 West Arbor Drive
      San Diego, California  92103-8800

      Dr. Hughson is a pulmonary, occupational and epidemiological specialist.  He may testify as to clinical diagnosis requirements regarding asbestos-related disease and the epidemiological aspect of asbestos-related diseases.  Dr. Hughson is also knowledgeable concerning state of the art.

16.   **Dr. James D. Crapo**
      National Jewish Medical & Research Center
      1400 Jackson Street
      Denver, Colorado  80206
      (303) 298-1436

      Dr. Crapo is an expert in pulmonary and internal medicine.  He may testify as to clinical diagnosis requirements regarding asbestos-related disease and the epidemiological aspect of asbestos-related diseases.

130

17.    **Dr. Otto Wong**
       **Applied Health Sciences**
       **181 Second Avenue, Suite 628**
       **San Mateo, California 94401**

       Dr. Otto Wong is the Chief Epidemiologist at Applied Health Sciences, San Mateo, California. He is board-certified in epidemiology, and a Fellow of the American College of Epidemiology. He is an Adjunct Professor of Epidemiology and Biostatistics at Tulane University Medical Center, New Orleans, Louisiana. He also holds an appointment of Visiting Professor of Epidemiology and Occupational Environmental Health at the School of Public Health and Center for Occupational Medicine, National Defense Medical Center, Taipei, Taiwan.

       Dr. Wong will provide testimony based on a critical review and analysis of the epidemiologic data of workers exposed to dust generated from working with brakes, brake linings and other friction products. Dr. Wong will testify that epidemiologic studies demonstrate that automotive or brake mechanics are not at increased risk of asbestos-related diseases as a result of their work on or near brakes or other friction products. Dr. Wong will further testify that there is no scientific data to support a causal relationship between exposure to friction products and asbestos-related diseases. Therefore, it would not be necessary to warn of possible health hazards. Dr. Wong may also be asked to respond to the testimony of certain witnesses offered at the time of trial including, but not limited to, testimony from plaintiffs' experts regarding the alleged hazards of exposure to friction materials and their alleged propensity to release fibers.

       The observations and opinions offered by Dr. Wong in this matter will be based on his review of the materials provided; a continuing review of the available scientific literature relating to he health effects of materials of interest in this matter and Dr. Wong's education and professional experience.

18.    **Dr. Robert M. Ross, M.D., FCCP**
       **6550 Fannin, Suit 2403**
       **Houston, Texas 77030**
       **(713) 383-6100**

       If called, Dr. Ross is expected to provide testimony concerning the anatomy and function of the respiratory and circulatory systems; examination conducted and opinions regarding tissue samples of

137

decedents; the symptomatology, disease process and diagnosis of asbestosis and cancer of the respiratory system, peritoneum and peritoneal cavity; the nature and extent of medical and scientific knowledge regarding any association of pulmonary disease with asbestos fiber and the effect of exposure to substances other than asbestos in the development and manifestation of disease of the respiratory system; the methods of diagnosis and means of establishing the differential diagnosis of asbestos-related diseases with non-asbestos related diseases; the incidence of lung cancer in the general population and those individuals exposed to asbestos; cigarette smoking and its effects on the lungs; the difference between impairment and disability the effect of asbestosis on disability and life expectancy; the lack of relationship between pleural plaques and development of any cancer; the history, evolution and knowledge of asbestos-related diseases; and the evolution of the medical communities' awareness of the increased risks for an asbestos-related disease in the cases of prolonged exposure.

19.   Samuel H. Cade, M.D.
      Baylor University Medical Center
      Department of Radiology
      3500 Gaston Avenue
      Dallas, Texas   75246

      Dr. Cade is a "B-Reader" and may testify concerning his review/analysis of Plaintiff's chest x-rays.

20.   Ilan Allan Feingold, M.D., F.R.C.P. (C), FCCP
      Chief, Division of Pulmonary Medicine
      South Miami Hospital
      6200 Southwest 73rd Street
      Miami, Florida 33143
      (305) 668-5229

      Dr. Feingold is a specialist in pulminary medicine.  He may testify, in general, concerning asbestos-related diseases and the effects of exposure to asbestos upon persons in occupational settings, including the epidemiology of asbestos-related diseases and the criteria for the diagnosis of such diseases.  He may also testify regarding the existence or non-existence of any asbestos-related disease or abnormality in the plaintiffs including, but not limited to pleural changes, asbestosis, lung cancer and mesothelioma.  Dr. Feingold may testify about the effect or lack of effect of asbestos exposure on laryngeal cancer and cancers of the gastrointestinal tract that may be experienced by plaintiffs.  Dr. Feingold may testify on whether any asbestos-related disease allegedly suffered by

138

plaintiffs was medically or proximately caused by exposure to asbestos-containing products. He may also testify on the existence of a dose response relationship between exposure to asbestos and asbestos-related disease. He may also testify on increased risk of cancer issues and whether a particular plaintiff has a reasonable fear of cancer due to exposure to asbestos. Dr. Feingold may also testify on the health consequences of smoking in individuals who are, or who are not, exposed to asbestos. With respect to particular plaintiffs, Dr. Feingold may testify as to his review and interpretation of x-ray films, pathology slides, pulmonary function test results and the determination of impairment and/or disability. Dr. Feingold may testify whether any disease or disability is progressive and whether other non-asbestos associated diseases or conditions are present in plaintiffs. Dr. Feingold's testimony will be based on his training, experience, education and his long-term, on-going review and interpretation of the medical literature concerning asbestos-related disease.

Dr. Feingold will testify regarding exposure to chrysotile asbestos and the etiology of mesothelioma, lung cancer, other forms of cancers, asbestosis, pleural plaques and pleural thickening. Dr. Feingold will discuss the state of the art medical and scientific knowledge pertaining to chrysotile asbestos and compare and contrast that knowledge with what is known about the causation of asbestos-related diseases due to exposure to other forms of commercial asbestos, such as amosite asbestos and crocidolite asbestos, and how chrysotile asbestos is a different form of rock than all other types of asbestos, which as a group are known as amphibole asbestos. Dr. Feingold will also discuss the physical and chemical composition of chrysotile asbestos and how chrysotile asbestos impacts the respiratory system when it is inhaled as respirable fibers.

Dr. Feingold has been deposed on numerous occasions. We incorporate by reference Dr. Feingold's prior deposition testimony as representative of the scope of his expertise.

21.    Alexander Walker, M.D.
       Harvard School of Public Health
       Department of Epidemiology
       Kresge Building, Room 908
       Boston, Massachusetts
       617/432-4565

Dr. Walker received his undergraduate degree in biochemistry from Harvard College in 1970 and went on to obtain a medical degree from Harvard Medical School in 1974. He received his Ph.D. in epidemiology from Harvard School of Public Health in 1981. Since that time, Dr. Walker has been extensively involved in the field of epidemiology as a researcher, academician and director

139

and/or fellow of numerous associations affiliated with epidemiological research. Dr. Walker has published extensively in the field of epidemiology.

Dr. Walker is an expert in epidemiology and cancer epidemiology. His testimony will be based on his training, experience, education, and review of the medical literature concerning asbestos related disease. He may testify regarding the existence or non-existence of any asbestos-related illness or disease in the plaintiffs, including but not limited to, pleural changes, asbestosis, lung cancer, mesothelioma, colon cancer, esophageal cancer and other cancers.

Dr. Walker may testify concerning his analysis of the data on asbestos exposure and the illnesses that may result, cigarette smoking and exposure to environmental tobacco smoke and the illnesses that may result, incidence of cancer in the general population including the effects of age on the incidence of cancer, incidence of cancer among brake or friction product workers, and heredity as a factor in the development of cancer.

