



JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR - 8 2002

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

---

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)
## MDL DOCKET NO. 875

---

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DISTRICT

| | |
|---|---|
| Arne W. Christianson, | Civil Action Nos.:  A2-01-141 |
| Judy Saragoza, Mary Keiser, Dale Sieglock, | A2-01-142 |
| and James Sieglock, individually, | |
| and as personal representative of the Estate of | |
| Leo L. Sieglock, deceased, | |
| Myles Drellack, | A2-01-143 |
| Obert Amble, | A2-01-144 |
| Clinton T. Dowling, | A2-01-145 |
| Edwin Gartner, | A3-01-146 |
| Coralee Erickson, individually and as personal | |
| representative on behalf of the Estate of | A3-01-147 |
| Elven C. Gade, deceased, | |

     Plaintiffs,

  v.

DAIMLERCHRYSLER, FORD MOTOR
COMPANY and GENERAL MOTORS
CORPORATION,

     Defendants.

OFFICIAL FILE COPY IMAGED MAR 11 '02

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR - 8 2002

FILED
CLERK'S OFFICE

## MOTION BY NORTH DAKOTA PLAINTIFFS TO VACATE
## CONDITIONAL TRANSFER ORDER (CTO- 210)

The above-captioned North Dakota plaintiffs, pursuant to Rule 12(c) of the Rules

of Procedure of the Judicial Panel on Multidistrict Litigation, hereby move the Panel to

vacate its Conditional Transfer Order (CTO-210) of February 8, 2002, which order

proposes the transfer of the above-captioned cases to the United States District Court

for the Eastern District of Pennsylvania.  The instant motion is based and supported by

the substance of the accompanying Brief in Support of Motion by North Dakota Plaintiffs

to Vacate Conditional Transfer Order (CTO-210), as well as such other materials as

may be presented to the Panel at the time of the hearing on this motion.

Pursuant to Rule 12(c), the movants further hereby request that the Clerk of the

Panel set this motion for hearing at the next session of said Panel.

Dated this 7th day of March, 2002.

**DAVID THOMPSON, P.C.**
David C. Thompson
321 Kittson Avenue
P.O. Box 5235
Grand Forks, ND 58206-5235
701-775-7012
701-775-2520 (Facsimile)

**BOECHLER, P.C.**
Jeanette T. Boechler
1120 28th Avenue North, Suite A
P.O. Box 1932
Fargo, ND 58107-1932
701-237-3071
701-237-9035 (Facsimile)

*COUNSEL FOR PLAINTIFFS*

2

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR - 8 2002

## CERTIFICATE OF SERVICE

FILED
CLERK'S OFFICE

I hereby certify that on March 7, 2002, a true and correct copy of the foregoing Motion to Vacate the Conditional Transfer Order was mailed, postage pre-paid, to each of the attorneys listed on the attached Panel Service List of the Judicial Panel on Multidistrict Litigation (excerpted from CTO-210), as such list was conveyed to counsel under cover of correspondence dated February 21, 2002, by Michael J. Beck, Clerk of the Panel.

_____
David C. Thompson

**PANEL SERVICE LIST (Excerpted from CTO-210)**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

*Christianson v. ACandS, Inc., et al.*, D. North Dakota, C.A. No. 2:01-141
*Saragoza, et al. v. ACandS, Inc., et al.*, D. North Dakota, C.A. No. 2:01-142
*Drellack v. A.H. Bennett Co., et al.*, D. North Dakota, C.A. No. 2:01-143
*Amble v. Allied Signal, Inc., et al.*, D. North Dakota, C.A. No. 2:01-144
*Dowling v. A.H. Bennett Co., et al.*, D. North Dakota, C.A. No. 2:01-145
*Gartner v. Allied Signal, Inc., et al.*, D. North Dakota, C.A. No. 3:01-146
*Erickson, etc. v. Allied Signal, Inc., et al.*, D. North Dakota, C.A. No. 3:01-147

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH  44114

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH  44115

Adam M. Chud
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, DC  20036

David A. Damico
Burns, White & Hickton
2400 Fifth Avenue Place
120 Fifth Avenue
Pittsburgh, PA  15222

B. Timothy Durick
Pearce & Durick
P.O. Box 400
314 East Thayer Avenue
Bismarck, ND  58502

Raymond P. Forceno
Forceno & Hannon
Philadelphia Bourse Building
Suite 1000
Independence Mall East
Philadelphia, PA  19106

Ellen B. Furman
Goldfein & Joseph
1600 Market Street
33rd Floor
Philadelphia, PA  19103

Susan M. Hansen
Brownson & Ballou
4800 U.S. Bank Place
601 Second Avenue, South
Minneapolis, MN  55402

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH  44308

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA  23219

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA  19102

David N. Lutz
Bowman & Brooke
150 South 5th Street
Suite 2600
Minneapolis, MN  55402

Ronald L. Motley
Ness, Motley, Loadholt, Richardson &
Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC  29465

John J. Repcheck
Marks, O'Neill
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA  15219

John D. Roven
John Roven & Associates
2190 North Loop West
Suite 410
Houston, TX  77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH  43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA  90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West, 15th Floor
Philadelphia, PA  19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
Detroit, MI  48226

David C. Thompson
P.O. Box 5235
321 Kittson Avenue
Grand Forks, ND  58206

Andrew J. Trevelise
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA  52406



JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR - 8 2002

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

---

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)
## MDL DOCKET NO. 875

---

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NORTH DAKOTA
### NORTHEASTERN DISTRICT

| | |
|---|---|
| Arne W. Christianson, | Civil Action Nos.:  A2-01-141 |
| Judy Saragoza, Mary Keiser, Dale Sieglock, | A2-01-142 |
| and James Sieglock, individually, | |
| and as personal representative of the Estate of | |
| Leo L. Sieglock, deceased, | |
| Myles Drellack, | A2-01-143 |
| Obert Amble, | A2-01-144 |
| Clinton T. Dowling, | A2-01-145 |
| Edwin Gartner, | A3-01-146 |
| Coralee Erickson, individually and as personal | |
| representative on behalf of the Estate of | A3-01-147 |
| Elven C. Gade, deceased, | |

            Plaintiffs,

    v.

DAIMLERCHRYSLER, FORD MOTOR
COMPANY and GENERAL MOTORS
CORPORATION,

            Defendants.

# BRIEF IN SUPPORT OF MOTION BY NORTH DAKOTA PLAINTIFFS
## TO VACATE CONDITIONAL TRANSFER ORDER (CTO-210)

## I.  FACTS AND PROCEDURAL HISTORY

As part of a national litigation strategy now well familiar to the Panel, DaimlerChrysler Corporation, Ford Motor Company, and General Motors Corporation (the "automakers") acted on November 28-29, 2001, supposedly pursuant to *28 U.S.C. § § 1334 and 1452*(a), to remove the plaintiffs' North Dakota state court claims against these automakers in the above-captioned cases.[1]

Simultaneously, the automakers moved the United States District Court for the District of Delaware for the transfer to that court of "all claims and causes of action against the Automobile Manufacturers [automakers] in state or federal court alleging injuries due to friction products, including brakes and other automotive parts[,]" pursuant to *28 U.S.C. § 157*(b)(5).[2]  The automakers claimed the  actions removed were "related to" the

---

[1] In a fact of considerable significance for the purposes of the current proceedings, wherein the above-captioned North Dakota plaintiffs move the Panel to **vacate** the proposed transfer of their cases to the Eastern District of Pennsylvania, ***presently pending before the Honorable Rodney S. Webb, Chief Judge of United States District Court for the District of North Dakota, are motions by the plaintiffs to remand all of these cases to the state courts of their origins on various subject matter and other jurisdictional grounds***. See, e.g., the Order entered by Chief Judge Webb on ***March 4, 2002***, in which the court recognizes its continuing jurisdiction over all of the above-captioned cases, with the court in this Order stating its intention to rule upon the plaintiffs' remand motions on subject matter jurisdiction grounds, *slip opinion of said Order being attached hereto as **Appendix "A"***.

[2] ***This litigation strategy pursued by the removing automaker defendants is failing. In a decision entered February 8, 2002,*** by the Honorable Alfred M. Wolin, United States District Judge for the District of New Jersey, sitting by Third Circuit designation in the District of Delaware, ***the whole package of unprecedented legal assertions peddled by the automakers in their attempted hijacking of these cases to federal court, was rejected, entirely***. See, e.g., In re: Federal-Mogul Global, Inc., 2002 Bankr.LEXIS 105 (Bkrtcy. Del. **February 8, 2002**) [wherein **the automakers' "motions to transfer the Friction Products Claims (were) denied"; the court held that it lacked "subject matter jurisdiction over the Friction Products Claims"; and the court "ordered that the Friction**

bankruptcy of Federal-Mogul Global, Inc. (Federal-Mogul).[3]

From the language of the uniformly-worded notices of removal which were filed by the automakers, as confirmed by briefing of these defendants in the North Dakota federal district court, it has been clear that the **only** supposed factual grounds asserted by the automaker's for "related-to-bankruptcy" jurisdiction, were the alleged possibilities that the automakers might be entitled to contribution and/or indemnification from bankrupt Federal Mogul, allegedly as a result of the plaintiffs' North Dakota state law claims against the automakers.

**However, these speculative and undefined purported "contribution and/or indemnification" rights, asserted by the automakers in their conclusory "related-to-Federal Mogul-bankruptcy" position, never did have any application or legal force relative to the instant _North Dakota_ cases, which are governed by _North Dakota_ state substantive law. Ever since the North Dakota Legislative Assembly abolished joint and several liability back in 1987, there have existed no rights of contribution and/or indemnification under North Dakota substantive law, because joint tortfeasors had thereby ceased to exist as well.[4] _It is thus respectfully submitted that this crucial_**

---

Products Claims. . . (be) remanded to the state courts from which they were removed", pursuant to 28 U.S.C. § 1447, and, alternatively, pursuant to 28 U.S.C. §1452]. **_A 41-page opinion authored by Judge Wolin was filed one week later, on January 15, 2002_**. See, slip opinion thereof, attached hereto as **Appendix "B*"**.

[3]Federal-Mogul Global, Inc., filed a petition for Chapter 11 bankruptcy on **October 1, 2001**. See, Bankruptcy Case No. 01-10578, and related cases, in the United States Bankruptcy Court for the District of Delaware.

[4]In this regard, it should be noted there have never been any cross-claims pending between **any** defendant parties in **any** of the above-referenced cases, automakers or otherwise, and indeed there exist no rights of contribution, either contingent or vested, in favor of the removing defendants in these cases,

*characteristic of North Dakota substantive law itself distinguishes the above-captioned cases from perhaps all others covered by CTO-210.*

It is beyond question that the plaintiffs' complaints contain claims which arise *exclusively* under North Dakota state law. In these cases, the plaintiffs joined a group of defendants, among which were several resident North Dakota corporations. As such, diversity of citizenship never has existed, and indeed such diversity has never been alleged by the removing automakers. Despite such undisputed facts, these three *solvent* automaker co-defendants removed these North Dakota state court cases, reciting alleged "related-to" bankruptcy jurisdiction under 28 U.S.C. § 1334, purportedly deriving from the fortuitous bankruptcy proceedings of Federal Mogul Global, Inc., and its related entities, in the United States Bankruptcy Court for the District of Delaware.

**However, in a fatal flaw to their attempted removals, *the automaker defendants failed to timely remove the instant cases*, with these defendants incorrectly asserting in their removal notices that they had ninety (90) days from the October 1, 2001, commencement of the Federal Mogul Inc. bankruptcy within which to file such removal notices/petitions.**[5] A pending motion to remand these cases on the grounds of

---

all of which were begun in North Dakota state courts long after the North Dakota's legislature's abolition of joint and several liability and corresponding actions for contribution. See, e.g., <u>Pierce v. Shannon</u>, 2000 ND 54, 607 N.W.2d 878, 879-880 (N.D. 2000); and <u>Target Stores v. Automated Maintenance Services, Inc.</u>, 492 N.W.2d 899, 902-904 (N.D. 1992).

