MDL 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR - 8 2002

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION
## MDL DOCKET NO. 875
### IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (No. VI)

| | | |
|---|---|---|
| *This Document Relates To*: | § | *From the* |
| | § | |
| | § | |
| VARIOUS PLAINTIFFS (see attached | § | UNITED STATES DISTRICT |
| Schedule (EXHIBIT A)), | § | COURT FOR THE WESTERN |
| | § | DISTRICT OF NEW YORK |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| DAIMLERCHRYSLER CORPORATION, | § | CIVIL ACTION NUMBERS (see |
| FORD MOTOR COMPANY, | § | Attached schedule (Exhibit A)) |
| GENERAL MOTORS CORPORATION, | § | |
| HONEYWELL INTERNATIONAL, INC., AND | § | |
| MACK TRUCK, INC. | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' MOTION AND BRIEF TO VACATE
### CONDITIONAL TRANSFER ORDER – 210

COME NOW, PLAINTIFFS, and file this their Motion to Vacate Conditional Transfer

Order 210, and Brief in support.

IMAGED MAR 1 1 '02

# OFFICIAL FILE COPY

1.      These asbestos personal injury and wrongful death cases, filed in New York state

court between November of 1999 and July of 2001, were improperly removed to the United

States District Court, for the Western District of New York on or about November 20, 2001 by

defendant automobile manufacturers DaimlerChrysler Corporation ("DaimlerChrysler"), Ford

Motor Company ("Ford"), and General Motors Corporation ("GM").  On or about December 20,

2001, Honeywell International, Inc. ("Honeywell") improperly removed some of these cases to

the Western District of New York as well.  Mack Truck, Inc. ("Mack Truck") also improperly

removed one of these cases on or about December 27, 2001.  Plaintiffs' Complaints state claims

arising under New York Law exclusively.  Plaintiffs sued a group of defendants which includes

resident New York corporations, another fact that is not disputed.  Despite these facts,

DaimlerChrysler, Ford, GM, Honeywell, and Mack Truck (collectively referred to as "removing

defendants") removed these cases citing alleged bankruptcy "related to" jurisdiction under 28

U.S.C. § 1334, based upon the bankruptcy proceeding of Federal Mogul Global, Inc. and related

entities.  Because the absence of federal subject matter jurisdiction is apparent from the face of

the pleadings filed by the removing defendants, and due to various other defects in the Notices of

Removal, plaintiffs have submitted Motions for Remand in the Western District of New York.

2.      Plaintiffs expected to prevail on these Motions for numerous reasons.  All of these

arguments are set forth in plaintiffs' Memoranda in support of their Motions to Remand, but the

obvious and most compelling reasons are these:  The District Courts lack any basis for subject

matter jurisdiction because the type of direct claims that plaintiffs assert here against the solvent

removing defendants have been repeatedly found to be too far removed from the bankrupt estate

2

to support the exercise of jurisdiction; [1] even if jurisdiction existed, the doctrines of both

mandatory and permissive abstention would require the Courts to decline to exercise it;[2] and

even if mandatory and permissive abstention were found not to apply, equitable considerations

require that the Courts remand these cases back to the state courts from which they were

removed.[3]   To date, the U.S. District Court, for the Western District of New York has not set a

hearing to rule upon plaintiffs' Motions for Remand.

     3.      After the removals took place, these actions were – over strenuous objection –

"provisionally transferred" to the venue of the Federal Mogul bankruptcy by the Honorable

Alfred Wolin – presiding over this bankruptcy by assignment of the Third Circuit.[4]  Recently,

however, Judge Wolin denied the defendant's motion to finally transfer the removed claims to

the Bankruptcy Court, and ordered that the removed claims be directly remanded to the several

state courts from which they were removed.[5]  Judge Wolin issued this ruling after hearing the

positions of the parties, and examining the Bankruptcy Court's Jurisdiction.  In rendering his

decision, Judge Wolin found that the Bankruptcy Court, as well as all of the Federal District

Courts, lacked subject matter jurisdiction, since the indemnification and contribution claims that

the defendants alleged created federal jurisdiction, were too attenuated to create "related to"

jurisdiction.[6]  In the alternative, Judge Wolin held that the Court would exercise its discretion to

abstain from exercising jurisdiction over the removed claims, and would remand them to the

---

[1]  See e.g., *Pacor, Inc. v. Higgins (*In Re Pacor), 743 F. 2d 984 (3rd Cir. 1984).
[2]  See 28 U.S.C. § 1334(c)(2); 28 U.S.C. § 1334(c)(1).
[3]  See 28 U.S.C.  § 1452 (B).
[4]  See Provisional Transfer Order attached hereto as Exhibit B.
[5]  See Order denying the Motions to Transfer the "Friction Products Claims" and Remanding the Friction Products Claims, and Judge Wolin's Decision dated February 15, 2002, attached hereto as Exhibit C and Exhibit D respectively.
[6]  See Exhibit D.

state courts from which they were removed.[7]  It should be noted, that the Third Circuit Court of

Appeals granted an emergency motion made by the defendants to temporarily stay the removed

claims pending appeal.[8]

    4.      This Panel must vacate the transfer order since Judge Wolin has found that all of

the federal District Courts lack subject matter over the removed claims, including the instant

ones, and has ordered that those claims be directly remanded back to the several state courts from

which they were removed.[9]  Federal Courts have consistently held that "a transfer under 28

U.S.C. 1407 cannot be made unless the district court properly has jurisdiction of the subject

matter of the case."[10]  Judge Wolin's decision dated February 15, 2002, makes it clear that the

Western District of New York does not have proper jurisdiction over the subject matter of the

instant claims.[11]  Since the Western District of New York lacks jurisdiction, the instant claims

were improperly transferred to the MDL Panel.

    5.      Moreover, the panel should decline to finally transfer these cases, as these cases

were transferred to the MDL Panel before the Western District of New York resolved the issue of

subject matter jurisdiction.  It is well settled, that a "jurisdictional issue must be resolved before

deciding whether to stay or transfer the case to the MDL Panel."[12]  "A court should [therefore]

---

[7] See Exhibit D; Exhibit C.
[8] See Order of the Third Circuit Court of Appeals granting Motion to Stay, attached hereto as Exhibit E.
[9] See Exhibit C; Exhibit D.
[10] *BancOhio Corp. V. Fox,* 516 F.2d 29 (6th Cir. 1975); *In re Showa Denko K.K.L-Tryptophan Products Liability Litig.-II*, 953 F.2d 162, 165 (4th Cir. 1992)("The authority for consolidating cases on the order of the judicial panel of multi-district litigation, however, is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred…[N]owhere does it expand the jurisdiction of either the transferor or the transferee court."); *United States v. Brandt Constr. Co.*, 826 F.2d 643, 647 (7th Cir. 1987)(28 U.S.C. 1407 "requires that both actions be 'pending before the court' and an improperly removed action does not meet this criterion"); *Dorsey v. Manufacturers Life Ins. Co.*, 1997 WL 703354 (E.D.La., 1997); *See also* Rule of Procedure 1.5, Judicial Panel on Multidistrict Litigation.
[11] See Exhibit D; Exhibit C.
[12] See *Farkas v. Bridgestone/firestone, Inc.*, 113 F. Supp. 2d 1107, 1115 (W.D.Ky.2000); *In re L.E Lay & Co. Antitrust Litigation,* 391 F. Supp. 1054( Jud.Pan.Mult.Lit.1975(principles of comity dictate that the Panel will be

attend to a motion to remand prior to transferring a case under 28 U.S.C. 1407."[13]  Plaintiffs'

cases were transferred to the MDL Panel before the Western District of New York even

considered plaintiffs' Motions to Remand, which were still pending in that Court at the time of

the transfer.  The Western District of New York, therefore, did not yet resolve the jurisdictional

issue at that time.  Also, the jurisdictional issue has yet to be finally resolved to date, since the

Third Circuit Court of Appeals has recently granted a temporary stay in the instant actions

pending an appeal by the removing defendants.  In light of the foregoing, these cases were

improperly transferred to the MDL Panel.

      6.     Further, the instant claims should not be transferred because the manner in which

MDL-875 had been administered constitutes a denial of the plaintiffs' right to a jury trial.  Both

the New York Constitution and the Seventh Amendment to the U.S. Constitution guarantee these

plaintiffs the right to trial by jury.[14]  The right guaranteed by the New York Constitution is

arguably broader than the Seventh Amendment, and clearly states that this right to a jury trial

shall be inviolate.[15]  The Supreme Court as clearly held that there can be no justification in

denying a litigant his or her constitutional right to a jury trial in a civil action .[16]

---

reluctant to transfer a case while an important motion is pending before the transferee court); *See also Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998); *Aetna U.S. Healthcare, Inc. v. Aktiengesellschaft, Inc.*, 48 F. Supp.2d 37, 39 (D.D.C., 1999)(deciding whether removal was proper before deciding whether to stay pending ruling by Judicial panel on Multidistrict Litigation; *Good v. Prudential Ins.*, 5 F.Supp.2d 804, 809 (N.D.Cal., 1998)(discussing motion to remand before motion to stay and finding stay proper after finding remand improper).

[13] *Meyers v. Bayer AG*, 143 F. Supp.2d 1044, 1048-49 (E.D. Wis. 2001).

[14] NY Const. Art. I, Section 2; U.S. Const. Amend. VII.

[15] NY Const. Art. I, Section 2.

[16] *Curtis vs. Raythoen Mfg. Co. vs. Radio Corp. of America*, C.C.A.1 (Mass.) 76 F. 2d 943 (1st Cir. 1935), certiorari granted 56 S.Ct. 99, 296 U.S. 557, 80 L.Ed. 393, affirmed 56 S.Ct. 297, 296 U.S. 459, 80 L.Ed. 327 (1935 (Neither Congress nor courts may deprive litigant of right to jury trial guaranteed by this amendment).  See also, *Berning vs. Louisville & N.R. Co.*, 92 F.2d 997 (6th Cir. 1938).

7.     There is no realistic possibility that the plaintiffs will ever be permitted to try this case if it is transferred to MDL-875. Extreme delays of a trial date- a delay of years and years- occurs as a matter of course in MDL-875. More than 82, 000 cases have been transferred to MDL-875. Fewer than six cases were remanded in both 1998 ad 1999.[17] The extreme delays inherent in any transfer into MDL-875 are so significant that they constitute a denial of the right to trial by jury guaranteed by both the New York Constitution, Art. 1, Section 2, and by the Seventh Amendment. One of the plaintiffs in this matter, Joyce Scalzo, already has a jury trial date set on October 1, 2002. If this Panel does not vacate its conditional transfer order, this plaintiff will be in jeopardy of losing her state court jury trial date.[18] This Court should, therefore, decline to exercise its jurisdiction to transfer this case to the MDL since such a transfer will impair all of the plaintiffs' constitutional rights.

8.     The administration of MDL-875 also impairs the right to trial by jury because Judge Weiner's policy of retaining jurisdiction over all punitive damages claims – transferred claims he is statutorily unable to try himself – effectively extinguishes any right to punitive damages. Of the almost 100, 000 asbestos claims that have been transferred to MDL-875 over the past 10 years, plaintiffs are aware of only one case in which Judge Weiner has agreed to remand the punitive claim back to the transferor court for trial.

9.     Finally, this Panel should exercise its discretion by declining to transfer the instant case to MDL-875 because a Section 1407 transfer would not serve the convenience of the parties or witnesses, nor would it further the just and efficient conduct of the litigation. While

---

[17] These statistics were provided to Kay Gunderson Reeves, by staff at the Judicial Panel on Multidistrict Litigation on August 9, 2001.
[18] Scheduling Order in the matter of Scalzo v. AlliedSignal, Inc., et al., attached hereto as Exhibit F

1407 does not mandate that common issues of law or fact "predominate" in order for this Panel

to transfer the case, this Panel has declined to transfer asbestos cases in the past where common

issues did not predominate and there were significant disadvantages to transfer. In *In re Asbestos*

*School Products Liability Litigation,* for example, this Panel refused a request for a Section 1407

transfer, declining to transfer because common questions of fact would not predominate over the

individual questions *and* because the common questions that did exist had been extensively

litigated over the previous decade. [19] This case is not substantially similar to those currently

pending in MDL-875, so transfer does not work to enhance the convenience of either the parties

or the witnesses.  The common issues that do exist-issues having to do with the plaintiff and

decedents' diseases, the diagnoses and consequences, and what was known or knowable about

the diseases – are matters that have now been litigated for almost thirty years.  Because so much

is known about these issues, centralization of discovery is not necessary, and will not increase

the efficiency with which these cases can be resolved.  Indeed, were the cases to stay in New

York, they are certain to be resolved far sooner then they would be if the cases are transferred to

MDL-875.

