MDL 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 1 2 2002

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**IN RE ASBESTOS LIABILITY LITIGATION**          **MDL DOCKET NO. 875**
**(N0. VI) & (CTO-210)**

### PLAINTIFFS' MOTION TO VACATE THE CONDITIONAL TRANSFER ORDER AND TO REMAND

Come now the plaintiffs in KYE 7:01-373 and KYE 7:01-402, (see attached schedule), and hereby move this Panel, pursuant to 28 U.S.C. § 1452(b), to vacate the conditional transfer order dated February 8, 2002, and to remand these actions to the Circuit Court of Magoffin County, Kentucky, both on equitable grounds and/or on the ground of lack of jurisdiction. Remand is appropriate because this Panel's retention of the proceedings at bar will result in (1) the duplicative and uneconomical abuse of judicial resources; (2) delay and substantial prejudice to the plaintiff; (3) *forum non conveniens* issues, to the extent that the entire action of this bifurcated proceeding should be tried in the same court, to (4) lessen the possibility of inconsistent results; in addition to the fact that (5) questions of state law predominate; thus raising the issue of (6) comity, and the fact that (7) the state court is better able to resolve questions of state law.

This Panel lacks jurisdiction because the proceeding at bar are not cases "under title 11," as contemplated by 28 U.S.C. § 1334(a), nor are these proceedings "arising under title 11," as

1


OFFICIAL FILE COPY
IMAGED MAR 1 4 '02

contemplated by 28 U.S.C. § 1334(b).  At best, the proceedings at bar may be remotely "related to" a case under title 11," as contemplated by 28 U.S.C. § 1334(b), but not to the extent that they are "related to" the Federal-Mogul bankruptcy for purposes of subject matter jurisdiction.

Remand  is also appropriate because these cases are not so inextricably intertwined  that the Panel should entertain jurisdiction in light of the equitable grounds which exist for remand, and in light of the discretion the Panel may take in abstaining from jurisdiction pursuant to 28 U.S.C. § 1334(c)(1).

In addition, pursuant to 28 U.S.C. § 1334(c)(2), plaintiff hereby moves the Panel to abstain from entertaining jurisdiction over the proceedings at bar because:  (1) these proceedings are  based on claims governed by state law; (2) these proceedings could not have been commenced in this Panel absent alleged jurisdiction under 28 U.S.C. § 1334; (3) these actions have already been commenced in the appropriate forum of Magoffin County Circuit Court, (4) these proceedings can be adjudicated in Circuit Court in a timely manner, and (5) these proceedings are  non-core proceedings.

Respectfully submitted,

Counsel for Plaintiffs,

John E. Sutter, Esquire
Robert H. Miller, II, Esquire
THE SUTTER LAW FIRM, PLLC
1598 Kanawha Boulevard, East
Charleston, West Virginia 25311

2

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 1 2 2002

FILED
CLERK'S OFFICE

### BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**IN RE ASBESTOS LIABILITY LITIGATION**　　　　　**MDL DOCKET NO. 875**
**(N0. VI) & (CTO-210)**

### PLAINTIFFS' JOINT MEMORANDUM OF LAW IN SUPPORT
### OF THEIR MOTION TO VACATE AND REMAND

### INTRODUCTION

On behalf of themselves and their decedent's wrongful death beneficiaries, the plaintiffs

in KYE 7:01-373 and KYE 7:01-402, (see attached schedule), instituted these actions in the Circuit

Court of Magoffin County, Kentucky.  These actions were filed on December 2, 1999, to recover

damages incurred as a result of the decedents' development of asbestos related illness and disability,

and death from an asbestos related illness or disease,  contracted as a result of the decedent's

occupational exposure to asbestos and/or asbestos-containing materials mined, manufactured,

processed, imported, converted, compounded and/or sold by the defendants, including

DaimlerChrysler Corporation, Ford Motor Company, General Motors Corporation, (hereinafter

sometimes referred to as the "Automakers" or "Removing Defendants"), and Honeywell

International, Inc., f/k/a Allied Signal, Inc. (hereinafter referred to as "Allied" and  included in

"Removing Defendants").

On December 7, 2001, pursuant to 28 U.S.C. section 1452(a), the Automakers  removed the

plaintiffs' claims against them from state court to U.S. District Court.  On December 27, 2001, pursuant to 28 U.S.C. section 1452(a), Allied also removed the plaintiffs' claims against it from state court to U.S. District Court.  These claims were then provisionally transferred to the U.S. Bankruptcy Court for the District of Delaware, where the bankruptcy of Federal-Mogul Global, Inc., (hereinafter, "Federal-Mogul") is pending.  The removals are based on the allegation that, as a result of Federal-Mogul's filing for Chapter 11 bankruptcy relief on October 1, 2001, the bankruptcy court in Delaware has jurisdiction over these cases pursuant to 28 U.S.C. section 1334) (b).  (See the Automakers' and Allied's Notice of Removal and Motion to Transfer.)

On February 8, 2002, a conditional transfer order transferred these plaintiffs' claims against the Automakers and Allied to this panel.  Plaintiffs filed their notice of opposition to the conditional transfer order on February 22, 2002.  Plaintiffs oppose transfer because no federal court has jurisdiction over these claims, and these claims should be remanded to state court.

Also on February 8, 2002, the Honorable Alfred M. Wolin, U.S.D.J., entered an order which denied  the removing defendants' motions to transfer these "friction products claims," and which remanded these claims back to state court.  Because plaintiffs' claims against the Automakers and Allied are "friction product claims," this order applies to these plaintiffs' claims against the Automakers and Allied conditionally transferred to this panel on February 8, 2002.  (A copy of Judge Wolin's order is attached hereto, and  marked as Plaintiffs' Exhibit 1).

On motion of the removing defendants, the Third Circuit Court of Appeals has stayed Judge Wolin's order.  Plaintiffs filed their opposition to the stay on February, 15, 2002, and the removing defendants had  until February 28, 2002, to file their response.  Because the deadline for filing a notice of opposition in these cases expired before the Third Circuit's decision concerning Judge

2

Wolin's remand, it was necessary for plaintiffs to file their notice of opposition.  Because the Third

Circuit has not yet rendered a decision concerning Judge Wolin's order, it is necessary for the

plaintiffs to file their motion to vacate and this supporting brief.

**ISSUE I**

**DOES FEDERAL COURT HAVE SUBJECT MATTER JURISDICTION OVER**

**THESE CLAIMS?**

**ARGUMENT I**

**THE PLAINTIFFS' CLAIMS AGAINST THE REMOVING DEFENDANTS ARE**

**NOT "RELATED-TO" FEDERAL-MOGUL'S BANKRUPTCY, AND SHOULD BE**

**REMANDED TO STATE COURT.**

**DISCUSSION**

General principles of removal and remand apply to bankruptcy, as well as non-bankruptcy

actions.  *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 128 (1995).  Under the general

removal statute, defendants may remove any case of which the district courts have original

jurisdiction.  28 U.S.C. section 1441(a).  However, removal statutes must be **construed strictly**

**against removal.** *Mulcahey v. Columbia Organic Chem. Co., Inc.,* 29 F.2f 148, 151 (4th Cir. 1994).

(emphasis added).  The party seeking to remove a case to federal court has the burden of establishing

federal jurisdiction.  *Id.*  If federal jurisdiction is doubtful, remand is necessary.  *Mulcahey.*

The Automakers and Allied have removed the plaintiffs' claims under 28 U.S.C. section

1452(a), based on the contention that this Court has jurisdiction under 28 U.S.C. section 1334.  In

relevant part, 28 U.S.C. section 1334(b) provides that "[t]he district courts shall have original but

not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to

3

cases under title 11." 28 U.S.C. section 1334(b).  Thus, a court has jurisdiction under section

1334(b), only if the proceeding:

      1.     Arises under Title 11;

      2.     Is a proceeding "arising in" a case under Title 11; or,

      3.     Is a proceeding "related to" a case under Title 11.

*Loomis Electric. Inc. v. Lucerne  Products. Inc.*, 225 B.R. 381, 385 (N.D. Ohio, 1998), citing. *In re*

*Wolverine Radio Co.,* 930 F.2d 1132, 1141 (6th Cir. 1991).

