MDL 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 1 4 2002

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | : | |
| | : | MDL DOCKET NO. 875 |
| LIABILITY LITIGATION (VI) | : | |

### RESPONSE OF DEFENDANT JOSEPH B. COX, JR. AND DEFENDANT JOSEPH B. COX, JR., LTD. (FORMERLY KNOWN AS JOSEPH B. COX, JR., P.C.) IN OPPOSITION TO PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER 212 RELATED TO *HUBER, ET AL. VS. TAYLOR, ET AL.*, PAW 2-02-304

1.      Admitted only that plaintiffs have moved to vacate the conditional transfer of *Huber, et al. vs. Taylor, et al.*, **PAW 2-02-304** ("*Huber*") to the Eastern District of Pennsylvania for assignment to Judge Weiner.  It is denied that such conditional transfer is improper or inappropriate; on the contrary, this matter should be transferred.

2.      Admitted that on February 7, 2002, Ronald Huber and four other Pennsylvania plaintiffs filed the Complaint in question.  However, on March 1, 2002, an Amended Complaint was filed which also includes plaintiffs from Indiana (Amended Complaint ¶¶13 and 14) and a plaintiff from Ohio (Amended Complaint ¶12).  Therefore, the named plaintiffs reside in three separate jurisdictions.  In addition, these named plaintiffs purport to represent a putative class of

OFFICIAL FILE COPY

IMAGED JUN 1 4 '02

2,645 persons residing in Pennsylvania, Ohio and Indiana.  The fact that the named plaintiffs and putative class are from three different states highlights the need for multidistrict treatment.

3.  Admitted.

4.  Denied.  On the contrary, the facts underlying *Huber* and the fundamental issues raised by *Huber* go to the very heart of the handling of mass tort cases and specifically the mass asbestos litigations consolidated before Judge Weiner in the Eastern District of Pennsylvania.  In fact, with the exception of John Dinio, all of the *Huber* named plaintiffs are themselves plaintiffs in asbestos actions currently before Judge Weiner as part of the MDL proceedings. There is much factual commonality between *Huber* and asbestos litigation in general as is recognized by plaintiffs themselves by their inclusion in the *Huber* Amended Complaint of paragraphs 60 through 72 which purport to give an historical background of asbestos litigation generally. The focus of *Huber* is on the actions of the asbestos personal injury bar in general.

5.  Denied as stated.  On the contrary, *Huber* is actually a frontal attack on the manner in which mass asbestos actions have been handled and are being handled, and the outcome of *Huber* will have a profound effect on how such cases are handled in the future and how mass settlements may be negotiated in the future.  It is clear from plaintiffs' Complaint that plaintiffs' counsel in *Huber* are attacking the entire system by which mass asbestos actions are handled.   See for example paragraphs 60 through 72 and paragraph 75 of the Amended Complaint.

6.  Denied as stated.  It is admitted only that the defendants in *Huber* are lawyers and law firms.  It is denied that plaintiffs were at any time clients of Joseph B. Cox, Jr. or Joseph B. Cox, Jr., LTD (formerly Joseph B. Cox, Jr., P.C.), and it is further denied that plaintiffs have been victimized by defendants Joseph B. Cox, Jr. and Joseph B. Cox, Jr., LTD.

7.     Denied as stated.  Plaintiffs themselves have defined the putative class as persons "who reside or had substantial exposure to asbestos in Pennsylvania, Ohio or Indiana"....and who have "asbestos personal injury claims."  Therefore, the common questions of fact go to the very nature of asbestos liability and to how to determine the value of an asbestos personal injury claim.  In their Complaint, plaintiffs have alleged that they have been discriminated against with regard to what they have been paid as compared to what other plaintiffs purportedly represented by the defendants have been paid for their asbestos personal injury claims.  Therefore, among the common questions of fact that *__Huber__* has in common with the MDL asbestos cases are how to differentiate the value of cases by jurisdiction, how to evaluate cases by historical experience throughout the nation, etc.  The questions of fact and the legal issues raised in *__Huber__* are precisely those questions of fact and those legal issues which arise routinely in cases consolidated before Judge Weiner pursuant to the Multidistrict Litigation Panel's Order.  The broad questions of fact raised as to value and treatment of the claims of the named plaintiffs and the putative class are precisely why multidistrict treatment is required in this matter.  The issues raised go beyond merely one district in the Federal Court system.

8.     Denied as stated.  Plaintiffs, in an attempt to avoid transfer to MDL Docket #875 in the Eastern District of Pennsylvania, seek in their motion to narrowly limit the scope of the *__Huber__* case.  However, it is clear from plaintiffs' Amended Complaint that the Complaint is a full attack on "business as usual" in asbestos litigation.  Under the guise of a legal malpractice action, plaintiffs' counsel are using the *__Huber__* case as a means to attack the whole system of handling of mass asbestos actions.  This type of attack requires handling on a multidistrict basis by a judge with a national perspective on and national experience in asbestos litigation.  Plaintiffs' allegations are not limited to simply a dispute with certain lawyers over a specific

settlement structure, but, as can be seen from the Amended Complaint, encompass a number of different agreements and a number of different alleged activities. Resolution of this matter will be best achieved by a judge who has been appointed by the Multidistrict Panel to handle these specific kinds of factual disputes.

9. Denied as stated. For the reasons set forth above and in the accompanying Memorandum of Law, transfer is appropriate. The facts and issues raised by ***Huber*** and the asbestos personal injury actions underlying ***Huber*** could not be more similar to the consolidated asbestos personal injury actions currently before Judge Weiner in the Eastern District of Pennsylvania. The ***Huber*** claims arise out of asbestos personal injury actions which are identical to the MDL cases and the handling of the ***Huber*** claims requires an understanding of nationwide asbestos litigation. For this reason, transfer is appropriate.

