JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUL 31 2002

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| IN RE ASBESTOS PRODUCTS | ) | |
| LIABILITY LITIGATION (No. VI) | ) | MDL DOCKET NO. 875 |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 01-10578 |
| | ) | |
| FEDERAL-MOGUL GLOBAL, INC., | ) | Chapter 11 |
| | ) | (Pending in the United States |
| Debtor. | ) | Bankruptcy Court for the |
| | ) | District of Delaware) |

| | | |
|---|---|---|
| DIANE MATHIAS, Individually and as Personal | ) | |
| Representative of the Heirs and Estate of | ) | |
| GEORGE MATHIAS, Deceased | ) | |
| | ) | |
| vs. | ) | EP 01 CA 0380 DB |
| | ) | |
| ACandS, INC., et al. | ) | |

[Captions Continued on Following Page]

1

OFFICIAL FILE COPY   IMAGED AUG 1 '02

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
PARIS DIVISION

COLLEEN CARTER, Individually and as    )
Personal Representative of the Heirs and Estate   )
of MARVIN CARTER, Deceased; and SUZETTE   )
OLSON, Individually and as Personal    )
Representative of the Heirs and Estate of    )
ORVILLE OLSON, Deceased    )
                                               )
vs.                                            )          3:02CV00009
                                               )
ACandS, INC., et al.                           )

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

LAURA MADDEN, Individually and as Personal   )
Representative of the Heirs and Estate of    )
THOMAS MADDEN, JR., Deceased,    )
                                               )
     Plaintiff,               )
                                               )
vs.                                            )          3:02CV00194
                                               )
ABLE SUPPLY COMPANY, et al.,    )
                                               )
     Defendants.              )

## DEFENDANT VIACOM, INC.'S RESPONSE TO PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER

COMES NOW Defendant Viacom, Inc., successor to Westinghouse Electric Corporation (hereinafter "Westinghouse"), and tenders this, its response to Plaintiffs' motion to vacate the Conditional Transfer Order entered as to the above-styled civil actions on June 12, 2002 (CTO-214).

For the reasons set forth below, Plaintiffs have failed to demonstrate any good or sufficient cause to vacate the Consolidated Transfer Order which, instead, is entirely consistent with this Panel's prior precedents and with the principles underlying the creation of MDL-875.   Accordingly, Westinghouse respectfully requests that Plaintiffs' motion to vacate be denied.

FACTUAL AVERMENTS[1]

1.

Plaintiffs' motion to vacate relates to the conditional transfer of three asbestos personal injury and/or wrongful death cases to MDL-875: <u>Madden v. Able Supply Co.</u>, 3:02CV00194 (S.D. Tex.)(hereinafter "<u>Madden</u>"); <u>Carter v. ACandS, Inc.</u>, 3:02CV00009 (E.D. Tex.) (hereinafter "<u>Carter</u>"); and <u>Mathias v. ACandS, Inc.</u>, EP 01 CA 0380 DB (W.D. Tex.) (hereinafter "<u>Mathias</u>").

2.

In each of these cases, Westinghouse removed the Plaintiff's Texas state court-filed action to the appropriate United States District Court, asserting its entitlement to immunity under the government contractor defense as announced in <u>Boyle v. United Techs. Corp.</u>, 487 U.S. 500 (1988) and alleging all other facts essential to jurisdiction under the "Federal Officer Removal Statute," 28 U.S.C. § 1442(a)(1).

---

[1] Due to Plaintiffs' failure to comply with Rule 7.1(a) in relation to the statements or averments of fact set forth in their motion to vacate and supporting brief - which are set forth in a narrative form rather than as specifically numbered averments of fact as required by this Panel's Rules - Westinghouse is unable to fully comply with Rule 7.1(b).  Westinghouse has attempted to set forth the procedural facts relevant to Plaintiffs' motion as succinctly as possible and, in an effort to comply as fully as possible with the dictates of Rule 7.1(b), has set forth such facts as individually numbered averments.

3

3.

In <u>Madden</u>, the Plaintiff filed a motion for remand on or around April 22, 2002, asserting a lack of subject matter jurisdiction on the part of the District Court and asking the Court to remand the case in its entirety to the state court or, in the alternative, to sever her claims against Westinghouse and to remand all non-Westinghouse claims.

4.

On May 27, 2002, the United States District Court for the Southern District of Texas issued an Order (filed with the Clerk of Court the following day) which rejected the <u>Madden</u> Plaintiff's claim of a lack of subject matter jurisdiction and instead held that the Court did have removal jurisdiction over each and every claim asserted against Westinghouse pursuant to § 1442(a)(1). The Court did, however, grant the Plaintiff's alternative request, and severed and remanded her claims against all defendants other than Westinghouse.  A copy of the District Court's Order is attached hereto for the Court's convenience as "Exhibit A."

5.

In <u>Carter</u>, the Plaintiff[2] filed: 1) a motion for remand on or around April 15, 2002, claiming that Westinghouse's notice of removal had not been timely filed; and 2) a separate motion for remand on April 22, 2002, asserting a lack of subject matter jurisdiction on the part of the District Court and asking the Court to remand the case in its entirety to the state court or, in the alternative, to sever her claims against Westinghouse and to remand all non-Westinghouse claims.

---

[2]As referenced in Plaintiffs' brief in support of their motion to vacate, the <u>Carter</u> case - as originally removed to the District Court - also involved the claims of a second plaintiff, Suzette Olson, both individually and as representative of the estate of her decedent, Orville Olson.  Plaintiff Olson's unopposed motion to sever and remand her claims was granted by the United States District Court for the Eastern District of Texas on or around April 27, 2002.  Accordingly, only Colleen Carter remains as a Plaintiff in <u>Carter</u> as currently pending in federal court.

6.

On June 26, 2002, the United States District Court for the Eastern District of Texas issued an Order (filed with the Clerk of Court the following day) which held that Westinghouse's removal had been timely and which rejected the Carter Plaintiff's claim of a lack of subject matter jurisdiction and instead held that the Court did have removal jurisdiction over each and every claim asserted against Westinghouse pursuant to § 1442(a)(1).  The Court did, however, grant the Plaintiff's alternative request, and severed and remanded her claims against all defendants other than Westinghouse.  A copy of the District Court's Order is attached hereto for the Court's convenience as "Exhibit B."

7.

In Mathias, the Plaintiff filed a motion for remand on or around April 11, 2002, claiming that Westinghouse's notice of removal had not been timely filed and asserting a lack of subject matter jurisdiction on the part of the District Court.

8.

While the United States District Court for the Western District of Texas subsequently granted the Mathias Plaintiff's motion to voluntarily dismiss certain of her claims against Westinghouse with prejudice, the Court has not taken any action on Plaintiff's motion for remand.

ARGUMENT

Westinghouse notes that an elemental difficulty in responding to Plaintiffs' motion to vacate is that, in light of the nature of Plaintiffs' brief in support thereof, it is almost impossible to decipher either the precise relief sought by Plaintiffs or the basis upon which they request such relief.  For example, Plaintiffs' brief urges that "the Conditional Transfer Order should be vacated so that the

5

four claimants represented in these cases can proceed in the timely resolution of their claims in *state* court." (Plaintiffs' Brief, p. 2) (emphasis in original). Practically simultaneously, however, Plaintiffs note that the claims pursued by Suzette Olson have already been severed and remanded by the District Court so that only the claims of three plaintiffs - Madden, Carter and Mathias - remain pending in federal court. (Id., p. 4, n. 2). Even more puzzling, Plaintiffs stress that all non-Westinghouse claims in both <u>Madden</u> and <u>Carter</u> have already been severed and remanded by the respective District Courts leaving only their claims against Westinghouse pending in federal court (Id., p. 5), but appear to simultaneously urge that these Courts' rationale for severance of the non-Westinghouse claims provides the very basis for their argument that Carter's and Madden's claims against Westinghouse should not only <u>not</u> be transferred by this Panel, but should instead be remanded to state court directly contrary to the District Courts' Orders. (Id., pp. 5-6). Finally, Plaintiffs' brief does not seem to anticipate merely that, if their motion were to be granted, this Panel would refuse to transfer the affected cases from one federal court to another. Instead, Plaintiffs seem to be urging this Court not only to vacate its Conditional Transfer Order, but to remand the underlying cases to state court.[3]

