JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG - 9 2002

FILED
CLERK'S OFFICE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                          :      CHAPTER 11
                                :
FEDERAL-MOGUL GLOBAL, INC.,     :      BANKRUPTCY NO. 01-10597 DvB
                                :      (jointly administered)
                    Debtor.     :

## ORDER 1) DENYING THE MOTIONS TO TRANSFER THE "FRICTION PRODUCTS CLAIMS" AND 2) REMANDING THE FRICTION PRODUCTS CLAIMS

This matter having been opened before the Court upon the several motions of parties, denominated in the prior Orders of the Court as the "Friction Products Defendants," to transfer to this District into the above-captioned proceedings the claims against the movants previously denominated "Friction Products Claims"; and the Court having previously granted this motion on a provisional basis and the Friction Products Claims having already been provisionally transferred to this Court subject to a plenary hearing on the motion to transfer; and the Court having previously given notice to the parties that it would consider arguments directed to subject matter jurisdiction, abstention and remand in ruling upon the movants' applications; and the Court having reviewed the submissions of counsel and heard oral argument; and for the reasons set forth on the record at the hearing on those motions today, as supplemented by a written Opinion to follow; and for good cause shown

It is this 8th day of February 2002

1

OFFICIAL FILE COPY   IMAGED AUG 12 '02

ORDERED that the motions to transfer the Friction Products Claims are denied, and it is further

ORDERED that this Court lacks subject matter jurisdiction over the Friction Products Claims, and it is further

ORDERED that the Friction Products Claims are remanded to the state courts from which they were removed pursuant to 28 U.S.C. § 1447, and it is further

ORDERED that, in the alternative, the Friction Products Claims are remanded to the state courts from which they were removed pursuant to 28 U.S.C. § 1452.

Alfred M. Wolin, U.S.D.J.

2

TOTAL P.05

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG – 9 2002

FILED
CLERK'S OFFICE

PRECEDENTIAL

Filed July 31, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 02-1426, 02-1491, 02-1492, 02-1528
02-1652, 02-1664, 02-1688, 02-1741

IN RE: FEDERAL-MOGUL GLOBAL, INC.

DaimlerChrysler Corporation; Ford Motor Company;
General Motors Corporation,
*Appellants in No. 02-1426*

IN RE: FEDERAL-MOGUL GLOBAL, INC.

Hennessy Industries, Inc.,
*Appellant in No. 02-1491*

IN RE: FEDERAL-MOGUL GLOBAL, INC.

MG Rover Group, Inc.; Nissan North America, Inc.;
Volkswagen of America, Inc.; Volkswagen AG;
Mercedes-Benz USA, LLC; BMW North America, Inc.;
Volvo Cars North America, Inc.; Harley-Davidson
Motor Company Group, Inc.,
*Appellants in No. 02-1492*

IN RE: FEDERAL-MOGUL GLOBAL, INC.

Salvo Auto Parts; Holman Enterprises, Inc.;
B.F. Goodrich, Inc.,
*Appellants in No. 02-1528*

IN RE: FEDERAL-MOGUL GLOBAL, INC.

Honeywell International, Inc.,
*Appellant in No. 02-1652*

IN RE: FEDERAL-MOGUL GLOBAL, INC.

British Motor Cars Distributors, Inc.,
*Appellant in No. 02-1664*

IN RE: FEDERAL-MOGUL GLOBAL, INC.

Official Committee of Unsecured Creditors,
*Appellant in No. 02-1688*

IN RE: FEDERAL-MOGUL GLOBAL, INC.

International Truck and Engine Corp.,
*Appellant in No. 02-1741*

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 01-10578)
District Judge: Hon. Alfred M. Wolin

Argued June 17, 2002

Before: SLOVITER, COWEN and GIBSON,*
*Circuit Judges*

(Filed: July 31, 2002)

David M. Bernick (Argued)
John Donley
Douglas G. Smith
Kirkland & Ellis
Chicago, IL 60601

Christopher Landau (Argued)
Eric B. Wolff
Kirkland & Ellis
Washington, D.C. 20005

Attorneys for Appellants
DaimlerChrysler Corp., Ford Motor
Co., and General Motors Corp.

Arthur Makadon (Argued)
William A. Slaughter
Robert R. Baron, Jr.
Peter C. Amuso
Ballard Spahr Andrews & Ingersoll
Philadelphia, PA 19103

Attorneys for Appellants
Honeywell International, Inc.

Charlene D. Davis
Eric M. Sutty
The Bayard Firm
Wilmington, DE 19899

Robert B. Millner (Argued)
Peter D. Wolfson
Andrew P. Lederman
Sonnenschein, Nath & Rosenthal
Chicago, IL 60606

Attorneys for Appellant
Official Committee of Unsecured
Creditors

*Hon. John R. Gibson, Senior United States Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

4

David E. Wilks
White & Williams
Wilmington, DE 19899

Attorney for Appellants
MG Rover Group, Inc., Nissan
North America, Inc.,Volkswagen
America, Volkswagen AG,
Mercedez-Benz USA, BMW of
North America, Volvo Cars North
America, Harley Davidson Motor
Co., International Truck & Engine
Corp., British Motor Cars
Distributors, Inc.

Lee Baylin
Towson, MD 21204

Attorney for Appellant
Salvo Auto Parts, Inc.

Michael A. Stover
Whiteford, Taylor & Preston
Baltimore, MD 21202

Attorney for Appellant
Holman Enterprises, Inc.

Douglas F. Murray
Whiteford, Taylor & Preston
Baltimore, MD 21202

Attorney for Appellant
BF Goodrich, Inc.

Henry A. Heiman
Heiman, Aber, Goldlust & Baker
Wilmington, DE 19899

Attorney for Appellant
Hennessy Industries, Inc.

5

Alan B. Rich (Argued)
Baron & Budd
Dallas, TX 75219

Robert T. Haefele
Wilentz, Goldman & Spitzer
Woodbridge, NJ 07095

Jonathan A. Smith-George
Law Office of Jonathan A.
 Smith-George
Newport News, VA 23601

Robert Paul
Philadelphia, PA 19103

Marla R. Eskin
Wilmington, DE 19801

Ronald L. Motley
Nancy Worth Davis
Ness Motley Loadholt Richardson
 & Poole
Mount Pleasant, SC 29465

Attorneys for Appellee
 Consolidated Asbestos Claimants

Elihu Inselbuch (Argued)
Caplin & Drysdale
New York, NY 10022

Trevor W. Swett, III
Peter Van N. Lockwood
Albert G. Lauber
Caplin & Drysdale
Washington, D.C. 20005

Matthew G. Zaleski, III
Campbell & Levine
Wilmington, DE 19801

Attorneys for Appellee
 Official Committee of Asbestos
 Claimants

Charles S. Siegel (Argued)
Peter A. Kraus
Waters & Kraus
Dallas, TX 75204

Attorneys for Appellee
Unofficial Committee of Select
Asbestos Claimants; Waters &
Kraus Plaintiffs

William F. Taylor, Jr.
McCarter & English
Wilmington, DE 19899

Michael B. Pullano
McCarter & English
Philadelphia, PA 19103

Attorneys for Appellee
Kaeske-Reeves Claimants

Philip A. Harley
Paul, Hanley & Harley
Berkeley, CA 94710

Attorney for Appellees
Alice Edmiston and Barry
Edmiston

Constance J. McNeil
Lewis, D'Amato, Brisbois & Bisgaard
San Francisco, CA 94104

Attorney for Appellee
The Pep Boys — Manny, Moe &
Jack

Barry R. Ostrager
Simpson, Thacher & Bartlett
New York, NY 10017

Attorney for Amicus-Appellants
Travelers Indemnity, Travelers
Casualty and Surety Company

Daniel J. Popeo
Paul D. Kamenar
Washington Legal Foundation
Washington, D.C. 20036

Bruck R. Zirinsky
John H. Bae
Edward A. Smith
Cadwalader, Wickersham & Taft
New York, New York 10038

Attorneys for the Washington Legal
Foundation As Amicus Curiae in
Support of Appellants
DaimlerChrysler Corporation, Ford
Motor Company, and General
Motors Corporation

## OPINION OF THE COURT

SLOVITER, Circuit Judge:

Before us is an appeal of the District Court's decision denying the motion to transfer tens of thousands of asbestos-related tort claims and remanding these claims to the state courts where they were originally filed, primarily on the ground that the District Court had no subject matter jurisdiction. The appellants, who moved for the transfer in the District Court, argue that the District Court has subject-matter jurisdiction over these claims because they are "related to" the ongoing bankruptcy proceeding of Federal-Mogul Global, a company which, through its affiliates, manufactured products allegedly involved in the asbestos-related torts. The central issue before us is whether this court has jurisdiction to review the District Court's decision to deny the transfer and to remand.

