MDL 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG 23 2002

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI) | ) ) ) | |
| CONDITIONAL TRANSFER ORDER (CTO-215 | ) ) ) | DOCKET NO. MDL 875 |

*This Document Relates to:*

U. S. DISTRICT COURT
STATE OF COLORADO

KENNETH FREIBERG AND MARY SUE
FRIEBERG, Husband and Wife
    Plaintiff

-vs-                  No. 02 - K -1272 (OES)

SWINERTON & WALBERG,
ET AL

---

## PLAINTIFFS'
## MOTION TO VACATE CONDITIONAL TRANSFER ORDER AND FOR IMMEDIATE REMAND AND MEMORANDUM AND BRIEF IN SUPPORT THEREOF

---

    Plaintiffs move the court to forthwith remand the above action to the District Court, County of Boulder, State of Colorado. As grounds therefore Plaintiffs state that removing Defendant, Camfil Farr, has failed and refused to comply with clear requirements for removal to the U.S. District Court, District of Colorado; namely Defendant has not obtained consent of all other defendants to removal.

**OFFICIAL FILE COPY**   IMAGED AUG 26 '02

RECEIVED CLERK'S OFFICE
2002 AUG 23 A 11: 39
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

1.  Plaintiff, Kenneth Freiberg, is diagnosed with lung cancer caused by exposure to asbestos. To date his treatment includes the complete removal of one lung.

2.  This case was filed in Colorado State court, 20th Judicial district, Boulder County, on September 14, 2001.

3.  On July 2, 2002, one of the defendants (Camil Farr) filed a notice of removal of this case to federal court.

4.  The ground stated for removal in the notice is federal question. (U.S.C. §§ 1441 and 1331.)

5.  At the time the notice of removal was filed Removing Defendant had not obtained the consent of all defendants for removal. Defendant to this date has not obtained consent of all defendants for removal. Specifically, there is no consent from defendant Rio Grande Supply and there is no consent from Rapid American. A copy of correspondence from counsel for Rio Grande, dated August 2, 2002, is attached hereto as Exhibit A.

6.  On July 13, 2002 plaintiff filed a motion in the District of Colorado to remand the case to state court. A copy of that motion is attached hereto as exhibit B. It is now pending before the Hon. John Kane, District Judge.

7.  On August 7, 2002, Defendant Camfil Farr filed a response to plaintiff's motion to remand. The response is attached as Exhibit C.

8.  On August 13, 2002, Plaintiffs filed a reply to the defendant's response. The reply is attached hereto as exhibit D.

9.  Before the District of Colorado court had the opportunity to rule on Plaintiffs' Motion to Remand, the MDL panel made the above case the subject of a conditional transfer order.

10. The U.S. District Court for the District of Colorado issued a Minute Order on August 14, 2002, concerning Response and Reply deadlines for the remand issue. The Order is attached hereto as Exhibit E.

WHEREFORE, Plaintiffs now request this court to either:

a)      Grant Plaintiffs' Motion to Remand to the state court, 20th Judicial District, Boulder,  Colorado;

b)      or, vacate the Conditional Transfer Order allowing U.S. District  Court for the District of Colorado time to rule on Plaintiffs' Motion to Remand to State Court.

TRINE & METCALF, P.C.

J. Conard Metcalf, Reg. 2489
1435 Arapahoe Ave.
Boulder, CO 80302
303.442.0173
*Attorneys for Plaintiffs*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**AUG 2 3 2002**

FILED
CLERK'S OFFICE

PANEL SERVICE LIST (Excerpted from CTO-215)
DOCKET NO. 875
IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO - VI)

Kennerh Freiberg, et al. v. Swinerton Walberg Property *Services, Inc., et al., D. Colorado, C.A. No. 1:02-1272*

I hereby certify that a true and correct copy of the foregoing PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER AND FOR IMMEDIATE REMAND AND MEMORANDUM AND BRIEF IN SUPPORT THEREOF was served upon the following, via U.S. Mail, postage pre-paid on 8/21/02 and on 8/23/02 as indicated hereon.

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114
8/23/02

Mary P. Birk
Baker & Hostetler, L.L.P.
303 East 17th Avenue
Suite 1100
Denver, CO 80203
8/21/02

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115
8/23/02

Adam M. Chud
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, DC 20036
8/23/02

Gary M. Clexton
King & Greisen, LLP
1670 York Street
Denver, CO 80202
8/21/02

Ellen B. Furman
Goldfein & Joseph
1600 Market Street
33rd Floor
Philadelphia, PA 19103
8/23/02

Susan M. Hansen
Brownson & Ballou
4800 U.S. Bank Place
601 Second Avenue, South
Minneapolis, MN 55402
8/23/02

Shauna Hilgers Law Offices
6508 Poppy Street
P.O. Box 1254
Arvada, CO 80001
8/21/02

Steven M. Kaufman
Morrison & Foerster, LLP
5200 Republic Plaza
370 17th Street, Suite 5200
Denver, CO 80202
8/21/02

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308
8/23/02

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

2002 AUG 23   A 11: 38

RECEIVED
CLERK'S OFFICE

David A. Damico
Burns, White & Hickton
2400 Fifth Avenue Place
120 Fifth Avenue
Pittsburgh, PA 15222
8/23/02

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
8/23/02

Raymond P. Forceno
Forceno & Hannon
Philadelphia Bourse Building
Suite 1000
Independence Mall East
Philadelphia, PA 19106
8/23/02

Bradley Aaron Levin
Roberts, Levin & Patterson, P.C.
1660 Wynkoop Street
Suite 800
Denver, CO 80202
8/21/02

Daniel M. Fowler
Fowler, Schimberg & Flanagan, PC
1640 Grant Street
Suite 300
Denver, CO 80203
8/21/02

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102
8/23/02

J. Conard Metcalf
Trine & Metcalf, PC
 1435 Arapahoe Avenue
Boulder, CO 80302-6390
N/A Plaintiffs' Counsel

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli, L.L.P.
Centre Square West
15th Floor
Philadelphia, PA 19102
8/23/02

James M. Miletich
McConnell, Siderius, Fleischner, et al.
The Root Building, Suite 300
2401 15th Street
Denver, CO 80202
8/21/02

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
Detroit, MI 48226
8/23/02

Christopher K. Miller
Kennedy & Christopher
1050 Seventeenth Street
Suite 2500
Denver, CO 80265-1197
8/21/02

Andrew J. Trevelise
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
8/23/02

Ronald L. Motley
Ness, Motley, Loadholt, Richardson & Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29464
8/23/02

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406
8/23/02

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219
8/23/02

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216
8/23/02

David M. Setter
Socha, Perczak & Anderson, PC
1775 Sherman Street #1925
Denver, CO 80203
8/21/02

**FREIBERG**

John D. Roven
Roven, Kaplan & Wells
2190 North Loop West
Suite 410
Houston, TX 77018
8/23/02

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025
8/23/02

_____ Nancy Dene Cadler

TRINE & METCALF, P.C.



# McConnell Siderius Fleischner Houghtaling & Craigmile, LLC

James M. Miletich
Direct Dial: 303.458.9545
E-Mail: jmiletich@msfhc.com

August 2, 2002

To All Counsel of Record

Re:   Freiberg v. Swinerton & Walberg Property Services, et al.
      Boulder District Court Case No. 2001-CV-1409
      U.S. District Court No. 02-M-1272 (OES)

      Vanhooser v. Swinerton & Walberg Property Services, et al.
      Boulder District Court Case No. 2002-CV-767
      U.S. District Court No. 02-K-1290 (OES)

      Soderquist v. Swinerton & Walberg Property Services, et al.
      Boulder District Court Case No. 2002-CV-859
      U.S. District Court Case No. 02-K-1289 (OES)

      Dionigi v. John Crane, Inc., et al.
      Boulder District Court Case No. 2001-CV-1676
      U.S. District Court Case No. 02-K-1291 (OES)

Dear Counsel:

Please be advised that Defendant Rio Grande Company, Inc. does **not** consent to removal of the four above-referenced cases from state court to federal court. I extend my apology to Ms. Epperson for the inaccurate position of my client previously conveyed in the Freiberg case. I was in trial at the time and had not had the opportunity to discuss the issue with my client.

Very truly yours,

*James M. Miletich*

James M. Miletich

PENGAD-Bayonne, N.J.

