MDL 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG 2 8 2002

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION
MDL DOCKET NO. 875
IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

FLOWER MANGIALARDI, et al.                                                         PLAINTIFFS

VERSUS                                                  CIVIL ACTION NO. 2:02CV121-B-B
                                                             (Northern District of Mississippi)

HAROLD'S AUTO PARTS, et al.                                                        DEFENDANTS

---

### CONSOLIDATED MOTION AND BRIEF
### TO VACATE CONDITIONAL TRANSFER ORDER
### AND STAY FURTHER CONSIDERATION OF TRANSFER
### PENDING RESOLUTION OF A MOTION FOR REMAND

---

Comes now, the Plaintiffs in Flower Mangialardi, et al v. Harold's Auto Parts, et al, N.D. Miss. C.A. 2:02CV 121, by and through counsel, and respectfully request that the Conditional Transfer Order (CTO-215) be vacated in this case, and stay any further consideration of transfer pending resolution of a Motion for Remand, and in support thereof would respectfully show unto the Panel the following:

### FACTS AND RELEVANT PROCEDURAL HISTORY

1.

This cause of action was originally filed in the Circuit Court of Bolivar County, Mississippi, a copy of the Complaint is attached hereto as Exhibit "A".   The cause consisted of 245 Plaintiffs who alleged exposure to asbestos and suffered asbestos related injuries and illnesses.  Subsequently, the Defendants removed this cause to the United States District Court for the Northern District of Mississippi and alleged that two (2) of the Plaintiffs were exposed to asbestos at sites which were

IMAGED AUG 30 '02   OFFICIAL FILE COPY

RECEIVED
CLERK'S OFFICE
AUG 28 A 10: 45
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

alleged to be Federal Enclaves.   The Plaintiffs filed a motion to remand which is presently pending

before the Honorable Neal Biggers, United States District Judge.

2.

The Plaintiffs moved for the remand of the above-referenced actions to the Circuit Court for

the Second Judicial District of Bolivar County on the basis that not all Defendants who were served

with process timely joined in the Petition for Removal.   Further, the Plaintiffs denied that either a

Federal Enclave or a Federal Officer was involved which would make removal appropriate.   The

Plaintiffs' Complaint specifically disavows any cause of action under Federal Law, therefore, the

only cause of action available to the Plaintiffs' who are alleged to have been exposed at Federal

Enclaves is failure to warn.   Failure to warn is not recognized as creating removal under the Federal

Enclave Doctrine.   The present Motion to Remand has not been ruled upon and the Plaintiffs has

requested an expided ruling.

## MOTION TO VACATE CONDITIONAL
## TRANSFER ORDER AND STAY ANY FURTHER CONSIDERATION OF
## TRANSFER PENDING RESOLUTION OF MOTION FOR REMAND

3.

A Conditional Transfer Order was entered by the Clerk of the Panel on August 8, 2002.

Plaintiffs submitted their Notice of Opposition to the transfer of the above referenced cases on

August 16, 2002.

4.

Plaintiffs respectfully request the Conditional Transfer Order (CTO-215) be vacated and

further consideration of transfer stayed for the following reasons:

a.      The Plaintiffs are confident in their position that the transferor Court lacks

2

jurisdiction over both of the above-referenced cases. Although the Plaintiffs are aware that the Judicial Panel is capable of deciding remand issues, all issues relating to remand have been presented and are properly before the transferor Court for determination at this time.

b.   The interest of judicial economy requires the Judicial Panel stay any transfer of the above-referenced cases pending the transferor Court's ruling on the Plaintiffs' Motion to Remand. As the Judicial Panel has recognized, a request for transfer does not remove the transferor Court's authority to conduct proceedings and rule upon motions for remand. As all briefing relating to the remand issue is complete, it would be a waste of judicial resources to transfer this action at this time without allowing the transferor Court to complete its consideration of the remand issue before it. Should the transferor Court rule in favor of remand, the complex and prolonged use of judicial resources and attorney involvement related to a transfer to Multidistrict Litigation will be avoided.

c.   There is no prejudice in staying the decision to transfer this action to Multidistrict Litigation. Allowing the transferor Court to rule upon a remand issue will avoid the need for consideration of this same issue by the Judicial Panel, and may avoid further federal proceedings altogether if the transferor Court rules in favor of remand.

## AUTHORITIES AND ARGUMENT

**Defendants request for transfer is for the motive of delaying the proper remand of this action to state court**

The Defendants in the above-referenced actions improperly removed these cases to Federal

3

Court on the basis of Federal Enclave and Federal Officer jurisdiction, which were untimely and failed to obtain consent of all Defendants, despite the fact that the Plaintiffs specifically disavowed any Federal Cause of Action.

For these reasons, and others set out in Plaintiffs briefs to the transferor court, the Plaintiffs are confident the Defendants' removal is improper and untimely. This Court has recognized occasions where parties have attempted to use a transfer to Multidistrict Litigation to manipulate jurisdiction, and Plaintiffs believe Defendants' immediate request for transfer in this present case should be denied as an attempt to manipulate the system by delaying the remand of this action to state court.

**Vacating the Conditional Transfer Order and staying further consideration of transfer is in the interest of judicial economy**

A Motion for Remand was filed and fully briefed by the Plaintiffs. Furthermore, the Plaintiffs have requested an expedited ruling on the Plaintiffs' Motion for Remand. A true and correct copy of Plaintiffs' Motion for Expedited Ruling is attached as Exhibit "B." For this reason, the value of judicial economy, convenience, and fairness to the parties and the transferor Court in seeing the consideration of the remand issue concluded must be considered. *See City of Chicago v. International College of Surgeons*, 522 U.S. 156, 173, 118 S. Ct.523, 534, 139 L.Ed. 2d 525 (1997) (citations omitted). Transferring this consolidated action at this time would result in wasted effort by both the attorneys and the District Court in reviewing, briefing and evaluating the threshold matter of jurisdiction. A transfer of these actions at this time would result in a waste of judicial economy and efficiency through the repetition of efforts expended by the transferor Court as the issue of jurisdiction will ultimately have to be reviewed by the Multidistrict Litigation Panel if not

4

decided at this time. *See In re Molinaro/Catanzaro Patent Litigation*, 402 F.Supp. 1404, 1405-06 (JPML 1975) (holding transfer to multi district litigation is for the purpose of promoting efficient conduct of litigation and to serve the convenience of the parties); *see also In re Multi district Private Civil Treble Damage Litigation Involving Library Editions of Children's Books*, 299 F.Supp. 1139, 1142-43 (JPML 1969) (holding the panel must make an affirmative determination whether transfer would be for the convenience of the parties and promote the just and efficient conduct of the action prior to transfer). In contrast, allowing the transferor Court to rule upon the remand issue is in the interest of judicial economy and fairness as the remand of this action would terminate all federal proceedings including multidistrict consideration. Should Plaintiffs' Motion for Remand be denied, the transfer of these actions to Multidistrict Litigation could proceed, if deemed appropriate, without having to expend resources to address the threshold matter of jurisdiction.

**Alternatively, the Court should remand those Plaintiffs who have only State Based Claims.**

The Plaintiffs would state unto the Court that of the 245 Plaintiffs in this cause of action, only two (2) are alleged to have been exposed at Federal Enclaves, John Adamson and Greely Smith. Therefore, the remaining 243 Plaintiffs only have state based claims.[1]

According to 28 U.S.C. §1441(c):

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by §1331 of this Title is joined with one or more otherwise non-removable with non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all

---

[1]The Plaintiffs have specifically disavowed any Federal Question.  As noted in the Motion to Remand currently before the Court, the only cause of action available to any Plaintiff exposed at a Federal Site is failure to warn, which does not trigger Federal Jurisdiction.  This is true of all Plaintiffs, including the 243 not subject to the Removal Petition.

matters in which state law predominates.

Therefore, the Plaintiffs would respectfully request that the MDL not assume jurisdiction of the remaining Plaintiffs in which state law predominates. This would be the remaining 243 Plaintiffs who were not the subject of the remand petition.   In deciding whether or not to exercise pendent jurisdiction, Federal Courts have discretion. See Eg. <u>Moses v. Bankco Mortgage Co.</u>, 778 F.2d 267, 273 (5th Cir. 1985).  When a narrowing of the issues excludes all federal claims, whether a pendent state claim should be remanded to state court is a question of judicial discretion, not of subject matter jurisdiction.  <u>Hudak v. Economic Research Analysts, Inc.</u>, 499 F.2d 996, 1001 (5th Cir. 1974).

However, judicially economy weighs heavily in favor of transferring to MDL only those Plaintiffs who are alleged to being exposed at Federal Enclaves and remanding this cause to the Circuit Court of Bolivar County, Mississippi, with respect to the 243 Plaintiffs who have nothing to do with federal jurisdiction as the only available cause of action to any Plaintiff exposed at a Federal Site is failure to warn.   The Court may then determine whether or not the remaining two Plaintiffs were properly removed to this Court[2]. Many of the Plaintiffs suffer from asbestos related diseases which will result in certain and perhaps immediate death. These Plaintiffs need and require a prompt resolution of their causes of action. Further, since their causes of actions are strictly state based claims, this Court should exercise its discretion and decline to retain jurisdiction over their causes. It is, therefore, appropriate to remand those 243 cases to the Circuit Court of Bolivar County, Mississippi, where similar cases are already pending.

## CONCLUSION

---

[2]By filing of this motion, the Plaintiffs do not concede that Plaintiffs John Adamson and Greely Smith were properly removed.

Transferring this action for consolidated pretrial proceedings is counterproductive to the efficient resolution of the above-referenced cases.   A transfer at this time would especially be contrary to the interest of judicial economy as there is presently a question of whether removal of these actions to Federal Court was proper. A Motion for Remand is presently pending before the transferor Court. Although the Plaintiffs acknowledge that the Judicial Panel has stated it has the ability to address remand issues, there is no prejudice in vacating the conditional transfer order and staying any further consideration of transfer as further federal proceedings before the transferor Court or in Multidistrict Litigation will be avoided should the transferor Court determine federal jurisdiction does not exist. Conditional Transfer Order (CTO-215) should be vacated, and the Judicial Panel on Multidistrict Litigation should withhold any additional consideration of transfer until after the transferor Court has completed its ongoing review of the threshold question of jurisdiction.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs would respectfully request that their Objection to Transfer to MDL be granted.

Respectfully submitted,

CHAPMAN, LEWIS & SWAN
Post Office Box 428
Clarksdale, Mississippi  38614
(662) 627-4105 (Telephone)

By: _____
        DANA J. SWAN (MSB #8088)

OF COUNSEL:

G. Patterson Keahey

7

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG 2 8 2002

FILED
CLERK'S OFFICE

Law Offices of G. Patterson Keahey, Jr., P.C.
One Independence Plaza
Suite 814
Birmingham, Alabama 35209
Telephone:     (205) 871-0707
Facsimile:     (205) 871-0801

### CERTIFICATE OF SERVICE

I, Dana J. Swan, do hereby certify that I have this day mailed, postage prepaid, a true and

correct copy of the above and foregoing Consolidated Motion and Brief to Vacate Transfer Order

to the attached lists.

THIS, the **28**<sup>th</sup> day of August, 2002.

_Jane Baker for Dana Swan_

D/ANA J. SWAN

F:\DOCS\mangialardi.flower\Pleading\mdl.motion and brief.wpd

RECEIVED
CLERK'S OFFICE
2002 AUG 28 P 2: 32
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

8

**ATTORNEYS OF COUNSEL:**

G. Patterson Keahey, Esq.
Law Offices of G. Patterson Keahey, P.C.
One Independence Plaza, Suite 612
Birmingham, AL 35209
(205) 871-0707
(205) 871-0801 (fax)


C. Kent Haney, Esq.
121 Yazoo Avenue
P. O. Box 206
Clarksdale, MS 38614
(662) 627-5501
(662) 627-5502 (fax)


ATTORNEY FOR JANTRAN, INC.
Tom Janoush, Esq.
P. O. Box 1448
307 Cotton Row, Suite 1
Cleveland, MS 38732
(662) 846-1716
(662) 846-7134 (fax)


ATTORNEY FOR WEST IMPLEMENT
FLEMING LUMBER COMPANY
Chris H. Deaton, Esq
Dana G. Deaton, Esq..
113 Clark Street, Suite 5
Tupelo, MS 38804
(662) 844-2055
(662) 840-6039 (fax)


ATTORNEY FOR GOODYEAR TIRE AND RUBBER COMPANY, INC. AND
MT. VERNON MILLS, INC.
Walter W. Dukes, Esq.
Derek R. Cusick, Esq.
P. O. Drawer W
Gulfport, MS 39502
(228) 868-1111
(228) 863-2886 (fax)

1

ATTORNEY FOR CROWN CORK & SEAL COMPANY, INC.
Minor C. Sumners, Jr., Esq.
1907 Dunbarton Drive
Suite F
Jackson, MS 39216
(601) 362-8058
(601) 366-7498 (fax)

AND

Mark R. Smith, Esq.
Michael N. Watts, Esq.
1217 Jackson Avenue
P. O. Drawer 707
Oxford, MS 38655-0707
(662) 263-8775
(662) 238-7552 (fax)
E-Mail: marksm@holcombdunbar.com

ATTORNEY FOR MISSISSIPPI RUBBER & SPECIALITY CO. and
COASTAL RUBBER & GASKET COMPANY, INC.
Karl Steinberger, Esq.
P. O. Box 1407
Pascagoula, MS 39568-1407
(228) 762-8021
(228) 762-7589 (fax)

ATTORNEY FOR HAROLD'S AUTO PARTS, INC.
Gerald J. Jacks, Esq.
P. O. Box 1209
Cleveland, MS 38732
(662) 843-6171
(662) 843-6176 (fax)

ATTORNEY FOR BRANDON DRYING FABRICS, INC.
Matthews F. Powers, Esq.
P. O. Box 1417
Gulfport, MS 39502
(228) 822-1109
(228) 822-2317 (fax)

2

ATTORNEY FOR:
YORK INTERNATIONAL CORPORATION
GARLOCK INC
GULF BELTING & GASKET CO., INC.
CONGOLEUM CORPORATION
Thomas W. Tyner, Esq.
P. O. Drawer 750
Hattiesburg, MS 39403-0750
(601) 583-2671
(601) 583-2677 (fax)

ATTORNEY FOR ACandS INC.
WORTHINGTON CORPORATION
David A. Barfield, Esq.
Kimberly P. Wallace, Esq.
James H. Bolin, Esq.
233 East Capitol Street
P. O. Drawer 3979
Jackson, MS 39207-3979
(601) 968-9420
(601) 968-9425 (fax)

