JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

SEP 19 2002

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:  ASBESTOS PRODUCTS LIABILITY )
LITIGATION (NO. VI) )
)                    **DOCKET NO. MDL 875**
CONDITIONAL TRANSFER ORDER (CTO- )
215 )

*This Document Relates to:*

U. S. DISTRICT COURT
STATE OF COLORADO

RUDOLPH DIONIGI and VIRGINIA
DIONIGI, Husband and Wife, et. al.
  **Plaintiffs**

-vs-                              **No. 02 - K -1291 (OES)**

JOHN CRANE, INC., et. al.
  **Defendants**

---

PLAINTIFFS'
MOTION TO VACATE CONDITIONAL TRANSFER ORDER AND FOR IMMEDIATE
REMAND AND MEMORANDUM AND BRIEF IN SUPPORT THEREOF

---

Plaintiffs move the court to forthwith remand the above action to the District Court, County of Boulder, State of Colorado.  As grounds therefore Plaintiffs state that removing Defendant, Swinerton, has failed and refused to comply with clear requirements for removal to the U.S. District Court, District of Colorado; namely , Defendant has failed to show that it has met the three requirements of <u>Mesa v. California</u>, 489 U.S. 121, 109 S. Ct. 959 (1989) for "Federal Officer" removal.

IMAGED SEP 19 '02         **OFFICIAL FILE COPY**

1.  Plaintiffs, Rudolph Dionigi, Glen Gwin and Foster Bob Campbell are diagnosed with lung cancer caused by exposure to asbestos.

2.  This case was filed in Colorado State court, 20th Judicial district, Boulder County, on November 5, 2001.

3.  On July 5, 2002, one of the defendants (Swinerton Builders) filed a notice of removal of this case to federal court.  The ground stated for removal in the notice is federal officer. (28 U.S.C. § 1442 (a)(1).)  This pleading is attached hereto as **Exhibit A.**

4.  On July 19, 2002 plaintiff filed a motion in the District of Colorado to remand the case to state court.  A copy of that motion is attached hereto as **Exhibit B**.  This issue (Plaintiffs' Motion to Remand) is now pending before the Hon. John Kane, District Judge.

5.  On August 9, 2002, Defendant Swinerton filed a response to Plaintiff's Motion to Remand.  The response is attached as **Exhibit C.**

6.  On September 3, 2002, Plaintiffs filed a reply to the defendant's response.  The reply is attached hereto as **Exhibit D.**

7.  Before the District of Colorado court had the opportunity to rule on Plaintiffs' Motion to Remand, the MDL panel made the above case the subject of a conditional transfer order.

8.  The U.S. District Court for the District of Colorado issued a Minute Order on August 14, 2002, concerning Response and Reply deadlines for the remand issue. The Order is attached hereto as **Exhibit E.**

WHEREFORE, Plaintiffs now request this court to either:

a)      Grant Plaintiffs' Motion to Remand to the state court, 20th Judicial District, Boulder,  Colorado;

b)      or, vacate the Conditional Transfer Order allowing U.S. District  Court for the District of Colorado time to rule on Plaintiffs' Motion to Remand to State Court.

9/16/02

TRINE & METCALF, P.C.

J. Conard Metcalf, Reg. 2489
1435 Arapahoe Ave.
Boulder, CO 80302
303.442.0173
*Attorneys for Plaintiffs*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

SEP 1 9 2002

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:  ASBESTOS PRODUCTS LIABILITY )
LITIGATION (NO. VI) )
 )        **DOCKET NO. MDL 875**
CONDITIONAL TRANSFER ORDER (CTO- )
215 )

*This Document Relates to:*

U. S. DISTRICT COURT
STATE OF COLORADO

**RUDOLPH DIONIGI and VIRGINIA
DIONIGI, Husband and Wife
     Plaintiff, et. al.**

-vs-                                    **No. 02 - K -1291 (OES)**

**JOHN CRANE, et. al.**

---

CERTIFICATE OF SERVICE

---

I hereby certify that a true and correct copy of the foregoing PLAINTIFFS'
MOTION TO VACATE CONDITIONAL TRANSFER ORDER AND FOR IMMEDIATE
REMAND AND MEMORANDUM AND BRIEF IN SUPPORT THEREOF was served
upon the following  via e-filing via U.S. Mail, postage pre-paid on this 17th day of
September, 2002:

Mary Price Birk, Esq.
Ronald L. Hellbusch, Esq.
Susan Hahn, Esq.
Baker & Hostetler, LLP
*Attorneys for Dana and Pneumo Abex*
303 17th Ave, #1100
Denver, CO  80203
(303) 861-0600
FAX: (303) 861-7805

James Miletich, Esq.
Long & Jaudon,
*Attorneys for Rio Grande and Rapid*
1600 Ogden Street
Denver, CO  80218-1414
(303) 832-1122
FAX: (303) 832-1348

Gary M. Clexton, Esq.
Miller & Steiert, PC
*Attorneys for John Crane*
1901 W. Littleton Blvd.
Littleton, CO  80120
(303) 798-2525
FAX: (303) 798-2526

Shauna Hilgers, Esq.
Law Office of Shauna Hilgers
*Attorney for Flintkote*
6508 Poppy Street
P.O. Box 1254
Arvada, CO  80001
(303) 431-5037
FAX (303) 431-5037

Bennett Cohen, Esq.
The Kobayashi Law Firm
*Attorneys for Metropolitan Life*
1633 Fillmore Street
Denver, CO  80206
(303) 399-2100
FAX: (303) 780-9836

U.S. District Court
    for the District of Colorado
Off ice of the Clerk
U.S. Courthouse
1929 Stout Street
Denver, CO  80294

Glendon L. Laird, Esq.
White & Steele, PC
*Attorneys for ACandS*
950 17th Street,21st Floor
Denver, CO  80202-2804
(303) 296-2828
FAX: (303) 296-3131

Bradley Levin, Esq.
Roberts, Levin & Patterson
*Attorneys for Georgia Pacific*
1512 Larimer St., #950
Denver, CO 80202
(303) 575-9390
FAX: (303) 575-9385

David Nowak, Esq.
White & Steele, P.C.
*Attorneys for Garlock, Inc.*
21st Floor
950 17th Street
Denver, CO  80202-2804
(303) 296-2828
FAX:  (303) 296-3131

David Fowler, Esq.
Fowler, Schimberg & Flanagan, P.C.
*Attorneys for Swinerton & Walberg*
1640 Grant St., #300
Denver, CO  80203
(303) 298-8603
FAX: (303) 298-8748

Steven M. Kaufmann, Esq.
Brian Hoffman, Esq.
Morrison & Foerster, LLP
*Attorneys for ABB Lummus Global, Inc.*
370 17th Street, Suite 5200
Denver, CO  80202
(303) 592-1500
FAX: (303) 592-1510

5

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

PANEL SERVICE LIST (Excerpted from CTO-215)          SEP 19 2002
DOCKET NO. 875
IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO - VI)          FILED
CLERK'S OFFICE

*Rudolph Dionigi, et. al. v. John Crane, Inc. et. al.*, D. Colorado, C.A. No. 1:02-1291

---

I hereby certify that a true and correct copy of the foregoing PLAINTIFFS' MOTION
TO VACATE CONDITIONAL TRANSFER ORDER AND FOR IMMEDIATE REMAND
AND MEMORANDUM AND BRIEF IN SUPPORT THEREOF was served upon the following,
via U.S. Mail, postage pre-paid on this 17th day of September, 2002:.

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Ellen B. Furman
Goldfein & Joseph
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Susan M. Hansen
Brownson & Ballou
4800 U.S. Bank Place
601 Second Avenue, South
Minneapolis, MN 55402

Adam M. Chud
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, DC 20036

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308

David A. Damico
Burns, White & Hickton
2400 Fifth Avenue Place
120 Fifth Avenue
Pittsburgh, PA 15222

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Raymond P. Forceno
Forceno & Hannon
Philadelphia Bourse Building
Suite 1000
Independence Mall East
Philadelphia, PA 19106

Steven Kaufman
Morrison & Foerster, LLP
5200 Republic Plaza
370 17th St. #5200
Denver, CO 80202

Daniel M. Fowler
Fowler, Schimberg & Flanagan, PC
1640 Grant Street
Suite 300
Denver, CO 80203

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102

J. Conard Metcalf
Trine & Metcalf, PC
  1435 Arapahoe Avenue
Boulder, CO 80302-6390
**N/A Plaintiffs' Counsel**

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli, L.L.P.
Centre Square West
15th Floor
Philadelphia, PA 19102


Andrew J. Trevelise
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
Detroit, MI 48226


Ronald L. Motley
Ness, Motley, Loadholt, Richardson & Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29464

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406


John J. Repcheck
Marks, O'Neill, O'Brien & Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
Roven, Kaplan & Wells
2190 North Loop West
Suite 410
Houston, TX 77018


Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025


Dionoigi

_Nancy Dene Adkins_

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

RUDOLPH DIONIGI and VIRGINIA DIONIGI as Husband and Wife and GLEN GWIN and INA GWIN, as Husband and Wife, and FOSTER BOB CAMPBELL and MARY CAMPBELL, as Husband and Wife,,

Plaintiffs,

v.

1.   JOHN CRANE, INC., an Illinois corporation,
2.   THE FLINKOTE CORPORATION, a Massachusetts corporation,
3.   GEORGIA-PACIFIC CORPORATION, a Georgia corporation,
4.   PLATEAU SUPPLY COMPANY, a Colorado corporation,
5.   RIO GRANDE COMPANY, a Colorado corporation, AC and S, Inc., a Delaware corporation,
6.   DANA CORPORATION, a Virginia corporation,
7.   RAPID AMERICAN CORPORATION, a Delaware corporation,
8.   GARLOCK, INC., an Ohio corporation,
9.   PNEUMO ABEX CORPORATION, a Delaware corporation,
10.  KAISER ALUMINUM AND CHEMICAL CORPORATION, a California corporation,
11.  SWINERTON & WALBERG PROPERTY SERVICES, INC., a Colorado corporation,
12.  LUMMUS GLOBAL COMPANY, a New Jersey corporation,
13.  CATALYTIC TECHNOLOGIES, LLC, a Colorado corporation and
14.  METROPOLITAN LIFE INSURANCE CO., a New York corporation

Defendants.

---

## DEFENDANT SWINERTON BUILDERS' NOTICE OF REMOVAL

---

Defendant, Swinerton Builders, (hereinafter "Swinerton") improperly captioned by

Plaintiffs as Swinerton & Walberg Property Services, Inc., through its counsel, Fowler, Schimberg &

Flanagan, P.C., hereby Removes this action from the Boulder County District Court in Colorado

to the United States District Court in Denver Colorado as follows:



PLAINTIFF'S
EXHIBIT
A

## I.   INTRODUCTION

1.      This litigation concerns the Plaintiffs' alleged exposure to asbestos dust while working at Rocky Flats in Jefferson County, Colorado.  The Defendants include manufacturers and sellers of asbestos products.  This Defendant, Swinerton Builders, f/k/a Swinerton & Walberg, Inc., is in the general and commercial construction contract business.  Pursuant to contracts with the federal government, Swinerton constructed and renovated buildings at Rocky Flats in Jefferson County, Colorado.  Because this Defendant is a federal officer, this action is removed from state court to this U.S. District Court.

## II.   STATE COURT PROCEEDINGS

2.      The pleadings served on this Defendant in the state court include:

1.   Plaintiffs' Summons and Complaint, filed 11/19/01.
2.   Defendant Swinerton & Walberg's Motion for Enlargement of Time to Both Answer or Otherwise Respond to Plaintiff's Complaint and Respond to Plaintiff's First and Second Set of Interrogatories to All Defendants, filed 12/22/01
3.   Answer of Defendant John Crane, Inc., filed 12/24/01.
4.   Answer and Jury Demand of Defendant ACandS, Inc., filed 12/28/01.
5.   Defendant John Crane, Inc.'s Statutory Notice of Non-Party Fault, filed 12/31/01.
6.   Order Granting Defendant Swinerton & Walberg's Motion for Enlargement of Time, entered 1/7/02.
7.   Defendant Flintkote Company's Answer to Complaint, Statutory Notice of Fault and Jury Demand, filed 1/9/02.
8.   Kaiser Kaiser Aluminum & Chemical Corporation's Answer to Complaint and Jury Demand, filed 1/17/02.
9.   Defendant ABB Lummus Global, Inc.'s Motion for Extension of Time to Respond to Plaintiffs' Complaint for Damages and First and Second Set of Interrogatories, filed 3/5/02.
10.  Plaintiffs' Motion for Dismissal with Prejudice of Defendant McDermott, Inc., filed 3/5/02.
11.  Defendant Swinerton & Walberg's Second Motion for Enlargement of Time to Both Answer or Otherwise Respond to Plaintiffs' Complaint and Respond to Plaintiffs' First and Second Set of Interrogatories to all Defendants, filed 3/19/02.
12.  Court  Order (dismissing McDermott, Inc.), entered 3/28/02.
13.  Court  Order Granting Defendant Swinerton & Walberg's Second Motion for Extension of Time, entered 3/28/02.
14.  Plaintiffs' Motion for Leave to Amend Complaint to Allege Additional Facts as to Particular Defendants (w/ attached  Amended Complaint for Damages), filed 4/3/02.
15.  Amended Complaint for Damages, filed 4/3/02.

16.    Unopposed Motion for Extension of Time for ABB Lummus Global, Inc. to Respond to Plaintiffs' Complaint, filed 4/16/02.

17.    ABB Lummus Global, Inc.'s Answer to Plaintiffs' Amended Complaint for Damages, filed 5/6/02.

18.    Defendant Georgia Pacific's Notice of Change of Address, filed 5/30/02.

19.    Swinerton's Answer to Plaintiff's Amended Complaint for Damages, filed 6/3/02.

Those pleadings are attached to the Notice of Removal filed with this Federal Court as Exhibit A.

As of the date set forth below there are no hearings, proceedings or any other matters set or pending

before the District Court for Boulder County, Colorado.

## III.   SWINERTON'S WORK AT ROCKY FLATS

3.    Rocky Flats was constructed to built parts of nuclear weapons using large quantities

of radioactive materials.  The construction of Rocky Flats was an ongoing process that began in the

early 1950's and concluded in 1990's.  To construct the weapons manufacturing plants at Rocky Flats

three types of entities contracted with the federal government.  The operating contractor, such as

Dow and the Rockwell Corp., operated the facility and oversaw the construction and design of the

facility.  The design and engineering firm on site, C.F. Braun, also contracted with government to

design the buildings and the weapons manufacturing plants.  Lastly, a building contractor such as

this Defendant, and Defendant ABB Lumus Inc., also contracted directly with the Federal

Government to built the buildings that were designed and conceived by the operating contractor and

the engineering firm.

4.    The federal agency that operated Rocky Flats is the Department of Energy ("DOE"),

and its predecessors, the Atomic Energy Commission and the Energy Research and Development

Administration.  The DOE's contracting officer for Rocky Flats worked out of the Albuquerque,

NM, operations office at Kirkland AFB.  Through that federal officer Swinerton contracted directly

with the DOE to provide construction services at Rocky Flats.  The federal government directed

Swinerton only to build.  Swinerton had no role in developing the design, specifications, and

material lists necessary to build the nuclear weapons assembly plants.  Those tasks were performed

at the direction of the federal government by the engineering firm and the operating contractor.

