JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 11 2002

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE:  ASBESTOS PRODUCTS | : | |
| | : | MDL DOCKET NO.  875 |
| LIABILITY LITIGATION (VI) | : | |

### *HUBER, ET AL. VS. TAYLOR, ET AL.*, E.D. Pennsylvania
### (W.D. Pennsylvania, C.A. No. 2:02-304)

## MOTION OF DEFENDANTS JOSEPH B. COX, JR. AND JOSEPH B. COX, JR., LTD TO VACATE CONDITIONAL REMAND ORDER OF SEPTEMBER 13, 2002

1.      This action was originally filed on February 7, 2002 in the United States District Court for the Western District of Pennsylvania under the caption of Huber, et at v. Taylor, et al, Civil Action No. 02-0304  ("*Huber*").  The full caption of the action is set forth in the Schedule of Action which is attached hereto.

2.      On March 28, 2002, moving parties herein, defendants Joseph B. Cox, Jr. and Joseph B. Cox, Jr., LTD (formerly known as Joseph B. Cox, Jr., P.C.), filed a Notice of Tag Along Action/Motion to Transfer requesting that *Huber* be transferred to the United States District Court for the Eastern District of Pennsylvania for handling by the Honorable Charles R. Weiner as part of MDL-875.

# OFFICIAL FILE COPY

**IMAGED** OCT 15 '02

3.      On April 25, 2002, a Conditional Transfer Order was filed conditionally transferring *Huber* to Judge Weiner for handling under MDL-875.

4.      On or about May 9, 2002, the *Huber* plaintiffs filed a Notice of Opposition to the Conditional Transfer.

5.      On or about May 28, 2002, the *Huber* plaintiffs filed a Motion to Vacate the Conditional Transfer Order.

6.      On June 14, 2002, defendants Joseph B. Cox, Jr. and Joseph B. Cox, Jr., LTD filed a Response to Plaintiffs' Motion to Vacate.

7.      On August 9, 2002, the Judicial Panel on Multidistrict Litigation granted defendants' motion and entered a Transfer Order transferring *Huber* to the Eastern District of Pennsylvania and assigning it to the Honorable Charles R. Weiner for inclusion in MDL-875.

8.      On August 22, 2002, Judge Weiner filed a Suggestion of Remand suggesting that *Huber* be remanded to the Western District of Pennsylvania.

9.      In response to the Suggestion of Remand, on August 27, 2002, the undersigned counsel for the moving defendants herein wrote to Judge Weiner providing additional clarifying information concerning the underlying asbestos personal injury actions of the named plaintiffs in *Huber*. A copy of counsel's letter is attached hereto and marked Exhibit A.

10.      On September 13, 2002, a Conditional Remand Order was filed.

11.      On September 26, 2002, defendants Joseph B. Cox, Jr. and Joseph B. Cox, Jr., LTD filed a Notice of Opposition to the Conditional Remand Order.

12.      The Plaintiffs in the *Huber* matter have alleged that it is a class action on behalf of a class consisting of approximately 2,645 persons who reside or had substantial exposure to

asbestos in Pennsylvania, Ohio or Indiana and who have allegedly been represented by defendants with respect to asbestos personal injury claims arising therefrom. (Paragraph 2, First Amended Complaint, a copy of which is attached hereto and marked Exhibit B.)

13.     Plaintiffs allege that they and the putative class have been defrauded by defendants as a result of the manner in which their asbestos personal injury claims were allegedly handled by defendants. (Paragraph 3, First Amended Complaint.)

14.     As can be clearly seen from Plaintiffs' First Amended Complaint, plaintiffs' allegations all arise out of asbestos personal injury actions and the manner in which the asbestos personal injury claims were allegedly handled by defendants.

15.     Moving defendants believe that the *Huber* case is an action which should remain with the United States District Court for the Eastern District of Pennsylvania pursuant to the Transfer Order of August 9, 2002.

16.     The underlying basis of the *Huber* plaintiffs' Amended Complaint is the manner in which certain asbestos personal injury settlements were entered into and the manner in which funds from those settlements are being handled.

17.     As this Honorable Panel stated in the Transfer Order of August 9, 2002, transfer of *Huber* to Judge Weiner was appropriate because *Huber* involves "common questions of fact" with asbestos actions previously transferred to Judge Weiner under MDL-875 and because transfer "will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation."

18.     As this Honorable Panel recognized in the Transfer Order of August 9, 2002, the plaintiffs' claims regarding the caliber of their legal representation cannot be addressed "without

an examination of the merits of their underlying personal injury claims, matters which place *Huber* within the purview of MDL-875."

19.     As this Honorable Panel further observed in the Transfer Order of August 9, 2002, handling of **Huber** by Judge Weiner will "enhance Judge Weiner's continuing efforts to manage the MDL-875 docket with respect to such matters as the structuring of settlements, settlement funding, and settlement administration."

20.     In addition, as this Honorable Panel noted in the Transfer Order of August 9, 2002, and as undersigned counsel pointed out in his letter of August 27, 2002 to Judge Weiner, named plaintiffs in **Huber** are already plaintiffs in asbestos personal injury actions currently before Judge Weiner as part of the MDL proceedings, and it is the handling of the settlements and settlement funds <u>from those actions</u> which is the subject matter of the **Huber** action.

21.     Upon information and belief, the majority of the putative class members in **Huber** are also plaintiffs in the same asbestos personal injury actions currently before Judge Weiner as part of the MDL proceedings.

22.     Most, if not all, of the corporations which are parties to the underlying settlements are or have been defendants in Federal Court asbestos cases and Judge Weiner has extensive experience dealing with such corporations in the context of asbestos litigation and, in particular, has extensive experience in asbestos related settlement negotiations with those corporations and others.

23.     Resolution of plaintiffs' claims in the **Huber** action will have a significant effect on the manner in which the cases currently before Judge Weiner are handled in the future, and, therefore, the Federal Courts have a significant interest in having the instant matter remain in the Eastern District of Pennsylvania for handling by Judge Weiner.

24.     Moving defendants recognize, of course, that the Honorable Charles R. Weiner issued the Suggestion of Remand in this matter, but moving defendants are confident that once Judge Weiner begins addressing the substantive issues presented by the *Huber* matter, he will appreciate how intertwined this case is with MDL-875 and what a significant impact the resolution of *Huber* will have on MDL-875 as a whole.

25.     Maintaining this matter in the Eastern District of Pennsylvania pursuant to the Transfer Order of  August 9, 2002 will result in judicial efficiency and economy and will be in the interests of fairness and justice.

26.     For the foregoing reasons and for the reasons set forth in the accompanying Brief, the original Motion to Transfer and the defendants' Response to Plaintiffs' Motion to Vacate the Conditional Transfer, moving defendants respectfully request that the Conditional Remand Order be vacated and that the *Huber* case remain in the Eastern District of Pennsylvania as part of MDL-875.

WHEREFORE, moving defendants respectfully request that the Conditional Remand Order be vacated.

Respectfully submitted,

MARSHALL, DENNEHEY, WARNER,
   COLEMAN & GOGGIN

BY: _____
        THOMAS C. DELORENZO
        PA I.D. #21184
        1845 Walnut Street, Suite 1900
        Philadelphia, PA 19103
        (215) 575-2741

JAMES A. McGOVERN
PA I.D. #61361
US Steel Tower, Suite 2900
600 Grant Street
Pittsburgh, PA  15219
(412) 803-1180

Attorney for Defendants:  Joseph B. Cox, Jr.
and Joseph B. Cox, Jr., LTD

DATE: _10/11/02_
\01_19\LIAB\TCD\LLPG\343475\TCD\13231\00110

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 11 2002

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | : | |
| | : | MDL DOCKET NO. 875 |
| LIABILITY LITIGATION (VI) | : | |

### *HUBER, ET AL. VS. TAYLOR, ET AL.*, E.D. Pennsylvania
### (W.D. Pennsylvania, C.A. No. 2:02-304)

### BRIEF IN SUPPORT OF MOTION
### OF DEFENDANTS JOSEPH B. COX, JR. AND JOSEPH B. COX, JR., LTD
### TO VACATE CONDITIONAL REMAND ORDER OF SEPTEMBER 13, 2002

**I.   INTRODUCTION**

In moving defendants' original Motion to Transfer filed on March 28, 2002, in moving defendants' Response to Plaintiffs' Motion to Vacate filed on June 14, 2002, and in the Briefs in support of the aforesaid Motion and Response, moving defendants set forth in detail the reasons why transfer of **Huber** to the Eastern District of Pennsylvania and Judge Weiner was appropriate. To avoid unnecessary duplication, moving defendants will not repeat all those arguments here, but, instead, incorporate by reference the arguments made in those previously filed documents.

**II.   ARGUMENT**

As set forth in the foregoing Motion to Vacate, the **Huber** action arises directly out of a number of settlements in underlying asbestos actions which are before The Honorable Charles R. Weiner as part of the MDL-875 asbestos litigation in the Eastern District of Pennsylvania. These

underlying actions and the settlements arising from them involve questions of fact, law and procedure common to the other asbestos cases before Judge Weiner as part of the MDL asbestos litigation. As this Honorable Panel stated in the Transfer Order of August 9, 2002, transfer of *Huber* to Judge Weiner was appropriate because *Huber* itself also involves "common questions of fact" with asbestos actions previously transferred to Judge Weiner under MDL-875 and because transfer "will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation."

A reading of the *Huber* Amended Complaint, attached as Exhibit B, clearly and instantly demonstrates that the claims set forth in the Amended Complaint arise out of the underlying asbestos personal injury actions and the manner in which those actions were allegedly handled and settled by defendants. Specifically, plaintiffs claim that they have been defrauded by defendants as a result of the manner in which those cases were settled and the manner in which funds from those settlements were and are being handled. These issues go to the very heart of how multidistrict mass tort cases are handled and settled, and more directly, to the very heart of how large numbers of asbestos claims are handled and settled, including those before Judge Weiner as part of the MDL asbestos litigation. As this Honorable Panel recognized in the Transfer Order of August 9, 2002, the *Huber* plaintiffs' claims regarding the caliber of their legal representation cannot be addressed "without an examination of the merits of their underlying personal injury claims, matters which place *Huber* within the purview of MDL-875."

As this Honorable Panel noted in the Transfer Order of August 9, 2002, and as undersigned counsel pointed out in his letter of August 27, 2002 to Judge Weiner, named plaintiffs in *Huber* are already plaintiffs in asbestos personal injury actions currently before Judge Weiner as part of the MDL proceedings, and it is the handling of the settlements and settlement funds from those actions

2

which is the subject matter of the *Huber* action. Further, upon information and belief, the majority of the putative class members in *Huber* are also plaintiffs in the same asbestos personal injury actions currently before Judge Weiner as part of the MDL proceedings.

In the Suggestion of Remand, Judge Weiner states (on page 2) that "The underlying claim was filed in Mississippi and the settlement and distribution were accomplished within the purview of the Mississippi state court." Judge Weiner therefore determined that "there exists no basis to consolidate this case with MDL 875 as the malpractice action concerns itself with the outcome of the settlement and distribution of a state court action which was never a part of MDL 875 and never within the jurisdiction of this Court." However, this reflects a factual misunderstanding concerning the underlying asbestos personal injury actions of the *Huber* plaintiffs. In light of this inadvertent misunderstanding, counsel for moving defendants wrote to Judge Weiner on August 27, 2002 in order to provide additional clarifying information concerning the underlying cases. As can be seen from the letter, a copy of which is attached hereto as Exhibit A, although the plaintiffs underlying actions did, in fact, start out as Mississippi state court actions, they were subsequently removed to federal court and ultimately transferred to MDL-875. Copies of the Transfer Orders and pertinent portions of the original complaints demonstrating the foregoing are enclosed with the letter to Judge Weiner.

Judge Weiner also stated in the Suggestion of Remand that *Huber* is not a direct tort claim for damages, rather it is a legal malpractice claim. However, as noted previously herein and as addressed in defendants' original Motion to Transfer and in the Response to Plaintiffs' Motion to Vacate the Conditional Transfer, the facts underlying *Huber* and the fundamental issues raised by *Huber* go to the very heart of the handling of mass tort cases and specifically the mass asbestos litigations consolidated before Judge Weiner in the Eastern District of Pennsylvania. As this

3

Honorable Panel observed in the Transfer Order of August 9, 2002, handling of ***Huber*** by Judge Weiner will "enhance Judge Weiner's continuing efforts to manage the MDL-875 docket with respect to such matters as the structuring of settlements, settlement funding, and settlement administration."

Resolution of plaintiffs' claims in the ***Huber*** action will have a significant effect on the manner in which the cases currently before Judge Weiner are handled in the future, and, therefore, the Federal Courts have a significant interest in having the instant matter transferred to the Eastern District of Pennsylvania for handling by Judge Weiner.

Moving defendants are mindful of the fact that it was Judge Weiner who issued the Suggestion of Remand in this matter, but moving defendants are confident that once Judge Weiner begins addressing the substantive issues presented by the ***Huber*** matter, he will appreciate the significant impact the resolution of ***Huber*** will have on MDL-875 as a whole. Therefore, because the MDL asbestos litigation could be significantly impacted, the Federal Courts and the MDL Panel in particular have a significant interest in having the instant matter remain in the Eastern District of Pennsylvania for handling by Judge Weiner.

## III.    CONCLUSION

Maintaining this matter in the Eastern District of Pennsylvania pursuant to the Transfer Order of August 9, 2002 will result in judicial efficiency and economy and will be in the interests of fairness and justice.

