JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV - 7 2002

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE:  ASBESTOS PRODUCTS | : | |
| | : | MDL DOCKET NO.  875 |
| LIABILITY LITIGATION (VI) | : | |

*HUBER, ET AL. VS. TAYLOR, ET AL.*, E.D. Pennsylvania
(W.D. Pennsylvania, C.A. No. 2:02-304)

### REPLY BRIEF IN SUPPORT OF MOTION
### OF DEFENDANTS JOSEPH B. COX, JR. AND JOSEPH B. COX, JR., LTD
### TO VACATE CONDITIONAL REMAND ORDER OF SEPTEMBER 13, 2002

**I.    INTRODUCTION**

As set forth in the Motion to Vacate of Defendants Joseph B. Cox, Jr. and Joseph B. Cox, Jr.,

LTD, moving defendants believe, and this Honorable Panel agreed, that this matter properly belongs

before The Honorable Charles R. Weiner as part of the MDL-875 asbestos litigation in the Eastern

District of Pennsylvania. Judge Weiner, however, by issuance of a Suggestion of Remand, has indicated

that he does not feel the case belongs before him.  In deference to Judge Weiner's position, moving

defendants believe there is an appropriate and reasonable alternative which will be in the interests of

justice and judicial efficiency.

As noted by Judge Weiner in the Suggestion of Remand and as further clarified by undersigned

counsel in the Motion to Vacate the Conditional Remand (and in Exhibit A thereto), the *Cosey* and

**OFFICIAL FILE COPY** IMAGED NOV  8 '02

*Rankin* cases (the asbestos personal injury actions underlying *Huber*) were initially filed in Mississippi state court. They were then removed to the United States District Court for the Southern District of Mississippi, and ultimately, transferred by this Honorable Panel to Judge Weiner for handling as part of MDL-875 (the Transfer Orders were attached to the Motion to Vacate as part of Exhibit A thereto). They remain a part of MDL-875 today.

As set forth in the *Huber* Amended Complaint and as more fully discussed below, plaintiffs in the instant case are contending that the CCR Settlement Agreement covering their claims against the members of the Center for Claims Resolution ("CCR") was unfair and discriminatory. They claim, for example, in Paragraph 97 of the Amended Complaint that they have been treated unfairly under the Agreement because the Agreement calls for settlement funds to distributed disproportionately based on each plaintiff's place of residence. They fail to point out, however, that the CCR Agreement itself states that it shall be governed by and construed in accordance with the laws of the State of Mississippi and that any action regarding the terms and conditions of the Agreement shall be brought in the Circuit Court for Jefferson County, Mississippi. (See Paragraph 16 of the CCR Agreement; the Agreement is attached hereto, without Appendices, and marked Exhibit A.)

Moving defendants contend that it makes no sense to remand *Huber* to the United States District Court for the Western District of Pennsylvania, a court which has no connection with or involvement in the matters underlying this claim and which, to the best of moving defendants' knowledge, has little or no current familiarity with asbestos litigation. In the alternative and in accordance with the language of the CCR Agreement, moving defendants believe that *Huber* should remain with Judge Weiner but that it should be placed in suspense while, at the same time, Judge Weiner remands the underlying *Cosey* and *Rankin* cases to the Southern District of Mississippi with the instruction or suggestion that they be remanded to the Circuit Court for Jefferson County, Mississippi for resolution of any dispute concerning the terms and conditions of the CCR Agreement. Once any such dispute is resolved by the Mississippi state court, Judge Weiner can determine what, if any, action should be taken with respect to *Huber*.

## II.   <u>ARGUMENT</u>

A reading of the ***Huber*** Amended Complaint demonstrates that the claims set forth in the Amended Complaint arise out of the underlying Mississippi asbestos personal injury actions (***Cosey*** and ***Rankin***) and the manner in which those actions were allegedly handled and settled by defendants. Paragraphs 86-88 of the Amended Complaint identify the Mississippi actions on which plaintiffs are basing their claims in ***Huber***.   Paragraphs 92-110 of the Amended Complaint set forth plaintiffs' allegations concerning the terms and conditions of the CCR Agreement and set forth plaintiffs' allegations regarding how they were allegedly unfairly treated pursuant to those terms and conditions. Paragraphs 76-78 of the Amended Complaint set forth other allegations made by plaintiff with respect to the terms and conditions of the Agreement.

