MDL 875

FILED
United States District Court
Denver, Colorado

NOV 5  2002

JAMES R. MANSPEAKER, CLERK
By
                    Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. **02-K-1272**

**KENNETH FREIBERG and MARY SUE FREIBERG,**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV 8 - 2002

FILED
CLERK'S OFFICE

        Plaintiffs,

v.

**SWINERTON & WALBERG PROPERTY SERVICES, INC., et al.,**

        Defendants.

---

Civil Action No. **02-K-1289**

**VINCENT SODERQUIST,**

        Plaintiff,

v.

**SWINERTON & WALBERG PROPERTY SERVICES, INC., et al.,**

        Defendants.

---

Civil Action No. **02-K-1290**

**SANDRA VANHOOSER, et al.**

        Plaintiffs,

v.

**SWINERTON & WALBERG PROPERTY SERVICES, INC., et al.,**

        Defendants.

---

MDL- 875
## RECOMMENDED ACTION

VACATE CTC's (3 ACTIONS) + HSC (4 ACTIONS)

Approved/Date: _MK_  11/8

OFFICIAL FILE COPY

IMAGED NOV 12 '02

RECEIVED
CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
2002 NOV -7 PM 1:41

Civil Action No. **02-K-1291**

**RUDOLPH DIONIGI, et al.,**

        Plaintiffs,

v.

**JOHN CRANE, et al.,**

        Defendants.

---

Civil Action No. **02-K-1767**

**ROGER STINGLEY and PATRICIA STINGLEY, as husband and wife,**

        Plaintiff.

v.

**THE FLINTKOTE CORPORATION, et al.**

---

## ORDER REMANDING CASES TO STATE COURT

---

KANE, J.

      Defendant contractors and former manufacturers and distributors of asbestos-containing products invoke 28 U.S.C. § 1442(a)(1) to remove five state law personal injury/asbestosis actions from state to federal court. Defendants join in the Removal Notice of Co-Defendant Swinerton Walberg Property Services, Corp. ("Swinerton"), one of the contractors whose construction activities at the U.S. government's Rocky Flats nuclear weapons production facility form the basis of Plaintiffs' exposure claims. Swinerton asserts it was "acting under" a federal agency when it engaged in the acts

giving rise to Plaintiffs' claims, such that it is entitled to removal as a "federal officer" under § 1442(a)(1). Plaintiffs move for remand, arguing the acts giving rise to their claims were construction activities wholly independent of Rocky Flats's federal purpose and not entitled to special federal officer protection. I grant the Motions for Remand.

## I. **INTRODUCTION.**

These five state law asbestos exposure personal injury actions are before me on two Notices of Removal and resulting Motions for Remand. The first, filed by Defendant Camfil Farr in 02-1272, is premised on federal question jurisdiction under 28 U.S.C. § 1441, asserting the alleged injuries of Plaintiffs Kenneth and Mary Freiberg occurred on a federal enclave such that federal question jurisdiction exists irrespective of the lack of a federal claim. Notice of Removal, No. 02-K-1272 (filed 7/2/02).

Co-Defendant Swinerton followed the Camfil Farr's Notice with a Notice of its own, filed in 02-K-1272 as well as in three similar actions then-pending in state court in Boulder County, Colorado. *See* Notices of Removal, Nos. 02-K-1272, 02-K-1289, 02-K-1290, 02-K-1291 (all filed 7/5/02).[1] Swinerton's Notices asserted removal jurisdiction under 28 U.S.C. § 1442(a)(1), which provides a separate and independent basis for removal of state law actions by federal officers or their agents for acts taken "under color" of that office. Because federal officer removal under § 1442(a)(1) is an exception

---

[1]    A fifth Rocky Flats asbestosis action, was filed in Boulder county on July 22, 2001 and was immediately removed by Swinerton to this court under § 1442(a)(1). *See Stingely v. Flintkote, et al.*, No. 02-K-1767.

3

to the general rule requiring all defendants to join in a removal, *Akin v. General Elec.*, 156 F.3d 1030, 1034 (10th Cir. 1998), consent, which quickly became an issue with respect to Camfil Farr's Notice, is not an issue with respect to the Swinerton Notices.

