JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**MDL 875 1**

APR 2 1 2003

FILED
CLERK'S OFFICE

PLEADING NO. 3876

BEFORE THE JUDICIAL PANEL IN MULTIDISTRICT LITIGATION
MDL DOCKET NO. 875

IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

RE:  Agner, *et al*. v. Fluor Daniel, Inc, *et al*.
     NCW 3:98 CV 220-T

     Agner, *et al*. v. Fluor Daniel, Inc., *et al*.
     NCW 3:98 CV 138-T

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
2003 APR 21
RECEIVED
CLERK'S OFFICE

**MOTION TO VACATE CONDITIONAL REMAND ORDER BY DEFENDANTS FLUOR DANIEL, INC., FLUOR DANIEL ENVIRONMENTAL SERVICES, INC., FLUOR DANIEL SERVICES CORPORATION, AND SOS INTERNATIONAL, INC.**

Defendants Fluor Daniel, Inc., Fluor Daniel Environmental Services, Inc., Fluor Daniel Services Corporation, and SOS International, Inc. (collectively "Defendants") respectfully move this Honorable Panel to vacate the Conditional Remand Order entered in the above-referenced matters on March 19, 2003, and submit the accompanying Brief and Exhibits in support thereof.

IMAGED APR 22 '03    **OFFICIAL FILE COPY**

Respectfully Submitted,


_James B Pressly Jr_

James B. Pressly, Jr.
Moffatt G. McDonald
Wm. David Conner
HAYNSWORTH SINKLER BOYD, P.A.
Post Office Box 2048
Greenville, SC 29602
(864) 240-3200


Attorneys for Defendants Fluor Daniel, Inc.,
Fluor Daniel Environmental Services, Inc.,
Fluor Daniel Services Corporation, and SOS
International, Inc.


Date:  _4/18/03_

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 2 1 2003

**SCHEDULE OF ACTIONS**

FILED
CLERK'S OFFICE

Agner, et al. v. Fluor Daniel, Inc., et al.
Pending in U.S. District Court, Western District of North Carolina (Charlotte)
Case No. 98-CV-220
Assigned to: Judge Lacy H. Thornburg

Plaintiffs:

Vonnie K. Agner and wife, June Agner
Nottie S. Aldrich and husband, Ben
Aldrich
Cecil Allman and wife, Frances W.
Allman
Joe E. Barbee and wife, Marilyn Barbee
Thomas R. Barnhardt and wife, Vickie
Barnhardt
Terry W. Beeker and wife, Susan M.
Beeker
Michael M. Bennett and wife, Libby M.
Bennett
John R. Boger and wife, Donna R. Boger
Terry J. Bond and wife, Nancy M. Bond
Merle D. Bonds and wife, Joyce L.
Bonds
Larry G. Bowles and wife, Ann D.
Bowles
Donald Burleson and wife, Betty H.
Burleson
Guy Byrd and wife, Carol Byrd
John F. Carriker and wife, Mary E.
Carriker
James Coleman
Charles T. Daniels and wife, Judith C.
Daniels
Carl C. Doby and wife, Patricia A. Doby
Leona H. Eagle
Danny L. Elkins and wife, Hattie L.
Elkins
Joe L. Ellis and wife, Annie R. Ellis
Martha Faust
Edward Fonseca, Sr. and wife, Annie M.
Fonseca
Gary W. Gibbons and wife, Roxanne S.
Gibbons
Irvin Gobble

Billy F. Goodlett and wife Joan Goodlett
Clyde R. Goodman and wife, Lynnie
Goodman
Elsie Guy and husband, Raymond Guy
Cornelius Hargrove and wife, Eller W.
Hargrove
Larry W. Henderickson and wife, Doris
L. Henderickson
John A. Hodge
Fred A. Holmes and wife, Sallie P.
Holmes
J. Frances Holt and wife, Almeader S.
Holt
Leonard T. Holt and wife, Shirley L.
Holt
Norman Holt and wife, Betty L. Holt
Arthur W. Hunt and wife, Sandra H.
Hunt
Alma Ivery
Bettye Jackson and husband, Calvin L.
Jackson
William C. Jennings and wife, Karen S.
Jennings
Bobby Johns and wife, Maxine C. Johns
John Kennedy
Ronald Kepley and wife, Annie B.
Kepley
Jimmie L. Kitchen
Donald Lindsay
Kenneth Measmer
Charlie Menster and wife, Vera M.
Menster
Charles McDaniel and wife, Lois
McDaniel
Clyde Miller and wife, Betty C. Miller
Bobby Morrison, Sr. and wife, Elma
Morrison

RECEIVED
CLERK'S OFFICE
2003 APR 21  A 10: 27
MULTIDISTRICT LITIGATION
PANEL ON

Charles Nall and wife, Charlotte Nall
William H. Parker
Shirley R. Paxton and wife, Patsy J. Paxton
Joe M. Powlas and wife, Patricia D. Powlas
Billy Reavis and wife, Iva G. Reavis
James A. Redmond and wife, Annie B. Redmond
Jerry L. Reid and wife, Wanda L. Reid
Gladys Roberts
Ada Robertson
Theloa Robinson
Peggy Rogers
Henry G. Saine and wife, Reba Saine
Glenn C. Seaford, Sr. and Katherine Seaford
Ernest T. Seamon and wife, Jean Seamon
Ernst Shepherd and wife, Patsy E. Shepherd
Coy Shive and wife, Patricia Shive
Donald Shoe, Sr. and wife, Donita M. Shoe
Howard Shoe and wife, Patsy Shoe
Kermit Shumaker and wife, Lynn W. Shumaker
Franklin D. Sloop and wife, Faye T. Sloop

Bill Smith and wife, Lois G. Smith
Franklin Smith, Jr. and wife, Mary H. Smith
John H. Smith and wife, Vernie Smith
Rufus Smith
Bobby E. Starnes and wife, Myrna J. Starnes
Steven C. Stirewalt and wife, Janet B. Stirewalt
William E. Tanner and wife, Mary S. Tanner
Ronald F. Thomas and wife, Sarah J. Thomas
Albert Tittle and wife, Mary M. Tittle
Clinton D. Turman and wife, Susan R. Turman
Jasper J. Waddell
James NMN Walker
William L. Wallace and wife, Donna Wallace
Danny Warren and wife, Lorine M. Warren
Charles O. Weldon and wife, Lelia Weldon
Miron L. Wilhelm and wife, Gayle K. Wilhelm
Walter E. Wise, Jr. and wife, Sandra Wise

Defendants:

Fluor Daniel, Inc., f/k/a Daniels Construction Co.
Fluor Daniel Environmental Services, Inc.
Fluor Daniel Services Corporation
SOS International, Inc.
Asbestos Removal, Inc.
W.F. Gray Insulation Services, Inc.

Agner, et al. v. Fluor Daniel, Inc., et al.
Pending in U.S. District Court, Western District of North Carolina (Charlotte)
Case No. 98-CV-138
Assigned to: Judge Lacy H. Thornburg

Plaintiffs:

Vonnie K. Agner and wife, June Agner
Nottie S. Aldrich and husband, Ben Aldrick
Cecil Allman and wife, Frances W. Allman
Joe E. Barbee and wife, Marilyn Barbee
Thomas R. Barnhardt and wife, Vickie Barnhardt
Terry W. Beeker and wife, Susan M. Beeker
Michael M. Bennett and wife, Libby M. Bennett
John R. Boger and wife, Donna R. Boger
Terry J. Bond and wife, Nancy M. Bond
Merle D. Bonds and wife, Joyce L. Bonds
Robert F. Bost and wife, Mildred S. Bost
Larry G. Bowles and wife, Ann D. Bowles
Donald Burleson and wife, Betty H. Burleson
Guy Byrd and wife, Carol Byrd
John F. Carriker and wife, Mary E. Carriker
John Chistenberry and wife, Mattie C. Chistenberry
James Coleman
Arnold Crook and wife, Aulena Crook
Charles T. Daniels and wife, Judith C. Daniels
Carl C. Doby and wife, Patricia A. Doby
Leona H. Eagle
Danny L. Elkins and wife, Hattie L. Elkins
Joe L. Ellis and wife, Annie R. Ellis
Martha Faust
Edward Fonseca, Sr. and wife, Annie M. Fonseca
Jaxon Freeze and wife, Peggy Freeze

Gary W. Gibbons and wife, Roxanne S. Gibbons
Irvin Gobble
Robert L. Godbey and wife, Sarah P. Godbey
Billy F. Goodlett and wife, Joan Goodlett
Clyde R. Goodman and wife, Lynnie Goodman
Morree G. Granford and husband, Willie Granford, Jr.
Elsie Guy and husband, Raymond Guy
Cornelius Hargrove and wife, Eller W. Hargrove
Larry W. Henderickson and wife, Doris L. Henderickson
John A. Hodge
David T. Hodges and wife, Vickie Hodges
Fred A. Holmes and wife, Sallie P. Holmes
J. Frances Holt and wife, Almeader S. Holt
Leonard T. Holt and wife, Shirley L. Holt
Norman Holt and wife, Betty L. Holt
Sallie Holt
William M. Honeycutt and wife, Nell W. Honeycutt
Arthur W. Hunt and wife, Sandra H. Hunt
Dorothy Hutchins
Alma Ivery
Bettye Jackson and husband, Calvin L. Jackson
William C. Jennings and wife, Karen S. Jennings
Bobby Johns and wife, Maxine C. Johns
John Kennedy

Ronald Kepley and wife, Annie B.
Kepley
Jimmie L. Kitchen
James T. Knight and Nancy M. Knight
Donald Lindsay
Thomas G. Logan and wife, Helen
Logan
Kenneth W. Measmer
Charlie Menster
Charles McDaniel and wife, Lois
McDaniel
Clyde Miller and wife, Betty C. Miller
Edward H. Monroe and wife, Lisa F.
Monroe
Bobby Morrison, Sr. and wife, Elma
Morrison
Charles Nall and wife, Charlotte Nall
Mildred S. Ostwalt and husband, Jesse
Ostwalt
Martha B. Parker and husband, Harvey
A. Parker, Jr.
William H. Parker and wife, Eloise H.
Parker
Shirley R. Paxton and wife, Patsy J.
Paxton
John Phelps and wife, Jettie M. Phelps
Home W. Potts and wife, Debbie C.
Potts
Joe M. Powlas and wife, Patricia D.
Powlas
Billy Reavis and wife, Iva G. Reavis
James A. Redmond and wife, Annie B.
Redmond
Jerry L. Reid and wife, Wanda L. Reid
John Ridenhour and wife, Peggy T.
Ridenhour
Gladys Roberts
Ada Robertson
Theloa Robinson
Peggy Rogers and husband, Fred W.
Rogers
Henry G. Saine and wife, Reba Saine
Maurice Saleeby and wife, Susan
Saleeby
Glenn C. Seaford, Sr. and Katherine
Seaford

Ernest T. Seamon and wife, Jean
Seamon
Ernst Shepherd and wife, Patsy E.
Shepherd
Coy Shive and wife, Patricia Shive
Donald Shoe, Sr. and wife, Donita M.
Shoe
Howard Shoe and wife, Patsy Shoe
Kermit Shumaker and wife, Lynn W.
Shumaker
James Sloan and wife, Willie M. Sloan
Franklin D. Sloop and wife, Faye T.
Sloop
Bill Smith and wife, Lois G. Smith
Franklin Smith, Jr. and wife, Mary H.
Smith
John H. Smith and wife, Vernie Smith
Rufus Smith
Bobby E. Starnes and wife, Myrna J.
Starnes
Steven C. Stirewalt and wife, Janet B.
Stirewalt
William E. Tanner and wife, Mary S.
Tanner
Ronald F. Thomas and wife, Sarah J.
Thomas
Albert Tittle and wife, Mary M. Tittle
Wilbert Torrence, Sr. and wife, Barbara
Torrence
Clinton D. Turman and wife, Susan R.
Turman
Jasper J. Waddell
James NMN Walker
William L. Wallace and wife, Donna
Wallace
Danny Warren and wife, Lorine M.
Warren
Charles O. Weldon and wife, Lelia
Weldon
Miron L. Wilhelm and wife, Gayle K.
Wilhelm
Leon Wilson, Jr.
Mary Winecoff and husband, Robert T.
Winecoff
Walter E. Wise, Jr. and wife, Sandra
Wise

Defendants:

Fluor Daniel, Inc., f/k/a Daniels Construction Co.
Fluor Daniel Environmental Services, Inc.
Fluor Daniel Services Corporation
SOS International, Inc.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 2 1 2003

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL IN MULTIDISTRICT LITIGATION
MDL DOCKET NO. 875
IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

RE:     Agner, *et al*. v. Fluor Daniel, Inc, *et al*.
        NCW 3:98 CV 220-T

        Agner, *et al*. v. Fluor Daniel, Inc., *et al*.
        NCW 3:98 CV 138-T

**BRIEF IN SUPPORT OF MOTION TO VACATE CONDITIONAL REMAND ORDER BY
DEFENDANTS FLUOR DANIEL, INC., FLUOR DANIEL ENVIRONMENTAL SERVICES, INC.,
FLUOR DANIEL SERVICES CORPORATION, AND SOS INTERNATIONAL, INC.**

Defendants Fluor Daniel, Inc., Fluor Daniel Environmental Services, Inc., Fluor

Daniel Services Corporation, and SOS International, Inc. (collectively "Defendants")

respectfully submit this Brief in Support of Motion to Vacate Conditional Remand Order

and would show the Panel as follows:

A.   BACKGROUND OF THE LITIGATION

1.     This matter is before the Panel regarding two separate but related cases referenced herein as <u>Agner</u> and <u>Bost</u>. The Wallace & Graham law firm represents the numerous plaintiffs in both cases.  The Defendants were sued in both cases.  The plaintiffs' cases all arise out of alleged asbestos exposure at the Fiber Industries plant in Salisbury, North Carolina during their employment there.  The Wallace & Graham law firm also prosecuted the workers' compensation claims for the plaintiffs that have pursued same.  The vast majority of the plaintiffs in both cases were initially screened for asbestos-related conditions by Dr. Frederick Dula.

2.     One of the two cases is a case in which Mr. Agner was originally the first-named plaintiff.  This case was filed on March 6, 1998, in the Mecklenburg County (NC) General Court of Justice.   No nondiverse defendants were named in that original Mecklenburg County case; therefore, the Defendants removed that case to federal court.

3.     In clear response to their dissatisfaction with the removal, on April 13, 1998, plaintiffs' counsel filed a "Corrected Complaint" in the federal court in which many of the plaintiffs originally in that action (including Mr. Agner) were dropped from that case.  That case remained in federal court and became denominated *Bost, et al. v. Fluor Daniel, Inc., et al,* C.A. No. 3:98 CV 138T ("<u>Bost</u>"), and is one of the two cases which are the subject of this motion.

4.     Then, on April 17, 1998 (four days later), the plaintiffs that had been dropped by plaintiffs' counsel from the first action once it had been removed filed a second action in the Mecklenburg County General Court of Justice, changing none of the allegations save to add two allegedly nondiverse co-defendants (W.F. Gray Insulation

Services, Inc. and Asbestos Removal, Inc., both of which are dissolved North Carolina corporations).

5.     The Defendants thereafter removed this second action -- denominated *Agner et al. v. Fluor Daniel, Inc., et al.* C.A. No. 3:98 CV 220-T ("<u>Agner</u>") – asserting that the two allegedly nondiverse co-defendants added by plaintiffs' counsel were sham defendants added solely for the purpose of attempting to defeat diversity in order to deprive the Defendants of their right to have this matter litigated in federal court.

6.     The Judicial Panel on Multidistrict Litigation affirmed the district court's determination that the federal court properly held jurisdiction over the <u>Agner</u> case in the MDL Transfer Order dated September 24, 1998.

## B.     LEGAL CONTENTIONS

7.     Remand of the <u>Agner</u> and <u>Bost</u> cases will serve against the purposes of 28 U.S.C.S. § 1407, namely the centralized management of pretrial proceedings under court supervision and the just and efficient conduct of this litigation, as more fully discussed below.

8.     Continued jurisdiction in the transferee court is necessary in the <u>Agner</u> and <u>Bost</u> cases because plaintiffs' counsel has not yet complied with the transferee court's clear directives to them regarding: (1) the discovery to be provided to the Defendants, and (2) the reasonable settlement offers to be provided to the Defendants, both as discussed more fully below.  Thus, the transferee judge's role under § 1407 has not yet been completed.

9.     Continued jurisdiction in the transferee court of the <u>Agner</u> and <u>Bost</u> cases is proper to further the purpose of 28 U.S.C.S. § 1407, *i.e.* to provide centralized

management under court supervision of pretrial proceedings of multidistrict litigation to assure just and efficient conduct of such actions.  In the Matter of New York City Municipal Securities Litigation, 572 F.2d 49 (2nd Cir. 1978).   Even though only two immediate actions are involved, they arise from the same factual situation, involve numerous plaintiffs who share numerous questions of fact, and are part of the morass of asbestos-related litigation which is the subject of MDL 875 and which requires and benefits from coordinated proceedings.  In re First National Bank, 451 F.Supp. 995 (JPMDL 1978).

10.     The Honorable Charles R. Weiner, the United States District Judge presiding over MDL 875, held a hearing on plaintiffs' motion to remand these cases on March 17, 1999, at which he directed plaintiffs' counsel as follows:

> COURT:      How soon could you get the medical information to
> [defense counsel]?
>
> COUNSEL:   Within a week.
>
> COURT:      Would you do that – send him the medical information and
> we will have a telephone conference, and if you can't settle
> it I will remand it.

A further more detailed discussion followed concerning the types of information plaintiffs' counsel was to provide to defense counsel, including medical information from treating physicians, family physicians, pathological information, and information regarding length and extent of exposure.  (Exhibit A).  Of equal importance, Judge Weiner directed plaintiffs' counsel to submit to Defendants' counsel a reasonable demand for each plaintiff.

11.     On March 24, 1999, plaintiffs' counsel sent Flour Daniel Defendants' counsel a letter and enclosures (Exhibit B) purporting to provide the information Judge Weiner had ordered.

12.     As indicated in the April 13, 1999 reply letter (Exhibit C) from Defendants' counsel to Mr. Bruce Lassman, Law Clerk to The Honorable Charles R. Weiner, the settlement demands ranged from $25,000 to $75,000 per plaintiff despite the fact that 84 of the 85 Agner claims were mass-screening (Dr. Dula) asbestosis cases and 52 had no disability or impairment.

13.     Also as indicated in the April 13, 1999 letter (Exhibit C), a significant amount of medical and other data had not been provided to defense counsel including: original X-rays, CT scans, the medical information particularized on "Attachment A" to the letter; information on other claims made by these plaintiffs (workers' compensation claims, third-party actions, and/or disability claims); information regarding settlements with viable or bankrupt defendants; medical records kept by the employer; information regarding the basis for claims against the Defendants, etc.

14.     At the court's urging and despite the plaintiffs' counsel's failure to provide information it had been ordered to provide, the Defendants made a settlement offer on the Agner case claims during a conference call with Bruce Lassman on May 7, 1999.  Defendants' counsel assured Mr. Lassman that this was a reasonable settlement offer given the medical conditions of the plaintiffs, the fact that all of them apparently had workers' compensation claims pending, and the fact that 58 of them also had third-party actions pending against 38 additional defendants in Ohio or elsewhere.

15.     During the May 7, 1999 call, Defendants' counsel again reiterated its request for x-rays, CT scans, pathology, and other information on these claims.

16.     On May 14, 1999, plaintiffs' counsel sent copies of "numerous independent medical examinations" of the <u>Agner</u> plaintiffs, which had been conducted as part of their plaintiffs' workers' compensation cases. (Exhibit D). In fact, there were reports on only 15 of the <u>Agner</u> plaintiffs, some of which failed to confirm an asbestos-related diagnosis and some of which confirmed the lack of any impairment due to asbestos exposure. An example is included herewith as Exhibit E, in which Dr. Proctor (a physician regularly utilized by plaintiffs' counsel for impairment ratings) classified Mr. Guy Byrd as having no impairment. Despite this information, the settlement demands on these cases was not modified by plaintiffs' counsel. In fact, the settlement demands originally made in 1999 (ranging from $25,000 to $75,000 per case) have never been modified by plaintiffs' counsel to date.

17.     Plaintiffs' counsel's May 14, 1999 letter (Exhibit D) contains nothing more than general assertions regarding the plaintiffs' alleged exposures and offers no substantive explanation regarding facts or legal theories under which any of the Defendants would be liable to any of the plaintiffs.

18.     A brief conference call was held with Bruce Lassman on July 14, 1999, during which Mr. Lassman was advised of the continued lack of information forthcoming from plaintiffs' counsel despite Judge Weiner's clear instructions regarding same.

19.     Six months later, instead of providing to Defendants' counsel the information ordered, Plaintiffs' counsel wrote to Judge Weiner on January 26, 2000 regarding the <u>Agner</u> and <u>Bost</u> cases, advising that "none of these cases have settled

despite the fact that all the information the court requested that Plaintiff's counsel send to the Defendant has been sent approximately eight months ago." Contrary to this assertion, most of the information requested by Defendants' counsel, such as additional medical information from treating and family physicians, pathological information, and information regarding length and extent of exposure.

20.      On May 9, 2000, plaintiffs' counsel sent Defendants' counsel "additional independent medical examinations and/or panel examinations with regard to certain plaintiffs" in the Agner and Bost cases. (Exhibit F). As was the case with the last batch of independent medical examinations, some of the reports indicate lack of asbestos-related condition. An example is included herewith as Exhibit G, in which the North Carolina Industrial Commission panel physician determined that Mr. Henry Saine did not suffer from asbestos-related lung disease. Once again, none of the settlement demands on these cases were modified by plaintiffs' counsel.

21.      On Friday, May 26, 2000, Judge Weiner held a hearing on a Show Cause Order why the Agner and Bost cases should not be immediately suggested for remand. No order issued from the hearing.

