JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 1 3 2003

FILED
CLERK'S OFFICE

**MDL 875**

**PLEADING NO. 3886**

BEFORE THE JUDICIAL PANEL IN MULTIDISTRICT LITIGATION
MDL DOCKET NO. 875

IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

RE:   Agner, *et al.* v. Fluor Daniel, Inc., *et al.*
      NCW 3:98 CV 220-T

      Agner, *et al.* v. Fluor Daniel, Inc., *et al.*
      NCW 3:98 CV 138-T

### PLAINTIFFS' AGNER, *ET AL'S* RESPONSE TO MOTION TO VACATE CONDITIONAL REMAND ORDER BY DEFENDANTS FLUOR DANIEL, INC., FLUOR DANIEL ENVIRONMENTAL SERVICES, INC., FLOUR DANIEL SERVICES CORPORATION, AND SOS INTERNATIONAL, INC.

Plaintiffs, Agner, *et al.* (collectively "Plaintiffs") hereby respond to Defendants' Motion to Vacate Conditional Remand Order as follows, and respectfully request this Honorable Panel deny Defendants' motion to vacate the Conditional Remand Order entered in the above-referenced matters on March 19, 2003, and in accordance with Rule 7.6 of the Multidistrict litigation Rules, respectfully request the Panel file the Conditional Remand Order with the Clerk of the transferee court.   Plaintiffs submit the accompanying brief and exhibits in support hereof.

**OFFICIAL FILE COPY** IMAGED MAY 1 4 '03

Respectfully Submitted,

Mona Lisa Wallace
Christopher D. Mauriello
WALLACE & GRAHAM, P.A.
525 North Main Street
Salisbury, NC 28144
(704) 633-5244

Attorneys for Plaintiffs Agner, *et al.*

Date: May 6, 2003

SCHEDULE OF ACTIONS

Agner, et al. v. Fluor Daniel, Inc., et al.
Pending in U.S. District Court, Western District of North Carolina (Charlotte)
Case No. 98-CV-220
Assigned to:  Judge Lacy H. Thornburg

Plaintiffs:

Vonnie K. Agner and wife, June Agner
Nottie S. Aldrich and husband, Ben Aldrich
Cecil Allman and wife, Frances W. Allman
Joe E. Barbee and wife, Marilyn Barbee
Thomas R. Barnhardt and wife, Vickie Barnhardt
Terry W. Beeker and wife, Susan M. Beeker
Michael M. Bennett and wife, Libby M. Bennett
John R. Boger and wife, Donna R. Boger
Terry J. Bond and wife, Nancy M. Bond
Merle D. Bonds and wife, Joyce L. Bonds
Larry G. Bowles and wife, Ann D. Bowles
Donald Burleson and wife, Betty H. Burleson
Guy Byrd and wife, Carol Byrd
John F. Carriker and wife, Mary E. Carriker
James Coleman
Charles T. Daniels and wife, Judith C. Daniels
Carl C. Doby and wife, Patricia A. Doby
Leona H. Eagle
Danny L. Elkins and wife, Hattie L. Elkins
Joe L. Ellis and wife, Annie R. Ellis
Martha Faust
Edward Fonseca, Sr. and wife, Annie M. Fonseca
Gary W. Gibbons and wife, Roxanne S. Gibbons
Irvin Gobble

Billy F. Goodlett and wife Joan Goodlett
Clyde R. Goodman and wife, Lynnie Goodman
Elsie Guy and husband, Raymond Guy
Cornelius Hargrove and wife, Eller W. Hargrove
Larry W. Henderickson and wife, Doris L. Henderickson
John A. Hodge
Fred A. Holmes and wife, Sallie P. Holmes
J. Frances Holt and wife, Almeader S. Holt
Leonard T. Holt and wife, Shirley L. Holt
Norman Holt and wife, Betty L. Holt
Arthur W. Hunt and wife, Sandra H. Hunt
Alma Ivery
Bettye Jackson and husband, Calvin L. Jackson
William C. Jennings and wife, Karen S. Jennings
Bobby Johns and wife, Maxine C. Johns
John Kennedy
Ronald Kepley and wife, Annie B. Kepley
Jimmie L. Kitchen
Donald Lindsay
Kenneth Measmer
Charlie Menster and wife, Vera M. Menster
Charles McDaniel and wife, Lois McDaniel
Clyde Miller and wife, Betty C. Miller
Bobby Morrison, Sr. and wife, Elma Morrison

Charles Nall and wife, Charlotte Nall
William H. Parker
Shirley R. Paxton and wife, Patsy J. Paxton
Joe M. Powlas and wife, Patricia D. Powlas
Billy Reavis and wife, Iva G. Reavis
James A. Redmond and wife, Annie B. Redmond
Jerry L. Reid and wife, Wanda L. Reid
Gladys Roberts
Ada Robertson
Theloa Robinson
Peggy Rogers
Henry G. Saine and wife, Reba Saine
Glenn C. Seaford, Sr. and Katherine Seaford
Ernest T. Seamon and wife, Jean Seamon
Ernst Shepherd and wife, Patsy E. Shepherd
Coy Shive and wife, Patricia Shive
Donald Shoe, Sr. and wife, Donita M. Shoe
Howard Shoe and wife, Patsy Shoe
Kermit Shumaker and wife, Lynn W. Shumaker
Franklin D. Sloop and wife, Faye T. Sloop

Bill Smith and wife, Lois G. Smith
Franklin Smith, Jr. and wife, Mary H. Smith
John H. Smith and wife, Vernie Smith
Rufus Smith
Bobby E. Starnes and wife, Myrna J. Starnes
Steven C. Stirewalt and wife, Janet B. Stirewalt
William E. Tanner and wife, Mary S. Tanner
Ronald F. Thomas and wife, Sarah J. Thomas
Albert Tittle and wife, Mary M. Tittle
Clinton D. Turman and wife, Susan R. Turman
Jasper J. Waddell
James NMN Walker
William L. Wallace and wife, Donna Wallace
Danny Warren and wife, Lorine M. Warren
Charles O. Weldon and wife, Lelia Weldon
Miron L. Wilhelm and wife, Gayle K. Wilhelm
Walter E. Wise, Jr. and wife, Sandra Wise

Defendants:

Fluor Daniel, Inc., f/k/a Daniels Construction Co.
Fluor Daniel Environmental Services, Inc.
Fluor Daniel Services Corporation
SOS International, Inc.
Asbestos Removal, Inc.
W.F. Gray Insulation Services, Inc.

Agner, et al. v. Fluor Daniel, Inc., et al.
Pending in U.S. District Court, Western District of North Carolina (Charlotte)
Case No. 98-CV-138
Assigned to:  Judge Lacy H. Thornburg

Plaintiffs:

Vonnie K. Agner and wife, June Agner
Nottie S. Aldrich and husband, Ben Aldrick
Cecil Allman and wife, Frances W. Allman
Joe E. Barbee and wife, Marilyn Barbee
Thomas R. Barnhardt and wife, Vickie Barnhardt
Terry W. Beeker and wife, Susan M. Beeker
Michael M. Bennett and wife, Libby M. Bennett
John R. Boger and wife, Donna R. Boger
Terry J. Bond and wife, Nancy M. Bond
Merle D. Bonds and wife, Joyce L. Bonds
Robert F. Bost and wife, Mildred S. Bost
Larry G. Bowles and wife, Ann D. Bowles
Donald Burleson and wife, Betty H. Burleson
Guy Byrd and wife, Carol Byrd
John F. Carriker and wife, Mary E. Carriker
John Chistenberry and wife, Mattie C. Chistenberry
James Coleman
Arnold Crook and wife, Aulena Crook
Charles T. Daniels and wife, Judith C. Daniels
Carl C. Doby and wife, Patricia A. Doby
Leona H. Eagle
Danny L. Elkins and wife, Hattie L. Elkins
Joe L. Ellis and wife, Annie R. Ellis
Martha Faust
Edward Fonseca, Sr. and wife, Annie M. Fonseca
Jaxon Freeze and wife, Peggy Freeze

Gary W. Gibbons and wife, Roxanne S. Gibbons
Irvin Gobble
Robert L. Godbey and wife, Sarah P. Godbey
Billy F. Goodlett and wife, Joan Goodlett
Clyde R. Goodman and wife, Lynnie Goodman
Morree G. Granford and husband, Willie Granford, Jr.
Elsie Guy and husband, Raymond Guy
Cornelius Hargrove and wife, Eller W. Hargrove
Larry W. Henderickson and wife, Doris L. Henderickson
John A. Hodge
David T. Hodges and wife, Vickie Hodges
Fred A. Holmes and wife, Sallie P. Holmes
J. Frances Holt and wife, Almeader S. Holt
Leonard T. Holt and wife, Shirley L. Holt
Norman Holt and wife, Betty L. Holt
Sallie Holt
William M. Honeycutt and wife, Nell W. Honeycutt
Arthur W. Hunt and wife, Sandra H. Hunt
Dorothy Hutchins
Alma Ivery
Bettye Jackson and husband, Calvin L. Jackson
William C. Jennings and wife, Karen S. Jennings
Bobby Johns and wife, Maxine C. Johns
John Kennedy

Ronald Kepley and wife, Annie B. Kepley

Jimmie L. Kitchen

James T. Knight and Nancy M. Knight

Donald Lindsay

Thomas G. Logan and wife, Helen Logan

Kenneth W. Measmer

Charlie Menster

Charles McDaniel and wife, Lois McDaniel

Clyde Miller and wife, Betty C. Miller

Edward H. Monroe and wife, Lisa F. Monroe

Bobby Morrison, Sr. and wife, Elma Morrison

Charles Nall and wife, Charlotte Nall

Mildred S. Ostwalt and husband, Jesse Ostwalt

Martha B. Parker and husband, Harvey A. Parker, Jr.

