MDL- 875

RECOMMENDED ACTION

VACATE CTO-229 + HSO --1 ACTION

Approved/Date: MB 12/10

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

GERALD and SHARON IRETON,

    Plaintiffs,

v.

KAISER VENTURES, L.L.C.; KSC RECOVERY INC., and E.J. BARTELLS SETTLEMENT TRUST,

    Defendants.

Case No. CV03-2840 RBL

ORDER

03-CV-02840-ORD

    This matter comes before the court on plaintiffs' motion to remand. On August 1st, 2003, plaintiffs filed a complaint in King County Superior Court alleging causes of action for personal injuries arising from exposure to asbestos. On September 17th, 2003, defendants removed the case to federal court under federal officer jurisdiction pursuant to 28 U.S.C. § 1442.[1] On October 3rd, 2003, plaintiffs filed the instant motion to remand. The court finds that defendants have raised a colorable federal defense, but have failed to show a causal nexus between Kaiser's failure to warn its workers about the hazards of asbestos exposure and the directives of federal officers. The court hereby GRANTS plaintiffs' motion to remand this case to King County Superior Court.

## I. BACKGROUND

    Plaintiff Gerald Ireton was born on February 23, 1942, approximately two months after the United

---

[1] Defendants also initially removed under diversity jurisdiction pursuant to 28 U.S.C. § 1332 and federal enclave status pursuant to 28 U.S.C. § 1331; however, defendants have since withdrawn these arguments.

ORDER

1　States entered World War II. Mr. Ireton alleges that he was exposed to asbestos as an infant through his
2　father's employment at the Kaiser Shipyards in Vancouver, Washington. Specifically, Mr. Ireton alleges
3　that his father, who worked at the shipyards until the war ended on September 2, 1945, unintentionally
4　exposed him to asbestos by bringing it home on his clothes, hair, or shoes.[2] Defendant Kaiser Ventures
5　L.L.C. is the successor in interest to the Kaiser Company, which operated the shipyards during the
6　relevant time period.
7　　　Mr. Ireton was diagnosed with mesothelioma, a cancer usually resulting from asbestos exposure, in
8　January of 2003. Decl. of Steven Kallick, M.D. at 1. On September 25th, 2003, Mr. Ireton was further
9　diagnosed as having a "substantial medical doubt that he will be alive or able to meaningfully participate
10　in a trial beyond April 2004." *Id.* Plaintiffs now proceed against defendants on "premises owner,
11　manager or general contractor" and failure to warn theories of liability.
12　　　Defendants do not contest that employees at the Kaiser Shipyards were exposed to asbestos.
13　Rather, defendants assert a government contractor defense in denying liability for any injuries incident to
14　such exposure. Defendants allege that Kaiser Shipyards constructed ships under the direction and control
15　of federal officers and agencies, and pursuant to government specifications provided for under contracts
16　with the U.S. government. Defendants also allege that the government purposely withheld certain
17　information tending to show that asbestos was unsafe for shipyard workers, and that at all times the
18　government had superior knowledge about any hazards associated with the construction of marine vessels
19　under its contract.

## II. DISCUSSION

21　　　On a motion to remand, the court must determine whether the case was properly removed to
22　federal court. *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1194-95 (9th Cir. 1988). The party
23　invoking the federal court's removal jurisdiction has the burden of establishing federal jurisdiction. *Id.*
24　Removal statutes are strictly construed, and if the right to remove is in doubt, the case should be
25　remanded. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979).
26　　　Defendants seek removal to a federal court under 28 U.S.C. § 1442(a)(1), the federal officer

---

27,28　[2] Plaintiffs claim that Mr. Ireton was exposed to asbestos over the "2-1/2 year period" from Mr. Ireton's birth to the end of the war. The court notes that the time period alleged, February 23, 1942 to September 2, 1945, is actually closer to 3-1/2 years.

ORDER

removal statute. Under § 1442(a)(1), an action may be removed to federal court by "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . . ." §1442(a)(1). The removing party must (1) demonstrate that it acted under the direction of a federal officer; (2) raise a colorable federal defense to plaintiffs' claims; and (3) demonstrate a causal nexus between plaintiffs' claims and the acts defendants performed under color of federal office. *Mesa v. California*, 489 U.S. 121, 124-25, 134-35 (1989). Plaintiffs argue that defendants fail to meet elements two and three of the *Mesa* test.

