

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 0 5 2004

FILED
CLERK'S OFFICE



### BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE: ASBESTOS PRODUCTS
LIABILITY LITIGATION

**DOCKET NO. 875**

(NO.IV)

Willie H. Brown, et al. v. Illinois
Central Railroad Company
(S.D. MS: 1:04cv30GRO)

**ORAL ARGUMENTS:**

*COUNSEL FOR PLAINTIFFS HEREBY
STATE, PURSUANT TO RULE 16.2, THAT
SAID COUNSEL REQUESTS ORAL
ARGUMENT AND WILL PRESENT SAME AT
ANY HEARING ON THE HEREIN NOTICE
AND PLAINTIFFS' OPPOSITION
REGARDLESS OF WHETHER DEFENSE
COUNSEL CHOOSES TO DO SO.*

### PLAINTIFFS' MOTION AND BRIEF TO VACATE THE PANEL'S CONDITIONAL TRANSFER ORDER FILED IN THE ABOVE ACTIONS ON OR ABOUT MARCH 10, 2004

**COMES NOW,** Willie H. Brown, et al., and submits this their Motion to Vacate and

supporting Brief.  Plaintiffs respectfully request that this Honorable Panel to deny jurisdiction

over this matter, withdraw the Conditional Transfer Order relative to this action, and allow this

action to remain in the Federal District Court for the Southern District of Mississippi, Southern

Division where it is pending.

# OFFICIAL FILE COPY IMAGED APR  6 '04

## I.     **Motion**

1.      Plaintiffs' Opposition is based on the Federal Court's lack of jurisdiction over this matter.  Plaintiffs have a Motion to Remand pending before the District Court of Mississippi, with all briefs having been submitted.  In the Mississippi Court, Defendants oppose Plaintiffs' Motion to Remand by stating that the court has federal question jurisdiction.  However, no federal question jurisdiction exists over this matter by the Mississippi Federal District Court, this Panel, or the Transferee Court.  Consequently, the Mississippi Federal District Court is to be allowed to rule on Plaintiffs' Motion to Remand, and remand this action to the Mississippi state court from which it came.

2.      On or about December 1, 2003, the Plaintiffs Willie H. Brown, et al., filed suit against the Defendant Illinois Central Railroad Company in the Circuit Court of Hinds County, Mississippi.

3.      The Plaintiffs based their cause of action on The Federal Employees Liability Act pursuant to 45 U.S.C. § 51.

4.      The Defendant removed this case to the Federal District Court for the Southern District of Mississippi, Southern Division.  Defendant claims that federal question jurisdiction exists over this matter because Plaintiffs' claims alleging their lawsuit under FELA was based upon fraud.

5.      Defendant improperly removed this matter; however: because pursuant to 28 U.S.C. § 1445, FELA cases filed in State Court are non-removable.

6.      These Plaintiffs are in the exact positions that the Plaintiffs in *Wicker, et al. v.*

*Illinois Central Railroad Company* when Judge Gex ruled that the Wicker case should be remanded to state court. Please see Order attached hereto as Exhibit "A".

Although the Order was issued technically after the case had been sent to the MDL is should serve as guidance for this Court to send this case back.

7.     The Wicker Plaintiffs and the Brown Plaintiffs all work at the same place and their jobs were exactly the same. The same affidavits were used for both cases.

8.     Plaintiffs, as the masters of their complaint, have chosen to forgo federal court which was available to them under federal law, and proceed strictly and only in state court. Consequently, no federal question jurisdiction exists over this matter, and it is due to be remanded by the Mississippi Federal District Court where it is presently pending.

9.     This Panel's Conditional Motion to Transfer is due to be withdrawn, and this case should remain in the Mississippi Federal Court for remand decision.

**A.     Jurisdiction standards and burden of proof.**

Pursuant to 28 U.S.C. § 1445(a), a civil action filed in a State Court against a railroad under FELA "may not be removed to any district court of the United States." "Congress has unequivocally declared that in FELA suits filed in state courts, the federal courts are without jurisdiction to proceed in the matter until the cause has run its course at the state level." *Yawn v. Southern Ry.Co., 591 F.2d 312 (5th Cir. 1979)* citing *Gamble v. Central of Ga.,Ry., 486 F.2d 781 (5th Cir. 1973).* An FELA case is removable only in the limited case where the allegations of the Complaint are made in a fraudulent attempt to evade removal. *Id.* In such a case, the burden of proving that the allegations in the Complaint were fraudulently made is on the party seeking Removal, and any doubts are to be resolved in favor of the Plaintiff. *Id.* Because the Defendant

may abuse the assertion of the fraudulent pleading in order to obtain a federal forum, "the mere assertion of fraud is not sufficient to warrant removing the case to federal court." *Lackey v. Atlantic Richfield Co., 990 F.2d 202 (5th Cir. 1993)* (a Jones Act case), citing *Yawn v. Southern Ry., Co., surpa*. "As in fraudulent joinder cases, defendants' burden of persuasion is a heavy one." *Id.* "The removing party must show that there is no possibility that plaintiff would be able to establish a cause of action." *Id.*

Additionally, the courts have established a summary determination procedure for a fraudulent pleading inquiry. *Lackey v. Atlantic Richfield Co., supra*. Although there is no requirement that they do so, the Plaintiffs may submit affidavits, along with the factual allegations in the verified Complaint. *Id.* citing *B. Inc. v. Miller Brewing Co., 663 F.2d 545 (5th Cir. 1981)*. The court must resolve all disputed questions of fact from the pleading and affidavits in favor of the plaintiff, and then determine whether there could possibly be a valid claim against the defendant in question." *Lackey v. Atlantic Richfield Co., supra.*

**B.**     **Plaintiffs have alleged a valid claim against Illinois Central under FELA.**

Plaintiffs, although under the employment of David J. Joseph Company, were in fact "employees" of Illinois Central Railroad pursuant to FELA. Plaintiffs claim in their Complaint that they were borrowed servants to Illinois Central; that Illinois Central reserved the right to control the operations of the employees of David Joseph, and in fact actually directed the day-to-day operations of those employees, and that David Joseph performed work only for Illinois Central. Plaintiffs were injured by their exposure to asbestos and asbestos-containing products through their employment as borrowed servants with Illinois Central. The affidavits presented by

4

the Plaintiffs is support of their Motion to Remand establish the facts set out in the following paragraphs, which show that the Plaintiffs were "borrowed servants" of Illinois Central.

Through their employment with David Joseph, the plaintiffs performed salvage work upon railroad cars belonging to Illinois Central. David Joseph dismantled freight cars and locomotives exclusively for Illinois Central. (Affidavits of Employees, attached hereto as Exhibits B-U). This property occupied by David Joseph belonged to Illinois Central, and was adjacent to the main railroad repair yard. David Joseph only dismantled cars belonging to Illinois Central.

Each morning, Illinois Central would bring certain cars to the track on the property occupied by David Joseph. Before any employees from David Joseph could work on the cars, it was necessary for Illinois Central inspectors to inspect the cars and tell David Joseph which cars they could keep. The railroad inspectors personally marked the parts on the cars that they wanted the employees of David Joseph to cut off and leave for the railroad to come pick up and take back to the railroad repair yard for Illinois Central. (Affidavits of Employees, attached hereto as Exhibit B-U). Additionally, the railroad even picked up parts that David Joseph employees had cut and saved and took them back to the rail yard for use on the railroad's cars. (Affidavit of William Hackett, attached hereto as Exhibit J). Illinois Central employees would specifically mark doors and trucks for the David Joseph employees to remove from the cars. Illinois Central employees also inspected the wheels, and especially the gauge, to see which ones to keep and which ones to cut up. The Illinois Central inspector would decide whether to keep the entire assembly or just certain parts. (Affidavit of Samuel Anderson, attached hereto as Exhibit "D").

The supervision and instruction by the railroad was so detailed that each of the David Joseph employees knew that they were to use the cutting torch on the outside of the painted lines that were made by the railroad inspectors. (Affidavits of Employees, attached hereto as Exhibits B-U). In fact, all during the day, every day, the railroad inspectors were on the property occupied by David Joseph (but owned by Illinois Central), telling the foreman what part to remove and/or telling the individual employees what to remove. (Affidavits of Employees, attached hereto as Exhibits B-U). The employees knew they had to do what the railroad inspectors requested. (Affidavits of Employees, attached to Plaintiffs' Motion to Remand as Exhibits B-U).

Employees often worked with a specific Illinois Central inspector, Bobby Godbold, almost daily and that inspector would specifically instruct the David Joseph employees on which parts to keep and which parts to send to the salvage yard. The inspector would actually make the marks on the cars, wheels, trucks, brake shoes and pins, and the David Joseph employees would cut around those marks, and stack them up for the railroad to pick up. (Affidavits of Samuel Anderson, Bernard Ashley and Samuel Smith, attached hereto as Exhibits D, U and Q).

The supervision and control by Illinois Central was so complete that when the David Joseph employees got to the wheels while doing their work, at least one David Joseph employee would have to go over to Illinois Central yard and tell the railroad wheel inspector that they were ready for him to inspect the wheels, to see which ones to save or which ones to cut up. This occurred at least once a day. (Affidavit of Samuel Anderson, attached hereto as Exhibit D).

Additionally, some employees were provided supplies and/or equipment by the railroad (Affidavits of William Hackett, Knorbert Hughes, Samuel Anderson, Steve Herring, Claude Isaac; and James Abraham, attached hereto as Exhibits J, K, D, T, N and M). In fact, at least one

6

employee actually went over to the Illinois Central grounds to get gloves for the job on the David Joseph property. (Affidavit of Colia Dillon, attached hereto as Exhibit I). Another employee was instructed by an Illinois Central inspector to take one of the David Joseph front-end loaders over to the Illinois Central yard to dig a hole. The Illinois Central employee even instructed the David Joseph employee as how to dig the hole, and supervised him while he performed the work. (Affidavit of Bernard Ashley, attached hereto as Exhibit U).

At least two or three times a week, an Illinois Central employee would come over to the David Joseph ground and request a specific part. The David Joseph employees would stop what they were doing and get that specific part for him to take to the Illinois Central yard to use on the Illinois Central cars. (Affidavits of Keith Ashley, Carl Hughes, Rudolph Caston, and Henry Maxwell, attached hereto as Exhibits C, L, F, and O ).

