**875**

APR 05 2004

U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### OXFORD DIVISION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**PLEAS OZELL ROSAMOND, et al**                                        **PLAINTIFFS**

APR 1 4 2004

**v.**

FILED          **CASE NO. 3:03CV235**
CLERK'S OFFICE

**GARLOCK SEALING TECHNOLOGIES, INC. et al**                    **DEFENDANTS**

PLEADING NO. 4144

## ORDER

This cause comes before the court on the motion of plaintiffs Pleas Ozell Rosamond, et al., pursuant to 28 U.S.C. § 1447, to remand [4-1] this case to the Circuit Court of Montgomery County. Defendants have responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, along with other pertinent authorities, concludes that the motion is well taken and should be granted. The court had previously granted defendants additional time to conduct discovery on the issue of misjoinder, on the good faith assumption that such discovery might be relevant to this case. However, upon dealing with this same misjoinder issue in a companion case, it became clear to this court, for the reasons given in this order, that no amount of discovery would permit defendants to prevail on their misjoinder arguments in this case.[1]

---

[1] The court would also note that, in addition to the court's lack of subject matter jurisdiction over this case, it seems clear that a removal was not effected within thirty days of service upon the first defendant in this case, as required by 28 U.S.C. § 1446(b). Defendants argue that plaintiffs' non-response to a request for admission relating to the amount in controversy constituted "other paper" starting the thirty-day removal period anew, but this argument lacks merit. As noted by plaintiffs, it should have been apparent from the damages sought in the complaint that they seek in excess of $75,000, and it is a lack of diversity, rather than any amount in controversy issues, which is the bar to jurisdiction in this case. It also seems clear to this court that defendants removed at the time they did so as to avoid 28 U.S.C.

MDL- 875                                                  1
RECOMMENDED ACTION

VACATE CTU-231 + H.S.C. - 2 A...
Approved/Date: ___ AR 8/13 ___

OFFICIAL FILE COPY

IMAGED APR 15 '04

This is a mass-joined asbestos action in which numerous plaintiffs seek recovery against numerous defendants for injuries which allegedly resulted from exposure to asbestos-containing products. Plaintiffs filed suit in the Circuit Court of Montgomery County on December 27, 2002, and, on December 23, 2003, defendants removed to this court on the basis of diversity jurisdiction. *See* 28 U.S.C. § 1332. Plaintiffs have moved to remand, arguing that diversity of citizenship is lacking in this case inasmuch as they seek recovery against four defendants which are, like themselves, Mississippi residents. Defendants counter that the local defendants were fraudulently joined for the purpose of defeating removal jurisdiction and that remand would therefore be inappropriate.

The removing party, which is urging jurisdiction on the court, bears the burden of demonstrating that jurisdiction is proper due to fraudulent joinder. *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992). The Fifth Circuit has stated:

> The burden of persuasion placed upon those who cry "fraudulent joinder" is indeed a heavy one. In order to establish that an in-state defendant has been fraudulently joined, the removing party must show either that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts.

*B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981). In evaluating a motion to remand, the court considers summary judgment-type evidence to pierce the pleadings. This evidence may include the pleadings, affidavits and deposition transcripts. *Hart v. Bayer Corp.*, 199 F.3d 239, 246-47 (5th Cir. 2000). The Fifth Circuit has recently reaffirmed that it "is

_____

§ 1446(b)'s one-year limitation period on diversity removals, rather than on the basis of any genuine information conveyed by plaintiffs' non-response to an admissions request. As such, it is clear to this court that this removal was not timely filed, and that on this additional basis, additional discovery would not assist defendants in this case.

2

insufficient that there be a mere theoretical possibility of recovery," to the contrary, there must "at least be arguably a reasonable basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder." *Travis v. Irby*, 326 .3d 644, 648 (5th Cir. 2003)(citing *Badon v. RJR Nabisco Inc.*, 224 F.3d 382, 286 (5th Cir. 2000)).

