MDL 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION
DOCKET NO. MDL-875
IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

APR 29 2004

FILED
CLERK'S OFFICE

| | | |
|---|---|---|
| DAVID RAY AMASON, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | IN THE SOUTHERN DISTRICT |
| V. | § | OF TEXAS; CIVIL ACTION NO. |
| | § | 2:03CV555 |
| AMERICAN OPTICAL | § | |
| CORPORATION, et al., | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER-232,
TRANSFERRING *AMASON, ET AL., V. REYNOLDS METALS CO., ET AL., CIVIL
ACTION NO. 2:03CV555,* FROM THE U.S. DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF TEXAS TO THE U.S. DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA**

COME NOW, Plaintiffs, DAVID AMASON, JOE ARREZOLA, FRANKLIN BARBER,

ALONZO BELTRAN, GARY CEDOTAL, CHARLES CHAPMAN, ORAN CORNETT, ROBERT

DELEON, DWANE DREYER, EVARISTO DURAN, AMANDO FLORES and ALVIN FRANCIS,

pursuant to Rules 5.12(a), 5.13, and 7.4(d) of the Rules of Procedure of the Judicial Panel on

Multidistrict Litigation, file this their Motion to Vacate the Conditional Transfer Order 232, transferring

their case to the United States District Court for the Eastern District of Pennsylvania, Docket No. 875 -

In Re Asbestos Products Liability Litigation (No. VI) (hereinafter referred to MDL-875) and would

show the Court as follows:

1.      This present case does not meet the criteria set forth in 28 U.S.C. § 1407, for the

following reasons:

a.      the Plaintiffs have abandoned all of their claims for any asbestos-related diseases and

are only alleging claims for their silica-related injuries which present dissimilar issues

PLAINTIFFS' MOTION TO VACATE                                                    Page 1

**OFFICIAL FILE COPY**

**IMAGED** APR 30 '04

found in traditional asbestos-related, personal injury action properly before the MDL-875 and such a transfer to the MDL-875 would not be convenient for the parties nor in the interest of justice;

b.      Plaintiffs have sought leave from the U.S. District Court of the Southern District of Texas to dismiss their claims against Reynolds Metals Company, Alcoa, Inc., Arlon Boatman and A.S. Stan Milsap (the Defendants who sought the Removal to U.S. District Court for the Southern District of Texas), thereby making Reynolds Metals Company's basis for removal to U.S. District Court for the Southern District of Texas moot; and if Plaintiffs' order of dismissal is entered as to Reynolds Metals Company, Alcoa, Inc., Arlon Boatman and A.S. Stan Milsap, the only remaining defendants will be the traditional sandblasting and/or silica defendants.

2.      On February 24, 2003, Plaintiffs filed their Original Petition in the 148th District Court, Nueces County, Texas.[1]  Plaintiffs, at that time and based upon the medical reports available, alleged in their Original Petition that they were suffering from asbestos-related injuries sustained while working at the Reynolds Metals facility in Gregory, Texas. The only defendants sued in this original petition were the Plaintiffs' employer Reynolds Metals Company (Reynolds), Alcoa and the Plaintiffs' superiors Arlon Boatman and A.S. Stan Millsap.  After some initial discovery was conducted, Plaintiffs learned that they were suffering from not only a possible asbestos-related disease but also the majority of the plaintiffs were suffering from silicosis.  On or about April 17, 2003, Plaintiffs amended their petition to include claims against various corporations who mined, sold, and/or distributed silica sand and abrasives, sandblasting equipment manufacturers and distributors, personal protective device manufacturers and

---

[1] *See* Plaintiffs' Original Petition (Appendix No.1).

distributors.[2]   On April 27, 2004, Plaintiffs filed a Second Amended Complaint in the U.S. District Court for the Southern District of Texas wherein the Plaintiffs abandoned their claims for any asbestos-related disease and are now only asserting  claims in this lawsuit for their silica-related injuries.[3]

3.      On or about December 17, 2003, Reynolds removed this case to the U.S. District Court for the Southern District of Texas.  Reynolds' Notice of Removal asserts that Plaintiff David Ray Amason (Amason), in a previous lawsuit (unbeknownst to Plaintiffs' counsel) sued Reynolds Metals Company and Alcoa alleging that they caused him an asbestos-related injury and that lawsuit was removed to U.S. District Court for the Southern District of Texas which was subsequently transferred to the United States District Court for the Eastern District of Pennsylvania Docket No. 875  in June of 2001.  On February 24, 2003, Plaintiffs, including Amason, filed their Original Petition in the 148th District Court against Reynolds alleging asbestos-related injuries.  On or about April 28, 2004, at the request of counsel for  Arlon Boatman and A.S. Stan Milsap, Plaintiffs filed a Motion for Leave and an Order  to dismiss Reynolds, Alcoa, Inc., Arlon Boatman and A.S. Stan Milsap to the U.S. District Court for the Southern District of Texas.[4]   Moreover, on April 27, 2004, Plaintiffs filed a Second Amended Complaint abandoning their asbestos claims against all Defendants.  If the Plaintiffs' dismissal of Reynolds, Alcoa, Boatman and Milsap is granted, the only remaining defendants in this case are those companies who either mined, sold, manufactured and/or distributed silica, sandblasting sand, abrasives, abrasive/sandblasting equipment and/or personal protective equipment.

4.      Complete diversity does not exist amongst the parties and no federal question exists as

---

[2] *See* Plaintiff's First Amended Petition (Appendix No. 2).

[3] *See* Plaintiff's Second Amended Complaint (Appendix No. 4).

[4] *See* Plaintiffs' Motion for Leave to Dismiss Reynolds Metals Company, Alcoa, Inc., Arlon Boatman, and A.S. Stan Milsap with accompaning Order (Appendix No. 6).

this case involves individuals claiming an injury from their exposure to silica. Furthermore, the Plaintiffs are all Texas citizens. Even though, Defendant Reynolds Metals Company and Alcoa Inc., who have sought the removal, are not Texas corporations, the following Defendants are either residents of Texas or Texas Corporations: C. Arlon Boatman and A.S. Stan Millsap are Texas citizens, Defendants John Barten, Individually and d/b/a John Barten Company, and JB Industrial Sand, Bob Schmidt, Inc., Corpus Christi Equipment Company, Corpus Christi Gasket and Fastener Company (f/k/a Corpus Christi Gasket and Packing, Inc.), Jebco Abrasives, Inc., and Pioneer Concrete of Texas, Inc. Therefore, this Court does not possess subject matter jurisdiction inasmuch as complete diversity amongst the parties does not exist and there is no federal question involved.

## CONCLUSION

5.      For following reasons, Plaintiffs pray that this Court vacates the Conditional Transfer Order 232: (1) Plaintiffs have abandoned all of their claims for any asbestos-related disease, therefore, this case involves no common questions of fact and such a transfer would not be for the convenience of parties and witnesses and would not promote the just and efficient conduct of the cases; (2) Plaintiffs have sought to dismiss their claims against Reynolds Metals Company, Alcoa, Inc., Arlon Boatman and A.S. Stan Milsap (the Defendants who sought the Removal to U.S. District Court for the Southern District of Texas), thereby making Reynolds Metals Company's basis for removal moot; and 3) if Plaintiffs order of dismissal is entered, the only remaining defendants will be the traditional sandblasting and/or silica defendants. Plaintiffs respectfully request that the Multidistrict Litigation Panel grant their Motion to Vacate Conditional Transfer Order 232, transferring their case to the United States District Court for the Eastern District of Pennsylvania, Docket No. 875 - In Re Asbestos Products Liability Litigation (No. VI) and award any other relief to which the Plaintiffs may be justly entitled.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

Respectfully submitted,

APR 2 9 2004

FILED
CLERK'S OFFICE

D. Allen Hossley
State Bar No. 00792591
Southern District of Texas Bar No.
ATTORNEY-IN-CHARGE
Jeffrey T. Embry
State Bar No. 24002032
Southern District of Texas Bar No. 25070
HOSSLEY ✶ EMBRY, L.L.P.
313 E. Charnwood
Tyler, Texas 75701
Ph.  903-526-1772
Fax. 903-526-1773

Pruett Moore, III.
State Bar No. 14362225
Southern District of Texas Bar No. 15267
Constant & Vela
802 N. Carancahua
Corpus Christi, Texas 78470
Ph. 361-887-8800
Fax.  361-887-8010

## CERTIFICATE OF SERVICE

A true and correct copy of this Motion to Vacate was served on all counsel listed on the Panel Service List of record via facsimile, certified mail return receipt requested, U.S. regular mail and/or Federal Express on this 28th day of April, 2004.

D. Allen Hossley

## PANEL SERVICE LIST (Excerpted from CTO-232)
## DOCKET NO. 875
## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*David Ray Amason, et al. v. America Optical Corp., et al.*, S.D. Texas, C.A. No. 2:03-555

Eric I. Barrera
Gary Thomasson, et al.
P.O. Box 2888
Corpus Christi, TX 78403-2888

James Duane Bashline
Mcleod, Alexander, et al.
17225 El Camino Real
Suite 344
Houston, TX 77058

Ryan Andrew Beason
Spain, Hastings & Ward
909 Fannin
2350 Two Houston Center
Houston, TX 77010

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

David Smith Brill
Brill & Associates
602 Sawyer
Suite 490
Houston, TX 77007

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building
7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, DC 20036

David A. Damico
Burns, White & Hickton
Fifth Avenue Place, Suite 2400
120 Fifth Avenue
Pittsburgh, PA 15222

Carl Rapier Dawson
Ryan & Dawson
770 S. Post Oak Lane
Suite 525
Houston, TX 77056

R. Stephen Ferrell
Giessel, Barker & Lyman
2700 Two Houston Center
909 Fannin
Houston, TX 77010

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
Suite 1000
The Bourse
Philadelphia, PA 19106-2574

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Jimmie Irl Graves
Mehaffy & Weber
P.O. Box 16
Beaumont, TX 77704

Susan M. Hansen
Brownson & Ballou
4800 U.S. Bank Place
601 Second Avenue, South
Minneapolis, MN 55402

Robin C. Hoblit
Chaves, Gonzales & Hoblit
2000 Frost Bank Plaza
802 North Carancahua
Corpus Christi, TX 78470

Daniel Allen Hossley
Hossley & Embry
313 East Charnwood Street
Tyler, TX 75701

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308-1314

David C. Landin
Hunton & Williams
Riverfront Plaza
East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102

Patrick Michael Martinez
Barger, Hermansen, et al.
555 North Carancahua
Suite 1100
Corpus Christi, TX 78478

Ronald L. Motley
Motley, Rice, LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

Andrew S. Oretsky
Davis Oretsky
1415 Louisiana, Suite 4200
Houston, TX 77002

Jerry C. Parker
Sammons & Parker, P.C.
218 North College Street
Tyler, TX 75702

John J. Repcheck
Marks, O'Neill, O'Brien &
Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
Roven, Kaplan & Wells
2190 North Loop West
Suite 410
Houston, TX 77018

Sandstrom Co.
c/o CT Corporation System
811 Dallas Avenue
Houston, TX 77002

Richard D. Schuster
Vorys, Sater, Seymour & Pease
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA 19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1570 Penobscot Building
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226

Thomas B. Taylor
Taylor & Warren
333 Clay STreet
Suite 1300
Houston, TX 77002

Willard M. Tinsley
Funderbunk & Funderbunk
2777 Allen Parkway
Suite 1089
Houston, TX 77019

Andrew J. Trevelise
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Carlos Uresti
Chavez, Gonzales, et al.
802 North Carancahua
Suite 802
Corpus Christi, TX 78470

Michael R. Walzel
Stevens, Baldo & Freeman L.L.P.
550 Fannin Street
Suite 400
P.O. Box 4950
Beaumont, TX 77704

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

Civil Action No. 2:03CV555
*David Ray Amason, et al vs. Reynolds Metal Company, et al*

COUNSEL LIST
4/27/04

**American Optical Corporation**
Jerry C. Parker
Sammons & Parker, PC
218 North College Avenue
Tyler, Texas 75702
Phone 903-595-4541
Fax 903-595-2864

**E. D. Bullard Company**
Steve A. Bryant
Steve A. Bryant & Associates, P.C.
3618 Mt. Vernon
Houston, Texas   77006
Phone:   713-526-7474

**Corpus Christi Equipment Company**
Ryan A. Beason
Beason Willingham, LLP
Niels Esperson Building
808 Travis Street, Suite 1608
Houston, Texas   77002
Phone:   713-333-7600
Fax:      713-333-7601

**Corpus Christi Gasket & Fastener, Ltd., f/k/a**
**Corpus Christi Gasket and Fastener, Inc.**
Eric I. Barrera
Gary, Thomasson, Hall & Marks, PC
PO Box 2888
Corpus Christi, Texas 78403
Phone 361-884-1961
Fax 361-889-5100

**Encon Safety Products, Inc. f/k/a Encon**
**Manufacturing Company**
David Brill
Brill & Associates. PC
602 Sawyer, Suite 490
Houston, Texas 77007
Phone 713-863-0579
Fax 713-863-0564

**JEBCO Abrasives, Inc., John Barten, Individually and**
**d/b/a John Barten Company, and JB Industrial Sand**
Patrick M. Martinez
Hermansen McKibben Woolsey & Villarreal LLP
1100 Tower II, 555 North Carancahua
Corpus Christi, Texas 78478
Phone 361-882-6611
Fax 361-883-8353

**Key Houston, A Division of Jacksonville Shipyards, Inc.**
R. Stephen Ferrell
Giessel Barker & Lyman,PC
2700 Two Houston Center
909 Fannin Street
Houston, Texas 77010-1063
Phone 713-759-1990
Fax 713-652-2419

**The Pangborn Corporation**
Barbara J. Barron
Jim I. Graves
Mehaffy & Weber
PO Box 16
Beaumont, Texas 77704
Phone 409-835-5011
Fax 409-835-5177

**Parmelee Industries, Inc.**
Paul O. Wickes
Hunton & Williams LLP
Energy Plaza, 30th Floor
1601 Bryan Street
Dallas, Texas 75201
Phone 214-979-3000
Fax 214-880-0011

Lori M. Elliott
Hunton & Williams, LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia   23219
Phone:   804-788-8200
Fax:      804-788-8218

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 2 9 2004

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION
DOCKET NO. MDL-875
IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

| | | |
|---|---|---|
| DAVID RAY AMASON, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | IN THE SOUTHERN DISTRICT |
| V. | § | OF TEXAS; CIVIL ACTION NO. |
| | § | 2:03CV555 |
| AMERICAN OPTICAL | § | |
| CORPORATION, et al., | § | |
| | § | |
| Defendants. | § | |

### BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER-232, TRANSFERRING *AMASON, ET AL., V. REYNOLDS METALS CO., ET AL., CIVIL ACTION NO. 2:03CV555*, FROM THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS TO THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COME NOW, Plaintiffs, DAVID AMASON, JOE ARREZOLA, FRANKLIN BARBER,

ALONZO BELTRAN, GARY CEDOTAL, CHARLES CHAPMAN, ORAN CORNETT, ROBERT

DELEON, DWANE DREYER, EVARISTO DURAN, AMANDO FLORES and ALVIN FRANCIS,

pursuant to Rules 5.12(a), 5.13, and 7.4(d) of the Rules of Procedure of the Judicial Panel on

Multidistrict Litigation,  file this their Brief in Support of Plaintiffs' Motion to Vacate Conditional

Transfer Order 232, transferring their case to the United States District Court for the Eastern District

of Pennsylvania, Docket No. 875 - In Re Asbestos Products Liability Litigation (No. VI) (Motion to

Vacate) and would show the Court as follows:

## I.

## BACKGROUND

1.       On February 24, 2003, Plaintiffs filed their Original Petition in the 148th District Court,

Nueces County, Texas.[1]  Plaintiffs, at that time and based upon medical reports available, alleged in their Original Petition that they were suffering from asbestos-related injuries sustained while working at the Reynolds Metals facility in Gregory, Texas. The only defendants sued in this Original Petition were the Plaintiffs' employer Reynolds Metals Company, Alcoa and the Plaintiffs' superiors Arlon Boatman and A.S. Stan Millsap.  After some initial discovery was conducted, Plaintiffs learned that some of them were suffering from a possible asbestos-related disease but also the majority of plaintiffs were suffering from silicosis.  On or about April 17, 2003, Plaintiffs amended their petition to include claims against various silica sand and abrasive blasting manufacturers, suppliers, and distributors, sandblasting equipment manufacturers and distributors, and personal protective device manufacturers and distributors.[2]  Below is a chart of each of the thirteen plaintiffs' diagnoses, which clearly shows that all of the plaintiffs in this case are suffering from mixed dust pneumoconiosis (Silicosis and Asbestosis) or Silicosis only.[3]

| Last Name | First Name | Diagnosis |
| --- | --- | --- |
| Amason | David | Silicosis & Pleural abnormalities |
| Arrezola | Joe | Silicosis |
| Barber | Franklin | Mixed-dust pneumoconiosis (Silicosis & Asbestosis) |
| Beltran | Alonzo | Silicosis & Pleural abnormalities |
| Benavides | Arnoldo | Silicosis |
| Cedotal | Gary | Silicosis |
| Chapman | Charles | Silicosis |
| Cornett | Oran | Silicosis |
| DeLeon | Robert | Mixed-dust pneumoconiosis (Silicosis& Asbestosis) |
| Dreyer | Dwane | Silicosis |
| Duran | Evaristo | Mixed-dust pneumoconiosis (Silicosis & Asbestosis) |
| Flores | Armando | Mixed-dust pneumoconiosis (Silicosis& Asbestosis) |
| Francis | Alvin | Silicosis |

[1] *See* Plaintiffs' Original Petition (Appendix No.1).

[2] *See* Plaintiff's First Amended Petition (Appendix No. 2).

[3] *See* Plaintiffs' Expert Medical Reports (Appendix No. 3).

Lastly, on April 27, 2004, Plaintiffs filed a Second Amended Complaint in the U.S. District Court for the Southern District of Texas abandoning their claims of any asbestos-related claim which sets forth the plaintiffs' allegations for their silica-related injuries only.[4]

     2.      Prior to filing Plaintiffs' Second Amended Petition, on or about December 17, 2003, Reynolds removed this case to the U.S. District Court for the Southern District of Texas.  Reynolds' Notice of Removal asserts that Plaintiff David Ray Amason, in a previous lawsuit (unbeknownst to his present counsel) sued Reynolds Metals Company and Alcoa alleging that they caused him an asbestos-related injury and that lawsuit was removed to U.S. District Court for the Southern District of Texas which was subsequently transferred to the United States District Court for the Eastern District of Pennsylvania Docket No. 875  in June of 2001.  Plaintiff Amason mistakenly filed this present lawsuit against Reynolds Metals Company.  However, after recognizing his error,  on or about January 10, 2003, Plaintiff David Ray Amason executed a Notice of Partial Dismissal (Dismissal) dismissing without prejudice all of his claims against Reynolds Metals Company, Alcoa, Inc., Arlon Boatman and A.S. Stan Milsap in this lawsuit.[5]  Moreover, at the request of counsel for Arlon Boatman and A.S. Stan Milsap, on or about April 28, 2004, Plaintiffs filed a Motion for Leave and an Order to Dismiss Reynolds Metals Company, Alcoa, Inc., Arlon Boatman and A.S. Stan Milsap with the U.S. District Court for the Southern District of Texas.[6]   Once granted, the only remaining defendants in this case are those companies who either mined, sold, manufactured and/or distributed silica, sandblasting sand, abrasives, abrasive/sandblasting equipment and/or personal

---

    [4]*See* Plaintiff's Second Amended Complaint (Appendix No. 4).

    [5]*See* Plaintiff's Notice of Partial Non-Suit (Appendix No. 5).

    [6]*See* Plaintiffs' Motion for Leave to Dismiss Reynolds Metals Company, Alcoa, Inc., Arlon Boatman, and A.S. Stan Milsap with accompaning Order (Appendix No. 6).

protective equipment.

3.      Complete diversity does not exist amongst the parties and no federal question exists as this case involves individuals claiming an injury from their exposure to silica.  Furthermore, the Plaintiffs are all Texas citizens.  Even though, Defendant Reynolds Metals Company and Alcoa Inc., who have sought the removal,  are not Texas corporations, the following Defendants are either residents of Texas or Texas Corporations: C. Arlon Boatman and A.S. Stan Millsap are Texas citizens, Defendants John Barten, Individually and d/b/a John Barten Company, and JB Industrial Sand, Bob Schmidt, Inc., Corpus Christi Equipment Company, Corpus Christi Gasket and Fastener Company (f/k/a Corpus Christi Gasket and Packing, Inc.), Jebco Abrasives, Inc., and  Pioneer Concrete of Texas, Inc.  Therefore,  this Court does not possess subject matter jurisdiction inasmuch as complete diversity amongst the parties does not exist and there is no federal question involved.

## II.

## ARGUMENT AND AUTHORITIES

## TRANSFER TO MDL-DOCKET NO. 875 IS NOT PROPER

4.      Reynolds is the only defendant seeking to transfer this case to the MDL-875, yet, the MDL they seek to transfer this case to is specifically for asbestos products liability cases only, not silica-related injuries or silica exposure.  Pursuant to 28 U.S.C. § 1407, civil actions are transferred to the MDL-875 because the case or cases involve one or more common questions of fact and for the reason that such a transfer would will be for the convenience of parties and witnesses and that it will promote the just and efficient conduct of the cases.   Moreover, in *Miller v. American Heavy Lift Shipping* and *Miller v. American President Lines, et al.*, Judge Weiner found that this case was no longer suitable for the

multidistrict litigation because the asbestos allegations had been abandoned.[7]  With such findings, Judge

Weiner remanded the *Miller* case because the case did not involve similar issues found in traditional

asbestos-related, personal injury action and such a remand would be convenient for the parties and in

the interest of justice.[8]   In the present case, according to the most recently amended complaint, the

Plaintiffs are asserting claims for their silica-related injuries only.  Also, the defendants that remain in

the case, if the U.S. District Court of the Southern District of Texas enters the dismissal order referred

to above dismissing Reynolds, Alcoa, Inc., Arlon Boatman and A.S. Stan Milsap, are those defendants

who mined, manufactured, sold, distributed or otherwise placed into the stream of commerce silica,

sand, sandblasting/abrasive equipment and personal protective equipment used to protect the plaintiffs

from the inhalation of silica dust.  The present case before the Multidistrict Litigation Panel is similar

to *Miller* cases, that is, the Plaintiffs have abandoned their claims for any asbestos-related, personal injury

and moreover, seek to abandon their claims against Reynolds, Alcoa, Inc., Arlon Boatman and A.S. Stan

Milsap.  The only remaining allegations are their claims for a silica-related disease.  Transferring this case

to the MDL is not proper and therefore the conditional transfer order for this specific case should be

vacated.

---

[7]*Miller v. American Heavy Lift Shipping*, 231 F.3d 242, 2001 A.M.C. 1126, 48 Fed.R.Serv.3d 240, 2000 Fed.App. 0384P (6th Cir.(Ohio) Nov 03, 2000), *Miller v. American President Lines, et al.,* 1999 WL 1338082 (N.D. Ohio), involved individuals who originally made claims for asbestos exposure and benezene exposure.  The case was eventually transferred to Multidistrict Litigation in the United States District Court for the Eastern District of Pennsylvania, Docket No. 875 - In Re Asbestos Products Liability Litigation (No. VI).  The Plaintiffs filed a motion to strip their asbestos claims and requested Judge Weiner to remand their case.   Judge Weiner remanded their case because the Plaintiffs abandoned their claims for asbestos exposure and found that the "form of action in these cases [was] now **dissimilar** to traditional asbestos-related, personal injury actions." (Appendix No. 5).

[8]*Id.*

## REYNOLDS HAS NO BASIS FOR REMOVAL

6.      Reynolds basis for removing this case to this Court is based on the fact that David Amason previously sued Reynolds in 2001 and Reynolds was successful in removing that case to this Court and subsequently transferring it to the Multi-District Litigation in the United States District Court for the Eastern District of Pennsylvania.  Since recognizing his error in this present case, Plaintiff David Amason and all other Plaintiffs have filed a Motion for Leave to Dismiss their claims against Defendants Reynolds Metals Company, Alcoa, Inc., Arlon Boatman and A.S. Stan Milsap, which, if granted, Defendant Reynolds Metals Company's basis for removal would be moot.

## ABSENCE OF DIVERSITY JURISDICTION

7.      The U.S. District Court of the Southern District of Texas only has subject matter jurisdiction to hear matters involving federal questions and cases involving complete diversity with an amount in controversy in excess of $75,000.  For the reasons set forth above, all of the Plaintiffs and a number of the Defendants are Texas citizens.  As such, there is not complete diversity and the U.S. District Courts do not have subject matter jurisdiction pursuant to 28 U.S.C. 1332(a).  Additionally, this case does not involve any federal questions.  Therefore, the conditional transfer order for this case should also be vacated on this basis.

## CONCLUSION

8.      For following reasons, Plaintiffs pray that this Panel vacates the Conditional Transfer Order 232: (1) Plaintiffs have sought to dismiss their claims against Reynolds Metals Company, Alcoa, Inc., Arlon Boatman and A.S. Stan Milsap (the Defendants who sought the Removal to U.S. District Court for the Southern District of Texas), thereby making Reynolds Metals Company's basis for removal moot;   (2) if Plaintiffs order of dismissal is entered, the only remaining defendants will be the traditional sandblasting and/or silica defendants; and (3) Plaintiffs have abandoned all of their claims

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 2 9 2004

FILED
CLERK'S OFFICE

for any asbestos-related disease. Therefore, this case involves no common questions of fact and such

a transfer would not be for the convenience of parties and witnesses and would not promote the just

and efficient conduct of the cases.

Respectfully submitted,

_____
D. Allen Hossley
State Bar No. 00792591
Southern District of Texas Bar No. 36964
ATTORNEY-IN-CHARGE
Jeffrey T. Embry
State Bar No. 24002052
Southern District of Texas Bar No. 25070
HOSSLEY ★ EMBRY, L.L.P.
313 E. Charnwood
Tyler, Texas 75701
Ph.   903-526-1772
Fax. 903-526-1773

Pruett Moore, III.
State Bar No. 14362225
Southern District of Texas Bar No. 15267
Constant & Vela
802 N. Carancahua
Corpus Christi, Texas 78470
Ph.  361-887-8800
Fax.  361-887-8010

## CERTIFICATE OF SERVICE

A true and correct copy of this Brief in Support of Plaintiffs' Motion to Vacate was served on all counsel listed on the Panel Service List via facsimile, certified mail return receipt requested, U.S. regular mail or Federal Express on this 28th day of April, 2004.

_____
D. Allen Hossley

**PANEL SERVICE LIST (Excerpted from CTO-232)**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

*David Ray Amason, et al. v. America Optical Corp., et al.*, S.D. Texas, C.A. No. 2:03-555

Eric I. Barrera
Gary Thomasson, et al.
P.O. Box 2888
Corpus Christi, TX 78403-2888

James Duane Bashline
Mcleod, Alexander, et al.
17225 El Camino Real
Suite 344
Houston, TX 77058

Ryan Andrew Beason
Spain, Hastings & Ward
909 Fannin
2350 Two Houston Center
Houston, TX 77010

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

David Smith Brill
Brill & Associates
602 Sawyer
Suite 490
Houston, TX 77007

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building
7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, DC 20036

David A. Damico
Burns, White & Hickton
Fifth Avenue Place, Suite 2400
120 Fifth Avenue
Pittsburgh, PA 15222

Carl Rapier Dawson
Ryan & Dawson
770 S. Post Oak Lane
Suite 525
Houston, TX 77056

R. Stephen Ferrell
Giessel, Barker & Lyman
2700 Two Houston Center
909 Fannin
Houston, TX 77010

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
Suite 1000
The Bourse
Philadelphia, PA 19106-2574

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Jimmie Irl Graves
Mehaffy & Weber
P.O. Box 16
Beaumont, TX 77704

Susan M. Hansen
Brownson & Ballou
4800 U.S. Bank Place
601 Second Avenue, South
Minneapolis, MN 55402

Robin C. Hoblit
Chaves, Gonzales & Hoblit
2000 Frost Bank Plaza
802 North Carancahua
Corpus Christi, TX 78470

Daniel Allen Hossley
Hossley & Embry
313 East Charnwood Street
Tyler, TX 75701

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308-1314

David C. Landin
Hunton & Williams
Riverfront Plaza
East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102

Patrick Michael Martinez
Barger, Hermansen, et al.
555 North Carancahua
Suite 1100
Corpus Christi, TX 78478

Ronald L. Motley
Motley, Rice, LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

Andrew S. Oretsky
Davis Oretsky
1415 Louisiana, Suite 4200
Houston, TX 77002

Jerry C. Parker
Sammons & Parker, P.C.
218 North College Street
Tyler, TX 75702

John J. Repcheck
Marks, O'Neill, O'Brien &
Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
Roven, Kaplan & Wells
2190 North Loop West
Suite 410
Houston, TX 77018

Sandstrom Co.
c/o CT Corporation System
811 Dallas Avenue
Houston, TX 77002

Richard D. Schuster
Vorys, Sater, Seymour & Pease
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA 19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1570 Penobscot Building
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226

Thomas B. Taylor
Taylor & Warren
333 Clay STreet
Suite 1300
Houston, TX 77002

Willard M. Tinsley
Funderbunk & Funderbunk
2777 Allen Parkway
Suite 1089
Houston, TX 77019

Andrew J. Trevelise
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Carlos Uresti
Chavez, Gonzales, et al.
802 North Carancahua
Suite 802
Corpus Christi, TX 78470

Michael R. Walzel
Stevens, Baldo & Freeman L.L.P.
550 Fannin Street
Suite 400
P.O. Box 4950
Beaumont, TX 77704

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

Civil Action No. 2:03CV555
*David Ray Amason, et al vs. Reynolds Metal Company, et al*

COUNSEL LIST
4/27/04

**Ransburg Corporation (formerly Devilbiss Industries Products Corporation Successor to The Devilbiss Company)**
Michael R. Walzel
Stevens Baldo & Freeman LLP
PO Box 4950
Beaumont, Texas 77704-4950
Phone 409-835-5200
Fax 409-838-5638

**Reynolds Metals Company and Alcoa, Inc., (Successor to Reynolds Metals Company)**
**C. Arlon Boatman**
**A.S. "Stan" Millsap**
David Craig Landin
Hunton & Williams, LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Phone: 804-788-8200
Fax: 804-788-8218

**Reynolds Metals Company**
Mr. R. Clay Hoblit
Gonzales Hoblit Ferguson, LLP
2000 Frost Bank Plaza
802 N. Carancahua
Corpus Christi, Texas 78470
Phone: 361-888-9392
Fax: 361-888-9187
E-mail: choblit@ghf-lawfirm.com

**Schmidt Manufacturing, Inc.**
Andrew S. Oretsky
Davis, Oretsky & Guilfoyle, Inc.
1415 Louisiana, Suite 4200
Houston, Texas 77002
Phone 713-659-1010
Fax 713-659-1122

**Scott Technologies, Inc.**
Carl R. Dawson
Ryan & Dawson
770 South Post Oak Lane, Suite 525
Houston, Texas 77056
Phone 713-960-1555
Fax 713-960-8491

**Sullair Corporation**
Willard M. Tinsley
Funderburk & Funderburk, LLP
2777 Allen Parkway, Suite 1000
Houston, Texas 77019-2178
Phone 713-526-1801
Fax 713-526-2708

**Triplex, Inc.**
Michael R. Walzel
Stevens Baldo & Freeman LLP
550 Fannin, Suite 400
PO Box 4950
Beaumont, Texas 77704-4950
Phone 409-835-5200
Fax 409-838-5638

**Unimin Corporation and The Morie Company**
J.D. Bashline
McLeod Alexander Powel & Apffel, PC
344 Onyx Building
17225 El Camino Real
Houston, Texas 77058
Phone 281-486-1888
Fax 281-486-4888

Civil Action No. 2:03CV555
*David Ray Amason, et al vs. Reynolds Metal Company, et al*

COUNSEL LIST
4/27/04

**American Optical Corporation**
Jerry C. Parker
Sammons & Parker, PC
218 North College Avenue
Tyler, Texas 75702
Phone 903-595-4541
Fax 903-595-2864

**E. D. Bullard Company**
Steve A. Bryant
Steve A. Bryant & Associates, P.C.
3618 Mt. Vernon
Houston, Texas  77006
Phone:  713-526-7474

**Corpus Christi Equipment Company**
Ryan A. Beason
Beason Willingham, LLP
Niels Esperson Building
808 Travis Street, Suite 1608
Houston, Texas  77002
Phone:  713-333-7600
Fax:      713-333-7601

**Corpus Christi Gasket & Fastener, Ltd., f/k/a**
**Corpus Christi Gasket and Fastener, Inc.**
Eric I. Barrera
Gary, Thomasson, Hall & Marks, PC
PO Box 2888
Corpus Christi, Texas 78403
Phone 361-884-1961
Fax 361-889-5100

**Encon Safety Products, Inc. f/k/a Encon**
**Manufacturing Company**
David Brill
Brill & Associates. PC
602 Sawyer, Suite 490
Houston, Texas 77007
Phone 713-863-0579
Fax 713-863-0564

**JEBCO Abrasives, Inc., John Barten, Individually and**
**d/b/a John Barten Company, and JB Industrial Sand**
Patrick M. Martinez
Hermansen McKibben Woolsey & Villarreal LLP
1100 Tower II, 555 North Carancahua
Corpus Christi, Texas 78478
Phone 361-882-6611
Fax 361-883-8353

**Key Houston, A Division of Jacksonville Shipyards, Inc.**
R. Stephen Ferrell
Giessel Barker & Lyman,PC
2700 Two Houston Center
909 Fannin Street
Houston, Texas 77010-1063
Phone 713-759-1990
Fax 713-652-2419

**The Pangborn Corporation**
Barbara J. Barron
Jim I. Graves
Mehaffy & Weber
PO Box 16
Beaumont, Texas 77704
Phone 409-835-5011
Fax 409-835-5177

**Parmelee Industries, Inc.**
Paul O. Wickes
Hunton & Williams LLP
Energy Plaza, 30th Floor
1601 Bryan Street
Dallas, Texas 75201
Phone 214-979-3000
Fax 214-880-0011

Lori M. Elliott
Hunton & Williams, LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia  23219
Phone:  804-788-8200
Fax:      804-788-8218

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 2 9 2004

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION
DOCKET NO. MDL-875
IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

| | | |
|---|---|---|
| DAVID RAY AMASON, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | IN THE SOUTHERN DISTRICT |
| V. | § | OF TEXAS; CIVIL ACTION NO. |
| | § | 2:03CV555 |
| AMERICAN OPTICAL | § | |
| CORPORATION, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## APPENDIX TO PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO VACATE

1.   Plaintiffs' Original Petition

2.   Plaintiffs' First Amended Petition

3.   Plaintiffs' Expert Medical Reports

4.   Plaintiffs' Second Amended Complaint

5.   Plaintiff David Amason's Notice of Partial Dismissal

6.   Plaintiffs Motion for Leave to Dismiss Reynolds, Alcoa, Arlon Boatman and A.S. Stan

     Milsap.

