EXHIBIT A

MDL 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 19 2004

FILED
CLERK'S OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TOMMY RONALD TULL, individually, and as Special Administrator of the Estate of Glenn Tull, deceased, ) ) ) ) Plaintiff, ) ) vs. ) ) A.W. CHESTERTON, INC., et al., ) ) Defendants. ) | Case No. 04-cv-0174-MJR |

## MEMORANDUM and ORDER

**REAGAN, District Judge:**

### I. INTRODUCTION

On December 9, 2003, Tommy Tull filed suit in the Circuit Court of Madison County, Illinois against 112 Defendants, each of whom Tull claimed caused his father, Glenn Tull (a welder and pipe-fitter who is now deceased), to be injured on the job via airborne exposure to asbestos. Tommy Tull's 11-count complaint contains (*inter alia*) claims of negligence, strict products liability, willful and wanton conduct, and spoliation of evidence against the asbestos manufacturer/seller Defendants. The complaint also alleges that Defendant Metropolitan Life Insurance Company conspired with the manufacturers and sellers of asbestos products to suppress and misrepresent information regarding the hazards of exposure to asbestos.

Served with the complaint on February 13, 2004, Defendant Union Carbide Corporation removed the action to this District Court on March 10, 2004. Union Carbide invokes this Court's subject matter jurisdiction under 28 U.S.C. § 1442(a)(1) and 28 U.S.C. § 1331.

The Court file was routed to the chambers of the undersigned Judge for threshold

IMAGED MAY 20 '04

MDL- 875
RECOMMENDED ACTION
VACATE CTO-233 - 1 ACTION
Approved/Date: JNB 5/18/04

Page 1 of 9

OFFICIAL FILE COPY

review in late March 2004. The principal purpose of this initial review is to ascertain that subject matter jurisdiction properly lies. *See, e.g., Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir. 1986)("The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged."). *See also Belleville Catering Co. v. Champaign Market Place, L.L.C.*, 350 F.3d 691, 692 (7th Cir. 2003)(Judge Easterbrook admonishing courts and litigants to carefully scrutinize jurisdictional allegations at an early stage of the litigation: "Once again litigants' insouciance toward the requirements of federal jurisdiction has caused a waste of time and money.").

The party invoking federal jurisdiction – here, Union Carbide – bears the burden of demonstrating that all jurisdictional requirements have been met. *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997).

## II. ANALYSIS

As noted above, Union Carbide cites two bases for federal subject matter jurisdiction – 28 U.S.C. § 1442(a)(1) and 28 U.S.C. § 1331. The Court separately examines each of these jurisdictional grounds.[1]

### A. Federal Officer Jurisdiction – 28 U.S.C. § 1442(a)(1)

28 U.S.C. § 1442(a)(1), referred to as the "federal officer" removal statute, authorizes the removal of certain cases filed against the United States, its agencies, or its officers. Section 1442(a)(1) provides:

---

[1] The case became ripe for threshold jurisdictional review on March 15, 2004, when Defendant Union Carbide moved to dismiss Plaintiff Tull's complaint. In total, three motions are pending: Doc. 3, Union Carbide's motion to dismiss; Doc. 4, Union Carbide's motion to stay; and Doc. 10, Tull's motion to remand. The fact that those motions are not yet fully briefed does not preclude the Court from undertaking its threshold jurisdictional examination.

> A civil action or criminal prosecution commenced in a State court against any of the following may be removed ... to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) ... sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

So, § 1442(a) grants United States District Courts subject matter jurisdiction over cases in which a federal officer is named as a defendant. The United States Supreme Court has clarified, though, that it is the raising of a *federal question in the removal petition* that constitutes the federal law under which the case arises for Article III jurisdictional purposes. That is, the federal officer's substantive defense "arises under" federal law. *Mesa v. California,* 489 U.S. 121, 136 (1989).[2]

Stated another way, the federal officer removal statute "merely serves to overcome the 'well-pleaded complaint' rule, which would otherwise preclude removal even if a federal defense were alleged." *Mesa,* 489 U.S. at 136-37, *citing Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 494 (1983), and *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 808 (1986).[3]

The aim of the federal officer removal statute is to guarantee a federal forum to

---

[2] Article III of the United States Constitution states: "The judicial Power [of the United States] shall extend to all Cases ... arising under this Constitution, the Laws of the United States and Treaties made, or which shall be made, under their Authority." U.S. CONST., Art. III, § 2, cl. 1.

