

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 28 2004

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI) | : | MDL - 875 |
| | : | |
| LOUIS BARLETTA and MARY JANE BARLETTA, his wife; | : | Civil Action No. 2:04-cv-00647-WGB-MCA (Hon. William J. Bassler) |
| Plaintiffs, | : | **CIVIL ACTION** |
| vs. | : | |
| THE CONGOLEUM CORPORATION; STEPAN COMPANY; et al., | : | |
| Defendants. | : | |

## STEPAN COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER

Plaintiffs do not contest that this matter involves questions of fact which are common to the actions previously transferred to the Eastern District of Pennsylvania and assigned to Judge Weiner. Rather, they claim that (a) a pending Motion to Remand presents jurisdictional questions that must be resolved by the transferor court and (b) the statutory assignment procedures for bankruptcy matters, which are clearly inapplicable here, set forth in 28 U.S.C. § 157 prevent transfer.[1] 28 U.S.C. §§ 157 and 1407, Panel Rule 1.5 and the relevant cases (*including those cited by Plaintiffs*) make clear, however, that a transferee court is the proper forum for deciding unresolved motions to remand at the time of transfer and that § 157 does not bar transfer of Plaintiffs' claims against Stepan Company ("Stepan").

---

[1] Plaintiffs' argument under 28 U.S.C. § 157 was presented for the first time in a June 16, 2004 *letter* to the MDL Clerk purporting to "supplement the record." This letter came more than a week after Plaintiffs filed their Motion to Vacate. As the argument was not included in their initial Motion and Supporting Brief, it is waived. (*See* May 25, 2004 MDL Panel Letter setting forth June 8, 2004 brief deadline attached as Exhibit 1.) Stepan, therefore, objects to the submission and requests that it be stricken from the record.

**OFFICIAL FILE COPY** IMAGED JUN 29 '04

Because the transferor court has not ruled on the fully briefed Motion to Remand despite a specific request by Plaintiffs to do so, it has evidenced its clear intent that the matter be heard by the transferor court. In any event, the issues presented by the Motion to Remand would not be more efficiently resolved by the transferor court.

Nor do the bankruptcy assignment provisions of § 157 prevent transfer. The basis for removal is the fraudulent *joinder* of bankrupt Co-Defendant Congoleum, and, therefore its presence has no significance either for diversity purposes or transfer under 28 U.S.C. § 1407. Moreover, the bankruptcy claims at issue are between Plaintiffs and Congoleum, not Plaintiffs and Stepan, such that § 157's jurisdictional provisions have no application. In any event, the MDL panel has indicated that § 157 is not a talismanic bar to transfer but that the relative efficiencies of a transfer control the analysis under § 1407. In this case, these efficiencies plainly require resolution by the transferor court due to its familiarity with asbestos lawsuits and related matters.

Stepan respectfully requests, therefore, that the MDL Panel deny Plaintiffs' Motion to Vacate, lift the stay and file the Transfer Order with the transferee court.

## RESPONSE TO PLAINTIFFS' AVERMENTS AND ADDITIONAL RELEVANT FACTS

Pursuant to Panel Rule 7.1, Stepan provides the following responses to the averments contained in the Motion to Vacate's numbered paragraphs. Additional facts are presented where the Plaintiffs' averments are incorrect or incomplete:

1.      Stepan admits this lawsuit is for asbestos-related injuries arising out of Louis Barletta's alleged exposure to workplace asbestos. Stepan denies, however, that the Complaint sets forth a wrongful death claim. Stepan further admits Plaintiffs are New Jersey residents

-2-

who filed the lawsuit in the Law Division of Middlesex County, in the Superior Court of New

Jersey on March 6, 2003 as Docket No. L-1540-03. Stepan also admits that Stepan and Co-

Defendant Congoleum Corporation were not served with process until August 14 and 18,

2003, respectively. Stepan denies the remaining averments contained in paragraph 1, and

specifically denies liability for any of Plaintiffs' claims.

2.     Stepan admits Congoleum did not file an answer in the lawsuit and that

Plaintiffs, nonetheless, waited until December 8, 2003 to obtain a default *order*, taking no

additional steps to obtain a default *judgment* prior to Congoleum's previously announced, pre-

packaged bankruptcy filing on December 31, 2003. This is true despite Plaintiffs' full

awareness of the impending bankruptcy filing. Stepan denies the remaining averments

contained in paragraph 2.

3.     Stepan admits that it requested and received from Plaintiffs several

extensions of time to file its answer or otherwise plead in the state court. These extensions

were obtained in order to evaluate whether sufficient grounds existed to file a motion to

dismiss based on the exclusivity bar under the New Jersey Workers' Compensation statute.

Stepan further admits it filed a Notice of Removal and Petition for Removal in the U.S. District

Court for the District of New Jersey where the removed case was assigned Case No. 02:04-CV-

647-WGB-MCA. Stepan also admits its 41 paragraph Petition for Removal sets forth specific

evidence establishing Plaintiffs' fraudulent joinder of Congoleum solely to defeat federal

jurisdiction, with no good faith intent to pursue their claims against it. Copies of the Notice of

Removal and Exhibits to Notice of Removal are attached as Exhibits 2 and 3 and are

incorporated here by reference.

Rather than failing to offer "an iota of evidence to support its baseless allegations," as Plaintiffs contend, these documents establish with specific supporting facts the validity of Stepan's removal:

- From July 19, 2001 until early 2003, Plaintiffs vigorously pursued identical claims against Congoleum in a lawsuit filed in Texas state court. (Ex. 2 at ¶ 8.) Trial in that matter was twice continued, the last time at Congoleum's request and over Plaintiffs' objection. (*Id.*) Only when they learned of Congoleum's impending, prepackaged Chapter 11 bankruptcy did Plaintiffs drop Congoleum from the Texas lawsuit while at the same time adding them as a defendant in the New Jersey lawsuit — *with no intention of actually pursuing their claims against Congoleum.* (*Id.*) In this way, Plaintiffs sued Congoleum only to prevent removal of the lawsuit to this Court due to Congoleum's presence as a sham defendant. (*Id.*);

- Plaintiffs' counsel in the Texas lawsuit, Scott Hendler, is the same attorney acting as lead plaintiffs' counsel in this case. (*Id.* at ¶ 11.) Like the instant lawsuit, the Texas case names Congoleum as a defendant. (*Id.*) Like the instant lawsuit, the Texas case asserts premises liability claims against Congoleum. (*Id.*);

- Congoleum appeared in the Texas lawsuit. (*Id.* at ¶ 13.) For more than one and one-half years, Congoleum vigorously defended the Texas lawsuit. (*Id.* at ¶ 15.) Plaintiffs similarly pursued their claims against Congoleum. (*Id.*) While numerous other Texas defendants settled, Congoleum refused Plaintiffs' demands. (*Id.* at ¶ 16.) These demands consistently exceeded $1 million dollars. (*Id.*) Congoleum presented its corporate representative for deposition, engaged in necessary discovery and fully prepared the case for trial. (*Id.* at ¶ 20.) The Texas lawsuit was twice scheduled for trial, but in each instance the trial was continued. (*Id.* at ¶ 21);

- At least as early as January 2003, counsel for Congoleum advised Plaintiffs' counsel that Congoleum planned to seek bankruptcy protection to manage its growing asbestos liability. (*Id.* at ¶ 22.) On January 13, 2003, Congoleum announced plans to enter a prepackaged Chapter 11 bankruptcy. (*Id.*) This information was widely disseminated in the press, including asbestos-specific legal publications. (*Id.*);

- While Plaintiffs' Texas lawsuit was still pending against Congoleum, and despite the more than 1.5 years of litigation history and an April 7, 2003 trial setting, Plaintiffs' Texas counsel filed the instant New Jersey lawsuit against

Stepan. (*Id.* at ¶ 23.) That lawsuit alleged claims against Congoleum *identical* to those set forth in Plaintiffs' Texas lawsuit. (*Id.*);

- At a March 31, 2003 pre-trial conference just days before the April 7, 2003 trial, the Texas court heard a contested motion by Congoleum to continue the trial. (*Id.* at ¶ 26.) Congoleum sought the continuance on grounds it had hired a Texas legislator as co-trial counsel; the legislature was in session; and, co-counsel could not participate at trial until the legislature concluded its current term. (*Id.*);

- Despite the presence of the New Jersey lawsuit and its inclusion of Congoleum as a defendant, Plaintiffs vigorously opposed the continuance. (*Id.* at ¶ 27.) Plaintiffs argued that they were fully prepared for trial and Congoleum sought the delay solely to stall the litigation for a period sufficient to allow its planned bankruptcy to be filed. (*Id.*) In support of Plaintiffs' position, the Texas judge was presented with several news clippings addressing Congoleum's announced bankruptcy plans – Plaintiffs' counsel were keenly aware of Congoleum's bankruptcy plans. (*Id.*) The Texas judge granted Congoleum's motion for a legislative continuance over Plaintiffs' objection. (*Id.* at ¶ 28);

- Throughout April and May 2003, Congoleum continued to proceed steadily and publicly to its announced bankruptcy filing. (*Id.* at ¶¶ 29-30.) Nonetheless, Plaintiffs continued to pursue their litigation against Congoleum *solely* in Texas. (*Id.* at ¶ 31.) Plaintiffs did not serve Congoleum with the New Jersey lawsuit, but did obtain two separate orders against Congoleum, from the Texas court, on May 12, 2003: (1) an order charging it with Plaintiffs' expert costs and (2) an order on Plaintiffs' motion to exclude certain Congoleum witnesses. (*Id.*);

- During this same time period, Congoleum continued to make clear the inevitable nature of its bankruptcy. (*Id.* at ¶ 32.) On May 27, 2003, Plaintiffs amended their Texas lawsuit for the seventh time. (*Id.* at ¶ 33.) Plaintiffs dropped Congoleum as a named defendant. (*Id.*) Unlike the numerous other instances in which Texas defendants were dropped from the lawsuit, *no* dismissal or non-suit order was filed. (*Id.*);

- Congoleum's Texas counsel remained unaware of the New Jersey lawsuit. (*Id.* at ¶ 34.) He confirmed the non-existence of cross-claims against Congoleum, however, and ceased participation in the Texas litigation (*Id.*) The Texas litigation remains pending today. (*Id.* at ¶ 35.) Upon information and belief, Plaintiffs have obtained settlements totaling several million dollars from the Texas defendants. (*Id.*);

- Despite the active litigation with Congoleum in Texas and the concurrently pending New Jersey lawsuit, Plaintiffs did not serve Congoleum with the New Jersey lawsuit until August 18, 2003. (*Id.* at ¶ 36.) Throughout this period, Congoleum reported continued steps to finalize its prepackaged bankruptcy filing. (*Id.* at ¶ 37); and,

- Despite these repeated announcements, the absence of Congoleum from the Texas litigation, and its failure to appear in or answer the New Jersey lawsuit, Plaintiffs made no attempts to default Congoleum until December 8, 2003. (*Id.* at ¶ 38.) On December 31, 2003, Congoleum filed for bankruptcy. (*Id.* at ¶ 39.); and,

- The facts establishing Congoleum's fraudulent joinder were not known to Stepan within thirty (30) days of its having received a copy of the Complaint, but the Removal Petition was filed within thirty (30) days of Stepan receiving this information. (*Id.* at ¶ 41.)

Importantly, Stepan does not argue Congoluem has been fraudulently joined because Plaintiffs cannot state a claim for relief against it. Rather, Stepan removed this case because it discovered Plaintiffs have no good faith intention of pursuing their claims against Congoleum. *See, e.g., Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied*, 498 U.S. 1085 (1991). Excluding Congoleum, there is complete diversity between the Plaintiffs and Stepan. Because of its fraudulent joinder, Congoleum's consent to this removal is not required. *Boyer*, 913 F.2d at 111. Stepan denies the remaining averments contained in paragraph 3.

4.  Stepan admits that, following the filing of Stepan's Statute of Limitations Motion to Dismiss, on March 11, 2004, Plaintiffs filed their Motion to Remand. Stepan denies the remaining averments contained in paragraph 4.

5-6.  Stepan admits that both its Motion to Dismiss and Plaintiffs' Motion to Remand were fully briefed and submitted to the transferor court on April 7, 2004. Stepan

further admits that, on May 7, 2004, the MDL Panel filed the Conditional Transfer Order

transferring this lawsuit to the Eastern District of Pennsylvania and assigned to the Honorable

Charles R. Weiner.  Stepan further admits Plaintiffs filed their Notice of Opposition to the

Conditional Transfer Order on May 24, 2004.

On May 26, 2004, Plaintiffs sent an overnight letter to Judge Bassler imploring him to

rule on the Motion to Remand in light of the Conditional Transfer Order and Plaintiffs' Notice

of Opposition.  A copy of that letter is attached as Exhibit 4.  The letter makes clear that

Plaintiffs believed the lawsuit would be transferred to Judge Weiner unless Judge Bassler

promptly remanded the case to state court.  To date, Judge Bassler has provided no response

to the letter and has not issued a decision on the Motion to Remand or the Motion to Dismiss.

A copy of Stepan's Opposition to the Motion to Remand is attached as Exhibit 5 and

incorporated by reference herein.  Stepan further admits Plaintiffs timely filed their Motion to

Vacate.  Stepan denies the remaining averments contained in paragraphs 5 through 6.

## ARGUMENT AND AUTHORITIES

I.   **THERE IS NO BAR TO THE TRANSFER AND THE EFFICIENCIES REQUIRE ASSIGNMENT OF PLAINTIFFS' CLAIMS AGAINST STEPAN TO JUDGE WEINER.**

Plaintiffs concede the general validity of the Conditional Transfer Order and

challenge only the correctness of the Order in light of the pending Motion to Remand and

Congoleum's bankruptcy proceeding in the Bankruptcy Court for the District of New Jersey.

(Plaintiffs' MDL Brief, p. 5.)  As neither of these circumstances bars transfer or otherwise

overrides the efficiencies to be gained from the transfer, Plaintiffs' Motion should be denied

and a transfer order entered.

**A.    Absent Resolution of a Motion to Remand by the Transferor Court, the Motion should be Heard by the Transferee Court.**

As Plaintiffs' cases make clear, the general rule is that unresolved motions to

remand shall be heard by the transferee court following a § 1407 transfer.  This mandate is

reflected in Panel Rule 1.5 which provides:

> The pendency of a . . . conditional transfer order . . . *does not* affect or suspend
> orders and pretrial proceedings in the district court in which the action is
> pending and does not in any way limit the pretrial jurisdiction of that court.

(emphasis supplied.)

Thus, the MDL Panel has consistently held that, in light of Panel Rule 1.5,

oppositions to conditional transfer orders grounded in the existence of a pending motion to

remand are no impediment to entry of a transfer order.  A lengthy quotation from a recent

MDL Panel decision sets forth the rule and its rationale:

> The plaintiff premises part of his opposition to transfer on the pendency in his
> action of a motion to remand to state court.  He urges the Panel not to order
> transfer before the motion is resolved by the transferor court.  We note, first, that
> remand motions can be presented to and decided by the transferee judge. *See,
> e.g., In re Ivy*, 901 F.2d 7 (2nd Cir. 1990); *In re Air Crash Disaster at Florida Everglades
> on December 29, 1972*, 368 F. Supp. 812, 813 (J.P.M.L. 1973).  Furthermore, there is
> no need to delay transfer in order to accommodate any interest of the transferor
> court in resolving a pending remand motion.  We note that: 1) as a practical
> matter, there is a lag of time of at least three or four months from the filing of an
> action, its identification as a potential tag-along action, issuance of a conditional
> transfer order, stay of transfer when a party timely objects to the conditional
> transfer, briefing on the question of transfer, the Panel hearing session, and the
> issuance of the Panel's subsequent order; 2) Panel Rule 1.5 R.P.J.P.M.L., 199
> F.R.D. at 427, expressly provides that the pendency of a conditional transfer
> order does not in any way i) suspend orders and pretrial proceedings in the
> district court in which the action that is the subject matter of the conditional
> transfer order is pending, or ii) limit the pre-trial jurisdiction of that court; and 3)

accordingly, those courts wishing to address such motions have adequate time in which to do so, those courts concluding that such issues should be addressed by the transferee judge need not rule on them, and the process of 1407 transfer . . . can continue without any unnecessary interruption or delay.

*In re Prudential Ins. Co. of America Sales Practices Litig.*, 170 F. Supp. 2d 1346, 1347-48 (J.P.M.D.L. 2001) (denying motion to vacate conditional transfer order); *see also, In re Enron Corp. Securities Derivative & ERISA Litig.*, 227 F. Supp. 2d 1389, 1390 (J.P.M.D.L. 2002) (same, citing *In re Prudential Ins. Co. of America Sales Practices Litig.* and *Ivy*).

Application of this rule to the facts requires that the case be transferred and that Judge Weiner determine the Motion to Remand. Judge Bassler has plainly demonstrated a willingness to allow Judge Weiner to decide the motion to remand. This is not unusual as it will simply result in the transferor court deciding the motion, a short delay in resolution of the motion, but a resolution nonetheless.

At the time of this filing, it has been more than 4.5 months since Stepan removed the lawsuit setting forth in detail its basis for fraudulent joinder. (Ex. 2.) Plaintiffs waited a month to file their Motion to Remand. (Plaintiffs' MDL Brief, p. 2 at ¶ 4.) The Motion was promptly and fully briefed by April 7, 2004. Following the issuance of the Conditional Transfer Order on May 7, 2004, on May 26, 2004, Plaintiffs wrote the transferor court informing it of the Conditional Transfer Order and warning that the fully briefed Motion to Remand would be sent to the transferee court if not decided by Judge Bassler. (Ex. 1.) More than a month later, the Motion to Remand remains pending before Judge Bassler. Plaintiffs have offered no evidence that an additional short delay will prejudice their ability to prosecute this lawsuit.

**B.** **Plaintiffs Misstate the Effect of a Pending Motion to Remand on Transfer.**

Plaintiffs acknowledge the rule allowing a transferor court to determine unresolved motions to remand, but attempt to distance themselves from its application by incorrectly arguing for a non-existent limitation of the rule.   Specifically, Plaintiffs seize on the MDL Panels' citation in *In re Enron Corp. Securities Derivative & ERISA Litig.* to the Second Circuit's *Ivy* decision and argue the *Ivy* court's holding that a transferee court *may* decide a motion to remand pending before the transferor court at the time of a § 1407 transfer is limited by dicta referencing the general suitability of Agent Orange cases to multidistrict litigation and the potential for there to be common questions of law or fact presented by the motion to remand at issue which related in whole or in part to the Agent Orange MDL. (Plaintiffs' MDL Brief, p. 4.) Plaintiffs then argue that the issue of Congoleum's asbestos-induced bankruptcy and the lack of their good faith intent to proceed against Congoleum in light of the bankruptcy present no issues common to the consolidated cases before Judge Weiner and, therefore, prevent transfer.

Plaintiffs' arguments miss the mark.  In addition to entirely ignoring the MDL Panel's reasoning in *In re Prudential Ins. Co. of America Sales Practices Litig.*, a case which also cites to *Ivy*, Plaintiffs ignore the important fact that, much like the case here, the district court in *Ivy* made clear its intention to allow the MDL panel to determine the propriety of a § 1407 transfer despite the pending remand motion, and therefore, its desire that the matter be handled by the transferor court. *Ivy* at 8.  This is heavy evidence favoring the efficiencies to be gained from a decision by the transferor court on the jurisdictional issues.

Plaintiffs also ignore the plain manner in which the *Ivy* court framed the issue before it:

> Section 1407 does not empower the MDL Panel to decide questions going to the jurisdiction or the merits of a case, including issues related to a motion to remand. Moreover, Section 1407(e) authorizes us to review only certain orders of the MDL Panel, including the order to transfer. We believe, therefore, that the sole issue before us is *the merits of the transfer viewed against the purposes of the multidistrict statutory scheme, whether or nor there is a pending jurisdictional objection.* So viewed, the transfer order was entirely unobjectionable.

*Ivy* at 4 (citations omitted). There is simply no limitation requiring the existence of commonalities *only* between the jurisdictional issue in the transferred case and the cases already pending in the MDL litigation.

There is no question that this personal injury asbestos case presents  questions of law and fact such that pre-trial consolidation will promote the "just and efficient conduct" of such actions and will be for "the convenience of the parties and witnesses."  *See* 28 U.S.C. 1407. This is all that is needed.  This is all *Ivy* requires.

Even if more was required, Judge Weiner stands in the best position to address common facts related to Congoleum's bankruptcy and the critical issues underlying the fraudulent joinder:  (1)  whether the plaintiffs' asbestos bar, including Plaintiffs' counsel, was aware of the impending bankruptcy, (2) the likelihood, or lack thereof, that certain potential claimants (such as Plaintiffs) would ever recover a judgment against Congoleum in bankruptcy; and, (3) the plausibility of the argument underlying Plaintiffs' Remand Motion — that they abandoned a near certain trial date more than 1.5 years into a Texas state court litigation with the belief that they had a better chance of recovering against Congoleum in a newly filed New Jersey state court lawsuit, but failed to obtain a default judgment against them prior to the pre-announced bankruptcy filing. (*See* Exs. 2 and 5.)

Congoleum is undoubtedly a defendant in thousands of cases pending before Judge Weiner. After all, asbestos exposure caused its bankruptcy. Judge Weiner is likely, therefore, to have knowledge, beyond that possessed by Judge Bassler, relevant to a decision on the Motion to Remand. Judge Weiner also likely stands in the best position to coordinate any discovery that may be necessary to a full determination of the Motion given his intimate knowledge of managing asbestos-related discovery.

Plaintiffs' remaining cases on the issue of the pending Motion to Remand are inapposite. *Vasura v. ACandS*, 84 F. Supp. 2d 531 (S.D.N.Y. 2000) involves a situation where, unlike here, the transferor court *actively* sought to determine the pending motion to remand despite the issuance of a conditional transfer order. *Vasura* at 532-33. In fact, there Judge Weiner of the transferee court agreed this was an appropriate course of action and acquiesced in the transferor court's request. *Id.*

The court in *Medical Society of the State of New York v. Connecticut General Corp.*, 187 F. Supp. 2d 89 (S.D.N.Y. 2001) was presented with a motion to stay the proceedings following a motion to transfer filed with the MDL Panel, but *before* a conditional transfer order had been issued. *Medical Society of the State of New York* at 2-4. Faced with objections by Plaintiffs to the stay request in light of a pending motion to remand, that court noted it could *either* decide the remand issue *or* decline to do so while awaiting the MDL Panel's decision on transfer. *Id.* at 91. The court concluded it had no particular advantage when it came to determining the motion and that Plaintiffs had failed to demonstrate any prejudice in light of the short delay that might result from issuance of a ruling by the transferor court. *Id.* at 92. The court held the stay was proper and that the transferor court could decide the motion to remand. *Id.*

Last, Plaintiffs repeated citations to *Rosamond v. Garlock Sealing Technologies, Inc.*, 2004 WL 943924 (N.D. Miss. April 5, 2004), while arguing the alleged "frivolous" nature of Stepan's removal, are misguided given the inability of the MDL Panel to consider the substantive jurisdictional issues. *See, Ivy* at 4 (§ 1407 prohibits considering remand motion's merits). Equally as important, *Rosamond* presents the highly unlikely scenario where the removing defendants contend the fraudulent joinder of a *long-standing* asbestos defendant results from the fact a plaintiff could not possibly state a claim for relief against a named, non-diverse defendant. *Rosamond* at *1-2. As Plaintiffs are well aware, Stepan does not argue Plaintiffs could not state a claim against Congoleum. (See Exs. 2 and 4.) Rather, Congoleum's joinder is fraudulent because the evidence indicates Plaintiffs have no good faith intention to pursue otherwise viable claims against it. (*Id.*)

## C.   28 U.S.C. § 157(b)(5) Has No Application to Plaintiffs Claims against Stepan and Does Not, in Any Event, Bar a § 1407 Transfer.[2]

Plaintiffs incorrectly argue that § 157(b)(5) "precludes transfer to the MDL Panel as the case <u>must</u> be heard in either 'the district in which the bankruptcy case is pending, or in the district in which the case arose, as determined by the district court in which the bankruptcy case is pending.'" (Ex. 1.) § 157(b)(5) provides:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

This statute applies only to Plaintiffs' claims against Congoleum, however.

---

[2] As set forth in note 1 above, Plaintiffs have improperly raised this argument beyond the deadline for filing a brief in support of their Motion to Vacate in a letter and without leave of court. The argument is, therefore, waived.

By its plain terms, the personal injury claims identified are those held by a plaintiff against a bankrupt entity. Here, these are the claims held by Plaintiffs against Congoleum. The statute makes no reference to claims held by a plaintiff against a non-bankrupt entity, but which are asserted in a case in which the bankrupt entity is a co-defendant. Like the law with respect to the ability of a transferee court to determine a pending motion to remand, Plaintiffs simply misstate the rule. Assuming Plaintiffs' claims against Congoleum were required to be heard in the federal or bankruptcy court of New Jersey, there is no basis to argue that Plaintiffs claims against Stepan must follow. Both Congoleum and Stepan have been sued as premises liability defendants. There is no reason the litigation could not proceed as separate, independent actions, if necessary.

Equally as important is the fact that the very basis for removal — Plaintiffs' fraudulent joinder of Congoleum — renders Congoleum a non-factor in any analysis concerning Plaintiffs' claims against Stepan. This is true respecting the establishment of diversity jurisdiction. *Boyer*, 913 F.2d at 111. It must also be true, therefore, for the determination of the correctness of a § 1407 transfer order.

In any event, Plaintiffs citation to the April 13, 2004 MDL Panel opinion in *In re Ephedra*, MDL 1598, fails to advance their § 157 argument. That opinion makes clear that the MDL panel denied transfer of certain cases under § 1407 only where they had already been transferred for coordinated, consolidated proceedings before a single bankruptcy judge under § 157. The MDL panel did not hold, as plaintiffs suggest, that § 157 presents an automatic bar to transfer under § 1407 of any lawsuit naming a bankrupt entity as a co-defendant. Rather, that court found:

- 14 -

> In light of the January 22, 2004 *order* transferring under Section 157 personal injury/wrongful death actions brought against Nutraquest to the District of New Jersey, *coupled with the entire circumstances presently before us*, inclusion of *Angela Bennett v. Cytodyne Technologies, Inc., et al.*, S.D. Ohio, C.A. No. 1:03-451, in MDL-1598 proceedings is not appropriate *at this time*. We note that all of the New Jersey Nutraquest actions are currently stayed and Judge Garrett E. Brown is in the process of establishing a procedure for the efficient management of these actions.

(emphasis supplied.)

Here there has been no § 157 order entered or even requested. As such, the countervailing efficiencies presented by the consolidated bankruptcy proceedings in *In re Ephedera* are not present. In any event, should such a situation arise, any tension between Plaintiffs claims against Congoleum and those against Stepan could be easily resolved by severing the two claims for separate transfers, one to Judge Weiner and the other to the New Jersey bankruptcy court. *See, e.g., In re Enron Corp.*, 227 F. Supp. 2d at 1391-92 (allowing for severance of three claim sets with resulting assignment to three different transferee courts).

## CONCLUSION

A § 1407 transfer was entirely appropriate here and Plaintiffs have presented no legal or factual evidence to the contrary. Plaintiffs have conceded the existence of questions of law and fact common to this asbestos lawsuit and those asbestos cases pending before Judge Weiner and the resulting efficiencies from a transfer. Plaintiffs' Motion to Vacate should be denied, the stay lifted and a transfer order filed with the transferee court.

Respectfully submitted,

STEPAN COMPANY

By: _____
       One of its attorneys

Dated: June 28, 2004

Brian W. Lewis
Michael A. Kaeding
Wildman, Harrold, Allen & Dixon LLP
225 West Wacker Drive, Suite 2800
Chicago, IL  60606-1229
(312) 201-2000

Joseph D. Rasnek
McElroy, Deutsch, Mulvaney & Carpenter, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ  07962-2075
(973) 993-8100

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 2 8 2004

FILED
CLERK'S OFFICE

## AFFIDAVIT OF SERVICE

Michael A. Kaeding, Esq., being first duly sworn on oath, deposes and states:

1.      On June 25, 2004, I caused to be served, via Federal Express, next business day delivery, an original and eleven (11) copies of Stepan Company's Opposition to Plaintiffs' Motion to Vacate Conditional Transfer Order and Exhibits, together with a computer readable disk in WordPerfect for Windows format containing the aforesaid brief on:

>       Michael J. Beck, Clerk of the Panel
>       Judicial Panel on Multidistrict Litigation
>       One Columbus Circle, NE
>       Thurgood Marshall Federal
>       Judiciary Building
>       Room G-255, North Lobby
>       Washington, D.C. 20002

2.      One June 25, 2004, I caused to be served, via U.S. Mail, postage prepaid, one copy of Stepan Company's Opposition to Plaintiffs' Motion to Vacate Conditional Transfer Order on the attached list of involved counsel.

I hereby certify that the aforesaid statements made by me are true and correct.

SUBSCRIBED AND SWORN TO
Before me this __25th__  day
Of June, 2004.

NOTARY PUBLIC

"OFFICIAL SEAL"
LINDA JOY NOWAK
Notary Public State of Illinois
My Commission Expires Nov. 22, 2004

## ASBESTOS PRODUCTS LIABILITY LITIGATION
### SERVICE LIST

Murray E. Abowitz
Abowitz Timberlake & Dahnke, PC
105 N. Hudson, 10th Floor
P.O. Box 1937
Oklahoma City, OK  73101

Kevin C. Alexandersen
Gallagher, Sharp, Fulton & Norman
7th Floor,Bulkley Bldg.
1501 Euclid Avenue
Cleveland, OH  44115

David W. Allen
Goodell, DeVries, Leech & Dann,
LLP
One South Street, 20th Floor
Baltimore, MD  21202

Knight S. Anderson
Hill, Fulwider, McDowell, Funk &
Matthews
2000 INB Tower
One Indiana Square
Indianapolis, IN  460204-2031

James Randolph Baker
Holloway Dobson & Bachman, P.C.
211 N. Robinson Avenue
Suite 900 North
Oklahoma City, OK  73102

Joe E. Basenberg
Hand, Arendall, LLC
P.O. Box 123
Mobile, AL  36601

Jeffrey T. Bash
Heyl, Royster, et al,
103 West Vandalia Street
P.O. Box 467
Edwardsville, IL  62025

Richard V. Bennett
Bennett & Guthrie, P.L.L.C.
1560 Westbrook Plaza Drive
Winston-Salem, NC  27103

Michael A. Bergin
Locke Reynolds LLP
201 North Illinois Street, Suite 1000
P.O. Box 44961
Indianapolis, IN  46244-0961

V. Brian Bevon
Motley, Rice, LLC
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC  29465

Richard C. Binzley  ✓
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH  44114

James H. Bolin
Butler, Snow, O'Mara, Stevens &
Cannada
P.O. Box 22567
Jackson, MS  39225-2567

Timothy W. Bouch
Leath, Bouch & Crawford
P.O. Box 59
Charleston, SC  29402

Ernest W. Boyd. Jr.
Mehaffy & Weber, P.C.
One Allen Center,
Suite 1200
500 Dallas
Houston, TX  77002

James M. Boyers
Wooden And McLaughlin
201 N. Illinois Street
Indianapolis, IN  46204

Elizabeth J. Bradford
King Law Firm
15 N. Robinson Avenue,
Suite 1100
Oklahoma City, OK  73102

Matthew W. Breetz
Stites & Harbison
400 W. Market Street,
Suite 1800
Louisville, KY  40202-3352

Robert R. Brooks-Rigolosi
Ross & Hardies
65 East 55th Street
New York, NY  10022

Thomas M. Buckley
Patterson, Dilthey, Clay, Bryson &
Anderson
4020 Westchase Boulevard
Suite 550
Raleigh, NC  27607

Lisa N. Busch
Weitz & Luxenberg
180 Maiden Lane
New York, NY  10038

Dennis F. Cantrell
Bingham McHale, LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN  46204-2982

James R. Carter
Carter Law Offices
Commerce Bank Building Suite 529
416 Main Street
Peoria, IL  61602

Michael P. Cascino
Cascino Vaughan Law Offices
220 South Ashland Ave.
Chicago, IL  60607

Edward J. Cass  ✓
Gallagher, Sharp, Fulton & Norman
Bulkley Building
7th Floor
1501 Euclid Aenue
Cleveland, OH  44115

Benjamin B. Cassiday
5699 Kalanianaole Highway
Honolulu, HI  96821

William T. Causby
Nelson, Mullins, Riley
Scarborough, LLP
1330 Lady Street
Keenan Bldg. 3rd Floor
P.O. Box 11070
Columbia, SC  2921  1070

Matthew W. Breetz
Stites & Harbison
400 W. Market Street, Suite 1800
Louisville, KY  40202-3352

RECEIVED
CLERK'S OFFICE
2004 MAY 28  A  5:0

Jeremy S. Brenman
Johnson & Bell Ltd
55 E. Monroe Street, Suite 1800
Chicago, IL  60603

Mark R. Chilson
Young & Alexander
130 West Second Street
Suite 2000
Dayton, OH  45402-9291

Adam M. Chud
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, DC  20036

Joseph Churgin
Herzfeld & Rubin, PC
40 Wall Street
New York, NY  1005

Bruce P. Clark
Bruce P. Clark & Associates
Harrison Ridge Square
419 Ridge Road
Munster, IN  46321-1581

Gregory L. Cochran
McKenna, Storer, Rowe, White &
Farrug
200 North LaSalle Street, Suite 3000
Chicago, IL  60601

Dixie L. Coffey
Smith, Shew, Scrivner, Corbin &
Watts
6520 North Western Avenue
Sutie 300
Oklahoma City, OK  73116

Misty Brickey Cole
Forman, Perry, Watkins, Krutz &
Tardy, LLP
2001 Bryan Street
Bryan Tower, Suite 1300
Dallas, TX  75201

Elizabeth S. Conley
Parsons, Behle & Latimer
201 South Main Street, Suite 1800
P.O. Box 45898
Salt Lake City, UT  841145-0898

John R. Countiss, III
Upshaw, Williams, Biggers,
Beckham & Riddick
P.O. Drawer 8230
Greenwood, MS  38930-8230

Ronald B. Cox
Bowers Orr, LLP
P.O. Box 25389
Columbia, SC  29224

Jerry L. Coyle
Law Office of Jerry L. Coyle
2183 Buckingham Road
LB 412
Richardson, TX  75081

Richard M. Crump
Forman, Perry, Watkins, Krutz &
Tardy, LLP
P.O. Box 22608
Jackson, MS  39225-2608

Douglas F. Cushnie
2nd Floor, Lim's Building
San Jose Village
P.O. Box 500949
Saipan, MP  96950

David A. Damico
Burns, White & Hickton
Fifth Avenue Place, Suite 2400
120 Fifth Avenue
Pittsburgh, PA  15222

Stephen H. Daniels
McMahon, DeGulis, Hoffman &
Lombardi
The Caxton Building
812 Huron Road, East
Suite 650
Cleveland, OH  44115-1126

Charles P. Dargo
Bruce P. Clark & Associates
Harrison Ridge Square
419 Ridge Road
Munster, IN  46321

Bessie S. Demos
Law Offices of Peter G. Angelos
5905 Harford Road
Baltimore, MD  21214

Andrew J. Detherage
Barmes & Thornburg
11 S. Meridan Street
Suite 1313
Indianapolis, IN 46204

Steven B. Dick
Brown, Buchanan & Sessoms, PA
P.O. Box 2220
Pascagouula, MS  39569-2220

Lisa M. Dillman
Lewis And Wagner
501 Indiana Avenue
Suite 200
Indianapolis, IN  46202

Gary M. DiMuzio
Clark, Depew & Tracey, Ltd., LLP
440 Louisiana, Suite 1600
Houston, TX  77002

Thomas F. Dougall
Law Office of Thomas F. Dougall
1713 Woodcreek Farms Road
Elgin, SC  29045

David Duke
Duke Law Fir
236 Westview Terrace
Arlington, TX  76013

Kristi A. Duncan
Currie, Johnson, Griffin, Caines &
Myers
P.O. Box 750
Jackson, MS  39205-0750

Thomas S. Ehrhardt
Kopka Landau & Pinkus
5240 Fountain Drive
Suite E
Crown Point, IN  46307-1000

James H. Elliott, Jr.
Barnwell, Whaley, Patterson &
Helms
885 Island Park Drive
Charleston, SC  29492-0197

Gary D. Elliston
DeHay & Elliston, L.L.P.
3500 Bank of America Plaza
901 Main Street
Dallas, TX  75202-3736

Nicholas L. Evanchan, Jr.
Evancham & Palmisano
1225 West Market Street
Akron, OH 44313

Timothy J. Evans
Bryan Nelson Randolph
P.O. Drawer 18109
Hattiesburg, MS 39404-8109

C. Michael Evert, Jr.
Evert & Weathersby, LLC
3405 Piedmont Road, N.E.
Suite 225
Atlanta, GA 30305-1764

Robert C. Ewald
Wyatt, Tarrant & Combs, LLP
500 West Jefferson Street
2600 Citizens Plaza
Louisville, KY 40202

William Howard Farrell
Cotton & Farrell
801 Congress, Suite 400
Houston, TX 77002

Laurel A. Fay
Whittenburg Whittenburg &
Schachter
600 North Pearl Street
Suite 2300
LB 133
Dallas, TX 75201

Joseph Gerard Feehan
Heyl, Royster, Voelker & Allen
600 Bank One Building
124 Southwest Adams
Peoria, IL 61602

Dennis C. Ferguson
William & Hunt
257 East 200 South, Suite 500
P.O. Box 45678
Salt Lake City, UT 84144

Melissa K. Ferrell
Segal, McCambridge, Singer &
Mahoney, Ltd.
100 Congress Avenue, Suite 700
Austin, TX 78701

Laure V. Flaniken
Ice, Miller, Donadio & Ryan
One American Square
Box 82001
Indianapolis, IN 46282

James T. Foley
Foley & Boyd
First Place, Suite 404
Tyler, TX 75702

Keith W. Foley
Mehaffy & Weber, P.C.
2615 Calder, Suite 800
Beaumont, TX 77701

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
Suite 1000
The Bourse
Philadelphia, PA 19106-2574

Margaret M. Foster
McKenna Storer, Rowe, et al.
200 N. Lasalle Street, Suite 3000
Chicago, IL 60601-1083

Tracy Fowler
Snell & Wilmer
15 West South Temple
Gateway Tower West, Suite 1200
Salt Lake City, UT 84101

Laura A. Frase
Forman, Perry, Watkins, Krutz &
Tardy. LLP
2001 Bryan Street, Suite 1300
Dallas, TX 75201-3008

Wade D. Fulford
Locke Reynolds Llp
201 North Illinois St. Suite 1000
P.O. Box 44961
Indianapolis, IN 46244-0961

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street, 33rd Floor
Philadelphia, PA 19103

James D. Gandy, III
Pierce, Herns, Sloan & McLeod
P.O. Box 22437
Charleston, SC 29413

Frederick E. Gerson, Esq.
D'Alessandro, Jacovino & Gerson
147 Columbia Turnpike
P.O. Box 340
Florham Park, NJ 07932

John R. Gilbert
Gilbert & Moore, PLLC
P.O. Box 1819
222 N. Velasco Street
Angleton, TX 77516-1819

Richard S. Glasser
Glasser & Glasser, P.L.C.
Crown Center Building, Suite 600
580 East Main Street
Norfolk, VA 23510

John K. Gordinier
Pedley, Zielke, Gordinier, Olt &
Pence
462 South Fourth Avenue
2000 Meidinger Tower
Louisville, KY 40202

William N. Graham
Aultman, Tyner, Ruffin &
Yarborough, Ltd.
P.O. Box 750
Hattiesburg, MS 39402-0750

Albert F. Grasch, Jr.
Grasch & Cowen, P.S. C.
302 W. High Street
Lexington, KY 40507-1831

Ann S. Grayson
Wooden And Mclaughlin
One Indiana Square
Indianapolis, IN 46204-4208

Marc C. Creco
Glasser & Glasser, P.L.C.
580 East Main Street
Norfolk, VA 23510

Paul E. Hamilton
DeHay & Elliston, L.L.P.
3500 Nationsbank Plaza
901 Main Street
Dallas, TX 75202

Susan M. Hansen
Brownson & Ballou
4800 U.S. Bank Place
601 Second Avenue, South
Minneapolis, MN  55402

Frank G. Harmon, III
Crain, Caton, et al.
3300 Two Houston Center
909 Fannin
Houston, TX  77010

James M. Harris, Jr.
Harris Lively, Duesler & Hatfield
P.O.Box 830
550 Fannin
Suite 650
Beaumont, TX  77704

Robin E. Harvey
Baker & Hostetler
312 Walnut Street,  Suite 3200
Cincinnati, OH  45202

Tanya R. Hatfield
Ice Miller
One American Square
P.O. Box 82001
Indianapolis, IN  46282-0002

Keith J. Hays
Hill Fulwider McDowell Funk &
Matthews
One Indiana Square, Suite 2000
Indianapolis, IN  46204-2031

Bake & Hostetler
303 e. 17th Avenue, Suite 1100
Denver, CO 80203

Strong, Pipkin, Nelson & Bissell
1111 Bagby Street, Suite 2300
Houston, TX  77002-2546

Harry K. Herren Jr.
Woodward, Hobson & Fulton, LLP
2500 National City Tower
101 S. Fifth Street
Louisville, KY  40202

Frank P. Hilliard
Starks Building, Suite 380
455 S. Fourth Avenue
Louisville, KY  40202

Tammy M. Holt
Brown McCarroll & Oaks Hartline
2000 Trammel Crow Center
2001 Ross Avenue
Dallas, TX  75201

Michael W. Homer
Suitter Axland, P.C.
175 South West Temple, Suite 700
P.O. Box 45101
Salt Lake City, UT  84101

Laura K. Hong
Squire, Sanders & Dempsey
4900 Key Tower
127 Public Square
Cleveland, OH  44114-1304

James R. Hopkinson
Cooney & Conway
120 North LaSalle Street
30th Floor
Chicago, IL  60602

Nathan Howell
909 Washington Avenue
Waco, TX  76703

Jeffrey P. Hubbard
Wells, Moore, Simmons & Hubbard
P.O. Box 1970
Jackson, MS 39215-1970

Michael E. Jackson
Schwarzwald & McNair
616 Penton Media Bldg.
1300 east Ninth Street
Cleveland, OH  44114-1503

Eric D. Jackstadt
Simmons Firm, LLC
707 Berkshire Boulevard
P.O. Box 521
East Alton, IL 62024

Mark F. James
Hatch, James & Dodge
10 West Broadway, Suite 400
Salt Lake City, UT  84101

Carol T. Jarman
Hatch, James & Dodge
10 West Broadway, Suite 400
Salt Lake City, UT  84101

A. Timothy Jones
Hawkins & Parnell
4000 One Peachtree Center
303 Peachtree Street, N.E.
Atlanta, GA  30308-3243

J. Michael Jordan
Gardere Wynne Swell
Wells Fargo Bank Plaza
1000 Louisiana, Suite 3400
Houston, TX  77002-5007

Eileen M. Joyce
Baughman & Associates
2215 Illuminating Bldg.
55 Public Square
Cleveland, OH  44113

Joseph J. Joyce
Strong  & Hanni
9 Exchange Place, 6th Floor
Salt Lake City, UT  84111-84180

Kevin O. Kadlec
Bonezzi, Switzer, Murphy & Polito
1400 Leader Bldg.
526 Superior Avenue
Cleveland, OH  44114-1491

Jennifer J. Kalas
Hinshaw & Culbertson
222 Indianapolis Blvd., Suite 202
Schererville, IN  46375

Charles J. Kalinoski
Kalinoski & Chaplinsky
100 Court Avenue, Suite 315
Des Moines, IA  50309-2200

Michael V. Kelley
Climaco, Lefkowitz, Peca, Wilcox &
Garofoli
900 Halle Building
1228  Euclid Avenue
Cleveland, OH  44115

Jason L. Kennedy
Segal, McCambridge, Singer &
Mahoney, Ltd
One IBM Plaza, Suite 200
330 North Wabash Avenue
Chicago, Il  60611

Steven Joseph Kherkher
Williams & Bailey, LLP
8441 Gulf Freeway, Suite 600
Houston, TX 77017

Douglas B. King
wooden & McLaughlin
One Indiana Square, Suite 1800
Indianapolis, IN 46204

Lynne M. Kizis
Wilentz, Goldman & Spitzer
90 Woodbridge Center Drive
P.O. Box 10
Woodbridge, NY 07092

Kevin R. Knight
Ice, Miller, Donadio & Ryan
One American Square
Box 82001
Indianapolis, IN 46282-0002

John A. Koepke
Jackson Walker, L.L.P.
901 Main Street, Suite 6000
Dallas, TX 75202

Karl M. Koons, III
Locke Reynolds Llp
201 North Illinois St. Suite 1000
P.O. Box 44961
Indianapolis, IN 46244-0961

Reginald S. Kramer
Oldham & Dowling
195 South Main Street, Suite 300
Akron, OH 44308-1314

Donald A. Krispin
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
645 Griswold St.
Detroit, MI 48226-4192

Laura E. Kugler
Bailey Crowe & Kugler
4600 Bank of American Plaza
901 Main Street
Dallas, TX 75202

Arnold C. Lakind
Szaferman, Lakind, Blumstein,
Watter & Blader
Quaker Bridge Executive Center
101 Grovers Mill Road, Suite 104
Lawrenceville, NJ 08648

Daphne M. Lancaster
Aultman, Tyner, Ruffin &
Yarborough, Ltd.
P.O. Box 750
Hattiesburg, MS 39403-0750

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Mary N. Larimore
Ice, Miller, Donadio & Ryan
One American Square
Box 82001
Indianapolis, IN 46282

Allan L. Larson
Snow, Christensen & Martineau
10 Exchange Place
P.O. Box 45000

Christopher P. Larson
Heyl, Royster, Voelker & Allen
600 Bank One Building
124 Southwest Adams
Peoria, IL 61602

Richard T. Lawrence
Watkins & Eager
P.O. Box 650
Jackson, MS 39205-0650

James W. Ledlie
Motley, Rice, LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464

Jonathan M. Lively
One IBM Plaza
330 N. Wabash
Suite 200
Chicago, IL 60611

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102

Stephen M. Loftin
Hicks, Thomas & Litienstein
700 Louisiana
Suite 2000
Houston, TX 77002

Daniel M. Long
Locke Reynolds LLP
201 North Illinois Street
Suite 1000
Indianapolis, IN 46244

John R. Lund
Snow, Christensen & Martineau
10 Exchange Place, #1100
P.O. Box 45000
Salt Lake City, UT 84145

Edward H. MacCabe
MacCabe & McGuire
77 W. Wacker Drive
Suite 3333
Chicago, IL 60601

Heather M. MacKenzie
Thompson & Knight
1700 Pacific Avenue
Suite 3300
Dallas, TX 75201-4693

David J. Malton, Jr.
Ice Miller
One American Square
P.O. Box 82001
Indianapolis, IN 46282-0002

Patrick C. Malouf
Porter & Malouf
P.O. Box 12768
Jackson, MS 39236

Bruce P.Mandel
Ulmer & Berne, L.L.P.
1300 E. Ninth Street
900 Bond Court Building
Cleveland, OH 44114

Brent V. Manning
Manning, Curtis, Bradshaw, &
Bednar
Third Floor Newhouse Building
10 Exchange Place
Salt Lake City, UT  84111

Jack B. Manning
Bean & Manning
1500 San Felipe Plaza
5847 San Felipe Road
Houston, TX  77057

Bruce B. Marr
McKenna, Storer, Rowe, White &
Farrug
33 N. Lasalle Street, Suite 1400
Chicago, IL  60602-2610

Karen Kay Maston
Connelly, Baker, et al.
700 Louisiana, Suite 1850
Houston, TX  77002-2778

Jonathan D. Mattingly
Barnes & Thornburg
11 S. Meridian Street
Suite 1313
Indianapolis, IN  46204

Robert G. McCoy
Cascino Vaughan Law Offices, Ltd.
220 South Ashland Avenue
Chicago, IL  60607

John K. McDavid
Locke, Reynolds, Boyd & Weisell
201 North Illinois Street
Suite 1000
P.O. Box 44961
Indianapolis, IN  46244

Moffatt Grier McDonald
Haynsworth Sinkler Boyd
P.O. Box 2048
Greenville, SC  29602

Casey K. McGarvey
Berman Tomsic & Savage
50 S. Main, Suite 1250
Salt Lake City, UT  84144

Jeffrey L. McKean
Wooden & McLaughlin
1600 Capital Center South
201 N. Illinois
Indianapolis, IN  46204

Bob McCoy
Cascino Vaughan Law Offices
220 S. Ashland Avenue
Chicago, IL  60607-5308

Susan E. Mehringer
Lewis & Wagner
501 Indiana Avenue, Suite 200
Indianapolis, IN  46202

Daniel J. Michalec

Lewis Charles Miltenberger
Lewis C. Miltenberger & Associates
108 W. 8th Street, Suite 500
Fort Worth, TX  76102

James M. Miletich
McConnell, Siderius, Fleischner,
Houghtaling & Craigmile
2401 15th Suite 300
Denver, CO  80202

William G. Minkin
Law Offices of Peter G. Angelos
One Charles Center
100 N. Charles Street, 22nd Floor
Baltimore, MD  21201

Peter A. Moir
Quilling, Selander, Cummiskey,
Clutts & Lownds
2001 Bryan Street, Suite 1800
Dallas, TX  75201

John B. Moore
Phillips, Parker, Oberson & Moore
716 W. Main Street, Suite 300
Louisville, KY  40202

Denise Moretz
Woolf, McClane, Bright, Allen &
Carpenter
P.O. Box 900
Knoxville, TN  37901-0900

Joseph J. Morford
Tucker Ellis & West Llp
1100 Huntington Bldg.
925 Euclid Avenue
Cleveland, OH  44115-1475

Renee J. Mortimer
Hinshaw & Culbertson
222 Indianapolis Blvd., Suite 202
Schererville, IN  46375

D. Matthew Moscon
Stoel Rives, LLP
201 South Main Street, Suite 1100
Salt Lake City, UT  84111-4904

Ronald L. Motley
Motley, Rice, LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464

Frederick S. Mueller
Johnson & Bell, Ltd.
900 Indianapolis Blvd Suite A
Highland, IN  46322

Timothy J. Murphy
Maccaqbe & Mcguire
77 W. Wacker Drive, Suite 3333
Chicago, IL  60601-1634

John J. Nagle, III
Bodie, Nagle, Dolina, Smith &
Hobbs, PA
21 W. Susquehanna Avenue
Towson, MD  21204

Raymond A Neuer
Sheehy, Serpe & Ware, P.C.
909 Fannin, suite 2500
Houston, TX  77010

Christopher A. Nicols
Husch & Eppenberger, LLC
401 Main Street
Peoria, Il 61550

Michelle Noorani
Miles & Stockbridge
10 Light Street
Baltimore, MD  21202

Jenifer E. Novak
Frantz Ward
55 Public Square, 19th Floor
Cleveland, OH 44113

Matthew C. O'Connell
Sutter, O'Connell, Mannion & Farchi
3600 Erieview Tower
1301 East Ninth Street
Cleveland, OH 44114

Richard P. O'Leary
McCarter & English, L.L.P.
300 Park Avenue, 18th Floor
New York, NY 10022

Jon B. Ornforff
Baker & Lancianese
River Tower, 3rd Floor
1108 Third Avenue, Suite 300
Huntington, WV 25701

Joseph T. Ostrowski
Baughman & Associates
2215 Illuminating Bldg.
55 Public Square
Cleveland, OH 44113-1996

Evan J. Palik
McMahon, DeGulis, Hoffman &
Lombardi
The Caxton Building
812 Huron Road, East
Suite 650
Cleveland, OH 44115-1126

E. Spencer Parris
Martin & Jones
410 Glenwood Avenue, Suite 200
Raleigh, NC 27603

Lisa M. Pascarella
Pehlivanian & Braaten, LLC
2430 Route 34
P.O. Box 648
Manasquan, NJ 08736

David P. Pavlik
Buckley King
1400 Bank One Center
600 Superior Avenue
Cleveland, OH 44114

Timothy Peck
Smith Moore LLP
P.O. Box 21927
Greensboro, NC 27420

John W. Petereit
Godwin Gruber
1201 Elm Street, Suite 1700
Dallas, TX 75270-2084

Martha J. Phillips
Atkinson, Haskins, et al.
525 S. Main St., Sutie 1500
Tulsa, OK 74103-4524

Jamess K. Tracy
Leboeuf Lamb Greene & Macrae
136 S. Main St., Sutie 1000
Salt Lake City, UT 84101

Andrew J. Trevelise
Red Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Willis R. Tribler
Tribler, Orpett & Crone
30 North LaSalle Street
Philadelphia, PA 19103

Jennifer A. Trofa
2120 West Cortland
Chicago, IL 60647

Allen D. Vaughan
Cascino Vaughan Law Offices, Ltd.
220 South Ashland Avenue
Chicago, IL 60607-5308

Ice Miller
One American Square
P.O. Box 82001
Indianapolis, IN 46282-0002

David R. Ward
Ward & King
4546 S. 700 E. Suite 200
Salt Lake City, UT 84107

James L. Ware
Sheehy, Serpe & Ware, P.C.
2500 Two Houston Centre
909 Fanin
Houston, TX 77010-1003

Diana R. Warnecke
Sedgwick Detert, et al.
1717 Main Street, Suite 5400
Dallas, TX 75201

Kirk G. Warner
Smith, Anderson, Blount, et al.
P.O. Box 2611
Raleigh, NC 27602-2611

David B. Watkiss
Ballard Spahr Andrews & Ingersoll
201 South Main Street, Suite 600
Salt Lake City, UT 84111-2221

Charles J. Watts
Smith, Shew, Scrivner, Corbin &
Watts
6520 North Western Avenue, Suite
300
Oklahoma City, OK 73116

Harry P. Weitzel
Mayer, Brown, Rowe & Maw, LLP
NCNB Center
700 Louisiana, Suite 3600
Houston, TX 77002

Joe D. Wells
Roven, Kaplan & Wells
2190 North Loop West, Suite 410
Houston, TX 77002

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

Ben T. White, II
Schiller, Osbourn & Barnes
401 W. Main Street
1600 One Riverfront Plaza
Louisville, KY 40202

Lori Wiese
Powers & Frost, L.L.P.
1221 McKinney Street, Suite 2400
Houston, T 77010-1009

Melody M. Wilkinson
Cooley, Manion & Jones
100 E. 15th Street, Suite 320
Fort Worth, TX 76102

Robert W. Wilkinson
Dogan & Wilkinson
P.O. Box 1618
Pascagoula, MS  39568-1618

Germaine W. Willett
Ice Miller
One American Square
Indianapolis, IN  46282

James R. Williams
Segal McCambridge Singer And
Mahoney Ltd
330 North Wabash, Suite 200
Chicago, IL  60611

Kenneth J. Wilson
Richardson, Patrick, Westbrook &
Brickman
1730 Jackson Street
P.O. Box 1368
Barnwell, SC  29812

Todd S. Winegar
201 South Main, Suite 900
P.O. Box 353
Salt Lake City, UT  84110

Andrew R. Wolf
Bruce P. Clark and Associates

419 Ridge Road
Munster, IN  46321-1581

Dawn M. Wright
Thompson & Knight
1700 Pacific Ave.
Suite 3300
Dallas, TX  75201

Stacy Kay Yates
1001 Fannin
8th Floor
Houston, TX  77002

<div align="right">
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 2 8 2004

FILED
CLERK'S OFFICE
</div>

**SUPPLEMENTAL**
**AFFIDAVIT OF SERVICE**

Michael A. Kaeding, Esq., being first duly sworn on oath, deposes and states on June 25, 2004, I caused to be served, via U.S. Mail, postage prepaid, one copy of Stepan Company's Opposition to Plaintiffs' Motion to Vacate Conditional Transfer Order on the attached list of involved counsel.

I hereby certify that the aforesaid statements made by me are true and correct.

SUBSCRIBED AND SWORN TO
Before me this ___28th___ day
Of June, 2004.

NOTARY PUBLIC

"OFFICIAL SEAL"
LAURA M. KA?.E
Notary Public, State of Illinois
My Commission Expires N?y 2?, 2?.S

RECEIVED
CLERK'S OFFICE

2004 JUN 28  P 6: 10

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

**ASBESTOS PRODUCTS LIABILITY LITIGATION**
**SERVICE LIST**

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building
7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, DC 20036

David A. Damico
Burns, White & Hickton
Fifth Avenue Place, Suite 2400
120 Fifth Avenue
Pittsburgh, PA 15222

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
Suite 1000
The Bourse
Philadelphia, PA 19106-2574

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street, 33rd Floor
Philadelphia, PA 19103

Frederick E. Gerson, Esq.
D'Alessandro, Jacovino & Gerson
147 Columbia Turnpike
P.O. Box 340
Florham Park, NJ 07932-0340

Susan M. Hansen
Brownson & Ballou
4800 U.S. Bank Place
601 Second Avenue, South
Minneapolis, MN 55402

Reginald S. Kramer
Oldham & Dowling
195 South Main Street,
Suite 300
Akron, OH 44308-1314

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102

Ronald L. Motley
Motley, Rice, LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

Joseph D. Rasnek
McElroy, Deutsch, Mulvaney &
Carpenter, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075

John J. Repcheck
Marks, O'Neill, O'Brien &
Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
Roven, Kaplan & Wells
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease,
LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West, 15th Floor
Philadelphia, PA 19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1570 Penobscot Building
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226

Andrew J. Trevelise
Red Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 2 8 2004

FILED
CLERK'S OFFICE

| | | |
|---|---|---|
| IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI) | : : : | MDL - 875 |
| LOUIS BARLETTA and MARY JANE BARLETTA, his wife; | : : : | |
| Plaintiffs, | : : : | Civil Action No. 2:04-cv-00647-WGB-MCA (Hon. William J. Bassler) |
| vs. | : : | **CIVIL ACTION** |
| THE CONGOLEUM CORPORATION; STEPAN COMPANY; et al., | : : : | |
| Defendants. | : : : | |

**EXHIBITS TO**
**STEPAN COMPANY'S OPPOSITION TO PLAINTIFFS'**
**MOTION TO VACATE CONDITIONAL TRANSFER ORDER**

Exhibit 1     May 25, 2004 MDL Panel Letter

Exhibit 2     Stepan Company's Notice of Removal

Exhibit 3     Exhibits to Stepan Company's Notice of Removal

Exhibit 4     Plaintiffs' May 26, 2004 Letter to Judge Bassler

Exhibit 5     Stepan Company's Opposition to the Motion to Remand

Dated: June 28, 2004

RECEIVED
CLERK'S OFFICE
2004 JUN 28 P 12: 00
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

Brian W. Lewis
Michael A. Kaeding
Wildman, Harrold, Allen & Dixon LLP
225 West Wacker Drive, Suite 2800
Chicago, IL  60606-1229
(312) 201-2000

Joseph D. Rasnek
McElroy, Deutsch, Mulvaney &
Carpenter, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ  07962-2075
(973) 993-8100

**EXHIBIT 1**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 2 8 2004

FILED
CLERK'S OFFICE

# JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

**MEMBERS:**
Judge John F. Keenan
United States District Court
Southern District of New York

Judge Bruce M. Selya
United States Court of Appeals
First Circuit

Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

**DIRECT REPLY TO:**

Michael J. Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone:  [202] 502-2800
Fax:        [202] 502-2888

http://www.jpml.uscourts.gov

May 25, 2004

Frederick E. Gerson, Esq.
D'Alessandro, Jacovino & Gerson
147 Columbia Turnpike
P.O. 340
Florham Park, NJ 07932-0340

Re:  MDL-875—In re Asbestos Products Liability Litigation (No. VI)

  *Louis Barletta, et al. v. Congoleum Corp., et al.,* D. New Jersey, C.A. No. 2:04-647

Motion and Brief Due on or before:  **June 8, 2004**

Dear Mr. Gerson:

  We have received and filed your Notice of Opposition to the proposed transfer of the referenced action for coordinated or consolidated pretrial proceedings.  In accordance with Rule 7.4(c) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435 (2001), the conditional transfer order is stayed until further order of the Panel.  You must adhere to the following filing requirements:

1) Pursuant to Panel Rules 5.12(a), 5.13 and 7.4(d), an original and eleven copies of your Motion and Brief to Vacate the Conditional Transfer Order, as well as a computer readable disk of the pleading in WordPerfect for Windows format, must be received in the Panel offices by the due date listed above.  **Fax transmission of your motion and brief will not be accepted.**  *See* Panel Rule 5.12(d).  Counsel filing oppositions in more than one action are encouraged to consider filing a single motion and brief with an attached schedule of actions.

2) Papers must be served on the enclosed Panel Service List.  Please attach a copy of this list to your certificate of service.  (Counsel who have subsequently made appearances in your action should be added to your certificate of service).

3) Rule 5.3 corporate disclosure statements are due within eleven days of the filing of the motion to vacate.

4) Failure to file and serve the required motion and brief within the allotted fifteen days will be considered a withdrawal of the opposition and the stay of the conditional transfer order will be lifted.

  Any recent official change in the status of a referenced action should be brought to the attention of the clerk's office as soon as possible by facsimile at (202) 502-2888.  Your cooperation would be appreciated.

        Very truly,

        Michael J. Beck
        Clerk of the Panel

        By _____
           Deputy Clerk

Enclosure

cc:   Panel Service List
      Transferee Judge:  Judge Charles R. Weiner
      Transferor Judge:  Judge William G. Bassler

                                                        JPML Form 37

# UNITED STATES OF AMERICA
# JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

**MEMBERS:**
Judge John F. Keenan
United States District Court
Southern District of New York

Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

**DIRECT REPLY TO:**

Michael J. Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:          [202] 502-2888

http://www.jpml.uscourts.gov

June 10, 2004

### NOTICE OF HEARING SESSION

Dear Counsel:

Pursuant to the order of the Judicial Panel on Multidistrict Litigation filed today, you are hereby notified that a hearing session has been scheduled to consider various matters pursuant to 28 U.S.C. § 1407.

DATE OF HEARING SESSION:          July 22, 2004

LOCATION OF HEARING SESSION:   William Kenzo Nakamura United States Courthouse
                                                       Court of Appeals Courtroom No. 815, 8th Floor
                                                       1010 Fifth Avenue
                                                       Seattle, Washington  98104-1130

TIME OF HEARING SESSION: In those matters designated for oral argument, counsel presenting oral argument must be present at 8:30 a.m. in order for the Panel to allocate the amount of time for oral argument.  Oral argument will commence at 9:30 a.m.

Please direct your attention to the enclosed Hearing Session Order and Schedule of Matters for Hearing Session for a listing of the matters scheduled for consideration at this hearing session.

- Section A of this Schedule lists the matters designated for oral argument.
- Section B of this Schedule lists the matters that the Panel has determined to consider **without oral argument**, pursuant to Rule 16.1(c), R.P.J.P.M.L., 199 F.R.D. 425, 439 (2001).

For those matters listed on Section A of the Schedule, the enclosed blue "Notice of Presentation or Waiver of Oral Argument" must be returned to this office no later than **July 2, 2004**.  Note the procedures governing Panel oral argument which are outlined on the enclosed "Procedures for Oral Argument before the Judicial Panel on Multidistrict Litigation."  These procedures are strictly adhered to and your cooperation is appreciated.

Very truly,

*Michael J. Beck*

Michael J. Beck
Clerk of the Panel

c:  Clerk, U.S. District Court for the Western District of Washington

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

JUNE 10, 2004

MICHAEL J. BECK
CLERK OF THE PANEL

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, D. LOWELL JENSEN, J. FREDERICK MOTZ, ROBERT L. MILLER, JR., AND KATHRYN H. VRATIL, JUDGES OF THE PANEL

## HEARING SESSION ORDER

IT IS ORDERED that on July 22, 2004, a hearing session will be held in Seattle, Washington, to consider the matters on the attached Schedule under 28 U.S.C. § 1407.

IT IS FURTHER ORDERED that at said hearing session the Panel may, on its own initiative, consider transfer of any or all of the actions in those matters to any district or districts.

IT IS FURTHER ORDERED that at said hearing session the matters listed on Section A of the attached Schedule shall be designated for oral argument.

IT IS FURTHER ORDERED that at said hearing session the matters listed on Section B of the attached Schedule shall be considered without oral argument, pursuant to Rule 16.1(c), R.P.J.P.M.L., 199 F.R.D. 425, 439 (2001). The Panel reserves the prerogative, on any basis including submissions of parties pursuant to Panel Rule 16.1(b), to issue a subsequent notice designating any of those matters for oral argument.

IT IS FURTHER ORDERED that the Clerk of the Judicial Panel on Multidistrict Litigation shall direct notice of this hearing session to counsel for all parties involved in the matters on the attached Schedule.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

# SCHEDULE OF MATTERS FOR HEARING SESSION
### July 22, 2004 -- Seattle, Washington

## SECTION A
## MATTERS DESIGNATED FOR ORAL ARGUMENT

### MDL-1615 -- In re The Burgess Company, Inc., Collective Bargaining Agreement Litigation

Motion of defendant Laborers International Union of North America, Local 107 for centralization of the following actions in the United States District Court for the Middle District of Tennessee:

#### Western District of Arkansas

*The Burgess Co., Inc. v. Laborers International Union of North America, Local 107,*
C.A. No. 2:04-2027

#### Middle District of Tennessee

*South Central Regional Laborers' Health & Welfare Fund v. The Burgess Co., Inc.,*
C.A. No. 3:03-606

Schedule of Matters for Hearing Session, Section A                          p. 2
Seattle, Washington

MDL-1616 — In re Urethane Antitrust Litigation

Motion of plaintiff Standard Rubber Products, Inc., for centralization of certain of the following actions in the United States District Court for the District of New Jersey; motion of plaintiff Rahco Rubber Products, Inc., for centralization of certain of the following actions in the United States District Court for the Northern District of California; motion of plaintiff Globe Rubber Works, Inc., for centralization of certain of the following actions in the United States District Court for the Eastern District of Pennsylvania; and motion of plaintiff Artic-Temp, Inc., for centralization of certain of the following actions in the United States District Court for the Northern District of Ohio:

### Northern District of California

*Liquidation Reserve Account Trust, etc. v. Uniroyal Chemical Co. Inc., et al.,*
   C.A. No. 3:04-1422
*Industrial Rubber Products, Inc. v. Crompton Corp., et al.,* C.A. No. 3:04-1597
*Rahco Rubber Products, Inc. v. BASF AG, et al.,* C.A. No. 4:04-1272

### Northern District of Illinois

*Creative Urethanes, Inc. v. Crompton Corp., et al.,* C.A. No. 1:04-2213
*Kryptane Systems, LLC v. BASF AG, et al.,* C.A. No. 1:04-2416
*RWM Casters v. BASF AG, et al.,* C.A. No. 1:04-3060

### District of Kansas

*Beynon Sports Surfaces, Inc. v. Crompton Corp., et al.,* C.A. No. 2:04-2165

### District of New Jersey

*Belting Industries Co., Inc. v. BASF AG, et al.,* C.A. No. 2:04-1390
*Maine Industrial Tires Limited v. Crompton Corp.,* C.A. No. 2:04-1635
*Standard Rubber Products, Inc. v. BASF AG, et al.,* C.A. No. 3:04-1383

### Northern District of Ohio

*Artic-Temp, Inc. v. Crompton Corp., et al.,* C.A. No. 5:04-725

Schedule of Matters for Hearing Session, Section A
Seattle, Washington                                                            p. 3

MDL-1616 (Continued)

### Eastern District of Pennsylvania

*Alco Industries, Inc. v. Crompton Corp., et al.,* C.A. No. 2:04-1339
*Globe Rubber Works, Inc. v. Crompton Corp.,* C.A. No. 2:04-1654

### Western District of Pennsylvania

*Rubber Engineering & Development Co. v. Uniroyal Chemical Co., Inc., et al.,*
    C.A. No. 2:04-460
*Quabaug Corp. v. Uniroyal Chemical Co., et al.,* C.A. No. 2:04-643
*PSI Urethanes, Inc. v. Uniroyal Chemical Co., Inc.,* C.A. No. 2:04-658

### MDL-1617 — In re Maytag Corp. Neptune Washer Products Liability Litigation

Motion of defendants Maytag Corporation; Maytag Appliances Sales Company; and
Maytag Services, LLC, for centralization of the following actions in the United States District
Court for the Southern District of Iowa:

### District of South Carolina

*Robbie Lee Bishop v. Maytag Corp., et al.,* C.A. No. 7:04-1126

### Western District of Tennessee

*Edward Raniszewski v. Maytag Corp., et al.,* C.A. No. 2:04-2239

### Southern District of West Virginia

*Teddy Nichols v. Maytag Corp., et al.,* C.A. No. 6:04-346

Schedule of Matters for Hearing Session, Section A
Seattle, Washington                                          p. 4


## MDL-1618 -- In re Northwest Airlines Corp. Privacy Litigation

Motion of plaintiff Richard S. Copeland for centralization of the following actions in a single United States district court:

### District of Minnesota

*Jeanne Vergeldt v. Northwest Airlines Corp., et al.*, C.A. No. 0:04-126
*Eric S. Povitz v. Northwest Airlines Corp., et al.*, C.A. No. 0:04-136
*Karen Lawson, et al. v. Northwest Airlines Corp., et al.*, C.A. No. 0:04-616
*Mark G. Barlow v. Northwest Airlines Corp., et al.*, C.A. No. 0:04-679
*Connie Dillon, et al. v. Northwest Airlines Corp., et al.*, C.A. No. 0:04-680
*Paul Daubitz v. Northwest Airlines Corp., et al.*, C.A. No. 0:04-899
*Mark G. Esposito v. Northwest Airlines Corp., et al.*, C.A. No. 0:04-906

### District of North Dakota

*Edwin F. Dyer, III, et al. v. Northwest Airlines Corp., et al.*, C.A. No. 1:04-33

### Western District of Tennessee

*Richard S. Copeland v. Northwest Airlines Corp., et al.*, C.A. No. 2:04-2156


## MDL-1619 -- In re Musha Cay Litigation

Motion of defendants David Copperfield and Jeffrey Berkman for centralization of the following actions in the United States District Court for the District of Nevada:

### District of Nevada

*Janet L. Melk, et al. v. David Copperfield*, C.A. No. 2:04-59

### Southern District of New York

*John J. Melk, et al. v. Jeffrey Berkman*, C.A. No. 1:04-683

Schedule of Matters for Hearing Session, Section A
Seattle, Washington                                                p. 5


## MDL-1620 -- In re Metoprolol Succinate Patent Litigation

Motion of plaintiffs AstraZeneca AB, et al., for centralization of the following actions in the United States District Court for the District of Delaware:


### District of Delaware

*AstraZeneca AB, et al. v. Andrx Pharmaceuticals, LLC, et al.*, C.A. No. 1:04-80
*AstraZeneca AB, et al. v. Eon Labs, Inc.*, C.A. No. 1:04-205


### Eastern District of Missouri

*AstraZeneca AB, et al. v. KV Pharmaceutical Co.*, C.A. No. 4:03-592
*AstraZeneca AB, et al. v. KV Pharmaceutical Co.*, C.A. No. 4:03-1169


## MDL-1621 -- In re Helicopter Crash Near Meadview, Arizona, on August 10, 2001

Motion of defendants Papillon Airways, Inc.; Monarch Enterprises, Inc.; Zuni, LLC; Brenda Halvorson; Barbara J. Halvorson; Lon A. Halvorson; and Elling Halvorson for centralization of the following actions in the United States District Court for the District of Arizona:


### District of Arizona

*Hillary M. Fastag, etc. v. Papillon Airways, Inc., et al.*, C.A. No. 2:02-1073
*Israel Weingarten, et al. v. Papillon Airways, Inc., et al.*, C.A. No. 3:02-1491
*Israel Weingarten, et al. v. Papillon Airways, Inc., et al.*, C.A. No. 3:02-1492
*Franco Innocenti, et al. v. Eurocopter, S.A., et al.*, C.A. No. 3:03-1429


### District of Nevada

*Chana Daskal, etc. v. Eurocopter, S.A., et al.*, C.A. No. 2:04-506
*Nitza Lichtenstein, etc. v. Papillon Airways, Inc., et al.*, C.A. No. 2:04-507


### Western District of Washington

*Franco Innocenti, et al. v. Heliquip International Ltd., et al.*, C.A. No. 2:03-2414

Schedule of Matters for Hearing Session, Section A
Seattle, Washington

p. 6

## MDL-1622 -- In re Cotton Yarn Antitrust Litigation

Motion of plaintiffs Atlantic Textiles; South Carolina Tees, Inc.; Lisa Lesavoy; Armen Co., Inc.; Mekfir International Corporation; and Dell Cartier Associates, Inc., for centralization of the following actions in the United States District Court for the Middle District of North Carolina:

### Eastern District of North Carolina

*Thomaston Mills, Inc., etc. v. Parkdale America, LLC, et al.*, C.A. No. 5:04-292

### Middle District of North Carolina

*Atlantic Textiles v. Parkdale America, LLC, et al.*, C.A. No. 1:04-185
*South Carolina Tees, Inc. v. Parkdale America, LLC*, C.A. No. 1:04-233
*Lisa Lesavoy, etc. v. Parkdale America, LLC*, C.A. No. 1:04-283
*Armen Co., Inc. v. Parkdale America, LLC, et al.*, C.A. No. 1:04-312
*Mekfir International Corp. v. Parkdale America, LLC, et al.*, C.A. No. 1:04-371
*Dell Cartier Associates, Inc. v. Parkdale America, LLC, et al.*, C.A. No. 1:04-412

Schedule of Matters for Hearing Session, Section B
Seattle, Washington                                                    p. 7


## SECTION B
## MATTERS DESIGNATED FOR CONSIDERATION WITHOUT ORAL ARGUMENT


<u>MDL-799 -- In re Air Disaster at Lockerbie, Scotland, on December 21, 1988</u>

Opposition of plaintiff Douglas H. MacQuarrie to transfer of the following action to the United States District Court for the Eastern District of New York:

<u>District of District of Columbia</u>

*Douglas H. MacQuarrie v. The Socialist Peoples Libyan Arab Jamahiriya, et al.,*
C.A. No. 1:04-176


Oppositions of plaintiffs Mary Diamond, et al., and Molena Porter, et al., to remand, under 28 U.S.C. § 1407(a), of the following action to the United States District Court for the District of District of Columbia:

<u>Eastern District of New York</u>

*Jodi Hagerman, et al. v. The Socialist People's Libyan Arab Jamahiriya, et al.,*
C.A. No. 9:03-1579 (D. District of Columbia, C.A. No. 1:02-2147)

Schedule of Matters for Hearing Session, Section B                               p. 8
Seattle, Washington


MDL-875 -- In re Asbestos Products Liability Litigation (No. VI)

   Oppositions of plaintiffs Andrew S. Fink; Louis Barletta, et al.; Dominador Javier;
Romeo Pascua, et al.; Rochelio Echon, et al.; Jose Reandino, et al.; Colleen Carter, et al.; and
David Ray Amason, et al., to transfer of their respective following actions to the United States
District Court for the Eastern District of Pennsylvania:


   Eastern District of Louisiana

Andrew S. Fink v. Todd Shipyards Corp., et al., C.A. No. 2:04-430

   District of New Jersey

Louis Barletta, et al. v. Congoleum Corp., et al., C.A. No. 2:04-647

   District of Northern Mariana Islands

Dominador Javier v. Owens-Illinois, Inc., et al., C.A. No. 1:03-31
Romeo Pascua, et al. v. Owens-Illinois, Inc., et al., C.A. No. 1:03-32
Rochelio Echon, et al. v. Owens-Illinois, Inc., et al., C.A. No. 1:03-33
Jose Reandino, et al. v. Owens-Illinois, Inc., et al., C.A. No. 1:03-34

   Eastern District of Texas

Colleen Carter, et al. v. Buffalo Pumps, Inc., et al., C.A. No. 4:04-66

   Southern District of Texas

David Ray Amason, et al. v. America Optical Corp., et al., C.A. No. 2:03-555

Schedule of Matters for Hearing Session, Section B                    p. 9
Seattle, Washington


MDL-1203 — In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products
                Liability Litigation

    Oppositions of plaintiffs to transfer of their respective following actions to the United
States District Court for the Eastern District of Pennsylvania:


        Middle District of Alabama

    *Ericca Love, et al. v. Wyeth, et al.*, C.A. No. 1:04-79
    *Delane Daniels, et al. v. Wyeth, et al.*, C.A. No. 1:04-89
    *Cheryll Penny, et al. v. Wyeth, et al.*, C.A. No. 1:04-153
    *Sherryl McDuffie, et al. v. Wyeth, et al.*, C.A. No. 1:04-155
    *Janet K. Bellows, et al. v. Wyeth, et al.*, C.A. No. 1:04-156
    *Hanna Malmberg, et al. v. Wyeth, Inc., et al.*, C.A. No. 1:04-172
    *Janice Donelli, et al. v. Wyeth, Inc., et al.*, C.A. No. 1:04-175
    *Gladys Gray, et al. v. Wyeth, Inc., et al.*, C.A. No. 1:04-212
    *Molly Edgar, et al. v. Wyeth, et al.*, C.A. No. 2:04-78
    *Ronnie Benefield v. Wyeth, et al.*, C.A. No. 2:04-80
    *Cora M. Bradley, et al. v. Wyeth, et al.*, C.A. No. 2:04-90
    *Heather Sanders v. Wyeth, et al.*, C.A. No. 2:04-92
    *Thomas Cook v. Wyeth, et al.*, C.A. No. 2:04-93
    *Cindy Davis, et al. v. Wyeth, Inc., et al.*, C.A. No. 2:04-176
    *Wanda Bryant, et al. v. Wyeth, Inc., et al.*, C.A. No. 2:04-213
    *Georgene Peel, et al. v. Wyeth, Inc., et al.*, C.A. No. 2:04-214


        Northern District of Alabama

    *Jimmie Braden v. Wyeth, et al.*, C.A. No. 1:04-235
    *Jevenari Marshall, et al. v. Wyeth, Inc., et al.*, C.A. No. 2:04-179
    *Vicki Jones, et al. v. Wyeth, Inc., et al.*, C.A. No. 2:04-447
    *Delisa Alford, et al. v. Wyeth, et al.*, C.A. No. 7:04-189
    *Julie Johnson, et al. v. Wyeth, et al.*, C.A. No. 7:04-236


        Southern District of Alabama

    *Susan Cofield, et al. v. Wyeth, et al.*, C.A. No. 1:03-875
    *Carolyn Anderson, et al. v. Wyeth, et al.*, C.A. No. 1:04-11
    *Marilyn Williamson v. Wyeth, et al.*, C.A. No. 1:04-12

Schedule of Matters for Hearing Session, Section B                    p. 10
Seattle, Washington


MDL-1203 (Continued)


### Southern District of Alabama (Continued)

*Jacqueline Dinkins v. Wyeth, et al.*, C.A. No. 1:04-149
*Peggy Singleton v. Wyeth, et al.*, C.A. No. 2:04-76
*Annette Horton v. Wyeth, et al.*, C.A. No. 2:04-77

### Central District of California

*Miriam Little v. American Home Products Corp., et al.*, C.A. No. 2:04-366
*Shirley Chiarini v. American Home Products Corp., et al.*, C.A. No. 2:04-630
*Theresa Byrd v. American Home Products Corp., et al.*, C.A. No. 2:04-635

### Southern District of Mississippi

*Earnestine Gatlin, et al. v. Wyeth, et al.*, C.A. No. 3:04-227
*Linda Walls, et al. v. American Home Products Corp., et al.*, C.A. No. 5:04-92
*Veronica Blanton v. Wyeth, et al.*, C.A. No. 5:04-94

### Eastern District of Missouri

*Victoria Hill, et al. v. Wyeth, Inc., et al.*, C.A. No. 4:03-1526

### Western District of Tennessee

*Tina Taylor, et al. v. Wyeth, Inc., et al.*, C.A. No. 1:04-1034
*Lynda Flippo, et al. v. Wyeth, Inc., et al.*, C.A. No. 1:04-1035
*Jeanette Richmond, et al. v. Wyeth, Inc., et al.*, C.A. No. 1:04-1064
*Debra Burns, et al. v. Wyeth, Inc., et al.*, C.A. No. 2:04-2113
*James Ashley, et al. v. Wyeth, Inc., et al.*, C.A. No. 2:04-2114
*Rhonda McKlemurry v. Wyeth, Inc., et al.*, C.A. No. 2:04-2115
*Myra Reed, et al. v. Wyeth, Inc., et al.*, C.A. No. 2:04-2116
*Ray Baker, et al. v. Wyeth, Inc., et al.*, C.A. No. 2:04-2117
*Laura Snipes v. Wyeth, Inc., et al.*, C.A. No. 2:04-2118
*Betty Hatzikian v. Wyeth, Inc., et al.*, C.A. No. 2:04-2119
*Delores Emmert, et al. v. Wyeth, et al.*, C.A. No. 2:04-2120
*Cynthia Roberson, et al. v. Wyeth, Inc., et al.*, C.A. No. 2:04-2121

Schedule of Matters for Hearing Session, Section B                                p. 11
Seattle, Washington


MDL-1203 (Continued)


### Western District of Tennessee (Continued)

*Linda Wages, et al. v. Wyeth, Inc., et al.*, C.A. No. 2:04-2122
*Michael McKinnie, et al. v. Wyeth, et al.*, C.A. No. 2:04-2123
*Diane Moody, et al. v. Wyeth, et al.*, C.A. No. 2:04-2124
*Ronald Kouri v. Wyeth, et al.*, C.A. No. 2:04-2125
*Herman Wilkins, Jr. et al. v. Wyeth, et al.*, C.A. No. 2:04-2126
*Kim Whitmer, et al. v. Wyeth, et al.*, C.A. No. 2:04-2127
*Thelma Williams, et al. v. Wyeth, et al.*, C.A. No. 2:04-2128
*Larry Joe Privett, et al. v. Wyeth, et al.*, C.A. No. 2:04-2129
*Brenda Armstrong, et al. v. Wyeth, et al.*, C.A. No. 2:04-2130
*Shirley Coburn, et al. v. Wyeth, et al.*, C.A. No. 2:04-2131
*Betty Lewellen v. Wyeth, et al.*, C.A. No. 2:04-2132
*George Chatman, et al. v. Wyeth, Inc., et al.*, C.A. No. 2:04-2134
*Gerald Rogers, et al. v. Wyeth, et al.*, C.A. No. 2:04-2135
*Debbie Malone, et al. v. Wyeth, Inc., et al.*, C.A. No. 2:04-2138
*Mildred Wenzler, et al. v. Wyeth, Inc., et al.*, C.A. No. 2:04-2187
*Katherine McClure, et al. v. Wyeth, Inc., et al.*, C.A. No. 2:04-2188
*Terry Uhrich v. Wyeth, Inc., et al.*, C.A. No. 2:04-2189
*Evelyn Smith, et al. v. Wyeth, et al.*, C.A. No. 2:04-2190
*Annie Gooden v. Wyeth, et al.*, C.A. No. 2:04-2192


### Eastern District of Texas

*Wendy C. Manning, et al. v. Wyeth, et al.*, C.A. No. 9:04-4

### Northern District of Texas

*Donna Crosby v. Wyeth, et al.*, C.A. No. 4:04-71
*J. Stewart Bass, et al. v. Wyeth, et al.*, C.A. No. 4:04-107

### Southern District of Texas

*Cynthia A. Loera, et al. v. Wyeth, et al.*, C.A. No. 2:04-13
*Carol A. Rose v. Wyeth*, C.A. No. 4:04-77

Schedule of Matters for Hearing Session, Section B                      p. 12
Seattle, Washington


## MDL-1261 — In re Linerboard Antitrust Litigation

Opposition of plaintiff Farmland National Beef Packing Co., L.P., to transfer of the following action to the United States District Court for the Eastern District of Pennsylvania:

### District of Kansas

*Farmland National Beef Packing Co., L.P. v. Stone Container Corp., et al.,*
C.A. No. 6:03-1312


## MDL-1334 — In re Managed Care Litigation

Oppositions of defendants Blue Cross and Blue Shield Association; Hawaii Medical Service Association; Robert P. Hiam; Trustmark Insurance Company; and Coresource, Inc., to transfer of their respective following actions to the United States District Court for the Southern District of Florida:

### District of Hawaii

*Jo Ann Kilar, et al. v. Blue Cross Blue Shield Association, et al.,* C.A. No. 1:03-420

### Northern District of Texas

*Jefferson Dental Clinics, P.C. v. Trustmark Insurance Co., et al.,* C.A. No. 3:02-861

Motion of defendants Capital BlueCross and Highmark, Inc., to transfer the following action to the United States District Court for the Southern District of Florida:

### Eastern District of Pennsylvania

*Natalie M. Grider, M.D., et al. v. Keystone Health Plan Central, Inc., et al.,*
C.A. No. 2:01-5641

Schedule of Matters for Hearing Session, Section B                    p. 13
Seattle, Washington


## MDL-1348 -- In re Rezulin Products Liability Litigation

Oppositions of plaintiffs to transfer of their respective actions listed on Attachment A to the United States District Court for the Southern District of New York.


## MDL-1361 — In re Compact Disc Minimum Advertised Price Antitrust Litigation

Opposition of defendants Metro-Goldwyn-Mayer Studios, Inc.; Columbia Pictures Industries, Inc.; Disney Enterprises, Inc.; Paramount Pictures Corporation; Twentieth Century Fox Film Corporation; and Universal City Studios, LLLP, to transfer of the following action to the United States District Court for the District of Maine:

### Northern District of New York

*John A. Deep v. The Recording Industry Association of America, et al.,*
   Bky. Advy. No. 1:04-90037


## MDL-1382 -- In re Unitrin, Inc., Industrial Life Insurance Litigation

Opposition of plaintiffs Barbara J. Bates, et al., to transfer of the following action to the United States District Court for the Eastern District of Louisiana:

### Southern District of Mississippi

*Barbara J. Bates, et al. v. Union National Life Insurance Co., et al.,* C.A. No. 5:04-108

Schedule of Matters for Hearing Session, Section B                      p. 14
Seattle, Washington

## MDL-1390 -- In re Life Insurance Co. of Georgia Industrial Life Insurance Litigation

Opposition of plaintiffs Mary White Moorer, et al., and Billie A. Auld, et al., to transfer of their respective following actions to the United States District Court for the Eastern District of Louisiana:

### Southern District of Mississippi

*Mary White Moorer, et al. v. Life Insurance Co. of Georgia, et al.*, C.A. No. 5:04-39
*Billie A. Auld, et al. v. Life Insurance Co. of Georgia, et al.*, C.A. No. 5:04-55

## MDL-1405 -- In re California Wholesale Electricity Antitrust Litigation

Opposition of plaintiff Dry Creek Corporation to transfer of the following action to the United States District Court for the Southern District of California:

### Northern District of California

*Dry Creek Corp. v. Williams Energy Marketing & Trading Co., et al.*, C.A. No. 3:04-833

## MDL-1429 -- In re American General Life & Accident Insurance Co. Industrial Life Insurance Litigation

Oppositions of plaintiffs Evangela Bates, et al., and Joanette D. Jones, et al., to transfer of their respective following actions to the United States District Court for the District of South Carolina:

### Southern District of Mississippi

*Evangela Bates, et al. v. American General Life & Accident Insurance Co., et al.*,
   C.A. No. 5:04-40
*Joanette D. Jones, et al. v. American General Life & Accident Insurance Co., et al.*,
   C.A. No. 5:04-41

Schedule of Matters for Hearing Session, Section B                    p. 15
Seattle, Washington


## MDL-1446 -- In re Enron Corp. Securities, Derivative & "ERISA" Litigation

Opposition of plaintiffs William Aksamit, et al., to transfer of the following action to the United States District Court for the Southern District of Texas:

### Southern District of Illinois

*William Aksamit, et al. v. UBS Painewebber, Inc., et al.*, Bky. Advy. No. 3:04-3096


## MDL-1491 -- In re African-American Slave Descendants Litigation

Opposition of plaintiffs Deadria Farmer-Paellmann, et al., to transfer of the following action to the United States District Court for the Northern District of Illinois:

### Southern District of New York

*Deadria Farmer-Paellmann, et al. v. FleetBoston Financial Corp., et al.*, C.A. No. 1:04-2430


## MDL-1508 -- In re Medco Health Solutions, Inc., Pharmacy Benefits Management Litigation

Opposition of plaintiff Peabody Energy Corporation to transfer of the following action to the United States District Court for the Southern District of New York:

### Eastern District of Missouri

*Peabody Energy Corp. v. Merck & Co., Inc.*, C.A. No. 4:03-1839

Schedule of Matters for Hearing Session, Section B
Seattle, Washington

p. 16

## MDL-1529 -- In re Adelphia Communications Corp. Securities & Derivative Litigation (No. II)

Opposition of plaintiffs Moctesuma Esparza, et al., to transfer of the following action to the United States District Court for the Southern District of New York:

### Central District of California

*Moctesuma Esparza, et al. v. Deloitte & Touche, LLP*, C.A. No. 2:04-1784

## MDL-1535 -- In re Welding Rod Products Liability Litigation

Oppositions of plaintiffs Raymond Dotson; Lester Davis, et al.; Jesse Guillen, et al.; Juan Canchola, et al.; Rick Montalbano, et al.; and David M. Cirilo to transfer of their respective following actions to the United States District Court for the Northern District of Ohio:

### Western District of Louisiana

*Raymond Dotson v. Hobart Brothers Co., et al.*, C.A. No. 5:04-375

### Eastern District of Pennsylvania

*Lester Davis, et al. v. Lincoln Electric Holding, Inc., et al.*, C.A. No. 2:04-320

### Southern District of Texas

*Jesse Guillen, et al. v. Lincoln Electric Co., et al.*, C.A. No. 2:04-41
*Juan Canchola, et al. v. Lincoln Electric Co., et al.*, C.A. No. 2:04-42
*Rick Montalbano, et al. v. Lincoln Electric Co., et al.*, C.A. No. 4:04-1661

### Western District of Texas

*David M. Cirilo v. Lincoln Electric Co., et al.*, C.A. No. 5:04-115

Schedule of Matters for Hearing Session, Section B                          p. 17
Seattle, Washington


## MDL-1550 — In re IDT Corp. Calling Card Terms Litigation

Opposition of plaintiff Indi Mohan to transfer of the following action to the United States District Court for the District of New Jersey:

### Southern District of New York

*Indi Mohan v. IDT Corp., et al.*, C.A. No. 1:04-1884


## MDL-1553 — In re Silica Products Liability Litigation

Opposition of plaintiffs Andrew Washington, et al., to transfer of the following action to the United States District Court for the Southern District of Texas:

### Southern District of Mississippi

*Andrew Washington, et al. v. Clark Sand Co., et al.*, C.A. No. 5:04-27


## MDL-1568 — In re Parcel Tanker Shipping Services Antitrust Litigation

Opposition of plaintiff Scott Sutton to transfer of the following action to the United States District Court for the District of Connecticut:

### Eastern District of Tennessee

*Scott Sutton v. Stolt-Nielsen Transportation Group, Ltd., et al.*, C.A. No. 2:04-67

14-Jun-2004 02:24pm   From-McELROY Deutsch Mulvaney, LLP          9734250161          T-235   P.023/035   F-265

Schedule of Matters for Hearing Session, Section B                    p. 18
Seattle, Washington

## MDL-1578 — In re UICI "Association-Group" Insurance Litigation

Opposition of plaintiffs Jesus M. Mendoza, et al., and Esther Valenzuela to transfer of their respective following actions to the United States District Court for the Northern District of Texas:

### Eastern District of California

*Jesus M. Mendoza, et al. v. United Insurance Co. of America, et al.*, C.A. No. 1:04-5470

### Southern District of California

*Esther Valenzuela v. United Insurance Companies, Inc., et al.*, C.A. No. 3:04-632

## MDL-1586 — In re Mutual Funds Investment Litigation

Oppositions of plaintiffs Wayne County Employees' Retirement System and Kaveh S. Shahi, et al., to transfer of their respective following actions to the United States District Court for the District of Maryland:

### District of Colorado

*Wayne County Employees' Retirement System v. Janus Capital Group, Inc., et al.*, C.A. No. 1:04-444

### District of Vermont

*Kaveh S. Shahi, et al. v. Putnam Investments*, C.A. No. 1:04-23

Schedule of Matters for Hearing Session, Section B                           p. 19
Seattle, Washington


## MDL-1598 -- In re Ephedra Products Liability Litigation

Oppositions of plaintiffs Richard James and Wanda Carr and defendants MuscleTech Research & Development, Inc.; Nutramerica Corporation; and Prolab Nutrition, Inc., to transfer of their respective following actions to the United States District Court for the Southern District of New York:

### District of Colorado

*Travis Wingfield v. Muscletech Research & Development, Inc.*, C.A. No. 1:04-366

### Northern District of Illinois

*Donica Aetna Parker v. Muscle Tech., Inc.*, C.A. No. 1:04-1590
*James R. Tiskevich v. Metabolife International, Inc., et al.*, C.A. No. 1:04-1591
*David J. Russell v. Nutramerica Corp.*, C.A. No. 1:04-1594

### Eastern District of Kentucky

*Richard James v. Prolab Nutrition, Inc., et al.*, C.A. No. 5:03-465

### Northern District of Mississippi

*Wanda Carr v. Metabolife International, Inc.*, C.A. No. 2:03-265


## MDL-1600 -- In re General Motors Corp. "Piston Slap" Products Liability Litigation

Opposition of plaintiffs Gannon Shepherd and Lance Levitt to transfer of their respective following actions to the United States District Court for the Western District of Oklahoma:

### Middle District of Florida

*Gannon Shepherd v. General Motors Corp.*, C.A. No. 3:04-156

### Northern District of Georgia

*Lance Levitt v. General Motors Corp.*, C.A. No. 1:03-4018

14-Jun-2004 02:24pm From-McElROY Deutsch Mulvaney, LLP 9734250161 T-235 P.025/035 F-265

## ATTACHMENT A TO THE JULY 22, 2004
## SCHEDULE OF MATTERS FOR HEARING

### MDL-1348 -- In re Rezulin Products Liability Litigation

#### Central District of California

*Moe Mintz, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-8763
*Sally Baldueza v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-8764
*Armando Moreno v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-8766
*Emelia Thomas v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-8767
*Sharon Simmons v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-8768
*Rebecca Velasquez, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-8812
*Albert Mandakunian, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-8813
*Susan Burch, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-8814
*Mihran Karapetian, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-8815
*Michelle Morales, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-8816
*Davit Valian, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-8817
*Christopher Brown, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-8818
*Zepyur Shizmedzhyan, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-8820
*Louis Rico, Jr. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-8821
*Bernard Macko, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-8822
*Elenora Carpenter v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-8823
*Dennis Hagele v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-8824
*Svetlana Verbiyan v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-8825
*Betty Jucevic v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-8826
*Virginia Manoogian v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-8827
*Armenia Manoogian v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-8828
*Lusin Meneshyan v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-8829
*Ozan Merjanian v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-8830
*Susan Miles Kelley, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-9155
*Mary Ann Klemundt v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-9156
*Lesley Nunez, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-9160
*Gail Rudolph, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-9161
*Richard Weber v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-9163
*Ben Smith, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-9315
*Maria Isabel Tellez, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-9586
*Christine McDuffie v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-9588
*Allen Altmark, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-9591
*Madeline Downey v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:03-9592
*Jason Churder, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-71
*Suzanne Hellstrom, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-96
*Robert Rockett v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-97
*Richard Hunt v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-384

- 2 -

**MDL-1348 Attachment A (Continued)**

<u>Central District of California</u> (Continued)

*Loraine Hoyt v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-386
*Daniel Gordon, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-387
*Linda Goode v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-407
*Shirley Kendricks, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-413
*Ronald Decaro v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-414
*Don Church, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-416
*Wendell Walsten v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-417
*Rachel Felix v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-473
*Lynda Daley, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-482
*Yvonne Schwartz v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-488
*Loretta Zourek, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-506
*Robert Smith v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-507
*James J. Willette, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-508
*Florene Wimbush, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-509
*Daniel Gormley, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-512
*Charles Sutter, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-543
*Hope Romero, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-544
*Brent Van Dyke, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-584
*Richard Glomb, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-585
*Gene Manor v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-587
*Angelo Terrameo v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-616
*Virginia Martinez, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-617
*Ellen Huddleston v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-627
*George Mills v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-629
*Nellie Gonzales, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-631
*Betty Cochran v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-632
*Irvin Campbell v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-633
*Marilyn May, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-639
*Virginia Kirby v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-641
*Anna Roughton v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-708
*Hattie Jackson, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-710
*Eva Yslas v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-711
*Sharon Renee Eason v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-713
*Jerry L. Wilke, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-714
*Anne Petersen v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-715
*Aurora Rubio, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-717
*Rebecca Martinez v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-777
*Samvel Mkhsyan v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-933
*Salvador Ramirez v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-992
*Michael Buscemi v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-1023

- 3 -

**MDL-1348 Attachment A (Continued)**

### Central District of California (Continued)

*Manuel Venegas, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-1024
*Eula Mae Rayfield, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-1025
*Stephen Hernandez v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-1026
*Gilbert Hernandez v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-1027
*Eiji Uyehara, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-1028
*Don Bennett v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-1029
*Martha Martinez v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-1141
*Alfred Dutra v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-1564
*Catherine West , et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-1666
*Rosemary Perez v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-1678
*Cris Leinberger v. Warner-Lambert Co., LLC, et al.*, C.A. No. 2:04-2924
*Donald Boike v. Warner-Lambert Co., LLC, et al.*, C.A. No. 8:04-14

### Eastern District of California

*Richard Castro, Sr. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:03-6926
*Guadalupe Garcia, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:03-6928
*Ziaollah Gholtoghian v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:03-6929
*Valerie Holladay v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:03-6930
*Linda Richardson v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:03-6931
*Martha Amancio, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:03-6932
*Daniel R. Nichols v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:03-6933
*Virginia Trost v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:03-6934
*Betty Tarbell, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:03-6935
*Kathleen Nott, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:03-6952
*Casilda Alvarez v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:03-6953
*Lorena Ziegenmeyer v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:03-6954
*Orastine Shackelford v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:03-6955
*Harold Horton v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:03-6956
*Lewis Gibson, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:03-6957
*Charles Donahue v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:03-6958
*Joseph Brindero v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:03-6959
*John Andrews, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:03-6960
*Paul Johnson, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:03-6961
*Manuel Neves, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:03-6962
*Phillip Dillard, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:03-6963
*Billie L. Driggers v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:03-6964
*Michael Glick, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:03-6965
*Augustine Pacheco, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:03-6966
*Aaron Wayne Hill v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:03-6967

- 4 -

**MDL-1348 Attachment A (Continued)**

### Eastern District of California (Continued)

*Myron Boyd Smith v. Warner-Lambert Co., LLC, et* al., C.A. No. 1:03-6968
*Robert Caluya v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:03-6969
*David Sollberger v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:03-6970
*Charles Johnson v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:03-6971
*Joan Collins, et al. v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:03-6972
*Donna Cunningham v. Warner-Lambert Co., LLC., et al.,* C.A. No. 1:03-6973
*Lavina Penner, et al. v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:03-6974
*Donald Gordon v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:03-6975
*Theodore Hartman v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:03-6976
*Jimmie Lou DeLuca, et al. v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:03-6977
*Charlie Abril, et al. v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:03-6978
*Anthony Battista, et al. v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:03-6979
*Dorothy Waterbury, et al. v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:03-6980
*Ila Coonce v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:03-6981
*Linda Thompson, et al. v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:03-6982
*Helen Swim v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:03-6983
*Bret Dent, et al. v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:03-6984
*Helen Pinkston, et al. v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:03-6985
*Marie Winscott, et al. v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:03-6986
*Opal Richardson v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:03-6987
*Anthony Morin v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:03-6988
*Dorothy Mott v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:03-6989
*Evelyn Darlean Quiggins v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:03-6990
*Jeannine Foraker, et al. v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:04-5029
*Salvador Guerrero v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:04-5030
*Shirley Chittister, etc. v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:04-5031
*David L. Jones, et al. v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:04-5032
*Karl Maas, et al. v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:04-5033
*Donald Louis Stokes v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:04-5034
*Harold Eugene Keisler v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:04-5035
*Jeanette Rudich-Habay, etc. v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:04-5036
*Shelley Hudson, et al. v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:04-5037
*Cecelia Newman v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:04-5038
*Susanna Valenzuela v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:04-5039
*Opal White v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:04-5040
*Isaac L. Bailey v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:04-5041
*Kathleen Hendrix, etc. v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:04-5042
*Connie Rector, etc. v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:04-5043
*Amelia Vargas, et al. v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:04-5044
*Fern Van Bubar, et al. v. Warner-Lambert Co., LLC, et al.,* C.A. No. 1:04-5045

- 5 -

**MDL-1348 Attachment A (Continued)**

### Eastern District of California (Continued)

*Michael Lyons v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5046
*Betty McKay, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5047
*Bill Washburn v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5048
*Susan J. Clark v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5049
*Justus Howard Garber, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5050
*Essie Guice, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5051
*Jessie Dean v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5053
*Betty Young, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5054
*Paul Love, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5055
*Marty Callahan, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5068
*Kelli Ferguson v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5069
*Maria Avila v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5070
*Mary Bleier v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5071
*Philander James Eads v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5072
*Diane Cauthen, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5073
*Sandra Best v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5074
*Mary Jane Gibson, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5081
*Peggy Lagrange, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5082
*Dorothea Kilgore v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5083
*Edward Keeton v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5084
*Carl Hageman, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5085
*Alfredo Gandarilla, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5086
*Pandora Fitch v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5087
*Veronica Savage v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5097
*Sandra Shivar, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5098
*Ernest Sandoval v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5099
*Patricia Pettet, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5100
*Lisa Leard v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5101
*Gregorio Saucedo v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5103
*Robert Soto v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5114
*Roena Winters v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5115
*Richard Timmons v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5116
*Lisa Poarch-Siem, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5117
*Arnold L. Swanson v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5118
*Alpha Tolbert, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5119
*Roberta Vega, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5120
*Mary Velasco, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5121
*Tonya Jackson, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5138
*Tony Gallegos, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5139
*Evelyn Goins, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5140

- 6 -

**MDL-1348 Attachment A (Continued)**

### Eastern District of California (Continued)

*June Chandler v. Warner-Lambert, Co., LLC, et al.*, C.A. No. 1:04-5141
*Rosie Diaz v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5142
*Hideko Eckstein, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5143
*Roberto Hinojosa v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5144
*Gerald R. Martinez v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5189
*Bettie Hottle, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5190
*Alicia Miller v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5191
*Buckner James v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5192
*Carl McMurtrey, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5193
*Raymond Hernandez v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5194
*Claude McCaffrey, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5195
*Robert Hamilton, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5196
*Patricia Hansford, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5197
*Rachel Winchell, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5200
*Ellen Vincent, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5240
*Barbara Emerson v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5242
*Patricia Cady v. Warner-Lambert Co., LLC, et al.*, C.A. No. 1:04-5276

### Northern District of California

*Mary Jackson v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:02-4078
*Daniel Wright v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5522
*Louise Hancock v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5821
*Lou E. Walton v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5823
*Darla Nelson v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5824
*C'Ella Jones v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5826
*Benny Bracero, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5827
*Helen Scheid v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5828
*Gerald Fain v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5832
*Roy D. Fortier v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5833
*Murray Peters v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5877
*Christopher Hoag v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5879
*Piscitelli, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5880
*Stanley Engram, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5881
*Idamaye Altvater, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5882
*Marley Tibbitts, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5883
*Sara Gulizia v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5884
*Maria Teresa Diaz, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5885
*Richard Mengelkoch v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5886
*Sammy White v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5887

- 7 -

**MDL-1348 Attachment A (Continued)**

### Northern District of California (Continued)

*Dorothy Woodward v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5888
*Edward Wyman v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5889
*Lowella M. Rhyne, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5890
*Harry Chaney, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5891
*Heman Randhawa, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5892
*Candy Peralta, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5893
*Wayne Brasher, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5894
*Douglas Dickson v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5896
*John Kwashima v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5897
*Gerald Connor v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5898
*Robert Cota, Sr. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-5899
*Tammy Miller v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-56
*Martha Dowd v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-58
*Ellen Waller, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-59
*Robert Marymee, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-60
*Joann Kozinchik v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-61
*Anna Fierimonte v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-62
*Anna Ferulli v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-66
*Polly Peru v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-67
*Joann Van Camp, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-68
*Adeline De Vincente v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-80
*Dorothy Cooper v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-206
*Geraldine S. Wood v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-207
*Robert Croteau v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-208
*Ernest Foster, Jr., et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-209
*Levi Byrd v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-210
*Eva Lamaster v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-211
*Luis Bonilla v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-215
*Angelina Francisco v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-217
*Martha Stevenson etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-218
*Jeanette Ann Brown v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-219
*Ira Dickerson, etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-220
*Robert Horan, Jr., etc. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-292
*Willard W. Barksdale v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-293
*Jacquelin Moore, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-384
*Juliene Mason v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-772
*Debra Prater v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-968
*Sharon Jackson v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-969

- 8 -

**MDL-1348 Attachment A (Continued)**

### Southern District of California

*Rita Thompson v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-2605
*Yolanda Garza v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-2606
*Marvin Moore v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:03-2607
*Andres Duran v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-48
*Jeanette Beaver, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-105
*Billie Sauderberg v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-106
*Jonny Baron v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-140
*Eddy Arredondo, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-180
*Dorothy Ann Loo, et al. v. Warner-Lambert Co., LLC, et al.*, C.A. No. 3:04-493

## RULE 16.1:    HEARING SESSIONS AND ORAL ARGUMENT

(a)    Hearing sessions of the Panel for the presentation of oral argument and consideration of matters taken under submission without oral argument shall be held as ordered by the Panel. The Panel shall convene whenever and wherever desirable or necessary in the judgment of the Chairman. The Chairman shall determine which matters shall be considered at each hearing session and the Clerk of the Panel shall give notice to counsel for all parties involved in the litigation to be so considered of the time, place and subject matter of such hearing session.

(b)    Each party filing a motion or a response to a motion or order of the Panel under Rules 7.2, 7.3, 7.4 or 7.6 of these Rules may file simultaneously therewith a separate statement limited to one page setting forth reasons why oral argument should, or need not, be heard. Such statements shall be captioned "Reasons Why Oral Argument Should [Need Not] Be Heard," and shall be filed and served in conformity with Rules 5.12 and 5.2 of these Rules.

(c)    No transfer or remand determination regarding any action pending in the district court shall be made by the Panel when any party timely opposes such transfer or remand unless a hearing session has been held for the presentation of oral argument except that the Panel may dispense with oral argument if it determines that:
    (i)    the dispositive issue(s) have been authoritatively decided; or
    (ii)   the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.
Unless otherwise ordered by the Panel, all other matters before the Panel, such as a motion for reconsideration, shall be considered and determined upon the basis of the papers filed.

(d)    In those matters in which oral argument is not scheduled by the Panel, counsel shall be promptly advised. If oral argument is scheduled in a matter the Clerk of the Panel may require counsel for all parties who wish to make or to waive oral argument to file and serve notice to that effect within a stated time in conformity with Rules 5.12 and 5.2 of these Rules. Failure to do so shall be deemed a waiver of oral argument by that party. If oral argument is scheduled but not attended by a party, the matter shall not be rescheduled and that party's position shall be treated as submitted for decision by the Panel on the basis of the papers filed.

(e)    Except for leave of the Panel on a showing of good cause, only those parties to actions scheduled for oral argument who have filed a motion or written response to a motion or order shall be permitted to appear before the Panel and present oral argument.

(f)    Counsel for those supporting transfer or remand under Section 1407 and counsel for those opposing such transfer or remand are to confer separately prior to the oral argument for the purpose of organizing their arguments and selecting representatives to present all views without duplication.

(g)    Unless otherwise ordered by the Panel, a maximum of twenty minutes shall be allotted for oral argument in each matter. The time shall be divided equally among those with varying viewpoints. Counsel for the moving party or parties shall generally be heard first.

- 2 -

      (h)     So far as practicable and consistent with the purposes of Section 1407, the offering of oral testimony before the Panel shall be avoided.  Accordingly, oral testimony shall not be received except upon notice, motion and order of the Panel expressly providing for it.

      (i)     After an action or group of actions has been set for a hearing session, consideration of such action(s) may be continued only by order of the Panel on good cause shown.

**EXHIBIT 2**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RECEIVED-CLERK
U.S. DISTRICT COURT

2004 FEB 13  P 4: 03

**Joseph D. Rasnek (JDR-4228)**
**Carpenter, Bennett & Morrissey**
**Three Gateway Center**
**100 Mulberry Street**
**Newark, NJ  07102-4079**
**(973) 622-7711**
**Attorneys for Defendant Stepan Company**

| | | |
|---|---|---|
| LOUIS BARLETTA and and MARY JANE BARLETTA, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 04-647 (WGB) |
| vs. | ) ) | |
| THE CONGOLEUM CORPORATION STEPAN COMPANY, et al., | ) ) ) | **NOTICE OF REMOVAL** |
| Defendants. | ) ) | |

**TO THE CHIEF JUDGE AND JUDGES OF THE**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

PLEASE TAKE NOTICE that Stepan Company ("Stepan") petitions for removal of the instant state court civil action pursuant to 28 U.S.C. § 1332, 1441 and 1446. Stepan's citizenship is diverse from that of Plaintiffs and the only Co-Defendant, the Congoleum Corporation ("Congoleum"), has been fraudulently joined to the state court lawsuit without a good faith intent by plaintiffs to pursue their claims, such that its citizenship cannot destroy the complete diversity necessary to establish original jurisdiction in this Court. Stepan is incorporated in the State of Delaware and with its principal place of business located in Northfield, Illinois, by and

through its attorneys, on this date has filed this Notice of Removal of this civil action from the Superior Court of New Jersey, Law Division, Middlesex County to the United States District Court for the District of New Jersey, together with all process, pleadings and orders, as required by 28 U.S.C. § 1446 (d), copies of which are annexed hereto and made a part hereof,

This Notice of Removal Respectfully shows:

## I. THE NEW JERSEY STATE COURT LAWSUIT

1.      Stepan is a defendant in a civil action now pending in the Superior Court of New Jersey, Law Division, Middlesex County as Docket No. L-1540-03 with the title *Louis Barletta and Mary Jane Barletta v. The Congoleum Corporation, Stepan Company, and John Doe 1 through John Doe 75.* (Complaint, attached as Ex. A.)

2.      Plaintiffs' underlying state court action seeks personal injury damages for Mr. Barletta's alleged workplace exposure to asbestos while employed at Defendants' respective worksites. (Ex. A at ¶ 1 of p. 1.)

3.      Plaintiffs were and are citizens and residents of the State of New Jersey. (*See Id.*)

4.      Stepan is a Delaware corporation with its principal place of business in Northfield, Illinois. It is, therefore, a citizen and a resident of Delaware and Illinois.

5.      Upon information and belief, Congoleum is a business organized under the laws of Delaware, with its principal place of business in New Jersey. (*See* Ex. A at ¶ 1 of p. 2.) It is, therefore, a citizen and resident of Delaware and New Jersey.

6.      Plaintiffs filed the Complaint on March 6, 2003 but did not serve Stepan until August 15, 2003. (*See* Ex. A.) Stepan obtained from Plaintiffs several extensions of time to

2

answer or otherwise plead in response to the Complaint, the most recent extending the deadline until February 13, 2004.

## II. PLAINTIFFS NAMED CONGOLEUM IN NEW JERSEY SOLELY TO PREVENT REMOVAL

7.     Although Plaintiffs and Congoleum are both citizens of New Jersey and Congoleum has not consented to removal, this case is nonetheless removable because Congoleum has been fraudulently joined solely to defeat complete diversity and frustrate removal. *See, e.g., Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied*, 498 U.S. 1085 (1991) (joinder fraudulent when plaintiff has *no good faith intention* to prosecute claims or to seek judgment against a defendant).

8.     From July 19, 2001 until early 2003, Plaintiffs vigorously pursued identical claims against Congoleum in a lawsuit filed in Texas state court. Trial in that matter was twice continued, the last time at Congoleum's request and over Plaintiffs' objection. Only when they learned of Congoleum's impending, prepackaged Chapter 11 bankruptcy did Plaintiffs drop Congoleum from the Texas lawsuit while at the same time adding them as a defendant in the New Jersey lawsuit *with no intention of actually pursuing their claims against Congoleum.* In this way, Plaintiffs sued Stepan only when they thought they could prevent removal of the lawsuit to this Court due to Congoleum's presence as a sham defendant.

A.     **Plaintiffs'** ***Prior*** **Litigation History Against Congoleum Establishes Absence of a Good Faith Intent to Pursue Its New Jersey Claims.**

9.     On March 22, 2001, Plaintiffs filed a verified complaint in the *In re New York City Asbestos Litigation* matter. (Verified New York Complaint, attached as Ex. B.) The verified complaint named 30 defendants, including Congoleum. (*Id.*)

3

10.     On November 1, 2001, New York Judge Helen Freedman ordered Plaintiffs' lawsuit transferred to the District Court of Kleberg County, Texas, 105th Judicial District, for trial. (11/1/2001 Freedman Order, attached as Ex. C.) Judge Freedman based this decision on the limited New York asbestos exposure alleged by Plaintiffs. (*Id.* at attached hearing transcript, pp. 20-21.) At the time, the parties discussed transfer to or refiling in New Jersey. (*Id.*) This never occurred.

11.     The Texas transfer was required because Plaintiffs filed a second mesothelioma lawsuit in Kleberg County, Texas, on July 18, 2001. (Ex. C; Certified Civil Docket for *Barletta v. American Cyanmid*, et al., attached as Ex. D; Original and First through Seventh Amended Texas Petitions and Jury Demands, attached as Group Ex. E.) Plaintiffs' counsel in the Texas lawsuit, Scott Hendler, is the same attorney acting as lead plaintiffs' counsel in this case. (*Compare* Ex. A *with* Ex. D.) Like the instant lawsuit and New York lawsuit, the Texas case names Congoleum as a defendant. (Ex. D.) Like the instant lawsuit, the Texas case asserts premises liability claims against Congoleum. (*Compare* Ex. A *with* Ex. D.)

12.     Following the transfer, *all* of Plaintiffs' asbestos claims against Congoleum were pending in the same Texas forum. (*See* Exs. B, C and D.)

**B.      Plaintiffs Pursued Congoleum in Texas until They were Certain of Its Bankruptcy. Only Then Did They Name It a New Jersey Defendant.  Congoleum's Participation in New Jersey is a Sham.**

13.     Congoleum appeared in the Texas lawsuit.

14.     Stepan's removal petition is filed within 30 days from its discovery of the facts relating to Congoleum's fraudulent joinder.

4

15.     For more than one and one-half years, Congoleum vigorously defended the Texas lawsuit. (*See, e.g.,* Ex. D and Group Ex. E.)  Plaintiffs similarly pursued their consolidated Texas and New Jersey claims against Congoleum. (*Id.*)

16.     While numerous other Texas defendants settled, Congoleum refused Plaintiffs' demands. (*Id.*) These demands consistently exceeded 1 million dollars.

17.     Mr. Barletta gave three days of deposition testimony in the Texas lawsuit.  On each occasion he was represented by his current counsel.  Each time Congoleum attended and participated in the deposition.

18.     On the first two occasions, Mr. Barletta alleged exposure to asbestos while employed at Stepan.  (10/3/2001 Barletta Deposition, pp. 43-66, attached as Ex. F; 10/4/2001 Barletta Deposition, pp. 303-15, attached as Ex. G.)  Following the New York lawsuit's transfer to Texas, Mr. Barletta gave a videotape deposition in the Texas litigation, on October 7, 2002.  Again, he discussed his employment at Stepan and alleged asbestos exposure in response to questions by Mr. Hendler. (10/7/2002 Barletta Deposition, pp. 12-24, 59-84, 86-88, attached as Ex. H.)

19.     Despite this testimony, Plaintiffs took no action to sue Stepan while they were actively pursuing Congoleum in the Texas litigation. (Exs. D and E.)

20.     Congoleum presented its corporate representative for deposition, engaged in necessary discovery and fully prepared the case for trial.

21.     The Texas lawsuit was twice scheduled for trial, but in each instance the trial was continued. (Ex. D.)  On November 7, 2002, the Texas court set the case for an April 7, 2003 jury trial with a pre-trial conference on March 21, 2003. (*Id.*)

22.     At least as early as January 2003, counsel for Congoleum advised Plaintiffs' counsel that Congoleum planned to seek bankruptcy protection to manage its growing asbestos liability.  On January 13, 2003, Congoleum announced plans to enter a prepackaged Chapter 11 bankruptcy.  This information was widely disseminated in the press, including asbestos-specific legal publications.  (*See, e.g.*, 17-24 Mealey's Litig. Rep. Asb. 3 (2003), attached as Ex. I.)

23.     While Plaintiffs' Texas lawsuit was still pending against Congoleum, and despite the more than 1.5 years of litigation history and an April 7, 2003 trial setting, Plaintiffs' Texas counsel filed the instant New Jersey lawsuit against Stepan.  (*Compare* Ex. A *with* Exs. D and E.)  That lawsuit alleged claims against Congoleum *identical* to those set forth in Plaintiffs' Texas lawsuit.  (*Compare* Ex. A *with* Ex. E.)

24.     On March 21, 2003, Congoleum announced it was seeking bondholder's approval of amendments to the indenture governing its financing as party of its continued strategy to broker a global settlement with the number of asbestos plaintiffs necessary to file its intended, prepackaged Chapter 11 bankruptcy.  (*See, e.g.*, 18-4 Mealey's Lit. Rep. Asb. 7 (2003), attached as Ex. J.)  Respecting its discussions with the plaintiffs' asbestos bar, Congoleum stated "[o]ur negotiations with claimants' counsel have progressed to the point where we believe we should be able to reach agreement." (*Id.*)

25.     On March 31, 2003, Congoleum announced it reached an agreement in principle with the more than 75% of the asbestos creditors necessary to file a prepackaged plan of reorganization in bankruptcy court.  (*E.g.*, 2-9 Mealey's Asb. Bank. Rep. 3 (2003), attached as Ex. K.)

26.     That same day, at a March 31, 2003 pre-trial conference just days before the April 7, 2003 trial, the Texas court heard a contested motion by Congoleum to continue the trial. (Ex. D.)  Congoleum sought the continuance on grounds it had hired a Texas legislator as co-trial counsel; the legislature was in session; and, co-counsel could not participate at trial until the legislature concluded its current term.

27.     Despite the presence of the New Jersey lawsuit and its inclusion of Congoleum as a defendant, Plaintiffs vigorously opposed the motion.  Plaintiffs argued that they were fully prepared for trial and Congoleum sought the delay solely to stall the litigation for a period sufficient to allow its planned bankruptcy to be filed.  In support of Plaintiffs' position, the Texas judge was presented with several news clippings addressing Congoleum's announced bankruptcy plans (Stepan has ordered a copy of the official transcript for that hearing) – Plaintiffs' counsel were keenly aware of Congoleum's bankruptcy plans.

28.     The Texas judge granted Congoleum's motion for a legislative continuance over Plaintiffs' objection.

29.     On April 10, 2003, Congoleum executed a settlement agreement with asbestos creditors representing more than 75% of current asbestos personal injury claimants.  (2-11 Mealey's Asb. Bankr. Rep. 5 (2003), attached as Ex. L.)

30.     In its April 15, 2003 SEC filing, Congoleum reported that the cost of completing its prepackaged Chapter 11 bankruptcy deal was "substantially in excess" of the company's total assets and beyond its previous estimates.  (18-8 Mealey's Litig. Rep. Asb. 12 (2003), attached as Ex. M.)

31.     Nonetheless, Plaintiffs continued to pursue their litigation against Congoleum *solely* in Texas.  Plaintiffs did not serve Congoleum with the New Jersey lawsuit, but did obtain two separate orders against Congoleum, from the Texas court, on May 12, 2003: (1) an order charging it with Plaintiffs' expert costs and (2) an order on Plaintiffs' motion to exclude certain Congoleum witnesses.  (*See* Ex. C and New Jersey Docket, attached as Ex. N.)

32.     During this same time period, Congoleum continued to make clear the inevitable nature of its bankruptcy.

33.     On May 27, 2003, Plaintiffs amended their Texas lawsuit for the seventh time. (Seventh Amended Texas Petition and Jury Demand, attached as Ex. E.)  Plaintiffs dropped Congoleum as a named defendant.  (*Id.*)  Unlike the numerous other instances in which Texas defendants were dropped from the lawsuit, *no* dismissal or non-suit order was filed.  (Ex. D.)

34.     Congoleum's Texas counsel remained unaware of the New Jersey lawsuit.  He confirmed the non-existence of cross-claims against Congoleum, however, and ceased participation in the Texas litigation.

35.     The Texas litigation remains pending today.  Upon information and belief, Plaintiffs have obtained settlements totaling several million dollars  from the Texas defendants.

**C.    Plaintiffs Have Made No Good Faith Attempts to Pursue Congoleum in the New Jersey Lawsuit.**

36.     Despite the active litigation with Congoleum in Texas and the concurrently pending New Jersey lawsuit, Plaintiffs did not serve Congoleum with the New Jersey lawsuit until August 8, 2003.  (Ex. N.)

37.     Throughout this period, Congoleum reported continued steps to finalize its prepackaged bankruptcy filing (*See, e.g.,* Mealey's Asbestos Publication, attached as Group Ex. O.

38.     Despite these repeated announcements, the absence of Congoleum from the Texas litigation, and its failure to appear in or answer the New Jersey lawsuit, Plaintiffs made no attempts to default Congoleum until December 8, 2003. (Ex. N.)

39.     On December 31, 2003 Congoleum filed for bankruptcy. (Congoleum Bankruptcy Docket, attached as Ex. P.)

### III. DISREGARDING CONGOLEUM, THIS COURT HAS ORIGINAL JURISDICTION OVER THE PARTIES' NEW JERSEY LAWSUIT

40.     Because Plaintiffs have no good faith intention of pursuing their claims against Congoleum, Congoleum has been fraudulently joined and its citizenship should be disregarded for diversity purposes. *See, e.g., Boyer v. Snap-On Tools Corp.,* 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied,* 498 U.S. 1085 (1991).  Excluding Congoleum, there is complete diversity between the Plaintiffs and Stepan Company.  The citizenship of doe defendants is disregarded for purposes of removal.  28 U.S.C. § 1441(a).

41.     Additionally, because of its fraudulent joinder, Congoleum's consent to this removal is not required. *Boyer,* 913 F.2d at 111.

42.     The underlying state court action is one in which this Court has original jurisdiction under the provisions of 28 U.S.C. §1332, and is one which may be removed to this Court by the petitioner pursuant to the provisions of 28 U.S.C. §§1441 and 1446 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs,

9

and is between citizens of different states.  This petition is being filed from thirty (30) days of Stepan Company receiving information establishing Congoleum's fraudulent joinder as a defendant.

43.   **Stepan Company demands trial by jury**.

WHEREFORE, Stepan Company prays that the above action now pending in the Superior Court of New Jersey, Law Division, Middlesex County as Docket No. L-1540-03 with the title *Louis Barletta and Mary Jane Barletta v. The Congoleum Corporation, Stepan Company, and John Doe 1 through John Doe 75* proceed in its entirety in this Court as an action properly removed thereto.

Respectfully submitted,

CARPENTER BENNETT & MORRISSEY

By: _Joseph D. Rasnek_
     Joseph D. Rasnek
     A Member of the Firm

Dated:  February 13, 2004

Of Counsel:

Brian W. Lewis
Michael A. Kaeding
Wildman, Harrold, Allen & Dixon
225 West Wacker Drive
Chicago, IL  60606-1229
(312) 201-2000

*Pro Hac Vice* Admission Pending

**EXHIBIT 3**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**Joseph D. Rasnek (JDR-4228)**
**Carpenter, Bennett & Morrissey**
**Three Gateway Center**
**100 Mulberry Street**
**Newark, NJ  07102-4079**
**(973) 622-7711**
**Attorneys for Defendant Stepan Company**

| | | |
|---|---|---|
| LOUIS BARLETTA and and MARY JANE BARLETTA, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. |
| THE CONGOLEUM CORPORATION STEPAN COMPANY, et al., | ) ) ) | |
| Defendants. | ) ) | |

### <u>EXHIBITS TO STEPAN COMPANY'S NOTICE OF REMOVAL</u>

Joseph D. Rasnek (JDR-4228)
Carpenter, Bennett & Morrissey
Three Gateway Center
100 Mulberry Street
Newark, NJ  07102-4079
(973) 622-7711
Attorneys for Defendant Stepan Company

EXHIBIT A

*Attorney(s):*         WILENTZ, GOLDMAN & SPITZER
*Office Address & Tel. No.:*   90 Woodbridge Center Drive, P.O. Box 10, Woodbridge, New Jersey 07095-0958
                      732-636-8000
*Attorney(s) for:*      Plaintiff(s)

---

**Louis Barletta** and
   **Mary Jane Barletta**, his wife;

                      Plaintiffs,

vs.

**American Standard Inc.**, et al.;

                      Defendants.

SUPERIOR COURT OF NEW JERSEY

MIDDLESEX                    *COUNTY*

LAW                          *DIVISION*

Docket No.:                  L-1540-03

*CIVIL ACTION*
**SUMMONS**

**The State of New Jersey, to the Above Named Defendant(s):**    STEPAN COMPANY

   *YOU ARE HEREBY SUMMONED in a Civil Action in the Superior Court of New Jersey, instituted by the above named plaintiff(s), and required to serve upon the attorney(s) for the plaintiff(s), whose name and office address appears above, an answer to the annexed complaint within 35 days after the service of the summons and complaint upon you, exclusive of the day of service. If you fail to answer, judgment by default may be rendered against you for the relief demanded in the complaint. You shall promptly file your answer and proof of service thereof in duplicate\* with the Clerk of the Superior Court, at\* Court House-Law Division, P.O. Box 2633, New Brunswick, New Jersey, 08903-2633, in accordance with the rules of civil practice and procedure. The fee for filing of said answer is $135.00 for the Chancery Division and $135.00 for the Law Division.*

   *If you cannot afford to pay an attorney, call a Legal Services Office. An individual not eligible for free numbers may be listed in the yellow pages of your phone book. The phone numbers for the county in which this action is pending are: Lawyer Referral Service, **732-828-0053**, Legal Services Office **908-249-7600**.*

*Dated:*  August 11, 2003

*Donald F. Phelan*
DONALD F. PHELAN
*Clerk of the Superior Court*

*Name/Address of defendant to be served:*    STEPAN COMPANY
                                          The Corporation Trust Company
                                          820 Bear Tavern Road
                                          West Trenton, New Jersey  08628

\* *For direct filing, add address for County Clerk and strike "in duplicate."*
  *For Trenton filing add CN-971, Trenton, N.J. 08625.*

#3680116 (136264.002)

CT System

**Service of Process Transmittal Form**

**West Trenton, New Jersey**

**08/25/2003**

**Via Federal Express (Overnight)**

TO: S. Samuel Eberts III
Stepan Company
22 West Frontage Road
Northfield, IL 60093

RE: **PROCESS SERVED IN NEW JERSEY**

FOR Stepan Company Domestic State: De

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

| | |
|---|---|
| 1. TITLE OF ACTION: | LOUIS BARLETTA, et ux vs AMERICAN STANDARD INC., et al including STEPAN COMPANY |
| 2. DOCUMENT(S) SERVED: | Summons, Complaint w/Demand for Jury & Interrogatories |
| 3. COURT: | Superior Court of New Jersey, Law Division, Middlesex County Case Number L-1540-03 |
| 4. NATURE OF ACTION: | Asbestos Litigation |
| 5. ON WHOM PROCESS WAS SERVED: | The Corporation Trust Company, West Trenton, New Jersey |
| 6. DATE AND HOUR OF SERVICE: | By Certified mail on 08/25/2003 with Postmarked Date 08/12/2003 |
| 7. APPEARANCE OR ANSWER DUE: | 35 days |
| 8. ATTORNEY(S): | Lynne M. Kizis, Esq Wilentz Goldman & Spitzer PA 90 Woodbridge Center Drive Suite 900 Woodbridge, NJ 07095 |
| 9. REMARKS: | According to the records of our office our services have been discontinued in this state. Still active |

SIGNED CT Corporation System

PER Leslie Lofton
ADDRESS 820 Bear Tavern Road
3rd Floor
West Trenton, NJ 08628
SOP WS 0005643426

Information contained on this transmittal form is recorded for C T Corporation System's record keeping purposes only and to permit quick reference for the recipient. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information that can be obtained from the documents themselves. The recipient is responsible for interpreting the documents and for taking the appropriate action.

WILENTZ,   ̀   ̀DM    SPITZER
A Professional Corporation
90 Woodbridge Center Drive
P.O. Box 10
Woodbridge, New Jersey 07095
(732) 636-8000
Attorneys for Plaintiffs

RECEIVED & FILED
2003 MAR -6 PM 1:30
MASS TORT CIVIL DIV.
MIDDLESEX VICINAGE

**SUPERIOR COURT OF NEW JERSEY**
**LAW DIVISION-MIDDLESEX COUNTY**
Docket No.: L-1540-03

-----------------------------------------X

Louis Barletta and
  Mary Jane Barletta, his wife;

          Plaintiff,

vs.

THE CONGOLEUM CORPORATION;
STEPAN COMPANY;
JOHN DOE 1 through
    JOHN DOE 75 (fictitious);

          Defendants.

-----------------------------------------X

**ASBESTOS LITIGATION**

**Civil Action**

**COMPLAINT,**
**DEMAND FOR TRIAL BY JURY**
**AND DEMAND FOR ANSWERS TO**
**INTERROGATORIES**

          Plaintiffs, by way of Complaint against defendants, upon

information and belief allege as follows:

                    **PARTIES - PLAINTIFFS**

          1.   Plaintiffs, Louis Barletta and Mary Jane Barletta reside

at 17 Ashwood Road, Hamilton, New Jersey 08610.  Plaintiff worked as

an industrial laborer at Stepan Company facility in Maywood, New

Jersey for approximately a year during 1966 and at Congoleum

Corporation's facility in Trenton for approximately a year from 1971

to 1972.  While employed in those positions and at other times and

places, Louis Barletta was exposed to dust from asbestos and asbestos

containing products and he contracted mesothelioma.  Mary Jane

Barletta is the wife of Louis Barletta.

          2.   Reference herein to "plaintiff(s)" is reference to all

the persons set forth above as is syntactically and contextually

correct.

#3659854 (136264.002)

## PARTIES - DEFENDANTS

1.   Defendant, **THE CONGOLEUM CORPORATION**, maintained its principal place of business in New Jersey.

2.   Defendant, **STEPAN COMPANY**, is a corporation and was doing business in the State of New Jersey.

3.   Defendants John Doe 1 through John Doe 30 are the fictitious names of persons, corporations, partnerships, or other business entities or organizations, whose identities are not presently known, but who are believed to be in possession of assets of the Congoleum Corporation which injured the plaintiffs and which was subsequently diluted, dissolved, or otherwise devalued to avoid liability for tort claims.  John Does 1 through 30 are the recipients, through fraudulent transfer or otherwise, of the majority of the value of the Congoleum Corporation which injured plaintiffs. John Does 31 through 50 are the fictitious names of corporations, partnerships, or other business entities or organizations, whose identities are not presently known but who are believed to be in possession of assets of the Stepan Company which injured the plaintiffs and which was subsequently diluted, dissolved, or otherwise devalued to avoid liability for tort claims.  John Does 31 through 50 are the recipients, through fraudulent transfer or otherwise, of the majority of the value of the Stepan Company which injured plaintiffs.

4.   John Doe 51 through John Doe 100 are the fictitious names of persons, corporations, partnerships, or other business entities or organizations whose identities are not presently known, and who mined, manufactured, sold, marketed, installed or removed, asbestos or asbestos-containing products which plaintiff used or to which plaintiff was exposed.

5. John Doe 101 through John Doe 150 are the fictitious names of corporations, partnerships, or other business entities or organizations whose identities are not presently known, and who are the alter egos of or are otherwise responsible for the conduct or liability of those who mined, milled, manufactured, sold, marketed, installed or removed asbestos or asbestos-containing products which plaintiff used or to which plaintiff was exposed.

6. The term "defendants" is used hereafter to refer to all of the entities named above.

7. Defendants do business in Middlesex County, New Jersey.

### FIRST COUNT

1. Plaintiffs repeat the prior allegations of this Complaint.

2. Defendants, at all times material hereto, acted through their respective officers, employees and agents, who in turn were acting within the scope of their authority and employment in furtherance of the business of defendants.

3. Defendants were engaged, directly or indirectly, in the mining, milling, producing, processing, compounding, converting, selling, merchandising, supplying, distributing or installing of asbestos-containing products and raw asbestos fiber of various kinds and grades, or of products, including equipment, which defendants knew or should have foreseen contained asbestos and/or would be used with asbestos-containing products and/or raw asbestos fiber (hereinafter collectively referred to as "asbestos products").

4. Defendants, directly or indirectly, caused their asbestos products to be sold to or used at plaintiffs' place of employment.

5. Plaintiff Louis Barletta, during his employment, was exposed to and came in contact with defendants' asbestos products and inhaled or ingested the asbestos dust and fibers emanating from defendants' asbestos products.

#3659854 (136264.002)

6.   As a direct and proximate result of plaintiff's inhalation and ingestion of dust particles and fibers from defendants' asbestos products, plaintiff developed permanent and disabling personal injuries.

7.   During the time that defendants mined, milled, produced, processed, compounded, converted, sold, merchandised, distributed, supplied and installed their asbestos products, defendants knew, or in the exercise of reasonable care should have known, that their asbestos products were defective, ultra-hazardous, dangerous and otherwise highly harmful to plaintiff.

8.   Defendants knew, or in the exercise of reasonable care should have known, that the use of their asbestos products would cause asbestos dust and fibers to be released into the air and would create dangerous and unreasonable risk of injury to the lungs, respiratory systems, larynx, stomach and other bodily organs of users of their products and to others breathing that air and coming into contact with that dust.

9.   Plaintiff did not know the nature and extent of the injury that would result from contact with and exposure to defendants' asbestos products or from the inhalation or ingestion of the asbestos dust and fibers.

10.   Defendants knew, or in the exercise of reasonable care should have known, that plaintiff would come into contact with and be exposed to their asbestos products and would inhale or ingest asbestos dust and fibers as a result of the ordinary and foreseeable use of defendants' asbestos products.

11.   Despite the facts as set forth above, defendants negligently, recklessly and intentionally:

a.   mined, milled, produced, processed, compounded, converted, sold, supplied, merchandised, distributed, installed or otherwise placed in the stream of commerce asbestos products which defendants knew, or in the exercise of reasonable care should have known, were defective, dangerous, ultra-hazardous and otherwise unreasonably harmful to plaintiff;

b.   failed to take reasonable precautions or exercise reasonable care to warn plaintiff adequately of the risks, dangers and harm to which plaintiff would be exposed by exposure to, contact with, use and handling of defendants' asbestos products, or by inhalation or ingestion of the asbestos dust and fibers resulting from the ordinary and foreseeable use of defendants' asbestos products;

c.   failed to provide information or reasonably safe and sufficient safeguards, wearing apparel, proper equipment and appliances necessary to protect plaintiff from being injured, poisoned, disabled, killed, or otherwise harmed by working with, using, handling, coming into contact with, and being exposed to defendants' asbestos products, or by inhalation or ingestion of the asbestos dust and fibers resulting from the ordinary and foreseeable use of defendants' asbestos products;

d.   failed to package their asbestos products in a manner that would assure that plaintiff would not come into contact with or be exposed to the asbestos dust and fibers resulting from the ordinary and foreseeable use of defendants' asbestos products;

e.   failed to advise plaintiff of the necessity to adopt and enforce a safe, sufficient and proper method and plan of working with, using, handling, coming into contact with and being exposed to defendants' asbestos products so that plaintiff would not inhale or ingest the asbestos dust and fibers resulting from the ordinary and foreseeable use of defendants' asbestos products;

f.   ignored and suppressed medical and scientific information, studies, tests, data and literature which defendants acquired during the course of their normal business activities concerning the risk of asbestosis, scarred lungs, cancer, mesothelioma, respiratory disorders, and other illnesses and diseases to workers such as plaintiff, and other persons similarly situated, who were exposed to defendants' asbestos products;

g.   disregarded medical and scientific information, studies, tests, data and literature concerning the causal relationship between the inhalation or ingestion of asbestos dust and fibers, and such diseases as asbestosis, mesothelioma, scarred lungs, cancer, respiratory disorders and other illnesses and diseases;

h.   exposed and continued to expose plaintiff, and other persons similarly situated, to the risk of developing asbestosis, mesothelioma, scarred lungs, cancer and other illnesses, all of which risks defendants knew, or in the exercise of reasonable care should have known, were consequences of exposure to asbestos dust and fibers;

i.   failed to seek substitute materials in lieu of the use of their asbestos;

j.   failed to advise plaintiff, who defendants knew, or in the exercise of reasonable care should have known, had been exposed to inhalation or ingestion of asbestos dust and fibers resulting from the ordinary and foreseeable use of defendants' asbestos products:  to cease further uncontrolled or unprotected exposure to asbestos products and the inhalation or ingestion of asbestos dust and fibers and all other kinds of smoke, dusts, and fumes; to be examined by competent medical doctors to determine the nature and extent of any and all diseases caused by inhalation or ingestion of asbestos dust and fibers; and to receive medical care and treatment for such diseases; and

k.   defendants otherwise acted negligently, recklessly and with intentional disregard for the welfare of plaintiff in the mining, milling, producing, processing, compounding, converting, selling, merchandising, supplying, distributing, installing, or otherwise placing in the stream of commerce their asbestos products.

12.   As a direct and proximate result of the acts and omissions of defendants, plaintiff was exposed to and came in contact with defendants' asbestos products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products.  Plaintiff was caused to suffer severe, permanent and disabling personal injuries or death and to be placed at increased risk of developing other serious bodily injury, has expended and will be caused to expend sums of money for medical care and treatment related thereto, has been prevented and will be prevented from pursuing his normal activities and employment, has experienced and will continue to experience severe pain and suffering and mental anguish, and has been deprived and will continue to be deprived of his ordinary pursuits and enjoyments of life.

WHEREFORE, plaintiffs demand judgment against defendants jointly, severally, or in the alternative, for compensatory damages, punitive damages and costs of suit as provided by law.

## SECOND COUNT

1.   Plaintiffs repeat the prior allegations of this Complaint.

2.   Defendants expressly or impliedly warranted that their asbestos products, which they mined, milled, produced, compounded, converted, processed, sold, supplied, merchandised, distributed, installed or otherwise placed in the stream of commerce were merchantable, reasonably fit for use, and safe for their intended purposes.

3.   Defendants breached said warranties in that their asbestos products were defective, ultra-hazardous, dangerous, unfit for use, not merchantable, and not safe for their intended, ordinary and foreseeable use and purpose.

4.   As a direct and proximate result of defendants' breach of warranties, plaintiff was exposed to and came in contact with defendants' asbestos products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of defendants' asbestos products.  Plaintiff was caused to suffer the injuries, expenses and losses alleged in prior counts of this Complaint.

WHEREFORE, plaintiffs demand judgment against defendants, jointly, severally, or in the alternative, for compensatory damages, punitive damages and costs of suit as provided by law.

### THIRD COUNT

1.   Plaintiffs repeat the prior allegations of this Complaint.

2.   Defendants failed to disclose and intentionally and negligently misrepresented to plaintiff the health risks created by the ordinary use of defendants' asbestos products.

3.   Plaintiff relied upon said representations.  Plaintiff's reliance was foreseeable to defendants.

4.   As a result of defendants' conduct, plaintiff came in contact with defendants' asbestos products and inhaled or ingested asbestos dust and fibers from these products.  Plaintiff was caused to suffer the injuries, expenses and losses alleged in prior counts of this Complaint.

WHEREFORE, plaintiffs demand judgment against defendants, jointly, severally, or in the alternative, for compensatory damages, punitive damages and costs of suit as provided by law.

### FOURTH COUNT

1.   Plaintiffs repeat the prior allegations of this Complaint.

2.   Defendants are strictly liable to plaintiffs by reason of the following:

a.   defendants were engaged in the business of being miners, millers, producers, processors, sellers, suppliers, installers and distributors of their asbestos products;

b.   defendants knew or had reason to know that plaintiff, plaintiff's employer and other persons similarly situated would be ultimate users or consumers of their asbestos products or would be exposed to their asbestos products;

c.   defendants sold or otherwise placed their asbestos products into the stream of commerce in a defective condition, unreasonably dangerous to plaintiff and other persons similarly situated;

d.   throughout the many years that plaintiff and other similarly situated persons were exposed to and used defendants' asbestos products, said asbestos products reached the users and consumers without substantial change in the condition in which they were sold;

e.   the ordinary and foreseeable use of defendants' asbestos products constituted a dangerous and ultra-hazardous activity and created an unreasonable risk of injury to users and bystanders;

f.   defendants' asbestos products were defective in that they were incapable of being made safe for their ordinary and intended use and purpose, and defendants failed to give any warnings or instructions, or failed to give adequate or sufficient warnings or instructions, about the risks, dangers, and harm associated with the use of their asbestos products.

3.   As a consequence of the defective condition of defendants' asbestos products, plaintiff inhaled or ingested asbestos dust and fibers during ordinary and foreseeable use of those asbestos products.  Plaintiff was caused to suffer the injuries, expenses and losses alleged in prior counts of this Complaint.

WHEREFORE, plaintiffs demand judgment against defendants, jointly, severally or in the alternative, for compensatory damages, punitive damages and costs of suit as provided by law.

### FIFTH COUNT

1.  Plaintiffs repeat the prior allegations of this Complaint.

2.  Defendants mined, milled, produced, processed, compounded, converted, sold, merchandised, supplied, distributed or installed all, or substantially all, of the asbestos products to which plaintiffs were exposed.

3.  Defendants controlled the market, or a substantial portion of the market, from which the asbestos products which caused plaintiff's injuries emanated.

4.  Defendants collectively, through explicit agreement, tacit agreement, and conscious parallel behavior, controlled industry standards regarding the testing, manufacture, sale, distribution and use of asbestos products and controlled the level of knowledge on the part of the public regarding the hazards of exposure to dust and fibers from defendants' asbestos products.

5.  As a direct and proximate consequence of defendants' acts and omissions, plaintiff was exposed to and came in contact with defendants' asbestos products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products.  Plaintiff was caused to suffer the injuries, expenses and losses alleged in prior counts of this Complaint.

WHEREFORE, plaintiffs demand judgment against defendants, jointly, severally, in the alternative, or in proportion to defendants' respective market shares, for compensatory damages, punitive damages and costs of suit.

### SIXTH COUNT

1.  Plaintiffs repeat the prior allegations of this Complaint.

2.   Defendants acted in concert with each other and with other members of the asbestos industry, through express agreement, implicit agreement, imitative behavior and conscious parallel behavior:

(i)   to withhold from users of their products, and from persons who defendants knew or should have known would be exposed to their products, information regarding the health risks of breathing or ingesting asbestos dust and fibers.

(ii)   to eliminate or prevent development of adequate procedures and tests relating to the health hazards of exposure to asbestos fibers and dust.

(iii)   to assure that asbestos products became widely used in industries such as construction, shipbuilding, machine fabrication and similar such industries.

3.   Defendants knew that their activities were violative of common law standards of care and that their withholding of information, failure to develop tests and procedures, and promotion of widespread use of asbestos products would expose persons such as plaintiff to unreasonable risk of bodily injury.

4.   Defendants nevertheless gave substantial assistance and encouragement to each other and to other members of the asbestos industry and assisted each other and other members of the asbestos industry in:  withholding information regarding the dangers of asbestos; failing to develop tests and procedures to assure that users of asbestos would not be subjected to risk of injury; and promoting widespread use of products which defendants knew would expose plaintiff to unreasonable risk of bodily injury.

5.  As a direct and proximate consequence of the concerted actions of defendants and other members of the asbestos industry, plaintiff was exposed to and came in contact with defendants' asbestos products and the asbestos products of others and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products.  Plaintiff was caused to suffer the injuries, expenses and losses alleged in prior counts of this Complaint.

WHEREFORE, plaintiffs demand judgment against defendants, jointly, severally or in the alternative, for compensatory damages, punitive damages and costs of suit as provided by law.

## SEVENTH COUNT

1.  Plaintiffs repeat the prior allegations of this Complaint.

2.  The defendants constitute all known, non-remote producers, manufacturers, suppliers, installers, and distributors of the asbestos products which could have caused plaintiff's injuries.

3.  Each of the defendants, whether acting individually or in concert with others, violated a duty of care owed to plaintiff or otherwise engaged in culpable activity against plaintiff.  The acts and omissions of at least one of the defendants caused plaintiff to sustain the injuries, losses and expenses alleged in prior counts of this Complaint.

4.  Plaintiffs in no respect can be blamed should they be unable to establish which of the asbestos products caused the injuries complained of herein.

5.  The burden of proof in this matter thus should shift to defendants to demonstrate that their respective conduct and their respective products could not have caused plaintiff's injuries, and, failing such proof, defendants should be held jointly, severally or alternatively liable for plaintiff's injuries.

WHEREFORE, plaintiffs demand judgment against defendants, jointly, severally or in the alternative, for compensatory damages, punitive damages and costs of suit as provided by law.

### EIGHTH COUNT

1.  Plaintiffs repeat the prior allegations of this Complaint.

2.  During the course of his working career, plaintiff was required to work with and around asbestos and asbestos-containing insulation products and other products which contained asbestos.  In his work, plaintiff was exposed to asbestos dust and fiber.

3.  The asbestos products plaintiff was exposed to were located on the property owned, operated, controlled and inter alia maintained by the Defendants Congoleum Corporation and Stepan Company.

4.  These properties were owned by the defendants delineated above and were negligently owned, operated, maintained and controlled.

5.  Defendants failed to institute reasonable industrial hygiene procedures on their property and failed to take precautions to protect plaintiff from the hazards of asbestos and failed to warn plaintiff of such hazards.

6.  As a direct and proximate consequence of the concerted actions of defendants and other members of the asbestos industry, plaintiff was exposed to and came in contact with defendants' asbestos products and the asbestos products of others and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products.  Plaintiff was caused to suffer injuries, expenses and losses alleged in prior counts of this Complaint.

WHEREFORE, plaintiffs demand judgment against defendants, jointly, severally or in the alternative, for compensatory damages, punitive damages and costs of suit as provided by law.

### NINTH COUNT

1.  Plaintiff, Mary Jane Barletta, repeats the prior allegations of this Complaint.

2.  As a consequence of the injuries to her spouse, plaintiff has suffered loss of consortium, companionship, services, society and support.

WHEREFORE, plaintiffs demand judgment against defendants, jointly, severally and in the alternative, for compensatory damages, punitive damages and costs of suit.

Scott M. Hendler, Esquire
The Hendler Law Firm
816 Congress Avenue, Suite 1100
Austin, Texas  78701
(512) 473-3672

Christian H. Hartley, Esquire
Richardson, Patrick, Westbrook & Brickman
174 East Bay Street
Charleston, S.C.  29401
(843) 727-6500

Wilentz, Goldman & Spitzer
A Professional Corporation
90 Woodbridge Center Drive
P. O. Box 10
Woodbridge, N.J.  07095
(908) 636-8000

By: _____
        Lynne M. Kizis, Esquire

Dated:  March 6, 2003

### DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury on all issues.

_____
        Lynne M. Kizis, Esquire

DEMAND FOR ANSWERS TO INTERROGATORIES

Plaintiffs demand answers to the Standard Interrogatories pursuant to the Court's General Order which may be provided upon your request.   Said Standard Interrogatory forms may be obtained from the Court upon request.

Lynne M. Kizis, Esquire

<u>CERTIFICATION</u>

The undersigned certifies that to the best of my knowledge this matter is not the subject of any other legal or arbitration proceeding in the Courts of New Jersey other than a workers' compensation matter.  The undersigned further certifies that to my knowledge no other persons should be party to this matter other than those named in this complaint.

Lynne M. Kizis, Esq.

Dated:  March 6, 2003

EXHIBIT B

SUPREME COURT OF THE STATE OF NEW
YORK COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**LOUIS BARLETTA AND MARY JANE
BARLETTA**

     **Plaintiff,**

   -against-

**A.P. GREEN INDUSTRIES, INC. (Individually
  and as Successor to A.P. GREEN
  REFRACTORIES CO.)**

**A.W. CHESTERTON COMPANY;
BABCOCK BORSIG POWER, INC. (Individually
  and as Successor to DB RILEY, INC AND RILEY
  STOKER COMPANY)
BONDEX INTERNATIONAL, INC.;
BURNHAM CORPORATION (Individually
  and as Successor to KEWANEE BOILER)
COMBUSTION ENGINEERING, INC. (Individually
  and as Successor to HEINE BOILER COMPANY)**

**CONGOLEUM CORPORATION;
FOSTER WHEELER CORPORATION;
GASKET HOLDING INC. (Individually
  and as Successor to FLEXITALLIC GASKET
  COMPANY)
GENERAL ELECTRIC COMPANY;
GEORGIA PACIFIC  CORPORATION;
GOODALL RUBBER COMPANY;
GOULDS PUMPS, INCORPORATED;
HALLIBURTON COMPANY (Individually
  and as Successor to Dresser Industries and
  Worthington Corporation)
HOMASOTE COMPANY;
IMO INDUSTRIES, INC.;
ITT INDUSTRIES, INC. (Individually
  and as Successor to ITT FLUID PRODUCTS
  CORP. AND ITT GRINNELL CORP.)
MOYNO, INC.;
NORTH AMERICAN REFRACTORIES
  COMPANY
OWENS-ILLINOIS, INC.;
PECORA CORPORATION;
RAPID-AMERICAN CORPORATION;
STATE INSULATION CORPORATION;**

Index No.

**SUMMONS AND
VERIFIED COMPLAINT**

Plaintiff designates New York **105781**
County as the place of trial

The basis of Venue is
defendant's place of business.

Plaintiff resides at Hamilton,
NJ.

# FILED

**MAR 2 2 2001**

NEW YORK
COUNTY CLERK'S OFFICE

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
EARLY & STRAUSS, L.L.C.
360 LEXINGTON AVENUE • 20th FLOOR
NEW YORK, NEW YORK 10017 • (212) 986-2233

THE FLINTKOTE COMPANY;
THERMWELL PRODUCTS CO., INC.;
UNIROYAL, INC. (Individually and
    as Successor to U.S. RUBBER CO)
UNITED STATES GYPSUM COMPANY;
UNITED STATES PIPE AND FOUNDRY
    COMPANY, INC.
VIACOM, INC. (Individually and
    as Successor to CBS CORPORATION (BY
    MERGER)  F/K/A WESTINGHOUSE ELECTRIC
    CORPORATION)
W. R. GRACE & CO.;
               Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**To the above named Defendants:**

     **YOU ARE HEREBY SUMMONED,** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons to serve a Notice of Appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Date : 3/22/2001

Defendants address:
Floor
See attached rider

Early & Strauss,
Attorneys for Plaintiffs
360 Lexington Avenue, 20th

New York, NY 10017

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
EARLY & STRAUSS, L.L.C.
360 LEXINGTON AVENUE • 20th FLOOR
NEW YORK, NEW YORK 10017 • (212) 986-2233

## SERVICE RIDER FOR LOUIS BARLETTA

**As of 3/22/2001**

**A.P. GREEN INDUSTRIES, INC. (Individually and as Successor to A.P. GREEN REFRACTORIES CO.)**

Connecticut Valley Claims Service Company, Inc.
525 Brook Street
Rocky Hill, CT 06067

**A.W. CHESTERTON COMPANY**
Att. Legal Department
225 Fallon Road
Stoneham, MA 02180-2904

**BABCOCK BORSIG POWER, INC. (Individually and as Successor to DB RILEY, INC AND RILEY STOKER COMPANY)**
CT Corporation System (NY)
111 Eighth Avenue
New York, NY 10011

**BONDEX INTERNATIONAL, INC.**
Bowers Orr & Dougall, L.L.P.
8910 Two Notch Road, Suite 400, P.O. Box 25389
Columbia, SC 29224

**BURNHAM CORPORATION (Individually and as Successor to KEWANEE BOILER)**
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

**COMBUSTION ENGINEERING, INC. (Individually and as Successor to HEINE BOILER COMPANY)**

CT Corporation System (NY)
111 Eighth Avenue
New York, NY 10011

**CONGOLEUM CORPORATION**
United States Corporation
1013 Centre Road
Wilmington, DE 19805

**FOSTER WHEELER CORPORATION**
Jack Deones
Perryville Corporate Park Rt. 78 at Frontage Road
Clinton, NJ 08809

**GASKET HOLDING INC. (Individually and as Successor to FLEXITALLIC GASKET COMPANY)**
Corporation Trust Center

1209 Orange Street
Wilmington, DE 19801

**GENERAL ELECTRIC COMPANY**
Att. Legal Department
3135 Easton Turnpike
Fairfield, CT 06432

**GEORGIA PACIFIC CORPORATION**
CT Corporation Systems (Phil.)
1635 Market Street, #1120
Philadelphia, PA 19109

**GOODALL RUBBER COMPANY**
CT Corporation System (NY)
111 Eighth Avenue
New York, NY 10011

**GOULDS PUMPS, INCORPORATED**
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

**HALLIBURTON COMPANY (Individually and as
Successor to Dresser Industries and Worthington
Corporation)**
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

**HOMASOTE COMPANY**
Legal Department
Lower Ferry Road, Box 7240
West Trenton, NJ 08628-0420

**IMO INDUSTRIES, INC.**
Corporation Service Co. (NY)
80 State Street, 6th Floor
Albany, NY 12207

**ITT INDUSTRIES, INC. (Individually and as Successor
to ITT FLUID PRODUCTS CORP. AND ITT
GRINNELL CORP.)**
c/o General Counsel
One N. Capitol Avenue
Indianapolis, IN 46204

**MOYNO, INC.**
c/o Randy Sturtz
1895 W. Jefferson Street
Springfield, OH 45506

**NORTH AMERICAN REFRACTORIES COMPANY**

M. Heintzman, Esq., Heintzman, Warren, Wise et al
EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
**EARLY & STRAUSS, L.L.C.**
360 LEXINGTON AVENUE • 20th FLOOR
NEW YORK, NEW YORK 10017 • (212) 986-2233

707 Grant Street, 35th Floor
Pittsburgh, PA 15219-1913

**OWENS-ILLINOIS, INC.**
CT Corporation System (NY)
111 Eighth Avenue
New York, NY 10011

**PECORA CORPORATION**
c/o General Counsel
165 Wambold Road
Harleysville, PA 19438

**RAPID-AMERICAN CORPORATION**
Prentice Hall Corp. Systems (DE)
1013 Centre Road
Wilmington, DE 19805

**STATE INSULATION CORPORATION**
Arthur J. Teichberg
370 Lexington Avenue - Suite 1812
New York, NY 10017

**THE FLINTKOTE COMPANY**
CT Corporation System (NY)
111 Eighth Avenue
New York, NY 10011

**THERMWELL PRODUCTS CO., INC.**
c/o General Counsel
150 E. 7th Street
Paterson, NJ 07509-2547

**UNIROYAL, INC. (Individually and as Successor to U.S.
RUBBER CO)**
Att. Legal Department
70 Great Hill Road
Naugatuck, CT 06770

**UNITED STATES GYPSUM COMPANY**
CT Corporation System (NY)
111 Eighth Avenue
New York, NY 10011

**UNITED STATES PIPE AND FOUNDRY COMPANY,
INC.**
CT Corporation System (NY)
111 Eighth Avenue
New York, NY 10011

**VIACOM, INC. (Individually and as Successor to CBS CORPORATION (BY MERGER)  F/K/A WESTINGHOUSE ELECTRIC CORPORATION)**

CSC Network
2 World Trade Center - Suite 8746
New York, NY 10048

**W. R. GRACE & CO.**
c/o Legal Department
5400 Broken Sound Boulevard NW - Suite 300
Boca Raton, FL 33487-3511

SUPREME COURT OF THE STATE OF NEW
YORK COUNTY OF NEW YORK
------------------------------------------- x

Index No.
**VERIFIED**
**COMPLAINT**

LOUIS BARLETTA AND MARY JANE
BARLETTA

Plaintiff,

-against-

A.P. GREEN INDUSTRIES, INC. (Individually
and as Successor to A.P. GREEN
REFRACTORIES CO.)
A.W. CHESTERTON COMPANY;
BABCOCK BORSIG POWER, INC. (Individually
And as Successor to DB RILEY, INC AND RILEY
STOKER COMPANY)
BONDEX INTERNATIONAL, INC.;
BURNHAM CORPORATION (Individually
and as Successor to KEWANEE BOILER)
COMBUSTION ENGINEERING, INC. (Individually
and as Successor to HEINE BOILER COMPANY)

CONGOLEUM CORPORATION;
FOSTER WHEELER CORPORATION;
GASKET HOLDING INC. (Individually
and as Successor to FLEXITALLIC GASKET
COMPANY)
GENERAL ELECTRIC COMPANY;
GEORGIA PACIFIC  CORPORATION;
GOODALL RUBBER COMPANY;
GOULDS PUMPS, INCORPORATED;
HALLIBURTON COMPANY (Individually
and as Successor to Dresser Industries and
Worthington Corporation)
HOMASOTE COMPANY;
IMO INDUSTRIES, INC.;
ITT INDUSTRIES, INC. (Individually
and as Successor to ITT FLUID PRODUCTS
CORP. AND ITT GRINNELL CORP.)
MOYNO, INC.;
NORTH AMERICAN REFRACTORIES
COMPANY
OWENS-ILLINOIS, INC.;
PECORA CORPORATION;
RAPID-AMERICAN CORPORATION;
STATE INSULATION CORPORATION;
THE FLINTKOTE COMPANY;

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
**EARLY & STRAUSS, L.L.C.**
360 LEXINGTON AVENUE • 20th FLOOR
NEW YORK, NEW YORK 10017 • (212) 986-2233

THERMWELL PRODUCTS CO., INC.;
UNIROYAL, INC. (Individually and
    as Successor to U.S. RUBBER CO)
UNITED STATES GYPSUM COMPANY;
UNITED STATES PIPE AND FOUNDRY
    COMPANY, INC.
VIACOM, INC. (Individually and
    as Successor to CBS CORPORATION (BY
    MERGER) F/K/A WESTINGHOUSE ELECTRIC
    CORPORATION)
W. R. GRACE & CO.;
        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - x

## COMPLAINT

1. Plaintiff, Louis Barletta (hereinafter referred to as "plaintiff") and Mary Jane Barletta (hereinafter referred to as "plaintiff/spouse") are husband and wife.

2. Each of the defendants named in the caption above has conducted business in the City and State of New York and has produced, manufactured, specified, supplied, installed or distributed asbestos and/or asbestos products with the reasonable expectation that such products would be used or consumed in this state, which products were so used or consumed, and/or has committed the tortious acts set forth below in this state.

3. Each of the defendants named in the caption above has manufactured, specified, supplied, sold, distributed and/or installed asbestos containing products to which the plaintiff was exposed, or was a contractor at a location where the plaintiff was exposed to asbestos, or manufactured, sold and/or installed equipment which had asbestos components or specified such components for operation, or owned or operated jobsites where asbestos containing products or equipment were used and where the plaintiff was thereby exposed to asbestos.

4. If it is deemed that Article 16 of the CPLR applies to this action, then the plaintiffs assert that this action falls within one or more of the exceptions set forth in CPLR 1602, including, but not limited to, that for cases where a person is found liable for causing a claimant's injury by having unlawfully released into the environment a substance hazardous to public health, safety or the environment; and that for parties found to have acted knowingly or intentionally and in concert to cause the acts or omissions upon which liability is based.

5. The plaintiff, in the course of his employment, worked with and/or in the vicinity of asbestos containing products and equipment with asbestos containing components, which products and components gave off airborne asbestos fibers, which the plaintiff was thereby forced to inhale. Plaintiff sustained exposure while serving in the US

Navy between 1951 and 1955; while working in industrial repairs and contracting in the 1950's, 1960's, 1970's and 1980's at various location in New Jersey and the GAF plant in Vails Gate, NY; and as well as during home renovations; and at other locations.

6. Upon information and belief, the named defendants manufactured, designed, sold, supplied, distributed, relabeled, commingled, applied and/or installed those asbestos containing products and/or equipment with asbestos containing components to which the plaintiff was exposed during his employment.

7. Defendants, acting in concert, failed to warn the plaintiff and those similarly situated, of the known dangers and hazards of using their asbestos containing products. This concert of action was achieved by the defendants providing substantial assistance and encouragement to one another in their wrongful course of conduct, and/or by expressly or impliedly agreeing not to warn the plaintiff and others similarly situated, of the hazards of said asbestos containing products.

8. The inhalation of asbestos fibers is inherently dangerous, in that it proximately causes mesothelioma, lung cancer, asbestosis, pleural scarring and other severe diseases. Plaintiff, Louis Barletta, was diagnosed with malignant mesothelioma on March 5, 2001.

**FIRST CAUSE OF ACTION (excluding VIACOM, INC. (Individually and as Successor to CBS CORPORATION (BY MERGER) (F/K/A WESTINGHOUSE ELECTRIC CORPORATION), GENERAL ELECTRIC COMPANY and HALLIBURTON COMPANY(Individually and as Successor to Dresser Industries and Worthington Corporation))**

Paragraphs 1 through 8 are incorporated herein as if set forth in full.

9. The employer or employers of the plaintiff, were engaged in various businesses in which they bought and/or installed asbestos products and materials.

10. The plaintiff was exposed to various asbestos containing products while serving in the US Navy between 1951 and 1955; while working in industrial repairs and contracting in the 1950's, 1960's, 1970's and 1980's at various location in New Jersey and the GAF plant in Vails Gate, NY; and as well as during home renovations; and at other locations.   Plaintiff was exposed to asbestos as described in paragraph 5.

11. During the period of time set forth above, the plaintiff was exposed to and did inhale and/or ingest asbestos dust, fibers, and particles, which dust, fibers, and particles came from the asbestos products which were contracted for, mined, milled, processed, manufactured, designed, tested, assembled, fashioned, fabricated, packaged, supplied, distributed, delivered, marketed and/or sold by the defendants.

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
**EARLY & STRAUSS, L.L.C.**
360 LEXINGTON AVENUE • 20th FLOOR
NEW YORK, NEW YORK 10017 • (212) 986-2233

12. Upon information and belief, the defendants, through their agents and employees, mined, processed, manufactured, designed, tested and/or packaged various asbestos-containing products, and supplied, distributed, delivered, marketed and/or sold said asbestos-containing products to the employer(s) of the plaintiff, or to others working at the various job sites in New York where the plaintiff was employed, or to third persons who, in turn, delivered and sold such products and materials to such employers or to others working at such job sites for use by employees, including the plaintiff.

13. At all relevant times that the plaintiff was working, he was exposed to asbestos materials and products which, as part of his employment, he was forced to come into contact with and breathe, inhale, and ingest asbestos fibers and particles coming from said asbestos products and materials.

14. At all times pertinent hereto, defendants were engaged in the business of contracting for, mining, milling, processing, manufacturing, designing, testing, assembling, fashioning, fabricating, packaging, supplying, distributing, delivering, marketing, selling and/or installing asbestos and asbestos products.

15. At all times pertinent hereto, the asbestos products contracted for, mined, milled, processed, manufactured, designed, tested, assembled, fashioned, fabricated, packaged, supplied, distributed, delivered, marketed, sold and/or installed by the defendants reached the plaintiff without any substantial change in their condition from the time they left the custody and control of the defendants.

16. The foregoing asbestos products and equipment with asbestos-containing components were defective in one or more of the following ways:

(a) in that they were inherently dangerous to those who used, handled, came in contact with and/or inhaled said products and materials

(b) in that they failed to carry proper, adequate and correct warnings and information concerning the dangers of said products;

(c) in that they lacked proper safety precautions to be observed by users, handlers and persons, including the plaintiff who would reasonably and foreseeably come into contact with the said products and materials;

(d) in that they were packaged, bagged, boxed and/or supplied to the plaintiffs' decedent in packing, bagging, boxes or other containers that were inadequate and/or improper;

(e) in that the products were delivered to and reached the plaintiff without adequate or proper handling instructions, face masks and/or respirators;

(f) in that any warnings, information and/or safety instructions said products may have carried were improper and inadequate in that they failed to adequately and

reasonably apprise users, handlers and persons coming into contact with the said products and materials, including the plaintiff, of the full scope and danger to their health of contact with asbestos products and materials, including the risk of cancer;

(g) in that the said asbestos products and materials were not of merchantable quality; and

(h) in that the said asbestos products and materials were not fit and safe for their known and intended purposes and uses.

17. As a result of the above, the plaintiff was caused to sustain permanent injuries caused by his coming into contact with breathing, inhaling and ingesting asbestos fibers. The injuries and diseases from which the plaintiff is suffering will continue to cause the plaintiff to suffer pain and suffering, mental anxiety, distress of mind, emotional trauma and mental anguish.

18. The disease, diseases or injuries from which the plaintiff suffers were directly and proximately caused by his exposure to asbestos and asbestos products which were mined, milled, manufactured, designed, assembled, fabricated, supplied, constructed, processed, packaged, distributed, delivered, purchased, sold and/or installed by the defendants.

19. As a result thereof, the plaintiff's life span may have been shortened and his capacity to carry on life's activities has been impaired along with his capacity to enjoy life and family.

20. As a result of said illness, the plaintiff has been obligated to incur expenses for medical treatment, x-rays and in the future will be obliged to incur further expenses for such purposes.

21. As a further result of said illness, the plaintiff's earning capacity may be impaired in the future.

22. The defendants knew or should have known that the asbestos products and materials were inherently dangerous to those who used, handled or came in contact with said products and materials.

23. The defendants failed to provide proper, adequate and correct warnings and information concerning the dangers of the products and materials to persons using, handling, or coming into contact therewith.

24. The defendants failed to provide proper, adequate and correct warnings and instruction of safety precautions to be observed by users, handlers and persons, including the plaintiff, who would reasonably and foreseeably come into contact with the said products and materials.

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
EARLY & STRAUSS, L.L.C.
360 LEXINGTON AVENUE • 20th FLOOR
NEW YORK, NEW YORK 10017 • (212) 986-2233

NEW YORK, NEW YORK 10017 • (212) 986-2233

25. Any warnings, information and/or instruction of safety precautions were improper and inadequate in that, among other things, they failed to adequately and reasonably apprise users, handlers and persons coming into contact with the said products and materials, including the plaintiff, of the full scope and danger to their health of contact with asbestos products and materials, including the risk of cancer or mesothelioma.

26. The defendants have been possessed of medical and scientific data, studies and reports before 1929, which information clearly indicated that asbestos and asbestos-containing products were hazardous to the health and safety of the plaintiff and other human beings.

27. The defendants, during the 1930's, 1940's, 1950's and 1960's became possessed of voluminous medical and scientific data, studies and reports, which information conclusively established that asbestos and asbestos-containing products were hazardous to the health and safety of the plaintiff and all humans exposed to the products. Defendants were members of organizations like the National Safety Council which widely disseminated information about asbestos disease to its members, beginning in the 1930's.

28. The defendants have since the 1930's had numerous workers' compensation claims filed against them in this state and many other states by employees or former employees alleging asbestos related pneumoconiosis, going back to the 1930's. This State and other states provided compensation for individuals with asbestos related injuries under workers' compensation laws beginning in the 1930's.

29. The defendants, since the 1920's, have consistently failed to acknowledge, publish, or in any way advise plaintiff of studies and reports known throughout the industry, including studies conducted by or on behalf of various defendants in the asbestos industry.

30. Notwithstanding that the defendants possessed the foregoing information, the defendants wrongfully contracted for, mined, milled, processed, manufactured, designed, specified, tested, assembled, fashioned, fabricated, packaged, supplied, distributed, delivered, installed, marketed, and/or sold asbestos products and materials to the plaintiff, his employer(s) and/or to others working at the various job sites and places of employment of the plaintiff and/or the defendants installed, used and/or applied such products and equipment so as to expose the plaintiff to asbestos, and said defendants failed to render proper, adequate and correct warnings, advice, instruction and information and so acted in a grossly negligent, malicious, willful and wanton manner, and failed to use reasonable care under all circumstances, and wrongfully acted in other respects.

31. It was the continuing duty of the defendants to advise and warn purchasers, consumers, and users, and all prior purchasers, consumers, and users, of all dangers, characteristics, potentialities and/or defects discovered subsequent to their initial marketing or sale of said asbestos and asbestos products.

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
EARLY & STRAUSS, L.L.C.
360 LEXINGTON AVENUE • 20th FLOOR
NEW YORK, NEW YORK 10017 • (212) 986-2233

32. The defendants breached these duties by:

(a) failing to warn the plaintiff of the dangers, characteristics, and/or potentialities of the product or products when they knew or should have known that the exposure to the product(s) would cause disease and injury.

(b) failing to warn the plaintiff of the dangers to which he was exposed when they knew or should have known of the dangers

(c) failing to exercise reasonable care to warn the plaintiff of what would be safe, sufficient, and properly protective clothing, equipment, and appliances when working with, near or during exposure to asbestos and asbestos products

(d) in that they were packaged, bagged, boxed, and/or supplied to the plaintiff in packaging, bagging, boxes or other containers that were inadequate and/or improper

(e) in that the products were delivered to and reached the plaintiff without adequate or proper handling instructions, face masks and/or respirators

(f) failing to test the asbestos and asbestos products in order to ascertain the extent of dangers involved upon exposure

(g) failing to conduct such research that should have been conducted in the exercise of reasonable care in order to ascertain the dangers involved upon exposure

(h) failing to remove the product or products from the market when the defendant corporations knew or should have known of the hazards of exposure to asbestos and asbestos products.

(i) failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos to adequately warn and apprise the plaintiff of the dangers, hazards, and potentialities discovered; and

(j) generally using unreasonable, careless, and negligent conduct in the contracting for, mining, milling, processing, manufacturing, designing, testing, assembling, fashioning, fabricating, packaging, supplying, distributing, delivering, marketing, and/or selling of their asbestos and asbestos products.

33. The acts and omissions set forth above constitute misconduct that is intentional, willful, and reckless.

34. As a direct and proximate result of the defendant's misconduct hereinbefore set forth, the plaintiff contracted the diseases and injuries set forth in paragraph 8.

**WHEREFORE**, the plaintiff claims:

Compensatory damages in the amount of $20,000,000.00; and

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
EARLY & STRAUSS, L.L.C.
360 LEXINGTON AVENUE • 20th FLOOR
NEW YORK, NEW YORK 10017 • (212) 986-2233

Punitive damages in the amount of $20,000,000.00.

**SECOND CAUSE OF ACTION (excluding VIACOM, INC. (Individually and as Successor to CBS CORPORATION (BY MERGER) (F/K/A WESTINGHOUSE ELECTRIC CORPORATION), GENERAL ELECTRIC COMPANY and HALLIBURTON COMPANY(Individually and as Successor to Dresser Industries and Worthington Corporation))**

35. The employer or employers of the plaintiff, were engaged in various businesses in which they bought and/or installed asbestos products and materials.

36. The plaintiff was exposed to various asbestos containing products while serving in the US Navy between 1951 and 1955; while working in industrial repairs and contracting in the 1950's, 1960's, 1970's and 1980's at various location in New Jersey and the GAF plant in Vails Gate, NY; and as well as during home renovations; and at other locations.   Plaintiff was exposed to asbestos as described in paragraph 5.

37. During the period of time set forth above, the plaintiff was exposed to and did inhale and/or ingest asbestos dust, fibers, and particles, which dust, fibers, and particles came from the asbestos products which were contracted for, supplied, distributed, delivered, marketed and/or sold by defendants General Electric, Westinghouse and Worthington.

38. Upon information and belief, defendants General Electric, Westinghouse and Worthington, through their agents and employees, packaged various asbestos-containing products, and supplied, distributed, delivered, marketed and/or sold said asbestos-containing products to the employer(s) of the plaintiff, or to others working at the various job sites where the plaintiff was employed, or to third persons who, in turn, delivered and sold such products and materials to such employers or to others working at such job sites for use by employees, including the plaintiff.

39. At all relevant times that the plaintiff was working, he was exposed to asbestos materials and products which, as part of his employment, he was forced to come into contact with and breathe, inhale, and ingest asbestos fibers and particles coming from said asbestos products and materials.

40. At all times pertinent hereto, defendants were engaged in the business of contracting for, supplying, distributing, delivering, marketing, selling and/or installing asbestos and asbestos products.

41. At all times pertinent hereto, the asbestos products supplied, distributed, delivered, marketed, sold and/or installed by defendants General Electric, Westinghouse and Worthington reached the plaintiff without any substantial change in their condition from the time they left the custody and control of defendants General Electric, Westinghouse and Worthington.

42. The foregoing asbestos products and equipment with asbestos-containing components were defective in one or more of the following ways:

(a) in that they failed to carry proper, adequate and correct warnings and information concerning the dangers of said products;

(b) in that they lacked proper safety precautions to be observed by users, handlers and persons, including the plaintiff who would reasonably and foreseeably come into contact with the said products and materials;

(c) in that any warnings, information and/or safety instructions said products may have carried were improper and inadequate in that they failed to adequately and reasonably apprise users, handlers and persons coming into contact with the said products and materials, including the plaintiff, of the full scope and danger to their health of contact with asbestos products and materials, including the risk of cancer;

43. As a result of the above, the plaintiff was caused to sustain permanent injuries caused by his coming into contact with breathing, inhaling and ingesting asbestos fibers. The injuries and diseases from which the plaintiff is suffering will continue to cause the plaintiff to suffer pain and suffering, mental anxiety, distress of mind, emotional trauma and mental anguish.

44. The disease, diseases or injuries from which the plaintiff suffers were directly and proximately caused by his exposure to asbestos and asbestos products which supplied, constructed, processed, packaged, distributed, delivered, purchased, sold and/or installed by defendants General Electric, Westinghouse and Worthington.

45. As a result thereof, the plaintiff's life span may have been shortened and his capacity to carry on life's activities has been impaired along with his capacity to enjoy life and family.

46. As a result of said illness, the plaintiff has been obligated to incur expenses for medical treatment, x-rays and in the future will be obliged to incur further expenses for such purposes.

47. As a further result of said illness, the plaintiff's earning capacity may be impaired in the future.

48. Defendants General Electric, Westinghouse and Worthington knew or should have known that the asbestos products and materials were inherently dangerous to those who used, handled or came in contact with said products and materials.

49. Defendants General Electric, Westinghouse and Worthington failed to provide proper, adequate and correct warnings and information concerning the dangers of the products and materials to persons using, handling, or coming into contact therewith.

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
EARLY & STRAUSS, L.L.C.
360 LEXINGTON AVENUE • 20th FLOOR
NEW YORK, NEW YORK 10017 • (212) 986-2233

50. Defendants General Electric, Westinghouse and Worthington failed to provide proper, adequate and correct warnings and instruction of safety precautions to be observed by users, handlers and persons, including the plaintiff, who would reasonably and foreseeably come into contact with the said products and materials.

51. Any warnings, information and/or instruction of safety precautions were improper and inadequate in that, among other things, they failed to adequately and reasonably apprise users, handlers and persons coming into contact with the said products and materials, including the plaintiff, of the full scope and danger to their health of contact with asbestos products and materials, including the risk of cancer or mesothelioma.

52. Defendants General Electric, Westinghouse and Worthington have been possessed of medical and scientific data, studies and reports before 1929, which information clearly indicated that asbestos and asbestos-containing products were hazardous to the health and safety of the plaintiff and other human beings.

53. Defendants General Electric, Westinghouse and Worthington, during the 1930's, 1940's, 1950's and 1960's became possessed of voluminous medical and scientific data, studies and reports, which information conclusively established that asbestos and asbestos-containing products were hazardous to the health and safety of the plaintiff and all humans exposed to the products. Defendants General Electric, Westinghouse and Worthington was a members of organizations like the National Safety Council which widely disseminated information about asbestos disease to its members, beginning in the 1930's.

54. Defendants General Electric, Westinghouse and Worthington, since the 1920's, have consistently failed to acknowledge, publish, or in any way advise plaintiff of studies and reports known throughout the industry, including studies conducted by or on behalf of various defendants in the asbestos industry.

55. Notwithstanding that Defendants General Electric, Westinghouse and Worthington possessed the foregoing information, the defendants wrongfully contracted for, supplied, distributed, delivered, installed, marketed, and/or sold asbestos products and materials to the plaintiff, his employer(s) and/or to others working at the various job sites and places of employment of the plaintiff and/or the defendants installed, used and/or applied such products and equipment so as to expose the plaintiff to asbestos, and failed to render proper, adequate and correct warnings.

56. It was the continuing duty of defendants General Electric, Westinghouse and Worthington to advise and warn purchasers, consumers, and users, and all prior purchasers, consumers, and users, of all dangers, characteristics, potentialities and/or defects discovered subsequent to their initial marketing or sale of said asbestos and asbestos products.

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
EARLY & STRAUSS, L.L.C.
360 LEXINGTON AVENUE • 20th FLOOR
NEW YORK, NEW YORK 10017 • (212) 986-2233

57. Defendants General Electric, Westinghouse and Worthington breached these duties by:

(a)     failing to warn the plaintiff of the dangers, characteristics, and/or potentialities of the product or products when they knew or should have known that the exposure to the product(s) would cause disease and injury;

(b)     failing to warn the plaintiff of the dangers to which he was exposed when they knew or should have known of the dangers;

(c)     failing to exercise reasonable care to warn the plaintiff of what would be safe, sufficient, and properly protective clothing, equipment, and appliances when working with, near or during exposure to asbestos and asbestos products;

(d)     failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos to adequately warn and apprise the plaintiff of the dangers, hazards, and potentialities discovered; and

58. As a direct and proximate result of defendants General Electric, Westinghouse and Worthington's misconduct hereinbefore set forth, the plaintiff contracted the diseases and injuries set forth in paragraph 8.

**WHEREFORE**, the plaintiff claims:

Compensatory damages in the amount of $20,000,000.00; and
Punitive damages in the amount of $20,000,000.00.

**THIRD CAUSE OF ACTION** **(excluding VIACOM, INC. (Individually and as Successor to CBS CORPORATION (BY MERGER) (F/K/A WESTINGHOUSE ELECTRIC CORPORATION), GENERAL ELECTRIC COMPANY and HALLIBURTON COMPANY(Individually and as Successor to Dresser Industries and Worthington Corporation))**

Paragraphs 1 through 34 are incorporated herein as if set forth in full.

59. The plaintiff was a foreseeable user and consumer of the defendants' asbestos and asbestos products.

60. The defendants owed the plaintiff a duty of reasonable care to avoid causing him harm from exposure to their products.

61. The defendants breached their duty in the numerous and various manner set forth above.

62. The defendants' negligence directly and proximately caused the plaintiff's asbestos disease and other lawful damages set forth above.

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
EARLY & STRAUSS, L.L.C.
360 LEXINGTON AVENUE • 20th FLOOR
NEW YORK, NEW YORK 10017 • (212) 986-2233

**WHEREFORE,** the plaintiff claims:

Compensatory damages in the amount of $20,000,000.00; and
Punitive damages in the amount of $20,000,000.00.

**FOURTH CAUSE OF ACTION (excluding VIACOM, INC. (Individually and as Successor to CBS CORPORATION (BY MERGER) (F/K/A WESTINGHOUSE ELECTRIC CORPORATION), GENERAL ELECTRIC COMPANY and HALLIBURTON COMPANY(Individually and as Successor to Dresser Industries and Worthington Corporation))**

Paragraphs 1 through 34 and 59 through 62 are incorporated herein as if set forth in full.

63. The asbestos containing products hereinbefore described reached the plaintiff in a condition substantially unchanged from when they left the custody and control of the defendants, and were used by the plaintiff, and/or his coworkers in the manner intended by the defendants.

64. The defendants are, therefore, strictly liable to the plaintiff in accordance with Section 402A of the Restatement (Second) of Torts.

**WHEREFORE,** the plaintiff claims:

Compensatory damages in the amount of $20,000,000.00; and
Punitive damages in the amount of $20,000,000.00.

**FIFTH CAUSE OF ACTION**

The plaintiff, Mrs. Mary Jane Barletta, spouse of the plaintiff, hereby realleges and incorporates by reference to paragraphs 1 through 66 as if realleged and set forth in full.

67. As a direct and proximate result of the foregoing acts of the defendants, the plaintiff/spouse, Mrs. Mary Jane Barletta, has suffered and will continue to suffer great pain and mental anguish by virtue of her loss of impairment of her husband's services, protection, care and assistance, society, companionship, affection, love, comfort, support, guidance and kindly offices and advice, and other benefits of the marital relationship.

**WHEREFORE,** the plaintiff claims:

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
EARLY & STRAUSS, L.L.C.
360 LEXINGTON AVENUE • 20th FLOOR
NEW YORK, NEW YORK 10017 • (212) 986-2233

Compensatory damages in the amount of $5,000,000.00.

**WHEREFORE,** Plaintiff demands judgment against the defendants in the First Cause of Action in the sum of Twenty Million ($20,000,000.00) Dollars in Compensatory Damages and Twenty Million ($20,000,000.00) Dollars in Punitive Damages; in the Second Cause of Action in the sum of Twenty Million ($20,000,000.00) Dollars in Compensatory Damages and Twenty Million ($20,000,000.00) Dollars in Punitive Damages; in the Third Cause of Action in the sum of Twenty Million ($20,000,000.00) Dollars in Compensatory Damages and Twenty Million ($20,000,000.00) Dollars in Punitive Damages; in the Fourth Cause of Action in the sum of Twenty Million ($2,000,000.00) Dollars in Compensatory Damages and Twenty Million ($20,000,000.00) Dollars in Punitive Damages; and in the Fifth Cause of Action in the sum of Five Million ($5,000,000.00) Dollars in Compensatory Damages

Dated at New York, New York, this _22nd_ day of _March_, 2001.

Yours, etc.

_MG Strauss_

MARK G. STRAUSS, ESQ.
EARLY & STRAUSS, L.L.C.
Attorney for Plaintiffs
360 Lexington Avenue, 20th Floor
New York NY 10017
212.986.2233

## ATTORNEY'S VERIFICATION

The undersigned, an attorney admitted to practice in the Courts of the State of New York, shows that:

Affirmant is associated with the attorney of record for plaintiff in the within action; Affirmant has read the foregoing VERIFIED COMPLAINT and knows the contents thereof to be true to Affirmant's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters, Affirmant believes those matters to be true.

The grounds of Affirmant's belief as to all matters not stated upon his knowledge are based upon information contained in the file maintained in Affirmant's office.

This verification is made by Affirmant and not by the plaintiff because the plaintiffs reside outside the county wherein Affirmant maintains his office.

The undersigned affirms that the foregoing statements are true under the penalties of perjury.

Dated:  March 22, 2001

Mark G. Strauss, Esq.

Mark G. Strauss, Esq.

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
EARLY & STRAUSS, L.L.C.
360 LEXINGTON AVENUE • 20th FLOOR

EXHIBIT C

FILED

SUPREME COURT OF THE STATE OF NEW YORK
ALL COUNTIES WITHIN NEW YORK CITY    2002 DEC -2 AM II: 34

------------------------------------------------------x    MARTHA I. SOLIZ
                                                           DIST. CLERK KLEBERG CTY.
In Re:    NEW YORK CITY
          ASBESTOS LITIGATION

------------------------------------------------------x    BY ____ORDER____ DEPUTY

This Document Relates to:

LOUIS BARLETTA                            Index No. 01-105781
          Plaintiffs,
     –against–                            HON. HELEN FREEDMAN

A.P. GREEN INDUSTRIES, INC., Et al.
          Defendants.

------------------------------------------------------x

     **WHEREAS,** it was so ruled at the NYCAL designation conference on June 20, 2001, that the place of trial in the above referenced case was changed from the Supreme Court, County of New York, to another Court;

     **NOW,** upon the review of all papers submitted and after due deliberation and in accordance with CPLR 327;

     **IT IS HEREBY ORDERED** that the place of trial in the above referenced case is changed from the Supreme Court, County of New York, to the District Court of Kleberg County, Texas, 105th Judicial District, and upon service of a copy of this order with notice of entry and payment of appropriate fees, if any, that the Clerk of Court of the Supreme Court, County of New York, forthwith deliver all papers filed in this action to the Clerk of the District Court of Kleberg County, Texas, 105th Judicial District.

                       **SO ORDERED:**

                       _____
                       Helen Freedman, J.S.C.

FILED
NOV 01 2001
NEW YORK
COUNTY CLERK'S OFFICE

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
EARLY & STRAUSS, L.L.C.
360 LEXINGTON AVENUE • 20th FLOOR
NEW YORK, NEW YORK 10017 • (212) 986-2233

Page 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK : CIVIL TERM : PART 39
- - - - - - - - - - - - - - - - - - x
NEW YORK CITY ASBESTOS LITIGATION
IN RE APPLICATION FOR NOVEMBER, 2001,
IN EXTREMIS CLUSTER                          Index No.
                                             40000/88
- - - - - - - - - - - - - - - - - - x

                                    June 20, 2001
                                    60 Centre Street
                                    New York, NY  10007

B e f o r e:
       HON. HELEN E. FREEDMAN, Justice.
A p p e a r a n c e s:
       BARON & BUDD, ESQS.
       Attorneys for Plaintiffs
              660 Madison Avenue - 18th Floor
              New York, New York  10021
       BY:  ROBERTA ASHKIN, ESQ.
       EARLY & STRAUSS, LLP
       Attorneys for Plaintiffs
              360 Lexington Avenue
              New York, New York  10017
       BY:  MITCHELL STRAUSS, ESQ.
       LAW OFFICES OF GENE LOCKS, ESQ.
       Attorneys for Plaintiffs
              110 East 55th Street
              New York, New York  10022
       BY:  ANDREW P. BELL, ESQ.
       WILENTZ, GOLDMAN & SPITZER, P.C.
       Attorneys for Plaintiffs
              88 Pine Street
              New York, New York  10005
       BY:  FRANK M. ORTIZ, ESQ.
       WEITZ & LUXENBERG, P.C.
       Attorneys for Plaintiffs
              180 Maiden Lane
              New York, New York  10038
       BY:  PERRY WEITZ, ESQ., and
            CHARLES M. FERGUSON, ESQ.



**Page 2**

```
 1
 2   FLEMMING, ZULACK & WILLIAMSON, LLP
     Attorneys for Defendants THE FLINTKOTE CO.,
 3   and CROWN CORK & SEAL CO., INC.
     One Liberty Plaza
 4   New York, New York  10006
     BY: CATHI A. HESSION, ESQ.
 5
     AKIN, GUMP, STRAUSS, HAUER & FELD, LLP
 6   Attorneys for various defendants
     1333 New Hampshire Avenue, N.W.
 7   Washington, DC  20036
     BY: MARYELLEN CONNOR, ESQ.
 8
     L'ABBATE, BALKAN, COLAVITA & CONTINI, LLP
 9   Attorneys for various defendants
     Seven Regent Street, Suite 711
10   Livingston, New Jersey  07039
     BY: ARTHUR D. BROMBERG, ESQ.
11
     ANDERSON, KILL & OLICK, P.C.
12   Attorneys for Defendant UNITED STATES GYPSUM
     1251 Avenue of the Americas
13   New York, New York  10020
     BY: JUDITH A. YAVITZ, ESQ.
14
     HARRIS BEACH, LLP
15   Attorney for Defendant GENERAL ELECTRIC COMPANY
     Two World Trade Center - 85th Floor
16   New York, New York  10048
     BY: CORI L. MALABY, ESQ.
17
     BARRY, McTIERNAN & MOORE, ESQS.
18   Attorneys for various defendants
     25 Broadway
19   New York, New York  10004
     BY: SUZANNE M. HALBARDIER, ESQ.
20
     O'MELVENY & MYERS, LLP
21   Attorneys for various defendants
     153 East 53rd Street - 54th Floor
22   New York, New York  10022
     BY: DAWN S. HARRIS, ESQ.
23
     DRINKER, BIDDLE & SHANLEY, LLP
24   Attorneys for Defendant HONEYWELL
     500 Campus Drive
25   Florham, New Jersey  07932
     BY: WILLIAM J. MENDRZYCKI, ESQ.
```

**Page 3**

```
 1
 2
     ROSS & HARDIES, LLP
 3   Attorneys for Defendant AMERICAN STANDARD
     65 East 55th Street
 4   New York, New York  10022
     BY: GENEVIEVE MAC STEEL, ESQ.
 5
     THELEN, REID & PRIEST, LLP
 6   Attorneys for various defendants
     40 West 57th Street
 7   New York, New York  10019
     BY: WILLIAM P. BRUCKNER, ESQ.
 8
     LARAINE PACHECO, Special Master
 9
10           Reported By:
             William L. Kutsch
11
12   MINUTES OF PROCEEDINGS
13
14   THE COURT:  All right.  We're going just on
15   the Early & Strauss cases.
16       I spoke to Judge Robert Lippmann.  He will
17   be picking a jury on July 16, if not sooner.  So
18   one way or another, those cases are going on July
19   16.  There will be no further adjournments.  He
20   promised he would send them right back to me if
21   he doesn't seat them, and I'm here.
22       Moving on, we'll start with the first group
23   of cases, and that's the Baron & Budd cases?
24       MS. HESSION:  Yes, your Honor.  We have
25   objections to three of the remaining five cases
```

**Page 4**

```
 1               Proceedings
 2   that have applications for the November Cluster.
 3       The first case is the case of Deborah
 4   Higgins.
 5       THE COURT:  Are there Dollard issues?
 6       MS. HESSION:  There was another case in
 7   which application had been made.  The name of the
 8   case was Dollard.  I understand from Miss Ashkin
 9   that she wishes to voluntarily dismiss the case,
10   and we respectfully wouldn't oppose an order.
11       THE COURT:  It's dismissed.
12       MS. HESSION:  Without prejudice.
13       THE COURT:  That has to be marked settled.
14   Higgins.
15       MS. HESSION:  Before we get to Higgins, your
16   Honor, let me say that there were four other
17   applications made that have been withdrawn:
18   Marcone (phonetic), Mogaverro (phonetic),
19   Pashucco (phonetic) and Stefano (phonetic)
20   cases.
21       THE COURT:  They aren't on my list.
22       MS. HESSION:  They were on the original
23   application list.  The applications have been
24   withdrawn.
25       Miss Ashkin has asked if she could have
```

**Page 5**

```
 1               Proceedings
 2   depositions of those plaintiffs, because
 3   apparently there is some doubt about their health
 4   conditions.  The defendants have no objection to
 5   that.  We will work out early dates with her but
 6   they are off the application list.
 7       Going back to the Higgins case.
 8       MS. ASHKIN:  Judge, will the Court issue an
 9   order that we can discontinue without prejudice
10   on Dollard?  Is that where we stand or shall we
11   stipulate to that?
12       THE COURT:  How do I issue it?  Where?
13       MS. ASHKIN:  I don't know.  It was suggested
14   to me that the Court might want to do that.
15       THE COURT:  I have just said it; isn't that
16   enough?  It's discontinued without prejudice.
17       MS. HESSION:  The Higgins case is brought by
18   a New Jersey resident.  She lives in Westfield,
19   New Jersey.  She was a vice president with some
20   insurance companies, and during a few years, 1984
21   to '85, she had a job at the Time Life Building.
22       In her Answers to Interrogatories, there is
23   no asbestos exposure alleged at that site.  The
24   exposure alleged is household exposure through
25   hair dryers, and three brands of hair dryers are
```

William L. Kutsch
Senior Court Reporter

Page 6

```
1                    Proceedings
2    identified.  Presumably she was blow-drying her
3    hair at her house in New Jersey.  And we object
4    to this case on forum grounds.
5         THE COURT:  Was her workplace -- did she
6    have work exposure?
7         MS. ASHKIN:  Yes, she did.  She worked at
8    195 Broadway, which is one of the sites that is
9    on the master site list of asbestos-contaminated
10   buildings.  And she was there from '86 to '92, a
11   six- to seven-year period during which -- and I
12   closely discussed this with Deborah, to determine
13   exactly what was going on.  There were massive
14   demolition and renovation that was being
15   pursued.
16        In the interrogatories, I think that there
17   is a misnomer or a misinterpretation of how we
18   read the response and how defense reads it.  We
19   did not indicate in our interrogatory response
20   that the exclusive exposure was through GE hair
21   dryers, but there were exposures through GE hair
22   dryers as well as within the occupational
23   setting.  And I had discussed that on telephone
24   as well when this was raised with Laraine and
25   Cathi.
```

Page 7

```
1                    Proceedings
2         THE COURT:  That's not what the memo says.
3         MS. HESSION:  Your Honor, if I may, the
4    first site on Chart A is Deborah Higgins, vice
5    president of human resources.  She is not a
6    construction worker or blue collar person.  Her
7    office from '84 to '85 was in the Time Life
8    Building and she intermittently during the period
9    from '84 to '92 apparently had business reasons
10   to go to 195 Broadway.
11        The second page on Chart A, she said she
12   worked for ADP Securities, also in human
13   resources, in Roseland, that's New Jersey,
14   from '93 to 2000, again, as vice president.  And
15   on neither of those sites on Chart A are there
16   any asbestos exposures listed.  There is nothing
17   here.  Just a fact that she worked at those
18   sites.
19        On the third page is where she says
20   "household exposure through hair dryers," and
21   lists the three hair dryers.  The three hair
22   dryers are the only asbestos-containing materials
23   that are listed here in this Chart A, something
24   she was exposed to.
25        I might add, your Honor, that we also just
```

Page 8

```
1                    Proceedings
2    got a medical report from plaintiffs, I got it
3    last evening, saying that this woman was
4    diagnosed with pleural mesothelioma in 1995, so
5    she has had quite a long history.  It's an
6    unusual case.
7         THE COURT:  When did she sue?
8         MS. ASHKIN:  She was diagnosed --
9         MS. HESSION:  She sued this year.
10        MS. ASHKIN:  She was diagnosed with her
11   mesothelioma -- I'm trying to look at my notes
12   here.  I believe it was 1998.
13        MS. HESSION:  I am reading from the medical
14   record.
15        MS. ASHKIN:  The statute would --
16        MS. HESSION:  "44 year-old female diagnosed
17   with pleural mesothelioma in 1995.  Underwent
18   thoracotomy and right pleurectomy in 1998.  No
19   obvious recurrence until now."
20        MS. ASHKIN:  It's a typographical error.
21   The statute would have begun.  Diagnosis was
22   in '98.  May I interject --
23        MS. HESSION:  It's a medical record.
24        MS. ASHKIN:  May I interject a few things
25   here?
```

Page 9

```
1                    Proceedings
2         Deborah is 46 years old, has a six- year-old
3    son, and she worked in two significant New York
4    environments for a lengthy period of time where
5    massive renovation was going on.
6         In response to that, rather than being
7    premature in what we allege, we sent out employer
8    requests with specific reference to 195 Broadway
9    where she worked as an account executive from
10   1986 to 1992, in order to try to come before the
11   Court today with as much information as I
12   possibly could in an accurate fashion.  I spent a
13   great deal of time yet again with Deborah last
14   night ascertaining actually the nature of what
15   she experienced and the quality of the exposure
16   of what was going on at that time.
17        If I could make a suggestion to the Court,
18   first of all, I think, I'm not aware of the
19   typographical error that Cathi has seen, there
20   isn't any question that Deborah's diagnosis was
21   in 1998.
22        I might add, your Honor, that if she were to
23   be removed from this Court, she would be time
24   barred in New Jersey.  But with her significant
25   exposures in the New York City area, I think it
```

Page 10

Proceedings

1  behooves me as her attorney to certainly explore
2  what the quality of the exposures were during the
3  six-year period at 195 Broadway where we know
4  there was a significant insulation of asbestos
5  over the years.
6      We are doing that, our employer request went
7  out, and Cathi and I had talked about it. If
8  indeed this was one that was going to hang around
9  for a bit and perhaps that there wasn't going to
10  be a definitive resolution on these issues, there
11  should be a deposition and --
12      MS. HESSION: Actually what we said is it
13  should be out on forum grounds. As the Court is
14  well aware, there's a very active and mature
15  asbestos docket in New Jersey. She lives there.
16  She is alleging exposure there.
17      THE COURT: Miss Hession, it is too late for
18  New Jersey. If she was -- if she were diagnosed
19  in 1998, you can't sue in New Jersey.
20      MS. ASHKIN: That's right. The statute is a
21  two-year statute.
22      MS. HESSION: If that is the statute, the
23  defendant would agree, if she refiles in New
24  Jersey, the statute can be tolled from the date
25

Page 11

Proceedings

1  she filed here. No problem.
2      MS. ASHKIN: If GE was going to do that, we
3  might work on that.
4      MS. HESSION: We would have to get a
5  deposition and see if we can work that agreement
6  out. It is not something that I'm completely non
7  disposed to. But with the extent of her exposure
8  here in New York, I think we must do discovery.
9      THE COURT: Unfortunately the
10  interrogatories don't seem to indicate that
11  exposure.
12      MS. ASHKIN: This was a mistaken
13  interpretation. As I read it, it did not ask --
14  it was asking for other exposures other than the
15  occupational setting, and it was responded to
16  that way. It was a semantic misinterpretation on
17  my part. I did not intend to say that there was
18  no exposure occupationally because we put down
19  her occupational sites in Chart A.
20      MS. HESSION: It's still not clear how a
21  human resources vice president --
22      THE COURT: She said she was there when
23  there was a lot of construction going on. It is
24  possible. We have had other cases like that. We
25

Page 12

Proceedings

1  have had school teachers when there has been
2  construction in schools. We have.
3      MS. HESSION: It's one thing to say, to talk
4  about a school teacher who is working in a school
5  while construction is going on, it's another
6  thing to talk about a managerial person who has
7  an office somewhere in the Time Life Building
8  while some work is being done somewhere in the
9  Time Life Building. This is 1984, 1985 we're
10  talking about.
11      THE COURT: I don't think people get
12  mesothelioma from hair dryers usually.
13      MS. HESSION: I don't think they get it from
14  working in an office building 15 years ago as a
15  human resources vice president.
16      THE COURT: Depends if there's construction
17  going on at the time. Yes. We had it with Mr.
18  Beck. Didn't he get it from the Henry Street
19  cement work that was going on?
20      MR. STRAUSS: Yes, your Honor.
21      MS. HESSION: It's not a situation we have
22  here.
23      THE COURT: That's what we have.
24      MS. MALABY: General Electric has no
25

Page 13

Proceedings

1  objection to the case going forward in New
2  Jersey.
3      MS. HESSION: They would agree to toll the
4  statute from the date of filing.
5      THE COURT: If you can get it against
6  everybody, I think New Jersey might be the better
7  venue in this case.
8      MS. ASHKIN: Perhaps we can defer so I can
9  get the employer request and have Deborah
10  deposed. I'm not averse to trying to work --
11      THE COURT: I'm going to put this one on
12  hold. Let's go onto the next one.
13      MS. HESSION: Next one, your Honor, is the
14  Thomas McNamara case. Defendants object on forum
15  grounds.
16      Mr. McNamara, who was a union official for a
17  number of years in the local up in White Plains,
18  lives in Putnam Valley. He's lived in that area
19  of New York since he's 11 years old. According
20  to his interrogatory answers, the exposures are
21  all in Westchester, Rockland and points north,
22  including New Paltz, Plattsburg, Middletown, and
23  we respectfully suggest he should be suing in the
24  Ninth Judicial District where he lives and was
25

4 (Pages 10 to 13)

William L. Kutsch
Senior Court Reporter

Page 14

Proceedings

1
2  exposed.
3      THE COURT: Yes. I think so.
4      MS. ASHKIN: Your Honor, if I may, Thomas
5  McNamara was an insulator and he was
6  substantially involved with insulation work, just
7  as an example, at Indian Point in Westchester
8  County, Yorktown Heights in Westchester, General
9  Motors in Tarrytown, Indian Point again, Croton
10  Watch Company, IBM Armonk.
11     THE COURT: They are all in Westchester.
12     MS. ASHKIN: All Westchester exposures.
13     THE COURT: What is wrong with Westchester?
14     MS. ASHKIN: It's a very nice place to live,
15  but unfortunately what Tommy was diagnosed in
16  December with was mesothelioma. He had a
17  pleurectomy and is undergoing very extensive
18  chemotherapy as well as radiation therapy.
19     We called the Westchester County Clerk to
20  try to get a sense of what we could do to advance
21  this case there. I love New York. I live in the
22  city. I have a lot of friends here, but I'm not
23  necessarily convinced that we couldn't get a fair
24  and decent trial in Westchester.
25     The problem, however, is getting on the

Page 16

Proceedings

1
2  something that works for both, but the way our
3  case management order is set up, it includes
4  jurisdictions outside of New York.
5      THE COURT: The CMO says that?
6      MS. ASHKIN: I thought that -- not the CMO,
7  but your judicial parameters.
8      THE COURT: No, the five boroughs of New
9  York.
10     MS. ASHKIN: I think historically --
11     THE COURT: Historically I have expanded
12  it. Now I may be going back to what my
13  jurisdiction is.
14     MS. ASHKIN: I think that, your Honor, if
15  that's the situation, we as the plaintiffs' bar
16  have a very good understanding about how this is
17  going to look and where the application is going
18  to be made.
19     And I think really we have to do something
20  with the other boroughs and the other counties to
21  insure that these people are protected.
22     My deepest concern is that these people are
23  going to lie floundering with even the best
24  intentions with immature counties that don't
25  appreciate the nature of the exigencies.

Page 15

Proceedings

1
2  docket for somebody in this kind of situation.
3  And what we have ascertained from speaking to the
4  court, is even with the best intention, they
5  cannot guarantee us a trial any time less than
6  six months from the point that the case is
7  actually transferred, and that it's probably
8  greater, but the very least is six months from
9  the time of the Note of Issue and the transfer of
10  the file, and there is no guarantee as to that.
11     THE COURT: I can't either. So I think that
12  I'm going to have to start moving the Westchester
13  cases.
14     MS. ASHKIN: Your Honor, you know what --
15     MS. HESSION: Let me point out --
16     MS. ASHKIN: Please let me speak.
17     MS. HESSION: He doesn't live in
18  Westchester.
19     MS. ASHKIN: It doesn't matter. I'm
20  speaking to his entire exposure and career
21  history.
22     But, your Honor, I just want to ask the
23  Court to indulge me in this. I understand what
24  the dockets look like here, and I would try very
25  hard to accommodate the Court and my clients in

Page 17

Proceedings

1
2      There is no question here that this man is
3  an insulator and suffering from advanced and
4  irreparable mesothelioma. And if I'm going to
5  get stuck in docket limbo, I'm never going to get
6  him a trial if he survives.
7      It's not an application that was made late
8  in the day. It was made very early on. And a
9  great deal of time has now passed and that's
10  water under the bridge for a man like this, and
11  I'm very concerned about that.
12     MS. HESSION: Let me point out that Miss
13  Ashkin has been in the forefront of getting case
14  management orders and getting asbestos dockets
15  done in the Fourth Judicial District, in the
16  Fifth Judicial District and all over the state.
17  There is no reason why the Ninth Judicial
18  District is any exception. People who live there
19  and were exposed there should bring their cases
20  there and there will be a docket.
21     MS. ASHKIN: There has been a historical
22  reliance of what our practice has been here. I
23  understood as the balance of us --
24     THE COURT: Unfortunately, we have many,
25  many more cases than we used to.

William L. Kutsch
Senior Court Reporter

Page 18

Proceedings

1
2    MS. ASHKIN:  Your Honor, this is a
3  particularly significant case.
4    THE COURT:  I'm sure it is.
5  Next case.
6    MS. HESSION:  Next one is --
7    THE COURT:  I'm going to see how many
8  Westchester cases there are.  If I have two or
9  three, I might keep them.  If it's more than
10  that, they are all going to Westchester and they
11  will get used to having a Westchester docket.
12    MS. ASHKIN:  Thank you for your
13  consideration.
14    MS. HESSION:  Your Honor, the next case is
15  another Baron & Budd case, the Frank Poletski
16  case.
17    In this case, we were originally -- it's a
18  medical objection.  We were originally provided
19  by plaintiffs with an affidavit dated May 22,
20  from a Dr. Kaplan advising that back in January,
21  Mr. Poletski had had a liver biopsy done, and
22  they determined that he had adenocarcinoma in his
23  liver tissue.  And Dr. Kaplan says that the
24  results of the path on that were that he had
25  metastatic adenocarcinoma with non small cell

Page 19

Proceedings

1
2  carcinoma of the lung as a probable primary
3  site.  We then asked for and were given the
4  original path report from that liver biopsy,
5  which in itself concludes, it says "These findings
6  adenocarcinoma -- well, it says "These findings
7  are not conclusive but support the diagnosis of
8  metastatic adenocarcinoma.  Possible primary
9  sites include non small cell carcinoma lung."  We
10  have seen nothing else to indicate that this
11  gentleman has a lung primary, in which case if he
12  doesn't, it's not going to be an asbestos-related
13  disease.  We have asked to see some proof that he
14  has some disease in his lungs and we have gotten
15  nothing.
16    THE COURT:  Okay.  I'm sure, if you don't
17  get something by the date of the trial, it will
18  be removed.
19    Any other cases?
20    MS. HESSION:  By the date of the trial, your
21  Honor?
22    THE COURT:  Yes.  No more Baron & Budd
23  cases.
24    Angelos cases?
25    MS. HESSION:  They are all resolved, your

Page 20

Proceedings

1
2  Honor.
3    THE COURT:  Early, Ludwick, Sweeney &
4  Strauss.
5    MS. HESSION:  We have a number of Early
6  cases.  The first one is Bartelli.  Defendants
7  have a forum objection.
8    Mr. Bartelli lives in Hampton, New Jersey, a
9  lifelong New Jersey resident.  His only exposure in
10  exposure whatsoever.  His only exposure in New
11  York State was a three-week period in the 1960's
12  when he worked at the Ruberoid plant in Vail's
13  Gate, which is up near Newburgh.  Everything else
14  was out of the state.
15    MR. STRAUSS:  I can't dispute that.
16  However, when he was working at the Ruberoid
17  plant, they were actively making vinyl asbestos
18  floor tiles, and he testified about the dumping.
19    THE COURT:  This is another upstate one.  So
20  we're upping our upstate numbers.
21    MR. STRAUSS:  I went to the Orange County
22  Clerk of the court on Monday to discuss this case
23  with them to see if they could handle this case.
24  And they told me that they never ever had an
25  asbestos case before.  The only one that they

Page 21

Proceedings

1
2  ever had they sent to Corning, which is 223 miles
3  away from here.  Now Vail's Gate is 70 miles from
4  here.  This is the closest courthouse that has
5  ever handled an asbestos case to Vail's Gate, New
6  York.
7    THE COURT:  I have too many of them.  I'm
8  sorry.
9    MR. STRAUSS:  May you hold this in
10  abeyance?
11    THE COURT:  Probably not.
12    MS. HESSION:  This gentleman has exposure in
13  New Jersey, your Honor.  He worked for Clinton
14  Plumbing throughout New Jersey.  He has a New
15  Jersey forum.
16    MR. STRAUSS:  He does have exposures in New
17  Jersey, but this location is where they were
18  actually manufacturing asbestos products.
19    THE COURT:  That's fine.  But it's not
20  here.  My jurisdiction is the five boroughs.
21  Butler.
22    MS. HESSION:  Butler, your Honor, this case
23  right now is stayed.  He died recently in
24  Virginia and I haven't receive anything from
25  plaintiffs indicating there has been a

6 (Pages 18 to 21)

William L. Kutsch
Senior Court Reporter

## Page 22

Proceedings

1  substitution, in which case I don't think we can
2  take any objection on this case. It's an
3  out-of-state death.
4      MR. STRAUSS: We sent a copy -- we already
5  amended the complaint, and we sent a copy to
6  Gary.
7      MS. HESSION: If you sent it to me, it would
8  have helped.
9      THE COURT: All right.
10     MS. HESSION: Your Honor, in this case, this
11 is also a forum objection.
12     Mr. Butler was exposed in Virginia and Ohio
13 power plants. The only alleged New York exposure
14 is when he worked for a short period of time at
15 the Time Life Building in New York City. That is
16 it. All his other exposures were in Virginia and
17 Ohio, and again, he lived and he died in
18 Virginia, your Honor, and there certainly are
19 many, many asbestos cases down in Virginia.
20     MR. STRAUSS: Your Honor, I look at the case
21 obviously a little bit different than that. The
22 only specific job site where Mrs. Butler knows
23 that Mr. Butler worked was at the Time Life
24 Building in New York and he worked there on the

## Page 23

Proceedings

1  new construction of the building as an
2  insulator. And we have sued a number of New York
3  defendants like Rockefeller Center Development
4  Corporation, Rockefeller Center Incorporated,
5  Rockefeller Group Incorporated, Time Life, and
6  Tishman Liquidators based upon their role in the
7  new construction. These are defendants that
8  could only be sued in New York State. They can't
9  be sued anywhere else. We don't know of any
10 other specific sites.
11     THE COURT: That one is okay. Butler is
12 okay.
13     Chioppi (phonetic).
14     MS. HESSION: No objection. It's a
15 carryover.
16     Next objection is in the Griffin case. This
17 is a forum objection also.
18     The plaintiff is a North Carolina resident.
19 All the exposure was in North Carolina. Mr.
20 Strauss said he had a statute problem. There,
21 also we agreed to toll the statute of limitations
22 from the date of the filing here in New York to
23 obviate any concern on their part. There is no
24 New York exposure, no New York connection

## Page 24

Proceedings

1  whatsoever.
2      THE COURT: What about Union Carbide?
3      MR. STRAUSS: It is our claim that during
4  the time period, she had 90 percent of her
5  exposure as an employee of Union Carbide and
6  exposure through her husband's clothing who also
7  worked at Union Carbide. Union Carbide was
8  headquartered in New York City at the time
9  period. The statute has gone where she lives in
10 North Carolina. The statute is not gone here.
11     THE COURT: Is Union Carbide suable in North
12 Carolina?
13     MS. HESSION: The plant where she worked is
14 in North Carolina.
15     MR. STRAUSS: And it has been closed for 20
16 or 30 years. And we feel, your Honor, that there
17 is sufficient contact, sufficient nexus in New
18 York State because it was her lifelong employer.
19     THE COURT: Wait. But she was never in New
20 York; right?
21     MS. HESSION: Never in New York.
22     MR. STRAUSS: She was never in New York.
23     MS. HESSION: No New York exposure.
24 Everything is in North Carolina.

## Page 25

Proceedings

1      MR. STRAUSS: The statute is gone. The
2  statute is gone and --
3      MS. HESSION: We have agreed to toll the
4  statute from the date you filed in New York.
5      THE COURT: Does Union Carbide agree?
6      MR. STRAUSS: Every party would have to
7  agree, but you are agreeing on what conditions?
8  We'll refile this case in Texas. If you want
9  this case refiled in Tyler, Texas, we'll refile
10 it in Tyler, Texas. But I don't think the
11 defendants are better off if the Texas courts
12 take the case, but you have to agree on the
13 record that you will let this case go to Texas.
14     THE COURT: What is wrong with North
15 Carolina?
16     MR. STRAUSS: The statute is gone in North
17 Carolina.
18     THE COURT: They are willing to waive it.
19     MR. STRAUSS: But they get to choose where
20 we file the lawsuit?
21     MS. HESSION: He doesn't like North
22 Carolina.
23     MR. STRAUSS: It's not fair for them to say
24 we will waive the statute, but only if it goes to

7 (Pages 22 to 25)

William L. Kutsch
Senior Court Reporter

**Page 26**

Proceedings

1
2  this state or that state. If they are going to
3  waive the statute, to get this case out of New
4  York, they should just waive the statute.
5      THE COURT: This case is out of New York.
6  You decide what to do with it.
7      Miller. Okay. That's a holdover.
8      MS. HESSION: Next one is Nash. There is a
9  forum objection in this case.
10      Mr. Nash also is a New Jersey resident. The
11  only alleged New York exposure was some brief
12  exposure at the Brooklyn Navy Yard. This
13  gentleman has been deposed. My clients aren't in
14  the case, but I'm told that at the deposition, it
15  was in the nature of two to three months at the
16  Brooklyn Navy Yard. The rest of his exposure is
17  all out of state.
18      And indeed, Mr. Strauss had represented to
19  me during one of our conferences with the Special
20  Master that he had only minor exposure in New
21  Jersey to a gasket, but I'm told by folks who
22  were at the deposition that there was substantial
23  ID in New Jersey during residential repair work
24  he did there of a number of defendants.
25      THE COURT: He was here in the Navy Yard. I

**Page 27**

Proceedings

1
2  will let him stay.
3      MR. STRAUSS: Thank you, your Honor.
4      THE COURT: Olin.
5      MR. STRAUSS: Olin is a case, your Honor --
6      MS. HESSION: The Olin case, we have
7  objected to that case on forum as well.
8      Mr. Olin lives in Greene, New York, and that
9  is in the Sixth Judicial District. All of his
10  exposure was in the Sixth Judicial District,
11  nothing at all here. He's never lived here,
12  never worked here. It's all the Sixth Judicial
13  District.
14      MR. STRAUSS: Before you write, may you hear
15  me one second?
16      He lives a hundred to 200 miles, from what I
17  could tell, from any jurisdiction where there has
18  ever been an asbestos case.
19      We agreed in writing yesterday to move this
20  case to Syracuse to Judge McCarthy. We have
21  offered that to the defendants because that is
22  the closest courthouse we could find and the
23  closest judge who we know would take the
24  case. In writing, we have offered for them to
25  have a transfer to Judge McCarthy. We never got

**Page 28**

Proceedings

1
2  an answer back. Please don't dismiss it.
3      THE COURT: I won't dismiss it. It's forum
4  non conveniens. I am moving it. I will just
5  send it to Syracuse.
6      MS. HESSION: At this point, we don't agree
7  to it. I don't know that there is venue there.
8  He doesn't live there and he never worked there.
9  He worked in the Sixth Judicial District.
10      MR. STRAUSS: One of the primary defendants
11  is Syracuse Supply Company, so we're okay there.
12      THE COURT: Utica isn't that far from
13  Syracuse.
14      Portugal.
15      MS. HESSION: Portugal, your Honor, is an
16  unusual case. We had a forum objection. This
17  gentleman is from Peru originally, apparently was
18  exposed there through his father who ran some
19  kind of a boiler plant or owned a boiler plant.
20  He did, however, when he was here in the United
21  States for a short time period supposedly work as
22  a maintenance man or electrician in some
23  Manhattan apartment buildings for a brief period
24  of time.
25      THE COURT: Where does he live now?

**Page 29**

Proceedings

1
2      MS. HESSION: Now he's living out of state
3  with his sister I think in Pennsylvania.
4      MR. STRAUSS: He lives in Pennsylvania.
5  But, your Honor, his exposure isn't anything even
6  close to what Cathi has said to your Honor. He
7  had -- his father owned a company that made water
8  heaters for hospitals that went outdoors. He
9  claims --
10      THE COURT: In New York?
11      MR. STRAUSS: That was in Lima. As a
12  child. But his only exposure in the United
13  States is in New York City as an electrician when
14  he first came here in 1975. He has no other
15  exposures in the United States outside of New
16  York City.
17      THE COURT: This doesn't sound like it
18  belongs here. There is no reason for this case
19  to be in New York.
20      MR. STRAUSS: All of his exposures in New
21  York, your Honor, a hundred percent -- I
22  shouldn't say that, 90 some-odd percent of his
23  exposures were in New York -- he was an
24  electrician in New York City -- and some exposure
25  we may not be able to prove in Lima. But he

William L. Kutsch
Senior Court Reporter

8 (Pages 26 to 29)

| | Proceedings |
|---|---|
| 1 | Proceedings |
| 2 | doesn't have exposure anywhere else.  There is |
| 3 | nowhere else to file this case.  He was an |
| 4 | electrician in New York City exposed to asbestos. |
| 5 | THE COURT:  All right.  Then we can keep it. |
| 6 | MR. STRAUSS:  I appreciate it. |
| 7 | MS. HESSION:  May we have an immediate |
| 8 | deposition of Mr. Portugal to verify that the |
| 9 | exposure allegations that Mr. Strauss is relaying |
| 10 | are, in fact, true? |
| 11 | MR. STRAUSS:  We'll attempt to get him |
| 12 | deposed as soon as possible.  He just went |
| 13 | through some very serious chemotherapy.  We have |
| 14 | informed the family of the issues that the |
| 15 | defendants have raised.  We have informed the |
| 16 | family that time is of the essence to get him |
| 17 | deposed, and we are going to do our best to |
| 18 | comply with the requirement to get him deposed as |
| 19 | soon as possible. |
| 20 | THE COURT:  Okay. |
| 21 | MS. HESSION:  We will come back if it turns |
| 22 | out that what has been relayed is not accurate. |
| 23 | THE COURT:  Okay. |
| 24 | MS. HESSION:  The only other objection in |
| 25 | non Weitz cases is a Greitzer case Solero, an |

1      Proceedings
2   esophageal cancer case.  It's non asbestos
3   disease.  We haven't been provided with anything
4   contrary.
5        THE COURT:  Did he smoke or drink?
6        MR. BELL:  Actually, it's now Law Offices of
7   Gene Locks.
8        THE COURT:  What happened?  He and Greitzer
9   split up?
10       MR. BELL:  No, just retired to New York and
11  New Jersey.
12       This case, your Honor, we did provide them
13  with an expert report from a pathologist
14  attributing his asbestos exposure in shipyards
15  and in New York City as a cause of his esophageal
16  cancer.  He had underlying disease.  He was
17  exigent.  This is a case where we have given them
18  before we were even supposed to an expert report
19  showing this is an asbestos-related disease.
20       THE COURT:  Esophageal?
21       MR. BELL:  With underlying disease, your
22  Honor.
23       THE COURT:  Asbestosis?
24       MR. BELL:  Underlying pleural disease.
25       MS. HESSION:  Such a case would have very

1      Proceedings
2   unique motion practice.  These medical issues are
3   not present in any other case.
4        MR. BELL:  It's like a lung cancer case.
5        THE COURT:  Esophageal is not a common
6   asbestos-related case.  Did this guy smoke and
7   drink?
8        MR. BELL:  We would like a Frye hearing on
9   that.
10       THE COURT:  I will have a Frye hearing
11  because I don't think -- I think we've got enough
12  in extremis cases.
13       MR. BELL:  Mrs. Solero shouldn't be punished
14  if other --
15       THE COURT:  Has he died?
16       MR. BELL:  He has since died, your Honor.
17       THE COURT:  When did he die?
18       MR. BELL:  April 4th.
19       THE COURT:  I think we will take it out of
20  the in extremis.
21       MR. BELL:  May I ask?  That's never been a
22  factor in other cases.
23       THE COURT:  When did I have an esophageal
24  case?
25       MS. HESSION:  Never.

1      Proceedings
2        THE COURT:  I have taken them all out.
3        MR. BELL:  I have given an expert report
4   showing that it's attributable to his asbestos
5   exposure.
6        THE COURT:  Guess what.  I don't agree with
7   it.  Appeal.  I'm not keeping it.  I make the
8   rulings.  You appeal.
9        MS. HESSION:  That's it for the non Weitz
10  cases, your Honor.
11       THE COURT:  Dearie.  Levy Phillips.
12       MS. HESSION:  Those have all been worked
13  out.
14       THE COURT:  Okay.
15       MS. HESSION:  We are down to Weitz now.  And
16  Wilentz is all resolved now too, your Honor.
17       THE COURT:  Baxter, Beck, Camisa and Coohil
18  are not here.
19       MR. BROMBERG:  Your Honor, we have worked it
20  out on the medical issues, venue issues, but on
21  the medical, there are only three present
22  objections.  We have worked it out with
23  plaintiffs' counsel and the Special Master.  We
24  have withdrawn some objections, and some cases
25  they have been withdrawn from the group.

9 (Pages 30 to 33)

Exhibit B

CAUSE NO. 01-454-D

| | |
|---|---|
| LOUIS BARLETTA AND MARY JANE BARLETTA | § IN THE DISTRICT COURT OF |
| Plaintiffs, | § |
| V. | § |
| | § |
| AMERICAN CYANAMID, AMTICO INTERNATIONAL, INC., ABB LTD., AC&S, INC., a/k/a ARMSTRONG CONTRACTING & SUPPLY INC., AP GREEN INDUSTRIES, A.W. CHESTERTON CO., BABCOCK BORSIG POWER INC. (Individually and as Successor to the DB RILEY INC and RILEY STOKER COMPANY), BONDEX INTERNATIONAL, INC., BORG WARNER CORPORATION, BURNHAM CORPORATION (Individually and as Successor to KEWANEE BOILER), C.L. ZIMMERMAN CO., CERTAINTEED CORP., CONGOLEUM CORPORATION, CRANE COMPANY (Individually and as Successor to JENKINS BROS, AND WEINMAN PUMP MANUFACTURING COMPANY), CROWN CORK & SEAL COMPANY, INC., DANA CORPORATION, THE FLINTKOTE COMPANY, FOSTER WHEELER ENERGY CORP., GARLOCK, INC., GENERAL ELECTRIC COMPANY, GENERAL REFRACTORIES COMPANY, GEORGIA-PACIFIC CORPORATION, GOODALL RUBBER CO., GOULDS PUMPS, INC., GUARDLINE, INC., HALLIBURTON CO., DRESSER INDUSTRIES, Individually, and as Successor by Merger to HARBISON WALKER REFRACTORIES, HOMASOTE COMPANY, HONEYWELL INTERNATIONAL, INC., f/k/a ALLIED SIGNAL, INC.(Allied Corporation), f/k/a THE BENDIX CORPORATION, IMO INDUSTRIES, INC., ITT INDUSTRIES, INC. (Individually and as Successor to ITT FLUID PRODUCTS CORP. AND ITT GRINELL CORP.), KAISER REFRACTORIES, | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § KLEBERG COUNTY, TEXAS 105th JUDICIAL DISTRICT |

of Kaiser Aluminum and Chemical Corporation, §
KELSEY-HAYES COMPANY, MAREMONT §
CORPORATION, Individually, and as a §
Subsidiary of ARVIN INDUSTRIES, INC., §
METROPOLITAN LIFE INSURANCE §
COMPANY, MORTON INTERNATIONAL, §
INC., which by reorganization assumed certain §
business obligations of MORTON THIOKOL, §
INC., Successor-in-Interest to the former §
THIOKOL CORPORATION and its former §
FRICTION DIVISION, NORTH AMERICAN §
REFRACTORIES CO., OWENS-ILLINOIS, §
INC. PECORA CORPORATION, PENTAIR, §
INC. (Individually and as Successor to §
AURORA PUMP COMPANY), PLIBRICO §
COMPANY, QUIGLEY CO., RHONE- §
POULENC AG COMPANY, INC., Successor- §
in-interest to Amchem Products, Inc., f/d/b/a §
Benjamin Foster, THERMWELL PRODUCTS §
CO., INC., 3M COMPANY, UNION §
CARBIDE, UNIROYAL CO., and §
§

Defendants.

## PLAINTIFFS' THIRD AMENDED PETITION AND JURY DEMAND

TO THE HONORABLE COURT:

COMES NOW, LOUIS BARLETTA and MARY JANE BARLETTA, hereinafter referred to

as "Plaintiffs," complaining of the various Defendants listed below and for causes of action would

respectfully show the Court and Jury as follows:

1.  This is an asbestos-related disease case. Plaintiffs will move to have it proceed under Level III

    of Rule 190 of the Texas Rules of Civil Procedure.

2.  Plaintiffs, LOUIS BARLETTA and MARY JANE BARLETTA, would show that Mr. Barletta

    (hereinafter referred to as "Plaintiff") was employed in various facilities in and around the State

    of Texas during which time he was exposed to asbestos dust and/or fibers.



**MARTHA I. SOLIZ**
**DISTRICT CLERK, KLEBERG COUNTY**

P.O. Box 312
Kingsville, Texas 78364-0312

Tel: 361-595-8561
Fax: 361-595-8525

CHIEF DEPUTY
Lula Belle Smart

CHILD SUPPORT DIVISION
Angela Rico-Cortez

Tel: 361-595-8562

# COUNTY of KLEBERG

### KINGSVILLE, TEXAS

December 3, 2002

COUNTY CLERK, NEW YORK COUNTY
COUNTY COURTHOUSE
60 CENTRE STREET
NEW YORK, N.Y.   10007

    RE:  INDEX NO. 01-105781
       IN RE:  NEW YORK CITY
           ASBESTOS LITIGATION

**FILED**

**[DEC 1 2 2002]**

NEW YORK
COUNTY CLERK'S OFFICE

Dear Honorable Clerk of New York County:

    This is to acknowledge receipt of the above referenced
Cause Number.  Enclosed are the extra copies provided with
our file-marked stamped on each pleading and Order.  Our
Cause No. is 01-454-D, styled LOUIS BARLETTA, ET AL vs.
AMERICAN CYANAMID, ET AL.

    Thank you for your time.

               Sincerely,

               Martha I. Soliz
               District Clerk
               Kleberg County, Texas

:mis

EXHIBIT D

**MARTHA I. SOLIZ**
**DISTRICT CLERK, KLEBERG COUNTY**

P.O. Box 312
Kingsville, Texas 78364-0312

Tel: 361-595-8561
Fax: 361-595-8525

CHIEF DEPUTY
Lula Belle Smart

CHILD SUPPORT DIVISION
Angela Rico-Cortez

Tel: 361-595-8562



# COUNTY of KLEBERG
## KINGSVILLE, TEXAS

January 5, 2004

Mr. Jeff Cohan, Library Director
Carpenter, Bennett & Morrissey
Law Offices
Three Gateway Center
100 Mulberry Center
Newark, NJ  07102-4079

Re: Request for Docket
    01-454-D
    Barletta v. American Cyanmid, et al

Dear Mr. Cohan:

    Per our conversation on the phone, enclosed is the docket sheet for 01-454-D. A total of 5 copies and one certification equals the $3.00 you provided. I've attached your receipt to the copies for your convenience. Please don't hesitate to call if you need information from our county.

                    Sincerely,

                    MARTHA I. SOLIZ, District Clerk
                    KLEBERG COUNTY
                    TEXAS

                    BY:
                    Deputy

# CIVIL DOCKET

DOCKET SHEET # 1

CASE NO. 01-454-D

| NUMBER OF CASE | NAMES OF PARTIES | ATTORNEYS | Kind of Action and Party Demanding Jury | DATE OF FILING | | |
|---|---|---|---|---|---|---|
| | | | | Mo. | Day | Year |
| 01-454-D | LOUIS BARLETTA AND MARY JANE BARLETTA | SCOTT M. HENDLER    Plf. | OTHER CIVIL | 07 | 19 | 01 |
| | vs. | | | Jury Fee, paid / 30.00 | | |
| | AMERICAN CYANAMID, ET AL | | | Premrty, paid by S. Hendler/T. Dow | | |
| | | Dft. | | Jury No. | | |

| DATE OF ORDERS | | | We Stenographer Used? | ORDERS OF COURT | MINUTE BOOK | | PROCESS |
|---|---|---|---|---|---|---|---|
| Mo. | Day | Year | | | Vol. | Page | |
| | | | | | | | |
| August | 2 | 2001 | | Rick Ojeda allowed to serve Civil Process. | 76 | 380 | |
| Oct. | 2 | 2001 | | Order on Defendant, Quigley's, Unopposed Motion to Withdraw and for Substitution of Counsel entered this date. Timothy J. Hogan | | | |
| | | | | substituted for Gary Elliston. | 76 | 392 | |
| October | 29 | 2001 | | Order on defendant, Kelsey-Hayes Company's, Motion for Admission Pro Hac Vice granted. Daniel Rustmann to represent Defendant. | 77 | 060 | |
| Nov. | 7 | 2001 | | Order on Pentair, Inc.'s Unopposed Motion For Leave To File Comprehensive Answer to all Cross-Actions entered this date. | 77 | 74 | |
| Dec. | 10 | 200 | | Order of Non-Suit granted as to Gasket Holdings; Federal Mogul Corp.; U.S. Mineral Products Co.; Pneumo Abex Corp.; Wagner Electric Corp.; and T & N, P.L.C. | | | |
| | | | | Order on defendant, Morton International's, Motion to Withdraw and Substitute Counsel Granted. J. Mark Penley substituted for Kathryn Hermes. | | | |
| | | | | Order Granting Motion to Withdraw and Designation of Lead Counsel entered. Laura Frase withdraws and George Pappas is Lead Counsel for Defendant Pentair, Inc. | ✓ | | |
| | | | | Order of Non-Suit as to Defendant Amtico International Inc. granted. | 77 | 141 | P1143A-C |
| Jan. | 25 | 2002 | | Order of Non-Suit as to Gasket Holdings; Federal Mogul Corp; US Mineral Products Co; Pneumo Abex Corp; Wagner Electric Corp; Moog Automotive; Federal Mogul Corp. and T&N, PLC granted and entered this date. | 77 | 189 | P200-201 |

vs.   No. 01-454-D

AMERICAN CYANAMID, ET AL

| Mo. | Day | Year | ORDERS OF COURT | Vol. | Page |
|---|---|---|---|---|---|
| Feb. | 28 | 2002 | Order Nonsuiting Kelsey-Hayes Company entered this date. | 77 | 242 |
| March | 1 | 2002 | Status Review Hearing set for March 21, 2002 at 10:00 a.m. | 77 | 244 |
| March | 8 | 2002 | Status Review Hearing re-set for March 27, 2002 at 10:00 a.m. | 77 | 274 |
| March | 21 | 2002 | Status Review Hearing re-set to April 15, 2002 at 9:00 am in Corpus Christi, Nueces Co., Texas | 77 | 282 |
| April | 15 | 2002 | Pre-Trial Conference set for October 25, 2002 at 10:30 a.m. Jury Trial set for November 4, 2002 at 8:30 a.m. | 77 | 30 None |
| April | 19 | 2002 | Order of Non-Suit as to Owens Illinois Inc. entered this date. | 77 | 326 √77 P.332... |
| MAY 2 8 2002 | | | _(handwritten)_ | 78 | 15 |
| June | 5 | 2002 | Order of Non-Suit as to C. L. Zimmerman Company entered this date. Order on Defendant, Crane Company's, Motion for Substitution of Counsel granted. Robert L. Adams substituted for Rodney H. Lawson. | 78 | 23 √78 P.23A |
| JUN 2 1 2002 | | | _(handwritten)_ | 78 | 35 √78 P.435 |
| July 29 | | 2002 | Order of Non-Suit entered as to Defendant, 3M (Minnesota Mining & Manufacturing). Order of Non-Suit entered as to Defendant, ABB Ltd. Order Non-Suiting Without Prejudice Defendant, Burns International Services Corp., Formerly Known as Borg-Warner Corporation entered this date | 78 | P.05A-B  √78 P.05C |
| SEP 2 5 2002 | | | _(handwritten)_ | 78 | 96 |
| | | | General Electric Company, entered. | 78 | 202 √78 P.205A,B |
| Sept. | 27 | 2002 | Order Granting Plaintiffs' Motion For Sanctions Against Garlock Inc. and Motion to Compel the Deposition of a Corporate Representative Entered. Order Denying Defendants. Union | | √78 P.208A |
| | | | Carbide's, Amchem's and Certainteed's, Motion For Summary Judgment entered. | 78 | 200 √78 P.208B |

DOCKET SHEET #2

CASE NO. 01-454-D

# CIVIL DOCKET

| DATE OF FILING | | |
|---|---|---|
| Mo. | Day | Year |
| 07 | 19 | 01 |

Jury Fee. 30.00
Paid by S. Hendler

| | | |
|---|---|---|
| | 8-31 | 8-01 |
| | 7-31-01 | 30.00 |

Jury No.

| NUMBER OF CASE | NAMES OF PARTIES | ATTORNEYS | Kind of Action and Party Demanding Jury |
|---|---|---|---|
| 01-454-D | LOUIS BARLETTA AND MARY JANE BARLETTA | SCOTT M. HENDLER | OTHER CIVIL |
| | vs. | Plf. | |
| | AMERICAN CYANAMID, ET AL | Dft. | |

| DATE OF ORDERS | | | ORDERS OF COURT | MINUTE BOOK | | PROCESS |
|---|---|---|---|---|---|---|
| Mo. | Day | Year | | Vol. | Page | |
| Oct. | 16 | 2002 | Order Overruling Objection and Denying Motion By Defendant Garlock Concerning Evidence of Chrysotile Asbestos entered. | 78 | 325 | √78 P/232-3 |
| Oct. | 3 | 2002 | Order Denying Garlock Inc.'s and Certainteed Corp.'s Motion To Quash the Deposition of Louis Barletta entered. Motion To Admit Attorney, Ken Wilson of South Carolina, PRO HAC VICE Granted. | 78 | 216 | √78 P/216 |
| Oct. | 31 | 2002 | Agreed Order of Partial Dismissal Without Prejudice as to Defendant, American Cyanamid Company entered. | 79 | 3 | √79 P/69 |
| Nov. | 6 | 2002 | Pre-Trial Conference set for March 21, 2003 at 10:30 a.m. Jury Trial set for April 7, 2003 at 8:30 a.m. | 79 | 9 | |
| Nov. | 7 | 2002 | Order Granting Plaintiff's Motion for Continuance from docket setting of November 4, 2002 entered. Agreed Order of Non-Suit and Dismissal of Claims as to Defendant Halliburton Company entered. | 79 | 12 | √79 P/29A √79 P/28SC |
| Nov. | 26 | 2002 | Docket Control Order entered. | 79 | 43 | |
| Dec. | 2 | 2002 | Order of Non-Suit as to Defendant Union Carbide Corporation entered. | 79 | 49 | √79 P/50 B-C |
| Dec. | 3 | 2002 | Order of Non-Suit as to Defendant Foster Wheeler Energy Co. entered. Order Dismissing Claims and Cross-Claims Against General Electric Company entered. Motion PRO HAC VICE of Curtis R. Bailey of Illinois Granted. | 79 | 50 | √79 P/50A √79 P/50B |
| Dec. | 20 | 2002 | Order Granting Plaintiffs' Unopposed Motion For a Letter Rogatory To Take The Oral Deposition of Tom Wise with Subpoena Duces Tecum entered. | 79 | 96 | √79 P/97-98 |

LOUIS BARLETTA AND MARY JANE BARLETTA

vs.    No.  01-454-D

AMERICAN CYANAMID, ET AL

| DATE OF ORDERS | | | ORDERS OF COURT | MINUTE BOOK | |
|---|---|---|---|---|---|
| Mo | Day | Year | | Vol. | Page |
| JAN | 0 2 | 2003 | *Hearing on the Motion to Compel; order to produce by 2.03.23; 2 ____* | 79 | 103 |
| | | | *to be filed —* | | |
| | JAN 0 9 | 2003 | *An Hrg on acts to Goodall; WJS. Hrg set 2.21.03@ 10mm; to file response* | | |
| | | | | 79 | 0/ 113-114 |
| | | | *Hrg 2.18.03.* Agreed Order Granting Plaintiffs' Motions to Compel Answers to Master Set and For Leave To File Additional Discovery Against Defendant Goodall Rubber entered.  Order Granting Plaintiffs' Motion To Compel Answers To Discovery From Defendant IMO Industries, Inc. entered. | 79 | 110 0/ 115-116 |
| Feb. | 6 | 2003 | Order on Defendant, Goodall Rubber Company's, Application for Issuance of Commission for Oral Deposition of Tom Wise granted.  Order on Defendant, Quigley's, Unopposed Motion to Withdraw and for Substitution of Counsel granted.  Sharla J. Frost substituted for Timothy J. Hogan.  Agreed Order of Partial Dismissal as to Defendant, Thermwell Products Co., Inc., entered. | 79 | 0/ 221-222 |
| | | | | 79 | 0/ 223-226 |
| | | | | 79 | 229 |
| Feb. | 21 | 2003 | Order of Dismissal of Cross-Actions Against Defendant, Pentair, Inc., entered. | 79 | 244 0/ 439L |
| Feb. | 24 | 2003 | Order of Dismissal of all Cross-Actions filed by any Defendant against Defendant, Pecora Corporation, entered. | 79 | 255 0/ 445-446 |
| MAR 3 1 2003 | | | *Partial Order, to Congoleum; M. Leg to file briefs for injunction is granted; All matter is ____* | 80 | 12 0/ 6A |
| April | 10 | 2003 | Agreed Order as to Notice of Non-Suit against the Defendant, Quigley Company, Inc. entered. | 80 | 12 0/ 6A |
| April | 17 | 2003 | Pre-Trial Conference set for May 5, 2003 and May 6, 2003 at 8:30 a.m. | 80 | 35 |
| May | 1 | 2003 | Order Granting Non-Suit as to Defendant, Guard-Line Inc., entered. | 80 | 55 0/ 570 |
| MAY 0 5 2003 | | | *Pretrial hearing  ____* | 80 | 62 |
| May | 1 | 2003 | Order on Plaintiffs Motion for PRO HAC VICE admission granted.  Attorney Charles Patrick is permitted as attorney of record for Plaintiffs. | 80 | 55 0/ 572E |
| May | 5 | 2003 | Order on Plaintiffs Motion for PRO HAC VICE admission granted.  Attorney Christian Hartley is permitted as attorney of record for Plaintiffs. | 80 | 69 0/ 05A |
| May | 12 | 2003 | Order Charging Plaintiffs' Expert Costs to Defendant Congoleum Corporation entered.  Order on Plaintiffs' Motion to Exclude Witnesses of Defendant Congoleum Corporation entered. | 80 | 90 0/ 71-72 |

DOCKET SHEET #2

# CIVIL DOCKET

**CASE NO.** 01-454-D

| NUMBER OF CASE | NAMES OF PARTIES | ATTORNEYS | Kind of Action and Party Demanding Jury | DATE OF FILING Mo. | Day | Year |
|---|---|---|---|---|---|---|
| 01-454-D | LOUIS BARLETTA AND MARY JANE BARLETTA | Scott M. Hendler Pltf. | OTHER CIVIL | 07 | 19 | 01 |
| | vs. | | | Jury Fee, | | |
| | AMERICAN CYANAMID, ET AL | Dft. | | Paid by | | |
| | | | | Jury No. | | |

| | DATE OF ORDERS Mo. | Day | Year | Was Stenographer Used? | ORDERS OF COURT | MINUTE BOOK Vol. | Page | PROCESS |
|---|---|---|---|---|---|---|---|---|
| Heather | MAY | 23 | 2003 | | Hrg by telephone re Goodall's M/Clarify & M/Protective Order. Without hearing argument, but having read the motions and noting the date of filing of each, Ct denies each motion. The Ct's previous Order remains in effect. | 80 | 0 | |
| Koriann; Heather pm | JUN | 19 | 2003 | | Hearing; Daubert/Robinson hrg re Dr. Longo. Recess. | 80 | 164 | |
| Heather | JUL | 28 | 2003 | | Hearing resumed. D's M/Contin is denied. | | | |
| | August | 5 | 2003 | | Order Denying Defendants' Motions to Exclude the Testimony of William Longo, PH.D. entered this date. Agreed Order of Partial Non-Suit as to Defendant, CertainTeed Corporation entered. | | | |
| | Oct. | 6 | 2003 | | Agreed Order of Dismissal With Prejudice as to Defendant, Goodall Rubber Company, entered. | | | |
| Heather | OCT | 07 | 2003 | | Hrg on A Chesterton's M/Vacate Order (signed on Aug. 5, 2003) denying A Chesterton's M/Exclude testimony of Dr Longo. Argument. Ct denies Motion. | | | |
| | Nov. | 12 | 2003 | | Order Denying Defendant A. W. Chesterton's Motion To Vacate The Court's August 5, 2003 Order entered this date. | | | |

STATE OF TEXAS
COUNTY OF KLEBERG

I certify that the foregoing is a true and correct copy
of the original record on file in my office. Given
under my hand and seal of the court at my office in
Kingsville, Texas, this _____ _____ 5, 2004

MARTHA I. SOLIZ, DISTRICT CLERK

By _____ Deputy

**EXHIBIT E**

CAUSE NO. 01-454-D

**FILED**

2001 JUL 19 PM 2: 24

LOUIS BARLETTA AND MARY JANE
BARLETTA

IN THE DISTRICT COURT OF LIZ
DIST. CLERK KLEBERG CTY.

      Plaintiff,

BY_____ DEPUTY

V.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

AMERICAN CYANAMID, AMTICO
INTERNATIONAL, INC., ABB LTD.,
AC&S, INC., a/k/a ARMSTRONG
CONTRACTING & SUPPLY INC.,AP
GREEN INDUSTRIES, A.W. CHESTERTON
CO., BABCOCK BORSIG POWER INC.
(Individually and as Successor to the DB
RILEY INC and RILEY STOKER
COMPANY), BONDEX INTERNATIONAL,
INC., BORG WARNER CORPORATION,
BRIDGESTONE FIRESTONE, INC.,
BURNHAM CORPORATION (Individually
and as Successor to KEWANEE BOILER),
C.L. ZIMMERMAN CO., CERTAINTEED
CORP., DAIMLER CHRYSLER
CORPORATION, CONGOLEUM
CORPORATION, CRANE COMPANY
(Individually and as Successor to JENKINS
BROS, AND WEINMAN PUMP
MANUFACTURING COMPANY), CROWN
CORK & SEAL COMPANY, INC., DANA
CORPORATION, FERODO AMERICA,
INC., GASKET HOLDINGS, Individually, and
as Successor-in-Interest to FLEXITALLIC,
INC., a/k/a FLEXITALLIC GASKET
COMPANY, THE FLINTKOTE COMPANY,
FORD MOTOR COMPANY, FOSTER
WHEELER ENERGY CORP., GARLOCK,
INC., GENERAL ELECTRIC COMPANY,
GENERAL MOTORS CORPORATION,
GENERAL REFRACTORIES COMPANY,
GEORGIA-PACIFIC CORPORATION,
GOODALL RUBBER CO., GOULDS
PUMPS, INC., GUARDLINE, INC.,
HALLIBURTON CO.,HARBISON WALKER
REFRACTORIES, HOMASOTE
COMPANY, HONEYWELL
INTERNATIONAL, INC., f/k/a ALLIED
SIGNAL, INC.(Allied Corporation), f/k/a THE

KLEBERG COUNTY, TEXAS

_____ JUDICIAL DISTRICT

F:\Asbestos\Hendler\Barletta\01DraftPetition.wpd

BENDIX CORPORATION, IMO INDUSTRIES, INC., ITT INDUSTRIES, INC. (Individually and as Successor to ITT FLUID PRODUCTS CORP. AND ITT GRINELL CORP.),KAISER REFRACTORIES, a Division of KaiserAluminum and Chemical Corporation,KELSEY-HAYES COMPANY, MAREMONT CORPORATION, Individually, and as a Subsidiary of ARVIN INDUSTRIES, INC., METROPOLITAN LIFE INSURANCE COMPANY, MOOG AUTOMOTIVE, as Successor to WAGNER ELECTRIC, MORTON INTERNATIONAL, INC., which by reorganization assumed certain business obligations of MORTON THIOKOL, INC., Successor-in-Interest to the former THIOKOL CORPORATION and its former FRICTION DIVISION, NORTH AMERICAN REFRACTORIES CO., OWENS-ILLINOIS, INC. PECORA CORPORATION, PENTAIR, INC. (Individually and as Successor to AURORA PUMP COMPANY), PLIBRICO COMPANY, PNEUMO ABEX CORPORATION, Individually, and as a Subsidiary of FEDERAL-MOGUL CORPORATION, f/k/a ABEX CORPORATION, QUIGLEY CO., RHONE-POULENC AG COMPANY, INC., Successor-in-interest to Amchem Products, Inc., f/d/b/a Benjamin Foster, THERMWELL PRODUCTS CO., INC., T&N, P.L.C., 3M COMPANY, UNION CARBIDE, U.S. MINERAL PRODUCTS COMPANY, UNIROYAL CO., and WAGNER ELECTRIC CORPORATION

       Defendants.

## PLAINTIFFS' ORIGINAL PETITION AND JURY DEMAND

TO THE HONORABLE COURT:

       COMES NOW, LOUIS BARLETTA and MARY JANE BARLETTA, hereinafter referred to

as "Plaintiffs," complaining of the various Defendants listed below and for causes of action would respectfully show the Court and Jury as follows:

1.   This is an asbestos-related disease case.  Plaintiffs will move to have it proceed under Level III of Rule 190 of the Texas Rules of Civil Procedure.

2.   Plaintiffs, LOUIS BARLETTA and MARY JANE BARLETTA, would show that Mr. Barletta (hereinafter referred to as "Plaintiff") was employed in various facilities in and around the State of Texas during which time he was exposed to asbestos dust and/or fibers.

3.   Defendants herein reside in Kleberg County, maintain principal offices in Kleberg County, and/or have agents in Kleberg County or the cause of action, in whole or in part, occurred in Kleberg County.  Therefore, venue properly lies in Kleberg County.

4.   The damages sought by Plaintiffs, exclusive of interests and costs, exceed the minimum jurisdictional limits of the Court.

5.   Defendant, AMERICAN CYANAMID,  may be served with process through its registered agent, Prentice Hall Corp Systems, 800 Brazos St., Austin, Texas.

6.   Although Defendant, AMTICO INTERNATIONAL INC., has at all times relevant to this litigation conducted business in this State and is required to maintain a registered agent for service of process in this State, it has not designated such an agent.  Therefore, said Corporation may be served with process through its home office, 6480 Roswell Road, Atlanta, Georgia 30328, pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac.& Rem. Code §17.041-.045.  Defendant, AMTICO, may be served through the Secretary of State for the State of Texas.

7.    Although Defendant, ABB LTD, has at all times relevant to this litigation conducted business in this State and is required to maintain a registered agent for service of process in this State, it has not designated such an agent.  Therefore, said Corporation may be served with process through its home office, CH 8050, Zurich, Switzerland, V8, pursuant to the Hauge Convention.

8.    Defendant, AC&S, INC., a/k/a ARMSTRONG CONTRACTING & SUPPLY INC.,  may be served with process through its registered agent, C.T. Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas, 75201.

9.    Defendant, A.P. GREEN INDUSTRIES INC., may be served with process through its registered agent, C.T. Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas, 75201.

10.    Defendant, A W CHESTERTON COMPANY, may be served with process through its registered agent, C.T. Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas, 75201.

11.    Defendant, BABCOCK BORSIG POWER, INC., may be served through with process through its registered agent, C. T. Corporation System, 1021 Main St., Ste. 1150, Houston, Texas, 77002.

12.    Although Defendant, BONDEX INTERNATIONAL, INC., has at all times relevant to this litigation conducted business in this State and is required to maintain a registered agent for service of process in this State, it has not designated such an agent.  Therefore, said Corporation may be served with process through its home office, 3616 Scarlet Oak Blvd., St. Louis, MO 63122, pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac.& Rem. Code

§17.041-.045.  Defendant, BONDEX INTERNATIONAL, INC., may be served through the Secretary of State for the State of Texas.

13.   Although Defendant, BORG WARNER CORPORATION, has at all times relevant to this litigation conducted business in this State and is required to maintain a registered agent for service of process in this State, it has not designated such an agent.  Therefore, said Corporation may be served with process through its home office, 200 S. Michigan Ave., Chicago, IL 60604, pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac.& Rem. Code §17.041-.045.  Defendant, BORG WARNER CORPORATION, may be served through the Secretary of State for the State of Texas.

14.   Defendant, BRIDGESTONE FIRESTONE, INC., successor to Firestone Tire and Rubber, Co., may be served with process through its registered agent, C.T. Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas, 75201.

15.   Although Defendant, BURNHAM CORPORATION, has at all times relevant to this litigation conducted business in this State and is required to maintain a registered agent for service of process in this State, it has not designated such an agent. Therefore, said Corporation may be served with process through its home office, P.O. Box 3079, Lancaster, PA 17604, pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac.& Rem. Code §17.041-.045.  Defendant, BURNHAM CORPORATION, may be served through the Secretary of State for the State of Texas. Said corporation is being sued individually and as successor-in-interest to Kewanee Boilers.

16. Although Defendant, C.L. ZIMMERMAN CO., has at all times relevant to this litigation conducted business in this State and is required to maintain a registered agent for service of process in this State, it has not designated such an agent. Therefore, said Corporation may be served with process through its home office, 5493 Union Centre Dr., West Chester, OH 45069, pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac.& Rem. Code §17.041-.045. Defendant, C.L. ZIMMERMAN CO., may be served through the Secretary of State for the State of Texas.

17. Defendant CERTAINTEED, may be served with process through its registered agent, C.T. Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

18. Defendant, DAIMLER CHRYSLER CORPORATION, may be served with process through its registered agent, Chrysler Motor Corp., 1601 Elm Street, Dallas, Texas, 75201.

19. Defendant, CONGOLEUM CORPORATION, may be served with process through its registered agent, Prentice Hall Corporation, 800 Brazos St., Austin, Texas 78701.

20. Although Defendant, CRANE COMPANY, Individually and as Successor to JENKINS BROS., AND WEINMAN PUMP MANUFACTURING COMPANY, has at all times relevant to this litigation conducted business in this State and is required to maintain a registered agent for service of process in this State, it has not designated such an agent. Therefore said corporation may be served with process through its home office, 100 First Stamford Place Stamford, CT, 06902, pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac.& Rem. Code §17.041-.045. Defendant, CRANE COMPANY, may be served through the Secretary of State for the State of Texas. Said corporation is being sued individually and as successor-in-

interest to JENKINS BROS., AND WEINMAN PUMP MANUFACTURING COMPANY.

21. Defendant, CROWN CORK & SEAL COMPANY, INC., may be served with process through its registered agent, C.T. Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas, 75201.  Said corporation is being sued individually and as successor-in-interest to Mundet Cork Company.

22. Defendant, DANA CORPORATION, may be served with process through its registered agent, C.T. Corporation Systems, 350 North St. Paul Street, Suite 2900, Dallas, Texas, 75201.

23. Defendant FERODO, Successor to Nuturn Corporation, may be served with process through its registered agent, C.T. Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

24. Defendant, GASKETS HOLDINGS, INC., f/k/a FLEXITALLIC INC.,  may be served with process through its registered agent, C.T. Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas, 75201.

25. Although Defendant, THE FLINTKOTE COMPANY, has at all times relevant to this litigation conducted business in this State and is required to maintain a registered agent for service of process in this State, it has not designated such an agent.  Therefore, said corporation may be served with process through its home office, 50 California Street, 34th Floor, San Francisco, California, 94111, pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code §

17.041-.045. Defendant THE FLINTKOTE COMPANY may be served through the Secretary of State for the State of Texas.

26.     Defendant, FORD MOTOR COMPANY, may be served with process through its registered agent, C.T. Corporation Systems, 350 North St. Paul Street, Suite 2900, Dallas, Texas, 75201.

27.     Defendant, FOSTER WHEELER ENERGY CORPORATION, may be served by with process through its registered agent, United States Corporation Co., 800 Brazos St., Austin, Texas 78701.

28.     Defendant, GARLOCK, may be served with process through its registered agent, C.T. Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas, 75201.

29.     Defendant, GENERAL ELECTRIC COMPANY, may be served with process through its registered agent, C. T. Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201.

30.     Defendant, GENERAL MOTORS, may be served with process through its registered agent, C. T. Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201.

31.     Although Defendant, GENERAL REFRACTORIES COMPANY, has at all times relevant to this litigation conducted business in this State and is required to maintain a registered agent for service of process, it has not designated such an agent. Therefore, said corporation may be served with process through its home office, 225 City Line Avenue, Suite 114, Bala Cynwyd, PA 19004, pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code §§

17.041-.045.  Defendant GENERAL REFRACTORIES COMPANY may be served through the Secretary of State for the State of Texas.

32.    Defendant, GEORGIA-PACIFIC CORPORATION, may be served with process through its registered agent, C.T. Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas, 75201.  This corporation is being sued individually and as successor-in-interest to Bestwall Gypsum Company.

33.    Defendant, GOODALL RUBBER COMPANY, may be served with process through its registered agent, C.T. Corporation System, 350 North St. Paul St., Dallas, Texas 75201.

34.    Although Defendant, GOULDS PUMPS, INCORPORATED, has at all times relevant to this litigation conducted business in this State and is required to maintain a registered agent for service of process, it has not designated such an agent.  Therefore, said corporation may be served with process through its home office, 2881 East Bayard Street, Seneca Falls, New York 13148, pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code §§ 17.041-.045.  Defendant GOULDS PUMPS, INCORPORATED may be served through the Secretary of State for the State of Texas.

35.    Defendant GUARDLINE, INC. may be served with process through its agent, H. Lee Stanley, 215 South Louise Street, Atlanta, Texas 75551.

36.    Defendant HALLIBURTON COMPANY, Individually and as Successor to Dresser Industries and Worthington Corporation, may be served with process through its registered agent, C.T. Corporation System, 350 North St. Paul St., Dallas, Texas 75201.

37.    Defendant HARBISON-WALKER REFRACTORIES COMPANY'S, Formerly a Division

of INDRESCO, INC., may be served with process through its registered agent, Prentice-Hall, 400 North St. Paul Street, Dallas, Texas 75201.

38.    Although Defendant, HOMASOTE COMPANY, has at all times relevant to this litigation conducted business in this State and is required to maintain a registered agent for service of process, it has not designated such an agent. Therefore, said corporation may be served with process through its home office, 932 Lower Ferry Road, West Trenton, New Jersey 08628-0240, pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code §§ 17.041-.045. Defendant HOMASOTE COMPANY may be served through the Secretary of State for the State of Texas.

39.    Although Defendant, HONEYWELL INTERNATIONAL, INC., f/k/a ALLIED SIGNAL, INC. (Allied Corporation), f/k/a THE BENDIX CORPORATION, has at all times relevant to this litigation conducted business in this State and is required to maintain a registered agent for service of process, it has not designated such an agent. Therefore, said corporation may be served with process through its home office, P.O. Box 17737, Greenville, South Carolina, 29606, pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code §17.041-.045. Defendant, HONEYWELL INTERNATIONAL, INC., f/k/a ALLIED SIGNAL, INC., f/k/a THE BENDIX CORPORATION may be served through the Secretary of State for the State of Texas. Said corporation is being sued individually and as successor-in-interest to ALLIED SIGNAL, INC. and The Bendix Corporation.

40.    Although Defendant, IMO INDUSTRIES, INC., has at all times relevant to this litigation conducted business in this State and is required to maintain a registered agent for service of

process, it has not designated such an agent. Therefore, said corporation may be served with process through its home office, 9211 Forest Hill Avenue, Suite 109, Richmond, Virginia 23235, pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code §§ 17.041-.045. Defendant IMO INDUSTRIES, INC., may be served through the Secretary of State for the State of Texas.

41.    Although Defendant, ITT INDUSTRIES, INC., Individually and as Successor to ITT FLUID PRODUCTS CORP. AND ITT GRINNELL CORP., has at all times relevant to this litigation conducted business in this State and is required to maintain a registered agent for service of process, it has not designated such an agent. Therefore, said corporation may be served with process through its home office, 4 West Red Oak Lane, White Plains, New York 10604, pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code §§ 17.041-.045. Defendant ITT INDUSTRIES, INC., may be served through the Secretary of State for the State of Texas. Said corporation is being sued individually and as successor-in-interest to ITT Fluid Products Corp., and ITT Grinnell Corp.

42.    Defendant, KAISER REFRACTORIES, A Division of KAISER ALUMINUM AND CHEMICAL CORPORATION, may be served with process through its registered agent, Worldwide Service Co., 2000 Bering Dr., Suite 360, Houston, Texas, 77057.

43.    Defendant, KELSEY-HAYES COMPANY, may be served with process through its registered agent, C. T. Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201.

44.    Although Defendant, MAREMONT CORPORATION, Individually, and as a Subsidiary of

ARVIN INDUSTRIES, INC., has at all times relevant to this litigation conducted business in this State and is required to maintain a registered agent for service of process in this State, it has not designated such an agent. Therefore, said Corporation may be served with process through its home office, 100 Westwood Place, Suite 200, Brentwood, TN 37027 pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code §17.041-.045. Defendant, MAREMONT CORPORATION, Individually, and as a Subsidiary of ARVIN INDUSTRIES, INC., may be served through the Secretary of State for the State of Texas.

45. Defendant, METROPOLITAN LIFE INSURANCE COMPANY, may be served with process through its registered agent, Robert E. Wolin, 1717 Main Street, Dallas, Texas, 75201.

46. Defendant, MOOG AUTOMOTIVE, INC., as Successor to WAGNER ELECTRIC, may be served with process through its registered agent, C.T. Corporation Systems, 811 Dallas Ave., Houston, Texas 77002.

47. Defendant, MORTON INTERNATIONAL, INC., which by reorganization assumed certain business obligations of MORTON THIOKOL, INC., Successor-in-Interest to the former THIOKOL CORPORATION and its former FRICTION DIVISION, may be served with process through its registered agent, C. T. Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201.

48. Defendant, NORTH AMERICAN REFRACTORIES CO., may be served with process through its registered agent, C.T. Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

49.     Although Defendant, OWENS-ILLINOIS, INC., has at all times relevant to this litigation conducted business in this State and is required to maintain a registered agent for service of process, it has not designated such an agent.   Therefore, said corporation may be served with process through its home office,  One Seagate, Toledo, Ohio  43666,  pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code §17.041-.045.  Defendant, OWENS-ILLINOIS, INC., may be served through the Secretary of State for the State of Texas.  Said corporation is being sued individually and as successor-in-interest to OWENS-ILLINOIS GLASS COMPANY.

50.     Defendant, PECORA CORPORATION, may be served with process  through its registered agent, Donald E. King, 11501 Hillguard Rd., Dallas, Texas 75243.

51.     Although Defendant, PENTAIR, INC., Individually and as Successor to AURORA PUMP CO., has at all times relevant to this litigation conducted business in this State and is required to maintain a registered agent for service of process, it has not designated such an agent. Therefore, said corporation may be served with process through its home office, Waters Edge Plaza, 1500 County Road B2 West, St. Paul, Minnesota 55113, pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code §§ 17.041-.045.  Defendant  PENTAIR, INC., Individually and as Successor to AURORA PUMP CO., may be served through the Secretary of State for the State of Texas.  Said corporation is being sued individually and as successor-in-interest to AURORA PUMP CO.

52.     Defendant, PLIBRICO COMPANY, may be served with process through its registered agent, Corporation Service Co., 800 Brazos St., Austin, Texas, 78701.

53.   Defendant, PNEUMO ABEX CORPORATION, Individually and as a Subsidiary of

FEDERAL-MOGUL CORPORATION, f/k/a ABEX CORPORATION, may be served with

process through its registered agent, Prentice Hall Corporation Systems, 800 Brazos Street,

Austin, Texas 78701.  Said corporation is being sued individually and as successor-in-interest

to Abex Corporation.

54.   Defendant, QUIGLEY CO., INC., may be served with process through its registered agent,

C.T. Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

55.   Defendant, RHONE-POULENC AG COMPANY INC., Successor-in-interest to Amchem

Products, Inc., f/d/b/a Benjamin Foster may be served with process through its registered

agent, C.T. Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

Said corporation is being sued as successor-in-interest to AMCHEM PRODUCTS, INC.,

f/d/b/a Benjamin Foster.

56.   Although Defendant, THERMWELL PRODUCTS CO., INC. has at all times relevant to this

litigation conducted business in this State and is required to maintain a registered agent for

service of process, it has not designated such an agent.  Therefore, said corporation may be

served with process through its home office, c/o General Counsel, 150 E. 7th Street, Paterson,

New Jersey 07509-2547,  pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem.

Code §§ 17.041-.045.  Defendant THERMWELL PRODUCTS CO., INC., may be served

through the Secretary of State for the State of Texas.

57.   Defendant, T&N, P.L.C., may be served with process through its registered agent,

Bowdenhouse Ashburton Road West, Trafford Park, M171RA England.

58.   Defendant 3M COMPANY (a/k/a Minnesota Mining & Manufacturing Company) is a corporation organized and existing under and by virtue of the laws of the State of Delaware with an agent for service in the State of Texas, to-wit: C.T. Corporation System, 350 North St. Paul Street, Dallas, Texas, 75201.  Said Defendant and its predecessors in interest, at all times relevant hereto, manufactured, sold and/or distributed protective mask products which were placed in the stream of interstate commerce and were reasonably intended to, and did, find their way into the states of Plaintiff's employment.

59.   Defendant, UNION CARBIDE, may be served with process through its registered agent, C. T. Corporation System, 811 Dallas Ave., Houston, Texas 77002.

60.   Although Defendant, U.S. MINERAL PRODUCTS COMPANY, has at all times relevant to this litigation conducted business in this State and is required to maintain a registered agent for service of process, it has not designated such an agent.  Therefore, said corporation may be served with process through its home office, Bank and Furnace Streets, Stanhope, New Jersey, 07874, pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.041-.045.  Defendant, U.S. MINERAL PRODUCTS COMPANY, may be served through the Secretary of State for the State of Texas.

61.   Defendant, UNIROYAL COMPANY, may be served with process through its home office, 70 Great Hill Rd., Naugatuck, CT, 06770.

62.   Defendant, WAGNER ELECTRIC CORPORATION, Individually, and as a Subsidiary of FEDERAL-MOGUL CORPORATION, is being served with process through its registered agent, 600 Travis St., Suite 5800, Houston, TX 77002.

63. This is a lawsuit for damages from personal injuries from exposure to asbestos dust and/or fibers.

64. This action is brought and these allegations are made pursuant to Tex. Civ. Prac. & Rem. Code § 71.031.

65. Each Defendant corporation or its predecessor-in-interest whose liability stems from Count Three of this complaint, with the exception of Metropolitan Life Insurance Company, is, or at times material hereto, has been engaged in the mining, processing and/or manufacturing, sale and distribution of asbestos and asbestos-containing products.

66. Plaintiffs would show that for a period of many years, Plaintiff worked with and/or was exposed to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products while working in various facilities in and around the States of Maryland, New Jersey, New York, and Texas. Plaintiff has been exposed, on numerous occasions, to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products produced and/or sold by Defendants and, in so doing, inhaled great quantities of asbestos fibers.   Further, Plaintiffs allege, as more specifically set out below, that Plaintiff suffered injuries proximately caused by his exposure to asbestos-containing products designed, manufactured, and sold by Defendants.

67. Plaintiff, as an invitee of the Premise Defendants (as discussed below on Counts Seven and Eight), while in the course and scope of his employment, was exposed to asbestos, asbestos-containing products, and machinery containing asbestos or asbestos-containing products while on the defendants' premises.

68.     Plaintiffs further allege that Plaintiff was exposed to asbestos-containing products and/or

machinery requiring or calling for the use of asbestos and/or asbestos-containing products in his

occupation.  In that each exposure to such products caused or contributed to the injuries,

illnesses, and disabilities of Plaintiff, Plaintiffs allege that the doctrine of joint and several liability

should be extended to apply to each Defendant herein.

## COUNT ONE - NEGLIGENCE

69.     Plaintiff's illness is a direct and proximate result of the negligence of each Defendant and/or its

predecessor-in-interest in that said entities produced, sold, and/or otherwise put into the stream

of commerce, asbestos, asbestos-containing products, and/or machinery requiring or calling for

the use of asbestos and/or asbestos-containing products, which the Defendants knew, or in the

exercise of ordinary care should have known, were deleterious and highly harmful to Plaintiff's

health and well-being.  The Defendants were negligent in one, some, and/or all of the following

respects, among others, same being the proximate cause of Plaintiff's illness:

(a)     in failing to timely and adequately warn Plaintiff of the dangerous characteristics and

serious health hazards associated with exposure to asbestos, asbestos-containing

products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-

containing products;

(b)     in failing to provide Plaintiff with information as to what would be reasonably safe and

sufficient wearing apparel and proper protective equipment and appliances, if in truth

there were any, to protect Plaintiff from being harmed and disabled by exposure to

asbestos, asbestos-containing products, and/or machinery requiring or calling for the

use of asbestos and/or asbestos-containing products;

(c)     in failing to place timely and adequate warnings on the containers of said asbestos, and/or asbestos-containing products, or on the asbestos-containing products themselves, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products to warn of the dangers to health of coming into contact with said asbestos-containing products and/or machinery;

(d)     in failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and/or safe method of handling and installing asbestos and/or asbestos-containing products, or utilizing the machinery requiring or calling for the use of asbestos and/or asbestos-containing products in a safe manner;

(e)     in failing to develop and utilize a substitute material to eliminate asbestos fibers in the asbestos-containing products, and/or the machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(f)     in failing to properly design and manufacture asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products for safe use under conditions of use that were reasonably anticipated;

(g)     in failing to properly test said asbestos-containing products or machinery before they were released for consumer use; and

(h)     in failing to recall and/or remove from the stream of commerce said asbestos-containing products or machinery requiring or calling for the use of asbestos and/or asbestos-

containing products despite knowledge of the unsafe and dangerous nature of such products or machinery.

## COUNT TWO - STRICT LIABILITY

70. Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

71. Plaintiffs allege that Plaintiff was exposed to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products that were manufactured and distributed by the Defendants and/or their predecessors-in-interest for use as construction materials and/or machinery in industrial operations. Plaintiffs would show that the defective condition of the products rendered such products unreasonably dangerous, and the asbestos-containing products and/or machinery were in this defective condition at the time they left the hands of the Defendants.

72. The Defendants are engaged in the business of selling asbestos-containing products and/or machinery requiring or calling for asbestos or asbestos-containing products and these asbestos-containing products and/or machinery, without substantial change in the condition in which they were sold, were the proximate cause of the Plaintiff's illness.

73. Defendants knew that these asbestos-containing products and/or machinery would be used without inspection for defects and, by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include safe manipulation and/or installation of the asbestos-containing products and/or operation, maintenance and/or repair of the machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

74.   Plaintiff was unaware of the hazards and defects in the asbestos-containing products of the Defendants which made them unsafe for the purposes of manipulation and/or installation. Similarly, he was unaware of the hazards and defects in the machinery requiring or calling for the use of asbestos and/or asbestos-containing materials.

75.   During the periods that Plaintiff was exposed to the asbestos-containing products and/or machinery of the Defendants, these asbestos-containing products and/or machinery were being utilized in a manner which was intended by Defendants.

## COUNT THREE - CONSPIRACY

76.   Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

77.   Plaintiffs further allege that Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated, and conspired among themselves to cause Plaintiff's injuries by exposing Plaintiff to harmful and dangerous asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products. Defendants further knowingly agreed, contrived, combined, confederated and conspired to deprive Plaintiff of the opportunity of informed free choice as to whether to use said asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products or to expose themselves to said dangers. In this connection, Plaintiff has sued Metropolitan Life Insurance Company in its capacity as conspirator. Defendants committed the above-described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to Defendants' asbestos-

containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

78.   In furtherance of said conspiracies, Defendants performed the following overt acts:

(a)   For many decades, Defendants, individually, jointly, and in conspiracy with each other, have been in possession of medical and scientific data, literature, and test reports which clearly indicated that the inhalation of asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly.

(b)   Despite the medical and scientific data, literature, and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other, fraudulently, willfully, and maliciously:

(1)   withheld, concealed, and suppressed said medical and scientific data, literature, and test reports regarding the risks of asbestosis, cancer, mesothelioma, and other illnesses and diseases from Plaintiff who was using and being exposed to Defendants' asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(2)   caused to be released, published, and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of asbestosis, cancer, mesothelioma, and other illnesses and diseases,

which Defendants knew were incorrect, incomplete, outdated, and misleading;

(3)   distorted the results of medical examinations conducted upon workers such as

Plaintiff who were using asbestos-containing products and/or machinery

requiring or calling for the use of asbestos and/or asbestos-containing products

and being exposed to the inhalation of asbestos dust and fibers by falsely stating

and/or concealing the nature and extent of the harm to which workers such as

Plaintiff have suffered.

(c)   By the false and fraudulent representations, omissions, and concealments set forth

above, Defendants, individually, jointly, and in conspiracy with each other, intended to

induce Plaintiff to rely upon said false and fraudulent representations, omissions and

concealments, to continue to expose himself to the dangers inherent in the use of and

exposure to Defendants' asbestos-containing products, and/or machinery requiring or

calling for the use of asbestos and/or asbestos-containing products.

79.   Plaintiffs allege that Plaintiff reasonably and in good faith relied upon the false and fraudulent

misrepresentations, omissions, and concealments made by the Defendants regarding the nature

of their asbestos-containing products and/or machinery requiring or calling for the use of

asbestos and/or asbestos-containing products.

80.   Plaintiffs will show that Plaintiff's injuries were a direct and proximate result of his reliance on

Defendants' false and fraudulent misrepresentations, omissions, and concealments, and that

Plaintiff was deprived of the opportunity of informed free choice in connection with the use of

and exposure to Defendants' asbestos-containing products and/or machinery requiring or calling

for the use of asbestos and/or asbestos-containing products.

81.     Moreover, Defendants continue to contrive, combine, confederate, and conspire among

themselves to injure Plaintiff and to deprive him of his rightful recoveries by joining together and

forming an entity known as the "Asbestos Claims Facility" and/or "Center for Claims

Resolution" and by proposing and entering into an agreement known as the "Wellington

Agreement."  As a direct and proximate result of Defendants' ongoing actions, Plaintiff

continues to sustain damages.

## COUNT FOUR - GROSS NEGLIGENCE

82.     Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

83.     The actions and inactions of Defendants and their predecessors-in-interest, as specifically

alleged hereinabove, whether taken separately, or together, were of such a character as to

constitute a pattern or practice of intentional wrongful conduct and/or malice resulting in

damage and injury of Plaintiff.  More specifically, Defendants and their predecessors-in-

interest, consciously and/or deliberately engaged in oppression, fraud, wantonness and/or

malice with regard to the Plaintiff.  Therefore, Defendants are guilty of gross negligence for

which they should be held liable in punitive and exemplary damages to Plaintiffs.

## COUNT FIVE - NEGLIGENT TESTING/LIABILITY TO THIRD PERSONS
## FOR NEGLIGENT PERFORMANCE OF UNDERTAKING

84.     Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

85.     Defendant Metropolitan Life Insurance Company through its Policyholders Service Bureau

undertook duties owed by the asbestos-producing Defendants to Plaintiff by the testing of

asbestos workers and the conduct of scientific studies.  These duties included without limitation, the duties

(1)     to test fully and adequately for health risks concomitant to the normal and intended use of their products; and

(2)     to instruct fully and adequately in the uses of their products so as to eliminate or reduce the health hazards concomitant with their normal or intended use.

In undertaking these duties, Metropolitan Life knew or should have known that it was providing testing services for the ultimate protection of third persons, including Plaintiff.  In both conducting said tests and in publishing their alleged results, Metropolitan Life failed to exercise reasonable care to conduct or publish complete, adequate, and accurate tests of the health effects of asbestos.  Metropolitan Life also caused to be published intentionally false, misleading, inaccurate, and deceptive information about the health effects of asbestos exposure.

83.    Plaintiffs allege that Plaintiff unwittingly but justifiably relied upon the thoroughness of Metropolitan Life's tests and information dissemination, the results of which Metropolitan Life published in leading medical journals.

84.    As a direct and proximate contributing result of Metropolitan Life's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so, (i) the risk of harm to Plaintiff from asbestos exposure was increased; and (ii)  Plaintiff suffered the injuries described below.

85.    In failing to test fully and adequately for the adverse health effects from exposure to asbestos, in delaying the publication of such results, in falsely editing such results as were obtained, in

suppressing relevant medical inquiry and knowledge about those hazards to promote the sale

and distribution of asbestos as a harmless product, and in collaborating with the asbestos-

producing Defendants materially to understate the hazards of asbestos exposure, all for its own

profit and gain, Metropolitan Life acted recklessly, wantonly, and in calculated disregard for the

welfare of the general public, including the Plaintiff.

### COUNT SIX - JOINT TORTFEASOR LIABILITY

86. Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

87. The actions of all Defendants aided, abetted, encouraged, induced, or directed the negligent

and/or intentional acts of each and every other Defendant.

88. Each of the Defendants knew or should have known that its individual actions would combine

to cause the injuries of the Plaintiff.

89. The actions of Defendants are a proximate cause of the injuries of the Plaintiff.  As a result, all

Defendants are jointly liable for the damage caused by their combined actions.

### COUNT SEVEN-NEGLIGENCE OF PREMISE DEFENDANTS
### (American Cyanamid, Congoleum Corporation,
### Goodall Rubber Company, and Homasotes)

90. The Premises Defendants, who consist of Defendants, American Cyanamid, Congoleum

Corporation, Goodall Rubber Company, and Homasotes, negligently caused or negligently

permitted asbestos and asbestos-containing products to be used on their premises even though

the Premises Defendants knew or should have known that asbestos and asbestos-containing

products were carcinogenic, poisonous, toxic and extremely dangerous and hazardous to

human health and that exposure to these products could result in an asbestos related disease in persons, including Plaintiff.

91.   The Premises Defendants removed, installed, or otherwise manipulated asbestos-containing product, which created an unreasonably dangerous activity on the premises.  Additionally, the Premises Defendants exercised control over other who were installing removing , or otherwise manipulating asbestos or asbestos-containing products, which also created an unreasonably dangerous activity on the premises.

92.   Finally, during the period described above, the Premises Defendants, through their agents, servants and/or employed were guilty of certain acts, wrongs and/or omissions, each of which, independently or in combination with one another, amount to negligence.

## COUNT EIGHT-EXEMPLARY DAMAGES & MALICE OF PREMISE DEFENDANTS
### (American Cyanamid, Congoleum Corporation, Goodall Rubber Company, and Homasotes)

93.   Premises Defendants' negligence, acting through their agents, employees, and/or representatives, was of such character as to make the Premises Defendants guilty of malice. Specifically, the Premises Defendants acted in such a way that involved an extreme degree of risk, considering the probability and magnitude of potential harm to Plaintiff and which Defendants knew of the risk, involved but proceeded with conscious indifference to the rights, safety, or welfare of Plaintiff.   As a result of Defendants' conduct, acting through their agents, employees and/or representatives, Plaintiffs seek exemplary damages in such an amount as to be proper under the facts and circumstances.

## DAMAGES

The conduct of Defendants, as alleged, was a direct, proximate and producing cause of the damages resulting from the asbestos-related lung diseases of Plaintiff, LOUIS BARLETTA and of the following general and special damages that Plaintiffs have sustained:

(a)     Damages to punish Defendants for proximately causing Plaintiff's injuries;

(b)     The conscious physical pain and suffering and mental anguish sustained by Plaintiffs from the inception of Plaintiff's disease.

(c)     The physical impairment suffered by Plaintiff;

(d)     The disfigurement suffered by Plaintiff;

(e)     Reasonable and necessary medical expenses incurred by Plaintiff due to the asbestos-related disease and other physical conditions from which he suffers;

(f)     Plaintiff's lost earnings and net accumulations;

(g)     The loss of the care, maintenance, services, support, advice, counsel, and consortium which Plaintiff's family members received from him prior to his illness;

(h)     The mental anguish of Plaintiff caused by his extraordinarily increased likelihood during his lifetime of developing asbestos-related cancer of the lungs, mesothelioma and other cancers, due to his exposure to products manufactured, sold and/or distributed by the Defendants and the actual development of mesothelioma;

(i)     The mental anguish suffered by Plaintiff and his family members as a consequence of observing his ongoing asbestos-related illness; and

(j)     Plaintiffs seek punitive and exemplary damages.

94.    Plaintiffs filed suit within two (2) years of the date of discovering Plaintiff's asbestos-related

conditions or the existence of any asbestos-related causes of action.

## JURY DEMAND

95.    Plaintiffs demand that all issues of fact in this case be tried to a properly impaneled jury.

Plaintiffs have paid the requisite jury fee.

WHEREFORE, PREMISES CONSIDERED, LOUIS BARLETTA and MARY JANE

BARLETTA, Plaintiffs, demand judgments against the Defendants, and each of them, jointly and

severally, for general damages, special damages, for punitive and exemplary damages, for the costs

expended herein, for prejudgment interest from the date of the injury, and post-judgment interest on the

judgment at the highest rate allowed by law, and for such other and further relief, both at law and in

equity, to which Plaintiffs may show themselves justly entitled

Respectfully submitted,

THE HENDLER LAW FIRM, P.C.

By: _Scott M. Hendler by permission_
Scott M. Hendler
Texas Bar No. 09445500      _Sylvia S. Jabour_
Sylvia S. Jabour
Texas Bar No. 00789624
816 Congress Ave., Ste. 1100
Austin, Texas 78701
Telephone: (512) 473-3672
Facsimile: (512) 480-2209

ATTORNEYS FOR PLAINTIFFS

CAUSE NO. 01–454–D

LOUIS BARLETTA AND MARY JANE BARLETTA

      Plaintiffs,

V.

AMERICAN CYANAMID, AMTICO INTERNATIONAL, INC., ABB LTD., AC&S, INC., a/k/a ARMSTRONG CONTRACTING & SUPPLY INC.,AP GREEN INDUSTRIES, A.W. CHESTERTON CO., BABCOCK BORSIG POWER INC. (Individually and as Successor to the DB RILEY INC and RILEY STOKER COMPANY), BONDEX INTERNATIONAL, INC., BORG WARNER CORPORATION, BURNHAM CORPORATION (Individually and as Successor to KEWANEE BOILER), C.L. ZIMMERMAN CO., CERTAINTEED CORP., CONGOLEUM CORPORATION, CRANE COMPANY (Individually and as Successor to JENKINS BROS, AND WEINMAN PUMP MANUFACTURING COMPANY), CROWN CORK & SEAL COMPANY, INC., DANA CORPORATION, FERODO AMERICA, INC., GASKET HOLDINGS, Individually, and as Successor-in-Interest to FLEXITALLIC, INC., a/k/a FLEXITALLIC GASKET COMPANY, THE FLINTKOTE COMPANY, FOSTER WHEELER ENERGY CORP., GARLOCK, INC., GENERAL ELECTRIC COMPANY, GENERAL REFRACTORIES COMPANY, GEORGIA-PACIFIC CORPORATION, GOODALL RUBBER CO., GOULDS PUMPS, INC., GUARDLINE, INC., HALLIBURTON CO.,HARBISON WALKER REFRACTORIES, HOMASOTE COMPANY, HONEYWELL INTERNATIONAL, INC., f/k/a ALLIED SIGNAL, INC.(Allied Corporation), f/k/a THE BENDIX CORPORATION, IMO INDUSTRIES, INC., ITT INDUSTRIES, INC. (Individually and as Successor to ITT FLUID PRODUCTS CORP. AND ITT GRINELL

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

IN THE DISTRICT COURT OF



KLEBERG COUNTY, TEXAS

105th JUDICIAL DISTRICT

F:\Asbestos\Hendler\Barletta\01 Petition 1stAmended.wpd

CORP.),KAISER REFRACTORIES, a Division
of KaiserAluminum and Chemical Corporation,KELSEY-HAYES COMPANY, MAREMONT CORPORATION, Individually, and as a Subsidiary of ARVIN INDUSTRIES, INC., METROPOLITAN LIFE INSURANCE COMPANY, MOOG AUTOMOTIVE, as Successor to WAGNER ELECTRIC, MORTON INTERNATIONAL, INC., which by reorganization assumed certain business obligations of MORTON THIOKOL, INC., Successor-in-Interest to the former THIOKOL CORPORATION and its former FRICTION DIVISION, NORTH AMERICAN REFRACTORIES CO., OWENS-ILLINOIS, INC. PECORA CORPORATION, PENTAIR, INC. (Individually and as Successor to AURORA PUMP COMPANY), PLIBRICO COMPANY, PNEUMO ABEX CORPORATION, Individually, and as a Subsidiary of FEDERAL-MOGUL CORPORATION, f/k/a ABEX CORPORATION, QUIGLEY CO., RHONE-POULENC AG COMPANY, INC., Successor-in-interest to Amchem Products, Inc., f/d/b/a Benjamin Foster, THERMWELL PRODUCTS CO., INC., T&N, P.L.C., 3M COMPANY, UNION CARBIDE, U.S. MINERAL PRODUCTS COMPANY, UNIROYAL CO., and WAGNER ELECTRIC CORPORATION

Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

## PLAINTIFFS' FIRST AMENDED PETITION AND JURY DEMAND

TO THE HONORABLE COURT:

COMES NOW, LOUIS BARLETTA and MARY JANE BARLETTA, hereinafter referred to as "Plaintiffs," complaining of the various Defendants listed below and for causes of action would respectfully show the Court and Jury as follows:

1.      This is an asbestos-related disease case.  Plaintiffs will move to have it proceed under Level III

of Rule 190 of the Texas Rules of Civil Procedure.

2.    Plaintiffs, LOUIS BARLETTA and MARY JANE BARLETTA, would show that Mr. Barletta (hereinafter referred to as "Plaintiff") was employed in various facilities in and around the State of Texas during which time he was exposed to asbestos dust and/or fibers.

3.    Defendants herein reside in Kleberg County, maintain principal offices in Kleberg County, and/or have agents in Kleberg County or the cause of action, in whole or in part, occurred in Kleberg County.  Therefore, venue properly lies in Kleberg County.

4.    The damages sought by Plaintiffs, exclusive of interests and costs, exceed the minimum jurisdictional limits of the Court.

5.    Defendant, AMERICAN CYANAMID, was previously served through process.

6.    Although Defendant, AMTICO INTERNATIONAL INC., was previously served through process.

7.    Although Defendant, ABB LTD, was previously served through process.

8.    Defendant, AC&S, INC., a/k/a ARMSTRONG CONTRACTING & SUPPLY INC., was previously served through process.

9.    Defendant, A.P. GREEN INDUSTRIES INC., was previously served through process.

10.   Defendant, A W CHESTERTON COMPANY, was previously served through process.

11.   Defendant, BABCOCK BORSIG POWER, INC., was previously served through process.

12.   Although Defendant, BONDEX INTERNATIONAL, INC., was previously served through process.

13.   Although Defendant, BORG WARNER CORPORATION, was previously served through

process.

14.    Although Defendant, BURNHAM CORPORATION, was previously served through process.

15.    Although Defendant, C.L. ZIMMERMAN CO., was previously served through process.

16.    Defendant CERTAINTEED, was previously served through process.

17.    Defendant, CONGOLEUM CORPORATION, was previously served through process.

18.    Defendant, CRANE COMPANY, Individually and as Successor to JENKINS BROS., AND

       WEINMAN PUMP MANUFACTURING COMPANY, can be served through process at

       CT Corporation, 3500 North St. Paul, Dallas, Texas 75201.

19.    Defendant, CROWN CORK & SEAL COMPANY, INC., was previously served through

       process.

20.    Defendant, DANA CORPORATION, was previously served through process.

21.    Defendant FERODO, Successor to Nuturn Corporation, was previously served through

       process.

22.    Defendant, GASKETS HOLDINGS, INC., f/k/a FLEXITALLIC INC.,  was previously

       served through process.

23.    Although Defendant, THE FLINTKOTE COMPANY, was previously served through

       process.

24.    Defendant, FOSTER WHEELER ENERGY CORPORATION, was previously served

       through process.

25.    Defendant, GARLOCK, was previously served through process.

26.    Defendant, GENERAL ELECTRIC COMPANY, was previously served through process.

27.     Although Defendant, GENERAL REFRACTORIES COMPANY, was previously served

through process.

28.     Defendant, GEORGIA-PACIFIC CORPORATION, was previously served through process.

29.     Defendant, GOODALL RUBBER COMPANY, was previously served through process.

30.     Although Defendant, GOULDS PUMPS, INCORPORATED, was previously served through

process.

31.     Defendant GUARDLINE, INC. was previously served through process.

32.     Defendant HALLIBURTON COMPANY, Individually and as Successor to Dresser Industries

and Worthington Corporation, was previously served through process.

33.     Defendant HARBISON-WALKER REFRACTORIES COMPANY'S, Formerly a Division

of INDRESCO, INC., was previously served through process.

34.     Although Defendant, HOMASOTE COMPANY, was previously served through process.

35.     Although Defendant, HONEYWELL INTERNATIONAL, INC., f/k/a ALLIED SIGNAL,

INC. (Allied Corporation), f/k/a THE BENDIX CORPORATION, was previously served

through process.

40.     Although Defendant, IMO INDUSTRIES, INC., was previously served through process.

41.     Although Defendant, ITT INDUSTRIES, INC., Individually and as Successor to ITT FLUID

PRODUCTS CORP. AND ITT GRINNELL CORP., was previously served through process.

42.     Defendant, KAISER REFRACTORIES, A Division of KAISER ALUMINUM AND

CHEMICAL CORPORATION, was previously served through process.

43.     Defendant, KELSEY-HAYES COMPANY, was previously served through process.

44.  Although Defendant, MAREMONT CORPORATION, Individually, and as a Subsidiary of ARVIN INDUSTRIES, INC., was previously served through process.

45.  Defendant, METROPOLITAN LIFE INSURANCE COMPANY, was previously served through process.

46.  Defendant, MOOG AUTOMOTIVE, INC., as Successor to WAGNER ELECTRIC, was previously served through process.

47.  Defendant, MORTON INTERNATIONAL, INC., which by reorganization assumed certain business obligations of MORTON THIOKOL, INC., Successor-in-Interest to the former THIOKOL CORPORATION and its former FRICTION DIVISION, was previously served through process.

48.  Defendant, NORTH AMERICAN REFRACTORIES CO., was previously served through process.

49.  Although Defendant, OWENS-ILLINOIS, INC., was previously served through process.

50.  Defendant, PECORA CORPORATION, was previously served through process.

51.  Although Defendant, PENTAIR, INC., Individually and as Successor to AURORA PUMP CO., was previously served through process.

52.  Defendant, PLIBRICO COMPANY, was previously served through process.

53.  Defendant, PNEUMO ABEX CORPORATION, Individually and as a Subsidiary of FEDERAL-MOGUL CORPORATION, f/k/a ABEX CORPORATION, was previously served through process.

54.  Defendant, QUIGLEY CO., INC., was previously served through process.

55. Defendant, RHONE-POULENC AG COMPANY INC., Successor-in-interest to Amchem Products, Inc., f/d/b/a Benjamin Foster, was previously served through process.

56. Although Defendant, THERMWELL PRODUCTS CO., INC. was previously served through process.

57. Defendant, T&N, P.L.C., was previously served through process.

58. Defendant 3M COMPANY (a/k/a Minnesota Mining & Manufacturing Company) was previously served through process.

59. Defendant, UNION CARBIDE, was previously served through process.

60. Although Defendant, U.S. MINERAL PRODUCTS COMPANY, was previously served through process.

61. Defendant, UNIROYAL COMPANY, was previously served through process.

62.  Defendant, WAGNER ELECTRIC CORPORATION, Individually, and as a Subsidiary of FEDERAL-MOGUL CORPORATION, was previously served through process.

63. This is a lawsuit for damages from personal injuries from exposure to asbestos dust and/or fibers.

64. This action is brought and these allegations are made pursuant to Tex. Civ. Prac. & Rem. Code § 71.031.

65. Each Defendant corporation or its predecessor-in-interest whose liability stems from Count Three of this complaint, with the exception of Metropolitan Life Insurance Company, is, or at times material hereto, has been engaged in the mining, processing and/or manufacturing, sale and distribution of asbestos and asbestos-containing products.

66.    Plaintiffs would show that for a period of many years, Plaintiff worked with and/or was exposed to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products while working in various facilities in and around the States of Maryland, New Jersey, New York, and Texas. Plaintiff has been exposed, on numerous occasions, to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products produced and/or sold by Defendants and, in so doing, inhaled great quantities of asbestos fibers.   Further, Plaintiffs allege, as more specifically set out below, that Plaintiff suffered injuries proximately caused by his exposure to asbestos-containing products designed, manufactured, and sold by Defendants.

67.    Plaintiff, as an invitee of the Premise Defendants (as discussed below on Counts Seven and Eight), while in the course and scope of his employment, was exposed to asbestos, asbestos-containing products, and machinery containing asbestos or asbestos-containing products while on the defendants' premises.

68.    Plaintiffs further allege that Plaintiff was exposed to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products in his occupation.  In that each exposure to such products caused or contributed to the injuries, illnesses, and disabilities of Plaintiff, Plaintiffs allege that the doctrine of joint and several liability should be extended to apply to each Defendant herein.

## COUNT ONE - NEGLIGENCE

69.    Plaintiff's illness is a direct and proximate result of the negligence of each Defendant and/or its predecessor-in-interest in that said entities produced, sold, and/or otherwise put into the stream

of commerce, asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products, which the Defendants knew, or in the exercise of ordinary care should have known, were deleterious and highly harmful to Plaintiff's health and well-being. The Defendants were negligent in one, some, and/or all of the following respects, among others, same being the proximate cause of Plaintiff's illness:

(a)     in failing to timely and adequately warn Plaintiff of the dangerous characteristics and serious health hazards associated with exposure to asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(b)     in failing to provide Plaintiff with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there were any, to protect Plaintiff from being harmed and disabled by exposure to asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(c)     in failing to place timely and adequate warnings on the containers of said asbestos, and/or asbestos-containing products, or on the asbestos-containing products themselves, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products to warn of the dangers to health of coming into contact with said asbestos-containing products and/or machinery;

(d)     in failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and/or safe method of handling and installing asbestos and/or

asbestos-containing products, or utilizing the machinery requiring or calling for the use

of asbestos and/or asbestos-containing products in a safe manner;

(e)    in failing to develop and utilize a substitute material to eliminate asbestos fibers in the

asbestos-containing products, and/or the machinery requiring or calling for the use of

asbestos and/or asbestos-containing products;

(f)    in failing to properly design and manufacture asbestos, asbestos-containing products,

and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing

products for safe use under conditions of use that were reasonably anticipated;

(g)    in failing to properly test said asbestos-containing products or machinery before they

were released for consumer use; and

(h)    in failing to recall and/or remove from the stream of commerce said asbestos-containing

products or machinery requiring or calling for the use of asbestos and/or asbestos-

containing products despite knowledge of the unsafe and dangerous nature of such

products or machinery.

## COUNT TWO - STRICT LIABILITY

70.    Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

71.    Plaintiffs allege that Plaintiff was exposed to asbestos-containing products and/or machinery

requiring or calling for the use of asbestos and/or asbestos-containing products that were

manufactured and distributed by the Defendants and/or their predecessors-in-interest for use as

construction materials and/or machinery in industrial operations. Plaintiffs would show that the

defective condition of the products rendered such products unreasonably dangerous, and the

asbestos-containing products and/or machinery were in this defective condition at the time they left the hands of the Defendants.

72.   The Defendants are engaged in the business of selling asbestos-containing products and/or machinery requiring or calling for asbestos or asbestos-containing products and these asbestos-containing products and/or machinery, without substantial change in the condition in which they were sold, were the proximate cause of the Plaintiff's illness.

73.   Defendants knew that these asbestos-containing products and/or machinery would be used without inspection for defects and, by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include safe manipulation and/or installation of the asbestos-containing products and/or operation, maintenance and/or repair of the machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

74.   Plaintiff was unaware of the hazards and defects in the asbestos-containing products of the Defendants which made them unsafe for the purposes of manipulation and/or installation. Similarly, he was unaware of the hazards and defects in the machinery requiring or calling for the use of asbestos and/or asbestos-containing materials.

75.   During the periods that Plaintiff was exposed to the asbestos-containing products and/or machinery of the Defendants, these asbestos-containing products and/or machinery were being utilized in a manner which was intended by Defendants.

## COUNT THREE - CONSPIRACY

76.   Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

77.    Plaintiffs further allege that Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated, and conspired among themselves to cause Plaintiff's injuries by exposing Plaintiff to harmful and dangerous asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.  Defendants further knowingly agreed, contrived, combined, confederated and conspired to deprive Plaintiff of the opportunity of informed free choice as to whether to use said asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products or to expose themselves to said dangers.  In this connection, Plaintiff has sued Metropolitan Life Insurance Company in its capacity as conspirator.  Defendants committed the above-described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to Defendants' asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

78.    In furtherance of said conspiracies, Defendants performed the following overt acts:

(a)    For many decades, Defendants, individually, jointly, and in conspiracy with each other, have been in possession of medical and scientific data, literature, and test reports which clearly indicated that the inhalation of asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly.

F:\Asbestos\Hendler\Barletta\01Petition1stAmended.wpd                    12

(b)     Despite the medical and scientific data, literature, and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other, fraudulently, willfully, and maliciously:

(1)     withheld, concealed, and suppressed said medical and scientific data, literature, and test reports regarding the risks of asbestosis, cancer, mesothelioma, and other illnesses and diseases from Plaintiff who was using and being exposed to Defendants' asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(2)     caused to be released, published, and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of asbestosis, cancer, mesothelioma, and other illnesses and diseases, which Defendants knew were incorrect, incomplete, outdated, and misleading;

(3)     distorted the results of medical examinations conducted upon workers such as Plaintiff who were using asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and being exposed to the inhalation of asbestos dust and fibers by falsely stating and/or concealing the nature and extent of the harm to which workers such as Plaintiff have suffered.

(c)     By the false and fraudulent representations, omissions, and concealments set forth above, Defendants, individually, jointly, and in conspiracy with each other, intended to induce Plaintiff to rely upon said false and fraudulent representations, omissions and

concealments, to continue to expose himself to the dangers inherent in the use of and

exposure to Defendants' asbestos-containing products, and/or machinery requiring or

calling for the use of asbestos and/or asbestos-containing products.

79.     Plaintiffs allege that Plaintiff reasonably and in good faith relied upon the false and fraudulent

misrepresentations, omissions, and concealments made by the Defendants regarding the nature

of their asbestos-containing products and/or machinery requiring or calling for the use of

asbestos and/or asbestos-containing products.

80.     Plaintiffs will show that Plaintiff's injuries were a direct and proximate result of his reliance on

Defendants' false and fraudulent misrepresentations, omissions, and concealments, and that

Plaintiff was deprived of the opportunity of informed free choice in connection with the use of

and exposure to Defendants' asbestos-containing products and/or machinery requiring or calling

for the use of asbestos and/or asbestos-containing products.

81.     Moreover, Defendants continue to contrive, combine, confederate, and conspire among

themselves to injure Plaintiff and to deprive him of his rightful recoveries by joining together and

forming an entity known as the "Asbestos Claims Facility" and/or "Center for Claims

Resolution" and by proposing and entering into an agreement known as the "Wellington

Agreement."  As a direct and proximate result of Defendants' ongoing actions, Plaintiff

continues to sustain damages.

## COUNT FOUR - GROSS NEGLIGENCE

82.     Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

83.     The actions and inactions of Defendants and their predecessors-in-interest, as specifically

alleged hereinabove, whether taken separately, or together, were of such a character as to

constitute a pattern or practice of intentional wrongful conduct and/or malice resulting in

damage and injury of Plaintiff.  More specifically, Defendants and their predecessors-in-

interest, consciously and/or deliberately engaged in oppression, fraud, wantonness and/or

malice with regard to the Plaintiff.  Therefore, Defendants are guilty of gross negligence for

which they should be held liable in punitive and exemplary damages to Plaintiffs.

### COUNT FIVE - NEGLIGENT TESTING/LIABILITY TO THIRD PERSONS FOR NEGLIGENT PERFORMANCE OF UNDERTAKING

84.  Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

85.  Defendant Metropolitan Life Insurance Company through its Policyholders Service Bureau

undertook duties owed by the asbestos-producing Defendants to Plaintiff by the testing of

asbestos workers and the conduct of scientific studies.  These duties included without limitation,

(1)     to test fully and adequately for health risks concomitant to the normal and intended use

of their products; and

(2)     to instruct fully and adequately in the uses of their products so as to eliminate or reduce

the health hazards concomitant with their normal or intended use.

In undertaking these duties, Metropolitan Life knew or should have known that it was providing

testing services for the ultimate protection of third persons, including Plaintiff.  In both

conducting said tests and in publishing their alleged results, Metropolitan Life failed to exercise

reasonable care to conduct or publish complete, adequate, and accurate tests of the health

effects of asbestos.  Metropolitan Life also caused to be published intentionally false,

misleading, inaccurate, and deceptive information about the health effects of asbestos exposure.

83.   Plaintiffs allege that Plaintiff unwittingly but justifiably relied upon the thoroughness of

Metropolitan Life's tests and information dissemination, the results of which Metropolitan Life

published in leading medical journals.

84.   As a direct and proximate contributing result of Metropolitan Life's failures to conduct or

accurately publish adequate tests or disseminate accurate and truthful information, after

undertaking to do so, (i) the risk of harm to Plaintiff from asbestos exposure was increased; and

(ii)  Plaintiff suffered the injuries described below.

85.   In failing to test fully and adequately for the adverse health effects from exposure to asbestos, in

delaying the publication of such results, in falsely editing such results as were obtained, in

suppressing relevant medical inquiry and knowledge about those hazards to promote the sale

and distribution of asbestos as a harmless product, and in collaborating with the asbestos-

producing Defendants materially to understate the hazards of asbestos exposure, all for its own

profit and gain, Metropolitan Life acted recklessly, wantonly, and in calculated disregard for the

welfare of the general public, including the Plaintiff.

### COUNT SIX - JOINT TORTFEASOR LIABILITY

86.   Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

87.   The actions of all Defendants aided, abetted, encouraged, induced, or directed the negligent

and/or intentional acts of each and every other Defendant.

88.   Each of the Defendants knew or should have known that its individual actions would combine

to cause the injuries of the Plaintiff.

89.     The actions of Defendants are a proximate cause of the injuries of the Plaintiff.  As a result, all

Defendants are jointly liable for the damage caused by their combined actions.

## COUNT SEVEN-NEGLIGENCE OF PREMISE DEFENDANTS
### (American Cyanamid, Congoleum Corporation,
### Goodall Rubber Company, and Homasotes)

90.     The Premises Defendants, who consist of Defendants, American Cyanamid, Congoleum

Corporation, Goodall Rubber Company, and Homasotes, negligently caused or negligently

permitted asbestos and asbestos-containing products to be used on their premises even though

the Premises Defendants knew or should have known that asbestos and asbestos-containing

products were carcinogenic, poisonous, toxic and extremely dangerous and hazardous to

human health and that exposure to these products could result in an asbestos related disease in

persons, including Plaintiff.

91.     The Premises Defendants removed, installed, or otherwise manipulated asbestos-containing

product, which created an unreasonably dangerous activity on the premises.  Additionally, the

Premises Defendants exercised control over other who were installing removing , or otherwise

manipulating asbestos or asbestos-containing products, which also created an unreasonably

dangerous activity on the premises.

92.     Finally, during the period described above, the Premises Defendants, through their agents,

servants and/or employed were guilty of certain acts, wrongs and/or omissions, each of which,

independently or in combination with one another, amount to negligence.

## COUNT EIGHT-EXEMPLARY DAMAGES & MALICE OF PREMISE DEFENDANTS
### (American Cyanamid, Congoleum Corporation,
### Goodall Rubber Company, and Homasotes)

93.    Premises Defendants' negligence, acting through their agents, employees, and/or

representatives, was of such character as to make the Premises Defendants guilty of malice.

Specifically, the Premises Defendants acted in such a way that involved an extreme degree of

risk, considering the probability and magnitude of potential harm to Plaintiff and which

Defendants knew of the risk, involved but proceeded with conscious indifference to the rights,

safety, or welfare of Plaintiff.   As a result of Defendants' conduct, acting through their agents,

employees and/or representatives, Plaintiffs seek exemplary damages in such an amount as to

be proper under the facts and circumstances.

## **DAMAGES**

The conduct of Defendants, as alleged, was a direct, proximate and producing cause of the

damages resulting from the asbestos-related lung diseases of Plaintiff, LOUIS BARLETTA and

of the following general and special damages that Plaintiffs  have sustained:

(a)    Damages to punish Defendants for proximately causing Plaintiff's injuries;

(b)    The conscious physical pain and suffering and mental anguish sustained by Plaintiffs

from the inception of Plaintiff's disease.

(c)    The physical impairment suffered by Plaintiff;

(d)    The disfigurement suffered by Plaintiff;

(e)    Reasonable and necessary medical expenses incurred by Plaintiff due to the asbestos-

related disease and other physical conditions from which he suffers;

(f)    Plaintiff's lost earnings and net accumulations;

(g)    The loss of the care, maintenance, services, support, advice, counsel, and consortium

which Plaintiff's family members received from him prior to his illness;

(h)     The mental anguish of Plaintiff caused by his extraordinarily increased likelihood during

his lifetime of developing asbestos-related cancer of the lungs, mesothelioma and other

cancers, due to his exposure to products manufactured, sold and/or distributed by the

Defendants and the actual development of mesothelioma;

(i)     The mental anguish suffered by Plaintiff and his family members as a consequence of

observing his ongoing asbestos-related illness; and

(j)     Plaintiffs seek punitive and exemplary damages.

94.     Plaintiffs filed suit within two (2) years of the date of discovering Plaintiff's asbestos-related

conditions or the existence of any asbestos-related causes of action.

## JURY DEMAND

95.     Plaintiffs demand that all issues of fact in this case be tried to a properly impaneled jury.

Plaintiffs have paid the requisite jury fee.

WHEREFORE, PREMISES CONSIDERED, LOUIS BARLETTA and MARY JANE

BARLETTA, Plaintiffs, demand judgments against the Defendants, and each of them, jointly and

severally, for general damages, special damages, for punitive and exemplary damages, for the costs

expended herein, for prejudgment interest from the date of the injury, and post-judgment interest on the

judgment at the highest rate allowed by law, and for such other and further relief, both at law and in

equity, to which Plaintiffs may show themselves justly entitled

Respectfully submitted,

THE HENDLER LAW FIRM, P.C.

By: _____

Scott M. Hendler
Texas Bar No. 09445500
816 Congress Ave., Ste. 1100
Austin, Texas 78701
Telephone: (512) 473-3672
Facsimile: (512) 480-2209

Darrell Barger
Texas Bar No. 0733800
Barger, Hermanfen, McKibben & Villarreal
One Shoreline Plaza
800 North Shoreline Blvd. Suite 2000
Corpus Christi, Texas 78401
Telephone: (361) 866-8009
Facsimile: (361) 866-8039
ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of **PLAINTIFFS' FIRST AMENDED PETITION AND JURY DEMAND** has been served upon all counsel of record via certified mail and/or through process on this 18th day of September, 2001.

[signature]

CAUSE NO. 01-454-D

LOUIS BARLETTA AND MARY JANE
BARLETTA

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

      **Plaintiffs,**

V.

AMERICAN CYANAMID, AMTICO
INTERNATIONAL, INC., ARB LTD.,
AC&S, INC., a/k/a ARMSTRONG
CONTRACTING & SUPPLY INC.,AP
GREEN INDUSTRIES, A.W. CHESTERTON
CO., BABCOCK BORSIG POWER INC.
(Individually and as Successor to the DB
RILEY INC and RILEY STOKER
COMPANY), BONDEX INTERNATIONAL,
INC., BORG WARNER CORPORATION,
BURNHAM CORPORATION (Individually
and as Successor to KEWANEE BOILER),
C.L. ZIMMERMAN CO., CERTAINTEED
CORP., CONGOLEUM CORPORATION,
CRANE COMPANY (Individually and as
Successor to JENKINS BROS, AND
WEINMAN PUMP MANUFACTURING
COMPANY), CROWN CORK & SEAL
COMPANY, INC., DANA CORPORATION,
FEDERAL-MOGUL CORPORATION,
Successor to T&N PLC, GASKET
HOLDINGS, Individually, and as Successor-
in-Interest to FLEXITALLIC, INC., a/k/a
FLEXITALLIC GASKET COMPANY, THE
FLINTKOTE COMPANY, FOSTER
WHEELER ENERGY CORP., GARLOCK,
INC., GENERAL ELECTRIC COMPANY,
GENERAL REFRACTORIES COMPANY,
GEORGIA-PACIFIC CORPORATION,
GOODALL RUBBER CO., GOULDS
PUMPS, INC., GUARDLINE, INC.,
HALLIBURTON CO., DRESSER
INDUSTRIES, Individually, and as Successor
by Merger to HARBISON WALKER
REFRACTORIES, HOMASOTE
COMPANY, HONEYWELL
INTERNATIONAL, INC., f/k/a ALLIED
SIGNAL, INC.(Allied Corporation), f/k/a THE

IN THE DISTRICT COURT OF



KLEBERG COUNTY, TEXAS

F:\Asbestos\Hendler\Barletta\H}Petition2ndA.mended01.wpd

BENDIX CORPORATION, IMO §
INDUSTRIES, INC., ITT INDUSTRIES, INC. §
(Individually and as Successor to ITT FLUID §
PRODUCTS CORP. AND ITT GRINELL §
JUDICIAL DISTRICORP.),KAISER
REFRACTORIES, a Division of §
KaiserAluminum and Chemical Corporation, §
KELSEY-HAYES COMPANY, MAREMONT §
CORPORATION, Individually, and as a §
Subsidiary of ARVIN INDUSTRIES, INC., §
METROPOLITAN LIFE INSURANCE §
COMPANY, MOOG AUTOMOTIVE, as §
Successor to WAGNER ELECTRIC, §
MORTON INTERNATIONAL, INC., which by §
reorganization assumed certain business §
obligations of MORTON THIOKOL, INC., §
Successor-in-Interest to the former THIOKOL §
CORPORATION and its former FRICTION §
DIVISION, NORTH AMERICAN §
REFRACTORIES CO., OWENS-ILLINOIS, §
INC. PECORA CORPORATION, PENTAIR, §
INC. (Individually and as Successor to §
AURORA PUMP COMPANY), PLIBRICO §
COMPANY, PNEUMO ABEX §
CORPORATION, Individually, and as a §
Subsidiary of FEDERAL-MOGUL §
CORPORATION, f/k/a ABEX §
CORPORATION, QUIGLEY CO., RHONE- §
POULENC AG COMPANY, INC., Successor- §
in-interest to Amchem Products, Inc., f/d/b/a §
Benjamin Foster, THERMWELL PRODUCTS §        105th Judicial District
CO., INC., 3M COMPANY, UNION §
CARBIDE, UNIROYAL CO.and WAGNER §
ELECTRIC CORPORATION §

## PLAINTIFFS' SECOND AMENDED PETITION AND JURY DEMAND

TO THE HONORABLE COURT:

COMES NOW, LOUIS BARLETTA and MARY JANE BARLETTA, hereinafter referred to

as "Plaintiffs," complaining of the various Defendants listed below and for causes of action would

respectfully show the Court and Jury as follows:

1.　　This is an asbestos-related disease case.  Plaintiffs will move to have it proceed under Level III of Rule 190 of the Texas Rules of Civil Procedure.

2.　　Plaintiffs, LOUIS BARLETTA and MARY JANE BARLETTA, would show that Mr. Barletta (hereinafter referred to as "Plaintiff") was employed in various facilities in and around the State of Texas during which time he was exposed to asbestos dust and/or fibers.

3.　　Defendants herein reside in Kleberg County, maintain principal offices in Kleberg County, and/or have agents in Kleberg County or the cause of action, in whole or in part, occurred in Kleberg County.  Therefore, venue properly lies in Kleberg County.

4.　　The damages sought by Plaintiffs, exclusive of interests and costs, exceed the minimum jurisdictional limits of the Court.

5.　　Defendant, AMERICAN CYANAMID, was previously served through process.

6.　　Although Defendant, AMTICO INTERNATIONAL INC., was previously served through process.

7.　　Although Defendant, ABB LTD, was previously served through process.

8.　　Defendant, AC&S, INC., a/k/a ARMSTRONG CONTRACTING & SUPPLY INC., was previously served through process.

9.　　Defendant, A.P. GREEN INDUSTRIES INC., was previously served through process.

10.　　Defendant, A W CHESTERTON COMPANY, was previously served through process.

11.　　Defendant, BABCOCK BORSIG POWER, INC., was previously served through process.

12.　　Although Defendant, BONDEX INTERNATIONAL, INC., was previously served through process.

13.   Although Defendant, BORG WARNER CORPORATION, was previously served through

process.

14.   Although Defendant, BURNHAM CORPORATION, was previously served through process.

15.   Although Defendant, C.L. ZIMMERMAN CO., was previously served through process.

16.   Defendant CERTAINTEED, was previously served through process.

17.   Defendant, CONGOLEUM CORPORATION, was previously served through process.

18.   Defendant, CRANE COMPANY, was previously served through process.

19.   Defendant, CROWN CORK & SEAL COMPANY, INC., was previously served through

process.

20.   Defendant, DANA CORPORATION, was previously served through process.

21.   Defendant, GASKETS HOLDINGS, INC., f/k/a FLEXITALLIC INC.,  was previously

served through process.

22.   Defendant FEDERAL-MOGUL CORPORATION, Successor to T&N PLC, may be served

through process through its registered agent Prentice Hall Corporation, 800 Brazos, Austin,

Texas 78701.

23.   Although Defendant, THE FLINTKOTE COMPANY, was previously served through

process.

24.   Defendant, FOSTER WHEELER ENERGY CORPORATION, was previously served

through process.

25.   Defendant, GARLOCK, was previously served through process.

26.   Defendant, GENERAL ELECTRIC COMPANY, was previously served through process.

27. Although Defendant, GENERAL REFRACTORIES COMPANY, was previously served through process.

28. Defendant, GEORGIA-PACIFIC CORPORATION, was previously served through process.

29. Defendant, GOODALL RUBBER COMPANY, was previously served through process.

30. Although Defendant, GOULDS PUMPS, INCORPORATED, was previously served through process.

31. Defendant GUARDLINE, INC. was previously served through process.

32. Defendant HALLIBURTON COMPANY, Individually and as Successor to Dresser Industries and Worthington Corporation, was previously served through process.

33. Defendant DRESSER INDUSTRIES, Successor by Merger to HARBISON-WALKER REFRACTORIES COMPANY'S, Formerly a Division of INDRESCO, INC., may be served through process through its registered agent CT Corporation, 350 St. Paul Street, Dallas, Texas 75201.

34. Although Defendant, HOMASOTE COMPANY, was previously served through process.

35. Although Defendant, HONEYWELL INTERNATIONAL, INC., f/k/a ALLIED SIGNAL, INC. (Allied Corporation), f/k/a THE BENDIX CORPORATION, may be served through process at CT Corporation, 350 North St. Paul, Dallas, Texas 75201.

40. Although Defendant, IMO INDUSTRIES, INC., was previously served through process.

41. Although Defendant, ITT INDUSTRIES, INC., Individually and as Successor to ITT FLUID PRODUCTS CORP. AND ITT GRINNELL CORP., was previously served through process.

42. Defendant, KAISER REFRACTORIES, A Division of KAISER ALUMINUM AND

CHEMICAL CORPORATION, was previously served through process.

43.    Defendant, KELSEY-HAYES COMPANY, was previously served through process.

44.    Although Defendant, MAREMONT CORPORATION, Individually, and as a Subsidiary of

ARVIN INDUSTRIES, INC.,  was previously served through process.

45.    Defendant, METROPOLITAN LIFE INSURANCE COMPANY, was previously served

through process.

46.    Defendant, MOOG AUTOMOTIVE, INC., as Successor to WAGNER ELECTRIC,  was

previously served through process.

47.    Defendant, MORTON  INTERNATIONAL, INC., which by reorganization assumed certain

business obligations of MORTON THIOKOL, INC., Successor-in-Interest to the former

THIOKOL CORPORATION and its former FRICTION DIVISION, was previously served

through process.

48.    Defendant, NORTH AMERICAN REFRACTORIES CO., was previously served through

process.

49.    Although Defendant, OWENS-ILLINOIS, INC., was previously served through process.

50.    Defendant, PECORA CORPORATION, was previously served through process through its

registered agent in Texas.  Service was declined.  Service is now being made through the

President at the corporate headquarters P. Frederick, 165 Wambold Road, Harleysville,

Pennsylvania 19438.

51.    Although Defendant, PENTAIR, INC., Individually and as Successor to AURORA PUMP

CO., was previously served through process.

52.   Defendant, PLIBRICO COMPANY, was previously served through process.

53.   Defendant, PNEUMO ABEX CORPORATION, Individually and as a Subsidiary of

      FEDERAL-MOGUL CORPORATION, f/k/a ABEX CORPORATION, was previously

      served through process.

54.   Defendant, QUIGLEY CO., INC., was previously served through process.

55.   Defendant, RHONE-POULENC AG COMPANY INC., Successor-in-interest to Amchem

      Products, Inc., f/d/b/a Benjamin Foster, was previously served through process.

56.   Although Defendant, THERMWELL PRODUCTS CO., INC. was previously served through

      process.

57.   Defendant, T&N, P.L.C., was previously served through process.

58.   Defendant 3M COMPANY (a/k/a Minnesota Mining & Manufacturing Company) was

      previously served through process.

59.   Defendant, UNION CARBIDE, was previously served through process.

60.   Although Defendant, U.S. MINERAL PRODUCTS COMPANY, was previously served

      through process.

61.   Defendant, UNIROYAL COMPANY, was previously served through process.

62.   Defendant, WAGNER ELECTRIC CORPORATION, Individually, and as a Subsidiary of

      FEDERAL-MOGUL CORPORATION, was previously served through process.

63.   This is a lawsuit for damages from personal injuries from exposure to asbestos dust and/or

      fibers.

64.   This action is brought and these allegations are made pursuant to Tex. Civ. Prac. & Rem. Code

§ 71.031.

65.   Each Defendant corporation or its predecessor-in-interest whose liability stems from Count

Three of this complaint, with the exception of Metropolitan Life Insurance Company, is, or at

times material hereto, has been engaged in the mining, processing and/or manufacturing, sale

and distribution of asbestos and asbestos-containing products.

66.   Plaintiffs would show that for a period of many years, Plaintiff worked with and/or was exposed

to asbestos-containing products and/or machinery requiring or calling for the use of asbestos

and/or asbestos-containing products while working in various facilities in and around the States

of Maryland, New Jersey, New York, and Texas. Plaintiff has been exposed, on numerous

occasions, to asbestos-containing products and/or machinery requiring or calling for the use of

asbestos and/or asbestos-containing products produced and/or sold by Defendants and, in so

doing, inhaled great quantities of asbestos fibers.   Further, Plaintiffs allege, as more specifically

set out below, that Plaintiff suffered injuries proximately caused by his exposure to asbestos-

containing products designed, manufactured, and sold by Defendants.

67.   Plaintiff, as an invitee of the Premise Defendants (as discussed below on Counts Seven and

Eight), while in the course and scope of his employment, was exposed to asbestos, asbestos-

containing products, and machinery containing asbestos or asbestos-containing products while

on the defendants' premises.

68.   Plaintiffs further allege that Plaintiff was exposed to asbestos-containing products and/or

machinery requiring or calling for the use of asbestos and/or asbestos-containing products in his

occupation.  In that each exposure to such products caused or contributed to the injuries,

illnesses, and disabilities of Plaintiff, Plaintiffs allege that the doctrine of joint and several liability should be extended to apply to each Defendant herein.

## COUNT ONE - NEGLIGENCE

69.  Plaintiff's illness is a direct and proximate result of the negligence of each Defendant and/or its predecessor-in-interest in that said entities produced, sold, and/or otherwise put into the stream of commerce, asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products, which the Defendants knew, or in the exercise of ordinary care should have known, were deleterious and highly harmful to Plaintiff's health and well-being.  The Defendants were negligent in one, some, and/or all of the following respects, among others, same being the proximate cause of Plaintiff's illness:

(a)     in failing to timely and adequately warn Plaintiff of the dangerous characteristics and serious health hazards associated with exposure to asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(b)     in failing to provide Plaintiff with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there were any, to protect Plaintiff from being harmed and disabled by exposure to asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(c)     in failing to place timely and adequate warnings on the containers of said asbestos, and/or asbestos-containing products, or on the asbestos-containing products

themselves, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products to warn of the dangers to health of coming into contact with said asbestos-containing products and/or machinery;

(d)   in failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and/or safe method of handling and installing asbestos and/or asbestos-containing products, or utilizing the machinery requiring or calling for the use of asbestos and/or asbestos-containing products in a safe manner;

(e)   in failing to develop and utilize a substitute material to eliminate asbestos fibers in the asbestos-containing products, and/or the machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(f)   in failing to properly design and manufacture asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products for safe use under conditions of use that were reasonably anticipated;

(g)   in failing to properly test said asbestos-containing products or machinery before they were released for consumer use; and

(h)   in failing to recall and/or remove from the stream of commerce said asbestos-containing products or machinery requiring or calling for the use of asbestos and/or asbestos-containing products despite knowledge of the unsafe and dangerous nature of such products or machinery.

## COUNT TWO - STRICT LIABILITY

70.   Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

71.     Plaintiffs allege that Plaintiff was exposed to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products that were manufactured and distributed by the Defendants and/or their predecessors-in-interest for use as construction materials and/or machinery in industrial operations.  Plaintiffs would show that the defective condition of the products rendered such products unreasonably dangerous, and the asbestos-containing products and/or machinery were in this defective condition at the time they left the hands of the Defendants.

72.     The Defendants are engaged in the business of selling asbestos-containing products and/or machinery requiring or calling for asbestos or asbestos-containing products and these asbestos-containing products and/or machinery, without substantial change in the condition in which they were sold, were the proximate cause of the Plaintiff's illness.

73.     Defendants knew that these asbestos-containing products and/or machinery would be used without inspection for defects and, by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include safe manipulation and/or installation of the asbestos-containing products and/or operation, maintenance and/or repair of the machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

74.     Plaintiff was unaware of the hazards and defects in the asbestos-containing products of the Defendants which made them unsafe for the purposes of manipulation and/or installation.  Similarly, he was unaware of the hazards and defects in the machinery requiring or calling for the use of asbestos and/or asbestos-containing materials.

75.   During the periods that Plaintiff was exposed to the asbestos-containing products and/or machinery of the Defendants, these asbestos-containing products and/or machinery were being utilized in a manner which was intended by Defendants.

### COUNT THREE - CONSPIRACY

76.   Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

77.   Plaintiffs further allege that Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated, and conspired among themselves to cause Plaintiff's injuries by exposing Plaintiff to harmful and dangerous asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products. Defendants further knowingly agreed, contrived, combined, confederated and conspired to deprive Plaintiff of the opportunity of informed free choice as to whether to use said asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products or to expose themselves to said dangers. In this connection, Plaintiff has sued Metropolitan Life Insurance Company in its capacity as conspirator. Defendants committed the above-described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to Defendants' asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

78.   In furtherance of said conspiracies, Defendants performed the following overt acts:

  (a)   For many decades, Defendants, individually, jointly, and in conspiracy with each other, have been in possession of medical and scientific data, literature, and test reports which

clearly indicated that the inhalation of asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly.

(b)      Despite the medical and scientific data, literature, and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other, fraudulently, willfully, and maliciously:

(1)      withheld, concealed, and suppressed said medical and scientific data, literature, and test reports regarding the risks of asbestosis, cancer, mesothelioma, and other illnesses and diseases from Plaintiff who was using and being exposed to Defendants' asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(2)      caused to be released, published, and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of asbestosis, cancer, mesothelioma, and other illnesses and diseases, which Defendants knew were incorrect, incomplete, outdated, and misleading;

(3)      distorted the results of medical examinations conducted upon workers such as Plaintiff who were using asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and being exposed to the inhalation of asbestos dust and fibers by falsely stating

and/or concealing the nature and extent of the harm to which workers such as Plaintiff have suffered.

(c)   By the false and fraudulent representations, omissions, and concealments set forth above, Defendants, individually, jointly, and in conspiracy with each other, intended to induce Plaintiff to rely upon said false and fraudulent representations, omissions and concealments, to continue to expose himself to the dangers inherent in the use of and exposure to Defendants' asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

79.   Plaintiffs allege that Plaintiff reasonably and in good faith relied upon the false and fraudulent misrepresentations, omissions, and concealments made by the Defendants regarding the nature of their asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

80.   Plaintiffs will show that Plaintiff's injuries were a direct and proximate result of his reliance on Defendants' false and fraudulent misrepresentations, omissions, and concealments, and that Plaintiff was deprived of the opportunity of informed free choice in connection with the use of and exposure to Defendants' asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

81.   Moreover, Defendants continue to contrive, combine, confederate, and conspire among themselves to injure Plaintiff and to deprive him of his rightful recoveries by joining together and forming an entity known as the "Asbestos Claims Facility" and/or "Center for Claims Resolution" and by proposing and entering into an agreement known as the "Wellington

Agreement." As a direct and proximate result of Defendants' ongoing actions, Plaintiff continues to sustain damages.

## COUNT FOUR - GROSS NEGLIGENCE

82.   Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

83.   The actions and inactions of Defendants and their predecessors-in-interest, as specifically alleged hereinabove, whether taken separately, or together, were of such a character as to constitute a pattern or practice of intentional wrongful conduct and/or malice resulting in damage and injury of Plaintiff. More specifically, Defendants and their predecessors-in-interest, consciously and/or deliberately engaged in oppression, fraud, wantonness and/or malice with regard to the Plaintiff. Therefore, Defendants are guilty of gross negligence for which they should be held liable in punitive and exemplary damages to Plaintiffs.

## COUNT FIVE - NEGLIGENT TESTING/LIABILITY TO THIRD PERSONS FOR NEGLIGENT PERFORMANCE OF UNDERTAKING

84.   Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

85.   Defendant Metropolitan Life Insurance Company through its Policyholders Service Bureau undertook duties owed by the asbestos-producing Defendants to Plaintiff by the testing of asbestos workers and the conduct of scientific studies. These duties included without limitation,

(1)   to test fully and adequately for health risks concomitant to the normal and intended use of their products; and

(2)   to instruct fully and adequately in the uses of their products so as to eliminate or reduce the health hazards concomitant with their normal or intended use.

In undertaking these duties, Metropolitan Life knew or should have known that it was providing testing services for the ultimate protection of third persons, including Plaintiff. In both conducting said tests and in publishing their alleged results, Metropolitan Life failed to exercise reasonable care to conduct or publish complete, adequate, and accurate tests of the health effects of asbestos. Metropolitan Life also caused to be published intentionally false, misleading, inaccurate, and deceptive information about the health effects of asbestos exposure.

83.   Plaintiffs allege that Plaintiff unwittingly but justifiably relied upon the thoroughness of Metropolitan Life's tests and information dissemination, the results of which Metropolitan Life published in leading medical journals.

84.   As a direct and proximate contributing result of Metropolitan Life's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so, (i) the risk of harm to Plaintiff from asbestos exposure was increased; and (ii) Plaintiff suffered the injuries described below.

85.   In failing to test fully and adequately for the adverse health effects from exposure to asbestos, in delaying the publication of such results, in falsely editing such results as were obtained, in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product, and in collaborating with the asbestos-producing Defendants materially to understate the hazards of asbestos exposure, all for its own profit and gain, Metropolitan Life acted recklessly, wantonly, and in calculated disregard for the welfare of the general public, including the Plaintiff.

## COUNT SIX - JOINT TORTFEASOR LIABILITY

86.    Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

87.    The actions of all Defendants aided, abetted, encouraged, induced, or directed the negligent and/or intentional acts of each and every other Defendant.

88.    Each of the Defendants knew or should have known that its individual actions would combine to cause the injuries of the Plaintiff.

89.    The actions of Defendants are a proximate cause of the injuries of the Plaintiff. As a result, all Defendants are jointly liable for the damage caused by their combined actions.

## COUNT SEVEN-NEGLIGENCE OF PREMISE DEFENDANTS
### (American Cyanamid, Congoleum Corporation, Goodall Rubber Company, and Homasotes)

90.    The Premises Defendants, who consist of Defendants, American Cyanamid, Congoleum Corporation, Goodall Rubber Company, and Homasotes, negligently caused or negligently permitted asbestos and asbestos-containing products to be used on their premises even though the Premises Defendants knew or should have known that asbestos and asbestos-containing products were carcinogenic, poisonous, toxic and extremely dangerous and hazardous to human health and that exposure to these products could result in an asbestos related disease in persons, including Plaintiff.

91.    The Premises Defendants removed, installed, or otherwise manipulated asbestos-containing product, which created an unreasonably dangerous activity on the premises. Additionally, the Premises Defendants exercised control over other who were installing removing , or otherwise manipulating asbestos or asbestos-containing products, which also created an unreasonably dangerous activity on the premises.

F:\Asbestos\Hendler\Barletta\01Petition2ndAmended.wpd          **17**

92. Finally, during the period described above, the Premises Defendants, through their agents, servants and/or employed were guilty of certain acts, wrongs and/or omissions, each of which, independently or in combination with one another, amount to negligence.

**COUNT EIGHT-EXEMPLARY DAMAGES & MALICE OF PREMISE DEFENDANTS**
**(American Cyanamid, Congoleum Corporation,**
**Goodall Rubber Company, and Homasotes)**

93. Premises Defendants' negligence, acting through their agents, employees, and/or representatives, was of such character as to make the Premises Defendants guilty of malice. Specifically, the Premises Defendants acted in such a way that involved an extreme degree of risk, considering the probability and magnitude of potential harm to Plaintiff and which Defendants knew of the risk, involved but proceeded with conscious indifference to the rights, safety, or welfare of Plaintiff.   As a result of Defendants' conduct, acting through their agents, employees and/or representatives, Plaintiffs seek exemplary damages in such an amount as to be proper under the facts and circumstances.

## DAMAGES

The conduct of Defendants, as alleged, was a direct, proximate and producing cause of the damages resulting from the asbestos-related lung diseases of Plaintiff, LOUIS BARLETTA and of the following general and special damages that Plaintiffs have sustained:

(a)   Damages to punish Defendants for proximately causing Plaintiff's injuries;

(b)   The conscious physical pain and suffering and mental anguish sustained by Plaintiffs from the inception of Plaintiff's disease.

(c)   The physical impairment suffered by Plaintiff;

(d)    The disfigurement suffered by Plaintiff;

(e)    Reasonable and necessary medical expenses incurred by Plaintiff due to the asbestos-related disease and other physical conditions from which he suffers;

(f)    Plaintiff's lost earnings and net accumulations;

(g)    The loss of the care, maintenance, services, support, advice, counsel, and consortium which Plaintiff's family members received from him prior to his illness;

(h)    The mental anguish of Plaintiff caused by his extraordinarily increased likelihood during his lifetime of developing asbestos-related cancer of the lungs, mesothelioma and other cancers, due to his exposure to products manufactured, sold and/or distributed by the Defendants and the actual development of mesothelioma;

(i)    The mental anguish suffered by Plaintiff and his family members as a consequence of observing his ongoing asbestos-related illness; and

(j)    Plaintiffs seek punitive and exemplary damages.

94.    Plaintiffs filed suit within two (2) years of the date of discovering Plaintiff's asbestos-related conditions or the existence of any asbestos-related causes of action.

## JURY DEMAND

95.    Plaintiffs demand that all issues of fact in this case be tried to a properly impaneled jury.

Plaintiffs have paid the requisite jury fee.

WHEREFORE, PREMISES CONSIDERED, LOUIS BARLETTA and MARY JANE

BARLETTA, Plaintiffs, demand judgments against the Defendants, and each of them, jointly and

severally, for general damages, special damages, for punitive and exemplary damages, for the costs

expended herein, for prejudgment interest from the date of the injury, and post-judgment interest on the

judgment at the highest rate allowed by law, and for such other and further relief, both at law and in

equity, to which Plaintiffs may show themselves justly entitled

Respectfully submitted,

THE HENDLER LAW FIRM, P.C.

By: _____

Scott M. Hendler
Texas Bar No. 09445500
816 Congress Ave., Ste. 1100
Austin, Texas 78701
Telephone: (512) 473-3672
Facsimile: (512) 480-2209

F:\Asbestos\Hendler\Barletta\01Petition2ndAmended.wpd          20

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of **PLAINTIFFS' SECOND AMENDED PETITION AND JURY DEMAND** has been served upon all counsel of record via certified mail and/or through process on this 24th day of September, 2001.

foregoing is a true and correct copy
record on file in my office. Given
my hand and seal of the court at my office in
Texas, this ______________

MARTHA I. SOLIZ, DISTRICT CLERK
By ______________ Deputy

F:\Asbestos\Hendler\Barletta\01Petition2ndAmended.wpd

CAUSE NO. 01-454-D

| | |
|---|---|
| LOUIS BARLETTA AND MARY JANE BARLETTA<br><br>    Plaintiffs,<br>V.<br><br>AMERICAN CYANAMID, AMTICO INTERNATIONAL, INC., ABB LTD., AC&S, INC., a/k/a ARMSTRONG CONTRACTING & SUPPLY INC.,AP GREEN INDUSTRIES, A.W. CHESTERTON CO., BABCOCK BORSIG POWER INC. (Individually and as Successor to the DB RILEY INC and RILEY STOKER COMPANY), BONDEX INTERNATIONAL, INC., BORG WARNER CORPORATION, BURNHAM CORPORATION (Individually and as Successor to KEWANEE BOILER), C.L. ZIMMERMAN CO., CERTAINTEED CORP., CONGOLEUM CORPORATION, CRANE COMPANY (Individually and as Successor to JENKINS BROS, AND WEINMAN PUMP MANUFACTURING COMPANY), CROWN CORK & SEAL COMPANY, INC., DANA CORPORATION, THE FLINTKOTE COMPANY, FOSTER WHEELER ENERGY CORP., GARLOCK, INC., GENERAL ELECTRIC COMPANY, GENERAL REFRACTORIES COMPANY, GEORGIA-PACIFIC CORPORATION, GOODALL RUBBER CO., GOULDS PUMPS, INC., GUARDLINE, INC., HALLIBURTON CO.,DRESSER INDUSTRIES, Individually, and as Successor by Merger to HARBISON WALKER REFRACTORIES, HOMASOTE COMPANY, HONEYWELL INTERNATIONAL, INC., f/k/a ALLIED SIGNAL, INC.(Allied Corporation), f/k/a THE BENDIX CORPORATION, IMO INDUSTRIES, INC., ITT INDUSTRIES, INC. (Individually and as Successor to ITT FLUID PRODUCTS CORP. AND ITT GRINELL CORP.), KAISER REFRACTORIES, | IN THE DISTRICT COURT OF<br><br><br><br><br><br><br>KLEBERG COUNTY, TEXAS<br><br><br><br><br><br><br><br><br><br>105th JUDICIAL DISTRICT |

F:\Asbestos\Hendler\Barletta\01Petition3rdAmended.wpd

of Kaiser Aluminum and Chemical Corporation, §
KELSEY-HAYES COMPANY, MAREMONT §
CORPORATION, Individually, and as a §
Subsidiary of ARVIN INDUSTRIES, INC., §
METROPOLITAN LIFE INSURANCE §
COMPANY, MORTON INTERNATIONAL, §
INC., which by reorganization assumed certain §
business obligations of MORTON THIOKOL, §
INC., Successor-in-Interest to the former §
THIOKOL CORPORATION and its former §
FRICTION DIVISION, NORTH AMERICAN §
REFRACTORIES CO., OWENS-ILLINOIS, §
INC. PECORA CORPORATION, PENTAIR, §
INC. (Individually and as Successor to §
AURORA PUMP COMPANY), PLIBRICO §
COMPANY, QUIGLEY CO., RHONE- §
POULENC AG COMPANY, INC., Successor- §
in-interest to Amchem Products, Inc., f/d/b/a §
Benjamin Foster, THERMWELL PRODUCTS §
CO., INC., 3M COMPANY, UNION §
CARBIDE, UNIROYAL CO., and §
§

**Defendants.**

## PLAINTIFFS' THIRD AMENDED PETITION AND JURY DEMAND

TO THE HONORABLE COURT:

COMES NOW, LOUIS BARLETTA and MARY JANE BARLETTA, hereinafter referred to

as "Plaintiffs," complaining of the various Defendants listed below and for causes of action would

respectfully show the Court and Jury as follows:

1.      This is an asbestos-related disease case.  Plaintiffs will move to have it proceed under Level III

of Rule 190 of the Texas Rules of Civil Procedure.

2.      Plaintiffs, LOUIS BARLETTA and MARY JANE BARLETTA, would show that Mr. Barletta

(hereinafter referred to as "Plaintiff") was employed in various facilities in and around the State

of Texas during which time he was exposed to asbestos dust and/or fibers.

3.     Defendants herein reside in Kleberg County, maintain principal offices in Kleberg County, and/or have agents in Kleberg County or the cause of action, in whole or in part, occurred in Kleberg County.  Therefore, venue properly lies in Kleberg County.

4.     The damages sought by Plaintiffs, exclusive of interests and costs, exceed the minimum jurisdictional limits of the Court.

5.     Defendant, AMERICAN CYANAMID, was previously served through process.

6.     Although Defendant, AMTICO INTERNATIONAL INC., was previously served through process.

7.     Although Defendant, ABB LTD, was previously served through process.

8.     Defendant, AC&S, INC., a/k/a ARMSTRONG CONTRACTING & SUPPLY INC., was previously served through process.

9.     Defendant, A.P. GREEN INDUSTRIES INC., was previously served through process.

10.     Defendant, A W CHESTERTON COMPANY, was previously served through process.

11.     Defendant, BABCOCK BORSIG POWER, INC., was previously served through process.

12.     Although Defendant, BONDEX INTERNATIONAL, INC., was previously served through process.

13.     Although Defendant, BORG WARNER CORPORATION, was previously served through process.

14.     Although Defendant, BURNHAM CORPORATION, was previously served through process.

15.     Although Defendant, C.L. ZIMMERMAN CO., was previously served through process.

16.     Defendant CERTAINTEED, was previously served through process.

17.    Defendant, CONGOLEUM CORPORATION, was previously served through process.

18.    Defendant, CRANE COMPANY, was previously served through process.

19.    Defendant, CROWN CORK & SEAL COMPANY, INC., was previously served through process.

20.    Defendant, DANA CORPORATION, was previously served through process.

21.    Although Defendant, THE FLINTKOTE COMPANY, was previously served through process.

22.    Defendant, FOSTER WHEELER ENERGY CORPORATION, was previously served through process.

23.    Defendant, GARLOCK, was previously served through process.

24.    Defendant, GENERAL ELECTRIC COMPANY, was previously served through process.

25.    Although Defendant, GENERAL REFRACTORIES COMPANY, was previously served through process.

26.    Defendant, GEORGIA-PACIFIC CORPORATION, was previously served through process.

27.    Defendant, GOODALL RUBBER COMPANY, was previously served through process.

28.    Although Defendant, GOULDS PUMPS, INCORPORATED, was previously served through process.

29.    Defendant GUARDLINE, INC. was previously served through process.

30.    Defendant HALLIBURTON COMPANY, Individually and as Successor to Dresser Industries and Worthington Corporation, was previously served through process.

31.    Defendant DRESSER INDUSTRIES, Successor by Merger to HARBISON-WALKER REFRACTORIES COMPANY'S, Formerly a Division of INDRESCO, INC., may be served

through process through its registered agent CT Corporation, 350 St. Paul Street, Dallas, Texas 75201.

32.   Although Defendant, HOMASOTE COMPANY, was previously served through process.

33.   Although Defendant, HONEYWELL INTERNATIONAL, INC., f/k/a ALLIED SIGNAL, INC. (Allied Corporation), f/k/a THE BENDIX CORPORATION, may be served through process at CT Corporation, 350 North St. Paul, Dallas, Texas 75201.

40.   Although Defendant, IMO INDUSTRIES, INC., was previously served through process.

41.   Although Defendant, ITT INDUSTRIES, INC., Individually and as Successor to ITT FLUID PRODUCTS CORP. AND ITT GRINNELL CORP., was previously served through process.

42.   Defendant, KAISER REFRACTORIES, A Division of KAISER ALUMINUM AND CHEMICAL CORPORATION, was previously served through process.

43.   Defendant, KELSEY-HAYES COMPANY, was previously served through process.

44.   Although Defendant, MAREMONT CORPORATION, Individually, and as a Subsidiary of ARVIN INDUSTRIES, INC., was previously served through process.

45.   Defendant, METROPOLITAN LIFE INSURANCE COMPANY, was previously served through process.

46.   Defendant, MORTON INTERNATIONAL, INC., which by reorganization assumed certain business obligations of MORTON THIOKOL, INC., Successor-in-Interest to the former THIOKOL CORPORATION and its former FRICTION DIVISION, was previously served through process.

47. Defendant, NORTH AMERICAN REFRACTORIES CO., was previously served through process.

48. Although Defendant, OWENS-ILLINOIS, INC., was previously served through process.

49. Defendant, PECORA CORPORATION, was previously served through process through its registered agent in Texas. Service was declined. Service is now being made through the President at the corporate headquarters P. Frederick, 165 Wambold Road, Harleysville, Pennsylvania 19438.

50. Although Defendant, PENTAIR, INC., Individually and as Successor to AURORA PUMP CO., was previously served through process.

51. Defendant, PLIBRICO COMPANY, was previously served through process.

52. Defendant, QUIGLEY CO., INC., was previously served through process.

53. Defendant, RHONE-POULENC AG COMPANY INC., Successor-in-interest to Amchem Products, Inc., f/d/b/a Benjamin Foster, was previously served through process.

54. Although Defendant, THERMWELL PRODUCTS CO., INC. was previously served through process.

55. Defendant 3M COMPANY (a/k/a Minnesota Mining & Manufacturing Company) was previously served through process.

56. Defendant, UNION CARBIDE, was previously served through process.

57. Defendant, UNIROYAL COMPANY, was previously served through process.

58. This is a lawsuit for damages from personal injuries from exposure to asbestos dust and/or fibers.

59.   This action is brought and these allegations are made pursuant to Tex. Civ. Prac. & Rem. Code § 71.031.

60.   Each Defendant corporation or its predecessor-in-interest whose liability stems from Count Three of this complaint, with the exception of Metropolitan Life Insurance Company, is, or at times material hereto, has been engaged in the mining, processing and/or manufacturing, sale and distribution of asbestos and asbestos-containing products.

61.   Plaintiffs would show that for a period of many years, Plaintiff worked with and/or was exposed to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products while working in various facilities in and around the States of Maryland, New Jersey, New York, and Texas. Plaintiff has been exposed, on numerous occasions, to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products produced and/or sold by Defendants and, in so doing, inhaled great quantities of asbestos fibers.   Further, Plaintiffs allege, as more specifically set out below, that Plaintiff suffered injuries proximately caused by his exposure to asbestos-containing products designed, manufactured, and sold by Defendants.

62.   Plaintiff, as an invitee of the Premise Defendants (as discussed below on Counts Seven and Eight), while in the course and scope of his employment, was exposed to asbestos, asbestos-containing products, and machinery containing asbestos or asbestos-containing products while on the defendants' premises.

63.   Plaintiffs further allege that Plaintiff was exposed to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products in his

occupation.  In that each exposure to such products caused or contributed to the injuries, illnesses, and disabilities of Plaintiff, Plaintiffs allege that the doctrine of joint and several liability should be extended to apply to each Defendant herein.

## COUNT ONE - NEGLIGENCE

64.     Plaintiff's illness is a direct and proximate result of the negligence of each Defendant and/or its predecessor-in-interest in that said entities produced, sold, and/or otherwise put into the stream of commerce, asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products, which the Defendants knew, or in the exercise of ordinary care should have known, were deleterious and highly harmful to Plaintiff's health and well-being.  The Defendants were negligent in one, some, and/or all of the following respects, among others, same being the proximate cause of Plaintiff's illness:

(a)     in failing to timely and adequately warn Plaintiff of the dangerous characteristics and serious health hazards associated with exposure to asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(b)     in failing to provide Plaintiff with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there were any, to protect Plaintiff from being harmed and disabled by exposure to asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(c)     in failing to place timely and adequate warnings on the containers of said asbestos,

and/or asbestos-containing products, or on the asbestos-containing products themselves, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products to warn of the dangers to health of coming into contact with said asbestos-containing products and/or machinery;

(d)     in failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and/or safe method of handling and installing asbestos and/or asbestos-containing products, or utilizing the machinery requiring or calling for the use of asbestos and/or asbestos-containing products in a safe manner;

(e)     in failing to develop and utilize a substitute material to eliminate asbestos fibers in the asbestos-containing products, and/or the machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(f)     in failing to properly design and manufacture asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products for safe use under conditions of use that were reasonably anticipated;

(g)     in failing to properly test said asbestos-containing products or machinery before they were released for consumer use; and

(h)     in failing to recall and/or remove from the stream of commerce said asbestos-containing products or machinery requiring or calling for the use of asbestos and/or asbestos-containing products despite knowledge of the unsafe and dangerous nature of such products or machinery.

## COUNT TWO - STRICT LIABILITY

65.     Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

66.     Plaintiffs  allege that Plaintiff was exposed to asbestos-containing products and/or machinery

requiring or calling for the use of asbestos and/or asbestos-containing products that were

manufactured and distributed by the Defendants and/or their predecessors-in-interest for use as

construction materials and/or machinery in industrial operations.  Plaintiffs would show that the

defective condition of the products rendered such products unreasonably dangerous, and the

asbestos-containing products and/or machinery were in this defective condition at the time they

left the hands of the Defendants.

67.     The Defendants are engaged in the business of selling asbestos-containing products and/or

machinery requiring or calling for asbestos or asbestos-containing products and these asbestos-

containing products and/or machinery, without substantial change in the condition in which they

were sold, were the proximate cause of the Plaintiff's illness.

68.     Defendants knew that these asbestos-containing products and/or machinery would be used

without inspection for defects and, by placing them on the market, represented that they would

safely do the job for which they were intended, which must necessarily include safe manipulation

and/or installation of the asbestos-containing products and/or operation, maintenance and/or

repair of the machinery requiring or calling for the use of asbestos and/or asbestos-containing

products.

69.     Plaintiff was unaware of the hazards and defects in the asbestos-containing products of the

Defendants which made them unsafe for the purposes of manipulation and/or installation.

Similarly, he was unaware of the hazards and defects in the machinery requiring or calling for the use of asbestos and/or asbestos-containing materials.

70.    During the periods that Plaintiff was exposed to the asbestos-containing products and/or machinery of the Defendants, these asbestos-containing products and/or machinery were being utilized in a manner which was intended by Defendants.

## COUNT THREE - CONSPIRACY

71.    Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

72.    Plaintiffs further allege that Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated, and conspired among themselves to cause Plaintiff's injuries by exposing Plaintiff to harmful and dangerous asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products. Defendants further knowingly agreed, contrived, combined, confederated and conspired to deprive Plaintiff of the opportunity of informed free choice as to whether to use said asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products or to expose themselves to said dangers. In this connection, Plaintiff has sued Metropolitan Life Insurance Company in its capacity as conspirator. Defendants committed the above-described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to Defendants' asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

73.    In furtherance of said conspiracies, Defendants performed the following overt acts:

F:\Asbestos\Hendler\Barletta\01Petition3rdAmended.wpd          11

(a)   For many decades, Defendants, individually, jointly, and in conspiracy with each other, have been in possession of medical and scientific data, literature, and test reports which clearly indicated that the inhalation of asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly.

(b)   Despite the medical and scientific data, literature, and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other, fraudulently, willfully, and maliciously:

(1)   withheld, concealed, and suppressed said medical and scientific data, literature, and test reports regarding the risks of asbestosis, cancer, mesothelioma, and other illnesses and diseases from Plaintiff who was using and being exposed to Defendants' asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(2)   caused to be released, published, and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of asbestosis, cancer, mesothelioma, and other illnesses and diseases, which Defendants knew were incorrect, incomplete, outdated, and misleading;

(3)   distorted the results of medical examinations conducted upon workers such as Plaintiff who were using asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products

and being exposed to the inhalation of asbestos dust and fibers by falsely stating

and/or concealing the nature and extent of the harm to which workers such as

Plaintiff have suffered.

(c)     By the false and fraudulent representations, omissions, and concealments set forth

above, Defendants, individually, jointly, and in conspiracy with each other, intended to

induce Plaintiff to rely upon said false and fraudulent representations, omissions and

concealments, to continue to expose himself to the dangers inherent in the use of and

exposure to Defendants' asbestos-containing products, and/or machinery requiring or

calling for the use of asbestos and/or asbestos-containing products.

74.     Plaintiffs allege that Plaintiff reasonably and in good faith relied upon the false and fraudulent

misrepresentations, omissions, and concealments made by the Defendants regarding the nature

of their asbestos-containing products and/or machinery requiring or calling for the use of

asbestos and/or asbestos-containing products.

75.     Plaintiffs will show that Plaintiff's injuries were a direct and proximate result of his reliance on

Defendants' false and fraudulent misrepresentations, omissions, and concealments, and that

Plaintiff was deprived of the opportunity of informed free choice in connection with the use of

and exposure to Defendants' asbestos-containing products and/or machinery requiring or calling

for the use of asbestos and/or asbestos-containing products.

76.     Moreover, Defendants continue to contrive, combine, confederate, and conspire among

themselves to injure Plaintiff and to deprive him of his rightful recoveries by joining together and

forming an entity known as the "Asbestos Claims Facility" and/or "Center for Claims Resolution"

and by proposing and entering into an agreement known as the "Wellington Agreement."  As a direct and proximate result of Defendants' ongoing actions, Plaintiff continues to sustain damages.

### COUNT FOUR - GROSS NEGLIGENCE

77.   Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

78.   The actions and inactions of Defendants and their predecessors-in-interest, as specifically alleged hereinabove, whether taken separately, or together, were of such a character as to constitute a pattern or practice of intentional wrongful conduct and/or malice resulting in damage and injury of Plaintiff.  More specifically, Defendants and their predecessors-in-interest, consciously and/or deliberately engaged in oppression, fraud, wantonness and/or malice with regard to the Plaintiff.  Therefore, Defendants are guilty of gross negligence for which they should be held liable in punitive and exemplary damages to Plaintiffs.

### COUNT FIVE - NEGLIGENT TESTING/LIABILITY TO THIRD PERSONS FOR NEGLIGENT PERFORMANCE OF UNDERTAKING

79.   Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

80.   Defendant Metropolitan Life Insurance Company through its Policyholders Service Bureau undertook duties owed by the asbestos-producing Defendants to Plaintiff by the testing of asbestos workers and the conduct of scientific studies.  These duties included without limitation,

   (1)   to test fully and adequately for health risks concomitant to the normal and intended use of their products; and

   (2)   to instruct fully and adequately in the uses of their products so as to eliminate or reduce the health hazards concomitant with their normal or intended use.

In undertaking these duties, Metropolitan Life knew or should have known that it was providing testing services for the ultimate protection of third persons, including Plaintiff. In both conducting said tests and in publishing their alleged results, Metropolitan Life failed to exercise reasonable care to conduct or publish complete, adequate, and accurate tests of the health effects of asbestos. Metropolitan Life also caused to be published intentionally false, misleading, inaccurate, and deceptive information about the health effects of asbestos exposure.

83.   Plaintiffs allege that Plaintiff unwittingly but justifiably relied upon the thoroughness of Metropolitan Life's tests and information dissemination, the results of which Metropolitan Life published in leading medical journals.

84.   As a direct and proximate contributing result of Metropolitan Life's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so, (i) the risk of harm to Plaintiff from asbestos exposure was increased; and (ii) Plaintiff suffered the injuries described below.

85.   In failing to test fully and adequately for the adverse health effects from exposure to asbestos, in delaying the publication of such results, in falsely editing such results as were obtained, in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product, and in collaborating with the asbestos-producing Defendants materially to understate the hazards of asbestos exposure, all for its own profit and gain, Metropolitan Life acted recklessly, wantonly, and in calculated disregard for the welfare of the general public, including the Plaintiff.

## COUNT SIX - JOINT TORTFEASOR LIABILITY

86.   Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

87.   The actions of all Defendants aided, abetted, encouraged, induced, or directed the negligent

and/or intentional acts of each and every other Defendant.

88.   Each of the Defendants knew or should have known that its individual actions would combine to

cause the injuries of the Plaintiff.

89.   The actions of Defendants are a proximate cause of the injuries of the Plaintiff.  As a result, all

Defendants are jointly liable for the damage caused by their combined actions.

## COUNT SEVEN-NEGLIGENCE OF PREMISE DEFENDANTS
### (American Cyanamid, Congoleum Corporation,
### Goodall Rubber Company, and Homasotes)

90.   The Premises Defendants, who consist of Defendants, American Cyanamid, Congoleum

Corporation, Goodall Rubber Company, and Homasotes, negligently caused or negligently

permitted asbestos and asbestos-containing products to be used on their premises even though

the Premises Defendants knew or should have known that asbestos and asbestos-containing

products were carcinogenic, poisonous, toxic and extremely dangerous and hazardous to human

health and that exposure to these products could result in an asbestos related disease in persons,

including Plaintiff.

91.   The Premises Defendants removed, installed, or otherwise manipulated asbestos-containing

product, which created an unreasonably dangerous activity on the premises.  Additionally, the

Premises Defendants exercised control over other who were installing removing , or otherwise

manipulating asbestos or asbestos-containing products, which also created an unreasonably

dangerous activity on the premises.

92.     Finally, during the period described above, the Premises Defendants, through their agents,

servants and/or employed were guilty of certain acts, wrongs and/or omissions, each of which,

independently or in combination with one another, amount to negligence.

## COUNT EIGHT-EXEMPLARY DAMAGES & MALICE OF PREMISE DEFENDANTS
### (American Cyanamid, Congoleum Corporation,
### Goodall Rubber Company, and Homasotes)

93.     Premises Defendants' negligence, acting through their agents, employees, and/or representatives,

was of such character as to make the Premises Defendants guilty of malice.  Specifically, the

Premises Defendants acted in such a way that involved an extreme degree of risk, considering

the probability and magnitude of potential harm to Plaintiff and which Defendants knew of the

risk, involved but proceeded with conscious indifference to the rights, safety, or welfare of

Plaintiff.   As a result of Defendants' conduct, acting through their agents, employees and/or

representatives, Plaintiffs seek exemplary damages in such an amount as to be proper under the

facts and circumstances.

## DAMAGES

The conduct of Defendants, as alleged, was a direct, proximate and producing cause of the

damages resulting from the asbestos-related lung diseases of Plaintiff, LOUIS BARLETTA and

of the following general and special damages that Plaintiffs have sustained:

(a)     Damages to punish Defendants for proximately causing Plaintiff's injuries;

(b)     The conscious physical pain and suffering and mental anguish sustained by Plaintiffs from

the inception of Plaintiff's disease.

(c)     The physical impairment suffered by Plaintiff;

(d)     The disfigurement suffered by Plaintiff;

(e)     Reasonable and necessary medical expenses incurred by Plaintiff due to the asbestos-related disease and other physical conditions from which he suffers;

(f)     Plaintiff's lost earnings and net accumulations;

(g)     The loss of the care, maintenance, services, support, advice, counsel, and consortium which Plaintiff's family members received from him prior to his illness;

(h)     The mental anguish of Plaintiff caused by his extraordinarily increased likelihood during his lifetime of developing asbestos-related cancer of the lungs, mesothelioma and other cancers, due to his exposure to products manufactured, sold and/or distributed by the Defendants and the actual development of mesothelioma;

(i)     The mental anguish suffered by Plaintiff and his family members as a consequence of observing his ongoing asbestos-related illness; and

(j)     Plaintiffs seek punitive and exemplary damages.

94.     Plaintiffs filed suit within two (2) years of the date of discovering Plaintiff's asbestos-related conditions or the existence of any asbestos-related causes of action.

## JURY DEMAND

95.    Plaintiffs demand that all issues of fact in this case be tried to a properly impaneled jury.

Plaintiffs have paid the requisite jury fee.

WHEREFORE, PREMISES CONSIDERED, LOUIS BARLETTA and MARY JANE

BARLETTA, Plaintiffs, demand judgments against the Defendants, and each of them, jointly and

severally, for general damages, special damages, for punitive and exemplary damages, for the costs

expended herein, for prejudgment interest from the date of the injury, and post-judgment interest on the

judgment at the highest rate allowed by law, and for such other and further relief, both at law and in

equity, to which Plaintiffs may show themselves justly entitled

Respectfully submitted,

THE HENDLER LAW FIRM, P.C.

By:    _____

Scott M. Hendler
Texas Bar No. 09445500
816 Congress Ave., Ste. 1100
Austin, Texas 78701
Telephone: (512) 473-3672
Facsimile: (512) 480-2209

ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **PLAINTIFFS' THIRD AMENDED
PETITION AND JURY DEMAND** has been served upon all counsel of record via certified mail
and/or through process on this 1st day of October, 2001.

_____

F:\Asbestos\Hendler\Barletta\01Petition3rdAmended.wpd

CAUSE NO. 01-454-D

| | | |
|---|---|---|
| LOUIS BARLETTA AND MARY JANE BARLETTA | § | IN THE DISTRICT COURT OF |
| | § | |
| **Plaintiffs,** | § | |
| V. | § | |
| | § | *EP* |
| AMERICAN CYANAMID, A.W. CHESTERTON CO., BABCOCK BORSIG POWER INC. (Individually and as Successor to the DB RILEY INC and RILEY STOKER COMPANY),BURNHAM CORPORATION (Individually and as Successor to KEWANEE BOILER), CERTAINTEED CORP., CONGOLEUM CORPORATION, CROWN CORK & SEAL COMPANY, INC., (Individually and as Successor-in-Interest to Mundet Cork Company), CRANE COMPANY, (Individually and as Successor-in-Interest to Crane Supply Co.), ENPRO INDUSTRIES as Ostensible Agent of GARLCOK INC., THE FLINTKOTE COMPANY, GARLOCK, INC., GENERAL ELECTRIC COMPANY, GEORGIA-PACIFIC CORPORATION, GOODALL RUBBER CO., GOODRICH CORP. (as Successor-in-Interest by merger to Garlock Inc.), GUARDLINE, INC.,HALLIBURTON COMPANY, (Individually and as Successor to Dresser Industries and Worthington Corporation), HOMASOTE COMPANY, IMO INDUSTRIES, INC., METROPOLITAN LIFE INSURANCE COMPANY, PECORA CORPORATION, PENTAIR, INC. (Individually and as Successor to AURORA PUMP COMPANY), QUIGLEY CO., RHONE-POULENC AG COMPANY, INC., Successor-in-interest to Amchem Products, Inc., f/d/b/a Benjamin Foster, THERMWELL PRODUCTS CO., INC., UNION CARBIDE, UNIROYAL CO. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | KLEBERG COUNTY, TEXAS |
| **Defendants.** | § | **105ᵗʰ JUDICIAL DISTRICT** |

## PLAINTIFFS' FOURTH AMENDED PETITION AND JURY DEMAND

TO THE HONORABLE COURT:

\\Server1\WP Documents\Asbestos\Hendler\Barletta\01Petition4thAmended.wpd

COMES NOW, LOUIS BARLETTA and MARY JANE BARLETTA, hereinafter referred to as "Plaintiffs," complaining of the various Defendants listed below and for causes of action would respectfully show the Court and Jury as follows:

1.      This is an asbestos-related disease case that will proceed under the Docket Control Order signed by Judge Manuel Banales and dated April 15, 2002.

2.      Plaintiffs, LOUIS BARLETTA and MARY JANE BARLETTA, would show that Mr. Barletta (hereinafter referred to as "Plaintiff") was employed in various facilities in and around the State of Texas during which time he was exposed to asbestos dust and/or fibers.

3.      Defendants herein reside in Kleberg County, maintain principal offices in Kleberg County, and/or have agents in Kleberg County or the cause of action, in whole or in part, occurred in Kleberg County.  Therefore, venue properly lies in Kleberg County.

4.      The damages sought by Plaintiffs, exclusive of interests and costs, exceed the minimum jurisdictional limits of the Court.

5.      Defendant, AMERICAN CYANAMID, was previously served through process.

6.      Defendant, A W CHESTERTON COMPANY, was previously served through process.

7.      Defendant, BABCOCK BORSIG POWER, INC., Individually and as Successor to the DB RILEY INC and RILEY STOKER COMPANY, was previously served through process.

8.      Defendant, BURNHAM CORPORATION, Individually and as Successor to Kewanee Boiler, was previously served through process.

9.      Defendant CERTAINTEED CORPORATION, was previously served through process.

10.     Defendant, CONGOLEUM CORPORATION, was previously served through process.

11.     Defendant, CRANE COMPANY, Individually and as Successor-in-Interest to Crane Supply Company, may be served with process through its home office, 100 First Stamford Place

Supply Company, may be served with process through its home office, 100 First Stamford Place Stamford, CT, 06902, pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac.& Rem. Code §17.041-.045. Defendant, CRANE COMPANY, may be served through the Secretary of State for the State of Texas. Crane Supply Co. was a United States entity that was distributing Crane products and other products containing asbestos.

12.   Defendant, CROWN CORK & SEAL COMPANY, INC., Individually and as Successor-in-Interest to Mundet Cork Company, was previously served through process.

13.   Defendant, ENPRO INDUSTRIES as Ostensible Agent of GARLOCK INC., may be served with process through its corporate office, 5605 Carnegie Blvd., Charlotte, NC, 28209-4674, pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac.& Rem. Code §17.041-.045. Defendant, ENPRO INDUSTRIES as Ostensible Agent of GARLOCK INC., may be served through the Secretary of State for the State of Texas.

14.   Defendant, THE FLINTKOTE COMPANY, was previously served through process.

15.   Defendant, GARLOCK, INC. was previously served through process.

16.   Defendant, GENERAL ELECTRIC COMPANY, was previously served through process.

17.   Defendant, GEORGIA-PACIFIC CORPORATION, was previously served through process.

18.   Defendant, GOODALL RUBBER COMPANY, was previously served through process.

19.   Defendant GOODRICH CORP., may be served with process through its agent, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201. This corporation is being sued as successor-in-interest by merger to GARLOCK, INC.

20.   Defendant GUARDLINE, INC. was previously served through process.

21.   Defendant HALLIBURTON COMPANY, Individually and as Successor to Dresser

\\Server1\WP Documents\Asbestos\Hendler\Barletta\01Petition4thAmended.wpd     3

Industries and Worthington Corporation, was previously served through process.

22.   Defendant, HOMASOTE COMPANY, was previously served through process.

23.   Defendant, IMO INDUSTRIES, INC., was previously served through process.

24.   Defendant, METROPOLITAN LIFE INSURANCE COMPANY, was previously served
through process.

25.   Defendant, PECORA CORPORATION, was previously served through process.

26.   Defendant, PENTAIR, INC., Individually and as Successor to AURORA PUMP CO., was
previously served through process.

27.   Defendant, QUIGLEY CO., was previously served through process.

28.   Defendant, RHONE-POULENC AG COMPANY INC., Successor-in-interest to Amchem
Products, Inc., f/d/b/a Benjamin Foster, was previously served through process.

29.   Defendant, THERMWELL PRODUCTS CO., INC. was previously served through its
general counsel.  Service was declined.  Service is now being made through the corporate
headquarters at  420 Rt. 175, Mahwah, NJ 07430, pursuant to the Texas Long-Arm
Statute, Tex. Civ. Prac. & Rem. Code § 17.041-.045.  Defendant THERMWELL
PRODUCTS CO., INC. may be served through the Secretary of State for the State of
Texas.

30.   Defendant, UNION CARBIDE, was previously served through process.

31.   Defendant, UNIROYAL COMPANY, was previously served through process.

32.   This is a lawsuit for damages from personal injuries from exposure to asbestos dust and/or
fibers.

33.   This action is brought and these allegations are made pursuant to Tex. Civ. Prac. & Rem.
Code §§ 17.042, 71.004, 71.021 and 71.031.

Three of this complaint is, or at times material hereto, has been engaged in the mining,

processing and/or manufacturing, sale and distribution of asbestos and asbestos-containing

products.

34.   Plaintiffs would show that for a period of many years, Plaintiff worked with and/or was

exposed to asbestos-containing products and/or machinery requiring or calling for the use

of asbestos and/or asbestos-containing products while working in various facilities in and

around the States of Maryland, New Jersey, New York, and Texas. Plaintiff has been

exposed, on numerous occasions, to asbestos-containing products and/or machinery

requiring or calling for the use of asbestos and/or asbestos-containing products produced

and/or sold by Defendants and, in so doing, inhaled great quantities of asbestos fibers.

Further, Plaintiffs allege, as more specifically set out below, that Plaintiff suffered injuries

proximately caused by his exposure to asbestos-containing products designed,

manufactured, and sold by Defendants.

35.   Plaintiff, as an invitee of the Premise Defendants (as discussed below on Counts Seven and

Eight), while in the course and scope of his work related responsibilities, was exposed to

asbestos, asbestos-containing products, and machinery containing asbestos or asbestos-

containing products while on the defendants' premises.

36.   Plaintiffs further allege that Plaintiff was exposed to asbestos-containing products and/or

machinery requiring or calling for the use of asbestos and/or asbestos-containing products

in his occupation.  In that each exposure to such products caused or contributed to the

injuries, illnesses, and disabilities of Plaintiff, Plaintiffs allege that the doctrine of joint and

several liability should be extended to apply to each Defendant herein.

## COUNT ONE - NEGLIGENCE

5

37.  Plaintiff's illness is a direct and proximate result of the negligence of each Defendant and/or its predecessor-in-interest in that said entities produced, sold, and/or otherwise put into the stream of commerce, asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products, which the Defendants knew, or in the exercise of ordinary care should have known, were deleterious and highly harmful to Plaintiff's health and well-being.  The Defendants were negligent in one, some, and/or all of the following respects, among others, same being the proximate cause of Plaintiff's illness:

(a)     in failing to timely and adequately warn Plaintiff of the dangerous characteristics and serious health hazards associated with exposure to asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(b)     in failing to provide Plaintiff with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there were any, to protect Plaintiff from being harmed and disabled by exposure to asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(c)     in failing to place timely and adequate warnings on the containers of said asbestos, and/or asbestos-containing products, or on the asbestos-containing products themselves, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products to warn of the dangers to health of coming into contact with said asbestos-containing products and/or machinery;

(d)     in failing to take reasonable precautions or exercise reasonable care to publish,

adopt and enforce a safety plan and/or safe method of handling and installing

asbestos and/or asbestos-containing products, or utilizing the machinery requiring

or calling for the use of asbestos and/or asbestos-containing products in a safe

manner;

(e)     in failing to develop and utilize a substitute material to eliminate asbestos fibers in

the asbestos-containing products, and/or the machinery requiring or calling for the

use of asbestos and/or asbestos-containing products;

(f)     in failing to properly design and manufacture asbestos, asbestos-containing

products, and/or machinery requiring or calling for the use of asbestos and/or

asbestos-containing products for safe use under conditions of use that were

reasonably anticipated;

(g)     in failing to properly test said asbestos-containing products or machinery before

they were released for consumer use; and

(h)     in failing to recall and/or remove from the stream of commerce said asbestos-

containing products or machinery requiring or calling for the use of asbestos and/or

asbestos-containing products despite knowledge of the unsafe and dangerous nature

of such products or machinery.

## COUNT TWO - STRICT LIABILITY

38.     Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

39.     Plaintiffs  allege that Plaintiff was exposed to asbestos-containing products and/or

machinery requiring or calling for the use of asbestos and/or asbestos-containing products

that were manufactured and distributed by the Defendants and/or their predecessors-in-

interest for use as construction materials and/or machinery in industrial operations.

Plaintiffs would show that the defective condition of the products rendered such products unreasonably dangerous, and the asbestos-containing products and/or machinery were in this defective condition at the time they left the hands of the Defendants.

40. The Defendants are engaged in the business of selling asbestos-containing products and/or machinery requiring or calling for asbestos or asbestos-containing products and these asbestos-containing products and/or machinery, without substantial change in the condition in which they were sold, were the proximate cause of the Plaintiff's illness.

41. Defendants knew that these asbestos-containing products and/or machinery would be used without inspection for defects and, by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include safe manipulation and/or installation of the asbestos-containing products and/or operation, maintenance and/or repair of the machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

42. Plaintiff was unaware of the hazards and defects in the asbestos-containing products of the Defendants which made them unsafe for the purposes of manipulation and/or installation. Similarly, he was unaware of the hazards and defects in the machinery requiring or calling for the use of asbestos and/or asbestos-containing materials.

43. During the periods that Plaintiff was exposed to the asbestos-containing products and/or machinery of the Defendants, these asbestos-containing products and/or machinery were being utilized in a manner which was intended by Defendants.

## COUNT THREE - CONSPIRACY

44. Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

45. Plaintiffs further allege that Defendants and/or their predecessors-in-interest knowingly

agreed, contrived, combined, confederated, and conspired among themselves to cause Plaintiff's injuries by exposing Plaintiff to harmful and dangerous asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.  Defendants further knowingly agreed, contrived, combined, confederated and conspired to deprive Plaintiff of the opportunity of informed free choice as to whether to use said asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products or to expose themselves to said dangers.  In this connection, Plaintiff has sued Metropolitan Life Insurance Company in its capacity as conspirator.  Defendants committed the above-described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to Defendants' asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

46.  In furtherance of said conspiracies, Defendants performed the following overt acts:

(a)  For many decades, Defendants, individually, jointly, and in conspiracy with each other, have been in possession of medical and scientific data, literature, and test reports which clearly indicated that the inhalation of asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly.

(b)  Despite the medical and scientific data, literature, and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other, fraudulently, willfully, and maliciously:

(1)    withheld, concealed, and suppressed said medical and scientific data, literature, and test reports regarding the risks of asbestosis, cancer, mesothelioma, and other illnesses and diseases from Plaintiff who was using and being exposed to Defendants' asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(2)    caused to be released, published, and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of asbestosis, cancer, mesothelioma, and other illnesses and diseases, which Defendants knew were incorrect, incomplete, outdated, and misleading;

(3)    distorted the results of medical examinations conducted upon workers such as Plaintiff who were using asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and being exposed to the inhalation of asbestos dust and fibers by falsely stating

and/or concealing the nature and extent of the harm to which workers such as Plaintiff have suffered.

(c)    By the false and fraudulent representations, omissions, and concealments set forth above, Defendants, individually, jointly, and in conspiracy with each other, intended to induce Plaintiff to rely upon said false and fraudulent representations, omissions and concealments, to continue to expose himself to the dangers inherent in the use of and exposure to Defendants' asbestos-containing products, and/or machinery

requiring or calling for the use of asbestos and/or asbestos-containing products.

47.    Plaintiffs allege that Plaintiff reasonably and in good faith relied upon the false and

fraudulent misrepresentations, omissions, and concealments made by the Defendants

regarding the nature of their asbestos-containing products and/or machinery requiring or

calling for the use of asbestos and/or asbestos-containing products.

48.    Plaintiffs will show that Plaintiff's injuries were a direct and proximate result of his reliance

on Defendants' false and fraudulent misrepresentations, omissions, and concealments, and

that Plaintiff was deprived of the opportunity of informed free choice in connection with

the use of and exposure to Defendants' asbestos-containing products and/or machinery

requiring or calling for the use of asbestos and/or asbestos-containing products.

49.    Moreover, Defendants continue to contrive, combine, confederate, and conspire among

themselves to injure Plaintiff and to deprive him of his rightful recoveries by joining

together and forming an entity known as the "Asbestos Claims Facility" and/or "Center for

Claims Resolution" and by proposing and entering into an agreement known as the

"Wellington Agreement."  As a direct and proximate result of Defendants' ongoing actions,

Plaintiff continues to sustain damages.

## COUNT FOUR - GROSS NEGLIGENCE

50.    Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

51.    The actions and inactions of Defendants and their predecessors-in-interest, as specifically

alleged hereinabove, whether taken separately, or together, were of such a character as to

constitute a pattern or practice of intentional wrongful conduct and/or malice resulting in

damage and injury of Plaintiff.  More specifically, Defendants and their predecessors-in-

interest, consciously and/or deliberately engaged in oppression, fraud, wantonness and/or

malice with regard to the Plaintiff.  Therefore, Defendants are guilty of gross negligence for which they should be held liable in punitive and exemplary damages to Plaintiffs.

### COUNT FIVE - NEGLIGENT TESTING/LIABILITY TO THIRD PERSONS FOR NEGLIGENT PERFORMANCE OF UNDERTAKING

52.   Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

53.   Defendant Metropolitan Life Insurance Company through its Policyholders Service Bureau undertook duties owed by the asbestos-producing Defendants to Plaintiff by the testing of asbestos workers and the conduct of scientific studies.  These duties included without limitation,

> (1)   to test fully and adequately for health risks concomitant to the normal and intended use of their products; and
>
> (2)   to instruct fully and adequately in the uses of their products so as to eliminate or reduce the health hazards concomitant with their normal or intended use.

In undertaking these duties, Metropolitan Life knew or should have known that it was providing testing services for the ultimate protection of third persons, including Plaintiff. In both conducting said tests and in publishing their alleged results, Metropolitan Life failed to exercise reasonable care to conduct or publish complete, adequate, and accurate tests of the health effects of asbestos.  Metropolitan Life also caused to be published intentionally false, misleading, inaccurate, and deceptive information about the health effects of asbestos exposure.

54.   Plaintiffs allege that Plaintiff unwittingly but justifiably relied upon the thoroughness of Metropolitan Life's tests and information dissemination, the results of which Metropolitan Life published in leading medical journals.

55. As a direct and proximate contributing result of Metropolitan Life's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so, (i) the risk of harm to Plaintiff from asbestos exposure was increased; and (ii) Plaintiff suffered the injuries described below.

56. In failing to test fully and adequately for the adverse health effects from exposure to asbestos, in delaying the publication of such results, in falsely editing such results as were obtained, in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product, and in collaborating with the asbestos-producing Defendants materially to understate the hazards of asbestos exposure, all for its own profit and gain, Metropolitan Life acted recklessly, wantonly, and in calculated disregard for the welfare of the general public, including the Plaintiff.

### COUNT SIX - JOINT TORTFEASOR LIABILITY

57. Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

58. The actions of all Defendants aided, abetted, encouraged, induced, or directed the negligent and/or intentional acts of each and every other Defendant.

59. Each of the Defendants knew or should have known that its individual actions would combine to cause the injuries of the Plaintiff.

60. The actions of Defendants are a proximate cause of the injuries of the Plaintiff. As a result, all Defendants are jointly liable for the damage caused by their combined actions.

### COUNT SEVEN-NEGLIGENCE OF PREMISE DEFENDANTS
### (American Cyanamid, Congoleum Corporation,
### Goodall Rubber Company, and Homasote Company)

61. The Premises Defendants, who consist of Defendants, American Cyanamid, Congoleum Corporation, Goodall Rubber Company, and Homasotes, negligently caused or negligently

permitted asbestos and asbestos-containing products to be used on their premises even though the Premises Defendants knew or should have known that asbestos and asbestos-containing products were carcinogenic, poisonous, toxic and extremely dangerous and hazardous to human health and that exposure to these products could result in an asbestos related disease in persons, including Plaintiff.

62. The Premises Defendants removed, installed, or otherwise manipulated asbestos-containing product, which created an unreasonably dangerous activity on the premises. Additionally, the Premises Defendants exercised control over other who were installing removing , or otherwise manipulating asbestos or asbestos-containing products, which also created an unreasonably dangerous activity on the premises.

63. Finally, during the period described above, the Premises Defendants, through their agents, servants and/or employed were guilty of certain acts, wrongs and/or omissions, each of which, independently or in combination with one another, amount to negligence.

## COUNT EIGHT-EXEMPLARY DAMAGES & MALICE OF PREMISE DEFENDANTS
### (American Cyanamid, Congoleum Corporation, Goodall Rubber Company, and Homasote Company)

64. Premises Defendants' negligence, acting through their agents, employees, and/or representatives, was of such character as to make the Premises Defendants guilty of malice. Specifically, the Premises Defendants acted in such a way that involved an extreme degree of risk, considering the probability and magnitude of potential harm to Plaintiff and which Defendants knew of the risk, involved but proceeded with conscious indifference to the rights, safety, or welfare of Plaintiff. As a result of Defendants' conduct, acting through their agents, employees and/or representatives, Plaintiffs seek exemplary damages in such an amount as to be proper under the facts and circumstances.

## DAMAGES

The conduct of Defendants, as alleged, was a direct, proximate and producing cause of the

damages resulting from the asbestos-related lung diseases of Plaintiff, LOUIS BARLETTA

and of the following general and special damages that Plaintiffs have sustained:

(a)   Damages to punish Defendants for proximately causing Plaintiff's injuries;

(b)   The conscious physical pain and suffering and mental anguish sustained by Plaintiffs

from the inception of Plaintiff's disease.

(c)   The physical impairment suffered by Plaintiff;

(d)   The disfigurement suffered by Plaintiff;

(e)   Reasonable and necessary medical expenses incurred by Plaintiff due to the

asbestos-related disease and other physical conditions from which he suffers;

(f)   Plaintiff's lost earnings and net accumulations;

(g)   The loss of the care, maintenance, services, support, advice, counsel, and

consortium which Plaintiff's family members received from him prior to his illness;

(h)   The mental anguish of Plaintiff caused by his extraordinarily increased likelihood

during his lifetime of developing asbestos-related cancer of the lungs, mesothelioma

and other cancers, due to his exposure to products manufactured, sold and/or

distributed by the Defendants and the actual development of mesothelioma;

(i)   The mental anguish suffered by Plaintiff and his family members as a consequence

of observing his ongoing asbestos-related illness; and

(j)   Plaintiffs seek punitive and exemplary damages.

65.   Plaintiffs filed suit within two (2) years of the date of discovering Plaintiff's asbestos-related

conditions or the existence of any asbestos-related causes of action.

conditions or the existence of any asbestos-related causes of action.

## JURY DEMAND

66.    Plaintiffs demand that all issues of fact in this case be tried to a properly impaneled jury.

Plaintiffs have paid the requisite jury fee.

WHEREFORE, PREMISES CONSIDERED, LOUIS BARLETTA and MARY JANE

BARLETTA, Plaintiffs, demand judgments against the Defendants, and each of them, jointly and

severally, for general damages, special damages, for punitive and exemplary damages, for the costs

expended herein, for prejudgment interest from the date of the injury, and post-judgment interest

on the judgment at the highest rate allowed by law, and for such other and further relief, both at

law and in equity, to which Plaintiffs may show themselves justly entitled

Respectfully submitted,

THE HENDLER LAW FIRM, P.C.

By: _____

Scott M. Hendler
Texas Bar No. 09445500
816 Congress Ave., Ste. 1100
Austin, Texas 78701
Telephone: (512) 473-3672
Facsimile: (512) 480-2209

Darrell Barger
BARGER, HERMANFEN, MCKIBBEN
AND VILLARREAL
One Shoreline Plaza, Suite 2000
800 N. Shoreline Blvd.
Corpus Christi, TX 78401
Telephone:(361) 866-8009
Facsimile: (361) 866-8039

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of **PLAINTIFFS' FOURTH AMENDED PETITION AND JURY DEMAND** has been served upon all counsel of record via certified mail and/or through process on this 27th day of June, 2002.

______________________________

CAUSE NO. 01-454-D

FILED

2002 SEP 11   AM 11: 30

MARTHA LESLIE
DISTRICT CLERK, KLEBERG CTY.

BY_____ DTY

| | | |
|---|---|---|
| LOUIS BARLETTA AND MARY JANE BARLETTA, | § | IN THE DISTRICT COURT OF |
| **Plaintiffs;** | § | |
| V. | § | |
| | § | |
| AMERICAN CYANAMID; A.W. CHESTERTON CO.; | § | |
| BABCOCK BORSIG POWER INC., Individually and as | § | |
| Successor to the DB Riley Inc. and Riley Stoker Company; | § | |
| BURNHAM CORPORATION, Individually and as | § | |
| Successor to Kewanee Boiler; CERTAINTEED CORP.; | § | |
| COLTEC INDUSTRIES, INC., as Successor-in-Interest by | § | |
| Merger with and Alter Ego of Garlock, Inc.; | § | |
| CONGOLEUM CORPORATION; CRANE COMPANY, | § | |
| Individually and as Successor-in-Interest to Crane Supply | § | |
| Co.; CROWN CORK & SEAL COMPANY, INC., | § | |
| Individually and as Successor-in-Interest to Mundet Cork | § | |
| Company; ENPRO INDUSTRIES, as Ostensible Agent of, | § | |
| Successor-in-Interest by Merger with and Alter Ego of | § | |
| Garlock Inc.; THE FLINTKOTE COMPANY; | § | |
| GARLOCK, INC., a/k/a Garlock Sealing Technologies; | § | |
| GENERAL ELECTRIC COMPANY; GEORGIA- | § | KLEBERG COUNTY, TEXAS |
| PACIFIC CORPORATION; GOODALL RUBBER CO.; | § | |
| GOODRICH CORP., as Successor-in-Interest by Merger | § | |
| with Coltec Industries, Inc. and Garlock, Inc.; | § | |
| GUARDLINE, INC.; HALLIBURTON COMPANY, | § | |
| Individually and as Successor to Dresser Industries and | § | |
| Worthington Corporation; HOMASOTE COMPANY; | § | |
| IMO INDUSTRIES, INC.; METROPOLITAN LIFE | § | |
| INSURANCE COMPANY; PECORA CORPORATION; | § | |
| PENTAIR, INC., Individually and as Successor to Aurora | § | |
| Pump Company; QUIGLEY CO.; RHONE-POULENC AG | § | |
| COMPANY, INC., Successor-in-interest to Amchem | § | |
| Products, Inc., f/d/b/a Benjamin Foster; THERMWELL | § | |
| PRODUCTS CO., INC.; UNION CARBIDE; UNIROYAL | § | |
| CO.; | § | |
| | § | |
| **Defendants.** | § | **105th JUDICIAL DISTRICT** |

## PLAINTIFFS' FIFTH AMENDED PETITION AND JURY DEMAND

TO THE HONORABLE COURT:

COMES NOW, LOUIS BARLETTA and MARY JANE BARLETTA, hereinafter

referred to as "Plaintiffs," complaining of the various Defendants listed below and for causes of

action would respectfully show the Court and Jury as follows:

1.       This is an asbestos-related disease case that will proceed under the Docket Control Order

         signed by Judge Manuel Banales and dated April 15, 2002.

\\Server1\wp documents\Asbestos\Hendler\Barletta\01Petition5thAmended.wpd

2.      Plaintiffs, LOUIS BARLETTA and MARY JANE BARLETTA, would show that Mr.
        Barletta (hereinafter referred to as "Plaintiff") was employed in various facilities in and
        around the State of Texas during which time he was exposed to asbestos dust and/or
        fibers.

3.      Defendants herein reside in Kleberg County, maintain principal offices in Kleberg
        County, and/or have agents in Kleberg County or the cause of action, in whole or in part,
        occurred in Kleberg County.  Therefore, venue properly lies in Kleberg County.

4.      The damages sought by Plaintiffs, exclusive of interests and costs, exceed the minimum
        jurisdictional limits of the Court.

5.      Defendant, AMERICAN CYANAMID, was previously served through process, and a
        copy of this amended Petition is being served upon its counsel of record.

6.      Defendant, A W CHESTERTON COMPANY, was previously served through process,
        and a copy of this amended Petition is being served upon its counsel of record.

7.      Defendant, BABCOCK BORSIG POWER, INC., Individually and as Successor to the
        DB RILEY INC and RILEY STOKER COMPANY, was previously served through
        process, and a copy of this amended Petition is being served upon its counsel of record.

8.      Defendant, BURNHAM CORPORATION, Individually and as Successor to Kewanee
        Boiler, was previously served through process, and a copy of this amended Petition is
        being served upon its counsel of record.

9.      Defendant CERTAINTEED CORPORATION, was previously served through process,
        and a copy of this amended Petition is being served upon its counsel of record.

10.     Defendant, COLTEC INDUSTRIES, INC., may be served with process through its
        registered agent, C.T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

This corporation is being sued as successor-in-interest by merger with and alter ego of GARLOCK, INC.

11.    Defendant, CONGOLEUM CORPORATION, was previously served through process, and a copy of this amended Petition is being served upon its counsel of record.

12.    Defendant, CRANE COMPANY, was previously served, and a copy of this amended Petition is being served upon its counsel of record.  Crane Supply Co. was a United States entity that was distributing Crane products and other products containing asbestos.

13.    Defendant, CROWN CORK & SEAL COMPANY, INC., Individually and as Successor-in-Interest to Mundet Cork Company, was previously served through process, and a copy of this amended Petition is being served upon its counsel of record.

14.    Defendant, ENPRO INDUSTRIES has previously been served, and a copy of this amended Petition is being served upon its counsel of record.  This corporation is being sued as ostensible agent of, successor-in-interest by merger with and alter ego of GARLOCK, INC.

15.    Defendant, THE FLINTKOTE COMPANY, was previously served through process, and a copy of this amended Petition is being served upon its counsel of record.

16.    Defendant, GARLOCK, INC., a/k/a Garlock Sealing Technologies, was previously served through process, and a copy of this amended Petition is being served upon its counsel of record.

17.    Defendant, GENERAL ELECTRIC COMPANY, was previously served through process, and a copy of this amended Petition is being served upon its counsel of record.

18.    Defendant, GEORGIA-PACIFIC CORPORATION, was previously served through process, and a copy of this amended Petition is being served upon its counsel of record.

19.     Defendant, GOODALL RUBBER COMPANY, was previously served through process, and a copy of this amended Petition is being served upon its counsel of record.

20.     Defendant GOODRICH CORP., was previously served, and a copy of this amended Petition is being served upon its counsel of record.  This corporation is being sued as successor-in-interest by merger with Coltec Industries, Inc. and Garlock, Inc.

21.     Defendant GUARDLINE, INC. was previously served through process, and a copy of this amended Petition is being served upon its counsel of record.

22.     Defendant HALLIBURTON COMPANY, Individually and as Successor to Dresser Industries and Worthington Corporation, was previously served through process, and a copy of this amended Petition is being served upon its counsel of record.

23.     Defendant, HOMASOTE COMPANY, was previously served through process, and a copy of this amended Petition is being served upon its counsel of record.

24.     Defendant, IMO INDUSTRIES, INC., was previously served through process, and a copy of this amended Petition is being served upon its counsel of record.

25.     Defendant, METROPOLITAN LIFE INSURANCE COMPANY, was previously served through process, and a copy of this amended Petition is being served upon its counsel of record.

26.     Defendant, PECORA CORPORATION, was previously served through process, and a copy of this amended Petition is being served upon its counsel of record.

27.     Defendant, PENTAIR, INC., Individually and as Successor to AURORA PUMP CO., was previously served through process, and a copy of this amended Petition is being served upon its counsel of record.

28.     Defendant, QUIGLEY CO., was previously served through process, and a copy of this

\\Server1\wp documents\Asbestos\Hendler\Barletta\01Petition5thAmended.wpd  4

amended Petition is being served upon its counsel of record.

29.     Defendant, RHONE-POULENC AG COMPANY INC., Successor-in-interest to Amchem

Products, Inc., f/d/b/a Benjamin Foster, was previously served through process, and a

copy of this amended Petition is being served upon its counsel of record.

30.     Defendant, THERMWELL PRODUCTS CO., INC. was previously served through its

general counsel.  Service was declined.  Service is now being made through the corporate

headquarters at  420 Rt. 175, Mahwah, NJ 07430, pursuant to the Texas Long-Arm

Statute, Tex. Civ. Prac. & Rem. Code § 17.041-.045.  Defendant THERMWELL

PRODUCTS CO., INC. may be served through the Secretary of State for the State of

Texas.

31.     Defendant, UNION CARBIDE, was previously served through process, and a copy of this

amended Petition is being served upon its counsel of record.

32.     Defendant, UNIROYAL COMPANY, was previously served through process, and a copy

of this amended Petition is being served upon its counsel of record.

33.     This is a lawsuit for damages from personal injuries from exposure to asbestos dust

and/or fibers.

34.     This action is brought and these allegations are made pursuant to Tex. Civ. Prac. & Rem.

Code §§ 17.042, 71.021 and 71.031.

35.     Each Defendant corporation or its predecessor-in-interest whose liability stems from

Count Three of this complaint is, or at times material hereto, has been engaged in the

mining, processing and/or manufacturing, sale and distribution of asbestos and asbestos-

containing products.

36.     Plaintiffs would show that for a period of many years, Plaintiff worked with and/or was

exposed to asbestos-containing products and/or machinery requiring or calling for the use

of asbestos and/or asbestos-containing products while working in various facilities in and

around the States of Maryland, New Jersey, New York, and Texas. Plaintiff has been

exposed, on numerous occasions, to asbestos-containing products and/or machinery

requiring or calling for the use of asbestos and/or asbestos-containing products produced

and/or sold by Defendants and, in so doing, inhaled great quantities of asbestos fibers.

Further, Plaintiffs allege, as more specifically set out below, that Plaintiff suffered

injuries proximately caused by his exposure to asbestos-containing products designed,

manufactured, and sold by Defendants.

37.   Plaintiff, as an invitee of the Premise Defendants (as discussed below on Counts Seven

and Eight), while in the course and scope of his work related responsibilities, was

exposed to asbestos, asbestos-containing products, and machinery containing asbestos or

asbestos-containing products while on the defendants' premises.

38.   Plaintiffs further allege that Plaintiff was exposed to asbestos-containing products and/or

machinery requiring or calling for the use of asbestos and/or asbestos-containing products

in his occupation.  In that each exposure to such products caused or contributed to the

injuries, illnesses, and disabilities of Plaintiff, Plaintiffs allege that the doctrine of joint

and several liability should be extended to apply to each Defendant herein.

## COUNT ONE - NEGLIGENCE

39.   Plaintiff's illness is a direct and proximate result of the negligence of each Defendant

and/or its predecessor-in-interest in that said entities produced, sold, and/or otherwise put

into the stream of commerce, asbestos, asbestos-containing products, and/or machinery

requiring or calling for the use of asbestos and/or asbestos-containing products, which the

Defendants knew, or in the exercise of ordinary care should have known, were deleterious and highly harmful to Plaintiff's health and well-being. The Defendants were negligent in one, some, and/or all of the following respects, among others, same being the proximate cause of Plaintiff's illness:

(a)     in failing to timely and adequately warn Plaintiff of the dangerous characteristics and serious health hazards associated with exposure to asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(b)     in failing to provide Plaintiff with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there were any, to protect Plaintiff from being harmed and disabled by exposure to asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(c)     in failing to place timely and adequate warnings on the containers of said asbestos, and/or asbestos-containing products, or on the asbestos-containing products themselves, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products to warn of the dangers to health of coming into contact with said asbestos-containing products and/or machinery;

(d)     in failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and/or safe method of handling and installing asbestos and/or asbestos-containing products, or utilizing the machinery requiring or calling for the use of asbestos and/or asbestos-containing products in a safe manner;

(e)      in failing to develop and utilize a substitute material to eliminate asbestos fibers in the asbestos-containing products, and/or the machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(f)      in failing to properly design and manufacture asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products for safe use under conditions of use that were reasonably anticipated;

(g)      in failing to properly test said asbestos-containing products or machinery before they were released for consumer use; and

(h)      in failing to recall and/or remove from the stream of commerce said asbestos-containing products or machinery requiring or calling for the use of asbestos and/or asbestos-containing products despite knowledge of the unsafe and dangerous nature of such products or machinery.

## COUNT TWO - STRICT LIABILITY

40.    Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

41.    Plaintiffs allege that Plaintiff was exposed to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products that were manufactured and distributed by the Defendants and/or their predecessors-in-interest for use as construction materials and/or machinery in industrial operations. Plaintiffs would show that the defective condition of the products rendered such products unreasonably dangerous, and the asbestos-containing products and/or machinery were in this defective condition at the time they left the hands of the Defendants.

42.    The Defendants are engaged in the business of selling asbestos-containing products

and/or machinery requiring or calling for asbestos or asbestos-containing products and these asbestos-containing products and/or machinery, without substantial change in the condition in which they were sold, were the proximate cause of the Plaintiff's illness.

43.   Defendants knew that these asbestos-containing products and/or machinery would be used without inspection for defects and, by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include safe manipulation and/or installation of the asbestos-containing products and/or operation, maintenance and/or repair of the machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

44.   Plaintiff was unaware of the hazards and defects in the asbestos-containing products of the Defendants which made them unsafe for the purposes of manipulation and/or installation.  Similarly, he was unaware of the hazards and defects in the machinery requiring or calling for the use of asbestos and/or asbestos-containing materials.

45.   During the periods that Plaintiff was exposed to the asbestos-containing products and/or machinery of the Defendants, these asbestos-containing products and/or machinery were being utilized in a manner which was intended by Defendants.

## COUNT THREE - CONSPIRACY

46.   Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

47.   Plaintiffs further allege that Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated, and conspired among themselves to cause Plaintiff's injuries by exposing Plaintiff to harmful and dangerous asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.  Defendants further knowingly agreed, contrived, combined,

confederated and conspired to deprive Plaintiff of the opportunity of informed free choice as to whether to use said asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products or to expose themselves to said dangers.  In this connection, Plaintiff has sued Metropolitan Life Insurance Company in its capacity as conspirator.  Defendants committed the above-described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to Defendants' asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

48.   In furtherance of said conspiracies, Defendants performed the following overt acts:

(a)   For many decades, Defendants, individually, jointly, and in conspiracy with each other, have been in possession of medical and scientific data, literature, and test reports which clearly indicated that the inhalation of asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly.

(b)   Despite the medical and scientific data, literature, and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other, fraudulently, willfully, and maliciously:

(1)   withheld, concealed, and suppressed said medical and scientific data, literature, and test reports regarding the risks of asbestosis, cancer, mesothelioma, and other illnesses and diseases from Plaintiff who was

using and being exposed to Defendants' asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(2)     caused to be released, published, and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of asbestosis, cancer, mesothelioma, and other illnesses and diseases, which Defendants knew were incorrect, incomplete, outdated, and misleading;

(3)     distorted the results of medical examinations conducted upon workers such as Plaintiff who were using asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and being exposed to the inhalation of asbestos dust and fibers by falsely stating and/or concealing the nature and extent of the harm to which workers such as Plaintiff have suffered.

(c)     Defendant Crown Cork & Seal's predecessor, Mundet Cork, was a member of the Magnesia Insulation Manufacturers' Association ("MIMA"). Mundet conspired with the other members of MIMA to write the specifications for insulating products so that the government would be required to purchase their products. Meanwhile, Mundet and the other members of the conspiracy failed to disclose to the United States military the unreasonably dangerous characteristics of their products, so that they could continue to sell their asbestos-containing products to the United States Government.

(d)     By the false and fraudulent representations, omissions, and concealments set forth above, Defendants, individually, jointly, and in conspiracy with each other, intended to induce Plaintiff to rely upon said false and fraudulent representations, omissions and concealments, to continue to expose himself to the dangers inherent in the use of and exposure to Defendants' asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

49.     Plaintiffs allege that Plaintiff reasonably and in good faith relied upon the false and fraudulent misrepresentations, omissions, and concealments made by the Defendants regarding the nature of their asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

50.     Plaintiffs will show that Plaintiff's injuries were a direct and proximate result of his reliance on Defendants' false and fraudulent misrepresentations, omissions, and concealments, and that Plaintiff was deprived of the opportunity of informed free choice in connection with the use of and exposure to Defendants' asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

51.     Moreover, Defendants continue to contrive, combine, confederate, and conspire among themselves to injure Plaintiff and to deprive him of his rightful recoveries by joining together and forming an entity known as the "Asbestos Claims Facility" and/or "Center for Claims Resolution" and by proposing and entering into an agreement known as the "Wellington Agreement."  As a direct and proximate result of Defendants' ongoing actions, Plaintiff continues to sustain damages.

## COUNT FOUR - GROSS NEGLIGENCE

52.     Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

53.     The actions and inactions of Defendants and their predecessors-in-interest, as specifically alleged hereinabove, whether taken separately, or together, were of such a character as to constitute a pattern or practice of intentional wrongful conduct and/or malice resulting in damage and injury of Plaintiff.  More specifically, Defendants and their predecessors-in-interest, consciously and/or deliberately engaged in oppression, fraud, wantonness and/or malice with regard to the Plaintiff.  Therefore, Defendants are guilty of gross negligence for which they should be held liable in punitive and exemplary damages to Plaintiffs.

## COUNT FIVE - NEGLIGENT TESTING/LIABILITY TO THIRD PERSONS FOR NEGLIGENT PERFORMANCE OF UNDERTAKING

54.     Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

55.     Defendant Metropolitan Life Insurance Company through its Policyholders Service Bureau undertook duties owed by the asbestos-producing Defendants to Plaintiff by the testing of asbestos workers and the conduct of scientific studies.  These duties included without limitation,

(1)     to test fully and adequately for health risks concomitant to the normal and intended use of their products; and

(2)     to instruct fully and adequately in the uses of their products so as to eliminate or reduce the health hazards concomitant with their normal or intended use.

In undertaking these duties, Metropolitan Life knew or should have known that it was providing testing services for the ultimate protection of third persons, including Plaintiff. In both conducting said tests and in publishing their alleged results, Metropolitan Life

failed to exercise reasonable care to conduct or publish complete, adequate, and accurate tests of the health effects of asbestos.  Metropolitan Life also caused to be published intentionally false, misleading, inaccurate, and deceptive information about the health effects of asbestos exposure.

56.   Plaintiffs allege that Plaintiff unwittingly but justifiably relied upon the thoroughness of Metropolitan Life's tests and information dissemination, the results of which Metropolitan Life published in leading medical journals.

57.   As a direct and proximate contributing result of Metropolitan Life's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so, (i) the risk of harm to Plaintiff from asbestos exposure was increased; and (ii)  Plaintiff suffered the injuries described below.

58.   In failing to test fully and adequately for the adverse health effects from exposure to asbestos, in delaying the publication of such results, in falsely editing such results as were obtained, in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product, and in collaborating with the asbestos-producing Defendants materially to understate the hazards of asbestos exposure, all for its own profit and gain, Metropolitan Life acted recklessly, wantonly, and in calculated disregard for the welfare of the general public, including the Plaintiff.

## COUNT SIX - MALICE

59.   All of the allegations contained in the previous paragraphs are realleged herein.

60.   The actions and inactions of Defendants and their predecessors-in-interest, as specifically alleged hereinabove, whether taken separately, or together, were of such a character as to constitute a pattern or practice of intentional wrongful conduct and/or malice, as defined

in Tex. Civ. Prac. & Rem. Code Ann. Chapter 41, which caused injury to Plaintiff, as

well as Plaintiffs' damages.  Therefore, each Defendant should be held liable in

exemplary damages to Plaintiffs.

### COUNT SEVEN - JOINT TORTFEASOR LIABILITY

61.   Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

62.   The actions of all Defendants aided, abetted, encouraged, induced, or directed the

negligent and/or intentional acts of each and every other Defendant.

63.   Each of the Defendants knew or should have known that its individual actions would

combine to cause the injuries of the Plaintiff.

64.   The actions of Defendants are a proximate cause of the injuries of the Plaintiff.  As a

result, all Defendants are jointly liable for the damage caused by their combined actions.

### COUNT EIGHT – SHAM TO PERPETUATE A FRAUD/SINGLE BUSINESS ENTITY
**(Coltec Industries, Inc.; EnPro Industries; Garlock, Inc.;
Garlock Sealing Technologies; and Goodrich Corp.)**

65.   Plaintiffs incorporate herein all of the above allegations for all purposes.

66.   Coltec Industries, Inc.; EnPro Industries; Garlock, Inc.; Garlock Sealing Technologies;

and Goodrich Corp. ("the Garlock Companies") at all relevant times have operated as a

single business entity, all of whom are fully, jointly and severally responsible for all acts

of Garlock, Inc.

67.   The separate corporate forms of Coltec Industries, Inc.; EnPro Industries; Garlock, Inc.;

and Garlock Sealing Technologies are shams to perpetuate a fraud, in that they seek to

assign all of the asbestos liabilities of "the Garlock Companies" to an entity that is unable

to pay Plaintiffs.

68.   Goodrich Corp., by merger with Coltec Industries, Inc., has become an entity fully

responsible for the tort liability of all "the Garlock Companies."

## COUNT NINE - NEGLIGENCE OF PREMISE DEFENDANTS
### (American Cyanamid, Congoleum Corporation,
### Goodall Rubber Company and Homasote Company)

69.    Plaintiffs will show that the Premises Defendants, which consist of American Cyanamid,

Congoleum Corporation, Goodall Rubber Company and Homasote Company, failed to

provide a safe workplace and that such failure was a proximate and producing cause of

Plaintiffs' injuries an damages.  Defendants exercised or retained some control over the

manner in which the work was performed, other than the right to order the work to start

or stop or to inspect progress or receive reports.  Defendants had actual knowledge of the

potential hazards posed by exposure to asbestos-containing products and failed to take

appropriate action in response to the potential danger or condition in response.  In the

alternative, as all persons and entities are charged with knowledge of applicable laws,

Defendants had actual knowledge implied as a matter of law of the hazards of working

with asbestos pursuant to the law of the State of Texas, beginning in at least 1958 with

the regulations and mandates of the Texas Department of Health imposing exposure

limits for various toxic agents including asbestos, and pursuant to federal law beginning

no later than in the 1950s with the Walsh – Healy Act, or in 1970, pursuant to OSHA.

70.    The Premises Defendants negligently caused or negligently permitted asbestos and

asbestos-containing products to be used on their premises even though the Premises

Defendants knew or should have known that asbestos and asbestos-containing products

were carcinogenic, poisonous, toxic and extremely dangerous and hazardous to human

health and that exposure to these products could result in an asbestos related disease in

persons, including Plaintiff.

71.   The Premises Defendants removed, installed, or otherwise manipulated asbestos-containing product, which created an unreasonably dangerous activity on the premises. Additionally, the Premises Defendants exercised control over other who were installing removing , or otherwise manipulating asbestos or asbestos-containing products, which also created an unreasonably dangerous activity on the premises.

72.   Finally, during the period described above, the Premises Defendants, through their agents, servants and/or employed were guilty of certain acts, wrongs and/or omissions, each of which, independently or in combination with one another, amount to negligence.

## COUNT TEN - EXEMPLARY DAMAGES & MALICE OF PREMISE DEFENDANTS
### (American Cyanamid, Congoleum Corporation, Goodall Rubber Company and Homasote Company)

73.   Premises Defendants' negligence, acting through their agents, employees, and/or representatives, was of such character as to make the Premises Defendants guilty of malice.  Specifically, the Premises Defendants acted in such a way that involved an extreme degree of risk, considering the probability and magnitude of potential harm to Plaintiff and which Defendants knew of the risk, involved but proceeded with conscious indifference to the rights, safety, or welfare of Plaintiff.   As a result of Defendants' conduct, acting through their agents, employees and/or representatives, Plaintiffs seek exemplary damages in such an amount as to be proper under the facts and circumstances.

## DAMAGES

74.   The conduct of Defendants, as alleged, was a direct, proximate and producing cause of the damages resulting from the asbestos-related lung diseases of Plaintiff, LOUIS BARLETTA and of the following general and special damages that Plaintiffs  have sustained:

(a)   Damages to punish Defendants for proximately causing Plaintiff's injuries;

(b)   The conscious physical pain and suffering and mental anguish sustained by Plaintiffs from the inception of Plaintiff's disease.

(c)   The physical impairment suffered by Plaintiff;

(d)   The disfigurement suffered by Plaintiff;

(e)   Reasonable and necessary medical expenses incurred by Plaintiff due to the asbestos-related disease and other physical conditions from which he suffers;

(f)   Plaintiff's lost earnings and net accumulations;

(g)   The loss of the care, maintenance, services, support, advice, counsel, and consortium which Plaintiff's family members received from him prior to his illness;

(h)   The mental anguish of Plaintiff caused by his extraordinarily increased likelihood during his lifetime of developing asbestos-related cancer of the lungs, mesothelioma and other cancers, due to his exposure to products manufactured, sold and/or distributed by the Defendants and the actual development of mesothelioma;

(i)   The mental anguish suffered by Plaintiff and his family members as a consequence of observing his ongoing asbestos-related illness; and

(j)   Plaintiffs seek punitive and exemplary damages.

75.   Plaintiffs filed suit within two (2) years of the date of discovering Plaintiff's asbestos-related conditions or the existence of any asbestos-related causes of action.

## JURY DEMAND

76.   Plaintiffs demand that all issues of fact in this case be tried to a properly impaneled jury.

Plaintiffs have paid the requisite jury fee.

WHEREFORE, PREMISES CONSIDERED, LOUIS BARLETTA and MARY JANE BARLETTA, Plaintiffs, demand judgments against the Defendants, and each of them, jointly and severally, for general damages, special damages, for punitive and exemplary damages, for the costs expended herein, for prejudgment interest from the date of the injury, and post-judgment interest on the judgment at the highest rate allowed by law, and for such other and further relief, both at law and in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,
THE HENDLER LAW FIRM, P.C.

By: _____
Scott M. Hendler
Texas Bar No. 09445500
816 Congress Ave., Ste. 1100
Austin, Texas 78701
Telephone: (512) 473-3672
Facsimile: (512) 480-2209

Darrell Barger
BARGER, HERMANSEN, MCKIBBEN
AND VILLARREAL
One Shoreline Plaza, Suite 2000
800 N. Shoreline Blvd.
Corpus Christi, TX 78401
Telephone:(361) 866-8009
Facsimile: (361) 866-8039

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of Plaintiffs' Fifth Amended Petition and Jury Demand has been served upon all counsel of record via certified mail and/or through process on this, the 10th day of September, 2002.

FILED

2003 MAR -7  PM 5: 04

MARTHA LIGLIZ
DIST. CLERK KLEBERG CTY.

_____ *EP* _____ DEPUTY

CAUSE NO. 01-454-D

LOUIS BARLETTA AND MARY JANE BARLETTA,          §          IN THE DISTRICT COURT OF _____
                                                                                      §
        Plaintiffs,                                                      §
                                                                                      §
V.                                                                                 §
                                                                                      §
A.W. CHESTERTON CO.; BABCOCK BORSIG              §
POWER INC., Individually and as Successor to the DB  §
Riley Inc. and Riley Stoker Company; CERTAINTEED §
CORP.; COLTEC INDUSTRIES, INC., as Successor-in-  §
Interest by Merger with and Alter Ego of Garlock, Inc.;  §
CONGOLEUM CORPORATION; CRANE COMPANY,     §
Individually and as Successor-in-Interest to Crane Supply  §          KLEBERG COUNTY, TEXAS
Co.; ENPRO INDUSTRIES, as Ostensible Agent of,       §
Successor-in-Interest by Merger with and Alter Ego of   §
Garlock Inc.; THE FLINTKOTE COMPANY;           §
GARLOCK, INC., a/k/a Garlock Sealing Technologies;  §
GEORGIA-PACIFIC CORPORATION; GOODALL       §
RUBBER CO.; GOODRICH CORP., as Successor-in-    §
Interest by Merger with Coltec Industries, Inc. and        §
Garlock, Inc.;  GUARDLINE, INC.; HOMASOTE      §
COMPANY; IMO INDUSTRIES, INC.; QUIGLEY CO.   §
                                                                                      §
        Defendants.                                                    §          105ᵗʰ JUDICIAL DISTRICT

### PLAINTIFFS' SIXTH AMENDED PETITION AND JURY DEMAND

TO THE HONORABLE COURT:

COMES NOW, LOUIS BARLETTA and MARY JANE BARLETTA, hereinafter

referred to as "Plaintiffs," complaining of the various Defendants listed below and for causes of

action would respectfully show the Court and Jury as follows:

1.      This is an asbestos-related disease case that will proceed under the Docket Control Order

        signed by Judge Manuel Banales and dated November 26, 2002.

2.      Plaintiffs, LOUIS BARLETTA and MARY JANE BARLETTA, would show that Mr.

        Barletta (hereinafter referred to as "Plaintiff") was employed in various facilities in and

        around the State of Texas during which time he was exposed to asbestos dust and/or

        fibers.

3.      Defendants herein reside in Kleberg County, maintain principal offices in Kleberg County,

and/or have agents in Kleberg County or the cause of action, in whole or in part, occurred in Kleberg County.  Therefore, venue properly lies in Kleberg County.

4.    The damages sought by Plaintiffs, exclusive of interests and costs, exceed the minimum jurisdictional limits of the Court.

5.    Defendant, A W CHESTERTON COMPANY, was previously served through process, and a copy of this amended Petition is being served upon its counsel of record.

6.    Defendant, BABCOCK BORSIG POWER, INC., Individually and as Successor to the DB RILEY INC and RILEY STOKER COMPANY, was previously served through process, and a copy of this amended Petition is being served upon its counsel of record.

7.    Defendant CERTAINTEED CORPORATION, was previously served through process, and a copy of this amended Petition is being served upon its counsel of record.

8.    Defendant, COLTEC INDUSTRIES, INC., may be served with process through its registered agent, C.T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.  This corporation is being sued as successor-in-interest by merger with and alter ego of GARLOCK, INC.

9.    Defendant, CONGOLEUM CORPORATION, was previously served through process, and a copy of this amended Petition is being served upon its counsel of record.

10.    Defendant, CRANE COMPANY, was previously served, and a copy of this amended Petition is being served upon its counsel of record.  Crane Supply Co. was a United States entity that was distributing Crane products and other products containing asbestos.

11.    Defendant, ENPRO INDUSTRIES has previously been served, and a copy of this amended Petition is being served upon its counsel of record.  This corporation is being

2

sued as ostensible agent of, successor-in-interest by merger with and alter ego of

GARLOCK, INC.

12.    Defendant, THE FLINTKOTE COMPANY, was previously served through process, and

a copy of this amended Petition is being served upon its counsel of record.

13.    Defendant, GARLOCK, INC., a/k/a Garlock Sealing Technologies, was previously served

through process, and a copy of this amended Petition is being served upon its counsel of

record.

14.    Defendant, GEORGIA-PACIFIC CORPORATION, was previously served through

process, and a copy of this amended Petition is being served upon its counsel of record.

15.    Defendant, GOODALL RUBBER COMPANY, was previously served through process,

and a copy of this amended Petition is being served upon its counsel of record.

16.    Defendant GOODRICH CORP., was previously served, and a copy of this amended

Petition is being served upon its counsel of record.  This corporation is being sued as

successor-in-interest by merger with Coltec Industries, Inc. and Garlock, Inc.

17.    Defendant GUARDLINE, INC. was previously served through process, and a copy of this

amended Petition is being served upon its counsel of record.

18.    Defendant, HOMASOTE COMPANY, was previously served through process, and a

copy of this amended Petition is being served upon its counsel of record.

19.    Defendant, IMO INDUSTRIES, INC., was previously served through process, and a copy

of this amended Petition is being served upon its counsel of record.

20.    Defendant, QUIGLEY CO., was previously served through process, and a copy of this

amended Petition is being served upon its counsel of record.

21.  This is a lawsuit for damages from personal injuries from exposure to asbestos dust and/or fibers.

22.  This action is brought and these allegations are made pursuant to Tex. Civ. Prac. & Rem. Code §§ 17.042, 71.021 and 71.031.

23.  Each Defendant corporation or its predecessor-in-interest whose liability stems from Count Three of this complaint is, or at times material hereto, has been engaged in the mining, processing and/or manufacturing, sale and distribution of asbestos and asbestos-containing products.

24.  Plaintiffs would show that for a period of many years, Plaintiff worked with and/or was exposed to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products while working in various facilities in and around the States of Maryland, New Jersey, New York, and Texas. Plaintiff has been exposed, on numerous occasions, to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products produced and/or sold by Defendants and, in so doing, inhaled great quantities of asbestos fibers. Further, Plaintiffs allege, as more specifically set out below, that Plaintiff suffered injuries proximately caused by his exposure to asbestos-containing products designed, manufactured, and sold by Defendants.

25.  Plaintiff, as an invitee of the Premise Defendants (as discussed below on Counts Seven and Eight), while in the course and scope of his work related responsibilities, was exposed to asbestos, asbestos-containing products, and machinery containing asbestos or asbestos-containing products while on the defendants' premises.

—

26.  Plaintiffs further allege that Plaintiff was exposed to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products in his occupation.  In that each exposure to such products caused or contributed to the injuries, illnesses, and disabilities of Plaintiff, Plaintiffs allege that the doctrine of joint and several liability should be extended to apply to each Defendant herein.

## COUNT ONE - NEGLIGENCE

27.  Plaintiff's illness is a direct and proximate result of the negligence of each Defendant and/or its predecessor-in-interest in that said entities produced, sold, and/or otherwise put into the stream of commerce, asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products, which the Defendants knew, or in the exercise of ordinary care should have known, were deleterious and highly harmful to Plaintiff's health and well-being.  The Defendants were negligent in one, some, and/or all of the following respects, among others, same being the proximate cause of Plaintiff's illness:

(a)  in failing to timely and adequately warn Plaintiff of the dangerous characteristics and serious health hazards associated with exposure to asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(b)  in failing to provide Plaintiff with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there were any, to protect Plaintiff from being harmed and disabled by exposure to asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

---

(c)     in failing to place timely and adequate warnings on the containers of said asbestos, and/or asbestos-containing products, or on the asbestos-containing products themselves, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products to warn of the dangers to health of coming into contact with said asbestos-containing products and/or machinery;

(d)     in failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and/or safe method of handling and installing asbestos and/or asbestos-containing products, or utilizing the machinery requiring or calling for the use of asbestos and/or asbestos-containing products in a safe manner;

(e)     in failing to develop and utilize a substitute material to eliminate asbestos fibers in the asbestos-containing products, and/or the machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(f)     in failing to properly design and manufacture asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products for safe use under conditions of use that were reasonably anticipated;

(g)     in failing to properly test said asbestos-containing products or machinery before they were released for consumer use; and

(h)     in failing to recall and/or remove from the stream of commerce said asbestos-containing products or machinery requiring or calling for the use of asbestos and/or asbestos-containing products despite knowledge of the unsafe and dangerous nature of such products or machinery.

## COUNT TWO - STRICT LIABILITY

28.   Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

29.   Plaintiffs  allege that Plaintiff was exposed to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products that were manufactured and distributed by the Defendants and/or their predecessors-in-interest for use as construction materials and/or machinery in industrial operations. Plaintiffs would show that the defective condition of the products rendered such products unreasonably dangerous, and the asbestos-containing products and/or machinery were in this defective condition at the time they left the hands of the Defendants.

30.   The Defendants are engaged in the business of selling asbestos-containing products and/or machinery requiring or calling for asbestos or asbestos-containing products and these asbestos-containing products and/or machinery, without substantial change in the condition in which they were sold, were the proximate cause of the Plaintiff's illness.

31.   Defendants knew that these asbestos-containing products and/or machinery would be used without inspection for defects and, by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include safe manipulation and/or installation of the asbestos-containing products and/or operation, maintenance and/or repair of the machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

32.   Plaintiff was unaware of the hazards and defects in the asbestos-containing products of the Defendants which made them unsafe for the purposes of manipulation and/or installation. Similarly, he was unaware of the hazards and defects in the machinery requiring or calling for the use of asbestos and/or asbestos-containing materials.

33.   During the periods that Plaintiff was exposed to the asbestos-containing products and/or

machinery of the Defendants, these asbestos-containing products and/or machinery were

being utilized in a manner which was intended by Defendants.

## COUNT THREE - CONSPIRACY

34.   Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

35.   Plaintiffs further allege that Defendants and/or their predecessors-in-interest knowingly

agreed, contrived, combined, confederated, and conspired among themselves to cause

Plaintiff's injuries by exposing Plaintiff to harmful and dangerous asbestos-containing

products and/or machinery requiring or calling for the use of asbestos and/or asbestos-

containing products.  Defendants further knowingly agreed, contrived, combined,

confederated and conspired to deprive Plaintiff of the opportunity of informed free choice

as to whether to use said asbestos-containing products and/or machinery requiring or

calling for the use of asbestos and/or asbestos-containing products or to expose

themselves to said dangers.  In this connection, Plaintiff has sued Metropolitan Life

Insurance Company in its capacity as conspirator.  Defendants committed the above-

described wrongs by willfully misrepresenting and suppressing the truth as to the risks and

dangers associated with the use of and exposure to Defendants' asbestos-containing

products and/or machinery requiring or calling for the use of asbestos and/or asbestos-

containing products.

36.   In furtherance of said conspiracies, Defendants performed the following overt acts:

(a)      For many decades, Defendants, individually, jointly, and in conspiracy with each

other, have been in possession of medical and scientific data, literature, and test

reports which clearly indicated that the inhalation of asbestos dust and fibers

resulting from the ordinary and foreseeable use of said asbestos-coutaining

products and/or machinery requiring or calling for the use of asbestos and/or

asbestos-containing products were unreasonably dangerous, hazardous, deleterious

to human health, carcinogenic, and potentially deadly.

(b)    Despite the medical and scientific data, literature, and test reports possessed by

and available to Defendants, Defendants individually, jointly, and in conspiracy

with each other, fraudulently, willfully, and maliciously:

(1)    withheld, concealed, and suppressed said medical and scientific data,

literature, and test reports regarding the risks of asbestosis, cancer,

mesothelioma, and other illnesses and diseases from Plaintiff who was

using and being exposed to Defendants' asbestos-containing products

and/or machinery requiring or calling for the use of asbestos and/or

asbestos-containing products;

(2)    caused to be released, published, and disseminated medical and scientific

data, literature, and test reports containing information and statements

regarding the risks of asbestosis, cancer, mesothelioma, and other illnesses

and diseases, which Defendants knew were incorrect, incomplete,

outdated, and misleading;

(3)    distorted the results of medical examinations conducted upon workers such

as Plaintiff who were using asbestos-containing products and/or machinery

requiring or calling for the use of asbestos and/or asbestos-containing

products and being exposed to the inhalation of asbestos dust and fibers by

falsely stating

and/or concealing the nature and extent of the harm to which workers such as Plaintiff have suffered.

(c)     Defendant Crown Cork & Seal's predecessor, Mundet Cork, was a member of the Magnesia Insulation Manufacturers' Association ("MIMA"). Mundet conspired with the other members of MIMA to write the specifications for insulating products so that the government would be required to purchase their products. Meanwhile, Mundet and the other members of the conspiracy failed to disclose to the United States military the unreasonably dangerous characteristics of their products, so that they could continue to sell their asbestos-containing products to the United States Government.

(d)     By the false and fraudulent representations, omissions, and concealments set forth above, Defendants, individually, jointly, and in conspiracy with each other, intended to induce Plaintiff to rely upon said false and fraudulent representations, omissions and concealments, to continue to expose himself to the dangers inherent in the use of and exposure to Defendants' asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

37.     Plaintiffs allege that Plaintiff reasonably and in good faith relied upon the false and fraudulent misrepresentations, omissions, and concealments made by the Defendants regarding the nature of their asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

38.     Plaintiffs will show that Plaintiff's injuries were a direct and proximate result of his reliance on Defendants' false and fraudulent misrepresentations, omissions, and

concealments, and that Plaintiff was deprived of the opportunity of informed free choice in connection with the use of and exposure to Defendants' asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

39.    Moreover, Defendants continue to contrive, combine, confederate, and conspire among themselves to injure Plaintiff and to deprive him of his rightful recoveries by joining together and forming an entity known as the "Asbestos Claims Facility" and/or "Center for Claims Resolution" and by proposing and entering into an agreement known as the "Wellington Agreement."  As a direct and proximate result of Defendants' ongoing actions, Plaintiff continues to sustain damages.

## COUNT FOUR - GROSS NEGLIGENCE

40.    Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

41.    The actions and inactions of Defendants and their predecessors-in-interest, as specifically alleged hereinabove, whether taken separately, or together, were of such a character as to constitute a pattern or practice of intentional wrongful conduct and/or malice resulting in damage and injury of Plaintiff.  More specifically, Defendants and their predecessors-in-interest, consciously and/or deliberately engaged in oppression, fraud, wantonness and/or malice with regard to the Plaintiff.  Therefore, Defendants are guilty of gross negligence for which they should be held liable in punitive and exemplary damages to Plaintiffs.

## COUNT FIVE - NEGLIGENT TESTING/LIABILITY TO THIRD PERSONS FOR NEGLIGENT PERFORMANCE OF UNDERTAKING

42.    Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

43.    Defendant Metropolitan Life Insurance Company through its Policyholders Service

Bureau undertook duties owed by the asbestos-producing Defendants to Plaintiff by the testing of asbestos workers and the conduct of scientific studies.  These duties included without limitation,

(1)     to test fully and adequately for health risks concomitant to the normal and intended use of their products; and

(2)     to instruct fully and adequately in the uses of their products so as to eliminate or reduce the health hazards concomitant with their normal or intended use.

In undertaking these duties, Metropolitan Life knew or should have known that it was providing testing services for the ultimate protection of third persons, including Plaintiff. In both conducting said tests and in publishing their alleged results, Metropolitan Life failed to exercise reasonable care to conduct or publish complete, adequate, and accurate tests of the health effects of asbestos.  Metropolitan Life also caused to be published intentionally false, misleading, inaccurate, and deceptive information about the health effects of asbestos exposure.

44.     Plaintiffs allege that Plaintiff unwittingly but justifiably relied upon the thoroughness of Metropolitan Life's tests and information dissemination, the results of which Metropolitan Life published in leading medical journals.

45.     As a direct and proximate contributing result of Metropolitan Life's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so, (i) the risk of harm to Plaintiff from asbestos exposure was increased; and (ii)  Plaintiff suffered the injuries described below.

46.     In failing to test fully and adequately for the adverse health effects from exposure to asbestos, in delaying the publication of such results, in falsely editing such results as were

obtained, in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product, and in collaborating with the asbestos-producing Defendants materially to understate the hazards of asbestos exposure, all for its own profit and gain, Metropolitan Life acted recklessly, wantonly, and in calculated disregard for the welfare of the general public, including the Plaintiff.

## COUNT SIX - MALICE

47.   All of the allegations contained in the previous paragraphs are realleged herein.

48.   The actions and inactions of Defendants and their predecessors-in-interest, as specifically alleged hereinabove, whether taken separately, or together, were of such a character as to constitute a pattern or practice of intentional wrongful conduct and/or malice, as defined in Tex. Civ. Prac. & Rem. Code Ann. Chapter 41, which caused injury to Plaintiff, as well as Plaintiffs' damages.  Therefore, each Defendant should be held liable in exemplary damages to Plaintiffs.

## COUNT SEVEN - JOINT TORTFEASOR LIABILITY

49.   Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

50.   The actions of all Defendants aided, abetted, encouraged, induced, or directed the negligent and/or intentional acts of each and every other Defendant.

51.   Each of the Defendants knew or should have known that its individual actions would combine to cause the injuries of the Plaintiff.

52.   The actions of Defendants are a proximate cause of the injuries of the Plaintiff.  As a result, all Defendants are jointly liable for the damage caused by their combined actions.

## COUNT EIGHT – SHAM TO PERPETUATE A FRAUD/SINGLE BUSINESS ENTITY
### (Coltec Industries, Inc.; EnPro Industries; Garlock, Inc.;
### Garlock Sealing Technologies; and Goodrich Corp.)

53.     Plaintiffs incorporate herein all of the above allegations for all purposes.

54.     Coltec Industries, Inc.; EnPro Industries; Garlock, Inc.; Garlock Sealing Technologies;

and Goodrich Corp. ("the Garlock Companies") at all relevant times have operated as a

single business entity, all of whom are fully, jointly and severally responsible for all acts of

Garlock, Inc.

55.     The separate corporate forms of Coltec Industries, Inc.; EnPro Industries; Garlock, Inc.;

and Garlock Sealing Technologies are shams to perpetuate a fraud, in that they seek to

assign all of the asbestos liabilities of "the Garlock Companies" to an entity that is unable

to pay Plaintiffs.

56.     Goodrich Corp., by merger with Coltec Industries, Inc., has become an entity fully

responsible for the tort liability of all "the Garlock Companies."

## COUNT NINE - NEGLIGENCE OF PREMISE DEFENDANTS
### (Congoleum Corporation,
### Goodall Rubber Company and Homasote Company)

57.     Plaintiffs will show that the Premises Defendants, which consist of Congoleum

Corporation, Goodall Rubber Company and Homasote Company, failed to provide a safe

workplace and that such failure was a proximate and producing cause of Plaintiffs' injuries

an damages.  Defendants exercised or retained some control over the manner in which the

work was performed, other than the right to order the work to start or stop or to inspect

progress or receive reports.  Defendants had actual knowledge of the potential hazards

posed by exposure to asbestos-containing products and failed to take appropriate action in

response to the potential danger or condition in response.  In the alternative, as all persons

and entities are charged with knowledge of applicable laws, Defendants had actual knowledge implied as a matter of law of the hazards of working with asbestos pursuant to the law of the State of Texas, beginning in at least 1958 with the regulations and mandates of the Texas Department of Health imposing exposure limits for various toxic agents including asbestos, and pursuant to federal law beginning no later than in the 1950s with the Walsh – Healy Act, or in 1970, pursuant to OSHA.

58.     The Premises Defendants negligently caused or negligently permitted asbestos and asbestos-containing products to be used on their premises even though the Premises Defendants knew or should have known that asbestos and asbestos-containing products were carcinogenic, poisonous, toxic and extremely dangerous and hazardous to human health and that exposure to these products could result in an asbestos related disease in persons, including Plaintiff.

59.     The Premises Defendants removed, installed, or otherwise manipulated asbestos-containing product, which created an unreasonably dangerous activity on the premises. Additionally, the Premises Defendants exercised control over other who were installing removing , or otherwise manipulating asbestos or asbestos-containing products, which also created an unreasonably dangerous activity on the premises.

60.     Finally, during the period described above, the Premises Defendants, through their agents, servants and/or employed were guilty of certain acts, wrongs and/or omissions, each of which, independently or in combination with one another, amount to negligence.

## COUNT TEN - EXEMPLARY DAMAGES & MALICE OF PREMISE DEFENDANTS
### (Congoleum Corporation,
### Goodall Rubber Company and Homasote Company)

61.     Premises Defendants' negligence, acting through their agents, employees, and/or

representatives, was of such character as to make the Premises Defendants guilty of malice. Specifically, the Premises Defendants acted in such a way that involved an extreme degree of risk, considering the probability and magnitude of potential harm to Plaintiff and which Defendants knew of the risk, involved but proceeded with conscious indifference to the rights, safety, or welfare of Plaintiff. As a result of Defendants' conduct, acting through their agents, employees and/or representatives, Plaintiffs seek exemplary damages in such an amount as to be proper under the facts and circumstances.

## DAMAGES

62. The conduct of Defendants, as alleged, was a direct, proximate and producing cause of the damages resulting from the asbestos-related lung diseases of Plaintiff, LOUIS BARLETTA and of the following general and special damages that Plaintiffs have sustained:

   (a)   Damages to punish Defendants for proximately causing Plaintiff's injuries;

   (b)   The conscious physical pain and suffering and mental anguish sustained by Plaintiffs from the inception of Plaintiff's disease.

   (c)   The physical impairment suffered by Plaintiff;

   (d)   The disfigurement suffered by Plaintiff;

   (e)   Reasonable and necessary medical expenses incurred by Plaintiff due to the asbestos-related disease and other physical conditions from which he suffers;

   (f)   Plaintiff's lost earnings and net accumulations;

   (g)   The loss of the care, maintenance, services, support, advice, counsel, and consortium which Plaintiff's family members received from him prior to his illness;

   (h)   The mental anguish of Plaintiff caused by his extraordinarily increased likelihood

during his lifetime of developing asbestos-related cancer of the lungs, mesothelioma and other cancers, due to his exposure to products manufactured, sold and/or distributed by the Defendants and the actual development of mesothelioma;

(i)     The mental anguish suffered by Plaintiff and his family members as a consequence of observing his ongoing asbestos-related illness; and

(j)     Plaintiffs seek punitive and exemplary damages.

63.     Plaintiffs filed suit within two (2) years of the date of discovering Plaintiff's asbestos-related conditions or the existence of any asbestos-related causes of action.

## JURY DEMAND

64.     Plaintiffs demand that all issues of fact in this case be tried to a properly impaneled jury. Plaintiffs have paid the requisite jury fee.

WHEREFORE, PREMISES CONSIDERED, LOUIS BARLETTA and MARY JANE BARLETTA, Plaintiffs, demand judgments against the Defendants, and each of them, jointly and severally, for general damages, special damages, for punitive and exemplary damages, for the costs expended herein, for prejudgment interest from the date of the injury, and post-judgment interest on the judgment at the highest rate allowed by law, and for such other and further relief, both at law and in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,
THE HENDLER LAW FIRM, P.C.

By: _____

Scott M. Hendler
Texas Bar No. 09445500
Ketan Kharod
Texas Bar No. 24027105
816 Congress Ave., Ste. 1100
Austin, Texas 78701
Telephone: (512) 473-3672
Facsimile: (512) 480-2209

Darrell Barger
BARGER, HERMANSEN, MCKIBBEN
AND VILLARREAL
One Shoreline Plaza, Suite 2000
800 N. Shoreline Blvd.
Corpus Christi, TX 78401
Telephone:(361) 866-8009
Facsimile: (361) 866-8039

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiffs' Sixth Amended Petition and Jury Demand has been served upon all counsel of record via certified mail and/or through process on this, the 7th day of March, 2003.

_____

CAUSE NO. 01-454-D                              FILED

| | | |
|---|---|---|
| LOUIS BARLETTA AND MARY JANE BARLETTA, | § § § | IN THE DISTRICT COURT OF |
| | | May 27 AM 3:23 |
| Plaintiffs; | § § | DIST. CLERK KLEBERG CTY. |
| | § | BY _____ JBL _____ DEPUTY |
| V. | § § | |
| A.W. CHESTERTON CO.; BABCOCK BORSIG POWER INC., Individually and as Successor to the DB Riley Inc. and Riley Stoker Company; CERTAINTEED CORP.; CRANE COMPANY, Individually and as Successor-in-Interest to Crane Supply Co.; GOODALL RUBBER CO.; HOMASOTE COMPANY; IMO INDUSTRIES, INC. | § § § § § § § § § § § § § | KLEBERG COUNTY, TEXAS |
| Defendants. | § § | 105th JUDICIAL DISTRICT |

## PLAINTIFFS' SEVENTH AMENDED PETITION AND JURY DEMAND

TO THE HONORABLE COURT:

COMES NOW, LOUIS BARLETTA and MARY JANE BARLETTA, hereinafter

referred to as "Plaintiffs," complaining of the various Defendants listed below and for causes of

action would respectfully show the Court and Jury as follows:

1.      This is an asbestos-related disease case that will proceed under the Docket Control Order

signed by Judge Manuel Bañales and dated November 26, 2002.

2.      Plaintiffs, LOUIS BARLETTA and MARY JANE BARLETTA, would show that Mr.

Barletta (hereinafter referred to as "Plaintiff") was employed in various facilities in and

around the State of Texas during which time he was exposed to asbestos dust and/or

fibers.

\\SERVER1\WP DOCUMENTS\ASBESTOS\HENDLER\BARLETTA\01 PETITION 7TH AMENDED.DOC

3.   Defendants herein reside in Kleberg County, maintain principal offices in Kleberg County, and/or have agents in Kleberg County or the cause of action, in whole or in part, occurred in Kleberg County.  Therefore, venue properly lies in Kleberg County.

4.   The damages sought by Plaintiffs, exclusive of interests and costs, exceed the minimum jurisdictional limits of the Court.

5.   Defendant, A W CHESTERTON COMPANY, was previously served through process, and a copy of this amended Petition is being served upon its counsel of record.

6.   Defendant, BABCOCK BORSIG POWER, INC., Individually and as Successor to the DB RILEY INC and RILEY STOKER COMPANY, was previously served through process, and a copy of this amended Petition is being served upon its counsel of record.

7.   Defendant CERTAINTEED CORPORATION, was previously served through process, and a copy of this amended Petition is being served upon its counsel of record.

8.   Defendant, CRANE COMPANY, was previously served, and a copy of this amended Petition is being served upon its counsel of record.  Crane Supply Co. was a United States entity that was distributing Crane products and other products containing asbestos.

9.   Defendant, GOODALL RUBBER COMPANY, was previously served through process, and a copy of this amended Petition is being served upon its counsel of record.

10.   Defendant, HOMASOTE COMPANY, was previously served through process, and a copy of this amended Petition is being served upon its counsel of record.

11.   Defendant, IMO INDUSTRIES, INC., was previously served through process, and a copy of this amended Petition is being served upon its counsel of record.

20.   This is a lawsuit for damages from personal injuries from exposure to asbestos dust and/or fibers.

21.   This action is brought and these allegations are made pursuant to Tex. Civ. Prac. & Rem. Code §§ 17.042, 71.021 and 71.031.

22.   Each Defendant corporation or its predecessor-in-interest whose liability stems from Count Three of this complaint is, or at times material hereto, has been engaged in the mining, processing and/or manufacturing, sale and distribution of asbestos and asbestos-containing products.

23.   Plaintiffs would show that for a period of many years, Plaintiff worked with and/or was exposed to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products while working in various facilities in and around the States of Maryland, New Jersey, New York, and Texas. Plaintiff has been exposed, on numerous occasions, to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products produced and/or sold by Defendants and, in so doing, inhaled great quantities of asbestos fibers. Further, Plaintiffs allege, as more specifically set out below, that Plaintiff suffered injuries proximately caused by his exposure to asbestos-containing products designed, manufactured, and sold by Defendants.

24.   Plaintiff, as an invitee of the Premise Defendants (as discussed below on Counts Seven and Eight), while in the course and scope of his work related responsibilities, was exposed to asbestos, asbestos-containing products, and machinery containing asbestos or asbestos-containing products while on the defendants' premises.

25.   Plaintiffs further allege that Plaintiff was exposed to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products in his occupation. In that each exposure to such products caused or contributed to the

injuries, illnesses, and disabilities of Plaintiff, Plaintiffs allege that the doctrine of joint and several liability should be extended to apply to each Defendant herein.

### COUNT ONE - NEGLIGENCE

26.     Plaintiff's illness is a direct and proximate result of the negligence of each Defendant and/or its predecessor-in-interest in that said entities produced, sold, and/or otherwise put into the stream of commerce, asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products, which the Defendants knew, or in the exercise of ordinary care should have known, were deleterious and highly harmful to Plaintiff's health and well-being.  The Defendants were negligent in one, some, and/or all of the following respects, among others, same being the proximate cause of Plaintiff's illness:

(a)     in failing to timely and adequately warn Plaintiff of the dangerous characteristics and serious health hazards associated with exposure to asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(b)     in failing to provide Plaintiff with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there were any, to protect Plaintiff from being harmed and disabled by exposure to asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(c)     in failing to place timely and adequate warnings on the containers of said asbestos, and/or asbestos-containing products, or on the asbestos-containing products themselves, and/or machinery requiring or calling for the use of asbestos

and/or asbestos-containing products to warn of the dangers to health of coming into contact with said asbestos-containing products and/or machinery;

(d)    in failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and/or safe method of handling and installing asbestos and/or asbestos-containing products, or utilizing the machinery requiring or calling for the use of asbestos and/or asbestos-containing products in a safe manner;

(e)    in failing to develop and utilize a substitute material to eliminate asbestos fibers in the asbestos-containing products, and/or the machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(f)    in failing to properly design and manufacture asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products for safe use under conditions of use that were reasonably anticipated;

(g)    in failing to properly test said asbestos-containing products or machinery before they were released for consumer use; and

(h)    in failing to recall and/or remove from the stream of commerce said asbestos-containing products or machinery requiring or calling for the use of asbestos and/or asbestos-containing products despite knowledge of the unsafe and dangerous nature of such products or machinery.

## COUNT TWO - STRICT LIABILITY

27.    Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

28.    Plaintiffs  allege that Plaintiff was exposed to asbestos-containing products and/or

machinery requiring or calling for the use of asbestos and/or asbestos-containing products that were manufactured and distributed by the Defendants and/or their predecessors-in-interest for use as construction materials and/or machinery in industrial operations. Plaintiffs would show that the defective condition of the products rendered such products unreasonably dangerous, and the asbestos-containing products and/or machinery were in this defective condition at the time they left the hands of the Defendants.

29.     The Defendants are engaged in the business of selling asbestos-containing products and/or machinery requiring or calling for asbestos or asbestos-containing products and these asbestos-containing products and/or machinery, without substantial change in the condition in which they were sold, were the proximate cause of the Plaintiff's illness.

30.     Defendants knew that these asbestos-containing products and/or machinery would be used without inspection for defects and, by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include safe manipulation and/or installation of the asbestos-containing products and/or operation, maintenance and/or repair of the machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

31.     Plaintiff was unaware of the hazards and defects in the asbestos-containing products of the Defendants which made them unsafe for the purposes of manipulation and/or installation.  Similarly, he was unaware of the hazards and defects in the machinery requiring or calling for the use of asbestos and/or asbestos-containing materials.

32.     During the periods that Plaintiff was exposed to the asbestos-containing products and/or machinery of the Defendants, these asbestos-containing products and/or machinery were being utilized in a manner which was intended by Defendants.

\\SERVER1\WP DOCUMENTS\ASBESTOS\HENDLER\BARLETTA\01 PETITION 7TH AMENDED.DOC

## COUNT THREE - CONSPIRACY

33.     Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

34.     Plaintiffs further allege that Defendants and/or their predecessors-in-interest knowingly

agreed, contrived, combined, confederated, and conspired among themselves to cause

Plaintiff's injuries by exposing Plaintiff to harmful and dangerous asbestos-containing

products and/or machinery requiring or calling for the use of asbestos and/or asbestos-

containing products.  Defendants further knowingly agreed, contrived, combined,

confederated and conspired to deprive Plaintiff of the opportunity of informed free choice

as to whether to use said asbestos-containing products and/or machinery requiring or

calling for the use of asbestos and/or asbestos-containing products or to expose

themselves to said dangers  In this connection. Plaintiff has sued Metropolitan Life

Insurance Company in its capacity as conspirator.  Defendants committed the above-

described wrongs by willfully misrepresenting and suppressing the truth as to the risks

and dangers associated with the use of and exposure to Defendants' asbestos-containing

products and/or machinery requiring or calling for the use of asbestos and/or asbestos-

containing products.

35.     In furtherance of said conspiracies, Defendants performed the following overt acts:

(a)     For many decades, Defendants, individually, jointly, and in conspiracy with each

other, have been in possession of medical and scientific data, literature, and test

reports which clearly indicated that the inhalation of asbestos dust and fibers

resulting from the ordinary and foreseeable use of said asbestos-containing

products and/or machinery requiring or calling for the use of asbestos and/or

asbestos-containing products were unreasonably dangerous, hazardous,

deleterious to human health, carcinogenic, and potentially deadly.

(b)    Despite the medical and scientific data, literature, and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other, fraudulently, willfully, and maliciously:

    (1)    withheld, concealed, and suppressed said medical and scientific data, literature, and test reports regarding the risks of asbestosis, cancer, mesothelioma, and other illnesses and diseases from Plaintiff who was using and being exposed to Defendants' asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

    (2)    caused to be released, published, and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of asbestosis, cancer, mesothelioma, and other illnesses and diseases, which Defendants knew were incorrect, incomplete, outdated, and misleading;

    (3)    distorted the results of medical examinations conducted upon workers such as Plaintiff who were using asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and being exposed to the inhalation of asbestos dust and fibers by falsely stating and/or concealing the nature and extent of the harm to which workers such as Plaintiff have suffered.

(c)     Defendant Crown Cork & Seal's predecessor, Mundet Cork, was a member of the

Magnesia Insulation Manufacturers' Association ("MIMA").  Mundet conspired

with the other members of MIMA to write the specifications for insulating

products so that the government would be required to purchase their products.

Meanwhile, Mundet and the other members of the conspiracy failed to disclose to

the United States military the unreasonably dangerous characteristics of their

products, so that they could continue to sell their asbestos-containing products to

the United States Government.

(d)     By the false and fraudulent representations, omissions, and concealments set forth

above, Defendants, individually, jointly, and in conspiracy with each other,

intended to induce Plaintiff to rely upon said false and fraudulent representations,

omissions and concealments, to continue to expose himself to the dangers

inherent in the use of and exposure to Defendants' asbestos-containing products,

and/or machinery requiring or calling for the use of asbestos and/or asbestos-

containing products.

37.     Plaintiffs allege that Plaintiff reasonably and in good faith relied upon the false and

fraudulent misrepresentations, omissions, and concealments made by the Defendants

regarding the nature of their asbestos-containing products and/or machinery requiring or

calling for the use of asbestos and/or asbestos-containing products.

38.     Plaintiffs will show that Plaintiff's injuries were a direct and proximate result of his

reliance on Defendants' false and fraudulent misrepresentations, omissions, and

concealments, and that Plaintiff was deprived of the opportunity of informed free choice

in connection with the use of and exposure to Defendants' asbestos-containing products

and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

39.    Moreover, Defendants continue to contrive, combine, confederate, and conspire among themselves to injure Plaintiff and to deprive him of his rightful recoveries by joining together and forming an entity known as the "Asbestos Claims Facility" and/or "Center for Claims Resolution" and by proposing and entering into an agreement known as the "Wellington Agreement."  As a direct and proximate result of Defendants' ongoing actions, Plaintiff continues to sustain damages.

## COUNT FOUR - GROSS NEGLIGENCE

40.    Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

41.    The actions and inactions of Defendants and their predecessors-in-interest, as specifically alleged hereinabove, whether taken separately, or together, were of such a character as to constitute a pattern or practice of intentional wrongful conduct and/or malice resulting in damage and injury of Plaintiff.  More specifically, Defendants and their predecessors-in-interest, consciously and/or deliberately engaged in oppression, fraud, wantonness and/or malice with regard to the Plaintiff.  Therefore, Defendants are guilty of gross negligence for which they should be held liable in punitive and exemplary damages to Plaintiffs.

## COUNT FIVE - NEGLIGENT TESTING/LIABILITY TO THIRD PERSONS FOR NEGLIGENT PERFORMANCE OF UNDERTAKING

42.    Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

43.    Defendant Metropolitan Life Insurance Company through its Policyholders Service Bureau undertook duties owed by the asbestos-producing Defendants to Plaintiff by the testing of asbestos workers and the conduct of scientific studies.  These duties included without limitation,

(1)     to test fully and adequately for health risks concomitant to the normal and

intended use of their products; and

(2)     to instruct fully and adequately in the uses of their products so as to eliminate or

reduce the health hazards concomitant with their normal or intended use.

In undertaking these duties, Metropolitan Life knew or should have known that it was

providing testing services for the ultimate protection of third persons, including Plaintiff.

In both conducting said tests and in publishing their alleged results, Metropolitan Life

failed to exercise reasonable care to conduct or publish complete, adequate, and accurate

tests of the health effects of asbestos.  Metropolitan Life also caused to be published

intentionally false, misleading, inaccurate, and deceptive information about the health

effects of asbestos exposure.

44.     Plaintiffs allege that Plaintiff unwittingly but justifiably relied upon the thoroughness of

Metropolitan Life's tests and information dissemination, the results of which Metropolitan

Life published in leading medical journals.

45.     As a direct and proximate contributing result of Metropolitan Life's failures to conduct or

accurately publish adequate tests or disseminate accurate and truthful information, after

undertaking to do so, (i) the risk of harm to Plaintiff from asbestos exposure was

increased; and (ii)  Plaintiff suffered the injuries described below.

46.     In failing to test fully and adequately for the adverse health effects from exposure to

asbestos, in delaying the publication of such results, in falsely editing such results as were

obtained, in suppressing relevant medical inquiry and knowledge about those hazards to

promote the sale and distribution of asbestos as a harmless product, and in collaborating

with the asbestos-producing Defendants materially to understate the hazards of asbestos

exposure, all for its own profit and gain, Metropolitan Life acted recklessly, wantonly, and in calculated disregard for the welfare of the general public, including the Plaintiff.

## COUNT SIX - MALICE

47.    All of the allegations contained in the previous paragraphs are realleged herein.

48.    The actions and inactions of Defendants and their predecessors-in-interest, as specifically alleged hereinabove, whether taken separately, or together, were of such a character as to constitute a pattern or practice of intentional wrongful conduct and/or malice, as defined in Tex. Civ. Prac. & Rem. Code Ann. Chapter 41, which caused injury to Plaintiff, as well as Plaintiffs' damages.  Therefore, each Defendant should be held liable in exemplary damages to Plaintiffs.

## COUNT SEVEN - JOINT TORTFEASOR LIABILITY

49.    Plaintiffs reallege all of the allegations contained in the previous paragraphs herein.

50.    The actions of all Defendants aided, abetted, encouraged, induced, or directed the negligent and/or intentional acts of each and every other Defendant.

51.    Each of the Defendants knew or should have known that its individual actions would combine to cause the injuries of the Plaintiff.

52.    The actions of Defendants are a proximate cause of the injuries of the Plaintiff.  As a result, all Defendants are jointly liable for the damage caused by their combined actions.

## COUNT NINE - NEGLIGENCE OF PREMISE DEFENDANTS
### (Goodall Rubber Company and Homasote Company)

53.    Plaintiffs will show that the Premises Defendants, which consist of Goodall Rubber Company and Homasote Company, failed to provide a safe workplace and that such failure was a proximate and producing cause of Plaintiffs' injuries an damages. Defendants exercised or retained some control over the manner in which the work was

12

performed, other than the right to order the work to start or stop or to inspect progress or receive reports.  Defendants had actual knowledge of the potential hazards posed by exposure to asbestos-containing products and failed to take appropriate action in response to the potential danger or condition in response.  In the alternative, as all persons and entities are charged with knowledge of applicable laws, Defendants had actual knowledge implied as a matter of law of the hazards of working with asbestos pursuant to the law of the State of Texas, beginning in at least 1958 with the regulations and mandates of the Texas Department of Health imposing exposure limits for various toxic agents including asbestos, and pursuant to federal law beginning no later than in the 1950s with the Walsh – Healy Act, or in 1970, pursuant to OSHA.

54.     The Premises Defendants negligently caused or negligently permitted asbestos and asbestos-containing products to be used on their premises even though the Premises Defendants knew or should have known that asbestos and asbestos-containing products were carcinogenic, poisonous, toxic and extremely dangerous and hazardous to human health and that exposure to these products could result in an asbestos related disease in persons, including Plaintiff.

55.     The Premises Defendants removed, installed, or otherwise manipulated asbestos-containing product, which created an unreasonably dangerous activity on the premises. Additionally, the Premises Defendants exercised control over other who were installing removing , or otherwise manipulating asbestos or asbestos-containing products, which also created an unreasonably dangerous activity on the premises.

56.     Finally, during the period described above, the Premises Defendants, through their agents, servants and/or employed were guilty of certain acts, wrongs and/or omissions, each of

which, independently or in combination with one another, amount to negligence.

## COUNT TEN - EXEMPLARY DAMAGES & MALICE OF PREMISE DEFENDANTS
### (Goodall Rubber Company and Homasote Company)

57.    Premises Defendants' negligence, acting through their agents, employees, and/or

representatives, was of such character as to make the Premises Defendants guilty of

malice.  Specifically, the Premises Defendants acted in such a way that involved an

extreme degree of risk, considering the probability and magnitude of potential harm to

Plaintiff and which Defendants knew of the risk, involved but proceeded with conscious

indifference to the rights, safety, or welfare of Plaintiff.   As a result of Defendants'

conduct, acting through their agents, employees and/or representatives, Plaintiffs seek

exemplary damages in such an amount as to be proper under the facts and circumstances.

## DAMAGES

58.    The conduct of Defendants, as alleged, was a direct, proximate and producing cause of

the damages resulting from the asbestos-related lung diseases of Plaintiff, LOUIS

BARLETTA and of the following general and special damages that Plaintiffs  have

sustained:

(a)    Damages to punish Defendants for proximately causing Plaintiff's injuries;

(b)    The conscious physical pain and suffering and mental anguish sustained by

Plaintiffs from the inception of Plaintiff's disease.

(c)    The physical impairment suffered by Plaintiff;

(d)    The disfigurement suffered by Plaintiff;

(e)    Reasonable and necessary medical expenses incurred by Plaintiff due to the

asbestos-related disease and other physical conditions from which he suffers;

(f)    Plaintiff's lost earnings and net accumulations;

(g)   The loss of the care, maintenance, services, support, advice, counsel, and consortium which Plaintiff's family members received from him prior to his illness;

(h)   The mental anguish of Plaintiff caused by his extraordinarily increased likelihood during his lifetime of developing asbestos-related cancer of the lungs, mesothelioma and other cancers, due to his exposure to products manufactured, sold and/or distributed by the Defendants and the actual development of mesothelioma;

(i)   The mental anguish suffered by Plaintiff and his family members as a consequence of observing his ongoing asbestos-related illness; and

(j)   Plaintiffs seek punitive and exemplary damages.

59.   Plaintiffs filed suit within two (2) years of the date of discovering Plaintiff's asbestos-related conditions or the existence of any asbestos-related causes of action.

## JURY DEMAND

60.   Plaintiffs demand that all issues of fact in this case be tried to a properly impaneled jury. Plaintiffs have paid the requisite jury fee.

WHEREFORE, PREMISES CONSIDERED, LOUIS BARLETTA and MARY JANE BARLETTA, Plaintiffs, demand judgments against the Defendants, and each of them, jointly and severally, for general damages, special damages, for punitive and exemplary damages, for the costs expended herein, for prejudgment interest from the date of the injury, and post-judgment interest on the judgment at the highest rate allowed by law, and for such other and further relief, both at law and in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,
THE HENDLER LAW FIRM, P.C.

By: _____

Scott M. Hendler
Texas Bar No. 09445500
Ketan Kharod
Texas Bar No. 24027105
816 Congress Ave., Ste. 1100
Austin, Texas 78701
Telephone: (512) 473-3672
Facsimile: (512) 480-2209

Darrell Barger
HARTLINE, DACUS, BARGER,
DREYER, and KERN, LLP.
One Shoreline Plaza, Suite 2000
800 N. Shoreline Blvd.
Corpus Christi, TX 78401
Telephone:(361) 866-8009
Facsimile: (361) 866-8039

Christian Hartley
Charles Patrick
RICHARDSON, PATRICK, WESTBROOK
& BRICKMAN, LLP
174 East Bay Street
Charleston, SC  29401
Telephone: (843) 727-6500
Facsimile: (843) 727-3103

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of Plaintiffs' Seventh Amended Petition and
Jury Demand has been served upon all counsel of record via certified mail and/or through
process on this, the 27th day of May, 2003.

_____

MARTHA L. SOUZA DISTRICT CLERK

By _____
Deputy

STATE OF TEXAS
COUNTY OF KLEBERG

I certify that the foregoing is a true and correct c
of the original record on file in my office. Given
under my hand and seal of the court at my offic
Kingsville, Texas, this January 28, 2

MARTHA I. SOLIZ, DISTRICT CLE
By _____ De

EXHIBIT F

```
 1              IN THE DISTRICT COURT OF
              KLEBERG COUNTY, TEXAS
 2               CAUSE NO. 01-454-D
              JUDICIAL DISTRICT
 3
 4   LOUIS BARLETTA AND MARY JANE      :
     BARLETTA,                         :
 5                                     :   DEPOSITION UPON
                     Plaintiff,        :   ORAL EXAMINATION
 6                                     :        OF
         vs.                           :   LOUIS BARLETTA
 7                                     :
     AMERICAN CYANAMID, et al.         :
 8                                     :
                     Defendants.       :
 9                                     :
     ---------------------------------:
10
11
12
13          T R A N S C R I P T of the videotaped
14   deposition of LOUIS BARLETTA, called for Oral Examination in
15   the above entitled action, said deposition being taken
16   pursuant to Rules governing Civil Practice in the Courts of
17   New Jersey, by and before KERRY D. HALPERN, a Notary Public
18   and Shorthand Reporter of the State of New Jersey, at the
19   Howard Johnson, 2995 Route 1 South, Lawrenceville, New
20   Jersey, on Wednesday, October 3, 2001, commencing at 11:30
21   a.m.
22
23
24         Priority-One Court Reporting Services
                    899 Manor Road
25         Staten Island, New York   10314
                   (718) 983-1234
```

Louis Barletta
Volume No. I

October 3, 2001
(Barletta v. American Cyanamid (Asbestos Case))

Page 2

```
 1  A P P E A R A N C E S :
 2      FOR THE PLAINTIFF LOUIS BARLETTA:
 3      THE HENDLER LAW FIRM, P.C.
        BY: SCOTT M. HENDLER, ESQ.
 4      816 Congress Avenue
        Suite 1100
 5      Austin, Texas 78701
 6
        FOR THE DEFENDANT CRANE CO.:
 7
        HARRIS, BEACH LLP
 8      BY: LISA M. PASCARELLA, ESQ.
        500 Fifth Avenue
 9      New York, New York 10010
10
        FOR THE DEFENDANT GEORGIA PACIFIC:
11
        WILBRAHAM, LAWLER & BUBA, ESQS.
12      BY: BERNARD E. KUENY, III, ESQ.
        1318 Market Street, Suite 3100
13      Philadelphia, Pennsylvania 19103-3631
14
15      FOR THE DEFENDANT NARCO:
16      JAMES D. BUTLER, ESQ.
        BY: STANLEY R. BRIGHT, ESQ.
        591 Summit Avenue
17      Jersey City, New Jersey 07306
18
        FOR THE DEFENDANT UNION-CARBIDE:
19      FOR THE DEFENDANT CERTAINTEED:
        FOR THE DEFENDANT AMCHEM:
20      FOR THE DEFENDANT DANA CORP.:
        FOR THE DEFENDANT MAREMONT:
21
        POWERS & FROST, ESQ.
22      BY: L. AMY GREEN, ESQ.
        2600 Two Houston Center
23      909 Fannin
        Houston, Texas 77010
24
25
```

Page 4

```
 1  FOR THE DEFENDANT HOMOSOTE COMPANY:
    FOR THE DEFENDANT PECORA COMPANY:
 2
    McGIVNEY, KLUGER & GANNON, P.C.
 3  BY: DWIGHT A. KERN, ESQ.
    305 Broadway
 4  11th Floor
    New York, New York 10007
 5
 6  FOR THE DEFENDANT ABB, LTD.:
 7  PICILLO CARUSO, ESQS.
    BY: STEVEN A. WEINER, ESQ.
 8  371 Franklin Avenue
    Nutley, New Jersey 07110
 9
10  FOR THE DEFENDANT MORTON INTERNATIONAL:
11  LEARY, BRIDE, TINKER & MORAN, ESQS.
    BY: BRIAN PEOPLES, ESQ.
12  7 Ridgedale Avenue
    Cedar Knolls, New Jersey 07927
13
14  FOR THE DEFENDANT GARLOCK:
    FOR THE DEFENDANT PLIBRICO:
15  FOR THE DEFENDANT A.W. CHESTERTON:
16  SEGAL, McCAMBRIDGE, SINGER & MAHONEY, LTD.
    BY: JESSE M. BUTLER, ESQ.
17  First State Bank Tower Building
    400 West 15th Street
18  Suite 700
    Austin, Texas 78701
19
20  FOR THE DEFENDANT HALLIBURTON:
21  GODWIN, WHITE & GRUBER, P.C.
    BY: JEFF FUDGE, ESQ.
22  901 Main Street
    Suite 2500
23  Dallas, Texas 75202-3727
24
25
```

Page 3

```
 1  FOR THE DEFENDANT AC&S:
    FOR THE DEFENDANT FLINTKOTE:
 2  FOR THE DEFENDANT O-I:
 3  McCARTER & ENGLISH, ESQS.
    BY: BRIAN J. LEDDIN, ESQ.
 4  4 Gateway Center
    100 Mulberry Street
 5  Newark, New Jersey 07102
    Attention: Richard O'Leary, Esq.
 6
 7  FOR THE DEFENDANT KELSEY-HAYES CO.:
 8  BUTZEL LONG, ESQS.
    BY: DANIEL R.W. RUSTMANN, ESQ.
 9  150 West Jefferson
    Suite 900
10  Detroit, Michigan 48226-4430
11
    FOR THE DEFENDANT AURORA:
12
    TAYLOR & COLICCHIO, LLP
13  BY: JASON LIAM SCHMOLZE, ESQ.
    502 Carnegie Center
14  Suite 103
    Princeton, New Jersey 08540
15
16  FOR THE DEFENDANT BURNHAM CORPORATION:
17  BENCKENSTEIN, NORVELL & NATHAN, L.L.P.
    BY: WILLIAM R. MOYE, ESQ.
18  550 Fannin Street
    Suite 200
19  Beaumont, Texas 77701
20
    FOR THE DEFENDANT AMERICAN CYANAMID:
21
    BAKER BOTTS, LLP
22  BY: KEVIN T. JACOBS, ESQ.
    One Shell Plaza
23  910 Louisiana Street
    Houston, Texas 77002-4995
24
25
```

Page 5

```
 1  FOR THE DEFENDANT IMO INDUSTRIES:
 2  DUANE, MORRIS & HECKSCHER LLP
    BY: MARISSA BOYERS, ESQ.
 3  One Liberty Plaza
    Philadelphia, Pennsylvania 19103-7396
 4
 5  FOR THE DEFENDANT BORG WARNER:
 6  HOAGLAND, LONGO, MORAN, DUNST & DOUKAS, ESQS.
    BY: MARC S. GAFFREY, ESQ.
 7  40 Paterson Street
    Box 480
 8  New Brunswick, New Jersey 08903
 9
    FOR THE DEFENDANT PNEUMO ABEX:
10  FOR THE DEFENDANT RILEY STOKER:
11  DeHAY & ELLISTON, L.L.P.
    BY: HEATHER A. BERNER, ESQ.
12  Bank of America Plaza
    901 Main Street
13  Suite 3500
    Dallas, Texas 75202
14
15  FOR THE DEFENDANT QUIGLEY CO., INC.:
16  BEIRNE, MAYNARD & PARSONS, L.L.P.
    BY: MARK EDWYNN LEWIS, ESQ.
17  1300 Post Oak Boulevard
    25th Floor
18  Houston, Texas 77056
19
20  FOR THE DEFENDANT GUARDLINE:
21  MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, ESQS.
    BY: PAUL C. JOHNSON, ESQ.
22  200 Lake Drive East
    Suite 300
23  Cherry Hill, New Jersey 08002
24
25
```

2 (Pages 2 to 5)

Louis Barletta
Volume No. I

October 3, 2001
(Barletta v. American Cyanamid (Asbestos Case))

**Page 42**

1  Q. On the Thermwell asbestos paper that you used
2  in your home, was there any warning on that material not to
3  breathe dust generated from the paper?
4  A. No.
5  Q. Was there any kind of a caution or warning to
6  use a respirator when working with the material?
7  A. No.
8  Q. Mr. Barletta, let's go back to your working
9  career now.
10  You were working at Aaron & Company at this
11  time.
12  You were doing the home work that you
13  described?
14  A. Yes.
15  Q. What year was the home work that you -- the
16  home renovation work?
17  A. Nineteen sixty-one.
18  Q. And at this period of time you were working for
19  Aaron & Company?
20  A. Yes.
21  Q. When did you leave Aaron & Company?
22  A. In October of '64.
23  Q. And what did you do next?
24  A. I went to work for a company called Marshall
25  Maintenance.

**Page 43**

1  Q. What kind of work did you do there?
2  A. That is when we went strictly industrial.
3  Q. Tell us about the different types of jobs you
4  worked on for Marshall Maintenance Company?
5  A. One of the first jobs I was on for Marshall
6  Maintenance was for Ruberoid Corporation, which became GAF,
7  which is now Tarkett, in Newburgh, New York.
8  Q. What kind of work did you do for Marshall
9  Maintenance at this site?
10  A. Pipe fitter, steamfitter. On this particular
11  job, I piped in a big compressor for the installation of a
12  new vinyl asbestos tile line.
13  Q. What other jobs did you work on for Marshall
14  Maintenance?
15  A. I was farmed out to a company called Stepan
16  Chemical in Fieldsbury, New Jersey, which made citric acid,
17  and I covered the late shift there for a year.
18  Q. Were you also working as a pipe fitter at this
19  time?
20  A. Yes. But I did a lot of other things besides.
21  Q. What other kinds of things did you do besides
22  strictly pipe fitting work?
23  A. Besides the steam lines, most of what we did
24  was repair pumps.
25  Q. Let's talk about each job responsibility and

**Page 44**

1  let's start with the steam lines.
2  What kind of work did you do with steam lines?
3  A. Citric acid is a very slow but a very abrasive
4  type acid and would leak through anything.
5  Q. We are talking about your time at Stepan
6  Chemical?
7  A. Yes.
8  Q. Let's back up. How long were you at Stepan
9  Chemical?
10  A. A year.
11  Q. What year was that?
12  A. Nineteen sixty-six.
13  Q. At Stepan Chemical, you worked on steam lines
14  and pumps?
15  A. Right. Most of the problem with the steam
16  lines --
17  Q. Let me slow you down. I want to make sure
18  there is a question.
19  Describe for us the work that you did for steam
20  lines on Stepan Chemical?
21  A. Replacement mostly.
22  Q. What does that mean? What does that involve?
23  A. The steam is an abrasive item to begin with.
24  But citric acid, if you have got any kind of leakage around a
25  steam line, citric acid in a week's time will eat right

**Page 45**

1  through steel pipe, and then you will have steam blowing all
2  over the place. This is primarily -- what I did was cut out
3  bad sections and install new sections of pipe, and pretty
4  much everything you began to put in began to deteriorate the
5  minute you turn it on.
6  Q. When you took out a section of pipe or replaced
7  a section of pipe, describe for us step by step what you had
8  to do?
9  A. Well, we tried to always -- the pipe was always
10  put in sections with flanges to facilitate repairs and
11  removals. You just unbolt flanges, drop a section, weld a
12  pair of flanges on another piece of pipe, and go back out to
13  the plant, and reinstall the whole section. When you did
14  that, you had to replace the bolts, the gaskets. The gaskets
15  on the steam line were all asbestos. The bolts were
16  practically all eaten away from the citric acid. It was just
17  an ongoing process.
18  Q. Was there anything on the pipes themselves that
19  covered them?
20  A. Insulation, not inside the pipe.
21  Q. What about the pumps that you worked with,
22  describe how you worked with them?
23  A. Well, the pumps were stainless steel line. The
24  majority of them were Aurora pumps. They were flanged. They
25  had packing in them, water cooled.

12 (Pages 42 to 45)

Louis Barletta
Volume No. I

October 3, 2001
(Barletta v. American Cyanamid (Asbestos Case))

---

Page 46

1   Q.   What did you do with the pumps?
2        What did you have to do to maintain them?
3   A.   The flanges would get eaten away, and we would
4   have to change them.
5   Q.   What is a flange, so the jury understands?
6   A.   A pipe flange?
7   Q.   Describe for us what that is.
8   A.   Pipe flange is where you connect your pipe with
9   a companion flange to the pump.
10  Q.   Now, take us through what you did to maintain
11  the pump.
12  A.   Mostly, we re-packed them.  Either the cooling
13  water would fail or the packing would just wear out.  When
14  you re-packed a pump, you used on product lines a Teflon
15  coated packing, and you used a tool very similar to a
16  corkscrew to reach in and pull the old packing out one strip
17  at a time.
18  Q.   What was the consistency of the old packing
19  when you pulled it out?
20  A.   Mostly burnt.  It was dry.  Sometimes it was
21  wet, but you always had to get down in there with a small
22  chisel or a scraper and clean out the area where the packing
23  went.  The same with the flange.  You had to clean the face
24  of the flange off from the gasket.  All the steam gaskets
25  were asbestos, and the product gaskets were

---

Page 47

1   Flexitallic.
2        DEFENSE COUNSEL:  Objection, not
3   responsive to the question.
4   Q.   Mr. Barletta, how were gaskets used on the
5   pumps?
6   A.   In between flanges.  It is what seals whatever
7   you are pumping.
8   Q.   Who made the gaskets that you used on these
9   pumps?
10  A.   Most of the gaskets came from Chesterton out of
11  a supply house in Philly.  They were stored in Stepan's
12  storeroom.
13  Q.   What did they look like?
14  A.   They were ring gaskets, which are perfectly
15  round with a hole in the center, and there are full-faced
16  gaskets which are the same diameter as the flange itself with
17  the holes punched in it for the bolts to go through.
18  Q.   What color were they?
19  A.   The asbestos gaskets were primarily an
20  off-white, gray.
21       DEFENSE COUNSEL:  Objection,
22  non-responsive.
23  Q.   How do you know they were asbestos gaskets?
24  A.   They came in packages tied with a string that
25  looked like a shoelace, and there was a label on them that

---

Page 48

1   said asbestos.
2   Q.   How did you install one of these asbestos
3   gaskets made by A.W. Chesterton?
4   A.   You put two flanges together, you put two or
5   three bolts in, you drop a ring gasket in, put the rest of
6   the bolts in, and tighten it up.  But before you do this, you
7   have to clean off the flange faces.
8   Q.   What does that involve?
9   A.   Scraping off the old gaskets.
10  Q.   What do you scrape it off with?
11  A.   A scraper, a wire brush, whatever fits,
12  whatever works.
13  Q.   When you used the wire brush to clean the
14  flange to prepare it for installing a gasket, what kind of
15  conditions did that create?
16       DEFENSE COUNSEL:  Objection to the
17  form.
18  A.   Always dust.
19  Q.   In your opinion, Mr. Barletta, based on your
20  experience changing these gaskets at Stepan Chemical, did the
21  dust that the wire brush created get into your immediate
22  breathing zone?
23       DEFENSE COUNSEL:  Objection to the
24  form.
25  A.   Definitely.

---

Page 49

1   Q.   Do you believe that you inhaled that dust?
2       DEFENSE COUNSEL:  Objection to the form.
3   A.   Definitely.
4   Q.   Who was the manufacturer of the gaskets that
5   you were removing?
6   A.   As I said, practically all the gasket material
7   that I was aware of in the storeroom was Chesterton.
8   Q.   What about the gasket material that were in the
9   flanges, who manufactured those gaskets?
10  A.   They were the same because what you put in this
11  week you ended up taking out the next week and scraping off.
12  Q.   How often did you have to change gaskets on the
13  flange on a daily basis?
14       DEFENSE COUNSEL:  Objection to the
15  form.
16  Q.   Let me rephrase the question.  It may not have
17  been clear.
18       On a day-to-day basis or on a given day --
19  let's try that.  On a given day while you were working at
20  Stepan Chemical, how often did you have to change a gasket?
21  A.   Oh, we changed some every day.
22  Q.   Did this process of changing the gasket follow
23  what you described a moment ago?
24  A.   Yes.
25  Q.   Did the gasket ever just come out clean, so

---

Priority-One Court Reporting Services, Inc. (718) 983-1234

Louis Barletta
Volume No. I

October 3, 2001
(Barletta v. American Cyanamid (Asbestos Case))

Page 50

1 that there was no necessity to clean the flange?
2    A.   Rare.
3    Q.   During the years that you were working there,
4 did you work with any gaskets other than Chesterton gaskets?
5    A.   I am sure we did because --
6    Q.   Do you remember any other manufacturers' names
7 of gasket material that you worked with at Stepan Chemical?
8    A.   The only one was Garlock.
9    Q.   How do you remember Garlock?
10    A.   They had a -- they were sheets, which were
11 primarily black, that had their name stenciled on, a running
12 stencil across them.
13    Q.   Do you remember working with this gasket
14 material made by Garlock?
15    A.   Undoubtedly.
16    Q.   Now, describe what the pumps did that you
17 worked with?
18    A.   The pumps moved product from one section to
19 another, one process to another.
20    Q.   When you say "product," you are referring to
21 citric acid?
22    A.   Citric acid, right.
23    Q.   Who manufactured these pumps that you were
24 working with?
25    A.   Most of them were Aurora's.

Page 51

1    Q.   What did the Aurora pump require in the way of
2 maintenance?
3    A.   Primarily, packing, flange repair, and motor
4 and shaft changes.
5    Q.   On the packing -- what do you mean by packing
6 specifically.
7         What did packing look like?
8    A.   Packing came looking either like a small rope
9 or square cut. Mostly, the rope packing was asbestos, and
10 the square cut was either Teflon or Teflon coated.
11         DEFENSE COUNSEL: Objection,
12    non-responsive.
13    Q.   How did you apply the packing material?
14    A.   You take it off a roll, and you cut it so that
15 when you wrap it around the shaft both ends touch. If a
16 specific pump requires five strips of packing, you cut all
17 your packing to the right size, and you install one, cut up
18 the next one, that cuts down, and you reverse them, and as
19 you install them you keep pushing them in. When they reach
20 the end of the stuffing box, they will stop.
21    Q.   Now, when you had to replace the pump with new
22 packing, was there any packing already in the pump?
23    A.   You had to take the old packing out.
24    Q.   That is what you did with the tool that you
25 described as a corkscrew-like tool?

Page 52

1    A.   Right.
2    Q.   Walk us through, again, if you will, what
3 exactly did you do with that tool?
4    A.   There is a packing gland, which after you
5 re-pack a pump you put the gland on, and you run the two nuts
6 on. If the pump starts to leak, you periodically tighten the
7 two nuts to take up on the packing to eliminate or reduce the
8 leak. When you pull the old packing, you pull the packing
9 gland out. This corkscrew tool had a T-handle on it, had a
10 spring body and a corkscrew end. You just put it in, turned
11 it until it stopped turning, and yanked, and one piece at a
12 time, all or most of the old packing would come out. What
13 wouldn't come out you had to get in and dig out.
14    Q.   Tell us -- remind us what the consistency was
15 of the material that you were taking out?
16    A.   Most of the time, what happened was the cooling
17 water on the packing would get -- it was only a very small
18 line, an eighth of an inch, maybe, and it would plug up, they
19 would get no cooling water, and it would literally fry the
20 packing, so that it wouldn't hold product anymore. It would
21 leak.
22         DEFENSE COUNSEL: Objection to the
23    form.
24    Q.   What was the consistency of it?
25    A.   Brittle.

Page 53

1    Q.   Was it wet or dry?
2    A.   The exterior was wet. It wouldn't wet all the
3 way through.
4    Q.   When you pulled it out, what kind of conditions
5 did that create?
6         DEFENSE COUNSEL: Objection to the
7    form.
8    A.   Always dust.
9    Q.   Did the dust that removing this packing created
10 get into your immediate breathing zone in your opinion based
11 on your experience working at Stepan Chemical?
12         DEFENSE COUNSEL: Objection to the
13    form.
14    Q.   You may answer.
15    A.   Yes.
16    Q.   Do you believe that you inhaled that
17 dust?
18    A.   Yes.
19         DEFENSE COUNSEL: Objection to the
20    form.
21    Q.   How often did the Aurora pumps that you worked
22 on require maintenance while you worked at Stepan Chemical?
23    A.   Generally, on average, once a week.
24    Q.   Does that mean each pump or does that mean that
25 you only worked on a pump once a week?

14 (Pages 50 to 53)

Louis Barletta
Volume No. I

October 3, 2001
(Barletta v. American Cyanamid (Asbestos Case))

**Page 54**

1   A.   That was each pump.
2   Q.   During a given day when you were working at
3   Stepan Chemical, how often did you work on an Aurora pump?
4   A.   Anywhere from three to six times a shift.
5   Q.   Now, when you worked on the Aurora pump, did
6   that require changing the packing each time?
7   A.   Most of the time, that is what the problem was.
8   Q.   Did it also require replacing the gaskets?
9   A.   That would be the second most.
10  Q.   Approximately how often during the day did you
11  replace gaskets?
12  A.   As I remember, there were close to 20 pumps and
13  a couple of times a shift, a minimum.
14  Q.   A shift being how long?
15  A.   Eight hours.
16  Q.   When you worked as a pipe fitter, did you work
17  with any kind of pipe covering?
18  A.   Yes.
19  Q.   Tell us about that.  What do you remember about
20  the pipe covering?
21  A.   Well, --
22  Q.   First, let me back up with you.
23       Where did you work with the pipe covering?
24  A.   We worked with pipe covering at City Services,
25  Homosote.

**Page 55**

1   Q.   Now, I am talking about while you were working
2   for Marshall Maintenance.
3   A.   Okay.
4   Q.   So, let's back up and talk about that period of
5   time.
6        You worked for Marshall Maintenance for how
7   long a period of time?
8   A.   Until April of '68.
9   Q.   During that period of time, were you a pipe
10  fitter that entire time?
11  A.   Mostly, yes.
12  Q.   While you were working as a pipe fitter at
13  Marshall Maintenance in addition to Ruberoid and Stepan
14  Chemical, where else did you work?
15  A.   In the -- well, this gets a little convoluted.
16  Anderson Clayton manufactured Chiffon margerine.  Campbell
17  Soup bought the plant from Anderson Clayton in Parsippany,
18  and they started to manufacture Godiva chocolates there.  The
19  plant was empty.  They had knocked down a couple of walls and
20  re-piped the whole thing for chocolate manufacture.
21  Q.   What year was that?
22  A.   Nineteen sixty-seven.
23  Q.   When you re-piped it, did you use any pipe
24  insulation?
25  A.   Yes, we did.

**Page 56**

1   Q.   Who manufactured the pipe covering insulation
2   that you used?
3   A.   Certainteed.
4   Q.   Describe the Certainteed pipe covering?
5   A.   I never really saw anything like it.  It was an
6   odd-ball color.  It wasn't off-white or gray.  It was a green
7   color or a blue color.  When you cut it, it made all kinds of
8   dust.
9        DEFENSE COUNSEL:  Objection,
10  non-responsive.
11  Q.   What did you need to do to the pipe covering
12  material to install it?
13  A.   Well, it is like putting sewers on.  On
14  straight runs, you didn't have a problem, but when you got to
15  the ends or the fittings, you had to miter cut.
16  Q.   When you say "the ends or the fittings," is
17  that to get around something?
18  A.   Right.
19  Q.   When you say a "miter cut," what do you mean by
20  that?
21  A.   Well, if you got a piece of pipe running north
22  and south, and you put a 90-degree elbow on it, you are
23  running it east and west.  You run your pipe covering, and
24  when you get to the end to the elbow, you make a 45-degree
25  cut on the end, and you bring the end of your 45-degree cut

**Page 57**

1   on the end of the elbow, and you match it with a
2   corresponding 45-degree cut coming the other way.
3   Q.   Did you have to do that with this Certainteed
4   pipe covering?
5   A.   Every time you made a turn.
6   Q.   How common was it to make a turn in the piping
7   system?
8   A.   Oh, very.  You are either going up to down or
9   back and forth.
10  Q.   What kind of tool did you use to make the cuts
11  to the Certainteed pipe covering?
12  A.   Mostly a hacksaw.
13  Q.   Describe the conditions that were created by
14  making a cut to the Certainteed pipe covering with a hacksaw?
15  A.   The stuff was very dusty.
16  Q.   How did the dust -- how was the dust
17  generated?
18       DEFENSE COUNSEL:  Objection to the
19  form.
20  A.   Just from saw cutting it.
21  Q.   Describe for the jury what the scene looked
22  like when you were cutting a piece of the Certainteed pipe
23  covering with a hacksaw?
24  A.   Like most of what you do, you've always got
25  your face stuck in whatever you are doing, so you can see,

15 (Pages 54 to 57)

Louis Barletta
Volume No. I

October 3, 2001
(Barletta v. American Cyanamid (Asbestos Case))

Page 58

1 and you have to get close enough to anything to work, and
2 whatever is generated by what you are doing generally comes
3 right up at you.
4    Q.   When you say it "generally comes right up at
5 you," --
6         DEFENSE COUNSEL: Objection.
7    Q.   -- what are you talking about?
8    A.   Dust particles. This stuff not only made dust,
9 it flaked off particles.
10    Q.   Did this dust and these particles that were
11 flaked off, in your opinion, based on your experience working
12 with the material, get into your immediate breathing
13 zone?
14         DEFENSE COUNSEL: Objection to the
15 form.
16    A.   Yes.
17    Q.   Did you inhale that dust and those particles?
18    A.   Oh, definitely.
19         DEFENSE COUNSEL: Objection to the
20 form.
21    Q.   How long were you working with this Certainteed
22 pipe covering at the Campbell Soup facility in 1967?
23    A.   This job lasted three or four months and we
24 were not always insulating.
25    Q.   Okay. That was my question.

Page 59

1         How often were you insulating during this
2 period of time?
3    A.   That was pretty much the last thing you did.
4 After it was all piped and piping was tested, depending on --
5 well, that particular job it took us about a month to
6 insulate it because there was a mile of pipe.
7    Q.   When you say it took a month, how many hours a
8 day were you working insulating?
9    A.   Six, maybe.
10    Q.   How many days a week during the month were you
11 working?
12    A.   Five.
13    Q.   So, six hours a day, five days a week for
14 approximately one month at Campbell's chocolate facility you
15 were insulating pipe with Certainteed pipe covering?
16    A.   Right.
17    Q.   Did you ever work at U.S. Pipe in New
18 Jersey?
19         DEFENSE COUNSEL: Objection to the
20 form.
21    A.   Yes.
22    Q.   What did you do there?
23         What did you do at U.S. Pipe?
24    A.   We literally knocked down a building for them.
25 They had fly ash build up on a roof of a building to, oh,

Page 60

1 maybe a foot and a half, and after a gully wash or rain storm
2 adding weight to the fly ash the roof collapsed, and they had
3 no options but to remove the entire roof. Now, this building
4 had no walls. It was -- it did have a roof and it had high
5 beam columns, but it was exposed.
6    Q.   So what specifically did you do on this job?
7         When you say you removed the building, help us
8 to understand what that means?
9    A.   The roof -- the steel was twisted. This roof
10 was made of firebrick refractory. It was tongue and grooved
11 and as I remember it was about six or eight inches wide and a
12 foot long, and it had tar paper, and then some sort of a
13 coating on top.
14    Q.   Was there any material in between the bricks
15 holding it together?
16    A.   Yes, there was.
17    Q.   What was it, do you know?
18    A.   I don't know.
19    Q.   Was there any kind of mortar or cement used
20 that you could see?
21    A.   Not cement, no.
22    Q.   Let me redirect your attention to your year at
23 Stepan Chemical for a moment.
24         In addition to the Aurora pumps that you worked
25 with, were there any other manufacturers of pumps that you

Page 61

1 used there or worked with?
2    A.   Yes.
3    Q.   Who manufactured pumps besides Aurora that you
4 worked on at Stepan Chemical?
5    A.   Worthington, DeLaval, IMO --
6         DEFENSE COUNSEL: I am sorry?
7         THE WITNESS: IMO, DeLaval.
8    A.   -- and Moyno, but Moyno was only pumping
9 product.
10    Q.   What is the significance of that?
11    A.   There was no asbestos involved with Moyno.
12    Q.   And the Worthington pump, what was it pumping?
13    A.   River water.
14    Q.   For what purpose?
15    A.   Supply processed water to the plant.
16    Q.   What did you have to do when you worked with a
17 Worthington pump?
18    A.   Basically, the same thing, re-pack them. They
19 weren't subjected to the same wear and tear as the Aurora's,
20 but it was quite a large pump.
21    Q.   In comparison to the Aurora pumps, how often
22 did you have to work on the Worthington pumps?
23    A.   We used to re-pack that river pump at least
24 three times a month.
25    Q.   Did the Worthington pump require any gaskets?

16 (Pages 58 to 61)

Louis Barletta
Volume No. I

October 3, 2001
(Barletta v. American Cyanamid (Asbestos Case))

---

Page 62

1    A.    Occasionally.  If the boiler went down, most of
2  the piping -- there was a pier halfway out into the river,
3  and the plant was right on the river.  The pump was at the
4  end of the pier in a submerged cage.  The waterline ran, of
5  course, from the pump into the plant.  The waterline was
6  steam traced.  All that means is you run two or four small
7  copper lines that you wire onto the pipe before you insulate
8  it.  It creates heat inside the insulation to keep the pipe
9  from freezing.
10       If the boiler went down, you lost your steam
11  tracing, and basically it only takes a short period of time
12  for the temperature inside the insulation to become the same
13  as the temperature outside the insulation.  So if it were 15
14  degrees out and the wind was blowing, in about an hour and a
15  half you've lost that pipeline, and that happened not
16  frequently, but enough to require a whole lot of extra work.
17    Q.    What about the IMO pump, what was that?
18    A.    They were centrifuge.  The pump operated a
19  centrifuge and that was -- they were separating impurities
20  out of the citric acid.
21       If I can digress for just one moment.
22  Everybody who makes citric acid starts with refined sugar,
23  which is an expensive raw material.  Stepan developed a
24  process to make citric acid from black strap molasses, which
25  is worthless, but it had a lot of impurities in it.  Citric

---

Page 63

1  acid is primarily a food additive, and to get the impurities
2  out of it, it went through a series of centrifuges.  There
3  were three of them.  Two of them were DeLaval, and the other
4  one was a German product called Mercon (phonetic).
5    Q.    Did these centrifuge pumps require gasket
6  material?
7    A.    Occasionally, yes.  But they were serviced on a
8  schedule.
9    Q.    How did that schedule operate?
10    A.    Well, every ten or 12 hours of operation there
11  was a scheduled shut down.  It was disassembled, cleaned,
12  replacement parts put in, filters, gaskets, and it was put
13  back together.
14    Q.    What kind of gaskets did it require?
15    A.    Here, again, they were either Teflon or Teflon
16  coated.
17    Q.    What about on the Worthington pump, what kind
18  of gaskets did it require?
19    A.    We packed the Worthington pump with
20  asbestos.
21       DEFENSE COUNSEL:  Objection.
22    Q.    We are talking about asbestos packing?
23       DEFENSE COUNSEL:  Objection.
24    A.    Yes.
25    Q.    What about the gaskets used on the Worthington

---

Page 64

1  pump, what kind of gaskets did the Worthington pump call
2  for?
3       DEFENSE COUNSEL:  Objection.
4    A.    They were also asbestos because that was just
5  water.
6    Q.    And the Worthington pump called for what kind
7  of packing?
8    A.    We used asbestos packing.
9       DEFENSE COUNSEL:  Objection,
10    non-responsive.
11    Q.    On the gaskets that you used at Stepan
12  Chemical, was there any kind of a warning that advised you
13  not to breathe dust generated from the gasket material?
14    A.    No.
15    Q.    Did the label that was on the gasket material
16  have any kind of a caution not to breathe the dust or warn
17  you to use a respirator?
18    A.    No.
19    Q.    On the packing material that you worked with
20  that contained asbestos, was there any kind of a warning not
21  to breathe the dust?
22    A.    No.
23    Q.    Was there any kind of a warning that you should
24  use a respirator when working with material?
25    A.    No.

---

Page 65

1    Q.    On the Certainteed pipe covering, was there any
2  kind of a warning to avoid breathing the dust?
3       DEFENSE COUNSEL:  Objection to the
4    form.
5       MR. HENDLER:  What is the objection
6    to the form?
7       DEFENSE COUNSEL:  Speculation, lack
8    of foundation.
9    Q.    Mr. Barletta, did you see any kind of a warning
10  on the Certainteed pipe covering advising you not to breathe
11  the dust?
12    A.    No.  If I did, it certainly wasn't in large
13  print on the carton.
14    Q.    Do you have any recollection of seeing such a
15  warning?
16    A.    No.
17    Q.    Do you have any recollection of seeing a
18  warning on the carton that the Certainteed pipe covering came
19  packaged in?
20    A.    No.
21       DEFENSE COUNSEL:  Objection to the
22    form.
23       MR. HENDLER:  What is the objection
24    to the form?
25       DEFENSE COUNSEL:  I didn't hear him

---

17 (Pages 62 to 65)

EXHIBIT G

```
 1                IN THE DISTRICT COURT OF
                   KLEBERG COUNTY, TEXAS
 2                  CAUSE NO. 01-454-D
 3

   LOUIS BARLETTA AND MARY JANE           :
 4 BARLETTA,                              :    DEPOSITION UPON
                                          :    ORAL EXAMINATION
 5               Plaintiff,               :         OF
                                          :    LOUIS BARLETTA
 6       vs.                              :
                                          :      (VOLUME II)
 7 AMERICAN CYANAMID, et al.              :
                                          :
 8               Defendants.             :
   -------------------------------------:
 9
10
11
12            T R A N S C R I P T of the videotaped
13 deposition of LOUIS BARLETTA, called for Oral Examination in
14 the above entitled action, said deposition being taken
15 pursuant to Rules governing Civil Practice in the Courts of
16 New Jersey, by and before KERRY D. HALPERN, a Notary Public
17 and Shorthand Reporter of the State of New Jersey, at the
18 PRINCETON HYATT, Princeton, New Jersey, on Thursday, October
19 4, 2001, commencing at 10:15 a.m.
20
21
22            Priority-One Court Reporting Services
                       899 Manor Road
23            Staten Island, New York  10314
                     (718) 983-1234
24
25
```

Louis Barletta
Volume No. II

October 4, 2001
(Barletta v. American Cyanamid (Asbestos Case))

---

**Page 171**

1  A P P E A R A N C E S:
2

  FOR THE PLAINTIFF LOUIS BARLETTA:

3  THE HENDLER LAW FIRM, P.C.
4  BY:  SCOTT M. HENDLER, ESQ.
   816 Congress Avenue
5  Suite 1100
   Austin, Texas 78701
6
7  FOR THE DEFENDANT CRANE CO.:
8  HARRIS, BEACH LLP
   BY:  LISA PASCARELLA, ESQ.
9  500 Fifth Avenue
   New York, New York 10010
10
11 FOR THE DEFENDANT 3M:
12 THOMPSON, COE, COUSINS & IRONS, ESQS.
   BY:  FRANKLIN H. PERRY, ESQ.
13 200 Crescent Court
   Eleventh Floor
14 Dallas, Texas 75201-1840
15
   FOR THE DEFENDANT CROWN CORK & SEAL:
16
   FLEMMING, ZULACK & WILLIAMSON, LLP
17 BY:  THOMAS A. EGAN, ESQ.
   One Liberty Plaza
18 New York, New York 10006-1404
19
   FOR THE DEFENDANT ITT INDUSTRIES:
20
   NOWELL AMOROSO KLEIN BIERMAN, P.A.
21 BY:  JEANNE M. DAMGEN, ESQ.
   155 Polifly Road
22 Hackensack, New Jersey 07601
23
24
25

---

**Page 172**

1  FOR THE DEFENDANT HOMOSOTE COMPANY:
   FOR THE DEFENDANT PECORA COMPANY:
2
   McGIVNEY, KLUGER & GANNON, P.C.
3  BY:  DWIGHT A. KERN, ESQ.
   305 Broadway
4  8th Floor
   New York, New York 10007
5
6  FOR THE DEFENDANT GENERAL ELECTRIC:
7  HOLLSTEIN, KEATING, CATTELL, JOHNSON & GOLDSTEIN, P.C.
   BY:  E. MICHAEL KEATING, III, ESQ.
8  1608 Walnut Street
   Suite 1602
9  Philadelphia, Pennsylvania 19103
10
   FOR THE DEFENDANT BORG WARNER:
11
   HOAGLAND, LONGO, MORAN, DUNST & DOUKAS, ESQS.
12 BY:  JULIE A. HUMMEL, ESQ.
   40 Paterson Street
13 Box 480
   New Brunswick, New Jersey 08903
14
15 FOR THE DEFENDANT CONGOLEUM:
16 SEGAL, McCAMBRIDGE, SINGER & MAHONEY, LTD.
   BY:  SUZANNE H. GROSS, ESQ.
17 1515 Market Street
   Suite 1710
18 Philadelphia, Pennsylvania 19102
19
   FOR THE DEFENDANT HALLIBURTON:
20
   GODWIN, WHITE & GRUBER, P.C.
21 BY:  JEFF FUDGE, ESQ.
   901 Main Street
22 Suite 2500
   Dallas, Texas 75202-3727
23
24
25

---

**Page 173**

1  FOR THE DEFENDANT GARLOCK:
   FOR THE DEFENDANT A.W. CHESTERTON:
2  FOR THE DEFENDANT PLIBRICO:
3  SEGAL, McCAMBRIDGE, SINGER & MAHONEY, LTD.
   BY:  JESSE M. BUTLER, ESQ.
4  First State Bank Tower Building
   400 West 15th Street
5  Suite 700
   Austin, Texas 78701
6
7  FOR THE DEFENDANT IMO:
8  DUANE, MORRIS & HECKSHER LLP
   BY:  MARISSA BOYERS, ESQ.
9  One Liberty Plaza
   Philadelphia, Pennsylvania 19103-7396
10
11 FOR THE DEFENDANT ABB, LTD.:
12 PICILLO & CARUSO, ESQS.
   BY:  STEVEN A. WEINER, ESQ.
13 371 Franklin Avenue
   Nutley, New Jersey 07110
14
15 FOR THE DEFENDANT UNIROYAL:
16 HANGLEY, ARONCHICK, SEGAL & PUDLIN, ESQS.
   BY:  ANDREW SISLO, ESQ., Of Counsel
17 One Logan Square
   27th Floor
18 Philadelphia, Pennsylvania 19103
19
20 FOR THE DEFENDANT AURORA:

21 TAYLOR & COLICCHIO, LLP
   BY:  JASON LIAM SCHMOLZE, ESQ.
22 502 Carnegie Center
   Suite 103
23 Princeton, New Jersey 08540
24
25

---

**Page 174**

1  FOR THE DEFENDANT GOULDS PUMPS:
2  CULLEN AND DYKMAN, ESQS.
   BY:  CHRISTOPHER RYAN, ESQ.
3  177 Montague Street
   Brooklyn, New York 11201-3611
4
5  FOR THE DEFENDANT QUIGLEY CO., INC.:
6  BEIRNE, MAYNARD & PARSONS, L.L.P.
   BY:  MARK EDWIN LEWIS, ESQ.
7  1300 Post Oak Boulevard
   25th Floor
8  Houstin, Texas, 77056
9
10 FOR THE DEFENDANT PNEUMO ABEX:
11 FOR THE DEFENDANT RILEY STOKER:
   DeHAY & ELLISTON, L.L.P.
12 BY:  HEATHER A. BERNER, ESQ.
   Bank of America Plaza
13 901 Main Street
   Suite 3500
   Dallas, Texas 75202
14
15 FOR THE DEFENDANT ALLIED SIGNAL:
16 DRINKER BIDDLE & SHANLEY, ESQS.
   BY:  JEFFREY S. MANDEL, ESQ.
17 500 Campus Drive
   Florham Park, New Jersey 07932-1047
18
19 FOR THE DEFENDANT A.C. and S., INC.:
   FOR THE DEFENDANT FLINTKOTE CO.:
20 FOR THE DEFENDANT O-I:
21 McCARTER & ENGLISH, ESQS.
   BY:  BRIAN J. LEDDIN, ESQ.
22 4 Gateway Center
   100 Mulberry Street
23 Newark, New Jersey 07102
   Attention:  Richard O'Leary, Esq.
24
25

---

2 (Pages 171 to 174)

Louis Barletta                                                    October 4, 2001
Volume No. II                              (Barletta v. American Cyanamid (Asbestos Case))

---

Page 303

1    Q.    Good afternoon, Mr. Barletta. My name is
2  Marissa Boyers. I hopefully have very few questions for
3  you.
4            When you were working at Stepan Chemical --
5    A.    Yes.
6    Q.    -- you talked about working with some pumps,
7  about 20, I think you said?
8    A.    Yes.
9    Q.    And you also mentioned working with a couple of
10 what you called centrifuge pumps?
11   A.    Yes.
12   Q.    And those were pumps that pumped product. Is
13 that right?
14   A.    Yes.
15   Q.    And at least two of those pumps that you know
16 of were made by IMO?
17   A.    Right.
18   Q.    And they pumped product?
19   A.    Right.
20         MS. BOYERS: That is all I have.
21         (Off the video record)
22         (Pause in proceedings)
23         (On the video record)
24 BY MR. FUDGE:
25   Q.    Mr. Barletta, my name is Jeff Fudge, and I want

---

Page 304

1  to talk to you a little bit more about the pumps at Stepan
2  Chemical.
3    A.    Okay.
4    Q.    How many Worthington pumps do you recall seeing
5  there?
6    A.    Two.
7    Q.    I believe you mentioned yesterday, they were
8  used to pump river water?
9    A.    Correct.
10   Q.    And I thought you also mentioned at least one
11 of them was submerged or were both --
12   A.    No, no. Neither one was submerged. The
13 central lines were submerged, but they were inside cages to
14 keep anything from washing down the river.
15   Q.    Okay. When you first went to work at Stepan
16 Chemical, were these Worthington pumps already installed?
17   A.    Yes.
18   Q.    Do you know how long they had been there?
19   A.    Not offhand.
20   Q.    Do you know if these Worthington pumps had ever
21 been serviced before you first serviced them?
22   A.    Undoubtedly.
23   Q.    What size were these Worthington pumps --
24 first, were they the same size?
25   A.    No.

---

Page 305

1    Q.    What size --
2    A.    One was larger than the other.
3    Q.    Just give me your best description of the two
4  Worthington pumps?
5    A.    They were uprights. The motor was on top. The
6  larger of the two was probably five-foot high overall.
7    Q.    All right. How were you able to determine that
8  they were Worthington pumps?
9    A.    Their name was cast right in the casting.
10   Q.    Did you ever see any written instructions or
11 literature pertaining to the Worthington pumps there?
12   A.    No.
13   Q.    When you would do the service work on them,
14 would you just do the work in the field?
15   A.    Right there, yes.
16   Q.    I believe you mentioned doing repairs to the
17 Worthington pumps about three times a month.
18         Would that be for both pumps?
19   A.    Roughly, yes.
20   Q.    I believe you also mentioned that occasionally
21 you would have to replace the gaskets.
22         How often would that occur?
23   A.    It was mostly the packing.
24   Q.    How often would you replace the packing, if you
25 recall?

---

Page 306

1    A.    A couple times a month minimum.
2    Q.    Okay. I believe you mentioned using asbestos
3  packing and gaskets on these Worthington pumps?
4    A.    Right.
5    Q.    Why did you use that type of gaskets and
6  packing on a pump that was pumping river water?
7    A.    It was water as opposed to product where you
8  would use Teflon or Teflon impregnated stuff.
9    Q.    Since it was pumping just regular river water
10 that wasn't heated, could you have used something
11 non-asbestos in packing in gaskets?
12   A.    Oh, I am sure.
13   Q.    Do you know, if when you first serviced these
14 Worthington pumps, was the original gaskets and packing in
15 there, had it already been replaced?
16   A.    Yes.
17         MR. FUDGE: Thank you, sir.
18         (Off the video record)
19         (Pause in proceedings)
20         (On the video record)
21 BY MR. BUTLER:
22   Q.    Good afternoon, Mr. Barletta. My name is
23 Jesse Butler, and I represent several of the defendants in
24 this lawsuit. I think we are getting near the end. In fact,
25 I might even be the last. I don't anticipate taking very

---

35 (Pages 303 to 306)

Louis Barletta
Volume No. II

October 4, 2001
(Barletta v. American Cyanamid (Asbestos Case))

---

Page 307

1  long.
2      If I ask any questions that you don't
3  understand, please let me know.
4      A.  Okay.
5      Q.  And if I have a question and you answer it, I
6  am going to assume that you understood my question.  Is that
7  fair?
8      A.  Fair enough.
9      Q.  Now, a couple more background questions.  You
10  testified that your father was a smoker.
11      Did he smoke in the house while you were
12  growing up?
13      A.  Yes.
14      Q.  Do you have any recollection of how much he
15  smoked?
16      A.  Not particularly.
17      Q.  Was your wife a smoker when you got married?
18      A.  Yes.
19      Q.  She quit in 1980?
20      A.  Yes.
21      Q.  I want to talk to you about your time at
22  Stepan.
23      I believe you started in August or September of
24  1966.  Is that correct?
25      A.  Correct.

---

Page 308

1      Q.  At some point -- strike that.
2      You worked there for approximately a year?
3      A.  Yes.  I was on loan from Marshall Maintenance.
4      Q.  At some point, did you become a service rep for
5  Stepan?
6      A.  No.
7      Q.  Who were you employed by?
8      A.  Marshall Maintenance.
9      Q.  And was that at approximately April of 1967?
10      A.  When I started for Marshall, yes.
11      Q.  As a service representative?
12      A.  Yes.
13      Q.  Okay.  How did your job duties change when you
14  became a service representative?
15      A.  I became mostly a suit, shirt and a tie.  It
16  was, a customer would call, want somebody to come out, look
17  at a job, and give a price.
18      Q.  We talked a lot about the different -- your
19  work at Stepan.
20      Were all the product lines at Stepan citric
21  acid lines or were there other product lines?
22      A.  Only what was used in filtering of the citric
23  acid.  There was some carbon lines, some waterlines, and
24  other than steam lines that is about it.
25      Q.  Okay.  Did the carbon lines require the Teflon

---

Page 309

1  gaskets that you talked about?
2      A.  Yes.  The carbon was a fine consistency like
3  granulated sugar.  It had to be mixed with water to be
4  pumped.
5      Q.  And you used a Teflon gasket for those lines?
6      A.  Yes.
7      Q.  Yesterday, you mentioned briefly, I believe,
8  Flexitallic in relation to the steam lines.
9      A.  Right.
10      Q.  How many steam lines did you work on at Stepan,
11  if you recall?
12      A.  Most of the damage to the steam lines was from
13  the citric acid.  It was exterior damage.  I think it was
14  almost a daily thing.  The plant was quite large, and
15  anything you installed today, you had to reinstall in two
16  weeks.
17      Q.  And we are talking about the steam lines,
18  correct?
19      A.  Right.
20      Q.  Are you able to tell me how many Flexitallic
21  gaskets you might replace on a daily basis on average at
22  Stepan?
23      A.  Well, once you took them out, you pretty much
24  couldn't reuse them, two, three, four.
25      Q.  How long would it take you to remove a

---

Page 310

1  Flexitallic gasket?
2      A.  If it was in a reasonably good accessible spot,
3  15 or 20 minutes.  If not, it could take as much as an hour
4  or two.
5      Q.  You were asked earlier about Johns-Manville
6  products, and I believe you said most of your exposure was
7  through -- was to transite pipe?
8      A.  Yes.
9      Q.  Did you ever have occasion to work with
10  Johns-Manville gaskets or packing?
11      A.  Not that I specifically recall.
12      Q.  You mentioned Garlock sheet gaskets yesterday?
13      A.  Right.
14      Q.  Do you recall ever working with -- strike
15  that.
16      You recalled Garlock sheet gaskets at Stepan.
17  Is that correct?
18      A.  Yes.
19      Q.  Do you recall any other products you knew to be
20  manufactured by Garlock?
21      A.  Garlock manufactured a Flexitallic gasket
22  also.  I believe they called it Guardian, and the storeroom
23  at Stepan used to keep both in stock, but primarily it was
24  Flexitallic.
25      Q.  Do you have a specific recollection of

---

36 (Pages 307 to 310)

Louis Barletta
Volume No. II

October 4, 2001
(Barletta v. American Cyanamid (Asbestos Case))

**Page 311**

1  replacing a Guardian gasket?
2     A.   Not particularly.
3     Q.   Okay. Do you have any specific knowledge that
4  that Guardian Garlock gasket contained asbestos?
5     A.   Except for the name on the outer ring, they
6  were identical.
7        MR. BUTLER: Objection,
8  non-responsive.
9     Q.   Do you have any specific knowledge, though,
10 that the Guardian contained asbestos?
11    A.   Yes.
12    Q.   How do you have that knowledge or --
13    A.   Because they only stocked two types of -- using
14 Flexitallic in a generic sense -- they only stocked two
15 types, asbestos and Teflon.
16    Q.   Is that Stepan?
17    A.   Yes.
18    Q.   Did anyone ever tell you, though, that the
19 Guardian contained asbestos?
20    A.   No.
21    Q.   Did you ever have occasion to work with Anchor
22 packing at Stepan?
23    A.   If I did, I have no recollection of it.
24    Q.   To back up just a second, I asked you about
25 your time as a service rep.

**Page 312**

1        Did your other job duties cease when you became
2  a service rep?
3     A.   Mostly, yes.
4     Q.   When you say "mostly," on occasion you might
5  have to go out and perform your prior duties, but the vast
6  majority of your time was as a service rep?
7     A.   Yes.
8     Q.   How long would the gaskets last on a product
9  line at Stepan?
10    A.   At most, a week or two.
11    Q.   And the same for the packing, how long would
12 the packing last on a product line?
13    A.   There, again, yes.
14    Q.   Would that last about a week for the packing on
15 the product lines?
16    A.   Yes.
17    Q.   How long would the gaskets last on the other
18 lines, the non-product lines, at Stepan?
19    A.   Well, no more than a month.
20    Q.   Did the gaskets last on average about a month
21 on the non-product lines at Stepan?
22    A.   Roughly, yes.
23    Q.   And the same question for the packing.
24       How long would the packing last on the
25 non-product line at Stepan?

**Page 313**

1     A.   If the cooling water didn't fail, quite a long
2  time.
3     Q.   Is there any way for you to tell me what quite
4  a long time means?
5     A.   They could last two or three months.
6     Q.   Okay. Is that an average?
7     A.   Well, it is difficult because, like in the
8  carbon area, it didn't take much to block up the cooling
9  waterline. It would depend. Some of the pumps were in a bad
10 area, and then they would be just as bad as the product
11 pumps.
12    Q.   So it varied. Sometimes they lasted for quite
13 a while on a non-product line, the packing, and sometimes you
14 had to replace it a little more often?
15    A.   Right.
16    Q.   This packing on the non-product lines, it was
17 wet when you removed it. Is that correct?
18    A.   Yes.
19    Q.   Okay. You used a corkscrew to remove it. Is
20 that correct?
21    A.   Well, the easiest way to describe it is, it is
22 a corkscrew-like tool, but it is called a pump packing
23 removal tool.
24    Q.   How long would it take you to remove this wet
25 packing with the tool that you just described?

**Page 314**

1     A.   Well, here, again, depending on accessibility,
2  it would vary anywhere from a 15 minute easy job to an hour
3  or more.
4     Q.   Let me clarify. I am not interested in the
5  time that it would take to unbolt or remove the pump. Just
6  the simple act of using the corkscrew and remove the packing,
7  how long would that take?
8     A.   It would depend. Some of the packing, when you
9  hooked it and pulled it out, the entire strip would come
10 out. Some of it came out in pieces, so when it came out you
11 would have to hook the same piece four times.
12    Q.   If it came out in one piece, how long would
13 that take?
14    A.   Fifteen minutes.
15    Q.   How long would it take if you had to do it
16 several times?
17    A.   If there were five strands in there, it could
18 take an hour or a little bit more.
19    Q.   You mentioned the Garlock sheet gasket material
20 yesterday.
21       I believe you testified that was a rare
22 occasion when you had to use that. Is that correct?
23    A.   Yes.
24    Q.   Do you have a specific recollection of actually
25 working personally with the Garlock sheet gaskets?

37 (Pages 311 to 314)

Louis Barletta
Volume No. II

October 4, 2001
(Barletta v. American Cyanamid (Asbestos Case))

---

Page 315

1    A.    Personally, I used to use the Garlock sheet to
2  custom make full-faced gaskets because it cut easier than
3  Chesterton.
4    Q.    How often would you have to -- do you recall
5  how often you recall using --
6    A.    Once or twice a week.
7         MR. BUTLER:  Sir, I am going to look at
8  my notes, but I think that is all I have.
9    Thank you, Mr. Barletta.
10        (Off the video record)
11        (Recess taken)
12        (On the video record)
13 BY MR. HENDLER:
14   Q.    Mr. Barletta, where were you and Jane married?
15   A.    In the courthouse in Kingsville, Texas.
16   Q.    Where is Jane's family from?
17   A.    What is left of them, they are from Texas.
18   Q.    Mr. Barletta, when is the last time you believe
19 you were exposed to asbestos?
20   A.    In the mid '70s, '75, '76.
21   Q.    When did you learn asbestos was considered a
22 health hazard?
23   A.    It is when the whole Manville thing blew up
24 which I believe was in the early '80s.
25   Q.    So, if your last exposure to asbestos was in

Page 316

1  the mid '70s, and you didn't learn it was hazardous until
2  sometime after 1980 --
3         MR. HENDLER:  Let's go off the
4   record, please.
5         (Off the video record)
6         (Pause in proceedings)
7         (On the video record)
8    Q.    So, Mr. Barletta, if you learned that asbestos
9  was hazardous sometime after 1980, and your last exposure to
10 asbestos was in the mid '70s, how is it that you were exposed
11 to asbestos after learning that it was hazardous?
12   A.    I never was.
13   Q.    If you answered a question earlier in response
14 to a defense lawyer who was asking you about that, did you
15 mis-speak?
16        DEFENSE COUNSEL:  Objection to the
17   form, leading.
18   Q.    Let me rephrase it, Mr. Barletta.
19        Why do you think you answered a question
20 earlier that you were exposed to asbestos after you learned
21 it was hazardous?
22        DEFENSE COUNSEL:  Objection to the
23   form.
24        MR. HENDLER:  What is the objection
25   to the form?

Page 317

1         DEFENSE COUNSEL:  Excuse me?
2         MR. HENDLER:  What is the objection
3  to the form?
4         DEFENSE COUNSEL:  I think there were
5  some other lawyers.
6         I think it lacks foundation, and it
7  is argumentative, speculation.
8         MR. HENDLER:  Okay.  Any other
9  grounds for the form objection?
10   Q.    You may answer, Mr. Barletta.
11   A.    I mis-spoke.  I don't know.
12   Q.    When did you finish working at B&L Industrial?
13   A.    In 1982.
14   Q.    What month, approximately?
15   A.    February.
16   Q.    February of 1982.  Do you know of any place you
17 were exposed to asbestos after leaving B&L Industrial?
18   A.    No.
19   Q.    Mr. Barletta, when you worked for Clinton
20 Plumbing at the various new housing developments that you
21 helped to build, how did the joint compound that the
22 drywallers were using come packaged?
23   A.    In five-gallon pails.
24   Q.    Did the drywallers have to mix that material
25 with anything?

Page 318

1    A.    No.  It was -- they troweled right out of it.
2    Q.    Was there any dust associated with the
3  application of the material before they had to sand it?
4    A.    Not with the application, no.
5    Q.    For the asbestos-containing materials that you
6  used at these housing developments you worked on while
7  employed by Clinton Plumbing, who was the primary
8  supplier?
9         DEFENSE COUNSEL:  Objection to the
10   form.
11        MR. HENDLER:  What is the objection
12   to the form?
13        DEFENSE COUNSEL:  It lacks
14   foundation, and what products did he use.
15   I think you need to specify what products
16   he used.
17        MR. HENDLER:  I think that's already
18   been established.
19        DEFENSE COUNSEL:  My objection is
20   noted.
21   Q.    You may answer the question.
22   A.    The bulk of the material, at least 90 percent
23 of it, came from Crane Company.
24   Q.    What material are you referring to?
25   A.    All of it.

38 (Pages 315 to 318)

EXHIBIT H

```
1            IN THE DISTRICT COURT OF KLEBERG COUNTY, TEXAS
                    105th JUDICIAL DISTRICT
2                  CAUSE NO.:  01-4454-D
3

   LOUIS BARLETTA and MARY JANE      )
4  BARLETTA,                          )
                                      )
5                 Plaintiffs,         )
                                      )       VIDEOTAPE
6        vs.                          )   DEPOSITION UPON
                                      )   ORAL EXAMINATION
7  AMERICAN CYANAMID, et al.,         )          OF
                                      )   LOUIS BARLETTA
8                 Defendants.         )
                                      )
9  ----------------------------------)
10
11
12            T R A N S C R I P T of the videotape
13  deposition of LOUIS BARLETTA, called for Oral Examination
14  in the above entitled action, said deposition being taken
15  pursuant to Rules governing Civil Practice in the Courts
16  of New Jersey, by and before KERRY D. HALPERN, a Notary
17  Public and Shorthand Reporter of the State of New Jersey,
18  at Princeton Hyatt Regency, 102 Carnegie Center,
19  Princeton, New Jersey 08540, on Monday, October 7, 2002,
20  commencing at 11:25 a.m.
21
22
23          Priority-One Court Reporting Services
                         899 Manor Road
24          Staten Island, New York   10314
                      (718) 983-1234
25
```

Louis Barletta                    (Barletta v. TXAL)                    October 7, 2002

Page 2

1        IT IS HEREBY STIPULATED AND AGREED
2   by and between the attorneys for the respective parties
3   hereto that filing, sealing and certification of the
4   within Examination Before Trial be waived; that all
5   objections, except as to form, are reserved to the time of
6   trial.
7        IT IS FURTHER STIPULATED AND AGREED
8   that the transcript may be signed before any Notary Public
9   with the same force and effect as if signed before a Clerk
10  or Judge of the Court.
11       IT IS FURTHER STIPULATED AND AGREED
12  that the within examination may be utilized for all
13  purposes as provided by the CPLR.
14       IT IS FURTHER STIPULATED AND AGREED
15  that all rights provided to all parties by the CPLR shall
16  not be deemed waived and the appropriate sections of the
17  CPLR shall be controlling with respect thereto.
18       IT IS FURTHER STIPULATED AND AGREED by and
19  between the attorneys for the respective parties hereto
20  that a copy of this Examination shall be furnished,
21  without charge, to the attorney representing the witness
22  testifying herein.
23
24
25

Page 3

1   A P P E A R A N C E S:
2   FOR THE PLAINTIFFS:
3   THE HENDLER LAW FIRM
    BY: SCOTT HENDLER, ESQ.
4   816 CONGRESS AVENUE
    Suite 1100
5   Austin, Texas 78701
6
7   FOR THE DEFENDANT AMERICAN CYANAMID COMPANY:
8   BAKER BOTTS LLP
    BY: KEVEN T. JACOBS, ESQ.
    One Shell Plaza
9   910 Louisiana Street
    Houston, Texas 77002-4995
10
11  FOR THE DEFENDANT RILEY STOKER:
12  KELLY, McLAUGHLIN, FOSTER, BRAGAGLIA, DALY,
    TRABUCCO & WHITE, LLP
13  BY: JONATHAN ERON, ESQ.
    900 Haddon Avenue
14  Suite 332
    Collingswood, New Jersey 08108
15
16  FOR THE DEFENDANT BURNHAM:
17  BUSCH & BUSCH, ESQS.
    BY: STEVEN F. SATZ, ESQ.
18  215 North Center Drive
    North Brunswick, New Jersey 08902
19
20  FOR THE DEFENDANT CONGOLEUM CORP.:
21  SEGAL, McCAMBRIDGE, SINGER & MAHONEY, LTD.
    BY: THEODORE C. FLOWERS, ESQ.
22  1515 Market Street
    Suite 1720
23  Philadelphia, Pennsylvania 19102
24
25

Page 4

1   FOR THE DEFENDANT FLINTKOTE:
2   McCARTER & ENGLISH, LLP
    BY: EVOLEA C. WATSON, ESQ.
3   Mellon Bank Center
    Suite 700
4   1735 Market Street
    Philadelphia, Pennsylvania 19103-7501
5
6   FOR THE DEFENDANT GUARDLINE:
7   KELLEY, JASONS, McGUIRE & SPINELLLI, L.L.P.
    BY: TIMOTHY McGOWAN, ESQ.
8   Suite 1500
    Centre Square West
9   1500 Market Street
    Philadelphia, Pennsylvania 19102
10
11  FOR THE DEFENDANT GARLOCK:
12  GOLDFEIN & HOSMER, ESQS.
    BY: ROBERT P. COLEMAN, ESQ.
13  1600 Market Street
    33rd Floor
14  Philadelphia, Pennsylvania 14103
15
16  FOR THE DEFENDANT HOMOSOTE:
17  THE BAKER LAW FIRM
    BY: KENNETH C. BAKER, ESQ.
    12600 Featherwood
18  Suite 225
    Houston, Texas 77034
19
20  FOR THE DEFENDANT IMO INDUSTRIES:
21  DUANE MORRIS, HECKSCHER, ESQS.
    BEATRICE O'DONNELL, ESQ.
22  One Liberty Place
    Philadelphia, Pennsylvania 19103-7396
23
24
25

Page 5

1   FOR THE DEFENDANT GEORGIA PACIFIC:
2   McCARTER & ENGLISH, LLP
    BY: PAUL F. SLATER, ESQ.
3   300 Park Avenue
    New York, New York 10022-7402
4
5   FOR THE DEFENDANT CHESTERTON:
6   CHAVES, GONZALES & HOBLIT, L.L.P.
    BY: DOUGLAS E. CHAVES, ESQ.
7   2000 Frost Bank Plaza
    802 North Carancahua
8   Corpus Christi, Texas 78470
9
    FOR THE DEFENDANT HALLIBURTON COMPANY/ sued
10  individually and as alleged successor to Dresser
    Industries and Worthington Corporation:
11
    GODWIN GRUBER, P.C.
12  BY: CHRISTI DICKSON FEENEY, ESQ.
    Renaissance Tower
13  1201 Elm Street
    Suite 1700
14  Dallas, Texas 75270
15
    FOR THE DEFENDANT CERTAINTEED:
16
    POWERS & FROST, L.L.P.
17  BY: STEPHEN E. McCLEERY, ESQ.
    2600 Two Houston Center
18  909 Fannin
    Houston, Texas 77010
19
20  FOR THE DEFENDANT PENTAIR, INC.:
21  SHEEHY SERPE & WARE, ESQS.
    BY: GEORGE P. PAPPAS, ESQ.
22  2500 Two Houston Center
    909 Fannin Street
23  Houston, Texas 77010-1003
24
25

2 (Pages 2 to 5)

Louis Barletta                      (Barletta v. TXAL)                      October 7, 2002

**Page 10**

1   A.   Yes.
2   Q.   How often did you breathe this dust?
3   A.   Every time we mixed it.
4   Q.   How often did you mix it at Cantebury
5   Estates?
6        MR. WHITE: Objection to the form.
7        MR. HENDLER: What is the objection
8   to the form?
9        MR. WHITE: Speculation.
10  Q.   You may answer.
11  A.   Every time we patched the flue which could
12  be once, twice a day.
13  Q.   You also described patching the flues at New
14  Level Homes, a subdivision. Do you remember that
15  testimony?
16  A.   Yes.
17  Q.   What did you use to do this work to patch
18  the flues at New Level Homes?
19  A.   The same asbestos cement.
20  Q.   Who supplied that asbestos cement?
21  A.   Crane.
22  Q.   How did you prepare the asbestos cement for
23  use at New Level Homes?
24  A.   It is a powder, you pour it in a bucket, you
25  put water in, and you mix it.

**Page 11**

1   Q.   How did mixing the asbestos cement affect
2   the air that you were breathing?
3   A.   Until it mixed, it made dust.
4   Q.   Were you exposed to the dust from this
5   asbestos cement?
6   A.   Definitely.
7   Q.   Did you breathe the dust from this asbestos
8   cement?
9   A.   Yes.
10  Q.   How often did you breathe the dust?
11       MR. WHITE: Objection to the form.
12  A.   Maybe once a day.
13  Q.   You also described doing the same type of
14  work, patching holes in the flue at Crestwood.
15       Do you remember that testimony?
16  A.   Yes.
17  Q.   What did you use to patch the holes in the
18  flue at Crestwood?
19  A.   Asbestos cement.
20  Q.   Who supplied the asbestos cement at
21  Crestwood?
22  A.   Crane.
23  Q.   How do you prepare this asbestos cement?
24  A.   The same way.
25  Q.   How did mixing the asbestos cement affect

**Page 12**

1   the air that you were breathing?
2        MR. WHITE: Objection to the form.
3        MR. HENDLER: What is the objection
4   to the form?
5        MR. WHITE: Assumes facts not in
6   evidence and calls for speculation.
7   Q.   You may answer.
8   A.   Until you mixed it, it was dusty.
9   Q.   Were you exposed to the dust that the mixing
10  process generated from this asbestos cement?
11  A.   Yes.
12  Q.   Did you breathe the dust from this asbestos
13  cement?
14  A.   Yes.
15  Q.   How often did you breathe the dust from this
16  asbestos cement at Crestwood?
17       MR. WHITE: Objection to the form.
18  A.   There, again, maybe about once a day.
19  Q.   Mr. Barletta, do you remember telling us
20  about your work at Stephan Chemical in 1966?
21  A.   Yes.
22  Q.   Remind us what Stephan Chemical manufactured
23  at that facility?
24  A.   Citric acid.
25  Q.   What did you do there primarily?

**Page 13**

1   A.   Covered production maintenance and midnight
2   shift and primarily maintained pumps.
3   Q.   How did you do that?
4   A.   Mostly they were re-packed.
5   Q.   Re-packed with what?
6   A.   With a Teflon coated braided packing.
7   Q.   Describe what that packing looked like?
8   A.   It was a kind of a gray color, had a bluish
9   hue, came on a spool.
10  Q.   What shape was it?
11  A.   Some of it was round, some of it was square
12  or rectangular.
13  Q.   When you said "braided," what does that
14  mean? Like a hair braid, is what you are talking about?
15  A.   Right.
16  Q.   What was the brand of this Teflon -- let me
17  rephrase the question.
18       What was the brand of the Teflon coated
19  packing that had this blue hue to it that you used for
20  this job most often?
21  A.   Chesterton.
22  Q.   Now, remind us what you did to replace the
23  A.W. Chesterton packing?
24  A.   There is a tool called a packing tool which
25  looks likes a corkscrew or a spring. You twist it, grab

4 (Pages 10 to 13)

Louis Barletta                    (Barletta v. TXAL)                    October 7, 2002

Page 14

1    the old packing, pull it out.
2        Q.    What was the consistency --
3            MR. HENDLER: Off the record, please.
4            (Interruption by telephone)
5            (Off the video record)
6            (Recess taken)
7            (Back on the video record)
8        Q.    Mr. Barletta, describe the consistency of
9    the packing material made by Chesterton when you removed
10   it from these pumps?
11       A.    Mostly it was dry and brittle.
12       Q.    How often did you do this?
13       A.    On each pump, probably three, four times a
14   week.
15       Q.    During each shift or each day that you
16   worked there, how often did you have to change the packing
17   in a pump?
18       A.    Three or four times a night.
19       Q.    Was this primarily Chesterton packing?
20       A.    Yes.
21       Q.    In particular, this was the Chesterton
22   packing that you described being gray with a blue hue to
23   it?
24       A.    Yes.
25       Q.    How did removing this A.W. Chesterton

Page 15

1    packing affect the air that you were breathing?
2        A.    Mostly it came out in chunks and particles
3    flew all over.
4        Q.    Did it create any dust?
5        A.    Yes.
6        Q.    Were you exposed to the dust that this A.W.
7    Chesterton packing created?
8        A.    Yes.
9        Q.    Did you breathe the dust from the A.W.
10   Chesterton packing?
11       A.    Yes.
12       Q.    How often did you breathe this dust when you
13   had to remove A.W. Chesterton packing?
14       A.    About every time we removed it.
15       Q.    You also testified earlier that you worked
16   with gaskets at Stephan Chemical.
17           Do you remember that testimony?
18       A.    Yes.
19       Q.    What were the primary brands of gaskets that
20   you worked with?
21           MR. COLEMAN: Objection to the form.
22           MR. HENDLER: What is the objection
23       to the form?
24           MR. COLEMAN: Lack of foundation.
25           (Interruption by telephone)

Page 16

1            MR. HENDLER: Let's go off the
2        record.
3            (Off the video record)
4            (Recess taken)
5            (Back on the video record)
6        Q.    At Stephan Chemical, Mr. Barletta, what were
7    the primary brands of gaskets that you worked with?
8        A.    Chesterton and Garlock.
9        Q.    Tell us about the Garlock gasket. What did
10   it look like?
11       A.    Most of the Garlock gasket was sheet goods.
12   It was black in color with whitish fibers running through
13   it and had their name plastered all over it.
14       Q.    How did you work with that sheet gasket
15   material?
16       A.    We cut gaskets from it.
17       Q.    Did you install them into flanges at
18   Stephan?
19           MR. COLEMAN: Objection to the form.
20       Q.    Tell us what you did with the gaskets after
21   you cut them?
22       A.    Installed them.
23       Q.    After you installed them, did you ever have
24   to replace them?
25           MR. COLEMAN: Objection to the form.

Page 17

1            MR. HENDLER: What is the form
2        objection?
3            MR. COLEMAN: Leading.
4        Q.    You may answer.
5        A.    All right, yes. Basically, on a regular
6    basis.
7        Q.    How did you remove a Garlock gasket that you
8    had cut and installed?
9            MR. COLEMAN: Objection to the
10       form.
11       A.    After you broke the flange loose, you mostly
12   had to scrape it off.
13       Q.    How did the scraping of the Garlock gasket
14   off of the flange affect the air that you were
15   breathing?
16           MR. COLEMAN: Objection to the form.
17           MR. HENDLER: What is the form
18       objection?
19           MR. COLEMAN: Lack of proper
20       foundation.
21       Q.    You may answer.
22       A.    Particles. Made particles in the air and
23   some dust.
24       Q.    Were you exposed to the dust that this
25   Garlock gasket material generated from scraping it off the

5 (Pages 14 to 17)

Louis Barletta                                (Barletta v. TXAL)                                October 7, 2002

---

**Page 18**

1 flange?
2          MR. COLEMAN: Objection, leading.
3     A.   Yes.
4     Q.   Did you breathe the dust from this Garlock
5 gasket material?
6          MR. COLEMAN: Objection to the
7 form.
8     A.   Yes.
9     Q.   How often did you breathe the dust from the
10 Garlock gasket material?
11          MR. COLEMAN: Objection to the form.
12     A.   Every time you changed the gasket.
13     Q.   How often did you have to change a Garlock
14 gasket?
15          MR. COLEMAN: Objection to the form.
16     A.   On any given flange, at least once a week.
17     Q.   And during an eight-hour shift, how often
18 would you have to do this work?
19     A.   Two or three times.
20     Q.   Was this done each shift during the year
21 that you were there?
22          MR. COLEMAN: Objection to the form.
23     A.   Yes.
24     Q.   In addition to the sheet gasket material
25 manufactured by Garlock, were there any other types of

**Page 19**

1 Garlock gaskets that you worked with there?
2     A.   Yes. I used the term Flexitallic
3 generically, but their version was known as a Guardian.
4     Q.   How did you know the Guardian was a Garlock
5 product?
6     A.   It said so right on the ring.
7     Q.   Did you ever replace Guardian gaskets in a
8 flange?
9          MR. COLEMAN: Objection to the form.
10          MR. HENDLER: What is the form
11 objection?
12          MR. COLEMAN: Leading.
13     Q.   You may answer.
14     A.   Yes.
15     Q.   Describe what you did to remove the gasket
16 that was in there?
17     A.   Mostly they came out clean, and you just had
18 to scrape some residue off.
19     Q.   What did you use to scrape the residue off?
20     A.   A scraper, like a putty knife.
21     Q.   Any other tool?  Let me rephrase it.
22          Did you use any other tool in addition to a
23 putty knife to scrape the residue off?
24     A.   Yes. Normally, we wire brushed them down.
25     Q.   When you wire brushed the flange when

**Page 20**

1 removing a Guardian gasket, what kinds of conditions did
2 it create in the air that you were breathing?
3          MR. COLEMAN: Objection to the form.
4          MR. HENDLER: What is the form
5 objection?
6          MR. COLEMAN: Lack of foundation.
7     Q.   You may answer.
8     A.   Some dust.
9     Q.   Let me ask you this, Mr. Barletta. When you
10 were installing a Guardian gasket, could you identify the
11 gasket that you had to remove that you were replacing, the
12 gasket that you were taking out?
13     A.   Easily, yes.
14     Q.   Did you ever have to remove a Guardian
15 gasket from a flange?
16     A.   Yes.
17     Q.   In removing a Guardian gasket, in addition
18 to taking it out and scraping it with a putty knife, what
19 other tools did you use to clean the flange?
20     A.   A wire brush and sometimes sand cloth.
21     Q.   How did using a wire brush to clean the
22 flange of the residue of the Guardian gasket affect the
23 air that you were breathing?
24          MR. COLEMAN: Objection to the form.
25          MR. HENDLER: What is the form

**Page 21**

1 objection?
2          MR. COLEMAN: Lack of foundation.
3     Q.   You may answer.
4     A.   It made dust.
5     Q.   Were you exposed to the dust from this
6 Guardian gasket material?
7          MR. COLEMAN: Objection to the form.
8     A.   Yes.
9     Q.   Did you breathe the dust from this Guardian
10 gasket material?
11          MR. COLEMAN: Objection to the form.
12     A.   Yes.
13     Q.   How often did you breathe the dust from this
14 Guardian gasket material?
15     A.   Every time I changed one.
16     Q.   How often did you have to change a Guardian
17 gasket during the year that you worked at Stephan Chemical
18 during a shift?
19     A.   Maybe once a week on any given flange.
20     Q.   I am not sure I understand what you mean.
21     A.   Well, there were hundreds of flanges in the
22 plant, and the gasket lasted maybe a week.
23     Q.   Was there more than one flange that
24 contained a Guardian gasket --
25     A.   Yes.

---

6 (Pages 18 to 21)

Louis Barletta                    (Barletta v. TXAL)                    October 7, 2002

1    Q.    -- at any given time?
2    A.    Yes.
3    Q.    So, what do you mean when you say at least
4    once a week at any given -- on any given flange?
5    A.    If I put a gasket in flange A tonight, a
6    week from tonight that gasket would be changed.
7    Q.    So every flange that had a Guardian gasket
8    in it at Stephan Chemical had to have that Guardian gasket
9    replaced once a week?
10    MR. COLEMAN:  Objection to the form.
11    A.    On average, yes.
12    MR. HENDLER:  Off the record.
13    (Off the video)
14    (Recess taken)
15    (Back on the video record)
16    Q.    Mr. Barletta, how often did each flange at
17    Stephan Chemical that had a Guardian gasket in it have to
18    have that Guardian gasket replaced?
19    MR. COLEMAN:  Objection to the
20    form.
21    A.    On average, about once a week.
22    Q.    Was there anyone else besides you
23    responsible for replacing the Guardian gasket in those
24    flanges each week?
25    A.    On the night shift, no.

1    (Interruption at door)
2    MR. HENDLER:  Off the record.
3    (Off the video record)
4    (Pause in proceedings)
5    (On the video record)
6    Q.    Now, Mr. Barletta, you say that each flange
7    that contained a Guardian gasket had to have that Guardian
8    gasket replaced once a week.
9    Did that always occur on the night shift?
10    A.    No.
11    MR. COLEMAN:  Objection to the form.
12    Q.    How often did you have to replace a Guardian
13    gasket each shift during the year that you worked at
14    Stephan Chemical on average?
15    A.    Once or twice a night.
16    Q.    Mr. Barletta, you testified about your work
17    at A.J. -- excuse me.
18    Mr. Barletta, you testified about your work
19    at A.J. Haines.
20    Do you remember that testimony?
21    A.    Yes.
22    Q.    You talked about re-piping a plant for
23    Homosote.  Do you remember that testimony?
24    A.    Yes.
25    Q.    You installed a new line of pipes.  Is that

1    correct?
2    A.    On those steam lines, yes.
3    Q.    And then you removed the old existing steam
4    lines?
5    A.    That is correct.
6    Q.    Based on -- before I get to that, let me ask
7    you this, Mr. Barletta.
8    Were the steam lines that you removed
9    covered with anything?
10    MR. BAKER:  Objection to the form.
11    Q.    You may answer.
12    A.    Yes, they were.
13    Q.    What were they covered with?
14    A.    Asbestos.
15    Q.    How do you know it was asbestos insulation
16    on these lines?
17    MR. BAKER:  Objection to the form.
18    A.    I have seen more than enough of it to
19    identify asbestos insulation.
20    Q.    So, based on your 30 years of experience
21    working in the maintenance and building trades, is it your
22    opinion that the material that was on the lines that you
23    removed at Homosote -- let me rephrase the question for
24    you, Mr. Barletta.
25    Based on your 30 years of experience in the

1    maintenance and building trades, is it your opinion that
2    the material that was on the lines at Homosote that you
3    removed contained asbestos?
4    MR. BAKER:  Objection to the form.
5    A.    Yes.
6    Q.    When you worked at A.J. Haines, you also
7    worked for Congoleum.
8    Do you remember telling us about that?
9    A.    Yes.
10    Q.    You testified that one of the things that you
11    did while working for A.J. Haines at Congoleum is that you
12    removed some Riley Stoker boilers.
13    Do you remember that testimony?
14    MR. ERON:  Objection.
15    A.    Yes.
16    Q.    Did those boilers have any insulation
17    material on them?
18    A.    They were completely plastered with
19    asbestos.
20    Q.    Based on your 30 years of experience in the
21    maintenance and building trades, is it your opinion that
22    the material that was plastered around these Riley Stoker
23    boilers contained asbestos?
24    A.    Yes.
25    Q.    Who directed the work of removing the

7 (Pages 22 to 25)

Louis Barletta                        (Barletta v. TXAL)                        October 7, 2002

Page 58

1  have the information which would describe who the
2  corporate officers, directors, and shareholders were at
3  B&L?
4      A.    I couldn't tell you.  I don't know.
5      Q.    Have you made any effort to look for those
6  documents?
7      A.    No.
8      Q.    Have you made any attempt to locate or visit
9  with A.J. Haines?
10      A.    They are not in business.
11      Q.    Have you made any effort to talk to the
12  gentleman named A.J. Haines, Jr.?
13      A.    Oh, no.
14      Q.    How about Mr. Lodwig, have you tried to
15  contact him?
16      A.    We meet on a regular basis, yes.
17      Q.    What is the purpose of you guys meeting,
18  just to be friends?
19      A.    We have been friends for a long time.  We
20  have breakfast.
21      Q.    And you know where he lives, obviously?
22      A.    Yes.
23          MR. BAKER:  I will pass the witness.
24      Thank you very much, Mr. Barletta.
25          (Off the video record)

Page 59

1          (Back on the video record)
2  BY MR. COLEMAN:
3      Q.    Mr. Barletta, my name is Bob Coleman, and I
4  do have some questions for you, sir.  Earlier today, you
5  were talking about a Guardian gasket?
6      A.    Yes.
7      Q.    And you said that was a generic title for
8  what you call a Flexitallic gasket?
9          MR. HENDLER:  Object to the form of
10      the question.
11      A.    Yes.
12      Q.    Were you using the term Flexitallic
13  generically to describe metal clad gaskets?
14      A.    Correct.
15      Q.    Now, sir, the metal clad gaskets, have you
16  ever used them at Stephan?
17      A.    Yes.
18      Q.    And you were there for a period of one year?
19      A.    Yes.
20      Q.    What special application did the metal
21  gaskets have as opposed to the other type of gaskets that
22  you have talked about earlier?
23      A.    Mostly high pressure steam.
24      Q.    Okay.  And did you use them for anything
25  other than the high pressure steam?

Page 60

1      A.    Probably.
2      Q.    Okay.  As you sit here today, do you have
3  any specific recollection of using the metal clad gasket
4  for anything other than high pressure steam?
5      A.    No.
6      Q.    Now, you also talked earlier, and by that I
7  mean your previous depositions, that Flexitallic itself is
8  the manufacturer of these metal clad gaskets or they made
9  some metal clad gaskets.  Is that correct?
10      A.    That's correct.
11      Q.    And they were the main supplier of the metal
12  clad gaskets at Stephan, were they not?
13      A.    Not particularly.
14      Q.    Now, sir, do you remember you had been
15  deposed on several occasions, had you not, sir?
16      A.    Yes.
17      Q.    Have you reviewed any documents or talked to
18  any individuals to help refresh your memory since you last
19  testified?
20          And I believe your last deposition was on
21  October 4, 2001.
22      A.    I read my last deposition.  That is all.
23      Q.    And that would have been the deposition that
24  was rendered on October 4, 2001?
25      A.    Right.

Page 61

1          MR. COLEMAN:  Could we go off the
2      record for one second?
3          (Off the video record)
4          (Pause in proceedings)
5          (Back on the video record)
6      Q.    Mr. Barletta, while we were off the record
7  did you have an opportunity to review several pages of
8  your testimony from October 4, 2001?
9      A.    Yes.
10      Q.    Does that help refresh your recollection
11  concerning your previous testimony, sir?
12      A.    Yes.
13      Q.    Back on October 4, 2001, didn't you testify
14  that Flexitallic was the main metal type gasket that was
15  used?
16      A.    Generally, yes.
17      Q.    Okay.  And does that remain true today?
18      A.    Yes.
19      Q.    What percentage of Flexitallic metal gaskets
20  did you use at Stephan as opposed to the Guardian
21  gasket?
22          MR. HENDLER:  Objection to the form
23      of the question.
24      A.    It is difficult to say, but probably two to
25  one.

16 (Pages 58 to 61)

Louis Barletta      (Barletta v. TXAL)      October 7, 2002

**Page 62**

1   Q.   So, you would use two Flexitallic for every
2 Guardian gasket?
3   A.   Right.
4   Q.   And, sir, previously in 2001 you had
5 testified that you don't have a specific recollection of
6 changing a Guardian metal clad gasket in particular. Is
7 that true?
8   A.   Not any more than I have a specific
9 recollection of changing a Flexitallic.
10   Q.   But the fact remains, as you sit here today,
11 you have no specific recollection of removing a Guardian
12 gasket while you were at Stephan. Is that true?
13   A.   True.
14   Q.   Now, sir, the metal clad gaskets in general
15 on the high pressure steam lines, you would replace them
16 because they were leaking?
17   A.   No.
18   Q.   Why would you have to replace a metal clad
19 gasket then?
20   A.   We had to replace the pipe.
21   Q.   So, it was because of the pipe replacement
22 at that time?
23   A.   Right.
24   Q.   And you had previously testified that they
25 would last a couple of weeks, the pipes, before they had

**Page 63**

1 to be replaced?
2   A.   Citric acid leaked all over and it destroyed
3 the steel pipe.
4   Q.   Would that be true of the high pressure
5 steam pipes too?
6   A.   Yes.
7   Q.   I am a little bit confused. Did citric acid
8 leak onto the high pressure steam pipes?
9   A.   Correct.
10   Q.   And it would erode that type of pipe?
11   A.   Right.
12   Q.   And you would have to replace the entire
13 pipe?
14   A.   No. But every time we cut a piece out we
15 put it back together with flanges.
16   Q.   Because the flanges themselves had not been
17 completely destroyed, would it be fair to say that
18 generally when you would open up the flange the metal
19 gasket would just come out?
20   A.   Generally, yes. Although, there were times
21 when there was no flange in sight.
22   Q.   Okay. So, that the flange would have been
23 dissolved by the citric acid?
24   A.   No.
25   Q.   So, what did you mean that there was no

**Page 64**

1 flange in sight?
2   A.   The pipe would leak in an area many feet
3 away from a flange, so you cut out the bad piece of pipe
4 and reinstalled it with new flanges.
5   Q.   And when you were doing it on those
6 occasions, did the metal clad gasket generally come right
7 out?
8   A.   Generally.
9   Q.   Okay. Now, just so the jury realizes, this
10 metal clad gasket, it is metal on two sides, correct?
11   A.   Correct.
12   Q.   So, that when you would go to replace this,
13 you would take the bolts off the flange, correct?
14   A.   Correct.
15   Q.   And how long would it actually take to
16 unbolt the flange?
17   A.   On average, about 15 minutes.
18   Q.   Okay. How long would the actual process
19 take to undo the flange and to replace it with a new
20 metal gasket?
21   A.   About 45 minutes.
22   Q.   And 15 minutes of this was spent just on
23 bolting the two pipes?
24   A.   Correct.
25   Q.   Now, after you unbolt it, how long does it

**Page 65**

1 take to separate the two pipes? These are heavy-duty
2 pipes, are they not?
3   A.   Correct.
4   Q.   How long would it take to remove them so you
5 could get to the inside of the flange to get the gasket?
6   A.   If the spot were reasonably accessible, five
7 minutes, maybe.
8   Q.   And how long did it actually take to pull
9 out the metal gasket once it was opened?
10   A.   Punch it right out.
11   Q.   How much time are we talking about?
12   A.   Seconds, but then you had to clean the
13 flange faces.
14   Q.   Now, the flange faces, they were actually in
15 contact with the metal, correct?
16   A.   No.
17   Q.   Okay.
18   A.   They were in contact with the material.
19   Q.   Okay. Now, that's where I am a little
20 confused.
21    You said there was metal on both sides of
22 the gasket?
23   A.   Right.
24   Q.   The metal is still there when you open the
25 flange up, correct?

17 (Pages 62 to 65)

Louis Barletta                     (Barletta v. TXAL)                     October 7, 2002

**Page 66**

1     A.    Right.
2     Q.    So, you open it up and then the metal falls
3   down, correct?
4     A.    Right.
5     Q.    So, it is just the metal that was on contact
6   with the side of the flange when it was installed,
7   correct?
8     A.    The material and the gasket, be it asbestos
9   or Teflon, was what made the seal.
10    Q.    Okay. But, when you actually opened the
11  flange, you have a metal flange, you have a metal side of
12  a gasket, you open it up, so it was just metal on metal,
13  correct?
14    A.    You can normally punch that right out.
15    Q.    Okay. But, you had metal on metal, so that
16  when you would open it the residue that was left, that
17  wasn't from the inside of the flange. Was that --
18    A.    The metal ring didn't seal.
19    Q.    Okay. So, you are saying that whatever was
20  inside the flange leaked out?
21    A.    No.
22    Q.    Or whatever was inside the gasket leaked
23  out?
24    A.    No. Once it was destroyed, it was difficult
25  to get it to hold again.

**Page 67**

1     Q.    Okay. But you would replace it with a new
2   one at that time, correct?
3     A.    Right.
4     Q.    And you had metal, opened it up and you
5   pulled the metal off, correct?
6     A.    Right.
7     Q.    And for that you would just use a scraper to
8   pry the metal off the metal flange -- the metal gasket?
9     A.    Sometimes. Sometimes you had to brush it
10  down, sand it down.
11    Q.    Okay. And how long -- strike that.
12          How often in a given week would you have to
13  work on a high pressure steam metal flange?
14    A.    Sometimes two or three times a shift.
15          MR. COLEMAN: Okay.
16          That is all I have, sir.
17          Thank you.
18          (Off the video record)
19          (Recess taken)
20          (Back on the video record)
21  BY MR. CHAVES:
22    Q.    Good afternoon, Mr. Barletta. My name is
23  Douglas Chaves, and I represent one of the defendants in
24  this lawsuit. We have just taken a short break. Are you
25  ready to proceed?

**Page 68**

1     A.    Certainly.
2     Q.    I know you and I have never met before, and
3   I have had a chance to review the depositions that you
4   have previously given in this case, and I want to talk to
5   you a little bit about the packing that you mentioned this
6   morning, okay?
7     A.    Okay.
8     Q.    You indicated that the packing was a
9   Chesterton packing as I recall?
10    A.    Correct.
11    Q.    Let me just ask you from the outset. Have
12  you talked to anyone from Chesterton?
13    A.    Not to my knowledge, no.
14    Q.    Have you ever met or gone and reviewed any
15  publications regarding Chesterton?
16    A.    No.
17    Q.    Have you ever been in the position to
18  purchase products from Chesterton or have you ever
19  purchased any products from Chesterton?
20    A.    Not directly, no.
21    Q.    It is my understanding that the only time
22  that you were exposed to the packing where you mentioned
23  Chesterton was at -- is it pronounced Stephan?
24    A.    Stephan.
25    Q.    Stephan Chemical Plant. Is that true?

**Page 69**

1     A.    Generally, yes.
2     Q.    And with regard to that one-year time period
3   that you were at Stephan Chemical Company working there or
4   working on the plant, it's also my understanding that you
5   were actually working for Marshal Maintenance as I recall?
6     A.    That's correct.
7     Q.    And you were out at the plant on a contract
8   basis?
9     A.    Correct.
10    Q.    And am I correct in assuming that as part of
11  your duties you were the individual charged with changing
12  gaskets and packing and working on the various pumps.
13  That is what I understood from your talking earlier?
14    A.    Yes.
15    Q.    And specifically with regard to ordering the
16  products, for example, you were not in the warehouse where
17  you physically ordered the products, were you?
18    A.    No. The storekeeper did that.
19    Q.    What was the storekeeper's name?
20    A.    I couldn't begin to tell you at this point.
21    Q.    All right. Do you recall what he looked
22  like?
23    A.    As I remember that was far enough back that
24  he would be extremely old if he were still alive.
25    Q.    That was about almost 40 years ago, wasn't

18 (Pages 66 to 69)

Louis Barletta                          (Barletta v. TXAL)                          October 7, 2002

**Page 70**

1  it?
2      A.   Correct.
3      Q.   So, I know I am asking questions of your
4  memory over 40 years ago or approximately 40 years from
5  now.
6           Do you recall whether there was more than
7  one warehouse person or inventory -- what did you call
8  them first of all?
9      A.   They referred to themselves as storekeepers.
10     Q.   Was there more than one storekeeper?
11     A.   Not that I remember, no.
12     Q.   Did the storekeeper generally order all the
13 products for all of the necessary items that were going to
14 be used at the Stephan Chemical plant?
15     A.   Yes.
16     Q.   I am assuming by that that you had parts,
17 bolts, machines, anything from paper clips all the way to
18 the packing that you have told us about?
19     A.   Correct.
20     Q.   Hundreds of thousands of items?
21     A.   Yes.
22     Q.   I am assuming that you would have no way,
23 you, yourself of knowing and identifying the hundreds of
24 thousands of different materials that existed in the
25 warehouse.  Is that true?

**Page 71**

1      A.   That is true.
2      Q.   And specifically with regard to the packing
3  that you talked about earlier, you were not involved in
4  the ordering of that packing, were you?
5      A.   No.
6      Q.   And you were not involved in either the
7  purchase, the sale, or negotiations or any shape, form or
8  fashion for the accumulation or gathering of that
9  product.  Is that true?
10     A.   True.
11     Q.   In reviewing your deposition, it is my
12 understanding whenever you needed packing you would go to
13 the storekeeper and say, give me some packing?
14     A.   If he were there.  Mostly, I had a key to
15 the storeroom at night.
16     Q.   All right.  But in any event, when you did
17 need some packing you would go to the storekeeper and ask
18 for packing, true?
19     A.   Correct.
20          MR. HENDLER:  Objection to the form.
21     Q.   When you asked for packing, packing was
22 given to you -- was it given to you already opened out of
23 the package, or was it given to you in a spool or --
24     A.   It was inside a box.  The spool was inside a
25 box.

**Page 72**

1      Q.   As I recall your testimony, you were
2  actually just given the spool?
3      A.   Most of the time, yes.
4      Q.   And the spool was a cardboard spool, as I
5  recall, and you took that spool and from that spool you
6  would use the packing?
7      A.   Correct.
8      Q.   The packing that you described, if my memory
9  is correct, was Teflon and non-Teflon packing?
10     A.   Yes.  It was Teflon, Teflon coated and
11 asbestos.
12     Q.   The Teflon coating, can you describe that
13 for me?
14     A.   The stuff that was Teflon coated was kind of
15 a gray in color, and it had like a blue tint.
16     Q.   Okay.  And that Teflon was non-asbestos in
17 your opinion?
18          MR. HENDLER:  Objection to the form
19 of the question.
20     A.   I couldn't tell you.
21     Q.   The only reason I am asking you that is you
22 said there was Teflon and then there was asbestos?
23     A.   Yes.  But the asbestos was asbestos.
24     Q.   Okay.  Let me go back to my question, then.
25          Did you know whether or not or can you

**Page 73**

1  testify whether or not the Teflon packing was or was
2  not asbestos one way or the other?
3      A.   You could tell one from the other by the
4  shine.
5          MR. HENDLER:  Listen to his
6  question, Mr. Barletta.
7      Q.   Right now, it is my understanding that you
8  used two types of packing, correct?
9      A.   Correct.
10     Q.   A Teflon packing, and then you described the
11 other one as an asbestos packing, true?
12     A.   Correct.
13     Q.   I want to talk only about the Teflon packing
14 right now.
15     A.   Okay.
16     Q.   Can you tell me of the Teflon packing
17 whether the Teflon had any asbestos in it or not?
18     A.   I couldn't tell you.
19     Q.   All right.  There was nothing, for example,
20 stamped on the Teflon packing that would say
21 asbestos-containing product or non-asbestos containing
22 product?
23     A.   Not that I remember seeing.
24     Q.   Was there anything stamped on the Teflon
25 packing?

19 (Pages 70 to 73)

Louis Barletta                    (Barletta v. TXAL)                    October 7, 2002

Page 74

1  A. No.
2  Q. For example, on the Teflon packing, was
3  there anything that said Chesterton?
4  A. I don't remember.
5  Q. All right. Can you describe the Teflon
6  packing?
7  You said there was a square and a round.
8  Was the Teflon packing the square one or the round one?
9  A. We used both. It was square or rectangular,
10  and then there was the round.
11  Q. Are you saying that the Teflon was both
12  square and round or just square, the other one was round,
13  that is what I am trying to clarify?
14  A. Okay. As I remember them, they were both
15  square, rectangular and round.
16  Q. When you say "both," that means that Teflon
17  was square and rectangular, excuse me, square and round
18  and then the asbestos which you perceive to be the
19  asbestos --
20  A. No. The Teflon was either square or
21  rectangular.
22  Q. Okay.
23  A. Or sometimes it was round.
24  Q. All right. What about the asbestos packing,
25  was that square or round?

Page 75

1  A. Round.
2  Q. Always round?
3  A. Not always, but mostly.
4  Q. It was sometimes square?
5  A. Sometimes square.
6  Q. All right. Am I correct in recalling that
7  the Teflon was used solely on the citric lines, the lines
8  that were in production?
9  A. Right. Mostly on product, correct.
10  Q. And that to your recollection the packing
11  that you considered asbestos was used in the
12  non-production line or the water pump lines, true?
13  A. Yes. That and steam lines, yes.
14  Q. In the water pump lines, can you give me --
15  was that the water that was being pumped from the river
16  as I recall?
17  A. Yes.
18  Q. The packing that you used for the pumps on
19  the waterline coming from the river --
20  A. Yes.
21  Q. -- did that packing also come in spools?
22  A. Yes.
23  Q. Did that packing have any markings or
24  identifications on the packing itself?
25  A. Not that I remember.

Page 76

1  Q. Now, we are specifically talking about what
2  you perceived to be the asbestos packing for the
3  waterline, correct?
4  A. Correct.
5  Q. There was no markings or any indication that
6  would say A.W. Chesterton or any other manufacturer?
7  A. Except the box it came in.
8  Q. We will talk about the box in a moment.
9  But, on the packing itself, there was
10  nothing that would indicate that it was Teflon -- I mean,
11  it was asbestos or non-asbestos or that it was Chesterton
12  or some other product manufacturer, true?
13  A. Not that I remember. That is true.
14  Q. All right. And you are aware, of course,
15  that there are numerous manufacturers of packing, correct?
16  A. Yes.
17  Q. Did you know whether Chesterton was the
18  exclusive product that was purchased by Stephan Chemical
19  with regard to packing?
20  A. No. They also purchased Garlock.
21  Q. Specifically, if the packing was handed to
22  you in a spool, you would have no way of knowing whether
23  it was Chesterton, Garlock or some other company, you
24  would have no way of knowing, true?
25  A. True. If I didn't see the box, yes.

Page 77

1  Q. Now, you saw the box on occasion when you'd
2  have a key and go in there?
3  A. Yes.
4  Q. But as far as your day to day operations --
5  A. I was never there during the day.
6  Q. Excuse me. As far as your night to night
7  operations, I notice that you are being very technical,
8  and I have to be a little bit more careful with you, I
9  guess, as far as your night to night, 11:00 to 8:00
10  a.m. operations, most of the time you just got the packing the
11  way it was handed to you or off the spool, true?
12  A. True.
13  Q. And, again, you don't know if even the
14  ones -- why do you say that it was asbestos?
15  Were they a different color?
16  A. Yes.
17  Q. What color were they?
18  A. Asbestos was dull.
19  Q. Dull?
20  A. Dull. The Teflon had a shine to it.
21  Q. All right.
22  A. The Teflon coated was a different color.
23  The Teflon was white. The Teflon coated was a grayish
24  color with kind of a bluish tint. It was an oddball
25  color.

20 (Pages 74 to 77)

Page 78

1   Q.   What about the asbestos?
2   A.   It was a dull white.
3   Q.   Dull white?
4   A.   Almost a gray off-white.
5   Q.   In handling either the packing did -- was
6   there any feeling or any consistency to one versus the
7   other?
8   A.   Well, yes. The Teflon would flake -- the
9   asbestos would flake.
10   Q.   Would flake. Is this before you inserted?
11   We are talking about you.
12   A.   Before you inserted it, yes.
13   Q.   For example, did one or the other have
14   graphite or not, to your knowledge?
15   A.   Not that I know of.
16   Q.   You don't recall any residue or any kind of
17   graphite on your hands for either packing either the
18   Teflon or the what you perceived to be asbestos?
19   A.   Right. For some reason, Stephan didn't use
20   graphite packing, so I didn't know.
21   Q.   Okay. Did you ever talk to anyone about the
22   fact that Stephan never used graphite packing?
23   A.   No.
24   Q.   Did you ever discuss the rationale with
25   anyone at Stephan as to why they were using one type of

Page 79

1   packing versus the other?
2   A.   When you say "type" --
3   Q.   Product. From a product manufacturer point
4   of view.
5   MR. HENDLER: The brand versus
6   brand?
7   A.   Brand, okay.
8   Q.   Did you ever say, for example, hey, I want
9   you to purchase Chesterton because I like Chesterton or I
10   want you to purchase some other manufacturer because I
11   like that manufacturer better?
12   A.   The salesman, from whatever supply house he
13   bought from, came in and whatever deal he had for whatever
14   brand packing on that day is what was purchased.
15   Q.   Okay. My question to you, sir --
16   MR. CHAVES: I am going to have to
17   object that that was non-responsive.
18   Q.   Did you, yourself, ever request or have any
19   input in the selection of the product?
20   A.   No.
21   Q.   Let's talk about the box because you did say
22   that is basically the only way that you feel that you
23   would be able to identify the packing, is that true?
24   A.   Yes.
25   Q.   You said that from time to time -- from

Page 80

1   night to night --
2   A.   Night to night.
3   Q.   -- that you would go in there and sometimes
4   you would take the packing out of a box?
5   A.   Correct.
6   Q.   I am assuming that most of the time you did
7   not do that, it was handed to you. That is what you told
8   us earlier?
9   A.   No. Most of the time I did that.
10   Q.   Okay. What size was the box?
11   A.   Depended on the size of the packing, but
12   basically the box was about this long (indicating).
13   Q.   Okay. And that is about six inches. The
14   record -- I guess we could attach this (indicating) if we
15   had to. It is --
16   MR. HENDLER: Six to eight inches.
17   Q.   -- six to eight inches long.
18   A.   Maybe another two to three inches high.
19   Q.   Okay?
20   A.   And it had a tuck in flap.
21   Q.   Was there any writing on the box?
22   A.   Well, the writing would either say Garlock
23   or Chesterton.
24   Q.   Do you recall the writing on -- and we are
25   talking about packing?

Page 81

1   A.   Right.
2   Q.   Do you recall whether it said Chesterton, or
3   Garlock or some other name?
4   Do you honestly recall the names?
5   A.   They are the only two names that I ever saw
6   in there, although there could have been others.
7   Q.   Let me ask you this. Were the boxes of any
8   particular color?
9   A.   Not that I remember.
10   Q.   Do you recall whether the Teflon and what
11   you perceived to be the asbestos packing -- they obviously
12   came out of different boxes?
13   A.   Yes.
14   Q.   Were the boxes of a different size than what
15   you have just described or were they the same size?
16   A.   Well, it depended on the size of the
17   packing. The box got smaller or bigger depending on the
18   size of the packing itself.
19   Q.   But, were all the packing still the flip up
20   box type?
21   A.   Flip up tops, right.
22   Q.   Again, do you recall the color of the box?
23   A.   Not particularly.
24   Q.   Do you recall any writing other than
25   Chesterton on there?

Louis Barletta

(Barletta v. TXAL)

October 7, 2002

**Page 82**

1    A.    No.
2    Q.    Do you recall any --
3    A.    Well, yes. There was a paper label on the
4 side of the box with the size of the packing that was in
5 it.
6    Q.    Do you recall the wording or what it said?
7    A.    Not particularly.
8    Q.    Do you recall any symbols, signs, emblems,
9 logos, anything that would indicate to you the
10 identification of the product other than the name that you
11 just recall seeing?
12    A.    No.
13    Q.    Was the name Chesterton only on the top of
14 the box or was it also on the side of the box?
15    A.    Both.
16    Q.    All right. Forgive me. I think I know I
17 have asked you the question already but I can't remember
18 the answer.
19        Did the box have a particular color to it?
20    A.    Not that I remember.
21    Q.    Okay. When you pull a packing out and
22 replaced it, I am assuming that the packing was being
23 replaced due to the fact that -- let me back up.
24        What was the purpose of the packing?
25    A.    To keep the product from leaking out of the

**Page 83**

1 pump.
2    Q.    Would it invariably just by the design of
3 the machines or the design of the system in the whole,
4 would there invariably be leakage?
5    A.    Yes. As long as the cooling water didn't
6 fail, you could just tighten up the packing glands and it
7 would stop.
8    Q.    When you reached a point where it had to be
9 replaced, I am assuming that the basis of your decision
10 was predicated on the fact that the packing had already
11 gotten too wet and lost the efficiency of it?
12    A.    Well, generally, there was no more play left
13 in the gland itself, and if you went to tighten it there
14 was nothing there to tighten. So you had to pop the gland
15 and pull the packing.
16    Q.    And by popping the gland, I am assuming that
17 you are referring to being able to have access to get into
18 the --
19    A.    Correct.
20    Q.    -- packing, is that true?
21    A.    Yes.
22    Q.    And as a result of that packing having
23 deteriorated due to water, or steam, or whatever, I am
24 assuming by the time you got in there it was pretty wet,
25 the packing?

**Page 84**

1    A.    Most of the time, it was fried. It failed
2 because the cooling water failed, and the friction of the
3 shaft turning against the packing just fried it.
4    Q.    Did you have to get in to pull out the
5 packing -- I think you told us you used a corkscrew?
6    A.    Well, it's a packing puller, and it has a
7 T-handle on it, a spring section, and a corkscrew at the
8 end.
9    Q.    Where did the packing tool come from?
10    A.    Just about any industrial plumbing supply
11 house handles them in a variety of sizes.
12    Q.    Is that something that you had within your
13 own tool system?
14    A.    Yes.
15        MR. HENDLER:  Objection.
16        MR. CHAVES:  Sir, I believe that is
17    all the questions I have.
18    Thank you.
19    (Off the video record)
20    (Back on the video record)
21 BY MS. O'DONNELL:
22    Q.    Mr. Barletta, my name is Beatrice O'Donnell,
23 and I am just going to be asking you very few questions.
24 But I tend to talk fast, and I am going to be jumping
25 around and just filling in some questions that I have for

**Page 85**

1 you.
2        So, if at any time you don't understand my
3 question or you just didn't catch it for any reason, you
4 stop me right away, okay, sir?
5    A.    Will do.
6    Q.    Thank you. I appreciate that.
7        You were asked questions this morning about
8 the various companies that you were a owner of and I
9 wanted to ask you about B&L Industrial.
10        You were an owner of that company, sir?
11    A.    Correct.
12    Q.    Would it be fair to say that during the time
13 that you were an owner of B&L that you would direct your
14 employees both in the office and when you were out on job
15 sites. Is that fair?
16    A.    Correct.
17    Q.    Would it be fair to say, sir, when you went
18 out, this is when you were working at B&L, that you would
19 purchase the supplies to be used on the various jobs for
20 B&L?
21    A.    No. Dick purchased just about anything we
22 needed. And in addition to that most companies we worked
23 for supplied their own materials.
24    Q.    When you say "Dick," who are we referring
25 to?

22 (Pages 82 to 85)

Louis Barletta

(Barletta v. TXAL)

October 7, 2002

Page 86

1     A.     Lodwig, my partner.
2     Q.     And you said most companies supplied the
3  materials, how would they know what materials you needed to
4  perform your duties at the jobs?
5     A.     Because most companies maintained fully
6  stocked storerooms.
7     Q.     So, you are telling me what the general
8  habit was of companies that you worked for?
9     A.     Yes.
10    Q.     Now, I wanted to ask you about Stephan --
11 when you were at Stephan Chemical, and I realize that was
12 some 40 years ago, Mr. Barletta, but testified at one
13 of your earlier depositions that you there were two IMO
14 pumps at Stephan Chemical.
15          Do you recall that?
16    A.     Yes.
17    Q.     My question is, you referred to them as
18 centrifuge pumps?
19    A.     No.  They are not really pumps.  They are
20 centrifuges.
21    Q.     Is it your belief that IMO manufactured the
22 centrifuge?
23    A.     To the best of my knowledge, they did.
24    Q.     How do you know that, sir?
25    A.     Because stamped on the side of it, it said

Page 87

1  DeLaval.
2     Q.     Anything other than DeLaval?
3     A.     May have, but not that I remember.
4     Q.     Your testimony -- I am skipping around
5  again, sir.  Your testimony was that you were at the
6  DeLaval plant in the spring of 1975.
7          Do you recall that testimony, sir?
8     A.     Probably.  For what reason?
9     Q.     My question simply is, where was the plant
10 located?
11    A.     In Trenton, right off Mulberry Street.
12    Q.     Did DeLaval have more than one location in
13 Trenton at the time that you were there in '75?
14    A.     They had one other plant in the Trenton
15 area.  It was DeLaval Hulroyd.
16    Q.     I am sorry, DeLaval --
17    A.     Hulroyd, H-U-L-R-O-Y-D, which manufactured
18 very large bronze gears.
19    Q.     And that is the location that you were not
20 at.  Is that correct?
21    A.     We moved some equipment in there, but
22 basically, no.
23    Q.     Now, the materials that you obtained for the
24 use on the DeLaval site, where did you get them?
25    A.     It depends on what job we were doing.

Page 88

1     Q.     You told us about laying 200 feet of transit
2  pipe.  Is that correct?
3     A.     Correct.  That probably came from Lincoln
4  Supply.
5          MS. O'DONNELL:  Just give me a
6  minute, Mr. Barletta.  That may be all I
7  have.
8          Let's go off the record for just a
9  second.
10         (Off the video record)
11         MS. O'DONNELL:  That's all the
12 questions I have.
13         (Back on the video record)
14         MR. HENDLER:  You may proceed on the
15 telephone.
16 BY MS. GOLDSMITH:
17    Q.     Hello.  Mr. Barletta?
18    A.     Yes.
19    Q.     Can you hear me?
20    A.     Yes, I can.
21    Q.     Hi, my name is Mary Goldsmith, and I
22 represent Thermwell products in this lawsuit.  Thermwell
23 has just recently become involved in this lawsuit, and so
24 I was not there at your two previous depositions to ask
25 you any questions, but I have had a chance to look at

Page 89

1  those.
2          I have a few questions for you today if that
3  is all right?
4     A.     Can I interrupt one second?
5          You are representing Thermwell?
6     Q.     Thermwell.
7     A.     Okay, go ahead.
8     Q.     Did you understand that?
9     A.     Yes.
10    Q.     All right.  Mr. Barletta, in your prior
11 depositions, you have testified that you used a product
12 which you call asbestos paper?
13    A.     Correct.
14    Q.     And wrapping of flue pipe in your home.  Do
15 you recall that testimony?
16    A.     Yes.
17    Q.     What year was that when you used that
18 asbestos paper?
19    A.     Nineteen sixty-one.
20    Q.     How do you know that it was 1961, is there
21 some event that occurred that helps you identify that?
22    A.     It was a new house.  That was the year that
23 it was built.
24    Q.     Is that a house that was in a development
25 that you were working in that you purchased for yourself?

23 (Pages 86 to 89)

**EXHIBIT I**

14 of 15 DOCUMENTS

Copyright 2003 LexisNexis, Division of Reed Elsevier Inc.
Mealey's Litigation Report: Asbestos

January 24, 2003

*17-24 Mealey's Litig. Rep. Asb. 3 (2003)*

**SECTION:** Volume 17, Issue #24

**HEADLINE: Congoleum** Seeks To File Prepackaged **Bankruptcy** Plan

**DATELINE:** MERCERVILLE, N.J. -

**BODY:**

**Congoleum** Corp. announced Jan. 13 that it intends to broker a global settlement with asbestos plaintiffs and file for Chapter 11 **bankruptcy** protection this year to manage its growing asbestos liability.

The New Jersey floor-covering maker reported that its strategy for resolving its current and future asbestos liability is to negotiate and secure 75 percent of the asbestos plaintiffs to agree to a proposed reorganization plan. **Congoleum** seeks to file a prepackaged Chapter 11 reorganization plan under 524(g) of the **Bankruptcy** Code and needs approval of 75 percent of the plaintiffs to ratify the plan.

**Congoleum,** which is 55 percent majority owned by American Biltrite Inc., said it expects it will take four to six months to negotiate the plan. It could take another six months to emerge from **bankruptcy,** the company said.

"We believe this step is a very positive move for Congoleum's future," said Roger S. Marcus, Congoleum's chairman. Over the past several years, there have been great improvements in Congoleum's product offering, distribution, and manufacturing capability. Unfortunately, these achievements have been overshadowed by the cloud of asbestos litigation hanging over the company."

524(g) Trust

According to Congoleum, the proposed plan of reorganization would provide for an assignment of applicable Congoleum insurance to a trust that would fund the payment of both pending and future asbestos claims. The plan, through 524(g), would create a channeling injunction, thereby halting any future suits from coming against the company outside of **bankruptcy** court, **Congoleum** said. Congoleum reported that the prepackaged process of filing a reorganization plan will save the company time and money normally associated with filing a traditional plan.

"We believe this settlement strategy of resolving our current and future asbestos liabilities through a prepackaged bankruptcy is in the best interests of the company, the claimants and the company's other constituencies, and for that reason we are optimistic that it will succeed," Marcus said. "However, if a fair resolution cannot be reached, we are fully prepared to utilize our insurance and other resources to return to the strategy of vigorous defense that we have employed in the past."

The company has not yet reported the financial details of any proposed deal. A total of 13,075 cases involving 39,626 individual claimants were filed against Congoleum as of Sept. 30. Congoleum said it had $250 million in assets and $235 million in debts as of that date.

**Congoleum** hired Norman Pernick, Domenic Pacitti and Jeffrey Hampton of Saul Ewing in Wilmington, Del., to represent it when its **bankruptcy** plan is filed.

Mealey's Litigation Report: Asbestos January 24, 2003

Contact Mealey's at 1-800-MEALEYS and see today's headlines at www.lexis.com/legalnews.

**LOAD-DATE:** January 24, 2003

15 of 15 DOCUMENTS

Copyright 2003 LexisNexis, Division of Reed Elsevier Inc.
Mealey's Asbestos Bankruptcy Report

January 2003

*2-6 Mealey's Asb. Bankr. Rep. 4 (2003)*

**SECTION:** Volume 2, Issue #6

**HEADLINE: Congoleum** Seeks To File Prepackaged **Bankruptcy** Plan

**DATELINE:** MERCERVILLE, N.J. -

**BODY:**

    **Congoleum** Corp. announced Jan. 13 that it intends to broker a global settlement with asbestos plaintiffs and file for Chapter 11 **bankruptcy** protection this year to manage its growing asbestos liability.

    The New Jersey floor-covering maker reported that its strategy for resolving its current and future asbestos liability is to negotiate and secure 75 percent of the asbestos plaintiffs to agree to a proposed reorganization plan. **Congoleum** seeks to file a prepackaged Chapter 11 reorganization plan under 524(g) of the **Bankruptcy** Code and needs approval of 75 percent of the plaintiffs to ratify the plan.

    **Congoleum**, which is 55 percent majority owned by American Biltrite Inc., said it expects it will take four to six months to negotiate the plan.  It could take another six months to emerge from **bankruptcy**, the company said.

    "We believe this step is a very positive move for Congoleum's future," said Roger S. Marcus, Congoleum's chairman.  Over the past several years, there have been great improvements in Congoleum's product offering, distribution, and manufacturing capability.  Unfortunately, these achievements have been overshadowed by the cloud of asbestos litigation hanging over the company."

524(g) Trust

    According to Congoleum, the proposed plan of reorganization would provide for an assignment of applicable Congoleum insurance to a trust that would fund the payment of both pending and future asbestos claims.  The plan, through 524(g), would create a channeling injunction, thereby halting any future suits from coming against the company outside of **bankruptcy** court, **Congoleum** said.  Congoleum reported that the prepackaged process of filing a reorganization plan will save the company time and money normally associated with filing a traditional plan.

    "We believe this settlement strategy of resolving our current and future asbestos liabilities through a prepackaged **bankruptcy** is in the best interests of the company, the claimants and the company's other constituencies, and for that reason we are optimistic that it will succeed," Marcus said.  "However, if a fair resolution cannot be reached, we are fully prepared to utilize our insurance and other resources to return to the strategy of vigorous defense that we have employed in the past."

    The company has not yet reported the financial details of any proposed deal.  A total of 13,075 cases involving 39,626 individual claimants were filed against Congoleum as of Sept. 30. Congoleum said it had $250 million in assets and $235 million in debts as of that date.

    **Congoleum** hired Norman Pernick, Domenic Pacitti and Jeffrey Hampton of Saul Ewing in Wilmington, Del., to represent it when its **bankruptcy** plan is filed.

Contact Mealey's at 1-800-MEALEYS and see today's headlines at www.lexis.com/legalnews.

**LOAD-DATE:** January 31, 2003

EXHIBIT J

13 of 15 DOCUMENTS

Copyright 2003 LexisNexis, Division of Reed Elsevier Inc.
Mealey's Litigation Report: Asbestos

March 21, 2003

*18-4 Mealey's Litig. Rep. Asb. 7 (2003)*

**SECTION:** Volume 18, Issue #4

**HEADLINE:** Congoleum Seeks Formal Support From Bondholders To Amend Indenture

**DATELINE:** MERCERVILLE, N.J. -

**BODY:**

**Congoleum** Corp. announced March 17 that it is seeking bondholders' approval of amendments to the indenture governing its financing as part of its strategy to broker a global settlement with asbestos plaintiffs and file for Chapter 11 **bankruptcy** protection this year to manage its growing asbestos liability.

**Congoleum** reported that it is actively seeking bondholders' approval of several amendments to the indenture governing its 8-5/8 percent Senior Notes due 2008. The amendments are intended to give **Congoleum** "greater flexibility" to advance and complete certain transactions during the prepackaged **bankruptcy** process.

Congoleum reported that the amendments require the consent of the bondholders and it plans to formally solicit those eligible to confirm the changes. Holders representing a majority of the aggregate principal amount of outstanding notes have provided Congoleum with written confirmation that they intend to agree to the proposed amendments, the company said.

Agreement Near

"Our negotiations with claimants' counsel have progressed to the point where we believe we should be able to reach agreement," said Roger S. Marcus, chairman of the board. "We have reviewed our goals and strategy with our largest bondholders under confidentiality agreements and they have given us their support and encouragement. This solicitation provides for the formalization of that support and positions us to finalize a settlement agreement with the claimants' counsel once the remaining economic and other aspects of our negotiations are concluded, which I am optimistic could occur shortly."

Congoleum said the solicitation is being made under the terms and conditions set forth in the company's consent solicitation statement. The expiration for the consent solicitation is 3 p.m. EST on March 27, unless extended by Congoleum.

The solicitation announcement by **Congoleum** followed a Jan. 13 statement by **Congoleum** that the company's strategy for resolving its current and future asbestos liability is to negotiate and secure 75 percent of the asbestos plaintiffs to agree to a proposed reorganization plan under 524(g) of the **Bankruptcy** Code. At that time, the company said it expected it would take four to six months to negotiate the plan and could take another six months to emerge from **bankruptcy.**

Congoleum has not yet reported the financial details of any proposed deal. A total of 13,075 cases involving 39,626 individual claimants were filed against Congoleum as of Sept. 30. Congoleum said it had $250 million in assets and $235 million in debts as of that date.

Contact Mealey's at 1-800-MEALEYS and see today's headlines at www.lexis.com/legalnews.

**LOAD-DATE:** March 21, 2003

EXHIBIT K

12 of 15 DOCUMENTS

Copyright 2003 LexisNexis, Division of Reed Elsevier Inc.
Mealey's Asbestos Bankruptcy Report

April 2003

*2-9 Mealey's Asb. Bankr. Rep. 3 (2003)*

**SECTION:** Volume 2, Issue #9

**HEADLINE:** Congoleum Announces Deal In Principle For Prepackaged Plan

**DATELINE:** MERCERVILLE, N.J. -

**BODY:**

**Congoleum** Corp. announced March 31 that it has reached an agreement in principle with more than 75 percent of its creditors to file a prepackaged plan of reorganization in **bankruptcy** court.

**Congoleum** reported that its agreement with attorneys representing 75 percent of plaintiffs with claims against the company will enable it to file a plan under 524(g) of the U.S. **Bankruptcy** Code that will establish a channeling injunction and **bankruptcy** trust and would stay any current or future asbestos suits against the company.

The flooring maker said it recorded a $17.3 million charge in its 2002 results for the resolution of asbestos liabilities through a prepackaged plan of reorganization. The company reported that its estimates of liability without reorganization are considerably greater and that it views bankruptcy as an effective means to resolve its current and future asbestos claims.

"I am very much looking forward to seeing the asbestos cloud removed from the Company," said Congoleum Chairman of the Board Roger S. Marcus. "Additional effort and challenges lie ahead, but we believe we are proceeding successfully with our plan to put the asbestos problem permanently behind us in 2003."

Congoleum announced that the prepackaged reorganization would leave nonasbestos creditors unaffected and would require an affirmative vote by at least 75 percent of its asbestos creditors. The deal is also subject to court approval, Congoleum said.

Prior to the settlement announcement, Congoleum on March 30 reported that Congoleum and the trustee for Congoleum's 8-5/8 % Senior Notes Due 2008 have adopted certain amendments to the indenture governing the notes. The company had previously announced on March 17 that it was actively seeking the bondholder's approval.

As of Sept. 30, 13,075 cases involving 39,626 claimants were filed against Congoleum. Congoleum said it had $250 million in assets and $235 million in debts as of that date. The company reported that its 10-K annual report filing with the U.S. Securities and Exchange Commission would be delayed because of the time required to prepare disclosures related to the proposed settlement.

Contact Mealey's at 1-800-MEALEYS and see today's headlines at www.lexis.com/legalnews.

**LOAD-DATE:** April 09, 2003

EXHIBIT L

Copyright 2003 LexisNexis, Division of Reed Elsevier Inc.
Mealey's Asbestos Bankruptcy Report

June 2003

*2-11 Mealey's Asb. Bankr. Rep. 5 (2003)*

**SECTION:** Volume 2, Issue #11

**HEADLINE:** Congoleum Reports It Has Amended Settlement To Allow For More Time

**DATELINE:** MERCERVILLE, N.J. -

**BODY:**

Congoleum Corp. on June 9 announced that it has amended its prepackaged global settlement plan with asbestos creditors to allow for more time to review information relating to its proposed reorganization plan.

Congoleum reported that it executed certain amendments to the settlement agreement it entered into on April 10 with asbestos creditors representing more than 75 percent of current asbestos personal injury claimants. The company reported that the changes to the agreement provide for additional time for the parties to participate in the settlement.

**Congoleum** said it now expects that it will file for Chapter 11 protection in **bankruptcy** court in September. The company had originally expected that its reorganization plan would be filed this summer.

Several sources told Mealey Publications that much like in the pending Halliburton prepackaged bankruptcy deal (see previous story), the proposed debtor company is seeking to stall its proceedings in light of a possible legislative solution to asbestos litigation in Congress that would reduce the amount companies would have to pay to resolve their asbestos liability.

**10-Q**

"As we indicated in our 10-Q filing last month, we anticipated that we would amend these agreements to address concerns as to whether the deadlines in the original agreements were too ambitious," said Congoleum Chairman of the Board Roger S. Marcus. "We believe the settlement is a fair and good one for both the claimants and the company, and felt that our interests would be best served by assuring that claimants were afforded adequate time to review the agreement, make a considered decision on participation, and submit the necessary paperwork.

"Although this amendment postpones our anticipated date for entering into Chapter 11 until September, we believe it reduces the risk of delays to the confirmation of our plan and the far more important goal of exiting Chapter 11 with the asbestos issue behind us, which we still hope to accomplish by the end of the year."

Congoleum has estimated the total cost to resolve its current asbestos liability to be at least $310 million, the company reported April 15. According to a filing with the Securities and Exchange Commission, as of Sept. 30, 2002, 13,075 cases involving 39,626 claimants were filed against Congoleum. Congoleum said it had $250 million in assets and $235 million in debts as of that date.

Contact Mealey's at 1-800-MEALEYS and see today's headlines at www.lexis.com/legalnews.

**LOAD-DATE:** June 12, 2003

**EXHIBIT M**

Copyright 2003 LexisNexis, Division of Reed Elsevier Inc.
Mealey's Litigation Report: Asbestos

May 21, 2003

*18-8 Mealey's Litig. Rep. Asb. 12 (2003)*

**SECTION:** Volume 18, Issue #8

**HEADLINE:** Congoleum Estimates Current Asbestos Liability To Be $310 Million

**DATELINE:** MERCERVILLE, N.J. -

**BODY:**

Congoleum Corp. has estimated the total cost to resolve its current asbestos liability to be at least $310 million, according to a filing with the Securities and Exchange Commission (SEC).

In its April 15 SEC filing, **Congoleum** reported that the cost of completing its prepackaged Chapter 11 **bankruptcy** deal is "substantially in excess" of the company's total assets and beyond the company's previous estimates for resolution of its liability. The $310 million estimate does not include costs to defend and litigate cases under the proposed settlement, Congoleum said.

According to its filing, Congoleum has existing insurance coverage that the company believes applies to its asbestos claims. Several of its insurers, however, are insolvent and others have disputed their coverage, it said. To that extent, **Congoleum** reported, the resolution of the insurance issues will likely be resolved through a combination of negotiation and litigation in **bankruptcy** court.

The SEC filing by **Congoleum** is the first since the company announced on March 31 that it had reached an agreement in principle with more than 75 percent of its creditors to file a prepackaged plan of reorganization in **bankruptcy** court. Under that agreement, **Congoleum** reported that the settlement will enable it to file a plan under 524(g) of the U.S. **Bankruptcy** Code that will establish a channeling injunction and **bankruptcy** trust and would stay any current or future asbestos suits against the company.

In its statement, the flooring maker said it recorded a $17.3 million charge in its 2002 results for the resolution of asbestos liabilities through a prepackaged plan of reorganization. The company reported that its estimates of liability without reorganization are considerably greater and that it views bankruptcy as an effective means to resolve its current and future asbestos claims.

As of Sept. 30, 13,075 cases involving 39,626 claimants were filed against Congoleum. It said it had $250 million in assets and $235 million in debts as of that date.

Contact Mealey's at 1-800-MEALEYS and see today's headlines at www.lexis.com/legalnews.

**LOAD-DATE:** May 21, 2003

EXHIBIT N

"Be among the first to know" of any new developments in this case.
Automatically **TRACK** the docket shown below.

| Update! | Track! | | Order Documents | E-Mail Docket | Add to Docket Cart |

## Online Docket Sheet

CourtLink obtained this case from the court on 1/27/2004.
If you need an updated version click **Update**. ($10.00 charge applies)

# State Court Case

## New Jersey State Superior Cts, Middlesex County

## L 001540 03

## Barletta Louis VS Congoleum Corp The

This case was retrieved from the court on Tuesday, January 27, 2004 at 02:49:42 PM EST

[Summary][Names][Proceedings][Documents][ServiceList][Notices][Disposition][Judgments]

### Header

**Court:** Middlesex Co Superior Ct
**Judge:** n/a
**Filed On:** 03/06/2003

Back to Top

### Summary

**Venue:** MIDDLESEX
**Court:** LAW CVL
**Case Type:** 601 ASBESTOS
**Case Status:** ACTIVE
**Case Initiation Type:** C COMPLAINT
**Party Count:** 005
**Judgement Entered:** NO
**Case Comments:** NO
**Actual Service Date:** 08/18/2003
**Pending Action:** PG ANSWER
**Pending Action Date:** 09/22/2003
**Undistributed Amount:** 0.00
**Demand Amount:** 0.00
**D F Attorney Pro Se:** NO DF HAS AN ATT
**Denovo Indicator:** NO
**Dispute Resolution:** TRIAL
**Title59 Indicator:** NO
**Jury Request:** 6 JURORS
**Case Impounded:** NO
**Date Entered:** 03/07/2003

Back to Top

## Names

| Att # | Att Name | TP | ST | Subst | PT | Party Name |
|-------|----------|----|----|-------|----|-----------| 
| 9739661910 | Dalessandro Jac & | 21 | R | | PF | Barletta L |
| | Atty Required | | | | DF | Congoleum Cor |
| 9739661910 | Dalessandro Jac & | 21 | R | | PF | Barletta M |
| | Atty Required | | | | DF | Stepan Compan |
| | Atty Required | | | | DF | Does Corp/Ind |

Back to Top

## Proceedings

**No Information is Available for this case**

Back to Top

## Documents

| Date Filed | Num | Document Type | Filing Party | Atty Name | MP | Sta |
|------------|-----|---------------|--------------|-----------|----|----|
| 03/06/2003 | 001 COM | JRY DEMAND | Barletta | Dalessandro | Y | |
| 03/06/2003 | 002 CIS | | Barletta | Dalessandro | Y | |
| 08/29/2003 | 003 SUM | ONS 01 | Congoleum Co | Atty Require | Y | |
| 12/08/2003 | 005 MIS | SUB ATTY | Barletta | Dalessandro | Y | |
| 12/08/2003 | 006 REQ | DEFLT | Barletta | Dalessandro | N | |

Back to Top

## ServiceList

**No Information is Available for this case**

Back to Top

## Notices

Notice Date: 03/07/2003
Notice Type: D2
Proceeding Type: D2
Description: Track Assignment
Attorney Sent: Y
Party Role: Pf
Party Sequence: 003
Party Last Name: Barletta

Back to Top

## Disposition

| Pty No | Party Name | Type | Status | Disp Date |
|--------|------------|------|--------|-----------|
| 001 | Barletta Louis | PF | ACTIVE | |
| 002 | Congoleum Corp The | DF | DEFAULTED | 12/08/2003 |
| 003 | Barletta Mary Jane | PF | ACTIVE | |
| 004 | Stepan Company | DF | ACTIVE | |
| 005 | Does Corp/Ind | DF | DISMISSED | 03/06/2003 |

Back to Top

## Judgments

**No Information is Available for this case**

Back to Top

Copyright © 2004 LexisNexis CourtLink, Inc. All rights reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

View Current Charges       Pricing       Case Results       Docket Cart       my CourtLink       Log Out

**EXHIBIT O**

3 of 15 DOCUMENTS

Copyright 2003 LexisNexis, Division of Reed Elsevier Inc.
Mealey's Litigation Report: Asbestos

November 3, 2003

*18-19 Mealey's Litig. Rep. Asb. 11 (2003)*

**SECTION:** Volume 18, Issue #19

**HEADLINE: Congoleum** Announces It Has Begun Solicitation Of Prepackaged **Bankruptcy** Plan

**DATELINE:** MERCERVILLE, N.J. -

**BODY:**

**Congoleum** Corp. on Oct. 27 announced that it has finalized documents related to its proposed prepackaged Chapter 11 **bankruptcy** deal and has begun solicitation for final approval of its reorganization plan.

(Reorganization plan available 01-031103-010B )

The flooring product maker reported that after negotiations with current asbestos creditors and the representative for future asbestos claimants, it has sent out its disclosure statement and begun solicitation of its reorganization plan. It expects it will file for bankruptcy protection in late December. The deadline for submitting votes for the company's reorganization plan is Dec. 19.

The prepackaged **bankruptcy** filing would include **Congoleum** Corp., **Congoleum** Sales Inc. and **Congoleum** Fiscal Inc.

"Now that our solicitation has commenced, we expect to make our **bankruptcy** filing in late December," said Roger S. Marcus, **Congoleum** chairman of the board. "The amount of time it will then take the court to confirm our plan and permit us to emerge from bankruptcy is harder to predict, but I am hopeful that it could take as little as three to six months."

$2.7 Million Note

Under the terms of the plan, Congoleum said it will contribute certain insurance rights and a note for approximately $2.7 million for the establishment of a trust that will pay all current and future asbestos personal injury claimants. Under the plan, Congoleum's other creditors will be paid in full and its shareholders will maintain their equity holdings. To comply with statutory disclosure requirements, Congoleum's trade creditors, bondholders and minority shareholders will also receive documents describing the plan of reorganization but will not be entitled to vote on the plan because it does not impair their interests, the company reported.

**Congoleum's** reorganization plan outlines the voting procedures for acceptance of its plan, the prepetition process and payment of asbestos claims, how the corporate structure and management will exist under Chapter 11 **bankruptcy** protection, anticipated events that may occur during reorganization and a summary of the establishment of the trust and channeling injunction that will bar future claims against the company. The plan breaks down and estimates the claims by disease classes, discloses the risks to the confirmation of the plan and offers alternatives to the confirmation and consummation of the plan.

"We are extremely pleased to have reached this point in the process of resolving our asbestos liabilities," Marcus said. "There have been a myriad of details and issues to be dealt with in finalizing negotiations and documentation of our reorganization plan and the trust that will provide funds for asbestos claimants. The legal team has continued to fine

tune our approach based, in part, upon the experience of other companies in asbestos bankruptcy proceedings. In addition, a seven person pre-petition asbestos claimants' committee was recently formed to participate in final negotiation, review, and approval of the plan documents. We believe it is very positive to have addressed all these complexities appropriately before soliciting approval of the plan, and that having done so will result in the broadest possible support for the plan and a reduced potential for delays once our proceedings commence."

**Congoleum** Corp. on Jan. 13 announced its intent to broker a global settlement with asbestos plaintiffs and file for Chapter 11 **bankruptcy** protection this year to manage its growing asbestos liability. In the company's April 15 filing with the U.S. Securities and Exchange Commission, Congoleum estimated the total cost to resolve its current asbestos liability to be at least $310 million. That figure does not include costs to defend and litigate cases under the proposed settlement, Congoleum said at the time of the filing.

Congoleum is represented by Norman L. Pernick and Domenic E. Pacitti of Saul Ewing in Wilmington, Del., and Jeffrey C. Hampton of Saul Ewing in Philadelphia.

Contact Mealey's at 1-800-MEALEYS and see today's headlines at www.lexis.com/legalnews.

**LOAD-DATE:** October 29, 2003

4 of 15 DOCUMENTS

Copyright 2003 LexisNexis, Division of Reed Elsevier Inc.
Mealey's Asbestos Bankruptcy Report

November 2003

*3-4 Mealey's Asb. Bankr. Rep. 8 (2003)*

**SECTION:** Volume 3, Issue #4

**HEADLINE: Congoleum** Announces It Has Begun Solicitation Of Prepackaged **Bankruptcy** Plan

**DATELINE:** MERCERVILLE, N.J. -

**BODY:**

   **Congoleum** Corp. on Oct. 27 announced that it has finalized documents related to its proposed prepackaged Chapter 11 **bankruptcy** deal and has begun solicitation for final approval of its reorganization plan.

(Reorganization plan available 01-031103-010B )

   The flooring product maker reported that after negotiations with current asbestos creditors and the representative for future asbestos claimants, it has sent out its disclosure statement and begun solicitation of its reorganization plan. It expects it will file for bankruptcy protection in late December. The deadline for submitting votes for the company's reorganization plan is Dec. 19.

   The prepackaged **bankruptcy** filing would include **Congoleum** Corp., **Congoleum** Sales Inc. and **Congoleum** Fiscal Inc.

   "Now that our solicitation has commenced, we expect to make our **bankruptcy** filing in late December," said Roger S. Marcus, **Congoleum** chairman of the board. "The amount of time it will then take the court to confirm our plan and permit us to emerge from bankruptcy is harder to predict, but I am hopeful that it could take as little as three to six months."

$2.7 Million Note

   Under the terms of the plan, Congoleum said it will contribute certain insurance rights and a note for approximately $2.7 million for the establishment of a trust that will pay all current and future asbestos personal injury claimants. Under the plan, Congoleum's other creditors will be paid in full and its shareholders will maintain their equity holdings. To comply with statutory disclosure requirements, Congoleum's trade creditors, bondholders and minority shareholders will also receive documents describing the plan of reorganization but will not be entitled to vote on the plan because it does not impair their interests, the company reported.

   **Congoleum's** reorganization plan outlines the voting procedures for acceptance of its plan, the prepetition process and payment of asbestos claims, how the corporate structure and management will exist under Chapter 11 **bankruptcy** protection, anticipated events that may occur during reorganization and a summary of the establishment of the trust and channeling injunction that will bar future claims against the company. The plan breaks down and estimates the claims by disease classes, discloses the risks to the confirmation of the plan and offers alternatives to the confirmation and consummation of the plan.

   "We are extremely pleased to have reached this point in the process of resolving our asbestos liabilities," Marcus said. "There have been a myriad of details and issues to be dealt with in finalizing negotiations and documentation of our reorganization plan and the trust that will provide funds for asbestos claimants. The legal team has continued to fine

Mealey's Asbestos Bankruptcy Report November 2003

tune our approach based, in part, upon the experience of other companies in asbestos bankruptcy proceedings. In addition, a seven person pre-petition asbestos claimants' committee was recently formed to participate in final negotiation, review, and approval of the plan documents. We believe it is very positive to have addressed all these complexities appropriately before soliciting approval of the plan, and that having done so will result in the broadest possible support for the plan and a reduced potential for delays once our proceedings commence."

**Congoleum** Corp. on Jan. 13 announced its intent to broker a global settlement with asbestos plaintiffs and file for Chapter 11 **bankruptcy** protection this year to manage its growing asbestos liability. In the company's April 15 filing with the U.S. Securities and Exchange Commission, Congoleum estimated the total cost to resolve its current asbestos liability to be at least $310 million. That figure does not include costs to defend and litigate cases under the proposed settlement, Congoleum said at the time of the filing.

Congoleum is represented by Norman L. Pernick and Domenic E. Pacitti of Saul Ewing in Wilmington, Del., and Jeffrey C. Hampton of Saul Ewing in Philadelphia.

Contact Mealey's at 1-800-MEALEYS and see today's headlines at www.lexis.com/legalnews.

**LOAD-DATE:** November 05, 2003

5 of 15 DOCUMENTS

Copyright 2003 LexisNexis, Division of Reed Elsevier Inc.
Mealey's Litigation Report: Asbestos

September 3, 2003

*18-15 Mealey's Litig. Rep. Asb. 16 (2003)*

**SECTION:** Volume 18, Issue #15

**HEADLINE:** Congoleum Bondholders Approve Indenture Amendments

**DATELINE:** MERCERVILLE, N.J. -

**BODY:**

Congoleum Corp. announced Aug. 7 that it and the trustee for Congoleum's 8-5/8 percent Senior Notes due 2008 have adopted certain amendments to the indenture governing the notes.

**Congoleum** reported that the adopted amendments will allow the company greater "flexibility" to pursue approval of its prepackaged global settlement with creditors under Chapter 11 of the U.S. **Bankruptcy** Code. The adoption of the amendments was agreed upon in a consent solicitation statement distributed by the company on July 30.

The adoption of the amendments follows a recent announcement by **Congoleum** that as part of its proposed prepackaged Chapter 11 **bankruptcy** plan, it is seeking bondholders' approval of certain amendments to the indenture governing its 8-5/8 percent Senior Notes due 2008.

Congoleum on July 31 reported that the amendments to the indenture would permit the company to issue a promissory note to the plan trust as part of Congoleum's anticipated prepackaged reorganization plan as part of its global settlement with creditors. The adoption of the proposed amendments requires the consent of holders representing a majority of the aggregate principal amount of the outstanding notes as of the record date.

Credit Facility

According to the company, the promissory note will be subordinated to Congoleum's 8-5/8 percent Senior Notes due 2008 and its revolving credit facility. The principal amount of the promissory note will initially be $2,738,234.75 and will be subject to increase as of June 30, 2005, and the last trading day of the 90-consecutive-trading-day period commencing on the first anniversary of the effective date of Congoleum's confirmed reorganization plan in an amount equal to the excess, if any, of the amount by which 51 percent of the company's market capitalization as of the principal adjustment date exceeds the principal amount, Congoleum said.

The company reported that it expects the interest on outstanding principal of the plan note to accrue at 9 percent per year and that the interest on the original principal amount will accrue quarterly. Congoleum reported that it anticipates that all principal on the plan note then outstanding, together with any accrued but unpaid interest, will be payable in full on the 10th anniversary of the date of the plan note, conditioned on the right of the plan trust to accelerate all amounts then owed on the plan note following an uncured event of default under the plan note.

"We are continuing with our reorganization plan and appreciate this further affirmation of support from our bondholders," said Roger S. Marcus, Congoleum's chairman of the board.

Congoleum on April 15 estimated the total cost to resolve its current asbestos liability to be at least $310 million. According to a filing with the Securities and Exchange Commission, as of Sept. 30, 2002, 13,075 cases involving

39,626 claimants were filed against Congoleum.  Congoleum said it had $250 million in assets and $235 million in debts as of that date.

Contact Mealey's at 1-800-MEALEYS and see today's headlines at www.lexis.com/legalnews.

**LOAD-DATE:** September 03, 2003

6 of 15 DOCUMENTS

Copyright 2003 LexisNexis, Division of Reed Elsevier Inc.
Mealey's Asbestos Bankruptcy Report

August 2003

*3-1 Mealey's Asb. Bankr. Rep. 4 (2003)*

**SECTION:** Volume 3, Issue #1

**HEADLINE:** Congoleum Bondholders Approve Indenture Amendments

**DATELINE:** MERCERVILLE, N.J. -

**BODY:**

Congoleum Corp. announced Aug. 7 that it and the trustee for Congoleum's 8-5/8 percent Senior Notes due 2008 have adopted certain amendments to the indenture governing the notes.

**Congoleum** reported that the adopted amendments will allow the company greater "flexibility" to pursue approval of its prepackaged global settlement with creditors under Chapter 11 of the U.S. **Bankruptcy** Code. The adoption of the amendments was agreed upon in a consent solicitation statement distributed by the company on July 30.

The adoption of the amendments follows a recent announcement by **Congoleum** that as part of its proposed prepackaged Chapter 11 **bankruptcy** plan, it is seeking bondholders' approval of certain amendments to the indenture governing its 8-5/8 percent Senior Notes due 2008.

Congoleum on July 31 reported that the amendments to the indenture would permit the company to issue a promissory note to the plan trust as part of Congoleum's anticipated prepackaged reorganization plan as part of its global settlement with creditors. The adoption of the proposed amendments requires the consent of holders representing a majority of the aggregate principal amount of the outstanding notes as of the record date.

Credit Facility

According to the company, the promissory note will be subordinated to Congoleum's 8-5/8 percent Senior Notes due 2008 and its revolving credit facility. The principal amount of the promissory note will initially be $2,738,234.75 and will be subject to increase as of June 30, 2005, and the last trading day of the 90-consecutive-trading-day period commencing on the first anniversary of the effective date of Congoleum's confirmed reorganization plan in an amount equal to the excess, if any, of the amount by which 51 percent of the company's market capitalization as of the principal adjustment date exceeds the principal amount, Congoleum said.

The company reported that it expects the interest on outstanding principal of the plan note to accrue at 9 percent per year and that the interest on the original principal amount will accrue quarterly. Congoleum reported that it anticipates that all principal on the plan note then outstanding, together with any accrued but unpaid interest, will be payable in full on the 10th anniversary of the date of the plan note, conditioned on the right of the plan trust to accelerate all amounts then owed on the plan note following an uncured event of default under the plan note.

"We are continuing with our reorganization plan and appreciate this further affirmation of support from our bondholders," said Roger S. Marcus, Congoleum's chairman of the board. Congoleum on April 15 estimated the total cost to resolve its current asbestos liability to

Mealey's Asbestos Bankruptcy Report August 2003

be at least $310 million.  According to a filing with the Securities and Exchange Commission, as of Sept. 30, 2002, 13,075 cases involving 39,626 claimants were filed against Congoleum.  Congoleum said it had $250 million in assets and $235 million in debts as of that date.

Contact Mealey's at 1-800-MEALEYS and see today's headlines at www.lexis.com/legalnews.

**LOAD-DATE:** August 13, 2003

7 of 15 DOCUMENTS

Copyright 2003 LexisNexis, Division of Reed Elsevier Inc.
Mealey's Litigation Report: Asbestos

June 18, 2003

*18-10 Mealey's Litig. Rep. Asb. 16 (2003)*

**SECTION:** Volume 18, Issue #10

**HEADLINE:** Congoleum Reports It Has Amended Settlement To Allow For More Time

**DATELINE:** MERCERVILLE, N.J. -

**BODY:**

Congoleum Corp. on June 9 announced that it has amended its prepackaged global settlement plan with asbestos creditors to allow for more time to review information relating to its proposed reorganization plan.

Congoleum reported that it executed certain amendments to the settlement agreement it entered into on April 10 with asbestos creditors representing more than 75 percent of current asbestos personal injury claimants. The company reported that the changes to the agreement provide for additional time for the parties to participate in the settlement.

**Congoleum** said it now expects that it will file for Chapter 11 protection in **bankruptcy** court in September. The company had originally expected that its reorganization plan would be filed this summer.

Several sources told Mealey Publications that much like in the pending Halliburton prepackaged bankruptcy deal (see previous story), the proposed debtor company is seeking to stall its proceedings in light of a possible legislative solution to asbestos litigation in Congress that would reduce the amount companies would have to pay to resolve their asbestos liability.

10-Q

"As we indicated in our 10-Q filing last month, we anticipated that we would amend these agreements to address concerns as to whether the deadlines in the original agreements were too ambitious," said Congoleum Chairman of the Board Roger S. Marcus. "We believe the settlement is a fair and good one for both the claimants and the company, and felt that our interests would be best served by assuring that claimants were afforded adequate time to review the agreement, make a considered decision on participation, and submit the necessary paperwork.

"Although this amendment postpones our anticipated date for entering into Chapter 11 until September, we believe it reduces the risk of delays to the confirmation of our plan and the far more important goal of exiting Chapter 11 with the asbestos issue behind us, which we still hope to accomplish by the end of the year."

Congoleum has estimated the total cost to resolve its current asbestos liability to be at least $310 million, the company reported April 15. According to a filing with the Securities and Exchange Commission, as of Sept. 30, 2002, 13,075 cases involving 39,626 claimants were filed against Congoleum. Congoleum said it had $250 million in assets and $235 million in debts as of that date.

Contact Mealey's at 1-800-MEALEYS and see today's headlines at www.lexis.com/legalnews.

**LOAD-DATE:** June 18, 2003

8 of 15 DOCUMENTS

Copyright 2003 LexisNexis, Division of Reed Elsevier Inc.
Mealey's Asbestos Bankruptcy Report

June 2003

*2-11 Mealey's Asb. Bankr. Rep. 5 (2003)*

**SECTION:** Volume 2, Issue #11

**HEADLINE:** Congoleum Reports It Has Amended Settlement To Allow For More Time

**DATELINE:** MERCERVILLE, N.J. -

**BODY:**

Congoleum Corp. on June 9 announced that it has amended its prepackaged global settlement plan with asbestos creditors to allow for more time to review information relating to its proposed reorganization plan.

Congoleum reported that it executed certain amendments to the settlement agreement it entered into on April 10 with asbestos creditors representing more than 75 percent of current asbestos personal injury claimants. The company reported that the changes to the agreement provide for additional time for the parties to participate in the settlement.

**Congoleum** said it now expects that it will file for Chapter 11 protection in **bankruptcy** court in September. The company had originally expected that its reorganization plan would be filed this summer.

Several sources told Mealey Publications that much like in the pending Halliburton prepackaged bankruptcy deal (see previous story), the proposed debtor company is seeking to stall its proceedings in light of a possible legislative solution to asbestos litigation in Congress that would reduce the amount companies would have to pay to resolve their asbestos liability.

10-Q

"As we indicated in our 10-Q filing last month, we anticipated that we would amend these agreements to address concerns as to whether the deadlines in the original agreements were too ambitious," said Congoleum Chairman of the Board Roger S. Marcus. "We believe the settlement is a fair and good one for both the claimants and the company, and felt that our interests would be best served by assuring that claimants were afforded adequate time to review the agreement, make a considered decision on participation, and submit the necessary paperwork.

"Although this amendment postpones our anticipated date for entering into Chapter 11 until September, we believe it reduces the risk of delays to the confirmation of our plan and the far more important goal of exiting Chapter 11 with the asbestos issue behind us, which we still hope to accomplish by the end of the year."

Congoleum has estimated the total cost to resolve its current asbestos liability to be at least $310 million, the company reported April 15. According to a filing with the Securities and Exchange Commission, as of Sept. 30, 2002, 13,075 cases involving 39,626 claimants were filed against Congoleum. Congoleum said it had $250 million in assets and $235 million in debts as of that date.

Contact Mealey's at 1-800-MEALEYS and see today's headlines at www.lexis.com/legalnews.

**LOAD-DATE:** June 12, 2003

**EXHIBIT P**

**Agent, JNTADMN, LEAD, Complex**

## U.S. Bankruptcy Court
### District of New Jersey (Trenton)
### Bankruptcy Petition #: 03-51524-KCF

*Assigned to:* Judge Kathryn C. Ferguson                    *Date Filed:* 12/31/2003
Chapter 11
Voluntary
Asset

| | |
|---|---|
| **Congoleum Corporation** | represented  **Domenic Pacitti** |
| 3500 Quakerbridge Road | by  Saul Ewing, LLP |
| Mercerville, NJ 08619-0127 | 222 Delaware Ave., 12th Floor |
| Tax id: 02-0398678 | Wilmington, DE 19801 |
| *Debtor In Possession* | (302) 421-6864 |
| | Fax : (302) 421-5881 |
| | Email: dpacitti@saul.com |

**Scott Gilbert**
Golbert, Heintz & Randolph
1100 New York Avenue
Suite 700
Washington, DC 20005

**United States Trustee**                      represented  **Anthony Sodono, III**
Office of the United States Trustee        by  Office of the United States
One Newark Center                              Trustee
Suite 2100                                         One Newark Center
Newark, NJ 07102                               Suite 2100
(973)645-3014                                    Newark, NJ 07102
*U.S. Trustee*                                    973-645-2120
                                                       Fax : 973-645-5993
                                                       Email:
                                                       Anthony.Sodono@usdoj.gov

**Margaret Lambe Jurow**
United States Dept. of Justice
Office of the United States
Trustee
One Newark Center
Suite 2100
Newark, NJ 07102-5504
(973) 645-3992
Fax : (973) 645-5993
Email:
margaret.jurow@usdoj.gov

US Bankruptcy Court NJ - Live Database - Docket Report                                     Page 2 of 51

**Mitchell Hausman**
United States Department of
Justice
Office of the United States
Trustee
One Newark Center
Suite 2100
Newark, NJ 07102-5504
(973) 645-3660
Fax : (973) 645-5993
Email:
Mitchell.B.Hausman@usdoj.gov

| Filing Date | # | Docket Text |
|---|---|---|
| 12/31/2003 | 1 | Chapter 11 Voluntary Petition Filed by Domenic Pacitti on behalf of Congoleum Corporation. Atty Disclosure Statement due 1/15/2004. Schedule(s) due 1/15/2004. Schedules A-J due 1/15/2004. Statement of Financial Affairs due 1/15/2004. Summary of schedules due 1/15/2004.Social Security Declaration due 1/15/2004. Incomplete Filings due by 1/15/2004. (Attachments: # 1 Exhibit A to Voluntary Petition# 2 List of 20 Largest Creditors # 3 Certification Corporate Resolution) (Pacitti, Domenic) (Entered: 12/31/2003) |
| 12/31/2003 |  | Receipt of filing fee for Voluntary Petition (Chapter 11)(03-51524) [misc,volp11a] ( 839.00). Receipt number 0312B2784789, amount $ 839.00. (U.S. Treasury) (Entered: 12/31/2003) |
| 12/31/2003 | 2 | Motion for Joint Administration for the following cases: 03-51524, 03-51525, 03-51526 Filed by Domenic Pacitti on behalf of Congoleum Corporation. (Attachments: # 1 Proposed Order) (Pacitti, Domenic) (Entered: 12/31/2003) |
| 12/31/2003 | 3 | Application for Designation as a Complex Chapter 11 Case Filed by Domenic Pacitti on behalf of Congoleum Corporation. (Attachments: # 1 Proposed Order) (Pacitti, Domenic) (Entered: 12/31/2003) |
| 12/31/2003 | 4 | Document re: Matrix of Creditors and Interest Holders (related document:1 Voluntary Petition (Chapter 11), Voluntary Petition (Chapter 11) filed by Debtor In Possession Congoleum Corporation) filed by Domenic Pacitti on behalf of Congoleum Corporation. (Pacitti, Domenic) (Entered: 12/31/2003) |
| 12/31/2003 | 32 | Notice of Missing Documents. (related document:1 Voluntary Petition (Chapter 11), Voluntary Petition (Chapter 11) filed by Debtor In Possession Congoleum Corporation). Missing Documents: |

| | | |
|---|---|---|
| | | Schedules A,B,D,E,F,G,H, Summary of Schedules, Statement of Financial Affairs, List of Equity Security Holders and Disclosure of Attorney Compensation Incomplete Filings due by 1/15/2004. (blh, ) (Entered: 01/05/2004) |
| 01/02/2004 | 5 | Notice of Appearance and Request for Service of Notice filed by Louis A. Modugno on behalf of Old Republic Insurance Company. (Modugno, Louis) (Entered: 01/02/2004) |
| 01/02/2004 | 6 | Motion re: for Entry of Order Authorizing Debtors to List Addresses of Counsel for Asbestos Claimants in the Creditor Matrix in Lieu of Creditors' Addresses, and to Approve Claimant Notice Procedure Filed by Domenic Pacitti on behalf of Congoleum Corporation. (Attachments: # 1 Proposed Order) (Pacitti, Domenic) (Entered: 01/02/2004) |
| 01/02/2004 | 7 | Motion to Extend Time re: to File Schedules and Statements of Financial Affairs Filed by Domenic Pacitti on behalf of Congoleum Corporation. (Attachments: # 1 Proposed Order) (Pacitti, Domenic) (Entered: 01/02/2004) |
| 01/02/2004 | 8 | Motion re: for Order (A) Authorizing Maintenance and Use of Existing Bank Accounts and Existing Business Forms (B) Authorizing Maintenance of the Debtors' Existing Cash Management System, and (C) Modifying Guidelines for Investment of Money of the Estate Under U.S.C. Section 345(b) Filed by Domenic Pacitti on behalf of Congoleum Corporation. (Attachments: # 1 Exhibit A-Listing of Bank Accounts# 2 Exhibit B-Congoleum Corporation Cash Management System# 3 Proposed Order) (Pacitti, Domenic) (Entered: 01/02/2004) |
| 01/02/2004 | 9 | Motion re: for Authority to Pay Pre-Petition Sales and Use Taxes Filed by Domenic Pacitti on behalf of Congoleum Corporation. (Attachments: # 1 Exhibit A-Congoleum Corporation Sales & Use Tax States Filed# 2 Proposed Order) (Pacitti, Domenic) (Entered: 01/02/2004) |
| 01/02/2004 | 10 | Motion re: Authorizing Payment of (A) Certain Pre-Petition Obligations Necessary to Obtain Pre-Petition Imported Goods, and (B) Certain Pre-Petition Shipping Charges Filed by Domenic Pacitti on behalf of Congoleum Corporation. (Attachments: # 1 Proposed Order) (Pacitti, Domenic) (Entered: 01/02/2004) |
| 01/02/2004 | 11 | Motion re: for an Order for Authority to Honor and Continue Customer Programs Filed by Domenic Pacitti on behalf of Congoleum Corporation. (Attachments: # 1 Proposed Order) (Pacitti, Domenic) (Entered: 01/02/2004) |
| | | |

US Bankruptcy Court NJ - Live Database - Docket Report

| 01/02/2004 | 12 | Motion re: for Order Authorizing Payment of (A) Accrued Pre-Petition Employee Wages, Benefits and Business Expenses and (B) Payment of Related Taxes Filed by Domenic Pacitti on behalf of Congoleum Corporation. (Attachments: # 1 Proposed Order) (Pacitti, Domenic) (Entered: 01/02/2004) |
|---|---|---|
| 01/02/2004 | 13 | Motion re: for an Order (A) Authorizing the Continuation of Workers' Compensation Insurance Programs and Payment of Certain Pre-Petition Workers' Compensation Claims, Premiums and Related Expenses; and (B) Granting Limited Relief from the Automatic Stay to Allow Workers' Compensation Claims to be Liquidated Filed by Domenic Pacitti on behalf of Congoleum Corporation. (Attachments: # 1 Proposed Order) (Pacitti, Domenic) (Entered: 01/02/2004) |
| 01/02/2004 | 14 | Motion re: for Order Authorizing Payment of Pre-Petition Vendor Claims in the Ordinary Course of Business Filed by Domenic Pacitti on behalf of Congoleum Corporation. (Attachments: # 1 Proposed Order) (Pacitti, Domenic) (Entered: 01/02/2004) |
| 01/02/2004 | 15 | Document re: Certification Concerning List of Creditors (related document:4 Document, filed by Debtor In Possession Congoleum Corporation) filed by Domenic Pacitti on behalf of Congoleum Corporation. (Pacitti, Domenic) (Entered: 01/02/2004) |
| 01/02/2004 | 16 | Motion re: for an Order (A) Prohibiting Utilities from Altering, Refusing, or Discontinuing Services on Account of Pre-Petition Invoices, and (B) Establishing Procedures for Determining Request for Additional Adequate Assurance Filed by Domenic Pacitti on behalf of Congoleum Corporation. (Attachments: # 1 Exhibit A (to Motion)# 2 Proposed Order # 3 Exhibit A (to Order)) (Pacitti, Domenic) (Entered: 01/02/2004) |
| 01/02/2004 | 17 | Motion for an Order Authorizing Debtor to Retain a Claims and Noticing Agent Filed by Domenic Pacitti on behalf of Congoleum Corporation. (Attachments: # 1 Exhibit A-The Altman Group Letter Agreement# 2 Proposed Order) (Pacitti, Domenic) (Entered: 01/02/2004) |
| 01/02/2004 | 18 | Motion re: for Interim and Final Orders Pursuant to Sections 363(c) and 364(c) of the Bankruptcy Code and Bankruptcy Rule 4001 (1) Authorizing the Use of Cash Collateral, (2) Authorizing Debtors to Obtain Interim Post-Petition Financing, (3) Granting Senior Liens and Priority Administrative Expense Status, (4) Modifying the Automatic Stay, (5) Authorizing Debtors to Enter Into Agreements with Congress Financial Corporation, and (6) Prescribing Form and Manner of Notice and Time for Final Hearing Under Bankruptcy Rule 4001(c) Filed by Domenic Pacitti on behalf of Congoleum Corporation. (Attachments: # 1 Proposed Order) (Pacitti, Domenic) |

| | | |
|---|---|---|
| | | (Entered: 01/02/2004) |
| 01/02/2004 | 19 | Notice of Appearance and Request for Service of Notice filed by Edgar M. Whiting on behalf of St. Paul Fire & Marine Insurance Co.. (Whiting, Edgar) (Entered: 01/02/2004) |
| 01/02/2004 | 20 | Exhibit filed by Domenic Pacitti on behalf of Congoleum Corporation. (Attachments: # 1 Exhibit -Part 2 of 9# 2 Exhibit -Part 3 of 9# 3 Exhibit -Part 4 of 9) (Pacitti, Domenic) Modified on 1/5/2004 (seg, ). Related document 18 Motion re: for Interim and Final Orders Pursuant to Sections 363(c) and 364(c) of the Bankruptcy Code and Bankruptcy Rule 4001 (1) Authorizing the Use of Cash Collateral, (2) Authorizing Debtors to Obtain Interim Post-Petition Financing, (3) Granting Senior Liens and Priority Administrative Expense Status, (4) Modifying the Automatic Stay, (5) Authorizing Debtors to Enter Into Agreements with Congress Financial Corporation, and (6) Prescribing Form and Manner of Notice and Time for Final Hearing Under Bankruptcy Rule 4001(c) Filed by Domenic Pacitti on behalf of Congoleum Corporation) (Pacitti, Domenic)(MODIFIED TO CREATE LINAKAGE) (Entered: 01/02/2004) |
| 01/02/2004 | 21 | Exhibit filed by Domenic Pacitti on behalf of Congoleum Corporation. (Attachments: # 1 Exhibit -Part 6 of 9# 2 Exhibit -Part 7 of 9# 3 Exhibit -Part 8 of 9# 4 Exhibit -Part 9 of 9) (Pacitti, Domenic) Modified on 1/5/2004 (seg, ). (MODIFIED TO CREATE LINKAGE) Related document 18 Motion re: for Interim and Final Orders Pursuant to Sections 363(c) and 364(c) of the Bankruptcy Code and Bankruptcy Rule 4001 (1) Authorizing the Use of Cash Collateral, (2) Authorizing Debtors to Obtain Interim Post-Petition Financing, (3) Granting Senior Liens and Priority Administrative Expense Status, (4) Modifying the Automatic Stay, (5) Authorizing Debtors to Enter Into Agreements with Congress Financial Corporation, and (6) Prescribing Form and Manner of Notice and Time for Final Hearing Under Bankruptcy Rule 4001(c) Filed by Domenic Pacitti on behalf of Congoleum Corporation (Entered: 01/02/2004) |
| 01/02/2004 | 22 | Document re: Declaration of Vincent J. Sullivan in Support of First Day Motions filed by Domenic Pacitti on behalf of Congoleum Corporation. (Pacitti, Domenic) (Entered: 01/02/2004) |
| 01/02/2004 | 23 | Notice of Appearance and Request for Service of Notice filed by Michael D. Sirota on behalf of Certain London Market Insurance Companies, Certain Underwriters of Lloyds, London. (Sirota, Michael) (Entered: 01/02/2004) |
| 01/02/2004 | 24 | Application for Expedited Consideration of First Day Matters (related document:17 Motion to Retain Claims and Noticing Agent filed by Debtor In Possession Congoleum Corporation, 18 Motion (Generic), |

| | | |
|---|---|---|
| | | Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation, 6 Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation, 7 Motion to Extend Time filed by Debtor In Possession Congoleum Corporation, 8 Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation, 9 Motion (Generic) filed by Debtor In Possession Congoleum Corporation, 10 Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation, 11 Motion (Generic) filed by Debtor In Possession Congoleum Corporation, 12 Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation, 13 Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation, 14 Motion (Generic) filed by Debtor In Possession Congoleum Corporation, 2 Motion for Joint Administration filed by Debtor In Possession Congoleum Corporation, 16 Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation) Filed by Domenic Pacitti on behalf of Congoleum Corporation. (Attachments: # 1 Proposed Order) (Pacitti, Domenic) (Entered: 01/02/2004) |
| 01/02/2004 | 25 | Notice of Appearance and Request for Service of Notice filed by Carol A. Slocum on behalf of Twin City Fire Insurance Company, First State Insurance Co.. (Slocum, Carol) (Entered: 01/02/2004) |
| 01/05/2004 | 26 | Notice of Appearance and Request for Service of Notice filed by Arthur Abramowitz on behalf of Federal Insurance Company. (Attachments: # 1 Certificate of Service) (Abramowitz, Arthur) (Entered: 01/05/2004) |
| 01/05/2004 | 27 | Notice of Appearance and Request for Service of Notice filed by Deirdre Woulfe Pacheco on behalf of Numerous Individuals Holding Asbestos-Related Personal Injury/Wrongful Death Claims. (Pacheco, Deirdre) (Entered: 01/05/2004) |
| 01/05/2004 | 28 | Certificate of Service (related document:27 Notice of Appearance and Request filed by Creditor Numerous Individuals Holding Asbestos-Related Personal Injury/Wrongful Death Claims) filed by Deirdre Woulfe Pacheco on behalf of Numerous Individuals Holding Asbestos-Related Personal Injury/Wrongful Death Claims. (Pacheco, Deirdre) (Entered: 01/05/2004) |
| 01/05/2004 | 29 | Order Granting Application for Expediting Consideration of First Day Matters (Related Doc # 24) The following parties were served: US Trustee, Attorney for Debtor. Signed on 1/5/2004. (srm, ) (Entered: 01/05/2004) |
| 01/05/2004 | | Hearing Scheduled. (related document:7 Motion to Extend Time filed by Debtor In Possession Congoleum Corporation, 8 Motion |

| | | |
|---|---|---|
| | | (Authorizing Maintenance And Use Of Existing Bank Accounts), filed by Debtor In Possession Congoleum Corporation, 9 Motion (For Authority To Pay Pre-Petition Sales) filed by Debtor In Possession Congoleum Corporation, 17 Motion to Retain Claims and Noticing Agent filed by Debtor In Possession Congoleum Corporation, 10 Motion (Authorizing Payment Of Certain Pre-Petition Obligations), filed by Debtor In Possession Congoleum Corporation, 18 Motion (Authorizing Debtors To Obtain Post-Petition Financing), filed by Debtor In Possession Congoleum Corporation, 11 Motion (For An Order For Authority To Honor And Continue Customer Programs) filed by Debtor In Possession Congoleum Corporation, 12 Motion (Authorizing Payment Of Accrued Pre-Petition Employee Wages), filed by Debtor In Possession Congoleum Corporation, 13 Motion (Authorizing The Continuation Of Workers' Compensation), filed by Debtor In Possession Congoleum Corporation, 14 Motion (For Order Authorizing Payment Of Pre-Petition Vendor Claims) filed by Debtor In Possession Congoleum Corporation, 6 Motion (Authorizing Debtors To List Addresses Of Counsel For Asbestos Claimants), filed by Debtor In Possession Congoleum Corporation, 2 Motion for Joint Administration filed by Debtor In Possession Congoleum Corporation, 16 Motion (Prohibiting Utilities From Altering, Refusing, Or Discontinuing Services), filed by Debtor In Possession Congoleum Corporation) Hearing scheduled for 1/6/2004 at 02:00 PM at KCF - Courtroom 2, Trenton. (srm, ) (MOTION NUMBER 11 WILL NOT BE HEARD ON 1/6/04, IT WILL BE HEARD ON 1/20/04) Modified on 1/5/2004 (seg, ). (Entered: 01/05/2004) |
| 01/05/2004 | | Hearing Scheduled. (related document:11 Motion for an Order for Authority to Honor and Continue Customer Programs filed by Debtor In Possession Congoleum Corporation). Hearing scheduled for 1/20/2004 at 10:00 AM at KCF - Courtroom 2, Trenton. (seg, ) (Entered: 01/05/2004) |
| 01/05/2004 | 30 | Notice of Appearance and Request for Service of Notice filed by Linda R. Brower on behalf of Marsh USA, Inc.. (Brower, Linda) (Entered: 01/05/2004) |
| 01/05/2004 | 31 | Document re: Notice of Hearing on First Day Motions (related document:29 Order Expediting Consideration of First Day Matters) filed by Domenic Pacitti on behalf of Congoleum Corporation. (Attachments: # 1 Exhibit A-Order Regarding Application for Expedited Consideration of First Day Matters) (Pacitti, Domenic) (Entered: 01/05/2004) |
| 01/05/2004 | 33 | Application for Attorney Mary K. Warren, Esq., R. Paul Wickes, Esq., Brenda D. DiLuigi, Esq. and Ivan Morales, Esq. to Appear Pro Hac Vice Filed by Warren A. Usatine on behalf of Certain London Market Insurance Companies, Certain Underwriters of Lloyds, London. Objection deadline is 1/12/2004. (Attachments: # 1 Proposed |

| | | |
|---|---|---|
| | | Order for Admission Pro Hac Vice Pursuant to Local Rule of Bankruptcy Procedure 2090-1 and Local Rule of Civil Procedure 101.1) (Usatine, Warren) Modified on 1/6/2004 (jey, ). ELECTRONIC SIGNATURE DOES NOT MATCH SIGNATURE ON DOCUMENT. TO BE CORRECTED AND REFILE SIGNATURE PAGE ONLY AS A SUPPORT TO THIS APPLICATION. (Entered: 01/05/2004) |
| 01/05/2004 | 41 | Motion re: Place Certain Insurers' Brief Under Seal Filed by John S. Favate. (Attachments: # 1 Attachment A to Motion# 2 Brief Cover page# 3 Proposed Order) (fed, ) (Entered: 01/06/2004) |
| 01/05/2004 | 45 | Application to Shorten Time (related document:41 Motion re: Place Certain Insurers' Brief Under Seal) Filed by John S. Favate on behalf of Certain Insurers ; Stonewall Ins Co.,OneBeacon American Ins Co and Seaton Insurance Company. (fed, ) (Entered: 01/06/2004) |
| 01/05/2004 | 46 | Notice of Appearance and Request for Service of Notice filed by John S. Favate on behalf of Seaton Insurance Company, OneBeacon America Insurance Company, Stonewall Insurance Co.. (Attachments: # 1 Certificate of Service) (gan, ) (Entered: 01/06/2004) |
| 01/05/2004 | 48 | Order Granting Application to Shorten Time (related document:41 Motion re: Place Certain Insurers' Brief Under Seal). The following parties were served: Attorney for Debtor and UST. Signed on 1/5/2004. Hearing scheduled for 1/6/2004 at 02:00 PM at KCF - Courtroom 2, Trenton. (fed, ) (Entered: 01/06/2004) |
| 01/05/2004 | 52 | Response to (related document:22 Document filed by Debtor In Possession Congoleum Corporation) filed by John S. Favate on behalf of Certain Insurers ; Stonewall Ins Co.,OneBeacon American Ins Co and Seaton Insurance Company. (fed, ) (Entered: 01/06/2004) |
| 01/05/2004 | 53 | Certification of Non Compliance (related document:45 Application to Shorten Time filed by Interested Party Certain Insurers ; Stonewall Ins Co.,OneBeacon American Ins Co and Seaton Insurance Company, 41 Motion (Generic)) filed by John S. Favate on behalf of Certain Insurers ; Stonewall Ins Co.,OneBeacon American Ins Co and Seaton Insurance Company. (fed, ) (Entered: 01/06/2004) |
| 01/06/2004 | 34 | Notice of Appearance and Request for Service of Notice filed by Scott J. Freedman on behalf of Westport Insurance Company. (Freedman, Scott) (Entered: 01/06/2004) |
| 01/06/2004 | | Correction Notice in Electronic Filing (related document:33 Application to Appear Pro Hac Vice, , filed by Interested Party Certain Underwriters of Lloyds, London, Interested Party Certain |

US Bankruptcy Court NJ - Live Database - Docket Report

| | | |
|---|---|---|
| | | London Market Insurance Companies). Type of Error: ELECTRONIC SIGNATURE DOES NOT MATCH SIGNATURE ON DOCUMENT. PLEASE CORRECT AND REFILE SIGNATURE PAGE ONLY AS SUPPORT TO THE APPLICATION WITH THE COURT, filed by WARREN USATINE. (jey, ) (Entered: 01/06/2004) |
| 01/06/2004 | 35 | Application for Attorney M. O. Sigal, Jr. to Appear Pro Hac Vice Filed by Stephen V. Falanga on behalf of Travelers Casualty and Surety Company, formerly known as The Aetna Casualty and Surety Company. Objection deadline is 1/13/2004. (Attachments: # 1 Certification of M.O. Sigal, Jr., Esq.# 2 Certification of Stephen V. Falanga, Esq.# 3 Proposed Order) (Falanga, Stephen) (Entered: 01/06/2004) |
| 01/06/2004 | 36 | Application for Attorney Lynn K. Neuner to Appear Pro Hac Vice Filed by Stephen V. Falanga on behalf of Travelers Casualty and Surety Company, formerly known as The Aetna Casualty and Surety Company. Objection deadline is 1/13/2004. (Attachments: # (1) Certification of Lynn K. Neuner, Esq.# 2 Certification of Stephen V. Falanga, Esq.# 3 Proposed Order) (Falanga, Stephen) (Entered: 01/06/2004) |
| 01/06/2004 | 37 | Application for Attorney Jeremy W. Ryan to Appear Pro Hac Vice Filed by Domenic Pacitti on behalf of Congoleum Corporation. Hearing scheduled for 1/20/2004 at 10:00 AM at KCF - Courtroom 2, Trenton.Objection deadline is 1/13/2004. (Attachments: # 1 Proposed Order) (Pacitti, Domenic) (Entered: 01/06/2004) |
| 01/06/2004 | 38 | Application for Attorney Kathleen P. Makowski to Appear Pro Hac Vice Filed by Domenic Pacitti on behalf of Congoleum Corporation. Hearing scheduled for 1/20/2004 at 10:00 AM at KCF - Courtroom 2, Trenton.Objection deadline is 1/13/2004. (Attachments: # 1 Proposed Order) (Pacitti, Domenic) (Entered: 01/06/2004) |
| 01/06/2004 | 39 | Application for Attorney Nathaniel Metz to Appear Pro Hac Vice Filed by Domenic Pacitti on behalf of Congoleum Corporation. Hearing scheduled for 1/20/2004 at 10:00 AM at KCF - Courtroom 2, Trenton.Objection deadline is 1/13/2004. (Attachments: # 1 Proposed Order) (Pacitti, Domenic) (Entered: 01/06/2004) |
| 01/06/2004 | 40 | Application for Attorney Craig Litherland to Appear Pro Hac Vice Filed by Domenic Pacitti on behalf of Congoleum Corporation. Hearing scheduled for 1/20/2004 at 10:00 AM at KCF - Courtroom 2, Trenton.Objection deadline is 1/13/2004. (Attachments: # (1) Proposed Order) (Pacitti, Domenic) (Entered: 01/06/2004) |
| 01/06/2004 | 42 | Application for Attorney Bette Orr to Appear Pro Hac Vice Filed by |

| | | Domenic Pacitti on behalf of Congoleum Corporation. Hearing scheduled for 1/20/2004 at 10:00 AM at KCF - Courtroom 2, Trenton.Objection deadline is 1/13/2004. (Attachments: # 1 Proposed Order) (Pacitti, Domenic) (Entered: 01/06/2004) |
|---|---|---|
| 01/06/2004 | 43 | Notice of Appearance and Request for Service of Notice filed by Stephen V. Falanga on behalf of Travelers Casualty and Surety Company, formerly known as The Aetna Casualty and Surety Company. (Falanga, Stephen) (Entered: 01/06/2004) |
| 01/06/2004 | 44 | Application for Attorney Scott Gilbert to Appear Pro Hac Vice Filed by Domenic Pacitti on behalf of Congoleum Corporation. Hearing scheduled for 1/20/2004 at 10:00 AM at KCF - Courtroom 2, Trenton.Objection deadline is 1/13/2004. (Attachments: # 1 Proposed Order) (Pacitti, Domenic) (Entered: 01/06/2004) |
| 01/06/2004 | 47 | Application for Attorney Duane D. Morse, Philip D. Anker, Nancy L. Manzer, Lara A. Englund, Karen L. Cohen and S. Todd Brown to Appear Pro Hac Vice Filed by Carol A. Slocum on behalf of First State Insurance Co., Twin City Fire Insurance Company. Objection deadline is 1/13/2004. (Attachments: # 1 Proposed Order) (Slocum, Carol) (Entered: 01/06/2004) |
| 01/06/2004 | 49 | Application for Attorney James P. Ruggeri, Edward B. Parks, II and Kathleen P. Tanner to Appear Pro Hac Vice Filed by Carol A. Slocum on behalf of First State Insurance Co., Twin City Fire Insurance Company. Objection deadline is 1/13/2004. (Attachments: # 1 Proposed Order) (Slocum, Carol) (Entered: 01/06/2004) |
| 01/06/2004 | 50 | Objection to [document 198] THE RETENTION OF SAUL EWING LLP AS DEBTORS' COUNSEL Filed by Amy E. Vulpio on behalf of ACE Property and Casualty Insurance Company, ACE American Insurance Company, Century Indemnity Company. (Vulpio, Amy) Modified on 1/9/2004 (jey, ). (MODIFIED TO CREATE LINKAGE) Modified on 1/26/2004 (seg, ). (Entered: 01/06/2004) |
| 01/06/2004 | 51 | Document re: Certification of Joy J. Bernstein in Support of Objection of Century Indemnity Compnay, ACE American Insurance Company and ACE Property and Casualty Insurance Company to the Retention of Saul Ewing as Debtors' Counsel (related document:50 Objection filed by Creditor Century Indemnity Company, Creditor ACE American Insurance Company, Creditor ACE Property and Casualty Insurance Company) filed by Amy E. Vulpio on behalf of ACE American Insurance Company, ACE Property and Casualty Insurance Company, Century Indemnity Company. (Vulpio, Amy) (Entered: 01/06/2004) |
| 01/06/2004 | 54 | Amended Document re: Amended Notice of Appearance and Request |

| | | |
|---|---|---|
| | | for Service of Papers filed by Carol A. Slocum on behalf of First State Insurance Co., Twin City Fire Insurance Company. (Slocum, Carol) Modified on 1/9/2004 (jey, ). (Related Document: 25 Notice of Appearance) MODIFIED TO CREATE LINK. (Entered: 01/06/2004) |
| 01/06/2004 | 55 | Application for Attorney Tancred Schiavoni and Robert Winter to Appear Pro Hac Vice Filed by Amy E. Vulpio on behalf of Century American Insurance Company, ACE Property and Casualty Insurance Company, Century Indemnity Company. Objection deadline is 1/13/2004. (Attachments: # 1 Certification # 2 Certification # 3 Proposed Order) (Vulpio, Amy) (Entered: 01/06/2004) |
| 01/06/2004 | 56 | Notice of Appearance and Request for Service of Notice filed by Amy E. Vulpio on behalf of ACE American Insurance Company, ACE Property and Casualty Insurance Company, Century Indemnity Company. (Vulpio, Amy) (Entered: 01/06/2004) |
| 01/06/2004 | 57 | Revised Signature Page in support of (related document:33 Application to Appear Pro Hac Vice,, filed by Interested Party Certain Underwriters of Lloyds, London, Interested Party Certain London Market Insurance Companies) filed by Warren A. Usatine on behalf of Certain London Market Insurance Companies, Certain Underwriters of Lloyds, London. (Usatine, Warren) (Entered: 01/06/2004) |
| 01/06/2004 | 58 | Motion re: Motion of Certain Insurers for Declaration that Section 362 (a) of the Bankruptcy Code is not Applicable, or, in the Alternative, for Relief from the Automatic Stay Filed by Amy E. Vulpio on behalf of ACE Property and Casualty Insurance Company, Century American Insurance Company, Century Indemnity Company. (Attachments: # 1 Certification # 2 Certification Ex Vol. 1a# 3 Certification Ex A Vol. 1b# 4 Certification Ex A Vol. 1c# 5 Certification Ex A vol. 2a# 6 Certification Ex A Vol. 2b# 7 Certification Ex A Vol 2c# 8 Brief # 9 Proposed Order) (Vulpio, Amy) (Entered: 01/06/2004) |
| 01/06/2004 | 59 | Certificate of Service. filed by Carol A. Slocum on behalf of First State Insurance Co., Twin City Fire Insurance Company. (Slocum, Carol) (Entered: 01/06/2004) |
| 01/06/2004 | | Hearing Scheduled. (related document:58 Motion of Certain Insurers for Declaration that Section 362 (a) of the Bankruptcy Code is not Applicable, or, in the Alternative, for Relief from the Automatic Stay filed by Creditor Century Indemnity Company, Creditor ACE Property and Casualty Insurance Company, Creditor Century American Insurance Company) Hearing scheduled for 1/26/2004 at 10:00 AM at KCF - Courtroom 2, Trenton. (fed, ) (Entered: 01/06/2004) |

| 01/06/2004 | 60 | Notice of Appearance and Request for Service of Notice filed by Wendy L Mager on behalf of Mutual Marine Office, Inc, Co Employers Mutual Casualty, American Reinsurance Co. (wdr, ) (Entered: 01/06/2004) |
|---|---|---|
| 01/06/2004 | 61 | Certification of Non Compliance (related document:60 Notice of Appearance and Request filed by Interested Party Mutual Marine Office, Inc, Interested Party Co Employers Mutual Casualty, Interested Party American Reinsurance Co) filed by Wendy L Mager on behalf of Wendy L Mager. (wdr, ) (Entered: 01/06/2004) |
| 01/06/2004 | 62 | Notice of Appearance and Request for Service of Notice filed by McDermott, Will & Emery, Ross, Dixon & Bell, L.L.P, McElroy, Deutsch & Mulvaney on behalf of Continental Insurance Co, Continental Casualty Co.. (wdr, ) (Entered: 01/06/2004) |
| 01/06/2004 | 63 | Certification of Non Compliance (related document:62 Notice of Appearance and Request filed by Interested Party Continental Insurance Co, Interested Party Continental Casualty Co.) filed by Henry M Price on behalf of Henry M Price. (wdr, ) (Entered: 01/06/2004) |
| 01/06/2004 | 64 | Notice of Appearance and Request for Service of Notice filed by Skadden, Arps, SAlate. Meagher & Flom LLP on behalf of American Biltrite Inc. (wdr, ) (Entered: 01/06/2004) |
| 01/06/2004 | 65 | Certification of Non Compliance (related document:64 Notice of Appearance and Request filed by Interested Party American Biltrite Inc) filed by Cynthia V Fitzgerald on behalf of Cynthia V Fitzgerald. (wdr, ) (Entered: 01/06/2004) |
| 01/06/2004 | | Minute of Hearing Held, OUTCOME: Granted (Order to be Submitted).(related document:6 Motion re: for Entry of Order Authorizing Debtors to List Addresses of Counsel for Asbestos Claimants in the Creditor Matrix in Lieu of Creditors' Addresses, and to Approve Claimant Notice Procedure filed by Debtor In Possession Congoleum Corporation) (ckk) (Entered: 01/07/2004) |
| 01/06/2004 | | Minute of Hearing Held, OUTCOME: Granted (30 days).(related document:7 Motion to Extend Time re: to File Schedules and Statements of Financial Affairs filed by Debtor In Possession Congoleum Corporation) (ckk) (Entered: 01/07/2004) |
| 01/06/2004 | | Minute of Hearing Held, OUTCOME: Granted.(related document:8 Motion re: for Order (A) Authorizing Maintenance and Use of Existing Bank Accounts and Existing Business Forms (B) Authorizing Maintenance of the Debtors' Existing Cash Management System, and (C) Modifying Guidelines for Investment of Money of |

| | | |
|---|---|---|
| | | the Estate Under U.S.C. Section 345(b) filed by Debtor In Possession Congoleum Corporation) (ckk) (Entered: 01/07/2004) |
| 01/06/2004 | | Minute of Hearing Held, OUTCOME: Granted.(related document:9 Motion re: for Authority to Pay Pre-Petition Sales and Use Taxes filed by Debtor In Possession Congoleum Corporation) (ckk) (Entered: 01/07/2004) |
| 01/06/2004 | | Minute of Hearing Held, OUTCOME: Granted.(related document:10 Motion re: Authorizing Payment of (A) Certain Pre-Petition Obligations Necessary to Obtain Pre-Petition Imported Goods, and (B) Certain Pre-Petition Shipping Charges filed by Debtor In Possession Congoleum Corporation) (ckk) (Entered: 01/07/2004) |
| 01/06/2004 | | Minute of Hearing Held, OUTCOME: Granted.(related document:12 Motion re: for Order Authorizing Payment of (A) Accrued Pre-Petition Employee Wages, Benefits and Business Expenses and (B) Payment of Related Taxes filed by Debtor In Possession Congoleum Corporation) (ckk) (Entered: 01/07/2004) |
| 01/06/2004 | | Minute of Hearing Held, OUTCOME: Granted.(related document:13 Motion re: for an Order (A) Authorizing the Continuation of Workers' Compensation Insurance Programs and Payment of Certain Pre-Petition Workers' Compensation Claims, Premiums and Related Expenses; and (B) Granting Limited Relief from the Automatic Stay to Allow Workers' Compensation Claims to be Liquidated filed by Debtor In Possession Congoleum Corporation) (ckk) (Entered: 01/07/2004) |
| 01/06/2004 | | Minute of Hearing Held, OUTCOME: Granted.(related document:14 Motion re: for Order Authorizing Payment of Pre-Petition Vendor Claims in the Ordinary Course of Business filed by Debtor In Possession Congoleum Corporation) (ckk) (Entered: 01/07/2004) |
| 01/06/2004 | | Minute of Hearing Held, OUTCOME: Granted.(related document:16 Motion re: for an Order (A) Prohibiting Utilities from Altering, Refusing, or Discontinuing Services on Account of Pre-Petition Invoices, and (B) Establishing Procedures for Determining Request for Additional Adequate Assurance filed by Debtor In Possession Congoleum Corporation) (ckk) (Entered: 01/07/2004) |
| 01/06/2004 | | Minute of Hearing Held, OUTCOME: Granted.(related document:17 Motion to Retain Claims and Noticing Agent filed by Debtor In Possession Congoleum Corporation) (ckk) (Entered: 01/07/2004) |
| 01/06/2004 | | Minute of Hearing Held, OUTCOME: Granted (Order to be Submitted).(related document:18 Motion re: for Interim and Final Orders Pursuant to Sections 363(c) and 364(c) of the Bankruptcy |

US Bankruptcy Court NJ - Live Database - Docket Report

| | | |
|---|---|---|
| | | Code and Bankruptcy Rule 4001 (1) Authorizing the Use of Cash Collateral, (2) Authorizing Debtors to Obtain Interim Post-Petition Financing, (3) Granting Senior Liens and Priority Administrative Expense Status, (4) Modifying the Automatic Stay, (5) Authorizing Debtors to Enter Into Agreements with Congress Financial Corporation, and (6) Prescribing Form and Manner of Notice and Time for Final Hearing Under Bankruptcy Rule 4001(c) filed by Debtor In Possession Congoleum Corporation), Hearing Rescheduled from 01/06/04. Final Hearing scheduled for 2/2/2004 at 02:00 PM at KCF - Courtroom 2, Trenton. (ckk) (Entered: 01/07/2004) |
| 01/06/2004 | | Minute of Hearing Held, OUTCOME: Granted.(related document:2 Motion for Joint Administration for the following cases: 03-51524, 03-51525, 03-51526 filed by Debtor In Possession Congoleum Corporation) (ckk) (Entered: 01/07/2004) |
| 01/06/2004 | | Minute of Hearing Held, OUTCOME: Granted.(related document:41 Motion re: Place Certain Insurers' Brief Under Seal) (ckk) (Entered: 01/07/2004) |
| 01/06/2004 | 79 | Application for Attorney Mark S. Cheri to Appear Pro Hac Vice Filed by Skadden, Arps, SAlate. Meagher & Flom LLP on behalf of American Biltrite Inc. Objection deadline is 1/13/2004. (Attachments: # 1 Certification of Mark S. Chehi# 2 Certification of Robert Del Tufo# 3 Certificate of Service) (wdr, ) (Entered: 01/07/2004) |
| 01/06/2004 | 80 | Certification of Non Compliance (related document:79 Application to Appear Pro Hac Vice, filed by Interested Party American Biltrite Inc) filed by Cynthia V Fitzgerald on behalf of Cynthia V Fitzgerald. (wdr, ) (Entered: 01/07/2004) |
| 01/07/2004 | 66 | Order Granting Motion re: Authorizing Payment Of Pre-Petition Sales And Use Taxes. (Related Doc # 9) The following parties were served: US Trustee, Attorney for Debtor. Signed on 1/7/2004. (srm, ) (Entered: 01/07/2004) |
| 01/07/2004 | 67 | Order Granting Motion re: (A) Authorizing Maintenance And Use Of Existing Bank Accounts And Existing Business Forms (B) Authorizing Maintenance Of The Debtors' Existing Cash Management System, And (C) Modifying Guidelines For Investment Of Money Of The Estate. (Related Doc # 8) The following parties were served: US Trustee, Attorney for Debtor. Signed on 1/7/2004. (srm, ) (Entered: 01/07/2004) |
| 01/07/2004 | 68 | Order Granting Motion re: Authorizing Payment Of Accrued Pre-Petition Employee Wages, Benefits And Business Expenses And Payment Of Related Taxes. (Related Doc # 12) The following parties were served: US Trustee, Attorney for Debtor. Signed on 1/7/2004. |

US Bankruptcy Court NJ - Live Database - Docket Report                    Page 15 of 51

|  |  | (srm, ) (Entered: 01/07/2004) |
|---|---|---|
| 01/07/2004 | 69 | Order Granting Motion for An Order Authorizing Debtor to Retain a Claims and Noticing Agent (Related Doc # 17) The following parties were served: US Trustee, Attorney for Debtor. Signed on 1/7/2004. (srm, ) (Entered: 01/07/2004) |
| 01/07/2004 | 70 | Order Granting Motion to Extend Time to February 14, 2004 , re: File Schedules And Statements Of Financial Affairs. (Related Doc # 7) The following parties were served: US Trustee, Attorney for Debtor. Signed on 1/7/2004. (srm, ) (Entered: 01/07/2004) |
| 01/07/2004 |  | Receipt of Fee Amount $ 150.00, Receipt Number 201566. (related document:58 Motion (Generic), Motion (Generic), Motion (Generic) filed by Creditor Century Indemnity Company, Creditor ACE Property and Casualty Insurance Company, Creditor Century American Insurance Company). Fee received from Amy E Vulpio (ncj, ) (Entered: 01/07/2004) |
| 01/07/2004 | 71 | Notice of Appearance and Request for Service of Notice filed by Joseph H. Lemkin on behalf of Congress Financial Corporatation. (Lemkin, Joseph) (Entered: 01/07/2004) |
| 01/07/2004 | 72 | Order Granting Motion re: Authorizing Payment Of (A) Certain Pre-Petition Obligations Necessary To Obtain Pre-Petition Imported Goods, And (B) Certain Pre-Petition Shipping Charges. (Related Doc # 10) The following parties were served: US Trustee, Attorney for Debtor. Signed on 1/7/2004. (srm, ) (Entered: 01/07/2004) |
| 01/07/2004 | 73 | Order Granting Motion re: (A) Prohibiting Utilities From Altering, Refusing, Or Discontinuing Services On Account Of Pre-Petition Invoices, And (B) Establishing Procedures For Determining Request For Additional Adequate Assurance. (Related Doc # 16) The following parties were served: US Trustee, Attorney for Debtor. Signed on 1/7/2004. (srm, ) (Entered: 01/07/2004) |
| 01/07/2004 | 74 | Order Granting Motion re: Authorizing Payment Of Pre-Petition Vendor Claims In The Ordinary Course Of Business. (Related Doc # 14) The following parties were served: US Trustee, Attorney for Debtor. Signed on 1/7/2004. (srm, ) (Entered: 01/07/2004) |
| 01/07/2004 | 75 | Order Granting Motion re: (A) Authorizing The Continuation Of Workers' Compensation Insurance Programs And Payment Of Certain Pre-Petition Workers' Compensation Claims, Premiums And Related Expenses; And (B) Granting Limited Relief From The Automatic Stay To Allow Workers' Compensation Claims To Be Liquidated. (Related Doc # 13) The following parties were served: US Trustee, Attorney for Debtor. Signed on 1/7/2004. (srm, ) (Entered: |

| | | |
|---|---|---|
| | | 01/07/2004) |
| 01/07/2004 | 76 | Order Granting Motion For Joint Administration Lead Case: 03-51524 Member Cases: 03-51525, 03-51526 (Related Doc # 2) The following parties were served: US Trustee, Attorney for Debtor. Signed on 1/7/2004. (srm, ) (Entered: 01/07/2004) |
| 01/07/2004 | 77 | Amended Order Regarding Application For Expedited Consideration Of First Day Matters (related document:29 Order Expediting Consideration of First Day Matters). The following parties were served: US Trustee, Attorney for Debtor. Signed on 1/7/2004. (srm, ) (Entered: 01/07/2004) |
| 01/07/2004 | | HEARING RESCHEDULED (related document:11 Motion re: for an Order for Authority to Honor and Continue Customer Programs filed by Debtor In Possession Congoleum Corporation). HEARING SCHEDULED FOR 1/12/2004 at 10:00 AM at KCF - Courtroom 2, Trenton. (seg, ) (Entered: 01/07/2004) |
| 01/07/2004 | 78 | Order Granting Motion re: Placing Under Seal Certain Insurers' Brief Responding To The Affidavit Of Vincent J. Sullivan (The "Brief") Under Seal. (Related Doc # 41) The following parties were served: US Trustee, Attorney for Debtor. Signed on 1/7/2004. (srm, ) (Entered: 01/07/2004) |
| 01/07/2004 | 81 | Order Granting Application for Designation as a Complex Chapter 11 Case (Related Doc # 3) The following parties were served: Attorney for Debtor and UST. Signed on 1/7/2004. (fed, ) (Entered: 01/07/2004) |
| 01/07/2004 | | Status Conference Scheduled. (related document:81 Order on Application for Designation as a Complex Chapter 11 Case) Hearing scheduled for 2/2/2004 at 02:00 PM at KCF - Courtroom 2, Trenton. (fed, ) (Entered: 01/07/2004) |
| 01/07/2004 | 82 | Certificate of Service (related document:31 Document, filed by Debtor In Possession Congoleum Corporation) filed by Domenic Pacitti on behalf of Saul Ewing LLP. (Pacitti, Domenic) (Entered: 01/07/2004) |
| 01/07/2004 | 83 | Certificate of Service (related document:31 Document, filed by Debtor In Possession Congoleum Corporation) filed by Domenic Pacitti on behalf of Saul Ewing LLP. (Pacitti, Domenic) (Entered: 01/07/2004) |
| 01/07/2004 | 84 | Document re: Affidavit of Service (related document:17 Motion to Retain Claims and Noticing Agent filed by Debtor In Possession |

| | | |
|---|---|---|
| | | Congoleum Corporation, <u>18</u> Motion (Generic), Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation, <u>6</u> Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation, <u>7</u> Motion to Extend Time filed by Debtor In Possession Congoleum Corporation, <u>8</u> Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation, <u>9</u> Motion (Generic) filed by Debtor In Possession Congoleum Corporation, <u>10</u> Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation, <u>11</u> Motion (Generic) filed by Debtor In Possession Congoleum Corporation, <u>12</u> Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation, <u>13</u> Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation, <u>14</u> Motion (Generic) filed by Debtor In Possession Congoleum Corporation, <u>2</u> Motion for Joint Administration filed by Debtor In Possession Congoleum Corporation, <u>16</u> Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation, <u>3</u> Application for Designation as Complex Chapter 11 Case filed by Debtor In Possession Congoleum Corporation) filed by Domenic Pacitti on behalf of Digital Legal Services, LLC. (Pacitti, Domenic) (Entered: 01/07/2004) |
| 01/07/2004 | <u>85</u> | Document re: Affidavit of Service (related document:<u>37</u> Application to Appear Pro Hac Vice, filed by Debtor In Possession Congoleum Corporation, <u>38</u> Application to Appear Pro Hac Vice, filed by Debtor In Possession Congoleum Corporation, <u>39</u> Application to Appear Pro Hac Vice, filed by Debtor In Possession Congoleum Corporation, <u>40</u> Application to Appear Pro Hac Vice, filed by Debtor In Possession Congoleum Corporation, <u>42</u> Application to Appear Pro Hac Vice, filed by Debtor In Possession Congoleum Corporation, <u>44</u> Application to Appear Pro Hac Vice, filed by Debtor In Possession Congoleum Corporation) filed by Domenic Pacitti on behalf of Digital Legal Services, LLC. (Pacitti, Domenic) (Entered: 01/07/2004) |
| 01/07/2004 | <u>86</u> | Document re: Affidavit of Service (related document:<u>31</u> Document, filed by Debtor In Possession Congoleum Corporation) filed by Domenic Pacitti on behalf of Digital Legal Services, LLC. (Pacitti, Domenic) (Entered: 01/07/2004) |
| 01/07/2004 | <u>87</u> | Document re: Notice of Hearing on Motion for an Order for Authority to Honor and Continue Customer Programs filed by Domenic Pacitti on behalf of Congoleum Corporation. (Pacitti, Domenic) (Entered: 01/07/2004) |
| 01/07/2004 | <u>88</u> | BNC Certificate of Service. No. of Notices: 5. Service Date 01/07/2004. (Related Doc # <u>32</u>) (Admin.) (Entered: 01/08/2004) |
| | | |

| 01/07/2004 | 90 | Application for Attorney Jonathan H. Pittman, Mark D. Plevin, Robert T. Ebert, Leslie A. Epley and Stephen D. Martin to Appear Pro Hac Vice Filed by Hardin, Kundla, McKeon, Poletto, Crowell & Moring, LLP on behalf of OneBeacon America Insurance Company, Seaton Insurance Company, Stonewall Insurance Co.. Objection deadline is 1/14/2004. (Attachments: # 1 Certificate of Service # 2 Proposed Order) (wdr, ) (Entered: 01/08/2004) |
| 01/07/2004 | 91 | Certification of Non Compliance (related document:90 Application to Appear Pro Hac Vice, filed by Creditor Stonewall Insurance Co., Creditor OneBeacon America Insurance Company, Creditor Seaton Insurance Company) filed by John S. Favate on behalf of John S Favate. (wdr, ) (Entered: 01/08/2004) |
| 01/07/2004 | 92 | Notice of Appearance and Request for Service of Notice filed by McClain, Leppert & Maney on behalf of Mt. McKinley Insurance Co. (wdr, ) (Entered: 01/08/2004) |
| 01/07/2004 | 93 | Notice of Appearance and Request for Service of Notice filed by Skadden, Arps, SAlate. Meagher & Flom LLP on behalf of American Biltrite Inc. (wdr, ) (Entered: 01/08/2004) |
| 01/07/2004 | 94 | Interim Order Authorizing Debtors Use Of Cash Collateral etc. (related document:18 Motion re: for Interim and Final Orders Pursuant to Sections 363(c) and 364(c) of the Bankruptcy Code and Bankruptcy Rule 4001 (1) Authorizing the Use of Cash Collateral, (2) Authorizing Debtors to Obtain Interim Post-Petition Financing, (3) Granting Senior Liens filed by Debtor In Possession Congoleum Corporation). The following parties were served: US Trustee, Attorney for Debtor. Signed on 1/7/2004. (srm, ) (Entered: 01/08/2004) |
| 01/08/2004 | 89 | Certificate of Service (related document:55 Application to Appear Pro Hac Vice, filed by Creditor Century Indemnity Company, Creditor ACE Property and Casualty Insurance Company, Creditor Century American Insurance Company, 56 Notice of Appearance and Request filed by Creditor Century Indemnity Company, Creditor ACE American Insurance Company, Creditor ACE Property and Casualty Insurance Company, 58 Motion (Generic), Motion (Generic), Motion (Generic) filed by Creditor Century Indemnity Company, Creditor ACE Property and Casualty Insurance Company, Creditor Century American Insurance Company) filed by Amy E. Vulpio on behalf of ACE American Insurance Company, ACE Property and Casualty Insurance Company, Century Indemnity Company. (Vulpio, Amy) (Entered: 01/08/2004) |
| 01/08/2004 | 95 | Certificate of Service (related document:50 Objection filed by Creditor Century Indemnity Company, Creditor ACE American |

| | | |
|---|---|---|
| | | Insurance Company, Creditor ACE Property and Casualty Insurance Company) filed by Amy E. Vulpio on behalf of ACE American Insurance Company, ACE Property and Casualty Insurance Company, Century Indemnity Company. (Vulpio, Amy) (Entered: 01/08/2004) |
| 01/08/2004 | 96 | Document re: Notice of Entry of Interim Order and of Final Hearing on Motion for Interim and Final Orders (1) Authorizing the Use of Cash Collateral, (2) Authorizing Debtors to Obtain Interim Post-Petition Financing, (3) Granting Senior Liens and Priority Adminstrative Expense Status, (4) Modifying The Automatic Stay, (5) Authorizing Debtors to Enter into Agreements with Congress Financial Corporation, and (6) Prescribing Form and Manner of Notice and Time for Final Hearing Under Bankruptcy Rule 4001(c) filed by Domenic Pacitti on behalf of Congoleum Corporation. (Attachments: # 1 Exhibit Order) (Pacitti, Domenic) (Entered: 01/08/2004) |
| 01/08/2004 | 97 | Document re: Notice of Status Conference filed by Domenic Pacitti on behalf of Congoleum Corporation. (Pacitti, Domenic) (Entered: 01/08/2004) |
| 01/09/2004 | 98 | Document re: Order Authorizing Debtors to List Addresses of Counsel for Asbestos Claimants in the Creditor Matrix in Lieu of Creditors' Addresses, and to Approve Claimant Notice Procedure (related document:6 Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation) filed by Domenic Pacitti on behalf of Congoleum Corporation. (Pacitti, Domenic) (THIS IS A PROPOSED ORDER). Modified on 1/12/2004 (cls, ). (Entered: 01/09/2004) |
| 01/09/2004 | 99 | Document re: Affidavit of Service Re DI Nos. 66-70, 72-77 and 81 filed by Domenic Pacitti on behalf of Digital Legal Services, LLC. (Pacitti, Domenic) (Entered: 01/09/2004) |
| 01/09/2004 | 100 | Document re: Affidavit of Service (related document:96 Document,, filed by Debtor In Possession Congoleum Corporation) filed by Domenic Pacitti on behalf of Digital Legal Services, LLC. (Pacitti, Domenic) (Entered: 01/09/2004) |
| 01/09/2004 | 101 | Application for Attorney Robert B.Millner, Esq to Appear Pro Hac Vice Filed by Sonnenschein Nath & Rosenthal LLP on behalf of Liberty Mutual Insurance Company. Objection deadline is 1/16/2004. (Attachments: # 1 Certification of Robert W. Cockren# (2) Declaration of Robert B. Millner# 3 Certificate of Service) (wdr, ) (Entered: 01/12/2004) |
| 01/09/2004 | 102 | Certification of Non Compliance (related document:101 Application |

| | | |
|---|---|---|
| | | to Appear Pro Hac Vice, filed by Interested Party Liberty Mutual Insurance Company) filed by Robert W Cockren on behalf of Robert W Cockren. (wdr, ) (Entered: 01/12/2004) |
| 01/09/2004 | <u>112</u> | Notice of Appearance and Request for Service of Notice filed by Robert W Cockren on behalf of Liberty Mutual Insurance Company. (gan, ) (Entered: 01/14/2004) |
| 01/12/2004 | <u>103</u> | Application to Shorten Time (related document:<u>41</u> Motion re: Place Certain Insurers' Brief Under Seal, <u>45</u> Application to Shorten Time (related document:<u>41</u> Motion re: Place Certain Insurers' Brief Under Seal) filed by Interested Party Certain Insurers ; Stonewall Ins Co.,OneBeacon American Ins Co and Seaton Insurance Company) Filed by Louis A. Modugno on behalf of Old Republic Insurance Company. (Attachments: # <u>1</u> Proposed Order # <u>2</u> Notice of Motion# <u>3</u> Brief Filed under Seal# <u>4</u> Certification Filed Under Seal# <u>5</u> Proposed Order To Unseal) (Modugno, Louis) (APPLICATION AND MOTION TO BE REFILED AS SEPERATE ENTRIES). Modified on 1/13/2004 (cls, ). (Entered: 01/12/2004) |
| 01/12/2004 | <u>104</u> | Order Granting Motion re: Authorizing Debtors To List Addresses Of Counsel For Asbestos Claimants In The Creditor Matrix In Lieu Of Creditors' Addresses, And To Approve Claimant Notice Procedure. (Related Doc # <u>6</u>) The following parties were served: US Trustee, Attorney for Debtor. Signed on 1/12/2004. (srm, ) (Entered: 01/13/2004) |
| 01/12/2004 | | Minute of Hearing Held, OUTCOME: Granted (related document:<u>11</u> Motion for Authority to Honor & Continue Customer Programs filed by Debtor In Possession Congoleum Corporation) (seg, ) (Entered: 01/13/2004) |
| 01/13/2004 | <u>105</u> | Order Granting Motion re: To Honor And Continue Customer Programs. (Related Doc # <u>11</u>) The following parties were served: US Trustee, Attorney for Debtor. Signed on 1/13/2004. (srm, ) (Entered: 01/13/2004) |
| 01/13/2004 | <u>106</u> | Motion re: to Unseal Materials Filed Under Seal Filed by Louis A. Modugno on behalf of Old Republic Insurance Company. (Attachments: # <u>1</u> Memorandum of Law in Support of Motion to Unseal Filed Under Seal# <u>2</u> Certification in Support of Motion to Unseal Filed Under Seal# <u>3</u> Proposed Order Unsealing Materials# <u>4</u> Certificate of Service of Motion To Unseal) (Modugno, Louis) (Entered: 01/13/2004) |
| 01/13/2004 | <u>107</u> | Application to Shorten Time (related document:<u>106</u> Motion re: to Unseal Materials Filed Under Seal filed by Interested Party Old Republic Insurance Company) Filed by Louis A. Modugno on behalf |

| | | |
|---|---|---|
| | | of Old Republic Insurance Company. (Attachments: # 1 Proposed Order Shortening Time# 2 Certificate of Service) (Modugno, Louis) (Entered: 01/13/2004) |
| 01/13/2004 | 108 | Application re: Debtors' Motion for Entry of an Order Approving and Authorizing the Appointment of R. Scott Williams as the Legal Representative for Future Asbestos Personal Injury Claimants Filed by Domenic Pacitti on behalf of Congoleum Corporation. Hearing scheduled for 2/2/2004 at 02:00 PM at KCF - Courtroom 2, Trenton.Objection deadline is 1/20/2004. (Attachments: # 1 Notice# 2 Affidavit of R. Scott Williams# 3 Proposed Order) (Pacitti, Domenic) (Entered: 01/13/2004) |
| 01/13/2004 | 109 | Motion re: Motion for Administrative Order Pursuant to 11 U.S.C. Sections 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals Filed by Domenic Pacitti on behalf of Congoleum Corporation. Hearing scheduled for 2/2/2004 at 02:00 PM at KCF - Courtroom 2, Trenton. (Attachments: # 1 Notice# 2 Proposed Order) (Pacitti, Domenic) (Entered: 01/13/2004) |
| 01/13/2004 | 110 | Motion re: Verified Motion for Authority to Employ and Compensate Professionals in the Ordinary Course of Business Filed by Domenic Pacitti on behalf of Congoleum Corporation. Hearing scheduled for 2/2/2004 at 02:00 PM at KCF - Courtroom 2, Trenton. (Attachments: # 1 Notice# 2 Verification# 3 Proposed Order) (Pacitti, Domenic) Modified on 1/29/2004 (seg, ). (Entered: 01/13/2004) |
| 01/13/2004 | 111 | Motion re: for Order (i) Establishing Asbestos Property Damage Claim Bar Date; (ii) Approving Property Damage Proof of Claim Form; and (iii) Approving Scope and Form of Notice Filed by Domenic Pacitti on behalf of Congoleum Corporation. Hearing scheduled for 2/2/2004 at 02:00 PM at KCF - Courtroom 2, Trenton. (Attachments: # 1 Notice# 2 Verification# 3 Proposed Order) (Pacitti, Domenic) (Entered: 01/13/2004) |
| 01/13/2004 | 129 | Certification of Non Compliance (related document:92 Notice of Appearance and Request filed by Interested Party Mt. McKinley Insurance Co) filed by David P. McClain on behalf of David P. McClain. (vpm, ) (Entered: 01/16/2004) |
| 01/14/2004 | 113 | MEMORANDUM OF LAW in support of (related document:58 Motion OF CERTAIN INSURERS FOR DECLARATION THAT SECTION 362(a) OF BANKRUPTCY CODE IS NOT APPLICABLE, Filed by Creditor Century Indemnity Company, Creditor ACE Property and Casualty Insurance Company, Creditor Century American Insurance Company) filed by Stephen V. Falanga on behalf of Travelers Casualty and Surety Company, formerly |

| | | |
|---|---|---|
| | | known as The Aetna Casualty and Surety Company. (Attachments: # 1 Exhibit Exhibit 1 to Brief in Support) (Falanga, Stephen) Modified on 1/15/2004 (jey, ). MODIFIED TEXT. (Entered: 01/14/2004) |
| 01/14/2004 | | Motion for Legal Representative Deadline Terminated, Reason: Scheduled for Motion date (cls, ) (Entered: 01/14/2004) |
| 01/14/2004 | 114 | Certificate of Service (related document:113 Support, filed by Unknown Role Type Travelers Casualty and Surety Company, formerly known as The Aetna Casualty and Surety Company) filed by Thomas J. Pasuit on behalf of Travelers Casualty and Surety Company, formerly known as The Aetna Casualty and Surety Company. (Pasuit, Thomas) (Entered: 01/14/2004) |
| 01/14/2004 | 115 | Order Denying Application to Shorten Time (related document:106 Motion re: to Unseal Materials Filed Under Seal filed by Interested Party Old Republic Insurance Company). The following parties were served: Attorney for Movant and UST. Signed on 1/14/2004. Hearing scheduled for 2/2/2004 at 02:00 PM at KCF - Courtroom 2, Trenton. (fed, ) (Entered: 01/14/2004) |
| 01/14/2004 | 116 | Certificate of Service (related document:98 Document, filed by Debtor In Possession Congoleum Corporation) filed by Domenic Pacitti on behalf of Digital Legal Services, LLC. (Pacitti, Domenic) (Entered: 01/14/2004) |
| 01/14/2004 | 117 | Certificate of Service (related document:108 Application (Generic), Application (Generic) filed by Debtor In Possession Congoleum Corporation, 109 Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation, 110 Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation, 111 Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation) filed by Domenic Pacitti on behalf of Saul Ewing LLP. (Pacitti, Domenic) (Entered: 01/14/2004) |
| 01/14/2004 | 118 | Notice of Appearance and Request for Service of Notice filed by Richard M. Mandel on behalf of Aon Corporation. (vpm, ) (Entered: 01/15/2004) |
| 01/14/2004 | 119 | Certification of Non Compliance (related document:118 Notice of Appearance and Request filed by Creditor Aon Corporation) filed by Richard M. Mandel on behalf of Richard M. Mandel. (vpm, ) INCORRECT PDF ATTACHMENT Modified on 1/15/2004 (ehl, ). (Entered: 01/15/2004) |
| 01/14/2004 | 128 | Certification of Non Compliance (related document:118 Notice of Appearance and Request filed by Creditor Aon Corporation) filed by Richard M. Mandel on behalf of Richard M. Mandel. (vpm, ) |

| | | |
|---|---|---|
| | | (Entered: 01/15/2004) |
| 01/14/2004 | 172 | Certification of Non Compliance (related document:118 Notice of Appearance and Request filed by Creditor Aon Corporation) filed by Richard M. Mandel on behalf of Richard M. Mandel. (vpm, ) (Entered: 01/22/2004) |
| 01/15/2004 | 120 | Order Granting Application To Allow Attorney Jonathan H. Pittman, Esq. to Appear Pro Hac Vice (Related Doc # 90) The following parties were served: US Trustee, Attorney for Debtor, Jonathan H. Pittman, Esq., Hardin et al., Crowell & Moring LLP Signed on 1/15/2004. (srm, ) (Entered: 01/15/2004) |
| 01/15/2004 | 121 | Application for Attorney Matthew Funk, Esq. to Appear Pro Hac Vice Filed by Thomas J. Pasuit on behalf of Travelers Casualty and Surety Company, formerly known as The Aetna Casualty and Surety Company. Objection deadline is 1/22/2004. (Attachments: # 1 Certification of Stephen V. Falanga# 2 Certification of Matthew Funk# 3 Proposed Order) (Pasuit, Thomas) (Entered: 01/15/2004) |
| 01/15/2004 | 122 | Application for Attorney Jonathan N. Helfat, Esq. and Daniel F. Fiorillo, Esq. to Appear Pro Hac Vice Filed by Joseph H. Lemkin on behalf of Congress Financial Corporatation. Objection deadline is 1/22/2004. (Attachments: # 1 Certification of Jonathan N. Helfat, Esq. in Support of Application# 2 Certification of Daniel F. Fiorillo, Esq. in Support of Application# 3 Proposed Order) (Lemkin, Joseph) (Entered: 01/15/2004) |
| 01/15/2004 | 123 | Order For Admission Pro Hac Vice (related document:90 Application for Attorney Jonathan H. Pittman, Mark D. Plevin, Robert T. Ebert, Leslie A. Epley and Stephen D. Martin to Appear Pro Hac Vice filed by Creditor Stonewall Insurance Co., Creditor OneBeacon America Insurance Company, Creditor Seaton Insurance Company). The following parties were served: US Trustee, Attorney for Debtor, Mark D. Plevin, Esq., Crowell & Moring LLP, Hardin et al.. Signed on 1/15/2004. (srm, ) (Entered: 01/15/2004) |
| 01/15/2004 | 124 | Notice of Appearance and Request for Service of Notice filed by Patricia Grauert on behalf of IBM Credit LLC. (vpm, ) (Entered: 01/15/2004) |
| 01/15/2004 | | Mark D. Plevin, Attorney Pro Hac Vice, added to case. (srm, ) (Entered: 01/15/2004) |
| 01/15/2004 | | Robert T. Ebert, Attorney Pro Hac Vice, added to case. (srm, ) (Entered: 01/15/2004) |
| | | |

| 01/15/2004 | | Leslie A. Epley, Attorney Pro Hac Vice, added to case. (srm, ) (Entered: 01/15/2004) |
| --- | --- | --- |
| 01/15/2004 | | Stephen D. Martin, Attorney Pro Hac Vice, added to case. (srm, ) (Entered: 01/15/2004) |
| 01/15/2004 | 125 | Order For Admission Pro Hac Vice (related document:90 Application for Attorney Jonathan H. Pittman, Mark D. Plevin, Robert T. Ebert, Leslie A. Epley and Stephen D. Martin to Appear Pro Hac Vice filed by Creditor Stonewall Insurance Co., Creditor OneBeacon America Insurance Company, Creditor Seaton Insurance Company). The following parties were served: US Trustee, Attorney for Debtor, Robert T. Ebert, Esq., Hardin et al., Crowell & Moring LLP. Signed on 1/15/2004. (srm, ) (Entered: 01/15/2004) |
| 01/15/2004 | 126 | Order For Admission Pro Hac Vice (related document:90 Application for Attorney Jonathan H. Pittman, Mark D. Plevin, Robert T. Ebert, Leslie A. Epley and Stephen D. Martin to Appear Pro Hac Vice filed by Creditor Stonewall Insurance Co., Creditor OneBeacon America Insurance Company, Creditor Seaton Insurance Company). The following parties were served: US Trustee, Attorney for Debtor, Leslie A. Epley, Esq., Hardin et al., Crowell & Moring LLP. Signed on 1/15/2004. (srm, ) (Entered: 01/15/2004) |
| 01/15/2004 | 127 | Order For Admission Pro Hac Vice (related document:90 Application for Attorney Jonathan H. Pittman, Mark D. Plevin, Robert T. Ebert, Leslie A. Epley and Stephen D. Martin to Appear Pro Hac Vice filed by Creditor Stonewall Insurance Co., Creditor OneBeacon America Insurance Company, Creditor Seaton Insurance Company). The following parties were served: US Trustee, Attorney for Debtor, Stephen D. Martin, Esq., Hardin et al., Crowell & Moring LLP. Signed on 1/15/2004. (srm, ) (Entered: 01/15/2004) |
| 01/15/2004 | 135 | Objection to (related document:73 Order (Generic), Order (Generic)) filed by Suzanne M. Klar on behalf of PSE&G. (gan, ) (Entered: 01/16/2004) |
| 01/15/2004 | 138 | Certification of Non Compliance (related document:135 Objection filed by Creditor PSE&G) filed by Sheree L. Kelly on behalf of Sheree L. Kelly. (gan, ) (Entered: 01/16/2004) |
| 01/16/2004 | 130 | Application for Attorney Edward Cohen and Dena Economou to Appear Pro Hac Vice Filed by Louis A. Modugno on behalf of Old Republic Insurance Company. Objection deadline is 1/23/2004. (Attachments: # 1 Exhibit Certifications of Counsel# 2 Proposed Order # 3 Memorandum of Law) (Modugno, Louis) (Entered: 01/16/2004) |

US Bankruptcy Court NJ - Live Database - Docket Report

| 01/16/2004 | 131 | Notice of Appearance and Request for Service of Notice filed by Robert G. Taylor II, Randall A. Rios on behalf of Numerous Individuals Holding Asbestos-Related Personal Injury/Wrongful Death Claims. (wdr, ) (Entered: 01/16/2004) |
|---|---|---|
| 01/16/2004 | 132 | Notice of Appearance and Request for Service of Notice filed by Sheldon Karasik on behalf of Co of Omaha Protective National Insurance. (wdr, ) (Entered: 01/16/2004) |
| 01/16/2004 | 133 | Certificate of Service (related document:132 Notice of Appearance and Request filed by Interested Party Co of Omaha Protective National Insurance) filed by Sheldon Karasik on behalf of Co of Omaha Protective National Insurance. (wdr, ) (Entered: 01/16/2004) |
| 01/16/2004 | 134 | Certification of Non Compliance (related document:132 Notice of Appearance and Request filed by Interested Party Co of Omaha Protective National Insurance) filed by Sheldon Karasik on behalf of Sheldon Karasik (wdr, ) Modified on 1/20/2004 (ehl, ). (Entered: 01/16/2004) |
| 01/16/2004 | 136 | Master Service List filed by Domenic Pacitti on behalf of Congoleum Corporation. (Pacitti, Domenic) (Entered: 01/16/2004) |
| 01/16/2004 | 137 | Document re: Core Service List filed by Domenic Pacitti on behalf of Congoleum Corporation. (Pacitti, Domenic) (Entered: 01/16/2004) |
| 01/16/2004 | 148 | Notice of Appearance and Request for Service of Notice filed by Stephen A. Santola on behalf of Transport Insurance Co. (wdr, ) (Entered: 01/20/2004) |
| 01/16/2004 | 149 | Certification of Non Compliance (related document:148 Notice of Appearance and Request filed by Creditor Transport Insurance Co) filed by Stephen A. Santola on behalf of Stephen Santola. (wdr, ) (Entered: 01/20/2004) |
| 01/17/2004 | 139 | BNC Certificate of Service - Order No. of Notices: 3. Service Date 01/17/2004. (Related Doc # 120) (Admin.) (Entered: 01/18/2004) |
| 01/17/2004 | 140 | BNC Certificate of Service - Order No. of Notices: 2. Service Date 01/17/2004. (Related Doc # 123) (Admin.) (Entered: 01/18/2004) |
| 01/17/2004 | 141 | BNC Certificate of Service - Order No. of Notices: 2. Service Date 01/17/2004. (Related Doc # 125) (Admin.) (Entered: 01/18/2004) |
| 01/17/2004 | 142 | BNC Certificate of Service - Order No. of Notices: 2. Service Date 01/17/2004. (Related Doc # 126) (Admin.) (Entered: 01/18/2004) |

| 01/17/2004 | 143 | BNC Certificate of Service - Order No. of Notices: 2. Service Date 01/17/2004. (Related Doc # 127) (Admin.) (Entered: 01/18/2004) |
| 01/19/2004 | 144 | Certificate of Service (related document: 122 Application to Appear Pro Hac Vice, filed by Creditor Congress Financial Corporation) filed by Joseph H. Lemkin on behalf of Congress Financial Corporation. (Lemkin, Joseph) (Entered: 01/19/2004) |
| 01/19/2004 | 145 | Document re: Memorandum Of Support By Brokers Marsh USA, Inc. and AON Corporation For Motion By Certain Insurers For Relief Under Section 362(a) or, in the alternative, For Relief From The Automatic Stay (related document: 58 Motion (Generic), Motion (Generic), Motion (Generic) filed by Creditor Century Indemnity Company, Creditor ACE Property and Casualty Insurance Company, Creditor Century American Insurance Company) filed by Linda R. Brower on behalf of Marsh USA, Inc.. (Brower, Linda) (Entered: 01/19/2004) |
| 01/20/2004 | 146 | Order Granting Application To Allow Attorney Wilmer, Cutler and Pickering to Appear Pro Hac Vice (Related Doc # 47) The following parties were served: U.S. Trustee, Trustee, Debtor's Attorney. Signed on 1/20/2004. (ekp, ) (Entered: 01/20/2004) |
| 01/20/2004 | 147 | Order Granting Application To Allow Attorney Scott Gilbert as Attorney for Debtor to Appear Pro Hac Vice (Related Doc # 44) The following parties were served: U.S. Trustee, Trustee, Debtor's Attorney, Scott Gilbert, Esq.. Signed on 1/20/2004. (ekp, ) (Entered: 01/20/2004) |
| 01/20/2004 | 150 | Document re: Notice of Hearing on Motion to Unseal Materials Filed Under Seal filed by Domenic Pacitti on behalf of Congoleum Corporation. (Pacitti, Domenic) Modified on 1/22/2004 (llg, ). (related document 106 Motion re: to Unseal Materials Filed Under Seal) (Entered: 01/20/2004) |
| 01/20/2004 | 151 | [Debtors' Memorandum of Law in Support of Opposition to Motion of Certain Insurers for Declaration that Section 362(a) of the Bankruptcy Code is not Applicable, or, in the Alternative for Relief from the Automatic Stay] in Opposition to (related document: 58 Motion re: Motion of Certain Insurers for Declaration that Section 362 (a) of the Bankruptcy Code is not Applicable, or, in the Alternative, for Relief from the Automatic Stay filed by Creditor Century Indemnity Company, Creditor ACE Property and Casualty Insurance Company, Creditor Century American Insurance Company) filed by Domenic Pacitti on behalf of Congoleum Corporation. (Pacitti, Domenic) (Entered: 01/20/2004) |
| 01/20/2004 | 152 | Document re: [Declaration of Russell L. Hewitt in Support of |

| | | |
|---|---|---|
| | | Debtors' Opposition to Moving Insurers' Motion for Declaration that Section 362(a) of the Bankruptcy Code is not Applicable to, or in the Alternative, for Relief from the Automatic Stay] (related document:151 Opposition,, filed by Debtor In Possession Congoleum Corporation) filed by Domenic Pacitti on behalf of Congoleum Corporation. (Pacitti, Domenic) (Entered: 01/20/2004) |
| 01/20/2004 | 153 | Order Granting Application To Allow Attorney Mary K. Warren, Esq., R. Paul Wickes, Esq., Brenda D. DiLuigi, Esq., and Ivan Morales, Esq. to Appear Pro Hac Vice (Related Doc # 33) The following parties were served: US Trustee, Attorney for Debtor, Cole et al., Warren et al.. Signed on 1/20/2004. (srm, ) (Entered: 01/21/2004) |
| 01/20/2004 | 154 | Order Granting Application To Allow Attorney M. O, Sigal, Jr. Esq. to Appear Pro Hac Vice (Related Doc # 35) The following parties were served: US Trustee, Attorney for Debtor, Connell Foley LLP. Signed on 1/20/2004. (srm, ) (Entered: 01/21/2004) |
| 01/20/2004 | 155 | Order Granting Application To Allow Attorney Lynn K. Neuner, Esq. to Appear Pro Hac Vice (Related Doc # 36) The following parties were served: US Trustee, Attorney for Debtor, Connell Foley LLP. Signed on 1/20/2004. (srm, ) (Entered: 01/21/2004) |
| 01/20/2004 | 156 | Order Granting Application To Allow Attorney Jeremy W. Ryan, Esq. to Appear Pro Hac Vice (Related Doc # 37) The following parties were served: US Trustee, Attorney for Debtor, Connell Foley LLP. Signed on 1/20/2004. (srm, ) (Entered: 01/21/2004) |
| 01/20/2004 | 157 | Order Granting Application To Allow Attorney Kathleen P. Makowski, Esq. to Appear Pro Hac Vice (Related Doc # 38) The following parties were served: US Trustee, Attorney for Debtor. Signed on 1/20/2004. (srm, ) (Entered: 01/21/2004) |
| 01/20/2004 | 158 | Order Granting Application To Allow Attorney Nathaniel Metz, Esq. to Appear Pro Hac Vice (Related Doc # 39) The following parties were served: US Trustee, Attorney for Debtor. Signed on 1/20/2004. (srm, ) (Entered: 01/21/2004) |
| 01/20/2004 | 159 | Order Granting Application To Allow Attorney Craig Litherland, Esq. to Appear Pro Hac Vice (Related Doc # 40) The following parties were served: US Trustee, Attorney for Debtor, Craig Litherland, Esq.. Signed on 1/20/2004. (srm, ) (Entered: 01/21/2004) |
| 01/20/2004 | 160 | Order Granting Application To Allow Attorney Bette Orr, Esq. to Appear Pro Hac Vice (Related Doc # 42) The following parties were served: US Trustee, Attorney for Debtor, Bette Orr, Esq.. Signed on 1/20/2004. (srm, ) (Entered: 01/21/2004) |

| 01/20/2004 | 161 | Order Granting Application To Allow Attorney Robert B. Millner, Esq. to Appear Pro Hac Vice (Related Doc # 101) The following parties were served: US Trustee, Attorney for Debtor, Robert B. Millner, Esq.. Signed on 1/20/2004. (srm, ) (Entered: 01/21/2004) |
| 01/20/2004 | 162 | Order Granting Application To Allow Attorney Tancred Schiavoni Esq., Robert Winter, Esq., to Appear Pro Hac Vice (Related Doc # 55) The following parties were served: US Trustee, Attorney for Debtor, Amy E. Vulpio, Esq., Tancred Schiavoni, Esq., Robert Winter, Esq.. Signed on 1/20/2004. (srm, ) (Entered: 01/21/2004) |
| 01/20/2004 | 163 | Order Granting Application To Allow Attorney Mark S, Chehi, Esq. to Appear Pro Hac Vice (Related Doc # 79) The following parties were served: US Trustee, Attorney for Debtor, Skadden et al.. Signed on 1/20/2004. (srm, ) (Entered: 01/21/2004) |
| 01/20/2004 | 164 | Order Granting Application To Allow Attorney James P. Ruggeri, Esq., Edward B. Parks, II, Esq., Kathleen P. Tanner, Esq. to Appear Pro Hac Vice (Related Doc # 49) The following parties were served: US Trustee, Attorney for Debtor, Klehr et al., James P. Ruggeri, Esq., Edward B. Parks, II, Esq., Kathleen P. Tanner, Esq.. Signed on 1/20/2004. (srm, ) (Entered: 01/21/2004) |
| 01/20/2004 | 165 | Notice of Appearance and Request for Service of Notice filed by John R. Knapp Jr. on behalf of Microsoft Corporation. (dac, ) (Entered: 01/21/2004) |
| 01/20/2004 | 166 | Application for Attorney John R. Ashmead and Ronald L. Cohen to Appear Pro Hac Vice Filed by Ronald L. Cohen, John R Ashmead on behalf of Employers Insurance of Wausau. Objection deadline is 1/27/2004. (Attachments: # 1 Notice of Motion# 2 Certificate of Service # 3 Proposed Order) (wdr, ) (Entered: 01/21/2004) |
| 01/20/2004 | 167 | Certification of Non Compliance (related document:166 Application to Appear Pro Hac Vice, filed by Interested Party Employers Insurance of Wausau) filed by John R Ashmead on behalf of John R Ashmead. (wdr, ) (Entered: 01/21/2004) |
| 01/20/2004 | 168 | Certification of Non Compliance (related document:166 Application to Appear Pro Hac Vice, filed by Interested Party Employers Insurance of Wausau) filed by Ronald L. Cohen on behalf of Ronald L. Cohen. (wdr, ) (Entered: 01/21/2004) |
| 01/20/2004 | 169 | Application for Attorney Jennifer M. Graff to Appear Pro Hac Vice Filed by Cozen O'Connor on behalf of Mt. McKinley Insurance Co. Objection deadline is 1/27/2004. (Attachments: # 1 Affidavit # 2 Certification # 3 Proposed Order) (dmc, ) (Entered: 01/22/2004) |

| | | |
|---|---|---|
| 01/20/2004 | 170 | Application for Attorney David P. McClain to Appear Pro Hac Vice Filed by Cozen O'Connor on behalf of Mt. McKinley Insurance Co. Objection deadline is 1/27/2004. (Attachments: # 1 Certification # 2 Affidavit # 3 Proposed Order) (dmc, ) (Entered: 01/22/2004) |
| 01/20/2004 | 171 | Application for Attorney Daniel F. Patchin to Appear Pro Hac Vice Filed by Cozen O'Connor on behalf of Mt. McKinley Insurance Co. Objection deadline is 1/27/2004. (Attachments: # 1 Affidavit # 2 Certification # 3 Proposed Order) (dmc, ) (Entered: 01/22/2004) |
| 01/20/2004 | 173 | Certification of Non Compliance (related document:171 Application to Appear Pro Hac Vice filed by Interested Party Mt. McKinley Insurance Co) filed by Kevin Haas on behalf of Kevin Haas. (dmc, ) (Entered: 01/22/2004) |
| 01/20/2004 | 174 | Certification of Non Compliance (related document:169 Application to Appear Pro Hac Vice filed by Interested Party Mt. McKinley Insurance Co) filed by Kevin Haas on behalf of Kevin Haas. (dmc, ) (Entered: 01/22/2004) |
| 01/20/2004 | 245 | Certification of Non Compliance (related document:239 Application to Appear Pro Hac Vice, filed by Interested Party Employers Insurance of Wausau) filed by John J Dillon on behalf of John J Dillon. (wdr, ) (Entered: 01/30/2004) |
| 01/22/2004 | 175 | Transcript of Hearing Held On: 01/06/04 Re: (related document:7 Motion to Extend Time filed by Debtor In Possession Congoleum Corporation, 8 Motion (Generic), Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation, 9 Motion (Generic) filed by Debtor In Possession Congoleum Corporation, 17 Motion to Retain Claims and Noticing Agent filed by Debtor In Possession Congoleum Corporation, 10 Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation, 18 Motion (Generic), Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation, 81 Order on Application for Designation as a Complex Chapter 11 Case, 12 Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation, 13 Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation, 14 Motion (Generic) filed by Debtor In Possession Congoleum Corporation, 6 Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation, 2 Motion for Joint Administration filed by Debtor In Possession Congoleum Corporation, 16 Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation, 41 Motion (Generic)) (Cole Transcription Company, ) (Entered: 01/22/2004) |
| 01/22/2004 | 176 | Chapter 11 Plan Filed by Domenic Pacitti on behalf of Congoleum |

| | | Corporation. (Attachments: # <u>1</u> Exhibit Plan Exhibits A-D# <u>2</u> Exhibit Plan Exhibits E-H)(Pacitti, Domenic) (Entered: 01/22/2004) |
|---|---|---|
| 01/22/2004 | <u>177</u> | Disclosure Statement Filed by Domenic Pacitti on behalf of Congoleum Corporation. (Attachments: # <u>1</u> D/S EXHIBIT A-PLAN# <u>2</u> PLAN EXHIBITS A-D# <u>3</u> PLAN EXHIBITS E-H# <u>4</u> D/S EXHIBITS B-D# <u>5</u> D/S EXHIBITS E-F)(Pacitti, Domenic) (Entered: 01/22/2004) |
| 01/22/2004 | <u>178</u> | Application to Appear Pro Hac Vice Filed by Stephen Ravin on behalf of Swidler Berlin Shereff Friedman, LLP. Objection deadline is 1/29/2004. (Attachments: # <u>1</u> Affidavit Roger Frankel# <u>2</u> Affidavit Jonathan P. Guy# <u>3</u> Affidavit Richard H. Wyron# <u>4</u> Proposed Order) (Ravin, Stephen) (Entered: 01/22/2004) |
| 01/22/2004 | <u>179</u> | Notice of Appearance and Request for Service of Notice filed by Stephen Ravin on behalf of Swidler Berlin Shereff Friedman, LLP. (Ravin, Stephen) (Entered: 01/22/2004) |
| 01/22/2004 | <u>180</u> | Notice of Appearance and Request for Service of Notice filed by Stephen Ravin on behalf of Ravin Greenberg PC. (Ravin, Stephen) (Entered: 01/22/2004) |
| 01/22/2004 | <u>181</u> | Document re: First Modification to Joint Prepackaged Plan of Reorganization Under Chapter 11 of The Bankruptcy Code of Congoleum Corporation, et al. (related document:<u>176</u> Chapter 11 Plan filed by Debtor In Possession Congoleum Corporation) filed by Domenic Pacitti on behalf of Congoleum Corporation. (Pacitti, Domenic) (Entered: 01/22/2004) |
| 01/22/2004 | <u>182</u> | Application to Employ Ernst & Young LLP as Audit and Tax Advisors Filed by Domenic Pacitti on behalf of Congoleum Corporation. Hearing scheduled for 2/9/2004 at 10:00 AM at KCF - Courtroom 2, Trenton.Objection deadline is 1/29/2004. (Attachments: # (1) Notice# <u>2</u> Exhibit A# <u>3</u> Exhibit A to Affidavit# <u>4</u> Exhibit B to Affidavit# <u>5</u> Exhibit C to Affidavit# <u>6</u> Exhibit D to Affidavit# <u>7</u> Proposed Order) (Pacitti, Domenic) (Entered: 01/22/2004) |
| 01/22/2004 | <u>183</u> | Application to Employ Ernst & Young Corporate Finance LLC as Restructuring Advisor Filed by Domenic Pacitti on behalf of Congoleum Corporation. Hearing scheduled for 2/9/2004 at 10:00 AM at KCF - Courtroom 2, Trenton.Objection deadline is 1/29/2004. (Attachments: # <u>1</u> Notice# <u>2</u> Exhibit A# <u>3</u> Exhibit A to Affidavit# <u>4</u> Exhibit B to Affidavit# <u>5</u> Exhibit C to Affidavit# <u>6</u> Index D to Affidavit# <u>7</u> Proposed Order) (Pacitti, Domenic) (Entered: 01/22/2004) |
| 01/22/2004 | <u>184</u> | BNC Certificate of Service - Order No. of Notices: 2. Service Date |

| | | |
|---|---|---|
| | | 01/22/2004. (Related Doc # <u>146</u>) (Admin.) (Entered: 01/23/2004) |
| 01/22/2004 | <u>185</u> | BNC Certificate of Service - Order No. of Notices: 2. Service Date 01/22/2004. (Related Doc # <u>147</u>) (Admin.) (Entered: 01/23/2004) |
| 01/23/2004 | <u>186</u> | Certificate of Service (related document:<u>179</u> Notice of Appearance and Request filed by Attorney Swidler Berlin Shereff Friedman, LLP, <u>180</u> Notice of Appearance and Request filed by Attorney Ravin Greenberg PC) filed by Stephen Ravin on behalf of Ravin Greenberg PC. (Ravin, Stephen) (Entered: 01/23/2004) |
| 01/23/2004 | <u>187</u> | Response to (related document:<u>58</u> Motion re: Motion of Certain Insurers for Declaration that Section 362 (a) of the Bankruptcy Code is not Applicable, or, in the Alternative, for Relief from the Automatic Stay filed by Creditor Century Indemnity Company, Creditor ACE Property and Casualty Insurance Company, Creditor Century American Insurance Company) filed by Stephen V. Falanga on behalf of Travelers Casualty and Surety Company, formerly known as The Aetna Casualty and Surety Company. (Attachments: # <u>1</u> Supplement Certification of Martin Siegal# <u>2</u> Exhibit 26# <u>3</u> Exhibit 27# <u>4</u> Exhibit 28# <u>5</u> Exhibit 29) (Falanga, Stephen) (Entered: 01/23/2004) |
| 01/23/2004 | <u>188</u> | Document re: Notice of Errata (related document:<u>108</u> Application (Generic), Application (Generic) filed by Debtor In Possession Congoleum Corporation) filed by Domenic Pacitti on behalf of Congoleum Corporation. (Pacitti, Domenic) (Entered: 01/23/2004) |
| 01/23/2004 | <u>189</u> | Document re: Notice of Entry of Order Authorizing Debtors to List Addressess of Counsel for Asbestos Claimants in the Creditor Matrix in Lieu of Creditors' Addresses, and to Approve Claimant Notice Procedure (related document:<u>104</u> Order (Generic), Order (Generic)) filed by Domenic Pacitti on behalf of Congoleum Corporation. (Pacitti, Domenic) (Entered: 01/23/2004) |
| 01/23/2004 | <u>190</u> | Certificate of Service (related document:<u>152</u> Document, filed by Debtor In Possession Congoleum Corporation) filed by Domenic Pacitti on behalf of Digital Legal Services, LLC. (Pacitti, Domenic) (Entered: 01/23/2004) |
| 01/23/2004 | <u>191</u> | Certificate of Service to (related document(s) <u>187</u> Response to Motion of Certain Insurers for Declaration). filed by Stephen V. Falanga on behalf of Travelers Casualty and Surety Company, formerly known as The Aetna Casualty and Surety Company. (Falanga, Stephen) Modified on 1/26/2004 (jey, ). CREATED LINK. (Entered: 01/23/2004) |
| 01/23/2004 | <u>192</u> | Application for Attorney Paul R. Koepff, Andrew J. Krackman and |

| | | |
|---|---|---|
| | | Michael F. Cicero to Appear Pro Hac Vice Filed by Amy E. Vulpio on behalf of ACE Property and Casualty Insurance Company, Century American Insurance Company, Century Indemnity Company. Objection deadline is 1/30/2004. (Attachments: # 1 Proposed Order # 2 Certification in Support of Motion for Admission Pro Hac Vice of Paul R. Koepff# 3 Certificate of Service in Support of Motion for Admission Pro Hac Vice of Andrew J. Frackman# 4 Certification in Support of Motion for Admission Pro Hac Vice of Michaael F. Cicero) (Vulpio, Amy) (Entered: 01/23/2004) |
| 01/23/2004 | 193 | Notice of Appearance and Request for Service of Notice filed by Philip Seth Rosen on behalf of AIU Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, American Home Assurance Company, Granite State Insurance Company. (Rosen, Philip) (Entered: 01/23/2004) |
| 01/23/2004 | 194 | Application for Attorney Jantra Van Roy, Esq. and Michael Modansky, Esq. to Appear Pro Hac Vice Filed by Philip Seth Rosen on behalf of AIU Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, American Home Assurance Company, Granite State Insurance Company. Hearing scheduled for 1/29/2004 at 09:00 AM at KCF - Courtroom 2, Trenton.Objection deadline is 1/30/2004. (Attachments: # 1 Certification Philip S. Rosen in Support of Pro Hac Vice Admission of Jantra Van Roy, Esq., and Michael Modansky, Esq.# 2 Certification Jantra Van Roy, Esq., in support of Pro Hac Vice Admission# 3 Certification Michael Modansky in support of pro hac vice admission# 4 Proposed Order Admitting Jantra Van Roy, Esq. and Michael Modanksy, Esq. Pro Hac Vice) (Rosen, Philip) (Entered: 01/23/2004) |
| 01/23/2004 | 195 | Document re: Notice of Filing Executed Debtor-In-Possession Financing Agreements with Congress Financial Corporation filed by Domenic Pacitti on behalf of Congoleum Corporation. (Pacitti, Domenic) (Entered: 01/23/2004) |
| 01/23/2004 | 196 | Application to Employ Gilbert Heintz & Randolph LLP and Dughi Hewit & Palatucci PC as Special Counsel Filed by Domenic Pacitti on behalf of Congoleum Corporation. Hearing scheduled for 2/9/2004 at 10:00 AM at KCF - Courtroom 2, Trenton.Objection deadline is 1/30/2004. (Attachments: # 1 Notice# 2 Exhibit A# 3 Exhibit B# 4 Proposed Order) (Pacitti, Domenic) (Entered: 01/23/2004) |
| 01/23/2004 | 197 | Motion re: declaration that section 362 of the code is not applicable or, alternatively, for relief from stay Filed by Philip Seth Rosen on behalf of National Union Fire Insurance Company of Pittsburgh, PA. Hearing scheduled for 1/26/2004 at 10:00 AM at KCF - Courtroom 2, Trenton. (Rosen, Philip) (THIS IS A JOINDER OF GRANITE STATE INSURANCE CO. & CERTAIN RELATED COMPANIES |

US Bankruptcy Court NJ - Live Database - Docket Report                     Page 33 of 51

| | | |
|---|---|---|
| | | TO MOTION [DOCUMENT 58]. Modified on 1/27/2004 (seg, ). (Entered: 01/23/2004) |
| 01/23/2004 | 198 | Application to Employ Saul Ewing LLP as Counsel for Debtors Filed by Domenic Pacitti on behalf of Congoleum Corporation. Hearing scheduled for 2/9/2004 at 10:00 AM at KCF - Courtroom 2, Trenton. Objection deadline is 1/30/2004. (Attachments: # 1 Exhibit A# 2 Exhibit 1# 3 Statement Under Rule 2016# 4 Proposed Order) (Pacitti, Domenic) (Entered: 01/23/2004) |
| 01/23/2004 | 199 | BNC Certificate of Service - Order No. of Notices: 4. Service Date 01/23/2004. (Related Doc # 153) (Admin.) (Entered: 01/24/2004) |
| 01/23/2004 | 200 | BNC Certificate of Service - Order No. of Notices: 1. Service Date 01/23/2004. (Related Doc # 159) (Admin.) (Entered: 01/24/2004) |
| 01/23/2004 | 201 | BNC Certificate of Service - Order No. of Notices: 1. Service Date 01/23/2004. (Related Doc # 160) (Admin.) (Entered: 01/24/2004) |
| 01/23/2004 | 202 | BNC Certificate of Service - Order No. of Notices: 1. Service Date 01/23/2004. (Related Doc # 161) (Admin.) (Entered: 01/24/2004) |
| 01/23/2004 | 203 | BNC Certificate of Service - Order No. of Notices: 2. Service Date 01/23/2004. (Related Doc # 162) (Admin.) (Entered: 01/24/2004) |
| 01/23/2004 | 204 | BNC Certificate of Service - Order No. of Notices: 1. Service Date 01/23/2004. (Related Doc # 163) (Admin.) (Entered: 01/24/2004) |
| 01/23/2004 | 205 | BNC Certificate of Service - Order No. of Notices: 3. Service Date 01/23/2004. (Related Doc # 164) (Admin.) (Entered: 01/24/2004) |
| 01/26/2004 | 206 | Acting United States Trustee's Memorandum of Law in support of (related document:106 Motion (Generic), Motion (Generic) filed by Interested Party Old Republic Insurance Company) filed by Anthony Sodono III on behalf of United States Trustee. (Sodono, Anthony) (Entered: 01/26/2004) |
| 01/26/2004 | 207 | Notice of Appearance and Request for Service of Notice filed by Brayton & Purcell on behalf of Certain Asbestos Claimants. (wdr, ) (Entered: 01/26/2004) |
| 01/26/2004 | 208 | Corrected Certification Of Mark S. Chehi in support of (related document:79 Application to Appear Pro Hac Vice, filed by Interested Party American Biltrite Inc) filed by Skadden, Arps, SAlate. Meagher & Flom LLP on behalf of American Biltrite Inc. (wdr, ) (Entered: 01/26/2004) |
| | | |

| | | |
|---|---|---|
| 01/26/2004 | 209 | Certificate of Service (related document:93 Notice of Appearance and Request filed by Interested Party American Biltrite Inc) filed by Skadden, Arps, SAlate. Meagher & Flom LLP on behalf of American Biltrite Inc. (wdr, ) (Entered: 01/26/2004) |
| 01/26/2004 | 210 | Response to (related document:106 Motion re: to Unseal Materials Filed Under Seal filed by Interested Party Old Republic Insurance Company) filed by Domenic Pacitti on behalf of Congoleum Corporation. (Pacitti, Domenic) (Entered: 01/26/2004) |
| 01/26/2004 | 211 | Limited Objection to (related document:110 Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation) filed by Amy E. Vulpio on behalf of Century Indemnity Company. (Vulpio, Amy) (Entered: 01/26/2004) |
| 01/26/2004 | 212 | Certificate of Service (related document:211 Objection filed by Creditor Century Indemnity Company) filed by Amy E. Vulpio on behalf of Century Indemnity Company. (Attachments: # 1 Certificate of Service Service List) (Vulpio, Amy) (Entered: 01/26/2004) |
| 01/26/2004 | 213 | Certificate of Service (related document:113 Support,, filed by Unknown Role Type Travelers Casualty and Surety Company, formerly known as The Aetna Casualty and Surety Company) filed by Stephen V. Falanga on behalf of Travelers Casualty and Surety Company, formerly known as The Aetna Casualty and Surety Company. (Falanga, Stephen) (Entered: 01/26/2004) |
| 01/26/2004 | 214 | Objection to (related document:110 Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation) filed by Anthony Sodono III on behalf of United States Trustee. (Sodono, Anthony) (Entered: 01/26/2004) |
| 01/26/2004 | 215 | Objection to (related document:108 Application (Generic), Application (Generic) filed by Debtor In Possession Congoleum Corporation) filed by Mitchell Hausman on behalf of United States Trustee. (Hausman, Mitchell) (Entered: 01/26/2004) |
| 01/26/2004 | | Hearing Rescheduled from 01/26/04. (related document:58 Motion re: Motion of Certain Insurers for Declaration that Section 362 (a) of the Bankruptcy Code is not Applicable, or, in the Alternative, for Relief from the Automatic Stay filed by Creditor Century Indemnity Company, Creditor ACE Property and Casualty Insurance Company, Creditor Century American Insurance Company) Hearing scheduled for 2/2/2004 at 02:00 PM at KCF - Courtroom 2, Trenton. (ckk) (Entered: 01/27/2004) |
| 01/27/2004 | 216 | Objection to (related document:108 Application (Generic), Application (Generic) filed by Debtor In Possession Congoleum |

| | | |
|---|---|---|
| | | Corporation) filed by Carol A. Slocum on behalf of First State Insurance Co., Twin City Fire Insurance Company. (Attachments: # 1 Certification Declaration of Nancy Manzer# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D) (Slocum, Carol) (Entered: 01/27/2004) |
| 01/27/2004 | 217 | Exhibit (related document:216 Objection, filed by Creditor Twin City Fire Insurance Company, Creditor First State Insurance Co.) filed by Carol A. Slocum on behalf of First State Insurance Co., Twin City Fire Insurance Company. (Attachments: # 1 Exhibit A (Parts 1 and 2) to Declaration of Nancy L. Manzer) (Slocum, Carol) (Entered: 01/27/2004) |
| 01/27/2004 | 218 | Document re: Letter to Judge Ferguson enclosing decision in ACandS Bankruptcy Case (related document:97 Document filed by Debtor In Possession Congoleum Corporation) filed by Stephen V. Falanga on behalf of Travelers Casualty and Surety Company, formerly known as The Aetna Casualty and Surety Company. (Attachments: # 1 Exhibit Decision in ACandS Bankruptcy Case) (Falanga, Stephen) (Entered: 01/27/2004) |
| 01/27/2004 | 219 | Notice of Appearance and Request for Service of Notice filed by Jack M. Zackin on behalf of Numerous Individuals Holding Asbestos-Related Personal Injury/Wrongful Death Claims. (Zackin, Jack) (Entered: 01/27/2004) |
| 01/27/2004 | 220 | Certificate of Service (related document:183 Application to Employ, filed by Debtor In Possession Congoleum Corporation, 182 Application to Employ, filed by Debtor In Possession Congoleum Corporation) filed by Domenic Pacitti on behalf of Digital Legal Services, LLC. (Pacitti, Domenic) (Entered: 01/27/2004) |
| 01/27/2004 | 221 | Certificate of Service (related document:188 Document filed by Debtor In Possession Congoleum Corporation, 189 Document, filed by Debtor In Possession Congoleum Corporation) filed by Domenic Pacitti on behalf of Digital Legal Services, LLC. (Pacitti, Domenic) (Entered: 01/27/2004) |
| 01/27/2004 | 222 | Application to Employ SSG Capital Advisors, L.P. as Financial Advisors to the Debtors Filed by Domenic Pacitti on behalf of Congoleum Corporation. Hearing scheduled for 2/9/2004 at 10:00 AM at KCF - Courtroom 2, Trenton.Objection deadline is 2/3/2004. (Attachments: # 1 Exhibit A# 2 Exhibit 1# 3 Proposed Order) (Pacitti, Domenic) (Entered: 01/27/2004) |
| 01/27/2004 | 223 | Certificate of Service (related document:216 Objection, filed by Creditor Twin City Fire Insurance Company, Creditor First State Insurance Co.) filed by Carol A. Slocum on behalf of First State Insurance Co., Twin City Fire Insurance Company. (Slocum, Carol) |

| | | |
|---|---|---|
| | | (Entered: 01/27/2004) |
| 01/27/2004 | | Hearing Scheduled. (related document:108 Application re: Debtors' Motion for Entry of an Order Approving and Authorizing the Appointment of R. Scott Williams as the Legal Representative for Future Asbestos Personal Injury Claimants Filed by Domenic Pacitti on behalf of Congoleum Corporation. Hearing scheduled for 2/9/2004 at 02:00 PM at KCF - Courtroom 2, Trenton. (fed, ) (Entered: 01/27/2004) |
| 01/27/2004 | 224 | Certificate of Service (related document:206 Support, filed by U.S. Trustee United States Trustee) filed by Anthony Sodono III on behalf of United States Trustee. (Sodono, Anthony) (Entered: 01/27/2004) |
| 01/27/2004 | 225 | Certificate of Service (related document:214 Objection filed by U.S. Trustee United States Trustee) filed by Anthony Sodono III on behalf of United States Trustee. (Sodono, Anthony) (Entered: 01/27/2004) |
| 01/27/2004 | 226 | Notice of Appearance and Request for Service of Notice filed by George R. Hirsch on behalf of New Jersey Property-Liability Insurance Guaranty Association and New Jersey Surplus Lines Insurance Guaranty Fund. (Hirsch, George) (Entered: 01/27/2004) |
| 01/29/2004 | 227 | Certificate of Service (related document:193 Notice of Appearance and Request filed by Creditor American Home Assurance Company, Creditor National Union Fire Insurance Company of Pittsburgh, PA, Creditor Granite State Insurance Company, Creditor AIU Insurance Company) filed by Philip Seth Rosen on behalf of Granite State Insurance Company, American Home Assurance Co., National Union Fire Insurance Co. of Pittsburgh, PA and AIU Insurance Co. (Rosen, Philip) Modified TEXT on 1/29/2004 (clb ). (Entered: 01/29/2004) |
| 01/29/2004 | 228 | Application for Attorney Randall A. Rios and Patrick E. Griffin, Jr. to Appear Pro Hac Vice Filed by Jack M. Zackin on behalf of Numerous Individuals Holding Asbestos-Related Personal Injury/Wrongful Death Claims. Objection deadline is 2/5/2004. (Zackin, Jack) (Entered: 01/29/2004) |
| 01/29/2004 | 229 | Application for Attorney Michael S. Davis to Appear Pro Hac Vice Filed by Philip Seth Rosen on behalf of AIU Insurance Company, American Home Assurance Company, Granite State Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA. Hearing scheduled for 2/4/2004 at 09:00 AM at KCF - Courtroom 2, Trenton. Objection deadline is 2/5/2004. (Attachments: # 1 Certification Philip S. Rosen in support of Pro Hac Vice Admission of Michael S. Davis# 2 Certification Michael S. Davis, Esq., in support of pro hac vice admission# 3 Proposed Order Admitting Michael S. Davis, Esq., pro hac vice) (Rosen, Philip) |

US Bankruptcy Court NJ - Live Database - Docket Report          **Page 37 of 51**

| | | |
|---|---|---|
| | | (Entered: 01/29/2004) |
| 01/29/2004 | 230 | Certificate of Service (related document:210 Response filed by Debtor In Possession Congoleum Corporation) filed by Domenic Pacitti on behalf of Saul Ewing LLP. (Pacitti, Domenic) (Entered: 01/29/2004) |
| 01/29/2004 | 231 | Certification of No Objection (related document:18 Motion (Generic), Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation) filed by Domenic Pacitti on behalf of Congoleum Corporation. (Pacitti, Domenic) (Entered: 01/29/2004) |
| 01/29/2004 | 232 | Certification of No Objection (related document:109 Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation) filed by Domenic Pacitti on behalf of Congoleum Corporation. (Pacitti, Domenic) (Entered: 01/29/2004) |
| 01/29/2004 | 233 | Application for Attorney Norman L. Pernick to Appear Pro Hac Vice Filed by Domenic Pacitti on behalf of Congoleum Corporation. Objection deadline is 2/5/2004. (Attachments: # 1 Proposed Order) (Pacitti, Domenic) (Entered: 01/29/2004) |
| 01/29/2004 | | Application to Employ, Deadline Terminated, Reason: Hearing Scheduled (No hearing required,) Deadline is set. (cls, ) (Entered: 01/29/2004) |
| 01/29/2004 | | Application to Appear Pro Hac Vice Deadline Terminated, Reason: No Hearing Required, Deadline is set (cls, ) (Entered: 01/29/2004) |
| 01/29/2004 | 234 | Limited Objection to (related document:183 Application to Employ, filed by Debtor In Possession Congoleum Corporation, 182 Application to Employ, filed by Debtor In Possession Congoleum Corporation) filed by Margaret Lambe Jurow on behalf of United States Trustee. (Jurow, Margaret) (Entered: 01/29/2004) |
| 01/29/2004 | 235 | Application for Attorney John R. Gerstein, Sheila R. Caudle, and Charles I Hadden to Appear Pro Hac Vice Filed by Henry M Price on behalf of Continental Casualty Co., Continental Insurance Co. Hearing scheduled for 2/24/2004 at 10:00 AM at KCF - Courtroom 2, Trenton.Objection deadline is 2/5/2004. (Attachments: # 1 Certification Certification of John R. Gerstein# 2 Certification Certification of Sheila R. Caudle# 3 Certification Certification of Charles I. Hadden# 4 Proposed Order Granting Admission) (Price, Henry) (Entered: 01/29/2004) |
| 01/29/2004 | 236 | Application for Attorney David C. Christian and Jason J. DeJonker to Appear Pro Hac Vice Filed by Henry M Price on behalf of |

| | | |
|---|---|---|
| | | Continental Casualty Co., Continental Insurance Co. Hearing scheduled for 2/24/2004 at 10:00 AM at KCF - Courtroom 2, Trenton.Objection deadline is 2/5/2004. (Attachments: # 1 Certification of David C. Christian# 2 Certification of Jason DeJonker# 3 Proposed Order Granting Admission) (Price, Henry) (Entered: 01/29/2004) |
| 01/30/2004 | | Application to Appear Pro Hac Vice, (RE: document #235) Deadline Terminated, Reason: No hearing required for Application, (Deadline is set) (cls, ) (Entered: 01/30/2004) |
| 01/30/2004 | | Application to Appear Pro Hac Vice (Re: Document #236). Deadline Terminated, Reason: No hearing required for Application, (deadline is set). (cls, ) (Entered: 01/30/2004) |
| 01/30/2004 | 237 | Certification of No Objection (related document:18 Motion (Generic), Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation) filed by Domenic Pacitti on behalf of Congoleum Corporation. (Attachments: # 1 Proposed Order) (Pacitti, Domenic) (Entered: 01/30/2004) |
| 01/30/2004 | 238 | Document re: Proposed Order Establishing Case Management and Administrative Procedures filed by Domenic Pacitti on behalf of Congoleum Corporation. (Pacitti, Domenic) (Entered: 01/30/2004) |
| 01/30/2004 | 239 | Application for Attorney John J. Dillon to Appear Pro Hac Vice Filed by Dillon Hamilton, Altman, Canale on behalf of Employers Insurance of Wausau. Objection deadline is 2/6/2004. (Attachments: # 1 Motion To Appear Pro Hac Vice# 2 Proposed Order # 3 Certificate of Service) (wdr, ) (Entered: 01/30/2004) |
| 01/30/2004 | 240 | Certificate of Service (related document:197 Motion (Generic), Motion (Generic) filed by Creditor National Union Fire Insurance Company of Pittsburgh, PA, 229 Application to Appear Pro Hac Vice,, filed by Creditor American Home Assurance Company, Creditor National Union Fire Insurance Company of Pittsburgh, PA, Creditor Granite State Insurance Company, Creditor AIU Insurance Company) filed by Philip Seth Rosen on behalf of AIU Insurance Company, American Home Assurance Company, Granite State Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA. (Rosen, Philip) (Entered: 01/30/2004) |
| 01/30/2004 | 241 | Limited Objection to (related document:196 Application to Employ, filed by Debtor In Possession Congoleum Corporation) filed by Amy E. Vulpio on behalf of Century Indemnity Company. (Attachments: # 1 Exhibit Confidentiality Agreement) (Vulpio, Amy) (Entered: 01/30/2004) |
| | | |

| 01/30/2004 | 242 | Master Service List filed by Domenic Pacitti on behalf of Congoleum Corporation. (Pacitti, Domenic) (Entered: 01/30/2004) |
| 01/30/2004 | 243 | Document re: Core Service List filed by Domenic Pacitti on behalf of Congoleum Corporation. (Pacitti, Domenic) (Entered: 01/30/2004) |
| 01/30/2004 | 244 | Motion re: to Place Under Seal Certain Insurers' Limited Objection to Debtors' Application to Employ Gilbert Heintz Filed by Amy E. Vulpio on behalf of Century American Insurance Company. Hearing scheduled for 2/2/2004 at 02:00 PM at KCF - Courtroom 2, Trenton. (Attachments: # 1 Exhibit Confidentiality Order# 2 Proposed Order) (Vulpio, Amy) (MODIFIED TO REFLECT HEARING DATE ENTERED IN ERROR). Modified on 1/30/2004 (cls, ). (Entered: 01/30/2004) |
| 01/30/2004 | | Motion to place under seal (re: document #244) Deadline Terminated, Reason: Application to shorten time to be filed (cls, ) (Entered: 01/30/2004) |
| 01/30/2004 | 246 | Application to Shorten Time (related document:244 Motion re: to Place Under Seal Certain Insurers' Limited Objection to Debtors' Application to Employ Gilbert Heintz filed by Creditor Century American Insurance Company) Filed by Amy E. Vulpio on behalf of Century Indemnity Company. Hearing scheduled for 2/9/2004 at 10:00 AM at KCF - Courtroom 2, Trenton. (Attachments: # 1 Proposed Order) (Vulpio, Amy) (PLEASE DISREGARD HEARING DATE, NO HEARING REQUIRED FOR THIS APPLICATION). Modified on 2/2/2004 (cls, ). (Entered: 01/30/2004) |
| 02/02/2004 | 247 | Document re: Notice of Designation of Trade Publications for Motion for an Order (i) Establishing Asbestos Property Damage Claim Bar Date; (ii) Approving Property Damage Proof of Claim Form; and (iii) Approving Scope and Form of Notice filed by Domenic Pacitti on behalf of Congoleum Corporation.(Pacitti, Domenic) Created link to Related Document 111 ). ;Modified on 2/2/2004 (fed, ). (Entered: 02/02/2004) |
| 02/02/2004 | | Application to Shorten time (NO HEARING REQUIRED FOR APPLICATION). RE: Document #246 Deadline Terminated, Reason: No hearing required for Application to Shorten Time (cls, ) (Entered: 02/02/2004) |
| 02/02/2004 | 248 | Transcript of Hearing Held On: 01/26/04 Re: (related document:58 Motion (Generic), Motion (Generic), Motion (Generic) filed by Creditor Century Indemnity Company, Creditor ACE Property and Casualty Insurance Company, Creditor Century American Insurance Company) (Cole Transcription Company, ) (Entered: 02/02/2004) |

US Bankruptcy Court NJ - Live Database - Docket Report

| 02/02/2004 | 249 | Certificate of Service (related document:241 Objection, filed by Creditor Century Indemnity Company) filed by Amy E. Vulpio on behalf of Century Indemnity Company. (Attachments: # 1 Certificate of Service Service List) (Vulpio, Amy) (Entered: 02/02/2004) |
|---|---|---|
| 02/02/2004 | 250 | Supplemental Certificate of Service (related document:58 Motion (Generic), Motion (Generic), Motion (Generic) filed by Creditor Century Indemnity Company, Creditor ACE Property and Casualty Insurance Company, Creditor Century American Insurance Company) filed by Amy E. Vulpio on behalf of Century Indemnity Company. (Attachments: # 1 Certificate of Service Service List) (Vulpio, Amy) (Entered: 02/02/2004) |
| 02/02/2004 | 251 | Cover Sheet Filed at Request of Court in support of (related document:241 Objection, filed by Creditor Century Indemnity Company) filed by Amy E. Vulpio on behalf of Century Indemnity Company. (Vulpio, Amy) (Entered: 02/02/2004) |
| 02/02/2004 | 252 | Order Denying Application to Shorten Time (related document:244 Motion re: to Place Under Seal Certain Insurers' Limited Objection to Debtors' Application to Employ Gilbert Heintz filed by Creditor Century American Insurance Company). The following parties were served: Attorney for Movant and UST. Signed on 2/2/2004. Hearing scheduled for 2/23/2004 at 10:00 AM at KCF - Courtroom 2, Trenton. (fed, ) (Entered: 02/02/2004) |
| 02/02/2004 | 253 | Limited Objection to (related document:198 Application to Employ, filed by Debtor In Possession Congoleum Corporation) filed by Mitchell Hausman on behalf of United States Trustee. (Hausman, Mitchell) (Entered: 02/02/2004) |
| 02/02/2004 | 254 | Response to (related document:50 Objection, filed by Creditor Century Indemnity Company, Creditor ACE American Insurance Company, Creditor ACE Property and Casualty Insurance Company) filed by Domenic Pacitti on behalf of Congoleum Corporation. (Pacitti, Domenic) (Entered: 02/02/2004) |
| 02/02/2004 | 255 | Correspondence re: Letter From Bank of New York filed by Troy Valentine. (wdr, ) Modified on 2/3/2004 (cls, ). (Entered: 02/03/2004) |
| 02/02/2004 | 256 | Notice of Appearance and Request for Service of Notice filed by John C. Kilgannon on behalf of Teamsters Funds of Phila. and Vicinity. (wdr, ) (Entered: 02/03/2004) |
| 02/02/2004 | 257 | Notice of Appearance and Request for Service of Notice filed by John C. Kilgannon on behalf of Teamsters Funds of Phila. and Vicinity. (wdr, ) (FILING ERROR - INCORRECT DOCUMENT AND PDF, TO BE CORRECTED BY THE COURT, CORRECT DOCUMENT |

|  |  |  |
|---|---|---|
|  |  | IS NUMBER 259.) Modified on 2/3/2004 (cls, ). (Entered: 02/03/2004) |
| 02/02/2004 |  | Minute of Hearing Held, OUTCOME: Order to be Submitted by T. Schiavoni.(related document:58 Motion re: Motion of Certain Insurers for Declaration that Section 362 (a) of the Bankruptcy Code is not Applicable, or, in the Alternative, for Relief from the Automatic Stay filed by Creditor Century Indemnity Company, Creditor ACE Property and Casualty Insurance Company, Creditor Century American Insurance Company) (ckk) (Entered: 02/03/2004) |
| 02/02/2004 |  | Minute of Hearing Held, OUTCOME: Granted.(related document:18 Motion re: for Interim and Final Orders Pursuant to Sections 363(c) and 364(c) of the Bankruptcy Code and Bankruptcy Rule 4001 (1) Authorizing the Use of Cash Collateral, (2) Authorizing Debtors to Obtain Interim Post-Petition Financing, (3) Granting Senior Liens and Priority Administrative Expense Status, (4) Modifying the Automatic Stay, (5) Authorizing Debtors to Enter Into Agreements with Congress Financial Corporation, and (6) Prescribing Form and Manner of Notice and Time for Final Hearing Under Bankruptcy Rule 4001(c) filed by Debtor In Possession Congoleum Corporation) (ckk) (Entered: 02/03/2004) |
| 02/02/2004 |  | Minute of Hearing Held, OUTCOME: Order to be Submitted by D. Pacitti.(related document:97 Document re: Notice of Status Conference filed by Debtor In Possession Congoleum Corporation) (ckk) (Entered: 02/03/2004) |
| 02/02/2004 |  | Minute of Hearing Held, OUTCOME: Order to be Submitted by S. Caudle.(related document:106 Motion re: to Unseal Materials Filed Under Seal filed by Interested Party Old Republic Insurance Company) (ckk) (Entered: 02/03/2004) |
| 02/02/2004 |  | Minute of Hearing Held, OUTCOME: Order to be Submitted by D. Pacitti.(related document:109 Motion re: Motion for Administrative Order Pursuant to 11 U.S.C. Sections 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals filed by Debtor In Possession Congoleum Corporation) (ckk) (Entered: 02/03/2004) |
| 02/02/2004 |  | Hearing Rescheduled from 02/02/04. (related document:110 Motion re: Verified Motion for Authority to Employ and Compensate Professionals in the Ordinary Course of Business filed by Debtor In Possession Congoleum Corporation) Hearing scheduled for 2/9/2004 at 10:00 AM at KCF - Courtroom 2, Trenton. (ckk) (Entered: 02/03/2004) |
| 02/02/2004 |  | Minute of Hearing Held, OUTCOME: Granted.(related document:111 |

| | | |
|---|---|---|
| | | Motion re: for Order (i) Establishing Asbestos Property Damage Claim Bar Date; (ii) Approving Property Damage Proof of Claim Form; and (iii) Approving Scope and Form of Notice filed by Debtor In Possession Congoleum Corporation) (ckk) (Entered: 02/03/2004) |
| 02/02/2004 | | Amended Minute of Hearing Held, OUTCOME: Granted (Final Order to be Submitted by D. Pacitti).(related document:18 Motion re: for Interim and Final Orders Pursuant to Sections 363(c) and 364(c) of the Bankruptcy Code and Bankruptcy Rule 4001 (1) Authorizing the Use of Cash Collateral, (2) Authorizing Debtors to Obtain Interim Post-Petition Financing, (3) Granting Senior Liens and Priority Administrative Expense Status, (4) Modifying the Automatic Stay, (5) Authorizing Debtors to Enter Into Agreements with Congress Financial Corporation, and (6) Prescribing Form and Manner of Notice and Time for Final Hearing Under Bankruptcy Rule 4001(c) filed by Debtor In Possession Congoleum Corporation) (ckk) (Entered: 02/03/2004) |
| 02/02/2004 | 258 | Response to (related document:211 Objection filed by Creditor Century Indemnity Company) filed by Winston & Strawn on behalf of American Biltrite Inc. (Attachments: # 1 Certificate of Service # 2 Deposition of Howard Feist) (wdr, ) (Entered: 02/03/2004) |
| 02/02/2004 | 259 | Certification of Non Compliance (related document:256 Notice of Appearance and Request filed by Creditor Teamsters Funds of Phila. and Vicinity) filed by John C. Kilgannon on behalf of John C. Kilgannon . (cls, ) Modified on 2/5/2004 (ehl, ). (Entered: 02/03/2004) |
| 02/03/2004 | | Hearing Scheduled. (related document:182 Application to Employ, filed by Debtor In Possession Congoleum Corporation) Hearing scheduled for 2/9/2004 at 10:00 AM at KCF - Courtroom 2, Trenton. (fed, ) (Entered: 02/03/2004) |
| 02/03/2004 | | Hearing Scheduled. (related document:183 Application to Employ, filed by Debtor In Possession Congoleum Corporation) Hearing scheduled for 2/9/2004 at 10:00 AM at KCF - Courtroom 2, Trenton. (fed, ) (Entered: 02/03/2004) |
| 02/03/2004 | | Hearing Scheduled. (related document:196 Application to Employ, filed by Debtor In Possession Congoleum Corporation) Hearing scheduled for 2/9/2004 at 10:00 AM at KCF - Courtroom 2, Trenton. (fed, ) (Entered: 02/03/2004) |
| 02/03/2004 | 260 | joinder in support of (related document:241 Objection, filed by Creditor Century Indemnity Company) filed by Henry M Price on behalf of Continental Casualty Co., Continental Insurance Co. (Price, Henry) (Entered: 02/03/2004) |

US Bankruptcy Court NJ - Live Database - Docket Report

| | | |
|---|---|---|
| 02/03/2004 | 261 | Order Granting Motion re: (i) Establishing Asbestos Property Damage Claim Bar Date; (ii) Approving Property Damage Proof Of Claim Form; And (iii) Approving Scope And Form Of Notice. (Related Doc # 111) The following parties were served: US Trustee, Attorney for Debtor. Signed on 2/3/2004. (srm, ) (Entered: 02/04/2004) |
| 02/03/2004 | 262 | Amended Order (i) Establishing Asbestos Property Damage Claim Bar Date; (ii) Approving Property Damage Proof Of Claim Form; And (iii) Approving Scope And Form Of Notice (related document:261 Order. The following parties were served: US Trustee, Attorney for Debtor. Signed on 2/3/2004. (srm, ) (Entered: 02/04/2004) |
| 02/03/2004 | | Deadline(s) Set(related document:262 Proofs of Claim due by 5/3/2004. (fed, ) (Entered: 02/04/2004) |
| 02/03/2004 | 263 | Order Granting Application To Allow Attorney Matthew Funk, Esq. to Appear Pro Hac Vice (Related Doc # 121) The following parties were served: US Trustee, Attorney for Debtor, Attorneys for Travelers Casualty And Surety Company. Signed on 2/3/2004. (srm, ) (Entered: 02/04/2004) |
| 02/03/2004 | 264 | Order Granting Application To Allow Attorney Jonathan N. Helfat, Esq., and Daniel F. Fiorillo, Esq. to Appear Pro Hac Vice (Related Doc # 122) The following parties were served: US Trustee, Attorney for Debtor, Otterbourg et al.. Signed on 2/3/2004. (srm, ) (Entered: 02/04/2004) |
| 02/03/2004 | 265 | Order Granting Application To Allow Attorney Edward A. Cohen, Esq., and Dena Economou, Esq. to Appear Pro Hac Vice (Related Doc # 130) The following parties were served: US Trustee, Attorney for Debtor, Attorney for Old Republic Insurance Company. Signed on 2/3/2004. (srm, ) (Entered: 02/04/2004) |
| 02/03/2004 | 266 | Order Granting Application To Allow Attorney Jennifer M. Graff, Esq. to Appear Pro Hac Vice (Related Doc # 169) The following parties were served: US Trustee, Attorney for Debtor, Jennifer M. Graff, Esq.. Signed on 2/3/2004. (srm, ) (Entered: 02/04/2004) |
| 02/03/2004 | 267 | Order Granting Application To Allow Attorney John Ashmead, Esq., and Ronald Cohen, Esq. to Appear Pro Hac Vice (Related Doc # 166) The following parties were served: US Trustee, Attorney for Debtor, John Ashmead, Esq., Ronald Cohen, Esq.. Signed on 2/3/2004. (srm, ) (Entered: 02/04/2004) |
| 02/04/2004 | 268 | Document re: Notice of Hearings filed by Domenic Pacitti on behalf of Congoleum Corporation. (Pacitti, Domenic)Created link to |

| | | |
|---|---|---|
| | | 108,110,182,183,196,198 and 222 Modified on 2/4/2004 (fed, ). (Entered: 02/04/2004) |
| 02/04/2004 | 269 | Supplemental Certificate of Service (related document:50 Objection, filed by Creditor Century Indemnity Company, Creditor ACE American Insurance Company, Creditor ACE Property and Casualty Insurance Company) filed by Amy E. Vulpio on behalf of Century Indemnity Company. (Attachments: # 1 Certificate of Service Supplemental Service List) (Vulpio, Amy) (Entered: 02/04/2004) |
| 02/04/2004 | 270 | Order Granting Application To Allow Attorney David P. McClain, Esq. to Appear Pro Hac Vice (Related Doc # 170) The following parties were served: US Trustee, Attorney for Debtor, David P. McClain, Esq.. Signed on 2/4/2004. (srm, ) (Entered: 02/05/2004) |
| 02/04/2004 | 271 | Order Granting Application To Allow Attorney Daniel F. Patchin, Esq. to Appear Pro Hac Vice (Related Doc # 171) The following parties were served: US Trustee, Attorney for Debtor, Daniel F. Patchin, Esq.. Signed on 2/4/2004. (srm, ) (Entered: 02/05/2004) |
| 02/04/2004 | 272 | Order Granting Application To Allow Attorney Roger Frankel, Esq., Richard H. Wyron, Esq., Jonathan P. Guy, Esq. to Appear Pro Hac Vice (Related Doc # 178) The following parties were served: US Trustee, Attorney for Debtor, Roger Frankel, Esq., Richard H. Wyron, Esq., Jonathan P. Guy, Esq.. Signed on 2/4/2004. (srm, ) (Entered: 02/05/2004) |
| 02/04/2004 | 273 | Order Granting Application To Allow Attorney Paul R. Koepff, Esq., Andrew J. Frackman, Esq., Michael F. Cicero, Esq. to Appear Pro Hac Vice (Related Doc # 192) The following parties were served: US Trustee, Attorney for Debtor, Paul R. Koepff, Esq., Andrew J. Frackman, Esq., Michael F. Cicero, Esq.. Signed on 2/4/2004. (srm, ) (Entered: 02/05/2004) |
| 02/04/2004 | 274 | Order Granting Application To Allow Attorney Jantra Van Roy, Esq., Michael Modansky, Esq. to Appear Pro Hac Vice (Related Doc # 194) The following parties were served: US Trustee, Attorney for Debtor, Jantra Van Roy, Esq., Zeichner et al.. Signed on 2/4/2004. (srm, ) (Entered: 02/05/2004) |
| 02/04/2004 | 275 | Order Granting Application To Allow Attorney Randall Rios, Esq., Patrick Griffin, Jr., Esq. to Appear Pro Hac Vice (Related Doc # 228) The following parties were served: US Trustee, Attorney for Debtor, Sills et al.. Signed on 2/4/2004. (srm, ) (Entered: 02/05/2004) |
| 02/05/2004 | 276 | Order Granting Application To Allow Attorney John J. Dillon, Esq. to Appear Pro Hac Vice (Related Doc # 239) The following parties were served: US Trustee, Attorney for Debtor, John J. Dillon, Esq.. |

| | | |
|---|---|---|
| | | Signed on 2/5/2004. (srm, ) (Entered: 02/05/2004) |
| 02/05/2004 | 277 | Response to (related document:108 Application re: Debtors' Motion for Entry of an Order Approving and Authorizing the Appointment of R. Scott Williams as the Legal Representative for Future Asbestos Personal Injury Claimants filed by Debtor In Possession Congoleum Corporation, 216 Objection, filed by Creditor Twin City Fire Insurance Company, Creditor First State Insurance Co.) filed by Stephen Ravin on behalf of R. Scott Williams. (Attachments: # 1 Exhibit "A") (Ravin, Stephen) (Entered: 02/05/2004) |
| 02/05/2004 | 278 | Certificate of Service (related document:247 Document, filed by Debtor In Possession Congoleum Corporation) filed by Domenic Pacitti on behalf of Digital Legal Services, LLC. (Pacitti, Domenic) (Entered: 02/05/2004) |
| 02/05/2004 | 279 | Certificate of Service (related document:254 Response, filed by Debtor In Possession Congoleum Corporation) filed by Domenic Pacitti on behalf of Digital Legal Services, LLC. (Pacitti, Domenic) (Entered: 02/05/2004) |
| 02/05/2004 | 280 | Certificate of Service (related document:262 Order (Generic), Order (Generic)) filed by Domenic Pacitti on behalf of Digital Legal Services, LLC. (Pacitti, Domenic) (Entered: 02/05/2004) |
| 02/05/2004 | 281 | Certificate of Service (related document:268 Document filed by Debtor In Possession Congoleum Corporation) filed by Domenic Pacitti on behalf of Digital Legal Services, LLC. (Pacitti, Domenic) (Entered: 02/05/2004) |
| 02/06/2004 | 282 | Certificate of Service (related document:277 Response,, filed by Other Prof. R. Scott Williams) filed by Brian L. Baker on behalf of R. Scott Williams. (Baker, Brian) (Entered: 02/06/2004) |
| 02/06/2004 | 283 | Certificate of Service (related document:277 Response,, filed by Other Prof. R. Scott Williams) filed by Brian L. Baker on behalf of R. Scott Williams. (Baker, Brian) (Entered: 02/06/2004) |
| 02/06/2004 | 284 | BNC Certificate of Service - Order No. of Notices: 2. Service Date 02/06/2004. (Related Doc # 264) (Admin.) (Entered: 02/09/2004) |
| 02/06/2004 | 285 | BNC Certificate of Service - Order No. of Notices: 1. Service Date 02/06/2004. (Related Doc # 266) (Admin.) (Entered: 02/09/2004) |
| 02/06/2004 | 286 | BNC Certificate of Service - Order No. of Notices: 2. Service Date 02/06/2004. (Related Doc # 267) (Admin.) (Entered: 02/09/2004) |
| | | |

| 02/07/2004 | 287 | BNC Certificate of Service - Order No. of Notices: 1. Service Date 02/07/2004. (Related Doc # 270) (Admin.) (Entered: 02/09/2004) |
| 02/07/2004 | 288 | BNC Certificate of Service - Order No. of Notices: 1. Service Date 02/07/2004. (Related Doc # 271) (Admin.) (Entered: 02/09/2004) |
| 02/07/2004 | 289 | BNC Certificate of Service - Order No. of Notices: 3. Service Date 02/07/2004. (Related Doc # 272) (Admin.) (Entered: 02/09/2004) |
| 02/07/2004 | 290 | BNC Certificate of Service - Order No. of Notices: 3. Service Date 02/07/2004. (Related Doc # 273) (Admin.) (Entered: 02/09/2004) |
| 02/07/2004 | 291 | BNC Certificate of Service - Order No. of Notices: 2. Service Date 02/07/2004. (Related Doc # 274) (Admin.) (Entered: 02/09/2004) |
| 02/07/2004 | 292 | BNC Certificate of Service - Order No. of Notices: 1. Service Date 02/07/2004. (Related Doc # 276) (Admin.) (Entered: 02/09/2004) |
| 02/09/2004 | 293 | Order Granting Application To Allow Attorney Norman Pernick, Esq. to Appear Pro Hac Vice (Related Doc # 233) The following parties were served: US Trustee, Attorney for Debtor, Norman Pernick, Esq.. Signed on 2/9/2004. (srm, ) (Entered: 02/09/2004) |
| 02/09/2004 | 294 | Transcript of Hearing Held On: 2/2/04 Re: (related document:97 Document filed by Debtor In Possession Congoleum Corporation, 106 Motion (Generic), Motion (Generic) filed by Interested Party Old Republic Insurance Company, 18 Motion (Generic), Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation, 109 Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation, 110 Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation, 111 Motion (Generic), Motion (Generic) filed by Debtor In Possession Congoleum Corporation, 58 Motion (Generic), Motion (Generic), Motion (Generic) filed by Creditor Century Indemnity Company, Creditor ACE Property and Casualty Insurance Company, Creditor Century American Insurance Company) (Cole Transcription Company, ) ) (Entered: 02/09/2004) |
| 02/09/2004 | 295 | Order Granting Application To Allow Attorney John R. Gerstein, Esq., Sheila R. Caudle, Esq., and Charles I. Hadden, Esq. to Appear Pro Hac Vice (Related Doc # 235) The following parties were served: US Trustee, Attorney for Debtor, John R. Gerstein, Esq., Sheila R. Caudle, Esq., Charles I. Hadden, Esq.. Signed on 2/9/2004. (srm, ) (Entered: 02/09/2004) |
| 02/09/2004 | 296 | Order Granting Application To Allow Attorney David C. Christian II, Esq., and Jason J. DeJonker, Esq. to Appear Pro Hac Vice (Related |

| | | |
|---|---|---|
| | | Doc # 236) The following parties were served: US Trustee, Attorney for Debtor, David C. Christian II, Esq., Jason J. DeJonker, Esq.. Signed on 2/9/2004. (srm, ) (Entered: 02/09/2004) |
| 02/09/2004 | 297 | Response to (related document:198 Application to Employ Saul Ewing LLP as Counsel for Debtors filed by Debtor In Possession Congoleum Corporation) filed by Amy E. Vulpio on behalf of ACE American Insurance Company, ACE Property and Casualty Insurance Company, Century Indemnity Company. (Vulpio, Amy) (Entered: 02/09/2004) |
| 02/09/2004 | 298 | Notice of Appearance and Request for Service of Notice filed by Jeffrey M. Rosenthal on behalf of Wachovia Bank, N.A.. (Rosenthal, Jeffrey) (Entered: 02/09/2004) |
| 02/09/2004 | 299 | Application for Attorney Rick L. Frimmer to Appear Pro Hac Vice Filed by Jeffrey M. Rosenthal on behalf of Wachovia Bank, N.A.. Objection deadline is 2/17/2004. (Attachments: # 1 Affidavit of Rick L. Frimmer, Esq.# 2 Proposed Order) (Rosenthal, Jeffrey) (Entered: 02/09/2004) |
| 02/09/2004 | 300 | Document re: Reply Certification of Martin Siegal (related document:297 Response, filed by Creditor Century Indemnity Company, Creditor ACE American Insurance Company, Creditor ACE Property and Casualty Insurance Company) filed by Amy E. Vulpio on behalf of ACE American Insurance Company, ACE Property and Casualty Insurance Company, Century Indemnity Company. (Attachments: # 1 Exhibit #1# 2 Exhibit #2# 3 Exhibit #3# 4 Exhibit #4# 5 Exhibit #5# 6 Exhibit #6# 7 Exhibit #7# 8 Exhibit #8# 9 Exhibit #9# 10 Exhibit #10# 11 Exhibit #11# 12 Exhibit #12) (Vulpio, Amy) (Entered: 02/09/2004) |
| 02/09/2004 | 301 | Application for Attorney Scott D. Cousins to Appear Pro Hac Vice Filed by Jeffrey M. Rosenthal on behalf of Wachovia Bank, N.A.. Objection deadline is 2/17/2004. (Attachments: # 1 Affidavit of Scott D. Cousins# 2 Proposed Order) (Rosenthal, Jeffrey) (Entered: 02/09/2004) |
| 02/09/2004 | 302 | Document re: Reply Certification of Joy Bernstein (related document:297 Response, filed by Creditor Century Indemnity Company, Creditor ACE American Insurance Company, Creditor ACE Property and Casualty Insurance Company, 198 Application to Employ, filed by Debtor In Possession Congoleum Corporation) filed by Amy E. Vulpio on behalf of ACE American Insurance Company, ACE Property and Casualty Insurance Company, Century Indemnity Company. (Vulpio, Amy) (Entered: 02/09/2004) |
| 02/09/2004 | 303 | Document re: Opinion of Steven Johnson (related document:297 |

| | | |
|---|---|---|
| | | Response, filed by Creditor Century Indemnity Company, Creditor ACE American Insurance Company, Creditor ACE Property and Casualty Insurance Company, 198 Application to Employ, filed by Debtor In Possession Congoleum Corporation) filed by Amy E. Vulpio on behalf of ACE American Insurance Company, ACE Property and Casualty Insurance Company, Century Indemnity Company. (Vulpio, Amy) (Entered: 02/09/2004) |
| 02/09/2004 | 304 | Motion to Extend Time re: Motion to Extend Time to Assume or Reject Unexpired Leases of Non-Residential Real Property Filed by Domenic Pacitti on behalf of Congoleum Corporation. Hearing scheduled for 3/1/2004 at 10:00 AM at KCF - Courtroom 2, Trenton. (Attachments: # 1 Proposed Order) (Pacitti, Domenic) (Entered: 02/09/2004) |
| 02/09/2004 | | Minute of Hearing Held, OUTCOME: Order to be Submitted by D. Pacitti.(related document:110 Motion re: Verified Motion for Authority to Employ and Compensate Professionals in the Ordinary Course of Business filed by Debtor In Possession Congoleum Corporation) (ckk) (Entered: 02/10/2004) |
| 02/09/2004 | | Hearing Rescheduled from 02/09/04. (related document:182 Application to Employ Ernst & Young LLP as Audit and Tax Advisors filed by Debtor In Possession Congoleum Corporation) Hearing scheduled for 2/17/2004 at 02:00 PM at KCF - Courtroom 2, Trenton. (ckk) (Entered: 02/10/2004) |
| 02/09/2004 | | Minute of Hearing Held, OUTCOME: Order to be Submitted by D. Pacitti.(related document:183 Application to Employ Ernst & Young Corporate Finance LLC as Restructuring Advisor filed by Debtor In Possession Congoleum Corporation) (ckk) (Entered: 02/10/2004) |
| 02/09/2004 | | Hearing Rescheduled from 02/09/04. (related document:196 Application to Employ Gilbert Heintz & Randolph LLP and Dughi Hewit & Palatucci PC as Special Counsel filed by Debtor In Possession Congoleum Corporation) Hearing scheduled for 2/17/2004 at 02:00 PM at KCF - Courtroom 2, Trenton. (ckk) (Entered: 02/10/2004) |
| 02/09/2004 | | Hearing Rescheduled from 02/09/04. (related document:198 Application to Employ Saul Ewing LLP as Counsel for Debtors filed by Debtor In Possession Congoleum Corporation) Hearing scheduled for 2/17/2004 at 02:00 PM at KCF - Courtroom 2, Trenton. (ckk) (Entered: 02/10/2004) |
| 02/09/2004 | | Minute of Hearing Held, OUTCOME: Order to be Submitted by D. Pacitti.(related document:222 Application to Employ SSG Capital Advisors, L.P. as Financial Advisors to the Debtors filed by Debtor In |

| | | |
|---|---|---|
| | | Possession Congoleum Corporation) (ckk) (Entered: 02/10/2004) |
| 02/09/2004 | | Hearing Rescheduled from 02/09/04. (related document:108 Application re: Debtors' Motion for Entry of an Order Approving and Authorizing the Appointment of R. Scott Williams as the Legal Representative for Future Asbestos Personal Injury Claimants filed by Debtor In Possession Congoleum Corporation) Hearing scheduled for 2/17/2004 at 02:00 PM at KCF - Courtroom 2, Trenton. (ckk) (Entered: 02/10/2004) |
| 02/10/2004 | 305 | Notice of Appearance and Request for Service of Notice filed by Andrew Sklar on behalf of Canon Financial Services, Inc.. (Sklar, Andrew) (Entered: 02/10/2004) |
| 02/10/2004 | 306 | Order Granting Motion re: Establishing Procedures For Interim Compensation And Reimbursement Of Expenses Of Professionals. (Related Doc # 109) The following parties were served: US Trustee, Attorney for Debtor. Signed on 2/10/2004. (srm, ) (Entered: 02/11/2004) |
| 02/11/2004 | 307 | Order Granting Motion re: Unsealing Certain Materials Filed Under Seal. (Related Doc # 106) The following parties were served: US Trustee, Attorney for Debtor, Movant. Signed on 2/11/2004. (srm, ) (Entered: 02/11/2004) |
| 02/11/2004 | 308 | BNC Certificate of Service - Order No. of Notices: 1. Service Date 02/11/2004. (Related Doc # 293) (Admin.) (Entered: 02/12/2004) |
| 02/11/2004 | 309 | BNC Certificate of Service - Order No. of Notices: 3. Service Date 02/11/2004. (Related Doc # 295) (Admin.) (Entered: 02/12/2004) |
| 02/11/2004 | 310 | BNC Certificate of Service - Order No. of Notices: 2. Service Date 02/11/2004. (Related Doc # 296) (Admin.) (Entered: 02/12/2004) |
| 02/12/2004 | 311 | Document re: Joinder in Certain Insurers' Preliminary Objections to Debtors' Plan filed by Arthur Abramowitz on behalf of Federal Insurance Company. (Attachments: # 1 Certificate of Service) (Abramowitz, Arthur) (Entered: 02/12/2004) |
| 02/12/2004 | 312 | Document re: Preliminary Objection to Debtors' Disclosure Statement and Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code filed by Jack M. Zackin on behalf of Several Thousand Asbestos Injury Claimants Who Are Clients of Robert G. Taylor II, P.C.. (Zackin, Jack) (Entered: 02/12/2004) |
| 02/12/2004 | 313 | First Objection to (related document:176 Chapter 11 Plan filed by Debtor In Possession Congoleum Corporation, 177 Disclosure |

| | | |
|---|---|---|
| | | Statement filed by Debtor In Possession Congoleum Corporation) filed by Henry M Price on behalf of Continental Casualty Co., Continental Insurance Co. (Attachments: # 1 Certificate of Service for Preliminary Objection to Plan and Disclosure Statement) (Price, Henry) (Entered: 02/12/2004) |
| 02/12/2004 | 314 | Notice of Appearance and Request for Service of Notice filed by J. Alex Kress on behalf of United States Fire Insurance Company, TIG Insurance Company. (Kress, J.) (Entered: 02/12/2004) |
| 02/12/2004 | 315 | Objection to (related document:177 Disclosure Statement filed by Debtor In Possession Congoleum Corporation) filed by John S. Favate on behalf of Certain Insurers ; Stonewall Ins Co.,OneBeacon American Ins Co and Seaton Insurance Company. (Favate, John) (Entered: 02/12/2004) |
| 02/12/2004 | 316 | Objection to (related document:313 Objection, filed by Interested Party Continental Insurance Co, Interested Party Continental Casualty Co.) filed by Philip Seth Rosen on behalf of Granite State Insurance Company. (Rosen, Philip) (Entered: 02/12/2004) |
| 02/12/2004 | 317 | Objection to (related document:316 Objection filed by Creditor Granite State Insurance Company) filed by Philip Seth Rosen on behalf of Granite State Insurance Company. (Rosen, Philip) (Entered: 02/12/2004) |
| 02/12/2004 | 318 | Objection to (related document:177 Disclosure Statement filed by Debtor In Possession Congoleum Corporation) filed by Barbara Maria Almeida on behalf of ACE American Insurance Company, ACE Property and Casualty Insurance Company, Century Indemnity Company. (Almeida, Barbara) (Entered: 02/12/2004) |
| 02/12/2004 | 319 | Document re: Preliminary Objections to Debtors' Joint Prepackaged Plan of Reorganization filed by Edgar M. Whiting on behalf of St. Paul Fire & Marine Insurance Co.. (Whiting, Edgar) (Entered: 02/12/2004) |
| 02/12/2004 | 320 | First Objection to (related document:177 Disclosure Statement filed by Debtor In Possession Congoleum Corporation, 176 Chapter 11 Plan filed by Debtor In Possession Congoleum Corporation) filed by Stephen V. Falanga on behalf of Travelers Casualty and Surety Company, formerly known as The Aetna Casualty and Surety Company. (Falanga, Stephen) (Entered: 02/12/2004) |
| 02/12/2004 | 321 | First Objection to (related document:177 Disclosure Statement filed by Debtor In Possession Congoleum Corporation) filed by Carol A. Slocum on behalf of First State Insurance Co., Twin City Fire Insurance Company. (Slocum, Carol) (Entered: 02/12/2004) |

US Bankruptcy Court NJ - Live Database - Docket Report

| 02/12/2004 | 322 | First Objection to (related document:176 Chapter 11 Plan filed by Debtor In Possession Congoleum Corporation) filed by Carol A. Slocum on behalf of First State Insurance Co., Twin City Fire Insurance Company. (Slocum, Carol) (Entered: 02/12/2004) |
|---|---|---|

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 02/13/2004 10:02:33 | | | |
| PACER Login: | wh0019 | Client Code: | s8178.00044 |
| Description: | Docket Report | Case Number: | 03-51524-KCF |
| Billable Pages: | 29 | Cost: | 2.03 |

EXHIBIT 4

27-May-2004  04:52pm    From-McELROY Deutsch Mulvaney, LLP          9734250161              T-827  P.002/003  F-858

# HENDLERLAW

May 26, 2004

**_Sent via Federal Express_**
Hon. William G. Bassler
U.S. District Court for the District of New Jersey
U.S. Courthouse
50 Walnut Street, Room 5060
Newark, NJ  07101-0999

> **Re:**  *Louis Barletta and Mary Jane Barletta v. Congoleum Corporation, et al., Civil No. 2-04-CV-00647-WGB-MCA*

Dear Judge Bassler:

Along with Fred Gerson of D'Alessandro, Jacovino, & Gerson, Esqs., I represent the plaintiffs, Louis Barletta and Mary Jane Barletta, in the above-styled matter currently pending before the Court.  On May 7, 2004, the Judicial Panel on Multi-District Litigation ("the MDL Panel") issued a conditional transfer order to transfer the Barlettas' lawsuit to the MDL Panel.  Plaintiffs have filed a Notice of Opposition to the transfer order, and will be moving to vacate the order pursuant to MDL rules.  If the case were allowed to be transferred to the MDL, experience indicates that it would be unlikely for Plaintiffs to obtain relief from the remaining defendants for many years due to the procedural quagmire in which they would find themselves.  This type of delay is, of course, the removing defendant's objective.

Against this backdrop, the Court has before it a ripe Motion to Remand filed by Plaintiffs on March 11, 2004.  The facts clearly show a lack of federal jurisdiction over this action, given an improper removal by defendant Stepan Company in light of the joinder of a nondiverse defendant, Congoleum Corporation, and the almost six month delay before removing the matter.  If the Court does not rule on the clear jurisdictional question pending in Plaintiffs' Motion to Remand prior to the June 8, 2004 deadline for Plaintiffs to file a Motion to Vacate the MDL transfer order, the MDL Panel may transfer the case despite the very meritorious motion to remand.  The resulting delay would severely prejudice the Barlettas' right to a prompt adjudication of their claim. Accordingly, I respectfully urge the Court to consider Plaintiffs' Motion to Remand

810 CONGRESS AVENUE, SUITE 1230, AUSTIN, TEXAS 78701
TELEPHONE  512.439 3200, FACSIMILE. 512.439 3201

445 PARK AVENUE, 10TH FLOOR, NEW YORK. NEW YORK 10022
TELEPHONE, 917 322 250 1, FACSIMILE: 917 322 2300
WWW.HENDLERLAW.COM

# HENDLERLAW

currently pending in this case as soon as possible before the case is forced into the MDL where it clearly does not belong.

I appreciate the Court's time and consideration of this matter.

Respectfully submitted,
THE HENDLER LAW FIRM, P.C.

Scott M. Hendler

cc:    Mr. Frederick Gerson (via Federal Express)
       Mr. Joseph Rasnek (via Federal Express)

**EXHIBIT 5**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Joseph D. Rasnek (JDR-4228)
Carpenter, Bennett & Morrissey
Three Gateway Center
100 Mulberry Street
Newark, NJ  07102-4079
(973) 622-7711
Attorneys for Defendant Stepan Company

| | |
|---|---|
| LOUIS BARLETTA and<br>MARY JANE BARLETTA, his wife;<br><br>Plaintiffs,<br><br>vs.<br><br>THE CONGOLEUM CORPORATION;<br>STEPAN COMPANY; et al.,<br><br>Defendants. | Civil Action No. 2:04-cv-00647-WGB-MCA<br><br>**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND**<br><br>DOCUMENT FILED<br>ELECTRONICALLY |

Within 30 days of discovering evidence that defendant the Congoleum Corporation ("Congoleum") was fraudulently joined in the Complaint, Stepan Company ("Stepan") filed its Notice of Removal setting forth detailed evidence proving the absence of a good faith intent by plaintiffs to pursue a judgment against Congoleum.  Plaintiffs' only argument against these facts is as implausible as it is false.  They contend Congoleum was dismissed from a nearly two year old Texas lawsuit because the newly filed New Jersey state court lawsuit would provide a faster mechanism for obtaining a judgment.  The unrebutted evidence makes clear, however, that plaintiffs dismissed Congoleum from the Texas lawsuit because they knew it was filing a pre-packaged bankruptcy and then sued Congoleum here solely to prevent removal with no legitimate intent to pursue their purported claims.

Congoleum's fraudulently joinder means it must be disregarded for purposes of subject matter jurisdiction and its consent to removal is unnecessary. This case is, therefore, properly before this Court and plaintiffs' Motion for Remand should be denied.

I.   **STEPAN'S TIMELY NOTICE OF REMOVAL PRESENTS UNREBUTTED EVIDENCE ESTABLISHING THE ABSENCE OF A GOOD FAITH INTENT BY PLAINTIFFS TO PURSUE CONGOLEUM.**

Plaintiffs present three arguments in opposition to the Notice of Removal: (1) the removal was untimely; (2) Stepan has not met its burden to establish fraudulent joinder; and (3) Congoleum has failed to consent to the removal. (Memorandum in Support of Remand at p. 1.) Each of these arguments lacks merit.

A.   **Stepan Filed its Removal Petition within 30 Days of Learning Plaintiffs Had No Legitimate Intent to Pursue Congoleum.**

1.   <u>The 30 day period is measured not from service of the Complaint but from receipt of a paper evidencing a basis for removal.</u>

Plaintiffs first argue the 30 day period for removal under 28 U.S.C. § 1446(b) should be measured from service of the complaint on Stepan, August 14, 2003. (Memorandum in Support of Remand at p. 1-2.) This assumes incorrectly that Stepan would know immediately upon receipt of the Complaint that plaintiffs lacked a good faith intent to pursue their claims against Congoleum. This was obviously not the case and the text of § 1446(b) and the case law interpreting the statute are both to the contrary. *See* 28 U.S.C. § 1446(b) ("If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant . . . of a . . . paper from which it may first be ascertained that the case is one which is or has become removable . . . ."); *see also, Foster v. The Mutual Fire Marine & Inland Ins. Co.*, 986 F.2d 48, 53-54 (3d Cir. 1993) (facts must be present in writ of summons, praecipe or complaint filed with the court to trigger 30 day period); *Entrekin v. Fisher Scientific,*

2

*Inc.*, 146 F. Supp. 2d 594, 612-13 (D.N.J. 2001) (30 day periods runs from receipt of paper establishing additional facts supporting subject matter jurisdiction); *Sprague v. American Bar Ass'n.*, 166 F. Supp. 2d 206, 209 (E.D. Pa. 2001) (initial service papers did not reveal factual basis for federal subject matter jurisdiction and did not trigger 30-day removal period).

A case is removable as filed only when the initial pleading enables a defendant to intelligently ascertain facts from the face of the pleading which allow it to make a short and plain statement of the grounds for removal. 166 F. Supp. 2d at 209. This occurs only when the pleading contains the necessary facts to support a removal petition. *Rowe v. Marder*, 750 F. Supp. 718, 721 (W.D. Pa. 1990), *aff'd*, 935 F.2d 1282 (3d Cir. 1991); *Sprague*, 166 F. Supp. 2d at 209. Importantly, this standard does not require a defendant to look beyond the complaint. *See Foster*, 986 F.2d at 54 (relevant test is what documents said, not what defendants purportedly knew).

Nothing in the Complaint itself establishes that plaintiffs do not intend to pursue Congoleum in good faith. As set forth below, it was facts beyond the Complaint which made clear to Stepan that Congoleum was fraudulently joined. Because Stepan filed its Notice of Removal within 30 days of learning this information the Notice is timely under § 1446(b).

> 2. <u>Stepan filed its Notice of Removal within 30 days of discovering the grounds for Congoleum's fraudulent joinder</u>.

Plaintiffs next argue Stepan has not presented sufficient evidence of exactly when it learned the information establishing Congoleum's fraudulent joinder such that it cannot benefit from a later starting point for measurement of the 30 day removal period. (Memorandum in Support of Remand at p. 3.) This argument is equally incorrect.

The Notice of Removal sets forth information obtained from conversations between counsel for Stepan and Congoleum's Texas counsel which made clear for the first time plaintiffs' fraudulent joinder. (Notice of Removal at ¶¶ 20, 22, 26-28, 31-32 and 34-35.) The Notice of Removal further states this information was received within 30 days of the Notice's filing. (*Id.* at 41.) This alone is sufficient proof of the removal's timeless. To avoid any doubt, the additional affidavit of Michael A. Kaeding, counsel for Stepan, sets forth the specific date of this conversation and the receipt of other information relevant to establishing Congoleum's fraudulent joinder. (*See* Affidavit of Michael A. Kaeding, attached hereto as Exhibit A.)

Stepan did not become aware of plaintiffs' prior New York lawsuit against Congoleum until it received a copy of the May 22, 2001 Barletta deposition from plaintiffs' counsel on November 27, 2003. (Kaeding Affd., Ex. A at ¶ 5.) At that time, the mere existence of the prior New York lawsuit did not set forth facts which informed Stepan of Congoleum's fraudulent joinder. (Ex. C to Notice of Removal; Kaeding Affd., Ex. A at ¶ 5.) It was not until Stepan's counsel reviewed the October 3-4, 2001 and October 7, 2002 Barletta deposition transcripts on December 22, 2003, that it became aware of plaintiffs' Texas lawsuit against Congoleum. (Kaeding Affd., Ex. A at ¶ 6.) Again, the mere existence of the Texas action did not provide Stepan with grounds for removal.

It was not until January 27, 2004 that counsel learned of Congoleum's bankruptcy and began to have concerns about the legitimacy of Congoleum's joinder as a defendant in the New Jersey lawsuit. (*Id.* at ¶ 8.) On February 5, 2004, Stepan's counsel first spoke with a litigation assistant to Congoleum's attorney in the Texas proceedings, Clay White. (*Id.* at ¶ 9.) Mr. White's assistant informed counsel that Congoleum had been dismissed from the Texas proceedings and increased counsel's suspicion concerning the legitimacy of plaintiffs' claims

4

against Congoleum in New Jersey. (*Id.*) The assistant suggested counsel discuss the specifics of

the Texas litigation and the circumstances surrounding Congoleum's dismissal with Mr. White

when he returned to the office. (*Id.*) Despite several phone messages, Stepan's counsel was

unable to speak with Mr. White until February 11, 2004. (*Id.* at ¶ 11.) It was not until counsel

spoke with Mr. White that Stepan became aware of the circumstances surrounding Congoleum's

extensive participation in that lawsuit, its dismissal following announcement of its impending

bankruptcy and the inescapable conclusion that Congoleum's role in this lawsuit is solely to

defeat diversity jurisdiction due to its New Jersey residence.[1] (*Id.* at 11-14.)

As Stepan filed its Notice of Removal on February 13, 2004, a short two days after

counsel's conversation with Mr. White, its filing was timely under §1446(b).[2]

### B.   Plaintiffs Fail to Rebut the Overwhelming Evidence of Congoleum's Fraudulent Joinder.

In response to detailed evidence presented by Stepan in support of its removal, plaintiffs

argue only that, because they *could* have sued Congoleum for Mr. Barletta's alleged asbestos

exposure, its addition as a defendant in the lawsuit *necessarily* means they had a good faith intent

to pursue a judgment against it. It is the not the possibility of a cause of action, however, that

establishes the fraudulent nature of Congoleum's joinder but the lack of plaintiffs' good faith

intent to pursue such a claim. *See, e.g., Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d

Cir. 1990), *cert. denied*, 498 U.S. 1085 (1991) (joinder fraudulent when plaintiff has *no good*

*faith intention* to prosecute claims or to seek judgment against a defendant). Were the law

---

[1] If necessary, Stepan could present additional corroborating evidence of these facts in the form of a supporting affidavit from Mr. White. Should the Court require this additional information, Stepan requests a brief period of time in which to obtain and file this affidavit.

[2] Alternatively, the 30 day removal period has not begun to run because Stepan has received no documents which alone, without consideration of Mr. White's statements, establish a basis for fraudulent joinder. *See, e.g., Entrekin*, 146 F. Supp. 2d at 612-16. As such, the removal could not be untimely under 28 U.S.C. §1446(b).

otherwise, it would be meaningless to create a category of fraudulent joinder based upon the absence of a good faith intent to prosecute an action. The good faith prong of the fraudulent joinder doctrine assumes that a cause of action is *possible* but that a plaintiff does not *intend* to proceed on that claim in good faith.

The absence of good faith is confirmed by the sole argument plaintiffs offer in explanation for their dismissal of Congoleum from the Texas lawsuit in the face of its bankruptcy and the filing of a brand new lawsuit against it in New Jersey — plaintiffs claim they dismissed Congoleum more than 1.5 years into the Texas lawsuit and following at least two trial settings because a fresh New Jersey lawsuit would avoid Congoleum's "delay tactics" which "prejudice[d] Plaintiffs' ability to go to trial against Congoleum in Texas . . . ." (Memorandum in Support of Remand at p. 4.) It is unbelievable that plaintiffs felt this lawsuit was a speedier path to a judgment against Congoleum. Instead, the evidence establishes plaintiffs had no hope of collecting a judgment against Congoleum in light of its impending bankruptcy and no intention to do so.[3] Plaintiffs sued Congoleum only to prevent Stepan's removal rights.

Rather than supports plaintiffs' purported claim of a good faith intent to pursue Congoleum, the entry of a default order against Congoleum without pursuit of default judgment likewise undermines their arguments for remand. (*See* Memorandum in Support of Remand at p. 5; Notice of Removal at ¶¶ 36-39.) Given plaintiffs' overwhelming knowledge of the impending

---

[3] Having cited to the very evidence Stepan offers in support of its removal in an unsuccessful attempt to argue for remand, (Memorandum in Support of Remand at pp. 4-5), plaintiffs have waived any objection to this Court's consideration of that evidence. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 311-12 (5th Cir. 2002) (addressing fraudulent joinder challenge, waiver rule applied when even though plaintiffs failed to physically attach documents to the complaint). In any event, the evidence offered by Stepan is precisely the type numerous federal courts have relied upon to pierce the pleadings and examine extraneous evidence of fraudulent intent. *See, e.g., Id.*

Congoleum bankruptcy, it makes no sense to delay service on Congoleum for some five months, delay some three months in obtaining a default order and then to forego the filling of a motion for entry of default judgment prior to Congoleum's bankruptcy filing which occurred 23 days later. (Notice of Removal at ¶¶ 23, 36-39.) In fact, as late as November 3, 2003, the press was running stories setting forth the December 19, 2003, voting deadline for approval of Congoleum's pre-packaged bankruptcy. (Notice of Removal at Ex. O thereto.)

Moreover, at a March 31, 2003 hearing in plaintiffs' Texas lawsuit against Congoleum, plaintiffs' lead counsel in this case argued against Congoleum's request for a trial continuance. (Notice of Remand at Ex. D thereto; Kaeding Affd., Ex. A at ¶ 12.) At that time, counsel argued Congoleum sought the continuance solely to delay trial past its impending bankruptcy filing. (Kaeding Affd., Ex. A at ¶ 12.) In support of this position, counsel presented the court with press clippings referencing Congoleum's announcement of the planned bankruptcy filing. (*Id.*) This is precisely the type of public record evidence Stepan presented in support of its Notice of Removal and which plaintiffs ignor in their Motion for Remand. (Notice of Removal at Exs. I-M and O thereto.) Plaintiffs sought the New Jersey default order solely to disguise Congoleum's fraudulent joinder, not in any good faith attempt to perfect their purported rights.

### C.    Given Congoleum's Fraudulent Joinder, There is No Need for Its Consent to the Removal.

Although removal jurisdiction generally requires that all defendants join in the notice of removal, fraudulently joined defendants cannot prevent removal and their existence is disregarded for purposes of determining diversity such that their consent is unnecessary. *See Balzik v. County of Dauphin*, 44 F.3d 209, 213, n.4 (3d Cir. 1995). Plaintiffs incorrectly argue that Congoleum's consent to the removal is required. It is not. The timely Notice of Removal must stand.

## CONCLUSION

Plaintiffs have failed to rebut Stepan's timely submitted evidence that Congoleum was fraudulently joined. Plaintiffs have no good faith intention to pursue Congoleum in this lawsuit and the Court must disregard it for purposes of establishing diversity between the parties. Between plaintiffs and Stepan Company there is complete diversity. Removal is proper under 28 U.S.C. §§ 1332, 1441 and 1446 and plaintiffs Motion for Remand should be denied.

Respectfully submitted,

STEPAN COMPANY

By: ___/s/ Joseph D. Rasnek_____
One of its attorneys

Dated: March 29, 2003

Joseph D. Rasnek
Carpenter, Bennett & Morrissey
Three Gateway Center
100 Mulberry Street
Newark, NJ  07102-4079
(973) 622-7711

Of Counsel:

Brian W. Lewis
Michael A. Kaeding
Wildman, Harrold, Allen & Dixon
225 West Wacker Drive
Chicago, IL  60606-1229
(312) 201-2000

Admitted *Pro Hac Vice*

# EXHIBIT A

*Barletta v. Congoleum Corp., et al.*

**Civil Action No. 2:04-cv-647**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**Joseph D. Rasnek (JDR-4228)**
**Carpenter, Bennett & Morrissey**
**Three Gateway Center**
**100 Mulberry Street**
**Newark, NJ  07102-4079**
**(973) 622-7711**
**Attorneys for Defendant Stepan Company**

| | |
|---|---|
| LOUIS BARLETTA and<br>MARY JANE BARLETTA, his wife;<br><br>       Plaintiffs,<br><br>vs.<br><br>THE CONGOLEUM CORPORATION;<br>STEPAN COMPANY; et al.,<br><br>       Defendants. | Civil Action No. 2:04-cv-00647-WGB-MCA<br><br>**AFFIDAVIT OF MICHAEL A. KAEDING**<br>**IN SUPPORT OF STEPAN COMPANY'S**<br>**MEMORANDUM IN OPPOSITION**<br>**TO PLAINTIFFS' MOTION FOR**<br>**REMAND** |

I, Michael A. Kaeding, state the following in support of the above identified Memorandum in Opposition to Motion for Remand.  These statements are made without waiver of any attorney-client privilege or attorney work product protections applicable to the information and activities described below:

    1.     I am over eighteen and competent to make this affidavit.  If called upon, I could testify truthfully to the contents of this affidavit based on my personal knowledge of the facts set forth herein.

    2.     I am an attorney with the law firm of Wildman, Harrold, Allen & Dixon, LLP.  I am one of the lead attorneys representing Defendant Stepan Company ("Stepan") in the above

named lawsuit filed by Louis and Mary Jane Barletta ("Plaintiffs"). I have been admitted *pro hac vice* in this matter.

3.       Shortly after Plaintiffs' New Jersey State Court Complaint was served upon Stepan, I became involved in defense of the lawsuit on behalf of Stepan.

4.       In late November, 2003, I had a phone conversation with Plaintiffs' Texas counsel, Scott Hendler, who I understand to be the lead attorney in this case. At that time, I informed Mr. Hendler that the Complaint plead allegations indicating Plaintiffs' claims were barred by the New Jersey Workers Compensation Act. Mr. Hendler responded that be believed the bar did not apply and promised to send deposition testimony from Mr. Barletta that supported Mr. Hendler's contention that Mr. Barletta was not a Stepan employee during the time of his alleged asbestos exposure at a Stepan facility.

5.       On November 27, 2003, I received an email from Mariana Marchesini at Mr. Hendler's law firm. The email contained several attachments referencing several days of deposition testimony. At the time, I could only open and view one transcript. That transcript was an electronic copy of Mr. Barletta's deposition in the *In Re New York City Asbestos Litigation* matter, Index No. 01-105781, given on May 22, 2001. This was the first time that an attorney representing Stepan became aware of the New York lawsuit. Although the transcript listed the appearance of an attorney representing the Congoleum Corporation ("Congoleum"), nothing in the document indicated to me that Plaintiffs had joined Congoleum as a defendant in the New Jersey Complaint without a good faith intent to pursue their purported claims against it.

6.  .    Given my inability to open the remaining attachments to the November 27, 2003 email, I requested hard copies of the referenced depositions. On December 22, 2003, I received from Ms. Marchesini hard copies of Mr. Barletta's May 23, 2001 deposition in the *In Re New*

*York City Asbestos Litigation* lawsuit and copies of depositions given by Mr. Barletta in a Texas state court lawsuit in which Mr. Hendler was plaintiff's counsel, *Barletta v. American Cyanmid, et al.,* Case No. 01-454-D.  Like the New York lawsuit, the transcripts indicated an attorney representing Congoleum had participated in the depositions, but nothing indicated Plaintiffs had joined Congoleum as a defendant in the New Jersey Complaint without a good faith intent to pursue their purported claims against it.  True and correct copies of portions of the Texas deposition transcripts are attached to the Notice of Removal as Exs. F-H.

7.     On January 13, 2004, I received a copy of the docket sheet for Plaintiffs' Texas litigation which indicated the active nature of the litigation and participation by Congoleum but provided no facts establishing Congoleum's fraudulent joinder in the New Jersey Complaint.  A true and correct copy of the docket sheet for *Barletta v. American Cyanmid* received by the Kleburg County Clerk's Office is attached to the Notice of Removal as Ex. D.  Again, at this time I did not possess any information, written or otherwise, that indicated Congoleum had been fraudulently joined in the New Jersey Complaint.

8.     On January 27, 2004, I reviewed an electronic copy of Congoleum's bankruptcy filing in New Jersey which indicated a filing date of December 31, 2003.  A true and correct copy of the electronic docket sheet for Congoleum Corporation's New Jersey bankruptcy case printed on February 13, 2004 is attached to the Notice of Removal as Ex. P.  Coupled with the information provided by the deposition transcripts and the docket materials for Plaintiffs' Texas and New Jersey lawsuits, I began to investigate the possibility that Congoleum was fraudulently joined to the New Jersey Complaint solely to destroy diversity and prevent removal without any intention by Plaintiffs to legitimately pursue their claims against it.  At this time, I did not

possess any information, written or otherwise, definitively indicating that Congoleum had been fraudulently joined in the New Jersey Complaint.

9.    On February 5, 2004, I first spoke with a litigation assistant to the lead attorney for Congoleum in Plaintiffs' Texas lawsuit.  The woman I spoke with informed me that attorney Clay White was lead defense counsel for Congoleum.  She informed me that she believed Congoleum had been dismissed from the Texas lawsuit following a lengthy discovery process in which the case had been "fully worked up for trial."  The assistant did not have the file at hand and suggested that I contact Mr. White to confirm her information and to discuss the matter more fully.  She also informed me that Mr. White was out of the office at the time but would be returning in a few days.

10.    Based on this information, my concerns about the possibility of Congoleum's fraudulent joinder grew.  I left a message with Mr. White that same day.

11.    Despite another one or two voice messages, I was unable to speak with Mr. White until February 11, 2004.  During this conversation, I learned that Mr. White had fully prepared the Texas case for trial.  Mr. White also confirmed that the case against Congoleum was active for more than 1.5 years and that the trial had been continued at least twice, once by Congoleum over Plaintiffs' objection.  Mr. White also informed me that Congoleum hired co-counsel specifically for the trial of the Texas lawsuit in March, 2003 and that co-counsel was a member of the Texas legislature.  As a result, Mr. White informed me that Congoleum sought a "legislative continuance" in March, 2003 in order to allow co-counsel to finish the current legislative term.

12.    Mr. White informed me that a contested hearing on the continuance was heard and that Mr. Hendler argued to the judge at the hearing that the continuance was merely a delaying

tactic to prevent trial prior to Congoleum filing of a planned bankruptcy. In support of this opposition, Mr. Hendler showed the court several copies of press clippings announcing Congoleum's planned bankruptcy. Mr. White also informed me that he discussed the planned bankruptcy with Plaintiffs' counsel several months prior to the continuance hearing. Mr. White informed me that the Texas trial judge granted the continuance and set the matter for a later status date.

13.    Mr. White then confirmed that Congoleum was later served with an amended Complaint in which it was dropped as a defendant in the Texas lawsuit. Mr. White did not recall receiving a formal dismissal order or motion requesting dismissal from the Texas lawsuit. Mr. White explained that his firm confirmed the absence of cross-claims against Congoleum and then proceeded to close their file. Mr. White further informed me that be believed Plaintiffs had received settlements in the Texas lawsuit totaling at least several million dollars.

14.    Following my conversation with Mr. White, I confirmed the numerous announcements of Congoleum's pre-packaged bankruptcy plans in the press. Stepan's Notice of Removal was filed shortly thereafter on February 13, 2004 because Plaintiffs fraudulently joined Congoleum as a defendant in the New Jersey State Court lawsuit with no good faith intention of pursuing their purported claims against it.

15.    Ex. B to the Notice of Removal contains true and correct copies of pleadings obtained from the New York Clerk's Office in the lawsuit *In re New York City Asbestos Litigation*.

16.    Ex. C. to the Notice of Removal is a true and correct copy of an order obtained from the New York Clerk's Office in the lawsuit *In re New York City Asbestos Litigation*.

17.     Ex. E to the Notice of Removal contains true and correct copies of certified pleadings obtained from the Kleburg County Texas Clerk's Office in the lawsuit *Barletta v. American Cyanamid, et al.*

18.     Exs. I-M and O are true and correct copies of articles appearing in Mealey's Litigation Report: Asbestos and Mealey's Asbestos Bankruptcy Report printed from LEXIS NEXIS on February 5, 2004.

19.     Ex. N to the Notice of Removal is a true and correct copy of the electronic case docket for the New Jersey state court lawsuit printed on February 5, 2004 prior to its removal to this Court on February 13, 2004.


I, Michael A. Kaeding, declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: March 29, 2004

Michael A. Kaeding