

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 2 9 2004

FILED
CLERK'S OFFICE

# UNITED STATES OF AMERICA
## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE ASBESTOS PRODUCTS
LIABILITY LITIGATION (NO. VI)

MDL-875
E.D. Pennsylvania

THIS DOCUMENT RELATES TO:

RAMON BACA and AGNES BACA,

    Plaintiffs,

       v.

THE BURLINGTON NORTHERN AND
SANTA FE RAILWAY COMPANY (as
successor in interest to the Atchison,
Topeka & Santa Fe Railway Company),
and OLD ORCHARD INDUSTRIAL
CORPORATION, a corporation, individually
as successor in interest to Vapor Corporation
and Vapor Heating Corporation,

    Defendants.

Civil Action No. CIV 02 - 1220
D. New Mexico



## MOTION OF OLD ORCHARD INDUSTRIAL CORP., INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO VAPOR CORPORATION, TO VACATE THE CONDITIONAL REMAND ORDER

**OFFICIAL FILE COPY**  IMAGED JUN 2 9 '04

COMES NOW, Defendant Old Orchard Industrial Corp., Individually and as Successor-in-Interest to Vapor Corporation (hereinafter referred to as "Defendant Vapor"), by its counsel, the law firms of Hatch, Allen & Shepherd and Baker & Lancianese, pursuant to Rule 7.6(f)(iii) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, and moves this Court to Vacate the Conditional Remand Order. In support of this Motion, Defendant Vapor submits the attached Brief and states as follows:

1.      Although Defendant Vapor agrees that settlement discussions to date in this case have not been successful, Defendant Vapor still believes that settlement negotiations could be successful if Plaintiff furnished any and all original chest X-rays of the Plaintiff and established a mutually agreeable date for the deposition of the Plaintiff.

2.      In addition, this Defendant removed this case to federal court and moved to dismiss the claims against it based on federal preemption under the Locomotive Boiler Inspection Act, 49 U.S.C. § 20701 *et seq*. The same issue has been pending before Judge Weiner from General Motors Corporations' Motion for Summary Judgment, which has been fully briefed and argued by General Motors and several other parties. The interests of judicial economy warrant this case remaining before Judge Weiner at least until such time as the Court rules on the preemption issue.

3.      Because the required minimal discovery information has not yet been provided to facilitate settlement negotiations and an integral question of law is still pending before Judge Weiner, Defendant Vapor respectfully requests that the Conditional Remand Order be vacated.

WHEREFORE, for the foregoing reasons and those set forth in the accompanying Brief, Defendant Old Orchard Industrial Corp., Individually and as Successor-in-Interest to Vapor Corporation, respectfully requests that this Court vacate the Conditional Remand Order, retain jurisdiction over this matter, and grant such other relief as this Court deems appropriate.

Respectfully submitted,

By: _____

Jon B. Orndorff
BAKER & LANCIANESE
1108 Third Ave., Suite 300
Huntington, WV 25701
Telephone: (304) 522-6906
Facsimile: (304) 522-6910

and

Robert F. Thorson
Ronald C. Archibeque
HATCH ALLEN & SHEPHERD
P.O. Box 30488
Albuquerque, New Mexico  87190-0488
Telephone:  (505) 341-0110
Facsimile:  (505) 341-3434

Attorneys for Defendant Old Orchard Industrial Corp.,
Individually and as Successor-in-Interest to Vapor
Corporation

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 2 9 2004

FILED
CLERK'S OFFICE

# UNITED STATES OF AMERICA
## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE ASBESTOS PRODUCTS
LIABILITY LITIGATION (NO. VI)

MDL-875
E.D. Pennsylvania

---

THIS DOCUMENT RELATES TO:

---

RAMON BACA and AGNES BACA,

    Plaintiffs,

       v.

THE BURLINGTON NORTHERN AND
SANTA FE RAILWAY COMPANY (as
successor in interest to the Atchison,
Topeka & Santa Fe Railway Company),
and OLD ORCHARD INDUSTRIAL
CORPORATION, a corporation, individually
as successor in interest to Vapor Corporation
and Vapor Heating Corporation,

    Defendants.

Civil Action No. CIV 02 - 1220
D. New Mexico

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

2004 JUN 28  A 11: 48

RECEIVED
CLERK'S OFFICE

## BRIEF OF OLD ORCHARD INDUSTRIAL CORP., INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO VAPOR CORPORATION, IN SUPPORT OF ITS MOTION TO VACATE THE CONDITIONAL REMAND ORDER

COMES NOW, Defendant Old Orchard Industrial Corp., Individually and as Successor-in-Interest to Vapor Corporation (hereinafter referred to as "Defendant Vapor"), by its counsel, the law firms of Hatch, Allen & Shepherd and Baker & Lancianese, pursuant to Rule 7.6(f)(iii) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, and in support of its Motion to Vacate the Conditional Remand states as follows:

## I.    WHEN PLAINTIFF PROVIDES ACCESS TO LIMITED DISCOVERY, THIS DEFENDANT WILL BE IN A POSITION TO DISCUSS SETTLEMENT.

As the Panel is well aware, two primary objectives of the Multidistrict Litigation are to facilitate discovery and settlement negotiations. Defendant Vapor agrees that settlement discussions to date in this case have not been successful, but Defendant Vapor still believes that settlement negotiations could be successful if Plaintiff furnished any and all original chest X-rays of the Plaintiff and established a mutually agreeable date for the deposition of the Plaintiff.

Defendant Vapor repeatedly requested deposition dates for the Plaintiff. See Letters to Plaintiff's counsel dated May 16, 2003, July 16, 2003, July 18, 2003, August 4, 2003, August 19, 2003 (copies are attached collectively hereto as Exhibit 1). When Plaintiff finally responded to Vapor's requests, the dates offered were within a week, and Defendant Vapor's counsel had a scheduling conflict with the limited dates that were provided. See Exhibit 1, Letters dated July 18, 2003, and August 19, 2003. Defendant Vapor still requires the Plaintiff's deposition testimony to help determine whether it may have any liability in this matter.

Further, Plaintiff's disease process is allegedly colon cancer. Plaintiff has provided one slide of pathology and a medical authorization to assist in Defendant Vapor's medical review of the case, but to establish any relationship between asbestos exposure and colon cancer, there must be some radiographic evidence. Plaintiff's primary medical providers have either stated that they

have no chest X-rays or that any chest X-rays have been sent to the Plaintiff and are no longer available. See Letter dated September 4, 2003, to John D. Roven (a copy is attached hereto as Exhibit 2). To date, this Defendant has not been able to obtain any radiographic evidence of asbestos exposure.

If this Defendant is permitted to depose the Plaintiff at a mutually agreeable date and time and if the Plaintiff furnishes the chest X-rays, this Defendant believes that it can then participate in meaningful settlement negotiations. The primary purposes of the Multidistrict Litigation would then be achieved, and the remand of this case to the District Court of New Mexico may not be required.

## II. WHETHER PLAINTIFF'S AND BNSF'S CLAIMS AGAINST THIS DEFENDANT ARE PREEMPTED BY FEDERAL LAW REMAINS UNRESOLVED, AND THE ISSUE IS CURRENTLY AWAITING JUDGE WEINER RULING.

Defendant Vapor removed this case to federal court and moved to dismiss the claims against it based on federal preemption under the Locomotive Boiler Inspection Act, 49 U.S.C. § 20701 et seq. See Defendant Vapor's Notice of Removal and Motions to Dismiss filed in the District Court of New Mexico. The preemption issue has been fully briefed by Defendant Vapor, Defendant BNSF, and Plaintiff in this matter. The same issue has been pending before Judge Weiner from General Motors Corporations' Omnibus Motion for Summary Judgment and has been fully briefed and argued by various Plaintiffs' firms, General Motors, Griffin Wheel Company, the Budd Company, and various other Defendants involved in the asbestos litigation. See Motion for Summary Judgment of Defendant General Motors Corporation (a copy is attached hereto as Exhibit 3). Once a ruling is made with respect to General Motors' Motion, the parties herein can then determine whether any claims remain in this case against Defendant Vapor. Because the issue has

been fully briefed and argued before Judge Weiner, the interests of judicial economy warrant this case remaining before Judge Weiner at least until such time as the Court rules on the preemption issue.

WHEREFORE, for the foregoing reasons and those set forth in its Motion to Vacate, Defendant Old Orchard Industrial Corp., Individually and as Successor-in-Interest to Vapor Corporation, respectfully requests that this Court vacate the Conditional Remand Order, retain jurisdiction over this matter, and grant such other relief as this Court deems appropriate.

