

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG 1 1 2004

FILED
CLERK'S OFFICE

## DOCKET NO. 875

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION
## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

### *Janet Hockley v. ACF Valves, et al.;*
*United States District Court for the Southern District of Mississippi, Southern Division;*
*Civil Action No. 1:04CV512*

### VARIOUS DEFENDANTS' RESPONSE TO PLAINTIFF'S
### MOTION TO VACATE CONDITIONAL TRANSFER ORDER
### PURSUANT TO RULE 7.2 AND 7.4 OF THE RULES OF PROCEDURE
### FOR THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

COME NOW, various Defendants[1] [hereinafter Defendants] and submit their

response to Plaintiff's Motion to Vacate Conditional Transfer Order, and in support

thereof, would show this Honorable Court the following, to-wit:

---

[1] Sixty-one defendants are represented in this Response by counsel Forman, Perry, Watkins, Krutz & Tardy LLP. Those Defendants are: A. R. Wilfley & Sons, Inc.; Accurate Felt & Gasket Co., Inc.; Alfa Laval, Inc.; Alstom Power, Inc.; Ametek, Inc.; The American Crane Corporation; Aurora Pumps; B-I-F; Babbitt Steam Specialty Co.; Branton Insulations, Inc.; CertainTeed Corporation; Cooper Alloy Corporation; Crompton Corporation; Crossfield Products Corp.; Dana Corporation; Dover Corporation; Eastern Safety Equipment Co.; Engelhard Corporation; FKI Industries, Inc.; Flexo Products, Inc.; Foseco, Inc.; French Oil Mill Machinery Co.; Gardner-Denver, Inc.; General Electric Co.; Georgia-Pacific Corporation; Illinois Tool Works, Inc.; Industrial Holdings Corporation f/k/a The Carborundum Company; Ingersoll-Rand Co.; Jamestown Metal Marine Sales, Inc.; Kamco Supply Co., Inc.; Keeler-Door/Oliver, erroneously sued as Dorr-Oliver, Inc; Kimberly-Clark Corporation; Komp Equipment Co., Inc.; Laurel Machine & Foundry Co., Inc.; Lawrence Pumps, Inc.; Lincoln Electric Co.; Magnetrol International Incorporated; Marsh Instruments, Inc.; McMaster-Carr Supply Co.; Mueller Steam Specialty; Nikko Materials USA, Inc. d/b/a Gould Electronics, Inc.; NIBCO, Inc.; National Service Industries; Owens-Illinois, Inc.; Parker Hannifin Corporation; Patterson Kelley Company; Pecora Corp.; Phoenix Specialty Manufacturing Co., Inc.; Robbins & Myers, Inc.; Rogers Corporation; SPX Corporation; Schutte & Koerting, Inc.; Standard Equipment Co., Inc.; Stuart C. Irby Co.; Sulzer Pumps (US), Inc.; Turner Supply Co.; Universal Oil Productions, Inc.; Warren Pumps, Inc.; Yeomans Chicago Corporation; Yuba Heat Transfer; and Zurn Industries, Inc.

IMAGED AUG 1 2 '04    OFFICIAL FILE COPY

## BACKGROUND

1. On or about February 6, 2004, Plaintiff filed her Complaint in the Circuit Court of Copiah County, Mississippi.  See Exhibit 1.

2. On or about April 5, 2004, Plaintiff filed her Responses to Defendants' Master Set of Interrogatories and Request for Production of Documents.  See Exhibit 2.

3. Based on Plaintiff's Responses to Defendants' Master Set of Interrogatories, on May 5, 2004, Defendants filed a Notice of Removal with the Clerk of the Court for the Southern District of Mississippi, Southern Division, effectuating removal of this action from the Circuit Court of Copiah County, Mississippi.  See Exhibit 3.

4. Defendants subsequently filed a tag-along transferring the case to the Multidistrict Litigation Panel, In Re Asbestos Products Liability on May 5, 2004.

5. Defendants removed this action alleging federal question jurisdiction based upon: (1) Plaintiff's claims arising within a federal enclave pursuant to 28 U.S.C.A. § 1331 and U.S. Const. Art. 1, § 8, cl. 7; and, (2) that Plaintiff's claims are such that defendants may possess a colorable federal defense based upon compliance with designs and specifications set forth by federal officers with the meaning of 28 U.S.C. § 1442 (a)(1).

6. On or about July 15, 2004, prior to the conditional transfer order of the MDL Panel, Defendants sent Plaintiff's counsel a letter requesting a Rule 26 conference and enclosed remand related discovery.  See Exhibit 4.

7. On or about July 26, 2004, Plaintiff filed a Motion to Vacate Conditional Transfer Order Pursuant to Rule 7.2 and 7.4 of the Rules of Procedure for the Judicial

Panel on Multidistrict Litigation and a Brief In Support of their Motion.  See
Exhibit 5.

## ARGUMENT & ANALYSIS

1. While Plaintiff, in her Motion to Vacate Conditional Transfer Order specifically cites the following language from her Complaint and attempts to disclaim any exposure on a federal facility, this is nothing more than an attempt by Plaintiff to avoid proper federal court jurisdiction:

> The Plaintiff specifically denies that he has ever had any claims for relief under any applicable federal statute against any Defendant and waive any and all claims that might have accrued under any applicable federal statute.  The Plaintiff denies that he was ever exposed to asbestos on property subject to federal jurisdiction and waive the right to seek recovery for any alleged exposure that may have occurred on property subject to federal jurisdiction.

2. Plaintiff claims in her Motion to Vacate that, because of this disclaimer in the Complaint, removal by Defendants is defective on its face.  This could not be farther from the truth.

3. Plaintiff's response to Interrogatory No.6, attached as Exhibit 2, does not support the disclaimer.  In this response, Plaintiff lists two worksites where her decedent, James Jay, worked and was allegedly exposed to asbestos containing products. Note on page three (3) of these responses detailed in chart form that Plaintiff's decedent worked at Addkison Hardware in Jackson, Mississippi, from 1973 to 1983, and the United States Coast Guard in Gulfport, Mississippi, from 1948 to 1973.  More importantly, in Plaintiff's response to this interrogatory, she alleges that her decedent was exposed to "boilers, pipes" while working at the Coast Guard but "unknown" products at Addkison Hardware.

4. Based on this information, Defendants properly removed this case to federal court. At the time of removal and currently, there exists a question as to federal jurisdiction based on federal enclave and/or federal officer. Whether a case is properly removed is determined based on the plaintiff's pleadings at the time of the removal. *Adams v. Bank of America, N.A.*, 317 F. Supp. 2d 935 (S.D. Iowa 2004); see also *Blaylock v. Mutual of New York Life Ins. Co.*, 228 F. Supp. 2d 778 (S.D. Miss 2002); *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880 (5th Cir. 2000).

5. Plaintiff is alleging exposure to "known" asbestos containing products while working at the Coast Guard in Gulfport, Mississippi, and "unknown" products while working at Addkison Hardware in Jackson, Mississippi. Plaintiff cannot simply '**disclaim**' exposure in the Complaint at a federal facility, subsequently file discovery responses '**claiming**' exposure while working at the United States Coast Guard, and then '**disclaim**' exposure to asbestos containing products in her Motion to Vacate Conditional Transfer of the Case to the MDL. The **only** products that Plaintiff's decedent claimed exposure to at this point are "boilers" and "pipes" while working at the United States Coast Guard. The attempt by Plaintiff to **disclaim** exposure in the Complaint at a federal facility, later **claim** exposure in responses to Interrogatories, and then later **disclaim** exposure in her Motion to Vacate, all while alleging that the only 'known' products Plaintiff was exposed to were "boilers" and "pipes" while working at the United States Coast Guard, is completely inconsistent reasoning and is nothing more than an attempt by Plaintiff to avoid proper federal court jurisdiction.

6. Plaintiff's discovery responses in the very least give rise to a question as to whether federal jurisdiction exists in this case. Even though Plaintiff attempts to waive any claims from exposure occurring at the United States Coast Guard in Gulfport, Mississippi, Plaintiff has not denied that the particular worksite is in fact a federal enclave.

7. In *Mater v. Holley*, 200 F.2d 123 (5th Cir. 1952), the Fifth Circuit determined that as a Constitutional matter, Congress has exclusive legislative power over "all Places purchased by the consent of the legislature of the State in which the same shall be, for the Erection of Forts, Magazines, Arsenals, dock-yards, and other needful Buildings." U.S. Const. art. I, § *, cl. 17. In *Mater*, plaintiff sued for a personal injury arising at Fort McPherson, Georgia. *Mater*, 200 F.2d at 123. The federal district court dismissed her suit for lack of federal subject matter jurisdiction. *Id.* The Fifth Circuit reversed, holding, "It would be incongruous to hold that although the United States has exclusive sovereignty in the area here involved, its courts are without power to adjudicate <u>controversies arising there</u>, but must relegate the parties to the courts of another sovereign for relief." *Id.* at 124-25 (emphasis added). In accord with *Mater*, the United States District Court for the Northern District of Texas, held in *Akin v. Big Three Industries, Inc.*, 851 F. Supp. 819, 822 (N.D. Tex. 1994), "that in a toxic exposure case ..., when the plaintiffs' claims arise out of exposure to chemicals on [a military] base in furtherance of their employment duties, enclave jurisdiction is properly invoked." See also *McGinty v. The Anchor Packing Co.*, 1999 WL 717831, *1 (N.D. Cal. 1999)(stating "Personal injury actions which arise from incidents occurring in

federal enclaves may be removed to federal district court as a part of federal question jurisdiction.")(citations omitted). This same analysis would apply to any exposure resulting from employment at the United States Coast Guard facility at Gulfport, Mississippi. If asbestos exposure occurred while Plaintiff's decedent was working at the Coast Guard, then federal enclave jurisdiction exists.

8. Moreover, pursuant to the federal officer removal statute, an action may be removed to federal court by "any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in official or individual capacity for any act under the color of such office . . . ." 28 U.S.C. § 1442(a)(1) (2004). To satisfy the statute, a defendant must "(1) show that it acted under the direction of a federal officer, thereby demonstrating a casual nexus between plaintiffs' claims and the acts [defendant] performed under color of federal office and (2) raise a federal defense to plaintiffs' claims." *Good v. Armstrong World Ind., Inc.*, 914 F.Supp. 1125, 1127 (E.D. Penn. 1996). To satisfy the "acting under" prong of this test, "removal must be predicated upon a showing that the acts forming the basis of the state suit were performed pursuant to an officer's direct orders or comprehensive and detailed regulations." *Id.* 1129. Based on Plaintiff's answers to discovery, a question exists as to whether federal jurisdiction exists pursuant to 28 U.S.C. § 1442(a), the federal officer statute.

9. Although plaintiff contends she "waived and disavowed any and all claims relating to federal exposure," she has not presented any evidence to rebut that exposure did occur at a federal facility, therefore giving rise to federal jurisdiction based on federal enclave and/or federal officer grounds, either in response to

Defendant's removal or in her Motion to Vacate.  Plaintiff cannot simply waive federal jurisdiction if there is a proper basis for such.  Moreover, to date Plaintiff has not responded to remand related discovery propounded by Defendants, nor has she responded to Defendant's letter requesting a Rule 26 conference.

10. Based on the above and foregoing, Plaintiff's Motion to Vacate should be denied.

WHEREFORE, Premises Considered, Defendants respectfully request that Plaintiff's Motion to Vacate Conditional Transfer Order Pursuant to Rule 7.2 and 7.4 of the Rules of Procedure for he Procedure for he Judicial Panel on Multidistrict Litigation be denied.

This the _____9ᵗʰ_____ day of AUGUST, 2004.

Respectfully Submitted,

JONATHAN K. HUTH, MSBN 100084
LAURA D. GOODSON, MSBN 101250
JENNIFER M. STUDEBAKER, MSBN 10433
JOHN C. MCCANTS, III, MSBN 100031

OF COUNSEL:
FORMAN, PERRY, WATKINS, KRUTZ & TARDY, LLP
One Jackson Place
188 East Capitol Street, Suite 200
P.O. Box 22608
Jackson, Mississippi 39225-22608
Telephone: (601) 960-8600
Facsimile: (601) 960-8613

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG 1 1 2004

FILED
CLERK'S OFFICE

## CERTIFICATE OF SERVICE

I, the undersigned attorney, do hereby certify that I have served by United States

mail, postage prepaid, and/or facsimile a true and correct copy of the above and forgoing

document to Plaintiff's counsel of record, and written notice of this filing had been

provided to all other known counsel of record.

SO CERTIFIED, this the _____9ᵗʰ_____ day of August, 2004.

_____
JONATHAN K. HUTH

2004 AUG 11   A 10: 58
RECEIVED
CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

**PANEL SERVICE LIST (Excerpted from CTO-234)**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

*Janet Hockley v. ACF Valves, et al.*, S.D. Mississippi, C.A. No. 1:04-512

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building
7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, DC 20036

David A. Damico
Burns, White & Hickton
Fifth Avenue Place, Suite 2400
120 Fifth Avenue
Pittsburgh, PA 15222

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
Suite 1000
The Bourse
Philadelphia, PA 19106-2574

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Susan M. Hansen
Brownson & Ballou
4800 U.S. Bank Place
601 Second Avenue, South
Minneapolis, MN 55402

Alben N. Hopkins
Hopkins, Barvie & Hopkins
2701 24th Avenue
P.O. Box 1510
Gulfport, MS 39502-1510

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308-1314

David C. Landin
Hunton & Williams
Riverfront Plaza
East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102

Ronald L. Motley
Motley, Rice, LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
Roven, Kaplan & Wells
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA 19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1570 Penobscot Building
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226

Cowles E. Symmes
Page, Mannino, Peresich &
McDermott
759 Vieux Marche' Mall
P.O. Drawer 289
Biloxi, MS 39533-0289

Andrew J. Trevelise
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Louis H. Watson, Jr.
Watson & Heidelberg
520 East Capitol Street
Jackson, MS 39201

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

IN THE CIRCUIT COURT OF COPIAH COUNTY, MISSISSIPPI

RECEIVED AUG 11 2004

JANET HOCKLEY, As Personal
Representative of the Estate of
JAMES W. JAY, JR., DECEASED

FILED
CLERK'S OFFICE

MAY

PLAINTIFF

VS.

CIVIL ACTION NO.: 2CC4-C116

METROPOLITAN LIFE INSURANCE CO., ET AL.

DEFENDANTS

RECEIVED

APR 2 2 2004

## COMPLAINT

### JURY TRIAL REQUESTED

Flowserve Corp.
Legal Dept.

COMES NOW, the Plaintiff, listed on Exhibit A, complaining against the various

Defendants listed on Exhibit B and for his cause of action would show the following:

1.       Plaintiff is an adult resident citizen of the State of Mississippi, County of Copiah and is listed and identified on Exhibit A, annexed hereto.

2.       The Defendants are corporations, or successors in interest to such corporations, who are citizens of (i) Mississippi or (ii) states other than Mississippi, who have either obtained certificates of authority to transact business in Mississippi pursuant to Section 79-3-211 et seq., Mississippi Code of 1972, or who transacted business in Mississippi without a certificate of authority, but within the contemplation of Section 13-3-57 of said Code, (iii) have committed a tort in whole or in part in the State of Mississippi, done business in Mississippi or entered into a contract to be performed, in whole or in part in Mississippi, and are identified on Exhibit "B". The Defendants are subject to the jurisdiction of this Court, and venue is properly in this Court, and service may be had on each Defendant at the address listed on Exhibit B.

3.       As to the liability of Defendant, Rapid American Corporation:

a.       The Defendant, Rapid American Corporation is liable to this Plaintiff for the actions of its predecessor-in-interest, Philip Carey Corporation.

b.       Philip Carey Corporation manufactured and sold asbestos-containing products used and intended to be used in Mississippi at various work sites in Mississippi.

c.       The Defendant, Rapid American Corporation, is the successor-in-interest to the liability of the Philip Carey Corporation as the result of an express assumption of all liabilities and merger with the Glen Alden Corporation, the predecessor-in-interest to Rapid American Corporation. Prior to its merger with Rapid American, the Glen Alden Corporation, in 1967, merged with and expressly assumed the liabilities of the Philip Carey Manufacturing Company.

### BACKGROUND

4.       During all or part of the period from 1930 through the present, (the "exposure period"), the Plaintiff worked with, or were otherwise exposed to, asbestos and asbestos-containing products at various work sites. In fact, Plaintiff would show that the Plaintiff worked with and/or was exposed to Defendants' asbestos and/or asbestos-containing products and/or machinery requiring or calling for the use of asbestos.

FILED

FEB 0 6 2004

EDNA E. STEVENS
CIRCUIT CLERK

BY_____ D.C

for a period of many years and on numerous occasions and that the Plaintiff, due to such exposure, inhaled great quantities of asbestos fibers and as a result suffered injuries, diseases, and/or death caused by such exposure.

5.    During or before the exposure period, each of the Defendants designed, tested, evaluated, manufactured, packaged, furnished, supplied, distributed, and/or sold asbestos and/or asbestos-containing products and/or machinery requiring or calling for the use of asbestos or asbestos-containing products. In addition, some Defendants designed, manufactured, distributed or sold machinery or equipment containing asbestos and/or specified said asbestos to be used on said machinery or equipment, or materially assisted or aided or abetted others in so doing for use at various locations in Mississippi and elsewhere. All references to "asbestos" in this Complaint shall mean and include Defendants' products as described in this paragraph.

6.    During all or part of the period from 1930 through the present ("the exposure period") the Defendants herein, or some of them, designed, evaluated, manufactured, packaged, furnished, distributed and/or supplied various types of thermosetting resins and thermoplastics in different forms as molding powders, molding compounds, liquid or semi-liquid resins, composites and/or laminates, all commonly and historically called "plastics" as finished or component products and/or as raw materials, and/or sold adhesives, construction materials, insulation, fiber or other products, which each contained that fibrous, incombustible, chemical-resistant, mineral substance commonly called "asbestos", or materially assisted and/or aided and abetted others in so doing, which substance was used in and around the various work sites in Mississippi, in the construction, repair, or maintenance or daily use of various equipment and performance of work in said facilities. All references to "asbestos" in this Complaint shall include Defendants' products described in this paragraph.

7.    The Defendants herein, or some of them, also developed, manufactured, assisted in the manufacture of and/or provided specifications for the finishing manufacture and/or fabrication through molding, casting, extruding, bonding and laminating of asbestos-containing plastic products for a variety of industrial and consumer uses, including, but not limited to:

a.    heat-, corrosion- and/or acid-resistant plastics for use in the chemical, textile, steel, paper/pulp, and electroplating industries, such as piping, associated fixtures and valve housings, seats, and discs, pump and electrical motor parts and insulation, crystallizers, scrubbers, fume hoods, stacks, thermocompressors, troughs, distribution trays, flumes, heaters, linings, baffles, dippers, drip pans, dyeing machines, filter press parts, filters and filtering media, anti-friction bearings, gears, spools, spinning pots, conveyer rollers and winder parts, vessels such as towers, kettles, tanks, cells, condensers, agitators and precipitators;

b.    bonded grinding wheels and other abrasives;

c.    bonded friction materials, including brake linings and clutch facings;

d.    floor tiles;

e.    electrical insulation and arc panels;

f.    machine and instrument housing, insulator boxes and indicator dials;

g.    pads, risers, and blocks for use in expansion joints and equipment mounts as protection against vibration and/or mechanical shock;

h.    insulating ductwork and associated fittings;

2

    i.      armature detectors and electric railway equipment;

    j.      sealers, mastics and caulking compounds;

    k.      reinforced automobile body panels and automobile body fillers;

    l.      cellular or Afoamed plastic for insulation, soundproofing, and bonding;

    m.      adhesive and/or binding resins for particle board, flooring, floor tiles, batt insulation of all types and plywood and wood-to-plywood joints and seams; laminated millboard, wallboard, paneling, counter and table tops;

    n.      reinforced plastic cements, paints, and roof coatings; and

    o.      ordinary household electrical fixtures and utensil and appliance handles.

Historically and even into the 1980's, the Defendants herein, or some of them, continued to develop, manufacture, assist in the manufacture of and/or provide specifications for the finishing manufacture and/or fabrication of these asbestos-containing plastic products with full knowledge that end users of these products were, in accordance with manufacturer's intended end use and instruction, performing the following operations: sanding, buffing, filing by hand, sawing, drilling, turning, punching, tapping/threading, planing, grinding, tumbling, polishing or otherwise machining these asbestos-containing plastics, thereby producing friable, airborne and respirable asbestos fibers on a continual and widespread basis. The Defendants were thus in receipt of information sufficient under Mississippi law to impose upon them a duty to warn intermediate manufacturers/fabricators and end users concerning the danger and health risks associated with breathing airborne asbestos from the fabrication, machining, and other handling of its asbestos-containing plastics.

8.      Historically and to the present, the Defendants herein, or some of them also had full knowledge that compressed air was routinely used to assist in the preventative maintenance and/or daily clean up of asbestos-containing plastic flash, plastic molding compound, or machined plastic debris by molders, other intermediate finishing manufacturers and fabricators, and end users. These Defendants were thus in receipt of information sufficient under Mississippi law to impose upon them a duty to warn intermediate manufacturers/fabricators and end users concerning the danger and health risks associated with breathing airborne asbestos from the use of compressed air for maintenance on and clean up of debris from its asbestos-containing plastics.

9.      At all times relevant to Plaintiff's Complaint herein, these Defendants breached the duties owed to Plaintiff herein by failing to provide any warning or other information sufficient to provide end users with knowledge that safety precautions could have, and should have, been taken and/or provided. This breach proximately caused Plaintiff's injuries and damages complained of herein.

10.      Since the 1940's, the Defendants herein, through actions of corporate officers, employees, and agents, were instrumental in the formation of that trade organization known as the Society for the Plastics Industry, Inc., ("SPI"). Officers, employees and agents of the Defendants herein headed or served on various SPI steering committees and/or sub-committees which both formulated plastics industry policy and controlled the publication or non-publication and dissemination of information, including health and safety-related information about the dangers of asbestos. Through their prominent role in the plastics industry and the actual knowledge obtained through the technical papers of the Reinforced Plastics Division of SPI since the 1950's, these Defendants were in receipt of information sufficient under Mississippi law to impose upon them a duty to warn intermediate manufacturers/fabricators and end users concerning the danger and health risks associated with breathing airborne asbestos from the use of its asbestos-containing plastics.

3

11.    When inhaled or otherwise ingested in to the respiratory system, asbestos causes irreparable and progressive lung damage that can manifest itself into lung disease, asbestosis, mesothelioma, pulmonary and bronchogenic carcinoma, and cardiac disease, among other diseases and injuries.

12.    The Defendants herein breached duties owed to Plaintiff herein by negligently and/or intentionally failing to provide any warning or other information sufficient to provide end users with knowledge that safety precautions could have, and should have, been taken and/or provided. This breach proximately caused Plaintiff's injuries and damages complained of herein.

13.    Through industry and medical studies, the existence of which studies were unknown to Plaintiff, each of the Defendants knew or should have known of the health hazards inherent in the asbestos-containing products they were selling, manufacturing, distributing, designing or specifying to be applied to the equipment they were designing, manufacturing and/or selling. Instead of warning the Plaintiff, and other intended or foreseeable users and bystanders, and the general public about these dangers, the Defendants ignored or actively and fraudulently concealed such information, and condoned such concealment, and/or conspired with, commanded, directed, advised, encouraged, aided or abetted others and/or each other in do doing, in order to sell asbestos and in order to avoid litigation by those who were injured from asbestos exposure. Said actions or inactions, among other things, constitute gross negligence and demonstrate a callous disregard for the rights and safety of others, justifying the imposition of punitive damages against the Defendants herein.

14.    In connection with the Plaintiff's work during the exposure period, he was exposed to and inhaled or otherwise ingested significant quantities of asbestos, having neither knowledge nor reason to believe that asbestos was dangerous.

15.    As a direct and proximate contributing result of having inhaled, ingested or otherwise having been exposed to asbestos during the exposure period, the Plaintiff has received injuries, both physically and mentally, including, without limitation, one or more of the following conditions:

a.    asbestosis;

b.    pulmonary or bronchogenic carcinoma;

c.    mesothelioma;

d.    impaired pulmonary capacity;

e.    reduced lung volume;

f.    pleural plaques;

g.    interstitial lung fibrosis;

h.    cardiac and circulatory disease;

i.    increased susceptibility to one of the foregoing diseases and other illnesses;

j.    physical and mental anguish associated with one or more of the preceding conditions.

Plaintiff would further show that as a direct and proximate result of having inhaled, ingested or otherwise been exposed to asbestos, the Plaintiff received permanent and painful injuries he suffered and/or will continue to

suffer physical and mental pain and anguish, loss of wages, loss of wage earning capacity including but not limited to physical and mental pain and anguish, disability, medical and pharmaceutical expenses and loss of the enjoyment of life.

16.     Because of the latency period of the above described asbestos injuries, and because of the active concealment by the Defendants of the causes and effects of exposure to asbestos, the Plaintiff only recently discovered his injuries.

**COUNT ONE**
**(Strict Liability)**

17.     Plaintiff realleges and incorporates herein the foregoing allegations of this Complaint.

18.     The Defendants and/or their predecessor entities were engaged in, or materially participated with others in, the business of selling asbestos and materials containing asbestos on machinery or equipment which specified said asbestos to be used on same which was expected to and did reach various locations in Mississippi and other locations without substantial change in the condition in which it was sold, and where said asbestos dusts were inhaled and ingested by the Plaintiff in connection with his work or otherwise.

19.     The asbestos and asbestos-containing products and machinery or equipment was in a defective condition and unreasonably dangerous to the Plaintiff, who was an intended and foreseeable user or bystander during the use of the asbestos.  These defects include, without limitation, the following:

     a.    Inherent and known properties common to the asbestos sold by the Defendants that gave it unreasonably high potential for causing respiratory diseases, cancer and other health problems to workers or members of such workers' households who would be exposed to asbestos;

     b.    Lack of warnings or lack of sufficient warnings by the Defendants, who were in a position of superior knowledge concerning the dangerous properties of asbestos when used for the purpose for which it was manufactured and sold, and which dangerous propensities were unknown to the Plaintiff;

     c.    Lack of instructions or lack of sufficient instructions by the Defendants for eliminating or minimizing the health risks inherent in the use of asbestos;

     d.    Lack of reasonable inspections by the Defendants of their asbestos products to ensure that such asbestos products contained sufficient warnings of the dangerous properties of asbestos;

     e.    Lack of reasonable inspections by the Defendants of their asbestos products to ensure that such asbestos products contained sufficient instructions for eliminating or minimizing the health risks inherent in the use of asbestos;

     f.    Lack of tests or lack of sufficient tests by the Defendants to determine and/or eliminate the harmful effects of asbestos on intended users and bystanders;

     g.    Defective designs by the Defendants calling for the inclusion of asbestos in products that did not require asbestos, and where alternate, equally suitable substances were available;

5

h.      Lack of warnings or lack of sufficient warnings by the Defendants upon their discovering the full extent of the dangers presented by asbestos containing materials and products.

20.      Each of the Defendants knew or should have known that the Plaintiff would be exposed to their asbestos products without an inspection of the medical literature by the Plaintiff on the adverse health effects of asbestos. By marketing the asbestos and machinery or equipment specifying said asbestos to be used on same the Defendants represented to the Plaintiff and to the public, who justifiably relied thereon, that asbestos was not dangerous.

21.      The defective conditions of the Defendants' asbestos products proximately caused or proximately contributed to the Plaintiff's injuries and damages as described in this Complaint.

WHEREFORE, the Plaintiff demands judgment against the Defendants jointly, severally and collectively in an amount to be determined by a jury at trial.

## COUNT TWO
### (Negligence)

22.      The Plaintiff realleges and incorporates herein the foregoing allegations of this Complaint.

23.      Each of the Defendants had, but breached, duties to the Plaintiff to exercise the highest standard of care, or in the alternative reasonable care, in designing, testing, manufacturing, marketing, selling asbestos and asbestos-containing products and equipment or machinery which is an extraordinarily and inherently dangerous substance. The breached duties included, without limitation, the duty:

a.      To select types of asbestos or available alternate materials that would reduce or eliminate health hazards to those who would work with, and in the vicinity of asbestos;

b.      To warn adequately of the extraordinary health hazards known by the Defendants to be associated with asbestos use;

c.      To instruct adequately in methods of using asbestos that would reduce the danger of inhalation or ingestion of asbestos dust;

d.      To test adequately the asbestos products to determine the dangers concomitant with their use;

e.      To develop and utilize a substitute material to eliminate asbestos fibers in the asbestos-containing products, and/or the machinery requiring or calling for the use of asbestos;

f.      To remove the asbestos products from the stream of commerce upon discovering their dangerous properties;

g.      To inspect the asbestos products for adequate warnings and instructions.

24.      As a direct and proximate result of the Defendants' aforesaid breaches of their duties to the Plaintiff, he has sustained the injuries and damages described in this Complaint.

25.      In breaching, and/or conspiring with, aiding, abetting or materially assisting others in breaching, their duties to the Plaintiff, as described above, the Defendants acted intentionally and/or with gross negligence, and/or recklessly, maliciously and wantonly in that the Defendants and each of them knew or

should have known through data available exclusively to them that asbestos was inherently and extraordinarily dangerous if used in the manner intended and foreseen by the Defendants, and that each of their aforesaid breaches of duty would result in the complained injuries to the decedent.

WHEREFORE, the Plaintiff demands judgment against the Defendants jointly, severally and collectively in and amount to be determined by a jury at trial.

## COUNT THREE
### (Breach of Warranties)

26.    Plaintiff re-alleges and incorporates the foregoing allegations of this Complaint.

27.    The Plaintiff reasonably relied upon the Defendants who were manufacturers, sellers, or distributors of asbestos-containing products to exercise their skills and judgment to select and furnish goods of a suitable and reasonably safe nature and to furnish products fit for the particular purposes intended and to be supplied in a merchantable condition.

28.    Defendants and each of them breached their legal duties in that their products were not sold and furnished in a merchantable and reasonably safe condition and were not fit for the particular purpose intended in accordance with the laws of the State of Mississippi.

29.    As a direct and proximate result of the Defendants' aforesaid breaches and breaches of other legal duties owed to the Plaintiff has sustained injuries and damages as described in this Complaint.

WHEREFORE, the Plaintiff demands judgment of, from and against the Defendants jointly, severally and collectively in an amount which exceeds the jurisdictional threshold of this Court and to be determined by a jury at trial.

## COUNT FOUR
### (Fraudulent Concealment/Misrepresentation/Alteration of Medical Studies/Conspiracy/Aid and Abet Conspiracy)

30.    Plaintiff re-alleges and incorporates the foregoing allegations of this Complaint.

31.    As will be discussed below, the Defendants used a number of trade and industrial hygiene associations to further the goals of their conspiracy to control the dissemination of research and information regarding the hazards of asbestos and other substances to lend an air of independence and legitimacy to the information which was published, albeit in edited form.

32.    Defendant Metropolitan Life and other Defendants named herein, individually and/or as successors-in-interest of other corporations, and as agents of one another and as co-conspirators, aided, abetted, encouraged, counseled, assisted, agreed, and conspired among themselves and with other asbestos manufactures and distributors to injure Plaintiff.

33.    Defendants acted in the following fashion:

a.    Metropolitan Life Insurance Company (Met Life) required a tangible quid pro quo from  McGill University in the 1920s in exchange for them providing funding for a study of asbestos disease in Canadian miners.  The study was never published and agents of Met Life materially misrepresented in the published literature the fact that asbestos miners developed asbestosis.

