

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

SEP 3 0 2004

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| In re ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI) | ) ) | **MDL No. 875** |
|     **Conditional Transfer Order – 235** | ) | |
|     *Silas David Benfield, et al. v. Daniel International, Co.,* | ) | |
|     *et. al.,* Case No. 5:04 CV 47 (USDC WDNC) | ) | |

**PLEADING NO. 4255**

## PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER-235

Pursuant to Rule 7.4(d) of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation</u>, Plaintiffs in the above referenced action file this Motion to Vacate Conditional Transfer Order-235, and in support say:

On August 27, 2004, the Judicial Panel on Multidistrict Litigation issued Conditional Transfer Order-235 ("CTO-235"), transferring the above captioned matter, *Silas David Benfield, et al. v. Daniel International, Co., et. al.,* Case No. 5:04 CV 47 (USDC WDNC), to the Eastern District of Pennsylvania to be included in the multidistrict asbestos product liability litigation. Plaintiffs filed a timely Notice of Opposition to CTO-235.

Plaintiffs move to vacate CTO-235 as to the *Benfield* action because none of the interests ordinarily served by transferring actions to the multidistrict litigation will be served in this case. First, there is no risk of duplicative discovery efforts or inconsistent pretrial rulings because a significant amount of discovery that would have been conducted in *Benfield* has already been

IMAGED OCT - 1 '04

OFFICIAL FILE COPY

conducted in two separate, but related cases – *Robert F. Bost, et al. v. Fluor Daniel, Inc., et al.*, Case No. 3:98-CV-138, and *Vonnie K. Agner, et al. v. Fluor Daniel, Inc., et al.*, Case No. 3:98-CV-220 – both of which were recently remanded from the Eastern District of Pennsylvania to the Western District of North Carolina.

Second, after four years in the consolidated asbestos product liability litigation in the Eastern District of Pennsylvania, *Agner* and *Bost* were recently remanded to the transferor court because the parties, after substantial and significant attempts to negotiate settlement, were unable to settle the claims. Because all three cases (*Benfield*, *Agner* and *Bost*) involve the same defendants, the same counsel, and the same causes of action for asbestos-related exposures at the same Hoescht Celanese facility, it is highly unlikely that the claims in this case will be settled. Thus, transferring this case to the Eastern District of Pennsylvania will only frustrate the Panel's interest in judicial economy and efficient resolution of claims. Judicial economy would be best served if all three cases – *Agner*, *Bost* and *Benfield* – were disposed of in the Western District of North Carolina.

Finally, this action differs from the product liability actions pending in the Eastern District of Pennsylvania because Plaintiffs, here, have not sued manufacturers or distributors for an allegedly defective product. Rather, Plaintiffs are bystanders who were injured by the negligent conduct of construction and asbestos abatement contractors hired by the Plaintiffs' employer. Thus, the factual and legal issues in *Benfield* are significantly different than those at issue in the product liability actions pending in the Eastern District of Pennsylvania. For these reasons, transfer is not warranted. *Benfield* should remain in the Western District of North Carolina.

Pursuant to Rule 7.2 of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation</u>, Plaintiffs have set forth, in greater detail, the procedural background of the three cases and their arguments for vacating CTO-235 as to the Benfield action in an accompanying Memorandum of Law in Support of Plaintiffs' Motion to Vacate Conditional Transfer Order-235, which is being filed contemporaneously with this motion.

Pursuant to Rule 7.2(a)(ii), a Schedule of Actions is attached to this Motion.

WHEREFORE Plaintiffs in civil action *Silas David Benfield, et al. v. Daniel International, Co., et. al.*, Case No. 5:04 CV 47 (USDC WDNC), respectfully request that the Panel vacate Conditional Transfer Order—235 as to the *Benfield* action.

Respectfully submitted,

**WALLACE & GRAHAM, P.A.**
*Counsel for Plaintiffs Benfield, et al.*
525 North Main Street
Salisbury, NC 28144
Tel. (704) 633-5244
Fax. (704) 633-9434

Mona Lisa Wallace
NC State Bar No. 9021

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

SEP 3 0 2004

FILED
CLERK'S OFFICE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of September, 2004, true and correct copies

of the foregoing Motion to Vacate Conditional Transfer Order were served by U.S. mail to all

counsel listed on the attached Panel Service List.

**WALLACE & GRAHAM, P.A.**
*Counsel for Plaintiffs Benfield, et al.*
525 North Main Street
Salisbury, NC 28144
Tel. (704) 633-5244
Fax. (704) 633-9434

Mona Lisa Wallace
NC State Bar No. 9021

RECEIVED
CLERK'S OFFICE
2004 SEP 30 P 12: 39
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

## SCHEDULE OF ACTIONS

SEP 3 0 2004

FILED
CLERK'S OFFICE

**Case Name**:   *Silas David Benfield, et al. v. Daniel International, Co., et. al.*, Case No. 5:04 CV 47 (USDC WDNC).

**Judge**:   Lacy Thornburg

**Plaintiffs**:

Silas David Benfield

Betty Faye Benfield (spouse)

Robert Lee Baker

Dorothy Baker (spouse)

Larry Lamar Cain

Vera M. Cain (spouse)

Gene Wade Cobb

Doris Brumley Cobb (spouse)

Carson Arthur Curlee

Daniel Dudley Duganne

Norma Gail Duganne (spouse)

Charles Warren Fuller

Rachiel Atkinson Fuller (spouse)

William Jerry Hamby

Tony Calvin Heilig

Patricia Sain Heilig (spouse)

Alonzo Steven Hunter, Sr.

Rachel Steele Hunter (spouse)

Richard Leroy Kinter

Vivian Lee Allen Kinter (spouse)

Walter Lawrence Lanning

Vercie Lee Lanning (spouse)

Freddie Dee Lawrence

Mary Elizabeth Moore Lawrence (spouse)

Ralph Leonard Martin

Kathryn Novella Martin  (spouse)

Clifford Lewis Mccoy

Lee Olyoun Mccoy (spouse)

Thomas Gene Meade

Margaret Carol Hunt Meade (spouse)

Carl Maston Messick

Linda Nichols Messick (spouse)

Claude Robert Patterson

Mildred Lambert Patterson (spouse)

William Clarence Phelps, Jr.

Florence Rebecca Phelps (spouse)

Russell Lee Rice

Betty Lou Gobble Rice (spouse)

Christopher Lee Shupe

Sherlyn Blackwelder Shupe (spouse)

William Lowry Smith

Max Luther Thompson

Monica Brooks Thompson (spouse)

Louie Denver Watkins

Phyllis S. Watkins (spouse)

Coy Ray Wiles

Betty Sue Wiles (spouse)

**Defendants**:

Daniel International Corporation f/k/a Daniel Construction Company

Fluor Enterprises Inc. f/k/a Fluor Daniel, Inc.

Strategic Organizational Systems Environmental Engineering Division, Inc., f/d/b/a SOS International, Inc. and SOS Environmental, Inc.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

SEP 3 0 2004

FILED
CLERK'S OFFICE

### BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

In re ASBESTOS PRODUCTS LIABILITY LITIGATION )
(NO. VI)                                      )    **MDL No. 875**
    Conditional Transfer Order – 235            )
    *Silas David Benfield, et al. v. Daniel International, Co.,* )
    *et. al.,* Case No. 5:04 CV 47 (USDC WDNC)   )
                                                    )

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
### TO VACATE CONDITIONAL TRANSFER ORDER-235

Pursuant to Rules 7.2 and 7.4(d) of the <u>Rules of Procedure of the Judicial Panel on</u>

<u>Multidistrict Litigation</u>, Plaintiffs in the above referenced action file this Memorandum of Law in

Support of Plaintiffs' Motion to Vacate Conditional Transfer Order-235, and in support say:

### INTRODUCTION

While Plaintiffs recognize that the Panel on Multidistrict Litigation established, in the

Eastern District of Pennsylvania, a special docket for asbestos related claims for the purpose of

handling pretrial matters and promoting settlement, none of the Panel's interests will be served

by transferring the instant action to the Eastern District of Pennsylvania. First, there is no risk of

duplicative discovery efforts or inconsistent pretrial rulings because a significant amount of

discovery that would have been conducted in *Benfield* has already been conducted in two

separate, but related cases – *Robert F. Bost, et al. v. Fluor Daniel, Inc., et al.*, Case No. 3:98-CV-

138, and *Vonnie K. Agner, et al. v. Fluor Daniel, Inc., et al.*, Case No. 3:98-CV-220 – both of which were recently remanded from the Eastern District of Pennsylvania to the Western District of North Carolina.   Second, after four years in the consolidated asbestos product liability litigation in the Eastern District of Pennsylvania, *Agner* and *Bost* were remanded to the transferor court because the parties, after substantial and significant attempts to negotiate settlement, were unable to settle the claims.  Because all three cases (*Benfield*, *Agner* and *Bost*) involve the same defendants, the same counsel, and the same causes of action for asbestos-related exposures at the same Hoescht Celanese facility, it is highly unlikely that the claims in this case will be settled. Thus, transferring this case to the Eastern District of Pennsylvania will only frustrate the Panel's interest in judicial economy and efficient resolution of claims.  Judicial economy would be best served if all three cases – *Agner*, *Bost* and *Benfield* – were disposed of in the Western District of North Carolina.

Finally, this action differs from the product liability actions pending in the Eastern District of Pennsylvania because Plaintiffs, here, have not sued manufacturers or distributors for an allegedly defective product.   Rather, Plaintiffs are bystanders who were injured by the negligent conduct of construction and asbestos abatement contractors hired by the Plaintiffs' employer.  Thus, the factual and legal issues in *Benfield* are significantly different than those at issue in the product liability actions pending in the Eastern District of Pennsylvania.  For these reasons, transfer is not warranted.   *Benfield* should remain in the Western District of North Carolina.

## PROCEDURAL HISTORY

To understand Plaintiffs' opposition to transfer, a brief discussion of the procedural history of the two separate, but related cases is warranted.

### The *Agner* and *Bost* Plaintiffs

In 1998, undersigned counsel, on behalf of employees of Hoescht Celanese and their spouses, sued Daniel International Corporation f/k/a Daniel Construction Co. ("Daniel"), Fluor Enterprises Inc. f/k/a Fluor Daniel Inc. ("Fluor"), Strategic Organizational Systems Environmental Engineering Division, Inc. f/d/b/a SOS International, Inc. and SOS Environmental, Inc. ("SOS"), W.F. Gray Insulation Services ("W.F. Gray"), and Asbestos Removal Inc., for injuries the plaintiffs sustained from exposure to asbestos while working at various Hoescht Celanese facilities. Defendants were construction contractors and/or asbestos abatement contractors charged with installing, maintaining, and/or removing asbestos-containing materials at the Hoescht Celanese facility in Salisbury, NC. The Plaintiffs did not sue any manufacturers of the asbestos-containing materials.

Both lawsuits—*Robert F. Bost, et al. v. Fluor Daniel, Inc., et al.*, Case No. 3:98-CV-138, and *Vonnie K. Agner, et al. v. Fluor Daniel, Inc., et al.*, Case No. 3:98-CV-220—were initially filed in North Carolina state court. The defendants removed the actions to the United States District Court for the Western District of North Carolina.

In April, the District Court for the Western District of North Carolina notified the Judicial Panel on Multidistrict Litigation ("Panel") that the *Bost* case was a "tag-along" case. Accordingly, in May 1998, the Panel issued a Conditional Transfer Order transferring the *Bost* case to the Eastern District of Pennsylvania to be included in the asbestos product liability multidistrict litigation.

In June 1998, plaintiffs in the *Agner* case moved to remand their action back to state court. Before the district court ruled on plaintiffs' motion, the Judicial Panel on Multidistrict Litigation, in July 1998, issued a Conditional Transfer Order transferring the *Agner* case to the

Eastern District of Pennsylvania. Plaintiffs in the *Agner* case opposed the conditional transfer order. After a hearing on the matter, in September 1998, the Panel found that transfer was warranted and transferred the *Agner* case to the Eastern District of Pennsylvania to be included in the asbestos product liability multidistrict litigation.

In October 1998, Plaintiffs in the *Agner* and *Bost* cases filed motions to transfer the cases back to the Western District of North Carolina or, alternatively, to remand the cases to state court. The matter was heard on March 17, 1999 by District Court Judge Charles R. Weiner in the Eastern District of Pennsylvania. At the hearing, counsel for the plaintiffs noted that between the two cases there were approximately 110 plaintiffs, the majority of whom had been diagnosed with asbestosis. (Hr'g Tr. on Motion to Remand at 8, attached as **Exhibit A**.) The court asked if the parties had attempted to settle the claims against the four defendants. The court then instructed plaintiffs' counsel to provide copies of the plaintiffs' medical records to the defendants and directed the parties to attempt to settle the actions. (Hr'g Tr. on Motion to Remand at 5.) The court ruled that if the parties were not able to settle their claims, it would remand the actions to the Western District of North Carolina. (Hr'g Tr. on Motion to Remand at 5, 7, 9.)

In February 2002, almost two years after the hearing in the Eastern District of Pennsylvania and several unsuccessful settlement conferences with the Court, plaintiffs renewed their motion for transfer to the Western District of North Carolina. They argued that the parties had attempted to resolve the claims through settlement but were unable to reach a meaningful settlement. Accordingly, plaintiffs asked the Court to remand the cases in accordance with its ruling in the March 1999 hearing.

On January 13, 2003, Judge Weiner issued a suggestion of remand, suggesting that the punitive damages claims be severed from the *Agner* and *Bost* cases and the remaining claims remanded to the Western District of North Carolina.  (A copy is attached as **Exhibit B**.)  On August 21, 2003, in accordance with Judge Weiner's order, the Panel remanded the non-punitive damages claims in the *Agner* and *Bost* cases to the Western District of North Carolina for further proceedings.  (A copy is attached as **Exhibit C**.)  Upon remand, the parties selected, from the two cases, four plaintiffs to proceed to trial.  The parties then continued to engage in substantial discovery, which included the taking of depositions of individuals designated as "global" witnesses—i.e., witnesses that may be called to testify at the trials for the remaining plaintiffs not yet scheduled for trial, including the *Benfield* plaintiffs.  The discovery also included the production of documents, most, if not all, of which will likely be used in the claims filed by the remaining plaintiffs not yet scheduled for trial.  The court has set a discovery cut-off date of December 1, 2004, and trial for the four selected plaintiffs is scheduled to commence in March 2005.

### The *Benfield* Plaintiffs

In April 2004, while the parties in the *Agner* and *Bost* cases were conducting discovery, undersigned counsel, on behalf of additional employees of Hoescht Celanese and their spouses, filed the instant lawsuit against Daniel, Fluor, and SOS (collectively referred to as "Defendants") in the Western District of North Carolina, captioned *Silas David Benfield, et al. v. Daniel International, Co., et. al.*, Case No. 5:04 CV 47 (USDC WDNC).  (A copy of the Complaint is attached as **Exhibit D**.)  As in the *Agner* and *Bost* cases, the *Benfield* plaintiffs sued Daniel, Fluor, and SOS for injuries they sustained from being exposed to asbestos while working at the Hoechst Celanese facilities.  Again, the Plaintiffs did not sue any manufacturers of the asbestos-

5

containing materials.   This action, like the *Agner* and *Bost* cases, involves claims against construction contractors and an asbestos abatement contractor, all of whom were charged with installing, maintaining, and/or removing asbestos-containing materials at the Hoechst Celanese facilities.  Indeed, the facts and allegations *Benfield* are substantially the same as, if not identical to, the allegations contained in the *Agner* and *Bost* lawsuits.

On April 23, the District Court for the Western District of North Carolina issued an order including this case in the coordinated and consolidated proceeding "In re Asbestos-Related Litigation, WDCP-83-1" and notified the Panel that this case was a "tag-along" case for transfer to the asbestos product liability multidistrict litigation. (D.E. 2, attached as **Exhibit E**.)   The Defendants then moved to sever this action into 29 separate lawsuits.  (D.E. 4.)  The Plaintiffs opposed the motion.  (D.E. 6)  The District Court denied Defendants' motion without prejudice to renew their motion and refused to enter any further orders in the action until the Panel ruled on whether this action should be transferred to the asbestos product liability multidistrict litigation. (D.E. 9.)

