Oct-24-04 07:02pm From-ROUSSEL & ROUSSEL 504-651-6502 T-960 P.02/14 F-542
Case MDL No. 875 Document 4273 Filed 10/25/04 Page 1 of 13
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
OCT 25 2004
FILED
CLERK'S OFFICE

**MDL 875**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2004 OCT 22 PM 12: 14

LORETTA G. WHYTE
CLERK

MINUTE ENTRY
ZAINEY, J.
OCTOBER 22, 2004

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FLOYD RUSSO                                CIVIL ACTION

VERSUS                                     NO: 04-2331

AIR PRODUCTS AND CHEMICALS,                SECTION: "A" (5)
INC., et al.

Before this Court are Plaintiff's Motion to Remand (Rec. Doc. 4) and Plaintiff's Motion for Sanctions (Rec. Doc. 10). Defendant, American Motorists Insurance Company (hereinafter "American Motorists") removed Plaintiff's action from Orleans Parish Civil District Court on August 13, 2004 invoking the federal officer removal statute, 28 U.S.C. § 1442. Furthermore, on October 12, 2004, Defendant filed an amended notice of removal alleging that removal was also proper on the basis of federal enclave jurisdiction, 28 U.S.C. § 1441. Defendant, however, failed to obtain the consent of all parties when filing its amended motion; and, therefore, federal officer removal is the only basis for removal properly before this Court.

The Court finds that American Motorists' removal petition was untimely filed. Accordingly, for the reasons stated herein, Plaintiff's Motion to Remand is GRANTED and Plaintiff's Motion for Sanctions is DENIED.

DATE OF ENTRY
OCT 22 2004

Fee____
Process____
X Dktd____
CtRmDep____
Doc.No.____

## FACTUAL AND PROCEDURAL BACKGROUND

Floyd Russo was employed as a pipefitter, steamfitter, and welder with Union Local 60 from approximately 1942 through 1979, several years of which were spent at Delta Shipyard (hereinafter "Delta"). Mr. Russo was diagnosed with asbestosis and other related diseases in August 2003. He subsequently filed suit against thirty-plus defendants in Civil District Court in December 2003. Substantial case development occurred in the following nine months and Mr. Russo's case was proceeding to trial on an expedited basis (pursuant to La. Code of Civ. Pro. Art. 1573) when Defendant American Motorists removed the case to this Court.

American Motorist filed a 41-page opposition to Plaintiff's Motion to Remand–much of which is spent providing a history of Delta, which was Mr. Russo's former employer and American Motorists' insured. American Motorist goes into extensive detail to indicate and provide evidence that Delta was essentially operated under the control of the United States Maritime Commission (hereinafter "the Maritime Commission"). In the early 1940's, the Commission purchased the land that Delta was built upon and entered into two contracts: (1) one for the construction of the shipyard and its necessary appurtenances; and (2) one for the construction of transport ships to be used by the United States Navy in World War II. The Maritime Commission entered into the second contract with Delta.

Delta existed solely for the purpose of constructing Liberty ships for the Maritime Commission for use by the United States Government in World War II. No other vessels were constructed at the shipyard. American Motorists has submitted competent evidence to suggest that the Maritime Commission provided the design and construction specifications for the Liberty vessels and further outlined the materials required to be used in the construction of the

2

vessels–including the asbestos-containing products that have caused plaintiff's injuries. The specifications, and associated products, were expressly incorporated into contracts executed between Delta and the Maritime Commission. The specifications further prohibited any substitution of the required asbestos products, which had been designated as strategic materials during World War II. The contract also indicated that the Maritime Commission maintained exclusive and final control over all aspects of the design, construction and outfitting of the Liberty ships. Further still, and directly relevant to the present matter, the United States Navy and the Maritime Commission set out specific, mandatory regulations for safety operations for the emergency shipyards responsible for building the Liberty vessels in a document titled "United States Navy/United States Maritime Commission 1943 Minimum Standards for Safety and Industrial Health in Contract Shipyards" (hereinafter "Minimum Standards"). Finally, the Maritime Commission also employed individuals at Delta who were responsible for ensuring that the Liberty vessels were constructed in accordance with specifications. *See* Exhibit 7 to Defendant's Opposition to Remand, which provides an affidavit prepared by Charles R. Cushing, Ph.D, a naval architecture expert who is familiar with Delta. Dr. Cushing's affidavit clearly outlines the level of control and involvement that the Maritime Commission had over Delta, none of which was contested by Plaintiff.

