@002/037

MDL 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV - 1 2004

FILED
CLERK'S OFFICE

1  WILLIAM RUTZICK, WSBA # 11533
   SCHROETER GOLDMARK & BENDER
2  500 Central Building
   810 Third Avenue
3  Seattle, Washington  98104
   Telephone:  (260) 622-8000
4  Facsimile:  (206) 682-2305

5

6

7

8  **BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

9  **MDL DOCKET NO. 875**

10  **IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

11

12  THIS DOCUMENT RELATES TO:

13  Allen v. General Electric, et al.
    United States District Court
14  Western District of Washington
    Cause No. C04-1641RSL
15

16  **NOTICE OF OPPOSITION TO CONDITIONAL TRANSFER ORDER**

17

18     PLEASE TAKE NOTICE that pursuant to Rule 7.4 of the Rules of Procedure of the Judicial

19  Panel on Multidistrict Litigation, 181 F.R.D.1, 10 (1998), plaintiff Gary Allen, by and through their

20  counsel of record herein, hereby oppose the conditional transfer order (CTO-237).

21     Plaintiff filed suit against five defendants in the King County Superior Court in the State of

22  Washington on June 25, 2004.  On July 23, 2004, one of the defendants filed a Notice of Removal

23  which removed this case to Federal Court; no other defendants joined in this Notice of Removal.

24  The plaintiff filed a Motion to Remand on August 23, 2004. (see attached Exhibit A).  The defendant

25  filed an opposition to this motion on September 13, 2004.  On October 4, 2004, a Stipulation

NOTICE OF OPPOSITION TO CONDITIONAL
TRANSFER ORDER - 1
N:\ASBESTOS\Allen 15078a1500\P\MDL\MDL\...doc

IMAGED NOV 1 '04   OFFICIAL FILE COPY

PLEADING NO. 4288

1  regarding Plaintiff's Reply to General Electric Company's Opposition to Motion to Remand was

2  filed, which set forth a date of November 5, 2004 for the plaintiff to file the reply. (See attached

3  Exhibit B). Therefore, this case should bot be transferred to the MDL until the motion to remand is

4  ruled upon by the United States District Court, Western District of Washington.

5       DATED this 29th day of October, 2004.

6

7                                    SCHROETER, GOLDMARK & BENDER

8                                    _Kurt Hauser for_

9                                    WILLIAM RUTZICK, WSBA # 11533
                                     Counsel for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

NOTICE OF OPPOSITION TO CONDITIONAL
TRANSFER ORDER - 2
N:\ASB=:STOS\Allen 15078a1500\P\MDL\MDL Not Opp-102904.doc

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV - 1 2004

FILED
CLERK'S OFFICE

# EXHIBIT A

RECEIVED
CLERK'S OFFICE
2004 OCT 29 P 3: 37
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

Honorable ROBERT S. LASNIK
Hearing Date: October 1, 2004

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GARY D. ALLEN,

                 Plaintiff,

     v.

GENERAL ELECTRIC COMPANY;
GOULDS PUMPS (IPG), INC.; INGERSOLL-
RAND COMPANY; SABERHAGEN
HOLDINGS, INC.; and VIACOM, INC.,
Successor by Merger to CBS Corporation, f/k/a
WESTINGHOUSE ELECTRIC
CORPORATION,

                 Defendants.

No. C04-1641L

MOTION TO REMAND

**ORAL ARGUMENT REQUESTED**

**CLERK'S ACTION REQUIRED**

## I.    INTRODUCTION

Plaintiff disputes the facts and the law upon which defendant General Electric Company

("GE") based removal under 28 U.S.C. §§1442 and 1446; GE relies on the Affidavit of David

Hobson and law concerning federal officer jurisdiction.[1]  Similar arguments have been made by

other defendants, such as Todd Shipyard, Kaiser Ventures/KSC Recovery, and Westinghouse. GE

---

[1] Plaintiff objects on foundation FRE 702-703 and hearsay grounds to the affidavit of David Hobson,
a "one-size-fits-all" affidavit that GE apparently routinely uses in removal actions.  Plaintiff have
spoken with defendants' counsel about deposing Mr. Hobson and expect to do so before this motion
is heard.

MOTION TO REMAND - 1
(C04-1641L)
N:\ASBESTOS\Allen 15078a1500\P\MxRemand-081904.doc

SCHROETER, GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
(206) 622-8000

1   does not meet the second or third requirements for "federal officer' jurisdiction set out in Mesa v.

2   California, 489 U.S. 121 (1989).

3   **II.    ARGUMENT**

4        **A.    GE Does Not Qualify For Removal Based On Federal Officer Jurisdiction.**

5        To qualify for federal officer jurisdiction under 28 U.S.C. § 1442, a party must show:

6            1.    That it acted pursuant to the direction of a federal officer;

7            2.    That it can raise a colorable federal defense to the plaintiff's claims;
8                  *and*

9            3.    That a causal nexus exists between the plaintiff's claims and the acts
                   the defendant performed under the color of the federal officer.

10  Mesa v. California, 489 U.S. 121, 124-125 (1989). The elements required by Mesa have repeatedly

11  been applied to deny removal jurisdiction in analogous contexts of attempted removal of asbestos

12  cases   See Feidt v. Owens-Corning Fiberglass, 153 F.3d 124,  27 (3d Cir. 1998); Good v.

14  Armstrong World Industries, 914 F. Supp. 1125 (E.D. Pa. 1996); McCormick v. C.E. Thurston &

15  Sons, Inc., 977 F. Supp. 400, 403 (E.D. Va. 1997); Faulk v. Owens-Corning Fiberglass Corp., 48

16  F. Supp.2d 653 (E.D. Tex. 1999); Mouton v. Flexitallic, Inc., 1999 U.S. Dist. LEXIS 5632

17  (U.S.D.C. E.D. La. 1999), Westbrook v. Asbestos Defendants, 2001 U.S. Dist. LEXIS 11573

18  (U.S.D.C. N.D. Cal. 2001); Zink v. Rapid-American Corporation, et al., U.S.Dist.Ct., Cause No. C99-

19  0964I (W. Wash. 1999); and Ireton v. Kaiser Ventures L.L.C., et al., U.S.Dist.Ct., Cause No. CV03-

20  2840 JBL (W.Wash. 2003).  (The Zink and Ireton orders are attached as Ex. A & B to the Rutzick

21  Affidavit).

23        Neither elements two or three under Mesa are met here.  The federal defense raised by

24  defendants is the federal contractor defense recognized in Boyle v. United Technologies Corp., 487

25  U.S. 500 (1998).  See ¶8 of the Notice of Remand.  The Ninth Circuit has held that such defense

26  does not apply to products that are "readily available, in substantially similar form, to commercial

1   uses." In re Hawaii Federal Asbestos Cases, 960 F.2d 806, 811 (9th Cir 1992).  As Judge Panner

2   explained in Olsen v. ACandS, Inc., et al. U.S. Dist. Ct., Cause No. CV 95-721-PA (Ore. 1995)

3   (Exhibit C to the Rutzick Affidavit):

4

5           Westinghouse also cannot establish a federal defense to plaintiff's claims.  Under
        similar facts, the Ninth Circuit rejected a military contractor defense because the
6       defendant had used the same asbestos-containing insulation it sold to commercial
        buyers.  In re Hawaii Federal Asbestos Cases, 960 F.2d 806, 811-12 (9th Cir. 1992)
7       (Hawaii law).

