**875**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION DEC 1 3 2004

IN RE: ASBESTOS PRODUCTS
LIABILITY LITIGATION (NO. VI)

FILED
CLERK'S OFFICE

**MDL DOCKET NO. 875**

This Document Relates To:
**ROY BARRY, ET AL vs.
A.O. SMITH CO., ET AL.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**ROY BARRY, ET AL.**                                    **PLAINTIFFS**

**VS.**

**CIVIL ACTION NO. : 1:04CV731GRo**

**A.O. SMITH CO., ET AL.**                        **DEFENDANTS**

---

## CERTAIN DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO VACATE
## ORAL ARGUMENT REQUESTED

---

COME NOW, Certain Defendants[1], in *Roy Barry, et al v. A.O. Smith Co., et al.,* S.D. Mississippi, C.A. No. 1:04-731, by and through counsel, file this their Response to Plaintiffs' Motion to Vacate Conditional Transfer Order (CTO-239), and in support thereof would show unto the Panel the following:

1. The Complaint was filed in this matter on or around August 25, 2004. *See,* Complaint, attached hereto as Exhibit "A." The Complaint alleges asbestos exposure by nine (9) Mississippi resident Plaintiffs against one hundred forty-six (146) Defendant companies incorporated in States

---

[1]   Certain Defendants include: Accurate Felt & Gasket Co.; A. R. Wilfley & Sons, Inc.; Acco Chain and Lifting Products; Aurora Pumps; Cooper Alloy Corp.; DeZurik; Dover Corporation; Gardner Denver, Inc.; Gast Manufacturing, Inc.; General Electric Company; GE Polymerland, Inc.; GE Plastics Global Technology; Gorman-Rupp Company; Nikko Materials USA, Inc. d/b/a Gould Electronics, Inc.; Illinois Tool Works, Inc.; Lawrence Pumps, Inc.; Mueller Steam Specialty; NL Industries, Inc.; Nibco, Inc.; Parker-Hannifin Corp.; Patterson-Kelley Company; Pecora Corporation; Phoenix Specialty Mfg. Co., Inc.; Robbins & Myers, Inc.; Rogers Corporation; Schutte & Koerting, Inc.; Velan Valve Corporation; Viking Pump, Inc.; Warren-Rupp, Inc.; Warren Pumps, Inc. and Yeoman's Chicago Corp.

**OFFICIAL FILE COPY** IMAGED DEC 13 '04

other than Mississippi and with a principal place of business in a state other than Mississippi. Furthermore, the amount in controversy exceeds $75,000 exclusive of costs and interest.

2. Notices of Removal were timely filed by these Defendants on or about September 21, 2004. These Certain Defendants properly asserted Federal Jurisdiction based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441. As complete diversity jurisdiction exists in this case, removal to the federal district court is permissible and warranted. Of the named Defendants, Stuart C. Irby Co., is the only Mississippi corporation and it has been fraudulently joined in an effort to defeat federal jurisdiction. *See, Travis v. Irby,* 326 F.3d 644, 647 (5th Cir. 2003), attached hereto as Exhibit "B."

3. The Plaintiffs have not met the pleadings requirement set forth by the Mississippi Supreme Court in *Harold's Auto Parts, et al v. Flower Mangialardi* (hereinafter "*Mangialardi*"), attached hereto as Exhibit "C." According to *Mangialardi*, the plaintiffs' complaint must comply with Miss. R. Civ. P. Rules 8, 9, 10, and 11, containing fact-specific basic information, known at the time of filing, as to "which plaintiff was exposed to which product manufactured by which defendant in which workplace at any particular time," without reliance on discovery. *See, Mangialardi*, slip op. at 2-3. Clearly, the Plaintiffs' broad and non-specific Complaint does not meet the pleading requirements mandated by *Mangialardi*. The Plaintiffs do not allege even one fact to show that the lone Mississippi Defendant is liable under Mississippi law. There is no information to indicate that Stuart C. Irby Co. supplied any products to the Plaintiffs' employers. Because the Plaintiffs did not– and cannot – present a colorable claim against this Mississippi Defendant, it must be presumed that the company is fraudulently joined in this action in an effort to defeat diversity. Therefore, the Plaintiffs' claims are properly before this Panel and the Plaintiffs' Motion to Vacate should be denied.

2

4. Furthermore, the Plaintiffs' claims against this non-diverse Defendant are precluded by Miss. Code. Ann. § 11-1-63, attached hereto as Exhibit "D," because this Defendant is an innocent seller. In fact, Andrew J. Waring, Treasurer and CFO of Stuart C. Irby Co., has affirmed that the Stuart C. Irby Company "acted only in the capacity as a seller in the stream of commerce and did not participate in the manufacturing process of any of the alleged to have caused Plaintiff's injuries." *See,* Stuart C. Irby Company's Affidavit, attached hereto as Exhibit "E." Mississippi law states that, as an innocent seller, Stuart C. Irby cannot be held liable for the alleged injuries of the Plaintiff. Because the Plaintiff does not have a colorable claim against the only in-state Defendant, it is clear that this Mississippi Company is fraudulently joined to defeat diversity. Therefore, complete diversity exists and federal jurisdiction is proper in this action.

5. All Defendants served with the Complaint at the time of Removal consented to the removal of this action. This case was conditionally transferred to this Panel on or around November 24, 2004. The Plaintiff filed a Motion to Vacate the Conditional Transfer on or around December 7, 2004. *See,* Plaintiff's Motion to Vacate, attached hereto as Exhibit "F."

6. In the Plaintiff's Motion to Remand and Motion to Vacate the Conditional Transfer, the Plaintiff argues that this matter is improperly in federal court/MDL based on several Defendants' alleged failure to consent to removal of this action to federal court. This accusation by the Plaintiff is clearly erroneous. The Plaintiff contends that the Defendants listed in Exhibit "A" to the Plaintiffs' Motion to Remand contains a list of Defendants who failed to timely consent to removal. However, these Defendants were not served with the Complaint during the 30 days after these Defendants filed their Notice of Removal. Those served after the 30 day period filed a Notice of Consent to Removal and all Defendants agree that federal court has jurisdiction over this cause of action. Because this matter is properly before this Court based on diversity jurisdiction and according to the <u>Rules of</u>

3

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

Procedure of the Judicial Panel on Multidistrict Litigation, the Plaintiff's Motion to Vacate this

DEC 13 2004

Panel's Conditional Transfer Order should be denied.

FILED
CLERK'S OFFICE

 WHEREFORE PREMISES CONSIDERED these Certain Defendants respectfully request this

Panel to deny Plaintiff's Motion to Vacate the Conditional Transfer Order.

 Respectfully submitted, this the ___10th___ day of December, 2004.

FORMAN PERRY WATKINS KRUTZ & TARDY LLP

*Simine Bazyari Reed*

SAMUEL D. HABEEB (MSB#9552)
DAVID A. BAKER (MSB#101077)
SIMINE BAZYARI REED (MSB#101259)

For these Certain Defendants

OF COUNSEL:

FORMAN PERRY WATKINS KRUTZ & TARDY LLP
188 East Capitol Street Suite 1200
Post Office Box 22608
Jackson, Mississippi 39225-2608
Telephone: (601) 960-8600
Facsimile: (601) 960-3134

### CERTIFICATE OF SERVICE

 I, Simine Bazyari Reed, on behalf of Moving Defendants, do hereby certify that I have served by United States mail, postage prepaid, a true and correct copy of the above and foregoing document to Plaintiffs' counsel and all counsel as listed on the attached Service List.

 This, the ___10th___ day of December, 2004.

*Simine Bazyari Reed*

SIMINE BAZYARI REED (MSB#101259)

4

**PANEL SERVICE LIST (Excerpted from CTO-239)**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

*Roy Barry, et al. v. A. O. Smith Co., et al.*, S. D. Mississippi, C.A. No. 1:04-731

Robert M. Arentson, Jr.
M. Scott Minyard
Mark C. Carroll
Scott W. Bates
Barry C. Campbell
Heather L. Saum
Baker Donelson Bearman Caldwell
& Berkowitz, PC
PO Box 14167
Jackson, MS 39236-4167

Edward J. Currie, Jr.
Currie Johnson Griffin Gaines &
Myers
PO Box 750
Jackson, MS 39205-0750

David W. Dogan, III
David L. Trewolla
Dogan & Wilkinson, PLLC
Post Office Box 23062
Jackson, MS 39225-3062

Edward J. Cass
Gallagher Sharp Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Walter W. Dukes
Will Symmes
Dukes Dukes Keating & Faneca
PO Drawer W
Gulfport, MS 39502-0680

C. Michael Evert, Jr.
Evert & Weathersby, LLC
3405 Piedmont Road, Suite 225
Atlanta, GA 30305

James H. Bolin
Fred E. Bourn, III
Robert C. Galloway
Patricia C. Gandy
Meade Mitchell
Robert A. Miller
Phil Abernathy
Butler Snow O'Mara Stevens &
Cannada
PO Box 22567
Jackson, MS

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Lisa E. Ciolino
Jason Daniel Bone
Gieger, Laborde & Laperouse, LLC
One Shell Square, Suite 4800
701 Poydras Street
New Orleans, Louisiana 70139-4800

Adam M. Chud
Shea & Gardner
1800 Massachusetts Avenue, NW
Washington, DC 20036

Paige C. Jones
Terrell S. Williamson
Phelps Dunbar, LLP
Post Office Box 23066
Jackson, MS 39225-3066

Lawrence G. Pugh, III
James L. Fletcher, Jr.
Montgomery, Barnett, Brown,
Read, Hammond & Mintz
3200 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-3200

John E. Wade, Jr.
La'Verene Edney
Cheri D. Green
Robert Gibbs
Chris Shapley
T. Stewart Lee
Brunini Grantham Grower &
Hewes
PO Box 119
Jackson, MS 39205-0119

Ronald G. Peresich
Michael E. Whitehead
Mark Edwards
Cowles E. Symmes
Page, Mannino, Peresich &
McDermott
Post Office Drawer 289
Biloxi, MS 39533

Robert W. Wilkinson
Nathaniel A. Bosio
Matthew S. Lott
Dogan & Wilkinson, PLLC
Post Office Box 1618
Pascagoula, MS 39568-1618

David A. Damico
Burns White & Hickton
Fifth Avenue Place, Suite 2400
120 Fifth Avenue
Pittsburgh, PA 15222

W. Lee Watt
Brunini Grantham Grower &
Hewes
PO Drawer 210
Pascagoula, MS 39568-0210

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106-2574

Susan M. Hansen
Brownson & Ballou
4800 U. S. Bank Place
601 Second Avenue, South
Minneapolis, MS 55402

Jeffrey P. Hubbard
Charles R. Wilbanks
Wells, Moore, Simmons &
Hubbard, PLLC
Post Office Box 1970
Jackson, MS  39215-1970

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308-1314

Matthew P. Lachaussee
Allen Vaughn Cobb & Hood
PO Drawer 4108
Gulfport, MS 39502-4108

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

John G. Corlew
Michael O. Gwin
Louis B. Lanoux
Richard T. Lawrence
Watkins & Eager, PLLC
Post Office Box 650
Jackson, MS  39205-0650

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102

Ronald L. Motley
Motley Rice LLC
28 Bridgeside Blvd..
Mt. Pleasant, SC 29464

Scott B. Ostrow
Wyatt Tarrant & Combs
PO Box 775000
Memphis, TN 38120-4367

Robert L. Redfearn
Simon Peragine Smith & Redfearn
Energy Centre, 30th Floor
1100 Poydras Street
New Orleans, LA 70163

John J. Repcheck
Marks, O'Neil O'Brian & Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
Roven Kaplan & Wells
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
Vorys Sater Seymour & Pease
52 East Gay Street
Post Office Box 1008
Columbus, OH 43216

Neil Selman
Selman Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Anthony Sakalarios
F. Marvin Morris, III
Charles G. Blackwell
Sara M. Farris
Stacey Lea Sims
Morris, Sakalarios, & Blackwell,
PLLC
1817 Hardy Street
Hattiesburg, MS  39401

Robert N. Spinelli
Kelley Jasons McGuire & Spinelli,
LLP
Center Square West
15th Floor
Philadelphia, PA 19102

Robert E. Swickle
Jaques Admiralty Law Firm, PC
1570 Penobscot Building
The Maritime Asbestos Legal Clinic
Detroit, MI 48226

Donald H. Carlson
Robert Bull
John R. Pendergast, Jr.
Crivello, Carlson, Mentkowski &
Steeves, S.C.
710 North Plankinton Avenue
Milwaukee, Wisconsin 53203

Andrew J. Trevelise
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Thomas W. Tyner
Daphne Lancaster
Christopher O. Massenberg
Glenn L. M. Swetman
Robert P. Vining
Aultman, Tyner & Ruffin, Ltd.
Post Office Drawer 750
Hattiesburg, MS  39403-0750

PANEL SERVICE LIST (Excerpted from CTO-239) MDL-875                    Page 3 of 3

Carey R. Varnado
Montague, Pittman & Varnado
Post Office Drawer 1975
Hattiesburg, MS  39403-1975

Patrick R. Buchanan
Brown Buchanan Sessoms, PA
Post Office Box 1377
Biloxi, MS  39533-1377

Richard P. Sulzer
Robert E. Williams, IV
Christy C. Hendrix
Sulzer & Williams, L.L.C.
201 Holiday Boulevard, Suite 335
Covington, Louisiana  70433

John H. Holloman, III
Watkins, Ludlam, Winter &
Stennis
Post Office Box 427
Jackson, MS 39205-0427

Alben N. Hopkins
Hopkins, Barvié & Hopkins, PLLC
Post Office Box 1510
Gulfport, MS 39502-1510

Reeve G. Jacobus, Jr.
Williford, McAllister & Jacobus,
LLP
303 Highland Park Cove, Suite A
Ridgeland, MS    39157

James N. Bullock
Alton L. Watts
Shell Buford
Post Office Box 157
Jackson, MS   39205-0157

Robert P. Thompson
Lyn B. Dodson
Monte Barton
Copeland, Cook, Taylor & Bush
Post Office Box 6020
Ridgeland, MS  39158

Darren M. Guillot
Corina E. Salazar
Abbott, Simses & Kuchler
201 E. Capitol Street, Suite 710
Jackson, MS   39201

Darryl J. Foster
Lemle & Kelleher
Pan-American Life Center, 21st
Floor
601 Poydras Street
New Orleans, LA  70130-6097

William C. Reeves
Smith Reeves & Yarborough,
PLLC
Post Office Box 13469
Jackson, MS 39236-3469

Richard L. Forman
Walter G. Watkins, Jr.
Fred Krutz
Thomas W. Tardy, III
Samuel D. Habeeb
Stefan G. Bourn
David A. Baker
Craig E. Brasfield
Jennifer M. Studebaker
Mary Margaret Ratliff
Marcy B. Croft
Forman, Perry, Watkins, Krutz &
Tardy LLP
Post Office Box 22608
Jackson, Mississippi 39225-2608

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N. E.
Post Office Box 998
Cedar Rapids, IA 52406

Michael N. Watts
Mark Smith
Holcomb Dunbar
Post Office Drawer 707
Oxford, MS    38655-0707

Nick Roberts
Montgomery, Barnett, Brown,
Read, Hammond & Mintz
203 North Court One
2304 19th Street
Gulfport, MS  39501

Roy C. Williams
Williams, Heidelberg, Steinberger
& McElhaney
Post Office Drawer 1407
Pascagoula, MS 39568-1407

David K. Groome
Hailey, McNamara, Hall, Larmann
& Papale, LLP
Post Office Box 8288
Metairie, LA  70011-8288

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**A**

DEC 1 3 2004

FILED
CLERK'S OFFICE

# IN THE CIRCUIT COURT OF JONES COUNTY, MISSISSIPPI
## SECOND JUDICIAL DISTRICT

ROY BARRY
MASTON O. BISHOP
MARY S. HAIGLER
ROBERT L. HATHORN
CLYDE S. MILAM
GEORGE L. TAYLOR
EMILE E. THERIOT
JESSIE J. WALTERS
JOE WILLIS

                                      **PLAINTIFFS**

VERSUS                           CIVIL ACTION NO. _2004-153-CV8_

A. O. SMITH,
A. R. WILFLEY & SONS, INC. f/k/a A.R. Wilfley and Sons, Inc.,
A.W. CHESTERTON,
ACCO CHAIN & LIFTING PRODUCTS DIV, of FKI INDUSTRIES, INC.
ACF INDUSTRIES, INCORPORATED f/k/a The American Car and Foundry Company,
ACCURATE FELT & GASKET CO., INC.,
AMF, INC. f/k/a American Machine & Foundry Company, Inc,
AEROFIN CORPORATION, on behalf of Buffalo Forge Company,
ALFA LAVAL FLOW/TRI-CLOVER INC./ALFA LAVAL, INC.,
ALLEN-BRADLEY CO.,
AMERON INTERNATIONAL CORPORATION,
ANCHOR/DARLING VALVE COMPANY, Individually and as Successor in Interest to Muesco,
ANDERSON GREENWOOD,
ANDERSON GREENWOOD/CROSBY / CROSBY VALVE, INC., d/b/a Crosby Valve, Inc.,
ANDRITZ, INC., on behalf of Andritz Sprout-Bauer, Inc. and C.E. Bauer Digester,
AQUA-CHEM, INC.,
ARMSTRONG INTERNATIONAL, INC., d/b/a Armstrong Machine Works,
ARVINMERITOR, INC.,
ASCO POWER TECHNOLOGIES,
ASCO VALVE,
ATOFINA CHEMICALS, INC. individually and as successor to Pennwalt Corporation, M & T
Chemicals Inc. and Furan Plastics Inc.
AURORA PUMPS,
BAKER HUGHES, INCORPORATED,
BEAZER EAST, INC., Individually and as Successor in Interest to Kippers Company, a/k/a Beazer
Materials and Services, Inc.,
B-I-F,
BORDEN, INC., as Successor in Interest to Borden, Co., Chemical Division,
BW/IP INTERNATIONAL, INC., f/k/a BorgWarner Industrial Product, Successor to Byron Jackson
Pump Co.,

FILED

AUG 2 5 2004

LARRY ISHEE
CIRCUIT CLERK
JONES COUNTY, MS

**EXHIBIT**

A

CARVER PUMP CO.,

COLFAX CORPORATION, Individually and as successor in interest to IMO Delavan, IMO Industries, Inc., Delavan Steam Turbine Co., Warner Electric Co., IMO Pump Group and Allele Pump Co.

COLTEC INDUSTRIES, INC.;

COOPER ALLOY CORPORATION f/k/a The Cooper Alloy Foundry Co.,

COOPER INDUSTRIES, INC.,

COOPER TURBO COMPRESSOR,

COPES-VULCAN, INC.,

CROSSFIELD PRODUCTS CORPORATION,

CROUSE-HINDS CO, a Division of Cooper Industries,

DEZURIK, Individually and as Successor in Interest to Copes Vulcan, Inc.

DORR-OLIVER, INC.,

DOVER CORPORATION, Individually and as Successor in Interest to OPW Division and Blacker Pump Company

DURABLA MFG. COMPANY,

DURAMETALLIC CORP., a/k/a Flowserve Corporation-Fluid Sealing Division,

EDWARDS VOGT VALVE, INC.,

ELLIOTT TURBO MACHINERY CO., INC.,

EMERSON ELECTRIC CO., Individually and as Successor in Interest to Fisher Governor Co. and/or Fisher Controls International, Inc.

FMC CORP., on behalf of its former Construction Equipment Group, FMC Technologies, Inc., Individually and as Successor in Interest to Peerless Pump Co., John Bean Pumps, Chicago Pumps, Dayton-Dowd Pump Co., Ohio Apex Division, American Viscose Corporation, and Avisum Corporation,

FAIRBANKS MORSE PUMP CORPORATION,

FALK COMPANY,

FIRESTONE TIRE & RUBBER CO.,

FISCHER CONTROLS INTERNATIONAL, INC., Individually and as Successor in Interest to FISHER GOVERNOR COMPANY,

FLOWSERVE CORPORATION, on behalf of The Duriron Company, Inc.,

GARDNER DENVER, INC.,

GARFIELD MFG. CO.,

GARLOCK, INC.;

GARLOCK PACKING COMPANY

GAST MANUFACTURING, INC.,

GENERAL ELECTRIC COMPANY (Specifically excluding any claims of plaintiffs' resulting from exposure to a GE Turbine),

GE POLYMERLAND, INC. (Specifically excluding any claims of plaintiffs' resulting from exposure to a GE Turbine),

GE PLASTICS GLOBAL TECHNOLOGY LIMITED PARTNERSHIP (Specifically excluding any claims of plaintiffs' resulting from exposure to a GE Turbine),

GOODYEAR TIRE & RUBBER CO.,

GORMAN-RUPP CO., Individually and as Successor in Interest to C. H. Wheeler Mfg. Co., Patterson Pump Company, IPT Pumps, and Economy Pumps,

GOULD INC./GOULD ELECTRONICS INC.,

GREENE TWEED & CO.,

HAMILTON SUNDSTRAND CORPORATION, Individually and as Successor to The Falk Corporation,

HAMMOND VALVE CO.,

HENRY VOGT MACHINE CO.,

ILLINOIS TOOL WORK, INC., Individually and as Successor to The McKay Company, Tri-Mark & Corex,

INVENSYS METERING SYSTEMS-NORTH AMERICA INC.,

J. GRAVES INSULATION COMPANY,

JOHN CRANE, INC.,

JOHN H. CARTER CO., INC.,

KEYSTONE INTERNATIONAL, INC., AND KEYSTONE VALVE U.S.A. INC., Individually and as Successor in Interest to Yarway Corporation, Gimpel Machine Works, Gimped Corporation, Anderson Greenwood and Keystone Valve Co.,

KOPPERS INDUSTRIES, INC., Individually and as Successor in Interest to Kippers Company, a/k/a Beazer Materials and Services, Inc., and Beazer East, Inc.,

LADISH CO., INC.,

LAMONS GASKET CO., individually and on behalf of Lamons Metal Gasket Co.,

LAWRENCE PUMPS, INC.,

LESLIE CONTROLS, INC.,

LIMITORQUE CORPORATION,

MAREMONT CORP.,

MARLEY PUMP COMPANY,

MET-PRO CORPORATION, on behalf of Dean Brothers Pump

METALLO GASKET CO.,

MILTON ROY COMPANY,

MONSANTO COMPANY, Individually and as Successor in Interest to Monsanto, Lion Oil, Fiberloid Corp., Fisher Governor Co. and Fisher Controls International, Inc.,

MOYNO, INC.,

MUELLER STEAM SPECIALTY,

N L INDUSTRIES, INC., Individually and as Successor to National Lead Co., and on behalf of Floating Floors, Inc.; Chas. Taylor & Sons Refractories Company; and Didier-Taylor Refractories,

NIBCO, INC., a/k/a Northern Indiana Brass Co.,

NOOTER CORPORATION,

NORTON COMPANY n/k/a SAINT-GOBAIN ABRASIVES, INC.,

NVF MANUFACTURING COMPANY,

PARKER HANNIFIN CORPORATION,

PATTERSON-KELLEY,

PECORA,

PFIZER, INC.,

PHILLIPS PETROLEUM COMPANY,

PHOENIX SPECIALTY MFG. CO., INC.,

PLASTICS ENGINEERING CO. (PLENCO),

QUAKER CHEMICAL CORP.,

QUIGLEY COMPANY, INC.,

RANSBURG CORPORATION, f/k/a DeVilbiss Industries Products Corp., Successor to DeVilbiss

Company,

RAPID-AMERICAN CORPORATION,

RELIANCE ELECTRIC MOTORS,

REUNION INDUSTRIES, INC., Individually and as Successor in Interest to Oneida Molded Plastics and Rostone Corporation,

ROBBINS & MYERS, INC.,

ROCKWELL INTERNATIONAL CORP., Individually and as Successor in Interest to Edward Valves, Inc., Allen-Bradley Co., Allen-Bradley Co., Inc., Rockwell Mfg. Co., and Rockwell-Standard Corp.,

ROGERS CORPORATION,

ROTH PUMP CO., Individually and as Successor in Interest to Roy E. Roth Co.,

S B DECKING, INC.,

S. T. JOHNSON CO., Individually and as Successor in Interest to Mears-Kane-Ofeldt, Inc.,

SCHUTTE & KOERTING, LLC, Individually and as Successor in Interest to Schutte & Koerting Co. and Whitlock Manufacturing Co.,

SEPCO CORPORATION,

SHELL OIL COMPANY, individually of and as successor to Shell Chemical Company,

SIEMANS BUILDING TECHNOLOGIES, INC., Individually and as Successor in Interest to Landis & Gyr Powers, Inc., Mark Controls Corporation, and Powers Regulator Company,

SPIRAX-SARCO ENGINEERING, PLC,

SPIRAX-SARCO, INC.,

STRAHMAN VALVES, INC.

STUART C. IRBY CO.,

SUNDYNE CORPORATION,

SUNOCO, INC.,

TRW, INC,

TAYLOR SEIDENBACH, INC.,

TENNECO AUTOMOTIVE, INC.,

TEXACO, INC.,

TEXTRON, INC.,

THE FALK CORPORATION,

THE FOXBORO CO., n/k/a INVENSYS SYSTEMS, INC.,

MARLEY COOLING TECHNOLOGIES

THE MARLEY COMPANY, d/b/a Marley Pump Company

THE WM. POWELL INTERNATIONAL SALES CORPORATION, Individually as Successor in Interest to The Wm. Powell Co.,

THOMAS & BETTS CORPORATION, Individually and on behalf of and as Successor to Amerace Corporation and American Hard Rubber Co.,

TUTHILL CORPORATION, also d/b /a COPPUS PORTABLE VENTILATION DIVISION, Individually and as Successor in Interest to Coppus Turbine, and Coppus Engine Co., Toothily Pump Co. and Mechanical Products Co.,

TUTHILL PUMP CO., a/k/a TUTHILL PUMP GROUP,

UNITED GILSONITE LABORATORIES,

VELAN VALVE CORPORATION,

VIKING PUMP, INC., a Unit of IDEX Corporation,

WARREN PUMPS, INC., Individually and as Successor in Interest to William E. Quimby, Inc. and

Quimby Pump Co.,
WARREN-RUPP, INC., a Unit of IDEX Corporation,
WEINMAN PUMP COMPANY,
WESTINGHOUSE AIR BRAKE COMPANY, now known as WABCO, Inc.,
WEYERHAEUSER COMPANY;
WHITE CONSOLIDATED INDUSTRIES, INC., as Successor to SARCO Co., Inc.
WHITTAKER CLARK & DANIELS, INC.,
YARWAY CORP., Individually and as Successor in Interest to Yarnell-Waring Co.,
YEOMANS CHICAGO CORPORATION, Individually and on behalf of Morris Machine Works
f/k/a Morris Pumps, Inc.,
YUBA HEAT TRANSFER CO., Individually and on Behalf of American District Steam Company
(ADSCO),
JOHN DOE DEFENDANTS 1-100, and
JOHN DOE DEFENDANTS 101-200                                    **DEFENDANTS**

## COMPLAINT

## JURY TRIAL REQUESTED

Plaintiffs hereby complain as follows:

1.    Plaintiff, Roy Barry, is an adult resident citizen of Jones County, Mississippi.

      Plaintiff, Roy Barry, was exposed to asbestos, at least in part, at Masonite in Jones

      County, Mississippi.

2.    Plaintiff, Matson O. Bishop, is an adult resident citizen of Jones County, Mississippi.

      Plaintiff, Matson O. Bishop, was exposed to asbestos, at least in part, at Masonite in

      Jones County, Mississippi.

3.    Plaintiff, Mary S. Hailer, is an adult resident citizen of Jones County, Mississippi.

      Plaintiff, Mary S. Hailer, was exposed to asbestos, at least in part, at Sanderson

      Farms in Jones County, Mississippi.

4.    Plaintiff, Robert L. Hawthorn, is an adult resident citizen of Copiah County,

      Mississippi. Plaintiff, Robert L. Hawthorn, was exposed to asbestos, at least in part,

      at Masonite in Jones County, Mississippi.

5.   Plaintiff, Clyde S. Milam, is an adult resident citizen of Jones County, Mississippi.

6.   Plaintiff, George L. Taylor, is an adult resident citizen of Copiah County, Mississippi.  Plaintiff, George L. Taylor, was exposed to asbestos, at least in part, at Masonite in Jones County, Mississippi.

7.   Plaintiff, Emile E. The riot, is an adult resident citizen of Jones County, Mississippi.

8.   Plaintiff, Jessie J. Walters, is an adult resident citizen of Forrest County, Mississippi.  Plaintiff, Jessie J. Walters, was exposed to asbestos, at least in part, at Masonite in Jones County, Mississippi.

9.   Plaintiff, Joe Willis, is an adult resident citizen of Clarke County, Mississippi.  Plaintiff, Joe Willis, was exposed to asbestos, at least in part, at Masonite in Jones County, Mississippi.

10.  The Defendant, A. O. Smith, is a foreign corporation who may be served with process through its Registered Agent, Prentice Hall Corporation Systems, Inc. 1013 Centre Road, Wilmington, DE 19805.

11.  The Defendant, A. R. Wilfley & Sons, Inc., f/k/a A. R. Wilfley and Sons, Inc., is a foreign corporation who may be served with process through its Registered Agent, Stoffel Jerome, 7350 E Progress PL Ste 200, Englewood, CO 80111.

12.  The Defendant, A. W. Chesterton, is a foreign corporation, who may be served with process through its President, Route 33, Middlesex Industrial Park, Stoneham, Massachusetts 02182.

13.  The Defendant, FKI Industries, Inc. d/b/a ACCO Chain & Lifting Products Div., f/k/a American Chain Company, Inc., is a foreign corporation who may be served with process through its agent CT Corporation System, 1635 Market Street,

Philadelphia, PA 19103.

14. The Defendant, ACF Industries, Incorporated, f/k/a The American Car and Foundry Company, is a foreign corporation who may be served with process through its Agent CSC Lawyers Inc. Service Co., 221 Bolivar, Jefferson City, MO 65101.

15. The Defendant, Accurate Felt & Gasket Manufacturing Co., is a foreign corporation who may be served with process through its agent, William J. Gurney, 3239 South 51st Avenue Cicero, IL 60650-4063.

16. The Defendant, AMF Inc. f/k/a American Machine & Foundry Company, Inc. is a foreign corporation who may be served with process through its Chairman, Irwin L. Jacobs, 405 2nd Avenue S., Minneapolis, MN 55401.

17. The Defendant, Aerofin Corporation on behalf of Buffalo Forge Company, is a foreign corporation who may be served with process through its Agent/Officer, Louis Berkman, 4621 Murray Place, Lynchburg, VA 24506.

18. The Defendant, Alfa Laval Flow/Tri-Clover Inc. / Alfa Laval Inc., is a foreign corporation who may be served with process through its President, P.O. Box 1413, Kenosha, WI 53141-1413.

19. The Defendant, Allen-Bradley Co., is a foreign corporation, who may be served with process through its President, 1201 S. 2nd Street, Milwaukee, WI 53204.

20. The Defendant, Ameron International Corporation, is a foreign corporation, who may be served with process through its President, James S. Marlen, 245 S. Los Robles Avenue, Pasadena, CA 91101-2894.

21. The Defendant, Anchor/Darling Valve Company, individually and on behalf of Muesco, is a foreign corporation, who may be served with process through its

Agent/Officer, John J. Chappell, 701 First Street, Williamsport, PA 17701.

22.   The Defendant, Anderson Greenwood, is a foreign corporation, who may be served with process through its President, Greg Hyland, 3950 Greenbriar, Stafford, TX 77477.

23.   The Defendant, Anderson Greenwood/Crosby, and also d/b/a Crosby Valve, Inc. is a foreign corporation, who may be served with process through its Vice President, Edward Neale, 43 Kendrick Street, Wrentham, MA 02093-0308.

24.   The Defendant, Andritz, Inc., on behalf of Andritz Sprout-Bauer, Inc., and C.E. Bauer Digester, is a foreign corporation who may be served with process through its Registered Agent, C.T. Corporation System, 1300 East Ninth Street, Cleveland, OH 44114.

25.   The Defendant, Aqua-Chem, Inc., is a foreign corporation, who may be served with process through its Registered Agent, C. T. Corporation Systems, 634 Lakeland East Drive-Ste 101, Flowood, Mississippi 39232.

26.   The Defendant, Armstrong International, Inc., d/b/a Armstrong Machine Works, is a foreign corporation, who may be served with process through its President, 816 Maple Street, 3 Rivers, MI 49093.

27.   The Defendant, ArvinMeritor, Inc., is a foreign corporation, who may be served with process through its CEO, Mr. Larry D. Yost, 2135 W. Maple Road, Troy, MI 48084.

28.   The Defendant, ASCO Power Technologies, is a foreign corporation who may be served with process through its President, A.J. Visioli, 50 Hanover Road, Florhan Park, NJ 07932.

29.   The Defendant, ASCO Valve, is a foreign corporation, who may be served with

process through its President, 50 Hanover Road, Florhan Park, NJ 07932.

30. The Defendant, Atofina Chemicals, Inc. individually and on behalf of and/or as successor to Pennwalt Corporation a/k/a Pennwalt Chemicals Corporation, M&T Chemicals, Inc., and Furan Plastics Inc., is a foreign corporation who may be served with process through its CEO, Jean-Pierre Seuss, 2000 Market Street, Philadelphia, PA 19103-3222.

31. Defendant, Aurora Pumps, is a foreign corporation, who may be served with process through its president, 800 Airport Road, North Aurora, IL 60542

32. Baker Hughes, Incorporated, is a foreign corporation who may be served with process in care of Michael E. Wiley, 3900 Essex Lane, Suite 1200, Houston, Texas 77027-5177.

33. The Defendant, Beazer East, Inc., Individually and as Successor in Interest to Koppers Company, a/k/a Beazer Materials and Services, Inc., is a foreign corporation who may be served with process through its Registered Agent, C.T. Corporation System, 645 Lakeland East Drive-Ste 101, Flowood, MS 39232.

34. The Defendant, B-I-F, a/k/a Builders Iron Foundry, is a foreign corporation, who may be served with process through its President, 16490 Chillicothe Road, Chagrin Falls, OH 44023-4398.

35. The Defendant, Borden, Inc., as Successor in Interest to Borden Co., Chemical Division, is a foreign corporation, who may be served with process through its Registered Agent, Prentice-Hall Corporation System, 506 S. President Street, Jackson, MS 39201.

36. The Defendant, BW/IP International, Inc., f/k/a BorgWarner Industrial Product,

Successor to Byron Jackson Pump Co., is a foreign corporation who may be served with process through its officer, John Nanos, 222 W Colinas Blvd., Ste 1500, Irving, TX 75039.

37.     The Defendant, Carver Pump Co., is a foreign corporation, who may be served with process through its President, 2415 Park Avenue, Muscatine, IA 52761-5691.

38.     The Defendant, Colfax Corporation, Individually, on behalf of, and as successor in interest to IMO Delavan, IMO Industries, Inc., De Laval Steam Turbine Co., Warner Electric Co., IMO Pump Group and Allele Pump Co. is a foreign corporation who may be served with process through its agent/officer Mr. John Young, 9211 Forest Hill Ave., Ste. 109, Richmond VA 23235.

39.     The Defendant, Coltec Industries, Inc., is a foreign business corporation who may be served with process through its agent CT Corporation System, 645 Lakeland East Drive - Ste. 101, Flowood, MS 39232.

40.     The Defendant Cooper Alloy Corporation f/k/a The Cooper Alloy Foundry Co. may be served with process through its Agent/officer 201 Sweet land Ave. Hillside, NJ 07205.

41.     The Defendant, Cooper Industries, Inc., is a foreign corporation who may be served with process through its Registered Agent, C.T. Corporation Systems, 645 Lakeland East Drive-Ste 101, Flowood, MS 39232..

42.     The Defendant, Cooper Turbo Compressor, is a foreign corporation who may be served with process through its President, 3101 Broadway, Buffalo, NY 14225-0209.

43.     The Defendant, Copes Vulcan, Inc., is a foreign corporation who may be served through its President, Wayne Robbins, 250 Riverside Avebue North, Sartell, MN

556377-1743.

44. The Defendant, Crossfield Products Corporation, is a foreign corporation who may be served with process through its Registered Agent, C.T. Corporation System, 645 Lakeland East Drive-Ste 101, Flowood, MS 39232..

45. The Defendant, Crouse-Hinds Co., a Division of Cooper Industries, is a foreign corporation who may be served with process through its President, H. John Riley, Jr., Wolf & Seventh N. St., Syracuse, NY 13221.

46. The Defendant, Dezurik, Individually and as Successor in Interest to Copes Vulcan, Inc., is a foreign corporation who may be served through its President, Wayne Robbins, 250 Riverside Avebue North, Sartell, MN 556377-1743.