Dr. Walker may testify concerning the principles employed in determining the causes and contributing factors of individual cancers and other diseases. Dr. Walker will apply these principles to Plaintiffs' medical conditions. He may discuss the epidemiology of asbestos-related disease and other diseases which the plaintiff may have suffered from, including but not limited to analysis of plaintiff's alleged exposure to asbestos and other potential agents, discussion of the latency of exposure to asbestos and other potential agents, discussion of the latency of asbestos and other diseases, discussion of the contribution of this defendant's dust, if any, to the illness of the plaintiff, discussion of various models of risk versus time, duration, and extent of exposure, and other related topics.

Dr. Walker will testify that epidemiologic studies demonstrate that automotive or brake mechanics are not at increased risk of asbestos-related diseases as a result of their work on or near brakes or other friction products. Dr. Walker will further testify that there is no scientific data to support a causal relationship between exposure to friction products and asbestos-related diseases. Dr. Walker may also be asked to respond to the testimony of certain witnesses offered at the time of trial including, but not limited to, testimony from plaintiffs' experts regarding the alleged hazards of exposure to friction materials and their alleged propensity to release fibers. Risk assessments may be discussed.

Dr. Walker may testify concerning the science of epidemiology, the appropriate use of epidemiology in addressing causal issues, the types of studies used in

140

epidemiology to address causal issues, biostatistical aspects of epidemiologic investigations and the criteria used to interpret epidemiological data.

Dr. Walker may testify in depth about the epidemiologic studies addressing the causal association between cigarette smoking, second-hand exposure to cigarette smoking, and the increased risk of lung cancer. Dr. Walker may testify about the relationship between smoking, asbestos and cancer.  His testimony may include a medical presentation of lung diseases including but not limited to those caused by tobacco abuse, other inhaled agents, heredity, or environment.

Dr. Walker's testimony will be based on his extensive training, experience, education, review of the relevant medical and scientific literature, a review of medical records and deposition transcripts.

In addition, Dr. Walker may testify about issues relevant to a *Daubert/ Havner/ Robinson* Analysis.

Copies of Dr. Walker's curriculum vitae and bibliography are available for production to plaintiffs.  Documents provided to, reviewed by, or prepared by or for Dr. Walker in anticipation of his testimony in this litigation will be made available for inspection and copying at a reasonable time and place prior to Dr. Walker's deposition, to which counsel agree.

22.    Meir J. Stampfer, M.D., M.P.H.
       Harvard School of Public Health
       677 Huntington Avenue
       Boston, Massachusetts
       617-432-6477
       Channing Laboratory
       181 Longwood Avenue
       Boston, MA 02146

Dr. Stampfer obtained his college degree from Columbia University in 1973, and went on to obtain his medical degree from New York University School of Medicine in 1977.  He obtained a Masters in epidemiology from the Harvard School of Public Health in 1980 and obtained his Doctorate in epidemiology from the Harvard School of Public Health in 1985.  He has served an extensive career as a professor of epidemiology while affiliated with the Harvard Medical School system.   Over his career he has served on numerous national and international committees regarding epidemiological research and is extensively published in the field of epidemiology.

141

Dr. Stampfer's testimony will be based on his training, experience, education, and review of the medical literature concerning asbestos related disease. He is expected to testify about the principles of epidemiology and what is involved in an epidemiologic study. Dr. Stampfer may testify regarding the existence or non-existence of any asbestos-related illness or disease in the plaintiffs, including but not limited to, pleural changes, asbestosis, lung cancer, mesothelioma, colon cancer, esophageal cancer and other cancers.

Dr. Stampfer is expected to testify that studies of particular groups or occupations of people are not necessarily applicable to other groups or occupations. Dr. Stampfer is expected to testify as to the information necessary to determine the risks for a group of people or persons contracting an asbestos-related disease, and if it is scientifically possible to attribute a disease to a particular exposure. Dr. Stampfer is expected to discuss epidemiological analysis of asbestos and how such analysis may be applied to the facts of a specific individual.

Dr. Stampfer's testimony will generally respond to the pathologic, scientific and epidemiologic testimony which may be offered by plaintiffs' experts. He may discuss other diseases which the plaintiff may have suffered from, including but not limited to analysis of plaintiff's exposure to asbestos and other potential agents, discussion of the latency of exposure to asbestos and other potential agents, discussion of the latency of asbestos and other diseases, discussion of the contribution of this defendant's dust, if any, to the illness of the plaintiff, discussion of various models of risk versus time, duration, and extent of exposure, and other related topics. His testimony may include a medical presentation of lung diseases including but not limited to those caused by tobacco abuse, other inhaled agents, heredity, or environment.

Dr. Stampfer will testify that epidemiologic studies demonstrate that automotive or brake mechanics are not at increased risk of asbestos-related diseases as a result of their work on or near brakes or other friction products. Dr. Stampfer will further testify that there is no scientific data to support a causal relationship between exposure to friction products and asbestos-related diseases. Risk assessments may be discussed. Dr. Stampfer may also be asked to respond to the testimony of certain witnesses offered at the time of trial including, but not limited to, testimony from plaintiffs' experts regarding the alleged hazards of exposure to friction materials and their alleged propensity to release fibers.

Dr. Stampfer may offer testimony concerning the effects of inhaled tobacco smoke and other factors on the occurrence of disease in populations who are also alleged to be exposed to asbestos containing products, and may discuss how

the effects of inhaled tobacco smoke and other factors can confound the apparent results of certain epidemiologic studies.

In addition, Dr. Stampfer may testify about issues relevant to a *Daubert/ Havner/Robinson* Analysis.

Copies of Dr. Stampfer's curriculum vitae and bibliography are available for production to plaintiffs. Documents provided to, reviewed by, or prepared by or for Dr. Stampfer in anticipation of his testimony in this litigation will be made available for inspection and copying at a reasonable time and place prior to Dr. Stampfer's deposition, to which counsel agree.

23.   See Plaintiff's Answers to all Defendants' Discovery Requests regarding additional expert witnesses designated by Plaintiff.

Ford further designates any other experts named by any other party in this litigation. Ford reserves the right to amend or supplement this Response at a later date.

**194.2(g)**      Any discoverable indemnity and insuring agreements

**RESPONSE:**

Ford is essentially self-insured for amounts in excess of any amount that could be reasonably awarded as damages in this action.

**194.2(h)**      Any discoverable settlement agreements.

**RESPONSE:**

None.

**194.2(i)**      Any discoverable witness statements.

**RESPONSE:**

None.

**194.2(j)**   In a suit alleging physical or mental injury and damages from the occurrence that is the subject of this case, all medical records and bills that are reasonably related to the injuries or damages asserted or, in lieu thereof, an authorizing permitting the disclosure of such medical records and bills.

**RESPONSE:**

   **Not applicable to Ford.**

**194.2(k)**   In a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills obtained by the responding party by virtue of an authorization furnished by the requesting party.