[5]It is clear from the language of the Notices of Removal which were filed in the above-referenced cases, that *the putative removing parties,* Daimler Chrysler Corporation, Ford Motor Company and General Motors Corporation, themselves *admit that the removal-triggering event, temporally, was the "commencement of the Federal-Mogul Bankruptcy Case on October 1, 2001 . . .".*  See, numbered Paragraph 6 of the identical notices of removal filed in each of the above-referenced cases, and specifically the exemplar Joint Notice of Removal filed in <u>Myles Drellack v. A.H. Bennett Company, et. al.</u>,

the automakers' untimely removals is pending before Chief Judge Rodney S. Webb in the District of North Dakota. See, e.g., the Order of Chief Judge Webb, a copy of which slip opinion is attached to here as **Appendix "A"**.

Also pending before Chief Judge Webb is a motion by the plaintiffs for remand of these cases on: (1) the subject matter jurisdictional grounds that the removal automakers' notices/petitions in these cases fail to demonstrate "related-to-bankruptcy" federal jurisdiction under 28 U.S.C. §§ 1334(b) and 1452(a); (2) those equitable grounds which require remand under 28 U.S.C. §1452(b); and (3) the mandatory abstention which is required by 28 U.S.C. § 1334(c)(2). *Id.*

## II.   ARGUMENT AND AUTHORITY

A.   **The policies underlying Panel Rule 7.4, and federal decisions interpreting this and related Panel rules, speak strongly in favor of the Panel vacating CTO-210, as applicable to the above-captioned North Dakota cases, where Chief Judge Webb has formally expressed his intention and desire to rule upon active and pending motions by the plaintiffs for remand of these cases**

_____

Civil No. A2-01-143, attached hereto as **Appendix "C"**.  Indeed, paragraph 6, provides as follows:

> **This Joint Notice of Removal is timely filed** under Rule 9027(a)(2) of the Federal Rules of Bankruptcy **in that the claims in the civil action were pending before commencement of the Federal-Mogul Bankruptcy Case on October 1, 2001,** *and that this notice has been filed within 90 days after October 1, 2001*.  (emphasis added).

However, while these removing defendants claim in their notices/petitions that such notices/petitions were *timely* filed in the North Dakota state courts, *it is clear, based on the authorities referenced hereafter, that the applicable time period for removing these cases was the thirty (30) day period which is set forth in 28 U.S.C. §1446(b)*, not a ninety (90) day period referenced in Rule 9027(a) of the Federal Rules of Bankruptcy Procedure. See, e.g., In re: Asbestos Litigation, __ F.Supp.2d __ , 2002 U.S. Dist. LEXIS 3083, **6-9, (D. Or. *February 1, 2002*) (a decision remanding automaker-removed asbestos friction product cases, with the court holding that *"the thirty-day deadline in 28 U.S.C. § 1446(b) governs rather than the ninety-day deadline in Bankruptcy Rule 9027(a) . . . (d)efendants' notice of removal was not timely."*) See, also, Thomson v. Able Supply Co., 179 F.Supp.2d 693, 696 n.6 (W.D.Tex. January 4, 2002) (same).

**on jurisdictional (including subject matter jurisdiction) grounds.**

As stated above, Chief Judge Rodney S. Webb of the United States District Court for the District of North Dakota, by Order of February 22, 2002, transferred to himself "a large number of asbestos cases (*including, but not limited, to the above-captioned cases*) removed to the District of North Dakota by the so-called 'Big Three' automakers." See, Order entered by Chief Judge Webb on March 4, 2002, slip opinion attached hereto as **Appendix "A"**, at page one thereof.

Manifest from Chief Judge Webb's treatment of these cases, and specifically the language in his above-referenced Order of March 4, 2002, is the fact that Chief Judge Webb intends and desires to have final decision-making authority relative to the plaintiffs' pending motions for remand on jurisdictional grounds. *Id.* at pages 1-2. This North Dakota federal court's intention and desire to *retain jurisdiction* over the above-captioned cases, and the plaintiffs' jurisdictionally-based remand motions in them, is more than clear from Chief Judge Webb's March 4th Order, wherein the court explains that if the Third Circuit Court of Appeals *should* find *(in the current appeal from Judge Wolin's court)* that "related-to-bankruptcy" jurisdiction does exist, that the North Dakota court would then "address the merits of the plaintiffs' (remand) arguments . . .", notwithstanding the results of any Third Circuit decision. *Id.* at page 2.

Indeed, it is respectfully submitted that the rules of the Panel (*and the policies thereunder*) specifically comprehend the Panel allowing Chief Judge Webb to do precisely that which he stated in his March 4th Order was his intention and desire, ruling upon the

6

pending plaintiffs' motions for remand in the above-captioned automaker-removed cases.[6]

As the court is aware, Panel Rule 7.4(c) provides, in pertinent part, that, "(i)f a notice of opposition is received by the Clerk of the (MDL) Panel . . . the Clerk of the Panel shall not transmit said (transfer) order to the clerk of the transferee court (E.D.Pa.) until further order of the Panel."   Importantly, Rule 7.4(e), in turn, provides correspondingly that, "(c)onditional transfer orders do not become effective unless and until they are filed with the clerk of the transferee district court."

Reported decisions construing Panel Rule 7.4, and its companion Panel Rule 1.5, make clear that, notwithstanding the issuance of these "conditional transfer orders", jurisdiction over the cases referenced therein remains in the transferor (originally-removed-to) federal district court until the entire objection/opposition procedure prescribed by Rule 7.4 has been completed, including briefing before the Panel, a subsequent hearing, and an eventual decision by the Panel relative to that objection/opposition.[7]

---

[6] *It should be emphasized that the above-captioned cases addressed by CTO-210 are not the only asbestos-related friction product liability cases which have been removed by the automakers from North Dakota state courts to the United States District Court for the District of North Dakota.* As of this time, the other North Dakota state court cases which have been removed to federal court have not yet been subjected to conditional transfer orders entered by the Panel. To the best knowledge of the undersigned plaintiffs' counsel, thus far, the remaining automaker-removed cases have not even been *identified* in any conditional transfer order, either prior to the Panel's entry of CTO-210, or *after* that latter conditional transfer order. **For this reason alone, it is respectfully submitted that transferring the above-captioned cases from Chief Judge Webb's jurisdiction would constitute an inefficient utilization of judicial resources, potentially fostering a divergence of result, between an eventual ruling by the North Dakota district court on the plaintiffs' pending remand motions in the non-CTO-210 automaker-removed cases, and any ruling (*or failure to rule*) on the plaintiffs' remand motions in the above-captioned CTO-210 cases by a transferee court in the Eastern District of Pennsylvania.**

[7] **Certainly, Panel Rules 1.5 and 7.4 are consistent with the universally-recognized general rule that transfer under 28 U.S.C. § 157(b)(5) does not divest the putative "transferor" court of**

7

A representative decision succinctly explaining that jurisdiction remains in the original federal district court, at least pending the outcome of the opposition/objection procedure set forth in Panel Rule 7.4, is <u>Faulk v. Owens-Corning Fiberglas Corp.</u>, 48 F.Supp.2d 653, 657 n.2 (E.D.Tex. 1999), **wherein the court granted remand of an improperly-removed case**, under the authority of 28 U.S.C. Section 1447(c). The court in <u>Faulk</u> explained as follows:

> **<u>Despite this (MDL) conditional transfer order, this Court nonetheless retains jurisdiction</u>** since the order does not become effective until filed in the office of the Clerk of the United States District Court for the Eastern District of Pennsylvania, and 'transmittal of this [conditional transfer] order to said Clerk shall be stayed fifteen (15) days from the entry thereof and if any party files a notice of opposition with the Clerk of the Panel within this fifteen (15) day period, the stay will be continued until further order of the Panel.' *Conditional Order 149*. **On May 17, 1999 plaintiffs filed *Plaintiffs' Notice of Opposition to Conditional Transfer Order (CTO-149)* with the Clerk of the Panel in accordance with Rule 7.4(c) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation. <u>Thus, this Court has jurisdiction to determine Plaintiffs' *Motion to Remand*</u>**. See Panel Rule 1.5, 181 F.R.D. 1, 3 (1998). (*bolded emphasis added, italics in original*).

> 48 F.Supp.2d at 657, n.2.

As the Panel itself similarly explained in <u>In re Prudential Insurance Company of America Sales Practices Litigation</u>, 170 F.Supp.2d 1346, 1347 (J.P.M.L. 2001):

---

jurisdiction, until transfer is complete. **"Transfer of a case from one district to another is not complete until the papers are physically docketed in the office of the receiving court."** <u>Wilson v. City of San Jose</u>, 111 F.3d 688, 692 (9th Cir. 1997). See, also, e.g., This principle is well established. See, e.g., <u>Midwest Motor Express, Inc. v. Central States Southeast</u>, 70 F.3d 1014, 1016 (8th Cir. 1995), *citing* <u>In re Nine Mile Limited</u>, 673 F.2d 242, 243-244 & n.5 (8th Cir. 1982). See, also, e.g., <u>Chrysler Credit Corporation v. Country Chrysler, Inc.</u>, 928 F.2d 1509, 1517 (10th Cir. 1991), citing cases from the Fifth, Seventh, Ninth and Tenth Circuits for the proposition that, **"(t)he date the papers in the transferred case are docketed in the transferee court, not the date of the transfer order, consequently forms the effective date that jurisdiction in the transferor court is terminated."** <u>Chrysler Credit Corporation</u>, *supra*, 928 F.2d at 1517.

Panel Rule, 1.5 . . . expressly provides that ***the pendency of a conditional transfer order does not in any way* i) suspend orders and pretrial proceedings in the district court in which the action that is the subject of the conditional transfer order is pending, or ii) *limit the pretrial jurisdiction of that court*; and   accordingly, those courts wishing to address such motions have adequate time in which to do so** . . . ". (emphasis added).

170 F.Supp.2d at 1347.

These authorities, and the Panel's rules, recognize the wisdom of having a putative

"transferor" court rule upon *pending* subject matter jurisdiction remand motions ***prior to transfer***. Therefore, it is respectfully submitted that of compelling significance, in the

context of the present automaker removals, is the following language from the recent

decision (***February 1, 2002***)  of the Honorable Owen M. Panner of the United States

District Court for the District of Oregon, ***in which Judge Panner ordered the remand of automaker-removed, asbestos-related cases, which had been removed on the supposed basis of alleged "related-to-bankruptcy" jurisdiction***:

> **Before the provisional transfer order can be effective, this court must have jurisdiction over the removed claims.  The provisional transfer order does not relieve this court of its primary and independent duty to determine its own subject matter jurisdiction**.  See, California ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. United States, 215 F.3d 1005, 1009 (9th Cir. 2000). **That duty should not be delegated to another court**. See, In re Claims Removed by Honeywell Int'l., Inc., No. 2:01-MC-0104, 2002 WL 13277, at *2 (S.D. W.Va. Jan. 4, 2002) (rejecting argument that the federal district court was "a mere pass-through forum" between the state court and the District of Delaware). (*emphasis added*).

In re: Asbestos Litigation, ___ F.Supp.2d ___, 2002 Dist. LEXIS 3083, *6 (D.Or. **February 1, 2002)**.

In any event, it is respectfully submitted that a multi-district transfer at this point

would create a jurisdictional tug-of-war between the Panel (under 28 U.S.C. §1407) and

9

Judge Wolin and/or the Third Circuit [under 28 U.S.C. §157 (b)(5)], thereby creating even more confusion and uncertainty, than already exists in these cases.[8] Furthermore, transfer of these cases by the Panel unquestionably delays, immeasurably, the prosecution of these cases, **some of which cases are currently set for trial in North Dakota state court in May 7, 2002**.