        10.     For all of the foregoing reasons, Section 1407 transfer is inappropriate.  Plaintiffs,

therefore, respectfully request that the Panel vacate CTO-210, its order conditionally transferring

these cases to MDL, and transfer the cases back to the United States District for the Western

---

[19] *In Re Asbestos School Products Liability Litigation,* 606 F.Supp. 713 (Jud. Pan. Mult. Lit. 1985).  See also *In re Eli Lilly & Co. Oraflex Products Liability Litigation,* 578 F.Supp.422 (Jud. Pan. Mult. Lit. 1984)(transfer denied; common issues would not predominate so transfer would not serve the convenience of the parties or witnesses nor further the just and efficient conduct of the litigation); *In re Rely Tampon Products Liability Litigation,* 533 F.Supp. 1346 (Jud.Pan.Mult.Lit 1982)."(same); *In Re Repetitive Stress Injury Products Liability Litigation,* 1992 W.L. 403023 (Jud. Pan. Mult. Lit. 1992)(common questions did not rise to the level that would permit a transfer to serve the convenience of the parties or promote the just and efficient conduct of the litigation); *In re Luminex Intern., Inc. Products Liability Litigation,* 434 F.Supp. 668 (Jud.Pan. Mult. Lit. 1977)(common fact questions not complex enough to justify transfer under Section 1407); *In re A.H. Robins Co., Inc.,* 505 F. Supp. 221 (Jud. Pan. Mult. Lit. 1981)(transfer denied; would not serve the convenience of the parties or promote the just and efficient conduct of the litigation).

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR - 8 2002

FILED
CLERK'S OFFICE

District of New York, where they should be remanded back to state court in accordance with

Judge Wolin's order, so that these cases can eventually proceed to trial in state court in a timely

fashion.

    11.    Plaintiffs now move to vacate CTO-210, and file this Motion and Brief to Vacate

the Conditional Transfer Order pursuant to Panel Rules 5.12(a), 5.13 and 7.4(d).  This

submission is being filed within 15 days of the filing of the Notice of Opposition.

                                        Respectfully submitted,

                                        John P. Comerford, Esq.
                                        LIPSITZ & PONTERIO, LLC
                                        135 Delaware Avenue, Suite 506
                                        Buffalo, New York 14202
                                         (716) 849-0701
                                        Attorneys for Plaintiffs.

## CERTIFICATE OF SERVICE

    I hereby certify that on March _7_, 2002 a true and correct copy of the foregoing Brief to
Vacate the Conditional Transfer Order was mailed via first-class mail, postage pre-paid to each
of the attorneys listed on the attached Attorney Service List of the Judicial Panel on Multidistrict
Litigaiton.

## PANEL SERVICE LIST
**Scalzo, etc. v. Allied Signal**
**Kelly, etc. v. ACandS**
**Besanceney, et al. v. Borg Warner**
**Ozga, et al v. Allied Signal**

**DOCKET NO. 875**

**In Re Asbestos Products Liability Litigation**

Richard C. Binzley, Esq.
Thompson Hine LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Arthur D. Bromberg, Esq.
L'Abbate, Balkan, Colaita & Contini
Seven Regent Street, Suite 711
Livingston, NJ 07039

Edward J. Cass, Esq.
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud, Esq.
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, DC 20036

David A. Damico, Esq.
Burns, White & Hickton
2400 Fifth Avenue Place
120 Fifth Avenue
Pittsburgh, PA 15222

Terrance P. Flynn, Esq.
Gibson, McAskill & Crosby
69 Delaware Avenue, Suite 900
Buffalo, NY 14202

Raymond P. Forceno, Esq.
Forceno & Hannon
Philadelphia Bourse Building, Suite 1000
Independence Mall East
Philadelphia, PA 19106

Ellen B. Furman, Esq.
Goldfein & Joseph
1600 Market Street, 33rd Floor
Philadelphia, PA 19103

Ryan Gellman, Esq.
Colucci & Gallaher, P.C.
2000 Liberty Building
424 Main Street
Buffalo, NY 14202-3695

Susan M. Hansen, Esq.
Brownson & Ballou
601 Second Avenue South
Minneapolis, MN 55402

Bruce S. Huttner, Esq.
Donohue, Sabo, Varley & Armstrong, P.C.
One Winners Circle
P.O. Box 15056
Albany, NY 12212-5056

Vincent Ieraci, Esq.
Maimone & Angel
170 Old Country Road
Mineola, NY 11501

1 of 3

Jonathan G. Kortmansky, Esq.
Sulars, Hertzfeld, Helbion
620 5th Avenue
New York, NY  10020

Reginald S. Kramer, Esq.
Oldham & Dowling
195 South Main Street, Suite 300
Akron, OH  44308

David C. Landin, Esq.
Hunton & Williams
951 East Byrd Street
Richmond, VA  23219

Gene Locks, Esq.
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA  19102

William J. Mendrzucki, Esq.
Drinker, Biddle & Shanley, LLP
500 Campus Drive
Florham Park, NJ  07932

Ronald L. Motley, Esq.
Ness, Motley, Loadholt,
   Richardson & Poole
28 Bridgeside Boulevard
P.O. Box 1792
Mt. Pleasant, SC  29465

Bonnie T. O'Connor, Esq.
Smith, Murphy & Schoepperle
786 Ellicott Square Bldg.
Buffalo, NY 14203

Richard O'Leary, Esq.
McCarter & English, LLP
300 Park Avenue, 18th Floor
New York, NY  10022

Amalia Pena, Esq.
Smith, Abbot, L.L.P.
377 Broadway
New York, NY 10013

Thomas E. Reidy, Esq.
Ward Norris Heller & Reidy LLP
300 State Street
Rochester, NY 14614

John J. Repcheck, Esq.
Marks, O'Neill
707 Grant Street
Pittsburgh, PA  15219

John D. Roven, Esq.
2190 North Loop West, Suite 410
Houston, TX  77018

Richard D. Schuster, Esq.
52 East Gay Street
P.O. Box 1008
Columbus, OH  43216

Neil Selman, Esq.
11766 Wilshire Boulevard, 6th Floor
Los Angeles, CA  90025

Carol Guck Snider, Esq.
Damon & Morey
1000 Cathedral Place
298 Main Street
Buffalo, NY 14202-4096

Robert N. Spinelli, Esq.
Centre Square West, 15th Floor
Philadelphia, PA  19102

Robert E. Swickle, Esq.
1370 Penobscot Building
Detroit, MI  48226

Arthur H. Thorn, Esq.
5 Wembly Court
P.O. Box 15054
Albany, NY  12212

Andrew J. Trevelise, Esq.
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103

James K. Weston, II, Esq.
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA  52406

Judith Yavitz, Esq.
Anderson Kill & Olick, P.C.
44th Floor
1251 Avenue of the Americas
New York, NY 10020

**PANEL SERVICE LIST (Excerpted from CTO-210)**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

*Scalzo, etc. v. Allied Signal, Inc., et al.*, W.D. New York, C.A. No. 1:01-856
*Kelly, etc. v. ACandS, Inc., et al.*, W.D. New York, C.A. No. 1:01-861
*Besanceney, et al. v. Borg-Warner Corp., et al.*, W.D. New York, C.A. No. 1:01-864
*Ozga, et al. v. Allied Signal, Inc., et al.*, W.D. New York, C.A. No. 1:01-874

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Arthur D. Bromberg
L'Abbate, Balkan, Colavita & Contini
Seven Regent Street
Suite 711
Livingston, NJ 07039

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, DC 20036

John P. Comerford
Lipsitz & Ponterio
135 Delaware Avenue
Suite 506
Buffalo, NY 14202

David A. Damico
Burns, White & Hickton
2400 Fifth Avenue Place
120 Fifth Avenue
Pittsburgh, PA 15222

Terrance P. Flynn
Gibson, McAskill & Crosby
69 Delaware Avenue
Suite 900
Buffalo, NY 14202

Raymond P. Forceno
Forceno & Hannon
Philadelphia Bourse Building
Suite 1000
Independence Mall East
Philadelphia, PA 19106

Ellen B. Furman
Goldfein & Joseph
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Ryan L. Gellman
Block & Colucci, P.C.
2000 Liberty Building
424 Main Street
Buffalo, NY 14202

Susan M. Hansen
Brownson & Ballou
4800 U.S. Bank Place
601 Second Avenue, South
Minneapolis, MN 55402

Bruce S. Huttner
Donohue, Sabo, et al.
24 Aviation Road
Albany, NY 12212

Vincent Ieraci
Maimone & Angel
170 Old Country Road
Mineola, NY 11501

Jonathan G. Kortmansky
Sulars Hertzfeld Helbion Christopher
620 5th Avenue
New York, NY 10020

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

PANEL SERVICE LIST (Cont.) MDL-875

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102

William J. Mendrzycki
Drinker, Biddle & Shanley, L.L.P.
500 Campus Drive
Florham Park, NJ 07932

Ronald L. Motley
Ness, Motley, Loadholt, Richardson & Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465

Bonnie T. O'Connor
Smith, Murphy & Schoepperle
786 Ellicott Square Building
Buffalo, NY 14203

Richard O'Leary
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, NJ 07101

Amalia Pena
Smith Abbott, LLP
100 Maiden Lane
New York, NY 10038

Thomas E. Reidy
Two State Street
Suite 1000
Rochester, NY 14614

John J. Repcheck
Marks, O'Neill
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
John Roven & Associates
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Carol G. Snider
Damon & Morey
1000 Cathedral Place
298 Main Street
Buffalo, NY 14202

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA 19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
Detroit, MI 48226

Arthur H. Thorn
Thorn, Gershon Law Firm
5 Wembly Court
New Karner Road
P.O. Box 15054
Albany, NY 12212

Andrew J. Trevelise
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

Judith A. Yavitz
Anderson, Kill & Olick, P.C.
1251 Avenue of the Americas
44th Floor
New York, NY 10020

# LIPSITZ & PONTERIO, LLC

## ATTORNEYS AT LAW

JOHN P. COMERFORD*
NAN L. HAYNES
AMY R. LAMENDOLA*
JOHN NED LIPSITZ
NEIL J. MCKINNON**
MICHAEL A. PONTERIO

NICHOLAS CHURCHILL
*LEGAL ASSISTANT*

\* also admitted in Massachusetts
\*\* also admitted in District of Columbia

135 DELAWARE AVENUE
SUITE 506
BUFFALO, NEW YORK 14202-2410
(716) 849-0701

FAX: (716) 849-0708
(NOT FOR SERVICE OF PROCESS)

WEB: WWW.ASBESTOSATTY.COM
E MAIL: ASBESTOS@ASBESTOSATTY.COM

OF COUNSEL:
HENRY D. GARTNER

NIAGARA FALLS OFFICE:

345 THIRD STREET, SUITE 450
P.O. BOX 788
NIAGARA FALLS, NY 14303
TELEPHONE: (716) 804-0517

(PLEASE ADDRESS ALL
CORRESPONDENCE TO BUFFALO OFFICE)

March 11, 2002

**URGENT**

VIA TELEFAX 202-502-2888

ATTN: Bonita Bagley
Judicial Panel on Multidistrict Litigation
One Columbus Circle, NE
Thurgood Marshall Federal Judiciary Bldg.
Room G-255
Washington, DC 20002-8004

**Re:  MDL 875 - In re Asbestos Products Liability Litigation**
**Scalzo, et al. v. Allied Signal**

Dear Ms. Bagley:

Attached please find a list of counsel who we served our motion and brief to vacate in the above-referenced action so that you may file the same. I have also included the counsel list you had forwarded to me via telefax, which you will find is identical. I apologize for omitting it in our original mailing.

Thank you so much for your help in this matter. Should you have any further questions, please do not hesitate to contact me.

Very truly yours,

LIPSITZ & PONTERIO, LLC

By: Amy LaMendola

AL:asj
Encl.