"A proceeding arising under or arising in a case under Title 11 is a  'core-proceeding.'  A

proceeding not arising under or in a case under Title 11, but that is 'related to'  a case under Title 11

is a 'non-core proceeding.'" *Loomis,* supra., at 385, citing, 15 *Collier on  Bankruptcy* section

3.01(2)(b)(ii) (15th ed. 1996).

A proceeding is "related to" a bankruptcy if "the outcome of the proceeding could  conceivably

have any effect on the estate being administered in bankruptcy." *Robinson v. Michigan Consolidated*

*Gas Co.*, 918 F.2d 579, 583-584 (6th Cir. 1990), citing. *Pacor v. Higgins*, 743 F.2d  984. 994 (3rd

Cir. 1984).  The Sixth Circuit has adopted the test enunciated in *Pacor* to determine if a case is

"related to" a  bankruptcy. *In re: Dow Corning v. Lindsey,* 86 F.3d (1996); *Robinson v. Mich.*

*Consol. Gas Co., Inc.,* 918 F.2d 579 (6th Cir. 1990).

While the language of the test for "related-to" jurisdiction is sweeping on its face, courts,

when defining the scope of this type of jurisdiction, have found that "related  to" jurisdiction **cannot**

**be limitless."** *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S.Ct.1493, 1499, 131 L.Ed.2d 403

(1995). (emphasis added).   In *Celotex,* the Supreme Court said, the "related-to" jurisdictional test

is broad, but

> [o]n the other hand, the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of Section 1471(b). (now Section 1334(b)). Judicial economy itself does not justify federal jurisdiction. See generally *Aldinger v. Howard*, 427 U.S. 1, 15 49 L. Ed. 276, 96 S. Ct. 2413 (1976). "Jurisdiction over nonbankruptcy controversies with third parties who are otherwise strangers to the civil proceeding and to the parent bankruptcy does not exist." *In re Haug*, 19 Bankr. 223, 224-25 (Bankr. D. Ore. 1982). *See also In re McConaghy*, 15 Bankr. 480, 481 (Bankr. E.D. Va, 1981) (Bankruptcy court lacks jurisdiction to decide disputes in which the estate of the debtor has no interest).

*Pacor*, 743 F. 3d at 994.

"[R]elatedness does not lie where the dispute while 'conceivably' related to the bankruptcy estate, is so only remotely." *Robinson, supra.*, at 584. "[A]n extremely tenuous connection to the estate would not satisfy the jurisdictional requirement." *In re Salem Mortgage Co.*, 783 F.2d 626, 634 (6th Cir. 1986). Indeed, "the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section 1334(b)." *In re Dow Corning Corp.*, 86 F.3d 482, 489 (6th Cir. 1996), quoting, *Pacor*, supra., at 994.

In *Pacor*, the Higgins, husband and wife, brought a products liability action against Philadelphia Asbestos Co., trading as Pacor, in state court. Pacor impleaded Johns-Manville Corporation (J-M) as the alleged manufacturer of the asbestos products Pacor distributed. When J-M filed for bankruptcy protection, Pacor removed both the Higgins/Pacor and the Pacor/J-M third-party claim. The district court remanded the actions to state court, and Pacor appealed.

The Third Circuit affirmed the remand, holding the Higgins/Pacor action was not related to the J-M bankruptcy, finding "[a]t best, it is a mere precursor to the potential third party claim for

5

indemnification by Pacor against Manville." *Id.* at 995. The *Pacor* court suggested that the outcome might have been different had there been an **"explicit indemnification agreement" between Pacor and J-M  or if Pacor had been J-M's "contractual guarantor."** Id. (emphasis added).

The Fourth Circuit, relying on this implication of *Pacor*, has found jurisdiction related to bankruptcy under the **"unusual circumstances" where "there is such an identify between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party will in effect be a judgment or finding against the debtor."** *A.H. Robins v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986).  Based on this premise, the Fourth Circuit determined that actions against officers or employees entitled to indemnification under the bankrupt employer's insurance, corporate bylaws, and the governing corporate statute, were related to the bankruptcy. *Id.* at 1001-02, 1007.

In these cases, all of the Removing Defendants, are solvent.  In these cases, Federal-Mogul was not sued by any of the plaintiffs in any of the removed actions.  In these cases, the Removing Defendants have not alleged, and the plaintiffs believe, cannot allege or prove,  that any contribution or indemnification agreements exist between Federal-Mogul and any of the Automakers or Allied. No such claims have been made, and this litigation has been pending in state court since 1999. Therefore, there is no basis to support the contention that the plaintiffs' asbestos claims against the Automakers and Allied are "related to" the bankruptcy petition of Federal-Mogul. The Removing Defendants certainly cannot argue that, in these cases, "unusual circumstances" exist where "there is such an identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party will in effect be a judgment or finding against the debtor." Without such a circumstance, "related-to" jurisdiction does not, and

cannot exist. *Robins; Pacor.*

The Removing Defendants cite *In re Dow Corning Corp.*, 1995 WL 495978 (Bankr. E.D. Aug. 9, 1995) in support of their removal of these cases from state court. The *Dow Corning* decision rendered by the Third Circuit, in which the court found "related-to" jurisdiction, does not apply to these cases. In *Dow Corning*, the non-debtor defendants had claims against the debtor defendant for contribution and indemnification, which had not yet been asserted, but were certainly going to be asserted against Dow Corning. The court also noted that Dow Corning had potential claims against the non-debtor defendants under theories of joint and several liability.

In *Dow Corning*, the "unusual circumstances," discussed in *A. H. Robins*, where "there is such an identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant. . . , " were present. The court said, quoting *A.H. Robins,* that such a relationship may exist where **codefendant liability is "directly attributable to the debtor.** " Because of existing cross-claims between defendants, and because of the future filing of cross-claims against the debtor by the non-debtor defendants, the court found the "**unusual circumstances**" which support "related-to" jurisdiction. *Dow Corning.*

In these cases, there are no agreements for contribution or indemnification between the debtor, Federal-Mogul, and the Removing Defendants, and no such claims have been filed. Nor have the Removing Defendants indicated that they will file such claims in the future. Without claims for contribution and indemnification in these cases, the finding of "related-to" jurisdiction in *Dow Corning* does not apply.

There also cannot be a finding of unusual circumstances supporting jurisdiction based on Kentucky law concerning joint-tort feasors. Kentucky does not recognize joint and several liability.

7

Kentucky follows the doctrine of apportionment. No one defendant's liability affects another's. Hence, no judgment rendered against the Removing Defendants can have any effect whatsoever on the liabilities of Federal-Mogul. Without even a possible effect, there can be no "related-to" jurisdiction."

Even if a basis for "related-to" jurisdiction exists in these cases, this court should still abstain from exercising jurisdiction. *In re Dow Corning Corp.*, 1996 U.S. Dist. LEXIS 16754 (E.D. Mich.). In order for mandatory abstention to apply, a proceeding must:

1.  Be based on a state law claim or cause of action;

1.  Lack a federal jurisdictional basis absent the bankruptcy;

3.  Be commenced in a state forum of appropriate jurisdiction;

4.  Be capable of timely adjudication; and,

5.  Be a non-core proceeding.

28 U.S.C. section 1334 (c)(2).

After the Sixth Circuit's remand of *Dow Corning*, the District Court found that all five factors necessary for mandatory abstention were met. *In re Dow Corning Corp.*, 1996 U.S. Dist. LEXIS 16754 (E.D. Mich.). Alternatively, the court also exercised its discretion to abstain from the cases against the non-debtors. *Id.*

In these cases, all five factors necessary for mandatory abstention exist. The plaintiffs' claims are based on state law negligence and products liability theories. While the plaintiffs do not concede that there is a basis for federal jurisdiction, any such alleged basis would be lacking absent the bankruptcy. These actions were filed on December 2, 1999, and discovery has been proceeding since that date. This surely constitutes timely adjudication under section 1334. What is even more

clear is that removal to federal court at this point in time, and transfer to a Bankruptcy Court in Delaware, would result in untold delay and inconvenience in cases which are moving along smoothly, and expeditiously, in state court.