10. Denied as stated. In an attempt to avoid transfer, plaintiffs' counsel try to characterize ***Huber*** as involving only a "unique case of attorney misconduct...." However, a simple reading of the Amended Complaint makes it clear that plaintiffs' claims go far beyond that and are, as noted above, an attack on the asbestos litigation system as it currently exists. This is further borne out by the fact that plaintiffs' counsel Joseph D. Pope, Esquire is scheduled to speak on the ***Huber*** case at an ALI-ABA course entitled "Asbestos Litigation in the 21st Century" on September 20, 2002 in Chicago, Illinois. The very fact that Mr. Pope is speaking at this asbestos litigation conference about the ***Huber*** case clearly demonstrates that the intended scope of the ***Huber*** case goes far beyond "unique" issues that are unrelated to asbestos litigation in general. (A copy of the pertinent pages of the brochure for the aforementioned conference is attached as Exhibit A.)

11.     Denied as stated.  The Amended Complaint speaks for itself.  As noted above, it is clear from the Amended Complaint that plaintiffs' claims and allegations are much broader than as characterized by plaintiffs in their Motion to Vacate.

12.     Denied as stated.  It is clear from plaintiffs' Amended Complaint that plaintiffs' claims are much broader, including a challenge to the settlement structures themselves and the amounts of the individual settlements.

13.     Denied as stated.  The claims presented by plaintiffs and the relief sought by them will affect all mass asbestos settlements or settlement programs and will have a chilling effect on any attempts to reach mass resolutions of cases or on any attempts to set up a structure for the processing of mass groups of cases.  The claims set forth in the Amended Complaint and the relief sought will significantly affect all asbestos cases currently consolidated in the Eastern District of Pennsylvania before Judge Weiner because plaintiffs' Amended Complaint is a direct attack on the manner in which those cases are being handled and have been handled in the past.

14.     Denied as stated.  Since plaintiffs are claiming in their Amended Complaint that settlements were entered into without their consent and that they were discriminated against in the evaluation of their claims, resolution of these plaintiffs' claims will have a significant and direct impact on the numerous asbestos corporations which entered into the agreements in question.  For example, plaintiffs' challenge to the CCR agreement would affect all members of the CCR that entered into the agreement.  A resolution of plaintiffs' claims will affect how asbestos corporations attempt to resolve mass asbestos actions in the future.  To say that asbestos corporations are unaffected by what happens in **_Huber_** is to be disingenuous.

15.     Denied for the reasons set forth above and set forth in the accompanying Brief.

16.     Denied for the reasons set forth above and set forth in the accompanying Brief.

17.     Denied for the reasons set forth above and set forth in the accompanying Brief.

18.     Denied as stated.   It is respectfully requested that this Panel deny plaintiffs'
Motion to Vacate the Conditional Transfer Order.

**MARSHALL, DENNEHEY, WARNER
COLEMAN & GOGGIN**

BY:_____

JAMES A. McGOVERN
PA I.D. #61361
US Steel Tower, Suite 2900
600 Grant Street
Pittsburgh, PA  15219
(412) 803-1180

THOMAS C. DELORENZO
PA I.D. #21184
1845 Walnut Street, Suite 1900
Philadelphia, PA 19103
(215) 575-2741

Attorney for Defendants:  Joseph B. Cox,
Jr., Joseph B. Cox, Jr., LTD (formerly
known as Joseph B. Cox, Jr., P.C.)

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 1 4 2002

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | : | |
| | : | MDL DOCKET NO. 875 |
| LIABILITY LITIGATION (VI) | : | |

**BRIEF IN SUPPORT OF RESPONSE OF DEFENDANT JOSEPH B. COX, JR. AND DEFENDANT JOSEPH B. COX, JR., LTD. (FORMERLY KNOWN AS JOSEPH B. COX, JR., P.C.) IN OPPOSITION TO PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER 212 RELATED TO *HUBER, ET AL. VS. TAYLOR, ET AL.*, PAW 2-02-304**

I.    **INTRODUCTION**

Plaintiffs' Motion to Vacate the conditional transfer order does not present any information about the *Huber* action which is not readily apparent from the *Huber* Amended Complaint itself. For the most part, plaintiffs merely refer to paragraphs of the Amended Complaint and offer no new information or arguments. Plaintiffs have not demonstrated any good reason why the order should be vacated.

II.    **LEGAL AUTHORITY**

As this Honorable Panel knows well, the purpose of 28 U.S.C. § 1407(a) is to promote the just and efficient conduct of mutlidistrict actions through centralized management under the supervision on one designated judge. *In re Air Crash off Long Island, New York, on July 17,*

*1996*, 965 F. Supp. 5 (S.D.N.Y. 1997);  *In the Matter of New York City Municipal Securities Litigation*, 572 F. 2d 49 (2nd Cir. 1978).  One of the purposes of coordinated or consolidated proceedings is to streamline the proceedings in order to effectuate an overall savings of cost and a minimum of inconvenience to all concerned.  *In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litigation*, 424 F. Supp. 504 (J.P.M.L. 1976).  Other purposes are to prevent inconsistent rulings, to promote judicial efficiency and to conserve judicial resources through sensible management and coordination of litigation. *In re "Factor VIII of IX Concentrate Blood Products" Products Liability Litigation*, 853 F. Supp. 454 (J.P.M.L. 1993); *In re American Continental Corporation/Lincoln Savings and Loan Securities Litigation*, 130 F.R.D.  475 (J.P.M.L. 1990); In *re Piper Aircraft Distribution System Antitrust Litigation*, 405 F. Supp. 1402 (J.P.M.L. 1975).  As noted further below, the transfer of the instant matter to MDL Docket No. 875, In re Asbestos Products Liability Litigation (No. VI) will accomplish those purposes.