After careful consideration, it appears to Westinghouse that Plaintiffs intended to make two basic arguments in support of their motion to vacate. First, Plaintiffs seem to argue in general terms that the transfer of their asbestos-related personal injury and/or wrongful death claims to MDL-875 would prevent them from obtaining a "just, speedy, and inexpensive determination" of their claims

---

[3]By way of example, and as noted above, Plaintiffs urge that this Panel's Conditional Transfer Order should be vacated so that they "can proceed in the timely resolution of their claims in *state* court." (Plaintiffs' Brief, p. 2) (emphasis in original). Likewise, Plaintiffs urge that "this Panel should vacate its Conditional Transfer Order because these cases no more belong in federal court than they do at MDL." (Id., p. 4). Finally, Plaintiffs urge this Panel that they must be afforded "a timely resolution of their claims in court - *state* court." (Id., p. 7) (emphasis in original).

as referenced at Fed. R. Civ. P. 1 and, similarly, that the transfer of these cases would not be "for the convenience of parties and witnesses" and would not "promote the just and efficient conduct of such actions" as anticipated by 28 U.S.C. § 1407(a). Second, Plaintiffs appear to suggest, with specific regard to Mathias, that the pending motion for remand in that case should preclude transfer to MDL-875. As set forth herein, neither of these arguments can be sustained given the prior decisions of this Panel.

Distilled to its essence, Plaintiffs' first argument in support of their motion to vacate appears to be that transfer of their asbestos-related personal injury and wrongful death claims to MDL-875 would have the effect of "further delaying these plaintiffs their opportunity - and right - to quickly proceed with the prosecution of their cases and have their day in court." (Plaintiffs' Brief, pp. 3-4). This argument (which would be equally available to any asbestos-related personal injury or wrongful death plaintiff and is not associated with any peculiar aspect of these Plaintiffs' claims) is patently meritless.

This Panel has repeatedly, and consistently, rejected arguments against inclusion in MDL-875 by individual asbestos-related personal injury and/or wrongful death plaintiffs based upon an allegation that such a transfer would deny such plaintiffs their right to speedy resolution of their claims. See, e.g., In re Asbestos Prods. Liability Litig. (No. VI), 170 F. Supp. 2d. 1348, 1349-50 (Jud. Pan. Mult. Lit. 2001) (hereinafter "Wooley/Baden"); In re Asbestos Prods. Liability Litig. (No. VI), 771 F. Supp. 415 (Jud. Pan. Mult. Lit. 1991). In fact, this Panel has specifically held (contrary to Plaintiffs' conclusory argument) that the "centralization of all federal asbestos personal injury/wrongful death actions . . . 'will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.'" In re Asbestos Prods. Liability Litig. (No.

VI), 771 F. Supp. at 418 (quoting, 28 U.S.C. § 1407(a)). In short, this Panel aptly noted over ten years ago that "[t]he heyday of individual adjudication of asbestos mass tort lawsuits has long passed" and recognized that the overwhelming volume of such claims necessitates the current MDL approach so that the asbestos litigation crisis does not threaten the basic administration of justice in America's courts. Id., at 418-19.

The need for uniform transfer of all federally-pending asbestos-related personal injury and/or wrongful death claims to MDL-875 has increased, rather than diminished, in intensity with the passage of time since this Panel's discussion of the asbestos litigation crisis in 1991. As observed by this Panel just last year, the need for the type of uniform and responsible handling of asbestos litigation exhibited by MDL-875 - with its "'prudent conservation'" of the resources available to compensate injured parties which otherwise might be expended in exorbitant punitive damages windfalls to individual plaintiffs and their counsel - becomes increasingly apparent as such resources are being rapidly depleted and more and more of the entities who could provide such resources are being forced into bankruptcy. Wooley/Baden, 170 F. Supp. 2d at 1350 (quoting, In re Collins, 233 F.3d 809, 812 (3d Cir. 2000), cert. denied, 121 S. Ct. 2216 (2001)).

In short, Plaintiffs have fallen far short of demonstrating the type of compelling and extraordinary circumstances which might conceivably justify this Panel from deviating from its determined policy of centralizing all asbestos-related injury or death claims pending in federal courts within MDL-875. Certainly, if such unique circumstances were to develop, Judge Weiner can be expected to act accordingly. See, Wooley/Baden, 170 F. Supp. 2d at 1350. Thus, Plaintiffs' first argument in support of their motion to vacate is plainly without merit.

8

Plaintiffs also argue, with specific regard to <u>Mathias</u>, that this Panel's Conditional Transfer Order should be vacated based upon the fact that Plaintiff Mathias' motion to remand remains pending without action in the District Court. An identical argument was recently considered, and soundly rejected, in <u>Wooley/Baden</u>. As stated by this Panel:

> Plaintiffs in these actions have argued in essence that transfer should be denied or deferred in order to permit the resolution of pending motions to remand the actions to state court. There is no need to delay transfer in order to accommodate such an interest. We note that: 1) as a practical matter, there is a lag time of at least three or four months from the filing of an action, its identification as a potential tag-along action, issuance of a conditional transfer order, stay of transfer when a party timely objects to the conditional transfer, briefing on the question of transfer, the Panel hearing session, and the issuance of the Panel's subsequent order; 2) Panel Rule 1.5, R.P.J.P.M.L. 199 F.R.D. at 427, expressly provides that the pendency of a conditional transfer order does not in any way i) suspend orders and pretrial proceedings in the district court in which the action that is the subject of the conditional transfer order is pending, or ii) limit the pretrial jurisdiction of that court; and 3) *accordingly, those courts wishing to address such motions* [for remand] *have adequate time in which to do so, those courts concluding that such issues should be addressed by the transferee judge need not rule on them, and the process of 1407 transfer to MDL-875 can continue without any unnecessary interruption or delay.*

<u>Wooley/Baden</u>, 170 F. Supp. 2d at 1349, n. 1 (emphasis added).

The same analysis is applicable here. While it is clearly true (as stressed by Plaintiffs) that the pendency of the Conditional Transfer Order has not deprived the District Court of jurisdiction to pass upon Plaintiff Mathias' motion for remand, it is equally true that the Court has elected not to rule upon this motion for remand which has been pending since April 11, 2002. Accordingly, the pendency of the motion for remand does not provide good and sufficient grounds to vacate this Panel's Conditional Transfer Order. Instead, these cases, including <u>Mathias</u>, should be transferred

to MDL-875 "without any unnecessary interruption or delay" so that Judge Weiner can rule upon any and all pending motions, including Plaintiff Mathias' motion for remand.[4]

## CONCLUSION

For the reasons set forth above, Plaintiffs have utterly failed to state any good and sufficient basis in support of their motion to vacate. Instead, the transfer of these cases to MDL-875 should be undertaken without further delay.

Respectfully submitted,

STRONG PIPKIN BISSELL, & LEDYARD, L.L.P.