8

# I.

# BACKGROUND

## A.

*Procedural Posture*

Tens of thousands of individuals (Friction Product Plaintiffs or Plaintiffs) have brought personal injury and wrongful death claims in state courts across the country seeking damages for injuries allegedly caused by asbestos used in so-called friction products, such as brake pads (Friction Product Claims). The Friction Product Plaintiffs allege that they were exposed to asbestos fibers through, *inter alia*, the manufacture, installation, repair, and/or use of friction products and that this exposure caused them or their decedents to develop severe respiratory diseases, such as asbestos-related mesothelioma, asbestos-related lung, laryngeal or esophageal cancer, or asbestosis. They have brought their tort claims against various manufacturers and distributors of friction products (including Federal-Mogul Global, Inc., which had acquired Apex and Wagner, makers of friction products) as well as against companies that made and sold products that incorporated friction products (in particular, automobile manufacturers that used brake pads containing asbestos).

On October 1, 2001, Federal-Mogul and its 156 affiliates and subsidiaries (Debtors) filed Chapter 11 petitions in the United States Bankruptcy Court for the District of Delaware. At that time, Debtors were co-defendants in many (though not all) of the thousands of Friction Product Claims now before us. The filing of the Debtors' Chapter 11 petitions stayed the state court proceedings as to them.

Thereafter, the Friction Product Plaintiffs began severing or dismissing their claims against Debtors. Other defendants named in the Friction Product suits (Friction Product Defendants or Defendants) began removing the claims against them from state courts to the appropriate federal district courts pursuant to 28 U.S.C. § 1452(a)

9

(bankruptcy removal], arguing that the Friction Product Claims were "related to" the Debtors' bankruptcy proceeding and thus subject to the bankruptcy jurisdiction of the federal courts under 28 U.S.C. § 1334(b). The primary theory in support of "related to" jurisdiction is that the Friction Product Defendants would be able to seek indemnification or contribution from Debtors because some of the friction products used by Defendants were purchased from Debtors.

In response to the removal of the claims, the Friction Product Plaintiffs filed motions in the respective federal district courts to remand the cases to state court on the theory that removal was improper. Some of these district courts granted these motions to remand.

In November 2001, the chief judge of this circuit, pursuant to 28 U.S.C. § 292(b), assigned Judge Alfred M. Wolin, a senior district judge in the District of New Jersey, to sit by designation in the District of Delaware to manage five asbestos-related Chapter 11 proceedings, including that of Debtors. Three of the Friction Product Defendants (DaimlerChrysler Corporation, Ford Motor Company, and General Motors; hereinafter, the Big Three Automakers) had previously filed a motion to transfer provisionally to the District Court, pursuant to 28 U.S.C. § 157(b)[5],[1] all of the removed Friction Product Claims pending against them in various district courts throughout the country. Thereafter, Volkswagen of America, Inc., Volkswagen AG, Mercedes-Benz USA, LLC, BMW North America, Inc., Volvo Cars North America, Inc., Rolls Royce Bentley Motor Cars, Inc., and Nissan North American, Inc. (hereinafter, the International Automakers) and Honeywell International, Inc.,[2] as well as other Friction Product Defendants, also

---

1. That section provides:

> (5) The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C. § 157(b)(5).

2. Honeywell is a successor in interest to Bendix Corporation, which manufactured friction products functionally identical to those

started removing and then transferring the Friction Product Claims against them to the District Court in Delaware.

Before the District Court could rule on any motions, some of the district courts to which the Friction Product Claims had originally been removed remanded cases before them back to the state courts. *See, e.g., Dunn v. DaimlerChrysler Corp.,* No. 3:01-CV-2870-X, 2002 WL 1359701 (N.D. Tex. Jan. 3, 2002); *In re Asbestos Litig.,* 271 B.R. 118 (S.D.W.Va. Dec. 7, 2001); *Clamon v. Kellogg-Brown & Root, Inc.,* No. G-01-784 (S.D. Tex. Dec. 6, 2001). Other district courts refused to transfer their Friction Product Claims to the District Court. *See, e.g., In re Asbestos Litig.,* No. 01-1790, 2002 U.S. Dist. LEXIS 3083 (D. Or. Feb. 1, 2002). And some of the plaintiffs in cases that had been transferred to the District Court filed emergency motions for remand because they were *in extremis,* and sought to have the cases tried in state court before they died. The most pressing matter before the District Court was decision on the motions of the Friction Product Defendants for immediate and ex parte provisional transfer of all Friction Product Claims and their proposal that the District Court thereafter render a plenary decision on the actual transfer of the Friction Product Claims under 28 U.S.C. § 157(b)(5).

The primary reason offered by the Friction Product Defendants for the transfer was to consolidate the Friction Product Claims "for purposes of a threshold common issues trial devoted to the core issue of whether brakes and other automotive parts cause the diseases claimed." App. at 474. Specifically, Defendants wanted the District Court to conduct a "global *Daubert* hearing" in which the court would perform its "gatekeeper" function as outlined in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993) ("[U]nder the Rules [of Evidence] the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."), and

amplified in *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999). In particular, Defendants wanted the District Court to determine whether the evidence that Defendants' products harmed Plaintiffs is based on reliable scientific methodology. In their memorandum in support of their motion to transfer, the Big Three Automakers maintained that there is "no reliable scientific evidence to support any claim based on exposure to [the Friction P]roducts." App. at 664. Accordingly, the Friction Product Defendants argued that the promise of the "global *Daubert* hearing" is to "excise[] [the Friction Product Claims] from the American judicial system in one fell swoop and [lift] a substantial cloud . . . from over Federal Mogul." Br. of Big Three Automakers at 2.

The District Court granted the provisional transfer pursuant to § 157(b)[3] in order to consider the appropriateness of actual transfer as well as to examine its subject matter jurisdiction and the appropriateness of abstention and remand. *In re Federal-Mogul Global, Inc.,* No. 01-10589 et al., 2001 U.S. Dist. LEXIS 23553 (D. Del. Dec. 19, 2001) (granting Honeywell's provisional transfer motion); App. at 598 (same with respect to Big Three Automakers); App. at 608 (International Automakers); App. at 624 (Harley-Davidson Motor Company Group, Inc.); App. at 615 & 630 (other Defendants). Subsequently, the Friction Product Defendants succeeded in obtaining mandamus orders from two appellate courts prohibiting district courts to which the Friction Product Claims had originally been removed from deciding any issues in those cases. *In re Gen. Motors Corp.,* No. 02-1273 (7th Cir. Feb 15, 2002) (App. at 1017); *In re DaimlerChrysler Corp.,* No.

3. Although § 157(b) does not explicitly allow for such provisional transfers, they have been permitted by some courts. *See, e.g., A.H. Robins Co. v. Piccinin* [*In re A.H. Robins Co.*], 788 F.2d 994, 1015-16 (4th Cir. 1986) (approving district court's transfer order interpreting that order as "conditional" pending objections of the parties and requests for abstention); *In re Dow Corning Corp.,* No. 95-20512, 1995 WL 495978, at *2 (Bankr. E. D. Mich. 1995) (granting provisional transfer pending hearing to determine whether the transfer order should be made permanent). The parties before us do not question the legitimacy of a provisional transfer and therefore we do not address that issue.

manufactured by Federal-Mogul. Bendix would sometimes purchase Federal-Mogul's products or components to sell under its own brand name.