PLAINTIFF'S
EXHIBIT
A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.        02-M-1272 (OES)

KENNETH FREIBERG AND
MARY SUE FREIBERG
     Plaintiffs

-vs-

SWINERTON WALBERG PROPERTY SERVICES, INC.,
A COLORADO CORPORATION, et. al.
     Defendants

---

### PLAINTIFFS' MOTION TO REMAND
### AND MEMORANDUM OF LAW IN SUPPORT
### [Re: Defendant Camfil Farr, Inc. Removal]

---

## PLAINTIFFS' MOTION TO REMAND

Plaintiffs move this court, pursuant to 28 U.S.C. §1447(c), for an order remanding this action to

the State of Colorado District Court, County of Boulder (Twentieth Judicial District). As

grounds therefore, Plaintiffs state the following:

1.    Plaintiff, Kenneth Freiberg, was diagnosed with lung cancer, attributable to asbestos

    exposure.  Treatment for the lung cancer has included removal of one of Mr Freiberg's

    lungs, chemotherapy and radiation therapy.

2.    Plaintiffs filed this lawsuit on September 14, 2001,  against various defendants, for Mr.

    Freiberg's exposure to asbestos containing products that occurred in Colorado.



PLAINTIFF'S EXHIBIT B

1

3.  Since Mr. Freiberg is living, but his prognosis is poor, his lawsuit could have been expedited for trial setting on the asbestos trial docket in five months. This case was removed before his case could be set for an expedited trial.

4.  This removal is alleged based upon the doctrines of federal question, specifically federal enclave.

5.  Contrary to 28 U.S.C. §1446, and contrary to its representations to this court, removing defendant did not obtain the consent of all the defendants to the removal of this action from state court to federal court. Specifically, Removing Defendant failed to obtain the consent of Rapid American. Defendant asserts that "upon information and belief" that Rapid American has filed bankruptcy. In fact Rapid American has NOT filed bankruptcy, which a minimal internet search would reveal.

6.  Since all Defendants have not consented to the removal, pursuant to 28 U.S.C. §, this court is without "federal enclave" removal jurisdiction. Consent of all defendants and unanimity is required.

WHEREFORE, Plaintiffs move the Court for an Order remanding this case to the District Court, Boulder County (Twentieth Judicial District), Colorado.

## MEMORANDUM OF LAW

## I. INTRODUCTION

Under the general removal statute, defendants may remove any case of which the district courts have jurisdiction. 28 U.S.C. §1441(a). Removal statutes are strictly construed against removal. Shamrock Oil Gas Corp. v. Sheets, 313 U.S. 100 (1941); In re Bethesda Memorial Hospital, Inc., 123 F.3d 1407, 1411 (11th Cir. 1997); Mulcahey v. Columbia Organic Chem. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994). The removing party has the burden of establishing federal

2

jurisdiction and the case should be remanded if federal jurisdiction is doubtful. _Id._

This case should be remanded because Removing Defendant's Notice of Removal is defective because all defendants have not consented to removal which is fatal federal enclave jurisdiction. Further there is no subject matter jurisdiction under 28 U.S.C. § 1442 (a)(1) ("Federal Officer Removal Statute") because Removing Defendant fails to meet the test enunciated in Mesa v. California, 489 U.S. 121 (1989).

## II. ALL DEFENDANTS HAVE NOT CONSENTED TO REMOVAL

In cases removed under 28 U.S.C. § 1441, all defendants must consent to removal. Doe v. Kerwood, 969 F.2d 165, 167 (5th Cir. 1992); United Plumbing & Heating Co., Inc. v. Lewis, 113 F.Supp.2d 1041, 1042 (S.D. Miss. 2000). While the issue usually arises in diversity cases, "the requirement that defendants unanimously join in a removal petition extends to federal question cases" such as this one. Spillers v. Tillman, 959 F.Supp. 364, 369 (S.D. Miss. 1997). Each defendant "must communicate his consent to the court by way of an official filing or voicing of consent", Id. (citations omitted); and such consents must be filed no later than thirty days from the receipt of information from which it can first be ascertained that the case was removable. See Hines v. AC&S, Inc., 128 F.Supp.2d 1003, 1009 (N.D. Tex. 2001).

Removing Defendant's failure to obtain consent from all other defendants, or to explain why that consent is not necessary, renders their notice of removal "inadequate as a matter of law." See Egle Nursing Home, Inc. v. Erie Ins. Group, 981 F.Supp. 932, 936 (D. Md. 1997). Rapid American has not consented, and no consent has been filed by or on behalf of Rio Grande.

## III. NO FEDERAL JURISDICTION

Even if the Notice of Removal were not procedurally defective, Removing Defendant has not demonstrated a sound basis for the exercise of federal jurisdiction. This case involves

3

personal injury claims under State law. This case does not "arise under" federal law and does not belong in federal court.

At the outset, it should be emphasized that defendants have the burden of establishing federal jurisdiction. Willy v. Coastal Corp., 855 F.2d 1160, 1164 (5th Cir. 1988). Removing Defendant must prove that this case "arises under" federal law. It is not sufficient that some federal issue might be involved in the case. An incidental or collateral federal issue "is not enough to deprive the state court of jurisdiction upon petition for removal by the defendant." Armstrong v. Alliance Trust Co., 126 F.2d 164, 167 (5th Cir. 1942); see also Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 807 (1986) ("Although the constitutional meaning of 'arising under' may extend to all cases in which a federal question is 'an ingredient' of the action, we have long construed the statutory grant of federal-question jurisdiction as conferring a more limited power").

As Justice Cardozo explained in Gully v. First National Bank in Meridian, 299 U.S. 109 (1936), "[t]o bring a case within [section 1331], a right or immunity created by the Constitution or the laws of the United States must be an element and an essential one, of the plaintiff's cause of action." Id. at 112. The federal right "must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they received another." Id. In frequently quoted language, Justice Cardozo observed:

> What is needed is something of that common sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of problems of causation. One could carry the search for causes backward, almost without end. . . . Instead, there has been a selective process which picks the substantial causes out of the web and lays the others aside. As in problems of causation, so here in the search for the underlying law. If we follow the ascent far enough, countless claims of right can be discovered to have their source in the operative limits in the provisions of a federal statute or in the Constitution itself . .
> . .

4

Id. at 100.

Justice Cardozo's observation is remarkably prescient in the context of a modern toxic tort case. Cases involving toxic substances frequently involve multiple exposures, many of which may fortuitously occur in post offices, military bases or national parks. It simply defies common sense to extend federal jurisdiction to every tobacco case in which a plaintiff smoked a cigarette in a national park, or every DES case in which a plaintiff took the medication while stationed on an Army base. It is equally nonsensical to assert federal jurisdiction over this case because of Mr. Freiberg's exposure to asbestos containing products on federal property. Mr. Freiberg's asbestos exposure is no different from that of many other asbestos disease victims. He was exposed to the same products, used in the same way and for the same purposes as those identical products were used in any other commercial or industrial construction.

There is, to say the least, doubt about whether the Plaintiffs' state law claims can be deemed to "arise under" federal law. Plaintiffs have pled causes of action that arise exclusively under State law. Federal law is not an element. Removing Defendant asks this court to assert jurisdiction because Mr. Freiberg may have suffered a portion of his exposure to privately manufactured asbestos containing products. This claim in this case arises under State law and should be resolved in the State court system.

## IV.  THERE IS NO FEDERAL ENCLAVE JURISDICTION BECAUSE THERE IS NO UNANIMOUS CONSENT

Even if unanimous consent was not required, Removing Defendant's argument for federal enclave jurisdiction is based on outdated and overruled precedent and is otherwise inconsistent with "arising under" jurisdiction.

Defendant cites as authority for Federal Enclave jurisdiction, Akin v. Ashland Chemical

Co., 156 F.3d 1030 (10th Cir. 1998). Akin contains virtually no analysis of federal enclave

jurisdiction and it appears in Akin that the plaintiff in that case did not dispute federal enclave

jurisdiction. Akin relied totally on the reasoning of the 5th Circuit case of Mater v. Holley, 200

F.2d 123 (5th Cir. 1952).