ATTORNEY FOR SB DECKING, INC. f/k/a SELBY, BATTERSBY & COMPANY
United States Steel LLC
Alben N. Hopkins, Esq.
P. O. Box 1510
Gulfport, MS 39502-1510
(228) 864-2200
(228) 868-9358 (fax)

ATTORNEY FOR ASARCO INCORPORATED
Lucien C. Gwin, Jr., Esq.
319 Market Street
Post Office Box 1344
Natchez, MS 39121
(601) 446-6621
(601) 442-6175 (fax)

3

ATTORNEY FOR VIACOM INC. successor by merger to CBS CORPORATION f/k/a
WESTINGHOUSE ELECTRIC CORPORATION
Roy C. Williams, Esq.
711 Delmas Avenue
P. O. Box 1407
Pascagoula, MS 39568-1407
(228) 762-8021
(228) 762- 7589(fax)

C. Michael Evert, Jr., Esq.
Evert & Weathersby
3405 Piedmont Road, Suite 225
Atlanta, Georgia 30305
(404) 233-8718
(404) 233-8933

Send all faxes and e-mails to any of the following

Richard Lauth, Esq.
rmlauth@eandwlaw.com
Rosemary Wade, Esq.
rmwade@eandwlaw.com
Fran Spinelli, Esq.
flspinelli@eandwlaw.com

ATTORNEY FOR METROPOLITAN LIFE INSURANCE COMPANY
Joseph J. Stroble, Esq.
William F. Goodman, III, Esq.
P. O. Box 650
Jackson, MS 39205
(601) 948-6470
(601) 354-3623 (fax)

ATTORNEYS FOR ALBANY INTERNATIONAL CORPORATION
AMERICAN STANDARD INC.
Michael E. Whitehead, Esq.
Ronald G. Peresich, Esq.
W. Mark Edwards, Esq.
P. O. Drawer 289
Biloxi, MS 39533
(228) 374-2100
(228) 432-5539 (fax)

4

ATTORNEYS FOR FLINTKOTE COMPANY
ATTORNEYS FOR DURABLA MANUFACTURING COMPANY
David L. Trewolla, Esq.
David W. Dogan, III, Esq.
Dogan & Wilkinson
P. O. Box 23062
Jackson, MS 39225-3062
(601) 351-3200
(601) 351-3232 (fax)

ATTORNEYS FOR RAPID AMERICAN CORPORATION
THE GEORGIA MARBLE COMPANY, INC.
J. Price Coleman, Esq.
M. Scott Minyard, Esq.
Scott W. Bates, Esq.
Robert M. Arnteson, Jr., Esq.
Barry C. Campbell, Esq.
Baker, Donelson, Bearman & Caldwell
P. O. Box 14167
Jackson, MS 39236
(601) 351-2400
(601) 351-2424 (fax)

ATTORNEYS FOR CHAMPION INTERNATIONAL CORPORATION
INTERNATIONAL PAPER COMPANY
Patricia C. Gandy, Esq.
Phil B. Abernethy, Esq.
P. O. Box 22567
Jackson, MS 39225-2567
(601) 948-5711
(601) 985-4500 (fax)


ATTORNEYS FOR KOMP EQUIPMENT COMPANY, INC.;
COOPER INDUSTRIES, INC.;
COMBUSTION ENGINEERING, INC.;
ZURN INDUSTRIES, INC.;
GULF COAST MARINE SUPPLY CO.;
GEORGIA-PACIFIC CORPORATION;
TURNER SUPPLY COMPANY;
STANDARD EQUIPMENT COMPANY, INC.;
OWENS-ILLINOIS, INC.
INGERSOLL-RAND COMPANY
JAMESTOWN METAL MARINE SALES, INC.

5

DURAMETALLIC CORPORATION
REYNOLDS METALS COMPANY
BP AMOCO CHEMICAL COMPANY
WEAVEXX
Thomas W. Tardy, III, Esq.
Stefan G. Bourn, Esq.
Michael D. Goggans, Esq.
P. O. Box 22608
Jackson, MS 39225-2608
(601) 960-8600
(601) 960-3241 (fax)

ATTORNEYS FOR SEARS, ROEBUCK AND CO.
William N. Graham, Esq.
Cowles, E. Symmes, Esq.
P. O. Drawer 750
Hattiesburg, MS 39403-0750
(601) 583-2671
(601) 583-2677 (fax)

ATTORNEY FOR:
UNION CARBIDE CORPORATION
NATIONAL SERVICE INDUSTRIES
CERTAINTEED
J. C. PENNEY, INC.
SPERRY RAND CORPORATION
Marcy B. Croft, Esq.
Suite 1200
One Jackson Place
188 East Capitol Street
P. O. Box 22608
Jackson, MS 39225-2608
(601) 960-8600
(601) 960-3241 (fax)

ATTORNEYS FOR A. W. CHESTERTON COMPANY
A. La'verne Edney, Esq.
Robert L. Gibbs, Esq.
P. O. Drawer 119
Jackson, MS 39205
(601) 948-3101
(601) 960-6902 (fax)

ATTORNEY FOR FMC CORPORATION
MAREMONT CORPORATION
ATLANTIC RICHFIELD COMPANY
HAMILTON BEACH/PROCTOR-SILEX, INC.
Jeffrey P. Hubbard, Esq.
WELLS, MOORE, SIMMONS & HUBBARD, PLLC
SCAPA WAYCROSS, INC.
P. O. Box 1970
Jackson, MS 39215-1970
 (601) 354-5400
(601) 355-5850 (fax)

ATTORNEYS FOR ASTEN, INC.
Ronald D. Collins, Esq.
Craig E. Brasfield, Esq.
FORMAN PERRY WATKINS KRUTZ & TARDY, PLLC
P .O. Box 22608
Jackson, MS 39225-2608
(601) 960-8600
(601) 960-3241 (fax)

ATTORNEYS FOR AMCHEM PRODUCTS, INC.
C. E. THURSTON & SONS, INC.
CROSSFIELD PRODUCTS CORPORATION
Joe B. Moss, Esq.
FOREMAN PERRY WATKINS KRUTZ & TARDY, PLLC
P. O. Box 22608
Jackson, MS 39225-2608
(601) 960-8600
(601) 960-3241 (fax)

ATTORNEYS FOR GUARD-LINE, INC.
Nathan A. Bosio, Esq.
Robert Wilkinson, Esq.
DOGAN & WILKINSON, PLLC
P. O. Drawer 1618
Pascagoula, MS 39568-1618
(228) 762-3107
(228) 762-3223 (fax)

ATTORNEYS FOR KELLOGG BROWN & ROOT INTERNATIONAL, INC.
David A. Barfield, Esq.
Kimberly P. Wallace, Esq.
James H. Bolin, Esq.
P. O. Box 3979

Jackson, MS 39207-3979
(601) 968-9420
(601) 968-9425 (fax)

ATTORNEYS FOR SCHICK, INC.
James P. Streetman, III, Esq.
CLARK, SCOTT & STREETMAN, P.A.
P. O. Box 13847
Jackson, MS 39236-3847
(601) 977-0102
(601) 957-0690 (fax)

ATTORNEYS FOR CONAIR CORPORATION
Kelly K. Simpkins, Esq.
WELLS MARBLE & HURST, PLLC
P. O. Box 131
Jackson, MS 39205-0131
(601) 355-8321
(601) 335-4217 (fax)

Timothy E. Corriston, Esq.
CONNELL FOLEY, LLP
85 Livingston Avenue
Roseland, New Jersey 07068
(973) 535-0500

ATTORNEYS FOR HOPEMAN BROTHERS, INC.
James L. Fletcher, Jr., Esq.
Duncan, Courington & Rydberg, L.L.C.
322 Lafayette Street
New Orleans, Louisiana 70130
(504) 524-5566
(504) 524-9003 (fax)

ATTORNEYS FOR MCKAY'S FURNITURE AND APPLIANCE
Jonathan S. Masters, Esq.
Holcomb Dunbar
P. O. Box 368
Clarksdale, MS 38614
(662) 627-2241
(662) 627-9788 (fax)

ATTORNEYS FOR FERRO ENGINEERING, DIVISION OF OGLEBAY NORTON
COMPANY
Susan Coco, Esq.
Laurie J. Hutchings, Esq.

8

JUDE & COCO, P.A.
P. O. Box 17499
Hattiesburg, MS 39404-7499
(601) 271-2190
(601) 271-2195 (fax)

ATTORNEYS FOR JOHNSON & JOHNSON
Phil Abernathy, Esq.
Trey Bourn, Esq.
P. O. Box 22567
Jackson, MS 39225-2567
(601) 948-5711
(601) 985-4500 (fax)

**PANEL SERVICE LIST (Excerpted from CTO-215)**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

*Flower Mangialardi, et al. v. Harold's Auto Parts, Inc.*, *et al.*, N.D. Mississippi, C.A. No. 2:02-121

Phillip B. Abernethy
Butler, Snow, O'Mara, Stevens &
Cannada
P.O. Box 22567
Jackson, MS 39225

Robert M. Arentson, Jr.
Watkins, Ludlam, Winter &
Stennis, P.A.
P.O. Box 427
Jackson, MS 39205

Steven H. Begley
Wells Marble & Hurst, PLLC
P.O. Box 131
Jackson, MS 39205-0131

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Nathaniel A. Bosio
Dogan, Wilkinson, Kinard, Smith &
Edwards
P.O. Box 1618
734 Dalmas Avenue
Pascagoula, MS 39568-1618

Brooks R. Buchanan
Butler, Snow, O'Mara, Stevens &
Cannada
P.O. Box 22567
Jackson, MS 39225

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, DC 20036

David W. Clark
Bradley, Arant, Rose & White
188 East Capitol Street, Suite 450
P.O. Box 1789
Jackson, MS 39215

Susan Coco
Jude & Coco, P.A.
P.O. Box 17499
Hattiesburg, MS 39404

J. P. Coleman
Baker, Donelson, Bearman &
Caldwell
P.O. Box 14167
Jackson, MS 39236

David A. Damico
Burns, White & Hickton
2400 Fifth Avenue Place
120 Fifth Avenue
Pittsburgh, PA 15222

Chris H. Deaton
Deaton & Deaton, P.A.
113 Clark Street
Suite 5
Tupelo, MS 38804

David W. Dogan, III
Dogan & Wilkinson
P.O. Box 23062
Jackson, MS 39225

Walter W. Dukes
Dukes, Dukes, Keating & Faneca
P.O. Drawer W
Gulfport, MS 39501

Andrea Edney
Brunini, Grantham, Grower &
Hewes
248 East Capitol Street
P.O. Box 119
Jackson, MS 39205

W. Mark Edwards
Page, Mannino, Peresich &
McDermott
P.O. Drawer 289
Biloxi, MS 39533-0289

James L. Fletcher, Jr.
Duncan & Courington
322 Lafayette Street
New Orleans, LA 70130

Raymond P. Forceno
Forceno & Hannon
Philadelphia Bourse Building
Suite 1000
Independence Mall East
Philadelphia, PA 19106

Richard L. Forman
Forman, Perry, Watkins, Krutz &
Tardy
P.O. Box 22608
Jackson, MS 39225

Ellen B. Furman
Goldfein & Joseph
1600 Market Street
33rd Floor
Philadelphia, PA 19103

William N. Graham
Aultman, Tyner, Ruffin &
Yarborough, Ltd.
P.O. Drawer 750
Hattiesburg, MS 39403

Lucien C. Gwin, Jr.
Gwin, Lewis & Punches
P.O. Box 1344
Natchez, MS 39121

Susan M. Hansen
Brownson & Ballou
4800 U.S. Bank Place
601 Second Avenue, South
Minneapolis, MN 55402

PANEL SERVICE LIST (Cont.) MDL-875              PAGE 2

Alben N. Hopkins
Hopkins, Barnie & Hopkins, PLLC
2701 24th Avenue
P.O. Box 1510
Gulfport, MS 39502

Jeffrey P. Hubbard
Wells, Moore, Simmons & Hubbard
P.O. Box 1970
1300 AmSouth Center
Jackson, MS 39215

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308

Daphne M. Lancaster
Aultman, Tyner, McNeese, Ruffin
& Yarborough
P.O. Box 750
Hattiesburg, MS 39403

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102

Jonathan Masters
Holcomb Dunbar, P.A.
P.O. Box 368
152 Delat Avenue
Clarksdale, MS 38614-0368

Edward A. Moss
Holcomb Dunbar
P.O. Box 707
Oxford, MS 38655

Ronald L. Motley
Ness, Motley, Loadholt, Richardson
& Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29464

Matthew F. Powers
Samson & Powers, PLLC
P.O. Box 1417
Gulfport, MS 39502

John J. Repcheck
Marks, O'Neill, O'Brien &
Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
Roven, Kaplan & Wells
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA 19102

Karl R. Steinberger
Bryant, Colingo, Williams & Clark
P.O. Drawer H
Pascagoula, MS 39568

James P. Streetman, III
Clark, Scott & Streetman
P.O. Box 13847
Jackson, MS 39236

Joseph J. Stroble
Watkins & Eager
The Emporium Building
Suite 300, P.O. Box 650
400 East Capitol Street
Jackson, MS 39205-0650

Dana J. Swan
Chapman, Lewis & Swan
501 First Street
P.O. Box 428
Clarksdale, MS 38614

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
Detroit, MI 48226

Andrew J. Trevelise
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Carey R. Varnado
Montague, Pittman & Varnado
P.O. Drawer 1975
Hattiesburg, MS 39403

Thomas E. Vaughn
Allen, Vaughn, Cobb & Hood
P.O. Drawer 4108
Gulfport, MS 39502

Lawrence D. Wade
Campbell, DeLong, Hagwood & Wade
P.O. Box 1856
Greenville, MS 38702

Kimberly P. Wallace
Barfield & Associates
P.O. Drawer 3979
Jackson, MS 39207-9425

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

Michael E. Whitehead
Page, Mannino, Peresich & McDermott
P.O. Drawer 289
Biloxi, MS 39533

Roy C. Williams
Colingo, Williams, Heidelberg, et al.
P.O. Box 1407
711 Delmas Avenue
Pascagoula, MS 39568

# CHAPMAN, LEWIS & SWAN

### ATTORNEYS AT LAW

501 First Street

Post Office Box 428

CLARKSDALE, MISSISSIPPI 38614

RALPH E. CHAPMAN
RICHARD B. LEWIS
DANA J. SWAN
DANIEL M. CZAMANSKE, JR.

662-627-4105

Fax 662-627-4171

clslaw@chapman-lewis-swan.com

www.chapman-lewis-swan.com

## TELECOPIER COVER SHEET

TO: **RANDOLPH**

FROM: **JANE BAKER**

DATE: **8/28/02**

FAX NO.: **202-502-2888**

RE: **MANGIALARDI, et al.**

TIME:

TOTAL NUMBER OF PAGES, INCLUDING COVER SHEET: **13**

THE INFORMATION CONTAINED IN THIS FACSIMILE IS OR MAY BE ATTORNEY PRIVILEGED AND
CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED
ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE
OR AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY
NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS
STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE
IMMEDIATELY NOTIFY US BY TELEPHONE. THANK YOU.