Swinerton built what it contracted to build, and used materials that were specified in detail by the

engineering and operating contractors.[1]

### IV.   REMOVAL PURSUANT TO 28 U.S.C. §1442(a)(1)

5.      Swinerton is a federal officer within the meaning of 28 U.S.C. §1442(a)(1) and this

action must be removed to this Federal Court.  That statute states in pertinent part:

> (a) A civil action or criminal prosecution commenced in a State court against any of
> the following may be removed by them to the district court of the United States for
> the district and division embracing the place wherein it is pending:
> (1) The United States or any agency thereof or any officer (or any person acting under
> that officer) of the United States or of any agency thereof, sued in an official or
> individual capacity for any act under color of such office. . . *Id.*

Removal pursuant to this statute does not require the unanimous consensus of all Defendants, as is

required to remove pursuant to 28 U.S.C. § 1441, Federal Question jurisdiction.  *Akin v. Ashland*

*Chemical Co.,* 156 F.3d 1030, 1034-35 (10th Cir. 1998).  Instead, 28 U.S.C. §1442(a)(1) permits

removal when one of the Defendants is a federal officer.  *Id.*

6.      Defendant Swinerton Builders is a corporate entity that is also a "person" within the

meaning of 28 U.S.C .§1442 (a)(1).  *Akin v. Big Three Industries Inc.* 851 F.Supp. 819, 822-23(E.D.

---

[1]

This information was gathered from Mr. William Prout.  Mr. Prout began working at Rocky Flats
in the late 1960's as an engineer for Swinerton & Walberg Inc.  By the mid 1970's Mr. Prout attained
the title of Engineering Supervisor for Swinerton & Walberg,  In the late 1970's Mr. Prout began
working for the Atomic Energy Commission as the federal government's on site representative at
Rocky Flats.  Mr. Prout returned to his engineering job with Swinerton in the 1980's, and stopped
working at Rocky Flats in the 1987.  At that time he was Swinerton's Acting Project Manager.
Because of the July 4th Holiday, Mr. Prout was unable to review and sign an affidavit concerning
Swinerton's work and the federal contracts discussed herein.  That affidavit will be filed with this
court and provided to all parties during the week of July 8, 2002.

Tex 1994)(General Electric deemed a person and a federal officer as contemplated by 28 U.S.C. § 1442(a)(1)).

7.      To remove as a federal officer, Swinerton must assert a colorable claim to a federal defense. *Mesa v. California* 489 U.S. 121 (1989). Swinerton's Answer to Plaintiffs' Second Amended Complaint asserts the government contractor defense. The elements of that defense are: (1) the federal government approved reasonably precise specifications; (2) the equipment conformed to those specifications; and, (3) the supplier warned the federal government of the dangers in the use of the equipment. *Boyle v. United Technologies Corp*, 487 U.S. 500, 512 (1987). As set forth above, Swinerton constructed buildings at Rocky Flats pursuant to detailed plans, specifications and material lists that were approved by the DOE. Swinerton's work site safety and warnings were commensurate with the state of the art. Accordingly, Swinerton has asserted a colorable federal defense. *Akin*, 851 F.Supp. at 823 (government contractor defense is a colorable defense for purposes of 28 U.S.C. § 1442(a)(1).

8.      To remove as a federal officer, Swinerton must also demonstrate that it is being sued for its actions taken under or at the direction of a federal officer. *Id.* As discussed in the paragraph immediately below, upon information and belief, the Plaintiffs' claims arise from their employment at Rocky Flats. Swinerton constructed certain buildings at Rocky Flats pursuant to a federal contract with DOE and its predecessors. Those contracts directed Swinerton's work at Rocky Flats which satisfies the "acting under" requirement of 28 U.S.C. § 1442(a)(1). *Akin*, F.Supp. at 823-24.

9.      This notice is timely. 28 U.S.C. § 1446(b) requires that the notice of removal be filed within 30 days of the receipt of Plaintiffs' initial pleading. An exception to that rule applies here because the Plaintiffs' Complaint and their Amended Complaint for Damages were not removable. *Id.* Those Complaints were not removable because neither asserted that the alleged asbestos

contamination occurred at Rocky Flats.    Instead, to establish venue in Boulder County District

Court, Plaintiffs alleged that "...said exposure occurred at various locations in Colorado, which

included, upon information and belief, locations in Boulder Colorado." Plaintiffs' Amended

Complaint For Damages, ¶10. Rocky Flats is in Jefferson County Colorado, not Boulder County.

Because the Plaintiffs' initial pleadings did not clearly and unequivocally disclose the situs of the

alleged asbestos contamination, the 30 day time period does not begin to run until an "other paper"

filed in the state court action gives notice that the action is removable. *Akin*, 156 F.3d at 1035-36.

That "other paper" is "Plaintiffs' Discovery Requests To Defendant Swinerton Builders

(2002.06.13)", that this Defendant received on June 14, 2002. That discovery is attached hereto as

Exhibit B.[2]    That discovery seeks information concerning this Defendant's work at Rocky Flats,

which is the first time Plaintiffs have provided "clear and unequivocal" notice that this case concerns

Rocky Flats. *See, Akin*, 156 F.3d at 1035-36. Accordingly, this Notice is timely. *Id.*

## V.    CONCLUSION

Because this Defendant is a Federal Officer within the meaning of 28 U.S.C. §1442(a)(1),

this timely Notice causes this action to be removed to this Federal District Court.

---

[2]This Discovery was filed in District Court, Boulder County, Colorado, in the "In Re Asbestos" case, case no. 89 CV 2000. Pursuant to Administrative Orders entered by Boulder County District Court Judge Sandstead in 1989, and 1996, all asbestos cases filed in Boulder County District Court are subject to a set of procedures that differ from the Colorado Rules of Civil Procedures. One of those differences is the creation of the "In Re Asbestos" case, case no. 89 CV 2000, in which discovery requests and responses, amongst other documents, are filed.

Dated July 5, 2002

FOWLER SCHIMBERG & FLANAGAN, P.C.

_Daniel M. Fowler_

Daniel M. Fowler, Reg. No. 6357
1640 Grant Street, Suite 300
Denver, Colorado 80203
Telephone: (303) 298-8603

ATTORNEYS FOR DEFENDANT SWINERTON &
WALBERG PROPERTY SERVICES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of July 2002, I caused a true and correct copy of the foregoing **DEFENDANT SWINERTON BUILDERS' NOTICE OF REMOVAL** to be placed into the United States mail, first class postage prepaid, and correctly addressed to the following:

J. Conrad Metcalf, Esq.
Jeffrey R. Hill, Esq.
Trine & Metcalf, P.C.
1435 Arapahoe Avenue
Boulder, Colorado 80302

Gary M. Clexton, Esq.
King Clexton & Feola, LLC
1670 York Street
Denver, Colorado 80206

Glendon L. Laird, Esq.
White & Steele, P.C.
950 Seventeenth Street, Suite 2100
Denver, Colorado 80202

Shauna L. Hilgers, Esq.
Law Office of Shauna Hilgers
Post Office Box 1254
6508 Poppy Street
Arvada, Colorado 80001

Susan R. Hahn, Esq.
Baker & Hostetler, LLP
303 East 17th Avenue, Suite 1100
Denver, Colorado 80203

Bradley Levin, Esq.
Roberts Levin & Patterson
1512 Larimer Street, Suite 950
Denver, Colorado 80202

Bennett Cohen, Esq.
Kobayashi Law Firm
1633 Fillmore Street
Denver, Colorado 80206

Clerk, Boulder County District Court
Boulder County Justice Center
P.O. Box 4249
Boulder, Colorado 80306

_Rebekah Janzen_

| | |
|---|---|
| **DISTRICT COURT, BOULDER COUNTY, COLORADO**<br>**Boulder Justice Center**<br>1777 6th Street<br>P.O. Box 4249<br>Boulder, CO 80306<br><br>**IN RE: ASBESTOS CASES**<br><br><br>Attorneys for Plaintiff:<br>J. Conard Metcalf, #2489<br>Jeffrey R. Hill, #26099<br>1435 Arapahoe Ave<br>Boulder, CO 80302<br>Telephone:      (303) 442-0173<br>FAX:            (303) 443-7677<br><br><br>Attorney for Defendant:<br>Daniel Fowler, Esq. #6357<br>Fowler, Schimberg & Flanagan, PC<br>1640 Grant Street, #300<br>Denver, CO 80203<br>Telephone: (303) 298-8603<br>FAX:         (303) 298-8784 | COURT USE ONLY<br>_____<br><br>Case Number: 89 CV 2000<br><br>Div: A2 |

| |
|---|
| PLAINTIFFS' DISCOVERY REQUESTS TO DEFENDANT SWINERTON BUILDERS<br>(2002.06.13) |

Plaintiffs, by and through their counsel, Trine & Metcalf, P.C., propound the following requests for discovery (interrogatories and request for production) to Defendant Swinerton & Walberg to be answered under oath in accordance with all provisions of the Colorado Rules of Civil Procedure.

"Swinerton & Walberg" (referred to hereafter as "SW" or as "this Defendant") includes the named defendant and any predecessor(s)- in - interest to the named



DEFENDANT'S
EXHIBIT
B

Defendant including all of the named Defendant's subsidiaries and divisions. The named Defendant may be referred to as "SW".

"Rocky Flats" (referred to hereafter as "RF") includes the U.S. Department of Energy Rocky Flats facility located in Jefferson County, Colorado.

## INSTRUCTIONS

A.   Please furnish all requested information or tangible items which are either in your possession or which are accessible to you, even if they are in the possession or within the knowledge of some other person or legal entity. Rules 33(a), 34(a)(1) and 36(a).

B.   If, after you have made reasonable inquiry, you are still unable to make a complete response, please respond to the fullest extent possible. Specify the particular part of the request to which you are unable to respond. Rules 34(b) and 36(a). If you object to any request or interrogatory, please give the reasons for your objection and respond to the unobjectionable portion of the request or interrogatory. Rules 33(a), 34(b) and 36(a).

C.   Whenever your response includes a document, please furnish clear and legible copies. Include a copy of the entire document; that is, all of the pages, all of the attachments and any additions, deletions or modifications to the original document.

D.   If you claim that any document, communication or information is privileged, please provide the following:

   (1)   Give the date of the document, communication, or other information;

   (2)   Identify the parties to the document or communication;

   (3)   Identify all other persons who participated in, read, overheard, or became privy to the document, communication, or information;

   (4)   State the subject matter of the document, communication, or information;

   (5)   State the capacity in which each communicant was acting; and

   (6)   Give the citation to statute, case law, or other authority in support of your privilege claim

E.   "Tangible Item" means - any written or otherwise recorded material of whatever nature, whether printed, typed, handwritten or machine readable, including, without limitation, photographs, photostats, microfilm, x-rays, audio or video tape recordings, computer generated material, computer discs, and any other computer data and digitally or electronically stored or created data or information.. The term

"document" includes both originals and all copies that are not identical with the original or that contain any commentary or notation that does not appear in the original. The term also includes all editions or drafts which are not in all respects identical. It includes documents in your custody and control and documents to which you have the right of access.

F.    Produce for viewing, copying and inspection at Trine & Metcalf, P.C. 1435 Arapahoe Ave, Boulder, CO 80302, on or before June 29, 2002, all tangible items in your possession, custody or control that relate to the following matters:

## INTERROGATORIES

1.  Please state this Defendant's full legal name.

2.  Please detail this Defendant's full corporate history.

3.  Please state the date of incorporation of this Defendant and the State in which this Defendant is incorporated.

4.  If SW has a registered agent for service of process please identify that registered agent.

5.  When was this defendant first qualified to do business in the state of Colorado?

6.  Please list the names of all supervisors and foreman for SW at the RF.

7.  Please list all tangible items relating to safety rules, procedures, requirements, suggestions provided by SW to its employees at RF.

8.  State the date SW first provided masks or respirators to employees to protect them from inhaling dust on the job.

9.  Please list in detail any asbestos abatement work, projects, etc, on which SW was involved or participated in any way.

10. Identify the date on which SW first learned that inhalation of asbestos could cause disease.

11. Please list all safety rules, regulations, procedures with which SW was to comply in performing any work at RF.

12. Please identify any and all organizations of which SW was ever a member, including the date SW first became a member of each organization and, if SW is no longer a member of each organization, the date that SW left the membership of each organization.

13. Please list the name(s) of the person or people most knowledgeable concerning work performed by SW at RF.

14. Please list the name of SW employee who was primarily responsible for overseeing the work done by SW at RF.

15. Please provide the name of the Dow employee who was primarily responsible for overseeing the work done by SW at RF.

16. Please provide the names, addresses and dates of employment of any industrial hygienist(s) ever employed by SW.

17. Please list dates and locations of any air sampling performed by or at the request of SW to determine the concentration of dust in the air where SW employees or subcontractors were working.

18. Has SW performed any survey or study to determine the prevalence or incidence of chest abnormalities in current or former SW employees.

19. Did SW, itself, supply or install asbestos containing materials on any job sites?

20. If and when asbestos containing materials were installed at any location where work was being performed by or at the request or direction of SW, was the supplying and installation of asbestos containing materials always performed by specialty subcontractors? If not, how and by whom was same accomplished?

21. With regard to any such specialty subcontractors listed in your response to Interrogatory No.: 20, above, did SW rely on the specialty subcontractor(s) to be knowledgeable about any potential hazards?

22. If SW did rely on specialty subcontractors to be knowledgeable about any potential hazards, please describe all efforts undertaken by SW to determine if, in fact, specialty subcontractors were knowledgeable about potential hazards.

23. Does SW agree that at no time prior to 1980 did it provide respiratory protection to its employees specifically for the purpose of eliminating or minimizing inhalation of asbestos dust and fibers?

24. Please list the names of all entities from whom SW purchased asbestos-containing products for use on jobs being performed within the State of Colorado.

25. State the location of any library containing technical, professional trade, hygiene, and/or medical information maintained by SW.

26. Please provide the names, addresses, positions of employment (job title) of any and all current SW employee(s) who are most knowledgeable concerning the following matters:
  a)  Work performed by SW at the RF plant;
  b)  Services provided by SW at the RF plant;
  c)  Materials supplied by SW at the RF plant;
  d)  Use of asbestos containing materials at the RF plant;
  e)  Asbestos removal and/or abatement activities by SW at the RF plant;
  f)  SW's safety programs, procedures and/or protocols at the RF plant;
  g)  Air sampling or monitoring by SW at RF to determine the presence and/or concentrations of dust in the air;
  h)  Warnings, cautions or instructions given to SW employees concerning potential dangers of asbestos;
  i)  Workers' Compensation claims filed against SW by people seeking compensation for occupational injury or disease;
  j)  The corporate history of SW;.
  k)  Compliance with OSHA regulations;
  l)  Use of respiratory protection such as dust masks, cartridge of filter respirators, and/or supplied air respirators;

27. Identify any safety standards or regulations with which SW was to comply in performing services and/or supplying materials at RF.

28. What was the source of SW's information for initially learning that inhalation of asbestos dust and fibers could cause injury or disease in those inhaling the asbestos?

29. When did SW last install or cause to be installed asbestos containing products at RF?

30. Identify all Workers' Compensation claims filed against SW by individuals seeking compensation for injury or disease claimed to have been caused by asbestos.

31. Identify all lawsuits filed against SW by individuals seeking recovery of damages against SW for injury or disease claimed to have been caused by asbestos. Include the name of the plaintiff, the jurisdiction in which the case was filed and the case number/action number/caption/ or style of the case.

32. Identify all current and former SW employees who have had their depositions taken in connection with a claim or case brought against SW because of or based upon exposure to asbestos.