For the foregoing reasons and for the reasons set forth in the accompanying Motion, the original Motion to Transfer and defendants' Response to Plaintiffs' Motion to Vacate the Conditional Transfer Order, moving defendants respectfully request that the Conditional Remand

4

Order be vacated and that the *Huber* case remain in the Eastern District of Pennsylvania as part of MDL-875.

Respectfully submitted,

**MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN**

BY: _____

THOMAS C. DELORENZO
PA I.D. #21184
1845 Walnut Street, Suite 1900
Philadelphia, PA 19103
(215) 575-2741

JAMES A. McGOVERN
PA I.D. #61361
US Steel Tower, Suite 2900
600 Grant Street
Pittsburgh, PA 15219
(412) 803-1180

Attorney for Defendants: Joseph B. Cox, Jr. and Joseph B. Cox, Jr., LTD

DATE: 10/11/02

\01_19\LIAB\TCD\LLPG\343641\TCD\13231\00110

## SCHEDULE OF ACTION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD L. HUBER, WILLIAM J. AIRGOOD, | : | |
| ANTHONY DEFABBO, JOHN DINIO | : | |
| ERNEST GISHNOCK, JOHN BIDLENSCIK, | : | |
| HILMA MULLINS and WILLIAM DEEM, | : | |
| individually and on behalf | : | |
| of those similarly situated | : | |
| Plaintiffs | : | |
| | : | |
| vs. | : | CIVIL ACTION NO. 02-CV-0304 |
| | : | |
| ROBERT G. TAYLOR, II; ROBERT G. TAYLOR, | : | |
| II, P.C.; CLETUS P. ERNSTER, III; GEORGE E. | : | |
| CIRE, JR.; J. ROBERT DAVIS, JR.; | : | |
| TAYLOR & CIRE; TAYLOR & | : | |
| ERNSTER, P.C.; ROBERT A. PRITCHARD; | : | |
| CHRISTOPHER FITZGERALD; LAW OFFICES | : | |
| OF ROBERT A. PRITCHARD; PRITCHARD | : | |
| LAW FIRM, PLLC; JOSEPH B. COX, JR.; | : | |
| JOSEPH B. COX, JR., P.C. and COX AND COX, | : | |
| L.L.P. | : | |
| Defendants | : | |

Name of Assigned Judge:     The Honorable Donald J. Lee

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 1 1 2002

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | : | |
| | : | MDL DOCKET NO. 875 |
| LIABILITY LITIGATION (VI) | : | |

*HUBER, ET AL. VS. TAYLOR, ET AL.*, E.D. Pennsylvania
(W.D. Pennsylvania, C.A. No. 2:02-304)

## REASONS WHY ORAL ARGUMENT NEED NOT BE HEARD

Defendants Joseph B. Cox, Jr. and Joseph B. Cox, Jr., LTD (formerly Joseph B. Cox, Jr.,

P.C.) do not believe that oral argument is required to determine plaintiffs' Motion to Vacate the

Conditional Remand of ***Huber vs. Taylor***.  The nature of the claim is clear from the Amended

Complaint and the arguments of the parties with respect to the transfer of the matter to the

Eastern District of Pennsylvania are sufficiently set forth in the original Motion to Transfer and

in the defendants' Response to Plaintiffs' Motion to Vacate Conditional Transfer Order.

Defendants do not believe that any additional pertinent information would be obtained by

holding oral argument.

**MARSHALL, DENNEHEY, WARNER
COLEMAN & GOGGIN**

BY:_____

THOMAS C. DELORENZO
PA I.D. #21184
1845 Walnut Street, Suite 1900
Philadelphia, PA 19103
(215) 575-2741

JAMES A. McGOVERN
PA I.D. #61361
US Steel Tower, Suite 2900
600 Grant Street
Pittsburgh, PA  15219
(412) 803-1180


Attorney for Defendants:  Joseph B. Cox, Jr., Joseph B. Cox, Jr., LTD (formerly known as Joseph B. Cox, Jr., P.C.)

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 11 2002

FILED
CLERK'S OFFICE

## CERTIFICATE OF SERVICE

I, Thomas C. DeLorenzo, Esquire, do hereby certify that a true and correct copy of the Motion of Defendant Joseph B. Cox, Jr. and Defendant Joseph B. Cox, Jr., LTD. (formerly known as Joseph B. Cox, Jr., P.C.) to Vacate Conditional Remand Order of September 13, 2002 was served upon all parties by First-Class mail at the addresses set forth below and on the accompanying Panel Service List on the date set forth below:

*FOR PLAINTIFFS:*

Carol A. Mager, Esquire
**MAGER & WHITE, P.C.**
One Liberty Place, 44th Floor
1650 Market Street
Philadelphia, PA 19103

Joseph D. Pope, Esquire
**Kronish, Lieb, Weiner & Hellman, LLP**
1114 Avenue of the Americas
47th Floor
New York, New York 10036

Alisa N. Carr, Esquire
**DORNISH & SCOLIERI, P.C.**
429 Forbes Avenue
Allegheny Building, Suite 1100
Pittsburgh, PA 15219-1604

*FOR DEFENDANTS:*

Howard M. Klein, Esquire
**Conrad, O'Brien, Gellman & Rohn, P.C.**
1515 Market Street, 16th Floor
Philadelphia, PA 19102

Anita B. Weinstein, Esquire
**COZEN & O'CONNOR**
1900 Market Street
Philadelphia, PA 19103-3508

Kevin L. Colosimo, Esquire
**HOUSTON HARBAUGH**
Two Chatham Center
Twelfth Floor
Pittsburgh, PA  15219-3463

*COURTESY COPY TO:*

The Honorable Charles R. Weiner
**United States District Court for the Eastern District of Pennsylvania**
U.S. Courthouse, Room 6613
601 Market Street
Philadelphia, PA  19106

The Honorable Donald J. Lee
**United States District Court for the Western District of Pennsylvania**
Room 916, U.S. Post Office & Courthouse
700 Grant Street
Pittsburgh, PA  15219

Clerk of the Court
**United States District Court for the Western District of Pennsylvania**
U.S. Post Office & Courthouse
700 Grant Street
Pittsburgh, PA  15219

THOMAS C. DELORENZO

Dated: 10/11/02

\01_19\LIAB\TCD\LLPG\343475\TCD\13231\00110

**PANEL SERVICE LIST**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

Ronald L. Huber, et al. vs. J. Robert Davis, Jr., et al.
W.D. Pennsylvania, C.A. No. 2:02-304

Joseph J. Bellew, Esquire
**Cozen & O'Connor**
The Atrium, 4th Floor
1900 Market Street
Philadelphia, PA  19103

Richard C. Binzley, Esquire
**Thompson Hine, LLP**
127 Public Square
3900 Key Center
Cleveland, OH  44114

Edward J. Cass, Esquire
**Gallagher, Sharp, Fulton & Norman**
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH  44115

Adam M. Chud, Esquire
**Shea & Gardner**
1800 Massachusetts Avenue, N.W.
Washington, DC  20036

David D. Damico, Esquire
**Burns, White & Hickton**
2400 Fifth Avenue Place
120 Fifth Avenue
Pittsburgh, PA  15222

Carol A. Mager, Esquire
**Mager & White, P.C.**
One Liberty Place, 44th Floor
1650 Market Street
Philadelphia, PA  19103

Ralph A. Finizio, Esquire
**Houston & Harbaugh**
Two Chatham Center, 12th Floor
Pittsburgh, PA  15219

Raymond P. Forceno, Esquire
**Forceno & Hannon**
Philadelphia Bourse Bldg., Suite 1000
Independence Mall East
Philadelphia, PA  19106

Ellen B. Furman, Esquire
**Goldfein & Joseph**
1600 Market Street
33rd Floor
Philadelphia, PA  19103

Susan M. Hansen, Esquire
**Brownson & Ballou**
4800 U.S. Bank Place
601 Second Avenue, South
Minneapolis, MN  55402

Robert A. Klein, Esquire
**Conrad, O'Brien, Gellman & Rohn**
1515 Market Street
16th Floor
Philadelphia, PA  19102

Reginald S. Kramer, Esquire
**Buckingham, Doolittle & Burroughs**
50 South Main Street
P.O. Box 1500
Akron, OH  44309

David C. Landin, Esquire
**Hunton & Williams**
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA  23219

Neil Selman, Esquire
**Selman, Breitman & Burgess**
11766 Wilshire Boulevard, 6th Floor
Los Angeles, CA  90025

Ronald L. Motley, Esquire
**Ness, Motley, Loadholt, Richardson & Poole**
28 Bridgeside Boulevard
P.O. Box 1792
Mt. Pleasant, SC  29465

William J. O'Brien, Esquire
**Conrad, O'Brien, Gellman & Rohn**
1515 Market Street, 16th Floor
Philadelphia, PA  19102

William J. O'Brien, Esquire
**Delany & O'Brien**
306 West Somerdale Road
Voorhees, NJ  08043

John J. Repcheck, Esquire
**Marks, O'Neill, O'Brien & Courtney**
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA  15219

John D. Roven, Esquire
**John Roven & Associates**
2190 North Loop West
Suite 410
Houston, TX  77018

Gene Locks, Esquire
**Greitzer & Locks**
1500 Walnut Street
Philadelphia, PA  19102

Samantha L. Southall, Esquire
**Kronish, Lieb, Weiner & Hellman**
1114 Avenue of the Americas
New York, NY  10036

Robert N. Spinelli, Esquire
**Kelley, Jasons, McGuire & Spinelli**
Centre Square West
15th Floor
Philadelphia, PA  19102

Robert E. Swickle, Esquire
**Jaques Admiralty Law Firm, P.C.**
1370 Penobscot Building
Detroit, MI  48226

Andrew J. Trevelise, Esquire
**Reed Smith LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103

James K. Weston, II, Esquire
**Tom Riley Law Firm**
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA  52406

Richard D. Schuster, Esquire
**Vorys, Sater, Seymour & Pease**
52 East Gay Street
P.O. Box 1008
Columbus, OH  43216

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 1 1 2002

FILED
CLERK'S OFFICE

Exhibit A

A REGIONAL DEFENSE LITIGATION LAW FIRM

## MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN

A   P R O F E S S I O N A L   C O R P O R A T I O N      **www.marshalldennehey.com**

**1845 Walnut Street · Philadelphia, PA 19103-4797**
**(215) 575-2600 · Fax (215) 575-0856**

**Direct Dial: 215-575-2741**
**Email: tdelorenzo@mdwcg.com**

**PENNSYLVANIA**
Bethlehem
Doylestown
Erie
Harrisburg
Newtown Square
Norristown
Philadelphia
Pittsburgh
Scranton
Williamsport

**NEW JERSEY**
Cherry Hill
Roseland

**DELAWARE**
Wilmington

**WEST VIRGINIA**
Weirton

**OHIO**
Steubenville

**FLORIDA**
Ft. Lauderdale
Orlando
Tampa

August 27, 2002



## BY FACSIMILE AND MAIL

Honorable Charles R. Weiner
United States District Court for the Eastern District of Pennsylvania
U.S. Courthouse, Room 6613
601 Market Street
Philadelphia, PA  19106

      Re:    Ronald L. Huber, et al. vs. Joseph B. Cox, Jr., et al.
             USDC, WD Pa, Docket No. 02-CV-304
             In Re:  Asbestos Products Liability Litigation (No. VI), C.A. No. MDL-875
             <u>Our File Number:  13231-00110</u>

Dear Judge Weiner:

      I represent defendants Joseph B. Cox, Jr. and Joseph B. Cox, Jr. LTD in the above matter, and I am in receipt of Your Honor's Suggestion of Remand recently filed in this matter.  I have reviewed MDL Rule 7.6 concerning the procedure for suggested remands, but before getting to that stage, I wanted to write Your Honor concerning what I believe is a factual misunderstanding concerning the underlying asbestos personal injury actions of the named plaintiffs in the <u>Huber</u> case.  Clarification of this issue may moot the need to address the matter further before the MDL Panel.

      Specifically, Your Honor states on page 2 of the Suggestion of Remand that the plaintiffs' underlying asbestos actions were Mississippi state court actions and that the <u>Huber</u> matter "concerns itself with the outcome of the settlement and distribution of a state court action which was never a part of MDL 875 and never within the jurisdiction of this Court."  In fact, as stated in the prior MDL submissions on behalf of my clients, the underlying actions were a part of MDL 875 and within the jurisdiction of Your Honor.  The underlying actions were before Your Honor pursuant to the transfer of the <u>Rankin</u> (S.D. Mississippi, C.A. No. 1:99-558) and <u>Cosey</u> (S.D. Mississippi, C.A. No. 1:99-164) cases to MDL 875.  These cases started out as Mississippi state court actions, but were removed to federal court and then subsequently transferred to MDL 875.