In opposing the initial transfer of ***Huber*** to Judge Weiner, plaintiffs repeatedly stated that in ***Huber*** they were not claiming that any Agreement was inadequate nor were they attempting to revoke any Agreement.   They argued that ***Huber*** is restricted to resolving disputes over alleged mishandling and misallocation of settlement funds paid out pursuant to the Agreements and that ***Huber*** has a "limited focus".   (See page 7 of plaintiffs' Brief in Support of Motion to Vacate Conditional Transfer Order and pages 2-3 of plaintiffs' Reply Brief in Support of Motion to Vacate Conditional Transfer Order)   If plaintiffs are, in fact, not seeking to revoke any Agreement, but are merely seeking to address certain disputes under the Agreements, then such Agreements remain in effect and any dispute arising under such Agreements must be handled in accordance with the dispute provisions of the Agreements.   More specifically, since ***Huber*** raises in particular a dispute under the CCR Agreement, that dispute must be handled in accordance with the dispute resolution provision of the CCR Agreement.   As stated above, the CCR Agreement requires that disputes be resolved under Mississippi law and that any judicial action be brought in Mississippi state court, specifically, in the Circuit Court for Jefferson County, Mississippi.

As this Honorable Panel recognized in the Transfer Order of August 9, 2002, the plaintiffs' claims regarding the caliber of their legal representation cannot be addressed "without an examination of

the merits of their underlying personal injury claims, matters which place *Huber* within the purview of MDL-875." However, in deference to Judge Weiner's Suggestion of Remand, the next most appropriate venue for resolution of disputes regarding such matters as the structuring of settlements, settlement funding, and settlement administration is the Circuit Court for Jefferson County, Mississippi as called for in the CCR Agreement upon which plaintiffs are suing.

As the transferee Judge in the *Cosey* and *Rankin* cases, Judge Weiner has the authority under the Rules of Procedure of the Judicial Panel on Multidistrict Litigation to suggest remand of those cases to the Southern District of Mississippi. Once those cases have been remanded to the Southern District of Mississippi, the handling Judge in that district can remand the cases to the Circuit Court for Jefferson County, Mississippi for resolution of any dispute under the CCR Agreement. In the meantime, *Huber* can be held in suspense by Judge Weiner pending the completion of the dispute resolution process in state court. Alternatively, *Huber* can be held in suspense by Judge Weiner while plaintiffs, as required by the Agreement, file a state court action in Circuit Court for Jefferson County, Mississippi. Once the state court dispute resolution process is completed, it can be determined whether there is any reason to proceed with *Huber* in federal court.

There is simply no basis for having *Huber* proceed in the Western District of Pennsylvania. That District has no connection with the underlying *Cosey* and *Rankin* cases which give rise to *Huber*.

## III.  **CONCLUSION**

Maintaining this matter in suspense in the Eastern District of Pennsylvania as part of MDL-875 while the *Cosey* and *Rankin* settlement disputes are addressed in Mississippi state court will be in the interests of fairness and justice.

4

For the foregoing reasons, moving defendants respectfully request that the Conditional Remand Order be vacated and that the *Huber* case remain in the Eastern District of Pennsylvania as part of MDL-875 but be placed in suspense as outlined above.

Respectfully submitted,

**MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN**

BY: _____

THOMAS C. DELORENZO
PA I.D. #21184
1845 Walnut Street, Suite 1900
Philadelphia, PA 19103
(215) 575-2741

JAMES A. McGOVERN
PA I.D. #61361
US Steel Tower, Suite 2900
600 Grant Street
Pittsburgh, PA 15219
(412) 803-1180

Attorney for Defendants: Joseph B. Cox, Jr. and Joseph B. Cox, Jr., LTD

DATE: 11/6/02
\01_19\LIAB\TCD\LLPG\347689\TCD\13231\00110

5

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV - 7 2002

FILED
CLERK'S OFFICE

## CERTIFICATE OF SERVICE

I, Thomas C. DeLorenzo, Esquire, do hereby certify that a true and correct copy of the

Reply Brief of Defendant Joseph B. Cox, Jr. and Defendant Joseph B. Cox, Jr., LTD. (formerly

known as Joseph B. Cox, Jr., P.C.) in support of their Motion to Vacate Conditional Remand

Order of September 13, 2002 was served upon all parties by First-Class mail at the addresses set

forth below and on the accompanying Panel Service List on the date set forth below:

*FOR PLAINTIFFS:*

Carol A. Mager, Esquire
**MAGER & WHITE, P.C.**
One Liberty Place, 44th Floor
1650 Market Street
Philadelphia, PA  19103

Joseph D. Pope, Esquire
**Kronish, Lieb, Weiner & Hellman, LLP**
1114 Avenue of the Americas
47th Floor
New York, New York  10036

Alisa N. Carr, Esquire
**DORNISH & SCOLIERI, P.C.**
429 Forbes Avenue
Allegheny Building, Suite 1100
Pittsburgh, PA  15219-1604

*FOR DEFENDANTS:*

Howard M. Klein, Esquire
**Conrad, O'Brien, Gellman & Rohn, P.C.**
1515 Market Street, 16th Floor
Philadelphia, PA  19102