With the exception of 02-K-1767, which was filed in July 2002, the individual state court actions had been pending in state court for some time before they were removed. The Freibergs' action (02-K-1272), for example, had been pending since September 2001, nearly one year before Camfil and Swinerton filed their Removal Notices.

The Plaintiffs in all five civil actions immediately moved to remand the cases to state court, arguing federal officer removal is inappropriate in this case because the nexus between Swinerton's government contractor status and the harm alleged is too remote to satisfy the jurisdictional prerequisites for removal under § 1442(a)(1). Given that these actions have since been conditionally transferred by the Judicial Panel on Multidistrict Litigation to the United States District Court for the Eastern District of Pennsylvania, Plaintiffs argued further that removal may also, as a practical matter, deprive them of any meaningful relief.[2] Mr. Freiberg's prognosis, like those of the other Plaintiffs, is poor.

The Motions for Remand in 02-1272, 02-1289, 02-1290, 02-1291, and 02-1767 are

---

[2] The actions are five of 89 asbestos-related cases, mostly from New Mexico and Utah, conditionally transferred to federal court in Pennsylvania. *See* In re Asbestos Products Liability Litigation, MDL-875. The plaintiffs in all of the actions oppose the transfer of their respective cases, and their oppositions are set to be considered without oral argument in late November. In the interim, the Panel has instructed me to proceed in these cases and, in particular, address any pending motions to remand.

4

set for oral argument on November 14, 2002. I vacate the oral argument and grant the Motions for Remand on the briefs.

## II. DISCUSSION.

Both Camfil Farr and Co-Defendant ABB Lummus Global Inc. ("Lummus") have joined in Swinerton's Notices of Removal such that federal officer jurisdiction forms the basis for removal in all five actions.[3] Accordingly, my analysis of the validity of removal in these cases is limited to § 1442(a)(1).

### A. 28 U.S.C. § 1442(a)(1) - Legal Standard and History.

In addition to providing for the removal of civil actions from state to federal court upon a showing of federal jurisdiction generally, Congress has also granted a right of removal to federal officers who face civil or criminal actions in state court for their official acts. 28 U.S.C. § 1442(a)(1).[4] *applied in City of Aurora v. Erwin,* 706 F.2d 295,

---

[3] In response to the Freibergs' Motion to Remand for lack of unanimous consent to removal under 28 U.S.C. § 1441, Camfil Farr noted federal officer jurisdiction constituted an alternative ground for removal and "adopt[ed] and incorporat[ed] Defendant Swinerton's Notice of Removal" such that unanimous consent was not necessary. Camfil Farr, Inc.'s Response to Pls.' Mot. Remand, No. 02-K-1272 (filed 8/8/02). Lummus filed its joinder in Swinerton's Notice on October 9, 2001. It is not clear whether Camfil Farr abandoned its position that the case is also removable based on federal enclave jurisdiction under § 1441, but it has not pursued briefing on the matter and has not submitted evidence that all Defendants consent to removal on that basis. Accordingly, federal officer removal under § 1442(a)(1) forms the common ground for removal in all five pending actions and my analysis is limited accordingly.

[4] Specifically, the relevant provisions of § 1442 state:

(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

5

296 (10th Cir. 1983). *See generally* 14C C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure: Jurisdiction 3d* § 3727 (3d ed. 1998). The right of removal may extend to private individuals or entities "acting under" a federal officer, *Ryan v. Dow Chemical Co.*, 781 F. Supp. 934 (E.D.N.Y. 1992), as long as the private actor asserts a colorable federal defense to the state claims, *id.* at 939 (citing *Mesa v. California*, 489 U.S. 121, 129 (1989)), and demonstrates a sufficient causal nexus between what it has done under asserted official authority and the acts giving rise to the state claims. *Id.* (citing *Maryland v. Soper (No. 1)*, 270 U.S. 9, 33 (1926)). *See also Mesa* at 131-32 (discussing § 1442(a)(1) causal connection requirement and test articulated by Chief Justice Taft in *Soper No. 1*).