22.      No further information regarding any of the plaintiffs was thereafter provided by plaintiffs' counsel and the cases remained inactive until August 8, 2002, when plaintiffs' counsel wrote Bruce Lassman requesting "an immediate Order of Remand to the Superior Court, Mecklenburg County, North Carolina" and informing Mr. Lassman that "during the three years since Judge Weiner indicated that he would remand the cases, at least three of the Plaintiffs have died, two of them from cancer."

23.     In a conference call with Judge Weiner in August 2002, plaintiffs' counsel was again instructed to provide the Defendants with medical and exposure information and a reasonable demand for each case.

24.     Defendants' counsel wrote to plaintiffs' counsel on August 13, 2002 (Exhibit H), pointing out that none of the information requested in "Attachment A" of its April 13, 1999 letter had yet been provided.  Further, defense counsel again reiterated its request for medical information regarding certain plaintiffs, information regarding settlements with other defendants, and, importantly, medical information from the workers' compensation files in which the Wallace & Graham firm served as counsel.

25.     On August 19, 2002, Defendants' counsel again wrote to plaintiffs' counsel (Exhibit I) with Attachments detailing the previously requested information which had not yet been provided.  In particular: (1) Attachments 1 and 2 list 69 plaintiffs for which no additional medical information had been received; and (2) Attachments 3 and 4 detail the medical information which had been provided since 1999 and the supporting evidence still missing, including pathology, x-rays, etc.

26.     The August 19, 2002 letter from defense counsel (Exhibit I) also reminded plaintiffs' counsel that no demand reductions had been made from the original 1999 demands, which ranged from $25,000 to $75,000, despite the fact that there was no medical evidence in many cases to support any injury caused by asbestos exposure and despite the fact that in other cases the evidence clearly shows injury or death from causes other than asbestos-exposure.

27.     Subsequent letters were exchanged between counsel for the Defendants and plaintiffs' counsel, the gist of which is summarized in a September 3, 2002 letter

from defense counsel to plaintiffs' counsel (Exhibit J). Among other items, a significant amount of still-missing medical information was documented; the x-rays and CT scans were again requested; medical information from the workers' compensation cases was again asked for; and an offer to send a legal assistant from defense counsel's office to plaintiffs' counsel office to gather the additional information was made.

28.     The September 3, 2002 letter from defense counsel (Exhibit J) also includes Attachment 1, which details the settlement offers made by the Defendants on May 12, 1999 and August 20, 2002; and Attachment 2, which summarizes the results of the 32 Independent Medical Examinations received by defense counsel, most of which clearly document the lack of any asbestos-related disease or impairment.

29.     Since the September 3, 2002 letter to plaintiffs' counsel, no additional medical information has been provided to counsel for Defendants nor has plaintiffs' counsel provided any settlement demands other than the original demands which were made in 1999.

30.     Instead, plaintiffs' counsel again wrote to Bruce Lassman on January 3, 2003 (Exhibit K), claiming: (1) plaintiffs' counsel had sent all necessary medical information to defense counsel; (2) that the Defendants had made no attempt to value each individual plaintiff's case; (3) there had been no change from the original offers regardless of the circumstances of the individual; and (4) that some of the claimants had died of asbestosis and/or cancer during the pendency of these cases in MDL.

31.     In response to these assertions, Defendants would respectfully show that: (1) plaintiffs' counsel has still not sent all ordered, requested and necessary medical information to defense counsel, as fully discussed above; (2) that the Defendants have, in

fact, evaluated each individual plaintiff's case, as evidenced by Attachment 1 to the September 3, 2002 letter (Exhibit J); (3) that the Defendants' original 1999 settlement offers were, in fact, increased in 2002 on a case-by-case basis based on the limited information provided by plaintiffs' counsel, as evidenced by Attachment 1 to the September 3, 2002 letter (Exhibit J); and (4) that from the information provided to defense counsel, there appears to exist in this entire group of plaintiffs only one case of death from lung cancer potentially caused by asbestos exposure and no apparent deaths caused by asbestosis.

32.    In response to plaintiffs' counsel's January 3, 2003 letter, counsel for Defendants wrote plaintiffs' counsel on January 14, 2003 (Exhibit L), again recapping the heretofore unanswered requests, including requests for (1) medical information not yet provided; (2) up-to-date medical records authorizations that would allow defense counsel to obtain the medical records plaintiffs' counsel had not provided; (3) pathology in certain cases that had been previously requested; (4)  x-rays and CT scans that were supposedly in the possession of workers' compensation attorneys; and (5) information on the duplicate filings in Ohio and North Carolina by many of the plaintiffs.   The previously-made offer to send a legal assistant from defense counsel's office to gather the information was reiterated.

33.    An example of the type of medical information in the possession of plaintiffs' counsel which has been ordered produced, which has direct bearing on the settlement negotiations, but which has not been produced by plaintiffs' counsel is attached as Exhibit M.  Exhibit M is an October 2002 pathology report regarding lung tissue taken from plaintiff Alfred Redmon.  The report was part of the records from Mr.

Redmon's workers' compensation case. Mr. Redmon was represented by plaintiffs' counsel in his workers' compensation case. The report makes clear that Mr. Redmon's lung cancer is not asbestos-related. Despite the report, which plaintiffs' counsel has never produced, the demand for the Redmon case has never been decreased from the original 1999 amount of $75,000. Further, plaintiffs' counsel has never produced Mr. Redmon's pathological materials, despite repeated demands.

34.     Another example of the type of medical information in the possession of plaintiffs' counsel which has not been produced is attached as Exhibit N. Exhibit N is a December 2000 pathology report regarding lung tissue taken from plaintiff Dorothy Hutchins. The report was part of the records from Ms. Hutchins' workers' compensation case. Ms. Hutchins was represented by plaintiffs' counsel in her workers' compensation case. The report makes clear that Ms. Hutchins lung cancer is not asbestos-related. Further, plaintiffs' counsel has never produced Ms. Hutchins' pathological materials, despite repeated demands.

35.     To date, no settlement demands other than those made in 1999 in the range of $25,000 to $75,000 per plaintiff have ever been made by plaintiffs' counsel.

36.     As is clear from the above, continued jurisdiction in the transferee court is necessary in the Agner and Bost cases because plaintiffs' counsel has not yet complied with the transferee court's clear directives to plaintiffs' counsel regarding: (1) the discovery to be provided to the Defendants, and (2) the reasonable settlement offers to be provided to the Defendants. Thus, the transferee judge's role under § 1407 has not yet been completed and jurisdiction should remain in the transferee court.

Respectfully Submitted,


James B. Pressly, Jr.
Moffatt G. McDonald
Wm. David Conner
HAYNSWORTH SINKLER BOYD, P.A.
Post Office Box 2048
Greenville, SC 29602
(864) 240-3200

Attorneys for Defendants Fluor Daniel, Inc.,
Fluor Daniel Environmental Services, Inc.,
Fluor Daniel Services Corporation, and SOS
International, Inc.

Date:  4/18/03

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 2 1 2003

FILED
CLERK'S OFFICE

**SCHEDULE OF ACTIONS**

Agner, et al. v. Fluor Daniel, Inc., et al.
Pending in U.S. District Court, Western District of North Carolina (Charlotte)
Case No. 98-CV-220
Assigned to: Judge Lacy H. Thornburg

Plaintiffs:

Vonnie K. Agner and wife, June Agner
Nottie S. Aldrich and husband, Ben Aldrich
Cecil Allman and wife, Frances W. Allman
Joe E. Barbee and wife, Marilyn Barbee
Thomas R. Barnhardt and wife, Vickie Barnhardt
Terry W. Beeker and wife, Susan M. Beeker
Michael M. Bennett and wife, Libby M. Bennett
John R. Boger and wife, Donna R. Boger
Terry J. Bond and wife, Nancy M. Bond
Merle D. Bonds and wife, Joyce L. Bonds
Larry G. Bowles and wife, Ann D. Bowles
Donald Burleson and wife, Betty H. Burleson
Guy Byrd and wife, Carol Byrd
John F. Carriker and wife, Mary E. Carriker
James Coleman
Charles T. Daniels and wife, Judith C. Daniels
Carl C. Doby and wife, Patricia A. Doby
Leona H. Eagle
Danny L. Elkins and wife, Hattie L. Elkins
Joe L. Ellis and wife, Annie R. Ellis
Martha Faust
Edward Fonseca, Sr. and wife, Annie M. Fonseca
Gary W. Gibbons and wife, Roxanne S. Gibbons
Irvin Gobble

Billy F. Goodlett and wife Joan Goodlett
Clyde R. Goodman and wife, Lynnie Goodman
Elsie Guy and husband, Raymond Guy
Cornelius Hargrove and wife, Eller W. Hargrove
Larry W. Henderickson and wife, Doris L. Henderickson
John A. Hodge
Fred A. Holmes and wife, Sallie P. Holmes
J. Frances Holt and wife, Almeader S. Holt
Leonard T. Holt and wife, Shirley L. Holt
Norman Holt and wife, Betty L. Holt
Arthur W. Hunt and wife, Sandra H. Hunt
Alma Ivery
Bettye Jackson and husband, Calvin L. Jackson
William C. Jennings and wife, Karen S. Jennings
Bobby Johns and wife, Maxine C. Johns
John Kennedy
Ronald Kepley and wife, Annie B. Kepley
Jimmie L. Kitchen
Donald Lindsay
Kenneth Measmer
Charlie Menster and wife, Vera M. Menster
Charles McDaniel and wife, Lois McDaniel
Clyde Miller and wife, Betty C. Miller
Bobby Morrison, Sr. and wife, Elma Morrison

RECEIVED
CLERK'S OFFICE
2003 APR 21  A 10:

Charles Nall and wife, Charlotte Nall
William H. Parker
Shirley R. Paxton and wife, Patsy J.
Paxton
Joe M. Powlas and wife, Patricia D.
Powlas
Billy Reavis and wife, Iva G. Reavis
James A. Redmond and wife, Annie B.
Redmond
Jerry L. Reid and wife, Wanda L. Reid
Gladys Roberts
Ada Robertson
Theloa Robinson
Peggy Rogers
Henry G. Saine and wife, Reba Saine
Glenn C. Seaford, Sr. and Katherine
Seaford
Ernest T. Seamon and wife, Jean
Seamon
Ernst Shepherd and wife, Patsy E.
Shepherd
Coy Shive and wife, Patricia Shive
Donald Shoe, Sr. and wife, Donita M.
Shoe
Howard Shoe and wife, Patsy Shoe
Kermit Shumaker and wife, Lynn W.
Shumaker
Franklin D. Sloop and wife, Faye T.
Sloop

Bill Smith and wife, Lois G. Smith
Franklin Smith, Jr. and wife, Mary H.
Smith
John H. Smith and wife, Vernie Smith
Rufus Smith
Bobby E. Starnes and wife, Myrna J.
Starnes
Steven C. Stirewalt and wife, Janet B.
Stirewalt
William E. Tanner and wife, Mary S.
Tanner
Ronald F. Thomas and wife, Sarah J.
Thomas
Albert Tittle and wife, Mary M. Tittle
Clinton D. Turman and wife, Susan R.
Turman
Jasper J. Waddell
James NMN Walker
William L. Wallace and wife, Donna
Wallace
Danny Warren and wife, Lorine M.
Warren
Charles O. Weldon and wife, Lelia
Weldon
Miron L. Wilhelm and wife, Gayle K.
Wilhelm
Walter E. Wise, Jr. and wife, Sandra
Wise

Defendants:

Fluor Daniel, Inc., f/k/a Daniels Construction Co.
Fluor Daniel Environmental Services, Inc.
Fluor Daniel Services Corporation
SOS International, Inc.
Asbestos Removal, Inc.
W.F. Gray Insulation Services, Inc.

Agner, et al. v. Fluor Daniel, Inc., et al.
Pending in U.S. District Court, Western District of North Carolina (Charlotte)
Case No. 98-CV-138
Assigned to:  Judge Lacy H. Thornburg

Plaintiffs:

Vonnie K. Agner and wife, June Agner
Nottie S. Aldrich and husband, Ben
Aldrick
Cecil Allman and wife, Frances W.
Allman
Joe E. Barbee and wife, Marilyn Barbee
Thomas R. Barnhardt and wife, Vickie
Barnhardt
Terry W. Beeker and wife, Susan M.
Beeker
Michael M. Bennett and wife, Libby M.
Bennett
John R. Boger and wife, Donna R. Boger
Terry J. Bond and wife, Nancy M. Bond
Merle D. Bonds and wife, Joyce L.
Bonds
Robert F. Bost and wife, Mildred S. Bost
Larry G. Bowles and wife, Ann D.
Bowles
Donald Burleson and wife, Betty H.
Burleson
Guy Byrd and wife, Carol Byrd
John F. Carriker and wife, Mary E.
Carriker
John Chistenberry and wife, Mattie C.
Chistenberry
James Coleman
Arnold Crook and wife, Aulena Crook
Charles T. Daniels and wife, Judith C.
Daniels
Carl C. Doby and wife, Patricia A. Doby
Leona H. Eagle
Danny L. Elkins and wife, Hattie L.
Elkins
Joe L. Ellis and wife, Annie R. Ellis
Martha Faust
Edward Fonseca, Sr. and wife, Annie M.
Fonseca
Jaxon Freeze and wife, Peggy Freeze

Gary W. Gibbons and wife, Roxanne S.
Gibbons
Irvin Gobble
Robert L. Godbey and wife, Sarah P.
Godbey
Billy F. Goodlett and wife, Joan
Goodlett
Clyde R. Goodman and wife, Lynnie
Goodman
Morree G. Granford and husband, Willie
Granford, Jr.
Elsie Guy and husband, Raymond Guy
Cornelius Hargrove and wife, Eller W.
Hargrove
Larry W. Henderickson and wife, Doris
L. Henderickson
John A. Hodge
David T. Hodges and wife, Vickie
Hodges
Fred A. Holmes and wife, Sallie P.
Holmes
J. Frances Holt and wife, Almeader S.
Holt
Leonard T. Holt and wife, Shirley L.
Holt
Norman Holt and wife, Betty L. Holt
Sallie Holt
William M. Honeycutt and wife, Nell W.
Honeycutt
Arthur W. Hunt and wife, Sandra H.
Hunt
Dorothy Hutchins
Alma Ivery
Bettye Jackson and husband, Calvin L.
Jackson
William C. Jennings and wife, Karen S.
Jennings
Bobby Johns and wife, Maxine C. Johns
John Kennedy

Ronald Kepley and wife, Annie B. Kepley

Jimmie L. Kitchen

James T. Knight and Nancy M. Knight

Donald Lindsay

Thomas G. Logan and wife, Helen Logan

Kenneth W. Measmer

Charlie Menster

Charles McDaniel and wife, Lois McDaniel

Clyde Miller and wife, Betty C. Miller

Edward H. Monroe and wife, Lisa F. Monroe

Bobby Morrison, Sr. and wife, Elma Morrison

Charles Nall and wife, Charlotte Nall

Mildred S. Ostwalt and husband, Jesse Ostwalt

Martha B. Parker and husband, Harvey A. Parker, Jr.

William H. Parker and wife, Eloise H. Parker

Shirley R. Paxton and wife, Patsy J. Paxton

John Phelps and wife, Jettie M. Phelps

Home W. Potts and wife, Debbie C. Potts

Joe M. Powlas and wife, Patricia D. Powlas

Billy Reavis and wife, Iva G. Reavis

James A. Redmond and wife, Annie B. Redmond

Jerry L. Reid and wife, Wanda L. Reid

John Ridenhour and wife, Peggy T. Ridenhour

Gladys Roberts

Ada Robertson

Theloa Robinson

Peggy Rogers and husband, Fred W. Rogers

Henry G. Saine and wife, Reba Saine

Maurice Saleeby and wife, Susan Saleeby

Glenn C. Seaford, Sr. and Katherine Seaford

Ernest T. Seamon and wife, Jean Seamon

Ernst Shepherd and wife, Patsy E. Shepherd

Coy Shive and wife, Patricia Shive

Donald Shoe, Sr. and wife, Donita M. Shoe

Howard Shoe and wife, Patsy Shoe

Kermit Shumaker and wife, Lynn W. Shumaker

James Sloan and wife, Willie M. Sloan

Franklin D. Sloop and wife, Faye T. Sloop

Bill Smith and wife, Lois G. Smith

Franklin Smith, Jr. and wife, Mary H. Smith

John H. Smith and wife, Vernie Smith

Rufus Smith

Bobby E. Starnes and wife, Myrna J. Starnes

Steven C. Stirewalt and wife, Janet B. Stirewalt

William E. Tanner and wife, Mary S. Tanner

Ronald F. Thomas and wife, Sarah J. Thomas

Albert Tittle and wife, Mary M. Tittle

Wilbert Torrence, Sr. and wife, Barbara Torrence

Clinton D. Turman and wife, Susan R. Turman

Jasper J. Waddell

James NMN Walker

William L. Wallace and wife, Donna Wallace

Danny Warren and wife, Lorine M. Warren

Charles O. Weldon and wife, Lelia Weldon

Miron L. Wilhelm and wife, Gayle K. Wilhelm

Leon Wilson, Jr.

Mary Winecoff and husband, Robert T. Winecoff

Walter E. Wise, Jr. and wife, Sandra Wise

<u>Defendants</u>:

Fluor Daniel, Inc., f/k/a Daniels Construction Co.
Fluor Daniel Environmental Services, Inc.
Fluor Daniel Services Corporation
SOS International, Inc.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 2 1 2003

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL IN MULTIDISTRICT LITIGATION
MDL DOCKET NO. 875
IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

RE:    Agner, *et al.* v. Fluor Daniel, Inc, *et al.*
       NCW 3:98 CV 220-T

       Agner, *et al.* v. Fluor Daniel, Inc., *et al.*
       NCW 3:98 CV 138-T

## PROOF OF SERVICE

This is to certify that copies of the following pleading:

**MOTION TO VACATE CONDITIONAL REMAND ORDER AND
BRIEF IN SUPPORT OF MOTION TO VACATE CONDITIONAL REMAND ORDER BY
DEFENDANTS FLUOR DANIEL, INC., FLUOR DANIEL ENVIRONMENTAL SERVICES, INC.,
FLUOR DANIEL SERVICES CORPORATION, AND SOS INTERNATIONAL, INC.**

was served upon the following counsel by depositing same in the United States Mail,
postage prepaid, on April 18, 2003:

Mona L. Wallace
Wallace & Graham, P.A.
525 North Main Street
Salisbury, NC  28144

All counsel on Panel Service List attached.

_____
HAYNSWORTH SINKLER BOYD, P.A.

## PANEL SERVICE LIST (Excerpted from CRO)
## DOCKET NO. 875
## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*Vonnie K. Agner, et al. v. Fluor Daniel, Inc., et al.*, E.D. Pennsylvania
(W.D. North Carolina, C.A. No. 3:98-138)
*Vonnie K. Agner, et al. v. Fluor Daniel, Inc., et al.*, E.D. Pennsylvania
(W.D. North Carolina, C.A. No. 3:98-220)

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, DC 20036

David A. Damico
Burns, White & Hickton
Fifth Avenue Place, Suite 2400
120 Fifth Avenue
Pittsburgh, PA 15222

Raymond P. Forceno
Forceno & Hannon
Philadelphia Bourse Building
Suite 1000
Independence Mall East
Philadelphia, PA 19106

Ellen B. Furman
Goldfein & Joseph
1600 Market Street, 33rd Floor
Philadelphia, PA 19103

William M. Graham
Wallace & Graham, P.A.
525 North Main Street
Salisbury, NC 28144

Susan M. Hansen
Brownson & Ballou
4800 U.S. Bank Place
601 Second Avenue, South
Minneapolis, MN 55402

Robert H. Hood
Hood Law Firm
172 Meeting Street
P.O. Box 1508
Charleston, SC 29402

Reginald S. Kramer
Buckingham, Doolittle & Burroughs
50 South Main Street
P.O. Box 1500
Akron, OH 44309

Carter T. Lambeth
Johnson & Lambeth
P.O. Box 660
Wilmington, NC 28402

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102

Ronald L. Motley
Ness, Motley, Loadholt, Richardson &
Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29464

Carl E. Pierce, II
Pierce, Herns, Sloan & McLeod
P.O. Box 22437
Charleston, SC 29422

James B. Pressly, Jr.
Haynsworth, Sinkler & Boyd
75 Beattie Place, 11th Floor
P.O. Box 2048
Greenville, SC 29602

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
Roven, Kaplan & Wells
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA 19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
Detroit, MI 48226

Andrew J. Trevelise
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Mona L. Wallace
Wallace & Graham, P.A.
525 North Main Street
Salisbury, NC 28144

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 2 1 2003

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL IN MULTIDISTRICT LITIGATION
MDL DOCKET NO. 875
IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)


RE:    Agner, *et al.* v. Fluor Daniel, Inc, *et al.*
       NCW 3:98 CV 220-T

       Bost, *et al.* v. Fluor Daniel, Inc., *et al.*
       NCW 3:98 CV 138-T


**EXHIBITS TO**
**BRIEF IN SUPPORT OF MOTION TO VACATE CONDITIONAL REMAND ORDER BY**
**DEFENDANTS FLUOR DANIEL, INC., FLUOR DANIEL ENVIRONMENTAL SERVICES, INC.,**
**FLUOR DANIEL SERVICES CORPORATION, AND SOS INTERNATIONAL, INC.**

RECEIVED
CLERK'S OFFICE
2003 APR 21 A 10: 31
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

A

ORIGINAL

1
                IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA
2

3
IN RE:  ASBESTOS PRODUCTS      :
LIABILITY LITIGATION (NO. VI    :
4
       _____           : CIVIL ACTION NO. MDL 875

5
This Document Relates To      :

6
LAW FIRM OF WALLACE & GRAHAM    :

7
UNITED STATES DISTRICT COURT    :
WESTERN DISTRICT, NORTH CAROLINA: WEDNESDAY, MARCH 17, 1999
8
                        :
9
AGNER, 3:98 CV 220 T       : PHILADELPHIA, PENNSYLVANIA
BOST, 3:98 CV 138 T        : 10:30 A.M.
10

11
           BEFORE THE HONORABLE CHARLES R. WEINER,
         UNITED STATES DISTRICT COURT, SENIOR JUDGE
12

                  MOTION TO REMAND
13

14
APPEARANCES:                  CHRIS MAURIELLO, ESQ.
                         And
15
                    MONA LISA WALLACE, ESQ.
                    WALLACE & GRAHAM, P. A.
16
                    525 Main Street
                    SALISBURY, NORTH CAROLINA
17
                               28144

18
                    For the Plaintiffs

19
                    JAMES B. PRESSLY, JR., ESQ.
                    HAYNSWORTH, MARION, McKAY
20
                    & GUSEARD LLP
                    P. O. BOX 2048
21
                    GREENVILLE, SOUTH CAROLINA
                               29602

22
                    ROBERT H. HOOD, JR., ESQ.
                    HOOD LAW FIRM, LLC
23
                    Post Office 1508
                    CHARLESTON, SOUTH CAROLINA
24
                               29502

25
                    For the Defendants

1    P R O C E E D I N G S

2    (The following Took Place In Open Court)

3        THE COURT:  I will hear anybody that wants to

4    to be heard.