William H. Parker and wife, Eloise H. Parker

Shirley R. Paxton and wife, Patsy J. Paxton

John Phelps and wife, Jettie M. Phelps

Home W. Potts and wife, Debbie C. Potts

Joe M. Powlas and wife, Patricia D. Powlas

Billy Reavis and wife, Iva G. Reavis

James A. Redmond and wife, Annie B. Redmond

Jerry L. Reid and wife, Wanda L. Reid

John Ridenhour and wife, Peggy T. Ridenhour

Gladys Roberts

Ada Robertson

Theloa Robinson

Peggy Rogers and husband, Fred W. Rogers

Henry G. Saine and wife, Reba Saine

Maurice Saleeby and wife, Susan Saleeby

Glenn C. Seaford, Sr. and Katherine Seaford

Ernest T. Seamon and wife, Jean Seamon

Ernst Shepherd and wife, Patsy E. Shepherd

Coy Shive and wife, Patricia Shive

Donald Shoe, Sr. and wife, Donita M. Shoe

Howard Shoe and wife, Patsy Shoe

Kermit Shumaker and wife, Lynn W. Shumaker

James Sloan and wife, Willie M. Sloan

Franklin D. Sloop and wife, Faye T. Sloop

Bill Smith and wife, Lois G. Smith

Franklin Smith, Jr. and wife, Mary H. Smith

John H. Smith and wife, Vernie Smith

Rufus Smith

Bobby E. Starnes and wife, Myrna J. Starnes

Steven C. Stirewalt and wife, Janet B. Stirewalt

William E. Tanner and wife, Mary S. Tanner

Ronald F. Thomas and wife, Sarah J. Thomas

Albert Tittle and wife, Mary M. Tittle

Wilbert Torrence, Sr. and wife, Barbara Torrence

Clinton D. Turman and wife, Susan R. Turman

Jasper J. Waddell

James NMN Walker

William L. Wallace and wife, Donna Wallace

Danny Warren and wife, Lorine M. Warren

Charles O. Weldon and wife, Lelia Weldon

Miron L. Wilhelm and wife, Gayle K. Wilhelm

Leon Wilson, Jr.

Mary Winecoff and husband, Robert T. Winecoff

Walter E. Wise, Jr. and wife, Sandra Wise

Defendants:

Fluor Daniel, Inc., f/k/a Daniels Construction Co.
Fluor Daniel Environmental Services, Inc.
Fluor Daniel Services Corporation
SOS International, Inc.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 1 3 2003

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL IN MULTIDISTRICT LITIGATION
MDL DOCKET NO. 875

IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

RE:   Agner, *et al.* v. Fluor Daniel, Inc., *et al.*
      NCW 3:98 CV 220-T

      Agner, *et al.* v. Fluor Daniel, Inc., *et al.*
      NCW 3:98 CV 138-T

### PLAINTIFFS' BRIEF IN OPPOSITION TO MOTION TO VACATE CONDITIONAL REMAND ORDER BY DEFENDANTS FLUOR DANIEL, INC., FLUOR DANIEL ENVIRONMENTAL SERVICES, INC., FLOUR DANIEL SERVICES CORPORATION, AND SOS INTERNATIONAL, INC.

Plaintiffs, Agner, *et al.* (collectively "Plaintiffs") respectfully submit this Brief in

Opposition to Motion to Vacate Conditional Remand Order by Defendants Fluor Daniel,

Inc., Fluor Daniel Environmental Services, Inc., Fluor Daniel Services Corporation, and

SOS International, Inc., and in accordance with Rule 7.1 of the Rules of Procedure of the

Judicial Panel on Multidistrict Litigation, and responding to the allegations of said

motion, show the Panel as follows:

RECEIVED
CLERK'S OFFICE

BACKGROUND OF THE LITIGATION

These cases were filed in or around March, 1998. They involve more than 100 prior and/or present employees who worked at a facility and who developed asbestos related cancers and progressive and incurable asbestosis as a result of decades of unprotected injurious asbestos exposures. Although the cases were filed and have been pending for years, these claimants' cases have been completely stagnant. While these cases have been pending for four years or greater, some of the workers have died from cancer and others have lost their jobs due to the progressive nature of their asbestos diseases.

Over four years ago, Judge Weiner indicated during a hearing that he would remand the cases unless the Defendants made a reasonable settlement offers within one month. It is now four years later. Notwithstanding all efforts of claimants' counsel to provide sufficient information to resolve the cases, no meaningful offer has yet been made to any claimant. The highest offer made in any of these cases was $550.00 in just 4 cases. Those four cases include one that was for an individual who is totally and permanently disabled with asbestosis, with a Class IV impairment; another individual who died of asbestos related lung cancer after being totally disabled and on oxygen for years and while this remand request was pending; a third individual who is totally and permanently disabled with asbestos related lung cancer, having had a lobectomy; and a fourth individual who is deceased and whose death was confirmed to be the result of asbestos related factors. As discussed more fully below, the Defendants cannot possibly argue that these or any other offers made are reasonable. Further, it can be argued that Judge Weiner's suggestion of remand is an indication that he found Defendants'

2

settlement offers to be unreasonable. It is impossible to justify the Defendants' offers of settlement to claimants with cancer, and claimants without cancer, and only a few hundred dollars to asbestotics, even those whose diagnoses are independently confirmed.

The Defendants' knowledge of the medical conditions in these cases is unique because the vast majority of these victims have been independently examined by independently chosen state physicians and by pulmonologists selected by their employer for independent medical evaluations. Defendant has been provided with all of the original diagnosing medical records as well as state panel physician reports and independent evaluations. In fact, it has been over four years since the claimants' counsel provided the medical information and complied with Judge Weiner's order regarding discovery. If there is additional need for discovery, such can be had once the cases are remanded. Although not required, claimants' counsel has repeatedly supplemented discovery, all to no avail.

The Defendants' knowledge of the value of these cases and of their unreasonable offers is also unique. Last year a Rowan County jury awarded three of the co-workers of these claimants, none of whom had cancer, $400,000 exclusive of punitive damages. Defense counsel in these cases was involved in those trials. It should be noted that claimants' initial settlement demands in most instances, are less than half of the jury verdicts returned in Rowan County. Despite that fact, Defendants continue to contend that claimants' demands are unreasonable.

In the Rowan County cases, plaintiffs chose two plaintiffs cases to try, and defendants chose two plaintiffs cases to try. The underlying purpose was to secure the guidance of a jury for purposes of valuing the remaining plaintiffs cases for settlement.

3

In those cases, plaintiffs and defendants had similarly reached an impasse in negotiations. In this case, Plaintiffs settlement demands are clearly reasonable based on those verdicts. Further, defendants have not appealed the amount of compensation awarded by Rowan County verdicts, further validating the jury's valuation.

Despite trying those cases with the underlying purpose of establishing an objective point of reference for further valuation, Defendants have not altered their settlement offers. Their offers remain in the same range as those made before the trials. A further indication of the importance of the Rowan County cases is seen in the presence of Defendants' counsel at both depositions and trial in the Rowan County cases, despite his not having a client involved in those matters. Not only was Mr. Pressly present, but he attempted to raise objections on the record in both the depositions and trial, despite not having a client involved. This is a further indication of Defendants' opinions regarding the importance of the Rowan County cases with respect to valuation of these types of claims.

Now, four years later, Defendants seek to have this Panel vacate its Conditional Remand Order in these cases upon the grounds that claimants' counsel has not complied with Judge Weiner's discovery orders. The law is clear, as discussed more fully below, that once a transferee judge suggests remand, that suggestion stands as an indication by the judge that he perceives his role to be complete. Accordingly, Judge Weiner's Order suggesting remand indicates that he perceives his role of presiding over and coordinating the pre-trial proceedings in these matters, to be complete. To be sure, if claimants' counsel had not complied with the discovery orders and obligations imposed by Judge Weiner, Judge Weiner would not perceive his role as complete. Judge Weiner has a

vested interest in ensuring that litigants before him comply with his orders, and it is unlikely that if claimants' counsel was as dilatory in complying with its discovery obligations as is suggested, Judge Weiner would suggest remand.

The Plaintiffs further, more specifically respond to the individual allegations of Defendants' motion:


1.    Plaintiffs admit that this matter is before the Panel regarding two separate but related cases referenced herein as <u>Agner</u> and <u>Bost</u>.  Plaintiffs admit that Wallace & Graham, P.A., represents the numerous plaintiffs in both cases.  Plaintiffs admit that the Defendants were sued in both cases.  Plaintiffs admit that the cases all arise out of asbestos exposure at the Fiber Industries plant in Salisbury, North Carolina during their employment there.  Except as herein admitted, the remaining allegations of paragraph one are denied.