### A. Colorable Federal Defense

Under the second element of the *Mesa* test, the defendants must demonstrate a colorable federal defense. *Mesa*, 489 U.S. at 129. In this inquiry, the court reviews the merits of the defendants' claimed defense, but does not decide whether that defense is itself meritorious; rather, the court looks only to whether the defendants have established a *colorable* claim to such a defense.[3] *See Fung v. Abex Corp.*, 816 F.Supp. 569, 573 (N.D. Cal. 1992); *see also Boettcher v. Secretary of Health & Hum. Servs.*, 759 F.2d 719, 722 (9th Cir. 1985) (finding court's determination that claim "lacks merit does not necessarily mean, however, that it is so insubstantial and immaterial that it does not pass the 'colorable' test.").

---

[3] Although an explicit definition of colorable is somewhat elusive, the court is not entirely without direction. Webster's Dictionary defines colorable as "seemingly valid and genuine: having an appearance of truth, right, or justice: plausible." *Webster's Third New Int'l Dictionary*, 449 (unabridged ed. 1993). The Ninth Circuit has defined it as not "wholly insubstantial, immaterial, or frivolous." *Boettcher v. Secretary of Health & Hum. Servs.*, 759 F.2d 719, 722 (9th Cir. 1985); *see also In Re Cadillac Brewing Company*, 102 F.2d 369, 370 (6th Cir. 1939) (A colorable claim, for the purpose of invoking or conferring jurisdiction, is not "so unsubstantial and obviously insufficient either in fact or law, as to be plainly without color or merit and a mere pretense."). The court agrees that these liberal constructions comport with the purpose of the federal officer removal status, which was enacted by Congress to provide federal officers a neutral forum to present their defense free from local interest or prejudice. *See, e.g., Arizona v. Manypenny*, 101 S.Ct. 1657, 451 U.S. 232, 241-42 (1981), *rehearing denied* 452 U.S. 955, *on remand* 672 F.2d 761; *Murphy v. Kodz*, 351 F.2d 163, 165 (9th Cir. 1965).

ORDER

Here, defendants assert the military contractor defense.[4] The military contractor defense is a federal common law defense that enables a defendant who designs or manufactures military equipment under federal direction to avoid liability under state tort law providing they can meet the conditions outlined in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). The *Boyle* court held that military contractors are immune from liability for design defects when: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to these specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier and not to the United States." *Id.* at 512. The Ninth Circuit emphasizes the first element of the *Boyle* test when applying the military contractor defense to failure to warn claims.[5] *See Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 586 (9th Cir.1996).

In *Butler*, the Court found that the military contractor defense "is inapplicable to a failure to warn claim in the absence of evidence that in making its decision whether to provide a warning ... [defendant] was 'acting in compliance with reasonably precise specifications imposed on [it] by the United States.'" *Id.*, quoting *In re Hawaii Federal Asbestos Cases*, 960 F.2d 806, 813 (9th Cir. 1992) (*internal quotations omitted*); *accord In re Joint E. & S. Dist. New York Asbestos Litig.*, 897 F.2d 626, 629-32 (2d Cir. 1990). Accordingly, the military contractor defense applies only "when the Government, making a discretionary, safety-related military procurement decision contrary to the requirements of state law, incorporates this decision into a military contractor's contractual obligations," preventing the contractor from accommodating safety concerns in a different fashion. *Federal Asbestos*, 960 F.2d at 813. In other words,

---

[4] Although this defense is also known as the "government contractor defense," the court finds "military contractor defense" is the more accurate term. *See Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 746 (9th Cir. 1997) ("In the Ninth Circuit, however, it is only available to contractors who design and manufacture military equipment.").

[5] Indeed, neither party to this case squarely addresses the second and third conditions under *Boyle*. Regardless, the court finds that defendants have satisfied both of these conditions: defendants have shown that the installation of asbestos insulation in ships constructed at Kaiser Shipyards conformed to the specifications provided by the government, and the government was at least as aware as Kaiser about the hazards of asbestos exposure.

ORDER

defendants are relieved of their liability to warn about shipyard hazards only where the government prevents them from providing the required warnings.[6]

Defendants argue that Kaiser was prevented from posting "alarming warnings" about the risks of working with asbestos because such warnings would conflict with federal policy as well as frustrate federal legislation. Specifically, defendants allege that federal policy during World War II was to minimize alarm about the health risks associated with working with asbestos, fearing that such alarm may cause labor disturbances in a time of national emergency. Defendants claim that the government, in furtherance of this policy, actively controlled the flow of asbestos health hazard information, to include classifying certain reports identifying those hazards.