Illinois Central claims that the plaintiffs were not railroad employees and, in fact, that they fraudulently claimed that they were railroad employees in order to evade federal court jurisdiction. Under the FELA, a worker can be an "employee" of a railroad even where he is carried on the employment rolls of another company and is paid by that other company. *Lindsey v. Louisville & Nashville R.R. Co., 775 F.2d 1322 (5th Cir. 1985)*. The test used in determining whether the worker is an "employee" of the railroad for purposes of FELA is whether the railroad has control of the employee *or* the right to control the employee. *Id.* "The law does not require that the railroad have full supervisory control. It requires only that the railroad, through its employees, plays a 'significant supervisory role' as to the work of the injured employee." *Id.*, citing *Kelley v. Southern Pacific Co., 419 U.S. 318, 327, 95 S.Ct. 472, 477, 42 L.Ed. 2d 498*

7

*(1974)*. The question of whether the worker was acting as an employee of the railroad at the time he was injured is a question of the fact for the jury. *Id.*

The Supreme Court in *Kelley, supra,* stated that the trial court must make a factual determination of whether the workmen were servants of the railroad under any of the common law bases for creation of a master-servant relationship. These common-law principles are: 1) whether the workman was serving as a borrowed servant of the railroad at the time of his injuries; 2) whether the workman was a dual-servant, acting for two masters simultaneously; and 3) whether he was "a subservant of a company that was in turn a servant of the railroad." *Williamson v. Consolidated Rail Corp., 926 F.2d 1344 (3rd Cir. 1991),* citing *Kelley, supra;* see also *Warrington v. Elgin, Joliet & Eastern RY Co., 901 F.2d 88 (7th Cir. 1990),* citing *Kelley, supra.* Any of these scenarios can serve to create an employer-employee relationship under FELA.

The borrowed servant doctrine provides: "A servant directed or permitted by his master to perform services for another may become the servant of such other in performing such service. He may become the other's servant as to some acts and not as to others." *Williamson v. Consolidated Rail Corp., supra,* citing Restatement (Second) of Agency section 227. In *Williamson,* the court found that there was sufficient evidence to support the jury's finding that the injured worker was an "employee" of the railroad under FELA at the time he was injured. In that case, the injured worker was an employee of a company that loaded and unloaded cars for the railroad. The court found the evidence sufficient for a determination that the employee was either a borrowed servant or the dual servant of the unloading company and the railroad. The employee treated the railroad inspector as his supervisor on the date of his injury, and that

inspector was the person who was permitted to give him instructions. Railroad employees determined which train a trailer was to be loaded upon. The railroad employee was on the premises to explain how he wanted things accomplished.

As the court explained in *Williamson,* in general the evidence at trial established: 1) a close relationship between the worker's "employer" and the railroad – a relationship during which the railroad employees sometimes gave direction to the other company's employees; 2) evidence that the railroad was responsible for the cargo, and that the railroad, not the other company, was the only one authorized for some specific functions; and 3) that the job the employee was doing was unusual for him and the only one available to show him how to do it was the railroad inspector.

In *Lindsey v. Louisville & Nashville RR. Co., supra,* the court also found that there was sufficient evidence to support the jury's determination that the plaintiff was an "employee" of the railroad under FELA at the time of his injury. In *Lindsey,* the evidence revealed, largely through testimony of fellow workers, that the railroad directed the employees as to which cars were to be unloaded, and that, on some occasions, the loading & unloading crews received specific instructions and orders from railroad employees. Additionally, railroad employees would inspect the work of the crew in unloading and positioning of the trailers on the cars. Additionally, the crew in *Lindsey* reported directly to the railroad yard, and it was a permanent assignment. Although the railroad presented substantial evidence to the contrary, the court held that it was up to the jury to decide the disputed fact.

Similarly, in the present action, the plaintiffs have presented affidavits showing that David Joseph dismantled freight cars and locomotives exclusively for Illinois Central, and that

9

the property occupied by David Joseph belonged to Illinois Central, and was adjacent to the main railroad repair yard. Additionally, each morning, before any employees from David Joseph could work on the cars, it was necessary for inspectors for Illinois Central to inspect the cars and tell David Joseph which cars they could keep. The railroad inspectors marked the parts on the cars that they wanted the employees of David Joseph to cut off and leave for the railroad to come pick up and take back to the railroad repair yard for Illinois Central. The railroad inspectors gave specific instructions to the David Joseph employees and were on the premises daily to make sure the work was done as they wanted. As set out above, the supervision and instruction by the railroad was very detailed. In fact, all during the day, the railroad inspectors were on the property occupied by David Joseph, but owned by Illinois Central, telling the foreman what parts to remove and/or telling the individual employees what to remove, and the employees knew they had to do what the railroad inspectors requested. Some of the employees' supplies were provided by Illinois Central. Plaintiffs have clearly stated a valid claim against Illinois Central under FELA. The affidavits presented by the Plaintiffs, at the very least, establish a question of fact as to whether the Plaintiffs were borrowed servants of Illinois Central and, thus were employees of the railroad within the meaning of FELA.

### C.   Legal Arguments

#### 1.   Transfer to the MDL is inappropriate prior to the Mississippi District Court ruling upon Plaintiffs' pending Motion to Remand.

Defendants have the right to remove a cause of action from a state court to a federal court only where the federal district court would have been able to exercise original jurisdiction over the matter if it had been originally filed there by the plaintiffs. 28 U.S.C. §1441 (a). The burden

of proving removal jurisdiction is on the removing party, and removal jurisdictional is to be strictly construed. *Easterling v. Gulf Guaranty Ins. Co.*, 60 F. Supp.2d 586, 587 (S.D.M.S. 1999); *Willy Costal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988).

Every Federal District Court has the obligation to determine, upon removal of a case to its court, whether it has jurisdiction to entertain and oversee the matter. The usual circumstance is that counsel for the Plaintiff will file a Motion to Remand challenging the court's subject matter jurisdiction within the time period allowed by the Federal Rules. The Plaintiffs here have done that in their case. However, even where the Plaintiff does not file such a motion, the Federal District Court has the obligation *sua sponte* to determine if it has subject matter jurisdiction on any grounds. Jurisdiction must exist before the court, Federal District **or MDL** court, can make any effective substantive rulings in the matter. Without subject matter jurisdiction in the Federal District Court where the action was removed, an MDL transfer is moot. See *Howery v. Allstate Ins. Co.*, 243 F.3d 912 (5th Cir. 2001); *H & D Tire v. Pitney Bowes*, 227 F.3d 326, 328 (5th Cir. 2000); *United Transportation Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000); *Smith v. Texas Children's Hospital*, 172 F.3d 923, 925 (5th Cir. 1999); and *Pemberton v. State Farm Mut. Auto Ins.*, 996 F.2d 789 (5th Cir. 1993).

A determination by the original Federal District Court to which the action was removed by the Defendants, of whether federal jurisdiction exists, is the threshold consideration, and is contemplated by and encouraged by the MDL Rules set forth in 28 U.S.C. § 1407. "The pendency of a motion [to transfer]. . . does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court." Rule 1.5, 28 U.S.C. § 1407. See also *Rio De Janeiro v. Philip*

11

*Morris*, Inc., ___F.3d___(5th Cir. 1/22/01) ("panel practice contemplates that a district court may remand a removed case to state court before its transfer order under 28 U.S.C. § 1407 becomes effective." And, by arguing for the transfer and against the district court ruling on the Motion to Remand, the Defendants were trying to "escape the black force of a remand for want of jurisdiction. . . .[t]he order denying a stay was not prior in logic and fact to the remand order; it was simply the obverse of the remand order.")

It also is illogical of the Defendants to request that the present case be transferred to the MDL's chosen court prior to the Federal District Court in Mississippi examining whether it even had jurisdiction. This request most assuredly "puts the cart before the horse". If federal question jurisdiction is found not to exist, the transfer assertion and request would be moot. Lack of jurisdiction in the originating Federal District Court is lack of jurisdiction in the MDL District Court.

## CONCLUSION:

A civil action filed in a State court against a railroad under FELA may not be removed to any district court of the United States. The Defendant has not proven its contention that the Plaintiffs fraudulently claimed that they were railroad employees in order to evade federal court jurisdiction. Because Defendants may abuse the assertion of fraudulent pleading in order to obtain a federal forum, the mere assertion of fraud is not sufficient to warrant removing the case to federal court. The removing party must show that there is no possibility that plaintiff would be able to establish a cause of action, and the court must resolve all disputed questions of fact from the pleadings and affidavits in favor of the plaintiff, and then determine whether there could possibly be a valid claim against the defendant in question. The Plaintiffs here have clearly stated

a valid claim against the Defendant railroad under FELA. They have legitimately asserted that they were borrowed employees of the railroad, and have submitted numerous affidavits in support of this claim. This matter is due to be remanded to the Circuit Court of Hinds County, Mississippi.

Respectfully submitted this the 22nd day of March, 2004.

C.E. SOREY II, (MS Bar No. 7692)
Attorney for Plaintiffs

OF COUNSEL:
Ramsey Law Firm, P.C.
21 N. Florida Street
Mobile, Alabama    36607
Phone: (251) 479-5655
Fax:    (251) 479-2488

## CERTIFICATE OF SERVICE

I, **C. E. Sorey, II**, attorney for *Plaintiffs Willie H. Brown, et al.*, do hereby certify that have this day caused a true and correct copy of the above and foregoing Plaintiffs' Notice Of Opposition To The Panel's Conditional Transfer Order Filed In The Above Actions On Or About March 10, 2004, to be served by United States mail, postage prepaid, to the **following: Glenn F. Beckham, Esq., Upshaw, Williams, Biggers, Beckham & Riddick, LLP., Post Office Drawer 8230, Greenwood, MS 38935-8230; and, to all of the attorneys listed on the Certificate Of Service for the MDL.**

THIS, the 22nd day of March, 2004.

C.E. SOREY II

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 0 5 2004

## AMENDED CERTIFICATE OF SERVICE

FILED
CLERK'S OFFICE

I, **C. E. Sorey, II**, attorney for Plaintiffs *Willie H. Brown, et al.*, do hereby certify that I have

this day caused a true and correct copy of the above and foregoing Plaintiffs' Notice of Opposition

to the Panel's Conditional Transfer Order Filed in the Above Actions on or about March 10, 2004,

to be served by United States mail, postage prepaid, to the following:

**Glenn F. Beckham, Esq.**
**Upshaw, Williams, Biggers, Beckahm & Riddick, LLP**
**PO Drawer 8230**
**Greenwood, MS 38935-8230**

**and, to all of the attorneys listed on the Panel Service list attached hereto.**

This, the 26th day of March, 2004.