In contending that no reasonable possibility of recovery exists against the local defendants, defendants argue that plaintiffs' complaint contains only vague and conclusory allegations against these defendants and that the complaint did not give these defendants sufficient notice of the claims against them. Defendants' use of alleged pleading defects as a basis for a finding of fraudulent joinder is problematic. The Mississippi and Federal Rules of Civil Procedure require only that a complaint make "a short and plain statement of the claim showing that the pleader is entitled to relief," see Miss. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 8(a)(2), and any suggestion that plaintiffs were required to set forth detailed allegations against the local defendants therefore lacks merit. The Mississippi and Federal Rules of Civil Procedure do require a greater degree of particularity for fraud claims, *see* Fed. R. Civ. P. 9(b), but, even in this context, the Fifth Circuit has indicated that a plaintiff should ordinarily be given an opportunity to amend her complaint to allege fraud with greater particularity, before such claims are dismissed with prejudice upon a finding of fraudulent joinder. *See Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000).

The court does agree that the complaint in this case leaves something to be desired as far as specificity is concerned. The complaint broadly seeks recovery against "defendants" under various theories, including strict products liability and negligence, but it lacks specificity with regard to which allegations are made against which defendants. At the same time, it seems clear

3

that the Mississippi defendants in this case are industrial defendants whom plaintiffs seek to hold liable under standard asbestos liability theories. Moreover, each defendant has, of course, the right to conduct discovery to determine the exact nature of the plaintiffs' claims against it; a plaintiff is not required to make out his entire case in his pleadings. The court also deems it significant that the Mississippi defendants could have submitted proof establishing that they have no potential legal liability in this case, but they have not done so. The heavy burden of demonstrating fraudulent joinder is on defendants, and, the vagueness of the complaint notwithstanding, defendants have failed to demonstrate that any such fraudulent joinder is present in this case.

Defendants also argue that an egregious procedural misjoinder exists in this case under *Tapscott v. MS Dealer Service Corporation*, 77 F. 3d 1353, 1360 (11th Cir. 1996), but the court does not agree. The Mississippi Supreme Court recently appeared to re-affirm the liberal standards of joinder under Miss. R. Civ. P. 20 in asbestos cases, *see Janssen Pharmaceutica, Inc. v. Armond*, 866 So.2d 1092 (Miss. Feb. 19, 2004) (noting the proper application of liberal rules of joinder to asbestos actions, as a "mature" tort), and the court concludes that there is no egregious misjoinder in this case, including the joinder of the so-called "friction" and "non-friction" defendants. *See Arrington, et al. v. AC & S, et al.*, No. 1:02cv425 (S.D. Miss. 2002) (rejecting misjoinder arguments in asbestos removal context.)

The court would initially note that the basic relevance of the misjoinder issue is in question in this case. Defendants argue that the "friction" and "non-friction" defendants were misjoined in this action, but it is not clear to this court whether the "friction" defendants in this case are made up solely of diverse parties and, thus, whether severing these defendants from each

4

other would serve to produce a purely diverse class of either defendants. The "friction" defendants are characterized by counsel for defendants as "manufacturers and sellers of car parts sold to consumers." Defendants seek to sever these defendants from the traditional "non-friction" defendants, which are characterized by counsel in that case as "diverse and non-diverse manufacturers and sellers of industrial insulation products used by professional tradesmen at industrial worksites around the state."

Defendants thus concede a lack of diversity as to the class of "non-friction" defendants in this case, and, even if this court were to sever the claims against the two classes upon a finding of misjoinder, it would clearly be required to remand the "non-friction" defendants, given the admitted lack of diversity in that class. From reviewing the complaint, it is not apparent to this court which defendants in this case are properly regarded as "friction" defendants, and, thus, it is unclear whether this class of defendants is diverse. Indeed, unlike in certain other asbestos cases before the court, there do not appear to be any defendants who are, on their face, car parts retailers and suppliers (i.e. "friction" defendants under defendants' definition of the term) in this case, although some may well be car parts manufacturers (e.g. Ford Motor Company). However, these same car parts manufacturers could also be considered industrial "non-friction" defendants, depending upon the nature of the claims against them.[2]