7.   *Miller v. American Heavy Lift Shipping* and *Miller v. American President Lines, et al.*

**1**

NO. **03·1065-E**

| | | |
|---|---|---|
| DAVID RAY AMASON; JOE ARREZOLA; | § | IN THE DISTRICT COURT OF |
| FRANKLIN BARBER; ALONZO BELTRAN; | § | |
| ARNOLDO BENAVIDES; GARY CEDOTAL; | § | |
| CHARLES CHAPMAN; ORAN CORNETT; | § | |
| ROBERT DELEON; DWANE DREYER; | § | |
| EVARISTO DURAN; AND ALVIN FRANCIS, | § | |
| | § | |
| Plaintiffs; | § | |
| | § | |
| VS. | § | NUECES COUNTY, TEXAS |
| | § | |
| REYNOLDS METALS COMPANY; | § | |
| ALCOA, INC. (Successor to REYNOLDS | § | |
| METALS COMPANY); C. ARLON | § | |
| BOATMAN; AND A.S. "STAN" MILLSAP; | § | |
| | § | |
| Defendants. | § | **148**th JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION,
## JURY DEMAND AND REQUEST FOR DISCLOSURES

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs DAVID RAY AMASON, JOE ARREZOLA, FRANKLIN

BARBER, ALONZO BELTRAN, GARY CEDOTAL, CHARLES CHAPMAN, ORAN

CORNETT, ROBERT DELEON, DWANE DREYER, EVARISTO DURAN, and ALVIN

FRANCIS, hereinafter referred to as Plaintiffs, complaining of the various Defendants listed

below and for cause of action would show the Court and Jury as follows:

1.      Plaintiffs request discovery be conducted under Level III pursuant to Rule 190.4 of the

Texas Rules of Civil Procedure.

2.      Plaintiffs are citizens of the State of Texas and a number of the Plaintiffs reside within

Nueces County, Texas.  All Plaintiffs incurred their most significant exposure to asbestos and/



**PLAINTIFFS' ORIGINAL PETITION, JURY DEMAND and REQUEST FOR DISCLOSURES**      Page 1
G:\Asb Sil\Amason v. RMC\Original Petition.wpd

FILE COPY

silica while working in Texas. Certain Defendants reside in Nueces County, Texas. Therefore, venue properly lies in this County.

3.     The damages sought by Plaintiffs, exclusive of interests and costs, exceed the minimum jurisdictional limits of the court.

4.     Defendant, REYNOLDS METALS COMPANY, may be served with process through its registered agent Corporation Service Company, 100 Congress Avenue, Suite 1100, Austin, Texas 78701.

5.     Defendant, ALCOA, INC. (successor to REYNOLDS METALS COMPANY), may be served with process through its registered agent, C. T. Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

6.     Defendant, A. S. "Stan" Millsap, may be served at 5541 Bear Lane, Ste. 236, Corpus Christi, Texas 78405.

7.     Defendant, C. Arlon Boatman, may be served at the Sherwin Alumina Plant, P.O. Box 9911, Highway 361, Gregory, Texas 78469.

8.     Plaintiffs are properly joined in this action pursuant to Tex. R. Civ. P. 40(a).

9.     Plaintiffs' causes of action arise out of the same occurrence or series of occurrences and involve common questions of law and fact.

10.    Plaintiffs would show that they, for a period of many years, worked with and were exposed to asbestos-containing and/or silica-containing products while working at Defendants' Sherwin aluminum plant in Gregory, Texas doing various trades. Plaintiffs would show that they were exposed, on numerous occasions, to asbestos containing and/or silica-containing materials used by Defendants and, in so doing, have inhaled great quantities of asbestos fibers and/or silica. Further, Plaintiffs allege, as more specifically set out below, that they suffered injuries

proximately caused by their exposure to asbestos-containing products and/or silica-containing materials used by Defendants.

11.   Plaintiffs allege that they were exposed to asbestos-containing and/or silica-containing products in their occupations.  In that each exposure to such products caused or contributed to Plaintiffs' injuries, Plaintiffs say that the doctrine of joint and several liability should be extended to apply to each Defendant herein.

12.   Plaintiffs neither discovered, nor had reasonable cause or opportunity to discover, sufficient facts to put them on notice that they had been injured or that Defendants' had caused them any injury more than two years prior to the filing of this suit.

## COUNT ONE - NEGLIGENCE

13.   The illnesses and disabilities of Plaintiffs are a direct and proximate result of the negligence of each Defendant and/or its predecessor-in-interest in that said entities used, installed, removed and/or demolished asbestos, silica-containing materials and/or asbestos-containing materials which the Defendants knew, or in the exercise of ordinary care ought to have known, were deleterious and highly harmful to Plaintiffs' health and well being.  The Defendants were negligent in one, some and/or all of the following respects, among others, and such negligence was the proximate cause of Plaintiffs' illnesses and disabilities:

a. In failing to adequately warn Plaintiffs of the dangerous characteristics and serious health hazards associated with exposure to asbestos, silica and/or asbestos-containing products;

b. In failing to provide Plaintiffs with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, to protect Plaintiffs from being harmed and disabled by exposure to asbestos, silica and/or asbestos-containing materials;

c. In failing to post adequate warning signs to warn workers of the dangers to one's health of being exposed to asbestos, silica and/or asbestos-containing materials;

d. In failing to take reasonable precaution or exercise reasonable care to publish, adopt and enforce a safety plan and/or safe method of handling, removing and installing asbestos, silica and/or asbestos-containing materials

e. In failing to use a substitute material to eliminate asbestos insulation products from being installed and/or removed at the Sherwin plant;

f. In failing to properly test the asbestos-containing and/or silica-containing products before they were used and/or removed in the work place; and

g. In failing to properly test the ambient air for levels of asbestos and/or silica in the Plaintiffs' work areas.

## COUNT TWO - MALICE

14. All of the allegations contained in the previous paragraphs are realleged herein.

15. Defendants' specific intent to cause substantial injury to the Plaintiffs, or acts or omissions, which when viewed objectively from the standpoint of the Defendants at the time of occurrence based upon the facts and legal theories more fully set out herein, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and of which the Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of Plaintiffs.

## COUNT THREE - GROSS NEGLIGENCE

16. All of the allegations contained in the previous paragraphs are realleged herein.

17. The actions and inactions of all the Defendants and their predecessors-in-interest, whether taken separately, or together, were of such a character as to constitute a pattern or practice of

intentional wrongful conduct and/or malice resulting in damage and injury to the Plaintiffs.

More specifically, Defendants and their predecessors-in-interest, consciously and/or deliberately

engaged in oppression, fraud, wantonness and/or malice with regard to the Plaintiffs.  Therefore,

Defendants are guilty or gross negligence for which they should be held liable in punitive and

exemplary damages to Plaintiffs.

### COUNT FOUR - WRONGFUL DEATH AND SURVIVAL CLAIMS

18.    All of the allegations contained in the previous paragraphs are realleged herein.

19.    Plaintiffs bring this wrongful death and survival action pursuant to TEX. CIV. PRAC. &

REM. CODE, 71.001 et. seq. and 71.021, respectfully, because of injuries suffered by the

Plaintiffs may result in Plaintiffs' wrongful death based upon the facts and legal theories more

fully set out herein.

### COUNT FIVE - INTENTIONAL TORT

20.    All of the allegations contained in the previous paragraphs are realleged herein.

21.    All Plaintiffs further allege that Defendants engaged in intentional and malicious conduct

which directly and proximately caused Plaintiffs' asbestos-related disease and/or silica-related

injuries.  Plaintiffs would show that RMC had knowledge of the inherent dangers associated with

exposing RMC's employees to asbestos-containing and/or silica-containing dust at least by the

early 1960's, if not earlier.  During Plaintiffs' employment, RMC directed and/or knowingly

allowed Plaintiff on a frequent basis to work with asbestos and/or silica and intentionally

exposed Plaintiffs to asbestos-containing and/or silica-containing dust without providing

Plaintiffs with the appropriate protective gear, without initiating proper dust controls, and

without disclosing the hazards of asbestos and/or silica exposure to the Plaintiffs.  Therefore,

RMC knew with substantial certainty that Plaintiffs' work would cause them to inhale asbestos

and/or silica and would result in injury to Plaintiffs.  Further, RMC's actions and omissions, when viewed objectively at the time of their occurrence, involved an extreme degree of risk, when considering the risk of harm to Plaintiffs and others and of which the RMC had actual subjective awareness.  Nevertheless, RMC proceeded with conscious indifference to the rights, safety and welfare of the Plaintiffs and others similarly situated.  The specific actions or omissions, committed by RMC, that were a direct cause of Plaintiffs' injuries and damages include, but are not limited to the following:

      a.  RMC directed Plaintiffs to work with asbestos and/or silica;

      b.  RMC knowingly allowed and directed Plaintiffs to engage in work practices which would with substantial certainty result in their inhalation of asbestos-containing and/or silica-containing dust, knowing with substantial certainty that Plaintiffs would eventually manifest an asbestos-related and/or silica-related injury;

      c.  RMC failed to inform Plaintiffs about inherent dangers of asbestos and/or silica, or safe work practices, knowing that had they informed Plaintiffs, Plaintiffs would not have worked with the asbestos and/or silica and/or would not have been exposed to asbestos-containing and/or silica-containing dust;

      d.  Defendants failed to provide proper safety measures and protection against asbestos and/or silica dust, knowing with a substantial certainty that without such safety measures and protection, Plaintiffs and others similarly situated would inhale asbestos and/or silica and eventually manifest and asbestos-related and/or silica-related injury;

      e.  Defendants failed to provide Plaintiffs with a safe working environment, by failing to train and/or require Plaintiffs' to follow safe procedures when handling or removing asbestos containing and/or silica-containing products, knowing with a substantial certainty, that without

such a safe place to work Plaintiff and others similarly situated would inhale asbestos and/or silica and eventually manifest an asbestos-related and/or silica-related injury; and

   f. Defendants knew that their conduct in operating the facility and failing to take appropriate measures to protect Plaintiffs and others similar situated from inhaling asbestos fiber, asbestos dust and/or silica was substantially certain to cause Plaintiffs' asbestos-related and/or silica-related disease.

22. Plaintiffs would show that RMC's conduct amounted to intentional infliction of emotional distress.

23. Plaintiff would also show that RMC's acts and omissions constitute an assault and/or battery against Plaintiffs and were a proximate cause of Plaintiffs' asbestos-related and/or silica-related disease.

24. As a direct and proximate result of RMC's intentional and malicious conduct, Plaintiffs suffered an asbestos-related disease and/or silica-related disease and damages.

## DAMAGES

   WHEREFORE, Plaintiffs, David Ray Amason, Joe Arrezola, Franklin Barber, Alonzo Beltran, Gary Cedotal, Charles Chapman, Oran Cornett, Robert Deleon, Dwane Dreyer, Evaristo Duran, and Alvin Francis, demand judgment against the Defendants, and each of them, jointly and severally, for general damages, special damages, reasonable medical care and expenses in the past (these expenses were incurred by Plaintiff for the necessary care and treatment of the injuries complained of herein and such charges are reasonable and were usual and customary charges for such services in Nueces County, Texas); reasonable and necessary medical care and expenses which will in all reasonable probability be incurred in the future; physical pain and suffering in the past; mental anguish in the past; physical pain and suffering in the future; mental anguish in

the future; physical impairment in the past; physical impairment which, in all reasonable probability, will be suffered in the future; loss of earnings in the past; loss of earning capacity which will, in all probability, be incurred in the future; loss of consortium in the past, including damages to the family relationship, loss of care, comfort, solace, companionship, protection, services, and/or physical relations; loss of consortium in the future including damages to the family relationship, loss of care, comfort, solace, companionship, protection, services, and/or physical relations; loss of parental consortium in the past, including damages to the parent-child relationship, including loss of care, comfort, solace, companionship, protection, services, and/or parental love; loss of parental consortium in the future including damages to the parent-child relationship, including loss of care, comfort, solace, companionship, protection, services, and/or parental love; loss of household services in the past; loss of household services in the future; fear of future disease, progression of their asbestos-related and/or silica-related illness, cancer or condition; cost of medical monitoring and prevention in the future; and for punitive and exemplary damages, for their costs expended herein, for interest on said judgment from the date this action accrued until paid, at the legal rate, and for such other and further relief, both at law and in equity, to which Plaintiffs may show themselves justly entitled.

## JURY DEMAND

Plaintiffs demand that all issues of fact in this case be tried to a properly impaneled jury.

## REQUESTS FOR DISCLOSURE

Pursuant to the Texas Rules of Civil Procedure and specifically Rules 194 and 195, Plaintiffs request that each Defendant disclose the following within fifty (50) days of receipt of this request:

1.   The correct names of the parties to the lawsuit;

2.   The name, address, and telephone number of any potential parties;

3.   The legal theories and, in general, the factual bases of the responding party's claims or defenses (the responding party need not marshal all evidence that may be offered at trial);

4.   The amount and any method of calculating economic damages;

5.   The name address, and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case;

6.   As for any testifying experts, please disclose:
   a.   the expert's name, address and telephone number;
   b.   the subject matter on which the expert will testify;
   c.   the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of the responding party, documents reflecting such information;
   d.   If the expert is retained by, employed by, or otherwise subject to the control of you, please disclose
       (1)   All documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and
       (2)   the expert's current resume and bibliography;

7.   Any discoverable indemnity and insuring agreements described in TEX.R.CIV.P. 192.3(f);

8.   Any settlement agreements described in TEX.R.CIV.P. 192.3(g); and

9.   Any witness statements described in TEX.R.CIV.P. 192.3(h).

Respectfully submitted,

HOSSLEY ✫ EMBRY, L.L.P.
Attorney for Plaintiffs

By: _____
D. Allen Hossley
State Bar No.  00792591
313 E. Charnwood St.
Tyler, Texas 75701
903-526-1772 Phone
903-526-1773 Fax

GULF BUSINESS FORMS SYSTEMS, INC. (361) 853-9877



## OFFICIAL RECEIPT
### COUNTY OF NUECES

## No.1106468

RECEIPT OF THE DISTRICT CLERK
NUECES COUNTY

Receipt 3002963
Credit
Rcvd of D. ALLEN HOSSLEY          HOSSLEY & EMBRY, L.L.P.

Cause# 03-01065-00-0-E
Style  AMASON, DAVID RAY, ET AL
                        v s
REYNOLDS METALS COMPANY, ET AL

Amt Paid $      216.00      For DP DEPOSIT

Cash
M. O.
X Check #1995

By ................................
          PATSY PEREZ
          ................................
          LYDIA

02/24/2003
Firm 008270

District Clerk

Deputy

**2**

NO.  0301065000-E

| | | |
|---|---|---|
| DAVID RAY AMASON; JOE ARREZOLA; | § | IN THE DISTRICT COURT OF |
| FRANKLIN BARBER; ALONZO BELTRAN; | § | |
| ARNOLDO BENAVIDES; GARY CEDOTAL; | § | |
| CHARLES CHAPMAN; ORAN CORNETT; | § | |
| ROBERT DELEON; DWANE DREYER; | § | |
| EVARISTO DURAN; ALVIN FRANCIS; | § | |
| AND ARMANDO FLORES, | § | |
| | § | |
| **Plaintiffs** | § | NUECES COUNTY, TEXAS |
| | § | |
| vs. | § | |
| | § | |
| | § | |
| REYNOLDS METALS COMPANY; ET AL, | § | |
| | § | |
| **Defendants** | § | 148th JUDICIAL DISTRICT |

### PLAINTIFFS' FIRST AMENDED PETITION, JURY DEMAND AND REQUEST FOR DISCLOSURES

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs DAVID RAY AMASON, JOE ARREZOLA, FRANKLIN BARBER, ALONZO BELTRAN, GARY CEDOTAL, CHARLES CHAPMAN, ORAN CORNETT, ROBERT DELEON, DWANE DREYER, EVARISTO DURAN, AMANDO FLORES and ALVIN FRANCIS, hereinafter referred to as Plaintiffs, complaining of the various Defendants listed below and for cause of action would show the Court and Jury as follows:

### Defendants

1.    Defendant, REYNOLDS METALS COMPANY, may be served with process through its registered agent Corporation Service Company, 100 Congress Avenue, Suite 1100, Austin, Texas 78701.

2.    Defendant, ALCOA, INC. (successor to REYNOLDS METALS COMPANY), may be served with process through its registered agent, C. T. Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

3.    Defendant, A. S. "STAN" MILLSAP, may be served at 5541 Bear Lane, Ste. 236, Corpus Christi, Texas 78405.

4.    Defendant, C. ARLON BOATMAN, may be served at the Sherwin Alumina Plant, P.O. Box 9911, Highway 361, Gregory, Texas 78469.

5.    Defendant AMERICAN OPTICAL CORPORATION, is a corporation organized and existing under and by virtue of the laws of the State of New Jersey with an agent for service in the State of Texas, to-wit: C. T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

6.    Defendant JOHN BARTEN, INDIVIDUALLY AND d/b/a JOHN BARTEN COMPANY, AND JB INDUSTRIAL SAND, is a corporation organized and existing under and by virtue of the laws of the State of Texas with an agent for service in the State of Texas, to-wit: John Barten, P. O. Box 487, Columbus, Texas 78931.

7.    Defendant BOWEN SCHMIDT, INC., is a corporation organized and existing under and by virtue of the laws of the State of Texas with an agent for service in the State of Texas to-wit: Mr. Charles A. Schmidt, 6040 Osborn, Houston, Texas 77033.

8.    Defendant CESCO CORPORATION, is a corporation organized and existing under and by virtue of the laws of the State of Texas with an agent for service in the State of Texas, to-wit C. T. Corporation System, 3350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

9.    Defendant COMPLETE ABRASIVE BLASTING SYSTEM, INC., as corporation organized and existing under and by virtue of the laws of the State of Texas, with an agent for service in the State of Texas, to-wit: Prentice-Hall Corporation System, 400 N. St Paul Street, Dallas, Tx 75201.

10.   Defendant CORPUS CHRISTI EQUIPMENT COMPANY, corporation organized and existing under and by virtue of the laws of the State of Texas, with an agent for service in the State of Texas, to wit: David E. Massie, 410 Westchester, P. O. Box 4125, Corpus Christi, Texas 78469.

11.   Defendant, CORPUS CHRISTI GASKET AND FASTENER COMPANY (f/k/a Corpus Christi Gasket and Packing, Inc.), individually and as successor to Gilman Insulation Co. Inc., may be served with process through its registered agent, David Massie or WHI Management, Inc., 341 Westchester, Corpus Christi, Texas 78408;

12.   Defendant, DEVILBISS AIR POWER COMPANY, f/k/a The Devilbiss Corporation, is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045, Vernon's Annotated Texas Statutes, said Defendant may be served by serving the Secretary of State of Texas, with process to be forwarded to the registered agent for service of process, to-wit: The Prentice-Hall Corporation System, Inc., 32 Loockerman Square, Suite L-100, Dover, Deleware 19901.

13.     Defendant, E. D. BULLARD COMPANY, CORPORATION ORGANIZED AND EXISTING UNDER AND BY VIRTUE OF THE LAWS OF THE State of California, with an agent for service in the State of Texas, to-wit: C. T. Corporation System, 350 St. Paul Street, Dallas, Texas 75201.

14.     Defendant, EASTERN SAFETY EQUIPMENT COMPANY6, INC. , is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.l045, Vernon's Annotated Texas Statutes, said Defendant may be served by serving the Secretary of State of Texas, with process to be forwarded to the registered agent for service of process, to-wit: 59-2015th Avenue, Maspeth, New York 11378.

15.     Defendant EMPIRE ABRASIVE COMPANY, is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045, Vernon's Annotated Texas Statutes, said Defendant may be served by serving the Secretary of State of Texas, with process to be forwarded to the registered agent for service of process, to-wit: Mr. Harry Hill, Empire Abrasive Company, 2101 West Cabot Boulevard, Langhorne, Pennsylvania 19047-1893.

16.     Defendant EMPIRE ABRASIVE EQUIPMENT CORPORATION, is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045, Vernon's Annotated Texas Statutes, said Defendant may be served by serving the State of Texas, with process to be forwarded to the registered agent for service of process, to-wit: 2101 W"est Cabot Boulevard, Langhorn, Pennsylvania 1947.

17.     Defendant ENCON MANUFACTURING COMPANY a/k/a Encon Safety Products, Inc., is a corporation organized and existing under and by virtue of the laws of the State of Pennsylvania, with an agent for service in the State of Texas, to-wit: C. T. Corporation System, 811 Dallas Avenue, Houston, Texas 77002.\

18.     Defendant FLEXO PRODUCTS, INC., a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045, Vernon's Annotated Texas Statutes, said Defendant may be served by serving the Secretary of State of Texas, with process to be forwarded to the registered agent for service of process, to-wit: John Hill, 24864 Detroit Road 19, Westlake, Ohio 44145.

19.     Defendant INCO UNITED STATES, INC., is a corporation not authorized to do business in the state of Texas, but doing business in the state of Texas. Defendant corporation has not appointed a registered agent for service of citation in the state of Texas. Therefore, pursuant to Article 17.044al, of Texas Civil Practice and Remedies Code, service of citation may be perfected on Defendant corporation by serving the Secretary of the State of Texas, who shall forward a copy of the process to said non resident Defendant corporation to its Chief Executive Officer, Inco United States, Inc., One New York Plaza, New York 10004.

20.   Defendant JEBCO ABRASIVES, INC., is a corporation organized and existing under and by virtue of the laws of the State of Texas with an agent for service in the State of Texas, to-wit: John Barton, P. O. Box 487, Columbia Texas 78931.

21.   Defendant KELCO SALES & ENGINEERING COMPANY, a division of Polley, Inc., is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045, Vernon's Annotated Texas Status, said Defendant may be served by serving the Secretary of State of Texas, with process to the forwarded to the registered agent for service of process, to-wit: 11936 E. Front Street, Norwalk, California 90650, c/o Don Polley, president.

22.   Defendant, KEY HOUSTON, a division of Jacksonville Shipyards, is a foreign corporation doing business in the Estate of Texas but does not maintain a place of regular business in Texas or a designated agent upon whom service may be made Service of process may be made by serving Stephen Ferrell, at Giessel, Barker & Lyman, 2700 Two Houston Center, 909 Fannin, Houston, Texas 77010.

23.   Defendant, MARTINDALE ELECTRIC COMPANY, is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045, Vernon's Annotated Texas Statutes, said Defendant to be registered agent for service of process, to-wit: Martindale Electric Company, 1365 Bird Ave., Cleveland Cuyahoga County, Ohio 44107.

24.   Defendant MOLDEX-METRIC, INC., a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045, Vernon's Annotated Texas Statutes, said Defendant may be served by serving the Secretary of State of Texas, with process to be forwarded to the principal place of business to Sidney J. Machtinger, 1900 Avenue of the Stars, Los Angeles, CA. 90067.

25.   Defendant, MORIE COMPANY, INC., is a New corporation. It does not maintain either a regular place of business or an agent for service of process in this State. Service of process may be made by serving the Secretary of State of state of Texas under Article 17.045, with process to be forwarded to the defendant's registered agent; Corporate Company, 60 Commerce Street , Montgomery, AL 36104.

26.   Defendant OTTAWA SILCA COMPANY, is a corporation organized and existing under and by virtue of the laws of some state other than the state of Texas. It does not maintain either a regular place of business or an agent for service of process in this State. Service of process may be made by serving the Secretary of State of Texas under Article 17.045, with process to be forwarded to: Corporation Trust Co., Corporate Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

27.   Defendant THE PANGBORN CORPORATION, is a corporation organized and existing pursuant to law.  May be served by and through their agent for service, to-wit C. T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

28.     Defendant PARMELEE INDUSTRIES, INC., d/b/a CESCO SAFETY PRODUCTS COMPANY, is a corporation organized and existing under and by virtue of the laws of the State of Deleware with an agent for service in the State of Texas, to-wit: C. T. Corporation Systems, 811 Dallas Avenue, Houston, Texas 77002.

29.     Defendant PAULI & GRIFFIN CO. is a foreign corporation doing business in the State of Texas but does not maintain a place of regular business in Texas or a designed agent upon whom service may be made.  Service of process may be made pursuant to Article 17.044 of the Civil Practice and Remedies Code by serving the Secretary of State, State of Texas, 1019 Brazos, Austin, Texas 78701, as agent for service of process, and the Secretary of State forwarding a copy of the process by registered mail, return receipt requested, to Fredrick Lucksinger, Trustee, Care Of: his attorney, Mary Verhoef at Law Firm of Moore, Meegan, Hanshaw & Kassenbrock, 1545 River Park Dr., Suite 550, Sacramento, California 95815.

30.     Defendant PIONEER CONCRETE OF TEXAS, INC., is a corporation organized and existing under and by virtue of the laws of the State of Texas with an agent for service in the State of Texas, to-wit: George Piazza, Memorial City Plaza, Suite 1100, 800 Gessner, Houston, Texas 77024.

31.     Defendant P. K. LINDSAY COMPANY, is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045, Vernon's Annotated Texas Statutes, said Defendant may be served by serving the Secretary of State of Texas, with process to be forwarded to the registered agent for service of process, to-wit: 63 Nottingham Road, Deerfield, New Hampshire 03037.

32.     Defendant RANSBURG CORPORATION (formerly Devilbiss Industries Products Corporation successor to The Devilbiss Company), is a corporation organized and existing under and by virtue of the laws of the State of Delaware with an agent for service in the State of Texas, to-wit:  C. T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

33.     Defendant SANDSTROM COMPANY, is a corporation and existing under and by virtue of the laws of the State of Texas with an agent for service in the State of Texas, to-wit: C. T. Corporation System, 811 Dallas Ave., Houston, Texas 77002.

34.     Defendant SCHMIDT MANUFACTURING, INC., is a corporation organized and existing under and by virtue of the laws of the State of Texas with an agent for service in the State of Texas, to-wit: C. T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

35.     Defendant SCOTT AVIATION, A DIVISION OF FIGGIE INTERNATIONAL, is a corporation organized and existing under and by virtue of the laws of the State of Texas with an agent for service in the State of Texas, to-wit: C. T. Corporation System, 811 Dallas Ave., Houston, Texas 77002.

36.    Defendant SURVIVAIR, A DIVISION OF U.S.D. CORP., is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045 Vernon's Annotated Texas Statutes, said Defendant may be served by serving the Secretary of State of Texas, with process to be forwarded to the principal place of business 3001 South Susan St., Santa Ana, California 92704.

37.    Defendant SULLAIR CORPORATION, is a corporation organized and existing under and by virtue of the laws of the State of Indiana with an agent for service in the State of Texas, to-wit, C. T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 175201.

38.    Defendant TRIPLEX, INC., a corporation organized and existing under and by virtue of the laws of the State of Texas, with an agent for service in the State of Texas, to -wit; Luther B. Fuqua, II, 122 Kress, Houston, Texas 77020.

39.    Defendant UNIMIN CORPORATION is a corporation organized and existing under and by virtue of the laws of the State of Texas, with an agent for service in the State of Texas, to-wit: C. T. Corporation Systems, 811 Dallas, Ave., Houston, Texas 77002.

40.    Defendant WELDRON SILICA CORPORATION is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.0245, Vernon's Annotated Texas Statutes, said Defendant may be served by serving the Secretary of State of Texas, with process to be forwarodoed to the principal place of business at P. O. Box 119, Waitron, Illinois 60557.

41.    Defendant WEDRON SILICA COMPANY, is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045, Vernon's Annotated Texas Statutes, said Defendant may be served by serving the Secretary of State of Texas, with process to be forwarded to the principal place of business at 11188 Resiny Road, Charon, Ohio 44024.

42.    Defendant DALLOZ SAFETY, INC., f;/k/a and Successor-in-interest to WGM SAFETY CORPORATION d/b/a WILSON SAFETY PRODUCTS, is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045, Vernon's Annotated Texas Statutes, and Defendant may be served by serving the Secretary of State of Texas, with process to be forwarded to the principal place of business at Post Office, Box 622, Reading, Pennsylvania 19603.

43.    Defendant WGM SAFETY CORPORATION D/B/A WILSON SAFETY PRODUCTS, is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045, Vernon's Annotated Texas Statutes, said Defendant may be served by serving the Secretary of State of Texas, with process to be forwarded to the principal place of business at Post Office Box 622, Reading, Pennsylvania 19603.

44.    Defendant WHEELBRATOR-FRYE CORPORATION, is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045, Vernon's Annotated Texas Statutes, said Defendant may be served by serving the

Secretary of State of Texas, with process to be forwarded to the principal place of business at 4 Liberty Lane West Hampton, New Hampshire 03842.

45.   Defendant W. W. SLY MANUFACTURING COMPANY, is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045, Vernon's Annotated Texas Statutes, said Defendant may be served by serving the Secretary of State, with process to be forwarded to the principal place of business at P. O. Box 5939, Cleveland, Ohio 44101.

## I.

### Joinder of Plaintiff

Plaintiffs are properly joined in this action pursuant to Tex. R. Civ. P. 40(a). Plaintiffs' causes of action arise out of the same occurrence or series of occurrences and involve common questions of law and fact.

## II.

### Venue

Plaintiffs are citizens of the State of Texas and a number of the Plaintiffs reside within Nueces County, Texas. All Plaintiffs incurred their most significant exposure to asbestos and/or silica while working in Texas. Certain Defendants reside in Nueces County, Texas. Therefore, venue properly lies in this County.

## III.

### Discovery

Plaintiffs request discovery be conducted under Level III pursuant to Rule 190.4 of the Texas Rules of Civil Procedure. The damages sought by Plaintiffs, exclusive of interests and costs, exceed the minimum jurisdictional limits of the court.

## IV.

## Background

Plaintiffs would show that they, for a period of many years, worked with and were exposed to aerosolized silica dust, dust from asbestos-containing and/or silica-containing products, sand, blasting sand and used respiratory protection products of the Defendants herein, while working at the Reynolds Sherwin aluminum plant in Gregory, Texas doing various trades. Plaintiffs would show that they were exposed, on numerous occasions, to silica, asbestos containing and/or silica-containing materials manufactured, installed, used, designed and/or marketed the by Defendants and, in so doing, have inhaled great quantities of asbestos fibers and/or silica. Further, Plaintiffs allege, as more specifically set out below, that they suffered injuries proximately caused by their exposure to asbestos-containing products and/or silica-containing materials.

Plaintiffs allege that they were exposed to asbestos-containing and/or silica-containing products in their occupations. In that each exposure to such products caused or contributed to Plaintiffs' injuries, Plaintiffs say that the doctrine of joint and several liability should be extended to apply to each Defendant herein.