[3] The well-pleaded complaint rule requires a federal question to be evident from the face of the plaintiff's complaint for jurisdiction to lie under 28 U.S.C. § 1331. *City of Beloit v. Local 643 of AFSCME,* 248 F.3d 650, 652, *citing Rivet v. Regions Bank of La.,* 522 U.S. 470, 475 (1998).

Page 3 of 9

federal officials sued for acts committed in the course of their employment and to protect federal officers from interference by hostile state courts. *Western Securities Co. v. Derwinski*, 937 F.2d 1276, 1279 (7th Cir. 1991); *Mesa*, 489 U.S. at 137, *citing Willingham v. Morgan*, 395 U.S. 402, 405 (1969).

A federal officer's act alone, however, does not suffice to support removal. Instead, the government also must aver a federal defense to the litigation. *Mesa v. California*, 489 U.S. at 129 ("Although we have not always spoken with the same clarity that these early decisions evince, we have not departed from the requirement that federal officer removal must be predicated on the allegation of a colorable federal defense.").

Removal under § 1442(a)(1) is unique in several ways. First, as mentioned in footnote 3 above, ordinarily, to remove a case based on federal question jurisdiction, a federal question must appear on the face of the plaintiff's well-pled complaint. An anticipated or actual federal defense does not qualify a case for removal. *Jefferson County, Alabama v. Acker*, 527 U.S. 423, 430 (1999). Suits against federal officers are an *exception* to this general rule. Suits against federal officers may be removed despite the non-federal cast of the complaint; "the federal-question element is met if the defense depends on federal law." *Jefferson County*, 527 U.S. at 431.

Second, federal officer removal constitutes an exception to the general rule requiring all Defendants to join in the removal petition. "This statutory exception allows a federal officer independently to remove a case to federal court even though that officer is only one of several named defendants." *Akin v. Ashland Chemical Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998), *cert. denied*, 526 U.S. 1112 (1999).

In the case at bar, Defendant Union Carbide alone seeks removal. To qualify for

removal under the federal officer statute, the officer must both raise a colorable federal defense and establish that the suit is "for an act under color of office." *Jefferson County*, 527 U.S. at 431, citing *Mesa*, 489 U.S. at 139. To satisfy the latter requirement, the federal officer must show a nexus or "causal connection between the charged conduct and the asserted official authority." *Id.*, citing *Willingham*, 395 U.S. at 409.

Here, Tommy Tull has not named a federal officer as a Defendant. Rather, Union Carbide claims to be "acting under an officer or agency of the United States within the meaning of 28 U.S.C. § 1442(a)(1) during the period of time when Plaintiff is alleging exposure to airborne asbestos" (Removal Notice, Doc. 1, ¶ 8).

Indeed, § 1442(a)(1) covers both federal officers/agencies and *persons acting under* federal officers/agencies. Assuming that a corporation such as Union Carbide is a "person" acting under the removal statute, Union Carbide must (a) raise a colorable federal defense, and (b) establish a causal connection between the alleged conduct and the asserted official authority. Union Carbide has not satisfied its burden of proof.

Union Carbide asserts that, in operating the facility at which Glenn Tull was injured (a plant in Oak Ridge, Tennessee where "nuclear weapons" are built, *see* Doc. 1 § 2), Union Carbide was acting under a contract with the federal government so any "exposure to airborne asbestos from a product manufactured, distributed or utilized by Union Carbide ... at the facilities in Oak Ridge, Tennessee would have been pursuant to Union Carbide's contract with the United States Government to manage and operate the facilities" (Doc. 1, ¶ 9).

Even if the government contractor theory qualifies as a colorable federal defense, Union Carbide has not shown that the conduct alleged in Tull's complaint (Union Carbide's choice

of asbestos building materials, use of asbestos-containing maintenance materials, and failure to take reasonable care and caution for the safety of workers such as Glenn Tull) was undertaken pursuant to express direction of a federal officer or agency.[4] Removal was not appropriate under the federal officer statute, 28 U.S.C. § 1442(a)(1).

### B. Federal Enclave Jurisdiction – under 28 U.S.C. § 1331

Nor has Union Carbide shown that this Court can exercise subject matter jurisdiction over this case via "federal enclave" jurisdiction. Article I, Section 8, Clause 17 of the United State Constitution permits the United States to obtain exclusive jurisdiction over lands within a state. *Humble Pipe Line Co. v. Waggonner*, 376 U.S. 369, 371 (1964). More specifically:

> The Congress shall have the Power ...
> To exercise exclusive Legislation in all Cases ... as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the States in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings....