Respectfully submitted,

By: _____

Jon B. Orndorff
BAKER & LANCIANESE
1108 Third Ave., Suite 300
Huntington, WV 25701
Telephone: (304) 522-6906
Facsimile: (304) 522-6910

and

Robert F. Thorson
Ronald C. Archibeque
HATCH ALLEN & SHEPHERD
P.O. Box 30488
Albuquerque, New Mexico  87190-0488
Telephone:  (505) 341-0110
Facsimile:  (505) 341-3434

Attorneys for Defendant Old Orchard Industrial Corp., Individually and as Successor-in-Interest to Vapor Corporation

G:\VAPOR-CORP\NM 33-24\BACA case\Pleadings\Motion & Memo - Vacate Remand Order.wpd

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 2 9 2004

FILED
CLERK'S OFFICE

### UNITED STATES OF AMERICA
### JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE ASBESTOS PRODUCTS        MDL-875
LIABILITY LITIGATION (NO. VI)        E.D. Pennsylvania


RAMON BACA and AGNES BACA,

      Plaintiffs,

v.                           Civil Action No. CIV 02 - 1220
                               D. New Mexico


THE BURLINGTON NORTHERN AND
SANTA FE RAILWAY COMPANY (as
successor in interest to the Atchison,
Topeka & Santa Fe Railway Company),
and OLD ORCHARD INDUSTRIAL
CORPORATION, a corporation, individually
as successor in interest to Vapor Corporation
and Vapor Heating Corporation,

      Defendants.

### CERTIFICATE OF SERVICE

      The undersigned counsel for the Defendant, Old Orchard Industrial Corp.,

Individually And As Successor-In-Interest to Vapor Corporation, hereby certifies that on the 25th

day of June, 2004, the original plus eleven (11) copies of the attached *"Motion of Old Orchard*

*Industrial Corp., Individually and as Successor-in-Interest to Vapor Corporation, to Vacate the*

*Conditional Remand Order"* and *"Brief of Old Orchard Industrial Corp., Individually and as*

*Successor-In-Interest to Vapor Corporation, in Support of Its Motion to Vacate the Conditional*

*Remand Order"* was served via Federal Express upon the Clerk of the Court and upon the

following counsel as follows:

John D. Roven, Esquire
Roven Kaplan & Wells
2190 North Loop West - Ste 410
Houston, Texas 77018-8008
(Via Facsimile and U.S. Mail)

Michael S Sanchez, Esquire
Michael S Sanchez PC
P O Box 1297
Los Lunas, NM      87031
(Via Facsimile and U.S. Mail)

Feliz A. Rael, Esquire
John S Thal, Esquire
Atkinson & Thal
Albuquerque Square
201 Third St Nw - Suite1850
Albuquerque, NM    87102
(Via Facsimile and U.S. Mail)

Richard C. Binzley, Esquire
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114
(Via U.S. Mail Only)

Edward J. Cass, Esquire
Gallagher, Sharp, Fulton & Norman
Bulkley Building
7th Floor
1501 Euclid Avenue
Cleveland, OH 44115
(Via U.S. Mail Only)

Adam M. Chud, Esquire
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, D.C.  20036
(Via U.S. Mail Only)

David A. Damico, Esquire
Burns, White & Hickton
Fifth Avenue Place, Suite 2400
120 Fifth Avenue
Pittsburgh, PA 15222

Raymond P. Forceno, Esquire
Forceno & Hannon
111 S. Independence Mall East
Suite 1000

The Bourse
Philadelphia, PA 15222
(Via U.S. Mail Only)

Ellen B. Furman, Esquire
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103
(Via U.S. Mail Only)

Susan M. Hansen, Esquire
Brownson & Ballou
4800 U.B. Bank Place
601 Second Avenue, South
Minneapolis, MN 55402
(Via U.S. Mail Only)

Reginald S. Kramer, Esquire
Oldham & Dowling
195 South Main Street, Suite 300
Akron, OH 44308-1314
(Via U.S. Mail Only)

David C. Landin, Esquire
Hunton & Williams
Riverfront Plaza, Ease Tower
951 East Byrd Street
Richmond, VA 23219
(Via U.S. Mail Only)

Gene Locks, Esquire
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102
(Via U.S. Mail Only)

Ronald L. Motley, Esquire
Motley, Rice, LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(Via U.S. Mail Only)

John J. Repcheck, Esquire
Marks, O'Neill, O'Brien & Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219
(Via U.S. Mail Only)

Richard D. Schuster, Esquire
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216
(Via U.S. Mail Only)

Neil Selman, Esquire
Selman, Breitman & Burgess
11766 Wilshire Blvd.
Sixth Floor
Los Angeles, CA 90025
(Via U.S. Mail Only)

Robert N. Spinelli, Esquire
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA 19102
(Via U.S. Mail Only)

Robert E. Swickle, Esquire
Jaques Admiralty Law Firm, P.C.
1570 Penobscot Building
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226
(Via U.S. Mail Only)

Andrew J. Trevelise, Esquire
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
(Via U.S. Mail Only)

James K. Weston, II, Esquire
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406
(Via U.S. Mail Only)

# BAKER, LANCIANESE & CONATY

### LAW OFFICES

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 29 2004

WV-FILE

WASHINGTON D.C. OFFICE:

CHARLESTON, WV OFFICE:
THE FORBES CENTER
NORTHGATE BUSINESS PARK
200 ASSOCIATION DRIVE
CHARLESTON, WV 25311-1268
(304) 556-4813
FACSIMILE: (304) 556-4814

RIVER TOWER - SUITE 300
1108 THIRD AVENUE
HUNTINGTON, WV 25701-1578
(304) 522-6906
FACSIMILE: (304) 522-6910

WEBSITE: www.BLCLAW.COM

WASHINGTON, DC OFFICE:
1090 Vermont Avenue, NW
SUITE 800
WASHINGTON, DC 20005-4927
(202) 966-1500
FACSIMILE: (202) 966-7075

LEXINGTON, KY OFFICE:
2333 ALEXANDRIA DRIVE
LEXINGTON, KY 40504-3215
(859) 514-6787
FACSIMILE: (859) 543-1016

**Roy D. Baker, Jr.**
E-Mail: rbaker@blclaw.com
Reply to: Huntington

May 16, 2003

RE:    Ramon Baca and Agnes Baca v. The Burlington Northern and Santa Fe Railway Company,
       et al.; 13th Judicial District for Valencia County, New Mexico; Cause No. d1314 CV-02-662

John D. Roven, Esquire
ROVEN, KAPLAN & WELLS
2190 North Loop West - Suite 410
Houston, Texas  77018-8008

Dear John:

The purpose of this letter is to provide you with a release form [#SSA-7050-F4] from the Social Security Administration, and to respectfully request that you have the form completed and signed by the Plaintiff with respect to the above-referenced matter.

Also, we are providing you with a Medical Authorization for you to provide to the Plaintiff, Ramon Baca, for his signature.  We further ask that you provide a list of his healthcare providers so that we are able to collect his medical records.  Upon receipt of the list of providers and the authorizations, we will begin the process of gathering background information about Mr. Baca.

Finally, we would like to take the deposition of the Plaintiff, Ramon Baca, at the end of June, 2003.  Please provide available dates so that we can begin scheduling this matter.

Thank you for your cooperation in this matter.  Should you have any questions or concerns, please feel free to call me.

Very truly yours,

Roy D. Baker, Jr.

RDBjr/tra
Enclosures
G:\VAPOR-CORP\NM 33-24\BACA case\Correspondence\Counsel.wpd

**EXHIBIT**

tabbies®

**1**

# BAKER & LANCIANESE

### LAW OFFICES

WV-FILE

**CHARLESTON, WV OFFICE:**
THE FORBES CENTER
NORTHGATE BUSINESS PARK
200 ASSOCIATION DRIVE, SUITE 211
CHARLESTON, WV 25311-1268
(304) 556-4813
FACSIMILE: (304) 556-4814

**Jon B. Orndorff**
E-Mail: jorndorff@b-llaw.com
Reply to: Huntington

RIVER TOWER - SUITE 300
1108 THIRD AVENUE
HUNTINGTON, WV 25701-1578
(304) 522-6906
FACSIMILE: (304) 522-6910

WEBSITE: www.B-LLAW.COM

**WASHINGTON DC OFFICE:**
1090 VERMONT AVENUE, N.W.
SUITE 800
WASHINGTON, DC 20005-4927
(202) 966-1500
FACSIMILE: (202) 966-7075

**LEXINGTON, KY OFFICE:**
2333 ALEXANDRIA DRIVE
LEXINGTON, KY 40504-3215
(859) 514-6787
FACSIMILE: (859) 543-1016

July 16, 2003

RE:   Ramon Baca and Agnes Baca v. The Burlington Northern and Santa Fe Railway Company, et al.; 13th Judicial District for Valencia County, New Mexico; Cause No. d1314 CV-02-662

John D. Roven, Esquire
ROVEN, KAPLAN & WELLS
2190 North Loop West - Suite 410
Houston, Texas  77018-8008

VIA FACSIMILE AND U.S. MAIL

Dear Mr. Roven:

I am writing as a follow-up to our letter of May 16, 2003, wherein we requested available dates for the deposition of the Plaintiff, Ramon Baca, concerning the above-referenced matter.  Please provide a list of available dates so that we can begin scheduling this matter as soon as possible.