7

b.  In 1932, Met Life, through its agents Dr. Anthony Lanza, Dr. Fellows, and others, assisted the Johns-Manville Corporation with medical examinations of over 1,000 employees of Johns-Manville's factory in Manville, New Jersey. The report of this study shows that a large percentage of the employees suffered from pneumoconiosis, including asbestosis, including employees not directly involved in the manufacturing process. This 1932 medical survey was not published in the medical literature and therefore was unavailable to scientists studying the issue of asbestos disease. Further collaboration between the conspiring asbestos producers and Met Life officials continued this trend of intentional cover-up.

c.  Beginning in approximately 1934, Johns-Manville Corporation, through its agents, Vandiver Brown and attorney J. C. Hobart, and conspirator Raybestos-Manhattan, through its agents, Sumner Simpson and J. Rohrbach, suggested to Dr. Lanza, Associate Medical Director of Met Life (insurers of Manville, Raybestos, and others), that Dr. Lanza publish a study on asbestosis in which Dr. Lanza would affirmatively misrepresent a material fact about asbestos exposure; i.e., the seriousness of the disease process, asbestosis. This was accomplished through intentional deletion of Dr. Lanza's description of asbestosis as "fatal" and through other selective editing at the behest of the asbestos industry that affirmatively misrepresented asbestosis as a disease process less serious than it actually is and was then known to be, and deletion of information concerning levels of exposure. As a result, Dr. Lanza's study was published in the medical literature in this misleading fashion in 1935. The Defendants were motivated, in part, to effectuate this fraudulent misrepresentation and fraudulent nondisclosure by the desire to influence proposed legislation to regulate asbestos exposure and to provide a defense in lawsuits involving Manville, Raybestos, and others, as well as Met Life, the insurer.

d.  In 1936, conspirators American Brake Block Corporation, Asbestos Manufacturing Company, Gatke corporation, Johns-Manville corporation, Keasby & Mattison company (then an alter-ego to conspirator Turner & Newall), Raybestos-Manhattan, Russell Manufacturing, Thermoid Rubber co., Southern Asbestos Co., (whose liabilities have been assumed by H. K. Porter Company), Union Asbestos and Rubber company, and United States Gypsum Company, entered into an agreement with the Saranac Laboratories. Under this agreement, these companies acquired the power to decide what information Saranac Laboratories could publish about asbestos disease and control in what form such publications were to occur. This agreement gave these conspirators power to affirmatively misrepresent the results of the work at Saranac and also gave these conspirators power to suppress material facts included in any study. On numerous occasions thereafter, the conspirators exercised their power to prevent Saranac scientists from disclosing material scientific data resulting in numerous misstatements of fact being made about scientific data resulting in numerous misstatements of fact being made a scientific meetings.

e.  On November 11, 1948, representatives of the following conspirators met at the headquarters of Johns-Manville Corporation: American Brake Block Division of American Brake and Shoe Foundry, Gatke Corporation, Keasby & Mattison Company (whose assets and liabilities were later purchased by H. K. Porter Company), Union Asbestos and Rubber Company, and U. S. Gypsum Company. U. S. Gypsum did not send a representative to the meeting, but instead authorized Vandiver Brown of Johns-Manville to represent its interest at the meeting and to take action on its behalf.

f.  At the November 11, 1948, meeting, these Defendants and their representatives decided to exert their influence to materially alter and misrepresent material facts

8

about the substance of research started by Dr. Leroy Gardner at the Saranac Laboratories beginning in 1936. Dr. Gardner's research involved the carcinogeniucity of asbestos in mice and also included an evaluation of the health effects of asbestos on humans with a critical review of the then-existing standards of dust exposure from asbestos and asbestos-containing products.

g.   At this meeting, the Defendants intentionally and affirmatively determined that Dr. Gardner's work should be edited to specifically delete material facts about the cancer-causing propensity of asbestos and the health effects of asbestos on humans and critique of the dust standards and then published it in the medical literature as edited by Dr. Arthur Vorwald. The acts of these Defendants were carried out by co-conspirator Defendant Met Life's agent, Dr. Lanza. These Defendants thereby fraudulently misrepresented the risks of asbestos exposure to the public in general and the class of persons exposed to asbestos, including Plaintiff.

h.   As a direct result of influence exerted by the above-described conspirators, Dr. Vorwald published Dr. Gardner's edited work in January 1951, in the <u>Archives of Industrial Hygiene and Occupational Medicine</u> (Vol. 3, No. 1), a journal of the American Medical Association. The published version stressed those portions of Gardner's work that the conspirators wished stressed, but omitted references to cancer, to human asbestosis, and to the inadequacy of the then-established threshold limit values (TLVs). Furthermore, that article made a false claim that the published report was the "complete survey" of Dr. Gardner's work. The Defendants thereby fraudulently, affirmatively, and deliberately disseminated this misleading Dr. Vorwald publication to university libraries, government officials, medical doctors, agencies, the public, and others.

i.   Such action constituted a material affirmative misrepresentation of the total context of material facts involved in Dr. Gardner's work and resulted in creating an appearance that the inhalation of asbestos was less of a health problem than Dr. Gardner's unedited work indicated.

j.   The following conspirators and others were members of the trade association known as Quebec Asbestos Mining Association: Johns-Manville Corporation, Carey-Canada (individually and as successor to Quebec Asbestos Corporation), Rapid American Corporation (successor to Philip Carey and Quebec Asbestos Corporation, National Gypsum Company (n/k/a Asbestos Claims Management Corporation), Flintkote, Cape Asbestos, Turner & Newall (individually and successor to Bell Asbestos). The members of Q.A.M.A. participated in the above-described misrepresentation of the work of Dr. Gardner published by Dr. Vorwald in the <u>AMA Archives of Industrial Health</u> in 1951. Evidence of the Q.A.M.A., as well as correspondence from Co-conspirators, indicates close monitoring of the editing process by Q.A.M.A.'s representative, Ivan Sabourin, acting on behalf of all Q.A.M.A's members.

k.   Defendants who were members of the Q.A.M.A. began, on or about 1950, to formulate a plan to influence public opinion about the relationship between asbestos and cancer by influencing the medical literature on this subject and then touting and disseminating this literature to the public and to organizations and legislative bodies responsible for regulatory controls of asbestos with the specific intent of misrepresenting the existing scientific information and suppressing contrary scientific data in their possession and control.

l.     This plan of misrepresentation and influence over the medical literature began on or about 1950 when the Q.A.M.A. members selected Saranac Laboratories to do an evaluation of whether cancer was related to asbestos. After a preliminary report authored by Dr. Vorwald in 1952 indicated that a cancer/asbestos relationship might exist in experimental animals, the Q.A.M.A. members refused to further fund the study and it was terminated and never publicly discussed.

m.    As a result of the termination of this study, these Defendants fraudulently withheld information from the public and affirmatively misrepresented to the public and responsible legislative and regulatory bodies that asbestos did not cause cancer, including affirmative misrepresentations by conspirators' agents Kenneth W. Smith, M.D., Paul Cartier, M.D., Arthur J. Vorwald, M.D., Anthony J. Lanza, M.D., Vandiver Brown, and Ivan Sabourin, said misrepresentations being directed to <u>inter alia</u>, U. S. Government officials, Canadian Government officials, U. S. National Cancer Institute, other medical organizations, and the general public, including Plaintiff.

n.    Subsequently, the Q.A.M.A. Defendant conspirators contracted with the Industrial Hygiene Foundation (I.H.F.) and Dr. Daniel Braun to further study the relationship between asbestos exposure, asbestosis and lung cancer. In 1957, Drs. Braun and Truan reported to the Q.A.M.A. that asbestosis did increase a worker's chances of incurring lung cancer.

o.    The Q.A.M.A. Defendants thereafter caused, in 1958, a publication of the work by Braun and Truan in which the findings regarding increased incidence of cancer in persons with asbestosis was edited out by agents of the Q.A.M.A. The published version of this study contained a conclusion that asbestos exposure did not increase the incidence of lung cancer, a conclusion known by the Defendant conspirators to be patently false.

p.    By falsifying and causing publication of studies concluding that the asbestos exposure did not cause lung cancer and simultaneously omitting a documented finding that asbestosis did increase the risk of lung cancer, the Q.A.M.A. Defendants affirmatively misrepresented to the public and concealed from the public the extent of risk associated with inhalation of asbestos fibers.

q.    In approximately 1958, the Q.A.M.A. Defendants publicized the edited works of Drs. Braun and Truan at a symposium in an effort to fraudulently misrepresent to the public and persons exposed to asbestos that the inhalation of asbestos dust would not cause cancer.

r.    The fraudulent misrepresentation beginning in 1946, as elaborated above and continuing with publication of the 1958 Braun/Truan study, influenced the standard set for the TLVs and inhibited the lowering of the threshold limit value due to the cancer risk associated with asbestos inhalation.

s.    In 1967, the Q.A.M.A. Defendants determined at their trade association meeting that they would intentionally mislead consumers about the extent of risk involved in inhalation of asbestos products.

t.    In 1952, a symposium regarding the health effects of asbestos was held at the Saranac Laboratories. The following conspirators were in attendance: Central Mining & Investment corporation, Johns-Manville, Turner & Newall, Raybestos-Manhattan, and Q.A.M.A. members by way of their agents, Cartier, Sabourin, and LeChance.

u.     At this meeting, the occurrence of lung cancer and asbestosis in product users was discussed and the carcinogenic properties of all fiber types of asbestos was also discussed. In an affirmative attempt to mislead the public about the extent of health risk associated with asbestos, and in an effort to fraudulently conceal those risks from the public, these Defendants conspired to prevent publication of the record of his 1952 Saranac Symposium and it was not published. In addition, the conspirators induced Dr. Vorwald not to announce the results of his and Dr. Gardner's animal studies showing excess cancers in animals and thereby fraudulently misrepresenting existing data, albeit secret, that could not be publicized because of the secret provisions contained in the 1936 Saranac agreement required by the asbestos industry members.

v.     The following conspirators were members of the Magnesia Insulation Manufactures Association MIMA):  Philip-Carey Corporation (predecessors to Rapid American Corporation), Johns-Manville, and others.

w.     In 1955, these conspirators caused to be published the MIMA 85% Magnesia Insulation Manual.   This manual falsely and fraudulently misrepresented that asbestos-containing products offered no hazard to workers who used these products.

x.     The following conspirators were members of the trade organization known as the Asbestos Textile Institute (ATI):  Garlock, Uniroyal, Raybestos-Manhattan, Johns-Manville, H. K. Porter, Keasby & Mattison (individually and through its alter-ego Turner & Newell), National Gypsum (n/k/a Asbestos claims Management Corporation), Cape Asbestos and others.

y.     In 1947, the members of the ATI, received a report from W.C.L. Hemeon regarding asbestosis that suggested re-evaluation of the then-existing TLVs for asbestos exposure.  These Defendants and Metropolitan Life caused this report not to be published and thereby fraudulently concealed material facts about asbestos exposure from the public and affirmatively misrepresented to the public and classes of persons exposed to asbestos that the then-existing TLV was acceptable. Thereafter, these Defendant conspirators withheld additional material information on the dust standards from The American Conference of Governmental Industrial Hygienists (ACGIH), thereby further influencing evaluation of TLVs for asbestos exposure.

z.     In 1953, conspirator National Gypsum (n/k/a Asbestos Claims Management Corporation), through its agents, in response to an inquiry from the Indiana Division of Industrial Hygiene regarding health hazards of asbestos spray products, refused to mail a proposed response to that division indicating that respirators should be worn by applicators of the products.  National Gypsum's response distorted and fraudulently misrepresented the need for applicators of asbestos spray products to wear respirators and fraudulently concealed form such applicators the need for respirators.

aa.    In 1955, conspirator Johns-Manville, through its agent Kenneth W. Smith, M.D., caused to be published in the AMA Archives of Industrial Health, an article entitled "Pulmonary Disability in Asbestos Workers." This published study materially altered the results of an earlier study in 1949 concerning the same set of workers.  This alteration of Dr. Smith's study constituted a fraudulent and material misrepresentation about the extent of the risk associated with asbestos inhalation.

11

bb.  In 1955, the National Cancer Institute held a meeting at which conspirators Johns-Manville (individually and as an agent for other alleged co-conspirators) and Dr. Vorwald (as agent of co-conspirators) affirmatively misrepresented that there were no existing animal studies concerning the relationship between asbestos exposure and cancer when, in fact, the conspirators were in secret possession of several studies which demonstrated that positive evidence did exist.

cc.  In 1957, the members of the ATI, jointly rejected a proposed research study on cancer and asbestos and this resulted in fraudulent concealment from the public of material facts regarding asbestos exposure and also constituted an affirmative misrepresentation of the then-existing knowledge about asbestos exposure and lung cancer.

dd.  In 1964, the members of the ATI met to formulate a plan for rebutting the association between lung cancer and asbestos exposure that had been recently discussed by Dr. Irvin J. Selikoff.  Thereafter, these members of the ATI embarked upon a campaign to further misrepresent the association between asbestos exposure and lung cancer.

ee.  In 1970, through their agents, Defendants The Celotex Corporation (predecessor of Rapid American Corporation) and Cary-Canada, affirmatively misrepresented that it had been in the asbestos business since 1918 and found no reported conditions of asbestosis or lung disease. This constituted a fraudulent misrepresentation about the material facts known to these Defendants.

ff.  All Conspirators approved and ratified and furthered the previous conspiratorial acts of conspirators Johns-Manville, Raybestos Manhattan, and Anthony J. Lanza, M.D., acting on behalf of Met Life, and all alleged co-conspirators during the relevant time period and circumstances alleged above, acted as agents and co-conspirators for the other conspirators.

gg.  Certain of the Defendants and/or co-conspirators, including but not limited to Westinghouse Electric Corporation, Metropolitan Life, Raybestos Manhattan, Johns-Manville, Dresser Industries, Harbison-Walker, General Refractories, Pittsburgh Corning, PPG Industries, General Electric, Uniroyal, Owens-Illinois and Owens-Corning Fiberglas, were members of the Industrial Hygiene Foundation ("IHF"). The IHF, touted by its industry members as an independent research agency, was used by the members of the asbestos industry to suppress the truth about asbestos and other substances and generate misleading or outright substances and generate misleading or outright false scientific publications.  For example, in the 1940s the IHF was contacted by the Asbestos Textile Institute to conduct a study on asbestos dust.  Mr. W. C. L. Hemeon, an industrial hygienist who worked for the IHF, completed the study and forwarded the report entitled Report on Preliminary dust Investigation for Asbestos Textile Institute in June 1947.  Mr. Hemeon's report indicated that workers exposed to less than the recommended threshold limit value for asbestos were nonetheless developing diseases.  The IHF never published this study and, in doing so, acted to conceal the study from the general public, including asbestos-exposed workers.

hh.  As discussed infra, the IHF also assisted in the QAMA in the publication of the edited version of the Braum Truan report in 1958 which reported the conclusion, known to the IHF and its members to be false, that asbestos exposure did not increase the incidence of lung cancer.

ii.    The Activities of IHF and its members substantially assisted the co-conspirators by retarding the development of knowledge about the hazards of asbestos.

jj.    Metropolitan Life and other co-conspirators downplayed the seriousness of the hazard of exposure to diatomaceous earth by misleading public health officials in California.

34.    As a direct and proximate result of the above referenced conspirators' intentional publication of deceptive and misleading medical data and information as described in the preceding paragraphs, and upon which data the Plaintiff, and those charged with warning them reasonably relied, the Plaintiff inhaled or otherwise were exposed to and ingested hazardous dust resulting in the injuries described in this Complaint.

35.    Additionally and alternatively, as a direct and proximate result of Metropolitan Life's and other Defendants' actions and omissions as described above, the Plaintiff was caused to remain ignorant concerning the danger of human exposure to asbestos and other substances, resulting in damage to the Plaintiff by depriving the Plaintiff, his employer, and the general public of opportunities to be aware of the hazards of asbestos and other substances exposure, and thus the opportunity to take proper safety precautions and/or avoid this exposure. Because of this ignorance and intentional failure to warn, the Plaintiff inhaled, were exposed to, or otherwise ingested hazardous asbestos dust resulting in the injuries described above.

36.    Defendant Metropolitan Life Insurance Company through its Policyholders Service Bureau undertook duties owed by asbestos-producing Defendants to Plaintiff by the testing of asbestos workers and the conduct of scientific studies.  These duties included without limitation, the duties:

a.    to test fully and adequately for health risks concomitant to the normal and intended use of their products; and

b.    to instruct fully and adequately in the uses of their products so as to eliminate or reduce the health hazards concomitant with their normal or intended use.

In undertaking these duties, Metropolitan Life knew or should have known that it was providing testing services for the ultimate protection of third persons, including Plaintiff.

37.    In both conducting said tests and in publishing their alleged results, Metropolitan Life failed to exercise reasonable care to conduct or publish complete, adequate and accurate tests of the health effects of asbestos.  Metropolitan Life also caused to published intentionally false, misleading, inaccurate and deceptive information about the health effects of asbestos exposure.

38.    Plaintiff unwittingly but justifiably relied upon the thoroughness of Metropolitan Life's tests and information dissemination, the results of which Metropolitan Life published in leading medical journals.

39.    As a direct and proximate contributing result of Metropolitan Life's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so: (i) the risk of harm to Plaintiff from asbestos exposure was increased, and (ii) Plaintiff suffered the injuries described below.

40.    In failing to test fully and adequately for the adverse health effects from exposure to asbestos; in delaying the publication of such results; in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos

13

as a harmless product; and in collaborating withe the asbestos-producing Defendants materially to understate the hazards of asbestos exposure, all for its own profit and gain, Metropolitan Life acted recklessly, wantonly, and in calculated disregard for the welfare of the general public, including Plaintiff's decedent.

41.    The conspirators fraudulently concealed from the Plaintiff the alteration of its published test results, the actions and omissions and concerted design and conspiracy, all as described in the paragraphs above, until the Plaintiff discovered said conduct following these diagnoses of asbestos-related injuries.

42.    Certain of the Defendants, in addition, belong to the IHF and the AIA/NA also known as the Asbestos Information Association/North America and took part in certain activities wherein they individually and through their organization took steps to stop the dissemination of information with regard to asbestos and its hazards, took steps to influence proposed regulation of asbestos by making misleading statements regarding the health effects of asbestos and conspired to make false representations with regard to the safety and hazards of asbestos containing products.

43.    Certain of these Defendants in the IHF, AID/NA, ATI, the Asbestosis Research Council and/or other organizations, acting individually and as members of a conspiracy and as agents of other co-conspirators took steps to fraudulently conceal and/or fraudulently misrepresent the hazards of asbestos which proximately caused injury to the Plaintiff in the following manner:

    a.    published material or caused to be published material that the Defendants individually and/or through their organizations knew was false and incomplete in that the Defendants knowingly and deliberately deleted certain references to the known health hazards of asbestos and asbestos related products;

    b.    the publication of these false and misleading reports and non-disclosure of documented reports on the health hazards of asbestos were done to maintain a favorable atmosphere for the continued sale and distribution of asbestos and asbestos related products;

    c.    the acts were perpetrated to influence in the Defendants' favor proposed legislation to regulate asbestos exposure, and

    d.    the acts in question were also done to provide a defense in lawsuits brought for injury resulting from asbestos disease.

44.    In continuing their asbestos exposure, the Plaintiff reasonably relied upon the published medical and scientific data about the purported lack of hazards of asbestos products, Defendants' false representations that their products were safe, and the lack of publicity about the hazards of asbestos, which he reasonably believed to be safe.

45.    Defendants individually, as members of a conspiracy, and as agents of other co-conspirators intended that the Plaintiff rely upon the published reports regarding the safety of asbestos and asbestos-related products, to continue their exposure to those products.

46.    Defendants individually, as members of a conspiracy, and as agents of other co-conspirators are in a position of superior knowledge regarding the health hazards of asbestos and, therefore, the Plaintiff had a right to rely on the published reports commissioned by the Defendants regarding the health hazards of asbestos and the absence of published medical and scientific data regarding the hazards of asbestos and asbestos related products.

47.    Certain Defendants belonged to The Mellon Institute and the Industrial Hygiene Foundation (IHF), which were institutes whose functions included involvement in research and communications to member companies regarding the health effects of inhaling asbestos dust. In 1935, The Mellon Institute

14

conducted a meeting at which time a plan was developed where members of the asbestos industry would join together to combat publicity and dissemination of data on the hazards of asbestos.

48.     Beginning in the early 1940's, the IHF was involved in a study by W.C.L. Hemeon entitled Report of Preliminary Dust Investigation for Asbestos Textile Institute, June 1947. This study was done in connection with members of the Asbestos Textile Institute (ATI). This study found that workers exposed to less than the recommended threshold limit value for asbestos were nonetheless developing disease. The IHF never published this study and, in doing so, acted to conceal the study from the general public including asbestos-exposed workers.

49.     Beginning in the mid-1950's, the IHF and The Mellon Institute were involved in the publication of works by Dr. Braun and Mr. Truan entitled An epidemiological Study of Lung Cancer in Asbestos Miners. In its original form in September, 1957, this study had concluded that workers with asbestosis had an increased incidence of lung cancer and that the Canadian government had been under-reporting cases of asbestosis. The final published version of this study in June, 1958, deleted the conclusion that workers with asbestosis suffered an increased incidence of lung cancer and that the Canadian government had been under-reporting cases of asbestosis. The members and agents of the IHF and The Mellon Institute, individually and through these organizations, conspired with the members of the Quebec Asbestos Mining Association (Q.A.M.A.) and their legal counsel, Ivan Sabourin, to delete the above-described information regarding asbestos and cancer.

50.     The above-described actions of the members and agents of the IHF and The Mellon Institute constituted intentional deception and fraud in actively misleading the public about the extent of the hazards connected with breathing asbestos dust.

51.     The above-described actions of the IHF and The Mellon Institute and their individual members substantially contributed to retarding the development of knowledge about the hazards of asbestos and thereby substantially contributed to injuries suffered by the Plaintiff.

WHEREFORE, the Plaintiff demands both compensatory and punitive damages from the Defendants named herein, jointly and severally, in sums to be determined at trial.

### COUNT FIVE
### (3-M Strict Liability)

52.     Minnesota Mining and Manufacturing Corporation (hereinafter 3-M Corporation) was engaged in or materially participated in the business of producing devices or masks which purported to provide the Plaintiff with respiratory protection from asbestos fibers and which reached the exposure sites and the ultimate users, the Plaintiff herein, without substantial change in the condition in which they were sold. The devices or masks were in a defective condition and unreasonably dangerous to the Plaintiff, who was an intended or foreseeable user of the products.

53.     The devices manufactured and sold by 3-M Corporation which purported to provide but did not provide Plaintiff with respiratory protection, were not accompanied by adequate instructions and warnings for their safe and appropriate maintenance and use, and were thus defective by reason of their design and faulty marketing. 3-M Corporation was negligent in its failure to adequately test its respiratory protective devices prior to their introduction into the Stream of Commerce, and was negligent in the manner in which it marketed those products.

54.     The Plaintiff's use of these defective devices, which purported to provide them with respiratory protection but which did not provide such protection, proximately contributed to cause the Plaintiff's injuries and damages described herein.

WHEREFORE, the Plaintiff demands judgment against 3-M Corporation and other responsible Defendants in an amount to be determined by a jury at trial.

## COUNT SIX
### (3-M Negligence)

55.    3-M Corporation, during all times mentioned, did negligently and carelessly design, manufacture, sell and market certain devices, including various types of masks and disposable dust masks, which purported to provide respiratory protection in connection with and during the use of materials capable of producing pneumoconiosis, including materials containing asbestos fibers, when they knew or should have known that such devices were insufficient for that purpose.

56.    The devices manufactured and sold by 3-M Corporation which purported to provide to the Plaintiff with respiratory protection were in a defective condition, unreasonably dangerous, and failed in the course of their normal use to prevent the inhalation of asbestos fibers by Plaintiff.

57.    The devices manufactured and sold by 3-M Corporation which purported to provide, but did not provide Plaintiff with respiratory protection were not accompanied by adequate instructions and warnings for their safe and appropriate maintenance and use, and were thus defective by reason of their design and faulty marketing. 3-M Corporation was negligent in its failure to adequately test its respiratory protective devices prior to their introduction into the Stream of Commerce, and was negligent in the manner in which it marketed those products.

58.    The Plaintiff's use of these defective devices which purported to provide them with respiratory protection, but which did not provide such protection, proximately contributed to cause the Plaintiff's injuries and damages as described herein.

WHEREFORE, the Plaintiff demands judgment of, from and against 3-M and other responsible Defendants in an amount which exceeds the jurisdictional threshold of this Court and to be determined by a jury at trial.

## DAMAGES

59.    The conduct of Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the damages resulting from the asbestos-related lung diseases and wrongful death of Plaintiff, and of the following general and special damages including but not limited to, damages for survival and wrongful death claims, that Plaintiff has sustained:

    a.    The conscious physical pain and suffering and mental anguish sustained by Plaintiff;

    b.    The disabilities and physical impairments suffered by Plaintiff;

    c.    The disfigurement suffered by Plaintiff;

    d.    Reasonable and necessary hospital and/or medical and/or pharmaceutical and/or other necessary expenses incurred by Plaintiff;

    e.    Plaintiff's lost earnings and net accumulations;

    f.    Plaintiff's mental anguish caused by his or her extraordinary increased likelihood during his or her lifetime of developing (or the progression and/or recurrence of) asbestos-related cancer of the lungs, mesothelioma and other cancers, due to said exposure to products manufactured, sold and/or distributed by the named Defendants; and

16

g.        Plaintiff seeks punitive and exemplary damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against the Defendants, and each of them, jointly and severally, for general damages, special damages, for punitive and exemplary damages, for his costs expended herein, for prejudgment interest from the date of Plaintiff's exposure to asbestos-containing products, and post judgment interest on the judgment at the rate allowed by law, and for such other and further relief, both at law and in equity, to which Plaintiff may show himself justly entitled. Plaintiff seeks recovery for damages in an amount to be determined by the jury in the exercise of its enlightened conscience, but in no event less than Fifty (50) Thousand Dollars.

## WAIVER

60.        Should any verdict in this case assign responsibility, in whole or in part, for any or all Plaintiff's injuries or damages to the entities Asbestos Corp. Ltd, Atlas Turner, Inc., Lac D'Amiante du Quebec, Les Mines D'Amiante Bell, Ltd., and/or Societe Miniere Mazarin, Inc., and should such verdict finding be upheld upon proper post-judgment motion, Plaintiff hereby waives, and will remit and release, that portion of his damages. Plaintiff seeks, and will seek, the entry of a final judgment in this action against Defendants that awards them only that portion of his damages assigned by the jury and the court to the named Defendants.

61.        Plaintiff in this action does not assert any claims for, does not seek any damages for, and disclaim any recovery of damages for, any injuries arising out of exposure to, asbestos containing products designed, manufactured, distributed, sold or marketed by, or any actions or inactions of Asbestos Corp. Ltd, Atlas Turner, Inc., Lac D'Amiante du Quebec, Les Mines D'Amiante Bell, Ltd., and/or Societe Miniere Mazarin, Inc. To the extent Plaintiff has been exposed to such asbestos containing products and has sustained any injuries there from Plaintiff hereby waives his right to recover damages for such injuries.

62.        The Plaintiff specifically denies that he has ever had any claims for relief under any applicable federal statute against any Defendant and waive any and all claims that might have accrued under any applicable federal statute. The Plaintiff denies that he was ever exposed to asbestos on property subject to federal jurisdiction and waive the right to seek recovery for any alleged exposure that may have occurred on property subject to federal jurisdiction.

## JOHN DOE DEFENDANTS

63.        Due to the passage of time since the Plaintiff was first exposed to asbestos, the Plaintiff has been unable to ascertain the identities of all manufacturers, suppliers, distributors and installers of asbestos-containing products to which he was exposed and hereby re-assert each of the foregoing allegations against John Doe Defendants #1-100. Due to the passage of time since the Plaintiff was first exposed to asbestos, the Plaintiff has been unable to ascertain the identities of all associations and organizations which conspired with the manufacturers, suppliers, distributors and installers of asbestos-containing products to which he was exposed and hereby re-asserts each of the foregoing allegations against John Doe Defendants #102-200.

## CONCLUSION

64.        As a direct and proximate result of all the Defendants' breaches of their duties to the Plaintiff as delineated in all counts above, the Plaintiff sustained the asbestos related injuries, diseases, illnesses and/or conditions set forth above including, but not limited to, pain and suffering, the undergoing of medical treatment and medical expenses, along with past and future disability, past and future impairment of wage earning capacity, lost wages, and diminution of quality and enjoyment of life including, but not limited to, mental anguish, fear, and severe emotional distress associated with knowing that there was no cure for the asbestos-related diseases and illnesses from which Plaintiff suffered.

17

65.   In breaching their duties to the Plaintiff, as described above, the Defendants have acted intentionally, with gross negligence, recklessly, maliciously or wantonly in that the Defendants knew or should have known through data available to them that asbestos was inherently and extraordinarily dangerous if used in the manner intended or foreseen by the Defendants, and that their aforesaid breaches of duty would result in the complained of injuries and damages to the Plaintiff, thus entitling the Plaintiff to recover punitive or exemplary damages for the Defendants' outrageous conduct as set forth herein.

WHEREFORE, the Plaintiff herein demands judgment against the Defendants, jointly, severally, and collectively, for compensatory and punitive damages, costs, pre and post judgment interest, attorney's fees, and all other damages to which he is legally entitled, in an amount to be determined at trial.

THIS, the 5th day of February, 2004.

Respectfully submitted,

Louis H. Watson, Jr. (MB #9055)
C. Maison Heidelberg (MB # 9559)

ATTORNEYS FOR PLAINTIFF

OF COUNSEL:

WATSON & HEIDELBERG, P.A.
520 E. Capitol Street
Jackson, Mississippi  39201
Telephone: (601) 968-0000
Facsimile: (601) 968-0010

JOHN ARTHUR EAVES LAW FIRM
101 North State Street
Jackson, Mississippi 39201
Telephone:   (601) 355-7961
Facsimile:   (601) 355-0530

## EXHIBIT "A"
## LIST OF PLAINTIFFS

**PLAINTIFF**                                                    **DISEASE**

**JANET HOCKLEY, as Personal**
**Representative of the Estate of**
**JAMES W. JAY, JR., DECEASED**                    Mesothelioma
326 E. Marion Avenue
Crystal Springs, MS  39059
DOB:  June 28, 1921
DOD:  October 14, 2002
SS#:  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

## EXHIBIT "B"
## LIST OF DEFENDANTS

A. C. F. Valves
ACF Industries, Inc.
620 N. 2ⁿᵈ Street
St. Charles, MO 63301-5418

A. O. SMITH
c/o Prentice Hall Corporation Systems, Inc.
2711 Centerville Rd., Ste. 400
Wilmington, DE 19808-1645

API DELEVAN, INC.
c/o James W. Bingel
270 Quaker Road
East Aurora, NY 14052

API HEAT TRANSFER, INC.
Individually And On Behalf Of American Percision
Industries, Inc., API Basco, Inc., And Basco, Inc.
c/o Craig J. Van Tine, CEO
2777 Walden Avenue
Buffalo, New York 14225

APV Homogenizer, INC.
a/k/a APV North American, Inc., f/k/a APV Gaulin, Inc.,
Gaulin Corp, f/k/a Manton-Gaulin Manufacturing Co.
c/o C. T. Corporation Systems
101 Federal Street
Boston, MA 02110

A. R. WILFLEY & SONS, INC.
c/o its President
Post Office Box 2330
Denver, CO 80201-2330

A.W. CHESTERTON
Route 93 Middlesex Industrial Park
225 Fallon Road
Stoneham, MA 02182

ACCURATE FELT & GASKET CO., INC.
c/o William J. Gurney
3239 South 51ˢᵗ Avenue
Circero, IL 60650-4063

AEARO COMPANY,
f/k/a Cabot Safety Corp.
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

AEROFIN CORPORATION
on Behalf Of Buffalo Forge Company
c/o Mr. Louis Berman
4621 Murray Place
Lynchburg, VA 24506

AJAX BOILER AND HEATER COMPANY
c/o its President
2701 South Harbor Blvd.
Santa Ana, CA 92704-5803

ALBANY INTERNATIONAL CORP.
c/o Mr. Frank R. Schmeler
1373 Broadway
Albany, NY 12204

ALCO INDUSTRIES, INC.
As A Successor to Hays Manufacturing, Haysite
Reinforced Plastics, Alco Standard, Synthane-
Taylor Corporation (Of Valley Fordge, PA),
Synthane Corporation, Taylor Corporation
c/o Mr. George E. Smith, President
Betzwood Industrial Park
Route 363
Post Office Box 937
Valley Fordge, PA 19481-0937

ALFA LAVAL, INC.
Post Office Box 7731
Richmond, VA 23231

ALLEGHENY YORK CO.
c/o Its President
Post Office Box 3327
York, PA 17402

ALLEN-BRADLEY CO.
c/o Its President
1201 South Second Street
Milwaukee, WI 53204

ALLIED GLOVE CORPORATION
Post Office Box 2126
Milwaukee, WI 53201

ALSTOM POWER
As Successor To Griscom Russell &
Bratlett - Snow-Pacific, Inc.
c/o Its President
1550 Lehigh Drive
Easton, PA 18042-6283

AMCHEM PRODUCTS, INC.
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

AMERICAN AIR FILTER COMPANY, INC.
a/k/a American Air Filter International
c/o Mr. Bruce D. Krueger, Vice President
10300 Ormsby Park Place, Suite 600
Louisville, KY 40223-6169

AMERICAN CRANE CORPORATION
Individually And As Successor To And/Or On
Behalf Of American Hoist And Derrick
202 Raleigh Street
Wilmington, NC 28412

AMERICAN CYANAMID COMPANY
c/o CSC - United States Corporation
830 Bear Tavern Road
Trenton, NJ 08628

AMERICAN PRECISION IND., INC.
Individually And As Successor-In-Interest To
Basco, Inc. And Dustex Corporation
c/o C. T. Corporation Systems
111 Eighth Avenue
New York, NY 10011

AMERICAN STANDARD, INC.
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

AMERICAN OPTICAL CORPORATION
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

AMERON   INTERNATIONAL
CORPORATION
c/o James S. Marlen
245 S. Los Robles Ave.
Pasadena, CA 91101-2894

AMETEK, INC.,
Individually And As Successor-In-Interest To Lamb
Electric Motor Co., And Haveg Industries, Inc.
c/o its President, Frank S. Hermance
37 North Valley Rd., Bldg. 4
Post Office Box 1764
Paoli, PA 19301

AMETEK, INC.,
Individually And As Successor-In-Interest To Lamb
Electric Motor Co., And Haveg Industries, Inc.
c/o its President, Frank S. Hermance
900 Greenbank Rd.
Wilmington, DE 19808

AMPCO-PITTSBURGH CORPORATION
600 Grant Street, Suite 4600
Pittsburg, PA 15219

ANCHOR/DARLING VALVE COMPANY,
Individually And On Behalf Of Muesco
c/o Mr. John J. Chappell
701 First Street
Williamsport, PA 17701

ANCHOR PACKING COMPANY
c/o The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

ANCO INSULATIONS, INC.
c/o Thomas E. Balhoff
Roedel, Parsons, Kock, Frost, et al.
8440 Jefferson Hwy., Ste. 301
Baton Rouge, LA 70809-7652

ANDERSON GREENWOOD
c/o Mr. Greg Hyland, President
3950 Greenbriar
Stafford, TX 77477

ANDERSON  GREENWOOD/CROSBY,
INC.
d/ba/ Crosby Valve, Inc.
c/o Mr. Edward Neale, Vice President
43 Kendrick Street
Wrenthan, MA 02093-0308

ANDRITZ, INC.
On Behalf Of Andritz Sprout-Bauer, Inc.
And C. E. Bauer Digester
c/o C. T. Corporation System
1300 East Ninth Street
Cleveland, OH 44114

APPLETON ELECTRIC/
APPLETON MACHINE CO.
7770 North Frontage Road
Skokie, IL 60077

AQUA-CHEM, INC.
c/o Its President
7800 N. 113th Street
Milwaukee, WI 53224

ARCHER-DANIELS-MIDLAND CO., INC.,
As Successor to Archer-Daniels-Midland Co.,
Chemical Products Div.
c/o Mr. G. Allen Andreas
4666-T Faries Pkwy.
Decatur, IL 62525-5678

ARMSTRONG INTERNATIONAL, INC.
c/o an officer, David Armstrong
2081 Southeast Ocean Blvd., 4th Floor
Stuart, FL 34996

ARVIN MERITOR, INC.
c/o Mr. Larry D. Yost
2135 W. Maple Road
Troy, MI 48084

ASARCO, INC.
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

ASCO VALVE
c/o Its President
50 Hanover Road
Florhan Park, NJ 07932

ASHLAND, INC.
f/k/a Ashland Oil, Inc. and Ashland Oil &
Refining Company On Behalf Of And As
Successor To Catalin Corp. Of America
c/o Mr. Steven F. Leer, President
City Place 1, Suite 300
St. Louis, MO  63141

ASHLAND CHEMICAL,
Individually And As Successor To
CATALIN CORP. OF AMERICA
c/o Paul W. Chellgren
50 E. River Center Blvd.
Covington, KY 41012-0391

ASHLAND OIL, INC.
f/k/a ASHLAND, INC;
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

ATLANTIC RICHFIELD COMPANY, INC.
100 West Tenth Street
Wilmington, DE 19801-4500

ATLAS COPCO COMPRESSORS, INC.
c/o The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

ATOFINA CHEMICALS, INC.
Individually And On Behalf Of Penwalt Corp.,
a/k/a Kenwalt a/k/a Kensalt Chemical Corp.,
MNT Chemicals, Inc., And Furane Plastics, Inc.
c/o Jean-Pierre Seeuws, CEO
2000 Market Street
Philadelphia, PA 19103-3222

AURORA PUMP
c/o SPX Corporation
13515 Ballantyne Corporate Place
Charlotte, NC 28277

B-I-F
c/o SPX Corporation
13515 Ballantyne Corporate Place
Charlotte, NC 28277

BP AMOCO CHEMICAL COMPANY
f/k/a BP America, Inc.
c/o Its President
200 E. Randolph Drive
Mail Code 2401A
Chicago, IL 60601

BABBITT STEAM SPECIALTY CO.
c/o Mr. Edwin Babbitt
800 Mt. Pleasant Street
New Bedford, MA 02745

BACOU DALLOZ SAFETY
f/k/a Dalloz Safety, Inc., f/k/a WGM
Safety Corporation
c/o Its Registered Agent
2nd and Washington Streets
Post Office Box 622
Reading, PA  19603

BAKER HUGHES INCORPORATED
c/o Michael E. Wiley
3900 Essex Lane, Suite 1200
Houston, TX 77027

BEAIRD INDUSTRIES, INC.
(RILEY-BEAIRD, INC.)
c/o The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

BEAZER EAST, INC.,
Individually And Successor-lin-Interest To Beazer
Materials and Services, Inc. And Koppers
Company
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

BELL & GOSSETT, ITT INDUSTRIES,
INC.
c/o Mr. Robert L. Ayers
8200 N. Austin Avenue
Morton Grove, IL 60053

BINKS MANUFACTURING COMPANY
c/o The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

BIRD INCORPORATED
Individually And As Successor-In-Interest To Bird & Son,
Inc., Bird Inc... and Bird Roofing Products, Inc.
1077 Pleasant Street
Norwood, MA 02062

BLACKMER PUMPS
1809 Century Avenue, SW
Grand Rapids, MI 49503-1530

BORDEN, INC.,
As Successor-In-Interest to Borden, Co.,
Chemical Division
c/o Prentice-Hall Corporation System
506 S. President St.
Jackson, MS 39201

BORG WARNER CORP.
200 S. Michigan St.
Chicago, IL 60604-2402

BRANTON INSULATIONS, INC.
Agent: H.T. Branton
1101 Edwards Ave.
Harahan, LA 70123

BRICE BUILDING CO., INC.
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

BRIDGESTONE FIRESTONE, INC.
c/o its President
50 Century Blvd.
Nashville, TN  37214

BUDD COMPANY,
Individually, On Behalf Of And As Successor
To Continental Diamond Fiber Co., and HAVEG
c/o Richard J. Urso,
President of Plastics Division
3155 Big Beaver Rd.
Post Office Box 2601
Troy, MI  48007-2601

C.E. THURSTON & SONS, INC.
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

C.V. HAROLD RUBBER COMPANY
c/o Claudia L. Harold
4431 Euphrosine St.
New Orleans, LA 70125

CADILLAC PLASTIC GROUP, INC.
On Behalf Of Dayco Corporation And Cadillac
Plastics Company

CARLISLE CORPORATION
c/o Prentice Hall Corporation
33 North LaSalle St.
Chicago, IL 60602-2607

CARVER PUMP CO.
c/o Its President
2415 Park Avenue
Muscatine, IA 52761-5691

CBS CORPORATION
As Successor-In-Interest To
WESTINGHOUSE ELECTRIC CORPORATION
c/o C . T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

CERTAINTEED CORPORATION
c/o The Corporation Trust Co.
Corporation Trust Center
1209 Orange St.
Wilmington, DE 19801

CHAMPION AIR COMPRESSOR, INC.
c/o Its President
1301 N. Euclid Avenue
Princeton, IL 61356

CHAMPION INTERNATIONAL CORP.,
Individually And As Successor To Champion
Friction Co.
One Champion Plaza
Stamford, CT 06721

CHAMPLAIN CABLE
c/o Its Agent
175 Hercules Drive
Colchester, VT 05446

CHEVRON/TEXACO, INC.,
c/o Corporate Secretary's Department
Legal Process Unit
Post Office Box 6006
San Ramon, CA 94583-2324

CHICAGO METAL HOSE/
SENOR FLEXONICS, INC.
2400 Longhorn Industrial Drive
New Braunfels, TX 78130

CHICAGO PUMP COMPANY
Post Office Box 6620
Aurora, IL 60598-6620

CIRCOR INTERNATIONAL, INC.,
Individually, On Behalf Of And As Successor-In-
Interest To Leslie Controls, Inc., Leslie Co.,
Leslie Valve Co.,
Hoke and Keiley & Mueller, Inc.
c/o David A. Bloss, Sr.
35 Corporate Drive
Burlington, MA 01803

CLARK-RELIANCE CORPORATION,
Individually, On Behalf Of And As Successor-In-
Interest To V.D. Anderson Co., Reliance Gauge
Column Co., Clark Mfg. Co., Jacoby-Tarbox
Corp., and Jerguson Gage & Valve Co.
c/o Mr. Dennis L. Pesek
16633 Foltz Industrial Parkway
Strongsville, OH 44136

CNA HOLDINGS INC.,
Holding Company For Celanese
Chemicals America
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

COLFAX CORPORATION,
Individually, On Behalf Of, And As Successor To
Iinterest To IMO DeLaval, IMO Industries, Inc.,
DeLaval Steam Turbine Co.,
Warner Electric Co. and IMO Pump Group, and
Allweiller Pump Co.
c/o Mr. John Young
9211 Forest Hill Ave., Ste. 109
Richmond, VA 23235

COLLINS & AIKMAN CORPORATION
701 McCullough Drive
Charlotte, NC 28262

COLLINS PACKING CO., INC.