On August 27, the Panel issued Conditional Transfer Order-235, transferring the *Benfield* action to the Eastern District of Pennsylvania to be included in the asbestos product liability litigation.  On September 7, 2004, Plaintiffs filed a Notice of Opposition to the transfer.  For the reasons contained in the Motion and this Memorandum of Law in support of Plaintiffs' motion, Plaintiffs oppose the transfer and request that the Panel vacate Conditional Transfer Order-235 as to the action:  *Silas David Benfield, et al. v. Daniel International, Co., et. al.*, Case No. 5:04 CV 47 (USDC WDNC).

## ARGUMENT

Transfer is not warranted for three reasons.  First, there is no risk of duplicative discovery efforts or inconsistent pretrial rulings because a significant amount of discovery that would have been conducted in *Benfield* has already been conducted in the separate, but related *Agner* and *Bost* cases.  Second, after four years in the consolidated asbestos product liability litigation in the Eastern District of Pennsylvania, *Agner* and *Bost* were remanded to the transferor court because the parties, after substantial and significant attempts to negotiate settlement, were unable to settle the claims.  Because all three cases (*Benfield*, *Agner* and *Bost*) involve the same defendants, the same counsel, and the same causes of action for asbestos-related exposures at the same Hoescht Celanese facility, it is highly unlikely that the claims in this case will be settled.  Third, this action differs from the product liability actions pending in the Eastern District of Pennsylvania because Plaintiffs, here, have not sued manufacturers or distributors for an allegedly defective product.   Rather, Plaintiffs are bystanders who were injured by the negligent conduct of construction and asbestos abatement contractors hired by the Plaintiffs' employer.   Thus, the factual and legal issues in *Benfield* are significantly different than those at issue in the product liability actions pending in the Eastern District of Pennsylvania.

## I. BECAUSE THERE IS NO RISK OF DUPLICATIVE DISCOVERY OR INCONSISTENT PRETRIAL RULINGS TRANSFER IS NOT WARRANTED

The purpose of transfers under 28 U.S.C.A. § 1407 is to coordinate and consolidate pretrial proceedings "for the convenience of the parties and witnesses" and to "promote the just and efficient conduct of such actions."  As this Panel has stated, consolidation would prevent duplicative discovery and eliminate the possibility of inconsistent pretrial rulings.  See In re Asbestos Product Liability Litigation (No. VI), 771 F. Supp. 415, 421-22 (J.P.M.L. 1991).  But

where, as here, there is little to no risk of duplicative discovery or inconsistent pretrial rulings and alternatives to transfer exist, transfer is inappropriate. See, e.g., In re Zimmer, Inc., 237 F. Supp. 2d 1376 (J.P.M.L. 2002) (denying motion to transfer where pretrial proceedings in the transferee district have been on-going for two years and plaintiff in the action in the transferor district was represented by the same counsel representing the plaintiffs in the actions in transferee district); In re Insulin Manufacturing Antitrust Litigation, 487 F. Supp. 1359 (J.P.M.D.L. 1980) (holding that despite common legal and factual questions between two actions, transfer of the one action to the district where the other action is pending is not warranted where common factual questions are not sufficiently complex and accompanying discovery was not so time-consuming to justify transfer); In re Ecuadorian Oil Concession Litigation, 487 F. Supp. 1364 (J.P.M.L. 1980) (denying transfer where the common factual issues were not sufficiently complex, the remaining accompanying discovery was not so time-consuming to justify transfer, and all discovery to date and future depositions would be applicable to both actions); In re Air Crash Disaster Near Upperville, Va. on Dec. 1, 1974, 430 F. Supp. 1295 (J.P.M.L. 1977) (holding that transfer inappropriate where all pretrial proceedings concerning common issue of liability were concluded in the transferee district and all parties to the actions have access to all discovery obtained in the transferee court).

In In re Zimmer, the plaintiff in a product liability action pending in the District Minnesota moved to transfer its case to the District of Connecticut, where six actions had already been consolidated for discovery purposes. The Panel denied plaintiff's motion to transfer the Minnesota action because the plaintiff had failed to prove that common questions of law or fact were sufficiently complex, unresolved, or numerous to justify transfer under 28 U.S.C.A. §1407. In re Zimmer, 237 F. Supp. 2d at 1377. The Panel further noted that pretrial proceedings in the

8

Connecticut action had been taking place for over two years and the plaintiff in the Minnesota action was represented by the same counsel representing the plaintiffs in the six Connecticut actions.   Id.   Thus, the Panel concluded that sufficient alternatives to transfer existed to "minimize whatever possibilities there might be of duplicative discovery and/or inconsistent pretrial rulings." Id.

Here, likewise, transfer is not warranted.   There is little to no risk of duplicative discovery.  As mentioned above, the *Agner* and *Bost* cases had been in the consolidated and coordinated proceedings in the Eastern District of Pennsylvania for over four years.  During that time, the parties engaged in discovery and settlement negotiations.  When settlement discussions ultimately failed, the Panel remanded the actions to the transferor court – the Western District of North Carolina – to proceed to trial.   Upon remand, the parties continued discovery and scheduled depositions of both factual and expert witnesses.  The plaintiffs designated many of these witnesses as "global witnesses" which meant that their deposition testimony would apply to *all* actions against the Defendants, not just the four that are scheduled to be tried in March 2005.  Similarly, the parties agreed that the discovery that has been completed to date will be applicable to the remaining actions, including *Benfield*.

Thus, although discovery has not yet commenced in *Benfield*, much of the discovery that would have been done has already been conducted through the *Agner* and *Bost* cases, and is, in fact, close to completion because the deadline for completing discovery is December 1, 2004. Because the three actions involve the same defendants, the same attorneys, the same causes of action, and the same Hoescht Celanese plant, there is no risk that discovery efforts will be duplicated.  Moreover, the judge assigned to the *Agner* and *Bost* cases, District Court Judge Lacy

Thornburg, is the *same* judge assigned to *Benfield*.  Thus, there is no risk of inconsistent pretrial rulings.

Due to the lack of any concern over duplicative discovery efforts or inconsistent pretrial rulings and based on the existence of sufficient alternatives to transfer, transfer would only unnecessarily delay the proceedings in *Benfield*.  Because *Agner* and *Bost* have been remanded to the Western District of North Carolina to be tried by Judge Lacy Thornburg, who is also the judge assigned to *Benfield*, the Panel's interest in efficient resolution of these cases without any unnecessary burden on the court system, would best be served by allowing all three cases to proceed in the Western District of North Carolina.

**II.      BECAUSE THE *AGNER* AND *BOST* CASES WERE REMANDED AFTER UNSUCCESSFUL ATTEMPTS TO SETTLE AND IT IS UNLIKELY THAT THE SEPARATE BUT RELATED CLAIMS IN *BENFIELD* WILL BE SETTLED, TRANSFER IS NOT WARRANTED AND WILL CAUSE ONLY UNNECESSARY DELAY**

Pretrial Order No. 3 entered in <u>In re Asbestos Products Liability Litigation (VI)</u> sets forth the procedural guidelines for attorneys to follow to help maintain a cost-effective and efficient administration of all actions transferred to the asbestos product liability litigation in the Eastern District of Pennsylvania.  (A copy is attached as **Exhibit F**.)  Under section 4 of Pretrial Order No. 3, parties are encouraged to request settlement conferences and must comply with certain discovery requirements designed to procure settlement.  But if the parties are unable to settle the claims after a good faith attempt to do so, section 5 states that the action "shall be subject to remand."

In *Agner* and *Bost*, the plaintiffs moved the District Court for the Eastern District of Pennsylvania to remand their actions to the Western District of North Carolina.  At the March 17, 1999 hearing, the court asked if the parties had attempted to settle the claims against the four

defendants. The court then instructed plaintiffs' counsel to provide copies of the plaintiffs' medical records to the defendants and directed the parties to attempt to settle the actions. (See Hr'g Tr. on Motion to Remand at 5.) The court ruled that if the parties were not able to settle their claims, it would remand the actions to the Western District of North Carolina. (See Hr'g Tr. on Motion to Remand at 5, 7, 9.)

Approximately two years after the hearing in the Eastern District of Pennsylvania and several unsuccessful settlement conferences with the Court, plaintiffs renewed their motion for transfer to the Western District of North Carolina. Judge Weiner issued a Suggestion of Remand, suggesting that the punitive damages claims be severed from the *Agner* and *Bost* cases and the remaining claims remanded to the Western District of North Carolina. The Panel agreed and remanded the non-punitive damages claims in the *Agner* and *Bost* cases to the Western District of North Carolina for further proceedings.

Although the parties in *Benfield* have not discussed settlement, under the circumstances in this case, there is no reasonable likelihood of settlement. Counsel for the parties in *Benfield* are the same counsel representing the parties in the *Agner* and *Bost* cases. Moreover, all three actions involve the same causes of action for asbestos related exposures at the same Hoescht Celanese facility. Due to the similarities between *Benfield* and the *Agner* and *Bost* cases, therefore, undersigned counsel has no reason to believe that settlement is any more likely in *Benfield* than it was in *Agner* and *Bost*. On the other hand, having already attempted to settle the claims, counsel for all parties are fully capable of resolving the claims in *Benfield* in the Western District of North Carolina under the supervision of Judge Lacy Thornburg. Transferring *Benfield* to the Eastern District of Pennsylvania, where it will likely remain for several years, will only serve to delay resolution of the Plaintiffs' claims and thus frustrate the Panel's interest in

11

efficient resolution of claims. Accordingly, the Panel should grant Plaintiffs' motion to vacate the conditional transfer order as to *Benfield*.

### III. BECAUSE *BENFIELD* IS NOT A PRODUCT LIABILITY ACTION, IT DOES NOT SHARE COMMON FACTUAL AND LEGAL ISSUES WITH THE PENDING ACTIONS IN THE EASTERN DISTRICT OF PENNSYLVANIA

Finally, transfer is inappropriate here because the issues in *Benfield* differ significantly from the issues in the products liability actions pending in the Eastern District of Pennsylvania. In 1991, the Panel found that certain asbestos cases involved common factual issues relating to personal injuries or wrongful death allegedly caused by exposures to asbestos or asbestos-containing products. See In re Asbestos Product Liability Litigation (No. VI), 771 F. Supp. at 417. The actions involved product liability claims against manufacturers and distributors of asbestos products. Later, actions against premises owners were included in the asbestos product liability litigation.

Here, however, the Plaintiffs in *Benfield* have not named as defendants any manufacturers or distributors of asbestos or asbestos-containing products. Nor have they, in this action, asserted any claims against the premises owner, Hoescht Celanese. Rather, the *Benfield* plaintiffs have sued construction, maintenance, renovation, and asbestos abatement contractors for their negligent use, handling, and/or removal of asbestos or asbestos-containing products at the Hoescht Celanese facility. Plaintiffs have alleged that the Defendants negligently handled the asbestos or asbestos-containing products by causing the release of harmful fibers or dust, which the Plaintiffs inhaled while they worked. At issue is whether the Defendants knew of the dangers associated with asbestos, whether they sufficiently warned the Plaintiffs of those hazards, and whether they took appropriate precautions in protecting the safety and health of the Hoescht Celanese employees.

Thus, the factual and legal issues in *Benfield*, which is a "bystander exposure" case, differ from the factual and legal issues involved in the product liability actions pending in the Eastern District of Pennsylvania.   Because of these differences, transfer to the Eastern District of Pennsylvania is not warranted.

## CONCLUSION

Transferring *Benfield* to the Eastern District of Pennsylvania will not serve any of the purposes expressed by the Panel in establishing the asbestos product liability multidistrict litigation.  Because the separate, but related *Agner* and *Bost* cases have completed significant discovery, which will be applied to all related claims, including those in *Benfield*, there is no risk of duplicative discovery efforts.  And because the judge assigned to *Agner* and *Bost* is the same judge assigned to *Benfield*, there is no risk of inconsistent pretrial rulings.  Finally, because the parties in *Agner* in *Bost* were unsuccessful in attempting to settle their claims, there is no reason to believe that the parties in *Benfield* will be able to settle their claims.   In light of these circumstances, transfer is not warranted.

WHEREFORE Plaintiffs in civil action *Silas David Benfield, et al. v. Daniel International, Co., et. al.*, Case No. 5:04 CV 47 (USDC WDNC), respectfully request that the Panel vacate Conditional Transfer Order—235 as to the *Benfield* action.

Respectfully submitted,

**WALLACE & GRAHAM, P.A.**
*Counsel for Plaintiffs Benfield, et al.*
525 North Main Street
Salisbury, NC 28144
Tel. (704) 633-5244
Fax (704) 633-9434

Mona Lisa Wallace
NC State Bar No. 9021

13

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

SEP 3 0 2004

FILED
CLERK'S OFFICE

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of September, 2004, true and correct copies of

the foregoing Memorandum of Law in Support of Plaintiffs Motion to Vacate Conditional

Transfer Order were served by U.S. mail to all counsel listed on the attached Panel Service List.

**WALLACE & GRAHAM, P.A.**
*Counsel for Plaintiffs Benfield, et al.*
525 North Main Street
Salisbury, NC 28144
Tel.  (704) 633-5244
Fax. (704) 633-9434

Mona Lisa Wallace
NC State Bar No. 9021

RECEIVED
CLERK'S OFFICE

2004 SEP 30  P 12: 40

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

14

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

SEP 3 0 2004

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

In re ASBESTOS PRODUCTS LIABILITY LITIGATION                )
(NO. VI)                                                     )        MDL No. 875
    **Conditional Transfer Order – 235**                   )
    *Silas David Benfield, et al. v. Daniel International, Co.,*  )
    *et. al.,* Case No. 5:04 CV 47 (USDC WDNC)              )
                                          )

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th[th] day of September, 2004, true and correct copies
of the Exhibits to Plaintiffs' Memorandum of Law in Support of Plaintiffs Motion to Vacate
Conditional Transfer Order-235 were served by U.S. mail to David Connor, Haynsworth,
Marion, McKey & Guerard, 75 Beattie Place, 11th Floor, P.O. Box 2048, Greenville, SC 29602.

**WALLACE & GRAHAM, P.A.**
*Counsel for Plaintiffs Benfield, et al.*
525 North Main Street
Salisbury, NC 28144
Tel. (704) 633-5244
Fax. (704) 633-9434

Mona Lisa Wallace
NC State Bar No. 9021

RECEIVED
CLERK'S OFFICE
2004 SEP 30  A 10: 55
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

# PANEL SERVICE LIST (Excerpted from CTO-235)
## DOCKET NO. 875
## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*Silas David Benfield, et al. v. Daniel International Corp., et al.*, W.D. North Carolina, C.A. No. 5:04-47

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Joel M. Bondurant, Jr.
Haynsworth, Sinkler, Boyd, P.A.
P.O. Box 2048
Greenville, SC 29602-2048

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building
7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, DC 20036

David A. Damico
Burns, White & Hickton
Fifth Avenue Place, Suite 2400
120 Fifth Avenue
Pittsburgh, PA 15222

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
Suite 1000
The Bourse
Philadelphia, PA 19106-2574

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Susan M. Hansen
Brownson & Ballou
4800 U.S. Bank Place
601 Second Avenue, South
Minneapolis, MN 55402

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308-1314

David C. Landin
Hunton & Williams
Riverfront Plaza
East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102

Ronald L. Motley
Motley, Rice, LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

James B. Pressly, Jr.
Haynsworth, Marion, McKey &
Guerard
75 Beattie Place
11th Floor
P.O. Box 2048
Greenville, SC 29602

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
Roven, Kaplan & Wells
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West, 15th Floor
Philadelphia, PA 19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1570 Penobscot Building
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226

Andrew J. Trevelise
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Mona L. Wallace
Wallace & Graham, P.A.
525 North Main Street
Salisbury, NC 28144

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

SEP 3 0 2004

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| In re ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI) | ) ) | MDL No. 875 |
| Conditional Transfer Order – 235 | ) | |
| *Silas David Benfield, et al. v. Daniel International, Co., et. al.,* Case No. 5:04 CV 47 (USDC WDNC) | ) ) ) | |

## EXHIBITS TO PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
## TO VACATE CONDITIONAL TRANSFER ORDER-235

Exhibit A – Hearing transcript on Motion to Remand held on March 17, 1999

Exhibit B – Suggestion of Remand dated January 1, 2003

Exhibit C – Separation of Claims and Remand Order filed August 21, 2003

Exhibit D – Complaint filed April 15, 2004

Exhibit E – Civil Docket for Case #04-CV47

Exhibit F – Pretrial Order No. 3 filed January 7, 1992

RECEIVED
CLERK'S OFFICE
2004 SEP 30 P 12: 42
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

# Exhibit A

ORIGINAL

```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA


IN RE:  ASBESTOS PRODUCTS          :
LIABILITY LITIGATION (NO. VI       :
        _____                     : CIVIL ACTION NO. MDL 875

This Document Relates To           :

LAW FIRM OF WALLACE & GRAHAM       :

UNITED STATES DISTRICT COURT       :
WESTERN DISTRICT, NORTH CAROLINA:  WEDNESDAY, MARCH 17, 1999

                                   :

AGNER, 3:98 CV 220 T               : PHILADELPHIA, PENNSYLVANIA
BOST, 3:98 CV 138 T                : 10:30 A.M.


           BEFORE THE HONORABLE CHARLES R. WEINER,
         UNITED STATES DISTRICT COURT, SENIOR JUDGE

                   MOTION TO REMAND


APPEARANCES:                    CHRIS MAURIELLO, ESQ.
                                      And
                                MONA LISA WALLACE, ESQ.
                                WALLACE & GRAHAM, P. A.
                                525 Main Street
                                SALISBURY, NORTH CAROLINA
                                              28144

                                For the Plaintiffs

                                JAMES B. PRESSLY, JR., ESQ.
                                HAYNSWORTH, MARION, McKAY
                                & GUSEARD LLP
                                P. O. BOX 2048
                                GREENVILLE, SOUTH CAROLINA
                                              29602

                                ROBERT H. HOOD, JR., ESQ.
                                HOOD LAW FIRM, LLC
                                Post Office 1508
                                CHARLESTON, SOUTH CAROLINA
                                              29502

                                For the Defendants
```

PLAINTIFF'S
EXHIBIT
A

1                                                  VERTHELIA V. ALBANY

                                            OFFICIAL COURT REPORTER

2                                            1234 U. S. COURTHOUSE

3                                            Philadelphia, Pa. 19106

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   Proceedings recorded by mechanical stenography.   Transcript
produced through notereadins.