## DISCUSSION

### *Timeliness of Federal Officer Removal*

The threshold determination in this matter is whether or not American Motorists' removal petition was filed timely. American Motorists does not dispute that its removal was beyond the thirty-day removal period; however, it argues that Mr. Russo's deposition provided

3

information that placed it on notice that the case could be removed. Plaintiff, however, argues that the initial pleading was more than sufficient to place the Defendant on notice of a possible removal on the basis of federal officer status. The resolution of this dispute requires consideration of 28 U.S.C. § 1446(b), which governs removal procedure:

> The *notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant*, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, *through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable*, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

(Emphasis added). In considering the differences between the notice requirements required in these two paragraphs, the Fifth Circuit in *Bosky v. Kroger Texas, LP* chose to follow the Tenth Circuit's *DeBry* rule, which requires that the notice in "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable" be unequivocal. 288 F.3d 208, 211 (5th Cir. 2002) (*quoting DeBry v. Transamerica Corp.*, 601 F.2d 480 (10th Cir. 1979)). The Court likened the *DeBry* standard to the Fifth Circuit's existing *Chapman* rule, which holds that "for the purposes of the first paragraph of § 1446(b), the thirty day time period in which a defendant must remove a case starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court." *Id.* at 210 (*citing Chapman v Powermatic, Inc.*, 969 F.2d 160 (5th Cir. 1992)).

4

Furthermore, the Fifth Circuit held that the *Chapman* measure of the "affirmatively reveals on its face" standard does not apply to the second paragraph of § 1446(b), but rather that the information supporting removal in a copy of an amended pleading, motion, order or other paper must be "unequivocally clear and certain" to start the time limit running for a notice of removal under the second paragraph of § 1446(b). *Id.* The court reasoned that this clearer threshold would promote judicial economy and reduce "protective" removals by defendants faced with an equivocal record. *Id.* Moreover, the Fifth Circuit found that the unequivocal notice rule should also discourage removals before their factual basis can be proven by a preponderance of the evidence through a simple and short statement of the facts. *Id.* In short, the court refused to place a due-diligence requirement on defendants to determine whether a case should be removable and held that this bright-line rule should create a fairer environment for plaintiffs and defendants. *Id.*

In support of its argument that its removal was timely, Defendant relies upon *Bosky v. Kroger Texas, LP*, 288 F.3d 208 (5th Cir. 2002). In *Bosky*, a store patron brought a slip and fall action against a store owner in state court. *Id.* at 209. The store owner removed the case and the federal court granted summary judgment on the merits. *Id.* The parties agreed that the plaintiff's initial petition was insufficient to trigger the 30-day period for removal to federal court on the basis of diversity jurisdiction because it only stated a claim for unliquidated damages of an unspecified amount in excess of $50,000. *Id.* at 209-10. The Court, however, failed to outline the dispute and, instead, outlined policy reasons and supporting case law for holding that a removal based on the "other paper" applicable to second paragraph of § 1446(b) must be "unequivocally clear and certain" to start the time limit running for the notice of removal. *Id.* at

5

211.

Nonetheless, the bright-line rule adopted by the Fifth Circuit in *Bosky* has not been universally adopted. In *Hines v. AC and S, Inc.*, 128 F. Supp. 2d. 1003 (N.D. TX 2001), the district court reasoned that *Bosky* did not apply to a removal premised on federal enclave jurisdiction. *Id.* at 1008. The facts underlying *Hines* are remarkably similar to the present. Plaintiffs filed suit alleging damages that resulted from asbestos exposure at a water plant. *Id.* at 1005. Suit was filed in state court and removed by defendants on December 4, 2000. *Id.* The defendants then filed an amended removal notice on December 6, 2000, and a supplementary removal notice on December 14, 2000 *Id.* The court held an emergency hearing on December 8, 2000 where the defendant represented that all of the defendants, save any insolvent or nominal ones, consented to removal–an assertion that proved to be false. *Id.*