8   Order, p. 4.  Defendant provides no evidence that, in terms of asbestos, the products it supplied to

9   the Navy are any different than products it supplied to commercial customers.  To the contrary, the

10  Hobson affidavit suggests that neither contained asbestos:

11          As manufactured and shipped to the Navy vessels, turbines did not have any thermal
        insulation materials (whether containing asbestos or otherwise) anywhere on them.
12      GE did not make, sell, or install turbines with asbestos-containing thermal insulation.
        Any thermal insulation material, including thermal insulation blankets, that may have
13      been applied to GE's turbines after they left GE's manufacturing facility would have
        been supplied and installed by entities other than GE.
14

15  Paragraph 7, Affidavit of David Hobson attached to the Affidavit of Christopher S. Marks.

16          Furthermore, GE provides no facts or even allegations that the government required asbestos on

17  the turbines.  To the contrary, GE acknowledges that it does not even know if the specifications required

18  asbestos:

19
            Any asbestos-containing products, machinery or equipment for which General
20      Electric might be held legally accountable and which are alleged to have caused
        plaintiff's injury, were manufactured in compliance with and supplied pursuant to
21      government contracts and reasonably precise government and/or military
        specifications promulgated and approved by the United States government. These
22      specifications may have required the use of asbestos in such products, machinery or
        equipment.  Accordingly, General Electric may be immune from liability for any
23      injury or death suffered by plaintiff as a consequence of exposure to asbestos in such
        products, machinery or equipment.
24

25

26


MOTION TO REMAND - 3
(C04-1541L)
N:\ASBESTO\SW\len15078a1500\P\W\txRemand-081904.doc

SCHROETER, GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
(206) 622-8000

Answer of Defendant General Electric Company to Plaintiff's Supplemental Complaint for Personal Injury, ¶13. That does not support a government specification defense based on asbestos injury.[2]

Similarly, Defendant fails to establish a "causal nexus between the plaintiffs' claims and the acts the defendant performed under the color of the federal officer.' As Judge Panner explained in Olsen v. ACandS, Inc., et al., supra:

> Assuming that the Navy specified the type of asbestos insulation, I disagree with *Pack's [Pack v. AcandS*, 838 F. Supp. 1099 (D. Md. 1993)] reasoning. Because Westinghouse has not shown that it specifically designed the asbestos-containing insulation for the Navy, there is no causal connection between plaintiff's claims and the acts performed under Federal orders. *See Santos v. Owens-Corning Fiberglas Corp.*, No. C 94-2581-EFL, 1994 WL 564720, at *3 (N.D. Cal. 1994) (granting remand when the defendant did not show that its "products were made more dangerous than those on the open market simply because the government ordered them to be designed in a particular way").

---

[2] In Good v. Armstrong World Industries, Inc., 914 F. Supp. at 1131, the court stated:

> The Supreme Court fashioned the government contract defense to displace state law because there exists a unique federal interest in civil liability arising out of the performance of federal procurement contracts. *Boyle*, 487 U.S. at 506, 108 S.Ct. at 2515. I question whether that federal interest exists in this case. The impact of this personal injury action on the federal interest in protecting future defense procurement the fundamental point of the government contract defense-is speculative. It is common knowledge that asbestos is no longer used in the design and manufacture of equipment, so that this lawsuit cannot interfere with a federal program involving products that contain asbestos. Therefore, the adjudication of this personal injury action in state court does not threaten the enforcement of a federal policy sufficient to warrant removal.
>
> Even assuming that the federal interest underlying the government contractor defense is present, simply noting the presence of a federal interest does not provide a sufficient or necessary basis to allow removal. "It is the concern for state court bias against the federal government that is the ultimate justification for ... removal." *Ryan*, 781 F.Supp. at 951. When enacting the federal officer removal statute, Congress sought to distinguish lawsuits on the basis of their susceptibility to state court manipulation. The government contractor defense is not subject to such manipulation. Unlike a federal officer's defense of immunity, the government contract defense by a corporation raises straightforward common law issues that state courts are as adept at handling as the federal judiciary. *Ryan*, 781 F.Supp. at 951.

That analysis is equally applicable in the present case and calls for this case to be remanded.

MOTION TO REMAND - 4
(C04-1641L)
N:\ASBESTOS\Allen 15078a1500\PWxRemand-081904.doc

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
(206) 622-8000

1   Order, p. 4. GE similarly has not shown that it specifically included asbestos in its turbines at the

2   request of the Navy.

3        GE also provides <u>no</u> real evidence that any federal contract prevented GE from warning

4   Navy personnel and/or PSNS shipyard workers about asbestos or from instituting measures that

5

6   would have protected Navy personnel and/or PSNS shipyard workers and their families from

7   asbestos exposure from working with GE turbine engines. The Hobson affidavit attached no

8   contract or specification.

9        In <u>Good v. Armstrong World Industries, Inc.</u>, 914 F.Supp. at 1130, the court stated:

10       Westinghouse's poor showing of casual connection between allegations of plaintiffs
         and its conduct taken under direction of a federal officer is also evidenced by its
11       failure to set forth the substance of the regulations and specifications. The complaint
         alleges personal injury based upon exposure to asbestos. Neither the notice or the
12       affidavit establishes that the Secretary of the Navy specified the use of asbestos in the
         design and manufacture of the turbine generators.
13

14  That is equally applicable here. <u>See also</u> <u>In Re: "Agent Orange" Product Liability Lit.</u>, 304

15  F.Supp.2d 442, 448 (E.D.N.Y. 2004), where the court stated:

16       The "casual nexus" is also satisfied when there is evidence of intimate government
17       involvement in the design decisions causally related to the alleged tort. As stated in
         <i>Arness v. Boeing N. Am., Inc.</i>, 997 F.Supp. at 1275 (C.D. Cal. 1998), defendants must
18       show that the government directed actions on which the plaintiffs based their claims.
         By contrast, in <i>Good v. Armstrong World Industries, Inc.</i>, plaintiffs sued for injuries
19       related to asbestos exposure. 914 F.Supp. 1125 (E.D. Pa. 1996). The court found that
         the Navy was involved in the design and manufacture of the turbines, but that it did
20       not specify the use of asbestos. Acting under general direction of the Navy "is not the
         same as acting under the direct and detailed control of a federal officer." <i>Id.</i> at 1129.
21

22

23

24

25

26

MOTION TO REMAND - 5
(C04-1541L)
N:\ASBESTO\Allen 15078a1500\PWkRemand-081904.doc

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
(206) 622-8000

1

**III.    CONCLUSION**

2

For the foregoing reasons, Plaintiff's Motion For Remand should be granted.