47. The Defendant, Dorr-Oliver, Inc., is a foreign corporation, who may be served with process through its CEO, 612 Wheelers Farm Road, Milford, CT 06460.

48. The Defendant, Dover Corporation, Individually and as Successor in Interest to OPW Division and Blackmer Pump Company, is a foreign corporation who may be served with process through its President, Mr. Ronald L. Hoffman, 280 Park Avenue, New York, NY 10017-1292.

49. The Defendant, Durabla Mfg. Company, is a foreign corporation who may be served with process through its President, 2572 Industry Lane, Norristown, PA 19403.

50. The Defendant, Durametallic Corp., a/k/a Flowserve Corporation-Fluid Sealing Division, is a foreign corporation who may be served with process through its officer/agent 222 W. Las Colinas Boulevard, Ste 1500, Irving, TX 75039.

51. The Defendant, Edwards Vogt Valve, Inc., is a foreign corporation who may be served with process through its Registered Agent, C.T. Corporation Systems 225

Hillsborough Street, Raleigh, NC 27603.

52.   The Defendant, Elliott Turbo Machinery Co., Inc., is a foreign corporation who may be served with process through its President, 901 N. Fourth St., Jeanette, PA 15644-1473.

53.   The Defendant, Emerson Electric Co., Individually and as Successor in Interest to Fisher Governor Co., and/or Fisher Controls International, Inc., is a foreign corporation who may be served with process through its Registered Agent, C.T. Corporation System, 645 Lakeland East Drive-Ste 101, Flowood, MS 39232..

54.   The Defendant, FMC Corp., on behalf of its former Construction Equipment Group, FMC Technologies, Inc., Individually and as Successor in Interest to Peerless Pump Co., John Bean Pumps, Chicago Pumps, Dayton-Dowd Pump Co., Ohio Apex Division, American Viscose Corporation, and Avisun Corporation, a foreign corporation, who may be served with process through William G. Walter or Joseph H. Wetherland, 200 E. Randolph Road, Chicago, Illinois 60601.

55.   The Defendant, Fairbanks Morse Pump Corporation is a foreign corporation who may be served with process through its Vice-President, Mike Griffin, 3601 Fairbanks Avenue, Kansas City, KS 66106.

56.   The Defendant, Falk Company, is a foreign corporation who may be served with process through its President, Post Office Box 492, Milwaukee, WI 53201-0492.

57.   The Defendant, Firestone Tire & Rubber Co., is a foreign corporation who may be served with process through its President, 1200 Firestone Parkway, Akron, OH 44319.

58.   The Defendant, Fisher Controls International, Inc., Individually and as Successor in

Interest to Fisher Governor Company, is a foreign corporation who may be served with process through its President, 8000 Maryland Avenue, Clayton, MO 63105.

59.     The Defendant, Fisher Service Co., is a foreign corporation who may be served with process through its Registered Agent, C.T. Corporation System, 645 Lakeland East Drive-Ste 101, Flowood, MS 39232.

60.     The Defendant, Flowserve Corporation on behalf of The Duriron Company, Inc., is a foreign corporation, who may be served with process through its Registered Agent, C.T. Corporation System, 1635 Market Street, Philadelphia, PA 19103.

61.     The Defendant, Gardner Denver, Inc., is a foreign corporation who may be served with process through its Agent/Officer Ross J. Centanni, 1800 Gardner Expressway, Quincy, IL 62301.

62.     The Defendant, Garfield Mfg. Co., is a foreign corporation who may be served with process through its President, 10 Midland Avenue, Wallington, NJ 07057.

63.     The Defendant, Gast Manufacturing, Inc., is a foreign corporation who may be served with process through its Registered Agent, The Corporation Company, 30600 Telegraph Road, Bingham Farms, MI 48025.

64.     The Defendant, General Electric Company, (specifically excluding any claims of plaintiffs resulting from exposure to a GE Turbine) is a foreign corporation who may be served with process through its Registered Agent, C T Corporation Systems, 645 Lakeland East Drive-Ste 101, Flowood, MS 39232.

65.     The Defendant, GE Polymerland, Inc. (specifically excluding any claims of plaintiffs resulting from exposure to a GE Turbine) is a foreign corporation who may be served with process through its Registered Agent General Electric Company, 1 Plastics

Ave., Pittsfield, MA 01201.

66.     The Defendant, GE Plastics Global Technology Limited Partnership (specifically
        excluding any claims of plaintiffs resulting from exposure to a GE Turbine) is a
        foreign corporation who may be served with process through its Registered Agent GE
        Polymerland, Inc., 1 Plastics Ave., Pittsfield, MA 01201.

67.     The Defendant, Goodyear Tire & Rubber Co., is a foreign corporation who may be
        served with process through its President, Mr. Robert Keegan, 1144 E. Market Street,
        Akron, OH 44316.

68.     The Defendant, Gorman-Rupp Co., Individually and as Successor in Interest to C. H.
        Wheeler Mfg. Co., Patterson Pump Company, IPT Pumps, and Economy Pumps, is a
        foreign corporation, who may be served with process through its President, Jeffery
        Gorman, 305 Bowman Street, Manfield, Ohio 44901.

69.     The Defendant, Gould Inc./ Gould Electronics Inc., is a foreign corporation who may
        be served with process through its President, 34929 Curtis Boulevard, Eastlake, OH
        44095-4001.

70.     The Defendant, Greene Tweed & Co., is a foreign corporation who may be served
        with process through its President, Mike Brewer, 2374 North Penn Road, Hatfield,
        PA 19440.

71.     The Defendant, Hamilton Sundstrand Corporation, Individually and as Successor to
        The Falk Corporation, is a foreign corporation who may be served with process
        through its President, Ronald F. McKenna, 1 Hamilton Road, Windsor Locks, CT
        06096.

72.     The Defendant, Hammond Valve Co., is a foreign corporation who may be served

with process through its President, Mr. Dennis Killelen, 210 Tower Street, Prairie Du Sac, WI 53578.

73. The Defendant, Henry Vogt Machine Co., is a foreign corporation who may be served with process through its Agent, Margarest S. Culver, 1000 West Ormsby, Louisville, KY 40210.

74. The Defendant, Illinois Tool Work, Inc., Individually and as Successor to The McKay Company, Tri-Mark & Corex, is a foreign corporation who may be served with process through its Agent/Officer, W. James Farrell, 3600 West Lake Avenue, Glenview, IL 60025-5811.

75. The Defendant, Invensys Metering Systems-North America Inc., is a foreign corporation who may be served with process through its Registered Agent, C. T. Corporation System, 111 Eight Avenue, New York, NY, 10011.

76. The Defendant J Graves Insulation Company, is a foreign corporation who may be served with process through its President, 801 W. 62nd Street, Shreveport, LA 71106.

77. The Defendant, John Crane, Inc., is a foreign corporation who may be served with process through its President, 6400 West Oakton Street, Morton Grove, IL 60053.

78. The Defendant, John H. Carter Co., Inc., is a foreign corporation, who may be served with process through its President, 2728 N. Arnault Road, Metairie, Louisiana 70002.

79. The Defendant, Keystone International Inc., and Keystone Valve U.S.A. Inc., Individually and as Successor in Interest to Yarway Corporation, Gimpel Machine Works, Gimpel Corporation, Anderson Greenwood and Keystone Valve Co., is a foreign corporation who may be served with process through its President, 9700 W. Gulf Bank Drive, Houston, TX 77040.

80. The Defendant, Koppers Industries, Inc., Individually and as Successor in Interest to Koppers Company, Inc., a/k/a Beazer Materials and Services, Inc., and Beazer East, Inc., is a foreign corporation who may be served with process through its Registered Agent, C.T. Corporation Systems, 645 Lakeland East Drive, Ste 101, Flowood, MS 39232..

81. The Defendant, Ladish Co., Inc., is a foreign corporation who may be served with process through its agent, Wayne E. Larsen, 5481 S. Packard Avenue, Cudahy, WI 53110.

82. The Defendant Lamons Gasket Company, individually and on behalf of Lamons Metal Gasket Co., is a foreign corporation who may be served with process through its President at 7300 Airport Blvd., Houston, TX 77061.

83. The Defendant, Lawrence Pumps, Inc., is a foreign corporation who may be served with process through its President, Victor J. Mill, III, 371 Market Street, Lawrence, MA 01843.

84. The Defendant, Leslie Controls, Inc., is a foreign corporation who may be served with process through its President, Roland P. Robichaud, 12501 Telecom Drive, Tampa, FL 33637.

85. The Defendant, Limitorque Corporation, is a foreign corporation who may be served with process through its President, R. Arnold Wallace, 5114 Woodall Rd. Lynchburg, VA 24502.

86. The Defendant, Maremont Corp., is a foreign corporation, whose registered agent and address for service of process is unknown at this time.

87. The Defendant, Met-Pro Corporation, on behalf of Dean Brothers Pumps, is a

Delaware corporation who may be served with process through its CEO, William Kacin, 160 Cassell Road, Box 144, Harleysville, PA 19438.

88. The Defendant, Metallo Gasket Co., is a foreign corporation who may be served with process through its President, 16 Bethany Street, New Brunswick, NJ 08903.

89. The Defendant, Milton Roy Company, is a foreign corporation who may be served with process through its President, Mr. Jean Claude Pharamond, 201 Ivyland Road, Ivyland, PA 18974.

90. The Defendant, Monsanto Company, Individually and as Successor in Interest to Monsanto, Lion Oil, Fiberloid Corp., Fisher Governor Co., and Fisher Controls International, Inc., a foreign corporation, who may be served with process through its CEO, Hendrik A. Verfaillie, 8000 North Lindbergh Boulevard, St. Louis, Missouri 63167.

91. The Defendant, Moyno, Inc., is foreign corporation, who may be served with process through its agent CT Corporation System, 441 Vine St. #3810, Cincinnati, OH 85202.

92. The Defendant, Mueller Steam Specialty, is a foreign corporation who may be served with process through its President, 1491 NC Hwy. 20W, St. Pauls, NC 28384.

93. The Defendant, N L Industries, Inc., Individually and as Successor to National Lead Co., and on behalf of Floating Floors, Inc., Chas. Taylor & Sons Refractories Company and Didier-Taylor Refractories, is a foreign corporation who may be served with process through its Registered Agent, Prentice-Hall Corporation System, 506 S. President Street, Jackson, MS 39201.

94. The Defendant, Nibco, Inc., a/k/a Northern Indiana Brass Co., is a foreign

corporation, who may be served with process through its President, Mr. Rex Martin, 1516 Middlebury Street, Elkhart, IN 46515-1167.

95.   The Defendant, Nooter Corporation, is a foreign corporation who may be served with process through its Registered Agent, Raymond B. Rohrbacker, 1400 South Third Street, Box 451, St. Louis, MO 63166.

96.   The Defendant, Norton Company now known as Saint-Gobain Abrasives, Inc., is a foreign corporation who may be served with process through its Registered Agent, C.T. Corporation System, 111 Eighth Avenue, New York, NY 10011.

97.   The Defendant, NVF Manufacturing Company, is a foreign corporation who may be served with process through its President, 1166 Yorklyn Road, Yorklyn, DE 19736.

98.   The Defendant, Parker Hannifin Corporation, is a foreign corporation who may be served with process through its President, Mr. Donald E. Washkewicz, 6035 Parkland Boulevard, Cleveland, OH 44124-4141.

99.   The Defendant, Patterson-Kelley, is a foreign corporation who may be served with process through its President, 100 Burson Street, East Stroudsburg, PA 18301.

100.  The Defendant, Pecora, is a foreign corporation who may be served with process through its President, 165 Wambold Road, Harleyville, PA 13438.

101.  The Defendant, Pfizer, Inc., is a foreign corporation who may be served with process through its registered agent, C T Corporation System, 645 Lakeland East Drive-Ste 101, Flowood, Mississippi 39232.

102.  The Defendant, Phillips Petroleum Company, is a foreign corporation who may be served with process through its President, Mr. Jim J. Mulva, Phillips Building, Bartlesville, OK 74004.

103.    The Defendant, Phoenix Specialty Mfg. Co., Inc., is a foreign corporation who may
        be served with process through its CEO, Robert R. Hurst, Jr., Highway 301,
        Bamberg, SC 29003.

104.    The Defendant, Plastics Engineering Co. (PLENCO), is a foreign corporation who
        may be served with process through its President, Mr. Michael R. Brotz, Post Office
        Box 758, Sheboygan, WI 53082-0578.

105.    The Defendant, Quaker Chemical Corp., is a foreign corporation who may be served
        with process through its President, Mr. Ronald J. Naples, Elm & Lee Streets,
        Conshocken, PA 19428.

106.    The Defendant, Quigley Company, Inc., is a foreign corporation, who may be served
        with process through its Registered Agent, C. T. Corporation Systems, 1300 East 9th
        Street, Cleveland, Ohio 44114.

107.    The Defendant, Ransburg Corporation, formerly known as DeVilbiss Industries
        Products Corp., Successor to DeVilbiss Company, is a foreign corporation who may
        be served with process through its Registered Agent, C.T. Corporation System, 645
        Lakeland East Drive-Ste 101, Flowood, MS 39232.

108.    The Defendant, Rapid-American Corporation, is a foreign corporation, who may be
        served with process through its President, 1700 Broadway, Suite 1403, New York,
        New York 10019.

109.    The Defendant, Reliance Electric Motors, is a foreign corporation who may be served
        with process through its President, 6040 Ponders Court, Greenville, SC 29615.

110.    The Defendant, Reunion Industries, Inc., Individually and as Successor in Interest to
        Oneida Molded Plastics and Rostone Corporation, is a foreign corporation who may

be served with process through its President, Mr. Kimball J. Bradley, 11 Stanwix St., Suite 1400, Pittsburgh, PA 15222.

111. The Defendant, Robbins & Meyers, Inc., is a foreign corporation who may be served with process through its President, 1400 Kettering Tower, Dayton, OH 45423.

112. The Defendant, Rockwell International Corp., Individually and as Successor in Interest to Allen-Bradley Co., Allen-Bradley Co., Inc., Rockwell Mfg. Co., and Rockwell-Standard Corp., is a foreign corporation who may be served with process through its Registered Agent C.T. Corporation Systems, 645 Lakeland East Drive-Ste 101, Flowood, MS 39232.

113. The Defendant, Rogers Corporation, is a foreign corporation who may be served with process through its CEO, Walter E. Boomer, 1 Technology Drive, Rogers, CT 06263.

114. The Defendant, Roth Pump Co., Individually and as Successor in Interest to Roy E. Roth Co., is a foreign corporation who may be served with process through its President, Kenneth K. Rueffer, Post Office Box 4330, Rock Island, IL 61204.

115. The Defendant, S B Decking, Inc., is a foreign corporation who may be served with process through its President, 5220 Whitby Avenue, Philadelphia, PA 19143.

116. The Defendant, S.T. Johnson Co., Individually and as Successor in Interest to Mears-Kane-Ofeldt, Inc., is a foreign corporation who may be served with process through its President, Mr. Todd Cole, Post Office Box 8627, Emeryville, CA 94662.

117. The Defendant, Schutte & Koerting, Inc., Individually and as Successor in Interest to Schutte & Koerting Co., is a foreign corporation, who may be served with process through its CEO, Hugh H. Williamson, III, 2233 State Road, Bensalem, Pennsylvania 19020.

118.   The Defendant, Sepco Corporation, is a foreign corporation, who may be served with process through its agent CT Corporation System, 818 West Seventh St., Los Angeles, CA 90017.

119.   The Defendant, Shell Oil Company, individually and as successor in interest to Shell Chemical Company, is a foreign corporation who may be served with process through its Registered Agent, Corporation Service Company, 506 S President Street, Jackson, MS 39201.

120.   The Defendant, Siemens Building Technologies, Inc., individually and as successor in interest to Landis & Gyr Powers, Inc., Mark Controls Corporation, and Powers Regulator Company, is a foreign corporation who may be served with process through its Registered Agent, CT Corporation System, 645 Lakeland East Drive, Flowood, MS 39232..

121.   The Defendant, Spirax-Sarco Engineering, PLC, is a foreign corporation who may be served with process through its President, Mr. Marcus J.D. Steele, Chalton House, Cirencester Road, Cheltenham, Gloucestershire GL53 8ER UK.

122.   The Defendant, Spirax-Sarco, Inc., is a foreign corporation who may be served with process through its President, 1150 Northpointe Boulevard, Blythewood, SC 29016.

123.   The Defendant, Strahman Valves, Inc., is a foreign corporation who may be served with process through its President, 3 Vreeland Road, Florham Park, NJ 07932.

124.   The Defendant, Stuart C. Irby Co., is a foreign corporation who may be served with process through its Registered Agent, Charles R. Campbell, III, 815 South State Street, Jackson, MS 39201.

125.   The Defendant, Sundyne Coporation, is a foreign corporation who may be served

with process through its agent, The Corporation Company, 1675 Broadway, Denver CO 80202.

126.    The Defendant, Sunoco, Inc., is a foreign corporation who may be served with process through its President, John G. Drosdic, 10 Penn Center, 1801 Market Street, Philadelphia, PA 19103-1699.

127.    The Defendant, TRW, Inc., is a foreign corporation, who may be served with process through its President, E. D. Dunford, 1900 Richmond Road, 2N, Cleveland, OH 44124.

128.    The Defendant, Taylor Seidenbach, Inc., is a foreign corporation who may be served with process through its Registered Agent, C.T. Corporation System, 645 Lakeland East Drive-Ste 101, Flowood, MS 39232.

129.    The Defendant, Tenneco Automotive, Inc., is a foreign corporation who may be served with process through its President, Mr. Mark P. Frissora, 500 North Field Drive, Lake Forest, IL 60045.

130.    The Defendant, Texaco, Inc., is a foreign corporation who may be served with process through its President, 2000 Westchester Avenue, White Plains, NY 10650.

131.    The Defendant, Textron, Inc., is a foreign corporation, who may be served with process through its Registered Agent, C. T. Corporation Systems, 645 Lakeland East Drive-Ste 101, Flowood, Mississippi 39232.

132.    The Defendant, The Falk Corporation, is a foreign corporation who may be served with process through its Registered Agent, C.T. Corporation System, 44 E. Mifflin Street, Madison, WI 53703.

133.    The Defendant, The Foxboro Co., now known as Invensys Systems, Inc., is a foreign

corporation who may be served with process through its Registered Agent, C T
Corporation System, 101 Federal Street, Boston, MA 02110.

134.   The Defendant, Marley Cooling Technologies, is a foreign corporation who may be
served with process in care of SPX Corporation, John B. Blystone, 13515 Ballentyne
Corporate Place, Charlotte, NC 28277.

135.   The Defendant, The Marley Company, also d/b/a Marley Pump Company is a foreign
corporation who may be served with process through its Registered Agent, C. T.
Corporation System, 2222 Grand Avenue, Des Moines, IA 50312.

136.   The Defendant, The Wm. Powell International Sales Corporation, individually and on
behalf of The Wm. Powell Co., is a foreign corporation who may be served with
process through its agent R C Cowart, 2503 Spring Grove Avenue, Cincinnati, OH
45214.

137.   The Defendant, Thomas & Betts Corporation, Individually and on behalf of and as
Successor to Amerace Corporation and American Hard Rubber Co., is a foreign
corporation, who may be served with process through its President, T. Kevin
Dunnigan, 8155 T & B Blvd., Memphis, TN 38125.

138.   The Defendant, Tuthill Corporation, a/k/a /Coppus Portable Ventilation Division
Individually and as Successor in Interest to Tuthill Pump Co., and Mechanical
Products Co., Tuthill Energy Systems, and Coppus Engineering Co, is a foreign
corporation who may be served with process through its President, James Jay Tuthill,
Jr., 8500 South Madison Street, Burr Ridge, IL 60521.

139.   The Defendant, Tuthill Pump Co., a/ka/ Tuthill Pump Group, is a foreign corporation
who may be served with process through its President, 5143 Port Chicago Highway,

Concord, CA 94520.

140. The Defendant, United Gilsonite Laboratories, is a foreign corporation who may be served with process through its President, Mr. Malcom C. Mackinnon, Post Office Box 70, Scranton, PA 18501.

141. The Defendant, Velan Valve Corporation, is a foreign corporation who may be served with process through its President, 94 Avenue C., Williston, VT 05495-9732.

142. The Defendant, Viking Pump, Inc., a Unit of IDEX Corporation, is a foreign corporation who may be served with process through its President, 406 State Street, P.O. Box 8, Cedar Falls, IA 50613-0008.

143. The Defendant, Warren Pumps, Inc., Individually and as Successor in Interest to William E. Quimby, Inc., and Quimby Pump Co., is a foreign corporation who may be served with process through its President, John J. Carr, 82 Bridges Avenue, Post Office Box 969, Warren, MA 01083-0969.

144. The Defendant, Warren-Rupp, a unit of IDEX Corporation, is a foreign who may be served with process through its Agent/Officer, 800 North Main Street, P.O. Box 1568, Mansfield, OH 44901-1568.

145. The Defendant, Weinman Pump Company, is a foreign corporation who may be served with process through its President, 420 Third Street, Piqua, OH 45356.

146. The Defendant, Westinghouse Air Brake Company, now known as WABCO, Inc., is a foreign corporation, who may be served with process through its Registered Agent, The Corporate Trust Company, Corporate Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

151. Weyerhaeuser Company is a foreign corporation, who may be served process through

its registered agent, CT Corporation Systems, 645 Lakeland East Drive-Ste 101, Jackson, MS 39232.

152. The Defendant, White Consolidated Industries, Inc., as successor to SARCO Co., Inc., is a foreign corporation, who may be served process through its Registered Agent, CT Corporation System, 645 Lakeland East Drive-Ste 101, Flowood, MS 39232.

153. The Defendant, Whittaker Clark & Daniels, Inc., is a foreign corporation who may be served with process through its President Bob Przybylowski, 1000 Coolidge Street, South Plainfield, NJ 07080.

154. The Defendant, Yarway Corp., Individually and as Successor in Interest to Yarn ell-Warring Co., is a foreign corporation who may be served with process through its CEO, Juan Gomez, 480 Norristown Road - Post Office Box 350, Bluebell, PA 19422.

155. The Defendant, Yeoman's Chicago Corporation individually and on behalf of Morris Machine Works f/k/a Morris Pumps, Inc., is a foreign corporation who may be served with process through its President, John L. Kelly, 3905 Enterprise Court, P.O. Box 960, Aurora, IL 60598-0620.

156. The Defendant, Yuba Heat Transfer Co., individually and on behalf of American District Steam Co. (ADSCO), and is a foreign corporation who may be served with process through its President, Post Office Box 3158, Tulsa, OK 74101-3158.

157. John Doe Defendants 1-100 are defendants whose identities are unknown at this time. It is believed that these other corporations and/or individuals supplied, manufactured, and or distributed asbestos containing products to the plaintiffs' work

sites and the plaintiffs were exposed to said asbestos-containing products or that these corporations and/or individuals manufactured, supplied, distributed, products which caused asbestos containing products to become airborne and the plaintiffs were exposed to said asbestos and/or these corporations and/or individuals caused asbestos to become airborne and the plaintiffs were exposed to said asbestos. When their identities are known, this complaint will be amended to properly name same.

158.   John Doe Defendants 101-200 are defendants whose identities are unknown at this time. It is believed that other organizations and associations conspired with corporations and/or individuals which supplied, manufactured, and or distributed asbestos containing products. When their identities are known, this complaint will be amended to properly name same.

159.   All of the above Defendant corporations are citizens of Mississippi or have either obtained certificates of authority to transact business in Mississippi pursuant to §79-1-211 et seq., Mississippi Code of 1972, or have transacted business in Mississippi without a certificate of authority, but within the contemplation of § 13-3-57 of said Code.

160.   All of the Plaintiffs have joined together in this action pursuant to Rule 20(a) of the Mississippi Rules of Civil Procedure in that they assert the right to relief jointly, severally or in the alternative in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences, and there are questions of law or fact common to all that will arise in this action.

161.   Venue is proper in Jones County, Mississippi, pursuant to M.C.A. §11-11-11.

## BACKGROUND

161.   During all or part of the period from 1930 through the present ("the exposure period") each of the Defendants mined, designed, evaluated, manufactured, packaged, furnished, supplied and/or sold adhesives, construction materials, insulation, fiber or other products, that each contained fibrous, incombustible, chemical-resistant, mineral substances commonly called "asbestos," or other substances such as diatomaceous earth, and/or materially assisted and/or aided others in so doing, in the construction and repair of manufacturing plants and equipment and/or participated in the disturbance of asbestos containing materials causing the asbestos to become airborne and thereby endangering the plaintiffs, and/or defendants designed, evaluated, manufactured, packaged, furnished, supplied and/or sold protective equipment which was defective and contributed to the plaintiffs' injuries. All references to "asbestos" in this Complaint shall mean and be limited to the Defendants' products described in this paragraph.

162.   During all or part of the "exposure period," the Plaintiffs worked at various work sites throughout Mississippi.

163.   When inhaled or otherwise ingested, asbestos causes irreparable and progressive lung damage that can manifest itself in lung disease, asbestosis, mesothelioma, pulmonary and bronchogenic carcinoma, and cardiac disease, among other diseases and injuries.

164.   Each of the Defendants knew or should have known through industry and medical studies, the existence of which was unknown to Plaintiffs of the health hazards to Plaintiffs inherent in the asbestos-containing products prepared, supplied, and sold for use in the States of Mississippi. Instead of warning the Plaintiffs, other intended

users, and the general public about these dangers, the Defendants ignored or actively and fraudulently concealed such information, or condoned such concealment, and commanded, directed, advised, encouraged, aided, abetted, or conspired with others or each other in so doing in order to sell asbestos and avoid litigation by those who were injured from asbestos inhalation.  Said actions or inactions constitute gross negligence and show a callous disregard for the rights and safety of the Plaintiffs and others giving rise to the imposition of punitive damages against the Defendants herein.

165.    In connection with their work during the exposure period, the Plaintiffs were exposed to and inhaled or otherwise ingested significant quantities of such asbestos, having neither knowledge nor reason to believe that asbestos was dangerous.

166.    As a direct and proximate contributing result of having inhaled, ingested or otherwise being exposed to asbestos during the exposure period, the Plaintiffs have received injuries, both physically and mentally including, without limitation, one or more of the following conditions:

a.  Asbestosis;

b.  Pulmonary or Bronchogenic Carcinoma;

c.  Mesothelioma;

d.  Impaired Pulmonary Capacity;

e.  Reduce Lung Volume;

f.  Pleural Plaques;

g.  Interstitial Lung Fibrosis;

h.  Cardiac and Circulatory Disease;

i. Increased susceptibility to one of the foregoing diseases and other illnesses;

j. Physical and mental anguish associated with one or more of the preceding conditions; and,

k. Death.

l. Plaintiffs further charge that as a direct and proximate result of having inhaled, ingested or otherwise being exposed to asbestos, they have received permanent and painful injuries. Plaintiffs would further show that they or their decedents have suffered physical and mental pain and anguish, loss of wages, loss of wage earning capacity and will continue to sustain damages of the above type in the future including, but not limited to, physical and mental pain and anguish, disability, future medical expenses and loss of the enjoyment of life.

167. Because of the latency period of the above asbestos injuries and because of the active concealment by the Defendants of the causes and effects of exposure to asbestos, the Plaintiffs have only recently discovered their injuries.

## COUNT ONE

### Strict Liability

168. Plaintiffs re-allege and incorporate the foregoing allegations of this Complaint.

169. The Defendants and/or their predecessor entities were engaged in, or materially participated in, or aided and abetted in the business of selling asbestos and materials containing asbestos, which were expected to and did reach Mississippi and equipment in and around Mississippi, as well as other work sites where plaintiffs were employed, without substantial change in the condition in which they were sold, where said products released asbestos fibers which were inhaled and ingested by the

Plaintiffs in connection with their work.

170.    The asbestos was in a defective condition unreasonably dangerous to the Plaintiffs who were the intended and foreseeable users or bystanders of the asbestos.  These defects included, without limitation, the following:

a.    Inherent and known properties common to the asbestos sold by the Defendants that created unreasonably high potential for causing respiratory diseases, cancer and other health problems to workers or members of such workers' households who would be exposed to asbestos.

b.    Lack of warnings or lack of sufficient warnings by the Defendants of the inherently dangerous properties of asbestos when used for the purpose for which it was manufactured and sold.

c.    Lack of instructions or lack of sufficient instructions by the Defendants for eliminating or minimizing the health risks inherent in the use of asbestos.

d.    Lack of reasonable inspections by the Defendants of their asbestos products to ensure that such asbestos products contained sufficient warnings of the dangerous properties of asbestos.

e.    Lack of reasonable inspections by the Defendants of their asbestos products to ensure that such asbestos products contained sufficient instructions for eliminating or minimizing the health risks inherent in the use of asbestos.

f.    Lack of tests or lack of sufficient tests by the Defendants to determine the harmful effects of asbestos on intended users and bystanders.

g.    Defective designs by the Defendants calling for the inclusion of asbestos in products that did not require asbestos, and where alternate, equally suitable substances were available.

h.    Lack of warnings or lack of sufficient warnings by the Defendants upon their discovering the full extent of the dangers presented by asbestos-containing materials and products.

171.    Each of the Defendants knew or should have known that the Plaintiffs would be exposed to their asbestos products without inspection of the medical literature by the Plaintiffs on the adverse health effects of asbestos.  By marketing the asbestos-

containing products without warning of the dangerous characteristics of the products, the Defendants represented to the Plaintiffs and the public, who justifiably relied thereon, that asbestos was not dangerous.

172.  The defective conditions of the Defendants' asbestos products proximately caused or contributed to the Plaintiffs' injuries and damages as described in this Complaint.

173.  Defendants' actions were performed intentionally or with disregard for the health and safety of Plaintiffs.

174.  WHEREFORE, the Plaintiffs demand both compensatory and punitive damages against the Defendants in an amount to be determined by a jury at trial.

## COUNT TWO

### Negligence

175.  Plaintiffs re-allege and incorporate the foregoing allegations of this Complaint.

176.  Each of the Defendants had, but breached, a duty to the Plaintiffs to exercise the highest standard of care in designing, testing, manufacturing, marketing, and selling asbestos which is an extraordinarily and inherently dangerous substance. The breached duties included, without limitation, the duty:

   a.  To select the types of asbestos or alternate materials that would reduce or eliminate health hazards to those who would work with, and in the vicinity of asbestos.

   b.  To warn adequately of the extraordinary health hazards known by the Defendants to be associated with asbestos use.

   c.  To instruct adequately in methods of using asbestos that would reduce the danger of inhalation or ingestion of asbestos dust.

   d.  To test adequately the asbestos products to determine the dangers concomitant with their use.

e.   To remove the asbestos products from the stream of commerce upon discovering their dangerous properties.

f.   To inspect the asbestos products for adequate warnings and instructions.

177.   As a direct and proximate result of the Defendants' aforesaid breaches of their duties to the Plaintiffs or Plaintiffs' decedents have sustained the injuries and damages described herein.

178.   In breaching or materially assisting others in breaching their duties to the Plaintiffs or Plaintiffs' decedents, as described above, the Defendants acted intentionally, with gross negligence, recklessly, maliciously and wantonly in that the Defendants and each of them knew or should have known through data available exclusively to them that asbestos was inherently and extraordinarily dangerous if used in the manner intended and foreseen by the Defendants, and that each of their aforesaid breaches of duty would result in the injuries suffered by Plaintiffs.

179.   WHEREFORE, the Plaintiffs demand judgment against the Defendants in an amount to be determined by a jury at trial.

## COUNT THREE

### Fraudulent Concealment/Misrepresentation/

### Alteration of Medical Studies/Conspiracy

180.   Plaintiffs re-allege and incorporate the foregoing allegations of this Complaint.

181.   The Defendants, individually and as agents of one another and as co-conspirators, aided, abetted, encouraged, counseled, assisted, agreed and conspired among themselves and with other asbestos manufacturers and distributors to injure Plaintiffs.

182.   Defendants named herein knew the others' conduct constituted a breach of duty and

gave substantial assistance or encouragement to the others to conduct itself likewise in the following fashion:

1.     Metropolitan Life Insurance Company ("Met Life") required a tangible *quid pro quo* from MaGill University in the 1920s in exchange for their providing funding for a study of asbestos disease in Canadian miners. The study revealed asbestos miners suffered from asbestosis. The study was never published and agents of Met Life materially misrepresented in the published literature this known fact.

2.     In 1932, Met Life, through its agents, Dr. Anthony Lanza, Dr. Fellos, and others, assisted the Johns-Manville corporation with medical examinations of over 1,000 employees of Johns-Manville's factory in Manville, New Jersey. The report of his study shows that a large percentage of the employees suffered from asbestosis including employees not directly involved in the manufacturing process. This 1932 medical survey was not published in the medical literature and, therefore, was unavailable to scientist studying the issue of the asbestos disease. Further collaboration between the conspiring asbestos producers and Met Life officials continued this trend of intentional cover-up.

3.     Beginning in approximately 1934, Johns-Manville Corporation, through its agents, Vandiver Brown and attorney, J. C. Hobart, and conspirator, Raybestos-Manhattan, through its agents, Sumner Simpson and J. Rohrback, suggested to Dr. Lanza, Associate Medical Director of Met Life (insurers of Manville, Raybestos, and others) that Dr. Lanza publish a study on asbestosis in which Dr. Lanza would affirmatively misrepresent a material fact about asbestos exposure, i.e., the seriousness of the disease process, asbestosis. This was accomplished through intentional deletion of Dr. Lanza' description of asbestosis as "fatal" and through other selective editing at the behest of the asbestos industry that affirmatively misrepresented asbestos as a disease process less serious than it actually is and was then known to be. As a result, Dr. Lanza's study was published in the medical literature in this misleading fashion in 1935. The Defendants were motivated, in part, to effectuate this fraudulent misrepresentation and fraudulent nondisclosure by the desire to influence proposed legislation to regulate asbestos exposure and to provide a defense in lawsuits involving Manville, Raybestos, and others, as well as Met Life, the insurer.

4.     In 1936, conspirators, American Brake Block Corporation, Asbestos Manufacturing Company, Gate Corporation, Johns-Manville Corporation, Keasby & Mattison Company (then an alter-ego to conspirator Turner & Newall), Raybestos-Manhattan, Russell Manufacturing (whose liabilities have been assumed by H. K. Porter Company), Union Asbestos and Rubber

Company, and United States Gypsum Company, entered into an agreement with the Saranac Laboratories. Under this agreement, these companies acquired the power to decide what information Saranac Laboratories could publish about asbestos disease and control in what form such publications were to occur. This agreement gave these conspirators power to affirmatively misrepresent the results of the work at Saranac and also gave these conspirators power to suppress material facts included in any study. On numerous occasions thereafter, the conspirators exercised their power to prevent Saranac scientist from disclosing material scientific data resulting in numerous misstatements of fact being made at scientific meetings.

5.     On November 11, 1948, representatives of the following conspirators met at the headquarters of Johns-Manville Corporation: American Brake Block Division of American Brake and Shoe Foundry, Gate Corporation, Keasby & Mattison Company (then an alter-ego to conspirator Turner & Newall), Raybestos-Manhattan, Inc., Thermoid Company (whose assets and liabilities were later purchased by H. K. Porter Company), Union Asbestos and Rubber Company, and U. S. Gypsum Company. U. S. Gypsum did not send a representative to the meeting, but instead authorized Vandiver Brown of Johns-Manville to represent its interest at the meeting and to take action on its behalf.

6.     At this November 11, 1948, meeting, these Defendants and their representatives decided to exert their influence to materially alter and misrepresent material facts about the substance of research started by Dr. Leroy Gardner at the Saranac Laboratories beginning in 1936. Dr. Gardner's research involved the carcinogenicity of asbestos in mice and also included an evaluation of the health effects of asbestos on humans with a critical review of the then-existing standards of dust exposure for asbestos and asbestos-containing products.

7.     At this meeting, the Defendants intentionally and affirmatively determined that Dr. Gardner's work should be edited to specifically delete material facts about the cancer-causing propensity of asbestos and the health effects of asbestos on humans and the critique of the dust standards and then published it in the medical literature as edited by Dr. Arthur Vorwald. The acts of these Defendants were carried out by co-conspirator Defendant Met Life's agent, Dr. Lanza. These Defendants thereby fraudulently misrepresented the risks of asbestos exposure to the public, in general, and the class of persons exposed to asbestos, including Plaintiffs.