**RESPONSE:**

   **Ford has obtained no records by an authorization furnished by the Plaintiff to date.  Ford reserves the right to supplement or amend this Response at a later date.**

   Respectfully submitted,

   _[signature]_

   John R. Henderson
   TBN -09424200
   Todd N. Wade
   State Bar No. 20627500
   Tori S. Levine
   TBN -18690500
   Lynn R. Levitan
   TBN - 24030271
   **BROWN MCCARROLL, L.L.P.**
   2001 Ross Avenue, Suite 200
   Dallas,  Texas 75201
   Telephone:  (214) 999-6100
   Telecopier:  (214) 999-6170
   Attorneys for Defendant,
   **FORD MOTOR COMPANY**

1441

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served upon all counsel of record by either hand delivery, certified mail, return receipt requested, or facsimile on _August 30_, 2001

Lynn R. Levitan

**3**

CAUSE NO. 01-06831-A

| | | |
|---|---|---|
| GEORGIA LEETH, Individually and as Personal Representative of the Heirs and Estate of JERRY LEETH, Deceased, | § § § § | IN THE COUNTY COURT |
| Plaintiffs, | § § | AT LAW NO.: 1 |
| vs. | § § | |
| ACandS, INC, et al., | § § | |
| Defendants. | § | DALLAS COUNTY, TEXAS |

## DEFENDANT GENERAL MOTORS CORPORATION'S
## RESPONSE TO PLAINTIFF'S REQUEST FOR DISCLOSURE

TO:   Plaintiff, Georgia Leeth, Individually and as Personal Representative of the Heirs and Estate of Jerry Leeth, Deceased by and through her attorney of record, Leslie MacLean, Waters & Kraus, 3219 McKinney Avenue, Dallas, Texas 75204.

Defendant General Motors Corporation ("GM") submits this its Response to Plaintiff's

Request for Disclosure pursuant to Texas Rules of Civil Procedure 194.2 (b) - (k).

Respectfully submitted,

THOMPSON & KNIGHT L.L.P.

By: _____

Joseph S. Pevsner
State Bar No. 15874500

Dawn M. Wright
State Bar No. 12742030

1700 Pacific Avenue, Suite 3300
Dallas, Texas  75201
Ph.: (214) 969-1700
Fax:  (214) 969-1751

ATTORNEYS FOR DEFENDANT
GENERAL MOTORS CORPORATION

DEFENDANT GENERAL MOTORS CORPORATION'S
RESPONSE TO PLAINTIFF'S REQUEST FOR DISCLOSURE - Page 1
030366 000139 Dallas 1323555.1



145

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on the ___16___ day of August, 2001, a true

and correct copy of the foregoing document was forwarded to counsel for Plaintiff, Leslie

MacLean, Waters & Kraus, 3219 McKinney Avenue, Suite 3000, Dallas, Texas 75204 via

certified mail, return receipt requested.

Dawn M. Wright

## REQUEST FOR DISCLOSURE

1.    You are hereby requested to disclose, within the time period prescribed by the Texas

Rules of Civil Procedure, the information or materials described in all of Rule 194.2(b)-(k).

(b)    the name, address, and telephone number of any potential parties;

Response:    GM is not aware of any potential parties at this time.

(c)    the legal theories and, in general, the factual bases of the responding party's claims or defenses (the responding party need not marshal all evidence that may be offered at trial);

Response:    GM is not responsible for any alleged asbestos-related injury claimed because plaintiff was not exposed to asbestos fibers in sufficient concentration and for sufficient duration to have caused or contributed to the development of any asbestos-related disease. Therefore, any claimed exposure to asbestos contained in any GM friction products was neither a cause in fact nor a proximate cause of plaintiff's alleged injuries.

The circumstances associated with the removal of automotive brake products would not have involved the inhalation of sufficient asbestos fibers, if any at all, to cause disease. The intense heat that develops from the braking process converts more than 99% of the asbestos fibers in brake linings into nonpathogenic material called forsterite. The established body of medical research demonstrates that use of and exposure to asbestos-containing friction products does not increase the risk of contracting an asbestos-related disease.

To the extent plaintiff has suffered damages, if any, such damages were caused by the acts, conduct or omissions of persons or entities other than and over whom GM had no control.

(d)    the amount and any method of calculating economic damages;

Response:    GM is not seeking economic damages from plaintiff at this time.

(e)    the name, address, and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case;

Response:    Other than the parties to this lawsuit, or persons or experts who may be designated after discovery, GM does not know of any other

**DEFENDANT GENERAL MOTORS CORPORATION'S**
**RESPONSE TO PLAINTIFF'S REQUEST FOR DISCLOSURE - Page 3**
030366 000139 Dallas 1323555 1

147

persons having knowledge of relevant facts in this matter.

(f)     for any testifying expert:

(1)     the expert's name, address, and telephone number;

**Response:**     GM has not made any decisions regarding expert witnesses at this time. Accordingly, GM will supplement its response to this subpart in accordance with the Rules of Civil Procedure. Also, GM will file a Designation of Expert Witnesses in accordance with Texas Rule of Civil Procedure 195.

(2)     the subject matter on which the expert will testify;

**Response:**     GM has not made any decisions regarding expert witnesses at this time. Accordingly, GM will supplement its response to this subpart in accordance with the Rules of Civil Procedure. Also, GM will file a Designation of Expert Witnesses in accordance with Texas Rule of Civil Procedure 195.

(3)     the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of the responding party, documents reflecting such information;

**Response:**     GM has not made any decisions regarding expert witnesses at this time. Accordingly, GM will supplement its response to this subpart in accordance with the Rules of Civil Procedure. Also, GM will file a Designation of Expert Witnesses in accordance with Texas Rule of Civil Procedure 195.

(4)     if the expert is retained by, employed by, or otherwise subject to the control of the responding party:

(A)     all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and

**Response:**     GM has not made any decisions regarding expert witnesses at this time. Accordingly, GM will supplement its response to this subpart in accordance with the Rules of Civil Procedure. Also, GM will

file a Designation of Expert Witnesses in accordance
with Texas Rule of Civil Procedure 195.

(B)     the expert's current resume and bibliography;

**Response:**     GM has not made any decisions regarding expert
witnesses at this time.   Accordingly, GM will
supplement its response to this subpart in accordance
with the Rules of Civil Procedure.  Also, GM will
file a Designation of Expert Witnesses in accordance
with Texas Rule of Civil Procedure 195.

(g)     any indemnity and insuring agreements described in Rule 192.3(f);

**Response:**     GM obtained comprehensive general liability coverage from and
through American International Specialty Lines Insurance Company,
New York, New York.  The coverage provided is adequate to
satisfy any judgment that may be rendered against GM in this
action.  This coverage is in effect for all relevant times in this case.

(h)     any settlement agreements described in Rule 192.3(g);

**Response:**     GM does not have any settlement agreements as described in Rule
192.3(g).

(i)     any witness statements described in Rule 192.3(h);

**Response:**     GM does not have any witness statements as described in Rule
192.3(h).

(j)     in a suit alleging physical or mental injury and damages from the occurrence that is
the subject of the case, all medical records and bills that are reasonably related to the
injuries or damages asserted or, in lieu thereof, an authorization permitting the
disclosure of such medical records and bills;

**Response:**     GM cannot respond to this subpart because it is not applicable to GM.

(k)     in a suit alleging physical or mental injury and damages from the occurrence that
is the subject of the case, all medical records and bills obtained by the responding
party by virtue of an authorization furnished by the requesting party.

**Response:**     GM has not received any records by virtue of an authorization
produced by the Plaintiff.

**DEFENDANT GENERAL MOTORS CORPORATION'S**
**RESPONSE TO PLAINTIFF'S REQUEST FOR DISCLOSURE - Page 5**

**E**

Only the Westlaw citation is currently available.

United States District Court, S.D. West Virginia.

In re CLAIMS REMOVED BY HONEYWELL
INTERNATIONAL INC.

No. 2:01-MC-0104.

Jan. 4, 2002.

State court personal injury actions against manufacturer of automotive parts containing asbestos were removed to federal court by manufacturer on ground that they were related to pending bankruptcy of alleged parent of defendant auto parts companies against which manufacturer allegedly had right of indemnification. Plaintiffs moved to remand to state court. The District Court, Haden, Chief Judge, held that: (1) provisional order entered by district court in bankruptcy proceedings did not apply, and (2) removal was not warranted.