As the Panel has done in previous like circumstances, the Panel should decline to effectuate transfer the above-captioned cases until plaintiffs' remand motions have been decided by the United States District Court of first federal jurisdiction *(the putative "transferor" court)*.[9] It is well settled, that in MDL conditional transfer order situations, the

---

[8] Indeed, as stated above, **Judge Wolin ruled on February 8, 2002: (1) denying the automakers' motion to transfer so-called asbestos "friction products claims" to the Federal-Mogul Global, Inc., bankruptcy proceedings; (2) finding that federal subject matter jurisdiction did not exist as to the automaker-removed "friction products claims"; (3) remanding these automaker-removed "friction products claims" to "the state courts from which they were removed" pursuant to 28 U.S.C. § 1447; and (4) remanding these automaker-removed "friction products claims" to "the state courts from which they were removed" pursuant to 28 U.S.C. § 1452.** In re: Federal-Mogul Global, Inc., 2002 Bankr. LEXIS 105, **4-5 (Bkrtcy. Del. **February 8, 2002**). These proceedings remain in a state of suspended animation, given the Third Circuit Court of Appeals' order of February 11, 2002, granting "temporarily" the automakers' motion for a stay of Judge Wolin's above-referenced order of February 8, 2002, to enable the Third Circuit "to receive responses to the (automakers') motion from opposing counsel and for full consideration of the matter by a three judge panel." See, the unpublished order, entered by Circuit Judge Scirica, on February 11, 2002, of the United States Court of Appeals for the Third Circuit, in In re: Federal-Mogul Global, Inc., et.al. (Daimler Chrysler Corporation, Ford Motors Company and General Motors Corporation, Appellants), No. 02-1426.

[9] See, Rule of Procedure 1.5, Judicial Panel on Multidistrict Litigation; BancOhio Corp. v. Fox, 516 F.2d 29 (6th Cir. 1975)(**a transfer under 28 U.S.C. 1407 cannot be made unless the district court properly has jurisdiction of the subject matter of the case**); In re Showa Denko K.K. L-Tryptophan Products Liability Litig.-II, 953 F.2d 162, 165 (4th Cir.1992) (**"The authority for consolidating cases on the order of the judicial panel of multi-district litigation, however, is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred.... [N]owhere does it expand the jurisdiction of either the transferor or the transferee court."**); United States v. Brandt Constr. Co., 826 F.2d 643, 647 (7th Cir.1987)(**28 U.S.C. 1407 "requires that both actions be 'pending before the court' and an improperly removed action does not meet this criterion"**); Dorsey v. Manufacturers Life Ins. Co.1997 WL 703354 (E.D.La.,1997)(same, following Brandt); Farkas v. Bridgestone/Firestone, Inc., 113 F.Supp.2d 1107, 1115 n. 8 (W.D.Ky.2000) (**holding that "the jurisdictional issue must be resolved before deciding whether to stay or transfer the case to the MDL panel"**); Meyers v. Bayer AG, 143 F.Supp.2d 1044, 1048-49 (E.D.Wis.2001)(**a court should attend**

original district court retains jurisdiction to rule upon pending remand motions.[10]

The United States Supreme Court has frequently emphasized the importance of a federal district court deciding - for itself - jurisdictional issues.[11] Therefore, in the instant automaker-removed cases, it is respectfully submitted that the jurisdictional issues raised by the plaintiffs' pending remand motions, must be resolved **before** any decision should be made by the Panel as to whether transfer the case to the Eastern District of Pennsylvania.[12]. In these cases, the jurisdictional issue(s) have not been resolved. As stated above, the plaintiffs' motions for remand are currently pending in the United States District Court for the District of North Dakota, Chief Judge Rodney S. Webb presiding, who has expressed in a written order of March 4, 2002, his intention and desire to decide the plaintiffs' jurisdictionally-based motions for remand, regardless of the outcome of the current Third Circuit proceedings in the automakers' appeal from Judge Wolin's court.

**B.    The transfer of these North Dakota cases to the Eastern District of Pennsylvania into MDL-875 should not occur, given the fact**

---

to a motion to remand prior to transferring a case under 28 U.S.C. 1407); _In re L. E. Lay & Co. Antitrust Litigation_, 391 F.Supp. 1054. (Jud.Pan.Mult.Lit.1975)**(principles of comity dictate that the Panel will be reluctant to transfer a case while an important motion is pending before the transferee court)**.

[10] _In re Asbestos Product Liability Litigation (No. IV)_, 1996 WL 14826 (Jud. Panel. Mult. Lit.) at fn. 2 (Since "there is a lag time of at least three or four months" . . . **"those courts wishing to address such [remand] motions have adequate time to do so"**); _Faulk v. Owens-Corning_, 48 F. Supp. 2d 653, 657 n. 2 (E.D. Tex. 1999) (**"This court has jurisdiction to determine plaintiffs' motion to remand.** _See_ Panel Rule 1.5, 818 F.R.D. 1, 3 (1998).").

[11] _Steel Company v. Citizens for a Better Environment_, 523 U.S. 83, 94 (1998).

[12] _Aetna U.S. Healthcare, Inc. v. Aktiengesellschaft, Inc._ 48 F.Supp.2d 37, 39 (D.D.C., 1999) **(deciding whether removal was proper before deciding whether to stay pending ruling by Judicial Panel on Multidistrict Litigation);** _Good v. Prudential Ins._ 5 F.Supp.2d 804, 809 (N.D.Cal., 1998) **(Discussing motion to remand before motion to stay and finding stay proper after finding remand improper)**.

> that every court which has examined, substantively, alleged "related-to-Federal-Mogul-bankruptcy" federal jurisdiction has _rejected_ the concept entirely, most notably including Judge Wolin, who had the benefit of hundreds of pages of legal briefing and factual documentation before him when he repudiated completely the automakers' litigation strategy of wholesale obstructive removals of state court claims to federal courts throughout the nation.

As the Panel evaluates that which is certainly a ministerially-generated conditional order for the transfer of the above-captioned cases to the Eastern District of Pennsylvania within MDL-875, based on the 1991 decision of the Panel, 771 F.Supp. 415 (J.P.M.L.), _it is respectfully submitted that the Panel should not, and indeed may not, ignore the fundamental distinction between the current jurisdictionally-defective, high-handed, wholesale removals attempted by the automakers, and the Panel's eleven or so years of regular federal asbestos litigation transfer experience_.

The automakers' current removals of discrete asbestos friction products claims against them, on the essentially nonexistent grounds that such claims against these solvent automakers are somehow "related to" the Federal-Mogul bankruptcy case, if not frivolously pursued, are certainly the next closest thing to bad faith litigation.

Without exception, _every single federal court which has taken the opportunity to examine the substance of the automakers' and other opportunistic asbestos litigation defendants' removals of state court asbestos claims, on the purported basis of "related-to-Federal-Mogul-bankruptcy" federal jurisdiction, has completely rejected this theory_.[13]

---

[13]See, e.g., In re: Federal-Mogul Global, Inc., 2002 Bankr.LEXIS 105 (Bkrtcy. Del. **February 8, 2002**) [wherein **the automakers' "motions to transfer the Friction Products Claims (were) denied";**

12

the court held that it lacked "subject matter jurisdiction over the Friction Products Claims"; and the court "ordered that the Friction Products Claims. . . (be) remanded to the state courts from which they were removed", pursuant to 28 U.S.C. § 1447, and, alternatively, pursuant to 28 U.S.C. §1452]. *A 41-page opinion authored by Judge Wolin was filed one week later, on January 15, 2002*. See, slip opinion thereof, attached hereto as **Appendix "B"**, *the substance of which opinion by Judge Wolin is hereby incorporated wholly within this brief by reference.* See, also, e.g., In re: Asbestos Litigation, __ F.Supp.2d __ , 2002 U.S. Dist. LEXIS 3083, **10-12 (D. Or. *February 1, 2002*) *("Defendants have failed to show that subject matter jurisdiction exists based on Federal-Mogul bankruptcy proceedings . . .Defendants, who have the burden of establishing jurisdiction, assert hypothetical indemnity and contribution claims against Federal-Mogul with almost no factual support. Such speculative, theoretical claims are not sufficient to show 'related to' bankruptcy jurisdiction.")*; In re: Asbestos Litigation, 271 B.R. 118, 123-125 (S.D. W. Va. 2001)*(rejecting "related to" jurisdiction because the automaker defendants had not made sufficient factual showing that they had potential contribution or indemnity claims against Federal-Mogul)*; Skylark v. Honeywell International, Inc., No. 01-5069-CIV-Graham/Turnoff, slip op. at 7-8 (S.D. Fla. Jan. 25, 2002)*(alleged-cross claims asserted by asbestos defendant were "simply too speculative and premature to support removal")*; Arnold v. Garlock, Inc., 278 F.3d 426, 2001 Westlaw 1669714, 2001 U.S. App. LEXIS 27375 (5th Cir. 2001)*(like the automaker defendants in the above-captioned cases, asbestos defendant Garlock had "never litigated a contribution claim to collection in any of the approximately 250,000 previous asbestos lawsuits in which Garlock was a co-defendant.")*; In re: Claims Removed by Honeywell International, Inc., 179 F.Supp.2d 649, 2002 U.S.Dist. LEXIS 140 (S.D.W. Va. Jan. 4, 2002)*(asbestos friction defendants failed to demonstrate "related to" bankruptcy federal jurisdiction and "even if subject matter jurisdiction had been demonstrated on an arguably conceivable basis, the Court would and did remand the cases on equitable grounds.")*; Thomson v. Able Supply Co., 179 F.Supp.2d 693, 695-96 (W.D.Tex. January 4, 2002)*("the Court . . . must abstain from hearing the (automakers') removed claims in accordance with the mandatory provisions of 28 U.S.C. 1334(c)(2) and remand the removed claims . . .".)*; Mantooth v. Honeywell International, Inc., 2002 U.S.Dist. LEXIS 2062 (N.D.Tex. 2002)*("Neither plaintiffs' claims nor Honeywell's potential claims for contribution relate to, or arise under, Title 11 of the bankruptcy code . . . in consequence, this court lacks subject matter jurisdiction over this case; it must be remanded.")*; Zagorianos v. Honeywell International, Inc., 2002 U.S.Dist. LEXIS 2063 (N.D.Tex. 2002)*(same)*; Chargois v. Honeywell International, Inc., 2002 U.S.Dist. LEXIS 2064 (N.D.Tex. 2002)*(same)*; Carraway v. Honeywell International, Inc., 2002 U.S.Dist. LEXIS 2065 (N.D.Tex. 2002)*(same)*; Batson v. Honeywell International, Inc., 2002 U.S.Dist. LEXIS 2066 (N.D.Tex. 2002)*(same)*; Seilhan v. Honeywell International, Inc., 2002 U.S.Dist. LEXIS 2089 (N.D.Tex. 2002)*(same)*; Moore v. Honeywell International, Inc., 2002 U.S.Dist. LEXIS 2090 (N.D.Tex. 2002)*(same)*; Allison v. Honeywell International, Inc., 2002 U.S.Dist. LEXIS 2091 (N.D.Tex. 2002)*(same)*; Koonce v. Honeywell International, Inc., 2002 U.S.Dist. LEXIS 2092 (N.D.Tex. 2002)*(same)*; Zullig v. Honeywell International, Inc., 2002 U.S.Dist. LEXIS 2093 (N.D.Tex. 2002)*(same)*; Spenn v. Honeywell International, Inc., 2002 U.S.Dist. LEXIS 2094 (N.D.Tex. 2002)*(same)*; Magee v. Honeywell International, Inc., 2002 U.S.Dist. LEXIS 2095 (N.D.Tex. 2002)*(same)*; Dirks v. Honeywell International, Inc., 2002 U.S.Dist. LEXIS 2096 (N.D.Tex. 2002)*(same)*; Dorn v. Honeywell International, Inc., 2002 U.S.Dist. LEXIS 2119 (N.D.Tex. 2002)*(same)*; Meadath v. Honeywell International, Inc., 2002 U.S.Dist. LEXIS 2120 (N.D.Tex. 2002)*(same)*; Hale v. Honeywell International, Inc., 2002 U.S.Dist. LEXIS 2121 (N.D.Tex. 2002)*(same)*; Grelen v. Honeywell International, Inc., 2002 U.S.Dist. LEXIS 2122 (N.D.Tex. 2002)*(same)*; Thomas v. ACandS, Inc., 2001 U.S.Dist. LEXIS 18915 (N.D.Tex. 2001) *(rejecting asbestos defendant's alleged "related-to-Federal-Mogul-bankruptcy" jurisdiction, and remanding cases to state court)*; and Ridenour v. ACandS, Inc., 2001 U.S.Dist. LEXIS 18921 (N.D.Tex. 2001) *(rejecting asbestos defendant's alleged "related-to-Federal-Mogul-bankruptcy" jurisdiction, and*

To the best knowledge of the undersigned plaintiffs' counsel, there exist no decisions, by any federal courts, since Federal-Mogul Global, Inc. commenced its bankruptcy case on October 1, 2001, in which alleged "related-to-Federal-Mogul-bankruptcy" federal jurisdiction has been sustained. Certainly no such *published* decisions exist, and no such decisions exist as unpublished, but available on LEXIS, or Westlaw.