Exhibit A

PLAINTIFFS' MOTION AND BRIEF TO VACATE CONDITIONAL TRANSFER
ORDER-210 RELATES TO:


David Besanceney and Grace Besanceney,
and Raymond J. Stefanski v. Allied Signal, Inc., et al.
01-CV-864A(F);

Kelly v. A.C.and S., Inc., et al.
01-CV-861;

Ozga v. Allied Signal, Inc., et al.
01-CV-874A(F);

Scalzo v. Allied Signal, Inc., et al.
01-856A(F)

Exhibit B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE: FEDERAL-MOGUL    :    Chapter 11
GLOBAL, INC., T&N       :    Case Nos. 01-10578, et al.[1]
LIMITED, et al.,        :
                    :
        Debtors.    :
----------------------------

ORDER: (1) PARTIALLY WITHDRAWING THE REFERENCE, and
        (2) PROVISIONALLY TRANSFERRING CERTAIN FRICTION
              PRODUCT CLAIMS

This matter having been opened upon the motion of General
Motors Corporation, Ford Motor Company and Daimler Chrysler
Corporation for a motion to transfer (the "Transfer Motion")
certain lawsuits against them arising out of so-called "friction
products" as to which the movants contend they have a right of
indemnification against the debtors in these administratively
consolidated Chapter 11 proceedings (the "Friction Product
Claims"); and it appearing that movants have removed those cases
from the several state courts to the United States District
Courts for the Districts in which those cases were pending; and
the movants having also moved for a provisional order of transfer
to preserve the status quo pending a plenary hearing and
determination by the Court of the Transfer Motion; and the Court
having reviewed the several briefs and letters of counsel in
support and in opposition to the provisional transfer motion; and
good cause appearing

---

[1]See attached list.

It is this 10th day of December, 2001

ORDERED that, pursuant to 28 U.S.C. § 157 and the Order of this Court issued December 10, 2001, the reference of this case to the Bankruptcy Court, Judge Randall K. Newsome presiding, is hereby withdrawn with respect to the Transfer Motion and the provisional transfer motion, and with respect to matters involving subject matter jurisdiction, abstention and remand regarding the Friction Product Claims, and it is further

ORDERED that the application for a provisional transfer Order is granted and the Friction Product Claims are hereby provisionally transferred to this Court subject to further Order of the Court, and it is further

ORDERED that all parties shall refrain from submitting papers in support of or in opposition to the Transfer Motion pending further Order of the Court providing for notice, a briefing schedule and a hearing date for the Transfer Motion.

/s/
ALFRED M. WOLIN, U.S.D.J.

2

IN RE: FEDERAL-MOGUL GLOBAL, INC.
Case Numbers

| | | | |
|---|---|---|---|
| 01-10578 | 01-10643 | 01-10700 | 01-10750 |
| 01-10580 | 01-10644 | 01-10701 | 01-10751 |
| 01-10582 | 01-10846 | 01-10702 | 01-10752 |
| 01-10585 | 01-10647 | 01-10703 | 01-10753 |
| 01-10586 | 01-10649 | 01-10704 | 01-10754 |
| 01-10587 | 01-10650 | 01-10705 | 01-10755 |
| 01-10589 | 01-10651 | 01-10706 | 01-10756 |
| 01-10591 | 01-10652 | 01-10707 | 01-10757 |
| 01-10593 | 01-10653 | 01-10708 | 01-10758 |
| 01-10594 | 01-10654 | 01-10710 | 01-10759 |
| 01-10596 | 01-10655 | 01-10711 | 01-10760 |
| 01-10598 | 01-10656 | 01-10712 | 01-10761 |
| 01-10599 | 01-10657 | 01-10713 | 01-10762 |
| 01-10600 | 01-10658 | 01-10714 | 01-10763 |
| 01-10601 | 01-10659 | 01-10715 | 01-10764 |
| 01-10603 | 01-10660 | 01-10716 | 01-10765 |
| 01-10604 | 01-10661 | 01-10717 | 01-10766 |
| 01-10605 | 01-10662 | 01-10718 | 01-10767 |
| 01-10606 | 01-10664 | 01-10719 | 01-10768 |
| 01-10608 | 01-10665 | 01-10721 | 01-10769 |
| 01-10610 | 01-10666 | 01-10722 | 01-10770 |
| 01-10611 | 01-10668 | 01-10723 | 01-10771 |
| 01-10613 | 01-10669 | 01-01724 | 01-10772 |
| 01-10614 | 01-10672 | 01-10726 | 01-10773 |
| 01-10615 | 01-10673 | 01-10727 | 01-10774 |
| 01-10617 | 01-10675 | 01-10728 | |
| 01-10618 | 01-10682 | 01-10729 | |
| 01-10619 | 01-10683 | 01-10730 | |
| 01-10620 | 01-10684 | 01-10731 | |
| 01-10621 | 01-10685 | 01-10732 | |
| 01-10622 | 01-10686 | 01-10733 | |
| 01-10623 | 01-10687 | 01-10734 | |
| 01-10625 | 01-10688 | 01-10736 | |
| 01-10626 | 01-10689 | 01-10737 | |
| 01-10627 | 01-10690 | 01-10739 | |
| 01-10629 | 01-10691 | 01-10741 | |
| 01-10630 | 01-10692 | 01-10742 | |
| 01-10632 | 01-10693 | 01-10743 | |
| 01-10633 | 01-10694 | 01-10744 | |
| 01-10634 | 01-10695 | 01-10745 | |
| 01-10637 | 01-10696 | 01-10746 | |
| 01-10638 | 01-10697 | 01-10747 | |
| 01-10640 | 01-10698 | 01-10748 | |
| 01-10641 | 01-10699 | 01-10749 | |

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ARMSTRONG WORLD : <br> INDUSTRIES, INC., et al.,: <br><br>       Debtors.     : | Chapter 11 <br> Case Nos. 00-4471, 00-4469, <br>           00-4470 |
| IN RE: W.R. GRACE & CO., : <br> et al.,           : <br><br>       Debtors.     : | Chapter 11 <br> Case Nos. 01-1139 through <br>           0-1200 |
| IN RE: FEDERAL-MOGUL : <br> GLOBAL, INC., T&N    : <br> LIMITED, et al..     : <br><br>       Debtors.     : | Chapter 11 <br> Case Nos. 01-10578, et al.[1] |
| IN RE: USG CORPORATION, : <br> a Delaware Corporation, : <br> et al.,           : <br><br>       Debtors.     : | Chapter 11 <br> Case Nos. 01-2094 through <br>           01-2104 |
| IN RE: OWENS CORNING, : <br> et al.,           : <br><br>       Debtors.     : | Chapter 11 <br> Case Nos. 00-3837 through <br>           00-3854 |

## ORDER (1) REFERRING CERTAIN CASES TO THE BANKRUPTCY COURT AND (2) ALLOCATING RESPONSIBILITIES BETWEEN THE DISTRICT COURT AND THE BANKRUPTCY COURT

The above-captioned Chapter 11 cases having been being transferred to this Court pursuant to the Order of the Honorable Susan L. Robinson, Chief Judge of the United States District Court for the District of Delaware; and this Court having

_____

[1] See attached list.

authority pursuant to 28 U.S.C. § 157(a) to refer these cases to the United States Bankruptcy Judges of this District; and the Honorable Randall J. Newsome and the Honorable Judith K. Fitzgerald, United States Bankruptcy Judges of the Northern District of California and the Western District of Pennsylvania respectively, sitting by designation in this District and possessing special expertise and familiarity with these matters; and good cause appearing

IT IS THIS    day of December 2001

ORDERED that the following Order applies to the lead cases identified in the caption of this Order and to all cases filed as related cases thereto, and it is further

ORDERED that In re W.R. Grace & Co., Bankruptcy No. 01-1139, is hereby referred to the Honorable Judith K. Fitzgerald is further

ORDERED that In re Armstrong World Industries, Inc., Bankruptcy No. 00-4471, is hereby referred to the Honorable Randall J. Newsome, and it is further

ORDERED that In re Federal-Mogul Global, Inc., Bankruptcy No. 01-10578, is hereby referred to the Honorable Randall J. Newsome, and it is further

ORDERED that In re Owens Corning, Bankruptcy No. 00-3837, is referred to the Honorable Judith K. Fitzgerald before whom it was previously pending, and it is further

2

ORDERED that In re USG, Bankruptcy. No. 01-2094, is hereby referred to the Honorable Randall J. Newsome before whom it was previously pending, and it is further

ORDERED that Judges Fitzgerald and Newsome will cooperate between themselves and with this Court in the scheduling of the above-captioned five cases to facilitate the expeditious administration of the debtors' estates in bankruptcy, and it is further

ORDERED that all persons are on notice that this Court may, sua sponte, upon recommendation received from the Bankruptcy Judges, or upon motion, withdraw the references made by this Order with respect to specific proceedings or issues as may be required by law or as may from time to time be deemed advisable by the Court to facilitate the efficient resolution of the several cases and/or to adjudicate common issues among them and it is further

ORDERED that the withdrawal of the references is specifically contemplated with respect to asbestos-related claims and issues, provided however that the Court's authority to withdraw the references shall not be limited to that issue nor by whether a particular proceeding is considered core for the purposes of the jurisdiction of the Bankruptcy Court under the United States Code, and it is further

ORDERED that all pleadings, applications, or documents

3

concerning these cases shall be filed with the Clerk of the
Bankruptcy Court for the District of Delaware in accordance with
applicable procedures and Local and Federal Rules of Bankruptcy
Procedure, and it is further

ORDERED that counsel for the debtors shall transmit a copy
of each Omnibus Hearing Agenda Letter to this Court
simultaneously with filing that letter in the Bankruptcy Court,
and debtors' counsel shall immediately contact this chambers by
telephone to arrange the mode of transmittal of the Agenda
Letters, and it is further

ORDERED that at the status conference in these cases
presently scheduled for December 20, 2001, this Court will
solicit views from the parties with respect to which specific
proceedings, and particularly which asbestos-related proceedings,
the references to the Bankruptcy Judges should be withdrawn, and
it is further

ORDERED that, from the date of this Order, the Bankruptcy
Judges will conduct an initial review of all proceedings and
issues presently pending before them in the above-captioned cases
to determine whether, as a matter of statutory jurisdiction or to
facilitate the several cases and/or to adjudicate common issues
among them, the reference should be withdrawn as to any of them,
and it is further

ORDERED that upon completion of their review, the Bankruptcy

4

Judges shall recommend to this Court as to which proceedings or issues the references should be withdrawn, and it is further

ORDERED that this Order shall be without prejudice to the right of any party to move to withdraw a reference with respect to a particular proceeding, and it is further

ORDERED that nothing in this Order shall be construed to require that the Bankruptcy Court render formal findings or recommendations with respect to a withdrawal of the references or a determination of the core/non-core nature of a particular proceeding unless a party in interest files a motion requesting a determination of the core/non-core status of a particular proceeding, and it is further

ORDERED that all proceedings currently pending before the Bankruptcy Judges will continue to be handled by them in accordance with the provisions of 28 U.S.C. § 157 and this Order, subject to further Order of this Court, and it is further

ORDERED that all previous orders in the above captioned cases shall continue in force except as modified or superseded by the terms of this Order.