This Court should also abstain from exercising jurisdiction, which the plaintiffs do not concede exists, on equitable grounds. Nothing in section 1334 "prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 in or related to a case under title 11." 28 U.S.C. section 1334(c)(1). Federal courts should be hesitant to exercise jurisdiction when state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought. *In re White Motor Credit*, 761 F. 2d 270 (6th Cir. 1985).

In *In Re: Dow Corning Corp.*, 1996 U.S. Dist. LEXIS 16754 (E.D. Mich), after remand, the District Court found that the personal injury/tort claims against the non-debtors were predominantly state law claims. The proof and scope of the issues in dispute varied from state to state. The comprehensiveness of the remedies sought also varied from state to state. Therefore, the *Dow Corning* court also found that discretionary abstention from the cases against the non-debtors would best serve the interests of justice and comity.

Just as in *Dow Corning*, the personal injury/tort claims against the non-debtors in these cases are state law claims. Just as in *Dow Corning*, should these cases remain in federal court, the proof and scope of the issues in dispute will vary enormously, based on the idiosyncrasies of each state's law. Even if "related- to" jurisdiction exists in these cases, this Panel should exercise its discretion to abstain from the cases against the non-debtors under 28 U.S.C. section 1334(c)(1).

Congress did not intend the removal statute "to effect a wholesale dislocation in the allocation of judicial business between state and federal courts." *Boys Markets, Inc. v. Retail Clerks Union. Local 770*, 398 U.S. 235, 247, 90 S.Ct.1583, 1590, 26 L.Ed.2d 199 (1970). citing, *City of Greenwood v. Peacock.* 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966). The Automakers and Allied are attempting to do just that.

The Removing Defendants have only removed the claims and/or causes of action raised by the plaintiffs as a result of their and/or their decedents' exposure to "friction products." No other claims and/or causes of action raised by these plaintiffs in the underlying action have been removed. (See Defendants' Notice of Removal.) Thus, the present action has been improperly bifurcated for purposes of removal, and the issue of forum non conveniens is immediately raised. The entire action should be tried in the same court, and the Automakers and Allied should not be allowed to remove only parts of several pending actions piecemeal. This improper removal also raises the issues of duplicative and uneconomical abuse of judicial resources in two forums, and the possibility of inconsistent results.

## ARGUMENT II

## BECAUSE 28 U.S.C. SECTION 157(b)(5) PERTAINS ONLY TO VENUE FOR TRIAL AFTER FEDERAL JURISDICTION HAS BEEN DETERMINED TO EXIST, THIS SECTION DOES NOT EXPAND SUBJECT MATTER JURISDICTION OF FEDERAL COURTS.

## DISCUSSION

The Removing Defendants contend that 28 U.S.C. section 157(b)(5) grants authority to the District Court where the bankruptcy is pending to determine whether "related-to" jurisdiction exists,

10

and whether, if so, removal is appropriate. This is not what section 157(b)(5) says. This section provides that:

> The district court shall order that personal injury tort and wrongful death claim **shall be tried** in the district in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending. (emphasis added).

The issue of whether section 157(b)(5) applies to the removal of claims from state court has been addressed in *In re: United States Lines, Inc.,* 128 B.R. 339; 1991 U.S. Dist. LEXIS 8640 (S.D. N.Y.) (hereinafter "*USL*"). In *USL,* the Reorganization Trust, the successor- in-interest to the debtors, United States Lines, Inc., and United States Lines (S.A.) Inc., moved for the transfer from state court to bankruptcy court of three maritime personal injury claims. The *USL* denied the motion to remove and transfer, holding that it did not have jurisdiction over the state claims.

The *USL* court based its decision on the **context** of section 157, noting the sections's definition of "core" and "non-core" proceedings, and the section's identification of which claims are properly heard by the bankruptcy court, and which are not. Based on these provisions in the statute, the *USL* court said that " . . . it is apparent that subsection (b)(5) is meant to designate **which court, as between the bankruptcy court and the district court,** should hear personal injury clams against the debtor. . . " *Id.* (emphasis added). Subsection (b)(5) was also meant to identify which court, **as between the bankruptcy court and the district court,** should determine the venue for such claims. *In re: USL.* **Nothing in either the language of the statute or its legislative history indicates that Congress intended to extend the district court's removal power.** *Id.* (emphasis added).

The fact that the claims in *USL* were maritime claims under the Jones Act does not make the

court's decision any less instructive for the cases at bar. The *USL* court did not base its denial of the debtor's motion to remove primarily on the nature of the claims themselves, but on the language of section 157(b)(5). The *USL* court correctly recognized that the language in section 157(b)(5) which empowers the district court, and not the bankruptcy court, to determine **the venue** of the trial of the tort or wrongful death claims, presupposes that the bankruptcy court had jurisdiction over the claim in the first place.

Section 157(b)(5) does not expand the "related-to" jurisdiction. *USL.* In claims where the federal court has subject matter jurisdiction to begin with, section 157(b)(5) merely makes it clear that the district court, and not the bankruptcy court, determines the trial venue of properly removed claims.

The Third Circuit has used this same reasoning concerning equitable action by a bankruptcy court under 28 U.S.C. section 1478 (b) . *In re: Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir. 1984). The *Pacor* Court said that equitable action under section 1478 (b) **must first presume that removal was legally properly** under section 1478 (a). (emphasis added). If section 1478 (a) does not permit removal, than section 1478(b) never comes into play. *Pacor.* Likewise, if there is no "related-to" jurisdiction upon which to base removal to federal court, then section 157 (b)(5) concerning venue for the trial of the removed claim never comes into play.

## ISSUE II

## WILL THE ACTIONS OF THESE PLAINTIFFS AGAINST THE AUTOMAKERS AND ALLIED HAVE A SUFFICIENT EFFECT ON THE BANKRUPTCY OF FEDERAL-MOGUL TO MAKE THESE ACTIONS "RELATED-TO" THE BANKRUPTCY?

12

## ARGUMENT II

## THE MERE POSSIBILITY OF A INDEMNIFICATION CLAIM AGAINST WAGNER ELECTRIC, AN ALLEGED SUBSIDIARY OF FEDERAL-MOGUL, BY ONLY ONE OF THE FOUR REMOVING DEFENDANTS IS TOO REMOTE TO HAVE AN EFFECT ON FEDERAL-MOGUL'S BANKRUPTCY.

### DISCUSSION

Bankruptcy jurisdiction was not conferred for the convenience of those not in bankruptcy to enlarge the possibility of recovery over and above that which they otherwise may have had. *In re: Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir. 1984). Jurisdiction of the bankruptcy courts to hear cases related to bankruptcy is not without limit. *Pacor.* There is a statutory and constitutional limitation to the power of the bankruptcy court. *Id.* For subject matter jurisdiction to exist, there must be **some nexus between the "related" civil proceeding and the bankruptcy proceeding**. *Pacor*. (emphasis added).

The test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. *Pacor.* An action is related to the bankruptcy **only if the outcome of the action could alter the debtor's rights, liabilities, options, or freedom of action**, either positively or negatively, and which in any way impacts on the handling and administration of the bankrupt estate. *Id.* (emphasis added).

The mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section 28 U.S.C. section 1471 (b). *Pacor.* Judicial economy does not justify federal jurisdiction. *Id.* Thus,

13

the Removing Defendants' contention that common issues concerning scientific and expert evidence has no bearing on the issue of whether these plaintiffs' claims are "related-to" the Federal-Mogul bankruptcy.  Jurisdiction over nonbankruptcy controversies with third parties who are otherwise strangers to the civil proceeding, and to the parent bankruptcy does not exist. *Pacor.*

In *Pacor,* the Higgins, husband and wife, brought a products liability action against Philadelphia Asbestos Co., trading as Pacor, in state court.  Pacor impleaded Johns-Manville Corporation (J-M) as the alleged manufacturer of the asbestos products Pacor distributed.  When J-M filed for bankruptcy protection, Pacor removed both the Higgins/Pacor and the Pacor/Johns-Manville third-party claim. The district court remanded the actions to state court, and Pacor appealed.