There are a number of considerations to be taken into account in a determination of whether a case should be transferred as a matter related to litigation already under the supervision of a judge appointed by the Multidistrict Litigation Panel.  One of the considerations, but only one, is the existence of common questions of fact among the actions.  As set forth more fully below, *Huber* involves questions of fact common to the asbestos litigation presently before the Honorable Charles R. Weiner under MDL Docket No. 875.

Also considered is the complexity of the common factual questions.  *In re Amoxicillin Patent & Antitrust Litigation*, 449 F. Supp. 601 (J.P.M.L. 1978), In *re Peruvian Road Litigation*, 380 F. Supp. 796 (J.P.M.L. 1974).  As is well known, the asbestos litigation before Judge Weiner involves many complex factual questions.  *Huber*, as more fully discussed below involves those same complex common factual questions.

Another factor in considering whether to transfer a matter is the familiarity of the proposed transferee court with the facts and issues involved in the litigation. *In re Data General Corporation Antitrust Litigation*, 470 F. Supp. 855 (J.P.M.L. 1979); *In re Capital Underwriters, Inc. Securities Litigation*, 464 F. Supp. 955 (J.P.M.L. 1979); *In re Sugar Industry Antitrust Litigation*, 433 F. Supp. 1122 (J.P.M.L. 1977); *In re Petroleum Products Antitrust Litigation*, 393 F. Supp. 1091 (J.P.M.L. 1975). As discussed more fully below, there can be no question that Judge Weiner is in the best position to supervise the proceedings in ***Huber*** to their just and expeditious termination.

Under all the factors to be considered in a determination of whether to transfer a matter to an MDL docket, ***Huber*** should be clearly transferred.

## III.   ARGUMENT

In an attempt to defeat transfer of this matter to the Eastern District of Pennsylvania, plaintiffs continually argue that this is a "unique" case that has "nothing in common" with the asbestos personal injury cases currently consolidated in the Eastern District of Pennsylvania (the "MDL asbestos cases"). However, plaintiffs' own Amended Complaint shows the fallacy of that argument. If this is a unique case which has nothing to do with other asbestos litigation, why does plaintiffs' Amended Complaint contain a section setting forth the historical background of asbestos litigation. (Amended Complaint ¶¶60-72) It is clear that those paragraphs were included in the Amended Complaint precisely because plaintiffs recognize that their action is an asbestos action that is connected to and intertwined with the history of asbestos litigation in this country. Plaintiffs therefore felt the need to put the ***Huber*** case into historical perspective along with the other asbestos cases.

Similarly, if this case has nothing in common with thousands of other asbestos personal injury cases and were not an asbestos personal injury action itself, one of the plaintiffs' attorneys, Joseph D. Pope, Esquire, would not be giving a presentation on the ***Huber*** case at an ALI-ABA conference in September, 2002 entitled "Asbestos Litigation in the 21st Century". See Exhibit A attached hereto and made a part hereof. Obviously, this is not a conference on "unique" issues involving only the ***Huber*** case, but rather is a broad conference addressing many issues involved in asbestos litigation generally and the various changes currently taking place in asbestos litigation across the country. If the ***Huber*** case were truly a "unique" case completely unrelated to other asbestos litigation, Mr. Pope would not be speaking on the ***Huber*** case at a conference devoted exclusively to asbestos litigation in the 21st century. Mr. Pope's planned presentation at the conference in question and the allegations of the Amended Complaint clearly establish that plaintiffs are at best being disingenuous when they claim that the ***Huber*** case is unrelated to other asbestos personal injury cases, that it is not an asbestos personal injury action and that it does not arise from exposure to asbestos.

Clearly, ***Huber*** is an asbestos case involving issues peculiar to mass tort litigation and in particular, peculiar to mass asbestos litigation. It is a case which demands to be handled by a judge with experience in national asbestos litigation so that the facts common to all asbestos litigation will be fully appreciated and so that the context of the allegations at issue will be fully appreciated. ***Huber*** is a fundamental attack on the asbestos litigation system as it exists and its resolution will have an impact on all mass asbestos litigation presently and into the future.

Further, ***Huber*** clearly has implications for virtually all asbestos corporations. This is apparent from the Amended Complaint itself and also from page 3 of plaintiffs' brief in support of their motion to vacate. The Amended Complaint alleges that the agreements in question were

negotiated without plaintiffs' consent.  If it were to be adjudicated that plaintiffs did not give consent to the agreements, there is the real possibility that the involved asbestos corporations could very well be back in court with these same plaintiffs.

Curiously, plaintiffs' claim in their brief in support of their motion to vacate that they are not challenging the adequacy of the settlements that were signed by asbestos corporations who are defendants in the MDL asbestos actions.  They also assert in their brief that they are not claiming that the settlements are inadequate and that they are not seeking to revoke any of the settlements.  Although plaintiffs have said this in an attempt to avoid transfer, such assertions are directly contrary to the allegations of the Amended Complaint.