John G. Bissell
State Bar No. 02356000
Michael Hendryx
State Bar No. 09461200.
1111 Bagby, Suite 2300
Houston, Texas  77002-2546
(713) 651-1900
(713) 651-1920 - Facsimile

**ATTORNEYS FOR DEFENDANT VIACOM, SUCCESSOR BY MERGER TO CBS CORPORATION F/K/A WESTINGHOUSE ELECTRIC CORPORATION**

---

[4]As indicated above, Plaintiffs occasionally seem to suggest that their motions to sever and remand as to the claims brought by Plaintiffs Carter and Madden against defendants other than Westinghouse, and as to any and all claims brought by Plaintiff Suzette Olson, likewise remain pending and that the ordered remand of these claims has not been consummated. At other times, Plaintiffs indicate their belief that these claims have already been severed and remanded to the appropriate Texas state courts and that the only claims which remain in federal court (and thus subject to this Panel's Conditional Transfer Order) are: 1) all remaining claims brought by Plaintiff Mathias (who did not seek severance of her non-Westinghouse claims and whose motion for remand has not been ruled upon); 2) Plaintiff Carter's claims against Westinghouse; and 3) Plaintiff Madden's claims against Westinghouse. Of course, the issue of whether these particular "remands" remain pending or have been finalized is, for the reasons set forth above, immaterial to the question of the appropriateness of this Panel's Conditional Transfer Order. Wooley/Baden, 170 F. Supp. 2d at 1349, n. 1.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

United States Courts
Southern District of Texas
ENTERED

MAY 2 8 2002

Michael N. Milby, Clerk

LAURA MADDEN, Individually and as the §
Personal Representative of the heirs and estate §
of THOMAS MADDEN, JR. §
     Plaintiff, §
  §
v. §    CIVIL ACTION NO. G-02-194
  §
ABLE SUPPLY COMPANY, *et al.* §
    Defendants. §

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO REMAND AND GRANTING PLAINTIFF'S MOTION FOR SEVERANCE

    This is an asbestosis lawsuit brought by Plaintiff Laura Madden, individually and on behalf

of the estate of her deceased husband, against over forty Defendants. Plaintiff's claims, which are

derived solely from state law, arise out of asbestos-related personal injuries allegedly suffered by her

husband, Thomas Madden, Jr. ("Madden"). Plaintiff originally filed her claims in Texas state court

almost eighteen months ago. However, Defendant Viacom, Inc., successor to Westinghouse Electric

Corporation ("Westinghouse"),[1] recently removed the entire action to this forum pursuant to the

Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1).[2] Plaintiff filed a timely Motion to Remand

for Lack of Subject Matter Jurisdiction, or alternatively, a Motion for Severance. For the reasons

---

    [1] At all times relevant to Plaintiff's claims, Defendant was known as Westinghouse. Thus, the Court will refer to Defendant as "Westinghouse" throughout this Order.

    [2] Generally, parties removing an action pursuant to § 1442(a)(1) must file a notice of removal within thirty days after receipt of the plaintiff's initial pleading. If, however, the initial pleading does not articulate the details of the plaintiff's claims, the thirty day time period begins to run on the date that the defendant receives "other paper" specifically indicating the grounds for removal. See 28 U.S.C. § 1446(b). In this case, Westinghouse filed its Notice of Removal over four months after its receipt of Plaintiff's initial pleading. Nevertheless, because Westinghouse first discovered the potential for removal when it received a copy of Madden's Answers to Master Discovery Requests on February 22, 2002, Westinghouse's March 21, 2002 Notice of Removal was timely filed.



EXHIBIT

*A*

articulated below, Plaintiff's Motion to Remand is hereby **GRANTED IN PART** and **DENIED IN PART** and  Plaintiff's Motion for Severance is hereby **GRANTED**.

### I.

The following facts are germane to this Order. Madden served in the U.S. Navy for over twenty years. During his military service, he worked on at least one vessel (the USS Wren) that carried turbine generators manufactured by Westinghouse. Plaintiff maintains that those turbines emitted asbestos particles into the surrounding air, causing significant health hazards to persons working nearby. Madden allegedly inhaled a large quantity of this asbestos-laden dust and consequently, contracted mesothelioma. This painful condition, a cancer of the lung lining linked to asbestos exposure, caused Madden's recent death.

Westinghouse does not challenge Plaintiff's assertion that Madden worked in close proximity to its turbines. In fact, Westinghouse candidly admits that it used asbestos-containing thermal insulation in the manufacture of the marine turbines for the USS Wren. However, Westinghouse maintains that the decision to manufacture the turbines using asbestos-laden material was not its own. On the contrary, Westinghouse contends that it designed, manufactured and supplied the turbines in accordance with precise specifications and detailed regulations promulgated by a U.S. Naval Officer.

### II.

A party may remove an action from state court to federal court if the action is one over which the federal court possesses subject matter jurisdiction. See 28 U.S.C. § 1441(a). The removing party bears the burden of showing that federal jurisdiction exists and that removal is proper. See Manguno v. Prudential Prop. and Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002); Carpenter v. Wichita Falls Indep. Sch. Dist., 44 F.3d 362, 365 (5th Cir. 1995). When determining the propriety of subject matter

jurisdiction in the context of a motion to remand, a district court must consider the claims in the plaintiff's state court petition as they existed at the time of removal.[3] See Manguno, 276 F.3d at 723; Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 264 (5th Cir. 1995).

In this case, Westinghouse asserts that federal jurisdiction exists pursuant to the Federal Officer Removal Statute, which provides:

> A civil action . . .commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office.

28 U.S.C. § 1442(a)(1).A moving party satisfies the statute if the party: (1) demonstrates that it acted under the direction of a federal officer, (2) raises a federal defense to the plaintiffs' claims, and (3) demonstrates a causal nexus between the plaintiffs' claims and acts the party performed under color of federal office. See Mesa v. California, 489 U.S. 121, 124-25, 134-35, 109 S. Ct. 959, 962, 967, 103 L.Ed.2d 99 (1989). If the moving party satisfies these requirements, that party gains access to a federal forum even if the plaintiff's complaint fails to raise a federal question. See Ryan v. Dow Chem.Co., 781 F. Supp. 934, 939 (E.D.N.Y. 1992).

### III.

Prior to ascertaining whether Westinghouse properly invoked federal officer removal jurisdiction, the Court queries whether Westinghouse qualifies as a "person" in the context of §

---

[3] In her Motion to Remand, Plaintiff states that "to the extent any claims against Westinghouse regarding exposure to marine turbines assert theories of liability other than failure to warn, [Plaintiff] hereby waives[s] and disavow[s] any such claims." The Court acknowledges this statement and accordingly, invites Plaintiff to file a Motion to Dismiss her non-failure to warn causes of action. As stated above, however, the Court accepts Plaintiff's claims as alleged in her state court Petition (as it existed at the time of removal) for purposes of determining whether remand is proper. Plaintiff's state court allegations include claims pertaining to the design, manufacture and installation of marine turbines, in addition to Westinghouse's alleged failure to warn.

1442(a)(1). The Court in Arnold By and Through Arnold v. Blue Cross & Blue Shield of Texas, 973 F. Supp. 726 (S.D. Tex. 1997) held that corporations, such as Westinghouse, are not "persons" acting under a federal officer for purposes of federal officer removal. See id. at 739. In that case, the Court relied on the Supreme Court's decision in Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund, 500 U.S. 72, 86, 111 S. Ct. 1700, 1709, 114 L.Ed.2d. 134 (1991), which explained that Congress enacted § 1442 to protect individual officers, not federal agencies. See Arnold, 973 F. Supp. at 739. In light of Int'l Primate, the Arnold Court reasoned that corporations, like agencies, do not qualify as "person[s] acting under" an officer for purposes of the statute. See id. The Fifth Circuit's holding in Winters v. Diamond Shamrock Chemical Co., 149 F.3d 387 (5th Cir. 1998), cert. denied, 526 U.S. 1034, 119 S. Ct. 1286, 143 L.Ed.2d 378 (1999), however, overrules Arnold. In that case, the Fifth Circuit expressly clarified that "corporate entities qualify as 'persons' under § 1442(a)(1)." Id. at 398; see also Guillory v. Ree's Contract Serv., Inc., 872 F. Supp. 344, 346 (S.D. Miss. 1994); Faulk v. Owens-Corning Fibreglass Corp., 48 F. Supp. 2d 653 (E.D. Tex. 1999) (holding by implication that corporate defendants are § 1442(a)(1) defendants). In reaching their conclusion, the Fifth Circuit noted that the Supreme Court's holding in Int'l Primate had been superseded by a 1996 amendment to the statute that expressly allows federal agencies to remove actions against them to federal court. See Winters, 149 F.3d at 397, n. 12. Thus, Westinghouse is indeed a "person" for purposes of the Federal Officer Removal Statute.