02-10029 et al., 2002 U.S. App. LEXIS 8756 (5th Cir. Mar. 8, 2002). Those two courts reasoned that the District Court's provisional transfer had taken away any jurisdiction that those district courts may have had. *Id.*

### B.

### *District Court's Ruling*

After hearing oral arguments on the pending motions to transfer and remand, the District Court issued the following order, which was followed shortly thereafter by an opinion:

**ORDER 1) DENYING THE MOTIONS TO TRANSFER THE "FRICTION PRODUCTS CLAIMS" AND 2) REMANDING THE FRICTION PRODUCTS CLAIMS**

This matter having been opened before the Court upon the several motions of parties, denominated in the prior Orders of the Court as the "Friction Products Defendants," to transfer to this District into the above-captioned proceedings the claims against the movants previously denominated "Friction Products Claims"; and the Court having previously granted this motion on a provisional basis and the Friction Products Claims having already been provisionally transferred to this Court subject to a plenary hearing on the motion to transfer; and the Court having previously given notice to the parties that it would consider arguments directed to subject matter jurisdiction, abstention and remand in ruling upon the movants' applications; and the Court having reviewed the submissions of counsel and heard oral argument; and for the reasons set forth on the record at the hearing on those motions today, as supplemented by a written Opinion to follow; and for good cause shown

It is this 8th day of February 2002

ORDERED that the motions to transfer the Friction Products Claims are denied, and it is further

ORDERED that this Court lacks subject matter jurisdiction over the Friction Products Claims, and it is further

ORDERED that the Friction Products Claims are remanded to the state courts from which they were removed pursuant to 28 U.S.C. §1447, and it is further

ORDERED that, in the alternative, the Friction Products Claims are remanded to the state courts from which they were removed pursuant to 28 U.S.C. §1452.

*In re Federal-Mogul Global, Inc.*, No. 01-10587, 2002 Bankr. LEXIS 105, *4-5 (Bankr. D. Del. Feb. 8, 2002) (hereinafter, Feb. 8 Order). The District Court's written opinion supplementing the order was issued on February 15, 2002. *In re Federal-Mogul Global, Inc.*, No. 01-10578 et al., slip op. (Bankr. D. Del. Feb. 15, 2002) (hereinafter, Feb. 15 Op.).

The District Court held that it lacked subject-matter jurisdiction because the claims against the Friction Product Defendants were not "related to" the Federal-Mogul bankruptcy proceedings. The court found it unlikely that "Congress . . . intended that the bankruptcy of a single player [in a multi-player industry] would have automatic, nation-wide impact in which every manufacturer and distributor and all tens of thousands of injured parties are concentrated in a single reorganization proceeding." Feb. 15 Op. at 16. Specifically, the District Court found that under this court's influential decision in *Pacor, Inc. v. Higgins (In re Pacor)*, 743 F.2d 984 [3d Cir. 1984], "related-to bankruptcy jurisdiction [does] not extend to a dispute between non-debtors unless that dispute, by itself, creates at least the logical possibility that the estate will be affected." *Id.* at 17.

The District Court noted that *Pacor* made clear that there is no "related to" jurisdiction over a personal injury claim against a non-debtor "without the filing and adjudication of a separate claim for indemnification" against the debtor. *Id.* at 18. Further, the District Court observed that "cases since *Pacor* have failed to endorse the proposition that *any* contract of indemnification will support an extension of related-to jurisdiction." *Id.* at 22 (emphasis in original).

Turning to the Friction Product Claims, the District Court stated that:

[T]he movants have produced no evidence whatsoever of even a bare agreement to indemnify running between the debtors and the solvent co-defendants

. . . .

The Court sees no justification to take the situation . . . outside of the rule of *Pacor. A judgment against [the Friction Product Defendants] will not bind the debtors. No asset of the estate is threatened nor is any re-ordering of creditors in the offing. It is true that recovery by asbestos claimants against the movants may give rise to claims, indeed very substantial claims, against the debtors in the future. It is at that time, when the movants appear as creditors of the estate and the facts underlying the liability are adjudicated in the context of the bankruptcy, that the Friction Products Claims will affect the estate.*

*Id.* at 22-23 (emphasis added).

The District Court noted that only Chrysler submitted documents that could even plausibly support a claim based on a written indemnification agreement, namely boiler-plate purchase orders that refer to documents containing indemnification language. The District Court held that the "routine nature of this kind of arrangement and lack of other connections between [Chrysler and Debtors] makes this ["boiler-plate" language] too thin a thread with which to pull Chrysler into the Federal-Mogul bankruptcy." *Id.* at 27. Although the court found that Chrysler had a comparatively stronger claim for indemnification than the other Friction Product Defendants, it found that none of them had genuine indemnification claims "related to" the bankruptcy case. The court found that even if there were a judgment against one of the Friction Product Defendants, Debtors would not be bound by that decision and that any indemnification claims against Debtors by the Friction Product Defendants have not yet accrued. *Id.* at 23.

Alternatively, and apparently because there might be some basis for Chrysler's indemnification claims, the District Court announced that, even if it did have jurisdiction, it would abstain from hearing the Friction Product Claims pursuant to 28 U.S.C. § 1334(c)(1)

[bankruptcy abstention) in light of considerations of fairness, comity, and the integrity of the bankruptcy process. Feb. 15 Op. at 28 & 36.

Having found that it lacked jurisdiction (or, in the alternative that abstention was appropriate), the District Court remanded the Friction Product Claims directly to the state courts from which they were removed pursuant to 28 U.S.C. § 1452(b). While the court acknowledged that it was "rare for a District Court in one state to remand a matter to the state courts of another state," Feb. 15 Op. at 37, the District Court concluded that such action was permitted by § 1452 and justified by principles of efficiency and fairness.

C.

The Appeal

The Friction Product Defendants appealed the District Court's order. This court granted a temporary stay of the order remanding the Friction Product Claims. App. at 53-54. Four groups of Defendants have filed briefs in this appeal: the Big Three Automakers, Honeywell, the International Automakers, and the Official Committee of Unsecured Creditors of Federal-Mogul Global.[4] Additionally, the Washington Legal Foundation and Traveler's Indemnity Company each filed an amicus brief in support of Defendants.

The Friction Product Defendants argue that the District Court erred in (1) finding that it lacked "related to" jurisdiction, (2) deciding to remand the claims directly to the state courts from which they were removed, and (3) determining, in the alternative, that it would abstain. In particular, they argue that the District Court misread this court's seminal decision in *Pacor* and mistakenly ignored the persuasive authority of the Sixth Circuit's decision in

4. The Official Committee of Unsecured Creditors represents the holders of approximately two and a half billion dollars of Federal-Mogul's commercial, trade, and bond debt. Although the unsecured creditors do not, in general, have any Friction Product Claims pending against them, for simplicity's sake we include them among the Defendants.

*Lindsey v. O'Brien (In re Dow Corning Corp.)*, 86 F.3d 482 (6th Cir. 1996). Further, they argue that remand to state court was not authorized because only a court to which a claim was removed has the statutory power to remand to the state court from which that claim was removed. Thus, they conclude that the District Court erred by remanding the claims to state court, and also erred by abstaining with respect to any remaining claims. Further, Defendants argue that the District Court failed to adequately consider whether to conduct a global *Daubert* hearing. Finally, some Defendants argue that *Pacor* is flawed and is at odds with this court's later decisions concerning "related to" jurisdiction. Br. of Honeywell at 13-18.