Consequently, the Defendants' removal, based on "Federal Enclave Jurisdiction," is based

on the reasoning from one 1952 Fifth Circuit case, Mater v. Holley. In an attempt to "federalize"

Plaintiffs' private tort actions founded upon state tort law, Defendants claim that they are entitled

to federal court jurisdiction because Plaintiff suffered a portion of his injurious exposures at a

"Federal Enclave", thus making his cause of action "arises under" federal law. However, the

Fifth Circuit's reasoning in Mater is inconsistent with subsequent Supreme Court decisions

construing the meaning of "arising under" jurisdiction in regard to Federal Enclaves. Therefore,

based on the principles of stare decisis, Defendants' argument is based on legal reasoning that is

no longer controlling, and should therefore not be followed. The Tenth Circuit's Akin opinion

did not consider controlling Supreme Court precedent in cases decided after Mater.

Given that subsequent Supreme Court precedent has overruled the reasoning in Mater,

federal question jurisdiction in this case should be analyzed in terms of current legal precedent

concerning "arising under" jurisdiction. When such Supreme Court and other Federal Circuit

Court precedent is applied to the facts of this case, it is clear that this case does not "arise under"

the Constitution or laws of the United States. The primary issues in this case are solely state-law

created. Following the Fifth Circuit's direction to use "common sense judgment" in deciding

what constitutes "arising under" jurisdiction, we simply point this Court to facts of this case:

Plaintiffs have pled causes of action created solely by the State common law and by the State

Legislature; Plaintiffs have requested the state courts to adjudicate these claims; Plaintiffs' "well

6

pleaded complaint" does not invoke, rely on, or even mention federal law; Plaintiffs' claims will

not be supported or defeated based on any construction of the Constitution or laws of the United

States; and Defendants ask this court to exercise jurisdiction over Plaintiffs because Plaintiffs

suffered a portion of their injurious exposure while working at a Federal Enclave.  Common

sense, coupled with Supreme Court and other precedent concerning "arising under" jurisdiction,

clearly vest jurisdiction of this case with the courts of this state.

### A.    Defendants' Basis for Removal Jurisdiction.

Defendants base removal jurisdiction upon 28 U.S.C. 1441(b), which states in pertinent part

"[a]ny civil action of which the district courts have original jurisdiction founded on a claim or

right arising under the Constitution, treaties or laws of the United States shall be removable

without regard to the citizenship or residence of the Parties." 28 U.S.C. 1441(b).  Defendants

claim that the district court has removal jurisdiction because this Court would have had original

jurisdiction under 28 U.S.C 1331 which grants the district courts "original jurisdiction of all civil

actions arising under the Constitution, law or treaties of the United States." 28 U.S.C. 1331.

Defendants claim that this Court has original jurisdiction here because plaintiffs joined in this

case suffered a portion of their exposure to asbestos containing products manufactured by the

defendants while working at a "Federal Enclave."  The basis for Federal Enclave Jurisdiction

comes from Article I, Section 8, Clause 17 of the Constitution of the United States of America

(the "Exclusive Legislation Clause") which reads in pertinent part:

> The Congress has the Power to exercise exclusive legislation in all cases
> whatsoever. . . over all Places purchased by the Consent of the Legislature of the
> State in which the same shall be, for the Erection of Forts, Magazines, Arsenal,
> dock-yards, and other needful buildings . . . .

U.S. Const. Art. I, Section 8, cl. 17.

7

**B.**     **Defendant's Argument for Federal Enclave Jurisdiction is Grounded in Outdated and Overruled Legal Reasoning.**

In their Notice of Removal, Defendant bases the claim of Federal Enclave Jurisdiction entirely on authority from three cases.  See Akin v. Ashland Chemical Co., 156 F.3d 1030, 1034 n.1 (10th Cir. 1998); Akin v. Big Three Industries, Inc., 851 F. Supp. 819, 820-21 (E.D. Texas 1994); Reed v. Fina Oil & Chem. Co., 995 F. Supp. 705, 713 (E.D. Tex. 1998).1  A careful reading of these cases reveals that the single controlling precedent relied on in each case for Federal Enclave Jurisdiction over a personal injury claim based solely on a state law cause of action is the 1952 Fifth Circuit case of Mater v. Holley.  200 F.2d 123 (5th Cir. 1952). Therefore, the Defendant's entire argument for Federal Enclave Jurisdiction in this case relies solely on the continuing validity of the Fifth Circuit's reasoning in Mater.

*1. Defendant's Argument is Based Entirely on Fifth Circuit Reasoning that is No Longer Controlling Pursuant to Subsequent Supreme Court Decisions*

Defendants rely solely on the reasoning set forth in Mater for their contention that a personal injury tort action that "arises" on a federal enclave "arises under" federal law and is, therefore, removable.  Initially, Plaintiffs acknowledge that this Court is bound by the precedent of its superior courts, In re Ambassador Park Hotel, Ltd., 61 B.R. 792 (N.D. Tex. 1986); however, the decisions of the Fifth Circuit are not controlling when the Circuit Court opinion is logically incompatible with subsequent United States Supreme Court decisions.  See e.g., Gresham Park Community Org. v. Howell, 652 F.2d 1227, 1234-1236 (5th Cir. 1981) (prior Fifth Circuit decision found to be overruled sub silentio by subsequent Supreme Court decisions which were logically inconsistent with a prior Fifth Circuit decision); United States v. La Sorsa, 480 F.2d 522 (2d Cir. 1973) (Fifty year old circuit case based on principles since repudiated by the Supreme Court held not to be controlling under the stare decisis principle); Ore & Chemical

8

Corp. v. Stinnes Interoil, Inc., 606 F. Supp. 1510, 1512-1513 (S.D.N.Y. 1985) (District Court would not follow prior decision of its Circuit Court construing Federal Arbitration Act that was contrary to more recent Supreme Court pronouncements on the scope of the Act).

Applying these two principles of stare decisis, Mater is no longer authoritative precedent because United States Supreme Court decisions rendered subsequent to Mater have repudiated the "State within a State" fiction upon which the reasoning in Mater is based. In addition, because all of the cases upon which the Defendants rely are directly based on the reasoning set forth in Mater, these cases are therefore not persuasive authority.

## 2. *Mater v. Holley* Created the "State Within a State Fiction" based on Supreme Court Precedent that has Since Been Overruled

Mater was a personal injury case that arose from allegations of negligence occurring entirely within the confines of Fort McPherson, Georgia, a Federal Enclave as contemplated under the provisions of Article I, Section 8, Clause 17 of the Untied States Constitution. Id. The familiar issue in Mater was whether or not the plaintiff's cause of action "arose under" the Constitution or laws of the United States in order to give the Federal District Court original jurisdiction to hear the case. See Id. at 124. In rendering its decision, the Court naturally looked to the controlling precedent of the day. The Mater Court combined two principles announced in previous Supreme Court cases to create what has been referred to as the "State within a State Fiction." The first general principle was the "International Law Theory," and the second was the principle that the United States acquires exclusive jurisdiction over lands acquired pursuant to the Exclusive Legislation Clause.

The Mater Court explained the International Law Theory as follows:

> [W]hen legislative power over territory is transferred from one sovereign to another, then the existing laws of the surrendering sovereign for the protection of

9

private rights, so far as consistent with the laws of the new sovereign, continue in force until abrogated or altered by the new sovereign.

Mater, 200 F.2d at 124 (citing Chicago, Rock Island & Pacific Ry. Co. v. McGlinn, 114 U.S. 542 (1885)).  The Mater Court acknowledged that this theory was developed to ensure that private rights were protected by the laws of the foreign sovereign in place at the time of cession to the United States until the United States Government had a chance to legislate in these newly acquired lands.  Id.  The Supreme Court had also applied this theory to lands acquired by the United States pursuant to the Exclusive Legislation Clause in order to ensure that people's rights within these lands continued to be protected by the existing laws of the ceding state.  See Id.  The difference in this latter situation, however, is that the Constitution of the United States contemplates a system of dual sovereignty while no such relationship exists when land is acquired from a foreign sovereign.  The Mater Court did not make this distinction in making its decision.  Rather than limiting its application of the International Law Theory to simply protecting existing rights with existing laws, the Mater Court applied it in the same manner as if the land, acquired pursuant to the Exclusive Legislation Clause, had been acquired from a foreign sovereign.  Id. at 124-25.  The Mater Court explained this reasoning by using the example of Spain's cession of State to the United States.  Id. (citing American Ins. Co. v. Canter, 542 U.S. 511.)  It reasoned that upon that cession, the United States gained exclusive sovereignty over State, and Spain's sovereignty was extinguished.  Id.  The Mater Court then applied this analysis directly to the situation where the Untied States acquires land pursuant to the Exclusive Legislation Clause, and concluded that the ceding state's sovereignty was similarly extinguished upon cession.  Id. at 124.  The obvious flaw in this application of Supreme Court precedent is that the Mater Court did not consider the constitutionally established doctrine of dual sovereignty in its decision.