If you do not receive all pages, please call (662) 627-4105 and ask for __JANE__.

To transmit to us automatically, call (662) 627-4171.

COMMENTS: CERTIFICATE OF SERVICE TO FOLLOW.

JANE

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

2002 AUG 28 P 2: 32

RECEIVED
CLERK'S OFFICE

F:\DOCS\FAXCOVER

4-3-02

## IN THE CIRCUIT COURT OF BOLIVAR COUNTY, MISSISSIPPI
## ROSEDALE CIRCUIT, FIRST DISTRICT

FLOWER MANGIALARDI BY AND )
THROUGH HIS PERSONAL )
REPRESENTATIVE, RAMONA M. )
JOHNSON AND ALL PLAINTIFFS )
LISTED ON ATTACHED EXHIBIT "A" )
                               )
        PLAINTIFFS            )
                               )
VERSUS                         )
                               )
HAROLD'S AUTO PARTS INC. )
AND ALL DEFENDANTS LISTED ON )
ATTACHED EXHIBIT "B" )
                               )
        DEFENDANTS            )

**FILED**

APR 0 3 2002

BOLIVAR COUNTY, MS
ROSIE S. SIMMONS, CIRCUIT CLERK
BY _L. Hannah_
                    4:26 pm

CAUSE NO. 2001-37

### SIXTH AMENDED COMPLAINT

### JURY TRIAL REQUESTED

Plaintiffs hereby complain as follows:

### PARTIES

1. Plaintiffs are: (i) adult resident citizens of the State of Mississippi, or other states of

the United States; (ii) personal representatives or the wrongful death beneficiaries, pursuant to

applicable law, of deceased Plaintiffs and are listed and identified on Exhibit "A" annexed hereto.

2. The Defendants, listed and identified on Exhibit "B", annexed hereto, are

proprietorships, partnerships, limited partnerships, limited liability partnerships and corporations and

other legal entities or successors in interest in such proprietorships, partnerships, limited partnerships,

limited liability partnerships and corporations and other legal entities, who are (i) citizens of

Mississippi or (ii) citizens of states other than Mississippi, who have either obtained certificates of

authority to transact business in Mississippi pursuant to Section 79-3-211 et seq., Mississippi Code of

1972, or who transacted business in Mississippi without a certificate of authority, but within the

contemplation of Section 13-3-57 of said Code.  Plaintiffs make no present claim herein against the bankruptcy Defendants.  The Defendants' respective agents for service of process are also identified in Exhibit "B" annexed hereto, to the extent available as of this filing.

3.  As to the liability of the Defendant, Rapid American Corporation:

A.  The Defendant, Rapid American Corporation, is liable to these Plaintiffs for the actions of its predecessor-in-interest, Philip Carey Corporation.

B.  Philip Carey Corporation manufactured and sold asbestos-containing products used in Mississippi.

C.  The Defendant, Rapid American Corporation, is the successor-in-interest to the liability of the Philip Carey Corporation as the result of an express assumption of all liabilities and merger with the Glen Allen Corporation, the predecessor-in-interest to Rapid American Corporation. Prior to its merger with Rapid American, the Glen Allen Corporation, in 1967, merged with and expressly assumed the liabilities of the Philip Carey Manufacturing Company.

4.  Named defendants Abney Mills, Brandon Drying Fabrics, Inc., Brasa, Inc., Industrial Holdings Corporation (Carborundum Interests), Carborundum Corporation (Lockport), Weave; Albany International, Mt. Vernon Mills, Inc., Mt. Vernon Dryer Felt -- Company, a division of Mt. Vernon Mills; Scapa Group, Inc. and Scapa Fabrics, Inc. are foreign corporations authorized to do and doing business in Mississippi and/or other states, which manufactured asbestos dryer felts which were components of machinery used in the production of paper at various paper mill, employment sites represented in this cause. The named defendants knew or should have known of the hazards of asbestos and removed asbestos dryer felts from machines; they also failed to warn and advise the various paper mills of the hazards of asbestos, all resulting in injuries and damages to the petitioners.

A.  In addition to Defendants named herein, there are Defendants whose identities are

2

presently unknown to Plaintiffs. These Defendants designed, tested, evaluated, manufactured, mined, packaged, furnished, supplied and/or sold asbestos-containing products, many of which were not conspicuously marked by content, name, manufacturer, or otherwise, the precise identity of these products are unknown to Plaintiffs. These unidentified Defendants are named by Plaintiffs as "John Doe" Defendants in accordance with Rule 9(h) M.R.C.P. (Fictitious Parties) and every allegation in this Complaint is an allegation and a filing as of this date against each "John Doe" Defendant.

5. Plaintiffs are properly joined in this action pursuant to Rule 20(a) M.R.C.P. in that they assert rights to relief jointly and severally. Plaintiffs' civil action arises out of the same transaction, occurrence or series of transactions or occurrences and involve common questions of law and fact.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to the Mississippi Constitution and the Laws of the State of Mississippi including Article 6 Section 156 Mississippi Constitution 1890 and/or § 9-7-81 Mississippi Code 1972 and this Court has jurisdiction of the parties pursuant to the Laws of Mississippi.

7. Venue is proper pursuant to the Laws of the State of Mississippi including § 11-11-3 and § 11-11-11 Mississippi Code annotated 1972 and Rule 82 Mississippi Rules of Civil Procedure.

8. The Federal Courts lack subject matter jurisdiction over this action, as there is no federal question and incomplete diversity of citizenship due to the presence of a Mississippi defendant. Removal is improper. Every claim arising under the Constitution, treaties, or laws of the United States is expressly disclaimed (including any claim arising from an act or omission on a federal enclave, or of any officer of the U. S. or any agency or person acting under him occurring under color of such office). No claim of admiralty or maritime law is raised. Plaintiffs sue no foreign state or agency. Venue is proper in Bolivar County, Rosedale District.

9.   This civil action is brought pursuant to the laws of the State of Mississippi including, but not limited to § 11-7-13 as amended Mississippi Code 1972 (Wrongful death); § 91-7-231 Mississippi Code 1972 (actions accruing in administration) and/or § 91-7-233 Mississippi Code 1972 (what actions survive to administrator).

## BACKGROUND

10.   As used in this Complaint, this phrase "Defendants' Asbestos-Containing Products" or the phrase "Defendants' asbestos" means asbestos-containing products for which the Plaintiffs allege a Defendant is liable, either directly or indirectly.  During all or part of the period 1930 through the present ("the exposure period") each of the Defendants mined, designed, specified, evaluated, manufactured, packaged, furnished, supplied and/or sold adhesives, construction materials, insulation, fiber or other products, that each contained fibrous, incombustible, chemical-resistant, mineral substances commonly called "asbestos", or other substances such as diatomaceous earth, or materially assisted and aided and abetted others in so doing, which substances were used in and around Bolivar County, Mississippi and various locations throughout Mississippi and other States in the construction and repair of manufacturing plants and equipment.

11.   During all or part of the "exposure period", the Plaintiffs and Plaintiffs' decedents worked at or in close proximity to such plants and equipment in Bolivar County, Mississippi and various locations throughout Mississippi and other States, such that each Plaintiff was exposed to Defendants' asbestos and Defendants' asbestos containing products.

12.   When inhaled or otherwise ingested, Defendants' asbestos and Defendants' asbestos containing products cause irreparable and progressive lung damage that can manifest itself in lung disease, asbestosis, mesothelioma, pulmonary and bronchogenic carcinoma, and cardiac disease, among other diseases and injuries.

13. Each of the Defendants knew or should have known through industry and medical studies, the existence of which was unknown to Plaintiffs and Plaintiffs' decedents, of the health hazards to Plaintiffs inherent in the asbestos-containing products they were selling.  Instead of warning the Plaintiffs and Plaintiffs' decedents, other intended users, and the general public about these dangers, the Defendants ignored or actively and fraudulently concealed such information, or condoned such concealment, and commanded, directed, advised, encouraged, aided, abetted, or conspired with others or each other in so doing in order to sell asbestos and avoid litigation by those who were injured from asbestos inhalation.  Said actions or inactions constitute gross negligence and show a callous and reckless disregard for the rights and safety of the Plaintiffs and Plaintiffs' decedents and other giving rise to the imposition of punitive damages against the Defendants herein.

14.  In connection with their work during the exposure period, the Plaintiffs were exposed to and inhaled or otherwise ingested significant quantities of Defendants' asbestos, having neither knowledge nor reason to believe that asbestos was dangerous.

15.  As a direct and proximate contributing result of having inhaled, ingested or otherwise being exposed to Defendants' asbestos during the exposure period, the Plaintiffs received injuries, both physically and mentally, including, without limitation, one or more of the following conditions:

    A.  Asbestosis

    B.  Pulmonary or Bronchogenic Carcinoma

    C.  Lung Cancer

    D.  Mesothelioma

    E.  Impaired Pulmonary Capacity

    F.  Reduced Lung Volume

    G.  Pleural Plaques

5

H.  Interstitial Lung Fibrosis

I.  Cardiac and Circulatory Disease

J.  Increased susceptibility to one of the foregoing diseases and other illnesses

K.  Physical and mental anguish associated with one or more of the preceding conditions and fear of contracting one or more of the preceding conditions

L.  Death.

Plaintiffs would further show that as direct and proximate result of having inhaled, ingested or otherwise been exposed to asbestos, they have received permanent and painful injuries.  Plaintiffs would further show that they have suffered physical and mental pain and anguish, loss of wages, loss of wage earning capacity and will continue to sustain damages of the above type in the future, including, but not limited to, physical and mental pain and anguish, disability, future medical expenses and loss of enjoyment of life.

16.  Because of the latency period of the above asbestos injuries, and because of the active concealment by the Defendants of the causes and effects of exposure to asbestos, the Plaintiffs have only recently discovered their injuries.

## COUNT ONE

### (Strict Liability)

17.  Plaintiffs repeat and re-allege all of the allegations contained in all of the paragraphs above as if fully set forth herein.

18.  The Defendants and/or their predecessor entities were engaged in, or materially participated in, the business of selling asbestos and materials containing asbestos which were expected to and did reach the various work sites, plants and equipment in and around the Rosedale District of Bolivar County, Mississippi and various locations throughout Mississippi and other States

6

without substantial change in the condition in which they were sold, where said products released asbestos fibers which were inhaled and ingested by the Plaintiffs in connection with their, or members of their households, work.

19. The Defendants' asbestos-containing products to which the Plaintiffs and Plaintiffs' decedents were exposed were in a defective condition unreasonably dangerous to the user, consumer or bystander for the following reasons:

A. The Defendants' asbestos-containing products released respirable asbestos fibers when used in a manner that was intended and/or reasonably foreseeable by the Defendants.

B. These Defendants knew or should have known that the respirable asbestos fibers were hazardous to the health of users, consumers or bystanders in that when inhaled these fibers caused a variety of diseases including, but not limited to, asbestosis, lung cancer and mesothelioma.

20. The Defendants failed to eliminate the defect in their product as follows:

A. The Defendants failed to cause warnings to be affixed to their asbestos-containing products of the asbestos contained in their product of which they knew or should have known of the dangers associated with their asbestos-containing products.

B. The Defendants failed to provide proper instructions regarding the use of their asbestos-containing products.

21. The Defendants failed to properly test their product to ascertain the full extent of the hazards presented by their asbestos-containing products even though they knew or should have known about the hazards and were capable of performing such tests.

22. Even though the Defendants knew or should have known about the hazards presented

7

by the asbestos contained in their products, the Defendants continued to design products which required that asbestos be included in the manufacture of said products or used in conjunction with said products.

23. Each of the Defendants knew or should have known that the Plaintiffs would be exposed to their asbestos products without inspection of the medical literature by the Plaintiffs on the adverse health effects of asbestos.  By marketing the asbestos, the Defendants represented to the Plaintiffs and the public, who justifiably relied thereon, that asbestos was not dangerous.

24. The defective conditions of the Defendants' asbestos products proximately caused or contributed to the Plaintiffs' injuries and damages as described in this Complaint.

**WHEREFORE,** the Plaintiffs demand both compensatory and punitive damages against the Defendants jointly, severally and collectively in an amount to be determined by a jury at trial.

## COUNT TWO

(Negligence)

25. The Plaintiffs repeat and re-allege all of the allegations contained in all of the paragraphs above as if fully set forth herein.

26. Each of the Defendants had, but breached or knowingly aided and abetted the breach of, a duty to the Plaintiffs to exercise reasonable care in designing, specifying, testing, manufacturing, marketing, and selling asbestos or asbestos-containing products, which is an extraordinarily and inherently dangerous substance.  The duties of the Defendants to exercise reasonable care were breached as follows:

A.  Failure to test Defendants' asbestos-containing products.

B.  The manufacture and sale of a product hazardous to users, consumers and bystanders.

C.  Failure to warn users, consumers and bystanders of the hazards associated with

8

Defendants' asbestos-containing products.

27. The defective conditions of the Defendants' asbestos products proximately caused or contributed of the Plaintiffs' injuries and damages as described in this Complaint.

28. Each of the Defendants had, but breached or knowingly aided and abetted the breach of, a duty to the Plaintiffs to exercise reasonable care in designing, specifying, testing, manufacturing, marketing and selling asbestos or asbestos-containing products, which is an extraordinarily and inherently dangerous substance.

29. As a direct and proximate results of the Defendants' aforesaid breaches of their duties to the Plaintiffs, the Plaintiffs have sustained the injuries and damages as described herein.

30. In breaching, or materially assisting others in breaching, their duties to the Plaintiffs as described above, the Defendants acted intentionally, with negligence, gross negligence, recklessly, maliciously and wantonly in that the Defendants and each of them knew or should have known through information available exclusively to them that asbestos was inherently and extraordinarily dangerous if used in the manner intended and foreseen by the Defendants, and that each of their breaches of duty would result in the complained injuries to Plaintiffs.

**WHEREFORE,** the Plaintiffs demand both compensatory and punitive damages against the Defendants jointly, severally and collectively in an amount to be determined by a jury at trial.

## COUNT THREE

(Fraudulent Concealment/Misrepresentation/Alteration of Medical Studies/Conspiracy)

31. Plaintiffs repeat and re-allege all of the allegations contained in all of the paragraphs above as if fully set forth herein.

32. As will be discussed below the Defendants used a number of trade and industrial

hygiene associations to further the goals of their conspiracy to control the dissemination of research and information regarding the hazards of asbestos to lend an air of independence and legitimacy to the information which was published, albeit in edited form.