33. Identify all foremen or supervisors employed by SW whose job included the supervision of insulation workers.

34. The verbatim contents of any information concerning asbestos related health hazards given by SW to anyone employed by SW.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing PLAINTIFFS' DISCOVERY REQUESTS TO DEFENDANT SWINERTON BUILDERS was served upon the following  via e-filing via Courtlink and/or U.S. Mail, postage pre-paid on this 13th day of April, 2002:

David Fowler, Esq.
Brian Widmann, Esq.
Fowler, Schimberg & Flanagan, P.C.
*Attorneys for Swinerton Builders*
1640 Grant St., #300Denver, CO  80203
(303) 298-8603
FAX: (303) 298-8748

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2002 JUL 19  PM 4: 49

GREGORY C. LANGHAM
CLERK

BY_____DEP. CLK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.        02-N-1291 (PAC)

KENNETH DIONIGI AND MARY SUE DIONIGI, as Husband and Wife
GLEN GWIN and INA GWEN, as Husband and Wife
and
FOSTER BOB CAMPBELL and MARY CAMPBELL, as Husband and Wife
      Plaintiffs

-vs-

JOHN CRANE, INC., et. al.
      Defendants

---

### PLAINTIFFS' MOTION AND BRIEF TO REMAND
### AND MEMORANDUM OF LAW IN SUPPORT

---

## PLAINTIFFS' MOTION TO REMAND

Plaintiffs move this court, pursuant to 28 U.S.C. §1447(c), for an order remanding this action to

the State of Colorado District Court, County of Boulder (Twentieth Judicial District).  As

grounds therefore, Plaintiffs state the following:

1.    Plaintiffs are diagnosed with permanent, progressive, incurable asbestos caused lung

    disease ("asbestosis").

2.    They filed this lawsuit in State court on April 3, 2002, against various defendants, for

    their exposure to asbestos containing products in Colorado.

3.    Mr. Dionigi, Mr. Gwin and Mr. Campbell are living, but their prognosis is poor.   This

    case was removed before it could be set for an expedited trial.



PLAINTIFF'S
EXHIBIT
B

1

| IN THE UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF COLORADO | |
|---|---|
| Civil Action No: 02-N-1291 (PAC) | |
| KENNETH DIONIGI AND MARY SUE DIONIGI, as<br>Husband and Wife<br>GLEN GWIN and INA GWIN, as Husband and Wife<br>and<br>FOSTER BOB CAMPBELL and MARY CAMPBELL, as<br>Husband and Wife<br><br>     Plaintiffs | |
| -vs- | |
| JOHN CRANE, INC., et. al.<br>     Defendants | |
| **PLAINTIFFS' MOTION AND BRIEF TO REMAND<br>AND MEMORANDUM OF LAW IN SUPPORT** | |

## PLAINTIFFS' MOTION TO REMAND

Plaintiffs move this court, pursuant to 28 U.S.C. §1447(c), for an order remanding this action to

the State of Colorado District Court, County of Boulder (Twentieth Judicial District).  As

grounds therefore, Plaintiffs state the following:

1.    Plaintiffs are diagnosed with permanent, progressive, incurable asbestos caused lung

     disease ("asbestosis").

2.    They filed this lawsuit in State court on April 3, 2002, against various defendants, for

     their exposure to asbestos containing products in Colorado.

3.    Mr. Dionigi, Mr. Gwin and Mr. Campbell are living, but their prognosis is poor.   This

     case was removed before it could be set for an expedited trial.

1

4.    The only basis alleged basis for removal is the doctrine of federal question, specifically "federal officer" jurisdiction.

5.    Removing Defendant, Swinerton Builders,  fails to satisfy the three elements required to support §1442(a)(1) removal, thus failing to establish it was acting under a federal officer.

WHEREFORE, Plaintiffs move the Court for an Order remanding this case to the District Court, Boulder County (Twentieth Judicial District), Colorado.

2

## MEMORANDUM OF LAW

## I. INTRODUCTION

Under the general removal statute, defendants may remove any case of which the district courts have jurisdiction.  28 U.S.C. §1441(a).  Removal statutes are strictly construed against removal.  Shamrock Oil Gas Corp. v. Sheets, 313 U.S. 100 (1941); In re Bethesda Memorial Hospital, Inc., 123 F.3d 1407, 1411 (11th Cir. 1997); Mulcahey v. Columbia Organic Chem. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994).  The removing party has the burden of establishing federal jurisdiction and the case should be remanded if federal jurisdiction is doubtful.  Id.

This case should be remanded because there is no subject matter jurisdiction under 28 U.S.C. § 1442 (a)(1) ("Federal Officer Removal Statute") because Removing Defendant fails to meet the test enunciated in Mesa v. California, 489 U.S. 121 (1989).

## II. NO FEDERAL JURISDICTION

Removing Defendant has not demonstrated a sound basis for the exercise of federal jurisdiction.  This case involves personal injury claims under State law.  This case does not "arise under" federal law and does not belong in federal court.

At the outset, it is emphasized that Defendant has the burden of establishing federal jurisdiction.  Willy v. Coastal Corp., 855 F.2d 1160, 1164 (5th Cir. 1988). Removing Defendant must prove that this case "arises under" federal law.  It is not sufficient that some federal issue might be involved in the case.  An incidental or collateral federal issue "is not enough to deprive the state court of jurisdiction upon petition for removal by the defendant."  Armstrong v. Alliance Trust Co., 126 F.2d 164, 167 (5th Cir. 1942); see also Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S.

3

804, 807 (1986) ("Although the constitutional meaning of 'arising under' may extend to all cases in which a federal question is 'an ingredient' of the action, we have long construed the statutory grant of federal-question jurisdiction as conferring a more limited power").

As Justice Cardozo explained in Gully v. First National Bank in Meridian, 299 U.S. 109 (1936), "[t]o bring a case within [section 1331], a right or immunity created by the Constitution or the laws of the United States must be an element and an essential one, of the plaintiff's cause of action." Id. at 112. The federal right "must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they received another." Id. In frequently quoted language, Justice Cardozo observed:

> What is needed is something of that common sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of problems of causation. One could carry the search for causes backward, almost without end. . . . Instead, there has been a selective process which picks the substantial causes out of the web and lays the others aside. As in problems of causation, so here in the search for the underlying law. If we follow the ascent far enough, countless claims of right can be discovered to have their source in the operative limits in the provisions of a federal statute or in the Constitution itself.

Id. at 100.

Justice Cardozo's observation is remarkably prescient in the context of a modern toxic tort case. Cases involving toxic substances frequently involve multiple exposures, many of which may fortuitously occur in post offices, military bases or national parks. It simply defies common sense to extend federal jurisdiction to activities and products that are virtually identical to those used in a non-governmental context and have no special governmental purpose or relationship. It is equally nonsensical to assert federal

jurisdiction over this case because of Plaintiffs' exposure to asbestos containing products on federal property.   Plaintiffs' asbestos exposure is no different from that of many other asbestos disease victims.   They were exposed to the same products, used in the same way and for the same purposes as those identical products were used in any other commercial or industrial construction.

There is, to say the least, doubt about whether the Plaintiffs' state law claims can be deemed to "arise under" federal law.   Plaintiffs have pled causes of action that arise exclusively under State law.   Federal law is not an element.   Removing Defendant asks this court to assert jurisdiction because Plaintiffs may have suffered a portion of his exposure to privately manufactured asbestos containing products.   This claim in this case arises under State law and should be resolved in the State court system.

## III. REMOVING DEFENDANT HAS FAILED TO DEMONSTRATE FEDERAL OFFICER JURISDICTION

Title 28 U.S.C. § 1442 (a)(1), the Federal Officer Removal Statute, provides in relevant part:

> (a)   A civil action or criminal prosecution commenced in a state court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
> (1)   The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. §1442 (a)(1) (2000).

Although not specifically stated, presumably the crux of Removing Defendant's removal argument under §1442(a)(1) is that the produces or activities in question were

built under the direction of and according to the specifications of a federal officer of the United States or by an agency thereof, or persons acting under him, and that for part of the time period in which Plaintiffs were exposed to asbestos-containing products.

To establish jurisdiction, the defendant must (1) demonstrate that it acted under the direction of a federal officer, (2) raise a federal defense to plaintiff's claims, and (3) demonstrate a causal nexus between plaintiffs' claims and acts it performed under color of federal office. Mesa v. California, 489 U.S. 121 (1989); Fung v. Abex Corp., 816 F. Supp. 569 (N.D. Cal. 1992). *See also* Winters v. Diamond Shamrock Chemical Co., 149 F.3d 387 (5th Cir. 1998); Reed v. Fina Oil & Chemical Co., 995 F.Supp. 705 (E.D. Texas 1998); Akin v. Big Three Industries, Inc., 851 F.Supp. 819 (E.D. Texas 1994); Vanouwerker, 1999 WL 335960; and Faulk, 48 F.Supp. 653.

### (A.)   Acts Under the Direction of A Federal Officer

Under the first prong of Mesa, the defendant must show it was acting under the direction of a federal officer. Here the Removing Defendant has made absolutely no assertion and no showing that it at any time, in any of its activities relevant to this case, was acting under the direction of a federal officer. The totality of Removing Defendant's reasoning in support of its removal is that certain of Defendant's activities at Rocky Flats were performed pursuant to contract with the government. As shown within, this is an insufficient basis to invoke federal jurisdiction. Nowhere has Defendant offered any proof sufficient to carry their burden under this element. Cf. Anderson v. Avondale Industries, Inc., 1994 WL 679827, at *3-4 (E.D. La. 1994). Not only has Removing Defendant provided no proof or affiidavit to carry it's burden (Prout's affidavit submitted by Defendant is deficient), it makes to attempt to identify ANY "officer" who may have

been in any way involved in anything relevant to this case.    If these generalities

invoked federal officer jurisdictions, then anyone providing goods or services to the

government would be entitled to federal jurisdiction.

In order for the Removing Defendant to prove that it was acting under a federal

officer, it must show that the acts forming the basis of the state suit were performed

pursuant to a federal officer's *direct and detailed control*.  Pack v. AcandS, Inc., 838

F.Supp. 1099, 1103 (D.Md. 1993) (emphasis added).  In fact, [a] majority of courts have

held that the federal official must have direct and detailed control over the defendant.

Fung v. Abex Corp., 816 F.Supp. 569, 572 (N.D.Cal. 1992).  If the defendants only

establish that the relevant acts occurred under the general auspices of an agency or other

governmental departments, then the defendants are not entitled to removal under

§1442(a)(1).  Id. at 572.  In this case, as discussed more fully below, to establish "federal

officer" jurisdiction Defendant Swinerton must show that a "federal officer" directed

Swinerton to not warn and protect those, such as Dionigi, Gwin and Campbell from being

exposed to asbestos from Swinerton's activities.

At this point a review of some of the relevant case law in regard to the "acting

under" standard is appropriate.

(i)        In Good v. Armstrong World Industries, Inc., 914 F.Supp. 1125 (E.D.Pa. 1996),

the court found that Westinghouse was not acting under the authority of a federal officer.

Westinghouse claimed that it was acting under the direction and control of the Secretary

of the Navy when it designed and manufactured turbines which allegedly exposed

plaintiffs to asbestos.  However, *Westinghouse attached an affidavit merely stating that*

*the Navy exercised supervision and control through contract documents, design and*

*construction drawings, written specifications and personal oversight.* Westinghouse

failed to establish that the Secretary of the Navy specified the use of asbestos in the

design and manufacture of the turbine generators.  The court in <u>Good</u> draws a noteworthy

distinction in that other facts relied upon by Westinghouse as set forth from the notice

and affidavit applied to the foundations of the government contractor defense, rather than

the officer removal statute.  <u>Id.</u> at 1129.  Defendant Swinerton's arguments in support of

removal in this case are virtually identical to those unsuccessfully asserted by

Westinghouse in <u>Good</u>.

    (ii)   In <u>Guillory v. Reese Contract Service, Inc.</u>, 872 F.Supp. 344 (S.D.Miss

1994), the court held that the defendant was not acting under the direct and detailed

control of a federal officer.  The suit was brought by a plaintiff who was attacked at the

McCoy Federal Building, which was owned by the United States Government.  <u>Id.</u>at 345.

The defendant provided security services pursuant to a contract with the government.  <u>Id.</u>

The contract between the federal government and the defendant designated a government

representative and bestowed upon him "the overall responsibility for administration of

the contract."  <u>Id.</u> at 347.  The government representative duties included determining the

adequacy of the defendant performance, acting as the government representative in

charge of work at the site, ensuring the defendants' compliance with the government

requirements insofar as the work was concerned, and preparing guard post assignments.

<u>Id.</u>  In addition to the oversight provided by the government representative, the contract

required the defendant to have an on-site supervisor who had authority to act for

defendant on a day-to-day basis at the worksite.  <u>Id.</u>  Despite such oversight, the court

stated that the contract itself discloses nothing even approaching the level of official

control necessary to satisfy the acting under requirement of 1442(a)(1). Id. at 347. The court held that even though there was direct contact, it was not of the character to be considered "direct and detailed control" necessary to support removal. Id. at 348.

(iii)    An example of a case that was properly removed is Winters, 149 F.3d 387. It was determined at the district court level that (1) the Defense Department had contracted with the chemical companies for a specific mixture of herbicides which eventually became known as Agent Orange; (2) the defendants were compelled to deliver Agent Orange to the government under threat of criminal sanctions; and (3) the government maintained strict control over the development and production of Agent Orange. Id. at 398-99. The Fifth Circuit was convinced that the government's detailed specifications concerning the make-up, packaging and delivery of Agent Orange, the compulsion to provide the product to the government's specifications, and the on-going supervision of the government exercised over the formulation, packaging and delivery was all sufficient to demonstrate that the defendants acted pursuant to federal direction of an officer or agency of the federal government. Id. at 400.

Nothing even approaching the facts of Winters is alleged here.  In fact, in the Notice of Removal, Removing Defendant does not even allege it was under orders or specifications that directly conflicted with the state law duty to warn of product dangers under which Removing Defendant is now being sued.  Nor does Removing Defendant allege that it was required to produce products that contained specific ingredients, nor to use products that contained specific ingredients, nor to fail to take action to protect those who were exposed to asbestos materials used by Swinerton.  Therefore, it is apparent from the face of Removing Defendants pleadings that removal jurisdiction is lacking.

**(B.)    No Causal Nexus**

  The Removing Defendant has failed to establish the required causal nexus between the conduct allegedly undertaken under color of office at the direction of a federal officer and the acts and omissions complained of by Plaintiffs.

  This is a state law negligence action against Removing Defendant alleging that Removing Defendant was negligent and grossly negligent for failing to warn or take precautions against exposing Plaintiffs to asbestos at a construction site, Rocky Flats. Removing Defendant has not shown, and cannot show, that the actions which it undertook, that Plaintiffs allege were negligent and intentional, were performed at the direction of a federal officer; thus, the nexus required for section 1442 removal is not present. See Bahrs v. Hughes Aircraft Co., 795 F.Supp. 965, 969-70 (D.Ariz. 1992) Ryan v. Dow Chemical Co., 781 F.Supp. 934, 939 (E.D.N.Y. 1992);  Illinois v. Zidek, 691 F.Supp. 1177, 1178 (N.D. Ill. 1988), citing Willingham v. Morgan, 395 U.S. 402, 409 (1969), and Maryland v. Soper (No. 1), 270 U.S. 9, 33 (1926).  To make such a showing Removing Defendant would be required to show that the Government directed it not to protect other workers from exposure to the cancer causing asbestos that Removing Defendant was causing to be dispersed throughout the work site.

  In Winters, the plaintiff's complaint alleged injury from exposure to Agent Orange which was manufactured by the removing defendant for the war.  Winter, 149 F.3d at 390.  Judge Cobb found "the Defense Department expressly issued detailed and direct orders to the defendants to supply a certain product" --Agent Orange.  Id. at 398, citing Winters v. Diamond Shamrock Chemical Co., 901 F.Supp. 1195, 1199-1201 (E.D. Tex. 1995).  Thus, the Court found the necessary causal nexus between the defendant's

10

federally-controlled manufacture of Agent Orange and the plaintiffs' exposure to defendants' federally-controlled Agent Orange. Id. There is nothing approximating the production of agent orange at issue in this case. In fact, Swinerton was not involved in manufacturing anything for the government. Its only function was as a construction company, constructing buildings.