Honorable Charles R. Weiner
August 27, 2002
Page 2

_____

    I enclose for Your Honor copies of the MDL Transfer Orders for the <u>Rankin</u> and <u>Cosey</u> cases.  Also enclosed are copies of portions of the <u>Rankin</u> and <u>Cosey</u> complaints showing that Mr. Huber and the other named plaintiffs in the present <u>Huber</u> action (with the exception of Mr. Dinio and Mr. Bidlenscik) are plaintiffs in the <u>Rankin</u> and <u>Cosey</u> cases.  (The <u>Cosey</u> complaint was included as Exhibit 1 to the April 15, 2002 declaration of plaintiffs' counsel Joseph D. Pope filed on April 16, 2002 in support of plaintiffs' Reply to Pritchard Defendants Opposition to Preliminary Injunction Motion.  <u>Huber</u> plaintiffs William Deem and Hilma Mullins are listed on Exhibit "J-3" to the <u>Cosey</u> complaint which lists the plaintiffs in that matter.)  (The <u>Rankin</u> complaint was included as Exhibit 2 to the May 29, 2002 declaration of Mr. Pope filed on May 30, 2002 in support of plaintiffs' opposition to Pritchard Defendants Motion to Dismiss.  <u>Huber</u> plaintiffs William Airgood, Anthony DeFabbo, Ernest Gishnock and Ronald Huber are listed on Exhibit "A" to the <u>Rankin</u> complaint which lists the plaintiffs in that matter.)

    In light of the foregoing and the enclosed, I respectfully suggest that the Suggestion of Remand is based upon an inadvertent factual misunderstanding about the underlying asbestos actions of the <u>Huber</u> plaintiffs.  I apologize for not making the nature of the underlying actions clearer in my prior submissions.

    In light of the foregoing and the enclosed, my clients respectfully and humbly request that the Suggestion of Remand be withdrawn.

    I will be happy to provide any other information Your Honor needs regarding this issue.

Very truly yours,

THOMAS C. DELORENZO

TCD/bmh
Enclosures

cc:    Carol A. Mager, Esquire
       Alisa N. Carr, Esquire
       Joseph D. Pope, Esquire
       Anita B. Weinstein, Esquire
       Howard M. Klein, Esquire
       Kevin L. Colosimo, Esquire

\01_19\LIAB\TCD\CORR\335588\TCD\13231\00110

A CERTIFIED TRUE COPY

JUL 20 2000

ATTEST
FOR THE JUDICIAL PANEL OF
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

COPY

JUL 20 2000

FILED
CLERK'S OFFICE

*DOCKET NO. 875*

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

FILED

JUL 27 2000

*Leroy Rankin, et al. v. A-Bex Corporation, et al.,* S.D. Mississippi, C.A. No. 1:99-558
*Bruce H. Cole v. W.R. Grace & Co., et al.,* D. Montana, C.A. No. 9:00-24
*Larry G. Davis v. W.R. Grace & Co., et al.,* D. Montana, C.A. No. 9:00-25
*Douglas Kelley v. W.R. Grace & Co., et al.,* D. Montana, C.A. No. 9:00-26
*Rodney R. Smith, Sr. v. W.R. Grace & Co., et al.,* D. Montana, C.A. No. 9:00-27
*Myra E. Cole v. W.R. Grace & Co., et al.,* D. Montana, C.A. No. 9:00-37
*Jane Margaret Blann, etc. v. General Dynamics Corp., et al.,* N.D. Texas, C.A. No. 4:00-48

## BEFORE JOHN F. NANGLE, CHAIRMAN, LOUIS C. BECHTLE,[*] JOHN F. KEENAN, WM. TERRELL HODGES, MOREY L. SEAR,[*] BRUCE M. SELYA AND JULIA SMITH GIBBONS, JUDGES OF THE PANEL

### TRANSFER ORDER

Before the Panel are motions brought, pursuant to Rule 7.4, R.P.J.P.M.L., 192 F.R.D. 459, 468-69 (2000), by plaintiffs in the seven above-captioned Southern District of Mississippi, District of Montana and Northern District of Texas actions. All movants request that the Panel vacate the portions of its orders conditionally transferring their respective action to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner.

On the basis of the papers filed and/or the hearing held,[1] the Panel finds that these actions involve common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the actions to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of these actions is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products*

---

[*]Judge Bechtle took no part in the decision of this matter with respect to the Southern District of Mississippi action, and Judge Sear took no part in the decision of this matter with respect to all seven actions before the Panel.

[1]The parties to the Mississippi and Montana actions waived oral argument and, accordingly, the question of Section 1407 transfer of those actions was submitted on the briefs. Rule 16.1, R.P.J.P.M.L., 192 F.R.D. 459, 475-76 (2000).

DATED:

ATTEST

- 2 -

JUL 20 2000

*Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991). In particular, we note that in the Panel's original decision distinctions based on such matters as the pendency of motions or other matters before the transferor court,[2] the uniqueness of a party's status, the type of defendant, the docket condition of any specific federal district, the stage of pretrial proceedings, the presence of unique claims or additional claims not relating to asbestos injury or death, and/or the unanimity of opposition to transfer by the parties to an action, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket.

We are not persuaded to depart from this approach in dealing with the question of transfer of the actions now before the Panel. We note that under Judge Weiner's stewardship, as of July 18, 2000, i) over 60,000 actions have been closed in the transferee district, and ii) over 1,100 actions or claims therein have been returned to their originating transferor districts. To parties that believe the uniqueness of their particular situation renders inclusion of their action in MDL-875 unnecessary or inadvisable, we note that whenever the transferee judge deems remand of any claims or actions appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L., *supra*, 192 F.R.D. at 470-72. We are confident that Judge Weiner will continue to promptly review arguments for returning transferred actions or claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever he is convinced that retention in the MDL-875 proceedings is no longer needed.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the seven above-captioned actions be, and the same hereby are, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

John F. Nangle
Chairman

---

[2]Parties in certain of the actions before the Panel have argued that transfer should be denied or deferred in order to permit the judges assigned the actions to rule on various potentially dispositive pending motions. There is no need to delay transfer in order to accommodate such an interest. We note that: 1) as a practical matter, there is a lag time of at least three or four months from the filing of an action, its identification as a potential tag-along action, issuance of a conditional transfer order, stay of transfer when a party timely objects to the conditional transfer, briefing on the question of transfer, the Panel hearing, and the issuance of the Panel's subsequent order; 2) Panel Rule 1.5, R.P.J.P.M.L., *supra*, 192 F.R.D. at 461, expressly provides that the pendency of a conditional transfer order does not in any way i) suspend orders and pretrial proceedings in the district court in which the action that is the subject of the conditional transfer order is pending, or ii) limit the pretrial jurisdiction of that court; and 3) accordingly, those courts wishing to address such motions have adequate time in which to do so, those courts concluding that such issues should be addressed by the transferee judge need not rule on them, and the process of 1407 transfer in MDL-875 can continue without any unnecessary interruption or delay.



JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

FEB -4 2000

FILED
CLERK'S OFFICE

## DOCKET NO. 875

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*Jack Givens, et al. v. Witco Corp., Inc., et al.*, E.D. Louisiana, C.A. No. 2:99-2283
*Gary Clark v. CN North America*, E.D. Michigan, C.A. No. 2:99-71140
*David Cosey, et al. v. E.D. Bullard, et al.*, S.D. Mississippi, C.A. No. 1:99-164
*Patricia A. Kelly, et al. v. W.R. Grace & Co.-Conn., et al.*, D. Montana, C.A. No. 9:99-118
*Valorie R. Johnston, et al. v. W.R. Grace & Co.-Conn., et al.*, D. Montana, C.A. No. 9:99-128

## BEFORE JOHN F. NANGLE, CHAIRMAN, WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS,* LOUIS C. BECHTLE* AND JOHN F. KEENAN, JUDGES OF THE PANEL

### TRANSFER ORDER

Before the Panel are motions brought, pursuant to Rule 7.4, R.P.J.P.M.L., 181 F.R.D. 1, 10 (1998), by plaintiffs in the above-captioned Eastern District of Louisiana, Eastern District of Michigan, Southern District of Mississippi and District of Montana actions. All movants request that the Panel vacate the portions of its orders conditionally transferring their respective action to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner.

On the basis of the papers filed and/or the hearing held,[1] the Panel finds that these actions involve common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the actions to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of these actions is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991). In particular, we note that in the Panel's original decision distinctions based on such matters as the pendency of motions or other matters before the

---

*Judges Sanders and Bechtle took no part in the decision of this matter with respect to the Southern District of Mississippi action.

[1]The parties to all but the Southern District of Mississippi action waived oral argument and, accordingly, the question of Section 1407 transfer of those actions was submitted on the briefs. Rule 16.2, R.P.J.P.M.L., 181 F.R.D. 1, 14 (1998).

- 2 -

transferor court,[2] the uniqueness of a party's status, the type of defendant, the docket condition of any specific federal district, the stage of pretrial proceedings, the presence of unique claims or additional claims not relating to asbestos injury or death, and/or the unanimity of opposition to transfer by the parties to an action, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket.

We are not persuaded to depart from this approach in dealing with the question of transfer of the actions now before the Panel. We note that under Judge Weiner's stewardship, as of February 1, 2000, i) nearly 60,000 actions have been closed in the transferee district, and ii) over 1,000 actions or claims therein have been returned to their originating transferor districts. To parties that believe the uniqueness of their particular situation renders inclusion of their action in MDL-875 unnecessary or inadvisable, we note that whenever the transferee judge deems remand of any claims or actions appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L., *supra*, 181 F.R.D. at 11-13. We are confident that Judge Weiner will continue to promptly review arguments for returning transferred actions or claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever he is convinced that retention in the MDL-875 proceedings is no longer needed.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the five above-captioned actions be, and the same hereby are, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

ohn F. Nangle
Chairman

---

[2]Parties in certain of the actions before the Panel have argued that transfer should be denied or deferred in order to permit the judges assigned the actions to rule on various potentially dispositive pending motions. There is no need to delay transfer in order to accommodate such an interest. We note that: 1) as a practical matter, there is a lag time of at least three or four months from the filing of an action, its identification as a potential tag-along action, issuance of a conditional transfer order, stay of transfer when a party timely objects to the conditional transfer, briefing on the question of transfer, the Panel hearing, and the issuance of the Panel's subsequent order; 2) Panel Rule 1.5, R.P.J.P.M.L., *supra*, 181 F.R.D. at 3, expressly provides that the pendency of a conditional transfer order does not in any way i) suspend orders and pretrial proceedings in the district court in which the action that is the subject of the conditional transfer order is pending, or ii) limit the pretrial jurisdiction of that court; and 3) accordingly, those courts wishing to address such motions have adequate time in which to do so, those courts concluding that such issues should be addressed by the transferee judge need not rule on them, and the process of 1407 transfer in MDL-875 can continue without any unnecessary interruption or delay.

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, MISSISSIPPI

CIVIL ACTION NUMBER:  95-0069

DAVID COSEY, et alia                                                            PLAINTIFFS

**RECEIVED & FILED**

APR 2 2 1999

VERSUS

BURNELL HARRIS, Circuit Clerk

By _____ _____ D.C.

E. D. BULLARD COMPANY, et alia                                        DEFENDANTS

PLAINTIFFS' ELEVENTH AMENDED COMPLAINT

JURY TRIAL REQUESTED

COMES NOW the Plaintiffs, by and through their attorneys of record, and file their

Complaint and in support thereof would show unto this Honorable Court the following,

to-wit:

I.

Jurisdiction

A.    This Honorable Court has subject matter jurisdiction.  See e.g.:  Article 6 §156

Mississippi Constitution 1890 and/or §9-7-81 Mississippi Code 1972.

B.    This Honorable Court has jurisdiction of the parties.

C.    Venue is well and truly laid in this Honorable Court.  See e.g.:  §11-11-3

Mississippi Code 1972.

DOC0092593

Exhibit 1

2.

Plaintiffs

The Plaintiffs are those persons whose names and identification appear in Exhibits

A, B, C, D, E and F attached hereto and incorporated herein as though copied herein in

full in words and in figures.

**Plaintiffs listed hereinafter are Added in Plaintiffs' Eleventh Amended Complaint:**

The Plaintiffs listed in Exhibit J were added in the Plaintiffs' Ninth and Tenth

Amended Complaint and are hereby divided into Exhibits J-1, J-2, J-3 and J-4 for the

purpose of clarifying their respective claims asserted in the following paragraphs of this

complaint.

3.

This civil action is brought pursuant to, among other things, the laws of the State of

Mississippi including, but not limited to

A.      §11-7-13 as amended Mississippi Code 1972 [wrongful death];

B.      §91-7-231 Mississippi Code 1972 [actions accruing in administration]; and/or

C.      §91-7-233 Mississippi Code 1972 [what actions survive to administrator].

4.

A.      The following Plaintiffs complain of both asbestos and silica related injuries and
        damages:

        (1)     Exhibit A #01        Leroy Tinner, Sr.