Anita B. Weinstein, Esquire
**COZEN & O'CONNOR**
1900 Market Street
Philadelphia, PA  19103-3508



Kevin L. Colosimo, Esquire
**HOUSTON HARBAUGH**
Two Chatham Center
Twelfth Floor
Pittsburgh, PA  15219-3463

*COURTESY COPY TO:*

The Honorable Charles R. Weiner
**United States District Court for the Eastern District of Pennsylvania**
U.S. Courthouse, Room 6613
601 Market Street
Philadelphia, PA  19106

The Honorable Donald J. Lee
**United States District Court for the Western District of Pennsylvania**
Room 916, U.S. Post Office & Courthouse
700 Grant Street
Pittsburgh, PA  15219

Clerk of the Court
**United States District Court for the Western District of Pennsylvania**
U.S. Post Office & Courthouse
700 Grant Street
Pittsburgh, PA  15219

**THOMAS C. DELORENZO**

Dated: 11/6/02

\01_19\LIAB\TCD\LLPG\347689\TCD\13231\00110

**PANEL SERVICE LIST**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

<u>Ronald L. Huber, et al. vs. J. Robert Davis, Jr., et al.</u>
W.D. Pennsylvania, C.A. No. 2:02-304

Joseph J. Bellew, Esquire
**Cozen & O'Connor**
The Atrium, 4th Floor
1900 Market Street
Philadelphia, PA  19103

Richard C. Binzley, Esquire
**Thompson Hine, LLP**
127 Public Square
3900 Key Center
Cleveland, OH  44114

Edward J. Cass, Esquire
**Gallagher, Sharp, Fulton & Norman**
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH  44115

Adam M. Chud, Esquire
**Shea & Gardner**
1800 Massachusetts Avenue, N.W.
Washington, DC  20036

David D. Damico, Esquire
**Burns, White & Hickton**
2400 Fifth Avenue Place
120 Fifth Avenue
Pittsburgh, PA  15222

Carol A. Mager, Esquire
**Mager & White, P.C.**
One Liberty Place, 44th Floor
1650 Market Street
Philadelphia, PA  19103

Ralph A. Finizio, Esquire
**Houston & Harbaugh**
Two Chatham Center, 12th Floor
Pittsburgh, PA  15219

Raymond P. Forceno, Esquire
**Forceno & Hannon**
Philadelphia Bourse Bldg., Suite 1000
Independence Mall East
Philadelphia, PA  19106

Ellen B. Furman, Esquire
**Goldfein & Joseph**
1600 Market Street
33rd Floor
Philadelphia, PA  19103

Susan M. Hansen, Esquire
**Brownson & Ballou**
4800 U.S. Bank Place
601 Second Avenue, South
Minneapolis, MN  55402

Robert A. Klein, Esquire
**Conrad, O'Brien, Gellman & Rohn**
1515 Market Street
16th Floor
Philadelphia, PA  19102

Reginald S. Kramer, Esquire
**Buckingham, Doolittle & Burroughs**
50 South Main Street
P.O. Box 1500
Akron, OH  44309

David C. Landin, Esquire
**Hunton & Williams**
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA  23219

Neil Selman, Esquire
**Selman, Breitman & Burgess**
11766 Wilshire Boulevard, 6th Floor
Los Angeles, CA  90025

Ronald L. Motley, Esquire
**Ness, Motley, Loadholt, Richardson & Poole**
28 Bridgeside Boulevard
P.O. Box 1792
Mt. Pleasant, SC  29465

William J. O'Brien, Esquire
**Conrad, O'Brien, Gellman & Rohn**
1515 Market Street, 16th Floor
Philadelphia, PA  19102

William J. O'Brien, Esquire
**Delany & O'Brien**
306 West Somerdale Road
Voorhees, NJ  08043

John J. Repcheck, Esquire
**Marks, O'Neill, O'Brien & Courtney**
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA  15219

John D. Roven, Esquire
**John Roven & Associates**
2190 North Loop West
Suite 410
Houston, TX  77018

Gene Locks, Esquire
**Greitzer & Locks**
1500 Walnut Street
Philadelphia, PA  19102

Samantha L. Southall, Esquire
**Kronish, Lieb, Weiner & Hellman**
1114 Avenue of the Americas
New York, NY  10036

Robert N. Spinelli, Esquire
**Kelley, Jasons, McGuire & Spinelli**
Centre Square West
15th Floor
Philadelphia, PA  19102

Robert E. Swickle, Esquire
**Jaques Admiralty Law Firm, P.C.**
1370 Penobscot Building
Detroit, MI  48226

Andrew J. Trevelise, Esquire
**Reed Smith LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103

James K. Weston, II, Esquire
**Tom Riley Law Firm**
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA  52406