In *Mesa*, the Supreme Court recapitulated the "'long history'" of § 1442(a) from its origin in the Act of February 4, 1814 as a congressional response to New England's opposition to the War of 1812, through its expansion in 1833 in response to efforts by southern states to nullify federal laws by state statute, and its further expansion in the Civil War era as the need to enforce unpopular revenue laws became acute. 489 U.S. at 125-26 (quoting *Willingham v. Morgan*, 395 U.S. 402, 405 (1969)). *See generally,* Wright & Miller, *supra,* at p. 134. Its purpose is to prevent state courts from interfering with the implementation of federal law, *see id.*, and does so by allowing those whose

_____

(1) Any officer of the United States or any agency thereof, or
person acting under him, for any act under color of such office . . . .

28 U.S.C. § 1442(a)(1).

federal activity may be inhibited by state court actions to remove to the presumably less biased forum of federal court. *Ryan*, 781 F. Supp. at 939. *See Erwin*, 706 F.2d at 296 ("'section 1442(a)(1) is intended to provide a forum free from local interests and prejudice in which the federal officer can assert immunity defenses based on official conduct'")(quoting *Arizona v. Manypenny*, 451 U.S. 232, 241-42 (1981)).  The provision confers subject matter jurisdiction over properly removed actions. *Ryan*. at 939.

Because it is premised on the protection of *federal* activity and an anachronistic mistrust of state courts' ability to protect and enforce *federal* interests and immunities from suit, private actors seeking to benefit from its provisions bear a special burden of establishing the official nature of their activities. *See Ryan*, 781 F. Supp. at 950-51 (applying facts in Agent Orange personal injury action in light of purposes of § 1442 and holding federal officer removal inappropriate where application of federal defense, to extent applicable to private contractor in that case, not "fraught with difficulty or subject to considerable manipulation" and state court action had only speculative negative impact on federal interests).

### B.  Swinerton's Notice of Removal.

Under *Mesa* and *Soper (No. 1)*, proper removal of an action under § 1442(a)(1) requires satisfaction of two elements:  the raising of a colorable federal defense and the demonstration of a causal connection between what the defendant has done under federal authority and plaintiff's state court claims.  In order to meet the causation element, a

7

defendant must prove that the acts being sued upon were undertaken by a federal officer or person "'acting under'" him and that those acts were "'under color of the relevant federal office.'" *Id.* (citations omitted).

To invoke "federal officer" status for purposes of § 1442(a)(1) removal in this case, Swinerton must (1) show it was "acting under" the direction of a federal officer when performing its construction activities at Rocky Flats during the time periods relevant to plaintiffs' asbestos exposure claims; (2) raise a colorable federal defense to plaintiffs' claims; and (3) establish that there is a causal connection between the activities carried out under federal authority and the state court actions. *Ryan,* 781 F. Supp. at 939; *accord Ruffin v. ARMCO Steel Corp.,* 959 F. Supp. 770, 775 (S.D. Tex. 1997); *Good v. Armstrong World Indus.,* 914 F. Supp. 1125, 1127 (E.D. Pa. 1996); *Pack v. AC & S, Inc.,* 838 F. Supp. 1099, 1101 (D. Md. 1993); *Fung v. Abex Corp.,* 816 F. Supp. 569, 571-72 (N.D. Cal. 1992))(asbestos exposure cases). As in any removal action in this circuit, the party seeking to remove an action to federal court bears the burden of establishing federal jurisdiction over the state court suit. *Laughlin v. Kmart Corp.,* 50 F.3d 871, 873 (10th Cir. 1995)(removal action under § 1441). If the right to remove is doubtful, the case should be remanded. *Ryan,* 781 F. Supp. at 939 (remanding Agent Orange exposure cases improvidently removed under § 1442(a)(1)(citations omitted)), *applied in Good,* 914 F. Supp. at 1131 (citing *Ryan* and remanding asbestos case where federal nexus to defedants' actions inadequately established).