5        MR. MAURIELLO:  Thank you, Judge.

6        I am Chris Mauriello, representing the

7    Plaintiffs in this case.  I appreciate your having us

8    here this morning.

9        THE COURT:  Tell me what you want.  Tell it to

10   me in English.

11       MR. MAURIELLO:  We are here on a Motion To

12   Remand.

13       THE COURT:  Who is here?

14       MR. MAURIELLO:  The AGNER Group has eighty-

15   five.  We filed that case in State Court.  That was our

16   chosen venue in State Court.  It is a State Court com-

17   plaint.

18       THE COURT:  You have eighty-five plaintiffs?

19       MR. MAURIELLO:  Yes.

20       THE COURT:  How sick are they?

21       MR. MAURIELLO:  The lion shares of them have

22   asbestos.

23       THE COURT:  Trully?

24       MR. MAURIELLO:  Yes, sir.

25       THE COURT:  How many placque cases?

1          MS. WALLACE:  None.

2          THE COURT:  So why are you crossing your

3    fingers when you say that?

4          So how many mesotheliomas?

5          MR. MAURIELLO:  I don't think so in this

6    group.

7          THE COURT:  What are you asking for?

8          MS. WALLACE:  These are premises cases.

9          THE COURT:  How old are your people average?

10          MS. WALLACE:  Fifty-five to sixty.

11          THE COURT:  Are they working?

12          MS. WALLACE:  Some are and some aren't.

13          THE COURT:  Have you settled other cases

14    like this?

15          MS. WALLACE:  We have not settled the premises

16    cases with them.

17          THE COURT:  These are the only ones left?

18          MR. MAURIELLO:  Mr. Pressly represents four

19    of them.

20          THE COURT:  Whom do you represent?

21          MR. PRESSLY:  I represent FLUOR DANIEL, INC.

22          THE COURT:  Are these brake cases?

23          MR. HOOD:  No, sir.   I represent W. F. Gray

24    Installation Services.  Its W. F. Gray.

25          THE COURT:  Is there an average number that

1    pay on these cases?

2              MR. HOOD:  No, your Honor, we were recently

3    brought into this.  These cases commenced in 1998.

4    There is only one on the premises cases pending in

5    North Carolina.

6              THE COURT:  Would you pay any money?

7              MR. HOOD:  We don't know.  The information we

8    have received on the average age --

9              THE COURT:  What do you need to make a

10   decision?

11             MR. HOOD:  I need some information.  This is

12   a series of cases where all of the plaintiffs went to

13   the same doctor.  I need to know much more about the

14   medical condition of these people.

15             THE COURT:  If she sent you a complete medical

16   file could you make a decision?

17             How soon could you get the medical information

18   to him?

19             MS. WALLACE:  Within a week.

20             THE COURT:  Would you do that -- send him the

21   medical information and we will have a telephone con--

22   ference, and if you can't settle it I will remand it.

23             MR. HOOD:  The medicals, Your Honor, the

24   standard medical information.

25             THE COURT:  Tell her what you need.

1          MR. HOOD:  Medical information from the

2  treating physicians.

3          MS. WALLACE:  Their regular family physicians.

4  I can do that but it will take more than a week.

5          THE COURT:  How about the tissue slides --

6  any biopsies been done?

7          MR. HOOD:  If there is I need the tissues.

8          THE COURT:  You will send him medical treating

9  physicians and where there is a biopsy.

10         What else do you need?

11         MR. HOOD:  What they did -- the work.

12         THE COURT:  And the exposure and lenght of

13  time to the exposure and any witnesses they had that

14  saw the bag or the contents.

15         What you are really doing is preparing for

16  trial without going through the other parts of it.

17  You ought to give hem a demand, a reasonable demand and

18  I expect you to give her a reasonable response.

19         Suppose on Monday she sent you for Mr. A --

20  how soon would you give her an answer?

21         MR. HOOD:  Within two weeks.

22         THE COURT:  Today is the 17th.

23         MR. HOOD:  Can I ask for one other thing?

24  This is the situation, Your Honor, whereof the group --

25  you have got forty of them have filed in the State Court

in Ohio.

MS. WALLACE:  We are not aware of that until today.  These aren't against manufacturers.  We put in claims for some to recover against manufacturers.  Another lawyer handled that.  We won't take any further action --

THE COURT:  Today is the 17th.  Lets say by the 30th you get everything to him.

MS. WALLACE:  We can do it and by the 17th he will give us a response.

THE COURT:  If they say they want $20.00 and you offer $5.00 thats one thing.

If you reach an impass I will remand the cases back.

It seems to me you should be able to get the cases done.

Do you have the list of the names of the people they have?

MR. HOOD:  We do.  I think the current list -- I believe I missed one or two.

MR. MAURIELLO:  It raises an interesting issue.  There are two cases.  One case we have a motion to remand and that's the AGNAR case.  The second case came here from a different proceedure and has additional plaintiffs.  They are identical.

1    THE COURT:  Give him all of it so that the
2    total number of plaintiffs you have is what?
3    MR. MAURIELLO:  Eighty-five in the AGNAR
4    case.
5    MR. HOOD:  It started out with a hundred and
6    --
7    THE COURT:  How many are there now?
8    MR. HOOD:  AGNAR one-hundred fifty.
9    MR. MAURIELLO:  It should be less than that.
10   THE COURT:  You have eighty-five.  It is
11   about a hundred and ten.
12   MR. MAURIELLO:  Yes.
13   MR. HOOD:  We would be glad to look at BOST.
14   THE COURT:  What do you need from him --
15   the same things?
16   MR. PRESSLY:  I guess.  My guys weren't in
17   the plant at the time they alleged.
18   THE COURT:  If you take the position you were
19   not there and you are not going to pay we will deal
20   with that.
21   MR. HOOD:  The other defendant has been
22   served but never responded.
23   THE COURT:  Would you take a default against
24   them?
25   MR. MAURIELLO:  It was brought here -- if the

case was transferrred here -- yes, we could.

THE COURT:   Why don't you do that -- why don't you send him a notice -- return receipt requested -- that you are going to move for default judgment.

You can send him the Order you sent the Court with a short statement.  You file an affidvit that you sent it by certified mail to him.  You can then move for default.

You will make a decision to do what -- file a motion for dismissal.

MR. PRESSLY:   I will, Your Honor.

THE COURT:   We are going to have a conference on the 17th of May.  If you are not going to do any-thing let me know.

MR. HOOD:   On the 17th of May -- Will that be here or by telephone?

THE COURT:   By telephone.

MR. LASSMAN:   That conference is April 17th, Judge.

THE COURT:   I think thats a Monday.  If it turns out you don't want to pay anything I will remand it back.

You will join the call and tell us if you are going to do anything.

You will take up the matter of an entry of

1    default judgment and file the affidavit.

2                Thank you very much.

3                    ————

4

5                (Court Adjourned)

6                    ————

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

B

# WALLACE and GRAHAM, P.A.

## ATTORNEYS AT LAW

MONA LISA WALLACE †
WILLIAM M. GRAHAM
RICHARD L. HUFFMAN
RICHARD J. LUTZEL ††
CHRISTOPHER D. MAURIELLO †††
PETER F. MORGAN ††††
M. REID ACREE, JR. †††††

525 NORTH MAIN STREET
SALISBURY, NORTH CAROLINA  28144

TELEPHONE: (704) 633-5244
FACSIMILE:  (704) 633-9434
(704) 633-0619
† Also licensed in SC
†† Also licensed in NY, DC and SC
††† Also licensed in NY, FL and SC
†††† Also licensed in VA
††††† Also licensed in GA and SC

March 24, 1999

VIA HAND DELIVERY

James B. Pressly, Jr., Esquire
Haynsworth Marion McKay & Guerard
Two Insignia Financial Plaza
75 Beattie Place
Post Office Box 2048
Greenville, South Carolina  29602

Re:   *Vonnie Agner, et al. v. Fluor Daniel, Inc., et al.*
*Robert Bost, et al. v. Fluor Daniel, Inc., et al.*

Dear Jim:

As promised by Mona Wallace at the last hearing before Judge Weiner, we are complying with the wishes of the Court in providing work histories, diagnosing medical reports, pulmonary function tests, chest x-rays and CT scan reports.  Also, we are providing any and all medical records from family physicians and other health care providers.

Again, pursuant to the wishes of the Court, we are providing summaries of records provided herein as well as settlement demands on Schedule A which encompasses *Vonnie Agner, et al.* and Schedule B, which encompasses *Robert Bost, et al.*

Should you need any additional information, please call immediately and we will provide that information as soon as possible.  It is my understanding that you are to provide settlement offers in these cases no later than March 30, 1999.

Very truly yours,

William M. Graham

WMG/bgm
Enclosures

C

# HAYNSWORTH, MARION, McKAY & GUÉRARD, L.L.P.

### ATTORNEYS AT LAW

1201 Main Street
Suite 2400
Post Office Drawer 7157
Columbia, South Carolina 29202
(803) 765-1818
Facsimile (803) 765-2399

75 Beattie Place
Two Insignia Financial Plaza — Eleventh Floor
Post Office Box 2048
Greenville, South Carolina 29602
(864) 240-3200
Facsimile (864) 240-3300
April 13, 1999

134 Meeting Street
Fourth Floor
Post Office Box 1119
Charleston, South Carolina 29402
(843) 722-7606
Facsimile (843) 724-8016

Reply to Greenville Office
Direct Dial: (864) 240-3277
Fax: (864) 240-3336
Internet Address: jbpressly@hmmg.com

Mr. Bruce Lassman
Law Clerk to The Honorable Charles R. Weiner
United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

        Re:     Agner, et al. v. Fluor Daniel, Inc., et al.
                USDC-WDNC No. 3:98 CV220T
                Bost et al. v. Fluor Daniel, Inc.
                USDC-WDNC No. 3:98 CV 138 T

Dear Mr. Lassman:

        I have reviewed the information provided by Wallace and Graham on the *Agner* group of plaintiffs. Wallace and Graham also provided information on the *Bost* group of plaintiffs, apparently in response to our motion to dismiss these claims. The *Bost* group will be dealt with in a separate letter.

        Of the 85 claims in the *Agner* group, the mix consists of one malignancy and 84 asbestosis claims. There are no death cases. Of the 84 asbestosis claims, 52 have a 0% disability or normal pulmonary function tests. Seventeen of the 84 have some evidence of obstructive disease. Thirteen of the 84 have some indication from one of the physicians to whom the plaintiff was referred by Wallace and Graham of some restrictive component, although the same notes reflect normal lung volumes and spirometry. All are either currently working or are retired, apparently for reasons unrelated to asbestos (this is somewhat difficult to determine since much of the information regarding the basis for the disability in those cases in which a disability retirement was taken was not sent to me).

        Wallace and Graham provided demands in these cases ranging from a low of $25,000 to a high of $75,000.

Mr. Bruce Lassman
Page 2
April 13, 1999

As I began my review, it became apparent that all of the plaintiffs had one thing in common, i.e., they were screened by Dr. Dula, a radiologist in the Salisbury area. His x-ray and CT interpretations of asbestosis and/or asbestos-related pleural "disease" are the common denominators in all of the claims. I asked Wallace and Graham to send me the original x-rays and CT scans in order for me to have them reviewed independently. Ms. Wallace indicated that the court had not instructed her to send this material and that she would not provide them to me.

The significance of the radiology in these cases is underscored by the fact that in most cases, the pulmonologist to whom the plaintiffs were subsequently sent relied upon the interpretations of Dr. Dula in reaching their opinions that asbestosis might exist despite normal pulmonary testing and physical examination.

It is my understanding that the x-rays and CT scans done in the course of this screening are in the possession of Wallace and Graham. It should not be a burden for Wallace and Graham to provide them to me for my review. Furthermore, such a review is needed, given the unique situation presented here, in order to evaluate the accuracy of these interpretations.

At our hearing on March 17, Ms. Wallace was asked to provide all information on other claims made on behalf of these plaintiffs. None of this material was provided. I am attaching what information I have found regarding other third party lawsuits initiated on behalf of the same *Agner* plaintiffs (*see* Attachment B). These actions assert claims against product manufacturers and distributors as well as this defendant. I am not aware of any other third party suits pending for any of the other plaintiffs although I note that several files indicate that Baron and Budd are involved. This raises the question whether there are any Texas actions pending for any of these other plaintiffs.

I have no information regarding pending or resolved workers compensation actions for asbestos-related illnesses brought by any of the plaintiffs in this action. Additionally, I have not received any information regarding disability claims made by certain of these plaintiffs as reflected in the files or claims made against bankrupt manufacturing defendants and/or voluntarily settling defendants such as Owens Corning. In view of the demands made on these cases, I need information about any and all such settlements and the claims pending. Specifically, I need the Johns Manville proof of claims forms and attachments submitted by any of these plaintiffs in order to evaluate the claims for my client.

Some of the information provided indicates that the plaintiffs' employer, Hoechst, performed its own annual examinations of these plaintiffs. Apparently, these examinations included breathing tests and chest x-rays. While I find reference to such

Mr. Bruce Lassman
Page 3
April 13, 1999

examinations, none of this material is contained in the information provided. I believe that this information is available to counsel for plaintiffs, especially if workers compensation claims were filed, and I would like these to be provided to me as well. It appears that about 38 of the plaintiffs are still working at Hoechst.

In certain cases there is specific medical information which was not provided that I need as well. I have made a separate listing of these items by case involved (*see* Attachment A).

Mr. Graham called me about my review of these claims and Fluor Daniel's response to his demands. We discussed the insurance coverage dispute between my client and its carrier, St. Paul Insurance Co., that is currently in litigation in Greenville County, South Carolina. It is my understanding that Mr. Graham has also been in direct contact with St. Paul about this issue.

St. Paul is monitoring these proceedings and is interested in evaluating the merits of the claims, notwithstanding the coverage dispute. I have kept St. Paul advised of my review of the information provided and informed them that I will be seeking additional information in order to properly evaluate the claims in the *Agner* group. At this time, neither Fluor Daniel nor St. Paul will entertain discussions of demands in the range of $25,000 to $75,000 per case as submitted by Wallace and Graham. After reviewing the additional information requested, I believe that Fluor Daniel and St. Paul they will be in a better position to evaluate what settlement contribution might be appropriate and discuss how such settlement amounts might be paid.

One of the items the court instructed Wallace and Graham to provide was information regarding the basis for the claims against Fluor Daniel. In the information submitted, there is nothing that bears on this issue. For the vast majority of the claimants involved, the exposure history provided through the medical records would indicate that any such exposure occurred as part of the plaintiff's normal duties as a Hoechst employee and involved the direct manipulation of asbestos containing products in that capacity. Further, there is no indication as to why W.F. Gray is involved, nor do the work histories provided in these records indicate that W.F. Gray could be involved in most of these claims. For example, one plaintiff, Alma Ivery, told her physician that she was exposed to asbestos because the pipes and machinery in her work area vibrated, and she believed that this caused the release of asbestos fibers into the air. It is unclear how this would relate to any defendant sued in this action.

In summary, the following additional information is needed in order to complete an evaluation of these claims:

Mr. Bruce Lassman
Page 4
April 13, 1999


1.      Dr. Dula's chest x-rays and CT scans.
2.      Information on all other claims submitted or filed by each plaintiff as outlined above.
3.      Hoechst medical records on each plaintiff.
4.      Specific medical information on certain individual plaintiffs as outlined in Attachment A to this letter.
5.      The factual basis for the claim against the Fluor Daniel defendants in each case.

Given the medical status of the claims involved, the fact that the majority are also plaintiffs in other pending third party litigation in MDL and Ohio state courts, and the fact that Wallace and Graham are also currently involved in discovery in 324 asbestos cases in South Carolina state court in which these defendants are also involved, I believe that proceeding with the further evaluation of the *Agner* claims as outlined in this letter is the most expeditious use of attorney time at this point and has the best chance of leading to meaningful settlement discussions.

Very truly yours,

HAYNWORTH, MARION, McKAY & GUÉRARD, L.L.P.

James B. Pressly, Jr.

JBPJr:pmb

Enclosure

cc:   William M. Graham

ATTACHMENT A

| | | |
|---|---|---|
| 1. | Agner | Information from railroad screening in 1985 |
| 2. | Byrd | Dr. Proctor report |
| 3. | Daniels | X-rays and interpretations from 1/20/85 |
| 4. | Doby | B-reader's interpretation |
| 5. | Ellis | Interpretation of 12/11/96 x-ray |
| 6. | Fonesca | Dr. Wodeski's consult reports |
| 7. | Goodlett | B-reader interpretation |
| 8. | Goodman | Social Security Disability file |
| 9. | Hendrickson | Dr. Curseen records |
| 10. | Holmes | CT and interpretation of CT ordered by Dr. Alford 8/27/97 |
| 11. | Norman Holt | Dr. Gaziano's records and report of 1995, x-rays of 11/94 and interpretation by Dula. |
| 12. | Betty Jackson | Dr. Curseen report and x-ray and CT along with interpretations. |
| 13. | Kepley | Disability claim file |
| 14. | Menster | B-reader interpretation (this is a silicosis claim). |
| 15. | Paxton | Disability claim file. |
| 16. | Redmond | Pathology materials |
| 17. | Ada Robertson | 1990 Proctor records and Dr. Newman follow up on biopsies, biopsy materials. |
| 18. | Shive | 7/20/93 x-ray and report of same done for Dr. Ward, other radiology reports from 1990 forward. |
| 19. | F. Smith | Old work up for lung disease referred to in records. |
| 20. | R. Smith | Dr. Burke's records. |
| 21. | Stirewalt | Dr. Burke's records. |
| 22. | Waddell | Disability claim file. |
| 23. | Wilhelm | Disability claim file. |
| 24. | Wise | Dr. Curseen records and report. |

D

# WALLACE and GRAHAM, P.A.

## ATTORNEYS AT LAW

MONA LISA WALLACE †
WILLIAM M. GRAHAM
RICHARD L. HUFFMAN
RICHARD J. LUTZEL ††
CHRISTOPHER D. MAURIELLO †††
PETER F. MORGAN ††††
M. REID ACREE, JR. †††††
CHRISTOPHER J. HICKEY ††††††
BARBARA L. CURRY

525 NORTH MAIN STREET
SALISBURY, NORTH CAROLINA  28144

TELEPHONE:  (704) 633-5244
FACSIMILE:  (704) 633-9434
(704) 633-0619
† Also licensed in SC
†† Also licensed in NY, DC and SC
††† Also licensed in NY, FL and SC
†††† Also licensed in VA
††††† Also licensed in GA and SC
†††††† Also licensed in OH

May 14, 1999

Mr. James B. Pressly, Jr.
Haynesworth Marion McKay & Guerard, LLP
Post Office Box 2048
Greenville, South Carolina  29602

RE:    **Agner, et al v. Fluor Daniel, Inc., et al**
**In RE: Asbestos Products Liability Litigation (No VI)**
**Civil Action No.:  MDL 875**

Dear Jim:

As we stated during the recent telephone conference with Bruce Lassman, we were extremely disappointed with the offers made by Flour Daniel in these cases. We will continue to attempt to negotiate towards the resolution of the claims, but sincerely believe in the overall value of the claims given the individual work histories and exposures.

All of these claims extend from exposure at the Salisbury plant. Based upon the numerous documents we have obtained from this plant, we know that over 200,000 feet of liner pipe asbestos-containing thermal insulation was removed from the plant. These claimants were exposed since 1965 in numerous ways including the installation and removal of asbestos-containing insulation, the disturbance of insulation in and around the plant through use of chain falls, maintenance crews, turn-around crews and numerous other methods. Additionally, there were numerous asbestos-containing products used at the plant in addition to thermal insulation including but not limited to Super 66 (Blue Mud), A-cloth, A-tape, asbestos bricks, cement and sealers.

In furtherance of our discussion, we have enclosed herein copies of numerous independent medical examinations. These independent medical exams have been conducted by the request of the defense counsel in workers' compensation matters. These evaluations confirm that the defendant's chosen physicians have reviewed the same diagnosing films and have confirmed that these claimants suffer from asbestosis.

Mr. James B. Pressly, Jr., Esq.
Page 2
May 14, 1999


We, of course, request that you share this information with your client and review these materials in good faith. I would request that we schedule one more conference call with Mr. Lassman after you client has had the opportunity to review these reports.

Finally given the background of these claims, and our review of premises verdicts and settlements across the country, we feel the original demand for each claimant, which was based upon their class impairment, was reasonable and made in good faith. As we mentioned, we certainly feel there is room for further negotiations and we stand by ready to do the same if, and only if Fluor Daniel is willing to attempt to resolve these claims in good faith. Otherwise, we will assume that this exercise is in futility and will seek the Order of Remand that Judge Weiner indicated would be forthcoming.

Please let me know when your client has completed reviewing this information and will schedule another conference call with Bruce Lassman to move these cases forward. I would like to schedule the additional conference call by next Friday if possible because of the continued delays in the handling of these matters. As you know, it has been over a year since this Complaint has been filed and we need to move these cases forward.