Whether or not Wallace & Graham, P.A., prosecuted workers compensation claims for Plaintiffs is irrelevant, and said allegation is included in Defendants' allegations merely to prejudice this Panel against Plaintiffs and Plaintiffs' lawyers.  Similarly, the fact that the majority of plaintiffs in both cases were initially screened for asbestos-related conditions by Dr. Frederick Dula is also irrelevant and made merely for prejudicial effect.

2.    Plaintiffs admit the allegations in paragraph two.

3.    Plaintiffs admit that a Corrected Complaint was filed by Plaintiffs' counsel in federal court in which the claims of several plaintiffs including Mr. Agner were dropped from the original suit.  Plaintiffs admit that case remained in federal court

denominated *Bost et al. v. Fluor Daniel, Inc., et al.*, C.A. No. 3:98 CV 138T ("Bost"). Plaintiffs admit that <u>Bost</u> is one of the two cases that are the subject of this motion. Except as herein admitted the remaining allegations of paragraph three are denied. Defendants' allegations that Plaintiffs were "dissatisfied" with the removal are irrelevant and contrary to the law already argued before Judge Weiner, namely <u>Nosonowitz v.</u> <u>Allegheny Beverage Corp.</u>, 463 F.Supp. 162, 163-64 (S.D.N.Y. 1978), which clearly stands for the proposition that the joinder of non-diverse defendants to defeat removal is not prohibited so long as plaintiff has a viable claim against the resident defendants.

     4.     Plaintiffs admit that on April 17, 1998, Plaintiffs' counsel filed a second action in Mecklenburg County, North Carolina, on behalf of the claimants dropped from the Bost action, making identical allegations to the first suit, and adding two nondiverse co-defendants.

     5.     Plaintiffs admit that Defendants removed the second action denominated *Agner et al. v. Fluor Daniel, Inc., et al.* C.A. No. 3:98 CV 220-T ("Agner"). Except as herein admitted the remaining allegations of paragraph five are denied. Defendants allegations concerning "sham defendants" are irrelevant and contrary to the law already argued before Judge Weiner, namely <u>Nosonowitz v. Allegheny Beverage Corp.</u>, 463 F.Supp. 162, 163-64 (S.D.N.Y. 1978), which clearly stands for the proposition that the joinder of non-diverse defendants to defeat removal is not prohibited so long as plaintiff has a viable claim against the resident defendants. Defendants have included these allegations solely to prejudice the Panel against claimants and their attorneys.

     6.     Plaintiffs admit the allegations of paragraph six.

B.    LEGAL CONTENTIONS

7.    Plaintiffs deny the allegations contained in paragraph seven. Remand of the Agner and Bost cases to transferor courts will serve the purposes of 28 U.S.C.S. §1407, namely to promote the "just and efficient conduct of such actions." Vacating the Conditional Remand Order will serve a purpose completely inapposite the just and efficient conduct of such actions. Vacating the remand order will serve Defendants allowing Defendants to further delay the trial or settlement of these claims, and providing Defendants with additional opportunities to cite irrelevant material in attempts to prejudice Plaintiffs' claims. The inclusion of these cases in MDL 875 has failed to promote their resolution over the course of four years. Their continued inclusion with MDL 875 will only add to the delay. Remand will allow these cases to be set for trial, and finally be disposed of. It has been more than 5 years since these cases were originally filed.

8.    Plaintiffs deny the allegations of paragraph eight. As discussed more fully below, Plaintiffs have complied with the directives of transferee court in providing discovery to Defendants and have provided reasonable settlement offers to Defendants. It is not for Defendants to determine when the transferee judge's role under §1407 has been completed. That determination is one left to the transferee judge. *See, In re A.H. Robins Co., Inc., "Dalkon Shield" IUD Products Liability Litigation,* 453 F.Supp. 108, 110 (JPMDL 1978). As discussed more fully below, Judge Weiner's suggestion of remand is a clear indication that he perceives his role in this litigation as complete. It seems unlikely that Judge Weiner would suggest remand if he felt Plaintiffs' counsel had been dilatory in complying with discovery as Defendants suggest by this motion.

9.     Plaintiffs deny the allegations of paragraph nine.  Remand to transferor courts will serve the purpose of 28 U.S.C.A. §1407.  The transferee judge has already determined that his role under Section 1407 is complete by suggesting remand to the Panel.  Further, "the statute contemplates that the transferee judge will conduct the common pretrial proceedings with respect to the actions *as the transferee judge considers appropriate.*"  *Id* (emphasis supplied).  The transferee judge's suggestion of remand is a clear indication that these two actions no longer require the benefits of coordinated proceedings.   It is also an indication that Judge Weiner does not consider further discovery appropriate.

10.     Plaintiffs admit that The Honorable Charles R. Weiner, United States District Judge presiding over MDL 875, held a Hearing on Plaintiffs' motion to remand these cases on March 17, 1999 ("Hearing").  Plaintiffs' further admit that the transcript attached as Exhibit A to Defendants' motion is a copy of the transcript of those proceedings.  Except as herein admitted, the allegations of paragraph 10 are denied. Plaintiffs were directed to provide to Defendants, medical information from treating physicians, family physicians, biopsy information where available, work history information addressed to exposure, length of time of exposure, and witnesses, and reasonable settlement demands.  (Exhibit A).  Plaintiffs have provided the requested information.   Plaintiffs have also undertaken to provide additional information not ordered in the Hearing to facilitate settlement.   Despite this fact, Defendants have continually failed to provide reasonable settlement offers.

11.     Plaintiffs admit the allegations of paragraph 11.  On March 24, 1999, Plaintiffs provided to Defendants, work history information, diagnosing medical reports,

medical records from family physicians or other healthcare providers and settlement demands as to each individual Plaintiff. (Exhibit B). Plaintiffs also provided additional information at that time including pulmonary function tests, chest x-rays and CT scan reports, (Exhibit B), despite the fact that Defendants neither asked for same specifically at the Hearing, nor were plaintiffs directed to specifically provide same at the Hearing. (Exhibit A). Plaintiffs voluntarily provided same in a good faith attempt to have these claims resolved in a timely fashion.

12.     Plaintiffs admit the allegations of paragraph 12. As indicated above, in most instances the settlement demands made were less than half the jury verdicts returned in Rowan County for co-workers of these claimants that did not have cancer. These jury verdicts represent the only verdicts in asbestos premises liability cases in North Carolina and are thus key to proper valuation of these claims.

13.     Plaintiffs admit that initially, original x-rays, CT scans, information on other claims made by the Plaintiffs, information regarding settlements and employer medical records were not provided to Defendants. Each of the items listed by Defendants in this paragraph were neither specifically requested by Defendants at the Hearing, nor did the transferee judge order production of those items at the Hearing. (Exhibit A). At the Hearing Judge Weiner gave Defendants a full and fair opportunity to specify that information needed to value claimants' cases. (Exhibit A). Despite the fact that the transferee judge did not direct plaintiffs to produce this information at the Hearing, Defendants demanded its production. (Exhibit C). Nonetheless, plaintiffs counsel attempted to accommodate Defendants' requests for additional evaluative information by providing numerous independent medical examinations.

14.     Plaintiffs admit that Defendants made settlement offers to Plaintiffs on the
Agner case claims.  Except as herein admitted the remaining allegations contained in
paragraph 14 are denied.    Defendants made unreasonable settlement offers of
approximately $250.00 per claim.  (Exhibit D).  These settlement offers are patently
unreasonable given the jury verdicts returned in Rowan County for co-workers of these
claimants, without cancer.  Those three claimants were awarded $400,000.  Plaintiff's
settlement offers are significantly less than the award returned by a jury.  These are also
unreasonable in view of the decades of exposure and serious and egregious diseases
suffered by Plaintiffs as a consequence thereof.

15.     Plaintiffs admit that Defendants reiterated their request for additional
information at the May 7, 1999 call.  Each of the items listed by Defendants in this
paragraph were neither specifically requested by Defendants at the Hearing, nor did the
transferee judge order production of those items at the Hearing.  Despite the fact that the
transferee judge did not direct plaintiffs to produce this information, Defendants
continued to demand its production.

16.     Plaintiffs admit that in the spirit of cooperation and desire to work out a
reasonable resolution to these matters, Plaintiffs provided by letter dated May 14, 1999,
additional information.  The additional information provided was neither directed to be
produced by the transferee judge, nor was it specifically requested by Defendants at the
Hearing.    Plaintiffs admit that the initial settlement offers on the Plaintiffs' cases have
not been modified from their original demands.  Plaintiffs have not modified their
demands because of their objective reasonableness based on the jury verdicts and the
clear unreasonableness of Defendants' counter-offers.  Despite the fact that Plaintiffs

10

provided the discovery they were directed to provide by the transferee judge, and despite the fact that Plaintiffs supplemented the materials supplied voluntarily to aid in resolution of these claims, Defendants have only altered their initial settlement offers in very minor amounts, those amounts equaling at most, in all instances, a few hundred dollars. Defendants initial settlement offers are so patently unreasonable, that it is obvious Defendants are not complying with Judge Weiner's directive to make a reasonable settlement offers. Plaintiffs have always maintained a willingness to <u>seriously</u> discuss reasonable settlement offers. (Exhibit E).