Defendants further allege that any attempt to warn Kaiser Shipyard employees about the hazards of asbestos exposure would frustrate the objectives of "Public Law 247." Defendants contend that this federal law directed the expeditious construction of ships, and that any deviation from the specifications provided by the government would only impede the nation's wartime shipbuilding capacity. Therefore,

---

[6] Defendants claim that "[f]ederal courts have rejected this narrow construction of the government contractor defense"; however, defendants cite no Ninth Circuit authority supporting this contention. In fact, the courts of this circuit have consistently found that the military contractor defense applies to failure to warn claims only where the decision not to provide such warnings was made pursuant to government specifications. *See, e.g., Butler*, 89 F.3d at 586 (finding government contractor defense inapplicable absent evidence showing failure to warn was in compliance with government specifications); *Westbrook v. Asbestos Defendants*, 2001 WL 902642 at 2 (N.D. Cal. 2001) ("But [defendant] has not shown that the Navy required it to refrain from issuing warnings."); *Arness v. Boeing North American, Inc.*, 997 F.Supp. 1268, 1275 ("Thus, because the government did not specify safeguards that [defendant] must use, or restrict [defendant's] ability to implement safeguards, [defendant] was not acting under federal direction. . . ."); *Nguyen v. Allied Signal, Inc.*, 1998 WL 690854 at 3 (N.D. Cal. 1998) ("Here, defendants have produced no evidence that their contracts with the United States government contained contractual obligations prohibiting them from placing warnings on their products."); *Overly v. Raybestos-Manhattan*, 1996 WL 532150 at 4 (N.D.Cal. 1996) ("Absent a showing by defendant that the federal government gave specific instructions to [defendant] not to warn employees of the existence of asbestos, [defendant] is offered no protection by government contractor immunity.").

ORDER

1  defendants argue, Kaiser was "effectively prohibited from generating its own warnings."

2  The court finds that defendants have satisfied their burden of raising a colorable federal defense
3  for purposes of 23 U.S.C. 1442(a)(1). Although defendants have not shown that the government expressly
4  prohibited Kaiser from warning shipyard employees about the hazards of asbestos exposure, their
5  argument that the government may have played some role in restricting such warnings raises at least a
6  colorable federal defense.[7] Nevertheless, the fact that defendants "can demonstrate a colorable claim to a
7  federal defense, does not necessarily entitle [defendants] to removal under Section 1442(a)(1). *Arness v.*
8  *Boeing North American, Inc.*, 997 F.Supp. 1268, 1273 (C.D. Cal. 1998). The defendants must now satisfy
9  the causal nexus element of the *Mesa* test.

### B. Causal Nexus

12  Under the third element of the *Mesa* test, the defendants must demonstrate a causal nexus between
13  the actions for which they are being sued and the directives of federal officers. *Mesa*, 489 U.S. at 131-32.
14  Here, courts look at the extent to which the defendants' actions were directed by the federal government.
15  *Ryan v. Dow Chem. Co.*, 781 F.Supp. 934, 945-946 (E.D.N.Y. 1992). To satisfy this element, the
16  defendant must "by direct averment exclude the possibility that [the state action] was based on acts or
17  conduct of his not justified by his federal duty." *Mesa*, 489 U.S. at 132. In other words, defendants must
18  show not only that the Kaiser Shipyards used asbestos in accordance with "government specifications,
19  'but also that [the government] restricted or prohibited [the defendants] from providing adequate

---

[7] Plaintiffs argument that the defendants have failed to present a colorable federal defense because they have not shown that the asbestos-containing insulation used in the Kaiser shipyards was not the same hazardous insulation used in non-governmental enterprises is misplaced. Defendants do not argue that the asbestos used in its shipyards was different from the asbestos used in commercial shipbuilding; rather, defendants claim that the government prevented Kaiser from warning its workers about the hazards of working with this asbestos. Therefore, the inquiry here is not whether Kaiser implemented the same safety procedures as would be required if it used commercially-available asbestos in ships constructed in its shipyards, but instead whether government specifications controlled the implementation of those safety procedures.

ORDER
Page - 6

1  precautions against or otherwise notifying its employees of the hazards of asbestos exposure.'" *Arness*,
2  997 F.Supp. at 1275 (C.D. Cal. 1998) (finding that defendant failed to show a causal nexus where the
3  government did not specify the safeguards that the defendant must use), *quoting Ruffin v. Armco Steel
4  Corp.*, 959 F.Supp. 770, 774 (S.D. Tex. 1997). The defendants have not met this burden.