C. E. Sorey, II

# PANEL SERVICE LIST (Excerpted from CTO-231)
## DOCKET NO. 875
## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*Willie H. Brown, et al. v. Illinois Central Railroad Co.*, S.D. Mississippi, C.A. No. 1:04-30

Glenn F. Beckham
Upshaw, Williams, Biggers, Beckham
& Riddick
P.O. Drawer 8230
Greenwood, MS 38935-8230

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building
7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, DC 20036

David A. Damico
Burns, White & Hickton
Fifth Avenue Place, Suite 2400
120 Fifth Avenue
Pittsburgh, PA 15222

Raymond P. Forceno
Forceno & Hannon
Philadelphia Bourse Building
Suite 1000
Independence Mall East
Philadelphia, PA 19106

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Susan M. Hansen
Brownson & Ballou
4800 U.S. Bank Place
601 Second Avenue, South
Minneapolis, MN 55402

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308-1314

David C. Landin
Hunton & Williams
Riverfront Plaza
East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102

Ronald L. Motley
Motley, Rice, LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
Roven, Kaplan & Wells
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Charles E. Sorey, II
Ramsey Law Firm, P.C.
21 North Florida Street
Mobile, AL 36607

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA 19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1570 Penobscot Building
The Maritime Asbestosis Legal
Clinic
Detroit, MI 48226

Andrew J. Trevelise
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D

JAN 1 3 2004

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

J.T. NOBLIN, CLERK
BY _____ DEPUTY

APR 0 5 2004

FILED
CLERK'S OFFICE

THOMAS R. WICKER, *ET AL.*

VS.

ILLINOIS CENTRAL RAILROAD COMPANY

PLAINTIFFS

CIVIL ACTION NO. 1:03cv208GRo

DEFENDANT

O R D E R

This cause comes before the Court on motions of the Plaintiffs to remand [6-1] the above

referenced action to the Circuit Court of Hinds County, Mississippi, and for an award of costs [6-

2] associated with the remand motion.  Also before the Court are the motions of the defendant,

Illinois Central Railroad Company [IC] to transfer the case [7-1] to the Multi-District Litigation

[MDL]; to stay remand proceedings [9-1]; for establishment of discovery deadlines and briefing

schedules [9-2]; and for leave to file a third-party complaint [13-1].  Pursuant to the

Memorandum Opinion entered in this cause, this date, incorporated herein by reference, it is

hereby,

ORDERED AND ADJUDGED that the plaintiff's motion to remand [6-1] be, and is hereby,

granted.  The Clerk of this Court is directed to mail the court file along with a certified copy of

this order to the Clerk for the Circuit Court of Hinds County, Mississippi after the expiration of

ten days of the entry date of this judgment or by no earlier than January 28, 2004.  It is further,

ORDERED AND ADJUDGED that this Court shall retain jurisdiction of this matter until

the Clerk has mailed the certified copy of this order to the Clerk for the Circuit Court of Hinds



PLAINTIFF'S
EXHIBIT
A

County, Mississippi, and that transfer of this matter shall not be effected until that time. It is further,

ORDERED AND ADJUDGED that the defendant's motions to transfer the case [7-1] to the Multi-District Litigation [MDL]; to stay remand proceedings [9-1]; for establishment of discovery deadlines and briefing schedules [9-2]; and for leave to file a third-party complaint [13-1] be, and are hereby, denied. It is further,

ORDERED AND ADJUDGED that the plaintiffs' motion for costs [6-2] be, and is hereby, denied. It is further,

ORDERED AND ADJUDGED that any party in violation of this order shall be appropriately sanctioned. It is further,

ORDERED AND ADJUDGED that each party shall bear their respective costs associated with this motion.

SO ORDERED AND ADJUDGED this the 13th day of January, 2004.

UNITED STATES DISTRICT JUDGE

2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

```
┌─────────────────────────────────┐
│  SOUTHERN DISTRICT OF MISSISSIPPI│
│         F I L E D                │
│                                  │
│         JAN 1 3 2004             │
│                                  │
│        J.T. NOBLIN, CLERK        │
│  BY_____ DEPUTY      │
└─────────────────────────────────┘
```

THOMAS R. WICKER, *ET AL.*                                    PLAINTIFFS

VS.                                          CIVIL ACTION NO. 1:03cv208GRo

ILLINOIS CENTRAL RAILROAD COMPANY                            DEFENDANT

### MEMORANDUM OPINION

This cause comes before the Court on motions of the Plaintiffs to remand [6-1] the above

referenced action to the Circuit Court of Hinds County, Mississippi, and for an award of costs

[6-2] associated with the remand motion.  Also before the Court are the motions of the

Defendant, Illinois Central Railroad Company [IC] to transfer the case [7-1] to the Multi-District

Litigation [MDL]; to stay remand proceedings [9-1]; for establishment of discovery deadlines

and briefing schedules [9-2]; and for leave to file a third-party complaint [13-1].  The Court has

duly considered the record in this action, in addition to the briefs of counsel, and being fully

advised in the premises, concludes as follows.

The Plaintiffs filed a complaint in the Circuit Court of Hinds County, on December 31,

2002, seeking damages following alleged exposure to asbestos containing products.  (Removal

Notice, Compl.)  The Plaintiffs maintain that the complaint states a cause of action under the

Federal Employers' Liability Act [FELA].  (Mot. to Remand, p. 1.)  The Plaintiffs were

employed by David H. Joseph Company [David Joseph] but contend that they were borrowed

servants of IC.  (*Id.*)  According to the allegations of the complaint, IC reserved the right to

control David Joseph's operations and actually directed the day-to-day operations of David

Joseph employees. (*Id.*; Compl., pp. 1-2.) The Plaintiffs argue that the claims advanced against IC are valid, because the while employed at David Joseph, the Plaintiffs performed salvage work on railcars owned by IC. (Mot. to Remand, p. 3.) The work included dismantling freight cars and locomotives exclusively for IC. (*Id.*, Exhs. B-U.) David Joseph utilized land adjacent to the main railroad repair yard which was owned by IC. (*Id.*, Removal Notice, Exh. B.)

According to the affidavits submitted in support of the motion to remand, IC employees would mark particular parts for David Joseph employees to cut from railcars and those parts would be collected by IC employees and taken to the IC repair yard. (Mot. to Remand, Exhs. B-U.) In addition, the Plaintiffs maintain that IC employees would inspect the railcars on a daily basis and determine which parts the David Joseph employees should keep. (*Id.*) The Plaintiffs maintain that IC's supervision was so prevalent that David Joseph employees were allegedly required to obtain approval from IC employees before disposing of wheels from the railcars. (*Id.*, Exh. D.) Additionally, certain David Joseph employees were allegedly provided equipment by IC. (*Id.*, Exhs. D, J, K, M, N and T.) Particular parts were sought by IC employees, and IC supervised the digging of a hole by a David Joseph employee on the IC yard using equipment owned by David Joseph. (*Id.*, Exhs. C, F, L, O and U.) This information is relevant, according to the Plaintiffs, to establish whether David Joseph employees can be considered employees of IC under FELA even though they were David Joseph employees and paid by David Joseph. (Mot. to Remand, p. 6.) The Plaintiffs maintain that they have created a question of fact concerning whether the David Joseph employees were borrowed servants of IC for purposes of FELA, which is sufficient to establish that IC was not fraudulently joined in this case. (*Id.*, p. 9.)

The Defendant contends that the Plaintiffs' FELA claim was advanced in an effort to defeat federal jurisdiction. (Def.'s Resp., p. 2.) IC contends that the affidavits presented by the

Plaintiffs in support of the motion to remand are conclusional in nature and fail to establish the necessary control required to establish a FELA borrowed servant claim. (*Id.*)

The Defendant submits that the remand motion should be stayed to establish a discovery schedule to allow for limited discovery on the remand issues. (*Id.*) The Defendant also filed a motion to transfer this matter to the United States District Court for the Eastern District of Pennsylvania pursuant to MDL Order 875, asserting that the matter involves multiple defendants seeking damages for asbestos related disease. (Mot. to Transfer, p. 1.) IC contends that remand discovery could be conducted during the time that the case was pending at the MDL. (Def.'s Resp., p. 2.)

### Discussion

It is axiomatic that federal courts are courts of limited jurisdiction, having power only over those cases authorized by the United States Constitution and federal statutes. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994). A case may be removed from state to federal court in accordance with the following standard:

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441.

In this case the Defendant asserts that the joinder of the FELA claim was fraudulently made to defeat federal jurisdiction. (Def.'s Resp., p. 2.) Fraudulent joinder is established by showing the following: (1) actual fraud in pleading jurisdictional facts; or (2) inability of the Plaintiff to establish a cause of action against the non-diverse Defendant. *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir.

3

1999)).  Under the provisions of 28 U.S.C. § 1445(a), however, a civil action filed "in any state court against a railroad or its receivers or trustees, arising under sections 1-4 and 5-10 of the Act of April 22, 1908 (45 U.S.C. § 51-54, 55-60) may not be removed to any district court of the United States."  Federal courts have concurrent original subject matter jurisdiction with state courts for claims brought under FELA, but not removal jurisdiction. 45 U.S.C. § 56, 28 U.S.C. § 1445(a).

The complaint in this case specifically refers to 45 U.S.C. § 51, *et seq.* (Compl., pp. 2-4.) Clearly, a case involving a FELA claim is not removable, because a federal court lacks jurisdiction over FELA suits filed in state court. *See Lirette v. N.L. Sperry Sun, Inc.*, 810 F.2d 533, 537 (5th Cir. 1987) (citing *Gamble v. Central of Ga. R.R.*, 486 F.2d 781, 785 (5th Cir. 1973)).  Accordingly, the Court finds that the motion to remand should be granted.  This determination renders the Defendant's associated motions  to transfer the case to the MDL, to stay remand proceedings, and to conduct remand related discovery moot, and the Court finds that the motions should be denied.  The Court has determined that it lacks subject matter jurisdiction in this case; therefore, the motion to file a third-party complaint should also be denied.

The Plaintiffs seek an award of costs and expenses, including attorney fees, incurred as a result of the removal.  *See* 28 U.S.C. § 1447(c).  The Court finds nothing within the motion to merit an award of fees to either party as a result of the removal.  *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000).

## Conclusion

For the aforementioned reasons, the Court finds that the Plaintiffs' motion to remand [6-1] the above referenced action to the Circuit Court of Hinds County, Mississippi, should be

4

granted.  The Court further finds that the Plaintiff's motion for costs [9-2] and the Defendant's motions to transfer the case [7-1] to the MDL; to stay remand proceedings [9-1]; for establishment of discovery deadlines and briefing schedules [9-2]; and for leave to file a third-party complaint [13-1] should be denied as moot.  A separate Order in conformity with and incorporating by reference the foregoing Memorandum Opinion shall issue this date.  Each party shall bear its respective costs in connection with this motion.

This the 13th day of January, 2004.

UNITED STATES DISTRICT JUDGE



PLAINTIFF'S EXHIBIT
B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DISTRICT

THOMAS R. WICKER, et al.

PLAINTIFFS

vs.                                                    CIVIL ACTION NO. 3:03CV290LN

ILLINOIS CENTRAL RAILROAD COMPANY                      DEFENDANT

### AFFIDAVIT OF MAJOR ASHLEY

I am a Plaintiff in the above-entitled and styled case.

(1.)     I am over Eighteen (18) years of age and I am competent to render this affidavit.

(2.)     I have personal knowledge of the facts as are set out in this affidavit.

(3.)     During my employment with the David Joseph Company I was familiar with the

company's affiliation with the Illinois Central Railroad Company.