_____

[2]Moreover, the court is hesitant to base a finding of misjoinder upon definitions of classes provided by counsel in a particular case. The court would note that the definitions of "friction" and "non-friction" defendants provided by counsel in this case would appear to cast doubt upon whether there is a diverse class of either "friction" or "non-friction" defendants in other cases defended by counsel for defendants. For example, in *Duffin, et al. v. Honeywell*, No. 4:03cv389, presently before this court, there are, unlike in this case, a number of Mississippi car parts retailers (i.e. "friction" defendants under defendants' definition of the term). It is unclear whether defendants would provide the same definition of these two classes in each case, considering that the class of "friction" defendants is clearly non-diverse in *Duffin*, while

5

If there are, in fact, non-diverse "friction" and also non-diverse "non-friction" defendants in a particular case, then the class distinction would appear to be immaterial for jurisdictional purposes. Accordingly, the court deems an asbestos defendant's burden of proving the basic relevance of the misjoinder issue on the basis of the "friction/non-friction" distinction in a particular case to include a burden of demonstrating 1) how the two classes are defined 2) which defendants belong to each class in a particular case and 3) that either the "friction" or "non-friction" class of defendants in a particular case consists solely of diverse parties. Barring such a showing, severance and remand of either class would not create diversity among the remaining parties, and the misjoinder issue would appear to simply be irrelevant. In this case, it is not entirely clear to this court exactly what constitutes a "friction" or "non-friction" defendant, nor whether there exists a purely diverse class of either in this case. As such, it is not clear to this court that the misjoinder issue is even relevant herein.

At any rate, even assuming that severance and remand of either the "friction" and "non-friction" defendants would serve to create diversity in this case, the court would still not deem "egregious" misjoinder to be present on the basis of this distinction. Indeed, if the court were to conclude that any joinders in this case were "egregious" (which, in light of Mississippi's liberal joinder rules, it does not) it would likely be the joinder of numerous plaintiffs (each with a distinct medical history and damages) into a single action, rather than the joinder of "friction" and "non-friction" defendants in the same lawsuit. Indeed, defendants' objections to the joinder of these defendants in this case appears motivated more by the jurisdictional necessity of excising the non-diverse defendants from this action than by any genuine anomaly in trying friction and

---

defendants apparently contend that it is diverse in this case.

non-friction defendants in the same case.

While there may well be some advantages to trying friction and non-friction defendants separately, these advantages are not so compelling as to render their joinder "egregious" under Mississippi's liberal joinder rules. It is also apparent that any application of the misjoinder doctrine so as to sever the friction defendants (and those filing suit against them) from this action would be, at best, awkward and wasteful of judicial resources. Indeed, in order to apply the doctrine, it would appear necessary for the court to make findings of fact regarding which defendants constitute "friction" and "non-friction" defendants and also to determine which plaintiffs were making claims against each defendant. Finally, it should be noted that defendants' resort to procedural devices to manufacture diversity only serves to highlight the fact that they have failed to demonstrate that no possibility of recovery exists against the local defendants in this case, as a substantive matter.

The "bottom line" in this and most other asbestos removals is that plaintiffs have filed suit against several non-diverse defendants under established asbestos liability theories. Indeed, defendants themselves concede that the Mississippi defendants are "traditional" asbestos defendants and that claims against such defendants are "well known in Mississippi jurisprudence." Accordingly, defendants are faced with the extraordinarily difficult burden of demonstrating that no possibility of recovery exists against several local defendants even though they themselves appear to admit that recovery has been obtained against similar defendants for years. As in most asbestos removals, defendants have failed to meet the heavy burden that confronts them, and diversity of citizenship is plainly lacking in this case.

The court is also aware that asbestos removal litigation, as it has developed in this state,

generally has less to do with effecting valid removals than with attempting to obtain a transfer of the case to a multi-district litigation (MDL) court, where the case generally languishes for a protracted period of time.  While the desire of defendants to reach the comparative safety of an MDL court is understandable, their repeated efforts to do so, regardless of the jurisdictional merits, has resulted in an air of skepticism among the federal courts regarding the validity of most asbestos removals.  This court has noted that other district courts in this state will sometimes include language admonishing asbestos defendants against filing subsequent removal petitions, under the pain of contempt or other sanctions.  *See, e.g. Knotts, et al. v. Minnesota Manufacturing, et al.*, No. 1:03cv125 (S.D. Miss. 2003) (noting that the "continuous frivolous removal of these cases in addition to being burdensome to the plaintiffs has become taxing on the resources of the court and the court family. ... Any further attempt to remove this or similar lawsuits on the same basis by any party will be viewed as contempt and dealt with accordingly.")  The fact that courts have found such language to be necessary speaks volumes regarding the current state of asbestos removal litigation in this state.