## V.

## NEGLIGENCE

The illnesses and disabilities of Plaintiffs are a direct and proximate result of the negligence of each Defendant and/or its predecessor-in-interest in that said entities produced, sold, distributed, used and/or otherwise put into the stream of commerce, sand, silica silica-containing products, asbestos-containing products, blasting equipment, which the Defendants knew, or in the exercise of ordinary care, should have known, were deleterious and highly

harmful to Plaintiffs' health and well being. The Defendants were negligent in one, some and/or all of the following respects, among others, and such negligence was the proximate cause of Plaintiffs' illnesses and disabilities:

1.  In failing to adequately warn Plaintiffs of the dangerous characteristics and serious health hazards associated with exposure to sand, silica, silica-containing products, asbestos-containing products, and blasting equipment;

2.  In failing to provide Plaintiffs with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, to protect Plaintiffs from being harmed and disabled by exposure to sand, silica, asbestos-containing products, silica-containing products and blasting equipment;

3.  In failing to place adequate warnings on the containers of sand, silica, silica-containing products and blasting equipment to warn of the dangers to health of being exposed to sand, silica, asbestos-containing products, silica-containing products and blasting equipment;

4.  In failing to take reasonable precaution or exercise reasonable care to publish, adopt and enforce a safety plan and/or safe method of handling and using sand, silica, asbestos-containing products, silica-containing products and blasting equipment;

5.  In failing to develop and utilize a substitute material to eliminate silica in abrasive blasting and/or asbestos as an insulator;

6.  In failing to properly design and manufacture sand, silica, asbestos-containing products, silica-containing products and blasting equipment for safe use under conditions of use that were reasonably anticipated;

7.  In failing to properly test their sand, silica asbestos-containing products, silica-containing products and blasting equipment before they were released for consumer use; and

8.  In failing to recall and/or remove from the stream of commerce said sand, silica, asbestos-containing products, silica-containing products and blasting equipment despite knowledge of the unsafe and dangerous nature of such products or equipment.

Additionally, the illnesses and disabilities of Plaintiffs are a direct and proximate result of the negligence of the manufacturers of respiratory equipment (hereafter "Respiratory

Defendants") by placing into the stream of commerce respiratory devices defective in design and inadequate for the purposes for which they were intended, namely the prevention of inhaling dust, including silica dust and/or asbestos dust, generated from construction, insulation activities, abrasive blasting, sandblasting and/or manufacturing processes.

The Respiratory Defendants knew or should have known that workers would use and rely upon the Respiratory Defendants' respiratory devices at sites where sand, silica and/or asbestos materials were commonly and extensively used which created substantial and constant quantities of dust and that their respiratory devices would provide inadequate protection against the inhalation of silica dust and/or asbestos dust.

Furthermore, the Respiratory Defendants were negligent for failing to warn and/or properly instruct workers regarding the inadequacies of their respiratory devices for preventing the inhalation of silica dust and/or asbestos dust.

## VI.

## <u>STRICT LIABILITY</u>

Plaintiffs were exposed to sand, silica, asbestos-containing products, silica-containing products and/or blasting equipment, that were manufactured and distributed by the Defendants and/or their predecessors-in-interest for use as insulation, sandblasting, abrasive blasting, construction materials, and/or equipment in industrial operations. Plaintiffs would show that such products were not reasonably fit for the purposes for which they were intended and were defective at the time that the products left the hands of the Defendants. In this connection, Plaintiffs would show that the defective condition of the products rendered such products unreasonably dangerous

A number of the Defendants are engaged in the business of selling sand, silica, asbestos-containing products, silica-containing products, blasting equipment, blasting protective equipment and/or respiratory blasting protective equipment and these products, without substantial change in the condition in which they were sold, were the proximate cause of the injuries of Plaintiffs.

Defendants knew that these sand, silica, asbestos-containing products, silica-containing products, blasting equipment, blasting protective equipment and/or respiratory blasting protective equipment would be used without inspection for defects, and by placing them on the market represented that they would safely do the job for which they were intended.

Plaintiffs were unaware of the hazards and defects in the sand, silica, asbestos-containing products, silica-containing products, blasting equipment, blasting protective equipment and/or respiratory blasting protective equipment of the Defendants which made them unsafe for purposes of installation.  Plaintiffs were also unaware of the hazards and defects in the sand, silica, asbestos-containing products, silica-containing products, blasting equipment, blasting protective equipment and/or respiratory blasting protective equipment

During the periods that Plaintiffs were exposed to the sand, silica, asbestos-containing products, silica-containing products, and/or blasting equipment of Defendants, said products were being utilized in a manner which was intended by Defendants.

Plaintiffs would further show that the sand, silica, silica-containing products and blasting equipment in question were defective and not reasonably fit for the purposes and uses for which they were intended at the time they left the hands of the Defendants in that Defendants failed to warn Plaintiffs of the hazardous nature of said products and/or equipment.  This failure to warn on the part of the Defendants rendered such sand, silica, asbestos-containing products, silica-containing products, and/or blasting equipment unreasonably dangerous at the time they left the

**PLAINTIFFS' FIRST AMENDED PETITION**                                             PAGE 11

hands of the Defendants and was a proximate cause of the injuries and disabilities sustained by the Plaintiffs.

Plaintiffs used respiratory devices designed and manufactured by the Respiratory Defendants, commonly known as a "dust mask" and "cartridge respirators." Plaintiffs would show that the defective condition of such respiratory devices rendered them unreasonably dangerous for use as devices for protection against the inhalation of silica dust and/or asbestos dust. Plaintiffs would further show that the respiratory devices were in a defective condition at the time they left the hands of the Respiratory Defendants.

The Respiratory Defendants were engaged in the business of manufacturing and selling respiratory devices and these products, without substantial change in the condition in which they were sold, were a proximate cause of the injuries of the Plaintiffs.

The Respiratory Defendants knew that their respiratory devices would be used without inspection for defects and, by placing them on the market, represented that they would safely preclude the inhalation of silica dust and/or asbestos dust.

Plaintiffs were unaware of the defects in the Respiratory Defendants' respiratory devices which rendered them ineffective as protection against the inhalation of silica dust and/or asbestos dust.

During the periods Plaintiffs used and relied upon the Respiratory Defendant's respiratory devices, the devices were utilized in a manner for which they were intended to be used.

## VII.

## CONSPIRACY

Plaintiffs would further show that the Defendants, individually and as agents of one another and as co-conspirators, agreed and conspired among themselves and with other sand,

silica, silica-containing products, asbestos-containing products, blasting equipment, blasting protective equipment and/or respiratory blasting protective equipment manufacturers and distributors to injure the Plaintiffs. Defendants entered into a conspiracy to withhold medical and scientific information; to misrepresent material facts about the seriousness of silica-related diseases and/or asbestos-related diseases; to delete material information from studies and reports; to disseminate misleading information; to prevent the disclosure of medical and scientific information; and/or to alter studies and reports and terminate studies that would prove unfavorable to them. The acts and omissions of the Defendant conspirators constitute fraudulent concealment and/or fraudulent misrepresentation which was a proximate cause of Plaintiffs injuries and damages. Defendants' acts and omissions amount to a total disregard of the Plaintiffs' rights, which constitute civil conspiracy as that term is defined in law.

## VIII.

### GROSS NEGLIGENCE

The actions and inactions of all the Defendants and their predecessors-in-interest, whether taken separately, or together, were of such a character as to constitute a pattern or practice of intentional wrongful conduct and/or malice resulting in damage and injury to the Plaintiffs. More specifically, Defendants and their predecessors-in-interest, consciously and/or deliberately engaged in oppression, fraud, wantonness and/or malice with regard to the Plaintiffs. Therefore, Defendants are guilty of gross negligence for which they should be held liable in punitive and exemplary damages to Plaintiffs.

## IX.

### MALICE

Defendants' specific intent to cause substantial injury to the Plaintiffs; or act or omission, which when viewed objectively from the standpoint of the Defendants at the time of occurrence

PLAINTIFFS' FIRST AMENDED PETITION                                    PAGE 13

based upon the facts and legal theories more fully set out herein, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and of which the Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of Plaintiffs.

## X.

## WRONGFUL DEATH

Plaintiffs bring this wrongful death and survival action pursuant to TEX. CIV. PRAC. & REM. CODE, 71.001 et. seq. and 71.021, respectfully, because injuries suffered by the Plaintiffs may result in Plaintiffs' wrongful death based upon the facts and legal theories more fully set out herein.

## XI.

## INTENTIONAL TORT

All of the allegations contained in the previous paragraphs are realleged herein. All Plaintiffs further allege that Defendants engaged in intentional and malicious conduct which directly and proximately caused Plaintiffs' asbestos-related disease and/or silica-related injuries. Plaintiffs would show specifically that Reynolds Metals Company and Alcoa, Inc., (successor to Reynolds Metals Company) (hereinafter referred to as RMC) had knowledge of the inherent dangers associated with exposing RMC's employees to asbestos-containing and/or silica-containing dust at least by the early 1960's, if not earlier. During Plaintiffs' employment, RMC directed and/or knowingly allowed Plaintiff on a frequent basis to work with asbestos and/or silica and intentionally exposed Plaintiffs to asbestos-containing and/or silica-containing dust without providing Plaintiffs with the appropriate protective gear, without initiating proper dust controls, and without disclosing the hazards of asbestos and/or silica exposure to the Plaintiffs. Therefore, RMC knew to a substantial certainty that Plaintiffs' work would cause them to inhale

asbestos and/or silica and would result in injury to Plaintiffs. Further, RMC's actions and omissions, when viewed objectively at the time of their occurrence, involved an extreme degree of risk, when considering the risk of harm to Plaintiffs and others and of which the RMC had actual subjective awareness. Nevertheless, RMC proceeded with conscious indifference to the rights, safety and welfare of the Plaintiffs and others similarly situated. The specific actions or omissions, committed by RMC, that were a direct cause of Plaintiffs' injuries and damages include, but are not limited to the following:

1.   RMC directed Plaintiffs to work with asbestos-containing and/or silica-containing;

2.   RMC knowingly allowed and directed Plaintiffs to engage in work practices which would with substantial certainty result in their inhalation of asbestos-containing and/or silica-containing dust, knowing with substantial certainty that Plaintiffs would eventually manifest an asbestos-related and/or silica-related injury;

3.   RMC failed to inform Plaintiffs about inherent dangers of asbestos and/or silica, or safe work practices, knowing that had they informed Plaintiffs, Plaintiffs would not have worked with the asbestos and/or silica and/or would not have been exposed to asbestos-containing and/or silica-containing dust;

4.   Defendants failed to provide proper safety measures and protection against asbestos and/or silica dust, knowing with a substantial certainty that without such safety measures and protection, Plaintiffs and others similarly situated would inhale asbestos and/or silica and eventually manifest and asbestos-related and/or silica-related injury;

5.   Defendants failed to provide Plaintiffs with a safe working environment, by failing to train and/or require Plaintiffs' to follow safe procedures when handling or removing asbestos containing and/or silica-containing products, knowing with a substantial certainty, that without such a safe place to work Plaintiff and others similarly situated would inhale asbestos and/or silica and eventually manifest an asbestos-related and/or silica-related injury; and

6.   Defendants knew that their conduct in operating the facility and failing to take appropriate measures to protect Plaintiffs and others similar situated from inhaling asbestos fiber, asbestos dust and/or silica was substantially certain to cause Plaintiffs' asbestos-related and/or silica-related disease.

Plaintiffs would show that RMC's conduct amounted to intentional infliction of emotional distress.   Plaintiff would also show that RMC's acts and omissions constitute an assault and/or battery against Plaintiffs and were a proximate cause of Plaintiffs' asbestos-related and/or silica-related disease.   As a direct and proximate result of RMC's intentional and malicious conduct, Plaintiffs suffered an asbestos-related disease and/or silica-related disease and damages.

## XII.

## DAMAGES

As a direct and proximate result of Defendants' tortious conduct as aforesaid, Plaintiffs have developed lung cancer, asbestos-related lung disease, silica-related lung disease and/or other related physical conditions.  Plaintiffs have been damaged in the following particulars:

(a)     Plaintiffs have suffered great physical pain and mental anguish and will continue to suffer great pain of body and mind throughout their lifetimes;

(b)     Plaintiffs have incurred hospital and/or medical and/or pharmaceutical and/or other expenses and will continue to incur such expenses in the future due to the progressively disabling character of silica- and/or asbestos-related lung disease and other related physical conditions from which they now suffer and will continue to suffer in the future;

(c)     Plaintiffs suffer a physical impairment at this time and will continue to suffer this impairment in the future due to the disabling character of silica- and/or asbestos-related lung disease and other related physical conditions;

(d)     Plaintiffs suffer a permanent partial disability at this time and will become permanently and totally disabled in the future due to the progressive character of silica- and/or asbestos related lung disease and other related physical conditions;

(e)     Plaintiffs are subject to an extraordinary increased likelihood of developing (or the progression and/or recurrence of) cancer of the lungs, and other cancers, all due to said exposure to silica and/or asbestos products and/or machinery manufactured, sold and/or distributed by the named Defendants;

(f)     Plaintiffs will require medical monitoring throughout their lifetime to survey the progression of their silica- and/or asbestos-related lung disease and to aid in the early detection and treatment of any or all of the cancers described above and will be required to pay for such medical monitoring;

(g)     Plaintiffs have suffered a progressive loss of earning capacity and will continue to suffer a loss of earning capacity and wages throughout their lifetime;

(h)     Plaintiffs require or will require domestic help and nursing care due to their disabilities and have been or will be required to pay for such domestic help and nursing services;

(i)     Prior to the onset of their symptoms, Plaintiffs were extremely active and participated in numerous hobbies and activities , and as a result of their illness, Plaintiffs have been and will be prevented from engaging in some of said activities which were normal to them prior to developing symptoms from silica- and/or asbestos-related lung disease.  Plaintiffs have been and will otherwise be prevented from participating in and enjoying the benefits of a dull and complete life; and

(j)     Plaintiffs seek punitive and exemplary damages which Plaintiffs allege are in excess of the minimum jurisdictional limits of this Court.

WHEREFORE, Plaintiffs demand judgment against the Defendants, and each of them, jointly and severally, for reasonable medical care and expenses in the past (these expenses were incurred by Plaintiffs for the necessary care and treatment of the injuries complained of herein and such charges are reasonable and were usual and customary charges for such services in Nueces County, Texas); reasonable and necessary medical care and expenses which will in all reasonable probability be incurred in the future; physical pain and suffering in the past; mental anguish in the past; physical pain and suffering in the future; mental anguish in the future; physical impairment in the past; physical impairment which, in all reasonable probability, will be suffered in the future; loss of earnings in the past; loss of earning capacity which will, in all probability, be incurred in the future; loss of consortium in the past, including damages to the family relationship, loss of care, comfort, solace, companionship, protection, services, and/or physical relations; loss of consortium in the future including damages to the family relationship,

PLAINTIFFS' FIRST AMENDED PETITION                                                    PAGE 17

loss of care, comfort, solace, companionship, protection, services, and/or physical relations; loss

of parental consortium in the past, including damages to the parent-child relationship, including

loss of care, comfort, solace, companionship, protection, services, and/or parental love; loss of

parental consortium in the future including damages to the parent-child relationship, including

loss of care, comfort, solace, companionship, protection, services, and/or parental love; loss of

household services in the past; loss of household services in the future; fear of future disease,

progression of their asbestos-related and/or silica-related illness, cancer or condition; cost of

medical monitoring and prevention in the future; for punitive and exemplary damages; for their

costs expended herein; for interest on said judgment from the date this action accrued until paid,

at the legal rate; and for such other and further relief, both at law and in equity, to which

Plaintiffs may show themselves justly entitled.

## JURY DEMAND

Plaintiffs demand that all issues of fact in this case be tried to a properly impaneled jury.

## REQUESTS FOR DISCLOSURE

Pursuant to the Texas Rules of Civil Procedure and specifically Rules 194 and 195, Plaintiffs request that each Defendant disclose the following within fifty (50) days of receipt of this request:

1.   The correct names of the parties to the lawsuit;

2.   The name, address, and telephone number of any potential parties;

3.   The legal theories and, in general, the factual bases of the responding party's claims or defenses (the responding party need not marshal all evidence that may be offered at trial);

4.   The amount and any method of calculating economic damages;

5.   The name address, and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case;

6.   As for any testifying experts, please disclose:

a.    the expert's name, address and telephone number;

b.    the subject matter on which the expert will testify;

c.    the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of the responding party, documents reflecting such information;

d.    If the expert is retained by, employed by, or otherwise subject to the control of you, please disclose

e.    All documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and

f.    the expert's current resume and bibliography;

7.    Any discoverable indemnity and insuring agreements described in TEX.R.CIV.P. 192.3(f);

8.    Any settlement agreements described in TEX.R.CIV.P. 192.3(g); and

9.    Any witness statements described in TEX.R.CIV.P. 192.3(h).

Respectfully submitted,

HOSSLEY EMBRY, L.L.P.
Attorney for Plaintiffs

By: _____
     D. Allen Hossley
     State Bar No.  00792591
     313 E. Charnwood St.
     Tyler, Texas 75701
     903-526-1772 Phone
     903-526-1773 Fax

3

*Jay T. Segarra, M.D., FACP*                                    *NIOSH Certified B-Reader*

*Board certified in Internal Medicine, Pulmonary Diseases, & Critical Care*
Camellia Place • 2123 Government Street • Ocean Springs, Mississippi 39564
Phone/Fax (228) 872-2411

**OCCUPATIONAL LUNG DISEASE EVALUATION**                    December 2, 2003

Amason, David R.                                         HE/CC 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
PO Box 1059                                              DOB: 09/09/46
Ingleside TX 78362

**HISTORY:** This is a 57 year old man whose occupational history is as follows: He was in the Army from 1964-1967 as a helicopter door gunner. He has worked as a laborer and operator in an aluminum plant since 1968. He did not wear a mask until the 1970s. He knocked insulation off pipes with a sledgehammer to unstop lines and clear leaks. He worked around insulators. He picked and shoveled out firebrick from the inside of furnaces and passed in new firebrick. He was exposed to silica refractory material. He packed pumps and valves with insulation. He worked close by a sandblasting yard, within 40 yards, for 22 years. He was covered in dust from this area on a regular basis. He smoked between one and one-half packages of cigarettes daily for 15 years, quitting in the late 1970s. Since the late 1970s he smoked cigarettes only occasionally, consuming less than one package per week. Family history is non-contributory. He has a personal past medical history of hyperlipidemia for which he takes Zocor. He was told he had antibodies to hepatitis B core antigen when he went to donate blood. This has not resulted in any clinical illness. On general systems review he denies all respiratory symptoms at present.

**PHYSICAL EXAM:** H: 71"; W: 220#; Pulse: 76 and regular; B/P: 170/000; Head and neck: No adenopathy or jugular venous distention. Chest: Symmetric expansion. No obvious chest wall deformities. Lungs: Normal palpation and percussion. Clear to auscultation anteriorly and posteriorly to the bases. No rales, wheezes or rhonchi are heard. Heart: Regular rhythm, without murmurs, clicks, rubs, or gallops. Extremities: No clubbing, cyanosis, or edema.

**CHEST X-RAY:** PA and lateral views of the chest dated 12/02/03 are reviewed for the presence of and classification of pneumoconiosis according to the ILO (1980) classification. Film quality is grade 1. There is a diffuse interstitial pattern throughout all six lung zones, consisting of small, rounded opacities of size and shape P/Q, profusion 1/0. There are small bilateral diaphragmatic pleural plaques without obvious calcification. No infiltrates, effusions, or lung masses are present. The trachea is midline. The heart size is normal. The mediastinal structures are unremarkable. The costophrenic angles are sharp. There are no other significant intrathoracic findings. Compared to an earlier film dated 06/19/02, there has been no interval change.

**PULMONARY FUNCTION TESTING:** Performed in Corpus Christi, TX on 12/02/03 using Crapo/Hsu predicted values. Forced vital capacity (FVC) is 4.38 liters (l.), or 89% predicted (pred.). FEV1 is 3.13 l. (81% pred.). FEV1/FVC ratio is 71%. FEF 25%-75% is 2.13 l./sec. (58% pred.). SVC is 4.40 l. (89% pred.). TLC is 6.48 l. (90% pred.). DICO is 75% pred., based on an IVC of 4.31 l. Inspection of the volume-time curves, flow-volume loops and diffusion graphs reveals good performance and reproducibility during those portions of the test. These pulmonary function tests demonstrate normal spirometry and lung volumes with the exception of a slight reduction in midflows suggesting the presence of small airway obstruction. The DICO value is slightly reduced.

Amason, David R.
Page Two.

## DIAGNOSIS/IMPRESSION: [1] [2] [3] [4]

1.  Pulmonary silicosis (mild chronic simple silicosis), based on the x-ray changes and the exposure history.  This condition is causing no objective physiologic impairment at this time.

2.  Pleural abnormalities consistent with mild asbestos-related pleural disease, given the occupational/environmental exposure history.

3.  Elevated blood pressure.  Routine clinical follow-up is suggested.

**PROGNOSIS/RECOMMENDATION:**  Due to the long latency period between exposure to silica and asbestos and the onset of clinically significant silica-related and/or asbestos-related disease, the patient is at increased risk for the development of bronchogenic carcinoma, mesothelioma, certain other cancers, tuberculosis, as well as for deterioration in pulmonary function, even in the absence of additional asbestos or silica dust exposure.  Since these conditions may occur many years after exposure has terminated, close clinical follow-up, annual pulmonary re-evaluation, and immediate smoking cessation are strongly recommended.

Jay T. Segarra, M.D., FACP

1.  Health Effects of Occupational Exposure to Respirable Crystalline Silica, National Institute for Occupational Safety and Health, Publication No. 2002-129, April 2002
2.  Silica and Silica Induced Lung Diseases, Castranova V, Vallyathan V, Wallace W, CRC Press 1996 Boca Raton, FL.
3.  Goldsmith D, "Silica Exposure and Pulmonary Cancer" in Epidemiology of Lung Cancer, ed. Sammett J, Marcel M. Decker, 1994.
4.  Recommendations For Control Of Occupational Safety and Health Hazards... Foundries, National Institute for Occupational Safety and Health, Division of Standards Development and Technology Transfer, Publication No. 85-116, September 1985

120203cc.he[kk]

**Jay T. Segarra, M.D., FACP**
NIOSH Certified B-Reader
Camellia Place • 2123 Government Street • Ocean Springs, Mississippi 39564
Phone/Fax (228) 872-2411
*Board certified in Internal Medicine, Pulmonary Diseases, & Critical Care*

*Amason David R.*

WORKER'S Social Security Number: 453 78 0351

TYPE OF READING: [ A ] [ B ✗ ] [ P ]

FACILITY IDENTIFICATION: H E C C

| 1A. DATE OF X-RAY | 1B. FILM QUALITY | If Not Grade 1 Give Reason | 1C. IS FILM COMPLETELY NEGATIVE? |
|---|---|---|---|
| MONTH DAY YR 12 02 03 | [1 ✗] [2] [3] [U/R] | _____ | YES [ ] Proceed to Section 5    NO [✗] Proceed to Section 2 |

**2A.** <u>ANY</u> PARENCHYMAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?

YES [✗] COMPLETE 2B and 2C          NO [ ] PROCEED TO SECTION 3

**2B. SMALL OPACITIES**

a. SHAPE/SIZE

PRIMARY: [s ✗] [q] [t] [r] [u]
SECONDARY: [p ✗] [s] [t ✗] [r] [u]

b. ZONES

| | |
|---|---|
| ✗ | ✗ |
| ✗ | ✗ |
| ✗ | ✗ |
| R | L |

c. PROFUSION

| 0/- | 0/0 | 0/1 |
| 1/0 ✗ | 1/1 | 1/2 |
| 2/1 | 2/2 | 2/3 |
| 3/2 | 3/3 | 3+ |

**2C. LARGE OPACITIES**

SIZE [✗] [A] [B] [C]

PROCEED TO SECTION 3

**3A.** <u>ANY</u> PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?

YES [✗] COMPLETE 3B, 3C and 3D          NO [ ] PROCEED TO SECTION 4

**3B. PLEURAL THICKENING**

a. DIAPHRAGM (plaque)
SITE [O] [✗] [✗]

b. COSTOPHRENIC ANGLE
SITE [✗] [R] [L]

**3B. PLEURAL THICKENING . . . Chest Wall**

a. CIRCUMSCRIBED (plaque)

| | SITE | [✗] R | | | | [✗] L | | | |
|---|---|---|---|---|---|---|---|---|---|
| IN PROFILE i. WIDTH | | O | A | B | C | O | A | B | C |
| ii. EXTENT | | 0 | 1 | 2 | 3 | 0 | 1 | 2 | 3 |
| FACE ON iii. EXTENT | | 0 | 1 | 2 | 3 | 0 | 1 | 2 | 3 |

b. DIFFUSE

| | SITE | [✗] R | | | | [✗] L | | | |
|---|---|---|---|---|---|---|---|---|---|
| IN PROFILE i. WIDTH | | O | A | B | C | O | A | B | C |
| ii. EXTENT | | 0 | 1 | 2 | 3 | 0 | 1 | 2 | 3 |
| FACE ON iii. EXTENT | | 0 | 1 | 2 | 3 | 0 | 1 | 2 | 3 |

**3D. PLEURAL CALCIFICATION**

SITE [✗] R EXTENT          SITE [✗] L EXTENT

| | R EXTENT | | | | | L EXTENT | | | |
|---|---|---|---|---|---|---|---|---|---|
| a. DIAPHRAGM | 0 | 1 | 2 | 3 | a. DIAPHRAGM | 0 | 1 | 2 | 3 |
| b. WALL | 0 | 1 | 2 | 3 | b. WALL | 0 | 1 | 2 | 3 |
| c. OTHER SITES | 0 | 1 | 2 | 3 | c. OTHER SITES | 0 | 1 | 2 | 3 |

PROCEED TO SECTION 4

**4A.** <u>ANY</u> OTHER ABNORMALITIES?

YES [ ] COMPLETE 4B and 4C          NO [✗] PROCEED TO SECTION 5

**4B. OTHER SYMBOLS (OBLIGATORY)**

Report items which may be of present clinical significance in this section.

| O | ax | bu | ca | cn | co | cp | cv | di | ef | em | es | fr | hi | ho | id | ih | kl | pi | px | rp | tb |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

(SPECIFY od.)

[ OD ]   _____

Date Personal Physician notified?
MONTH DAY YR

**4C. OTHER COMMENTS**

_____
_____
_____
_____

SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C.   YES [ ] NO [ ]   PROCEED TO SECTION 5

**5. FILM READER'S INITIALS** [ JTS ]          DATE OF READING   MONTH DAY YR 12 02 03

# HOLLAND BIEBER & ASSOCIATES, INC.

**Patient: Amason, David**
SS# : 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

Age: 57   Height(in) 71   Weight(lb): 220

Gender: Male   Race: Caucasian

Date: 12/02/03
*Physician: Dr. J. Segarra*
Technician: VA/MA

---

## Pulmonary Function Analysis

### Spirometry



F V Loop

Volume Time

| | | Ref | Pre Meas | Pre % Ref |
|---|---|---|---|---|
| FVC | Liters | 4.93 | 4.38 | 89 |
| FEV1 | Liters | 3.87 | 3.13 | 81 |
| FEV1/FVC | % | 78 | 71 | |
| FEF25-75% | L/sec | 3.64 | 2.13 | 58 |
| FET100% | Sec | | 13.90 | |
| PEF | L/sec | | 7.60 | |

### Lung Volumes



N2 Wash

| | | Ref | | |
|---|---|---|---|---|
| VC | Liters | 4.93 | 4.40 | 89 |
| IC | Liters | 3.25 | 3.36 | 103 |
| ERV | Liters | 1.63 | (1.04) | (64) |
| FRC N2 | Liters | 3.72 | 3.12 | 84 |
| RV | Liters | 2.23 | 2.08 | 93 |
| TLC | Liters | 7.16 | 6.48 | 90 |
| RV/TLC | % | 32 | 32 | |

### Diffusion

DLCO

| | | Ref | | |
|---|---|---|---|---|
| DLCO | mL/mmHg/min | 36.1 | (26.9) | (75) |
| VA | Liters | | 6.38 | |
| DLCO/VA | mL/mHg/min/L | 5.14 | 4.22 | 82 |
| IVC | Liters | | 4.31 | |
| BHT | Sec | | 10.57 | |

Comments:
Good effort, followed instructions well

Any Info: Hossley&Embry
ity: Corpus Christi, TX

PF Reference: Crapo/Hsu

HOLLAND BIEBER & ASSOCIATES, INC.

Date: 12/02/03   Hossley&Embry          Pre

Flow Volume Loop --- Amason, David - 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

|  | Ref | Best | % Ref | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|---|---|
| FVC | 4.93 | 4.38 | 89 | 4.16 | 4.37 | 4.20 | 4.38 |
| FEV1 | 3.87 | 3.13 | 81 | 2.99 | 3.13 | 3.10 | 3.13 |
| FEV1/FVC | 78 | 71 |  | 72 | 72 | 74 | 71 |
| FEF25-75% | 3.64 | 2.13 | 58 | 2.09 | 2.14 | 2.34 | 2.13 |
| PEF |  | 7.60 |  | 7.44 | 7.40 | 7.60 | 7.15 |

**HOLLAND BIEBER & ASSOCIATES, INC.**

Date: 12/02/03    Hossley&Embry          Pre

Single Breath DLCO --- Amason, David - 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

|  | Ref | Best | % Ref | 1 |
|---|---|---|---|---|
| DLCO | 36.1 | 27.1 | 75 | 27.1 |
| DL Adj | 36.1 | 27.1 | 75 | 27.1 |
| IVC |  | 4.34 |  | 4.34 |
| VA |  | 6.49 |  | 6.49 |
| DL/VA Adj |  | 4.18 |  | 4.18 |

**HOLLAND BIEBER & ASSOCIATES, INC.**

Date: 12/02/03    Hossley&Embry            Pre

Single Breath DLCO — Amason, David - 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

|          | Ref  | Best | % Ref | 1    | 2    |
|----------|------|------|-------|------|------|
| DLCO     | 36.1 | 26.9 | 75    | 27.1 | 26.7 |
| DL Adj   | 36.1 | 26.9 | 75    | 27.1 | 26.7 |
| IVC      |      | 4.31 |       | 4.34 | 4.28 |
| VA       |      | 6.38 |       | 6.49 | 6.26 |
| DL/VA Adj|      | 4.22 |       | 4.18 | 4.26 |

**Robert K. Emerson, M.D.**
**North Austin Medical Center**
**Pulmonary Division-1 South**
**12221 North Mopac Expressway**
**(512) 901-1111**

**JOE ARREZOLA**                                           **APRIL 14, 2004**
**SS# 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**                                         **DOB: 03/16/49**

### PULMONARY CONSULTATION

**HISTORY OF PRESENT ILLNESS:**  A 55-year-old male with history of occupational exposure comes for pulmonary evaluation.  He denies cough, sputum, wheezing, or shortness of breath.

**OCCUPATIONAL HISTORY:**  From 1969 to present  Reynolds Metal.  Laborer and machine operator.  He sandblasted linings of pots for six months.  He worked in the cast house unloading boxcars of shredded aluminum.  He shoveled bauxite, transferred bauxite from one end of the plant to the other since 1990.  He transferred on a conveyor belt.  (Bauxite contained silica. ) He says dust was everywhere.  He worked around insulated paint.  He worked around furnaces. Mostly wore a mask in later years.

**SOCIAL HISTORY:**  Smoking; 33 years, one-half to one pack a day.  Continues to smoke a half a pack a day.

**PAST MEDICAL HISTORY:** Negative.

**MEDICATIONS:** None.

**ALLERGIES:** None.

**FAMILY HISTORY:** Noncontributory.

**REVIEW OF SYSTEMS:** Negative.

**JOE ARREZOLA**
**PULMONARY CONSULTATION**
**APRIL 14, 2004**
**Page Two**

**PHYSICAL EXAMINATION:**

| | |
|---|---|
| VITAL SIGNS: | Blood pressure is 162/100. The pulse is 80 and regular. |
| HEENT: | Negative. |
| NECK: | No clubbing or adenopathy. The trachea is midline. |
| CHEST: | Lungs are clear. |
| CVS: | The heart has regular rhythm, without murmurs or gallops. |

**PULMONARY FUNCTION STUDIES:** Baseline spirometry, lung volumes, and carbon monoxide diffusion corrected for volume are normal.

**CHEST X-RAY:** The film is of adequate quality. There is an increase in the interstitial pattern in all lung zones bilaterally of small, rounded opacities. I detect no pleural disease. The hilar, mediastinal, and cardiovascular structures appear normal. This is compared with the film of August 1, 2001.

**IMPRESSION:**

1. PULMONARY SILICOSIS BASED ON EXPOSURE HISTORY, APPROPRIATE LATENCY PERIOD, AND RADIOLOGIC CHANGES.
2. HYPERTENSION.

**RECOMMENDATIONS:**
I reviewed the chest x-rays and pulmonary function studies with the patient. I advised that he have an annual chest x-ray because of the potential for progression of his lung disease, and the increased risk for neoplasm development. Blood pressure follow-up advised.

Robert K. Emerson, M.D.