This provision, known as the Enclave Clause, "governs those cases where the United States acquires lands with the consent of the legislature of the State for the purposes there described." *James v. Dravo Contracting*, 302 U.S. 134, 141 (1937), *cited in U.S. v. Alaska*, 521 U.S. 1, 42 (1997).

Although the Enclave Clause expressly references Congress having *legislative* power, the provision has been interpreted to mean that federal courts have *jurisdiction, i.e.,* "power to

---

[4] Union Carbide declares that, at some later stage of this litigation, it plans to demonstrate that: "*if* there is any causal nexus between Plaintiff's claims and the acts it performed, the causal nexus is between Plaintiff's claims and acts performed by Union Carbide corporation under color of federal office" (Doc. 1, ¶ 8, emphasis added). This speculation is insufficient. Removal under § 1442(a) requires Union Carbide to demonstrate the causal connection about which it merely surmises.

adjudicate controversies" arising in or on federal enclaves. *See Akin*, 156 F.3d at 1034, *citing Mater v. Holley*, 200 F.2d 123, 124 (5th Cir. 1952). In *Akin*, a case in which Air Force employees brought toxic tort claims in state court based on alleged chemical exposure at Tinker Air Force Base, and the defendants removed the case to federal court, the Tenth Circuit explained (*id.*, emph. added):

> The United States has power and exclusive authority in all cases over all places purchased by the government for the "erection of Forts, Magazines, Arsenals, Dock-Yards, and other needful Buildings." ... Such places are "federal enclaves" within which the United States has exclusive jurisdiction. **Personal injury actions which arise from incidents occurring in federal enclaves may be removed to federal district court as part of federal question jurisdiction.**

So federal enclave jurisdiction attaches to certain lands under federal control. The land must be acquired by the federal government with the consent of the legislature of the state in which the land is located *and* must be purchased for the erection of forts, magazines, arsenals, dock-yards, or other "needful Buildings." Not all federally-acquired land fits this description, and not all incidents arising on federally-acquired land support the exercise of federal enclave jurisdiction. *See, e.g., Sarelas v. Anagnost*, 332 F.2d 111, 113 (7th Cir. 1964)(affirming jurisdiction-based dismissal of action in which plaintiff alleged that she was defamed at a Chicago post office, because party seeking the federal forum had not demonstrated that the post office was a "needful Building").

In the case before this Court, Union Carbide (the party seeking the federal forum) has neither alleged nor shown that the Oak Ridge plant is a fort, magazine, arsenal, dock-yard, or other "needful Building."

Finally, the record before this Court does not indicate (and Union Carbide has not

alleged) that all served Defendants consent to Union Carbide's removal. Federal *officer* removal "constitutes an exception to the general removal rule under 28 U.S.C. § 1441 and § 1446 which require all defendants to join in the removal petition," *Akin*, 156 F.3d at 1034, but Union Carbide offers no case law indicating that federal *enclave* jurisdiction likewise is excepted from the general rule.

Indeed, the law of this Circuit holds that (with the exception of federal officer removal): "A petition for removal is deficient if not all defendants join in it." *Gossmeyer v. McDonald*, 128 F.3d 481, 489 (7th Cir. 1997), *citing Roe v. O'Donohue*, 38 F.3d 298, 301 (7th Cir. 1994).[5] This means that all served defendants must file "consents" to removal or otherwise support the removal petition *in writing. Id.* That does not appear to have happened here, and Plaintiff Tull timely raised this defect in his remand motion. *See, e.g., McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651, 653 (7th Cir. 1998); *Gossmeyer*, 128 F.3d 489; 28 U.S.C. § 1447(c).

For all these reasons, the Court concludes that removal was not proper based on federal enclave jurisdiction, via the federal question statute.

The Court now has rejected both of Union Carbide's grounds for removal of this case – federal officer jurisdiction and federal enclave jurisdiction.

### III. CONCLUSION

Based on its threshold review, the Court **FINDS** that it lacks subject matter jurisdiction and **REMANDS** this case to the Circuit Court of Madison County, Illinois.

Having remanded the case for lack of subject matter jurisdiction, the Court **DENIES**

---

[5] Abrogated on other grounds in *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999), *Roe* remains good law as to this principle.

as moot all other pending motions (Docs. 3, 4, and 10).

**IT IS SO ORDERED.**

DATED this 8th day of April, 2004.

s/ Michael J. Reagan
MICHAEL J. REAGAN
United States District Judge