Please feel free to contact me if you have questions.

Very truly yours,

Jon B. Orndorff

JBO/scd

G:\VAPOR-CORP\NM 33-24\BACA case\Correspondence\Counsel.wpd

# BAKER & LANCIANESE
### LAW OFFICES

WV FILE

CHARLESTON, WV OFFICE:
THE FORBES CENTER
NORTHGATE BUSINESS PARK
200 ASSOCIATION DRIVE, SUITE 211
CHARLESTON, WV 25311-1268
(304) 556-4813
FACSIMILE: (304) 556-4814

**Jon B. Orndorff**
E-Mail: jorndorff@b-llaw.com
Reply to: Huntington

RIVER TOWER - SUITE 300
1108 THIRD AVENUE
HUNTINGTON, WV 25701-1578
(304) 522-6906
FACSIMILE: (304) 522-6910

WEBSITE: www.B-LLAW.COM

WASHINGTON DC OFFICE:
1090 VERMONT AVENUE, N.W.
SUITE 800
WASHINGTON, DC 20005-4927
(202) 966-1500
FACSIMILE: (202) 966-7075

LEXINGTON, KY OFFICE:
2333 ALEXANDRIA DRIVE
LEXINGTON, KY 40504-3215
(859) 514-6787
FACSIMILE: (859) 543-1016

July 18, 2003

RE:   Ramon Baca and Agnes Baca v. The Burlington Northern and Santa Fe Railway Company,
      et al.; 13th Judicial District for Valencia County, New Mexico; Cause No. d1314 CV-02-662

John D. Roven, Esquire
Joe Wells, Esquire
ROVEN, KAPLAN & WELLS
2190 North Loop West - Suite 410
Houston, Texas  77018-8008

VIA FACSIMILE ONLY

Dear Mr. Roven and Mr. Wells:

       I am in receipt of Mr. Wells' correspondence dated July 17, 2003, wherein he offered
July 21-23 as dates for Mr. Baca deposition in the above-referenced civil action.  Unfortunately, I
am unavailable for the dates offered due to prior scheduling conflicts.  However, I am available on
the dates of July 24 and July 25, should those dates be agreeable to you, Ms. Rael and Mr. Baca.

       Thank you for your cooperation in this matter.  Should you have any questions or
concerns, please feel free to contact me.

                                    Very truly yours,

                                    Jon B. Orndorff

JBO/tra
cc:   Feliz A. Rael, Esquire  *(via facsimile only)*
      Cindy M. Mercer, Esquire  *(via facsimile only)*
      Ronald C. Archibeque, Esquire  *(via facsimile only)*

G:\VAPOR-CORP\NM 33-24\BACA case\Correspondence\Counsel.wpd

# BAKER & LANCIANESE

### LAW OFFICES

WV-FILE

CHARLESTON, WV OFFICE:
THE FORBES CENTER
NORTHGATE BUSINESS PARK
200 ASSOCIATION DRIVE, SUITE 211
CHARLESTON, WV 25311-1268
(304) 556-4813
FACSIMILE: (304) 556-4814

**Jon B. Orndorff**
E-Mail: jorndorff@b-llaw.com
Reply to: Huntington

RIVER TOWER - SUITE 300
1108 THIRD AVENUE
HUNTINGTON, WV 25701-1578
(304) 522-6906
FACSIMILE: (304) 522-6910

WEBSITE: WWW.B-LLAW.COM

WASHINGTON DC OFFICE:
1090 VERMONT AVENUE, N.W.
SUITE 800
WASHINGTON, DC 20005-4927
(202) 966-1500
FACSIMILE: (202) 966-7075

LEXINGTON, KY OFFICE:
2333 ALEXANDRIA DRIVE
LEXINGTON, KY 40504-3215
(859) 514-6787
FACSIMILE: (859) 543-1016

August 4, 2003

RE:    Ramon Baca and Agnes Baca v. The Burlington Northern and Santa Fe Railway Company,
       et al.; 13th Judicial District for Valencia County, New Mexico; Cause No. d1314 CV-02-662

John D. Roven, Esquire
Joe D. Wells, Esquire
ROVEN, KAPLAN & WELLS
2190 North Loop West - Suite 410
Houston, Texas  77018-8008

## VIA FACSIMILE & U.S. MAIL

Dear Mr. Roven and Mr. Wells:

I am writing to again request available dates for the deposition of the Plaintiff, Ramon Baca, concerning the above-referenced matter.  Please provide a list of available dates so that we can begin scheduling this matter as soon as possible.

Please feel free to contact me if you have questions.

Very truly yours,

Jon B. Orndorff

JBO/scd
I:\USERS\GEN\VAPOR-CORP\NM 33-24\BACA case\Correspondence\Counsel.wpd

# BAKER & LANCIANESE

### LAW OFFICES

WV-FILE

CHARLESTON, WV OFFICE:
THE FORBES CENTER
NORTHGATE BUSINESS PARK
200 ASSOCIATION DRIVE, SUITE 211
CHARLESTON, WV 25311-1268
(304) 556-4813
FACSIMILE: (304) 556-4814

**Jon B. Orndorff**
E-Mail: jorndorff@b-llaw.com
Reply to: Huntington

RIVER TOWER - SUITE 300
1108 THIRD AVENUE
HUNTINGTON, WV 25701-1578
(304) 522-6906
FACSIMILE: (304) 522-6910

WEBSITE: www.B-LLAW.COM

WASHINGTON DC OFFICE:
1090 VERMONT AVENUE, N.W.
SUITE 800
WASHINGTON, DC 20005-4927
(202) 966-1500
FACSIMILE: (202) 966-7075

LEXINGTON, KY OFFICE:
2333 ALEXANDRIA DRIVE
LEXINGTON, KY 40504-3215
(859) 514-6787
FACSIMILE: (859) 543-1016

August 19, 2003

RE: Ramon Baca and Agnes Baca v. The Burlington Northern and Santa Fe Railway Company, et al.; United States District Court for the District of New Mexico; Civil Action 02-CV-1220

Joe D. Wells, Esquire
ROVEN, KAPLAN & WELLS
2190 North Loop West - Suite 410
Houston, Texas  77018-8008

VIA FACSIMILE & U.S. MAIL

Dear Joe:

The purpose of this letter is to respond to your August 13, 2003 correspondence wherein you offered the dates of August 20, August 21 or August 22 for the taking of Ramon Baca's deposition in Albuquerque, New Mexico, and to advise that we are not available on those dates.

It is my understanding, based upon a telephone conversation between you and my legal assistant, Samantha, that counsel for BNSF is not available on any other dates in August other than the three dates offered in your letter. Therefore, I am writing to request a list of available dates in the month of September, 2003, so that we can scheduling this matter as soon as possible.

I look forward to hearing from you.

Very truly yours,

Jon B. Orndorff

JBO/scd
cc:     John S. Thal, Esquire (via facsimile & U.S. Mail)
        Feliz A. Rael, Esquire (via facsimile & U.S. Mail)
I:\USERS\GEN\VAPOR-CORP\NM 33-24\BACA case\Correspondence\Counsel.wpd

# BAKER & LANCIANESE

### LAW OFFICES

CHARLESTON, WV OFFICE:
THE FORBES CENTER
NORTHGATE BUSINESS PARK
200 ASSOCIATION DRIVE, SUITE 211
CHARLESTON, WV 25311-1268
(304) 556-4813
FACSIMILE: (304) 556-4814

**Jon B. Orndorff**
E-Mail: jorndorff@b-llaw.com
Reply to: Huntington

RIVER TOWER - SUITE 300
1108 THIRD AVENUE
HUNTINGTON, WV 25701-1578
(304) 522-6906
FACSIMILE: (304) 522-6910

WEBSITE: www.B-LLAW.COM

WASHINGTON DC OFFICE:
1090 VERMONT AVENUE, N.W.
SUITE 800
WASHINGTON, DC 20005-4927
(202) 966-1500
FACSIMILE: (202) 966-7075

LEXINGTON, KY OFFICE:
2333 ALEXANDRIA DRIVE
LEXINGTON, KY 40504-3215
(859) 514-6787
FACSIMILE: (859) 543-1016

September 4, 2003

RE:   Ramon Baca and Agnes Baca v. The Burlington Northern and Santa Fe Railway Company,
      et al.; United States District Court for the District of New Mexico; Civil Action 02-CV-1220

John D. Roven, Esquire
ROVEN, KAPLAN & WELLS
2190 North Loop West - Suite 410
Houston, Texas  77018-8008

Dear John:

Thank you for your cooperation in allowing us to obtain the pathology and authorization releases for medical records of Mr. Baca in regard to the above-referenced litigation. The purpose of this letter is to seek your assistance concerning x-rays of Mr. Baca. We have been informed by the film library at Lovelace Health System that certain x-rays of Mr. Baca have been borrowed by the patient or perhaps your Firm, and have not been returned to their facility. Thus, we have been unable to obtain them for our review.