COLTEC INDUSTRIES, INC.
c/o Its President
2730 W. Tyvola Road
Charlotte, NC 28217

COMBUSTION ENGINEERING, INC.
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

CONGOLEUM CORPORATION
c/o Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, Delaware 19801

CONTINENTAL BEVERAGE
PACKAGING, INC.,
f/k/a Continental Can Company, Inc., n/k/a Crown
Beverage Packaging, Inc.
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

COOPER ALLOY CORPORATION
f/k/a Cooper Alloy Foundry & Company
201 Sweetland Avenue
Hillside, NJ 07205

COOPER INDUSTRIES, INC.
c/o its President, H. John Riley, Jr.
600 Travis, Suite 5800
Houston, TX 77002-1001

COOPER INDUSTRIES,
Individually, On Behalf Of, And As Successor-In-
Interest To Cameron Iron Works
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

COOPER TURBO COMPRESSOR
c/o Its President
3101 Broadway
Buffalo, NY 14225

CRANE CO.,
Individually and as successor to Jenkins Valves,
Inc.; Jenkins Bros. Valve Company; Powers
Process Controls, f/k/a Powers Regulator Co.;
Stockham Valves & Fittings, Inc.; Chapman
Valve Mfg. Co.; Aloyco Valve Co.; Weinman
Pump Co.; and Cyclotherm Corporation and
Cyclotherm Boiler Company
c/o its CEO, Robert S. Evans
100 First Stanford Place
Stamford, CT 06902

CRANE CO.,
Individually And As Successor To Burks
Company; Powers Process Controls, f/k/a
Powers Regulator Co.; Stockham Valves &
Fittings, Inc.; Pacific Valves; Chapman
Valve MFG. Co.; Aloyco Valve Co.; Weinman
Pump Co.; and Cyclotherm Corporation and
Cyclotherm Boiler Company
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

CROMPTON CORPORATION
c/o Corporate Services
2711 Centerville Road
Suite 400
Wilmington, DE 19818

CROSSFIELD PRODUCTS
CORPORATION
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

CROUSE-HINDS CO.,
A Division Of Cooper Industries
c/o H. John Riley, Jr., President
Wolf & Seventh N. Street
Syracuse, NY 13221

CROWN CORK & SEAL USA, CO., INC.,
Individually And As Successor-In-Interest To
Mundet Cork Co.
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

CYTEC INDUSTRIES, INC.,
Individually, On Behalf Of And As Successor To
Fiberite Corp. and Glaskyd Corp.
Mr. David Lilley
5 Garret Mountain Plaza
West Paterson, NJ 07424

CYTEC FIBERITE, INC.,
Individually, On Behalf Of, And As Successor To
Fiberite Corp.
c/o its President
501 W. Third St.
Winona, MN 55987-2854

DANA CORPORATION
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

DANAHER CORPORATION.
As Successor To Delevan Corp., API Delevan
Inc. And Basco, Inc., API BASCO Inc
c/o George Sherman and/or Jim Bengel
2099 Penn Avenue N.W.
12th Floor
Washington, DC 20006

DB RILEY
f/k/a Riley-Stoker Corporation
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

DIXIE MILL SUPPLY CO., INC.
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

DORR-OLIVER, INC.
612 Wheelers Farm Road
Milford, CT 06460

DOVER CORPORATION.
Individually, On Behalf Of, And As Successor-
In-Interest To OPW Division and Blackmer Pump
Company
280 Park Ave.
New York, NY 10017-1292

THE DOW CHEMICAL COMPANY
c/o Mr. Michael D. Parker, CEO
2030 Dow Center
Midland, MI 48674

DRESSER INDUSTRIES, INC.,
Individually And As Successor To
Kellog-Brown & Root
c/o Its President
2001 Ross Avenue
Post Office Box 718
Dallas, TX 75221

DURABLA MFG. COMPANY
2572 Industry Lane
Norristown, PA 19403

DURAMETALLIC CORP.
f/k/a FlowServe Corporation –
Fluid Sealing Division
c/o Its President
222 W. Las Colinas Blvd., Suite 1500
Irving, TX 75039

DWYER INSTRUMENTS, INC./
MERCOID DIVISION,
Individually And As Successor To
Mercoid, Federal Gage Co.
c/ o its President, Steve Clark
Post Office Box 258
Michigan City, IN 46361

E.D. BULLARD COMPANY
Agent: Roger L. Andrews
1898 Safety Way
Cynthiana, KY 41031-9303

E.I. DUPONT de NEMOURS & COMPANY
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

EASTERN SAFETY EQUIPMENT CO.,
AEARO CORPORATION
90 Mechanic Street
Southbridge, MA 01550

ECLIPSE, INC.
On Behalf Of Eclipse Fuel Engineering Co.
c/o Douglas Perks
1665 Elmwood Road
Rockford, IL 61103-1211

EDWARDS VOGT VALVE, INC.
c/o C. T. Corporation Systems
225 Hillsborough Street
Raleigh, NC 27603

ELLIOTT TURBO MACHINERY CO., INC.
c/o its President
901 N. Fourth St.
Jeanette, PA 15644-1473

EMERSON ELECTRIC CO.,
Individually And As Successor-In-Interest To
Fisher Governor Co. and/or Fisher Controls
International, Inc.
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

ENGELHARD CORPORATION
Individually And As Successor-In-Interes
To Charles Englehard, Inc.
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

ENGLEHARD HANOVIA, INC.
c/o Ms. Sally A. Pingree
645 5th Ave.
New York, NY 10022

EXXON MOBIL CORPORATION
As Successor-In-Interest To Mobil Corporation;
Humble Oil & Refinery; Standard Oil Of New
Jersey; Enjay Chemical Co.; Exxon USA; Exxon
Chemical Company
c/o Corporation Service Company
506 S. President Street
Jackson, MS 9201

FKI Industries, Inc.,
d/b/a ACCO Chain & Lifting Products Division
f/k/a American Chain Co., Inc.
c/o C. T. Corporation Systems
1635 Market Street
Philadelphia, PA 19103

FMC CORPORATION,
Individually, On Behalf Of And As Successor-
In-Interest To Peerless Pump Co.; John Bean
Pumps; Chicago Pumps; Dayton-Dowd Pump
Co.; Ohio Apex Division; Link-Belt Company; And
Construction Equipment Group
c/o Mr. William G. Walter
200 E. Randolph Dr.
Chicago, IL 60601

FAIRBANKS MORSE PUMPS.
Individually And As Successor to Fairbanks
Morse & Co.
c/o Its Vice President
3601 Fairbanks Avenue
Kansas City, KS 66106

THE FALK CORPORATION,
Individually And As Successor To The Falk
Company
c/o C. T. Corporation Systems
44 E. Mifflin Street
Madison, WI 53703

FERRO CORPORATION
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

FIBERMARK, INC.
Individually, And On Behalf Of, And As
Successor-in-Interest to Latex Fiber Industries
c/o Mr. Alex Kwader
Chairman and CEO
161 Wellington Road
Brattleboro, VT 05302

FIRESTONE TIRE & RUBBER CO.,
Individually, On Behalf Of And As Successor-in-
Interest To The Firestone Plastics Co. And World
Bestos Brake Co.
c/o its President
1200 Firestone Parkway
Akron, OH 44317

FISHER CONTROLS INTERNATIONAL,
INC.
Individually And As Successor-In-Interest To
Fisher Governor Company
c/o Its President
8000 Maryland Avenue
Clayton, MO 63105

FLEXO PRODUCTS, INC.
c/o Its Agent: John D. Hill, Jr
Post Office Box 450765
Westlake, OH 44145

FLINTKOTE COMPANY
c/o The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

FLOWSEVE ANCHOR DARLING
OPERATIONS
c/o Its President
701 First St.
Williamsport, PA 17701

FLOWSERVE CORPORATION,
Individually And As Successor To Durco Pumps
And Duriron Company, Inc
c/o Mr. Bernard Rethore, CEO
222 West Los Colinas Blvd.
Irving, TX 75039

FLOWSERVE CORPORATION/
FLUID SEALING DIVISION
f/k/a Durametallic Corp.
c/o Mr. George Shedlarski
2100 Factory Street
Kalamazoo, MI 49001

FOSECO, INC.,
Individually And As The Wholly Owned
Subsidiary Of Georgetown Holding Company,
Inc., Subsidiary Of Foseco Holding Company,
INc., foreign parent of Foseco Holding BV,
Voorburg, Netherlands
20200 Sheldon Road
Cleveland, OH 44142

FOSTER WHEELER USA
CORPORATION
c/o United States Corporation Company
506 S. President St.
Jackson, MS 39201

THE FOXBORO CO.
c/o Mr. Bruce Henderson, CEO
33 Commercial Street
Foxboro, MA 02035

THE FOXBORO CO.
n/k/a Invensys Systems, Inc.
c/o C. T. Corporation Systems
101 Federal Street
Boston, MA 02110

FRENCH OIL MILL MACHINERY
COMPANY
c/o Mr. Daniel Phelps French
Post Office Box 920
Piqua, OH 45356-0920

FURON COMPANY
n/k/a Saint-Gobain Performance
Plastics Corporation
c/o Mr. Gerald Walsh, CEO
750 East Swdesford Road
Valley Fordge, PA 19482

GARDNER DENVER, INC.,
Individually And As Successor to
Joy Compressors
c/o Ross J. Centanni
1800 Gardner Expressway
Quincy, IL 62301

GARFIELD MFG. CO.
c/o its President
10-T Midland Ave.
Wallington, NJ 07057

GARLOCK INCORPORATION
c/o C. T. Corporation Systems
Superior Avenue, N.E.
Cleveland, OH 44114

GENERAL ELECTRIC COMPANY
c/o C. T. Corporation System
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

GENERAL PLASTICS CORPORATION
c/o Jack Lee Thomas
110 Lois Lane
Salisbury, NC 28147

GENERAL REFRACTORIES COMPANY
225 East City Lane Avenue, Suite 114
Balla Cynwyd, PA 19004

GENERAL DYNAMICS CORP.
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

GENERAL CABLE INDUSTRIES, INC.,
formerly General Cable Corp.
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

GEORGIA-PACIFIC CORPORATION
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

GILBARCO, INC.,
Individually And On Behalf Of Sier-Bath Gear and
Pump, Inc.
c/o Michael Donovan
7300 West Friendly Avenue
Post Office Box 22087
Greensboro, NC 27420-2087

GOODRICH CORPORATION
f/k/a The B. F. Goodrich Company
c/o C. T. Corporation Systems
225 Hillsborogh Street
Raleigh, NC 27603

GOODYEAR TIRE & RUBBER
COMPANY, INC.
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

THE GORMAN-RUPP CO.
Individually And As Successor-In-Interest To
C. H. Wheeler Mfg. Co., Patterson Pump
Company, IPT Pumps And Economy Pumps
c/o Mr. Jeffery Gorman
and/or Mr. Bill Horn
305 Bowman Street
Mansfield, OH 44901

GOULDS PUMPS TRADING CORP.,
Individually And As Successor To Allis Chalmers
Pumps Division
c/o Mr. Louis J. Guiliano, President
4 West Red Oak Lane
White Plains, NY 10604

GOULD, INC./GOULD ELECTRONICS,
INC.
Gould Electronics. Inc.
34929 Curtis Boulevard
Eastlake, OH 44095-4001

GRAYBAR ELECTRIC COMPANY, INC.
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

GREENE TWEED & CO.
c/o Mr. Mike Brewer
2374 North Penn Rd.
Hatfield, PA 19440

GREFCO, INC.
c/o C. T. Corporation Systems
111 Eighth Avenue
13th Floor
New York, NY 10011

GRINNELL CORP.,
Individually And Successor-In-Interest to
Grinnell Co., Inc., Grinnell Fire Protection
Systems. Inc., ITT Grinnell Corp., ITT Grinnell
Valve Co., Inc., And ITT Grinnell Industrial
Piping, Inc.
c/o Mr. L Dennis Kozlowski, President
7604 Kempwood Drive
Hosuton, TX 77055

GULF COAST MARINE SUPPLY CO.
Paul W. Bean
Bayou Cassotte Road
Post Office Box 1117
Pascagoula, MS 39567

GULF ENGINEERING CO., INC.
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

GULF BELTING & GASKET CO., INC.
Theodore J. Bouregois
4612 Jeannette Dr.
Metairie, LA 70003

H.B. FULLER COMPANY, INC.
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

HAMMERMILL PAPER CO. -
Manning Paper Division
c/o C. T. Corporation
111 Eighth Avenue
New York, NY 10011

HAMMERMILL PAPER COMPANY
c/o C. T. Corporation System
1209 Orange Street
Wilmington, DE 19801

HAMILTON   SUNDSTRAND
CORPORATION,
A United Technologies Comapny, Individually
And As Successor To The Falk Corporation
c/o Mr. Ronald F. McKenna, President
One Hamilton Road
Windsor Locks, CT 06096

HARWICK CHEMICAL MFG. CO.
c/o Mr. Craig Stambaugh
2020 T-Front Street
Cuyahoga Falls, OH 44221

HENRY VOGT MACHINE CO.
c/o Ms. Margaret S. Culver
1000 West Ormsby
Louisville, KY 40210

HERCULES, INC.
c/o Mr. William H. Joyce
Hercules Plaza
1313 N. Market St.
Wilmington, DE 19894

HONEYWELL INTERNATIONAL, INC.,
FORMERLY KNOWN AS ALLIED-SIGNAL, INC., f/k/a
and Successor-in-interest to Bendix Foundation Brake
Corporation
c/o C.T. Corporation System
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

HOPEMAN BROTHERS, INC.,
Individually And As Successor-In-Interest To
Wayne Manufacturing Co.
c/o Its President
435 Essex Avenue
Waynesboro, VA 22980

HUBBELL, INC.
Individually And As Successor-In-Interest To
Ohio Brass Co.
c/o Mr. G. Jackson Ratcliffe
584 Derby Milford Road
Orange, CT 06477-4024

HYDROMATIC PUMP
And/Or PENTAIR, INC.
For And On Behalf Of Hydromatic Pump
c/o SPX Corporation
Mr. John Blystone
13515 Ballantyne Corporate Place
Charlotte, NC 28277

I.U. NORTH AMERICA, INC.
c/o C.T. Corporation
1209 Orange Street
Wilmington, DE 19801

ICI AMERICAS, INC.,
Individually and as Successor to IMPERIAL
CHEMICAL INDUSTRIES, ICI United States,
ICI America, Inc., and ICI America
c/o John R. Danzeisen
10 Finderne Avenue
Bridgewater, NJ 08807-3300

IDEX Corporation,
Individually, On Behalf Of And As Successor-In-
Interest To Viking Pump Co., Viking Pumps, Inc.,
Warren-Rupp, Inc.; Gast Mfg., Inc.; Corken, Inc.;
and Pulsafeeder, Inc.
c/o Mr. Dennis K. Williams
630 Dundee Rd.
Northbrook, IL 60062

ILLINOIS TOOL WORKS,
Successor-In-Interest to DeVilbiss
c/o Mr. W. James (Jim) Farrell
3600 W. Lake Ave.
Glenview, IL 60025-5811

IMO INDUSTRIES, INC.,
Individually And On Behalf Of And As Successor
To De Laval; De Laval Steam Turbine Co., IMO
De Laval and Warren Pump Co.
c/o Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, Delaware 19801

INDRESCO, INC.,
Individually And As Successor-In-Interest To
Worthington Corporation
c/o C.T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

INDUSTRIAL HOLDINGS
CORPORATION,
Individually And As Successor-In-Interest
To The Carborundum Corporation
c/o Thomas W. Tardy III
Forman Perry Watkins Krutz & Tardy
Post Office Box 22608
Jackson, MS 39225-2608

INDUSTRIAL RUBBER AND SPECIALTY
COMPANY
formerly Coastal Rubber & Gasket Co.
c/o Greg Hebert
715 East McDowell Rd. (39204)
Post Office Box 7117
Jackson, MS 39205

INGERSOLL-RAND COMPANY
c/o C.T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

INVENSYS, PLC
Individually And As Successor-In-Interest
To Edwards Vogt Valve Co., Invensys Co.,
And Edwards Valve, Inc., And Vogt-Nem, Inc.
c/o Mr. Allen M. Yurko, CEO
Carlisle Place
London SWIP 1 BX
United Kingdon

INVENSYS METERING SYSTEMS -
NORTH AMERICA, INC.
c/o C.T. Corporation Systems
111 Eight Avenue
New York, NY 10011

ITT HOLDINGS, INC./MCDONNELL &
MILLER,
Individually And As Successor to Goulds Pumps
(IPG), Inc. And Goulds Pumps (N.Y.), Inc.,
McDonnell & Miller, And As Successor To Allis
Chalmers Pumps Division, Kennedy Valve Co.,
HoffmanSpecialty Mfg. Co., Bell & Gossett, And
Marlow Pump Co.
c/o Mr. Robet Dvorak, CEO
3500 North Spaulding Avenue
Chicago, IL 60618

ITT INDUSTRIES, INC.,
Individually And As Successor To Goulds
Pumps (IPG), Inc., And Goulds Pumps (N.Y.),
And As Successor To Allis Chalmers Pumps
Division; Kennedy Valve Co., Hoffman
Specialty Mfg. Co.; Bell & Gossett., Marlow
Pump Co., Grinnell Co.
c/o Its President, Louis J. Giuliano
4 West Red Oak Lane
White Plains, NY 10604

JAMESTOWN METAL AND MARINE
SALES
c/o C.T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

JOHN DOE, Defendants,
addresses are currently unknown.

JOHN CRANE COMPANY,
INCORPORATED;
formerly John Crane Packing Company
c/o The Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

KAMCO SUPPLY COMPANY
80 21st Street
Brooklyn, NY 11232

KELLY-MOORE PAINT COMPANY, INC.
987 Commercial Street
San Carlos, CA 94070

KEYSTONE INTERNATIONAL, INC.
And KEYSTONE VALVE U.S.A., INC.,
Individually And As Successor-In-Interest To
Yarway Corporation, Gimpel Machine Works,
Gimpel Corporation, Anderson-Greenwood
And Keystone Valve Co.
c/o Its President
9700 W. Gulf Bank Drive
Houston, TX 77040

KIMBERLY-CLARK CORPORATION
c/o C.T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

KOMP EQUIPMENT CO., INC.
c/o George B. Komp, III
319 Pine Street
Hattiesburg, MS 39401

LAMONS GASKET CO.,
Individually And On Behalf Of Lamons Metal
Gasket Co.
c/o its President
7300 Airport Blvd.
Houston, TX 77061

LAPP INSULATOR COMPANY LLC
c/o Corporation Trust System
111 8th Avenue
New York, NY 10011

LAYNE CHRISTENSEN CO.
1900 Shawnee Mission Parkway
Mission Woods, KS 66205

LAUREL MACHINERY & FOUNDRY CO.
c/o P.E. Mulloy
810 Front Street
Laurel, MS 39440

LAWRENCE PUMPS, INC.
c/o Its President
371 Market Street
Lawrence, MA 01843

LESLIE CONTROLS, INC.
c/o Its President
12501 Telecom Drive
Tampa, FL 33637

LIMITORQUE CORPORATION
c/o Mr. R. Arnold Wallace, President
5114 Woodall Road
Lynchburg, VA 24502

LINCOLN ELECTRIC COMPANY
c/o H. Jay Elliott
22801 St. Clair Avenue
Cleveland, OH 44117

LOUIS M. GERSON COMPANY, INC.
15-F3 Sprout Street
Middleboro, ME 02346

MAGNETROL INTERNATIONAL
c/o Ms. Judy G. Steverson
5300 Belmont Road
Downers Grove, IL 60515-4499

MANCHESTER TANK & EQUIPMENT
COMPANY
Individually And As Successor To Buckeye Boiler
Co. And Western Air Tank
c/o Its President
1749 Mallory Lane #400
Brentwood, TN 37027

MAREMONT CORPORATION
c/o The Corporation Trust Company
1209 Orange St.
Wilmington, DE 19801

MARKS CONTROLS CORPORATION
As Successor To Powers Regulator Company
c/o Mr. Eric C. Fast, President
100 1ˢᵗ Stamford Place
Stamford, CT 06902

THE MARLEY COMPANY
a/k/a Marley Cooling Towers
c/o SPX Corporation
Mr. John B. Blystone
13515 Ballentyne Corporate Place
Charlotte, NC 28277

THE MARLEY COMPANY
d/b/a Marley Pump Company
c/o C. T. Corporation Systems
2222 Grand Avenue
Des Moines, IA 50312

MARLEY PUMP CO.

MARSH INSTRUMENTS
c/o SPX Corporation
13515 Ballentyne Corporate Place
Charlotte, NC 28277

MARTINDALE ELECTRIC COMPANY
Agent: Robert J. Gamary
1375 Hird Ave.
Cleveland, OH 44107

McCARTY CORPORATION
f/k/a McCarty-Branton
c/o Paul Spaht
445 N. Blvd., Ste. 300
Baton Rouge, LA 70802

McCORD GASKET CO.
c/o President
26555 Northwestern Hwy.
Southfield, MI 48034

McKESSON CORP.
f/k/a McKesson HBOC, Individually, On Behalf Of
And As Successor-In-Interest To McKesson
Chemical Co.
c/o Mr. John H. Hammergren
1 Post St.
San Francisco, CA 94104

McMASTER-CARR SUPPLY CO.
600 T. County Line Rd.
Elmhurst, IL 60126

MEAD CORPORATION,
a/k/a The Mead Corporation, Individually, On
Behalf Of, And As Successor-In-Interest To Mead
Specialty Papers
c/o Mr. Jerome F. Tatar
Courthouse Plaza NE
Dayton, OH 45463

MET-PRO CORPORATION
On Behalf of Dean Brothers Pumps
c/o Mr. William Kacin
160 Cassell Road
Post Office Box 144
Harleysville, PA 19438

METALLO GASKET CO.
c/o Its President
16 Bethany Street
New Brunswick, NJ 08903

METROPOLITAN LIFE INSURANCE
COMPANY
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

MILTON ROY COMPANY
c/o Mr. Jean Claude Pharamond
201 Ivyland Rd.
Ivyland, PA 18974

MINSTAR, INC.
On Behalf Of And/Or As Successor To AMF, Inc.,
f/k/a American Machine & Foundry Company,
Inc.
c/o Irwin L. Jacobs
405 Second Avenue S.
Minneapolis, MN 55401

MINNESOTA MINING &
MANUFACTURING COMPANY
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

MISSISSIPPI RUBBER & SPECIALTY
CO.
c/o Greg Hebert
715 East McDowell Rd. (39204)
Post Office Box 7117
Jackson, MS 39205

MOBIL OIL CORPORATION
c/o Prentice Hall
506 S. President St.
Jackson, MS 39201

MONSANTO CO.,
Individually And As Successor to Lion Oil, Fisher
Governor Company And Fisher Controls
International, Inc.
c/o Hendrik A. Verfaillie, CEO
8000 N. Lindbergh Blvd.
St. Louis, MO 63167

MOYNO, INC.
c/o C. T. Corporation Systems
441 Vine Street, #3810
Cincinnati, OH 85202

MUELLER STEAM SPECIALTY
c/o Its President
1491 NC Highway 20 W
St. Paulis, NC 28384

NASH ENGINEERING CO.
c/o Mr. Richard Clarke, President
9 Trefoil Drive
Trumball, CT 06611

NATIONAL SERVICE INDUSTRIES
c/o Corporation Service Company
506 S. President St.
Jackson, MS 39201

NIBCO, INC.,
a/k/a Northern Indiana Brass Co. (NIBCO)
c/o Mr. Rex Martin
1516 Middlebury St.
Elkhart, IN 46515-1167

NOOTERS CORPORATION
c/o Mr. Raymond B. Rohrbacker
1400 South Third Street
Box 451
St. Louis, MO 63166

NORTON COMPANY
c/o C. T. Corporation
111 Eighth Avenue
New York, NY 10011

NVF MANUFACTURING COMPANY
c/o Its President
1155 Yorklyn Road
Yorklyn, DE 19736

OCCIDENTAL CHEMICAL CORP.,
Individually And On Behalf Of Hooker
Electrochemical Corp., Durez And Ruco
Divisions; Diamond Shamrock Chemical Co. f/k/a
Diamond Alkali Corp.
c/o Mr. J. Roger Hirl
Occidental Tower
5005 LBJ Freeway
Dallas, TX 75244

OCCIDENTAL PETROLEUM,
Individually And On Behalf Of Hooker ElectroChemical Corp., Durez And Ruco Divisions; Diamond Shamrock Chemical Co. f/k/a Diamond Alkali Corp.
c/o its CEO, Ray Irani
10889 Wilshire Blvd.
Los Angeles, CA 90024

OGLEBAY NORTON COMPANY
1100 Superior Avenue
Cleveland, OH 44114

OWENS-ILLINOIS, INC.
c/o The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

PACIFIC VALVES
c/o Its President
3201 Walnut Avenue
Long Beach, CA 90799

PARKER HANNIFIN CORPORATION
c/o Mr. Donald E. Washkewicz
6035 Parkland Blvd.
Cleveland, OH 44124-4141

PATTERSON-KELLEY
c/o Its President
100 Burson Street
East Stoudsburg, PA 19301

PECORA CORPORATION
c/o Its President
165 Wambold Road
Harleyville, PA 13438

PFIZER, INC.
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

PHILLIPS PETROLEUM COMPANY
c/o CSC of Rankin County, Inc.
2710 Old Brandon Rd.
Post Office Box 54051
Pearl, MS 39288-4051

PHOENIX SPECIALTY
MANUFACTURING CO., INC.
c/o Mr. Robert R. Hurst, Jr., CEO
Highway 301
Bamberg, SC 29003

PLASTICS ENGINEERING CO.
(PLENCO)
c/o Mr. Michael R. Brotz, President
Post Office Box 758
Sheboygan, WI 53082-0578

PREFERRED UTILITIES MFG. CORP
c/o CEO Mr. Robert G. Bohn
31-35 South Street
Danbury, CT 06810

PROKO INDUSTRIES, INC.

PULSAFEEDER, INC.
Individually And On Behalf Of Lapp Insulator Company, Eastern Pump Company, ECO Pump Company, Foster Pump Company, Chem-Tech International, Precision Control Products, Mec-O-Matic, And Morr Control
c/o Mr. Rodney L. Usher, CEO
IDEX
600 Dundee, Suite 400
Northbrook, IL 60062

QUAKER OATS CO.
c/o C. T. Corporation
208 S. LaSalle St.
Chicago, IL 60604-1135

R A PRODUCTS, INC.
on behalf of Dayco Corporation and Cadillac Plastics Company
The Corporation Company
30600 Telegraph Road
Bingham, MI 48025

RAPID AMERICAN CORPORATION
Individually And As Successor-In-Interest To The Liability Of Philip Carey Manufacturing Corporation As The Result Of An Express Assumption Of All Liabilities In The Glen Allen Corporation's 1967 Merger With Philip Carey Manufacturing Corporation And The Glen Allen Corporation Is The Predecessor-In-Interest To Rapid American Corporation
630 Third Avenue
7th Floor
New York, NY 10017

REICHHOLD, INC.
Individually, On Behalf Of And As Successor-In-Interest To Reichold Chemicals, Inc. and Reichhold Chemical Co.
c/oRichard F. Yarborough, Jr.
Aultman, Tyner, Ruffin & Yarborough, LTD
Post Office Drawer 707
Columbia, MS 39429

REILLY-BENTON COMPANY, INC.
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

RELIANCE ELECTRIC MOTORS
c/o Its President
6040 Ponders Court
Greenville, SC 29615

REUNION INDUSTRIES, INC.,
Individually, On Behalf Of And Successor-In-Interest To Oneida Molded Plastics And Rostone Corporation
c/o Mr. Kimball J. Bradley
11 Stanwix St., Ste. 1400
Pittsburg, PA 15222

THE RICHARDSON COMPANY
c/o Crompton Corporation
Mr. Vincent A. Calacro, CEO
One American Lane
Greenwich, CT 06831

THE RICHARDSON COMPANY
c/o Crompton Corporation
Mr. Joe LoMenzo
199 Benson Road
Middlebury, CT 06749

RILEY STOKER CORPORATION
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

RILEY-STUART SUPPLY CO., INC.
Thomas W. Casey
601 Western Dr.
Mobile, AL 36607

ROBBINS & MYERS, INC.
c/o Its President
1400 Kettering Tower
Dayton, OH 45423

ROBERTSON CECO CORPORATION
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

ROCKBESTOS, CO.
c/o David A. Barfield, Esq.
Barfield & Associates
233 E. Capitol
Jackson, MS 39201

ROCKWELL INTERNATIONAL CORP.,
Individually And Successor-In-Iinterest To Allen-Bradley Co., Allen-Bradley Co., Inc. and Rockwell Mfg. Co., And Rockwell-Standard Corp.
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

ROGERS CORPORATION
c/o Mr. Walter E. Boomer
One Technology Dr.
Rogers, CT 06263

S. T. JOHNSON CO.,
Individually, On Behalf Of And As Successor-In-Interest To Mears-Kane-Ofeldt, Inc.
Post Office Box 8627
Emeryville, CA 94662

SCHUTTE & KOERTING, INC.
Individually And As Successor-In-Interest To Schutte & Koerting Co.
c/o Mr. Hugh H. Williamson, III, CEO
2233 State Road
Bensalem, PA 19020

SCHWEITZER-MARUDUIT
INTERNATIONAL, INC.
100 North Point Center East
Suite 600
Alpharetta, GA 30022

SCOTT TECHNOLOGIES,
Individually And Successor-In-InterestTo Figgie International, Inc., Individually And Formerly Known As And/Or Successor-In-Interest To Figgie International Holdings Inc., and ATO, Inc.
c/o The Corporation Co.
200 Interstate Park Drive, Ste. 204
Montgomery, AL 36109

SELBY, BATTERSBY & CO.,
d/b/a S B DECKING, INC.
c/o Francis McGill Hadden, Esq.
Hecker, Brown, Sherry and Johnson, LLP
17000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103-2769

SEPCO CORPORATION
c/o C. T. Corporation
350 North St. Paul Street
Dallas, TX 75201

SHELL OIL COMPANY,
Individually, On Behalf Of, And as Successor-
In-Interest To Shell Chemical Company
c/o Mr. Steven L. Miller
One Shell Plaza
Houston TX 77002

SIEMANS BUILDING TECHNOLOGIES,
INC.,
Individually And As Successor-In-Interest
To Landis & Gyr Powers, Inc., Mark Controls
Corporation, And Powers Regulator Company
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

SPENCE ENGINEERING CO., INC.,
Individually, On Behalf Of And Successor-In-
Interest To Nicholson Steam Trap Co.
c/o its President
150 Coldenham Rd.
Post Office Box 230
Walden, NY 12586-2035

SPIRAX-SARCO, INC.
c/o Henry M. Burwell, Esq.
Nelson, Mullins, Riley & Scarborough,
L.L.P.
Post Office Box 10084
Greenville, SC 29603

SPX CORP.,
Individually, On Behalf Of And Successor-In-
Interest to Dezurik, Inc.; Copes-Vulcan, Inc.;
Weil-McLain Co.; And Marley Pump Co.
c/o its President
John B. Blystone
13515 Ballentyne Corporate Place
Charlotte, NC 28277

SPX CORPORATION
Individually, On Behalf Of And
Successor-In-Interest To Dezurik, Inc.,
Copes-Vulcan, Inc.; Weil-McLain Co.;
And Marley Pump Co.
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

STANDARD EQUIPMENT COMPANY,
INC.
c/o Burnley Davis
75 Beauregard St.
Post Office Drawer G
Mobile, AL 36601

THE STEBBINS ENGINEERING AND
MANUFACTURING COMPANY
c/o Mr. Alfred E. Calligaris
363 Eastern Blvd.
Watertown, NY 13601

STRAHAM VALVES, INC.
c/o It President
3 Vreeland Road
Florham Park, NJ 07932

STUART C. IRBY CO.
c/o Mr. Charles R. Cambell, III
815 South Supple Street
Jackson, MS 39201

SULZER PUMPS, INC. And/Or
SULZER PUMPS (U.S.), INC.,
Individually And On Behalf Of Sulzer Bingham
2800 N. W. Front Avenue
Portland, OR 97210

SUNDYNE CORPORATION
c/o Its President
14845 West 64th Avenue
Arvadar, CO 80007

SUNOCO, INC.
c/o The Corporation Trust Company
1209 Orange St.
Wilmington, DE 19801

SWAGELOK
c/o Mr. William R. Cosgrove, CEO
29500 Esolon Road
Solon, OH 44139

TAYLOR-SEIDENBACH, INC.
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

TENNECO AUTOMOTIVE, INC.
c/o Mr. Mark P. Frissora
500 North Field Dr.
Lake Forest, IL 60045

TEREX CRANES, INC.,
Individually, On Behalf Of And As Successor-In-
Interest To Terex American Crane Corp.,
American Crane Corp.; andAmerican Hoist &
Derrick Co.
c/o its President
Highway 501 East
Conway, SC 29526

TEXACO, INC.
c/o Its President
2000 Westchester Avenue
White Plains, NY 10650

TEXTRON, INC.
c/o Mr. Lewis B. Campbell
40 Westminster St.
Providence, RI 02903-2596

THOMAS & BETTS CORPORATION
Individually, On Behalf Of, And As Successor To
Amerace Corporation And American Hard
Rubber Co.
c/o T. Kevin Dunnigan, President
8155 T & B Blvd.
Memphis, TN 38125

TRW, INC.
c/o Mr. E. D. Dunford, President
1900 Richmond Road 2N
Cleveland, OH 44124

TURNER SUPPLY COMPANY
c/o John R. Jones
1457 West Dr.
Laurel, MS 39440

TUTHILL CORPORATION,
Individually And As Successor-In-Interest To
Coppus Turbine, Tuthill Pump Co. And
Mechanical Products Co.
c/o its President
8500 S. Madison St.
Burr Ridge, IL 60521

TYCO INTERNATIONAL, LTD
c/o Mr. Edward Breen, Jr., CEO
273 Corporate Drive
Portsmouth, NH 03801

TYCO INTERNATIONAL (U.S.), INC.
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

U.C. REALTY CORP.,
Formerly Mhc Holding and Land Corporation,
Formerly Homecrafters Centers, Inc., Formerly
Moore-handley, Inc.
c/o The Corporation Trust Company
1209 Orange St.
Wilmington, DE 19801

UNION CARBIDE CHEMICALS &
PLASTICS COMPANY
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

UNIROYAL HOLDING INC.
as successor to Uniroyal Inc.
830 Bear Tavern Rd.
West Trenton, NJ 08608

UNITED DOMINION INDUSTRIES, INC.
a/k/a UDI
c/o Its President
13515 Ballantyne Corporate Plaza
Charlotte, NC 28202-6039

UNITED GILSONITE LABORATORIES
c/o Mr. Malcolm C. MacKinnon
1396 Jefferson Avenue
Seranton, PA 18509

UNITED INDUSTRIAL CORPORATION,
Individually, On Behalf Of And As Successor-In-Interest To Detroit Stoker Company and American Engineering Co.
c/o Richard R. Erkeneff
570 Lexington Ave.
New York, NY 10022

UNIVERSAL OIL PRODUCTS COMPANY
25 E. Algonquin Road
Des Plaines, IL 60017

USX CORPORATION,
Formerly U.S. Steel Corporation And Successor-In-Interest To American Bridge Company And To Tennessee Coal, Iron & Railroad Co.
c/o The Prentice Hall Corporation System
2704 Commerce Drive
Harrisburg, PA 17110

THE VEEDER-ROOT COMPANY
125 Powder Forest Drive
Simsbury, CT 06070

VEEDER-ROOT COMPANY, INC.
a/k/a Veeder-Root Services Company, Inc., As Successor-In-Interest To Marley Pumps
c/o Western Pacific Industries, Inc.
2099 Penn Avenue N.W., 12th Floor
Washington, DC 2006

VELAN VALVE CORPORATION
94 Avenue C
Williston, VT 05495

VIACOM, INC.,
Successor By Merger To CBS Corporation As Successor-In-Interest To Westinghouse Electric Corporation
Westinghouse Building, Gateway Center
11 Stanwix Street
Pittsburgh, PA 15222

VIKING PUMP, INC.
A Unit Of IDEX Corporation
c/o Its President
406 State Street
Post Office Box 8
Cedar Falls, Iowa 50613-0008

WALWORTH COMPANY,
Individually And As Successor-In-Interest To Alloyco (f/k/a Alloy Steel Products Co.), Grove Valve Co. And Grove Regulator Co.
c/o its President
8383 Commerce Park Dr., Ste. 608
Houston, TX 77036

WARREN PUMPS, INC.,
Individually And On Behalf Of William E. Quimby, Inc. and Quimby Pump Co.
c/o its President
82 Bridges Ave.
Post Office Box 969
Warren, MA 01083-0969

WATTS INDUSTRIES, INC.
a/k/a Watts Regulator Co., Individually, On Behalf Of And As Successor-In-Interest to Ames Co., Inc.
c/o Mr. Timothy P. Horne
815 Chestnut St., North
Andover, MA 01845-6098

WAUKESHA FOUNDRY CO., INC.