25

1    P R O C E E D I N G S

2    (The following Took Place In Open Court)

3    THE COURT:  I will hear anybody that wants to

4    to be heard.

5    MR. MAURIELLO:  Thank you, Judge.

6    I am Chris Mauriello, representing the

7    Plaintiffs in this case.  I appreciate your having us

8    here this morning.

9    THE COURT:  Tell me what you want.  Tell it to

10   me in English.

11   MR. MAURIELLO:  We are here on a Motion To

12   Remand.

13   THE COURT:  Who is here?

14   MR. MAURIELLO:  The AGNER Group has eighty-

15   five.  We filed that case in State Court.  That was our

16   chosen venue in State Court.  It is a State Court com-

17   plaint.

18   THE COURT:  You have eighty-five plaintiffs?

19   MR. MAURIELLO:  Yes.

20   THE COURT:  How sick are they?

21   MR. MAURIELLO:  The lion shares of them have

22   asbestos.

23   THE COURT:  Trully?

24   MR. MAURIELLO:  Yes, sir.

25   THE COURT:  How many placque cases?

1      MS. WALLACE:  None.

2      THE COURT:  So why are you crossing your

3  fingers when you say that?

4      So how many mesotheliomas?

5      MR. MAURIELLO:  I don't think so in this

6  group.

7      THE COURT:  What are you asking for?

8      MS. WALLACE:  These are premises cases.

9      THE COURT:  How old are your people average?

10     MS. WALLACE:  Fifty-five to sixty.

11     THE COURT:  Are they working?

12     MS. WALLACE:  Some are and some aren't.

13     THE COURT:  Have you settled other cases

14  like this?

15     MS. WALLACE:  We have not settled the premises

16  cases with them.

17     THE COURT:  These are the only ones left?

18     MR. MAURIELLO:  Mr. Pressly represents four

19  of them.

20     THE COURT:  Whom do you represent?

21     MR. PRESSLY:  I represent FLUOR DANIEL, INC.

22     THE COURT:  Are these brake cases?

23     MR. HOOD:  No, sir.  I represent W. F. Gray

24  Installation Services.  Its W. F. Gray.

25     THE COURT:  Is there an average number that

1   pay on these cases?

2        MR. HOOD:  No, your Honor, we were recently

3   brought into this.  These cases commenced in 1998.

4   There is only one on the premises cases pending in

5   North Carolina.

6        THE COURT:  Would you pay any money?

7        MR. HOOD:  We don't know.  The information we

8   have received on the average age --

9        THE COURT:  What do you need to make a

10  decision?

11       MR. HOOD:  I need some information.  This is

12  a series of cases where all of the plaintiffs went to

13  the same doctor.  I need to know much more about the

14  medical condition of these people.

15       THE COURT:  If she sent you a complete medical

16  file could you make a decision?

17       How soon could you get the medical information

18  to him?

19       MS. WALLACE:  Within a week.

20       THE COURT:  Would you do that -- send him the

21  medical information and we will have a telephone con-

22  ference, and if you can't settle it I will remand it.

23       MR. HOOD:  The medicals, Your Honor, the

24  standard medical information.

25       THE COURT:  Tell her what you need.

1          MR. HOOD:  Medical information from the

2     treating physicians.

3          MS. WALLACE:  Their regular family physicians.

4  I can do that but it will take more than a week.

5          THE COURT:  How about the tissue slides --

6     any biopsies been done?

7          MR. HOOD:  If there is I need the tissues.

8          THE COURT:  You will send him medical treating

9     physicians and where there is a biopsy.

10          What else do you need?

11          MR. HOOD:  What they did -- the work.

12          THE COURT:  And the exposure and lenght of

13     time to the exposure and any witnesses they had that

14     saw the bag or the contents.

15          What you are really doing is preparing for

16     trial without going through the other parts of it.

17     You ought to give hem a demand, a reasonable demand and

18     I expect you to give her a reasonable response.

19          Suppose on Monday she sent you for Mr. A --

20     how soon would you give her an answer?

21          MR. HOOD:  Within two weeks.

22          THE COURT:  Today is the 17th.

23          MR. HOOD:  Can I ask for one other thing?

24     This is the situation, Your Honor, whereof the group --

25     you have got forty of them have filed in the State Court

in Ohio.

MS. WALLACE:  We are not aware of that until today.  These aren't against manufacturers.  We put in claims for some to recover against manufacturers.  Another lawyer handled that.  We won't take any further action --

THE COURT:  Today is the 17th.  Lets say by the 30th you get everything to him.

MS. WALLACE:  We can do it and by the 17th he will give us a response.

THE COURT:  If they say they want $20.00 and you offer $5.00 thats one thing.

If you reach an impass I will remand the cases back.

It seems to me you should be able to get the cases done.

Do you have the list of the names of the people they have?

MR. HOOD:  We do.  I think the current list -- I believe I missed one or two.

MR. MAURIELLO:  It raises an interesting issue.  There are two cases.  One case we have a motion to remand and that's the AGNAR case.  The second case came here from a different proceedure and has additional plaintiffs.  They are identical.

1          THE COURT:  Give him all of it so that the

2     total number of plaintiffs you have is what?

3          MR. MAURIELLO:  Eighty-five in the AGNAR

4     case.

5          MR. HOOD:  It started out with a hundred and

6     --

7          THE COURT:  How many are there now?

8          MR. HOOD:  AGNAR one-hundred fifty.

9          MR. MAURIELLO:  It should be less than that.

10          THE COURT:  You have eighty-five.  It is

11     about a hundred and ten.

12          MR. MAURIELLO:  Yes.

13          MR. HOOD:  We would be glad to look at BOST.

14          THE COURT:  What do you need from him --

15     the same things?

16          MR. PRESSLY:  I guess.  My guys weren't in

17     the plant at the time they alleged.

18          THE COURT:  If you take the position you were

19     not there and you are not going to pay we will deal

20     with that.

21          MR. HOOD:  The other defendant has been

22     served but never responded.

23          THE COURT:  Would you take a default against

24     them?

25          MR. MAURIELLO:  It was brought here -- if the

1    case was transferrred here -- yes, we could.

2              THE COURT:  Why don't you do that -- why

3    don't you send him a notice -- return receipt requested

4    -- that you are going to move for default judgment.

5              You can send him the Order you sent the

6    Court with a short statement.  You file an affidvit

7    that you sent it by certified mail to him.  You can

8    then move for default.

9              You will make a decision to do what -- file

10   a motion for dismissal.

11             MR. PRESSLY:  I will, Your Honor.

12             THE COURT:  We are going to have a conference

13   on the 17th of May.  If you are not going to do any-

14   thing let me know.

15             MR. HOOD:  On the 17th of May -- Will that

16   be here or by telephone?

17             THE COURT:  By telephone.

18             MR. LASSMAN:  That conference is April 17th,

19   Judge.

20             THE COURT:  I think thats a Monday.  If it

21   turns out you don't want to pay anything I will remand

22   it back.

23             You will join the call and tell us if you

24   are going to do anything.

25             You will take up the matter of an entry of

1          default judgment and file the affidavit.

2                    Thank you very much.

3                         —————————

4

5                       (Court Adjourned)

6                         —————————

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI) | : | Civil Action No. MDL 875 |
| -------------------------------------------------------- | : | |
| | : | WESTERN DISTRICT OF NORTH CAROLINA |
| This Document Relates to: | : | |
| | : | CHARLOTTE DIVISION |
| VONNIE K. AGNER, et al | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| FLUOR DANIEL, INC. et al | : | |
| | : | |
| Defendants. | : | |
| -------------------------------------------------------- | : | |

Certificate of Service

This is to certify that the foregoing Motion for an Order of Transfer to the Western District of North Carolina or Order for Remand to the State Court, Mecklenburg County, North Carolina were served in the above-referenced case by depositing a copy of said document in the United States Mail, postage pre-paid, on this the $\underline{11^{th}}$ day of February, 2002, addressed as follows:

> James B. Pressley, Jr., Esquire
> Haynsworth, Marion, McKay & Guerard, LLP
> Post Office Box 2048
> Greenville, SC  29602
>
> Robert H. Hood, Jr., Esquire
> Hood Law Firm, L.L.C.
> Post Office Box 1508
> Charleston, South Carolina 29402
>
> _____
> Christopher D. Manfiello, Esq.
> WALLACE and GRAHAM, P.A.
> 525 North Main Street
> Salisbury, North Carolina 28144
> 704/633-5244

5

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS LIABILITY      :
LITIGATION (NO. VI)                     :
_____x

FILED   JAN 1 3 2003

This Document Relates to:               :

Law Firm of Wallace & Graham            :
                                        :
United States District Court            :
Western District of North Carolina      :
                                        :
Robert BOST, et al., No. 3:98 CV 138-T  :
Vonnie AGNER, et al., No. 3:98 CV 220-T :
                                        :
_____x

CIVIL ACTION NO. MDL 875

SUGGESTION OF REMAND

THIS MATTER being reviewed this date upon Plaintiff's Motion To Remand to the United

States District Court for the Western District of North Carolina, and the Court having reviewed these cases

and having had settlement conferences with the parties, and now believing that such motion is appropriate.


THE COURT FINDS that the issue of punitive damages must be resolved at a further

date with regard to the entire MDL action, and therefore any claims for punitive or exemplary

damages are hereby ORDERED severed from these cases and retained by the Court within its

jurisdiction over MDL 875 in the Eastern District of Pennsylvania.

THE COURT SUGGESTS that the within entitled matters should be REMANDED to the United States District Court for the Western District of North Carolina for such further action as may be deemed proper by that Court.

BY THE COURT:

Date: 1/7/2003

_____
Charles    R.    Weiner             J.

ENTERED

JAN 1 4 2003

CLERK OF COURT

2

# Exhibit C

A TRUE COPY CERTIFIED TO FROM THE RECORD

DATED: Aug/8/03

ATTEST: Nicole Licatuella

DEPUTY CLERK, UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

A CERTIFIED TRUE COPY

AUG 13 2003

ATTEST

MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FILED
ASHEVILLE, N. C.

FILED
CLERK'S OFFICE

AUG 2 1 2003

U.S. DISTRICT COURT
W. DIST. OF N. C.

## DOCKET NO. 875

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*Barbara Catania, et al. v. ACandS, Inc., et al.*, E.D. Pennsylvania (M.D. Louisiana, C.A. No. 3:02-368)
*Vonnie K. Agner, et al. v. Fluor Daniel, Inc., et al.*, E.D. Pennsylvania (W.D. North Carolina, C.A. No. 3:98-138)
*Vonnie K. Agner, et al. v. Fluor Daniel, Inc., et al.*, E.D. Pennsylvania (W.D. North Carolina, C.A. No. 3:98-220)

## BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, BRUCE M. SELYA,* JULIA SMITH GIBBONS, D. LOWELL JENSEN, J. FREDERICK MOTZ* AND ROBERT L. MILLER, JR., JUDGES OF THE PANEL

### SEPARATION OF CLAIMS AND REMAND ORDER

Before the Panel are two motions, pursuant to Rule 7.6(f), R.P.J.P.M.L., 199 F.R.D. 425, 438 (2001), brought by i) defendants Dow Chemical Co., Exxon Mobil Corp., and DSM Copolymer in one MDL-875 action previously transferred by the Panel under Section 1407 from the Middle District of Louisiana, and ii) defendants Fluor Daniel, Inc., Fluor Daniel Environmental Services, Inc., Fluor Daniel Services Corp., and SOS International, Inc., in two MDL-875 actions previously transferred by the Panel under Section 1407 from the Western District of North Carolina. Movants seek to vacate orders entered by the Panel in their respective action(s), pursuant to which the Panel conditionally remanded all claims in the actions except claims for punitive or exemplary damages that had previously been severed in the actions by the transferee court. Plaintiffs in each of the three actions support remand.

On the basis of the papers filed and hearing session held, the Panel finds that remand of the non-punitive/exemplary damage claims is appropriate at this time. The following quotation from an earlier Panel opinion is very instructive:

The Panel's Rules of Procedure provide that the Panel shall consider the question of remand on the motion of any party, on the suggestion of the transferee court or on the Panel's own initiative. Rule [7.6(c)], R.P.J.P.M.L., [199] F.R.D. [425, 437 (2001)]. In considering the question of remand, the Panel has consistently given great weight to the transferee judge's determination that remand of a particular action at a particular time is appropriate because the transferee judge, after all, supervises the day-to-day pretrial proceedings. *See, e.g., In re IBM Peripheral EDP Devices Antitrust Litigation*, 407 F. Supp. 254, 256 (J.P.M.L. 1976). The transferee judge's notice of suggestion of remand to the Panel is obviously an indication that he perceives his role under Section 1407 to have

---

*Judges Selya and Motz took no part in the decision of this matter with respect to the *Catania* action.

26

- 2 -

ended. *In re Air Crash Disaster Near Dayton, Ohio, on March 9, 1967*, 386 F.Supp. 908, 909 (J.P.M.L. 1975).

*In re Holiday Magic Securities and Antitrust Litigation*, 433 F.Supp. 1125, 1126 (J.P.M.L. 1977).