The court focused its analysis on whether the removal was filed timely. *Id.* The plaintiffs made a straightforward argument: that the defendants collectively had notice of the factual basis of the federal enclave issue when they received discovery responses on July 26, 2000 and that the removal period expired on August 26, 2000. *Id.* The defendant, however, repeatedly kept trying to push the removal period forward in time; first indicating that it only became aware of the federal enclave issue on November 6, 2000 when it received a response to interrogatories, then later asserting that the removal period began on December 12, 2000 after it received a deposition transcript. *Id.* Defendants made the following claims: (1) no materials, prior to the deposition transcript received on December 12, 2000, constituted "other paper"; (2) nothing prior to the deposition transcript was a voluntary act by the Plaintiffs, such that the removal period should have begun; (3) all the facts for removal, prior to those established in the

6

deposition transcript, existed only within Defendants' subjective knowledge, and could not start the removal period; and (4) whether a lawsuit is removable must be facially apparent from the "other paper." *Id.* at 1006. The court considered each of these claims individually. They will be given the same consideration here because they are all relevant.

First, the court noted that other courts in the Fifth circuit have construed "other paper" to include: answers to interrogatories; *Leboeuf v. Texaco*, 9 F. Supp.2d 661, 665 (E.D.La.1998); responses to requests for admissions; *Johnson v. Dillard Dept. Stores, Inc.*, 836 F. Supp. 390, 391 (N.D.Tex.1993); deposition testimony; *Trotter v. Steadman Motors, Inc.*, 47 F. Supp.2d 791, 793 (S.D.Miss.1999); and even product identification documents given in discovery; *Pack v. AC and S, Inc.*, 838 F. Supp. 1099, 1102 (D.Md.1993). Accordingly, the term "other paper" is broadly construed and any discovery responses will be considered other paper.

Second, the case law is clear that the time for removal only begins to run from the receipt of other paper when it is received via a voluntary act by the plaintiff. *Id.* In fact, *Weems v. Louis Dreyfus Corp.*, 380 F.2d 545 (5th Cir. 1967) is the controlling precedent and holds that only a voluntary act of the plaintiff can trigger the extra thirty days provided for in the second paragraph of § 1446(b). It has been held that responses to discovery and depositions both constitute voluntary acts, except in those instances where the plaintiff is uncooperative or combative in response. *See Bennett v. Kmart Corp.*, 1996 WL 57719, p. 2 (E.D. La. 1996).

Third, the court addressed the defendant's argument that a removal clock cannot begin so long as the federal enclave issue remained subjective knowledge. *Id.* at 1007. Essentially, the defendants asserted that they had no duty to investigate possible grounds for removal and that they could rightfully await disclosure of removability by the plaintiffs. This argument was based

7

on *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996). The court, however, distinguished *S.W.S. Erectors* on the basis that it was a diversity case and was concerned with the plaintiffs trying to hide their damages, etc. to avoid obscure facts evidencing the removability of the case. *Id.* Furthermore, the court reviewed the deposition testimony and noted that the defendants' questioning clearly indicated their objective knowledge of the federal enclave jurisdiction—in fact, the court stated that "save for a different voice on the recording and a different name on the transcript, this situation is analogous to having Defendants simply submit the desired information in affidavit form." *Id.* at 1007-08. Accordingly, as the court found nothing to indicate that the plaintiff was trying to obscure the location of their exposure, the court held that the plaintiff's clear indication of where and when he had worked was sufficient to place the defendant on notice of a possible federal enclave jurisdiction claim.