3

4       DATED this **23**<sup>rd</sup> day of **August, 2004.**

5

6                                                    S/_____

7                                                          WILLIAM J. RUTZICK, WSBA #11533
                                                           Attorney for Plaintiff
8                                                          SCHROETER GOLDMARK & BENDER
                                                           810 Third Avenue, Suite 500
9                                                          Seattle, WA  98104
                                                           Phone: (206) 622-8000
10                                                         Fax: (206) 682-2305

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTION TO REMAND - 6
(C04-1041L)
N:\ASBESTO\Allen 15078a1500\P\MxRemand-081904.doc

                                    SCHROETER  GOLDMARK & BENDER
                                    500 Central Building • 810 Third Avenue • Seattle, WA  98104
                                                    (206) 622-8000

1                                   Honorable John C. Coughenour

2                                   Hearing Date: October 1, 2004

3

4

5

6                  UNITED STATES DISTRICT COURT

7        WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8   GARY D. ALLEN,

                                       No. C04-1641L

9                   Plaintiff,

                                 AFFIDAVIT OF WILLIAM RUTZICK

10        v.

11  GENERAL ELECTRIC COMPANY;
    GOULDS PUMPS (IPG), INC.; INGERSOLL-
12  RAND COMPANY; SABERHAGEN
    HOLDINGS, INC.; and VIACOM, INC.,
13  Successor by Merger to CBS Corporation, f/k/a
    WESTINGHOUSE ELECTRIC
14  CORPORATION,

15                  Defendants.

16  STATE OF WASHINGTON  )
                      ) ss.
17  COUNTY OF KING     )

18       WILLIAM RUTZICK, being first duly sworn upon oath, deposes and says:

19       1.  I am an attorney for plaintiffs in the above-entitled action, over the age of 18, not a

20  party to this action and competent to make the following statements:

21       2.  Attached hereto as Exhibit A is a true and correct copy of the Honorable Ronald S.

22  Lasnik's Order Remanding Matter to State Court in <u>Zink v. Rapid-American Corporation, et al.</u>,

23

24  U.S. Dist. Ct., Cause No. C99-0964L (W. Wash. 1999).

25

26

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
(206) 622-8000

1    3.   Attached hereto as Exhibit B is a true and correct copy of the Honorable Ronald B.

2    Leighton's Order in <u>Ireton v. Kaiser Ventures, L.L.C., et al.</u>, U.S. Dist. Ct., Cause No. CV03-

3    2840 RBL (W. Wash. 2003).

4    4.   Attached hereto as Exhibit C is a true and correct copy of Honorable Owen M.

5    Panner's Order in <u>Olsen v. A.C. & S., Inc., et al.</u>, U.S. Dist. Ct., Cause No. CV 95-721-PA

6    (Oregon, 1995).

7

8                                            WILLIAM RUTZICK, WSBA #11533

9

10   SUBSCRIBED AND SWORN to before me this 23ʳᵈ day of August, 2004.

11

12                                           Melissa R. Mather
                                             NOTARY PUBLIC in and for the State
13                                           of Washington, residing at Seattle
                                             My commission expires: May 25, 2006
14   

15

16

17

18

19

20

21

22

23

24

25

26

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
(206) 622-8000

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV - 1 2004

FILED
CLERK'S OFFICE

# EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN THOMAS ZINK, | No. C99-0964L |
| Plaintiff, | |
| v. | ORDER REMANDING MATTER |
| RAPID-AMERICAN CORPORATION, *et al.*, | TO STATE COURT |
| Defendants. | |

Plaintiff filed suit in King County Superior Court against defendant Todd Shipyard Corporation ("Todd") and others seeking damages arising out of his alleged exposure to asbestos and asbestos-containing products. Plaintiff was employed as an asbestos worker/helper at Todd's Tacoma shipyard from 1942-1943. Plaintiff alleges that Todd failed to take action to protect plaintiff from the hazards of working with asbestos, engaged in abnormally dangerous activity, failed to ensure a safe work environment and/or to correct dangerous conditions, failed to adequately train and warn plaintiff regarding the hazards of working with asbestos, and was generally negligent toward plaintiff. Supplemental Complaint for Personal Injury at 2-3. On June 15, 1999, Todd removed this case to federal court. Plaintiff now seeks a remand.[1]

A fundamental element of our federal system is that the federal courts have limited jurisdiction "derived entirely from the statutory authorization of Congress." <u>Libhart v. Santa</u>

---

[1] Having reviewed the parties' pleadings, affidavits, and exhibits, the Court denies plaintiff's request for oral argument.

ORDER REMANDING MATTER
TO STATE COURT



1    Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979).  In order to ensure the constitutional

2    exercise of federal jurisdiction, courts must "construe the removal statute against removal

3    jurisdiction.  Federal jurisdiction must be rejected if there is any doubt as to the right of removal

4    in the first instance."  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted).

5    The burden of establishing federal jurisdiction rests on the party seeking removal.  Carpenters

6    Souther Calif. Admin. Corp. v. Majestic Housing, 743 F.2d 1341, 1343 (9th Cir. 1984) (citing

7    Wilson v. Republic Iron and Steel Co., 257 U.S. 92, 97 (1921)).

8            Todd asserts federal jurisdiction under the federal officer removal statute, 28

9    U.S.C. § 1442(a)(1), which provides:

10           (a) A civil action or criminal prosecution commenced in a State court
             against any of the following persons may be removed by them to the district court
11           of the United States for the district and division embracing the place wherein it is
             pending:
12                  (1) Any officer of the United States or any agency thereof, or person
             acting under him, for any act under color of such office . . . .
13
     The parties agree that the federal officer removal statute applies where (1) the defendant acted
14
     under the direction of a federal officer, (2) the defendant has a colorable defense to plaintiff's
15
     claims under federal law, and (3) defendant's acts, performed under color of his federal office,
16
     caused plaintiff's claims.  Plaintiff's Motion at 2; Defendant's Opposition at 5.  The pleadings,
17
     affidavits, and documents produced in response to plaintiff's motion fail to establish federal
18
     jurisdiction over plaintiff's claims under this analysis.
19
             Todd has not provided evidence to support its assertions that a federal officer,
20
     namely the United States Navy, provided the type of detailed specifications and controls over the
21
     design and construction of the ships on which plaintiff worked that would warrant a finding that
22
     Todd acted under federal direction.  While the Court acknowledges that the evidence provided
23
     by Todd (such as contracts regarding ships other than those on which plaintiff worked, affidavits
24
     from naval personnel whose service began well after the relevant time period, and general naval
25
     specifications, the use and publication of which are not explained) may give rise to a genuine
26
     ORDER REMANDING MATTER
     TO STATE COURT                                 -2-

1   issue of fact regarding the level of control exercised by the Navy at the Tacoma shipyard in 1942

2   and 1943, the existence of a factual dispute is an insufficient basis on which to force plaintiff to

3   litigate in federal court. Where the issue is the power of the federal courts to hear a claim in the

4   first place, such factual doubts must be resolved in favor of remand and against the exercise of

5   jurisdiction where it may not, in fact, lie.