8.     As a direct result of influence exerted by the above-described conspirators, Dr. Vorwald published Dr. Gardner's edited work in January, 1951, in the *Archives of Industrial Hygiene and Occupational Medicine* (Vol. 3, No. 1), a journal of the American Medical Association. The published version stressed

those portions of Gardner's work that the conspirators wished stressed, but omitted references to cancer, to human asbestosis, and to the inadequacy of the then-established threshold limit values (TLVs). Furthermore, that article made a false claim that the published report was the "complete survey" of Dr. Gardner's work. The Defendants thereby fraudulently, affirmatively, and deliberately disseminated this misleading Dr. Vorwald publication to university libraries, government officials, medical doctors, agencies, the public, and others.

9.  Such action constituted a material affirmative misrepresentation of the total context of material facts involved in Dr. Gardner's work and resulted in creating an appearance that inhalation of asbestos was less of a health problem than Dr. Gardner's unedited work indicated.

10.  The following conspirators and others were members of the trade association known as Quebec Asbestos Mining Association (Q.A.M.A.): Johns-Manville Corporation, Carey-Canada (individually and as successor to Quebec Asbestos Corporation), the Celotex Corporation (successor to Quebec Asbestos Corporation), National Gypsum Company (n/k/a Asbestos Claims Management Corporation), and Turner & Newall (individually and successor to Bell Asbestos). The members of Q.A.M.A. participated in the above-described misrepresentation of the work of Dr. Gardner published by Dr. Vorwald in the AMA Archives 'of Industrial Health in 1951. Evidence of the Q.A.M.A.'s involvement in this misrepresentation arises from co-conspirator Johns-Manville's membership in the Q.A.M.A., as well as correspondence from co-conspirators indicating close monitoring of the editing process by Q.A.M.A.'s representative, Ivan Sabourin, acting on behalf of all Q.A.M.A.'s members.

11.  Defendants who were members of Q.A.M.A. began on or about 1950 to formulate a plan to influence public opinion about the relationship between asbestos and cancer by influencing the medical literature on this subject and then touting and disseminating this literature to the public and to organizations and legislative bodies responsible for regulatory controls of asbestos with the specific intent of misrepresenting the existing scientific information and suppressing contrary scientific data in their possession and control.

12.  This plan of misrepresentation and influence over the medical literature began on or about 1950 when the Q.A.M.A. members selected Saranac Laboratories to do an evaluation of whether cancer was related to asbestos. After a preliminary report authored by Dr. Vorwald in 1952 indicated that a cancer/asbestos relationship might exist in experimental animals, the Q.A.M.A. members refused to further fund the study and it was terminated and never publicly discussed.

13. As a result of the termination of this study, these Defendants Fraudulently withheld information from the public and affirmatively misrepresented to the public and responsible legislative and regulatory bodies that asbestos did not cause cancer, including affirmative misrepresentations by conspirators' agents Kenneth W. Smith, M.D., Paul Cartier, M.D., Arthur J. Vorwald, M.D., Anthony J. Lanza, M.D., Vandiver Brown, and Ivan Sabourin, said misrepresentations being direct to, *inter alia,* U.S. Government officials, Canadian government officials. U.S. National Cancer Institute, other medical organizations, and the general public, including Plaintiffs.

14. Subsequently, the Q.A.M.A. Defendant conspirators contracted with the Industrial Hygiene Foundation (I.H.F.) And Dr. Daniel Braun to further study the relationship between asbestos exposure, asbestosis and lung cancer. In 1957, Dr. Braun and Truan reported to the Q.A.M.A. asbestosis did increase a worker's chances of incurring lung cancer.

15. The Q.A.M.A. Defendants thereafter caused in 1958 a publication of the work by Braun and Truan in which the findings regarding increased incidence of cancer in persons asbestosis was edited out by agents of the Q.A.M.A. The published version of this study contained a conclusion that asbestos exposure did not increase the incidence of lung cancer, a conclusion known by the Defendant conspirators to be patently false.

16. By falsifying and causing publication of studies concluding that asbestos exposure did not cause lung cancer and simultaneously omitting a document finding that asbestosis did increase the risk of lung cancer, the Q.A.M.A. Defendants affirmatively misrepresented to the public and concealed from the public the extent of risks associated with inhalation of asbestos fibers.

17. In approximately 1958, the Q.A.M.A. Defendants publicized the edited works of Dr. Braun and Truan at a symposium in an effort to fraudulently misrepresent to the public and persons exposed to asbestos that the inhalation of asbestos dust would not cause cancer.

18. The fraudulent misrepresentations beginning in 1946, as elaborated above and continuing with the publication of the 1958 Braun/Truan study, influenced the standards set for TLVs and inhibited the lowering of the threshold limit value due to the cancer risk associated with asbestos inhalation.

19. In 1967, the Q.A.M.A. Defendants determined at their trade association meeting that they would intentionally mislead consumers about the extent of risks involved in inhalation of asbestos products.

20.   In 1952, a symposium regarding the health effects of asbestos was held at the Saranac Laboratories. The following conspirators ere in attendance: Johns-Manville, Turner & Newall, Raybestos-Manhattan, and Q.A.M.A. members by way of theirs agents, Cartier, Sabourin, and Lechance.

21.   At this meeting, the occurrence of lung cancer and asbestosis in product users was discussed and the carcinogenic properties of all fiber types of asbestos was also discussed. In an affirmative attempt to mislead the public about the extent of health risks associated with asbestos, and in an effort to fraudulently conceal those risks from the public, these Defendants conspired to prevent publication of the record in this 1952 Saranac Symposium and it was not published. In addition, the conspirators induced Dr. Vorwald not to announce the results of his and Dr. Gardner's animal studies showing excess tumors in animals , thereby fraudulently misrepresenting existing data, albeit secret, that should not be publicized because of the secrecy provisions contained in the 1936 Saranac Agreement required by the asbestos industry members.

22.   The following conspirators were members of the Magnesia Insulation Manufacturers Association (MIMA): Philip-Carey Corporation (predecessor to Celotex), Johns-Manville and others.

23.   In 1955, these conspirators caused to be published the MIMA 85% Magnesia Insulation Manual. This manual falsely and fraudulently misrepresented that asbestos containing products offered no hazard to workers who used these products.

24.   The following conspirators were members of the trade organizations known as the Asbestos Textile Institute (ATI): Raybestos-Manhattan, Johns-Manville, H. K. Porter, Keasby & Mattison (individually and through its alter-ego Turner & Newall), National Gypsum (n/k/a Asbestos Claims Management Corporation), and others.

25.   In 1947, the members of the ATI received a report from W.C. L. Hemeon regarding asbestosis that suggested re-evaluation of the then-existing TLVs for asbestos exposure. These Defendants caused this report not to be published and thereby fraudulently concealed material facts about asbestos exposure from the public and affirmatively misrepresented to the public and class of persons exposed to asbestos that the then-existing TLV was acceptable. Thereafter, these Defendant conspirators withheld additional material information on the dust standards from the American Conference of Governmental Industrial Hygienist (ACGIH), thereby further influencing evaluations for asbestos exposure.

26.   In 1953, conspirator National Gypsum (n/k/a Asbestos Claims Management Corporation), through its agents, in response to an injury from the Indiana

Division of Industrial Hygiene regarding health hazards of asbestos spray products, refused to mail a proposed response to that division indicating that respirators should be worn by applicators of the products. National Gypsum's response distorted and fraudulently misrepresented the need for applicators of asbestos spray products to wear respirators and fraudulently concealed from such applicators the need for respirators.

27.    In 1955, Johns-Manville, through its agent, Kenneth W. Smith, M.D., caused to be published in the AMA *Archives of Industrial Health*, an article entitled "Pulmonary Disability in Asbestos Workers". This published study materially altered the results of an earlier study in 1949 concerning the same set of workers. This alteration of Dr. Smith's study constituted a fraudulent and material misrepresentation about the extent of the risk associated with asbestos inhalation.

   a.    In 1955, the National Cancer Institute held a meeting at which conspirators Johns-Manville (individually and as agent for other alleged co-conspirators) and Dr. Vorwald (as agent of co-conspirators) affirmatively misrepresented that there were no existing animal studies concerning the relationship between asbestos exposure and cancer when, in fact, the conspirators were in secret possession of several studies that demonstrated that positive evidence did exist.

   b.    In 1957, the members of the ATI jointly rejected a proposed research study on cancer and asbestos, and this resulted in fraudulent concealment from the public of material facts regarding asbestos exposure and also constituted an affirmative misrepresentation of the then-existing knowledge about asbestos exposure and lung cancer.

   c.    In 1964, the members of the ATI met to formulate a plan for rebutting the association between lung cancer and asbestos exposure that had been recently discussed by Dr. Irving J. Selikoff. Thereafter, these members of the ATI embarked upon a campaign to further misrepresent the association between asbestos exposure and lung cancer.

   d.    In 1970, through their agents, Defendants, the Celotex Corporation and Carey-Canada, affirmatively misrepresented that it had been in the asbestos business since 1918 and found no reported conditions of asbestosis or lung disease. This constituted a fraudulent misrepresentation about the material facts known to these Defendants.

   e.    All conspirators approved and ratified and furthered the previous conspiratorial acts of conspirators Johns-Manville, Raybestos Manhattan, and Anthony J. Lanza, M.D., acting on behalf of Met

Life, and all alleged co-conspirators during the relevant time period and circumstances alleged above, acted as agents and co-conspirators for the other conspirators.

183.   As a direct and proximate result of Metropolitan Life's intentional publication of deceptive and misleading medical data and information, as described in the preceding paragraphs, and upon which data the Plaintiffs and/or those charged with warning them reasonably relied, the Plaintiffs inhaled or otherwise were exposed and ingested hazardous asbestos dust, resulting in the injuries described above.

184.   Additionally, and alternatively, as a direct and proximate result of Metropolitan Life's actions and omissions as described above, the Plaintiffs were caused to remain ignorant concerning the danger of human exposure to asbestos, resulting in damage to the Plaintiffs by depriving the Plaintiffs, their employers, and the general public of opportunities to be aware of the hazards of asbestos exposure, and thus the opportunity to take proper safety precautions and/or avoid this exposure. Because of this ignorance and intentional failure to warn, the Plaintiffs inhaled, were exposed to or otherwise ingested hazardous asbestos dusts, resulting in the injuries described above.

185.   Metropolitan Life fraudulently concealed from the Plaintiffs the alteration of its published test results, the actions and omissions and concerted design and conspiracy, all as described in the paragraphs above, until the Plaintiffs discovered said conduct following these diagnoses of asbestos related injuries.

186.   WHEREFORE, the Plaintiffs demand both compensatory and punitive damages from Defendants in sums to be determined at trial.

## COUNT FOUR

### Damages

187.   As a direct and proximate result of Defendants' breach of its duties to the Plaintiffs as delineated in all counts above, the Plaintiffs have sustained the asbestos related injuries, diseases, illnesses and/or conditions set forth above along with pain and suffering, the undergoing and continuing undergoing of medical treatment, medical expenses, along with past, present and future disability, impairment of wage earning capacity, lost wages, and a diminution in quality and enjoyment of life, which includes mental anguish, fear, and severe emotional distress associated with knowing that there is no cure for these diseases and illnesses.

188.   In breaching their duties to the Plaintiffs as described above, the Defendants have acted intentionally, with gross negligence, recklessly, maliciously or wantonly in that the Defendants knew or should have known through data available to them that asbestos was inherently and extraordinarily dangerous if used in the manner intended or foreseen by the Defendants, and that their aforesaid breaches of duty would result in the complained of injuries and damages to the Plaintiffs, thus entitling the Plaintiffs to recover punitive or exemplary damages for the Defendant outrageous conduct as set forth herein.

189.   Plaintiffs in this action do not assert any claims for, do not seek damages for, and disclaim recovery for any injuries, if any arising out of exposure to asbestos containing products designed, manufactured, distributed, sold, or marketed by or any actions or inactions of Asbestos Corp. Ltd., Atlas Turner, Inc., Lac D'Aminate du Quebec, Les Mines D'Amiante Bell, Ltd., and/or Societe Miniere Mazarin, Inc. To

the extent plaintiffs have been exposed to such asbestos containing products, if at all, plaintiffs hereby waive their right to recover damages for such injuries.

190.   Should any verdict in this case assign responsibility in whole or in part for any or all plaintiffs' injuries to damages to the entities Asbestos Corp. Ltd, Atlas Turner, Inc., Lac D'Amiante du Quebec, Les Mines D'Amiante Bell, Ltd., and/or Societe Miniere Mazarin, Inc., and if such verdict should be upheld upon proper post judgment motion, plaintiffs hereby waive, and will remit and release, that portion of their damages.  Plaintiffs seek and will seek the entry of a final judgment in this action against defendants that awards them only that portion of their damages assigned by the jury and court to the named defendants.

191.   Due to the passage of time since the Plaintiffs were exposed to asbestos, the Plaintiffs have been unable to ascertain the identities of all manufacturers, suppliers, distributors, and installers of asbestos-containing products to which they were exposed and hereby re-assert each of the foregoing allegations against John Doe Defendants #1-100.

192.   Due to the passage of time since the Plaintiffs were exposed to asbestos, the Plaintiffs have been unable to ascertain the identities of all associations and organizations which conspired with the manufacturers, suppliers, distributors, and installers of asbestos-containing products to which Plaintiffs were exposed and reassert each of the following allegations against John Doe #101-200.

193.   WHEREFORE, the Plaintiffs demand judgment against all Defendants, jointly, severally, and collectively for compensatory and punitive damages in an amount to be determined by a jury, for prejudgment interest from the date of the filing of this

Complaint, costs and such other and further relief as may be deemed appropriate.

RESPECTFULLY SUBMITTED

ROY BARRY, ET AL, PLAINTIFFS


STACEY LEA SIMS, MS BAR NO. 10544
ATTORNEY FOR PLAINTIFFS


ANTHONY SAKALARIOS, MS BAR NO. 6415
F. MARVIN MORRIS, III, MS BAR NO. 3482
CHARLES G. BLACKWELL, MS BAR NO. 3357
SARA M. FARRIS, MS BAR NO. 10560
STACEY LEA SIMS, MS BAR NO. 10544
Morris, Sakalarios, & Blackwell, PLLC
1817 Hardy Street
Hattiesburg, MS 39401
Telephone: (601) 544-3343
Telefax: (601) 544-3343

## EXHIBIT "A" TO ROY BARRY COMPLAINT

1. Roy Barry
   35 Pine Hills Drive
   Ovett, MS 39464
   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

2. Maston O. Bishop
   89 Sudie Road
   Moselle, MS 39459
   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

3. Mary S. Haigler
   291 Lower Myrick Road
   Laurel, MS 39440
   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

4. Robert L. Hathorn
   Post Office Box 193
   Georgetown, MS 39078
   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

5. Clyde S. Milam
   Post Office Box 675
   Sandersville, MS 39477
   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

6. George L. Taylor
   132 Austin Circle
   Crystal springs, MS 39069
   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

7. Emile E. Theriot
   176 Tiger Creek Road
   Richton, MS 39476
   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

8. Jessie J. Walters
   122 Stephens Road
   Petal, MS 39440
   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

9. Joe Willis
   559 CR 296
   Pachuta, MS 39347

Serial: 116304

**IN THE SUPREME COURT OF MISSISSIPPI**

No. 2004-IA-01308-SCT

**FILED**

AUG 2 6 2004

OFFICE OF THE CLERK
SUPREME COURT
COURT OF APPEALS

*HAROLD'S AUTO PARTS, INC., ET AL.*                    *Petitioners*

*v.*

*FLOWER MANGIALARDI, ET AL.*                    *Respondents*

## ORDER

This matter is before the Court, en banc, on the Petition for Permission to Appeal From an Interlocutory Order and Motion for Stay filed by counsel for Petitioners. Also before the Court is the response and supplemental response filed by counsel for Respondents. Petitioners seek to appeal an interlocutory order of the Circuit Court of Bolivar County, Mississippi, which denied petitioners' motion to sever filed therein.

After due consideration, the Court finds that the petition for interlocutory appeal is well taken and should be granted. The Court further finds that no further briefing is needed, and we shall proceed to a consideration of the merits.

This interlocutory appeal concerns joinder of multiple plaintiffs in an asbestos, mass tort litigation case. This matter is controlled by *Jansen Pharmaceutica, Inc. v. Armond*, 866 So. 2d 1092 (Miss. 2004). Even though asbestos litigation is, indeed, a "mature tort," as discussed in dicta in *Armond*, this Court did not intend in that case, and we shall not proceed

EXHIBIT

B

here, to exempt asbestos cases from the requirements of Rule 20, of the Mississippi Rules of Civil Procedure.

The case before us has endured seven amended complaints, and now involves the claims of 264 plaintiffs against 137 named defendants who have identified approximately 600 different employers where asbestos exposure might have taken place.  Approximately 220 of the plaintiffs are unable to identify any employment within the state of Mississippi. The complaint provides virtually no helpful information with respect to the claims asserted by the individual plaintiffs.  We are provided the following allegations and information regarding the plaintiffs:

1.  names and social security numbers;

2.  they are "resident citizens of the State of Mississippi, or other states of the United States, or are personal representatives or wrongful death beneficiaries of deceased plaintiffs (we are not told which plaintiffs are citizens and which are representatives or beneficiaries);

3.  they were exposed to asbestos products which were "mined, designed, specified, evaluated, manufactured, packaged, furnished, supplied and/or sold" by defendants during "all or part of the period 1930 through the present" (we are not told which plaintiffs were exposed to which products manufactured by which defendants; nor are we told when any particular plaintiff was exposed during the seventy-five year period);

In essence, we are told that 264 plaintiffs were exposed over a 75-year period of time to asbestos products associated with 137 manufacturers in approximately 600 workplaces. We are not told which plaintiff was exposed to which product manufactured by which defendant in which workplace at any particular time.  We do not suggest that this lack of

2

basic information is the result of recalcitrance on the part of plaintiffs' counsel; perhaps plaintiffs' counsel has not furnished the information.

Defendants have strenuously objected to the failure and/or refusal of plaintiffs' to provide the information. They point out that it is impossible to argue to the trial court that joinder was improper, because they aren't provided basic information about each of the plaintiffs. Curiously, rather than filing a motion for more definite statement, or to dismiss, defendants' simply seek the information "as soon as practicable." The defendant's further argue that Rule 20 requires the disclosure to be made.

The position stated by plaintiffs is that defendant's do not need the information right now, since there apparently is a plan to try the cases, one at a time.

We find that all have missed the mark. This matter should not be before us because of a failure to comply with Rule 20, but rather because of an abuse of, and failure to comply with, Rules 8, 9, 10 and 11. What is referred to as "core information" and "disclosure" is basic information which should be known to plaintiffs' counsel *prior* to filing the complaint, not information to be developed in discovery or disclosure. The information should have been included in the complaint.

Complaints should not be filed in matters where plaintiffs intend to find out in discovery whether or not, and against whom, they have a cause of action. Absent exigent circumstances, plaintiffs' counsel should not file a complaint until sufficient information is obtained, and plaintiffs' counsel believes in good faith that *each plaintiff* has an appropriate cause of action to assert against a defendant in the jurisdiction where the complaint is to be

3

filed.  To do otherwise is an abuse of the system, and is sanctionable.  *See* Miss. R. Civ. P., Rule 11.

Rule 20 allows joinder only where the plaintiffs make certain assertions which demonstrate the matters set out in the rule.  In this regard, plaintiffs have wholly failed. Indeed, plaintiffs have not even attempted to provide the information.  They presume that they are entitled to proceed with their suit, as filed, and they will demonstrate later that joinder is proper.  We can only presume from the record before us that plaintiff take this course because they don't know whether or not joinder is appropriate.  This is so, apparently, because they don't know the claims of each plaintiff.  They don't appear to know when they were exposed, where they were exposed, by whom they were exposed, or even if they were exposed.  Presumably, when they learn this information, plaintiffs' counsel intends to dismiss those who should not have been joined.  This is a perversion of the judicial system unknown prior to the filing of mass-tort cases.

We must point out that not all cases involving multiple plaintiffs and/or defendants which have come before this Court appear to have been filed in this manner.  We note cases where counsel for the plaintiffs appear to have interviewed each plaintiff, investigated their claims, and developed information necessary to file a complaint on their behalf.

But here, not only have plaintiffs failed to furnish their counsel the necessary information to file the complaint, but plaintiff's counsel continues to resist furnishing to defendants and the court.

4

Incredibly, plaintiffs asked the trial court to set aside its order of certification for interlocutory appeal, claiming they got no notice of the motion, and that "[p]laintiffs were never afforded any of their constitutional rights of due process to contest such a motion." This complaint comes to us from plaintiffs who, more than three years ago, filed suit against 137 defendants; who have amended their complaint six times; and who are apparently unable to explain to the trial court, this Court, or to the defendants, exactly who each plaintiff has sued, and why.

We hereby reverse the trial court's June 23, 2004, Order, insofar at it denies the plaintiffs' motion to sever, and we order severance as to each plaintiff. We hold that plaintiffs have wholly failed in their obligation to assert sufficient information to justify joinder and, accordingly, this matter is remanded to the trial court for a transfer of each plaintiff to an appropriate court of venue and jurisdiction, where known. The trial court is hereby directed to dismiss, without prejudice, the complaint of each plaintiff who fails, within forty-five days of the date of this Order, to provide the defendants and trial court with sufficient information for such determination, and transfer if warranted. Such information must include, at a minimum, the name of the defendant or defendants against whom each plaintiff makes a claim, and the time period and location of exposure.

IT IS THEREFORE ORDERED that the Petition for Interlocutory Appeal by Permission filed by counsel for petitioners is hereby granted.

5

IT IS FURTHER ORDERED that this matter is hereby remanded to the Circuit Court of Bolivar County, Mississippi, for entry of an order granting the petitioners' motion to sever in accordance with the provisions of this Order.

IT IS FURTHER ORDERED that the Circuit Court of Bolivar County shall dismiss, without prejudice, each plaintiff who fails to provide the defendants and the court, within forty-five days of the date of this Order, with sufficient information as specified herein which allows the trial court to determine the appropriate court for transfer.

IT IS FURTHER ORDERED that Respondents are taxed with all costs of this appeal.

SO ORDERED, this the 23ᵈ day of August, 2004.

JAMES W. SMITH, JR., CHIEF JUSTICE
FOR THE COURT

TO GRANT: SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON, GRAVES AND
        DICKINSON, JJ.

TO DENY:  EASLEY. J.

NOT PARTICIPATING:  DIAZ AND RANDOLPH, JJ.

6

**B**

Westlaw.

326 F.3d 644                                                    Page 1
326 F.3d 644
**(Cite as: 326 F.3d 644)**

**H**
Briefs and Other Related Documents

United States Court of Appeals,
Fifth Circuit.

Mary TRAVIS, Individually, as Administratrix of the
Estate of Michael Travis,
Deceased, Plaintiff-Appellant,
v.
Arthur IRBY, Illinois Central Railroad Company, and
John Does, 1-10,
Defendants-Appellees.

**No. 02-60005.**

March 28, 2003.

Mother of driver who was killed when his car was
struck by a train at a railroad crossing brought
wrongful death suit in state court against railroad and
engineer who was operating the train. After removal,
the United States District Court for the Southern
District of Mississippi, William Henry Barbour, Jr., J.,
dismissed engineer and granted railroad's motion for
summary judgment. Plaintiff appealed. The Court of
Appeals, W. Eugene Davis, Circuit Judge, held that
railroad failed to establish that engineer was
fraudulently joined for the purpose of defeating
diversity jurisdiction.

Vacated and remanded.

West Headnotes

**[1] Removal of Cases** ☞36
334k36 Most Cited Cases

**[1] Removal of Cases** ☞107(7)

334k107(7) Most Cited Cases

That non-diverse defendant was fraudulently joined for
purpose of defeating diversity jurisdiction may be
established, for removal purposes, in one of two ways:
(1) by showing that there has been actual fraud in the
pleading of jurisdictional facts; or (2) by
demonstrating plaintiff's inability to establish cause of
action against nondiverse party in state court.

**[2] Federal Courts** ☞303
170Bk303 Most Cited Cases

Railroad sued for negligence in connection with
train-car collision at crossing which resulted in death
of motorist failed to establish that engineer who was
operating train at time of collision was fraudulently
joined by motorist's mother for purpose of defeating
diversity jurisdiction, where there was no actual fraud
in pleading, as engineer was actually a resident of same
state as motorist's mother, and where railroad did not
show that engineer could not be found liable under
Mississippi law based upon mother's allegations of
failure to keep proper lookout, failure to take proper
precautions, and failure to timely brake; mere fact that
mother, in her responses to railroad's interrogatories,
admitted that she did not yet have any facts supporting
her allegations against engineer was insufficient, while
discovery was still ongoing, to show that there was no
possibility for mother to establish engineer's liability
at trial.

**[3] Federal Civil Procedure** ☞1832
170Ak1832 Most Cited Cases

On motion to dismiss for failure to state claim, district
court may consider only allegations in complaint and
any attachments thereto. Fed.Rules Civ.Proc.Rule
12(b)(6), 28 U.S.C.A.

**[4] Federal Courts** ☞303
170Bk303 Most Cited Cases

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



EXHIBIT

B

**[4] Federal Courts ☞317**
170Bk317 Most Cited Cases

Upon assertion by removing defendant that nondiverse defendant was fraudulently joined for purpose of defeating diversity jurisdiction, district court may pierce the pleadings and consider summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in complaint, in the light most favorable to plaintiff, and must also resolve any contested issues of fact and any ambiguities of state law in plaintiff's favor.

**[5] Federal Courts ☞317**
170Bk317 Most Cited Cases

Burden of persuasion on those who claim that nondiverse defendant was fraudulently joined for purpose of defeating diversity jurisdiction is heavy one.
*645 Anita K. Modak-Truran (argued), John C. Henegan, Sr., Fred Exzell Bourn, III, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for Plaintiff-Appellant.

Glenn Firld Beckham (argued), Upshaw, Williams, Biggers, Beckham & Riddick, Greenwood, MS, for Defendants-Appellees.

Appeal from the United States District Court for the Southern District of Mississippi.

*ON PETITION FOR REHEARING*

(Opinion 2003 WL 23102 (Jan. 17, 2003, 5th Cir.2003))

Before DAVIS and BARKSDALE, Circuit Judges, and AFRICK, [FN1] District Judge.

> FN1. District Judge of the Eastern District of Louisiana, sitting by designation.

W. EUGENE DAVIS, Circuit Judge:

We deny the Defendants' motion for rehearing.

*646 In response to their petition for panel rehearing, we substitute the following opinion in place of the opinion as originally issued:

Plaintiff Mary Travis appeals the district court's denial of her Motion to Remand after the defendants removed this case from the Circuit Court of Holmes County, Mississippi, and the district court's dismissal of her claims on summary judgment. Based on our finding that the non-diverse defendant, Arthur Irby, was not fraudulently joined, we vacate and remand.

I.

Michael Travis was killed on May 16, 1997, when his car was struck by a train at the Mileston railroad crossing on Epps Road in Holmes County, Mississippi. Illinois Central Railroad Company ("Illinois Central") owned the train and engineer Arthur Irby operated the train at the time of the fatal accident.

Plaintiff originally filed this action in the Circuit Court of Holmes County against Illinois Central, Irby and John Does 1 through 10, identified only as agents, servants, employees or representatives of Illinois Central. Plaintiff Mary Travis is an adult resident of Madison County, Mississippi, and is the natural mother of Michael Travis, deceased. Defendant Illinois Central is an Illinois corporation registered to do business in the State of Mississippi. Defendant Irby is an adult resident of Leake County, Mississippi.

In her First Amended Complaint filed on December 9, 1997, plaintiff alleged that the defendants, collectively, were negligent for
> failing to make a proper and timely application of the brakes of the train, failing to keep a proper and reasonable lookout, failing to properly train the crew of the train, failing to adopt and enforce adequate policies and procedures relating to train operating under similar circumstances, failing to

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

take proper precautions under the circumstances existing, failing to properly mark, warn of, and restrict access to its crossing under dangerous circumstances, and under circumstances where Defendants knew or should have known that such crossing was unreasonably dangerous, and any such other acts or omissions of negligence which will be shown at a trial of this matter.

Discovery did not proceed smoothly in state court. After considerable procedural wrangling and a Motion to Compel, on September 25, 1998, the plaintiff supplemented answers to certain interrogatories. The defendants, contending that those responses established that Defendant Irby was fraudulently joined, removed the action to federal court on October 2, 1998. The district court agreed, dismissed Defendant Irby and the John Doe defendants, and denied a Motion to Remand.

After additional discovery, the defendants filed a Motion for Summary Judgment seeking dismissal of plaintiff's remaining claims against Illinois Central. The district court granted this motion on March 16, 2001, dismissing the case. Plaintiff timely appealed.

## II.

[1][2] The decisive issue in this case is whether the district court erred in denying plaintiff's Motion to Remand based on fraudulent joinder of Defendant Irby. [FN2] *647 Fraudulent joinder can be established in two ways: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. *Griggs v. State Farm Lloyds,* 181 F.3d 694, 698 (5th Cir.1999). The defendants do not dispute that Irby is a Mississippi resident. Accordingly, we focus on the second test.

> FN2. Plaintiffs also allege that the Notice of Removal was not timely based on both the one-year time limit and the 30-day time limit in 28 U.S.C. § 1446. Because we find that the Defendants were not entitled to removal on a theory of fraudulent joinder, we need not

decide whether their Notice of Removal was timely under either schedule. Given this conclusion, we also need not address whether the district court properly disregarded the citizenship of unnamed wrongful death beneficiaries in its jurisdictional analysis.

Neither our circuit nor other circuits have been clear in describing the fraudulent joinder standard. The test has been stated by this court in various terms, even within the same opinion. For example, the *Griggs* opinion states,

> To establish that a non-diverse defendant has been fraudulently joined to defeat diversity, the removing party must prove ... that there is *absolutely no possibility* that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court.

181 F.3d at 699 (emphasis added; citing *Burden v. General Dynamics Corp.,* 60 F.3d 213, 217 (5th Cir.1995) and *Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 259 (5th Cir.1995)). The *Griggs* opinion later restates that test as follows--

> Stated differently, we must determine whether there is *any reasonable basis* for predicting that [the plaintiff] might be able to establish [the non-diverse defendant's] liability on the pleaded claims in state court.

181 F.3d at 699 (emphasis added; again citing *Burden,* and *Cavallini.*) Similarly, in summing up federal law, *Moore's Federal Practice* states at one point: "To establish fraudulent joinder, a party must demonstrate ... the *absence of any possibility* that the opposing party has stated a claim under state law". 16 *Moore's Federal Practice* § 107.14[2][c] [iv][A] (emphasis added). It then comments: "[T]he ultimate question is whether there is arguably a *reasonable basis* for predicting that state law might impose liability on the facts involved." *Id.* (emphasis added.) Although these tests appear dissimilar, "absolutely no possibility" vs. "reasonable basis," we must assume that they are meant to be equivalent because each is presented as a restatement of the other.

Older cases have also used other phrases, but appear

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

326 F.3d 644
326 F.3d 644
**(Cite as: 326 F.3d 644)**

to apply the same analysis. *E.g., Bobby Jones Garden Apartments, Inc. v. Suleski,* 391 F.2d 172, 176 (5th Cir.1968)("no fraudulent joinder unless it be clear that there can be no recovery under the law of the state"); *Parks v. New York Times Co.,* 308 F.2d 474, 476 (5th Cir.1962) (no fraudulent joinder if "probable case in law" (citing *Dudley v. Community Public Service Co.,* 108 F.2d 119, 123 (5th Cir.1939))). An examination of earlier cases reveals that the insertion of "absolutely no" into the possibility test is fairly recent. It was first used in *Green v. Amerada Hess* with no indication that any change in the law was indicated. 707 F.2d 201, 205 (5th Cir.1983). Cases prior to that time stated the test using "reasonable basis" language without requiring a showing of "*absolutely* no possibility" of recovery.

> [T]he question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved. If that possibility exists, a good faith assertion of such an expectancy in a state court is not a sham, and is not colorable and is not fraudulent in fact or in law.

\*648 *Bobby Jones Garden Apartments,* 391 F.2d at 176-177 (5th Cir.1968). Before *Green,* our court had phrased the standard in terms of "no possibility". *E.g., B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir.1981) ("the removing party must show ... there is *no possibility* that the plaintiff would be able to establish a cause of action"(emphasis added)); *Parks,* 308 F.2d at 477 ("there must be some *reasonable basis* for believing that there is joint liability. The joinder is fraudulent if its clear that ... the facts asserted ... *could not possibly* create ... liability ..." (emphasis added)).

Any argument that a gap exists between the "no possibility" and "reasonable basis" of recovery language was recently narrowed, if not closed. *Badon v. RJR Nabisco, Inc.* held:

> Plaintiffs appear to argue that *any mere theoretical possibility* of recovery under local law--no matter how remote or fanciful--suffices to preclude removal. We reject this contention. As cited authorities reflect, there must at least be arguably a *reasonable basis* for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder.

236 F.3d 282, 286 n. 4 (5th Cir.2000) (first emphasis in original). *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.* confirmed this point:

> [T]he court determines whether that party has *any possibility of recovery* against the party whose joinder is questioned. If there is arguably a *reasonable basis* for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder. This *possibility, however, must be reasonable,* not merely theoretical.

313 F.3d 305, 312 (5th Cir.2002)(emphasis added; internal citation and quotations omitted; citing *Badon*).

Our cases have also noted the similarity of the test for fraudulent joinder and the test for a Rule 12(b)(6) motion alleging failure to state a claim. For instance, *Great Plains Trust* states that the Rule 12(b)(6) standard is: "[T]he court should not dismiss the claim unless the plaintiff would not be entitled to relief under *any set of facts or any possible theory* that he could prove consistent with the allegations in the complaint." *Id.* at 313 (emphasis added; citing *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir.1999)). It states the fraudulent joinder standard as: "After all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of the nonremoving party, the court determines whether that party has *any possibility of recovery* against the party whose joinder is questioned." *Id.* at 312. (emphasis added; citing *Carriere v. Sears, Roebuck & Co.,* 893 F.2d 98, 100 (5th Cir.1990)). The above-stated fraudulent joinder standard is, of course, consistent with our precedent: whether there is a "possibility that [plaintiff] has set forth a valid cause of action." *Green,* 707 F.2d at 205; *Burden,* 60 F.3d at 217. This language appears adopted from the Rule 12(b)(6) standard under which "the central issue is whether, in the light most favorable to the plaintiff, the complaint states a *valid claim for relief*". *Great Plains Trust,* 313 F.3d at 312 (emphasis added; citing *Hughes v. Tobacco Inst., Inc.,* 278 F.3d 417, 420 (5th Cir.2001)). See *also Keating v. Shell Chemical Co.,* 610 F.2d 328 (5th Cir.1980).

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

[3][4][5] Of course, although the fraudulent joinder and Rule 12(b)(6) standards appear similar, the scope of the inquiry is different. For Rule 12(b)(6) motions, a district court may only consider the allegations in the complaint and any attachments. *E.g., Great Plains Trust,* 313 F.3d at 313. For fraudulent joinder, the district *649 court may, as it did in this case, "pierce the pleadings" and consider summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff. *Carriere,* 893 F.2d at 100; *Griggs,* 181 F.3d at 699-702. Any contested issues of fact and any ambiguities of state law must be resolved in Travis's favor. *Griggs,* 181 F.3d at 699. The burden of persuasion on those who claim fraudulent joinder is a heavy one. *B, Inc.,* 663 F.2d at 549.

As all parties acknowledge, Travis clearly stated a claim against Irby. Under Mississippi law, Irby owed a duty to exercise reasonable care to avoid injuring Michael Travis at the railroad crossing. *New Orleans & N.R. Co. v. Lewis,* 214 Miss. 163, 58 So.2d 486, 490 (1952). Irby can be held personally responsible for negligent acts committed within the scope of his employment for Illinois Central. *Harrison v. Illinois C.R. Co.,* 219 Miss. 401, 69 So.2d 218, 222 (1954). Plaintiff Travis alleges facts in her complaint attributable to defendant Irby that constitute negligence, including failing to make a proper and timely application of the brakes of the train, failing to keep a proper and reasonable lookout, and failing to take proper precautions under the circumstances existing at the time of the accident.

The bases for the defendants' opposition to the Motion to Remand were the responses Travis made in her Second Supplemental Response to interrogatories posed by the defendants. One of the interrogatories read:

You have alleged in paragraph 12 of the Complaint that Engineer Irby "failed to keep a proper and reasonable lookout." With respect to this allegation, please state:
a. List all facts indicating that Irby failed to keep a proper and reasonable lookout and state the name and address of all witnesses having discoverable knowledge supporting your answer.

Plaintiff's supplemental response was as follows:
Plaintiff does not possess the facts supporting said allegations at this time nor has a determination been made as to who may be called to provide expert witness testimony, at such time a determination is made, Plaintiff will promptly supplement this request in accordance with M.R.C.P.