Motion granted.

West Headnotes

[1] Bankruptcy ⟨⟨⟨2089
51k2089

[1] Removal of Cases ⟨⟨⟨115
334k115

Provisional order entered by district court in bankruptcy proceedings involving parent of defendant auto parts companies, which transferred certain previously- removed auto friction products claims from other districts to that court, did not apply to transfer future removals of state cases in other districts, but only to cases and claims already removed and currently pending in federal court when it was entered.

[2] Removal of Cases ⟨⟨⟨101.1
334k101.1

Removal of state court personal injury actions against manufacturer of automotive parts containing asbestos was not warranted due to fact that manufacturer's claims of indemnification were pending in bankruptcy court, where asbestosis cases had been pending for six years, state mass litigation

panel had scheduled case for trial in state court in less than six months, and state law issues predominated. 28 U.S.C.A. § 1452(b).

*MEMORANDUM OPINION AND REMAND ORDER*

HADEN, Chief Judge.

**\*1** Pending are the emergency motion of 1) Honeywell International Inc. (Honeywell) to accept removal papers and deem them filed as of December 27, 2001, 2) the motion of Plaintiffs seeking abstention or remand in the cases tendered for removal, and 3) Honeywell's motion for temporary stay of Plaintiffs' motion. For reasons discussed below, Honeywell's motion to accept removal papers is GRANTED, Plaintiffs' motion to remand is GRANTED, and Honeywell's motion to stay is DENIED.

I. FACTUAL AND PROCEDURAL
BACKGROUND

In late November 2001, one hundred sixty (160) state asbestos cases were removed by Ford, DaimlerChrysler, and General Motors (the "Automakers") to this Court, based on jurisdictional claims allegedly related to the Federal-Mogul Global, Inc. (Federal-Mogul) bankruptcy, recently pending in the District of Delaware. Those cases, pending in state circuit courts in both the Northern and Southern Districts of West Virginia, previously were consolidated by order of the Supreme Court of Appeals of West Virginia, transferred to its Mass Litigation Panel, and assigned to the Circuit Court of Kanawha County as part of a mass tort litigation of state asbestos claims. From that latter court they were presented to this forum.

Following an expedited briefing schedule and extensive argument, the Court held related-to jurisdiction was problematic on the factual showing made. Alternatively, even if subject matter jurisdiction had been demonstrated on an arguably conceivable basis, the Court would and did remand the cases on equitable grounds *See In re Asbestos Litigation,* 271 B.R. 118 (S.D.W.Va.2001).

On December 20, 2001 the Clerk's Office informed the Court that counsel for certain Automakers were questioning its staff concerning

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works



re-removal of the actions remanded by the December 7 opinion. The Clerk was ordered not to process removal papers tendered by removing counsel associated with the previously removed and remanded civil actions, pending further Order. Counsel were noticed that further action in all those cases should occur only on motion to the undersigned judge. *In re Asbestos Litigation* Nos. 2:01-1055 to 2:01- 1074, 2:01-1085 to 2:01-1224 (S.D.W.Va. Dec. 20, 2001) (Order and Notice).

On December 27, 2001 Honeywell presented the Clerk with thirty-two (32) case designations, involving three hundred seventy-six (376) underlying state cases, which it sought to remove to federal court as related to the Federal-Mogul bankruptcy. Because some of the claims Honeywell seeks to remove pend in the previously removed and remanded actions involving the Automakers, the Court determined these putative removals were subject to the requirements of its December 20 Order. The Clerk's office rejected the proffered removal notices on that basis, after which Honeywell moved the Court to accept and file the removal papers as if accomplished on December 27, 2001, the date of tender.

At a hearing on the emergency motion held on January 3, 2001 the Court heard argument from Honeywell and representative Plaintiffs in the state actions. Honeywell distinguished the instant claims proffered for removal from the Automakers' claims because between the time of the two removals, on December 19, 2001, the Honorable Alfred M. Wolin, U.S. District Judge by designation to the District of Delaware, entered an order provisionally transferring certain Honeywell friction products claims to the United States District Cou *See In re Federal-Mogul Global, Inc., T & N Limited, et al.,* Chapter 11 Case Nos. 01- 10578, et al. (D.Del. Dec. 19, 2001). Significantly, Judge Wolin noted the considerations under which that order was entered:

*2 This matter having been opened upon the motion to transfer (the "Transfer Motion") to this Court by Honeywell International, Inc. ("Honeywell") certain claims against it arising out of so-called "friction products" as to which the movant contends it has a right of indemnification against the debtors in these administratively consolidated Chapter 11 proceedings (the "Friction Product Claims"); *and it appearing that movant has removed these cases from the several*

*state courts to the United States District Courts for the Districts in which these cases were pending; and the movant having also moved for a provisional order of transfer to preserve the status quo pending a plenary hearing and determination by the Court of the Transfer Motion[.]*
*Id.* (emphasis added).

## II. DISCUSSION

Honeywell argues Judge Wolin's December 19 Provisional Transfer Order divests this Court of jurisdiction to decide issues of remand and abstention. [FN1] That is, once the cases were removed on December 27 to this Court, then, because of prior entry of the Provisional Transfer Order, they are transferred automatically to the Delaware District Court for initial determination of jurisdiction. On this reasoning, this Court, as a mere pass-through forum, would lack authority to block removal, remand, or abstain from ruling because, after an order changing venue, the jurisdiction of the transferring court ceases, and thereafter the transferring court has no authority to issue further orders. The cases Honeywell cites for this proposition all involve transfer orders from a multidistrict litigation (MDL) *Seenel.* ( Emergency Motion ¶ 9) (citing *e.g. Glasstech, Inc. v. AB Kyro OY* 769 F.2d 1574 (Fed.Cir.1985) *In re The Upjohn Co. Antibiotic "Cleocin" Products Liability Litigati* 508 F.Supp. 1020 (E.D.Mich.1981)). Because this proceeding is not governed by the above precedent, the Court need not address whether MDL principles extend to provisional transfer orders entered by a district court in which a bankruptcy case is pending.

This Court respects the proceedings of the District Court of Delaware and its Provisional Transfer Order. Scrutiny of the straightforward unambiguous language of that order, however, does not support Honeywell's contentions.

As quoted at length above, the Provisional Transfer Order relies on several premises. First, Honeywell contends it has a right of indemnification against a bankruptcy debtor, that is, related-to subject matter jurisdiction is alleged. Second, Honeywell has removed these cases from the several state courts to the United States District Courts for the Districts in which these cases were pending, i.e., the cases are in federal court and subject to an order of the Delaware District Court. And, third, Honeywell has

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

moved for a provisional transfer order to preserve the *status quo* pending a plenary hearing, that is, motions for remand or abstention pending in the various district courts should remain pending, but now before the Delaware court, so t *status quo* may be maintained. [FN2]

**\*3** Honeywell sought to remove its claims to this Court as of December 27, 2001. The claims had not been removed at the time of the Provisional Transfer Order of December 19, 2001; they were pending in the Circuit Court of Kanawha County, West Virginia. T *status q* would not be maintained if state court cases on December 19, 2001 were removed later and then transferred by operation of an order that applied only to pending federal cases. Altering the status of a case or claim *post quo* is not preservation of the *status quo*. [FN3]

[1] In other words, the Provisional Transfer Order does not apply to transfer future removals of state cases, but only to cases and claims already removed and currently pending in federal court when it was entered. [FN4] Accordingly, the Court FINDS and CONCLUDES the Provisional Transfer Order on its face does not apply to the cases or claims Honeywell seeks to remove as of December 27, 2001.