Conversely, plaintiffs' counsel *are* aware of the existence of numerous ***additional*** (unpublished and unavailable-on-LEXIS-or Westlaw) decisions which have been entered by various federal district courts in numerous federal jurisdictions. The undersigned plaintiffs' counsel are in possession of copies of a number of such **additional** decisions, which also reject the automakers' assertions of "related-to-Federal-Mogul-bankruptcy" federal jurisdiction. Counsel shall present copies of these additional unpublished inaccessible on LEXIS and Westlaw opinions to the Panel, if the Panel should so desire.

Therefore, given the above-described bleak and charred federal decisional landscape within which the automakers' defective "related-to-Federal-Mogul-bankruptcy" assertion of federal jurisdiction finds itself, it is respectfully submitted that transfer by the Panel of these North Dakota cases would be particularly unwarranted and indeed improper. As such, it is respectfully submitted that the Panel should vacate CTO-210 as applicable to the above-referenced North Dakota cases.

     **C.**    **Under the attendant circumstances, transfer of the above-captioned North Dakota cases to the Eastern District of**

---

*remanding cases to state court).*

**Pennsylvania within MDL-875 would constitute an injustice of consitutional proportions, that such transfer would be violative of the plaintiffs' state and federal constitutional rights to jury trials in their asbestos-related injury actions.**

Finally and alternatively, it is respectfully submitted that these cases should not be transferred to the Eastern District of Pennsylvania, specifically because the manner in which MDL-875 has been administered would actually constitute an outright denial to the plaintiffs of their rights to jury trials.

Both the North Dakota Constitution, and the Seventh Amendment to the United States Constitution, guarantee each of the above-captioned plaintiffs their rights to trials by juries.[14] The plaintiffs' jury trial rights, as guaranteed by the North Dakota Constitution, are arguably broader, and more far reaching, than are the plaintiffs' correspondent jury trial rights under the Seventh Amendment. Indeed, Article I, §13, of the North Dakota Constitution expressly provides that this jury trial right shall be *inviolate*.[15] For its part, the United States Supreme Court has held that there can be no justification for denial to a litigant of his or her constitutional right to a jury trial in a civil action[16].

Of course, there is no realistic possibility that any of the above-captioned plaintiffs will *ever* be permitted to try their cases to a jury, should their cases in fact be transferred

---

[14] North Dakota Constitution, Art. I, Section 13; U.S. Const. Amend. VII. See, also, North Dakota Constitution, Article I, Section 4, the "open courts" provision.

[15] North Dakota Constitution, Art. I, Section 13.

[16] *Curtis v. Raytheon Mfg. Co. v. Radio Corp. of America,* C.C.A.1 (Mass.) 76 F.2d 943 (1st Cir. 1935), certiorari granted 56 S.Ct. 99, 296 U.S. 557, 80 L.Ed. 393, affirmed 56 S.Ct. 297, 296 U.S. 459, 80 L.Ed.327 (1935)(Neither Congress nor courts may deprive litigant of right to jury trial guaranteed by this amendment). See, also, *Berning v. Louisville & N.R. Co.,* 92 F.2d 997 (6th Cir. 1938).

15

to the Eastern District of Pennsylvania in MDL-875. Firstly, extreme delays of trial dates–delays of years and years–have occurred, as a matter of course, in MDL-875. **Even more stark and alarming is the statistic that, although more than 82,000 cases have been transferred to MDL-875 since August of 1991, fewer than six cases were remanded by Judge Weiner during both years 1998 and 1999**[17].

It is respectfully submitted that these extreme delays in case adjudication, now inherent in any transfer into MDL-875, are so egregious, now stretching out for more than a decade at this point, that they actually constitute a ***denial*** of the plaintiffs' right to trial by jury guaranteed by both the North Dakota Constitution, Art. 1, Section 13, and by the Seventh Amendment to the United States Constitution. In consequence, it is respectfully submitted that the Panel must decline to exercise jurisdiction so as to transfer the above-captioned cases to MDL-875 in the Eastern District of Pennsylvania, because such a transfer will certainly abrogate the plaintiffs' state and federal constitutional rights to jury trials.

### III.   CONCLUSION

On the basis of all of the foregoing factual presentation, argument and authority, and pursuant to Panel Rule 7.4(d), the plaintiffs in the above-captioned cases hereby respectfully request that Conditional Transfer Order-210 be vacated, that transfer of these cases to the United States District Court for the District of Pennsylvania be thus denied, and that these cases remain in the United States District Court for District of North Dakota,

---

[17] These statistics were provided to counsel for plaintiffs by staff at the Judicial Panel on Multidistrict Litigation, and it is respectfully submitted that the Panel may take judicial notice of these statistics memorialized in the Panel's own records.

until plaintiffs' subject matter jurisdiction remand motions have been ruled upon by Chief
Judge Webb in that latter district court.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR - 8 2002

FILED
CLERK'S OFFICE

Dated the 7th day of March, 2002.

**DAVID THOMPSON, P.C.**
David C. Thompson
321 Kittson Avenue
P.O. Box 5235
Grand Forks, ND 58206-5235
701-775-7012
701-775-2520 (Facsimile)

**BOECHLER, P.C.**
Jeanette T. Boechler
1120 28th Avenue North, Suite A
P.O. Box 1932
Fargo, ND 58107-1932
701-237-3071
701-237-9035 (Facsimile)

### *COUNSEL FOR PLAINTIFFS*

### CERTIFICATE OF SERVICE

    I hereby certify that on March 7, 2002, a true and correct copy of the foregoing
Motion to Vacate the Conditional Transfer Order was mailed, postage pre-paid, to each of
the attorneys listed on the attached Panel Service List of the Judicial Panel on Multidistrict
Litigation (excerpted from CTO-210), as such list was conveyed to counsel under cover of
correspondence dated February 21, 2002, by Michael J. Beck, Clerk of the Panel.

David C. Thompson

17

# APPENDIX "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

FILED

MAR 4 2002

EDWARD J. KLECKER, CLERK
U.S. DISTRICT COURT-NORTH DAKOTA

Arne W. Christianson,                )
                                     )
               Plaintiff,            )
                                     )
        vs.                          )        A2-01-141
                                     )
AcandS, Inc., et. al.,               )
                                     )
               Defendants.           )

### ORDER

On February 22, 2002, the Court transferred to itself and consolidated a large number of asbestos cases removed to the District of North Dakota by the so-called "Big Three" automakers.[1] Each removal was accompanied by a motion to transfer based on a bankruptcy pending in the District of Delaware. In each case, plaintiffs have moved for remand on the basis of subject matter jurisdiction.

The Court had deferred its ruling on these issues pending a ruling by the district judge sitting by designation in Delaware and presiding over the bankruptcy, reasoning that a determination that the cases were not related to the bankruptcy would obviate the need to address any other issues. That judge has entered an order determining that the cases are not "related to" the bankruptcy and so are to be remanded. However, the Big Three have

---

[1] This Order is to be filed pursuant to the Court's earlier Management Order.

1

now sought review of this ruling in the Third Circuit Court of Appeals, and that court has issued a stay of the remand order.

The Court recognizes plaintiffs' argument that the federal courts generally lack jurisdiction over them. According to their argument, it does not matter which division of the federal courts purports to rule on their cases, as their cases were not and cannot be properly removed to federal court at all. The Court does not rule on this argument at this point. Rather, in the interests of comity, the Court will **STAY** its ruling pending the Third Circuit Court of Appeals' determination. If that court determines that there is no jurisdiction based on the Federal Mogul bankruptcy, these issues will be mooted and the Court will consider entering the appropriate remand order. If that court determines that there is, in fact, "related to" jurisdiction, this Court will address the merits of plaintiffs' arguments if necessary.

Therefore, the parties are **ORDERED** to advise the Court of progress in the Third Circuit. When that decision is reached, the Court will invite responses from the parties, if needed, and will take such action as is then necessary.

**IT IS SO ORDERED.**

Dated this 4th day of March, 2002.

**NOTICE OF ENTRY**
Take notice that the original of this copy was entered in the office of the clerk of the United States District Court for the District of North Dakota on the ___4TH___ day of ___MARCH___ 20 02
EDWARD J. KLECKER, CLERK
By: _____
                    Deputy

RODNEY S. WEBB, CHIEF JUDGE
UNITED STATES DISTRICT COURT

2

# APPENDIX "B"

**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: FEDERAL-MOGUL | : | Chapter 11 |
| GLOBAL, INC., T&N | : | Case Nos. 01-10578, et al.[1] |
| LIMITED, et al., | : | |
| | : | |
| Debtors. | : | **O P I N I O N** |

------------------------

APPEARANCES:

ALAN B. RICH, ESQ.
BARON & BUDD
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219-4281
(Attorneys for Ad Hoc Committee
 of Friction Products Plaintiffs)

CHARLES S. SIEGEL, ESQ.
WATERS & KRAUS
3219 McKinney Avenue, Suite 3000
Dallas, TX 75204
(Attorneys for "Waters & Kraus"
 Friction Products Plaintiffs)

ELIHU INSELBUCH, ESQ.
CAPLIN & DRYSDALE
399 Park Avenue
New York, NY 10022
(Attorneys for Official Asbestos
 Claimants Committee)

DAVID M. BERNICK, ESQ.
KIRKLAND & ELLIS
200 E. Randolph Drive
Chicago, IL 60601
(Attorneys for "Big Three"
 Auto Makers)

THOMAS F. CAMPION, JR., ESQ.

---

[1]See attached list.

DRINKER, BIDDLE & SHANLEY
500 Campus Drive
Florham Park, NJ 07932
(Attorneys for Honeywell Int'l, Inc.)

ROBERT M. MILLNER, ESQ.
SONNENSCHEIN, NATH & ROSENTHAL
1221 Avenue of the Americas
New York, NY 10020
(Attorneys for Official Unsecured
 Creditors Committee)

DAVID E. WILKS, ESQ.
WHITE & WILLIAMS
824 North Market Street, Box 709
Wilmington, DE 19899-0709
(Attorneys for International Auto
 Makers)

**WOLIN, District Judge**

This matter is opened before the Court upon motions pursuant
to 28 U.S.C. § 157 to transfer to this Court certain personal
injury claims against the movants pending in various United
States District Courts based on allegations of exposure to
asbestos in products designed to resist heat caused by friction
(the "Friction Products Claims").  The movants are
DaimlerChrysler Corporation ("Chrysler"), Ford Motor Company
("Ford")and General Motors (collectively with the previously
listed parties the "Big Three"), Honeywell International, Inc.
("Honeywell") and Volkswagen of America, Inc., Volkswagen AG,
Mercedes-Benz USA, LLC, BMW North America, Inc., Volvo Cars North
America, Inc., Rolls Royce Bentley Motor Cars, Inc. and Nissan
North America, Inc. (the "International Auto Makers" and
collectively with the other movants the "Friction Product

3

Defendants"). The Court has reviewed the submissions and heard the argument of counsel on February 8, 2002. The Court ruled from the bench at that hearing that the transfer motions would be denied, that the Court lacked subject matter jurisdiction over the Friction Products Claims and that the Friction Product Claims would be remanded to the state courts from which they were originally removed. At the hearing the Court stated that it would supplement the record with a written Opinion on the motions. This is that Opinion.

## BACKGROUND

Movant Friction Product Defendants were until recently parties in state court proceedings in most if not all of the states of the Union defending against allegations of personal injury tort and wrongful death. The claims allege that plaintiffs' injuries were caused by asbestos contained in the defendants' products, brake pads and other applications involving friction. The debtors, Federal-Mogul Global, Inc. and several of its subsidiaries, were co-defendants in many, but not all, of these suits when their chapter 11 petitions were filed on October 1, 2001.