/s/
Alfred M. Wolin, District Judge
District Court, New Jersey
Sitting by Designation, District of
Delaware

IN RE: FEDERAL-MOGUL GLOBAL, INC.
Case Numbers

| | | | |
|---|---|---|---|
| 01-10578 | 01-10643 | 01-10700 | 01-10750 |
| 01-10580 | 01-10644 | 01-10701 | 01-10751 |
| 01-10582 | 01-10646 | 01-10702 | 01-10752 |
| 01-10585 | 01-10647 | 01-10703 | 01-10753 |
| 01-10586 | 01-10649 | 01-10704 | 01-10754 |
| 01-10587 | 01-10650 | 01-10705 | 01-10755 |
| 01-10589 | 01-10651 | 01-10706 | 01-10756 |
| 01-10591 | 01-10652 | 01-10707 | 01-10757 |
| 01-10593 | 01-10653 | 01-10708 | 01-10758 |
| 01-10594 | 01-10654 | 01-10710 | 01-10759 |
| 01-10596 | 01-10655 | 01-10711 | 01-10760 |
| 01-10598 | 01-10656 | 01-10712 | 01-10761 |
| 01-10599 | 01-10657 | 01-10713 | 01-10762 |
| 01-10600 | 01-10658 | 01-10714 | 01-10763 |
| 01-10601 | 01-10659 | 01-10715 | 01-10764 |
| 01-10603 | 01-10660 | 01-10716 | 01-10765 |
| 01-10604 | 01-10661 | 01-10717 | 01-10766 |
| 01-10605 | 01-10662 | 01-10718 | 01-10767 |
| 01-10606 | 01-10664 | 01-10719 | 01-10768 |
| 01-10608 | 01-10665 | 01-10721 | 01-10769 |
| 01-10610 | 01-10666 | 01-10722 | 01-10770 |
| 01-10611 | 01-10668 | 01-10723 | 01-10771 |
| 01-10613 | 01-10669 | 01-01724 | 01-10772 |
| 01-10614 | 01-10672 | 01-10726 | 01-10773 |
| 01-10615 | 01-10673 | 01-10727 | 01-10774 |
| 01-10617 | 01-10675 | 01-10728 | |
| 01-10618 | 01-10682 | 01-10729 | |
| 01-10619 | 01-10683 | 01-10730 | |
| 01-10620 | 01-10684 | 01-10731 | |
| 01-10621 | 01-10685 | 01-10732 | |
| 01-10622 | 01-10686 | 01-10733 | |
| 01-10623 | 01-10687 | 01-10734 | |
| 01-10625 | 01-10688 | 01-10736 | |
| 01-10626 | 01-10689 | 01-10737 | |
| 01-10627 | 01-10690 | 01-10739 | |
| 01-10629 | 01-10691 | 01-10741 | |
| 01-10630 | 01-10692 | 01-10742 | |
| 01-10632 | 01-10693 | 01-10743 | |

| | | |
|---|---|---|
| 01-10633 | 01-10694 | 01-10744 |
| 01-10634 | 01-10695 | 01-10745 |
| 01-10637 | 01-10696 | 01-10746 |
| 01-10638 | 01-10697 | 01-10747 |
| 01-10640 | 01-10698 | 01-10748 |
| 01-10641 | 01-10699 | 01-10749 |

Exhibit C



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                          :
                                :       CHAPTER 11
FEDERAL-MOGUL GLOBAL, INC.,     :
                                :       BANKRUPTCY NO. 01-10587
                Debtor.         :       (jointly administered)

ORDER 1) DENYING THE MOTIONS TO TRANSFER THE "FRICTION PRODUCTS CLAIMS" AND 2) REMANDING THE FRICTION PRODUCTS CLAIMS

This matter having been opened before the Court upon the several motions of parties, denominated in the prior Orders of the Court as the "Friction Products Defendants," to transfer to this District into the above-captioned proceedings the claims against the movants previously denominated "Friction Products Claims"; and the Court having previously granted this motion on a provisional basis and the Friction Products Claims having already been provisionally transferred to this Court subject to a plenary hearing on the motion to transfer; and the Court having previously given notice to the parties that it would consider arguments directed to subject matter jurisdiction, abstention and remand in ruling upon the movants' applications; and the Court having reviewed the submissions of counsel and heard oral argument; and for the reasons set forth on the record at the hearing on those motions today, as supplemented by a written Opinion to follow; and for good cause shown

It is this 8th day of February 2002

1

ORDERED that the motions to transfer the Friction Products Claims are denied, and it is further

ORDERED that this Court lacks subject matter jurisdiction over the Friction Products Claims, and it is further

ORDERED that the Friction Products Claims are remanded to the state courts from which they were removed pursuant to 28 U.S.C. § 1447, and it is further

ORDERED that, in the alternative, the Friction Products Claims are remanded to the state courts from which they were removed pursuant to 28 U.S.C. § 1452.

Alfred M. Wolin, U.S.D.J.

2

Exhibit D

FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: FEDERAL-MOGUL | : | Chapter 11 |
| GLOBAL, INC., T&N | : | Case Nos. 01-10578, et al.[1] |
| LIMITED, et al., | : | |
| | : | |
| Debtors. | : | <u>O P I N I O N</u> |

------------------------

APPEARANCES:

ALAN B. RICH, ESQ.
BARON & BUDD
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219-4281
(Attorneys for Ad Hoc Committee
 of Friction Products Plaintiffs)

CHARLES S. SIEGEL, ESQ.
WATERS & KRAUS
3219 McKinney Avenue, Suite 3000
Dallas, TX 75204
(Attorneys for "Waters & Kraus"
 Friction Products Plaintiffs)

ELIHU INSELBUCH, ESQ.
CAPLIN & DRYSDALE
399 Park Avenue
New York, NY 10022
(Attorneys for Official Asbestos
 Claimants Committee)

DAVID M. BERNICK, ESQ.
KIRKLAND & ELLIS
200 E. Randolph Drive
Chicago, IL 60601
(Attorneys for "Big Three"
 Auto Makers)

THOMAS F. CAMPION, JR., ESQ.

---

[1] See attached list.

DRINKER, BIDDLE & SHANLEY
500 Campus Drive
Florham Park, NJ 07932
(Attorneys for Honeywell Int'l, Inc.)

2

ROBERT M. MILLNER, ESQ.
SONNENSCHEIN, NATH & ROSENTHAL
1221 Avenue of the Americas
New York, NY 10020
(Attorneys for Official Unsecured
 Creditors Committee)

DAVID E. WILKS, ESQ.
WHITE & WILLIAMS
824 North Market Street, Box 709
Wilmington, DE 19899-0709
(Attorneys for International Auto
 Makers)


**WOLIN, District Judge**

This matter is opened before the Court upon motions pursuant
to 28 U.S.C. § 157 to transfer to this Court certain personal
injury claims against the movants pending in various United
States District Courts based on allegations of exposure to
asbestos in products designed to resist heat caused by friction
(the "Friction Products Claims").  The movants are
DaimlerChrysler Corporation ("Chrysler"), Ford Motor Company
("Ford")and General Motors (collectively with the previously
listed parties the "Big Three"), Honeywell International, Inc.
("Honeywell") and Volkswagen of America, Inc., Volkswagen AG,
Mercedes-Benz USA, LLC, BMW North America, Inc., Volvo Cars North
America, Inc., Rolls Royce Bentley Motor Cars, Inc. and Nissan
North America, Inc. (the "International Auto Makers" and
collectively with the other movants the "Friction Product

3

Defendants"). The Court has reviewed the submissions and heard
the argument of counsel on February 8, 2002. The Court ruled
from the bench at that hearing that the transfer motions would be
denied, that the Court lacked subject matter jurisdiction over
the Friction Products Claims and that the Friction Product Claims
would be remanded to the state courts from which they were
originally removed. At the hearing the Court stated that it
would supplement the record with a written Opinion on the
motions. This is that Opinion.

### BACKGROUND

Movant Friction Product Defendants were until recently
parties in state court proceedings in most if not all of the
states of the Union defending against allegations of personal
injury tort and wrongful death. The claims allege that
plaintiffs' injuries were caused by asbestos contained in the
defendants' products, brake pads and other applications involving
friction. The debtors, Federal-Mogul Global, Inc. and several of
its subsidiaries, were co-defendants in many, but not all, of
these suits when their chapter 11 petitions were filed on October
1, 2001.

As to the debtors, of course, the bankruptcy filing
automatically stayed any state court proceedings. The Court is
informed that, after that filing, plaintiffs around the country

4

immediately began severing claims against the debtors or
dismissing their claims against them altogether to permit their
cases against the solvent parties to go forward.  This aim was
thwarted, however, by a massive campaign by the movants of
removing claims against them to the local United States District
Courts on the theory that these claims were related to the above-
captioned bankruptcy proceeding and thus within the bankruptcy
jurisdiction of the federal courts.  An illustrative though
incidental fact demonstrating the procedural stakes at issue here
is that case load statistics for each of the various districts
immediately ballooned.  Judge Pauley in the Southern District of
New York received 1,500 new cases, and the larger and more
asbestos-litigation intensive jurisdictions doubtless numbered
new filings in the thousands.

Naturally plaintiffs did not remain supine through these
events, but immediately fired off a corresponding number of
motions to remand.  Understandably, district judges around the
country moved these motions to the tops of their calendars.  The
movants riposted on November 20, 2001, with a motion in the
Delaware District Court wherein the bankruptcy was pending to
transfer, wholesale, all of the removed claims in all of the
different district courts to the District of Delaware.  This
motion was pending when, on November 27, 2001, this Court
received the transfer of the above-captioned case and four other

5

very large asbestos-related chapter 11 cases on November 27, 2001.[2]

The Court was thus confronted with the issues posed by these motions in its earliest days of supervising these bankruptcies. It was represented that various courts were in the process of ruling on the remand motions. Slip opinions forwarded to the Court's attention demonstrated that piecemeal remand and inconsistent retention of the Friction Product Claims was becoming a reality with each passing day. Meanwhile, plaintiffs' counsel clamored that many of their clients were in extremis and not likely to live to see their day in court should the threshold jurisdictional decision be delayed. In fact, given that each adjudicative inconsistency and hardship was multiplied by the tremendous numbers of removed cases, confusion threatened to rule the day.

The movants prayed for relief in two parts. First, they sought an immediate and ex parte provisional transfer of the Friction Product Claims in order to protect them from piecemeal

---

[2]     The Court has over-simplified the chronology of events in the interest of narrative coherence. In fact, only the Big Three had progressed through removal to a motion to transfer by the time this Court assumed jurisdiction of the Federal-Mogul bankruptcy. Honeywell and the International Auto Makers followed the lead of the Big Three and began the process of removal and transfer later. Moreover, as subsequent events proved, the initial removal program was not completed all at once, and removal of new cases by each of the movants was ongoing through December.

remand orders.  Second, the movants proposed that the Court
establish a method by which the large number of parties-at-
interest might have their positions heard and that the Court then
render a plenary decision on whether the Friction Product Claims
would be transferred to this Court.  This Court agreed, withdrew
the reference to the Bankruptcy Court for the purposes of these
motions, and charged the plaintiffs' bar to arrange among
themselves who would brief and argue their opposition to the
motions.  The Court put the parties on notice that, in addition
to the narrow issue of transfer pursuant to 28 U.S.C. § 157, the
Court would also examine its subject matter jurisdiction and
whether abstention or remand might be appropriate.

    Events have not stood still despite the Court's best efforts
to expedite disposition of the motions.  As noted, some cases
had already been remanded before the Court's Provisional Transfer
Order could issue.  Since that date, at least one District Court
has refused to be bound by the Court's Provisional Transfer Order
and made its own ruling that subject matter jurisdiction was
lacking in the case before it.  Another federal court reached the
same result by interpreting the Provisional Transfer Order to
apply only to Friction Product Claims removed before the date of
the Order.  Finally, the Fifth Circuit Court of Appeals recently
denied an application for a stay of remand to the Texas state
courts of thirty-seven lawsuits against another Federal-Mogul

7

subsidiary, Garlock, Inc.  The Fifth Circuit denied the application for a stay, finding no likelihood of success in the proposition that Friction Product Claims against Garlock were related to the Federal-Mogul bankruptcy.  Arnold v. Garlock, Inc., 2001 WL 1669714 at *11 (5th Cir., Dec. 28, 2001).

Meanwhile, additional provisional transfer and transfer motions have been filed by other Friction Product Claims defendants.  Rather than delay the briefing of the already pending motions, the Court granted provisional transfer as to some of these, adjourning without date their briefing.  Other motions remain pending.  The Court heard oral argument on the plenary motions to transfer on February 8, 2002.  This Opinion constitutes the Court's plenary ruling on the motions to transfer the Friction Product Claims to this Court.


## DISCUSSION

### 1.   Subject Matter Jurisdiction

The bankruptcy removal statute is 28 U.S.C. § 1452(a):

> A party may remove any claim or cause of
> action in a civil action other than a
> proceeding before the United States Tax Court
> or a civil action by a governmental unit to
> enforce such governmental unit's police or
> regulatory power, to the district court for
> the district where such civil action is
> pending, if such district court has
> jurisdiction of such claim under section 1334
> of this title.

Section 1334(a) establishes subject matter jurisdiction in the

8

United States District Courts for all cases under Title 11, but extends this power as well to "civil proceedings . . . arising in or related to cases under title 11." See id. § 1334(b). "Related to" is a term of art, and jurisdiction under the "related to" clause has been defined by the United States Supreme Court to include litigation of claims owned by the debtor's estate and, relevant here, litigation between third parties that has an effect on the estate. Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.5 (1995).

The leading case in this area is our own Third Circuit's Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984). Pacor addressed whether an asbestos-related personal injury lawsuit against a non-debtor was related to the Johns-Manville chapter 11 proceeding on the ground that the non-debtor defendant had asserted a third-party claim of indemnification against Johns-Manville as the original manufacturer of the asbestos. While acknowledging the wide jurisdiction granted by Congress to federal bankruptcy courts to facilitate the administration of debtors' estates, the Court of Appeals noted that this jurisdiction is "not without limit." "Related to" jurisdiction still requires "some nexus between the 'related' civil proceeding and the title 11 case," the court explained. Id. at 994.