The Pacor-Manville third party claim was clearly "related- to" bankruptcy because Manville was in bankruptcy.  Therefore, the issue before the *Pacor* Court was whether the primary action between the Higgins and Pacor, although not involving the debtor Manville, was still sufficiently connected with the Manville bankruptcy estate, so that there was jurisdiction in federal court under 28 U.S.C. section 1471 (b). The Third Circuit affirmed the remand of the Higgins/Pacor action, holding that the Higgins/Pacor action was not related to the Johns-Manville bankruptcy. *Pacor.*

The *Pacor* court's examination of the Higgins-Pacor-Manville controversy lead it to conclude that primary action between Higgins and Pacor would have no effect on the Manville bankruptcy estate. The Higgins/Pacor action was, at best, "a mere precursor to the potential third party claim for indemnification by Pacor against Manville." *Id.* at 995.

The court also noted that the outcome of the Higgins-Pacor action would in no way bind Manville, because the primary action could not determine any rights, liabilities, or course of action

14

of the debtor. *Pacor.* Since Manville was not a party to the Higgin-Pacor action, it could not be bound by res judicata or collateral estoppel. Even if the Higgins-Pacor dispute would be resolved in favor of Higgins, and thereby opening up the possibility of a third party claim by Pacor against Manville, Manville would still be able to relitigate any issue, or adopt any position, in response to a subsequent claim by Pacor. *Id.*

Thus, the bankruptcy estate could not be affected in any way until the Pacor-Manville third party action was actually brought and tried. *Pacor.* Any judgment in favor of the plaintiff Higgins could not itself result in even a contingent claim against Manville, since Pacor would still be obligated to bring an entirely separate proceeding to receive indemnification. Because Pacor was not a contractual guarantor of Manville, and because there was no agreement for Manville to indemnify Pacor, a judgment in the Higgins-Pacor action could not give rise to **automatic liability** on the part of the bankruptcy estate. *Id.* (emphasis added). All issues regarding Manville's possible liability would be resolved in the subsequent third party impleader action. *Pacor.* The Third Circuit also noted that while this may work a hardship on "middlemen" such as Pacor, ". . . bankruptcy jurisdiction was not conferred for the convenience of those not in bankruptcy to enlarge the possibility of recovery over and above that which they otherwise may have had." *Id.*

The plaintiffs in these removed claims have settled with Abex. Therefore, "related-to" jurisdiction, if any, cannot be based on any alleged relationship between Federal-Mogul and Abex. Likewise, since Abex is no longer a party in the removed civil action, any alleged claim for indemnification or contribution between Abex and the Removing Defendants cannot possibly render these plaintiffs' claims against the Automakers and Allied "related-to" the Federal-Mogul bankruptcy. Therefore, the existence of Wagner Electric as a defendant in the plaintiffs' Magoffin

15

County actions is the only source of "related-to" jurisdiction.

The corporate connection between Federal-Mogul and Wagner Electric is not sufficient to constitute "related-to" jurisdiction. The Automakers and Allied have alleged that "[i]n 1998, Federal Mogul acquired Cooper Tire Automotive Co., and, in doing so, assumed all asbestos-related liability of Cooper and Cooper's two former businesses, Abex and Wagner." The Automakers have submitted no evidence to show that any alleged indemnity obligations of Federal-Mogul have been triggered. The Removing Defendants have also failed to submit any evidence showing that any of the them has a substantial claim against Wagner Electric within the limited obligation assumed by Federal-Mogul's alleged subsidiary, Wagner Electric. The Honorable Charles H. Haden, Chief Judge for the Southern District of West Virginia, when he recently decided the same issues which are now before this Panel, found the Automakers' evidence a "rickety platform for the Abex- or Wagner-as-debtor claim." (In Re Asbestos Litigation, Civil Actions No.: 2:01-1055 to 2:01-1074 and 2:01-1085 to 2:01-1224.(CHH) (S.D.W.V.)

The plaintiffs' claims have been pending in Magoffin County Circuit since 1999. Even today, none of the Removing Defendants have filed any cross-claims for indemnification or contribution against Wagner Electric. More importantly, of these four Removing Defendants, only DaimlerChrysler claims to have a basis for indemnification against Wagner Electric. Just as the corporate relationship is too tenuous for "related-to" jurisdiction, so is DaimlerChrylser's claim of an indemnification agreement. The enforceability of these agreements is highly questionable. (In Re Asbestos Litigation, Civil Actions No.: 2:01-1055 to 2:01-1074 and 2:01-1085 to 2:01-1224.(CHH) (S.D.W.V.) (A copy of Judge Hayden's 21 page Memorandum Opinion and Order is marked as Plaintiffs' Exhibit 2, attached hereto, and incorporated herein by reference).

16

DaimlerChrysler has not presented sufficient evidence to show the existence of an **"explicit indemnification agreement"** or that Wagner Electric is Chrysler's **"contractual guarantor,"** so that a judgment against Chrysler is a judgment against Wagner. *A.H. Robins v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986). If DaimlerChrysler had evidence sufficient to show an **"explicit indemnification agreement"** surely the automaker would had filed a cross-claim against Wagner Electric years ago. These actions have been pending in Magoffin County Circuit Court since 1999. No such claims have ever been filed.

Even if the DaimlerChrylser's evidence of an indemnification claim was stronger, such claims by the Automakers and Allied against Wagner Electric would still, just as in *Pacor*, constitute a mere precursor to the potential third party claim for indemnification by the Automakers against Wagner Electric. Likewise, just as in *Pacor*, the outcome of these plaintiffs' claims against the Automakers and Allied would in no way bind Federal-Mogul, because the primary action could not determine any rights, liabilities, or course of action of the debtor. *Pacor*. Since Federal-Mogul is not a party to these plaintiffs' actions, Federal-Mogul could not be bound by res judicata or collateral estoppel. Even if these plaintiffs' actions are resolved in their favor against the Removing Defendants, and thereby opening up the possibility of a third party claim by the Automakers and Allied against Federal-Mogul's Wagner Electric, Federal-Mogul would still be able to relitigate any issue, or adopt any position, in response to a subsequent claim by the Removing Defendants. *Id.*

## CONCLUSION

Removal to federal court can only be proper if the plaintiffs' asbestos claims against the Automakers and Allied are "related to" Federal-Mogul's bankruptcy case. A tenuous relationship

is not sufficient. In these cases, the "relatedness" of these claims is not just tenuous, it is non-existent. The Removing Defendants have proffered no evidence in support of the assertion that the plaintiffs' claims are any way "related-to" Federal-Mogul's bankruptcy.

The Removing Defendants, as the parties invoking federal jurisdiction, bear the burden of affirmatively and clearly establishing the existence of federal subject matter jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Adams v. Bain*, 697 F.2d 1213 (4th Cir. 1982). However, they have failed to proffer any evidence of any agreements or claims for contribution or indemnification, even though this litigation has been moving along in Magoffin County Circuit Court since 1999.

The Automakers and Allied have failed to submit evidence of a corporate connection between the bankrupt and non-debtor defendant, Wagner Electric, so that a judgment against the Removing Defendants will also be a judgment against Wagner Electric and/or Federal- Mogul.

There is also insufficient evidence to show that explicit indemnification agreements or contracts of guaranty exist between Wagner Electric and the Removing Defendants, so that a judgment against them is also a judgment against Wagner Electric. Ford, General Motors, and Allied have offered no evidence at all, and DaimlerChrysler relies on only purchase orders, which are not sufficient to show the existence of an indemnification agreement between the automaker and Wagner Electric. This is simply not enough to confer "related-to" jurisdiction.