For example, paragraph 75 of the Amended Complaint states, among other things, that defendants allegedly entered into aggregate settlements "without the knowledge or approval of their clients."  Paragraph 91 of the Amended Complaint alleges that defendants concluded aggregate settlements without the knowledge or consent of the plaintiffs.  Paragraph 107 of the Amended Complaint alleges that defendants "did not seek plaintiffs' informed consent" to the CCR agreement and that "plaintiffs did not consent to it."  Paragraph 116 of the Amended Complaint similarly states that plaintiffs did not consent to the Miscellaneous settlements.  In addition, in paragraph 127 of the Amended Complaint, plaintiffs claim the same lack of consent with respect to the "other settlements."  Similarly, paragraph 132(e) alleges that defendants negotiated agreements without the knowledge and informed consent of plaintiffs.  Paragraph 132(f) alleges that defendants executed unauthorized aggregate settlement agreements.  Paragraphs 141 and 148 of the Amended Complaint again allege that defendants failed to seek the consent of plaintiffs to the CCR settlement and the Miscellaneous settlements.

Further, plaintiffs' Amended Complaint alleges that the amount they are to receive under certain settlements is inadequate.   Specifically, paragraph 77 claims that plaintiffs were discriminated against because they received less than certain other plaintiffs.   The same assertions are made in paragraphs 95-97.  Similarly, paragraphs 132(i) and 156 again allege that plaintiffs were discriminated against because they received less than certain other plaintiffs.

*Huber* has many facts and issues in common with the MDL asbestos cases currently before Judge Weiner.  A court could not possibly evaluate the conduct of the defendants in this matter without reference to the underlying cases and how they were handled as compared to other asbestos cases nationwide.  The underlying cases, and therefore *Huber* , have common questions of fact involving exposure, causation, liability, damages, settlement value, etc.  For example, it is impossible to evaluate the *Huber* plaintiffs' claims regarding the adequacy of the amounts they were receiving in settlement compared to some other plaintiffs (see Amended Complaint ¶95) in a vacuum.  To determine whether plaintiffs received an appropriate amount for any particular settlement, one has to look at exposure information, medical condition, causation, product ID, the relevant jurisdiction, etc.  These are the very issues underlying the claims of underpayment set forth in the *Huber* case.  To address these issues, one must look at how other asbestos cases, particularly the MDL asbestos cases, have been handled because those are the very cases with which the *Huber* case has much in common.  There is no reason why the *Huber* claims should not be before a judge who has been designated by the federal courts to oversee all federal asbestos actions.  Judicial efficiency can be achieved only by having this matter heard by a court which is presently involved in other asbestos litigation and which does has the breadth of experience and background in asbestos litigation that Judge Weiner has.

Further, as noted in defendants' Motion to Transfer this matter to the Eastern District of Pennsylvania, all of the named plaintiffs in ***Huber*** except John Dinio are themselves plaintiffs in asbestos actions currently before Judge Weiner as part of the MDL proceedings, and it is the handling of the settlements and settlement funds from those very cases which is the subject matter of ***Huber***. Plaintiffs in their brief in support of their Motion to Vacate do not dispute this, but claim it is irrelevant (plaintiffs' brief, page 8). Nothing could be further from the truth. What is at issue in ***Huber*** is the manner in which certain MDL asbestos cases have been or are being resolved. What could be more fundamental to the efficient and proper functioning of the MDL asbestos actions than to have the judge assigned to the MDL asbestos actions resolve any disputes which arise concerning the resolution of those actions?

As noted in the accompanying response to plaintiffs' Motion, ***Huber*** is a part of a campaign to attack the manner in which mass asbestos actions have been handled in the past and are currently being handled. ***Huber*** is one part of that campaign and Mr. Pope's presentation at the ALI-ABA conference in September is another part of the campaign.    Plaintiffs' unprofessional and intemperate use of the words "corrupt" and "unscrupulous" to characterize defendants herein (see plaintiffs' brief in support of their Motion to Vacate and plaintiffs' Amended Complaint) is an indication of the true intent and motivation behind the ***Huber*** action. The ***Huber*** case is not simply a dispute between a certain group of plaintiffs and a certain group of lawyers, but rather is a full attack on the handling of mass asbestos actions, on aggregate settlements, on the allocation/evaluation of claims based on different values in different jurisdictions, etc.    Plaintiffs are fundamentally challenging the manner in which asbestos litigation is handled. What could have more impact on the federal court's successful handling of the consolidated MDL asbestos actions than a frontal attack on the asbestos litigation system as it

exists?  Obviously, the courts would be overwhelmed if each asbestos case had to be handled on an individual basis.  The courts and attorneys on both sides have attempted to deal with that issue by means of mass settlements.  Coordination and facilitation of the resolution of mass torts are two of the key reasons for the existence of the Multidistrict Litigation Panel and for the referral of asbestos cases to the MDL in the first place.  That is precisely why the MDL appointed judge should be handling a case that challenges the very manner in which such mass actions are attempted to be resolved.  Doing away with the type of mass resolution undertaken in the cases underlying ***Huber*** would gut the MDL and destroy its purpose.

Discovery in this matter will go to the heart of how mass asbestos actions are handled for purposes of comparing the usual handling to how the defendants allegedly handled the agreements which are the subject of the ***Huber*** action.  Judge Weiner, because of his experience with the MDL asbestos actions and his knowledge of nationwide asbestos litigation, is more than capable of efficiently handling such discovery without having to "reinvent the wheel."  Coordination and oversight by Judge Weiner would facilitate the pre-trial proceedings in this matter and promptly get to the heart of the case.

Further, coordination by Judge Weiner would eliminate potentially conflicting rulings on asbestos matters and would reduce litigation costs because Judge Weiner is already so familiar with the asbestos litigation; accordingly, time and effort would be saved on the part of the parties, the attorneys, the witnesses and the courts.