### The Mesa Test

The Court now turns to the issue of whether Westinghouse satisfies the requisite test for federal officer jurisdiction articulated by the Supreme Court in Mesa. In support of its position, Westinghouse submits the affidavit of James M. Gate, former Manager of Design Verification of the Marine Division of Westinghouse, and a marine engineer for Westinghouse since 1953. Gate avers

that the Navy "[t]hrough its Naval Sea Systems Command (NAVSEA) ... developed ship designs and plans, as well as comprehensive and detailed regulations and specifications for all shipboard equipment, and its officers supervised, enforced and approved [Westinghouse's] compliance with the plans, regulations and specifications." Gate also avows that "[w]ith respect to turbines supplied by Westinghouse to the Navy for use aboard the USS Wren, all aspects of the design performance requirements, and materials used for construction, including thermal insulation, were specified by NAVSEA, which acted under the authority of the Secretary of the Navy. . . . NAVSEA specifications incorporated military specifications, and these documents require use of asbestos-containing insulation for the turbines." Finally, Gate avers that "[t]he U.S. Navy had precise specifications as to the nature of any communication affixed to machinery supplied by Westinghouse to the Navy. Westinghouse would not have been permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field, to affix any type of warning or caution statement to equipment intended for installation onto a naval vessel, beyond those required by the Navy, without prior discussion and approval by the Navy." Gate's affidavit is not rebutted by Plaintiff.

    1.   <u>Did Westinghouse act under the direction of a federal officer?</u>

The first prong of the <u>Mesa</u> inquiry asks if Westinghouse demonstrates that it acted under the direction of a federal officer with respect to the conduct at issue. <u>See Mesa</u>, 489 U.S. at 125, 109 S. Ct. at 962-63. The submission of the uncontested Gate affidavit plainly shows that Westinghouse was acting under the direction of a Naval officer in the design and manufacture of the marine turbines. The Gate affidavit also demonstrates that warnings (if any) furnished by Westinghouse in connection with the turbines were made pursuant to Navy directives.

The second issue to address under <u>Mesa</u> is whether Westinghouse raises a federal defense to Plaintiff's claims. <u>See id.</u> at 129, 109 S. Ct. at 965. Under <u>Willingham v. Morgan</u>, 395 U.S. 402, 89 S. Ct. 1813, 23 L.Ed.2d 396 (1969), any party qualifying as a federal officer who can raise a colorable defense arising out of their duty to enforce federal law is entitled to remove. The party need not prove that it can sustain the defense, but only that it presents a colorable claim. <u>See id.</u> at 406, 89 S. Ct. at 1816. As explained by the <u>Willingham</u> Court, "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." <u>Id.</u> at 407, 89 S. Ct. at 1816. However, the removing party need not prove its case prior to removal, and courts should not frustrate the policy of protecting federal officers by adopting "a narrow, grudging interpretation of § 1442(a)(1)." <u>Id.</u>

Westinghouse invokes the federal "military contractor defense" articulated by the Supreme Court in <u>Boyle v. United Technologies Corp.</u>, 487 U.S. 500, 108 S. Ct. 2510, 101 L.Ed.2d 442 (1988). Pursuant to this defense, a defendant who designs or manufactures products under the direction of the federal government can evade liability under state law for injuries resulting from the use of those products by demonstrating that: (1) the United States approved reasonably precise specifications for the contracted-for equipment; (2) the equipment conformed to those specifications; and (3) the equipment supplier warned the United States about possible dangers in the use of the equipment known to the supplier but unknown to the United States. <u>See id.</u> at 512, 108 S. Ct. at 2518. The <u>Boyle</u> Court explained that without this protection, government contractors facing possible liability arising from their performance of government contracts would either decline to manufacture equipment according to government specifications or raise their prices. <u>See id.</u> at 507, 108 S. Ct. at 2515-16. Either way, the United States' interest in the procurement of equipment would

be directly affected. Thus, this rationale provides a sufficient condition for the displacement of state law. See id. While Boyle applied the enunciated test to a design defect case, the Fifth Circuit later established that Boyle likewise applies in failure to warn scenarios. See Garner v. Santoro, 865 F.2d 629, 635 (5th Cir. 1989); Bynum v. FMC Corp., 770 F.2d 556, 574 n. 24 (5th Cir. 1985).

In her Motion to Remand, Plaintiff vehemently argues that Westinghouse cannot successfully establish the military contractor defense. Under Willingham, however, whether Westinghouse will ultimately prevail on the defense is irrelevant. So long as Westinghouse has established a *colorable* claim to a federal defense, the second prong of the Mesa test is satisfied. And in light of the unrebutted facts averred by Gate, Westinghouse easily sustains that burden.

> 3.   Has Westinghouse demonstrated a causal nexus?

The third prong of the Mesa test requires Westinghouse to exhibit a causal nexus between the claims against it and the acts it performed under the color of federal office. See Mesa, 489 U.S. at 133, 109 S. Ct. at 967. Plaintiff's claims against Westinghouse pertain to the design, construction and installation of marine turbines on U.S. Navy vessels; and to the warnings (or the lack thereof) affixed to those turbines. These turbines were constructed pursuant to stringent Naval specifications. Moreover, any warnings promulgated (or not promulgated) with respect to the turbines were governed by Navy guidelines. Thus, the causal nexus is axiomatic. Accordingly, because all three prongs of the Mesa test are satisfied in this case, Plaintiff's Motion to Remand is hereby **DENIED** with respect to her claims against Westinghouse only.

## IV.

In her Motion for Severance, Plaintiff requests that if the Court exercises subject matter jurisdiction over her claims against Westinghouse, the Court sever those claims from her claims against the other Defendants ("Remaining Claims") and remand the Remaining Claims to state court.

In evaluating Plaintiff's request, the Court is guided by the supplemental jurisdiction statute, 28 U.S.C. § 1367. Section (a) of that statute provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Section (c) of the statute refines the supplemental jurisdiction doctrine by enumerating four circumstances in which District Courts have discretion to decline supplemental jurisdiction over state law claims: (1) when the claims raise novel or complex issues of state law; (2) when the claims substantially predominate over the claims within the district court's original jurisdiction; (3) when the district court dismisses the claims over which it has original jurisdiction; and (4) in exceptional circumstances, if there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

In this case, the second and fourth factors enumerated in § 1367(c) are clearly present. As stated in her Motion to Remand, Plaintiff intends to pursue only one cause of action against Westinghouse–failure to warn. Thus, a single claim asserted against a sole Defendant falls within the scope of the Court's original jurisdiction. On the other hand, the lengthy list of additional causes of action asserted against the remaining Defendants (all forty of them) are supplemental state law claims. Plainly, the Remaining Claims, which are exclusively derived from state law, "substantially predominate" over Plaintiff's single failure to warn claim against the sole "federal officer" Defendant. Moreover, the Court concludes that compelling reasons counsel in favor of remanding the Remaining Claims to state court. First, the Remaining Claims have been pending in state court (Plaintiff's chosen forum) for nearly two years. Effecting a forum change at this crossroads, when all of the Parties have spent considerable time and money preparing for a state court trial (as opposed to a trial in a federal forum), would cause unnecessary hardship to all involved. Next, Plaintiff's state

court trial setting is less than eight weeks away. At this late date, practically on the eve of trial, the Court finds delaying the resolution of the Remaining Claims senseless and unjustified. Finally, if the Remaining Claims are not remanded, they will surely be transferred to the MDL Court in the Eastern District of Pennsylvania. There are thousands of asbestos cases pending in that forum and, if history be any indicator, Plaintiff's claims against the Remaining Defendants will not be heard for many years. Keeping these claims in federal court will not increase efficiency and expediency. Rather, the opposite is true. Accordingly, the Court declines to exercise its supplemental jurisdiction over the Remaining Claims. As such, those claims are hereby **SEVERED** from Plaintiff's claims against Westinghouse and **REMANDED** to the 122nd Judicial District Court for Galveston County, Texas.

IT IS SO ORDERED.

DONE this 27 day of May, 2002, at Galveston, Texas.