Four groups of Friction Product Plaintiffs have filed briefs: the Official Committee of Asbestos Claimants of Federal-Mogul Global, the Ad Hoc Committee of Asbestos Claimants, the Unofficial Committee of Asbestos Claimants, and the Waters & Kraus Plaintiffs.[5] The Friction Product Plaintiffs argue, first, that this court lacks appellate jurisdiction to review the decision of the District Court in light of 28 U.S.C. § 1447(d), which provides that a remand "to the State court from which [a case] was removed is not reviewable on appeal or otherwise." § 1447(d). In the alternative, they argue that the District Court was correct in finding that it had no "related to" jurisdiction and in deciding to remand the claims directly to the various state courts from which they were removed. Also, in addition to endorsing the District Court's alternative holding to abstain pursuant to 28 U.S.C. § 1334(c)(1) (discretionary abstention), Plaintiffs maintain that the District Court should have abstained pursuant to 28 U.S.C. § 1334(c)(2) (mandatory abstention). Further, some Plaintiffs argue that Defendants' proposed "global *Daubert* hearing" is inapplicable to the Friction Product Claims in light of the "infinite variety of exposure histories and medical facts presented by the tens of thousands of claimants . . . [and

5. The Waters & Kraus Plaintiffs have dismissed all Friction Product Claims they had brought against Federal-Mogul. Otherwise, there are no substantial differences among the various committees of asbestos claimants.

[f]ifty states' laws on causation and burden of proof." Br. of Ad Hoc Committee at 2.

## II.

## JURISDICTION

Before we can reach the merits of the District Court's decision, we must determine whether we have jurisdiction to consider this appeal. The District Court denominated its Order as "1) denying the motions to transfer the 'friction products claims' and 2) remanding the friction products claims." Feb. 8 Order at *4. To make an assessment of our jurisdiction we must first consider whether to construe the decision of the District Court as a denial of a transfer or as a remand order.

Because there are arguments to support construing the order as one denying the requested transfer and equally good arguments to construe the order as one remanding the cases, we will follow the prudent course and consider in turn our jurisdiction under each construction. Each presents substantial obstacles to our exercise of appellate jurisdiction. We will discuss the District Court's alternative holding abstaining from hearing the Friction Product Claims only if we need to reach that issue.

## A.

### *Denial of Transfer*

1. *Reviewability*

It is a well-established rule in this circuit (and generally that "'orders transferring venue are not immediately appealable.'" *Sunbelt Corp. v. Noble, Denton & Assoc.*, 5 F.3d 28, 30 (3d Cir. 1993) (quoting *Carteret Sav. Bank, FA v. Shushan*, 919 F.2d 225, 228 (3d Cir. 1990)); *see also Hershey Foods Corp. v. Hershey Creamery Co.*, 945 F.2d 1272, 1278 (3d Cir. 1991) ("It is well-settled that orders granting or denying a change in venue are not proper subjects for interlocutory appeals.") (citing *Nascone v.*

*Spudnuts, Inc.*, 735 F.2d 763, 764 (3d Cir. 1984)); 15 Charles Alan Wright et al., *Federal Practice & Procedure* § 3855, at 472 (2d ed. 1986 & Supp. 2002) ("It is entirely settled that an order granting or denying a motion to transfer under 28 U.S.C.A. § 1404(a) is interlocutory and not immediately appealable . . ."). However, we, like other courts, have held that "'[m]andamus is . . . the appropriate mechanism for reviewing an allegedly improper transfer order.'" *In re United States*, 273 F.3d 380, 385 (3d Cir. 2001) (alteration and ellipsis in original) (quoting *Sunbelt*, 5 F.3d at 30); *see also Van Dusen v. Barrack*, 376 U.S. 612, 615 n.3 (1964); *In re Sealed Case*, 141 F.3d 337, 340 (D.C. Cir. 1998); *Warrick v. Gen. Elec.* (*In re Warrick*), 70 F.3d 736, 739 (2d Cir. 1995); *National-Standard Co. v. Adamkus*, 881 F.2d 352, 356 n.3 (7th Cir. 1989); *Sunshine Beauty Supplies, Inc. v. U.S. Dist. Ct.*, 872 F.2d 310, 311 (9th Cir. 1989); *Hustler Magazine v. U.S. Dist. Ct.*, 790 F.2d 69, 70 (10th Cir. 1986).

Of course, review via mandamus necessarily is more circumscribed than review by appeal. As we have stated, "[M]andamus jurisdiction affords an appellate court less opportunity to correct district court error in the case before it and less opportunity to provide guidance for future cases. Moreover, comity between the district and appellate courts is best served by resort to mandamus only in limited circumstances." *Kelly v. Ford Motor Co.* (*In re Ford Motor Co.*), 110 F.3d 954, 964 (3d Cir. 1997).

In reviewing a transfer order by mandamus, we recently observed, "While 28 U.S.C. § 1651(a) grants federal courts the general power to issue writs, it is widely accepted that mandamus is extraordinary relief that is rarely invoked." *United States*, 273 F.3d at 385. In *Sunbelt*, we described the standards for issuing mandamus with respect to a district court's transfer order:

Our review of the district court's transfer order on a petition for a writ of mandamus is governed by familiar principles. A writ of mandamus is an extraordinary remedy, the issuance of which is generally committed to the sound discretion of the issuing court. *Carteret*, 919 F.2d at 232-33; *In re School Asbestos Litig.*, 977 F.2d [764,] 772 [(3d Cir. 1992)]. . . .

---

Generally, a writ will only issue if the district court did not have the power to enter the order, and then "only if the party seeking the writ meets its burden to demonstrate that its right to the writ is clear and indisputable." [*Carteret*, 919 F.2d] at 232. Thus, we turn to whether or not the district court had the power to transfer this action.

*Sunbelt*, 5 F.3d at 30.[6]

This court has on various occasions construed an appeal as a petition for a writ of mandamus. *See, e.g., In re Nuanze*, 242 F.3d 521, 524 (3d Cir. 2001); *Nascone*, 735 F.2d at 773. Defendants request that we do so here, Reply Br. of Big Three at 21,[7] and we proceed to consider whether

[6. The Supreme Court has stated that "only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy." *Will v. United States*, 389 U.S. 90, 95 (1967) (quoting *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 217 (1945)). It has listed among the conditions for the issuance of a writ of mandamus that "the party seeking . . . the writ have no other adequate means to attain the relief he desires," *Kerr v. U.S. Dist. Ct.*, 426 U.S. 394, 403 (1976) (citing *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943)), and that the right to the writ is "'clear and indisputable.'" *Id.* (quoting *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 384 (1953) (quotation omitted)).

As one commentator has noted, "The circuit court articulations of what constitutes a 'clear and indisputable' right to the writ vary to some degree, but virtually all suggest that some blatant or unconscionable misstep by the district court is needed." Timothy P. Glynn, *Discontent and Indiscretion: Discretionary Review of Interlocutory Orders*, 77 Notre Dame L. Rev. 175, 199 (2001). Glynn distinguishes among courts that require a usurpation of power by the district court, *id.* at 200 & n.94 (citing *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1295 (7th Cir. 1995); *In re Pearson*, 990 F.2d 653, 656 (1st Cir. 1993); *In re Int'l Precious Metals Corp.*, 917 F.2d 792, 793 (4th Cir. 1990)), those that require "shocking abuse of discretion, exercise of power in excess of jurisdiction, or other outrageous behavior," *id.* at 200 & n.95 (citing, *inter alia, In re Chambers Dev. Co.*, 148 F.3d 214, 223 (3d Cir. 1998); *In re Sealed Case*, 141 F.3d at 339; *Boughton v. Cotter Corp.*, 10 F.3d 746, 751 (10th Cir. 1993)), and the Ninth Circuit's less stringent standard, *id.* at 200 & n.96 (citing *Bauman v. U.S. Dist. Ct.*, 557 F.2d 650, 654-55 (9th Cir. 1977)).

7. In their Emergency Motion for Stay Pending Appeal before this court, the Big Three Automakers specifically asked this court to issue a writ of mandamus. Emergency Motion for Stay Pending Appeal, 02-1426, at 6 (filed Feb. 11, 2002).]

to issue a writ of mandamus in light of Defendants' arguments that the District Court erred in denying their transfer motion.

### 2. District Court's Rationale for Denial of Transfer

The District Court denied the Defendants' motion to transfer after holding that it lacked subject-matter jurisdiction over the Friction Product Claims because they were not "related to" Federal-Mogul's bankruptcy proceeding. That holding, in turn, was based on its understanding of this court's decision in *Pacor Inc. v. Higgins (In re Pacor)*, 743 F.2d 984 (3d Cir. 1984), where we interpreted the scope of the statutory "related to" jurisdiction of bankruptcy courts.