10

The <u>Mater</u> Court also relied heavily on the Supreme Court case of <u>Surplus Trading Co. v. Cook</u>, 281 U.S. 647 (1930) in its application of the principle that the United States acquires exclusive jurisdiction over lands acquired pursuant to the Exclusive Legislation Clause.  In <u>Cook</u>, the Supreme Court was asked to decide whether or not a state could tax personal property located within the confines of Camp Pike, a United States Army mobilization, training and supply station.  <u>Cook</u>, 281 U.S. at 649.  In deciding this case, the Supreme Court concluded that when lands pass from a state to the United States pursuant to the Exclusive Legislation Clause, then "the jurisdiction theretofore residing in the state passes, by virtue of the constitutional provision, to the United States, thereby making the jurisdiction of the latter the sole jurisdiction." <u>Id.</u> at 652.

The <u>Mater</u> Court read these two general principles together to mean that when the United States acquires land pursuant to the Exclusive Legislation Clause, then the United States becomes the sole sovereign with respect to that land, and the ceding state's sovereignty ceases to exist.  <u>Mater</u>, 200 F.2d at 124.  This decision gave rise to the "State within a State Fiction" that the <u>Mater</u> Court described as follows:

> It seems indubitable that any law existing in territory over which the United States has exclusive sovereignty must derive its authority and force from the United States and is for that reason federal law, even though having its origin in the law of the state within the exterior boundaries of which the federal area is situate.

<u>Id.</u>

Therefore, federal jurisdiction based upon <u>Mater</u>'s State within a State Fiction depends on the following logic chain: 1) under the International Law Theory, a state's existing law remains authoritative in lands that pass to the United States under the Exclusive Legislation Clause to the extent that they are not inconsistent with the laws of the United States; 2) under the International

11

Law Theory and the Exclusive Legislation Clause, all state sovereignty is extinguished, and the United States becomes the sole sovereign; 3) if the United States is the sole sovereign over such lands, then any governing law, including previous state law remaining in tact after the cession, takes on the character of federal law; 4) therefore, because all law governing such lands is federal law, then any cause of action that "arises on" such land must necessarily "arise under" federal law, even if the cause of action is based completely on state law.  This logic simply can not stand in light of a Supreme Court decision handed down shortly after <u>Mater</u> that abolished the State within in a State Fiction, and thereby freed this Court from the legal reasoning in <u>Mater</u> by recognizing that the doctrine of dual sovereignty applies to Federal Enclaves.

### 3. The Supreme Court Abolished the State Within a State Fiction Handed Down in <u>Mater</u>

Just Months after the Fifth Circuit handed down its decision in <u>Mater</u>, the Supreme Court handed down a decision that abolished <u>Mater</u>'s State within a State Fiction.  See <u>Howard v. Commissioners of Sinking Fund Of City of Louisville</u>, 344 U.S. 624, 627 (1953).  One of the primary issues before the Court in <u>Howard</u> was, considering the Exclusive Legislation Clause, whether or not the City of Louisville could annex federally owned land on which a Naval Ordnance was located.  <u>Id.</u> at 625.  The Supreme Court held that the annexation was proper, and reasoned as follows:

> The fiction of a state within a state can have no validity to prevent a state from exercising its power over the federal area within its boundaries, so long as there is no interference with the jurisdiction asserted by the Federal Government.  The sovereign rights in this dual relationship are not antagonistic.  Accommodation and cooperation are their aim.

<u>Id.</u> at 627.  With this decision, the Supreme Court recognized that the doctrine of dual sovereignty applied within the confines of a Federal Enclave.  The Supreme Court's plain language instructs that states are free to exercise their full power over Federal Enclaves within

12

their boundaries, so long as it does nothing to interfere with the United States' use of these enclaves. See Id.,

Therefore, because the Supreme Court recognized that the doctrine of dual sovereignty applies to Federal Enclaves, and the United States is in fact not the sole sovereign therein, the Mater Court's logic chain, and the Defendants' argument for "arising under" jurisdiction in this case, is broken. The Mater logic chain above depends on sole federal sovereignty over Federal Enclaves. However, as the Howard decision clarifies, dual, and not sole, sovereignty is the rule. Therefore, because Federal Enclaves clearly are subject to two sovereigns, it becomes illogical to assume that all causes of action that "arise on" a Federal Enclave necessarily must always "arise under" the laws of one, and not the other sovereign. The very language that the Supreme Court used can say it no better: "The sovereign rights in this dual relationship are not antagonistic. Accommodation and cooperation are their aim." Id. Therefore, because the Defendants' argument for "arising under" jurisdiction is grounded on outdated and overruled legal reasoning, the question becomes how to determine which sovereign should be entrusted to determine cases that arise in this system of dual sovereignty?

C.    **Supreme Court Precedent Clearly Place this Case in the State Court System**

With Mater's State within a State Fiction disposed of, current Supreme Court and Fifth Circuit precedent determines what makes a cause of action "arise under" the Constitution or laws of the United States in order to vest original jurisdiction within the federal courts. When these principles are applied to this case, it becomes clear that this case is not one that "arises under" the Constitution or the laws of the United States, but under state law, and should therefore be decided in the state court in which this case was originally filed.

*1. Any Analysis of "Arising Under" Jurisdiction Must Begin With the "Well Pleaded Complaint" Rule*

The Supreme Court has firmly and repeatedly followed the "well-pleaded complaint" rule in construing the statutory grant of "arising under" jurisdiction.  Under this rule, whether a claim "arises under" federal law must be determined by reference to the "well-pleaded complaint." Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 808 (1986), (citing Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California. 463 U.S. 1, 9-10 (1983)).  "In cases removed to federal court, the plaintiff's well-pleaded complaint, not the removal petition, must establish that the case arises under federal law." Willy, 855 F.2d at 1165 (citing Merrell Dow, 106 S.Ct. at 3232; Franchise Tax Board, 103 S.Ct. at 2847)  "A defense that raises a federal question is inadequate to confer federal jurisdiction[,]", Merrell Dow, 478 U.S. at 808; moreover, federal question jurisdiction does not exist because of a federal defense "even if the plaintiff anticipates and pleads the federal issue in his complaint." Id. (citing Franchise Tax Board, 463 U.S. at 11 (1983); Gully v. First National Bank at Meridian, 299 U.S. 109 (1936)).  To determine whether the "well-pleaded" complaint states a claim arising under federal law, the court looks "only [to] those allegations necessary to state a claim." Willy, 855 F.2d at 1165.

Justice Oliver Wendell Holmes' corollary of the well-pleaded complaint rule is that "the party who brings a suit is master to decide what law he will rely upon, and therefore does determine whether he will bring a 'suit arising under' the patent or other law of the United States by his declaration or bill." The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25 (1913).  The concept of plaintiff as master of his claim is particularly significant when jurisdiction is based on removal, as in this case.  If the plaintiff has the choice of state or federal theories, original

"arising under" jurisdiction only exists if he chooses to include the federal theory in his complaint; therefore, if the plaintiff chooses to only proceed on the state ground, the case is not removable. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987); Pan American P. Corp. v. Superior Court, 366 U.S. 656, 663 (1961). In this case, Plaintiffs have not pleaded for recovery under any federal statutes; therefore, Plaintiffs' "well-pleaded complaint" does not "arise under" the laws of the United States.

2.       A Cause of Action "Arises Under" the Law that Dominates the Issues in the Case

The most basic test for "arising under" jurisdiction was espoused by Justice Holmes over 85 years ago: "A suit arises under the law that creates the cause of action." American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916). This test was reaffirmed by the Supreme Court in Merrell Dow Pharmaceuticals Inc. v. Thompson saying that "the 'vast majority' of cases that come within [federal question] jurisdiction are covered" by Justice Holmes' test. 478 U.S. 804, 808 (1986). Perhaps Justice Cardozo crafted the most descriptive test of "arising under" jurisdiction in Gully v. First National Bank in Meridian:

> To bring a case within [section 1331], a right or immunity created by the Constitution or the laws of the United States must be an element and an essential one, of the plaintiff's cause of action. . . . The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they received another.