33.  Defendant Metropolitan Life Insurance Company and other Defendants named herein, individually and as agents of one another and as co-conspirators, aided, abetted, encouraged, counseled, assisted, agreed, and conspired among themselves and with other asbestos manufacturers and distributors to injure Plaintiffs.

34. Defendants acted in the following fashion:

A.  Metropolitan Life Insurance Company (Met Life) required a tangible quid pro quo from MaGill University in the 1920's in exchange for them providing funding for a study of asbestos disease in Canadian miners.  The study was never published and agents of Met Life materially misrepresented in the published literature this known fact.

B.  In 1932, Met Life, through its agents Dr. Anthony Lanza, Dr. Fellows, and others, assisted the Johns-Manville Corporation with medical examinations of over 1,000 employees of Johns-Manville's factory in Manville, New Jersey.  The report of this study shows that a large percentage of the employees suffered from asbestosis, including employees not directly involved in the manufacturing process.  This 1932 medical survey was not published in the medical literature and therefore was unavailable to scientists studying the issue of asbestos disease.  Further collaboration between the conspiring asbestos producers and Met Life officials continued this trend of intentional cover-up.

C.  Beginning in approximately 1934, Johns-Manville Corporation, through its agents, Vandiver Brown and attorney J. C. Hobart, and conspirator Raybestos-Manhattan, through its agents, Sumner Simpson and J. Rohrbach, suggested to Dr. Lanza, Associate Medical Director of Met

Life (insurers of Manville, Raybestos, and others), that Dr. Lanza publish a study on asbestosis in which Dr. Lanza would affirmatively misrepresent a material fact about asbestos exposure; i.e., the seriousness of the disease process, asbestosis.  This was accomplished through intentional deletion of Dr. Lanza's description of asbestosis as "fatal" and through other selective editing at the behest of the asbestos industry that affirmatively misrepresented asbestos as a disease process less serious than it actually is and was then known to be.  As a result, Dr. Lanza's study was published in the medical literature in this misleading fashion in 1935.  The Defendants were motivated, in part, to effectuate this fraudulent misrepresentation and fraudulent nondisclosure by the desire to influence proposed legislation to regulate asbestos exposure and to provide a defense in lawsuits involving Manville, Raybestos, and others, as well as Met Life, the insurer.

D.   In 1936, conspirators American Brake Block Corporation, Asbestos Manufacturing Company, Gatke Corporation, Johns-Manville Corporation, Keasby & Mattison Company (then an alter-ego to conspirator Turner & Newall), Raybestos-Manhattan, Russell Manufacturing (whose liabilities have been assumed by H. K. Porter Company), Union Asbestos and Rubber Company, and United States Gypsum Company, entered into an agreement with the Saranac Laboratories.  Under this agreement, these companies acquired the power to decide what information Saranac Laboratories could publish about asbestos disease and control in what form such publications were to occur.  This agreement gave these conspirators power to affirmatively misrepresent the results of the work at Saranac and also gave these conspirators power to suppress material facts included in this study.  On numerous occasions thereafter, the conspirators exercised their power to prevent Saranac scientists from disclosing material scientific data resulting in numerous misstatements of fact being made about scientific data resulting in numerous misstatements of fact being made at scientific meetings.

11

E.   On November 11, 1948, representatives of the following conspirators met at the headquarters of Johns-Manville Corporation:  American Brake Block Division of American Brake and Shoe Foundry, Gatke Corporation, Keasby & Mattison Company (then an alter-ego to conspirator Turner & Newall) Raybestos-Manhattan, Inc., Thermoid Company (whose assets and liabilities were later purchased by H. K. Porter Company), Union Asbestos and Rubber Company, and U. S. Gypsum Company.  U. S. Gypsum did not send a representative to the meeting, but instead authorized Vandiver Brown of Johns-Manville to represent its interest at the meeting and to take action on its behalf.

F.   At this November 11, 1948, meeting, these Defendants and their representatives decided to exert their influence to materially alter and misrepresent material facts about the substance of research started by Dr. Leroy Gardner at the Saranac Laboratories beginning in 1936.  Dr. Gardner's research involved the carcinogenicity of asbestos in mice and also included an evaluation of the health effects of asbestos in humans with a critical review of the then-existing standards of dust exposure for asbestos and asbestos-containing products.

G.   At this meeting, the Defendants intentionally and affirmatively determined that Dr. Gardner's work should be edited to specifically delete material facts about the cancer-causing propensity of asbestos and the health effects of asbestos on humans and the critique of the dust standards and then published it in the medical literature as edited by Dr. Arthur Vorwald.  The acts of these Defendants were carried out by co-conspirator Defendant Met Life's agent, Dr. Lanza.  These Defendants thereby fraudulently misrepresented the risks of asbestos exposure to the public in general and the class of persons exposed to asbestos, including the Plaintiffs and Plaintiffs' decedents.  .

H.   As a direct result of the influence exerted by the above-described conspirators, Dr.

Vorwald published Dr. Gardner's edited work in January, 1951, in the <u>Archives of Industrial Hygiene and Occupational Medicine</u> (Vol. 3, No. 1), a journal of the American Medical Association.  The published version stressed those portions of Gardner's work that the conspirators wished stressed, but omitted references to cancer, to human asbestosis, and to the inadequacy of the then-established threshold limit values (TLVs).  Furthermore, that article made a false claim that the published report was the "complete survey" of Dr. Gardner's work.  The Defendants thereby fraudulently, affirmatively, and deliberately disseminated this misleading Dr. Vorwald publication to university libraries, government officials, medical doctors, agencies, the public, and others.

     I.  Such action constituted a material affirmative misrepresentation of the total context of material facts involved in Dr. Gardner's work and resulted in creating an appearance that inhalation of asbestos was less of a health problem than Dr. Gardner's unedited work indicated.

     J.  The following conspirators and others were members of the trade association known as Quebec Asbestos Mining Association:  Johns-Manville Corporation, Carey-Canada (individually and as successor to Quebec Asbestos Corporation), Rapid American Corporation (successor to Philip Carey and Quebec Asbestos Corporation, National Gypsum Company (n/k/a/ Asbestos Claims Management Corporation), and Turner & Newall (individually and successor to Bell Asbestos).  The members of Q.A.M.A. participated in the above-described misrepresentation of the work of Dr. Gardner published by Dr. Vorwald in the <u>AMA Archives of Industrial Health</u> in 1951.  Evidence of the Q.A.M.A., as well as correspondence from co-conspirators, indicates close monitoring of the editing process of Q.A.M.A.'s representative, Ivan Sabourin, acting on behalf of all Q.A.M.A.'s members.

     K.  Defendants who were members of the Q.A.M.A. began, on or about 1950, to

formulate a plan to influence public opinion about the relationship between asbestos and cancer by influencing the medical literature on this subject and then touting and disseminating this literature to the public and to organizations and legislative bodies responsible for regulatory controls of asbestos with the specific intent of misrepresenting the existing scientific information and suppressing contrary scientific data in their possession and control.

L.  This plan of misrepresentation and influence over the medical literature began on or about 1950 when the Q.A.M.A. members selected Saranac Laboratories to do an evaluation of whether cancer was related to asbestos.  After a preliminary report authored by Dr. Vorwald in 1952 indicated that a cancer/asbestos relationship might exist in experimental animals, the Q.A.M.A. members refused to further fund the study and it was terminated and never publicly discussed.

M.  As a result of the termination of this study, these Defendants fraudulently withheld information from the public and affirmatively misrepresented to the public and responsible legislative and regulatory bodies that asbestos did not cause cancer, including affirmative misrepresentations by conspirators' agents Kenneth W. Smith, M.D., Paul Cartier, M.D., Arthur J. Vorwald, M.D., Anthony J. Lanza, M.D., Vandiver Brown, and Ivan Sabourin, said misrepresentations being directed to, inter alia, U. S. government officials, Canadian government officials, U. S. National Cancer Institute, other medical organizations, and the general public, including the Plaintiffs.

N.  Subsequently, the Q.A.M.A. Defendant conspirators contracted with the Industrial Hygiene Foundation (I.H.F.) and Dr. Daniel Braun to further study the relationship between asbestos exposure, asbestosis and lung cancer.  In 1957, Drs. Braun and Traun reported to the Q.A.M.A. that asbestosis did increase a worker's changes of incurring lung cancer.

O.  The Q.A.M.A Defendants thereafter caused, in 1958, a publication of work by

14

Braun and Traun in which the finding regarding increased incidence of cancer in persons with asbestosis was edited out by agents of the Q.A.M.A. The published version of this study contained a conclusion that asbestos exposure did not increase the incidence of lung cancer, a conclusion known by the Defendant conspirators to be patently false.

P.  By falsifying and causing publication of studies concluding that asbestos exposure did not cause lung cancer and simultaneously omitted a documented finding that asbestosis did increase the risk of lung cancer, the Q.A.M.A. Defendants affirmatively misrepresented to the public and concealed from the public the extent of risk associated with inhalation of asbestos fibers.

Q.  In approximately 1958, the Q.A.M.A. Defendants publicized the edited works of Drs. Braun and Traun at a symposium in an effort to fraudulently misrepresent to the public and persons exposed to asbestos that the inhalation of asbestos dust would not cause cancer.

R.  The fraudulent misrepresentation beginning in 1946, as elaborated above and continuing with the publication of the 1958 Braun/Traun study, influenced the standard set for the TLVs and inhibited the lowering of the threshold limit value due to the cancer risk associated with asbestos inhalation.

S.  In 1967, the Q.A.M.A. Defendants determined at their trade association meeting that they would intentionally mislead consumers about the extent of risk involved in inhalation of asbestos products.

T.  In 1952, a symposium regarding the health effects of asbestos was held at the Saranac Laboratories. The following conspirators were in attendance: Johns-Manville, Turner & Newall, Raybestos-Manhattan, and Q.A.M.A. members by way of their agents, Carier, Sabourin, and LeChance.

U.  At this meeting, the occurrence of lung cancer and asbestosis in product users

was discussed and the carcinogenic properties of all fiber types of asbestos were also discussed. In an affirmative attempt to mislead the public about the extent of health risks associated with asbestos, and in an effort to fraudulently conceal those risks from the public, these Defendants conspired to prevent publication of the record of the 1952 Saranac Symposium and it was not published. In addition, the conspirators induced Dr. Vorwald not to announce the results of his and Dr. Gardner's animal studies showing excess cancers in animals and thereby fraudulently misrepresenting existing data, albeit secret, that could not be publicized because of the secrecy provisions contained in the 1936 Saranac agreement required by the asbestos industry members.

V. The following conspirators were members of the Magnesia Insulation Manufacturers Association (MIMA): Philip-Carey Corporation (predecessors to Rapid American Corporation), Johns-Manville, and others.

W. In 1955, these conspirators caused to be published the MIMA 85% Magnesia Insulation Manual. This manual falsely and fraudulently misrepresented that asbestos-containing products offered no hazard to workers who used these products.

X. The following conspirators were members of the trade organization known as the Asbestos Textile Institute (ATI): Raybestos-Manhattan, Johns-Manville, H. K. Porter, Keasby & Mattison (individually and through its alter-ego Turner & Newall), National Gypsum (n/k/a Asbestos Claims Management Corporation), and others.

Y. In 1947, the members of the ATI, received a report from W.C.L. Hemeon regarding asbestosis that suggested re-evaluation of the then-existing TLVs for asbestos exposure. These Defendants caused this report not to be published and thereby fraudulently concealed material facts about asbestos exposure from the public and affirmatively misrepresented to the public and classes of persons exposed to asbestos that the then-existing TLV was acceptable. Thereafter, these

Defendant conspirators withheld additional material information on the dust standards from The American Conference of Governmental Industrial Hygienists (ACGIH), thereby further influencing evaluation of TLVs for asbestos exposure.

Z. In 1953, conspirator National Gypsum (n/k/a Asbsetos Claims Management Corporation), through its agents, in response to an inquiry from the Indiana Division of Industrial Hygiene regarding health hazards of asbestos spray products, refused to mail a proposed response to that division indicating that respirators should be worn by applicators of the products. National Gypsum's response distorted and fraudulently misrepresented the need for applicators of asbestos spray products to wear respirators and fraudulently concealed from such applicators the need for respirators.

AA. In 1955, conspirator Johns-Manville, through its agent Kenneth W. Smith, M.D., caused to be published in the AMA Archives of Industrial Health, an article entitled "Pulmonary disability in Asbestos Workers." This published study materially altered the results of an earlier study in 1949 concerning the same set of workers. This alteration of Dr. Smith's study consisted of a fraudulent and material misrepresentation about the extent of the risk associated with asbestos inhalation.

AB. In 1955, the National Cancer Institute held a meeting at which conspirators Johns Manville (individually and as an agent for other alleged co-conspirators) and Dr. Vorwald (as agent of co-conspirators) affirmatively misrepresented that there were no existing animal studies concerning the relationship between asbestos exposure and cancer when, in fact, the conspirators were in secret possession of several studies which demonstrated that positive evidence did exist.

AC. In 1957, the members of the ATI, jointly rejected a proposed research study on cancer and asbestos and this resulted in fraudulent concealment from the public of material facts

regarding asbestos exposure and also constituted an affirmative misrepresentation of the then-existing knowledge about asbestos exposure and lung cancer.

AD.   In 1964, the members of the ATI met to formulate a plan for rebutting the association between lung cancer and asbestos exposure that had been recently discussed by Dr. Irving J. Selikoff.   Thereafter, these members of the ATI embarked upon a campaign to further misrepresent the association between asbestos exposure and lung cancer.

AE.   In 1970, through their agents, Defendant The Celotex Corporation (predecessor of Rapid American Corporation) and Carey-Canada, affirmatively misrepresented that it had been in the asbestos business since 1918 and found no reported conditions of asbestosis or lung disease.   This constituted a fraudulent misrepresentation about the material facts known to these Defendants.

AF.   All conspirators approved and ratified and furthered the previous conspiratorial acts of conspirators Johns-Manville, Raybestos Manhattan, and Anthony J. Lanza, M.D., acting on behalf of Met Life, and all alleged co-conspirators during the relevant time period and circumstances alleged above, acted as agents and co-conspirators for the other conspirators.

AG.   Certain of the Defendants and/or co-conspirators, including but not limited to Westinghouse Electric Corporation, Met Life, Raybestos Manhattan, Johns-Manville, were members of the Industrial Hygiene Foundation ("IHF").   The IHF touted by its industry members as an independent research agency, was used by the members of the asbestos industry to suppress the truth about asbestos and generate misleading or false scientific publications.   For example, in the 1940's the IHF was contacted by the Asbestos Textile Institute to conduct a study on asbestos dust.   Mr. W. C. L. Hemeon, an industrial hygienist who worked for the IHF, completed the study and forwarded his report entitled <u>Report on Preliminary Dust Investigation for Asbestos Textile Institute</u> in June of 1947.   Mr. Hemeon's report indicated that workers exposed to less than the recommended threshold

limit value for asbestos were nonetheless developing disease. The IHF never published this study and, in doing so, acted to conceal the study from the general public, including asbestos-exposed workers.