In Reed, "[P]laintiffs' complaint alleges acts taken in the production, manufacture, transport, and testing of butadiene," the very product allegedly causing injury to the plaintiffs. Reed, 995 F.Supp. at 712. The Court found "that production, manufacture and transport was overseen by the federal government to a very specific degree." Id. That is, the court found the necessary causal nexus between the defendants' federally-controlled manufacture, transport and testing of butadiene and the plaintiffs' exposure to defendants' federally-controlled butadiene. Id.

In Akin, the Plaintiffs' complaint alleged injury from exposure "to dust and fumes of the jet engine and jet engine parts" at a United States Air Force Base in Oklahoma City, Oklahoma. Akin, 851 F.Supp. at 821. Judge Cobb noted "that GE manufactured the jet engines repaired at the Air Force base under contract with the Secretary of the Air Force, and manufactured the engines pursuant to specifications set by the Air Force." Id. at 823. That is, the court found the necessary causal nexus between the defendants' federally-controlled repair of GE jet engines manufactured under specifications set by the Air Force and plaintiffs' complaint over exposure to the chemicals from defendants' federally-controlled repair of GE jet engines manufactured under specifications set by the Air Force. Id. at 823-24. The asbestos containing materials to which Plaintiff was exposed had no special "Federal" characteristic or quality. By contrast, in the instant

case, the asbestos containing materials used at Rocky Flats were identical to the asbestos

containing materials that were used in construction sites on commercial buildings and

power plants in downtown Denver.

In Vanouwerker and Faulk, "...the Plaintiffs' allege injuries from the Defendants'

failure to warn about asbestos." Vanouwerker, 1999 WL 335960, at *7;  Faulk, 48

F.Supp. at 663.  Judge Heartfield "concedes federal officer control as to Defendants'

production of Avgas, butadiene, and steel under federal government specifications."  Id.

Defendants argue there is a causal nexus between Defendants' federally-controlled

production of Avgas, butadiene and steel under federal government specifications and

Plaintiffs' complaint about the Defendants' non-federally controlled failure to warn about

asbestos.  Id.  However, Judge Heartfield found there was no causal nexus

> [b]ecause the federal government provided no direction or control on
> warning when using asbestos; moreover, the federal government did not
> prevent Defendants' from taking their own safety precautions heeding
> state-law standards above the minimum standards incorporated in their
> federal contracts.

Id.  Judge Heartfield found that since the federal officer remained completely

silent as to whether to warn about the use of asbestos, the silence was fatal to the "causal

nexus" necessary to establish this prong of the test.  Vanouwerker, 1999 WL 335960, at

*8; Reed, 48 F.Supp. at 664.  In this case, Swinerton makes no suggestion that the federal

officer was other than completely silent as to whether to warn about the use of asbestos.

Further proof that the Government did not restrict warning about or protection

from asbestos dangers is the assertion by various manufacturers of asbestos products used

at Rocky Flats that the manufacturers placed "caution" labels on the products.  There are

two implications to the manufacturer's assertions of having put caution labels on

12

products.

1. It shows that the federal government did not restrict or object to providing information about asbestos dangers at Rocky Flats.

2. Assuming the truth of the manufacturer's assertion of having labeled the product, then Removing Defendant, in using those products in an uncontrolled manner that resulted in exposure to Plaintiffs, was negligent in failing to proceed according the caution label.

Here, Removing Defendant has not shown that the action of any federal officer precluded, or even impacted, its compliance with the state tort duties sued upon. No evidence has been presented that any federal officer directed that Removing Defendant not inform Plaintiffs of the hazards caused by asbestos, not provide protection against inhalation of asbestos, or to intentionally, knowingly, or recklessly cause bodily injury to the Plaintiffs. Regardless of any evidence Removing Defendant might cite that asbestos-containing insulation products were prevalent, necessary, approved, or singled out for use by any federal oversight agency, nothing in Removing Defendant's Notice of Removal shows that any federal officer required Removing Defendant to remain silent as to the dangers to Plaintiffs. Therefore, the required nexus under section 1442 is not present, and the case must be remanded. See Bahrs, 795 F.Supp. at 969-70; Ryan, 781 F.Supp. at 939; Illinois, 691 F.Supp. at 1178 ("To qualify for removal under 28 U.S.C. 1442(a)(1), a federal officer must show a causal connection between his official authority and the conduct with which he is charged."), citing Willingham v. Morgan, 395 U.S. 402, 409 (1969), and Maryland v. Soper (No. 1), 270 U.S. 9, 33 (1926).

**(C)    Defendant has failed to raise a colorable federal defense.**

13

Removing Defendant has made no assertion concerning any colorable defense it may raise. However, based on Removing Defendant's Notice of Removal, it appears that it will rely on the "government contractor" defense as set forth in <u>Boyle v. United Technologies Corp.</u> and <u>Yearsley v. W.A. Ross Constr. Co.</u>  Removing Defendant may also assert that it intends to raise and rely on other defenses and immunities under the Defense Production Act of 1950, 50 U.S.C. 2061, et seq., and its statutory predecessor, e.g., the Second War Powers Act, Ch. 199 Stat. 176 (1942), and any other federal acts relating to the design, construction, and operation and/or maintenance of DSM's premises.

Under the government contractor defense as set forth in <u>Boyle</u>, contractors who supply military equipment to the government are immunized from liability under state tort law providing that they can meet the test outlined in <u>Boyle</u>, which sets the standard for finding state law liability for design defects in military equipment. <u>Boyle</u>, 487 U.S. at 511. Military contractor immunity for design defects applies when: "(1) the United States approved reasonably precise specifications;  (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." <u>Id.</u> at 512. <u>Boyle</u> only applies to cases in which its three parts have direct application. See <u>Bailey v. McDonnell Douglas Corp.</u>, 989 F.2d 794, 801-02 (5th Cir. 1993). <u>Boyle</u> also requires that there be a "significant conflict" between an identifiable federal policy and state law in order for the government contractor defense to apply. <u>Id.</u> at 507-09.

The explicit language of <u>Boyle</u>, as well as its subsequent application by other courts, show that the standard of care articulated in <u>Boyle</u> does not act to bar any claim

14

presented here by Plaintiffs against Removing Defendant. Specifically, <u>Boyle</u> simply does not apply to this case since (a) Plaintiffs do not allege a design defect cause of action against Removing Defendant (the only type of action to which <u>Boyle</u> applies); (b) a "significant conflict" between an identifiable federal policy and the operation of state law is not present; (c) the three <u>Boyle</u> requirements which allow for the displacement of state law which imposes liability for design defects in military equipment have nothing to do with Plaintiffs' claims that Removing Defendant did not warn them of the dangers inherent in their exposure to the asbestos used by Removing Defendant, that Removing Defendant failed to warn or otherwise protect people from inhaling asbestos it used, or that Removing Defendant intentionally, knowingly or recklessly caused bodily injury to Plaintiffs. See <u>Boyle</u>, 487 U.S. at 500-01 (giving elements and scope of standard of care); <u>Trevino v. General Dynamics Corp.</u>, 865 F.2d 1474, 1478 (5th Cir. 1989) (noting <u>Boyle</u>'s applicability in design defect cases); <u>Boyle</u>, 487 U.S. at 507-08 (noting that there must be a conflict between furthering a specific federal policy and honoring Plaintiffs' claims before <u>Boyle</u> applies). Obviously, <u>Boyle</u> does not provide a federal defense to any claim asserted by Plaintiffs as required in <u>Winters</u> and <u>Mesa</u>.

Removing Defendant gives no evidence of any directive by any federal official to either (a) utilize asbestos-containing products when fulfilling any government procurement contract, (b) not tell Plaintiff of the harms from asbestos dust of which they knew, (c) decline to take necessary steps to ensure this invitee Plaintiff a safe work environment, or (d) intentionally, knowingly or recklessly cause bodily harm to Plaintiffs. See generally <u>Trevino</u>, 865 F.2d at 1479-83 (noting that higher level of governmental involvement than is present here is required for <u>Boyle</u> defense); <u>Viala</u>, 1994 WL 139287,

15

at *2. ("Defendants fail to state a colorable federal defense because they have produced no evidence to support the prerequisites to the government contractor defense that the products were designed at the direction of federal specifications or that these specifications conflicted with the state law duties sued upon. To assert the government contractor defense, the product purchased by the government cannot be a product that a supplier sells on the open market anyway.")

In Winters, the court found a colorable federal defense. The court noted that the evidence supports the defendants' assertion that the specifications for Agent Orange were provided by the government and that the product conformed to those specifications. Winters, 149 F.3d at 400. Further, "...the evidence indicates that the defendants provided the Defense Department with ample warnings concerning the risks of the component parts of Agent Orange, but were *specifically prohibited from placing any warnings on the finished product itself* except as allowed by contract." Id. at 401. [Emphasis supplied].

In Reed, the court found a colorable federal defense as well. The court noted: "The evidence here is more than sufficient to show that the federal government specified the exact quality and quantity of products to be used, produced and delivered by the Plaines Butadiene Plant. Presumably, the specifications were followed. Further, since the government dictated the quality and content of the products and the testing of the products, then for the limited purpose of determining whether a colorable federal defense has been claimed, the court can presume that the government was informed of the attendant dangers of these products."
Reed, 48 F.Supp. at 712.

The court in Akin also found a colorable federal defense. "Hodges (Manager of

16

General Electric's Midwest City Office) states that GE manufactured the jet engines repaired at Tinker under contract with the Secretary of the Air Force or his delegee. According to Hodges, GE manufactured the engines pursuant to specifications set by the Air Force." Akin, 851 F.Supp. at 823.

In Vanouwerker and Faulk, Judge Heartfield found that although the Defendants pled a federal defense under the federal officer statute, it was not a "colorable" federal defense, noting that:

> [T]here is no evidence that the Defendants provided the federal government with any warnings about asbestos; nor is there any evidence that the federal government prohibited defendants from warning about the dangers of asbestos. Furthermore, there is no evidence that the government independently knew of the danger of exposure to asbestos. Finally, *the federal government did not dictate any specifications regarding the warning about asbestos-containing products - - let alone demand Defendants insulate their facilities with asbestos-containing products.*

Vanouwerker, 1999 W.L. 335960, at *9 [emphasis supplied]; Faulk, 48 F.Supp. at 665. Judge Heartfield reiterates that the absence of the second prong destroys the propriety of removal regardless whether defendants have "colored" their defenses or not. Vanouwerker, 1999 W.L. 335960 *10; Faulk, 48 F.Supp. at 666.

The Boyle defense has also been rejected in other cases where asbestos material producers argued Boyle was a defense to claims arising from injuries caused by asbestos products supplied directly to the government. In Dorse v. Eagle-Picher Industries, 898 F.2d 1487, 1489 (11th Cir. 1990), the plaintiff claimed injury from exposure to asbestos while in the Navy. In response to plaintiffs' failure to warn claims, defendants attempted to assert the government contractor defense, claiming that since the government specified the packaging for the asbestos products, the Boyle defense precluded a failure to warn

17

claim. Id. at 1489-90.  In rejecting the application of Boyle and the government

contractor defense, the Eleventh Circuit directly relied on the district court's reasoning

that:

> The Court in Boyle faced a situation where the duty under the
> government contract required an escape-hatch mechanism opening
> outward.  The "precisely contrary" duty, an inward-opening hatch, existed
> under the state-imposed duty of care that was the asserted basis of the
> contractor's liability.  The contractor could not possibly comply with both
> its contractual obligations and the state-prescribed duty of care, so state
> law was necessarily displaced.
>
> The present case, however, presents an entirely different situation.
> Specifically, the state-imposed duty of care that is the asserted basis of the
> contractor's liability (warning of the danger) is not "precisely contrary" to
> the duty imposed by the government contract (the duty of manufacture,
> delivery and use of products containing asbestos).  In fact, the evidence
> suggests that no conflict exists between the state tort duty and the federal
> contractual duty.  **Defendant has produced no evidence of any
> government proscription against the use of precautions to minimize
> the danger of inhalation of asbestos.**

Dorse, 898 F.2d at 1489. [Emphasis added].  In Dorse, the removing defendant's

own evidence showed that the U.S. Navy set specifications regarding the packaging,

packing and marking of the asbestos containers themselves.  Still, because the contractor

could both comply with its government-imposed obligations (to provide asbestos

cement), and the state-prescribed duty of care (to warn plaintiffs), Boyle did not apply.

Id. at 1489-1490.

Likewise in In re Joint Eastern and Southern District New York Asbestos

Litigation, 897 F.2d 626 (2d Cir. 1990), the Court of Appeals rejected the argument that

the Boyle government contractor defense applied to a plaintiff's claim based on a failure

to warn of the hazards of asbestos.  As the Second Circuit noted:

> [I]t seems clear to us that Boyle's requirement of government approval of
> "reasonably precise specifications" mandates that the federal duties be

18

> imposed upon the contractor. The contractor must show that whatever warnings accompanied a product resulted from the determination of a government official, ...and thus *that the Government itself "dictated" the content of the warnings meant to accompany the products.*
> ... To us, a plaintiff's ability to pursue a failure-to-warn claim when <u>Boyle</u> may foreclose a design defect claim is not indicative of some loophole inadvertently left open by <u>Boyle</u>, but rather *demonstrates a crucial lack of the necessary conflict between state and federal warning requirements....*Indeed, it is not unreasonable to imagine that, as in this case, *government contracts often may focus on product content and design while leaving other safety-related decisions, such as the method of product manufacture or the nature of product warnings to the contractor's sole discretion.* In these instances, state law design requirements are displaced, although state law warning requirements are not. In a failure-to-warn action, where no conflict exists between requirements imposed under a federal contract and a state law duty to warn, regardless of any conflict which may exist between the contract and state law design requirements, <u>Boyle</u> commands that we defer to the operation of state law.

<u>Id.</u> at 630-31 (citations omitted). So too here, nothing Removing Defendant has alleged supports a claim that any governmental directive precluded it from complying with the state-law duty to warn Plaintiffs of the hazardous conditions on its premises or providing a safe workplace. <u>Boyle</u> and the government contractor defense patently do not apply.

Asbestos products that were used at Rocky Flats are no different than the same asbestos products used in constructing non-government facilities. **SEE Affidavit of Rudolph Dionigi, attached hereto as Exhibit A.** The government contractor defense does not apply to "an ordinary consumer product purchased by the armed forces." <u>In Re Hawaii Federal Asbestos Cases</u>, 960 F.2d at 881-12, citing McKay, 704 F.2d at 451. The asbestos containing materials involved here (gaskets and packing, pipe insulation, asbestos board, drywall joint tape compound and the like) are ordinary commercial products, and they do not represent military equipment entitling Removing Defendant to the protections of the military contractor defense. See In Re <u>Hawaii Federal Asbestos Cases</u>, 960 F.2d at 812.