        (2)     Exhibit A #02        David Cosey

        (3)     Exhibit A #04        Rufus Beason

        (4)     Exhibit A #05        Bobby Glen Graves

2

# Exhibit "J-3"

| Last Name | First Name | Middle Name | Social Security Number | |
|---|---|---|---|---|
| Aaron | Lenzo | | 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 | |
| Abernatha | Walter | | 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 | |
| Abner | George | | 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 | |
| Abner | Jack | | 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 | |
| Ackors | William | | 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 | |
| Adams | Anthony | J. | 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 | |
| Adams | Henry, Jr. | C. | 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 | |
| Adams | James | | 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 | |
| Adams | Roger | | 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 | |
| Addison | Aaron | C. | 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 | |
| Adkins | John | | 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 | |
| Aguilera | Jesse | | 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 | |
| Akim | Alex | | 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 | |
| Akins | Charles | | 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 | |
| Albin | Ronald | | 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 | |
| Alford | James | | 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 | |
| Allison | James | | 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 | |
| Amado | Celso | | 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 | |
| Amanatidis | Nick | | 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 | |
| Anderson | James | A. | 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 | |
| Andrews | Albert | | 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 | |
| Andrews | Bennie | F. | 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 | |
| Andrews | Robert, Sr. | L. | 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 | |
| Arndell | Raymond | | 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 | |

| | | | | |
|---|---|---|---|---|
| Cross | Isaac | | 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 | |
| Cross | L. C. | | 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 | |
| Culpepper | Brooks, Jr. | O. | 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 | |
| Cummings | Glenn | | 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 | |
| Curpton | Ernest | | 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 | |
| Curtis | Henry, Sr. | | 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 | |
| Cuttino | Wiley | | 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 | |
| Cwetna | Ronald | J. | 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 | |
| D'Angelo | Salvatore | | 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 | |
| Dailey | Johnnie | E. | 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 | |
| Daily | Robert | Fred | 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 | |
| Dale | Peter | | 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 | |
| Daniel | Theodies | | 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 | |
| Davidson | Gentry | | 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 | |
| Davies | Richard | M. | 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 | |
| Davis | Allen, Jr. | | 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 | |
| Davis | Donald | L. | 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 | |
| Davis | Osbin | J. | 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 | |
| Davis | Walter | W. | 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 | |
| Dawson | Bozie | | 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 | |
| Dawson | Will | | 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 | |
| Day | Willie | J. | 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 | |
| Deem | William | | 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 | |
| Delacruz | Jose' | | 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 | |
| Delaney | Rovirdes | | 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 | |
| Demkowicz | Joseph | C. | 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 | |
| Dennie | Calvin | | 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 | |
| Dennis | Marion | | 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 | |

| Millard | Earnest | | 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 | |
| Miller | Gail | | 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 | |
| Miller | Gerald, Sr. | | 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 | |
| Miller | Henry | | 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 | |
| Miller | Louis | Ray | 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 | |
| Mills | Donald | | 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 | |
| Miranda | Carlos | | 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 | |
| Mireles | Armando | L. | 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 | |
| Mixon | James | | 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 | |
| Montantes | Pedro | C. | 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 | |
| Moore | Excell, Jr. | | 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 | |
| Moore | Homer | | 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 | |
| Moore | James | | 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 | |
| Moore | James | L. | 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 | |
| Moore | Joseph | R. | 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 | |
| Moore | Ken | | 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 | |
| Moore | Leroy | | 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 | |
| Moore | Norman | | 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 | |
| Moore | Willie III | | 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 | |
| Morley | James | J. | 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 | |
| Morton | James | | 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 | |
| Moskwa | Walter | J | 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 | |
| Mullins | Hilma | | 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 | |
| Murphy | George | D. | 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 | |
| Muskin | Jack | | 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 | |
| Myricks | Lonnie | | 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 | |
| Nabours | Edward | D. | 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 | |
| Nannenga | Robert | E. | 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 | |

# IN THE CIRCUIT COURT OF JEFFERSON COUNTY, MISSISSIPPI

## CIVIL ACTION NO. 99-0086

LEROY RANKIN, JR., ET AL.,

### PLAINTIFFS

VS.

A-BEX CORPORATION, ET AL.,

### DEFENDANTS

## PLAINTIFFS' FIRST AMENDED COMPLAINT

### JURY TRIAL REQUESTED

COME NOW the Plaintiffs, by and through their attorney of record, and file their First

Amended Complaint and in support thereof would show unto this Honorable Court the

following, to-wit:

1.

### *Jurisdiction*

A.    This Honorable Court has subject matter jurisdiction. See e.g.: Article 6, Sec.

156, Mississippi Constitution 1890 and/or Section 9-7-81 Mississippi Code 1972.

B.    This Honorable Court has jurisdiction of the parties.

C.    Venue is well and truly laid in this Honorable Court. See e.g.: Sec. 11-11-3

Mississippi Code 1972.

2.

### *Plaintiffs*

1

The Plaintiffs are those persons whose names and identification appear in Exhibit "A," attached hereto and incorporated herein as though copied herein full in words and in figures.

The Plaintiffs are residents of the following states: Alabama, Indiana, Louisiana, Mississippi, Ohio and Pennsylvania. See attached Exhibit "A," which is attached hereto and incorporated herein as though copied in full in words and in figures.

The Plaintiffs complain of asbestos-related and silica-related injuries and damages. Attached Exhibit "A" sets forth the Plaintiff's residence and the type of claim asserted by the individual Plaintiff. Some are asbestos-related only, some silica-related only, and some are mixed dust.

The Plaintiffs listed in Exhibit "A" also complain of fraud and/or willful breach of contract, as well as various other causes of action set forth herein.

3.

This civil action is brought pursuant to, among other things, the laws of the State of Mississippi including, but not limited to

A.   Sec. 11-7-13 as amended Mississippi Code 1972 [wrongful death];

B.   Sec. 91-7-231 Mississippi Code 1972 [actions accruing in administration]; and/or

C.   Sec. 91-7-233 Mississippi Code 1972 [what actions survive to administrator].

4.

### Defendants

A.   All plaintiffs, except those who only have a silicosis diagnosis, bring suit against the defendants listed in attached Exhibit "B."

B.   In addition to the defendants listed above in Paragraph 4A (Exhibit "B"), the Ohio

2

Plaintiffs set forth on attached Exhibit A, also bring suit against defendants listed in attached Exhibit "C."

C.  In addition to the defendants listed above in Paragraph 4A (Exhibit "B"), the Pennsylvania Plaintiffs set forth on attached Exhibit A, also bring suit against defendants listed in attached Exhibit "D."

D.  All Plaintiffs in attached Exhibit "A" claiming silica-related injuries, in whole or in part, bring suit against Defendants listed in attached Exhibit "E."

E.  Plaintiff Peter A. Tranelli, a Pennsylvania resident, is complaining of both asbestosis and silicosis (mixed dust disease), and bring suit against the Defendants listed in attached Exhibits "B," "D," and "E." In addition, Plaintiffs Joe Fuller, Earl Higginbotham, Jackie Lankford, Jimmy Machen, and T. J. Woods, Alabama residents and Charles Wells, a Louisiana resident, are complaining of both asbestosis and silicosis (mixed dust disease), and bring suit against the Defendants listed in attached Exhibits "B," and "E."

F.  Plaintiffs listed in Exhibit "A" also complain of injuries and damages as a result of fraud and willful breach of contract, as well as various other causes of action set forth herein, and bring suit against Defendants listed in Exhibit "F".

5.

A.  At all relevant times the defendants knew of the serious health risks associated with exposure to asbestos and/or silica-containing products and the asbestos fibers and/or silica which emanate from said products. The defendants named in this complaint, who manufactured products which were ostensibly intended to protect the user of the product from exposure to

3

53.

**WHEREFORE, PREMISES CONSIDERED**, plaintiffs demand judgment of, from, and against the Defendants named herein and in all Exhibits attached hereto, jointly and severally, for actual and compensatory damages and for punitive (exemplary) damages in an amount exceeding the jurisdictional amount of this Honorable Court to be determined by this Honorable court and its Jury, together with lawful pre-judgment and post-judgment interest thereon, together with all costs which have accrued and which will accrue in this civil action and such other and further relief, general or special, at law or in equity, to which the plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

By _____

**ROBERT A. PRITCHARD**
**Mississippi State Bar No. 4518**

**CHRISTOPHER E. FITZGERALD**
**Mississippi State Bar No. 10668**

**ATTORNEYS FOR PLAINTIFFS**

LAW OFFICES OF
ROBERT A. PRITCHARD
934 Jackson Avenue
P. O. Drawer 1707
Pascagoula, MS 39567
(228) 762-8877/(228) 762-6005 (fax)
Mississippi State Bar No. 4518
Attorneys for the Plaintiffs

433  2    Airgood          William      J.    |    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

475  44    DeFabbo           Anthony      S.        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

498  67    Gishnock          Ernest       P.    ,   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

517  86    Huber              Ronald         L.          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

Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

---

RONALD L. HUBER, WILLIAM J.              :
AIRGOOD, ANTHONY DeFABBO,                :
JOHN DINIO, ERNEST GISHNOCK,             :
JOHN BIDLENSCIK, HILMA MULLINS           :
and WILLIAM DEEM, individually and       :
on behalf of those similarly situated,   :
                                         :
                                         :    CIVIL ACTION NO. 02-0304
                                         :
          Plaintiffs,                    :    JUDGE LEE
                                         :
     v.                                  :
                                         :    FIRST AMENDED COMPLAINT –
                                         :         CLASS ACTION
ROBERT G. TAYLOR, II; ROBERT             :
G. TAYLOR, II P.C.; CLETUS P.            :
ERNSTER III; GEORGE E. CIRE, Jr.;        :
J. ROBERT DAVIS, Jr.;                    :
TAYLOR & CIRE; TAYLOR, DAVIS &           :
ERNSTER, P.C.; TAYLOR &                  :
ERNSTER P.C.; ROBERT A. PRITCHARD:
CHRISTOPHER FITZGERALD; LAW              :
OFFICES OF ROBERT A. PRITCHARD;          :
PRITCHARD LAW FIRM, PLLC;                :
JOSEPH B. COX, Jr.; JOSEPH B.            :
COX, Jr. P.C. and COX AND COX, L.L.P.,   :
                                         :
          Defendants.                    :

---



Plaintiffs, Ronald L. Huber, William J. Airgood, Anthony Defabbo,

John Dinio, Ernest Gishnock, John Blidenscik, Hilma Mullins and William Deem, by

their attorneys, Dornish & Scolieri; Kronish Lieb Weiner and Hellman LLP and Mager &

White, P.C., for their first amended complaint allege as follows:

   1.  This is a class action against a group of lawyers and law firms for

breach of fiduciary duty, fraud, conversion, violation of the deceptive trade practices and

consumer protection act of Pennsylvania, professional malpractice, an accounting and injunctive relief.

2.     The class consists of approximately 2,645 persons who reside or had substantial exposure to asbestos in Pennsylvania, Ohio or Indiana and have been and are represented by the defendants with respect to asbestos personal injury claims.

3.     The lawyers and law firms in this case defrauded a group of hard-working, blue-collar trades people, many of them union members. They are victims of asbestos exposure. To a large extent, they are unsophisticated and have little experience with or knowledge of the legal system. The defendant lawyers and law firms recruited the victims for inclusion as plaintiffs in "mass actions" and then betrayed them. They viewed their clients as mere inventory that could generate enormous legal fees with relatively little effort. They told their clients nothing about the lawsuits in which they were included. They told them nothing about the thousands of other clients whom they were simultaneously representing. They told them nothing about the colossal, aggregate settlement agreements which they executed (supposedly on their clients' behalf), agreements that sacrificed their clients' rights and interests to the lawyers' greed. The victims received a few *thousand* dollars for their injuries while the lawyers amassed tens of *millions* of dollars in fees. Instead of serving their clients' interests, these lawyers viewed their clients as serving them.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because this action is between citizens of different states

2

and the amount in controversy with respect to each class member exceeds the sum or value of $75,000, exclusive of interest and costs.

5.     This Court has personal jurisdiction over the defendants because they, acting directly or through agents, do business in the state of Pennsylvania, committed torts in the state of Pennsylvania, caused harm and tortious injury in the state of Pennsylvania by acts and omissions outside the state, and transacted in this state business from which the claims arise.

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events and omissions giving rise to this action occurred in this district.


## THE PARTIES

7.     Plaintiff Ronald L. Huber ("Huber") is a citizen of the state of Pennsylvania, residing in Pittsburgh, Pennsylvania. Huber is 60 years old. He has worked for approximately 35 years in a steel mill in Pennsylvania, where he has had substantial and continuous exposure to asbestos-containing products. Huber has been diagnosed with an asbestos-related disease. The defendants have acted and continue to act as Huber's attorneys with respect to Huber's asbestos personal injury claims.

8.     Plaintiff William J. Airgood ("Airgood") is a citizen of the state of Pennsylvania, residing in North Huntingdon, Pennsylvania. Airgood is 54 years old. He has worked for approximately 35 years in a steel mill in Pennsylvania, where he has had substantial and continuous exposure to asbestos-containing products. Airgood has been

diagnosed with an asbestos-related disease. The defendants have acted and continue to act as Airgood's attorneys with respect to Airgood's asbestos personal injury claims.

9. Plaintiff Anthony DeFabbo ("DeFabbo") is a citizen of the state of Pennsylvania, residing in Uniontown, Pennsylvania. Defabbo is 52 years old. He has worked for approximately 31 years in Pennsylvania in a steel mill, and before that in Ohio, at a factory that manufactured disc brakes. In both jobs, he has had substantial and continuous exposure to asbestos-containing products. DeFabbo has been diagnosed with an asbestos-related disease. The defendants have acted and continue to act as DeFabbo's attorneys with respect to DeFabbo's asbestos personal injury claims.

10. Plaintiff John Dinio ("Dinio") is a citizen of the state of Pennsylvania, residing in Monessen, Pennsylvania. Dinio is 55 years old. He has worked for approximately 35 years in a steel mill in Pennsylvania, where he has had substantial and continuous exposure to asbestos-containing products. Dinio has been diagnosed with an asbestos-related disease. The defendants have acted and continue to act as Dinio's attorneys with respect to Dinio's asbestos personal injury claims.