Richard D. Schuster, Esquire
**Vorys, Sater, Seymour & Pease**
52 East Gay Street
P.O. Box 1008
Columbus, OH  43216

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV - 7 2002

CLERK'S OFFICE

Taylor-Mississippi Present Claimants

## CCR SETTLEMENT AGREEMENT

This Agreement is executed by and between the Center For Claims Resolution ("CCR"),

as sole agent for 18 of its 19 member companies,[1] and  Robert G. Taylor II, P.C. d/b/a as Taylor

& Cire, and Robert A. Pritchard, Esquire, and the Law Offices of Robert A. Pritchard

(individually and as agents for any successor, partner, or associate of said counsel and law firm),

as agents for and on behalf of the estimated  3,898 plaintiffs/ claimants presently represented by

them jointly or separately in the asbestos litigation in the state and federal courts of Mississippi,

including but not limited to all plaintiffs/claimants represented by such counsel in the <u>Cosey</u> and

<u>Rankin</u> actions ("Present Plaintiffs"); and  Joseph B. Cox, Jr., P.C. (individually and as agents for

any successor, partner, or associate of said  firm) (hereafter referred to collectively as "Plaintiff

Counsel").

1.      The terms of this Agreement shall remain confidential among the parties, their principals,

         and their counsel unless mutually agreed otherwise by the CCR and Plaintiff Counsel, or

         when necessary to comply with court orders or statutory requirements, or in an action to

         enforce the terms and conditions of this Agreement itself.  The CCR's potential funding

         obligation under this Settlement Agreement is currently estimated to be One-Hundred and

---

[1]The 18 member companies of the CCR that are parties to this Agreement are: Amchem
Products, Inc.; Armstrong World Industries, Inc.; Asbestos Claims Management Corp.;
CertainTeed Corp.; C.E. Thurston and Sons, Inc.; Dana Corp.; Ferodo America, Inc. (formerly
Nuturn Corp.); Flexitallic, Inc.; I.U. North America, Inc.; Maremont Corp.; National Service
Industries, Inc.; Nosroc Corp.; Pfizer Inc.; Quigley Company, Inc.; Shook & Fletcher Insulation
Co.; T&N plc; Union Carbide Corp.; and United States Gypsum Company.  While GAF Corp. is
a current member of CCR, with its consent and with Plaintiff Counsel's consent, GAF Corp. is
not a party to this Settlement Agreement and no provision of this Settlement Agreement applies
in any way to GAF Corp.



EXHIBIT

A

- 2 -

Forty Million, Six-Hundred and Fifty-Nine Thousand and Two-Hundred and Sixty-Three

Dollars ($140,659,263), to be funded on or about March 1, 2000; and the ultimate

payouts under this Settlement Agreement are currently estimated to total One-Hundred

and Sixty Million, Six Hundred and Seventy-Nine Thousand Dollars ($160,679,000).

These amounts are based upon estimates by Plaintiff Counsel of the number of Plaintiffs

who will qualify for payment under this Agreement, pursuant to the procedures set forth

in Appendix C to this Agreement, and of the ultimate payouts that will be generated by

the funding amounts to be funded by the CCR.  Upon completion of the results of a

qualification review, the ultimate payments to be funded and ultimately paid out under

the terms of this settlement will be recalculated, as specified in Paragraphs 2-3 below.

2.    Plaintiff Counsel estimate that the total number of Plaintiffs whose claims will qualify for

payment under this Agreement is 3,898.  This number includes all claims/cases that

Plaintiff Counsel have on file in the state and federal courts in Mississippi (Present

Plaintiffs), and may, as described below in this paragraph, include certain

plaintiffs/claimants that Plaintiff Counsel represent jointly or separately in the future who

are residents of, or who had substantial occupational asbestos exposure, in the states of

Mississippi, Indiana, Ohio, and/or Pennsylvania (Future Plaintiffs).  For all Present

Plaintiffs, Plaintiff Counsel shall provide to the CCR, on or before November 15, 1999 an

Appendix A (on disk or in hard copy) that identifies each claimant/party's name, the

injured party's name, social security number, current address, spouse's name, spouse's

social security number, the Court in which the case is filed, the docket number, the estate

representative's name and capacity (if applicable), the occupation, jobsite, and years for

- 3 -

each alleged occupational exposure to asbestos, the alleged disease, and the settlement amount allocated to each Plaintiff.