8

Swinerton prefaces its attempt to meet its burden in these cases with the assertion that these cases are "procedurally quite young" such that it has "limited information" regarding Plaintiffs, including the job sites where their alleged exposure allegedly occurred, and limited information, if any, relevant to its own construction activities at Rocky Flats. Swinerton's Resp. to Pls.' Mot. Remand, No. 02-K-1272 at 4-5. "In light of the nature of Rocky Flats, a high security weapons production facility," Swinerton states, "the federal government has retained *all* documents generated during its construction and design," *id.*, including, it is presumed, documents that evidence the federal government's "direct control" over Swinerton's activities. *Id.*

These documents are in the possession of the government. From the statements in its Response brief, it is clear Swinerton hopes to avoid the "extremely time consuming" process of having the government review and turn over the documents in its possession generated during the construction of Rocky Flats. It asks that the court find the necessary jurisdictional prerequisites in Mr. Prout's affidavit because detailed federal supervision and control over the construction of Rocky Flats "is reasonable and to be expected" given the nature of the facility itself. *Id.*, 5-6.

Alternatively, Swinerton offers the affidavit of William Prout, a former senior engineer and deputy project manager for both Swinerton and the Atomic Energy Commission at Rocky Flats, to establish both the "acting under" and "causal connection" elements of federal officer jurisdiction. Specifically, the Prout affidavit is offered as

evidence that Swinerton was "acting under" the Department of Energy and federal

officers in performing its construction activities at Rocky Flats, and, presumably, that its

use of the asbestos to which Plaintiffs were allegedly exposed was the result of those

federally directed construction activities. Mr. Prout's short, three-paragraph affidavit

speaks to these issues in only the vaguest of terms, and is insufficient under the case law I

have reviewed to establish either aspect of the *Soper* causation requirement.

*Assertion of a Colorable Federal Defense.*

Before turning to the causation issues, I pause first to address the requirement that

Swinerton assert a colorable federal defense. For purposes of the instant Motions, I

assume, without specifically finding, that Swinerton asserts a colorable government

contractor defense under *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). I do

so under an exceedingly liberal application of *Mesa* and the standards necessary to

establish the defense under *Boyle*. I note *Boyle* provides government contractors are

shielded from liability in state court for defects in products or equipment supplied to the

United States only when "(1) the United States approved reasonably precise

specifications; (2) the equipment conformed to those specifications; and (3) the supplier

warned the United States about the dangers in the use of the equipment that were known

to the supplier but not to the United States." 487 U.S. at 512. That Swinerton or Lummus

could establish these conditions, or that the defense would even apply,[5] is not at all

---

[5]       I pause to note that the characterization of the military or government contractor
defense as an immunity from suit, or even a true "defense," has been called into question, as has

apparent in these cases.

*Whether Swinerton was "Acting Under" a Federal Officer.*

In light of § 1442(a)(1)'s purpose, private entities seeking to remove an otherwise

unremovable state court action pursuant to its provisions must establish that they were, in

fact, "acting under" federal authority when they engaged in the conduct giving rise to

plaintiff's claims. Swinerton's assertion to the contrary notwithstanding,[6] the burden is

---

the defense's basis as a ground for conferring federal jurisdiction over state court actions under § 1442(a)(1) generally. *See Ryan*, 781 F. Supp. at 944 ("[T]here is considerable question as to whether the military contractor defense amounts to a defense of official immunity, or even to a defense at all."). "This is because 'official immunity comes at a great cost,' and thus 'absolute immunity for federal officials is justified only when the contributions of immunity to effective government in particular contexts outweigh the perhaps recurring harm to individual citizens.'" *Id.* (citing *Boyle*, 108 S. Ct. at 2523-24 (Brennan, J., dissenting) and quoting *Westfall v. Erwin*, 484 U.S. 292, 108 S. Ct. 580, 583 (1988))(other citations omitted)). *See* Comment, "The Boyle Festers: How Lax Causal Nexus Requirement and the 'Federal Contractor Defense' are Leading to a Disruption of Comity under the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1)," 46 Emory L. J. 1629 (Fall 1997)(suggesting § 1442(a)(1) "should be available only where the contractor has acted under the direct control of a federal officer in the action for which he is being sued and where the contractor asserts a federal defense other the 'federal contractor defense' in *Boyle*"). I find these analyses persuasive and question whether the government contractor "defense" asserted by Swinerton here is the type of federal interest or immunity for which § 1442(a)(1) was intended to provide an exclusively federal forum.