Should you have any questions regarding the individual claims or the information provided, please do not hesitate to contact Ms. Wallace or myself

Thank you for your continued assistance in trying to resolve these cases by settlement.


                          Very truly yours,

                          WALLACE and GRAHAM, P.A.



                          Christopher D. Mauriello, Esq.

/smf
enclosures

cc.: Bruce Lassman, Esq. (w/o enc.)

E

S

STEPHEN D. PROCTOR, M.D.

PULMONARY MEDICINE AND CRITICAL CARE

102-G MOCKSVILLE AVENUE   •   SALISBURY, NORTH CAROLINA  28144   •   TELEPHONE (704) 636-8895

January 20, 1998

Ms. Mona Lisa Wallace
Attorney at Law
525 N. Main St.
Salisbury, NC   28144

RE:  Guy Byrd

Dear Ms. Wallace:

I understand you need the AMA Classification for the enclosed
pulmonary function tests.  Under the American Medical Association
Classification Scheme for Respiratory Impairment, this client would
be Class 1 (0%, no impairment).

Thank you again for allowing me to participate in the care of MA
Byrd.

Sincerely,

Stephen D. Proctor, MD, FCCP

F

# WALLACE and GRAHAM, P.A.

## ATTORNEYS AT LAW

MONA LISA WALLACE ‡
WILLIAM M. GRAHAM
RICHARD L. HUFFMAN
RICHARD J. LITZEL, II
CHRISTOPHER D. MAURIELLO ‡‡‡
CHRISTOPHER J. HICKEY ‡‡‡‡
M. REID ACREE, JR. ‡‡‡‡‡
BARBARA L. CURRY
JAMES S. WALKER
JILL N. CALVERT ‡
MICHAEL B. PROSS ·
EDWARD L. PAULEY ··
MATTHEW R. WHITLER ···
BRIAN J. ODOM †
JEAN SUTTON MARTIN

525 NORTH MAIN STREET
SALISBURY, NORTH CAROLINA 28144

TELEPHONE: (704) 633-5244
FACSIMILE:  (704) 633-9434
                    (704) 633-0619

‡ Also licensed in SC
‡‡ Also licensed in NY, DC and SC
‡‡‡ Also licensed in NY, FL, OH and SC
‡‡‡‡ Also licensed in OH
‡‡‡‡‡ Also licensed in GA and SC
· Also licensed in MD and NY
·· Also licensed in KY and WV
··· Also licensed in WV

May 9, 2000

**VIA FACSIMILE and U.S. MAIL**

Mr. James Pressly
Haynesworth, Marion, McKay & Guerard, L.L.P.
Post Office Box 2048
Greenville, South Carolina 29602

RE:    ***Agner, et al v. Fluor Daniel, Inc., et al***
          **3:98 CV 220-T**

          ***Bost, et al v. Fluor Daniel, Inc., et al***
          **3:98 CV 138   T**

Dear Jim:

Enclosed herewith you will find additional independent medical examinations and/or panel examinations with regard to certain Plaintiffs in the above-mentioned claims.

Also, given the fact that a conference is now scheduled at the end of the month with Judge Weiner, I was wondering if there was any other information you need from us concerning these claims that would facilitate settlement discussions.

Additionally, I would be most willing to sit down and meet with you prior to the date we are before the Court so that we may discuss settlement and/or iron out any issues between the parties. It has been sometime since we have had any meaningful negotiations. I do have other business in Greenville, so we could schedule a meeting at your office if you are so inclined.

Mr. James B. Pressly
May 9, 2000
Page 2

I appreciate your continued cooperation.

Very truly yours,

WALLACE and GRAHAM, P.A.

Christopher D. Mauriello, Esq.

CDM: smf
Enclosures

G

James B. Hunt Jr., Governor
J. Howard Bunn Jr., Chairman



Commissioners
Bernadine S. Ballance
Thomas J. Bolch
Laura K. Mavretic
Renee C. Riggsbee
Christopher Scott
Dianne C. Sellers

# North Carolina
# Industrial Commission

04-04-00

MONA L WALLACE
ATTORNEY AT LAW
525 North Main Street
Salisbury        NC 28144

Carrier Code No: 425-025
EC Number: 00900690

Re: 707086
Saine Henry G

Vs: Hoechst Corporation
CF No: F18B

Enclosed is a copy of the medical evaluation report prepared by the
selected panel physician regarding the above referenced occupational
disease claim.  Copies are being furnished to all parties concerned.

Erma H. Champion
Occupational Disease Section

CC: Esis
    HATCHER B KINCHELOE
    LPW
    File

◄Enclosure



# Nalle
### C L I N I C

March 20, 2000

Industrial Commission

ATTN:  Irma S. Champion, Occupational Disease Section

RE:  SAINE, HENRY
      Chart Number:  5110846

*707086*
*Panel Exam Report*

Dear Ms. Champion:

Enclosed please find a copy of my evaluation of Mr. Henry Saine, RE 707086 versus Huggs Corporation, CF No. F185.  It is my opinion that this gentleman does not suffer from asbestos associated lung disease, either pleural or parenchymal asbestos disease.  There is no question he has had a significant contact, but at the present time I cannot define disability nor enough x-ray changes to make that diagnosis.

Sincerely,

CARMINE DALTO, M.D.

CD/SIM/LT-oo-MN486-V293314.L86
cc:  Mr. Hatcher Kincheloe

File Reference:  SAINE, HENRY —5110846 03/16/00

---

*"Providing Our Patients With The Best Value In High Quality, Comprehensive Health Care."*


NALLE CLINIC

9070086

► 10/18/1999                            SAINE, HENRY -

HISTORY: The patient is referred by the North Carolina Industrial Commission for evaluation of potential respiratory disability, specifically secondary to the question of asbestos injury. The carrier code number is 425-025. EC number is 00900690.

HISTORY: Mr. Saine is 55 years old and is a non-smoker who has never smoked. From 1967 to 1998 he worked as a mechanic with Hoechst-Celanese. In his job as a mechanic, periodically he would have to work on pipes, valves, you name it and he would have to both remove asbestos and occasionally reapply asbestos insulation by mixing asbestos powder into a mud and troweling it on the pipe. He also periodically changed brake shows which I understand were partially made with asbestos. This gentleman has no significant occupational exposure at all. As far as I can tell on talking with him, there is no history of allergy, asthma, hayfever, tuberculosis. There is a history of him having pneumonia in both sides of his lungs in 1963. He denies a history of pleurisy but does claim shortness of breath on climbing about ten steps a day and when he stoops or bends.

In terms of his respiratory history, he denies having a cough. He tells me that he brings up 2-10 tablespoons of occasionally yellow, green sputum per day. He claims he snores loudly at night, wakes up with a morning headache, does not wake up refreshed and has a lot of complaints from his relatives and spouse about snoring. He denies shortness of breath, history of broken ribs, scars or spots on his lungs, phlebitis, ever having lung surgery, bronchoscopy or ever being on a ventilator. In addition to exposure to asbestos, he did do grinding and welding. He denies having any kind of significant allergic symptoms but occasionally he does have a drippy, watery nasal discharge and nasal congestion. The bedroom and living room are carpeted. No pets. No mold or mildew problems in his house. He doesn't use a feather pillow. No dampness problem in his house. His house is centrally air conditioned and has electric heat. He and his wife live in the house. Nobody in his house smokes. They regularly change their air conditioner and furnace filters. They do not use any furnaces that are space heats, kerosene heaters, woodburning stoves, etc. He claims heartburn but no overt water brash, burning sensation, bitter taste, etc. to suggest more serious reflux. He has never been evaluated by an allergies. He does not have a history of allergic disease.

PAST MEDICAL HISTORY: Allergic to penicillin and sulfa. History of peptic ulcer disease, status post some form of gastric operation in 1982, history of some form of back operation in 1972. Status post hernia repair in 1994. He had a pin placed in his left elbow in 1962. He has a history of hemorrhoids, history of fracture of his pelvis. He has a history of vocal chord polyps and longstanding hoarseness.

REVIEW OF SYSTEMS: Is notable for headache, dizziness, muscle spasm, double vision, morning stiffness, joint pain, muscle weakness, joint swelling, stomach pain, heartburn, hiatal hernia, frequent nocturia, easy bruisability. Otherwise, review of systems is completely gone over and is otherwise negative.

FAMILY HISTORY: Father died at age 83 of bronchogenic carcinoma. Mother is 82 and in fair health. His family history is diffusely positive for hypertension, organic heart disease. He has two brothers living and three sisters living. He has four children living.

PRIMARY MEDICATIONS: Ibuprofen which he has taken for three years.

SOCIAL HISTORY: Finished 12th grade high school. He is married. He drinks two cups of coffee, two glasses of tea, one glass of cola per day. He has occasional alcohol.

PULMONARY

707086

PHYSICAL EXAM: Shows a 5'7", 181 lb. individual. Blood pressure is 120/80, pulse rate 60, respiratory rate 14, temperature 98.3.

Head is atraumatic, normocephalic. Pupils are equal, round, reactive to light. Extraocular range of motion is intact. Vessels appear normal. Discs are sharp. Ears and nose are unremarkable. Tympanic membranes are normal. Neck: Supple, no bruits, thyromegaly or jugular venous distention. Lungs: Clear to percussion and auscultation. Specifically, I heard no rales. Cardiac exam shows S1 and S2 are normal. Abdomen: Soft, no organomegaly, bruits or masses. Rectal exam is not done. Extremities: No cyanosis, clubbing or edema. Neurologic exam: Deep tendon reflexes, cranial nerves, gait normal. I did not specifically test sensory.

LABORATORY: First of all, we have his pulmonary function tests and they are specifically normal. Now, in 1997 I have some old records, an FVC of 4.23. Somehow or another, Dr. Curran did another study which showed mild borderline restrictive ventilatory defect. It was right on the edge but currently on this study of 10-18-99, everything is entirely within normal limits. In fact, his diffusion capacity is an amazing 128% predicted. FVC is 4.13, not far off from the 4.23 obtained in 1997 and even then we are talking 105-110% predicted.

_____

CARMINE DALTO, M.D.

CD/SIM/ON-fw-MN486-B519684.P86
D: 03/16/2000  T: 03/20/2000 1516          Date Received:          Date Charted:



NALLE CLINIC
·1918 Randolph Road
Charlotte, N.C. 28207
(704) 342-8000

# CONSULTATION
(continuation)

03/16/2000                                                          SAINE, HENRY
PAGE 1                                                                5110846

Chest x-ray today in my office shows absolutely normal lung fields. I do not have the advantage of the other 2 chest x-rays, but apparently they were interpreted as mild interstitial lung disease. His CT scan, we note that an ILO reading in 1996 had ILO 1/0, with increased T abnormalities. At work several B readings were interpreted as normal. In 1996 a CT scan was done, and the interpretation at the time was mild interstitial changes, no pleural abnormality, possibly represents fibrosis from asbestos exposure. However, looking, he had a very good chest CT scan per Dr. Carl Eisenberg from 6/16/99. It is just plain negative - no plaques, no calcifications, no abnormalities.

ASSESSMENT: I do not believe we have any evidence this man has asbestosis. I do believe that he has a significant exposure to the materials. I just at the present time cannot support it. It is unclear what was wrong with this gentleman at the time that possibly lead to the visualization of some thickened interstitial septa, but the fact of the matter is these are soft and very nonspecific findings. Three years later, repeat high resolution CT scan is entirely normal, chest x-ray is normal, PFT's are normal. I must hasten to add that his initial findings 3 years ago were entirely nonspecific and borderline at best, and with time rather than show deterioration and worsening, as is typical for asbestosis, they have cleared up. There are several points here:

1.  First, of these points is that this man has a good clinical history for sleep apnea. I have talked to him about it and advised that he see his primary care doctor and discuss the snoring and multiple medical problems.
2.  I am a little anxious about his shortness of breath with exercise, i.e. going 10 steps. The fact of the matter is you can't explain it on the basis of respiratory disability. It could very well be again that he has problems related to sleep apnea.


CARMINE DALTO, M.D.

CD/SIM/CN-oo-MN486-V293313.P86
D: 03/16/2000 T: 03/20/2000 1415

Date Received:          Date Charted:

707686


**NALLE CLINIC**
1918 Randolph Road
Charlotte, N.C. 28207
(704) 342-8000

RADIOLOGY REPORT

NALLE CLINIC NO: 5110846

PATIENT: SATNE, HENRY --
DATE OF BIRTH: 04/27/44

REFERRED BY: Dr. Carmine Dalto

RADIOLOGY NO: 5110846

DATE OF EXAMINATION: 10/18/99

CHEST: No previous films are available for comparison. Post surgical changes are seen about the epigastrium without acute cardiopulmonary disease or significant abnormality otherwise seen.

PAMELA CULP, M.D

PC/SIM/XR-hs-MN489-XI744452.389
D: 10/19/99  T: 10/19/99 942  Date Received:          Date Charted:

Nalle Clinic Pulmonary
Charlotte, North Carolina

Date: 10/18/99
Id: 44-55-66
Name: SAINE, HENRY G
Physician: DR. DALTO

*007086*

## PFT REPORT

Age: 55     Height(in): 67     Weight(lb): 181     Gender: Male
Race: Caucasian   Diagnosis: ASBESTOS EXPOSURE   Medication:
Dyspnea Rest: No                          Dyspnea Exercise: Yes
Cough: No                Persistent: No                Productive (cc):
Smoker: No                How Long(pk/yrs):   Stopped(yrs):
Cigarettes: No                     Cigars: No

Technician: KAREN PALMER CRTT                    Temp: 23 PBar: 756

### Spirometry

|  |  | Ref | Pre Meas | Pre % Ref | Post Meas | Post % Ref | Post % Chg |
|---|---|---|---|---|---|---|---|
| FVC | Liters | 3.93 | 4.13 | 105 |  |  |  |
| FEV1 | Liters | 3.18 | 3.77 | 118 |  |  |  |
| FEV1/FVC | % | 81 | 91 |  |  |  |  |
| FEF25-75% | L/sec | 3.33 | 6.16 | 185 |  |  |  |
| PEF | L/sec | 8.07 | 7.91 | 98 |  |  |  |
| FET100% | Sec |  | 5.24 |  |  |  |  |
| FIVC | Liters | 3.93 | 3.95 | 101 |  |  |  |
| FIF50% | L/sec |  | 6.83 |  |  |  |  |
| FEF/FIF50 |  | <1.00 | 0.99 |  |  |  |  |
| MVV | L/min | 136 | 137 | 100 |  |  |  |

### Lung Volumes

|  |  | Ref | Pre Meas | Pre % Ref | Post Meas | Post % Ref | Post % Chg |
|---|---|---|---|---|---|---|---|
| VC | Liters | 3.93 | 4.13 | 105 |  |  |  |
| TLC | Liters | 6.02 | 5.92 | 98 |  |  |  |
| RV | Liters | 2.08 | 1.79 | 86 |  |  |  |
| FRC PL | Liters | 3.22 | 2.57 | 80 |  |  |  |
| ERV | Liters |  | 0.69 |  |  |  |  |
| IC | Liters |  | 3.35 |  |  |  |  |
| Vtg | Liters |  | 3.01 |  |  |  |  |
| RV/TLC | % | 36 | 30 |  |  |  |  |



Lung Volumes
TLC
ERV
RV
Ref   Meas

### Diffusion

|  |  | Ref | Pre Meas | Pre % Ref | Post Meas | Post % Ref |
|---|---|---|---|---|---|---|
| DLCO | mL/min/mmHg | 23.7 | 30.5 | 128 |  |  |
| DLCOexh | mL/min/mmHg | 23.7 |  |  |  |  |
| VA | Liters |  | 6.08 |  |  |  |
| DLCO/VA | 1/min/mmHg | 3.99 | 5.02 | 126 |  |  |
| DL/VA Adj | 1/min/mmHg |  | 5.02 |  |  |  |
| IVC | Liters |  | 3.91 |  |  |  |

Comments
VERY GOOD PT EFFORT WITH ACCEPTABLE AND REPRODUCIBLE RESULTS.  ATS CRITERIA MET.

*Lung volumes, spirometry and diffusion capacity are all within normal limits*

H

**Haynsworth**
**Sinkler Boyd, P.A.** | ATTORNEYS AND COUNSELORS AT LAW

7S BEATTIE PLACE, 11TH FLOOR (29601-2119)
POST OFFICE BOX 2048 (29602-2048)
GREENVILLE. SOUTH CAROLINA
TELEPHONE. 864.240.3200
FACSIMILE 864.240.3300
WEBSITE WWW.HSBLAWFIRM.COM

August 13, 2002

**Reply to Greenville Office**
**Direct Dial: (864) 240-3277**
**Fax: (864) 240-3336**
**Internet Address: jpressly@hsblawfirm.com**

Mona Lisa Wallace
Wallace and Graham
525 N. Main Street
Salisbury, NC 28144

Re:     Agner, et al. v. Fluor Daniel, Inc., et al.
        USDC-WDNC No. 3:98 CV220T
        Bost et al. v. Fluor Daniel, Inc.
        USDC-WDNC No. 3:98 CV 138 T

Dear Mona Lisa:

Please refer to my letter dated April 13, 1999, addressed to Bruce Lassman, a copy of which was sent to Bill Graham, and specifically the additional information I asked for on certain plaintiffs' claims. We have checked our files and none of the materials itemized on Attachment A to the letter have been provided to us. Please send those materials at your earliest opportunity.

Your letter to Judge Weiner dated August 8, 2002, refers to three deceased plaintiffs. Please provide us with the names of those deceased plaintiffs, copies of the death certificates, additional medical records and any available pathology.

Because we were the only defendants on the telephone conference today, we assume we are the only defendants remaining in the cases. I have sent notice to my client regarding our call today. Since the person with authority is out until August 19, I plan to talk with him that day and will be back in touch with you on the 20th. I am currently scheduled to be in a deposition in Virginia on that day, so someone else may call if I am unavailable.

I am unclear from your August 8 letter whether or not you are also asking for the remand of the companion cases most of these plaintiffs have pending in MDL against the product manufacturers. If we have to remand these cases, it would certainly be wiser to have the entire case remanded for trial. Since you have not provided me with the information about other pending cases in these actions, I am also unclear as to how many of these plaintiffs also have actions pending in the state of Ohio.

I would appreciate it if you could provide me with information about settlements with any of the other defendants in these actions.

Mona Lisa Wallace
Page 2
August 13, 2002

     In our telephone conference today you indicated there were additional panel examinations for purposes of workers compensation in these files.  As I recall, these were only received in some of the cases, not all of the cases.  Please advise me which ones received IME's or panel examinations so that I can check to see if we do indeed have those records.

     I look forward to receiving your responses to the issues raised in this letter.

          Very truly yours,

          HAYNWORTH SINKLER BOYD, P.A.

          James B. Pressly, Jr.

JBPJr:pmb

cc:    Bruce Lassman
       Law Clerk to The Honorable Charles R. Weiner
       United States Courthouse
       601 Market Street
       Philadelphia, Pennsylvania 19106

I

GREENVILLE    CHARLESTON    COLUMBIA    FLORENCE

# Haynsworth
# Sinkler Boyd, P.A.

ATTORNEYS AND COUNSELORS AT LAW

75 BEATTIE PLACE, 11TH FLOOR (29601-2119)
POST OFFICE BOX 2048 (29602-2048)
GREENVILLE, SOUTH CAROLINA
TELEPHONE  864.240.3200
FACSIMILE  864.240.3300
WEBSITE  WWW.HSBLAWFIRM.COM

August 19, 2002

**Reply to Greenville Office**
**Direct Dial: (864) 240-3277**
**Fax: (864) 240-3336**
Internet Address:  jpressly@hsblawfirm.com

Mona Lisa Wallace
Wallace and Graham
525 N. Main Street
Salisbury, NC 28144

Re:    Agner, et al. v. Fluor Daniel, Inc., et al.
        USDC-WDNC No. 3:98 CV220T
        Bost et al. v. Fluor Daniel, Inc.
        USDC-WDNC No. 3:98 CV 138 T

Dear Mona Lisa:

Since I only received your letter of August 8 on the day before the conference call with Judge Weiner, I really had no chance to go back through these files prior to the call. I have now done so and can address the information we have received since our last discussions regarding these cases. I want to outline this data in order to assure that we both agree that these are all the materials that have been provided to us for this evaluation.

Attachments 1 and 2 list the cases in the Agner and Bost groups, respectively, for which we have received no new case information since our last discussions. Attachments 3 and 4 list the cases in the Agner and Bost groups, respectively, for which we have received some new case information. For each such case, the new information is summarized. In many cases all we have received is a "Medical History" summary which references various additional medical reports. These reports, however, have not been provided to us for review. Please forward copies of these materials so that I can review them.

In your paralegal's affidavit submitted with your letter of August 8, you indicated that three plaintiffs in the Agner group had died since 1998 and that two plaintiffs in the Bost group had died since 1998. You also stated that you had medical expert reports ascribing an asbestos causative role in these deaths. Reviewing the information we have, I find two death cases in the Agner group and two death cases in the Bost group.

In the only death cases of which I am aware in the Agner group, F. Smith and Walker, both plaintiffs died in 2000 and the information we have is summarized in Attachment 3. In the Walker case, the primary site of the carcinoma is unknown and there is no indication of any possible asbestos involvement. If you have any additional information on this case, I would ask that you please provide it to me.

Mona Lisa Wallace
August 19, 2002
Page 2

In the Bost group, Wilson and Winecoff are the only death cases. Both plaintiffs died in 1998. Mr. Wilson died of a gunshot wound, and Ms. Winecoff died of "acute cardiovascular respiratory arrest." Dr. Dikman's report of March 29, 2000 regarding Ms. Winecoff does not show "severe asbestosis" as indicated in your paralegal's affidavit, if indeed this is the case to which she is referring. We have no other medical records in Ms. Winecoff's case to determine what other medical conditions she may have had.