17. Plaintiffs deny the allegations contained in paragraph 17. On May 14, 1999, again in a good faith effort to resolve these claims, counsel for Plaintiffs sent a letter to counsel for Defendants providing additional information regarding the factual basis of the claims against Fluor Daniels, Inc. (Exhibit F). The additional information provided was neither directed to be produced by the transferee judge, nor was it specifically requested by Defendants at the Hearing.

18. Plaintiffs admit that a conference call was held on July 14, 1999. Except as herein admitted, the allegations of paragraph 18 are specifically denied. There has not been a lack of information provided by Plaintiffs. Plaintiffs have supplemented the information produced numerous times. Clearly, by his suggestion of remand, Judge Weiner is also of the opinion that claimants have substantially complied with what was required by his discovery orders.

19. Plaintiffs admit that on January 26, 2000, Plaintiffs advised Judge Weiner that plaintiffs had provided the discovery ordered for production by Judge Weiner, and despite that fact the cases had not settled. Except as herein admitted, the allegations of

paragraph 19 are specifically denied.  At the 1999 Hearing, Judge Weiner indicated that if

after production of the discovery and demands, reasonable responses to the settlement

demands were not made by Defendants, he would remand the cases.  (Exhibit A).

| THE COURT: | Today is the 17th, Let's say by the 30th you get everything to him. |
|---|---|
| MS. WALLACE: | We can do it, and by the 17th he'll give us a response. |
| THE COURT: | If they say they want $20.00 and you offer $5.00 that one thing.  If you reach an impasse, I'll remand the cases back. |

As indicated above, given the patently unreasonable amount of Defendants settlement

offers, and Judge Weiner's indication that failure of the Defendants to make reasonable

settlement offers would result in a remand, Plaintiffs sought remand rather than continue

to accommodate Defendants' demands to no avail.

20.    Plaintiffs admit that on May 9, 2000, again in an effort to work out a

reasonable resolution of these claims, they provided additional medical information

regarding the plaintiffs to Defendants.  Plaintiffs' admit they did not revise their initial

settlement offers given their objective reasonableness in light of the jury verdicts.  Except

as herein admitted, the allegations of paragraph 20 are specifically denied.  Defendants

continued to refuse to make individual settlement offers based on an evaluation of each

individual claim. (Exhibit D).  It is impossible to justify a difference of only a few

hundred dollars defendants offered in settlement to claimants with asbestos related lung

cancer and claimants without cancer.

21.    Plaintiffs admit the allegations in paragraph 21.

22.    Plaintiffs admit that on August 8, 2002, by letter to Bruce Lassman, Plaintiffs requested an immediate order of remand.  Except as herein admitted the remaining allegations of paragraph 22 are denied.  Throughout the entire course of this litigation, Plaintiffs have made additional attempts to provide additional information to Defendants to aid in their evaluation of these claims.   Despite this, each time additional information is provided, Defendants find a reason why the additional information voluntarily provided is insufficient or simply request different additional discovery. (Exhibit D).

23.    Plaintiffs admit the allegations contained in paragraph 23.

24.    Plaintiffs admit the allegations contained in paragraph 24 pertaining to the contents of Defendants' counsel's August 13, 2002 letter.  Except as herein admitted the remaining allegations of paragraph 24 are denied.  Plaintiffs have previously provided Defendants with the medical and exposure information directed to be provided by Judge Weiner.  Plaintiffs have always maintained a willingness to <u>seriously</u> discuss reasonable settlement offers.  (Exhibit E).  Further, Defendants' refusal to make settlement offers on an individualized basis places Plaintiffs' counsel in a conflict of interest and are offers to which Plaintiffs' counsel can not respond until same are individualized upon the facts of each case. (Exhibit G).

25.    Plaintiffs admit the allegations contained in paragraph 25 pertaining to the contents of Defendants' counsel's August 19, 2002 letter.  Except as herein admitted the remaining allegations of paragraph 25 are denied.  Plaintiffs have previously provided Defendants with the medical and exposure information directed to be provided by Judge Weiner.

26.     Plaintiffs admit the allegations contained in paragraph 26 pertaining to the contents of Defendants' counsel's August 19, 2002 letter.  Except as herein admitted the remaining allegations of paragraph 26 are denied.  Plaintiffs have always maintained a willingness to seriously discuss reasonable settlement offers.  (Exhibit E.)  Further, Defendants' refusal to make settlement offers on an individualized basis places Plaintiffs' counsel in a conflict of interest and are offers to which Plaintiffs' counsel can not respond until same are individualized upon the facts of each case. (Exhibit G).

27.     Plaintiffs admit the allegations contained in paragraph 27 pertaining to the contents of Defendants' counsel's September 3, 2002 letter.  Except as herein admitted the remaining allegations of paragraph 27 are denied.  Plaintiffs have previously provided Defendants with the medical and exposure information directed to be provided by Judge Weiner.  Plaintiffs provided the information directed to be produced by Judge Weiner in the 1999 Hearing.  As indicated above, Judge Weiner stated at that Hearing that if after the information was provided the cases could not be settled, he would remand the cases.

28.     Plaintiffs admit the allegations contained in paragraph 28 pertaining to the contents of Defendants' counsel's September 3, 2002 letter.  Except as herein admitted the remaining allegations of paragraph 28 are denied.  The crux of Defendants' argument to vacate the Conditional Remand Order focuses an alleged failure of Plaintiffs to provide the information requested.  Despite those contentions, Defendants made very minor alterations to their settlement offers in or around August of 2002.

29.     Plaintiffs admit the allegations in paragraph 29.  As discussed more fully above, the initial settlement demands made by Plaintiffs are based in reason and on jury

verdicts returned both in North Carolina and around the country in comparable cases. (Exhibit D).

30.     Plaintiffs admit the allegations in paragraph 30.

31.     Plaintiffs deny the allegations contained in paragraph 31.  Plaintiffs have provided the information required by Judge Weiner as discussed fully above.  Defendants revised settlement offers remain so patently unreasonable as to indicate Defendants' unwillingness to resolve these cases, and the necessity that same be remanded to be resolved by trial.  In accordance with the applicable law, Judge Weiner has, by his suggestion that these cases be remanded, indicated a belief that Plaintiffs have provided the information they were directed to provide.   "The statute contemplates that the transferee judge will conduct the common pretrial proceedings… the transferee judge considers appropriate."  *In re Dalkon Shield Products Liability Litigation*, 453 F.Supp. 110.  The law clearly indicates that a suggestion of remand by the transferee judge is "an expression that he perceives his role under Section 1407 to be completed."  *Id.*  Only the Defendants believe that Plaintiffs have not provided the information ordered.  Certainly, Judge Weiner would not have suggested remand if he believed Plaintiff did not comply with his discovery directives.  Moreover, as indicated above, Judge Weiner indicated at the Hearing that if Defendants failed to make reasonable settlement counter-offers, he would remand the actions.  It can be argued that Judge Weiner's suggestion of remand is an indication of his belief that Defendant's settlement counter-offers are unreasonable.

32.     Plaintiffs admit the allegations contained in paragraph 32 pertaining to the contents of Defendants' counsel's January 14, 2003 letter.  Except as herein admitted the

remaining allegations of paragraph 32 are denied.  As discussed fully above, Plaintiffs

take exception to Defendants representation that its requests were  "unanswered."

33.    Plaintiffs deny the allegations contained in paragraph 33.   As fully

discussed above, Plaintiffs have provided the information required of them and have

refused to respond to the Defendants' purported settlement offers.   Defendants'

settlement offers indicate their unwillingness to resolve these claims short of trial.

34.    Plaintiffs deny the allegations contained in paragraph 34.   As fully

discussed above, Plaintiffs have provided the information required of them and have

refused to respond to the Defendants' purported settlement offers.   Defendants'

settlement offers indicate their unwillingness to resolve these claims short of trial.

35.    Plaintiffs admit the allegations contained in paragraph 35.   The North

Carolina jury verdicts support the objective reasonableness of Plaintiffs' demands.

36.    Plaintiffs deny the allegations contained in paragraph 36.   Plaintiffs

contend that they have complied with the transferee court's clear directives regarding the

discovery and settlement offers to be provided to Defendants.  As discussed fully above,

the fact that the transferee judge has suggested remand is an indication that he perceives

his role as complete and the appropriate common pretrial proceedings to be complete.

The bare-essence of Defendants' Motion to Vacate the Conditional Remand order is the

Defendants' belief that pretrial discovery is not complete.   The law is clear that

incomplete discovery in and of itself is not a reason to delay remand to the transferor

court.  *See*, *In re Baseball Bat Antitrust Litigation*, 112 F.Supp.2d 1175 (JPMDL 2000).

In that case, the Panel responded to certain plaintiffs' arguments that remand was

improper while discovery remained to be completed saying, "in considering the question

of remand, the Panel has consistently given great weight to the transferee judges' determination that remand of a particular action at a particular time is appropriate because the transferee judge, after all, supervises the day-to-day pretrial proceedings." *Id* at 1177.   The Panel honored the transferee judge's suggestion of remand despite the incomplete discovery. *Id.* Further, no where in Defendants' motion have they made any showing that any discovery issues remaining to be resolved require the special knowledge and expertise of Judge Weiner.   In the event the Panel does find additional discovery remains to be completed, there has been no showing that that remaining discovery requires the benefits of Judge Weiner's knowledge and expertise.   As such, any remaining discovery issues can be just as efficiently and expertly resolved by the transferor court. The law is clear that any pretrial issues remaining to be resolved which were not addressed by the transferee court, can be properly the province of the transferor court after remand. *See, In re Dalkon Shield Products Liability Litigation*, 453 F.Supp. at 110.