5      Defendants have introduced evidence alleging that the government had reason to conceal the
6  hazards of asbestos exposure, fearing labor disturbances that may result from such disclosure.
7  Furthermore, defendants have introduced evidence tending to show the government actually did conceal
8  some of this information, to include classifying asbestos-related health studies. However, defendants'
9  evidence clearly shows that Kaiser had access to unclassified information recognizing the hazards of
10 asbestos exposure. *See Marks Decl, Exhs.* J, K.[8] Had the government controlled all access to such
11 information, Kaiser would have a stronger claim that it was "effectively prohibited" from providing such
12 warnings. But absent such control, or direct specifications to the contrary, the government's concealment
13 of *some* information regarding shipyard health hazards does not impact Kaiser's duty to warn its workers
14 about the information it *did* have.

15     The court recognizes that Kaiser Shipyards may have been under significant pressure from the
16 government to speedily construct ships during a national emergency. It is even conceivable that this
17 pressure may have interfered with defendants' ability to warn the shipyard workers of the health hazards
18 associated with the construction of military ships. Nevertheless, the court is not convinced that the
19 interference alleged by defendants sufficiently establishes a causal nexus between Kaiser's failure to warn
20 its workers of safety hazards and the orders given it by the government.

21     Considering the strong presumption against removal jurisdiction, the court finds that defendants

---

[8] In Exhibit J, the government recommended that Kaiser lock the ventilation system in the "on" position because the men working with asbestos chose not to it use as it was too loud. Exh. J at 19. The government also recommended that Kaiser Shipyard workers be "acquainted with the hazards of [working with asbestos], and instructed in proper protective measures. . . ." Id. at 20. In Exhibit K, the government provided minimum safety requirements for working with asbestos and identified asbestosis as a risk in "any job in which asbestos dust is breathed." Exh. K at 9.

ORDER
Page - 7

have not satisfied their burden under 28 U.S.C. § 1442(a)(1). Accordingly, the court REMANDS plaintiffs' action to the King County Superior Court.

### III. ATTORNEY FEES & COSTS

Finally, under 28 U.S.C. § 1447(c), the court has discretion to award plaintiffs' "costs and any actual expenses, including attorney fees, incurred as a result of the removal." Given the court's finding that the defendants asserted a colorable federal defense, and the absence of any request by the plaintiffs, the court exercises its discretion and does not grant plaintiffs' costs and fees.

### IV. CONCLUSION

Therefore, this court hereby **GRANTS** plaintiffs' motion to remand this action to King County Superior Court.

The Clerk of the Court is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 3d day of December, 2003.

*/s/ Ronald B. Leighton*

RONALD B. LEIGHTON
United States District Judge

ORDER

1  WILLIAM RUTZICK, WSBA #11533
   SCHROETER GOLDMARK & BENDER
2  500 Central Building
   810 Third Avenue
3  Seattle, Washington 98104
   Telephone: (260) 622-8000
4  Facsimile: (206) 682-2305

5

6

7

8  **BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

9  **MDL DOCKET NO. 875**

10 **IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

11

12 THIS DOCUMENT RELATES TO:

13 <u>Ireton v. Kaiser Ventures, L.L.C.; et al.</u>
   United States District Court
14 Western District of Washington
   Cause No. No. CV03-2840 RBL
15

16 DECLARATION OF SERVICE

17
   Rhonda Jones hereby declares as follows:
18
   That on December 9, 2003, I had copies of **NOTICE OF REMAND TO STATE**
19
20 **COURT** served upon attorneys of record for defendants by having said copies faxed, delivered

21 or mailed, postage prepaid, as follows:

22 Randy Aliment
   Christopher Marks
23 Williams, Kastner & Gibbs
   601 Union Street, Suite 4100
24 Seattle, WA 98111-3926
   Fax: (206) 628-6611
25

26

MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION TO VACATE CONDITIONAL TRANSFER
ORDER, DATED JULY 21, 1999 - 1
N:\ASBESTOS\14462B1500\P\FED & MDL\MDL Doc service -112403.doc

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
(206) 622-8000

1. I declare under penalty of perjury under the laws of the United States that the foregoing
2. is true and correct.
3. DATED at Seattle, Washington, this 9th day of December, 2003.

_____
RHONDA JONES