(4.)     The David Joseph Company in McComb dismantled freight cars and locomotives

exclusively for the Illinois Central Railroad Company.

(5.)     The property occupied by the David Joseph Company belonged to the Illinois

Central Railroad and was adjacent to the main railroad repair yard.

(6.)     The David Joseph Company only dismantled cars belonging to the Illinois Central

Railroad.

(7.)     Each morning the Illinois Central Railroad would bring certain cars to the track on

the property occupied by David Joseph.  Before any employees from David

Joseph could work on the cars it was necessary for inspectors for the Illinois

Central Railroad to inspect the cars and tell David Joseph which cars they could

keep.

(8.)   The railroad inspectors marked the parts on the cars that they wanted the

employees of the David Joseph Company to cut off and leave for the employees of

the railroad to come over and pick up and take them to the repair yard for the

Illinois Central Railroad.

(9.)   Each of the employees at David Joseph knew they were to use the cutting torch on

the outside of the painted lines made by the railroad inspectors so they would not

ruin the part.

(10.)   All during the day the railroad inspectors were on the property of the David

Joseph Company telling the foreman what parts to remove or telling the individual

employees what to remove.

(11.)   I knew we had to do what the railroad inspectors requested.

(12.)   We never cut up cars for any other railroad but Illinois Central Railroad.


Further Affiant sayeth not.


_Major Ashley_

MAJOR ASHLEY

STATE OF MISSISSIPPI

COUNTY OF PIKE

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for said county and state, MAJOR ASHLEY, who after being duly sworn by me, state on oath that the matters and facts contained in the foregoing Affidavit are true and correct as therein stated.

This the _19th_ day of March, 2003.

_____
NOTARY PUBLIC

My Commission Expires:

MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES MARCH 4, 2005
BONDED THRU STEGALL NOTARY SERVICE



PLAINTIFF'S EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DISTRICT

THOMAS R. WICKER, et al.

PLAINTIFFS

vs.

CIVIL ACTION NO. 3:03CV290LN

ILLINOIS CENTRAL RAILROAD COMPANY

DEFENDANT

## AFFIDAVIT OF KEITH ASHLEY

I am a Plaintiff in the above-entitled and styled case.

(1.)    I am over Eighteen (18) years of age and I am competent to render this affidavit.

(2.)    I have personal knowledge of the facts as are set out in this affidavit.

(3.)    During my employment with the David Joseph Company I was familiar with the company's affiliation with the Illinois Central Railroad Company.

(4.)    The David Joseph Company in McComb dismantled freight cars and locomotives exclusively for the Illinois Central Railroad Company.

(5.)    The property occupied by the David Joseph Company belonged to the Illinois Central Railroad and was adjacent to the main railroad repair yard.

(6.)    The David Joseph Company only dismantled cars belonging to the Illinois Central Railroad.

(7.)    Each morning the Illinois Central Railroad would bring certain cars to the track on the property occupied by David Joseph.  Before any employees from David Joseph could work on the cars it was necessary for inspectors for the Illinois Central Railroad to inspect the cars and tell David Joseph which cars they could

keep.

(8.)     The railroad inspectors marked the parts on the cars that they wanted the

employees of the David Joseph Company to cut off and leave for the employees of

the railroad to come over and pick up and take them to the repair yard for the

Illinois Central Railroad.

(9.)     Each of the employees at David Joseph knew they were to use the cutting torch on

the outside of the painted lines made by the railroad inspectors so they would not

ruin the part.

(10.)    All during the day the railroad inspectors were on the property of the David

Joseph Company telling the foreman what parts to remove or telling the individual

employees what to remove.

(11.)    I knew we had to do what the railroad inspectors requested.

(12.)    We never cut up cars for any other railroad but Illinois Central Railroad.

(13.)    A man named Early Thompson worked with the Illinois Central Railroad and

normally picked up the parts for them and carried them over to the yard to be

used.  Two or three times a week Early would come over and request a specific

part.  We would stop what we were doing and get that specific part for him to take

to the Illinois Central yard to use on the Illinois Central cars.


Further Affiant sayeth not.


_____
KEITH ASHLEY

STATE OF MISSISSIPPI

COUNTY OF PIKE

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for said county and state, KEITH ASHLEY, who after being duly sworn by me, state on oath that the matters and facts contained in the foregoing Affidavit are true and correct as therein stated.

This the 19th day of March, 2003.

_____
NOTARY PUBLIC

My Commission Expires:

MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES MARCH 4, 2005
BONDED THRU STEGALL NOTARY SERVICE



PLAINTIFF'S EXHIBIT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DISTRICT

THOMAS R. WICKER, et al.

                                                   **PLAINTIFFS**

vs.                             CIVIL ACTION NO. 3:03CV290LN

ILLINOIS CENTRAL RAILROAD COMPANY          **DEFENDANT**

## AFFIDAVIT OF SAMUEL ANDERSON

I am a Plaintiff in the above-entitled and styled case.

(1.)    I am over Eighteen (18) years of age and I am competent to render this affidavit.

(2.)    I have personal knowledge of the facts as are set out in this affidavit.

(3.)    During my employment with the David Joseph Company I was familiar with the company's affiliation with the Illinois Central Railroad Company.

(4.)    The David Joseph Company in McComb dismantled freight cars and locomotives exclusively for the Illinois Central Railroad Company.

(5.)    The property occupied by the David Joseph Company belonged to the Illinois Central Railroad and was adjacent to the main railroad repair yard.

(6.)    The David Joseph Company only dismantled cars belonging to the Illinois Central Railroad.

(7.)    Each morning the Illinois Central Railroad would bring certain cars to the track on the property occupied by David Joseph. Before any employees from David Joseph could work on the cars it was necessary for inspectors for the Illinois Central Railroad to inspect the cars and tell David Joseph which cars they could

keep.

(8.)    The railroad inspectors marked the parts on the cars that they wanted the employees of the David Joseph Company to cut off and leave for the employees of the railroad to come over and pick up and take them to the repair yard for the Illinois Central Railroad.

(9.)    Each of the employees at David Joseph knew they were to use the cutting torch on the outside of the painted lines made by the railroad inspectors so they would not ruin the part.

(10.)    All during the day the railroad inspectors were on the property of the David Joseph Company telling the foreman what parts to remove or telling the individual employees what to remove.

(11.)    I knew we had to do what the railroad inspectors requested.

(12.)    We never cut up cars for any other railroad but Illinois Central Railroad.

(13.)    When I first started with David Joseph I cut doors and trucks on the Illinois Central cars.  I personally saw Illinois Central employees marking the doors and trucks for the David Joseph crew to remove from the cars.  In addition Illinois Central employees inspected the wheels and especially the gauge to see which ones to keep and which ones to cut up.  The inspector would decide whether to keep the entire assembly or just certain parts.

(14.)    I was personally instructed by the Illinois Central employees on what parts to save and be delivered to the Illinois Central yard and which parts to cut up for salvage - Most of the time the Illinois Central inspector would tell us to keep the entire brake assembly.

(15.)   When I changed jobs at David Joseph I started working with a Bobby Godbold who was an inspector for the Illinois Central Railroad.  Mr. Godbold would work with me almost every day.  If Mr. Godbold was not working with me he would be working with one of my co-employees.  He would instruct on which parts to keep and which parts to send to the salvage yard.

(16.)   I personally saw parts delivered to the Illinois Central yard daily.  A man named Early Thompson worked for the Illinois Central Railroad and it was his job to pick up the parts we cut up and stacked for the Illinois Central Railroad and take them to the Illinois Central yard to be used on their cars.

(17.)   I would get gloves from the Illinois Central Railroad to use on my job.

(18.)   There would be one or more Illinois Central inspectors on the David Joseph property every day giving instruction to the David Joseph employees.


Further Affiant sayeth not.

_____
SAMUEL ANDERSON

STATE OF MISSISSIPPI

COUNTY OF PIKE

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for said

county and state, SAMUEL ANDERSON, who after being duly sworn by me, state on oath that

the matters and facts contained in the foregoing Affidavit are true and correct as therein stated.

This the _____ day of March, 2003.

_____
NOTARY PUBLIC

My Commission Expires:

MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES MARCH 4, 2005
BONDED THRU STEGALL NOTARY SERVICE



PLAINTIFF'S EXHIBIT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DISTRICT

THOMAS R. WICKER, et al.

PLAINTIFFS

vs.

CIVIL ACTION NO. 3:03CV290LN

ILLINOIS CENTRAL RAILROAD COMPANY

DEFENDANT

### AFFIDAVIT OF ROBERT CARR

I am a Plaintiff in the above-entitled and styled case.

(1.)   I am over Eighteen (18) years of age and I am competent to render this affidavit.

(2.)   I have personal knowledge of the facts as are set out in this affidavit.

(3.)   During my employment with the David Joseph Company I was familiar with the company's affiliation with the Illinois Central Railroad Company.

(4.)   The David Joseph Company in McComb dismantled freight cars and locomotives exclusively for the Illinois Central Railroad Company.

(5.)   The property occupied by the David Joseph Company belonged to the Illinois Central Railroad and was adjacent to the main railroad repair yard.

(6.)   The David Joseph Company only dismantled cars belonging to the Illinois Central Railroad.

(7.)   Each morning the Illinois Central Railroad would bring certain cars to the track on the property occupied by David Joseph.  Before any employees from David Joseph could work on the cars it was necessary for inspectors for the Illinois Central Railroad to inspect the cars and tell David Joseph which cars they could

keep.

(8.)     The railroad inspectors marked the parts on the cars that they wanted the

employees of the David Joseph Company to cut off and leave for the employees of

the railroad to come over and pick up and take them to the repair yard for the

Illinois Central Railroad.

(9.)     Each of the employees at David Joseph knew they were to use the cutting torch on

the outside of the painted lines made by the railroad inspectors so they would not

ruin the part.

(10.)    All during the day the railroad inspectors were on the property of the David

Joseph Company telling the foreman what parts to remove or telling the individual

employees what to remove.

(11.)    I knew we had to do what the railroad inspectors requested.

(12.)    We never cut up cars for any other railroad but Illinois Central Railroad.


Further Affiant sayeth not.


_Robert Carr_
ROBERT CARR

STATE OF MISSISSIPPI

COUNTY OF PIKE

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for said county and state, ROBERT CARR, who after being duly sworn by me, state on oath that the matters and facts contained in the foregoing Affidavit are true and correct as therein stated.

This the 19th day of March, 2003.

NOTARY PUBLIC

My Commission Expires:

MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES MARCH 4, 2005
BONDED THRU STEGALL NOTARY SERVICE


PLAINTIFF'S EXHIBIT

F

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DISTRICT

THOMAS R. WICKER, et al.

PLAINTIFFS

vs.

CIVIL ACTION NO. 3:03CV290LN

ILLINOIS CENTRAL RAILROAD COMPANY

DEFENDANT

### AFFIDAVIT OF RUDOLPH CASTON

I am a Plaintiff in the above-entitled and styled case.