    In this case, the court would simply note that it has already determined that diversity of citizenship is lacking, and it is also apparent that the one-year limitations period for removal in diversity cases has passed.  28 U.S.C. § 1446(b).  Plaintiffs assert no federal claims, and the court sees no possible bankruptcy issues which would justify a return of this case to this court.[3]  Thus, the court can envision no scenario under which this case would properly come before it again on removal, and, barring some clear basis for jurisdiction, the court directs that defendants proceed accordingly.

_____

[3] *See, e.g. In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002).

It is therefore ordered that plaintiffs' motion to remand [4-1] is granted, and this case is

hereby remanded to the Circuit Court of Montgomery County.

SO ORDERED, this 5 day of April, 2004.

MICHAEL P. MILLS
UNITED STATES DISTRICT JUDGE

9

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DISTRICT

| | |
|---|---|
| SAMMY BENNET, et al | PLAINTIFFS |
| V. | CASE NO. 4:03CV390 |
| HONEYWELL INTERNATIONAL, INC., et al | DEFENDANTS |

## ORDER

Pursuant to the memorandum opinion issued this day, it is hereby ORDERED that the

plaintiffs' motion for remand [11-1] is GRANTED.

This is the _5_ day of April, 2004.

MICHAEL P. MILLS
UNITED STATES DISTRICT JUDGE

RECEIVED CLERK'S OFFICE
2004 APR - 8  A 11: 40
U.S. DISTRICT COURT
NORTHERN DISTRICT ON

**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DISTRICT

APR 0 6 2004

COYLE, CLERK

BY _____

Deputy

SAMMY BENNET, et al                                           **PLAINTIFFS**

V.                                                            **CASE NO. 4:03CV390**

HONEYWELL INTERNATIONAL, INC., et al                         **DEFENDANTS**

## MEMORANDUM OPINION

This cause comes before the court on the plaintiffs' to remand [11-1]. The Court has

reviewed the briefs and exhibits and is prepared to rule.

This is a mass-joined asbestos action in which numerous plaintiffs seek recovery against

numerous defendants for injuries which allegedly resulted from exposure to asbestos-containing

products. Plaintiffs filed suit in the Circuit Court of Humphreys County, and, on October 8, 2003,

defendants removed to this court on the basis of diversity jurisdiction. *See* 28 U.S.C. § 1332.

Plaintiffs have moved to remand, arguing that diversity of citizenship is lacking in this case

inasmuch as they seek recovery against certain local retailers of asbestos-containing products which

are, like themselves, Mississippi residents. Defendants counter that the local retailers were

fraudulently joined for the purpose of defeating removal jurisdiction and that remand would therefore

be inappropriate.

The removing party, which is urging jurisdiction on the court, bears the burden of

demonstrating that jurisdiction is proper due to fraudulent joinder. Dodson v. Spiliada Maritime

Corp., 951 F.2d 40, 42 (5th Cir. 1992). The Fifth Circuit has stated:

The burden of persuasion placed upon those who cry "fraudulent joinder" is indeed

a heavy one. In order to establish that an in-state defendant has been fraudulently joined, the removing party must show either that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts.

B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. 1981). In evaluating a motion to remand, the court considers summary judgment-type evidence to pierce the pleadings. This evidence may include the pleadings, affidavits and deposition transcripts. Hart v. Bayer Corp., 199 F.3d 239, 246-47 (5th Cir. 2000). The Fifth Circuit has recently reaffirmed that it "is insufficient that there be a mere theoretical possibility of recovery," to the contrary, there must "at least be arguably a reasonable basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder." Travis v. Irby, 326 .3d 644, 648 (5th Cir. 2003)(citing Badon v. RJR Nabisco Inc., 224 F.3d 382, 286 (5th Cir. 2000)).