RKE/bn



*Jay T. Segarra, M.D., FACP*          *NIOSH Certified B-Reader*

*Board certified in Internal Medicine, Pulmonary Diseases, & Critical Care*
Camellia Place • 2123 Government Street • Ocean Springs, Mississippi 39564
Phone/Fax (228) 872-2411

## OCCUPATIONAL LUNG DISEASE EVALUATION

September 5, 2003

Barber, Franklin
403 CR
Refugio, TX 78377

HE/CC/LH 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
DOB: 06/03/38

**HISTORY:** This is a 65 year old retired laborer who reports exposure to asbestos dust, sandblasting dust, and aluminum dust during his work in a bauxite reduction plant from 1962-1992, for thirty years. He began his career at this plant as a laborer, then became an equipment cleaner, and then an equipment tester. He removed asbestos insulation to "pull heads." He knocked off the asbestos with wrenches. He did not use any respiratory protection. He states that sandblasters worked all over the plant and he had daily exposure to sandblasting without respiratory protection. He sometimes had to shovel and clean up the blasters pad area. He also cleaned out castables in the kilns that had sand in them. Prior to 1962, he spent five years as a butcher from 1956-1961. He graduated from high school in 1956. He smoked two packages of cigarettes daily for fifteen years, beginning at the age of 16, and quitting in 1969 (30 pack-years). His father died of liver cancer at the age of 76. His mother died of a stroke at the age of 82. The patient himself has a past medical history of type II diabetes, hypertension, benign prostate disease, hyperlipidemia, and diabetic neuropathy. Four years ago he suffered a staph infection of his spinal cord, which required several surgeries and left him disabled. He had bilateral broken ribs in the 1960s and 1970s. He had a hernia repair at the age of five. He had surgery for bone spurs in the 1980s and carpal tunnel surgery in the 1980s. He was hospitalized recently for shortness of breath and rib pain, but believes that this was due to a partial colon obstruction. Current medications include insulin, Lipitor, Minocycline, Lasix, potassium supplements, Amitriptyline, Coumadin, Proscar, Flomax, Demadex, Neurontin, and coated aspirin. On general systems review the patient reports a two-month history of moderate dyspnea upon exertion. He can walk a half of a mile on level ground or climb one flight of stairs slowly. He denies wheezing or chronic cough. There has been no recent chest pain other than that previously discussed.

**PHYSICAL EXAM:** This is a pleasant obese man in no respiratory distress at rest. There are multiple vertical scars over the upper thoracic spine. H: 68"; W: 291#; Pulse: 60 and regular; B/P: 164/100; Respirations: 19 per minute and unlabored. Head and neck: No adenopathy or jugular venous distention. Chest: Symmetric expansion.  No obvious chest wall deformities.  Lungs: Auscultation of the chest reveals dry inspiratory crackles at the posterolateral aspects of both lower lung fields, that do not clear with cough or deep breathing.  No wheezes or rhonchi are present.  Heart: Regular rhythm without murmurs, clicks, rubs, or gallops.  Extremities: No clubbing, cyanosis, or edema.

**CHEST X-RAY:** PA and lateral views of the chest dated September 5, 2003 are reviewed for the presence of and classification of pneumoconiosis according to the ILO (1980) classification. Film quality is grade 1. Examination of the lung parenchyma reveals a diffuse bilateral interstitial pattern consisting of irregular and rounded small opacities of size and shape T/P, ILO profusion 2/1 in all six lung zones. Examination of the pleural surfaces reveals circumscribed en face pleural thickening/pleural plaque along the

090603.HE[ca]

Barber, Franklin
Page Two.

**CHEST X-RAY:** (Cont'd)   lateral thoracic walls, extent 2 bilaterally. No pleural calcifications are noted. A high resolution chest CT may be useful in increasing the specificity of the interstitial findings for pneumoconiosis, should this test become clinically indicated due to either increasing pulmonary symptoms or declining lung function. No parenchymal infiltrates, nodules, or masses are present. The trachea is midline. Mild cardiomegaly is present. The costophrenic angles are intact. There are healed fractures of ribs 5, 6, and 7 posteriorly on the left and 6 and 7 posteriorly on the right. Mild honeycombing is present. The mediastinal structures are unremarkable. There are no other significant intrathoracic findings. Compared to an earlier film dated 06/25/02, there has been no interval change.

**PULMONARY FUNCTION TESTING:** Performed in Corpus Christi, TX on September 5, 2003 using Crapo/Hsu predicted values. Forced vital capacity (FVC) is 1.68 liters (l.), or 39% predicted (pred.). FEV1 is 1.31 l. (39% pred.). FEV1/FVC ratio is 78%. FEF 25%-75% is 1.18 l./sec. (37% pred.). Slow vital capacity is 1.88 l. (43% pred.). TLC is 3.21 l. (48% pred.). DlCO is 54% pred., based on an IVC of 1.77 l. Inspection of the volume-time curves, flow-volume loops and diffusion graphs reveals good performance and reproducibility during those portions of the test. These pulmonary function tests demonstrate a severe restrictive defect, without obvious air flow obstruction. The DICO is moderately reduced, although it is still in proportion to the reduction in lung volume. Would recommend repeat pulmonary function testing, preferably with plethysmography, at time of next clinical follow-up.

**DIAGNOSIS/IMPRESSION:** [123456789]

1.   Mixed-dust pneumoconiosis (asbestosis and silicosis), based on the appearance of the chest x-ray and exposure history. This condition is causing a significant restrictive defect on pulmonary function testing. Further radiographic correlation is suggested.

2.   Exogenous obesity. This condition is contributing to the reduction in lung volumes.

3.   Cardiomegaly without clinical evidence for congestive heart failure.

4.   Bilateral healed rib fractures.

5.   History of spinal cord infection, 1999, with resultant physical disability.

6.   History of type II diabetes and hypertension.

**PROGNOSIS/RECOMMENDATION:** Due to the long latency period between exposure to asbestos and silica dust and the onset of clinically significant silica-related and/or asbestos-related disease, the patient is at increased risk for the development of bronchogenic carcinoma, mesothelioma, certain other cancers, tuberculosis, as well as for deterioration in pulmonary function, even in the absence of additional asbestos or silica dust exposure. Since these conditions may occur many years after exposure

090603.HE[ca]

Barber, Franklin
Page Three.

**PROGNOSIS/RECOMMENDATION:** (Cont'd)  has terminated, close clinical follow-up, annual pulmonary re-evaluation, and continued avoidance of tobacco consumption are recommended.

Jay T. Segarra, M.D.

1. Morgan, WKC and GEF, JBL "Asbestos-Related Diseases" in Occupational Lung Diseases, Morgan and Seaton, ed., Third Edition, W. B. Saunders, Philadelphia 1995.
2. "DIAGNOSIS OF NON-MALIGNANT DISEASES RELATED TO ASBESTOS", (Official Statement of the American Thoracic Society), American Review of Respiratory Disease 1986: 134: 363-368.
3. "Asbestos-related Disorders" in Occupational Lung Disorders, W. Raymond Parkes, ed.; Third Edition; Buttersworth-Heinemann Ltd., London 1994.
4. Rom, William N.; "Asbestos-Related Diseases" in Environmental & Occupational Medicine, pps 72-77, 2d.Ed, Little Brown & Co., 1992.
5. Ernst P., Bourhean J. and Becklake M.R. "Pleural Abnormality as a Cause of Impairment and Disability" in The Third Wave of Asbestos Disease: Annals of the New York Academy of Sciences, Volume 643, New York, NY
6. Health Effects of Occupational Exposure to Respirable Crystalline Silica, National Institute for Occupational Safety and Health, Publication No. 2002-129, April 2002
7. Silica and Silica Induced Lung Diseases, Castranova V, Vallyathan V, Wallace W, CRC Press 1996 Boca Raton, FL.
8. Goldsmith D, "Silica Exposure and Pulmonary Cancer" in Epidemiology of Lung Cancer, ed. Sammett J, Marcel M. Decker, 1994.
9. Recommendations For Control Of Occupational Safety and Health Hazards... Foundries, National Institute for Occupational Safety and Health, Division of Standards Development and Technology Transfer, Publication No. 85-116, September 1985

090603.HE[ca]

**Jay T. Segarra, M.D., FACP**  
**NIOSH Certified B-Reader**

Camellia Place • 2123 Government Street • Ocean Springs, Mississippi 39564  
Phone/Fax (228) 872-2411  
*Board certified in Internal Medicine, Pulmonary Diseases, & Critical Care*

*Barber Franklin*

| WORKER'S Social Security Number | TYPE OF READING | FACILITY IDENTIFICATION |
|---|---|---|

SSN: 4 5 7 5 8 9 3 4 4    A ☒ P    HE/CC/LM

| 1A. DATE OF X-RAY | 1B. FILM QUALITY | If Not Grade 1 Give Reason | 1C. IS FILM COMPLETELY NEGATIVE? |
|---|---|---|---|
| MONTH DAY YR 07 03 03 | ☒ 2 3 U/R | _____ | YES ☐ Proceed to Section 5    NO ☒ Proceed to Section 2 |

**2A. ANY PARENCHYMAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**  
YES ☒ COMPLETE 2B and 2C    NO ☐ PROCEED TO SECTION 3

**2B. SMALL OPACITIES**

a. SHAPE/SIZE

| PRIMARY | SECONDARY |
|---|---|
| p    s | ☒ s |
| q    ☒ | q    t |
| r    u | r    u |

b. ZONES

| ☒ | ☒ |
| ☒ | ☒ |
| ☒ | ☒ |
| R | L |

c. PROFUSION

| 0/- | 0/0 | 0/1 |
| 1/0 | 1/1 | 1/2 |
| 2/1 ☒ | 2/2 | 2/3 |
| 3/2 | 3/3 | 3+ |

**2C. LARGE OPACITIES**

SIZE ☒ A B C

PROCEED TO SECTION 3

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**  
YES ☒ COMPLETE 3B, 3C and 3D    NO ☐ PROCEED TO SECTION 4

**3B. PLEURAL THICKENING**

a. DIAPHRAGM (plaque)  
SITE ☒ R L

b. COSTOPHRENIC ANGLE  
SITE ☒ R L

**3B. PLEURAL THICKENING . . . Chest Wall**

a. CIRCUMSCRIBED (plaque)

| SITE | O ☒ | | | | O ☒ | | | |
|---|---|---|---|---|---|---|---|---|
| IN PROFILE i. WIDTH | ☒ | A | B | C | ☒ | A | B | C |
| ii. EXTENT | ☒ | 1 | 2 | 3 | ☒ | 1 | 2 | 3 |
| FACE ON iii. EXTENT | 0 | 1 | ☒ | 3 | 0 | 1 | ☒ | 3 |

b. DIFFUSE

| SITE | ☒ | R | | | ☒ | L | | |
|---|---|---|---|---|---|---|---|---|
| IN PROFILE i. WIDTH | O | A | B | C | O | A | B | C |
| ii. EXTENT | 0 | 1 | 2 | 3 | 0 | 1 | 2 | 3 |
| FACE ON iii. EXTENT | 0 | 1 | 2 | 3 | 0 | 1 | 2 | 3 |

**3D. PLEURAL CALCIFICATION**

| | SITE ☒ R EXTENT | | | | | SITE ☒ L EXTENT | | | |
|---|---|---|---|---|---|---|---|---|---|
| a. DIAPHRAGM . . . . . . . | 0 | 1 | 2 | 3 | a. DIAPHRAGM . . . . . . . | 0 | 1 | 2 | 3 |
| b. WALL . . . . . . . . . . . . | 0 | 1 | 2 | 3 | b. WALL . . . . . . . . . . . | 0 | 1 | 2 | 3 |
| c. OTHER SITES . . . . . . . | 0 | 1 | 2 | 3 | c. OTHER SITES . . . . . . | 0 | 1 | 2 | 3 |

PROCEED TO SECTION 4

**4A. ANY OTHER ABNORMALITIES?**  
YES ☒ COMPLETE 4B and 4C    NO ☐ PROCEED TO SECTION 5

**4B. OTHER SYMBOLS (OBLIGATORY)**

Report items which may be of present clinical significance in this section.

O ax bu ca cn ☒ cp cv di ef em es ☒ hi ☒ id ih kl pi px rp tb

(SPECIFY od.)

OD

Date Personal Physician notified?  
MONTH DAY YR

**4C. OTHER COMMENTS** _____

_____

_____

_____

SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C.    YES / NO    PROCEED TO SECTION 5

**5. FILM READER'S INITIALS** JTS    **DATE OF READING** MONTH DAY YR 07 03 03


## HOLLAND BIEBER & ASSOCIATES, INC.

**Patient: Barber, Franklin**
SS# : 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

Age: 65   Height(in): 68   Weight(lb): 291

Gender: Male   Race: Caucasian

Date: 09/05/03
**Physician: Dr. J. Segarra**
Technician: VA/MA

---

## Pulmonary Function Analysis



### Spirometry

| | | Ref | Pre Meas | Pre % Ref |
|---|---|---|---|---|
| FVC | Liters | 4.34 | 1.68 | 39 |
| FEV1 | Liters | 3.39 | 1.31 | 39 |
| FEV1/FVC | % | 78 | 78 | |
| FEF25-75% | L/sec | 3.19 | 1.18 | 37 |
| FEF50% | L/sec | | 1.58 | |
| PEF | L/sec | | 4.20 | |

### Lung Volumes

| | | Ref | | |
|---|---|---|---|---|
| VC | Liters | 4.34 | 1.88 | 43 |
| IC | Liters | 2.86 | 1.58 | 55 |
| ERV | Liters | 1.43 | 0.13 | 9 |
| FRC N2 | Liters | 3.46 | 1.63 | 47 |
| RV | Liters | 2.24 | 1.32 | 59 |
| TLC | Liters | 6.63 | 3.21 | 48 |
| RV/TLC | % | 34 | 41 | |

### Diffusion

| | | Ref | | |
|---|---|---|---|---|
| DLCO | mL/mmHg/min | 31.4 | 16.9 | 54 |
| VA | Liters | | 3.19 | |
| DLCO/VA | mL/mHg/min/L | 4.87 | 5.29 | 109 |
| IVC | Liters | | 1.77 | |

Comments:
**Good effort for all PFTs**

*Any Info: Hossley&Embry*
City: Corpus Christi, TX

PF Reference: Crapo/Hsu

**HOLLAND BIEBER & ASSOCIATES,INC.**

**Date: 09/05/03    Hossley&Embry              Pre**

**Flow Volume Loop  ---  Barber, Franklin - 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**

|          | Ref  | Best | % Ref | 1    | 2    | 3    | 4    |
|----------|------|------|-------|------|------|------|------|
| FVC      | 4.34 | 1.68 | 39    | 1.65 | 1.72 | 1.68 | 1.59 |
| FEV1     | 3.39 | 1.31 | 39    | 1.29 | 1.33 | 1.31 | 1.22 |
| FEV1/FVC | 78   | 78   |       | 78   | 77   | 78   | 76   |
| FEF25-75%| 3.19 | 1.18 | 37    | 1.19 | 1.22 | 1.18 | 0.99 |
| PEF      |      | 4.28 |       | 3.83 | 3.35 | 4.12 | 4.28 |

**HOLLAND BIEBER & ASSOCIATES,INC.**

**Date: 09/05/03    Hossley&Embry            Pre**

**Single Breath DLCO  ---  Barber, Franklin - 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**

|  | Ref | Best | % Ref | 1 |
|---|---|---|---|---|
| DLCO | 31.4 | 17.2 | 55 | 17.2 |
| DL Adj | 31.4 | 17.2 | 55 | 17.2 |
| IVC |  | 1.73 |  | 1.73 |
| VA |  | 3.25 |  | 3.25 |
| DL/VA Adj |  | 5.28 |  | 5.28 |

**HOLLAND BIEBER & ASSOCIATES,INC.**

**Date: 09/05/03    Hossley&Embry            Pre**

**Single Breath DLCO  —  Barber, Franklin - 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**

|          | Ref  | Best | % Ref | 1    | 2    |
|----------|------|------|-------|------|------|
| DLCO     | 31.4 | 16.9 | 54    | 17.2 | 16.6 |
| DL Adj   | 31.4 | 16.9 | 54    | 17.2 | 16.6 |
| IVC      |      | 1.77 |       | 1.73 | 1.81 |
| VA       |      | 3.19 |       | 3.25 | 3.14 |
| DL/VA Adj|      | 5.29 |       | 5.28 | 5.38 |





**Jay T. Segarra, M.D., FACP**          *NIOSH Certified B-Reader*

*Board certified in Internal Medicine, Pulmonary Diseases, & Critical Care*
Camellia Place • 2123 Government Street • Ocean Springs, Mississippi 39564
Phone/Fax (228) 872-2411

## OCCUPATIONAL LUNG DISEASE EVALUATION

December 2, 2003

DeLeon, Robert
4805 Jean St
Corpus Christi TX 78411

HE/CC 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
DOB: 01/24/38

**HISTORY:** This is a 65 year old man who reports exposure to silica dust during his work in paint and glass factories during the 1960s. He was a radar operator and airman in the Airforce from 1957-1961. From 1962-1963 he worked in a hospital and in a retail store. He worked as an outdoor construction laborer for 2-3 months in 1963. From 1963-1969 he worked as a glazier's helper. He fabricated glass doors. He wore no respiratory protection during this time. He worked in a metals plant from 1969-1999 as a laborer, truck driver, and heavy equipment operator. He worked around insulated storage tanks. He dumped insulation from tanks into a dump truck. He worked around insulators. He took parts to a blasting yard and had to wait while they were sandblasted and then returned the parts. He did this daily for 20 years. He used a backhoe to clean up used sand from the sandblasting area without respiratory protection. He did not wear a mask until the mid 1970s and then he wore it only on occasion. He smoked one-half package of cigarettes daily for 43 years, quitting approximately three months ago. There is a family history of prostate cancer in his father. He has a personal past medical history of type II diabetes, allergies, and colon cancer. He was treated surgically for colon cancer in 1993 and has had no recurrence to date. Current medications include Glypizide and Allegra. On general systems review he denies all respiratory symptoms at this time with the exception of occasional sinus congestion.

**PHYSICAL EXAM:** This is a pleasant, overweight Hispanic man in no respiratory distress at rest. H: 76"; W: 278#; Pulse: 76 and regular; B/P: 104/66; Respirations: 16 and unlabored; Head and neck: No adenopathy or jugular venous distention. Chest: Symmetric expansion. No obvious chest wall deformities. Lungs: Normal palpation and percussion. Clear to auscultation anteriorly and posteriorly to the bases. No rales, wheezes or rhonchi are heard. Heart: Regular rhythm, without murmurs, clicks, rubs, or gallops. Extremities: No clubbing, cyanosis, or edema.

**CHEST X-RAY:** PA and lateral views of the chest dated 12/02/03 are reviewed for the presence of and classification of pneumoconiosis according to the ILO (1980) classification. Film quality is grade 1. Examination of the lung parenchyma reveals a diffuse bilateral interstitial pattern consisting of rounded and irregular small opacities of size and shape Q/S, ILO profusion 1/1 in all six lung zones. Examination of the pleural surfaces reveals diaphragmatic pleural plaque without obvious calcification. No parenchymal infiltrates, nodules, or masses are present. The trachea is midline. The heart size is normal and the mediastinal structures are unremarkable. There are no other significant intrathoracic findings. Compared to an earlier film dated 06/24/02, there has been no interval change.

**PULMONARY FUNCTION TESTING:** Performed in Corpus Christi, TX on 12/02/03 using Crapo/Hsu predicted values. Forced vital capacity (FVC) is 6.27 liters (l.), or 113% predicted (pred.). FEV1 is 4.78 l. (114% pred.). FEV1/FVC ratio is 76%. FEF 25%-75% is 4.00 l./sec. (111% pred.). SVC is 6.27 l. (113% pred.). TLC is 8.77 l. (107% pred.). DICO is 85% pred., based on an IVC of 6.00 l.

)eLeon, Robert
Page Two.

**PULMONARY FUNCTION TESTING:** (Cont'd)   Inspection of the volume-time curves, flow-volume loops and diffusion graphs reveals good performance and reproducibility during those portions of the test.   These pulmonary function tests are normal.

**DIAGNOSIS/IMPRESSION:** [123456789] Mixed-dust pneumoconiosis (silicosis and asbestosis), based on the exposure history, and the chest x-ray changes.   This condition is causing no objective physiologic impairment at this time.

**PROGNOSIS/RECOMMENDATION:**   Due to the long latency period between exposure to asbestos and silica dust and the onset of clinically significant silica-related and/or asbestos-related disease, the patient is at increased risk for the development of bronchogenic carcinoma, mesothelioma, certain other cancers, tuberculosis, as well as for deterioration in pulmonary function, even in the absence of additional asbestos or silica dust exposure.   Since these conditions may occur many years after exposure has terminated, close clinical follow-up, annual pulmonary re-evaluation, and continued avoidance of tobacco consumption are recommended.

Jay T. Segarra, M.D., FACP

1.   Morgan, WKC and GEF, JBL "Asbestos-Related Diseases" in <u>Occupational Lung Diseases</u>, Morgan and Seaton, ed., Third Edition, W. B. Saunders, Philadelphia 1995.
2.   "DIAGNOSIS OF NON-MALIGNANT DISEASES RELATED TO ASBESTOS", (Official Statement of the American Thoracic Society), <u>American Review of Respiratory Disease</u> 1986: 134: 363-368.
3.   "Asbestos-related Disorders" in <u>Occupational Lung Disorders</u>, W. Raymond Parkes, ed.; Third Edition; Buttersworth-Heinemann Ltd., London 1994.
4.   Rom, William N.; "Asbestos-Related Diseases" in <u>Environmental & Occupational Medicine</u>, pps 72-77, 2d.Ed, Little Brown & Co., 1992.
5.   Ernst P., Bourhean J. and Becklake M.R. "Pleural Abnormality as a Cause of Impairment and Disability" in <u>The Third Wave of Asbestos Disease:</u> Annals of the New York Academy of Sciences, Volume 643, New York, NY
6.   <u>Health Effects of Occupational Exposure to Respirable Crystalline Silica</u>, National Institute for Occupational Safety and Health, Publication No. 2002-129, April 2002
7.   <u>Silica and Silica Induced Lung Diseases</u>, Castranova V, Vallyathan V, Wallace W, CRC Press 1996 Boca Raton, FL.
8.   Goldsmith D, "Silica Exposure and Pulmonary Cancer" in <u>Epidemiology of Lung Cancer</u>, ed. Sammett J, Marcel M. Decker, 1994.
9.   <u>Recommendations For Control Of Occupational Safety and Health Hazards... Foundries</u>, National Institute for Occupational Safety and Health, Division of Standards Development and Technology Transfer, Publication No. 85-116, September 1985

**Jay T. Segarra, M.D., FACP**　　　　　　　　　　　　*NIOSH Certified B-Reader*

Camellia Place • 2123 Government Street • Ocean Springs, Mississippi 39564
Phone/Fax (228) 872-2411

*Board certified in Internal Medicine, Pulmonary Diseases, & Critical Care*

DeLeon Robert

| WORKER'S Social Security Number | TYPE OF READING | FACILITY IDENTIFICATION |
|---|---|---|
| 4 5 3 5 0 5 3 9 5 | A [X] P | H E C C |

| 1A. DATE OF X-RAY | 1B. FILM QUALITY | If Not Grade 1 Give Reason | 1C. IS FILM COMPLETELY NEGATIVE? |
|---|---|---|---|
| MONTH DAY YEAR 7 2 0 2 0 3 | [X] 2 3 U/R | | YES ☐ Proceed to Section 5   NO [X] Proceed to Section 2 |

**2A. ANY PARENCHYMAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**  YES [X] COMPLETE 2B and 2C　　NO ☐ PROCEED TO SECTION 3

**2B. SMALL OPACITIES**

a. SHAPE/SIZE

| PRIMARY | | SECONDARY | |
|---|---|---|---|
| p | s | p | [X] |
| [X] | t | q | t |
| r | u | r | u |

b. ZONES

| R | L |
|---|---|
| [X] | [X] |
| [X] | [X] |
| [X] | [X] |

c. PROFUSION

| 0/– | 0/0 | 0/1 |
|---|---|---|
| 1/0 | [X] | 1/2 |
| 2/1 | 2/2 | 2/3 |
| 3/2 | 3/3 | 3+ |

**2C. LARGE OPACITIES**

SIZE [X] A B C

PROCEED TO SECTION 3

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**  YES [X] COMPLETE 3B, 3C and 3D　　NO ☐ PROCEED TO SECTION 4

**3B. PLEURAL THICKENING**

a. DIAPHRAGM (plaque)

SITE O [X] [X]

b. COSTOPHRENIC ANGLE

SITE [X] R L

**3B. PLEURAL THICKENING . . . Chest Wall**

a. CIRCUMSCRIBED (plaque)

| | O [X] R | O | A | B | C | O L | O | A | B | C |
|---|---|---|---|---|---|---|---|---|---|---|
| IN PROFILE i. WIDTH | | O | A | B | C | | O | A | B | C |
| ii. EXTENT | | 0 | 1 | 2 | 3 | | 0 | 1 | 2 | 3 |
| FACE ON iii. EXTENT | | 0 | 1 | 2 | 3 | | 0 | 1 | 2 | 3 |

b. DIFFUSE

| | O [X] R | O | A | B | C | O L | O | A | B | C |
|---|---|---|---|---|---|---|---|---|---|---|
| IN PROFILE i. WIDTH | | O | A | B | C | | O | A | B | C |
| ii. EXTENT | | 0 | 1 | 2 | 3 | | 0 | 1 | 2 | 3 |
| FACE ON iii. EXTENT | | 0 | 1 | 2 | 3 | | 0 | 1 | 2 | 3 |

**3D. PLEURAL CALCIFICATION**

SITE [X] R EXTENT

| | 0 | 1 | 2 | 3 |
|---|---|---|---|---|
| a. DIAPHRAGM . . . . . . . | 0 | 1 | 2 | 3 |
| b. WALL . . . . . . . . . . . | 0 | 1 | 2 | 3 |
| c. OTHER SITES . . . . . . . | 0 | 1 | 2 | 3 |

SITE [X] L EXTENT

| | 0 | 1 | 2 | 3 |
|---|---|---|---|---|
| a. DIAPHRAGM . . . . . . . | 0 | 1 | 2 | 3 |
| b. WALL . . . . . . . . . . . | 0 | 1 | 2 | 3 |
| c. OTHER SITES . . . . . . . | 0 | 1 | 2 | 3 |

PROCEED TO SECTION 4

**4A. ANY OTHER ABNORMALITIES?**  YES ☐ COMPLETE 4B and 4C　　NO [X] PROCEED TO SECTION 5

**4B. OTHER SYMBOLS (OBLIGATORY)**

Report items which may be of present clinical significance in this section.

| O | ax | bu | ca | cn | co | cp | cv | di | ef | em | es | fr | hi | ho | id | ih | kl | pi | px | rp | tb |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

(SPECIFY od.)

OD

Date Personal Physician notified?

MONTH DAY YR

**4C. OTHER COMMENTS**

SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C.  YES NO   PROCEED TO SECTION 5

**5. FILM READER'S INITIALS** JTS　　　DATE OF READING MONTH DAY YEAR 7 2 0 2 0 3

## *HOLLAND BIEBER & ASSOCIATES, INC.*

**Patient:** DeLeon, Robert L.
SS# : 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

Age: 65    Height(in): 76   Weight(lb): 278

Gender: Male    Race: Hispanic

Date: 12/02/03
*Physician: Dr. J. Segarra*
Technician: VA/MA

---

## *Pulmonary Function Analysis*



F V Loop

Volume Time

### *Spirometry*

| | | Ref | Pre Meas | Pre % Ref |
|---|---|---|---|---|
| FVC | Liters | 5.54 | 6.27 | 113 |
| FEV1 | Liters | 4.21 | 4.78 | 114 |
| FEV1/FVC | % | 76 | 76 | |
| FEF25-75% | L/sec | 3.60 | 4.00 | 111 |
| FET100% | Sec | | 11.63 | |
| PEF | L/sec | | 12.92 | |

### *Lung Volumes*



N2 Wash

| | | | | |
|---|---|---|---|---|
| VC | Liters | 5.54 | 6.27 | 113 |
| IC | Liters | 3.66 | (5.21) | (142) |
| ERV | Liters | 1.83 | (0.87) | (48) |
| FRC N2 | Liters | 4.40 | 3.56 | 81 |
| RV | Liters | 2.67 | 2.50 | 93 |
| TLC | Liters | 8.22 | 8.77 | 107 |
| RV/TLC | % | 34 | 29 | |

### *Diffusion*



DLCO

| | | | | |
|---|---|---|---|---|
| DLCO | mL/mmHg/min | 39.7 | 33.6 | 85 |
| VA | Liters | | 8.55 | |
| DLCO/VA | mL/mmHg/min/L | 4.87 | 3.94 | 81 |
| IVC | Liters | | 6.00 | |
| BHT | Sec | | 10.19 | |

Comments:
Good effort, followed instructions well

*Any Info: Hossley&Embry*
City: Corpus Christi, TX

PF Reference: Crapo/Hsu

HOLLAND BIEBER & ASSOCIATES, INC.

Date: 12/02/03     Hossley&Embry            Pre

Flow Volume Loop  ---  DeLeon, Robert L. - 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

| | Ref | Best | % Ref | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|---|---|
| FVC | 5.54 | 6.27 | 113 | 6.09 | 6.27 | 6.18 | 5.90 |
| FEV1 | 4.21 | 4.78 | 114 | 4.63 | 4.78 | 4.74 | 4.67 |
| FEV1/FVC | 76 | 76 | | 76 | 76 | 77 | 79 |
| FEF25-75% | 3.60 | 4.00 | 111 | 3.81 | 4.00 | 4.00 | 4.30 |
| PEF | | 12.92 | | 11.96 | 12.49 | 12.45 | 12.92 |

HOLLAND BIEBER & ASSOCIATES, INC.

Date: 12/02/03   Hossley&Embry          Pre

Single Breath DLCO — DeLeon, Robert L. - 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

|  | Ref | Best | % Ref | 1 |
|---|---|---|---|---|
| DLCO | 39.7 | 33.7 | 85 | 33.7 |
| DL Adj | 39.7 | 33.7 | 85 | 33.7 |
| IVC |  | 6.01 |  | 6.01 |
| VA |  | 8.44 |  | 8.44 |
| DL/VA Adj |  | 4.00 |  | 4.00 |

**HOLLAND BIEBER & ASSOCIATES, INC.**

Date: 12/02/03    Hossley&Embry            Pre

Single Breath DLCO  —  DeLeon, Robert L. - 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

|  | Ref | Best | % Ref | 1 | 2 |
|---|---|---|---|---|---|
| DLCO | 39.7 | 33.6 | 85 | 33.7 | 33.5 |
| DL Adj | 39.7 | 33.6 | 85 | 33.7 | 33.5 |
| IVC |  | 6.00 |  | 6.01 | 5.99 |
| VA |  | 8.55 |  | 8.44 | 8.65 |
| DL/VA Adj |  | 3.94 |  | 4.00 | 3.88 |



*Jay T. Segarra, M.D., FACP*                               *NIOSH Certified B-Reader*

*Board certified in Internal Medicine, Pulmonary Diseases, & Critical Care*
Camellia Place • 2123 Government Street • Ocean Springs, Mississippi 39564
Phone/Fax (228) 872-2411

**OCCUPATIONAL LUNG DISEASE EVALUATION**                    September 6, 2003

Duran, Jr., Evaristo                                        HE/CC/LH 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
P.O. Box 519/225 Stewart St.                               DOB: 10/25/28
Gregory, TX 78359-0519

**HISTORY:** This is a 74 year old retired aluminum worker who reports exposure to aluminum dust, asbestos dust, and sand dust, as well as other gases, chemicals, metal fumes, and welding material during his work in an aluminum plant from 1953-1981. This plant was a bauxite reduction plant. He started as a laborer and then worked as a pot tender. He cleaned the baths that were between the pots. He cleaned up asbestos debris and sand. He did recovery of scrap metals. He broke pots with a machine to put ore into them. He says that he had daily exposure to asbestos dust from the "channels and the legs." He worked around sandblasters as an electro-tender on a regular basis. He used a sandblaster and wore a hood. He swept between the pots when there was a good deal of sand and dust, using a blower. He retired in 1984. He is a lifelong nonsmoker. His father died of a gunshot wound. His mother died of a neck tumor in her sixties. He had a sister who died of lung cancer. The patient himself has a past medical history of type II diabetes, hyperlipidemia, and hypertension. He had a cholecystectomy twenty years ago and eye surgery ten years ago. Current medications include Actos, Glyburide, and Glucophage. On general systems review the patient denies all respiratory symptoms. He has no problem with exercise tolerance and in fact, uses a stair-stepper every day for thirty minutes. He can walk several miles on level ground. He gets hoarse occasionally.