Please check your files and/or contact your client to determine who has the x-ray films from Lovelace Health System. As with the pathology you shared with me, perhaps you can forward the x-ray films directly to us and we will return same to you upon our review.

I look forward to hearing from you.

Very truly yours,

Jon B. Orndorff

JBO/scd
I:\USERS\GEN\VAPOR-CORP\NM 33-24\BACA case\Correspondence\Counsel.wpd

**EXHIBIT**

**2**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re: Asbestos Products Liability Litigation    :    CIVIL ACTION NO. MDL 875
                                                 :
                                                 :
                                                 :
                                                 :
                                                 :
_____         :
                                                 :
This Document Relates to:                        :
                                                 :
ALL FELA ACTIONS IN WHICH GENERAL :
MOTORS CORPORATION IS A                          :
DEFENDANT                                        :

## MOTION FOR SUMMARY JUDGMENT OF DEFENDANT
## GENERAL MOTORS CORPORATION

Defendant General Motors Corporation, by its attorneys, Lavin, Coleman, O'Neil, Ricci, Finarelli

& Gray, moves for summary judgment in all actions in which plaintiffs' claim against General Motors arises

from allegations regarding use of asbestos in locomotives.  In support of this motion General Motors relies

on the attached memorandum of law.

                                        LAVIN, COLEMAN, O'NEIL, RICCI,
                                        FINARELLI & GRAY

                                        BY: _____
                                             Gerard Cedrone, Esquire
                                             Attorneys for Defendant,
                                             General Motors Corporation

Dated:   November 21, 2002

EXHIBIT
3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:  Asbestos Products Liability Litigation   :     CIVIL ACTION NO. MDL 875

                                          :

                                          :

                                          :

This Document Relates to:             :

ALL FELA ACTIONS IN WHICH GENERAL :
MOTORS CORPORATION IS A         :
DEFENDANT                              :

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANT GENERAL MOTORS CORPORATION

### 1.    INTRODUCTION

Plaintiffs are former railroad employees who allege that they contracted asbestos-related diseases after working on old locomotives over the last 50 years. They bring claims against General Motors, a locomotive manufacturer, under state law, charging that the locomotives' parts were defective because they contained asbestos. Settled federal law preempts plaintiffs' claims.

Federal statutes and regulations govern all "parts and appurtenances" of locomotives and all aspects of locomotive equipment. Congress intended it to be so to ensure that safety standards with respect to locomotives were uniform nationwide, precluding a state-by-state patchwork of safety standards which might interfere with commerce by preventing locomotives from freely crossing state lines. Thus, 76 years ago, the United States Supreme Court ruled that the federal Locomotive Inspection Act (LIA), 49 U.S.C. §§ 20701-20903 "occupies the field" of the design, construction and materials of every part of locomotives, and

preempts all state law within that field, whether or not there are federal regulations on point. *Napier v. Atlantic Coast R.R.*, 272 U.S. 605, 611-13 (1926). The preemptive effect of the LIA extends to tort claims against manufacturers challenging locomotive design, construction and materials, and every federal court of appeals to reach the issue has so held.

The Secretary of Transportation has also specifically addressed asbestos. The Secretary judged there was no significant risk of exposure to asbestos in locomotives and "no evidence that the presence of asbestos [in locomotives] poses a problem to humans or the environment," and so found further regulation of asbestos in locomotives unwarranted. That federal judgment as to asbestos in respect to locomotives by itself preempts plaintiffs' claims. It also underlines that plaintiffs' state law claims as to asbestos in locomotives are well within the field federal law exclusively occupies.

As plaintiffs' asbestos-in-locomotive claims are preempted the Court should grant summary judgment to General Motors.

## II.    FACTS

Plaintiffs allege that exposure to asbestos-containing locomotive parts has caused them to contract asbestos-related illnesses. The complaints proceed on various state law tort theories, alleging in substance that the "asbestos products" were "defective" and "unreasonably dangerous" and that defendants, including GM, failed to warn of the danger of exposure to them. (*E.g.*, Blair Complaint ¶ 12, attached as Exhibit A.)

The similarity of the claims is such that reference to any one complaint is sufficiently illustrative. Donald E. Blair worked on board and near trains as a trainman, switchman, operator, conductor and brakeman at Consolidated Rail Corporation and in the Army. (Complaint, *Blair v. American Standard, Inc., et al.*, E.D. Va.  No. 2:01CV4580 [transferred to this Court as part of No. MDL 875], ¶ 6.A). He claims to

- 2 -

have been exposed to asbestos in locomotive components such as pipe covering, brakeshoes, friction products and insulation supplied by any of 15 defendants, not necessarily GM. (Blair Complaint ¶ 6.C). *See also Scheiding v. General Motors Corp.*, 77 Cal. Rptr. 2d 339, 340 n. 1 (Cal. App. 1998), *aff'd*, 993 P.2d 996 (Cal. 2000) (potentially asbestos-containing locomotive parts are: steam generator insulation, exhaust stack insulation, insulating tape, motor insulation, pipe sleeves, gaskets, certain brakeshoes). GM locomotives formerly included some asbestos-containing parts; hence its status as a defendant.

## III.   ARGUMENT

### A.   Summary Judgment Standard.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A "material" factual dispute must be one that, under the substantive law, could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Preemption of plaintiffs' claims as a matter of law renders any factual dispute immaterial and makes the case appropriate for summary judgment. *See, e.g., Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861 (2000) (trial court properly granted summary judgment against products liability claim, based on preemption); *Law v. General Motors Corporation*, 114 F.3d 908 (9th Cir. 1997) (affirming summary judgment based on LIA preemption); *Oglesby v. Delaware & Hudson Ry.*, 180 F.3d 458, 460-61 (2d Cir. 1999) (granting interlocutory appeal; trial court erred in denying summary judgment based on LIA preemption).

LAVIN, COLEMAN, O'NEIL, RICCI, FINARELLI & GRAY • ATTORNEYS AT LAW
SUITE 1000, 510 WALNUT STREET, PENN MUTUAL TOWER
PHILADELPHIA, PA 19106
(215) 627-0303

"comprehensive" federal regulation is LIA, which for 90 years has regulated locomotive safety. *See* Act of Feb. 17, 191 1, ch. 103, 36 Stat. 913 (enacting LIA); 49 U.S.C. §§ 20701, *et seq.* (current version). LIA is also known as the Locomotive Boiler Inspection Act (LBIA) or Boiler Inspection Act (BIA).

Seventy-six years ago Justice Brandeis' opinion for the Supreme Court in *Napier,* 272 U.S. 605, settled that LIA preempts state law in its field. *Napier* held that LIA "occupies the field" with respect to all areas subject to LIA, and that LIA accordingly preempts all state law within LIA's grant of authority to the Interstate Commerce Commission. *Id.* at 613.

At issue in *Napier* were Georgia's and Wisconsin's laws requiring fire box doors and cab curtains on all locomotives operating in those states. The Court ruled that LIA preempted them even though it found or assumed that (1) there was no conflict between the devices required by the states and those required by federal rules, (2) the state laws promoted safety, and (3) the state rules would no more than incidentally interfere with commerce. *Id.* at 610-11. The Court found that LIA conferred on the Commission "general" power to regulate locomotive safety equipment, *id.* at 611-12; that the state requirements were "within the scope of the authority delegated to the Commission" by LIA, *id.* at 611; and that LIA's grant to the Commission of that general power preempted all state law falling within its scope. *Id.* at 613.

The Court emphasized that it does not matter whether the state law falling within the occupied field conflicts with any federal rule, or whether there is any applicable federal rule at all:

> *It is also urged that, even if the Commission has power to prescribe an automatic firebox door and a cab curtain, it has not done so; and that it has made no other requirement inconsistent with the state legislation. This, also, if true, is without legal significance.* The fact that the Commission has not seen·fit to exercise its authority to the full extent conferred, has no bearing upon the construction of the Act delegating the power. We hold that state legislation is precluded, because the Boiler Inspection Act, as we construe it,

- 5 -

was intended to occupy the field. . . .  [R]equirements by the States are
precluded, however commendable or however different their purpose.

*Napier,* 272 U.S. at 613 (emphasis added).  State law in the field is preempted even if "the interference with

commerce resulting from the state legislation would be incidental only," or nonexistent.  *Napier,* 272 U.S.

at 611.

Napier remains the law.  A legion of cases, including every federal circuit to consider the issue, holds

that LIA continues to occupy the field, preempting all state law respecting locomotive equipment, and grants

exclusive authority over locomotive equipment to the Secretary of Transportation acting through the Federal

Railroad Administration (FRA).[1]  *See Law v. General Motors Corporation,* 114 F.3d 908, 910 (9th Cir.