WEAKS ENTERPRISES, INC.,
Individually And Successor To Weaks Supply Co., Inc. of Mississippi and Weaks Supply Co.
c/o Henry H. Weaks
2705 Bramble Dr.
Monroe, LA 71201

WEIL-McLAIN COMPANY
A Division Of The Marley Company, A Wholly Owned Subsidiary Of United Dominion Industries, Inc.
c/o Its President
500 Blaine Street
Michigan City, IN 46360-2388

WEINMAN PUMP COMPANY
c/o Its President
420 Third Street
Post Office Box 603
Piqua, OH 45356

WEIR VALVES & CONTROLS
f/k/a Atwood & Morrill

WGM SAFETY CORPORATION
d/b/a Wilson Safety Products
c/o Its Registered Agent
2nd and Washington Streets
Post Office Box 622
Reading, PA 19603

WHEELER PROTECTIVE APPAREL CORP.

WHITE CONSOLIDATED INDUSTRIES
As Successor To SARCO Co., Inc., Successor To Vulcan, Electrolux
c/o C. T. Corporation System
1515 Market Street, Suite 1210
Philadelphia, PA 19102

WHITTAKER CLARK & DANIELS, INC.
c/o Mr. Bob Przybylowski
1000 Coolidge St.
South Plainfield, NJ 07080

WICKES INC.,
Individually, And As Successor To The Wickes Boiler Co.
c/o David T. Krawczyk
706 N. Deer Path
Vernon Hills, IL 60061

WILLIAM POWELL COMPANY
c/o Its President
2503 Springgrove Avenue
Cincinnati, OH 45214

YARWAY CORP.,
Individually And As Successor-In-Interest To Yarnell-Waring Co.
c/o Juan Gomez, CEO
480 Norristown Rd.
Post Office Box 350
Bluebell, PA 19422

YEOMANS CHICAGO CORPORATION
Individually And On Behalf Of Morris Machine Works f/k/a Morris Pumps, Inc.
c/o Mr. John L. Kelly, President
3905 Enterprise Court
Post Office Box 960
Aurora, IL 60598-0620

YUBA HEAT TRANSFER CO.,
Individually, On Behalf Of And As Successor-In-Interest To American District Steam Co., (ADSCO)
c/o its President
Post Office Box 3158
Tulsa, OK 74101-3158

ZURN INDUSTRIES, INC.
c/o C. T. Corporation Systems
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

# WATSON & HEIDELBERG, P.A.

### ATTORNEYS AT LAW

520 EAST CAPITOL STREET

JACKSON, MISSISSIPPI 39201-2703

TELEPHONE: 601.968.0000

FACSIMILE: 601.968.0010

EMAIL: LOUIS@WATSONHEIDELBERG.COM

**LOUIS H. WATSON, JR.**

RECEIVED

APR 2 2 2004

Flowserve Corp.
Legal Dept.

April 5, 2004

Hon. Edna E. Stevens, Clerk
Copiah County Circuit Court
Post Office Box 467
Hazlehurst, MS  39083

Re:   *Janet Hockley, As Personal Representative of the Estate of*
      *James W. Jay, Jr., Deceased vs. Metropolitan Life Insurance Co., et al.*
      **Cause No. 2004-0116 (Copiah County Circuit Court)**

Dear Ms. Stevens:

Enclosed please find a Notice of Service of Discovery for the above-referenced matter.
Please file the original and return the "Filed" stamped copy to me in the enclosed self-addressed,
stamped envelope.

Thank you for your assistance in this matter.   Please do not hesitate to contact me if you
should have any questions.

Sincerely,

WATSON & HEIDELBERG, P.A.

Louis H. Watson, Jr.

LHW:kwm
CLERK Lt – Discovery 040504.wpd
Enclosures

## IN THE CIRCUIT COURT OF SIMPSON COUNTY, MISSISSIPPI

JANET HOCKLEY, As Personal
Representative of the Estate of
JAMES W. JAY, JR., DECEASED

**PLAINTIFFS**

**vs.**

**CIVIL ACTION NO.: 2004-0116**

METROPOLITAN LIFE INSURANCE CO., ET AL.

**DEFENDANTS**

### NOTICE OF SERVICE OF DISCOVERY

RECEIVED

APR 2 2 2004

Legal Dept.

TO:    Counsel of Record

PLEASE TAKE NOTICE that Plaintiff will serve on Defendants at the time of service

the following:

1.    Plaintiff Janet Hockley, as Personal Representative of the Estate of James
W. Jay, Deceased, Responses To Defendants' Master Set of Interrogatories
and Request for Production of Documents to Plaintiff.

The original pleading is being retained in the possession of counsel for the Plaintiff

in accordance with the rules of this Court.

THIS, the 5th day of April, 2004.

Respectfully submitted,

Louis H. Watson, Jr. (MB #9053)
C. Maison Heidelberg (MB #9559)

ATTORNEYS FOR PLAINTIFF

OF COUNSEL:

WATSON & HEIDELBERG, P.A.
520 East Capitol Street
Jackson, MS 39201
Telephone: (601) 968-0000
Facsimile: (601) 968-0010

## CERTIFICATE OF SERVICE

I, LOUIS H. WATSON., JR., certify that I will serve a true and correct copy of the above and foregoing document to the registered agent of all Defendants at the time of service of the Summons and the Complaint.

THIS, the 5th day of April, 2004.

_____
LOUIS H. WATSON, JR.

## IN THE CIRCUIT COURT OF SIMPSON COUNTY, MISSISSIPPI

**JANET HOCKLEY, As Personal
Representative of the Estate of
JAMES W. JAY, JR., DECEASED**                                    **PLAINTIFFS**

**vs.**                                              **CIVIL ACTION NO.: 2004-0116**

**METROPOLITAN LIFE INSURANCE CO., ET AL.**          **DEFENDANTS**

### PLAINTIFF JANET HOCKLEY'S, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JAMES W. JAY, DECEASED, RESPONSES TO DEFENDANTS' MASTER SET OF INTERROGATORIES <u>AND REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFFS</u>

COMES NOW Plaintiff Janet Hockley as Personal Representative of the Estate of James W. Jay, Jr. by her attorneys answers the Master Set of Interrogatories and Requests for Production of Documents propounded by the Defendants, without waiving any objection as to the relevancy or admissibility of any of the information contained herein, in accordance with the Mississippi Rules of Civil Procedure as follows:

### <u>INTRODUCTION</u>

1.      The information supplied in these answers in not based solely on the knowledge of the Plaintiff, but includes the knowledge of the Plaintiff and her attorneys, unless privileged.  A signature of the Plaintiff at the conclusion of these answers does not necessarily mean that the Plaintiff has any personal knowledge as to any particular answer which is given.

2.      The word usage and sentence structure may be that of the attorney assisting the preparation of these answers and thus does not necessarily purport to be the precise language of the Plaintiff.

3.      The term "Plaintiff" when used in these answers may refer to the Plaintiff depending on the context in which the word is used.



4/5/04

## INTERROGATORY ANSWERS

**INTERROGATORY NO. 1:** Please state your full name, as well as all aliases or nicknames, present address, date and place of birth, your current driver's license number, your Social Security number, every address you have had, dates of each residence, and your complete educational background. Where applicable, please also state the name, last address, date and place of birth, and Social Security number of your decedent.

**RESPONSE:** Decedent's name is James W. Jay. His former address is 212 Glen Street Crystal Springs, Mississippi 39059. Decedent was born June 28, 1921, in Clyde, Texas. His driver's license number is not applicable. His social security number is 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. He completed the 12th grade at Twy High School in Kerrville, Texas. Mr. James graduated from Schrbiner Institute, in Kerrville, Texas in 1941. Mr. Jay died of malignant mesothelioma on October 14, 2002.

**INTERROGATORY NO. 2:** Identify fully any and all trade association or labor union of which you/your decedent are/were a member or have ever been a member and please give the following:

A.      Identify your occupation and/or job titles for each trade or labor union to which you have belonged;

B.      The name of the union(s) to which you have belonged;

C.      Inclusive dates of your membership in each;

D.      The local union number of each local union to which you/your decedent have/has belonged;

E.      the complete addresses of the local unions to which you/your decedent have/has belonged; and

F.      All offices or other positions which you/your decedent have/has held in each union, identifying the office, position, and union in which held and inclusive dates the position or office was held.

**RESPONSE:** Mr. James was never a member of a trade or labor union.

**INTERROGATORY NO. 3:** If you are presently married, please give the date of your marriage and the name, current address, and age of your spouse; your spouse's place of employment for five (5) years preceding the filing of this action and the name of each child you and your current spouse have had.

**RESPONSE:** James W. Jay was married to Anna Jay until the death of Mrs. Jay. Mr. and Mrs. Jay married on July 4, 1951.

**INTERROGATORY NO. 4:** With regard to each person listed in response to Interrogatory 3 who is dependent on you for financial support, please state their present name and address, date of birth, relationship to you, marital status and present employer.

**RESPONSE:** Other than himself, he did not have any dependents on his income.

**INTERROGATORY NO. 5:** Identify by brand name, manufacturer's name, generic description, and/or other identifying description each and every asbestos-containing product, machinery, device or equipment, which you/your decedent contend you/your decedent has ever **personally used**, and which was allegedly designed, manufactured, distributed, applied, installed and/or sold by any defendant, and for each such product identify the defendant that, according to you, is or should be responsible because of their alleged design, manufacture, distribution, application, installation, or sale of such asbestos products, along with your factual basis for your claims as to each defendant.

**RESPONSE:** James Jay was exposed to a variety of asbestos-containing products. During his employment at Adkinson Hardware Company, he was a salesman. Asbestos containing products Mr. James was exposed to while working at Adkinson Hardware Company are unknown at this time. Mr. James was also employed by the Coast Guard, as a Chief Warrant Officer in Gulfport, Mississippi. During that time he was exposed to boilers and pipes.

Plaintiff believes the asbestos-containing products he was exposed to were designed, manufactured, applied, installed, and/or sold by the parties named as defendants in this litigation. This response may be seasonably supplemented in accordance with the Mississippi Rules of Civil Procedure upon the completion of discovery and/or the receipt of additional relevant and discoverable information.

**INTERROGATORY NO. 6:** With regard to each and every product identified in response to Interrogatory 5:

A.  Identify your (or the decedent's) employer and your (or your decedent's) job title and job craft or trade at the time of each exposure;

B.  Identify the job site, including ship names/hull numbers, if appropriate, at which each exposure occurred;

C.  State the inclusive dates of each exposure;

D.  Describe the manner in which each product was being used at the time of each alleged exposure and the specific location on the job site where such alleged exposure occurred;

E.  Identify each person, including but not limited to co-workers, supervisors, family members, with personal knowledge that you (or the decedent) were exposed to each product;

F.  With respect to each job site identified in response to section B above, state whether the employer, union, or anyone provided shower facilities for employees; and

G.  With respect to each job site identified in response to section B above, state whether the employer, union, or anyone provided lockers for personal and/or work clothing.

**RESPONSE:**

A.  James Jay worked for Adkinson Hardware as a Salesman in Jackson, Mississippi from 1973-1983. He worked for the Coast Guard in Gulfport, Mississippi from 1948-1973.

B.  See response to Interrogatory No. 5 incorporated herein by reference.

C.  See Chart below for dates of employment.

D.  See response to Interrogatory No. 5 incorporated herein by reference.

E.  Plaintiff cannot recall the names of Mr. Jay's supervisors or coworkers names at this time.

F.  Plaintiff cannot recall Mr. Jay's employers providing showers for their employees.

G.  Plaintiff cannot recall Mr. Jay's employers providing lockers for their employees.

| COMPANY | CITY/ STATE | DATE STARTED | DATE STOPPED | JOB TITLE | PRODUCTS EXPOSED TO |
|---|---|---|---|---|---|
| Adkinson Hardware | Jackson, MS | 1973 | 1983 | Salesman | Unknown |
| Coast Guard | Gulfport, Mississippi | 1948 | 1973 | Chief Warrant Officer | Boilers, Pipes |

**INTERROGATORY NO. 7:** Other than the products identified by you in response to Interrogatory 5, please identify by brand name, manufacturer's name, generic description, and/or other identifying description each and every asbestos containing product to which you (or the decedent) contend you/your decedent were exposed, without regard to whether or not you (or the decedent) personally used such product(s) and for each such product identify the defendant that, according to you, is or should be responsible because of their alleged design, manufacture, distribution, application, installation, or sale of such asbestos products, along with your factual basis for your claims as to each defendant.

**RESPONSE:** See response to Interrogatory No. 5 incorporated herein by reference.

**INTERROGATORY NO. 8:** With regard to each product identified in response to Interrogatory 7:

A.  Identify your (or the decedent's) employer and your (or your decedent's) job title and job craft or trade at the time of each exposure;

B.  Identify the job site including ship names/hull numbers, if appropriate, at which each exposure occurred;

-3-

    C.       State the inclusive dates of each exposure;

    D.       Describe the manner in which each product was being used at the time of each alleged exposure and the specific location on the job site where such alleged exposure occurred; and

    E.       Identify each person with personal knowledge that you (or the decedent) were exposed to each product.

**RESPONSE:** See response to Interrogatory No. 6 incorporated herein by reference.

**INTERROGATORY NO. 9:** Please describe any and all dusts, chemicals, sprays, pesticides, or other air borne materials to which you/your decedent may have been exposed in your lifetime and for each such exposure, please give the date, identify you/your decedent's employer, and the circumstances of each such exposure.

**RESPONSE:** Objection to the overly broad nature of this request. Without waiving the objection, at this time, Plaintiff is not aware of any significant, remarkable, or harmful exposure to chemicals, dusts, sprays, or pesticides other than those listed previously.

**INTERROGATORY NO. 10:** Please provide a complete listing of your/your decedent's work history from your first employment until the date of your answer to these interrogatories. Please include in this listing, the name of each employer, including self-employment; the identity of all of your/your decedent's supervisors; a brief description of your/your decedent's job and your/your decedent's duties for each employment; the inclusive dates of each employment; and whether you believe your/your decedent were/was exposed to any asbestos-containing products at that employment.

**RESPONSE:** James Jay worked for the following places: Adkinson Hardware in Jackson, Mississippi (1973-1983). Coast Guard in Gulfport, Mississippi (1948-1973).

**INTERROGATORY NO. 11:** For each job where you allege exposure to asbestos, please describe your/your decedent's work environment giving details as to the shift worked; the percentage of time spent working inside, and the height, width and length of the structure in which you worked; the percentage of time spent working outside; and what ventilation devices or safety devices were available for use, and what ventilation devices or safety devices your/your decedent actually used.

**RESPONSE:** Plaintiff objects to this interrogatory's demand for precise percentages and measurements on the basis that it is unduly burdensome. Without waiving said objection, see response to Interrogatory No. 6. James Jay regularly worked as a Salesman and Chief Officer. As Mr. Jay was unaware of the dangers of asbestos during the years he worked as a Salesman and Chief Officer, no ventilation devices or safety devices were used to protect his from asbestos fibers.

**INTERROGATORY NO. 12:** For each and every job site where you allege exposure to asbestos and/or asbestos-containing products, please identify by name, address, and telephone number each and every co-worker known to you and state the year or years he/she worked at a particular job site.

**RESPONSE:** Co-workers at Adkinson Hardware were: Max Daniels, Muller Adkinson and Charles McLenden.

**INTERROGATORY NO. 13:** Describe in detail any and all claims or contentions you make concerning any unsafe characteristic or quality relating to each defendant's products, including safety and protective equipment or apparatus, asbestos-containing products, or other products or equipment which claims or contentions are not fully disclosed in the preceding interrogatories. With respect to each such alleged unsafe characteristic or quality (including any allegation that they were unsafe because of a failure to warn), please identify:

    A.       Specifically the manner in which you contend each product, machinery, or equipment was unsafe;

    B.       Separately what you contend the defendant should have done to cure such alleged condition;

    C.       All persons who have knowledge of such alleged unsafe characteristics or quality; and

    D.       All documents which evidence or are relevant to such alleged unsafe characteristic or quality.

**RESPONSE:**  Plaintiff objects to this request as being improper as to form and substance and not susceptible of being answered at this stage of the case.  These "contention" interrogatories seek trial strategy and tactical information rather than facts or knowledge and as such are inappropriate.

**INTERROGATORY NO. 14:**  Identify any and all investigations or other reports that have been prepared, compiled, submitted, or conducted, including those made by you or anyone acting on your behalf, that relate to the subject matter of this action, and if you or anyone acting on your behalf has caused any respirator, mask, hood, or other safety device or any asbestos-containing product, machinery, or equipment, to be tested, inspected or evaluated, please state for each such test, inspection or evaluation: the date it was made; the name of its manufacturer; its model number and name; a description of the test, etc. (that is complete enough to allow someone to re-conduct it); the place where such test, etc., was performed; the name, address, job title, and employer of each such person participating in and/or conducting such test, etc.; the results, and if the results have been committed to writing, the name, address, job title and employer of each and every person known to have a copy of such report.

**RESPONSE:**  Plaintiff objects to this interrogatory as it seeks information that is protected by the attorney-client privilege and work product privilege.  Without waiving said objection, Plaintiff has not conducted or caused to be conducted any tests, evaluations, or inspections of any asbestos containing products or safety devices.  However, tests or inspections may have been done by third parties or Defendants.  Any such tests are unknown to Plaintiff at this time.

**INTERROGATORY NO. 15:**  If any tests or examinations have been conducted which purported to measure the quality of air or levels of hazardous substances in the air at any of the sites of your employment, please identify and describe for each and every test: the location, the date, the time, the person or entity performing the test, the method (including, but not limited to, the testing conditions and the length of each test), the individual results, and all documents created or produced in connection with such test.

**RESPONSE:**  Plaintiff is unaware of any such test being performed at any of the sites of Decedent's employment.

**INTERROGATORY NO. 16:**  As to each and every injury, sickness, or medical condition allegedly sustained by you/your decedent and/or your spouse which you contend was caused by use of or exposure to products designed, manufactured, sold, distributed, applied or installed by any of the defendants, please describe in detail:

A.    The nature of the injury, sickness or medical condition that you/your decedent or your spouse sustained, the symptoms associated therewith, and the date on which these symptoms first occurred;

B.    The specific product(s) which you contend caused such injury, sickness, or medical condition;

C.    Identify each treating or examining physician or other medical practitioner whom you or your spouse have seen;

D.    Identify each hospital to which you/your decedent or your spouse were admitted;

E.    The nature of the medical treatment that you/your decedent or your spouse received and the dates of each such treatment, including the date of admission and discharge from any hospital;

F.    The diagnosis of each treating physician or practitioner of the healing arts whom you/your decedent or your spouse have seen;

G.    The current state of you or your spouse's health including any impairment of functions, disability, or other complaints;

H.    Identify each person who is either fully or partially dependent on you and give each such person's date of birth, residence address, and current occupation; and

I.    Identify and describe any x-ray screenings and/or pulmonary function tests ever performed on you/your decedent.

**RESPONSE:**

A.    On October 24, 2001, Plaintiff was diagnosed with mesothelioma.  Prior to the diagnosis, Plaintiff was having shortness of breath, progressive pain and dyspnea.

B.    See Answer to Interrogatory No. 5.

C.   Plaintiff objects to Interrogatory No. 16(C). Without waiving said objection, Decedant saw the following physicians or medical practitioners regarding his condition:

Dr. David B. Wheat
Jackson, MS
Oncology

Dr. Terry Brantey
Jackson, MS

Dr. Marshal J. Stout
Jackson, MS

Dr. Ralph Sneed

D.   St. Dominic Hospital
Jackson, MS

E.   Plaintiff objects to Interrogatory No. 16(E) as being overly broad and unduly burdensome. Defense counsel will be provided an executed authorization form to obtain Decedent's medical records.

F.   See Answer to Interrogatory No. 16(E).

G.   Plaintiff objects to this interrogatory seeking medical opinions and conclusions beyond those that can be provided by a layperson.  Defense counsel will be provided an executed authorization form to obtain Decedent's medical records.

H.   See Answer to Interrogatory No. 4.

I.   Plaintiff  objects to the use of the vague and ambiguous term "screenings" in Interrogatory No. 16(I).  Defense counsel will be provided an executed authorization form to obtain Decedent's medical records.

**INTERROGATORY NO. 17:**  Please describe how and when you first came to believe that you/your decedent have an asbestos related disease or injury.

**RESPONSE:** Mr. Jay learned he had mesothelioma after his diagnosis on October 24, 2001 after he went to the doctor complaining of shortness of breath, progressive pain and dyspnea.

**INTERROGATORY NO. 18:**  If you/your decedent ever had a biopsy performed or tissue sample taken, please identify the following information for each procedure performed:

A.   The name and address of the office or hospital where such procedures were performed;
B.   Reasons as to why such procedures were performed;
C.   The date(s) on which such procedures were performed;
D.   The information reported to you/your decedent from medical practitioners as a result of such procedures;
E.   The person(s) who performed such procedure and the person(s) who made such findings;
F.   The location of any tissue sample or any other physical evidence obtained in the performance of such procedures; and
G.   The location and custodian of any reports or written findings of any such procedures.

**RESPONSE:** Plaintiff objects to this interrogatory on the basis that it is overly broad and unduly burdensome.  Defense counsel will be provided an executed authorization to obtain Decedent's medical records.

**INTERROGATORY NO. 19:**  Other than those entities identified in Interrogatory 15 above, please identify each doctor, hospital or other medical entity that has ever treated or consulted with you/your decedent for any reason, and for each such entity, please give the dates of treatment and the reason for that treatment or consultation.

**RESPONSE:** Plaintiff objects to this interrogatory on the basis that it is overly broad and unduly burdensome. Defense counsel will be provided an executed authorization to obtain Decedent's medical records.

**INTERROGATORY NO. 20:** Identify any and all hospital records, doctor's notes, nurse's notes, doctor's reports or other medical records, x-rays (including CT Scans), pathology slides, tissue blocks, tissue specimens, or autopsy specimens which have been withheld from production to the defendants and please state the identity of the current custodian thereof.

**RESPONSE:** None.

**INTERROGATORY NO. 21:** Were you examined and/or tested by a health care provider or health care technician, prior to filing your petition, at the request or suggestion of any other individual in order to ascertain whether you might have grounds to file this lawsuit? If so, please:

      1.      Identify the individual who made the request or suggestion;
      2.      Identify each health care provider who performed any examination or testing; and
      3.      State the date and place each examination or test occurred.

**RESPONSE:** Plaintiff objects to the extent that this interrogatory calls for information which is or may be protected by attorney client privilege, subject to and without waiving this objection, Decedent chose to seek medical assistance and treatment after experiencing shortness of breath, progressive pain and dyspera. Plaintiff underwent a biopsy on October 8, 2001  Plaintiff was later diagnosed by Dr. Graham, M.D. on October 24, 2001 with mesothelioma. Copies of these documents will be provided with Plaintiff's master discovery responses.

**INTERROGATORY NO. 22:** Do you currently use or have you/your decedent ever used cigarettes, cigars or a pipe or other tobacco products of any kind? If so, please state fully and in detail:

    A.    The type of products which you smoke or use or you/your decedent smoked or used;
    B.    The dates and time periods during which you/your decedent smoked or used tobacco products;
    C.    The daily frequency with which you smoke or use, or you/your decedent smoked or used, tobacco products, i.e., two packages of cigarettes daily, three cigars daily, two pipefuls daily, etc.;
    D.    For any time period in which you stopped using tobacco products, your reason for stopping;
    E.    When you commenced using tobacco products after a period of having stopped, your reasons for restarting;
    F.    If you/your decedent smoke or smoked cigarettes, please state the average number of packs per day so consumed in each of the following periods from 1940 to the present time:

        (1)    1940-1945;
        (2)    1946-1950;
        (3)    1951-1955;
        (4)    1956-1960;
        (5)    1961-1965;
        (6)    1966-1970;
        (7)    1971-1975;
        (8)    1976-1980;
        (9)    1981-1985
      (10)    1986;
      (11)    1987;
      (12)    1988;
      (13)    1989;
      (14)    1990;
      (15)    1991;
      (16)    1992;
      (17)    1993
      (18)    1994;
      (19)    1995;
      (20)    1996;

(21)    1997;
(22)    1998;
(23)    1999;
(24)    2000; and
(25)    presently.

G.    The brand name for each type of tobacco products used, indicating with respect to each brand the time periods during which it was used by you/your decedent; and whether they were filtered or unfiltered; and

H.    Whether you/your decedent were/was ever advised by any physician or anyone else to stop smoking or using tobacco products. If your answer is yes, identify each physician or other person who gave you/your decedent such advice, the date the advice was given and also state whether you/your decedent followed the advice.

## RESPONSE:

A.    James Jay smoked cigarettes.

B.    Mr. Jay started smoking cigarettes in 1940 and discontinued their use in 1973.

C.    His daily usage was a pack of cigarettes per day.

D.    Mr. Jay had discontinued their use.

E.    See response to Interrogatory No. 22(B).

F.    See response to Interrogatory No. 22(C).

G.    The brand name of cigarettes Mr. Jay smoked is unknown.

H.    Mr. Jay had not been advised to stop smoking.

**INTERROGATORY NO. 23:** Please state whether you/your decedent have filed a claim for any workers' compensation benefits provided by any federal or state law for any injury, and if so, please identify the civil action number or cause number of any such claim and the court, agency, or other administrative body in which any such claim is or was pending.

**RESPONSE:** Plaintiff objects to this interrogatory on the grounds that it is improper, beyond the scope of discovery, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving such objection, Decedant had not filed any such claim.

**INTERROGATORY NO. 24:** As to each employer referred to in your answers to Interrogatories 6, 8 and 10, describe fully any and all physical examinations you/your decedent had in relation to such employment and state whether said examinations were required or were voluntary and whether you/your decedent complied and cooperated fully.

**RESPONSE:**    Not Applicable.

**INTERROGATORY NO. 25:** Please state whether or not you are making a claim for lost wages as a result of your/your decedent's alleged exposure to asbestos, and if so, please state the following:

A.    The period for which loss is claimed;
B.    The amount of claimed lost wages;
C.    The manner of calculation; and
D.    The gross annual wages received for each of the past ten (10) years.

**RESPONSE:** Yes. Plaintiff's response to Interrogatory No. 25 will be supplemented at a later date.

**INTERROGATORY NO. 26:** Please set forth the effective date of your/your decedent's retirement and state whether:

A.    The retirement was voluntary or mandatory;
B.    The reasons for you/your decedent's retirement;

-8-

C.      Any alleged wage loss; and
D.      The dollar amount of any retirement pension received by you/your decedent.

**RESPONSE:** James Jay retired in 1983. His retirement was not voluntary.

**INTERROGATORY NO. 27:** State the average total dollar amount your present monthly household income, regardless of the sources of such income.

**RESPONSE:** Not applicable as Mr. Jay is now deceased.

**INTERROGATORY NO. 28:** Please identify fully any cancer, carcinoma, sarcoma, or mesothelioma and/or other pulmonary disease which any brother, sister or either of your/your decedent's parents or grandparents have ever contracted.

**RESPONSE:** Plaintiff objects to this interrogatory on the grounds that it is over broad and seeks information protected by the medical privilege of individuals who are not parties to this litigation. Without waiving this objection, no such conditions are known at this time.

**INTERROGATORY NO. 29:** With respect to any screening or testing in which you/your decedent may have participated for asbestos related disease, state:

A.      The date(s) of each such testing or screening;
B.      The name and address of each clinic, laboratory or facility at which such testing or screening was performed;
C.      The medical tests or diagnostic method used during each testing or screening (e.g., pulmonary function tests, chest x-ray(s), etc.);
D.      The name of each person which whom you/your decedent had direct contact as a part of each testing or screening (e.g., clerical personnel, technicians, and/or physicians);
E.      How you/your decedent learned of the availability of each testing or screening (e.g., newspaper; radio or television advertising; word or mouth; fliers or pamphlets) and specifically identify the source; and
F.      Whether you/your decedent paid for, or have been billed for such testing or screening services, and the amount of any such payment or billing.

**RESPONSE:** Plaintiff objects to this request on the grounds of relevance and on the basis that it seeks information protected by the attorney client privilege and/or attorney work product doctrine. Without waiving said objection, see response to Interrogatory No. 21.

**INTERROGATORY NO. 30:** Please identify all drugs or other medication used by you/your decedent over the past twenty years in connection with any injury, complaint, or illness, stating as much as you know about the purpose of such drug or other medicine, and identify the health care provider prescribing such medicine.

**RESPONSE:** Plaintiff objects to this interrogatory as overly broad and unduly burdensome. Without waiving said objection, James Jay's medications at the time of his death included: Duragesic, Adolat, Compazine, Coret plus and Tums.

**INTERROGATORY NO. 31:** If you/your decedent have/had ever seen or been treated by a psychiatrist or psychologist for any reason, please identify each such person seen and the date of each visit, the reason you/your decedent saw such person, the diagnosis given by each such person, and state whether you contend any such visits were necessitated by your exposure to asbestos.

**RESPONSE:** As of the time of his death, Mr. Jay had not seen or been treated by a psychiatrist or psychologist for any asbestos-related issues.

**INTERROGATORY NO. 32:** Please identify any and all persons, including experts and lay witnesses, having knowledge of facts relevant to the issues in this lawsuit.

**RESPONSE:** Plaintiff objects to this interrogatory as improper, beyond the scope of discovery, and not calculated to lead to the discovery of admissible evidence. Without waiving said objection, Plaintiff has not yet determined who will be called as expert witnesses at trial. Plaintiff will timely identify expert witnesses in accordance with the Mississippi Rules of Civil Procedure and any applicable pre-trial schedule. Individuals believed to have knowledge of facts relevant to the issues in this lawsuit include Decedant's treating physicians and medical care givers identified previously.

**INTERROGATORY NO. 33:**  Please identify by name, address, and telephone number each and every lay witness you expect to call to testify on your behalf at the trial of this matter, his/her personal or professional relationship to you, and the general topic(s) upon which each such witness is expected to testify (i.e. product identification, work history, medical history, or damages).

**RESPONSE:**  Plaintiff has not yet determined who will be called as a lay witnesses at trial.  Plaintiff will timely identify lay witnesses in accordance with the  Mississippi Rules of Civil Procedure and any applicable pre-trial schedule.

**INTERROGATORY NO. 34:**  Please identify each person whom you expect to call as an expert witness at trial, and for each such witness please give the following:

      A.      The subject matter on which the expert is expected to testify;
      B.      The substance of the facts and opinions to which the expert is expected to testify; and
      C.      A summary of the grounds for each opinion.

**RESPONSE:**  Plaintiff has not yet determined who will be called as expert witnesses at trial.  Plaintiff will timely identify expert witnesses in accordance with the Mississippi Rules of Civil Procedure and any applicable pre-trial schedule.

**INTERROGATORY NO. 35:**  State whether you have filed a lawsuit or other claim in any state or federal court for any personal injury or for any asbestos-related injury, and if so, please identify the civil action number or cause number of any such lawsuit and the court, agency or other administrative body in which such claim is or was pending and the name of the attorney who represented you.

**RESPONSE:**  Plaintiff objects to this interrogatory on the basis that it is improper, beyond the scope of discovery, and not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving said objection, Decadent had not filed any asbestos- related lawsuit prior to his death.

**INTERROGATORY NO. 36:**  State whether you have ever been involved in any other legal action in any state or federal court, including criminal charges against you, and, if so, please state:

      A.      Whether you were a plaintiff or defendant;
      B.      The nature of the claim made by or against you, including the nature of any criminal charge made against you;
      C.      The date and place each such action was filed, giving the name of the court, the name of the other party or parties involved, the number of such action or actions and the names of the attorneys representing each party; and
      D.      The results of each such action, whether there was an appeal and the result of the appeal, and whether such case was reported, the name, volume number and page citation of the report.

Where applicable, also answer the interrogatory and each subpart with respect to your decedent.