In the matter now before us, the transferee judge has entered orders reflecting his determination that remand of the non-punitive/exemplary damage claims in the three actions is now appropriate. The number of Section 1407 remands in this docket is proportionately small, because under Judge Charles R. Weiner's stewardship the vast majority of transferred actions have been successfully concluded in the transferee district during the course of Section 1407 pretrial proceedings (as of July 23, 2003, over 73,500 such actions have been closed in the transferee district). This success rate makes us particularly reluctant to overrule Judge Weiner's advice when he determines, with respect to a given constituent action, that i) common pretrial proceedings have been completed, ii) resolution in the transferee district is no longer likely, and iii) remand of the action or claims therein has become the preferred course. We therefore will adopt Judge Weiner's suggestion and order remand of the suggested claims in the three actions.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, all claims in *Barbara Catania, et al. v. ACandS, Inc., et al.*, E.D. Pennsylvania (M.D. Louisiana, C.A. No. 3:02-368) except the severed claims for punitive or exemplary damages are remanded to the Middle District of Louisiana; and all claims in *Vonnie K. Agner, et al. v. Fluor Daniel, Inc., et al.*, E.D. Pennsylvania (W.D. North Carolina, C.A. No. 3:98-138) and *Vonnie K. Agner, et al. v. Fluor Daniel, Inc., et al.*, E.D. Pennsylvania (W.D. North Carolina, C.A. No. 3:98-220) except the severed claims for punitive or exemplary damages are remanded to the Western District of North Carolina.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

jhg

United States District Court
for the
Western District of North Carolina
August 21, 2003

* * MAILING CERTIFICATE OF CLERK * *

Re:  3:98-cv-00138

True and correct copies of the attached were mailed by the clerk to the
following:

William M. Graham, Esq.
Wallace & Graham
525 N. Main St.
Salisbury, NC  28144

Mona Lisa Lane Wallace, Esq.
Wallace & Graham
525 N. Main St.
Salisbury, NC  28144

Christopher D. Mauriello, Esq.
Wallace & Graham
525 N. Main St.
Salisbury, NC  28144

James B. Pressly Jr., Esq.
Haynsworth, Marion, McKay & Guerard
P. O. Box 2048
Greenville, SC  29602

Moffatt G. McDonald, Esq.
Haynsworth, Marion, McKay & Guerard
P. O. Box 2048
Greenville, SC  29602

Eric K. Englebardt, Esq.
Haynsworth, Sinkler, Boyd, P.A.
P. O. Box 2048
Greenville, SC  29602

cc:
Judge                        (✓)
Magistrate Judge             ( )
U.S. Marshal                 ( )
Probation                    ( )
U.S. Attorney                ( )
Atty. for Deft.              ( )
Defendant                    ( )
Warden                       ( )
Bureau of Prisons            ( )
Court Reporter               ( )
Courtroom Deputy             (✓)
Orig-Security                ( )
Bankruptcy Clerk's Ofc.      ( )
Other_____     ( )

Date: Aug 21, 2003

Frank G. Johns, Clerk

By: _____
        Deputy Clerk

# Exhibit D



FILED
CHARLOTTE, N.C.

# IN THE UNITED STATES DISTRICT COURT
04 APR 15  PM 3:12

## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
U.S. DISTRICT COURT
### STATESVILLE DIVISION
W. DIST. OF N.C.
### CIVIL ACTION NO.: 5:04 CV 47

SILAS DAVID BENFIELD and wife, BETTY )
FAYE BENFIELD,  ROBERT LEE BAKER )
and wife, DOROTHY BAKER, LARRY LAMAR )
CAIN and wife, VERA M. CAIN, GENE WADE )
COBB and wife, DORIS BRUMLEY COBB, )
CARSON ARTHUR CURLEE, DANIEL )
DUDLEY DUGANNE, and wife, NORMA GAIL )
DUGANNE, CHARLES WARREN FULLER )
and wife, RACHIEL ATKINSON FULLER, )
WILLIAM JERRY HAMBY, TONY CALVIN )
HEILIG and wife, PATRICIA SAIN HEILIG, )
ALONZO STEVEN HUNTER, SR. and wife, )
RACHEL STEELE HUNTER, )
RICHARD LEROY KINTER and wife, VIVIAN )
LEE ALLEN KINTER, WALTER LAWRENCE )        COMPLAINT
LANNING and wife, VERCIE LEE LANNING, )   (JURY TRIAL DEMANDED)
FREDDIE DEE LAWRENCE and wife, MARY )
ELIZABETH MOORE LAWRENCE, RALPH )
LEONARD MARTIN and wife, KATHRYN )
NOVELLA MARTIN, CLIFFORD LEWIS )
MCCOY and wife, LEE OLYOUN MCCOY, )
THOMAS GENE MEADE and wife, )
MARGARET CAROL HUNT MEADE, CARL )
MASTON MESSICK and wife, LINDA )
NICHOLS MESSICK, CLAUDE ROBERT )
PATTERSON and wife, MILDRED LAMBERT )
PATTERSON, WILLIAM CLARENCE PHELPS, )
JR. and wife, FLORENCE REBECCA PHELPS, )
RUSSELL LEE RICE and wife, BETTY LOU )
GOBBLE RICE, CHRISTOPHER LEE SHUPE )
and wife, SHERLYN BLACKWELDER SHUPE, )
WILLIAM LOWRY SMITH, MAX LUTHER )
THOMPSON and wife, MONICA BROOKS )
THOMPSON, LOUIE DENVER WATKINS )
and wife, PHYLLIS S. WATKINS, COY RAY )
WILES and wife, BETTY SUE WILES, )
                                        )
          Plaintiffs,                   )
                                        )

v.                                             )
                                               )
DANIEL INTERNATIONAL CORPORATION               )
f/k/a DANIEL CONSTRUCTION COMPANY;             )
FLUOR ENTERPRISES INC. f/k/a FLUOR             )
DANIEL, INC.; and STRATEGIC                    )
ORGANIZATIONAL SYSTEMS                         )
ENVIRONMENTAL ENGINEERING                      )
DIVISION, INC. formerly doing business as SOS  )
INTERNATIONAL, INC. and SOS                    )
ENVIRONMENTAL, INC.,                           )
                                               )
          Defendants.                          )
_____)

The Plaintiffs, complaining of the Defendants, allege and say:

### Identification of Plaintiffs

1.  The Plaintiffs have been citizens and residents of Cabarrus, Cleveland, Iredell and Rowan Counties, State of North Carolina, during the pertinent periods of time herein.

2.  The Plaintiffs have been, during the pertinent times, employees of companies other than the Defendant companies herein, and have been workers, invitees, guests, licensees, or other members of the public who were exposed to injurious levels of asbestos fibers and dust created by the work being performed by the Defendants, their employees, subcontractors and/or agents.

3.  The claims of all Plaintiffs are based on exposure to asbestos dust and fibers at and within Hoechst Celanese fibers plant facilities and/or jobsites in Salisbury, County of Rowan, North Carolina (the "Salisbury Facility"), and/or Shelby, County of Cleveland, North Carolina (the "Shelby Facility").

4.  The Plaintiff, Silas David Benfield, was and continues to be a citizen and resident of the County of Iredell, State of North Carolina.  Mr. Benfield was employed by Hoechst Celanese at its facility in Salisbury, North Carolina in capacities including in maintenance from 1966

through 2002. Mr. Benfield was exposed to asbestos dust and fibers at the Hoechst Celanese

plant, and as a result of said exposure, contracted respiratory and other asbestos-related illnesses.

The Plaintiff, Mr. Benfield, was diagnosed with asbestosis on or about September 21, 2002.

5.   The Plaintiff, Betty Faye Benfield, is the wife of Silas David Benfield and is a citizen

and resident of the State of North Carolina, and is claiming loss of consortium as more fully

stated hereinafter.

6.   The Plaintiff, Robert Lee Baker, was and continues to be a citizen and resident of the

County of Rowan, State of North Carolina. Mr. Baker was employed by Hoechst Celanese at its

facility in Salisbury, North Carolina in capacities including as a Production Operator from 1978

through 1985. Mr. Baker was exposed to asbestos dust and fibers at the Hoechst Celanese plant,

and as a result of said exposure, contracted respiratory and other asbestos-related illnesses. The

Plaintiff, Mr. Baker, was diagnosed with asbestosis on or about July 10, 2001.

7.   The Plaintiff, Dorothy Baker, is the wife of Robert Lee Baker and is a citizen and

resident of the State of North Carolina, and is claiming loss of consortium as more fully stated

hereinafter.

8.   The Plaintiff, Larry Lamar Cain, was and continues to be a citizen and resident of the

County of Cleveland, State of North Carolina. Mr. Cain was employed by Hoechst Celanese at

its facility in Salisbury, North Carolina in capacities including in the staple department from in or

about June 1983 through November 1983. Mr. Cain was exposed to asbestos dust and fibers at

the Hoechst Celanese plant, and as a result of said exposure, contracted respiratory and other

asbestos-related illnesses. The Plaintiff, Mr. Cain, was diagnosed with asbestosis on or about

October 27, 2001.

9.  The Plaintiff, Vera M. Cain, is the wife of Larry Lamar Cain and is a citizen and resident of the State of North Carolina, and is claiming loss of consortium as more fully stated hereinafter.

10.  The Plaintiff, Gene Wade Cobb, was and continues to be a citizen and resident of the County of Cabarrus, State of North Carolina. Mr. Cobb was employed by Hoechst Celanese at its facility in Salisbury, North Carolina in capacities including in maintenance from 1966 through 1973. Mr. Cobb was exposed to asbestos dust and fibers at the Hoechst Celanese plant, and as a result of said exposure, contracted respiratory and other asbestos-related illnesses. The Plaintiff, Mr. Cobb, was diagnosed with asbestos-related pleural disease on or about March 17, 2003.

11.  The Plaintiff, Doris Brumley Cobb, is the wife of Gene Wade Cobb and is a citizen and resident of the State of North Carolina, and is claiming loss of consortium as more fully stated hereinafter.

12.  The Plaintiff, Carson Arthur Curlee, was and continues to be a citizen and resident of the County of Rowan, State of North Carolina. Mr. Curlee was employed by Hoechst Celanese at its facility in Salisbury, North Carolina in capacities including as an electrical maintenance technician from 1969 through 1971. Mr. Curlee was exposed to asbestos dust and fibers at the Hoechst Celanese plant, and as a result of said exposure, contracted respiratory and other asbestos-related illnesses. The Plaintiff, Mr. Curlee, was diagnosed with asbestosis on or about November 17, 2002.

13.  The Plaintiff, Daniel Dudley Duganne, was and continues to be a citizen and resident of the County of Rowan, State of North Carolina. Mr. Duganne was employed by Hoechst Celanese at its facility in Salisbury, North Carolina in capacities including in production and as

an electrician from 1966 through 1972. Mr. Duganne was exposed to asbestos dust and fibers at the Hoechst Celanese plant, and as a result of said exposure, contracted respiratory and other asbestos-related illnesses. The Plaintiff, Mr. Duganne, was diagnosed with asbestosis on or about July 7, 2001.

14. The Plaintiff, Norma Gail Duganne, is the wife of Daniel Dudley Duganne and is a citizen and resident of the State of North Carolina, and is claiming loss of consortium as more fully stated hereinafter.

15. The Plaintiff, Charles Warren Fuller, was and continues to be a citizen and resident of the County of Rowan, State of North Carolina. Mr. Fuller was employed by Hoechst Celanese at its facility in Salisbury, North Carolina in capacities including as a first class operator on spin draw from 1979 through present. Mr. Fuller was exposed to asbestos dust and fibers at the Hoechst Celanese plant, and as a result of said exposure, contracted respiratory and other asbestos-related illnesses. The Plaintiff, Mr. Fuller, was diagnosed with asbestosis on or about June 24, 2003.

16. The Plaintiff, Rachiel Atkinson Fuller, is the wife of Charles Warren Fuller and is a citizen and resident of the State of North Carolina, and is claiming loss of consortium as more fully stated hereinafter.

17. The Plaintiff, William Jerry Hamby, was and continues to be a citizen and resident of the County of Cleveland, State of North Carolina. Mr. Hamby was employed by Hoechst Celanese at its facility in Shelby, North Carolina in capacities including as a machine operator from 1967 through 2002. Mr. Hamby was exposed to asbestos dust and fibers at the Hoechst

Celanese plant, and as a result of said exposure, contracted respiratory and other asbestos-related illnesses.  The Plaintiff, Mr. Hamby, was diagnosed with asbestosis on or about March 15, 2004.

18.  The Plaintiff, Tony Calvin Heilig, was and continues to be a citizen and resident of the County of Rowan, State of North Carolina.  Mr. Heilig was employed by Hoechst Celanese at its facility in Salisbury, North Carolina in capacities including in the staple department from 1967 through 1968, and 1970-present.  Mr. Heilig was exposed to asbestos dust and fibers at the Hoechst Celanese plant, and as a result of said exposure, contracted respiratory and other asbestos-related illnesses.  The Plaintiff, Mr. Heilig, was diagnosed with asbestosis on or about November 13, 2003.

19.  The Plaintiff, Patricia Sain Heilig, is the wife of Tony Calvin Heilig and is a citizen and resident of the State of North Carolina, and is claiming loss of consortium as more fully stated hereinafter.

20.  The Plaintiff, Alonzo Steven Hunter, was and continues to be a citizen and resident of the County of Rowan, State of North Carolina.  Mr. Hunter was employed by Hoechst Celanese at its facility in Salisbury, North Carolina in capacities including in the spin draw department from 1974 through present.  Mr. Hunter was exposed to asbestos dust and fibers at the Hoechst Celanese plant, and as a result of said exposure, contracted respiratory and other asbestos-related illnesses.  The Plaintiff, Mr. Hunter, was diagnosed with asbestosis on or about November 14, 2001.

21.  The Plaintiff, Rachel Steele Hunter, is the wife of Alonzo Steven Hunter and is a citizen and resident of the State of North Carolina, and is claiming loss of consortium as more fully stated hereinafter.

22.  The Plaintiff, Richard Leroy Kinter, was and continues to be a citizen and resident of the County of Rowan, State of North Carolina.  Mr. Kinter was employed by Hoechst Celanese at its facility in Salisbury, North Carolina in capacities including as a mechanic and in maintenance from 1966 through 1967.  Mr. Kinter was exposed to asbestos dust and fibers at the Hoechst Celanese plant, and as a result of said exposure, contracted respiratory and other asbestos-related illnesses.  The Plaintiff, Mr. Kinter, was diagnosed with asbestosis on or about May 9, 2001.

23.  The Plaintiff, Vivian Lee Allen Kinter, is the wife of Richard LeRoy Kinter and is a citizen and resident of the State of North Carolina, and is claiming loss of consortium as more fully stated hereinafter.

24.  The Plaintiff, Walter Lawrence Lanning, was and continues to be a citizen and resident of the County of Iredell, State of North Carolina.  Mr. Lanning was employed by Hoechst Celanese at its facility in Salisbury, North Carolina in capacities including as a mechanic and electrician from 1966 through 1983.  Mr. Lanning was exposed to asbestos dust and fibers at the Hoechst Celanese plant, and as a result of said exposure, contracted respiratory and other asbestos-related illnesses.  The Plaintiff, Mr. Lanning, was diagnosed with asbestosis on or about July 24, 2001.

25.  The Plaintiff, Vercie Lee Lanning, is the wife of Walter Lawrence Lanning and is a citizen and resident of the State of North Carolina, and is claiming loss of consortium as more fully stated hereinafter.

26.  The Plaintiff, Freddie Dee Lawrence, was and continues to be a citizen and resident of the County of Iredell, State of North Carolina.  Mr. Lawrence was employed by Hoechst

Celanese at its facility in Salisbury, North Carolina in capacities including as a production operator from 1969 through 1983.  Mr. Lawrence was exposed to asbestos dust and fibers at the Hoechst Celanese plant, and as a result of said exposure, contracted respiratory and other asbestos-related illnesses.  The Plaintiff, Mr. Lawrence, was diagnosed with asbestosis on or about July 24, 2001.

27.  The Plaintiff, Mary Elizabeth Moore Lawrence, is the wife of Freddie Dee Lawrence and is a citizen and resident of the State of North Carolina, and is claiming loss of consortium as more fully stated hereinafter.

28.  The Plaintiff, Ralph Leonard Martin, was and continues to be a citizen and resident of the County of Rowan, State of North Carolina.  Mr. Martin was employed by Hoechst Celanese at its facility in Salisbury, North Carolina in capacities including as a spin draw operator from 1966 through 1976, and from January to December 1978.  Mr. Martin was exposed to asbestos dust and fibers at the Hoechst Celanese plant, and as a result of said exposure, contracted respiratory and other asbestos-related illnesses.  The Plaintiff, Mr. Martin, was diagnosed with asbestosis on or about July 20, 2001.

29.  The Plaintiff, Kathryn Novella Martin, is the wife of Ralph Leonard Martin and is a citizen and resident of the State of North Carolina, and is claiming loss of consortium as more fully stated hereinafter.

30.  The Plaintiff, Clifford Lewis McCoy, was and continues to be a citizen and resident of the County of Iredell, State of North Carolina.  Mr. McCoy was employed by Hoechst Celanese at its facility in Salisbury, North Carolina in capacities including as a machine operator from 1968 through 1998.  Mr. McCoy was exposed to asbestos dust and fibers at the Hoechst

Celanese plant, and as a result of said exposure, contracted respiratory and other asbestos-related illnesses. The Plaintiff, Mr. McCoy was diagnosed with asbestosis on or about November 17, 2003.

31. The Plaintiff, Lee Olyoun McCoy, is the wife of Clifford Lewis McCoy and is a citizen and resident of the State of North Carolina, and is claiming loss of consortium as more fully stated hereinafter.