Finally, the *Hines* court considered whether the facially apparent requirement applied to the second paragraph of § 1446(b). *Id.* at 1008. When *Hines* was decided, however, the Fifth Circuit had not yet adopted the "unequivocally clear and certain" requirement in *Bosky*. Regardless, the court noted that a close review of precedents revealed that the facially apparent standard applicable to the first paragraph of § 1446(b) was only applied in diversity cases. *Id.* Notably, *Bosky* was also a case based on diversity. The court noted that the "facially apparent" requirement makes sense as a deterrent for hiding the amount in controversy in such cases, but it has little relevance and application in the rare instances of federal enclave jurisdiction. *Id.* Specifically, the court held the following:

> Unlike the usual "facially apparent" case, the facts here were always clear. Plaintiffs have not hidden, disguised, or obscured the site of his exposure. The relative rarity of federal enclave jurisdiction may have clouded the legal significance of those facts, but that alone does not justify indefinitely suspending the removal period.

8

> Defendants' argument that Plaintiffs have a duty to disclose possible federal enclave jurisdiction is wrong. Nothing requires Plaintiffs to take the step of adding a footnote, parenthetical, or caveat stating that the exposure locale happened to be a federal enclave. The adversarial system, while sometimes collegial, is never that collegial. Defendants have not pointed this Court to any cases which counsel towards [sic] reallocating the existing burdens between the parties. This Court finds that so long as Plaintiffs have honestly stated the specific locale of their exposure, the "facially apparent" standard is inapplicable to removal under federal enclave jurisdiction. The price of removal under this obscure jurisdictional basis may simply be that of diligent investigation. *Delaney v. Viking Freight, Inc.*, 41 F. Supp. 2d 672, 676 (E.D. Tex. 1999) (holding that removal period began when defendant was able to detect fraudulent joinder, even without any additional information supplied by the plaintiff). This Court finds no reason, such as fraud by the Plaintiffs, to intervene and twice reset the removal period. Here, there was no fraud whatsoever.

*Id* at 1008-09. Accordingly, the court held that the defendant's removal motion was untimely and, therefore, granted plaintiff's motion to remand.

In the present case, Plaintiff's initial December 2003 petition clearly indicated that he was employed with Delta from approximately 1942 through 1945. See Petition ¶ 5. Additionally, the petition mentions that Mr. Russo was working on United States Navy vessels and references the Minimum Standards several times, although the references were not in the direct context of Delta. Furthermore, plaintiffs provided answers to written discovery on May 2, 2004 that again confirmed that Mr. Russo worked at Delta from approximately 1942-1945. See Exhibit 12 to Plaintiff's Reply Memorandum. More interestingly, however, part of the deposition testimony that Defendant now claims to satisfy the requirement for "other paper" is as follows:

Q. Do you know if these were Liberty ships?

A: Yeah.

Q: They were Liberty Ships?

A: Yeah.

9

Clearly, this information confirms that Mr. Russo worked only on government vessels while employed at Delta.

The issue, however, is whether the deposition provided any new information. Considering the fact that Delta existed solely for the purpose of constructing Liberty ships for the Maritime Commission for use by the United States government in World War II, this Court finds that Mr. Russo's testimony did not reveal any new information to American Motorists. If Delta had been manufacturing commercial vessels from 1942 through 1945, then the issue of whether Mr. Russo worked solely on Liberty ships and/or commercial vessels might have had a bearing on this determination. In such a case, Mr. Russo's petition and interrogatory responses would have been ambiguous because the possibility would have remained that he had worked solely on commercial vessels; and would have therefore rendered Delta/American Motorists unable to invoke the federal officer removal statute until Mr. Russo's deposition confirmed that he had worked on government vessels. The fact, however, that Delta manufactured *only* Liberty vessels means that Mr. Russo's deposition offered no new information to American Motorists. Although American Motorists might argue that it was not aware of this fact, it should not be allowed to take a position that its insured would not have been allowed to take–clearly Delta would have known that it only manufactured Liberty vessels from 1942 to 1945.

Therefore, American Motorists' removal is untimely for the following reasons: (1) the initial complaint clearly stated that Mr. Russo worked at Delta from 1942 to 1945, while also mentioning U.S. Navy ships multiple times; (2) Delta fabricated ships solely for the Maritime Commission during this time; (3) American Motorists, if not its counsel, was aware of these facts

10

because it underwrote insurance for Delta Shipyard;[1] and, (4) Mr. Russo's deposition fails to disclose any further information that would make this case removable.