6         Todd has also failed to establish the existence of a colorable claim of federal

7   immunity or other federal defense to plaintiff's state law claims. The purpose of the federal

8   officer removal statute is to ensure that states cannot, without interference from the federal

9   government, arrest and/or try federal officers for violations of state law that were warranted by

10   the federal authority they possess. See, e.g., Mesa v. California. 489 U.S. 121, 126 (1989)

11   (citation omitted).[2] Todd's assertion that it cannot be held liable for injuries caused by the ships

12   it built pursuant to government specifications, while probably correct, is not a defense to

13   plaintiff's allegations regarding Todd's failure to maintain a safe work environment and to

14   adequately warn plaintiff of the hazards of working with asbestos. The state law claims arising

15   out of the manner in which Todd chose to operate its shipyard, handle raw products, and provide

16   for the safety of its workforce are not defeated simply because Todd may have a defense to

17   claims brought by end users of the product.[3]

18   ————————————

19         Because the Constitution provides for federal removal jurisdiction only where there is a federal

20   question or defense at issue, the existence of federal authorization for the challenged conduct or a federal
      defense to the state claim governs the constitutionality of the federal court's exercise of jurisdiction.

21   Mesa, 489 U.S. 126-27 (citations omitted).

22         Todd is attempting to use the government contractor defense to cut off all claims related to a

23   government contract. The defense allows a contractor to escape liabilities arising out of products it
      manufactures for the government, as long as the government has provided product specifications and the

24   contractor has made reasonable disclosures regarding any problems it identifies. The defense does not,
      however, authorize manufacturing negligence. For example, the manufacturer may not fail to provide

25   safety goggles, appropriate equipment, or adequate training to its employees and then avoid liabilities for
      injuries arising out of such conduct simply because the injuries occurred while working on a government

26

1    Finally, even if the Court were to assume that the United States Navy exercised

2  detailed control over the design, specifications, construction, and use of asbestos in the ships on

3  which plaintiff worked, Todd has not established that the government in any way controlled or

4  interfered with its potential state law duties to safeguard the health and welfare of its workers.

5

6    For all of the foregoing reasons, plaintiff's motion to remand is GRANTED.

7  Cause number C99-0964L is hereby remanded to the Superior Court of King County.

8

9    DATED this 30th day of August 1999.

10

11                                 Robert S. Lasnik
                                   United States District Judge
12

13

14

15

16

17

18

19
_____

  contract. Todd's argument that anyone injured "because of" a government contract, whether by the
20  product designed by the government or as a result of the manufacturer's individual negligence, is
  precluded from suit by the government contractor defense is not supported by either the purpose of the
21  defense or the Supreme Court's interpretation thereof. See, e.g., Boyle v. United Tech. Corp., 487 U.S.
22  500, 512 (1988).
     Assuming Todd will ultimately be able to produce evidence of the government's control over the
23  Tacoma shipyard and the boats on which plaintiff worked, however, the Court notes that plaintiff's
  assertion that Todd is strictly liable for the mere presence of asbestos at the shipyard would fail under
24  the federal officer removal statute. Todd could legitimately argue that "the government made me do it"
25  as a defense to such claims. The Court therefore accepts plaintiff's stated willingness to "limit his
  claims against Todd Shipyard solely to claims involving failure to warn." Motion at 8 n.3.
26
ORDER REMANDING MATTER
TO STATE COURT                              -4-

# EXHIBIT B

**Law Offices**
## SCHROETER, GOLDMARK & BENDER P. S.
**500 Central Building**
**810 Third Avenue**
**Seattle, Washington 98104**
Phone: (206) 622-8000
Fax: (206) 682-2305

**To:**                      **Date:** October 29, 2004

Clerk of the Panel
United States of America Judicial Panel on
Multidistrict Litigation
(202) 502-2888

**From:**       Melissa R. Mather

**Re:**        <u>Allen v. General Electric, et al.</u>
              United States District Court
              Western District of Washington
              Cause No. C04-1641RSL
              MDL Docket No. 875 (CTO-237)

**Pages:**      1 of 37

**Message**:

Attached please find the following documents:
- NOTICE OF OPPOSITION TO CONDITIONAL TRANSFER ORDER; AND
- DECLARATION OF SERVICE.

JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

2004 OCT 29 P 3: 36

RECEIVED CLERK'S OFFICE

**IF YOU DO NOT RECEIVE ALL PAGES,**
**PLEASE CALL BACK IMMEDIATELY**
## NOTICE
The information contained in this transmission is privileged and confidential. It is intended for the use of the individual or entity named above. f the reader of this message is not the intended addressee, the reader is hereby notified that any consideration, dissemination or duplication of this communication is strictly prohibited. If the addressee has received this communication in error, please return this transmission to us at the above address by mail. We will reimburse you for postage. In addition, if this communication was received in the U. S., please notify us immediately by phone at 1-800-809-2234.

RECEIVED

DEC 0 5 2003

Schroeter, Goldmark, Bender

EXHIBIT B

FILED _____ LODGED
_____ RECEIVED

DEC - 3 2003

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GERALD and SHARON IRETON,

    Plaintiffs,

      v.

KAISER VENTURES, L.L.C.; KSC
RECOVERY INC., and E.J. BARTELLS
SETTLEMENT TRUST,

    Defendants.

Case No. CV03-2840 RBL

ORDER

03-CV-02840-ORD

This matter comes before the court on plaintiffs' motion to remand. On August 1st, 2003, plaintiffs filed a complaint in King County Superior Court alleging causes of action for personal injuries arising from exposure to asbestos. On September 17th, 2003, defendants removed the case to federal court under federal officer jurisdiction pursuant to 28 U.S.C. § 1442.[1]  On October 3rd, 2003, plaintiffs filed the instant motion to remand. The court finds that defendants have raised a colorable federal defense, but have failed to show a causal nexus between Kaiser's failure to warn its workers about the hazards of asbestos exposure and the directives of federal officers. The court hereby GRANTS plaintiffs' motion to remand this case to King County Superior Court.

I. BACKGROUND

Plaintiff Gerald Ireton was born on February 23, 1942, approximately two months after the United

---

[1] Defendants also initially removed under diversity jurisdiction pursuant to 28 U.S.C. § 1332 and federal enclave status pursuant to 28 U.S.C. § 1331; however, defendants have since withdrawn these arguments.