A similar response was made in answer to an interrogatory regarding plaintiff's allegation of failure to take proper precautions under the circumstances. Also, in response to an interrogatory regarding plaintiff's allegations that defendant failed to brake timely, the plaintiff responded that she did not know the location of the locomotive when the brakes were applied. The district court found that "[w]hile Plaintiff clearly seeks the chance to engage in further discovery, she has failed to present any evidence in support of a claim against Defendant Irby. She fails to provide even cursory evidence which gives the Court reason to believe that there is a potential that Irby may be found liable." This led the district court to find that Irby was fraudulently joined. The court therefore denied the Motion to Remand.

We conclude that the district court relied too heavily on the interrogatory responses noted above without considering them in the context of the entire record, the status of discovery, and without resolving all ambiguities in Travis' favor. The district court agreed with the defendant that Travis's second supplemental interrogatory responses should be treated as admissions that she had no factual basis or *650 evidence in support of her claims against Defendant Irby. We disagree with that conclusion. Travis's supplemental answers did not withdraw her earlier responses. Plaintiff responded earlier that expert testimony was required to fully respond and provided lists of eyewitnesses from whose testimony the plaintiff expected to establish facts to support her allegations against Irby. The defendants did not point to any evidence that would negate Irby's fault as alleged in the complaint. Under these circumstances, the defendants have not negated the possibility that Irby could be held liable to Travis on the claims alleged.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

326 F.3d 644
326 F.3d 644
(Cite as: 326 F.3d 644)

Also, a review of the events leading up to those responses reveals that they were made at defendants' suggestion to account for the gaps in discovery at the time the interrogatory responses were due. After considerable discussion between the attorneys about discovery, defendants filed a Motion to Compel on the ground that plaintiff's interrogatory responses were inadequate. The transcript of the hearing on that motion reflects that the plaintiff informed the court that she could not answer many questions because of the status of discovery at the time. The defendants had been successful in avoiding depositions of Irby and other railroad representatives, claiming that until they received satisfactory and fully responsive answers to their interrogatories, depositions were inappropriate. Also, the parties had not deposed witnesses to the accident or developed expert testimony necessary to establish appropriate railroad safety procedures and any breaches thereof. The defendants argued that plaintiff could answer their interrogatories by responding that they "don't know at this time ... but our investigation is continuing." The defendants argued that these answers could then be supplemented when experts were retained and as information was received. As to one interrogatory, the defendant's counsel stated that "If he doesn't know, it's not going to throw him out of Court to say, in response to the interrogatory, 'We do not know at this time of any such violations.' He could then easily supplement if his expert comes back and they want to claim some violations in the future." Plaintiff's supplemental responses to the interrogatories relied on by the district court appear to be directly responsive to those comments. Placed in context, they should not form the basis for barring remand to the plaintiff's chosen forum.

It is also clear from the record, as the district court acknowledged, that discovery was continuing. The district court acknowledged that both sides had engaged in dilatory tactics and found that "neither Plaintiff nor Defendants have presented any substantive evidence regarding Defendant Irby. Defendants merely point to Plaintiff's lack of evidence, while Plaintiff apparently clings to the need for further discovery." In this circumstance, in which the defendant has the burden of establishing fraudulent

joinder and the plaintiff can clearly state a claim upon which relief can be granted as to the non-diverse defendant, the lack of substantive evidence as to the non-diverse defendant does not support a conclusion that he was fraudulently joined. In order to establish that Irby was fraudulently joined, the defendant must put forward evidence that would negate a possibility of liability on the part of Irby. [FN3] As the defendants cannot do so, simply pointing to the plaintiff's lack of evidence at this stage of the case is insufficient to **651 show that there is no possibility for Travis to establish Irby's liability at trial.

> FN3. The case cited by the district court in support of his conclusion, _Woods v. Amtrak, 982 F.Supp. 409, 412 (N.D.Miss.1997)_, was decided on a motion for summary judgment. On a motion for summary judgment, the plaintiff's lack of evidence in support of her claims, after a sufficient period of discovery, could have a different effect.

Under these circumstances, the district court erred in concluding that Travis had no possibility of establishing Irby's liability for negligence because Illinois Central failed to meet its burden of establishing that the non-diverse defendant was fraudulently joined. Accordingly, the Motion to Remand should have been granted.

III.

For reasons stated above, we vacate the district court's judgment and remand this case to the district court with instructions to remand this case to the Circuit Court of Holmes County, Mississippi.

VACATED and REMANDED.

326 F.3d 644

Briefs and Other Related Documents (Back to top)

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

326 F.3d 644
326 F.3d 644
**(Cite as: 326 F.3d 644)**

Page 7

• <u>02-60005</u> (Docket)

(Jan. 03, 2002)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

**C**

Serial: 116304

**IN THE SUPREME COURT OF MISSISSIPPI**

No. 2004-IA-01308-SCT

**FILED**

AUG 2 6 2004

OFFICE OF THE CLERK
SUPREME COURT
COURT OF APPEALS

*HAROLD'S AUTO PARTS, INC., ET AL.*                    *Petitioners*

*v.*

*FLOWER MANGIALARDI, ET AL.*                    *Respondents*

## ORDER

This matter is before the Court, en banc, on the Petition for Permission to Appeal From an Interlocutory Order and Motion for Stay filed by counsel for Petitioners.  Also before the Court is the response and supplemental response filed by counsel for Respondents. Petitioners seek to appeal an interlocutory order of the Circuit Court of Bolivar County, Mississippi, which denied petitioners' motion to sever filed therein.

After due consideration, the Court finds that the petition for interlocutory appeal is well taken and should be granted.  The Court further finds that no further briefing is needed, and we shall proceed to a consideration of the merits.

This interlocutory appeal concerns joinder of multiple plaintiffs in an asbestos, mass tort litigation case.  This matter is controlled by *Jansen Pharmaceutica, Inc. v. Armond*, 866 So. 2d 1092 (Miss. 2004).  Even though asbestos litigation is, indeed, a "mature tort," as discussed in dicta in *Armond*, this Court did not intend in that case, and we shall not proceed

**EXHIBIT**

C

here, to exempt asbestos cases from the requirements of Rule 20, of the Mississippi Rules of Civil Procedure.

The case before us has endured seven amended complaints, and now involves the claims of 264 plaintiffs against 137 named defendants who have identified approximately 600 different employers where asbestos exposure might have taken place. Approximately 220 of the plaintiffs are unable to identify any employment within the state of Mississippi. The complaint provides virtually no helpful information with respect to the claims asserted by the individual plaintiffs. We are provided the following allegations and information regarding the plaintiffs:

1.  names and social security numbers;

2.  they are "resident citizens of the State of Mississippi, or other states of the United States, or are personal representatives or wrongful death beneficiaries of deceased plaintiffs (we are not told which plaintiffs are citizens and which are representatives or beneficiaries);

3.  they were exposed to asbestos products which were "mined, designed, specified, evaluated, manufactured, packaged, furnished, supplied and/or sold" by defendants during "all or part of the period 1930 through the present" (we are not told which plaintiffs were exposed to which products manufactured by which defendants; nor are we told when any particular plaintiff was exposed during the seventy-five year period);

In essence, we are told that 264 plaintiffs were exposed over a 75-year period of time to asbestos products associated with 137 manufacturers in approximately 600 workplaces. We are not told which plaintiff was exposed to which product manufactured by which defendant in which workplace at any particular time. We do not suggest that this lack of

2

basic information is the result of recalcitrance on the part of plaintiffs' counsel; perhaps plaintiffs' counsel has not furnished the information.

Defendants have strenuously objected to the failure and/or refusal of plaintiffs' to provide the information. They point out that it is impossible to argue to the trial court that joinder was improper, because they aren't provided basic information about each of the plaintiffs. Curiously, rather than filing a motion for more definite statement, or to dismiss, defendants' simply seek the information "as soon as practicable." The defendant's further argue that Rule 20 requires the disclosure to be made.

The position stated by plaintiffs is that defendant's do not need the information right now, since there apparently is a plan to try the cases, one at a time.

We find that all have missed the mark. This matter should not be before us because of a failure to comply with Rule 20, but rather because of an abuse of, and failure to comply with, Rules 8, 9, 10 and 11. What is referred to as "core information" and "disclosure" is basic information which should be known to plaintiffs' counsel *prior* to filing the complaint, not information to be developed in discovery or disclosure. The information should have been included in the complaint.

Complaints should not be filed in matters where plaintiffs intend to find out in discovery whether or not, and against whom, they have a cause of action. Absent exigent circumstances, plaintiffs' counsel should not file a complaint until sufficient information is obtained, and plaintiffs' counsel believes in good faith that *each plaintiff* has an appropriate cause of action to assert against a defendant in the jurisdiction where the complaint is to be

3

filed. To do otherwise is an abuse of the system, and is sanctionable. *See* Miss. R. Civ. P., Rule 11.

Rule 20 allows joinder only where the plaintiffs make certain assertions which demonstrate the matters set out in the rule. In this regard, plaintiffs have wholly failed. Indeed, plaintiffs have not even attempted to provide the information. They presume that they are entitled to proceed with their suit, as filed, and they will demonstrate later that joinder is proper. We can only presume from the record before us that plaintiff take this course because they don't know whether or not joinder is appropriate. This is so, apparently, because they don't know the claims of each plaintiff. They don't appear to know when they were exposed, where they were exposed, by whom they were exposed, or even if they were exposed. Presumably, when they learn this information, plaintiffs' counsel intends to dismiss those who should not have been joined. This is a perversion of the judicial system unknown prior to the filing of mass-tort cases.

We must point out that not all cases involving multiple plaintiffs and/or defendants which have come before this Court appear to have been filed in this manner. We note cases where counsel for the plaintiffs appear to have interviewed each plaintiff, investigated their claims, and developed information necessary to file a complaint on their behalf.

But here, not only have plaintiffs failed to furnish their counsel the necessary information to file the complaint, but plaintiff's counsel continues to resist furnishing to defendants and the court.

4

Incredibly, plaintiffs asked the trial court to set aside its order of certification for interlocutory appeal, claiming they got no notice of the motion, and that "[p]laintiffs were never afforded any of their constitutional rights of due process to contest such a motion." This complaint comes to us from plaintiffs who, more than three years ago, filed suit against 137 defendants; who have amended their complaint six times; and who are apparently unable to explain to the trial court, this Court, or to the defendants, exactly who each plaintiff has sued, and why.

We hereby reverse the trial court's June 23, 2004, Order, insofar at it denies the plaintiffs' motion to sever, and we order severance as to each plaintiff. We hold that plaintiffs have wholly failed in their obligation to assert sufficient information to justify joinder and, accordingly, this matter is remanded to the trial court for a transfer of each plaintiff to an appropriate court of venue and jurisdiction, where known. The trial court is hereby directed to dismiss, without prejudice, the complaint of each plaintiff who fails, within forty-five days of the date of this Order, to provide the defendants and trial court with sufficient information for such determination, and transfer if warranted. Such information must include, at a minimum, the name of the defendant or defendants against whom each plaintiff makes a claim, and the time period and location of exposure.

IT IS THEREFORE ORDERED that the Petition for Interlocutory Appeal by Permission filed by counsel for petitioners is hereby granted.

5

IT IS FURTHER ORDERED that this matter is hereby remanded to the Circuit Court of Bolivar County, Mississippi, for entry of an order granting the petitioners' motion to sever in accordance with the provisions of this Order.

IT IS FURTHER ORDERED that the Circuit Court of Bolivar County shall dismiss, without prejudice, each plaintiff who fails to provide the defendants and the court, within forty-five days of the date of this Order, with sufficient information as specified herein which allows the trial court to determine the appropriate court for transfer.

IT IS FURTHER ORDERED that Respondents are taxed with all costs of this appeal.

SO ORDERED, this the 23rd day of August, 2004.

JAMES W. SMITH, JR., CHIEF JUSTICE
FOR THE COURT

TO GRANT: SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON, GRAVES AND DICKINSON, JJ.

TO DENY: EASLEY. J.

NOT PARTICIPATING: DIAZ AND RANDOLPH, JJ.

**D**

Westlaw.

Miss. Code Ann. § 11-1-63

▶ **This document has been updated.  Use <u>KEYCITE</u>.**

West's Annotated Mississippi Code <u>Currentness</u>
  Title 11. Civil Practice and Procedure
    ▝▣ <u>Chapter 1.</u> Practice and Procedure Provisions Common to Courts <u>(Refs & Annos)</u>

  ➡ **§ 11-1-63. Product liability suits**

Subject to the provisions of <u>Section 11-1-64</u>, in any action for damages caused by a product except for commercial damage to the product itself:

(a) The manufacturer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:

  (i) 1. The product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, or

  2. The product was defective because it failed to contain adequate warnings or instructions, or

  3. The product was designed in a defective manner, or

  4. The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product;  and

  (ii) The defective condition rendered the product unreasonably dangerous to the user or consumer;  and

  (iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

(b) A product is not defective in design or formulation if the harm for which the claimant seeks to recover compensatory damages was caused by an inherent characteristic of the product which is a generic aspect of the product that cannot be eliminated without substantially compromising the product's usefulness or desirability and which is recognized by the ordinary person with the ordinary knowledge common to the community.

(c)(i) In any action alleging that a product is defective because it failed to contain adequate warnings or instructions pursuant to paragraph (a)(i)2 of this section, the manufacturer or seller shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller, the manufacturer or seller knew or in light of reasonably available knowledge should have known about the danger

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



Miss. Code Ann. § 11-1-63

that caused the damage for which recovery is sought and that the ordinary user or consumer would not realize its dangerous condition.

(ii) An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates sufficient information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to an ordinary consumer who purchases the product; or in the case of a prescription drug, medical device or other product that is intended to be used only under the supervision of a physician or other licensed professional person, taking into account the characteristics of, and the ordinary knowledge common to, a physician or other licensed professional who prescribes the drug, device or other product.

(d) In any action alleging that a product is defective pursuant to paragraph (a) of this section, the manufacturer or seller shall not be liable if the claimant (i) had knowledge of a condition of the product that was inconsistent with his safety; (ii) appreciated the danger in the condition; and (iii) deliberately and voluntarily chose to expose himself to the danger in such a manner to register assent on the continuance of the dangerous condition.

(e) In any action alleging that a product is defective pursuant to paragraph (a)(i)2 of this section, the manufacturer or seller shall not be liable if the danger posed by the product is known or is open and obvious to the user or consumer of the product, or should have been known or open and obvious to the user or consumer of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons who ordinarily use or consume the product.

(f) In any action alleging that a product is defective because of its design pursuant to paragraph (a)(i)3 of this section, the manufacturer or product seller shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:

(i) The manufacturer or seller knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the danger that caused the damage for which recovery is sought; and

(ii) The product failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm. A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers.

(g)(i) The manufacturer of a product who is found liable for a defective product pursuant to paragraph (a) shall indemnify a product seller for the costs of litigation, any reasonable expenses, reasonable attorney's fees and any damages awarded by the trier of fact unless the seller exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the harm for which recovery of damages is sought; the seller altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought; the seller had actual knowledge of the defective condition of the product at the time he supplied same; or the seller made an express factual representation about the aspect of the product which caused the harm for which recovery of damages is sought.

(ii) Subparagraph (i) shall not apply unless the seller has given prompt notice of the suit to the manufacturer within ninety (90) days of the service of the complaint against the seller.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

(h) In any action alleging that a product is defective pursuant to paragraph (a) of this section, the seller of a product other than the manufacturer shall not be liable unless the seller exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the harm for which recovery of damages is sought; or the seller altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought; or the seller had actual or constructive knowledge of the defective condition of the product at the time he supplied the product. It is the intent of this section to immunize innocent sellers who are not actively negligent, but instead are mere conduits of a product.

(i) Nothing in this section shall be construed to eliminate any common law defense to an action for damages caused by a product.

## CREDIT(S)

Laws 1993, Ch. 302, § 1, eff. July 1, 1993. Amended by Laws 2002, 3rd Ex. Sess., Ch. 4, § 5, eff. Jan. 1, 2003; Laws 2004, 1st Ex. Sess., Ch. 1, § 3, eff. September 1, 2004.

## DATE EFFECTIVE AND APPLICATION

<Sections relating to tort reform, civil proceedings and jury service in civil actions were amended or added by Laws 2004, 1st Ex. Sess., Ch. 1. This section was amended by § 3 of Laws 2004, 1st Ex. Sess., Ch. 1. Section 19 of Laws 2004, 1st Ex. Sess., Ch. 1 is a severability provision. Section 20 of Laws 2004, 1st Ex. Sess., Ch. 1 provides:>

<"Sections 8 through 15 of this act shall take effect and be in force from and after January 1, 2007; the remainder of this act shall take effect and be in force from and after September 1, 2004, and Sections 1 through 7 of this act shall apply to all causes of action filed on or after September 1, 2004.">

## HISTORICAL AND STATUTORY NOTES

Laws 1993, Ch. 302, § 5 provides:

"This act shall take effect and be in force from and after July 1, 1993. Procedural provisions of this act including subsections (1)(a), (b), (c) and (d) of Section 2 shall apply to all pending actions in which judgment has not been entered on the effective date of the act and all actions filed on or after the effective date of the act. All other provisions shall apply to all actions filed on or after July 1, 1994."

Laws 1993, Ch. 302, § 2 was codified as Section 11-1-65.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

The 2002 amendment by Laws 2002, 3rd Ex. Sess., Ch. 4, § 5 added, to the beginning of the introductory paragraph, "Subject to the provisions of Section 11-1-64,"; substituted, in subpar. (g)(i), "paragraph (a)" for "subsection (a)"; and substituted, in subpar. (g)(ii), "notice of the suit to the manufacturer within ninety (90) days of the service of the complaint against the seller" for "notice of the suit to the manufacturer within thirty (30) days of the filing of the complaint against the seller".

Laws 2002, 3rd Ex. Sess., Ch. 4 related to civil justice reform.  Sections 15 and 16 of Laws 2002, 3rd Ex. Sess., Ch. 4 provided:

"SECTION 15. If any provision of this act is held by a court to be invalid, such invalidity shall not affect the remaining provisions of this act, and to this end the provisions of this act are declared severable.

"SECTION 16. This act shall take effect and be in force from and after January 1, 2003, and shall apply to all causes of action filed on or after that date."

The 2004 amendment inserted subsec. (h), immunizing innocent sellers who are not actively negligent, and who are mere conduits of a product;  and redesignated former subsec. (h) as subsec. (i).


CROSS REFERENCES

   Remedies, consequential damages, see § 75-2-715.


LAW REVIEW AND JOURNAL COMMENTARIES

An Evaluation of the Mississippi Products Liability Act of 1993. Harges, 63 Miss.L.J. 697 (1994).

Evidence--Expert witnesses--*Daubert* applies to all expert testimony. Recent decisions, 69 Miss.L.J. 979 (2000).

The Law of Unintended Consequences in Asbestos Litigation: How Efforts to Streamline the Litigation Have Fueled More Claims. Schwartz, Tedesco, 71 Miss.L.J. 531 (Winter 2001)

Mississippi's Civil Justice System: Problems, Opportunities and Some Suggested Repairs. Joyce, Hotra, 71 Miss.L.J. 395 (Winter 2001)

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

A Proposed Remedy for Mississippi's Medical Malpractice Miseries. O'Connell, 22 Miss.C.L.Rev. 1, (Fall 2002).

Regulation Masquerading as Judgment: Chaos Masquerading as Tort Law. Krauss, 71 Miss.L.J. 631 (Winter 2001).

The Three-Legged Pig: Risk Redistribution and Antinomianism in American Legal Culture. Galanter, 22 Miss.C.L.Rev. 47 (Fall 2002).

Tort Reform and the Medical Liability Insurance Crisis in Mississippi:  Diagnosing the Disease and Prescribing a Remedy. Vidmar, Brown, 22 Miss.C.L.Rev. 9 (Fall 2002).

Tort reform in Mississippi: An appraisal of the new law of products liability, part I. McIntosh, 16 Miss.C.L.Rev. 393 (1996).

Tort reform in Mississippi: An appraisal of the new law of products liability, part II. McIntosh, 17 Miss.C.L.Rev. 277 (1996).

Toxic Tort Claims without Present Injury: The Uncertain Status of Claims of Fear of Future Disease in Mississippi, Comment. Wadlington Morgan, 72 Miss.L.J. 1111 (Spring 2003)

What courts can do in the face of the never-ending asbestos crisis.  Rothstein, 71 Miss.L.J. 1 (Fall, 2001).

What in the wide, wide world of torts is going on? First tobacco, now guns:  An examination of Hamilton v.  Accu-tek and the cities' lawsuits against the gun industry.  Morgan, 69 Miss.L.J. 521 (1999).

LIBRARY REFERENCES

Products Liability ☜1 to 62.
WESTLAW Topic No. 313A.
C.J.S. Motor Vehicles §§ 165(1), 165(2), 165(3), 165(4),  165(5), 165(6), 165(7), 166, 167(1).
C.J.S. Products Liability §§ 2 to 68.

RESEARCH REFERENCES

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

**ALR Library**

<u>81 ALR 5th 245</u>, Products Liability: Ladders.

<u>57 ALR 5th 1</u>, Construction And Application Of Learned-Intermediary Doctrine.

<u>36 ALR 5th 541</u>, Products Liability: Cigarettes And Other Tobacco Products.

<u>72 ALR 4th 12</u>, Strict Products Liability: Recovery For Damage To Product Alone.

<u>4 ALR 4th 651</u>, Products Liability: Admissibility Of Expert Or Opinion Evidence That Product Is Or Is Not Defective, Dangerous, Or Unreasonably Dangerous.

<u>1 ALR 4th 921</u>, Products Liability In Connection With Prosthesis Or Other Products Designed To Be Surgically Implanted In Patient's Body.

<u>81 ALR 3rd 318</u>, Products Liability: Liability For Injury Or Death Allegedly Caused By Defective Tires.

<u>62 ALR 2nd 1426</u>, Safety Of Condition, Place, Or Appliance As Proper Subject Of Expert Or Opinion Evidence In Tort Actions.

**Encyclopedias**

<u>27 Am. Jur. Proof of Facts 2d 1</u>, Point Of Origin Of Fire: Improperly Installed Or Maintained Heating Appliance.

<u>Encyclopedia of Miss Law § 16:7</u>, Assumption of the risk--Implied assumption of the risk.

<u>Encyclopedia of Miss Law § 16:8</u>, Products liability.

<u>Encyclopedia of Miss Law § 16:13</u>, Products liability.

<u>Encyclopedia of Miss Law § 25:8</u>, Pecuniary or economic damages.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

Encyclopedia of Miss Law § 57:2, 1966 to 1993.

Encyclopedia of Miss Law § 57:4, 1993 to present.

Encyclopedia of Miss Law § 57:6, List of defective categories.

Encyclopedia of Miss Law § 57:7, Standard of proof.

Encyclopedia of Miss Law § 57:8, Design defects.

Encyclopedia of Miss Law § 57:9, Marketing defects.

Encyclopedia of Miss Law § 57:10, Health, medical and hospital supplies.

Encyclopedia of Miss Law § 57:12, Manufacturing defects.

Encyclopedia of Miss Law § 57:14, Breach of warranty claims.

Encyclopedia of Miss Law § 57:15, Statutory definition.

Encyclopedia of Miss Law § 57:16, Risk-utility analysis.

Encyclopedia of Miss Law § 57:17, Proximate cause standard.

Encyclopedia of Miss Law § 57:18, Doctrine of res ipsa loquitur.

Encyclopedia of Miss Law § 57:20, In general.

Encyclopedia of Miss Law § 57:21, Negligence standard.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

Encyclopedia of Miss Law § 57:26, Common law defenses.

Encyclopedia of Miss Law § 57:27, Statutory defenses.

Encyclopedia of Miss Law § 57:29, Statutory defenses.

Encyclopedia of Miss Law § 57:31, Statutory defense.

Encyclopedia of Miss Law § 57:45, Doctrine consistent with MPLA.

Encyclopedia of Miss Law § 57:53, Requirements for manufacturer.

Encyclopedia of Miss Law § 57:54, Exceptions.

Encyclopedia of Miss Law § 64:62, Notice of litigation.

Encyclopedia of Miss Law § 68:96, From model acts.

Encyclopedia of Miss Law § 68:98, Use of scholarly materials.

Encyclopedia of Miss Law § 68:101, Retroactivity, in general.

**Treatises and Practice Aids**

Restatement (Second) of Torts § 402A, Special Liability Of Seller Of Product For Physical Harm To User Or Consumer.

Restatement (Third) of Torts: Prod. Liab. § 1, Liability Of Commercial Seller Or Distributor For Harm Caused By Defective Products.

Restatement (Third) of Torts: Prod. Liab. § 1, Liability Of Commercial Seller Or Distributor For Harm Caused By Defective Products.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

Restatement (Third) of Torts: Prod. Liab. § 1, Liability Of Commercial Seller Or Distributor For Harm Caused By Defective Products.

Restatement (Third) of Torts: Prod. Liab. § 2, Categories Of Product Defect.

Restatement (Third) of Torts: Prod. Liab. § 2, Categories Of Product Defect.

Restatement (Third) of Torts: Prod. Liab. § 2, Categories Of Product Defect.

Miss Jury Instr Civil 2d § 17:1, Breach of express warranty.

Miss Jury Instr Civil 2d § 17:2, Strict liability--Design defect.

Miss Jury Instr Civil 2d § 17:3, Manufacturing defects.

Miss Jury Instr Civil 2d § 17:4, Failure to warn.

Miss Jury Instr Civil 2d § 17:5, State-of-the-art defense.

Miss Jury Instr Civil 2d § 17:6, Inherent characteristics defense.

Miss Jury Instr Civil 2d § 17:8, Assumption of the risk.

Miss Jury Instr Civil 2d § 17:10, Misuse of product defense.

UNITED STATES SUPREME COURT

Medical devices, premarket approval, substantially equivalent exemption, preemption, state law defective design, manufacturing and labeling claims, see Medtronic, Inc. v. Lohr, U.S.Fla.1996, 116 S.Ct. 2240, 518 U.S. 470, 135 L.Ed.2d 700, on remand 98 F.3d 618.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Page 10

Miss. Code Ann. § 11-1-63

Preemption of state law "fraud-on-the-agency" claims, manufacturer of medical devices, see <u>Buckman Company v. Plaintiffs' Legal Committee, 121 S.Ct. 1012</u>.


JUDICIAL DECISIONS


**In general <u>1</u>**
**Admissibility of evidence <u>3-3.6</u>**
 **Admissibility of evidence - Discretion <u>3.5</u>**
 **Admissibility of evidence - Documentary evidence <u>3.4</u>**
 **Admissibility of evidence - Expert witnesses <u>3.3</u>**
 **Admissibility of evidence - Hearsay exceptions <u>3.2</u>**
 **Admissibility of evidence - Instructions and diagrams <u>3.1</u>**
 **Admissibility of evidence - Lay witness testimony <u>3.35</u>**

 **Admissibility of evidence - Photographs and video <u>3.55</u>**
 **Admissibility of evidence - Prior accidents <u>3.6</u>**
 **Admissibility of evidence - Relevance <u>3.56</u>**
**Alternative designs <u>5</u>**
**Alternative plea <u>2</u>**
**Arguments of counsel <u>5.75</u>**
**Causation <u>11</u>**
**Construction with other law <u>1.6</u>**
**Damages <u>18</u>**
**De facto merger, successor liability <u>14.3</u>**
**Design <u>7</u>**
**Discovery <u>16.25</u>**
**Discretion, admissibility of evidence <u>3.5</u>**
**Documentary evidence, admissibility of evidence <u>3.4</u>**
**Duties of successor, successor liability <u>14.5</u>**
**Economic loss <u>9</u>**
**Expert witnesses, admissibility of evidence <u>3.3</u>**
**Fraudulent transaction, successor liability <u>14.4</u>**
**Hearsay exceptions, admissibility of evidence <u>3.2</u>**
**Hold harmless, successor liability <u>14.2</u>**
**Indemnification <u>18.5</u>**

**Instructions and diagrams, admissibility of evidence <u>3.1</u>**
**Joinder <u>23.5</u>**
**Jury instructions <u>6</u>**
**Jury questions <u>15</u>**
**Lay witness testimony, admissibility of evidence <u>3.35</u>**
**Licensees and licensors <u>13.5</u>**
**Misuse <u>10</u>**

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

**Negligence of plaintiff 16.1**
**Negligence per se 16**
**New trial 25**
**Parties 23**
**Photographs and video, admissibility of evidence 3.55**
**Pleadings 16.5**
**Practice and procedure 17**
**Preemption 1.5**
**Prescription drugs 20**
**Presumptions and burdens of proof 5.5**
**Prima facie case 21**
**Prior accidents, admissibility of evidence 36**
**Product line theory, successor liability 14.1**
**Relevance,, admissibility of evidence 3.56**

**Res ipsa loquitur 12**
**Retroactivity 19**
**Review 24**
**Risk-utility analysis 4**
**Spoliation of evidence 3.6**
**Strict liability 13**
**Successor liability 14-14.5**
    **Successor liability - In general 14**
    **Successor liability - De facto merger 14.3**
    **Successor liability - Duties of successor 14.5**
    **Successor liability - Fraudulent transaction 14.4**
    **Successor liability - Hold harmless 14.2**
    **Successor liability - Product line theory 14.1**
**Sufficiency of evidence 22**
**Tobacco products 1.7**
**Validity of amendment 1/2**
**Warning 8**

1/2. Validity of amendment

Since in the amendment to Section 11-1-63 in the House conference report at the 2002 Third Extraordinary Session, there is no definition of the word "distributor" which would limit its application to distributors of drugs or medical or other healthcare products or services, and since the definition of "seller" is similarly not limited to healthcare contexts the addition of these matters does go beyond the scope of the governor's call. The addition of "prescribers", to those persons covered by Section 11-1-63 does, however, appear to relate to the "provision of affordable and accessible healthcare ... " and therefore appears to be within the subject matter of the call. Op.Atty.Gen.No. 2002-0568, Minor, September 23, 2002.

Where, during the 2002 Third Extraordinary Session, the House conference report would further amend Section

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

11-1-63 to contain provisions as to the liability of drug manufacturers' agents or employees who directly participate in or authorize the commission of a tort, and while the language is unclear, the amendment does appear to be an attempt to address the provision of affordable and accessible healthcare, and the provisions appear to be within the call for the special session. Op.Atty.Gen.No. 2002-0568, Minor, September 23, 2002.


1. In general


Mississippi Products Liability Act (MPLA) did not abrogate common law theory of negligence or statutory cause of action for breach of implied warranty as grounds for recovery. Childs v. General Motors Corp. (N.D.Miss. 1999) 73 F.Supp.2d 669. Products Liability ☞ 6; Sales ☞ 427


Under Mississippi law, plaintiff seeking to impose strict liability for unreasonably dangerous product must show that: (1) plaintiff was injured by product; (2) injury resulted from defect in product that rendered it unreasonably dangerous; and (3) defect existed at time it left hands of manufacturer. Hammond v. Coleman Co., Inc. (S.D.Miss. 1999) 61 F.Supp.2d 533, affirmed 209 F.3d 718. Products Liability ☞ 5


Failure to offer admissible expert testimony relating to manufacturing defect, design defect or warning or instruction defect of lantern precluded recovery in products liability action under Mississippi law based on explosion of lantern. Hammond v. Coleman Co., Inc. (S.D.Miss. 1999) 61 F.Supp.2d 533, affirmed 209 F.3d 718. Products Liability ☞ 83


Probative value of evidence of possible alcoholic consumption by gun owner just prior to self-inflicted gunshot wound while inside his pick-up truck was not outweighed by its prejudicial effect in products liability action against gun manufacturer; given testimony concerning of presence of cold beer in owner's pick-up and presence of alcohol on owner's breath, and lack of witnesses to the accident, evidence of possible alcohol consumption was highly relevant as to owner's credibility, his recollection of the accident, and his contributory negligence. Abrams v. Marlin Firearms Co. (Miss. 2003) 838 So.2d 975. Evidence ☞ 146; Witnesses ☞ 328


Error in instructing jury to apply "consumer expectation" test for determining whether an allegedly defective product is inherently dangerous was not rendered harmless by the entirety of the evidence in products liability action involving allegedly defective fuel tank system on truck in which jury returned verdict for manufacturer and seller of truck; while two experts for driver's wrongful death beneficiaries did not agree as to exactly where fire that killed driver began, they both recommended alternative designs consistent with their theories of defective design. Smith v. Mack Trucks, Inc. (Miss. 2002) 819 So.2d 1258. Appeal And Error ☞ 1064.1(8)


Plaintiff in products liability action has the burden of showing that the defect that allegedly was the proximate cause of injury existed at the time that the product left the hands of the manufacturer, and that the defect rendered the product unreasonably dangerous; accordingly, the proof must support that no material change in that product occurred after leaving the manufacturer's control. Wolf v. Stanley Works, 2000, 757 So.2d 316. Products Liability ☞ 8; Products

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

Liability ⟶ 16;  Products Liability ⟶ 75.1

Manufacturer of automatic doors that injured hotel patron was not negligent, absent evidence of defect in original design at time system was sold by manufacturer, where technician unaffiliated with manufacturer replaced threshold sensor with manufacturer's sensor that had been rebuilt by another company, and evidence suggested that rebuilt sensor failed because it needed adjustment. Wolf v. Stanley Works, 2000, 757 So.2d 316.  Products Liability ⟶ 42

Tractor manufacturer in products liability case was entitled to have jury award for tractor driver reduced by amount of settlement by other defendants, where the jury was not informed of the settlement. Pickering v. Industria Masina I Traktora (IMT) (Miss. 1999) 740 So.2d 836.  Damages ⟶ 63

Comparative negligence applied to products liability action based solely on theory of strict liability.  Pickering v. Industria Masina I Traktora (IMT) (Miss. 1999) 740 So.2d 836.  Products Liability ⟶ 28

To recover under strict liability theory, consumer must prove that defect which proximately caused injuries existed at time product left manufacturer's possession.  Sperry-New Holland, a Div. of Sperry Corp. v. Prestage (Miss. 1993) 617 So.2d 248.  Products Liability ⟶ 8

Restatement of Torts (Second) § 402A governing special liability of seller of product for physical harm to user or consumer is still the law in Mississippi.  Sperry-New Holland, a Div. of Sperry Corp. v. Prestage (Miss. 1993) 617 So.2d 248.  Products Liability ⟶ 1

1.5. Preemption

Mississippi common-law product liability claims based upon boat manufacturer's failure to provide propeller guard on its product were not expressly preempted by Federal Boat Safety Act (FBSA), under which Coast Guard had affirmatively decided not to regulate installation of propeller guards; statute's preemption of contrary state "law or regulation" did not include common law tort claims. Lady v. Neal Glaser Marine, Inc. (C.A.5 (Miss.) 2000) 228 F.3d 598, certiorari denied 121 S.Ct. 1402, 532 U.S. 941, 149 L.Ed.2d 345. Products Liability ⟶ 62; States ⟶ 18.65

Mississippi common-law product liability claims based upon boat manufacturer's failure to provide propeller guard on its product were impliedly preempted by Federal Boat Safety Act (FBSA), under which Coast Guard had affirmatively decided not to regulate installation of propeller guards; state rule requiring propeller guards on recreational vessels would frustrate Coast Guard's decision that recreational boats should not be required to be equipped with propeller guards and FSBA's goal of uniform national regulation. Lady v. Neal Glaser Marine, Inc. (C.A.5 (Miss.) 2000) 228 F.3d 598, certiorari denied 121 S.Ct. 1402, 532 U.S. 941, 149 L.Ed.2d 345. Products Liability ⟶ 62;  States ⟶ 18.65

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

State common law claims of 10-year-old child who was severely burned while playing with disposable cigarette lighter were not preempted by federal law setting cigarette lighter safety standards; Congress did not explicitly preempt state law or occupy the entire field on lighter safety regulations, and there was no conflict between higher standard proposed for state claims and federal law requiring lighter companies to implement safety devices on lighters so that they could not be used by children five years of age. Frith v. BIC Corp., 2002, 2002 WL 31693384, rehearing denied, certiorari granted 847 So.2d 866. Products Liability ☞ 59; States ☞ 18.65

1.6. Construction with other law

Products liability action involving an amended complaint that was filed on effective date of substantive provisions of state Products Liability Act was subject only to the procedural provisions of that statute, where original complaint was filed prior to statute's enactment. Smith v. Mack Trucks, Inc. (Miss. 2002) 819 So.2d 1258. Products Liability ☞ 2

1.7. Tobacco products

Mississippi Product Liability Act (MPLA) precludes all tobacco cases based on products liability. Owens Corning v. R.J. Reynolds Tobacco Co. (Miss. 2004) 2004 WL 527880. Products Liability ☞ 59

Smoker's alleged injuries were caused by an inherent characteristic of cigarettes that was recognized by an ordinary person with the ordinary knowledge common to the community, and thus the Mississippi Product Liability Act (MPLA) barred wrongful death action by beneficiaries of smoker against manufacturers, distributors, and retailers of cigarettes. Lane v. R.J. Reynolds Tobacco Co. (Miss. 2003) 2003 WL 21027183. Products Liability ☞ 59

Mississippi Product Liability Act (MPLA) precludes all tobacco cases that are based on products liability. Lane v. R.J. Reynolds Tobacco Co. (Miss. 2003) 2003 WL 21027183. Products Liability ☞ 59

2. Alternative plea

Consumer's allegation that his father was negligent and a proximate cause of his injuries when his leg got caught in combine was simply an alternative plea which could not be used to impeach consumer's testimony that manufacturer's combine was sole proximate cause of his injuries. Sperry-New Holland, a Div. of Sperry Corp. v. Prestage (Miss. 1993) 617 So.2d 248. Witnesses ☞ 379(7)

3. Admissibility of evidence

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

Plaintiff casino patron who suffered knee injury when he fell on gang plank connecting gambling barge to shore was not entitled to present testimony regarding subsequent remedial measures, including taping off of area where accident occurred, in patron's resulting action against casino, even if such evidence touched tangentially on credibility of security guards' testimony that guards traversed the area but found no defect. <u>Reddin v. Robinson Property Group Ltd. Partnership (C.A.5 (Miss.) 2001) 239 F.3d 756</u>. Witnesses ☜⇒ 406

Admission of evidence as to injuries sustained by casino patron subsequent to his fall on casino gang plank was not plain error, in patron's action arising from gang plank accident. <u>Reddin v. Robinson Property Group Ltd. Partnership (C.A.5 (Miss.) 2001) 239 F.3d 756</u>. Federal Courts ☜⇒ 628

Expert's testimony that ladder had manufacturing defect was irrelevant under <u>*Daubert*</u> in products liability action under Mississippi law alleging that such defect was responsible for injuries victim suffered in work-related fall; ladder was manufactured to meet specifications under American National Standard Institute (ANSI), and expert failed to assess whether ladder met ANSI standards in accordance with requirements under Mississippi law. <u>Leverette v. Louisville Ladder Co. (C.A.5 (Miss.) 1999) 183 F.3d 339</u>, certiorari denied <u>120 S.Ct. 982, 528 U.S. 1138, 145 L.Ed.2d 932</u>. Evidence ☜⇒ 508; Evidence ☜⇒ 555.2

Proposed expert testimony regarding possible manufacturing defect in lantern's pump was too speculative, and thus was not admissible in products liability action; expert had no experience with lanterns, had not performed any tests to ascertain possible malfunction, did not examine allegedly defective mechanism, proposed three different theories as to possible sources of malfunction, and did not point to previous similar failures of lantern in other cases. <u>Hammond v. Coleman Co., Inc. (S.D.Miss. 1999) 61 F.Supp.2d 533</u>, affirmed <u>209 F.3d 718</u>. Evidence ☜⇒ 555.7

Two prior accidents in which air bags in vehicles made by automobile manufacturer caused fatal injuries to passengers wearing or not wearing seat belts were not substantially similar to accident in which ten-year-old front seat passenger died from impact with air bag, and thus, prior accidents were not admissible in products liability action to show that manufacturer had notice of design defects in air bag in passenger's vehicle; one prior accident involved properly belted adult female passenger of small stature whose seat position was three inches farther back and such accident involved higher velocity change, and other prior accident involved decapitation of young child in unbelted forward-facing child seat. (Per Chandler, J., with four judges concurring and one judge concurring in result.) <u>Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296</u>.