Honeywell's motion to accept removal papers and deem them filed as of December 27, 2001 is GRANTED. Because these late-removed cases or claims were not governed by Judge Wolin's transfer order, the authority remains in this Court to resolve Plaintiffs' motion to abstain and/or remand the actions.

[2] Honeywell's claims, as explained above, all arise in the context of state mass litigation of asbestos claims and are now before this Court in a procedural posture identical to the Automakers' claims on or before December 7. Considering the earlier claims, the Court examined at length the equitable factors supporting remand pursuant to 28 U.S.C. § 1452(b) *See In re Asbestos Litigation*, Dec. 7, 2001 Order at 14-19, 271 B.R. at ---- - ----. As the Court discussed in that Order, the state Mass Litigation Panel has set a February 2002 date for pretrial proceedings and a June 2002 date for commencing trials of current representative actions. *Id.* at ----, 16. It is to be emphasized these asbestosis cases have pended for six years, and now are scheduled for trial in the state court less than six

months from date. To allow removal of certain claims now may prejudice both plaintiffs and co-defendants in the state actions. In the earlier opinion, the Court determined that questions of comity, accession to the state courts' superior knowledge of state law, prejudice to involuntarily removed parties, including "temporal" prejudice, predominance of state law issues and non-debtor parties, and the expertise of the court in which the action originated all favored the Plaintiffs' argument for remand. *Id.* at ----, 19.

Relying on that analysis of the Automakers' similarly-situated removed actions, the Court GRANTS Plaintiffs' current motion for remand of Honeywell's claims.

### III. CONCLUSION

Honeywell's motion to accept removal papers is GRANTED. The Clerk is directed to accept the tendered papers and docket ther *nunc pro tun* as filed December 27, 2001. [FN5] Plaintiffs' motion to remand is GRANTED. Honeywell's motion for a temporary stay of Plaintiffs' motion for abstention and/or remand is DENIED.

**\*4** The Clerk is directed to send a copy of this Memorandum Opinion and Remand Order to counsel of record and a certified copy to the Circuit Clerk of Kanawha County.

> FN1. Removal of cases related to bankruptcy is governed by 28 U.S.C. § 1452(a), which provides, "A party may remove any claim or cause of action in any civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. ¦ 1452(a). Under Section 1334, district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in o₁ *related to a case under title 1*" 28 U.S.C. ¦ 1334(b) (emphasis added). The parties agree, there would be federal subject matter jurisdiction if Honeywell's claims are determined to be related to the Federal-Mogul Global, Inc. bankruptcy.

> FN2. The Court notes the reference to the Delaware bankruptcy court was withdrawn only "with respect to matters involving subject matter jurisdiction, abstention and remand regarding the Friction Product Claims." Provisional Transfer Order at 2.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

FN3. In contrast, the transfer order transferring Dalkon Shield cases related to the A.H. Robins bankruptcy to the Eastern District of Virginia explicitly transferred all actions "related to the Robins' Chapter 11 case now pending in any federal district cour *or subsequently removed to any federal district court* during the pendency of this Chapter 11 case [.]' *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 998 (4th Cir.1986) (emphasis added).

FN4. Honeywell a *Bankruptcy Rule* 9027(a)(2) governs the time for removal of pending actions. Thus, it argues, Judge Wolin did not need to explicitly extend his order to govern later-removed actions because the time for removals would end by rule. First, the rule does not provide

simply for a ninety-day removal period, as Honeywell contends, but for the longest period, which may extend to 180 days after the Chapter 11 order for relief. *See* Bankr.R. 9027(a)(2). Nor does the limited removal period, alter the fact, discussed above, that the plain language of Judge Wolin's transfer order does not extend to cases or claims pending in state court on December 19, 2001. The order explicitly serves to maintain tl *status quo,* under which the claims before this Court were and must remain in state court.

FN5. This Memorandum Opinion and Remand Order shall be docketed in each of those removed actions.

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JAN 2 9 2002

FILED
CLERK'S OFFICE

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2002, a true and correct copy of the foregoing Brief to Vacate the Conditional Transfer Order was mailed, postage pre-paid to each of the attorneys listed on the attached Attorney Service List of the Judicial Panel on Multidistrict Litigation.

Charles S. Siegel

11

## INVOLVED COUNSEL FOR SCHEDULE CTO-209
## DOCKET NO. 875
## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

John E. Ansbach
Heygood Orr & Reyes
4245 North Central Expressway
6th Floor
Dallas, TX 75205

Mel Bailey
Bailey Crowe & Kugler
4600 Bank of America Plaza
901 Main Street
Dallas, TX 75202

David A. Barfield
Barfield & Associates
P.O. Drawer 3979
Jackson, MS 39207

David B. Barlow
Sidley, Austin, Brown & Wood
Bank One Plaza
10 South Dearborn Street
Chicago, IL 60603

Steven T. Baron
Silber & Pearlman
2711 North Haskell Avenue
Suite 32
Dallas, TX 75204

Thomas P. Bernier
Goldfein & Hosmer
217 E. Redwood Street
21st Floor
Baltimore, MD 21202

V. Brian Bevon
Ness, Motley, Loadholt, Richardson &
Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Paula H. Blazek
Bernsen, Jamail & Goodson, LLP
550 Fannin Street
P.O. Box 4915
Beaumont, TX 77004

Jack L. Block
Sachnoff & Weaver, Ltd.
30 South Wacker Drive
29th Floor
Chicago, IL 60606

Leslie J. Bobo
Butler, Snow, O'Mara, Stevens
& Cannada
P.O. Box 22567
Jackson, MS 39225

John J. Boyd, Jr.
Lord & Whip, P.A.
120 West Layette Street
800 One Center Plaza
Baltimore, MD 21201

Michael J. Brickman
Ness, Motley, Loadholt, Richardson &
Poole
P. O. Box 1137
Charleston, SC 29401

Pamela T. Broache
Lord & Whip, P.A.
800 Once Center Plaza
120 West Layette Street
Baltimore, MD 21201

W. Scott Brown
Forman, Perry, Watkins, Krutz &
Tardy
1515 Poydras Street
Suite 1420
New Orleans, LA 70112

Patrick R. Buchanan
Brown, Buchanan & Sessoms
P.O. Box 2220
3112 Canty Street
Pascagoula, MS 39569

Lisa N. Busch
Weitz & Luxenberg
180 Maiden Lane
New York, NY 10038

Isaac K. Byrd, Jr.
Byrd & Associates
P.O. Box 19
Jackson, MS 39205

Larry G. Canada
Galloway, Johnson, Tompkins, Burr
& Smith
One Shell Square, Suite 4040
701 Poydras Street
New Orleans, LA 70139

James R. Carter
Carter Law Offices
Commerce Bank Building, Suite 529
416 Main Street
Peoria, IL 61602

Michael P. Cascino
Cascino Vaughan Law Offices, Ltd.
403 West North Avenue
Chicago, IL 60610

Michael P. Casey
Lewis, Rice & Fingersh
500 North Broadway, Suite 2000
St. Louis, MO 63102

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Paul V. Cassisa, Jr.
Bernard, Cassisa, Elliott & Davis
P.O. Box 1138
Oxford, MS 38655

William T. Causby
Nelson, Mullins, Riley & Scarborough
Keenan Building, 3rd Floor
1330 Lady Street
P.O. Box 11070
Columbia, SC 29211

INVOLVED COUNSEL FOR SCHEDULE  CTO-209  (Cont.) MDL-875                    PAGE 2

Damon J. Chargois
Foster & Sear
1201 N Watson
Suite 145
Arlington, TX  76006

Daniel J. Cheely
Bellande Cheely, O'Flaherty, Sargis
& Ayres
19 South LaSalle Street, Suite 1203
Chicago, IL  60603