As to the debtors, of course, the bankruptcy filing automatically stayed any state court proceedings. The Court is informed that, after that filing, plaintiffs around the country

4

immediately began severing claims against the debtors or dismissing their claims against them altogether to permit their cases against the solvent parties to go forward.  This aim was thwarted, however, by a massive campaign by the movants of removing claims against them to the local United States District Courts on the theory that these claims were related to the above-captioned bankruptcy proceeding and thus within the bankruptcy jurisdiction of the federal courts.  An illustrative though incidental fact demonstrating the procedural stakes at issue here is that case load statistics for each of the various districts immediately ballooned.  Judge Pauley in the Southern District of New York received 1,500 new cases, and the larger and more asbestos-litigation intensive jurisdictions doubtless numbered new filings in the thousands.

Naturally plaintiffs did not remain supine through these events, but immediately fired off a corresponding number of motions to remand.  Understandably, district judges around the country moved these motions to the tops of their calendars.  The movants riposted on November 20, 2001, with a motion in the Delaware District Court wherein the bankruptcy was pending to transfer, wholesale, all of the removed claims in all of the different district courts to the District of Delaware.  This motion was pending when, on November 27, 2001, this Court received the transfer of the above-captioned case and four other

5

very large asbestos-related chapter 11 cases on November 27, 2001.[2]

The Court was thus confronted with the issues posed by these motions in its earliest days of supervising these bankruptcies. It was represented that various courts were in the process of ruling on the remand motions.  Slip opinions forwarded to the Court's attention demonstrated that piecemeal remand and inconsistent retention of the Friction Product Claims was becoming a reality with each passing day.  Meanwhile, plaintiffs' counsel clamored that many of their clients were in extremis and not likely to live to see their day in court should the threshold jurisdictional decision be delayed.  In fact, given that each adjudicative inconsistency and hardship was multiplied by the tremendous numbers of removed cases, confusion threatened to rule the day.

The movants prayed for relief in two parts.  First, they sought an immediate and ex parte provisional transfer of the Friction Product Claims in order to protect them from piecemeal

---

[2]    The Court has over-simplified the chronology of events in the interest of narrative coherence.  In fact, only the Big Three had progressed through removal to a motion to transfer by the time this Court assumed jurisdiction of the Federal-Mogul bankruptcy.  Honeywell and the International Auto Makers followed the lead of the Big Three and began the process of removal and transfer later.  Moreover, as subsequent events proved, the initial removal program was not completed all at once, and removal of new cases by each of the movants was ongoing through December.

remand orders.  Second, the movants proposed that the Court establish a method by which the large number of parties-at-interest might have their positions heard and that the Court then render a plenary decision on whether the Friction Product Claims would be transferred to this Court.  This Court agreed, withdrew the reference to the Bankruptcy Court for the purposes of these motions, and charged the plaintiffs' bar to arrange among themselves who would brief and argue their opposition to the motions.  The Court put the parties on notice that, in addition to the narrow issue of transfer pursuant to 28 U.S.C. § 157, the Court would also examine its subject matter jurisdiction and whether abstention or remand might be appropriate.

Events have not stood still despite the Court's best efforts to expedite disposition of the motions.  As noted, some cases had already been remanded before the Court's Provisional Transfer Order could issue.  Since that date, at least one District Court has refused to be bound by the Court's Provisional Transfer Order and made its own ruling that subject matter jurisdiction was lacking in the case before it.  Another federal court reached the same result by interpreting the Provisional Transfer Order to apply only to Friction Product Claims removed before the date of the Order.  Finally, the Fifth Circuit Court of Appeals recently denied an application for a stay of remand to the Texas state courts of thirty-seven lawsuits against another Federal-Mogul

7

subsidiary, Garlock, Inc.  The Fifth Circuit denied the

application for a stay, finding no likelihood of success in the

proposition that Friction Product Claims against Garlock were

related to the Federal-Mogul bankruptcy.  Arnold v. Garlock,

Inc., 2001 WL 1669714 at *11 (5th Cir., Dec. 28, 2001).

Meanwhile, additional provisional transfer and transfer

motions have been filed by other Friction Product Claims

defendants.  Rather than delay the briefing of the already

pending motions, the Court granted provisional transfer as to

some of these, adjourning without date their briefing.  Other

motions remain pending.  The Court heard oral argument on the

plenary motions to transfer on February 8, 2002.  This Opinion

constitutes the Court's plenary ruling on the motions to transfer

the Friction Product Claims to this Court.

## DISCUSSION

### 1.   Subject Matter Jurisdiction

The bankruptcy removal statute is 28 U.S.C. § 1452(a):

> A party may remove any claim or cause of
> action in a civil action other than a
> proceeding before the United States Tax Court
> or a civil action by a governmental unit to
> enforce such governmental unit's police or
> regulatory power, to the district court for
> the district where such civil action is
> pending, if such district court has
> jurisdiction of such claim under section 1334
> of this title.

Section 1334(a) establishes subject matter jurisdiction in the

8

United States District Courts for all cases under Title 11, but extends this power as well to "civil proceedings . . . arising in or related to cases under title 11."   See id. § 1334(b). "Related to" is a term of art, and jurisdiction under the "related to" clause has been defined by the United States Supreme Court to include litigation of claims owned by the debtor's estate and, relevant here, litigation between third parties that has an effect on the estate.   Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.5 (1995).

The leading case in this area is our own Third Circuit's Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984).  Pacor addressed whether an asbestos-related personal injury lawsuit against a non-debtor was related to the Johns-Manville chapter 11 proceeding on the ground that the non-debtor defendant had asserted a third-party claim of indemnification against Johns-Manville as the original manufacturer of the asbestos.  While acknowledging the wide jurisdiction granted by Congress to federal bankruptcy courts to facilitate the administration of debtors' estates, the Court of Appeals noted that this jurisdiction is "not without limit."  "Related to" jurisdiction still requires "some nexus between the 'related' civil proceeding and the title 11 case," the court explained.  Id. at 994.

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any

9

> effect on the estate being administered in
> bankruptcy. Thus, the proceeding need not
> necessarily be against the debtor or against
> the debtor's property. An action is related
> to bankruptcy if the outcome could alter the
> debtor's rights, liabilities, options, or
> freedom of action (either positively or
> negatively) and which in any way impacts upon
> the handling and administration of the
> bankruptcy estate.
>
> On the other hand, the mere fact that
> there may be common issues of fact between a
> civil proceeding and a controversy involving
> the bankruptcy estate does not bring the
> matter within the scope of section 1471(b)
> [now 1334(b)]. [J]urisdiction over
> nonbankruptcy controversies with third
> parties who are otherwise strangers to the
> civil proceeding and to the parent bankruptcy
> does not exist.

Id. at 994 (citations and internal quotation omitted)(emphasis
and second alteration in original).

But a valid statement of principle does not necessarily
produce a usable rule, and whether a controversy "could have any
effect on the estate" will not always be self-evident. In Pacor,
a bare claim of common-law indemnity was not enough. The Court
of Appeals found "at best it is a mere precursor to the potential
third party claim for indemnification by Pacor against Manville"
in which the debtor would be free to relitigate any issue
necessary to the prior judgment. Id. at 995. On these facts,
the Pacor court found that the "the bankruptcy estate could not
be affected in any way until the Pacor-Manville third party
action is actually brought and tried." Id.

10

The narrow holding of <u>Pacor</u> was that a mere common-law indemnity claim by a non-debtor co-defendant of a debtor will not "alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)" in a way that "impacts upon the handling and administration of the bankruptcy estate." <u>Id.</u> at 994.  That common facts would be litigated against the co-defendant did not matter, because no resolution of a factual issue would be binding on the debtor's estate.[3]  The potential for a judgment against the debtor posed by the existence of a suit against the non-debtor was not only contingent (the non-debtor defendant might prevail) but it was indirect – any material effect on the estate would require yet another lawsuit. <u>Id.</u> at 995.

The United States Supreme Court's holding in <u>Celotex Corp. v. Edwards</u> is consistent with a narrow reading of <u>Pacor</u>, notwithstanding the contrary result on the jurisdictional issue. 514 U.S. 300 (1995).  There asbestos claimants sought to execute on a <u>supersedeas</u> bond following an unsuccessful appeal by their judgment debtor.  The bond was secured by cash owed to the debtor

---

[3]     Actually, under New Jersey law and presumably other jurisdictions, a putative indemnitor will be bound by the underlying judgment provided the indemnitor was given an opportunity to be heard and defend.  Implicit in <u>Pacor</u>'s rationale is that a debtor may not be prejudiced by its failure to defend a lawsuit against a third-party common-law indemnitee without <u>de facto</u> depriving the debtor of the benefit of the automatic stay of litigation against it.

11

by the surety.  Similarly, in <u>A.H. Robins Co.</u>, the Fourth Circuit found that the bankruptcy court properly stayed litigation between products liability plaintiffs and non-debtor co-defendants named as additional insureds under the debtor's insurance policy.  828 F.2d 1023, 1024-26 (4th Cir. 1987), <u>cert. denied</u>, 485 U.S. 969 (1988).  Yet another example is <u>Halper v. Halper</u>, 164 F.3d 830 (3d Cir. 1999), in which related-to jurisdiction was found over a dispute involving a guarantee by a non-debtor insider of the corporate debtor's obligation.

Each of <u>Celotex</u>, <u>A.H. Robins</u> and <u>Halper</u> can be explained at least in part by the recognition that they each involved property or rights belonging to the estate.  In <u>Celotex</u>, it was the debtor's cash collateral, in <u>A.H. Robins</u> insurance proceeds, and in <u>Halper</u> a guarantee available as an alternative source of recovery for a creditor to take the pressure off the estate. This Court understands, of course, that related-to bankruptcy jurisdiction covers "more than simple proceedings involving the property of the debtor or the estate."  <u>Celotex</u>, 514 U.S. at 308. The broader principle is that in each case the potential impact on the debtor's estate would have been direct with no intervening adjudication or joinder of issue necessary for judgment against the non-debtor to affect assets, re-prioritize creditors and thwart the bankruptcy court's administration of the estate.

Other courts, and the movants, have taken the language of

12

Pacor and Celotex to indicate a broader but less choate concept of related-to bankruptcy jurisdiction.  They cite the passage quoted above stating that bankruptcy jurisdiction over a proceeding depends upon "whether the outcome of that proceeding could conceivably have any effect on the estate being administered . . . ."  Pacor, 743 F.2d at 994, quoted in Celotex, 514 U.S. at 308 n.6.  This Court does not perceive that this formulation of the rule is necessarily inconsistent with the cases discussed immediately above – "conceivable" or not, the bottom line is whether resolution of an ostensibly unrelated claim will have an "effect on the estate."

As others have noted before, a broader understanding of "conceivable" as defining bankruptcy jurisdiction produces an unworkable rule and bizarre conclusions regarding Congressional intent in the bankruptcy jurisdiction statute.  "The optimist may argue that anything is 'conceivable,' and practical definition of this term of art must be tempered with reasonableness."  In re Chargit, Inc., 81 B.R. 243, 247 (Bankr. S.D.N.Y. 1987).  Judge Haden of the Southern District of West Virginia quoted the Seventh Circuit to these same litigants:  "'common sense cautions against an open-ended interpretation of the "related to" language "in a universe where everything is related to everything else."'"  In re Asbestos Litig., 271 B.R. 118, 124 (S.D. W. Va. 2001) (quoting Matter of FedPak Sys., Inc., 80 F.3d 207, 214 (7th Cir.

13

1996)(quoting G. Dunne, <u>The Bottomless Pit of Bankruptcy</u>

<u>Jurisdiction</u>, 112 Banking L.J. 957 (Nov-Dec. 1995))).  Approving

<u>Pacor</u>, the Supreme Court warned that "a bankruptcy court's

'related to' jurisdiction cannot be limitless."  <u>Celotex</u>, 514

U.S. at 308.  That pronouncement and the rule of <u>Pacor</u> as

discussed above are doctrinally sound and, more to the point,

binding on this Court.

The movants urge upon this Court the reasoning of the Sixth

Circuit's opinion <u>In re Dow Corning Corp.</u>, 86 F.3d 482 (6th Cir.

1996), <u>cert. denied</u>, 519 U.S. 1071 (1997), which involved

products liability co-defendants of a bankrupt manufacturer of

silicone breast implants.  The co-defendants removed the claims

against them to the <u>Dow Corning</u> bankruptcy court on the theory

that their rights of contribution or indemnification against the

debtor under theories of joint and several liability made the

claim against the non-debtors related to the bankruptcy.