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any

9

> effect on the estate being administered in
> bankruptcy. Thus, the proceeding need not
> necessarily be against the debtor or against
> the debtor's property.  An action is related
> to bankruptcy if the outcome could alter the
> debtor's rights, liabilities, options, or
> freedom of action (either positively or
> negatively) and which in any way impacts upon
> the handling and administration of the
> bankruptcy estate.
>
> On the other hand, the mere fact that
> there may be common issues of fact between a
> civil proceeding and a controversy involving
> the bankruptcy estate does not bring the
> matter within the scope of section 1471(b)
> [now 1334(b)].  [J]urisdiction over
> nonbankruptcy controversies with third
> parties who are otherwise strangers to the
> civil proceeding and to the parent bankruptcy
> does not exist.

Id. at 994 (citations and internal quotation omitted)(emphasis

and second alteration in original).

But a valid statement of principle does not necessarily

produce a usable rule, and whether a controversy "could have any

effect on the estate" will not always be self-evident.  In Pacor,

a bare claim of common-law indemnity was not enough.  The Court

of Appeals found "at best it is a mere precursor to the potential

third party claim for indemnification by Pacor against Manville"

in which the debtor would be free to relitigate any issue

necessary to the prior judgment.  Id. at 995.  On these facts,

the Pacor court found that the "the bankruptcy estate could not

be affected in any way until the Pacor-Manville third party

action is actually brought and tried."  Id.

The narrow holding of Pacor was that a mere common-law
indemnity claim by a non-debtor co-defendant of a debtor will not
"alter the debtor's rights, liabilities, options, or freedom of
action (either positively or negatively)" in a way that "impacts
upon the handling and administration of the bankruptcy estate."
Id. at 994.  That common facts would be litigated against the co-
defendant did not matter, because no resolution of a factual
issue would be binding on the debtor's estate.[3]  The potential
for a judgment against the debtor posed by the existence of a
suit against the non-debtor was not only contingent (the non-
debtor defendant might prevail) but it was indirect – any
material effect on the estate would require yet another lawsuit.
Id. at 995.

The United States Supreme Court's holding in Celotex Corp.
v. Edwards is consistent with a narrow reading of Pacor,
notwithstanding the contrary result on the jurisdictional issue.
514 U.S. 300 (1995).  There asbestos claimants sought to execute
on a supersedeas bond following an unsuccessful appeal by their
judgment debtor.  The bond was secured by cash owed to the debtor

---

[3]     Actually, under New Jersey law and presumably other
jurisdictions, a putative indemnitor will be bound by the
underlying judgment provided the indemnitor was given an
opportunity to be heard and defend.  Implicit in Pacor's
rationale is that a debtor may not be prejudiced by its failure
to defend a lawsuit against a third-party common-law indemnitee
without de facto depriving the debtor of the benefit of the
automatic stay of litigation against it.

by the surety.  Similarly, in <u>A.H. Robins Co.</u>, the Fourth Circuit found that the bankruptcy court properly stayed litigation between products liability plaintiffs and non-debtor co-defendants named as additional insureds under the debtor's insurance policy.  828 F.2d 1023, 1024-26 (4th Cir. 1987), <u>cert. denied</u>, 485 U.S. 969 (1988).  Yet another example is <u>Halper v. Halper</u>, 164 F.3d 830 (3d Cir. 1999), in which related-to jurisdiction was found over a dispute involving a guarantee by a non-debtor insider of the corporate debtor's obligation.

Each of <u>Celotex</u>, <u>A.H. Robins</u> and <u>Halper</u> can be explained at least in part by the recognition that they each involved property or rights belonging to the estate.  In <u>Celotex</u>, it was the debtor's cash collateral, in <u>A.H. Robins</u> insurance proceeds, and in <u>Halper</u> a guarantee available as an alternative source of recovery for a creditor to take the pressure off the estate. This Court understands, of course, that related-to bankruptcy jurisdiction covers "more than simple proceedings involving the property of the debtor or the estate."  <u>Celotex</u>, 514 U.S. at 308. The broader principle is that in each case the potential impact on the debtor's estate would have been direct with no intervening adjudication or joinder of issue necessary for judgment against the non-debtor to affect assets, re-prioritize creditors and thwart the bankruptcy court's administration of the estate.

Other courts, and the movants, have taken the language of

12

_Pacor_ and _Celotex_ to indicate a broader but less choate concept of related-to bankruptcy jurisdiction.  They cite the passage quoted above stating that bankruptcy jurisdiction over a proceeding depends upon "whether the outcome of that proceeding could conceivably have any effect on the estate being administered . . . ."  _Pacor_, 743 F.2d at 994, _quoted in_ _Celotex_, 514 U.S. at 308 n.6.  This Court does not perceive that this formulation of the rule is necessarily inconsistent with the cases discussed immediately above - "conceivable" or not, the bottom line is whether resolution of an ostensibly unrelated claim will have an "effect on the estate."

As others have noted before, a broader understanding of "conceivable" as defining bankruptcy jurisdiction produces an unworkable rule and bizarre conclusions regarding Congressional intent in the bankruptcy jurisdiction statute.  "The optimist may argue that anything is 'conceivable,' and practical definition of this term of art must be tempered with reasonableness."  _In re Chargit, Inc._, 81 B.R. 243, 247 (Bankr. S.D.N.Y. 1987).  Judge Haden of the Southern District of West Virginia quoted the Seventh Circuit to these same litigants:  "'common sense cautions against an open-ended interpretation of the "related to" language "in a universe where everything is related to everything else."'"  _In re Asbestos Litig._, 271 B.R. 118, 124 (S.D. W. Va. 2001) (quoting _Matter of FedPak Sys., Inc._, 80 F.3d 207, 214 (7th Cir.

13

1996)(quoting G. Dunne, The Bottomless Pit of Bankruptcy Jurisdiction, 112 Banking L.J. 957 (Nov-Dec. 1995))).  Approving Pacor, the Supreme Court warned that "a bankruptcy court's 'related to' jurisdiction cannot be limitless."  Celotex, 514 U.S. at 308.  That pronouncement and the rule of Pacor as discussed above are doctrinally sound and, more to the point, binding on this Court.

The movants urge upon this Court the reasoning of the Sixth Circuit's opinion In re Dow Corning Corp., 86 F.3d 482 (6th Cir. 1996), cert. denied, 519 U.S. 1071 (1997), which involved products liability co-defendants of a bankrupt manufacturer of silicone breast implants.  The co-defendants removed the claims against them to the Dow Corning bankruptcy court on the theory that their rights of contribution or indemnification against the debtor under theories of joint and several liability made the claim against the non-debtors related to the bankruptcy.  Disagreeing with the lower court, the Sixth Circuit found that "The potential for Dow Corning's being held liable to the non-debtors in claims for contribution or indemnification, or vice versa, suffices to establish a conceivable impact on the estate in bankruptcy."  Id. at 493.

It may be that Dow Corning is impossible to reconcile with Pacor, which came to the opposite conclusion on a remarkably similar set of facts.  There was no claim of contractual

14

indemnification, guarantee or other theory in which a judgment
against the solvent co-defendants would bind the Dow Corning
estate.  In fact, not all of the putative indemnitees had even
asserted an express claim of indemnification against the debtor,
but relied upon their claim of legal entitlement should they
choose to press such a claim.  On the other hand, an important
distinction between Dow Corning and this case is the large number
of non-debtor co-defendants poised to transfer into the Federal-
Mogul proceeding, compared with the handful of non-debtor co-
defendants involved in the Dow Corning case.

   In any event, the Sixth Circuit found that "the claims
currently pending against the non-debtors give rise to contingent
claims against Dow Corning which unquestionably could ripen into
fixed claims."  86 F.3d at 494.  This is wrong, however, as Pacor
explained.  Claims against the non-debtor could not ripen into
claims against the debtor, the debtor would have been bound by
nothing in the prior suit, and a separate action would be
necessary to convert the non-debtors' liability into a claim
against the estate.

   This Court is unconvinced by the Dow Corning panel's main
point of distinction between that case and Pacor.  The Sixth
Circuit reasoned that Pacor contained only one claim, whereas in
Dow Corning many thousands of plaintiffs were suing the non-
debtors.  This Court regards with misgiving the proposition that

15

mere numbers of claims should prevail over articulable principles when it comes to defining federal subject matter jurisdiction. Moreover, for reasons explored more fully in the section below on abstention and remand, the number of claimants actually weighs against exerting bankruptcy jurisdiction in mass tort cases.

As the multiplicity of transfer motions now pending before this Court demonstrates, entire industries can be related by historical manufacturer/distributor relationships and each of the players may have at least a colorable claim of common-law indemnification against each of the others. Movants contend that the scope of their motions may be limited by the fact that only cases in which debtors' products are involved will be affected. As all are aware, however, the Friction Products Claims involve plaintiffs whose alleged occupational exposure involves every manufacturer whose products who might potentially have been present at the plaintiff's workplace. In this far from uncommon situation, there is no principled limit to the theory of Dow Corning. Could Congress have intended that the bankruptcy of a single player would have automatic, nation-wide impact in which every manufacturer and distributor and all tens of thousands of injured parties are concentrated in a single reorganization proceeding?

If the question did not answer itself, then a straightforward reading of Pacor will reveal the Third Circuit's

view on the matter.   The possibility that the loser of an
unrelated dispute might seek to recover its losses from the
debtor does not make the dispute between non-debtors subject to
the jurisdiction of the bankruptcy court.   The Sixth Circuit's
view to the contrary in Dow Corning has been described as a
"remarkable extension of its [already] broad approach to
relatedness."   1 William L. Norton, Jr., Norton Bankr. Law &
Prac. 2d § 4.44.   To the extent that the reasoning of the Sixth
and Third Circuits conflict, this Court must follow that of the
Third.

An attempt to state the converse of the Pacor rule by
categorically listing what facts will establish related-to
jurisdiction will probably be doomed; the possible scenarios are
too varied to predict.   However, the holdings of the Third
Circuit since Pacor have a common element.   The facts of these
later cases suggest a rule that related-to bankruptcy
jurisdiction will not extend to a dispute between non-debtors
unless that dispute, by itself, creates at least the logical
possibility that the estate will be affected.

Thus, in In re Marcus Hook Development Park, Inc., 943 F.2d
261 (3d Cir. 1991), inconsistent orders of the bankruptcy court
left post-confirmation purchasers of the debtor's real estate
unclear as to the status of liens on the property.   The Court of
Appeals found related-to jurisdiction, because sorting the

17

problem out would involve the continuing jurisdiction of the court and because disposition of the merits would affect the estate itself.  Id. at 265.  CoreStates Bank, N.A. v. Huls Am., Inc., 176 F.3d 187 (3d Cir. 1999), concerned an inter-creditor subordination agreement and a post-petition payment of $600,000 to one creditor alleged to be inconsistent with that agreement. Related-to jurisdiction existed because, inter alia, the subordinated debtor relinquished a much larger secured claim in exchange for the $600,000 payment and thus the resolution of dispute would have affected the confirmability of the plan.

Movants' reliance on the term "conceivable" in Pacor as setting the conceptual boundaries of related-to bankruptcy jurisdiction confuses the issues of whether a third-party dispute will inevitably or automatically affect the bankruptcy and the issue of the causal proximity between the foreign dispute and the resulting effect on the bankruptcy.  In Pacor, regardless of who won the underlying personal injury claim, nothing in the bankruptcy would change without the filing and adjudication of a separate claim for indemnification.  Conversely, in CoreStates, it was not beyond the boundaries of conceivablility that resolving the subordination dispute would have a substantial impact on the management of the bankruptcy, although it was at least equally conceivable that the creditors could have resolved it between themselves.  However, had the dispute over the

18

$600,000 payment ripened into litigation, whatever effect it would have had on the bankruptcy would have been direct and immediate, requiring no separate legal step to alter the relationships of the creditors and the financial affairs of the debtor.

Cases from other circuits follow the pattern. The A.H. Robins Co. case is the one most prominently cited by the parties. 788 F.2d 994. In addition to their status as additional named insureds under the debtor's liability policy, each of the non-debtor co-defendants had rights of indemnification against the debtor, either by operation of state law as officers of the corporation, under the corporate bylaws, and/or by express agreement. Id. at 1007. The court found that the claims against the co-defendants were related to the bankruptcy (and that the injunction was properly granted), not only because the insurance policy was a key estate asset, but because the rights of indemnification were absolute and thus a judgment against the co-defendant indemnitee would effectively bind the debtor. Id. at 1008. The debtor's status as the real party at interest, potentially bound by the result of the non-debtor litigation, plainly established a sufficient nexus between suits against the individuals and the administration of the bankrupt's estate.