The Removing Defendants have also failed to proffer any evidence of any other "unusual circumstance" which show such an identify between the debtor and the third-party defendant that the debtor may be said to be the real party defendant, and that a judgment against the third-party will in effect be a judgment or finding against the debtor." Without such evidence, the Automakers and

18

Allied cannot meet their burden, and there cannot be "related-to" jurisdiction.   The bankruptcy court's jurisdiction is not limitless. The alleged connection between these plaintiffs' claims against the Removing Defendants and Wagner Electric are too tenuous and remote to be related to the bankruptcy of Federal-Mogul.  This Panel should remand these claims to the Circuit Court of Magoffin County.

In the alternative, if this Panel should find jurisdiction, the five factors for mandatory abstention exist in these cases, and remand should still occur.  This Panel should also remand to state court based on the doctrine of equitable abstention.

Respectfully submitted,

Counsel for Plaintiffs,

John E. Sutter, Esquire
Robert H. Miller, II, Esquire
THE SUTTER LAW FIRM, PLLC
1598 Kanawha Boulevard, East
Charleston, West Virginia 25311
(304) 343-1514

19

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 1 2 2002

FILED
CLERK'S OFFICE

### KYE 7:01-373 and KYE 7: 01-402 PLAINTIFFS' SCHEDULE OF PARTIES
### DOCKET NO. 875
### IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI & CTO-210)

**OLIVE MARSHALL,**
**Administratrix of the Estate of**
**AFTON MARSHALL, deceased**

       **Plaintiff,**

v.                                                              **District Division Civil Action No. KYE 7 01-373**

**METROPOLITAN LIFE INSURANCE COMPANY,**     *Originating Court:*
**DAIMLER CHRYSLER CORPORATION,**            **Magoffin County, Kentucky**
**FORD MOTOR COMPANY,**                       **State Court Case No.: 99-CI-00355**
**GENERAL MOTORS CORPORATION,**
**BORG-WARNER AUTOMOTIVE, INC.,**
**PNEUMO ABEX CORPORATION,**
**MOOG AUTOMOTIVE, and**
**ALLIEDSIGNAL, INC.**

       **Defendants.**

**AND**

**OLIVE MARSHALL,**
**Administratrix of the Estate of**
**AFTON MARSHALL, deceased**

       **Plaintiff,**

v.                                                              **District Division Civil Action No. KYE 7 01-402**

**METROPOLITAN LIFE INSURANCE COMPANY,**     *Originating Court:*
**DAIMLER CHRYSLER CORPORATION,**            **Magoffin County, Kentucky**
**FORD MOTOR COMPANY,**                       **State Court Case No.: 99-CI-00355**
**GENERAL MOTORS CORPORATION,**
**BORG-WARNER AUTOMOTIVE, INC.,**
**PNEUMO ABEX CORPORATION,**
**MOOG AUTOMOTIVE, and**
**ALLIEDSIGNAL, INC.**

       **Defendants.**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                          :
                                :   CHAPTER 11
FEDERAL-MOGUL GLOBAL, INC.,     :
                                :   BANKRUPTCY NO. 01-10587
        Debtor.                 :   (jointly administered)

## ORDER 1) DENYING THE MOTIONS TO TRANSFER THE "FRICTION PRODUCTS CLAIMS" AND 2) REMANDING THE FRICTION PRODUCTS CLAIMS

This matter having been opened before the Court upon the several motions of parties, denominated in the prior Orders of the Court as the "Friction Products Defendants," to transfer to this District into the above-captioned proceedings the claims against the movants previously denominated "Friction Products Claims"; and the Court having previously granted this motion on a provisional basis and the Friction Products Claims having already been provisionally transferred to this Court subject to a plenary hearing on the motion to transfer; and the Court having previously given notice to the parties that it would consider arguments directed to subject matter jurisdiction, abstention and remand in ruling upon the movants' applications; and the Court having reviewed the submissions of counsel and heard oral argument; and for the reasons set forth on the record at the hearing on those motions today, as supplemented by a written Opinion to follow; and for good cause shown

It is this 8th day of February 2002

1

EXHIBIT
1

ORDERED that the motions to transfer the Friction Products Claims are denied, and it is further

ORDERED that this Court lacks subject matter jurisdiction over the Friction Products Claims, and it is further

ORDERED that the Friction Products Claims are remanded to the state courts from which they were removed pursuant to 28 U.S.C. § 1447, and it is further

ORDERED that, in the alternative, the Friction Products Claims are remanded to the state courts from which they were removed pursuant to 28 U.S.C. § 1452.

Alfred M. Wolin, U.S.D.J.



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ENTERED
DEC - 7 2001
SAMUEL L. KAY, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia

IN RE ASBESTOS LITIGATION

CIVIL ACTIONS NO:
2:01-1055 to 2:01-1074
2:01-1085 to 2:01-1224

## MEMORANDUM OPINION AND REMAND ORDER

Pending are the motions of Plaintiffs in these civil actions
1) to remand them to the Circuit Court of Kanawha County, West
Virginia, 2) to abstain from hearing these claims, or 3) to enjoin
their transfer to the District Court for the District of Delaware
(Delaware court).  For reasons discussed below, the Court **GRANTS**
the motion for remand.  The remaining motions are **DENIED** as moot.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

On November 20, 2001 pursuant to 28 U.S.C. § 1452(a) and
*Bankruptcy Rule* 9027(a), DaimlerChrysler Corporation, Ford Motor
Company, and General Motors Corporation (the Removing Defendants or
Automakers) removed civil actions numbered -1055 to -1074.  The
same day they moved the Delaware court to transfer to that court
"all claims and causes of action against the Automobile
Manufacturers [Automakers] in state or federal court alleging
injuries due to friction products, including brakes and other
automotive parts[,]" pursuant to 28 U.S.C. § 157(b)(5).  On



EXHIBIT
2

November 26, 2001 the remaining civil actions numbered -1085 to 1224 were removed. The Automakers contend the 160 actions removed here are related to the bankruptcy of Federal-Mogul Global, Inc. (Federal-Mogul).[1]

Plaintiffs immediately moved for an emergency hearing on motions to remand, abstain, or enjoin transfer of the cases. Following an expedited briefing schedule, the Court heard extensive argument on December 4, 2001. The parties have supplemented their initial briefing. These matters are now ripe for disposition.

## II.  DISCUSSION

### A. *Subject Matter Jurisdiction*

#### 1. Jurisdiction of actions "related to" bankruptcy

General principles of removal and remand apply to bankruptcy, as well as non-bankruptcy, actions. See Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 128 (1995). Under the general removal statute, defendants may remove any case of which the district courts have original jurisdiction.[2] 28 U.S.C. § 1441(a). Removal

---

[1]Federal-Mogul filed a petition for Chapter 11 bankruptcy on October 1, 2001, Bankruptcy Case No. 01-10578, United States Bankruptcy Court for the District of Delaware.

[2]Under the statute governing removal of claims related to bankruptcy cases, not only defendants may remove, but removal may be effected by "a party." See 28 U.S.C. § 1452(a).

Another relevant difference of bankruptcy removals: because
(continued...)

2

statutes must be construed strictly against removal.  <u>See</u> <u>Mulcahey</u> <u>v. Columbia Organic Chem. Co., Inc.</u>, 29 F.3d 148, 151 (4th Cir. 1994).  The party seeking to remove a case to federal court has the burden of establishing federal jurisdiction.  <u>See</u> <u>id</u>.  If federal jurisdiction is doubtful, a remand is necessary.  <u>See</u> <u>id</u>.

The Automakers removed the state actions pursuant to 28 U.S.C. § 1452(a), which provides, "A party may remove any claim or cause of action in any civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."  28 U.S.C. § 1452(a).  Under Section 1134, district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or <u>related to a case under title 11.</u>"  28 U.S.C. § 1334(b)(emphasis added).  All parties agree, if this Court has jurisdiction over these proceedings, it must be based on their relatedness to the Federal-Mogul bankruptcy.