Further, having this matter handled by Judge Weiner as part of the MDL asbestos actions would serve the purposes of the Judicial Panel on Multidistrict Litigation in that it would streamline the questions in ***Huber*** that are common to all asbestos litigation and would eliminate duplication and overlap by allowing the MDL judge to promptly get to the heart of the matter

because of his experience in asbestos litigation. Further, transfer would encourage uniform case management since that is at the very heart of what Judge Weiner does in the MDL asbestos actions. Transfer would also allow Judge Weiner and the parties in the MDL asbestos actions to continue to explore uniform use of dispositive techniques. It would also avoid inconsistent rulings whereby one judge not involved in the MDL asbestos actions could possibly issue rulings which are inconsistent with the manner in which mass asbestos cases have been handled in the MDL. Transfer would also continue to facilitate settlement of MDL asbestos actions by having a uniform approach to how mass asbestos actions may be resolved. Finally, transfer would permit continued coordination of the mammoth number of asbestos actions presently pending in the courts.

Plaintiffs attempt to distinguish ***Huber*** from MDL asbestos personal injury actions is belied by their own Amended Complaint. Clearly, ***Huber*** involves common issues of fact and law with the MDL asbestos actions and can more efficiently and justly be handled by Judge Weiner as part of the MDL proceedings.

## IV.   **CONCLUSION**

This Honorable Panel originally transferred all federal asbestos litigation to Judge Weiner in the Eastern District of Pennsylvania because, as stated in the decision transferring the matters, the courts were facing a "critical asbestos situation". *In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991). ***Huber*** attacks what has been accomplished through the innovative attempts of the Court, parties and counsel to manage mass asbestos litigation and threatens to create another critical asbestos situation. Clearly, therefore, ***Huber*** should be before Judge Weiner.

For the foregoing reasons, defendants respectfully request that plaintiffs' Motion to Vacate the conditional transfer order with respect to ***Huber vs. Taylor*** be denied.

**MARSHALL, DENNEHEY, WARNER COLEMAN & GOGGIN**

BY: _____

JAMES A. McGOVERN
PA I.D. #61361
US Steel Tower, Suite 2900
600 Grant Street
Pittsburgh, PA 15219
(412) 803-1180

THOMAS C. DELORENZO
PA I.D. #21184
1845 Walnut Street, Suite 1900
Philadelphia, PA 19103
(215) 575-2741

Attorney for Defendants: Joseph B. Cox, Jr., Joseph B. Cox, Jr., LTD (formerly known as Joseph B. Cox, Jr., P.C.)

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 1 4 2002

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | : | |
| | : | MDL DOCKET NO. 875 |
| LIABILITY LITIGATION (VI) | : | |

## REASONS WHY ORAL ARGUMENT NEED NOT BE HEARD

Defendants Joseph B. Cox, Jr. and Joseph B. Cox, Jr., LTD (formerly Joseph B. Cox, Jr.,

P.C.) do not believe that oral argument is required to determine plaintiffs' Motion to Vacate the

conditional transfer of *__Huber vs. Taylor__*.  The nature of the claim is clear from the Amended

Complaint and the arguments of the parties with respect to the transfer of the matter to the

Eastern District of Pennsylvania are sufficiently set forth in the Motion to Vacate of plaintiffs

and their accompanying brief and in the response to the motion and accompanying brief filed

defendants.  Defendants do not believe that any additional pertinent information would be

obtained by holding oral argument.

MARSHALL, DENNEHEY, WARNER
COLEMAN & GOGGIN


BY:_____

JAMES A. McGOVERN
PA I.D. #61361
US Steel Tower, Suite 2900
600 Grant Street
Pittsburgh, PA  15219
(412) 803-1180

THOMAS C. DELORENZO
PA I.D. #21184
1845 Walnut Street, Suite 1900
Philadelphia, PA 19103
(215) 575-2741

Attorney for Defendants:  Joseph B. Cox,
Jr., Joseph B. Cox, Jr., LTD (formerly
known as Joseph B. Cox, Jr., P.C.)

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 1 4 2002

FILED
CLERK'S OFFICE

# SCHEDULE OF ACTION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD L. HUBER, WILLIAM J. AIRGOOD, ANTHONY DEFABBO, JOHN DINIO ERNEST GISHNOCK, JOHN BIDLENSCIK, HILMA MULLINS and WILLIAM DEEM, individually and on behalf of those similarly situated | : : : : : : | |
| Plaintiffs | : | |
| | : | |
| vs. | : | CIVIL ACTION NO. 02-CV-0304 |
| | : | |
| ROBERT G. TAYLOR, II; ROBERT G. TAYLOR, II, P.C.; CLETUS P. ERNSTER, III; GEORGE E. CIRE, JR.; J. ROBERT DAVIS, JR.; TAYLOR & CIRE; TAYLOR & ERNSTER, P.C.; ROBERT A. PRITCHARD; CHRISTOPHER FITZGERALD; LAW OFFICES OF ROBERT A. PRITCHARD; PRITCHARD LAW FIRM, PLLC; JOSEPH B. COX, JR.; JOSEPH B. COX, JR., P.C. and COX AND COX, L.L.P. | : : : : : : : : : : | |
| Defendants | : | |

Name of Assigned Judge:      The Honorable Donald J. Lee

RECEIVED
CLERK'S OFFICE
2002 JUN 14  A 10: 10

## Advanced ALI-ABA Course of Study

# Asbestos Litigation
# in the 21st Century

## Thursday-Friday, September 19-20, 2002
## Chicago (Le Meridien)

### ⊚ SCOPE AND PURPOSE

This advanced course of study reviews the sea change that is currently taking place in asbestos litigation. As bankruptcies remove "traditional" defendants, new defendants from every sector of American industry are drawn into the litigation. Plaintiffs' counsel have developed new theories of liability; defendants have revised old litigation strategies or created new ones; and both have faced novel litigation problems. At the same time, bankruptcy proceedings increasingly have become the forum for litigating asbestos liability.