SAMUEL B. KENT
UNITED STATES DISTRICT JUDGE

EOD ___JUN 2 8 2002___

FILED:CLERK
U.S. DISTRICT COURT

02 JUN 27  AM 8:36

TX EASTERN-BEAUMONT

BY _____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
PARIS DIVISION

COLLEEN CARTER, Individually and          §
as Personal Representative of the Heirs   §
and Estate of MARVIN CARTER,              §
Deceased; and SUZETTE OLSON,              §
Individually and as Personal Representative §
of the Heirs and Estate of ORVILLE        §          3:02CV00009
OLSON, Deceased.                          §
                                          §
                                          §
vs.                                       §
                                          §
                                          §
AcandS, INC., et al.                      §

## ORDER DENYING PLAINTIFFS' MOTIONS TO REMAND, AND GRANTING PLAINTIFFS' MOTION FOR SEVERANCE

This matter is before the court on two separate motions for remand filed by Plaintiffs. The first motion is "Plaintiffs' Motion to Remand for a Defect in Removal Procedure and Brief in Support" [Dkt. #11], filed April 15, 2002, to which Defendant Viacom responded on April 30, 2002 [Dkt. #16], and Plaintiffs replied to Viacom's response on May 6, 2002 [Dkt. #18]. The second motion is "Plaintiffs' Motion for Remand for Lack of Subject Matter Jurisdiction and Brief in Support, and Alternative Motion for Severance" [Dkt. #15], filed April 24, 2002, to which Defendant Viacom responded on May 9, 2002 [Dkt. #19], Plaintiffs replied on May 23, 2002 [Dkt. #24], Viacom filed a sur-reply on May 28, 2002 [Dkt. #27], and Plaintiff responded on June 17, 2002 [Dkt. #30]. Upon consideration of the motions, responses, replies, sur-reply, and relevant authority, the court is of the opinion that Plaintiffs' motions to remand should be DENIED, and Plaintiffs' motion for severance should be GRANTED.

### I. BACKGROUND

This case was originally filed by Plaintiffs in the District Court of Hopkins County,

1

*3/*

EXHIBIT
B

Texas, 62nd Judicial District. The case involved two Plaintiffs, Colleen Carter, Individually and as Personal Representative of the Heirs and Estate of Marvin Carter, deceased, and Suzette Olson, Individually and as Personal Representative of the Heirs and Estate of Orville Olson, deceased. According to Plaintiffs' Fourth Amended Petition and Jury Demand, Plaintiffs sued at least twenty-four companies, alleging state law claims in relation to asbestos. On March 13, 2002, Defendant Viacom, Inc., successor to Westinghouse Electric Corporation (hereinafter "Westinghouse") filed a Notice of Removal under 28 U.S.C. § 1442(a)(1), federal officer removal. On April 15, 2002, Plaintiffs filed "Plaintiffs' Motion to Remand for a Defect in Removal Procedure and Brief in Support". On April 22, 2002, Plaintiff Olson filed a motion, agreed to by Westinghouse, to sever her claims and remand to state court. This agreed motion was granted by the court on April 29, 2002. On April 24, 2002, Plaintiffs [hereinafter "Plaintiff", as Carter is the sole remaining plaintiff in light of the court's order of April 29, 2002] filed "Plaintiffs' Motion for Remand for Lack of Subject Matter Jurisdiction and Brief in Support, and Alternative Motion for Severance".

Decedent Marvin Carter died on April 12, 2001 at the age of 68 from terminal pleural mesothelioma, believed by Plaintiff to have been caused by exposure to asbestos dust. Plaintiff avers that Marvin Carter's primary exposure to asbestos occurred while serving in the U.S. Navy from 1951 to 1972 as a machinist's mate. Plaintiff asserts that at least one of the ships Mr. Carter served on was equipped with Westinghouse turbines that were insulated with asbestos-containing products. In footnote 2 of "Plaintiffs' Motion for Remand for Lack of Subject Matter Jurisdiction and Brief in Support, and Alternative Motion for Severance", Plaintiff states that she waives and disavows all claims against Westinghouse, with the exception of failure to warn.

2

## II. TIMELINESS

Plaintiff's first motion to remand argues that Westinghouse's removal is untimely. Under

28 U.S.C. § 1446(b), a case must be removed,

within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . [i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b). Neither party argues that the case was removable based on initial

pleadings. "Although 'other paper' is not defined by section 1446(b), the statute is clear that the

thirty day removal period begins to run when defendant receives the requisite written notice of

facts making the case removable." *Ford v. Shoney's Restaurants, Inc.*, 900 F.Supp. 57, 59

(E.D.Tex. 1995). This exception to the general rule of thirty days from the initial pleading

"serves the laudable purpose of preventing the defendant from having to speculate whether a

case is removable." *Akin v. Big Three Industries, Inc.*, 851 F.Supp. 819, 824 (E.D.Tex. 1994).

The term "other paper" has been construed to include answers to interrogatories, responses to

requests for admissions, deposition testimony, and product identification documents given in

discovery. *See Hines v. AC and S, Inc.*, 128 F.Supp.2d 1003, 1006 (N.D.Tex. 2001) The parties

do not dispute the meaning of "other paper". Instead, Plaintiff and Westinghouse disagree over

the date upon which Westinghouse received "other paper" by which it could ascertain removal

was proper.

Plaintiff contends that the thirty day removal period was triggered by service of

Plaintiff's Original Answers to Master Discovery on February 7, 2002, and that therefore

3

removability once it learned that Plaintiff claimed Mr. Carter was exposed to asbestos from work around Westinghouse turbines while serving in the Navy. Westinghouse asserts that it was first made aware of this specific allegation on March 7, 2002, when it received Plaintiff's Third Supplemental Answers to Master Discovery Requests. This paper disclosed that Plaintiff would present a witness to testify that Mr. Carter had been exposed to asbestos through work around Westinghouse turbines aboard the U.S.S. Towers, a Navy ship. On March 13, 2002, Westinghouse filed a notice of removal.

Similar to the pleadings in *Akin*, the Plaintiff's February 7, 2002 answers to discovery are sufficiently ambiguous to toll the thirty day limitation. While these answers indicate that Mr. Carter was alleging exposure to asbestos while on the job during his service in the Navy and explicitly stated the asbestos materials used during his service, nowhere was Westinghouse mentioned. In addition, no indication was given for specifically when during Mr. Carter's twenty year service, nor aboard what ship, this asbestos exposure allegedly occurred. Also, the February 7, 2002 answers to discovery indicated that Plaintiff might possibly allege exposure to asbestos during Mr. Carter's employment with either a trucking station or a V.A. medical center. The February 7, 2002 answers to discovery were not specific enough to place Westinghouse on notice of removability. The March 7, 2002 answers to discovery, however, did provide sufficient notice to Westinghouse that Plaintiff alleged exposure to asbestos through work around Westinghouse turbines on the U.S.S. Towers while in the Navy. Therefore, Plaintiff's motion to remand is DENIED.

### III. FEDERAL OFFICER REMOVAL

Plaintiff's second motion to remand argues that subject matter jurisdiction is lacking. Westinghouse alleges that federal jurisdiction exists pursuant to the federal officer removal

5

removal on March 15, 2002 is untimely. Plaintiff's February 7, 2002 answers to discovery included information that Plaintiff Mr. Carter served in the U.S. Navy from 1951-1972, listed the ships on which Mr. Carter served, and indicated that he came into contact with asbestos containing products during the time of his service. Westinghouse was not mentioned in a list of asbestos materials used during Mr. Carter's employment. Plaintiff asserts that this information, combined with allegations of exposure to asbestos made against Westinghouse, among other defendants, in Plaintiff's fourth amended petition, was sufficient to give Westinghouse notice on February 7, 2002.