In *Pacor*, John and Louise Higgins sued Pacor in Pennsylvania state court for work-related injuries to John Higgins caused by exposure to asbestos supplied by Pacor. Pacor filed a third-party complaint impleading Johns-Manville, the manufacturer of the asbestos. Thereafter, Manville filed for Chapter 11 bankruptcy in the Southern District of New York. Pacor filed a petition for removal in the Bankruptcy Court for the Eastern District of Pennsylvania seeking to remove the Higgins' case from state court to federal bankruptcy court and simultaneously to transfer it from that court to the New York district court where it would be joined with the rest of the Johns-Manville bankruptcy proceedings. The theory of Pacor's petition was that the Higgins suit was "related to" the Manville bankruptcy proceeding. The bankruptcy court denied the petition and remanded the case. *Pacor*, 743 F.2d at 986-87. We affirmed. Analyzing the "related to" provision, we concluded:

[T]he primary action between Higgins and Pacor would have no effect on the Manville bankruptcy estate, and therefore is not "related to" [the Manville] bankruptcy [proceeding]. At best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville. Yet the outcome of the Higgins-Pacor action would in no way bind Manville, in that it could not determine any rights, liabilities, or course of action of the debtor. Since Manville is not a party to the

Higgins-Pacor action, it could not be bound by res judicata or collateral estoppel. Even if the Higgins-Pacor dispute is resolved in favor of Higgins (thereby keeping open the possibility of a third party claim), Manville would still be able to relitigate any issue, or adopt any position, in response to a subsequent claim by Pacor. Thus, the bankruptcy estate could not be affected in any way until the Pacor-Manville third party action is actually brought and tried.

*Id.* at 995 (citations omitted).

The arguments made by Pacor were not dissimilar to those made by Defendants here, but we rejected them, saying:

Pacor stresses that the Higgins-Pacor claim would affect the Manville bankruptcy estate, in that *without* a judgment for plaintiff Higgins in that action, there could never be a third party indemnification claim against Manville. This argument does not alter our conclusion. At best, one could say that a judgment against the plaintiff on the primary claim would make it absolutely certain that the Manville estate could never be adversely affected. This does not prove the converse, however, that a judgment in favor of the plaintiff Higgins necessarily does affect the estate. The fact remains that any judgment received by the plaintiff Higgins could not itself result in even a contingent claim against Manville, since Pacor would still be obligated to bring an entirely separate proceeding to receive indemnification.

*Id.* (emphasis in original).

Thus, the District Court interpreted *Pacor* and its progeny to hold that "related-to bankruptcy jurisdiction will not extend to a dispute between non-debtors unless that dispute, by itself, creates at least the logical possibility that the estate will be affected." Feb. 15 Op. at 17.

*Pacor* has been favorably cited in dozens of decisions of this court. As we have observed:

The test . . . articulated in *Pacor* has been enormously influential. *Pacor* not only governs our analysis here,

but its cogent analytical framework has been relied upon by our sister circuits more than any other case in this area of the law. . . . .

Even for those circuits that have not formally adopted *Pacor*, [it] has provided an indispensable and frequently cited frame of reference, a veritable beacon on the uncharted and perilous waters of bankruptcy subject matter jurisdiction. The references to *Pacor* in Shepard's Citations are legion. When federal courts must consider whether an issue is a related proceeding, the starting point has universally been *Pacor*.

*Torkelsen v. Maggio (In re Guild & Gallery Plus, Inc.)*, 72 F.3d 1171, 1181 & n.5 (3d Cir. 1996).

*Pacor* clearly remains good law in this circuit.[8] Under our operating procedures, we cannot revisit *Pacor* unless we are sitting en banc. Moreover, the Supreme Court has endorsed the core of this court's opinion in *Pacor*, saying:

We agree with the views expressed by the Court of Appeals for the Third Circuit in *Pacor* . . . that "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate," and that the "related to" language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simply proceedings involving the property of the debtor or the estate. We also agree with that court's observation that a bankruptcy court's "related to" jurisdiction cannot be limitless.

*Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (citations omitted) (citing and quoting *Pacor*, 743 F.2d at

8. Honeywell argues that *Pacor* is unreasonable in various ways and that *Lindsey v. O'Brien (In re Dow Corning Corp.)*, 86 F.3d 482 (6th Cir. 1996), articulates a better approach to related-to jurisdiction. Br. of Honeywell at 13–18. Honeywell's arguments are not ultimately persuasive and, as we note in the text, we are not in a position to reject *Pacor* without en banc review. 3d Cir. Internal Operating P. 9.1.

994) (emphasis added). The Supreme Court noted the general acceptance of *Pacor*, commenting that all of the courts of appeal have adopted the *Pacor* test with little or no variation with the exception of the Second and Seventh Circuits, which have adopted slightly different tests. *Id.* at 308-309 n.6.

Notwithstanding the widespread acceptance of *Pacor*, Defendants argue that the Friction Product Claims are "related to" the Federal-Mogul bankruptcy proceeding because the various claims against them could lead to substantial indemnification or contribution claims against Federal-Mogul, which would in turn significantly affect the administration of the bankruptcy estate and the development of an appropriate plan of reorganization. They focus on our articulation of the *Pacor* test for "related to" jurisdiction as "whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.*" *Pacor*, 743 F.2d at 994 (emphasis in original). Defendants emphasize that in *Pacor* we stated that a civil "proceeding need not necessarily be against the debtor" to give rise to "related to" jurisdiction it is enough that the outcome of such a proceeding "could alter the debtor's rights, liabilities, options, or freedom of action." *Id.* They argue that the outcome of the Friction Product Claims could conceivably have an effect on Debtors' estate, because it is "conceivable" that if the Friction Product Plaintiffs succeed in their claims against them, the Friction Product Defendants would seek indemnification and/or contribution from Federal-Mogul.

Their reading of the word "conceivable" ignores the precise holding of *Pacor* where, despite the seemingly broad language of the opinion, we found no "related to" jurisdiction for the Higgins lawsuit against Pacor because the outcome of that lawsuit could not result "in even a contingent claim" against the debtor (Manville); rather, "an entirely separate proceeding to receive indemnification would have been required. *Id.* at 995. The test articulated in *Pacor* for whether a lawsuit could "conceivably" have an effect on the bankruptcy proceeding inquires whether the allegedly related lawsuit would affect the bankruptcy proceeding without the intervention of yet another lawsuit.

25

24

Therefore, because any indemnification claims that the Friction Product Defendants might have against Debtors have not yet accrued and would require another lawsuit before they could have an impact on Federal-Mogul's bankruptcy proceeding, we cannot hold that the District Court's ruling that it lacked subject-matter jurisdiction because the Friction Product Claims were not "related to" the Federal-Mogul bankruptcy proceeding was a "clear error . . . approach[ing] the magnitude of an unauthorized exercise of judicial power." *Lusardi v. Lechner*, 855 F.2d 1062, 1069 (3d Cir. 1988) (citing *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 661 (1978)). We therefore conclude that the District Court's decision does not justify issuance of a writ of mandamus.

The arguments by the Friction Product Defendants for the existence of "related to" bankruptcy jurisdiction draw heavily on the decision of the Sixth Circuit in *Dow Corning*, 86 F.3d 482 (6th Cir. 1996). Dow Corning, the largest producer of silicone-gel breast implants, also sold silicone materials to other manufacturers and suppliers of silicone implants were sued by thousands of recipients of the implants for personal injuries related to the silicone implants. Dow Corning filed for Chapter 11 bankruptcy. The bankruptcy filing automatically stayed all of the silicone implant cases against it, but not the claims against Dow Chemical and Corning, Inc. (its co-defendants as well as its shareholders) or the claims against the other three co-defendants. As in this case, the various co-defendants removed many of these personal injury claims from state court to federal court. Dow Corning then moved to transfer the removed cases to the district court that had jurisdiction over its Chapter 11 proceedings, and the co-defendants joined in its motions, relying on the "related to" provision of the Bankruptcy Code. The district court held that it did not have "related to" jurisdiction over the claims against the co-defendants but the court of appeals, citing *Pacor*, reversed.