299 U.S. 109, 112 (1936). The Supreme Court in Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California also reaffirmed this test. 463 U.S. 1, 11 (1983). In addition, the Fifth Circuit has adopted a "common-sense," interest-balancing approach for analyzing "arising under" jurisdiction. See Willy v. Coastal Corp., 855 F.2d 1160, 1169-71 (5th Cir. 1988). In Willy, the Fifth Circuit relied heavily on Merrell Dow, Franchise Tax Board, Gully, and both the Holmes and Cardozo tests. Id. In

15

formulating this approach, the Fifth Circuit quoted Justice Cardozo extensively:

> What is needed is something of that common sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of problems of causation. One could carry the search for causes backward, almost without end. . . . Instead, there has been a selective process which picks the substantial causes out of the web and lays the others aside. As in problems of causation, so here in the search for the underlying law. If we follow the ascent far enough, countless claims of right can be discovered to have their source in the operative limits in the provisions of a federal statute or in the Constitution itself with its circumambient restrictions upon legislative power. To set bounds to the dispute, the courts have formulated the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible. We shall be lost in a maze if we put that compass by.

Id. at 1169 (quoting Gully, 57 S.Ct. at 100).

In the recent cases of Merrell Dow, Franchise Tax Board, and Willy, the central issue in each case, as here, was whether or not the plaintiff's state law created cause of action "arose under" the Constitution or laws of the United States. In Merrell Dow, the plaintiffs brought state law created causes of action for negligence, breach of warranty, strict liability, fraud, and gross negligence. Merrell Dow, 478 U.S. at 805. The plaintiffs also included in their petition the allegation that because the defendant also violated the Federal Food, Drug, and Cosmetic Act (FDCA) by misbranding the drug, this constituted a rebuttable presumption of negligence. See Id. The Supreme Court ultimately held that because the FDCA carried no private right to a cause of action for its violation, this was "tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." Id. at 814. In this decision, the Supreme Court followed Justice Cardozo's advice by making the distinction between a claim that was "necessary and [one] that was merely possible" and left the state law issues to the state courts to decide. Id. (quoting Gully, 299 U.S. at 115). The Supreme Court explained this reasoning by

16

citing previous Supreme Court precedent that evaluated the importance of the federal issue involved.  See Id. at 815 (quoting Shulthis v. McDougal, 225 U.S. 561, 569-70 (1912).)  The Supreme Court recognized that when state law issues predominate the issue of the case, then the case should be heard in the state court system.  See Id.

In Franchise Tax Board, the issue before the court was whether or not the Employment Retirement Income Security Act of 1974 (ERISA) "permits state tax authorities to collect unpaid state income taxes by levying on funds held in trust for the taxpayers under and ERISA-covered vacation benefit plan."  Franchise Tax Board, 463 U.S. at 4.  In this case, the plaintiff claimed that state law allowed it to levy and collect a tax from money held in trust from this benefit plan. See Id.  The Supreme Court fully recognized that this was an important issue that would effect thousands of federally regulated trusts.  See Id.  However, the Supreme Court held that "even though the Court of Appeals may well be correct that ERISA precludes enforcement of the State's levy . . . an action to enforce the levy is not itself preempted by ERISA", and therefore does not "arise under" federal law.  Id. 26.  The Supreme Court, relying extensively on the "well-pleaded complaint rule," reasoned that "there are many reasons completely unrelated to the provisions of ERISA why the State may or may not be entitled to the relief it seeks."2 Id.  This decision exemplifies the Supreme Court's decision to honor the "well-pleaded complaint" rule, and allow state courts to determine state law issues as pled by the plaintiff.  In other words, a defense that is federal in nature will not force a claim to "arise under" the Constitution or federal law, even if that federal defense eventually might prevail.

In Willy, the plaintiff brought a common law wrongful discharge claim.  Willy, 855 F. 2d at 1162.  The plaintiff in Willy alleged that he was fired because he would not violate various federal statutes.  See Id. at 1163.  The defendants then removed the action to federal court

17

claiming that there was federal question jurisdiction because the plaintiff claimed he was fired

for failing to violate federal statutes, and thus the federal statutes formed an essential element of

his complaint. See Id. The Fifth Circuit, relying heavily on <u>Merrell Dow</u>, <u>Franchise Tax Board</u>,

<u>Gully</u> and the Holmes and Cardozo tests, concluded that "the federal issues in [the plaintiff's]

claim [were] not ones in the forefront of the case, but [were] more collateral in nature, and

[were] not substantial in relation to the claim as a whole, which [was] in essence one under state

law." Id. at 1171. The Fifth Circuit reasoned that the primary issues in the case were "deeply

rooted in local interest," and should therefore be decided at the local, not federal, level. Id. The

Fifth Circuit's decision in <u>Willy</u> merely echoes Supreme Court precedent that even if a federal

issue could possibly come up at some point in a case, if it does not dominate the issues in the

case, then the state court system is the proper venue for deciding the case.

When the above Supreme Court and Fifth Circuit precedent are applied to the facts of this

case, it is clear that state law issues dominate this case, and federal issues, if any, are merely

collateral and are in no way substantial enough to confer original jurisdiction upon this Court.

3.     *State Law Issues Dominate the Plaintiff's Causes of Action Making them "Arise Under"*
*State Law*

In the case at bar, it is clear that State tort law creates the Plaintiffs' causes of action. All

Plaintiffs' causes of action have been brought pursuant to product liability, negligence, personal

injury actions, among others, all of which are created and properly joined under the laws of this

State. See Plaintiffs' Amended Complaint.

Applying the Holmes test, because State law creates and properly joins all Plaintiffs'

causes of action, the case "arises under" State law, and therefore should be heard by a State

court. In addition, applying the Cardozo test makes it clear that the rights sought to be

18

vindicated by the plaintiffs are rights that are supported or defeated based solely on the construction of State Law. The Defendants' plea for federal jurisdiction in this case is the antithesis of Justice Cardozo's, and the Fifth Circuit's, direction to use a common sense, issue balancing approach in determining whether or not to make a federal case out of a dispute. Federal law is not an element of any cause of action of any Plaintiff in this case, much less an essential or dominant element. Defendants ask this court to assert jurisdiction over a case that is comprised solely of state law causes of action because Plaintiffs had a portion of their exposure to asbestos containing products at alleged Federal Enclaves.

4.      *There are no federal defendants in the case, and federal law neither creates the Plaintiffs' causes of action nor provides a remedy.*

Defendants cannot show this Court any pleading or other paper that seeks to invoke federal law; to the contrary, Plaintiffs plainly rely solely on state tort law in bringing their causes of action. Plain common sense dictates that this case be decided in a state court. Therefore, applying the Holmes and Cardozo tests, the two leading tests for "arising under" jurisdiction, it is clear that this case arises under State law and should be disposed of in the State court system.

The Supreme Court's reasoning in <u>Merrell Dow</u> also points to state, not federal, jurisdiction in this case. In <u>Merrell Dow</u>, the Supreme Court reasoned that because Congress did not provide a remedy for a violation of the FDCA, Congress must have considered "a violation of the statue as an element of a state cause of action [to be] insufficiently 'substantial' to confer federal question jurisdiction." <u>Merrell Dow</u>, 478 U.S. at 814. In the case at bar, it is not disputed that Congress has the power to govern Federal Enclaves through legislation. Although it clearly could have, Congress has not enacted legislation that would vest federal courts with original jurisdiction over personal injury claims arising from construction activities occurring on Federal

19

Enclaves. As the Supreme Court reasoned in <u>Merrell Dow</u>, Congress' failure to legislate in this area is "tantamount to a congressional conclusion that [personal injuries that arise on a Federal Enclave] are insufficiently substantial to confer federal-question jurisdiction." <u>Id.</u> at 813.

Finally, applying the Fifth Circuit's reasoning in <u>Willy</u>, the issues presented in this case are "deeply rooted in local interest." Plaintiffs have called on State tort law alone to vindicate their personal injury claims. They have asked the State courts to adjudicate claims that are created and properly joined under laws created solely by the State Legislature. Defendant's claim that the Exclusive Legislation provision of the Constitution gives them the right to have these purely State law issues adjudicated in the federal courts. This is simply inconsistent with the Fifth Circuit's decision in <u>Willy</u>. Assuming, arguendo, that there are some federal issues involved in this case, it is clear that any such federal issues in the Plaintiffs' claims "are not ones in the forefront of the case, but are more collateral in nature, and are not substantial in relation to the claim as a whole, which is in essence one under state law." <u>Willy</u>, 855 F.2d at 1171. The primary legal issues involved in this case involve regulating the manufacturers and users of dangerous products and compensating the people harmed by those products. The State's tort system is an important part of that system of regulation.