AH. As discussed infra, the IHF also assisted in the Q.A.M.A. in the publication of the edited version of the Braun Traun report in 1958 which reported the conclusion, known to the IHF and its members to be false, that asbestos exposure did not increase the incidence of lung cancer.

AI. The activities of IHF and its members substantially assisted the co-conspirators by retarding the development of knowledge about the hazards of asbestos.

35. As a direct and proximate result of Met Life's intentional publication of deceptive and misleading medical data and information as described in the preceding paragraphs, and upon which the Plaintiffs and Plaintiffs' decedents and those charged with warning them reasonably relied, the Plaintiffs and Plaintiffs' decedents inhaled and otherwise were exposed to and ingested hazardous asbestos dust resulting in the injuries described above.

36. Additionally and alternatively, as a direct and proximate result of Met Life's actions and omissions as described above, the Plaintiffs and Plaintiffs' decedents were caused to remain ignorant concerning the danger of human exposure to asbestos, resulting in damage to the Plaintiffs and Plaintiffs' decedents by depriving the Plaintiffs and Plaintiffs' decedents, their employers, and the general public of opportunities to be aware of the hazards of asbestos exposure, and thus the opportunity to take proper safety precautions and/or avoid this exposure. Because of this ignorance and intentional failure to warn, the Plaintiffs and Plaintiffs' decedents inhaled, were exposed to, or otherwise ingested hazardous asbestos dust resulting in the injuries described above.

37. Met Life fraudulently concealed from the Plaintiffs and Plaintiffs' decedents the

19

alteration of its published test results, the actions and omissions and concerted design and conspiracy, all as described in the paragraphs above, until the Plaintiffs discovered said conduct following these diagnoses of asbestos-related injuries.

**WHEREFORE,** the Plaintiffs demand compensatory and punitive damages from Met Life and all of the other Defendants named herein, in sums to be determined at trial.

## COUNT FOUR

(Negligence as to PPG)

38. The Plaintiffs repeat and re-allege all of the allegations contained in all of the paragraphs above as if fully set forth herein.

39. Defendant, PPG Industries, Inc. (formerly known as Pittsburgh Plate Glass Company) (hereinafter, "PPG") is a corporation organized and existing under the laws of the State of Pennsylvania.

40. Defendant PPG is the parent corporation and owner of fifty percent (50%) of the stock of Pittsburgh Corning Corporation, a former manufacturer and marketer of asbestos-containing products including a product known as "Unibestos."

41. During the course of their employment the Plaintiffs herein were exposed to asbestos containing products manufactured by Pittsburgh Corning. Further, in many instances "secondary" exposure to the Plaintiffs would have occurred from Pittsburgh Corning asbestos products due to dust being carried away on clothing worn by Plaintiffs from work sites where Plaintiffs worked.

42. The Plaintiff exposure to and inhalation, ingestion or absorption of the asbestos fibers emanating from the above mentioned products was completely foreseeable and could or should have been anticipated by PPG, and in fact, was known by PPG to be occurring.

43. At all times relevant herein, Defendant PPG, through the conduct of its employees,

officers, and agents, was not a passive stockholding in Pittsburgh corning, but rather was an active participant in the affairs of Pittsburgh Corning, including the sale of Unibestos.

44. The active participation of PPG in the marketing and sale of Unibestos products included, but not limited to the following acts:

A.  Placing officers of PPG on the board of directors of Pittsburgh Corning, and through such officers permitting Pittsburgh Corning to manufacture a product known by PPG to be hazardous even before the product was added to the Pittsburgh Corning product line.

B.  Providing Pittsburgh Corning with medical information regarding the hazards which would be anticipated during the manufacture or use of Unibestos, which information demonstrated the product to be hazardous to human health, but failing to take reasonable steps to assure the public using such products would not be made sick or killed by the products.

C.  Through the action of Lee B. Grant, M.D., a Medical Director of PPG, falsely representing to the public Unibestos was not hazardous, and otherwise downplaying the known hazards associated with asbestos exposure.

D.  Through the legal department of PPG, advising Pittsburgh Corning not to label Unibestos as a product hazardous to health.

E.  Through the industrial hygiene department of PPG, failing to render proper advice to protect employees of Pittsburgh Corning, or workers such as Plaintiffs who would be exposed to Pittsburgh Corning products.

F.  PPG through Dr. Lee B. Grant, further took actions to permit the continued sale of Unibestos including filing a false affidavit in support of a variance so manufacture of Unibestos could continue.

G.  That PPG through its employees and agents further participated in the internal

21

operations of the Pittsburgh Corning Plants, including advising Pittsburgh Corning on product hazard matters.

H.  That through the actions of Dr. Lee B. Grant, in conjunction with activities of the National Insulation Manufacturing Association, PPG participating in industry efforts to downplay the enormous hazards of asbestos insulation products generally to the public.

45.  That PPG was not a passive investor in Pittsburgh Corning but was a participant in actions regarding both the internal plant activities of Pittsburgh Corning and the marketing of Unibestos to the public.  That through aid undertaking, the PPG created and assumed a duty to Plaintiffs who would come in contact with the asbestos products manufactured by Pittsburgh Corning, and has breached that duty.

46.  Defendant PPG created a dangerous, harmful and potentially deadly situation by not sharing its data on the dangers of asbestos exposure with those reasonably likely to be exposed, such as Plaintiffs.

47.  In addition to the actions above, PPG failed to exercise ordinary care and breached a duty to Plaintiffs in one or more of the following respects:

A.  Failing to act reasonably with regards to the information it possessed concerning the hazards of exposure to asbestos;

B.  Failing to share its data on the dangers of asbestos exposure with those likely to be exposed, such as the decedent;

C.  Concealing the information it possessed about the hazards of asbestos from those reasonably likely to be exposed such as the decedent;

D.  Failing to take steps to assure that Pittsburgh Corning would place warnings

on asbestos-containing products when it knew or should have known of the danger of said asbestos exposure, and of the foreseeability of such usage by parties such as the decedent.

## COUNT FIVE

(Tortious Interference with Prospective Civil Action by Negligent Spoliation of Evidence)

48. Plaintiffs repeat and re-allege all of the allegations contained in all of the paragraphs as if fully set forth herein.

49. That PPG has, or had, in its control the following documentary evidence:

A. the personnel file of Dr. Lee B. Grant;

B. the original files of the PPG medical department as maintained by Dr. Lee B. Grant relating to Unibestos operations; and

C. other documents relevant to the underlying conduct of PPG and Pittsburgh Corning regarding the manufacture, sale, and marketing of Unibestos.

50. That following the first suit against Pittsburgh Corning regarding Unibestos PPG knew, or should have known, that:

A. there existed other and further potential civil actions in Unibestos;

B. such aforementioned documentary evidence would be essential proof in any prospective civil action against PPG brought by Plaintiffs alleging injury caused by Unibestos.

51. That PPG was under a duty to preserve and maintain such aforementioned evidence.

52. That PPG, and/or its authorized agents, did not use ordinary care and breached aforesaid duty by negligently concealing, losing, destroying or otherwise disposing of the aforementioned documentary evidence.

53. Alternatively, that PPG did not use ordinary care and breached aforesaid duty by

negligently adopting a corporate policy that caused or allowed the destruction or disposal of the aforementioned documentary evidence.

54. That said negligent concealment, loss, destruction, or otherwise disposal of said documentary evidence caused damage to Plaintiffs in the form of significant prejudice of Plaintiffs' opportunity to prove, and hence obtain compensation for, their injuries.

## COUNT SIX

(Tortious Interference with Prospective Civil Action by Intentional Spoliation of Evidence)

55. Plaintiffs repeat and re-allege all of the allegations contained in all of the paragraphs above as if fully set forth herein.

56. That PPG has, or had, in its control the following documentary evidence:

A. the personnel file of Dr. Lee B. Grant;

B. the original files of the PPG medical department as maintained by Dr. Lee B. Grant relating to Unibestos operations; and

C. other documents relevant to the underlying conduct of PPG and Pittsburgh Corning regarding the manufacture, sale, and marketing of Unibestos.

57. That following the first suit against Pittsburgh Corning regarding Unibestos PPG knew, or should have known, that:

A. there existed other and further potential civil actions in Unibestos;

B. such aforementioned documentary evidence would be needed by Plaintiffs alleging injury caused by Unibestos; and

C. such aforementioned documentary evidence would be essential proof in any prospective civil action against PPG brought by Plaintiffs alleging injury caused by Unibestos.

58. That PPG, and/or its authorized agents, willfully, wrongfully, and intentionally, and

24

with conscious disregard of the probable serious harm to future Plaintiffs, and with malice and reckless indifference for the injurious consequences of its acts, or its authorized agents' acts, concealed, lost, destroyed, or otherwise disposed of the aforementioned documentary evidence.

59. Alternatively, that PPG willfully, wrongfully, and intentionally, and with conscious disregard of the probable serious harm to future Plaintiffs, and with malice and reckless indifference for the injurious consequences of its acts, adopted a corporate policy that caused or allowed the destruction or disposal of the aforementioned documentary evidence.

60. That said willful, wrongful, and intentional concealment, loss, destruction, or otherwise disposal of said documentary evidence caused damage of Plaintiffs in the form of significant prejudice of Plaintiffs' opportunity to prove, and hence obtain compensation for, their injuries.

## COUNT SEVEN

61. Plaintiffs repeat and re-allege all of the allegations contained in all of the paragraphs above as if fully set forth herein.

62. PPG undertook through its agents, Richard Packard, Lee B. Grant, Clyde Ruddick, J. E. Morrison, Robert E. Sourwine, and John O'Conner to render product hazard, industrial hygiene, labeling and legal advice to Pittsburgh Corning.

63. PPG did or reasonably should have recognized that this undertaking was necessary for the protection of third parties, such as Plaintiffs herein.

64. That PPG breached its duty to Plaintiffs herein by failing to exercise reasonable care to protect them from, or to warn them of, the health hazards of asbestos exposure.

65. The conduct of PPG in incompetently rendering such aid and assistance to Pittsburgh Corning further increased and contributed to harm caused the Plaintiffs, and PPG is liable therefore.

## COUNT EIGHT

66. Plaintiffs repeat and re-allege all of the allegations contained in all of the paragraphs above as if fully set forth herein.

67. Defendant PPG acting in concert with Pittsburgh Corning, and in concert with others, knowingly agreed, and conspired to fraudulently conceal the hazards of Unibestos products specifically, and asbestos products generally, knowing that such concealment wold result in injury to the Plaintiffs.

68. That the agreement to conceal the hazards, is demonstrated by actions, including but not limited to the following:

A.  Employing Dr. Lee B. Grant to assure customers Unibestos did not cause disease, when in fact both PPG and Pittsburgh Corning knew the product was potentially deadly;

B.  Using joint legal counsel from PPG to assist in the decision not to label or delay labeling Unibestos as a potentially deadly product; and

C.  Using Dr. Lee B. Grant to delay government action ultimately resulting in the closure of the Unibestos operations.

## COUNT NINE

(Aiding and Abetting Another's Tortious Conduct)

69. Plaintiffs repeat and re-allege all of the allegations contained in all of the paragraphs above as if fully set forth herein.

70. That PPG aided and abetted the tortious conduct of Pittsburgh Corning in the manufacture, sale, and/or use of Unibestos by giving substantial assistance and encouragement to Pittsburgh Corning, and such substantial assistance and encouragement included, but was not limited to, the following acts:

26

A.  Placing officer of PPG on the board of directors of Pittsburgh Corning, and through such officers permitting Pittsburgh Corning to manufacture and sell a product known by PPG to be hazardous, with said product's hazardous nature known to PPG prior to its addition to the Pittsburgh Corning product line;

B.  The provision by PPG to Pittsburgh Corning of medical information regarding the hazards which could and would be anticipated during the manufacture and/or use of Unibestos, said information demonstrating the product to be hazardous to human health, and failing to take reasonable steps to assure persons coming in contact with said product would not be sick or killed by said product;

C.  Falsely representing to the public, through the actions of Dr. Lee B. Grant, Medical Director of PPG, that Unibestos was not hazardous and otherwise downplaying or minimizing the known hazards associated with asbestos exposure in general and Unibestos exposure in particular.

D.  Through the legal department of PPG, advising Pittsburgh Corning not to label Unibestos as a product hazardous to health, or advising that labeling should be delayed;

E.  Through the industrial hygiene department of PPG, failing to render proper advice to protect employees of Pittsburgh Corning, or workers such as Plaintiffs, who would be exposed to Pittsburgh Corning products such as Unibestos;

F.  Through Dr. Lee B. Grant, further taking actions to permit the continued sale of Unibestos, including the filing of a false affidavit in support of a variance so that manufacture of Unibestos could continue;

G.  PPG, through its employees and agents further participated in the internal

operations of Pittsburgh Corning plants, including advising Pittsburgh Corning of product hazard

matters; and

H.  PPG, through the actions of its representative Dr. Lee B. Grant, and in

conjunction with National Insulation Manufacturing Association, participated in industry efforts to

downplay the hazards of asbestos insulation products in general to the public.

71.  That PPG was at all times during Pittsburgh Corning's alleged tortious conduct, that

is, the manufacture, marketing, and sale of Unibestos, and other allegations contained herein, closely

involved and an active participant in the internal activities of Pittsburgh Corning.

72.  That PPG had through its close involvement and active participation in the internal

activities of Pittsburgh Corning, its seats on the Pittsburgh Corning board of directors, and its fifty

percent (50%) ownership of Pittsburgh Corning, at all times an ongoing relationship with Pittsburgh

Corning.

73.  That PPG knew or should have known, and in fact intended that, its involvement in

the internal workings of Pittsburgh Corning, would substantially assist and encourage Pittsburgh

Corning's course of conduct regarding the manufacture, sale, and/or marketing of Unibestos.

74.  That it was reasonably foreseeable that PPG's substantial assistance and

encouragement of Pittsburgh Corning's course of conduct regarding the manufacture, sell, and/or

market Unibestos and create a dangerous, harmful, and potentially deadly situation leading to

injurious health consequences to Plaintiffs.

75.  Pittsburgh Plate Glass Co. (PPG) engaged in a joint venture with Pittsburgh Corning

concerning the design, manufacture and marketing of Pittsburgh Corning asbestos containing

products.  PPG provided advice, assistance and aided and abetted Pittsburgh Corning in designing and

manufacturing dangerous asbestos products and participated in the failure to warn of the dangerous

28

nature of the products as well as the concealment of the dangers associated with Pittsburgh Corning's asbestos products. Both PPG and Pittsburgh Corning exercised control of the design, manufacture and marketing of Pittsburgh Corning's asbestos containing products and both are jointly and severally liable for injuries and damages caused by said products. PPG is therefore liable to the Plaintiffs as a joint tortfeasor.