19

Courts have repeatedly held that asbestos product defendants, and others similarly situated, cannot meet this burden and have remanded similar cases for improper removal. This Court should also remand. )]; In Re Hawaii Federal Asbestos Cases, 960 F.2d 816 (9th Cir. 1992); Overly v. Raybestos-Manhattan, 1996 WL 532150 (N.D. Cal. 1996) (ship builder); Good v. Armstrong World Industries, 914 F. Supp. 1125 (E.D. Penn. 1996) (manufacturer of turbine generators for Naval ships); Megill v. Worthington Pump, 1999 WL 191565 (D. Del. 1999) (manufacturer of pumps for U.S. Navy vessels); Feidt v. Owens Corning, 153 F.3d 124 (3rd Cir. 1998) (manufacturer of turbine installed on U.S. Navy ship); McCormick v. CE Thurston & Sons, 977 F. Supp. 400, 403 (E.D. VA. 1997) (asbestos supplier to U.S.S. Nimitz); Nguyen v. Allied Signal, 1998 WL 690854 (N.D. Cal. 1998) (involving exposure to asbestos-containing military aircraft components at a U.S. Air Force base in Vietnam). See also, Mouton v. Flexitallic, Inc., 1999 WL 225438 (E.D. La. 1999) (ship builder); Arness v. Boeing North American, 997 F. Supp. 1268, 1275 (C.D. Cal. 1998); Westbrook v. Asbestos Defendants (BHC), 2001 WL 902642 (N.D. Cal.).

## IV. CONCLUSION

Defendant has failed to meet the three prongs of the Mesa test. Defendant has not shown that it was acting under the direction and control of a federal officer with regard to matters relevant to this case: the use of asbestos containing materials without warning those who were exposed to that cancer causing substance. Defendant has shown no causal nexus between any asserted federal officer or federal requirement and Defendant's acts and omissions exposing people to asbestos and causing them to become sick from that exposure: specifically, there is no showing that Defendant was prohibited from

20

warning and protecting people from exposure to asbestos.  Defendant has raised on

colorable federal defense; the government contract defense does not fit the facts of this

case involving the use and handling of a product that is identical the use and handling of

identical products  non-governmental work sites.   The State law case should be

remanded to State court.


07/19/02                                         Trine & Metcalf, P.C.
                                                 Attorneys for Plaintiffs

                                                 J. Conard Metcalf, 2489
                                                 1435 Arapahoe Ave.
                                                 Boulder, CO 80302
                                                 (303) 442-0173

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Plaintiffs' Motion and Brief to Remand and Memorandum of Law in Support** was served upon the following via U.S. Mail, postage pre-paid on this 19th day of July, 2002:

Mary Price Birk, Esq.
Ronald L. Hellbusch, Esq.
Susan Hahn, Esq.
Baker & Hostetler, LLP
*Attorneys for Dana and Pneumo Abex*
303 17th Ave, #1100
Denver, CO 80203
(303) 861-0600
FAX: (303) 861-7805

Glendon L. Laird, Esq.
White & Steele, PC
*Attorneys for ACandS*
950 17th Street, 21st Floor
Denver, CO 80202-2804
(303) 296-2828
FAX: (303) 296-3131

James Miletich, Esq.
Long & Jaudon,
*Attorneys for Rio Grande and Rapid*
1600 Ogden Street
Denver, CO 80218-1414
(303) 832-1122
FAX: (303) 832-1348

Bradley Levin, Esq.
Roberts, Levin & Patterson
*Attorneys for Georgia Pacific*
1512 Larimer St., #950
Denver, CO 80202
(303) 575-9390
FAX: (303) 575-9385

Gary M. Clexton, Esq.
King, Clexton & Feola, LLC
*Attorneys for John Crane*
1670 York Street
Denver, CO 80206
(303) 298-9878
FAX: (303) 298-9879

David Nowak, Esq.
White & Steele, P.C.
*Attorneys for Garlock, Inc.*
21st Floor
950 17th Street
Denver, CO 80202-2804
(303) 296-2828
FAX: (303) 296-3131

Shauna Hilgers, Esq.
Law Office of Shauna Hilgers
*Attorney for Flintkote*
6508 Poppy Street
P.O. Box 1254
Arvada, CO 80001
(303) 431-5037
FAX (303) 431-5037

David Fowler, Esq.
Fowler, Schimberg & Flanagan, P.C.
*Attorneys for Swinerton & Walberg*
1640 Grant St., #300
Denver, CO 80203
(303) 298-8603
FAX: (303) 298-8748

22

Bennett Cohen, Esq.
The Kobayashi Law Firm
*Attorneys for Metropolitan Life*
1633 Fillmore Street
Denver, CO  80206
(303) 399-2100
FAX: (303) 780-9836

Steven M. Kaufmann, Esq.
Brian Hoffman, Esq.
Morrison & Foerster, LLP
*Attorneys for ABB Lummus Global, Inc.*
370 17th Street, Suite 5200
Denver, CO  80202
(303) 592-1500
FAX: (303) 592-1510

Dionigi Gwin Campbell.

23

## Affidavit of Rudolph Dionigi

My name is Rudolph Dionigi. I live in Longmont, Colorado, with my wife. I am 75 years old. Most of my working career I worked as a pipefitter. Initially I worked as a pipefitter at Rocky Flats. My pipefitter work at Rocky Flats was between 1957 and 1970. Beginning in 1970 I worked as a pipefitter out of the union hall in Denver, and continued that work for the next 19 years. I worked as a pipefitter on new construction in many locations, including powerplants in Colorado and Wyoming, the Kodak plant near Windsor, again at Rocky Flats and at similar locations.

As a pipefitter I regularly worked directly with what I now know were asbestos containing materials, and near other trades who were using what I now know were asbestos containing materials. The kinds of asbestos containing materials with which I worked directly include gaskets, packing and pipe insulation, and some piping systems. I often worked near insulation workers who were using pipe and boiler insulation and insulating mud. I often worked near carpenters who worked with asbestos board, and other asbestos materials, as well as around other trades using other kinds of asbestos containing materials, such as dry wall joint tape compound, floor coverings, mastics, etc.

The types and brands of asbestos materials I used at Rocky Flats were identical in every respect to the asbestos materials I used at other jobs. The manner in which I, and others, worked with those materials at Rocky Flats was identical in every respect to the manner that I, and others, worked with those materials at other jobs. The same is true of the asbestos materials used by other trades that were working near me – they used the same types and brands of asbestos materials at Rocky Flats that were used elsewhere, and they worked with the materials at Rocky Flats in exactly the same way that they worked with those materials on other jobs. I was given no instruction or advice or information about working with asbestos materials at Rocky Flats that was any different from any instruction advice or information about working with asbestos materials at any other job location. Nothing was ever said about any asbestos dangers, at Rocky Flats or anywhere else I worked, until sometime in the late 1970s or early 1980s. And then, the information given about asbestos dangers was no different at Rocky Flats than anywhere else.

The only difference between Rocky Flats and other jobs was the security and safety precautions taken around "hot" areas – areas where there was radioactivity. But the actual construction work, the materials and the method of handling the construction materials was the same at Rocky Flats as anywhere else.

Rudolph Dionigi

County of Boulder )
State of Colorado )

Duly signed before me this 18th day of July, 2002

Cathy Wasson
Notary Public:

My Commission expires 1/20/05

My Commission Expires 01/20/2005

PLAINTIFF'S
EXHIBIT
A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 02-K-1291 (OES)

RUDOLPH DIONIGI and VIRGINIA DIONIGI as Husband and Wife and GLEN GWIN and INA GWIN, as Husband and Wife, and FOSTER BOB CAMPBELL and MARY CAMPBELL, as Husband and Wife,

     Plaintiffs,

v.

1.   JOHN CRANE, INC., an Illinois corporation,
2.   THE FLINKOTE CORPORATION, a Massachusetts corporation,
3.   GEORGIA-PACIFIC CORPORATION, a Georgia corporation,
4.   PLATEAU SUPPLY COMPANY, a Colorado corporation,
5.   RIO GRANDE COMPANY, a Colorado corporation,
6.   AC and S, Inc., a Delaware corporation,
7.   DANA CORPORATION, a Virginia corporation,
8.   RAPID AMERICAN CORPORATION, a Delaware corporation,
9.   GARLOCK, INC., an Ohio corporation,
10.  PNEUMO ABEX CORPORATION, a Delaware corporation,
11.  KAISER ALUMINUM AND CHEMICAL CORPORATION, a California corporation,
12.  SWINERTON & WALBERG PROPERTY SERVICES, INC., a Colorado corporation,
13.  ABB LUMMUS GLOBAL COMPANY, a New Jersey corporation,
14.  MCDERMOTT, INCORPORATED, a subsidiary of McDermott International, Inc. a Delaware Corporation
15.  METROPOLITAN LIFE INSURANCE CO., a New York corporation

     Defendants.

---

## SWINERTON BUILDERS' RESPONSE TO PLAINTIFFS' MOTION TO REMAND

---

     Defendant Swinerton Builders, (hereinafter "Swinerton") captioned by Plaintiffs as Swinerton

& Walberg Property Services, Inc., through its counsel, Fowler, Schimberg & Flanagan, P.C.,

Responds to Plaintiffs' Motion and Brief to Remand and Memorandum of Law in Support ("Brief")



PLAINTIFF'S EXHIBIT
C

as follows:

## I.   INTRODUCTION

Swinerton contracted with the federal government to construct and renovate portions of Rocky Flats.  Swinerton performed those construction services pursuant many layers of direct government control and supervision.  Every building or renovation project that the government required at Rocky Flats was performed by Swinerton only pursuant to detailed plans and materials provided by the government, its federal officers, and those working under federal officers. Swinerton has now been sued for the work it performed at the government's direction.  Plaintiffs allege that they suffered personal injuries as a result of exposure to asbestos at Rocky Flats. Swinerton has asserted the government contractor defense and properly removed this matter to this U.S. District Court pursuant to 28 U.S.C. §1442(a)(1).  This U.S. District Court must retain jurisdiction over this matter because jurisdiction is proper and the "uniquely federal interests" at issue here are part of the federal common law which requires federal, not state, judicial resolution. *Boyle v. United Technologies Corp.*, 487 U.S. 500, 504 (1988).

## II.   THE FEDERAL JURISDICTION AT ISSUE:

28 U.S.C. §1442(a)(1) provides in pertinent part:

(a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office. . .

The statute is satisfied if the removing party: (1) is a "person" within the meaning of §1442(a)(1); (2) demonstrates that it acted pursuant to a federal officer's directions and that a casual nexus exists between those acts and the plaintiff's claims, and; (3) raises a colorable federal defense

to the plaintiff's claims. *Winters v. Diamond Shamrock*, 149 F.3d 384, 398-400 (5th Cir. 1998).[1] The right to remove for conduct performed under color of federal office is absolute, and the policy *favoring* federal officer removal "should not frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *City of Aurora v. Erwin*, 706 F.2d 295, 296 (10th Cir. 1983)(quoting *Arizona v. Maypenny*, 451 U.S. 232, 242 (1981)).

Sections I and II of Plaintiffs' Brief have no bearing on this matter. Both of those sections argue that this case involves personal injures claims under state law, therefore this Court's federal jurisdiction is improper because the claims do not "arise under" federal law. Within those sections Plaintiffs also argue that removal statues are to be strictly construed and that if federal jurisdiction is doubtful the case should be remanded. Those arguments apply only to federal question jurisdiction and removal pursuant to 28 U.S.C. §1441, but do not apply to the removal statute at issue here, §1442(a)(1), as a matter of law. Federal officer removal pursuant to § 1442(a)(1) considers only the status of the removing defendant and its defenses, not the origin of Plaintiffs' claims. *Mesa v. California*, 451 U.S. 121, 124-34 (1989). With the exception of *Mesa*, every case cited and argument made throughout Plaintiffs' Brief §§ I and II, including J. Cardozo's quote, concerns the "well pleaded complaint rule" within the meaning of federal question jurisdiction and removal pursuant to 28 U.S.C. § 1441. The removal statue at issue here however, "serves to overcome the 'well-pleaded complaint' rule which would otherwise preclude removal even if a federal defense were alleged." *Mesa*, 489 U.S. at 136.

The standards of review and analysis differ greatly between federal question removal, and removal pursuant to §1442(a)(1). It is true that "normally the federal removal statute should be

---

[1] Plaintiffs do not challenge that Swinerton is a "person" within the meaning of §1442(a)(1). Plaintiffs do not challenge the timeliness of Swinerton's Notice of Removal.

strictly construed . . . However when jurisdiction is predicated on §1442 a more liberal interpretation

of the removal statute is to be entertained in order to effectuate the purposes of § 1442 which is to

require the protection of a federal forum for federal officers." *Reed v. Fina Oil*, 995 F.Supp. 705,

710 n.5 (E.D. Tex. 1998)(citing *Willingham v. Morgan*, 395 U.S. 402, 406-07 (1962)). Accordingly,

the Plaintiffs' argument at §§ I and II of their Brief do not apply to this case and should not be

considered by this Court.  Instead, this Court must apply the standards of review applicable to

§1442(a)1), and consider this Defendant's relationship with the federal government and the federal

defense it has asserted. *Mesa*, 451 U.S. at 124-34.

## III.  THE IMPACT OF THE PROCEDURAL POSTURE OF THIS CASE AND WILLIAM PROUT'S AFFIDAVIT

A quick review of the pleadings filed in this case indicate that this case is procedurally quite

young, as some of the Defendant's answers were only recently filed.  Very little is known of The

Plaintiffs.  The Complaint alleges no dates of potential exposure to asbestos, no listing of job sites

where the alleged exposure may have occurred, and there are no allegations as to his employment

during that time.  To establish venue, Plaintiffs allege that the injuries occurred in Boulder County,

Colorado.  The location of the alleged personal injuries, Rocky Flats, in Jefferson County Colorado,

was not divulged by Plaintiff until recently. *See,* Swinerton's Notice of Removal, p.5.

Upon being advised of the same, this Defendant filed its removal papers and began searching

its archives in San Francisco and Los Angeles for documents relevant to Rocky Flats.  Upon

information and belief that search will not reveal many pertinent documents.  In light of the nature

of Rocky Flats, a high security weapons production facility, the federal government has retained *all*

documents generated during its construction and design.  In response to a Freedom of Information

Act request for documents, the Rocky Flats' FOIA officer informed the undersigned on July 29,

2002, that her search has *thus far* identified more than 19,000 documents that concern Rocky Flats' construction. There is no ready access to those documents. Upon a commitment of $7,000 act on that FOIA request, it will take a minimum of three weeks just to compile and transport the documents to a site where government review process can begin. The FOIA officer would not estimate how many months it will then take to review each of those documents to determine whether each is responsive to the FOIA request, and then determine whether each document will be withheld and/or redacted for security reasons.

Given the scope of Rocky Flats; a 6500 acre high security weapons production and plutonium processing facility, whose construction began in the 1950's and concluded in pertinent part in the late 1980's: it is not unreasonable to surmise that many more than 19,000 documents were generated during and for its construction. After the FOIA officers have reviewed and turned over the documents, the process of locating documents relevant to the issue at hand will be extremely time consuming.

Accordingly, at this very early stage of this litigation, Swinerton cannot produce the detailed plans and material lists that evidence the federal government's direct control of Rocky Flats' construction. Because Plaintiffs have not alleged when the alleged exposure occurred during Rocky Flats' 30 years of construction, Swinerton could not know where to begin looking even if it had all of the relevant documents.

Swinerton has however, located a former employee who worked at Rocky Flats. William Prout was Swinerton's senior engineer and later its deputy project manager for Rocky Flats. Moreover, Mr. Prout, during a hiatus from Swinerton, worked for the Atomic Energy Commission, a predecessor to the Department of Energy ("D.O.E.") which was the federal agency charged with creating and controlling Rocky Flats. Mr. Prout's worked for that agency as a senior engineer and

on site officer at Rocky Flats to oversee and control its construction. Mr. Prout's affidavit states that Swinerton built and renovated Rocky Flats pursuant to detailed plans and material lists under the direct and detailed control of a federal agency, federal officers and persons acting under federal officers. Given the nature of Rocky Flats, this detailed federal supervision and control over the construction of this sensitive facility is reasonable and to be expected. Mr. Prout's affidavit does not assert anything that is unexpected, outrageous or otherwise difficult to believe. Plaintiffs have offered no substantive evidence to refute the same.