11. Plaintiff Ernest Gishnock ("Gishnock") is a citizen of the state of Pennsylvania, residing in Donora, Pennsylvania. Gishnock is 49 years old. He has worked for approximately 28 years in a steel mill in Pennsylvania, where he has had substantial and continuous exposure to asbestos-containing products. Gishnock has been diagnosed with an asbestos-related disease. The defendants have acted and continue to act as Gishnock's attorneys with respect to Gishnock's asbestos personal injury claims.

12. Plaintiff John Blidenscik ("Blidenscik") is a citizen of the state of Ohio, residing in Cleveland, Ohio. Blidenscik is 50 years old. He worked for 32 years in

a steel mill in Ohio, where he had substantial and continuous exposure to asbestos-containing products. Blidenscik has been diagnosed with an asbestos-related disease. The defendants have acted and continue to act as Blidenscik's attorneys with respect to asbestos personal injury claims

13.    Plaintiff Hilma Mullins ("Mullins") is a citizen of the state of Indiana, residing in Hammond, Indiana. Mullins is 67 years old. He worked for 21 years in a steel mill in Indiana, where he had substantial and continuous exposure to asbestos-containing products. Mullins has been diagnosed with an asbestos-related disease. The defendants have acted and continue to act as Mullins' attorneys with respect to asbestos personal injury claims

14.    Plaintiff William Deem ("Deem") is a citizen of the state of Indiana, residing in Hobart, Indiana. Deem is 49 years old. He has worked for approximately 30 years in a steel mill in Indiana, where he has had substantial and continuous exposure to asbestos-containing products. Deem has been diagnosed with an asbestos-related disease. The defendants have acted and continue to act as Deem's attorneys with respect to Deem's asbestos personal injury claims.

15.    Defendant Robert G. Taylor, II ("Taylor") is a citizen of the state of Texas, residing in Houston, Texas. Taylor is a lawyer admitted to practice in the state of Texas.

16.    Defendant Robert G. Taylor, II P.C. ("Taylor P.C.") is a professional corporation providing legal services. Upon information and belief, Taylor P.C. is organized under the laws of the state of Texas, with its principal place of business

located in Houston, Texas.  Upon information and belief, defendant Taylor is the

president and sole shareholder of defendant Taylor P.C.

17.     Defendant Cletus P. Ernster III ("Ernster") is a citizen of the state

of Texas, residing in Houston, Texas.  Ernster is a lawyer admitted to practice in the state

of Texas.

18.     Defendant George E. Cire, Jr. ("Cire") is a citizen of the state of

Texas, residing in Houston, Texas.  Cire is a lawyer admitted to practice in the state of

Texas.

19.     Defendant J. Robert Davis, Jr. ("Davis") is a citizen of the state of

Texas, residing in Houston, Texas.  Davis is a lawyer admitted to practice in the state of

Texas.

20.     Defendant Taylor & Cire was, during a period when a substantial

portion of the misconduct alleged herein occurred, a law partnership formed under the

laws of the state of Texas, with its principal place of business in Houston, Texas.

Defendants Taylor, Cire and Ernster, who are citizens of the state of Texas, were the sole

members of Taylor & Cire.

21.     Defendant Taylor, Davis & Ernster, P.C. ("Taylor, Davis &

Ernster") is a professional corporation providing legal services.  Upon information and

belief, Taylor, Davis & Ernster P.C. is organized under the laws of the state of Texas,

with its principal place of business located in Houston, Texas.

22.     Defendant Taylor & Ernster P.C. ("Taylor & Ernster") is a

professional corporation providing legal services.  Upon information and belief, Taylor &

Ernster is organized under the laws of the state of Texas, with its principal place of business located in Houston, Texas.

23. Defendants Taylor and Taylor P.C. were members of Taylor & Cire and are shareholders of both Taylor, Davis & Ernster and Taylor & Ernster.

24. Defendant Cire was a member of Taylor & Cire.

25. Defendant Ernster was a member of Taylor & Cire and is a shareholder of both Taylor, Davis & Ernster and Taylor & Ernster

26. Defendant Davis was a member of Taylor & Cire and is a shareholder of Taylor, Davis & Ernster.

27. Defendants Taylor, Taylor P.C., Ernster, Cire, Davis, Taylor & Cire, Taylor, Davis & Ernster and Taylor & Ernster are collectively referred to as the "Taylor Group."

28. Defendant Robert A. Pritchard ("Pritchard") is a citizen of the state of Mississippi, residing in Pascagoula, Mississippi. Pritchard is a lawyer admitted to practice in the state of Mississippi.

29. Defendant Christopher Fitzgerald ("Fitzgerald") is a citizen of the state of Mississippi, residing in Pascagoula, Mississippi. Fitzgerald is a lawyer admitted to practice in the state of Mississippi.

30. Defendant Law Offices of Robert A. Pritchard ("Pritchard Law Offices") is a law partnership organized under the laws of the state of Mississippi, with its principal place of business in Pascagoula, Mississippi. Defendants Pritchard and Fitzgerald, who are citizens of the state of Mississippi, are the sole members of Pritchard Law Offices.

31.     Defendant Pritchard Law Firm, PLLC (the "Pritchard PLLC") is a professional corporation providing legal services. Pritchard PLLC is organized under the laws of the state of Mississippi, with its principal place of business in Pascagoula, Mississippi.

32.     Defendants Pritchard, Fitzgerald, Pritchard Law Offices and Pritchard PLLC are collectively referred to as the "Pritchard Group."

33.     Defendant Joseph B. Cox, Jr. ("Cox") is a citizen of the state of North Carolina, residing in Raleigh, North Carolina. Cox is a lawyer admitted to practice in the state of North Carolina.

34.     Defendant Joseph B. Cox, Jr. P.C. ("Cox P.C.") is a professional corporation providing legal services. Upon information and belief, Cox P.C. is organized under the laws of the state of North Carolina, with its principal place of business located in Raleigh, North Carolina. Upon information and belief, defendant Cox is the president and sole shareholder of defendant Cox P.C.

35.     Defendant Cox and Cox, L.L.P. ("Cox and Cox") is a limited liability partnership organized under the laws of North Carolina and engaged in the practice of law. Upon information and belief, defendant Cox, who is a citizen of the state of North Carolina, is the sole partner of defendant Cox and Cox.

36.     Defendants Cox, Cox P.C. and Cox and Cox are collectively referred to as the "Cox Group."

37.     Upon information and belief, defendant Taylor P.C. is undercapitalized and disregards corporate formalities.

38.     Upon information and belief, the corporate assets of defendant Taylor P.C. are used for defendant Taylor's personal interests, and the corporate affairs of defendant Taylor P.C. are intermingled with the personal affairs of defendant Taylor.

39.     The corporate structure of defendant Taylor P.C. should be ignored in order to prevent fraud and injustice.

40.     By reason of the foregoing, the liabilities of defendant Taylor P.C. for the misconduct alleged in this first amended complaint are also liabilities of defendant Taylor and vice versa.

41.     Upon information and belief, defendant Taylor, Davis & Ernster is undercapitalized and disregards corporate formalities

42.     Upon information and belief, the corporate assets of defendant Taylor, Davis & Ernster are used for the personal interests of defendants Taylor, Davis and Ernster, and the corporate affairs of defendant Taylor, Davis & Ernster are intermingled with the personal affairs of defendants Taylor, Davis and Ernster.

43.     The corporate structure of defendant Taylor, Davis & Ernster should be ignored in order to prevent fraud and injustice.

44.     By reason of the foregoing, the liabilities of defendant Taylor, Davis & Ernster for the misconduct alleged in this first amended complaint are joint and several liabilities of each of defendants Taylor, Davis and Ernster, and the liabilities of each of defendants Taylor, Davis and Ernster for the misconduct alleged in this first amended complaint are liabilities of defendant Taylor, Davis & Ernster.

45.     Upon information and belief, defendant Taylor & Ernster is undercapitalized and disregards corporate formalities.

9

46. Upon information and belief, the corporate assets of defendant Taylor & Ernster are used for the personal interests of defendants Taylor and Ernster, and the corporate affairs of defendant Taylor & Ernster are intermingled with the personal affairs of defendants Taylor and Ernster.

47. The corporate structure of defendant Taylor & Ernster should be ignored in order to prevent fraud and injustice.

48. By reason of the foregoing, the liabilities of defendant Taylor & Ernster for the misconduct alleged in this first amended complaint are joint and several liabilities of defendants Taylor and Ernster, and the liabilities of each of defendants Taylor and Ernster for the misconduct alleged in this first amended complaint are liabilities of defendant Taylor & Ernster.

49. Upon information and belief, defendant Pritchard PLLC is undercapitalized and disregards corporate formalities

50. Upon information and belief, the corporate assets of defendant Pritchard PLLC are used for the personal interests of defendants Pritchard and Fitzgerald, and the corporate affairs of defendant Pritchard PLLC are intermingled with the personal affairs of defendants Pritchard and Taylor.

51. The corporate structure of defendant Pritchard PLLC should be ignored in order to prevent fraud and injustice.

52. By reason of the foregoing, the liabilities of defendant Pritchard PLLC for the misconduct alleged in this first amended complaint are joint and several liabilities of defendants Pritchard and Fitzgerald, and the liabilities of each of defendants

Pritchard and Fitzgerald for the misconduct alleged in this first amended complaint are liabilities of defendant Pritchard PLLC.

53.     Upon information and belief, defendant Cox P.C. is undercapitalized and disregards corporate formalities.

54.     Upon information and belief, defendant Cox and Cox is undercapitalized and disregards the formalities of a limited liability partnership.

55.     Upon information and belief, the assets of defendants Cox P.C. and Cox and Cox are used for defendant Cox's personal interests, and the affairs of defendants Cox P.C. and Cox and Cox are intermingled with the personal affairs of defendant Cox.

56.     The corporate structure of defendant Cox P.C. and the limited liability partnership structure of Cox and Cox should be ignored in order to prevent fraud and injustice.

57.     By reason of the foregoing, the liabilities of defendants Cox P.C. and Cox and Cox for the misconduct alleged in this first amended complaint are also the liabilities of defendant Cox and vice versa.

58.     In connection with the matters alleged in this complaint each defendant acted for the benefit or on behalf of, and as agent of, the other defendants.

59.     In connection with the matters alleged in this first amended complaint, one or more of the various defendants had contacts with this jurisdiction for the benefit of the defendants, and the defendants were or should have been aware of those contacts. These contacts were intended to and did further the interests of all the defendants.

## INTRODUCTION

60.   This case arises from corruption within the asbestos personal injury bar.

**Historical Background**

61.   For hundreds of years, asbestos has been mined and then refined to produce materials that are unusually resistant to heat.  The heat resistant properties of asbestos have made it ideal for use in factories, refineries, homes, office buildings, ships, automobiles and every other place or device where insulation or fire-proofing is of concern.

62.   Until the early 1970s, hundreds of companies in the United States ("Asbestos Corporations") either mined, manufactured, distributed or used asbestos or products that contained asbestos.

63.   Although the potentially harmful effects of breathing asbestos had been observed for several decades in workers, like miners or millers, involved with the handling of the material in its raw form, it was not until the mid-1960s that the United States medical community began to disseminate studies indicating that people exposed to end-products that contained asbestos were also at risk of contracting various pulmonary diseases.

64.   Dust inhaled when asbestos containing products are being installed or removed was shown to cause a host of pulmonary problems, ranging from mild scarring of the lung, to severe impairment of lung capacity, to lethal forms of cancer.

65.    In response to the information from the medical community, the manufacture, distribution and use of any asbestos products that could produce dust largely ceased in the United States by the early 1970s.

66.    Also in the 1970s, people who had contracted diseases from exposure to asbestos products began to file personal injury claims against the Asbestos Corporations.

67.    As jury awards against and settlements with Asbestos Corporations grew, the number of claims filed also increased. By the early 1980s, the prosecution of asbestos personal injury claims had evolved into an industry, and the lawyers who were prominent in that industry had accumulated vast wealth.

68.    The promise of such wealth drew additional plaintiffs' lawyers into the field, and this resulted in more and more aggressive efforts to recruit asbestos personal injury plaintiffs.

69.    Although manufacture and use of the dangerous forms of asbestos had largely ceased by the early 1970s, the long latency period of asbestos related diseases and the fact that such diseases could be contracted from handling or removing asbestos products years after they had been installed meant that victims might appear decades, even many decades, after the 1970s.

70.    As a result of the extensive use of asbestos in the past, the exposures that have occurred long after use of asbestos ceased, and the length of the latency period, the number of personal injury victims is enormous, and tens of thousands of asbestos personal injury claims are filed in the nation's courts every year.

71.    When those claims reach trial, juries typically award substantial sums for compensatory damages, and often award astronomical sums as punitive damages.

72.    Hobbled by the magnitude of the filings and their past experiences in the tort system, the Asbestos Corporations are eager to avoid trials and to settle claims in bulk, at a discount.

A Summary of this Action

73.    The plaintiffs in this action are steelworkers. Collectively, they have more than 160 years experience working in steel mills. They have limited means. They are not sophisticated. They have all been diagnosed with asbestos-related diseases.

74.    The lawyers and law firms who are the defendants in this action were responsible for filing and settling the asbestos personal injury claims of the plaintiffs. These lawyers and law firms completely perverted the legal system. They concerned themselves principally with the recruitment of huge numbers of victims, and they enlisted agents -- often other lawyers or law firms -- to assist in the recruitment campaign. The lawyers and law firms involved in this case did not act as true representatives of their clients. Instead, they regarded the asbestos victims not as clients, but as "inventory," to be traded in bulk, without any regard to individual rights or circumstances. They were concerned primarily with accumulating the largest fees with the least effort. In the end, the clients simply served the interests of the lawyers instead of the other way around.