Plaintiff Counsel represent that the claims of these approximately 3,898 Plaintiffs subject to this Agreement are not time-barred or previously settled/released, and will meet the requirements for payment, as set forth in Appendix C to this Agreement.  Plaintiff Counsel and the CCR intend to allocate the estimated funding payments of $140,659,263, and the estimated payout amounts totaling up to $ $160,679,000 between and among these 3,898 Plaintiffs according to (1) the jurisdiction in which, as of the date this Agreement is executed, the Plaintiff is either a bona fide resident or had his or her predominant occupational exposure to asbestos-containing materials, and (2) in some cases, the action in which the Plaintiff's claim was filed, as follows:

| Jurisdiction | Average Per Claim Allocation | |
| --- | --- | --- |
| | CCR Funding Amount | Ultimate Payout Amount |
| 1. Estimated 2,645 Claimants Who Are Residents of or Who Had Substantial Occupational Exposure in Ohio/Indiana /Pennsylvania – and Whose Claims Are To Be Filed Or Are Filed in Mississippi in Cosey and/or Rankin | $12,256 | $14,000 |
| 2. Estimated 246 Claimants Listed on Exhibit Q Who Are Residents of or Who Had Substantial Exposure in Mississippi and Whose Claims Are Filed in Cosey and/or Rankin | $230,230 | $263,000 |
| 3. Estimated 202 Claimants Listed on Exhibit R Who Are Residents of or Who Had | | |

- 4 -

|   |   |   |   |
|---|---|---|---|
|   | Substantial Exposure in Texas and Whose Claims Are Filed in Mississippi in <u>Cosey</u> | $38,080 | $ 43,500 |
| 4. | Estimated 7 Claimants Not Included in Categories 1 and 2 Who Are Residents of or Who Had Substantial Exposure in Mississippi And Whose Claims are Filed in Mississippi in <u>Rankin</u> | $39,393 | $ 45,000 |
| 5. | Estimated 782 Claimants Not Included in Categories 1, 2, 3, and 4 Who Are Residents of or Who Had Substantial Exposure in Mississippi And Whose Claims Are Filed in Mississippi in <u>Cosey</u> | $55,150 | $ 63,000 |
| 6. | Estimated 16 Claimants Who Are Residents of or Who Had Substantial Occupational Exposure in Mississippi and Whose Claims Are to Be Filed or already Filed as Individual Claims in Mississippi Courts | $31,897 | $ 36,437.50 |

To the extent that the amount calculated by (1) multiplying the number of

Plaintiffs in each of these five categories that ultimately qualify for payment under this

Agreement by the average per claim funding allocation for that category; and (2)

summing that number for all six categories, exceeds One Hundred and Forty Million, Six

Hundred and Fifty-Nine Thousand and Two-Hundred and Sixty-Three Dollars

($140,659,263), the average per claim funding allocation in one or more categories shall

be reduced, in Plaintiff Counsel's sole discretion, so that the total amount funded by the

CCR for all Plaintiffs who qualify for payment under this Agreement in all six categories

shall not exceed One Hundred and Forty Million, Six Hundred and Fifty-Nine Thousand

and Two-Hundred and Sixty Three Dollars ($140,659,263). To the extent that the

amount calculated by (1) multiplying the number of Plaintiffs in each of these six

- 5 -

categories that ultimately qualify for payment under this Agreement by the average per claim funding allocation for that category; and (2) summing that number for all six categories, is less than One Hundred and Forty Million, Six Hundred and Fifty-Nine Thousand and Two-Hundred and Sixty Three Dollars ($140,659,263), Plaintiff Counsel may add certain plaintiffs/claimants that Plaintiff Counsel will represent jointly or separately in the future in the asbestos personal injury litigation in the state or federal courts of Mississippi and/or who are residents of and have had substantial occupational asbestos exposure in Indiana, Mississippi, Ohio, or Pennsylvania ("Future Plaintiffs") to the settlement; provided, however, that to be added to the settlement, the Future Plaintiff must, as of the date that this Agreement is executed, either be a bona fide resident of Mississippi, Indiana, Ohio, or Pennsylvania or have had substantial occupational asbestos exposure in the state; provided further that each such Future Plaintiff who is added to the settlement shall receive the same per claim allocation set forth above for Present Plaintiffs in categories 1 or 6, as appropriate (or, in the case only of any such Future Plaintiff who, as of the date that this Agreement is executed, is either a bona fide resident of, or have had his or her substantial occupational exposure to asbestos in Jefferson, Holmes, Copiah, or Claiborne Counties, the same per claim funding allocation set forth above for Present Plaintiffs in Category 2); and provided further that no such Future Plaintiffs may be added to the settlement once the total funding amount allocated to all Present Plaintiffs and Future Plaintiffs that qualify for payment under this Agreement equals One Hundred and Forty Million, Six Hundred and Fifty-Nine Thousand and Two-Hundred and Sixty Three Dollars ($140,659,263).