[6]    Swinerton relies on *Winters v. Diamond Shamrock*, 149 F.3d 384, 397-98 (5th Cir. 1998) to argue the "acting under" requirement is to be afforded liberal reading so that its general assertion that Rocky Flats was a sensitive facility that by its nature was under strict federal supervision is enough to establish this jurisdictional prerequisite. I find *Winters* poorly reasoned and unpersuasive in this regard, premised, as it is, on an expansive reading of the Supreme Court's decision in *Willingham v. Morgan*, 395 U.S. 402 (1969), a prisoner civil rights action in which two federal prison inmates brought suit against the prison warden and chief medical officer in state court for acts taken in the course of their official duties. That case, in which the protection of a federal forum for individual officials' qualified immunity defenses was at issue, provides a weak analogy for the cases before me here. A better analysis is found in the more analogous *Ryan* decision, where the district court considered *Willingham*'s admonition that § 1442(a)(1) not be given a "narrow, grudging interpretation" in the government contractor context and determined Supreme Court jurisprudence since *Willingham* then has signaled a "a

substantive and is not satisfied by incantations of government contractor status alone. *See Good*, 914 F. Supp. at 1129.

The established rule is that removal by a person "acting under" a federal officer must be predicated on a showing that the acts forming the basis of the state suit were performed pursuant to an officer's "direct orders or comprehensive and detailed regulations." *Ryan*, 781 F. Supp. at 947. It is not enough to prove only that "the relevant acts occurred under the general auspices of a federal office or officer" or that "a corporation participates in a regulated industry." *Id.* The official must have direct and detailed control over the defendant. *Good*, 914 F. Supp. at 1128.

Direct and detailed control is established by showing strong government involvement and the possibility that a defendant could be sued in state court as a result of the federal control. *Pack*, 838 F. Supp. at 1103, *Ryan*, 781 F. Supp. at 948-49 (setting forth detailed analysis of cases). "The issue is not simply whether the defendant acted under [federal] officials but whether they are [sic] in danger of being sued in state court based on action taken pursuant to federal direction.'" *Id.* (quoting *Gulati v. Zuckerman*, 723 F. Supp. 353, 358 (E.D. Pa. 1989)).

_____

narrowing of § 1442." 781 F. Supp. at 943 (citing *Mesa, Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987), and *Int'l Primate Protection League v. Administrators of Tulane Educational Fund*, 500 U.S. 72 (1991)).

Given the purpose of § 1442 and its basis in a mistrust of states and state courts to protect federal interests, I agree it should be read expansively only when the immunity of individual federal officials, and not government contractors, is at issue. *See* Comment, *supra* n. 5.

Applying these standards here, I note first that Swinerton does not purport to have acted directly under the Department of Energy or any of its predecessors at Rocky Flats, but rather, that it "acted under" operating and engineering contractors (like Rockwell and C.F. Braun) who were "acting under" the DOE. *See* Swinerton's Resp. to Pls.' Mot. Remand, p. 8. Swinerton cites *Reed v. Fina Oil*, 995 F. Supp. 705, 710 (E.D. Tex. 1998) to argue this layering of federal control is "not fatal" to removal in these cases because those operating and engineering contractors were themselves "persons" acting under a federal officer within the meaning of § 1442(a)(1). *Ibid. Reed* involved the government's World War II era "takeover" of the rubber industry, in which it chartered the Rubber Reserve Company to construct and oversee the creation of plants such as the defendant's to supplement the nation's rubber supply for wartime use. *Reed*, 995 F. Supp. at 710. The court in *Reed* rejected plaintiff's contention that defendant was not "acting at the direction of an officer of the United States," identifying several letters and contracts evidencing the government's "control" over defendant's plant during the time period relevant to plaintiff's claims. *Id.* at 711. *Reed* is distinguishable from the cases before me, and the fact Swinerton was a contractor acting under other contractors who were under the direction and control of the DOE renders its "acting under" theory more tenuous than those of contractors in other asbestos cases. Nevertheless, I will consider the assertion that the DOE exercised direct and detailed control over the activities of Swinerton and/or the other contractor Defendants at Rocky Flats without reference to the

additional layer of contracting authority between them.