At the time of our last discussions, there were no reports on the pathology in your death cases. The only pathology we requested was in the Hutchins and Redmon cases, which was never received. In light of the new information, I do want the pathology in the Winecoff, F. Smith, and Walker cases as well. If it is your position that asbestos contributed to Mr. Wilson's death, and pathology is available in that case, I want his pathology as well. We have also previously requested the x-rays and CT scans for all the plaintiffs in the Agner and Bost cases, and I again request that these be provided (see my letter to Mr. Lassman of April 13, 1999, attachment 5).

In our telephone conference with Judge Weiner, you indicated that your plaintiffs in the Agner and Bost groups had undergone independent medical examinations in connection with their workers compensation claims. You further indicated that these examinations confirmed the presence of asbestosis. Attachments 3 and 4 outline the independent medical examinations we have received. The vast majority of these reflect some x-ray changes which would be "consistent with" either "asbestos-related pleural disease" or "early" asbestosis. Most of these reports further indicate either normal pulmonary function studies or some obstructive defect. Some of these reports find that there is no asbestos disease at all. If there are other independent medical examinations of which we are not aware, please send them to me.

To my knowledge, since 1999 none of the cases filed by various plaintiffs in the Agner and Bost groups against product manufacturers in the federal district courts of North Carolina or the state courts in Ohio have been resolved or dismissed. I raise this because the answers to interrogatories you provided in these cases indicate that these plaintiffs do not have any other personal injury actions pending. Has some resolution been reached in these other cases or are the answers to interrogatories incorrect? I have been advised that Daniel Construction Company has been dismissed from your Ohio actions. I am attaching a list of case filings for your Agner and Bost plaintiffs in Ohio and North Carolina according to our information (see Attachment 6). Please advise me if this list is incorrect.

I have provided all of this information to my client, Daniel Construction Company. As instructed by Judge Weiner, we will contact you on August 20 and make an offer based on this information. I would point out that you have not made any reduction in the demands you made in 1999. I hope this is not an indication that you have decided to be intransigent in this negotiation. If so, I would point out that the figures you are using are exponentially higher than the settlement amounts you are accepting from manufacturers in your cases in South Carolina, as

Mona Lisa Wallace
August 19, 2002
Page 3

you are certainly aware.  The cases in South Carolina are not materially distinguishable from the
<u>Agner</u> and <u>Bost</u> groups, i.e. the plaintiffs were sent to Dr. Dula for an x-ray, and the pulmonary
functions findings are similar.

I have received no response to my letter of August 13, 2002, asking for information.  I
can only assume you are not going to respond.  Absent the information requested, e.g. whether or
not there is another death case of which I am unaware, I can only assume that the information I
have is correct.

Thank you.

Very truly yours,

HAYNSWORTH SINKLER BOYD, P.A.

James B. Pressly, Jr.

JBPJr:pmb

cc:   Bruce Lassman
      Law Clerk to The Honorable Charles R. Weiner
      United States Courthouse
      601 Market Street
      Philadelphia, Pennsylvania 19106

Mona Lisa Wallace
August 19, 2002
Page 4


bcc:    Ken Cook
        Kate Graham

ATTACHMENT 1

<u>Agner</u> cases in which no new information has been received

| | |
|---|---|
| Agner | Shepherd |
| Aldrich | Shive |
| Barbee | H. Shoe |
| Barnhardt | Shumaker |
| Benfield | Sloop |
| Burleson | J. Smith |
| Coleman | B. Smith |
| Daniels | Starnes |
| Eagle | Stirewalt |
| Faust | Tanner |
| Fonseca | Thomas |
| Gibbons | Tittle |
| Hargrove | Turman |
| L. Hendrickson | Wallace |
| Hodge | Warren |
| Holmes | Weldon |
| L. Holt | Wilhelm |
| N. Holt | Wise |
| Hunt | |
| Ivery | |
| Jackson | |
| Johns | |
| Kennedy | |
| Kitchen | |
| McDaniel | |
| Measmer | |
| Miller | |
| Morrison | |
| Nall | |
| W. Parker | |
| Paxton | |
| Powlas | |
| Reavis | |
| Redmon | |
| Reid | |
| Roberts | |
| Robertson | |
| Robinson | |
| Rogers | |
| Saine | |
| Seamon | |

ATTACHMENT 2

<u>Bost</u> cases in which we have received no new information

Crook
Freeze
T. Logan
Ostwalt
M. Parker
Phelps
Potts
Ridenhour
Sloan
Torrence

ATTACHMENT 3

Agner cases - new information received since 1999

1.      Allman.  2000 examination by Dr. Proctor in which he finds normal PFT's and 0% impairment along with radiology report from Dr. Dula of 3/4/00 films indicating a negative chest finding.

2.      Beeker.  1999 radiographic reports from Dr. Chiles and Dr. Bernstein indicating findings "consistent with" asbestosis. PFT's are normal.

3.      Bennett.  5/99 report from Dr. Curseen indicating radiographic findings of asbestos-related pleural changes and stating that Mr. Bennett is rated as a Class II impairment although the 1998 PFT's are normal.

4.      Boger.  "Medical History" form (which appears to be an attachment to discovery in references medical information in the 1999 and 2000 time periods, but we have never received any of these records. The last records we have are from 1998 or earlier. In the form there is the reference to an examination by Dr. Spain in 2000 in which he apparently found normal PFT's.

5.      T. Bond.  "Medical History" form which references radiology examinations in 1999, but we have never received these reports. The last records we have are from 1998. There is nothing referenced in the "Medical History" form to indicate any change from the normal PFT findings in 1998.

6.      M. Bonds.  1/99 independent medical examination from Dr. Allen Hayes done for purposes of workers compensation. Dr. Hayes reports the findings of normal parenchymal tissue on CT exam and mild obstructive disease on PFT.

7.      Bowles.  "Medical History" form which references 1999 medical examinations, but we have not received any of these reports. The last records we have are dated 1998. The form references an examination by Dr. Spangenthal of 7/99 in which he apparently concludes that he can find no evidence to suggest previous asbestos lung disease.

8.      Byrd.  2/99 independent medical examination by Dr. Young for purposes of workers compensation. Dr. Young states that the x-rays show mild asbestos-related changes and that the PFT's indicate mild obstructive changes. He concludes that there is no disability.

9.      Carriker.  7/99 independent medical examination by Dr. DiMeo for workers compensation commission. Dr. DiMeo states that the x-rays are negative; the CT indicates non-calcified pleural changes only; and the PFT's reflect mild  obstruction resulting from "reactive airways disease".

10.    Doby. 2/99 independent medical examination by Dr. Kelling for workers compensation. The CT reflects unilateral changes in the left lower lobe which could be an isolated area of asbestosis. PFT's normal except for mild reduction in the diffusing capacity.

11.    Elkins. "Medical History" form referencing 1999 and 2000 medical examinations, but we have not received any of these records. Our last records are from 1998. "Medical History" form indicates x-ray findings in 1999 from normal to 1/0.

12.    Ellis. "Medical History" form referencing 1999, 2000, and 2001 medical reports, but we have not received any of these records. Our last medical records are from 1998. The form refers to an examination by Dr. Kelling in 8/99 saying that it is impossible to say if Mr. Ellis has asbestosis and an examination by Dr. Hayes in 12/98 in which he apparently indicates that Mr. Ellis has a history of exposure without evidence of asbestos-related disease.

13.    Gobble- 4/99 independent medical examination for workers compensation by Dr. Bullard in which he find emphysema, COPD with an x-ray consistent with prior exposure to asbestos. We also received a "Medical History" form referencing other medical examinations in 1999 and 2000, but we have not received any of these medical records.

14.    Goodlett. 2/99 CT report indicating that the findings are "consistent with mild fibrosis" and possibly asbestosis. No new PFT's since 1997 which showed some obstruction.

15.    Goodman. 2/99 independent medical examination for workers compensation by Dr. Chin. The radiology is interpreted as a 1/0 and the physical examination and PFT's indicate severe obstruction and emphysema.

16.    Guy. 6/99 independent medical examination for workers compensation by Dr. DiMeo finding bullous changes and COPD.

17.    J.F. Holt. 5/99 independent medical examination for workers compensation by Dr. Spain. PFT's normal; "possible" x-ray changes consistent with asbestos exposure.

18.    Jennings. 7/99 independent medical examination for workers compensation by Dr. Spain. X-ray findings "consistent with early changes" of asbestosis; clinically stable from 3 years. The 1996 PFT's done by Dr. Kelling are normal.

19.    Lindsay. 3/99 independent medical examination for workers compensation by Dr. Chin - x-rays 0/1; PFT's normal volumes, reduced FEV1 which may be due to smoking; mild asbestosis.

20.    Menster. 2/99 independent medical examination for workers compensation by Dr. Hayes. He concludes that Mr. Menster has sarcodosis or silicosis with normal PFT's.

21.     <u>Seaford</u>. 3/99 independent medical examination for workers compensation by Dr. Chin. Conclusion: he does not have asbestosis.

22.     <u>D. Shoe</u>. 5/24/00 independent medical examination for workers compensation by Dr. Smart. No PFT's were performed. Dr. Smart looked at prior x-ray and CT reports and stated that these showed asbestos pleural changes and asbestosis.  Previous PFT's by Dr. Kelling in 1997 were normal.

23.     <u>F. Smith</u>.  8/7/2000 death certificate- metastatic carcinoma of the lung;. tobacco abuse.  Limited autopsy of 8/9/2000 - prominent intraparenchyma deposition of iron within histiocytes. Rare ferruginous boides are identified in the right middle lobe of the lung. Other sections show small linear aggregates of iron granules that are suspicious for fragmented ferruginous bodies, however these lack a distinct refractile core and are not definitive for being ferruginous bodies. Letter from Dr. Frank of Texas - based on review of records, Smith had asbestosis and asbestos related lung cancer.

24.     <u>Waddell</u>. 2/99 independent medical examination for workers compensation by Dr. Kremers.  Dr. Kremers finds a history of exposure and mild obstructive disease due to cigarette smoking. He concludes that the chances that the x-rays changes found are the result of asbestos exposure is about 5%.

25.     <u>Walker</u>.  9/16/2000 death certificate:  adenocarcinoma of unknown primary with metastasis to brain.  There is no report indicating any asbestos involvement.

ATTACHMENT 4

Bost cases - new information received since 1999

1.    Bost.  9/99 Dr. Lucas report on x-ray. Findings "consistent with" asbestosis and ILO classification of 1/0. No PFT's.

2.    Christenberry. "Medical History" form referencing medical examinations for 1998  and 1999, but we have not received these reports. Our records contain reports up 1996 only. The "Medical History" form indicates that some independent medical examinations have been done, but we haven't received these.

3.    Godbey. "Medical History" form referencing medical examinations for 1998-2000 time period, but we have not received any of these. Our records are only up to  1995 and involve treatment for some accident and a stroke. We have some x-ray reports from Dr. Dula in 1999 indicating a radiologic finding of asbestosis. We  have no other records.

4.    Granford. 7/99 independent medical examination for workers compensation by Dr. Hendler. X-rays show no pleural changes but some increased "interstitial predominance". PFT's show mild obstructive disorder and hyperinflation of lungs. Based on x-rays and history "consistent with asbestosis".

5.    D. Hodges. 7/99 independent medical examination for industrial commission by Dr.  Spain. Possible asbestos-induced pulmonary disease. PFTs show obstruction and chronic bronchitis pattern. Asks for CT before passing judgment on this one. Also Dr. DiMeo saw him in 6/99 and found bullous changes and COPD.

6.    S. Holt. 8/99 Dr. Kelling found CT "consistent with" asbestosis and PFT's indicating minimal obstructive disease and air trapping. B-reads from 8/99 are 1/1 by Segara and 1/0 by Holstein.

7.    Honeycutt. "Medical History" form referencing medical examinations for 1999 but we have not received any of these records. Our last records are from 1998. 1999 x-ray read as 1/0 by Dr. Eisenberg. No PFT's.

8.    Hutchins. 8/99 Dr. Credle independent medical examination for workers compensation. He notes a right pneumonectomy in 1996 for lung cancer. He notes emphysema and oxygen support for this problem. He says that chrysotile fibers were found in the pathology at the time of surgery and this leads him to say that smoking and asbestos contributed to her cancer. We have Dr. Dikman's report 1997 in which he says he found 46,554 chysotile fibers in bundles. We have asked for this pathology repeatedly.

9.    Knight. 1/98 Dr. Elnagger report. CT of 1997 "consistent with" asbestosis; PFT's are normal.

10.    Monroe. 12/98 independent medical examination for workers compensation by Dr. Hayes. He states that the CT shows no asbestosis or pleural abnormalities that are

characteristic of asbestos exposure. He find no evidence of asbestos-related disease. On pulmonary exam, he finds thoracic kyphosis, asthma and obesity which he states are causing the obstructive problems seen on PFT and causing a 10% impairment.

11.     Saleeby. 3/97 independent medical examination for workers compensation by Dr. Garner. He finds that the chest x-ray is "consistent with possible asbestos exposure" but that there are no pleural changes and no restrictive disease on PFT. His PFT's are in fact normal.

12.     Wilson. 10/22/98 death certificate. Death caused by gunshot wound to the back. The death certificate indicates that an autopsy was done, but we have no pathology report or copy of any autopsy.

13.     Winecoff. 9/14/98 death certificate. Death caused by acute cardiovascular respiratory arrest. On 9/15/98 the lungs were removed - no pleural adhesions or plaques were found. On 3/29/2000, Dr. Dikman submitted a report stating that 36,312 chrysotile and tremolite fibers in a ratio of 1:1 were found. While noting that the lack of high levels of asbestos could be related to the nature of chrysotile, he states that the findings support asbestosis.

*attachment 5*

# HAYNSWORTH, MARION, McKAY & GUÉRARD, L.L.P.
### ATTORNEYS AT LAW

1201 Main Street
Suite 2400
Post Office Drawer 7157
Columbia, South Carolina 29202
(803) 765-1818
Facsimile (803) 765-2399

75 Beattie Place
Two Insignia Financial Plaza — Eleventh Floor
Post Office Box 2048
Greenville, South Carolina 29602
(864) 240-3200
Facsimile (864) 240-3300
April 13, 1999

134 Meeting Street
Fourth Floor
Post Office Box 1119
Charleston, South Carolina 29402
(843) 722-7606
Facsimile (843) 724-8016

Reply to Greenville Office
Direct Dial: (864) 240-3277
Fax: (864) 240-3336
Internet Address: jbpressly@hmmg.com

Mr. Bruce Lassman
Law Clerk to The Honorable Charles R. Weiner
United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

Re:   Agner, et al. v. Fluor Daniel, Inc., et al.
      USDC-WDNC No. 3:98 CV220T
      Bost et al. v. Fluor Daniel, Inc.
      USDC-WDNC No. 3:98 CV 138 T

Dear Mr. Lassman:

I have reviewed the information provided by Wallace and Graham on the *Agner* group of plaintiffs. Wallace and Graham also provided information on the *Bost* group of plaintiffs, apparently in response to our motion to dismiss these claims. The *Bost* group will be dealt with in a separate letter.

Of the 85 claims in the *Agner* group, the mix consists of one malignancy and 84 asbestosis claims. There are no death cases. Of the 84 asbestosis claims, 52 have a 0% disability or normal pulmonary function tests. Seventeen of the 84 have some evidence of obstructive disease. Thirteen of the 84 have some indication from one of the physicians to whom the plaintiff was referred by Wallace and Graham of some restrictive component, although the same notes reflect normal lung volumes and spirometry. All are either currently working or are retired, apparently for reasons unrelated to asbestos (this is somewhat difficult to determine since much of the information regarding the basis for the disability in those cases in which a disability retirement was taken was not sent to me).

Wallace and Graham provided demands in these cases ranging from a low of $25,000 to a high of $75,000.

Mr. Bruce Lassman
Page 2
April 13, 1999

As I began my review, it became apparent that all of the plaintiffs had one thing in common, i.e., they were screened by Dr. Dula, a radiologist in the Salisbury area. His x-ray and CT interpretations of asbestosis and/or asbestos-related pleural "disease" are the common denominators in all of the claims. I asked Wallace and Graham to send me the original x-rays and CT scans in order for me to have them reviewed independently. Ms. Wallace indicated that the court had not instructed her to send this material and that she would not provide them to me.

The significance of the radiology in these cases is underscored by the fact that in most cases, the pulmonologist to whom the plaintiffs were subsequently sent relied upon the interpretations of Dr. Dula in reaching their opinions that asbestosis might exist despite normal pulmonary testing and physical examination.

It is my understanding that the x-rays and CT scans done in the course of this screening are in the possession of Wallace and Graham. It should not be a burden for Wallace and Graham to provide them to me for my review. Furthermore, such a review is needed, given the unique situation presented here, in order to evaluate the accuracy of these interpretations.

At our hearing on March 17, Ms. Wallace was asked to provide all information on other claims made on behalf of these plaintiffs. None of this material was provided. I am attaching what information I have found regarding other third party lawsuits initiated on behalf of the same *Agner* plaintiffs (*see* Attachment B). These actions assert claims against product manufacturers and distributors as well as this defendant. I am not aware of any other third party suits pending for any of the other plaintiffs although I note that several files indicate that Baron and Budd are involved. This raises the question whether there are any Texas actions pending for any of these other plaintiffs.

I have no information regarding pending or resolved workers compensation actions for asbestos-related illnesses brought by any of the plaintiffs in this action. Additionally, I have not received any information regarding disability claims made by certain of these plaintiffs as reflected in the files or claims made against bankrupt manufacturing defendants and/or voluntarily settling defendants such as Owens Corning. In view of the demands made on these cases, I need information about any and all such settlements and the claims pending. Specifically, I need the Johns Manville proof of claims forms and attachments submitted by any of these plaintiffs in order to evaluate the claims for my client.

Some of the information provided indicates that the plaintiffs' employer, Hoechst, performed its own annual examinations of these plaintiffs. Apparently, these examinations included breathing tests and chest x-rays. While I find reference to such

Mr. Bruce Lassman
Page 3
April 13, 1999

examinations, none of this material is contained in the information provided.  I believe that this information is available to counsel for plaintiffs, especially if workers compensation claims were filed, and I would like these to be provided to me as well.  It appears that about 38 of the plaintiffs are still working at Hoechst.

In certain cases there is specific medical information which was not provided that I need as well.  I have made a separate listing of these items by case involved (*see* Attachment A).

Mr. Graham called me about my review of these claims and Fluor Daniel's response to his demands.  We discussed the insurance coverage dispute between my client and its carrier, St. Paul Insurance Co., that is currently in litigation in Greenville County, South Carolina.  It is my understanding that Mr. Graham has also been in direct contact with St. Paul about this issue.

St. Paul is monitoring these proceedings and is interested in evaluating the merits of the claims, notwithstanding the coverage dispute.  I have kept St. Paul advised of my review of the information provided and informed them that I will be seeking additional information in order to properly evaluate the claims in the *Agner* group.  At this time, neither Fluor Daniel nor St. Paul will entertain discussions of demands in the range of $25,000 to $75,000 per case as submitted by Wallace and Graham.  After reviewing the additional information requested, I believe that Fluor Daniel and St. Paul they will be in a better position to evaluate what settlement contribution might be appropriate and discuss how such settlement amounts might be paid.

One of the items the court instructed Wallace and Graham to provide was information regarding the basis for the claims against Fluor Daniel.  In the information submitted, there is nothing that bears on this issue.  For the vast majority of the claimants involved, the exposure history provided through the medical records would indicate that any such exposure occurred as part of the plaintiff's normal duties as a Hoechst employee and involved the direct manipulation of asbestos containing products in that capacity.  Further, there is no indication as to why W.F. Gray is involved, nor do the work histories provided in these records indicate that W.F. Gray could be involved in most of these claims.  For example, one plaintiff, Alma Ivery, told her physician that she was exposed to asbestos because the pipes and machinery in her work area vibrated, and she believed that this caused the release of asbestos fibers into the air.  It is unclear how this would relate to any defendant sued in this action.

In summary, the following additional information is needed in order to complete an evaluation of these claims:

Mr. Bruce Lassman
Page 4
April 13, 1999

      1.     Dr. Dula's chest x-rays and CT scans.
      2.     Information on all other claims submitted or filed by each plaintiff as outlined above.
      3.     Hoechst medical records on each plaintiff.
      4.     Specific medical information on certain individual plaintiffs as outlined in Attachment A to this letter.
      5.     The factual basis for the claim against the Fluor Daniel defendants in each case.

Given the medical status of the claims involved, the fact that the majority are also plaintiffs in other pending third party litigation in MDL and Ohio state courts, and the fact that Wallace and Graham are also currently involved in discovery in 324 asbestos cases in South Carolina state court in which these defendants are also involved, I believe that proceeding with the further evaluation of the *Agner* claims as outlined in this letter is the most expeditious use of attorney time at this point and has the best chance of leading to meaningful settlement discussions.

Very truly yours,

HAYNWORTH, MARION, McKAY &
GUÉRARD, L.L.P.

James B. Pressly, Jr.

JBPJr:pmb

Enclosure

cc:    William M. Graham

ATTACHMENT A

1.   Agner          Information from railroad screening in 1985
2.   Byrd           Dr. Proctor report
3.   Daniels        X-rays and interpretations from 1/20/85
4.   Doby           B-reader's interpretation
5.   Ellis          Interpretation of 12/11/96 x-ray
6.   Fonesca        Dr. Wodeski's consult reports
7.   Goodlett       B-reader interpretation
8.   Goodman        Social Security Disability file
9.   Hendrickson    Dr. Curseen records
10.  Holmes         CT and interpretation of CT ordered by Dr. Alford 8/27/97
11.  Norman Holt    Dr. Gaziano's records and report of 1995,  x-rays of 11/94 and
                    interpretation by Dula.
12.  Betty Jackson  Dr. Curseen report and x-ray and CT  along with interpretations.
13.  Kepley         Disability claim file
14.  Menster        B-reader interpretation (this is a silicosis claim).
15.  Paxton         Disability claim file.
16.  Redmond        Pathology materials
17.  Ada Robertson       1990 Proctor records and Dr. Newman follow up on
                         biopsies, biopsy materials.
18.  Shive          7/20/93 x-ray and report of same done for Dr. Ward, other
                    radiology reports from 1990 forward.
19.  F. Smith       Old work up for lung disease referred to in records.
20.  R. Smith       Dr. Burke's records.
21.  Stirewalt      Dr. Burke's records.
22.  Waddell        Disability claim file.
23.  Wilhelm        Disability claim file.
24.  Wise           Dr. Curseen records and report.