Finally, it should be noted that "Section 1407 does not authorize the Panel to act as an appellate forum for every litigant disgruntled by the rulings of a transferee judge." *In re Multidistrict Private Civil Treble Damage Litigation Involving Plumbing Fixtures*, 332 F.Supp. 1047, 1048 (JPMDL 1971).  The facts indicate that plaintiffs have complied with Judge Weiner's discovery orders.  The law clearly indicates that Judge Weiner's role under Section 1407 is complete.  As such, Defendants' Motion to Vacate Conditional Remand Order should be denied, and Plaintiffs' cases should be remanded to the transferor court.  In the alternative, should the Panel find that pretrial discovery is not complete, Plaintiffs' cases should be remanded to the transferor court as pendency of

discovery is not by itself sufficient grounds upon which to vacate remand.  Defendants

have made no showing and indeed have not even alleged that Judge Weiner's knowledge

and expertise is required to resolve any remaining discovery issues.   Indeed, Judge

Weiner is clearly of the opinion that his knowledge and expertise is no longer required to

ensure the efficient movement of these cases to trial.


Plaintiffs respectfully request that the Panel deny Defendants Motion to Vacate

the Conditional Remand Order, and remand Plaintiffs' cases to the transferor courts in

accordance with Judge Weiner's suggestion.




Respectfully Submitted,


Mona Lisa Wallace
Christopher D. Mauriello
WALLACE & GRAHAM, P.A.
525 North Main Street
Salisbury, NC 28144
(704) 633-5244

Attorneys for Plaintiffs Agner, et al.


Date: May 6, 2003


18

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

BEFORE THE JUDICIAL PANEL IN MULTIDISTRICT LITIGATION
MDL DOCKET NO. 875

MAY 13 2003

FILED
CLERK'S OFFICE

IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

RE:    Agner, et al v. Fluor Daniel, Inc, et al
       NCW 3:98 CV 220-T

       Agner, et al v. Fluor Daniel, Inc., et al
       NCW 3:98 CV 138-T

## PROOF OF SERVICE

This is to certify that copies of the following pleadings:

**PLAINTIFFS' AGNER, ET AL'S RESPONSE TO MOTION AND BRIEF IN OPPOSITION TO VACATE CONDITIONAL REMAND ORDER BY DEFENDANTS FLUOR DANIEL, FLOUR DANIEL ENVIRONMENTAL SERVICES, INC., FLUOR DANIEL SERVICES CORPORATION AND SOS INTERNATIONAL, INC.**

was served upon the following counsel by depositing same in the Unites States Mail, postage prepaid on May 6, 2003.

James B. Pressly, Jr.
Haynesworth Sinkler Boyd, PA.
Post Office Box 2048
Greenville, SC  29602-2048

All counsel on Panel Service List attached.

_Mona Lisa Wallace_

WALLACE and GRAHAM, P.A.

**PANEL SERVICE LIST (Excerpted from CRO)**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

*Vonnie K. Agner, et al. v. Fluor Daniel, Inc., et al.*, E.D. Pennsylvania
(W.D. North Carolina, C.A. No. 3:98-138)
*Vonnie K. Agner, et al. v. Fluor Daniel, Inc., et al.*, E.D. Pennsylvania
(W.D. North Carolina, C.A. No. 3:98-220)

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, DC 20036

David A. Damico
Burns, White & Hickton
Fifth Avenue Place, Suite 2400
120 Fifth Avenue
Pittsburgh, PA 15222

Raymond P. Forceno
Forceno & Hannon
Philadelphia Bourse Building
Suite 1000
Independence Mall East
Philadelphia, PA 19106

Ellen B. Furman
Goldfein & Joseph
1600 Market Street, 33rd Floor
Philadelphia, PA 19103

William M. Graham
Wallace & Graham, P.A.
525 North Main Street
Salisbury, NC 28144

Susan M. Hansen
Brownson & Ballou
4800 U.S. Bank Place
601 Second Avenue, South
Minneapolis, MN 55402

Robert H. Hood
Hood Law Firm
172 Meeting Street
P.O. Box 1508
Charleston, SC 29402

Reginald S. Kramer
Buckingham, Doolittle & Burroughs
50 South Main Street
P.O. Box 1500
Akron, OH 44309

Carter T. Lambeth
Johnson & Lambeth
P.O. Box 660
Wilmington, NC 28402

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102

Ronald L. Motley
Ness, Motley, Loadholt, Richardson &
Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29464

Carl E. Pierce, II
Pierce, Herns, Sloan & McLeod
P.O. Box 22437
Charleston, SC 29422

James B. Pressly, Jr.
Haynsworth, Sinkler & Boyd
75 Beattie Place, 11th Floor
P.O. Box 2048
Greenville, SC 29602

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
Roven, Kaplan & Wells
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA 19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
Detroit, MI 48226

Andrew J. Trevelise
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Mona L. Wallace
Wallace & Graham, P.A.
525 North Main Street
Salisbury, NC 28144

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 13 2003

FILED
CLERK'S OFFICE

A

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

3   IN RE:  ASBESTOS PRODUCTS
    LIABILITY LITIGATION (NO. VI          :
4                                         :
                                          : CIVIL ACTION NO. MDL 875
5   This Document Relates To              :
                                          :
6   LAW FIRM OF WALLACE & GRAHAM          :

7   UNITED STATES DISTRICT COURT          :
    WESTERN DISTRICT, NORTH CAROLINA:  WEDNESDAY, MARCH 17, 1999
8

9   AGNER, 3:98 CV 220 T                  :
    BOST, 3:98 CV 138 T                   : PHILADELPHIA, PENNSYLVANIA
10                                        : 10:30 A.M.

11              BEFORE THE  HONORABLE CHARLES R. WEINER,
12          UNITED STATES DISTRICT COURT, SENIOR JUDGE

13                   MOTION TO REMAND

14  APPEARANCES:

15                           CHRIS MAURIELLO, ESQ.
                                   And
16                           MONA LISA WALLACE, ESQ.
                             WALLACE & GRAHAM, P. A.
17                           525 Main Street
                             SALISBURY, NORTH CAROLINA
18                                           28144

19                           For the Plaintiffs

20                           JAMES B. PRESSLY, JR., ESQ.
                             HAYNSWORTH, MARION, McKAY
21                           & GUSEARD LLP
                             P. O. BOX 2048
22                           GREENVILLE, SOUTH CAROLINA
                                           29602

23                           ROBERT H. HOOD, JR., ESQ.
                             HOOD LAW FIRM, LLC
24                           Post Office 1508
                             CHARLESTON, SOUTH CAROLINA
25                                         29502

                             For the Defendants

1

2

VERTHELIA V. ALBANY
OFFICIAL COURT REPORTER
1234 U. S. COURTHOUSE
Philadelphia, Pa. 19106

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   Proceedings recorded by mechanical stenography.   Transcript
produced through notereadins.

25

1    P R O C E E D I N G S

2    (The following Took Place In Open Court)

3         THE COURT:  I will hear anybody that wants to

4    to be heard.

5         MR. MAURIELLO:  Thank you, Judge.

6         I am Chris Mauriello, representing the

7    Plaintiffs in this case.  I appreciate your having us

8    here this morning.

9         THE COURT:  Tell me what you want.  Tell it to

10   me in English.

11        MR. MAURIELLO:  We are here on a Motion To

12   Remand.

13        THE COURT:  Who is here?

14        MR. MAURIELLO:  The AGNER Group has eighty-

15   five.  We filed that case in State Court.  That was our

16   chosen venue in State Court.  It is a State Court com-

17   plaint.

18        THE COURT:  You have eighty-five plaintiffs?

19        MR. MAURIELLO:  Yes.

20        THE COURT:  How sick are they?

21        MR. MAURIELLO:  The lion shares of them have

22   asbestos.

23        THE COURT:  Trully?

24        MR. MAURIELLO:  Yes, sir.

25        THE COURT:  How many placque cases?

1            MS. WALLACE:   None.

2            THE COURT:   So why are you crossing your

3  fingers when you say that?

4            So how many mesotheliomas?

5            MR. MAURIELLO:   I don't think so in this

6  group.

7            THE COURT:   What are you asking for?

8            MS. WALLACE:   These are premises cases.

9            THE COURT:   How old are your people average?

10          MS. WALLACE:   Fifty-five to sixty.

11          THE COURT:   Are they working?

12          MS. WALLACE:   Some are and some aren't.

13          THE COURT:   Have you settled other cases

14  like this?

15          MS. WALLACE:   We have not settled the premises

16  cases with them.

17          THE COURT:   These are the only ones left?

18          MR. MAURIELLO:   Mr. Pressly represents four

19  of them.

20          THE COURT:   Whom do you represent?

21          MR. PRESSLY:   I represent FLUOR DANIEL, INC.

22          THE COURT:   Are these brake cases?

23          MR. HOOD:   No, sir.   I represent W. F. Gray

24  Installation Services.   Its W. F. Gray.

25          THE COURT:   Is there an average number that

1    pay on these cases?

2            MR. HOOD:  No, your Honor, we were recently

3    brought into this.  These cases commenced in 1998.