(1.)    I am over Eighteen (18) years of age and I am competent to render this affidavit.

(2.)    I have personal knowledge of the facts as are set out in this affidavit.

(3.)    During my employment with the David Joseph Company I was familiar with the company's affiliation with the Illinois Central Railroad Company.

(4.)    The David Joseph Company in McComb dismantled freight cars and locomotives exclusively for the Illinois Central Railroad Company.

(5.)    The property occupied by the David Joseph Company belonged to the Illinois Central Railroad and was adjacent to the main railroad repair yard.

(6.)    The David Joseph Company only dismantled cars belonging to the Illinois Central Railroad.

(7.)    Each morning the Illinois Central Railroad would bring certain cars to the track on the property occupied by David Joseph.  Before any employees from David Joseph could work on the cars it was necessary for inspectors for the Illinois Central Railroad to inspect the cars and tell David Joseph which cars they could keep.

(8.)    The railroad inspectors marked the parts on the cars that they wanted the employees of the David Joseph Company to cut off and leave for the employees of the railroad to come over and pick up and take them to the repair yard for the Illinois Central Railroad.

(9.)    Each of the employees at David Joseph knew they were to use the cutting torch on the outside of the painted lines made by the railroad inspectors so they would not ruin the part.

(10.)   All during the day the railroad inspectors were on the property of the David Joseph Company telling the foreman what parts to remove or telling the individual employees what to remove.

(11.)   I knew we had to do what the railroad inspectors requested.

(12.)   We never cut up cars for any other railroad but Illinois Central Railroad.

(13.)   I worked with Mr. Bobby Godbold and with Mr. Jerry Turnage, both railroad inspectors for the Illinois Central Railroad.  Both Mr. Godbold and Mr. Turnage would mark the parts they wanted us to cut off the cars.  Sometimes either one would make special requests for parts and we would stop what we were doing and cut that part off and have it delivered to the Illinois Central yard.

(14.)   Mr. Early Thompson an Illinois Central Railroad employee normally picked up all the parts we cut off and stacked up for him.

(15.)   Both Mr. Turnage and Mr. Godbold were very nice.  I liked working with both of them.

Further Affiant sayeth not.

RUDOLPH CASTON

STATE OF MISSISSIPPI

COUNTY OF PIKE

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for said

county and state, RUDOLPH CASTON, who after being duly sworn by me, state on oath that the

matters and facts contained in the foregoing Affidavit are true and correct as therein stated.

This the 19th day of March, 2003.

_____
NOTARY PUBLIC

My Commission Expires:

MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES MARCH 4, 2005
BONDED THRU STEGALL NOTARY SERVICE



PLAINTIFF'S
EXHIBIT
C

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DISTRICT

THOMAS R. WICKER, et al.

                                                PLAINTIFFS

vs.                                        CIVIL ACTION NO. 3:03CV290LN

ILLINOIS CENTRAL RAILROAD COMPANY                DEFENDANT

### AFFIDAVIT OF ALTON CONEY

I am a Plaintiff in the above-entitled and styled case.

(1.)    I am over Eighteen (18) years of age and I am competent to render this affidavit.

(2.)    I have personal knowledge of the facts as are set out in this affidavit.

(3.)    During my employment with the David Joseph Company I was familiar with the company's affiliation with the Illinois Central Railroad Company.

(4.)    The David Joseph Company in McComb dismantled freight cars and locomotives exclusively for the Illinois Central Railroad Company.

(5.)    The property occupied by the David Joseph Company belonged to the Illinois Central Railroad and was adjacent to the main railroad repair yard.

(6.)    The David Joseph Company only dismantled cars belonging to the Illinois Central Railroad.

(7.)    Each morning the Illinois Central Railroad would bring certain cars to the track on the property occupied by David Joseph.  Before any employees from David Joseph could work on the cars it was necessary for inspectors for the Illinois Central Railroad to inspect the cars and tell David Joseph which cars they could keep.

(8.)    The railroad inspectors marked the parts on the cars that they wanted the employees of the David Joseph Company to cut off and leave for the employees of the railroad to come over and pick up and take them to the repair yard for the Illinois Central

Railroad.

(9.)    Each of the employees at David Joseph knew they were to use the cutting torch on the outside of the painted lines made by the railroad inspectors so they would not ruin the part.

(10.)   All during the day the railroad inspectors were on the property of the David Joseph Company telling the foreman what parts to remove or telling the individual employees what to remove.

(11.)   I knew we had to do what the railroad inspectors requested.

(12.)   We never cut up cars for any other railroad but Illinois Central Railroad.

(13.)   I worked with the railroad inspectors from the Illinois Central Railroad on a daily basis.

(14.)   The inspectors would tell him which wheels and axles to save and which ones to cut up for salvage.

(15.)   During the time of my employment with David Joseph, I had to take parts over to the Illinois Central Railroad two or three times per week.  The railroad inspectors would tell me to take the parts over to the Illinois Central yard.


Further Affiant sayeth not.


_____
ALTON CONEY

STATE OF MISSISSIPPI

COUNTY OF PIKE

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for said county and state, ALTON CONEY, who after being duly sworn by me, state on oath that the matters and facts contained in the foregoing Affidavit are true and correct as therein stated.

This the 19th day of March, 2003.

_____
NOTARY PUBLIC

My Commission Expires:

MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES MARCH 4, 2005
BONDED THRU STEGALL NOTARY SERVICE


PLAINTIFF'S
EXHIBIT
H

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DISTRICT

THOMAS R. WICKER, et al.

PLAINTIFFS

vs.

CIVIL ACTION NO. 3:03CV290LN

ILLINOIS CENTRAL RAILROAD COMPANY

DEFENDANT

### AFFIDAVIT OF JAMES E. DAVIS

I am a Plaintiff in the above-entitled and styled case.

(1.)  I am over Eighteen (18) years of age and I am competent to render this affidavit.

(2.)  I have personal knowledge of the facts as are set out in this affidavit.

(3.)  During my employment with the David Joseph Company I was familiar with the company's affiliation with the Illinois Central Railroad Company.

(4.)  The David Joseph Company in McComb dismantled freight cars and locomotives exclusively for the Illinois Central Railroad Company.

(5.)  The property occupied by the David Joseph Company belonged to the Illinois Central Railroad and was adjacent to the main railroad repair yard.

(6.)  The David Joseph Company only dismantled cars belonging to the Illinois Central Railroad.

(7.)  Each morning the Illinois Central Railroad would bring certain cars to the track on the property occupied by David Joseph.  Before any employees from David Joseph could work on the cars it was necessary for inspectors for the Illinois Central Railroad to inspect the cars and tell David Joseph which cars they could

keep.

(8.) The railroad inspectors marked the parts on the cars that they wanted the employees of the David Joseph Company to cut off and leave for the employees of the railroad to come over and pick up and take them to the repair yard for the Illinois Central Railroad.

(9.) Each of the employees at David Joseph knew they were to use the cutting torch on the outside of the painted lines made by the railroad inspectors so they would not ruin the part.

(10.) All during the day the railroad inspectors were on the property of the David Joseph Company telling the foreman what parts to remove or telling the individual employees what to remove.

(11.) I knew we had to do what the railroad inspectors requested.

(12.) We never cut up cars for any other railroad but Illinois Central Railroad.


Further Affiant sayeth not.


JAMES E. DAVIS

STATE OF MISSISSIPPI

COUNTY OF PIKE

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for said county and state, JAMES E. DAVIS, who after being duly sworn by me, state on oath that the matters and facts contained in the foregoing Affidavit are true and correct as therein stated.

This the 20th day of March, 2003.

_____
NOTARY PUBLIC

My Commission Expires:

MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES MARCH 4, 2005
BONDED THRU STEGALL NOTARY SERVICE



PLAINTIFF'S
EXHIBIT
I

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DISTRICT

THOMAS R. WICKER, et al.

PLAINTIFFS

vs.

CIVIL ACTION NO. 3:03CV290LN

ILLINOIS CENTRAL RAILROAD COMPANY

DEFENDANT

## AFFIDAVIT OF COLIA DILLON

I am a Plaintiff in the above-entitled and styled case.

(1.)    I am over Eighteen (18) years of age and I am competent to render this affidavit.

(2.)    I have personal knowledge of the facts as are set out in this affidavit.

(3.)    During my employment with the David Joseph Company I was familiar with the company's affiliation with the Illinois Central Railroad Company.

(4.)    The David Joseph Company in McComb dismantled freight cars and locomotives exclusively for the Illinois Central Railroad Company.

(5.)    The property occupied by the David Joseph Company belonged to the Illinois Central Railroad and was adjacent to the main railroad repair yard.

(6.)    The David Joseph Company only dismantled cars belonging to the Illinois Central Railroad.

(7.)    Each morning the Illinois Central Railroad would bring certain cars to the track on the property occupied by David Joseph.  Before any employees from David Joseph could work on the cars it was necessary for inspectors for the Illinois Central Railroad to inspect the cars and tell David Joseph which cars they could

keep.

(8.)   The railroad inspectors marked the parts on the cars that they wanted the employees of the David Joseph Company to cut off and leave for the employees of the railroad to come over and pick up and take them to the repair yard for the Illinois Central Railroad.

(9.)   Each of the employees at David Joseph knew they were to use the cutting torch on the outside of the painted lines made by the railroad inspectors so they would not ruin the part.

(10.)   All during the day the railroad inspectors were on the property of the David Joseph Company telling the foreman what parts to remove or telling the individual employees what to remove.

(11.)   I knew we had to do what the railroad inspectors requested.

(12.)   We never cut up cars for any other railroad but Illinois Central Railroad.

(13.)   I went over to the I-C property to get gloves for our job on the David Joseph property.


Further Affiant sayeth not.


_____
COLIA DILLON

STATE OF MISSISSIPPI

COUNTY OF PIKE

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for said

county and state, COLIA DILLON, who after being duly sworn by me, state on oath that the

matters and facts contained in the foregoing Affidavit are true and correct as therein stated.

This the _____ day of March, 2003.

_____
NOTARY PUBLIC

My Commission Expires:

MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES MARCH 4, 2005
BONDED THRU STEGALL NOTARY SERVICE



PLAINTIFF'S EXHIBIT
J

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DISTRICT

THOMAS R. WICKER, et al.

                                          PLAINTIFFS

vs.

                         CIVIL ACTION NO. 3:03CV290LN

ILLINOIS CENTRAL RAILROAD COMPANY           DEFENDANT

## AFFIDAVIT OF WILLIAM HACKETT

I am a Plaintiff in the above-entitled and styled case.

(1.)    I am over Eighteen (18) years of age and I am competent to render this affidavit.

(2.)    I have personal knowledge of the facts as are set out in this affidavit.

(3.)    During my employment with the David Joseph Company I was familiar with the company's affiliation with the Illinois Central Railroad Company.