In contending that no reasonable possibility of recovery exists against the local retailers, defendants argue that plaintiffs' complaint contains only vague and conclusory allegations against these retailers and that the complaint did not give these defendants sufficient notice of the claims against them. Defendants' use of alleged pleading defects as a basis for a finding of fraudulent joinder is problematic. The Mississippi and Federal Rules of Civil Procedure require only that a complaint make "a short and plain statement of the claim showing that the pleader is entitled to relief," see Miss. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 8(a)(2), and any suggestion that plaintiffs were required to set forth detailed allegations against the local retailers therefore lacks merit. The Mississippi and Federal Rules of Civil Procedure do require a greater degree of particularity for fraud claims, see Fed. R. Civ. P. 9(b), but, even in this context, the Fifth Circuit has indicated that a plaintiff should ordinarily be given an opportunity to amend her complaint to allege fraud with

2

greater particularity, before such claims are dismissed with prejudice upon a finding of fraudulent joinder. *See* Hart, 199 F.3d at n.6.

At any rate, the court does not agree that, under liberal notice pleading rules, the complaint is defective as it relates to the local retailers. To the contrary, the complaint clearly indicates that plaintiffs are proceeding under standard theories of strict products liability against the local retailers, alleging that they sold unreasonably dangerous and defective products and that, on this basis, they should be held liable under Mississippi law. Miss. Code Ann. § 11-1-63 clearly provides for such retailer liability in products liability cases, as did Mississippi's common law products liability jurisprudence. A complaint does not need a great deal of specificity to convey that plaintiffs are seeking to hold retailers liable under a strict products liability theory, and the complaint in this case is sufficient to set forth plaintiffs' allegations in this regard. The court therefore sees no valid argument that the complaint is defective, much less so defective as to entitle the local retailers to dismissal with prejudice on a finding of fraudulent joinder.

Defendants also argue that an egregious procedural misjoinder exists in this case under Tapscott v. MS Dealer Service Corporation, 77 F.3d 1353, 1360 (11th Cir. 1996), but the court does not agree. The Mississippi Supreme Court recently appeared to re-affirm the liberal standards of joinder under Miss. R. Civ. P. 20 in asbestos cases, *see* Janssen Pharmaceutica, Inc. v. Armond, 866 So.2d 1092 (Miss. Feb. 9, 2004) (noting the proper application of liberal rules of joinder to asbestos actions, as a "mature" tort), and the court concludes that there is no egregious misjoinder in this case, including the joinder of the so-called "friction" and "non-friction" defendants. *See* Arrington, et al. v. AC & S, et al., No. 1:02cv425 (S.D. Miss. 2002) (rejecting misjoinder arguments in asbestos removal context.)

3

The court would initially note that the basic relevance of the misjoinder issue is in question in this case. Defendants argue that the "friction" and "non-friction" defendants were misjoined in this action, but it is not clear to this court whether either the "friction" or "non-friction" defendants in this case are made up solely of diverse parties and, thus, whether severing these defendants from each other would serve to produce a purely diverse class of either defendants. The "friction" defendants are characterized by counsel for defendants in a similar companion case as "manufacturers and sellers of car parts sold to consumers."[1]  Defendants seek to sever these defendants from the traditional "non-friction" defendants, which are characterized by counsel in that case as "diverse and non-diverse manufacturers and sellers of industrial insulation products used by professional tradesmen at industrial worksites around the state."

The court would further note that, since defendants refer to the "non-friction" defendants in the companion case as including "non-diverse" industrial defendants, and since there clearly appear to be non-diverse "friction" defendants (that is, certain Mississippi defendants clearly appear to be automobile parts retailers) in this case, it is not clear to this court whether the severance of either the friction or non-friction defendants would serve to create a diverse class of remaining defendants, even assuming egregious misjoinder based on this distinction were present. If there are, in fact, non-diverse "friction" and also non-diverse "non-friction" defendants in a particular case, then the class distinction would appear to be immaterial for jurisdictional purposes. Accordingly, the court deems an asbestos defendant's burden of proving the basic relevance of the misjoinder issue on the basis of the "friction/non-friction" distinction in a particular case to include a burden of demonstrating 1) how the two classes are defined 2) which defendants belong to each class in a particular case and 3)

---

[1] Rosamond, et al. v. Garlock, et al., No. 3:03cv235, defendants' memorandum brief at 11.