**PHYSICAL EXAM:** H: 70"; W: 198#; Pulse: 76 and regular; B/P: 200/96. Head and neck: No adenopathy or jugular venous distention. Chest: Symmetric expansion. No obvious chest wall deformities. Lungs: Normal palpation and percussion. Clear to auscultation anteriorly and posteriorly to the bases. No rales, wheezes or rhonchi are heard. Heart: Regular rhythm, without murmurs, clicks, rubs, or gallops. Extremities: No clubbing, cyanosis, or edema.

**CHEST X-RAY:** PA and lateral views of the chest dated September 6, 2003 are reviewed for the presence of and classification of pneumoconiosis according to the ILO (1980) classification. Film quality is grade 1. Examination of the lung parenchyma reveals a diffuse bilateral interstitial pattern consisting of irregular and rounded small opacities of size and shape T/P, ILO profusion 1/1 in all six lung zones. Examination of the pleural surfaces reveals bilateral diaphragmatic pleural plaques with probable calcification, extent 1 bilaterally. There are multiple anterior osteophytes over the thoracic spine. Both the major and minor fissures are thickened. No parenchymal infiltrates, nodules, or masses are present. The trachea is midline. The heart size is normal. The mediastinal structures are unremarkable. There are no other significant intrathoracic findings. Compared to an earlier film dated 06/21/02, there has been no interval change.

**PULMONARY FUNCTION TESTING:** Performed in Corpus Christi, TX on September 6, 2003 using Crapo/Hsu predicted values. Forced vital capacity (FVC) is 3.69 liters (l.), or 83% predicted (pred.). FEV1 is 3.00 l. (89% pred.). FEV1/FVC ratio is 81%. FEF 25%-75% is 3.44 l./sec. (116% pred.). Slow vital capacity is 3.84 l. (86% pred.). TLC is 5.38 l. (76% pred.). DlCO is 63% pred., based on an IVC of 3.56 l. Inspection of the volume-time curves, flow-volume loops

Duran, Jr., Evaristo
Page Two.

**PULMONARY FUNCTION TESTING:** (Cont'd)  and diffusion graphs reveals good performance and reproducibility during those portions of the test. These pulmonary function tests demonstrate a very slight restrictive defect, with mildly reduced diffusion capacity, but no air flow obstruction.

**DIAGNOSIS/IMPRESSION:** [123456789]

1.   Mixed-dust pneumoconiosis (asbestosis and silicosis), based on the appearance of the chest x-ray and exposure history. In addition, the reduction in diffusion capacity represents physiologic correlation for interstitial radiographic abnormalities. This condition is probably causing the slight reduction in lung volumes, as well as the reduction in diffusion capacity.

2.   Degenerative changes, thoracic spine.

3.   Systolic hypertension, elevated blood pressure in a subject with a history of diabetes. Clinical follow-up is strongly advised.

**PROGNOSIS/RECOMMENDATION:**   Due to the long latency period between exposure to asbestos and silica dust and the onset of clinically significant silica-related and/or asbestos-related disease, the patient is at increased risk for the development of bronchogenic carcinoma, mesothelioma, certain other cancers, tuberculosis, as well as for deterioration in pulmonary function, even in the absence of additional asbestos or silica dust exposure. Since these conditions may occur many years after exposure has terminated, close clinical follow-up, annual pulmonary re-evaluation, and continued avoidance of tobacco consumption are recommended.

Jay T. Segarra, M.D.

1.   Morgan, WKC and GEF, JBL "Asbestos-Related Diseases" in <u>Occupational Lung Diseases</u>, Morgan and Seaton, ed. Third Edition, W. B. Saunders, Philadelphia 1995.
2.   "DIAGNOSIS OF NON-MALIGNANT DISEASES RELATED TO ASBESTOS", (Official Statement of the American Thoracic Society), <u>American Review of Respiratory Disease</u> 1986: 134: 363-368.
3.   "Asbestos-related Disorders" in <u>Occupational Lung Disorders</u>, W. Raymond Parkes, ed.; Third Edition; Buttersworth-Heinemann Ltd., London 1994.
4.   Rom, William N.; "Asbestos-Related Diseases" in <u>Environmental & Occupational Medicine</u>, pps 72-77, 2d.Ed, Little Brown & Co., 1992.
5.   Ernst P., Bourhean J. and Becklake M.R. "Pleural Abnormality as a Cause of Impairment and Disability" in <u>The Third Wave of Asbestos Disease:</u> Annals of the New York Academy of Sciences, Volume 643, New York, NY
6.   <u>Health Effects of Occupational Exposure to Respirable Crystalline Silica</u>, National Institute for Occupational Safety and Health, Publication No. 2002-129, April 2002
7.   <u>Silica and Silica Induced Lung Diseases</u>, Castranova V, Vallyathan V, Wallace W, CRC Press 1996 Boca Raton, FL.
8.   Goldsmith D, "Silica Exposure and Pulmonary Cancer" in <u>Epidemiology of Lung Cancer</u>, ed. Sammett J, Marcel M. Decker, 1994.
9.   <u>Recommendations For Control Of Occupational Safety and Health Hazards... Foundries</u>, National Institute for Occupational Safety and Health, Division of Standards Development and Technology Transfer, Publication No. 85-116, September 1985

090603.HE[ca]

**Jay T. Segarra, M.D., FACP**  　　　　　　　　　　　　　　　*NIOSH Certified B-Reader*
Camellia Place • 2123 Government Street • Ocean Springs, Mississippi 39564
Phone/Fax (228) 872-2411
*Board certified in Internal Medicine, Pulmonary Diseases, & Critical Care*

DURAN, Jr. Evavisto

| WORKER'S Social Security Number | TYPE OF READING | FACILITY IDENTIFICATION |
|---|---|---|
| 4 5 0 4 0 0 9 8 9 | A [X] P | H E |

| 1A. DATE OF X-RAY | 1B. FILM QUALITY | If Not Grade 1 Give Reason | 1C. IS FILM COMPLETELY NEGATIVE? |
|---|---|---|---|
| MONTH DAY YR 09 06 03 | [X] 2 3 U/R | | YES [ ] Proceed to Section 5 　 NO [X] Proceed to Section 2 |

**2A. ANY PARENCHYMAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**  YES [X] COMPLETE 2B and 2C　　NO [ ] PROCEED TO SECTION 3

**2B. SMALL OPACITIES**

a. SHAPE/SIZE
PRIMARY: p s / q [X] / r u
SECONDARY: s [X] / t / u

b. ZONES:
R [X] [X] L
[X] [X]
[X]

c. PROFUSION:
| 0/– | 0/0 | 0/1 |
| 1/0 | [X] 1/1 | 1/2 |
| 2/1 | 2/2 | 2/3 |
| 3/2 | 3/3 | 3+ |

**2C. LARGE OPACITIES**
SIZE [X] A B C

PROCEED TO SECTION 3

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**  YES [X] COMPLETE 3B, 3C and 3D　　NO [ ] PROCEED TO SECTION 4

**3B. PLEURAL THICKENING**

a. DIAPHRAGM (plaque)
SITE  O [X]

b. COSTOPHRENIC ANGLE
SITE [X] R L

**3B. PLEURAL THICKENING . . . Chest Wall**

a. CIRCUMSCRIBED (plaque)
| | SITE [X] R | | | | SITE [X] L | | |
| IN PROFILE i. WIDTH | O | A | B | C | O | A | B | C |
| ii. EXTENT | 0 | 1 | 2 | 3 | 0 | 1 | 2 | 3 |
| FACE ON iii. EXTENT | 0 | 1 | 2 | 3 | 0 | 1 | 2 | 3 |

b. DIFFUSE
| | SITE [X] R | | | | SITE [X] L | | |
| IN PROFILE i. WIDTH | O | A | B | C | O | A | B | C |
| ii. EXTENT | 0 | 1 | 2 | 3 | 0 | 1 | 2 | 3 |
| FACE ON iii. EXTENT | 0 | 1 | 2 | 3 | 0 | 1 | 2 | 3 |

**3D. PLEURAL CALCIFICATION**

| | SITE O [X] EXTENT | | | | SITE O [X] EXTENT | | |
|---|---|---|---|---|---|---|---|
| a. DIAPHRAGM . . . . . . . | 0 [X] | 2 | 3 | a. DIAPHRAGM . . . . . . | 0 [X] | 2 | 3 |
| b. WALL . . . . . . . . . . . . | [X] | 1 | 2 | 3 | b. WALL . . . . . . . . . . . | [X] | 1 | 2 | 3 |
| c. OTHER SITES . . . . . . . | [X] | 1 | 2 | 3 | c. OTHER SITES . . . . . . | [X] | 1 | 2 | 3 |

PROCEED TO SECTION 4

**4A. ANY OTHER ABNORMALITIES?**  YES [X] COMPLETE 4B and 4C　　NO [ ] PROCEED TO SECTION 5

**4B. OTHER SYMBOLS (OBLIGATORY)**

Report items which may be of present clinical significance in this section.

| O | ax | bu | ca | cn | co | cp | cv | di | ef | em | es | fr | hi | ho | id | ih | kl | [X] | px | rp | tb |

(SPECIFY od.)

OD _____

Date Personal Physician notified?
MONTH DAY YR

**4C. OTHER COMMENTS** _____

_____
_____
_____

SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C.　YES NO 　　PROCEED TO SECTION 5

| 5. FILM READER'S INITIALS | J T S | DATE OF READING | MONTH DAY YR 09 06 03 |



## HOLLAND BIEBER & ASSOCIATES, INC.

**Patient: Duran, Evaristo**
SS # : 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

Age: 74    Height(in): 70   Weight(lb): 198

Gender: Male    Race: Hispanic

Date: 09/05/03
*Physician: Dr. J. Segarra*
Technician: VA/MA

---

## *Pulmonary Function Analysis*



F V Loop

Volume Time

### Spirometry

|  |  | Ref | Pre Meas | Pre % Ref |
|---|---|---|---|---|
| FVC | Liters | 4.45 | 3.69 | 83 |
| FEV1 | Liters | 3.37 | 3.00 | 89 |
| FEV1/FVC | % | 76 | 81 | |
| FEF25-75% | L/sec | 2.95 | 3.44 | 116 |
| FEF50% | L/sec | | 5.35 | |
| PEF | L/sec | | 8.50 | |



N2 Wash

### Lung Volumes

|  |  | Ref | | |
|---|---|---|---|---|
| VC | Liters | 4.45 | 3.84 | 86 |
| IC | Liters | 2.93 | 2.49 | 85 |
| ERV | Liters | 1.47 | 1.27 | 87 |
| FRC N2 | Liters | 3.78 | 2.89 | 77 |
| RV | Liters | 2.54 | 1.54 | 61 |
| TLC | Liters | 7.05 | 5.38 | 76 |
| RV/TLC | % | 37 | 29 | |

DLCO

### Diffusion

|  |  | | | |
|---|---|---|---|---|
| DLCO | mL/mmHg/min | 31.5 | 19.8 | 63 |
| VA | Liters | | 5.23 | |
| DLCO/VA | mL/mHg/min/L | 4.56 | 3.80 | 83 |
| IVC | Liters | | 3.56 | |

Comments:
**Good effort during all PFTS**

*Any Info: Hossley&Embry*
City: Corpus Christi, TX

PF Reference: Crapo/Hsu

**HOLLAND BIEBER & ASSOCIATES,INC.**

Date: 09/05/03   Hossley&Embry          Pre

**Flow Volume Loop  ---  Duran, Evaristo - 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**

|          | Ref  | Best | % Ref | 1    | 2    | 3    |
|----------|------|------|-------|------|------|------|
| FVC      | 4.45 | 3.69 | 83    | 3.59 | 3.69 | 3.41 |
| FEV1     | 3.37 | 3.00 | 89    | 2.96 | 3.00 | 2.69 |
| FEV1/FVC | 76   | 81   |       | 82   | 81   | 79   |
| FEF25-75%| 2.95 | 3.44 | 116   | 3.72 | 3.44 | 2.74 |
| PEF      |      | 8.50 |       | 7.07 | 8.50 | 7.73 |

**HOLLAND BIEBER & ASSOCIATES,INC.**

Date: 09/05/03   Hossley&Embry          Pre

**Single Breath DLCO  --- Duran, Evaristo - 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**

|        | Ref  | Best | % Ref | 1    |
|--------|------|------|-------|------|
| DLCO   | 31.5 | 20.8 | 66    | 20.8 |
| DL Adj | 31.5 | 20.8 | 66    | 20.8 |
| IVC    |      | 3.69 |       | 3.69 |
| VA     |      | 5.47 |       | 5.47 |
| DL/VA Adj |   | 3.81 |       | 3.81 |

**HOLLAND BIEBER & ASSOCIATES,INC.**

Date: 09/05/03    Hossley&Embry          Pre

## Single Breath DLCO  —  Duran, Evaristo - 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

|            | Ref  | Best | % Ref | 1    | 2    |
|------------|------|------|-------|------|------|
| DLCO       | 31.5 | 19.8 | 63    | 20.8 | 18.9 |
| DL Adj     | 31.5 | 19.8 | 63    | 20.8 | 18.9 |
| FVC        |      | 3.56 |       | 3.69 | 3.44 |
| VA         |      | 5.23 |       | 5.47 | 4.99 |
| DL/VA Adj  |      | 3.80 |       | 3.81 | 3.79 |

**DONALD BREYER, M.D., F.A.C.R.**
Certified ILO B Reader

6861 Gunn Drive
Oakland, CA  94611
(510) 339-9204
Fax:  (510) 338-0069

---

June 29, 2002

**DURAN, EVARISTO**          **EXAMINATION:**  Chest X-ray
**SSN:** N/A                 **DATE OF EXAMINATION:** 6/21/02

There are primary p and secondary q type opacities in the upper, mid and lower lung fields with a profusion of 1/0.

IMPRESSION:

1.  Bilateral interstitial changes consistent with silicosis.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**PUBLIC HEALTH SERVICE**

OMB No. 68-5  1322
Expires 3/31/98

CENTERS FOR DISEASE CONTROL
National Institute for Occupational Safety and Health
Federal Mine Safety and Health Act of 1977
Medical Examination Program
**ROENTGENOGRAPHIC INTERPRETATION**

*DURAN, EVARISTO*

NOTE: Please record your interpretation of
a single film by placing an "x" in
the appropriate boxes on this form
and return it promptly to:

Receiving Center
Appalachian Laboratory for
Occupational Safety and Health
Box 4258
Morgantown, West Virginia 26505

WORKER'S Social Security Number        TYPE OF READING        FACILITY IDENTIFICATION

TYPE OF READING: A  [X] P

| 1A. DATE OF X-RAY | 1B. FILM QUALITY | 1C. IS FILM COMPLETELY NEGATIVE? |
|---|---|---|
| MONTH 06 DAY 31 YR 92 | 1 2 [X] U/R  If Not Grade 1 Give Reason: OVER PENETRATED | YES [ ] Proceed to Section 5   NO [X] Proceed to Section 2 |

**2A. ANY PARENCHYMAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**   YES [X] COMPLETE 2B and 2C   NO [ ] PROCEED TO SECTION 3

**2B. SMALL OPACITIES**

a. SHAPE/SIZE
PRIMARY  SECONDARY
[X] s   p [ ] s
q [ ]   [X] t
r [ ]   r [ ]

b. ZONES
[X] [X]
[X] [X]
[X] [X]
R   L

c. PROFUSION
0/- 0/0 0/1
1/0 [X]1/1 1/2
2/1 2/2 2/3
3/2 3/3 3/4

**2C. LARGE OPACITIES**

SIZE [X] A B C

PROCEED TO SECTION 3

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**   YES [ ] COMPLETE 3B, 3C and 3D   NO [X] PROCEED TO SECTION 4

**3B. PLEURAL THICKENING**

a. DIAPHRAGM (plaque)
SITE  0 R L

b. COSTOPHRENIC ANGLE
SITE  0 R L

**3C. PLEURAL THICKENING ... Chest Wall**

a. CIRCUMSCRIBED (plaque)

| | SITE 0 R | SITE 0 L |
|---|---|---|
| IN PROFILE i. WIDTH | O A B C | O A B C |
| ii. EXTENT | 0 1 2 3 | 0 1 2 3 |
| FACE ON iii. EXTENT | 0 1 2 3 | 0 1 2 3 |

b. DIFFUSE

| | SITE 0 R | SITE 0 L |
|---|---|---|
| IN PROFILE i. WIDTH | O A B C | O A B C |
| ii. EXTENT | 0 1 2 3 | 0 1 2 3 |
| FACE ON iii. EXTENT | 0 1 2 3 | 0 1 2 3 |

**3D. PLEURAL CALCIFICATION**

| SITE 0 R | EXTENT | | SITE 0 L | EXTENT |
|---|---|---|---|---|
| a. DIAPHRAGM | 0 1 2 3 | | a. DIAPHRAGM | 0 1 2 3 |
| b. WALL | 0 1 2 3 | | b. WALL | 0 1 2 3 |
| c. OTHER SITES | 0 1 2 3 | | c. OTHER SITES | 0 1 2 3  PROCEED TO SECTION 4 |

**4A. ANY OTHER ABNORMALITIES?**   YES [ ] COMPLETE 4B and 4C   NO [X] PROCEED TO SECTION 5

**4B. OTHER SYMBOLS (OBLIGATORY)**

0 ax bu ca cn co cp cv di ef em es fr hi ho id ih kl pi px rp tb

Report items
which may be of
present clinical
significance
in this section.

(SPECIFY od.)  OD

Date Personal Physician notified?
MONTH  DAY  YR

**4C. OTHER COMMENTS**

SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C.   YES [ ] NO [ ]   PROCEED TO SECTION 5

**5. FILM READER'S INITIALS**  *DAB*   PHYSICIAN'S SOCIAL SECURITY NUMBER*   DATE OF READING  MONTH 06 DAY 24 YR 02

Complete if
social security
number is not
furnished:

NAME (LAST—FIRST—MIDDLE)  *BREYER  DONALD*

STREET ADDRESS *6861 GUNN DRIVE*  CITY *OAKLAND*  STATE *CA*  ZIP CODE *94611*

*Furnishing your social security number is voluntary. Your refusal to provide this number
will not affect your right to participate in this program.

CDC/NIOSH (M) 2.8
REV. 4/80

*Donald Breyer MD*



*Jay T. Segarra, M.D., FACP*                    *NIOSH Certified B-Reader*

---

*Board certified in Internal Medicine, Pulmonary Diseases, & Critical Care*
Camellia Place • 2123 Government Street • Ocean Springs, Mississippi 39564
Phone/Fax (228) 872-2411

**OCCUPATIONAL LUNG DISEASE EVALUATION**

September 6, 2003

Flores, Armando R.
737 Bloomington
Corpus Christi, TX 78416

HE/CC/LH 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
DOB: 12/03/33

**HISTORY:** This is a 69 year old retired brickmason/sandblaster with occupational history as follows: He came to the United States in 1955. He worked in a foundry in Illinois for two years as a mortar mixer from 1955-1957. He worked around insulators. He mixed mortar to be used in molds. He had extensive silica exposure and asbestos exposure as well, without respiratory protection. He worked as a brickmason for eighteen years, from 1958-1976 within oil refineries, naval bases, houses, and projects. He laid bricks on the outside of houses and buildings. He removed and replaced firebricks in kilns, heaters, furnaces, and boilers without respiratory protection. He installed fire places using firebrick and insulation mortar. He worked in an aluminum plant for 22 years, from 1976 until retiring in 1998, as a sandblaster, carpenter, painter, and bricklayer (multi-craft). He wore a mask on occasion. He removed and replaced insulation on pipes and tanks. He removed asbestos insulation and replaced it with non-asbestos insulation. He sandblasted machinery, motors, and frames full-time for about four years. He built and removed scaffolding and cleaned up debris. He removed and replaced firebrick in kilns. He mixed up "castables." He has smoked one package of cigarettes daily for the past 52 years, since beginning at the age of 18 in 1951. For the past ten years, he has been decreasing his smoking consumption and is now down to two cigarettes daily. There is a family history of diabetes in his sister. The patient himself has a past medical history of hypertension, prostate enlargement, macular degeneration, degenerative joint disease of the lumbar spine, and carpal tunnel syndrome. He had back surgery for a herniated disk in 1982 and bilateral carpal tunnel surgery in the past. Current medications include Verapimil, Flomax, Proscar, Cozaar, and Rhinocort. On general systems review the patient reports occasional exercise-induced chest pain lasting five minutes which is relieved by rest. He gets cramps in his legs after walking four or five blocks. He has an episodic productive cough that only lasts for one or two months every year and then goes away completely. He wheezes occasionally and has frequent sinus infections. For the past ten years, he has noted increasing dyspnea upon exertion which is most apparent when doing carpentry work or cement finishing. He also has a hard time climbing stairs or swimming. He begins to get short of breath after walking three or four blocks on level ground.

**PHYSICAL EXAM:** This is a pleasant Hispanic man in no respiratory distress at rest. H: 64"; W: 175#; Pulse: 88 and regular; B/P: 178/82; Respirations: 18 per minute and unlabored. Head and neck: No adenopathy or jugular venous distention. Chest: Symmetric expansion. No obvious chest wall deformities. Lungs: Auscultation of the chest reveals dry inspiratory crackles at the posterolateral aspects of both lower lung fields, that do not clear with cough or deep breathing. No wheezes or rhonchi are present. Heart: Regular rhythm without murmurs, clicks, rubs, or gallops. Extremities: No clubbing, cyanosis, or edema.

**CHEST X-RAY:** PA and lateral views of the chest dated September 6, 2003 are reviewed for the presence of and classification of pneumoconiosis according to the ILO (1980) classification. Film quality is grade 1. Examination of the lung parenchyma reveals a diffuse bilateral interstitial pattern consisting of rounded and irregular small opacities of size and shape Q/S, ILO profusion 1/1 in all six lung zones. Examination of the pleural surfaces reveals circumscribed en face pleural thickening along the lateral thoracic walls, extent 2 bilaterally. There are bilateral diaphragmatic pleural plaques without obvious calcification. No parenchymal infiltrates, nodules, or masses are present. The trachea is midline. The heart size is normal. The mediastinal structures are unremarkable. There are no other significant intrathoracic findings. Compared to an earlier film dated 12/19/02, there has been no interval change.

090603.HE[ca]

Flores, Armando R.
Page Two.

**PULMONARY FUNCTION TESTING:** Performed in Corpus Christi, TX on September 6, 2003 using Crapo/Hsu predicted values. Forced vital capacity (FVC) is 2.26 liters (l.), or 62% predicted (pred.). FEV1 is 1.68 l. (58% pred.). FEV1/FVC ratio is 74%. FEF 25%-75% is 1.22 l./sec. (43% pred.). Slow vital capacity is 2.41 l. (66% pred.). TLC is 4.25 l. (73% pred.). RV/TLC ratio is 43%, indicating the presence of air trapping and accounting for some of the observed reduction in forced vital capacity. DlCO is 99% pred., based on an IVC of 2.47 l. Inspection of the volume-time curves, flow-volume loops and diffusion graphs reveals good performance and reproducibility during those portions of the test. These pulmonary function tests demonstrate a mild combined restrictive and obstructive defect, with reduced midflows, but normal diffusion capacity.

**DIAGNOSIS/IMPRESSION:** [1][2][3][4][5][6][7][8][9]

1.    Mixed-dust pneumoconiosis (silicosis and asbestosis), based on the appearance of the chest x-ray and exposure history. This condition is causing a combined obstructive and restrictive defect on pulmonary function testing.

2.    History of exertional chest pain. Clinical follow-up is advised to rule out the presence of ischemic heart disease.

**PROGNOSIS/RECOMMENDATION:** Due to the long latency period between exposure to silica and asbestos and the onset of clinically significant silica-related and/or asbestos-related disease, the patient is at increased risk for the development of bronchogenic carcinoma, mesothelioma, certain other cancers, tuberculosis, as well as for deterioration in pulmonary function, even in the absence of additional asbestos or silica dust exposure.  Since these conditions may occur many years after exposure has terminated, close clinical follow-up, annual pulmonary re-evaluation, and immediate smoking cessation are strongly recommended.

Jay T. Segarra, M.D.

1.    Morgan, WKC and GEF, JBL "Asbestos-Related Diseases" in <u>Occupational Lung Diseases</u>, Morgan and Seaton, ed., Third Edition, W. B. Saunders, Philadelphia 1995.
2.    "DIAGNOSIS OF NON-MALIGNANT DISEASES RELATED TO ASBESTOS", (Official Statement of the American Thoracic Society), <u>American Review of Respiratory Disease</u> 1986: 134: 363-368.
3.    "Asbestos-related Disorders" in <u>Occupational Lung Disorders</u>, W. Raymond Parkes, ed.; Third Edition; Buttersworth-Heinemann Ltd., London 1994.
4.    Rom, William N.; "Asbestos-Related Diseases" in <u>Environmental & Occupational Medicine</u>, pps 72-77, 2d.Ed, Little Brown & Co., 1992.
5.    Ernst P., Bourhean J. and Becklake M.R. "Pleural Abnormality as a Cause of Impairment and Disability" in <u>The Third Wave of Asbestos Disease:</u> Annals of the New York Academy of Sciences, Volume 643, New York, NY
6.    <u>Health Effects of Occupational Exposure to Respirable Crystalline Silica</u>, National Institute for Occupational Safety and Health, Publication No. 2002-129, April 2002
7.    <u>Silica and Silica Induced Lung Diseases</u>, Castranova V, Vallyathan V, Wallace W, CRC Press 1996 Boca Raton, FL.
8.    Goldsmith D, "Silica Exposure and Pulmonary Cancer" in <u>Epidemiology of Lung Cancer</u>, ed. Sammett J, Marcel M. Decker, 1994.
9.    <u>Recommendations For Control Of Occupational Safety and Health Hazards... Foundries</u>, National Institute for Occupational Safety and Health, Division of Standards Development and Technology Transfer, Publication No. 85-116, September 1985

**Jay T. Segarra, M.D., FACP**                    *NIOSH Certified B-Reader*

Camellia Place • 2123 Government Street • Ocean Springs, Mississippi 39564

Phone/Fax (228) 872-2411

*Board certified in Internal Medicine, Pulmonary Diseases, & Critical Care*

Flores, Armando R.

WORKER'S SOCIAL SECURITY Number: 3 2 9 3 2 9 6 1 5

TYPE OF READING: A [ ]   P [X]

FACILITY IDENTIFICATION: H E [ ] [ ]

| 1A. DATE OF X-RAY | 1B. FILM QUALITY | If Not Grade 1 Give Reason | 1C. IS FILM COMPLETELY NEGATIVE? |
|---|---|---|---|
| MONTH 01 DAY 06 YR 03 | [X] 2 3 U/R | _____ | YES [ ] Proceed to Section 5   NO [X] Proceed to Section 2 |

**2A. ANY PARENCHYMAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**   YES [X] COMPLETE 2B and 2C     NO [ ] PROCEED TO SECTION 3

**2B. SMALL OPACITIES**

a. SHAPE/SIZE

PRIMARY: p  s / [X]t / r  u
SECONDARY: p  [X]q  t / r  u

b. ZONES: [X][X] / [X][X] / [X][X]  R  L

c. PROFUSION:
| 0/– | 0/0 | 0/1 |
| 1/0 | [X]1/1 | 1/2 |
| 2/1 | 2/2 | 2/3 |
| 3/2 | 3/3 | 3+ |

**2C. LARGE OPACITIES**   SIZE [X] A B C

PROCEED TO SECTION 3

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**   YES [X] COMPLETE 3B, 3C and 3D     NO [ ] PROCEED TO SECTION 4

**3B. PLEURAL THICKENING**

a. DIAPHRAGM (plaque)   SITE  O [X][X]

b. COSTOPHRENIC ANGLE   SITE [X] R L

**3B. PLEURAL THICKENING . . . Chest Wall**

a. CIRCUMSCRIBED (plaque)
SITE  O [X]        O [X]
IN PROFILE
i. WIDTH  [X] A B C        [X] A B C
ii. EXTENT  [X] 1 2 3        [X] 1 2 3
FACE ON
iii. EXTENT  0 1 [X] 3        0 1 [X] 3

b. DIFFUSE
SITE  [X] R        [X] L
IN PROFILE
i. WIDTH  0 A B C        0 A B C
ii. EXTENT  0 1 2 3        0 1 2 3
FACE ON
iii. EXTENT  0 1 2 3        0 1 2 3

**3D. PLEURAL CALCIFICATION**

SITE [X] R   EXTENT
| a. DIAPHRAGM . . . . . . . | 0 | 1 | 2 | 3 |
| b. WALL . . . . . . . . . . . | 0 | 1 | 2 | 3 |
| c. OTHER SITES . . . . . . | 0 | 1 | 2 | 3 |

SITE [X] L   EXTENT
| a. DIAPHRAGM . . . . . . . | 0 | 1 | 2 | 3 |
| b. WALL . . . . . . . . . . . | 0 | 1 | 2 | 3 |
| c. OTHER SITES . . . . . . | 0 | 1 | 2 | 3 |

PROCEED TO SECTION 4

**4A. ANY OTHER ABNORMALITIES?**   YES [ ] COMPLETE 4B and 4C     NO [X] PROCEED TO SECTION 5

**4B. OTHER SYMBOLS (OBLIGATORY)**

Report items which may be of present clinical significance in this section.

| O | ax | bu | ca | cn | co | cp | cv | di | ef | em | es | fr | hi | ho | id | ih | kl | pi | px | rp | tb |

(SPECIFY od.)   OD [ ]

Date Personal Physician notified?   MONTH [ ] DAY [ ] YR [ ]

**4C. OTHER COMMENTS** _____

_____

_____

SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C.   YES | NO   PROCEED TO SECTION 5

**5. FILM READER'S INITIALS**  J T S

DATE OF READING   MONTH 01 DAY 06 YR 03



## *HOLLAND BIEBER & ASSOCIATES, INC.*

**Patient: Flores, Armando**
SS# : 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

Age:  69    Height(in): 64   Weight(lb): 175

Gender: Male    Race: Hispanic

Date: 09/06/03
*Physician: Dr. J. Segarra*
Technician: VA/MA

---

### *Pulmonary Function Analysis*



F V Loop

#### *Spirometry*

|  |  | Ref | Pre Meas | Pre % Ref |
|---|---|---|---|---|
| FVC | Liters | 3.65 | 2.26 | 62 |
| FEV1 | Liters | 2.87 | 1.68 | 58 |
| FEV1/FVC | % | 79 | 74 |  |
| FEF25-75% | L/sec | 2.84 | 1.22 | 43 |
| FEF50% | L/sec |  | 1.84 |  |
| PEF | L/sec |  | 5.75 |  |

Volume Time

#### *Lung Volumes*



N2 Wash

| VC | Liters | 3.65 | 2.41 | 66 |
|---|---|---|---|---|
| IC | Liters | 2.41 | 1.98 | 82 |
| ERV | Liters | 1.21 | 0.26 | 21 |
| FRC N2 | Liters | 3.02 | 2.27 | 75 |
| RV | Liters | 2.11 | 1.83 | 87 |
| TLC | Liters | 5.85 | 4.25 | 73 |
| RV/TLC | % | 35 | 43 |  |

#### *Diffusion*



DLCO

| DLCO | mL/mmHg/min | 26.4 | 26.2 | 99 |
|---|---|---|---|---|
| VA | Liters |  | 4.20 |  |
| DLCO/VA | mL/mmHg/min/L | 4.73 | 6.23 | 132 |
| IVC | Liters |  | 2.47 |  |

Comments:
**Good effort for all PFTs**

*Any Info: Hossley&Embry*
City: Corpus Christi, TX

PF Reference: Crapo/Hsu

**HOLLAND BIEBER & ASSOCIATES,INC.**

**Date: 09/06/03    Hossley&Embry            Pre**

**Flow Volume Loop  ---  Flores, Armando - 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**

|          | Ref  | Best | % Ref | 1    | 2    | 3    |
|----------|------|------|-------|------|------|------|
| FVC      | 3.65 | 2.26 | 62    | 2.26 | 2.26 | 2.18 |
| FEV1     | 2.87 | 1.68 | 58    | 1.75 | 1.68 | 1.55 |
| FEV1/FVC | 79   | 74   |       | 77   | 74   | 76   |
| FEF25-75%| 2.84 | 1.22 | 43    | 1.45 | 1.22 | 1.29 |
| PEF      |      | 5.75 |       | 6.20 | 5.75 | 5.86 |

**HOLLAND BIEBER & ASSOCIATES,INC.**

**Date: 09/06/03    Hossley&Embry            Pre**

**Single Breath DLCO  —  Flores, Armando – 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**

| | Ref | Best | % Ref | 1 |
|---|---|---|---|---|
| DLCO | 26.4 | 26.3 | 100 | 26.3 |
| DL Adj | 26.4 | 26.3 | 100 | 26.3 |
| IVC | | 2.56 | | 2.56 |
| VA | | 4.29 | | 4.29 |
| DL/VA Adj | | 6.14 | | 6.14 |



**HOLLAND BIEBER & ASSOCIATES,INC.**

**Date: 09/06/03    Hossley&Embry            Pre**

**Single Breath DLCO — Flores, Armando – 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**

|        | Ref  | Best | % Ref | 1    | 2    |
|--------|------|------|-------|------|------|
| DLCO   | 26.4 | 26.2 | 99    | 26.3 | 26.0 |
| DL Adj | 26.4 | 26.2 | 99    | 26.3 | 26.0 |
| IVC    |      | 2.47 |       | 2.56 | 2.38 |
| VA     |      | 4.20 |       | 4.29 | 4.11 |
| DL/VA Adj |   | 6.23 |       | 6.14 | 6.33 |



*Dinah Bukowski, M.D., P.A.*
*Board Certified Pulmonary and*
*Critical Care Medicine*
*Central Park Medical Office Building*
*900 W. 38th St., Suite 460*
*Austin, Texas 78705*

PATIENT NAME: Alvin Francis
SSN: 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

DATE OF VISIT: March 3, 2003
PAGE: 1 of 3

The patient is a 72-year-old black male who presents for evaluation of occupational lung disease. He states he has a daily cough in the morning. He has had this since 1987. It is productive of yellow phlegm. He denies any hemoptysis. He also has some sinus drainage. He denies any sneezing. At times he has wheezing. The wheezing, however, has been very infrequent. He has never been prescribed any sort of medication. He thinks that it may be progressive. It does not seem to be more noticeable at night. He denies any dyspnea upon walking on level ground. He is primarily limited, however, by a right below the knee amputation. He is not able to walk up two flights of stairs without stopping. At times he notes wheezing when he feels short of breath.