1997) ("Congress intended federal law to occupy the field of locomotive equipment and safety, particularly

as it relates to injuries suffered by railroad workers in the course of their employment"; LIA preempted state

law-claims based on locomotive design or failure to warn, because within FRA's authority); *Forrester v.*

*American Dieselelectric, Inc.,* 255 F.3d 1205, 1210 (9th Cir. 2001) (similar; "the force of the sweeping

preemption rule under *Napier* remains unimpaired"); *Oglesby v. Delaware & Hudson Ry.,* 180 F.3d 458,

460-62 (2d Cir. 1999), *cert. denied,* 528 U.S. 1004 (1999) (LIA preempts design-defect and failure-to-warn

claims respecting locomotives); *Springston v. Consolidated Rail Corp.,* 130 F.3d 241 (6th Cir. 1997)

(because FRA had authority to require the warning devices at issue, any state liability for failure to install

them was preempted); *First Security Bank v. Union Pac. R.R.,* 152 F.3d 877, 880-81 (8th Cir. 1998) (LIA

preempted claim that locomotive's horn was inadequate); *Marshall v. Burlington Northern, Inc.,* 720 F.2d

---

[1]     In 1966, the power originally granted to the ICC was transferred to the Secretary of
Transportation. Pub. L. No. 89-670, 80 Stat. 931 (1966). *See generally Marshall v. Burlington Northern,*
*Inc.,* 720 F.2d 1149, 1154 (9th Cir. 1983). The FRA, a part of the Transportation Department, exercises this
power. 49 C.F.R. § 1.49(c)(5), (g).

LAVIN, COLEMAN, O'NEIL, RICCI, FINARELLI & GRAY • ATTORNEYS AT LAW
SUITE 1000, 510 WALNUT STREET, PENN MUTUAL TOWER
PHILADELPHIA, PA  19106
(215) 627-0303

1149, 1152 (9th Cir. 1983) (opinion by then-Judge Kennedy) ("[f]ederal regulation of locomotive equipment

under the [LIA] has been held a total occupation of the field, preventive of any state or local regulation on

the same subject"); *Missouri Pac. R.R. v. Railroad Commn*, 850 F.2d 264, 269 (5th Cir. 1988) (LIA

preempted requirement to equip locomotives with telemetry devices), *cert. denied*, 488 U.S. 1009 (1989).[2]

Thus, the United States Supreme Court summarily affirmed a decision of this Court that "regulating

locomotive equipment" is "an area totally preempted by the Locomotive Inspection Act" and state law within

that field "violates the supremacy clause." *Consolidated Rail Corp. v. Pennsylvania Pub. Util. Comm.*, 536

F. Supp. 653, 655-57 (E.D. Pa. 1982) (Giles, J.) (LIA preempted state law requiring locomotive speed

recorders and indicators), *aff'd*, 696 F.2d 981 (3d Cir. 1982), *aff'd*, 461 U.S. 912 (1983) (mem.). The

Supreme Court's affirmance is binding precedent. *Hicks v. Miranda*, 422 U.S. 332, 344 (1975).

In short, countless cases from the Supreme Court on down hold that LIA occupies the field,

preempting all state law within it.

---

[2]     State appellate and federal district court cases agree that LIA preempts state law, including state common law, respecting locomotive equipment. *See, e.g., Scheiding*, 993 P.2d at 998-1000; *Mickleson v. Montana Rail Link, Inc.*, 999 P.2d 985, 997 (Mont. 2000); *Norfolk Southern Ry. Co. v. Denson*, 774 So. 2d 549 (Ala. 2000); *Carter v. Consolidated Rail Corp.*, 709 N.E.2d 1235, 1239 (Ohio App. 1998), *app. denied*, 694 N.E.2d 75 (Ohio 1998); *Furlough v. Union Pac. R.R. Co.*, 766 So.2d 751, 761 (La. App. 2000); *Seaman v. A.P. Green Indust., Inc.*, 707 N.Y.S.2d 299 (Sup. Ct. N.Y. 2000); *Central R.R. of Ga. v. Markert*, 410 S.E.2d 437, 438 (Ga. App. 1991), *cert. denied* (Ga. 1991); *see Monarch v. S. Pac. Transp. Co.*, 70 Cal. App. 4th 1197, 1205 (1999) (FELA preempts state law of fraudulent concealment respecting locomotive noise; following *Napier*); *Union Pac. R.R. Co. v. Cal. P. U. C.*, 109 F. Supp. 2d 1186, 1208-12 (N.D. Cal. 2000); *Eldridge v. Missouri Pac. R.R.*, 832 F. Supp. 328 (E.D. Okla. 1993); *Green v. River Terminal Ry. Co.*, 585 F. Supp. 1019, 1027 (N.D. Ohio 1984), *aff'd*, 763 F.2d 805 (6th Cir.1985); *Gleason v. Soo Line R.R.*, 1999 U.S. Dist. Lexis 1510 (N.D. Iowa 1999).

LAVIN, COLEMAN, O'NEIL, RICCI, FINARELLI & GRAY • ATTORNEYS AT LAW
SUITE 1000, 510 WALNUT STREET, PENN MUTUAL TOWER
PHILADELPHIA, PA 19106
(215) 627-0303

b.   **The Preempted Field Includes All Matters Within the Secretary's Authority Under LIA, Including The Design, Construction and Material of Every Part of the Locomotive.**

The cases also firmly establish the sweeping breadth of that preemption. The preempted field is the entire "scope of the authority delegated to the Commission" - covering "the entire locomotive and tender and all parts and appurtenances thereof," including "the design, the construction and the material of every part of the locomotive and tender and of all appurtenances." *Napier*, 272 U.S. at 608, 611, 613; *Law*, 114 F.3d at 910-11; *Springston*, 130 F.3d at 244-45; *Marshall*, 720 F.2d at 1152 ("It is within the scope of the Secretary's authority to prescribe strobe or oscillating lights for locomotives, and any state regulation is therefore preempted"); *see generally* 49 U.S.C. §§ 20701-20903. State law in the field is preempted whether or not the Commission has exercised its authority. *Napier*, 272 U.S. at 611, 613; *see Oglesby*, 180 F.3d at 461; *Law*, 114 F.3d at 911; *Scheiding*, 993 P.2d at 1002.

Thus LIA's coverage, and the field it preempts, extends to all types of locomotive equipment.[3] It also includes health and safety issues arising from that equipment. LIA "vests in the Interstate Commerce Commission rule-making power adequate to protect employees against disease as well as against accident; and the power to make rules for employee health has been exercised." *Urie v. Thompson*, 337 U.S. 163, 193 (1949) (LIA covered employee injury from long-term inhalation of dust from locomotive's sander). *Napier* itself held health-and-safety regulations (cab curtains to keep out the cold and firebox doors to protect firemen) were preempted. *See Napier*, 272 U.S. at 613. *See also Law*, 114 F.3d at 910-12 (LIA preempted

---

[3]   *See, e.g., Missouri Pac. R.R. Co. v. Railroad Comm'n of Texas*, 833 F.2d 570, 576 (5th Cir. 1982) (fire extinguishers and first aid kits); *Marshall*, 720 F.2d at 1151 (warning lights); *Hines v. Smith*, 275 F. 766, 767 (7th Cir. 1921) (bell ringers); *Springston*, 863 F. Supp. at 541 (warning lights); *Green v. River Terminal Ry. Co.*, 585 F. Supp. 1019 (N.D. Ohio 1984), *aff'd,* 763 F.2d 805 (6th Cir. 1985) (radios); *Consolidated Rail*, 536 F. Supp.653 (speed recorders and indicators); *Brown v. Lehigh Valley R. Co.*, 177 N.Y.S. 618, 624 (Misc. 1919) (locomotive cab itself).

- 8 -

workers' claims of impaired hearing from locomotive noise); *Oglesby,* 180 F.3d at 461-62 (LIA preempted worker's claim of back injury from moving engineer's seat); *Scheiding,* 933 P.2d 996 (LIA preempted workers' claims from inhalation of asbestos); *Seaman,* 707 N.Y.S.2d at 301-02 (LIA preempted workers' claims from inhalation of asbestos).

*Napier's* preemption of all matters within federal authority under LIA, besides being settled law, embodies Congress' expressed intent. In overhauling railroad safety law, Congress reaffirmed that under LIA (and five other laws), "where the Federal Government has authority, with respect to rail safety, it preempts the field"; Congress specifically stated that these laws "have served well" and "chose to continue [them] without change." H.R. Rep. No. 91-1194 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4104, 4105, 4108. In 1994, Congress recodified LIA and various other transportation laws without substantive change, expressly preserving "the precedent value of earlier judicial decisions." Revision of Title 49, Transportation, United States Code, Pub. L. No. 103-272 §§ 1(a), 6(a), 108 Stat. 745, 1378 (1994); H.R. Rep. No. 103-180, at 3, 5 (1994), *reprinted in* 1994 U.S.C.C.A.N. 818, 820, 822. This express statement confirms the normal presumption that in reenacting the statute, Congress "was aware of . . . earlier judicial interpretations and, in effect, adopted them." *Keene Corp. v. United States,* 508 U.S. 200, 212-13 (1993) (reenactment of statute adopts settled judicial construction). *See also Scheiding,* 999 P.2d at 1000; *Consolidated Rail,* 536 F. Supp. at 655-57.[4]

---

[4]     The 1970 Federal Railroad Safety Act, 49 U.S.C. §§ 20101-20144, did not alter LIA's preemptive effect. *Springston,* 130 F.3d at 245; *Marshall,* 720 F.2d at 1152-53; *Consolidated Rail,* 536 F. Supp. at 655-57, *aff'd,* 696 F.2d 981 (3d Cir.), *aff'd,* 461 U.S. 912 (mem.). As stated in the text, Congress elected to retain LIA without change and again in 1994 stated that it intended to preserve judicial precedent.