**RESPONSE:**  Plaintiff objects to this interrogatory on the basis that it is improper, beyond the scope of discovery, and not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving said objection, other than the instances described in his answer to Interrogatory No. 23 and this litigation, Decadent had not been involved in any other legal actions.

**INTERROGATORY NO. 37:**  If you/your decedent have/had ever filed a claim for disability with the Veterans Administration and/or Social Security Administration, for each such claim state the following:

      A.      The file number or other identifying information for the claim;
      B.      The address of the office where the claim was filed;
      C.      The date of the claim;
      D.      The address of each medical practitioner who tested, treated, or examined you/your decedent in connection with the claim; and
      E.      The disposition of the claim, including the amount and date of any award.

**RESPONSE:**  Plaintiff objects to this interrogatory on the basis that it is overly broad and unduly burdensome.  Without waiving this objection, Plaintiff is in the process of compiling relevant and discoverable information and will supplement this interrogatory answer accordingly.

-10-

**INTERROGATORY NO. 38:**  Please itemize all damages sought by you by dollar amount and describe how you calculated each amount and in addition please:

      A.       Describe in detail the type or nature of each such damage that you claim to have suffered;

      B.       State the value or amount in money that you have associated with respect to each such damage;

      C.       State the factual basis for each such damage;

      D.       Identify all persons having knowledge of such facts; and

      E.       Identify any and all documents that support, relate, or refer to each of your claims for damages.

**RESPONSE:**  Documents supporting damages will be produced at a mutually agreed upon time and place.

**INTERROGATORY NO. 39:**  If any of your alleged exposure to asbestos containing products, or any other product you contend cause or contributed to your alleged injuries, occurred on a government facility and/or as part of a government project, identify such project and separately for each such project:

      A.       List all government specifications, purchase orders, standards, regulations, and contracts which called for or required the acquisition and use of any asbestos containing products; and

      B.       The dates of each such project.

**RESPONSE:**  No such exposure is alleged at this time.

**INTERROGATORY NO. 40:**  State whether you, either directly or through counsel, have at any time made an agreement or reached an understanding (either tentative or final) with any person and/or entity regarding either the ultimate outcome of your claims against any such persons or entities and/or the manner in which these cases, or some of them, will be tried.  Your answer should include but not be limited to: settlement agreements, contingent settlement agreements, partial settlement agreements, releases, covenants not to sue, covenants not to execute, "Mary Carter" agreements, "high/low" agreements, loan receipt agreements, sliding scale agreements, guaranteed verdict agreements and similar agreements or understandings.  Your answer specifically should include agreements or understandings in which you agree to waive claims against any participating person or entity (for example, a claim for punitive damages) or in which any participating person or entity agrees not to raise one or more defenses or not to contest certain elements of alleged liability, or in which the participating parties agreed to minimum and maximum amounts of compensatory liability, or in which the participating parties agree not to disclose the terms of such agreements or understandings.

**RESPONSE:**  Plaintiff objects to this request on the basis that it is overly broad, beyond the scope of discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 41:**  Please set forth all facts upon which you base your contention that the proximate cause of the damages described in your complaint arose out of the breach, by any defendant or defendants, of an oral and/or written, express warranties with respect to each and every allegedly defective product, equipment or machinery, referred to in your complaint and, as to each such breach, please provide the following:

      A.       The description of the warranty (including whether it was written or oral, the source, and the wording);

      B.       The date of the sale of each defendant's product which was allegedly accompanied by these warranties;

      C.       The name and address of the person allegedly furnishing any written and/or oral warranty and each person present when such warranty was furnished;

      D.       The specific nature of the breach (including what any defendant should have done to correct such defects or breaches of warranties);

      E.       How that breach caused the damages described in the complaint;

      F.       The identity of all persons who have knowledge of such alleged defects or breaches of warranty; and

      G.       The identify of all documents which evidence or are relevant to such alleged defects or breaches of warranty.

**RESPONSE:**  Plaintiff objects to this request as being improper as to form and substance and not susceptible of being answered at this stage of the case.  These "contention" interrogatories seek trial strategy and tactical information rather than facts or knowledge, and as such are inappropriate.

**INTERROGATORY NO. 42:** Please specify every fact and circumstance and identify every document which supports your contention that each or any of the defendants have acted negligently with respect to you/your decedent; that each of the defendants may be strictly liable in tort to you/your decedent; that each or any of the defendants produced or sold, applied or installed products which were unreasonably dangerous; that each or any of the defendants fraudulently or negligently concealed the hazards of asbestos exposure and/or aided or abetted such concealment; and that each or any of the defendants are liable to you/your decedent under any theory of liability.

**RESPONSE:** Plaintiff objects to this request as being improper as to form and substance and not susceptible of being answered at this stage of the case. These "contention" interrogatories seek trial strategy and tactical information rather than facts or knowledge, and as such are inappropriate.

**INTERROGATORY NO. 43:** Please state all facts and/or opinions which you rely in alleging that you are entitled to punitive or exemplary damages against each or any defendant, including therein: a detailed description (including dates and places) of all activities, acts or conduct of each defendant, which you allege were intentional, grossly negligent or negligent and should not have been done, justifying the imposition of punitive damages; the names and addresses of each person whom you contend was negligent, grossly negligent, or intentionally acted or failed to act; what you contend should have been done by each defendant; the identify of all persons who have knowledge of the acts, activities, or conduct described by you; and the identify of all the documents which evidence or are relevant to such alleged acts or omissions.

**RESPONSE:** Plaintiff objects to this request as being improper as to form and substance and not susceptible of being answered at this stage of the case. These "contention" interrogatories seek trial strategy and tactical information rather than facts or knowledge, and as such are inappropriate.

**INTERROGATORY NO. 44:** Please identify all photographs, charts, drawings, diagrams, or other graphic representations of documents, including those made by you, that relate to any illness you allege was caused or contributed to by any act or omission of any defendant, or relate to relevant working conditions, products, or other subject matter of this action.

**RESPONSE:** Plaintiff objects to this interrogatory on the basis that it is overly broad, unduly burdensome, and seeks information and materials that are protected by the work product privilege.

**INTERROGATORY NO. 45:** Please identify all prior testimony from any witness, whether expert or lay witness, that relates to your claim for compensatory, punitive or exemplary damages.

**RESPONSE:** Plaintiff objects to this interrogatory on the basis that it is overly broad, unduly burdensome, and seeks information and materials that are protected by the work product privilege. Without waiving the objection, documents and other evidence to support the punitive damages claim will be provided by supplement.

**INTERROGATORY NO. 46:** Please identify all documents (including, but not limited to, medical articles, medical journals, case reports, textbooks, abstracts, or synopses) which define, discuss, or support your position on each of the defendant's "state-of-the-art" defense.

**RESPONSE:** Plaintiff objects to this interrogatory on the basis that it is overly broad, unduly burdensome, and seeks information and materials that are protected by the work product privilege. Further, this interrogatory seeks trial strategy, tactical information, and materials that are the subject of expert testimony rather than facts or knowledge, and as such are inappropriate.

**INTERROGATORY NO. 47:** If any of your/your decedent's employers, co-workers, or union representatives ever suggested or recommend that you/your decedent might or should use any device to reduce your possible exposure to, or inhalation of, asbestos dust or fibers, state, identify or describe:

      A.     The type of product by generic description and/or specific brand/trade name, if known?
      B.     Each such individual by name, title, job site;
      C.     The dates or approximate dates of such recommendations;
      D.     The identity of each person present when such recommendations were made;
      E.     The working content or substance of each such recommendation;
      F.     Whether such recommendation was in writing, and if written, the identity of such writing;
      G.     The nature of all actions or responses, if any, taken by you/your decedent pursuant to each such recommendation;

H.  The identity of persons with knowledge or information relating to your response to this interrogatory.

**RESPONSE:** Plaintiff recalls no such suggestion or recommendation to Decedent at this time.

**INTERROGATORY NO. 48:**  If you/your decedent ever made any complaint about working with asbestos products, or about not having sufficient protective equipment, give the details of such complaint(s), including, when made, to whom made, the nature of such complaints, whether reduced to writing, and the actions, if any, taken as a result of such complaint(s).

**RESPONSE:** Decedent never made any such complaint as he was entirely unaware of the dangers of asbestos during the years that he worked with it.

**INTERROGATORY NO. 49:**  Describe generally the safety precautions taken by you/your decedent to avoid inhaling particles, dust, fumes, and vapors during your/your decedent's employment, including the types of tasks you/your decedent were/was performing and approximate dates you took each precaution described.

**RESPONSE:**  Plaintiff is not aware the Decedent ever took any particular safety precautions to avoid inhaling particles, dust, fumes, and vapors during his employment as he was entirely unaware of the dangers of asbestos during the years that he worked with it.

**INTERROGATORY NO. 50:**  If you allege that any defendant entered into a conspiracy with another defendant, non-defendant, or collectively with the industry at any time from the 1930s to the present to withhold medical and scientific information from workers, consumers, and the general public concerning the health effects of asbestos, or if you allege that any defendant fraudulently concealed any such medical and scientific information, identify and describe with particularity:

A.  Each and every company or organization which you refer to as "the industry" in said allegations;

B.  Each and every document relied upon in proving any such alleged conspiracy or fraudulent concealment;

C.  Each party to such alleged conspiracy or fraudulent concealment;

D.  The specific facts relating to each individual defendant or non-defendant that you claim support your allegations of conspiracy or fraudulent concealment against each defendant identified in response to sub-part "C" of this interrogatory; and

E.  Identify in detail the medical and scientific information which you claim was withheld beginning in the 1930s and state the date or dates on which you claim that the information was withheld, and the identity of which defendant(s) you claim withheld such information.

**RESPONSE:**  Plaintiff objects to this request as being improper as to form and substance and not susceptible of being answered at this stage of the case.  These "contention" interrogatories seek trial strategy and tactical information rather than facts or knowledge, and as such are inappropriate.

**INTERROGATORY NO. 51:**  With respect to each mask, respirator and/or air supplied hood that you/your decedent have/had ever worn, if you contend that you/your decedent sustained injuries or damages, in whole or in part, due to the use of said mask, respirator, and/or air supplied hood, describe in detail:

A.  The brand name, generic description and/or other identifying description of said mask, respirator and/or air supplied hood, including but not limited to, color of product; number and color of straps/bands, if any; and what part of the face was covered;

B.  The type of packaging in which the mask, respirator and/or air supplied hood came;

C.  The name of the defendant which you contend designed, manufactured, sold or distributed each mask, respirator and/or air supplied hood;

D.  Your/your decedent's employer and the specific job site or sites during each which said mask, respirator and/or air supplied hood was used;

E.  The activity being performed while each mask, respirator and/or air supplied hood was being worn;

F.  The inclusive dates of use of each mask, respirator and/or air supplied hood;

G.  All instructions given to you/your decedent by your/your employer or any other person relating to the use of each mask, respirator and/or air supplied hood;

H.  Whether any changes or modifications were made to any mask, respirator and/or air supplied hood used or worn by you/your decedent, by your employer or any other person prior to or subsequent to such devices' use;

-13-

I.      If applicable, the type of filter used in any respiratory protective device worn or used by you, and how often, if ever, the filter was changed;

J.      The age and condition of the mask, respirator, and/or air-supplied hood when used by you/your decedent;

K.      The approximate percentage of time you/your decedent wore each mask, respirator and/or air supplied hood;

L.      The identity of persons with knowledge of your/your decedent's use of any mask, respirator and/or air supplied hood; and

M.      Specifically how you contend that any mask, respirator and/or air supplied hood used or worn by you was defective.

**RESPONSE:** Plaintiff does not know whether Decedent wore masks, respirators, or air supplied hoods in connection with his work.

**INTERROGATORY NO. 52:** Please provide a list of each and every location where you alleged that your were exposed to asbestos from any boiler, pressure vessel, pump, condenser, compressor, turbine, and/or similarly related equipment, and as to each such alleged exposure, please identify:

A.      The specific work site, including name of employer and facility and the location of said equipment;

B.      Specifically state how you contend you were exposed to any asbestos from each piece of said equipment at the specific location noted in sub-paragraph A. above;

C.      State the name of the manufacturer of each piece of said equipment which you maintain caused or created your exposure to asbestos;

D.      State the inclusive dates of each alleged exposure to asbestos from said equipment;

E.      State if you had any actual hands on tasks and/or job functions in erecting, repairing, performing maintenance on, disassembling or dismantling any said equipment at any of the locations noted in answer and/or response to this Interrogatory, and for each piece of said equipment, please identify the location of each piece of said equipment and your job duties and functions on each piece of said equipment;

F.      State the date or dates each piece of said equipment was first placed in service or operation at each job site you noted hereinabove;

G.      State the date or dates you allege that the said equipment was retired from service at each job site;

H.      State the date or dates you maintain that the said equipment was dismantled and/or removed from the premises at each job site noted herein;

I.      Describe the job(s) you were performing when you were allegedly exposed to any asbestos products utilized on said equipment;

J.      If you maintain that you were exposed to asbestos from any piece of said equipment, please state how close you were to each piece of said equipment when you maintain that you were exposed to asbestos-containing products from each piece of said equipment;

K.      Describe the manner in which you maintain and/or allege that each piece of said equipment's asbestos containing material was disturbed so as to emit asbestos fibers to which you were allegedly exposed, and the manner in which the alleged exposure took place;

L.      Identify the type of products to which you were allegedly exposed from each piece of said equipment, including the manufacturer of each product, including the trade name of each such product, how such product was utilized on said equipment, and the manner in which the alleged exposure took place;

M.      State the brand name of the product, product name, or any other identifying description of any asbestos-containing product to which you were allegedly exposed which was originally installed by the manufacturer or contractor on the said equipment erected at each job site at which you worked and responded to affirmatively in response to this Interrogatory; and

N.      State whether you maintain and allege that any of the equipment manufacturers and/or contractors supplied any asbestos-containing products for utilization in the repair, maintenance and service of the said equipment in operation at any of your job sites, and if so, the specific asbestos-containing products, including brand or trade names, and the dates allegedly such products were shipped to your employer.

**RESPONSE:** See Response to Interrogatory Nos. 5 and 6 incorporated herein by reference.

**INTERROGATORY NO. 53:** Do you/your decedent allege any hedonic damages, or damages for loss of enjoyment of life, as a result of due to your/your decedent's alleged exposure to asbestos and/or any asbestos

-14-

containing products? If so, describe the nature of the damage, the value you place for such damages, and the facts, items, or documentation upon which you base this allegation?

**RESPONSE:** Yes. Plaintiff demands full compensation for the loss of enjoyment of life. Due to his asbestos-related illness he was unable to take part in many daily activities. He was unable to enjoy any family or recreational activities, such as any activities, that he enjoyed prior to his illness. Once a very active and healthy man, Mr. Jay was unable to enjoy any physical activities in part because of his shortness of breath. Ultimately, Mr. Jay's asbestos related disease, mesothelioma, caused his death on October 14, 2002

## RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:** All documents which reflect that plaintiff/plaintiff's decedent was employed at any time by any one or more of the defendants.

**RESPONSE:** Plaintiff is not aware of any such documents. Plaintiff will furnish an executed release for Decedent's Social Security records with her response to these Requests.

**REQUEST FOR PRODUCTION NO. 2:** All documents which support plaintiff's allegations that asbestos or asbestos-containing products were produced or sold by any of the defendants and used on any jobsite where the plaintiff claims exposure to any such product.

**RESPONSE:** This request will be supplemented after Plaintiff has had an opportunity to investigate further and review all of the Defendant's individual discovery responses.

**REQUEST FOR PRODUCTION NO. 3:** All documents which support plaintiff's allegations that plaintiff/plaintiff's decedent was exposed to asbestos or asbestos-containing products including, but not limited to, any defendant's products.

**RESPONSE:** This request will be supplemented after Plaintiff has had an opportunity to investigate further and review all of the Defendant's individual discovery responses.

**REQUEST FOR PRODUCTION NO. 4:** All documents which support plaintiff's allegation that plaintiff/plaintiff's decedent worked with, around or in the immediate vicinity of asbestos or asbestos-containing products including, but not limited to, any defendant's products, or that plaintiff/plaintiff's decedent wore any mask, respirator, air supplied hood, or other respiratory protective device in such an environment.

**RESPONSE:** This request will be supplemented after Plaintiff has had an opportunity to investigate further and review all of the Defendant's individual discovery responses. Plaintiff is presently unaware of the existence of any such documents.

**REQUEST FOR PRODUCTION NO. 5:** All documents including, but not limited to, statements, invoices, bills, insurance claims and records of payment for medical examination, treatment, testing or diagnosis that form a part of plaintiff's claim for actual damages in this action.

**RESPONSE:** Defense counsel will be provided an executed authorization form to obtain Defendant's medical bills. Plaintiff will also produce copies of Decedent's bills upon his receipt of same.

**REQUEST FOR PRODUCTION NO. 6:** Resumes of all experts plaintiff expects to call as witnesses at the trial of the action or that were specifically employed or retained in connection with this civil action and are not expected to be called as witnesses.

**RESPONSE:** Plaintiff objects to this request as overly broad and beyond the scope of discovery. Without waiving said objection, resumes of all experts expected to testify at trial will timely be supplemented.

**REQUEST FOR PRODUCTION NO. 7:** All photographs or videotapes of any asbestos or asbestos-containing product to which plaintiff/plaintiff's decedent allegedly was exposed.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Clearly photographs and video tapes of Defendants' products are more readily available to the Defendants than to Plaintiff.

**REQUEST FOR PRODUCTION NO. 8:** All documents reflecting any information regarding plaintiff's/plaintiff's decedent's work history, including names of employers, names of co-workers, dates of employment, places of employment, and/or job description.

**RESPONSE:** Documents responsive to this request will be produced at a time and place mutually agreed upon between the parties.

**REQUEST FOR PRODUCTION NO. 9:** All documents containing information regarding any examination, diagnosis, treatment or prognosis of any physical condition of plaintiff/plaintiff's decedent, prepared by every doctor or hospital which has ever been connected with the examination or treatment of plaintiff for any type of condition, illness, sickness, injury or disease, including, but not limited to, any condition allegedly caused or contributed to by any asbestos or asbestos-containing products.

**RESPONSE:** Defense counsel will be provided an executed authorization form to obtain Defendant's medical records.

**REQUEST FOR PRODUCTION NO. 10:** All documents which support plaintiff's contention that plaintiff/plaintiff's decedent has been or was disabled as a result of any condition allegedly caused or contributed to by any of the defendants.

**RESPONSE:** Defense counsel will be provided an executed authorization form to obtain Decedent's medical records.

**REQUEST FOR PRODUCTION NO. 11:** All statements prepared by or on behalf of the plaintiff/plaintiff's decedent for any insurance company, investigator, governmental employee, or employer concerning the subject matter of this litigation.

**RESPONSE:** Plaintiff objects to this request as seeking information and materials protected by attorney-client privilege and the work product privilege. Without waiving said objection, Plaintiff is unaware of the existence of any such statements.

**REQUEST FOR PRODUCTION NO. 12:** All documents that reflect any claim for disability, injury or physical condition arising out of plaintiff's/plaintiff's decedent's military service.

**RESPONSE:** Not applicable.

**REQUEST FOR PRODUCTION NO. 13:** All medical questionnaires or forms completed by plaintiff/plaintiff's decedent for any employer.

**RESPONSE:** Plaintiff is unaware of the existence of any such questionnaires.

**REQUEST FOR PRODUCTION NO. 14:** All documents provided plaintiff by any labor union or organization that included information about asbestosis or any other asbestos-related condition.

**RESPONSE:** None.

**REQUEST FOR PRODUCTION NO. 15:** All packaging materials and/or photographs, videotapes, and/or slides of packaging materials the plaintiff alleges were used in packaging asbestos products to which plaintiff/plaintiff's decedent allegedly was exposed.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Clearly all such materials are more readily available to the Defendants. Without waiving said objection, Plaintiff is not aware of any such materials at this time.

**REQUEST FOR PRODUCTION NO. 16:** All documents that include any advice or recommendation of techniques, methods or equipment which would serve to reduce or guard against the allegedly harmful exposure to asbestos.

**RESPONSE:** Plaintiff is not aware of any such materials at this time.

**REQUEST FOR PRODUCTION NO. 17:** All documents completed by plaintiff/plaintiff's decedent for any insurance company that requested information regarding plaintiff's/plaintiff's decedent's medical history.

**RESPONSE:** Plaintiff objects to this request as it is overly broad, beyond the scope of discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 18:** All documents that relate to plaintiff's claim for lost wages, income, profits or earnings or for future lost wages, income, profits, or earnings.

**RESPONSE:** The response to Request No. 18 will be supplemented at a later date.

**REQUEST FOR PRODUCTION NO. 19:** Plaintiff's/plaintiff's decedent's federal and state income tax returns for each of the past ten years or for the five (5) years prior to date of death, if applicable.

**RESPONSE:** Defense counsel will be provided an executed authorization form to obtain Decedent's federal and state tax records.

**REQUEST FOR PRODUCTION NO. 20:** Plaintiff's/plaintiff's decedent's Social Security Administration printout and work record.

**RESPONSE:** Defense counsel will be provided an executed authorization form to obtain Decedent's Social Security records.

**REQUEST FOR PRODUCTION NO. 21:** To the extent not requested herein, all documents which plaintiff identified in his/her responses to Defendants' Master Set of Interrogatories.

**RESPONSE:** Plaintiff will produce all relevant documentation responsive to this request that is not protected by privilege.

**REQUEST FOR PRODUCTION NO. 22:** Any and all documents filed with Manville Personal Injury Settlement Trust which relate in any manner to any claim for damages of any kind allegedly caused by plaintiff's/plaintiff's decedent's exposure to asbestos products manufactured by Johns-Manville Corporation.

**RESPONSE:** Plaintiff objects to this request as overly broad, beyond the scope of discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 23:** For each plaintiff's original, fully executed authorizations in the form attached to allow defendants to obtain social security records; workers' compensation records; military records; tax records; medical and medical history records; payroll pension and personnel records; union records; and veteran association records.

**RESPONSE:** Plaintiff will provide the following executed authorizations:

A.   Authorization for Medical and Hospital Records and Reports.
B.   IRS Form 4506 – Request for Copy of Transcript of Tax Forms.
C.   NARA Form 180 – Request Pertaining to Military Records.
D.   Authorization for Release of Payroll and Personnel Records.
E.   Form SSA-7050-F4 – Request for Social Security Earnings Information.
F.   Request for Copy of State Tax Form or Individual Income Tax Account Information.
G.   VA Form 10-5345.
H.   Authorization for Release of Workman's Compensation Records.

**REQUEST FOR PRODUCTION NO. 24:** All documents received by you, or generated in connection with, any screening or testing for asbestos related disease, including: appointment forms or letters; questionnaires: work, exposure or medical history forms; correspondence; pulmonary function test results; x-ray reports; diagnostic reports; billing or payment records, and contracts between any attorney(ies) and the testing entities.

**RESPONSE:** Plaintiff objects to this request on the basis that it seek documentation that is privileged or protected by the attorney work product doctrine. To the extent that this request seeks information that is not privileged or protected by the attorney work product doctrine, those documents will be produced at a time and place mutually agreed upon between the parties.

**REQUEST FOR PRODUCTION NO. 25:** All plant or job site industrial hygiene and/or safety records in your possession, custody or control concerning dusts and/or asbestos (e.g., air sampling data, MSDS, bulk sampling records, OSHA records, NIOSH studies, state health department records, etc.).

**RESPONSE:** Plaintiff is unaware of any such materials at this time.

**REQUEST FOR PRODUCTION NO. 26:** Any and all documents generates by any physician which indicate, refer to, relate, or evidence the physician's opinion that exposure to any product, substance, or agent, caused or contributed to the your or your decedent's injury, disease, illness, or death that is the basis of this lawsuit.

**RESPONSE:** Defense counsel will be provided an executed authorization form to obtain Decedant's medical records.

**REQUEST FOR PRODUCTION NO. 27:** Any and all x-rays, CAT scans, MRIs, NMRs, PETs, or other non-invasive imaging diagnostic pictures taken and utilized in diagnosing an asbestos-related disease or condition and identified in your Answers to the Defendants' Interrogatories.

**RESPONSE:** Defense counsel will be provided an executed authorization form to obtain Decedant's medical records.

**REQUEST FOR PRODUCTION NO. 28:** Any and all pathology slides, tissue blocks, tissue specimens, or autopsy specimens identified in your Answers to the Defendants' Interrogatories.

**RESPONSE:** Defense counsel will be provided an executed authorization form to obtain Decedant's medical records.

**REQUEST FOR PRODUCTION NO. 29:** Any and all written reports prepared by an expert who expect to testify on your behalf at the trial of this matter.

**RESPONSE:** Plaintiff objects to this request as it is overly broad and beyond the scope of discovery. Plaintiff has not yet determined who will be called as expert witnesses at trial. Plaintiff will timely identify expert witnesses and provide expert reports in accordance with the Mississippi Rules of Civil Procedure and any applicable pre-trial schedule.

**REQUEST FOR PRODUCTION NO. 30:** All documents submitted for review by any expert who expect to testify on your behalf at the trial of this matter.

**RESPONSE:** Plaintiff objects to this request as it is overly broad and beyond the scope of discovery. Plaintiff has not yet determined who will be called as expert witnesses at trial. Plaintiff will timely identify expert witnesses and provide expert reports in accordance with the Mississippi Rules of Civil Procedure and any applicable pre-trial schedule.

**REQUEST FOR PRODUCTION NO. 31:** All documents you intend to attempt to introduce into evidence at trial.

**RESPONSE:** Plaintiff objects to this request as it is beyond the scope of discovery and seeks materials protected by the work product doctrine. Without waiving this objection, Plaintiff has not yet decided what documentary evidence she will use at trial. This response will be timely supplemented in accordance with the Mississippi Rules of Civil Procedure and any applicable pre-trial order.

**REQUEST FOR PRODUCTION NO. 32:** Any and all demonstrative evidence you intend to attempt to introduce into evidence at trial.

**RESPONSE:** Plaintiff objects to this request as it is beyond the scope of discovery and seeks materials protected by the work product doctrine. Without waiving this objection, Plaintiff has not yet decided what demonstrative evidence she will use at trial. This response will be timely supplemented in accordance with the Mississippi Rules of Civil Procedure and any applicable pre-trial order.

**REQUEST FOR PRODUCTION NO. 33:** Any and all Complaints, claim letters, and other documents regarding or relating to any claim made by you/your decedent, other than the instant lawsuit, in any other court or any administrative body seeking compensation or benefits for any asbestos-related disease or injury.

**RESPONSE:**  Plaintiff objects to this request as overly broad, beyond the scope of discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 34:** Any and all releases, settlement agreements, letter agreements and other documents relating to or containing information of any settlement with any other person or entity of any claim or lawsuit for an asbestos-related injury or disease asserted by you/your decedent.

**RESPONSE:**  Plaintiff objects to this request as overly broad, beyond the scope of discovery, and not reasonably calculated to lead to the discovery of admissible evidence.  Further, this request seeks information protected by confidentiality agreements entered into by the respective parties.

DATED, this 5th day of April, 2004.

Respectfully submitted,

_____

Louis H. Watson, Jr. (MB #9053)
C. Maison Heidelberg (MB #9559)

ATTORNEYS FOR PLAINTIFFS

OF COUNSEL:

WATSON & HEIDELBERG, P.A.
520 East Capitol Street
Jackson, MS 39201
Telephone:     601/968-0000
Facsimile:     601/968-0010

S:\ASBESTOS\JAY, JR\PLEADINGS\RESPONSES To Master Set of Discovery -- Hockley 040804.wpd

-19-

## CERTIFICATE OF SERVICE

I, LOUIS H. WATSON, JR., certify that I have this day served a true and correct copy of the above and foregoing document Plaintiff Janet Hockley's, as personal representative of the Estate of James W. Jay, JR.'s Responses To Defendants' Master Set Of Interrogatories And Request For Production Of Documents to Plaintiffs, to the registered agent of all Defendants at the time of service of the Summons and the Complaint.

THIS, the 5th day of April, 2004.

LOUIS H. WATSON, JR.

I, JANET HOCKLEY, DO SOLEMNLY DECLARE AND AFFIRM, under the penalties of perjury, that the contents of the foregoing Answers to Interrogatories are true and correct to the best of my knowledge, information and belief.

_Janet Hockley_

JANET HOCKLEY                                    DATE
(As the personal representative of
 James W. Jay, deceased)

## EXCEPT PSYCHOTHERAPY NOTES

**Name:**

**Date of birth:**

**Social Security Number:**

    I hereby authorize all health care providers, physicians, hospitals, clinics and institutions, medical facilities, mental health clinics, mental health hospitals, pharmacies, educational facilities, former and present employers, and Social Security Administration Disability Determination Services, The Internal Revenue Service and Department of Workers' Claims, to release all existing medical records and information regarding
_____ medical care, treatment, physical/mental condition, and medical expenses revealed by your observation or treatment of the past, present and future, as well as all educational and employment records to the records service of
_____.

    I understand that this authorization includes information regarding the diagnosis and treatment of drug, alcohol, Acquired Immune Deficiency Syndrome (AIDS), and psychiatric and psychological disorders [*EXCEPT Psychotherapy Notes\* as defined by the Health Insurance Portability and Accountability Act 45 CFR 164.501, psychotherapy notes means notes recorded (in any medium) by a health care provider who is a mental health professional documenting or analyzing the contents of conversation during a private counseling session or a group, joint, or family counseling session and that are separated from the rest of the individual's record.* Psychotherapy notes require a separate authorization.] This authorization also includes, without limitation, original x-ray films and reports, laboratory reports, original CT scan films and reports, original MRI scan films and reports, EEGs, EKGs, sonograms, arteriograms, fetal monitor strips, discharge summaries, photographs, surgery consent forms, inform consent forms regarding family planning, admission and discharge records, operation records, doctor and nurses notes, prescriptions, medical bills, invoices, histories, diagnoses, psychiatric treatment and counseling records, psychological treatment and counseling records, narratives, and any correspondence/memoranda and billing information. It also includes, to the extent such records currently exist and are in your possession, insurance records, including Medicare/Medicaid and other public assistance claims, applications, statements, eligibility material, claims or claim disputes, resolutions and payments, medical records provided as evidence of services provided, and any other document or things pertaining to services furnished under Title XVII of the Social Security Act or other forms of public assistance (federal, state, local, etc). It also includes my complete employment personnel file, including attendance reports, performance reports, W-4 forms, W-2 forms, medical reports and/or any and all other records relating to my employment, past and present, and all educational records, including courses taken, degrees obtained, and attendance records. This listing is not meant to be exhaustive. Ex parte communications with physicians are not permitted pursuant to this Authorization.

the undersigned individual am on notice that:

- Initiating this request for disclosure of protected health information, and any disclosure of the same pursuant hereto is at the request of the undersigned individual.
- Any of the above authorized entities disclosing the above requested information may not condition treatment, payment, enrollment or eligibility for benefits on whether the individual signs this authorization.
- This authorization can be revoked by the undersigned individual through written notice to_____, or to the individual above listed entities, except to the extent that action has been taken in reliance on this authorization. The undersigned is aware of the potential that protected health information disclosed pursuant to this authorization is subject to re-disclosure in a manner that will not be protected by HIPAA regulations.
- A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization will remain in effect until settlement or final disposition of _____ vs. _____ or five (5) years from the date of this authorization, whichever comes later.

he undersigned hereby stipulates that this authorization is in compliance with the Health Insurance Portability and ccountability Act ("HIPAA") 45 CFR Parts 160 and 164.

ave carefully read and understand the above, and do herein expressly and voluntarily authorize the disclosure of the above information about, or edical records of, my condition to those persons or agencies listed above.

te: _____     _Jennet Hackley_
                                 (Signature) Individual or Individual's Representative

inted Name of Individual's Representative          Relationship to Individual

scription of Representative's Authority to Act for the Individual

*sychotherapy notes excludes medication prescription and monitoring, counseling session start and stop times, the modalities and quencies of treatment furnished, results of clinical tests, and any summary of the following items: diagnosis, functional status, atment plan, symptoms, prognosis, and progress date.*

## AUTHORIZATION FOR RELEASE OF PSYCHOTHERAPY NOTES

**Name:**

**Date of birth:**

**Social Security Number:**

 I hereby authorize all health care providers, physicians, hospitals, clinics and institutions, medical facilities, mental health clinics, mental health hospitals, pharmacies, Social Security Administration Disability Determination Services and Department of Workers' Claims, to release all psychotherapy note records and information regarding _____, to the records service of
_____.

 I understand that this authorization is for release of psychotherapy notes as defined by the Health Insurance Portability and Accountability Act 45 CFR 164.501 *[psychotherapy notes means notes recorded (in any medium) by a health care provider who is a mental health professional documenting or analyzing the contents of conversation during a private counseling session or a group, joint, or family counseling session and that are separated from the rest of the individual's record].*

I, the undersigned individual am on notice that:

- Initiating this request for disclosure of protected health information, and any disclosure of the same pursuant hereto is at the request of the undersigned individual.
- Any of the above authorized entities disclosing the above requested information may not condition treatment, payment, enrollment or eligibility for benefits on whether the individual signs this authorization.
- This authorization can be revoked by the undersigned individual through written notice to
_____, or to the individual above listed entities, except to the extent that action has been taken in reliance on this authorization. The undersigned is aware of the potential that protected health information disclosed pursuant to this authorization is subject to re-disclosure in a manner that will not be protected by HIPAA regulations.
- A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization will remain in effect until settlement or final disposition of _____ vs. _____ or five (5) years from the date of this authorization, whichever comes later.

The undersigned hereby stipulates that this authorization is in compliance with the Health Insurance Portability and Accountability Act ("HIPAA") 45 CFR Parts 160 and 164.

I have carefully read and understand the above, and do herein expressly and voluntarily authorize the disclosure of the above information about, or medical records of, my condition to those persons or agencies listed above.

Date: _____   _____
                    (Signature) Individual or Individual's Representative

_____  _____
Printed Name of Individual's Representative   Relationship to Individual

_____
Description of Representative's Authority to Act for the Individual

*Psychotherapy notes excludes medication prescription and monitoring, counseling session start and stop times, the modalities and frequencies of treatment furnished, results of clinical tests, and any summary of the following items: diagnosis, functional status, the treatment plan, symptoms, prognosis, and progress date.*

JACKSON 734983v6

**JWJ–00002**

Form **4506**
(Rev. May 1997)

Department of the Treasury
Internal Revenue Service

# Request for Copy or Transcript of Tax Form

► Read instructions before completing this form.

► Type or print clearly. Request may be rejected if the form is incomplete or illegible.

OMB No. 1545-0429

**Note:** *Do not use this form to get tax account information. Instead, see instructions below.*

| | |
|---|---|
| 1a  Name shown on tax form. If a joint return, enter the name shown first. | 1b  First social security number on tax form or employer identification number (see instructions) |
| 2a  If a joint return, spouse's name shown on tax form | 2b  Second social security number on tax form |

3  Current name, address (including apt., room, or suite no.), city, state, and ZIP code

4  Address, (including apt., room, or suite no.), city, state, and ZIP code shown on the last return filed if different from line 3

5  If copy of form or a tax return transcript is to be mailed to someone else, enter the third party's name and address

6  If we cannot find a record of your tax form and you want the payment refunded to the third party, check here    . . . . . . ►  ☐

7  If name in third party's records differs from line 1a above, enter that name here (see instructions) ►

8  Check only one box to show what you want. There is **no charge** for items 8a, b, and c:

a  ☐  Tax return transcript of Form 1040 series filed during the **current calendar year and the 3 prior calendar years** (see instructions).

b  ☐  Verification of nonfiling.

c  ☐  Form(s) W-2 information (see instructions).

d  ☐  Copy of tax form and all attachments (including Form(s) W-2, schedules, or other forms). **The charge is $23 for each period requested.**
Note: *If these copies must be certified for court or administrative proceedings, see instructions and check here* . . . . . ►  ☐

9  If this request is to meet a requirement of one of the following, check all boxes that apply.
☐  Small Business Administration     ☐  Department of Education     ☐  Department of Veterans Affairs     ☐  Financial institution

10  Tax form number (Form 1040, 1040A, 941, etc.)

11  Tax period(s) (year or period ended date). If more than four, see instructions.

| | |
|---|---|

12  Complete only if **line 8d** is checked. Amount due:

a  Cost for each period    . . . . . . .    $  23.00

b  Number of tax periods requested on line 11    $

c  Total cost. Multiply line 12a by line 12b    $

*Full payment must accompany your request. Make check or money order payable to "Internal Revenue Service."*

**Caution:** *Before signing, make sure all items are complete and the form is dated.*

I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. I am aware that based upon this form, the IRS will release the tax information requested to any party shown on line 5. The IRS has no control over what that party does with the information.