32. The Plaintiff, Thomas Gene Meade, was and continues to be a citizen and resident of the County of Cleveland, State of North Carolina. Mr. Meade was employed by Hoechst Celanese at its facility in Shelby, North Carolina in capacities including as an electrician from 1962 through 1964. Mr. Meade was exposed to asbestos dust and fibers at the Hoechst Celanese plant, and as a result of said exposure, contracted respiratory and other asbestos-related illnesses. The Plaintiff, Mr. Meade was diagnosed with asbestosis on or about November 14, 2001.

33. The Plaintiff, Margaret Carol Hunt Meade, is the wife of Thomas Gene Meade and is a citizen and resident of the State of North Carolina, and is claiming loss of consortium as more fully stated hereinafter.

34. The Plaintiff, Carl Maston Messick, was and continues to be a citizen and resident of the County of Rowan, State of North Carolina. Mr. Messick was employed by Hoechst Celanese at its facility in Salisbury, North Carolina in capacities including as a warehouse supervisor from 1967 through 1986. Mr. Messick was exposed to asbestos dust and fibers at the Hoechst Celanese plant, and as a result of said exposure, contracted respiratory and other asbestos-related illnesses. The Plaintiff, Mr. Messick was diagnosed with lung cancer on or about June 3, 1997. Mr. Messick was diagnosed with asbestos-related disease on or about December 8, 2001. It was

subsequently concluded that Mr. Messick's occupational exposure to asbestos contributed to the development of asbestosis and his lung cancer.

35.   The Plaintiff, Linda Nichols Messick, is the wife of Carl Maston Messick and is a citizen and resident of the State of North Carolina, and is claiming loss of consortium as more fully stated hereinafter.

36.   The Plaintiff, Claude Robert Patterson, was and continues to be a citizen and resident of the County of Rowan, State of North Carolina.  Mr. Patterson was employed by Hoechst Celanese at its facility in Salisbury, North Carolina in capacities including in production service from 1966 through 1987.  Mr. Patterson was exposed to asbestos dust and fibers at the Hoechst Celanese plant, and as a result of said exposure, contracted respiratory and other asbestos-related illnesses.  The Plaintiff, Mr. Patterson was diagnosed with asbestosis on or about May 27, 2002.

37.   The Plaintiff, Mildred Lambert Patterson, is the wife of Claude Robert Patterson and is a citizen and resident of the State of North Carolina, and is claiming loss of consortium as more fully stated hereinafter.

38.   The Plaintiff, William Clarence Phelps, Jr., was and continues to be a citizen and resident of the County of Rowan, State of North Carolina.  Mr. Phelps was employed by Hoechst Celanese at its facility in Salisbury, North Carolina in capacities including as an electrician from 1967 through 1996.  Mr. Phelps was exposed to asbestos dust and fibers at the Hoechst Celanese plant, and as a result of said exposure, contracted respiratory and other asbestos-related illnesses. The Plaintiff, Mr. Phelps was diagnosed with asbestosis on or about August 8, 2001.

39.  The Plaintiff, Florence Rebecca Phelps, is the wife of William Clarence Phelps and is a citizen and resident of the State of North Carolina, and is claiming loss of consortium as more fully stated hereinafter.

40.  The Plaintiff, Russell Lee Rice, was and continues to be a citizen and resident of the County of Rowan, State of North Carolina.  Mr. Rice was employed by Hoechst Celanese at its facility in Salisbury, North Carolina in capacities including as a mechanic from 1968 through 1985.  Mr. Rice was exposed to asbestos dust and fibers at the Hoechst Celanese plant, and as a result of said exposure, contracted respiratory and other asbestos-related illnesses.  The Plaintiff, Mr. Rice was diagnosed with asbestosis-related pleural disease on or about October 6, 2003.

41.  The Plaintiff, Betty Lou Gobble Rice, is the wife of Russell Lee Rice and is a citizen and resident of the State of North Carolina, and is claiming loss of consortium as more fully stated hereinafter.

42.  The Plaintiff, Christopher Lee Shupe, was and continues to be a citizen and resident of the County of Rowan, State of North Carolina.  Mr. Shupe was employed by Hoechst Celanese at its facility in Salisbury, North Carolina in capacities including as a production operator from 1978 through 1983.  Mr. Shupe was exposed to asbestos dust and fibers at the Hoechst Celanese plant, and as a result of said exposure, contracted respiratory and other asbestos-related illnesses.  The Plaintiff, Mr. Shupe was diagnosed with asbestosis on or about July 31, 2001.

43.  The Plaintiff, Sherlyn Blackwelder Shupe, is the wife of Christopher Lee Shupe and is a citizen and resident of the State of North Carolina, and is claiming loss of consortium as more fully stated hereinafter.

44.  The Plaintiff, William Lowry Smith, was and continues to be a citizen and resident of the County of Rowan, State of North Carolina.  Mr. Smith was employed by Hoechst Celanese at its facility in Salisbury, North Carolina in capacities including as a shift supervisor from 1974 through 2001.  Mr. Smith was exposed to asbestos dust and fibers at the Hoechst Celanese plant, and as a result of said exposure, contracted respiratory and other asbestos-related illnesses.  The Plaintiff, Mr. Smith was diagnosed with asbestosis on or about August 23, 2002.

45.  The Plaintiff, Max Luther Thompson, was and continues to be a citizen and resident of the County of Rowan, State of North Carolina.  Mr. Thompson was employed by Hoechst Celanese at its facility in Salisbury, North Carolina in capacities including as a production operator from 1967 through present.  Mr. Thompson was exposed to asbestos dust and fibers at the Hoechst Celanese plant, and as a result of said exposure, contracted respiratory and other asbestos-related illnesses.  The Plaintiff, Mr. Thompson was diagnosed with asbestosis on or about August 20, 2001 and subsequently diagnosed with cancer.

46.  The Plaintiff, Monica Brooks Thompson, is the wife of Max Luther Thompson and is a citizen and resident of the State of North Carolina, and is claiming loss of consortium as more fully stated hereinafter.

47.  The Plaintiff, Louie Denver Watkins, was and continues to be a citizen and resident of the County of Rowan, State of North Carolina.  Mr. Watkins was employed by Hoechst Celanese at its facility in Salisbury, North Carolina in capacities including as a mechanic from January 1968 through September 1968, July 1970 through December 1985, and January 1989 through February 2000.  Mr. Watkins was exposed to asbestos dust and fibers at the Hoechst Celanese plant, and as a result of said exposure, contracted respiratory and other asbestos-related

illnesses.  The Plaintiff, Mr. Watkins was diagnosed with lung cancer on or about December 22, 2003.

48.  The Plaintiff, Phyllis S. Watkins, is the wife of Louie Denver Watkins and is a citizen and resident of the State of North Carolina, and is claiming loss of consortium as more fully stated hereinafter.

49.  The Plaintiff, Coy Ray Wiles, was and continues to be a citizen and resident of the County of Rowan, State of North Carolina.  Mr. Wiles was employed by Hoechst Celanese at its facility in Salisbury, North Carolina in capacities including in the spin draw department from 1968 through 1970.  Mr. Wiles was exposed to asbestos dust and fibers at the Hoechst Celanese plant, and as a result of said exposure, contracted respiratory and other asbestos-related illnesses. The Plaintiff, Mr. Wiles was diagnosed with asbestosis on or about October 13, 2003.

50.  The Plaintiff, Betty Sue Wiles, is the wife of Coy Ray Wiles and is a citizen and resident of the State of North Carolina, and is claiming loss of consortium as more fully stated hereinafter.

**Identification of Defendants**

51.  Upon information and belief, Defendant DANIEL INTERNATIONAL CORPORATION f/k/a Daniel Construction Company, is a corporation licensed in conformance with the rules and regulations of the State of South Carolina, with a principal place of business in Irvine, California, and during some or all of the pertinent times was duly authorized and licensed to do business within the State of North Carolina and has done significant and substantial business in the State of North Carolina including at the Salisbury and/or Shelby Facilities.  Upon

information and belief, Defendant Daniel International Corporation f/k/a Daniel Construction Company was formerly known by the legal name Fluor Carolina, Inc. which was the product of a merger of Daniel International Corporation and Fluor Southeast, Inc. in or about 1978. Upon information and belief, Defendant Daniel International Corporation filed an application for certificate of withdrawal with the North Carolina Secretary of State on October 23, 1996. Upon information and belief, Defendant may be served with process through the North Carolina Secretary of State, 2 South Salisbury Street, Raleigh NC 27601.

52. Defendant FLUOR ENTERPRISES, INC f/k/a Fluor Daniel, Inc., upon information and belief, is a corporation licensed in conformance with the rules and regulations of the State of California with a principal place of business in Irvine, California and is duly authorized and licensed to do business within the State of North Carolina and does or has done significant and substantial business in the State of North Carolina including at the Salisbury and/or Shelby Facilities. Upon Information and belief, Defendant Fluor Enterprises, Inc. was formerly named Fluor Daniel, Inc., and had its name changed to Fluor Enterprises, Inc. on or about October 25, 1999. Upon information and belief, Fluor Daniel, Inc. itself was the successor corporation to a merger between Fluor Corporation and Daniel Construction Company. Upon information and belief, Defendant may be served with process through its registered agent, National Registered Agents, Inc., 120 Penmarc Drive Suite 118, Raleigh NC 27603.

53. Upon information and belief, Defendant STRATEGIC ORGANIZATIONAL SYSTEMS ENVIRONMENTAL ENGINEERING DIVISION, INC., formerly doing business as SOS International, Inc. and SOS Environmental, Inc., is a corporation licensed in conformance with the rules and regulations of the State of Texas, with a principal place of business in Irvine, California, and during some or all of the pertinent times was duly authorized and licensed to do

14

business within the State of North Carolina and has done significant and substantial business in the State of North Carolina including at the Salisbury and/or Shelby Facilities. Upon information and belief, Defendant Strategic Organizational Systems Environmental Engineering Division, Inc. filed an application for certificate of withdrawal with the North Carolina Secretary of State on May 2, 2002. Upon information and belief, Defendant may be served with process through the North Carolina Secretary of State, 2 South Salisbury Street, Raleigh NC 27601.

54. All allegations herein as to "FLUOR DANIEL" are intended to collectively include and encompass all of the above-named Defendants including DANIEL INTERNATIONAL CORPORATION f/k/a DANIEL CONSTRUCTION COMPANY; FLUOR ENTERPRISES INC. f/k/a FLUOR DANIEL, INC.; and STRATEGIC ORGANIZATIONAL SYSTEMS ENVIRONMENTAL ENGINEERING DIVISION, INC. formerly doing business as SOS INTERNATIONAL, INC. and SOS ENVIRONMENTAL, INC., and any parents and/or wholly or partially held subsidiary companies thereof, domestic or foreign, and/or any predecessor companies of said companies, which, as the evidence may show, provided or caused to be provided asbestos-related services at the Salisbury or Shelby Facilities.

55. Upon information and belief, Defendant Fluor Enterprises, Inc. is a subsidiary of Fluor Corporation and is said company's principal operating business of approximately 25 companies worldwide, including the other named Defendants.

56. Upon information and belief, Fluor Daniel, during some or all of the pertinent times, was engaged in the business of construction, construction coordination, construction management, engineering, asbestos material abatement and related functions and duties including services provided at the Salisbury and/or Shelby Facilities.

57.  Upon information and belief, Fluor Daniel, during some or all of the pertinent times, was contracted, hired, or otherwise retained to perform the asbestos-related business duties and functions set forth herein, at the Salisbury and the Shelby Facilities, or, owned, controlled or acquired the duties and liabilities of companies contracted, hired, or otherwise retained to perform said business duties and functions, at the locations relevant to the claims herein.

58.  Upon information and belief, the Celanese Corporation was acquired in 1988 by the Hoechst Corporation.  All references to the Celanese Corporation and/or Celanese Facilities are intended to include the Salisbury and/or Shelby Facilities owned and operated during the pertinent times by Hoechst Celanese Corporation and/or Hoechst Celanese.

59.  None of the claims presented herein are barred by any applicable time limitations and/or Statutes of Limitation or Repose.

### Jurisdiction and Venue

60.   This Court has personal jurisdiction over this matter pursuant to N.C. Gen. Stat. § 1-75.4.

61.   This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.A. § 1332 in that the matter in controversy exceeds the sum or value of $75,000, per Plaintiff, exclusive of interest and costs, and is between citizens of different States.

62.   Venue is proper in this Court.

### First Cause of Action – Negligence

63.     The Plaintiffs incorporate by reference the foregoing paragraphs as though they are fully set forth herein.

64.     Upon information and belief, Defendants entered into various contracts to perform construction, maintenance, renovation and/or asbestos abatement work at the Salisbury Facility and the Shelby Facility.

65.     Defendants had a duty to perform their work at the facilities in a reasonably safe manner and had a duty to prevent injury to individuals working in the facilities, including the Plaintiffs, who were working in and around the work and/or job areas of the Defendants, their agents, servants and/or employees.

66.     Defendants contracted, employed, retained and/or otherwise hired individuals, servants, agents, and/or employees to perform some or all of the work described herein and for which the Defendants had been hired, retained and/or contracted.

67.     Defendants are vicariously responsible for the negligent, willful and/or wanton acts of their employees, servants and/or agents, who, while committing such negligent, willful and/or wanton acts, were acting generally within the scope of their assigned duties and employment with their Defendant employers.

68.     The work performed by the Defendants at the Salisbury Facility, commenced on a date and time prior to on or about January 1, 1965 and continued, upon information and belief, to on or about February 15, 1992, and encompassed periods of time during which Plaintiffs worked at the Salisbury Facility.

69.     Upon information and belief, during the pertinent times and during the periods of time that the Plaintiffs worked at the Shelby Facility, Defendants performed asbestos-related work at the Shelby Facility.

70.     Defendant Fluor Enterprises, Inc., and/or its predecessors, Fluor Daniel, Inc. and/or Daniel Construction Company, was, upon information and belief, during the pertinent times, the general contractor retained, contracted, and/or otherwise hired to construct Salisbury and Shelby Facility structures including plant buildings, structures, fixtures and appurtenances.

71.     In furtherance of its duties as general contractor, Defendant Fluor Enterprises, Inc., and/or its predecessors, Fluor Daniel, Inc. and/or Daniel Construction Company, by its agents, servants and/or employees, purchased, transported, cut, fitted, sawed, installed, and otherwise handled asbestos containing materials in and throughout the Salisbury and/or Shelby Facilities.

72.     Defendant Fluor Enterprises, Inc., and/or its predecessors, Fluor Daniel, Inc. and/or Daniel Construction Company, by its agents, servants and/or employees, installed over 200,000 linear feet of asbestos-containing material in and throughout the Salisbury Facility, as well as upon information and belief installing asbestos-containing materials at the Shelby Facility.

73.     The installation of asbestos-containing insulation and other asbestos-containing materials  occurred while Plaintiffs were employed and actively working in and throughout the Salisbury and/or Shelby Facilities and in close proximity to the Defendants' workers and employees.

74.     The transportation, installation, cutting, sawing, fitting and overall handling of asbestos-containing materials by the Defendants, their agents, servants, and/or employees was performed concurrent in time and within the same general work area occupied by Hoechst Celanese employees including Plaintiffs herein at the Salisbury and/or Shelby Facilities.

75.     During the construction of the Salisbury and/or Shelby Facility buildings and/or appurtenances, including the installation of asbestos-containing insulation and other asbestos-containing materials, the Defendant Fluor Enterprises, Inc., and/or its predecessors, Fluor Daniel, Inc. and/or Daniel Construction Company, their agents, servants, and/or employees failed to provide Hoechst Celanese employees, including Plaintiffs herein, who were employed and working in the Salisbury and/or Shelby Facility at the time, with any and all adequate protection from exposure to airborne asbestos fibers which were negligently released into the work area by Defendants, their employees, agents and/or servants.

76.     Fluor Daniel was contracted, hired, or otherwise retained to perform general and/or specific maintenance responsibilities throughout the Salisbury and/or Shelby Facility, and did perform such services, and in doing so, released or caused the release of dangerous and injurious asbestos fibers, dust and inhalants.

77.     In furtherance of their obligations to provide general and/or specific maintenance, employees, agents and/or servants of the Defendants transported, repaired, replaced, sawed, cut, removed, installed and/or otherwise handled and distributed asbestos-containing materials throughout the Salisbury and/or Shelby Facility.