The rationale offered in *Hines* is clearly applicable here: the plaintiff has not hidden, disguised, or obscured the site of his exposure or the fact that he worked on U.S. Navy vessels. As the court stated in *Hines*, the relative rarity of federal enclave jurisdiction may have clouded the legal significance of the fact that Mr. Russo worked at Delta from 1942 to 1945, but that alone does not justify indefinitely suspending the removal period. "Nothing requires plaintiffs to take the step of adding a footnote, parenthetical, or caveat stating that the exposure locale happened to be a federal enclave." Although there is no case law directly on point, this Court finds that federal officer removal is analogous to federal enclave jurisdiction in this instance and that plaintiff does not have a duty to disclose a possible federal officer removal. Furthermore, since the facts necessary to put American Motorists on notice of a potential removal were in Plaintiff's petition, this Court finds that Defendant's removal was untimely.

### *Federal Enclave Jurisdiction*

American Motorists also seeks removal under federal enclave jurisdiction pursuant to Article I, Section 8, Clause 17 of the United States Constitution, which provides the United States Congress with the following power:

> To exercise exclusive Legislation in all Cases, whatsoever, over such District (not exceeding ten miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Government of the United States, and *to exercise like authority* over all Places purchased by the Consent of the Legislature of the State in which the same shall be, for the erection of forts, magazines, arsenals,

---

[1] American Motorists denies that it provided coverage to Delta Shipyard, but Plaintiff has produced significant evidence, including certificates of insurance and reported cases that indicate American Motorists provided insurance to Delta Shipyard in the 1940s.

11

dock-yards, and other needful buildings.

By invoking federal enclave jurisdiction, American Motorists seeks removal pursuant to 28 U.S.C. § 1441(a) on the basis of a substantial federal question under 28 U.S.C. § 1331. Nonetheless, 28 U.S.C.§ 1446(a), the provision entitled "procedure for removal," requires the unanimous consent of all defendants for proper removal in such circumstances (*i.e.*, American Motorists is required to have unanimous consent of all defendants in order to exercise an effective removal on the basis of federal enclave jurisdiction). The Fifth Circuit has stated: "The law is clear that under 28 U.S.C. § 1446(a), removal procedure requires all defendants join in the removal petition." *Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653, 667 (*citing Getty Oil Corp., Div. of Texaco v. Insurance Co. of N. America*, 841 F.2d 1254, 1262 (5th Cir.1988) ("[A]ll defendants who are properly joined and served must join in the removal petition, and ... failure to do so renders the petition defective.") (citations omitted)); *Henry v. Independent American Savings Assoc.*, 857 F. 2d 995, 999 (5th Cir.1988) ("Failure of all defendants to join is usually a bar to removal."). Nonetheless, there is nothing in 1446(a) about a "unanimity requirement" for proper removal. *Id.* "Although the removal and remand statutes do not expressly require such action, the Fifth Circuit holds that 28 U.S.C. § 1446(b) requires all defendants who have been properly joined and served at the time of the removal to join in the removal petition, otherwise removal is defective." *Id.* (*citing Milstead Supply Co. v. Casualty Ins. Co.*, 797 F. Supp. 569 (W.D.Tex.1992)).

Accordingly, American Motorists has not effected a valid removal based on federal enclave jurisdiction because it has failed to obtain the consent of all defendants. American Motorists asserts that it only came into possession of documents confirming its capacity to

12

remove on this basis on September 14, 2004. Assuming, for the sake of argument, that this is a correct assertion, American Motorists had until October 14, 2004 to have all named defendants file their consent in the record to effect a removal based on federal enclave jurisdiction. Because such consent was not entered, the notice of removal was defective.

Finally, the Court finds that American Motorists removal of this case was in good faith. Accordingly;

**IT IS ORDERED** that the **Plaintiff's Motion to Remand** (Rec. Doc. 4) is GRANTED and this matter is remanded to Orleans Parish Civil District Court. Furthermore, **Plaintiff's Motion for Sanctions** (Rec. Doc. 10) is DENIED.



13