1  States entered World War II. Mr. Ireton alleges that he was exposed to asbestos as an infant through his

2  father's employment at the Kaiser Shipyards in Vancouver, Washington. Specifically, Mr. Ireton alleges

3  that his father, who worked at the shipyards until the war ended on September 2, 1945, unintentionally

4  exposed him to asbestos by bringing it home on his clothes, hair, or shoes.[2] Defendant Kaiser Ventures

5  L.L.C. is the successor in interest to the Kaiser Company, which operated the shipyards during the

6  relevant time period.

7         Mr. Ireton was diagnosed with mesothelioma, a cancer usually resulting from asbestos exposure, in

8  January of 2003. Decl. of Steven Kallick, M.D. at 1. On September 25th, 2003, Mr. Ireton was further

9  diagnosed as having a "substantial medical doubt that he will be alive or able to meaningfully participate

10  in a trial beyond April 2004." Id. Plaintiffs now proceed against defendants on "premises owner,

11  manager or general contractor" and failure to warn theories of liability.

12         Defendants do not contest that employees at the Kaiser Shipyards were exposed to asbestos.

13  Rather, defendants assert a government contractor defense in denying liability for any injuries incident to

14  such exposure. Defendants allege that Kaiser Shipyards constructed ships under the direction and control

15  of federal officers and agencies, and pursuant to government specifications provided for under contracts

16  with the U.S. government. Defendants also allege that the government purposely withheld certain

17  information tending to show that asbestos was unsafe for shipyard workers, and that at all times the

18  government had superior knowledge about any hazards associated with the construction of marine vessels

19  under its contract.

20                                    II. DISCUSSION

21         On a motion to remand, the court must determine whether the case was properly removed to

22  federal court. See Emrich v. Touche Ross & Co., 846 F.2d 1190, 1194-95 (9th Cir. 1988). The party

23  invoking the federal court's removal jurisdiction has the burden of establishing federal jurisdiction. Id.

24  Removal statutes are strictly construed, and if the right to remove is in doubt, the case should be

25  remanded. Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979).

26         Defendants seek removal to a federal court under 28 U.S.C. § 1442(a)(1), the federal officer

27

28  _____

   [2] Plaintiffs claim that Mr. Ireton was exposed to asbestos over the "2-1/2 year period" from Mr. Ireton's

   birth to the end of the war. The court notes that the time period alleged, February 23, 1942 to September 2, 1945,

   is actually closer to 3-1/2 years.

10/29/2004 12:29 FAX 2066822305    Case MDL No. 875   Document 4288   Filed 11/01/04   Page 21 of 37    Ø021/037

1   removal statute. Under § 1442(a)(1), an action may be removed to federal court by "[t]he United States or

2   any agency thereof or any officer (or any person acting under that officer) of the United States or of any

3   agency thereof, sued in an official or individual capacity for any act under color of such office . . . ."

4   §1442(a)(1). The removing party must (1) demonstrate that it acted under the direction of a federal

5   officer; (2) raise a colorable federal defense to plaintiffs' claims; and (3) demonstrate a causal nexus

6   between plaintiffs' claims and the acts defendants performed under color of federal office. *Mesa v.*

7   *California*, 489 U.S. 121, 124-25, 134-35 (1989). Plaintiffs argue that defendants fail to meet elements

8   two and three of the *Mesa* test.

9                            *A. Colorable Federal Defense*

10         Under the second element of the *Mesa* test, the defendants must demonstrate a colorable federal

11   defense. *Mesa*, 489 U.S. at 129. In this inquiry, the court reviews the merits of the defendants' claimed

12   defense, but does not decide whether that defense is itself meritorious; rather, the court looks only to

13   whether the defendants have established a *colorable* claim to such a defense.[3] *See Fung v. Abex Corp.*,

14   816 F Supp. 569, 573 (N.D. Cal. 1992); *see also Boettcher v. Secretary of Health & Hum. Servs.*, 759 F.2d

15   719, 722 (9th Cir. 1985) (finding court's determination that claim "lacks merit does not necessarily mean,

16   however, that it is so insubstantial and immaterial that it does not pass the 'colorable' test.").

17

18        [3] Although an explicit definition of colorable is somewhat elusive, the court is not entirely without

19   direction. Webster's Dictionary defines colorable as "seemingly valid and genuine: having an appearance of

20   truth, right, or justice: plausible." *Webster's Third New Int'l Dictionary*, 449 (unabridged ed. 1993). The

21   Ninth Circuit has defined it as not "wholly insubstantial, immaterial, or frivolous." *Boettcher v. Secretary*

22   *of Health & Hum. Servs.*, 759 F.2d 719, 722 (9th Cir. 1985); *see also In Re Cadillac Brewing Company*, 102

23   F.2d 369, 370 (6th Cir.1939) (A colorable claim, for the purpose of invoking or conferring jurisdiction, is not

24   "so insubstantial and obviously insufficient either in fact or law, as to be plainly without color or merit and

25   a mere pretense."). The court agrees that these liberal constructions comport with the purpose of the federal

26   officer removal status, which was enacted by Congress to provide federal officers a neutral forum to present

27   their defense free from local interest or prejudice. *See, e.g., Arizona v. Manypenny*, 101 S.Ct. 1657, 451 U.S

28   232, 241-42 (1981), *rehearing denied* 452 U.S. 955, *on remand* 672 F.2d 761; *Murphy v. Kodz*, 351 F.2d 163

    161 (9th Cir. 1965).

10/29/2004 12:29 FAX   2066822305                                                    022/037

1    Here, defendants assert the military contractor defense.[4]  The military contractor defense is a

2    federal common law defense that enables a defendant who designs or manufactures military equipment

3    under federal direction to avoid liability under state tort law providing they can meet the conditions

4    outlined in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988).  The *Boyle* court held that military

5    contractors are immune from liability for design defects when: "(1) the United States approved reasonably

6    precise specifications; (2) the equipment conformed to these specifications; and (3) the supplier warned

7    the United States about the dangers in the use of the equipment that were known to the supplier and not to

8    the United States." *Id.* at 512.  The Ninth Circuit emphasizes the first element of the *Boyle* test when

9    applying the military contractor defense to failure to warn claims.[5]  *See Butler v. Ingalls Shipbuilding,*

10   *Inc.*, 89 F.3d 582, 586 (9th Cir.1996).

11   In *Butler*, the Court found that the military contractor defense "is inapplicable to a failure to warn

12   claim in the absence of evidence that in making its decision whether to provide a warning ... [defendant]

13   was 'acting in compliance with reasonably precise specifications imposed on [it] by the United States.'"

14   *Id.*, quoting *In re Hawaii Federal Asbestos Cases*, 960 F.2d 806, 813 (9th Cir. 1992) (*internal quotations*

15   *omitted*; *accord In re Joint E. & S. Dist. New York Asbestos Litig.*, 897 F.2d 626, 629-32 (2d Cir. 1990).