Evidence of general "effectiveness" of air bags, including their effectiveness in vehicles other than the model of vehicle in which ten-year-old front seat passenger had been riding when she died from impact with air bag, was relevant, in products liability action against automobile manufacturer, to risk-utility analysis for determining whether the air bag in passenger's vehicle was defectively designed. (Per Chandler, J., with four judges concurring and one judge concurring in result.) <u>Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296</u>. Products Liability ☜⇒ 83.5

Evidence that ten-year-old passenger's family did not consistently wear seat belts was not admissible, in

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

inadequate-warning products liability action against automobile manufacturer relating to passenger's death from impact from air bag, to show that passenger and her family were negligent in their approach to warnings; such testimony implicated the statute precluding presentation of evidence of non-use of seat belt to show contributory or comparative negligence, and automobile manufacturer was able to present evidence of the family's tendency to ignore warnings without reference to family's failure to wear seat belts. (Per Chandler, J., with four judges concurring and one judge concurring in result.) Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296. Products Liability ☞ 81.5

Evidence that driver had not used seat belt was not admissible, in products liability action against automobile manufacturer, relating to death of ten-year-old front seat passenger from impact from air bag and alleging defective design of passenger's air bag; there was no claim that driver's air bag was defectively designed, and driver's allegedly negligent failure to wear her seat belt was not probative of any issue in the case. (Per Chandler, J., with four judges concurring and one judge concurring in result.) Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296. Products Liability ☞ 81.5

Evidence that ten-year-old front seat passenger had not used seat belt was relevant, in products liability action relating to safety of air bag design; passenger's parents contended air bag was intended as passive restraint that would be effective without seat belts, but defendant automobile manufacturer contended air bag was designed as supplemental restraint and therefore would be unsafe if used without seat belts, and if jury accepted argument that air bag was supplemental restraint, it went to crux of whether passenger used air bag as it was designed. (Per Chandler, J., with four judges concurring and one judge concurring in result.) Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296. Products Liability ☞ 81.5

Report prepared by safety engineer for worker's employer in connection with fatal accident, stating that other plant employees besides worker in question had stood on dashboard of forklift and used short rod to release safety hatch on trash hopper for purpose of dumping hopper, was admissible under business records exception to hearsay rule, in products liability action against manufacturers of forklift and hopper, to show reasonable foreseeability of accident in question. (Per McRae, P.J., with three justices concurring and two justices concurring in result.) Yale Materials Handling Corp. v. Brandon (Miss. 2002) 2002 WL 1038754.

Statement by coworker to deceased worker's wife, that method worker was using as he attempted to dump trash hopper from elevated height using a forklift had "been done a million times before," was a declaration against interest, as opposed to an admission against interest, for purposes of products liability action brought by worker's estate against manufacturers of forklift and hopper, where neither coworker nor employer was a party to the suit. (Per McRae, P.J., with three justices concurring and two justices concurring in result.) Yale Materials Handling Corp. v. Brandon (Miss. 2002) 2002 WL 1038754.

Declaration against interest made by coworker to deceased worker's widow, that method by which worker was attempting at time of fatal accident to dump contents of trash hopper using forklift had "been done a million times before," was inadmissible hearsay for purposes of products liability action brought by worker's estate against manufacturers of forklift and hopper, where estate did not show that either coworker or employer, through its

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

corporate representative, was unavailable to testify at trial. (Per McRae, P.J., with three justices concurring and two justices concurring in result.) Yale Materials Handling Corp. v. Brandon (Miss. 2002) 2002 WL 1038754.

Erroneous admission of declaration against interest made by coworker to deceased worker's widow, that method by which worker was attempting at time of fatal accident to dump contents of trash hopper using forklift had "been done a million times before," did not unfairly and substantially prejudice manufacturers of forklift and hopper in products liability action brought by worker's estate and was, at best, harmless error, where other evidence was admitted to show foreseeability of worker's conduct. (Per McRae, P.J., with three justices concurring and two justices concurring in result.) Yale Materials Handling Corp. v. Brandon (Miss. 2002) 2002 WL 1038754.

Tire manufacturer "opened the door," in products liability action arising from fatal rollover accident that resulted from separation of tire tread, to re-direct testimony by expert for motorists' survivors concerning expert's familiarity with and involvement in other cases involving same manufacturer, where manufacturer attacked expert's credibility on cross-examination. Cooper Tire and Rubber Co. v. Tuckier (Miss. 2002) 826 So.2d 679, rehearing denied, certiorari denied 123 S.Ct. 97, 537 U.S. 820, 154 L.Ed.2d 27. Evidence ☞ 558.1

Survivors of motorist killed in rollover accident caused by separation of tire tread could properly refer, in products liability action against tire manufacturer, to blank pages in quality assurance manual obtained from manufacturer during discovery; manual was offered into evidence by the plaintiffs without any objection from manufacturer, during the plaintiffs' cross-examination of manufacturer's employee, and manual was relevant to show quality requirements for tire as set forth by manufacturer.  Cooper Tire and Rubber Co. v. Tuckier (Miss. 2002) 826 So.2d 679, rehearing denied, certiorari denied 123 S.Ct. 97, 537 U.S. 820, 154 L.Ed.2d 27.  Products Liability ☞ 81.5

Re-direct testimony by expert for survivors of motorist killed in rollover accident resulting from separation of tread on rear tire, that he had examined x-rays of the other three tires and had seen belted separations on two of them, was admissible in products liability action against tire manufacturer, though trial court had granted pretrial motion to exclude x-ray report, where manufacturer had attempted on cross-examination to destroy expert's credibility by showing that he had not personally inspected the other three tires. Cooper Tire and Rubber Co. v. Tuckier (Miss. 2002) 826 So.2d 679, rehearing denied, certiorari denied 123 S.Ct. 97, 537 U.S. 820, 154 L.Ed.2d 27. Evidence ☞ 558.1

Expert witness was not qualified to testify to electrical engineering industry standards as they existed at the time of manufacture of faulty circuit breaker, more than twenty-five years prior to trial; although expert believed relevant information was probably known at time of manufacture, he had no personal knowledge or training regarding industry standards or their development as they existed at that time. Fillingane v. Siemens Energy & Automation, Inc., 2002, 809 So.2d 737.  Evidence ☞ 540

Documents consisting mainly of correspondence between persons at asbestos product manufacturer and persons at laboratories where tests regarding asbestos were conducted on behalf of manufacturer were not admissible in asbestos products liability action, claiming a failure to warn, against a different asbestos manufacturer to show that defendant-manufacturer should have known product was dangerous, in absence of evidence that defendant-manufacturer

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

actually knew or should have known of documents. O'Flynn v. Owens-Corning Fiberglas, 2000, 759 So.2d 526.
Products Liability ⬤⟷ 81.1

Documents chronicling correspondence between president and general counsel for competing asbestos manufacturers
were not admissible in asbestos products liability action against a different manufacturer to show that
defendant-manufacturer should have known product was dangerous, as documents were not generally accessible
medical or scientific documents reporting on asbestos, and documents were not reasonably available knowledge
imputable to defendant-manufacturer. O'Flynn v. Owens-Corning Fiberglas, 2000, 759 So.2d 526. Products Liability ⬤⟷
81.1

Evidence of casino patron's prior medical history, which indicated that he had been treated for swelling in his legs prior
to injury he sustained when bar stool collapsed under his weight, was relevant and admissible in products liability case
arising out of fall from bar stool.  Hageney v. Jackson Furniture of Danville, Inc., 1999, 746 So.2d 912, rehearing
denied, certiorari denied.  Damages ⬤⟷ 168(1)

Denial of casino patron's motion in limine, requesting that bar stool manufacturer be precluded from presenting
testimony regarding or arguing any negligence on patron's part, was not prejudicial error in products liability action
simply because substance of manufacturer's argument and theory of case was allowed into evidence.  Hageney v.
Jackson Furniture of Danville, Inc., 1999, 746 So.2d 912, rehearing denied, certiorari denied.  Appeal And Error ⬤⟷
1043(1)

Probative value of evidence of alcoholic beverages consumed by casino patron and his wife prior to his injury when
bar stool collapsed was not outweighed by its prejudicial effect in products liability action against stool manufacturer;
patron's and his wife's state of sobriety was relevant in jury's assessment of their credibility in relating events
surrounding incident, and patron's consumption of alcohol was relevant to issue of whether he was contributorily
negligent. Rules of Evid., Rule 403.  Hageney v. Jackson Furniture of Danville, Inc., 1999, 746 So.2d 912, rehearing
denied, certiorari denied.  Evidence ⬤⟷ 146

Trial judge was within his discretion in overruling casino patron's motion in limine and excluding evidence of another
bar stool manufactured by defendant breaking at casino three months before;  the evidence regarding alleged failure
of a different bar stool some three months before patron's accident did not show that similar accidents occurred under
substantially similar circumstances and involved substantially similar components.  Hageney v. Jackson Furniture of
Danville, Inc., 1999, 746 So.2d 912, rehearing denied, certiorari denied. Evidence ⬤⟷ 141

Allowing attorney for dismissed defendant to question plaintiff's treating physician by way of his videotape deposition
did not cause jurors to be confused as to parties in products liability action brought by casino patron against
manufacturer of bar stool;  the plaintiff offered the deposition into evidence, and thus, substantive questions and
answers posed were admissible. Rules Civ.Proc., Rule 32(a)(4).  Hageney v. Jackson Furniture of Danville, Inc., 1999,
746 So.2d 912, rehearing denied, certiorari denied. Pretrial Procedure ⬤⟷ 203

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

Decision to sustain consumer's objection to evidence finding that presence or absence of shield and guards on places on combine unrelated to area in which consumer was injured were not relevant was within province of trial court and not an abuse of discretion in products liability action. Sperry-New Holland, a Div. of Sperry Corp. v. Prestage (Miss. 1993) 617 So.2d 248. Products Liability ☞ 81.1

Denial of mistrial in products liability action, after consumer attempted to admit certain of manufacturer's safety committee minutes even though court held them inadmissible, was not an abuse of discretion where only three references were made about minutes, one of which was elicited by manufacturer and not objected to it. Sperry-New Holland, a Div. of Sperry Corp. v. Prestage (Miss. 1993) 617 So.2d 248. Trial ☞ 18

Refusing to permit manufacturer to impeach consumer's father with prior inconsistent statement was not an abuse of discretion in products liability action; trial court refused to permit manufacturer to impeach father because statement was in form of opinion and was not independently admissible. Sperry-New Holland, a Div. of Sperry Corp. v. Prestage (Miss. 1993) 617 So.2d 248. Witnesses ☞ 379(3)

Exclusion of opinion evidence of experts that consumer was down in grain tank prior to accident involving combine, if error, was harmless where manufacturer was allowed to prove through another expert that it would be highly unlikely that consumer could have reached stick he kept on combine in way he said he did. Sperry-New Holland, a Div. of Sperry Corp. v. Prestage (Miss. 1993) 617 So.2d 248. Appeal And Error ☞ 1058(3)

3.1. ---- Instructions and diagrams, admissibility of evidence

Exclusion of diagrams of ten-year-old front seat passenger's injuries was warranted, in products liability action relating to passenger's death from impact with air bag, of picture in owner's manual showing sketches of adult person with arrows drawn to show parts of body where passenger had been injured, were not particularly graphic, where diagrams would not assist jury because autopsy report, which was read into evidence, thoroughly described passenger's injuries. (Per Chandler, J., with four judges concurring and one judge concurring in result.) Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296. Evidence ☞ 358

The probative value was not substantially outweighed by danger of unfair prejudice, as to admission, in inadequate-warning products liability action against automobile manufacturer relating to ten-year-old front seat passenger's death from impact from air bag, of picture in owner's manual showing small child in rearward-facing child seat on front passenger seat and caption accompanying picture, even if such evidence could have confused the issues by encouraging jury to find for passenger's parents to punish manufacturer for misleading other parents who were not parties to the litigation; substance of warning had strong probative value, and trial court could avert prejudice by giving instruction limiting jury's consideration of manual to plaintiff parents' case. (Per Chandler, J., with four judges concurring and one judge concurring in result.) Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296.

Exclusion, on grounds of irrelevance, of picture in owner's manual for automobile showing small child in

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

rearward-facing child seat on front passenger seat, and exclusion of caption accompanying picture, violated evidence rule providing for admission of an entire document on fairness grounds, in inadequate-warning products liability action against automobile manufacturer, relating to ten-year-old front seat passenger's death from impact from air bag; trial court's ruling allowed manufacturer to introduce only portions of manual tending to show warnings were adequate, while excluding portions of manual that indicated otherwise. (Per Chandler, J., with four judges concurring and one judge concurring in result.) <u>Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296</u>. Evidence ☞ 383(12)

Picture, in owner's manual for automobile, showing small child in rearward-facing child seat on front passenger seat, and caption accompanying picture, were relevant to establish inadequacy of automobile manufacturer's warnings, in products liability action relating to ten-year-old front seat passenger's death from impact from air bag; picture allowed passenger's parents to make reasonable inference that if small child could safely ride in front passenger seat in rearward-facing child seat with its head positioned close to air bag, a larger, ten-year-old child could safely ride in front seat, and picture allowed reasonable inference that parents became confused by manufacturer's air bag warnings due to contradiction between picture/caption and instructions elsewhere in manual to always place children in the rear. (Per Chandler, J., with four judges concurring and one judge concurring in result.) <u>Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296</u>. Evidence ☞ 359(1)

<u>3.2</u>. ---- Hearsay exceptions, admissibility of evidence

Disclaimer in Special Crash Investigation (SCI) report that contractor prepared for National Highway Transportation and Safety Administration (NHTSA), that NHTSA did not necessarily accept the report as its own findings, made the report untrustworthy, and thus, the report was not admissible under hearsay exception for public records, in products liability action relating to ten-year-old front seat passenger's death from injuries from impact with automobile's air bag. (Per Chandler, J., with four judges concurring and one judge concurring in result.) <u>Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296</u>. Evidence ☞ 333(1)

<u>3.3</u>. ---- Expert witnesses, admissibility of evidence

Testimony from tobacco company's design expert regarding the company's reasonableness in addressing smoking and health issues was in regard to company's research and development activities and nothing else, and thus, evidence regarding company's marketing efforts that had previously been excluded was not admissible for the purpose of impeaching expert. <u>Nunnally v. R.J. Reynolds Tobacco Co. (Miss. 2004) 2004 WL 583821</u>. Evidence ☞ 560

Expert opinion testimony from forensic psychiatrist in negligence action against tobacco company regarding husband's ability to quit smoking was admissible, where expert based his scientific opinion on deposition testimony of husband's wife, mother, father, siblings, friends from husband's childhood, friends from school and his adult life, teachers at various stages in his life, and physicians who treated him, and expert also reviewed the medical records of the physicians who treated husband. <u>Nunnally v. R.J. Reynolds Tobacco Co. (Miss. 2004) 2004 WL 583821</u>. Evidence ☞ 555.10

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

Accident data from National Accident Sampling System (NASS) database, consisting of accident information that National Highway Transportation and Safety Administration (NHTSA) selected for in-depth investigation of causal factors, was of a type reasonably relied upon by biomechanical experts, and thus, biomechanical consultant could offer expert opinions based on such data, in products liability action against automobile manufacturer, relating to ten-year-old front seat passenger's death from air bag impact. (Per Chandler, J., with four judges concurring and one judge concurring in result.)  Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296.  Evidence ☞ 555.8(1)

Testimony of biomechanical consultant, in products liability action relating to death of ten-year-old front seat passenger from air bag impact, that passenger's injuries would have been minimal had she been wearing a seat belt, was not beyond consultant's area of expertise; consultant was qualified as expert in area of biomechanics and particularly occupant kinematics, which was the study of how a human body moves in a car crash. (Per Chandler, J., with four judges concurring and one judge concurring in result.)  Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296.  Evidence ☞ 542

Testimony of automobile manufacturer's expert on warnings, regarding statements that consumer groups had made to National Highway Transportation and Safety Administration (NHTSA) during NHTSA's process of promulgating Federal Motor Vehicle Safety Standard 208 (FMVSS 208) for air bag warnings, was admissible in inadequate-warning products liability action against automobile manufacturer, relating to ten-year-old front seat passenger's death from impact from air bag, even if such statements were inadmissible hearsay; such statements were not offered for their truth, but instead to explain how witness reached his expert opinion on why NHTSA selected certain criteria for FMVSS 208 and rejected others. (Per Chandler, J., with four judges concurring and one judge concurring in result.)  Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296.

After trial court ruled that, because of automobile manufacturer's untimely designation of employee of air bag manufacturer as expert, such witness could not offer expert testimony in products liability action against automobile manufacturer relating to ten-year-old front seat passenger's death from impact with air bag, such witness could not testify as to how tank testing of air bags for inflator aggressiveness worked or as to his calculation of peak pressure and rise rate from tank test curves for automobile's air bag; such testimony was not lay testimony because it required experience or expertise beyond that of the average, randomly selected adult. (Per Chandler, J., with four judges concurring and one judge concurring in result.)  Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296.  Evidence ☞ 483(1)

Proffered expert testimony of doctor who performed autopsy on ten-year-old front seat passenger who died from impact with air bag, that he would not expect to see a fatality in a crash below 20 miles per hour, was beyond doctor's field of expertise as pathologist and therefore was inadmissible in products liability action, though doctor had performed over 18,000 autopsies, several thousand of which involved deaths in automobile collisions. (Per Chandler, J., with four judges concurring and one judge concurring in result.)  Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296.  Evidence ☞ 542

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

Failure of parents' grief counselor to keep treatment records warranted exclusion of grief counselor's expert testimony, in products liability action relating to ten-year-old passenger's death from impact with automobile's air bag; automobile manufacturer had no documentation to examine in preparation for grief counselor's testimony. (Per Chandler, J., with four judges concurring and one judge concurring in result.) <u>Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296</u>.  Pretrial Procedure 🔑 434

Expert testimony of grief counselor for parents of ten-year-old front seat passenger who died from injuries from impact with automobile's air bag was not rendered inadmissible based on parents' failure to state the grounds for expert's opinion in their discovery response and their failure to provide automobile manufacturer with grief counselor's curriculum vitae until one week before trial, in products liability action, where manufacturer never sought clarification of the inadequate discovery response and declined to depose grief counselor. (Per Chandler, J., with four judges concurring and one judge concurring in result.) <u>Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296</u>. Pretrial Procedure 🔑 45

Under *Frye* test for admissibility of expert testimony, expert in human factors psychology in the area of warnings was qualified to testify, in products liability action relating to ten-year-old front seat passenger's death from impact with air bag, regarding adequacy of automobile manufacturer's air bag warnings, though the witness did not have expert-level knowledge regarding air bag engineering. (Per Chandler, J., with four judges concurring and one judge concurring in result.) <u>Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296</u>. Evidence 🔑 539

Expert witnesses for parents of ten-year-old front seat passenger could offer opinions that were based on Special Crash Investigation (SCI) report that contractor prepared for National Highway Transportation and Safety Administration (NHTSA), in products liability action against automobile manufacturer alleging impact from air bag caused passenger's death, if the report contained facts or data of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject. (Per Chandler, J., with four judges concurring and one judge concurring in result.) <u>Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296</u>. Evidence 🔑 555.8(1)

<u>3.35</u>. ---- Lay witness testimony, admissibility of evidence

After trial court ruled that, because of automobile manufacturer's untimely designation, as expert, of biomechanical engineer who had served on advisory committee that developed criteria that restraint system engineers should consider in developing air bag systems, such witness could not offer expert testimony in products liability action against automobile manufacturer relating to ten-year-old front seat passenger's death from impact with air bag, such witness could give lay factual testimony regarding how the advisory committee worked, but he could not testify as to how air bag system worked, because such testimony constituted specialized knowledge beyond that of the ordinary person. (Per Chandler, J., with four judges concurring and one judge concurring in result.) <u>Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296</u>. Evidence 🔑 505

<u>3.4</u>. ---- Documentary evidence, admissibility of evidence

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

Special Crash Investigation (SCI) reports compiled by National Highway Transportation and Safety Administration (NHTSA), consisting of detailed information on approximately 200 air bag accidents, constituted data of a type reasonably relied upon by experts in field of biomechanics, and thus, parents of ten-year-old front seat passenger who died from air bag impact could use such reports, in products liability action, to cross-examine automobile manufacturer's biomechanics expert regarding expert's testimony that data from National Accident Sampling System (NASS) database showed that there were no air bag fatalities to children ages four to eleven wearing seat belts. (Per Chandler, J., with four judges concurring and one judge concurring in result.) <u>Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296</u>. Evidence 558(9)

Letter that automobile manufacturer received from National Transportation and Safety Board (NTSB) after parents had leased automobile, discussing public's unawareness of air bag danger for children riding in front passenger seats and recommending a media campaign, was relevant, in products liability action, to rebut manufacturer's "open and obvious danger" defense, even if NTSB lacked regulatory authority over automobile manufacturers. (Per Chandler, J., with four judges concurring and one judge concurring in result.) <u>Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296</u>. Products Liability 81.5

3.5. ---- Discretion, admissibility of evidence

Although industry standards published subsequent to manufacture of product were provided to defendant manufacturer during discovery, containing language identical to earlier edition offered by plaintiff during products liability trial, trial court did not abuse its discretion by excluding admission of earlier edition of publication that was not provided to manufacturer during discovery; even if manufacturer should have known that plaintiff would attempt to present documents regarding industry standards for the year of manufacture, manufacturer was prejudiced by incomplete discovery as result of sudden need to provide rebuttal evidence on critical issue of when manufacturer had knowledge of relevant standards. <u>Fillingane v. Siemens Energy & Automation, Inc., 2002, 809 So.2d 737</u>. Pretrial Procedure 434

3.55. ---- Photographs and video, admissibility of evidence

Exclusion of autopsy photographs was warranted, in products liability action relating to ten-year-old front seat passenger's death from impact with air bag, where photographs were inflammatory and they would not assist jury because autopsy report was read into evidence and contained extensive description of passenger's injuries. (Per Chandler, J., with four judges concurring and one judge concurring in result.) <u>Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296</u>. Evidence 359(2)

Three videos that automobile manufacturer prepared for the litigation, showing sled tests of crashes with ten-year-old-sized dummy wearing or not wearing seat belts in crashes in which air bag did or did not deploy, were inadmissible, in products liability action relating to death of ten-year-old front seat passenger because of impact from air bag; tests altered disputed facts regarding the crash in which passenger was killed, including velocity change, such alterations helped assure test results supported manufacturer's arguments, and cross-examination was insufficient

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

mechanism for attacking credibility of videos because they involved highly technical facts. (Per Chandler, J., with four judges concurring and one judge concurring in result.)  Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296.  Evidence ☞ 150

3.56. ---- Relevance, admissibility of evidence

A 1973 memorandum from tobacco company scientist regarding new brands of cigarettes for the youth market was inadmissible, in negligence action brought by widow, for the purpose of showing that husband was not negligent in taking up smoking, but rather succumbed to peer pressure, where husband was 21 years old at the time of the memorandum and had already become a habitual smoker. Nunnally v. R.J. Reynolds Tobacco Co. (Miss. 2004) 2004 WL 583821. Products Liability ☞ 81.1

Public statement made by tobacco company in 1954 regarding possible link between lung cancer and cigarette use and company's research efforts into such link was irrelevant to negligence claim against tobacco company brought by widow of lung cancer victim, and thus, statement was inadmissible, where widow's husband was less than two years old when the statement was published, and it was apparent that he could not have read, understood, or relied on the statement in any meaningful way.  Nunnally v. R.J. Reynolds Tobacco Co. (Miss. 2004) 2004 WL 583821.  Products Liability ☞ 81.1

3.6. Spoliation of evidence

Letter from employee's counsel requesting opportunity to inspect machine that caused injury to employee's leg was insufficient to establish duty by employer to preserve machine for use in employee's litigation against machine's manufacturer; there was nothing further in record concerning machine until subpoena was issued nearly 19 months later requesting documentation concerning whereabouts of machine. Richardson v. Sara Lee Corp. (Miss. 2003) 847 So.2d 821.  Torts ☞ 13

4. Risk-utility analysis

The risk-utility analysis applies under Mississippi law to design defect cases, not manufacturing defect cases. Leverette v. Louisville Ladder Co. (C.A.5 (Miss.) 1999) 183 F.3d 339, certiorari denied 120 S.Ct. 982, 528 U.S. 1138, 145 L.Ed.2d 932.  Products Liability ☞ 8;  Products Liability ☞ 11

Court of Appeals would not apply risk-utility analysis to plaintiff worker's appeal from grant of judgment on pleadings to defendant ladder manufacturer in products liability action arising from work-related fall, as such analysis applied under Mississippi law only to design defect cases, and worker did not assert design defect theory at trial.  Leverette v. Louisville Ladder Co. (C.A.5 (Miss.) 1999) 183 F.3d 339, certiorari denied 120 S.Ct. 982, 528 U.S. 1138, 145 L.Ed.2d 932.  Federal Courts ☞ 614

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

Risk-utility test for determining whether a product is defective and unreasonably dangerous, as approved in decision of state Supreme Court, was controlling standard in products liability action that was filed before that decision and was not subject to substantive provisions of Products Liability Act that took effect after that decision. Smith v. Mack Trucks, Inc. (Miss. 2002) 819 So.2d 1258.  Courts ☜ 100(1)

Manufacturer of automatic doors that injured hotel patron was not negligent for failing to utilize mat system instead of infrared sensor it installed, absent evidence that infrared sensors proved even more unreliable than proposed alternative mat system, where older mat system was abandoned in part because of frequency of accidents, and evidence indicated that mat system was less efficient than infrared sensor. Wolf v. Stanley Works, 2000, 757 So.2d 316. Products Liability ☜ 42

In "risk-utility" analysis, product is "unreasonably dangerous" if reasonable person would conclude that danger-in-fact, whether foreseeable or not, outweighs utility of product. Sperry-New Holland, a Div. of Sperry Corp. v. Prestage (Miss. 1993) 617 So.2d 248.  Products Liability ☜ 8

Under "risk-utility" analysis, even if user appreciates danger of product, he can still recover for any injury resulting from danger provided that utility of product is outweighed by danger that product creates. Sperry-New Holland, a Div. of Sperry Corp. v. Prestage (Miss. 1993) 617 So.2d 248.  Products Liability ☜ 8

"Patent danger" bar is no longer applicable in products liability cases given adoption of "risk-utility" analysis. Sperry-New Holland, a Div. of Sperry Corp. v. Prestage (Miss. 1993) 617 So.2d 248.  Products Liability ☜ 8

"Risk-utility" analysis for products liability cases best protects both manufacturer and consumer and does not create duty on manufacturer to create completely safe product; instead, manufacturer is charged with duty to make its product reasonably safe, regardless of whether user is aware of product's dangerousness. Sperry-New Holland, a Div. of Sperry Corp. v. Prestage (Miss. 1993) 617 So.2d 248.  Products Liability ☜ 10

Under "risk-utility" test for determining products liability, either judge or jury can balance utility and danger-in-fact, or risk, of product.  Sperry-New Holland, a Div. of Sperry Corp. v. Prestage (Miss. 1993) 617 So.2d 248. Products Liability ☜ 87.1

Issue of whether combine was defective when it left manufacturer was for the jury in strict liability action. Sperry-New Holland, a Div. of Sperry Corp. v. Prestage (Miss. 1993) 617 So.2d 248.  Products Liability ☜ 91

"Risk-utility" theory of recovery, rather than consumer expectations theory, applied in products liability action. Sperry-New Holland, a Div. of Sperry Corp. v. Prestage (Miss. 1993) 617 So.2d 248.  Products Liability ☜ 1

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

<u>5</u>. Alternative designs

Conveyor manufacturer's concession in products liability case that it did not contest feasibility of alternative designs proposed by plaintiff's expert, but that defendant did claim that subsequent designs did not serve identified functions that its conveyor served, did not relieve plaintiff of requirement under Daubert that she independently establish technical basis for utility and safety of proposed alternative designs; manufacturer did not stipulate that alternative designs did not impair "utility, usefulness, practicability or desirability of the product to users or consumers," within meaning of Mississippi law. <u>Fed.Rules Evid.Rule 702, 28 U.S.C.A.</u>; Miss.Code 1972, § 11-1-63(f)(ii). <u>Watkins v. Telsmith, Inc. (C.A.5 (Miss.) 1997) 121 F.3d 984</u>.