Stanley M. Chow
Char, Hamilton, Campbell & Thom
Mauka Tower, Suite 2100
737 Bishop Street
Honolulu, HI  93813

Adam M. Chud
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, DC  20036

David W. Clark
Bradley, Arant, Rose & White
188 East Capitol Street, Suite 450
P.O. Box 1789
Jackson, MS  39215

Gregory L. Cochran
McKenna, Storer, Rowe, White
& Farrug
200 North LaSalle Street, Suite 3000
Chicago, IL  60601

J. P. Coleman
Baker, Donelson, Bearman & Caldwell
P. O. Box 14167
Jackson, MS  39236

P. J. Cone
Ness Motley Loadholt Richardson
& Poole
2202 Jackson Street
P.O. Box 365
Barnwell, SC  29812

P. Jay Cone, II
Ness, Motley, Loadholt, Richardson
& Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC  29465

John F. Conley
Glasser & Glasser, P.L.C.
Crown Center Building, Suite 600
580 East Main Street
Norfolk, VA  23510

Larry E. Cotten
Kirkley, Schmidt & Cotten, L.L.P.
City Center II, Suite 2700
301 Commerce Street
Fort Worth, TX  76102

Kaye N. Courington
Duncan & Courington, L.L.C.
322 Lafayette Street
New Orleans, LA  70130

Ronald B. Cox
Bowers, Orr & Dougall, LLP
P.O. Box 25389
Columbia, SC  29224

Edward M. Crane
Skadden, Arps, Slate, Meagher
& Flom
333 West Wacker Drive
Suite 2100
Chicago, IL  60606

Andrew J. Cross
Polsinelli, Shalton & Welte
100 South Fourth Street
Suite 1100
St. Louis, MO  63102

David A. Damico
Burns, White & Hickton
2400 Fifth Avenue Place
120 Fifth Avenue
Pittsburgh, PA  15222

Charles P. Dargo
Bruce P. Clark & Associates
Harrison Ridge Square
419 Ridge Road
Munster, IN  46321

William S. Davies, Jr.
Nelson, Mullins, Riley & Scarborough
1330 Lady Street
Keenan Building, 3rd Floor
P.O. Box 11070
Columbia, SC  29211

Maxon R. Davis
Davis, Hatley, Haffeman & Tighe, P.C.
100 River Drive North, Third Floor
Box 2103
Great Falls, MT  59401

L. Richard DeRobertis
Galiher, DeRobertis, Nakamura, Ono
& Takitani
610 Ward Avenue, Suite 200
Honolulu, HI  96814

Mike Desautels
Delaney & Desautels
80 Wolf Road
6th Floor
Albany, NY  12205

Dennis J. Dobbels
Polsinelli, Shalton & Welte
700 West 47th Street
Suite 1000
Kansas City, MO  64112

David W. Dogan, III
Dogan & Wilkinson
P.O. Box 23062
Jackson, MS  39225

Thomas F. Dougall
Bowers, Orr & Dougall, LLP
P.O. Box 25389
Columbia, SC  29224

Jerome J. Duchowicz
O'Hagan, Smith & Amundsen, LLC
150 North Michigan Avenue
Suite 3300
Chicago, IL  60601

David Duke
Duke Law Firm
201 East Abram
Suite 760
Arlington, TX  76010

Maja C. Eaton
Sidley Austin Brown & Wood
Bank One Plaza
10 South Dearborn Street
Chicago, IL  60603

INVOLVED COUNSEL FOR SCHEDULE  CTO-209  (Cont.) MDL-875                    PAGE 3

Gary D. Elliston
DeHay & Elliston, L.L.P.
3500 Bank of America Plaza
901 Main Street
Dallas, TX 75202

James T. Estes, Jr.
Burke, Sakai, McPheeters, et al.
Grosvenor Center, Mauka Tower
737 Bishop Street
Honolulu, HI 96813

C. Michael Evert, Jr.
Evert & Weathersby
3405 Piedmont Road, N.E.
Suite 225
Atlanta, GA 30305

James J. Fabian
Pfeifer & Fabian
326 Saint Paul Place
Suite 100
Baltimore, MD 21202

Mark J. Fellman
Fellman Law Office
213 4th Street, East
Suite 200
St. Paul, MN 55101

Richard Young Ferguson
Johnson, Ferguson, Pipkin & Phillips
4900 Woodway
Suite 1100
Houston, TX 77056

Matthew J. Fischer
Schiff, Hardin & Waite
233 South Wacker Drive
6600 Sears Tower
Chicago, IL 60606

James L. Fletcher, Jr.
Duncan & Courington
322 Lafayette Street
New Orleans, LA 70130

James T. Foley
Foley & Boyd
First City Place
Suite 404
Tyler, TX 75702

Raymond P. Forceno
Forceno & Hannon
Philadelphia Bourse Building
Suite 1000
Independence Mall East
Philadelphia, PA 19106

Richard L. Forman
Forman, Perry, Watkins, Krutz
& Tardy
P.O. Box 22608
Jackson, MS 39225

Laura A. Frase
Forman, Perry, Watkins, Krutz
& Tardy
1349 Empire Central
Suite 400
Dallas, TX 75247

Ellen B. Furman
Goldfein & Joseph
1600 Market Street
33rd Floor
Philadelphia, PA 19103

William Allen Galerston
Kleberg Law Firm
1800 Bering
Suite 400
Houston, TX 77057

James D. Gandy, III
Pierce, Herns, Sloan & McLeod
P.O. Box 22437
Charleston, SC 29413

Beverly D. Garner
11720 Borman Drive
P.O. Box 28500
St. Louis, MO 63146

Mark W. Garriga
Butler, Snow, O'Mara, Stevens
& Cannada
P. O. Box 22567
Jackson, MS 39225

William P. Gavin
Gavin Law Firm
17 Park Place
Professional Centre
Belleville, IL 62226

Charles H. Gibbs, Jr.
Sinkler & Boyd, P.A.
P.O. Box 340
Charleston, SC 29402

Robert L. Gibbs
Brunini, Grantham, Grower & Hewes
248 East Capitol Street
P.O. Box 119
Jackson, MS 39205

Donald E. Godwin
Godwin, White & Gruber, P.C.
901 Main Street
Suite 2500
Dallas, TX 75202

William F. Goodman, III
Watkins & Eager
P.O. Box 650
Jackson, MS 39205

Demarcus J. Gordon
Johnson & Bell, Ltd.
55 East Monroe Street
Suite 4100
Chicago, IL 60603

Kenneth M. Gorenberg
Wildman, Harrold, Allen & Dixon
225 West Wacker Drive
Suite 2800
Chicago, IL 60606

Leonard R. Gouveia, Jr.
888 Mililani Street
8th Floor
Honolulu, HI 96813

Dennis J. Graber
Hinshaw & Culbertson
521 West Main Street
Suite 300
Belleville, IL 62222

Robert M. Greenberg
Law Office Of Robert Greenberg
1201 North Watson Road
Suite 117
Arlington, TX 76006

INVOLVED COUNSEL FOR SCHEDULE  CTO-209  (Cont.) MDL-875                    PAGE 4

Susan Gunty
Gunty & McCarthy
150 South Wacker Drive
Suite 1025
Chicago, IL  60606

Patrick N. Haines
Lanier Parker & Sullivan
1331 Lamar
Suite 1550
Houston, TX  77010

Robert E. Haley
Wildman, Harrold, Allen & Dixon
225 West Wacker Drive
Suite 3000
Chicago, IL  60606