Disagreeing with the lower court, the Sixth Circuit found that

"The potential for Dow Corning's being held liable to the non-

debtors in claims for contribution or indemnification, or vice

versa, suffices to establish a conceivable impact on the estate

in bankruptcy."  <u>Id.</u> at 493.

It may be that <u>Dow Corning</u> is impossible to reconcile with

<u>Pacor</u>, which came to the opposite conclusion on a remarkably

similar set of facts.  There was no claim of contractual

14

indemnification, guarantee or other theory in which a judgment against the solvent co-defendants would bind the Dow Corning estate. In fact, not all of the putative indemnitees had even asserted an express claim of indemnification against the debtor, but relied upon their claim of legal entitlement should they choose to press such a claim. On the other hand, an important distinction between Dow Corning and this case is the large number of non-debtor co-defendants poised to transfer into the Federal-Mogul proceeding, compared with the handful of non-debtor co-defendants involved in the Dow Corning case.

In any event, the Sixth Circuit found that "the claims currently pending against the non-debtors give rise to contingent claims against Dow Corning which unquestionably could ripen into fixed claims." 86 F.3d at 494. This is wrong, however, as Pacor explained. Claims against the non-debtor could not ripen into claims against the debtor, the debtor would have been bound by nothing in the prior suit, and a separate action would be necessary to convert the non-debtors' liability into a claim against the estate.

This Court is unconvinced by the Dow Corning panel's main point of distinction between that case and Pacor. The Sixth Circuit reasoned that Pacor contained only one claim, whereas in Dow Corning many thousands of plaintiffs were suing the non-debtors. This Court regards with misgiving the proposition that

15

mere numbers of claims should prevail over articulable principles when it comes to defining federal subject matter jurisdiction. Moreover, for reasons explored more fully in the section below on abstention and remand, the number of claimants actually weighs against exerting bankruptcy jurisdiction in mass tort cases.

As the multiplicity of transfer motions now pending before this Court demonstrates, entire industries can be related by historical manufacturer/distributor relationships and each of the players may have at least a colorable claim of common-law indemnification against each of the others.  Movants contend that the scope of their motions may be limited by the fact that only cases in which debtors' products are involved will be affected. As all are aware, however, the Friction Products Claims involve plaintiffs whose alleged occupational exposure involves every manufacturer whose products who might potentially have been present at the plaintiff's workplace.  In this far from uncommon situation, there is no principled limit to the theory of <u>Dow Corning</u>.  Could Congress have intended that the bankruptcy of a single player would have automatic, nation-wide impact in which every manufacturer and distributor and all tens of thousands of injured parties are concentrated in a single reorganization proceeding?

If the question did not answer itself, then a straightforward reading of <u>Pacor</u> will reveal the Third Circuit's

16

view on the matter.  The possibility that the loser of an
unrelated dispute might seek to recover its losses from the
debtor does not make the dispute between non-debtors subject to
the jurisdiction of the bankruptcy court.  The Sixth Circuit's
view to the contrary in Dow Corning has been described as a
"remarkable extension of its [already] broad approach to
relatedness."  1 William L. Norton, Jr., Norton Bankr. Law &
Prac. 2d § 4.44.  To the extent that the reasoning of the Sixth
and Third Circuits conflict, this Court must follow that of the
Third.

     An attempt to state the converse of the Pacor rule by
categorically listing what facts will establish related-to
jurisdiction will probably be doomed; the possible scenarios are
too varied to predict.  However, the holdings of the Third
Circuit since Pacor have a common element.  The facts of these
later cases suggest a rule that related-to bankruptcy
jurisdiction will not extend to a dispute between non-debtors
unless that dispute, by itself, creates at least the logical
possibility that the estate will be affected.

     Thus, in In re Marcus Hook Development Park, Inc., 943 F.2d
261 (3d Cir. 1991), inconsistent orders of the bankruptcy court
left post-confirmation purchasers of the debtor's real estate
unclear as to the status of liens on the property.  The Court of
Appeals found related-to jurisdiction, because sorting the

17

problem out would involve the continuing jurisdiction of the
court and because disposition of the merits would affect the
estate itself.  Id. at 265.  CoreStates Bank, N.A. v. Huls Am.,
Inc., 176 F.3d 187 (3d Cir. 1999), concerned an inter-creditor
subordination agreement and a post-petition payment of $600,000
to one creditor alleged to be inconsistent with that agreement.
Related-to jurisdiction existed because, inter alia, the
subordinated debtor relinquished a much larger secured claim in
exchange for the $600,000 payment and thus the resolution of
dispute would have affected the confirmability of the plan.

Movants' reliance on the term "conceivable" in Pacor as
setting the conceptual boundaries of related-to bankruptcy
jurisdiction confuses the issues of whether a third-party dispute
will inevitably or automatically affect the bankruptcy and the
issue of the causal proximity between the foreign dispute and the
resulting effect on the bankruptcy.  In Pacor, regardless of who
won the underlying personal injury claim, nothing in the
bankruptcy would change without the filing and adjudication of a
separate claim for indemnification.  Conversely, in CoreStates,
it was not beyond the boundaries of conceivablility that
resolving the subordination dispute would have a substantial
impact on the management of the bankruptcy, although it was at
least equally conceivable that the creditors could have resolved
it between themselves.  However, had the dispute over the

18

$600,000 payment ripened into litigation, whatever effect it
would have had on the bankruptcy would have been direct and
immediate, requiring no separate legal step to alter the
relationships of the creditors and the financial affairs of the
debtor.

Cases from other circuits follow the pattern.  The A.H.
Robins Co. case is the one most prominently cited by the parties.
788 F.2d 994.  In addition to their status as additional named
insureds under the debtor's liability policy, each of the non-
debtor co-defendants had rights of indemnification against the
debtor, either by operation of state law as officers of the
corporation, under the corporate bylaws, and/or by express
agreement.  Id. at 1007.  The court found that the claims against
the co-defendants were related to the bankruptcy (and that the
injunction was properly granted), not only because the insurance
policy was a key estate asset, but because the rights of
indemnification were absolute and thus a judgment against the co-
defendant indemnitee would effectively bind the debtor.  Id. at
1008.  The debtor's status as the real party at interest,
potentially bound by the result of the non-debtor litigation,
plainly established a sufficient nexus between suits against the
individuals and the administration of the bankrupt's estate.

Other cases have produced the same result where key
employees of the debtor were sued and where there was a right of

19

indemnification.   In Belcufine v. Aloe, 112 F.3d 633 (3d Cir.
1997), officers of the debtor were personally liable to the
debtor's employees for pre-petition retirement and vacation
benefits by operation of Pennsylvania law.   Like the Fourth
Circuit in A.H. Robins, the Third Circuit found related-to
jurisdiction in the bankruptcy court based upon the debtor's
officers' right of indemnification in the debtor's corporate
bylaws.   Cf. McCartney v. Integra Nat'l Bank North, 106 F.3d 506
(3d Cir. 1997)(automatic stay extended to foreclosure action
against non-debtor corporation where bankrupt principal had
guaranteed corporation's obligation).

Thus, to the extent hard rules may be drawn from the cases,
it seems settled that suits against principal or key-personnel
indemnitees of the debtor may be within the bankruptcy court's
related-to jurisdiction.   Of course, in addition to the right of
indemnity, key personnel also present the additional fact that
they will typically have incurred the underlying liability in the
course of acting on the debtor's behalf.   This and the fact that
the indemnity right may be a function of corporate bylaws or
statute suggest that the courts may have viewed litigation
against solvent corporate insiders as more inter-twined with the
debtors' affairs, more certainly binding on the debtor, and
therefore more directly affecting the rights of the debtor.

Where right of indemnification depends solely upon an

20

agreement and lacks the additional element of the non-debtor
being otherwise related to the debtor, the situation arguably
lies closer to the boundary of related-to jurisdiction.  In A.H.
Robins, one of the indemnitees did not enjoy indemnitee status by
virtue of the corporate bylaws, but only under an indemnification
agreement.  There, however, the question of the common insurance
policy created a link decisively favoring bankruptcy
jurisdiction.  Likewise in Halper, even though the genesis of the
argument for extending bankruptcy jurisdiction was the
indemnification agreements, these agreements ran between family
members and insiders of a closely held company.  Thus in Halper
too there existed substantial facts in addition to the agreement
that justified extending related-to jurisdiction over the
dispute.

The Pacor panel's discussion of In re Brentano's, 27 B.R. 90
(Bankr. S.D.N.Y. 1983), has been read to support the view that a
contractual indemnity rights against the debtor will bring a suit
against the indemnitee within the bankruptcy court's
jurisdiction.  743 F.2d at 995.  In Brentano's, a non-debtor
guaranteed the debtor's obligations to its landlord and the
guarantor received in return from the debtor its promise to
indemnify for any liability incurred on the guarantee.
Distinguishing that situation from the common-law indemnity
claims raised in Pacor, the Court of Appeals offered two points

21

of comparison: (1) that a judgment in favor of the landlord against the non-debtor guarantor would trigger the debtor's liability on the indemnity agreement, and (2) the landlord's claim against a guarantor of the estate would necessarily affect the landlord's status with respect to other creditors.

     Pacor's discussion of Brentano was technically dictum, because in the end the Third Circuit found no related-to bankruptcy jurisdiction.  However, appellate courts applying Pacor have recognized that "the clear implication of the decision is that, if there had been a contract to indemnify, a contrary result would have been in order."  A.H. Robins, 788 F.2d at 1001. The clarity of that implication notwithstanding, cases since Pacor have failed to endorse the proposition that any contract of indemnification will support an extension of related-to jurisdiction.  As will be discussed, this failure has its own implications too, relevant to the motions at bar.

     As to the vast majority of the claims that are the subject of the Court's provisional transfer orders, the movants have produced no evidence whatsoever of even a bare agreement to indemnify running between the debtors and the solvent co-defendants.  Of the Big Three, Ford Motor Company and General Motors rely only on affidavits of employees that recall one or more of the debtors as a supplier of brake parts to them. Likewise, the International Automakers proffer an employee

22

affidavit that stops well short of even suggesting that there was any promise to indemnify.  Nor does Honeywell make a showing that an explicit agreement to indemnify existed.

The Court sees no justification to take the situation of these movants outside of the rule of Pacor.  A judgment against them will not bind the debtors.  No asset of the estate is threatened nor is any re-ordering of creditors in the offing.  It is true that recovery by asbestos claimants against the movants may give rise to claims, indeed very substantial claims, against the debtors in the future.  It is at that time, when the movants appear as creditors of the estate and the facts underlying the liability are adjudicated in the context of the bankruptcy, that the Friction Products Claims will affect the estate.

The Court perceives no distinction that would require a different result based upon the movants' contribution claim as opposed to the indemnification claim.  In this context, the right of contribution is sufficiently analogous to the right of indemnification that it will not affect the estate in the manner contemplated by Pacor.  The movants have presented no argument to the contrary.  The Central District of Illinois rejected the suggestion that indemnification and contribution claims should be treated differently for the purposes of related-to jurisdiction in Nickum v. Brakegate, Ltd., 128 B.R. 648, 651 (C.D. Ill. 1991).

The claims against the movant Chrysler present a closer

23

question.  Chrysler submits purchase orders that appear to
incorporate by reference several substantial documents setting
forth standard terms and conditions to which those purchase
orders were subject.  These documents are all dated from the
1970's and are supported by the affidavit of a retired Chrysler
purchasing and procurement employee.  The terms and conditions
manuals state at relevant part:

> Seller shall defend, indemnify and protect
> Purchaser against all claims, liabilities,
> losses and damages due to injury to or death
> of any person and damage to-or loss of any
> property arising out of improper performance
> or negligent work under this order or arising
> out of allegedly defective material or
> workmanship in the goods or services provided
> by this order . . . .

Of this clause, Judge Haden wrote:

> Considering Chrysler drafted the terms, which
> are extremely wide-ranging and generous to
> the drafter, which were not bargained for and
> are not present on the form presented to the
> suppliers (nor is any reference to them
> present on the form presented to Abex), the
> question whether this purported indemnity
> agreement would be determined to bind the
> suppliers is open and one not easily
> resolved.  The Court is unwilling again to
> rest subject matter jurisdiction on this
> tenuous support.

In re Asbestos, 271 B.R. at 124.