Other cases have produced the same result where key employees of the debtor were sued and where there was a right of

19

indemnification.  In <u>Belcufine v. Aloe</u>, 112 F.3d 633 (3d Cir.
1997), officers of the debtor were personally liable to the
debtor's employees for pre-petition retirement and vacation
benefits by operation of Pennsylvania law.  Like the Fourth
Circuit in <u>A.H. Robins</u>, the Third Circuit found related-to
jurisdiction in the bankruptcy court based upon the debtor's
officers' right of indemnification in the debtor's corporate
bylaws.  <u>Cf.</u> <u>McCartney v. Integra Nat'l Bank North</u>, 106 F.3d 506
(3d Cir. 1997)(automatic stay extended to foreclosure action
against non-debtor corporation where bankrupt principal had
guaranteed corporation's obligation).

    Thus, to the extent hard rules may be drawn from the cases,
it seems settled that suits against principal or key-personnel
indemnitees of the debtor may be within the bankruptcy court's
related-to jurisdiction.  Of course, in addition to the right of
indemnity, key personnel also present the additional fact that
they will typically have incurred the underlying liability in the
course of acting on the debtor's behalf.  This and the fact that
the indemnity right may be a function of corporate bylaws or
statute suggest that the courts may have viewed litigation
against solvent corporate insiders as more inter-twined with the
debtors' affairs, more certainly binding on the debtor, and
therefore more directly affecting the rights of the debtor.
Where right of indemnification depends solely upon an

agreement and lacks the additional element of the non-debtor being otherwise related to the debtor, the situation arguably lies closer to the boundary of related-to jurisdiction. In A.H. Robins, one of the indemnitees did not enjoy indemnitee status by virtue of the corporate bylaws, but only under an indemnification agreement. There, however, the question of the common insurance policy created a link decisively favoring bankruptcy jurisdiction. Likewise in Halper, even though the genesis of the argument for extending bankruptcy jurisdiction was the indemnification agreements, these agreements ran between family members and insiders of a closely held company. Thus in Halper too there existed substantial facts in addition to the agreement that justified extending related-to jurisdiction over the dispute.

The Pacor panel's discussion of In re Brentano's, 27 B.R. 90 (Bankr. S.D.N.Y. 1983), has been read to support the view that a contractual indemnity rights against the debtor will bring a suit against the indemnitee within the bankruptcy court's jurisdiction. 743 F.2d at 995. In Brentano's, a non-debtor guaranteed the debtor's obligations to its landlord and the guarantor received in return from the debtor its promise to indemnify for any liability incurred on the guarantee. Distinguishing that situation from the common-law indemnity claims raised in Pacor, the Court of Appeals offered two points

21

of comparison: (1) that a judgment in favor of the landlord against the non-debtor guarantor would trigger the debtor's liability on the indemnity agreement, and (2) the landlord's claim against a guarantor of the estate would necessarily affect the landlord's status with respect to other creditors.

Pacor's discussion of Brentano was technically dictum, because in the end the Third Circuit found no related-to bankruptcy jurisdiction.  However, appellate courts applying Pacor have recognized that "the clear implication of the decision is that, if there had been a contract to indemnify, a contrary result would have been in order."  A.H. Robins, 788 F.2d at 1001. The clarity of that implication notwithstanding, cases since Pacor have failed to endorse the proposition that any contract of indemnification will support an extension of related-to jurisdiction.  As will be discussed, this failure has its own implications too, relevant to the motions at bar.

As to the vast majority of the claims that are the subject of the Court's provisional transfer orders, the movants have produced no evidence whatsoever of even a bare agreement to indemnify running between the debtors and the solvent co-defendants.  Of the Big Three, Ford Motor Company and General Motors rely only on affidavits of employees that recall one or more of the debtors as a supplier of brake parts to them. Likewise, the International Automakers proffer an employee

22

affidavit that stops well short of even suggesting that there was any promise to indemnify.  Nor does Honeywell make a showing that an explicit agreement to indemnify existed.

The Court sees no justification to take the situation of these movants outside of the rule of Pacor.  A judgment against them will not bind the debtors.  No asset of the estate is threatened nor is any re-ordering of creditors in the offing.  It is true that recovery by asbestos claimants against the movants may give rise to claims, indeed very substantial claims, against the debtors in the future.  It is at that time, when the movants appear as creditors of the estate and the facts underlying the liability are adjudicated in the context of the bankruptcy, that the Friction Products Claims will affect the estate.

The Court perceives no distinction that would require a different result based upon the movants' contribution claim as opposed to the indemnification claim.  In this context, the right of contribution is sufficiently analogous to the right of indemnification that it will not affect the estate in the manner contemplated by Pacor.  The movants have presented no argument to the contrary.  The Central District of Illinois rejected the suggestion that indemnification and contribution claims should be treated differently for the purposes of related-to jurisdiction in Nickum v. Brakegate, Ltd., 128 B.R. 648, 651 (C.D. Ill. 1991).

The claims against the movant Chrysler present a closer

23

question.  Chrysler submits purchase orders that appear to
incorporate by reference several substantial documents setting
forth standard terms and conditions to which those purchase
orders were subject.  These documents are all dated from the
1970's and are supported by the affidavit of a retired Chrysler
purchasing and procurement employee.  The terms and conditions
manuals state at relevant part:

> Seller shall defend, indemnify and protect
> Purchaser against all claims, liabilities,
> losses and damages due to injury to or death
> of any person and damage to or loss of any
> property arising out of improper performance
> or negligent work under this order or arising
> out of allegedly defective material or
> workmanship in the goods or services provided
> by this order . . . .

Of this clause, Judge Haden wrote:

> Considering Chrysler drafted the terms, which
> are extremely wide-ranging and generous to
> the drafter, which were not bargained for and
> are not present on the form presented to the
> suppliers (nor is any reference to them
> present on the form presented to Abex), the
> question whether this purported indemnity
> agreement would be determined to bind the
> suppliers is open and one not easily
> resolved.  The Court is unwilling again to
> rest subject matter jurisdiction on this
> tenuous support.

In re Asbestos, 271 B.R. at 124.

This Court is in accord.  To the extent that the validity of
an indemnity agreement is in doubt, the directness between the
third-party action and a judicial ruling that will affect the
estate is attenuated.  Moreover, as the jurisprudence shows,

24

cases in which related-to jurisdiction is founded solely on an indemnification agreement between otherwise unrelated parties are not the rule but the exception.

Even in the Brentano's case, the indemnitee was the largest unsecured creditor of the debtor. The indemnitee was also liable for eleven other guarantees it had made of the debtor's other lease obligations. 27 B.R. at 91. While the opinion is not explicit, plainly the guarantor/indemnitee was no stranger to the debtor. As noted, the Third Circuit's discussion of Brentano's was not necessary to its holding in Pacor. Even on its face, however, the Third Circuit's approval of Brentano's leaves open whether the Third Circuit would base a substantial extension of related-to jurisdiction on an indemnification clause such as the one relied upon by Chrysler.

Citing Brentano's only as a contrasting example, the Pacor panel did not disclose that the Southern District of New York had remanded the matter to the bankruptcy judge for further consideration of the jurisdictional issue. In re Brentano's, Inc., 36 B.R. 90 (S.D.N.Y. 1984). The District Court opined that exercising jurisdiction would merely substitute the landlord's claim for what otherwise would be the indemnitee's claim against the estate. In light of the fact that claims against the non-debtor guarantor had settled claims on the other eleven guarantees since the bankruptcy court had ruled, the Southern

25

District found it "especially apparent that a stay of the
[remaining state litigation] . . . is not necessary to an
efficient and effective disposition of the bankruptcy proceedings
relating to Brentano's estate." Id. at 92.

Of course Brentano's can be read as Pacor did, to hold that
an indemnification agreement may create bankruptcy jurisdiction
over the underlying liability, with the possible proviso that the
indemnitee be important to resolving the bankruptcy.  On the
other hand, that case may also be read to suggest that an
indemnity agreement alone will not suffice.  This is particularly
true where other parties are similarly situated and their
indemnity claims against the non-debtor will ultimately be
presented as unsecured claims by them against the estate.

Here Ford, General Motors, Honeywell and the International
Automakers all derive their claims against the estate from the
same products as Chrysler.  For the reasons stated, there is no
jurisdiction in this Court over these claims.  Instead, all of
these claims by movants other than Chrysler clearly must be
raised against the debtor, if at all, as unsecured claims
following the resolution of the underlying personal injury suits
against them.  Chrysler's claim that it alone is sufficiently
central to the bankruptcy is severely diluted as a result,
notwithstanding the indemnification language in its purchasing
materials.

More fundamentally, the Court does not believe that a
manufacturer may write its own invitation to the table of any of
its suppliers' bankruptcies by including a boilerplate
indemnification clause in its purchase orders.  The routine
nature of this kind of arrangement and lack of other connections
between the parties makes this too thin a thread with which to
pull Chrysler into the Federal-Mogul bankruptcy.  Indeed, as more
than one court has observed, movants' failure to actively pursue
their alleged rights of indemnity against the debtors in the past
undermines their claim now that these indemnity arrangements
should be considered an important component of the administration
of the bankruptcy.  See Garlock, 2001 WL 1669714 at *11; In re
Asbestos, 271 B.R. at 124 n.8.  Without attempting to state a
blanket rule, in this case Chrysler's purchase order
indemnification clause does not adequately distinguish its
indemnification claim from that of all of the debtors' other
customers with indemnification claims such that the claims
against Chrysler are uniquely subject to the jurisdiction of this
Court.

## 2.  Abstention and Equitable Remand

As set forth in the preceding section, the Court finds that
it lacks subject matter jurisdiction over the Friction Products
Claims.  This, of course, would stand as an adequate ground to

deny the transfer motion and to remand them to the state courts from which they were removed.  However, the Court has acknowledged that subject matter jurisdiction is at least a closer question with respect to Chrysler.  To remove any doubt, therefore, and for the sake of a complete record, the Court also finds as an alternative, independent ground that it would exercise its discretion to abstain from hearing the Friction Product Claims pursuant to 28 U.S.C. § 1334(c)(1) and remand them pursuant to 28 U.S.C. § 1452.

The Court pauses to address respondents' argument that abstention is mandatory under 28 U.S.C. § 1334(c)(2).  This statute requires that the Court abstain where certain factors are present, including that the matter is considered "non-core."  By definition, matters that are merely related to the bankruptcy proceeding are non-core proceedings.  Movants counter that personal injury claims are not subject to mandatory abstention by operation of 28 U.S.C. § 157(b)(4), which carves out from the mandatory abstention statute those proceedings made non-core by operation of 28 U.S.C. § 157(b)(2)(B).

Proceedings defined as non-core by section 157(b)(2)(B) are claims involving "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11."  Respondents reply that the Friction Products Claims

28

are not "claims against the estate," therefore not covered by
section 157(b)(2)(B), and therefore not exempted from mandatory
abstention by section 157(b)(4).

Movants respond that the Friction Products Claims are, in
effect, claims against the bankrupts' estates because really it
is "[d]ebtors' products that are on trial."  Brief of Unsecured
Creditors' Committee at 31.  Of course, movants' entire position
is premised on the idea that the debtors stand in their shoes by
virtue of the movants' right of indemnity for their asbestos
products liability.  Thus, movants' attempt to avoid mandatory
abstention must rise and fall on the same argument as their claim
of related-to jurisdiction.

Of course, the Court has already rejected the proposition
that the Friction Products Claims are related to the bankruptcy
proceeding, on the grounds that there is an insufficient link
between these claims against non-debtors and the debtors'
estates.  Even had the Court not already rejected the related-to
jurisdictional argument, the argument against mandatory
abstention under section 157 would be far from clear.
Notwithstanding the undeniable overlap between the issues, it is
a far step from finding that a claim against a non-debtor is
related to a bankruptcy proceeding to finding that a claim
against a non-debtor is actually a claim directly against the
estate for the purposes of section 157(b)(2)(B).

The Court need not resolve this finer point of statutory interpretation, however.  The Court will abstain in any event under the permissive abstention provision of 28 U.S.C. § 1334(c)(1) and remand the Friction Product Claims for equitable reasons under 28 U.S.C. § 1452(b).  Indeed, the facts of this case leave no reasonable conclusion other than that the Court should exercise its discretion to abstain and to remand. Fairness, comity and preserving the integrity of this Court's management of the bankruptcy compel this result.