Our Court of Appeals has adopted the <u>Pacor</u> test for determining the existence of such related-to jurisdiction:

The usual articulation of the test for determining

---

² (...continued)
any party may remove, there is no rule of unanimity.  <u>See</u> <u>Creasy v.</u> <u>Coleman Furniture Corp.</u>, 763 F.2d 656, 600 (4th Cir. 1985).

whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

A.H. Robins Co v. Piccinin, 788 F.2d 994, 1002 n.11 (4th Cir.

1986)(quoting Pacor v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984));

see also Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.6

(recognizing the First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth

and Eleventh Circuits have adopted the Pacor test, while the Second

and Seventh Circuits have adopted a slight variant, and not

choosing one test over the other).

Discussing the Pacor test, the Supreme Court said:

We agree with the views expressed by the Court of Appeals for the Third Circuit in [Pacor] that "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate and that the "related to" language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate. We also agree with that court's observation that a bankruptcy court's "related to" jurisdiction cannot be limitless.

Celotex, 514 U.S. at 308 (citations omitted)(emphasis added).

Pacor's limiting language, approved by the Supreme Court,

clarified that the related-to jurisdictional test is broad, but

> [o]n the other hand, the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of Section 1471(b).[3] Judicial economy itself does not justify federal jurisdiction. See generally Aldinger v. Howard, 427 U.S. 1, 15, 49 L. Ed.2d 276, 96 S.Ct 2413 (1976). "Jurisdiction over nonbankruptcy controversies with third parties who are otherwise strangers to the civil proceeding and to the parent bankruptcy does not exist." In re Haug, 19 Bankr. 223, 224-25 (Bankr. D. Ore. 1982). See also In re McConaghy, 15 Bankr. 480, 481 (Bankr. E.D. Va. 1981) (Bankruptcy court lacks jurisdiction to decide disputes in which the estate of the debtor has no interest.)

Pacor, 743 F.3d at 994.

Pacor presented circumstances not dissimilar to those before the Court today. In Pacor, the Higgins (husband and wife) brought a products liability action against Philadelphia Asbestos Co. (trading as Pacor) in state court. Pacor impleaded Johns-Manville Corporation (J-M) as the alleged manufacturer of the asbestos products Pacor distributed. When J-M filed for bankruptcy protection, Pacor removed both the Higgins/Pacor and Pacor/J-M third-party claim. The district court remanded the actions to state court. Pacor appealed. The Third Circuit affirmed the remand, holding the Higgins/Pacor action was not related to the J-M

---

[3]Former Section 1471(b) of Title 28 was recodified in identical language as present Section 1334(b).

bankruptcy, finding "[a]t best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville." Id. at 995.

The Pacor court suggested the outcome might have been different had there been an "explicit indemnification agreement" between Pacor and J-M or if Pacor had been J-M's "contractual guarantor." Id. Relying on this implication of Pacor, our Court of Appeals found jurisdiction related to bankruptcy such that the automatic stay applied[4] under the "unusual circumstances" where "there is such an identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party will in effect be a judgment or finding against the debtor." A.H. Robins v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986). On this premise, the Fourth Circuit determined that actions against officers or employees entitled to indemnification under the bankrupt employer's insurance, corporate bylaws, and the governing corporate statute were related to the bankruptcy. Id. at 1001-02, 1007.

---

[4]Section 362(a)(1), Title 11, imposes an automatic stay of any proceeding "commenced or [that] could have been commenced against the debtor" at the time of filing the Chapter 11 proceeding, while subsection (a)(3) provides the same protection from suits involving possession or custody of property of the debtor.   11 U.S.C. § 362(a)(1); (a)(3).

Considering these principles, the Court considers the Automakers' showing on the issue of jurisdiction related to the Federal-Mogul bankruptcy.

## 2. Automakers' Jurisdictional Claims

As an initial matter, the Court notes the Removing Defendants are all solvent, non-debtor defendants, as are all or almost all of the remaining non-removing defendants in these actions,[5] none of whom noticed an appearance at the hearing or otherwise expressed their views on removal. Also, the debtor Federal-Mogul has taken no position on these removals. (Mot. to Transfer ¶ 14.)

### a. Claims against the alleged debtor

The Automakers removed these actions alleging that Plaintiffs assert various personal injury claims against Federal-Mogul, "its divisions and/or subsidiaries. . . and the Removing Defendants[.]" (Jt. Notice of Removal ¶ 1.) Federal-Mogul was not named among the multitudinous defendants in any of these actions. At the hearing on this matter, the Court requested the Automakers provide a list of Defendants satisfying their claim relating these actions to the debtor. The list subsequently produced showed either Abex Corporation (Abex), Wagner Electric Corporation (Wagner), or both named as a defendant in each of these actions and, according to a

---

[5]Non-removing Defendants number more than 150.

separate typed and unauthenticated list, each was an entity of Federal-Mogul.  In their Motion to Transfer, the Automakers state, "Both Abex and Wagner are now part of the Debtor."  (Mot. to Transfer at 17.)

Plaintiffs dispute this claim, citing Federal-Mogul's own Informational Brief, which states that Abex "does not have a corporate relationship with any of the Debtors."  (Pls.' Supp. Briefing, Objection of the Official Committee of Asbestos Claimants to [Automakers'] Mot. to Transfer at 12.)  The actual Federal-Mogul /Abex connection is delineated thus:

> (a) Abex sold its friction products assets to Moog Automotive, Inc. (Moog), a subsidiary of Cooper Industries, Inc. (Cooper); (b) Cooper assumed liability under certain circumstances for asbestos personal injury claims alleging exposure to certain Abex friction materials; and (c) a Federal-Mogul subsidiary purchased Moog's stock from Cooper and assumed Cooper's indemnity obligations for claims brought after 1998.

Id.  There is no showing the indemnity obligations of Federal-Mogul's subsidiary actually have been triggered, nor that any of the Automakers has a substantial claim against Abex within the limited obligation assumed by Federal-Mogul's subsidiary.  The ostensible connection purporting to identify Abex with Federal-Mogul is far from convincing.

To the extent the Wagner/Federal-Mogul connection is

8

supported, it also runs through the Moog/Cooper linkage.[6]   Given

this rickety platform for the Abex- or Wagner-as-debtor claim, the

Court is unwilling to rest its jurisdiction on this basis alone.

Additionally, as noted above, the vast majority of Defendants in

these removed actions are third-party nondebtors, including the

Removing Defendants.

### b.   Import of indemnification claims

The Motion to Transfer filed by the Removing Defendants in the

Delaware court claims:

> 6.   The Friction Product Claims have a substantial effect on the Debtor's estate.  Their disposition will directly affect the Debtor's rights, property and liabilities.  For example, as a result of such claims, the Automobile Manufacturers will have thousands of claims for indemnification and contribution[7] against the Debtor, which will significantly impact the bankruptcy estate.

---

[6]The transfer motion notes, "In 1998, Federal Mogul acquired Cooper Automotive Co., and, in doing so, assumed all asbestos-related liability of Cooper and Cooper's two former businesses, Abex and Wagner." (Mot. to Transfer at 17, n.41 (citing *Asbestos Companies Report Annual Numbers of Pending Claims, New Filings in 2000*, 16 Mealey's Litig. Rep.: Asbestos 19 (May 18, 2001)).)

[7]Under West Virginia law, joint tortfeasors are liable for contribution in proportion to their percentage of negligence as determined by a jury.  See Board of Educ. of McDowell County v. Zando, Martin & Milstead, Inc., 182 W. Va. 597, 602-03, 390 S.E.2d 796, 801-02 (1990).  If the debtor is not a named defendant in these actions, however, the Automakers could have no basis for a contribution claim against them.  As discussed above, the relation to the debtor of named Defendants Abex and Wagner remains an open factual question.

(Mot. to Transfer ¶ 6 (emphasis added).)