Intended for practitioners and others interested in asbestos litigation, this course offers up-to-the-minute information on developments in state and federal courts, bankruptcy courts, and the halls of Congress.

Time is reserved throughout the program to address questions submitted by the registrants.

### ⊚ PLANNING CHAIRS

**John D. Aldock,** Shea & Gardner, Washington, D.C.
**Steven Kazan,** Kazan, McClain, Edises, Abrams, Fernandez, Lyons & Farrise, P.C., Oakland, California

### ⊚ FACULTY

**Barry S. Alberts,** Schiff Hardin & Waite, Chicago; Lecturer in Law, University of Chicago Law School
**David T. Austern,** Claims Resolution Management Corporation, Fairfax, Virginia

*[Continued within]* ◆ ◆ ◆ ◆



EXHIBIT
A



AMERICAN LAW INSTITUTE-AMERICAN BAR ASSOCIATION
COMMITTEE ON CONTINUING PROFESSIONAL EDUCATION
a nonprofit endeavor providing continuing professional
education for lawyers since 1947.        www.ali-aba.org

*[Continued]* ♦ ♦ ♦ ♦

**David M. Bernick,** Kirkland & Ellis, Chicago

**Leo V. Boyle,** Meehan, Boyle, Black & Fitzgerald, P.C., Boston;
President, Association of Trial Lawyers of America *(invited)*

**John D. Cooney,** Cooney & Conway, Chicago

**David W. Cugell, M.D.,** Professor of Medicine, Northwestern
University Medical School, Chicago

**Simona A. Farrise,** Kazan, McClain, Edises, Abrams, Fernandez,
Lyons & Farrise, P.C., Oakland, California

**Stanley L. Ferguson,** Senior Vice President and General Counsel,
USG Corporation, Chicago

**Darrell Grams,** Counsel, Ford Motor Company, Detroit

**Patrick M. Hanlon,** Shea & Gardner, Washington, D.C.

**Deborah R. Hensler,** Senior Fellow, RAND Institute for Civil
Justice, and Judge John W. Ford Professor of Dispute
Resolution, Stanford Law School, Stanford, California

**Jonathan P. Hiatt,** General Counsel, AFL-CIO, Washington, D.C.

**Elihu Inselbuch,** Caplin & Drysdale, Chartered, New York

**W. Mark Lanier,** The Lanier Law Firm, Houston

**Francis E. McGovern,** Professor of Law, Duke University
School of Law, Durham, North Carolina

**Edward F. Patz, Jr., M.D.,** Professor of Radiology, Duke University
Medical Center, Durham, North Carolina

**Joseph D. Pope,** Kronish Lieb Weiner & Hellman LLP, New York

**Joseph F. Rice,** Ness, Motley, P.A., Charleston, South Carolina

**Robert H. Riley,** Schiff Hardin & Waite, Chicago

**Dean M. Trafelet,** Hedlund Hanley Koenigsknecht & Trafelet,
Chicago

**Walter G. Watkins, Jr.,** Forman Perry Watkins Krutz & Tardy,
PLLC, Jackson, Mississippi

## ◎ PROGRAM

Thursday, September 19, 2002

7:30 a.m. Registration and Continental Breakfast

8:30 a.m. Overview — *Messrs. Aldock and Kazan*

8:45 a.m. **The Facts and Figures** — *Mr. Austern and
Professor Hensler*
Filing trends; disease mix; claims from non-traditional
industries; the widening circle of defendants; settlement values;
litigation screenings; economic effects

9:45 a.m. **The Perspectives of Organized Labor and the
Companies** — *Messrs. Ferguson and Hiatt*
Is there an asbestos litigation problem, and if so, what is it? The
significance of asbestos bankruptcies; rights of unimpaired non-
cancer claimants; threats to compensation of future cancer
victims; effects on workers and retirees; the long-term viability
of companies caught up in the asbestos tangle

10:45 a.m. Coffee Break

11:00 a.m. **Medical Monitoring for Lung Cancer** — *Dr. Patz*
Is screening for lung cancer justified? The orthodox view; the
promise and problems of spiral CT scans and other screening

*[Continued]* ♦ ♦ ♦ ♦

[Continued] ◆ ◆ ◆ ◆

techniques; early detection and survival rates; overdiagnosis; clinical trials; the current state of research

12:00 noon Lunch Break

1:30 p.m. **Non-Malignant Conditions: Diagnosis and Clinical Consequences** — *Dr. Cugell*
State of the art in diagnosing non-malignant conditions; the difference between "consistent with" and a diagnosis; prognosis; measures of impairment and disability; distinguishing impairment related to asbestos from impairments due to other causes; progression of non-malignant conditions; pulmonary function tests; the I.L.O. chest x-ray film classification system

2:30 p.m. **The Dynamics of an Asbestos Bankruptcy** — *Professor McGovern*
The basic principles; the new wave of asbestos bankruptcies; management of the proceedings; the stakeholders; negotiating and mediating reorganization plans; timing

3:00 p.m. Coffee Break

3:15 p.m. **Bankruptcy: The View from the Trenches** — *Messrs. Bernick, Inselbuch, Kazan, and Trafelet*
Revisiting substantive tort law through bankruptcy; official and unofficial claimants' committees; litigation of asbestos claims in the bankruptcy court; divergent interests among asbestos claimants (cancer victims vs. non-malignant claimants); the role of the futures' representative; estimating the value of claims; the requirements of section 524(g); dispensing with a section 524(g) injunction; the possibilities of a cramdown; medical monitoring