A case presenting a similar question regarding timeliness of removal is *Akin v. Big Three Industries*, 851 F.Supp. 819 (E.D.Tex. 1994). Although *Akin* dealt with federal enclave jurisdiction and not federal officer jurisdiction, the issue of ambiguity was present. In *Akin*, the court considered plaintiffs' motion to remand, as well as defendants' motion to transfer venue. Plaintiffs argued that the initial pleading stated a removable case, and thus the thirty day time limit for removal had not been tolled. *See Akin*, 851 F.Supp. at 824. The court found that although plaintiffs alleged exposure to hazardous chemicals while working for the United States Air Force at Tinker Air Force Base in Oklahoma City, Oklahoma, this pleading was sufficiently ambiguous to toll the thirty day removal period. *See Akin*, 851 F.Supp. at 824-25. The court held that plaintiffs' pleadings were subject to two reasonable constructions. One construction, supported by plaintiffs, was that the mention of the Air Force Base was a geographical modifier. The other construction, supported by defendants, was that mention of the Air Force Base was a durational modifier. *See id.*

Here, Westinghouse removed this case to federal court based on the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Westinghouse avers that it was put on notice of

statute, 28 U.S.C. § 1442(a)(1), which provides in part:

(a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) The United States or any agency thereof or any officer (or person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1).  The federal officer removal statute is to be liberally applied.

*Willingham v. Morgan*, 395 U.S. 402, 406 (1969).  Removal is appropriate under § 1442(a)(1)

whenever it is demonstrated that: (1) defendants were acting under the control and direction of

federal authority; (2) defendants assert a colorable federal defense to plaintiffs' claims; and (3)

defendants demonstrate a causal nexus between the plaintiffs' claims and the acts performed

under federal authority.  *See Mesa v. California*, 489 U.S. 121, 128-29, 131-32, 139, 109 S.Ct.

959, 964-64, 966, 970, 103 L.Ed.2d 99 (1989).

      In order to determine whether Westinghouse meets the first criteria, it is necessary to

determine the scope of Westinghouse's liability as alleged by Plaintiff.  Plaintiff, in "Plaintiffs'

Motion for Remand for Lack of Subject Matter Jurisdiction and Brief in Support, and Alternative

Motion for Severance" filed April 24, 2002, claims to waive and disavow any claims against

Westinghouse other than for failure to warn.  On June 17, 2002, Plaintiff submitted "Plaintiffs'

Motion to Dismiss Certain Claims With Prejudice", in which Plaintiff moved pursuant to Fed. R.

Civ. Proc. 41(a) for dismissal with prejudice of her non-failure to warn claims.  Plaintiff avers

that the only claim it now asserts against Westinghouse is for failure to warn.  Therefore, in

order to satisfy the first criteria, Westinghouse must have acted under the color of a federal

officer with respect to asbestos safety warnings.

6

statute, 28 U.S.C. § 1442(a)(1), which provides in part:

(a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) The United States or any agency thereof or any officer (or person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1). The federal officer removal statute is to be liberally applied.

*Willingham v. Morgan*, 395 U.S. 402, 406 (1969). Removal is appropriate under § 1442(a)(1)

whenever it is demonstrated that: (1) defendants were acting under the control and direction of

federal authority; (2) defendants assert a colorable federal defense to plaintiffs' claims; and (3)

defendants demonstrate a causal nexus between the plaintiffs' claims and the acts performed

under federal authority. *See Mesa v. California*, 489 U.S. 121, 128-29, 131-32, 139, 109 S.Ct.

959, 964-64, 966, 970, 103 L.Ed.2d 99 (1989).

In order to determine whether Westinghouse meets the first criteria, it is necessary to

determine the scope of Westinghouse's liability as alleged by Plaintiff. Plaintiff, in "Plaintiffs'

Motion for Remand for Lack of Subject Matter Jurisdiction and Brief in Support, and Alternative

Motion for Severance" filed April 24, 2002, claims to waive and disavow any claims against

Westinghouse other than for failure to warn. On June 17, 2002, Plaintiff submitted "Plaintiffs'

Motion to Dismiss Certain Claims With Prejudice", in which Plaintiff moved pursuant to Fed. R.

Civ. Proc. 41(a) for dismissal with prejudice of her non-failure to warn claims. Plaintiff avers

that the only claim it now asserts against Westinghouse is for failure to warn. Therefore, in

order to satisfy the first criteria, Westinghouse must have acted under the color of a federal

officer with respect to asbestos safety warnings.

6

The Fifth Circuit has made clear that the validity of removal is to be judged by the
jurisdictional facts that existed at the time of removal. *See Gebbia v. Wal-Mart Stores, Inc.*, 233
F.3d 880, 883 (5th Cir. 2000). "In a jurisdictional inquiry, we look at the complaint as it existed
at the time the petition for removal was filed, regardless of any subsequent amendments to the
complaint." *Hook v. Morrison Milling Company*, 38 F.3d 776, 780 (5th Cir. 1994). In support,
the Fifth Circuit has stated that this rule "permits early resolution of which court has jurisdiction,
so that the parties and the court can proceed with, and expeditiously conclude, the litigation."
*Cavalinni v. State Farm Mutual Auto Insurance*, 44 F.3d 256, 264 (5th Cir. 1995). Applying this
rule of law to the case at hand, Plaintiff's claims against Westinghouse include both failure to
warn claims and non-failure to warn claims.

Westinghouse has presented evidence, in the form of the Affidavit of James M. Gate
("Exhibit A" of Dkt.# 19), to satisfy the first criteria of proper removal under § 1442(a)(1). The
Gate affidavit discusses the extensive control the Navy had over all aspects of production and
supply of the Westinghouse turbines used aboard the U.S.S. Towers. Navy control was present
throughout the production of the turbines, from design to testing to installation. In addition, the
U.S. Navy had ultimate control over warnings affixed to equipment on naval vessels, as well as
written materials accompanying Westinghouse turbines used on board naval vessels. Therefore,
the first prong of the three-part test has been satisfied.

Westinghouse has satisfied the second prong of the three-part test as well. Westinghouse
asserts removal is proper under 28 U.S.C. § 1442(a)(1) because Plaintiff's claims cover actions
taken by Westinghouse while under the control of federal authority, and Westinghouse is entitled
to immunity under the government contractor defense announced in *Boyle v. United
Technologies Corp.*, 487 U.S. 500 (1988). Under this defense, a defendant who designs or

7

manufactures products under the direction and control of federal authorities is not liable when
"(1) the United States approved reasonably precise specifications; (2) the equipment conformed
to those specifications; and (3) the supplier warned the United States about the dangers in the use
of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S.
at 512. The Fifth Circuit has applied the *Boyle* defense to failure to warn scenarios as well as
design defects. *See Garner v. Santoro*, 865 F.2d 629, 635 (5th Cir. 1989). Westinghouse has
raised a colorable federal defense to Plaintiff's claims.

Westinghouse also satisfies the third prong of the three-part test. The Gates affidavit is
evidence of the causal nexus between Plaintiff's claims and acts performed by Westinghouse
under the control and direction of federal authority. As stated earlier, Westinghouse has
presented evidence of the U.S. Navy's control and supervision during the construction, testing,
manufacturing, and installation of the turbines in question. Therefore, because Westinghouse
has satisfied the three-part test articulated in <u>Mesa</u> for the applicability of removal under 28
U.S.C. § 1442(a)(1), Plaintiff's motion to remand for lack of subject matter jurisdiction is
DENIED.

## IV. SEVERANCE

Plaintiff has requested in the alternative that this court sever out the claims against
Westinghouse so that the remainder of Plaintiff's case can proceed in state court. Title 28
U.S.C. § 1367(a) provides that "in any civil action of which the district courts have original
jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are
so related to claims in the action within such original jurisdiction that they form part of the same
case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. There
are four circumstances in which courts have the discretion to decline supplemental jurisdiction

8

over state law claims, "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367. Here, the second factor enumerated in § 1367 applies. "Plaintiffs' Fourth Amended Petition and Jury Demand" indicates that Plaintiff has asserted state law causes of action against a total of at least twenty four defendants. In addition, Plaintiff has made clear that the only claim she intends to pursue against Westinghouse is for failure to warn. Therefore, Plaintiff only has one cause of action against one defendant subject to original jurisdiction in federal court. It is clear that the remaining claims "substantially predominate" over Plaintiff's failure to warn claim against Westinghouse. Therefore, this court declines to exercise its supplemental jurisdiction over Plaintiff's remaining claims. Accordingly, those claims are hereby SEVERED from Plaintiff's claims against Westinghouse, and REMANDED to the 62nd Judicial District Court for Hopkins County, Texas.