After noting that Dow Corning's co-defendants may have thousands of claims of indemnification and contribution against Dow Corning and that Dow Corning may have similar claims against them, the court concluded that the

district court had "related to" jurisdiction over the silicone implant claims of Dow Corning's non-shareholder co-defendants based on the following reasoning:

We find that it is not necessary for the appellees first to prevail on their claims against the nondebtor defendants, and for those companies to establish joint and several liability on Dow Corning's part, before the civil actions pending against the nondebtors may be viewed as conceivably impacting Dow Corning's bankruptcy proceedings. The claims currently pending against the nondebtors give rise to contingent claims against Dow Corning which unquestionably could ripen into fixed claims. *The potential for Dow Corning's being held liable to the nondebtors in claims for contribution and indemnification, or vice versa, suffices to establish a conceivable impact on the estate in bankruptcy.* Claims for indemnification and contribution, whether asserted against or by Dow Corning, obviously would affect the size of the estate and the length of time the bankruptcy proceedings will be pending, as well as Dow Corning's ability to resolve its liabilities and proceed with reorganization.

*Dow Corning*, 86 F.3d at 494 (emphasis added).

The court concluded:

Cognizant of the fact that "related to" jurisdiction cannot be limitless and concerned about granting the benefits of the automatic stay in bankruptcy to solvent codefendants, we nevertheless believe the possibility of contribution or indemnification liability in this case is far from attenuated. We conclude that Section 1334(b) jurisdiction exists over the actions pending against [Dow Corning's co-defendants].

*Id.*

The *Dow Corning* court distinguished *Pacor* as follows:

In addition, we believe there is a qualitative difference between the single suit involved in *Pacor* and the overwhelming number of cases asserted against Dow Corning and the nondebtor defendants in this case. A single possible claim for indemnification or

contribution simply does not represent the same kind of threat to a debtor's reorganization plan as that posed by the thousands of potential indemnification claims at issue here.

*Id.*

The Friction Product Defendants extrapolate from *Dow Corning* a rule that "related to" jurisdiction exists over claims against non-debtors when these non-debtors have potential contribution and indemnification claims. However, they cannot persuasively argue that *Dow Corning* rather than *Pacor* should have provided the rule of law the District Court should have followed.

The District Court stated that it was:

unconvinced by the *Dow Corning* panel's main point of distinction between that case and *Pacor*. The Sixth Circuit reasoned that *Pacor* contained only one claim, whereas in *Dow Corning* many thousands of plaintiffs were suing the non-debtors. This Court regards with misgiving the proposition that mere numbers of claims should prevail over articulable principles when it comes to defining federal subject matter jurisdiction.

Feb. 15 Op. at 15-16.

The District Court referred only briefly to the Fifth Circuit's decision in *Arnold v. Garlock, Inc.*, 278 F.3d 426, *reh'g denied*, 288 F.3d 234 (5th Cir. 2002), which presents issues like those before us. Like the Friction Product Defendants here, Garlock, a co-defendant of Federal-Mogul in over eighty asbestos-related tort cases, removed the tort claims against it and moved for transfer to the Federal-Mogul bankruptcy proceeding. Garlock made the same arguments that Defendants make before us, and relied on *Dow Corning* to support "related to" jurisdiction. The Fifth Circuit distinguished *Dow Corning* saying:

In *In re Dow Corning*, the Sixth Circuit reversed and ordered the United States District Court for the Eastern District of Michigan to transfer under § 157[b](5) a relatively small number of non-debtor co-defendants who had asserted claims for contribution, or announced the intent of doing so, against the debtor

manufacturer of silicone breast implants. *In re Dow Corning*, 86 F.3d at 498. In that case, each of the co-defendants was closely involved in using the same material, originating with the debtor, to make the same, singular product, sold to the same market and incurring substantially similar injuries. This circumstance created a unity of identity between the debtor and the co-defendants not present here, where the co-defendants variously use asbestos for brake friction products, insulation, gaskets, and other uses.

Therefore, while we do not disagree that certain mass tort claims in some circumstances might be consolidated with bankruptcy proceedings in a single district in accordance with § 157[b](5), the relationship of the co-defendants in . . . *In re Dow Corning* is distinguishable from Garlock's asserted relationship through a claim for contribution, to the debtor here.

*Id.* at 440. The Fifth Circuit's analysis in *Garlock* of the "related to" provision of the Bankruptcy Code is consistent with the result on the same issue reached by the District Court in this case.

We, however, remain a step away from reaching the merits of whether the District Court has "related to" jurisdiction. Instead, because our appellate jurisdiction is at issue, we review the District Court's denial of Defendants' transfer motion in the context of deciding whether to grant a writ of mandamus. We have recently stated that a writ of mandamus may issue only if "the district court committed a 'clear error of law' at least approaching the magnitude of an unauthorized exercise of judicial power, or a failure to use that power when there is a duty to do so," *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 227 (3d Cir. 1995) [alteration in original] (quoting *Richman Bros. Records, Inc. v. U.S. Sprint Communications Co.*, 953 F.2d 1431, 1448 [3d Cir. 1991] [quotation omitted]), and only when "the party seeking [mandamus] demonstrates a clear and indisputable right to [it]." *Id.* (citing *Carteret Sav. Bank*, 919 F.2d at 232).

The Friction Product Defendants have not met this rigorous standard for the issuance of the extraordinary writ

of mandamus as to the District Court's denial of the motion to transfer. *See, e.g., In re United States*, 273 F.3d at 385; *Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043 (3d Cir. 1973) (denying petition for mandamus regarding a transfer order). *See also Dalton v. United States (In re Dalton)*, 733 F.2d 710, 716-18 (10th Cir. 1984) (same in the bankruptcy context); *In re McDonnell-Douglas Corp.*, 647 F.2d 515, 517 (5th Cir. 1981) (same); *Toro Co. v. Alsop*, 565 F.2d 998 (8th Cir. 1977) (denial of mandamus petition regarding transfer in anti-trust context); 16 Charles Alan Wright et al., *Federal Practice & Procedure* § 3935.4, at 619-26 (2d ed. 1996) (discussing use of mandamus applied to transfer orders). We will deny the request to issue a writ of mandamus to compel the District Court to transfer the Friction Product Claims under § 1334(b).

B.

*Remand Order*

1. *Appellate Jurisdiction*

We next consider whether we have jurisdiction to review the decision of the District Court if we construe that decision as a remand order.

The Friction Product Defendants removed the Friction Product Claims to various federal courts pursuant to 28 U.S.C. § 1452 (bankruptcy removal). That section provides:

(a) A party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 [the general jurisdictional provisions of the bankruptcy code] of this title.

(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. *An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d),*

1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.

28 U.S.C. § 1452 (emphasis added).

The comparable provisions applicable to non-bankruptcy cases are in 28 U.S.C. §§ 1441 and 1447. Section 1441(a) provides:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Sections 1447(c) and (d) provide:

(c) ... If at any time before final judgment it appears that the district court lacks subject matter jurisdiction the case shall be remanded....

(d) *An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise,* [except for certain civil rights cases].