It is important to note that the State is not attempting to use its tort system to directly or indirectly regulate Federal Enclaves. Therefore, any entanglement between the State tort system and any Federal Enclave, will be, at most, collateral and not a controlling issue in the case. In fact, it stretches the imagination to even come up with a single significant impact that this case could have on any Federal Enclave. To the best of the Plaintiffs' knowledge, the Federal Enclaves mentioned in Defendants' notice of removal are not even aware of this case and have no interest in its outcome. Therefore, because state law issues are the only significant issues

presented in this case, a state court should decide them.

## D.    CONCLUSION

Defendant's claim that this court has removal jurisdiction to hear this case is based entirely on the <u>Mater</u> Court's creation of the State within a State Fiction for Federal Enclaves. The lynchpin of this fiction is the assumption that the United States is the sole sovereign over these Federal Enclaves.  The Supreme Court's decision in <u>Howard</u> abolished this fiction and recognized that the doctrine of dual sovereignty fully applied within Federal Enclaves.  This decision effectively overruled <u>Mater</u>, and thereby freed this court from its reasoning.  With the <u>Mater</u> reasoning on "arising under" jurisdiction set aside, this court should look to current Supreme Court and Federal Circuit precedent to determine whether or not this case presents a federal question.

Beginning with the Plaintiffs' "well pleaded complaint," it is clear that Plaintiffs rely solely on state law to bring their causes of action.  They do not invoke federal law in any element of any cause of action, nor do they seek a federal remedy.  In addition, Plaintiffs' causes of action do not depend in any way on the construction of the Constitution or any federal law.  To the contrary, Plaintiffs' causes of action depend only on the construction and application of State substantive and procedural law to the facts of this case.  Finally, if a federal issue can be found in the remote regions of this case, the facts of this case make it clear that the state law issues here dominate this case.  Defendants' factual recitations in its notice of removal bear this out. Defendants' claim that they are entitled to have this Court decide this case entirely because Plaintiffs suffered a portion of their exposure to the asbestos containing products at a Federal Enclave.  These facts simply do not create substantial federal issues sufficient to vest original jurisdiction within the federal courts.

21

07/18/02                              Trine & Metcalf, P.C.
                                      Attorneys for Plaintiffs

                                      J. Conard Metcalf, 2489
                                      1435 Arapahoe Ave.
                                      Boulder, CO 80302
                                      (303) 442-0173

22

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing PLAINTIFFS' MOTION TO REMAND AND MEMORANDUM OF LAW IN SUPPORT (Re:  Defendant Camfil Farr, Inc. Removal) was served upon the following, via U.S. Mail, postage pre-paid, on this 18th day of July, 2002:

James Miletich, Esq.
Long & Jaudon,
*Attorneys for Rio Grande*
1600 Ogden Street
Denver, CO  80218-1414
(303) 832-1122
FAX: (303) 832-1348

Bradley Levin, Esq.
Roberts, Levin & Patterson, P.C.
*Attorneys for Georgia Pacific*
1660 Wynkoop, Suite 800
Denver, CO  80202
(303) 575-9390
FAX: (303) 575-9385

Shauna Hilgers, Esq.
Law Office of Shauna Hilgers
*Attorneys for Flintkote*
P.O. Box1254
Arvada, CO  80001
(303) 431-5037
FAX: (303) 431-5037

Mary Price Birk, Esq.
Ronald L. Hellbush, Esq.
Baker & Hostetler, LLP
*Attorneys for Union Carbide*
303 17th Avenue, #1100
Denver, CO  80203
(303) 861-0600
FAX: (303) 861-7805

David Fowler, Esq.
Brian Widmann, Esq.
Fowler, Schimberg & Flanagan, P.C.
*Attorneys for Swinerton & Walberg*
1640 Grant St., #300Denver, CO  80203
(303) 298-8603
FAX: (303) 298-8748

Steven M. Kaufmann, Esq.
Brian Hoffman, Esq.
Morrison & Foerster, LLP
*Attorneys for ABB Lummus Global, Inc.*
370 17th Street, Suite 5200
Denver, CO  80202
(303) 592-1500
FAX: (303) 592-1510

Gary M. Clexton, Esq.
King, Clexton & Feola, LLC
*Attorneys for John Crane*
1670 York Street
Denver, CO  80202
(303) 298-9878
FAX: (303) 298-9879

Christopher K. Miller, Esq.
Kennedy & Christopher, P.C.
*Attorneys for Flanders Filters, Inc.*
1050 Seventeenth Street, Suite 2500
Denver, CO  80265
(303) 825-2700
FAX: (303) 825-0434

23

David M. Setter, Esq.
Kathryn M. Epperson, Esq.
Socha, Perczak & Anderson, P.C.
*Attorneys for Camfil Farr, Inc.*
1775 Serman Street, Suite 1925
Denver, CO  80203
(303) 832-7265
FAX:  (303)832-7438

Nancy Jane Adler

FREIBERG

24

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 02-K-1272

KENNETH FREIBERG and
MARY SUE FREIBERG,

Plaintiffs,

v.

SWINTERTON & WALBERG PROPERTY
SERVICES, INC., et al.,

Defendants.

---

## DEFENDANT CAMFIL FARR, INC.'S RESPONSE TO
## PLAINTIFFS' MOTION TO REMAND

---

Defendant Camfil Farr, Inc. ("Defendant Camfil Farr"), respectfully responds to Plaintiffs Kenneth and Mary Sue Freiberg's Motion to Remand this case to the State of Colorado District Court, County of Boulder.   Kenneth Freiberg's alleged exposure to asbestos dust occurred at Rocky Flats, which is a federal enclave.   This case has been properly removed to federal court by a federal officer, Co-defendant Swinerton & Walberg Property Services, Inc. ("Defendant Swinterton").   Because this case arises out of activity on a federal enclave and is properly before this Court based on federal officer jurisdiction, this case should not be remanded.



PLAINTIFF'S EXHIBIT
C
PENGAD-Bayonne, N.J.

## I.     FEDERAL OFFICER SWINTERTON HAS PROPERLY REMOVED CASE.

1.     On July 5, 2002, Defendant Swinerton properly removed this case to federal court, pursuant to 28 U.S.C. § 1442(a)(1), because it is a federal officer and contracted directly with the Federal Government to construct buildings at Rocky Flats.  (*See* Defendant Swinerton Builders' Notice of Removal).

2.     Defendant Swinerton's Notice of Removal meets all required elements of federal officer removal and this case is properly before this Court.  Defendant Camfil Farr hereby adopts and incorporates Defendant Swinerton's Notice of Removal.

## II.    ROCKY FLATS IS A FEDERAL ENCLAVE.

3.     Plaintiffs have purposefully provided little or no information about Mr. Freiberg's employment history.   However, Plaintiffs cannot escape the fact that, upon information and belief, Plaintiff Kenneth Freiberg worked at Rocky Flats for over forty years and claims he was exposed to asbestos while working at Rocky Flats.  (*See* Co-defendant Flintkote Company's Motion to Change Venue attached as Exhibit "A" to Camfil Farr Inc.'s Notice of Removal).

2.     Rocky Flats was a nuclear weapons components plant and was operated in conformity with radioactive effluent standards imposed by the Atomic Energy Commission pursuant to the Atomic Energy Act.  *See Train v. Colorado Public Interest Research Group, Inc.*, 426 U.S. 1, 4, 96 S.Ct. 1938, 1939 (1976).

4.     Plaintiffs do not dispute that Rocky Flats is a federal enclave.   Instead, Plaintiffs argue that their claims do not "arise" out of a federal enclave because they have not

2

pleaded federal claims and Colorado law will govern their personal injury claims. Plaintiffs' arguments are misplaced. It is well settled that personal injury claims arising on federal enclaves are subject to federal question jurisdiction. *See Adams v. Alliant Techsystems, Inc.*, 201 F.Supp.2d 700, 705 (W.D. VA 2002). *See also Stokes v. Adair*, 265 F.2d 662, 665-66 (4th Cir. 1959) (holding that federal district courts have jurisdiction over actions between citizens of the same state for personal injuries arising on federal enclave).