All of the aforesaid allegations set forth in Counts FOUR, FIVE, SIX, SEVEN, EIGHT and NINE evidence a conscious, deliberate, and common plan by Pittsburgh Corning and PPG to commit tortious acts and constitute legal wrongs, separately and jointly, which caused damages to Plaintiffs legally cognizable at law, and Plaintiffs demand compensation, including punitive damages, interest and costs, for same.

## COUNT TEN

### (Negligence as to Owens-Illinois)

76. Plaintiffs repeat and re-allege all of the allegations contained in all of the paragraphs above as if fully set forth herein.

77. The injuries and damages complained of herein were directly and proximately caused by the acts and omissions of the Defendants.

78. Defendants knew, or in the exercise of ordinary or reasonable care ought to have known, that the products they sold were poisonous and highly harmful to the Plaintiffs' health notwithstanding which:

      A. Defendants negligently failed to take any reasonable precautions or exercise reasonable care to warn the Plaintiffs of the danger and harm to which they were exposed while handling working around Defendants' products;

      B. Defendants failed to provide Plaintiffs with knowledge of reasonable, safe,

sufficient apparel and/or proper protective equipment and appliances, if any existed, to protect Plaintiffs from being poisoned and disabled by Defendants' products;

       C.  Defendants negligently and carelessly packaged said products so that in the ordinary handling of the installation, Plaintiffs came in contact with the asbestos dust and fibers contained in Defendants' products;

       D.  Defendants negligently failed to take reasonable care to warn Plaintiffs of said danger and to instruct Plaintiffs in the proper handling of the products, or to take any reasonable precautions or exercise any reasonable care to protect Plaintiffs from harm;

       E.  Defendants negligently failed to adopt and enforce a reasonable safe plan or method or handling and installing their products;

       F.  Alternatively, Defendants failed to test the products to determine the dangerous nature of the products or to review the available literature to determine the products dangerous nature;

       G.  Those Defendants, if any, who conducted tests or studies to determine the dangerous nature of their product negligently, willfully, intentionally, and in utter disregard for the well being of third parties including, but not limited to, Plaintiffs and various Defendants named herein, disregard, hid, ignored, and/or failed to disclose the negative results of said tests and studies which indicated the dangerous nature of their product, in that said product was unreasonably dangerous and/or defective in design; and

             i.  Specifically, but not limited to, Owens-Illinois, Inc., conducted Tests and studies which clearly showed the dangerous nature of their product, and that said product was unreasonably dangerous and/or

defective in design, yet continued to market said product without warning and/or without adequate warning.

ii. Specifically, Owens-Illinois, Inc., sold their entire product line to the named Defendant, Owens Corning-Fiberglass Corporation, and negligently, willfully, intentionally, and in utter disregard for the well being of third parties, disregarded, ignored, and/or failed to disclose that said product was unreasonably dangerous and defective in design, thereby making Owens-Illinois, Inc., jointly liable for any sales by Owens-Corning Fiberglass Corporations of the unreasonably dangerous and/or defectively designed product purchased from Owens-Illinois, Inc.

H. Defendants failed to develop asbestos free products.

### COUNT ELEVEN

(Damages)

79. The Plaintiffs repeat and re-allege all of the allegations contained in all of the paragraphs above as if fully set forth herein.

80. As a direct and proximate result of all the Defendants' breaches of their duties to the Plaintiffs or Plaintiffs' decedents as delineated in all Counts above, the Plaintiffs or Plaintiffs' decedents have sustained the asbestos-related injuries, diseases, illnesses and/or conditions set forth above together with pain and suffering, the past, present and future need of medical treatment, medical expenses, together with past, present and future disability, impairment of wage-earning capacity, lost wages, and a diminution in quality and enjoyment of life, which includes mental anguish, fear, and severe emotional distress associated with knowing that there is no cure for these

31

diseases and illnesses. In addition thereto each of the non-malignant Plaintiffs live in the constant fear of contracting cancer or mesothelioma for which Plaintiffs are entitled to recover damages from the Defendants named herein.

81. With respect to deceased Plaintiffs, Plaintiffs allege that they are entitled to all remedies and damages provided by the Mississippi Wrongful Death laws as set forth in Mississippi Code Annotated § 11-7-13 (1972 as amended), or other applicable laws of the State of Mississippi or applicable laws of other States or alternatively are entitled to damages for all injuries described above in their lifetimes.

82. In breaching their duties to the Plaintiffs, as described above, the Defendants have acted intentionally, with reckless disregard for the rights of others and with gross negligence, maliciously and/or wantonly in that the Defendants knew or should have known through data available to them that asbestos was inherently and extraordinarily dangerous if used in the manner intended or foreseen by the Defendants, and that their aforesaid breaches of duty would result in the injuries set forth herein and damages to the Plaintiffs and Plaintiffs' decedents, thus entitling the Plaintiffs to recover punitive or exemplary damages for the Defendants' intentional, reckless and outrageous conduct as set forth herein.

**WHEREFORE**, the Plaintiffs demand judgment against all Defendants, jointly, severally, and collectively, for compensatory and punitive damages in an amount to be determined by a jury, for pre-judgment interest from the date of the filing of the original Complaint and post-judgment interest, costs and such other general and further relief as may be deemed just and appropriate.

DATED this the _3_ day of _April_ , 2002.

Respectfully submitted,

Ralph Chapman
Counsel for Plaintiff

Prepared By:

Ralph Chapman
P. O. Box 428
Clarksdale, MS  38614
Telephone:      (662) 627-4105
Facsimile:      (662) 627-4171

G. Patterson Keahey
Law Offices of G. Patterson Keahey, Jr., P.C.
One Independence Plaza
Suite 814
Birmingham, Alabama  35209
Telephone:      (205) 871-0707
Facsimile:      (205) 871-0801

AMENDED EXHIBIT "A"

| LAST NAME | FIRST NAME | SSN |
|---|---|---|
| MANGIALARDI | FLOWER | 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 |
| BINGHAM | MAX | 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 |
| JOHNSON | DORA | 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 |
| LEWIS | CHARLES | 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 |
| STROTTER | GLORIA | 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 |
| Acron | Oscar L. W. | 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 |
| Anderson | Herman D. | 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 |
| Austin | Paul R. | 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 |
| Baker | Upton | 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 |
| Barnett | Doyce J. | 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 |
| Baxter | Johnnie L. | 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 |
| Beauford | Otis | 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 |
| Beevers | Joe | 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 |
| Blumberg | Robert H. | 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 |
| Bordonaro | Michael | 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 |
| Brackin | John | 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 |
| Broadway | Bobby L. | 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 |
| Burks | Earl B. | 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 |
| Buttram | John T. | 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 |
| Cantrell | Austin M. | 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 |
| Cole | Clarence E. | 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 |
| Collins | Joe H. | 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 |
| Daniel | Wade | 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 |
| Davis | John H. | 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 |
| Douglas | Robert (Mick) | 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 |
| Ellis | Robert A. | 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 |
| Faulkner | James R. | 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 |
| Fisher | Chauncey M. | 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 |
| Flanagan | Lucille | 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 |
| Freeman | Warnie | 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 |
| Fuger | Allen | 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 |
| Giaccaglia | David | 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 |
| Grainger | William | 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 |
| Gray | James F. | 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 |
| Griffin Jr. | Nathaniel | 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 |
| Hardwick | Arlin R. | 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 |
| Hart | Donnie | 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 |
| Hodge | Willie E. | 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 |

| | | |
|---|---|---|
| Hodges | John K. | 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 |
| Hoover | Jack D. | 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 |
| Hull | Truman | 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 |
| Hymas | N. Ray | 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 |
| Ikard | Gerald K. | 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 |
| Jackson | Horace | 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 |
| Johnson | Mary A. | 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 |
| Johnson | Ray C. | 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 |
| Jones | Thomas E. | 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 |
| Kelly | Johnnie | 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 |
| Knighten | Alice | 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 |
| Koger | Nancy A. | 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 |
| Lovell | Benjamin | 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 |
| Lowman | Johnny | 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 |
| Martin | Earnest Jr. | 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 |
| Maxey | John D. | 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 |
| McCaa | Frank | 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 |
| McGee | Jimmy L. | 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 |
| McKelvey | Roy | 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 |
| Mendal | Donald P. | 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 |
| Moody | Paul O. | 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 |
| Murphy | Kenneth D. | 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 |
| New | William | 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 |
| O'Hara | Dennis F. | 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 |
| Parham | Earl | 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 |
| Patterson | Jimmy | 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 |
| Pope | John | 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 |
| Prater | Haskel Jr. | 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 |
| Puckett | Billy M. | 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 |
| Puckett | Libby J. | 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 |
| Richardson | John Jr. | 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 |
| Ring | Leonard, Sr. | 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 |
| Russell | Arthur L. | 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 |
| Rutledge | Herbert Jr. | 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 |
| Salva Jr. | Alexander | 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 |
| Scruggs | Henry Sr. | 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 |
| Shelton | Hillard | 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 |
| Smith | Greely | 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 |
| Thompson | William D. | 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 |
| Tinker | Johnnie B. | 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 |
| Utley, Jr. | John | 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 |

| | | |
|---|---|---|
| Versell | Tommy L. | 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 |
| Voss | Charles | 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 |
| Wells | Dan | 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 |
| Wells | Wyatt D. | 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 |
| Wicks | Robert W. | 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 |
| Williams | Andrew | 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 |
| Wilson | Lee R. | 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 |
| Wilson | Loyd F. | 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 |
| Woods | Owen D. | 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 |
| Noland | James | 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 |
| Smith | Terry D. | 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 |
| Nelson | John T. | 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 |
| Grant | Billy G. | 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 |
| Renfer | Franklin | 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 |
| Hill | William Sr. | 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 |
| Willingham | Lee A. | 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 |
| Warren | Billy Joe | 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 |
| Burgin | Troy | 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 |
| McGregor | Howard | 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 |
| Caldwell | Wilson A. | 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 |
| Howington | Richard W. | 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 |
| Kelly | Elijah | 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 |
| Dillingham | Walter | 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 |
| Platt | Ronald L. | 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 |
| James | Walter | 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 |
| Gwyne | Willie J. | 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 |
| Hill | James R. | 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 |
| See | Hershal | 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 |
| Strickland | John | 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 |
| Jackson | Horace C. | 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 |
| Ballard | Joe Lee | 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 |
| Snow | James R. | 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 |
| Alvis | Wendall | 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 |
| Baird | John H. | 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 |
| Gist | Jack | 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 |
| Spears | Billy W. | 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 |
| Swann | Herman | 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 |
| Taylor | Gerald | 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 |
| Thorn | Willie | 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 |
| Harrison | James V. Sr. | 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 |
| Hale | Richard | 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 |

| Hudnall | Rehon | 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 |
|---|---|---|
| Oden | Jerry | 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 |
| Wallace | James L. | 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 |
| Hicks | John | 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 |
| Simpson | Albert | 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 |
| Davis | John W. | 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 |
| Bale | Lazelle F. | 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 |
| Cash | Howard E. | 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 |
| Howell | Finis | 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 |
| Dodd | Herschel | 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 |
| Klemm | Jerry | 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 |
| Frazier | Charles A. | 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 |
| Gilbert | John | 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 |
| Lovell | John | 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 |
| Patton | Richetta | 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 |
| Payne | Loyal P. | 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 |
| Stuart | Mike | 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 |
| Green | Timothey | 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 |
| Miller | Jerry | 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 |
| Watson | Isaac | 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 |
| Battle | Armetter | 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 |
| Brannock | Therrell N. | 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 |
| Brown | Matthew | 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 |
| Goodson | Robert | 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 |
| Jones | Robert L. Sr. | 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 |
| Nelson | Ulysses | 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 |
| Rice | Tony | 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 |
| Skelton | Walter G. Sr. | 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 |
| Williams | James | 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 |
| Crutchfield | John T. | 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 |
| Langston | Odell | 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 |
| Smart | Emmit | 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 |
| Smith | Paul Jr. | 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 |
| Stanton | Paul | 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 |
| Wallace | James C. | 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 |
| McBrayer | Oits | 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 |
| Willis | Maricus | 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 |
| Boswell | Edgar | 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 |
| Hammon | Robert | 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 |
| Hancock | James | 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 |
| Herring | James | 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 |

| Sellers | James | 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 |
|---|---|---|
| Roland | Hamlin | 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 |
| Spencer | Cardell | 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 |
| Keeton | Marlin | 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 |
| Reed | Margarette | 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 |
| Williams | J.C. | 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 |
| Smith | Henry | 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 |
| Benford | Gregory | 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 |
| McDaniel | Emmett | 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 |
| Martin | Willie | 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 |
| Johnson | Wilbert | 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 |
| Vick | A.R. | 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 |
| Robbs | Carl | 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 |
| Williams | Joseph | 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 |
| Brown | James | 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 |
| Mecke | Frank | 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 |
| Byxbe | Ethel | 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 |
| Murks | Novice | 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 |
| Timberlake | Herbert | 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 |
| Heard | Dexter | |
| Lujan | Patty | 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 |
| Hughes | Katheree | 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 |
| Wells | Harold | 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 |
| Edwards | James, Jr. | 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 |
| Tidwell | Ollie | 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 |
| Hall | A.B. | 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 |
| Brown | Willie | 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 |
| Gravette | Robert | 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 |
| Walker | Roy | 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 |
| Barnett | William | 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 |
| Andrews | Ralph | 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 |
| Bethea | Cade | 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 |
| Young | Frank | 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 |
| Sims | Billy | 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 |
| Pendley | R.E. | 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 |
| Moore | Thomas | 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 |
| Hazel | William | 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 |
| Martinez | Thomas | 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 |
| Dease | Marshall | 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 |
| Morris | George | 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 |
| Plaxico | Sally | 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 |

| Powell | Bessie | 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 |
|---|---|---|
| Matthews | Pearl | 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 |
| Walker | Willie | 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 |
| McLain | Charles | 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 |
| Kalagin | Sam | 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 |
| Bowen | Winfield | 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 |
| Sias | Willie | 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 |
| Craddock | Jerry | 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 |
| Clegg | Larry | 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 |
| Killingsworth | Robert L. | 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 |
| Hite | Hattie | 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 |
| Fulton | Katherine | 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 |
| Stone | Allen L. | 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 |
| Pierce | Lonnie | 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 |
| Stone | William | 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 |
| Brackin | John W. | 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 |
| Morris | George L. | 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 |
| Smith, Jr. | Raymond L. | 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 |
| Lard | William T. | 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 |
| Whitted | John E. | 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 |
| Keith | Ether Jessie | 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 |
| Zills | Wallie | 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 |
| Halcomb | Chirley H. | 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 |
| Brunson | Forest Hill | 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 |
| Winston | Florence | 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 |
| Martin, Jr. | Ernest | 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 |
| Boyd | Henry | 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 |
| Rodgers | Larry | 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 |
| Johnson | Richard Raiford | 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 |
| Ainsworth | Atha | |
| McKissick | Amos | 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 |
| Ozbirn | Hilton | 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 |
| Killingsworth | Robert L. | 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 |
| Elliott | Jeanette | 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 |
| Traffanstedt | Joe Van | 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 |
| Kimbrough | Kenneth W. | 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 |
| Lund | Sharon | 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 |
| | | |
| Adamson | John H. | 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 |
| Peters | Glenn L. | 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 |
| Miller | Franklin W. | 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 |

| | | |
|---|---|---|
| Johnson | Willie M. | 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 |
| Jones | Jessie | 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 |
| Horton | Lester | 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 |
| Byers | Leroy | 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 |
| Smith | William C. | 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 |
| Smith | Jasper | 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 |
| Williams | James E. | 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 |
| Abernathy | Frank | 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 |
| Walker | Earnest | 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 |
| Peebles | Robert | 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 |
| Howell | Finis A. | 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 |
| Knox | Aurther | 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 |
| Benson | Modell | 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 |
| Stuart | Mike | 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 |
| Yengich | Ronald | 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 |
| Stoor | John | 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 |
| Gilbert | John | 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 |
| McKinney | Clayton | 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 |
| Robinson | Margaret | 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 |
| Phillips | Jay | 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 |
| Robinson | Ray | 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 |