## IV.   REMOVAL PURSUANT TO §1442(a)(1) IS PROPER AND NECESSARY

This case presents important federal issues that must be litigated in this federal court. In *Boyle*, Justice Scalia explains that the development of the federal common law includes the federal defense at issue here, the government contractor defense, because that defense involves "uniquely federal interests." *Boyle,* 487 U.S. at 452-53. The Supreme Court has specifically noted that one of the most important reasons for federal officer removal is to determine the validity of that defense. *Willingham*, 395 U.S. at 407. Because Swinerton acted under the direction of a federal officer, and has asserted a colorable federal defense, Plaintiffs' Motion to Remand must be denied. *Winters*, 149 F.3d at 398.

## A.   SWINERTON ACTED UNDER FEDERAL DIRECTION WHEN IT CONSTRUCTED AND RENOVATED PORTIONS OF ROCKY FLATS:

This element includes two considerations: the first is whether Swinerton's activities were performed pursuant to federal direction, i.e. the color of federal office, and the second is whether that direction was direct and detailed.[2]   In light of the Supreme Court's "admonishment that the statutes'

---

[2]   While some circuits have combined the "acting under" and "casual nexus" prongs as one element, others separate these issues as distinct elements. For purposes of clarity the casual nexus prongs is discussed below.

'color of federal office' requirement is neither limited nor narrow", this element of removal should be afforded a "broad reading so as not to frustrate the purpose of [§1442(a)(1)]", which is to provide a federal forum. *Id.*

Swinerton has satisfied the "acting under" element because it performed construction services at Rocky Flats pursuant to the direct and detailed control of a federal agency, the Department of Energy, its officers, and persons working under those federal officers.

It is not disputed that Rocky Flats was constructed by an agency of the federal government, the Department of Energy. It is not disputed that Swinerton contracted directly with the federal government to build at the government's direction. Rocky Flats was constructed to build components of nuclear weapons using large quantities of radioactive materials. Clearly, the construction of Rocky Flats was unlike the construction of common commercial buildings. To construct the highly sophisticated weapons manufacturing plants and plutonium processing facilities the federal government and its officers did not simply allow its building contractors[3] to build and remodel as they saw fit. Unlike some commercial construction practices, Swinerton had no latitude or authority to choose its building materials. Instead, the Department of Energy had its own officers on site to monitor and control Rocky Flats' construction, and ensure that it was built correctly and pursuant to the detailed plans and material lists. Mr. Prout's employment with the Atomic Energy Commission (now the D.O.E.) as one of the federal government's on site officers is evidence of the same.

The D.O.E. directed Swinerton not only through its on site officers such as Mr. Prout, but also through the D.O.E.'s federal officers in charge of Rocky Flats' construction that operated out

---

[3] Defendant ABB Lumus has also asserted the government contractor defense as it too, upon information and belief, was a building contractor at Rocky Flats that contracted directly with the federal government in the same manner as this Defendant..

of Kirkland AFB, NM.  Moreover, Swinerton's work was supervised daily and directed in great

detail by persons acting under that D.O.E. federal officer to include the operating contractor (such

as Rockwell) and the engineering contractor (such as C.F. Braun).  Both of those entities also

contracted directly with the D.O.E. to build Rocky Flats pursuant to the D.O.E., and its officers',

direction.  The fact that Swinerton was, in part, under the direction of the federal operating contractor

and federal engineering contractor is not fatal because those entities are persons acting under a

federal officer within the meaning of §1442(a)(1).  *See, e.g. Reed v. Fina Oil,* 995 F.Supp. 705 710

(E.D. Tex. 1998)(fact that rubber factory built by removing defendant was constructed under the

control of a company chartered by the federal government was not fatal to the removing defendant's

federal officer jurisdiction).   Accordingly, Swinerton acted under the direction each of the

entities/persons enumerated in §1442(a)(1); "(1) The United States or any agency thereof or any

officer (or any person acting under that officer) of the United States..." which undoubtedly satisfies

the acting under element.

　　　The control that the federal government, its officers and those working under its officers, had

over Swinerton was direct and detailed which also satisfies this acting under element.  Swinerton

was not merely working under the general auspices of federal control, such as within a heavily

regulated industry.  Instead, Swinerton built and renovated portions of Rocky Flats, which, as

discussed above, was a highly technical, security sensitive, and important federal weapons facility.

All of the design and engineering work done by federal officers, in concert with the operating and

engineering firms that worked under those officers, would be meaningless unless the facilities'

construction was proper.  It is for that reason that Swinerton's construction of the plutonium

facilities, weapons manufacturing plants and everything else at Rocky Flats was under close federal

scrutiny.  That work was done only pursuant to the detailed plans, specifications and material lists

generated by the D.O.E. in concert with its on-site engineers and the D.O.E.'S operating and design contractors. *See,* Affidavit of William Prout.

The cases relied on in Plaintiffs Brief for the acting under element are discussed generally below. Plaintiffs' reliance on *Galere v. Ere's Contract Services*, 872 F.Supp. 344 (S.D. Miss. 1994) is worth discussing here however as it underscores Swinerton's acting under argument. In that case a firm that contracted with the federal government to provide security services at a federal building was sued by a victim of an assault that occurred at that building. The court found that the removing defendant did not satisfy the "acting under" requirement because the security firm's government contract was too vague ( "maintain law and order", perform "such functions as may be necessary", and take "all necessary precautions") to find that the government had direct and detailed control over the defendant's contract performance. *Id.* at 347. That scenario is far removed from federal oversight and detailed control of Swinerton's construction services.

Plaintiffs' Brief does not dispute that Swinerton worked for, and contracted directly with the D.O.E. and its predecessors. Plaintiffs Brief does not, nor cannot offer any substantive evidence to refute that Rocky Flats was constructed under the detailed control of the federal government, its officers, and persons working under those officers. Instead, Plaintiffs argues that removal in inappropriate because Swinerton does not identify a specific federal officer that directed Swinerton. This argument is weak given that the Plaintiffs have not alleged when and where they worked at Rocky Flats, thus identifying a federal officer for the relevant time period is virtually impossible. However, as set forth above, Mr. Prout operated in that capacity.

*Winters* makes it clear that the "acting under" requirement is to be afforded liberal reading, and not a narrow and grudging interpretation of §1442(a)(1). This element simply requires that the removing defendant acted under federal direction. Swinerton acted under the D.O.E., its federal

officers, and others acting under the federal officers.  Like the rubber factory in *Reed,* Swinerton's construction at Rocky Flats was understandably under strict supervision and detailed control.  *Reed* at 710-10.  Swinerton has shown that it acted under the detailed control and direction of the D.O.E., its federal officers and those acting under the federal officers, and has met its "acting under" burden.

**B.    TO ESTABLISH A CASUAL NEXUS SWINERTON IS NOT REQUIRED TO SHOW THAT IT MAINTAINED AN UNSAFE WORK SITE AT THE   FEDERAL GOVERNMENT'S DIRECTION.**

The removing defendant must show a causal nexus between the federal direction and the conduct with which he is charged.  *Winters*, 149 F.3d at 389.  Again, this element is not to be construed in a limited or narrow fashion, but should be afforded a broad reading.  *Id.*   The casual nexus element simply asks whether there is a causal connection between the federal direction and the conduct that is the basis of plaintiffs' claims.  *Winters*, 149 F.3d at 398.

Plaintiffs argue that to establish federal jurisdiction, Swinerton must prove that a federal officer directed Swinerton not to warn or protect them from asbestos exposure.  Not only did the Supreme Court refute such an assertion long ago, that theory does not with stand the scrutiny of negligence law.  The issue is very simple; the casual nexus element is satisfied because Swinerton has been sued for construction practices that it performed at the government's request and direct control.

Plaintiffs argue throughout their Brief that Swinerton must prove that the government mandated that Swinerton not warn them of asbestos dangers and not protect them from asbestos dangers.  This Defendant is required to admit liability to establish federal jurisdiction.  The Supreme Court has recognized and reiterated that such an absurd interpretation of the casual nexus element is not required for federal officer jurisdiction.  In *Maryland v. Soaper(No. 1)*, 270 U.S. 9 (1926), the

Supreme Court considered a removal petition filed by federal prohibition agents, and opposed by the state of Maryland, in a criminal murder action. Chief Judge Taft rejected Maryland's contention that a federal officer can remove only "by admitting that he did the act for which his is prosecuted." *Id.* at 32. *See also, Boyle*, 489 U.S. at 131(discussing and affirming Judge Taft's reasoning).

Notwithstanding that Plaintiffs argument has already been rejected by the Supreme Court, it is important to show why that argument does not comport with negligence principles.

To illustrate their theory, that Swinerton must show that its work place was unsafe at the government's mandate, Plaintiffs discuss many products liability cases. In each case, the pivotal question is whether the claim arose from a government mandated use of a product that would otherwise violate state product liability law, either as design defect or due to a failure to warn[4]. It is not necessary to review each of the cases cited by Plaintiffs, as they all fall on one side of the fence or the other: either the government required its contractor to produce a product that violated state products liability law, thus establishing a casual nexus between government control and plaintiffs claims, or; the state law claims arose from acts attributable only to the manufacturer, and the casual nexus element was not satisfied.

The important point here is that all of the cases cited by Plaintiffs to support their contention concern the sale and manufacture of products and whether the government required that they be defective and unreasonably dangerous. All of the cases are set against the backdrop of state products liability law as derived from Restatement (Second) of Torts §402A. The casual nexus question for products cases asks whether a product is compliant with both federal and state strict liability law, or whether it violates the latter at the government's direction. With a subtle sleight of hand, Plaintiffs

---

[4]*Compare; Good v. Armstrong World Industries* 914 F.Supp. 1125, 1130 (E.D. Penn. 1996)(no casual nexus to government control when Navy did not require the use of injury causing asbestos in the design and manufacture of turbine engines); *with, Winters*, 149 F.3d at 398-400(government required specific components and ratios of dangerous chemicals to create "agent orange" for Vietnam War which caused plaintiff's injuries and gave rise to her state law design defect claim). The failure to warn cases cited by Plaintiffs illustrate the same pivotal question. *Compare; Dorse v. Eagle Picher Industries*, 898 F.2d 1487, 1489-90 (11th Cir. 1990)(contract with Navy did not require that cement be shipped without warning of asbestos and contractor could have complied with contract and state's products liability law duty to warn); *with, Winters*, 149 F.3d at 398-400 (government's requirement that agent orange be shipped into battle with no warning labels was casual nexus to plaintiffs state law failure to warn claim).

impermissibly lift that query from products liability cases, and try to apply it to their negligence claim against Swinerton.

As to Swinerton, this is not a products liability case and product liability concepts have no bearing on this defendant's liability. It is not disputed that Swinerton did not sell or manufacture the asbestos at issue. Plaintiffs' Complaint makes no such allegation. Swinerton constructs and renovates buildings. Colorado law does not extend the principles of product liability to real property improvements. *Hidalgo v. Dagan*, 206 F.3d 1013, 1018 (10th Cir. 2000). The rendering of services does not give rise to the doctrine of strict liability because there is no mass production and distribution, nor are there consumers needing protection from an unknown manufacturer. *Kaplan v. Lazy U Ranch*, 615 F.Supp. 234 (D.C. Colo. 1985). The duty to warn of a dangerous product lies with the product manufacturer or seller, not the purchaser or end user. *Mat. v. Mile Hi Concrete*, 819 P.2d 550 (Colo. App. 1991)(concrete supplier had duty to warn purchaser of dangers of wet concrete).

The problems that arise when implementing Plaintiffs' contention that Swinerton must show that it maintained an unsafe work site at the governments direction are numerous:

The crux of strict product liability is the product itself and whether it is defective. *Blue flame Gas v. Van Hoose*, 679 P.2d 579 (Colo. 1984). Strict liability alleviates a plaintiff's burden to establish fault, the fact that the product was defective is sufficient. *Id.* Negligence principles are not applicable to products liability cases. *Good v. A.B. Chance Co.*, 565 P.2d 217 (Colo. App. 1977). Accordingly, the plaintiff in a products liability case need not prove that a duty existed or that the manufacturer breached that duty. Those elements of proof are subsumed by the determination that the product was defective. Every case Plaintiffs rely on when arguing that Swinerton must show that it maintained an unsafe work site at the governments direction, is a product liability case. When

the courts are construing considering the casual nexus in a federal officer products liability case, the only issue is the product's defect and whether the government's requirement of the product made it defective under state law.   There is no legal requirement in those products liability cases to consider the manufacturer's duty, breach, reasonableness or other negligence principles.   Therefore, if the products liability nexus test is applied to this negligence claim, and Swinerton is required to admit that its work site was unsafe at the governments direction: the elements of duty, breach, reasonableness and other negligence principles would be impermissibly removed from Plaintiffs negligence claim.   <u>Plaintiffs proposed nexus test fails because it improperly shifts the burden to this Defendant to admit negligence elements that are not applicable to the products liability cases from which Plaintiffs' test originated.   It is Plaintiffs' burden to prove their negligence claim against this Defendant.   Swinerton need not concede the same simply to invoke this court's jurisdiction.</u> *Maryland,* 270 U.S. at 32; *Boyle,* 489 U.S. at 131.

Such a requirement would certainly frustrate the purpose of the statute, to provide a neutral federal forum to resolve federal defenses, because no such federal officer facing a negligence claim would seek that federal jurisdiction at such a risk.   Any reading of the casual nexus test that would require such an admission of liability would fly in the face of is the Supreme Court's "admonishment that the statutes' 'color of federal office' requirement is neither limited nor narrow", this element of removal should be afforded a "broad reading so as not to frustrate the purpose of [§1442(a)(1)]", which is to provide a federal forum. *Winters,* 149 F.3d at 398.

In cases such as *Winters, supra,* a product such as agent orange cannot be made safe, but the government required the product for its wartime effort.   That balancing of risk and utility that may justify the manufacture of agent orange is not applicable to work place safety.   By its very nature, products liability law is a balancing act of risk and utility.   That balancing is not found in work place

safety statues and guidelines as there is simply no logical reason to maintain an unsafe work site, or for the government to mandate that a work place be unsafe.  A dangerous product with a warning may be used safely; whereas a workplace in which the government requires no warnings of dangers and mandates no protection from dangers - is by definition a dangerous work place.  This society does not operate that way.  Plaintiffs' assertion that Swinerton must affirmatively prove that its work site was unsafe, that the government mandated those unsafe practices, and that unsafe work site is the proximate cause of the injuries flies in the face of logic.  Such a condition precedent to federal officer jurisdiction would have perverse incentives on work place safety.

The casual nexus prong of federal officer jurisdiction asks only whether the acts complained of arose from the government's direction. *Winters,* 149 F.3d at 398.  That element has not been expanded to the degree Plaintiffs assert.  Such an analysis need not require that Swinerton admit that its work place was dangerous, or forego its broad and absolute right to federal officer jurisdiction. *Id.*   Swinerton was not required to by the government to disregard OSHA or other safety requirements.  In this case the government directed Swinerton to build pursuant to detailed plans, and material lists, and under the direction of many supervising federal officers.  Swinerton's work and its work site (which owned by the federal government) were both controlled by the federal government, and Plaintiffs injuries allegedly occurred at that federally controlled work site.  Swinerton has satisfied the casual nexus element of §1442(a)(1).