75.    The unscrupulous lawyers and law firms in this case commenced "mass actions" in the names of their thousands of clients, including the plaintiffs in this

14

case, without informing them about the nature and scope of the actions in which they had

been joined. The lawyers ultimately entered into huge aggregate settlements of their

clients' claims -- all without the knowledge or approval of their clients. None of the

aggregate settlements has ever been disclosed to the plaintiffs by the lawyers who are the

defendants in this action. None of the aggregate settlements was or ever has been

reviewed or approved by a court.

76.     The lawyers and law firms exercised complete, unsupervised

discretion with regard to the settlement funds, including the amount and timing of the

disbursement of the funds to their clients and the determination of how much the lawyers

would retain (in addition to their attorneys' fees) as "expenses."

77.     In some instances, the defendant lawyers distributed less of the

settlement fund to one group of clients solely because of the location of the clients'

residence and the place where they were exposed to asbestos. The plaintiffs in this case

and the members of the proposed class suffered this discriminatory treatment.

78.     The plaintiffs in this case and the members of the proposed class

never knew what actions they had been joined in and were never provided with basic

information about those actions. They never saw the aggregate settlement agreements

and never knew the amount of the aggregate settlements. They did not know that their

lawyers were simultaneously representing thousands of similarly situated clients with

competing claims to the settlement funds. They did not know what the other similarly

situated clients were receiving in settlement, so they did not know that they were

receiving less. They never received detailed expense reports from the lawyers and never

knew what the true expenses incurred by their lawyers actually were. They would

receive nothing more than a form letter indicating an amount that had been paid in

settlement by particular Asbestos Corporation and the amounts deducted as attorneys'

fees and expenses.  In order to obtain the settlement funds that belonged to them, they

were compelled to sign form documents in which the defendant lawyers attempted, after

the fact, to conceal their own misconduct.  They never knew how much they might have

been awarded had their lawyers prosecuted their claims to trial instead of selling them off

in bulk.  They were never given an opportunity to have their claims fully and fairly

litigated or to participate in the settlement of their claims.

## FACTUAL BACKGROUND

79.    Plaintiffs have been diagnosed with diseases caused by exposure to

asbestos or products containing asbestos.

80.    Commencing in 1995 and continuing to date, the defendants have

acted as the attorneys for Plaintiffs in litigation seeking damages from hundreds of

Asbestos Corporations for personal injuries arising from exposure to asbestos or

asbestos-containing products manufactured or distributed by those corporations.

81.    In 1995, the Pritchard Group filed an action in a state court in

Mississippi asserting asbestos personal injury claims on behalf of several of their clients

(the "Mississippi Action").  The Taylor Group assisted the Pritchard Group in recruiting

clients to the Mississippi Action and acted as co-counsel to the Pritchard Group in the

Mississippi Action.

16

82.   Between 1995 and 1999, the Taylor and Pritchard Groups recruited asbestos clients from numerous parts in the United States for inclusion in the Mississippi Action.

83.   As part of the recruitment effort, the Taylor and Pritchard Groups enlisted law firms and lawyers in, among other places, Pennsylvania, Ohio and Indiana, to act as their agents in attracting additional clients for inclusion in the Mississippi Action.

84.   As part of the recruitment effort, the Taylor and Pritchard Groups and their agents sponsored union-wide lung screenings and pulmonary function tests.

85.   The results of the lung screenings and pulmonary function tests were sent to the Taylor and Pritchard Groups.  Union members whose lung screening or pulmonary function test showed signs or symptoms of exposure to asbestos, were, often without the members' knowledge or approval, included in the Mississippi Action.

86.   By 1999, the Taylor Group and the Pritchard Group, working directly and through their agents, had joined nearly 5,000 victims in the original Mississippi Action and a second Mississippi action that they subsequently commenced (the two actions in Mississippi are collectively referred to as the "Mississippi Actions").

87.   The plaintiffs in the instant case were included by the Taylor and Pritchard Groups among the 5,000 clients who were the named plaintiffs in the Mississippi Actions.

88.   The Taylor and Pritchard Groups joined more than 200 Asbestos Corporations as defendants in the Mississippi Actions.

89.     Neither the Taylor Group nor the Pritchard Group had the capability or the desire either to aggressively prosecute or try the claims of each of the approximately 5,000 clients whose claims they had joined in the Mississippi Actions. Indeed, the Taylor and Pritchard Groups had never met or interviewed most of those 5000 clients.

90.     Assisted by the Cox Group, the Taylor and Pritchard Groups set out to compromise the claims of their 5,000 clients in the aggregate, without the knowledge or consent of the clients.

91.     Without the knowledge or consent of their clients, the defendants -- the Taylor, Pritchard and Cox Groups -- eventually concluded aggregate settlements with dozens of the defendants in the Mississippi Actions.

The CCR Settlement

92.     One such settlement (hereinafter referred to as the "CCR settlement") was concluded on November 3, 1999. The defendants executed, as attorneys for approximately 3,898 clients, including the plaintiffs and the other Class Members, a settlement agreement with eighteen Asbestos Corporations who were defendants in the Mississippi Actions. The eighteen Asbestos Corporations are: (i) Amchem Products, Inc., (ii) Armstrong World Industries, Inc., (iii) Asbestos Claims Management Corp., (iv) Certain Teed Corp., (v) C.E. Thurston and Sons, Inc., (vi) Dana Corp., (vii) Ferodo America, Inc., (viii) Flexitallic, Inc., (ix) I.U. North America, Inc., (x) Maremont Corp., (xi) National Service Industries, Inc. (xii) Nosroc Corp., (xiii) Pfizer Inc., (xiv) Quigley Company, Inc., (xv) Shook & Fletcher Insulation Co., (xvi) T&N plc and (xvii) United States Gypsum.

93.   The CCR settlement was negotiated by the defendants and it was executed by defendants Taylor, Taylor P.C., Taylor & Cire, Pritchard, Pritchard Law Offices, Cox, and Cox P.C.  The CCR settlement explicitly recites that it was executed by the defendants "as agents for and on behalf of" the group of approximately 3,898 clients that includes the plaintiffs in this action.

94.   As more fully described below, the defendants exercised completely unsupervised discretion in: determining the terms under which they would enter into the CCR settlement, determining when and in what amounts they would distribute the proceeds of the CCR settlement to the plaintiffs and their other clients, and determining the amounts they would deduct from the aggregate settlements and retain as reimbursement of "expenses."

95.   Also as more fully described below, in the exercise of their unlimited, unsupervised discretion, the defendants discriminated against the 2,645 members of the Class to which the plaintiffs in this action belong.  The defendants dictated that the plaintiffs and the other Class Members would each receive an amount substantially less than other groups of the defendants' clients.  This decision was based solely on the fact that the plaintiffs and the other Class Members lived or had been exposed to asbestos in Pennsylvania, Ohio or Indiana.

96.   The CCR settlement provides, among other things, that the plaintiffs and the other Class Members will each receive approximately $14,000.

97.   The CCR settlement provides, among other things, that other groups of Defendants' clients, who are similarly situated to the plaintiffs and the Class Members, will receive between 2 ½ and 18 times as much per person as the plaintiffs and

the other Class Members, solely because of the location of the other clients' residences or the places where their asbestos exposure occurred.

98.   According to the CCR settlement, on or about March 1, 2000 in excess of $140,000,000 was to be paid into a fund controlled by the defendants.

99.   Upon information and belief, $140,000,000 or an amount approximately that magnitude, was paid into the fund in or around March 2000.

100.   The fund consists of property belonging to the plaintiffs and the thousands of other individuals covered by the CCR settlement.

101.   As of the date of this first amended complaint, the defendants have disbursed no more than a miniscule fraction of the CCR settlement fund.

102.   Defendants never sought and plaintiffs never gave consent or authorization to the defendants to retain the CCR settlement fund.

103.   Defendants have never informed plaintiffs that defendants are and have been retaining the CCR settlement fund.

104.   At no time have the defendants conveyed to the plaintiffs any information regarding the identity or the nature of the Mississippi Actions in which the plaintiffs had been joined as parties.

105.   At no time before its execution did the defendants inform the plaintiffs of the proposed terms of the CCR settlement.

106.   At no time before its execution did the defendants notify the plaintiffs that the proposed settlement with the CCR was an aggregate settlement, that is, that it would settle the asbestos injury claims of the plaintiffs as well as the claims of thousands of other clients of the defendants.

107.   Before executing the CCR settlement, the defendants did not seek plaintiffs' informed consent to it and plaintiffs did not consent to it.

108.   At no time before the execution of the CCR settlement did the defendants convey to the plaintiffs the amount of the aggregate settlement, the amount that each client included in the aggregate settlement would receive (or the procedures for deciding how the aggregate amount would be divided between the clients), the fact that other groups of defendants' clients would be receiving between 2 ½ and 18 times as much as the amount that the defendants were allocating to each of the plaintiffs and the other Class Members, the time at which the plaintiffs would receive the settlement amount, the amount of legal fees and expenses that would be charged, whether those fees and expenses would be deducted from the aggregate settlement amount, or the advantages and disadvantages of entering into the CCR settlement.

109.   At no time before the execution of the CCR settlement did the defendants inform the plaintiffs of the nature of the asbestos personal injury claims asserted by the other clients included in the CCR settlement and that the defendants' simultaneous representation of the plaintiffs and thousands of additional clients gave (or could give) rise to a conflict of interest.

110.   At no time since the execution of the CCR settlement have the defendants conveyed to the plaintiffs the information specified in paragraphs 82 through 99 of this first amended complaint.

Settlement Agreements with other Asbestos Corporations

111.   Commencing in early 2000 and continuing to date, the defendants, acting as attorneys for the plaintiffs, have executed agreements with the following Asbestos Corporations, settling the asbestos personal injury claims of the plaintiffs and the other Class Members against those corporations:

      a.     W. R. Grace & Co.

      b.     Owens Corning

      c.     Harbison-Walker Refractories Company

      d.     Lake Asbestos of Quebec, Ltd.

      e.     Johns-Manville Corporation

      f.     Babcock & Wilcox Company

      g.     Flintkote Company

      h.     Ingersoll-Rand Company

      i.     Kaiser Aluminum Corporation

      j.     HK Porter Company, Inc.

112.   Upon information and belief, the personal injury claims that are the subject of the above settlements (the "Miscellaneous settlements") had been (or were to be) included in the Mississippi Actions or other actions that had been commenced by the defendants.

113.   The Miscellaneous settlements are aggregate settlements.

114.   At no time before the executions of the Miscellaneous settlements did the defendants convey to the plaintiffs the proposed terms of the settlements.

22

115.    At no time before the execution of the Miscellaneous settlements did the defendants inform the plaintiffs that the Miscellaneous settlements were aggregate settlements.

116.    Before executing the Miscellaneous settlements, the defendants did not seek plaintiffs' informed consent to the settlements and plaintiffs did not consent to them.

117.    At no time before the execution of any of the Miscellaneous settlements did the defendants convey to the plaintiffs the amount of the aggregate settlement, the amount that each person included in the aggregate settlement would receive (or the procedures for deciding how the aggregate amount would be divided between the clients), the time at which the plaintiffs would receive the settlement amount, the amount of legal fees and expenses that would be charged, whether those fees and expenses would be deducted from the aggregate, or the advantages and disadvantages of entering into the Miscellaneous settlements.

118.    At no time before to the execution of the Miscellaneous settlements did the defendants inform the plaintiffs of the nature of the asbestos personal injury claims asserted by the other clients included in the Miscellaneous settlements and that the defendants' simultaneous representation of the plaintiffs and thousands of additional clients gave (or could give) rise to a conflict of interest.

119.    At no time since the execution of the Miscellaneous settlements have the defendants conveyed to the plaintiffs the information specified in paragraphs 101 through 107 of this first amended complaint.

120.    In at least one, and upon information and belief, several more, of the Miscellaneous settlements, defendants have withheld money from plaintiffs, representing that the money was being held in "trust".

121.    For example, in early 2001, the Taylor Group notified the plaintiffs that, in addition to its 40% fee and its "expenses," the Taylor Group was retaining an additional amount, in excess of 12% of the award, in "trust."

122.    Neither the Taylor Group nor any of the other defendants have ever identified to the plaintiffs the "trustee" of the withheld funds, nor have they conveyed to the plaintiffs the terms under which the funds are held in "trust."

123.    The defendants never explained these withholdings to the plaintiffs, and the plaintiffs never consented or authorized these withholdings.

124.    The expenses charged by the defendants to the plaintiffs in the Miscellaneous settlements have never been documented.

125.    The expenses charged by the defendants to the plaintiffs in the Miscellaneous settlements are inflated, inappropriate and in some instances, fictitious.

**Other Settlements**

126.    Upon information and belief, the defendants have executed agreements with Asbestos Corporations other than those specified in paragraphs 92 and 111 of this first amended complaint.

127.    Upon information and belief, when in the course of the instant action these other agreements are disclosed, it will be apparent that the defendants

engaged in misconduct with respect to those agreements identical or similar to the misconduct alleged above (*supra* at ¶ ¶ 94-110, 114-125 of this first amended complaint).

128.   In connection with the misconduct alleged in paragraphs 94 through 110 and 114 through 125 of this first amended complaint, the defendants acted willfully and wantonly, or with reckless disregard for the rights of the plaintiffs.