- 6 -

3.    This settlement is based upon each Plaintiff's current alleged asbestos-related disease and is predicated on the assumption that each Plaintiff's claim is not time-barred or previously settled/released, and that each Plaintiff provides medical reports and product identification information sufficient to qualify for payment, as specified in Appendix C to this Agreement. However, if any Plaintiff's claim is time-barred or has been previously settled/released or is subject to settlement pursuant to any separate settlement agreement (including but not limited to any Plaintiff whose claim is subject to settlement pursuant to the CCR's Agreement with the law firm of Kelley & Ferraro LLP), or if any Plaintiff does not provide medical reports and product identification information sufficient to qualify for payment, or qualifies for payment but refuses to accept the settlement amount, that Plaintiff will be removed from the settlement, and the funding and payout amounts allocated to that Plaintiff shall either be allocated to a Future Plaintiff (as described in Paragraph 2 above) or the total funding and payout amounts shall be reduced by the amounts allocated to that Plaintiff as set forth in Paragraph 2.

4.    The claims of all Plaintiffs listed on Appendix A, and the claims of any Future Plaintiffs added to the settlement pursuant to Paragraph 2 above, shall be settled in accordance with the procedures set forth in Appendix C to this Agreement. Any Plaintiff who fails to qualify for payment for failure to meet the medical requirements set forth in Appendix B, or who fails to qualify for payment for failure to meet the occupational exposure requirements set forth in Appendix C, will join in a motion with the CCR defendant companies to dismiss that Plaintiff's claims without prejudice as to the CCR member companies, with each side to bear its own costs; and any Plaintiff who agrees his claims

- 7 -

are time-barred shall join in a motion with the CCR defendant companies to dismiss that

Plaintiff's claims with prejudice as to the CCR member companies, with each side to bear

its own costs.  In the event that any Plaintiff whose claim is dismissed without prejudice

should later re-file that claim against any then-member company of the CCR, and that re-

filed claim is not added to this settlement in accordance with Paragraph 2 above, the

claim shall be subject to the terms of the applicable separate settlement agreement for

Future Plaintiffs executed this day between Plaintiff Counsel and the CCR.

5.     It is estimated that the funding assets will make payments to Plaintiff Counsel in

approximately the following amounts on or about the following dates, subject to change

as specified in Paragraphs 2-3 above, subject to the qualification review:

| Date | $ Amount |
|------|----------|
| November 30, 2001 | $ $80,339,500 |
| June 1, 2002 | $ $80,339,500 |

The CCR shall fund the estimated payments set forth above by funding, on or about

March 1, 2000, one or more funding assets with Metropolitan Life Insurance Company

("MLIC"), or its designee, or some other acceptable third-party, provided that Plaintiff

Counsel meet all deadlines for submissions imposed by the Agreement.  The parties shall

attempt to resolve the terms and conditions of such funding assets with  MLIC or other

third party promptly, consistent with the terms and conditions of this Agreement.  In the

event of any delay by Plaintiff Counsel in meeting any deadline for a submission under

the Agreement, the November 30, 2001 and/or the June 1, 2002 payment dates, and the

CCR's obligations to fund one or more funding assets on or about March 1, 2000, in

- 8 -

order to fund those estimated payment amounts on those payment dates), shall be delayed by the same number of days that the submission by Plaintiff Counsel is delinquent, and/or shall be subject to other appropriate adjustment. The CCR shall be responsible for collecting from each CCR member company identified in Footnote 1 and/or its insurer(s) each such company's share of such funding payments, as well as other costs required to administer this Agreement. It is understood that the CCR intends to retain such amounts in a "qualified settlement fund" (as such term is defined in 26 CFR § 468B-1(c)), and Plaintiff Counsel will cooperate with the CCR in obtaining appropriate court order(s) approving the establishment of such fund as required under such regulations.

6. Any Plaintiffs identified on Appendix A who have companion or related actions filed outside of Mississippi and/or who are already a part of a settlement with the CCR member companies, whether releases are signed or not, shall not be included under the terms and conditions of this Agreement. In particular, any plaintiffs/claimants whose names have been submitted to the CCR in connection with CCR's settlement with the law firm of Kelley & Ferrarro LLP shall remain subject to that settlement and are not part of this settlement. Plaintiffs settling their claims under this Agreement are settling and accepting payment for all claims made in each Plaintiff's complaint, including but not limited to, loss of support, services, consortium, companionship, society and other valuable services rendered by a spouse, family member, or close companion, however such claims are denominated, including without limitation, wrongful death or survival actions. Spouses, heirs, representatives, or other individuals with such claims shall be bound by this Agreement, but such spouses, heirs, representatives and other individuals

- 9 -

shall only be required to execute all necessary settlement documentation to effectuate such terms if they are a party to such claims. The parties do not intend to discharge any claim which the spouse or children of an exposed Plaintiff may have in the future for any asbestos-related illness which they may personally develop.