Swinerton concedes that, "at this very early stage of this litigation, [it] cannot produce the detailed plans and material lists that evidence the federal government's direct control of Rocky Flats' construction." Resp. at 5. Instead, it offers the affidavit of Mr. Prout and argues that the sensitive nature of the activities at Rocky Flats renders it "understandable" that contractors were under "strict supervision" and "detailed control." Resp at 9-10. Additional evidence in the form of the contract between the government and contractor and Co-Defendant Lummus was filed in No. 02-K-1767 late in the briefing period.

Swinerton asserts it "had no latitude or authority to choose its building materials," and cites Prout's affidavit as support for that assertion. The Prout affidavit is short both in substance and on specifics, and does not support the suggestion that the government somehow directed the specific manner and use of the asbestos-containing products at issue in these cases. To illustrate, I set Mr. Prout's testimony regarding the federal direction and control of Swinerton's construction activities at Rocky Flats out in its entirety below.

After identifying himself in paragraph 1 of his affidavit, Mr. Prout states:

> 2.  Swinerton constructed and renovated buildings at Rocky Flats. In each instance, Swinerton worked pursuant to contracts with the Department of Energy or its predecessors, the Atomic Energy Commission and the Energy Research and Development Administration.

14

> 3.    Swinerton had no role in developing the design,
>        specifications, and material lists necessary to build the nuclear
>        weapons assembly plants and other buildings at Rocky Flats.
>        Those tasks were performed at the direction of the federal
>        government by the Rocky Flats' engineering firm and the
>        operating contractor. Swinerton built what it contracted to
>        build, and used materials that were specified in detail by the
>        engineering and operating contractors.

Prout Affid. (filed in Nos. 02-1272, 02-1289, 02-1290, and 02-1291 on July 10, 2002, as

an attachment to Swinerton's July 5, 2002 Notices of Removal in those cases). In

response to Swinerton's assertions, Plaintiffs produced the affidavit of former Swinerton

employee and Rocky Flats project manager Dave Richards, who states the government's

specifications for building and construction materials at Rocky Flats were based on the

industry standard, were expansive and no different from specifications at any other

commercial job during the relevant time period. Affid. of Dave Richards, Ex A, Pls.'

Reply, No. 02-K-1272, *see also* Affid. of Rudolph Dionigi, Ex. A, Pls.' Mot. Remand,

No. 02-K-1767.

Numerous courts have considered the adequacy of averments such as Mr. Prout's

in establishing the "acting under" element of federal officer removal. An affidavit

considerably more detailed than Mr. Prout's was rejected by the court in *Good* as failing

to establish the "acting under" requirement for a contractor that designed and constructed

asbestos-producing turbine generators for the Navy. In *Good*, the affiant testified as to

the Navy's exercise of supervision and control over contract documents, the design and

construction of the specific turbines at issue, and personal oversight of the contractor's

15

work by Naval officers and civilian employees. *See Good*, 914 F. Supp. at 1129. The court held the affidavit inadequate to support removal under § 1442(a)(1), finding that while it "lends support for a colorable claim of the government contract defense," it "d[id] not show that Westinghouse acted under the immediate supervision of the Secretary of the Navy or any other officer, as required by the statute." *Id.*

In *Ruffin*, evidence that construction of the defendant steel mill's facility was supervised and monitored by the government's Defense Plant Corporation was insufficient by itself to warrant removal where the defendant failed to demonstrate DPC exercised the same degree of control with respect to safety precautions that allegedly should have been taken to warn employees of hazards of asbestos exposure.