8/18/02 2:09 PM

| PLAINTIFF NAME | AGNER CASE MDL 875 W.D.N.C. | BOST CASE MDL 875 W.D.N.C. | OTHER ACTION CAPTION | STATE |
|---|---|---|---|---|
| Adkins, Jean | | | Swink et al v. A-Best Products Company et al *and* Adkins et al v. AC&S, Inc. *[note she filed only consortium claim in this action]* | Ohio<br><br>MDL/NC |
| Agner, Vonnie Kessler | X | | Clement et al vs A-Best Products Company et al **AND** Norfolk Southern FELA case   (2 separate actions in Ohio) | Ohio<br><br>Ohio |
| Allman, Cecil Ray | X | | Clement et al vs A-Best Products Company et al | Ohio |
| Artz, John M. | | | Artz et al vs. AC&S, Inc. **AND** Norfolk Southern FELA case | MDL/M.D.N.C.<br><br>Ohio |
| Barbee, Joe E. | X | | Lawing et al vs. AC&S, Inc. | MDL/M.D.N.C |
| Barnhart, Thomas R. | X | | Cross et al vs. AC&S, Inc., et al. | MDL/W.D.N.C. |
| Beeker, Terry Wayne | X | | Clement et al vs A-Best Products Company et al | Ohio |
| Bennett, Michael Mitchell | X | | Coleman et al vs. AC&S, Inc. | MDL/M.D.N.C. |
| Bishop, Thomas Albert | | | Bishop v. A-Best Products **AND** Bishop v. A-Best Products | Ohio<br>Ohio *2 actions* |
| Boger, John Robert | X | | Clement et al vs A-Best Products Company et al | Ohio |
| Bond, Terry Julian | X | | Clement et al vs A-Best Products Company et al | Ohio |
| Bonds, Merle Dean | X | | Hutchins et al vs. A-Best Products Company et al | Ohio |
| Boone, Henry Eugene | | | Boone, et al vs. AC&S, Inc. **AND** Norfolk Southern FELA case | MDL/M.D.N.C.<br><br>Ohio |
| Bost, Robert Franklin | | X | Clement et al vs A-Best Products Company et al | Ohio |
| Bowles, Larry Gilbert | X | | Clement et al vs A-Best Products Company et al | Ohio |
| Brown, James J. | | | Boone, et al. vs. AC&S, Inc. **AND** Norfolk Southern FELA case | MDL/M.D.N.C.<br><br>Ohio |
| Brown, Mary T. | | | Brown as Executor of Elbert Tarkington v. AC&S, Inc. **AND** ? | Fulton Co., GA<br><br>MDL/E.D.N.C. |
| Burleson, Donald Rhyne | X | | Clement et al vs A-Best Products Company et al | Ohio |

| PLAINTIFF NAME | AGNER CASE MDL 875 W.D.N.C. | BOST CASE MDL 875 W.D.N.C. | OTHER ACTION CAPTION | STATE |
|---|---|---|---|---|
| Byrd, Guy Richard | X | | Hutchins et al vs. A-Best Products Company et al | Ohio |
| Carriker, John Franklin | X | | Clement et al vs A-Best Products Company et al | Ohio |
| Christenberry, John | | X | Christenberry v. AC&S, Inc. et al | MDL/W.D.N.C. |
| Coleman, James L. | X | | Coleman, et al vs. AC&S, Inc. | MDL/M.D.N.C. |
| Crook, Arnold | | X | Boone et al vs. AC&S, Inc. | MDL/M.D.N.C. |
| Daniels, Charles Thomas,  Sr. | X | | Clement et al vs A-Best Products Company et al | Ohio |
| Doby, Carl Coleman | X | | Saine et al vs. AC&S, Inc. | MDL/M.D.N.C. |
| Eagle, Leona Howard | X | | Clement et al vs A-Best Products Company et al | Ohio |
| Elkins, Danny Lee | X | | Hutchins et al vs. A-Best Products Company et al | Ohio |
| Ellis Joe L. | X | | Ellis v. AC&S, Inc. | MDL/M.D.N.C. |
| Faust, Martha | X | | Hutchins et al vs. A-Best Products Company et al | Ohio |
| Fonseca, Edward Roy, Sr. | X | | Clement et al vs A-Best Products Company et al | Ohio |
| Freeze, Jason Eugene | | X | Clement et al vs A-Best Products Company et al | Ohio |
| Frost, Arthur W. | | | Frost et al. vs. AC&S, Inc. AND Norfolk Southern FELA case | MDL/M.D.N.C. Ohio |
| Gibbons, Gary Wayne | X | | Clement et al vs A-Best Products Company et al | Ohio |
| Gobble, Irvin Carroll | X | | Clement et al vs A-Best Products Company et al | Ohio |
| Godbey, Robert Lewis | | X | Clement et al vs A-Best Products Company et al | Ohio |
| Goodlett, Billy Franklin | X | | Hutchins et al vs. A-Best Products Company et al | Ohio |
| Goodman, Clyde R. | X | | Hutchins et al vs. A-Best Products Company et al | Ohio |
| Granford, Moree Glenn | | X | ? v. A-Best Products Company | Ohio |
| Guy, Elsie May | X | | Clement et al vs A-Best Products Company et al | Ohio |
| Hargrove, Cornelius | X | | Clement et al vs A-Best Products Company et al | Ohio |
| Heath, Francis Calvin | | | Elium et al v. AC&S, Inc. AND Norfolk Southern FELA case | MDL/M.D.N.C. Ohio |
| Henderson, William G. | | | Henderson et al v. A-Best Products Company | Ohio |
| Hodges, David T. | | X | Logan et al vs. AC&S, Inc. | MDL/M.D.N.C. |
| Holmes, Fred A. | X | | ? v. A-Best Products Company | Ohio |
| Holshouser, Floyd G. | | | Boone et al vs. AC&S, Inc. AND Norfolk Southern FELA case | MDL/M.D.N.C. Ohio |
| Holt, J. Francis | X | | Petrea vs. AC&S, Inc. | MDL/M.D.N.C. |

| PLAINTIFF NAME | AGNER CASE MDL 875 W.D.N.C. | BOST CASE MDL 875 W.D.N.C. | OTHER ACTION CAPTION | STATE |
|---|---|---|---|---|
| Holt, Leonard Thomas | X | | Hawkins et al vs. A-Best Products Company et al | Ohio |
| Holt, Norman | X | | Campbell et al vs. AC&S, Inc. **AND** Petrea et al v. AC&S, Inc. | MDL/M.D.N.C. MDL/M.D.N.C. |
| Holt, Sallie E. | | X | Hawkins et al vs. A-Best Products Company et al | Ohio |
| Honeycut, William Morris | | X | Hawkins et al vs. A-Best Products Company et al | Ohio |
| Hunt, Arthur W. | X | | Hutchins et al vs. A-Best Products Company et al | Ohio |
| Hutchins, Dorothy | | X | Hutchins et al vs. A-Best Products Company et al | Ohio |
| Ivery, Alma | X | | Bishop v. A-Best | Ohio |
| Jackson, Betty Jean Blakeney | X | | Fleming et al vs. A-Best Products Company et al | Ohio |
| Jennings, William C. | X | | Goodman et al v. AC&S | M.D.N.C. |
| Johns, Bobby H. | X | | Fleming et al vs. A-Best Products Company et al | Ohio |
| Jones, Charles Edwin | | | Bishop v. A-Best  **AND** Triplet v. AC&T *possibly* . | Ohio MDL/W.D.N.C. |
| Kennedy, John | X | | Hutchins et al vs. A-Best Products Company et al **AND** Norfolk Southern FELA case | Ohio Ohio |
| Kepley, Ronald | X | | Coleman, et al. v. AC&S, Inc. | MDL/M.D.N.C. |
| King, William W. | | | Bishop, et al. v. A-Best Products Company et al **AND** King v. AC&S, Inc. et al **AND** Bishop v. A-Best ? | Ohio Greenville Co. Ohio |
| Kitchen, Jimmy L. | X | | Allen v. AC&S | M.D.N.C. |
| Knight, James Talmadge | | X | Hawkins et al vs. A-Best Products Company et al | Ohio |
| Lindsay, Donald E. | X | | Hutchins et al vs. A-Best Products Company et al | Ohio |
| Logan, Thomas G. | | X | Lawing et al vs. AC&S, Inc. **AND** Norfolk Southern FELA case | MDL/M.D.N.C. Ohio |
| Lowery, Martin L. | | | Boone, et al. vs. AC&S, Inc. **AND** Norfolk Southern FELA case | MDL/M.D.N.C. Ohio |
| Lynn, Joseph | | | Artz et al v. AC&S, Inc. **AND** Norfolk Southern FELA case | MDL/M.D.N.C. Ohio |
| McDaniel, Charles Monroe | X | | Hawkins et al vs. A-Best Products Company et al | Ohio |
| Measmer, Kenneth William | X | | Fleming et al vs. A-Best Products Company et al | Ohio |
| Menster, Charlie Lee | X | | Hawkins et al vs. A-Best Products Company et al | Ohio |

| PLAINTIFF NAME | AGNER CASE MDL 875 W.D.N.C. | BOST CASE MDL 875 W.D.N.C. | OTHER ACTION CAPTION | STATE |
|---|---|---|---|---|
| Miller, Clyde Houston | X | | Hawkins et al vs. A-Best Products Company et al AND | Ohio |
| | | | Norfolk Southern FELA case | Ohio |
| Miller, George R. | | | Boone, et al. v. AC&S, Inc. AND | MDL/M.D.N.C. |
| | | | Norfolk Southern FELA Case | Ohio |
| Miller, Hubert Eugene | | | Brandon, et al vs. AC&S, Inc. AND | MDL/W.D.N.C. |
| | | | Craft, et al vs. AC&S, Inc. AND | MDL/W.D.N.C. |
| | | | ?, et al vs. AC&S, Inc. | Ohio |
| Montgomery, Charles F. | | | Boone, et al. vs. AC&S, Inc. AND | MDL/M.D.N.C. |
| | | | Norfolk Southern FELA case | Ohio |
| Morrison, Bobby Lewis, Sr. | X | | Hawkins et al vs. A-Best Products Company et al | Ohio |
| Morrow, Thomas Lee | | | ? v. A-Best Products Company | Ohio |
| Nall, Charles Ray | X | | Hawkins et al vs. A-Best Products Company et al | Ohio |
| Ostwalt, Mildred Smith | | X | Hawkins et al vs. A-Best Products Company et al | Ohio |
| Owens, Charles A. Jr. | | | Myers et al. vs. A-Best Products Company, et al. and | Ohio |
| | | | Owens v. AC&S, Inc. | MDL/D.S.C. |
| Owens, Donald Seborn | | | Owens v. AC&S | Gvl. Co. SC and |
| | | | ? v. A-Best Products Company | Ohio |
| Parker, Martha B. | | X | Hutchins et al vs. A-Best Products Company et al AND | Ohio |
| | | | Nash et al vs. AC&S, Inc. | MDL/W.D.N.C. |
| Phelps, John Alfred | | X | Hawkins et al vs. A-Best Products Company et al | Ohio |
| Potts, Homer Wayne | | X | Hawkins et al vs. A-Best Products Company et al | Ohio |
| Reavis, Billy Joe | X | | Hawkins et al vs. A-Best Products Company et al | Ohio |
| Redmon, James Alfred | X | | Clement et al vs A-Best Products Company et al | Ohio |
| Reid, Jerry Lewis | X | | Parnell et al vs. A-Best Products Company et al | Ohio |
| Ridenhour, James W. | | | Wells et al vs. AC&S, Inc. AND | MDL/W.D.N.C. |
| | | | ? et al vs. A-Best Products Company et al. | Ohio |
| Ridenhour, John W. | | X | Hutchins et al vs. A-Best Products Company et al | Ohio |
| Roberts, Gladys C. | X | | Hawkins et al vs. A-Best Products Company et al | Ohio |

| PLAINTIFF NAME | AGNER CASE MDL 875 W.D.N.C. | BOST CASE MDL 875 W.D.N.C. | OTHER ACTION CAPTION | STATE |
|---|---|---|---|---|
| Robertson, Ada Mae | X | | Hawkins et al vs. A-Best Products Company et al | Ohio |
| Robinson, Theola | X | | Hutchins et al vs. A-Best Products Company et al | Ohio |
| Rogers, Peggy Gurganus | X | | Hawkins et al vs. A-Best Products Company et al | Ohio |
| Saine, Henry G. | X | | Saine, et al. vs. AC&S, Inc., | MDL/M.D.N.C. |
| Saulters, Henry | | | Boone, et al. vs. AC&S, Inc. AND Norfolk Southern FELA case | MDL/M.D.N.C. Ohio |
| Seaford, Glenn C. | X | | Saine, et al. vs. AC&S, Inc. | MDL/M.D.N.C. |
| Seamon, Ernest Thomas | X | | Hawkins et al vs. A-Best Products Company et al | Ohio |
| Shepherd, Ernest R. | X | | Hawkins et al vs. A-Best Products Company et al | Ohio |
| Shive, Cory Gene | X | | Hawkins et al vs. A-Best Products Company et al | Ohio |
| Shoe, Donald C., Sr. | X | | Hawkins et al vs. A-Best Products Company et al | Ohio |
| Shoe, Howard L. | X | | Foxx et al vs. AC&S, Inc. | MDL/M.D.N.C. |
| Shumaker, Kermit | X | | Coleman, et al vs. AC&S, Inc. | MDL/M.D.N.C. |
| Sloan, James Edward, Sr. | | X | Hawkins et al vs. A-Best Products Company et al | Ohio |
| Sloop, Franklin Delano | X | | Hawkins et al vs. A-Best Products Company et al | Ohio |
| Smith, Bill | X | | Hutchins et al vs. A-Best Products Company et al | Ohio |
| Smith, Franklin, Jr. | X | | Hawkins et al vs. A-Best Products Company et al | Ohio |
| Smith, John H. | X | | Saine, et al vs. AC&S, Inc. | MDL/M.D.N.C. |
| Smith, Rufus Fredrick | X | | Hawkins et al vs. A-Best Products Company et al | Ohio |
| Starnes, Bobby Eugene | X | | Starnes et al vs. A-Best Products Company et al | Ohio |
| Stirewalt, Steven C. | X | | Starnes et al vs. A-Best Products Company et al | Ohio |
| Stricker, William T. | | | Gibson, et al. v. AC&S, Inc AND Stricker v. AC&S, et al. | MDL/D.S.C. Greenville Co. |
| Tanner, William E., Sr. | X | | Baley et al vs. AC&S, Inc. | MDL/M.D.N.C. |
| Thomas, Ronald Fredrick | X | | Starnes et al vs. A-Best Products Company et al AND Norfolk Southern FELA case | Ohio Ohio |
| Tittle, Albert Lee | X | | Starnes et al vs. A-Best Products Company et al | Ohio |
| Turner, Clinton D. | X | | Bailey et al vs. AC&S, Inc. | MDL/M.D.N.C. |
| Walker, James Alexander | X | | ? v. A-Best Products Company | Ohio |

| PLAINTIFF NAME | AGNER CASE MDL 875 W.D.N.C. | BOST CASE MDL 875 W.D.N.C. | OTHER ACTION CAPTION | STATE |
|---|---|---|---|---|
| Wallace, William L. | X | | Berry, et al vs. AC&S, Inc. | MDL/W.D.N.C. |
| Warren, Danny Gale | X | | Starnes et al vs. A-Best Products Company et al | Ohio |
| Weldon, Charles Odell | X | | Norfolk Southern FELA case | Ohio |
| Wilhelm, Miron Lee | X | | Starnes et al vs. A-Best Products Company et al | Ohio |
| Wilson, David, *deceased, by and through Leon Wilson, Jr.* | | X *only Leon has action in Bost* | Hutchins et al vs. A-Best Products Company et al | Ohio |
| Winecoff, Robert Tinnie, Jr. | | X | Starnes et al vs. A-Best Products Company et al | Ohio |
| Wise, Walter E. | X | | Coleman et al vs. AC&S, Inc. | MDL/M.D.N.C. |

64031

J

GREENVILLE    CHARLESTON    COLUMBIA    FLORENCE

# Haynsworth
# Sinkler Boyd, P.A.

ATTORNEYS AND COUNSELORS AT LAW

JAMES B. PRESSLY, JR.
DIRECT DIAL NUMBER 864-240-3277
EMAIL jpressly@hsblawfirm.com

75 BEATTIE PLACE, 11TH FLOOR (29601-2119)
POST OFFICE BOX 2048 (29602-2048)
GREENVILLE, SOUTH CAROLINA
TELEPHONE  864.240.3200
FACSIMILE  864.240.3300
WEBSITE  WWW.HSBLAWFIRM.COM

September 3, 2002

Mona Lisa Wallace
Wallace and Graham
525 N. Main Street
Salisbury, NC 28144

      Re:    Agner, et al. v. Fluor Daniel, Inc., et al.
              USDC-WDNC No. 3:98 CV220T
              Bost et al. v. Fluor Daniel, Inc.
              USDC-WDNC No. 3:98 CV 138 T

Dear Mona Lisa:

      This letter is in response to your letters of August 19, 20, 21 and 27 and will supplement my letters of the same time period that crossed in the mail with yours.

      In Attachment A to your letter of August 19, you outlined the additional information which you provided and specified the information you did not have.  In reviewing this information, I would offer the following observations:

      1.     Agner information from railroad screening 1985:  What you provided is notes from an unidentified doctor stating that Mr. Agner had been sent for screening for asbestosis. You had already provided this information in the past.  What we need are the results of the railroad screening for asbestosis in 1985.

      2.     Byrd report from Dr. Proctor:  We already had the January 20, 1998 letter that you sent.  We don't have the actual report from Dr. Proctor that would have been sent along with his transmittal letter.  Do you have his actual report?

      3.     Holmes CT's and interpretations ordered by Dr. Alford on August 27, 1997:  You had previously provided us with a copy of Dr. Alford's letter to Dr. Foushee in which Dr. Alford indicates that he ordered a CT scan of the lungs in order to look for characteristic findings of asbestosis.  What we are seeking is the CT scan and the interpretation of that CT scan.

      4.     Menster B-reader interpretation on his silicosis claim:  You provided us with Dr. Johnson's 1998 radiology reports which we already had.  We are looking for the information on Mr. Menster's silicosis claim which clearly has a bearing on his claim here.

Mona Lisa Wallace
September 3, 2002
Page 2

     5.     Kepley, Waddell, and Wilhelm Social Security disability records: You have indicated that you are not in possession of these materials. We do not have authorizations for the release of these files. Are you requesting them? If not, will you please provide us with authorizations so that we can request them?

     6.     Pathology in Ridenhour, Redmond, Hutchins, Winecoff, F. Smith, Walker and Wilson. We still have not received any pathology on any of your cases. You previously advised that the Redmond pathology was with your expert. Has it now been returned to you? Where is the other pathology? Are you going to provide it? If not, are you going to provide us with an authorization and indication of the present location of the pathology so that we can get it ourselves?

     7.     Various medical reports and information which you indicate are not in your possession: The following is the list of plaintiffs which fall into this category from Attachment A to your letter of August 19:

| | |
|---|---|
| Daniels | Robertson |
| Doby | Shive |
| Ellis | Smith, R. |
| Fonseca | Stirewalt |
| Holt, Norman | Waddell |
| Jackson | Wilhelm |
| Redmon | |

We have old authorization forms for some of these plaintiffs but will need your permission to change the dates on these in order to attempt to secure the missing information. Will you agree to let us change the dates on the forms in order to attempt to secure this missing information? Additionally, we have no authorizations in the following: Goodman, Redmond, Robertson, and R. Smith. Will you provide us with authorizations in these cases?

     8.     In our telephone conversation with Mr. Lassman on May 7, 1999, you indicated that you could not provide us with the actual x-rays and CT scans because the defense attorneys working on the workers compensation cases had them. In your August 2001 letters, you indicate that you do not have possession of the x-rays and CT scans. Have they not yet been returned? We have asked for the actual films on several occasions. If they are not in your possession at this time, we need to know where they are. With appropriate authorizations, we can proceed to collect them if you are unable to do so. In connection with some of your other cases, we have been informed by Dr. Dula that he does not keep the films. He has indicated that he gave them to you. Is this the case with these plaintiffs?

     Attached to your letter of August 19, you listed the 75 plaintiffs who also have cases pending in the state courts of Ohio. You did not indicate how many plaintiffs have another case

Mona Lisa Wallace
September 3, 2002
Page 3

filed in the federal courts of North Carolina.  In my letter of August 19, I attached the list we had
of cases which were filed as separate cases in federal court as well (*see* Attachment 6 to my letter
of August 19).  Have the actions in federal court been resolved?

Your Attachment E to your letter of August 19 lists various plaintiffs and provides an
impairment rating column.  I have tried to match up this list and the impairment ratings with
materials provided to us.  In many cases, the information we have does not match the impairment
"class" listed in your attachment.  For example, you have Mr. Agner listed as a "Class III"
impairment and our file information indicates a "no disability" finding by Dr. Dalto in 1999; you
have Mr. Freeze listed as a "Class II" impairment and our file information indicates that Dr.
Proctor rated Mr. Freeze as a "Class I" - 0% impairment; your list indicates that Ms. Winecoff is
a "Class IV" and our file information has no rating information at all.  Without going through
each individual file, it appears you may have some information in these cases which we have not
seen, or the classification ascribed to certain plaintiffs is wrong.  Additionally, many of the
ratings cited are due to obstructive disease.  Are you claiming that the obstructive disease found
in these cases is due to asbestos exposure or asbestosis?  The medical reports do not indicate that
this is the case.