4    There is only one on the premises cases pending in

5    North Carolina.

6            THE COURT:  Would you pay any money?

7            MR. HOOD:  We don't know.  The information we

8    have received on the average age --

9            THE COURT:  What do you need to make a

10   decision?

11           MR. HOOD:  I need some information.  This is

12   a series of cases where all of the plaintiffs went to

13   the same doctor.  I need to know much more about the

14   medical condition of these people.

15           THE COURT:  If she sent you a complete medical

16   file could you make a decision?

17           How soon could you get the medical information

18   to him?

19           MS. WALLACE:  Within a week.

20           THE COURT:  Would you do that -- send him the

21   medical information and we will have a telephone con-

22   ference, and if you can't settle it I will remand it.

23           MR. HOOD:  The medicals, Your Honor, the

24   standard medical information.

25           THE COURT:  Tell her what you need.

1    MR. HOOD:  Medical information from the

2   treating physicians.

3    MS. WALLACE:  Their regular family physicians.

4   I can do that but it will take more than a week.

5    THE COURT:  How about the tissue slides --

6   any biopsies been done?

7    MR. HOOD:  If there is I need the tissues.

8    THE COURT:  You will send him medical treating

9   physicians and where there is a biopsy.

10    What else do you need?

11    MR. HOOD:  What they did -- the work.

12    THE COURT:  And the exposure and lenght of

13   time to the exposure and any witnesses they had that

14   saw the bag or the contents.

15    What you are really doing is preparing for

16   trial without going through the other parts of it.

17   You ought to give hem a demand, a reasonable demand and

18   I expect you to give her a reasonable response.

19    Suppose on Monday she sent you for Mr. A --

20   how soon would you give her an answer?

21    MR. HOOD:  Within two weeks.

22    THE COURT:  Today is the 17th.

23    MR. HOOD:  Can I ask for one other thing?

24   This is the situation, Your Honor, whereof the group --

25   you have got forty of them have filed in the State Court

in Ohio.

MS. WALLACE:  We are not aware of that until today.  These aren't against manufacturers.  We put in claims for some to recover against manufacturers.  Another lawyer handled that.  We won't take any further action --

THE COURT:  Today is the 17th.  Lets say by the 30th you get everything to him.

MS. WALLACE:  We can do it and by the 17th he will give us a response.

THE COURT:  If they say they want $20.00 and you offer $5.00 thats one thing.

If you reach an impass I will remand the cases back.

It seems to me you should be able to get the cases done.

Do you have the list of the names of the people they have?

MR. HOOD:  We do.  I think the current list -- I believe I missed one or two.

MR. MAURIELLO:  It raises an interesting issue.  There are two cases.  One case we have a motion to remand and that's the AGNAR case.  The second case came here from a different proceedure and has additional plaintiffs.  They are identical.

1      THE COURT:  Give him all of it so that the

2  total number of plaintiffs you have is what?

3      MR. MAURIELLO:  Eighty-five in the AGNAR

4  case.

5      MR. HOOD:  It started out with a hundred and

6  --

7      THE COURT:  How many are there now?

8      MR. HOOD:  AGNAR one-hundred fifty.

9      MR. MAURIELLO:  It should be less than that.

10     THE COURT:  You have eighty-five.  It is

11 about a hundred and ten.

12     MR. MAURIELLO:  Yes.

13     MR. HOOD:  We would be glad to look at BOST.

14     THE COURT:  What do you need from him --

15 the same things?

16     MR. PRESSLY:  I guess.  My guys weren't in

17 the plant at the time they alleged.

18     THE COURT:  If you take the position you were

19 not there and you are not going to pay we will deal

20 with that.

21     MR. HOOD:  The other defendant has been

22 served but never responded.

23     THE COURT:  Would you take a default against

24 them?

25     MR. MAURIELLO:  It was brought here -- if the

1    case was transferrred here -- yes, we could.

2              THE COURT:  Why don't you do that -- why

3    don't you send him a notice -- return receipt requested

4    -- that you are going to move for default judgment.

5              You can send him the Order you sent the

6    Court with a short statement.  You file an affidvit

7    that you sent it by certified mail to him.  You can

8    then move for default.

9              You will make a decision to do what -- file

10   a motion for dismissal.

11             MR. PRESSLY:  I will, Your Honor.

12             THE COURT:  We are going to have a conference

13   on the 17th of May.  If you are not going to do any-

14   thing let me know.

15             MR. HOOD:  On the 17th of May -- Will that

16   be here or by telephone?

17             THE COURT:  By telephone.

18             MR. LASSMAN:  That conference is April 17th,

19   Judge.

20             THE COURT:  I think thats a Monday.  If it

21   turns out you don't want to pay anything I will remand

22   it back.

23             You will join the call and tell us if you

24   are going to do anything.

25             You will take up the matter of an entry of

1     default judgment and file the affidavit.

2              Thank you very much.

3                     ———

4

5              (Court Adjourned)

6                     ———

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**B**

# WALLACE and GRAHAM, P.A.

## ATTORNEYS AT LAW

MONA LISA WALLACE †
WILLIAM M. GRAHAM
RICHARD L. HUFFMAN
RICHARD J. LUTZEL ††
CHRISTOPHER D. MAURIELLO †††
PETER F. MORGAN ††††
M. REID ACREE, JR. †††††

525 NORTH MAIN STREET
SALISBURY, NORTH CAROLINA 28144

TELEPHONE: (704) 633-5244
FACSIMILE:  (704) 633-9434
(704) 633-0619
† Also licensed in SC
†† Also licensed in NY, DC and SC
††† Also licensed in NY, FL and SC
†††† Also licensed in VA
††††† Also licensed in GA and SC

March 24, 1999

VIA HAND DELIVERY

James B. Pressly, Jr., Esquire
Haynsworth Marion McKay & Guerard
Two Insignia Financial Plaza
75 Beattie Place
Post Office Box 2048
Greenville, South Carolina  29602

      Re:    *Vonnie Agner, et al. v. Fluor Daniel, Inc., et al.*
               *Robert Bost, et al. v. Fluor Daniel, Inc., et al.*

Dear Jim:

    As promised by Mona Wallace at the last hearing before Judge Weiner, we are complying with the wishes of the Court in providing work histories, diagnosing medical reports, pulmonary function tests, chest x-rays and CT scan reports.  Also, we are providing any and all medical records from family physicians and other health care providers.

    Again, pursuant to the wishes of the Court, we are providing summaries of records provided herein as well as settlement demands on Schedule A which encompasses *Vonnie Agner, et al.* and Schedule B, which encompasses *Robert Bost, et al.*

    Should you need any additional information, please call immediately and we will provide that information as soon as possible.  It is my understanding that you are to provide settlement offers in these cases no later than March 30, 1999.

             Very truly yours,

             William M. Graham

WMG/bgm
Enclosures

C

# HAYNSWORTH, MARION, McKAY & GUÉRARD, L.L.P.

### ATTORNEYS AT LAW

1201 Main Street
Suite 2400
Post Office Drawer 7157
Columbia, South Carolina 29202
(803) 765-1818
Facsimile (803) 765-2399

75 Beattie Place
Two Insignia Financial Plaza — Eleventh Floor
Post Office Box 2048
Greenville, South Carolina 29602
(864) 240-3200
Facsimile (864) 240-3300
April 13, 1999

134 Meeting Street
Fourth Floor
Post Office Box 1119
Charleston, South Carolina 29402
(843) 722-7606
Facsimile (843) 724-8016

Reply to Greenville Office
Direct Dial: (864) 240-3277
Fax: (864) 240-3336
Internet Address: jbpressly@hmmg.com

Mr. Bruce Lassman
Law Clerk to The Honorable Charles R. Weiner
United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

Re:   Agner, et al. v. Fluor Daniel, Inc., et al.
      USDC-WDNC No. 3:98 CV220T
      Bost et al. v. Fluor Daniel, Inc.
      USDC-WDNC No. 3:98 CV 138 T

Dear Mr. Lassman:

I have reviewed the information provided by Wallace and Graham on the *Agner* group of plaintiffs. Wallace and Graham also provided information on the *Bost* group of plaintiffs, apparently in response to our motion to dismiss these claims. The *Bost* group will be dealt with in a separate letter.

Of the 85 claims in the *Agner* group, the mix consists of one malignancy and 84 asbestosis claims. There are no death cases. Of the 84 asbestosis claims, 52 have a 0% disability or normal pulmonary function tests. Seventeen of the 84 have some evidence of obstructive disease. Thirteen of the 84 have some indication from one of the physicians to whom the plaintiff was referred by Wallace and Graham of some restrictive component, although the same notes reflect normal lung volumes and spirometry. All are either currently working or are retired, apparently for reasons unrelated to asbestos (this is somewhat difficult to determine since much of the information regarding the basis for the disability in those cases in which a disability retirement was taken was not sent to me).

Wallace and Graham provided demands in these cases ranging from a low of $25,000 to a high of $75,000.

·Mr. Bruce Lassman
Page 2
April 13, 1999

As I began my review, it became apparent that all of the plaintiffs had one thing in common, i.e., they were screened by Dr. Dula, a radiologist in the Salisbury area. His x-ray and CT interpretations of asbestosis and/or asbestos-related pleural "disease" are the common denominators in all of the claims. I asked Wallace and Graham to send me the original x-rays and CT scans in order for me to have them reviewed independently. Ms. Wallace indicated that the court had not instructed her to send this material and that she would not provide them to me.