(4.)    The David Joseph Company in McComb dismantled freight cars and locomotives exclusively for the Illinois Central Railroad Company.

(5.)    The property occupied by the David Joseph Company belonged to the Illinois Central Railroad and was adjacent to the main railroad repair yard.

(6.)    The David Joseph Company only dismantled cars belonging to the Illinois Central Railroad.

(7.)    Each morning the Illinois Central Railroad would bring certain cars to the track on the property occupied by David Joseph.  Before any employees from David Joseph could work on the cars it was necessary for inspectors for the Illinois Central Railroad to inspect the cars and tell David Joseph which cars they could

keep.

(8.)     The railroad inspectors marked the parts on the cars that they wanted the

employees of the David Joseph Company to cut off and leave for the employees of

the railroad to come over and pick up and take them to the repair yard for the

Illinois Central Railroad.

(9.)     Each of the employees at David Joseph knew they were to use the cutting torch on

the outside of the painted lines made by the railroad inspectors so they would not

ruin the part.

(10.)    All during the day the railroad inspectors were on the property of the David

Joseph Company telling the foreman what parts to remove or telling the individual

employees what to remove.

(11.)    Our foremen were told by the railroad inspectors what parts to remove and then he

told us which ones to remove and save.

(12.)    I knew we had to do what the railroad inspectors requested.

(13.)    We never cut up cars for any other railroad but Illinois Central Railroad.

(14.)    I got gloves from the railroad to use on the David Joseph property.

(15.)    I saw the railroad pick up parts that we had cut and saved and take them to the I/C

yard to use on their cars.

Further Affiant sayeth not.

_William Hackett_
WILLIAM HACKETT

STATE OF MISSISSIPPI

COUNTY OF PIKE

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for said

county and state, WILLIAM HACKETT, who after being duly sworn by me, state on oath that

the matters and facts contained in the foregoing Affidavit are true and correct as therein stated.

This the _____ day of March, 2003.

_____

NOTARY PUBLIC

My Commission Expires:

MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES MARCH 4, 2005
BONDED THRU STEGALL NOTARY SERVICE



## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DISTRICT

THOMAS R. WICKER, et al.

                                                            PLAINTIFFS

vs.                                  CIVIL ACTION NO. 3:03CV290LN

ILLINOIS CENTRAL RAILROAD COMPANY                  DEFENDANT

### AFFIDAVIT OF KNOBERT HUGHES

I am a Plaintiff in the above-entitled and styled case.

(1.)   I am over Eighteen (18) years of age and I am competent to render this affidavit.

(2.)   I have personal knowledge of the facts as are set out in this affidavit.

(3.)   During my employment with the David Joseph Company I was familiar with the
       company's affiliation with the Illinois Central Railroad Company.

(4.)   The David Joseph Company in McComb dismantled freight cars and locomotives
       exclusively for the Illinois Central Railroad Company.

(5.)   The property occupied by the David Joseph Company belonged to the Illinois
       Central Railroad and was adjacent to the main railroad repair yard.

(6.)   The David Joseph Company only dismantled cars belonging to the Illinois Central
       Railroad.

(7.)   Each morning the Illinois Central Railroad would bring certain cars to the track on
       the property occupied by David Joseph.  Before any employees from David
       Joseph could work on the cars it was necessary for inspectors for the Illinois
       Central Railroad to inspect the cars and tell David Joseph which cars they could

keep.

(8.)    The railroad inspectors marked the parts on the cars that they wanted the

employees of the David Joseph Company to cut off and leave for the employees of

the railroad to come over and pick up and take them to the repair yard for the

Illinois Central Railroad.

(9.)    Each of the employees at David Joseph knew they were to use the cutting torch on

the outside of the painted lines made by the railroad inspectors so they would not

ruin the part.

(10.)   All during the day the railroad inspectors were on the property of the David

Joseph Company.

(11.)   I knew we had to do what the railroad inspectors requested.

(12.)   We never cut up cars for any other railroad but Illinois Central Railroad.

(13.)   I got gloves and spats from the railroad to use on our job.


Further Affiant sayeth not.


KNOBERT HUGHES

STATE OF MISSISSIPPI

COUNTY OF PIKE

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for said county and state, KNOBERT HUGHES, who after being duly sworn by me, state on oath that the matters and facts contained in the foregoing Affidavit are true and correct as therein stated.

This the ____ day of March, 2003.

NOTARY PUBLIC

My Commission Expires:

MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES MARCH 4, 2005
BONDED THRU STEGALL NOTARY SERVICE



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DISTRICT

THOMAS R. WICKER, et al.

                                                        PLAINTIFFS

vs.                                     CIVIL ACTION NO. 3:03CV290LN

ILLINOIS CENTRAL RAILROAD COMPANY                       DEFENDANT

### AFFIDAVIT OF CARL HUGHES

I am a Plaintiff in the above-entitled and styled case.

(1.)     I am over Eighteen (18) years of age and I am competent to render this affidavit.

(2.)     I have personal knowledge of the facts as are set out in this affidavit.

(3.)     During my employment with the David Joseph Company I was familiar with the company's affiliation with the Illinois Central Railroad Company.

(4.)     The David Joseph Company in McComb dismantled freight cars and locomotives exclusively for the Illinois Central Railroad Company.

(5.)     The property occupied by the David Joseph Company belonged to the Illinois Central Railroad and was adjacent to the main railroad repair yard.

(6.)     The David Joseph Company only dismantled cars belonging to the Illinois Central Railroad.

(7.)     Each morning the Illinois Central Railroad would bring certain cars to the track on the property occupied by David Joseph.  Before any employees from David Joseph could work on the cars it was necessary for inspectors for the Illinois Central Railroad to inspect the cars and tell David Joseph which cars they could keep.

(8.)     The railroad inspectors marked the parts on the cars that they wanted the employees of the David Joseph Company to cut off and leave for the employees of the railroad to come over and pick up and take them to the repair yard for the Illinois Central Railroad.

(9.)     Each of the employees at David Joseph knew they were to use the cutting torch on the

outside of the painted lines made by the railroad inspectors so they would not ruin the part.

(10.)   All during the day the railroad inspectors were on the property of the David Joseph Company telling the foreman what parts to remove or telling the individual employees what to remove.

(11.)   I knew we had to do what the railroad inspectors requested.

(12.)   We never cut up cars for any other railroad but Illinois Central Railroad.

(13.)   The railroad inspector that I worked with the most was Mr. Jerry Turnage.

(14.)   The parts that I cut off the cars were marked by Mr. Jerry Turnage.

(15.)   Most of the time I would cut up the center sills after Mr. Turnage marked them. He would mark them at different lengths depending on what the railroad needed then. After I cut the center sills they would have to be moved by the crane.

(16.)   Several times a week Mr. Turnage or another Illinois Central Railroad employee would request a specific part and we would stop what we were doing and get it for them to use on the cars in the Illinois Central yard.

(17.)   The Illinois Central inspectors could get any part off of any car brought into David Joseph before it was sent out for scrap.


Further Affiant sayeth not.

CARL HUGHES

STATE OF MISSISSIPPI

COUNTY OF PIKE

     PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for said

county and state, CARL HUGHES, who after being duly sworn by me, state on oath that the

matters and facts contained in the foregoing Affidavit are true and correct as therein stated.

     This the _____ day of March, 2003.

                                NOTARY PUBLIC

My Commission Expires:

MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES MARCH 4, 2005
BONDED THRU STEGALL NOTARY SERVICE



PLAINTIFF'S EXHIBIT m

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DISTRICT

THOMAS R. WICKER, et al.

                                                    PLAINTIFFS

vs.                                    CIVIL ACTION NO. 3:03CV290LN

ILLINOIS CENTRAL RAILROAD COMPANY                   DEFENDANT

### AFFIDAVIT OF JAMES ABRAHAM

I am a Plaintiff in the above-entitled and styled case.

(1.)    I am over Eighteen (18) years of age and I am competent to render this affidavit.

(2.)    I have personal knowledge of the facts as are set out in this affidavit.

(3.)    During my employment with the David Joseph Company I was familiar with the company's affiliation with the Illinois Central Railroad Company.

(4.)    The David Joseph Company in McComb dismantled freight cars and locomotives exclusively for the Illinois Central Railroad Company.

(5.)    The property occupied by the David Joseph Company belonged to the Illinois Central Railroad and was adjacent to the main railroad repair yard.

(6.)    The David Joseph Company only dismantled cars belonging to the Illinois Central Railroad.

(7.)    Each morning the Illinois Central Railroad would bring certain cars to the track on the property occupied by David Joseph.  Before any employees from David Joseph could work on the cars it was necessary for inspectors for the Illinois Central Railroad to inspect the cars and tell David Joseph which cars they could keep.

(8.)    The railroad inspectors marked the parts on the cars that they wanted the employees of the David Joseph Company to cut off and leave for the employees of the railroad to come over and pick up and take them to the repair yard for the Illinois Central

Railroad.

(9.)  Each of the employees at David Joseph knew they were to use the cutting torch on the outside of the painted lines made by the railroad inspectors so they would not ruin the part.

(10.)  All during the day the railroad inspectors were on the property of the David Joseph Company telling the foreman what parts to remove or telling the individual employees what to remove.

(11.)  I worked with Mr. Bob Godbold.  Mr. Godbold would either mark the part he wanted on the car or he would tell me a specific part to cut off.

(12.)  I knew we had to do what the railroad inspectors requested.

(13.)  We never cut up cars for any other railroad but Illinois Central Railroad.

(14.)  Mr. Early Thompson worked for the Illinois Central Railroad.  Mr. Thompson who was often called "Preacher" would pick up the parts that we had cut off at the direction of the railroad inspectors and he would take them to the Illinois Central yard to put on their cars.

(15.)  I got gloves and spats from the Illinois Central Railroad to use doing my job.


Further Affiant sayeth not.


JAMES ABRAHAM

STATE OF MISSISSIPPI

COUNTY OF PIKE

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for said

county and state, JAMES ABRAHAM, who after being duly sworn by me, state on oath that the

matters and facts contained in the foregoing Affidavit are true and correct as therein stated.

This the 20th day of March, 2003.

_____
NOTARY PUBLIC

My Commission Expires:

MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES MARCH 4, 2005
BONDED THRU STEGALL NOTARY SERVICE



### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DISTRICT

THOMAS R. WICKER, et al.

                                          PLAINTIFFS

vs.                               CIVIL ACTION NO. 3:03CV290LN

ILLINOIS CENTRAL RAILROAD COMPANY           DEFENDANT

### AFFIDAVIT OF CLAUDE ISAAC

I am a Plaintiff in the above-entitled and styled case.

(1.)     I am over Eighteen (18) years of age and I am competent to render this affidavit.

(2.)     I have personal knowledge of the facts as are set out in this affidavit.