4

that either the "friction" or "non-friction" class of defendants in a particular case consists solely of

diverse parties.[2]   Barring such a showing, severance and remand of either class would not create

diversity among the remaining parties, and the misjoinder issue would appear to simply be irrelevant.

In this case, it is not entirely clear to this court exactly what constitutes a "friction" or "non-friction"

defendant, nor whether there exists a purely diverse class of either in this case.  As such, it is not

clear to this court that the misjoinder issue is even relevant herein.

At any rate, even assuming that severance and remand of either the "friction" and "non-

friction" defendants would serve to create diversity in this case, the court would still not deem

"egregious" misjoinder to be present on the basis of this distinction.  Indeed, if the court were to

conclude that any joinders in this case were "egregious" (which, in light of Mississippi's liberal

joinder rules, it does not) it would likely be the joinder of numerous plaintiffs (each with a distinct

medical history and damages) into a single action, rather than the joinder of "friction" and "non-

friction" defendants in the same lawsuit.  Indeed, defendants' objections to the joinder of these

defendants in this case appears motivated more by the jurisdictional necessity of excising the non-

diverse retailers from this action than by any genuine anomaly in trying friction and non-friction

defendants in the same case.

While there may well be some advantages to trying friction and non-friction defendants

separately, these advantages are not so compelling as to render their joinder "egregious" under

_____

[2]The court does not bind the defendants in this case to a definition provided by counsel in another case; the court cites this definition merely as a starting point for discussing the issue and also to note the court's confusion regarding which defendants are "friction" and "non-friction" defendants in this case.  At the same time, it would certainly be suspect if defendants were to provide varying definitions of "friction" and "non-friction" defendants in different cases, depending upon the residences of defendants in those cases.

against each defendant. Finally, it should be noted that defendants' resort to procedural devices to manufacture diversity only serves to highlight the fact that they have failed to demonstrate that no possibility of recovery exists against the local retailers in this case, as a substantive matter.

The "bottom line" in this and most other asbestos removals is that plaintiffs have filed suit against numerous non-diverse retailers under established products liability theories. While some efforts have been made in the Mississippi legislature to reduce the potential liability of retailers in products cases, none of these efforts would, in the court's view, assist defendants in establishing jurisdiction in this case.[3] Accordingly, defendants are faced with the extraordinarily difficult burden of demonstrating that no possibility of recovery exists against numerous local retailers in this case when products liability law clearly allows such retailers to be sued, even absent a showing of fault

---

[3] The removal petition invokes the retailer liability provisions of § 11-1-64, which was passed by the legislature as part of the 2002 tort reform legislation. Section 11-1-64 generally provides retailers with a mechanism to seek dismissal from a products liability action for liability purposes, but, in an obvious attempt to defeat removal jurisdiction, the statute provides that any such dismissed retailers are to remain parties to the action for jurisdictional purposes. Miss. Code Ann. § 11-1-64(6). It seems clear that this statute, with a January 1, 2003, effective date, does not apply to this case, and no local retailer in this case appears to have even sought dismissal under its terms. Even if the statute were somehow applicable, it is noteworthy that Missouri federal courts interpreting a nearly identical Missouri statute have found that statute sufficient to defeat federal removal jurisdiction, based partly on the fact that any dismissal thereunder is properly considered an involuntary dismissal which may not give rise to removal jurisdiction. *See, e.g.* Pender v. Bell Asbestos Mines, Ltd., 46 F. Supp. 2d 937, 940 (E.D. Mo. 1999).

6

Mississippi's liberal joinder rules. It is also apparent that any application of the misjoinder doctrine so as to sever the friction defendants (and those filing suit against them) from this action would be, at best, awkward and wasteful of judicial resources. Indeed, in order to apply the doctrine, it would appear necessary for the court to make findings of fact regarding which defendants constitute "friction" and "non-friction" defendants and also to determine which plaintiffs were making claims against each defendant. Finally, it should be noted that defendants' resort to procedural devices to manufacture diversity only serves to highlight the fact that they have failed to demonstrate that no possibility of recovery exists against the local retailers in this case, as a substantive matter.