## PREVIOUS LUNG DISEASES:

1. Negative, however, he has had surgery on his left hemithorax. Ten years ago he had a bypass procedure from his left subclavian artery to his iliac arteries.

2. Patient sustained several rib fractures on the left side of his chest back in a motor vehicle accident in 1987.

## REVIEW OF SYSTEMS:

Negative for fever, chills, night sweats, weight loss, indigestion, dysphagia or blood or change in his bowel movements. He has nocturia once per night. He denies any chest pain, palpitations, syncope or pre-syncope.

## PAST MEDICAL HISTORY:

1. Peripheral vascular disease. Patient's initial vascular procedure was performed in 1979, however, he ultimately lost his right leg to peripheral vascular disease in 1997.

2. Hyperlipidemia.

3. Diabetes.

4. Thyroid mass which is to be needled tomorrow by a radiologist.

5. Glaucoma.

## PAST SURGICAL HISTORY:

1. As above.

2. S/P cataract extraction as well as laser surgery to his left eye for glaucoma.

## FAMILY HISTORY:

His father died secondary to heart disease at age 83. His mother had diabetes. She ultimately died of a stroke at age 70. He has three sisters and three brothers, all of whom have diabetes. He has one brother that died of lung and liver cancer at age 46. This was in 1982. He was a smoker. He also worked as an oiler for Reynolds. Patient states that his brother did not undergo evaluation for asbestosis or silicosis. It is not known if the primary tumor was lung or liver.

## CURRENT MEDICATIONS:

1. Pravachol.

2. Hydrochlorothiazide.

3. Prazosin.

4. Humulin.

PATIENT NAME: Alvin Francis
SSN: 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

DATE OF VISIT: March 3, 2003
PAGE: 2 of 3

5.      Actos.

6.      Flomax.

7.      Propoxyphene.

8.      Thyroid replacement.

9.      Coumadin for peripheral vascular disease.

10.     Glaucoma eye drops.

DRUG ALLERGIES:

None.

SMOKING HISTORY:

Patient smoked one and a half packs per day for 28 years. He quit 24 years ago.

SOCIAL HISTORY:

Negative for alcohol use.

OCCUPATIONAL HISTORY:

From 1951 to 1953 he was enlisted in the military. He denies any asbestos or silica exposure. From 1954 to 1987 he worked for Reynolds Aluminum. Initially he worked as a laborer for two to three years between 1954 and 1957. It was during this time that he started working as a pot tender for sandblasters. He did this until 1958 at which time he got laid off and he went to the Sherwin plant. There, he worked as a laborer for one year. He later cleaned up sand from the exterior of tanks for four years between 1958 and 1962. These were tanks that had been sandblasted. From 1977 to 1982 he worked in the laboratory at Reynolds Aluminum. In the early 1970's he worked near sandblasters, working on a kiln, and he cleaned up behind the sandblasters. He also tore out refractory brick and cement and replaced this with new refractory brick and cement which he mixed himself while at the Sherwin plant during this same time period. He did this for a period of two to three years. He thinks he also may have been exposed to some asbestos between the early 1970's and 1987. He states that, as an assistant boiler operator, he would have to remove insulation which he believes contained asbestos one to two times per week. He states the entire time that he worked at Reynolds he was required to wear a filter mask. He denies ever being supplied an air-fed hood when working as a pot tender.

PHYSICAL EXAMINATION: BP 145/50. Heart rate 65. Pulse oximetry is 98% on room air. The patient is a 72-year-old black male in no apparent distress, alert and oriented times three.
HEAD: Scalp normal. Sinuses non-tender. The left pupil is hazy. Oropharynx clear.
NECK: No lymphadenopathy. Negative for thyromegaly. I do not discern a distinct nodule. Trachea is in the midline.
LUNGS: Completely clear to auscultation and percussion without wheezing, egophony, bronchophony or crackles.
CHEST: S/P horizontal incision in the left subclavian area, well-healed though with keloid formation.
HEART: Regular rate and rhythm with systolic murmur 2/6 heard best left lower sternal border.
ABDOMEN: Soft. Non-tender. No hepatosplenomegaly. There is a well-healed midline infraumbilical incision.
EXTREMITIES: S/P right BKA. No edema of the left lower extremity. No clubbing or cyanosis.

Pulmonary function tests demonstrate moderate obstructive lung disease with FEV1 of 1.64 which is 51% of predicted and FVC of 2.32 which is 55% of predicted. FEV1% is 71. Lung volumes demonstrate air trapping. RV is 4.59 which is 192% of predicted. TLC is 6.91 which is 104% of predicted. Diffusion capacity is decreased at 12.0 which is 40% of predicted. Pulse oximetry is 98% on room air.

PATIENT NAME: Alvin Francis
SSN: 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

DATE OF VISIT: March 3, 2003
PAGE: 3 of 3

The chest x-ray demonstrates surgical clips in the left hemithorax in the subclavian area. Calcification is noted in the arch of the aorta. There is a normal cardiac silhouette and normal pulmonary vasculature, however, there are increased rounded opacities in the upper, mid and lower lung zones bilaterally. When the film from today is compared to the previous film of 06/13/2002, there are no significant differences after accounting for technique. There is some pleural thickening bilaterally.

ASSESSMENT:

1.      The patient is a 72-year-old black male with a history of significant sand and silica exposure over a number of years with chest x-ray findings of pulmonary silicosis. This patient has pulmonary silicosis. I have explained these findings to him as well as his future risk of progressive pulmonary fibrosis, lung cancer, tuberculosis and other silica-related systemic illnesses and infections. He understands and will follow-up with his physician on a regular basis.

2.      Patient also has a history of some asbestos exposure with some pleural thickening. This is consistent with asbestos-related pleural disease.

3.      Moderately severe obstructive lung disease.

4.      Severe peripheral vascular disease. S/P right leg amputation.

5.      Hyperlipidemia.

6.      Diabetes.

7.      Thyroid mass. Undergoing evaluation.

PLAN:

1.      Periodic examination of this patient for progression of his illness should be carried out. This could include follow-up history and physical examination, pulmonary function testing and chest radiography. Specific further testing as guided by these items may also be necessary.

2.      Patient might benefit from a course of inhaled corticosteroids as well as bronchodilators for his obstructive lung disease noted by pulmonary function tests.

3.      Other items of note in this dictation may require further evaluation and treatment.

4.      Any information regarding the silica content of various materials this patient was exposed to would be helpful in increasing the confidence level of this diagnosis.

Dinah Bukowski, M.D.
DMB:bek

**4**

IN THE UNITED STATES DISTRICT COURT FOR
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

DAVID RAY AMASON, et al., §
§
     Plaintiffs, §
§
V. §
§     CIVIL ACTION NO. 2:03CV555
REYNOLDS METALS §
COMPANY, et al., §
§
     Defendants. §

## PLAINTIFFS' SECOND AMENDED COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

     COME NOW, Plaintiffs DAVID RAY AMASON, JOE ARREZOLA, FRANKLIN BARBER, ALONZO BELTRAN, GARY CEDOTAL, CHARLES CHAPMAN, ORAN CORNETT, ROBERT DELEON, DWANE DREYER, EVARISTO DURAN, AMANDO FLORES and ALVIN FRANCIS, hereinafter referred to as Plaintiffs, complaining of the various Defendants listed below and for cause of action would show the Court and Jury as follows:

### Defendants

1.     Defendant, REYNOLDS METALS COMPANY, may be served with process through its registered agent Corporation Service Company, 100 Congress Avenue, Suite 1100, Austin, Texas 78701.

2.     Defendant, ALCOA, INC. (successor to REYNOLDS METALS COMPANY), may be served with process through its registered agent, C. T. Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

3.     Defendant, A. S. "STAN" MILLSAP, may be served at 5541 Bear Lane, Ste. 236, Corpus Christi, Texas 78405.

4.     Defendant, C. ARLON BOATMAN, may be served at the Sherwin Alumina Plant, P.O. Box 9911, Highway 361, Gregory, Texas 78469.

5.     Defendant AMERICAN OPTICAL CORPORATION, is a corporation organized and existing under and by virtue of the laws of the State of New Jersey with an agent for service in the State of Texas, to-wit: C. T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

6.      Defendant JOHN BARTEN, INDIVIDUALLY AND d/b/a JOHN BARTEN COMPANY, AND JB INDUSTRIAL SAND, is a corporation organized and existing under and by virtue of the laws of the State of Texas with an agent for service in the State of Texas, to-wit: John Barten, P. O. Box 487, Columbus, Texas 78931.

7.      Defendant CESCO CORPORATION, is a corporation organized and existing under and by virtue of the laws of the State of Texas with an agent for service in the State of Texas, to-wit C. T. Corporation System, 3350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

8.      Defendant COMPLETE ABRASIVE BLASTING SYSTEM, INC., as corporation organized and existing under and by virtue of the laws of the State of Texas, with an agent for service in the State of Texas, to-wit: Prentice-Hall Corporation System, 400 N. St Paul Street, Dallas, TX 75201.

9.      Defendant CORPUS CHRISTI EQUIPMENT COMPANY, corporation organized and existing under and by virtue of the laws of the State of Texas, with an agent for service in the State of Texas, to wit: David E. Massie, 410 Westchester, P. O. Box 4125, Corpus Christi, Texas 78469.

10.     Defendant, DEVILBISS AIR POWER COMPANY, f/k/a The Devilbiss Corporation, is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045, Vernon's Annotated Texas Statutes, said Defendant may be served by serving the Secretary of State of Texas, with process to be forwarded to the registered agent for service of process, to-wit: The Prentice-Hall Corporation System, Inc., 32 Loockerman Square, Suite L-100, Dover, Delaware 19901.

11.     Defendant, E. D. BULLARD COMPANY, CORPORATION ORGANIZED AND EXISTING UNDER AND BY VIRTUE OF THE LAWS OF THE State of California, with an agent for service in the State of Texas, to-wit: C. T. Corporation System, 350 St. Paul Street, Dallas, Texas 75201.

12.     Defendant, EASTERN SAFETY EQUIPMENT COMPANY6, INC. , is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.l045, Vernon's Annotated Texas Statutes, said Defendant may be served by serving the Secretary of State of Texas, with process to be forwarded to the registered agent for service of process, to-wit: 59-2015th Avenue, Maspeth, New York 11378.

13.     Defendant EMPIRE ABRASIVE COMPANY, is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045, Vernon's Annotated Texas Statutes, said Defendant may be served by serving the Secretary of State of Texas, with process to be forwarded to the registered agent for service of process, to-wit: Mr. Harry Hill, Empire Abrasive Company, 2101 West Cabot Boulevard, Langhorne, Pennsylvania 19047-1893.

14.     Defendant EMPIRE ABRASIVE EQUIPMENT CORPORATION, is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045, Vernon's Annotated Texas Statutes, said Defendant may be served by serving the State of Texas, with process to be forwarded to the registered agent for service of process, to-wit: 2101 W"est Cabot Boulevard, Langhorn, Pennsylvania 1947.

---

15.    Defendant ENCON MANUFACTURING COMPANY a/k/a Encon Safety Products, Inc., is a corporation organized and existing under and by virtue of the laws of the State of Pennsylvania, with an agent for service in the State of Texas, to-wit: C. T. Corporation System, 811 Dallas Avenue, Houston, Texas 77002.

16.    Defendant FLEXO PRODUCTS, INC., a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045, Vernon's Annotated Texas Statutes, said Defendant may be served by serving the Secretary of State of Texas, with process to be forwarded to the registered agent for service of process, to-wit: John Hill, 24864 Detroit Road 19, Westlake, Ohio 44145.

17.    Defendant INCO UNITED STATES, INC., is a corporation not authorized to do business in the state of Texas, but doing business in the state of Texas.  Defendant corporation has not appointed a registered agent for service of citation in the state of Texas.  Therefore, pursuant to Article 17.044al, of Texas Civil Practice and Remedies Code, service of citation may be perfected on Defendant corporation by serving the Secretary of the State of Texas, who shall forward a copy of the process to said non resident Defendant corporation to its Chief Executive Officer, Inco United States, Inc., One New York Plaza, New York 10004.

18.    Defendant JEBCO ABRASIVES, INC., is a corporation organized and existing under and by virtue of the laws of the State of Texas with an agent for service in the State of Texas, to-wit: John Barton, P. O. Box 487, Columbia Texas 78931.

19.    Defendant KELCO SALES & ENGINEERING COMPANY, a division of Polley, Inc., is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045, Vernon's Annotated Texas Status, said Defendant may be served by serving the Secretary of State of Texas, with process to the forwarded to the registered agent for service of process, to-wit: 11936 E. Front Street, Norwalk, California 90650, c/o Don Polley, president.

20.    Defendant, KEY HOUSTON, a division of Jacksonville Shipyards, is a foreign corporation doing business in the Estate of Texas but does not maintain a place of regular business in Texas or a designated agent upon whom service may be made Service of process may be made by serving Stephen Ferrell, at Giessel, Barker & Lyman, 2700 Two Houston Center, 909 Fannin, Houston, Texas 77010.

21.    Defendant, MARTINDALE ELECTRIC COMPANY, is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045, Vernon's Annotated Texas Statutes, said Defendant to be registered agent for service of process, to-wit: Martindale Electric Company, 1365 Bird Ave., Cleveland Cuyahoga County, Ohio 44107.

22.    Defendant MOLDEX-METRIC, INC., a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045, Vernon's Annotated Texas Statutes, said Defendant may be served by serving the Secretary of State of Texas, with process to be forwarded to the principal place of business to Sidney J. Machtinger, 1900 Avenue of the Stars, Los Angeles, CA. 90067.

23.    Defendant, MORIE COMPANY, INC., is a New corporation.  It does not maintain either a regular place of business or an agent for service of process in this State.  Service of

process may be made by serving the Secretary of State of state of Texas under Article 17.045, with process to be forwarded to the defendant's registered agent; Corporate Company, 60 Commerce Street , Montgomery, AL 36104.

24. Defendant OTTAWA SILCA COMPANY, is a corporation organized and existing under and by virtue of the laws of some state other than the state of Texas. It does not maintain either a regular place of business or an agent for service of process in this State. Service of process may be made by serving the Secretary of State of Texas under Article 17.045, with process to be forwarded to: Corporation Trust Co., Corporate Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

25. Defendant THE PANGBORN CORPORATION, is a corporation organized and existing pursuant to law. May be served by and through their agent for service, to-wit C. T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

26. Defendant PARMELEE INDUSTRIES, INC., d/b/a CESCO SAFETY PRODUCTS COMPANY, is a corporation organized and existing under and by virtue of the laws of the State of Delaware with an agent for service in the State of Texas, to-wit: C. T. Corporation Systems, 811 Dallas Avenue, Houston, Texas 77002.

27. Defendant PAULI & GRIFFIN CO. is a foreign corporation doing business in the State of Texas but does not maintain a place of regular business in Texas or a designed agent upon whom service may be made. Service of process may be made pursuant to Article 17.044 of the Civil Practice and Remedies Code by serving the Secretary of State, State of Texas, 1019 Brazos, Austin, Texas 78701, as agent for service of process, and the Secretary of State forwarding a copy of the process by registered mail, return receipt requested, to Fredrick Lucksinger, Trustee, Care Of: his attorney, Mary Verhoef at Law Firm of Moore, Meegan, Hanshaw & Kassenbrock, 1545 River Park Dr., Suite 550, Sacramento, California 95815.

28. Defendant PIONEER CONCRETE OF TEXAS, INC., is a corporation organized and existing under and by virtue of the laws of the State of Texas with an agent for service in the State of Texas, to-wit: George Piazza, Memorial City Plaza, Suite 1100, 800 Gessner, Houston, Texas 77024.

29. Defendant P. K. LINDSAY COMPANY, is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045, Vernon's Annotated Texas Statutes, said Defendant may be served by serving the Secretary of State of Texas, with process to be forwarded to the registered agent for service of process, to-wit: 63 Nottingham Road, Deerfield, New Hampshire 03037.

30. Defendant RANSBURG CORPORATION (formerly Devilbiss Industries Products Corporation successor to The Devilbiss Company), is a corporation organized and existing under and by virtue of the laws of the State of Delaware with an agent for service in the State of Texas, to-wit: C. T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

31. Defendant SANDSTROM COMPANY, is a corporation and existing under and by virtue of the laws of the State of Texas with an agent for service in the State of Texas, to-wit: C. T. Corporation System, 811 Dallas Ave., Houston, Texas 77002.

32. Defendant SCHMIDT MANUFACTURING, INC., is a corporation organized and existing under and by virtue of the laws of the State of Texas with an agent for service in the State of Texas, to-wit: C. T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

33. Defendant SCOTT AVIATION, A DIVISION OF FIGGIE INTERNATIONAL, is a corporation organized and existing under and by virtue of the laws of the State of Texas with an agent for service in the State of Texas, to-wit: C. T. Corporation System, 811 Dallas Ave., Houston, Texas 77002.

34. Defendant SURVIVAIR, A DIVISION OF U.S.D. CORP., is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045 Vernon's Annotated Texas Statutes, said Defendant may be served by serving the Secretary of State of Texas, with process to be forwarded to the principal place of business 3001 South Susan St., Santa Ana, California 92704.

35. Defendant SULLAIR CORPORATION, is a corporation organized and existing under and by virtue of the laws of the State of Indiana with an agent for service in the State of Texas, to-wit, C. T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 175201.

36. Defendant TRIPLEX, INC., a corporation organized and existing under and by virtue of the laws of the State of Texas, with an agent for service in the State of Texas, to -wit; Luther B. Fuqua, II, 122 Kress, Houston, Texas 77020.

37. Defendant UNIMIN CORPORATION is a corporation organized and existing under and by virtue of the laws of the State of Texas, with an agent for service in the State of Texas, to-wit: C. T. Corporation Systems, 811 Dallas, Ave., Houston, Texas 77002.

38. Defendant WELDRON SILICA CORPORATION is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.0245, Vernon's Annotated Texas Statutes, said Defendant may be served by serving the Secretary of State of Texas, with process to be forwarded to the principal place of business at P. O. Box 119, Waitron, Illinois 60557.

39. Defendant WEDRON SILICA COMPANY, is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045, Vernon's Annotated Texas Statutes, said Defendant may be served by serving the Secretary of State of Texas, with process to be forwarded to the principal place of business at 11188 Resiny Road, Charon, Ohio 44024.

40. Defendant DALLOZ SAFETY, INC., f;/k/a and Successor-in-interest to WGM SAFETY CORPORATION d/b/a WILSON SAFETY PRODUCTS, is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045, Vernon's Annotated Texas Statutes, and Defendant may be served by serving the Secretary of State of Texas, with process to be forwarded to the principal place of business at Post Office, Box 622, Reading, Pennsylvania 19603.

41. Defendant WGM SAFETY CORPORATION D/B/A WILSON SAFETY PRODUCTS, is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045, Vernon's Annotated Texas Statutes, said Defendant may be

served by serving the Secretary of State of Texas, with process to be forwarded to the principal place of business at Post Office Box 622, Reading, Pennsylvania 19603.

42.     Defendant WHEELBRATOR-FRYE CORPORATION, is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045, Vernon's Annotated Texas Statutes, said Defendant may be served by serving the Secretary of State of Texas, with process to be forwarded to the principal place of business at 4 Liberty Lane West Hampton, New Hampshire 03842.

43.     Defendant W. W. SLY MANUFACTURING COMPANY, is a corporation that has done business in the State of Texas in the past and accordingly, pursuant to Article 17.045, Vernon's Annotated Texas Statutes, said Defendant may be served by serving the Secretary of State, with process to be forwarded to the principal place of business at P. O. Box 5939, Cleveland, Ohio 44101.

## I.

### Joinder of Plaintiff

Plaintiffs are properly joined in this action pursuant to Tex. R. Civ. P. 40(a).  Plaintiffs' causes of action arise out of the same occurrence or series of occurrences and involve common questions of law and fact.

## II.

### Venue

Plaintiffs are citizens of the State of Texas and a number of the Plaintiffs reside within Nueces County, Texas.  All Plaintiffs incurred their most significant exposure to silica while working in Texas. Certain Defendants reside in Nueces County, Texas.   Therefore, venue properly lies in this County.

## III.

### Discovery

Plaintiffs request discovery be conducted under Level III pursuant to Rule 190.4 of the Texas Rules of Civil Procedure.  The damages sought by Plaintiffs, exclusive of interests and costs, exceed the minimum jurisdictional limits of the court.

## IV.

### Background

Plaintiffs would show that they, for a period of many years, worked with and were exposed to aerosolized silica dust, dust from silica-containing products, sand, blasting sand and used respiratory protection products of the Defendants herein, while working at the Reynolds Sherwin aluminum plant in Gregory, Texas doing various trades.  Plaintiffs would show that they were exposed, on numerous occasions, to silica and/or silica-containing materials manufactured, used, designed and/or marketed the by Defendants and, in so doing, have inhaled great quantities of silica.  Further, Plaintiffs allege, as more specifically set out below, that they suffered injuries proximately caused by their exposure to silica-containing materials.

Plaintiffs allege that they were exposed to silica-containing products in their occupations. In that each exposure to such products caused or contributed to Plaintiffs' injuries, Plaintiffs say that the doctrine of joint and several liability should be extended to apply to each Defendant herein.

## V.

### NEGLIGENCE

The illnesses and disabilities of Plaintiffs are a direct and proximate result of the negligence of each Defendant and/or its predecessor-in-interest in that said entities produced, sold, distributed, used and/or otherwise put into the stream of commerce, sand, silica, and silica-containing products, blasting equipment, which the Defendants knew, or in the exercise of ordinary care, should have known, were defective, deleterious and/or highly harmful to Plaintiffs' health and well being. The Defendants were negligent in one, some and/or all of the following respects, among others, and such negligence was the proximate cause of Plaintiffs' illnesses and disabilities:

1. In failing to adequately warn Plaintiffs of the dangerous characteristics and serious health hazards associated with exposure to and inhaling sand, silica, silica-containing products, and blasting equipment;

**PLAINTIFFS' SECOND AMENDED COMPLAINT AND JURY DEMAND**
*David Ray Amason, et al vs. Reynolds Metals Company, et al.*

**Page 7 of 17**

2. In failing to provide Plaintiffs with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, to protect Plaintiffs from being harmed and disabled by exposure to sand, silica, silica-containing products and blasting equipment;

3. In failing to place adequate warnings on the containers of sand, silica, silica-containing products and blasting equipment to warn of the dangers to health of being exposed to sand, silica, silica-containing products and blasting equipment;

4. In failing to place adequate warnings on the blasting equipment to warn of the dangers to health of being exposed to sand, silica, silica-containing products and blasting equipment;

5. In failing to take reasonable precaution or exercise reasonable care to publish, adopt and enforce a safety plan and/or safe method of handling and using sand, silica, silica-containing products and blasting equipment;

6. In failing to develop and utilize a substitute material to eliminate silica in abrasive blasting;

7. In failing to properly design and manufacture sand, silica, silica-containing products and blasting equipment for safe use under conditions of use that were reasonably anticipated;

8. In failing to properly test their sand, silica, silica-containing products and blasting equipment before they were released for consumer use; and

9. In failing to recall and/or remove from the stream of commerce said sand, silica, silica-containing products and blasting equipment despite knowledge of the unsafe and dangerous nature of such products or equipment.

Additionally, the illnesses and disabilities of Plaintiffs are a direct and proximate result of the negligence of the manufacturers of respiratory equipment and other personal protective equipment (hereafter "Respiratory Defendants") by placing into the stream of commerce respiratory devices defective in design and inadequate for the purposes for which they were intended, namely the prevention of inhaling dust, including silica dust, generated from construction, abrasive blasting, sandblasting and/or manufacturing processes.

The Respiratory Defendants knew or should have known that workers would use and rely upon the Respiratory Defendants' respiratory devices at sites where sand and silica containing materials were commonly and extensively used which created substantial and constant quantities

**PLAINTIFFS' SECOND AMENDED COMPLAINT AND JURY DEMAND**
*David Ray Amason, et al vs. Reynolds Metals Company, et al,*

Page 8 of 17

of dust and that their respiratory devices would provide inadequate protection against the inhalation of silica dust.

Furthermore, the Respiratory Defendants were negligent for failing to warn and/or properly instruct workers regarding the inadequacies of their respiratory devices for preventing the inhalation of silica dust.

**VI.**

**<u>STRICT LIABILITY</u>**

Plaintiffs were exposed to sand, silica, silica-containing products and/or blasting equipment, that were manufactured and distributed by the Defendants and/or their predecessors-in-interest for use in sandblasting, abrasive blasting, construction materials, and/or equipment in industrial operations. Plaintiffs would show that such products were not reasonably fit for the purposes for which they were intended and were defective at the time that the products left the hands of the Defendants. In this connection, Plaintiffs would show that the defective condition of the products rendered such products unreasonably dangerous.

A number of the Defendants are engaged in the business of selling sand, silica, silica-containing products, blasting equipment, blasting protective equipment and/or respiratory blasting protective equipment and these products, without substantial change in the condition in which they were sold, were the proximate cause of the injuries of Plaintiffs.

Defendants knew that these sand, silica, silica-containing products, blasting equipment, blasting protective equipment and/or respiratory blasting protective equipment would be used without inspection for defects, and by placing them on the market represented that they would safely do the job for which they were intended.

Plaintiffs were unaware of the hazards and defects in the sand, silica, silica-containing products, blasting equipment, blasting protective equipment and/or respiratory blasting protective equipment of the Defendants which made them unsafe for purposes for which they were intended. Plaintiffs were also unaware of the hazards and defects in the sand, silica, silica-

containing products, blasting equipment, blasting protective equipment and/or respiratory blasting protective equipment.

During the periods that Plaintiffs were exposed to the sand, silica, silica-containing products, and/or blasting equipment of Defendants, said products were being utilized in a manner which was intended by Defendants.

Plaintiffs would further show that the sand, silica, silica-containing products and blasting equipment in question were defective and not reasonably fit for the purposes and uses for which they were intended at the time they left the hands of the Defendants in that Defendants failed to warn Plaintiffs of the hazardous nature of said products and/or equipment. This failure to warn on the part of the Defendants rendered such sand, silica, silica-containing products, and/or blasting equipment unreasonably dangerous at the time they left the hands of the Defendants and was a proximate cause of the injuries and disabilities sustained by the Plaintiffs.

Plaintiffs used respiratory personal protective devices designed and manufactured by the Respiratory Defendants, commonly known as a "dust mask", "cartridge respirators" and "hoods." Plaintiffs would show that the defective condition of such respiratory devices rendered them unreasonably dangerous for use as devices for protection against the inhalation of silica dust. Plaintiffs would further show that the respiratory devices were in a defective condition at the time they left the hands of the Respiratory Defendants.

The Respiratory Defendants were engaged in the business of manufacturing and selling respiratory devices and these products, without substantial change in the condition in which they were sold, were a proximate cause of the injuries of the Plaintiffs.

The Respiratory Defendants knew that their respiratory devices would be used without inspection for defects and, by placing them on the market, represented that they would safely preclude the inhalation of silica dust.

Plaintiffs were unaware of the defects in the Respiratory Defendants' respiratory devices which rendered them ineffective as protection against the inhalation of silica dust.

**PLAINTIFFS' SECOND AMENDED COMPLAINT AND JURY DEMAND**
*David Ray Amason, et al vs. Reynolds Metals Company, et al,*

**Page 10 of 17**

During the periods Plaintiffs used and relied upon the Respiratory Defendant's respiratory devices, the devices were utilized in a manner for which they were intended to be used.

## VII.

## CONSPIRACY

Plaintiffs would further show that the Defendants, individually and as agents of one another and as co-conspirators, agreed and conspired among themselves and with other sand, silica, silica-containing products, blasting equipment, blasting protective equipment and/or respiratory blasting protective equipment manufacturers and distributors to injure the Plaintiffs. Defendants entered into a conspiracy to withhold medical and scientific information; to misrepresent material facts about the seriousness of silica-related diseases; to delete material information from studies and reports; to disseminate misleading information; to prevent the disclosure of medical and scientific information; and/or to alter studies and reports and terminate studies that would prove unfavorable to them. The acts and omissions of the Defendant conspirators constitute fraudulent concealment and/or fraudulent misrepresentation which was a proximate cause of Plaintiffs injuries and damages. Defendants' acts and omissions amount to a total disregard of the Plaintiffs' rights, which constitute civil conspiracy as that term is defined in law.

## VIII.

## GROSS NEGLIGENCE

The actions and inactions of all the Defendants and their predecessors-in-interest, whether taken separately, or together, were of such a character as to constitute a pattern or practice of intentional wrongful conduct and/or malice resulting in damage and injury to the Plaintiffs. More specifically, Defendants and their predecessors-in-interest, consciously and/or deliberately engaged in oppression, fraud, wantonness and/or malice with regard to the Plaintiffs. Therefore, Defendants are guilty of gross negligence for which they should be held liable in punitive and exemplary damages to Plaintiffs.

## IX.

## MALICE

Defendants' specific intent to cause substantial injury to the Plaintiffs; or act or omission, which when viewed objectively from the standpoint of the Defendants at the time of occurrence based upon the facts and legal theories more fully set out herein, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and of which the Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of Plaintiffs.

## X.

## WRONGFUL DEATH

Plaintiffs bring this wrongful death and survival action pursuant to TEX. CIV. PRAC. & REM. CODE, 71.001 et. seq. and 71.021, respectfully, because injuries suffered by the Plaintiffs may result in Plaintiffs' wrongful death based upon the facts and legal theories more fully set out herein.

## XI.

## INTENTIONAL TORT

All of the allegations contained in the previous paragraphs are realleged herein.   All Plaintiffs further allege that Defendants engaged in intentional and malicious conduct which directly and proximately caused Plaintiffs' silica-related injuries.   Plaintiffs would show specifically that Reynolds Metals Company and Alcoa, Inc., (successor to Reynolds Metals Company) (hereinafter referred to as RMC) had knowledge of the inherent dangers associated with exposing RMC's employees to silica-containing dust at least by the early 1960's, if not earlier.   During Plaintiffs' employment, RMC directed and/or knowingly allowed Plaintiff on a frequent basis to work with silica and intentionally exposed Plaintiffs to silica-containing dust without providing Plaintiffs with the appropriate protective gear, without initiating proper dust controls, and without disclosing the hazards of silica exposure to the Plaintiffs.  Therefore, RMC knew to a substantial certainty that Plaintiffs' work would cause them to inhale silica and would

result in injury to Plaintiffs.  Further, RMC's actions and omissions, when viewed objectively at the time of their occurrence, involved an extreme degree of risk, when considering the risk of harm to Plaintiffs and others and of which the RMC had actual subjective awareness. Nevertheless, RMC proceeded with conscious indifference to the rights, safety and welfare of the Plaintiffs and others similarly situated.  The specific actions or omissions, committed by RMC, that were a direct cause of Plaintiffs' injuries and damages include, but are not limited to the following:

1. RMC directed Plaintiffs to work with silica-containing materials;

2. RMC knowingly allowed and directed Plaintiffs to engage in work practices which would with substantial certainty result in their inhalation of silica-containing dust, knowing with substantial certainty that Plaintiffs would eventually manifest an silica-related injury;

3. RMC failed to inform Plaintiffs about inherent dangers of silica, or safe work practices, knowing that had they informed Plaintiffs, Plaintiffs would not have worked with the silica and/or would not have been exposed to silica-containing dust;

4. Defendants failed to provide proper safety measures and protection against silica dust, knowing with a substantial certainty that without such safety measures and protection, Plaintiffs and others similarly situated would inhale silica and eventually manifest and silica-related injury;

5. Defendants failed to provide Plaintiffs with a safe working environment, by failing to train and/or require Plaintiffs'  to follow safe procedures when handling or removing silica-containing products, knowing with a substantial certainty, that without such a safe place to work Plaintiff and others similarly situated would inhale silica and eventually manifest a silica-related injury; and

6. Defendants knew that their conduct in operating the facility and failing to take appropriate measures to protect Plaintiffs and others similar situated from inhaling silica was substantially certain to cause Plaintiffs' silica-related disease.