LAVIN, COLEMAN, O'NEIL, RICCI, FINARELLI & GRAY • ATTORNEYS AT LAW
SUITE 1000, 510 WALNUT STREET, PENN MUTUAL TOWER
PHILADELPHIA, PA  19106
(215) 627-0303

### c.     Congress' Goal In Preempting: Uniform, Federal Regulation.

Precluding state law is essential to Congress' scheme.  Congress intended to ensure trains are subject to "one set of equipment regulations," so the rules don't change when the trains cross state lines:

> This broad preemptive sweep is necessary to maintain uniformity of railroad operating standards across state lines.  Locomotives are designed to travel long distances . . . through interstate commerce.  The virtue of uniform national regulation is self-evident: locomotive companies need only concern themselves with one set of equipment regulations and need not be prepared to remove or add equipment as they travel from state to state.

*Law*, 114 F.3d 908, 910 (internal quotation marks and citation omitted).  Permitting state standards would require locomotives to change "as they cross state lines, or adhere to the standard set by the most stringent state.  Either way, Congress's goal of uniform, federal railroad regulation would be undermined." 114 F.3d at 910-11.  Thus, "[e]xclusivity of the Boiler Act must have been influenced by the paralyzing effect on railroads from prescription by each state of the safety devices obligatory on locomotives that would pass through many of them." *Swift & Co. v. Wickham*, 230 F. Supp. 398, 407-08 (S.D.N.Y. 1964) (Friendly, J.), *appeal dismissed*, 382 U.S. 111 (1965), *aff'd*, 364 F.2d 241 (2d Cir. 1966), *cert. denied* (1967), 385 U.S. 1036.

FRA emphasizes that it is "essential" that its authority remain exclusive, even in respect to other federal agencies:

> [I]t is essential that the safety of railroad operations be the responsibility of a single agency and that that agency undertake new initiatives in an informed and deliberate fashion, weighing the impact of particular proposals on longstanding industry practices and preexisting regulations. . . . ¶ [I]t is the judgment of the agency that piecemeal regulation of individual hazards . . . by any other agency of government would be disruptive and contrary to the public interest.

LAVIN, COLEMAN, O'NEIL, RICCI, FINARELLI & GRAY • ATTORNEYS AT LAW
SUITE 1000, 510 WALNUT STREET, PENN MUTUAL TOWER
PHILADELPHIA, PA  19106
(215) 627-0303

Dep't of Transp., Fed. R.R. Admin., *Railroad Occupational Safety and Health Standards: Termination*, 43 Fed. Reg. 10,583, 10,585-86 (March 10, 1978).

Summary:   LIA occupies the field and preempts all state law as to every subject within the scope of the Secretary of Transportation's authority.  That includes the design, the construction and the material of every part of the locomotive.

### 2.   Plaintiffs' Claims Fall Within the Occupied Field.

"If Congress evidences an intent to occupy a given field, any state law falling within that field is preempted." *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984).  It is so here.  Plaintiffs allege that GM is liable because parts on its locomotives included asbestos materials. P. 2-3 above.  Plaintiffs complain of the asbestos materials, the design that called for them and the construction that used them.  Thus plaintiffs' claims fall squarely within the preempted field:

- Plaintiffs' complaint directly attacks the "design," "construction" and "material" of "part[s] of the locomotive." *Napier*, 272 U.S. at 611.

- Regulation of all locomotive parts and materials is "within the scope of the authority delegated to the [Secretary]." *Napier*, 272 U.S. at 611-13; *Law*, 114 F.3d at 911; *Oglesby*, 180 F.3d at 461.  So, in particular, is the protection of employees against inhalation of hazardous substances.  *Urie v. Thompson*, 337 U.S. 163, 193 (1949) (silicosis from inhalation of locomotive sanders).

As it is within the Secretary's exclusive power to regulate the design, construction, and materials of those parts, it is beyond the states' power to regulate any one of them. *Napier*, 272 U.S. at 611-13.

It necessarily follows that plaintiffs' asbestos claims are preempted, which the case law confirms. In *Scheiding*, plaintiffs sued GM for using asbestos in locomotives, alleging negligence, strict liability, failure to warn, false representation, negligent infliction of emotional distress, and "other state common law

LAVIN, COLEMAN, O'NEIL, RICCI, FINARELLI & GRAY • ATTORNEYS AT LAW
SUITE 1000, 510 WALNUT STREET, PENN MUTUAL TOWER
PHILADELPHIA, PA  19106
(215) 627-0303

claims." 993 P.2d at 997 & n.1, 1004. The California Supreme Court held *Napier* and LIA "foreclosed those claims":

> [T]he foregoing principles [*i.e.* LIA preemption] govern the viability of plaintiffs' state law causes of action, which are based upon their claim that defendant manufactured a defective product by utilizing asbestos in the design of its locomotives. . . . There is no doubt that the Secretary of Transportation has authority to regulate the design of the locomotive and could order the elimination of asbestos in locomotive components. Imposing tort liability on railroad locomotive manufacturers clearly would affect "'the design, the construction and the material' of locomotives."

*Id.* at 999 (quoting *Napier* and *Law*; footnote omitted); *accord, Seaman v. A.P. Green Indust., Inc.*, 707 N.Y.S.2d 299, 300-02 (N.Y. Sup. Ct. 2000) (plaintiffs alleged they "contracted asbestos-related disease from inhaling dust from locomotive components" and sued in negligence, failure to warn and strict liability; plaintiffs' claims preempted).

Nor can plaintiffs avoid preemption by pleading failure to warn. "As for warning requirements, these too are within the scope of the Secretary [of Transportation's] authority - an authority which the Secretary has often invoked." *Law*, 114 F.3d at 911; *Scheiding*, 993 P.2d at 1004. Thus, the courts uniformly hold failure-to-warn claims preempted. *Law*, 114 F.3d at 911 (LIA preempted claim of failure to warn of risk of deafness from engine and brake noise); *Oglesby*, 180 F.3d at 461-62 (LIA preempted failure-to-warn claim respecting method of moving engineer's seat); *Scheiding*, 993 P.2d at 1004 (LIA preempted failure-to-warn claim respecting asbestos). That is necessarily right. Not only are warnings within the Secretary's authority and so outside the states', but nearly any design-defect (or construction defect or materials defect) claim can be recast into a failure-to-warn claim by alleging the defendant did not warn about the supposed defect. Therefore, permitting defect claims dressed up as failure-to-warn claims would in effect unpreempt all defect

- 12 -

claims and so eviscerate *Napier,* exactly the opposite of what the law commands. See *Oglesby,* 180 F.3d at 461-62 (LIA preempted failure-to-warn claim; "the relevant inquiry is not whether a label falls under the BIA, but whether [the subject of the warning] does"); *Ouellette v. Union Tank Car Co.,* 902 F. Supp. 5, 10 (D. Mass. 1995) (federal regulation of design preempted claim for failure to warn of dangers from the design, under Federal Railroad Safety Act); *cf. Lewis v. Intermedics Intraocular, Inc.,* 56 F.3d 703, 707 (11th Cir. 1995) (where design defect claim is preempted, so is claim of failure to warn about danger from defect); *Pak v. Chrysler Motors Corp.,* 1990 U.S. Dist. LEXIS 16349 at *5 (E.D. Pa. 1990) (plaintiff cannot "circumvent" preemption of design-defect claim by relying on "a duty to warn theory"), *aff'd,* 941 F.2d 1200 (3d Cir. 1991).