**Please Sign Here**

► *Janet Shipler*
Signature. See instructions. If other than taxpayer, attach authorization document.        Date

Title (if line 1a above is a corporation, partnership, estate, or trust)

Spouse's signature        Date

Telephone number of requester
(    )

Best time to call

**TRY A TAX RETURN TRANSCRIPT** (see line 8a instructions)

# Instructions

*Section references are to the Internal Revenue Code.*

TIP: If you had your tax form filled in by a paid preparer, check first to see if you can get a copy from the preparer. This may save you both time and money.

Purpose of Form.—Use Form 4506 to get a tax return transcript, verification that you did not file a Federal tax return, Form W-2 information, or a copy of a tax form. Allow 6 weeks after you file a tax form before you request a copy of it or a transcript. For W-2

information, wait 13 months after the end of the year in which the wages were earned. For example, wait until Feb. 1999 to request W-2 information for wages earned in 1997.

Do not use this form to request Forms 1099 or tax account information. See this page for details on how to get these items.
Note: *Form 4506 must be received by the IRS within 60 calendar days after the date you signed and dated the request.*

How Long Will It Take?—You can get a tax return transcript or verification of nonfiling within 7 to 10 workdays after the IRS receives your request. It can take up to 60 calendar

days to get a copy of a tax form or W-2 information. To avoid any delay, be sure to furnish all the information asked for on Form 4506.

Forms 1099.—If you need a copy of a Form 1099, contact the payer. If the payer cannot help you, call or visit the IRS to get Form 1099 information.

Tax Account Information.—If you need a statement of your tax account showing any later changes that you or the IRS made to the original return, request tax account information. Tax account information lists

*(Continued on back)*

For Privacy Act and Paperwork Reduction Act Notice, see back of form.        Cat. No. 41721E

JWJ–00003

certain items from your return, including any later changes.

To request tax account information, write or visit an IRS office or call the IRS at the number listed in your telephone directory.

If you want your tax account information sent to a third party, complete Form 8821, Tax Information Authorization. You may get this form by phone (call 1-800-829-3676) or on the Internet (at http://www.irs.ustreas.gov).

**Line 1b.**—Enter your employer identification number (EIN) only if you are requesting a copy of a business tax form. Otherwise, enter the first social security number (SSN) shown on the tax form.

**Line 2b.**—If requesting a copy or transcript of a joint tax form, enter the second SSN shown on the tax form.

**Note:** *If you do not complete line 1b and, if applicable, line 2b, there may be a delay in processing your request.*

**Line 5.**—If you want someone else to receive the tax form or tax return transcript (such as a CPA, an enrolled agent, a scholarship board, or a mortgage lender), enter the name and address of the individual. If we cannot find a record of your tax form, we will notify the third party directly that we cannot fill the request.

**Line 7.**—Enter the name of the client, student, or applicant if it is different from the name shown on line 1a. For example, the name on line 1a may be the parent of a student applying for financial aid. In this case, you would enter the student's name on line 7 so the scholarship board can associate the tax form or tax return transcript with their file.

**Line 8a.**—If you want a tax return transcript, check this box. Also, on line 10 enter the tax form number and on line 11 enter the tax period for which you want the transcript.

A tax return transcript is available only for returns in the 1040 series (Form 1040, Form 1040A, 1040EZ, etc.). It shows most line items from the original return, including accompanying forms and schedules. In many cases, a transcript will meet the requirement of any lending institution such as a financial institution, the Department of Education, or the Small Business Administration. It may also be used to verify that you did not claim any itemized deductions for a residence.

**Note:** *A tax return transcript does not reflect any changes you or the IRS made to the original return. If you want a statement of your tax account with the changes, see Tax Account Information on page 1.*

**Line 8b.**—Check this box only if you want proof from the IRS that you did not file a return for the year. Also, on line 11 enter the tax period for which you want verification of nonfiling.

**Line 8c.**—If you want only Form(s) W-2 information, check this box. Also, on line 10 enter "Form(s) W-2 only" and on line 11 enter the tax period for which you want the information.

You may receive a copy of your actual Form W-2 or a transcript of the information, depending on how your employer filed the form. However, state withholding information not shown on a transcript. If you have filed your tax return for the year the wages were earned, you can get a copy of the actual Form W-2 by requesting a complete copy of your return and paying the required fee.

Contact your employer if you have lost your current year's Form W-2 or have not received it by the time you are ready to prepare your

**Note:** *If you are requesting information about your spouse's Form W-2, your spouse must sign Form 4506.*

**Line 8d.**—If you want a certified copy of a tax form for court or administrative proceedings, check the box to the right of line 8d. It will take at least 60 days to process your request.

**Line 11.**—Enter the year(s) of the tax form or tax return transcript you want. For fiscal-year filers or requests for quarterly tax forms, enter the date the period ended; for example, 3/31/96, 6/30/96, etc. If you need more than four different tax periods, use additional Forms 4506. Tax forms filed 6 or more years ago may not be available for making copies. However, tax account information is generally still available for these periods.

**Line 12c.**—Write your SSN or EIN and "Form 4506 Request" on your check or money order. If we cannot fill your request, we will refund your payment.

**Signature.**—Requests for copies of tax forms or tax return transcripts to be sent to a third party must be signed by the person whose name is shown on line 1a or by a person authorized to receive the requested information.

Copies of tax forms or tax return transcripts for a jointly filed return may be furnished to either the husband or the wife. Only one signature is required. However, see the line 8c instructions. Sign Form 4506 exactly as your name appeared on the original tax form. If you changed your name, also sign your current name.

For a corporation, the signature of the president of the corporation, or any principal officer and the secretary, or the principal officer and another officer are generally required. For more details on who may obtain tax information on corporations, partnerships, estates, and trusts, see section 6103.

If you are not the taxpayer shown on line 1a, you must attach your authorization to receive a copy of the requested tax form or tax return transcript. You may attach a copy of the authorization document if the original has already been filed with the IRS. This will generally be a power of attorney (Form 2848), or other authorization, such as Form 8821, or evidence of entitlement (for Title 11 Bankruptcy or Receivership Proceedings). If the taxpayer is deceased, you must send Letters Testamentary or other evidence to establish that you are authorized to act for the taxpayer's estate.

**Where To File.**—Mail Form 4506 with the correct total payment attached, if required, to the **Internal Revenue Service Center** for the place where you lived when the requested tax form was filed.

**Note:** *You must use a separate form for each service center from which you are requesting a copy of your tax form or tax return transcript.*

| If you lived in: | Use this address: |
|---|---|
| New Jersey, New York (New York City and counties of Nassau, Rockland, Suffolk, and Westchester) | 1040 Waverly Ave. Photocopy Unit Stop 532 Holtsville, NY 11742 |
| New York (all other counties), Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, Vermont | 310 Lowell St. Photocopy Unit Stop 679 Andover, MA 01810 |
| Florida, Georgia, South Carolina | 4800 Buford Hwy. Photocopy Unit Stop 91 Doraville, GA 30362 |

| | |
|---|---|
| Indiana, Kentucky, Michigan, Ohio, West Virginia | P.O. Box 145500 Photocopy Unit Stop 521 Cincinnati, OH 45250 |
| Kansas, New Mexico, Oklahoma, Texas | 3651 South Interregional Hwy. Photocopy Unit Stop 6716 Austin, TX 73301 |
| Alaska, Arizona, California (counties of Alpine, Amador, Butte, Calaveras, Colusa, Contra Costa, Del Norte, El Dorado, Glenn, Humboldt, Lake, Lassen, Marin, Mendocino, Modoc, Napa, Nevada, Placer, Plumas, Sacramento, San Joaquin, Shasta, Sierra, Siskiyou, Solano, Sonoma, Sutter, Tehama, Trinity, Yolo, and Yuba), Colorado, Idaho, Montana, Nebraska, Nevada, North Dakota, Oregon, South Dakota, Utah, Washington, Wyoming | P.O. Box 9941 Photocopy Unit Stop 6734 Ogden, UT 84409 |
| California (all other counties), Hawaii | 5045 E. Butler Avenue Photocopy Unit Stop 52180 Fresno, CA 93888 |
| Illinois, Iowa, Minnesota, Missouri, Wisconsin | 2306 E. Bannister Road Photocopy Unit Stop 6700, Annex 1 Kansas City, MO 64999 |
| Alabama, Arkansas, Louisiana, Mississippi, North Carolina, Tennessee | P.O. Box 30309 Photocopy Unit Stop 44 Memphis, TN 38130 |
| Delaware, District of Columbia, Maryland, Pennsylvania, Virginia, a foreign country, or A.P.O. or F.P.O address | 11601 Roosevelt Blvd. Photocopy Unit DP 536 Philadelphia, PA 19255 |

**Privacy Act and Paperwork Reduction Act Notice.**—We ask for the information on this form to establish your right to gain access to your tax form or transcript under the Internal Revenue Code, including sections 6103 and 6109. We need it to gain access to your tax form or transcript in our files and properly respond to your request. If you do not furnish the information, we will not be able to fill your request. We may give the information to the Department of Justice or other appropriate law enforcement official, as provided by law.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file this form will vary depending on individual circumstances. The estimated average time is: **Recordkeeping, 13 min.; Learning about the law or the form, 7 min.; Preparing the form, 26 min.; and Copying, assembling, and sending the form to the IRS, 17 min.**

If you have comments concerning the accuracy of these time estimates or suggestions for making this form simpler, we would be happy to hear from you. You can write to the Tax Forms Committee, Western Area Distribution Center, Rancho Cordova, CA 95743-0001. DO NOT send the form to this address. Instead, see Where To File on this page.

JWJ—00004

Prescribed by NARA (36 CFR 1228.162(a))

REQUEST PERTAINING
TO MILITARY RECORDS

OMB No. 3095-0029 Expires 7/31/2003

Please thoroughly review the instructions on the back of this form. Please print clearly or type. If you need more space, use plain paper.

## SECTION I - INFORMATION NEEDED TO LOCATE RECORDS (Furnish as much as possible.)

| 1. NAME USED DURING SERVICE (Last, first, middle) | 2. SOCIAL SECURITY NO. | 3. DATE OF BIRTH | 4. PLACE OF BIRTH |
|---|---|---|---|
| | | | |

5. SERVICE, PAST AND PRESENT   (For an effective records search, it is important that ALL service be shown below.)

| | BRANCH OF SERVICE | DATES OF SERVICE | | CHECK ONE | | SERVICE NUMBER DURING THIS PERIOD (If unknown, please write unknown) |
|---|---|---|---|---|---|---|
| | | DATE ENTERED | DATE RELEASED | OFFICER | ENLISTED | |
| a. ACTIVE SERVICE | | | | | | |
| b. RESERVE SERVICE | | | | | | |
| c. NATIONAL GUARD | | | | | | |

6. IS THIS PERSON DECEASED? If "YES" enter the date of death.  ☐ NO  ☐ YES

7. IS (WAS) THIS PERSON RETIRED FROM MILITARY SERVICE?  ☐ YES  ☐ NO

## SECTION II - INFORMATION AND/OR DOCUMENTS REQUESTED

1. REPORT OF SEPARATION (DD Form 214 or equivalent) This contains information normally needed to verify military service. A copy may be sent to the veteran, the deceased veteran's next of kin, or other persons or organizations if authorized in Section III, below. NOTE: If more than one period of service was performed, even in the same branch, there may be more than one Report of Separation. Be sure to show EACH year that a Report of Separation was issued, for which you need a copy.

☐ An UNDELETED Report of Separation is requested for the year(s)
This normally will be a copy of the full separation document including such sensitive items as the character of separation, authority for separation, reason for separation, reenlistment eligibility code, separation (SPD/SPN) code, and dates of time lost. An undeleted version is ordinarily required to determine eligibility for benefits.

☐ A DELETED Report of Separation is requested for the year(s)
The following information will be deleted from the copy sent: authority for separation, reason for separation, reenlistment eligibility code, separation (SPD/SPN) code, and for separations after June 30, 1979, character of separation and dates of time lost.

2. OTHER INFORMATION AND/OR DOCUMENTS REQUESTED

3. PURPOSE (OPTIONAL--An explanation of the purpose of the request is strictly voluntary. Such information may help the agency answering this request to provide the best possible response and will in no way be used to make a decision to deny the request.)

## SECTION III - RETURN ADDRESS AND SIGNATURE

1. REQUESTER IS

☐ Military service member or veteran identified in Section I, above

☐ Next of kin of deceased veteran _____ (relation)

☐ Legal guardian (must submit copy of court appointment)

☐ Other (specify)

2. SEND INFORMATION/DOCUMENTS TO (Please print or type. See instruction 3, below.)

Name _____
Street _____
City _____

3. AUTHORIZATION SIGNATURE REQUIRED (See instruction 2, below.) I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the information in this Section III is true and correct.

Signature of requester (Please do not print.)

Date of this request _____  Daytime phone ( )

E-mail address

**This form is available at http://www.nara.gov/regional/mprs/180.html on the National Archives and Records Administration Web Site**

# INSTRUCTIONS

*Please detach this portion before submitting request.*

1. Information needed to locate records. Certain identifying information is necessary to determine the location of an individual's record of military service. Please try to answer each item on this form. If you do not have and cannot obtain the information for an item, show "NA," meaning the information is "not available." Include as much of the requested information as you can.

2. Restrictions on release of information. Release of information is subject to restrictions imposed by the military services consistent with Department of Defense regulations and the provisions of the Freedom of Information Act (FOIA) and the Privacy Act of 1974. The service member (either past or present) or the member's legal guardian has access to almost any information contained in that member's own record. Others requesting information from military personnel/health records must have the release authorization in Section III of this form signed by the member or legal guardian, but if the appropriate signature cannot be obtained, only limited types of information can be provided. If the former member is deceased, surviving next of kin may, under certain circumstances, be entitled to greater access to a deceased veteran's records than a member of the public. The next of kin may be any of the following: unremarried surviving spouse, father, mother, son, daughter, sister, or brother. Employers and others needing proof of military service are expected to accept the information shown on documents issued by the military service department at the time a service member is separated.

3. Where reply may be sent. The reply may be sent to the member or any other address designated by the member or other authorized requester.

4. Charges for service. There is no charge for most services provided to members or their surviving next of kin. A nominal fee is charged for certain types of service. In most instances service fees cannot be determined in advance. If your request involves a service fee, you will be notified as soon as that determination is made.

SEE REVERSE FOR PRIVACY ACT AND PUBLIC BURDEN STATEMENTS

JWJ-00005

- The various categories of military service records are described in the chart below. For each category there is a code number which indicates the address at the bottom of the page to which this request should be sent.

1. **Health and personnel records.** In most cases involving individuals no longer on active duty, the personnel record, the health record, or both can be obtained from the same location, as shown on the chart. However, some health records are available from the Department of Veterans Affairs (VA) Records Management Center (Code 11). A request for a copy of the health record should be sent to Code 11 if the person was discharged, retired, or released from active duty (separated) on or after the following dates: ARMY--October 16, 1992; NAVY--January 31, 1994; AIR FORCE and MARINE CORPS--May 1, 1994; COAST GUARD--April 1, 1998. Health records of persons on active duty are generally kept at the local servicing clinic, and usually are available from Code 11 a week or two after the last day of active duty.

2. **Records at the National Personnel Records Center.** Note that it takes at least three months, and often six or seven, for the file to reach the National Personnel Records Center (Code 14) in St. Louis after the military obligation has ended (such as by discharge). If only a short time has passed, please send the inquiry to the address shown for active or current reserve members. Also, if the person has only been released from active duty but is still in a reserve status, the personnel record will stay at the location specified for reservists. A person can retain a reserve obligation for several years, even without attending meetings or receiving annual training.

3. **Definitions and abbreviations.** DISCHARGED--the individual has no current military status; HEALTH--Records of physical examinations, dental treatment, and outpatient medical treatment received while in a duty status (does not include records of treatment while hospitalized); TDRL--Temporary Disability Retired List.

4. **Service completed before World War I.** The oldest records pertaining to military service veterans are at the National Archives, for service that was completed before the following dates: ARMY--enlisted, 1/1/1912, officer, 7/1/1917; NAVY--enlisted, 1/1/1886, officer, 1/1/1903; MARINE CORPS--1/1/1905; COAST GUARD--1/1/1898. National Archives Trust Fund (NATF) forms must be used to request these records. Obtain the forms by e-mail from  inquire@nara.gov  or write to the Code 6 address.

| BRANCH | CURRENT STATUS OF SERVICE MEMBER | WHERE TO WRITE ADDRESS CODE |
|--------|----------------------------------|:---:|
| AIR FORCE | Discharged, deceased, or retired with pay (See paragraph 1, above, if requesting health record.) | 14 |
| | Active (including National Guard on active duty in the Air Force), TDRL, or general officers retired with pay | 1 |
| | Reserve, retired reserve in nonpay status, current National Guard officers not on active duty in the Air Force, or National Guard released from active duty in the Air Force | 2 |
| | Current National Guard enlisted not on active duty in the Air Force | 13 |
| COAST GUARD | Discharged, deceased, or retired (See paragraph 1, above, if requesting health record.) | 14 |
| | Active, reserve, or TDRL | 3 |
| MARINE CORPS | Discharged, deceased, or retired (See paragraph 1, above, if requesting health record.) | 14 |
| | Individual Ready Reserve or Fleet Marine Corps Reserve | 5 |
| | Active, Selected Marine Corps Reserve, or TDRL | 4 |
| ARMY | Discharged, deceased, or retired (See paragraph 1, above, if requesting health record.) | 14 |
| | Reserve; or active duty records of current National Guard members who performed service in the U.S. Army before 7/1/72 | 7 |
| | Active enlisted (including National Guard on active duty in the U.S. Army) or TDRL enlisted | 9 |
| | Active officers (including National Guard on active duty in the U.S. Army) or TDRL officers | 8 |
| | Current National Guard enlisted not on active duty in Army (including records of Army active duty performed after 6/30/72) | 13 |
| | Current National Guard officers not on active duty in Army (including records of Army active duty performed after 6/30/72) | 12 |
| NAVY | Discharged, deceased, or retired (See paragraph 1, above, if requesting health record.) | 14 |
| | Active, reserve, or TDRL | 10 |

| ADDRESS LIST OF CUSTODIANS (BY CODE NUMBERS SHOWN ABOVE) - where to write/send this form | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1 | Air Force Personnel Center HQ AFPC/DPSRP 550 C Street West, Suite 19 Randolph AFB, TX 78150-4721 | 5 | Marine Corps Reserve Support Command (Code MM) 15303 Andrews Road Kansas City, MO 64147-1207 | 8 | U.S. Total Army Personnel Command 200 Stoval Street Alexandria, VA 22332-0400 | 12 | Army National Guard Readiness Center NGB-ARP 111 S. George Mason Dr. Arlington, VA 22204-1382 |
| 2 | Air Reserve Personnel Center/DSMR 6760 E. Irvington Pl. #4600 Denver, CO 80280-4600 | 6 | National Archives & Records Admin. Old Military and Civil Records (NWCTB-  Military), Textual Services Division 700 Pennsylvania Ave., N.W. Washington, DC 20408-0001 | 9 | Commander USAEREC Attn: PCRE-F 8899 E. 56th St. Indianapolis, IN 46249-5301 | 13 | The Adjutant General (of the appropriate state, DC, or Puerto Rico) |
| 3 | Commander CGPC-Adm-3 U.S. Coast Guard 2100 2nd Street, S.W. Washington, DC 20593-0001 | 7 | Commander U.S. Army Reserve Personnel Command ATTN: ARPC-ALQ-B 1 Reserve Way St. Louis, MO 63132-5200 | 10 | Naval Personnel Command 5720 Integrity Drive Millington, TN 38055-3130 | 14 | National Personnel Records Center (Military Personnel Records) 9700 Page Avenue St. Louis, MO 63132-5100 |
| 4 | Headquarters U.S. Marine Corps Personnel Management Support Branch (MMSB-10) 2008 Elliot Road Quantico, VA 22134-5030 | | | 11 | Department of Veterans Affairs Records Management Center P.O. Box 5020 St. Louis, MO 63115-5020 | | |

---

## PRIVACY ACT OF 1974 COMPLIANCE INFORMATION

The following information is provided in accordance with 5 U.S.C. 552a(e)(3) and applies to this form. Authority for collection of the information is 44 U.S.C. 2907, 3101, and 3103, and E.O. 9397 of November 22, 1943. Disclosure of the information is voluntary. If the requested information is not provided, it may delay servicing your inquiry because the facility servicing the service member's record may not have all of the information needed to locate it. The purpose of the information on this form is to assist the facility servicing the records (see the address list) in locating the correct military service record(s) or information to answer your inquiry. This form is then filed in the requested military service record(s) as a record of disclosure. The form may also be disclosed to Department of Defense components, the Department of Veterans Affairs, the Department of Transportation (Coast Guard), or the National Archives and Records Administration when the original custodian of the military health and personnel records transfers all or part of those records to that agency. If the service member was a member of the National Guard, the form may also be disclosed to the Adjutant General of the appropriate state, District of Columbia, or Puerto Rico, where he or she served.

## PAPERWORK REDUCTION ACT PUBLIC BURDEN STATEMENT

Public burden reporting for this collection of information is estimated to be five minutes per response, including time for reviewing instructions and completing and reviewing the collection of information. Send comments regarding the burden estimate or any other aspect of the collection of information, including suggestions for reducing this burden, to National Archives and Records Administration (NSPA), 8601 Adelphi Road, College Park, MD 20740-6001. DO NOT SEND COMPLETED FORMS TO THIS ADDRESS. SEND COMPLETED FORMS AS INDICATED IN THE ADDRESS LIST ABOVE.

JWJ-00006

## AUTHORIZATION FOR RELEASE OF PAYROLL
## AND PERSONNEL RECORDS

**TO WHOM IT MAY CONCERN:**

This authorizes any employer by whom I have been employed or sought employment, any labor union or which I am or have been a member, and the Mississippi Employment Security Commission to furnish full and complete information hereby requested to the law firm of _____, or to any representative, attorney or investigator from said offices, including but not limited to employment, employment applications, information pertaining to my wages, all personnel, payroll, medical, hospital, workmen's compensation, or insurance records and other related matters.

I hereby agree that a photostatic copy of this authorization shall be considered as effective and valid as the original.

Your full cooperation with the said attorneys is requested. You are further requested to disclose no information to any other person without written authority to do so.

Name: _____

Date of Birth: _____

Social Security Number: _____

_____
SIGNATURE

or

_____
PERSONAL REPRESENTATIVE OF

Form Approved
OMB No. 0960-0525

# REQUEST FOR SOCIAL SECURITY EARNINGS INFORMATION

*Use This Form If You Need

1. **Certified/Non-Certified Detailed Earnings Information**

   Includes periods of employment or self-employment and the names and addresses of employers.

   **OR**

2. **Certified Yearly Totals of Earnings**

   Includes total earnings for each year but does not include the names and addresses of employers.

---

**DO NOT USE THIS FORM FOR:**

**Non-certified yearly totals of earnings**

This service is free to the public.

These totals can be obtained by calling 1-800-772-1213 to receive Form SSA-7004, Request for Earnings and Benefit Estimate Statement.

---

**PRIVACY ACT NOTICE:** We are authorized to collect this information under section 205 of the Social Security Act, and the Federal Records Act of 1950 (64 Stat. 583). It is needed so we can identify your records and prepare the statement you request. You do not have to furnish the information, but failure to do so may prevent your request from being processed.

**PAPERWORK REDUCTION ACT:** This information collection meets the clearance requirements of 44 U.S.C. §3507, as amended by Section 2 of the Paperwork Reduction Act of 1995. You are not required to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take you about 11 minutes to read the instructions, gather the necessary facts, and answer the questions.

## INFORMATION ABOUT YOUR REQUEST

- **How Do I Get This Information?**

  You need to complete the attached form to tell us what information you want.

- **Can I Get This Information For Someone Else?**

  Yes, if you have their written permission. For more information, see page 3.

- **Who Can Sign On Behalf Of The Individual?**

  The parent of a minor child, or the legal guardian of an individual who has been declared legally incompetent, may sign if he/she is acting on behalf of the individual.

- **Is There A Fee For This Information?**

  1. **Certified/Non-Certified Detailed Earnings Information**

     Yes, we usually charge a fee for detailed information. In most cases, this information is used for purposes NOT directly related to Social Security such as for a private pension plan or personal injury suit. The fee chart on page 3 gives the amount of the charge.

     Sometimes, there is no charge for detailed information. If you have reason to believe your earnings are not correct (for example, you have previously received earnings information from us

and it does not agree with your records), we will supply you with more detail for the period in question. Occasionally, earnings amounts are wrong because an employer did not correctly report earnings or earnings are credited to the wrong person. In situations like these, we will send you detailed information, at no charge, so we can correct your record.

Be sure to show the year(s) involved on the request form and explain why you need the information. If you do not tell us why you need the information, we will charge a fee.

We will certify the detailed earnings information for an additional fee of $15.00. Certification is usually not necessary unless you plan to use the information in court.

2. **Certified Yearly Total of Earnings**

   Yes, there is a fee of $15 to certify yearly totals of earnings. Cetification is usually not necessary unless you plan to use the information in court.

3. **Method of Payment**

   Enclose a check or money order for the entire fee required. Payment can also be made by credit card. To do so, complete page 4 of this form and return it with your request form.

**JWJ-00008**

SSA 7050-F4 (7-2001)   EF (05-2002)
by prior editions

# REQUEST FOR SOCIAL SECURITY EARNINGS INFORMATION

**1.** From whose record do you need the earnings information?

Print the Name, Social Security Number (SSN), and date of birth below.

Name _____

Social Security Number _____

Other Name(s) Used
(Include Maiden Name) _____

Date of Birth
(Mo/Day/Yr) _____

**2.** What kind of information do you need?

☐ **Detailed Earnings Information**
(If you check this block, tell us below why you need this information.)

For the period(s)/year(s): _____

_____

_____

☐ **Certified Total Earnings For Each Year.**
(Check this box only if you want the information certified. Otherwise, call 1-800-772-1213 to request Form SSA-7004, Request for Earnings and Benefit Estimate Statement)

For the year(s): _____

**3.** If you owe us a fee for this detailed earnings information, enter the amount due using the chart on page 3 . . . . . . . . . . . . . . . . . . . . . . . . **A.** $ _____

Do you want us to certify the information?    ☐ Yes   ☐ No

If yes, enter $15.00 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **B.** $ _____

ADD the amounts on lines A and B, and enter the TOTAL amount . . . . . . . . . . . . . . . . . . . . **C.** $ _____

- You can pay by CREDIT CARD by completing and returning the form on page 4, or
- Send your CHECK or MONEY ORDER for the amount on line C with the request and make check or money order payble to "Social Security Administration"
- DO NOT SEND CASH.

I am the individual to whom the record pertains (or a person who is authorized to sign on behalf of that individual). I understand that any false representation to knowingly and willfully obtain information from Social Security records is punishable by a fine of not more than $5,000 or one year in prison.

SIGN your name here
(Do not print)    >   *Janet Weckley*    Date _____

Daytime Phone Number _____
(Area Code)   (Telephone Number)

Tell us where you want the information sent. (Please print)

Name _____   Address _____

City, State & Zip Code _____

Mail Completed Form(s) To:            **Exception:** If using private contractor (e.g., FedEx) to mail form(s), use:

Social Security Administration
Division of Earnings Record Operations
P.O. Box 33003
Baltimore Maryland  21290-3003

Social Security Administration
Division of Earnings Record Operations
300 N. Greene St.
Baltimore Maryland  21290-0300

JWJ–00009

# REQUEST FOR SOCIAL SECURITY EARNINGS INFORMATION

**How Much Do I Have to Pay For Detailed Earnings?**

1. Count the number of years for which you need detailed earnings information. Be sure to add in both the first and last year requested. However, do not add in the current calendar year since this information is not yet available.

2. Use the chart below to determine the correct fee.

| Number of Years Requested | Fee | Number of Years Requested | Fee | Number of Years Requested | Fee |
|---|---|---|---|---|---|
| 1 | $15.00 | 15 | $43.75 | 28 | $64.50 |
| 2 | 17.50 | 16 | 45.50 | 29 | 66.00 |
| 3 | 20.00 | 17 | 47.25 | 30 | 67.50 |
| 4 | 22.50 | 18 | 49.00 | 31 | 68.75 |
| 5 | 25.00 | 19 | 50.75 | 32 | 70.00 |
| 6 | 27.00 | 20 | 52.50 | 33 | 71.25 |
| 7 | 29.00 | 21 | 54.00 | 34 | 72.50 |
| 8 | 31.00 | 22 | 55.50 | 35 | 73.75 |
| 9 | 33.00 | 23 | 57.00 | 36 | 75.00 |
| 10 | 35.00 | 24 | 58.50 | 37 | 76.25 |
| 11 | 36.75 | 25 | 60.00 | 38 | 77.50 |
| 12 | 38.50 | 26 | 61.50 | 39 | 78.75 |
| 13 | 40.25 | 27 | 63.00 | 40 | 80.00 |
| 14 | 42.00 | | | | |

**For Requests Over 40 Years, Please Add 1 Dollar for Each Additional Year.**

- **Whose Earnings Can Be Requested**

**1. Your Earnings**

You can request earnings information from your own record by completing the attached form; we need your handwritten signature. If you sign with an "X", your mark must be witnessed by two disinterested persons who must sign their name and address.

**2. Someone Else's Earnings**

You can request earnings information from the record of someone else if that person tells us in writing to give the information to you. This writing or "authorization" must be presented to us within 60 days of the date it was signed by that person.

**3. A Deceased Person's Earnings**

You can request earnings information from the record of a deceased person if you are the legal representative of the estate, a survivor (that is, the spouse, parent, child, divorced spouse of divorced parent), or an individual with a material interest (example-financial) who is an heir at law, next of kin, beneficiary under the will or donee of property of the decedent.

Proof of death must be included with your request. Proof of appointment as representative or proof of your relationship to the deceased must also be included.

**JWJ–00010**

## YOU CAN MAKE YOUR PAYMENT BY CREDIT CARD

As a convenience, we offer you the option to make your payment by credit card.  However, regular credit care rules will apply.
You may also pay by check or money order.





*We Only Accept MasterCard and Visa*

Please fill in all the information below and return
this form along with your request to:

Social Security Administration
Division of Earnings Record Operations
P.O. Box 33003
Baltimore Maryland  21290-3003

**Exception:**
If using private contractor (e.g., FedEx) to mail form(s), use:

Social Security Administration
Division of Earnings Record Operations
300 N. Greene St.
Baltimore Maryland  21290-0300

### Note: Please read Paperwork/Privacy Act Notice

| | |
|---|---|
| NUMBER HOLDER'S SSN ———————➤<br>*(If more than one request, only list one SSN)* | __ — ____ — _____ |
| CHECK ONE ———————➤ | ☐ MasterCard   ☐ VISA |
| Credit Card Holder's Name ———————➤<br>**(Enter the name from the credit card)** | First, Middle Initial, Last Name |
| Credit Card Holder's Address ———————➤ | Number & Street<br>City, State, Zip Code |
| Daytime Telephone Number ———————➤ | ___ ___ <br>Area Code      Telephone Number |
| Amount Charged $ _____ | Credit Card Number<br>_____ - _____ - _____ - _____ |
| | Credit Card Expiration Date<br>Month            Year |
| Credit Card Holder's Signature ———————➤ | |
| ## DO NOT WRITE IN THIS SPACE<br>## OFFICE USE ONLY | Authorization<br><br>Name                          Date |

### PRIVACY ACT NOTICE

The Social Security Administration (SSA) has authority to collect the information requested on this form under section 205 of the
Social Security Act.  Giving us this information is voluntary.  You do not have to do it.  We will need this information only if you
choose to make payment by credit card.  You do not need to fill out this form if you choose another means of payment (for
example, by check or money order).

If you choose the credit card payment option, we will provide the information you give us to the banks handling your credit card
account and SSA's account.  We may also provide this information to another person or government agency to comply with federal
laws requiring the release of information from our records. You can find these and other routine uses of information provided to
SSA listed in the Federal Register.  If you want more information about this, you may call or write any Social Security Office.

**JWJ–00011**

## REQUEST FOR COPY OF STATE TAX FORM OR
## <u>INDIVIDUAL INCOME TAX ACCOUNT INFORMATION</u>

**TO WHOM IT MAY CONCERN:**

    I    hereby    authorize    you    to    provide    the    law    firm    of

_____,
and its representatives, or assigns, with any and all tax returns as specifically requested herein. This authorization is my consent to the release of said documents.

    A photostatic copy of this authorization shall be considered as effective and valid as the original.

Name: _____

Date of Birth: _____

Social Security Number: _____

Address: _____

_____

Tax Years Requested: _____

_____
SIGNATURE

or

_____
PERSONAL REPRESENTATIVE OF

**JWJ–00012**

Estimated burden: 2 minutes
Expiration Date: 10/31/2004

**VA** | **Department of Veterans Affairs** | REQUEST FOR AND CONSENT TO RELEASE OF MEDICAL RECORDS PROTECTED BY 38 U.S.C. 7332

The Paperwork Reduction Act of 1995 requires us to notify you that this information collection is in accordance with the clearance requirements of section 3507 of the Act. We may not conduct or sponsor, and you are not required to respond to, a collection of information unless it displays a valid OMB number. We expect that the time expended by all individuals completing this form will average 2 minutes. This includes the time to read instructions, gather the necessary facts and fill out the form. The purpose of this form is to specifically outline the circumstances under which we may disclose data.

The execution of this form does not authorize the release of information other than that specifically described below. The information requested on this form is solicited under Title 38, U.S.C. and will authorize release of information you specify. Your disclosure of the information requested on this form is voluntary. However, if the information is not furnished, Department of Veterans Affairs will be unable to comply with the request.

ENTER BELOW THE PATIENT'S NAME AND SOCIAL SECURITY NUMBER IF THE PATIENT DATA CARD IMPRINT IS NOT USED.

TO: DEPARTMENT OF VETERANS AFFAIRS *(Print or type name and address of health care facility)* | PATIENT NAME *(Last, First, Middle Initial)*
| SOCIAL SECURITY NUMBER

NAME AND ADDRESS OF ORGANIZATION, INDIVIDUAL OR TITLE OF INDIVIDUAL TO WHOM INFORMATION IS TO BE RELEASED

VETERAN'S REQUEST: I request and authorize Department of Veterans Affairs to release the information specified below to the organization, or individual named on this request. I understand that the information to be released includes information regarding the following condition(s):

[ ] DRUG ABUSE    [ ] ALCOHOLISM OR ALCOHOL ABUSE    [ ] TESTING FOR OR INFECTION WITH HUMAN IMMUNODEFICIENCY VIRUS (HIV)    [ ] SICKLE CELL ANEMIA

INFORMATION REQUESTED (Check applicable box(es) and state the extent or nature of the information to be disclosed, giving the dates or approximate dates covered by each)

[ ] COPY OF HOSPITAL SUMMARY    [ ] COPY OF OUTPATIENT TREATMENT NOTE(S)    [ ] OTHER *(Specify)*

PURPOSE(S) OR NEED FOR WHICH THE INFORMATION IS TO BE USED

NOTE: ADDITIONAL ITEMS OF INFORMATION DESIRED MAY BE LISTED ON THE BACK OF THIS FORM

AUTHORIZATION: I certify that this request has been made freely, voluntarily and without coercion and that the information given above is accurate to the best of my knowledge. I understand that I may revoke this authorization at any time except to the extent that action has already been taken to comply with it. redisclosure of medical records by those receiving the above authorized information may not be accomplished without my other written consent. Without my express revocation, the consent will automatically expire: (1) upon satisfaction the need for disclosure; (2) on _____ (date supplied by patient); or (3) under the following conditions(s):

understand that the VA health care practitioner's opinions and statements are not official VA decisions regarding whether I receive other VA benefits or, if I receive VA benefits, their amount. They may, however, be considered with other evidence these decisions are made at a VA Regional Office that specializes in benefit decisions.