78.     These maintenance operations were conducted throughout the Salisbury and/or Shelby Facilities and were performed in areas where the Plaintiffs herein were working and times

when the Plaintiffs were in close proximity to the Defendants' employees, agents, and/or servants.

79.     During the time period that the Defendants maintained the pertinent facilities, their buildings and appurtenances, the Defendants, and/or their predecessors, agents, servants, and/or employees failed to provide Hoechst Celanese employees, including the Plaintiffs herein who were employed and working in the Salisbury and/or Shelby Facility at the time, with any and all adequate protection from exposure to airborne asbestos materials and fibers which were negligently released into the work area by Defendants, their employees, agents and/or servants.

80.     While performing their duties and obligations to provide general and/or specific plant maintenance the Defendants herein, their employees, agents and/or servants, handled and/or distributed asbestos-containing material in such a way as to expose the Plaintiffs herein to airborne asbestos dust and fibers.

81.     Subsequent to January 1, 1965, the Defendant Fluor Enterprises, Inc., and/or its predecessors, Fluor Daniel, Inc. and/or Daniel Construction Company, hired, retained or otherwise entered into various subcontracts with, other Fluor Daniel Companies, including Defendant Strategic Organizational Systems Environmental Engineering Division, Inc., to perform work at Salisbury and Shelby Facilities.

82.     Defendant Strategic Organizational Systems Environmental Engineering Division, Inc., was contracted, hired, or otherwise retained for work which consisted primarily of asbestos material abatement within the Salisbury and/or Shelby Facilities.

83.     As part of its contractual obligations, employees, agents and/or servants of the

Defendants herein transported, installed, disturbed, removed and otherwise handled asbestos and

asbestos-containing materials in and throughout the Salisbury and/or Shelby Facilities.

84.     All the activities set forth in the allegations above occurred at the Salisbury

Facility within the contractual time period set forth hereinabove, specifically January 1, 1965

through February 15, 1992, and, in addition, asbestos-related activities also upon information and

belief were performed at the Shelby Facility during the pertinent times and during times at which

Plaintiffs were employed at the Shelby Facility.

85.     Upon information and belief, during some or all of the pertinent times, Fluor

Daniel was negligently involved in the provision of asbestos-related construction, abatement and

other services at the Salisbury and Shelby Facilities.

86.     Defendants knew, or should have known, that exposure to asbestos or asbestos-

containing materials is deleterious, carcinogenic, and otherwise harmful to persons exposed to

asbestos fibers.

87.     Defendants had actual knowledge of the hazardous nature of the asbestos dust and

fibers since the commencement of the work performed at the Salisbury and/or Shelby Facilities.

88.     Defendants obtained further and additional actual knowledge of the hazardous

nature of asbestos throughout the contractual work period as set forth hereinabove.

89.     Defendants had constructive knowledge of the hazardous nature of asbestos dust

and fibers at commencement of work to be performed at the Salisbury and/or Shelby Facilities

pursuant to their contractual obligations with Hoechst Celanese, with each other, and/or with other companies.

90.    Defendants obtained further and additional constructive knowledge of the hazardous nature of asbestos and asbestos-containing materials throughout the contractual work period.

91    As a direct and proximate result of the Defendants' work with and around asbestos materials in the Salisbury and Shelby Facilities, including installation, transportation, removal, packaging and/or handling, the Plaintiffs herein were exposed to asbestos dust and fibers which was harmful and deleterious to their bodies, lungs, respiratory systems, and overall health.

92    During the time period that Defendants herein removed, handled, transported, packaged and/or otherwise abated asbestos materials, Defendants, their agents, servants, and/or employees failed to provide Hoechst Celanese employees, including the Plaintiffs herein who were employed and working in the Salisbury and/or Shelby Facilities during the pertinent times, with any adequate protection from exposure to airborne asbestos materials and fibers which were negligently released into the work area by Defendants, their employees, agents and/or servants.

93    Defendants were negligent in causing, permitting, and/or allowing the Plaintiffs to become exposed to asbestos dust and fibers while the Plaintiffs were working or were otherwise present and in dangerous proximity to the Defendants, their employees, subcontractors, agents and/or servants, at the Salisbury and Shelby Facilities.

94    As a direct and proximate result of the Defendants' acts and/or omissions, the Plaintiffs have suffered irreparable injury and harm.

22

95      Defendants, who were hired, contracted and otherwise retained to perform the work described herein including construction, maintenance and asbestos abatement work, had the ability to control and safeguard the job sites and surrounding work areas where the work was performed to prevent injury to individuals including the Plaintiffs herein, who were anticipated and expected to be present in and around said worksites and areas.

96      The injuries sustained by the Plaintiffs herein were a reasonably foreseeable result of the negligent acts of the Defendants, their agents, servants and/or employees.

97.     The actions and omissions of the Defendants herein were reckless, willful, wanton and/or amounted to gross negligence.

98.     As a direct and proximate effect of the Defendants' negligence, the Plaintiffs were each damaged in an amount exceeding $75,000, to be more specifically proven at trial.

## Second Cause of Action  -- Failure to Warn

99.     Plaintiffs incorporate by reference the foregoing paragraphs as though they are fully set forth herein.

100.    During the pertinent times, the Defendants knew, or should have known, of the harmful effects of the exposure to asbestos dust and fibers to human health.

101.    Defendants had a duty to warn individuals working within the Salisbury and Shelby Facilities of the existence and danger of asbestos-containing materials that had been purchased, assembled, installed, removed, transported and/or otherwise handled by the Defendants, their agents, servants and/or employees.

102.    Fluor Daniel was aware or should have been aware of the dangerous and injurious propensities of asbestos, and of the presence of asbestos in the work Fluor Daniel was engaged in at the facilities, yet Fluor Daniel negligently failed to warn the Plaintiffs of the dangers created by their work activities and of the asbestos exposure which resulted.

103.    Despite Defendants' knowledge of the harm and/or potential harm of asbestos exposure, they failed to warn and/or inadequately warned the Plaintiffs of the danger, including but not limited to:

a.    Failing to properly enclose, encapsulate, seal, contain and/or safeguard the worksite in and around asbestos materials in order to prevent the escape and/or release into the surrounding area of airborne asbestos fibers;

b.    Failing to properly warn the Plaintiffs of the presence of airborne asbestos fibers which had been released into the air as a direct and proximate result of actions undertaken by the Defendants, their employees, agents and/or servants;

c.    Failing to properly label areas of the plant, plant appurtenances and structures, including but not limited to, building insulation, pipes, boilers, walls, ceilings, floors and other areas, as to the existence of friable or potentially friable asbestos-containing materials;

d.    Failing to take reasonable precautions to publish, disseminate, or otherwise make available to Plaintiffs, warnings of the dangerous nature of the existence in the Salisbury and Shelby Facilities of asbestos and/or asbestos-containing materials, and/or prepare, implement or disseminate any reasonable plan to protect the Plaintiffs from overall exposure to asbestos-containing materials; and

g.    Failing to warn the Plaintiffs in other means to be proven at trial.

104.    As a direct and proximate effect of the Defendants' failure to warn, the Plaintiffs

were each damaged in an amount exceeding $75,000, to be more specifically proven at trial.

**Third Cause of Action --**
**Negligent Hiring, Training and/or**
**Supervision of Defendant-Employees**

105.    Plaintiffs incorporate by reference the foregoing paragraphs as though they are set

forth herein.

106.    During some or all of the pertinent times, Defendants hired, retained and/or

otherwise employed individuals in order to perform the employer's obligations and duties at the

Salisbury and Shelby Facilities.

107.    Defendants had a duty to hire employees and supervisors who were competent

and who would otherwise perform their job functions and assignments in a reasonably safe

manner, and a duty to properly and adequately train its supervisors and employees in the proper

and safe manner in which to perform their functions and assignments.

108.    Defendants were negligent in that they hired, retained and/or otherwise employed

individuals who were untrained, incompetent, unsafe, careless, reckless and who otherwise acted

in an unreasonable and unsafe manner in the performance of their job functions and assignments,

including but not limited to, their purchase, transportation, installation, handling, cutting, sawing,

fitting, demolition, removal and/or packaging of asbestos and asbestos-containing materials.

109.    Defendants were negligent in that they failed to properly train, inform, equip and monitor supervisors and employees and the activities of its workers who were employed at the Salisbury and Shelby Facilities.

110.    The transportation, installation, cutting, removal and/or otherwise handling of asbestos and asbestos-containing materials by Defendants, their employees, servants and/or agents was done in such a negligent and irresponsible manner that surrounding work areas, at times, appeared to be full of clouds of white smoke, and that the dust-contained asbestos was like a snowstorm, clouding and fogging the entire rooms and work areas.

111.    The handling of asbestos-containing materials by Defendants, their responsible employees, agents and/or servants was done in such a negligent and irresponsible manner that hammers and objects of the like were used to knock asbestos insulation and materials off of pipes, boiler, ceilings, walls and other areas.

112.    Defendants, their employees, agents and/or servants handled and worked with asbestos-containing material in such a negligent and irresponsible manner that the air surrounding the jobsites was not encapsulated or properly ventilated to prevent the release into surrounding areas of airborne asbestos dust and fibers into the breathing space occupied by the Plaintiffs.

113.    As a direct and proximate result of the Defendants' negligent hiring, training and/or supervision of its employees, agents and/or servants, the Plaintiffs were each damaged in an amount exceeding $75,000, to be more specifically proven at trial.

**Fourth Cause of Action --
Joint and Several Liability**

114.     Plaintiffs incorporate by reference the foregoing paragraphs as though they are fully set forth herein.

115.     The negligent, willful and/or wanton acts of Fluor Daniel, including each of the Defendants as alleged herein, through their employees, servants and/or agents took place at the Salisbury and Shelby Facilities.

116.     All of the negligent, willful and/or wanton acts of each Defendant, through their employees, servants and/or agents, took place at the Salisbury Facility during and within a single time period, namely, between on or about January 1, 1965 and on or about February 15, 1992, and furthermore, upon information and belief, Defendants in addition engaged in asbestos-related construction, abatement and other activities at the Shelby Facility, within discrete periods of time during which affected Plaintiffs were employed at the Shelby Facility.

117.     As a direct and proximate result of the negligent, willful or wanton acts and/or omissions of each and every Defendant as alleged herein, through their employees, agents and/or servants, the Plaintiffs herein were injuriously exposed to asbestos dust and fiber.

118.     Plaintiffs' harmful exposure to asbestos dust and fibers at the Salisbury and Shelby Facilities during the aforementioned time period was a direct and proximate cause of personal illnesses and injuries, including, but not limited to, asbestos disease, asbestosis, lung cancer, other cancers, mesothelioma and/or associated pulmonary diseases and cancers.

119.     The harm and injury suffered by the Plaintiffs was the result of the cumulative exposure to asbestos dust and fibers at the Salisbury and Shelby Facilities during the time period

that each Plaintiff was present in and throughout the relevant facility at which each was employed.

120.    The negligent, willful and/or wanton acts and/or omissions of each of the Defendants herein, through their employees, servants and/or agents, contributed in whole or in part to the injuries and harm suffered by each of the Plaintiffs as alleged herein.

121.    Each of the Defendants herein, through their employees, servants, or agents, is jointly and severally liable to each of the Plaintiffs herein for their negligent, willful and/or wanton acts and/or omissions.

122.    As a direct and proximate effect of the Defendants' joint and several liability, the Plaintiffs were each damaged in an amount exceeding $75,000, to be more specifically proven at trial.

**Fifth Cause of Action --**
**Inherently Dangerous Activity**

123.    Plaintiffs incorporate by reference the foregoing paragraphs as though they are fully set forth herein.

124.    The transportation, installation, handling, removal, labeling and/or packaging of asbestos and asbestos-containing materials were and are inherently dangerous activities.

125.    The aforementioned activities can only be performed safely provided certain precautions are taken, but will, in the ordinary course of events, cause injury and/or harm to others if these precautions are omitted.

126.    As parties engaged in an inherently dangerous activity, the Defendants had a non-delegable duty to see that the Plaintiffs had a safe place to work and that proper measures and safeguards were implemented and taken.

127.    Defendants breached their non-delegable duty to perform these activities safely by exposing and/or allowing the Plaintiffs to become exposed to asbestos materials.

128.    As a direct and proximate result of the acts and/or omissions of the Defendants and/or third parties to which said Defendants are responsible, the Plaintiffs herein were exposed to asbestos dust and fibers and were injured.

129.    As a direct and proximate effect of the Defendants' injurious engagement in an inherently dangerous activity, the Plaintiffs were each damaged in an amount exceeding $75,000, to be more specifically proven at trial.

**Sixth Cause of Action --**
**Violation of Applicable Federal, State and/or Local**
**Statutes, Ordinances and Regulations/ Negligence Per Se**

130.    Plaintiffs incorporate by reference the foregoing paragraphs as though they are fully set forth herein.

131.    During the pertinent times, there were in full force and effect numerous federal, state and/or local statutes, ordinances and/or regulations which governed and regulated the activities of the Defendants, their employees, agents and/or servants.

132.    Defendants, their employees, agents and/or servants, violated said federal, state and/or local statutes, ordinances and/or regulations.

133.   Plaintiffs herein, as individuals working in close proximity to the Defendants, their employees, servants and/or agents, were within a class of individuals intended to be protected by the relevant statutes, ordinances and/or regulations.

134.   In violating said statutes, ordinances, and/or regulations, the Defendants, their employees, were negligent per se.

135.   The injuries suffered by the Plaintiffs herein were a foreseeable, direct and proximate result of the violations herein.

136.   As a direct and proximate effect of the Defendants' negligence per se, the Plaintiffs were each damaged in an amount exceeding $75,000, to be more specifically proven at trial.

### Damages for Plaintiff-Employees

137.   Plaintiffs incorporate by reference, the foregoing paragraphs as though they are fully set forth herein.

138.   As a direct and proximate result of the release of asbestos dust and fibers at the Salisbury and Shelby Facilities, the Plaintiff-Employees have been injured, have sustained illness, and have suffered direct and irreparable harm to their lungs, respiratory systems, bodies, and overall health.  Plaintiff-Employees' asbestos exposure has led to personal injury and illness including without limitation cancer, respiratory impairment, fear of cancer, and other harms.

139.   Fluor Daniels' negligent involvement in construction, abatement and other activities at the Salisbury and Shelby Facilities caused or contributed to the injuries suffered by the Plaintiff-Employees.

140.   As a result of the injuries sustained, Plaintiff-Employees have incurred and will incur in the future, medical treatment, including but not limited to medical monitoring, prescription medication, nursing and home care, physician and hospital expenses, diagnostic testing and other related and necessary medical expenses.

141.   The medical condition of the Plaintiff-Employees will likely deteriorate irreparably as asbestosis is a progressive, non-reversible disease.

142.   The Plaintiffs, as a result of their asbestos exposure, have a significantly increased risk of developing various cancers, including lung cancer, and some Plaintiffs have already developed cancer.

143.   As a result of Plaintiffs' exposure to dangerous asbestos substances, as well as the progressive nature of the disease, and the increased risk of cancer and other negative health effects in the future, the Plaintiffs are in need of medical monitoring.

144.   The injuries sustained to the Plaintiffs are permanent in nature and will continue to exist throughout the Plaintiffs' expected work life and life span.

145.   The work life and life span of each Plaintiff who was exposed and injured by asbestos dust and fibers will be shortened as a direct and proximate result consequence of the harm inflicted herein.

31

146.     Accordingly, the Plaintiff-Employees are entitled to compensatory damages in an amount in excess of $75,000 to be proven at trial.

### Damages -- Loss of Consortium

147.     The Plaintiff-Spouses incorporate by reference the foregoing paragraph as though they are fully set forth herein.

148.     As a direct and proximate result of the illnesses and diseases suffered by the Plaintiff-Employees, the Plaintiff-Spouses have lost financial support for the rest and remainder of their lives.

149.     The Plaintiff-Spouses have suffered the loss of consortium, general services, companionship and society, and will continue to suffer the loss of the Plaintiff-Employees' consortium, services, companionship and society, for the rest and remainder of their lives.

150.     As a result of the illnesses and diseases suffered by the Plaintiff-Employees, their spouses have rendered nursing care and other services and it will be necessary for them to continue such services to the Plaintiff-Employees in the future until their deaths.

151.     Accordingly, the Plaintiff-Spouses are entitled to loss of consortium damages in an amount in excess of $75,000 to be proven at trial.