16   Accordingly, the military contractor defense applies only "when the Government, making a discretionary,

17   safety-related military procurement decision contrary to the requirements of state law, incorporates this

18   decision into a military contractor's contractual obligations," preventing the contractor from

19   accommodating safety concerns in a different fashion. *Federal Asbestos*, 960 F.2d at 813.  In other words,

20

---

21   Although this defense is also known as the "government contractor defense," the court finds "military

22   contractor defense" is the more accurate term. *See Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 746

23   (9th Cir. 1997) ("In the Ninth Circuit, however, it is only available to contractors who design and manufacture

24   military equipment.").

25   [5] Indeed, neither party to this case squarely addresses the second and third conditions under *Boyle*.

26   Regardless, the court finds that defendants have satisfied both of these conditions: defendants have shown that

27   the installation of asbestos insulation in ships constructed at Kaiser Shipyards conformed to the specifications

28   provided by the government, and the government was at least as aware as Kaiser about the hazards of asbestos

     exposure.

1   defendants are relieved of their liability to warn about shipyard hazards only where the government

2   prevent them from providing the required warnings.[6]

3        Defendants argue that Kaiser was prevented from posting "alarming warnings" about the risks of

4   working with asbestos because such warnings would conflict with federal policy as well as frustrate

5   federal legislation.  Specifically, defendants allege that federal policy during World War II was to

6   minimize alarm about the health risks associated with working with asbestos, fearing that such alarm may

7   cause labor disturbances in a time of national emergency.  Defendants claim that the government, in

8   furtherance of this policy, actively controlled the flow of asbestos health hazard information, to include

9   classifying certain reports identifying those hazards.

10        Defendants further allege that any attempt to warn Kaiser Shipyard employees about the hazards of

11   asbestos exposure would frustrate the objectives of "Public Law 247."  Defendants contend that this

12   federal law directed the expeditious construction of ships, and that any deviation from the specifications

13   provided by the government would only impede the nation's wartime shipbuilding capacity.  Therefore,

14

---

15        [6] Defendants claim that "[f]ederal courts have rejected this narrow construction of the government

16   contractor defense"; however, defendants cite no Ninth Circuit authority supporting this contention.  In fact, the

17   courts of this circuit have consistently found that the military contractor defense applies to failure to warn claims

18   only where the decision not to provide such warnings was made pursuant to government specifications.  *See, e.g.,*

19   *Butler*, 89 F.3d at 586 (finding government contractor defense inapplicable absent evidence showing failure to

20   warn was in compliance with government specifications); *Westbrook v. Asbestos Defendants*, 2001 WL 902642

21   at 2 N.D. Cal. 2001) ("But [defendant] has not shown that the Navy required it to refrain from issuing

22   warnings."); *Arness v. Boeing North American, Inc.*, 997 F.Supp. 1268, 1275 ("Thus, because the government

23   did not specify safeguards that [defendant] must use , or restrict [defendant's] ability to implement safeguards,

24   [defendant] was not acting under federal direction. . . ."); *Nguyen v. Allied Signal, Inc.*, 1998 WL 690854 at 2

25   (N.D. Cal. 1998) ("Here, defendants have produced no evidence that their contracts with the United States

26   government contained contractual obligations prohibiting them from placing warnings on their products.")

27   *Overly v. Raybestos-Manhattan*, 1996 WL 532150 at 4 (N.D.Cal. 1996) ("Absent a showing by defendant that

28   the federal government gave specific instructions to [defendant] not to warn employees of the existence of

asbestos, [defendant] is offered no protection by government contractor immunity.").

1  defendants argue, Kaiser was "effectively prohibited from generating its own warnings."

2  The court finds that defendants have satisfied their burden of raising a colorable federal defense

3  for purposes of 28 U.S.C. 1442(a)(1). Although defendants have not shown that the government expressly

4  prohibited Kaiser from warning shipyard employees about the hazards of asbestos exposure, their

5  argument that the government may have played some role in restricting such warnings raises at least a

6  colorable federal defense.[7] Nevertheless, the fact that defendants "can demonstrate a colorable claim to a

7  federal defense, does not necessarily entitle [defendants] to removal under Section 1442(a)(1). *Arness v.*

8  *Boeing North American, Inc.*, 997 F.Supp. 1268, 1273 (C.D. Cal. 1998). The defendants must now satisfy

9  the causal nexus element of the *Mesa* test.

*B. Causal Nexus*

12  Under the third element of the *Mesa* test, the defendants must demonstrate a causal nexus between

13  the actions for which they are being sued and the directives of federal officers. *Mesa*, 489 U.S. at 131-32.

14  Here, courts look at the extent to which the defendants' actions were directed by the federal government.

15  *Ryan v. Dow Chem. Co.*, 781 F.Supp. 934, 945-946 (E.D.N.Y. 1992). To satisfy this element, the

16  defendant must "by direct averment exclude the possibility that [the state action] was based on acts or

17  conduct of his not justified by his federal duty." *Mesa*, 489 U.S. at 132. In other words, defendants must

18  show not only that the Kaiser Shipyards used asbestos in accordance with "government specifications,

19  but also that [the government] restricted or prohibited [the defendants] from providing adequate

---

21  [7] Plaintiffs argument that the defendants have failed to present a colorable federal defense because they

22  have not shown that the asbestos-containing insulation used in the Kaiser shipyards was not the same

23  hazardous insulation used in non-governmental enterprises is misplaced. Defendants do not argue that the

24  asbestos used in its shipyards was different from the asbestos used in commercial shipbuilding; rather,

25  defendants claim that the government prevented Kaiser from warning its workers about the hazards of

26  working with this asbestos. Therefore, the inquiry here is not whether Kaiser implemented the same safety

27  procedures as would be required if it used commercially-available asbestos in ships constructed in its

28  shipyards, but instead whether government specifications controlled the implementation of those safety

procedures.

1  precautions against or otherwise notifying its employees of the hazards of asbestos exposure.'" *Arness*,

2  997 F.Supp. at 1275 (C.D. Cal. 1998) (finding that defendant failed to show a causal nexus where the

3  government did not specify the safeguards that the defendant must use), *quoting Ruffin v. Armco Steel*

4  *Corp.*, 959 F.Supp. 770, 774 (S.D. Tex. 1997). The defendants have not met this burden.

5        Defendants have introduced evidence alleging that the government had reason to conceal the

6  hazards of asbestos exposure, fearing labor disturbances that may result from such disclosure.