<u>5.5</u>. Presumptions and burdens of proof

In strict liability or negligence cases concerning pharmaceuticals, drug manufacturers' liability turns on the adequacy of the accompanying warnings; additionally, even if the warning is inadequate, the burden is on the plaintiffs to show than an adequate warning would have altered the doctor's conduct who prescribed the medication. <u>Janssen Pharmaceutica, Inc. v. Armond (Miss. 2004) 2004 WL 307449</u>. Products Liability 〰 77

In a products liability action, a plaintiff has the burden of showing that the defect that allegedly was the proximate cause of injury existed when the product left the manufacturer's control and that the defect rendered the product unreasonably dangerous; accordingly, the proof must show that no material change in the product occurred after leaving the manufacturer's control. <u>Hobson v. Waggoner Engineering, Inc., 2003, 2003 WL 21789396</u>. Products Liability 〰 75.1

<u>5.75</u>. Arguments of counsel

Plaintiffs' counsel's closing argument in products liability action against drug manufacturer were intended to improperly inflame and prejudice the jury, and thus, manufacturer was entitled to a new trial; although the trial court had granted manufacturer a directed verdict at the close of evidence regarding the negligent misrepresentation claim and the only issue before the jury was the adequacy of the drug's warnings, plaintiffs' counsel made numerous references to alleged false and misleading promotional activities and suggested the jury send a message to the manufacturer by basing the amount of damages solely on the finances of the manufacturer, which was in essence an argument for a punitive damages award for intentional fraud. <u>Janssen Pharmaceutica, Inc. v. Bailey (Miss. 2004) 2004 WL 1066825</u>. New Trial 〰 29

<u>6</u>. Jury instructions

Plaintiff casino patron who suffered knee injury when he fell on gang plank connecting gambling barge to shore was not entitled to adverse inference instruction, in his resulting action against casino, based on casino's alleged bad faith

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

destruction of video tape depicting scene of the fall, in view of danger of unfair prejudice and confusion of the issues. Reddin v. Robinson Property Group Ltd. Partnership (C.A.5 (Miss.) 2001) 239 F.3d 756.  Federal Civil Procedure ☜ 2173

The risk-utility analysis used in tobacco product liability suit necessarily included a negligence calculus by the jury, and thus, trial court was not required to include the requested negligence instruction.  Nunnally v. R.J. Reynolds Tobacco Co. (Miss. 2004) 2004 WL 583821.  Products Liability ☜ 96.1

Evidence did not warrant instruction regarding automobile manufacturer's assumption of common law post-sale duty to warn, where parents of ten-year-old front seat passenger killed by air bag impact did not present evidence that they relied on any promise of manufacturer to furnish them with updated air bag warnings after they leased the vehicle. (Per Chandler, J., with four judges concurring and one judge concurring in result.)  Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296.  Products Liability ☜ 98

If the jury is instructed on failure to warn pursuant to the Mississippi Products Liability Act (MPLA), the court need not present the jury with a separate negligence instruction on inadequate warnings. (Per Chandler, J., with four judges concurring and one judge concurring in result.)  Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296. Products Liability ☜ 96.1

Instructing jury on the "consumer expectations" test for determining whether a product is defective and unreasonably dangerous was reversible error in products liability action involving allegedly defective fuel tank system on truck in which a risk-utility analysis was the governing standard.  Smith v. Mack Trucks, Inc. (Miss. 2002) 819 So.2d 1258. Appeal And Error ☜ 1064.1(8);  Products Liability ☜ 96.1

The trial court can and should refuse to instruct the jury when the instruction is an incorrect statement of applicable law.  Holmes v. Wink, 2001, 811 So.2d 330.  Trial ☜ 261

Pedestrian claiming that engineer was negligent in design and application of galvanized steel plate to fill gap between pier and bulkhead was not entitled to a jury instruction stating that upon a finding of a statute or code violation and a finding that the pedestrian was in the protected class "then you shall return a verdict in [pedestrian]'s favor," as instruction failed to mention proximate cause and pedestrian did not show she was entitled to a negligence per se instruction.  Holmes v. Wink, 2001, 811 So.2d 330. Negligence ☜ 1738;  Products Liability ☜ 96.1

Jury instruction on strict liability that followed Restatement (Second) of Torts §§ 402A verbatim properly instructed jury with regard to the elements of strict liability, and products liability plaintiff was not entitled to an instruction which further defined the term "unreasonably dangerous." O'Flynn v. Owens-Corning Fiberglas, 2000, 759 So.2d 526. Products Liability ☜ 96.1

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

Issue of whether asbestos products liability plaintiffs were entitled to instruction on effect of settling defendants was moot in light of jury's finding of no liability on part of non-settling defendant. O'Flynn v. Owens-Corning Fiberglas, 2000, 759 So.2d 526.  Appeal And Error ☞ 843(2)

Manufacturer of bar stool was entitled to instructions on contributory negligence and/or assumption of the risk in products liability action brought by casino patron after stool collapsed;  manufacturer's theory of the case was that patron's misuse of bar stool by tipping stool back on its two rear legs was sole proximate cause of injuries, if any, and record revealed that because of patron's size he was careful about type of chair in which he would sit and how he would sit in chair.  Hageney v. Jackson Furniture of Danville, Inc., 1999, 746 So.2d 912, rehearing denied, certiorari denied. Products Liability ☞ 98

Manufacturer of bar stool was entitled to instructions on contributory negligence and/or assumption of the risk in products liability action brought by casino patron after stool collapsed;  manufacturer's theory of the case was that patron's misuse of bar stool by tipping stool back on its two rear legs was sole proximate cause of injuries, if any, and record revealed that because of patron's size he was careful about type of chair in which he would sit and how he would sit in chair.  Hageney v. Jackson Furniture of Danville, Inc., 1999, 746 So.2d 912, rehearing denied, certiorari denied. Products Liability ☞ 98

Jury instructions, read together, properly instructed jury under "risk-utility" analysis in products liability action and, thus, exclusion of manufacturer's requested instruction on failure to warn was not reversible error.  Sperry-New Holland, a Div. of Sperry Corp. v. Prestage (Miss. 1993) 617 So.2d 248. Trial ☞ 295(6)

7. Design

Under Mississippi law, failure of manufacturer of telescoping mast to include a proximity warning device and to insulate the mast to prevent the conduction of electricity did not render the mast defective for design defect, as required to support design defect claim brought by survivors of news van worker who was electrocuted when mast came into contact with power lines; when the mast left manufacturer's control no telescoping masts, whether in the broadcast industry or any other, were insulated so as not to conduct electricity or were equipped with any sort of proximity warning device, and the danger of electrocution if the mast was raised so that it came into contact with an overhead power line was well recognized.  Austin v. Will-Burt Co. (C.A.5 (Miss.) 2004) 2004 WL 369920.  Electricity ☞ 17

Under Mississippi law, no alternative designs or safety devices were available and within the state of the art of mast safety design at time telescoping mast was manufactured which would have prevented mast from coming into contact with power lines, and thus manufacturer of mast was not liable to survivors of news van worker who was electrocuted when mast touched power lines; although a power line detector was used in other industries, no power line detector was available for use in the broadcast industry until 14 years later.  Austin v. Will-Burt Co. (N.D.Miss. 2002) 232 F.Supp.2d 682.  Electricity ☞ 17

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

Surgery patient who brought products liability action based on defective design against manufacturer of orthopedic device, but who failed to identify even generally the nature of the alleged design defect, could not recover under Mississippi law. <u>Coleman v. Danek Medical Inc. (S.D.Miss. 1999) 43 F.Supp.2d 637</u>. Products Liability 🔑 46.1

Plaintiff's allegation that cigarette manufacturers manipulated the content of what should have been "good tobacco" by adding harmful ingredients provided him at least the possibility of proving the product was defective in design, rather than in its inherent characteristic, for purposes of Mississippi statute governing defective product claims. <u>Thomas v. R.J. Reynolds Tobacco Co. (S.D.Miss. 1998) 11 F.Supp.2d 850</u>. Products Liability 🔑 59

Plaintiff alleging defective design of cigarettes was not required to prove a feasible design alternative, for purposes of Mississippi statute governing defective product claims, on motion to remand; he need only show that a possibility existed that he could prevail on his claim and, even so, allegation that cigarette manufacturers added harmful ingredients to tobacco made it is possible to prove a feasible design alternative would have been to avoid adding such ingredients. <u>Thomas v. R.J. Reynolds Tobacco Co. (S.D.Miss. 1998) 11 F.Supp.2d 850</u>. Products Liability 🔑 59

Evidence, in malpractice action brought against physician by relative of patient who died from complications of having caesarian birth, was not sufficient to support instruction stating that physician should be held to the heightened standard of care for a rheumatologist; physician did not admit that he assumed responsibility as a specialist in another medical discipline, and physician was only responsible for patient's obstetrical care, not treatment related to patient's lupus. <u>Adkins v. Sanders (Miss. 2004) 2004 WL 908287</u>. Health 🔑 827

<u>8</u>. Warning

Under Mississippi law, manufacturer of telescoping mast had no post-sale duty to warn of dangers associated with mast, as required to support claims brought by survivors of new van worker who was electrocuted when telescoping mast came into contact with power lines, given that the warnings were adequate when the mast left the manufacturer's control. <u>Austin v. Will-Burt Co. (C.A.5 (Miss.) 2004) 2004 WL 369920</u>. Electricity 🔑 17

Under Mississippi law, where the party to be warned has been informed of the danger, the manufacturer's failure to warn thereof is not shown to be a proximate cause, at least absent evidence that a manufacturer's warning would have changed that party's conduct. <u>Austin v. Will-Burt Co. (C.A.5 (Miss.) 2004) 2004 WL 369920</u>. Products Liability 🔑 15

Under Mississippi law, news van worker was adequately warned of the danger of electrocution presented by using the van's telescoping mast, and such danger was known or open and obvious to news van worker, and thus the telescoping mast was not defective for failing to contain adequate warnings or instructions when it left the control of the manufacturer, where the warnings on the mast clearly connected contact with power lines and the risk of death and station manager who trained worker warned that before raising the mast, worker should check for overhead obstacles such as power lines. <u>Austin v. Will-Burt Co. (C.A.5 (Miss.) 2004) 2004 WL 369920</u>. Electricity 🔑 17

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

In Mississippi, a warning may be held adequate as a matter of law where the adverse effect was one that the manufacturer specifically warned against. Austin v. Will-Burt Co. (C.A.5 (Miss.) 2004) 2004 WL 369920. Products Liability ☞ 14

Under Mississippi law, telescoping mast used on television station's news van was not defective for failing to contain adequate warnings or instructions when it left the control of the manufacturer, and thus mast manufacturer was not liable for death of news van worker who was killed when the mast came into contact with power lines, where the mast contained labels located on the base of the mast in bright yellow with red and black lettering specifically cautioning the operator that he could be killed if the mast were raised near power lines. Austin v. Will-Burt Co. (N.D.Miss. 2002) 232 F.Supp.2d 682. Electricity ☞ 17

Under Mississippi law, sales representatives of pharmaceutical manufacturer did not have duty to warn users of Rezulin of potential dangers and side effects of product, absent evidence that users received product from those representatives. Johnson v. Parke-Davis (S.D.Miss. 2000) 114 F.Supp.2d 522. Products Liability ☞ 46.2

Under Mississippi law, sales representatives of pharmaceutical manufacturer did not have duty to warn of potential dangers and side effects of product. Johnson v. Parke-Davis (S.D.Miss. 2000) 114 F.Supp.2d 522. Products Liability ☞ 46.1

Under Mississippi law and learned intermediary doctrine, where surgeon in using orthopedic device had been specifically aware of risks of adverse effects later claimed by patient, and had disclosed same risks to patient, device's manufacturer was not liable for failure to warn in patient's products liability action, even though manufacturer's written warnings in package insert did not mention use of device for specific purpose that was subject of action. Coleman v. Danek Medical Inc. (S.D.Miss. 1999) 43 F.Supp.2d 637. Products Liability ☞ 46.1

Under "learned intermediary doctrine," manufacturer has duty to adequately warn prescribing physician of any known adverse effects which might result from use of its product, and warning may be held adequate as a matter of law where adverse effect that was ultimately visited upon patient was one that manufacturer specifically warned against. Coleman v. Danek Medical Inc. (S.D.Miss. 1999) 43 F.Supp.2d 637. Products Liability ☞ 46.1

Under Mississippi law, manufacturer of orthopedic device used in spinal fusion surgery could not be held liable to patient, under failure to warn theory of products liability, for any misrepresentations made to patient by surgeon regarding risks of surgery, so long as surgeon was himself adequately apprised of all relevant information regarding device. Coleman v. Danek Medical Inc. (S.D.Miss. 1999) 43 F.Supp.2d 637. Products Liability ☞ 46.1

A product may be unreasonably dangerous if the manufacturer fails to warn of a non-obvious risk associated with the normal use of the product; when the product in question is a prescription drug, under the learned intermediary doctrine, the manufacturer's failure to warn the patient of the product's risks does not render the product defective or

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

unreasonably dangerous so long as the manufacturer adequately warns the learned intermediary.  Janssen Pharmaceutica, Inc. v. Bailey (Miss. 2004) 2004 WL 1066825.  Products Liability ⟬⟭ 46.2

In failure to warn product liability actions, an adequate warning is one reasonable under the circumstances.  Janssen Pharmaceutica, Inc. v. Bailey (Miss. 2004) 2004 WL 1066825.  Products Liability ⟬⟭ 14

Mississippi does not impose on a manufacturer a post-sale duty to warn. (Per Chandler, J., with four judges concurring and one judge concurring in result.)  Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296. Products Liability ⟬⟭ 14

Picture, in owner's manual for automobile, showing small child in rearward-facing child seat on front passenger seat, and caption accompanying picture, were relevant to establish inadequacy of automobile manufacturer's warnings, in products liability action relating to ten-year-old front seat passenger's death from impact from air bag, even if passenger's parents did not read the manual, where parents introduced evidence that warning on sun visor, which directed the reader to owner's manual, was inadequate because it was not noticeable, and introduced evidence that they would have noticed and heeded alternative warning. (Per Chandler, J., with four judges concurring and one judge concurring in result.)  Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296.  Evidence ⟬⟭ 359(1)

Subcontractor that manufactured and installed liner for sewage lagoon had no duty to warn worker at construction site of slick or slippery nature of liner; subcontractor had clearly warned general contractor that liner was hazardous, liner's dangerous nature when wet would be known to ordinary user, liner's slippery nature was obvious, and subcontractor had no control or supervision over work site after completing its work there almost one year before worker's death.  Hobson v. Waggoner Engineering, Inc., 2003, 2003 WL 21789396. Products Liability ⟬⟭ 62

Under the "learned intermediary doctrine," pharmaceutical companies are required to warn only the prescribing physician of dangers inherent in its products, because the prescribing physician acts as a "learned intermediary" between the manufacturer and the consumer.  Moore ex rel. Moore v. Memorial Hosp. of Gulfport (Miss. 2002) 825 So.2d 658.  Products Liability ⟬⟭ 46.2

Under the learned intermediary doctrine, pharmacy had no duty to warn pregnant patient of dangers inherent in her use of prescribed medication, where there was no evidence that pharmacy knew the patient was pregnant and pharmacy filled the prescriptions in quantities consistent with recommended dosage guidelines.  Moore ex rel. Moore v. Memorial Hosp. of Gulfport (Miss. 2002) 825 So.2d 658.  Products Liability ⟬⟭ 46.2

Learned intermediary doctrine, under which pharmaceutical companies are required to warn only the prescribing physician of dangers inherent in its products, extends to pharmacists, such that pharmacists owe no legal duty to warn in the context of prescription medication.  Moore ex rel. Moore v. Memorial Hosp. of Gulfport (Miss. 2002) 825 So.2d 658.  Products Liability ⟬⟭ 46.2

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

Exceptions to the learned intermediary doctrine as applied to pharmacists, under which a pharmacist would be required to warn only the prescribing physician of dangers inherent in prescribed medication, exist where it is undisputed that a plaintiff had informed the pharmacy of health problems which contraindicated the use of the drug in question, or where a pharmacist fills a prescription in a quantity inconsistent with the recommended dosage guidelines. Moore ex rel. Moore v. Memorial Hosp. of Gulfport (Miss. 2002) 825 So.2d 658. Products Liability ☞ 46.2

On failure to warn theory of strict liability cause of action, jury must consider, in considering what knowledge the defendant had or should have had, what the state of the art was at the time the defendant's product was marketed; the "state of the art" is those things which were generally known to the medical and scientific community about a particular product at a given point in time by the application of reasonable, developed, human skill and foresight. O'Flynn v. Owens-Corning Fiberglas, 2000, 759 So.2d 526. Products Liability ☞ 14

Although a manufacturer is obligated to keep informed of scientific knowledge and discoveries relating to its products, a manufacturer is not automatically required to know what the state of the art is at a particular time, and is charged only with the duty to exercise reasonable care to keep abreast of the developments in the medical and scientific community relating to its products. O'Flynn v. Owens-Corning Fiberglas, 2000, 759 So.2d 526. Products Liability ☞ 14

The term "state of the art" for purposes of failure to warn theory of strict liability does not necessarily mean what one doctor, scientist, or person in the industry or another industry might have known at a given time if such knowledge was not known to the scientific, medical, insulation or other industrial community, but means what was generally accepted or known about the subject by those who were knowledgeable in the scientific, medical, insulation and other industrial communities at the time in question. O'Flynn v. Owens-Corning Fiberglas, 2000, 759 So.2d 526. Products Liability ☞ 14

The state of the art, for purposes of failure to warn theory of strict liability, is not an unchanging level of knowledge, but is constantly altered by scientific and medical advances. O'Flynn v. Owens-Corning Fiberglas, 2000, 759 So.2d 526. Products Liability ☞ 14

Automatic door manufacturer was not negligent for failing to adequately warn and instruct hotel patron injured by door not to walk slowly through door, absent evidence that desired warning would have had any causative impact, where patron and patron's husband testified that they did not read existing warnings, and that they walked through door at a normal pace. Wolf v. Stanley Works, 2000, 757 So.2d 316. Products Liability ☞ 42

Trial court was not required to give failure to warn instruction in products liability action against manufacturer of bar stool to recover damages for injuries allegedly sustained when stool collapsed, where potential danger in tipping bar stool, while sitting in it, was obvious. Hageney v. Jackson Furniture of Danville, Inc., 1999, 746 So.2d 912, rehearing denied, certiorari denied. Products Liability ☞ 96.1

When a plaintiff is relying on statute providing that manufacturer or seller is not liable if products liability plaintiff

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

does not prove by a preponderance of evidence that product was defective because it failed to contain adequate warnings or instructions, the known or open and obvious danger defense is a factor to be considered by the jury in determining whether a product is unreasonably dangerous. Hageney v. Jackson Furniture of Danville, Inc., 1999, 746 So.2d 912, rehearing denied, certiorari denied.  Products Liability ⇒ 8;  Products Liability ⇒ 26

Trial court was not required to give failure to warn instruction in products liability action against manufacturer of bar stool to recover damages for injuries allegedly sustained when stool collapsed, where potential danger in tipping bar stool, while sitting in it, was obvious.  Hageney v. Jackson Furniture of Danville, Inc., 1999, 746 So.2d 912, rehearing denied, certiorari denied.  Products Liability ⇒ 96.1

When a plaintiff is relying on statute providing that manufacturer or seller is not liable if products liability plaintiff does not prove by a preponderance of evidence that product was defective because it failed to contain adequate warnings or instructions, the known or open and obvious danger defense is a factor to be considered by the jury in determining whether a product is unreasonably dangerous. Hageney v. Jackson Furniture of Danville, Inc., 1999, 746 So.2d 912, rehearing denied, certiorari denied.  Products Liability ⇒ 8;  Products Liability ⇒ 26

9. Economic loss

Claims against car manufacturer by car owner and his insurer arising out of car fire premised on theories of strict liability and negligence were barred by the economic loss doctrine, even if cause of fire was leaky oil seal, as oil seal was integral component part of a car, and thus remainder of car was not "other property."  State Farm Mut. Auto. Ins. Co. v. Ford Motor Co., 1999, 736 So.2d 384.  Products Liability ⇒ 17.1

10. Misuse

Under Mississippi law, the alleged failure of manufacturer of telescoping mast to adequately warn of dangers associated with mast was not the proximate cause of new van worker's death, as required to support claim brought by survivor's of worker who was electrocuted when mast came into contact with power lines, where station manager warned worker that before raising the mast he should check for obstacles overhead such as power lines and should maintain a 20-foot clearance from any power lines. Austin v. Will-Burt Co. (C.A.5 (Miss.) 2004) 2004 WL 369920. Electricity ⇒ 17

Under Mississippi law, news van's telescoping mast did not leave manufacturer's control in a defective condition which made it unreasonably safe for its intended use and purposes, and thus manufacturer was not liable on the theory of defective design to survivors of news van worker who was killed when the mast came into contact with power lines, where the mast was altered after it left the manufacturer's control, and the constant pressure switch that raised and lowered the mast was rigged with a bungee cord so as to allow the worker to leave the van and perform other functions. Austin v. Will-Burt Co. (N.D.Miss. 2002) 232 F.Supp.2d 682.  Electricity ⇒ 17

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

Whether casino patron's misuse of the bar stool, by leaning back on its two hind legs, was the sole proximate cause of his injuries was a question for jury in products liability case. Hageney v. Jackson Furniture of Danville, Inc., 1999, 746 So.2d 912, rehearing denied, certiorari denied.  Products Liability ☞ 92

11. Causation

Under Mississippi law, trucker who experienced fire in his truck allegedly resulting from thermal electric refrigerator failed to prove that refrigerator caused fire, as required to establish defective manufacturing and negligence claims against refrigerator manufacturer, though trucker's expert testified there was a short in refrigerator's plug; testimony did not prove that short was a manufacturing defect or that short caused fire.  Farris v. Coleman Co., Inc. (N.D.Miss. 2000) 121 F.Supp.2d 1014.  Electricity ☞ 19(5); Evidence ☞ 571(9)

Under Mississippi law, neither manufacturer of exercise machine for physical therapy of knee, nor physical therapy clinic, was liable for injury to patient's back while using machine, absent evidence that defect in machine or failure to monitor or maintain machine was cause of injury.  Edwards v. Campbell Clinic, Inc. (N.D.Miss. 2000) 90 F.Supp.2d 723.  Health ☞ 674; Products Liability ☞ 46.1

Under Mississippi law, allegedly defective condition of safe was not proximate cause of destruction of buyers' goods during fire; evidence showed that it was intense heat from fire, not any defect in safe, that proximately caused buyers' damages.  Fitzgerald v. Liberty Safe and Sec. Products, Inc. (C.A.5 (Miss.) 2003) 80 Fed.Appx. 897, 2003 WL 22477887, Unreported.  Products Liability ☞ 62

12. Res ipsa loquitur

Under Mississippi law, exercise machine for physical therapy of knee was not under exclusive control of its manufacturer or physical therapy clinic at time patient was injured while using it, and thus doctrine of res ipsa loquitur did not apply in patient's products liability action against manufacturer and clinic; at time of incident, patient was seated on machine performing exercises. Edwards v. Campbell Clinic, Inc. (N.D.Miss. 2000) 90 F.Supp.2d 723.  Health ☞ 818;  Products Liability ☞ 77

13. Strict liability

Although common law strict liability, as laid out in *State Stove*, is no longer the authority on the necessary elements of a products liability action, the concept of strict liability is still quite alive within the products liability statute, and the principles in *State Stove* are a driving force in products liability actions even after adoption of the statute.  Huff v. Shopsmith, Inc. (Miss. 2001) 786 So.2d 383.  Products Liability ☞ 5

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

13.5. Licensees and licensors

Trademark licensor was not strictly liable under apparent manufacturer theory in products liability action brought by beneficiaries of passenger, who was killed when van overturned due to defective tire, in light of evidence that trademark licensor was not engaged in any aspect of manufacture or distribution of allegedly defective tire marketed under its trademark. Harrison v. B.F. Goodrich Co., 2004, 2004 WL 422843.  Products Liability ☞ 39

14. Successor liability--In general

A successor corporation will assume the liabilities of the predecessor under Mississippi law when: (1) the successor expressly or impliedly agrees to assume the liabilities; (2) the transaction may be considered a de facto merger; (3) the successor may be considered a mere continuation of the predecessor; (4) the transaction was fraudulent. Massarella v. The Lane Co., Inc. (N.D.Miss. 2003) 2003 WL 23147167.  Corporations ☞ 445.1

Traditionally, only four exceptions to the general rule against successor liability have been recognized under Mississippi law: (1) when the successor expressly or impliedly agrees to assume the liabilities of the predecessor; (2) when the transaction may be considered a de facto merger; (3) when the successor may be considered a "mere continuation" of the predecessor; or (4) when the transaction was fraudulent. Huff v. Shopsmith, Inc. (Miss. 2001) 786 So.2d 383.  Corporations ☞ 445.1; Corporations ☞ 542(1); Corporations ☞ 579(.5); Corporations ☞ 590(1)

Successor corporation that purchased portion of predecessor corporation's assets was not "mere continuation" of predecessor corporation, for purposes of determining whether successor could be imputed with predecessor's liabilities; corporations remained two separate, viable corporate entities for years following purchase of assets. Huff v. Shopsmith, Inc. (Miss. 2001) 786 So.2d 383.  Corporations ☞ 579(5)

14.1. ---- Product line theory, successor liability

In Mississippi, the elements necessary to prevail on a product line theory of liability, which is an expansion of the mere continuation exception, include the successor producing the same product under a similar name, acquiring substantially all of the predecessor's assets leaving no more than a corporate shell, holding itself out to the public as a mere continuation of the predecessor, and benefitting from the good will of the predecessor. Massarella v. The Lane Co., Inc. (N.D.Miss. 2003) 2003 WL 23147167. Corporations ☞ 445.1

Successor corporation was not liable under "product line" theory of products liability for injuries caused by allegedly defective multipurpose woodworking tool manufactured by its predecessor corporation; successor was neither tool's inventor nor its original manufacturer, there was no definitive evidence that successor held itself out to public as mere continuation of predecessor or any other corporation, and, when successor acquired predecessor's assets, it did not

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

acquire substantially all of them and did not leave predecessor mere corporate shell.  Huff v. Shopsmith, Inc. (Miss. 2001) 786 So.2d 383. Corporations ☞ 445.1;  Corporations ☞ 579(5)

Under the "product line theory," successor corporations which undertake the manufacture of the same products as the predecessor are liable for injuries caused by defects in that product and inherit the liabilities associated with the product even if sold and manufactured by the predecessor corporation. Huff v. Shopsmith, Inc. (Miss. 2001) 786 So.2d 383.  Corporations ☞ 579(5)

Under the product line theory, certain elements must be present to subject a successor corporation to liability for the products of a predecessor; the successor must produce the same product under a similar name, have acquired substantially all of the predecessor's assets leaving no more than a corporate shell, hold itself out to the public as a mere continuation of the predecessor, and benefit from the good will of the predecessor.  Huff v. Shopsmith, Inc. (Miss. 2001) 786 So.2d 383.  Corporations ☞ 445.1;  Corporations ☞ 579(5)

14.2. ---- Hold harmless, successor liability

"Hold harmless" clause in asset purchase agreement, under which predecessor corporation agreed to indemnify successor corporation for any liabilities incurred upon its behalf, was not evidence that successor agreed to assume predecessor's liabilities to third parties.  Huff v. Shopsmith, Inc. (Miss. 2001) 786 So.2d 383.  Corporations ☞ 445.1

14.3. ---- De facto merger, successor liability

Successor corporation's purchase of portion of predecessor corporation's assets did not result in de facto merger of those two corporations, for purposes of determining whether successor could be imputed with predecessor's liabilities; corporations remained two separate, viable corporate entities for years following purchase of assets.  Huff v. Shopsmith, Inc. (Miss. 2001) 786 So.2d 383.  Corporations ☞ 590(1)

For purposes of determining whether a successor corporation may be imputed with the predecessor's liabilities, a de facto merger exists when there is a continuity of management, personnel, assets and operations;  a continuity of shareholders;  the predecessor dissolves shortly thereafter;  and the successor assumes the predecessor's obligations. Huff v. Shopsmith, Inc. (Miss. 2001) 786 So.2d 383.  Corporations ☞ 590(1)

14.4. ---- Fraudulent transaction, successor liability

There was no evidence that successor corporation's purchase of portion of predecessor corporation's assets was fraudulent, for purposes of determining whether successor could be imputed with predecessor's liabilities for allegedly

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

defective woodworking tool; all circumstances indicated legitimate business transaction where both sides were represented by counsel, and there was nothing to suggest that predecessor was somehow trying to avoid liability, nor any other illegal motive. <u>Huff v. Shopsmith, Inc. (Miss. 2001) 786 So.2d 383</u>. Corporations ☞ 548(9)

14.5. ---- Duties of successor, successor liability

Successor to assets of woodworking tool manufacturer had no duty to warn of defects in predecessor's products; successor never expressly agreed to assume predecessor's service contracts, there was no evidence that successor ever legally obligated itself to service tools in question by undertaking to do so on few occasions, and there was no evidence that successor purchased predecessor's customer lists. <u>Huff v. Shopsmith, Inc. (Miss. 2001) 786 So.2d 383</u>. Corporations ☞ 445.1

15. Jury questions

Whether vehicle manufacturer knew of danger that leaves collecting in blower box of ventilation system could catch fire was for jury in products liability action under Mississippi law. <u>Hughes v. Ford Motor Co. (N.D.Miss. 2002) 204 F.Supp.2d 958</u>. Products Liability ☞ 88.5

Vehicle design analysis engineer's inconsistent testimony, concerning vehicle manufacturer's knowledge at time of vehicle's manufacture, created jury question in defective design case under Mississippi law. <u>Hughes v. Ford Motor Co. (N.D.Miss. 2002) 204 F.Supp.2d 958</u>. Products Liability ☞ 88.5

Issue of drug manufacturer's parent company's liability in products liability action was for the jury, where consumers provided evidence that parent company actively participated in the marketing of drug. <u>Janssen Pharmaceutica, Inc. v. Bailey (Miss. 2004) 2004 WL 1066825</u>. Corporations ☞ 271

In product liability actions involving prescription drugs, the issue of a drug warning's adequacy is factual and usually will be resolved by the trier of fact. <u>Janssen Pharmaceutica, Inc. v. Bailey (Miss. 2004) 2004 WL 1066825</u>. Products Liability ☞ 88

Evidence presented a question for the jury as to whether the utility of cigarettes outweighed their risk, in products liability action brought by widow whose husband died from lung cancer; evidence included information regarding husband's enjoyment and love of smoking, information regarding tobacco company's efforts to provide the safest, consumer-desirable cigarette, information regarding the community's awareness of the dangers of smoking, and evidence that widow was not aware that her husband had ever tried to quit smoking. <u>Nunnally v. R.J. Reynolds Tobacco Co. (Miss. 2004) 2004 WL 583821</u>. Products Liability ☞ 88

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

Proffered instruction, precluding liability of trash hopper manufacturer on a failure to warn theory if worker who was killed while trying to dump hopper with forklift knew danger of the particular method he employed, was not warranted in products liability action, where another instruction absolved hopper manufacturer of liability if worker would have suffered same injuries regardless of presence of warning labels, and jury found worker to be 10 percent at fault. (Per McRae, P.J., with three justices concurring and two justices concurring in result.) Yale Materials Handling Corp. v. Brandon (Miss. 2002) 2002 WL 1038754.

Questions as to whether either or both truck engines were defectively designed for failure to include automatic air intake shutdown device to prevent overspeeding, whether there was failure to adequately warn of danger from overspeeding, and whether either or both failures proximately caused accident, in which one or both engines caused fuel that was being pumped from trucks into above-ground tanks to start on fire, were for jury in products liability action against manufacturers of trucks. Mack Trucks, Inc. v. Tackett (Miss. 2001) 2001 WL 1289440, withdrawn and superseded on rehearing <u>841 So.2d 1107</u>. Products Liability ⟶ 88.5

Questions as to whether either or both truck engines were defectively designed for failure to include automatic air intake shutdown device to prevent overspeeding, whether there was failure to adequately warn of danger from overspeeding, and whether either or both failures proximately caused accident, in which one or both engines caused fuel that was being pumped from trucks into above-ground tanks to start on fire, were for jury in products liability action against manufacturers of trucks. <u>Mack Trucks, Inc. v. Tackett (Miss. 2003) 841 So.2d 1107</u>. Products Liability ⟶ 88.5

Whether engineer and engineering firm were negligent in the design and application of a galvanized steel plate to fill four-inch gap between concrete pier and concrete bulkhead was an issue for the jury on pedestrian's slip and fall action against engineer and firm. <u>Holmes v. Wink, 2001, 811 So.2d 330</u>. Negligence ⟶ 1710;  Products Liability ⟶ 88

<u>16</u>. Negligence per se

To prevail on a negligence per se claim, a party must prove that she was a member of the class sought to be protected under the statute, that her injuries were of a type sought to be avoided, and that violation of the statute proximately caused her injuries. <u>Holmes v. Wink, 2001, 811 So.2d 330</u>. Negligence ⟶ 259

<u>16.1</u>. Negligence of plaintiff

Probative value of evidence of possible illegal spotlighting of deer just prior to gun owner's self-inflicted gunshot wound while inside his pick-up truck was not outweighed by its prejudicial effect in products liability action against gun manufacturer; evidence established a causal connection that the accident was a result of a full-cocked discharge because owner would have been in the cab of a compact pick-up pointing a loaded deer rifle at himself with its safety

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

disengaged in violation of gun-handling principles. <u>Abrams v. Marlin Firearms Co. (Miss. 2003) 838 So.2d 975</u>. Evidence ☞ 146

16.25. Discovery

Discovery response of parents of ten-year-old front seat passenger killed from impact with air bag, that pathologist who performed autopsy might be called as expert witness to state "the extent and nature of injuries sustained by [passenger]" and "that the cause of death of [passenger] was the deployment of the air bag," did not provide automobile manufacturer with notice that pathologist would testify that he would not expect to see a fatality in a crash below 20 miles per hour, and thus, such testimony was not admissible in the products liability action. (Per Chandler, J., with four judges concurring and one judge concurring in result.) <u>Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296</u>. Pretrial Procedure ☞ 45

Expert testimony of grief counselor for parents of ten-year-old front seat passenger who died from injuries from impact with automobile's air bag was not rendered inadmissible based on parents' failure to state the grounds for expert's opinion in their discovery response and their failure to provide automobile manufacturer with grief counselor's curriculum vitae until one week before trial, in products liability action, where manufacturer never sought clarification of the inadequate discovery response and declined to depose grief counselor. (Per Chandler, J., with four judges concurring and one judge concurring in result.) <u>Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296</u>. Pretrial Procedure ☞ 45

16.5. Pleadings

Manufacturer and installer of overhead conveyor system at retail distribution center was not liable for injuries to forklift operator at the center who was struck by carton that fell from the conveyor, where the conveyor system had safety devices, was specifically designed to handle cartons of specified size, distribution center was fully aware of size guidelines and proper loading procedures, and forklift operator presented no evidence of how system was loaded at the time of the accident, or that the cartons loaded were within the size requirements, that box that fell was of the proper size, that any carton ever fell from the system when system was operated properly, or that the carton fell because of some defect in the equipment, its design, manufacture or assembly. <u>Haley v. Mannesmann Dematic Rapistan Corp. (S.D.Miss. 2000) 236 F.Supp.2d 615</u>. Products Liability ☞ 48

17. Practice and procedure

Products liability action involving an amended complaint that was filed on effective date of substantive provisions of state Products Liability Act was subject only to the procedural provisions of that statute, where original complaint was filed prior to statute's enactment. <u>Smith v. Mack Trucks, Inc. (Miss. 2002) 819 So.2d 1258</u>. Products Liability ☞ 2

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

Pedestrian was not entitled to reversal in slip and fall action due to questions asked by engineer's counsel in cross-examination of pedestrian, whether pedestrian had filed any income tax and whether pedestrian had sued five other defendants along with engineer, where objections were sustained to both questions, pedestrian did not answer the questions, as to the second question the trial court admonished the jury to disregard the question, and pedestrian failed to request a mistrial. Holmes v. Wink, 2001, 811 So.2d 330. Appeal And Error 🔗 1048(6)


18. Damages


The damage award may be overturned only upon a clear showing of excessiveness or upon a showing that the jury was influenced by passion or prejudice. Hughes v. Ford Motor Co. (N.D.Miss. 2002) 204 F.Supp.2d 958. Damages 🔗 128


Total damages award of $3.5 million was not result of bias, passion, or prejudice in products liability action against manufacturers of forklift and trash hopper involved in fatal accident that occurred as worker stood on dashboard of forklift as he attempted to dump contents of hopper, though counsel for worker's estate asked for nearly $1.2 million less than that amount in actual damages, and counsel's suggested allocation of 20 percent of fault to worker was reduced by jury to 10 percent. (Per McRae, P.J., with three justices concurring and two justices concurring in result.) Yale Materials Handling Corp. v. Brandon (Miss. 2002) 2002 WL 1038754.


Award of $485,000 in compensatory damages, $329,000 of which was apportioned to tire manufacturer, was not excessive in products liability action brought by motorist's estate and her father, mother, and brother in connection with fatal rollover accident arising from tire separation on allegedly defective tire. Cooper Tire and Rubber Co. v. Tuckier (Miss. 2002) 826 So.2d 679, rehearing denied, certiorari denied 123 S.Ct. 97, 537 U.S. 820, 154 L.Ed.2d 27. Death 🔗 99(5)


18.5. Indemnification


Automobile manufacturer that had agreed to indemnify parts supplier for products liability suits neither waived its right to seek indemnity from injured passenger, nor was equitably estopped from seeking indemnity under settlement agreement reached with passenger by allowing passenger to proceed with products liability claim against supplier for two years before bringing declaratory judgment action asserting its right to indemnity; manufacturer's attorney had informed passenger that manufacturer was contractually bound to indemnify supplier, and attempted to convince passenger to dismiss suit against supplier before bringing its declaratory judgment action. Toyota Motor Sales, Inc. v. Farr (S.D.Miss. 2003) 320 F.Supp.2d 496. Indemnity 🔗 94


Automobile manufacturer's agreement to indemnify supplier for products liability lawsuits brought against it was supported by consideration, where manufacturer had taken credit from supplier's accounts receivables for components supplied to manufacturer, instead of accepting cash payment. Toyota Motor Sales, Inc. v. Farr (S.D.Miss. 2003) 320 F.Supp.2d 496. Indemnity 🔗 27

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

<u>19</u>. Retroactivity

Unless state Supreme Court directs otherwise, declarations of law are given retroactive effect. <u>Smith v. Mack Trucks, Inc. (Miss. 2002) 819 So.2d 1258.</u> Courts 🔑 100(1)

<u>20</u>. Prescription drugs

Although a plaintiff in a prescription drug liability case may alternatively rely on strict liability and negligence principles, these principles merge into one inquiry: the adequacy of the defendant's warnings. <u>Bennett v. Madakasira (Miss. 2002) 821 So.2d 794,</u> rehearing denied. Products Liability 🔑 46.2

A manufacturer of a prescription drug has no duty to warn the patient, consumer, or general public of adverse effects; under the learned intermediary doctrine, manufacturers do have a duty, however, to adequately warn the treating physician. <u>Bennett v. Madakasira (Miss. 2002) 821 So.2d 794,</u> rehearing denied. Products Liability 🔑 46.2

Testimony of treating psychiatrist that he considered warnings on prescription drug in package inserts to be adequate was not dispositive on issue of whether warnings were adequate as matter of law in products liability action brought by conservator of estate of patient who claimed that manufacturers failed to adequately warn of drugs' propensity to cause violent behavior, where plaintiff's expert testified that minimally competent physician would have acted differently towards adequate warning. <u>Bennett v. Madakasira (Miss. 2002) 821 So.2d 794,</u> rehearing denied. Products Liability 🔑 83

In a prescription drug liability case, an adequate warning is one reasonable under the circumstances and is usually resolved by the trier of fact. <u>Bennett v. Madakasira (Miss. 2002) 821 So.2d 794,</u> rehearing denied. Products Liability 🔑 46.2

To satisfy the burden of proving causation on a claim of failure to provide adequate prescription drug warnings, a plaintiff may introduce either objective evidence of how a reasonable physician would have responded to an adequate warning, *or* subjective evidence to establish how the treating physician would have responded. <u>Bennett v. Madakasira (Miss. 2002) 821 So.2d 794,</u> rehearing denied. Products Liability 🔑 83

<u>21</u>. Prima facie case

Where defendant business sells to public a food product which is contaminated by animal, insect or other foreign object, and individual consumes that item and becomes ill after discovering contamination, this alone is enough to establish liability on part of defendant. <u>CEF Enterprises, Inc. v. Betts, 2003, 838 So.2d 999.</u> Food 🔑 25

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

Survivors of motorist who was killed in rollover accident following separation of tread on rear tire established prima facie claim against tire manufacturer under products liability statute, where expert testified that tire failed due to use of bad stock, which in turn failed to create a chemical bond in tire, and two of manufacturer's employees testified that manufacturer knowingly and intentionally used bad stock in making tires. Cooper Tire and Rubber Co. v. Tuckier (Miss. 2002) 826 So.2d 679, rehearing denied, certiorari denied 123 S.Ct. 97, 537 U.S. 820, 154 L.Ed.2d 27. Evidence ☜ 571(6);  Products Liability ☜ 83.5

22. Sufficiency of evidence

Evidence was sufficient in product liability action to support finding that gun owner was not at mother's house when he shot himself and that his self-inflicted gun shot wound occurred in a manner contrary to his recollection of a "hammer-down bump firing," so as to support jury finding that owner was contributorily negligent for his injuries, in view of presence of alcohol on owner's breath and distance from mother's house when help arrived. Abrams v. Marlin Firearms Co. (Miss. 2003) 838 So.2d 975. Weapons ☜ 18(2)

Tire manufacturer was not strictly liable for death of passenger, who was killed when van overturned due to defective tire, in light of undisputed evidence that named defendant tire manufacturer was not directly involved in design, manufacture, or distribution into commerce of allegedly defective tire, but merely licensed its trademark to actual manufacturer. Harrison v. B.F. Goodrich Co., 2004, 2004 WL 422843. Products Liability ☜ 39

Paintball gun was not defective, and thus manufacturer was not liable under Products Liability Act for injuries to paintball player, who was shot in eye during game while not wearing eye protection, where there was no proof that paintball gun failed to function as expected, and plaintiff offered no feasible design alternative that would have prevented injury; shooter testified that paintball gun never malfunctioned, and plaintiff testified that he was aware that there was protective eyewear available for purchase, but he chose not to purchase it, and, as evidenced by his statement that it was common sense not to shoot anyone in face with paintball gun, plaintiff was aware there was danger in shooting paintball gun at people. Clark v. Brass Eagle, Inc. (Miss. 2004) 2004 WL 351794. Products Liability ☜ 60

Minor customer who suffered injury when she fell into tub of hot water did not establish products liability claim against gas company or manufacturer of gas water heater; heater complied with all mandatory and voluntary government and industry standards and, thus, contained scald warning language, customer's mother was renting residence under housing program of Housing and Urban Development (HUD) and although HUD had listed a number of needed repairs, none of repairs related to water heater or hot water temperature, and there was no evidence to support customer's contention that company and manufacturer grossly disregarded or were recklessly indifferent to customer's safety. Moore ex rel. Moore v. Mississippi Valley Gas Co. (Miss. 2003) 2003 WL 22510408. Products Liability ☜ 53

No evidence supported contention that manufacturer's design for liner of sewage lagoon, in which a construction worker drowned, was defective; plaintiff failed to provide any evidence of industry standards or expert testimony that

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

other acceptable designs were available which would have prevented the risk raised by the liner, when it left the manufacturer's control, and the liner's inherently slippery nature when wet was not merely obvious, but could not be altered without compromising its usefulness.  Hobson v. Waggoner Engineering, Inc., 2003, 2003 WL 21789396. Products Liability ☞ 83

Liability finding against manufacturer of trash hopper was not against overwhelming weight of evidence in products liability action arising from death of worker as he attempted to dump contents of hopper while standing on dashboard of forklift, where experts for worker's estate unequivocally testified that a pull-rope attachment not included on hopper in question should have been standard equipment instead of optional and that accident could have been avoided if pull-rope attachment had been on hopper. (Per McRae, P.J., with three justices concurring and two justices concurring in result.)  Yale Materials Handling Corp. v. Brandon (Miss. 2002) 2002 WL 1038754.