Andrew S. Halio
Halio & Halio
P.O. Box 747
Charleston, SC  29402

Susan M. Hansen
Brownson & Ballou
4800 U.S. Bank Place
601 Second Avenue, South
Minneapolis, MN  55402

G.P. Hardy, III
Hardy & Johns
500 Two Houston Center
909 Fannin
Houston, TX  77010

James M. Harris, Jr.
Harris, Lively & Duesler
550 Fannin Street
Suite 650
Beaumont, TX  77701

Sherman S. Hee
1164 Bishop Street
Suite 1415
Honolulu, HI  96813

John R. Henderson
Brown, McCarroll, Oaks & Hartline
2000 Trammel Crow Center
2001 Ross Avenue
Dallas, TX  75201

John L. Hill, Jr.
Locke Liddell & Sapp, LLP
3400 Texas Commerce Tower
600 Travis Street
Houston, TX  77002

M. King Hill, III
Venable, Baetjer & Howard, LLP
210 Allegheny Avenue
P.O. Box 5517
Towson, MD  21285

Timothy J. Hogan
Bierne, Maynard & Parsons
1300 Post Oak Boulevard
25th Floor
Houston, TX  77056

John H. Holloman, III
Watkins, Ludlam, Winter &  Stennis
P.O. Box 427
Jackson, MS  39205

Russell J. Hoover
Jenner & Block
One IBM Plaza
Suite 4400
Chicago, IL  60611

H. Forest Horne, Jr.
Jones, Martin, Parris & Tessener Law
410 Glenwood Avenue
Suite 200
Raleigh, NC  27603

D L. Jackson
Baron & Budd
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX  75219

Barry D. Jenkins
Jenkins & Parron
801 Cherry, Suite 2000
P.O. Box 1287
Fort Worth, TX  76102

William V. Johnson
Johnson & Bell, Ltd.
55 East Monroe Street
Suite 4100
Chicago, IL  60603

Steven M. Jupiter
LeBlanc & Waddell, LLC
201 St. Charles Avenue
Suite 3204
New Orleans, LA  70170

George J. Kacal, Jr.
Dunn, Kacal, Adams, Pappas & Law
One Riverway
Suite 1200
Houston, TX  77056

Jeffery T. Kale
Enserch Corporation
300 South St. Paul
Suite 1200
Dallas, TX  75201

Jennifer A. Kinder
Baron & Budd
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX  75219

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH  44308

Peter A. Kraus
Waters & Kraus
3219 McKinney
Suite 3000
Dallas, TX  75204

Robert Kropp, Jr.
Geffner & Bush
3500 West Olive Street
Suite 1100
Burbank, CA  91505

Craig T. Kugisaki
Pacific Tower
1001 Bishop Street, Suite 2727
Honolulu, HI  96813

John J. Kurowski
Kurowski & Bailey, P.C.
24 Bronze Pointe
Belleville, IL  62226

INVOLVED COUNSEL FOR SCHEDULE  CTO-209  (Cont.) MDL-875                    **PAGE 5**

Patrick J. Lamb
Butler, Rubin, Saltarelli & Boyd
1800 Three First National Plaza
70 West Madison Street
Chicago, IL  60602

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA  23219

Mickey P. Landry
Landry & Swarr
330 Camp Street
New Orleans, LA  70130

W. M. Lanier
Lanier Parker & Sullivan
1331 Lamar
Suite 1550
Houston, TX  77010

Bruce Earl Larson
Karr, Tuttle & Campbell
1201 3rd Avenue
Suite 2900
Seattle, WA  98101

Christopher P. Larson
Heyl & Royster
600 Bank One Building
124 Southwest Adams
Peoria, IL  61602

H. Seward Lawlor
Glasser & Glasser, P.L.C.
580 East Main Street
600 Crown Center
Norfolk, VA  23510

Sidney G. Leech
Goodell, DeVries, Leech & Dann
Commerce Place, 20th Floor
One South Street
Baltimore, MD  21202

Tom L. Lewis
Lewis, Huppert & Slovak
725 Third Avenue North
P.O. Box 2325
Great Falls, MT  59403

Craig T. Liljestrand
Hinshaw & Culbertson
222 N. LaSalle Street
Suite 300
Chicago, IL  60601

Caren K. Lock
Kern & Wooley
5215 North O'Connor Blvd
Suite 1700
Irving, TX  75039

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA  19102

Richard P. Long
Warner & Meihofer, LLC
218 N. Jefferson
Suite 300
Chicago, IL  60661

Melodie M. Mabanta
Robinson, Woolson & O'Donnell
217 E. Redwood Street
Suite 1500
Baltimore, MD  21202

Leslie MacLean
Waters & Kraus
3219 McKinney
Suite 3000
Dallas, TX  75204

Donald C. Machado
Central Pacific Plaza
220 S. King Street, Suite 2100
Honolulu, HI  96813

Eric Manchin
Kaeske Reeves
6301 Gaston Ave
Suite 735
Dallas, TX  75214

Jerold T. Matayoshi
Fukunaga, Matayoshi, Hershey
& Ching
Davies Pacific Center, Suite 1200
841 Bishop Street
Honolulu, HI  96813

Christopher D. Mauriello
Wallace & Graham, P.A.
525 N. Main Street
Salisbury, NC  28144

Edward J. McCambridge
Segal, McCambridge, Singer
& Mahoney
One IBM Plaza, Suite 200
330 North Wabash Avenue
Chicago, IL  60611

Silas W. McCharen
Daniel, Coker, Horton & Bell
P.O. Box 1084
111 East Capitol Street, Suite 600
Jackson, MS  39215

Charles S. McCowan, Jr.
Kean, Miller, Hawthorne, et al.
One American Place, 22nd Floor
P.O. Box 3513
Baton Rouge, LA  70821

Daniel W. McGrath
Hinshaw & Culbertson
222 North Lasalle Street
Suite 300
Chicago, IL  60601

Kim M. Meaders
Crouch & Inabnett
2300 Fountain Place
1445 Ross Avenue
Dallas, TX  75202

Lewis Charles Miltenberger
Cordray, Goodrich & Miltenberger
108 West 8th Street, Suite 500
Ft. Worth, TX  76102

Willard J. Moody, Jr.
Moody, Strople, Kloeppel & Basilone
500 Crawford Street
Commerce Bank Bldg., Suite 300
P.O. Box 1138
Portsmouth, VA  23705

Marty A. Morris
Baron & Budd
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX  75219

INVOLVED COUNSEL FOR SCHEDULE  CTO-209  (Cont.) MDL-875                    PAGE 6

Ronald L. Motley
Ness, Motley, Loadholt, Richardson
& Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC  29465

Richard I. Nemeroff
Baron & Budd
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219

John Nishimoto
Ayabe, Chong, Nishimoto, Sia
& Nakamura
Pauahi Tower
1001 Bishop Street, Suite 2500
Honolulu, HI  96813

Robert L. Norton
Jones & Granger
10000 Memorial Drive, Suite 888
P.O. Box 4340
Houston, TX  77210

E. R. Nunnally
Bell, Nunnally & Martin
3232 McKinney Avenue
Suite 1400
Dallas, TX  75204

Michael F. O'Connor
Oliver, Lau, Lawhn, Ogawa
& Nakamura
Ocean View Center, Suite 600
707 Richards Street
Honolulu, HI  96813

John M. O'Quinn
O'Quinn & Laminack
2300 Lyric Centre Building
440 Louisiana Street
Houston, TX  77002

James R. Old, Jr.
Germer & Gertz
805 Park Street
Beaumont, TX  77701

Aimee H. Oyasato
White & Tom
820 Mililani Street, Suite 701
Honolulu, HI  96813

Peter T. Paladino, Jr.
Ketchum Center, 3rd Floor
1030 Fifth Avenue
Pittsburgh, PA  15219