     This Court is in accord.  To the extent that the validity of
an indemnity agreement is in doubt, the directness between the
third-party action and a judicial ruling that will affect the
estate is attenuated.  Moreover, as the jurisprudence shows,

24

cases in which related-to jurisdiction is founded solely on an indemnification agreement between otherwise unrelated parties are not the rule but the exception.

Even in the Brentano's case, the indemnitee was the largest unsecured creditor of the debtor. The indemnitee was also liable for eleven other guarantees it had made of the debtor's other lease obligations. 27 B.R. at 91. While the opinion is not explicit, plainly the guarantor/indemnitee was no stranger to the debtor. As noted, the Third Circuit's discussion of Brentano's was not necessary to its holding in Pacor. Even on its face, however, the Third Circuit's approval of Brentano's leaves open whether the Third Circuit would base a substantial extension of related-to jurisdiction on an indemnification clause such as the one relied upon by Chrysler.

Citing Brentano's only as a contrasting example, the Pacor panel did not disclose that the Southern District of New York had remanded the matter to the bankruptcy judge for further consideration of the jurisdictional issue. In re Brentano's, Inc., 36 B.R. 90 (S.D.N.Y. 1984). The District Court opined that exercising jurisdiction would merely substitute the landlord's claim for what otherwise would be the indemnitee's claim against the estate. In light of the fact that claims against the non-debtor guarantor had settled claims on the other eleven guarantees since the bankruptcy court had ruled, the Southern

25

District found it "especially apparent that a stay of the [remaining state litigation] . . . is not necessary to an efficient and effective disposition of the bankruptcy proceedings relating to Brentano's estate."  Id. at 92.

Of course Brentano's can be read as Pacor did, to hold that an indemnification agreement may create bankruptcy jurisdiction over the underlying liability, with the possible proviso that the indemnitee be important to resolving the bankruptcy.  On the other hand, that case may also be read to suggest that an indemnity agreement alone will not suffice.  This is particularly true where other parties are similarly situated and their indemnity claims against the non-debtor will ultimately be presented as unsecured claims by them against the estate.

Here Ford, General Motors, Honeywell and the International Automakers all derive their claims against the estate from the same products as Chrysler.  For the reasons stated, there is no jurisdiction in this Court over these claims.  Instead, all of these claims by movants other than Chrysler clearly must be raised against the debtor, if at all, as unsecured claims following the resolution of the underlying personal injury suits against them.  Chrysler's claim that it alone is sufficiently central to the bankruptcy is severely diluted as a result, notwithstanding the indemnification language in its purchasing materials.

26

More fundamentally, the Court does not believe that a manufacturer may write its own invitation to the table of any of its suppliers' bankruptcies by including a boilerplate indemnification clause in its purchase orders.  The routine nature of this kind of arrangement and lack of other connections between the parties makes this too thin a thread with which to pull Chrysler into the Federal-Mogul bankruptcy.  Indeed, as more than one court has observed, movants' failure to actively pursue their alleged rights of indemnity against the debtors in the past undermines their claim now that these indemnity arrangements should be considered an important component of the administration of the bankruptcy.  See Garlock, 2001 WL 1669714 at *11; In re Asbestos, 271 B.R. at 124 n.8.  Without attempting to state a blanket rule, in this case Chrysler's purchase order indemnification clause does not adequately distinguish its indemnification claim from that of all of the debtors' other customers with indemnification claims such that the claims against Chrysler are uniquely subject to the jurisdiction of this Court.

## 2.  Abstention and Equitable Remand

As set forth in the preceding section, the Court finds that it lacks subject matter jurisdiction over the Friction Products Claims.  This, of course, would stand as an adequate ground to

27

deny the transfer motion and to remand them to the state courts
from which they were removed.  However, the Court has
acknowledged that subject matter jurisdiction is at least a
closer question with respect to Chrysler.  To remove any doubt,
therefore, and for the sake of a complete record, the Court also
finds as an alternative, independent ground that it would
exercise its discretion to abstain from hearing the Friction
Product Claims pursuant to 28 U.S.C. § 1334(c)(1) and remand them
pursuant to 28 U.S.C. § 1452.

The Court pauses to address respondents' argument that
abstention is mandatory under 28 U.S.C. § 1334(c)(2).  This
statute requires that the Court abstain where certain factors are
present, including that the matter is considered "non-core."  By
definition, matters that are merely related to the bankruptcy
proceeding are non-core proceedings.  Movants counter that
personal injury claims are not subject to mandatory abstention by
operation of 28 U.S.C. § 157(b)(4), which carves out from the
mandatory abstention statute those proceedings made non-core by
operation of 28 U.S.C. § 157(b)(2)(B).

Proceedings defined as non-core by section 157(b)(2)(B) are
claims involving "the liquidation or estimation of contingent or
unliquidated personal injury tort or wrongful death claims
against the estate for purposes of distribution in a case under
title 11."  Respondents reply that the Friction Products Claims

28

are not "claims against the estate," therefore not covered by section 157(b)(2)(B), and therefore not exempted from mandatory abstention by section 157(b)(4).

Movants respond that the Friction Products Claims are, in effect, claims against the bankrupts' estates because really it is "[d]ebtors' products that are on trial."  Brief of Unsecured Creditors' Committee at 31.  Of course, movants' entire position is premised on the idea that the debtors stand in their shoes by virtue of the movants' right of indemnity for their asbestos products liability.  Thus, movants' attempt to avoid mandatory abstention must rise and fall on the same argument as their claim of related-to jurisdiction.

Of course, the Court has already rejected the proposition that the Friction Products Claims are related to the bankruptcy proceeding, on the grounds that there is an insufficient link between these claims against non-debtors and the debtors' estates.  Even had the Court not already rejected the related-to jurisdictional argument, the argument against mandatory abstention under section 157 would be far from clear. Notwithstanding the undeniable overlap between the issues, it is a far step from finding that a claim against a non-debtor is related to a bankruptcy proceeding to finding that a claim against a non-debtor is actually a claim directly against the estate for the purposes of section 157(b)(2)(B).

29

The Court need not resolve this finer point of statutory interpretation, however.  The Court will abstain in any event under the permissive abstention provision of 28 U.S.C. § 1334(c)(1) and remand the Friction Product Claims for equitable reasons under 28 U.S.C. § 1452(b).  Indeed, the facts of this case leave no reasonable conclusion other than that the Court should exercise its discretion to abstain and to remand.  Fairness, comity and preserving the integrity of this Court's management of the bankruptcy compel this result.

The statute lists as grounds for discretionary abstention the interest of justice, comity with the state courts and respect for state law.  28 U.S.C. § 1334(c)(1).  The courts have developed a list of factors to be considered when deciding to abstain under section 1334(c)(1) and these are identical to those relevant to equitable remand.  See Balcor/Morristown Ltd. P'ship v. Vector Whippany Assocs., 181 B.R. 781, 788 (D.N.J. 1995); In re Joshua Slocum, Ltd., 109 B.R. 101, 105 (E.D. Pa. 1989).  While the list varies in the opinions, it generally includes:

> (1) the effect on the efficient administration of the bankruptcy estate;
>
> (2) the extent to which issues of state law predominate;
>
> (3) the difficulty or unsettled nature of the applicable state law;
>
> (4) whether there is an established state court proceeding on the same issues;
>
> (5) the degree of relatedness or remoteness of the

proceeding to the main bankruptcy case;

(6) the existence of the right to a jury trial; and

(7) the likelihood that the bankruptcy proceeding represents forum-shopping by the petitioner.

In re Donington, Karcher, Salmond, Ronan & Rainone, P.A., 194 B.R. 750, 759-60 (D.N.J. 1996); Balcor, 181 B.R. at 793; In re Foster, 105 B.R. 746, 749-50 (Bankr. M.D. Ga. 1989) (listing a total of 12 factors).

It requires scant discussion to perceive that most if not all of these factors weigh very heavily in favor of abstention and remand.  Previously stated, there is no principled end to the movants' argument that would prevent centralizing virtually all Friction Product asbestos litigation, nationwide, in this bankruptcy.  Indeed, already large numbers of other manufacturers and other users of Friction Products have followed the movants' lead, removed claims pending against them in state courts, and filed motions to transfer them here.  This Court is convinced that transfer of the movants' claims would be a disaster for the orderly management of this chapter 11 proceeding.

Moreover, looking pragmatically at the situation before it, the Court must recognize that there is no way that the benefit to the administration of the estate from unifying all of the Friction Products Claims in this chapter 11 case can ever be fully realized.  First, while many Friction Products defendants have moved to transfer the claims against them to this Court,

31

many have not.  Thus, the problem of indemnification claims being raised against the estate will always be a factor and, in all likelihood, a major factor in the reorganization.

Second, as movants themselves have complained, a number of courts around the country were either not bound by this Court's provisional transfer order as a function of timing, or failed to respect this Court's Order.  Many of these cases have already been remanded to state court, further undermining the benefit to be gained from continuing to entertain those Friction Products Claims still subject to the Court's Provisional Order.  Finally, in Texas and perhaps elsewhere, Friction Products Claimants have dismissed the debtor from their state actions, with prejudice. This, the Fifth Circuit holds, cuts off any right of indemnification against the debtor under Texas law.  Garlock, 2001 WL 1669714.

Thus the reality of timing and the actions of other courts have made illusory much of the gain in efficiency and consistency of adjudication postulated by movants as grounds for the relief they seek.  Whatever is decided in this Court, the movants will be forced to litigate claims based upon Federal-Mogul friction products in diverse jurisdictions.  The estate will still encounter indemnification claims from former co-defendants against whom state-court judgments have been rendered.  To the extent this result comes to pass, efficiency will be lost, not

32

gained, by entertaining the Friction Products Claims in this Court, and the risk of inconsistent rulings exacerbated.

The Court acknowledges that movants postulate a plausible method for dealing with common issues of causation by means of common-issue summary judgment and trials under Federal Rule of Civil Procedure 42. But, setting aside for the moment whether this method adequately protects the constitutional and procedural rights of the personal injury claimants, whether it would succeed in streamlining the adjudication of claims is hotly and legitimately debated. Movants could well fail to establish a lack of genuine dispute over medical causation with respect to Friction Products. Depending on what the scientific evidence shows, it may well appear that causation issues are not sufficiently common between litigants to permit Rule 42 trials.

These issues must be either confronted or successfully negotiated with respect to the claims directly against the debtors. Any allure in movants' scheme depends on their ability successfully to avoid these pitfalls with respect to the transferred Friction Products Claims. This success is, to say the least, not assured. Yet, should movants fail to keep the proceedings to their script, all that the transfer would have accomplished would be an exponential increase in the already challenging task before the Court and the parties. If one adds to the mix all of the other would-be Friction Products

33

transferees awaiting the outcome of this motion, the loom of
chaos is palpable.

Nor is the transfer of Friction Products Claims cost-free,
even assuming movants are successful in litigating common issues
of causation and science.  Because these cases have been removed,
by definition a state court proceeding had previously been
commenced.  Many are well advanced.  While sorting out the
commercial interests of creditors and the reorganization of these
corporate debtors, the Court will not forget that each of the
tens of thousands of claims before it involves an individual with
a personal injury claim.  Respondents have argued convincingly
that a appreciable number of these persons are presently very
sick and some are terminally ill.  While this Court intends to
proceed with dispatch, it would be vain to conclude that claims
will be resolved much more quickly here than in already-filed
state court actions.

To give movants the benefit of proceeding under the
bankruptcy code at the expense of these litigants would clearly
pose hardship in individual cases.  Some will expire who
otherwise would have seen their cases tried.  In some
jurisdictions, rights will die with these disappointed litigants.
As to all, solvent defendants will be missing from the ongoing
state proceedings and the plaintiff's choice of forum will be
lost as to them.  Where, as here, the resulting benefit is so

34

equivocal, the balance must tilt sharply toward abstention and remand.

Others of the factors are quickly analyzed.  State law obviously predominates.  The "degree of relatedness or remoteness" of the state proceeding has already been discussed in the preceding section of this Opinion.  It suffices to say that, even if related-to jurisdiction existed over the Friction Product Claims, the degree of remoteness between them and the main bankruptcy case is substantial.  Obviously, Friction Products claimants have a right to a jury trial of triable issues of fact.