The statute lists as grounds for discretionary abstention the interest of justice, comity with the state courts and respect for state law.  28 U.S.C. § 1334(c)(1).  The courts have developed a list of factors to be considered when deciding to abstain under section 1334(c)(1) and these are identical to those relevant to equitable remand.  See Balcor/Morristown Ltd. P'ship v. Vector Whippany Assocs., 181 B.R. 781, 788 (D.N.J. 1995); In re Joshua Slocum, Ltd., 109 B.R. 101, 105 (E.D. Pa. 1989).  While the list varies in the opinions, it generally includes:

> (1) the effect on the efficient administration of the bankruptcy estate;
>
> (2) the extent to which issues of state law predominate;
>
> (3) the difficulty or unsettled nature of the applicable state law;
>
> (4) whether there is an established state court proceeding on the same issues;
>
> (5) the degree of relatedness or remoteness of the

30

proceeding to the main bankruptcy case;

(6) the existence of the right to a jury trial; and

(7) the likelihood that the bankruptcy proceeding represents forum-shopping by the petitioner.

In re Donington, Karcher, Salmond, Ronan & Rainone, P.A., 194 B.R. 750, 759-60 (D.N.J. 1996); Balcor, 181 B.R. at 793; In re Foster, 105 B.R. 746, 749-50 (Bankr. M.D. Ga. 1989) (listing a total of 12 factors).

It requires scant discussion to perceive that most if not all of these factors weigh very heavily in favor of abstention and remand. Previously stated, there is no principled end to the movants' argument that would prevent centralizing virtually all Friction Product asbestos litigation, nationwide, in this bankruptcy. Indeed, already large numbers of other manufacturers and other users of Friction Products have followed the movants' lead, removed claims pending against them in state courts, and filed motions to transfer them here. This Court is convinced that transfer of the movants' claims would be a disaster for the orderly management of this chapter 11 proceeding.

Moreover, looking pragmatically at the situation before it, the Court must recognize that there is no way that the benefit to the administration of the estate from unifying all of the Friction Products Claims in this chapter 11 case can ever be fully realized. First, while many Friction Products defendants have moved to transfer the claims against them to this Court,

31

many have not.  Thus, the problem of indemnification claims being raised against the estate will always be a factor and, in all likelihood, a major factor in the reorganization.

Second, as movants themselves have complained, a number of courts around the country were either not bound by this Court's provisional transfer order as a function of timing, or failed to respect this Court's Order.  Many of these cases have already been remanded to state court, further undermining the benefit to be gained from continuing to entertain those Friction Products Claims still subject to the Court's Provisional Order.  Finally, in Texas and perhaps elsewhere, Friction Products Claimants have dismissed the debtor from their state actions, with prejudice.  This, the Fifth Circuit holds, cuts off any right of indemnification against the debtor under Texas law.  Garlock, 2001 WL 1669714.

Thus the reality of timing and the actions of other courts have made illusory much of the gain in efficiency and consistency of adjudication postulated by movants as grounds for the relief they seek.  Whatever is decided in this Court, the movants will be forced to litigate claims based upon Federal-Mogul friction products in diverse jurisdictions.  The estate will still encounter indemnification claims from former co-defendants against whom state-court judgments have been rendered.  To the extent this result comes to pass, efficiency will be lost, not

32

gained, by entertaining the Friction Products Claims in this Court, and the risk of inconsistent rulings exacerbated.

The Court acknowledges that movants postulate a plausible method for dealing with common issues of causation by means of common-issue summary judgment and trials under Federal Rule of Civil Procedure 42. But, setting aside for the moment whether this method adequately protects the constitutional and procedural rights of the personal injury claimants, whether it would succeed in streamlining the adjudication of claims is hotly and legitimately debated. Movants could well fail to establish a lack of genuine dispute over medical causation with respect to Friction Products. Depending on what the scientific evidence shows, it may well appear that causation issues are not sufficiently common between litigants to permit Rule 42 trials.

These issues must be either confronted or successfully negotiated with respect to the claims directly against the debtors. Any allure in movants' scheme depends on their ability successfully to avoid these pitfalls with respect to the transferred Friction Products Claims. This success is, to say the least, not assured. Yet, should movants fail to keep the proceedings to their script, all that the transfer would have accomplished would be an exponential increase in the already challenging task before the Court and the parties. If one adds to the mix all of the other would-be Friction Products

33

transferees awaiting the outcome of this motion, the loom of chaos is palpable.

Nor is the transfer of Friction Products Claims cost-free, even assuming movants are successful in litigating common issues of causation and science. Because these cases have been removed, by definition a state court proceeding had previously been commenced. Many are well advanced. While sorting out the commercial interests of creditors and the reorganization of these corporate debtors, the Court will not forget that each of the tens of thousands of claims before it involves an individual with a personal injury claim. Respondents have argued convincingly that a appreciable number of these persons are presently very sick and some are terminally ill. While this Court intends to proceed with dispatch, it would be vain to conclude that claims will be resolved much more quickly here than in already-filed state court actions.

To give movants the benefit of proceeding under the bankruptcy code at the expense of these litigants would clearly pose hardship in individual cases. Some will expire who otherwise would have seen their cases tried. In some jurisdictions, rights will die with these disappointed litigants. As to all, solvent defendants will be missing from the ongoing state proceedings and the plaintiff's choice of forum will be lost as to them. Where, as here, the resulting benefit is so

34

equivocal, the balance must tilt sharply toward abstention and remand.

Others of the factors are quickly analyzed.  State law obviously predominates.  The "degree of relatedness or remoteness" of the state proceeding has already been discussed in the preceding section of this Opinion.  It suffices to say that, even if related-to jurisdiction existed over the Friction Product Claims, the degree of remoteness between them and the main bankruptcy case is substantial.  Obviously, Friction Products claimants have a right to a jury trial of triable issues of fact.

Finally, the possibility that the movants are forum shopping is too obvious to be belabored.  Some jurisdictions have been notoriously unfavorable to asbestos defendants.  Movants understandably believe that they would gain an advantage if the claims against them were centralized in a federal court and they could gain the benefit of a channeling injunction under 11 U.S.C. § 524.  The Court expresses no disapproval of these desires. Indeed, movants argue that, were they to bear fruit, the estate might also be the beneficiary.[4]  These benefits of a change in forum do not, however, justify the affront to state and federal

_____

[4]   The Court will not repeat the several obstacles that lie between these aspirations and reality.  Assuming that centralizing of claims and extending the benefits of section 524 is legally possible, whether it may be accomplished for a sufficient percentage of the pending Friction Product Claims to constitute a real benefit to the estate is highly problematic from a practical standpoint.

comity inherent in the removal of solvent defendants from ongoing state lawsuits into a federal bankruptcy.

One party has argued that equitable remand is impermissible without a case-by-case inquiry into the facts of each case. While the Court has no quarrel with this as a general proposition, the parties well know that such an inquiry would be prohibitively time-consuming here. Yet it is patently unfair for the movants to remove claims against them en masse and then claim that a patently impossible case-by-case procedure is mandatory before the claims may be remanded for equitable reasons. As the Friction Products Claims have been explained to the Court by counsel, they contain sufficient common features that will permit the application of the equitable factors discussed here to be applied to each of them. It lessens the vitality of their own premise for movants to argue otherwise.

Thus the interests of justice and comity weigh heavily in favor of abstention and remand of the Friction Products Claims. Respect for state law is perhaps less implicated here, because a bankruptcy court must apply state law to claims before it in any event and the state law questions posed by the Friction Products Claims will not be especially complex or difficult. Nonetheless, for the reasons stated, the Court finds that the other factors weigh so strongly that the Court will use its discretion to abstain from exercising jurisdiction over the Friction Products

36

claims and they will be remanded, pursuant to 28 U.S.C. §§ 1334(c)(1) and 1452(b).

Recognizing that it is rare for a District Court in one state to remand a matter to the state courts of another state, (let alone to the courts of all of the different states), and although the parties did not raise this issue, the Court will address this last aspect of its Order. First, it appears plain to the Court that the question is really just one of inter-jurisdictional bookkeeping. Either this Court will remand directly to the states, or it will vacate its provisional transfer Order and send the cases back to the several districts from which they came. If this Court were to choose the latter course, each of the other districts would then be faced with the task of either applying the ruling of this Court and issuing an order of remand, or addressing for themselves whether to remand or abstain.

The logic of the statutory structure suggests that this latter course, with its attendant waste of judicial energy, is unnecessary. It is common ground that 28 U.S.C. § 157 permits transfer between districts of personal injury claims related to a bankruptcy case.[5] It is fundamental that this Court has the

---

[5]    Prior to the Court's ruling, respondents may well have wished to argue that this Court lacked power to transfer the claims to itself out of other districts. Having won the day in this forum, the Court presumes that this wish of respondents has abated. Of course, movants cannot argue that this Court lacks

37

right, indeed the duty, to inquire into its subject matter
jurisdiction at any time it appears in doubt.  Finally, 28 U.S.C.
§ 1452 grants the Court the discretion to remand, without
specifying to where.  Yet, remand, by definition, must return the
remanded matter to the court from which it was removed.
Petrofsky v. ARA Group, Inc., 878 F. Supp. 85 (S.D. Tex. 1995).

It is also true, however, that section 1452 begins with the
phrase "[t]he court to which such claim or cause of action is
removed" has the power of remand.  Of course, this Court stands
in the shoes of the transferor district for all other purposes;
it is not clear what interest would be served by excepting the
power of remand from the others conferred by the transfer.
Moreover, ex hypothesi, this Court and all federal courts lack
subject matter jurisdiction over the claims at issue.  It would
be nonsensical for this court, lacking subject matter
jurisdiction, to transfer the matter back to the transferor
districts, which also lack subject matter jurisdiction, so that
they may be remanded from the local federal courthouse.  Finally,
limiting the power of remand only to the original district of
removal would create an imbalance between the flexible powers of
transferor and transferee courts and present all too tempting a
motive for potential forum shoppers.

_____

the power to do that which they were previously successful in
persuading this Court to do.

38

The Court has been informed that many state court systems maintain in extremis dockets of Friction Products and other asbestos claims for plaintiffs who may die before trial if their cases are not reached promptly.  It would ill-behoove the federal courts, having decided that both that jurisdiction is lacking and that equitable factors require remand, to delay any further these in extremis litigants by a pointless additional round of re-transfer to the several districts and further proceedings on remand.  This Court is satisfied that its inherent powers, those "necessary to the exercise of all others," In re Prudential Sales Practices Litig. Agent Actions, ___ F.3d ___, 2002 WL 90847 (3d Cir., Jan. 24, 2002)(quoting Fellheimer, Eichen & Braverman, P. C., v. Charter Technologies, Inc., 57 F.3d 1215, 1224 (3d Cir. 1995))(further quotations omitted), resolve any lingering questions in favor of substance over form and in favor of immediate relief over punctilio.  Therefore, the Court has remanded all of the Friction Products Claims directly to the several state courts from which they were removed.

## CONCLUSION

For the reasons set forth above, the Court finds that it lacks subject matter jurisdiction over the Friction Products Claims pending before it pursuant to the Court's Provisional Transfer Orders.  In the alternative, the Court will exercise its

discretion to abstain from exercising jurisdiction over the Friction Products Claims and will remand them to the state courts from which they were removed.  The motion to finally transfer these claims to this Court will be denied.

The Order corresponding to the rulings of this Opinion has already been issued.

Dated: February 15, 2002


ALFRED M. WOLIN, U.S.D.J.