Of the three Removing Defendants, only DaimlerChrysler actually claims to have indemnity agreements with Federal Mogul. The evidence thereof consists of an affidavit by a former employee who recalls issuing "purchase orders on Chrysler's behalf to Wagner Electric in the late 1960's and in the 1970's for the procurement of automotive brake components, including brake shoes, pads, linings, etc." (Mot. to Transfer, App. Tab 1 ¶¶ 8-10.) The employee avers the purchase orders would "include language incorporating General Terms and Conditions." Id. ¶ 6. Nearly illegible purchase orders were attached as examples. The single purchase order addressed to Abex mentions no general terms and conditions. Those addressed to Wagner are filled out on a preprinted form which contains a small print boilerplate reference to general terms and conditions. The terms and conditions actually are found in a massive Chrysler handbook, containing a myriad of terms and conditions including a requirement found under an Insurance heading that suppliers must:

> defend, indemnify, and protect Purchaser against all claims, liabilities, losses and damages due to injury or death of any person and damage to or loss of any property out of the improper performance of negligent work under this order or arising out of allegedly defective material or workmanship in the goods and services provided.

10

(Id. Tab. A at 3-72.)[8]

Considering Chrysler drafted the terms, which are extremely wide-ranging and generous to the drafter, which were not bargained for and are not present on the form presented to the suppliers (nor is any reference to them present on the form presented to Abex), the question whether this purported indemnity agreement would be determined to bind the suppliers is open and one not easily resolved. The Court is unwilling again to rest subject matter jurisdiction on this tenuous support.

### c. Conceivability and mass tort claims

In oral argument, the Removing Defendants emphasized "conceivability" as the crucial aspect of the Pacor test and proposed a very broad test as applied by the Sixth Circuit in In re Dow Corning Corp., 86 F.3d 482 (6th Cir. 1996). There, the Sixth Circuit held that even non-contractual claims for implied indemnity or contribution against a debtor supported related-to jurisdiction where the nondebtor defendants had "asserted repeatedly . . . they intend to file claims for indemnification and contribution" against the debtor and the contingent claims "unquestionably could ripen into fixed claims." Id. at 494. The Sixth Circuit also observed,

_____

[8]At oral argument Plaintiffs represented the Automakers have never taken action to enforce this indemnity provision, a proposition the Removing Defendants did not dispute.

11

"A single possible claim for indemnification or contribution simply does not represent the same kind of threat to a debtor's reorganization plan as that posed by the thousands of potential indemnification claims at issue here." Id.   The Automakers ask the Court to recognize these potential claims in a mass tort setting as sufficient basis to note bankruptcy-related jurisdiction.

The Automakers propose our Court of Appeals accepts this potentiality doctrine, quoting In re Celotex, 124 F.3d 619, 626 (4th Cir. 1997) that the test of related-to jurisdiction does not "require certain or likely alteration of the debtor's rights, liabilities, options or freedom of action" but "[t]he possibility of such alteration or impact is sufficient to confer jurisdiction." The Fourth Circuit, however, did not apply that standard in Celotex, but found jurisdiction based on a contractual obligation of indemnity. See id. at 627. While the court's general statement might be taken as an approving gloss on "conceivability," its application was limited to actuality.

The actual holding in Celotex exemplifies a point the Court finds worth noting: "common sense cautions against an open-ended interpretation of the 'related to' statutory language 'in a universe where everything is related to everything else.'" Matter

12

of FedPak Systems, Inc., 80 F.3d 207, 214 (7th Cir. 1996)(quoting

G. Dunne, The Bottomless Pit of Bankruptcy Jurisdiction, 112

Banking L.J. 957 (Nov-Dec. 1995)).  The Automakers' claim, at root,

is that "the claims against the automobile manufacturers are

related to Federal-Mogul's bankruptcy proceedings because they

'arose from business dealings' with the debtor and, moreover, are

'derivative' in nature in that they are based on the same products

that are the subject of the claims asserted against the debtor."[9]

(Mem. in Resp. to Pls.' Mot. to Remand or Abstain at 15-16.)  Using

this wide broom, the Automakers would sweep every "friction

products" claim to the Delaware court, including Plaintiffs'

completely non-derivative claims that the Automakers are subject to

independent liability for failure to warn of the dangers of their

products, whether or not those claims involve a Federal-Mogul

product.

The law in this circuit does not support the Removing

Defendants' arguments for jurisdiction, based on the incomplete and

---

[9]For this proposition, the Removing Defendants cite Caperton
v. A.T. Massey Coal Co., 251 B.R. 322, 325-26 (S.D. W. Va. 2000),
possibly unaware that the ultimate disposition of that action,
following the Bankruptcy Court's determination of the ownership of
Plaintiff's claims, was remand to state court, pursuant to 28
U.S.C. § 1334(c)(2).  See Caperton v. A.T. Massey Coal Co., No.
2:00-0192 (S.D. W. Va. June 4, 2001).

13

indeterminate factual showing presently before the Court.[10]
Accordingly, the Court **FINDS** and **CONCLUDES** subject matter
jurisdiction over these actions is lacking and they must be
**REMANDED** to the Circuit Court of Kanawha County.

Alternatively, however, were the Court found to possess
subject matter jurisdiction, nonetheless it would remand on
equitable bases, for the reasons discussed below.

### B. *Equitable Remand Considerations*

Title 28, Section 1452, governing removal of claims related to
bankruptcy cases, provides:

> (b) <u>The court to which such claim or cause of action is
> removed</u> may remand such claim or cause of action on any
> equitable ground. An order entered under this subsection
> remanding a claim or cause of action, or a decision to
> not remand, is not reviewable by appeal or otherwise by
> the court of appeals under section 158(d), 1291, or 1292
> of the title or by the Supreme Court of the United States
> under section 1254 of this title.

28 U.S.C. § 1452(b) (emphasis added). Because these actions were
removed here, it is without doubt this Court may exercise the
statutory authority to remand.

A noted commentator provides an apparently exhaustive list of

_____

[10]"In all events, a jurisdictional inquiry is not the
appropriate stage of litigation to resolve these various uncertain
questions of . . . fact. . . . Jurisdictional rules direct judicial
traffic. They function to steer litigation to the proper forum with
a minimum of preliminary fuss." <u>Hartley v. CSX Transp., Inc.</u>, 187
F.3d 422, 425 (4th Cir. 1999)

14

factors for a court to apply in determining whether to remand for justice, comity, or equity.  The Court should consider:

> whether remand would prevent duplication or uneconomical use of judicial resources; the effect of the remand on the administration of the bankruptcy estate; whether the case involves questions of state law better addressed by a state court; comity; judicial economy; prejudice to involuntarily removed parties; the effect of bifurcating the action, including whether remand will increase or decrease possibility of inconsistent results; the predominance of state law issues and non-debtor parties; and the expertise of the court in which the action originated.

16 James Wm. Moore et al., Moore's Federal Practice § 107.15[8][e] (3d ed. 2001).

At the outset, the Court notes each side questions the "forum shopping" of the other.  Forum shopping, however, is merely venue selection with allegedly questionable motive.  Plaintiffs always have initial choice of forum, while defendants may remove, when allowed by law.  In this action, Plaintiffs and the Removing Defendants have put forward reasons in favor of their preferred forum, state or federal, and the Court considers these reasons not as examples of bad motive or gaming the system, but to weigh the equities, as they appear to this judge.

As the Plaintiffs state their view, these 160 civil action involve thousands of plaintiffs and some 150 defendants, apart from the Automakers.  With the purported exception of Abex and Wagner,

all these parties are non-debtors and total strangers to the bankruptcy action. The plaintiffs have procedural and substantive rights to have their claims resolved in a timely fashion. They chose the state forum and have been pursuing their claims diligently there. During the hearing, Plaintiffs reported that the state Mass Litigation Panel has set a February 2002 date for pretrial proceedings and a June 2002 date for commencing trials of certain representative actions. Absent the putative bankruptcy-related claims, no federal issues obtain and only state law applies.

The Automakers' proposal, set out in their transfer motion and acceded to at oral argument, is to transfer these actions to Delaware where they propose a <u>Daubert</u>[11] hearing on the issue of whether exposure to brake dust during brake maintenance causes illness. Resolution of this issue in their favor will support dismissal of all pending actions on summary judgment, an economical use of judicial resources, they argue, which avoids inconsistent outcomes and clears clogged dockets. Further, they say, there are no complex state-law issues, and thus, federal courts possess the expertise to adjudicate these tort cases.