4:30 p.m. **Bankruptcy: Implications for the Tort System** — *Messrs. Aldock, Cooney, and Riley*
The automatic stay; efforts by non-bankrupt defendants to take advantage of the bankruptcies of others; disruption of established settlement patterns; the search for new defendants and new theories of liability; the problem of joint and several liability; the role of asbestos trusts

5:15 p.m. Adjournment for the Day

Friday, September 20, 2002

7:30 a.m. Continental Breakfast

8:00 a.m. **Key Jurisdictions: Illinois, Mississippi, Texas, and West Virginia** — *Messrs. Cooney, Lanier, Riley, and Watkins*
Magnet jurisdictions; *forum non conveniens*; pre-trial motions; discovery issues; independent medical examinations; trial scheduling; consolidation and joinder; punitive damages; trial groups mixing different diseases; jury characteristics

9:00 a.m. **The Low-Dose Case: Gaskets, Friction Products, and Beyond** — *Messrs. Grams and Rice*
Reconstructing exposures; thresholds for malignant and non-malignant diseases; alternative causes; outcomes in the tort system; issues on the horizon

10:00 a.m. Coffee Break

10:15 a.m. **The Non-Products Case: Premises and Contractor Liability** — *Ms. Farrise and Mr. Hanlon*

Theories of premises liability; liability of construction, installation, and maintenance contractors; workers' compensation and other defenses; key states; insurance issues

11:15 a.m. **Ethical Issues** — *Messrs. Alberts and Pope Huber v. Taylor;* litigation screenings; communications with clients; agency issues; settlements — disclosure, allocations, conflicts, synergies; fit between current ethical rules and mass tort litigation; do the rules need to be changed?

12:15 p.m. Lunch Break

1:45 p.m. **Federal Legislation: What, Why, and When?** — *Messrs. Boyle, Hanlon, and Kazan*
Need for Federal legislation; legislative approaches and their limits; current state of play; prospects in the 107th Congress and beyond

2:45 p.m. **The World of Asbestos Compensation: Where Are We Going? A Round Table Discussion** — *Messrs. Aldock, Cooney, Ferguson, Grams, Kazan, Lanier, and Rice*
New filings and trends; litigation screening programs; implications of the U.S. Supreme Court's grant of certiorari in *Norfolk & Western v. Ayers;* plaintiffs' strategies in an era of diminishing resources; defendants' strategies — cooperation, litigation, legislation, and settlement

4:00 p.m. Adjournment

**Total 60-minute hours of instruction: 13, including one hour of ethics**

REGISTRATION — 800-CLE-NEWS.

Tuition for this course is $895. Tuition entitles registrants to admission to all sessions, a set of study materials, and Continental breakfasts daily. To register, simply return the form provided, with payment; **or register with a valid credit card by:**
• Phone: 800-CLE-NEWS (800-253-6397)
• FAX: 215-243-1664
• Internet: www.ali-aba.org
Registrations will be accepted at the door if space is available, but please call in advance to avoid disappointment. **All course accounts must be settled by the first session of the course to assure admittance to the classroom.**

*Services for Persons with Disabilities:* If special arrangements are required for an individual with a disability to attend this program, please inform ALI-ABA of any special needs at least two weeks in advance. Write Alexander Hart, ALI-ABA, 4025 Chestnut Street, Philadelphia, PA 19104-3099, or call (215) 243-1630 or (800) CLE-NEWS (253-6397), extension 1630 *(toll-free, U.S. and Canada).*

CANCELLATIONS

Cancellations received no later than **September 16** will be honored and tuitions refunded, less a $25 cancellation fee. Cancellations received by noon **September 18** will be honored and tuitions refunded, minus, however, a $75 cancellation fee. Telephone cancellations (215-243-1631) will be honored under the above time limits and terms, but *must* be confirmed by letter; all requests for refunds must be received in writing and must be postmarked no later than **September 23.**

DISCOUNTED AIRFARES

For ALI-ABA discounted airfares, please call: DELTA 1-800-241-6760, re: File #179352A; UNITED 1-800-521-4041, re: File #535DG. Restrictions may apply.

HOTEL ACCOMMODATIONS

A limited block of rooms has been reserved at Le Meridien Chicago. Room rate: $219 per night, single or double occupancy. These rooms will be held as a block, unless exhausted, until August 28, at which time they will be released to the general public. Registrants must make their own hotel reservations and indicate that they are attending the ALI-ABA Course of Study to qualify for rooms in the block.

Room reservations may be made by calling or writing to Le Meridien Chicago, 520 North Michigan Avenue, Chicago, IL 60611; phone 312-645-1500; FAX 312-645-1550. Confirmations will be sent by the hotel. Please read the cancellation policy carefully.

ADDITIONAL INFORMATION

For further information write Alexander Hart, Director, Courses of Study, ALI-ABA, 4025 Chestnut Street, Philadelphia, PA 19104-3099; telephone (215) 243-1630 or *(toll free, U.S. and Canada only)* (800) CLE-NEWS (253-6397), extension 1630; or visit ALI-ABA's web site at www.ali-aba.org

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 14 2002

FILED
CLERK'S OFFICE

## CERTIFICATE OF SERVICE

I, James A. McGovern, Esquire, do hereby certify that a true and correct copy of the Response of

Defendant Joseph B. Cox, Jr. and Defendant Joseph B. Cox, Jr., LTD. (formerly known as

Joseph B. Cox, Jr., P.C.) to Plaintiffs' Motion to Vacate Conditional Transfer Order 212 Related

to *Huber, et al. vs. Taylor, et al.*, PAW 2-02-304, was served upon all parties by First-Class mail

at the addresses set forth below and on the accompanying Panel Service List on the date set forth

below:

*FOR PLAINTIFFS:*

Carol A. Mager, Esquire
**MAGER & WHITE, P.C.**
One Liberty Place, 44th Floor
1650 Market Street
Philadelphia, PA  19103

Joseph D. Pope, Esquire
**Kronish, Lieb, Weiner & Hellman, LLP**
1114 Avenue of the Americas
47th Floor
New York, New York  10036

Alisa N. Carr, Esquire
**DORNISH & SCOLIERI, P.C.**
429 Forbes Avenue
Allegheny Building, Suite 1100
Pittsburgh, PA  15219-1604

*FOR DEFENDANTS:*

Howard M. Klein, Esquire
**Conrad, O'Brien, Gellman & Rohn, P.C.**
1515 Market Street, 16th Floor
Philadelphia, PA  19102

Anita B. Weinstein, Esquire
**COZEN & O'CONNOR**
1900 Market Street
Philadelphia, PA  19103-3508

Kevin L. Colosimo, Esquire
**HOUSTON HARBAUGH**
Two Chatham Center
Twelfth Floor
Pittsburgh, PA  15219-3463

*COURTESY COPY TO:*

The Honorable Charles R. Weiner
**United States District Court for the Eastern District of Pennsylvania**
U.S. Courthouse, Room 6613
601 Market Street
Philadelphia, PA  19106

The Honorable Donald J. Lee
**United States District Court for the Western District of Pennsylvania**
Room 916, U.S. Post Office & Courthouse
700 Grant Street
Pittsburgh, PA  15219

Clerk of the Court
**United States District Court for the Western District of Pennsylvania**
U.S. Post Office & Courthouse
700 Grant Street
Pittsburgh, PA  15219

**JAMES A. MCGOVERN**

Dated: 6/13/02

\01_19\LIAB\TCD\LLPG\321956\KXG\13231\00110

**PANEL SERVICE LIST (Excerpted from CTO-212)**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

Ronald L. Huber, et al. vs. J. Robert Davis, Jr., et al.
W.D. Pennsylvania, C.A. No. 2:02-304

Joseph J. Bellew, Esquire
**Cozen & O'Connor**
The Atrium, 4th Floor
1900 Market Street
Philadelphia, PA  19103

Richard C. Binzley, Esquire
**Thompson Hine, LLP**
127 Public Square
3900 Key Center
Cleveland, OH  44114

Edward J. Cass, Esquire
**Gallagher, Sharp, Fulton & Norman**
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH  44115

Adam M. Chud, Esquire
**Shea & Gardner**
1800 Massachusetts Avenue, N.W.
Washington, DC  20036

David D. Damico, Esquire
**Burns, White & Hickton**
2400 Fifth Avenue Place
120 Fifth Avenue
Pittsburgh, PA  15222

Carol A. Mager, Esquire
**Mager & White, P.C.**
One Liberty Place, 44th Floor
1650 Market Street
Philadelphia, PA  19103

Ralph A. Finizio, Esquire
**Houston & Harbaugh**
Two Chatham Center, 12th Floor
Pittsburgh, PA  15219

Raymond P. Forceno, Esquire
**Forceno & Hannon**
Philadelphia Bourse Bldg., Suite 100
Independence Mall East
Philadelphia, PA  19106

Ellen B. Furman, Esquire
**Goldfein & Joseph**
1600 Market Street
33rd Floor
Philadelphia, PA  19103

Susan M. Hansen, Esquire
**Brownson & Ballou**
4800 U.S. Bank Place
601 Second Avenue, South
Minneapolis, MN  55402

Robert A. Klein, Esquire
**Conrad, O'Brien, Gellman & Rohn**
1515 Market Street
16th Floor
Philadelphia, PA  19102

Reginald S. Kramer, Esquire
**Oldham & Dowling**
195 South Main Street
Suite 300
Akron, OH  44308

David C. Landin, Esquire
**Hunton & Williams**
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA  23219

Neil Selman, Esquire
**Selman, Breitman & Burgess**
11766 Wilshire Boulevard, 6th Floor
Los Angeles, CA  90025

Ronald L. Motley, Esquire
**Ness, Motley, Loadholt, Richardson & Poole**
28 Bridgeside Boulevard
P.O. Box 1792
Mt. Pleasant, SC  29465

William J. O'Brien, Esquire
**Conrad, O'Brien, Gellman & Rohn**
1515 Market Street, 16th Floor
Philadelphia, PA  19102

William J. O'Brien, Esquire
**Delany & O'Brien**
306 West Somerdale Road
Voorhees, NJ  08043

John J. Repcheck, Esquire
**Marks, O'Neill, O'Brien & Courtney**
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA  15219

John D. Roven, Esquire
**John Roven & Associates**
2190 North Loop West
Suite 410
Houston, TX  77018

Gene Locks, Esquire
**Greitzer & Locks**
1500 Walnut Street
Philadelphia, PA  19102

Samantha L. Southall, Esquire
**Kronish, Lieb, Weiner & Hellman**
1114 Avenue of the Americas
New York, NY  10036

Robert N. Spinelli, Esquire
**Kelley, Jasons, McGuire & Spinelli**
Centre Square West
15th Floor
Philadelphia, PA  19102

Robert E. Swickle, Esquire
**Jaques Admiralty Law Firm, P.C.**
1370 Penobscot Building
Detroit, MI  48226

Andrew J. Trevelise, Esquire
**Reed Smith LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103

James K. Weston, II, Esquire
**Tom Riley Law Firm**
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA  52406

Richard D. Schuster, Esquire
**Vorys, Sater, Seymour & Pease**
52 East Gay Street
P.O. Box 1008
Columbus, OH  43216