Signed this 26th day of June, 2002.

*Richard A. Schell*

RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE

9

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUL 3 1 2002

FILED
CLERK'S OFFICE

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2002, a true and correct copy of the foregoing Response to Plaintiffs' Motion to Vacate Conditional Transfer Order was mailed, postage pre-paid to each of the attorneys listed on the attached Attorney Service List of the Judicial Panel on Multidistrict Litigation.

_____
Michael Hendryx

# INVOLVED COUNSEL FOR SCHEDULE CTO-214
## DOCKET NO. 875
## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

Jerald L. Album
Reich, Meeks & Treadway, L.L.C.
Two Lakeway Center, Suite 1000
3850 N. Causeway Blvd.
Metairie, LA 70002

Mel D. Bailey
Bailey Crowe & Kugler
4600 Bank of America Plaza
901 Main Street
Dallas, TX 75202

Michael L. Baker
Strong, Pipkin, Nelson & Bissell
San Jacinto Building, 14th Floor
595 Orleans Street
Beaumont, TX 77701

Angela C. Barmby
Lanier Law Firm
P.O. Box 691448
Houston, TX 77269-1448

Robert H. Bass
Tollison, Austin & Twiford
P.O. Box 1216
103 N. Lamar Avenue
Oxford, MS 38655

Charles F. Becker
Belin, Lamson, McCormick, Zumbach
& Flynn
Financial Center
666 Walnut Street, Suite 2000
Des Moines, IA 50309

Troy N. Bell
Aultman, Tyner, Ruffin & Yarborough
400 Poydras Street, Suite 1900
New Orleans, LA 70130

V. Brian Bevon
Ness, Motley, Loadholt, Richardson
& Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

John G. Bissell
Strong, Pipkin, Nelson & Bissell
1111 Bagby, Suite 2300
Houston, TX 77002

Janet W. Black
Donaldson & Black, P.A.
208 West Wendover Avenue
Greensboro, NC 27401

C.W. Bradley, Jr.
Lemle & Kelleher, L.L.P.
601 Poydras Street, Suite 2100
New Orleans, LA 70130

Roy R. Brandys
Peticolas, Shapleigh, Brandys & Kerns
701 N. Street Vrain
El Paso, TX 79902

John W. Bridger
Strong, Pipkin, Nelson & Bissell
1400 San Jacinto Building
595 Orleans Street
Beaumont, TX 77013

Whitney C. Buchanan
Whitney Buchanan, P.C.
3200 Monte Vista Blvd., N.E.
Albuquerque, NM 87106

Randolph L. Burns
Baker & Botts
2001 Ross Avenue
Suite 800
Dallas, TX 75201

Lisa N. Busch
Weitz & Luxenberg, PC
180 Maiden Lane
New York, NY 10038

Elwood F. Cahill, Jr.
Sher Garner Cahill Richter Klein, et al.
909 Poydras Street
28th Floor
New Orleans, LA 70112

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Mark B. Chadick
Attorney at Law
225 West Barraque Street
Pine Bluff, AR 71601-4201

Adam M. Chud
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, DC 20036

Edward M. Crane
Skadden, Arps, Slate, Meagher & Flom
333 West Wacker Drive
Suite 2100
Chicago, IL 60606

David A. Damico
Burns, White & Hickton
2400 Fifth Avenue Place
120 Fifth Avenue
Pittsburgh, PA 15222

Sonja Devin
Ray McChristian & Jeans
5822 Cromo Drive
El Paso, TX 79912

Thomas F. Dougall
Bowers Orr & Dougall
8910 Two Notch Road
Suite 400
Columbia, SC 29224

Josephine Downey
Godwin, White & Gruber, P.C.
901 Main Street
Suite 2500
Dallas, TX 75202

Stephen N. Elliott
Bernard, Cassisa, Elliott & Davis
1615 Metairie Road
P.O. Box 55490
Metairie, LA 70055

Gary D. Elliston
DeHay & Elliston, L.L.P.
3500 Bank of America Plaza
901 Main Street
Dallas, TX 75202

INVOLVED COUNSEL FOR SCHEDULE CTO-214 (Cont.) MDL-875

Melissa K. Ferrell
Segal, McCambridge, Singer & Mahoney
100 Congress Avenue
Suite 700
Austin, TX 78701

Richard A. Filce
3005 Magnolia Place
Hattiesburg, MS 39402

David J. Fisher
Fairchild, Price, Thomas & Haley, L.L.P.
413 Shelbyville Street
P.O. Drawer 1719
Center, TX 75935

James T. Foley
Foley & Colley
404 First Place
Tyler, TX 75702

Raymond P. Forceno
Forceno & Hannon
Philadelphia Bourse Building
Suite 1000
Independence Mall East
Philadelphia, PA 19106

Richard L. Forman
Forman, Perry, Watkins, Krutz & Tardy
P.O. Box 22608
Jackson, MS 39225

Laura A. Frase
Forman, Perry, Watkins, Krutz & Tardy
1349 Empire Central
Suite 400
Dallas, TX 75247

Ellen B. Furman
Goldfein & Joseph
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Charles V. Giordano
Miranda, Warwick & Milazzo
2121 Airline Drive
Suite 601
Metairie, LA 70001

Rachelle H. Glazer
Thompson & Knight, P.C.
First City Center, Suite 3300
1700 Pacific Avenue
Dallas, TX 75201

Donald E. Godwin
Godwin Law Firm
901 Main Street, Suite 2500
Dallas, TX 75202

Allan M. Goodloe, Jr.
Thompson & Coburn, L.L.P.
One Firstar Plaza
St. Louis, MO 63101

James R Guidry
Simon, Peragine, Smith & Redfearn
Energy Centre, 30th Floor
1100 Poydras Street
New Orleans, LA 70163

Bruce E. Halstead
Jones & Granger
10000 Memorial Drive, Suite 888
Houston, TX 77024

Susan M. Hansen
Brownson & Ballou
4800 U.S. Bank Place
601 Second Avenue, South
Minneapolis, MN 55402

Frank G. Harmon, III
Crain, Caton, James
3300 Two Houston Center
909 Fannin Street
Houston, TX 77010

James A. Harris, Jr.
Harris & Brown, P.C.
2000A SouthBridge Pkwy., Suite 520
P.O. Box 59329
Birmingham, AL 35209

James M. Harris, Jr.
Harris, Lively & Duesler
550 Fannin Street, Suite 650
Beaumont, TX 77701

Raymond P. Harris, Jr.
Whittenburg & Schachter, PC
2300 Plaza of the Americas, South Tower
600 North Pearl Street, LB 133
Dallas, TX 75201

Walter F. Harris, III
Ness, Motley, Loadholt, Richardson
& Poole
1730 Jackson Street
P.O. Box 365
Barnwell, SC 29812

Kathryn Oakes Hermes
DeHay & Elliston, L.L.P.
901 Main Street
Suite 3500
Dallas, TX 75202

John L. Hill, Jr.
Locke Liddell & Sapp, LLP
3400 Chase Tower
600 Travis
Houston, TX 77002

Robin C. Hoblit
Chaves, Gonzales & Hoblit
2000 Frost Bank Plaza
802 North Carancahua
Corpus Christi, TX 78470

James R. Hopkinson
Cooney & Conway
120 North LaSalle Street
30th Floor
Chicago, IL 60602

William R. Hughes, Jr.
Stuart, Tinley, Peters, Thorn, et al.
P.O. Box 398
310 W. Kanesville Blvd., 2nd Floor
Council Bluffs, IA 51502

Josephine Jamison
Godwin, White & Gruber, P.C.
901 Main Street
Suite 2500
Dallas, TX 75202-3721

John M. Johnson
Galloway, Johnson, Tompkins, Burr
& Smith
One Shell Square, Suite 4040
701 Poydras Street
New Orleans, LA 70139

Shelby A. Jordan
Jordan Hyden, et al.
500 North Shoreline
Suite 900 North
Corpus Christi, TX 78471