28 U.S.C. § 1447 (emphasis added).

At one time, various courts, including this one, held that judicial review of the remand of a claim removed pursuant to the Bankruptcy Code was governed exclusively by § 1452(b), the provision governing remand of removed claims "related to" bankruptcy, not by § 1447(d), the general procedural provision governing remand after removal. *See Pacor*, 743 F.2d at 990-92 (discussing § 1478, the predecessor of § 1452). Subsequently, the Supreme Court rejected this view, stating:

There is no express indication in § 1452 that Congress intended that statute to be the exclusive provision governing removals and remands in bankruptcy. Nor is there any reason to infer from § 1447(d) that Congress intended to exclude bankruptcy cases from its coverage. The fact that § 1452 contains its own provision governing certain types of remands in bankruptcy ... does not change our conclusion. There

Defendants' argument that we are not precluded from reviewing the cross-jurisdictional remands because they were unauthorized by statute stems in part from the Supreme Court's holding in *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 345-46 (1976), that only remand orders based on grounds specified in § 1447(c) are immune from review under § 1447(d). In *Thermtron*, the remand was ordered solely on the ground of the district court's heavy docket. The Court's subsequent opinion in *Things Remembered* clarified the scope of the prohibition on review of remand orders imposed by § 1447(d). The Court held appellate review was properly denied of an order remanding a case which had been untimely removed. 516 U.S. at 128. As Justice Thomas stated for the Court, "As long as a district court's remand is based on a timely raised defect in removal procedure or on lack of subject-matter jurisdiction — the grounds for remand recognized by § 1447(c) — a court of appeals lacks jurisdiction to entertain an appeal of the remand order under § 1447(d)." *Id.* at 127-28. As the basis for the District Court's remand in this case was lack of subject matter jurisdiction (the absence of "related to" jurisdiction), appeal is similarly barred.

Moreover, Defendants' premise that the District Court lacked authority to remand a case improvidently removed to a jurisdiction other than the one from which it came is belied by two decisions of this court. In *Bloom v. Barry*, 755 F.2d 356 (3d Cir. 1985), a breach of warranty case commenced in a Florida state court was removed to the District Court for the Southern District of Florida and then transferred to the District Court for the District of New Jersey. The latter court found that it lacked subject-matter jurisdiction and remanded the case to a New Jersey state court, a venue in which the case had never been. We granted a writ of mandamus, concluding that while the New Jersey district court was right to remand the case, it was wrong to remand it to the New Jersey state court. We therefore vacated the district court's order and directed it to remand the case to the Florida state court pursuant to § 1447(c). *Id.* at 358. In explaining our decision directing remand to the Florida state court from which it had been removed rather than to the United States District Court in

---

is no reason §§ 1447(d) and 1452 cannot comfortably coexist in the bankruptcy context. We must, therefore, give effect to both.

*Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 129 (1995).[9] Giving effect to both § 1447(d) and § 1452(b) and applying them to a remand order involving claims allegedly "related to" a bankruptcy proceeding, it is apparent that such a remand is expressly "not reviewable by appeal or otherwise." 28 U.S.C. § 1452(b). *See also* 28 U.S.C. § 1447(d) (remand orders "not reviewable on appeal or otherwise.").

Defendants argue that this court has jurisdiction to review the remand order because neither § 1447(c) nor § 1452(a) authorized the District Court to remand the Friction Product Claims to the state courts from which they were removed. Specifically, the Friction Product Defendants argue that the remand order was not authorized because § 1447(c) only authorizes remand by the district court to a court from which the claims were removed and only authorizes remand to a court from which the removed claims most recently came. Relatedly, they note that the language of § 1452(b) is even more specific as it only authorizes remand by "[t]he court to which such claim or cause of action is removed." Therefore, they contend that once the District Court decided the jurisdictional issue against them, it only had the options of (i) vacating the provisional transfer order, (ii) denying the final transfer order, or (iii) transferring the claims back to the district courts from which they were provisionally transferred. Reply Br. of Big Three Automakers at 18.[10] In any event, as they view the situation, the District Court had no authority to remand the claims directly to the state courts.[11]

9. While *Things Remembered* overruled *Pacor* on this precise issue, it did not disturb the other holdings of *Pacor*. *See, e.g., Halper v. Halper*, 164 F.3d 830, 837 n.8 (3d Cir. 1999).

10. They assume that under any of these options, the District Court's decision would have been subject to appellate review. As we discussed in the previous section, that would not necessarily be the case.

11. It is unlikely that if the District Court had returned the cases to the district courts from which they came, under the law of the case doctrine, those district courts would have been free to reject the ruling of the District Court on the "related to" jurisdiction issue, but we need not decide that issue.

Florida from which it had come, we stated, "[f]ollowing the change of venue [the District Court for] the District of New Jersey had the same authority with respect to disposition of the case as had the District Court for the Southern District of Florida." *Id.* We held that, just as the district court in Florida could have remanded the case to Florida state court if it found any jurisdictional defects, after transfer so too could the district court in New Jersey. *Id.* *Bloom's* holding that the court to which a case has been transferred stands in the shoes of the court from which the case was transferred, at least with respect to remand pursuant to § 1447, is relevant here. *See also AlliedSignal Recovery Trust v. Allied Signal Inc.*, Nos. 01-1111, 01-1355, 01-1399 (3d Cir. July 31, 2002).

Similarly, in *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26 (3d Cir. 1985), a tort action commenced in California state court was removed to the United States District Court for the Central District of California and then transferred pursuant 28 U.S.C. § 1404 to the United States District Court for the Western District of Pennsylvania where the relevant documents and many witnesses were located. The district court in Pennsylvania held that the plaintiff's claims were time-barred and it dismissed the action. On appeal, we vacated the dismissal because we found that there was no diversity of citizenship and therefore the federal courts lacked subject-matter jurisdiction. *Id.* at 31-33. Although we considered "remanding [the case] directly to the California state court, or routing [the case] through the federal district court in Los Angeles," *id.* at 33 n.13, we decided to remand the case to the district court in Pennsylvania with instructions that it remand the case to the California state court, not to the California district court that had transferred the case to the Pennsylvania district court. Thus, once again we authorized a cross-jurisdictional remand. In sum, the relevant precedent from this court supports the District Court's cross-jurisdictional remand order.

The case before us is in some ways similar to the recent decision of *Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192 (D.C. Cir. 2002), in which foreign countries brought various actions in a Florida state court to recover damages from certain tobacco companies. The cases were removed to federal district court in Florida and then transferred to the federal district court in the District of Columbia. That court held that it lacked subject-matter jurisdiction under § 1447, and remanded four of the cases to the Florida state court. The tobacco companies appealed the remand order and petitioned for a writ of mandamus to prevent the district court from remanding the remaining two cases to the Florida state court. The Court of Appeals for the District of Columbia held that, under § 1447, it lacked jurisdiction to review the district court's remand order. *Id.* at 196. That holding is consistent with the statute and accords with our view of the appellate jurisdiction issue here. Accordingly, we hold that pursuant to § 1447(d) we do not have jurisdiction over the appeal of the District Court's order remanding the Friction Product Claims to the various state courts.

2. *Mandamus*

The Friction Product Defendants argue, as they did with respect to the denial of their motion to transfer, that we should construe their appeal as a petition for mandamus. They recognize that § 1447(d) states that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or *otherwise.*" 28 U.S.C. § 1447(d) (emphasis added). We construed this language in *Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124 (3d Cir. 1998), where we held that "section 1447(d) prohibits review of remand orders 'whether erroneous or not and whether review is sought by appeal or by extraordinary writ.'" *Id.* at 126 (quoting *Thermtron*, 423 U.S. at 343). *See also Black & Decker (U.S.), Inc. v. Brous*, 817 F.2d 13, 14 (3d Cir. 1987) ("inclusion of the phrase 'or otherwise' [in § 1447(d)] precludes review of a remand order in a proceeding like the instant one that is originated by a petition for an extraordinary writ") (citing *Gravitt v. Southwestern Bell Tel. Co.*, 430 U.S. 723 (1977)). *Accord New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1095-96 (11th Cir. 1997) (finding no jurisdiction in light of § 1447(d) to consider appeal or petition for mandamus with respect to remand order); *Flores v. Long*, 110 F.3d 730, 733 (10th Cir. 1997) (same); *Gonzalez-Garcia v. Williamson Dickie Mfg. Co.*,

35

34

99 F.3d 490, 492 (1st Cir. 1996) (per curiam) (holding that § 1447(d) precludes mandamus review); *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 182-83 (8th Cir. 1993) (per curiam) (same).

However, it is not as obvious that § 1452(b) prohibits review by mandamus. The language of that section provides that "[a]n order entered under this subsection remanding a claim or cause of action . . . is not reviewable by appeal or *otherwise* by the court of appeals *under* section 158(d), 1291, or 1292 of this title. 28 U.S.C. § 1452(b) (emphasis added).