5. Plaintiffs cannot avoid federal jurisdiction by concealing the fact that this case involves Kenneth Freiberg's employment at federal enclave Rocky Flats. Federal law allows for a defendant to remove a case once they can ascertain through a pleading, motion, order, or other paper that the case is removable. *See* 28 U.S.C. § 1446(b).

6. Federal courts are competent to consider state claims and apply state law. *See* 16 U.S.C. § 457 (adopting state laws on a continuing basis for wrongful death and personal injury actions).

III. **REMANDING CASE WILL DEFEAT PURPOSE OF FEDERAL OFFICER JURISDICTION.**

7. The purpose of the provision conferring jurisdiction to federal courts when a federal officer, who has a colorable federal defense to the claims brought in state court, has removed a case is to protect federal officials from civil or criminal liability for the performance of their official duties. *See Florida v. Cohen*, 887 F.2d 1451, 1453 (11th Cir. 1989) (per curiam). Remanding this case back to state court will defeat the purpose of allowing federal officers, like Defendant Swinerton, to remove the case to federal court in the first place.

3

8.     Federal court will also better serve all other defendants in this case.  Plaintiffs' lawsuit involves a federal facility in which nuclear weapons components were manufactured. The federal government, through federal officers, most likely specified the placement and removal of numerous products that Plaintiffs allege contained asbestos.

## IV.   CONSENT ISSUE IS MOOT.

8.     Counsel for Co-defendant Rio Grande Company, Inc., conveyed his consent, through his legal assistant, to Defendant Camfil Farr's removal action on July 3, 2002.  (*See* copy of correspondence attached as Exhibit "A").  However, in a letter dated August 2, 2002, counsel for Rio Grande informed all parties that Rio Grande Company, Inc. does not consent to the removal.  (*See* copy of letter attached as Exhibit "B").  Whether or not co-defendants consented to the federal enclave removal, however, is a non-issue and not one the Court need consider.  This case should not be remanded back to state court based on Defendant Swinerton federal officer removal.

## V.   CONCLUSION.

Based on the foregoing, Plaintiffs' Motion to Remand should be denied.  This case is properly before this Court because Defendant Swinerton is a federal officer and Plaintiffs' claims arise out of activity on a federal enclave.

4

RESPECTFULLY SUBMITTED this 7th day of August, 2002.

SOCHA, PERCZAK & ANDERSON, P.C.

By: *Kathryn M. Epperson*
      David M. Setter
      Kathryn M. Epperson
      Andrew L. Kalish
      Denver Financial Center Tower I
      1775 Sherman Street, Suite 1925
      Denver, Colorado 80203.
      303/832-7265

      *Attorneys for Defendant,*
      *Camfil Farr, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this __7__ day of August, 2002, a copy of the foregoing was mailed to:

J. Conard Metcalf, Esq.
Jeffrey R. Hill, Esq.
Trine & Metcalf, P.C.
1435 Arapahoe Ave.
Boulder, Colorado  80302

James Miletich, Esq.
McConnell, Siderius, Fleischner,
  Houghtaling & Craigmile, LLC
2401 15th Street, Suite 300
Denver, Colorado 80202-1143

David Fowler, Esq.
Fowler Schimberg & Flanagan, P.C.
1640 Grant Street, #300
Denver, Colorado  80203

Steven M. Kaufmann, Esq.
Brian Hoffman, Esq.
Morrison & Forester, LLP
370 17th Street, Suite 5200
Denver, Colorado  80202

Bradley Levin, Esq.
Roberts Levin & Patterson, P.C.
1660 Wynkoop, #800
Denver, Colorado  80202

Shauna Hilgers, Esq.
P.O. Box 1254
Arvada, Colorado  80001

Mary Price Birk, Esq.
Ronald L. Hellbush, Esq.
Baker & Hostetler, LLP
303 17th Ave., #1100
Denver, Colorado  80203

Christopher K. Miller, Esq.
Kennedy & Christopher
1050 17th Street #2500
Denver, Colorado 80202

Gary M. Clexton, Esq.
King Clexton & Feola, LLC
1670 York Street
Denver, Colorado  80202



SOCHA
PERCZAK &
ANDERSON
P.C.
ATTORNEYS AT LAW

Denver Financial Center Tower I
1775 Sherman Street, Suite 1925
Denver, CO 80203

(303) 832-7265
(303) 832-7438 fax

Charles Q. Socha *
Greg L. Perczak
David M. Setter
K. Michele Anderson *
John L. Conklin
Cindy C. Boer
Andrew L. Kalish
Brian C. Petroff
T. Charice Miles **
Kathryn M. Epperson***
Jeanette S. Snodgrass

\* also admitted to California bar
\*\* also admitted to Texas bar
\*\*\* also admitted to Arizona bar

July 3, 2002

VIA FACSIMILE

Ms. Mary Davis
McConnell, Siderius, Fleischner,
  Houghtaling & Craigmile, LLC
2401 15th Street, Suite 300
Denver, Colorado 80202-1143

Re:   Freiberg v. Swinerton & Walberg Services, Inc., et al.
      Boulder District Court, Boulder County, Colorado
      01CV1409

Dear Ms. Davis:

This letter is to confirm our telephone conference this morning in which you stated that Rio Grande Supply's counsel James Miletich consents to our client Camfil Farr's removal of the above-referenced action to federal court. We intend to file an amendment to our Notice of Removal today informing the court that all viable defendants have now consented to the removal action.

Thank you for your attention to this matter.

Very truly yours,

Kathryn M. Epperson
e-mail:  kmepperson@spalegal.com

EXHIBIT
A



# McConnell Siderius Fleischner Houghtaling & Craigmile, LLC

James M. Miletich
Direct Dial: 303.458.9545
E-Mail: jmiletich@msfhc.com

August 2, 2002

To All Counsel of Record

Re:    Freiberg v. Swinerton & Walberg Property Services, et al.
       Boulder District Court Case No. 2001-CV-1409
       U.S. District Court No. 02-M-1272 (OES)

       Vanhooser v. Swinerton & Walberg Property Services, et al.
       Boulder District Court Case No. 2002-CV-767
       U.S. District Court No. 02-K-1290 (OES)

       Soderquist v. Swinerton & Walberg Property Services, et al.
       Boulder District Court Case No. 2002-CV-859
       U.S. District Court Case No. 02-K-1289 (OES)

       Dionigi v. John Crane, Inc., et al.
       Boulder District Court Case No. 2001-CV-1676
       U.S. District Court Case No. 02-K-1291 (OES)

Dear Counsel:

Please be advised that Defendant Rio Grande Company, Inc. does **not** consent to removal of the four above-referenced cases from state court to federal court. I extend my apology to Ms. Epperson for the inaccurate position of my client previously conveyed in the Freiberg case. I was in trial at the time and had not had the opportunity to discuss the issue with my client.

Very truly yours,

James M. Miletich

James M. Miletich

2401 15th Street, Suite 300    Denver, Colorado 80202    tel 303.480.0400    fax 303.458.9520

**EXHIBIT**

B

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

AUG 13  PM 2: 24

JAMES R. MANSPEAKER
CLERK

Civil Action No.        02-K-1272 (OES)

BY _____ DEP. CLK

KENNETH FREIBERG AND
MARY SUE FREIBERG
        Plaintiffs

-vs-

SWINERTON WALBERG PROPERTY SERVICES, INC., A COLORADO
CORPORATION; ET AL
        Defendants

---

### PLAINTIFFS' REPLY TO DEFENDANT CAMIL FARR, INC.'S RESPONSE
### TO PLAINTIFFS' MOTION TO REMAND

---

Plaintiffs Kenneth Freiberg and Mary Sue Freiberg submit their reply to Defendant Camfil Farr, Inc.'s Response to Plaintiffs' Motion to Remand.

**Lack of unanimous consent to removal.**

Camil Farr  erroneously argues, in its response to Plaintiffs' Motion to Remand, that its failure to obtain consent from all other defendants is immaterial to the success of its removal effort.  28 USC 1441, requires such consent.  Spillers v. Tillman, 959 F.Supp. 364, 369 (S.D. Miss. 1997).   Camil Farr's assertion is unsupported by citation to authority.  Plaintiffs' Motion to Remand and supporting brief show that unanimous consent to removal by all defendants is required.  Neither defendant Rapid American nor defendant Rio Grande has consented to removal.  (Please see correspondence from counsel for Defendant Rio Grande, James Miletich, Esq., dated 08/02/02, specifically stating that Rio Grande does not consent to removal of this action, **EXHIBIT A**).  Failure



PLAINTIFF'S
EXHIBIT

1

Failure to obtain that consent is fatal to Camil Farr's removal.  The non-consenting

defendants are entitled to have this State law tort case resolved in the court where it

belongs – State court.  Plaintiffs' Motion to Remand should be granted.