AMENDED EXHIBIT "B"

Harold's Auto Parts, Inc.
Registered Agent:  Harold Register
502 North Main
P. O. Box 756
Rosedale, MS  38769

McKay's Furniture and Appliance
Registered Agent:  Carrie Estes
Highway 1 South
P. O. Box 129
Rosedale, MS 38769

JANTRAN, Inc.
Registered Agent:  Thomas B. Janoush
351 Cotton Row
P.O. Box 1448
Cleveland, MS 38732-1448

John S. Ferretti Building Materials
President:  John A. Letchworth
800 Beale Street
Shelby, MS  38774

West Implement Company
Registered Agent:  AC West
601 Sunflower Road
Cleveland, MS  38732

Flemming Lumber Company
Registered Agent:  Marion Jordan
224 N. Sharpe Street
Cleveland, MS  38732

Abney Mills
Through their Agent for Service of Process:  Paul Carter
Puckett Ferry Road
Greenwood, SC  29648

AC & S (Armstrong Contracting Supply Corp.)
A Delaware Corporation
Through its Agent: C. T. Corporation System

350 N. St. Paul, Suite 2900
Dallas, Texas 75201

Albany International
C/O its Registered Agent:  C.T. Corporation System
8550 United Plaza Blvd.
Baton Rouge, LA  70809

American Standard
123 East Ford Street
Ridgeland, MS  39157

Anchor Packing Company
A Delaware Corporation
C/O Its Registered Agent: The Corporation Trust Co.
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

AstenJohnson, Inc. f/k/a Astens Group, Inc. f/b/a/ Asten, Inc.
C/O its Registered Agent: Prentice Hall Corporation System
506 S. President Street
Jackson, MS 39205

Asten Johnson, Inc.
C/O its Registered Agent:  William Finn
Highway 15 North
Walterboro, SC  29488

A.W. Chesterton Company
A Massachusetts Corporation
Route 93, Middlesex Industrial Park
Stoneham, MA 02182
or C/O Its Registered Agent
225 Fallon Road
Stoneham, MA 02180

Asarco
C/O Its Registered Agent: The Corporation Company
2000 Interstate Park Dr. Suite 204
Montgomery, AL 36109

Asten-Hill
A Delaware Corporation

1635 Market Street, Suite 1120
Philadelphia, PA 19103

Brandon Drying Fabrics, Inc.
F/K/A Brandon Sales Co., Inc.
Through their agent for service of process:  Corporation Trust Company
1209 Orange Street
Wilmington, DE  19801

Brasa, Inc.
Through their agent for service of process:  Paul J. Carter
Jordan Street
Greenwood, SC  29648

Carey Manufacturing Company
C/O The McCrory Corporation
1700 Broadway
New York, NY 10019

Carborundum
A New York Corporation
C/O Its Registered Agent: Prentice-Hall Corporation System, Inc.
80 State Street
Albany NY 12207

C.E. Thurston and Son, Inc.
C/O William W. Nexsen, Esq.
Stackhouse, Smith & Nexsen
P. O. Box 3640
Norfolk, VA  23510

Certainteed Corporation
A Delaware Corporation
C/O Its Registered Agent: The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Champion International Corp.
C/O Susan Jackson
Corporate Legal Affairs
1 Champion Plaza
Stamford, CT 06921

Cleaver Brooks Co.
C. T. Corporation Systems
631 Lakeland East Drive
Flowood, MS 39208

Cleaver-Brooks Company, Inc.
C/O Its Registered Agent: Ronald G. Thimm
7800 North 113th Street
Milwaukee, WI 53201

Combustion Engineering, Inc.
A Delaware Corporation
C/O Its Registered Agent: C. T. Corporation Systems
631 Lakeland Drive East
Flowood, MS 39208

Congoleum Corporation (f/k/a/ Congoleum Nairn, Inc.)
A Delaware Corporation
861 Sloan Avenue
Trenton, NJ 09619

Cooper Industries
C/O Its Registered Agent: C. T. Corporation Systems
631 Lakeland Drive East
Flowood, MS 39208

Crown, Cork, & Seal
As Successor-in-interest to Mundet Cork Corp.
A New York Corporation
Through its Registered Agent: C. T. Corporation Systems
631 Lakeland Drive East
Flowood, MS 39208

Dana Corporation
C/O Its Registered Agent: The Corporation Company
2000 Interstate Park Dr. Suite 204
Montgomery, AL 36109

Ferodo American
A Delaware Corporation
1 Grizzly Lane
Smithville, TN 3766

Ferro Engineering, f/k/a Oglebay Norton Company
C. T. Corporation System

631 Lakeland East Drive
Flowood, MS 39208

Fibreboard Corporation
22 Battery Street
San Francisco, CA 94900

The Flintkote Company
A Delaware Corporation
C/O Its Registered Agent:  The Corporation Trust Company
Corporate Trust Center
1209 Orange Street
Wilmington, DE   19801

Foster-Wheeler Corporation
United States Corporation Co.
506 South President Street
Jackson, MS 39201

Garlock, Incorporated
An Ohio Corporation
C/O Its Registered Agent: C. T. Corporation Systems
815 Superior Avenue N. E.
Cleveland, OH 44114

General Refractories
A Pennsylvania Corporation
225 T City Avenure
Bala Cynwyd, PA 19406
Or 2661 Audubon Road
King of Prussia, PA 19406

Georgia-Pacific Corporation
A Georgia Corporation
C/O Its Registered Agent: C. T. Corporation Systems
621 Lakeland Drive East
Flowood, MS 39208

Goodyear Tire and Rubber Co.
C/O Its Registered Agent: C. T. Corporation Systems
621 Lakeland Drive East
Flowood, MS 39208

Gulf Belting & Gasket Company, Inc.
A Louisiana Corporation

C/O Its Registered Agent: Theodore J. Bourgeois
4612 Jeanette Drive
Metairie, LA 70003

Gulf Coast Marine Supply Company
An Alabama Corporation
C/O Its Registered Agent: Gordon U. Sanford, Jr.
Bayou Casotte Road (a/k/a Industrial Road)
P. O. Box 1117
Pascagoula, MS 39581
Hopeman Brothers, Inc.
A Delaware Corporation
(Individually and as successor in interest to its former wholly-owned subsidiary, Wayne
Manufacturing Company, Inc.)
C/O Its Registered Agent: C. T. Corporation Systems
621 Lakeland Drive East
Flowood, MS 39208

IMO Industries, Inc., A Delaware Corporation
Formerly IMO De Laval; Formerly TransAmerica De Laval; Formerly De Laval Turbine
C/O Its Registered Agent: The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Industrial Holdings, Inc.
Through their agent for service of process:
Company Corporation
1013 Center Road
Wilmington, DE  19805

Industrial Rubber & Specialty Company
Formerly Known as Coastal Rubber & Gasket Co., Inc.
C/O Its Registered Agent: Greg Herbert
715 E. McDowell Rd.
Jackson, MS 39204-5908

Ingersoll-Rand Company
A New Jersey Corporation
C/O Its Registered Agent: C. T. Corporation Systems
631 Lakeland Drive East
Flowood, MS 39208

J. T. Thorpe
A Texas Corporation Company

C/O Its Registered Agent: The Corporation Company
2000 Interstate Park Dr. Suite 204
Montgomery, AL 36109

John Crane
F/k/a John Crane Packing Company
A Delaware Corporation
C/O Its Registered Agent: The Corporation Trust Center
1201 Orange Street
Wilmington, DE 19801

Kelly Boilers

Komp Equipment, Inc.
C/O Its Registered Agent: George B. Komp III
319 E. Pine Street
Hattiesburg, MS 39401

Maremont
C/O Center for Claims Resolution
504 Carnegie Center, 2nd Floor
Princeton, NJ 08540
Or CN 5319
Princeton, NJ 08534-5319

Marine Specialty Company, Inc.
An Alabama Corporation
C/O Its Registered Agent: C. T. Corporation Systems
631 Lakeland Drive East
Flowood, MS 39208

Metropolitan Life Insurance Company
A Delaware Corporation
C/O Its Registered Agent: Erskine E. Wells, Esq.
400 Lamar Life Bldg.
Jackson, MS 39201

Mississippi Rubber & Specialty Co.
C/O Its Registered Agent: Greg Herbert
715 E. McDowell Road
Jackson, MS 39402-5908

MobileOil
Mobile Oil Production Corporation
Secretary of State

P. O. Box 136
Jackson, MS 39205-0136

Mt. Vernon Mills, Inc.
Through their agent for service of process:
C.T. Corporation
225 Hillsborough Street
Raleigh, NC  27603

Mt. Vernon Dryer Felt Company, A division of Mt. Vernon Mills
Through their agent for service of process:
C.T. Corporation
75 Beattle Place
Two Shelter Center
Greenville, SC  29601

National Services Industries, Inc.
Formerly North Brothers Company
C/O Its Registered Agent: C. T. Corporation Systems
631 Lakeland Drive East
Flowood, MS 39208

Oglebay Norton
A Delaware Corporation
through its registered agent: C. T. Corporation Systems
811 Dallas Avenue
Houston, TX 77002

Owens-Illinois, Inc.
An Ohio Corporation
C/O Its Registered Agent: The Corporation Trust Co.
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Peerless Supply Company of Mississippi, Inc.
A Mississippi Corporation
C/O Its Secretary: Shelby C. Trice
316 Bel-Air Boulevard
P. O. Box 160387
Mobile, AL 36616-1387

Pfizer, Inc.
C/O Its Registered Agent: C. T. Corporation Systems
631 Lakeland East Drive

Flowood, MS 39208

Quigley Company
Its Registered Agent: Pat Patrick Quigley
Rt. 1 Box 36
Eastabooga, AL 36260

Rapid America Corporation, Rapid American Corporation is the successor-in-interest to the liability
of the Philip Carey Corporation as the result of an express assumption of all liabilities and merger
with the Glen Allen Corporation, the predecessor-in-interest to Rapid American Corporation. Prior to
its merger with Rapid American Corporation, the Glen Allen Corporation, in 1967 merged with and
expressly assumed the liabilities of the Philip Carey Manufacturing Company.
C/O the McCrory Corporation
1700 Broadway
New York, NY 10019

SB Decking, Inc., f/k/a Selby, Battersby & Co.
A Delaware Corporation
C/O Hecker, Brown, Sherry, and Johnson
1700 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103-2769

Scapa Fabrics, Inc.
c/o Scapa Paper Machine Clothing (Dryer), Inc.
C. T. Corporation System
631 Lakeland East Drive
Flowood, MS 39208

Scapa Group, Inc. (Voight)
c/o Scapa Paper Machine Clothing (Dryer) Inc.
C. T. Corporation Systems
631 Lakeland East Drive
Flowood, MS 39208

Sepco Corporation
C/O Its Registered Agent:  Don Bradley
Furon
29982 Ivy Glenn Drive
Laguna Nigel, CA  92677

Standard Equipment Company, Inc.
An Alabama Corporation
C/O Its Registered Agent: E. Burnley Davis
75 Beauregard Street

Mobile, AL 36601

USX Corporation as successor in interest to United States Steel, LLC, formerly known as Tennessee
Coal & Iron
c/o Secretary Dan D. Sandman
600 Grant Street
Pittsburgh, Pennsylvania 15129.