## C.   <u>SWINERTON HAS ASSERTED A COLORABLE FEDERAL DEFENSE:</u>

The federal defense at issue here is the government contractor defense.  The elements of that defense are: (1) the federal government approved reasonably precise specifications; (2) the equipment conformed to those specifications, and; (3) the supplier warned the federal government of the dangers in the use of the equipment. *Boyle v. United Technologies Corp,* 487 U.S. 500, 512

(1987). For purposes of federal officer jurisdiction this Defendant need not prove that the defense is dispositive, the defense need only be deemed colorable: "the officer need not win his case before he can have removed." *Willingham*, 395 U.S. at 407.

As set forth above, Swinerton was directed and controlled by the D.O.E., its on site officers, and persons working under those officers. The construction of Rocky Flats was always under the close scrutiny of the federal government, and the government owns the work site. As Mr. Prout has attested, the federal government oversaw and approved every facet of Rocky Flats' construction. The plans and material list were generated by persons working under federal officers (the operating contractor and the engineering contractor) in concert with the on-site government engineers, to include Mr. Prout. Accordingly, the first element is satisfied.

As to the second element, Swinerton contracted to build and renovate buildings. There is no allegation that Swinerton did not perform its duties to the government's specifications. Swinerton had no role in deciding what materials to use and or any other aspect of the facilities' construction. Instead, Swinerton built exactly what it was told to build, in the exact manner it was instructed build, while using the exact material that were specified each building or renovation. Mr. Prout's Affidavit attests to the same. As to any safety issues, government officers were always onsite, not only to control and direct construction, but also to ensure compliance with Swinerton's contract which undoubtedly required compliance with work place safety enactments.

The third element asks whether Swinerton warned the government of the dangers. Swinerton's work site safety, and safety warnings were commensurate with the state of the art. Because Plaintiffs have not alleged when and where they worked at Rocky Flats during its 30 year construction, it is difficult, if not impossible identify a specific warning that would apply to the claims at hand. Moreover, assuming arguendo that dangers existed, the government's knowledge

of any safety issues can be presumed, not only because the government is the landowner, but also because federal officers were constantly on site supervising and controlling Rocky Flats' construction. Many courts have recognized a presumption that the government know of the dangers associated with certain products that it required the us of, including asbestos. *See, Akin v. Big Three Industries*, 851 F.Supp 819, 823 (E.D.Tex. 1994)(asbestos); *Winters*, 901 F.Supp. 1195, 1200 (E.D.Tex. 1995) (agent orange); *Reed*, 995 F.Supp at 712(butadiene).

Plaintiffs' argument that the government contractor defense is only applicable to design defect cases is not supported by law. While *Boyle* construed a design defect case, it did not limit its holding only to such cases. *Dorse*, 898 F.2d at 1489. In *Boyle*, Justice Scalia traces the history of the defense which includes many cases that are far removed from design defect claims. *Boyle* 487 U.S. at 504-511. The fact that the defense arises from the discretionary function exception to Federal Tort Claims Act, is further evidence that the defense is applicable to any tort that satisfies the *Boyle* elements. *Id.* at 511-12. The *Guillory* case cited in Plaintiffs Brief, and discussed above, considers a service contract for the provision of security services. That court, upon review of other cited cases, found that "the defense applies to all contractors, not just military contractors, and that it applies to performance contracts, not just procurement contracts. " *Guillory, v. Ree's Contract Service*, 872 F.Supp. at 346.

Plaintiffs discussion of cases that disallowed the government contractor defense omits that those case were not considering whether the defense was colorable, but whether it withstood a motion for summary judgment. Again, "the officer need not win his case before he can have removed." *Willingham*, 395 U.S. at 407. Cases such as the *In re Hawaii Federal Asbestos Cases*, 960 F.2d 806 (9th Cir. 1992), in which the court did not recognize the defense for asbestos, is not a majority position, but only side of the split in jurisdictions on this issue. In *Carley v. Wheeled*

*Coach*, 991 F.2d 1117 (3rd Cir. 1993) the court ruled that the government contractor defense was available to a defendant that provided ambulances to the government. The Supreme Court denied certiorari to *Carley*, precluding a resolution of the circuit split. *Carley v. Wheeled Coach*, 510 U.S 868 (1993).

The "significant conflict" consideration discussed in *Boyle*, and argued in Plaintiffs' brief, asks whether an identifiable federal policy is in conflict with state law. Plaintiffs' assert the same argument discussed above as to casual nexus. That argument does not apply for the reasons stated above. That consideration is satisfied by the very fact that state law may have prohibited asbestos, whereas the federal control at Rocky Flats, as alleged by Plaintiffs, required its use. Again, without further information as to the dates of alleged exposure, type of exposure, etc, that have not been pled by Plaintiffs it is impossible, through no fault of this Defendant, to definitively identify any other conflict within the 30 year construction of Rocky Flats.

The government contractor defense has been pled by this Defendant, and Defendant ABB Lumus. The defense is colorable. The government contractor defense is an integral part of the federal common law; its evolution, and its resolution in this case should be at the hands of this federal court, not the state courts. *Boyle*, 487 U.S. at 504.

## V.   CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Remand should be denied.

Dated this ___ day of _____, 2002

FOWLER SCHIMBERG & FLANAGAN, P.C.

Daniel M. Fowler, Esq.
Brian E. Widmann, Esq.
1640 Grant Street, Suite 300
Denver, Colorado 80203
Telephone: (303) 298-8603

ATTORNEYS FOR DEFENDANT SWINERTON
BUILDERS

## CERTIFICATE OF SERVICE

I hereby certify that on this _____ day of _____, 2002, I caused a true and correct copy of the foregoing to be placed into the United States mail, first class postage prepaid, and correctly addressed to the following:

J. Conard Metcalf, Esq.
Jeffrey R. Hill, Esq.
Trine & Metcalf, P.C.
1435 Arapahoe Avenue
Boulder, Colorado 80302
*Plaintiff's Counsel*

Gary M. Clexton, Esq., Reg. No. 17419
King Clexton & Feola, LLC
1670 York Street
Denver, Colorado 80206
*Attorneys for John Crane, Inc.*

Shauna L. Hilgers, Esq.
Law Office of Shauna Hilgers
Post Office Box 1254
6508 Poppy Street
Arvada, Colorado 80001
*Attorneys for The Flinkote Corporation*

Bradley Levin, Esq.
Roberts Levin & Patterson
1512 Larimer Street, Suite 950
Denver, CO 80202
*Attorneys for Georgia-Pacific Corporation*

Dennis H. Markusson, Esq.
Markusson Green & Jarvis, P.C.
999 18th Street, Suite 3300
Denver, CO 80202
*Attorneys for Plateau Supply Company*

James Miletich, Esq.
McConnell, Siderius, Fleishner, Houghtaling
& Craigmile, LLC
2401 15th Street, Suite 300
Denver, CO 80202
*Attorneys for Rio Grande Company*

Susan R. Hahn, Esq.
Baker & Hostetler, LLP
303 East 17th Avenue, Suite 1100
Denver, Colorado 80203
*Attorneys for Dana Corporation and
Pneumo Abex Corporation*

James Miletich, Esq.
McConnell, Siderius, Fleishner, Houghtaling
& Craigmile, LLC
2401 15th Street, Suite 300
Denver, CO 80202
*Attorneys for Rapid American Corporation*

David Nowak, Esq.
White & Steele, P.C.
950 17th Street, Suite 2100
Denver, CO 80202
*Attorneys for Garlock, Inc.*

Steven M. Kaufmann, Esq.
Brian Hoffman, Esq.
Morrison & Foerster, LLP
370 17th Street, Suite 5200
Denver, Colorado 80202
*Attorneys for ABB Lummus Global
Company*

Bennett Cohen, Esq.
Kobayashi Law Firm
1633 Fillmore Street
Denver, Colorado 80206
*Attorneys for Metropolitan Life Insurance
Co.*

Glendon L. Laird, Esq.
White & Steele, P.C.
950 Seventeenth Street, Suite 2100
Denver, Colorado 80202
*Attorneys for AC and S, Inc.,*

Maureen Reidy Witt, Esq.
Holland & Hart
8390 E. Crescent Parkway, Suite 400
Greenwood Village, CO 80111-2800
*Attorneys for Kaiser Aluminum & Chemical Corp.*

Magistrate Schlatter
1929 Stout St.
Denver, CO 80294

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2002 SEP -3 PM 4: 42

JAMES R. MANSPEAKER
CLERK

BY_____DEP. CLK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.        02-K-1291 (OES)

RUDOLPH DIONIGI, et. al.

       Plaintiffs

-vs-

JOHN CRANE, INC. et. al.

Defendants

---

### PLAINTIFFS' REPLY TO DEFENDANT SWINERTON'S RESPONSE TO PLAINTIFFS' MOTION TO RMAND

---

Plaintiffs submit the within reply in support of Plaintiffs' Motion to Remand:

**Swinerton has made no showing that it was subject to detailed supervision, control or specifications with regard to the issue of supplying and using asbestos.**

The contracts under which Swinerton performed work at Rocky Flats would provide the best way to allow the court to determine whether Swinerton's contracts with the government provided detailed oversight and supervision concerning matters relevant to this case (asbestos dangers). Or, even to provide the court with an affidavit from some "federal officer" saying that there was detailed supervision concerning asbestos health and safety issues.

Swinerton has not provided the court with any government contract or government requirement with which Swinerton claims it was required to comply.[1] Nor has Swinerton supplied the court with the affidavit of anyone with knowledge of Swinerton's supplying

---

[1] Swinerton is the party in this case most likely to have possession of the contracts and requirements, if any, between Swinerton and the Government. Swinerton's failure to provide the court with any such contract or requirement, should permit an inference that the contract or requirement would be detrimental to Swinerton's position herein. Swinerton could have provided one or more contracts and chose not to provide ANY contracts.



PLAINTIFF'S
EXHIBIT
D

statute are not met.  Guillory v. Reese Contract Service, Inc., 872 F.Supp. 344 (S.D.Miss 1994).

Notwithstanding Swinerton's failure to provide the court with any contract under which Swinerton operated at Rocky Flats, Swinerton argues that there are thousands of pages of documents relating to the construction of Rocky Flats.  Swinerton argues that for some reason all of those documents have something to do with the present inquiry. However, the only documents that might be relevant to defendant's opposition to the remand motion are those documents:

- That deal with defendant's activities, rather than the activities of other contractors.
- That deal with the use of asbestos materials, and specifically those documents, if any, that deal with government instructions to Swinerton concerning the supply of asbestos to Rocky Flats and the use of asbestos at Rocky Flats.
- That show that Swinerton could not have complied with the requirements of its Federal contracts and simultaneously with State tort law.  See. e.g., Winters v. Diamond Shamrock Chemical Co., 149 F.3d 387 (5th Cir. 1998). Swinerton is the entity most likely to have possession of documents relevant to this inquiry, it has provided no such information to the Court.

Swinerton's argument about the large volume of documents generally dealing with construction of Rocky Flats is beside the point.  Swinerton does not explain why it cannot rely on its OWN records of its OWN construction activities at Rocky Flats.  Instead Swinerton refers generally to ALL construction records dealing with Rocky Flats. However, the records relating to construction that are most likely to be relevant to whether Swinerton had any Government direction or control regarding asbestos are the actual contracts under which Swinerton performed construction work at Rocky Flats. Swinerton makes no explanation about why it has not supplied the court with a single contract under which it did work at Rocky Flats.[2] Swinerton makes no showing of a nexus between "Federal officer" and asbestos use.

---

[2] Simlarly, defendants argument that "government safety officers" are on site is unavailing.  With what aspects of safety did these "safety officers" concern themselves?  Guards on machines?  Use of protective gear when working in "hot" areas of the plant?   Absent some evidence that any of these safety activities

Prout's affidavit, the only evidence supplied by Swinerton, does not address the issue of asbestos use. Swinerton has supplied the court with no other information, such as a contract under which Swinerton operated at Rocky Flats, which might show detailed Federal officer involvement in asbestos use by Swinerton. Such information is essential to show the necessary nexus between "Federal officer" and the plaintiff's injury.[3] Silence on the issue of asbestos use is fatal to the causal nexus requirement. Vanouwerker, 1999 WL 335960, at *8. The absence of that nexus is fatal to Swinerton's removal effort.

## Swinerton has made no showing that complying with state tort law requirement was inconsistent with any government requirements.

Swinerton's response does not point the court to anything that would have made compliance with any contract with the government or requirement of the government inconsistent with its duty to comply with State tort law requirements.

Prout's affidavit, supplied by Swinerton, deals in generalities and says nothing about asbestos. Nor does Prout's affidavit give the Court any information that would assist the Court in determining if Swinerton could, or could not, comply with any Federal requirements and simultaneously comply with requirements of State tort law. For all that is known, Swinerton's contracts with the government obligated Swinerton to comply with State tort law requirements.[4] Swinerton's failure to provide such contracts to the Court at

_____

dealt with asbestos at some time relevant to this case, then the presence of a "safety officer" is unhelpful to Swinerton.

[3] See Bahrs v. Hughes Aircraft Co., 795 F.Supp. 965, 969-70 (D.Ariz. 1992) Ryan v. Dow Chemical Co., 781 F.Supp. 934, 939 (E.D.N.Y. 1992); Illinois v. Zidek, 691 F.Supp. 1177, 1178 (N.D. Ill. 1988), citing Willingham v. Morgan, 395 U.S. 402, 409 (1969), and Maryland v. Soper (No. 1), 270 U.S. 9, 33 (1926)

[4] Swinerton asserts that State law did not "prohibit" asbestos. The significance of this assertion is unclear. The question is not whether State law prohibited asbestos. At times relevant to this case, neither the State for the Federal government "prohibited" asbestos. The question is whether the use and manner of use of asbestos by Swinerton, causing plaintiff to become sick, violated State tort law. E.g. Anderson v. Avondale Industries, 1994 WL 679827 (E.D. La), "while there may have been intimate government oversight or involvement in some aspects of the work, the absence of evidence of intimate government oversight or involvement in the asbestos issues in the case was fatal to removal." Id. at *4. The defendant, in other words, failed to meet the first prong of the Mesa test because "it failed to show that it was acting under a federal officer with respect to the allegedly injurious product, and that failure in and of itself defeats the removal ..." Id. at *5. [Emphasis added]. In the instant case, detailed government oversight with regard to the use of, for example, fissionable materials, is not the same thing as detailed government oversight with regard to asbestos. In fact, the government's preoccupation with fissionable materials at Rocky Flats may

the least create suspicion that the contracts would not be helpful to Swinerton's position regarding removal.

## The use of asbestos at Rocky Flats had no "Federal" quality or character.

Swinerton does not focus on the particular issue in THIS case, namely the use of asbestos containing materials at Rocky Flats. Defendant does not, and cannot, refute the affidavit of Mr. Dionigi, accompanying Plaintiff's motion to remand. In that affidavit Mr. Dionigi explains that there is nothing unique to asbestos containing products used at Rocky Flats, and there is nothing unique about the manner in which those products are used at Rocky Flats.

Dionigi avers that the asbestos materials that he used at Rocky Flats were identical to those that he used at many non-government jobs. He also avers that the method of working with those materials at Rocky Flats was identical to that used on every non-government job on which Mr. Dionigi worked. Therefore, if there were any Federal rules at Rocky Flats that addressed using and working with asbestos materials, those rules were exactly the same as at every other non-government worksite where Mr. Dionigi worked with the same materials. In other words, the use of asbestos materials at Rocky Flats had no Federal quality or character. The use of asbestos materials at Rocky Flats could not conflict with Swinerton's complying with State tort law obligations because the manner in which Swinerton used asbestos materials at Rocky Flats is identical to the manner that those materials were used at general commercial and industrial jobs.

Attached to this Reply is the affidavit of Dave Richards (Exhibit A). Mr. Richards was an employee of Swinerton at Rocky Flats from 1967 to 1987. Mr. Richards held a variety of supervisory positions with Swinerton involving construction at Rocky Flats, including holding the position of Vice-President in charge of the Denver office of Swinerton.