## CLASS ACTION ALLEGATIONS

129.   Plaintiffs file this first amended complaint on behalf of themselves and on behalf of a class of persons under Rules 23(a) and 23(b)(1), (2) and (3), Fed. R. Civ. P.

**Class Definition**

130.   The named plaintiffs prosecute this action on behalf of themselves and all others similarly situated (the "Class"), which consists of:

> Approximately 2,645 persons who reside or had substantial exposure to asbestos in Pennsylvania, Ohio or Indiana and have been or are represented by the defendants with respect to asbestos personal injury claims.

**Numerosity**

131.   The Class consists of approximately 2,645 individuals and is therefore so numerous that joinder of all Class Members is impracticable.

**Existence of Common Questions of Law and Fact**

132.   All members of the Class have been damaged by the same wrongful acts or failures to act that are alleged in this first amended complaint, affecting the Class as a whole. Consequently, there are questions of law and/or fact common to the

Class which predominate over any questions affecting individual members. These questions include, but are not limited to:

    a.      What duties were owed to the Class by Defendants;

    b.      What duties were breached by Defendants;

    c.      Whether Defendants failed to disclose material facts and risks regarding Defendants' representation of multiple clients with potentially conflicting interests, and failed to seek the informed consent of Class members regarding such representation;

    d.      Whether Defendants failed to disclose the nature, scope and status of the actions in which Defendants represented Plaintiffs;

    e.      Whether Defendants negotiated and executed agreements settling the Class Members' asbestos personal injury claims without the knowledge and informed consent of the Class Members.

    f.      Whether Defendants executed unauthorized aggregate settlement agreements on behalf of the Class.

    g.      Whether Defendants intentionally concealed or failed to disclose material information to the Class Members in connection with their representation and in connection with the aggregate settlement agreements reached on their behalf;

    h.      Whether Defendants failed to disclose to Class Members the nature, terms, amounts and procedures for distributing funds received by Defendants in connection with aggregate settlement agreements made on behalf of the Class Members, the amount of legal fees and expenses that would be

charged or the advantages and disadvantages of entering into the aggregate settlements.

       i.     Whether Defendants failed to disclose to Class members that under at least one undisclosed aggregate settlement executed by Defendants, the amount that was to be received by groups of Defendants' clients *other* than the Class Members is between 2 ½ to 18 times as much as the amount to be received by each of the Class Members, and that this discrepancy is based solely on the location of the other clients' residences or the states in which they were exposed to asbestos;

       j.     Whether Defendants adequately informed the Class Members regarding the allocation of attorneys' fees and expenses in connection with their representation;

       k.     Whether Defendants improperly withheld settlement funds from the Class Members, without the knowledge, consent or authorization of the Class Members;

       l.     Whether the defendants falsely informed Class Members that a portion of the settlement funds that are the property of the Class Members is held in trust;

       m.     Whether the defendants failed to provide the Class Members with copies of all settlement agreements that concern the Class Members;

       n.     Whether the defendants failed to provide the Class Members with an accounting of all funds received in connection with the settlement agreements;

o.   Whether Defendants' acts and omissions constituted a breach of fiduciary duty owed to the Class Members;

p.   Whether, in representing the interests of the Class Members, Defendants exercised the appropriate standard of care required of attorneys in similar circumstances;

q.   Whether Defendants' unauthorized retention of settlement funds that are the property of the Class Members constitutes conversion;

r.   Whether the members of the Class are entitled to injunctive relief;

s.   Whether the members of the Class have sustained damages as a result of Defendants' acts and omissions;

t.   Whether the Defendants' acts and omissions were willful and/or intentional;

u.   The appropriate equitable and monetary class-wide remedies that should be awarded; and

v.   Whether members of the Class should be awarded punitive damages, and if so, what is the proper measure of such damages.

**Typicality**

133.   Plaintiffs are members of the Class of individuals described in paragraph 130 of this first amended complaint who were victimized by the conduct of Defendants as described in this first amended complaint. The claims of the named plaintiffs are typical of the claims of the Class and do not conflict with the interests of any other members of the Class, because they all have suffered from the same wrongful acts and omissions of the Defendants. Thus, Plaintiffs and each member of the Class

28

suffered and continue to suffer monetary damage as a result of Defendants' wrongful conduct, as well as injuries that require equitable relief. All such claims are based on the same operative facts and the same legal theories.

134.   The named plaintiffs are committed to the vigorous prosecution of this action and their interests are coincident and not antagonistic to those of the other members of the Class. Furthermore, Plaintiffs have retained counsel qualified to pursue this litigation who have extensive experience in class action litigation and are familiar with the subject matter of this case. Accordingly, Plaintiffs will fairly and adequately protect the interests of the Class.

135.   The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendants in this action. Multiple actions would also cause undue hardship and expense for both the court system and the litigants, because identical issues would repeatedly have to be re-litigated by new plaintiffs against Defendants, thereby denying all parties the benefits of economies of scale.

136.   The defendants have acted and failed to act on grounds generally applicable to the Class, thereby making it appropriate to order an accounting and other equitable relief with respect to the Class as a whole.

137.   A class action is far superior to other methods available for the fair and efficient adjudication of this controversy for the following reasons:

a.      Without a class action, Defendants' illegal conduct will continue without remedy and Defendants will continue to enjoy the proceeds of their unlawful misconduct;

b.      Given the substantive complexity of this litigation, the size of the individual Class Members' claims and the limited resources of Class Members, few, if any, Class Members could afford to seek legal redress individually for the wrongs that the defendants have committed against them;

c.      A class action will foster an orderly and expeditious administration of each Class Member's claims, economies of time, effort and expense and uniformity of decision.

138.    A class action regarding the issues in this case creates no problems of manageability.

## FIRST CLAIM FOR RELIEF
(Breach of Fiduciary Duty – The CCR Settlement)

139.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 138 of this first amended complaint.

140.    As attorneys acting for the plaintiffs, the defendants owed and continue to owe a fiduciary duty to the plaintiffs.

141.    The defendants have breached their fiduciary duties to Plaintiffs by, among other things, failing to seek or obtain the plaintiffs' informed consent to the CCR settlement.

142.    The defendants have breached their fiduciary duties to the plaintiffs by, among other things, failing to inform plaintiffs of the: identity and nature of the Mississippi Actions and any other actions in which the defendants have joined them, the terms of the CCR settlement, the total amount of the CCR settlement, the amounts that each client included in the CCR settlement would receive (or the procedures for

deciding how the aggregate amount would be divided between the clients), the fact that

the allocation of the CCR settlement fund discriminates against the plaintiffs solely on

the basis of geography, the time at which the plaintiffs would receive the settlement

amount, the amount of legal fees and expenses that would be charged, whether those fees

and expenses would be deducted from the aggregate amount of the CCR settlement and

the advantages and disadvantages of entering into that settlement.

143.   The defendants have breached their fiduciary duties to the

plaintiffs by, among other things, failing to inform them of the nature of the asbestos

personal injury claims asserted by the other clients included in the CCR settlement and

that the defendants' simultaneous representation of the plaintiffs and thousands of

additional clients gave (or could give) rise to a conflict of interest.

144.   The defendants have breached their fiduciary duties to the

plaintiffs by, among other things, retaining CCR settlement funds that are the property of

the plaintiffs, without the plaintiffs' knowledge, consent and authorization.

145.   As a result of the defendants' breaches of fiduciary duty, each of

the plaintiffs has suffered damages in an amount to be proved at trial, but in excess of

$150,000.

## SECOND CLAIM FOR RELIEF
(Breach of Fiduciary Duty – The Miscellaneous Settlements)

146.   Plaintiffs repeat and reallege the allegations of paragraphs 1

through 145 of this first amended complaint.

147.   As attorneys acting for the plaintiffs, the defendants owed and owe

a fiduciary duty to the plaintiffs.

148. The defendants have breached their fiduciary duties to the plaintiffs by, among other things, failing to seek or obtain the plaintiffs' informed consent to the Miscellaneous settlements.

149. The defendants have breached their fiduciary duties to the plaintiffs by, among other things, failing to inform plaintiffs of the: identity and nature of lawsuit or lawsuits in which they had been made parties, the terms of the Miscellaneous settlements, the total amounts of the Miscellaneous settlements, the amounts that each client included in the Miscellaneous settlements would receive (or the procedures for deciding how the aggregate amount would be divided between the clients), the time at which the plaintiffs would receive the settlement amounts, the amount of legal fees and expenses that would be charged, whether those fees and expenses would be deducted from the aggregate amounts of the Miscellaneous settlements, and the advantages and disadvantages of entering into those settlements.

150. The defendants have breached their fiduciary duties to the plaintiffs by, among other things, failing to inform them: of the nature of the asbestos personal injury claims asserted by the other clients included in the Miscellaneous settlements, and that the defendants' simultaneous representation of the plaintiffs and thousands of additional clients gave (or could give) rise to a conflict of interest.

151. The defendants have breached their fiduciary duties to the plaintiffs by, among other things, retaining from the Miscellaneous settlements funds that are the property of the plaintiffs, without the plaintiffs' knowledge, consent or authorization; retaining portions of settlement funds in so-called "trust," without the

plaintiffs' knowledge, consent and authorization, and charging inflated, inappropriate and

fictitious fees to the plaintiffs.

152.    As a result of the defendants' breaches of fiduciary duty, each of

the plaintiffs has suffered damages in an amount to be proved at trial, but in excess of

$150,000.

### THIRD CLAIM FOR RELIEF
(Fraud – The CCR Settlement)

153.    Plaintiffs repeat and reallege the allegations of paragraphs 1

through 152 of this first amended complaint.

154.    The defendants failed to disclose to the plaintiffs, among other

things, the identity and nature of the Mississippi Actions and any other actions in which

the defendants have joined them, the terms of the CCR settlement, the total amount of the

CCR settlement, the amounts that each client included in the CCR settlement would

receive (or the procedures for deciding how the aggregate amount would be divided

between the clients), the fact that the allocations of settlement funds under the CCR

settlement discriminates against the plaintiffs solely on the basis of geography, the time at

which the plaintiffs would receive the settlement amount, the amount of legal fees and

expenses that would be charged, whether those fees and expenses would be deducted

from the aggregate amount of the CCR settlement and the advantages and disadvantages

of entering into that settlement.

155.    The defendants failed to disclose to the plaintiffs, among other

things: the nature of the asbestos personal injury claims asserted by the other clients

included in the CCR settlement, that the defendants' simultaneous representation of the

plaintiffs and thousands of additional clients gave (or could give) rise to a conflict of interest and that the CCR settlement discriminates against similarly situated clients solely on the basis of geography.

156.    The defendants failed to disclose to the plaintiffs that other groups of defendants' clients would be receiving between 2 ½ and 18 times as much of the CCR settlement fund as the amount that the defendants were allocating to each of the plaintiffs and the other Class Members

157.    The defendants failed to disclose to the plaintiffs, among other things, that the defendants are retaining or have retained CCR settlement funds that are the property of the plaintiffs.

158.    All the facts that the defendants have failed to disclose are material.

159.    As attorneys for the plaintiffs, the defendants had and have a duty to disclose to the plaintiffs all facts material to the plaintiffs' asbestos personal injury claims and to the resolution of those claims.

160.    The defendants failed to disclose the material facts set forth in paragraphs of this first amended complaint with the intent to bind the plaintiffs to the CCR settlement.

161.    The defendants failed to disclose the material facts set forth in paragraphs154 through 157 of this first amended complaint with the intent to induce the plaintiffs to accept a smaller portion of the CCR settlement fund than they otherwise would have.

162.  The defendants failed to disclose the material facts set forth in paragraphs 93 through 110 of this first amended complaint with the intent to deprive the plaintiffs of funds belonging to the plaintiffs.

163.  The plaintiffs were unaware of the facts that the defendants failed to disclose.

164.  Plaintiffs relied on the material omissions of defendants, because as a result of the material omissions, plaintiffs were deprived of the opportunity to, and did not, alter or object to the discriminatory terms or any other terms of the CCR settlement.

165.  Plaintiffs relied on the material omissions of defendants, because as a result of the material omissions, plaintiffs were deprived of the opportunity to, and did not, object to defendants' retention of the CCR settlement fund.

166.  As a consequence of defendants' failure to disclose the material facts, each of the plaintiffs has been damaged in an amount to be proved at trial, but in excess of $150,000.

### FOURTH CLAIM FOR RELIEF
(Fraud – The Miscellaneous Settlements)

167.  Plaintiffs repeat and reallege the allegations of paragraphs 1 through 166 of this first amended complaint.

168.  Defendants failed to disclose to the plaintiffs, among other things, the identity and nature of the lawsuit or lawsuits in which they were joined, the terms of the Miscellaneous settlements, the total amounts of the Miscellaneous settlements, the amounts that each client included in the Miscellaneous settlements would receive (or the

procedures for deciding how the aggregate amount would be divided between the clients), the time at which the plaintiffs would receive the settlement amounts, the amount of legal fees and expenses that would be charged, whether those fees and expenses would be deducted from the aggregate amounts of the Miscellaneous settlements, and the advantages and disadvantages of entering into those settlements.

169.   The defendants failed to disclose to the plaintiffs, among other things: the nature of the asbestos personal injury claims asserted by the other clients included in the Miscellaneous settlements, and that the defendants' simultaneous representation of the plaintiffs and thousands of additional clients gave (or could give) rise to a conflict of interest.