7.   Plaintiff Counsel will offer the 18 CCR member companies that are parties to this Agreement the opportunity to settle all asbestos-related personal-injury or wrongful death claims brought by or asserted against such companies on any theory of liability by any Plaintiffs/Claimants who are not listed on Appendix A or added to the settlement under Paragraph 2 above, who are as of the date of this Agreement bona fide residents of Mississippi or whose alleged exposure to asbestos-containing products occurred substantially in Mississippi, and who retain Plaintiff Counsel to represent them either jointly or separately in the future (hereafter "Future Plaintiffs"), subject to the terms of the separate agreement for such Mississippi Future Plaintiffs executed this day. Plaintiff Counsel represent that they will (subject to the exercise of their independent professional judgment as to the circumstances of individual clients) strongly recommend such settlements to such Future Plaintiffs. In the event that Plaintiff Counsel fail to strongly recommend such settlements to such Future Plaintiffs, the CCR may, in its sole discretion, give notice to Plaintiff Counsel of its election to terminate this Agreement. Unless Plaintiff Counsel notifies the CCR in writing within thirty (30) days of CCR's election that Plaintiff Counsel disputes such termination, all obligations of and payments due by the CCR under this Agreement shall cease immediately, and all funding assets and/or settlement funds that have not, at that time, been paid to Plaintiff Counsel from the

- 10 -

funding amounts paid by the CCR under this Agreement shall be returned to the CCR.

Any dispute as to whether Plaintiff Counsel does or has, in fact, strongly recommended

such settlements to such Future Plaintiffs should be referred to mediation pursuant to

Paragraph 12 of this Agreement, and if mediation fails to resolve the dispute, the dispute

shall be submitted for resolution to the Circuit Court of Jefferson County, Mississippi;

and further that in the event of any such dispute, the CCR shall notify MLIC of such

dispute and upon receipt of such notice all settlement funds that have not, at that time,

been paid to Plaintiff Counsel or thereafter become due from the funding asset(s) funded

under this Agreement shall be held by MLIC in an interest-bearing account at the highest

available interest-rate until instructed as to how to distribute the funds by order of the

Circuit Court of Jefferson County, Mississippi, or by written agreement of the affected

parties.

8.   Plaintiff Counsel have carefully reviewed the provisions of this Agreement and have

concluded that it is in the best interest of their clients, is in compliance with Mississippi

law and rules governing the professional and ethical responsibility of counsel, and

represents the fairest and most efficient method of compensating their clients for the

injuries received.  Accordingly, Plaintiff Counsel hereby represent that they shall (subject

to the exercise of their independent professional judgment as to the circumstances of

individual clients) strongly recommend this agreement to the Plaintiffs listed on

Appendix A.  Plaintiff Counsel shall provide written notice to the CCR, on or before

November 30, 1999, of the identity of any Plaintiffs listed on Appendix A who decline to

participate in the settlement (hereinafter "Nonparticipating Plaintiffs").  If seventy-four

- 11 -

(74) or more of the Plaintiffs listed on Appendix A become Nonparticipating Plaintiffs, the CCR may, in its sole discretion, elect to terminate this Agreement, in which case all obligations of and payments due by the CCR under the Agreement shall cease immediately and all settlement funds that have not, at that time, been paid to Plaintiff Counsel from the funding assets funded by the CCR under this Agreement shall be refunded to the CCR. The CCR shall provide Plaintiffs Counsel with written notice of a decision to so terminate the Agreement within ten (10) calendar days of their receipt from Plaintiff Counsel of the notice of the total number and identities of any Nonparticipating Plaintiffs.

9.    Unless the Agreement is lawfully terminated, Plaintiff Counsel, and any partner or associate or successor of Plaintiff Counsel, may not represent at trial, or have any financial interest in the claim of any Nonparticipating Plaintiff against any of the companies listed in footnote 1, unless the Nonparticipating Plaintiff's case is first submitted to non-binding mediation before a mutually-agreeable mediator. If mediation does not resolve the case, either party may request within ten (10) days after such mediation a settlement conference before the Court or a Special Master appointed by the Court to which the case is assigned, which conference shall be scheduled at the convenience of the Court or Special Master. If these efforts to resolve the case are unsuccessful, the parties agree not to seek or prosecute any trial of such case until a date at least twelve (12) months after the settlement conference, unless otherwise ordered by the Court having jurisdiction over the case. In the event that Plaintiff Counsel requests a trial date against one or more CCR member companies before the end of the twelve (12)

- 12 -

month period specified above, the CCR may, in its sole discretion, elect to terminate the Agreement, in which case all obligations of and payments due by the CCR under the Agreement shall cease immediately, and all settlement funds that have not, at that time, been paid to Plaintiff Counsel from the funding assets funded by the CCR under this Agreement shall be refunded to the CCR. The CCR shall provide Plaintiff Counsel with written notice of a decision to so terminate the Agreement within ten (10) calendar days of commencement of such a trial.