In *Fung*, another asbestos case, the "acting under" requirement was deemed satisfied by documentary evidence and witness testimony that the government not only contracted General Dynamics to build submarines, but monitored its performance at all times and required GD to construct and repair the vessels in accordance with the applicable and approved specifications incorporated into the contracts. *Fung*, 816 F. Supp. at 572-73. "In addition, [the evidence showed] all contract supplies were subject to inspection, test, and approval by the government," and the government performed "extensive dock and sea trials on the submarines prior to commission to ensure complete conformity with design specifications." *Id.* This, the court concluded, established that the government, "under the direction of the Secretary of Navy, exercised 'direct and

16

detailed' control over the construction of the vessels" for purposes of § 1442(a)(1). *Id.*

Finally, in *Pack,* evidence showing the government specified the particular type of asbestos cloth the contractor was to use when insulating valves and flanges on turbines, monitored the contractor's performance, and reviewed and approved testing results was also sufficient to satisfy the "acting under" requirement for federal officer removal.

Mr. Prout's affidavit simply does not provide the substance or detail sufficient to draw a similar conclusion. Nevertheless, in light of the contracts supplied by Lummus and for purposes of the instant Motions for Remand only, I will assume Swinerton and Lummus were "acting under" a general contractor who was "acting under" the DOE.

*The causal nexus between Plaintiffs' claims*
*and actions taken under federal authority.*

Even if Swinerton could establish it was "acting under" the direct and detailed control of the Department of Energy at Rocky Flats, it also must prove "a federal nexus between the actions for which [it is] being sued and the directives of federal officers." *Ryan,* 781 F. Supp. at 945; *see* 28 U.S.C. § 1442(a)(1)(removal is available only to one "acting under" federal officer for acts "under color of such office"). Unless an officer of the United States (or one acting under him) can justify what he did by reason of some official connection between the acts complained of and his official duties, the purpose of the statute to protect federal interests and immunities is not implicated and the proceeding is not removable. *See Brenner v. Kelly,* 201 F. Supp. 871 (D. Minn. 1962).

The nexus requirement is established by showing that the state action "has arisen

17

out of the acts done by [the defendant] under color of federal authority and in

enforcement of federal law." *Mesa*, 489 U.S. at 131-32 (quoting *Soper (No. 1)*, 270 U.S.

at 33. "Critical under the statute is 'to what extent defendants acted under federal

direction' at the time they were engaged in the conduct now being sued upon." *Ryan* at

946 (quoting *Gurda Farms, Inc. v. Monroe County Legal Assistance Corp.*, 358 F. Supp.

841, 844 (S.D.N.Y. 1973)). To sustain this burden, the defendant must also "by direct

averment exclude the possibility that [the state action] was based on acts or conduct of his

not justified by his federal duty." *Mesa*, 489 U.S. at 132. Neither Swinerton, nor any of

the other contractor Defendants to these actions, has met these standards.

In their briefs and submissions in support of removal, Defendants fail to apprehend

the essence of the "under color" causal connection requirement. They are being sued for

unnecessarily and negligently causing their employees and other workers to be exposed to

asbestos dust on the job and for failing to warn these employees and workers of the

associated dangers. What they must establish for purpose of the § 1442(a)(1) is that the

government authority under which they worked required them to act as they did. For

purposes of Plaintiffs' failure to warn claims, for example, they must establish the DOE's

direction and control of their activities directly interfered with their ability to fulfill their

state law obligation to warn employees of safety hazards. *Ruffin*, 959 F. Supp. at 776.

*See Ryan*, 781 F. Supp. at 950 (holding removal improper under § 1442(a)(1) because

defendants were sued for producing a product comprised of components developed

18

without government control such that defendants' acts in supplying the product to the government did not establish the requisite nexus between plaintiffs' exposure to the components and federal directives). Nothing in Prout's affidavit or the government contracts produced by Lummus establishes the requisite nexus between their construction and safety practices at Rocky Flats and government direction or control. Accordingly, removal jurisdiction is not established.