I am enclosing the requested settlement offers by individual plaintiff as requested (*see*
Attachment 1).  These were done prior to receiving the additional IME information you provided
on August 19.  While most of those IME's indicated unequivocally that there is no asbestos-
related disease present, I have left the offers are they were.  I am also attaching a summary of
those IME's to indicate these findings (*see* Attachment 2).

I believe that the amounts offered are good faith representations of settlement amounts
taken by your firm in similar cases against product manufacturers in similar cases.  Your current
minimum demand of $25,000 is more than you have settled mesothelioma cases with product
manufacturers in the past.

If you still believe that these settlement amounts are inadequate, I suggest that the
quickest way for me to get the additional information you have which might provide a basis for
re-evaluation is to have my legal assistant, Pauline Brown, come to Salisbury.  She can meet
with Ms. Ford and match up what medical materials we need, determine where the pathology
and radiology is located, arrange to secure these materials for our evaluation, and obtain
appropriate authorizations to collect the other material discussed in this letter.  Once they have
met and reviewed the file materials, they can provide us both with a complete list of the materials
currently available and the steps being taken to obtain the missing information.  This can include
the Ridenhour, Winecoff, and F. Smith information referred to in your letter.

Mona Lisa Wallace
September 3, 2002
Page 4

Very truly yours,

HAYNSWORTH SINKLER BOYD, P.A.

James B. Pressly, Jr.

JBPJr:pmb

cc:   Bruce Lassman
       Law Clerk to The Honorable Charles R. Weiner
       United States Courthouse
       601 Market Street
       Philadelphia, Pennsylvania 19106

Mona Lisa Wallace
September 3, 2002
Page 5


bcc:    Ken Cook
        Kate Graham

*attachment*

| PLAINTIFF NAME | AGNER CASE MDL 875 W.D.N.C. | BOST CASE MDL 875 W.D.N.C. | 5/12/99 SETTLEMENT OFFER ($21,250) | 8/20/02 SETTLEMENT OFFER ($33,800) |
|---|---|---|---|---|
| Agner, Vonnie Kessler | X | | 200.00 | 350.00 |
| Aldrich, Nottie | X | | 280.00 | 350.00 |
| Allman, Cecil Ray | X | | 250.00 | 250.00 |
| Barbee, Joe E. | X | | 250.00 | 300.00 |
| Barnhart, Thomas R. | X | | 250.00 | 350.00 |
| Beeker, Terry Wayne | X | | 250.00 | 350.00 |
| Bennett, Michael Mitchell | X | | 200.00 | 350.00 |
| Boger, John Robert | X | | 350.00 | 350.00 |
| Bond, Terry Julian | X | | 250.00 | 350.00 |
| Bonds, Merle Dean | X | | 250.00 | 350.00 |
| Bost, Robert Franklin | | X | | 350.00 |
| Bowles, Larry Gilbert | X | | 250.00 | 250.00 |
| Burleson, Donald Rhyne | X | | 250.00 | 350.00 |
| Byrd, Guy Richard | X | | 250.00 | 350.00 |
| Carriker, John Franklin | X | | 250.00 | 350.00 |
| Christenberry, John | | X | | 300.00 |
| Coleman, James L. | X | | 250.00 | 300.00 |
| Crook, Arnold | | X | | 300.00 |
| Daniels, Charles Thomas,  Sr. | X | | 280.00 | 250.00 |
| Doby, Carl Coleman | X | | 280.00 | 350.00 |
| Eagle, Leona Howard | X | | 250.00 | 300.00 |
| Elkins, Danny Lee | X | | 250.00 | 250.00 |
| Ellis Joe L. | X | | 250.00 | 250.00 |
| Faust, Martha | X | | 250.00 | 350.00 |
| Fonseca, Edward Roy, Sr. | X | | 250.00 | 300.00 |
| Freeze, Jason Eugene | | X | | 300.00 |
| Gibbons, Gary Wayne | X | | 250.00 | 250.00 |
| Gobble, Irvin Carroll | X | | 250.00 | 300.00 |
| Godbey, Robert Lewis | | X | | 250.00 |
| Goodlett, Billy Franklin | X | | 200.00 | 250.00 |
| Goodman, Clyde R. | X | | 300.00 | 300.00 |
| Granford, Moree Glenn | | X | | 300.00 |
| Guy, Elsie May | X | | 200.00 | 350.00 |
| Hargrove, Cornelius | X | | 250.00 | 250.00 |
| Hendrickson, Larry W. | X | | 250.00 | 300.00 |
| Hodge, Johan August | X | | 250.00 | 350.00 |
| Hodges, David T. | | X | | 350.00 |
| Holmes, Fred A. | X | | 250.00 | 250.00 |
| Holt, J. Francis | X | | 200.00 | 250.00 |
| Holt, Leonard Thomas | X | | 250.00 | 250.00 |
| Holt, Norman | X | | 250.00 | 350.00 |
| Holt, Sallie E. | | X | | 350.00 |
| Honeycutt, William Morris | | X | | 250.00 |
| Hunt, Arthur W. | X | | 250.00 | 300.00 |
| Hutchins, Dorothy | | X | | 550.00 |
| Ivery, Alma | X | | 200.00 | 300.00 |
| Jackson, Betty Jean Blakeney | X | | 250.00 | 300.00 |
| Jennings, William C. | X | | 250.00 | 350.00 |
| Johns, Bobby H. | X | | 250.00 | 350.00 |

| PLAINTIFF NAME | AGNER CASE MDL 875 W.D.N.C. | BOST CASE MDL 875 W.D.N.C. | 5/12/99 SETTLEMENT OFFER ($21,250) | 8/20/02 SETTLEMENT OFFER ($33,800) |
|---|---|---|---|---|
| Kennedy, John | X | | 300.00 | 350.00 |
| Kepley, Ronald | X | | 250.00 | 250.00 |
| Kitchen, Jimmy L. | X | | 200.00 | 300.00 |
| Knight, James Talmadge | | X | | 350.00 |
| Lindsay, Donald E. | X | | 250.00 | 350.00 |
| Logan, Thomas G. | | X | | 300.00 |
| McDaniel, Charles Monroe | X | | 250.00 | 350.00 |
| Measmer, Kenneth William | X | | 250.00 | 300.00 |
| Menster, Charlie Lee | X | | 250.00 | 250.00 |
| Miller, Clyde Houston | X | | 250.00 | 350.00 |
| Monroe, Edward H. | | X | | 300.00 |
| Morrison, Bobby Lewis, Sr. | X | | 250.00 | 300.00 |
| Nall, Charles Ray | X | | 200.00 | 300.00 |
| Ostwalt, Mildred Smith | | X | | 300.00 |
| Parker, Martha B. | | X | | 300.00 |
| Parker, William H. | X | | 250.00 | 300.00 |
| Paxton, Shirley R. | X | | 250.00 | 300.00 |
| Phelps, John Alfred | | X | | 300.00 |
| Potts, Homer Wayne | | X | | 250.00 |
| Powlas, Joe M. | X | | 250.00 | 250.00 |
| Reavis, Billy Joe | X | | 250.00 | 300.00 |
| Redmon, James Alfred | X | | 400.00 | 550.00 |
| Reid, Jerry Lewis | X | | 250.00 | 350.00 |
| Ridenhour, John W. | | X | | 250.00 |
| Roberts, Gladys C. | X | | 250.00 | 350.00 |
| Robertson, Ada Mae | X | | 300.00 | 350.00 |
| Robinson, Theola | X | | 200.00 | 250.00 |
| Rogers, Peggy Gurganus | X | | 200.00 | 300.00 |
| Saine, Henry G. | X | | 200.00 | 250.00 |
| Saleeby, Maurice | | X | | 250.00 |
| Seaford, Glenn C. | X | | 300.00 | 300.00 |
| Seamon, Ernest Thomas | X | | 200.00 | 250.00 |
| Shepherd, Ernest R. | X | | 250.00 | 250.00 |
| Shive, Cory Gene | X | | 250.00 | 300.00 |
| Shoe, Donald C., Sr. | X | | 250.00 | 300.00 |
| Shoe, Howard L. | X | | 250.00 | 300.00 |
| Shumaker, Kermit | X | | 250.00 | 300.00 |
| Sloan, James Edward, Sr. | | X | | 350.00 |
| Sloop, Franklin Delano | X | | 250.00 | 300.00 |
| Smith, Bill | X | | 280.00 | 250.00 |
| Smith, Franklin, Jr. | X | | 280.00 | 550.00 |
| Smith, John H. | X | | 250.00 | 300.00 |
| Smith, Rufus Fredrick | X | | 250.00 | 250.00 |
| Starnes, Bobby Eugene | X | | 250.00 | 350.00 |
| Stirewalt, Steven C. | X | | 250.00 | 300.00 |
| Tanner, William E., Sr. | X | | 250.00 | 300.00 |
| Thomas, Ronald Fredrick | X | | 250.00 | 300.00 |
| Tittle, Albert Lee | X | | 250.00 | 300.00 |
| Torrence, Wilbert Sr. | | X | | 250.00 |
| Turner, Clinton D. | X | | 250.00 | 350.00 |

| PLAINTIFF NAME | AGNER CASE MDL 875 W.D.N.C. | BOST CASE MDL 875 W.D.N.C. | 5/12/99 SETTLEMENT OFFER ($21,250) | 8/20/02 SETTLEMENT OFFER ($33,800) |
|---|---|---|---|---|
| Waddell, Jasper J. | X | | 250.00 | 350.00 |
| Walker, James Alexander | X | | 250.00 | 300.00 |
| Wallace, William L. | X | | 250.00 | 300.00 |
| Warren, Danny Gale | X | | 250.00 | 300.00 |
| Weldon, Charles Odell | X | | 250.00 | 350.00 |
| Wilhelm, Miron Lee | X | | 250.00 | 350.00 |
| Wilson, Leon, Jr. | | X | | 250.00 |
| Winecoff, Robert Tinnie, Jr. | | X | | 550.00 |
| Wise, Walter E. | X | | 250.00 | 300.00 |
| | | | | $33,800.00 |
| | | | | |

ATTACHMENT NO. 2
AGNER/BOST
SUMMARY OF IME'S RECEIVED 8/20/02

| Information requested | Information received |
|---|---|
| Agner WC report | IME - 6/16/99 - Dr. Dalto: My final opinion is that this gentleman has unequivocal positive history for asbestos exposure and unequivocal chest CT that shows classic calcified pleural plaques establishing asbestos exposure and has an equivocal chest CT scan for interstitial lung disease that is compatible with but not diagnostic for asbestosis. It is my opinion that he has no pulmonary disability secondary to the asbestos exposure. (NOTE: Agner has a long history of RR work and exposure there) |
| Aldrich WC report | IME - 1/28/00 - Dr. Young Dr. Young apologizes for "very subjective" nature of the report. He says there may be some asbestos changes on x-ray and these may also be changes of obesity and/or pneumonias. Problems of shallow inspiration, etc. Obesity and inadequate effort also effect PFT results in this case. |
| Bowles WC report | IME 6/30/99 Spangenthall: No evidence of obstructive or restrictive lung disease either on special investigation or examination. CXR clear and no evidence of asbestosis or pleural thickening or calcification |
| Daniels WC report | IME - 7/12/99 - Dr. Rostand I can identify no evidence of asbestos-related disease of the lung and/or pleura. Mr. Daniel's sole physical impairment is on the basis of his chronic obstructive pulmonary disease secondary to his long-standing history of cigarette smoking. |
| Elkins WC report | IME - 7/12/99 - Dr. Rostand I can find no evidence to support a clinical diagnosis of asbestosis-related disease of the lung and/or pleura. 0% respiratory impairment. Extrinsic restrictive ventilatory defect on the basis of his obesity. |
| Ellis WC report | IME - 5/21/99 - Dr. Kelling Although this patient has a history of exposure to asbestos, there is no evidence from his CT scan of the chest of asbestosis or asbestos-related pleural disease. |
| Faust WC report | IME - 4/13/99 - Dr. Khan Based on her radiologic studies, she definitely has an exposure to asbestos which is at best mild. She has, however, normal PFT and does not show any significant desaturation with exercise. |
| Gibbons WC report | IME - 8/29/99 - Dr. Elnaggar I see no evidence of asbestosis or asbestos-related pleural disease in this gentleman. |
| Goodlett WC report | IME - 5/27/99 - Dr. DiMeo I do not feel there is any substantive evidence to support a diagnosis of asbestos related lung disease. No disability. |

| | |
|---|---|
| Goodman WC report | IME 6/14/99 Spangenthall:<br>CXR = minimal increased interstitial lung markings which could be pulmonary fibrosis (CT scan 1997). Major problem = COPD with marked degree of air trapping. Does not have chronic lung disease. |
| Hargrove WC report | IME - 6/10/99 - Dr. DiMeo<br>Addendum to original note of 5/20/99 - WHERE IS THIS??<br>No real conclusion made. This is a write up of notes on other people's records and his actual review of the x-rays which he says show "nothing to suggest asbestos related lung disease." |
| Holmes WC report | IME - 6/22/99 and 7/1/99 - Dr. James Jones<br>7/1/99 review of CT - no definitive evidence of asbestos. Findings are non-specific. 5/24/97 CT- not best quality - no evidence of asbestos related lung disease.<br>6/22/99 - mild COPD - continues to smoke. |
| Honeycutt WC report | IME - 5/27/99 - Dr. Khan<br>History of significant exposure to asbestos. His degree of symptomatology is not significant enough to determine any type of disability from his asbestos. Radiologically by the x-rays I have available, he does not seem to have any type of evidence of any pulmonary fibrosis or pleural calcifications. From the standpoint of his PFT, he essentially falls into the normal range. |
| Hunt WC report | IME - 8/20/99 - Dr. James Jones (x-ray review only)<br>Patient's CT scan shows some findings consistent with asbestos exposure but not diagnostic of asbestosis. |
| Hutchins WC report | IME - 8/10/99 - Dr. Credle<br>1996 R, pneumonectomy - pathology found chrysotile. Emphysema and is on oxygen therapy.  Says asbestosis on pathology and COPD; cancer from cigarettes and asbestos. |
| Jennings WC report | IME - undated - Dr. Khan<br>History of exposure, PFT abnormality, COPD and moderate restrictive.  This restrictive component may be the result of exposure to asbestos or it may be a measuring error in the method of measurement currently used for lung volumes.<br>No significant oxygen desaturation with exercise to explain the degree of symptoms.<br>Need to be followed for COPD and tobacco abuse and back problem. |
| Kepley WC report | IME - 6/24/99 - Dr. Hendler<br>This gentleman certainly has a history of exposure to asbestos. However, on today's chest x-ray and his pulmonary function testing, I see no evidence of asbestosis at this point - restrictive disease, pleural plaquing, etc. The mild fibrosis change is nonspecific and may be due to scarring, rheumatoid arthritis, etc.  I have no basis to conclude that he has asbestosis lung disease at this point. |
| Menster WC report | IME - 5/27/99 - Dr. Khan<br>X-ray studies of 1997 - silicosis with pleural plaques consistent with asbestosis<br>PFT's normal - no permanent disability. |

| | |
|---|---|
| Parker, Martha  WC report | IME - 9/13/99 - Dr. Rostand<br>I find no evidence of asbestos related disease of the lung or pleura.<br>Physical exam unremarkable, her PFT's reveal no evidence of an intrinsic restrictive ventilatory defect and chest x-ray and high resolution CT scan of the chest reveal only mild nonspecific interstitial changes.<br>No work related disease or physical condition at this time.<br>Class II - none of this is on the basis of occupational pulmonary disease. |
| Powlas WC report | IME - 12/1/99 - Dr. Rostand<br>I have reviewed films and I find no evidence of pleural disease suggestive of asbestos exposure, nor do I find any interstitial changes suggestive of underlying interstitial lung disease. I can identify no work related disease or physical condition at the present time. I believe that Mr. Powlas' total physical impairment at the present time is on the basis of his numerous medical problems noted above which are not related to his former occupation. |
| Redmon WC report | IME of 9/21/99 and 9/29/99 by Dr. James Jones.<br>9/21 - 70 pack year smoking history - probable COPD<br>CT of 6/24/99 Dr. Eisenberg reviewed - no definitive evidence of asbestosis noted. Currently reports from CT show no definitive evidence of asbestos-related changes. We will review his priorCT scan and await the most recent CT to review again. We will also await the PFT's today for a final interpretation.<br>9/23 - CT of 9/97 reviewed - no definite evidence suggesting asbestos-related disease. Dr. Jones<br>9/21 - Chest x-ray - Dr. Wallace – L lower lobectomy - old healed L rib fractures - R. lung slight prominence of interstitial markings - abnormal chest as noted above with post-op suggesting.<br>9/29 - Mild obstruction and mild restriction from prior lung surgery. Class II. |
| Robinson WC report | IME - 6/22/99 - Dr. James Jones<br>CT - no evidence of asbestos related disease; PFT's normal |
| Saine WC report | IME - 3/20/00 and 10/18/99 - Dr. Dalto<br>3/20/00 - It is my opinion that this gentleman does not suffer from asbestos associated lung disease, either pleural or parenchymal asbestos disease. I cannot define disability or x-ray changes to make that diagnosis. |
| Shepherd WC report | IME - undated - Dr. Khan<br>With the present data in hand it would be very difficult to make a diagnosis of asbestosis. Indeed, based on radiologic data, he does not appear to have any evidence of pleural calcifications or chronic interstitial disease that would be related to asbestos. |
| Sloan WC report | IME - 10/17/99 - Dr. Elnaggar<br>Interstitial lung disease in the presence of asbestos exposure. Most consistent with mild asbestosis. No pleural disease described. Minimal impairment of function capacity. Smoking cessation advised. |
| Smith, Bill WC report | IME 8/5/99 - Dr. Rostand<br>I do not believe that there is evidence to support a clinical diagnosis of asbestos related disease of lung or pleura.<br>I believe the changes noted on PA and LAT chest x-rays can be explained on the basis of Mr. Smith's severe COPD as well as his motor vehicle accident in 1969 with resultant bilateral rib fractures.  His total impairment at present is on the basis of his COPD. |

| | |
|---|---|
| Smith, R. WC report | IME - 6/6/01 - Dr. Hayes<br>X-rays of 6/6/01 - completely negative<br>Exertional dyspnea probably multifactoral and primarily related to this patient's obesity and deconditioning<br>No physical, radiologic, or physiologic evidence of significant lung disease at this time. PFT's improved from prior tests. |
| Torrance WC report | IME 5/11/99 - Dr. Rostand<br>I do not believe Mr. Torrence has any evidence of asbestos-related disease of lung or pleura. Class III due to old granulomatous disease. |
| Waddell WC report | IME - 4/13/99 - Dr. Bullard:<br>History and radiographic findings consistent with mild pulmonary asbestosis.  COPD with history of cigarette smoking.  Class II - based on obstructive disease. |
| Wallace WC report | IME - 5/17/99 - Dr. Dalto<br>Try as I might looking at the patient's current chest x-ray, I simply don't see any interstitial changes above the general population smoking his age to say that he has an interstitial pneumoconiosis.  Given reports and given everything I see on his current chest x-ray without a new CT scan, I will say that it is more likely than not he does not have asbestos parenchymal disease but does have evidence for asbestos pleural disease. In terms of his disability I see no evidence of restrictive lung disease on his PFT's, his defect is obstructive and consistent with his smoking history. |
| Wilhelm WC report | IME - 5/12/99 - Dr. Spain<br>Possible asbestos induced lung disease but . . . [copy from report] |
| Wise WC report | IME 6/12/99 Elnaggar:<br>CT scan is most consistent with mild asbestosis with the disease affecting the lung and pleura.  However, case is mild.  No impairment in arterial blood gas analysis or spirometry. |

K

# WALLACE and GRAHAM, P.A.

## ATTORNEYS AT LAW

MONA LISA WALLACE †
WILLIAM M. GRAHAM ††
RICHARD L. HUFFMAN
CHRISTOPHER D. MAURIELLO †††
CHRISTOPHER J. HICKEY ††††
M. REID ACREE, JR. †††††
BARBARA L. CURRY
JILL N. CALVERT •
MICHAEL B. PROSS ••
EDWARD L. PAULEY •••
MATTHEW R. WHITLER ••••
JEAN SUTTON MARTIN
SALLY McCLURE WATERS
REBECCA L. SMITHERMAN
JAMES C. CUNNINGHAM, III

525 NORTH MAIN STREET
SALISBURY, NORTH CAROLINA 28144

TELEPHONE: (704) 633-5244
FACSIMILE:   (704) 633-9434
                      (704) 633-0619

† Also licensed in SC and TX
†† Also licensed in TX
††† Also licensed in NY, FL, OH & SC
†††† Also licensed in OH
††††† Also licensed in GA and SC
• Also licensed in SC
•• Also licensed in MD and NY
••• Also licensed in KY and WV
•••• Also licensed in WV and SC

January 3, 2003

Bruce Lassman
Law Clerk to the Honorable Charles R. Weiner
US Courthouse
601 Market Street
Philadelphia, PA  19106

> RE:   Robert F. Bost, et al. v. Fluor Daniel, Inc., et al.
>            3:98 CV 138-T
>
>            Vonnie Agner, et al v. Fluor Daniel, Inc., et al.
>            3:98 CV 220-T

Dear Mr. Lassman:

I represent the claimants and Jim Pressley represents Flour Daniel in the above cases. Some months ago you advised us during a conference call that if the above cases were not promptly resolved, they would be remanded. Our firm has been involved in correspondence and has had numerous conference calls with Judge Weiner and with you almost four years in an attempt to get the cases either settled or remanded. Specifically, the Complaint for *Bost et al.* was filed on March 6, 1998 and the *Agner et al.* Complaint was filed on April 17, 1998, as a result of asbestos exposure at one North Carolina plant. None of the Defendants in the lawsuit are manufacturers of asbestos.

There was actually a hearing on our request for remand on March 17, 1999 and at that time Judge Weiner indicated that he would be remanding the cases if after our firm sent medical information the cases did not settle. (See Exhibit 1 and Exhibit 2). Each time the information was sent, Defendant would only ask for additional discovery which would again be responded to but no meaningful settlement offer was forthcoming.