The significance of the radiology in these cases is underscored by the fact that in most cases, the pulmonologist to whom the plaintiffs were subsequently sent relied upon the interpretations of Dr. Dula in reaching their opinions that asbestosis might exist despite normal pulmonary testing and physical examination.

It is my understanding that the x-rays and CT scans done in the course of this screening are in the possession of Wallace and Graham. It should not be a burden for Wallace and Graham to provide them to me for my review. Furthermore, such a review is needed, given the unique situation presented here, in order to evaluate the accuracy of these interpretations.

At our hearing on March 17, Ms. Wallace was asked to provide all information on other claims made on behalf of these plaintiffs. None of this material was provided. I am attaching what information I have found regarding other third party lawsuits initiated on behalf of the same *Agner* plaintiffs (*see* Attachment B). These actions assert claims against product manufacturers and distributors as well as this defendant. I am not aware of any other third party suits pending for any of the other plaintiffs although I note that several files indicate that Baron and Budd are involved. This raises the question whether there are any Texas actions pending for any of these other plaintiffs.

I have no information regarding pending or resolved workers compensation actions for asbestos-related illnesses brought by any of the plaintiffs in this action. Additionally, I have not received any information regarding disability claims made by certain of these plaintiffs as reflected in the files or claims made against bankrupt manufacturing defendants and/or voluntarily settling defendants such as Owens Corning. In view of the demands made on these cases, I need information about any and all such settlements and the claims pending. Specifically, I need the Johns Manville proof of claims forms and attachments submitted by any of these plaintiffs in order to evaluate the claims for my client.

Some of the information provided indicates that the plaintiffs' employer, Hoechst, performed its own annual examinations of these plaintiffs. Apparently, these examinations included breathing tests and chest x-rays. While I find reference to such

Mr. Bruce Lassman
Page 3
April 13, 1999

examinations, none of this material is contained in the information provided. I believe that this information is available to counsel for plaintiffs, especially if workers compensation claims were filed, and I would like these to be provided to me as well. It appears that about 38 of the plaintiffs are still working at Hoechst.

In certain cases there is specific medical information which was not provided that I need as well. I have made a separate listing of these items by case involved (*see* Attachment A).

Mr. Graham called me about my review of these claims and Fluor Daniel's response to his demands. We discussed the insurance coverage dispute between my client and its carrier, St. Paul Insurance Co., that is currently in litigation in Greenville County, South Carolina. It is my understanding that Mr. Graham has also been in direct contact with St. Paul about this issue.

St. Paul is monitoring these proceedings and is interested in evaluating the merits of the claims, notwithstanding the coverage dispute. I have kept St. Paul advised of my review of the information provided and informed them that I will be seeking additional information in order to properly evaluate the claims in the *Agner* group. At this time, neither Fluor Daniel nor St. Paul will entertain discussions of demands in the range of $25,000 to $75,000 per case as submitted by Wallace and Graham. After reviewing the additional information requested, I believe that Fluor Daniel and St. Paul they will be in a better position to evaluate what settlement contribution might be appropriate and discuss how such settlement amounts might be paid.

One of the items the court instructed Wallace and Graham to provide was information regarding the basis for the claims against Fluor Daniel. In the information submitted, there is nothing that bears on this issue. For the vast majority of the claimants involved, the exposure history provided through the medical records would indicate that any such exposure occurred as part of the plaintiff's normal duties as a Hoechst employee and involved the direct manipulation of asbestos containing products in that capacity. Further, there is no indication as to why W.F. Gray is involved, nor do the work histories provided in these records indicate that W.F. Gray could be involved in most of these claims. For example, one plaintiff, Alma Ivery, told her physician that she was exposed to asbestos because the pipes and machinery in her work area vibrated, and she believed that this caused the release of asbestos fibers into the air. It is unclear how this would relate to any defendant sued in this action.

In summary, the following additional information is needed in order to complete an evaluation of these claims:

Mr. Bruce Lassman
Page 4
April 13, 1999

1.    Dr. Dula's chest x-rays and CT scans.
2.    Information on all other claims submitted or filed by each plaintiff as outlined above.
3.    Hoechst medical records on each plaintiff.
4.    Specific medical information on certain individual plaintiffs as outlined in Attachment A to this letter.
5.    The factual basis for the claim against the Fluor Daniel defendants in each case.

Given the medical status of the claims involved, the fact that the majority are also plaintiffs in other pending third party litigation in MDL and Ohio state courts, and the fact that Wallace and Graham are also currently involved in discovery in 324 asbestos cases in South Carolina state court in which these defendants are also involved, I believe that proceeding with the further evaluation of the *Agner* claims as outlined in this letter is the most expeditious use of attorney time at this point and has the best chance of leading to meaningful settlement discussions.

Very truly yours,

HAYNWORTH, MARION, McKAY & GUÉRARD, L.L.P.

James B. Pressly, Jr.

JBPJr:pmb

Enclosure

cc:   William M. Graham

## ATTACHMENT A

1. Agner          Information from railroad screening in 1985
2. Byrd           Dr. Proctor report
3. Daniels        X-rays and interpretations from 1/20/85
4. Doby           B-reader's interpretation
5. Ellis          Interpretation of 12/11/96 x-ray
6. Fonesca        Dr. Wodeski's consult reports
7. Goodlett       B-reader interpretation
8. Goodman        Social Security Disability file
9. Hendrickson    Dr. Curseen records
10. Holmes        CT and interpretation of CT ordered by Dr. Alford 8/27/97
11. Norman Holt   Dr. Gaziano's records and report of 1995, x-rays of 11/94 and interpretation by Dula.
12. Betty Jackson Dr. Curseen report and x-ray and CT along with interpretations.
13. Kepley        Disability claim file
14. Menster       B-reader interpretation (this is a silicosis claim).
15. Paxton        Disability claim file.
16. Redmond       Pathology materials
17. Ada Robertson    1990 Proctor records and Dr. Newman follow up on biopsies, biopsy materials.
18. Shive         7/20/93 x-ray and report of same done for Dr. Ward, other radiology reports from 1990 forward.
19. F. Smith      Old work up for lung disease referred to in records.
20. R. Smith      Dr. Burke's records.
21. Stirewalt     Dr. Burke's records.
22. Waddell       Disability claim file.
23. Wilhelm       Disability claim file.
24. Wise          Dr. Curseen records and report.

**D**

# WALLACE and GRAHAM, P.A.

## ATTORNEYS AT LAW

MONA LISA WALLACE †
WILLIAM M. GRAHAM ††
RICHARD L. HUFFMAN
CHRISTOPHER D. MAURIELLO †††
CHRISTOPHER J. HICKEY ††††
M. REID ACREE, JR. †††††
BARBARA L. CURRY
JILL N. CALVERT ·
MICHAEL B. PROSS ··
EDWARD L. PAULEY ···
MATTHEW R. WHITLER ····
JEAN SUTTON MARTIN
SALLY McCLURE WATERS
REBECCA L. SMITHERMAN
JAMES C. CUNNINGHAM, III

525 NORTH MAIN STREET
SALISBURY, NORTH CAROLINA  28144

TELEPHONE: (704) 633-5244
FACSIMILE:  (704) 633-9434
(704) 633-0619

† Also licensed in SC and TX
†† Also licensed in TX
††† Also licensed in NY, FL, OH & SC
†††† Also licensed in OH
††††† Also licensed in GA and SC
· Also licensed in SC
·· Also licensed in MD and NY
··· Also licensed in KY and WV
···· Also licensed in WV and SC

January 3, 2003

Bruce Lassman
Law Clerk to the Honorable Charles R. Weiner
US Courthouse
601 Market Street
Philadelphia, PA  19106

      RE:    Robert F. Bost, et al. v. Fluor Daniel, Inc., et al.
                3:98 CV 138-T

                Vonnie Agner, et al v. Fluor Daniel, Inc., et al.
                3:98 CV 220-T

Dear Mr. Lassman:

      I represent the claimants and Jim Pressley represents Flour Daniel in the above cases.  Some months ago you advised us during a conference call that if the above cases were not promptly resolved, they would be remanded.  Our firm has been involved in correspondence and has had numerous conference calls with Judge Weiner and with you almost four years in an attempt to get the cases either settled or remanded.  Specifically, the Complaint for *Bost et al.* was filed on March 6, 1998 and the *Agner et al.* Complaint was filed on April 17, 1998, as a result of asbestos exposure at one North Carolina plant.  None of the Defendants in the lawsuit are manufacturers of asbestos.

      There was actually a hearing on our request for remand on March 17, 1999 and at that time Judge Weiner indicated that he would be remanding the cases if after our firm sent medical information the cases did not settle. (See Exhibit 1 and Exhibit 2).  Each time the information was sent, Defendant would only ask for additional discovery which would again be responded to but no meaningful settlement offer was forthcoming.

Mr. Bruce Lassman
January 3, 2003
Page Two


Approximately five months ago both Jim and I were involved in a conference call with you. You indicated therein that it was time to remand the cases unless they were promptly settled. Pursuant to your directive, our firm thereafter sent the Defendant additional information to review in order to allow it to make a meaningful settlement offer. Unfortunately no meaningful settlement offer has been forthcoming.