(3.)     During my employment with the David Joseph Company I was familiar with the company's affiliation with the Illinois Central Railroad Company.

(4.)     The David Joseph Company in McComb dismantled freight cars and locomotives exclusively for the Illinois Central Railroad Company.

(5.)     The property occupied by the David Joseph Company belonged to the Illinois Central Railroad and was adjacent to the main railroad repair yard.

(6.)     The David Joseph Company only dismantled cars belonging to the Illinois Central Railroad.

(7.)     Each morning the Illinois Central Railroad would bring certain cars to the track on the property occupied by David Joseph.  Before any employees from David Joseph could work on the cars it was necessary for inspectors for the Illinois Central Railroad to inspect the cars and tell David Joseph which cars they could

keep.

(8.)    The railroad inspectors marked the parts on the cars that they wanted the employees of the David Joseph Company to cut off and leave for the employees of the railroad to come over and pick up and take them to the repair yard for the Illinois Central Railroad.

(9.)    Each of the employees at David Joseph knew they were to use the cutting torch on the outside of the painted lines made by the railroad inspectors so they would not ruin the part.

(10.)   All during the day the railroad inspectors were on the property of the David Joseph Company telling the foreman what parts to remove or telling the individual employees what to remove.

(11.)   I worked with Bobby Godbold and Jerry Turnage, both railroad inspectors. These men either told me which parts they wanted or marked it on the cars

(12.)   I knew we had to do what the railroad inspectors requested.

(13.)   We never cut up cars for any other railroad but Illinois Central Railroad.

(14.)   Mr. Early Thompson worked for the Illinois Central Railroad. He would pick up the parts we cut off the cars and stacked for him.

(15.)   I got gloves and spats from the Illinois Central Railroad to use on my job.


Further Affiant sayeth not.


_Claude Isaac_
CLAUDE ISAAC

STATE OF MISSISSIPPI

COUNTY OF PIKE

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for said

county and state, CLAUDE ISAAC, who after being duly sworn by me, state on oath that the

matters and facts contained in the foregoing Affidavit are true and correct as therein stated.

This the _30__ day of March, 2003.

_____
NOTARY PUBLIC

My Commission Expires:

MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES MARCH 4, 2005
BONDED THRU STEGALL NOTARY SERVICE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DISTRICT



**PLAINTIFF'S EXHIBIT**

O

THOMAS R. WICKER, et al.                                          PLAINTIFFS

vs.                                                        CIVIL ACTION NO. 3:03CV290LN

ILLINOIS CENTRAL RAILROAD COMPANY                  DEFENDANT

### AFFIDAVIT OF HARRY MAXWELL

I am a Plaintiff in the above-entitled and styled case.

(1.)    I am over Eighteen (18) years of age and I am competent to render this affidavit.

(2.)    I have personal knowledge of the facts as are set out in this affidavit.

(3.)    During my employment with the David Joseph Company I was familiar with the company's affiliation with the Illinois Central Railroad Company.

(4.)    The David Joseph Company in McComb dismantled freight cars and locomotives exclusively for the Illinois Central Railroad Company.

(5.)    The property occupied by the David Joseph Company belonged to the Illinois Central Railroad and was adjacent to the main railroad repair yard.

(6.)    The David Joseph Company only dismantled cars belonging to the Illinois Central Railroad.

(7.)    Each morning the Illinois Central Railroad would bring certain cars to the track on the property occupied by David Joseph.  Before any employees from David Joseph could work on the cars it was necessary for inspectors for the Illinois Central Railroad to inspect the cars and tell David Joseph which cars they could

keep.

(8.)   The railroad inspectors marked the parts on the cars that they wanted the

employees of the David Joseph Company to cut off and leave for the employees of

the railroad to come over and pick up and take them to the repair yard for the

Illinois Central Railroad.

(9.)   Each of the employees at David Joseph knew they were to use the cutting torch on

the outside of the painted lines made by the railroad inspectors so they would not

ruin the part.

(10.)   All during the day the railroad inspectors were on the property of the David

Joseph Company telling the foreman what parts to remove or telling the individual

employees what to remove.

(11.)   I knew we had to do what the railroad inspectors requested.

(12.)   We never cut up cars for any other railroad but Illinois Central Railroad.

(13.)   I worked with Mr. Bobby Godbold, Jerry Turnage and a Mr. Memphis Smith, all

railroad inspectors for the Illinois Central Railroad.

(14.)   All of these men marked parts for me and others to cut off and send to the Illinois

Central yard.  On occasion they would request special parts and we would have to

stop and cut it off for them.  This would happen two or three times a day.


Further Affiant sayeth not.


HARRY MAXWELL

STATE OF MISSISSIPPI

COUNTY OF PIKE

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for said county and state, HARRY MAXWELL, who after being duly sworn by me, state on oath that the matters and facts contained in the foregoing Affidavit are true and correct as therein stated.

This the 20ᵗʰ day of March, 2003.

_____
NOTARY PUBLIC

My Commission Expires:

MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES MARCH 4, 2005
BONDED THRU STEGALL NOTARY SERVICE


PLAINTIFF'S
EXHIBIT

_____ρ_____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DISTRICT**

THOMAS R. WICKER, et al.

                                          PLAINTIFFS

vs.                              CIVIL ACTION NO. 3:03CV290LN

ILLINOIS CENTRAL RAILROAD COMPANY         DEFENDANT

### AFFIDAVIT OF HENRY REESE

    I am a Plaintiff in the above-entitled and styled case.

(1.)    I am over Eighteen (18) years of age and I am competent to render this affidavit.

(2.)    I have personal knowledge of the facts as are set out in this affidavit.

(3.)    During my employment with the David Joseph Company I was familiar with the company's affiliation with the Illinois Central Railroad Company.

(4.)    The David Joseph Company in McComb dismantled freight cars and locomotives exclusively for the Illinois Central Railroad Company.

(5.)    The property occupied by the David Joseph Company belonged to the Illinois Central Railroad and was adjacent to the main railroad repair yard.

(6.)    The David Joseph Company only dismantled cars belonging to the Illinois Central Railroad.

(7.)    Each morning the Illinois Central Railroad would bring certain cars to the track on the property occupied by David Joseph.  Before any employees from David Joseph could work on the cars it was necessary for inspectors for the Illinois Central Railroad to inspect the cars and tell David Joseph which cars they could

keep.

(8.)   The railroad inspectors marked the parts on the cars that they wanted the employees of the David Joseph Company to cut off and leave for the employees of the railroad to come over and pick up and take them to the repair yard for the Illinois Central Railroad.

(9.)   Each of the employees at David Joseph knew they were to use the cutting torch on the outside of the painted lines made by the railroad inspectors so they would not ruin the part.

(10.)  All during the day the railroad inspectors were on the property of the David Joseph Company telling the foreman what parts to remove or telling the individual employees what to remove.

(11.)  My foreman Harry Maxwell was told by the railroad inspectors what parts to remove and then he told us.

(12.)  I knew we had to do what the railroad inspectors requested.

(13.)  We never cut up cars for any other railroad but Illinois Central Railroad.


Further Affiant sayeth not.


_____
HENRY REESE

STATE OF MISSISSIPPI

COUNTY OF PIKE

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for said county and state, HENRY REESE, who after being duly sworn by me, state on oath that the matters and facts contained in the foregoing Affidavit are true and correct as therein stated.

This the 20th day of March, 2003.

_____
NOTARY PUBLIC

My Commission Expires:

MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES MARCH 4, 2005
BONDED THRU STEGALL NOTARY SERVICE



PLAINTIFF'S
EXHIBIT
Q

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DISTRICT

THOMAS R. WICKER, et al.                                    **PLAINTIFFS**

vs.                                        CIVIL ACTION NO. 3:03CV290LN

ILLINOIS CENTRAL RAILROAD COMPANY                          **DEFENDANT**

### AFFIDAVIT OF SAMUEL SMITH

I am a Plaintiff in the above-entitled and styled case.

(1.)   I am over Eighteen (18) years of age and I am competent to render this affidavit.

(2.)   I have personal knowledge of the facts as are set out in this affidavit.

(3.)   During my employment with the David Joseph Company I was familiar with the company's affiliation with the Illinois Central Railroad Company.

(4.)   The David Joseph Company in McComb dismantled freight cars and locomotives exclusively for the Illinois Central Railroad Company.

(5.)   The property occupied by the David Joseph Company belonged to the Illinois Central Railroad and was adjacent to the main railroad repair yard.

(6.)   The David Joseph Company only dismantled cars belonging to the Illinois Central Railroad.

(7.)   Each morning the Illinois Central Railroad would bring certain cars to the track on the property occupied by David Joseph. Before any employees from David Joseph could work on the cars it was necessary for inspectors for the Illinois Central Railroad to inspect the cars and tell David Joseph which cars they could

keep.

(8.)    The railroad inspectors marked the parts on the cars that they wanted the

employees of the David Joseph Company to cut off and leave for the employees of

the railroad to come over and pick up and take them to the repair yard for the

Illinois Central Railroad.

(9.)    Each of the employees at David Joseph knew they were to use the cutting torch on

the outside of the painted lines made by the railroad inspectors so they would not

ruin the part.

(10.)   All during the day the railroad inspectors were on the property of the David

Joseph Company telling the foreman what parts to remove or telling the individual

employees what to remove.

(11.)   When I worked cutting up parts Bobby Godbold the railroad inspector would

mark the wheels, trucks, brake shoes and pins he wanted us to save and we would

cut on the outside of the mark and stack them up for the railroad to pick up.

(12.)   I knew we had to do what the railroad inspectors requested.

(13.)   We never cut up cars for any other railroad but Illinois Central Railroad.

(14.)   Normally, once or twice a week Mr. Bobby Godbold would make a specific

request for a specific part that the railroad needed at that time.  We would cut off

the part and they would take it to the Illinois Central Yard and put it on the car.

(15.)   One time Mr. Bobby Godbold instructed me to load two sets of wheels for the

Illinois Central cars onto a 18-wheeler to be delivered to Baton Rouge.  The

wheels were for an Illinois Central car that had been in a derailment.

(16.)   After Mr. Godbold would mark the center sill of a car, our cutters would cut it off

to be used on another car. I would then pick up the center sill and take it to the crossing. I would load it on an Illinois Central car and the railroad would take it to their yard to use on another car.

(17.)   The foremen at David Joseph would keep up with our time, take care of working conditions and make sure there was work for us and pay us for our work. The railroad inspectors told us how to do our work.

Further Affiant sayeth not.

SAMUEL SMITH

STATE OF MISSISSIPPI

COUNTY OF PIKE

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for said county and state, SAMUEL SMITH, who after being duly sworn by me, state on oath that the matters and facts contained in the foregoing Affidavit are true and correct as therein stated.

This the 20th day of March, 2003.