The "bottom line" in this and most other asbestos removals is that plaintiffs have filed suit against numerous non-diverse retailers under established products liability theories. While some efforts have been made in the Mississippi legislature to reduce the potential liability of retailers in products cases, none of these efforts would, in the court's view, assist defendants in establishing jurisdiction in this case.[3] Accordingly, defendants are faced with the extraordinarily difficult burden of demonstrating that no possibility of recovery exists against numerous local retailers in this case when products liability law clearly allows such retailers to be sued, even absent a showing of fault

---

[3]The removal petition invokes the retailer liability provisions of § 11-1-64, which was passed by the legislature as part of the 2002 tort reform legislation. Section 11-1-64 generally provides retailers with a mechanism to seek dismissal from a products liability action for liability purposes, but, in an obvious attempt to defeat removal jurisdiction, the statute provides that any such dismissed retailers are to remain parties to the action for jurisdictional purposes. Miss. Code Ann. § 11-1-64(6). It seems clear that this statute, with a January 1, 2003, effective date, does not apply to this case, and no local retailer in this case appears to have even sought dismissal under its terms. Even if the statute were somehow applicable, it is noteworthy that Missouri federal courts interpreting a nearly identical Missouri statute have found that statute sufficient to defeat federal removal jurisdiction, based partly on the fact that any dismissal thereunder is properly considered an involuntary dismissal which may not give rise to removal jurisdiction. See, e.g. Pender v. Bell Asbestos Mines, Ltd., 46 F. Supp. 2d 937, 940 (E.D. Mo. 1999).

6

on the part of those retailers. *See* Miss. Code Ann. § 11-1-63(g) (providing "sellers" with a right of indemnity against manufacturers where the sellers are not at fault in causing product defects, but permitting such sellers to be sued for such defects regardless). As in most asbestos removals, defendants have failed to meet the heavy burden that confronts them, and diversity of citizenship is plainly lacking in this case.

The court is also aware that asbestos removal litigation, as it has developed in this state, generally has less to do with effecting valid removals than with attempting to obtain a transfer of the case to a multi-district litigation (MDL) court, where the case generally languishes for a protracted period of time. While the desire of defendants to reach the comparative safety of an MDL court is understandable, their repeated efforts to do so, regardless of the jurisdictional merits, has resulted in an air of skepticism among the federal courts regarding the validity of most asbestos removals. This court has noted that other district courts in this state will sometimes include language admonishing asbestos defendants against filing subsequent removal petitions, under the pain of contempt or other sanctions. *See, e.g.* <u>Knotts, et al. v. Minnesota Manufacturing, et al.</u>, No. 1:03cv125 (S.D. Miss. 2003) (noting that the "continuous frivolous removal of these cases in addition to being burdensome to the plaintiffs has become taxing on the resources of the court and the court family. ... Any further attempt to remove this or similar lawsuits on the same basis by any party will be viewed as contempt and dealt with accordingly.") The fact that courts have found such language to be necessary speaks volumes regarding the current state of asbestos removal litigation in this state.

In this case, the court would simply note that it has already determined that diversity of citizenship is lacking, and it is also apparent that the one-year limitations period for removal in

7

diversity cases has passed. 28 U.S.C. § 1446(b). Plaintiffs assert no federal claims, and the court sees no possible bankruptcy issues which would justify a return of this case to this court.[4] Thus, the court can envision no scenario under which this case would properly come before it again on removal, and, barring some clear basis for jurisdiction, the court directs that defendants proceed accordingly.

It is therefore ordered that plaintiffs' motion to remand [11-1] is granted, and this case is hereby remanded to the Circuit Court of Humphreys County. A separate order to that effect shall issue this day.

SO ORDERED, this __5__ day of April, 2004.


MICHAEL P. MILLS
UNITED STATES DISTRICT JUDGE

---

[4]*See, e.g. In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002).

8