Plaintiffs would show that RMC's conduct amounted to intentional infliction of emotional distress.  Plaintiff would also show that RMC's acts and omissions constitute an assault and/or battery against Plaintiffs and were a proximate cause of Plaintiffs' silica-related disease.  As a direct and proximate result of RMC's intentional and malicious conduct, Plaintiffs suffered an silica-related disease and damages.

# XII.

## DAMAGES

As a direct and proximate result of Defendants' tortious conduct as aforesaid, Plaintiffs have developed silica-related lung disease and/or other related physical conditions. Plaintiffs have been damaged in the following particulars:

(a)    Plaintiffs have suffered great physical pain and mental anguish and will continue to suffer great pain of body and mind throughout their lifetimes;

(b)    Plaintiffs have incurred hospital and/or medical and/or pharmaceutical and/or other expenses and will continue to incur such expenses in the future due to the progressively disabling character of silica-related lung disease and other related physical conditions from which they now suffer and will continue to suffer in the future;

(c)    Plaintiffs suffer a physical impairment at this time and will continue to suffer this impairment in the future due to the disabling character of silica-related lung disease and other related physical conditions;

(d)    Plaintiffs suffer a permanent partial disability at this time and will become permanently and totally disabled in the future due to the progressive character of silica-related lung disease and other related physical conditions;

(e)    Plaintiffs are subject to an extraordinary increased likelihood of developing (or the progression and/or recurrence of) cancer of the lungs, TB, Lupus, Scenadermer, and/or rheumatoid arthritis, all due to said exposure to silica products and/or machinery manufactured, sold and/or distributed by the named Defendants;

(f)    Plaintiffs will require medical monitoring throughout their lifetime to survey the progression of their silica-related lung disease and to aid in the early detection and treatment of any or all of the cancers or other medical conditions described above and will be required to pay for such medical monitoring;

(g)    Plaintiffs have suffered a progressive loss of earning capacity and will continue to suffer a loss of earning capacity and wages throughout their lifetime;

(h)    Plaintiffs require or will require domestic help and nursing care due to their disabilities and have been or will be required to pay for such domestic help and nursing services;

(i)    Prior to the onset of their symptoms, Plaintiffs were extremely active and participated in numerous hobbies and activities , and as a result of their illness, Plaintiffs have been and will be prevented from engaging in some of said activities which were normal to them prior to developing symptoms from silica-related lung disease. Plaintiffs have been and will

otherwise be prevented from participating in and enjoying the benefits of a dull and complete life; and

(j)     Plaintiffs seek punitive and exemplary damages which Plaintiffs allege are in excess of the minimum jurisdictional limits of this Court.

WHEREFORE, Plaintiffs demand judgment against the Defendants, and each of them, jointly and severally, for reasonable medical care and expenses in the past (these expenses were incurred by Plaintiffs for the necessary care and treatment of the injuries complained of herein and such charges are reasonable and were usual and customary charges for such services in Nueces County, Texas); reasonable and necessary medical care and expenses which will in all reasonable probability be incurred in the future; physical pain and suffering in the past; mental anguish in the past; physical pain and suffering in the future; mental anguish in the future; physical impairment in the past; physical impairment which, in all reasonable probability, will be suffered in the future; loss of earnings in the past; loss of earning capacity which will, in all probability, be incurred in the future; loss of consortium in the past, including damages to the family relationship, loss of care, comfort, solace, companionship, protection, services, and/or physical relations; loss of consortium in the future including damages to the family relationship, loss of care, comfort, solace, companionship, protection, services, and/or physical relations; loss of parental consortium in the past, including damages to the parent-child relationship, including loss of care, comfort, solace, companionship, protection, services, and/or parental love; loss of parental consortium in the future including damages to the parent-child relationship, including loss of care, comfort, solace, companionship, protection, services, and/or parental love; loss of household services in the past; loss of household services in the future; fear of future disease, progression of their silica-related illness, cancer or other medical condition; cost of medical monitoring and prevention in the future; for punitive and exemplary damages; for their costs expended herein; for interest on said judgment from the date this action accrued until paid, at the legal rate; and for such other and further relief, both at law and in equity, to which Plaintiffs may show themselves justly entitled.

## JURY DEMAND

Plaintiffs demand that all issues of fact in this case be tried to a properly impaneled jury.

Respectfully submitted,

D. Allen Hossley
Southern District of Texas Admission No. 36964
Texas State Bar No. 00792591
ATTORNEY-IN-CHARGE
Jeffrey T. Embry
Texas State Bar No. 24002052
Southern District of Texas Admission No. 25070
HOSSLEY ✱ EMBRY, L.L.P.
313 E. Charnwood
Tyler, Texas   75701
Phone: 903-526-1772
Fax:    903-526-1773
Email: allen@hosslembry.com

Pruett Moore, III.
Texas State Bar No. 14362225
Southern District of Texas Admission No. 15267
CONSTANT & VELA
1570 Frost Bank
802 N. Carancahua
Corpus Christi, Texas   78470
Phone: 361-887-8800
Fax:    361-887-8010

## CERTIFICATE OF SERVICE

I hereby certify that an exact copy of the foregoing has been sent via facsimile and/or first-class U.S. mail to all known counsel of record for Defendants on this the 27th day of April 2004.

D. Allen Hossley

**5**

IN THE UNITED STATES DISTRICT COURT FOR
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

DAVID RAY AMASON, et al.,                 §
                                          §
         Plaintiffs,                      §
                                          §
V.                                        §
                                          §          CIVIL ACTION NO. 2:03CV555
REYNOLDS METALS                           §
COMPANY, et al.,                          §
                                          §
         Defendants.                      §


## PLAINTIFFS' NOTICE OF PARTIAL DISMISSAL WITHOUT PREJUDICE

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Plaintiff DAVID R. AMASON, and files this Notice of Partial Dismissal as to Defendants **Reynolds Metals Company, Aloca, Inc., Arlon Boatman, and Stan Millsap, only** in the above entitled and numbered cause.  Pursuant to FRCP 41(a) Plaintiff, David Amason, voluntarily dismisses his claims against, **Reynolds Metals Company, Aloca, Inc., Arlon Boatman, and Stan Millsap, only**.  At the time of executing this Notice of Partial Dismissal, Defendant Reynolds Metals Company, Alcoa, Inc., Arlon Boatman and Stan Millsap have filed  answers but have not filed any motions for summary judgment.

WHEREFORE PREMISES CONSIDERED, PLAINTIFF, prays that the Court take notice that he has dismissed his claims against the above-stated Defendants without prejudice.

Respectfully submitted,

Jeffrey T. Embry
State Bar No. 24002052
Southern District of Texas Bar No. 25070
ATTORNEY-IN-CHARGE
D. Allen Hossley
State Bar No. 00792591
HOSSLEY ✱ EMBRY, L.L.P.
313 E. Charnwood
Tyler, Texas 75701
Ph.   903-526-1772
Fax. 903-526-1773

Pruett Moore, III.
State Bar No. 14362225
Southern District of Texas Bar No. 15267
Pruett Moore, III Attorney at Law
802 N. Carancahua
1570 Frost Bank
Corpus Christi, Texas 78470
Ph. 361-887-8800
Fax.  361-887-8010

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing has been served upon counsel of record by certified mail and/or facsimile delivered on this the ___9___ day of ___January___, 2004.

Jeffrey T. Embry

IN THE UNITED STATES DISTRICT COURT FOR
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

DAVID RAY AMASON, et al.,          §
                                   §
          Plaintiffs,              §
                                   §
V.                                 §
                                   §     CIVIL ACTION NO. 2:03CV555
REYNOLDS METALS                    §
COMPANY, et al.,                   §
                                   §
          Defendants.              §


## ORDER OF NOTICE OF PARTIAL DISMISSAL WITHOUT PREJUDICE

BE IT REMEMBERED that on this day came on to be heard the Notice of Partial Dismissal Without Prejudice regarding **Reynolds Metals Company, Aloca, Inc., Arlon Boatman, and Stan Millsap, only**. After considering said Notice of Partial Dismissal and representations of counsel, this Court is of the opinion that this Notice of Partial Dismissal Without Prejudice should be granted in its entirety; therefore, it is hereby

ORDERED, ADJUDGED AND DECREED that Plaintiff David Amason's claims against **Reynolds Metals Company, Aloca, Inc., Arlon Boatman, and Stan Millsap, only,** be dismissed. All costs of Court are taxed against the party incurring same.

IT IS FURTHER ORDERED that this Order of Notice of Partial Dismissal Without Prejudice does not dispose of any other claims of Plaintiffs against any other Defendants in the above-referenced cause.

SIGNED this the _____ day of _____, 2004

_____

JUDGE PRESIDING

Plaintiff's Notice of Partial Non-Suit Without Prejudice.

**6**

IN THE UNITED STATES DISTRICT COURT FOR
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

DAVID RAY AMASON, et al          §
                                 §
        Plaintiffs,              §
                                 §
                                 §
V.                               §          CIVIL ACTION NO. 2:03CV555
                                 §
REYNOLDS METALS                  §
COMPANY, et al.,                 §
                                 §
        Defendants.              §

## PLAINTIFFS' MOTION FOR LEAVE TO DISMISS
## WITHOUT PREJUDICE DEFENDANTS REYNOLDS METALS COMPANY,
## ALCOA INC., ARLON BOATMAN AND A.S. STAN MILSAP

**COME NOW, all** Plaintiffs, in the above entitled and numbered cause, and file this

their Motion for Leave to Dismiss Without Prejudice, pursuant to Federal Rule of Civil

Procedure 41(a)(1), Defendants **Reynolds Metals Company, Alcoa, Inc., Arlon Boatman**

**and A.S. "Stan" Millsap, only**. According to Federal Rule of Civil Procedure 41(a)(1) leave

of this Court is necessary to effectuate this dismissal because the above-referenced

Defendants have filed an answer to this lawsuit. This case has been conditionally

transferred to the Multidistrict Litigation in the United States District Court for the Eastern

District of Pennsylvania and Plaintiffs have filed their Notice of Opposition to the Conditional Transfer

and a Motion to Vacate the Conditional Transfer. The Plaintiffs no longer wish to pursue their

claims against the aforementioned Defendants and thus, respectfully request this Court to

permit them to dismiss their claims without prejudice against **Reynolds Metals Company,**

**Alcoa, Inc., Arlon Boatman and A.S. "Stan" Millsap, only** .

Respectfully submitted,

D. Allen Hossley
State Bar No. 00792591
Southern District of Texas Bar No. 36964
ATTORNEY-IN-CHARGE
Jeffrey T. Embry
State Bar No. 24002052
Southern District of Texas Bar No. 25070
HOSSLEY ✱ EMBRY, L.L.P.
313 E. Charnwood
Tyler, Texas 75701
Ph.  903-526-1772
Fax. 903-526-1773

Pruett Moore, III.
State Bar No. 14362225
Southern District of Texas Bar No. 15267
Constant & Vela
802 N. Carancahua
Corpus Christi, Texas 78470
Ph. 361-887-8800
Fax.  361-887-8010

## CERTIFICATE OF SERVICE

A true and correct copy of this Brief was served on all known counsel of record via facsimile, certified mail return receipt requested and/or U.S. regular mail on this 28th day of April, 2004.

D. Allen Hossley

R. Clay Hoblit
GONZALES HOBLIT FERGUSON, L.L.P.
Frost Bank Plaza
802 North Carancahua, Suite 2000
Corpus Christi, Texas   78470

and

All Known Defense Counsel of Record

IN THE UNITED STATES DISTRICT COURT FOR
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

DAVID RAY AMASON, et al.,                    §
                                             §
        Plaintiffs,                          §
                                             §
V.                                           §
                                             §      CIVIL ACTION NO. 2:03CV555
R E Y N O L D S    M E T A L S               §
COMPANY, et al.,                             §
                                             §
        Defendants.                          §

## ORDER OF PARTIAL DISMISSAL WITHOUT PREJUDICE

BE IT REMEMBERED that on this day came on to be heard Plaintiffs' Motion for Leave to Dismiss **Reynolds Metals Company, Aloca, Inc., Arlon Boatman, and Stan Millsap, only**. After considering said Motion for Leave and representations of counsel, this Court is of the opinion that this Dismissal Without Prejudice should be granted in its entirety; therefore, it is hereby

ORDERED, ADJUDGED AND DECREED that all Plaintiffs' claims against **Reynolds Metals Company, Aloca, Inc., Arlon Boatman, and Stan Millsap, only,** be dismissed. All costs of Court are taxed against the party incurring same.

IT IS FURTHER ORDERED that this Order of Dismissal Without Prejudice does not dispose of any other claims of Plaintiffs against any other Defendants in the above-referenced cause.

SIGNED this the _____ day of _____, 2004.


                                        _____
                                        JUDGE PRESIDING


Plaintiffs' Dismissal Without Prejudice.

**7**

Westlaw.

1999 WL 1338082
1999 A.M.C. 1851
**(Cite as: 1999 WL 1338082 (N.D.Ohio))**

Page 1

▶

United States District Court, N.D. Ohio, Eastern
Division.

Creighton E. MILLER, Administrator of the estate
of William B. Birch, Jr.
(Deceased) Plaintiff,
v.
AMERICAN PRESIDENT LINES, et al.,
Defendants.

**No. 1:91CV10775.**

April 26, 1999.

*MEMORANDUM OF OPINION*

MANOS, J.

**\*1** On April 22, 1998, Defendants American
President Lines, Ltd. and Matson Navigation Co.,
collectively "Shipowners" or "Defendants", filed a
Motion For Summary Judgment. This matter has
been fully briefed by the parties. For the following
reasons, the motion is GRANTED.

I. *FACTS*

Creighton E. Miller, plaintiff, is the administrator
of the estate of William B. Birch Jr., decedent. The
Decedent was employed for many years as a seaman
on various vessels. On April 7, 1988, according to
medical records, he was diagnosed with "acute
myelogenous leukemia". On November 11, 1988,
he died. (Defendants' Memorandum In Support,
Exs. A and B.)

On November 4, 1991, the Plaintiff filed suit under
the Jones Act, 46 U.S.C. § 688, which incorporates
provisions of the Federal Employers' Liability Act
("FELA"), 45 U.S.C. § 51 *et seq.* The suit was
brought against various shipowners and operators,
as well as chemical manufacturers. The original
Complaint alleged that the Decedent "was exposed
to asbestos and hazardous substances other than
asbestos", causing unspecified "injuries". The

Complaint named no toxins other than asbestos, nor
mentioned leukemia.

On December 13, 1991, the Plaintiff produced an
"Initial Data Form" which mentioned leukemia for
the first time. Asbestos and tobacco smoke were the
only toxins mentioned. (Defendants' Memorandum
In Support, Ex. C.)

In 1991, this case was transferred to the Eastern
District of Pennsylvania by the Judicial Panel for
Multidistrict Litigation. It was consolidated for
pretrial proceedings with all other pending personal
injury cases based on exposure to asbestos.
Subsequently, however, the Plaintiff withdrew all
allegations based on exposure to asbestos. On July
13, 1993, the Plaintiff filed a motion to remand the
case to the Northern District of Ohio purportedly
"so as not to prejudice allegations unrelated to
asbestos". (Plaintiff's Response, Ex. C.)   On
November 10, 1993, Judge Charles Weiner, after
finding the Plaintiff had abandoned the allegations
relating to asbestos, granted the motion stating "that
for the convenience of the parties and in the interest
of justice these actions [FN1] should be returned
there for further resolution." (Plaintiff's Response
Ex. B.)

> FN1. This case is one of many which have
> this same procedural history of originating
> in this district, subsequently being
> transferred to the **multidistrict litigation**,
> and returning here after the **asbestos**
> allegations were abandoned.

On March 2, 1995, the Shipowners moved for a
more definite statement pursuant to Fed.R.Civ.P.
12(e). They argued that because the asbestos
allegations had been dropped, the Complaint as
originally filed did not provide them with notice of
the nature of the action against them. The Court
granted the motion, but the Plaintiff did not amend
the Complaint in the time specified by the Court.
On March 11, 1996, the Court dismissed the case
for failure to prosecute. Subsequently, upon motion

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1999 WL 1338082
1999 A.M.C. 1851
(Cite as: 1999 WL 1338082 (N.D.Ohio))

by the Plaintiff, the Court reinstated the case to give the Plaintiff another opportunity to amend the Complaint.

On April 4, 1997, the Plaintiff filed an amended Complaint which alleged that the Decedent suffered leukemia caused by exposure to benzene and benzene- containing products. Such products included numerous types of gasolines, oils, paints and paint thinners, solvents, and similar products. ( *See* Amended Complaint at ¶ 13(a)-(g).)

**\*2** On April 22, 1998, the Shipowners filed the current motion alleging that summary judgment is appropriate because the Plaintiff has not met the three- year statute of limitations under the Jones Act. Specifically, they argue the Amended Complaint does not "relate back" to the filing date of the original Complaint pursuant to Fed.R.Civ.P. 15(c). Thus, the effective date of the Amended Complaint is its actual filing date in 1997, well after expiration of the statute of limitations. They make additional arguments that even the original Complaint was not timely filed.

The Court holds that the Amended Complaint does not relate back to the filing date of the original Complaint. The Court, therefore, need not address the other arguments.

## II. *LAW*
### A. *Summary Judgment Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The party moving for summary judgment bears the initial burden of production under Rule 56. The burden may be satisfied by presenting affirmative evidence that negates an element of the non-movant's claim or by demonstrating "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

If the movant meets this burden, the non-movant must "set forth the specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The

substantive law identifies which specific facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To avoid summary judgment, the non-movant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322.

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 256 (citing *Adickes v. Kress & Co.,* 398 U.S. 144, 158-59 (1970)). However, the non- movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) . "[T]he mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion" for summary judgment. *Anderson,* 477 U.S. at 247-48.

### B. *Relation Back*

Fed.R.Civ.P. 15(c) states in relevant part: "An amendment of a pleading relates back to the date of the original pleading when ... the claim or defense amended in the asserted pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." If the Amended Complaint relates back to the original Complaint, its effective filing date for statute of limitations purposes is November 4, 1991. If not, the effective filing date is April 4, 1997 and this action is time-barred.

**\*3** The relation back doctrine invokes the policies behind the statute of limitations, including fairness to the defendant in being able to anticipate the claims against it. *Percy v. San Francisco General Hospital,* 841 F.2d 975, 979 (9 th Cir1988). The pertinent inquiry is whether the original complaint gives a defendant fair notice of the newly alleged claims. *Wilson v. Fairchild Republic Co.,* 143 F.3d 733, 738 (2d Cir.1998); *Senger v. Soo Line Railroad Co.,* 493 F.Supp. 143, 145 (D. Minn 1980) . If the alteration of the original statement of a claim is so substantial that the defendant was not given adequate notice of the basis for the amended claim, then the amendment will not relate back. *O'Loughlin v. National Railroad Passenger Corp.,* 928 F.2d 24, 27 (1 st Cir.1991).

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1999 WL 1338082
1999 A.M.C. 1851
**(Cite as: 1999 WL 1338082 (N.D.Ohio))**

"If a plaintiff attempts to interject entirely different conduct or different transactions or occurrences into a case, then relation back is not allowed.... Conversely, if a plaintiff seeks to correct a technical difficulty, state a new theory of relief, or amplify the facts alleged in the prior complaint, then relation back is allowed." *F.D.I.C. v. Conner*, 20 F.3d 1376, 1385 (5 th Cir.1994); *see also Senger*, 493 F.Supp. at 145. The doctrine applies when an amendment alleges new events leading up to the same injury, or adds a new legal theory of recovery based on the same transaction or occurrence as originally pleaded. *Holdridge v. Heyer-Schulte Corp.*, 440 F.Supp. 1088, 1093 (N.D.N.Y.1997); *Koon v. Lakeshore Contractors*, 128 F.R.D. 650, 653 (W.D.Mich.1988), *aff'd without op.*, 889 F.2d 1087 (6 th Cir.1989). However, an amendment cannot set forth a new set of operational facts, but may only make more specific what has already been alleged. *Heaning v. Nynex--New York*, 945 F.Supp. 640, 648 (S.D.N.Y.1996); *Holdridge*, 440 F.Supp. at 1093; *Koon*, 128 F.R.D. at 653.

### III. *ANALYSIS*

The issue is whether the Amended Complaint relates back to the original Complaint. The original Complaint alleged that the Decedent "was exposed to asbestos and hazardous substances other than asbestos", causing unspecified "injuries". The Amended Complaint alleges he was exposed to "benzene, benzene containing products and other hazardous substances" which caused "injuries and losses, including, but not limited to Acute Myelogenous Leukemia".

The Defendants argue that the toxins are different with different mechanisms of exposure, and cause different diseases. They rely on *Dorland's Illustrated Medical Dictionary* (26 th Ed.1981) to support such differences. Thus, the original Complaint did not give them notice of the claims in the Amended Complaint. The Plaintiff does not dispute the Defendants' characterizations of the toxins and diseases. Instead, he argues the original Complaint afforded adequate notice despite these differences.

The Court has reviewed case law in which an amended complaint altered the description of the factual basis for a claim. For example, in *O'Loughlin v. National Railroad Passenger Corp.*,

928 F.2d 24 (1 st Cir.1994), the original complaint alleged: "On or about August 6, 1987, the Plaintiff, while working ... was injured due to unsafe and inadequate working conditions." The Court held that an amended complaint alleging an injury at work occurring on a different date did not relate back. *Id.* at 27. Similarly, in *Holdridge v. Heyer-Schulte Corp.*, 440 F.Supp. 1088 (N.D.N.Y.1977), the original complaint alleged injuries cause by a defective prosthesis. The amended complaint alleged injuries caused by replacement and additional prostheses. The Court held the amended complaint did not relate back, even as to a prosthesis actually referenced in the original complaint. *Id.* at 1094. *See also Mackenworth v. S.S. American Merchant*, 26 F.3d 246, 251-52 (2d Cir.1994) (a respiratory disease occurring in 1982 did not relate back to a back injury occurring on the same Defendant vessel in 1981); *Koon v. Lakeshore Contractors*, 128 F.R.D. 650, 653 (W.D.Mich.1988), *aff'd without op.*, 889 F.2d 1087 (6 th Cir.1989).

**\*4** None of these cases is identical to the case before this Court. However, they illustrate the general proposition that an amendment that substantially alters the factual basis for a claim does not relate back to the original Complaint. Such is the case here. Exposure to benzene does not occur or act in the same manner as exposure to asbestos. *Dorland's* descriptions of these toxins, and injuries they may cause, demonstrate this.

The Plaintiff argues the use of the phrase "hazardous substances other than asbestos" provided sufficient notice to warrant relation back. Thus, the Amended Complaint is merely an expansion of this phrase and does not present a new set of operable facts.

The Court disagrees. A comparison of this phrase to the facts alleged in subparagraphs 13(a)-(g) of the Amended Complaint belies the notion that the Defendants had notice of benzene claims by virtue of the original Complaint. Taken to its logical conclusion, the Plaintiff's position means the Defendants are forever on notice of claims arising out of exposure to any hazardous substance. The Court would emasculate the statute of limitations requirement if it gave the phrase "hazardous substances other than asbestos" the breadth the Plaintiff seeks.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1999 WL 1338082                                                                         Page 4
1999 A.M.C. 1851
(Cite as: 1999 WL 1338082 (N.D.Ohio))

The Plaintiff also relies on documents produced during discovery, including medical records and the death certificate, which placed the Defendants on notice that the Decedent had leukemia. Courts disagree on whether materials extrinsic to the Complaint can be the basis for the notice required. See, e.g., Holdridge, 440 F.Supp. at 1094 (in determining relation back, the court looks only to the original complaint, and not subsequent filings). Even Courts which look to extrinsic materials impose limits. Such materials may amplify, but not contradict, the allegations in the Complaint. O'Loughlin, 928 F.2d at 27.

Here, the extrinsic materials do not support the Plaintiff. Although the Initial Data Form identifies leukemia, it identifies asbestos and tobacco smoke as the only toxins to which the Decedent was exposed. If anything, by naming tobacco smoke in addition to asbestos, the Initial Data Form led the Defendants to believe that no other substances were involved. It produced no expectation of having to defend against exposure to additional chemicals, particularly benzene. [FN2]

> FN2. The Court also notes the Initial Data Form is dated December 13, 1991, after the expiration of the statute of limitations. This document, therefore, could not have provided timely notice. It is not clear whether the medical records or other discovery materials were produced prior to the Initial Data Form.

The Plaintiff also contends that Judge Weiner's remand order recognizes that a cognizable claim exists. He is incorrect. The Plaintiff's motion for remand states a remand is sought "so as not to prejudice allegations unrelated to asbestos exposure". (Plaintiff's Response Ex. C.) However, a party's own statement as to the reason for filing a motion is not binding on the Court. Judge Weiner's order does not constitute acceptance of the Plaintiff's position. The order merely recognizes that the case was no longer suitable for the **multidistrict litigation** because the **asbestos** allegations had been abandoned. Therefore, Judge Weiner remanded the case "for the convenience of the parties and in the interest of justice". (Plaintiff's Ex. B.) This general statement does not mean the

Plaintiff's benzene claims are timely. Indeed, the "interest of justice" includes the Defendants' right to assert all applicable defenses, including the statute of limitations.

*5 Similarly, the Plaintiff argues that this Court recognized the timeliness of the benzene claims when it granted the motion for a more definite statement. The opposite is true. When the Court required a more definite statement, it recognized the original Complaint was not adequate to inform the Defendants of the claims against them. In American Telephone and Telegraph Co. v. Delta Communications Corp., 114 F.R.D. 606 (S.D.Miss.1986), the Court granted leave to amend a complaint. The Plaintiff argued the leave constituted recognition that the amended complaint would relate back. The Court rejected this argument: "If amendment is allowed, the other party may then plead limitation and seek to have the claim dismissed, at which time the question of relation back should be considered." Id. at 611. The only difference in this case that the Defendants filed the motion requiring the Amended Complaint. In either situation, it is proper for the Court to accept an Amended Complaint, and then, with the new allegations before it, determine whether the amendment relates back.

IV. CONCLUSION

For the foregoing reasons, the Court holds that the Amended Complaint does not relate back to the original Complaint. The claims in the Amended Complaint, therefore, are barred by the statute of limitations. Although not all Defendants have joined in the current motion for summary judgment, the analysis in this opinion applies equally to them all. The claims in the Amended Complaint cannot be maintained against any Defendant.

Accordingly, the Motion For Summary Judgment is GRANTED and this case is hereby dismissed with prejudice in its entirety, each party to bear its own costs.

IT IS SO ORDERED.

1999 WL 1338082, 1999 WL 1338082 (N.D.Ohio), 1999 A.M.C. 1851

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

**Westlaw Attached Printing Summary Report for TINNEY,RANDALL 4465175**

| | |
|---|---|
| Your Search: | MULTIDISTRICT /2 LITIGATION /8 ASBESTOS |
| Date/Time of Request: | Wednesday, April 28, 2004 12:00:00 Central |
| Client Identifier: | AMASON |
| Database: | ALLFEDS |
| Citation Text: | 1999 WL 1338082 |
| Lines: | 261 |
| Documents: | 1 |
| Images: | 0 |

(C) 2004. Copyright is not claimed as to any part of the original work prepared by a U.S. government officer or employee as part of that person's official duties. All rights reserved. No part of a Westlaw transmission may be copied, downloaded, stored in a retrieval system, further transmitted or otherwise reproduced, stored, disseminated, transferred or used, in any form or by any means, except as permitted in the Westlaw Subscriber Agreement, the Additional Terms Governing Internet Access to Westlaw or by West's prior written agreement. Each reproduction of any part of a Westlaw transmission must contain notice of West's copyright as follows: "Copr. (C) 2004 West, a Thomson business. No claim to orig. U.S. govt. works."Registered in U.S. Patent and Trademark Office and used herein under license: KeyCite, Westlaw and WIN. WIN Natural Language is protected by U.S. Patent Nos. 5,265,065, 5,418,948 and 5,488,725.

Westlaw.

231 F.3d 242                                                          Page 1
2001 A.M.C. 1126, 48 Fed.R.Serv.3d 240, 2000 Fed.App. 0384P
**(Cite as: 231 F.3d 242)**

▷

United States Court of Appeals,
Sixth Circuit.

Creighton E. MILLER, Administrator of the Estates
of Juvenal J. Rezendes,
Deceased (99-3703), Louie E. Hudson, Deceased
(99-3705), Booker T. Pompey,
Deceased (99-3707), Walter L. Bowman, Deceased
(99-3708), William B. Birch,
Jr. (99-3709), Plaintiff-Appellant,
v.
AMERICAN HEAVY LIFT SHIPPING, et al.,
Defendants-Appellees.

**Nos. 99-3703, 99-3705, 99-3707 to 99-3709.**

Argued: June 21, 2000
Decided and Filed: Nov. 3, 2000

Administrator of the estates of five deceased
seamen brought suit against various shipowners and
operators, alleging survival and wrongful death
claims under the Jones Act and general admiralty
and maritime law. Subsequently, administrator filed
amended complaints in each case. The United
States District Court for the Northern District of
Ohio, John M. Manos, J., entered summary
judgment for defendants based on finding that
amended complaints were barred by statute of
limitations. Administrator appealed. The Court of
Appeals, Cole, Circuit Judge, held that amended
complaints, specifically alleging benzene exposure
claims, related back to original complaints alleging
that seamen's injuries were caused by exposure to
"asbestos and hazardous substances other than
asbestos."

Reversed and remanded.

Ralph B. Guy, Jr., Circuit Judge, filed dissenting
opinion.

West Headnotes

**[1] Federal Courts ☞776**
170Bk776 Most Cited Cases

Court of Appeals would review de novo district
court's decision that plaintiff's amended complaint
did not relate back to original complaint. Fed.Rules
Civ.Proc.Rule 15(c)(2), 28 U.S.C.A.

**[2] Federal Courts ☞776**
170Bk776 Most Cited Cases

Standard of review for district court's summary
judgment order is de novo. Fed.Rules
Civ.Proc.Rule 56, 28 U.S.C.A.

**[3] Federal Courts ☞776**
170Bk776 Most Cited Cases

Court of Appeals reviews de novo a district court's
determination that a complaint was filed outside the
relevant statute of limitations.

**[4] Limitation of Actions ☞127(2.1)**
241k127(2.1) Most Cited Cases

Whether a statute of limitations will be permitted to
bar an amended claim turns on whether the
amended claim arose out of the same conduct,
transaction, or occurrence as that set forth in the
original complaint. Fed.Rules Civ.Proc.Rule
15(c)(2), 28 U.S.C.A.

**[5] Limitation of Actions ☞127(2.1)**
241k127(2.1) Most Cited Cases

Court will permit a party to add even a new legal
theory in an amended pleading as long as it arises
out of the same transaction or occurrence.
Fed.Rules Civ.Proc.Rule 15(c)(2), 28 U.S.C.A.

**[6] Limitation of Actions ☞127(2.1)**
241k127(2.1) Most Cited Cases

Amendment that alleges added events leading up to
the same injury may relate back to original
complaint. Fed.Rules Civ.Proc.Rule 15(c)(2), 28
U.S.C.A.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

231 F.3d 242
2001 A.M.C. 1126, 48 Fed.R.Serv.3d 240, 2000 Fed.App. 0384P
**(Cite as: 231 F.3d 242)**

Page 2

**[7] Limitation of Actions** ☞**127(6)**
241k127(6) Most Cited Cases

Amended complaints brought on behalf of estates of deceased seamen related back, for limitations purposes, to original complaints filed against shipowners and operators, asserting survival and wrongful death claims under Jones Act and general maritime law, since benzene exposure claims in amended complaints arose out of same conduct, transaction, or occurrence as set forth in original complaints, which alleged that seamen's injuries were caused by exposure to "asbestos and hazardous substances other than asbestos." Jones Act, 46 App.U.S.C.A. § 688; Fed.Rules Civ.Proc.Rule 15(c)(2), 28 U.S.C.A.

**[8] Limitation of Actions** ☞**127(1)**
241k127(1) Most Cited Cases

Undue delay in filing, lack of notice to opposing party, bad faith by moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to opposing party, and futility of amendment are all factors which may affect decision of whether amended complaint should be permitted to relate back to original complaint, and, of these factors, notice and substantial prejudice to opposing party are critical in determining whether an amendment should be granted. Fed.Rules Civ.Proc.Rule 15(c)(2), 28 U.S.C.A.