Finally, although not necessary to preemption, the Secretary extensively regulates locomotive equipment, including the parts at issue here (*see* p. 5-6 n. 1 above). This regulation underscores the Secretary's undoubted authority over these matters. The Secretary has exercised his authority to regulate the design, construction and material of the locomotive and all its parts, including, for example, cab seats, wheel brakes, hand brakes, couplers, handholds, sill steps, running boards, and ladders. *See* 49 C.F.R. Part 229 (locomotive safety standards). The Secretary has specifically regulated insulation. Regulations require that various locomotive parts must be insulated and insulation must be inspected and kept in good condition. 49 C.F.R. §§ 229.25(b) (requiring periodic inspection of "visible insulation"), 229.89 (prohibiting "[b]roken or badly chafed insulation" on certain connections), 229.83 (certain parts that may become electrically

- 13 -

charged must be insulated).[5] The Secretary also regulates brakes (49 C.F.R. §§ 229.46-59), 993 P.2d at 999 n.2 (citing FRA report).[6]

The Secretary's determination that further regulation of asbestos is unwarranted underlines that regulation of it is within his authority, and so preempted.[7] But, again, it would be equally preempted had he not made that determination: Matters within the Secretary's authority are preempted whether the Secretary ever addressed the matter, regulated it or declined to. *Napier*, 272 U.S. at 612-13. For *"Napier* states in no uncertain terms that the relevant question" for preemption under LIA "is not whether the federal government has exercised its authority . . . but whether it possesses the power in the first place," and "any

---

[5]    Federal regulation of locomotive insulation in fact extends back before plaintiffs began working on locomotives in the 1940's. *See, e.g.,* former 49 C.F.R. § 91.16 (1939) ("ragging" [insulation] on boilers must be removed every five years); 49 C.F.R. § 91.254 (1939) ("a careful inspection of all visible insulation . . . shall be made and all defects repaired"); 49 C.F.R. § 91.253 (1939) (electrical insulation must be tested at least annually).

[6]    Asbestos is not unregulated, however.  OSHA, with FRA's agreement, limits workers' exposure to asbestos. *Locomotive Crashworthiness and Cab Working Conditions: Report to Congress* (1996) at 10-11.

[7]    Indeed, the federal determination that regulation is unwarranted preempts state law even apart from LIA's field preemption. "If after due consideration the FRA determines that a particular regulation is not justified, that determination has the same preemptive effect as the adoption of a regulation." *Burlington N. R.R. v. State of Montana,* 880 F.2d 1104, 1107 (9th Cir. 1989) (citation omitted); *Missouri Pac. R.R. v. Railroad Comm'n of Texas,* 850 F.2d 264, 267-68 (5th Cir. 1988) (state caboose requirement preempted where FRA had determined not to require them); *Norfolk & Western Ry. v. Pub. Util. Commn,* 926 F.2d 567, 572 (6th Cir. 1991) ("The FRA has purposefully declined to implement a national regulation requiring railroad walkways on bridges. Thus, [the Ohio Public Utilities Commission] is preempted from issuing such a regulation."); *Burlington N. R.R. v. State of Montana,* 805 F. Supp. 1522, 1528 (D. Mont. 1992)("no state can require that which the FRA has expressly rejected"); *Marshall,* 720 F.2d at 1153-54 ("where the FRA has rejected the requirement of strobe or oscillating lights, a state may not require them"); *cf.* Ray v. *Atlantic Richfield Co.* 435 U.S. 151, 178 (1978) (federal "ruling that no such regulation is appropriate or approved pursuant to the policy of the statute" preempts state law).  In short, the FRA in effect has said "we haven't done anything because we have determined it is appropriate to do nothing," so state regulation would conflict with that determination and is preempted. *Missouri Pac. R.R. v. Railroad Comm'n of Texas,* 850 F.2d at 267-68.

- 14 -

state law that attempts to regulate within the domain is preempted." *Oglesby,* 180 F.3d at 461; *Springston,* 130 F.3d at 244-45; *Law,* 114 F.3d 908 (same); *First Security Bank v. Union Pac. R.R.,* 152 F.3d 877, 880-81 (8th Cir. 1998) (same); *Scheiding,* 993 P.2d at 1002 ("It is also immaterial to our analysis that plaintiffs' causes of action raise no conflict with any provision of the BIA or its implementing regulations," or even, if true, that the FRA did not specifically regulate asbestos, for "[h]aving occupied the field, Congress left no area within which states may act.").

<u>Summary</u>.  Plaintiffs' claims attack the design, construction and materials of locomotive parts. Those matters fall within the Secretary's exclusive authority, so claims respecting them are preempted, as the cases confirm.

### 3.   LIA Preempts Common-Law Claims.

Plaintiffs may argue that LIA preempts only statutes, not common-law claims, that fall within the field LIA preempts.  That is certainly wrong.  It has been settled for over 40 years that damages claims are designed to affect conduct, regulate just as statutes and regulations do, and are preempted as statutes and regulations are:

> Our concern is with delimiting areas of conduct which must be left free from state regulation if national policy is to be left unhampered. *Such regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing policy and controlling conduct. Even the States' salutary effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme.*

*San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 246-47 (1959) (emphasis added).  Just two years ago the Supreme Court reiterated that ordinary preemption principles apply to common-law damages actions. *Geier v. American Honda Motor Co.,* 529 U.S. 861, 868-69 (2000) (holding common-law products

- 15 -

LAVIN, COLEMAN, O'NEIL, RICCI, FINARELLI & GRAY • ATTORNEYS AT LAW
SUITE 1000, 510 WALNUT STREET, PENN MUTUAL TOWER
PHILADELPHIA, PA  19106
(215) 627-0303

liability claim preempted); *see also Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 521-23 (1992) ("[clommon-law damage actions" are "premised on the existence of a legal duty"; the common law imposing that duty held preempted); *International Paper Co. v. Ouellette*, 479 U.S. 481 (1987) (common-law nuisance claims preempted).

Accordingly, cases construing LIA, in every circuit to address the issue, make abundantly clear that LIA preempts common-law products-liability claims. *Law*, 114 F.3d at 910-11 (design defect and failure to warn claims concerning engine insulation and brake noise preempted); *Springston*, 130 F.3d at 244-45 (negligence and strict liability design defect laws for failure to install warning devices on locomotives preempted); *Marshall*, 720 F.2d at 1152 (same); *Eldridge v. Missouri Pacific R.R.*, 832 F. Supp. 328 (E.D. Okla. 1993) (same); *Central of Ga. Ry. v. Markert*, 410 S.E.2d 437, 438 (Ga. App. 1991) (same). *Oglesby v. Delaware & Hudson Ry.*, 180 F.3d at 460-61, 462 (2d Cir. 1999), *cert. denied*, 528 U.S. 1004 (1999) (common law defect and failure-to-warn claims concerning an engineer's seat preempted); *First Security Bank v. Union Pac. R.R.*, 152 F.3d 877, 880 (8th Cir. 1998) (common law defect claims concerning locomotive horn preempted); *Dillon v. Chicago S. & S. R.R. (In re Train Collision)*, 670 N.E.2d 902, 908-11 (Ind. App. 1996), *transfer denied*, 683 N.E.2d 591 (Ind. 1997), *cert. denied*, 522 U.S. 914 (1997) (train-collision victims' claims against manufacturers and others "regarding alleged defects in the design and structure of the train cars" preempted); *Key v. Norfolk Southern Railway Co.*, 491 S.E.2d 511, 513 (Ga. App. 1997) (claim that locomotive's steps defectively designed preempted); *see also CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664, 675 (1993) (Federal Railroad Safety Act preempts common-law claims).

Thus, common-law claims founded on use of asbestos are preempted like any other. *Scheiding*, 993 P.2d 996; *Seaman*, 707 N.Y.S.2d at 301-02; p. 4 above.

- 16 -

### 4.   LIA Preempts Claims Against Manufacturers.

Plaintiffs may argue that common law claims against locomotive manufacturers respecting locomotive parts are not preempted. Every appellate court to address the issue disagrees. *Law* explains why. There railroad employees sued two locomotive manufacturers for asserted design defects and failures to warn. The Ninth Circuit rejected their argument that LIA does not preempt claims against manufacturers:

> This distinction [between manufacturers and railroads] . . . is without significance. The BIA preempts any state action that would affect "the design, the construction, and the material" of locomotives. *Napier*, 272 U.S. at 611. Imposing tort liability on railroad equipment manufacturers would do just that, by forcing them to conform to design and construction standards imposed by the states. This would transfer the regulatory locus from the Secretary of Transportation to the state courts - a result the BIA was clearly intended to foreclose.

*Law*, 114 F.3d at 911-12. Once again, numerous cases agree. *E.g., Oglesby,* 180 F.3d at 462 (defect and failure to warn claim against manufacturer preempted); *Springston,* 130 F.3d at 244-45 (defect claim against manufacturer preempted); *Forrester,* 255 F.3d at 1210 (claim against locomotive crane manufacturer preempted); *Scheiding,* 993 P.2d at 999, 1003-04 (quoting *Law;* locomotive-asbestos claims against manufacturer preempted); *Seaman,* 707 N.Y.S.2d at 300-02 (locomotive-asbestos claims against manufacturer preempted); *Dillon,* 670 N.E.2d at 911 (defect claims against manufacturers preempted); *cf. First Security Bank v. Union Pac. R.R.,* 152 F.3d 877, 880-81 (8th Cir. 1998) (quoting *Law* with approval); *Capozzi v. Blanchette, 433* F. Supp. 704, 705 (W.D.N.Y. 1977) (Federal Railroad Safety Act preempts all claims against manufacturer of railroad car); *Ouellette v. Union Tank Car Co.,* 902 F. Supp. 5, 10 (D. Mass. 1995) (similar).