SIGNATURE OF PATIENT OR PERSON AUTHORIZED TO SIGN FOR PATIENT

FOR VA USE ONLY

PATIENT DATA CARD *(Name, Address, Social Security Number)* | TYPE AND EXTENT OF MATERIAL RELEASED

*JWJ–00013*

DATE RELEASED | RELEASED BY

345

## AUTHORIZATION FOR RELEASE OF WORKMAN'S
## COMPENSATION RECORDS

**TO WHOM IT MAY CONCERN:**

I hereby authorize you to provide the law firm of

_____, and its

representatives, or assigns, a complete copy of all information and/or documents pertaining to myself.

A photostatic copy of this authorization shall be considered as effective and valid as the original.

Name: _____

Date of Birth: _____

Social Security Number: _____


_____
SIGNATURE

or


_____
PERSONAL REPRESENTATIVE OF




## MISSISSIPPI STATE DEPARTMENT OF HEALTH
### VITAL RECORDS

| | | | |
|---|---|---|---|
| TYPE OR PRINT WITH BLACK INK | FILING DATE **OCT 2 4 2002** | CERTIFICATE OF DEATH STATE OF MISSISSIPPI | STATE FILE NUMBER 123- |

**DECEASED**

| 1. NAME First JAMES Middle W Last JAY, JR | 2. SEX Male | 3a. HOUR OF DEATH 2215 p.m. | 3b. DATE OF DEATH (Month, Day, Year) October 14, 2002 |
|---|---|---|---|
| 4. RACE (Specify White, Black, American Indian, etc.) WHITE | 5a. AGE AT LAST BIRTHDAY 81 Years | ONLY IF UNDER 1 YEAR 5b. MOS 5c. DAYS | ONLY IF UNDER 1 DAY 5d. HOURS 5e. MINS | 6. DATE OF BIRTH (Month, Day, Year) JUNE 28, 1921 | 7a. COUNTY OF DEATH HINDS |

*death occurred in an institution, see HANDBOOK, regarding completion of RESIDENCE items*

| 7b. CITY OR TOWN OF DEATH JACKSON | 7c. HOSPITAL OR OTHER INSTITUTION-NAME AND NUMBER (If not in either, give street address, route number, or other location) ST. DOMINIC JACKSON MEM. HOSP. (25S) | 7d. IF IN HOSP., SPECIFY INPT., OUTPT., EMER. RM.OR DOA INPATIENT | 8 STATE OF BIRTH TEXAS |

| 9. DECEDENT'S EDUCATION (Specify only highest grade completed) | Elem/High School (0-12) 12 | College (1-4, 5+) | 10. MARRIED, NEVER MARRIED, WIDOWED, DIVORCED (Specify) WIDOWED | 11. SURVIVING SPOUSE (If wife, give maiden name) N/A | 12 WAS DECEASED EVER IN U.S. ARMED FORCES? (Yes or No) YES |

*for RESIDENCE items, enter actual location home rather than mailing address*

| 13. ORIGIN OR DESCENT (Specify Cuban, Afro-American, Mexican, etc.) AMERICAN | 14. SOCIAL SECURITY NUMBER 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 | 15a. USUAL OCCUPATION (Kind of work done most of working life) RETIRED | 15b. KIND OF BUSINESS OR INDUSTRY US COAST GUARD |

| 16a. RESIDENCE—STATE MS | 16b. COUNTY COPIAH | 16c. CITY OR TOWN CRYSTAL SPRINGS | 16d. INSIDE CITY LIMITS (Specify Yes or No) YES | 16e. STREET AND NUMBER OR RURAL LOCATION 212 GLENN STREET |

**PARENTS**

| 17. FATHER—NAME First JAMES Middle W. Last JAY | 18. MOTHER—NAME First CORA Middle MAY Maiden SMITH |
|---|---|

**INFORMANT**

| 19a. INFORMANT—NAME (Type or print) JANET HOCKLEY | 19b. MAILING ADDRESS (Street and number or route and box number, City or town, State, ZIP code) 326 E. MARION AVE., CRYSTAL SPRINGS, MS 39059 |
|---|---|

**DISPOSITION**

| 20a. BURIAL, CREMATION, REMOVAL (Specify) BURIAL | 20b. CEMETERY, CREMATORY-NAME COUNTY LINE CEM. | 20c LOCATION (City and State) CRYSTAL SPRINGS, MS | 21a. EMBALMER—SIGNATURE AND NUMBER |
|---|---|---|---|

| 21b. FUNERAL HOME—NAME AND MISSISSIPPI I.D NUMBER STRINGER FUNERAL HOME 15-S | 21c. MAILING ADDRESS (Street and number or route and box number, City or town, State, ZIP code) PO BOX 431, CRYSTAL SPRINGS, MS 39059 |
|---|---|

**PRONOUNCEMENT**

| 22a. PERSON WHO PRONOUNCED DEATH—NAME AND TITLE (Type or print) BRENDA S. McCAFFREY, RNC | 22b. PRONOUNCED DEAD (Month, Day, Year) ON OCTOBER 14 2002 | 22c. PRONOUNCED DEAD (Hour) AT 2215 pm |
|---|---|---|

**CERTIFIER**

| 23a. CERTIFIER—NAME (Type or print) BOBBY L GRANTHAM JAMES | 23b. MAILING ADDRESS (Street and number or route and box number, City or town, State, ZIP code) 2969 Warren Dr N Suite 200 Jackson, Miss. 39216 |
|---|---|

| This section to be completed by physician if NOT a medical examiner | 24a. To the best of my knowledge, death occurred due to the cause(s) and manner as stated. SIGNATURE ► [signed] MD | This section to be completed by medical examiner ONLY | 24e. On the basis of examination and/or investigation, in my opinion, death occurred due to the cause(s) and manner as stated. SIGNATURE ► |
|---|---|---|---|
| *Mississippi State Board of Health Form No. 511 Revised 1-1-89* | 24b. DATE SIGNED (Month, Day, Year) 10/15/02 | 24c. STATE LICENSE NUMBER | | 24f. TITLE |
| | 24d. NAME OF ATTENDING PHYSICIAN IF OTHER THAN CERTIFIER (Type or print) same | | 24g. DATE SIGNED (Month, Day, Year) |

**CAUSE OF DEATH**

| 25. PART I. | IMMEDIATE CAUSE (Enter one cause only): | Interval between onset and death |
|---|---|---|
| DEATH CAUSED BY: | (a) Mesothelioma | months |

*Conditions, if any, which gave rise to immediate cause stating the underlying cause last*

| | DUE TO. OR AS A CONSEQUENCE OF (Enter one cause only): | Interval between onset and death |
|---|---|---|
| | (b) | |
| | DUE TO. OR AS A CONSEQUENCE OF (Enter one cause only): | Interval between onset and death |
| | (c) | |

| 26. PART II. OTHER SIGNIFICANT CONDITIONS—Conditions contributing to death but not resulting in the underlying cause given in PART I | 27. AUTOPSY (Yes or No) | 28. WAS CASE REFERRED TO MEDICAL EXAMINER? (Yes or No) |
|---|---|---|

**Was Decedent Pregnant Within 90 Days Prior to Death?**

☐ Yes ☐ No

| Use if death NOT due to natural causes | 29a. ACCIDENT, SUICIDE, HOMICIDE, PENDING INVESTIGATION, OR UNDETERMINED (Specify) | 29b. DATE OF INJURY (Month, Day, Year) | 29c. HOUR OF INJURY m. | 29d. DESCRIBE HOW OR BY WHAT MEANS INJURY OCCURRED |
|---|---|---|---|---|
| | 29e. INJURY AT WORK (Yes or No) | 29f. PLACE OF INJURY (Specify Home, Farm, Street, Factory, Office building, etc.) | 29g. LOCATION Street or route number City or town State |

THIS IS TO CERTIFY THAT THE ABOVE IS A TRUE AND CORRECT COPY OF THE CERTIFICATE ON FILE IN THIS OFFICE

**JWJ—00015**

OCT 24 2002

Judy Moulder
**STATE REGISTRAR**



WARNING: A REPRODUCTION OF THIS DOCUMENT RENDERS IT VOID AND INVALID. DO NOT ACCEPT UNLESS EMBOSSED SEAL OF THE MISSISSIPPI STATE BOARD OF HEALTH IS PRESENT. IT IS ILLEGAL TO ALTER OR COUNTERFEIT THIS DOCUMENT.

<u>LETTERS TESTAMENTARY</u> FILED

STATE OF MISSISSIPPI

COUNTY OF COPIAH

STEVE AMOS
CHANCERY CLERK
Barbara Diot 2002-557

TO ALL WHOM THESE PRESENTS SHALL COME - GREETINGS:

WHEREAS, **JAMES W. JAY, JR.**, late of the county and State aforesaid, deceased, had while he lived, and at the time of his death, diverse goods, rights and credits within the County and State aforesaid, and did make and publish his Last Will and Testament, and thereby constituted and appointed **JANET HOCKLEY,**

Executor thereof; and whereas, also, the said Last Will and Testament has this day been admitted to Probate in our said Court, and the said **JANET HOCKLEY** has taken oath as required by law, and no bond is required by law:

WE DO, THEREFORE, HEREBY GRANT unto the said **JANET HOCKLEY** these Letters Testamentary authorizing and empowering **JANET HOCKLEY** to make inventory of the estate of said Testator, cause the same to be appraised, and make return of said inventory and appraisement into our said Testator, and then the legacies contained in said Will so far as the goods, chattels and credits will extend and the law shall charge **JANET HOCKLEY** to execute and perform the said Last Will and Testament according to the true intent and meaning thereof; and lastly, to render a just and true account of their actions and doings herein, when so required by this Court.

WITNESS, Honorable Edward E. Patten, Jr. Chancellor of the Chancery Court of Copiah County, on the ___17th___ day of December,

2002, the seal of this Court hereunto affixed.

ISSUED the _____17th_____ day of December. 2002.

STEVE AMOS, CHANCERY CLERK

By: _____

Deputy Clerk

Probate2002\JayJamesWJrLetTest

JWJ–00017

2



**ST. DOMINIC - JACKSON MEMORIAL HOSPITAL**
JACKSON, MISSISSIPPI

Power Of Att:   N          Living Will:   N

**INPATIENT** (CC)

| LAST NAME | FIRST NAME / MI | ATTENDING PHYSICIAN | ROOM NUMBER | PATIENT NUMBER | FIN CLASS |
|---|---|---|---|---|---|
| JAY | JAMES W JR | GRAHAM, BOBBY L | ED   2 | 1381297 | M |

| ADDRESS | CITY | STATE | ZIP | PHONE | MEDICAL RECORD NO. |
|---|---|---|---|---|---|
| 212 GLENN ST | CRYSTAL SPRINGS MS | | 39059 | 6018922061 | 689218 |

| AGE | SEX | RACE | PLACE OF BIRTH | COUNTY | DATE OF BIRTH | MS | RELIGION | ADMIT DATE | TIME |
|---|---|---|---|---|---|---|---|---|---|
| 81 Y | M | W | MS | COPIAH | 6-28-21 | W | BAPTIST | 10-06-02 | 15 18 |

| REFERRING PHYSICIAN | SOCIAL SECURITY NUMBER | DISCHARGE DATE | TIME |
|---|---|---|---|
| | 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 | 10-14-02 | 2215 |

| ADVANCED DIRECTIVES | FATHER'S NAME | MOTHER'S MAIDEN NAME | PREVIOUS ADMIT DATE | UNDER WHAT NAME |
|---|---|---|---|---|
| N | | | 7-30-02 | JAY, JAMES W JR |

| PATIENT'S OCCUPATION | EMPLOYER | ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| RETIRED | US COAST GUARD | | | | |

| NEXT OF KIN | ADDRESS | PHONE | RELATIONSHIP |
|---|---|---|---|
| JANET HOCKLEY | CRYSTAL SPRINGS MS   39059 | 601-892-9865 | GRANDCHI |

| GUARANTOR LAST NAME | FIRST NAME | GUARANTOR APT./BOX/ROUTE | GUARANTOR ADDRESS |
|---|---|---|---|
| JAY | JAMES W JR | 212 GLENN ST | |

| GUARANTOR CITY, STATE, ZIP | PHONE | ADMISSION CLERK |
|---|---|---|
| CRYSTAL SPRINGS   MS   39059 | 601 8922061 | SHERRITA JAMES |

| GUARANTOR OCCUPATION | EMPLOYER | ADDRESS | CITY | STATE | ZIP | PHONE |
|---|---|---|---|---|---|---|
| RETIRED | US COAST GUARD | | | | | |

| INSURANCE | CO. | PLAN | TYPE | CERTIFICATE | GROUP NO. | EFFECTIVE DATE | SUBSCRIBER |
|---|---|---|---|---|---|---|---|
| MEDICARE | 1 | 1 | A&B | 461269615A | MEDICARE | | JAY, JAMES W JR |
| MEDICARE | 1 | 2 | | 461269615A | MCR IP PRO F | | JAY, JAMES W JR |
| CHAMPUS | 10 | 2 | | 461269615 | CHAMPUS, RETI | | JAY, JAMES W JR |

ADMITTING DIAGNOSIS

PRINCIPAL DIAGNOSIS

*Mesothelioma*

SECONDARY DIAGNOSIS/COMPLICATIONS/COMORBID CONDITIONS

*Pneumonia*

PRINCIPAL PROCEDURE

OTHER PROCEDURES

| | | |
|---|---|---|
| HISTORY AND PHYSICAL DICTATED | ☑ YES | ☐ NO |
| DISCHARGE SUMMARY DICTATED | ☑ YES | ☐ NO |
| AUTOPSY | ☐ YES | ☐ NO |

CONSULTATION WITH

_Bobby L Graham Jr_                    M.D. ATTENDING PHYSICIAN

**ORIGINAL**

ADMIP1

ADMISSIONS FORM
REVISION DATE: 01/14/2002

PRINTED BY: AWILLIAMS
DATE   7/18/2003
JAY, JAMES W JR
DOCTOR NAME:   GRAHAM, BOBBY L
MR#: 689218    AGE:   81 Y    SEX:   M

1381297

ADMIP1T

DATE:   Wed Oct 16  13:41:31 2002
PATIENT NAME:   JAY, JAMES W
ACCT NO:   1381297
SEX:   M
LOC:   4N42240
DOB:   19210628
ROOM NO:   4224      -
PHYSICIAN ID:   00829
PHYSICIAN:   GRAHAM, BOBBY L., M.D.
DISCHARGE DATE:   20021014
SPECIMEN DATE/TIME:   20021016
ITEM #/DESCRIPTION:   TX

ST. DOMINIC-JACKSON MEMORIAL HOSPITAL
JACKSON, MISSISSIPPI
DISCHARGE SUMMARY

NAME: JAY, JAMES W JR                          MR#: 689218
ATTENDING: BOBBY L. GRAHAM, M.D.              ACCT#: 1381297
DICTATING: BOBBY L. GRAHAM, M.D.
REFERRING PHYS: KARL W. HATTEN, M.D.           ROOM#: 4N-4224-0
ADMIT DATE: 10/08/2002              DISCHARGE DATE: 10/14/2002
DOB: 06/28/1921           AGE: 81Y                  SEX: M
                                     PATIENT TYPE: I

---

DATE OF ADMISSION:
DATE OF DISCHARGE:
CAUSE OF DEATH:
1.  Malignant mesothelioma, left lung.
2.  Pneumonia.
SUMMARY:  This is one of several hospitalizations for Mr. Jay who is a
very pleasant 81-year-old gentleman diagnosed with mesothelioma.  He has
progression of disease and is no longer under treatment.  He was recently
hospitalized with progressive pain and dyspnea and has been trying to
remain at home with the help of church members and friends, but is having
more difficulty with increased shortness of breath.  He was seen in the
emergency room the night of admission with finding of volume overload,
infiltrate in the right lung, as well as the large left lung mass
consistent with his mesothelioma.  He was hospitalized and placed on
supplemental oxygen and antibiotics.  A do not resuscitate order was
written.  He had previously made this request known to me.  He was also
given narcotic analgesics to help with pain and dyspnea.
Hospital course consisted of administration of these medications.  He
continued to have a lot of problems with shortness of breath.  He did not
believe that he could return home without assistance and plans were being
made to transfer him to inpatient hospice care.  Unfortunately, his
condition deteriorated very rapidly despite our efforts and he died at
approximately 10:15 the evening of 10/14/2002.  A do not resuscitate
NAME: JAY, JAMES W JR                          ROOM#: 4N-4224-0
DOCTOR: BOBBY L. GRAHAM, M.D.                   MR#: 689218
                  DISCHARGE SUMMARY            ACCT#: 1381297

ST. DOMINIC-JACKSON MEMORIAL HOSPITAL
DISCHARGE SUMMARY

NAME: JAY, JAMES W JR                                    PAGE: 2
MR#: 689218
order was carried out as requested.

                          ———————————————————
                          BOBBY L. GRAHAM, M.D.
\: m4              /:    829        DD: 10/15/2002      DT: 10/16/2002
JOB#: 30989    ID: 700311465        1410                     1218
cc: KARL W. HATTEN, M.D. (01029)
fx: BOBBY L. GRAHAM, M.D. (00829)
>
NAME: JAY, JAMES W JR                    ROOM#: 4N-4224-0
DOCTOR: BOBBY L. GRAHAM, M.D.             MR#: 689218
                                         ACCT#: 1381297
                          DISCHARGE SUMMARY
uthenticated by BOBBY L. GRAHAM, MD On 10/19/02 10:59:25 AM

**JWJ–00020**

PRINTED BY: AWILLIAMS
DATE      7/18/2003

## CERTIFICATE OF SERVICE

I, LOUIS H. WATSON., JR., certify that I will serve a true and correct copy of the above and foregoing document to the registered agent of all Defendants at the time of service of the Summons and the Complaint.

THIS, the 5th day of April, 2004.

_____
LOUIS H. WATSON, JR.

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**



SOUTHERN DISTRICT OF MISSISSIPPI
**F I L E D**

MAY 0 5 2004

J.T. NOBLIN, CLERK
BY_____DEPUTY

JANET HOCKLEY, As Personal
Representative of the Estate of
JAMES W. JAY, JR., DECEASED

**PLAINTIFF**

v.                                    CIVIL ACTION NO. 1:04CV512

METROPOLITAN LIFE INSURANCE CO., ET AL.

**DEFENDANTS**

<u>**NOTICE OF REMOVAL**</u>

Pursuant to 28 U. S. C. A. §§ 1331, 1441, and 1442(a)(1), certain defendants represented by Forman Perry Watkins Krutz and Tardy, LLP (attached as Exhibit "A" to this Notice)("Removing Defendants") hereby remove the state court action entitled "Janet Hockley, as Personal Representative of the Estate of James W. Jay, Jr. v. Metropolitan Life Insurance Co., Inc., et al.," in the Circuit Court of Copiah County, Mississippi, Cause No. 2004-0116, to the United States District Court for the Southern District of Mississippi, Southern Division.

1.

In the Complaint filed in this action, plaintiff seeks to recover damages based on various theories of negligence, strict liability, breach of warranty, failure to warn, fraudulent concealment, and other theories, from alleged exposure to asbestos and asbestos containing products. A copy of the Complaint is attached as Exhibit "B."

2.

The Circuit Court of Copiah County, Mississippi, is within the United States District Court for the Southern District of Mississippi, Southern Division, to which this action is removable.



3.

By sworn answer to discovery dated April 5, 2004, entitled "Plaintiff Janet Hockley's, As Personal Representative of the Estate of James W. Jay, Deceased, Responses to Defendants' Master Set of Interrogatories and Request for Production of Documents", in response to Interrogatories Nos. 5 and 6, it is asserted that Plaintiff's decedent, James W. Jay, was "employed by the [United States] Coast Guard, as a Chief Warrant Officer, in Gulfport Mississippi" from 1948 to 1973 and that during that time frame he was exposed to boilers and pipes which contained asbestos products. Removing defendants have timely filed this Notice of Removal within 30 days of the receipt of these responses.  A copy of Plaintiff's responses and Plaintiffs' counsel's correspondence regarding said responses is attached as Exhibit "C."

4.

At all relevant times, the United States Coast Guard base, Gulfport Station, located in Gulfport, Mississippi, and the United States Coast Guard cutters and vessels stationed at and operating out of said military facility were, and are, federal enclaves subject to the jurisdiction of the United States.  Pursuant to 28 U. S. C. A. §§ 1331 and 1441(a), the district court has jurisdiction over personal injury actions, including those based on alleged exposure to asbestos-containing products, allegedly resulting from incidents occurring on federal enclaves, as matters arising under federal law within the meaning of 28 U. S. C. A. § 1331 and the U. S. Constitution.  *See, e.g., Fung v. Abex Corporation*, 816 F. Supp. 569 (N.D. Ca. 1992); *Akin v. E.I.DuPont De Nemours & Co.*, 156 F. 3d. 1030, 1034 (10th Cir. 1998); *Akin v. Big Three Industries*, 851 F. Supp. 819, 821-822 (E.D. Tex. 1994); *Mater v. Holley*, 200 F. 2d. 123 (5th Cir. 1952).   Accordingly, this action is removable from the Circuit Court of Copiah County, Mississippi to this Court.

5.

As an alternative and separate ground for removal, and subject to confirmation by discovery, the Removing Defendants aver that one or more defendants named in this action is, or may be, a person that acted under the direction of a federal officer by supplying products which were required to meet government-designed and/or -controlled military specifications; that such defendant or defendants have a colorable federal defense to plaintiff's claims under, *inter alia*, a government contractor defense; and that there is a nexus between plaintiff's claims and the acts performed by such defendant or defendants pursuant to the foregoing circumstances. *See, e.g., Akin v. Big Three Industries*, 851 F. Supp. 819, 822-824 (E.D. Tex. 1994) *and cases cited therein*. Accordingly, in the alternative and subject to discovery, this action is or may be removable pursuant to 28 U. S. C. A. § 1442 (a)(1).

6.

By filing this Notice of Removal, defendants do not waive any defenses and expressly reserve all available defenses.

7.

Pursuant to 28 U.S.C.A. § 1446(d), a copy of this Notice of Removal is being filed forthwith with the Circuit Court of Copiah County, and is being provided to all other known counsel for plaintiffs and defendants.

8.

Pursuant to 28 U.S.C.A. § 1446(a), a copy of the complaint and Plaintiff's discovery responses dated April 5, 2004, are attached to this Notice of Removal, and this Notice will be supplemented with a copy of any other process, pleadings, and orders in the state court file.

WHEREFORE, this action is hereby removed to the United States District Court for the Southern District of Mississippi pursuant to 28 U. S. C. A. §§ 1331 and 1441, and, in the alternative and subject to discovery, 28 U. S. C. A. § 1442(a)(1).

RESPECTFULLY SUBMITTED, this the 5TH day of MAY 2004.

THOMAS W. TARDY, III, MSBN 7431
JENNIFER M. STUDEBAKER, MSBN 10433
JOHN C. MCCANTS III, MSBN 100031

ATTORNEYS FOR DEFENDANTS

OF COUNSEL:

FORMAN PERRY WATKINS KRUTZ & TARDY LLP
188 East Capitol Street, Suite 200
Post Office Box 22608
Jackson, Mississippi 39225-2608
Telephone:  (601) 960-8600
Facsimile:  (601) 960 8613

**IN THE CIRCUIT COURT OF COPIAH COUNTY, MISSISSIPPI**

JANET HOCKLEY, As Personal
Representative of the Estate of
JAMES W. JAY, JR., DECEASED                                        **PLAINTIFF**

**v.**                                                                    **CIVIL ACTION NO. 2004-0116**

METROPOLITAN LIFE INSURANCE CO., ET AL.                    **DEFENDANTS**

### NOTICE OF FILING NOTICE OF REMOVAL

PLEASE TAKE NOTICE that on May 5, 2004, certain Defendants removed this case to the United States District Court for the Southern District of Mississippi, Southern Division.  A copy of the Notice of Removal is attached as Exhibit A.

PLEASE TAKE FURTHER NOTICE that, pursuant to 28 U.S.C. § 1446(b), the filing of this Notice removes this action to Federal Court, and this Court may "proceed no further unless and until the case is remanded."

RESPECTFULLY SUBMITTED, this the 5ᵀᴴ day of MAY 2004.

THOMAS W. TARDY, III, MSBN 7431
JENNIFER M. STUDEBAKER, MSBN 10433
JOHN C. MCCANTS III, MSBN 100031

**ATTORNEYS FOR DEFENDANTS**

OF COUNSEL:

FORMAN PERRY WATKINS KRUTZ & TARDY LLP
188 East Capitol Street, Suite 200
Post Office Box 22608
Jackson, Mississippi 39225-2608
Telephone:  (601) 960-8600
Facsimile:  (601) 960-8613

## CERTIFICATE OF SERVICE

I hereby certify that I have mailed by United States mail, postage prepaid, a true and correct copy of the foregoing document to the following:

> Louis H. Watson, Jr., Esq.
> C. Maison Heidelberg, Esq.
> Watson & Heidelberg, P.A.
> 520 E. Capitol Street
> Jackson, Mississippi   39201
>
> John Arthur Eaves, Esq.
> Eaves Law Firm
> 101 North State Street
> Jackson, MS   39201

and all other counsel of record.

THIS, the 5TH day of MAY 2004.

JOHN C. McCANTS III

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**JANET HOCKLEY, As Personal**
**Representative of the Estate of**
**JAMES W. JAY, JR., DECEASED**                                    **PLAINTIFF**

**v.**                                    **CIVIL ACTION NO. _____**

**METROPOLITAN LIFE INSURANCE CO., ET AL.**                **DEFENDANTS**


A.R. Wilfley & Sons, Inc.

Alfa-Laval, Inc.

Babbitt Steam Specialty Co.

CertainTeed Corp.

Crossfield Products Corp.

Foseco, Inc.

Industrial Holdings Corporation f/k/a The Carborundum Company

Laurel Machine & Foundry Co., Inc.

Lincoln Electric Co.

Magnetrol International

Mueller Steam Specialty

Owens-Illinois, Inc.

Stuart C. Irby Co.

Turner Supply Co.

Warren Pumps, Inc.

Yeomans Chicago Corp.


EXHIBIT A   PAGE 1 OF 1

# FORMAN PERRY WATKINS KRUTZ & TARDY LLP

200 One Jackson Place
188 East Capitol Street
Jackson, Mississippi 39201-2131

Post Office Box 22608
Jackson, Mississippi 39225-2608

Telephone: 601-960-8600
Main Facsimile: 601-960-8613
Asbestos Facsimile: 601-960-3241

ATTORNEYS AT LAW

John C. McCants, III, Esq.
mccantsjc@fpwk.com
Direct Dial: (601) 974-8718

July 15, 2004

Louis H. Watson, Jr., Esq.
C. Maison Heidelberg, Esq.
Watson & Heidelberg, P.A.
520 E. Capitol Street
Jackson, Mississippi 39201

John Arthur Eaves, Esq.
Eaves Law Firm
101 North State Street
Jackson, MS  39201


Re:     Hockley, Janet, as Personal Rep. of the Estate of
        James W. Jay, Jr., Deceased, v. Metropolitan Life Insurance Co., et al.
        United States District Court, Southern District of Mississippi
        Southern Division; Civil Action No. 1:04CV512GR

Gentlemen,

I would appreciate the opportunity to schedule a conference with you and other counsel to discuss a proposed discovery plan in this matter and prospective dates for scheduling a deposition of your client.

Please find enclosed herein our proposed remand-related discovery in this matter.  Thank you for kind assistance and consideration in this matter.  As always, I am

Sincerely,

John C. McCants, III, Esq.


enclosure(s):  ten (10) pages
cc:       see attachment



**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

JANET HOCKLEY, As Personal
Representative of the Estate of
JAMES W. JAY, JR., DECEASED                                                        **PLAINTIFF**

**v.**                                                                  **CIVIL ACTION NO. 1:04CV512GR**

METROPOLITAN LIFE INSURANCE CO., ET AL.                    **DEFENDANTS**

## SEVERAL DEFENDANTS' MASTER SET OF REMAND-RELATED INTERROGATORIES

COME NOW Several Defendants[1], and propound the following Remand-Related Interrogatories to the Plaintiff in the above-referenced cause of action, to be answered individually by the Plaintiff and on behalf of the decedent herein, in accordance with the Federal Rules of Civil Procedure.

## GENERAL INSTRUCTIONS

1.      If any of these interrogatories cannot be answered in full, then Plaintiff should answer to the extent possible and specify the reasons for his/her inability to answer the remainder, and should state whatever information or knowledge he/she has concerning the unanswered portion. For example, in answering the interrogatories concerning witnesses and documentary evidence, please identify as many witnesses and proposed exhibits as possible rather than stating "unknown at this time."

---

[1] Thirty-seven defendants are represented in this Master Set of Remand-Related Interrogatories by counsel Forman, Perry, Watkins, Krutz & Tardy LLP. Those defendants are: Alfa-Laval, Inc., Alstom Power, Inc., Ametek, Inc., American Crane Corp., A. R. Wilfley & Sons, Inc., Aurora Pump, BIF, Branton Insulations, Inc., Crompton Corp., Crossfield Products, Inc., Engelhard Corp., Eastern Safety Equipment, FKI Industries, Inc., Foseco, Inc., French Oil Mill Machinery Co., Gardner-Denver, Inc., General Electric Co., Georgia-Pacific Corp., Green Tweed and Company, Jamestown Metal Marine Sales, Inc., Kamco Supply Co., Inc., Laurel Machine & Foundry Co., Inc., Lincoln Electric Co., Magnetrol International, Marsh Instruments, Inc., Mueller Steam Specialty, Nikko Materials USA, Inc. d/b/a Gould Electronics, Inc., Owens-Illinois, Inc., Parker Hannifin Corp., Phoenix Specialty Mfg. Co., Inc., Robbins & Myers, Inc., SPX Corporation, Stuart C. Irby, Inc., Sulzer (US) Pumps, Inc., Turner Supply Co., Yeomans Chicago Corp., and Zurn Industries, Inc.

2.      In answering these interrogatories, please furnish such information as is known or is available to Plaintiff regardless of whether this information is obtained directly by, or known to, or obtained by his/her attorneys or other agents or representatives.

3.      Where your knowledge or information is requested, such request shall also include the knowledge of your representatives and agents and, unless privileged, your attorney.

## DEFINITION OF TERMS

The following definitions are to be considered applicable to the interrogatories and request for production of documents propounded herein:

1.      The term "date(s)" means the exact day, month and year, if ascertainable, or if not, the best approximation (including relationship to other happenings or events) with the indication that it is an approximation of said date.

2.      The term "person(s)" means any individual, corporation, proprietorship, partnership, association, or any other entity.

3.      The terms "you", "your" or "plaintiff" refers to each named plaintiff.  In addition, in any survivorship or wrongful death action, "you", "your" or "plaintiff" refers to the deceased person whose injuries or death was allegedly cause by or related to exposure to asbestos containing products.

4.      The term "your decedent" or  "plaintiff's decedent" refers, if applicable, to the plaintiff or the deceased person whose alleged asbestos-related disease and alleged asbestos exposure forms the basis of the suit.

5.      The term "or" means and incorporates therein the term "and/or".

6.      The term "include(s)" or "including" means and incorporates therein the phrase "including but not limited to".

7.      The term "identify", when referring to a person, as above defined, means to state

- 2 -

such information as is reasonably necessary to lead to the location of said person, including the person's name, present address or, if same unknown, the last known address, the person's telephone number or, if same unknown, the last known telephone number, and the person's business address and telephone number.

8.      The term "identify", when referring to a document or thing, means to state such information with particularity as is reasonably necessary to lead to the location of said document or thing, including a description of said document or thing, its source or origin, and any person's name who may have information about said document or thing and that person's present address and if unknown, the last known address, telephone number or if unknown, the last known telephone number, and business address and telephone number.

9.      "Identify," when used in reference to a business entity, means to state (i) its full name; (ii) its present or last known business address; and (iii) its present or last known mailing address.

10.     "Identify," "state," "describe," or "explain," when used with respect to a fact, event or allegation, means provide the complete and full details concerning such fact, event or allegation, including the identify of all documents that reflect, refer, relate, evidence, or pertain in any way to such fact, event or allegation.

11.     The term "documents" means all writings of any kind, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise, including without limitation correspondence, memoranda, notes, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, work papers, plats, films, tapes, receipts, returns, summaries, pamphlets, books, prospectuses, inter-office and intra-office communications, offers, notations of any sort of conversation, ledgers, invoices, contracts, billings, drawings, sketches, photographs, applications, financial statements, bank

statements, bank debit and credit memoranda, loan ledgers, promissory notes, security agreements, deeds of trust, financing statements, records of any special or expense accounts, any and all other writings, printings or drafts or copies of reproductions thereof, irrespective of form, in your possession, custody or control.

12.     The term "all documents" means every document as above defined known to you and every such document which can be located or discovered by reasonable diligent efforts.

13.     The term "discoverable facts or material" means any matter, not privileged, which is relevant to the issues raised by the claims or defenses of any party and which appears reasonably calculated to lead to the discovery of admissible evidence, or which is, otherwise, subject to discovery in accordance with Fed.R.Civ.Proc. R. 26.

14.     To "state the basis, including the application of law to fact, for a claim, allegation, contention or position" means to fully and completely state in detail the factual and legal bases for such claim, including identifying any persons having information or knowledge about which such claim is made and any documents pertaining to such incident or event about which such claim is made.

INTERROGATORIES

Pursuant to Fed. R. Civ. Proc. R. 33(a), each interrogatory shall be answered separately and fully in writing under oath, unless there is an objection, in which event the reasons for objection shall be stated in lieu of an answer.  The answers are to be signed by the person making them, and the objections by the attorney making them.  A copy of the answers and objections, if any, must be served upon John C McCants, III, Esq., as attorney for Several Defendants herein in accordance with the Federal Rules of Civil Procedure.  Because these interrogatories are limited in scope to the issue of venue and jurisdiction of this Court,

Defendants herein do not relinquish their rights to propound additional non-repetitious, supplemental interrogatories under the Federal Rules of Civil Procedure.

INTERROGATORY NO. 1: Have you ever been a member of any military branch of the United States Government or a state government, including but not limited to the Army, Navy, Air Force, Marines, Coast Guard, National Guard, or any reserve unit thereof?  If so, state the following:

    a.   the military branch of which you were a member, your serial number and the highest rank you ever held;

    b.   the beginning and ending dates of your military service;

    c.   the type of discharge you received;

    d.   your veteran's administration number;

    e.   each location (for example, facility, base name, city, and state) where you worked or lived while in the military;

    f.   each job title you held while in the military and the dates you held that title;

    g.   a description of your work responsibilities while in the military, including but not limited to the date(s) you had these responsibilities and the location where you worked;

    h.   whether you were given a physical examination that included x-rays before you entered the service and if so, the date and results of any exam;

    i.   whether you were given a physical examination that included x-rays upon leaving the service, and if so, the date and results of the exam;

    j.   a description of any disciplinary action or reprimand you were subject to; and

    k.   whether you receive or have received any pension.

INTERROGATORY NO. 2: If you received or participated in any technical or vocational training during your military service, state the type of training received and the length of training period.