### Punitive Damages

152.     Plaintiffs incorporate by reference the foregoing paragraphs as though they are fully set forth herein.

153.   The conduct of the Defendants, as set forth in the above-stated causes of actions, was willful, wanton, malicious, and in reckless disregard for the safety of the Plaintiffs and others.

154.   The conduct of the Defendants, as referenced above, justifies an award of punitive damages for each and every Plaintiff contained herein.

155.   Pursuant to N.C. Gen. Stat. § 1D-15(a), Defendants are properly liable for punitive damages in this action in that Defendants are liable for compensatory damages and have committed one or more aggravating factors justifying an award of punitive damages, including without limitation, acts of egregious and reckless behavior with regard to ensuring that proper precautions are taken with regard to known dangers of asbestos, and specific instances of willful and wanton conduct.

156.   Pursuant to N.C. Gen. Stat. § 1D-15(a), Defendants are properly liable for punitive damages to the extent Defendants are otherwise liable for vicarious liability in that upon information and belief, one or more of Defendants' officers, directors and/or managers participated in, knew of, and/or condoned the conduct constituting the aggravating factor or factors giving rise to punitive damages.

157.   Defendants are properly liable for punitive damages under Chapter 1D of the North Carolina General Statutes in light of:

    a.   The reprehensibility of Defendants' motives and conduct in condoning and facilitating asbestos construction, installation and abatement activities with actual knowledge of the great health risks posed by asbestos;

33

b.   The likelihood, during the relevant times, that workers at the affected facilities including the Plaintiffs would sustain serious harm as a result of the misconduct of the Defendants and consequent exposure to asbestos;

c.   The degree of the Defendants' awareness of the health risks and effects of asbestos exposure and of the probable consequences of Defendants' conduct;

d.   The duration of the Defendants' conduct at the plant sites and Salisbury and Shelby Facilities;

e.   The nature and severity of the actual damages suffered by the Plaintiff workers exposed to and injured by the asbestos, including serious and potentially fatal illness and injury;

f.   Defendants' involvement in concealment of the health risks and facts regarding asbestos materials;

g.   Defendants' involvement in similar past conduct as may be shown at trial; and

h.   The Defendants' profiting from their misconduct.

### Demand for Jury Trial and Judgment

**WHEREFORE, the Plaintiffs pray for relief as follows:**

1.   That each of the Plaintiff-Employees have and recover from the Defendants a sum in excess of $75,000 plus interest thereon, from and after the date of the filing of this action, until paid in the highest amount allowed by law.

2.   That each of the Plaintiff-Spouses have and recover from the Defendants a sum in excess of $75,000 plus interest thereon from and after the date of filing of this action until paid at the highest amount allowed by law.

3.   That each of the Plaintiffs recover from the Defendants punitive damages.

4.      That the Plaintiffs and their spouses be deemed entitled to medical monitoring.

5.      That the costs of this action be taxed against the Defendants.

6.      That all issues of fact be tried by a jury.

7.      For such other and further relief as the Court may deem just and proper.

This the 15th day of April, 2004.

Respectfully submitted,

WALLACE and GRAHAM, P.A.

Mona Lisa Wallace, Esq.
NC Bar No. 009021
Wallace and Graham, P.A.
525 North Main Street
Salisbury, North Carolina  28144
704/633-5244

# Exhibit E

Docket as of August 1, 2004 10:33 am                    Web PACER (v2.3)

---

# U.S. District Court

## Western District of North Carolina (Statesville)

## CIVIL DOCKET FOR CASE #: 04-CV-47

## Benfield, et al v. Daniel Intl Corp, et al

Filed: 04/15/04
Assigned to: Judge Lacy H. Thornburg
Jury demand: Both
Demand: $75,000
Nature of Suit: 368
Lead Docket: None
Jurisdiction: Diversity
Dkt# in other court: None
Cause: 28:1332 Diversity-Asbestos Litigation

---

SILAS DAVID BENFIELD, and wife
    plaintiff

Mona Lisa Lane Wallace
[COR LD NTC]
Wallace & Graham
525 N. Main St.
Salisbury, NC 28144
704/633-5244

BETTY FAYE BENFIELD
    plaintiff

Mona Lisa Lane Wallace
(See above)
[COR LD NTC]

ROBERT LEE BAKER, and wife
    plaintiff

Mona Lisa Lane Wallace
(See above)
[COR LD NTC]

DOROTHY BAKER
    plaintiff

Mona Lisa Lane Wallace
(See above)
[COR LD NTC]

LARRY LAMAR CAIN, and wife
    plaintiff

Mona Lisa Lane Wallace
(See above)
[COR LD NTC]

VERA M. CAIN
    plaintiff

Mona Lisa Lane Wallace
(See above)
[COR LD NTC]

GENE WADE COBB, and wife
    plaintiff

Mona Lisa Lane Wallace
(See above)

[COR LD NTC]

DORIS BRUMLEY COBB                    Mona Lisa Lane Wallace
      plaintiff                      (See above)
                                     [COR LD NTC]

CARSON ARTHUR CURLEE                  Mona Lisa Lane Wallace
      plaintiff                      (See above)
                                     [COR LD NTC]

DANIEL DUDLEY DUGANNE, and            Mona Lisa Lane Wallace
wife                                 (See above)
      plaintiff                      [COR LD NTC]

NORMA GAIL DUGANNE                    Mona Lisa Lane Wallace
      plaintiff                      (See above)
                                     [COR LD NTC]

CHARLES WARREN FULLER, and            Mona Lisa Lane Wallace
wife                                 (See above)
      plaintiff                      [COR LD NTC]

RACHIEL ATKINSON FULLER               Mona Lisa Lane Wallace
      plaintiff                      (See above)
                                     [COR LD NTC]

WILLIAM JERRY HAMBY                   Mona Lisa Lane Wallace
      plaintiff                      (See above)
                                     [COR LD NTC]

TONY CALVIN HEILIG, and wife          Mona Lisa Lane Wallace
      plaintiff                      (See above)
                                     [COR LD NTC]

PATRICIA SAIN HEILIG                  Mona Lisa Lane Wallace
      plaintiff                      (See above)
                                     [COR LD NTC]

ALONZO STEVEN HUNTER, SR., and        Mona Lisa Lane Wallace
wife                                 (See above)
      plaintiff                      [COR LD NTC]

RACHEL STEELE HUNTER                  Mona Lisa Lane Wallace
      plaintiff                      (See above)
                                     [COR LD NTC]

RICHARD LEROY KINTER, and wife        Mona Lisa Lane Wallace
      plaintiff                      (See above)
                                     [COR LD NTC]

VIVIAN LEE KINTER                     Mona Lisa Lane Wallace
      plaintiff                      (See above)
                                     [COR LD NTC]

WALTER LAWRENCE LANNING, and          Mona Lisa Lane Wallace
wife                                 (See above)

```
          plaintiff                  [COR LD NTC]

VERCIE LEE LANNING                    Mona Lisa Lane Wallace
     plaintiff                        (See above)
                                      [COR LD NTC]

FREDDIE DEE LAWRENCE, and wife        Mona Lisa Lane Wallace
     plaintiff                        (See above)
                                      [COR LD NTC]

MARY ELIZABETH MOORE LAWRENCE         Mona Lisa Lane Wallace
     plaintiff                        (See above)
                                      [COR LD NTC]

RALPH LEONARD MARTIN, and wife        Mona Lisa Lane Wallace
     plaintiff                        (See above)
                                      [COR LD NTC]

KATHRYN NOVELLA MARTIN                Mona Lisa Lane Wallace
     plaintiff                        (See above)
                                      [COR LD NTC]

CLIFFORD LEWIS MCCOY, and wife        Mona Lisa Lane Wallace
     plaintiff                        (See above)
                                      [COR LD NTC]

LEE OLYOUN MCCOY                      Mona Lisa Lane Wallace
     plaintiff                        (See above)
                                      [COR LD NTC]

THOMAS GENE MEADE, and wife           Mona Lisa Lane Wallace
     plaintiff                        (See above)
                                      [COR LD NTC]


MARGARET CAROL HUNT MEADE             Mona Lisa Lane Wallace
     plaintiff                        (See above)
                                      [COR LD NTC]

CARL MASTON MESSICK, and wife         Mona Lisa Lane Wallace
     plaintiff                        (See above)
                                      [COR LD NTC]

LINDA NICHOLS MESSICK                 Mona Lisa Lane Wallace
     plaintiff                        (See above)
                                      [COR LD NTC]

CLAUDE ROBERT PATTERSON, and          Mona Lisa Lane Wallace
wife                                  (See above)
     plaintiff                        [COR LD NTC]

MILDRED LAMBERT PATTERSON             Mona Lisa Lane Wallace
     plaintiff                        (See above)
                                      [COR LD NTC]

WILLIAM CLARENCE PHELPS, JR.,         Mona Lisa Lane Wallace
and wife                              (See above)
     plaintiff                        [COR LD NTC]

FLORENCE REBECCA PHELPS               Mona Lisa Lane Wallace
```

```
        plaintiff                      (See above)
                                       [COR LD NTC]


RUSSELL LEE RICE, and wife             Mona Lisa Lane Wallace
        plaintiff                      (See above)
                                       [COR LD NTC]


BETTY LOU GOBBLE RICE                  Mona Lisa Lane Wallace
        plaintiff                      (See above)
                                       [COR LD NTC]


CHRISTOPHER LEE SHUPE, and             Mona Lisa Lane Wallace
wife                                   (See above)
        plaintiff                      [COR LD NTC]


SHERLYN BLACKWELDER SHUPE              Mona Lisa Lane Wallace
        plaintiff                      (See above)


                                       [COR LD NTC]

WILLIAM LOWRY SMITH                     Mona Lisa Lane Wallace
        plaintiff                      (See above)
                                       [COR LD NTC]


MAX LUTHER THOMPSON, and wife          Mona Lisa Lane Wallace
        plaintiff                      (See above)
                                       [COR LD NTC]


MONICA BROOKS THOMPSON                 Mona Lisa Lane Wallace
        plaintiff                      (See above)
                                       [COR LD NTC]


LOUIE DENVER WATKINS, and wife         Mona Lisa Lane Wallace
        plaintiff                      (See above)
                                       [COR LD NTC]


PHYLLIS S. WATKINS                     Mona Lisa Lane Wallace
        plaintiff                      (See above)
                                       [COR LD NTC]


COY RAY WILES, and wife                Mona Lisa Lane Wallace
        plaintiff                      (See above)
                                       [COR LD NTC]


BETTY SUE WILES                        Mona Lisa Lane Wallace
        plaintiff                      (See above)
                                       [COR LD NTC]


    v.


DANIEL INTERNATIONAL                    Joel M. Bondurant, Jr.
CORPORATION                            [COR LD NTC]
fka                                    Haynsworth, Sinkler, Boyd, P.A.
Daniel Construction Company            P. O. Box 2048
        defendant                      Greenville, SC 29602
                                       USA
                                       864/240-3200

                                       James B. Pressly, Jr.
```

```
                                    [COR LD NTC]
                                    Haynsworth, Marion, McKay &
                                    Guerard
                                    P. O. Box 2048


                                    Greenville, SC 29602
                                    USA
                                    843/240-3200

FLUOR ENTERPRISES, INC.             Joel M. Bondurant, Jr.
fka                                 (See above)
Fluor Daniel, Inc.                  [COR LD NTC]
     defendant
                                    James B. Pressly, Jr.
                                    (See above)
                                    [COR LD NTC]


STRATEGIC ORGANIZATIONAL            Joel M. Bondurant, Jr.
SYSTEMS ENVIRONMENTAL               (See above)
ENGINEERING DIVISION, INC.          [COR LD NTC]
fdba
SOS International, Inc.              James B. Pressly, Jr.
fdba                                (See above)
SOS Environmental , Inc.            [COR LD NTC]
     defendant
```

---

# DOCKET   PROCEEDINGS

---

DATE   #          DOCKET   ENTRY


4/15/04  1      COMPLAINT   Filing Fee $ 150.00 Receipt # 28506 (ejb)
                [Entry date 04/22/04]

4/15/04  --     SUMMONS(ES) issued for Daniel Intl Corp, Fluor Ent Inc,
                Strategic Org Sys En (ejb) [Entry date 04/22/04]

4/22/04  --     "Tag-Along" letter mailed to the Clerk of The Panel (ejb)
                [Entry date 04/22/04]

4/23/04  2      ORDER that this case shall be included in the Coordinated
                Proceeding "In Re: Asbestos-Related Litigation, WDCP-83-1"
                and shall be governed by the provisions of the Initial  (
                signed by Judge Lacy H. Thornburg ) (ejb)
                [Entry date 04/23/04]

| 5/12/04 | 3 | ANSWER to Complaint by Fluor Ent Inc; jury demand (ejb) [Entry date 05/13/04] |
|---|---|---|
| 5/28/04 | 4 | Motion within asbestos litigation to Sever by Fluor Ent Inc (ejb) [Entry date 05/28/04] |
| 5/28/04 | 5 | MEMORANDUM by Fluor Ent Inc in support of [4-1] motion to Sever by Fluor Ent Inc (ejb) [Entry date 05/28/04] |
| 6/10/04 | 6 | MEMORANDUM by Pltfs in opposition to [4-1] motion to sever by Fluor Ent Inc (ejb) [Entry date 06/15/04] |
| 6/21/04 | 7 | NOTICE by Daniel Intl Corp, Fluor Ent Inc, Strategic Org Sys En that dfts elect not to file rply memo to mem/opp of mot/sever cc:  LHT (cbb) [Entry date 06/21/04] |
| 6/24/04 | 8 | ANSWER to Complaint by Daniel Intl Corp; jury demand (ejb) [Entry date 06/24/04] |
| 6/24/04 | 9 | ORDER denying without prejudice to renewal Defts' [4-1] motion to sever ( signed by Judge Lacy H. Thornburg ) [EOD DATE: 6/24/04] (ejb) [Entry date 06/24/04] |
| 6/29/04 | 10 | ANSWER to Complaint by Strategic Org Sys En (jhg) [Entry date 06/30/04] |

---

Case Flags:
ASBEST

---

END OF DOCKET: 5:04cv47

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/02/2004 17:03:40 | | |
| **PACER Login:** | wg0086 | **Client Code:** |
| **Description:** | docket report | **Search Criteria:** 5:04cv00047 |
| **Billable Pages:** | 7 | **Cost:** 0.49 |

# Exhibit F

(333)

CRW

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:  ASBESTOS PRODUCTS LIABILITY    :
        LITIGATION (NO. VI)    :
——————————————————————— X    CIVIL ACTION
                                        NO. MDL 875
THIS DOCUMENT RELATES TO:  ALL ACTIONS:
——————————————————————— X

**FILED**

### PRETRIAL ORDER NO. 3

07 1992

MICHAEL E. KUNZ, Clerk

## TABLE OF CONTENTS

By _____ Dep. Clerk

1. PROCEDURE ............................. 1

   A.   JOINT DEFENSE PRIVILEGE........................... 1

   B.   SERVICE OF PLEADINGS ................................. 2

   C.   NO WAIVER OF RIGHT OF REPRESENTATION .................. 3

2. ORGANIZATION OF PERIPHERAL DEFENDANTS' COUNSEL ............. 4

   A. DESIGNATION OF REPRESENTATIVES ......................... 4

   B. RIGHT OF PERIPHERAL DEFENDANT COUNSEL TO DISSENT ....... 5

   C. ENTRY OF ORDERS ....................................... 5

3. PROCEDURES FOR DISMISSAL .................................. 5

   I. LETTER MOTION PROCEDURES ............................... 5

   II. SHORT FORM SUMMARY JUDGMENT PROCEDURES.................. 6

4. SETTLEMENT CONFERENCES..................................... 8

5. REMAND .................................................... 10

6. EFFECT .................................................... 11

EXHIBIT "A" ................................................. 12

EXHIBIT "B" ................................................. 14

EXHIBIT "C" ................................................. 16

EXHIBIT "D" ................................................. 18

## EXHIBIT ___ "H"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:  ASBESTOS PRODUCTS LIABILITY
        LITIGATION (NO. VI)

THIS DOCUMENT RELATES TO:  ALL ACTIONS:

CIVIL ACTION
NO. MDL 875

**FILED**

JAN 0 7 1992

MICHAEL E. KUNZ, Clerk

By _____ Dep. Clerk

## PRETRIAL ORDER NO. 3

IT IS HEREBY ORDERED:

1. PROCEDURE

    A.  Joint Defense Privilege

    The Court recognizes that, in order to maintain the cost-effective administration of these cases, it is necessary that counsel work together to coordinate discovery, pursue settlement discussions, and conduct other activities in these cases. Cooperative or collective efforts by or among the defendants in the administration and handling of these consolidated cases shall not waive the attorney-client privilege, the joint defense privilege, the protection afforded attorney-work product, or any other privilege to which a party, or its counsel, may otherwise be entitled.  The designation of any attorney to act as spokesperson for a group of plaintiffs or defendants, such as lead counsel and liaison counsel, shall not preclude other counsel from participating to the extent necessary to represent the individual interests of their clients, as long as such participation does not involve duplication or unnecessary delay.  Cooperative or collective efforts among defense counsel relating to this

litigation are encouraged and shall not be discoverable, and shall
not be communicated to the trier of fact.