7  Furthermore, defendants have introduced evidence tending to show the government actually did conceal

8  some of this information, to include classifying asbestos-related health studies. However, defendants'

9  evidence clearly shows that Kaiser had access to unclassified information recognizing the hazards of

10  asbestos exposure. *See Marks Decl, Exhs.* J, K.[8] Had the government controlled all access to such

11  information, Kaiser would have a stronger claim that it was "effectively prohibited" from providing such

12  warnings. But absent such control, or direct specifications to the contrary, the government's concealment

13  of *some* information regarding shipyard health hazards does not impact Kaiser's duty to warn its workers

14  about the information it *did* have.

15        The court recognizes that Kaiser Shipyards may have been under significant pressure from the

16  government to speedily construct ships during a national emergency. It is even conceivable that this

17  pressure may have interfered with defendants' ability to warn the shipyard workers of the health hazards

18  associated with the construction of military ships. Nevertheless, the court is not convinced that the

19  interference alleged by defendants sufficiently establishes a causal nexus between Kaiser's failure to warn

20  its workers of safety hazards and the orders given it by the government.

21

22        Considering the strong presumption against removal jurisdiction, the court finds that defendants

23

24  _____

25  [8] In Exhibit J, the government recommended that Kaiser lock the ventilation system in the "on" position

26  because the men working with asbestos chose not to it use as it was too loud. Exh. J at 19. The government also

27  recommended that Kaiser Shipyard workers be "acquainted with the hazards of [working with asbestos], and

28  instructed in proper protective measures. . . ." Id. at 20. In Exhibit K, the government provided minimum safety

   requirements for working with asbestos and identified asbestosis as a risk in "any job in which asbestos dust is

   breathed." Exh. K at 9.

ORDER

have not satisfied their burden under 28 U.S.C. § 1442(a)(1).  Accordingly, the court REMANDS

plaintiffs' action to the King County Superior Court.

### III. ATTORNEY FEES & COSTS

Finally, under 28 U.S.C. § 1447(c), the court has discretion to award plaintiffs' "costs and any

actual expenses, including attorney fees, incurred as a result of the removal." Given the court's finding

that the defendants asserted a colorable federal defense, and the absence of any request by the plaintiffs,

the court exercises its discretion and does not grant plaintiffs' costs and fees.

### IV. CONCLUSION

Therefore, this court hereby GRANTS plaintiffs' motion to remand this action to King County Superior

Court.

The Clerk of the Court is directed to send uncertified copies of this Order to all counsel of record

and to any party appearing *pro se* at said party's last known address.

DATED this __3d__ day of December, 2003.

RONALD B. LEIGHTON
United States District Judge

# EXHIBIT C

FILED

1995 AUG 28 P 1: 28

CLERK U.S. DISTRICT COURT
DISTRICT OF OREGON
PORTLAND. OREGON

BY_____

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LEOTA OLSEN, Personal Representative of       )
the Estate of GERALD OLSEN,                   )
                                              )
                     Plaintiff,               )        CV 95-721-PA
                                              )
          v.                                  )
                                              )
ACandS, INC., a Pennsylvania                  )        ORDER
corporation; et al.,                          )
                                              )
                     Defendants.              )

PANNER, J.

     Plaintiff Leota Olsen, personal representative for the

estate of Gerald Olsen (Olsen), brings this asbestos personal

injury action against several defendants, including Rapid-

American Corp., Westinghouse Electric Corp. (Westinghouse),

and two individuals, Charles McVicker and Virgil Kemper, who

worked for E.J. Bartells.  Defendants removed this action from

Multnomah County Circuit Court.

     Plaintiff moves to remand the action.  Defendants oppose

remand.  I deny plaintiff's motions to remand.

1 - ORDER


EXHIBIT C

### BACKGROUND

Plaintiff alleges that Olsen was exposed to asbestos while employed as a sheet metal worker from 1951 to 1980. Defendant Westinghouse states that its liability must be based on plaintiff's alleged exposure to asbestos-containing insulation for turbines on the United States Navy vessel HASSAYAMPA. Westinghouse submits an affidavit from James Gate, a former marine engineer, who states that the Navy closely supervised Westinghouse while Westinghouse was designing and manufacturing the turbines.

Plaintiff brings claims for strict liability and negligence. Plaintiff alleges that defendants (1) did not provide adequate warnings; (2) failed to withdraw asbestos-containing products before Olsen's exposure, although they knew or should have known about asbestos's dangerous propensities; (3) failed to determine the level of airborne asbestos fibers emitted by the products when used by the foreseeable end user; and (4) failed to determine the amount of asbestos to which Olsen or similarly situated workers would be exposed during foreseeable use of the products.

### STANDARDS

The party seeking removal must establish federal jurisdiction. <u>Nishimoto v. Federman-Bachrach & Assocs.</u>, 903 F.2d 709, 712 n.3 (9th Cir. 1990). The removal statute is strictly construed against removal jurisdiction. <u>Salveson v.</u>

<u>/ / /</u>

2 - ORDER

AO 72

1   Western States Bankcard Ass'n, 731 F.2d 1423, 1426 (9th Cir.

2   1984).

3                           DISCUSSION

4       Westinghouse contends that removal is proper because it

5   was acting under a federal officer's orders or because the

6   vessel where Olsen was allegedly exposed was a federal

7   enclave.

8   1.  Acting Under a Federal Officer

9       Persons "acting under" a federal officer may remove state

10  civil or criminal actions brought against them for their

11  official acts.   28 U.S.C. § 1442(a)(1).   Removal is proper if

12  the defendant (1) shows that it acted under the direction of a

13  federal officer; (2) raises a federal defense to the

14  plaintiff's claims; and (3) shows a causal connection between

15  the plaintiff's claims and the acts it performed under color

16  of federal office.   Crocker v. Borden, Inc., 852 F. Supp.

17  1322, 1325 (E.D. La. 1994) (citing Mesa v. California, 489

18  U.S. 121, 131-32 (1989)).

19      Westinghouse claims that it was "acting under" a federal

20  officer because it manufactured steam turbines under contract

21  to the United States Navy.   Westinghouse cites several

22  decisions in which it successfully argued for removal.   For

23  example, in Pack v. ACandS, Inc., 838 F. Supp. 1099, 1103 (D.

24  Md. 1993), the court held removal was proper because of the

25  Navy's "extensive control over the construction, design and

26  testing of the turbines.   Indeed, the government would specify

3 - ORDER

1  and approve the type of asbestos cloth to be used when

2  insulating valves and flanges.  It monitored Westinghouse's

3  performance and on occasion it returned drawings and

4  specifications for revision."

5      Assuming that the Navy specified the type of asbestos

6  insulation, I disagree with Pack's reasoning.  Because

7  Westinghouse has not shown that it specifically designed the

8  asbestos-containing insulation for the Navy, there is no

9  causal connection between plaintiff's claims and the acts

10  performed under federal orders.  See Santos v. Owens-Corning

11  Fiberglas Corp., No. C 94-2581-EFL, 1994 WL 564720, at *3

12  (N.D. Cal. 1994) (granting remand when the defendant did not

13  show that its "products were made more dangerous than those on

14  the open market simply because the government ordered them to

15  be designed in a particular way").