Jury's allocation of 40 percent of fault to manufacturer of trash hopper and 30 percent of fault to forklift manufacturer was not excessive in products liability action arising from fatal accident that occurred as worker attempted to dump contents of hopper while standing on dashboard of forklift, in view of substantial credible evidence that manufacturers knew of hazards of operating forklift and hopper in manner used by worker. (Per McRae, P.J., with three justices concurring and two justices concurring in result.)  Yale Materials Handling Corp. v. Brandon (Miss. 2002) 2002 WL 1038754.

Sufficient evidence supported jury verdict that both truck and diesel engine were defective in products liability action brought by survivor of trucker killed when fuel that was being pumped from two trucks into above-ground storage tank caught on fire; experts testified as to various possible causes of fire, including overspeeding of engine and worn battery cables. Mack Trucks, Inc. v. Tackett (Miss. 2001) 2001 WL 1289440, withdrawn and superseded on rehearing 841 So.2d 1107.  Evidence ☞ 571(6);  Products Liability ☞ 83.5

Sufficient evidence supported jury verdict that both truck and diesel engine were defective in products liability action brought by survivor of trucker killed when fuel that was being pumped from two trucks into above-ground storage tank caught on fire; experts testified as to various possible causes of fire, including overspeeding of engine and worn battery cables.  Mack Trucks, Inc. v. Tackett (Miss. 2003) 841 So.2d 1107.  Evidence ☞ 571(6); Products Liability ☞ 83.5

23. Parties

Seatbelt manufacturer whom automobile manufacturer was obligated to indemnify in products liability action brought by injured motorist and his wife was not indispensable party in automobile manufacturer's action against motorist and wife seeking declaratory judgment interpreting indemnification clause in settlement agreement from motorist's and wife's prior products liability action against automobile manufacturer; even if seatbelt manufacturer was necessary party, despite fact that it was not party to settlement agreement, its interest in declaratory judgment action was not compelling.  Toyota Motor Sales, U.S.A., Inc. v. Farr (S.D.Miss. 2002) 237 F.Supp.2d 703.  Declaratory Judgment ☞ 294

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

23.5. Joinder

Joinder of 10 different consumers' claims in products liability action against manufacturer of drug that treated gatroesophageal reflux disease (GERD) was improper; the actions did not arise out of the same transaction or occurrence given that the consumers ranged in age from three years old to 79 years old, each had unique prior medical histories, each was prescribed drug by a different physician in different amounts for different ailments, and each was prescribed the drug at different times over a six year period. Janssen Pharmaceutica, Inc. v. Bailey (Miss. 2004) 2004 WL 1066825.  Action 🖙 57(5)

In context of "immature tort" litigation, because scientific, legal, and factual issues related to such torts are novel and unsettled, mass joinder is inappropriate and until enough trials have occurred so that the contours of various types of claims within the litigation are known, courts should proceed with extreme caution in consolidating claims. Janssen Pharmaceutica, Inc. v. Armond (Miss. 2004) 2004 WL 307449.  Action 🖙 57(5)

Plaintiffs, 56 prescription drug/Propulsid users, failed to satisfy requirements for permissive joinder under civil procedure rules, in lawsuit against manufacturer and 42 physicians who allegedly prescribed the drug to plaintiffs for strict liability, negligence, breach of warranty, negligent misrepresentation, fraud and deceit/civil conspiracy, agent misrepresentation, products liability, and medical malpractice/negligence, and, thus, severance and transfer of individual plaintiffs' cases to those jurisdictions in which each plaintiff could have brought his or her claim was required; each plaintiff/doctor combination had its own set of facts and evidence and, thus, there was no single transaction or occurrence connecting all plaintiffs and all defendants. Janssen Pharmaceutica, Inc. v. Armond (Miss. 2004) 2004 WL 307449.  Venue 🖙 45

Four plaintiffs who sustained injuries they alleged were caused by prescription medication, failed to satisfy requirements for permissive joinder under civil procedure rules in products liability action based on adequacy of warnings accompanying medication, against pharmaceutical company and its parent company, and thus, severance and transfer of venue for separate trials was required; each plaintiff had his own set of facts and evidence, and thus, there was no single transaction or occurrence connecting all plaintiffs and defendants. Janssen Pharmaceutica, Inc. v. Grant (Miss. 2004) 873 So.2d 100.  Venue 🖙 45

24. Review

Widow failed to preserve for appeal her objection to special instructions submitted to jury in cigarette products liability action; widow initially objected to instructions, but then participated in subsequent modification of instructions and failed to object after the modifications were complete. Nunnally v. R.J. Reynolds Tobacco Co. (Miss. 2004) 2004 WL 583821. Appeal And Error 🖙 218.2(8)

Error in excluding, under *Frye* test, testimony of parents' expert witness regarding inadequacy of automobile

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

manufacturer's air bag warnings was not harmless, in inadequate-warning products liability action relating to ten-year-old front seat passenger's death from impact with air bag, where such witness was parents' only expert regarding warnings. (Per Chandler, J., with four judges concurring and one judge concurring in result.) Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296.  Appeal And Error ⬅➡ 1056.1(3)

Error in failing to allow expert witnesses for parents of ten-year-old front seat passenger to offer opinions that were based on inadmissible hearsay from Special Crash Investigation (SCI) report that contractor prepared for National Highway Transportation and Safety Administration (NHTSA) did not require reversal of judgment for automobile manufacturer, in products liability action alleging impact from air bag caused passenger's death; accident reconstructionist's proffered testimony was properly excluded on alternate ground that it was cumulative, and expert on air bag design was able to offer testimony regarding velocity change measurement and seat positioning from information outside of the report. (Per Chandler, J., with four judges concurring and one judge concurring in result.) Palmer v. Volkswagen of America, Inc., 2003, 2003 WL 22006296.  Appeal And Error ⬅➡ 1058(2)

25. New trial

Manufacturer of drug that treated gatroesophageal reflux disease (GERD) was entitled to a new trial in products liability action brought by consumers; the medical testimony provided by the consumers regarding causation failed to address and account for the innumerable preexisting conditions of consumers that were much more likely than the drug to have caused consumers' symptoms, and defense experts in numerous specialties uniformly testified that consumers' heart-related symptoms were typical of their preexisting conditions, and thus, there was a substantial basis on which to believe that the damages awarded by the jury were based entirely on passion and prejudice. Janssen Pharmaceutica, Inc. v. Bailey (Miss. 2004) 2004 WL 1066825.  New Trial ⬅➡ 77(1)

36. Prior accidents, admissibility of evidence

Reports of prior incidents of brake failure in mother's products liability action against auto manufacturer and dealership who sold automobile, alleging accident was caused by brake failure were not hearsay; statements contained within reports were not being offered for truth of matter asserted, mother made no argument that contents of reports were truthful, and reports were offered to show that auto manufacturer was aware reports had been made. Noah v. General Motors Corp., 2004, 2004 WL 422705.  Evidence ⬅➡ 318(4)

Probative value of prior incident reports of brake failures occurring after date of sale of automobile in mother's products liability action against auto manufacturer and auto dealership, alleging accident was caused by brake failure, was outweighed by its prejudicial effect; there was no post-sale duty to warn, so even if auto manufacturer and car dealership were aware of allegations of brake failure, they were under no duty to disclose them. Noah v. General Motors Corp., 2004, 2004 WL 422705.  Evidence ⬅➡ 141

Probative value of two prior incident reports that dealt with complaints of similar brake failures prior to time mother

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Miss. Code Ann. § 11-1-63

purchased automobile, in mother's products liability action against auto manufacturer and auto dealership, alleging accident was caused by brake failure, was outweighed by its prejudicial effect; two reports was inadequate number of similar incidents to charge defendants with notice of potential defect since significant number of automobiles had been produced, and thus, two accounted for minor proportion of the whole.  <u>Noah v. General Motors Corp., 2004, 2004 WL 422705</u>.  Evidence ☜ 141

Before evidence of prior accidents may be admitted, it must first be shown the prior incidents occurred under substantially similar conditions.  <u>Noah v. General Motors Corp., 2004, 2004 WL 422705</u>.  Evidence ☜ 141

Evidence of prior accidents may be admitted for the purpose of showing the existence of a dangerous condition; it may also be admitted to show plan, notice, or knowledge of a danger.  <u>Noah v. General Motors Corp., 2004, 2004 WL 422705</u>.  Evidence ☜ 141

Sufficient information existed to allow proper comparison of circumstances surrounding prior incidents of brake failure and alleged brake failure of mother's automobile which resulted in mother's products liability action against auto manufacturer and auto dealership who sold automobile; reports of prior incidents all involved same model of anti-lock brakes and same model and brand of automobile, and reports included information such as road conditions, weather conditions, whether obstructions existed, speed of automobiles, and assessment of characteristics of automobiles such as tire conditions.  <u>Noah v. General Motors Corp., 2004, 2004 WL 422705</u>.  Evidence ☜ 141

In order to introduce evidence of prior accidents, court must decide whether conditions or circumstances of prior incidents are substantially similar; State does not require prior accidents to assert the precise mechanical defect as condition in assessing substantial similarity.  <u>Noah v. General Motors Corp., 2004, 2004 WL 422705</u>.  Evidence ☜ 141

Miss. Code Ann. § 11-1-63, MS ST § 11-1-63

Current through End of 2004 Regular and 1st Ex. Sess.

Copyright © 2004 West, a Thomson business

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

E

## AFFIDAVIT OF STUART C. IRBY COMPANY

I, Andrew J. Waring, the undersigned do solemnly swear or affirm that the following are true and correct statements:

1. My name is Andrew J. Waring and I am Treasurer/CFO, an officer for Stuart C. Irby Company residing at a business address of 815 South State Street, Jackson, Mississippi. I have personal knowledge of the day-to-day business activities of Stuart C. Irby Company, and have researched its historical business activities and role since its inception.

2. Stuart C. Irby Company has been named as a defendant in the cause of action which is styled and numbered as Faye Hamilton, et al. vs. Allen-Bradley , Civil Action No.1:04CV732GRO in Hinds County, Mississippi.

3. During the time for which the allegations are based, as listed in the Complaint in above-described styled and numbered cause, Defendant Stuart C. Irby Company acted only in the capacity as a seller in the stream of commerce and did not participate in the manufacturing process of any of the products alleged to have caused Plaintiff's injuries in said Complaint filed in said cause of action.

SIGNED AND SWORN THIS THE   8   DAY OF Nnuembe, 2004.

_____
ANDREW J. WARING, STUART C. IRBY COMPANY

**EXHIBIT**

tabbies

E

**F**

**DOCKET NO. 875**

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

**IN RE:  ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

**MOTION TO VACATE**

COMES NOW, Plaintiffs in *Roy Barry, et al., v.  A.O. Smith, et al.* MSS 1 04-731, by and through counsel, and files this their Motion to Vacate Conditional Transfer Order (CTO-239), and in support hereof would should unto the Panel the following facts, to-wit:

1.    A Notice of Removal was filed by the Defendants in *Roy Barry, et al., v. A.O. Smith, et al.,* on or about September 21, 2004.

2.    A Motion to Remand and Plaintiffs' Memorandum of Law in Support of its Motion to Remand to State Court Pursuant to Rule 7.2 (G) and 7.2 (H) of the Uniform District Court Rules of Mississippi was filed by the Plaintiff in *Roy Barry, et al., v. A.O. Smith, et al.,* on October 25, 2004, a copy of which is attached hereto as Exhibit "A".

3.    Said Motions to Remand fully set forth Plaintiffs' arguments that no federal jurisdiction exists and Defendants' removal of said cases was improper.

WHEREFORE, plaintiffs move the Court to Vacate the Conditional Transfer Order (CTO-239).

RESPECTFULLY SUBMITTED

_____
STACEY LEA SIMS, MSBN. 10544

**EXHIBIT**

F

ANTHONY SAKALARIOS, ESQ.
F. MARVIN MORRIS, ESQ.
CHARLES G. BLACKWELL, ESQ.
SARA MORRIS FARRIS, ESQ.
STACEY LEA SIMS, ESQ.
MORRIS, SAKALARIOS & BLACKWELL, PLLC
1817 Hardy Street
Hattiesburg, MS 39401
Telephone:  (601) 544-3343
Facsimile:  (601) 544-9814

## CERTIFICATE OF SERVICE

I, Stacey Lea Sims, of the law firm of Morris, Sakalarios & Blackwell, PLLC, do hereby

certify that I have this day caused to be served, via U.S. Mail, postage fully prepaid, a true and

correct copy of Plaintiffs' Motion to Vacate to all counsel on the attached service list.

This the _____ 7th _____ day of December, 2004.

STACEY LEA SIMS, MSBN. 10544

SOUTHERN DISTRICT OF MISSISSIPPI
FILED

OCT 2 5 2004

BY_____ J.T. NOBLIN, CLERK
_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

**ROY BARRY, ET AL.**                                          **PLAINTIFFS**

**VS.**                                    **CIVIL ACTION NO. 1:04CV731GRo**

**A.O. SMITH, ET AL.**                                         **DEFENDANTS**

### PLAINTIFFS' MOTION TO REMAND TO STATE COURT
### PURSUANT TO RULE 7.2(G) AND 7.2(H) OF THE
### UNIFORM DISTRICT COURT RULES OF MISSISSIPPI

### ORAL ARGUMENT REQUESTED

Plaintiffs, by and through counsel, file this their Motion to Remand to state court and in support thereof would show unto the Court the following:

1.

Plaintiffs filed their original complaint in this cause on August 25, 2004. Plaintiffs named various defendants incorporated under the laws of states other than Mississippi as well as resident defendant, Stuart C. Irby Co.

2.

The Complaint was filed on behalf of numerous Plaintiffs, several of which are adult resident citizens of the Second Judicial District of Jones County, Mississippi.

3.

On September 21, 2004, the Defendants[1] filed their Notice of Removal in the United States District Court for the Southern District of Mississippi, Southern Division. In the Notice of Removal, Removing Defendants allege that complete diversity exists between the parties in that

---

[1] A. R. Wilfley & Sons, Inc.; Acco Chain and Lifting Products; Aurora Pumps; Dezurik; Gardner Denver, Inc.; GE Polymerland, Inc.; GE Plastics Global Technology; Nikko Materials USA, Inc. d/b/a Gould Electronics, Inc.; Mueller Steam Specialty; Nibco, Inc.; Parker-Hannifin Corp.; Patterson-Kelley Company; Pecora Corporation; Phoenix Specialty Mfg Co., Inc.; Robbins & Myers, Inc.; and Yeoman's Chicago Corp.

Stuart C. Irby Co. is wrongfully joined and none of the remaining defendants are Mississippi residents and therefore this Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332.

4.

Plaintiffs' Motion to Remand is timely filed pursuant to 28 U.S.C. § 1447(c) which allows thirty (30) days to file a Notice of Remand.

5.

Removing Defendants did not attempt to obtain the consent of any other defendants prior to filing the Notice of Removal. In fact, the Defendants listed on Exhibit "A" all failed to timely file a Consent or Notice of Joinder in Removing Defendants' Notice of Removal. 28 U.S.C. § 1446 requires a removing defendant to obtain the consent of all defendants which have been properly served and who are necessary and indispensable to the action. The failure of the Removing Defendants to meet this requirement within the thirty (30) day time limit makes the Notice of Removal defective and necessitates the remand of this cause of action.

6.

Moreover at the time the Removing Defendants filed their Notice of Removal, Plaintiffs had named in their Complaint, a non-diverse defendant, Stuart C. Irby Co., whom Plaintiffs allege distributed asbestos containing products to which Plaintiffs were exposed.

7.

Removing Defendants allege that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Specifically, Removing Defendants assert none of named defendants are Mississippi corporations or are otherwise domiciled in Mississippi. This is simply not true. Stuart C. Irby Co. is a Mississippi Corporation. See Stuart C. Irby's Answer to the Complaint

attached to Plaintiffs' Memorandum as Exhibit "B", and Web-print from the Mississippi Secretary of State attached thereto as Exhibit "C".

8.

When a case is removed to federal court, there is a strong presumption against federal court removal jurisdiction. The Court is to strictly construe removal jurisdiction. See *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941) and *Butler v. Polk*, 592 F.2d 1293, 1296 (5th Cir.). The burden of establishing that federal jurisdiction is on the removing party. See *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921). Removing Defendants have failed to prove diversity. Finally, the Removal is procedurally defective and has not met the requirements set forth by 28 U.S.C. § 1446. Remand is appropriate if there is any doubt as to the right of removal in the first instance. See *Duncan v. Stuetzle*, 76 F.3d. 1480, 1485 (9th Cir. 1996).

9.

For the foregoing reasons Plaintiffs respectfully requests that this cause of action be remanded to the Circuit Court for the Second Judicial District of Jones County, Mississippi. Furthermore, Plaintiffs ask for their costs and attorney fees and for any other relief which this Court deems proper.

Respectfully submitted, this the _20[th]_ day of October, 2004.

STACEY LEA SIMS, MSBN. 10544

ANTHONY SAKALARIOS, MSBN. 6415
F. MARVIN MORRIS, III, MSBN. 3482
CHARLES G. BLACKWELL, MSBN. 3357
SARA M. FARRIS, MSBN. 10560
STACEY LEA SIMS, MSBN. 10544
MORRIS, SAKALARIOS & BLACKWELL, PLLC
1817 Hardy Street
Hattiesburg, MS 39401
Telephone (601) 544-3343
Telefax (601) 544-9814

## <u>CERTIFICATE OF SERVICE</u>

I, Stacey Lea Sims, of the law firm of Morris, Sakalarios & Blackwell, PLLC, do hereby

certify that I have this day caused to be served, via U.S. Mail, postage fully prepaid, a true and

correct copy of Plaintiffs' Motion to Remand to State Court Pursuant to Rule 7.2(G) and 7.2(H)

of the Uniform District Court Rules of Mississippi to all counsel of record at their usual and

regular mailing addresses.

This the _____20th_____ day of October, 2004.

STACEY LEA SIMS, MSBN. 10544

EXHIBIT "A"

A. O. SMITH,
A.W. CHESTERTON,
ACF INDUSTRIES, INCORPORATED f/k/a The American Car and Foundry Company,
ACCURATE FELT & GASKET CO., INC.,
AMF, INC. f/k/a American Machine & Foundry Company, Inc,
AEROFIN CORPORATION, on behalf of Buffalo Forge Company,
ALFA LAVAL FLOW/TRI-CLOVER INC./ALFA LAVAL, INC.,
ALLEN-BRADLEY CO.,
AMERON INTERNATIONAL CORPORATION,
ANCHOR/DARLING VALVE COMPANY, Individually and as Successor in Interest to Muesco,
ANDERSON GREENWOOD,
ANDERSON GREENWOOD/CROSBY / CROSBY VALVE, INC., d/b/a Crosby Valve, Inc.,
ANDRITZ, INC., on behalf of Andritz Sprout-Bauer, Inc. and C.E. Bauer Digester,
ARMSTRONG INTERNATIONAL, INC., d/b/a Armstrong Machine Works,
ARVINMERITOR, INC.,
BAKER HUGHES, INCORPORATED,
BEAZER EAST, INC., Individually and as Successor in Interest to Kippers Company, a/k/a Beazer Materials and Services, Inc.,
BORDEN, INC., as Successor in Interest to Borden, Co., Chemical Division,
BW/IP INTERNATIONAL, INC., f/k/a BorgWarner Industrial Product, Successor to Byron Jackson Pump Co.,
COOPER ALLOY CORPORATION f/k/a The Cooper Alloy Foundry Co.,
COOPER INDUSTRIES, INC.,
COOPER TURBO COMPRESSOR,
COPES-VULCAN, INC.,
CROSSFIELD PRODUCTS CORPORATION,
CROUSE-HINDS CO, a Division of Cooper Industries,
DORR-OLIVER, INC.,
DOVER CORPORATION, Individually and as Successor in Interest to OPW Division and Blacker Pump Company
DURABLA MFG. COMPANY,
DURAMETALLIC CORP., a/k/a Flowserve Corporation-Fluid Sealing Division,
EDWARDS VOGT VALVE, INC.,
ELLIOTT TURBO MACHINERY CO., INC.,
FMC CORP., on behalf of its former Construction Equipment Group, FMC Technologies, Inc., Individually and as Successor in Interest to Peerless Pump Co., John Bean Pumps, Chicago Pumps, Dayton-Dowd Pump Co., Ohio Apex Division, American Viscose Corporation, and Avisum Corporation,
FAIRBANKS MORSE PUMP CORPORATION,
FIRESTONE TIRE & RUBBER CO.,
FLOWSERVE CORPORATION, on behalf of The Duriron Company, Inc.,
GARFIELD MFG. CO.,
GARLOCK, INC.;

GARLOCK PACKING COMPANY

GAST MANUFACTURING, INC.,

GENERAL ELECTRIC COMPANY (Specifically excluding any claims of plaintiffs' resulting from exposure to a GE Turbine),

GOODYEAR TIRE & RUBBER CO.,

GORMAN-RUPP CO., Individually and as Successor in Interest to C. H. Wheeler Mfg. Co., Patterson Pump Company, IPT Pumps, and Economy Pumps,

HAMMOND VALVE CO.,

HENRY VOGT MACHINE CO.,

ILLINOIS TOOL WORK, INC., Individually and as Successor to The McKay Company, Tri-Mark & Corex,

INVENSYS METERING SYSTEMS-NORTH AMERICA INC.,

J. GRAVES INSULATION COMPANY,

JOHN CRANE, INC.,

KEYSTONE INTERNATIONAL, INC., AND KEYSTONE VALVE U.S.A. INC., Individually and as Successor in Interest to Yarway Corporation, Gimpel Machine Works, Gimped Corporation, Anderson Greenwood and Keystone Valve Co.,

LAWRENCE PUMPS, INC.,

LESLIE CONTROLS, INC.,

LIMITORQUE CORPORATION,

MAREMONT CORP.,

MARLEY PUMP COMPANY,

MET-PRO CORPORATION, on behalf of Dean Brothers Pump

MILTON ROY COMPANY,

MONSANTO COMPANY, Individually and as Successor in Interest to Monsanto, Lion Oil, Fiberloid Corp., Fisher Governor Co. and Fisher Controls International, Inc.,

MOYNO, INC.,

N L INDUSTRIES, INC., Individually and as Successor to National Lead Co., and on behalf of Floating Floors, Inc.; Chas. Taylor & Sons Refractories Company; and Didier-Taylor Refractories,

NOOTER CORPORATION,

NORTON COMPANY n/k/a SAINT-GOBAIN ABRASIVES, INC.,

NVF MANUFACTURING COMPANY,

PFIZER, INC.,

PLASTICS ENGINEERING CO. (PLENCO),

QUAKER CHEMICAL CORP.,

QUIGLEY COMPANY, INC.,

RELIANCE ELECTRIC MOTORS,

REUNION INDUSTRIES, INC., Individually and as Successor in Interest to Oneida Molded Plastics and Rostone Corporation,

ROCKWELL INTERNATIONAL CORP., Individually and as Successor in Interest to Edward Valves, Inc., Allen-Bradley Co., Allen-Bradley Co., Inc., Rockwell Mfg. Co., and Rockwell-Standard Corp.,

ROGERS CORPORATION,

ROTH PUMP CO., Individually and as Successor in Interest to Roy E. Roth Co.,

SCHUTTE & KOERTING, LLC, Individually and as Successor in Interest to Schutte & Koerting Co. and Whitlock Manufacturing Co.,
SEPCO CORPORATION,
SHELL OIL COMPANY, individually of and as successor to Shell Chemical Company,
SIEMANS BUILDING TECHNOLOGIES, INC., Individually and as Successor in Interest to Landis & Gyr Powers, Inc., Mark Controls Corporation, and Powers Regulator Company,
SPIRAX-SARCO ENGINEERING, PLC,
STUART C. IRBY CO.,
TRW, INC,
TAYLOR SEIDENBACH, INC.,
TEXTRON, INC.,
THE FALK CORPORATION,
THE FOXBORO CO., n/k/a INVENSYS SYSTEMS, INC.,
MARLEY COOLING TECHNOLOGIES
TUTHILL CORPORATION, also d/b /a COPPUS PORTABLE VENTILATION DIVISION, Individually and as Successor in Interest to Coppus Turbine, and Coppus Engine Co., Toothily Pump Co. and Mechanical Products Co.,
TUTHILL PUMP CO., a/k/a TUTHILL PUMP GROUP,
UNITED GILSONITE LABORATORIES,
VELAN VALVE CORPORATION,
VIKING PUMP, INC., a Unit of IDEX Corporation,
WARREN PUMPS, INC., Individually and as Successor in Interest to William E. Quimby, Inc. and Quimby Pump Co.,
WARREN-RUPP, INC., a Unit of IDEX Corporation,
WEINMAN PUMP COMPANY,
WESTINGHOUSE AIR BRAKE COMPANY, now known as WABCO, Inc.,
WHITE CONSOLIDATED INDUSTRIES, INC., as Successor to SARCO Co., Inc.
YARWAY CORP., Individually and as Successor in Interest to Yarnell-Waring Co.,
YUBA HEAT TRANSFER CO., Individually and on Behalf of American District Steam Company (ADSCO),

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

ROY BARRY, ET AL.                                                          PLAINTIFFS

VS.                                                        CIVIL ACTION NO. 1:04CV731GRo

A.O. SMITH, ET AL.                                                          DEFENDANTS

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO REMAND TO STATE COURT PURSUANT TO RULE 7.2(G)
AND 7.2(H) OF THE UNIFORM DISTRICT COURT RULES OF MISSISSIPPI

Facts

Plaintiffs filed their original Complaint in this cause on August 25, 2004. Plaintiffs

named various defendants incorporated under the laws of states other than Mississippi as well as

the resident defendant, Stuart C. Irby Co. On September 21, 2004 Removing Defendants filed

their Notice of Removal in the United States District Court for the Southern District of

Mississippi, Southern Division.

In their original Notice of Removal, Removing Defendants allege that complete diversity

exists between the parties in that none of the defendants are Mississippi residents and therefore

this Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332.

Plaintiffs' Motion to Remand is timely filed pursuant to 28 U.S.C. $ 1447(c) which

allows thirty (30) days from the filing of a Notice of Removal. Removing Defendants filed their

Notice of Removal on September 21, 2004

Law

Removing Defendants did not attempt to obtain the consent of any other defendants prior

to filing the Notice of Removal. In fact, the Defendants listed on Exhibit "A" all failed to timely

file a Consent or Notice of Joinder in Removing Defendants' Notice of Removal. 28 U.S.C. §

1446 requires a removing defendant to obtain the consent of all defendants which have been properly served and who are necessary and indispensable to the action. The failure of the Removing Defendants to meet this requirement within the thirty (30) day time limit makes the Notice of Removal defective and necessitates the remand of this cause of action. In *Getty*, the Fifth Circuit held that "all served defendants must join in the petition, and since the petition must be submitted within thirty days of service on the first defendant, all served defendants must join in the petition no later than thirty days from the day on which the first defendant was served." *Getty Oil Corp., a div. of Texaco v. Insurance Co. of North America*, 841 F.2d 1254, 1263 (5th Cir. 1988). The *Spillers* court held that the thirty day "time limitation is mandatory and must be strictly construed....if all defendants do not join in or consent to the removal petition within the thirty-day period, 'the district court shall remand the case..." *Spillers v. Tillman*, 959 F. Supp. 364, 369 (S.D. Miss. 1997). Since all the defendants which were properly joined and served did not consent and join in the removal, the removal is defective and must be remanded to state court.

Fourth, at the time the removing Defendants filed their Notice of Removal, Plaintiffs had named in their Complaint a non-diverse defendant, Stuart C. Irby Co., whom plaintiffs allege distributed asbestos containing products to which plaintiffs were exposed. Stuart C. Irby Co. has filed Answer to plaintiffs' complaint wherein they admit their residency. *See Stuart C. Irby Co.'s Answer attached hereto as Exhibit "B"*. Additionally, the Mississippi Secretary of State's web site verifies that Stuart C. Irby Co. is a Mississippi Corporation. *See Print attached hereto as Exhibit "C"*.

Furthermore, a removing defendant has the burden of demonstrating a jurisdictional basis for removal, but also must comply with the requirements of the removal statute in order to

institute a proper removal. See *Spillers v. Tillman*, 959 F. Supp. 364, 368 (S.D. Miss. 1997) (citing *Albonetti v. GAF Corporation-Chemical Group*, 520 F. Supp. 825, 827 (S.D. Miss. 1981)).

<u>Conclusion</u>

When a case is removed to federal court, there is a strong presumption against federal court removal jurisdiction. The Court is to strictly construe removal jurisdiction. See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100 (1941) and Butler v. Polk, 592 F. 2d 1293, 1296 (5th Cir.). The burden of establishing that federal jurisdiction is on the removing party. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921). Removing Defendants have no evidence to support their allegations concerning diversity. Plaintiffs clearly have asserted true and viable claims against all defendants in this matter including the non-diverse defendant. Finally, the Removal is procedurally defective and has not met the requirements set forth by 28 U.S.C. § 1446 and the supporting case law, in that the Removing Defendants failed to, timely or otherwise, remove this action or obtain the consent of all parties properly joined and served in this matter. Remand is appropriate if there is any doubt as to the right of removal in the first instance. *See Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996).*

For the foregoing reasons Plaintiffs respectfully request that this cause of action be remanded to the Circuit Court for the Second Judicial District of Jones County, Mississippi. Furthermore, Plaintiffs ask for their costs and attorney fees and for any other relief which this Court deems proper.

Respectfully submitted, this the 20th day of October, 2004.

STACEY LEA SIMS, MSBN: 10544

3

ANTHONY SAKALARIOS, MSBN. 6415
F. MARVIN MORRIS, III, MSBN. 3482
CHARLES G. BLACKWELL, MSBN. 3357
SARA M. FARRIS, MSBN. 10560
STACEY LEA SIMS, MSBN. 10544
MORRIS, SAKALARIOS & BLACKWELL, PLLC
1817 Hardy Street
Hattiesburg, MS 39401
Telephone (601) 544-3343
Telefax (601) 544-9814

## CERTIFICATE OF SERVICE

I, Stacey Lea Sims, of the law firm of Morris, Sakalarios & Blackwell, PLLC, do hereby

certify that I have this day caused to be served, via U.S. Mail, postage fully prepaid, a true and

correct copy of Plaintiffs' Memorandum in Support of their Motion to Remand to State Court

Pursuant to Rule 7.2(G) and 7.2(H) of the Uniform District Court Rules of Mississippi to all

counsel of record at their usual and regular mailing addresses.

This the _____ day of October, 2004.