Trevor L. Pearlman
Silber & Pearlman
2711 North Haskell Avenue
Suite 32
Dallas, TX  75204

Ronald G. Peresich
Page, Mannino, Peresich
& McDermott
P.O. Drawer 289
759 Vieux Marche' Mall
Biloxi, MS  39533

Joseph S. Pevsner
Thompson & Knight, P.C.
3300 First City Center
1700 Pacific Avenue
Dallas, TX  75201

Joseph Stuart Pevsner
Thompson & Knight
1700 Pacific Avenue
Suite 3300
Dallas, TX  75201

Kent L. Plotner
Heyl & Royster
Mark Twain Plaza II, Suite 100
103 North Main Street
P.O. Box 467
Edwardsville, IL  62025

James B. Pressly, Jr.
Haynsworth Sinkler Boyd
75 Beattie Place
11th Floor
Greenville, SC  29601

Robert A. Pritchard
Pritchard Law Firm
P.O. Drawer 1707
Pascagoula, MS 39568

Christopher J. Raistrick
Bellande, Cheely, O'Flaherty, Sargis
& Ayers
19 South Lasalle Street, Suite 1203
Chicago, IL  60603

Mark E. Rakoczy
Skadden, Arps, Slate, Meagher & Flom
333 West Wacker Drive
Suite 2100
Chicago, IL  60606

William C. Reeves
Markow, Walker, Reeves & Anderson
805 South Wheatley, Suite 475
P.O. Box 13669
Jackson, MS 39236

John J. Repcheck
Marks, O'Neill
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA  15219

Robert H. Riley
Schiff, Hardin & Waite
6600 Sears Tower
233 South Wacker Drive
Chicago, IL  60606

Trudy Hartzog Robertson
Moore & Van Allen, PLLC
P.O. Box 22828
Charleston, SC  29413

Dawn Smith Rodrigue
LeBlanc & Waddell, LLC
The Essen Centre
5353 Essen Lane, Suite 420
Baton Rouge, LA  70809

Arthur F. Roeca
Roeca, Louie & Hiraoka
Davies Pacific Center, Suite 900
841 Bishop Street
Honolulu, HI  96813

John D. Roven
John Roven & Associates
2190 North Loop West
Suite 410
Houston, TX  77018

Paul L. Sadler
Wellborn, Houston, Adkison, Mann
& Sadler
P.O. Box 1109
Henderson, TX  75653

INVOLVED COUNSEL FOR SCHEDULE  CTO-209  (Cont.) MDL-875                    PAGE 7

Stephanie Ann Scharf
Jenner & Block
One IBM Plaza
Suite 4400
Chicago, IL  60611

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH  43216

Mark Steven Scudder
Strasburger & Price, L.L.P.
901 Main Street
Suite 4300
Dallas, TX  75202

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA  90025

Robert L. Shuftan
Wildman, Harrold, Allen & Dixon
225 West Wacker Drive
Suite 3000
Chicago, IL  60606

Donald L. Sime
Hinshaw & Culbertson
110 North West Street
Waukegan, IL  60085

Melissa Skilken
Wildman, Harrold, Allen & Dixon
225 West Wacker Drive
Suite 3000
Chicago, IL  60606

Andrew C. Skinner
Skadden, Arps, Slate, Meagher
& Flom
333 West Wacker Drive, Suite 2100
Chicago, IL  60606

Edward M. Slaughter
Foster & Sear
1201 North Watson
Suite 145
Arlington, TX  76006

Patrick C. Smith
Church & Houff, PA
2 North Charles Street, Suite 600
Baltimore, MD  21201

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West, 15th Floor
Philadelphia, PA  19102

Robert Spitkovsky
Johnson & Bell, Ltd.
222 North Lasalle Street
Suite 2200
Chicago, IL  60601

Joseph Stalmack
Joseph Stalmack & Associates, P.C.
5253 Hohman Avenue
Hammond, IN  45210

Minor C. Sumners, Jr.
1907 Dunbarton Drive
Suite F
Jackson, MS  39216

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
Detroit, MI  48226

Thomas R. Sylvester
Pacific Tower, Suite 2200
1001 Bishop Street
Honolulu, HI  96813

William K. Tapscott
Baron & Budd
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX  75219

Thomas W. Taylor
Andrews & Kurth
600 Travis
Suite 4200
Houston, TX  77002

Robert E. Thackston
Jenkens & Gilchrist
3200 Allied Bank Tower
1445 Ross Avenue
Dallas, TX  75202

William M. Thomas
Fairchild, Price, Thomas & Haley
413 Shelbyville Street
P.O. Drawer 1719
Center, TX  75935

Michael P. Thornton
Thornton & Naumes, L.L.P.
100 Summer Street
30th Floor
Boston, MA  02110

Andrew J. Trevelise
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103

Willis R. Tribler
Tribler, Orpett & Crone
30 North LaSalle Street
Suite 2200
Chicago, IL  60602

Thomas W. Tyner
Aultman, Tyner, McNeese, Ruffin
& Yarborough
P. O. Box 750
315 Hemphill Street
Hattiesburg, MS  39403

Robert T. Varney
Robert T. Varney & Associates
121 N. Main Street
4th Floor
Bloomington, IL  61701

Thomas E. Vaughn
Allen, Vaughn, Cobb & Hood
P.O. Drawer 4108
Gulfport, MS  39502

Lawrence D. Wade
Campbell, DeLong, Hagwood & Wade
P.O. Box 1856
Greenville, MS  38702

Michael R. Walzel
Stevens, Baldo & Freeman, L.L.P.
550 Fannin Street, Suite 400
P.O. Box 4950
Beaumont, TX  77704

INVOLVED COUNSEL FOR SCHEDULE  CTO-209  (Cont.) MDL-875        **PAGE 8**

Frank J. Wathen
Foster & Sear
1201 N Watson
Suite 145
Arlington, TX  76006

Scott W. Wert
Foster & Sear
360 Place Office Park
1201 N. Watson, Suite 145
Arlington, TX  76006

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA  52406

Eric D. Wewers
DeHay & Elliston, L.L.P.
3500 NationsBank Plaza
901 Main Street
Dallas, TX  75202

Kenneth Charles Whalen
Moody, Strople, Kloeppel & Basilone
9280 Bay Plaza Blvd.
Bay Plaza II, Suite 714
Tampa, FL  33619

Clay M. White
Sammons & Parker, P.C.
218 North College
Tyler, TX  75702

Daniel B. White
Gallivan, White & Boyd, P.A.
P.O. Box 10589
Greenville, SC  29603

Robert W. Wilkinson
Dogan & Wilkinson
P.O. Box 1618
726 Delmas Avenue
Pascagoula, MS  39568

Gene M. Williams
Mehaffy & Weber, P.C.
P.O. Box 16
Beaumont, TX  77002

Roy C. Williams
Colingo, Williams, Heidelberg, et al.
P.O. Box 1407
711 Delmas Avenue
Pascagoula, MS  39568

Douglas P. Wilson
Wilson Law Offices
200 Firstar Bank Building
6405 North Cosby Avenue
Kansas City, MO  64151

Troyce G. Wolf
Waters & Kraus
3219 McKinney
Suite 3000
Dallas, TX  75204

Dawn M. Wright
Thompson & Knight
1700 Pacific Ave
Suite 3300
Dallas, TX  75201

Jamshyd M. Zadeh
Bourland Kirkman Seidler & Evans
201 Main Street
Suite 1400
Fort Worth, TX  76102