Finally, the possibility that the movants are forum shopping is too obvious to be belabored.  Some jurisdictions have been notoriously unfavorable to asbestos defendants.  Movants understandably believe that they would gain an advantage if the claims against them were centralized in a federal court and they could gain the benefit of a channeling injunction under 11 U.S.C. § 524.  The Court expresses no disapproval of these desires. Indeed, movants argue that, were they to bear fruit, the estate might also be the beneficiary.[4]  These benefits of a change in forum do not, however, justify the affront to state and federal

---

[4]     The Court will not repeat the several obstacles that lie between these aspirations and reality.  Assuming that centralizing of claims and extending the benefits of section 524 is legally possible, whether it may be accomplished for a sufficient percentage of the pending Friction Product Claims to constitute a real benefit to the estate is highly problematic from a practical standpoint.

35

comity inherent in the removal of solvent defendants from ongoing
state lawsuits into a federal bankruptcy.

One party has argued that equitable remand is impermissible
without a case-by-case inquiry into the facts of each case.
While the Court has no quarrel with this as a general
proposition, the parties well know that such an inquiry would be
prohibitively time-consuming here. Yet it is patently unfair for
the movants to remove claims against them en masse and then claim
that a patently impossible case-by-case procedure is mandatory
before the claims may be remanded for equitable reasons. As the
Friction Products Claims have been explained to the Court by
counsel, they contain sufficient common features that will permit
the application of the equitable factors discussed here to be
applied to each of them. It lessens the vitality of their own
premise for movants to argue otherwise.

Thus the interests of justice and comity weigh heavily in
favor of abstention and remand of the Friction Products Claims.
Respect for state law is perhaps less implicated here, because a
bankruptcy court must apply state law to claims before it in any
event and the state law questions posed by the Friction Products
Claims will not be especially complex or difficult. Nonetheless,
for the reasons stated, the Court finds that the other factors
weigh so strongly that the Court will use its discretion to
abstain from exercising jurisdiction over the Friction Products

claims and they will be remanded, pursuant to 28 U.S.C. §§ 1334(c)(1) and 1452(b).

Recognizing that it is rare for a District Court in one state to remand a matter to the state courts of another state, (let alone to the courts of all of the different states), and although the parties did not raise this issue, the Court will address this last aspect of its Order.  First, it appears plain to the Court that the question is really just one of inter-jurisdictional bookkeeping.  Either this Court will remand directly to the states, or it will vacate its provisional transfer Order and send the cases back to the several districts from which they came.  If this Court were to choose the latter course, each of the other districts would then be faced with the task of either applying the ruling of this Court and issuing an order of remand, or addressing for themselves whether to remand or abstain.

The logic of the statutory structure suggests that this latter course, with its attendant waste of judicial energy, is unnecessary.  It is common ground that 28 U.S.C. § 157 permits transfer between districts of personal injury claims related to a bankruptcy case.[5]  It is fundamental that this Court has the

---

[5]     Prior to the Court's ruling, respondents may well have wished to argue that this Court lacked power to transfer the claims to itself out of other districts.  Having won the day in this forum, the Court presumes that this wish of respondents has abated.  Of course, movants cannot argue that this Court lacks

37

right, indeed the duty, to inquire into its subject matter
jurisdiction at any time it appears in doubt.  Finally, 28 U.S.C.
§ 1452 grants the Court the discretion to remand, without
specifying to where.  Yet, remand, by definition, must return the
remanded matter to the court from which it was removed.
Petrofsky v. ARA Group, Inc., 878 F. Supp. 85 (S.D. Tex. 1995).

It is also true, however, that section 1452 begins with the
phrase "[t]he court to which such claim or cause of action is
removed" has the power of remand.  Of course, this Court stands
in the shoes of the transferor district for all other purposes;
it is not clear what interest would be served by excepting the
power of remand from the others conferred by the transfer.
Moreover, ex hypothesi, this Court and all federal courts lack
subject matter jurisdiction over the claims at issue.  It would
be nonsensical for this court, lacking subject matter
jurisdiction, to transfer the matter back to the transferor
districts, which also lack subject matter jurisdiction, so that
they may be remanded from the local federal courthouse.  Finally,
limiting the power of remand only to the original district of
removal would create an imbalance between the flexible powers of
transferor and transferee courts and present all too tempting a
motive for potential forum shoppers.

---

the power to do that which they were previously successful in
persuading this Court to do.

The Court has been informed that many state court systems maintain in extremis dockets of Friction Products and other asbestos claims for plaintiffs who may die before trial if their cases are not reached promptly.  It would ill-behoove the federal courts, having decided that both that jurisdiction is lacking and that equitable factors require remand, to delay any further these in extremis litigants by a pointless additional round of re-transfer to the several districts and further proceedings on remand.  This Court is satisfied that its inherent powers, those "necessary to the exercise of all others," In re Prudential Sales Practices Litig. Agent Actions, ___ F.3d ___ , 2002 WL 90847 (3d Cir., Jan. 24, 2002)(quoting Fellheimer, Eichen & Braverman, P. C., v. Charter Technologies, Inc., 57 F.3d 1215, 1224 (3d Cir. 1995))(further quotations omitted), resolve any lingering questions in favor of substance over form and in favor of immediate relief over punctilio.  Therefore, the Court has remanded all of the Friction Products Claims directly to the several state courts from which they were removed.


                              **CONCLUSION**

For the reasons set forth above, the Court finds that it lacks subject matter jurisdiction over the Friction Products Claims pending before it pursuant to the Court's Provisional Transfer Orders.  In the alternative, the Court will exercise its

                                 39

discretion to abstain from exercising jurisdiction over the Friction Products Claims and will remand them to the state courts from which they were removed.  The motion to finally transfer these claims to this Court will be denied.

The Order corresponding to the rulings of this Opinion has already been issued.

Dated: February 15, 2002

_____
ALFRED M. WOLIN, U.S.D.J.

40

## IN RE: FEDERAL-MOGUL GLOBAL, INC.
### Case Numbers

| | | | |
|---|---|---|---|
| 01-10578 | 01-10643 | 01-10700 | 01-10750 |
| 01-10580 | 01-10644 | 01-10701 | 01-10751 |
| 01-10582 | 01-10646 | 01-10702 | 01-10752 |
| 01-10585 | 01-10647 | 01-10703 | 01-10753 |
| 01-10586 | 01-10649 | 01-10704 | 01-10754 |
| 01-10587 | 01-10650 | 01-10705 | 01-10755 |
| 01-10589 | 01-10651 | 01-10706 | 01-10756 |
| 01-10591 | 01-10652 | 01-10707 | 01-10757 |
| 01-10593 | 01-10653 | 01-10708 | 01-10758 |
| 01-10594 | 01-10654 | 01-10710 | 01-10759 |
| 01-10596 | 01-10655 | 01-10711 | 01-10760 |
| 01-10598 | 01-10656 | 01-10712 | 01-10761 |
| 01-10599 | 01-10657 | 01-10713 | 01-10762 |
| 01-10600 | 01-10658 | 01-10714 | 01-10763 |
| 01-10601 | 01-10659 | 01-10715 | 01-10764 |
| 01-10603 | 01-10660 | 01-10716 | 01-10765 |
| 01-10604 | 01-10661 | 01-10717 | 01-10766 |
| 01-10605 | 01-10662 | 01-10718 | 01-10767 |
| 01-10606 | 01-10664 | 01-10719 | 01-10768 |
| 01-10608 | 01-10665 | 01-10721 | 01-10769 |
| 01-10610 | 01-10666 | 01-10722 | 01-10770 |
| 01-10611 | 01-10668 | 01-10723 | 01-10771 |
| 01-10613 | 01-10669 | 01-01724 | 01-10772 |
| 01-10614 | 01-10672 | 01-10726 | 01-10773 |
| 01-10615 | 01-10673 | 01-10727 | 01-10774 |
| 01-10617 | 01-10675 | 01-10728 | |
| 01-10618 | 01-10682 | 01-10729 | |
| 01-10619 | 01-10683 | 01-10730 | |
| 01-10620 | 01-10684 | 01-10731 | |
| 01-10621 | 01-10685 | 01-10732 | |
| 01-10622 | 01-10686 | 01-10733 | |
| 01-10623 | 01-10687 | 01-10734 | |
| 01-10625 | 01-10688 | 01-10736 | |
| 01-10626 | 01-10689 | 01-10737 | |
| 01-10627 | 01-10690 | 01-10739 | |
| 01-10629 | 01-10691 | 01-10741 | |
| 01-10630 | 01-10692 | 01-10742 | |
| 01-10632 | 01-10693 | 01-10743 | |
| 01-10633 | 01-10694 | 01-10744 | |
| 01-10634 | 01-10695 | 01-10745 | |
| 01-10637 | 01-10696 | 01-10746 | |
| 01-10638 | 01-10697 | 01-10747 | |
| 01-10640 | 01-10698 | 01-10748 | |
| 01-10641 | 01-10699 | 01-10749 | |

# APPENDIX "C"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| Myles Drellack, | ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | State Court Civil No. 00-C-560 |
| vs. | ) | |
| | ) | |
| A.H. Bennett Company, a Minnesota | ) | |
| corporation, et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

## JOINT NOTICE OF REMOVAL

DaimlerChrysler Corporation, Ford Motor Company and General Motors Corporation (collectively the "Removing Defendants") file this Joint Notice of Removal pursuant to 28 U.S.C. § 1452(a), and Rule 9027 of the Federal Rules of Bankruptcy Procedure, and in support thereof, state as follows:

1.      Plaintiff has commenced a civil action (the "Action") against the Removing Defendants and certain other Defendants (collectively the "Other Defendants") in the District Court, County of Grand Forks, State of North Dakota, Civil No. 00-C-560. Plaintiff asserts various personal injury claims against the Removing Defendants based on injuries allegedly caused by or arising out of exposure to friction products, including brakes and other automotive products,

1

(to the extent that the bankruptcy court is authorized to hear or determine such claims consistent with 28 U.S.C. § 157(b)(5)).

8.      The Removing Defendants removed the Action in order to facilitate transfer of the Action to the United States District Court for the District of Delaware (the District Court presiding over the Bankruptcy case) to resolve on a consolidated basis the common threshold scientific issues concerning whether brakes and other automotive parts cause disease. *See, e.g., In re Dow Corning Corp.*, 1995 WL 495978, at *2 (Bankr. E.D. Mich. Aug. 9, 1995) (personal injury tort claims transferred to bankruptcy court pursuant to 28 U.S.C. § 157(b)(5) to resolve threshold scientific issues concerning whether silicone breast implants cause disease after removal to federal court pursuant to 28 U.S.C. § 1452(a)).

9.      Being filed concurrently in the Federal-Mogul Bankruptcy Case by the Removing Defendants is a motion pursuant to 28 U.S.C. § 157(b)(5) to transfer the Action and all other claims related to friction products for consolidated resolution of the threshold scientific issues concerning whether brakes and other automotive parts cause disease.

10.      Along with this Notice of Removal, the Removing Defendants are filing copies of all process, pleadings and orders served on the Removing Defendants.

WHEREFORE, the Removing Defendants give notice that the action pending in the District Court, County of Grand Forks, State of North Dakota is removed to this Court.

Dated this ~~29th~~ day of November, 2001.

Respectfully Submitted,

PEARCE & DURICK

By _____

B. TIMOTHY DURICK *(ND Bar No. 02994)*
Individually and as a Member of the Firm
314 East Thayer Avenue
P.O. Box 400
Bismarck, ND 58502-0400
(701) 223-2890

Attorneys for Removing Defendants
DaimlerChrysler Corporation, Ford Motor
Company, and General Motors Corporation

DAVID N. LUTZ *(ND Bar No. 5806)*
BOWMAN AND BROOKE LLP
150 South Fifth Street; Ste. 2600
Minneapolis, MN 55402-4244
(612) 339-8682

Attorneys for Removing Defendant Ford Motor
Company

4

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Joint Notice

of Removal was served on the 29th day of November, 2001 by U.S. Mail, first-class, postage

prepaid upon the following counsel of record:

    Mr. David C. Thompson
    DAVID C. THOMPSON, P.C.
    Post Office Box 5235
    Grand Forks, ND  58206-5235



B. Timothy Durick

5