40

## IN RE: FEDERAL-MOGUL GLOBAL, INC.
### Case Numbers

| | | | |
|---|---|---|---|
| 01-10578 | 01-10643 | 01-10700 | 01-10750 |
| 01-10580 | 01-10644 | 01-10701 | 01-10751 |
| 01-10582 | 01-10646 | 01-10702 | 01-10752 |
| 01-10585 | 01-10647 | 01-10703 | 01-10753 |
| 01-10586 | 01-10649 | 01-10704 | 01-10754 |
| 01-10587 | 01-10650 | 01-10705 | 01-10755 |
| 01-10589 | 01-10651 | 01-10706 | 01-10756 |
| 01-10591 | 01-10652 | 01-10707 | 01-10757 |
| 01-10593 | 01-10653 | 01-10708 | 01-10758 |
| 01-10594 | 01-10654 | 01-10710 | 01-10759 |
| 01-10596 | 01-10655 | 01-10711 | 01-10760 |
| 01-10598 | 01-10656 | 01-10712 | 01-10761 |
| 01-10599 | 01-10657 | 01-10713 | 01-10762 |
| 01-10600 | 01-10658 | 01-10714 | 01-10763 |
| 01-10601 | 01-10659 | 01-10715 | 01-10764 |
| 01-10603 | 01-10660 | 01-10716 | 01-10765 |
| 01-10604 | 01-10661 | 01-10717 | 01-10766 |
| 01-10605 | 01-10662 | 01-10718 | 01-10767 |
| 01-10606 | 01-10664 | 01-10719 | 01-10768 |
| 01-10608 | 01-10665 | 01-10721 | 01-10769 |
| 01-10610 | 01-10666 | 01-10722 | 01-10770 |
| 01-10611 | 01-10668 | 01-10723 | 01-10771 |
| 01-10613 | 01-10669 | 01-01724 | 01-10772 |
| 01-10614 | 01-10672 | 01-10726 | 01-10773 |
| 01-10615 | 01-10673 | 01-10727 | 01-10774 |
| 01-10617 | 01-10675 | 01-10728 | |
| 01-10618 | 01-10682 | 01-10729 | |
| 01-10619 | 01-10683 | 01-10730 | |
| 01-10620 | 01-10684 | 01-10731 | |
| 01-10621 | 01-10685 | 01-10732 | |
| 01-10622 | 01-10686 | 01-10733 | |
| 01-10623 | 01-10687 | 01-10734 | |
| 01-10625 | 01-10688 | 01-10736 | |
| 01-10626 | 01-10689 | 01-10737 | |
| 01-10627 | 01-10690 | 01-10739 | |
| 01-10629 | 01-10691 | 01-10741 | |
| 01-10630 | 01-10692 | 01-10742 | |
| 01-10632 | 01-10693 | 01-10743 | |
| 01-10633 | 01-10694 | 01-10744 | |
| 01-10634 | 01-10695 | 01-10745 | |
| 01-10637 | 01-10696 | 01-10746 | |
| 01-10638 | 01-10697 | 01-10747 | |
| 01-10640 | 01-10698 | 01-10748 | |
| 01-10641 | 01-10699 | 01-10749 | |

41

Exhibit E

# GIBSON, McASKILL & CROSBY, LLP
### ATTORNEYS AT LAW
69 DELAWARE AVENUE, SUITE 900
BUFFALO, NEW YORK 14202-3866
TELEPHONE: (716) 856-4200
FACSIMILE: (716) 856-4013

GEORGE M. GIBSON
BRIAN P. CROSBY
ROGER B. SIMON
CHARLES E. MILCH (NY & FL)
PETER J. BREVORKA (NY, FL & NC)
R. DONALD FINN
VICTOR ALAN OLIVERJ
ROBERT E. SCOTT
MARK SPITLER
KATHRYN A. JACKSON
CHARLES S. DESMOND, II
KATHLEEN M. SWEET (NY & MA)
TERRANCE P. FLYNN
C. CHRISTOPHER BRIDGE

JAMES S. McASKILL
(1929-1995)

NORMAN B. VITI, JR.
TIMOTHY J. GRABER (NY & NC)
ROBERT G. SCUMACI (NY & NJ)
RUTHANNE WANNOP
SALLY J. BROAD
PAULETTE E. ROSS
ROBERT J. MULLINS, II
MELISSA L. ZITTEL
KERRY M. DIGGIN (NY & CT)

ELIZABETH M. BERGEN
Of Counsel

CAROL WHITE GIBSON
Special Counsel.

February 13, 2002

**Hand Deliver**
Hon. Richard J. Arcara
U.S. District Court Judge
Western District of New York
68 Court Street, Part II
Buffalo, New York 14202

Re:   **Avery v. Ford Motor Company, et al, 01CV0849**
**Bailey v. Ford Motor Company, et al, 01CV0859**
**Barrett v. General Motors Corporation, et al, 01CV0854**
**Besanceney v. Ford Motor Company, et al, 01CV0864**
**Dettman v. Ford Motor Company, et al, 01CV0925**
**DiSanto v. Ford Motor Company, et al, 01CV0852**
**Freese v. Ford Motor Company, et al, 01CV0865**
**Gittens v. Ford Motor Company, et al, 01CV0847**
**Gresco v. Ford Motor Company, et al, 01CV0926**
**Hand v. General Motors Corporation, et al, 01CV0851**
**Hill v. General Motors Corporation, et al, 01CV0862**
**Holmes v. Ford Motor Company, et al, 01CV0858**
**Kelly v. General Motors Corporation, et al, 01CV0861**
**Laribee v. Ford Motor Company, et al, 01CV0848**
**Launt v. Ford Motor Company, et al, 01CV0846**
**Leach v. Ford Motor Company, et al, 01CV0866**
**Merritt v. Ford Motor Company, et al, 01CV0853**
**Morrow v. Ford Motor Company, et al, 01CV0867**
**Nowak v. Ford Motor Company, et al, 01CV0928**
**Ozga v. Ford Motor Company, et al, 01CV0874**
**Palaszynski v. Ford Motor Company, et al, 01CV0873**

FEB 1 5 2002

Hon. Richard J. Arcara
December 14, 2001
Page Two

**Penman v. Ford Motor Company, et al, 01CV0929**
**Polito v. Ford Motor Company, et al, 01CV0857**
**Reimondo v. Ford Motor Company, et al, 01CV0927**
**Scalzo v. Ford Motor Company, et al, 01CV0856**
**Schell v. Ford Motor Company, et al, 01CV0863**
**Schiess v. Ford Motor Company, et al, 01CV0872**
**Smith v. Ford Motor Company, et al, 01CV0850**
**Suhanov v. Ford Motor Company, et al, 01CV0855**
**Urwin v. Ford Motor Company, et al, 01CV0860**
**Winter v. Ford Motor Company, et al, 01CV0871**

Dear Justice Arcara:

Enclosed please find a copy of the Third Circuit's Temporary Stay Order, dated February 11, 2002, in the above-referenced matters.

If you have any questions, please feel free to contact me. Thank you.

Respectfully yours,

Terrance P. Flynn, Esq.
for GIBSON, McASKILL & CROSBY

/ds
Encs

cc(w/enc): **Hand Deliver**
Hon. Magistrate Judge Leslie G. Foschio

cc(w/enc): Regular Mail
Weitz & Luxenberg, P.C.
Lipsitz & Ponterio, LLC
Faraci & Lange, LLP
Ziff, Weiermiller & Hayden
Stephen C. Roe, Esq.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 02-1426

In Re: Federal-Mogul Global, Inc., et al.

DaimlerChrysler Corporation, Ford Motor
Company and General Motors Corporation,
Appellants

(DC No. 01-10578 (AMW))

Present:     Scirica, Circuit Judge

1) Emergency Motion for Stay Pending Appeal by Appellants

### ORDER

The foregoing Motion for stay is granted temporarily in order for the Court to receive responses to the motion from opposing counsel and for full consideration of the matter by a three judge panel. Appellees' shall file written responses to the motion for stay on or before 10:00 a.m. Friday, February 15, 2002.

For the Court,

C. Scirica
Clerk

Dated: FEB 11 2002
PSc/cc: CL, EW, EL
        KM, AR, PK
        ME, DK, WW
        RP, JSC

A TRUE COPY
ACTING CLERK

Exhibit F

# SMITH, MURPHY & SCHOEPPERLE, LLP

### ATTORNEYS AT LAW

RICHARD K. SCHOEPPERLE
FRANK G. GODSON
PETER M. COLLARD
LYNN D. GATES
BONNIE T. O'CONNOR
DENNIS P. MESCALL
STEPHEN P. BROOKS
MICHAEL DIGIACOMO

786 Ellicott Square Building
Buffalo, New York 14203-2580
Telephone: (716) 852-1544
Facsimile: (716) 852-3559

CLAYTON M. SMITH (1884-1967)
ESMOND D. MURPHY (1903-1960)

DANIEL H. DILLON
Special Counsel

November 13, 2001

Honorable Raymond E. Cornelius
Supreme Court Justice
545 Hall of Justice
Rochester, New York 14614

Re:  Asbestos Litigation
     New York State Seventh Judicial District

     Thomas C. Scalzo (by Joyce A. Scalzo)
     Monroe County Index No. 7503/01
     Our File No.  312.1769

Dear Justice Cornelius:

     Enclosed is a date-stamped copy of the Scheduling Order in
the above matter.  This Order was signed by Your Honor on
November 23, 2001, and was filed in the Office of the Monroe
County Clerk on December 5, 2001.

     By copy of this letter, I am serving a date-stamped copy of
this Order on plaintiff's attorney and on all defense counsel of
whom I am aware.

     Thank you very much.

                         Very truly yours,

                         SMITH, MURPHY & SCHOEPPERLE, LLP

                         Bonnie T. O'Connor

BTO/
Enclosure

cc:  Lipsitz & Ponterio, LLC
        Attention: Neil J. McKinnon, Esq.

-2-

Anderson Kill & Olick, P.C.
    Attention: Craig Blau, Esq.
Coblence & Warner, P.C.
    Attention: Timothy M. McCann, Esq.
Colucci & Gallagher, P.C.
Damon & Morey
Donohue, Sabo, Varley & Armstrong, P.C.
Gibson, McAskill & Crosby
Harris, Beach & Wilcox
    Attention: Cynthia Weiss Antonucci, Esq.
Harris, Beach & Wilcox
    Attention: Michael Masino, Esq.
Phillips, Lytle, Hitchcock, Blaine & Huber
    Attention: James W. Whitcomb, Esq.
Rodgers & Coppola
Sullivan & Oliverio
Trevett, Lenweaver & VanStrydonck, P.C.
Ward, Norris, Heller & Reidy, LLP
Williams & Harris

STATE OF NEW YORK
SUPREME COURT     SEVENTH JUDICIAL DISTRICT

---

In Re:    Seventh Judicial District
        Asbestos Litigation

**SEVENTH JUDICIAL
DISTRICT ASBESTOS
LITIGATION**

---

This Document Applies to:

STATE OF NEW YORK
SUPREME COURT     COUNTY OF MONROE

**SCHEDULING ORDER**

---

JOYCE A. SCALZO, Personal Representative of the Estate
of THOMAS C. SCALZO, Deceased, and Individually as the
Surviving Spouse of THOMAS C. SCALZO,

                              Plaintiff,

Monroe County
Index No. 7503/01

v.

ALLIED SIGNAL, INC., Individually and as Successor in
Interest to ALLIED CORPORATION, as Successor in
Interest to THE BENDIX CORPORATION, et al.,

                              Defendants.

---

**Joyce A. Scalzo, Individually and as
Personal Representative of the Estate of Thomas C. Scalzo**

**DISCOVERY SCHEDULING ORDER**

| **EVENT** | **DATE** |
|---|---|
| 1.   Plaintiffs to respond to defendants' Seventh Judicial District asbestos litigation interrogatories and notice to produce; and to submit executed medical and employment authorizations. | December 2, 2001 |
| 2.   Defendants to respond to plaintiffs' short form interrogatories and notice for discovery and inspection of documents. | 60 days after service |

| | | |
|---|---|---|
| 3. | Depositions of plaintiff. | Up to jury selection |
| 4. | Last day for defendants to file third-party actions. | On or before April 14, 2002 |
| 5. | Plaintiffs to serve expert disclosure pursuant to CPLR §3101 and all pathology and radiology films in plaintiffs' possession to be turned over to defendants. | On or before June 3, 2002 |
| 6. | Plaintiffs to disclose product identification witnesses. | On or before May 20, 2002 |
| 7. | Defendants to serve product identification letters. | On or before June 21, 2002 |
| 8. | Plaintiffs to file Note of Issue and Certificate of Readiness for Trial, settlement demands and serve trial exhibits, witness lists and deposition designations. | July 3, 2002 |
| 9. | Plaintiffs to respond to defendants' requests for product identification. | On or before July 5, 2002 |
| 10. | Plaintiffs and defendants to serve all motions in limine and/or summary judgment motions. | On or before August 2, 2002 |
| 11. | Defendants to serve expert disclosure pursuant to CPLR §3101 and serve trial witness and exhibit lists. | On or before August 23, 2002 |
| 12. | Summary judgment and motions in limine to be argued before the Court. | *within 30 days* *To be set by Court after filing of Note of Issue* |

2

13.   Depositions of estate representative, surviving          Up to jury
      spouse, non-parties, defendants and third-party          selection
      defendants.

14.   Jury selection.                                          September 27,
                                                               2002

15.   Trial.                                                   October 1, 2002

ORDER signed this _23_ day of _November_, 2001.

ENTER:

HON. RAYMOND E. CORNELIUS, J.S.C.

3