---

[11]<u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993).

16

Considering the parties' divergent accounts and perspectives, the Court **FINDS** and **CONCLUDES** the balance of equities tips in favor of remand.  A mechanism is already in place to try these actions in state court, including the Mass Litigation Panel and Procedure, implemented by the Supreme Court of Appeals of West Virginia.  See *West Virginia Trial Court Rule* 26.01.  Although further refined by the 1999 implementation of this rule, the mass litigation procedure has been employed in the West Virginia courts on past occasions. Both the plaintiffs' bar and defense counsel involved in these actions are conversant with the process and procedures.  As noted, that process was underway with regard to the 160 actions removed here.  This Court believes federal courts ought not to intrude on state court proceedings, except where law and equity require it. The limited jurisdiction of Article III courts supports this view, as does the general removal rule:  where federal jurisdiction is doubtful, remand is necessary.  Mulcahey, 29 F.3d at 151.

This Court has no reason to doubt or question the capacity of the West Virginia court system to handle these actions, much less to apply state law, an area in which it is the undisputed expert. Application of Daubert and related principles to scientific evidentiary questions and proof problems is not the particular province of any system, federal or state.  While the Automakers are

correct that, if all friction products actions were removed to one court, and if that court were to determine their position on brake dust asbestos-related damage is correct, and if summary judgment were to be granted on all actions, the process would be efficient and the opportunity for inconsistent results would be lessened. This desirable result, however, requires several steps of speculative prognostication.  If the predictions are even slightly off, unintended results from improvident removal could be severe. Inefficiencies and delay for these thousands of Plaintiffs, as well as the non-removing Defendants, and state and federal judicial systems could be extreme.

Prejudice to these involuntarily removed parties simply cannot be determined at this time, but the potential is great.  What might be categorized as "temporal prejudice" is more likely.  That is, these state tort actions have a schedule in place for trials to begin the next calendar year, following pretrial determinations in the next few months.  The schedule of the Delaware court must be more uncertain, for initially the matter of transfer of tens of thousands of cases similar to these must be taken up before pretrial matters can be scheduled.  Where the Plaintiffs will journey, state or federal courts, Delaware or West Virginia, and when pretrial issues, including Daubert will be considered, remain

large and open questions.  It would be presumptuous of this Court to speculate what effect remand of these 160 cases might have on administration of the bankruptcy estate.  The jurisdictional analysis above suggests the impact on the Delaware case, comparatively, would be minimal.

For all these reasons, economical use of judicial resources appears to be a neutral factor, although the efficiency of continuing an ongoing and well understood process weighs in Plaintiffs' favor.  As previously recognized, questions of comity, accession to the state courts' knowledge of state law, prejudice to involuntarily removed parties, predominance of state law issues and non-debtor parties, and the expertise of the court in which the action originated all favor the Plaintiffs' argument for remand.

### III.  CONCLUSION

Accordingly, the Court **GRANTS** Plaintiffs' motion and, pursuant to 28 U.S.C. § 1452(b), **REMANDS** these actions to the Circuit Court of Kanawha County, West Virginia for all further proceedings.

The Clerk is directed to provide a certified copy of this Memorandum Opinion and Remand Order to the Circuit Clerk of Kanawha County.  The Clerk is directed also to send a copy to counsel for Plaintiffs and the Removing Defendants by facsimile transmission, to all counsel of record by first class mail, and to publish it on the Court's website at http://www.wvsd.uscourts.gov.

ENTER:   December 7, 2001

Charles H. Haden II, Chief Judge

For Plaintiffs

Ronald L. Motley, Esquire
NESS, MOTLEY, LOADHOLT, RICHARDSON & POOLE, P.A.
P.O. Box 1792
Mt. Pleasant, SC 29465

Scott S. Segal, Esquire
THE SEGAL LAW FIRM
810 Kanawha Boulevard, East
Charleston, WV 25301

J. David Cecil, Esquire
JAMES HUMPHREYS & ASSOCIATES, L.C.
United Center, Suite 800
500 Virginia St., East
Charleston, WV  25301

For Removing Defendants

J. Tyler Dinsmore, Esquire
FLAHERTY, SENSABAUGH & BONASSO
P. O. Box 3843
Charleston, WV 25338-3843

Steven R. Williams, Esquire
McGUIRE WOODS, LLP
707 East Main Street
Suite 1500
Richmond, VA 23219

David Bernick, Esquire
KIRKLAND & ELLIS
200 East Randolph
Chicago, IL 60601

John R. McGhee, Jr., Esquire
KAY, CASTO & CHANEY
P. O. Box 2031
Charleston, WV 25327-2031

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 1 2 2002

**BEFORE THE JUDICIAL PANEL ON  MULTIDISTRICT  LITIGATION** FILED
CLERK'S OFFICE

IN RE ASBESTOS LIABILITY LITIGATION               MDL DOCKET NO. 875
(NO. VI) & (CTO-210)

## CERTIFICATE OF SERVICE

I, Robert H. Miller, II, counsel for Plaintiffs, do hereby certify that I served this **11th** day of

March, 2002, the foregoing **PLAINTIFFS' MOTION TO VACATE THE CONDITIONAL**

**TRANSFER ORDER AND TO REMAND and PLAINTIFFS' JOINT MEMORANDUM OF**

**LAW IN SUPPORT OF THEIR MOTION TO VACATE AND REMAND** upon counsel of

record herein by depositing true copies thereof in the United States mail, postage prepaid, in

envelopes addressed to each at their last known addresses as identified on the attached Panel Service

List.

**Robert H. Miller, II**

**PANEL SERVICE LIST (Excerpted from CTO-210)**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

*Marshall, etc. v. Metropolitan Life Insurance, et al.*, E.D. Kentucky, C.A. No. 7:01-373
*Marshall, etc. v. Metropolitan Life Insurance Co., et al.*, E.D. Kentucky, C.A. No. 7:01-402

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH  44114

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH  44115

Adam M. Chud
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, DC  20036

David A. Damico
Burns, White & Hickton
2400 Fifth Avenue Place
120 Fifth Avenue
Pittsburgh, PA  15222

Richard W. Edwards
Boehl, Stopher & Graves
400 West Market Street
Suite 2300, Providian Center
Louisville, KY  40202

Raymond P. Forceno
Forceno & Hannon
Philadelphia Bourse Building
Suite 1000
Independence Mall East
Philadelphia, PA  19106

Ellen B. Furman
Goldfein & Joseph
1600 Market Street
33rd Floor
Philadelphia, PA  19103

Ann L. Haight
Kay, Casto, Chaney, Love & Wise
P.O. Box 2031
1600 Banke One Center
Charleston, WV  25327

Susan M. Hansen
Brownson & Ballou
4800 U.S. Bank Place
601 Second Avenue, South
Minneapolis, MN  55402

Harry K. Herren, Jr.
Woodward, Hobson & Fulton, LLP
2500 National City Tower
101 S. Fifth Street
Louisville, KY  40202

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH  44308

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA  23219

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA  19102

Ronald L. Motley
Ness, Motley, Loadholt, Richardson &
Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC  29465

John J. Repcheck
Marks, O'Neill
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA  15219

John D. Roven
John Roven & Associates
2190 North Loop West
Suite 410
Houston, TX  77018

Joseph L. Sallee, Jr.
Dinsmore & Shohl
1900 Chemed Center
255 East Fifth Street
Cincinnati, OH  45202

Kurt A. Scharfenberger
Thompson, Miller & Simpson, PLC
220 West Main Street, Suite 1700
Louisville, KY  40202

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH  43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard, Sixth Floor
Los Angeles, CA  90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West, 15th Floor
Philadelphia, PA  19102

John E. Sutter
Sutter Law Firm, PLLC
1598 Kanawha Boulevard, East
Charleston, WV  25311

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
Detroit, MI  48226

Andrew J. Trevelise
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA  52406