Steven M. Jupiter
LeBlanc & Waddell, LLC
201 St. Charles Avenue
Suite 3204
New Orleans, LA 70170

INVOLVED COUNSEL FOR SCHEDULE CTO-214 (Cont.) MDL-875

George J. Kacal, Jr.
Dunn, Kacal, Adams, Pappas & Law
One Riverway, Suite 1200
Houston, TX 77056

Jerry Kacal
Dunn, Kacal, Adams, Pappas & Law
2600 America Tower
2929 Allen Parkway
Houston, TX 77019

Kym Keller
Milling, Benson, Woodward, LLP
909 Poydras Street, Suite 2300
New Orleans, LA 70112

Robert E. Kerrigan, Jr.
Deutsch, Kerrigan & Stiles
755 Magazine Street
New Orleans, LA 70130

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308

Peter A. Kraus
Waters & Kraus
3219 McKinney Avenue
Suite 3000
Dallas, TX 75204

Laura E. Kugler
Bailey Crowe & Kugler
4600 Bank of America Plaza
901 Main Street
Dallas, TX 75202

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102

Aimee Lonergan
Louisiana Department of Labor
Office of Workers Compensation
New Orleans District Office
975 Pearl Street, Suite 600
Franklinton, LA 70438

Lawrence A. Lynn
Coats Rose Yale Holm Ryman & Lee
1001 Fannin Street
800 First City Tower
Houston, TX 77002

John R. Martzell
Martzell & Bickford
338 Lafayette Street
New Orleans, LA 70130

Raymond T. Matthew
Tekkell, Book, Matthew & Limmer
4300 One Houston Center

1221 McKinney
Houston, TX 77010

Christopher D. Mauriello
Wallace & Graham, P.A.
525 North Main Street
Salisbury, NC 28144

Mary L. Mauro
Galloway Johnson Tompkins Burr & Smith
3555 Timmons Lane
Suite 1225
Houston, TX 77027

Charles S. McCowan, Jr.
Kean, Miller, Hawthorne, D'Armond, et al.
One American Place, 22nd Floor
P.O. Box 3513
Baton Rouge, LA 70821

D. Ferguson McNiel, III
Vinson & Elkins
1001 Fannin Street
Suite 2300
Houston, TX 77002

Michael P. Mentz
Hailey, McNamara, Hall, Larmann & Papale
One Galleria Boulevard, Suite 1400
P.O. Box 8288
Metairie, LA 70011

Lewis C. Miltenberger
Cordray Goodrich & Miltenberger
108 West 8th Street
Suite 500
Fort Worth, TX 76102

Peter A. Moir
Quilling, Selander, Cummiskey, Clutts & Lownds
2001 Bryan Street, Suite 1800
Dallas, TX 75201

Kenneth M. Morris
Forman, Perry, Watkins, Krutz & Tardy
600 Jefferson
Suite 800
Houston, TX 77002

Ronald L. Motley
Ness, Motley, Loadholt, Richardson & Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465

John J. Mundy
Brobeck, Phleger & Harrison, L.L.P.
4801 Plaza on the Lake
Austin, TX 78746

Maria I. O'Byrne Stephenson
Stephenson, Matthews & Chavarri, L.L.C.
World Trade Center
2 Canal Street, Suite 2305
New Orleans, LA 70130

Michael F. O'Connor
Oliver, Lau, Lawhn, Ogawa & Nakamura
Ocean View Center, Suite 600
707 Richards Street
Honolulu, HI 96813

Todd Ogden
Forman Perry Watkins Krutz & Tardy
1349 Empire Central Drive
Suite 400
Dallas, TX 75247

Jeffrey T. Ono
Galiher, DeRobertis, Nakamura, Ono & Takitani
610 Ward Avenue, Suite 200
Honolulu, HI 96814

James L. Pate
Laborde & Neuner
One Petroleum Center
1001 W. Pinhook Road, Suite 200
P.O. Box 52828
Lafayette, LA 70505

INVOLVED COUNSEL FOR SCHEDULE  CTO-214  (Cont.) MDL-875                                     PAGE 4

Franklin A. Poff, Jr.
Crisp Jordan & Boyd
2301 Moores Lane
P.O. Box 6297
Texarkana, TX 75505

Lisa A. Powell
Jackson Walker, L.L.P.
1100 Louisiana Street
Suite 4200
Houston, TX 77002

James E. Pranske
Godwin Law Firm
901 Main Street
Suite 2500
Dallas, TX 75202

James B. Pressly, Jr.
Haynsworth Sinkler Boyd
75 Beattie Place, 11th Floor
P.O. Box 2048
Greenville, SC 29602

David E. Redmann, Jr.
Lemle & Kelleher, L.L.P.
Pan American Life Center
601 Poydras Street, 21st Floor
New Orleans, LA 70130

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

G. Mark Rice
Whitfield & Eddy, PLC
317 6th Avenue
Suite 1200
Des Moines, IA 50309-4110

James M. Riley, Jr.
Coats, Rose, Yale, Holm, Ryman & Lee
1001 Fannin Street
800 First City Tower
Houston, TX 77002

Gary B. Roth
Gainsburgh, Benjamin, David, Meunier
& Warshauer
2800 Energy Centre
1100 Poydras Street, Suite 2800
New Orleans, LA 70163

John D. Roven
John Roven & Associates
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Charles S. Siegel
Waters & Kraus
3219 McKinney Avenue
Suite 3000
Dallas, TX 75204

Joe A. Spencer
1112 Montana
El Paso, TX 79902

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli, L.L.P.
Centre Square West
15th Floor
Philadelphia, PA 19102

James M. Stanton
Stanton & Sorensen
22 N. Third Street
P.O. Box 205
Clear Lake, IA 50428

Kyle C. Steele
Forman Perry Watkins Krutz & Tardy
1349 Empire Central
Suite 400
Dallas, TX 75247

Bruce H. Strotz
Fairfield, Garrow & Strotz
P.O. Box 35400
Albuquerque, NM 87176

Gregory M. Sullivan
Brown Sims, P.C.
2000 Post Oak Boulevard
21st Floor
Houston, TX 77056

William H. Sutton
Friday, Eldredge & Clark
2000 First Commercial Building
400 West Capitol Avenue
Little Rock, AR 72201

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
Detroit, MI 48226

David M. Taylor
Thompson, Coe, Cousins & Irons
Crescent Office Tower, Suite 1100
200 Crescent Court
Dallas, TX 75201

Mark W. Thomas
Grefe & Sidney
2222 Grand Avenue
P.O. Box 10434
Des Moines, IA 50306

Michael P. Thornton
Thornton & Naumes, L.L.P.
100 Summer Street
30th Floor
Boston, MA 02110

Andrew J. Trevelise
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Earl N. Vaughan
8867 Highland Road
Suite 392
Baton Rouge, LA 70808

Alan R. Vickery
Sedgwick, Detert, Moran & Arnold
1717 Main Street
Suite 5400
Dallas, TX 75201

Todd N. Wade
Brown McCarroll, LLP
111 Congress Avenue
Suite 1400
Austin, TX 78701

Ronald B. Walker
Walker Keeling & Carroll
210 East Constitution
Victoria, TX 77901

INVOLVED COUNSEL FOR SCHEDULE  CTO-214  (Cont.) MDL-875                    PAGE 5

Lori R. Wallerstein
Morgenstein & Jubelirer
Spear Street Tower, 32nd Floor
One Market Plaza
San Francisco, CA 94105

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

Clay M. White
Sammons & Parker, P.C.
218 North College
Tyler, TX 75702

Forrest R. Wilkes
Forman, Perry, Watkins, Krutz & Tardy
1515 Poydras Street
Suite 1420
New Orleans, LA 70112

Robert W. Wilkinson
Dogan & Wilkinson
P.O. Box 1618
734 Dalmas Avenue
Pascagoula, MS 39568

Gene M. Williams
Mehaffy & Weber, P.C.
P.O. Box 16
Beaumont, TX 77004

Kenneth J. Wilson
Ness, Motley, Loadholt, Richardson
& Poole
1730 Jackson Street
P.O. Box 365
Barnwell, SC 29812