On the one hand, the Friction Product Plaintiffs plausibly argue that the "or otherwise" language must refer to mandamus review. To read § 1452(b) as allowing for mandamus review renders the "or otherwise" language meaningless, in violation of the canon against surplusage. On the other hand, as the Friction Product Defendants argue, the statute enumerates the statutory sections that cannot be used to review remands and fails to mention 28 U.S.C. § 1651(a) (the All Writs Act). They construe this omission as permitting writs of mandamus. This is a plausible application of the *expressio unius est exclusio alterius* (inclusion of one thing indicates exclusion of the other) canon of statutory interpretation.

In discussing whether remand decisions are subject to mandamus review, the Seventh Circuit, in *In re U.S. Brass Corp.*, 110 F.3d 1261 (7th Cir. 1997), held that "section 1452(b) bars review by appeal or *otherwise*, which would seem to take in mandamus, which anyway is available only when the applicant's right to it is *clear*." *Id.* at 1266 (emphasis in original) (citations omitted).

The legislative history is somewhat informative as to the proper interpretation of § 1452(b). The sentence at issue first appeared in the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, § 103, 98 Stat. 333, 335 (1984) (amended 1990) as follows: "Any order entered under this subsection remanding a claim or cause of action . . . is not reviewable by appeal or otherwise." Six years later, as part of the Judicial Improvements Act of 1990, Pub. L. No. 101-650, § 309, 104. Stat. 5089, 5113 (1990), § 1452 was modified to its current form.

On behalf of the Courts Subcommittee of the Senate Judiciary Committee, Senator Charles Grassley, the ranking member of the subcommittee, read into the record its section-by-section analysis of the act. The relevant portions of its analysis read as follows:

[The purpose of these changes is] to clarify that, with respect to certain determinations in bankruptcy cases, . . . appeals from the district courts to the courts of appeals [are forbidden but appeals are] not [forbidden] from bankruptcy courts to the district courts.

The statutes [as written before the changes] provide that bankruptcy judges' orders deciding certain motions (motions to abstain in favor of, or remand to, state courts) are unreviewable "by appeal or otherwise." Because bankruptcy judges may enter trial orders only if there is appellate review in an Article III court, one result of this limitation is that bankruptcy judges cannot make final judgments in such cases even when they clearly involve "core" proceedings.

[The changes] would authorize bankruptcy judges to enter binding orders in connection with abstention determinations under Title 11 or Title 28 and remand determinations under Title 28, subject to review in the district court. The statutory language under each of these sections now provides that the decision of the bankruptcy court (to abstain or remand) "is not reviewable by appeal or otherwise." The proposed amendment would modify these three sections to provide that the decision of the bankruptcy court is not reviewable "by the court of appeals . . . or by the Supreme Court of the United States . . ." Such determinations would therefore be reviewable by the district court.

Speeding the disposition of these types of motions will better serve the purpose of the limitation of appeals from the district courts to the courts of appeals.

136 Cong. Rec. 36,290 (1990).

It thus appears that these 1990 changes were intended to make explicit that a district court, but not the Supreme

36

Court or a court of appeals, could review a bankruptcy court's decision to remand and that decisions by a district court to remand were not reviewable. The broad scope of the original wording of the statute suggests that Congress did not intend to allow for mandamus review of remand decisions pursuant to §1452(b). As is evident by the last paragraph of the quotation from Senator Grassley's remarks, Congress was interested in "speeding up" the effects of a district or bankruptcy court's decision to remand by precluding appellate review of such orders.

Both the statutory language itself and the intent of Congress as evidenced by the legislative history lead us to concur with the conclusion in *U.S. Brass Corp.*, 110 F.3d at 1266, that §1452(b), particularly when read together with §1447(d), bars both appeal and mandamus review of orders remanding to state courts[12] pursuant to §1452(b) and/or §1447(c).[13] It follows that we must deny the requested petition for mandamus as to the District Court's order remanding to the state courts.[14]

12. In *AlliedSignal Recovery Trust v. Allied Signal Inc.*, Nos. 01-1111, 01-1355, 01-1139 (3d Cir. July 31, 2002), this court, following *Bloom*, granted a writ of mandamus to vacate a district court order "remanding" a case to a Delaware state court where it had never been. In *Bloom*, we stated that "'[r]emand' means 'send back.' It does not mean 'send elsewhere.'" *Bloom*, 755 F.2d at 357. We note that in contrast the District Court in this case remanded to state courts from which the various cases had been removed.

13. Even if we did have jurisdiction to consider a petition for a writ of mandamus, we would not issue such a writ for reasons similar to those we previously discussed in considering whether to issue a writ of mandamus construing the decision of the District Court as a denial of transfer.

14. In light of our decision that we have no jurisdiction to review the District Court's order denying transfer and remanding, we need not consider its alternate order abstaining. Moreover, a straightforward reading of 28 U.S.C. §1334(d) supports the view that we do not have appellate jurisdiction to review a district court's decision to abstain pursuant to §1334(c)(1) (discretionary abstention). *See Things Remembered*, 516 U.S. at 131 n.1 (1995) (Ginsburg, J., concurring) ("Section 1334(c)(2) [now §1334(d)] renders unreviewable district court decisions to abstain or not to abstain' from adjudicating state-law claims merely 'related to' a bankruptcy case, i.e., claims that do not independently qualify for federal-court jurisdiction.").

37

C.

Coda

We are neither unaware of nor unsympathetic to the argument of the Friction Product Defendants that the crisis created by the current asbestos litigation would be ameliorated were there a single proceeding that determined whether "the subset of asbestos claims based on alleged exposure to automotive friction products satisfies the threshold standard of scientific validity established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)." Reply Br. of Big Three Automakers at 2. The arguments of appellants are based on their optimistic view that a *Daubert* hearing would lead to the rejection of the causation claims of all Plaintiffs. However, the evidence creates an issue that could well go either way as to whether Plaintiffs satisfy the *Daubert* gatekeeping standard. But this case is not in a posture to face the *Daubert* issue, as we are halted at the pass by our conclusion that we have no jurisdiction over the decision of the District Court denying the transfer and remanding the cases to the state courts from which they came.

Throughout Defendants' briefs and in their oral arguments they repeatedly contended that we are faced with the question "whether the American judicial system is capable of dealing with the recent explosion of automotive 'friction product' asbestos claims in a fair and rational manner." Br. of Big Three Automakers at 4. This is not dissimilar to the arguments made by the parties who sought approval of a settlement class of asbestos victims. The effort was rejected both by this court in *Georgine v. Amchem Products, Inc.*, 83 F.3d 610 (3d Cir. 1996), where we stated that "against the need for effective resolution of the asbestos crisis, we must balance the integrity of the judicial system," *id.* at 617, and by the Supreme Court, which affirmed that decision. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), *aff'g sub nom. Georgine*, 83 F.3d 610. Just as both courts declined to permit an end run around the requirements for class actions imposed by Federal Rule of Civil Procedure 23, so also are we unwilling to disregard the statutory impediments to our review of

38

orders of the district courts transferring and remanding cases. Arguably, a procedure authorizing the aggregation of state court cases, such as the Friction Product Claims, into a nationwide class action would provide a mechanism for a *Daubert* hearing like the one Defendants seek, but such proposals, frequently made, have not passed both houses of Congress.

As Justice Ginsburg stated in *Amchem*, "The argument is sensibly made that a nationwide administrative claims processing regime would provide the most secure, fair, and efficient means of compensating victims of asbestos exposure. Congress, however, has not adopted such a solution." *Id.* at 628-29.

## III.

## CONCLUSION

For the reasons described above, this court does not have jurisdiction to review the decisions of the District Court denying the Friction Product Defendants' transfer motions and remanding the Friction Product Claims to the state courts from which they were originally removed. Further, insofar as we can consider Defendants' appeal construing it as a petition for a writ of mandamus, that petition is denied.

A True Copy:
    Teste:

        *Clerk of the United States Court of Appeals*
                  *for the Third Circuit*