**Federal Enclave Jurisdiction Does Not Exist.**

Camfil Farr takes the position that simply because Plaintiff's exposure to asbestos

occurred at Rocky Flats, and that Rocky Flats is a "federal enclave", the question of

federal jurisdiction is answered.  This overly simplistic approach is necessary to Camfil

Farr's argument in this case, because an examination of the nature of Mr. Freiberg's

claims and the law applicable to those claims shows that "federal enclave" jurisdiction

does not exist.  There is nothing particularly or peculiarly or uniquely "federal" about Mr.

Freiberg's exposure to asbestos.  His exposure to asbestos occurred in circumstances

identical to that which has caused disease in thousands of other American workers, whose

cases are being prosecuted in State courts.

States are free to exercise their power in State law cases such as Mr. Freiberg's so

long as it does nothing to interfere with the United States' use of the enclave.  Howard v.

Commissioners of Sinking Fund Of City of Louisville, 344 U.S. 624, 627 (1953).  Camil

Farr, a manufacturer of asbestos containing products, points to nothing about Mr.

Freiberg's case that could possibly impact the United States' use of the Rocky Flats

facility.

"To bring a case within [section 1331], a right or immunity created by the

Constitution or the laws of the United States must be an element and an essential one, of

the plaintiff's cause of action. . . . The right or immunity must be such that it will be

2

supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they received another." <u>Gully v. First National Bank in Meridian,</u> 299 U.S. 109, 112 (1936).  Mr. Freiberg makes no claim that implicates any Federal law. His claims for relief are all based on State law, and it is State law that will be applied to resolve any of the substantive issues in this case.

Defendant makes no claim, nor could it make a claim, that the State court's exercise of jurisdiction over Mr. Freiberg's claim in some way interferes with  the Federal Governments exercise of sovereignty, or for that matter, with the operation and maintenance of the now defunct Rocky Flats plant.

WHEREFORE, Plaintiffs renew their request that this Court grant Plaintiffs' Motion to Remand this case to the District Court, Twentieth Judicial District, Boulder, County, Colorado.

08/13/02

TRINE & METCALF,  P.C.

Conard Metcalf, 2489
1435 Arapahoe Ave.
Boulder, CO 80302
(303) 442-0173
*Attorneys for Plaintiffs*

3



# McConnell Siderius Fleischner Houghtaling & Craigmile, LLC

James M. Miletich
Direct Dial: 303.458.9545
E-Mail: jmiletich@msfhc.com

August 2, 2002

To All Counsel of Record

Re:    Freiberg v. Swinerton & Walberg Property Services, et al.
       Boulder District Court Case No. 2001-CV-1409
       U.S. District Court No. 02-M-1272 (OES)

       Vanhooser v. Swinerton & Walberg Property Services, et al.
       Boulder District Court Case No. 2002-CV-767
       U.S. District Court No. 02-K-1290 (OES)

       Soderquist v. Swinerton & Walberg Property Services, et al.
       Boulder District Court Case No. 2002-CV-859
       U.S. District Court Case No. 02-K-1289 (OES)

       Dionigi v. John Crane, Inc., et al.
       Boulder District Court Case No. 2001-CV-1676
       U.S. District Court Case No. 02-K-1291 (OES)

Dear Counsel:

Please be advised that Defendant Rio Grande Company, Inc. does **not** consent to removal of the four above-referenced cases from state court to federal court. I extend my apology to Ms. Epperson for the inaccurate position of my client previously conveyed in the Freiberg case. I was in trial at the time and had not had the opportunity to discuss the issue with my client.

Very truly yours,

*James M. Miletich*

James M. Miletich

PLAINTIFF'S
EXHIBIT
A

2401 15th Street, Suite 300    Denver, Colorado 80202    tel 303 480 0400    fax 303 458 9520

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **PLAINTIFFS' REPLY TO DEFENDANT CAMIL FARR, INC.'S RESPONSE TO PLAINTIFFS' MOTION TO REMAND** was served upon the following via U.S. Mail, postage pre-paid on this 13th day of August, 2002:

James Miletich, Esq.
Long & Jaudon,
*Attorneys for Rio Grande*
1600 Ogden Street
Denver, CO  80218-1414
(303) 832-1122
FAX: (303) 832-1348

Bradley Levin, Esq.
Roberts, Levin & Patterson, P.C.
*Attorneys for Georgia Pacific*
1660 Wynkoop, Suite 800
Denver, CO  80202
(303) 575-9390
FAX: (303) 575-9385

Shauna Hilgers, Esq.
Law Office of Shauna Hilgers
*Attorneys for Flintkote*
P.O. Box1254
Arvada, CO  80001
(303) 431-5037
FAX: (303) 431-5037

Mary Price Birk, Esq.
Ronald L. Hellbush, Esq.
Baker & Hostetler, LLP
*Attorneys for Union Carbide*
303 17th Avenue, #1100
Denver, CO  80203
(303) 861-0600
FAX: (303) 861-7805

David Fowler, Esq.
Brian Widmann, Esq.
Fowler, Schimberg & Flanagan, P.C.
*Attorneys for Swinerton & Walberg*
1640 Grant St., #300Denver, CO  80203
(303) 298-8603
FAX: (303) 298-8748

Steven M. Kaufmann, Esq.
Brian Hoffman, Esq.
Morrison & Foerster, LLP
*Attorneys for ABB Lummus Global, Inc.*
370 17th Street, Suite 5200
Denver, CO  80202
(303) 592-1500
FAX: (303) 592-1510

Gary M. Clexton, Esq.
King, Clexton & Feola, LLC
*Attorneys for John Crane*
1670 York Street
Denver, CO  80202
(303) 298-9878
FAX: (303) 298-9879

Christopher K. Miller, Esq.
Kennedy & Christopher, P.C.
*Attorneys for Flanders Filters, Inc.*
1050 Seventeenth Street, Suite 2500
Denver, CO  80265
(303) 825-2700
FAX: (303) 825-0434

4

David M. Setter, Esq.
Kathryn M. Epperson, Esq.
Socha, Perczak & Anderson, P.C.
*Attorneys for Camfil Farr, Inc.*
1775 Serman Street, Suite 1925
Denver, CO  80203
(303) 832-7265
FAX:  (303)832-7438

FREIBERG

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

AUG 1 4 2002

JAMES R. MANSPEAKER
CLERK

Civil Action No. **02-K-1272**

**KENNETH FREIBERG and MARY SUE FREIBERG,**

       Plaintiffs,

v.

**SWINERTON & WALBERG PROPERTY SERVICES, INC., et al.,**

       Defendants.

---

## MINUTE ORDER

---

Judge John L. Kane **ORDERS**

    Any additional responses to Plaintiffs' Motion to Remand are due on or before August 23, 2002.  Replies, if any are due on or before September 3, 2002.

---

Copies of this Minute Order were mailed to the following:

Deborah Taussig, Esq.
Trine & Metcalf, PC
1435 Arapahoe Avenue
Boulder, CO 80302-6390

Steven M. Kaufmann, Esq.
Morrison & Foerster
**D.C. Box 22**

James M. Miletich, Esq.
Jaudon & Avery, LLP
1660 Wynkoop Street #1010
Denver, CO 80218-1414

Mary Price Birk, Esq.
Baker & Hostetler
**D.C. Box 17**

Daniel M. Fowler, Esq.
Fowler, Schimberg & Flanagan, PC
1640 Grant Street #300
Denver, CO 80203

Shauna L. Hilgers, Esq.
6508 Poppy Street
P.O. Box 1254
Arvada, CO 80001

Gary M. Clexton, LLP
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Christopher K. Miller, Esq.
Kennedy & Christopher, PC
1050 17th Street #2500
Denver, CO 80265-1197



PLAINTIFF'S
EXHIBIT

8.¹⁴

Minute Order - Page Two
**Civil Action No. 02-K-1272**

David M. Setter, Esq.
Socha, Perczak & Anderson, PC
1775 Sherman Street #1925
Denver, CO 80203

August *14*, 2002                    JAMES R. MANSPEAKER, CLERK

Deputy Clerk