Turner Supply Co.
C/O Its Registered Agent: John R. Jones
1457 West Drive
Laurel, MS 39440

U. C. Realty Corp., Formerly MHC Holding and Land Corporation, Formerly Homecrafters Centers,
Inc., Formerly Moore-Handley, Inc.
A Delaware Corporation
C/O Its Registered Agent: The Prentice Hall Corporation System, Inc.
1013 Centre Road
Wilmington, DE 19805

U. S. Mineral
A Texas Corporation
Through its Registered Agent: Mr. Dane Hudnae
5511 Parkcrest, Suite 109
Austin, TX 78701

Union Carbide Corporation f/k/a Union Carbide Chemical and Plastics Company, Inc.
C/O Its Registered Agent: C. T. Corporation Systems
631 Lakeland Drive East
Flowood, MS 39208

Uniroyal, Inc.
Prentice-Hall Corporation
506 S. President St.
Jackson, MS 39205

Wagner Electric Corporation
C. T. Corporation Systems
631 Lakeland Drive East
Flowood, MS 39208

Weavexx
Through their agent for service of process:
C.T. Corporation
225 Hillsborough Street

Raleigh, NC  27603

Westinghouse Electric Corporation
A Pennsylvania Corporation
C/O Its Registered Address:
Westinghouse Building, Gateway Center
11 Stanwix Street
Pittsburgh, PA 15222

Wheeler Protective Apparel Corporation
C/O Robert W. Wilkinson, Esquire
Dogan and Wilkinson, PLLC
726 Delmas Avenue
Pascagoula, MS 39568

Worthington Corp.
C. T. Corporation System
631 Lakeland East Drive
Flowood, MS 39208

York International Corporation
A Delaware Corporation
Formerly Borg-Warner Air Conditioning, Inc.
C/O Its Registered Agent: C. T. Corporation Systems
631 Lakeland Drive East
Flowood, MS 39208

Zurn Industries, Inc.
1 Zurn Place
Erie, PA 16505

Alabama Dry Dock and Shipbuilding Corporation a/k/a ADDSCO
An Alabama Corporation
C/O Its Registered Agent
Kent Purser
Main Gate
Dunlap Drive
Mobile, AL  36652

Albany International Corp.
A Delaware Corporation
C/O Its Registered Agent
631 Lakeland East Drive
Flowood, MS  39232-8815

Aventis Crop Science USA, Inc f/k/a Rhone-Poulenc Ag Company, Inc. f/k/a RPAG Company f/k/a Union
Carbide Agricultural Products Company, Inc. f/k/a AmChem Products, Inc.

c/o CT Corporation
Its Registered Agent
C. T. Corporation System
631 Lakeland East Drive
Flowood, MS 39232-8815

American Standard Inc.
A Delaware Corporation
C/O Its Registered Agent
631 Lakeland East Drive
Flowood, MS  38232-8815

Atlantic Marine, Inc.
An Alabama Corporation
C/O Its Registered Agent
Walter R. Meigs
Gate F. Dunlap Drive
Mobile, AL  36652

Atlantic Richfield Company
A Delaware Corporation
C/O Its Registered Agent
CT Corporation System
631 Lakeland East Drive
Flowood, MS  39232-8815

Baird and Company
c/o Its President
630 South Theobald
Greenville, MS 38701

Bell Helicopter Textron, Inc.
C/O Its President
P.O. Box 482
Fort Worth, TX 76101

Belmont Packing Company
c/o Its President
5454 Russell
Detroit, MI 48211

The Boeing Company
A Delaware Corporation
C/O Its Registered Agent: CT Corporation Company
506 S. President Street
Jackson, MS  39201-3501

BP Amoco Chemical Company
A Delaware Corporation

C/O Its President
ML Noetzel
200 E. Randolph Drive
Chicago, IL 60601

Clairol
C/O Its President
345 Park Avenue
New York, NY 10022

Coastal Rubber & Gasket Company, Inc.
a/k/a Industrial Rubber & Specialty Company
c/o Its Registered Agent
Greg Herbert
715 E. McDowell Rd.
Jackson, MS 39204-5908

Conair Corporation
A Delaware Corporation
President Lee Rizzuto
1 Cummings Point Road
Stamford, CT 06904

Crossfield Products Corp.
c/o Its Registered Agent
CT Corporation System
631 Lakeland East Drive
Flowood, MS 39232-8815

Curtiss-Wright Corporation
C/O Its Chief Executive Officer Martin Benante
1200 Wall Street West
Lyndhurst, NJ 07071

Durabala Manufacturing Company
a Pennsylvania Corp.
c/o Its Registered Agent
140 Sheree Blvd.
Lionville, PA 19353

Durametallic Corporation
c/o James Ware
Its CEO
2104 Factory St.
Kalamazoo, MI 49001

Daniel Environmental Services, Inc.
A California Corporation
C/O Its Registered Agent

Prentice-Hall Corporation System
506 S. President Street
Jackson, MS 39205

FMC Corporation
A Delaware Corporation
C/O Its Registered Agent
CT Corporation System
631 Lakeland East Drive
Flowood, MS  39232-8815

The Georgia Marble Company, Inc.
C/O Its President
1209 Orange Street
Wilmington, DE

Georgia Pacific Corporation
A Georgia Corporation
C/O Its Registered Agent
CT Corporation Systems
631 Lakeland Drive East
Flowood, MS 39208

 The Gillette Company
A Delaware Corporation
C/O Its Registered Agent
CT Corporation System
631 Lakeland East Drive
Flowood, MS  39232-8815

Guard-Line, Inc.
c/o Dennis Stanley
Its President
215-217 S. Louise
Atlanta, Texas 75551-1030

Hal Roach Construction, Inc.
An Alabama Corporation
C/O Its Registered Agent CT Corporation
631 Lakeland East Drive
Flowood, MS  39232-8815

Hamilton Beach Division of Scovill Manufacturing Company
A Connecticut Corporation
C/O Its Registered Agent
CT Corporation System
118 North Congress Street
Jackson, MS  39205

Ingalls Shipbuilding, Inc.
A Delaware Corporation
C/O Its Registered Agent
CT Corporation System
631 Lakeland East Drive
Flowood, MS  39232-8815

Insulation Engineers, Inc.
P.O. Box 815
Mobile, AL 36601-0815

International Paper Company, Individually and as successor-in-interest to Champion International Corporaion
and as successor-in-interest to Union Camp Corporation
A New York Corporation
C/O Its Registered Agent: CT Corporation System
631 Lakelnd East Drive
Flowood, MS  39232-8815

J.C. Penney, Inc.
C/O Its President
6501 Legacy Drive
Plano, TX  75024

Jamestown Metal Marine Sales, Inc.
c/o Richard Hazard
Its Registered Agent
4710 NW 2nd Avenue
Suite 400
Boca Raton, FL 33431

Johnson & Johnson
C/O Its Chariman and CEO Ralph Largen
One Johnson and Johnson Plaza
New Brunswick, NJ   08933

Kellogg Brown & Root International, Individually and as successor to Brown & Root Holdings, Inc., f/k/a
Brown & Root, USA, Inc.
A Delaware Corporation
C/O Its Registered Agent
631 Lakeland East Drive
Flowood, MS  39232-8815

Minnesota Mining and Manufacturing Company
c/o CT Corporation System
631 Lakeland East Drive
Flowood, MS 39232-8815

Montgomery Ward & Co. Inc.
An Illinois Corporation

C/O Richard Bergel Vice President
Montgomery Ward Plaza
Chicago, IL  60671-100

Motion Industries, Inc.
A Delaware Corporation
C/O Its Registered Agent
CT Corporation System
631 Lakeland East Drive
Flowood, MS  39232-8815

NACCO Industries, Inc., successor to Hamilton Beach and Proctor Silex
C/O Its President
Alfred Rankin, Jr.
5875 Lauderbrook Drive
Mayfield Heights, OH  44124

Noland Company
A Virginia Corporation
C/O Its Registered Agent
CT Corporation System
631 Lakeland East Drive
Flowood, MS  39232-8815

North American Phillips
A Delaware Corporation
C/O Its Registered Agent
CT Corporation System
631 Lakeland East Drive
Flowood, MS  39232-8815

North Brothers Company, a division of National Service Industries, Inc.
c/o Corporation Service Company
Its Registered Agent
506 S. President Street
Jackson, MS 39201-3501
or
c/o CT Corporation System
Its Registered Agent
631 Lakeland East Drive
Flowood, MS 39232-8815

Peerless Supply Company
c/o W.E. Doescher
Its Registered Agent
P.O. Box 516
Pascagoula, MS 39567

Pharmacia Corporation, f/k/a Solutia Inc., f/k/a Monsanto Company

A Delaware Corporation
C/O Its Registered Agent: CT Corporation System
631 Lakeland East Drive
Flowood, MS  39232-8815

Raytheon Aerospace Company
A Kansas Corporation
C/O Its Registered Agent: CT Corporation System
631 Lakeland East Drive
Flowood, MS  39232-8815

Raytheon Company, Individually and as successor-in-interest to Hughes Aircraft Company
A Delaware Corporation
C/O Its Registered Agent: CT Corporation System
631 Lakeland East Drive
Flowood, MS  39232-8815

REA Construction Company
A North Carolina Corporation
C/O Its Registered Agent: CT Corporation System
631 Lakeland East Drive
Flowood, MS 39232-8815

Reynolds Metals Company
A Delaware Corporation
C/O Its President Richard G. Holder
6601 W. Broad Street
Richmond VA  23230

Schick, Inc.
C/O Its President
182 Tabor Road Bldg2 / 2nd Floor
Morris Plains, NJ  07950

Sears, Roebuck and Co.
A New York corporation
C/O Its Registered Agent
CT Corporation System
631 Lakeland East Drive
Flowood, MS  39232-8815

Sperry Rand Corporation
A Delaware Corporation
C/O Its Registered Agent
CT Corporation System
631 Lakeland East Drive
Flowood, MS  39232-8815

Sunbeam Products, Inc. f/k/a Sunbeam Corporation

A Delaware Corporation
C/O Its Registered Agent
CT Corporation System
631 Lakeland East Drive
Flowood, MS 39232-8815

Textron, Inc.
C/O Its President
Lewis Campbell
40 Westminster Street
Providence, RI  02903

TRECO Construction Services, Inc., Individually and as successor -in-interest to RUST Engineering Company
C/O Its Registered Agent: CT Corporation System
631 Lakeland East Drive
Flowood, MS 39232-8815

United States Pipe and Foundry Company, Inc.
A Delaware Corporation
C/O Its President
1209 Orange Street
Wilmington, DE  19801

Valley Products Co., Inc.
An Alabama Corporation
C/O Its Officer
Kenneth M. Schuppert, Jr.
201 Second Avenue SE
Decatur, AL  35602

Weavexx Corporation
A Delaware Corporation
C/O Its Registered Agent
CT Corporation System
631 Lakeland East Drive
Flowood, MS  39232-8815


John Does 1 through 20

And fictitious or unknown parties defendant, A through Z, who are unknown to Plaintiff at this time.

Total:          98 Defendants

At the present time the following defendants are under the protection of the federal bankruptcy laws or other restraining orders which prevent their being sued in this suit; but for this prohibition, these defendants would be named a party defendant in this action.

Amatex Corporation
Sterigere & Stanbridge Street
Norristown, PA 19404

Armstrong World Industries, Inc.
A Pennsylvania Corporation
C/O Its Registered Agent: C. T. Corporation Company
631 Lakeland Drive East
Flowood, MS 39208

Asbestos Claims Management Corporation
Successor by change of name only to the National Gypsum Company
2608 Eastland Avenue, Suite 1120
Greenville, TX 75402

Babcock and Wilcox
A Delaware Corporation
C/O Its Registered Agent: The Corporation Company
2000 Interstate Park Dr. Suite 204
Montgomery, AL 36109

Carey Canada, Inc.
P. O. Box 190
East Broughton Station
Quebec, Canada GON 1HO

The Celotex Corporation
A Delaware Corporation
C/O Its Registered Agent: C. T. Corporation Systems
631 Lakeland Drive East
Flowood, MS 39208

Eagle-Picher Industries, Inc.
An Ohio Corporation
C/O Its Registered Agent: C. T. Corporation Systems
631 Lakeland Drive East
Flowood, MS 39208

Forty-Eight Insulation, Inc.
P. O. Box 1148
Aurora, IL      60507

GAF Corporation
Successor-In-Interest to Ruberoid Company
A Delaware Corporation

C/O Its Registered Agent: The Prentice Hall Corporation System, Inc.
1013 Centre Road
Wilmington, DE 19805

H. K. Porter Company, Inc.
601 Grant Street
Pittsburgh, PA 15219

Indresco, Inc., A Delaware Corporation
Individually and as Successor-in-interest to Harbison-Walker
Refractories and Worthington Corporation
C/O Its Registered Agent: Prentice Hall Corporation Systems, Inc.
506 South President Street
Jackson, MS 39201

Keene Corporation
200 Park Avenue
New York, NY 10076

M. H. Detrick Company
A Delaware Corporation
C/O Its Registered Agent: The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Manville Personal Injury Settlement Trust
Manville Corporation Disease Compensation Fund
(Successor in Interest to Johns-Manville, Corp. and other Manville Entites)
C/O Its Registered Agent: David Austern, General Counsel
8260 Willow Oaks Corporate Drive
Sixth Floor
Fairfax, VA 22031

The Manville Corporation Asbestos Disease Compensation Fund
A New York Trust
1825 Eye Street, N. W., Suite 300
Washington, DC 20006

National Gypsum Company, (Asbestos Claims Management Company)
A Delaware Corporation
C/O Its Registered Agent: C. T. Corporation Systems
631 Lakeland Drive East
Flowood, MS 39208

Nicolet, Inc.
Wissahickon Avenue
Ambler, PA 19002

Pittsburgh Corning Corporation
A Pennsylvania Corporation
As its registered address:
800 Presque Isle Drive
Pittsburgh, PA 15239

Raymark Industries, Inc.
A Connecticut Corporation
C/O Its Registered Agent: C. T. Corporation Systems
631 Lakeland Drive East
Flowood, MS 39208

Riley Stoker
DB Riley, Inc.
2000 Interstate Park Dr.
Montgomery, AL 36109

Turner & Newall

Unarco
332 S. Michigan Avenue
Chicago, IL 60604

United States Gypsum Corporation
CT Corporation Systems
118 N. Congress Street
Jackson, MS 39201

W. R. Grace

W. R. Grace Co.—Conn.
C/O Its Registered Agent: C. T. Corporation Systems
631 Lakeland Drive East
Flowood, MS 39208

_____

Of Counsel

RECEIVED
CLERK'S OFFICE
BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION
MDL DOCKET NO. 875
IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

FLOWER MANGIALARDI, et al.                          PLAINTIFFS

VERSUS                              CIVIL ACTION NO. 2:02CV121-B-B
                                    (Northern District of Mississippi)

HAROLD'S AUTO PARTS, et al.                          DEFENDANTS

### PLAINTIFFS' NOTICE OF OPPOSITION TO
### CONDITIONAL TRANSFER ORDER (CTO-215)

TO THE CLERK OF THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION:

COMES NOW, Plaintiffs, and make and file this their Notice of Opposition to Conditional

Transfer Order (CTO-215), and for same would show unto the Clerk of the Panel the following, to-

wit:

### I.

In accordance with Rule 7.4(c) of the Rules of Procedure of the Judicial Panel on

Multidistrict Litigation, Plaintiffs oppose the transfer of the above styled and numbered action to the

United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1407.

Respectfully submitted,

CHAPMAN, LEWIS & SWAN
501 First Street
Post Office Box 428
Clarksdale, Mississippi  38614
(662) 627-4105 (Telephone)

By: _____
    DANA J. SWAN (MSB #8088)

RECEIVED AUG 2 6 2002

OF COUNSEL:

G. Patterson Keahey
Law Offices of G. Patterson Keahey, Jr., P.C.
One Independence Plaza
Suite 814
Birmingham, Alabama 35209
Telephone:     (205) 871-0707
Facsimile:      (205) 871-0801

## CERTIFICATE OF SERVICE

I, Dana J. Swan, do hereby certify that I have this day via facsimile and U. S. Mail, postage prepaid, a true and correct copy of the above and foregoing Plaintiffs' Notice of Opposition to Conditional Transfer Order (CTO-215), to all counsel of record.

THIS, the 16th day of August, 2002.

DANA J. SWAN

F:\DOCS\mangialardi.flower\Pleading\not opposition.wpd