Mr. Richards avers that the ONLY standards applicable to the materials that were used by Swinerton in construction at Rocky Flats were ASTM standards. This includes

---

well have made it all the more important for a contractor like Swinerton to pay attention to the supply and use of other toxic materials, like asbestos.

4

the asbestos materials used at Rocky Flats. The only time that Swinerton needed specific government approval for use of any material was when no material meeting an ASTM spec was available. That happened only rarely.[5]

Swinerton's former vice-president, Mr. Richards, is aware that ASTM standards were the applicable standards at Rocky Flats. ASTM standards were the standards used by Mr. Richards when working for Swinerton at Rocky Flats. Swinerton is presumably possessed of the knowledge possessed by its former supervisor and vice-president, Mr. Richards. Therefore, Swinerton's argument that it needs to look at thousands of pages of documents to determine what standards were applicable to its use of materials at Rocky Flats evidences an astonishing lapse of corporate memory. In addition, while Swinerton's former vice-president, Mr. Richards, does know that ASTM standards were the ones used at Rocky Flats, Mr. Prout apparently did not know about the wide applicability of ASTM standards at Rocky Flats. In any event, Prout fails to mention ASTM standards in his affidavit.

### Swinerton is liable as a supplier of asbestos products.

Swinerton was a supplier of asbestos materials to Rocky Flats. As Mr. Richard's affidavit shows, Swinerton procured and brought onto the Rocky Flats site numerous kinds of materials, including asbestos containing materials. Therefore, at least as to non-Swinerton employees, Swinerton was a product supplier and is subject to the law that applies to a product supplier.

Swinerton argues that a strict tort liability claim is not viable as to Swinerton. However, the complaint in this case does not allege strict tort liability. It alleges negligence and civil conspiracy. Colorado has applied the general negligence principles of MacPherson v. Buick[6] to contractors installing real estate components. Wright v.

---

[5] ASTM standards are not unique to Rocky Flats, or to the Government. The attached pages from the ASTM web site state that ASTM standards "are accepted and used in research and development, product testing, quality systems, and commercial transactions around the globe." ASTM is a voluntary standards organization that publishes voluntary consensus standards developed by its members. It publishes more than 10,000 different standards applying to all sorts of different materials and processes

[6] 217 N.Y. 382, 111 N.E. 1050. "If he is negligent, where danger is to be foreseen, a liability will follow."

Creative Corp., 498 P.2d 1179 (Colo. App 1972. The negligence alleged against Swinerton is not novel. It consists of negligent failure to warn and protect people from exposure to asbestos, a toxic material.

Finally, Swinerton does not distinguish the case law applicable to this topic which holds that a defendant such as Swinerton cannot escape liability for failing to protect workers from asbestos unless the government specifically told Swinerton not to protect workers from asbestos. Swinerton does not claim or suggest that it was instructed by the government not to protect people from asbestos exposure.

The point of the cases cited by plaintiff is not that they are product liability cases. The cases stand for the proposition that the federal officer rule does not apply unless a federal officer controlled the aspects of the work involved in producing the injury, and for the proposition that in this case the requisite nexus between the "federal officer" oversight and involvement and the claimed injury does not exist.

**No colorable defense**

Swinerton has failed to state a colorable federal defense. It has produced no evidence to support the pre-requisites to the government contractor defense that the asbestos products it supplied to Rocky Flats were designed at the direction of federal specification or that any federal specifications conflicted with the state law duties sued upon. Viala v. Owens Corning Fiberglas Corp, 1994 WL 139287 at *2. The evidence before the court is overwhelming that the asbestos materials at issue in this case, as established by the affidavits of Dionigi and Richards, is the same asbestos containing material being sold to commercial and industrial concerns. In such a case the government contractor defense does not apply. Id.[7]

---

[7] Because the asbestos products purchased and supplied by Swinerton were the same that anyone could purchase on the open market, the requirements of the government contractor defense in Boyle, are not met. Boyle v. United Technologies Corp Boyle, 487 U.S. at 511; Trevino v. General Dynamics Corp., 865 F.2d 1474, (5th Cir. 1989) at 1478-83 (noting that higher level of governmental involvement than is present here is required for Boyle defense); Viala, 1994 WL 139287, at *2.

6

**Conclusion**

Swinerton has failed to show that it meets the three requirements of Mesa v. California, 489 U.S. 121, 109 S. Ct. 959 (1989), for "Federal officer" removal. Failure to meet any one requirement is fatal to Swinerton's removal effort.

- Swinerton has not shown that it acted under the direction of a "federal officer" with regard to the use of asbestos. There is absolutely no evidence presented by Swinerton showing intimate government oversight or involvement in asbestos use at Rocky Flats. Anderson v. Avondale Industries, 1994 WL 679827 at *4.

- Swinerton has not shown that with regard to asbestos it could not comply with any government requirement and simulatenously comply with State tort law requirements.

- Swinerton has not shown a colorable federal defense. The uncontradicted evidence before the Court shows that the asbestos products supplied by Swinerton and used by Swinerton at Rocky Flats are identical in type and manner to those supplied for general commercial and industrial use.

The motion to remand should be granted.

<div style="margin-left:50%">

TRINE & METCALF, P.C.
Attorneys for Plaintiffs

J. Conard Metcalf, #2489
1435 Arapahoe Ave.
Boulder, CO 80302
(303) 442-0173

</div>

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **PLAINTIFFS' REPLY TO DEFENDANT SWINERTON'S RESPONSE TO PLAINTIFFS' MOTION TO RMAND** was served upon the following  via e-filing via U.S. Mail, postage pre-paid, on this 4th day of September, 2002:

Mary Price Birk, Esq.
Ronald L. Hellbusch, Esq.
Susan Hahn, Esq.
Baker & Hostetler, LLP
*Attorneys for Dana and Pneumo Abex*
303 17th Ave, #1100
Denver, CO  80203
(303) 861-0600
FAX: (303) 861-7805

Glendon L. Laird, Esq.
White & Steele, PC
*Attorneys for ACandS*
950 17th Street, 21st Floor
Denver, CO  80202-2804
(303) 296-2828
FAX: (303) 296-3131

James Miletich, Esq.
Long & Jaudon,
*Attorneys for Rio Grande and Rapid*
1600 Ogden Street
Denver, CO  80218-1414
(303) 832-1122
FAX: (303) 832-1348

Bradley Levin, Esq.
Roberts, Levin & Patterson
*Attorneys for Georgia Pacific*
1512 Larimer St., #950
Denver, CO 80202
(303) 575-9390
FAX: (303) 575-9385

Gary M. Clexton, Esq.
King, Clexton & Feola, LLC
*Attorneys for John Crane*
1670 York Street
Denver, CO  80206
(303) 298-9878
FAX: (303) 298-9879

David Nowak, Esq.
White & Steele, P.C.
*Attorneys for Garlock, Inc.*
21st Floor
950 17th Street
Denver, CO  80202-2804
(303) 296-2828
FAX:  (303) 296-3131

Shauna Hilgers, Esq.
Law Office of Shauna Hilgers
*Attorney for Flintkote*
6508 Poppy Street
P.O. Box 1254
Arvada, CO  80001
(303) 431-5037
FAX (303) 431-5037

David Fowler, Esq.
Fowler, Schimberg & Flanagan, P.C.
*Attorneys for Swinerton & Walberg*
1640 Grant St., #300
Denver, CO  80203
(303) 298-8603
FAX: (303) 298-8748

Bennett Cohen, Esq.
The Kobayashi Law Firm
*Attorneys for Metropolitan Life*
1633 Fillmore Street
Denver, CO  80206
(303) 399-2100
FAX: (303) 780-9836

Steven M. Kaufmann, Esq.
Brian Hoffman, Esq.
Morrison & Foerster, LLP
*Attorneys for ABB Lummus Global, Inc.*
370 17th Street, Suite 5200
Denver, CO  80202
(303) 592-1500
FAX: (303) 592-1510

Dionigi Gwin Campbell.

# Exhibit A to Reply

# Affidavit of Dave Richards

### Affidavit of Dave Richards

1. My name is Dave Richards. My date of birth is February 24, 1935. I live in Golden, Colorado.

2. I was employed by Swinerton Walberg, working at the Jefferson County, Colorado, Rocky Flats plant from 1967 to 1987. Swinerton Walberg did construction and remodel work at Rocky Flats. My jobs with Swinerton at Rocky Flats were, in order: carpenter foreman, general foreman, area superintendent, general superintendent, project manager, vice president in charge of the Denver office.

3. Swinerton was not involved in the running of or the maintenance of the production facilities at Rocky Flats. Running the production facilities was the responsibility of a separate contractor. The contractors responsible for operating the production facilities were, at different times: Dow, Rockwell and EG and G. Swinerton's only work at Rocky Flats, as far as I know, was doing construction of facilities. I retired from Swinerton in 1987.

4. One of my job duties while working for Swinerton at Rocky Flats was issuing requisitions for products and materials before a purchase order was sent to the purchasing agent. I was involved with ordering construction products and materials during most of my employment with Swinerton at Rocky Flats. To perform the part of my job that involved ordering materials and products I had to be, and I was, familiar with the requirements that governed which products and materials we could buy and use.

5. The materials and products we used for the construction work done by Swinerton at Rocky Flats had to meet certain specifications. The specifications that we used were ASTM specifications. In fact, I regularly used a very large ASTM book that listed all materials meeting ASTM specs. If a material met ASTM specifications then we could use it. Frequently the same product or material made by several different manufacturers would meet ASTM specifications, and we could use any of the products that were available. The only requirement was that the products meet ASTM specifications. This was true for all types of different products, including glue, paper, nails, staples, gaskets, sheetrock, tape joint compounds, roofing materials, ceiling tile, floor tile, insulation, lumber and virtually all other materials used by Swinerton for construction purposes at Rocky Flats.

6. The only time Swinerton had to get specific approval from the Government to use a product or material at Rocky Flats was if the product or material was not covered by an ASTM specification or standard. It was an extremely rare and unusual event when any product or material we used for construction at Rocky Flats was not covered by an ASTM specification or standard.

7. In virtually every instance, the products and materials we used for construction at Rocky Flats were identical to the same products and materials that were used in general commercial construction. In other words, the ceiling tile that was used at Rocky Flats would have been no different than the ceiling tile used in construction of a downtown Denver office building. A gasket used on a steam pipe flange at Rocky

Flats would be identical to the gasket used on a steam pipe flange in a powerplant in Denver.

8. The methods used for preparing materials, installing them, and constructing facilities were the same at Rocky Flats as they would be on any other commercial or industrial construction site. The only real difference was that when we worked in a potentially "hot" area at Rocky Flats we had to have a face mask available in case of the accidental release of radioactive material.

_Dave Richards_  08-13-02
Dave Richards          (date)

County of Boulder       )
                        )ss
State of Colorado       )

SUBSCRIBED AND SWORN to before me this _13_ day of _August_ 2002

MY COMMISSION EXPIRES: _12-18-03_

SIGNED: _Jenny Smith_ _____ (NOTARY PUBLIC)

# Exhibit B to Reply

# Pages from ASTM Website

# Frequently Asked Questions

## What is ASTM?

Organized in 1898, ASTM (the American Society for Testing and Materials) is one of the largest voluntary standards development organizations in the world.

ASTM is a not-for-profit organization that provides a forum for the development and publication of voluntary consensus standards for materials, products, systems and services. More than 32,000 members representing producers, users, ultimate consumers, and representatives of government and academia from over 100 countries develop documents that serve as a basis for manufacturing, procurement, and regulatory activities.

ASTM develops standard test methods, specifications, practices, guides, classifications, and terminology in 130 areas covering subjects such as metals, paints, plastics, textiles, petroleum, construction, energy, the environment, consumer products, medical services and devices, computerized systems, electronics, and many others. ASTM Headquarters has no technical research or testing facilities; such work is done voluntarily by the ASTM members located throughout the world.

More than 10,000 ASTM standards are published each year in the 73 volumes of the Annual Annual Book of ASTM Standards. These standards and related technical information are sold throughout the world.

# About ASTM International

Founded in 1898, ASTM International is a not-for-profit
organization that provides a global forum for the development
and publication of voluntary consensus standards for materials,
products, systems, and services. Over 30,000 individuals from
100 nations are the members of ASTM International, who are
producers, users, consumers, and representatives of government
and academia. In over 130 varied industry areas, ASTM
standards serve as the basis for manufacturing, procurement,
and regulatory activities. Formerly known as the American
Society for Testing and Materials, ASTM International
provides standards that are accepted and used in research and
development, product testing, quality systems, and commercial
transactions around the globe.

- Frequently Asked Questions
- Handbook of Standardization

Return to Home

# Frequently Asked Questions

## What is a standard?

As used in ASTM, a standard is a document that has been developed and established within the consensus principles of the Society and that meets the approval requirements of ASTM procedures and regulations.

Case MDL No. 875   Document 3709   Filed 09/19/02   Page 83 of 86

Who uses ASTM standards?                                                    Page 1 of 1

# Frequently Asked Questions

## Who uses ASTM standards?

ASTM standards are used by thousands of individuals, companies, and agencies. Purchasers and sellers incorporate standards into contracts; scientists and engineers use them in their laboratories; architects and designers use them in their plans; government agencies reference them in codes, regulations, and laws; and many others refer to them for guidance.

Case MDL No. 875   Document 3709   Filed 09/19/02   Page 84 of 86

Is the use of ASTM standards mandatory?                                              Page 1 of 1

# Frequently Asked Questions

## Is the use of ASTM standards mandatory?

ASTM standards are developed voluntarily and used voluntarily. They become legally binding only when a government body makes them so, or when they are cited in a contract.



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

AUG 1 4 2002

JAMES R. MANSPEAKER
CLERK

Civil Action No. **02-K-1291**

**RUDOLPH DIONIGI, et al.,**

        Plaintiffs,

v.

**JOHN CRANE, et al.,**

        Defendants.

---

### MINUTE ORDER

---

Judge John L. Kane **ORDERS**

        Any additional responses to Plaintiffs' Motion to Remand are due on or before August 23, 2002. Replies, if any are due on or before September 3, 2002.

---

Copies of this Minute Order were mailed to the following:

J. Conard Metcalf, Esq.
Trine & Metcalf, PC
1435 Arapahoe Avenue
Boulder, CO 80302-6390

Steven M. Kaufmann, Esq.
Morrison & Foerster
**D.C. Box 22**

James M. Miletich, Esq.
Jaudon & Avery, LLP
1660 Wynkoop Street #1010
Denver, CO 80218-1414

Susan R. Hahn, Esq.
Baker & Hostetler
**D.C. Box 17**

Daniel M. Fowler, Esq.
Fowler, Schimberg & Flanagan, PC
1640 Grant Street #300
Denver, CO 80203

Shauna L. Hilgers, Esq.
6508 Poppy Street
P.O. Box 1254
Arvada, CO 80001

Gary M. Clexton, LLP
King & Greisen, LLP
1670 York Street
Denver, CO 80206

David Nowak, Esq.
Glendon L. Laird, Esq.
White & Steele, PC
950 17th Street #2100
Denver, CO 80202



PLAINTIFF'S
EXHIBIT
E

Minute Order - Page Two
**Civil Action No. 02-K-1291**

Bradley Levin, Esq.
Roberts, Levin & Patterson
1512 Larimer Street #950
Denver, CO 80202

Maureen Reidy Witt, Esq.
Holland & Hart
**D.C. Box 6**

Dennis Markusson, Esq.
Markusson, Green & Jarvis, PC
999 18th Street #3300
Denver, CO 80202

August _14_, 2002

JAMES R. MANSPEAKER, CLERK

Deputy Clerk