170.   The defendants failed to disclose the identity and nature of the "trusts" in which some of the settlement funds belonging to plaintiffs are supposedly held.  The defendants failed to disclose the identity of the trustee and the terms of the trust.

171.   All the facts that the defendants have failed to disclose are material.

172.   As attorneys for the plaintiffs, the defendants had and have a duty to disclose to the plaintiffs all facts material to the plaintiffs' asbestos personal injury claims and to the resolution of those claims.

173.   The defendants failed to disclose the material facts set forth in paragraphs 168 through 170 of this first amended complaint with the intent to bind the plaintiffs to the Miscellaneous settlements.

174.   The defendants failed to disclose the material facts set forth in paragraphs 168 through 170 of this first amended complaint with the intent to induce the plaintiffs to accept a smaller portion of the Miscellaneous settlements than they otherwise would have .

175.   The defendants failed to disclose the material facts set forth in paragraphs 168 through 170 of this first amended complaint with the intent to deprive the plaintiffs of funds belonging to the plaintiffs.

176.   The plaintiffs were unaware of the facts that the defendants failed to disclose.

177.   Plaintiffs relied on the material omissions of defendants, because as a result of the material omissions, plaintiffs were deprived of the opportunity to, and did not, alter or object to the discriminatory terms or any other terms of the Miscellaneous settlements.

178.   Plaintiffs relied on the material omissions of defendants, because as a result of the material omissions, plaintiffs were deprived of the opportunity to, and did not, object to defendants' retention of the Miscellaneous settlement funds in "trust."

179.   As a consequence of defendants' failure to disclose the material facts, each of the plaintiffs has been damaged in an amount to be proved at trial, but in excess of $150,000.

## FIFTH CLAIM FOR RELIEF
(Fraud – The Miscellaneous Settlements)

180.   Plaintiffs repeat and reallege the allegations of paragraphs 1 through 179 of this first amended complaint.

181.    The defendants' representation to the plaintiffs that a portion of the settlement funds belonging to the plaintiffs are being held in "trust" is a material fact.

182.    That representation was known by the defendants to be false at the time the defendants made it.

183.    The defendants made the false representation to deprive the plaintiffs of funds belonging to the plaintiffs.

184.    The plaintiffs were unaware of the falsity of the representations.

185.    In reliance on the false representations, Plaintiffs have foregone funds that in fact belong to them.

186.    As a result of the plaintiffs' forbearance, each of them has been damaged in an amount to be proved at trial.


## SIXTH CLAIM FOR RELIEF
(Conversion)

187.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 186 of this first amended complaint.

188.    Defendants' retention of the CCR settlement funds and their retention of portions of settlement funds in "trust" constitute an intentional exercise of dominion and control over property belonging to the plaintiffs.

189.    The defendants' exercise of dominion and control is without the plaintiffs' consent and to the exclusion of the plaintiffs' rights in the funds.

190.    As a consequence of the foregoing, the plaintiffs have been damaged in an amount to be proved at trial.

## SEVENTH CLAIM FOR RELIEF
(Conspiracy to Defraud, Convert and Breach Fiduciary Duty)

191.   Plaintiffs repeat and reallege the allegations of paragraphs 1 through 190 of this first amended complaint.

192.   The defendants have acted and continue to act for the common purpose of defrauding the plaintiffs, converting property that belongs to the plaintiffs, and violating the plaintiffs' rights (in the manner set forth in this first amended complaint).

193.   In furtherance of this common purpose, the defendants have, among other things, committed the following overt acts: executing the CCR settlement, executing the Miscellaneous settlements, intentionally withholding material information relating to these settlements from plaintiffs, unlawfully retaining CCR settlement funds and Miscellaneous settlement funds, and misrepresenting Miscellaneous settlement funds belonging to the plaintiffs as being held in "trust."

194.   The defendants' conduct was intended to and did injure the plaintiffs, in the amount to be proved at trial, but in excess of $150,000.

195.   By reason of the foregoing, Defendants are liable for conspiracy.

## EIGHTH CLAIM FOR RELIEF
(Professional Malpractice)

196.   Plaintiffs repeat and reallege the allegations of paragraphs 1 through 195 of this first amended complaint.

197.   Commencing in 1995 and continuing to date, the defendants have acted as attorneys for the plaintiffs.

198.   By engaging in the conduct described in paragraphs 94 through 110 and 114 through 125 of this first amended complaint, the defendants failed to

exercise the degree of competence and diligence exercised by lawyers in similar circumstances.

199.    As a result of the misconduct referred to in the preceding paragraph, each of the plaintiffs has been damaged in an amount to be proved at trial, but in excess of $150,000.


### NINTH CLAIM FOR RELIEF
(Violation of Deceptive Trade Practices and Consumer Protection Law)

200.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 199 of this first amended complaint.

201.    As alleged in paragraphs 120 and 121 of this first amended complaint, the defendants have made express misrepresentations of material fact that cannot be characterized as opinion, advice or judgment.

202.    As alleged in paragraphs 94 through 110 and 114 through 125 of this first amended complaint, the defendants have failed to disclose material information in an effort to induce the plaintiffs to act or to refrain from acting in a particular way.

203.    By reason of the defendants' violations of the Pennsylvania Deceptive Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.*, and similar statutes in force in Indiana and Ohio, each of the plaintiffs has been damaged in an amount to be proved at trial, but in excess of $150,000.

## TENTH CLAIM FOR RELIEF
(Injunction Ordering Disclosure to Plaintiffs of all Settlement Agreements)

204.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 203 of this first amended complaint.

205.    The defendants have failed and refused to provide the plaintiffs with copies of any of the settlement agreements executed by the defendants with Asbestos Companies concerning the asbestos personal injury claims of the plaintiffs.

206.    The defendants' failure and refusal constitute a breach of fiduciary duty, intentional failure to disclose material facts and professional malpractice.

207.    The defendants' failure and refusal to provide the settlement agreements is causing irreparable injury to the plaintiffs, because, among other things, it deprives them of any opportunity to determine the number of such agreements that have been executed and the extent of their true entitlement under those agreements.

208.    The defendants' failure and refusal to provide the settlement agreements is causing irreparable injury to the plaintiffs, because, among other things, it prevents them from determining the full extent of the damage that has been caused by the defendants' misconduct.

209.    Plaintiffs have no adequate remedy at law for the injuries specified in the two preceding paragraphs.

210.    By reason of the foregoing, the plaintiffs are entitled to an order commanding the defendants immediately to provide to the plaintiffs copies of all settlement agreements made with Asbestos Corporations that concern or involve the plaintiffs.

## ELEVENTH CLAIM FOR RELIEF
### (Forfeiture and Disgorgement of Attorneys' Fees)

211.   Plaintiffs repeat and reallege the allegations of paragraphs 1 through 210 of this first amended complaint.

212.   By reason of the breaches of fiduciary duty, misrepresentations, intentional failures to disclose material facts and acts of professional malpractice, the defendants are required to disgorge to plaintiffs all attorneys' fees received by defendants in connection with their representation of the plaintiffs.

## TWELFTH CLAIM FOR RELIEF
### (For an Accounting)

213.   Plaintiffs repeat and reallege the allegations of paragraphs 1 through 212 of this first amended complaint.

214.   There is a fiduciary relationship between the defendants and each of the plaintiffs.

215.   The defendants have never provided the plaintiffs with copies of the settlement agreements entered into with the Asbestos Corporations on plaintiffs' behalf or with an account of the amounts due to plaintiffs under those settlement agreements.

216.   The defendants have never provided the plaintiffs with an account of the expenses charged by the defendants to the plaintiffs.

217.   The defendants have never provided the plaintiffs with an account of funds belonging to the plaintiffs that the defendants are holding in "trust."

218.   Plaintiffs have no adequate remedy at law.

219.   By reason of the foregoing, the plaintiffs are entitled to copies of all settlement agreements and related documents pertaining to the settlements executed by defendants on plaintiffs' behalf and to an accounting by the defendants of the gross amounts received by the defendants in connection with the settlements alleged above (¶ ¶ 92 and 111 of this first amended complaint), the amounts remitted to the plaintiffs pursuant to those settlements, the amounts remitted by the defendants to third parties in connection with those settlements, the amounts charged by the defendants to the plaintiffs as expenses and the amounts held in "trust" by the defendants.

## THIRTEENTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty – False Acknowledgments)

220.   Plaintiffs repeat and reallege the allegations of paragraphs 1 through 219 of this first amended complaint.

221.   As a condition to the disbursement of settlement funds that properly belong to the plaintiffs, the defendants require each plaintiff to sign a form acknowledgment prepared by the defendants.

222.   The form acknowledgment recites, among other things, that the defendants have explained and the plaintiff fully understands, that the disbursement is part of an "aggregate settlement where my attorneys and other attorney are representing other claimants in this litigation and that we have been advised of the existence and nature of all other claims, along with the amount and participation of the others in this settlement."

223.   The form acknowledgement also recites, among other things, that the plaintiff "understand[s] that [sic] terms of the total settlement and authorize and approve same."

224.   The form acknowledgment also recites, among other things, that the plaintiff agrees that the settlement sums received are "reasonable and in the plaintiff's best interest."

225.   The form acknowledgment also recites, among other things, that the attorney's fees and expenses have been fully explained to the plaintiff, are reasonable, and have been approved by the plaintiff.

226.   The recitals alleged above are false.

227.   The defendants know that the recitals alleged above are false.

228.   By requiring the plaintiffs to sign false acknowledgments as a precondition to receiving settlement funds that belong to the plaintiffs, the defendants are breaching their fiduciary duty to the plaintiffs.

229.   The defendants' breach of fiduciary duty is continuing.

230.   The defendants' breach of fiduciary duty is causing irreparable injury to the plaintiffs, for which there is no adequate remedy at law.

231.   By reason of the foregoing, the plaintiffs are entitled to an order enjoining the defendants from compelling the plaintiffs to sign false acknowledgments as a precondition to the plaintiffs' receiving settlement funds that belong to the plaintiffs.

44

WHEREFORE, each of the plaintiffs demands judgment from the defendants, jointly and severally:

(i)     certifying an appropriate class, appointing Plaintiffs as class representatives and appointing Plaintiffs' counsel as lead class counsel;

(ii)     for compensatory damages in an amount to be proved at trial, but in excess of $150,000.

(iii)     for forfeiture and disgorgement of all legal fees charged by the defendants;

(iv)     for punitive damages in an amount to be determined at trial, but in excess of $500,000;

(v)     for an accounting of all money collected and spent by the defendants on behalf or for the benefit of the plaintiffs and the other members of the Class;

(vi)     for an order compelling the defendants immediately to provide the plaintiffs with copies of all settlement agreements executed with Asbestos Corporations regarding the asbestos personal injury claims of the plaintiffs or the other members of the Class;

(vii)   for an order compelling the defendants to cease and desist from

distributing to the plaintiffs and requiring them to sign false

acknowledgments as a precondition to the plaintiffs' receiving

settlement funds that belong to the plaintiffs;

(viii)   and such other relief as is just.


DATED:  Philadelphia, Pennsylvania
            March 1, 2002


Joseph D. Pope                    Carol A. Mager              Alisa N. Carr   Pa. I.D. No. 56658
Alan Levine                       Marjory P. Albee            Dornish & Scolieri
Kronish Lieb Weiner               Michael D. Homans           429 Forbes Avenue
    & Hellman LLP                 Mager & White, P.C.         Suite 110
1114 Avenue of the Americas       One Liberty Place           Pittsburgh, PA 15219
New York, New York  10036         1650 Market Street          (412) 765-2726
(212) 479-6000                    Philadelphia, PA  19103
                                  (215) 569-6924

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within document was sent to the

persons listed below by U.S. Mail, first class, postage prepaid, this 1ˢᵗ day of March, 2002:

Joseph B. Cox, Jr.
3105 Glenwood Avenue
Suite 302
Raleigh, NC 27612

Joseph B. Cox, Jr. P.C.
3105 Glenwood Avenue
Suite 302
Raleigh, NC 27612

Cox and Cox, L.L.P.
3105 Glenwood Avenue
Suite 302
Raleigh, NC 27612

Christopher Fitzgerald
Pritchard Law Firm, PLLC
934 Jackson Avenue
P.O. Drawer 1707
Pascagoula, MS 39567

Law Offices Of Robert A. Pritchard
934 Jackson Avenue
P.O. Drawer 1707
Pascagoula, MS 39567

Robert A. Pritchard
Pritchard Law Firm, PLLC
934 Jackson Avenue
P.O. Drawer 1707
Pascagoula, MS 39567

Pritchard Law Firm, PLLC
934 Jackson Avenue
P.O. Drawer 1707
Pascagoula, MS 39567

Robert G. Taylor, II
One Allen Center
3400 Penthouse
Houston, TX 77002

Robert G. Taylor, II P.C.
One Allen Center
3400 Penthouse
Houston, TX 77002

Taylor & Cire
One Allen Center
3400 Penthouse
Houston, TX 77002

Taylor, Davis & Ernster, P.C.
One Allen Center
3400 Penthouse
Houston, TX 77002

George E. Cire, Jr.
7803 Meadow Briar
Houston, TX 77063

Taylor & Ernster, P.C.
One Allen Center
3400 Penthouse
Houston, TX 77002

Cletus P. Ernster III
Taylor & Ernster, P.C.
One Allen Center
3400 Penthouse
Houston, TX 77002

Alisa N. Carr
Pa. I.D. No. 56658