10.   Payments to Plaintiff Counsel by the CCR under Paragraph 5 of this Settlement Agreement shall be funded by the CCR member companies in accordance with the terms of the Producer Agreement Concerning Center For Claims Resolution (as amended, effective February 1, 1994) and each CCR member company shall be liable under this Settlement Agreement only for its individual share of such funding payments as determined under that Producer Agreement. In the event that the CCR fails to make any of the funding payments pursuant to Paragraph 5 because any one of the CCR member companies fails to make timely payment of its individual share of such payment when such payment has become due in accordance with all of the terms of this Settlement Agreement (a "Default"), Plaintiff Counsel shall have, with respect to any and all Plaintiffs whose claims have not been paid by the CCR under Paragraph 5 and Appendix C as of the date of the Default, the option of either (a) continuing the settlement as to the non-Defaulting CCR member companies, and bringing suit to enforce the Defaulting CCR member company's obligations under this Settlement Agreement in the Circuit Court of Jefferson County, Mississippi, and/or pursuing their claims for asbestos-related

- 13 -

personal injury against the Defaulting CCR member company in the tort system; or (b)

declaring this Settlement Agreement null and void as against all CCR member companies

and pursuing each and every cause of action they may have against any such member

company.  Plaintiff Counsel shall exercise either of these options by providing written

notice to the CCR of their decision to do so within ninety (90) calendar days of notice to

that Counsel of any CCR member company's failure to make timely payment of its share

of any payment due under Paragraph 5.  Plaintiffs that opt to bring suit in the tort system

under either option (a) or option (b) above shall have one year from the date of the written

notice of termination to file their claims in the tort system, unless the applicable law

provides for a longer period of time.

11.    The parties agree that, in the event a court or other tribunal determines that any provision

of this Agreement is invalid, unethical, or unenforceable, Plaintiff Counsel and the CCR

each shall have the option to declare this Agreement null and void in its entirety, in which

case all obligations of and payments due by the CCR under the Agreement shall cease

immediately, and all settlement funds that have not, at that time, been paid to Plaintiff

Counsel from the funding assets funded under this Agreement shall be refunded to the

CCR, or, alternatively, to allow the Agreement to continue, in which case the provision

that has been held to be invalid, unethical, or unenforceable shall be deemed to have been

modified automatically to conform to the requirements for validity and enforceability as

determined by such court or tribunal, or, if that provision cannot be so modified, shall be

deemed deleted from this Agreement as though it had never been included; provided

- 14 -

further that, in either case, the remaining provisions of this Agreement that are unrelated to such modifications and deletions shall remain in full force and effect.

12.	It is agreed that the parties will make good faith efforts to resolve any disputes that may arise while carrying out the terms and conditions of this Agreement.  If the parties are unable to resolve a dispute, any party may request that the issue be referred to a mutually agreeable mediator for mediation.  If the parties are unable to mutually agree upon a mediator, then any party may request that each party shall select a representative within ten calendar days of any such request, and the two representatives shall select a mediator who can be available to conduct such mediation reasonably promptly.  If either party fails to select a representative within ten days of such a request then the single representative shall select a mediator.  The costs of the mediation (including the mediator's fees and expenses) shall be split equally between the parties (with each party to bear its own attorneys' fees and other expenses), unless determined otherwise by the mediator.

13.	In the event that any additional company or companies become members of the CCR, such company or companies shall not participate under the terms of this Agreement without the express written agreement of Plaintiff Counsel or their designated or legal representatives.

14.	This Agreement constitutes the entire understanding between the parties concerning the subject matter contained herein.  No modification of any provision of this Agreement shall be valid unless set forth in writing and signed by all parties.

15.	This Agreement will remain in effect unless and until terminated by written agreement of all parties.

- 15 -

16. This Agreement shall be governed by, and construed in accordance with, the laws of the

State of Mississippi. The parties agree to waive venue and personal jurisdiction

objections to any judicial action brought in the Circuit Court for Jefferson County,

Mississippi, to enforce the terms and conditions of this Agreement.

AGREED TO AND ACCEPTED THIS ___23___ day of ___November___, 1999.

Robert G. Taylor II, P.C. d/b/a
Taylor & Cire

By: _____
    Robert G. Taylor II, Esquire, President

_____
Michael F. Rooney
President and Chief Executive Officer
Center For Claims Resolution
(As Agent for the 18 CCR Member
Companies Identified in Footnote 1)

Law Offices of Robert A. Pritchard

By: _____
    Robert A. Pritchard, Esquire

Joseph B. Cox, Jr., P.C.

By: _____
    Joseph B. Cox, Jr., Esquire

P:\ERG\CCR\CCRSettlement\Pritchard-Taylor\Pritchard, Taylor-present MS claimants CCR Settlement Agreement.doc