### III. CONCLUSION.

As Swinerton concedes, it filed its removal papers first and then began searching for documents to support the jurisdictional prerequisites of § 1442(a)(1). Def.'s Resp., 02-K-1272 at 4. Federal courts are courts of limited jurisdiction. Removal is improper unless and until federal jurisdiction can be established. The mere fact that Plaintiffs' alleged exposure to asbestos occurred during the construction of a federal nuclear weapons facility is insufficient, by itself, to establish the requisite federal and causal connections necessary to confer jurisdiction on this court over Plaintiffs' state law claims for negligence, conspiracy and failure to warn.

Where the right to removal under 1442(a)(1) is doubtful, the case should be remanded. *Ryan*, 781 F. Supp. at 939; *Good*, 914 F. Supp. at 1131. Swinerton's statement that it cannot now or in the near future expect to produce the detailed or specific material lists or construction contracts that could evidence either the federal government's direct control over its activities at Rocky Flats or the nexus between that

19

control and Plaintiffs' exposure is fatal to removal and renders any hearing set for the

purposes of determining those jurisdictional issues futile.  I find a lack both of the

viability of Swinerton's government contractor defense under *Boyle* and the sufficiency

of such a defense as a basis for removal under § 1442(a)(1).  I find further that neither

Swinerton nor Lummus has established the "acting under" requirement for removal under

that statute.

Even if these elements were presumed, however, I conclude neither Swinerton nor

any of the other Defendants who joined in Swinerton's Notice of Removal has

demonstrated the requisite causal connection between the government control under

which it purports to have acted and Plaintiffs' alleged injuries.  Under these

circumstances, there is no basis on which to find the existence of federal jurisdiction

under 28 U.S.C. § 1442(a)(1), and no basis for removing these cases from state to federal

court.

Accordingly, IT IS ORDERED that Civil Action Nos. 02-K-1272, 02-K-1289, 02-

K-1290, 02-K-1291, and 02-K-1767 are REMANDED to the District Court for  Boulder

County, Colorado.

Dated this ⁴ day of November, 2002, at Denver, Colorado.

JOHN L. KANE

U.S. SENIOR DISTRICT COURT JUDGE

20

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JAMES R. MANSPEAKER, CLERK
U. S. Courthouse
1929 Stout Street, Rm. C-145
Denver, CO 80294
(303) 844-3433

Date:       **November 4, 2002**

Case No.    **02-K-1272, 02-K-1289, 02-K-1290, 02-K-1291 and 02-K-1767**

The undersigned hereby certifies that on the above date a true and correct copy of the preceding **ORDER** signed by Judge John L. Kane on **November 4, 2002** was mailed to the following:

J. Conrad Metcalf, Esq.
Trine & Metcalf, PC
1435 Arapahoe Avenue
Boulder, CO 80302-6390

Daniel M. Fowler, Esq.
Fowler, Schimberg & Flanagan, PC
1640 Grant Street #300
Denver, CO 80203

Steven M. Kaufmann, Esq.
Morrison & Foerster
**D.C. Box 22**

Shauna L. Hilgers, Esq.
6508 Poppy Street
P.O. Box 1254
Arvada, CO 80001

James M. Miletich, Esq.
McConnell, Siderius, Fleischner,
Houghtaling & Craigmile, LLC
2401 15th Street #300
Denver, CO 80202

Gary M. Clexton, LLP
Miller & Steiert, P.C.
1901 West Littleton Boulevard
Littleton, CO 80120-2058

Mary Price Birk, Esq.
Baker & Hostetler
**D.C. Box 17**

Christopher K. Miller, Esq.
Kennedy & Christopher, PC
1050 17th Street #2500
Denver, CO 80265-1197

David M. Setter, Esq.
Socha, Perczak & Anderson, PC
1775 Sherman Street #1925
Denver, CO 80203

Hon. Morris W. Sandstead
Boulder Justice Center
P.O. Box 4249
Boulder, CO 80306

Certificate of Mailing - Page Two
Civil Action Nos.
**02-K-1272, 02-K-1289, 02-K-1290,**
**02-K-1291 and 02-K-1767**


Clerk of the Boulder County District
Court
Boulder Justice Center
P.O. Box 4249
Boulder, CO 80306

November ___,2002                          JAMES R. MANSPEAKER, CLERK

                                           _____
                                           Deputy Clerk