Mr. Bruce Lassman
January 3, 2003
Page Two

Approximately five months ago both Jim and I were involved in a conference call with you. You indicated therein that it was time to remand the cases unless they were promptly settled. Pursuant to your directive, our firm thereafter sent the Defendant additional information to review in order to allow it to make a meaningful settlement offer. Unfortunately no meaningful settlement offer has been forthcoming.

In summary, notwithstanding years of waiting and tremendous amounts of settlement information being provided to Defendant, the Defendant has made no attempt to value each individual case or to make a meaningful settlement offer. The offer in these cases after all of these years was only $250.00 per case regardless of the circumstances of the individual or the liability evidence in the cases. In fact, the offers were not increased, notwithstanding our firm providing additional information after our last conference call. Obviously such an offer is not meaningful. In fact, just last month a Rowan County jury awarded approximately $400,000.00 to 3 Fluor Daniel workers who worked at the same plant as the cases currently before you and who also suffered from asbestosis. Unfortunately some of the claimants in the cases sought to be remanded have died of asbestosis and/or cancer while these cases have been in MDL.

I would ask that you bring this matter immediately to the attention of Judge Weiner and that an Order of Remand be promptly entered. I am enclosing proposed Orders for your consideration.

I thank you for your consideration and assistance in this regard. With kindest regards, I remain,

Sincerely yours,

Mona Lisa Wallace

MLW/cgp

cc:    Jim Pressley (w/encl.)

L

GREENVILLE | CHARLESTON   COLUMBIA   FLORENCE

## Haynsworth
## Sinkler Boyd, P.A. | ATTORNEYS AND COUNSELORS AT LAW

75 BEATTIE PLACE, 11TH FLOOR (29601-2119)
POST OFFICE BOX 2048 (29602-2048)
GREENVILLE, SOUTH CAROLINA
TELEPHONE  864.240.3200
FACSIMILE  864.240.3300
WEBSITE  www.hsblawfirm.com

PAULINE M. BROWN, CLAS
DIRECT FAX NUMBER 864/250-5613
DIRECT DIAL NUMBER  864/240-3278
EMAIL  pbrown@hsblawfirm.com

January 14, 2003

Mona Lisa Wallace
Wallace and Graham
525 N. Main Street
Salisbury, NC 28144

Re:   Agner, et al. v. Fluor Daniel, Inc., et al.
        USDC-WDNC No. 3:98 CV220T
        Bost et al. v. Fluor Daniel, Inc.
        USDC-WDNC No. 3:98 CV 138 T

Dear Mona Lisa:

This letter is in response to your letter to me of January 3, 2003, and to Bruce Lassman of January 3, 2003.

In spite of our request on September 20, 2002, for a response to our September 3, 2002 letter and enclosures, we have heard nothing in four months. Neither have we received any of the information requested nor a response to questions raised in that letter. Instead, you have chosen to again ignore our requests for information and go back to Bruce Lassman with a renewed request for remand.

Enclosed for your and Mr. Lassman's convenience are copies of our letters of September 3 and September 20, 2002, with enclosures. The following is a recap of our previous requests:

1.      We reviewed in detail the information you provided in your August 19 letter and specified what additional information we required as well as how the information you provided was non-responsive to our original request. There has been no response.

2.      We requested up-to-date authorizations signed by specified individual plaintiffs so that we would be able to obtain the required information. None have been provided.

3.      We requested pathology in Ridenhour, Redmon, Hutchins, Winecoff, F. Smith, Walker and Wilson, but that has never been provided, nor have we received any pathology on any of your cases. Enclosed are copies of reports issued by Dr. Roggli in the Redmon and Hutchins cases. We were able to obtain these in connection with worker's compensation proceedings. You will not that Dr. Roggli found in each situation that the disease was not

Mona Lisa Wallace
January 14, 2003
Page 2

attributable to asbestos exposure. I think you can see why it is imperative that we obtain this pathology for review by our own experts.

4.    You have previously indicated that x-rays and CT scans were with defense attorneys working on the workers compensation cases, and then subsequently indicated that you do not have possession of the x-rays and CT scans. We need to know whether the films have been returned by the workers compensation attorneys and where they are currently located. Our requirement of being provided up-to-date authorizations for the release of medical records is also an issue in connection with the radiology.

We still need the information on the duplicate filings in Ohio and North Carolina by many of these plaintiffs.

We gave you examples of discrepancies in your representations of impairment ratings for some of these plaintiffs and the information we have in our files, i.e., you have Mr. Agner listed as a "Class III" impairment and our file information indicates a "no disability" finding by Dr. Dalto in 1999. ·This is a clear indication to us that you have some information in these cases which we have not seen, or the classification ascribed to certain plaintiffs is wrong. Again, I am sure you can understand this makes provision of this information critical, whether you provide it or give us the requested authorizations so we can obtain it..

In September I suggested perhaps the quickest way to get the additional information you have which might provide a basis for re-evaluation is to have my legal assistant, Pauline Brown, come to Salisbury. You have ignored that suggestion.

I am in the middle of trial preparation and will be involved in trial out of the state until the end of January. Hopefully, we can discuss this further in February.

Very truly yours,

HAYNSWORTH SINKLER BOYD, P.A.

James B. Pressly, Jr.

JBPJr:pmb

cc:   Bruce Lassman
      Law Clerk to The Honorable Charles R. Weiner
      United States Courthouse
      601 Market Street
      Philadelphia, Pennsylvania 19106

M

Duke University Medical Center                    11/12/02 12:08P   P.001

DUKE UNIVERSITY HEALTH SYSTEM
Department of Pathology

Patient:   REDMON,JAMES ALFRED
MRN:       (01700)088083
DOB:       03/11/1941  AGE: 61 YRS
SEX:       MALE
DUAP ID:
Admit Dr.: ROGGLI,VICTOR
Copy to:   ROGGLI,VICTOR

October 24, 2002

Hatcher Kincheloe, Esq.
Hedrick, Eatman, Gardner & Kincheloe, L.L.P.
6302 Fairview Road, Suite 700
Charlotte, NC 28210

Dear Mr. Kincheloe:

I have completed studies on the materials I received regarding Mr. James Alfred Redmon (Presbyterian Health Services Corporation Surgical No. P-97-26295; Duke Hospital Surgical No. SO-02-030916), and the findings and conclusions are summarized below.

Received are twelve glass slides, labeled with the above-indicated surgical number, prepared from a left lower lobectomy specimen. These show squamous cell carcinoma with foci of adenocarcinoma and focal tumor necrosis. Regional lymph nodes contain anthracotic pigment with follicular hyperplasia. No tumor or asbestos bodies are identified. Sections of lung parenchyma uninvolved by tumor show respiratory bronchiolitis with numerous smoker's macrophages. Again, no asbestos bodies are identified on H&E stained sections.

There is no histologic evidence in this case for asbestosis or an elevated tissue asbestos content. Therefore, from the perspective of a pathologic study, I am unable to relate Mr. Redmon's adenosquamous carcinoma of the left lower lobe to any prior history of asbestos exposure. (1)

Thank you for referring this case for consultation.

Sincerely,

*Victor L. Roggli M.D*

Victor L. Roggli, M.D.
Professor of Pathology

REFERENCE:

1. Roggli VL, Sanders LL: Asbestos content of lung tissue and carcinoma of the lung: A clinicopathologic correlation and mineral fiber analysis of 234 cases. Ann Occup Hyg 44:109, 2000.

P.S. A bill for the slide review will be submitted separately. Slides returned.

VR : RDD      Verified by: Victor L. Roggli, M.D.

Continued on next page...

Page: 1
DATE: 10/27/02  TIME: 1948

Patient:   REDMON,JAMES ALFRED
MRN:       (01700)088083
Location:  PATH PATH

Duke University Medical Center                    11/12/02 12:00P  P.002

**DUKE UNIVERSITY HEALTH SYSTEM**
Department of Pathology

Patient:  REDMON,JAMES ALFRED
    MRN:  (01700)088083
    DOB:  03/11/1941  AGE: 61 YRS
    SEX:  MALE
DUAP ID:
Admit Dr.:  ROGGLI,VICTOR
Copy to:  ROGGLI,VICTOR

(Electronic Signature)

Date Signed: 10/27/02

Continued on next page...

Page:  2
DATE:  10/27/02  TIME:  1948

Patient:  REDMON,JAMES ALFRED
    MRN:  (01700)088083
Location:  PATH PATH

Duke University Medical Center                    11/12/02 12:00P  P.008

DUKE UNIVERSITY HEALTH SYSTEM
Department of Pathology

Patient:   REDMON,JAMES ALFRED
MRN:       (01700)088083
DOB:       03/11/1941   AGE: 61 YRS
SEX:       MALE
DUAP ID:
Admit Dr.: ROGGLI,VICTOR
Copy to:   ROGGLI,VICTOR

# SURGICAL PATHOLOGY REPORT
Box 3712 DUMC, Durham, NC 27710
Phone: (919)681-3133 Fax: (919)684-5361

Collection Date:  10/24/02
Accession Date:   10/24/02                Pathology Number:  SO-02-030916

**Clinical History:**
    Not provided.

                                                        : RDD

**Gross Examination:**
    Not provided.

                                                        : RDD

**Microscopic Examination:**
    Microscopic examination is performed.

                                                        : RDD

**DIAGNOSIS:**
    PLEASE SEE PATHOLOGIST NAMED IN SIGNATURE BLOCK BELOW.

    I certify that I personally conducted the diagnostic evaluation of the above
    specimen(s) and have rendered the above diagnosis(es).

                    Victor L. Roggli, M.D.

                    Electronically signed: 10/27/02

** END OF REPORT **                       Patient:   REDMON,JAMES ALFRED
                                          HX No:     (01700)088083
Page:  3                                  Location:  PATH PATH
DATE:  10/27/02  TIME:  1948

N

DUKE UNIVERSITY MEDICAL CENTER
Department of Pathology
Box 3712
Durham, NC 27710
Cytopathology (919) 684-3587
Sandra Bigner M.D.
Surgical Pathology (919) 681-3133
Marcia R. Gottfried M.D.

```
Patient:   HUTCHINS, DOROTHY
    MRN:   (01700)073252
    DOB:   08/14/1928   AGE: 72 YRS
    SEX:   FEMALE
Admit Dr.: ROGGLI, VICTOR
  Copy to: ROGGLI, VICTOR
```

December 4, 2000

Hatcher Kincheloe, Esq.
Hedrick, Eatman, Gardner & Kincheloe, LLP
P.O. Box 30397
Charlotte, NC  28230

Dear Mr. Kincheloe:

    We have completed studies on the materials we received regarding Ms. Dorothy Morgan Hutchins (New Hanover Regional Medical Center Surgical No. S-96-8599; Duke Hospital Surgical No. SO-00-31404), and the findings and conclusions are summarized below.

    Received are four glass slides and six paraffin blocks, labeled with the above-indicated surgical number, prepared from a right middle lobectomy specimen. These show patchy interstitial fibrosis in the form of fibrotic, thick-walled cysts. Additionally, there is mucous plugging of the medium to small-sized airways associated with chronic inflammation and pigment-laden macrophages, with the appearance typical of smoker's macrophages. These findings are consistent with respiratory bronchiolitis. Moderate centrilobular emphysematous changes are also noted in areas away from the interstitial fibrosis. The bronchial margin of resection is negative for tumor. No asbestos bodies are present on hematoxylin and eosin-stained sections. There is no evidence of malignancy on the glass slides submitted for review. The blocks indicated by the original surgical report to contain tumor (2A and B) are visually inspected and do not appear to contain any remaining tissue. Sections prepared from paraffin block of non-neoplastic lung parenchyma were stained for iron. No asbestos bodies were identified in a 294 sq/mm area of tissue, which corresponds to an estimated content of fewer than 130 asbestos bodies per gram of wet lung tissue. (1)

    Immunohistochemical studies were performed on paraffin blocks of fibrotic lung tissue using the avidin biotinylated complex technique on enzyme-digested sections. Langerhan's histiocytes were not detected by S-100 or CD-1A. No appreciable staining was observed when an irrelevant mouse monoclonal antibody was substituted for immune serum. Positive controls stained appropriately.

    The histologic criteria of asbestosis and usual interstitial pneumonia (UIP) are not met in this case. The features are in keeping with interstitial fibrosis, unclassified. While the upper lobe predominance of fibrosis raises the possibility of old or "burnt out" Langerhan's cell histiocytosis (eosinophilic granuloma) or sarcoidosis, there is no evidence of active Langerhan's histiocytosis, nor is there identifiable non-necrotizing granulomatous inflammation. Additionally, there is no histologic evidence in this case of an elevated tissue asbestos content. Therefore, from the perspective of a pathologic study, we are unable to relate Ms. Hutchins' reported carcinoma of the right middle lobe to any prior history of asbestos exposure. (2)

    Thank you for referring this case for consultation.

Continued on next page...

Page:  1
DATE:  12/15/00  TIME:  1625

```
Patient:   HUTCHINS, DOROTHY
    MRN:   (01700)073252
Location:  PATH
```

DUKE UNIVERSITY MEDICAL CENTER
Department of Pathology
Box 3712
Durham, NC 27710
Cytopathology (919) 684-3587
Sandra Bigner M.D.
Surgical Pathology (919) 681-3133
Marcia R. Gottfried M.D.

```
Patient:   HUTCHINS,DOROTHY
    MRN:   (01700)073252
    DOB:   08/14/1928   AGE: 72 YRS
    SEX:   FEMALE
Admit Dr.: ROGGLI,VICTOR
 Copy to:  ROGGLI,VICTOR
```

Sincerely,

*Kelly J. Butnor, M.D.*

Kelly J. Butnor, M.D.

*Victor L. Roggli, M.D.*

Victor L. Roggli, M.D.
Professor of Pathology

REFERENCES:

1. Roggli VL: Asbestos bodies and nonasbestos ferruginous bodies, Chptr. 3,
   In: Pathology of Asbestos-Associated Diseases (Roggli VL, Greenberg SD,
   Pratt PC, eds.), Little, Brown & Co: Boston, 1992, pg. 39.

2. Roggli VL, Sanders LL:  Asbestos Content of Lung Tissue and Carcinoma of
   the Lung:  A Clinicopathologic correlation and mineral fiber analysis of
   234 cases. Ann. Occup. Hyg. 44:109, 2000.

P.S. A bill for the slide review, histology, and immunohistochemistry will
     be submitted separately. Original slides and blocks returned, eleven
     slides retained (including six immunostained slides).


   VR : RDD     Verified by: Victor L. Roggli, M.D.
                            (Electronic Signature)

                    Date Signed: 12/15/00

```
Patient:   HUTCHINS,DOROTHY
    MRN:   (01700)073252
Location:  PATH
```

DUKE UNIVERSITY MEDICAL CENTER
Department of Pathology
Box 3712
Durham, NC 27710
Cytopathology (919) 684-3587
Sandra Bigner M.D.
Surgical Pathology (919) 681-3133
Marcia R. Gottfried M.D.

```
Patient:   HUTCHINS,DOROTHY
    MRN:   (01700)073252
    DOB:   08/14/1928  AGE: 72 YRS
    SEX:   FEMALE
Admit Dr.: ROGGLI,VICTOR
 Copy to:  ROGGLI,VICTOR
```

# SURGICAL PATHOLOGY REPORT

Collection Date: 11/22/00
Accession Date:  11/22/00            **Pathology Number: SO-00-31404**

**Clinical History:**
    Not provided.

                                              : RDD

**Gross Examination:**
    Not provided.

                                              : RDD

## DIAGNOSIS:
    PLEASE SEE PATHOLOGIST NAMED IN SIGNATURE BLOCK BELOW.


    I certify that I personally conducted the diagnostic evaluation of the above
    specimen(s) and have rendered the above diagnosis(es).


                        Electronically signed:

```
Patient:   HUTCHINS,DOROTHY
  HX No:   (01700)073252
Location:  PATH
```

DUKE UNIVERSITY MEDICAL CENTER
Department of Pathology
Box 3712
Durham, NC 27710
Cytopathology (919) 684-3587
Sandra Bigner M.D.
Surgical Pathology (919) 681-3133
Marcia R. Gottfried M.D.

```
Patient:   HUTCHINS,DOROTHY
    MRN:   (01700)073252
    DOB:   08/14/1928  AGE: 72 YRS
    SEX:   FEMALE
Admit Dr.: ROGGLI,VICTOR
 Copy to:  ROGGLI,VICTOR
```

December 4, 2000

Hatcher Kincheloe, Esq.
Hedrick, Eatman, Gardner & Kincheloe, LLP
P.O. Box 30397
Charlotte, NC  28230

Dear Mr. Kincheloe:

   We have completed studies on the materials we received regarding Ms. Dorothy Morgan Hutchins (New Hanover Regional Medical Center Surgical No. S-96-8599; Duke Hospital Surgical No. SO-00-31404), and the findings and conclusions are summarized below.

   Received are four glass slides and six paraffin blocks, labeled with the above-indicated surgical number, prepared from a right middle lobectomy specimen. These show patchy interstitial fibrosis in the form of fibrotic, thick-walled cysts. Additionally, there is mucous plugging of the medium to small-sized airways associated with chronic inflammation and pigment-laden macrophages, with the appearance typical of smoker's macrophages. These findings are consistent with respiratory bronchiolitis. Moderate centrilobular emphysematous changes are also noted in areas away from the interstitial fibrosis. The bronchial margin of resection is negative for tumor. No asbestos bodies are present on hematoxylin and eosin-stained sections. There is no evidence of malignancy on the glass slides submitted for review. The blocks indicated by the original surgical report to contain tumor (2A and B) are visually inspected and do not appear to contain any remaining tissue. Sections prepared from paraffin block of non-neoplastic lung parenchyma were stained for iron. No asbestos bodies were identified in a 294 sq/mm area of tissue, which corresponds to an estimated content of fewer than 130 asbestos bodies per gram of wet lung tissue. (1)

   Immunohistochemical studies were performed on paraffin blocks of fibrotic lung tissue using the avidin biotinylated complex technique on enzyme-digested sections. Langerhan's histiocytes were not detected by S-100 or CD-1A. No appreciable staining was observed when an irrelevant mouse monoclonal antibody was substituted for immune serum. Positive controls stained appropriately.

   The histologic criteria of asbestosis and usual interstitial pneumonia (UIP) are not met in this case. The features are in keeping with interstitial fibrosis, unclassified. While the upper lobe predominance of fibrosis raises the possibility of old or "burnt out" Langerhan's cell histiocytosis (eosinophilic granuloma) or sarcoidosis, there is no evidence of active Langerhan's histiocytosis, nor is there identifiable non-necrotizing granulomatous inflammation. Additionally, there is no histologic evidence in this case of an elevated tissue asbestos content. Therefore, from the perspective of a pathologic study, we are unable to relate Ms. Hutchins' reported carcinoma of the right middle lobe to any prior history of asbestos exposure. (2)

   Thank you for referring this case for consultation.

Continued on next page...

Page: 1
DATE: 12/15/00  TIME: 1625

```
Patient:   HUTCHINS,DOROTHY
    MRN:   (01700)073252
Location:  PATH
```

DUKE UNIVERSITY MEDICAL CENTER
Department of Pathology
Box 3712
Durham, NC 27710
Cytopathology (919) 684-3587
Sandra Bigner M.D.
Surgical Pathology (919) 681-3133
Marcia R. Gottfried M.D.

```
Patient:   HUTCHINS,DOROTHY
   MRN:   (01700)073252
   DOB:   08/14/1928   AGE: 72 YRS
   SEX:   FEMALE
Admit Dr.: ROGGLI,VICTOR
 Copy to:  ROGGLI,VICTOR
```

Sincerely,

*Kelly J. Butnor, M.D.*

Kelly J. Butnor, M.D.

*Victor L. Roggli, M.D.*

Victor L. Roggli, M.D.
Professor of Pathology

REFERENCES:

1. Roggli VL: Asbestos bodies and nonasbestos ferruginous bodies, Chptr. 3,
   In: Pathology of Asbestos-Associated Diseases (Roggli VL, Greenberg SD,
   Pratt PC, eds.), Little, Brown & Co: Boston, 1992, pg. 39.

2. Roggli VL, Sanders LL:  Asbestos Content of Lung Tissue and Carcinoma of
   the Lung:  A Clinicopathologic correlation and mineral fiber analysis of
   234 cases. Ann. Occup. Hyg. 44:109, 2000.

P.S. A bill for the slide review, histology, and immunohistochemistry will
     be submitted separately. Original slides and blocks returned, eleven
     slides retained (including six immunostained slides).

   VR : RDD      Verified by: Victor L. Roggli, M.D.
                            (Electronic Signature)

                   Date Signed: 12/15/00

Continued on next page...

```
Patient:   HUTCHINS,DOROTHY
   MRN:   (01700)073252
Location:  PATH
```

DUKE UNIVERSITY MEDICAL CENTER
Department of Pathology
Box 3712
Durham, NC 27710
Cytopathology (919) 684-3587
Sandra Bigner M.D.
Surgical Pathology (919) 681-3133
Marcia R. Gottfried M.D.

```
Patient:   HUTCHINS,DOROTHY
    MRN:   (01700)073252
    DOB:   08/14/1928  AGE: 72 YRS
    SEX:   FEMALE
Admit Dr.: ROGGLI,VICTOR
Copy to:   ROGGLI,VICTOR
```

# SURGICAL PATHOLOGY REPORT

```
Collection Date: 11/22/00
Accession Date:  11/22/00              Pathology Number: SO-00-31404
```

**Clinical History:**
    Not provided.

                                                          : RDD

**Gross Examination:**
    Not provided.

                                                          : RDD

## DIAGNOSIS:
    PLEASE SEE PATHOLOGIST NAMED IN SIGNATURE BLOCK BELOW.

    I certify that I personally conducted the diagnostic evaluation of the above
    specimen(s) and have rendered the above diagnosis(es).


                    Electronically signed:

```
Patient:   HUTCHINS,DOROTHY
  HX No:   (01700)073252
Location:  PATH
```