In summary, notwithstanding years of waiting and tremendous amounts of settlement information being provided to Defendant, the Defendant has made no attempt to value each individual case or to make a meaningful settlement offer. The offer in these cases after all of these years was only $250.00 per case regardless of the circumstances of the individual or the liability evidence in the cases. In fact, the offers were not increased, notwithstanding our firm providing additional information after our last conference call. Obviously such an offer is not meaningful. In fact, just last month a Rowan County jury awarded approximately $400,000.00 to 3 Fluor Daniel workers who worked at the same plant as the cases currently before you and who also suffered from asbestosis. Unfortunately some of the claimants in the cases sought to be remanded have died of asbestosis and/or cancer while these cases have been in MDL.

I would ask that you bring this matter immediately to the attention of Judge Weiner and that an Order of Remand be promptly entered. I am enclosing proposed Orders for your consideration.

I thank you for your consideration and assistance in this regard. With kindest regards, I remain,

Sincerely yours,

Mona Lisa Wallace

MLW/cgp

cc:   Jim Pressley (w/encl.)

E

# WALLACE and GRAHAM, P.A.

## ATTORNEYS AT LAW

MONA LISA WALLACE ϯ
WILLIAM M. GRAHAM
RICHARD L. HUFFMAN
RICHARD J. LUTZEL ϯϯ
CHRISTOPHER D. MAURIELLO ϯϯϯ
CHRISTOPHER J. HICKEY ϯϯϯϯ
M. REID ACREE, JR. ϯϯϯϯϯ
BARBARA L. CURRY
JAMES S. WALKER
JILL N. CALVERT ϯ
MICHAEL B. PROSS •
EDWARD L. PAULEY ••
MATTHEW R. WHITLER •••
BRIAN J. ODOM ϯ
JEAN SUTTON MARTIN

525 NORTH MAIN STREET
SALISBURY, NORTH CAROLINA  28144

TELEPHONE: (704) 633-5244
FACSIMILE:   (704) 633-9434
                    (704) 633-0619

ϯ Also licensed in SC
ϯϯ Also licensed in NY, DC and SC
ϯϯϯ Also licensed in NY, FL, OH and SC
ϯϯϯϯ Also licensed in OH
ϯϯϯϯϯ Also licensed in GA and SC
• Also licensed in MD and NY
•• Also licensed in KY and WV
••• Also licensed in  WV

May 9, 2000

## VIA FACSIMILE and U.S. MAIL

Mr. James Pressly
Haynesworth, Marion, McKay & Guerard, L.L.P.
Post Office Box 2048
Greenville, South Carolina  29602

> RE:   Agner, et al v. Fluor Daniel, Inc., et al
>          3:98 CV 220-T
>
>          Bost, et al v. Fluor Daniel, Inc., et al
>          3:98 CV 138   T

Dear Jim:

Enclosed herewith you will find additional independent medical examinations and/or panel examinations with regard to certain Plaintiffs in the above-mentioned claims.

Also, given the fact that a conference is now scheduled at the end of the month with Judge Weiner, I was wondering if there was any other information you need from us concerning these claims that would facilitate settlement discussions.

Additionally, I would be most willing to sit down and meet with you prior to the date we are before the Court so that we may discuss settlement and/or iron out any issues between the parties. It has been sometime since we have had any meaningful negotiations. I do have other business in Greenville, so we could schedule a meeting at your office if you are so inclined.

Mr. James B. Pressly
May 9, 2000
Page 2


I appreciate your continued cooperation.


Very truly yours,

WALLACE and GRAHAM, P.A.

Christopher D. Mauriello, Esq.

CDM: smf
Enclosures

**F**

# WALLACE and GRAHAM, P.A.

## ATTORNEYS AT LAW

MONA LISA WALLACE †
WILLIAM M. GRAHAM
RICHARD L. HUFFMAN
RICHARD J. LUTZEL ††
CHRISTOPHER D. MAURIELLO †††
PETER F. MORGAN ††††
M. REID ACREE, JR. †††††
CHRISTOPHER J. HICKEY ††††††
BARBARA L. CURRY

525 NORTH MAIN STREET
SALISBURY, NORTH CAROLINA  28144

TELEPHONE: (704) 633-5244
FACSIMILE:  (704) 633-9434
(704) 633-0619

† Also licensed in SC
†† Also licensed in NY, DC and SC
††† Also licensed in NY, FL and SC
†††† Also licensed in VA
††††† Also licensed in GA and SC
†††††† Also licensed in OH

May 14, 1999

Mr. James B. Pressly, Jr.
Haynesworth Marion McKay & Guerard, LLP
Post Office Box 2048
Greenville, South Carolina  29602

RE:   **Agner, et al v. Fluor Daniel, Inc., et al**
      **In RE: Asbestos Products Liability Litigation (No VI)**
      **Civil Action No.:  MDL 875**

Dear Jim:

As we stated during the recent telephone conference with Bruce Lassman, we were extremely disappointed with the offers made by Flour Daniel in these cases.  We will continue to attempt to negotiate towards the resolution of the claims, but sincerely believe in the overall value of the claims given the individual work histories and exposures.

All of these claims extend from exposure at the Salisbury plant.  Based upon the numerous documents we have obtained from this plant, we know that over 200,000 feet of liner pipe asbestos-containing thermal insulation was removed from the plant.  These claimants were exposed since 1965 in numerous ways including the installation and removal of asbestos-containing insulation, the disturbance of insulation in and around the plant through use of chain falls, maintenance crews, turn-around crews and numerous other methods.  Additionally, there were numerous asbestos-containing products used at the plant in addition to thermal insulation including but not limited to Super 66 (Blue Mud), A-cloth, A-tape, asbestos bricks, cement and sealers.

In furtherance of our discussion, we have enclosed herein copies of numerous independent medical examinations.  These independent medical exams have been conducted by the request of the defense counsel in workers' compensation matters.  These evaluations confirm that the defendant's chosen physicians have reviewed the same diagnosing films and have confirmed that these claimants suffer from asbestosis.

Mr. James B. Pressly, Jr., Esq.
Page 2
May 14, 1999

We, of course, request that you share this information with your client and review these materials in good faith. I would request that we schedule one more conference call with Mr. Lassman after you client has had the opportunity to review these reports.

Finally given the background of these claims, and our review of premises verdicts and settlements across the country, we feel the original demand for each claimant, which was based upon their class impairment, was reasonable and made in good faith. As we mentioned, we certainly feel there is room for further negotiations and we stand by ready to do the same if, and only if Fluor Daniel is willing to attempt to resolve these claims in good faith. Otherwise, we will assume that this exercise is in futility and will seek the Order of Remand that Judge Weiner indicated would be forthcoming.

Please let me know when your client has completed reviewing this information and will schedule another conference call with Bruce Lassman to move these cases forward. I would like to schedule the additional conference call by next Friday if possible because of the continued delays in the handling of these matters. As you know, it has been over a year since this Complaint has been filed and we need to move these cases forward.

Should you have any questions regarding the individual claims or the information provided, please do not hesitate to contact Ms. Wallace or myself

Thank you for your continued assistance in trying to resolve these cases by settlement.

Very truly yours,

WALLACE and GRAHAM, P.A.

Christopher D. Mauriello, Esq.

/smf
enclosures

cc.: Bruce Lassman, Esq. (w/o enc.)

**G**

# WALLACE and GRAHAM, P.A.

## ATTORNEYS AT LAW

MONA LISA WALLACE †
WILLIAM M. GRAHAM ††

RICHARD L. HUFFMAN
CHRISTOPHER D. MAURIELLO †††
CHRISTOPHER J. HICKEY ††††
M. REID ACREE, JR. †††††
BARBARA L. CURRY
JILL N. CALVERT ·
MICHAEL B. PROSS ··
EDWARD L. PAULEY ···
MATTHEW R. WHITLER ····
JEAN SUTTON MARTIN
SALLY McCLURE WATERS
AMANDA L. KIMS
SUSAN E. BROOKS ·····

525 NORTH MAIN STREET
SALISBURY, NORTH CAROLINA  28144

TELEPHONE: (704) 633-5244
FACSIMILE:  (704) 633-9434
(704) 633-0619

† Also licensed in SC and TX
†† Also licensed in TX
††† Also licensed in NY, FL, OH & SC
†††† Also licensed in OH
††††† Also licensed in GA and SC
· Also licensed in SC
·· Also licensed in MD and NY
··· Also licensed in KY and WV
···· Also licensed in WV and SC
····· Also licensed in FL



September 3, 2002

James B. Pressly, Esquire
Haynsworth, Marion, Mckay & Guerard
C&S Tower, 11th Floor
75 Beattie Place
Greenville, South Carolina 29601

Re:     Agner, et. al. V. Fluor Daniel, Inc., et al.
        USDC-WDNC No. 3:98 CV 220 T
        Bost et. al. V. Fluor Daniel, Inc.
        USDC-WDNC No. 3:98 CV 138 T

Dear Jim:

I am still awaiting your individual offers as soon as possible in the cases involved in the Agner and Bost complaints.  I do not want to respond to Judge Weiner until I receive individual offers.  As you know, our office cannot divide up one offer among clients, as this would create a significant conflict of interest.

I would sincerely appreciate your prompt response.

With kindest regards,

Mona Lisa Wallace