_____
NOTARY PUBLIC

My Commission Expires:

MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES MARCH 4, 2005
BONDED THRU STEGALL NOTARY SERVICE



PLAINTIFF'S
EXHIBIT
_____R_____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DISTRICT

THOMAS R. WICKER, et al.

                                          **PLAINTIFFS**

vs.                               CIVIL ACTION NO. 3:03CV290LN

ILLINOIS CENTRAL RAILROAD COMPANY         **DEFENDANT**

### AFFIDAVIT OF WALLACE WILKERSON

I am a Plaintiff in the above-entitled and styled case.

(1.)     I am over Eighteen (18) years of age and I am competent to render this affidavit.

(2.)     I have personal knowledge of the facts as are set out in this affidavit.

(3.)     During my employment with the David Joseph Company I was familiar with the company's affiliation with the Illinois Central Railroad Company.

(4.)     The David Joseph Company in McComb dismantled freight cars and locomotives exclusively for the Illinois Central Railroad Company.

(5.)     The property occupied by the David Joseph Company belonged to the Illinois Central Railroad and was adjacent to the main railroad repair yard.

(6.)     The David Joseph Company only dismantled cars belonging to the Illinois Central Railroad.

(7.)     Each morning the Illinois Central Railroad would bring certain cars to the track on the property occupied by David Joseph. Before any employees from David Joseph could work on the cars it was necessary for inspectors for the Illinois Central Railroad to inspect the cars and tell David Joseph which cars they could

keep.

(8.) The railroad inspectors marked the parts on the cars that they wanted the

employees of the David Joseph Company to cut off and leave for the employees of

the railroad to come over and pick up and take them to the repair yard for the

Illinois Central Railroad.

(9.) Each of the employees at David Joseph knew they were to use the cutting torch on

the outside of the painted lines made by the railroad inspectors so they would not

ruin the part.

(10.) All during the day the railroad inspectors were on the property of the David

Joseph Company telling the foreman what parts to remove or telling the individual

employees what to remove.

(11.) I knew we had to do what the railroad inspectors requested.

(12.) We never cut up cars for any other railroad but Illinois Central Railroad.


Further Affiant sayeth not.


_____
WALLACE WILKERSON


witnessed by:

_____

_____

STATE OF MISSISSIPPI

COUNTY OF PIKE

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for said county and state, WALLACE WILKERSON, who after being duly sworn by me, state on oath that the matters and facts contained in the foregoing Affidavit are true and correct as therein stated.

This the 20th day of March, 2003.

_____
NOTARY PUBLIC

My Commission Expires:

MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES MARCH 4, 2005
BONDED THRU STEGALL NOTARY SERVICE



PLAINTIFF'S
EXHIBIT
S

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DISTRICT

THOMAS R. WICKER, et al.

                                               **PLAINTIFFS**

vs.
                            CIVIL ACTION NO. 3:03CV290LN

ILLINOIS CENTRAL RAILROAD COMPANY
                    **DEFENDANT**

### AFFIDAVIT OF GENE PEAVEY

I am a Plaintiff in the above-entitled and styled case.

(1.)    I am over Eighteen (18) years of age and I am competent to render this affidavit.

(2.)    I have personal knowledge of the facts as are set out in this affidavit.

(3.)    During my employment with the David Joseph Company I was familiar with the company's affiliation with the Illinois Central Railroad Company.

(4.)    The David Joseph Company in McComb dismantled freight cars and locomotives exclusively for the Illinois Central Railroad Company.

(5.)    The property occupied by the David Joseph Company belonged to the Illinois Central Railroad and was adjacent to the main railroad repair yard.

(6.)    The David Joseph Company only dismantled cars belonging to the Illinois Central Railroad.

(7.)    Each morning the Illinois Central Railroad would bring certain cars to the track on the property occupied by David Joseph.  Before any employees from David Joseph could work on the cars it was necessary for inspectors for the Illinois Central Railroad to inspect the cars and tell David Joseph which cars they could keep.

(8.)    The railroad inspectors marked the parts on the cars that they wanted the employees of the David Joseph Company to cut off and leave for the employees of the railroad to come over and pick up and take them to the repair yard for the Illinois Central

Railroad.

(9.)     Each of the employees at David Joseph knew they were to use the cutting torch on the outside of the painted lines made by the railroad inspectors so they would not ruin the part.

(10.)    All during the day the railroad inspectors were on the property of the David Joseph Company telling the foreman what parts to remove or telling the individual employees what to remove.

(11.)    I knew we had to do what the railroad inspectors requested.

(12.)    We never cut up cars for any other railroad but Illinois Central Railroad.

(13.)    I worked with both Mr. Bobby Godbold and Mr. Jerry Turnage, both railroad inspectors for the Illinois Central Railroad.  Both of these men would mark the parts that they wanted me to remove.

(14.)    Both Mr. Godbold and Mr. Turnage would request that I remove specific parts at times when they were needed in the Illinois Central yard.

(15.)    On several occasions I had the inspectors to ask me to carry parts over to the Illinois Central yard.


Further Affiant sayeth not.


GENE PEAVEY

STATE OF MISSISSIPPI

COUNTY OF PIKE

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for said

county and state, GENE PEAVEY, who after being duly sworn by me, state on oath

that the matters and facts contained in the foregoing Affidavit are true and correct as therein

stated.

This the 20th day of March, 2003.

_____
NOTARY PUBLIC

My Commission Expires:

MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES MARCH 4, 2003
BONDED THRU STEGALL NOTARY SERVICE

PLAINTIFF'S
EXHIBIT
_T_

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DISTRICT

THOMAS R. WICKER, et al.

                                        **PLAINTIFFS**

vs.                                    CIVIL ACTION NO. 3:03CV290LN

ILLINOIS CENTRAL RAILROAD COMPANY               **DEFENDANT**

## AFFIDAVIT OF STEVE HERRING

I am a Plaintiff in the above-entitled and styled case.

(1.)     I am over Eighteen (18) years of age and I am competent to render this affidavit.

(2.)     I have personal knowledge of the facts as are set out in this affidavit.

(3.)     During my employment with the David Joseph Company I was familiar with the company's affiliation with the Illinois Central Railroad Company.

(4.)     The David Joseph Company in McComb dismantled freight cars and locomotives exclusively for the Illinois Central Railroad Company.

(5.)     The property occupied by the David Joseph Company belonged to the Illinois Central Railroad and was adjacent to the main railroad repair yard.

(6.)     The David Joseph Company only dismantled cars belonging to the Illinois Central Railroad.

(7.)     Each morning the Illinois Central Railroad would bring certain cars to the track on the property occupied by David Joseph.  Before any employees from David Joseph could work on the cars it was necessary for inspectors for the Illinois Central Railroad to inspect the cars and tell David Joseph which cars they could

keep.

(8.)    The railroad inspectors marked the parts on the cars that they wanted the

employees of the David Joseph Company to cut off and leave for the employees of

the railroad to come over and pick up and take them to the repair yard for the

Illinois Central Railroad.

(9.)    Each of the employees at David Joseph knew they were to use the cutting torch on

the outside of the painted lines made by the railroad inspectors so they would not

ruin the part.

(10.)   All during the day the railroad inspectors were on the property of the David

Joseph Company telling the foreman what parts to remove or telling the individual

employees what to remove.

(11.)   Mr. Godbold was the inspector I worked with the most.  He would tell me what

parts to remove.  Sometimes he would tell me to get a specific part that they

needed at that time.

(12.)   I knew we had to do what the railroad inspectors requested.

(13.)   We never cut up cars for any other railroad but Illinois Central Railroad.

(14.)   I got gloves, sleeves and spats from the Illinois Central Railroad to use cutting up

the cars.


Further Affiant sayeth not.


_Steve Herring_
STEVE HERRING

STATE OF MISSISSIPPI

COUNTY OF PIKE

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for said

county and state, STEVE HERRING, who after being duly sworn by me, state on oath that the

matters and facts contained in the foregoing Affidavit are true and correct as therein stated.

This the 21st day of March, 2003.

_____
NOTARY PUBLIC

My Commission Expires:



MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES MARCH 4, 2005
BONDED THRU STEGALL NOTARY SERVICE


PLAINTIFF'S
EXHIBIT
U

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DISTRICT

THOMAS R. WICKER, et al.

                                                **PLAINTIFFS**

vs.                                CIVIL ACTION NO. <u>3:03CV290LN</u>

ILLINOIS CENTRAL RAILROAD COMPANY               **DEFENDANT**

### AFFIDAVIT OF BERNARD ASHLEY

I am a Plaintiff in the above-entitled and styled case.

(1.)    I am over Eighteen (18) years of age and I am competent to render this affidavit.

(2.)    I have personal knowledge of the facts as are set out in this affidavit.

(3.)    During my employment with the David Joseph Company I was familiar with the company's affiliation with the Illinois Central Railroad Company.

(4.)    The David Joseph Company in McComb dismantled freight cars and locomotives exclusively for the Illinois Central Railroad Company.

(5.)    The property occupied by the David Joseph Company belonged to the Illinois Central Railroad and was adjacent to the main railroad repair yard.

(6.)    The David Joseph Company only dismantled cars belonging to the Illinois Central Railroad.

(7.)    Each morning the Illinois Central Railroad would bring certain cars to the track on the property occupied by David Joseph.  Before any employees from David Joseph could work on the cars it was necessary for inspectors for the Illinois Central Railroad to inspect the cars and tell David Joseph which cars they could keep.

(8.)    The railroad inspectors marked the parts on the cars that they wanted the employees of the David Joseph Company to cut off and leave for the employees of the railroad to come over and pick up and take them to the repair yard for the Illinois Central

Railroad.

(9.)     Each of the employees at David Joseph knew they were to use the cutting torch on the outside of the painted lines made by the railroad inspectors so they would not ruin the part.

(10.)    All during the day the railroad inspectors were on the property of the David Joseph Company telling the foreman what parts to remove or telling the individual employees what to remove.

(11.)    The railroad inspector Bobby Godbold would tell me which parts to save.  Mr. Godbold would mark the parts and I would cut around the marks that he made and stack them up for the Illinois Central Railroad to pick up.

(12.)    I knew we had to do what the railroad inspectors requested.

(13.)    We never cut up cars for any other railroad but Illinois Central Railroad.

(14.)    On one occasion I was instructed by an Illinois Central inspector to take one of the David Joseph's front-end loader over to the Illinois Central yard to dig a hole.  The Illinois Central employee instructed me how to dig the hole and supervised me while I performed the work.

Further Affiant sayeth not.

_Bernard Ashley_
BERNARD ASHLEY

STATE OF MISSISSIPPI

COUNTY OF PIKE

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for said county and state, BERNARD ASHLEY, who after being duly sworn by me, state on oath that the matters and facts contained in the foregoing Affidavit are true and correct as therein stated.

This the 21st day of March, 2003.

_____
NOTARY PUBLIC

My Commission Expires:

MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES MARCH 4, 2005
BONDED THRU STEGALL NOTARY SERVICE