**[9] Limitation of Actions** ☞**127(6)**
241k127(6) Most Cited Cases

Original complaints brought on behalf of deceased seamen, asserting survival and wrongful death claims against shipowners under Jones Act and general maritime law premised on seamen's exposure to asbestos and/or other hazardous substances, provided shipowners with adequate notice of benzene-related leukemia claims raised in amended complaints, as would allow relation-back of amended claims, since original complaints made clear that seamen had suffered latent injuries, based upon exposure to toxic substances on board shipowners' vessels, resulting in illness and eventual death. Jones Act, 46 App.U.S.C.A. § 688; Fed.Rules Civ.Proc.Rule 15(c)(2), 28 U.S.C.A.
**\*244** John C. Cardello (argued and briefed), Donald A. Krispin (briefed), The Jaques Admiralty Law Firm, Detroit, Michigan, for Plaintiff-Appellant.

Harold W. Henderson (argued and briefed), Richard C. Binzley (briefed), Thompson Hine & Flory LLP, Cleveland, Ohio, for Defendants-Appellees.

Gene B. George (briefed), Ray, Robinson, Carle & Davies, Cleveland, Ohio, for Defendant-Appellee in No. 99-3708.

Before: MERRITT, GUY, and COLE, Circuit Judges.

COLE, J., delivered the opinion of the court, in which MERRITT, J., joined. GUY, J. (pp. 252-53), delivered a separate dissenting opinion.

**OPINION**

COLE, Circuit Judge.

Plaintiff-Appellant Creighton E. Miller is the administrator of the estates of five deceased seamen. In the years 1990-1992, Miller brought five separate actions against various shipowners and operators, alleging survival and wrongful death claims under the Jones Act, 46 U.S.C.App. § 688, and general admiralty and maritime law. In 1997, Miller filed amended complaints in each case. The district court found that the amended complaints did not relate back to the original complaints pursuant to Fed.R.Civ.P. 15(c)(2), and, as such, were barred by the three-year Jones Act statute of limitations. For the reasons discussed below, we REVERSE the decision of the district court and REMAND for further proceedings consistent with our opinion.

**I. BACKGROUND**

Miller is the administrator of the estates of Juvenal J. Rezendes, William B. Birch, Jr., Walter L. Bowman, Louie E. Hudson, and Booker T. Pompey ("the seamen"). Each of the seamen worked for many years on various ships. All the seamen were diagnosed with leukemia prior to their deaths in 1987, 1988, or 1989. In 1990, 1991, and 1992, Miller brought suit under the Jones Act, 46 U.S.C.App. § 688, [FN1] and general maritime law

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

231 F.3d 242                                                                              Page 3
2001 A.M.C. 1126, 48 Fed.R.Serv.3d 240, 2000 Fed.App. 0384P
(Cite as: 231 F.3d 242)

against Defendants- Appellees American Heavy Lift Shipping, et al. (on behalf of Rezendes), American President Lines, Ltd., et al. (on behalf of Birch), Amerada Hess Corp., et al. (on behalf of Bowman), Alcoa Steamship Company, Inc., et al. (on behalf of Hudson), and Farrell Lines, Inc. (on behalf of Pompey) (collectively, "Shippers"). *See Smith v. Gulf Oil Co.,* 995 F.2d 638, 642 n. 3 (6th Cir.1993). In each case, Miller brought suit prior to the running of the Jones Act's three-year statute of limitations. *See* 46 U.S.C.App. § 688 (incorporating by reference the three-year statute of limitations contained in 45 U.S.C. § 56); *245 Mamer v. Apex R.E. & T.,* 59 F.3d 780, 782 n. 2 (8th Cir.1995). In the complaints, all of which were substantively identical (only the headers and named defendants differed), Miller raised both survival and wrongful death actions, based on theories including negligence and breach of duty to maintain a safe and seaworthy vessel. Miller alleged that the seamen had sustained injuries as a result of their exposure to asbestos and to hazardous substances other than asbestos while working as seamen. In particular, the relevant language of each complaint reads as follows:

> FN1. Title 46 U.S.C.App. § 688(a) provides:
>
> Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in the case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable.
>
> The statute's incorporation of statutes applying to railway employees refers to the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51 et seq. *See Hernandez v. Trawler Miss Vertie Mae, Inc.,* 187 F.3d 432, 436 (4th Cir.1999).

10. While serving as a mariner on said vessels, Plaintiff's decedent was exposed to hazardous substances other than asbestos.

11. As a direct and proximate consequence of his exposure to hazardous substances other than asbestos, Plaintiff's decedent has sustained injuries....

Later in each complaint, Miller further stated:

16. While serving as a mariner on said vessels, Plaintiff's decedent was exposed to asbestos and hazardous substances other than asbestos.

17. As a direct and proximate consequence of Plaintiff's decedent['s] combined exposure to asbestos and hazardous substances other than asbestos, Plaintiff's decedent has sustained injuries.

In response to numerous asbestos-related personal injury actions filed by seamen in the Northern District of Ohio, the court created a special Ohio Maritime Asbestos Litigation Docket (known as "MARDOC"). *See Gulf Oil Co.,* 995 F.2d at 639. Miller's five actions were transferred to MARDOC. As part of the MARDOC litigation, Miller produced an "Initial Data Form" ("IDF"), a summary of basic information about each claim, for each of his five claims. Miller apparently produced the IDFs within weeks or months of filing his complaints and made them available to Shippers as part of the discovery process; however, the IDFs were not filed with the court. On the Rezendes IDF, Miller stated that Rezendes suffered from colon cancer, but did not mention leukemia; under the heading labeled "Toxin," Miller inserted "Asbestos-Tobacco Smoke." On Birch's IDF, Miller identified leukemia, in addition to other illnesses, and again identified asbestos and tobacco smoke under the "Toxin" heading. Bowman's IDF did not specify any illness, but listed asbestos and tobacco smoke as toxins. Hudson's IDF identified leukemia as an illness but listed only asbestos as a toxin. Pompey's IDF identified leukemia as an illness and listed asbestos and tobacco smoke as toxins. At some point during the course of litigation--the timing is not clear from the record before us--Miller also produced death certificates for each of the deceased seamen which indicated that some form of leukemia was the cause, or a contributing factor to, each sailor's death.

In 1991 and 1992, the Judicial Panel on Multidistrict Litigation transferred thousands of

231 F.3d 242
2001 A.M.C. 1126, 48 Fed.R.Serv.3d 240, 2000 Fed.App. 0384P
(Cite as: 231 F.3d 242)

asbestos claims, including the five cases Miller currently appeals, to the Eastern District of Pennsylvania for pretrial proceedings, pursuant to 28 U.S.C. § 1407. See *In re Asbestos Prods. Liab. Litig.,* 771 F.Supp. 415 (J.P.M.L.1991). In July 1993, Miller filed a "Motion to Strip and Remand" in each of the five cases on appeal. In the motions, Miller asked the court to strip his claims of all allegations relating to asbestos exposure "so as not to prejudice allegations unrelated to asbestos exposure appertaining [to] toxin exposure which resulted in affliction of the respective seamen, whether living or deceased, of leukemic disease." [FN2] Judge Weiner granted the motion in November 1993, and issued an order transferring the seamen's cases back to the Northern District of Ohio for further resolution. In so doing, Judge Weiner found that the "form of action in these *246 cases is now dissimilar to traditional asbestos-related, personal injury actions," and that plaintiff seamen had "abandoned any claim for recovery based upon injury resulting from asbestos exposure and ... are hereby precluded from claiming damages resulting from injury due to exposure to asbestos products."

> FN2. In an affidavit dated September 27, 1993, Miller's counsel stated that the only causes of action the deceased seamen wished to pursue were those related to their deaths by leukemia, which he alleged were caused by exposure to benzene.

In March 1995, Shippers filed a consolidated motion for a more definite statement of Miller's claims, *see* Fed.R.Civ.P. 12(e), arguing that because Miller had not specifically pleaded either leukemia or benzene exposure, his complaints were insufficient to put them on notice of the benzene claims he now argued. The court granted the motion in January 1996, finding the complaints to be vague and ambiguous. The court ordered Miller to file amended complaints within sixty days addressing several issues, including Miller's theory of liability and "the specific cargo or other substances aboard each vessel alleged to have contained benzene." Although the district court dismissed the actions when Miller failed to file the amended complaints within the sixty-day time period, the court reinstated the claims in February

1997, pursuant to Fed.R.Civ.P. 60(b).

In April 1997, Miller filed amended complaints on behalf of the estates of each of the deceased seamen. In the amended complaints, Miller again alleged theories of liability under both the Jones Act, 46 U.S.C.App. § 688, and general admiralty and maritime law. Miller claimed that his decedents had suffered from leukemia as a result of exposure to benzene and benzene- containing products, and listed specific instances and methods of exposure on particular ships. In April 1998, Shippers filed for summary judgment, arguing that Miller's 1997 amended complaints did not relate back to his original complaints, which had been filed in 1990-1992. Shippers also argued in each case that Miller's survival action was barred by the three-year statute of limitations because his claims had accrued before decedents' deaths, and thus more than three years prior to the filing of the original claims. [FN3]

> FN3. In addition, Shippers alleged in their motions for summary judgment that Rezendes could not prove that he died of leukemia, and that Hudson's wrongful death claim was barred by the applicable statute of limitations. The district court did not reach these arguments. See *infra,* note 4.

The district court granted summary judgment to Shippers in each case. In five nearly identical memorandum opinions, the court addressed only the relation-back question, finding that none of the amended complaints related back to the original filing. The court relied on Shippers' uncontested argument that different toxins and different methods of exposure cause different diseases, and found that "[e]xposure to benzene does not occur or act in the same manner as exposure to asbestos." The court found that Miller's original allegation that seamen had been exposed to "hazardous substances other than asbestos" was insufficient to put Shippers on notice of the benzene- related claims, and concluded that "[t]aken to its logical conclusion, Plaintiff's position means the Defendants are forever on notice of claims arising out of exposure to any hazardous substance." Miller filed a timely notice of appeal.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

231 F.3d 242
2001 A.M.C. 1126, 48 Fed.R.Serv.3d 240, 2000 Fed.App. 0384P
**(Cite as: 231 F.3d 242)**

Page 5

## II. STANDARD OF REVIEW

[1] The parties disagree about the standard by which we review the district court's decision that Miller's amended complaints do not relate back to his original complaints for purposes of Rule 15(c)(2) . Miller argues that this court reviews *de novo* a grant of summary judgment based on the running of a statute of limitations. Shippers argue that we review the district court's decision for abuse of discretion.

[2][3] The standard of review for the district court's summary judgment order is, of course, *de novo.* *See Smith v. Ameritech,* 129 F.3d 857, 863 (6th Cir.1997). Further, Miller is correct that this court reviews *de novo* a district court's determination *247 that a complaint was filed outside the relevant statute of limitations. *See Tolbert v. State of Ohio Dep't of Transp.,* 172 F.3d 934, 938 (6th Cir.1999). The district court's order turns, however, on the court's finding that Miller's amended claims do not relate back to the original claims pursuant to Rule 15(c)(2). As we shall discuss, the question of whether an amended claim relates back to an earlier filed complaint pursuant to Fed.R.Civ.P. 15(c)(2) requires us to determine whether the amended claim "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." *See* Fed.R.Civ.P. 15(c)(2). This inquiry requires us to apply the legal standard of Rule 15(c)(2) to a given set of facts, a task we are no less suited to perform than the district court. *See Slade v. United States Postal Service,* 875 F.2d 814, 815 (10th Cir.1989) (stating that application of Rule 15(c) to undisputed facts is "purely legal determination" that is reviewed *de novo* ); *Paul Revere Life Ins. Co. v. Brock,* 28 F.3d 551, 553 (6th Cir.1994) (stating that mixed questions of law and fact are reviewed *de novo* ). Accordingly, we review *de novo* the district court's decision to deny relation back of an amended complaint to the original complaint. *See Dominguez v. Miller (In re Dominguez),* 51 F.3d 1502, 1509 (9th Cir.1995) (stating that review of Rule 15(c)(2) decision that permits or denies amendment to add a new claim against defendant named in original complaint is *de novo* ).

## III. DISCUSSION

On appeal, Miller argues that the district court

erred by finding that the amended complaints do not relate back to the original complaints. [FN4] Miller's argument is comprised of essentially three assertions: 1) that the Federal Rules of Civil Procedure require a plaintiff to give a defendant only general notice of his claims, and that Millers's original complaints provided such notice; 2) that his amended complaints relates back because the claims in the amended complaints arose out of the same conduct, transaction, or occurrence as set forth in his original complaints; and 3) that both the original complaints and information outside of the complaints gave Shippers adequate notice of their potential liability for the claims raised in the amended complaints.

> FN4. Miller argues in the alternative that the district court erred by failing to determine whether the causes of action in the amended complaints did not accrue until he was aware of both the nature of the decedent seamen's injuries and their cause.
> Because we find that Miller's amended complaints do relate back to the original complaints, we do not reach this alternative argument. Nor do we pass judgment on Shippers' argument that even Miller's original claims were filed outside of the relevant statute of limitations, as we are not inclined to review a theory which, as in this case, the district court has not first reviewed. *See United States v. Baker,* 807 F.2d 1315, 1321 (6th Cir.1986) (stating that "courts of appeals generally refuse to consider issues not passed upon by lower courts"). We reach only the question of whether Miller's amended claims relate back to the original claims pursuant to Rule 15(c)(2), and leave it to the district court to resolve on remand whatever further issues may exist in this case.

### A. General Notice Required by Rules

Miller first argues that the Federal Rules of Civil Procedure require only that a pleading contain a short and plain description of the court's jurisdiction, the pleader's claim for relief, and a demand for the judgment the pleader seeks. *See*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

231 F.3d 242
2001 A.M.C. 1126, 48 Fed.R.Serv.3d 240, 2000 Fed.App. 0384P
**(Cite as: 231 F.3d 242)**

Page 6

Fed.R.Civ.P. 8(a). Miller contends that his original complaints, which alleged that the deceased seamen's injuries were caused by exposure to "asbestos and hazardous substances other than asbestos," were sufficient to cover his subsequent allegations of benzene-related claims. There can be no dispute that our modern rules of civil procedure are based on the concept of "simplified 'notice pleading,' " *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), and that "[a]ll pleadings shall be so construed as to do substantial justice." *248 Fed.R.Civ.P. 8(f). This can indeed be seen in the basic requirements for a claim for relief as set forth in Rule 8(a) [FN5], and in the dictate of Rule 15(a), which states that a court shall grant a party leave to amend a complaint "freely ... when justice so requires." Fed.R.Civ.P. 15(a); *see also Moore v. City of Paducah,* 790 F.2d 557, 559 (6th Cir.1986). This fundamental tenor of the Rules is one of liberality rather than technicality, and it creates an important context within which we decide cases under the modern Federal Rules of Civil Procedure. Nonetheless, this tenor does not necessarily mandate a particular outcome on its own, as Miller suggests. Rather, we must examine the more specific requirements of Rule 15(c) in order to determine whether Miller's amended complaints relate back to the original pleadings.

FN5. Fed.R.Civ.P. 8(a) states:
**(a) Claims for Relief.** A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

**B. Same Conduct, Transaction, or Occurrence**

[4] Rule 15(c)(2) states that:
An amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.
Fed.R.Civ.P. 15(c)(2). As this court recently explained, whether a statute of limitations will be permitted to bar an amended claim turns on whether the amended claim arose out of the same conduct, transaction, or occurrence as that set forth in the original complaint:
The rule is based on the notion that once litigation involving particular conduct or a given transaction or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of defenses or claims that arise out of the same conduct, transaction, or occurrence as set forth in the original pleading.
*Brown v. Shaner,* 172 F.3d 927, 932 (6th Cir.1999)

[5][6] This court has stated that "the thrust of Rule 15 is to reinforce the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.' " *Moore,* 790 F.2d at 559 (quoting *Tefft v. Seward,* 689 F.2d 637, 639 (6th Cir.1982)). Thus, a court will permit a party to add even a new legal theory in an amended pleading as long as it arises out of the same transaction or occurrence. *See Hageman v. Signal L.P. Gas, Inc.,* 486 F.2d 479, 484 (6th Cir.1973) ("where the parties are the same, ... an amendment which adds another claim arising out of the same transaction or occurrence does relate back to the date of the original complaint."); *Koon v. Lakeshore Contractors,* 128 F.R.D. 650, 653 (W.D.Mich.1988) ("an added theory of liability for the same occurrence may relate back." (citing *Hageman* )), *aff'd without opinion,* 889 F.2d 1087 (Table), 1989 WL 137151 (6th Cir. Nov. 15, 1989); *see also* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1497, at 94-95, 98-99 (1990 & Supp.2000) ("an amendment that states an entirely new claim for relief will relate back as long as it satisfies the test embodied in ... Rule 15(c)."). Likewise, "[a]n amendment that alleges added events leading up to the same injury may relate back." *Koon,* 128 F.R.D. at 653 (citing *249Tiller v. Atlantic Coast Line R. Co.,* 323 U.S. 574, 581, 65 S.Ct. 421, 89 L.Ed. 465 (1945)).

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

231 F.3d 242
2001 A.M.C. 1126, 48 Fed.R.Serv.3d 240, 2000 Fed.App. 0384P
(Cite as: 231 F.3d 242)

[7] Miller argues that the amended claims arose out of the same conduct, transaction, or occurrence as the original claims. *See* Fed.R.Civ.P. 15(c)(2). Miller asserts that, under the amended complaints, Shippers are liable for the same conduct--negligently exposing the deceased seamen to toxins and failing to maintain the seaworthiness of their vessels--as he alleged in his original complaints. He further claims that the amended complaints simply named the "hazardous substance other than asbestos" with more specificity than did the original complaints, and that the two sets of complaints concerned the same time period and the same injuries.

Under the Rules described above, we find this argument to be persuasive. Miller brought his original complaints under the Jones Act, 46 U.S.C.App. § 688, and general admiralty and maritime law. The original complaints included theories of negligence, unseaworthiness, wrongful death, and loss of society and companionship. The amended complaints also arise under the Jones Act and general admiralty and maritime law, and include theories of negligence, unseaworthiness, wrongful death, and loss of society and companionship. More important, each original complaint alleged that, "[w]hile serving as a mariner on said vessels, Plaintiff's decedent was exposed to hazardous substances other than asbestos," and that "[a]s a direct and proximate consequence of his exposure to hazardous substances other than asbestos, Plaintiff's decedent has sustained injuries." The amended complaints are very similar, with the added specificity that the "hazardous substances" originally pleaded included benzene and that the injuries originally claimed came in the form of leukemia. Each amended complaint states that "Plaintiff's Decedent was required by his employers to perform duties which included the constant exposure to chemical carcinogens including benzene," and that that exposure caused the decedent to suffer from leukemia. The amended complaints then state the particular benzene-containing substances to which each decedent was allegedly exposed, and on which ship the exposure occurred. Thus, the amended complaints simply plead with more specificity that which appeared in the original complaints: Shippers' liability for exposing decedents to a hazardous substance. *See Tiller,* 323 U.S. at 581, 65 S.Ct. 421 ("The cause of action now, as it was in the beginning, is the same--it is a suit to recover damages for the alleged wrongful death of the deceased."); *see also* 3 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 15.19[2], at 15-82 (3d ed. 1999) ("Amendments that amplify or restate the original pleading or set forth facts with greater specificity should relate back.").

Shippers argue strenuously that the amended complaints do not arise out of the same conduct, transaction, or occurrence as the original complaints, because they contain new "operative facts." [FN6] It is true that a claim with entirely different "operative facts" will not relate back. *See Koon,* 128 F.R.D. at 653 (finding that new claim of lower back injury sustained while jumping to the ground from a fence does not relate back to original complaint of neck injury sustained while lifting heavy object on board a barge). But Miller alleged the very same general set of facts in the amended complaints as he did in the original ones: that decedents worked for many years on Shippers' vessels, that they were exposed to hazardous substances during *250 that time due to Shippers' negligence, and that they sustained injuries in the form of lethal diseases due to their exposure to hazardous substances. Shippers' arguments that injuries arising from exposure to asbestos are materially different from injuries arising from exposure to benzene--an argument which is derived from a few definitions in a medical dictionary, *see* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 145-46, 191 (28th ed.1994), and upon which the district court relied--is unconvincing. To focus on the particular pathologies of a given carcinogen is far too formalistic and specific for the general, non-technical requirements of Rule 15. This is especially the case with diseases such as cancer and leukemia, which may be idiopathic and which may arise from sources that are impossible to identify before extensive discovery (if at all). Accordingly, the benzene exposure claims Miller details in the amended complaints fit comfortably within the claims of exposure to "hazardous substances" that he alleged in the original pleading. [FN7]

FN6. Shippers also propose that the court evaluate whether the complaints arise out of the same conduct, transaction, or occurrence by using two tests: 1) whether

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

231 F.3d 242
2001 A.M.C. 1126, 48 Fed.R.Serv.3d 240, 2000 Fed.App. 0384P
(Cite as: 231 F.3d 242)

Page 8

the evidence offered in support of the original claim would prove the new claim, and 2) whether the new claim alters the "when, where, what, or how" of the alleged injury. We reject these formulations as being too mechanical for the liberal approach of Rule 15(c). *See* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, § 1498, at 102-03 (noting that mechanical tests are "too narrow and restrictive, out of harmony with the Federal Rules, and ought to be replaced with an approach that takes an over-all view of the problem." (internal quotation marks and citation omitted)).

FN7. The dissent argues that the amended complaints substantially altered the factual basis of Miller's original claims in that "the mechanisms, times, circumstances of, and diseases caused by shipboard exposure to benzene differed significantly from those of shipboard exposure to asbestos." Miller's original complaint, however, did not contain any asbestos-specific allegations of such "mechanisms, times, circumstances ..., and diseases." Rather, Miller's original allegations relating to the circumstances in which the decedents sustained their injuries were essentially bare statements that the decedents had been exposed to asbestos and other hazardous substances onboard Shippers' vessels. While it is true that Miller's amended complaint more specifically described the substances aboard each vessel alleged to have contained benzene, these claims do not substantially alter the factual basis of Miller's original charges. On the contrary, Miller's amended complaint simply reflects a more particularized statement of his original claim of exposure to "hazardous substances other than asbestos."

### C. Notice to Shippers

[8] Although the focus of our inquiry into whether an amendment relates back pursuant to Rule 15(c)(2) is whether it arises from the same conduct,

transaction, or occurrence, we look to other factors as well. "Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision." *Hageman,* 486 F.2d at 484. Of these factors, "[n]otice and substantial prejudice to the opposing party are critical ... in determining whether an amendment should be granted." *Id.; see also Brown,* 172 F.3d at 934 (permitting relation back of amended complaint where defendants " 'knew or should have known' " that they were targets of § 1983 suit).

[9] Miller argues that his original complaints put Shippers on notice that they must defend Jones Act and general maritime law toxic tort actions which alleged wrongful death due to exposure to asbestos and/or other hazardous substances. Shippers respond that Miller's non-specific, general allegations were insufficient to put them on notice of his benzene-related leukemia claims. [FN8] In this context, the parties *251 argue the relevance of *Tiller v. Atlantic Coast Line R. Co.,* 323 U.S. 574, 65 S.Ct. 421, 89 L.Ed. 465 (1945), to the instant case. In *Tiller,* the wife of a railroad employee who was killed on the job sued the defendant rail company under the FELA, 45 U.S.C. § 51 et seq. *See* 323 U.S. at 575, 65 S.Ct. 421. The plaintiff alleged that her husband's death was caused by the negligent operation of a railroad car that struck and killed him and by defendant- railroad's failure to provide her husband with a reasonably safe place to work. *Id.* Plaintiff later filed an amended complaint in which she added a claim under the Federal Boiler Inspection Act, charging that the locomotive was not properly lighted. *See id.* at 580-81, 65 S.Ct. 421. Applying Rule 15(c), the Court held that both complaints "related to the same general conduct, transaction, and occurrence," and that defendant "had notice from the beginning that [plaintiff] was trying to enforce a claim against it because of the events leading up to the death of the deceased in the [defendant's] yard." *Id.* at 581, 65 S.Ct. 421.

FN8. Miller also claims that certain evidence extrinsic to the pleadings gave Shippers notice of his benzene-related leukemia claims. Shippers disagree, arguing that notice of an additional claim

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

231 F.3d 242
2001 A.M.C. 1126, 48 Fed.R.Serv.3d 240, 2000 Fed.App. 0384P
(Cite as: 231 F.3d 242)

Page 9

must be found within the original complaint itself rather than in extrinsic sources. The dissent appears to agree with Miller that extrinsic evidence is relevant to the notice question, but points out that the IDFs submitted by Miller to Shippers during discovery failed to mention benzene as a possible toxin. Although we are inclined to believe that notice may be provided by sources outside the pleadings, *see* 6A Wright et al. § 1497, at 92-93 (stating that permitting extrinsic evidence to serve as notice "seems sound since it is unwise to place undue emphasis on the particular way in which notice is received."); 27A Lawyer's Cooperative Publishing, FEDERAL PROCEDURE : LAWYERS EDITION § 62:336, at 127 (1996) ("notice may ... be received from outside the pleadings"), we do not decide the instant case based upon either Miller's or the dissent's extrinsic evidence. Rather, we find that Miller's original complaints provided Shippers with adequate notice of the charges raised in the amended complaints.

Shippers contend that *Tiller* is inapposite to the instant case because the amendment in *Tiller* did not fundamentally change the nature of plaintiff's claim, in that both the original claim and the amended claim involved a single, traumatic incident within the defendant's knowledge. Shippers assert that they, in contrast to the *Tiller* defendant, had no knowledge of the deceased seamen's leukemic injuries until Miller filed the amended complaints, many years after decedents were allegedly injured. We disagree. The original complaints in this case made clear that the deceased seamen had suffered latent injuries, based upon exposure to toxic substances on board Shippers' vessels, that resulted in their illnesses and eventual deaths. *See Benco Plastics, Inc. v. Westinghouse Elec. Corp.*, 387 F.Supp. 772, 783 (E.D.Tenn.1974) (stating that "the rule to be followed in federal courts is that if there is an identity between the amendment and the original complaint with regard to the general wrong suffered and with regard to the general conduct causing such wrong, then the amendment shall relate back and the statute of limitations would not avail to preclude a hearing on the merits." (internal quotation marks and citation omitted)). The amended claim in *Tiller* appears to have gone further yet, stating a new theory of recovery by referring to a statute not alleged in the original complaint (*i.e.*, the Federal Boiler Inspection Act). *See id.* at 580, 65 S.Ct. 421. Yet, the *Tiller* Court found that the defendants were on notice based upon the original complaint. *Id.* at 581, 65 S.Ct. 421. We thus conclude that the *Tiller* Court's broad application of Rule 15(c) supports Miller's relation-back theory. *See id.* at 580-81, 65 S.Ct. 421.

Nor are we persuaded by Shippers' argument that Miller's original complaints were so general that, if they are construed to give notice of benzene-related leukemia claims, defendants in asbestos cases will be forever on notice of claims arising out of exposure to any hazardous substance. The district court relied on this reasoning in its decision, finding that "the Court would emasculate the statute of limitations requirement if it gave to the phrase 'hazardous substances other than asbestos' the breadth [Miller] seeks." This reasoning is only facially appealing. The complaints in this case alleged that Shippers' former employees had died as a result of being exposed to hazardous substances aboard the vessels Shippers owned and operated. Shippers were on notice that they needed to collect and preserve evidence relating to the working environment in their ships. Miller, for his part, had the right and responsibility to pursue through discovery the nature and circumstances of decedents' *252 working environments and deaths. To be sure, both parties may have had difficult tasks in conducting this discovery, but that difficulty goes to the substance of the lawsuit rather than to whether Shippers knew that they were being sued, and on what general grounds. If, at some point in the future, Miller attempts to amend his claim again, the court will be free to determine whether it should relate back, looking to possible prejudice to the parties, unwarranted delay, futility, and the other factors appropriately considered under Rule 15(c). *See Hageman*, 486 F.2d at 484. These factors are an adequate protection against Shippers being forever liable for claims arising from Miller's original pleading.

One more case demands our discussion. The parties argue the relevance of *Smith v. Gulf Oil Co.*, 995 F.2d 638 (6th Cir.1993), in which this court

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

231 F.3d 242
2001 A.M.C. 1126, 48 Fed.R.Serv.3d 240, 2000 Fed.App. 0384P
(Cite as: 231 F.3d 242)

Page 10

held that the district court did not abuse its discretion under Fed.R.Civ.P. 16 by foreclosing plaintiff-seamen's argument that injuries they alleged were caused by tobacco smoke in defendants' ships. *Id.* at 644. In *Smith,* seamen brought asbestos claims similar to the original claims in the instant case. *Id.* at 640. As in the instant case, the *Smith* plaintiffs alleged that their injuries resulted from exposure to asbestos and to "hazardous substances other than asbestos." *Id.* at 643. The plaintiffs pursued only the asbestos claims until two days *after* trial commenced. *See id.* at 642. When the *Smith* defendant-shipowners moved to argue evidence of plaintiff seamen's individual smoking habits in defending, plaintiffs moved to argue that tobacco smoke was a hazardous condition for which the shipowners could be liable. *Id.* at 640. This court upheld the district court's ruling that plaintiff seamen could not argue the tobacco theory on the grounds that plaintiff's counsel had never seriously pursued it. *Id.* at 644.

The relevance of *Smith* to this case is minimal. First, we typically review a district court's case-management decision made pursuant to Rule 16 for abuse of discretion. *See, e.g., Muckleshoot Tribe v. Lummi Indian Tribe,* 141 F.3d 1355, 1358 (9th Cir.1998). As discussed *supra,* we review the district court's decision to forbid relation back pursuant to Rule 15(c)(2) *de novo. See Dominguez,* 51 F.3d at 1509. Second, counsel in *Smith* never formally pursued the tobacco theory, but rather adopted it as a trial tactic at the last minute. *Id.* at 643. In the instant case, Miller filed amended complaints alleging the benzene claims, and pursued them in the lower court. Thus, *Smith* has little relevance to the instant case.

## IV. CONCLUSION

For the reasons discussed, we REVERSE the decision of the district court and REMAND the case for further proceedings consistent with this opinion.

RALPH B. GUY, Jr., Circuit Judge, dissenting.

Even under the *de novo* standard of review, I cannot agree that the amended complaints at issue in this case relate back to the date of the original pleadings under Rule 15(c)(2). The rationale

behind this rule is to allow relation back when the defendant has been put on notice, through the pleadings or other sources, of the entire scope of the transaction or occurrence. *See Barcume v. City of Flint,* 819 F.Supp. 631, 636 (E.D.Mich.1993) (citing Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, federal Practice And Procedure Civil 2d §§ 1496-97). The focus of the inquiry is not whether the claim or theory in the amended complaint is new, but rather whether it arose out of the same conduct, transaction, or occurrence. *See Hageman v. Signal L.P. Gas, Inc.,* 486 F.2d 479, 484 (6th Cir.1973) (added theory for same occurrence may relate back). [FN1] An amendment that states a claim based *253 upon different facts will not relate back to the date of the original complaint. *See Koon v. Lakeshore Contractors,* 128 F.R.D. 650, 653 (W.D.Mich.1988), *aff'd without opinion,* 889 F.2d 1087 (6th Cir.1989) (amendment alleging negligence and unsafe working conditions under Jones Act did not relate back because it involved different injuries that occurred in different ways).

> FN1. For example, in *Tiller v. Atlantic Coast Line R. Co.,* 323 U.S. 574, 65 S.Ct. 421, 89 L.Ed. 465 (1945), the amendment added a new claim arising out of a single accident that led to the death of a railroad employee. In *Brown v. Shaner,* 172 F.3d 927, 932-33 (6th Cir.), *cert. denied,* 528 U.S. 966, 120 S.Ct. 403, 145 L.Ed.2d 315 (1999), the amended complaint alleged the same claims under 42 U.S.C. § 1983, but added the allegations that the defendants were being sued in their individual capacities. Not surprisingly, the court in *Brown* found that the amendment related back to the filing of the original complaint.

In this case, the original complaints alleged injuries from exposure to "asbestos" and "hazardous substances other than asbestos." The complaints did not mention leukemia, benzene, or any toxin other than asbestos. Each of the IDF's provided to the defendants shortly after the cases were filed identified the toxin either as "asbestos and tobacco smoke" or "asbestos," but did not mention benzene. The majority's conclusion that the amended complaints merely pled with more specificity the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

231 F.3d 242
2001 A.M.C. 1126, 48 Fed.R.Serv.3d 240, 2000 Fed.App. 0384P
**(Cite as: 231 F.3d 242)**

Page 11

same claims, ignores the district court's finding that the original complaints did not give adequate notice of the benzene claims. I agree with the district court that the amended complaints substantially altered the factual basis for the toxic tort claims by alleging that the decedents suffered from leukemia caused by exposure to dangerous concentrations of benzene in the air, potable water, and on exposed skin from working with or in close proximity to products containing benzene. There is no dispute that the mechanisms, times, circumstances of, and diseases caused by shipboard exposure to benzene differed significantly from those of shipboard exposure to asbestos. These are the operative facts that determine whether the amendments arose from the same conduct, transaction, or occurrence as the original complaints. For these reasons, I respectfully dissent.

231 F.3d 242, 2001 A.M.C. 1126, 48 Fed.R.Serv.3d 240, 2000 Fed.App. 0384P

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works