One decision only holds that preemption does not apply to claims against manufacturers: *Lorincie v. Southwestern Pennsylvania Transp. Authority,* 34 F. Supp. 2d 929 (E.D. Pa. 1998) (Pollak, J.). *Lorincie*

- 17 -

is not binding on this Court[8] and, especially in light of subsequent law, was wrongly decided. First, *Lorincie* relied on a supposed presumption against preemption. 34 F. Supp. 2d at 933, 934. The Supreme Court later made clear that "an 'assumption' of nonpreemption is not triggered when the State regulates in an area where there has been a history of significant federal presence." *United States v. Locke,* 529 U.S. 89, 108 (2000) (involving ship design). That is this area. Railroads have been "subject to comprehensive federal regulation for nearly a century. . . . There is no comparable history of longstanding state regulation . . . of the railroad industry." *Transportation Union v. Long Island R.R.,* 455 U.S. 678, 687-88 (1982); p. 4, above. Second, *Lorincie* wrongly assumed that LIA does not apply to manufacturers. 34 F. Supp. 2d at 934. It does.[9] (Pp.19-20 below). Third, *Lorincie* relied on two other lower court cases. 34 F. Supp. 2d at 933 n.3, 934 n.6. One was later overruled, and the other reversed.[10] Fourth, no case has followed *Lorincie,* and the Second Circuit has disapproved it. *See Oglesby,* 180 F.3d at 462.

---

[8]    "Decisions of district courts . . . are not binding in any other case, even before the same judge who rendered the decision, nor upon any other court." *Kessler v. Assoc. Financial Serv. Co.,* 573 F.2d 577, 579 (9th Cir. 1977); 18 J. Moore et al., *Moore's Federal Practice* § 134.02 [1][d] (2000).

[9]    Any "manufacturer . . . of railroad equipment" who violates "any requirement of . . . the Locomotive Inspection Act" is subject to penalties. 49 C.F.R. §§ 229.7(b), 229.21, 229.33, 230.0. Any person who "causes the violation" of a requirement is also punishable. 49 C.F.R. §§ 229.7(b), 230.0. Indeed, the statute itself applies to any "person" violating LIA or FRSA or their regulations. 49 U.S.C. § 21302. Person includes manufacturer; an earlier version of 49 U.S.C. § 21302 expressly said so, Pub. L. No. 102-365, 106 Stat. 973, 974, 977 (1992), but was "omitted as surplus because of the definition of 'person' in 1:1 and because the provision being violated indicates to whom it applies." *Id.* The Secretary of Transportation may impose penalties of up to $20,000 per day. 49 U.S.C. § 21302.

[10]    *See Lorincie,* 34 F. Supp. 2d at 933 n.3, 934 n.6 (citing *Viad Corp. v. Superior Court,* 55 Cal. App. 4th 330 (1997) and district court decision in *Oglesby v. Delaware & Hudson Ry.,* 964 F. Supp. 57 (N.D.N.Y. 1997)); *Scheiding,* 993 P.2d at 1004 n.6 (overruling *Viad*); *Oglesby,* 180 F.3d 458 (reversing district court decision in *Oglesby*).

- 18 -

*Lorincie* also overlooks the controlling principle mandating that claims against manufacturers be preempted: Preemption depends on whether a claim is within the preempted field, not who the defendant is. For example, in *Taylor AG Industries v. Pure-Gro*, 54 F.3d 555 (9th Cir. 1995), plaintiffs sued the manufacturer and the distributor of various chemicals. Plaintiffs claimed the chemicals were improperly labeled, leading plaintiffs to misapply them. The FIFRA labeling requirements (*see* Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. §§ 136-136y, *et seq.*) applied directly to the manufacturer only, but the Ninth Circuit held they preempted claims against the manufacturer and the distributor, upon this principle:

> Under *Cipollone*, the analysis focuses not on whom the legal duty is imposed, but on whether the legal duty constitutes a state law requirement to provide information in addition to or different from the label. *Id.* at 561 n.3.

> Imposing liability [on the distributor] would circumvent the purposes of FIFRA by allowing states to require indirectly the dissemination of information that is outside the scope of the Manufacturers' labels. *Id.* at 562.

Thus what is regulated matters, who is regulated does not. What is regulated here is "the design, the construction and the material" of locomotive "parts" and "appurtenances." *Napier*, 272 U.S. at 611. Because plaintiffs' claims fall within that field they are preempted. *Accord, Law*, 114 F.3d at 911-12 (citing *Taylor*).

As they must be: LIA's purpose is to assure uniform, federal regulation of the "design, the construction and the material of every part of the locomotive." *Napier*, 272 U.S. at 611. That purpose would be frustrated if state law controlled the manufacturers who design, construct and choose the material. For if the standards imposed on locomotive manufacturers varied among states, manufacturers would have to build and sell locomotives and locomotive parts that complied with those state standards. Therefore, the

LAVIN, COLEMAN, O'NEIL, RICCI, FINARELLI & GRAY • ATTORNEYS AT LAW
SUITE 1000, 510 WALNUT STREET, PENN MUTUAL TOWER
PHILADELPHIA, PA 19106
(215) 627-0303

railroads would have to buy and install equipment that complied with those state standards. That is exactly what LIA and *Napier are* meant to foreclose, as *Law*, 114 F.3d at 910-11, explains:

> If each state were to adopt different liability-triggering standards, manufacturers would have to sell locomotives and cars whose equipment could be changed as they crossed state lines, or adhere to the standard set by the most stringent state. Either way, Congress's goal of uniform, federal railroad regulation would be undermined.

Or, as *Scheiding*, 993 P.2d at 1003, puts it:

> Sanctioning state common law actions against manufacturers would raise the same concerns for impairing the nationwide uniformity essential to the regulation of railroads as would sanctioning such actions against operators.

Therefore, and in sum, Congress' intent "would be accomplished best by including the manufacturer within the statute's coverage," as every appellate court to reach the issue has held. *Oglesby*, 180 F.3d at 462; *see also Law*, 114 F.3d at 911-12.

### C. Plaintiffs Have A Potent Non-Preempted Remedy.

Preemption of plaintiffs' claims against GM does not leave them without a remedy. "Once Congress has chosen to preempt the state claim, it's free to give affected individuals a full federal claim, a claim providing only for remedies limited to equity, a damages claim only, or no claim at all." *Spinelli v. Gaughan*, 12 F.3d 853, 858 (9th Cir. 1993). Congress has accorded railroad employees a full federal claim for their alleged injuries. It lies against their employers, under FELA, 45 U.S.C. § 51, *et seq*. FELA provides a uniform federal system of compensation for on-the-job injuries - "a mechanism that doesn't undermine the BIA's goal of uniformity." *Law*, 114 F.3d at 912. "This [FELA] remedy is strong medicine." *Law*, 114 F.3d at 912. Under it, a worker may recover the same compensatory damages as are available at common law where "employer negligence played any part, even the slightest, in producing the injury or

LAVIN, COLEMAN, O'NEIL, RICCI, FINARELLI & GRAY • ATTORNEYS AT LAW
SUITE 1000, 510 WALNUT STREET, PENN MUTUAL TOWER
PHILADELPHIA, PA 19106
(215) 627-0303

death for which damages are sought." *Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 506 (1957). Neither contributory negligence nor assumption of risk is a defense. 45 U.S.C. § 53-54. There is no ceiling on recovery, including for pain and suffering. *See Mileski v. Long Island R.R. Co.*, 499 F.2d 1169 (2d Cir. 1974).

The congressional scheme is: LIA and SAA preempt state-law claims; FELA provides a federal remedy for railroad workers - one that "doesn't undermine LIA's goal of uniformity." *Law v. General Motors*, 114 F.3d at 912. Plaintiffs have no claim against GM. Plaintiffs have a claim under FELA. They should bring it, if they have not already.

## IV.   CONCLUSION

The Court should grant General Motors summary judgment.

Respectfully submitted,

LAVIN, COLEMAN, O'NEIL, RICCI, FINARELLI & GRAY

BY: _____
Gerard Cedrone, Esquire
Attorneys for Defendant,
General Motors Corporation

Dated:   November 21, 2002

- 21 -

LAVIN, COLEMAN, O'NEIL, RICCI, FINARELLI & GRAY • ATTORNEYS AT LAW
SUITE 1000, 510 WALNUT STREET, PENN MUTUAL TOWER
PHILADELPHIA, PA  19106
(215) 627-0303

## CERTIFICATION OF SERVICE

I, Eugene Hamill, Esquire, hereby certify that a true and correct copy of the within Motion for Summary Judgment of Defendant General Motors Corporation was forwarded to counsel identified on the attached counsel list, by first-class U.S. mail, postage pre-paid, on November 22, 2002.

LAVIN, COLEMAN, O'NEIL, RICCI, FINARELLI & GRAY

BY: _____
Eugene Hamill, Esquire
Attorney for Defendant,
General Motors Corporation