INTERROGATORY NO. 3: If you have served in the military, state whether you sustained any type of injury or were ill while in the military service, and, if so, set forth:

    a.   the date of injury or illness;

    b.   the cause and/or diagnosis of the injury or illness;

    c.   whether you received medical treatment for the injury or illness;

    d.   the identity of the examining or treating physician or facility;

    e.   whether you are presently under treatment for any physical or mental condition attributed to the injury or illness; and

    f.   whether you missed duty time as a result of the injury or illness.

INTERROGATORY NO. 4: If you have served in the military, state whether, during, your military service, you were ever exposed to any biological warfare agents, pesticides, or herbicides or radiation, and, if so, set forth:

    a.   the dates of exposure;

    b.   the identity of the substance to which you were exposed;

    c.   whether you were supplied any equipment to protect you from such exposure;

    d.   whether you were issued a dosimeter while being exposed to the substance;

    e.   whether you received medical treatment for the exposure;

    f.   the identity of the examining or treating physician or facility;

    g.   whether you are presently under treatment for any physical or mental condition attributed to the exposure; and

    h.   whether you missed duty time as a result of the exposure.

- 6 -

INTERROGATORY NO. 5: Identify each job site where you have ever worked that has owned, maintained, and/or operated by the federal government or any branch, division or agency thereof, including but not limited to federal office buildings, federal courthouses, federal prisons, post offices, military installations, military bases, hospitals, or embassies.  Include in your response the following information:

    a.   the name of each job site that was owned, maintained, or operated by the federal government or any branch, division or agency thereof;

    b.   the beginning and ending dates when you worked at each job site that was owned, maintained, or operated by the federal government or any branch, division or agency thereof;

    c.   the location of each job site that was owned, maintained, or operated by the federal government or any branch, division or agency thereof;

    d.   the identity of the government branch, division or agency that maintained or operated each job site identified in response to this Interrogatory; and,

    e.   a description of the work you performed at each job site that was owned, maintained, or operated by the federal government or any branch, division or agency thereof.

INTERROGATORY NO. 6: Set forth and itemize the total amount of all medical, hospital, funeral and burial expenses, and lost earnings of the decedent allegedly resulting from the wrongful acts or omissions alleged in this lawsuit.  For each item, include the following information:

    a.   the identity of the person or entity to whom each expense was paid or is owed.

    b.   the date each expense was incurred;

    c.   a brief description of the purpose of the expense;

    d.   whether the expense has been paid either wholly or in part; and

    e.   the identity of the person or entity who has paid the expense, if applicable.

<u>INTERROGATORY NO. 7:</u> Did the decedent have any dependents in addition to those listed on his or her federal or state income tax return?  If so, for all such individuals you allege were dependents, provide the following information:

    a.   the identity of each dependant;

    b.   each dependant's date of birth;

    c.   each dependant's educational and/or employment status;

    d.   a description of the nature of the dependency [i.e., surviving spouse, minor child, etc.];

    e.   whether each dependency was complete or partial; and

    f.   for any partial dependency, describe the extent to which the decedent was obligated to provide financial support.

<u>INTERROGATORY NO. 8:</u> For each and every worksite where the plaintiff-decedent was supposedly exposed to alleged asbestos-containing products, identify all supervisors, co-workers or witnesses present during said exposure including each individual's last known address and job title and/or job description.

        RESPECTFULLY SUBMITTED this the _____ day of JULY, 2004.

            FORMAN, PERRY, WATKINS, KRUTZ & TARDY, LLP

            _____

            JENNIFER M. STUDEBAKER MSBN 10433

            JONATHAN K. HUTH, MSBN 100084

            JOHN C. MCCANTS III, MSBN 100031

            ATTORNEYS FOR SEVERAL DEFENDANTS

OF COUNSEL:

FORMAN PERRY WATKINS KRUTZ & TARDY, LLP
One Jackson Place, Suite 200
188 East Capitol Street
Post Office Box 22608
Jackson, MS 39225-2608
(601) 960-8600

## CERTIFICATE OF SERVICE

I, the undersigned attorney, on behalf of Several Defendants, do hereby certify that I have served by United States mail, postage prepaid, a true and correct copy of the above and foregoing document, to Plaintiffs' counsel of record and have provided written notice of such service to all other known counsel of record.

This, the _____ day of JULY, 2004.

_____

JOHN C. MCCANTS, III

## CERTIFICATE OF SERVICE

I, the undersigned attorney, on behalf of Several Defendants, do hereby certify that I have served by United States mail, postage prepaid, a true and correct copy of the above and foregoing document, to Plaintiffs' counsel of record and have provided written notice of such service to all other known counsel of record.

This, the _15_ day of JULY, 2004.

JOHN C. MCCANTS, III

JANET HOCKLEY, etc., vs. METROPOLITAN LIFE INSURANCE CO.,
et al.
CIRCUIT COURT OF COPIAH COUNTY, MISSISSIPPI
CASE NO. 2004-0116
<u>SERVICE LIST</u>

Louis H. Watson, Jr., Esq.
C. Maison Heidelberg, Esq.
Watson & Heidelberg, P.A.
520 E. Capitol Street
Jackson, Mississippi 39201
(601) 968-0000; FAX (601) 968-0010
ATTORNEYS FOR PLAINTIFFS

John Arthur Eaves, Esq.
Eaves Law Firm
101 North State Street
Jackson, MS   39201
(601) 355-7961; FAX (601) 355-0530
ATTORNEYS FOR PLAINTIFFS

Donald H. Carlson, Esq.
Robert Bull, Esq.
John R. Pendergast, Jr., Esq.
Crivello, Carlson, Mentkowski & Steeves, S.C.
710 North Plankinton Avenue
Milwaukee, Wisconsin 53203
FAX (414) 271-4438
ATTORNEYS FOR A. O. SMITH CORPORATION

Alben N. Hopkins, Esq.
Hopkins, Barvié & Hopkins, PLLC
2701 24th Avenue (39501-4941)
Post Office Box 1510
Gulfport, MS 39502-1510
(228) 864-2200; FAX (228) 868-9358
ATTORNEY FOR A.O. SMITH CORPORATION; GENERAL CABLE
CORP.;
RILEY-STUART SUPPLY CO., INC.; NASH ENGINEERING;
S.B. DECKING f/k/a SELBY, BATTERSBY & COMPANY;
UNITED STATES STEEL LLC, successor to USX CORPORATION;
USX CORPORATION; BACOU DALLOZ SAFETY f/k/a DALLOZ
SAFETY, INC.,
f/k/a WGM SAFETY CORPORATION; GOODRICH CORPORATION

**f/k/a B.F. GOODRICH COMPANY**

Christopher A. Shapley, Esq.
Cheri D. Green, Esq.
Brunini, Grantham, Grower & Hewes
1400 Trustmark Building
248 East Capitol Street (39201)
Post Office Drawer 119
Jackson, MS 39205-0119
(601) 948-3101; FAX (601) 960-6902
**ATTORNEYS FOR APV HOMOGENIZER, INC.; ARVIN MERITOR, INC.;**
**IMO INDUSTRIES, INC.; INVENSYS, PLC; FERRO CORPORATION; THE FOXBORO COMPANY; EDWARD VOGT VALVE; ALLEN-BRADLEY COMPANY; REUNION INDUSTRIES, INC.; ROCKWELL INTERNATIONAL;**
**COLFAX CORPORATION; RELIANCE ELCTRIC**

Robert Gibbs, Esq.
La'Verne Edney, Esq.
Brunini, Grantham, Grower & Hewes
1400 Trustmark Building
248 East Capitol Street (39201)
Post Office Drawer 119
Jackson, MS 39205-0119
(601) 948-3101; FAX (601) 960-6902
**ATTORNEYS FOR A.W. CHESTERTON COMPANY**

D. Drew Malone, Esq.
Richard Edmonson, Esq.
Frederick Salvo, Esq.
Armstrong Allen
Post Office Box 14028
Jackson, MS 39236-4028
(601) 713-6334; FAX (601) 713-9488
**ATTORNEYS FOR AEROFIN CORPORATION; AMPCO-PITTSBURGH CORPORATION**

Robert W. Wilkinson, Esq.
Dogan, Wilkinson, Kinard, Smith & Edwards
734 Delmas Avenue (39567)
Post Office Box 1618
Pascagoula, MS 39568-1618
(228) 762-2272; FAX (228) 762-3223
**ATTORNEY FOR AJAX BOILER, INC.; WHEELER PROTECTIVE**

APPAREL, INC.;
SCOTT TECHNOLOGIES; BEAZER EAST, INC.; TENNECO
AUTOMOTIVE, INC.; CARVER PUMP CO.; WAUKESHA FOUNDRY
COMPANY;
STRAHMAN VALVES, INC.; CRANE CO.

Ronald G. Peresich, Esq.
Michael E. Whitehead, Esq.
Mark Edwards, Esq.
Page, Mannino, Peresich & McDermott
759 Vieux Marché Mall (39530)
Post Office Drawer 289
Biloxi, MS  39533
(228) 374-2100; FAX (228) 374-3838
ATTORNEYS FOR ALBANY INTERNATIONAL CORP.; U.C. REALTY,
INC.;
KELLY-MOORE PAINT COMPANY; AMERICAN STANDARD INC.;
PLASTICS ENGINEERING; TEXTRON, INC.; ECLIPSE, INC.;
H.H. ROBERTSON CO. (ROBERTSON-CECO) ; DOW CHEMICAL
COMPANY;
SAINT-GOBAIN ABRASIVES, INC. f/k/a NORTON COMPANY;
MET-PRO CORPORATION; WEAKS ENTERPRISES, INC.;
CHAMPION INTERNATIONAL CORP.; ALCO INDUSTRIES

Jeffrey P. Hubbard, Esq.
Charles R. Wilbanks, Esq.
Wells, Moore, Simmons & Hubbard, PLLC
4450 Old Canton Road, Suite 200 (39211)
Post Office Box 1970
Jackson, MS  39215-1970
(601) 354-5400; FAX (601) 355-5850
ATTORNEYS FOR ALLEGHENY-YORK COMPANY;
ATLANTIC RICHFIELD COMPANY, INC.;
FMC CORPORATION; CNA HOLDINGS, INC.;
FLOWSERVE CORPORATION (DURIRON); ANCHOR DARLING VALVE
COMPANY; FLOWSERVE ANCHOR DARLING OPERATIONS;
MAREMONT CORP.;
GENERAL DYNAMICS CORP.; TRW, INC.

Darren M. Guillot, Esq.
Corina E. Salazar, Esq.
Abbott, Simses & Kuchler
201 E. Capitol Street, Suite 710
Jackson, MS   39201
(601) 352-9393; FAX (601) 352-9066

**ATTORNEYS FOR E.I. du PONT de NEMOURS & COMPANY; CYTEC FIBERITE, INC.; CYTEC INDUSTRIES, INC.**

Patrick R. Buchanan, Esq.
Brown Buchanan Sessoms, PA
669 Water Street (39530)
Post Office Box 1377
Biloxi, MS   39533-1377
(228) 374-2999; FAX (228) 435-7090

**ATTORNEY FOR AMERICAN PRECISION INDUSTRIES; AQUA CHEM, INC.; DANAHER CORPORATION, SUCCESSOR TO DELEVAN CORP.; VEEDER-ROOT COMPANY, INC.**

James P. Streetman, III, Esq.
Wade Manor, Esq.
Scott, Sullivan, Streetman & Fox, P.C.
725 Avignon Drive
Ridgeland, MS   39157
(601) 607-4800; FAX (601) 607-4801

**ATTORNEYS FOR AMERICAN OPTICAL CORPORATION; WATTS INDUSTRIES, INC.; PFIZER, INC.**

Thomas W. Tyner, Esq.
Daphne Lancaster, Esq.
Aultman, Tyner & Ruffin, Ltd.
315 Hemphill Street (39401)
Post Office Drawer 750
Hattiesburg, MS 39403-0750
(601) 583-2671; FAX (601) 583-2677

**ATTORNEYS FOR ANCHOR PACKING COMPANY; GARLOCK, INC.; BORG WARNER CORP.; GULF BELTING AND GASKET CO.; CONGOLEUM CORPORATION; DWYER INSTRUMENTS, INC.; FAIRBANKS MORSE PUMP CORPORATION; COLTEC INDUSTRIES, INC.; MARLEY PUMP COMPANY; THE QUAKER OATS COMPANY; ATOFINA CHEMICALS, INC.; THE MARLEY COMPANY; CHAMPLAIN CABLE**

Joe E. Basenberg, Esq.
Hand Arendall
3000 AmSouth Bank Building
107 St. Francis Street
Post Office Box 123
Mobile, AL   36601
(251) 432-5511; FAX (251) 694-6375

**ATTORNEY FOR ANCO INSULATIONS, INC.; GRAYBAR ELECTRIC COMPANY**

Paige C. Jones, Esq.
Phelps Dunbar, LLP
Post Office Box 23066
Jackson, MS  39225-3066
(601) 352-2300; FAX (601) 360-9777

**ATTORNEY FOR ANDERSON GREENWOOD & CO.; WILLIAM POWELL CO.;**
**ICI AMERICAS; GRINNELL FIRE PROTECTION; GRINNELL CO., INC.; GRINNELL CORPORATION**

Walter W. Dukes, Esq.
Dukes, Dukes, Keating and Faneca
2909 13th Street, 6th Floor (39501)
Post Office Drawer W
Gulfport, MS  39502
(228) 868-1111; FAX (228) 864-3840

**ATTORNEY FOR MARTINDALE ELECTRIC CO.; GOODYEAR TIRE & RUBBER CO.;**
**SEPCO CORPORATION; FURON CO.; MILTON ROY COMPANY; GENERAL PLASTICS CORP.**

Meade Mitchell, Esq.
Robert A. Miller, Esq.
Phil Abernathy, Esq.
Butler, Snow, O'Mara, Stevens & Cannada
1700 Deposit Guaranty Plaza
210 East Capitol Street (39201)
Post Office Box 22567
Jackson, MS  39225-2567
(601) 948-5711; FAX (601) 985-4500

**ATTORNEYS FOR ARMSTRONG INTERNATIONAL; AMERICAN CYANAMID CO.; AMERON INTERNATIONAL CORPORATION**

Patricia Gandy, Esq.
Butler, Snow, O'Mara, Stevens & Cannada
1700 Deposit Guaranty Plaza
210 East Capitol Street (39201)
Post Office Box 22567
Jackson, MS  39225-2567
(601) 948-5711; FAX (601) 985-4500

**ATTORNEYS FOR HAMMERMILL PAPER CO. - MANNING PAPER DIVISION**

Lucien C. Gwin, Jr., Esq.
Gwin, Lewis & Punches
319 Market Street (39120)
Post Office Box 1344
Natchez, MS 39121
(601) 446-6621; (601) 442-6175 FAX
**ATTORNEY FOR ASARCO, INC.**

Robert P. Thompson, Esq.
Lyn B. Dodson, Esq.
Copeland, Cook, Taylor & Bush
200 Concourse, Suite 200
1062 Highland Colony Parkway (39157)
Post Office Box 6020
Ridgeland, MS 39158
(601) 856-7200; FAX (601) 856-7626
**ATTORNEYS FOR ASCO VALVE; EMERSON ELECTRIC CO.;
FISHER CONTROLS INTERNATIONAL, INC.; APPLETON
ELECTRIC/APPLETON MACHINE CO.**

Monte Barton, Esq.
Copeland, Cook, Taylor & Bush
200 Concourse, Suite 200
1062 Highland Colony Parkway (39157)
Post Office Box 6020
Ridgeland, MS 39158
(601) 856-7200; FAX (601) 856-7626
**ATTORNEYS FOR CHAMPION AIR COMPRESSORS**

Raymond L. Brown, Esq.
Patrick R. Buchanan, Esq.
Brown Buchanan Sessoms, PA
669 Water Street (39530)
Post Office Box 1377
Biloxi, MS 39533-1377
(228) 374-2999; FAX (228) 435-7090
**ATTORNEYS FOR ATLAS COPCO COMPRESSORS, INC.**

Lawrence G. Pugh, III, Esq.
Montgomery, Barnett, Brown, Read, Hammond & Mintz
3200 Energy Centre
1100 Poydras Street
New Orleans, LA  70163-3200
(504) 585-7667; FAX (504) 585-7688
**ATTORNEYS FOR ATLAS COPCO COMPRESSORS, INC.;
GOULDS PUMPS TRADING CORP.; SPENCE ENGINEERING CO.,
INC.;
CIRCOR INTERNATIONAL, INC.; LESLIE CONTROLS, INC.**

Nick Roberts, Esq.
Montgomery, Barnett, Brown, Read, Hammond & Mintz
203 North Court One
2304 19th Street
Gulfport, MS   39501
(228) 863-8894; FAX (228) 863-9308
**ATTORNEY FOR SPENCE ENGINEERING CO., INC.;
CIRCOR INTERNATIONAL, INC.; LESLIE CONTROLS, INC.**

C. Michael Evert, Jr., Esq.
Evert & Weathersby, LLC
3405 Piedmont Road, Suite 225
Atlanta, GA  30305
(404) 233-8718; FAX (404) 233-8933
**ATTORNEY FOR VIACOM, successor to CBS CORPORATION,
f/k/a WESTINGHOUSE ELECTRIC CORP.**

Roy C. Williams, Esq.
Colingo, Williams, Heidelberg, Steinberger & McElhaney
711 Delmas Avenue (39567)
Post Office Drawer 1407
Pascagoula, MS  39568-1407
(228) 762-8021; FAX (228) 762-7589
**ATTORNEY FOR VIACOM, successor to CBS CORPORATION, f/k/a
WESTINGHOUSE ELECTRIC CORP.; BEAIRD INDUSTRIES, INC.;
NOOTER CORPORATION, INC.**

James O. Dukes, Esq.
Karen Sawyer, Esq.
Bryant, Clark, Dukes, Blakeslee, Ramsay & Hammond, PLLC
2223 14th Street (39501)
Post Office Box 10
Gulfport, MS  39502-0010
(228) 863-6101; FAX (228) 868-9077
**ATTORNEY FOR SAMES CORPORATION**
**f/k/a BINKS MANUFACTURING COMPANY**

Matthew F. Powers, Esq.
Samson & Powers
2400 13th Street (39501)
Post Office Box 1417
Gulfport, Mississippi   39502
(228) 822-1109; FAX (228) 822-2317
**ATTORNEY FOR BIRD INCORPORATED**

Bruce M. Kuehnle, Jr., Esq.
322 Main Street (39120)
Post Office Box 866
Natchez, MS   39122-0866
(601) 442-2733; FAX (601) 442-4085
**ATTORNEY FOR BRIDGESTONE/FIRESTONE, INC;**
**FIRESTONE TIRE & RUBBER CO.**

Patricia Gandy, Esq.
Phil Abernathy, Esq.
Butler, Snow, O'Mara, Stevens & Cannada
1700 Deposit Guaranty Plaza
210 East Capitol Street (39201)
Post Office Box 22567
Jackson, MS  39225-2567
(601) 948-5711; FAX (601) 985-4500
**ATTORNEYS FOR BRIDGESTONE/FIRESTONE, INC.;**
**FIRESTONE TIRE & RUBBER CO.**

Susan Coco, Esq.
Montague, Pittman & Varnado
Post Office Drawer 1975
Hattiesburg, MS  39403-1975
(601) 544-1234; FAX (601) 544-1280
**ATTORNEY FOR THE BUDD COMPANY**

William C. Reeves, Esq.
Smith Reeves & Yarborough, PLLC
6360 I-55 North, Suite 330 (39211)
Post Office Box 13469
Jackson, MS  39236-3469
(601) 965-7200; FAX (601) 977-9299
**ATTORNEY FOR CARLISLE COMPANIES INCORPORATED;
RILEY-STOKER CORPORATION; D.B. RILEY, f/k/a RILEY-STOKER
CORPORATION; OCCIDENTAL PETROLEUM CORP.; MCKESSON
CORPORATION;
OCCIDENTAL CHEMICAL CORP.; WICKES, INC.;
SIEMENS BUILDING TECHNOLOGIES, INC.**

Richard F. Yarborough, Jr., Esq.
Smith Reeves & Yarborough, PLLC
6360 I-55 North, Suite 330 (39211)
Post Office Box 13469
Jackson, MS  39236-3469
(601) 965-7200; FAX (601) 977-9299
**ATTORNEY FOR ASHLAND OIL, INC.; REICHHOLD, INC.; TEXACO;
ASHLAND, INC. a/k/a ASHLAND CHEMICAL COMPANY;
EXXON/MOBIL CORP.**

John H. Hainkel, III, Esq.
Frilot, Partridge, Kohnke & Clements, L.C.
3600 Energy Centre
1100 Poydras Street
New Orleans, Louisiana   70163-3600
(504) 599-8121; FAX (504) 599-8100
**ATTORNEY FOR CARLISLE COMPANIES INCORPORATED**

John G. Corlew, Esq.
Richard T. Lawrence, Esq.
Michael O. Gwin, Esq.
Louis B. Lanoux, Esq.
Watkins & Eager, PLLC
400 East Capitol Street, Suite 300 (39201)
Post Office Box 650
Jackson, MS  39205-0650
(601) 948-6470; FAX (601) 354-3623
**ATTORNEYS FOR CHEVRON TEXACO CORP.; SHELL OIL COMPANY;**

**PHILLIPS PETROLEUM COMPANY; SUNOCO, INC. (R&M)**

James H. Bolin, Esq.
Butler, Snow, O'Mara, Stevens & Cannada
1700 Deposit Guaranty Plaza
210 East Capitol Street (39201)
Post Office Box 22567
Jackson, MS 39225-2567
(601) 948-5711; FAX (601) 985-4500
**ATTORNEY FOR CHICAGO METAL HOSE/SENIOR FLEXONICS**

W. Lee Watt, Esq.
Brunini Grantham Grower & Hewes
1710 Jackson Avenue (39567)
Post Office Drawer 210
Pascagoula, MS 39568-0210
(228) 696-0044; FAX (228) 696-0223
**ATTORNEY FOR COPES-VULCAN, INC.;**
**SPIRAX-SARCO, INC.; WHITE CONSOLIDATED INDUSTRIES, INC.**

Kaye N. Courington, Esq.
Duncan, Courington & Rydberg, LLC
400 Poydras Street, Suite 1200
New Orleans, Louisiana 70130
(504) 524-5566; FAX (504) 524-7887
**ATTORNEYS FOR HOPEMAN BROTHERS, INC. successor to WAYNE**
**MANUFACTURING CORP.; CROWN BEVERAGE PACKAGING, INC.**
**f/k/a CONTINENTAL CAN COMPANY**

Michael Bartley, Esq.
Copeland, Cook, Taylor & Bush
200 Concourse, Suite 200
1062 Highland Colony Parkway (39157)
Post Office Box 6020
Ridgeland, MS 39158
(601) 856-7200; FAX (601) 856-7626
**ATTORNEY FOR COOPER TURBO COMPRESSOR; COOPER**
**INDUSTRIES, INC.**

Frank G. Harmon, III, Esq.
3300 Two Houston Center
Houston, Texas 77010
(713) 658-2323; (713) 655-7287 FAX
**ATTORNEY FOR CROWN CORK & SEAL COMPANY, INC.**

Minor C. Sumners, Jr., Esq.
1907 Dunbarton Drive, Suite F
Jackson, MS  39216
(601) 362-8058; (601) 366-7498   FAX
**ATTORNEY FOR CROWN CORK & SEAL COMPANY, INC.**

Michael N. Watts, Esq.
Mark Smith, Esq.
Holcomb Dunbar
1217 Jackson Avenue
Post Office Drawer 707
Oxford, MS    38655-0707
(662) 234-8775; FAX (662) 238-7552
**ATTORNEYS FOR CROWN CORK & SEAL COMPANY, INC.;
BAKER HUGHES INCORPORATED**

Steven B. Witman, Esq.
Two Lakeway Center, Suite 1960
3850 North Causeway Boulevard
Metairie, LA   70002
(504) 836-2200; FAX (504) 836-2201
**ATTORNEY FOR DIXIE MILL SUPPLY COMPANY, INC.**

David A. Barfield, Esq.
Kimberly Wallace, Esq.
Barfield & Associates
233 East Capitol Street (39201)
Post Office Drawer 3979
Jackson, Mississippi  39207-3979
(601) 968-9420; FAX (601) 968-9425
**ATTORNEYS FOR MOBIL OIL CORP.**

David W. Dogan, III, Esq.
David L. Trewolla, Esq.
Dogan, Wilkinson, Kinard, Smith & Edwards
Post Office Box 23062
Jackson, MS  39225-3062
(601) 351-3200; FAX (601) 351-3232
**ATTORNEYS FOR FLINTKOTE CO.; DURABLA, INC.; H.B. FULLER
COMPANY**

Steve A. Bryant, Esq.
Steve A. Bryant & Associates, P.C.
3618 Mt. Vernon
Houston, TX 77006
(713) 526-7474; FAX (713) 526-7720
**ATTORNEY FOR E.D. BULLARD COMPANY**

Richard M. Truly, Esq.
116 Expero Drive
Natchez, MS 39120
(601) 445-8192; FAX (601) 442-4874
**ATTORNEY FOR E. D. BULLARD COMPANY**

Glenn L.M. Swetman, Esq.
Robert P. Vining, Esq.
Aultman, Tyner & Ruffin, Ltd.
The Texaco Center
400 Poydras Street, Suite 1900
New Orleans, LA 70130
(504) 528-9616; FAX (504) 528-9640
**ATTORNEYS FOR ELLIOTT TURBOMACHINERY CORP.**

Richard P. Sulzer, Esq.
Robert E. Williams, IV, Esq.
Sulzer & Williams, L.L.C.
201 Holiday Boulevard, Suit 335
Covington, Louisiana 70433
(985) 898-0608; FAX (985) 898-0871
**ATTORNEYS FOR ELLIOTT TURBOMACHINERY CORP.**

James L. Jones, Esq.
Baker Donelson Bearman & Caldwell, P. C.
Meadowbrook Office Park
4268 I-55 North (39211)
Post Office Box 14167
Jackson, MS 39236
(601) 351-2400; FAX (601) 974-8926
**ATTORNEY FOR ENGELHARD HANOVIA, INC.**

James N. Bullock, Esq.
Shell Buford
660 Lakeland Drive, Suite 202 (39208)
Post Office Box 157
Jackson, MS   392205-0157
(601) 932-4118; FAX (601) 932-4860
**ATTORNEY FOR THE FALK CORPORATION; SUNDYNE**
**CORPORATION; HAMILTON SUNDSTRAND COMPANIES**

Thomas E. Vaughn, Esq.
Allen, Vaughn, Cobb & Hood, P.A.
One Hancock Plaza, 12th Floor (39501)
Post Office Drawer 4108
Gulfport, MS  39502-4108
(228) 864-4011; FAX (228) 864-4852
**ATTORNEY FOR INDRESCO, INC.; FOSTER-WHEELER**
**CORPORATION;**
**LOUIS M. GERSON COMPANY**

Thomas W. Tyner, Esq.
Christopher O. Massenburg, Esq.
Aultman, Tyner & Ruffin, Ltd.
315 Hemphill Street (39401)
Post Office Drawer 750
Hattiesburg, MS  39403-0750
(601) 583-2671; FAX (601) 583-2677
**ATTORNEYS FOR GARFIELD MANUFACTURING COMPANY;**
**HERCULES INCORPORATED;**
**AMETEK, INC. AS SUCCESSOR TO HAVEG INDUSTRIES**

J. Price Coleman, Esq.
Robert M. Arentson, Jr., Esq.
Baker Donelson Bearman & Caldwell, P. C.
Meadowbrook Office Park
4268 I-55 North (39211)
Post Office Box 14167
Jackson, MS  39236
(601) 351-2400; FAX (601) 974-8926
**ATTORNEYS FOR GENERAL REFRACTORIES COMPANY; GREFCO,**
**INC.;**
**RAPID-AMERICAN CORPORATION**

Richard L. Yoder, Esq.
Gilchrist, Sumrall, Thaxton, Yoder & Boone
415 N. Magnolia Street, Suite 400 (39440)
Post Office Box 106
Laurel, MS   39441-0106
(601) 649-3351; (601) 426-9625   FAX
**ATTORNEY FOR HARWICK CHEMICAL MANUFACTURING CO.**

Karl Steinberger, Esq.
Colingo, Williams, Heidelberg, Steinberger & McElhaney
711 Delmas Avenue (39567)
Post Office Drawer 1407
Pascagoula, MS 39568-1407
(228) 762-8021; FAX (228) 762-7589
**ATTORNEY FOR MISSISSIPPI RUBBER & SPECIALTY CO., INC.;**
**INDUSTRIAL RUBBER & SPECIALTY CO., INC.,**
**f/k/a COASTAL RUBBER & GASKET CO.**

Carey R. Varnado, Esq.
Montague, Pittman & Varnado
Post Office Drawer 1975
Hattiesburg, MS 39403-1975
(601) 544-1234; FAX (601) 544-1280
**ATTORNEY FOR JOHN CRANE, INC.; ANDRITZ, INC.**

Justin L. Matheny, Esq.
Phelps Dunbar, LLP
Post Office Box 23066
Jackson, MS 39225-3066
(601) 352-2300; FAX (601) 360-9777
**ATTORNEY FOR KEYSTONE INTERNATIONAL, INC.;**
**KEYSTONE VALVE U.S.A., INC.**

George H. Ritter, Esq.
Wise, Carter, Child & Caraway
600 Heritage Building
401 East Capitol Street (39201)
Post Office Box 651
Jackson, MS   39205-0651
(601) 968-5500; FAX (601) 968-5519
**ATTORNEY FOR LAMONS METAL GASKET COMPANY**

John E. Wade, Esq.
T. Stewart Lee, Esq.
Brunini Grantham Grower & Hewes
1400 Trustmark Building
248 East Capitol Street (39201)
Post Office Drawer 119
Jackson, MS   39205-0119
(601) 948-3101; FAX (601) 960-6902
**ATTORNEYS FOR LIMITORQUE CORPORATION**

John A. Smyth, III, Esq.
Maynard, Cooper & Gale, PC
AmSouth/Harbert Plaza, Suite 2400
1901 Sixth Avenue North
Birmingham, AL   35203-2618
(205) 254-1000; (205) 254-1999 FAX
**ATTORNEY FOR THE MEAD CORPORATION;
MANCHESTER TANK & EQUIPMENT CO.**

John H. Holloman, III, Esq.
Watkins, Ludlam, Winter & Stennis
633 North State Street (39202)
Post Office Box 427
Jackson, MS  39205-0427
(601) 949-4900; FAX (601) 949-4804
**ATTORNEY FOR METALLO GASKET CO.**

Barry W. Ford, Esq.
Baker Donelson Bearman & Caldwell, P. C.
Meadowbrook Office Park
4268 I-55 North (39211)
Post Office Box 14167
Jackson, MS  39236
(601) 351-2400; FAX (601) 974-8926
**ATTORNEY FOR 3M COMPANY, f/k/a MINNESOTA MINING AND
MANUFACTURING COMPANY**

Kathryn Jude, Esq.
Jude & Jude, PLLC
6424 Highway 98 West, Suite 50
Post Office Box 17468
Hattiesburg, MS  39404-7468
(601) 579-8411; FAX (601) 579-8461
**ATTORNEYS FOR THE OGLEBAY NORTON CO.**

Paul V. Cassisa, Sr., Esq.
Stephen N. Elliott, Esq.
Eugene M. McEachin, Jr., Esq.
Ann M. Sico, Esq.
Bernard, Cassisa, Elliott & Davis
1615 Metairie Road
Post Office Box 55490
Metairie, LA 70055-5490
(504) 834-2612; FAX (504) 838-9438
**ATTORNEYS FOR REILLY-BENTON COMPANY, INC.**

Mark W. Garriga, Esq.
Butler, Snow, O'Mara, Stevens & Cannada
1700 Deposit Guaranty Plaza
210 East Capitol Street (39201)
Post Office Box 22567
Jackson, MS 39225-2567
(601) 948-5711; FAX (601) 985-4500
**ATTORNEYS FOR STEBBINS ENGINEERING AND MANUFACTURING CO.**

David K. Groome, Esq.
Hailey, McNamara, Hall, Larmann & Papale, LLP
One Galleria Boulevard, Suite 1400
Post Office Box 8288
Metairie, LA   70011-8288
(504) 836-6500; FAX (504) 836-6565
**ATTORNEY FOR TAYLOR-SEIDENBACH, INC.**

Reeve G. Jacobus, Jr., Esq.
Williford, McAllister & Jacobus, LLP
303 Highland Park Cove, Suite A
Ridgeland, MS   39157
(601) 991-2000; FAX (601) 991-0859
**ATTORNEY FOR THOMAS AND BETTS CORP.**

John W. Robinson, III, Esq.
Phelps Dunbar, LLP
Post Office Box 23066
Jackson, MS 39225-3066
(601) 352-2300; FAX (601) 360-9777
**ATTORNEY FOR TYCO INTERNATIONAL, LTD.**

Robert C. Galloway, Esq.
Butler, Snow, O'Mara, Stevens & Cannada
Post Office Drawer 4248
Gulfport, Mississippi   39502
(228) 864-1170; FAX (228) 868-1531
**ATTORNEY FOR WHITTAKER, CLARK & DANIELS, INC.; BORDEN, INC.**

Sheila M. Bossier, Esq.
Bossier Kitchens, PLLC
1520 North State Street (39202)
Post Office Box 55567
Jackson, MS   39296
(601) 352-5450; FAX (601) 352-5452
**ATTORNEY FOR WEIL-McLAIN**

Robert Redfearn, Jr., Esq.
Simon, Peragine, Smith & Redfearn
Markham Building, Suite 600
2301 14th Street
Gulfport, MS   39501
(228) 867-6277; FAX (228) 867-6227
**ATTORNEY FOR CLARK-RELIANCE CORP.**

Eric Hatten, Esq.
Burr & Forman LLP
210 East Capitol Street, Suite 2120
Jackson, MS   39201
(601) 355-3434; FAX (601) 355-5150
**ATTORNEY FOR BRICE BUILDING COMPANY**

Edward J. Currie, Jr., Esq.
Kristi D. Kennedy, Esq.
Currie, Johnson, Griffin, Gaines & Myers
315 Tombigbee Street (39201)
Post Office Box 750
Jackson, MS  39205-0750
(601) 969-1010; (601) 969-5120 FAX
**ATTORNEYS FOR HONEYWELL INTERNATIONAL, INC.,
SUCCESSOR TO ALLIEDSIGNAL INC., SUCCESSOR TO BENDIX
CORPORATION**

Scott B. Ostrow, Esq.
Wyatt, Tarrant & Combs, LLP
1715 Aaron Brenner Drive, Suite 800
Memphis, TN    38120
(901) 537-1000; FAX (901) 537-1010
**ATTORNEY FOR HENRY VOGT MACHINE CO.**

M. Scott Minyard, Esq.
Baker Donelson Bearman, Caldwell & Berkowitz, PC
Meadowbrook Office Park
4268 I-55 North (39211)
Post Office Box 14167
Jackson, MS  39236
(601) 351-2400; FAX (601) 974-8926
**ATTORNEY FOR MINSTAR, INC.**

Richard L. Forman, Esq.
Walter G. Watkins, Jr., Esq.
Fred Krutz, Esq.
Thomas W. Tardy, III, Esq.
Forman, Perry, Watkins, Krutz & Tardy LLP
Post Office Box 22608
Jackson, Mississippi 39225-2608
(601) 960-8600; FAX (601) 960-8613
**ATTORNEYS FOR ROBBINS & MYERS, INC., et al**

UNKNOWN COUNSEL
A.C.F. Valves
API Delevan, Inc.
API Heat Transfer, Inc.
Cadillac Plastic Group, Inc.
Gilbarco, Inc.
Invensys Metering Systems - North America, Inc.
Layne Christensen Co.

Preferred Utilities Mfg. Corp.
RA Products, Inc. o/b/o Dayco Corp. and Cadillac Plastics Co.
Schweitzer-Maruduit International
Swagelok