    B.  <u>Service of Pleadings</u>

       Any document filed with the Court must be served on
liaison counsel for all other parties. A party serving a
pleading, motion, brief, memorandum, discovery requests or
discovery response that relates to "All Actions" shall serve that
document on liaison counsel prior to the submission to the Court
or Clerk. A certificate of service shall accompany each document
specifying the name and address of those served, the date of
service and the manner of service.  It is hereby Ordered by the
Court that Conant Scott Rogers of Conant Corporation shall be the
designated agent of the Court for the service of all documents
filed with the Court relating to "All Actions".  Service of such
documents that relate to individual actions shall be on all
parties in accordance with the Federal Rules of Civil Procedure.
Except as stated above, liaison counsel shall not accept service
of pleadings on behalf of parties other than their own clients.

    C.  <u>No Waiver of Right of Representation</u>

       1. The defendants shall cooperate in good faith to
avoid filing of duplicative motions.  No party shall waive any
rights by failing to attend a hearing on such motion unless the
attendance of the party has been ordered by the Court.  The
designation of any attorney to act as spokesperson for a group of
plaintiffs or defendants shall not preclude other counsel from
participating to the extent necessary to represent the individual

interests of their clients, as long as such participation does not involve duplication or unnecessary delay.

2. To further reduce the amount of unnecessary paperwork that would otherwise be filed with the Court and exchanged among counsel, each defendant (including direct defendants, third-party defendants, and defendants against whom cross claims are asserted) shall be deemed to have joined in and plead any dispositive motion against plaintiff where the granting of the motion would benefit it or all defendants generally. For example, if one defendant moves for summary judgment on the ground that plaintiff's claims are barred by the statute of limitations, it shall not be necessary for co-defendants to file duplicative motions, adopting the reasoning of the initial motion. All co-defendants shall be deemed to have joined in the initial motion unless specifically stated otherwise, and no specific pleading is required.

## 2. ORGANIZATION OF PERIPHERAL DEFENDANTS' COUNSEL

### A. Designation of Representatives

Paragraph 6 at page 9 of Pretrial Order No. 1 entered by this court on September 17, 1991 is amended as follows: the contact person for the peripheral defendants for communication relating to "All Actions" from the Court, Plaintiffs' Lead or Liaison Counsel and Defendants' Liaison Counsel shall be David Craig Landin. Liaison counsel for peripheral defendants shall be: David Craig Landin and John J. Repcheck.

Duties of Peripheral Defendants' Liaison Counsel shall include:

(1) Maintain and distribute to co-counsel and to Plaintiff's Liaison Counsel and Defendants' Co-Liaison Counsel an up-to-date service list;

(2) Receive and, as appropriate, distribute to peripheral defendants' co-counsel Orders from the Court and documents from opposing parties and counsel;

(3) When necessary, provide notices to all participating counsel, either directly or by appropriate means.

(4) In the event that David Landin or his partner, James H. Price, III of McGuire, Woods, Battle & Boothe is unavailable, other Peripheral Defendants' liaison counsel shall serve as contact source for communications from the Court, Plaintiffs' Lead or Liaison Counsel and Defendants' Liaison Counsel.

B. **Right of Peripheral Defendant Counsel to Dissent**

Other counsel for peripheral defendants who disagree with actions of their liaison counsel or who have individual or divergent positions, may present written and oral arguments, conduct examinations at hearings or depositions, and otherwise act separately on behalf of their client(s) as appropriate.

-4-

C. Entry of Orders

No proposed Order relating to "All Actions" shall be submitted to the Court by any party without fifteen (15) days written notice to Liaison Counsel for plaintiffs, Liaison Counsel for the defendants and Liaison Counsel for the peripheral defendants.

3. PROCEDURES FOR DISMISSAL

The following procedures establish a mechanism for the fair, prompt and cost-effective resolution of requests for dismissals and short-form summary judgment motions by defendants:

I. Letter Motion Procedures.

A. Any time after the expiration of sixty (60) days after a moving party ("Movant") has filed an answer to plaintiff's complaint, the Movant may send a letter motion to plaintiff and all other parties of record with a proposed Order for Dismissal together with a supporting affidavit and other documents, if appropriate, stating that the Movant is entitled to a dismissal on one or more of the following grounds:

1. Movant did not come into existence until after plaintiff's alleged asbestos exposure;

2. Movant never manufactured, distributed, sold or otherwise supplied any asbestos-containing product prior to or at the time of plaintiff's alleged exposure;

3. Movant never manufactured, distributed, sold or otherwise supplied any asbestos-containing product to plaintiff's

employer or performed any work involving asbestos at plaintiff's place(s) of employment;

4.  Any time after the expiration of one hundred eighty (180) days after the filing of plaintiff's complaint, movant may seek dismissal pursuant to these letter motion procedures based on the absence of evidence of exposure to Movant's asbestos-containing products; or other appropriate grounds.

B.  Any opposition by a party ("Respondent") to Movant's request for dismissal shall be in letter form to the Movant delivered within thirty (30) days of receipt of Movant's letter. The letter shall set forth the specific evidentiary basis for opposition together with supporting documents, if appropriate.

C.  If no opposition is received by the Movant within such thirty (30) day period, the Movant may file with the Court a proposed Order of Dismissal in the form attached hereto as Exhibit "A", which Order shall be entered by the Court.

D.  If there is opposition from a Respondent, the Movant may proceed under Section II.

II.  **Short Form Summary Judgment Procedures**.

A.  Upon the expiration of such thirty (30) day period set forth in Section I.B. above, the Movant and/or any Respondent may commence discovery within a sixty (60) day period solely on those issues raised by the Movant's letter motion and responses in opposition to determine whether proper grounds for a dismissal exist.  The discovery limitations set forth herein shall be

applicable solely to the procedures established by this Order and shall not operate as limitations on any other discovery rights or obligations.

B.  If the stated basis for opposition to dismissal is a need for further discovery and no discovery has been commenced by a Respondent within such sixty (60) day period, a Movant may submit a proposed Order to the Court in the form attached hereto as Exhibit "B", which Order shall be entered by the Court.

C.  If discovery is commenced by Movant or a Respondent within such sixty (60) day period, upon the completion of such discovery a Movant may submit a short form motion for summary judgment to the Court, in the form attached hereto as Exhibit "C", stating that discovery has failed to establish a genuine issue of material fact as to the proposed grounds for dismissal, along with a proposed Order.  Such motion shall be deemed a contested Rule 56 Motion unless certified as "uncontested".

D.  If the motion is certified as uncontested, the proposed order granting summary judgment shall be entered by the Court.

E.  Any Respondent wishing to oppose a short form motion for summary judgment may file within twenty (20) days a short form response not to exceed two (2) pages in the form attached hereto as Exhibit "D", setting forth any facts not included in paragraphs 6 and 7 of defendant's short form motion.

F.  Movant may file within ten (10) days a reply to said response not to exceed one (1) page.

G.   The Court may request that the parties submit memoranda of law not to exceed five (5) pages in support of their respective positions.

H.   This short form summary judgment motion procedure also shall be available to any defendant seeking summary judgment under Rule 56 on any other basis that may be asserted appropriately under said Rule.  Nothing in this Order shall affect the right of any party to file a standard motion for summary judgment under Rule 56.

I.   A Movant may group more than one case in a letter motion or Rule 56 Motion under this Order.

J.   The procedures set forth in Sections 3.I. and 3.II. of this Order shall also apply with respect to applications by third-party defendants seeking dismissal of third-party claims.

4.   <u>SETTLEMENT CONFERENCES</u>

A. The Court hereby establishes a procedure for Settlement Conferences in all cases consolidated under Civil Action No. MDL 875.  The Court encourages all counsel to request settlement conferences, consistent with this Order.

1. Until further Order of the Court, for all cases subject to settlement conferences to be held in 1992 and thereafter, plaintiffs and third-party plaintiffs shall specify the basis for liability as to each defendant in the form of a sworn affidavit.  The information contained in the affidavit shall include, at a minimum, the information requested under Subsection 2.c, including all subparts.

2. No settlement conference shall occur unless the following procedure is followed:

    a. Counsel requesting a settlement conference must do so in writing and must identify by court, term, if applicable, and number, and full name of plaintiff and each defendant, each case to be discussed at the conference;

    b. A copy of the request for a settlement conference must be served on counsel for each party and a certification of service must accompany the written request;

    c. Counsel must certify that he or she has submitted to each party or parties' representative in the case, copies of all medical expert reports in counsel's possession and a verified affidavit of the claimant or, if the claimant is deceased, the executor or administrator of the plaintiff's estate, setting forth (if not previously supplied by way of discovery) the following information:

    (1) the name, address, social security number, and date of birth of claimant;

    (2) the identity of the specific defendants against whom plaintiff's claim is being made;

    (3) a complete employment history including location, employer, type of employment and inclusive dates of each;

    (4) a specific, not generic, description of all asbestos-containing products with exposure

-9-

dates and specific manner in which plaintiff claims
he was exposed, and location of exposure;

(5) the specific name of each asbestos
containing product to which exposure is alleged as
well as the name of the manufacturer, distributor,
and supplier of those products and the name of any
company who performed any work involving asbestos
at plaintiff's place of employment;

(6) with respect to each product identified,
inclusive dates of exposure and each job site at
which the exposure occurred;

(7) a listing of all product identification
witnesses by name, address and telephone number and
a statement as to whether or not each witness has
been deposed in any case.  If so, the date and
location of the depositions and the identity of the
court reporter or stenographer.

3.  Plaintiff shall submit the above information to
counsel for each defendant at least 20 days prior to a scheduled
conference.  Failure to provide such information by this deadline
shall relieve defense counsel from participating in the
conference.

5.  <u>REMAND</u>

Cases which are not settled, following a good faith attempt
by all parties, shall be subject to remand.  All requests for a
suggestion of remand shall be accompanied by a written Statement

of Position regarding the remand.  It shall be served upon all remaining parties to the action no less than five (5) days prior to a telephone or personal conference on the matter which shall be scheduled by the party requesting the remand.  The Statement of Position shall set forth the names of all remaining parties, the efforts made to settle the case, the current status of settlement negotiations with each remaining party, and the envisioned impediments to settlement.  Opposing counsel may respond in writing or orally at the conference.  All parties shall be prepared to fully discuss A.D.R. solutions for the action.  The Court shall enter such orders following the conference as may be appropriate.

6.  **EFFECT**

To the extent that any provisions of this order are inconsistent with those set forth in any pretrial order earlier entered by this Court, the provisions of this Order shall govern.

THE COURT:

CHARLES R. WEINER, J.

DATED: 1/3/92

XC 1/8/92:  USDC's
A. Trevelise
R. Spinelli
R. Motley
G. Locks
D. Landin
J. Repchecks

XC 1/17/92:  L. Jacques

EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:  ASBESTOS PRODUCTS LIABILITY  :
        LITIGATION (NO. VI)            :
                                       x   CIVIL ACTION NO. MDL 875
                                       :
THIS DOCUMENT RELATES TO: _____  :
_____    X

## ORDER OF DISMISSAL

AND NOW, this _____ day of _____, 199__, pursuant to MDL 875 Pretrial Order No. 3, Section 3.I.C., upon consideration of the request for dismissal of defendant ABC Insulation Company, Inc. ("ABC"), all counsel of record having been served with its letter motion requesting dismissal by agreement, and there being no opposition to the entry of this Order;

IT IS HEREBY ORDERED that the request for dismissal is granted with prejudice as to the claims of _____ and without prejudice as to all crossclaims against defendant ABC for the following reason(s):

_____ 1.  Movant did not come into existence until after plaintiff's alleged asbestos exposure.

_____ 2.  Movant never manufactured, distributed, sold or otherwise supplied any asbestos-containing

-12-

product prior to or at the time of plaintiff's alleged exposure.

_____ 3. Movant never manufactured, distributed, sold or otherwise supplied any asbestos-containing product to plaintiff's employer or performed any work involving asbestos at plaintiff's place(s) of employment.

_____ 4. The absence of evidence of exposure to Movant's asbestos-containing products;

_____ 5. Other grounds.

SO ORDERED:

_____

HONORABLE CHARLES R. WEINER, U.S.D.J.

EXHIBIT "B"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:   ASBESTOS PRODUCTS LIABILITY   :
         LITIGATION (NO. VI)            :
                                        x   CIVIL ACTION NO. MDL 875
_____ :
                                        :
THIS DOCUMENT RELATES TO:               :
                                        x
_____

## ORDER GRANTING SUMMARY JUDGMENT

AND NOW, this _____ day of _____, 199_,

upon consideration of the Motion for Summary Judgment of defendant

ABC Insulation Company, Inc. ("ABC"), the Court finds as follows:

1. ABC served a letter motion demanding dismissal of

this matter upon all counsel of record on _____,

199_, and

2. One or more parties ("opposing parties") opposed the

demand of ABC for a dismissal of this matter, and

3. Said opposing parties failed to commence discovery

within sixty (60) days of the date of notice of opposition or

otherwise come forward with evidence to substantiate that there is

a genuine issue of material fact in this matter.

THEREFORE, pursuant to Section 3.II.B of MDL 875

Pretrial Order No. 3, and for good cause shown.

IT IS on this _____ day of _____,

199_,

-14-

ORDERED that the letter motion of ABC Insulation Company, Inc. for Summary Judgment is GRANTED and summary judgment is hereby entered in favor of ABC Insulation Company, Inc. on all claims asserted by _____.  All crossclaims asserted against ABC Insulation Company, Inc. are dismissed without prejudice.

SO ORDERED:


_____
HONORABLE CHARLES R. WEINER, U.S.D.J.

EXHIBIT "C"

Short Form Motion for Summary Judgment

_____ hereby moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Section 3.II. of the Court's MDL 875 Pretrial Order No. 3 dated _____ (the "Order"), in all cases on the list attached hereto as Exhibit "A". The grounds for the motion are as follows:

1.  Plaintiffs in each case allege exposure to asbestos products manufactured, distributed, sold or installed by defendants [during the period from _____ to _____] [in the course of their employment at _____].

2.  On _____, movant delivered a letter motion pursuant to Section 3.I.A. of the Order, notifying all parties that movant is entitled to dismissal for the following reason(s):

a. _____

b. _____

c. _____

3.  Written opposition was served within the required thirty-day period by the following parties on the following grounds:

4. Discovery was commenced by the following parties within the sixty (60) day period set forth in Section 3.II.C. of the Order:

5. All discovery undertaken by the above party(ies) has been completed, and there are no pending discovery disputes.

6. The facts on which movant relies in support of its motion are as follows:

7. Evidence adduced in discovery relevant to the facts on which movant relies is as follows:

8. Movant contends that the evidence adduced in discovery is insufficient to create a genuine issue of material fact.

WHEREFORE, defendant respectfully requests that the Court grant its motion and enter summary judgment in its favor and against _____ on all claims. All crossclaims asserted against _____ shall be dismissed without prejudice.

-17-

EXHIBIT "D"

Short Form Opposition to Motion for Summary Judgment

_____ ("Respondent") hereby opposes

the short form motion for summary judgment of defendant

_____, in all cases on the list attached hereto as

Exhibit "A". The grounds for the opposition are as follows:

1. The stated grounds for the motion are as follows:


2. Facts relevant to a disposition of the motion not

presented in defendant's motion, or presented in a form that

Respondent contends is inaccurate or incomplete are as follows:


3. Respondent contends that the evidence adduced in

discovery is sufficient to create a genuine issue of material

fact, and summary judgment should not be granted.

WHEREFORE, Respondent respectfully requests that the

Court deny the motion for summary judgment.