16      Westinghouse also cannot establish a federal defense to

17  plaintiff's claims.  Under similar facts, the Ninth Circuit

18  rejected a military contractor defense because the defendant

19  had used the same asbestos-containing insulation it sold to

20  commercial buyers.  In re Hawaii Federal Asbestos Cases, 960

21  F.2d 806, 811-12 (9th Cir. 1992) (Hawaii law).

22  II.  Federal Enclave

23      Westinghouse also argues that removal is justified

24  because the Navy vessel was a federal enclave.  Personal

25  injury actions arising from incidents on federal enclaves

26  arise under 28 U.S.C. § 1331(a), creating federal question

4 - ORDER

AO 72

1   jurisdiction.  See Fung v. Abex Corp., 816 F. Supp. 569, 571

2   N.D. Cal. 1992).

3        Plaintiff responds that Oregon has concurrent

4   jurisdiction over plaintiff's claims.  See Willis v. Craig,

5   555 F.2d 724, 726 n.4 (9th Cir. 1977).  However, concurrent

6   jurisdiction does not help plaintiff.  Unless federal law

7   specifically prohibits removal, removal is proper when

8   concurrent jurisdiction exists.  See 28 U.S.C. § 1441(a)

9   ("Except as otherwise expressly provided by Act of Congress,"

10  any civil action over which the district court has original

11  jurisdiction may be removed).  Plaintiff has not pointed to

12  any federal statute or decision expressly forbidding removal

13  of tort actions based on personal injuries in federal

14  enclaves.  See 14A Charles A. Wright et al , Federal Practice

15  and Procedure § 3729 at 495 (1985) ("absent an express

16  provision to the contrary, the removal right should be

17  respected when there is concurrent jurisdiction").

                              CONCLUSION

19       Plaintiff's second motion to remand is denied.

20  Plaintiff's first motion to remand is denied as moot.

21       DATED this ___ day of August, 1995.

23

                                OWEN M. PANNER
24                              U.S. District Court Judge

25

26

5 - ORDER

AO 72

# EXHIBIT B

1

HON. ROBERT S. LASNIK

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9 GARY D. ALLEN,

No. C04-1641L

10                    Plaintiff,

11        v.

STIPULATION REGARDING
PLAINTIFF'S REPLY TO
GENERAL ELECTRIC
COMPANY'S OPPOSITION TO
MOTION TO REMAND

12 GENERAL ELECTRIC COMPANY; GOULDS
PUMPS (IPG), INC.; INGERSOLL-RAND

13 COMPANY; SABERHAGEN HOLDINGS,
INC.; and VIACOM, INC., Successor by Merger

14 to CBS Corporation, f/k/a WESTINGHOUSE
ELECTRIC CORPORATION,

15

16                    Defendants.

17

18        COME NOW Plaintiff and Defendant General Electric Co. by and through their

19 undersigned counsel of record, and stipulation and agree that Plaintiff's Reply to General

20 Electric Company's Opposition to Motion to Remand may be filed on November 5, 2004.

21        DATED this 4th day of October, 2004.

22

23

24

25

26

SCHROETER, GOLDMARK & BENDER
500 Central Building • 410 Third Avenue • Seattle, WA 98104
(206) 622-8000

1

WILLIAMS KASTNER & GIBBS PLLC     SCHROETER GOLDMARK & BENDER

2

3   s/k RISTIN HOUSER for           s/
CHRISTOPHER MARKS, WSBA # 28634    KRISTIN HOUSER, WSBA #7286

4   Counsel for Defendant General Electric Co.    Counsel for Plaintiffs
601 Union Street, Suite 4100        810 Third Avenue, Suite 500

5   Seattle, Washington 98101-2380      Seattle, Washington 98104
Cmarks@wkg.com            houser@sgb-law.com

6   (206) 628-6600              (206) 622-8000
(206) 628-6611 fax           (206) 682-2305 fax

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

STIPULATION REGARDING            SCHROETER, GOLDMARK & BENDER
PLAINTIFF'S REPLY TO GENERAL      500 Central Building • 810 Third Avenue • Seattle, WA 98104
ELECTRIC COMPANY'S OPPOSITION          (206) 622-8000
TO MOTION TO REMAND - 2
(CASE No. C04-1641L)

1   WILLIAM RUTZICK, WSBA # 11533
    SCHROETER GOLDMARK & BENDER
2   500 Central Building
    810 Third Avenue
3   Seattle, Washington  98104
    Telephone:  (260) 622-8000
4   Facsimile:  (206) 682-2305

5

6

7

8        **BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

9                **MDL DOCKET NO. 875**

10      **IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

11

12              THIS DOCUMENT RELATES TO:

13            Allen v. General Electric, et al.
14             United States District Court
             Western District of Washington
15            Cause No. C04-1641RSL

16             DECLARATION OF SERVICE

17 Melissa R. Mather hereby declares as follows:

18      That on October 29, 2004, I had copies of the following document:

19

20 •   NOTICE OF OPPOSITION TO CONDITIONAL TRANSFER ORDER

21 served upon attorneys of record for defendants by having said copies faxed, delivered or mailed,

22 postage prepaid, as follows:

23

24

25 | Kenneth Petty | Christine E. Dinsdale/Brian K. Keeley |
| --- | --- |
| Williams, Kastner & Gibbs | SOHA & LANG, P.S. |
26 | 601 Union Street, Suite 4100 | 701 Fifth Avenue, Suite 2400 |
| Seattle, Washington 98111-3926 | Seattle, Washington 98104 |

NOTICE OF OPPOSITION TO CONDITIONAL
TRANSFER ORDER - 1
N:\ASBESTOS\Allen 15078a1500\P\MDL\MDL DecServ-102804.doc

| | |
|---|---|
| 1<br>2<br>3 | Kevin Baumgardner<br>CORR CRONIN LLP<br>1001 - 4th Avenue Suite 3700<br>Seattle, Washington 98154 |
| 4<br>5 | Christopher Marks<br>Williams, Kastner & Gibbs<br>601 Union Street, Suite 4100<br>Seattle, Washington 98111-3926 |

| | |
|---|---|
| Timothy Thorson/Neal Philip<br>CARNEY, BADLEY, SMITH & SPELLMAN<br>700 Fifth Avenue, Suite 5800<br>Seattle, Washington 98104-5017 | |

6

7      I declare under penalty of perjury under the laws of the United States that the foregoing is true

8  and correct.

9      DATED at Seattle, Washington, this 29th day of October, 2004.

10

11

12                    MELISSA R. MATHER

13

14

15

16

17

18

19

20

21

22

23

24

25

26

NOTICE OF OPPOSITION TO CONDITIONAL
TRANSFER ORDER - 2
N:\ASB\ASTOS\Allen 15078a1500P\MDL\MDL DecServ-102904.doc