STACEY LEA SIMS, MSBN. 10544

4

EXHIBIT "A"

A. O. SMITH,
A.W. CHESTERTON,
ACF INDUSTRIES, INCORPORATED f/k/a The American Car and Foundry Company,
ACCURATE FELT & GASKET CO., INC.,
AMF, INC. f/k/a American Machine & Foundry Company, Inc,
AEROFIN CORPORATION, on behalf of Buffalo Forge Company,
ALFA LAVAL FLOW/TRI-CLOVER INC./ALFA LAVAL, INC.,
ALLEN-BRADLEY CO.,
AMERON INTERNATIONAL CORPORATION,
ANCHOR/DARLING VALVE COMPANY, Individually and as Successor in Interest to Muesco,
ANDERSON GREENWOOD,
ANDERSON GREENWOOD/CROSBY / CROSBY VALVE, INC., d/b/a Crosby Valve, Inc.,
ANDRITZ, INC., on behalf of Andritz Sprout-Bauer, Inc. and C.E. Bauer Digester,
ARMSTRONG INTERNATIONAL, INC., d/b/a Armstrong Machine Works,
ARVINMERITOR, INC.,
BAKER HUGHES, INCORPORATED,
BEAZER EAST, INC., Individually and as Successor in Interest to Kippers Company, a/k/a Beazer Materials and Services, Inc.,
BORDEN, INC., as Successor in Interest to Borden, Co., Chemical Division,
BW/IP INTERNATIONAL, INC., f/k/a BorgWarner Industrial Product, Successor to Byron Jackson Pump Co.,
COOPER ALLOY CORPORATION f/k/a The Cooper Alloy Foundry Co.,
COOPER INDUSTRIES, INC.,
COOPER TURBO COMPRESSOR,
COPES-VULCAN, INC.,
CROSSFIELD PRODUCTS CORPORATION,
CROUSE-HINDS CO, a Division of Cooper Industries,
DORR-OLIVER, INC.,
DOVER CORPORATION, Individually and as Successor in Interest to OPW Division and Blacker Pump Company
DURABLA MFG. COMPANY,
DURAMETALLIC CORP., a/k/a Flowserve Corporation-Fluid Sealing Division,
EDWARDS VOGT VALVE, INC.,
ELLIOTT TURBO MACHINERY CO., INC.,
FMC CORP., on behalf of its former Construction Equipment Group, FMC Technologies, Inc., Individually and as Successor in Interest to Peerless Pump Co., John Bean Pumps, Chicago Pumps, Dayton-Dowd Pump Co., Ohio Apex Division, American Viscose Corporation, and Avisum Corporation,
FAIRBANKS MORSE PUMP CORPORATION,
FIRESTONE TIRE & RUBBER CO.,
FLOWSERVE CORPORATION, on behalf of The Duriron Company, Inc.,
GARFIELD MFG. CO.,
GARLOCK, INC.;

GARLOCK PACKING COMPANY

GAST MANUFACTURING, INC.,

GENERAL ELECTRIC COMPANY (Specifically excluding any claims of plaintiffs' resulting from exposure to a GE Turbine),

GOODYEAR TIRE & RUBBER CO.,

GORMAN-RUPP CO., Individually and as Successor in Interest to C. H. Wheeler Mfg. Co., Patterson Pump Company, IPT Pumps, and Economy Pumps,

HAMMOND VALVE CO.,

HENRY VOGT MACHINE CO.,

ILLINOIS TOOL WORK, INC., Individually and as Successor to The McKay Company, Tri-Mark & Corex,

INVENSYS METERING SYSTEMS-NORTH AMERICA INC.,

J. GRAVES INSULATION COMPANY,

JOHN CRANE, INC.,

KEYSTONE INTERNATIONAL, INC., AND KEYSTONE VALVE U.S.A. INC., Individually and as Successor in Interest to Yarway Corporation, Gimpel Machine Works, Gimped Corporation, Anderson Greenwood and Keystone Valve Co.,

LAWRENCE PUMPS, INC.,

LESLIE CONTROLS, INC.,

LIMITORQUE CORPORATION,

MAREMONT CORP.,

MARLEY PUMP COMPANY,

MET-PRO CORPORATION, on behalf of Dean Brothers Pump

MILTON ROY COMPANY,

MONSANTO COMPANY, Individually and as Successor in Interest to Monsanto, Lion Oil, Fiberloid Corp., Fisher Governor Co. and Fisher Controls International, Inc.,

MOYNO, INC.,

N L INDUSTRIES, INC., Individually and as Successor to National Lead Co., and on behalf of Floating Floors, Inc.; Chas. Taylor & Sons Refractories Company; and Didier-Taylor Refractories,

NOOTER CORPORATION,

NORTON COMPANY n/k/a SAINT-GOBAIN ABRASIVES, INC.,

NVF MANUFACTURING COMPANY,

PFIZER, INC.,

PLASTICS ENGINEERING CO. (PLENCO),

QUAKER CHEMICAL CORP.,

QUIGLEY COMPANY, INC.,

RELIANCE ELECTRIC MOTORS,

REUNION INDUSTRIES, INC., Individually and as Successor in Interest to Oneida Molded Plastics and Rostone Corporation,

ROCKWELL INTERNATIONAL CORP., Individually and as Successor in Interest to Edward Valves, Inc., Allen-Bradley Co., Allen-Bradley Co., Inc., Rockwell Mfg. Co., and Rockwell-Standard Corp.,

ROGERS CORPORATION,

ROTH PUMP CO., Individually and as Successor in Interest to Roy E. Roth Co.,

SCHUTTE & KOERTING, LLC, Individually and as Successor in Interest to Schutte & Koerting Co. and Whitlock Manufacturing Co.,

SEPCO CORPORATION,

SHELL OIL COMPANY, individually of and as successor to Shell Chemical Company,

SIEMANS BUILDING TECHNOLOGIES, INC., Individually and as Successor in Interest to Landis & Gyr Powers, Inc., Mark Controls Corporation, and Powers Regulator Company,

SPIRAX-SARCO ENGINEERING, PLC,

STUART C. IRBY CO.,

TRW, INC,

TAYLOR SEIDENBACH, INC.,

TEXTRON, INC.,

THE FALK CORPORATION,

THE FOXBORO CO., n/k/a INVENSYS SYSTEMS, INC.,

MARLEY COOLING TECHNOLOGIES

TUTHILL CORPORATION, also d/b /a COPPUS PORTABLE VENTILATION DIVISION, Individually and as Successor in Interest to Coppus Turbine, and Coppus Engine Co., Toothily Pump Co. and Mechanical Products Co.,

TUTHILL PUMP CO., a/k/a TUTHILL PUMP GROUP,

UNITED GILSONITE LABORATORIES,

VELAN VALVE CORPORATION,

VIKING PUMP, INC., a Unit of IDEX Corporation,

WARREN PUMPS, INC., Individually and as Successor in Interest to William E. Quimby, Inc. and Quimby Pump Co.,

WARREN-RUPP, INC., a Unit of IDEX Corporation,

WEINMAN PUMP COMPANY,

WESTINGHOUSE AIR BRAKE COMPANY, now known as WABCO, Inc.,

WHITE CONSOLIDATED INDUSTRIES, INC., as Successor to SARCO Co., Inc.

YARWAY CORP., Individually and as Successor in Interest to Yarnell-Waring Co.,

YUBA HEAT TRANSFER CO., Individually and on Behalf of American District Steam Company (ADSCO),

EXHIBIT

B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

ROY BARRY, ET AL.                                    PLAINTIFFS

VERSUS                                  CIVIL ACTION NO. 1:04CV731GRo

A.O. SMITH, ET AL.                                    DEFENDANTS

## ANSWER OF DEFENDANT STUART C. IRBY CO.
## TO COMPLAINT

COMES NOW Defendant STUART C. IRBY CO. (hereinafter referred to as "Defendant"),

by and through counsel, and subject to and without waiving any defenses, responds to the

Complaint in this case as follows:

## FIRST DEFENSE

The Complaint fails to state a claim or cause of action against this Defendant upon which

relief may be granted.

## SECOND DEFENSE

This Defendant answers the Complaint filed against it Paragraph by Paragraph as follows:

1-9.

This Defendant is without sufficient knowledge or information upon which to form a belief as

to the truth of the allegations contained in Paragraphs 1 through 9 of Plaintiffs' Complaint

relating to the residency of individual plaintiffs and therefore, can neither admit nor deny said

allegations.

10-158.

This Defendant denies the allegations contained in Paragraphs 10 through 158 Plaintiffs'

Complaint as they pertain to this Defendant. Insofar as these allegations pertain to other

defendants, this Defendant is without sufficient knowledge or information upon which to form a

belief as to the truth of these allegations and, therefore, can neither admit nor deny same.

159.

This Defendant denies the allegations contained in Paragraph 159 of Plaintiffs' Complaint.

160.

This Defendant is without sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in Paragraph 160 of Plaintiffs' Complaint relating to the residency of individual plaintiffs and, therefore, can neither admit nor deny said allegations contained in Paragraph 160 of Plaintiffs' Complaint suggest that Plaintiffs are properly joined under Mississippi law and that venue is proper in Jones County, Mississippi; Defendant wholly denies the allegations as they pertain to this Defendant.

161.

Defendant denies the allegations contained in Paragraph 161, particularly the allegations that venue is proper.

## **BACKGROUND**

161.

This Defendant denies the allegations contained in Paragraph 161, under Background, of Plaintiffs' Complaint, particularly the allegations that Plaintiffs have suffered or will suffer injuries.

162.

This Defendant denies the allegations contained in Paragraph 162 of Plaintiffs' Complaint.

163.

This Defendant denies the allegations contained in Paragraph 163 of Plaintiffs' Complaint, particularly the allegations that Plaintiffs have suffered or will suffer injuries.

2

164.

This Defendant denies the allegations contained in Paragraph 164 of Plaintiffs' Complaint, particularly the allegations that Plaintiffs have suffered or will suffer injuries or that Plaintiffs are entitled to damages in any amount or for any reason whatsoever.

165.

This Defendant denies the allegations contained in Paragraph 165 of Plaintiffs' Complaint.

166.

This Defendant denies the allegations contained in Paragraph 166, including all subparagraphs therein, of Plaintiffs' Complaint, particularly the allegations that Plaintiffs have suffered or will suffer injuries.

167.

This Defendant denies the allegations contained in Paragraph 167 of Plaintiffs' Complaint, particularly the allegations that Plaintiffs have suffered or will suffer injuries.

## COUNT ONE

### (Strict Liability)

168.

This Defendant incorporates by reference each and every answer, response and defense heretofore set forth to all of the allegations of Paragraph 1 through 168 as if the same had been restated herein.

169-171.

This Defendant denies the allegations contained in Paragraphs 169 through 171, including all subparagraphs therein, of Plaintiffs' Complaint.

172.

This Defendant denies the allegations contained in Paragraph 172 of Plaintiffs' Complaint, particularly the allegations that Plaintiffs have suffered or will suffer injuries or that Plaintiffs are entitled to damages in any amount or for any reason whatsoever.

173.

This Defendant denies the allegations contained in Paragraph 173 of Plaintiffs' Complaint.

174.

This Defendant denies the allegations contained in Paragraph 174 of Plaintiffs' Complaint, particularly the allegations that Plaintiffs are entitled to damages in any amount or for any reason whatsoever.

## COUNT TWO

### (Negligence)

175.

This Defendant incorporates by reference each and every answer, response and defense heretofore set forth to all of the allegations of Paragraph 1 through 175 as if the same had been restated herein.

176.

This Defendant denies the allegations contained in Paragraph 176, including all subparagraphs therein, of Plaintiffs' Complaint.

177.

This Defendant denies the allegations contained in Paragraph 177 of Plaintiffs' Complaint, particularly the allegations that Plaintiffs have suffered or will suffer injuries or that Plaintiffs are entitled to damages in any amount or for any reason whatsoever.

178.

This Defendant denies the allegations contained in Paragraph 178 of Plaintiffs' Complaint, particularly the allegations that Plaintiffs have suffered or will suffer injuries.

179.

This Defendant denies the allegations contained in Paragraph 179 of Plaintiffs' Complaint.

## COUNT THREE

**(Fraudulent Concealment/ Misrepresentation/ Alteration of Medical Studies/ Conspiracy)**

180.

This Defendant incorporates by reference each and every answer, response and defense heretofore set forth to all of the allegations of Paragraph 1 through 180 as if the same had been restated herein.

181-185.

The allegations of Paragraphs 181 through 185, including all subparagraphs therein, do not appear to apply to this Defendant; therefore, no response is necessary. To the extent a response is deemed necessary, said allegations are denied as they pertain to this Defendant.

186.

This Defendant denies the allegations contained in Paragraph 186 of Plaintiffs' Complaint, particularly the allegations that Plaintiffs are entitled to damages in any amount or for any reason whatsoever.

## COUNT FOUR

### (Damages)

### 187.

This Defendant denies the allegations contained in Paragraph 187 of Plaintiffs' Complaint, particularly the allegations that Plaintiffs have suffered or will suffer injuries.

### 188-189.

This Defendant denies the allegations contained in Paragraphs 188 and 189 of Plaintiffs' Complaint, particularly the allegations that Plaintiffs have suffered or will suffer injuries or that Plaintiffs are entitled to damages in any amount or for any reason whatsoever.

### 190.

This Defendant denies the allegations contained in Paragraph 190 of Plaintiffs' Complaint.

### 191-192.

This Defendant denies the allegations contained in Paragraphs 191 and 192 Plaintiffs' Complaint as they pertain to this Defendant. Insofar as these allegations pertain to other defendants, this Defendant is without sufficient knowledge or information upon which to form a belief as to the truth of these allegations and, therefore, can neither admit nor deny same.

### 193.

This Defendant denies the allegations contained in Paragraph 193 of Plaintiffs' Complaint, particularly the allegations that Plaintiffs have suffered or will suffer injuries or that Plaintiffs are entitled to damages in any amount or for any reason whatsoever.

All other averments not specifically admitted hereto are denied.

## THIRD DEFENSE

If none of the witnesses to the alleged asbestos exposure of Plaintiffs/Plaintiffs's decedents reside in Mississippi, or if most reside outside Mississippi, travel to and from plaintiffs' states of residence for witnesses and counsel for necessary discovery and trial would place an undue burden upon defendants. Furthermore, this Court may be required under principles of conflicts of law to apply foreign law, with which this Court and Mississippi counsel are unfamiliar. This Defendant therefore moves to dismiss this action under the doctrine of forum non conveniens.

## FOURTH DEFENSE

This Defendant objects to process and service of process as insufficient.

## FIFTH DEFENSE

This Court lacks jurisdiction over the person and/or property of Defendant and accordingly this action should be dismissed as to this Defendant.

## SIXTH DEFENSE

This Court lacks subject matter jurisdiction over the subject matter of Plaintiffs' claims.

## SEVENTH DEFENSE

This action should be stayed pending the outcome of other, similar actions pending in Mississippi, Texas, and other jurisdictions.

## EIGHTH DEFENSE

Plaintiffs' fraud claims should be dismissed for failure to plead such claims with sufficient particularity, as required by Miss. R. Civ. P. 9.

### NINTH DEFENSE

Plaintiffs/Plaintiffs' decedents' injuries, if any, were proximately caused by Plaintiffs/Plaintiffs' decedents' free and voluntary assumption of risks which were known by the Plaintiffs/Plaintiffs' decedents.

### TENTH DEFENSE

The conditions alleged by Plaintiffs to have caused their/Plaintiffs' decedents' injuries were both open and obvious.

### ELEVENTH DEFENSE

Plaintiffs' claims are barred by applicable statutes of limitation of this state and/or other states, or alternatively, by the doctrine of laches.

### TWELFTH DEFENSE

Plaintiffs' claims, or some of them, are barred by the provisions of Miss. Code Ann. ' 15-1-41.

### THIRTEENTH DEFENSE

If Plaintiffs/Plaintiffs' decedents suffered injury or damage as alleged, which is denied, the same resulted solely from acts or omissions of persons or entities for which the Defendant is neither liable nor responsible. Such acts or omissions on the part of others constitute an independent, intervening and sole proximate cause of such injury or damage.

### FOURTEENTH DEFENSE

Plaintiffs' claims against this Defendant are speculative and do not warrant recovery.

## FIFTEENTH DEFENSE

It was the duty of Plaintiffs/Plaintiffs decedents employers Band not this Defendant to furnish Plaintiffs/Plaintiffs decedents with a reasonably safe place within which to work, including all necessary and adequate warnings and safety appliances, and if Plaintiffs/Plaintiffs' decedents received any injury or suffered any damage from working with this Defendant's product, which is denied, the failure of Plaintiffs/Plaintiffs' decedents' employers in their duty was the sole proximate cause of any such injury or damage, if any, or, in the alternative, was such an intervening cause as to relieve this Defendant from any liability to Plaintiffs.

## SIXTEENTH DEFENSE

If Plaintiffs/Plaintiffs' decedents sustained any injury as alleged, which is denied, the same resulted, upon information and belief, from Plaintiffs/Plaintiffs' decedents' own negligence, including the failure to care for their own health by using tobacco products over an extended period of time. The use of said tobacco products or other contributing negligence is the sole, direct and proximate cause, or a contributing cause, of the alleged injuries or damages, if any, about which Plaintiffs complain.

## SEVENTEENTH DEFENSE

The use by Plaintiffs/Plaintiffs' decedents of asbestos-containing materials, if any, was in accordance with the requirements of the designs, plans, and specifications of the United States Navy or others and in strict compliance therewith and with all required federal regulations and standards. This Defendant cannot be held to be liable to the Plaintiffs for complying with the designs, plans, specifications, and requirements of the United States Navy, or others under national defense procurement contracts, and for supplying materials for such contracts in accordance with their terms.

9

## EIGHTEENTH DEFENSE

Any product manufactured, sold or supplied by this Defendant was not defective or unreasonably dangerous in that it complied, at all relevant times, with all applicable government safety standards.

## NINETEENTH DEFENSE

If Plaintiffs/Plaintiffs' decedents sustained any injury or damage, which is denied, then such injury or damage was proximately caused or contributed to by exposure to and inhalation of noxious and deleterious fumes and residues from industrial products and by-products prevalent on Plaintiffs/Plaintiffs' decedents' job sites and substances other than those manufactured or sold by this Defendant, and by cumulative exposure to all types of environmental and industrial pollutants of air and water.

## TWENTIETH DEFENSE

The doctrines of payment, release and accord, and satisfaction, where applicable, bar the recovery sought by Plaintiffs against this Defendant.

## TWENTY-FIRST DEFENSE

There should be no recovery because, upon information and belief, Plaintiffs/Plaintiffs' decedents failed to mitigate their damages, if any, as required by law.

## TWENTY-SECOND DEFENSE

There should be no recovery against this Defendant because, upon information and belief, the conduct of Plaintiffs/Plaintiffs' decedent or others constituted abuse and misuse of the product so as to substantially change the condition of the product prior to Plaintiffs/Plaintiffs' decedents' injuries, if any.

## TWENTY-THIRD DEFENSE

There should be no recovery of punitive damages against this Defendant because such a recovery would violate:

    a.    The Eighth Amendment to the Constitution of the United States;

    b.    The Fourteenth Amendment to the Constitution of the United States;

    c.    The Fifth Amendment to the Constitution of the United States;

    d.    The Tenth Amendment to the Constitution of the United States;

    e.    Federal common law; and

    f.    The Constitutions of the States of Mississippi and of Plaintiffs' residence.

## TWENTY-FOURTH DEFENSE

An award of punitive damages against this Defendant in this case is unconstitutional and in violation of the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments of the Constitution of the United States, as well as Article 3, Section 14 of the Constitution of the State of Mississippi.

## TWENTY-FIFTH DEFENSE

An award of punitive damages against this Defendant in this case would violate the Excessive Fines Clause of the Eighth Amendment of the Constitution of the United States, as well as Article 3, Section 28 of the Constitution of the State of Mississippi.

## TWENTY-SIXTH DEFENSE

Plaintiffs' claims for punitive damages are barred by the "Double Jeopardy" Clause of the Fifth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment.

### TWENTY-SEVENTH DEFENSE

A damage award based on conspiracy constitutes a violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the Constitution of the United States, as well as Article 3, Section 14 of the Constitution of the State of Mississippi.

### TWENTY-EIGHTH DEFENSE

If Plaintiffs have heretofore settled or should hereafter settle for any of the alleged injuries and damages with anyone, then this Defendant is entitled to a credit and offset in the amount of said settlement and/or for the amount of the settling parties' allocated percentage of fault.

### TWENTY-NINTH DEFENSE

Upon information and belief, Plaintiffs' Complaint fails to name indispensable parties and, therefore, must be dismissed. Alternatively, this civil action should be stayed pending other appropriate relief by the Court.

### THIRTIETH DEFENSE

This Defendant has no liability to Plaintiffs because Plaintiffs/Plaintiffs' decedents' employers were sophisticated employers with the result that any duty of this Defendant to warn of any danger incident to use, exposure or installation of the products (the existence of such duty is denied) was discharged by those employers' intervening duties to give Plaintiffs/Plaintiffs' decedents all required warnings.

### THIRTY-FIRST DEFENSE

There should be no recovery against this Defendant for medical expenses incurred in the care, diagnosis or treatment of injury to Plaintiffs/Plaintiffs' decedent, if any, because said Plaintiffs/Plaintiffs' decedents' employers are obligated under the Workers Compensation laws

of the states of Plaintiffs/Plaintiffs' decedents' residence to pay for medical expenses which were incurred as a result of this occurrence, or because said Plaintiffs/Plaintiffs' decedents were entitled to receive benefits from private or public health insurance programs, health benefit plans, union-sponsored or union-provided health benefit plans, or other sources of health benefits which are responsible for the payment of all past, present and/or future medical expenses.

## THIRTY-SECOND DEFENSE

There should be no recovery against this Defendant because, to the extent that this Defendant acted or failed to act, this Defendant's conduct was in keeping with the state of the medical and industrial art as it existed at all pertinent times.

## THIRTY-THIRD DEFENSE

There should be no recovery against this Defendant because of any failure to warn or inadequacy of warning because, upon information and belief, at all times pertinent to Plaintiffs' claims, said Plaintiffs/Plaintiffs' decedents were possessed of or should have been possessed of good and adequate knowledge which negated any need for said warning and/or Plaintiffs/Plaintiffs' decedents were required to follow specific written safety procedures as established by Plaintiffs/Plaintiffs' decedents' employers which negated the need or requirement for any such warning.

## THIRTY-FOURTH DEFENSE

There should be no recovery against this Defendant because the exposure of Plaintiffs/Plaintiffs' decedents to this Defendant's products, if any, was de minimus. If it is shown at the time of trial that Plaintiffs/Plaintiffs' decedents were exposed to any product of this Defendant, said exposure was so minimal as to be insufficient to establish to a reasonable degree of probability that this Defendant's product substantially factored in or was the proximate cause of the alleged injuries.

13

## THIRTY-FIFTH DEFENSE

Upon information and belief, this action is barred by Miss. Code Ann. ' 15-1-65 (1972).

## THIRTY-SIXTH DEFENSE

To the extent that Plaintiffs have filed an action in any other Court against some or all of these same Defendants, this action should be dismissed in the interest of judicial economy and so as to prevent double recovery.

## THIRTY-SEVENTH DEFENSE

The products in issue were changed, altered, or modified after they left this Defendant's control and such change, alteration, or modification was the legal cause of Plaintiffs/Plaintiffs' decedents' damages, if any.

## THIRTY-EIGHTH DEFENSE

Plaintiffs/Plaintiffs' decedents were negligent in the use and operation of the products in issue, if any, and any recovery should be reduced in proportion to the degree of Plaintiffs/Plaintiffs' decedents' own negligence.

## THIRTY-NINTH DEFENSE

Plaintiffs' claims are preempted by the regulations of the Occupational Health and Safety Administration and other applicable federal laws.

## FORTIETH DEFENSE

If Plaintiffs/Plaintiffs' decedents used any of this Defendant's products, which is denied, on information and belief, such products were used for a purpose, in a manner or in an activity contrary to express adequate instructions or warnings appearing on or attached to the products or on their original containers or wrappers. Alternatively, the absence of warnings on any products sold by this Defendant did not make such products defective and unreasonably dangerous, nor

14

did it lead to reliance by the Plaintiffs/Plaintiffs' decedents or their employers, on the safety of any such products.

### FORTY-FIRST DEFENSE

This Defendant was not negligent, did not furnish a product defective and unreasonably dangerous and did not make or breach any express or implied warranties.

### FORTY-SECOND DEFENSE

This Defendant denies that Plaintiffs/Plaintiffs' decedents were ever exposed to any asbestos-containing products sold by this Defendant.

### FORTY-THIRD DEFENSE

If it be proved that this Defendant furnished any products to the employers of Plaintiffs/Plaintiffs' decedents, to which products Plaintiffs/Plaintiffs' decedents were exposed, then any such products were furnished in strict conformity to the specifications furnished through such employers.

### FORTY-FOURTH DEFENSE

To the extent that the Plaintiffs/Plaintiffs' decedents were exposed to any alleged product which was acquired from or sold by or used on behalf of the United States of America, or any state or political subdivision thereof, this Defendant is entitled to any sovereign or governmental immunity available to the United States or any such state or political subdivision.

### FORTY-FIFTH DEFENSE

To the extent applicable, this Defendant pleads the provisions of Miss. Code Ann. ' 85-5-7 (Supp. 1994). Moreover, to the extent Plaintiffs have settled some or all of the claims against other parties or potential joint tortfeasors, then this Defendant is entitled to a settlement credit.

### FORTY-SIXTH DEFENSE

This Defendant pleads applicable provisions of Miss. Code Ann. ' 11-7-15.

## FORTY-SEVENTH DEFENSE

This Defendant denies that it participated in any conspiracy or conduct designed or intended to deceive or misrepresent the qualities, characteristics, or properties of any product it designed, manufactured, marketed or sold.

## FORTY-EIGHTH DEFENSE

Plaintiffs are barred from bringing this action under the doctrine of res judicata.

## FORTY-NINTH DEFENSE

Some or all of the issues in the lawsuit have already been litigated and, therefore, Plaintiffs are collaterally estopped from re-litigating those issues.

## FIFTIETH DEFENSE

No duty to warn or notify Plaintiffs/Plaintiffs' decedents of any danger from exposure to this Defendant's products has ever devolved upon this Defendant; nevertheless, any delay by this Defendant in notification or warning to Plaintiffs/Plaintiffs' decedent of such danger which is claimed to have been required (and this Defendant denies that there was any such requirement or delay) is of no consequence and gives rise to no claim on the part of Plaintiffs against this Defendant. Significantly, before the time any alleged duty to notify or warn could have arisen as to this Defendant, Plaintiffs/Plaintiffs' decedents were exposed to asbestos and/or other substances from other sources sufficient to cause their conditions, and notification or warning thereafter is of no value. There is, therefore, no proximately causal relationship between any delay in notification or warning to Plaintiffs/Plaintiffs' decedents and their subsequent alleged conditions.

## FIFTY-FIRST DEFENSE

Any injuries, illnesses, diseases, disabilities, losses or damages alleged by Plaintiffs/Plaintiffs' decedents were proximately caused or contributed to by an act or acts and

16

omission or omissions on the part of Plaintiffs/Plaintiffs' decedents' fellow servants, fellow supervisors and employers, and, accordingly, recovery or relief against this Defendant is barred.

## FIFTY-SECOND DEFENSE

At all times material hereto, the state of the medical and industrial art was such that there was no generally accepted or recognized knowledge of any unavoidable unsafe, inherently dangerous, hazardous or defective character, or nature of the asbestos products allegedly at issue, when used in the manner and for the purposes intended so that there was no duty by this Defendant to know of such character or nature, or to warn Plaintiffs/Plaintiffs' decedents or others similarly situated.

## FIFTY-THIRD DEFENSE

If Plaintiffs/Plaintiffs' decedents were employees of this Defendant during their alleged exposure, their claims are barred by the exclusive remedy provisions of the applicable Workers Compensation Act as to each applicable defendant.

## FIFTY-FOURTH DEFENSE

The manufacture, packaging and sale of all products produced by this Defendant met all state-of-the-art design, manufacturer requirements and applicable federal and state codes at the time of manufacture.

## FIFTY-FIFTH DEFENSE

The injuries, if any, for which Plaintiffs seek recovery resulted from Plaintiffs/Plaintiffs' decedents' pre-existing illnesses or conditions not common to other persons and not determinable or foreseeable by this Defendant All injuries and damages alleged by Plaintiffs, if any, were proximately contributed to by Plaintiffs/Plaintiffs' decedents' pre-existing injuries and conditions.

17

## FIFTY-SIXTH DEFENSE

This Defendant reserves the right to amend its answer and affirmative defenses after investigation, discovery and further information is disclosed to this Defendant to enable it to properly answer Plaintiffs' Complaint and defend the claim asserted herein against this Defendant.   This Defendant further will rely upon any law that is available to it after the completion of discovery and investigation of this cause.

## FIFTY-SEVENTH DEFENSE

This Defendant retains its right to seek contribution and/or indemnification against any and all manufacturers of asbestos-containing materials who have filed petitions in various bankruptcy courts and consequently are not presently within the jurisdiction of this Court.

## FIFTY-EIGHTH DEFENSE

This Defendant adopts and incorporates any and all other defenses raised by any other Defendant in this litigation to the extent that said defenses are not inconsistent with this Defendant's assertion that it is not liable to Plaintiffs for any amount whatsoever.

## FIFTY-NINTH DEFENSE

Plaintiffs' Complaint should be dismissed based on a mis-joinder of parties and/or claims.

## SIXTIETH DEFENSE

Venue is improper.

## SIXTY- FIRST DEFENSE

Defendant is a seller in the stream of commerce pursuant to Mississippi Code Annotated Sec. 11-1-64 and, therefore, any and claims against Defendant should be dismissed.

## SIXTY- SECOND DEFENSE

An award of punitive damages against this Defendant would be controlled and limited by the provisions of Mississippi Code Annotated Sec.  11-1-65(3)(a).

18

## ANSWER OF DEFENDANT STUART C. IRBY CO.
## TO ALL CROSS-CLAIMS OF DEFENDANTS ASSERTING
## <u>CROSS-CLAIMS OR WHO MAY ASSERT CROSS-CLAIMS</u>

The Defendant, STUART C. IRBY CO., files this answer to all cross-claims and says as follows:

### <u>FIRST DEFENSE</u>

Each and every cross-claim filed herein fails to state a cause of action against this Defendant upon which relief may be granted.

### <u>SECOND DEFENSE</u>

This Defendant denies each and every allegation against it contained in each and every cross-claim filed herein.

### <u>THIRD DEFENSE</u>

This Defendant hereby adopts and incorporates herein by reference each and every responsive pleading and affirmative defense as set forth in its answer to the Complaint as if fully set forth herein.

### <u>FOURTH DEFENSE</u>

Those defendants filing cross-claims have no cause of action for contribution and/or indemnification against this Defendant.

WHEREFORE, STUART C. IRBY CO., respectfully requests that this Court enter judgment in its favor and against Plaintiffs and award it costs, expenses and any other appropriate relief.

This the 8TH day of September, 2004

Respectfully submitted,

STUART C. IRBY CO.,

MARCY B. CROFT (MB# 10864)

OF COUNSEL:

FORMAN PERRY WATKINS KRUTZ & TARDY LLP
Suite 200
One Jackson Place
188 East Capitol Street
Post Office Box 22608
Jackson, Mississippi 39225-2608
(601) 960-8600

## CERTIFICATE OF SERVICE

I hereby certify that I have this date mailed by U.S. Mail, postage prepaid a true and correct copy of the foregoing Answer to Plaintiffs' counsel of Record and written notice of filing of the foregoing document to counsel for defendants at their usual business addresses.

This, the 81st day of September, 2004

MARCY B. CROFT (MB# 10864)



**Current Throu**

Search
- **By Business Name**
- **By Business ID**
- **By Officer Name**
- **By Registered Agent**
- **New Corporations**
  - Annual Report
- **File Online**
  - Verification
- **Verify Certification**
  - Online Orders
- **Register for Online Orders**
- **Order Good Standing**
  - Fee Schedules
- **Corporations**
- **Limited Partnerships**
- **Limited Liability Partnerships**
- **Limited Liability Companies**
  - Miscellaneous
- **Registered Agents**
- **Download Corporate Forms and Instructions**
- **Look Up an SIC**
  - Contact
- **Corporations Unit**





**Date:** 10/19/2004    <u>**View Filed Documents**</u>

## Name History

| Name | Name Type |
|------|-----------|
| STUART C. IRBY COMPANY | Legal |

## Business Corporation - Domestic - Information

| | |
|---|---|
| **Business ID:** | 205791 |
| **Status:** | Good Standing |
| **Creation Date:** | 6/16/1926 |
| **State of Incorporation:** | MS |
| **Principal Office Address:** | 815 S STATE ST<br>JACKSON MS 39201-800 |
| **Principal Mailing Address:** | No Address |
| **Listing Address:** | No Address |
| **Last Annual Report Filed Date:** | 3/29/2004 |
| **Last Annual Report Filed:** | 2004 |
| **Annual Report Month:** | January |

## Registered Agent

| | |
|---|---|
| **Agent Name:** | <u>**Waring, Andrew J**</u> |
| **Office Address:** | 815 S State St<br>Jackson MS 39201 |
| **Mailing Address:** | |

## <u>Officers & Directors</u>

**Home  |  Accessibility Policy  |  Contact Us  |  E-mail Us  |  Links  |  Search**

Copyright © 2004 Mississippi Secretary of State. All rights reserved.
Due to the use of DHTML and Java, this Web site is optimized for Microsoft Internet Explorer 5+ or Netscape 6+.



EXHIBIT
C

# PANEL SERVICE LIST (Excerpted from CTO-239)
## DOCKET NO. 875
## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*Roy Barry, et al. v. A.O. Smith Co., et al.*, S.D. Mississippi, C.A. No. 1:04-731 (Judge Walter J. Gex III)

Robert M. Arentson Jr
Baker, Donelson, Bearman, Caldwell
& Berkowitz
P.O. Box 14167
Jackson, MS 39236-4167

David A. Baker
Forman Perry Watkins Krutz & Tardy
P.O. Box 22608
Jackson, MS 39225-2608

Scott W. Bates
Baker, Donelson, Bearman, Caldwell
& Berkowitz
P. O. Box 14167
Jackson, MS 39236-4167

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

James H. Bolin
Butler, Snow, O'Mara, Stevens &
Cannada
P.O. Box 22567
Jackson, MS 39225-2567

Jason Daniel Bone
Gieger, Laborde & Laperouse
One Shell Square
701 Poydras Street
Suite 4800
New Orleans, LA 70139-4800

Nathaniel A. Bosio
Dogan & Wilkinson, PLLC
P.O. Box 1618
734 Dalmas Ave
Pascagoula, MS 39568-1618

Fred E. Bourn, III
Butler, Snow, O'Mara, Stevens &
Cannada
P.O. Box 22567
Jackson, MS 39225-2567

Stefan G. Bourn
Forman, Perry, Watkins, Krutz &
Tardy, LLC
P.O. Box 22608
Jackson, MS 39225-2608

Craig E. Brasfield
Forman, Perry, Watkins, Krutz &
Tardy, LLC
P.O. Box 22608
Jackson, MS 39225-2608

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, DC 20036

Marcy B. Croft
Forman, Perry, Watkins, Krutz &
Tardy, LLC
P.O. Box 22608
Jackson, MS 39225-2608

Richard M. Crump
Forman, Perry, Watkins, Krutz &
Tardy
P.O. Box 22608
Jackson, MS 39225-2608

David A. Damico
Burns, White & Hickton
Fifth Avenue Place, Suite 2400
120 Fifth Avenue
Pittsburgh, PA 15222

Walter W. Dukes
Dukes, Dukes, Keating & Faneca
P.O. Drawer W
Gulfport, MS 39502-0680

Andrea L. Edney
Brunini, Grantham, Grower & Hewes
248 East Capitol Street
P.O. Box 119
Jackson, MS 39205-0119

C. Michael Evert, Jr.
Evert & Weathersby, LLC
3405 Piedmont Road, N.E., Suite 225
Atlanta, GA 30305-1764

James L. Fletcher, Jr.
Montgomery, Barnett, Brown, Read
3200 Energy Centre
1100 Poydras St.
New Orleans, LA 70163-3200

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106-2574

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Robert C. Galloway
Butler, Snow, O'Mara, Stevens &
Cannada
1300 25th Avenue, Suite 204
P.O. Drawer 4248
Gulfport, MS 39502-4248

Patricia C. Gandy
Butler, Snow, O'Mara, Stevens &
Cannada
P.O. Box 22567
Jackson, MS 39225-2567

Cheri D. Green
Brunini, Grantham, Grower & Hewes
P.O. Drawer 119
Jackson, MS 39205-0119

Samuel D. Habeeb
Forman, Perry, Watkins, Krutz & Tardy
P.O. Box 22608
Jackson, MS 39225-2608

Susan M. Hansen
Brownson & Ballou
4800 U.S. Bank Place
601 Second Avenue, South
Minneapolis, MN 55402

Jeffrey P. Hubbard
Wells, Moore, Simmons & Hubbard
P.O. Box 1970
Jackson, MS 39215-1970

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308-1314

Matthew P. Lachaussee
Allen, Vaughn, Cobb & Hood
P.O. Drawer 4108
Gulfport, MS 39502-4108

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Louis B. Lanoux
Watkins & Eager
P. O. Box 650
Jackson, MS 39205-0650

Richard T. Lawrence
Watkins & Eager
P.O. Box 650
Jackson, MS 39205-0650

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102

Matthew S. Lott
Doza & Wilkinson
734 Delmas Avenue
Pascagoula, MS 39565

Ronald L. Motley
Motley Rice, LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

Scott B. Ostrow
Wyatt, Tarrant & Combs
P.O. Box 775000
Memphis, TN 38120-4367

Mary Margaret Ratliff
Forman Perry Watkins Krutz & Tardy
P.O. Box 22608
Jackson, MS 39225-2608

Robert L. Redfearn
Simon, Peragine, Smith & Redfearn
Energy Centre, 30th Floor
1100 Poydras Street
New Orleans, LA 70163

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
Roven, Kaplan & Wells
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Stacey L. Sims
Morris, Sakalarios & Blackwell, PLLC
1817 Hardy Street
Hattiesburg, MS 39401

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA 19102

Jennifer M. Studebaker
Forman, Perry, Watkins, Krutz &
Tardy
P.O. Box 22608
Jackson, MS 39225-2608

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1570 Penobscot Building
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226

Cowles E. Symmes
Page, Mannino, Peresich &
McDermott
759 Vieux Marche' Mall
P.O. Drawer 289
Biloxi, MS 39533-0289

Andrew J. Trevelise
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Thomas W. Tyner
Aultman, Tyner, Ruffin & Yarborough
P.O. Box 750
315 Hemphill Street
Hattiesburg, MS 39403-0750

Mary W. Van Slyke
Page, Mannino, Peresich & McDermott
P.O. Drawer 289
Biloxi, MS 39533-0289

Carey R. Varnado
Montague, Pittman & Varnado
P.O. Drawer 1975
Hattiesburg, MS 39403-1975

John E. Wade, Jr.
Brunini, Grantham, Grower & Hewes
P. O. Drawer 119
Jackson, MS 39205-0119

William L. Watt
Brunini, Grantham, Grower & Hewes
P.O. Drawer 210
Pascagoula, MS 39568

Alton L. Watts
Shell Buford, Pllc
P.O. Box 157
Jackson, MS 39205-0157

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

Emilie Fischer Whitehead
Page, Mannino, Peresich & McDermott
P.O. Drawer 289
Biloxi, MS 39533-0289

Terrell S. Williamson
Phelps Dunbar
P.O. Box 23066
Jackson, MS 39225-3066