

MDL 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 15 2004

FILED
CLERK'S OFFICE

### DOCKET NOS. 875 AND 1535

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

### MDL-875—IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION

### MDL-1535—IN RE WELDING ROD PRODUCTS LIABILITY LITIGATION

### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

| | | |
|---|---|---|
| **DOUG BENOIT, *ET AL*** | § | |
| | | |
| v. | § | **CIVIL ACTION NO. 1:04-CV-0597** |
| | | |
| **J. RAY MCDERMOTT, INC., *et al*** | § | **Jury** |

### PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER AND BRIEF IN SUPPORT

**NOW COMES**, Doug Benoit, *et al,* Plaintiffs, and pursuant to Rule 7.4 of the

Rules of Procedure of the Judicial Panel on Multidistrict Litigation, file this Plaintiff's

Motion to Vacate Conditional Transfer Order and Brief in Support.

### Pending Motion to Remand to State Court

1.      This case was removed from state court in Jefferson County, Texas, where it has

been pending for 2 years to United States District Court for the Eastern District of Texas.

The removal was filed by some, but not all, third party and cross claim Defendants who

supplied welding rods used by Plaintiffs in the course of their employment (hereafter the

"Removing Defendants").  Plaintiffs filed a Motion to Remand, which was heard by the

PLEADING NO. 4364

IMAGED DEC 16 '04   OFFICIAL FILE COPY

Judge Heartfield of the Eastern District of Texas on December 1, 2004. A decision is pending at the time of filing this Motion to Vacate. The Panel on November 30, 2004, advised Judge that he continued to have jurisdiction over the case, particularly a pending Motion to Remand. Plaintiffs request that the Court refrain from consideration of the Transfer until the Eastern District of Texas has ruled on Plaintiffs' Motion to Remand.

### Transfer and Separation violate §1407 and §1441(c)

2.       On November 12, 2004, the Panel entered a Conditional Transfer Order (CTO-238) with Separation and Remand in MDL-875 and a Conditional Transfer Order (CTO-18) in MDL-1535.    On November 29, 2004, Plaintiffs filed a Notice of Opposition to both Conditional Transfer Orders. Plaintiffs now ask the Panel to vacate both Conditional Transfer Orders based upon 28 U.S.C. §1407 and §1441(c).

### The Underlying Case

3.       This is a mass tort case which was brought by all Plaintiffs under Title 46, United States Code § 688 et seq., commonly referred to as the "Jones Act" incorporating the Federal Employers Liability Act and general maritime law, for damages for personal injuries suffered by the Plaintiffs, each in their capacity as a crew member of a vessel for personal injuries. Plaintiffs' claims included pendant state law product liability allegations against asbestos and welding rod manufacturers and suppliers. There are 105 plaintiffs. Of those, seventy-five plaintiffs have brought claims for exposures to both asbestos and welding fumes; five have brought claims relating to asbestos exposure only and an additional twenty-five for welding fumes only. Defendants in the case include Jones Act Defendants, insurers of one Jones Act Defendant, welding rod suppliers, and asbestos product suppliers

4.     This action was filed in state court in the 58th Judicial District Court of Jefferson County, Texas on November 14, 2002.  Each of the removing Defendants was initially sued directly by Plaintiffs.  Each of the removing Defendants appeared, answered, and participated actively in the defense of that action, including accumulation of social security records by deposition on written questions, receipt of the Plaintiff's written discovery responses, pretrial motions, and oral depositions of Plaintiffs.    Each of Removing Defendants were also sued in cross actions filed by other Defendants.  In February 2004, the state court entered a scheduling order with a trial date of July 2004. [1]

5.     On April 3, 2004, Plaintiffs entered into contractual tolling agreements with the removing Defendants, which resulted in nonsuit of the removing Defendants with Plaintiffs retaining the right to reinstate the claims against the removing Defendants.  The removing Defendants remained parties in the case by virtue of cross actions which had been filed by other Defendants against the removing Defendants.  The cross-actions against the Removing Defendants were never dismissed.  On June 1, 2004, Defendant McDermott filed and served Third Party Plaintiff claims against the Removing Defendants.[2]  On July 20, 2004, Plaintiffs brought and served compulsory cross claims against the Removing Defendants.[3]   On August 20, 2004, the state court entered an Amended Scheduling Order with a trial date of April 2005.[4]  Removing Defendants filed a Notice of Removal on September 17, 2004, with a concurrent request for consideration

---

[1] The February Scheduling Order is attached as Exhibit 1.

[2] Third Amended Third Party's Petition attached as Exhibit 2.

[3] Plaintiffs Original Cross Claim Petition attached as Exhibit 3.

[4] The August Scheduling Order is attached as Exhibit 4.

of transfer to the MDL: In re Welding Rod Products Liability Litigation, pending in the Northern District of Ohio. As a basis for removal, Defendants alleged that Plaintiffs discovery responses and social security records served on Defendants between November and December of 2003 showed that 24 of the Plaintiffs worked at some point at Avondale shipyard. Further alleging that Avondale did some work on Navy vessels, the removing Defendants asserted that the work history of the "Avondale 24" implicated the federal officer removal statute (28 U.S.C. § 1442) and removed all 105 Plaintiffs' welding and asbestos claims to federal court.[5]   Plaintiffs have also attached Plaintiffs' Motion to Remand which presents the details of the procedural history of the case.[6]   Plaintiffs offer recitation of the procedural history of the case both explain the lack of federal jurisdiction and show that the case is proceeding efficiently prior to removal and is too far advanced to be fairly separated and transferred at this time.

## Lack of jurisdiction under §1441(c)

6.      Some, but not all of the welding rod Defendants removed the case to federal court on the allegation of a "federal officer" defense (28 U.S.C. §1442), and requested a transfer of the entire case to the Welding Rod MDL under 28 U.S.C. §1407. In response to the request for transfer, the Panel has conditionally severed the asbestos and welding claims, which was not requested by the removing parties. Plaintiffs oppose the separation of the welding and asbestos claims and transfer of the asbestos claims to an MDL for several reasons.

---

[5] A more complete history is setout in the time line attached as Exhibit 5.

[6] Plaintiffs' Motion to Remand is attached as Exhibit 6.

7.    There is no jurisdiction to support the asbestos claims in a federal asbestos MDL. The MDL venue statute (28 U.S.C. §1407) provides that the Panel may transfer cases involving common questions of fact for convenience of the parties and in order to promote the "just and efficient conduct" of the case.  At the outset, it must be noted that §1407 is a venue statute.  It does not create jurisdiction.  A transferee court (in this case, the Asbestos MDL) must find its jurisdiction in some other place.

8.    The only allegation to support federal jurisdiction is the "federal officer" defense alleged by some welding rod Defendants.  There are no allegations of federal jurisdiction over the non-removing welding rod Defendants, the asbestos product Defendants, the insurance Defendants, or the Plaintiffs other that the 24 "Avondale" Plaintiffs. The sole basis of federal jurisdiction is the exercise of pendant jurisdiction over these state law claims that are joined with the "federal officer" claims.  Such a severance is not permitted under 28 USC 1441(c). If the asbestos claims are considered separately, there is no basis for the exercise of federal jurisdiction over the asbestos claims.  The claims are based upon product liability law of Texas.  28 USC 1441(c) provides that the Court may exercise jurisdiction over the state claims or may remand the state claims back to state court.  If any of the pendant claims are severed, pendant jurisdiction ends and the pendant claim must be remanded to state court.

### Separation off claims under §1407

9.    Section 1407 does allow the panel to separate claims; however, the Panel may only remand the separated claims back to Eastern District of Texas, which in turn, must remand the separated claims to state court.

### Transfer is neither convenient nor efficient

10.     Plaintiffs request that the Panel vacate its conditional transfer order because severance of the claims in the manner ordered by the Panel is contrary to the directions of §1407. The MDL venue statute (28 U.S.C. §1407) provides for transfer of cases for the convenience of the parties and "just and efficient" conduct of the case.   The severance proposed by the Panel is neither convenient nor just and violates 28 U.S.C. 1441(c).  The Panel severance would require Plaintiffs to not only go to Ohio but also Pennsylvania. Furthermore, Plaintiffs counsel will also be required to present Plaintiffs claims in Ohio and Pennsylvania. Plaintiffs' counsel does not have clients in either the welding rod or asbestos MDL, so this is not simply a matter of adding more names to counsel's MDL docket. Further, separating Plaintiffs claims duplicates the work of Plaintiffs. Plaintiffs' claims arise out of long careers working for McDermott and similar companies. Plaintiffs will be required to presents themselves for two depositions and two trials regarding the same work.

11.     Separation of the claims also prejudices Plaintiffs in the trial of their claims. Further, at the trial of welding claims, the welding product suppliers will blame the asbestos products (the empty chair) and at the trial of asbestos claims, the asbestos product suppliers will likewise blame the welding products (the empty chair).   Juries are invited to find that Plaintiffs are injured but exonerate the Defendants because Plaintiffs have the "other" case to compensate them.

### Lack of common questions of fact

12.     The preclusion of the separation of the case also precludes the transfer of the entire case to the Welding Rod MDL in Ohio. The stated purpose of a §1407 transfer is

to promote just and efficient administration of cases involving common questions of fact. The cases cannot be separate because of jurisdiction and fairness concerns. The welding rod Defendants requested only that the Panel transfer the entire case as one to the Welding Rod MDL. The Panel recognizes that the action case should not be transferred as one because there are many issues that are specific to this case and are not shared with the Welding Rod Products MDL in Ohio. This case presents Jones Act, asbestos products, insurance coverage, and contractual indemnity causes of action that have no commonality with the issue of the Welding Rod Products MDL in Ohio. There are Jones Act Defendants, asbestos Defendants, indemnity Defendants, and insurance Defendants that have no commonality with the Defendants in the Welding Rod Product MDL. A §1407 transfer is asking the Ohio court to deal with products, causes of action, state laws, parties, and medical science that has nothing in common with cases currently pending in the welding rod MDL. In the event that the case is not remanded to state court, then the Panel should allow the Eastern District of Texas to consider the parties, law, facts, and allegations that are specific to this case.

13.    Plaintiffs also point out that the Panel's conditional order of transfer would deprive Plaintiffs of the choice of venue. Plaintiffs' choice of venue is an important consideration in questions of venue and should be given a heavy weight in the matter. Plaintiffs' choice of venue in Jefferson County Texas is all the more important when the Panels alternative would divide the venue between Ohio and Pennsylvania at great inconvenience and unfairness to the parties.

### Conclusion

14.    Plaintiffs therefore request that the Panel vacate Conditional Transfer Order

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 15 2004

CLERK'S OFFICE

(CTO-238) with Separation and Remand in MDL-875 and a Conditional Transfer Order (CTO-18) in MDL-1535, and for such other relief to which Plaintiffs may show themselves entitled.

Respectfully submitted,

THE CARLILE LAW FIRM, L.L.P.
400 South Alamo
Marshall, Texas  75670
Telephone No.:  903-938-1655
Fax No.:  903-938-0235

By: _____

DAVID C. CARLILE
State Bar No.:  03804500

D. SCOTT CARLILE
State Bar No. 24004576

BRUCE A. CRAIG
State Bar No.:  04975270

MARK D. STRACHAN
State Bar No.:  19351500

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was forwarded this 13th day of December 2004 to all counsel entitled to notice pursuant to the Federal Rules of Civil Procedure, including those on the attached involved counsel list.

_____
Mark D. Strachan

Michael J. Beck, Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Fed. Jud. Bldg.
Rm G-255, North Lobby
Washington, D.C. 20002

Arthur R. Almquist
Mehaffey & Weber, PC
One Allen Center
500 Dallas, Suite 1200
Houston, Texas 77002

Barbara J. Barron
Mehaffey & Weber, PC
2615 Calder, Suite 800
Beaumont, Texas 77704

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, Ohio 44114

William C. Book, Jr.
Tekell, Book, Matthews & Limmer
4300 One Houston Center
1221 McKinney
Houston, Texas 77010

Margaret T. Brenner
Bracewell & Patterson
South Tower Pennzoil Place, #2900
711 Louisiana Street
Houston, Texas 77002

Adam M. Chud
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, DC 20036

Rachel G. Clingman
Fulbright & Jaworski
1301 McKinney, Suite 4300
Houston, Texas 77010-3095

Michael T. Crawford
Ramey & Flock
100 East Ferguson, Suite 500
Tyler, Texas 75702

John R. Dolezal
Stevens, Baldo & Freeman, LLP
500 Fannin Street, Suite 400
P.O. Box 4950
Beaumont, Texas 77701

Kent M. Adams
Adams & Coffey
505 Fannin, Suite 800
Beaumont, Texas 77701

Barbara Lee Arras
Phelps Dunbar, LLP
Canal Place, Suite 2000
365 Canal Street
New Orleans, Louisiana 70130-6534

Frank Mason Bean
Bean Bean & Brothers
820 Gessner Road, Suite 1500
Houston, Texas 77024

John G. Bissell
Strong, Pipkin, Bissell & Ledyard
1111 Bagby Street, Suite 2300
Houston, Texas 77002

Ernest William Boyd
Mehaffy & Weber, PC
2615 Calder, Suite 800
Beaumont, Texas 77701

John W. Bridger
Strong, Pipkin, Bissell & Ledyard
1111 Bagby Street, Suite 2300
Houston, Texas 77002

Brian S. Clary
Brian S. Clary & Associates
402 Staitti
Humble, Texas 77338

Lea F. Courington
Gwinn & Roby
4100 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270

David A. Damico
Burns, White & Hickson
Fifth Avenue Place, Suite 2400
120 Fifth Avenue
Pittsburgh, Pennsylvania 15222

Thomas W. Duesler
Harris, Lively, Duesler & Hatfield
P.O. Box 830
500 Fannin, Suite 650
Beaumont, Texas 77704

Gordon Randall Akin
3400 West Marshall Avenue
Suite 300
Longview, Texas 75604

Kenneth Camp Bailey
Williams Bailey Law Firm
8441 Gulf Freeway, Suite 600
Houston, Texas 77017-5001

John H. Beisner
O'Melveny & Myers, LLP
1625 Eye Street, N.W.
Washington, D.C. 20006-4001

Paula H. Blazek
Germer, Bernsen & Gertz
550 Fannin Street, Suite 700
Beaumont, Texas 77701

Michael Lamar Brem
Baker Botts, LLP
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, Ohio 44115

John R. Climaco
Climaco, Lefkowitz, Peca, Wilcox & Garofoli
The Halle Building, Suite 900
1228 Euclid Avenue
Cleveland, Ohio 44115

Jim E. Cowles
Cowles & Thompson, PC
901 Mail Street, Suite 4000
Dallas, Texas 75202

Michael B. DeSanctis
Jenner & Block
601 13th Street, N.W.
Suite 1200 South
Washington, DC 20005

Joanne Early
Gardere Wynne Sewell, LLP
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201

Laurie B. Easter
Jackson Walker, LLP
1401 McKinney, Suite 1900
Houston, Texas 77010

William Howard Farrell
Cotton & Farrell
801 Congress, Suite 400
Houston, Texas 77002

Kirk T. Florence
Crouch & Inabnett
2300 Fountain Place
1445 Ross Avenue
Dallas, Texas 75202

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street, 33rd Floor
Philadelphia, Pennsylvania 19103

Susan M. Hansen
Brownson & Ballou
4800 U.S. Bank Place
601 Second Avenue, South
Minneapolis, Minnesota 55402

Randall Kyle Hawes
Chamberlain Harlicka White Williams & Martin
1200 Smith Street, Suite 1400
Houston, Texas 77002

Jessica R. Jones
Galloway Johnson Tompkins Burr & Smith
3555 Timmons Lane, Suite 1225
Houston, Texas 77027

Robert Joseph Killeen, Jr.
Killeen & Wheat
8 Greenway Plaza, Suite 614
Houston, Texas 77046

Reginald S. Kramer
Oldham & Dowling
195 South Main Street, Suite 300
Akron, Ohio 44308-1314

Tori S. Levine
Brown McCarroll
2000 Trammel Crow Center
2001 Ross Avenue
Dallas, Texas 75201

Richard M. Edmonson
Armstrong Allen, PLLC
4450 Old Canton Road, Suite 210
Jackson, Mississippi 39211

Catherine K. Faubion
Thompson Coe
700 North Pearl Street, 25th Floor
Dallas, Texas 75201-2832

Keith W. Foley
Mehaffy & Weber, PC
2615 Calder, Suite 800
Beaumont, Texas 77701

James M. Garner
Sher Garner Cahill Richter Klein, etc.
909 Poydras Street, 28th Floor
New Orleans, Louisiana 70112

Frank G. Harmon, III
Crain, Caton, James
1401 McKinney, Suite 1900
Houston, Texas 77010

John R. Henderson
Brown McCarroll
2000 Trammel Crow Center
2001 Ross Avenue
Dallas, Texas 75201

Michael L. Jones
Henry & Jones
2902 Carlisle Street, Suite 250
Dallas, Texas 75204

J. Frank Kinsel, Jr.
Cantey & Hanger, LLP
2100 Burnett Plaza
801 Cherry Street
Fort Worth, Texas 76102

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 Easy Byrd Street
Richmond, Virginia 23219

Gary James Linthicum
Wells, Peyton, Beard, et al
550 Fannin, Suite 600
P.O. Box 3708
Beaumont, Texas 77704

John Caleb Elliott
Fitzhugh, Elliott & Ammerman, PC
12727 Kimberley, Suite 302
Houston, Texas 77024-0450

Gerald Russell Flatten
Rienstra, Dowell & Flatten
595 Orleans Street, Suite 1007
Beaumont, Texas 77701

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, Pennsylvania 19106-2574

Lawrence L. Germer
Germer, Bernsen & Gertz
550 Fannin Street, Suite 700
Beaumont, Texas 77701

James M. Harris, Jr.
Harris, Lively, Duesler & Hatfield
P.O. Box 830
550 Fannin, Suite 650
Beaumont, Texas 77704

Brad Kent Howell
Womble & Cotellesse
1814 Memorial Drive
Houston, Texas 77007

John M. Jordan
Gardere Wynne Sewell
1000 Louisiana, Suite 3400
Houston, Texas 77002-5007

Louis H. Knabeschuh
Jenkins & Martin
P.O. Box 26008
2615 Calder, Suite 500
Beaumont, Texas 77720-6008

Katharine R. Latimer
Spriggs & Hollingsworth
1350 I Street, N.W., Suite 900
Washington, DC 20005

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, Pennsylvania 19102

David Scott Lynch
Coats Rose Yale Ryman & Lee
3 Greenway Plaza, Suite 2000
Houston, Texas 77046

James G. Martingano
Mehaffy & Weber, PC
One Allen Center
500 Dallas, Suite 1200
Houston, Texas 77002

Lewis Charles Miltenberger
Lewis C. Miltenberger & Assoc.
108 W. 8th Street, Suite 500
Fort Worth, Texas 76102

Richard Milton Mosher
Thompson Coe
700 North Pearl Street, 25th Floor
Dallas, Texas 75201-2832

James A. Newsom
Munisteri Sprott Rigby Newsom & Robbins
3323 Richmond Avenue, Suite A
Houston, Texas 77098

James R. Old, Jr.
Germer, Bernsen & Gertz
550 Fannin Street, Suite 1700
Beaumont, Texas 77701

Wayne Peveto
Peveto & Peveto
118 Border
Orange, Texas 77630

Franklin A. Poff
Crisp, Boyd & Pff
2301 Moores Lane
P.O. Box 6297
Texarkana, Texas 75505

Ricky Anthony Raven
Thompson & Knight, LLP
333 Clay Street, Suite 3300
Houston, Texas 77002-4499

Kenneth D. Rhodes
Dunn, Kacal, Adams, Pappas & Law
America Tower
One Riverway, Suite 1200
Houston, Texas 77056

Brian Scott Martin
Thompson Coe
One Riverway, Suite 1600
Houston, Texas 77056

Tim McDonough
Jenkins & Martin
2615 Calder Street, Suite 500
P.O. Box 26008
Beaumont, Texas 77720-6008

M. Scott Minyard
Baker, Donelson, Bearman, Caldwell & Berkowitz
P.O. Box 14167
Jackson, Mississippi 39236

Ronald L. Motley
Motley Rice, LLC
28 Bridgeside Blvd.
Mount Pleasant, South Carolina 29464

Lipscomb Norvell, Jr.
Benckenstein Norvell & Nathan
P.O. Box 551
Beaumont, Texas 77704

Hubert Oxford, III
Benckenstein & Oxford
3535 Calder Avenue, Suite 300
P.O. Drawer 150
Beaumont, Texas 77704

Mark Randall Pickering
Adams & Coffey
1010 Lamar, Suite 901
Houston, Texas 77002

Russell Blane Power
Hart & Power
350 North Paul Street, Suite 2300
Dallas, Texas 75201

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, Pennsylvania 75219

James M. Riley, Jr.
Coats Rose Yale Ryman & Lee
3 Greenway Plaza, Suite 2000
Houston, Texas 77046

Kirksey E. Martin
Jenkins Grove & Martin
P.O. Box 26008
2615 Calder, Suite 500
Beaumont, Texas 77720

D. Mitchell McFarland
Harrison Bettis Staff McFarland & Weems
500 Dallas Street, Suite 2650
Houston, Texas 77002

Peter A. Moir
Quilling Selander Cumminskey, et al
2001 Bryan Street, Suite 1800
Dallas, Texas 75201

William R. Moye
Brown McCarroll
1111 Bagby, 47th Floor
Houston, Texas 77002

Todd Ogden
Forman Perry Watkins Krutz & Tardy, LLP
2001 Bryan Street, Suite 1300
Dallas, Texas 75201

George Plato Pappas
Sheehy, Serpe & Ware, PC
2500 Two Houston Center
909 Fannin Street
Houston, Texas 77010

John E. Pipkin
Johnson, Ferguson, Pipkin & Phillips
4900 Woodway, Suite 1100
Houston, Texas 77056

James Hayes Powers
Powers & Frost
1221 McKinney Street, Suite 2400
Houston, Texas 77010

David Dean Reynard, Jr.
Jenkins & Martin
2615 Calder Street, Suite 500
P.O. Box 26008
Beaumont, Texas 77720-6008

Robert J. Rose, Sr.
Timaeus & Rose, LLP
1612 IH 20 South
Beaumont, Texas 77707

John D. Roven
Roven, Kaplan & Wells
2190 North Loop West, Suite 410
Houston, Texas 77018

Richard E. Sarver
Barrasso Usdin Kupperman Freeman & Sarver
LL & E Tower
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard, Sixth Fl.
Los Angeles, California 90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West, 15th Floor
Philadelphia, Pennsylvania 19102

Robert E. Swickle
Jaques Admiralty Law Firm, PC
1570 Penobscot Building
The Maritime Asbestos Legal Clinic
Detroit, Michigan 48226

Steven Ray Thomas
Chambers, Templeton, Cashiola & Thomas
2090 Broadway
Beaumont, Texas 77701-4950

Andrew J. Trevelise
Reed Smith, LLP
2500 One Liberty Place.
1650 Market Street
Philadelphia, Pennsylvania 19103

C. Patrick Waites
1111 Bagby Street, Suite 2300
Houston, Texas 77002-2546

James L. Ware
Sheehy, Serpe & Ware, PC
2500 Two Houston Centre
909 Fannin
Houston, Texas 77010-1003

Charles Douglas Wheat
Folger, Wheat & Opperman
848 Heights Boulevard
Houston, Texas 77007

Joe M. Russell
Kent, Good & Anderson
301 North Market Street, Suite 650
Dallas, Texas 75202

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216

David B. Siegel
Crowell & Moring, LLP
1001 Pennsylvania Avenue
Washington, DC 20004

Kyle C. Steele
Forman, Perry, Watkins, Krutz & Tardy, LLP
2001 Bryan Street, Suite 1300
Bryan Tower
Dallas, Texas 75201

Thomas W. Taylor
Andrews & Kruth
600 Travis, Suite 4200
Houston, Texas 77002-2778

James M. Thompson
Royston Rayzor Vickery & Williams
1001 McKinney
Houston, Texas 77002-6418

Wesson Hardy Tribble
Tribble & Sanders
3050 Post Oak Blvd, Suite 1350
Houston, Texas 77056

John Robert Walker
Hays, McConn, Rice & Pickering
400 Two Allen Center
1200 Smith Street
Houston, Texas 77002

James R. Watkins
Royston Rayzor Vickery & Williams
205 Cotton Exchange Building
2102 Mechanic Street
Galveston, Texas 77550

Clay M White
Sammons & Parker, PC
218 North College
Tyler, Texas 75702

Steven L. Russell
Beirne, Maynard & Parsons
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201

Mark Steven Scudder
Strasburger & Price, LLP
901 Main Street, Suite 4300
Dallas, Texas 75202

H. Daniel Spain
Spain, Hastings & Ward
909 Fannin
2350 Two Houston Center
Houston, Texas 77010-1009

Stephanie D. Surratt
Orgain, Bell & Tucker
470 Orleans Street
P.O. Box 1751
Beaumont, Texas 77701

Melissa L. Theriot
Laborde & Neuner
1001 West Pinhook Road
One Petroleum Center, Suite 200
Lafayette, Louisiana 70503

James M. Tompkins
Galloway Johnson Tomplins Burr & Smith
3555 Timmons Lane, Suite 1225
Houston, Texas 77027

Theodore Voorhees, Jr.
Covington & Burling
1201 Pennsylvania Avenue, NW
P.O. Box 7566
Washington, DC 20004

Michael R. Walzel
Stevens, Baldo & Freeman, LLP
550 Fannin Street, Suite 400
P.O. Box 4950
Beaumont, Texas 77704

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, NE
P.O. Box 998
Cedar Rapids, Iowa 52406

Michael Don Williams
Brown Sims, PC
1177 West Loop South, Suite 1000
Houston, Texas 77027

Craig S. Wolcott
Hayes, McConn, Price & Pickering
400 Allen Center
1200 Smith Street
Houston, Texas 77002

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 15 2004

FILED
CLERK'S OFFICE

**DOCKET NOS. 875 AND 1535**

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

### MDL-875—IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION

### MDL-1535—IN RE WELDING ROD PRODUCTS LIABILITY LITIGATION

### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

| | | |
|---|---|---|
| **DOUG BENOIT,** *ET AL* | § | |
| | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| **1:04-CV-0597** | | |
| | § | |
| | § | |
| **J. RAY MCDERMOTT, INC.,** *et al* | § | **Jury** |

## EXHIBITS TO

## PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER

## ORDER AND BRIEF IN SUPPORT

<u>A-0168572</u>

| | |
|---|---|
| DOUG BENOIT ET AL | IN THE DISTRICT COURT OF |
| VS | JEFFERSON COUNTY, TEXAS |
| <u>J RAY MCDERMOTT INC ET AL</u> | 58TH DISTRICT COURT |

### DISCOVERY CONTROL PLAN ORDER

       The Court acting sua sponte, pursuant to Rule 190.4, TRCP, finds that this action requires a Discovery Control Plan by order; it is, accordingly,

       ORDERED that the following schedule of deadlines is in effect pending further order of this court, and the following matters shall be accomplished on or before the following dates:

DATES

1. All PAPER DISCOVERY propounded
   by any party                                  _____

2. Designation of EXPERTS by name,
   address, and current CV , and full report*
   for all PLAINTIFFS                      <u>MARCH 22, 2004</u>

3. Designation of EXPERTS by name, address,
   and current CV, and full reports* for parties other than
   PLAINTIFFS                             <u>APRIL 23, 2004</u>

4. ALL DISCOVERY concluded by          <u>JUNE 7, 2004</u>
   (The parties may extend by Rule 11 Agreement.)

5. All DISPOSITIVE MOTIONS and Robinson/Havner motions filed    <u>JUNE 21, 2004</u>

6. Case to be MEDIATED on or before        <u>JUNE 21, 2004</u>

7. PRE-TRIAL conference (see instruction sheet) All
   objections relating to DISCOVERY brought
   forward for hearing; any such objections not
   brought forward for hearing by this date will be
   found abandoned and will be overruled     <u>TO BE DETERMINED</u>

8. TRIAL for the month of               <u>JULY, 2004</u>

    *Reports are not required for treating health care providers.

       **Mediation shall be at a time and place, and before a mediator, as agreed by the parties; if the parties do not agree, the parties shall notify the Court at least 30 days prior to the deadline. <u>Whether or not the</u> time, place, and mediator are agreed, all parties must attend individually; corporations must have present an individual with full authority; all insurers must attend through a person with full authority; and all shall mediate in good faith.

       Robinson/Havner motions must be brought forward for hearing before or at the pre-trial hearing, failing which the <u>Robinson Havner</u> motions will be considered as abandoned or waived, and as such will be overruled. <u>Whether at the pre-trial hearing or otherwise,</u> the motion must be <u>specifically</u> set for hearing with notice to all parties and to the court, and the court co-coordinator must be advised of the amount of time requested for such hearing. In the absence of a specific request for a longer time, the court will allocate 15 minutes (total, for all parties) for the hearing on <u>all</u> such motions pending herein.



EXHIBIT

tabbies®     1

The discovery limitations of Rule 190.3, TRCP, shall apply, in satisfaction of the requirement in Rule 190.4(b)(3).

The deadlines herein shall remain in effect even though the case is not tried as scheduled above. THERE WILL BE NO CONTINUANCES GRANTED.

SIGNED this _____2ND_____ day of _____FEBRUARY_____, 2004.


_____
JUDGE PRESIDING

CAUSE NO. A168572

| DOUG BENOIT, et al. | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| VS. | § | JEFFERSON COUNTY, TEXAS |
| | § | |
| | § | |
| J. RAY MCDERMOTT, INC., et al. | § | 58th JUDICIAL DISTRICT |

## SUPPLEMENTAL THIRD AMENDED THIRD PARTY PETITION OF DEFENDANT J. RAY MCDERMOTT, INC. AGAINST WELDING ROD DEFENDANTS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Named Defendant, J. Ray McDermott, Inc. complaining of other Third Party Defendants names below, and for supplemental cause of action would show the Court and Jury as follows:

1.0    Third-party Plaintiff intends to conduct discovery under Level III.

Plaintiffs are citizens of Texas, Louisiana, Georgia, and Mississippi.  The following plaintiffs claim injuries and damages due to exposures to asbestos and to welding fumes[1]:

1.    Doug Benoit is a citizen and a resident of Louisiana.

2.    Thaddeus Chaisson is a citizen and a resident of Louisiana.

3.    William Edwards is a citizen and a resident of Georgia.

4.    Raymond Foret, Jr. is a citizen and a resident of Louisiana.

5.    Roy Freeman is a citizen and a resident of Louisiana.

6.    Ronald Gautreaux is a citizen and a resident of Louisiana.

7.    Jules Hebert is a citizen and a resident of Louisiana.



EXHIBIT

tabbies

2

---

[1] McDermott's Third Amended Petition incorporates all plaintiffs named or to be named in Plaintiffs' Original Petition as well as all subsequent Amended Petitions and Petitions in Intervention.

C:\Documents and Settings\jladmin\My Documents\ConversionWorkDir\351_200406020123320931.doc

8.      John Lombardi is a citizen and a resident of Louisiana.

9.      Eugene Lovell is a citizen and a resident of Louisiana.

10.     James Lovell is a citizen and a resident of Louisiana.

11.     Gerard Marcel is a citizen and a resident of Louisiana.

12.     Sterling Mayon is a citizen and a resident of Louisiana.

13.     Donald Melancon is a citizen and a resident of Louisiana.

14.     Billy Miller is a citizen and a resident of Louisiana.

15.     Steve Olivier is a citizen and a resident of Louisiana.

16.     Jerry F. Trosclair is a citizen and a resident of Louisiana.

17.     Paul J. Webre is a citizen and a resident of Louisiana.

18.     Chris Levron is a citizen and a resident of Louisiana.

19.     Rodney Martin is a citizen and a resident of Louisiana.

20.     Albert Aucoin is a citizen and a resident of Louisiana.

21.     Isaac Bergeron is a citizen and a resident of Louisiana.

22.     Eugene Bonvillian is a citizen and a resident of Louisiana.

23.     Earl Breaux, Jr. is a citizen and a resident of Louisiana.

24.     Gerald Chauvin is a citizen and a resident of Louisiana.

25.     Paul Crochet, Sr. is a citizen and a resident of Louisiana.

26.     Joseph Dufrene is a citizen and a resident of Louisiana.

27.     Arthur Ellender, Jr. is a citizen and a resident of Louisiana.

28.     Dale Gautreaux is a citizen and a resident of Louisiana.

29.     Oscar Gautreaux is a citizen and a resident of Louisiana.

30.     Ricky Giroir is a citizen and a resident of Louisiana.

31.     Rene Himel, Sr. is a citizen and a resident of Louisiana.

32.     Ralph Johnson is a citizen and a resident of Mississippi.

33.     Mac Knapp is a citizen and a resident of Louisiana.

34.     John Knight is a citizen and a resident of Louisiana.

35.     David Le Boeuf is a citizen and a resident of Louisiana.

36.     Arcen Marcel is a citizen and a resident of Louisiana.

37.     Perry Martin is a citizen and a resident of Louisiana.

38.     Gilbert Matherne, Jr. is a citizen and a resident of Louisiana.

39.     Rickey Mayon is a citizen and a resident of Louisiana.

40.     Davis Peltier is a citizen and a resident of Louisiana.

41.     Errol J. Roddy is a citizen and a resident of Louisiana.

42.     Thomas Savoy is a citizen and a resident of Louisiana.

43.     Jeffrey Souldier is a citizen and a resident of Louisiana.

44.     Freddie Theriot is a citizen and a resident of Louisiana.

45.     Willie Ward is a citizen and a resident of Louisiana.

46.     Donnie Lirette is a citizen and a resident of Louisiana.

47.     Bruce Desselle is a citizen and a resident of Louisiana.

48.     Keith Robichaux is a citizen and a resident of Louisiana.

49.     Russell Porche is a citizen and a resident of Louisiana.

50.     Leroy Le Boeuf, Sr. is a citizen and a resident of Louisiana.

51.     Berwick Fonseca, Sr. is a citizen and a resident of Louisiana.

52.     Bobby Chauvin is a citizen and a resident of Louisiana.

53.     David Paul Adams is a citizen and a resident of Louisiana.

54.     Dale P. Authement is a citizen and a resident of Louisiana.

55.     Edmond J. Babin is a citizen and a resident of Louisiana.

56.     Robert James Bergeron is a citizen and a resident of Louisiana.

57.     Louis Boudreaux is a citizen and a resident of Louisiana.

58.     Andrew Bourgeois is a citizen and a resident of Louisiana.

59.     Emile J. Bourgeois, Sr. is a citizen and a resident of Louisiana.

60.     Roy J. Breaux, Jr. is a citizen and a resident of Louisiana.

61.     Willie Breaux is a citizen and a resident of Louisiana.

62.     Ralph J. Brunet is a citizen and a resident of Louisiana.

63.     Elmer Joseph Brunet, Jr. is a citizen and a resident of Louisiana.

64.     Lawrence Castle is a citizen and a resident of Louisiana.

65.     Jack Frank Cosby is a citizen and a resident of Louisiana.

66.     Louis Cressione, Jr. is a citizen and a resident of Louisiana.

67.     Jimmie D. Daigle is a citizen and a resident of Louisiana.

68.     Verlon Daigle is a citizen and a resident of Louisiana.

69.     Maurice J. Dufrene, Jr. is a citizen and a resident of Louisiana.

70.     Michael Dupre is a citizen and a resident of Louisiana.

71.     Eldridge Durocher is a citizen and a resident of Louisiana.

72.     Bobby F. Ellender is a citizen and a resident of Louisiana.

73.     Keith Estopinal is a citizen and a resident of Louisiana.

74.     Clyde Maurice Ezell, Jr. is a citizen and a resident of Mississippi.

75.     Howard Fanguy is a citizen and a resident of Louisiana.

76.     Arthur L. Ford, Jr. is a citizen and a resident of Louisiana.

77.     Phillip A. Gaudet, Sr. is a citizen and a resident of Louisiana.

78.     Tobay Hebert is a citizen and a resident of Louisiana.

79.     Willie L. Hilton, Jr. is a citizen and a resident of Mississippi.

80.     Gary L. Hilton, Sr. is a citizen and a resident of Mississippi.

81.     Wayne N. Le Boeuf is a citizen and a resident of Louisiana.

82.     Harry P. LeBoeuf is a citizen and a resident of Louisiana.

83.     Johnny Ledford is a citizen and a resident of Louisiana.

84.     Gary B. Lee, Sr. is a citizen and a resident of Louisiana.

85.     Timothy J. Levron is a citizen and a resident of Louisiana.

86.     Linduel Lopez is a citizen and a resident of Louisiana.

87.     Murphy Loupe is a citizen and a resident of Louisiana.

88.     David G. Marcel is a citizen and a resident of Louisiana.

89.     Paul R. Martello is a citizen and a resident of Louisiana.

90.     Billy Troy Martin is a citizen and a resident of Louisiana.

91.     Jorge A. Mena is a citizen and a resident of Louisiana.

92.     Douglas W. Nicole is a citizen and a resident of Louisiana.

93.     Gilbert L. Oliver, Jr. is a citizen and a resident of Louisiana.

94.     Paul H. Peltier is a citizen and a resident of Louisiana.

95.     Patrick Plaisance is a citizen and a resident of Louisiana.

96.     Gerald Polaski is a citizen and a resident of Louisiana.

97.     Glynn Rhodes is a citizen and a resident of Louisiana.

98.     Edward John Rhodes, Jr., Deceased was a citizen and a resident of Louisiana.

99.     Raymond Joseph Richoux, Jr. is a citizen and a resident of Louisiana.

100.    Adley Rink is a citizen and a resident of Louisiana.

101.    Charles Rink is a citizen and a resident of Louisiana.

102.    Dan Roberson is a citizen and a resident of Louisiana.

103.    Robert James Simon is a citizen and a resident of Louisiana.

104.    Robert E. Thibodaux, III is a citizen and a resident of Louisiana.

105.    Russel A. Verret is a citizen and a resident of Louisiana.

106.    Kevin C. Villemarette is a citizen and a resident of Louisiana.

107.    Malcolm L. Watson is a citizen and a resident of Mississippi.

108.    Robert Paul Webre is a citizen and a resident of Louisiana.

109.    Chester Joseph Lacombe, Jr. is a citizen and a resident of Louisiana.

110.    Glenn Mitchell is a citizen and a resident of Louisiana.


2.0     Defendant   and   Third   Party   Plaintiff,   J.   RAY   MCDERMOTT,   INC.

("McDermott), brings this lawsuit as a corporation.

3.0     Third Party Defendant AVONCRAFT CONSTRUCTION CO. is a corporation,

company, or sole proprietorship who may be served with process by serving its president or vice

president at AvonCraft Construction Co. Inc, 5100 River Rd., Avondale, LA 70094.

- 5 -

3.1    Third Party Welding Rod Defendant ALCOA, INC. is a Pennsylvania corporation that may be served with process by serving its registered agent, CT Corporation System, 350 N. St Paul ,Street, Dallas, Texas 75201.

3.2    Third Party Welding Rod Defendant AMERICAN WELDING is a trade organization that may be served by serving its Executive Director at 550 N.W. Lejeune Road, Miami, Florida 33126.

3.3    Third Party Welding Rod Defendant A.O. SMITH is a Delaware corporation that may be served with process by serving its registered agent, Prentice-Hall Corporation System, Inc., 800 Brazos Street, Suite 750, Austin, Texas 78701.

3.4    Third Party Welding Rod Defendant GENERAL ELECTRIC COMPANY is a New York corporation that may be served with process by serving its registered agent, CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201 or either its attorney of, record, Kay Andrews of the firm Brown McCarroll, LLP., 111 Congress Avenue, Suite 1400, Austin, Texas 78701-4043.

3.5    Third Party Welding Rod Defendant ESAB GROUP, INC. is a Delaware. corporation who may saved with process by serving its-President or Vice President at 411 South Ebenezer Road, Florence, South Carolina 29501.

3.6    Third Party Welding Rod Defendant THERMODYNE is the assumed name of a Delaware corporation conducting business as Stoody, Thermal Arc, Tweco, Amair, among others in the State of Texas and may be sued in its assumed name under Rule 28, Texas Rules of Civil Procedure. Service may be effected by service on its registered agent for service, Ms. Katherine Rheinecker, C.T. Corporation System, 906 Olive Street, St. Louis, MO 631-01.

3.7     Third Party Welding Rod Defendant HANDY & HARMAN is a New York corporation who may be served with process by serving its registered agent, CT Corporation System, 111 Eighth Avenue, New York, New York 10011.

3.8     Third Party Welding Rod Defendant HOBART BROTHERS COMPANY D/B/A MCKAY WELDING PRODUCTS, is an Ohio corporation that may be served with process by serving its registered agent, CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

3.9     Third Party Welding Rod Defendant J.W. HARRIS CO., INC. is a company doing business in Texas that may be served with process by serving its President or Vice President at 4501 Quality Place, Mason, Ohio 45040-1971.

3.10    Third Party Welding Rod Defendant LINCOLN ELECTRIC HOLDINGS, INC. A/K/A LINCOLN ELECTRIC COMPANY is an Ohio corporation that may be served with process by serving its president or vice president at 22801 Saint Clair Avenue, Cleveland, Ohio 44117-2524.

3.11    Third Party Welding Rod Defendant Miller ELECTRIC CO. A/K/A MILLER ELECTRIC MANUFACTURING CO., is a corporation that may be served with process by serving its president or vice president at 1635 West Spencer Street, Appleton, Wisconsin 54914.

3.12    Third Party Welding Rod Defendant NATIONAL ELECTRICAL MANUFACTURERS ASSOCIATION, a trade association that may be served by serving its Board of Governors at 1300 North 17d' Street, Suite 1847, Rosslyn, Virginia 22209.

3.13    Third Party Welding Rod Defendant UNION CARBIDE CORPORATION A/K/A UNION CARBIDE CHEMICALS AND PLASTICS CO., INC., a New York corporation, formerly d/b/a Linde, that may be served with process by serving its registered agent, CT Corporation System, 1021 Main Street, Suite 1150, Houston, Texas 77002.

3.14    Third Party Welding Rod Defendant PRAXAIR, INC. is a Delaware corporation that may be served with process by serving its registered agent, Prentice-Hall Corporation System Inc., 800 Brazos Street, Suite 750, Austin, Texas 78701-2554.

3.15    Third Party Welding Rod Defendant SANDVIK, INC. is a Delaware corporation that may be served with process by serving its registered agent, CT Corporation System, 1021 Main Street, Suite 1150, Houston, Texas 77002.

3.16    Third Party Welding Rod Defendant TDY INDUSTRIES, INC. is a California corporation that may be saved with process by serving its registered agent, CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

3.17    Third Party Welding Rod Defendant VIACOM, INC., successor by merger to CBS CORPORATION F/K/A WESTINGHOUSE ELECTRIC CORPORATION (identified in Plaintiffs' Original Petition as Westinghouse Electric Corporation) is a Delaware corporation who has been served and is properly before this Court and may be served with process by serving its attorney of record, Michael L. Samford of the firm Strong, Pipkin, Nelson, Bissell & Ledyard, L.P., 1111 Bagby, #2300, Houston, Texas 77002-2546.

3.18    Third Party Welding Rod Defendant ALCOTEC WIRE CORPORATION is a foreign corporation which may be served through its registered agent for service, C.T. Corporation System, 30600 Telegraph Road, Bingham Farms, Michigan 48025.

3.19    Third Party Welding Rod Defendant ALCOAWELD WIRE CORPORATION is a foreign corporation which may be served through its registered agent for service, The Corporation Company, 30600 Telegraph Road. Bingham Farms, Michigan 48025.

3.20    Third Party Welding Rod Defendant ALLOY RODS CORPORATION, is a foreign corporation conducting business in the state of Texas and may be served through its

registered agent for service, C.T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

3.21    Third Party Welding Rod Defendant ARCOS ALLAYS is the assumed name of a corporation, partnership or sole proprietorship located in Texas with its principle offices located at 6416 Navigation Blvd, Houston, Texas 77011 and is sued in its assumed name under Rule 28, Texas Rules of Civil Procedure and may be served at that location by service on its manager, Mr. Charles Jaworski.

3.22    Third Party Welding Rod Defendant ARCOS ALLAYS CORPORATION is foreign corporation conducting business in the State of Texas. This Third Party Welding Rod Defendant may be served by service of process upon its C.E.O., Mr. James Breen, or its Secretary, Mr. Randy Baxter at 1 Areos drive, Mt. . Carmel, PA 17851.

3.23    Third Party Welding Rod Defendant AVESTAPOLARIT WELDING, INC., is a New Jersey Corporation conducting business in Texas and may be served through its registered agent for service, C.T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

3.24    Third Party Welding Rod Defendant BIG THREE INDUSTRIES, INC. is a foreign corporation conducting business in the state of Texas and may be served with process through its registered agent for service, Capitol Corporation Services, 800 Brazos Street, Suite 1100, Austin, Texas 78701.

3.25    Third Party Welding Rod Defendant BOHLER-THYSSEN WELDING-USA, INC. is a New York Corporation which may be served through its registered agent for service, C.T. Corporation System, 1021 Main Street, Suite 1150, Houston, Texas 77002.

3.26    Third Party Welding Rod Defendant SANDVIK COROMANT is the assumed name of a foreign corporation conducting business in the State of Texas and is sued in its assumed name under Rule 28, Texas Rules of Civil Procedure and may be served by serving the

principal officer in its offices in the State of Texas, Mr. Ray Benson at 13023 Trinity Drive, Stafford, Texas 77477.

3.27    Third Party Welding Rod Defendant J.W. HARRIS CO., INC. individually and dba HARRIS-WELCO is a foreign corporation conducting business in Texas and may be served process through its registered agent for service, C.T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

4.0     On November 14, 2002, Plaintiffs sued McDermott for injuries due to alleged exposure to asbestos and welding fumes during their employment by McDermott.

5.0     Third Party Defendants are liable to McDermott for all or part of Plaintiffs' claims because each of the Third Party Defendants was a manufacturer and/or supplier of welding rods during which time(s), Plaintiffs are alleging exposure to welding fumes which caused injuries and damages as more specifically described in Plaintiffs' Fourth Amended Petition, which is attached hereto and incorporated as if fully set out herein.  Third Party Plaintiffs' claims against Third Party Welding Rod Defendants sound in strict liability, negligence, and breach of warranty.  In addition, Third Party Plaintiff asserts that some of the Third Party Defendants may have contracts with Third Party Plaintiff requiring indemnification and defense of Plaintiffs' lawsuit by Third Party Defendant.

5.1     Third Party Plaintiff demands a jury trial.

5.2     All conditions precedent have been performed or have occurred.

WHEREFORE, PREMISES CONSIDERED, Third Party Plaintiff prays that Third Party Welding Rod Defendants be cited to appear and answer herein, and that upon hearing, Third Party Plaintiff will recover from each of the Third Party Defendants jointly and/or severally for their damages as alleged in an amount within the jurisdictional limits of this Court for general and special damages, and further, that Third Party Plaintiff recover from each of the Third Party

- 10 -

Defendants, jointly and/or severally in an amount within the jurisdictional limits of this Court for

exemplary damages, together with costs and disbursements herein, prejudgment interest, and

interest on said judgment from the date thereof until paid at the legal rate, and for such other and

further relief, both general and special, at law or in equity, to which Third Party Plaintiff may be

entitled to recover.

Respectfully submitted,

## James H. Powers

James H. Powers
Texas State Bar No. 16217400
Sharla J. Frost
Texas State Bar No. 07491100
2400 One Houston Center
1221 McKinney Street
Houston, Texas 77010
Telephone:     (713) 767-1555
Telecopier:    (713) 767-1799

**ATTORNEYS FOR DEFENDANT:
J. RAY MCDERMOTT, INC.**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this **THIRD AMENDED THIRD PARTY PETITION OF DEFENDANT J. RAY MCDERMOTT, INC.** has been served on plaintiffs' counsel via certified mail, return receipt requested and/or via facsimile transmission on this the 1st day of June, 2004.

<u>James H. Powers</u>

No. A-0168572

| | | |
|---|---|---|
| DOUG BENOIT, *et al.*, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiffs | § | |
| | § | |
| VS. | § | 58th JUDICIAL DISTRICT |
| | § | |
| J. RAY McDERMOTT, INC., *et al.* | § | |
| | § | |
| Defendants | § | JEFFERSON COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL CROSS CLAIM PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW named Plaintiffs named herein below, who, in addition to their claims brought under general maritime law by their Fourth Amended Petition, bring cross claims by this Original Cross Claim Petition under negligence, warranty and product liability theories against the manufacturers and suppliers of the welding products which have been included as third party defendants by Defendant J. Ray McDermott, Inc., and for cause of action would show the Court and Jury as follows:

I.

### DISCOVERY CONTROL LEVEL

Because of the complexity of this case, the Plaintiffs bring this action designated as a Discovery Level III case and request that a scheduling order tailored to the needs to the case be entered by the Court in this case.

II.

### PARTIES

A.   THE FOLLOWING PLAINTIFFS ARE CROSS CLAIMING for PERSONAL INJURIES DUE TO EXPOSURE TO WELDING FUMES:

PLAINTIFFS' ORIGINAL CROSS CLAIM PETITION – PAGE 1



EXHIBIT
tabbies®
3

1. David Paul Adams is a citizen and resident of Louisiana.

2. Albert Aucoin is a citizen and resident of Louisiana.

3. Dale P. Authement is a citizen and resident of Louisiana.

4. Edmond J. Babin is a citizen and resident of Louisiana.

5. Doug Benoit is a citizen and a resident of Louisiana.

6. Eugene Bonvillian is a citizen and resident of Louisiana.

7. Andrew Bourgeois is a citizen and resident of Louisiana.

8. Earl J. Breaux, Jr., previously incorrectly referred to as Earl Breaux, is a citizen and resident of Louisiana.

9. Roy J. Breaux, Jr. is a citizen and resident of Louisiana.

10. Willie Breaux is a citizen and resident of Louisiana.

11. Thaddeus Chaisson is a citizen and a resident of Louisiana.

12. Bobby Chauvin is a citizen and resident of Louisiana.

13. Gerald Chauvin is a citizen and resident of Louisiana.

14. Louis Cressione, Jr. is a citizen and resident of Louisiana.

15. Paul Crochet, Sr., previously incorrectly referred to as Paul Crocket, Sr., is a citizen and resident of Louisiana.

16. Jimmie D. Daigle is a citizen and resident of Louisiana.

17. Verlon Daigle is a citizen and resident of Louisiana.

18. Eldridge Durocher is a citizen and resident of Louisiana.

19. William Edwards is a citizen and a resident of Georgia.

20. Bobby F. Ellender is a citizen and resident of Louisiana.

21. Keith Estopinal is a citizen and resident of Louisiana.

22. Howard Fanguy is a citizen and a resident of Louisiana.

23. The Estate and heirs of Berwick Fonseca, Sr., deceased as represented by Bobbie Lee Fonseca.

24. Arthur L. Ford, Jr. is a citizen and resident of Louisiana.

25. Raymond J. Foret, Sr. (previously incorrectly referred to as Raymond Foret, Jr.) is a citizen and a resident of Louisiana.

26. Roy Freeman is a citizen and a resident of Louisiana.

27.     Dale Gautreaux is a citizen and resident of Louisiana.

28.     Oscar Gautreaux is a citizen and resident of Louisiana.

29.     Ronald Gautreaux is a citizen and a resident of Louisiana.

30.     Ricky Giroir is a citizen and resident of Louisiana.

31.     Jules Hebert is a citizen and a resident of Louisiana.

32.     Tobay Hebert is a citizen and resident of Louisiana.

33.     Gary L. Hilton, Sr. is a citizen and resident of Mississippi.

34.     Rene Himel, Sr. is a citizen and resident of Louisiana.

35.     Ralph Johnson is a citizen and resident of Mississippi.

36.     John Knight is a citizen and resident of Louisiana.

37.     Mac Knupp (previously incorrectly referred to as Mac Knapp) is a citizen and resident of Louisiana.

38.     Chester Joseph Lacombe, Jr. is a citizen and resident of Louisiana.

39.     Leroy Le Boeuf, Sr., previously incorrectly referred to as Leroy Leboeuf, Sr., is a citizen and resident of Louisiana.

40.     Johnny Ledford is a citizen and resident of Louisiana.

41.     Gary B. Lee, Sr. is a citizen and resident of Louisiana.

42.     John Lombardi is a citizen and a resident of Louisiana.

43.     Linduel Lopez is a citizen and resident of Louisiana.

44.     Murphy Loupe is a citizen and resident of Louisiana.

45.     Eugene Lovell is a citizen and a resident of Louisiana.

46.     James Lovell is a citizen and a resident of Louisiana.

47.     Arcen Marcel is a citizen and resident of Louisiana.

48.     David G. Marcel is a citizen and resident of Louisiana.

49.     Gerard Marcel, previously incorrectly referred to as Gerald Marcel, is a citizen and a resident of Louisiana.

50.     Billy Troy Martin is a citizen and resident of Florida.

51.     Perry Martin is a citizen and resident of Louisiana.

52.     Rickey Mayon, previously incorrectly referred to as Ricky Mayon, is a citizen and resident of Louisiana.

53.     Sterling Mayon is a citizen and a resident of Louisiana.

54.     The Estate and heirs of Donald Melancon, deceased, as represented by Judy Melancon.

55.     Billy Miller is a citizen and a resident of Louisiana.

56.     Gilbert L. Oliver, Jr. is a citizen and resident of Louisiana.

57.     Steve Olivier, previously incorrectly referred to as Steve Oliver, is a citizen and a resident of Louisiana.

58.     Davis Peltier is a citizen and resident of Louisiana.

59.     Paul H. Peltier is a citizen and resident of Louisiana.

60.     Patrick Plaisance is a citizen and resident of Louisiana.

61.     Gerald Polaski is a citizen and resident of Louisiana.

62.     Adley Rink is a citizen and resident of Louisiana.

63.     Charles J. Rink is a citizen and resident of Louisiana.

64.     Keith Robichaux is a citizen and resident of Louisiana.

65.     Thomas Savoy is a citizen and resident of Louisiana.

66.     Jeffrey Soudelier (previously incorrectly named as Jeffrey Souldier) is a citizen and resident of Louisiana.

67.     Freddie Theriot is a citizen and resident of Louisiana.

68.     Robert E. Thibodaux, III is a citizen and resident of Louisiana.

69.     Jerry F. Trosclair, previously incorrectly referred to as Jerry Torsclair, is a citizen and a resident of Louisiana.

70.     Russel A. Verret is a citizen and resident of Louisiana.

71.     Kevin C. Villemarette is a citizen and resident of Louisiana.

72.     Willie Ward is a citizen and resident of Louisiana.

73.     Paul J. Webre is a citizen and a resident of Louisiana.

74.     Robert Webre is a citizen and resident of Louisiana.

75.     Isaac Bergeron is a citizen and resident of Louisiana.

76.     Robert James Bergeron is a citizen and resident of Louisiana.

77.     Louis Boudreaux is a citizen and resident of Louisiana.

78.     Emile J. Bourgeois, Sr. is a citizen and resident of Louisiana.

79.     Ralph J. Brunet is a citizen and resident of Louisiana.

80.     Elmer Joseph Brunet, Jr. is a citizen and resident of Louisiana.

81.   Lawrence Castle is a citizen and resident of Louisiana.

82.   Jack Frank Cosby is a citizen and resident of Louisiana.

83.   Bruce Desselle is a citizen and resident of Louisiana.

84.   Joseph Dufrene is a citizen and resident of Louisiana.

85.   Maurice J. Dufrene, Sr. (previously incorrectly referred to as Maurice J. Dufrene, Jr.) is a citizen and resident of Louisiana.

86.   Michael Dupre is a citizen and resident of Louisiana.

87.   Arthur Ellender, Jr. is a citizen and resident of Louisiana.

88.   Clyde Maurice Ezell, Jr. is a citizen and resident of Mississippi.

89.   Phillip A. Gaudet, Sr. is a citizen and resident of Louisiana.

90.   David Le Boeuf, previously incorrectly referred to as David Leboeuf, is a citizen and resident of Louisiana.

91.   Harry P. Lebeouf is a citizen and resident of Louisiana.

92.   Wayne N. Le Boeuf is a citizen and resident of Louisiana.

93.   Chris Levron is a citizen and a resident of Louisiana.

94.   Timothy J. Levron is a citizen and resident of Louisiana.

95.   Donnie P. Lirette, previously incorrectly referred to as Donnie Livette, is a citizen and resident of Louisiana.

96.   Paul R. Martello is a citizen and resident of Louisiana.

97.   Rodney Martin is a citizen and a resident of Louisiana.

98.   Jorge A. Mena is a citizen and resident of Louisiana.

99.   Douglas W. Nicole is a citizen and resident of Louisiana.

100.   Russell Porche is a citizen and resident of Louisiana.

101.   Glynn Rhodes is a citizen and resident of Louisiana.

102.   Raymond Joseph Richoux, Jr. is a citizen and resident of Louisiana.

103.   Dan Roberson is a citizen and resident of Louisiana.

104.   Robert James Simon is a citizen and resident of Louisiana.

105.   Malcolm L. Watson is a citizen and resident of Mississippi.


**B.      CROSS-DEFENDANTS**

Plaintiffs bring their cross claims relating to welding fume exposure against the

following Defendants:

1.      Defendant American Welding Society has been served by J. Ray McDermott, Inc., but has not yet appeared and answered herein.

2.      Defendant A.O. Smith has been served by J. Ray McDermott, Inc., but has not yet appeared and answered herein.

3.      Defendant General Electric Company has been served by J. Ray McDermott, Inc., but has not yet appeared and answered herein.

4.      Defendant The ESAB Group, Inc. (for itself and as successor to Alloy Rods Corp.) has been served by J. Ray McDermott, Inc., but has not yet appeared and answered herein.

5.      Defendant Handy & Harmon, Inc. has been served by J. Ray McDermott, Inc., but has not yet appeared and answered herein.

6.      Defendant Thermodyne, the assumed name for a corporation conducting business as Stoody, Thermal Arc, Tewco, Amair, has been served under Rule 28, T.R.C.P. by J. Ray McDermott, Inc., but has not yet appeared and answered herein..

7.      Defendant Hobart Brothers Company individually and d/b/a McKay Welding Products, has been served by J. Ray McDermott, Inc., but has not yet appeared and answered herein.

8.      Defendant J.W. Harris Co., Inc. (individually and f/k/a and or d/b/a Harris Welco) has been served by J. Ray McDermott, Inc., but has not yet appeared and answered herein.

9.      Defendant Lincoln Electric Holdings, Inc. a/k/a Lincoln Electric Company has been served by J. Ray McDermott, Inc., but has not yet appeared and answered herein.

10.     Defendant Miller Electric Co., a/k/a Miller Electric Manufacturing Co., has been served by J. Ray McDermott, Inc., but has not yet appeared and answered herein.

11.     Defendant National Electrical Manufacturers Association has been served by J. Ray McDermott, Inc., but has not yet appeared and answered herein.

12.     Defendant Industrial Welding Supply Co. of Harvey, Inc. has been served by J. Ray McDermott, Inc., but has not yet appeared and answered herein.

13.     Defendant TDY Industries, Inc. has been served by J. Ray McDermott, Inc., but has not yet appeared and answered herein.

14.     Defendant Sandvik, Inc. has been served by J. Ray McDermott, Inc., but has not yet appeared and answered herein.

15.     Defendant Viacom, Inc., successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation has been served by J. Ray McDermott, Inc., but has not yet appeared and answered herein.

16.     Defendant Alloy Rods Corporation has been served by J. Ray McDermott, Inc., but has not yet appeared and answered herein.

17.     Defendant Arcos Alloys has been served by J. Ray McDermott, Inc., but has not yet appeared and answered herein.

18.     Defendant Avestapolarit Welding, Inc. has been served by J. Ray McDermott, Inc., but has not yet appeared and answered herein.

19.     Defendant Sandvik Coromant has been served by J. Ray McDermott, Inc., but has not yet appeared and answered herein.

## C.   JURISDICTION AND VENUE

The Court has jurisdiction over the Plaintiffs because a substantial portion of exposures which are the basis of this suit occurred in Texas.  The Court has jurisdiction over the Defendants as each Defendant is a citizen or resident of the state of Texas or, in the alternative, as to foreign defendants, Plaintiffs will show that this Court has jurisdiction under the Long Arm Statute as to each such Defendant because Defendants are corporations who are purposefully engaged in business and commerce in the State of Texas and products of said Defendants have been placed in the stream of commerce and are sold and utilized within the State of Texas. The Court has jurisdiction over the controversy because the damages sought are within the jurisdictional limits of this Court.

Venue is proper in this action under by application of Texas Civil Practices and Remedies Code, section 15.062 because J. Ray McDermott has joined these Cross

Defendants as parties to a third party action arising from the same transaction, occurrence, or series of transactions or occurrences as the original claims of the Plaintiff.

### D.    CORPORATE LIABILITY

Whenever it is alleged herein that a corporate Defendants did any act or thing, or omitted to perform any necessary act, it is meant that the Defendant's officers, agents, servants, employees and/or representatives did such act or thing or omitted to perform the necessary act, and that at the time of that occurrence, those persons were acting with the full authorization of the Defendants, or were acting in the normal, routine course and scope of their employment, agency or representation.    To this extent the Plaintiffs invoke the doctrine of *Respondeat Superior* in this case.

Alternatively and in addition to the foregoing, it is meant that a predecessor in interest to that Defendant is liable for the alleged acts and the successor in interest corporation is liable for the acts and omissions of its predecessor.

Alternatively and in addition to the foregoing, it is meant that a corporate Defendants is responsible because the conduct, negligence and other acts and omissions of another Defendants or entity not a Defendants herein are imputable to it, in that they were mutual agents and principals in the conduct of the business referred to above, or the conduct of the Defendants in the course of this activity constitutes a partnership and/or joint enterprise under Texas law, or as a result of their control, negligent supervision and/or actual supervision of various joint ventures and/or parent/subsidiary relationships, Defendants are liable to the Plaintiffs.

Alternatively and to the extent applicable, the Plaintiffs would show that some of the Defendants have interlocking directorates and a significant identity of control, in a manner indicative of an identity of interest and a disregard for the separation of corporate functions in the conduct of the business of manufacturing, distributing, selling and/or using the materials complained of herein, so as to render them jointly and severally liable for the injuries and damages to Plaintiffs as alleged herein.

Finally, for any Defendants that is a partnership, unincorporated association, private corporation, or individual doing business under an assumed name, the Plaintiffs invoke Tex. R. Civ. P. 28 which allows said Defendants to be sued in its assumed name.

E.   STRICT LIABILITY

1.   MARKETING DEFECT

This action is brought against all Cross Defendants named herein with the exception of the AWS and NEMA.  Plaintiffs allege Cross Defendants manufactured, marketed, sold, distributed, supplied, and/or placed in the stream of commerce the dangerous welding products in this case which were defective and unreasonably dangerous in the way that they were marketed by said Defendants because they did not contain and were not accompanied by fair, reasonable, or adequate warning of the dangers of said products reasonably calculated to reach persons who were exposed, the persons responsible for allowing the exposure, and all persons said Defendants knew or should have foreseen would be exposed.  Such defect in marketing was a producing cause of the injuries alleged and suffered by Plaintiffs, as more particularly described

herein.

## 2.    DESIGN DEFECT

Further, the products that were manufactured, marketed, sold, distributed, supplied and/or placed in the stream of commerce were of such a hazardous nature that they were unreasonably dangerous in their design.  Said products posed an abnormal danger when balanced with the utilities of such products therefore said Defendants should be held liable in strict liability pursuant to the rulings of the Texas courts and as adopted in the Restatement of Torts 2d, Section 402A, et al.  Such defects were a producing cause of the injuries alleged and suffered by the Plaintiffs as more particularly described herein.  Defendants are jointly and severally liable to Plaintiffs pursuant to these provisions for introducing into the stream of commerce these defective and unreasonably dangerous products.

## 3.    BREACH OF WARRANTY

Plaintiffs assert that the Cross Defendants warranted their products to be reasonably fit for their intended use and made such warranties of a direct and implied nature.  Plaintiffs further allege that Defendants warranted their products to be free from defect.  In fact, a defect existed in the products before they left the manufacturer, supplier, and distributor.  Plaintiffs were foreseeable users of the products and the products were being used in their intended manner at the time of the injury.  Contrary to the direct and implied warranties of said Defendants, their respective products were not reasonably fit for their intended use and were the producing cause of the injuries of Plaintiffs.

The Defendants are merchants as that term is defined in the Tex. Bus. & Com. Code in that each Defendants deals in goods of the kind in question and each holds itself out as having knowledge peculiar to such products.  As merchants, pursuant to the Tex. Bus. & Com. Code, said Defendants expressly and impliedly warranted and represented that their products were merchantable and fit for the ordinary purposes for which such products are used.  These warranties and representations on the part of said Defendants were false.  In fact, such products at the time of sale were unmerchantable and unfit for their intended use.  Thus, the Plaintiffs are entitled to recover under provisions of the Tex. Bus. & Com. Code, as well as other applicable warranty laws of the State of Texas.

Plaintiffs further assert that the Defendants knew or should have known of the dangers of welding products exposure to individuals,  yet they took no measure to prevent such exposure or to minimize the same and totally failed and neglected to give any type of warning or alarm about the consequences of such exposure.  Plaintiffs also allege that the seller knew the purpose for which the product was required and that the buyer and user of the product relied on the seller's skill to furnish a suitable product free from defect.  Thus, the Manufacturer, Supplier, and/or Distributor Defendants have breached such implied warranty which is the producing and/or proximate cause of Plaintiffs' injuries.

Any disclaimer of warranties by the Defendants was ineffective for the reason that the disclaimer was not a basis of the bargain. In the alternative, such disclaimers, if any, were not conspicuous.  In the alternative, such disclaimers are unconscionable

under the Tex. Bus. & Com. Code and as such, Plaintiffs pray that such disclaimers not be enforced. Finally, any limitation of consequential damages by the Defendants is unconscionable under the Tex. Bus. & Com. Code and Plaintiffs pray that any such limitation not be enforced. All exclusive or limited remedies provided by said Defendants have failed of their essential purpose; therefore, not withstanding any such disclaimer or limitation of remedies, the Plaintiffs seek and are entitled to recover all damages recoverable under the Tex. Bus. & Com. Code and all damages recoverable at common law as alleged herein.

F.     NEGLIGENCE

1.     BREACH OF DUTY

The welding products that Plaintiffs were exposed to were manufactured or distributed and are supplied by the Cross Defendants, with the exception of NEMA and the AWS. Those Defendants knew, or in the exercise of ordinary and reasonable care, should have known, that the hazardous materials that were manufactured, distributed, or supplied by them would have dangers that would be unknown to and unappreciated by the ultimate users/consumers of their products.

Plaintiffs allege that it was the negligence of said Defendants that resulted in Plaintiffs working with and inhaling welding fumes in a manner that was harmful to Plaintiffs. These Defendants owed a duty to the Plaintiffs not to place a defective and unreasonably dangerous product into the stream of commerce. These Defendants breached this duty owed to the Plaintiffs and the injuries suffered by Plaintiffs were a direct and proximate result of the breath of this duty.

Plaintiffs would further allege that the Defendants owed the Plaintiffs a duty to warn of known dangers associated with their products or of dangers that were reasonably foreseeable at the time the product was placed into the stream of commerce. Said Defendants have breached this duty to warn and such breach was a direct and proximate result of the Plaintiffs injuries. The Defendants were also negligent in failing to keep reasonably abreast of the literature in the field as to the dangerous propensities of the products in question. Plaintiffs would further show that said Defendants failed to take reasonable means to discover the dangerous nature and propensities of these products, all of which acts or omissions were negligent and a proximate cause of the injuries to Plaintiffs.

Plaintiffs would further show that the Defendants were negligent in failing to provide adequate warnings of such dangers reasonably calculated to reach the persons who were exposed and who Defendants knew, or should have foreseen would be exposed to their dangerous products. Such negligence was a proximate cause of the damages alleged and suffered by the Plaintiffs. In particular, the Defendants were negligent in the following ways:

1.    failing to warn or adequately and sufficiently warn the users and/or consumers of its products  of the known or reasonably discoverable danger of individuals exposed to said products contracting severe, permanent, and disabling injuries.  The Defendants knew or could reasonably have foreseen that the Plaintiffs, or someone situated as Plaintiffs, would have in fact come in contact with and be exposed to their products;

2.    failing to test their products concerning the effects of exposure to persons situated such as Plaintiffs;

3.      failing to instruct or notify users or consumers of said dangerous products of proper safety measures, procedures, precautions, and practices, to reduce or eliminate the danger posed by exposure to the products supplied, manufactured, and or distributed by the Defendants;

4.      failing to warn, or adequately and sufficiently warn, persons such as the Plaintiffs of the dangers associated with exposure to the dangerous products sold, manufactured, and/or distributed by the Defendants; and

5.      failing to provide instructions, or adequate and sufficient instructions, concerning the safe use of the products, proper protective equipment, devices, appliances, safety measures, procedures, precautions, and/or practices to be used in association with the Defendants products.

As to all of the above described negligent acts and omissions of each of the Defendants named herein, the Plaintiffs would show that they cannot more specifically allege said negligent acts and omissions in that the manufacture, design, distribution, and application of the products causing harm to the Plaintiffs was within the exclusive control of the Defendants.   Thus, the Plaintiffs invoke the doctrine of *Res Ipsa Loquitor* in this case.   Finally, Plaintiffs would allege that all of the above describe negligent acts and omissions were a proximate cause of the injuries suffered by Plaintiffs.

G.      **NEGLIGENT ASSUMPTION OF DUTY PURSUANT TO RESTATEMENT OF TORTS 2ND 324A OF DEFENDANTS TRADE ORGANIZATIONS.**

Plaintiffs would show the court that the Cross defendants were members of trade organizations, namely the Defendants National Electrical Manufacturers Association and the American Welding Society, wherein said Defendants undertook the responsibility of safety and warnings of users of welding products.   Plaintiffs

would show that these Defendants have failed to perform these duties in a non-negligent manner.

Defendants National Electrical Manufacturers Association ("NEMA") is a trade organization which has a section devoted to the manufacturers of welding products which is titled alternately "NEMA Electric Welding Section" or "NEMA Arc Welding Section" (hereinafter, collectively, "NEMA Welding Section").   The American Welding Society ("AWS") is a trade and professional organization, which includes within its membership management representatives of companies which produce welding products and large consumers which purchase such products for use in their operations.

All Defendants are manufactures or large consumers of welding products and were members or participants in NEMA and/or AWS (hereinafter, collectively, "the trade organizations") during relevant times herein.   At all relevant times, Defendants controlled and dominated safety and health activities in the welding industry by creating, within the trade organizations, committees, subcommittees or task groups (hereinafter, collectively, "committees") and assigning to these committees responsibility for health and safety matters.   The Defendants controlled the actions of the committees and made the committees their instrumentalities for carrying out their policies and objectives by:

        a.     limiting individual membership on relevant committees exclusively or primarily to employees of the Defendants or their designated representatives;

b.   maintaining,   through   Defendants'   delegates,   majority   or exclusive                  voting control of the committees at all times;

c.   selecting  the  assignments  or  proposals  considered  by  each committee;

d.   funding projects chosen by Defendants;

e.   using Defendants' delegates to prepare the written records of the business transacted by each committee; and

f.   reviewing and editing, to the satisfaction of Defendants, studies performed by consultants hired by the committees.

Exercising  their  influence,  control,  and  domination,  Defendants  delegated  to the  trade  association  committees  responsibility  for  the  following  safety  and  health matters relating to welding fumes:

a.   The investigation of the health hazards;

b.   writing  and  publishing  precautionary  product  labels  and  other health and safety information; and

c.   writing  and  publishing  specifications  and  standards  relating  to ventilation, safety equipment, and other precautionary measures.

Acting  pursuant  to  the  duties  and  responsibilities  delegated  to  them  by  the Defendants,  from  at  least  1937  to  the  present,  the  trade  association  committees controlled by Defendants undertook studies, issued precautionary product labels and other  health  and  safety  information,  and  issued  specifications  and  standards  for ventilation, safety equipment and other precautionary measures.

The  individual  members  of  the  trade  association  committees  controlled  by Defendants acted with the intent and understanding that their studies, publications,

specifications, and standards would be adopted and relied upon by manufacturers, sellers, and large consumers of welding products as the authoritative source for warnings, instructions, and precautionary measures, about welding fume safety and health hazards, to be printed on product labels and otherwise distributed in the stream of commerce.

Using the trade organization committees as their instrumentalities, Defendants committed numerous tortuous acts which included fraudulently and negligently misrepresenting, concealing, suppressing, and omitting material information regarding the health effects of welding fumes and precautionary measures as specifically alleged below.   Because not all Defendants attended each meeting, it was a regular practice of the trade association committees to publish written minutes which were disseminated to all committee members including those not in attendance, for the purpose of ratifying and adopting the actions taken and decisions made at the meetings.   By way of example these tortuous acts include the following:

At a meeting of NEMA's Welding Section held on March 16, 1937, Defendants in attendance agreed to and did intentionally, knowingly, and recklessly conceal known hazards associated with welding fumes by forming a "Dust and Smoke Committee" to preempt investigation of welding fume hazards by independent sources that were not controlled by Defendants.

During meetings of NEMA's Welding Section held between January 20th and June 23rd, 1938, Defendants in attendance agreed to and did intentionally, knowingly, and recklessly conceal known hazards of welding fumes by changing the language of a

publication issued by an insurance company to delete the original statement in the publication that manganese in welding fumes causes an illness similar to Parkinson's disease.

In 1939-40, at meetings of NEMA's Welding Section, Defendants in attendance agreed to and did intentionally, knowingly, and recklessly conceal the hazards of welding fumes by purporting to undertake an investigation of the health hazards of welding fumes and then, upon its completion, changing the conclusions of said study, so as to falsely represent that welding fumes were not harmful to welders.

In 1949, as part of a scheme to create and disseminate false evidence useful in defending against claims brought by persons injured by exposure to welding fumes, Defendants members of NEMA's Arc Welding Section agreed to and did intentionally, knowingly, and recklessly conceal known hazards of welding fumes by providing information for and causing publication in a welding fumes were not toxic.

In 1949 and 1951, at meetings of NEMA's Arc Welding Section which considered precautionary measures, the Defendants in attendance agreed to and did intentionally, knowingly, and recklessly conceal the health hazards of welding fumes by reflecting  the adoption of any precautionary product labels for welding products because said Defendants were fearful hat welders would be afraid to use welding products if they were so see such precautionary product labels, and thus sales of welding products would be reduced.

In 1952, Defendants reorganized the AWS Safety Recommendations Committee and called a meeting to consider the furnishing of safety and health

information at which they agreed to, and did intentionally, knowingly, and recklessly conceal the health hazards of welding fumes by rejecting the adoption of any precautionary product labels for welding products.

In 1952, at a meeting of the AWS Safety Recommendation Committee, the Defendants in attendance agreed to, and did intentionally, knowingly, and recklessly adopt a policy of refuting existing reports of welding fume hazards by publishing their own reports which misrepresented exposure to welding fumes as safe.

In 1957, Defendants agreed to, and did intentionally, knowingly, and recklessly conceal the health hazards of welding fumes by sponsoring the publication of an article in the Welding Engineer trade publication that made the misrepresentation that "toxic gases are not produced by electrode coatings."

In 1966, at meetings of the A5 Filler Metal Committee of the AWS and a Task Group of that committee, the Defendants in attendance agreed to, and did intentionally, knowingly, and recklessly conceal health hazards of welding fumes by establishing industry-wide specifications of precautionary product labels which failed to warn workers of the danger of manganese in welding fume. This precautionary label stated:

> Welding may produce fumes and gases hazardous to health. Avoid breathing these fumes and gases. Use adequate ventilation. See USAS Z49.1 "Safety in Welding & Cutting", published by the American Welding Society.

In 1966, at meetings of the A5 Filler Metal Committee of the AWS and a Task Group of that committee, the Defendants in attendance established industry-wide specifications for precautionary product labels which did intentionally, knowingly, and

recklessly omit instructions about necessary ventilation needed to protect workers against the toxic effects of manganese in welding fumes.

In 1966-67, through votes on a ballot distributed to Defendants through the A5 Filler Metal Committee of the AWS, Defendants did intentionally, knowingly, and recklessly approve, as part of the AWS required specifications for most welding products, a precautionary product label concealing health hazards from welding fumes and omitting instructions about necessary ventilation.

From 1975-1979, Defendants, through the AWS Committee on Safety and Health, did intentionally, knowingly, and recklessly conceal the known hazards associated with welding.

These tortuous acts were a proximate cause of Plaintiffs' injuries.

Furthermore, NEMA and AWS undertook to render services that they recognized as necessary for the protection of persons in the position of Plaintiffs. Under the Restatement (Second) of Torts §324A (1966), these Defendants had a duty to exercise ordinary care to protect Plaintiffs.  Defendants failed to exercise ordinary care to protect Plaintiffs and through such negligence proximately caused Plaintiffs' injuries.

## H.    FRAUD and CONSPIRACY TO FRAUD

The Plaintiffs also bring suit against the Cross Defendants based on fraud and conspiracy to commit fraud.  Plaintiffs would show that said Defendants repeatedly made representations that their products were safe all the while knowing that those representations were false.  Said Defendants made these representations with the intent

that they be relied upon by the Plaintiffs, and others similarly situated, and that said false representations would induce the Plaintiffs, and others, into purchasing and using the Defendants' dangerous products from which said Defendants would gain a proprietary benefit.    The Plaintiffs innocently acted in reliance on said Defendants false representations causing them injuries in this case.

Plaintiffs further allege that the Defendants acted in consort with each other and other entities to form an industry known as the asbestos industry.  The said Defendants, acting separately and in consort with various representatives of said industry, committed acts and omissions that were calculated to cover up or minimize the known dangers of asbestos and asbestos-containing products to users such as Plaintiffs.  Plaintiffs allege that such conduct amounted to fraud and was a proximate cause of injuries to Plaintiffs.

### I.    FRAUDULENT CONCEALMENT

Plaintiffs would show that the real cause of their injuries and damages have just now become known to them and that they have forthwith and timely brought this action.  Plaintiffs allege that the Defendants committed acts and omissions, which were calculated to and did fraudulently conceal from them and others similarly situated the true dangers of the products and dangerous premises in question. Plaintiffs have just now become aware of such dangers due to such fraudulent concealment by the Defendants and of more importance, the damages done to them by Defendants' products.

### J.    DISCOVERY RULE

Plaintiffs would show the Court that they were and have been completely

innocent of the wrongful conduct of the Defendants and ignorant of the dangers and hazards to which they have been exposed.   Only recently, and through no lack of diligence whatsoever on their part, have the Plaintiffs been advised of the damage which has been done by the exposures described herein and that such damages were directly and proximately caused by the wrongful conduct of the Cross-Defendants.   To this end, the Plaintiffs invoke the protection of the Discovery Rule.

### K.   DAMAGES

As a direct and proximate result and product of the wrongful conduct of Defendants, Plaintiffs suffer from personal injuries which are serious, long lasting, and permanent. As a result of their personal injuries, Plaintiffs seek a recovery of damage for one or more of the following elements:  (a) pain, suffering, and mental anguish, past and future; (b) loss of earning capacity, past and future; (c) disfigurement, past and future; (d) physical impairment, past and future; (e) mental impairment, past and future; (f) medical expenses and care, past and future; (g) household services, past and future; (h) loss of consortium, past and future, (i) medical monitoring, (j) fear of cancer or future disease.  As a result of all such items of damages described above, Plaintiffs would show they are entitled to and hereby sue for such sums as they may show themselves justly entitled all of which are within the minimum jurisdictional limits of this Court, including all postjudgment and all prejudgment interest.

### L.   PUNITIVE DAMAGES

Plaintiffs would further show that all of the acts and omissions described above

and committed by said Cross-Defendants herein were intentionally, willfully, and maliciously committed with reckless disregard to the rights of others and, by reason hereof, Plaintiffs sue for punitive damages in that such reasonably dangerous products were placed into the stream of commerce and existed on the premises in question. The actions of said Cross-Defendants amounted to entire want of care, such that said acts and omissions were the result of a conscious indifference to the rights or welfare of persons situated as the Plaintiffs and Decedent.

## M.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Cross-Defendants named herein be cited to appear and answer as required by law and that upon final hearing, Plaintiffs have judgment against said Cross-Defendants, jointly and severally, for such sums as described above, that they may show themselves justly entitled, and for such other relief as they may be entitled to, all which are within the minimal jurisdictional limits of this Court, for prejudgment interest and other interests as may be permitted by law, and that Plaintiffs recover costs of suit and such other and further relief as they may show themselves justly entitled.

Respectfully submitted,

THE CARLILE LAW FIRM, L.L.P.
400 S. Alamo
Marshall, Texas 75670
Telephone Number: (903) 938-1655
Facsimile Number:  (903) 938-0235

_____

D. Scott Carlile
State Bar Number 24004576

Bruce A. Craig
State Bar Number 04975270

David C. Carlile
State Bar Number 03804500


WILLIAMS BAILEY LAW FIRM, L.L.P.
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
Telephone Number: (713) 230-2356
Facsimile Number: (713) 643-6226

K. Camp Bailey
State Bar Number 24006782

CASCINO VAUGHN LAW OFFICES LTD.
220 S. Ashland Avenue
Chicago, Illinois 60607
Telephone:  312-944-0600
Facsimile:  312-944-1870

Michael P. Cascino
Illinois attorney registration number: 3124122


ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served on all counsel of record on this the 20 day of July, 2004.

_____

D. Scott Carlile

<u>A-0168572</u>

DOUG BENOIT ET AL                          IN THE DISTRICT COURT OF

VS                                          JEFFERSON COUNTY, TEXAS

<u>J RAY MCDERMOTT INC ET AL</u>               58TH DISTRICT COURT

## AMENDED DISCOVERY CONTROL PLAN ORDER

    The Court acting sua sponte, pursuant to Rule 190.4, TRCP, finds that this action requires a Discovery Control Plan by order; it is, accordingly,

    ORDERED that the following schedule of deadlines is in effect pending further order of this court, and the following matters shall be accomplished on or before the following dates:

DATES

1.    NEW PARTIES joined and served; a party causing such
joinder shall provide copies of this order to the
new party or parties                        NOVEMBER 1, 2004

2.    All PAPER DISCOVERY propounded
by any party                    JANUARY 15, 2005

3.    Designation of EXPERTS by name,
address, and current CV ,  and full report
for all PLAINTIFFS                NOVEMBER 15, 2004

4.    Designation of EXPERTS by name, address,
and current CV, and full reports by DEFENDANTS and
THIRD PARTY PLAINTIFFS          DECEMBER 15, 2004

5.    Designation of EXPERTS by name, address,
and current CV, and full reports
by THIRD PARTY DEFENDANTS       JANUARY 15, 2005

6.    ALL DISCOVERY conducted by        MARCH 15, 2005

7.    All DISPOSITIVE MOTIONS and Robinson/Havner motions filed    MARCH 15, 2005

8.    Case to be MEDIATED on or before       MARCH 15, 2005

9.    PRE-TRIAL conference (see instruction sheet) All
objections relating to DISCOVERY brought
forward for hearing; any such objections not
brought forward for hearing by this date will be
found abandoned and will be overruled     FRIDAY, MARCH 25, 2005
AT 2:00 P.M.

10.    TRIAL for the month of        APRIL 2005

    *Reports are not required for treating health care providers.

    **Mediation shall be at a time and place, and before a mediator, as agreed by the parties; if the parties do not agree, the parties shall notify the Court at least 30 days prior to the deadline. <u>Whether or not the</u> time, place, and mediator are agreed, all parties must attend individually; corporations must have present an individual with full authority; all insurers must attend through a person with full authority; and all shall mediate in good faith.



EXHIBIT

tabbies®

4

Robinson/Havner motions must be brought forward for hearing before or at the pre-trial hearing, failing which the Robinson Havner motions will be considered as abandoned or waived, and as such will be overruled.  Whether at the pre-trial hearing or otherwise, the motion must be specifically set for hearing with notice to all parties and to the court, and the court co-coordinator must be advised of the amount of time requested for such hearing.  In the absence of a specific request for a longer time, the court will allocate 15 minutes (total, for all parties) for the hearing on all such motions pending herein.

The discovery limitations of Rule 190.3, TRCP, shall apply, in satisfaction of the requirement in Rule 190.4(b)(3).

The deadlines herein shall remain in effect even though the case is not tried as scheduled above. THERE WILL BE NO CONTINUANCES GRANTED.

SIGNED this _____20TH_____ day of _____AUGUST_____, 2004.


_____
JUDGE PRESIDING

# 58th DISTRICT COURT
JAMES W. MEHAFFY, JUDGE
1001 PEARL, 2ND FLOOR
BEAUMONT, TEXAS 77701
(409) 835-8434  Fax (409) 835-8552

# PRE TRIAL REQUIREMENTS

The following requirements apply to cases about to go to trial in the 58th District Court, and attorneys are required to read and comply herewith *prior* to attending the pretrial conference. In addition, *please read and be familiar with the local civil rules, effective June 1, 1999.*

1. **MOTIONS IN LIMINE**: Attorneys are required to prepare *and exchange* any motions in limine *prior to attending the pretrial,* so that they can be prepared to advise the court *without delay* which, if any, items they object to in their opponent's motion.

2. **EXHIBITS**:  No exhibit list is necessary, *but* the attorneys are required to mark and number their exhibits *and show them to their adversaries prior to the pretrial,* so that objections can be made and rules upon at the pretrial.  It is the objective of this provision that exhibits be pre-admitted, to avoid any delay at trial in marking, offering, objecting to, or ruing upon exhibits.

3. **COURT'S CHARGE**: The attorneys are required to furnish a proposed charge at the beginning of jury selection, *but* should *also* be prepared to discuss any unusual issues or instructions at the pretrial.

4. **NON-VIDEO DEPOSITONS**: Page and line designations shall be furnished at the time of trial to opposing counsel, the court reporter, and to the court.  *Additionally,* the court shall be furnished a copy of any deposition to be read, for the purpose of ruing on objections: IT *IS NOT NECESSARY* to state line and page designations in reading a deposition, as long as the designations have previously been furnished as provided above.

5. **VIDEO DEPOSITONS**: Video depositions *SHALL be edited* to remove superfluous and extraneous material, abandoned objections and colloquy, and undue delays; in addition, video depositions *SHALL be edited* for brevity, cogency and clarity.

   The edited version *shall be furnished to opposing counsel* prior to the pretrial, so that objections can be made and ruled on at the pretrial.  Failure to furnish the edited version to opposing counsel may result in its exclusion, and failure to make objections at the pretrial may result in finding of waiver of objection; the objective is that there not be interruption or delay in the presentation of video depositions.

   **NOTE WELL**:  Video deposition presentations *SHALL not exceed 20 minutes per side*.  Exceptions shall *only* be by application to the Court *in advance,* and will be granted *only* upon showing of substantial need.  **THIS REQUIREMENT WILL BE ENFORCED!!**

6. **DISPLAYS, MODELS and EQUIPMENT**: Please have all displays, models, and equipment set up before court convenes, so that there will be no delay during trial.  Please also check with the bailiff before bringing any models or equipment into the courtroom.



## Time Line of *Benoit*

| Event | Date | Removal Deadline |
|---|---|---|
| Original Petition Filed | November 12, 2002 | |
| Cross Action by Ameraflex Rubber and Gasket | March 31, 2003 | February 5 |
| Appearance by Lincoln et al | January 6, 2003 | |
| Cross Actions by Big Three and Air Liquide | January 6, 2003 | |
| Cross Action by ABB Lummons | January 6, 2003 | |
| Appearance by AO Smith | January 6, 2003 | |
| Amended Cross Action by Ameraflex | March 31, 2003 | |
| Appearance by Air-Gas Gulf States | August 29, 2003 | September 28 |
| Appearance by BOC Group | September 19, 2003 | October 19 |
| Service of First Set of | October 31, 2003 | November 30 |
| Plaintiff Discovery Responses | | |
| First Receipt of Social Security Records | October 31, 2003 | November 30 |
| Last Receipt of Social Security Records | December 3, 2003 | January 2 |
| Last Set of Plaintiff Discovery Responses | February 27, 2004 | March 29 |
| Defendants' Motion to Exclude Plaintiffs | March 30, 2004 | |
| Tolling Agreement | April 2, 2004 | |
| Plaintiffs File Motion to Dismiss Welding | April 2, 2004 | |
| Rod without prejudice (Cross Actions continue) | | |
| McDermott sues Welding Rod Defendants | June 1, 2004 | |
| Defendants served with McDermott suit | June 1, 2004 | |
| Motion for Dismissal without prejudice | June 8, 2004 | |
| "Granted" by Court (Cross Actions continue) | | |
| Plaintiffs bring back Welding Rod Defendants | July 20, 2004 | August 19 |
| Welding Defendants Removal Filed | September 17, 2004 | |

# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF TEXAS

## BEAUMONT DIVISION

| | | |
|---|---|---|
| DOUG BENOIT, *ET AL* | § | |
| | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 1:04-CV-0597 |
| | § | |
| | § | |
| J. RAY MCDERMOTT, INC. , *ET AL* | § | JURY |

**EXHIBIT**

**_6_**

## MEMORANDUM OF LAW IN SUPPORT OF AND MOTION FOR REMAND

**NOW COMES**, Doug Benoit, joined by all other Plaintiffs in this action, and through counsel of record, respectfully Move this Honorable Court for an Order Remanding this cause back to the 58th Judicial District Court in Jefferson County, Texas under authority of 28 U.S.C. §1447(c), and in support thereof would show as follows:

### INTRODUCTION

This is a mass tort case[1] brought by 105 Plaintiffs (at the time of removal) under Title 46, United States Code § 688 et seq., commonly referred to as the "Jones Act" incorporating the Federal Employers Liability Act and general maritime law.   The original action was filed in state court in the 58th Judicial District Court of Jefferson County, Texas on November 14, 2002.   The Plaintiffs' allege that they were injured by exposure to welding fumes and or asbestos in the course of maritime employment as

---

[1] The removing Defendants' brief in support of their Motion to Stay proceedings mischaracterizes this action as a class action.  The Plaintiffs request the Court to take judicial notice of the fact that no class allegations have been asserted and this action is in fact a mass tort action of individual claims which have been joined for purposes of expediency and judicial economy for purposes of pre-trial discovery.

Jones Act sailors.[2]  Pendant state law product liability claims were also pled by the Plaintiffs against the manufacturers and suppliers of asbestos products and welding consumables in regard to those exposures.

Each of the removing Defendants appeared, answered, and participated actively in the defense of that action[3], including accumulation of social security records by deposition on written questions, receipt of the Plaintiff's written discovery responses, motions practice, and oral depositions.  On April 2, 2004, after entering into contractual tolling agreements with the Plaintiffs, the removing Defendants were non-suited by the Plaintiffs.  However, no motion was ever made or granted,  dismissing cross-actions against the removing Defendants.  There were several cross actions pending against the removing Defendants on April 2, 2004 and thereafter.

Subsequently, the removing Defendants were named as Defendants in a direct action brought against them by J. Ray McDermott, Inc. on June 1, 2004.  Claims were renewed by the Plaintiffs in their Original Cross Claim Petition and Second Supplement to their 4th Amended Petition on July 20, 2004.  Service was complete at the time that J. Ray McDermott and the Plaintiffs served the instruments on the Defendants through their counsel of record in the manner contemplated under Texas Rules of Civil Procedure, Rule 21 and 21(a).  In this case, service was complete when the documents

---

[2] Seventy-five plaintiffs have brought claims for exposures to both asbestos and welding fumes; five have brought claims relating to asbestos exposure only, and twenty-five for welding fumes only.

[3] The removing defendants appeared as follows: Lincoln, Hobart, Sandvik, Praxair, ESAB, AvestaPolarit, TDY, and Bohler-Thyssen each appeared on January 6, 2003 (Pre-E Document 20); A.O. Smith appeared on January 8, 2003 (Pre-E Document 24); Air-Gas Gulf States appeared on August 29, 2003 (E-Document 22); and The BOC Group appeared on September 19, 2003 (E-Document 34).

**MEMORANDUM OF LAW IN SUPPORT OF AND MOTION FOR REMAND, Page Number  2**

were e-filed to the removing Defendants counsel of record.   (Jefferson County Local Rules, Rule 7; *and*, Order of Referral to E-File: Exhibit 1).

The propriety of the removal of this action must be evaluated based on the status of the removing Defendants under the state Court pleadings.  The Plaintiffs will show the Court that the removal of this action into federal court is improper, and move for an Order of Remand of this action for several reasons as follows:

1.  The removing Defendants failed to meet the procedural requirements for removal and waived any right of removal.

2.  The removing Defendants contracted against removal.

3.  The Defendants have not, and cannot meet the burden of proof necessary to effect a Federal Question Removal under the fats and circumstances of this case.

**APPLICABLE LAW**

**A.    APPLICABLE LAW AND LEGAL BURDENS:**

1.    <u>Standard for Removal:</u>   Removing defendants bear the burden of establishing subject matter jurisdiction. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir.1988).  Removal is a purely statutory right and removal statutes should be construed in favor of state court jurisdiction.  The removal statutes are to be construed strictly against removal and for remand. *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002).  All doubts regarding whether removal jurisdiction is proper should be resolved *against* federal jurisdiction. *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) (citing *Willy*, 855 F.2d at 1164); *Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp.2d 653,

658 (E.D. Tex. 1999) (if there are significant doubts about the propriety of removal, those doubts should be resolved against removal).

2.    <u>Thirty Day Time Limits:</u>    A notice of removal must be filed within thirty days of the date the defendant receives both the summons and a copy of the initial pleading. 28 U.S.C. § 1446(b); *Murphey Bros. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 354 (1999).  This requirement is jurisdictional, and may not be waived.  Where a suit was not removable at the time it was filed but later becomes removable, it must remain in the state court unless a *voluntary* act by the plaintiff has brought about the change that has made the suit removable. *Weems v. Louis Dreyfus Corp.,* 380 F.2d 545, 548 (5th Cir. 1967).  Thus, while an exception has been carved out which would allow a suit which, at the time of filing was not removable to be removed, it may only be invoked upon the proof of some voluntary action taken by the Plaintiff which resulted in the suit becoming removable, when previously, it had not.  In such cases, the notice of removal must be filed within thirty days after the Defendant's receipt, "through service, or otherwise" of a copy of an amended pleading, motion, order, or other paper through which the defendant can ascertain that the case has become removable.  <u>28 U.S.C. 1446(b)</u>; *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 68-69, 117 S.Ct. 467, 473 (1996).  Again, the thirty-day time limit is jurisdictional.  The Fifth Circuit holds that the failure of the first served Defendant to file a Notice of removal within thirty days of service prevents all subsequently served defendants unless the Plaintiff intentionally delayed naming other defendants in a bad-faith attempt to prevent removal. *Brown v. Demco, Inc.,* 792 F.2d 478, 481-82 (5th Cir. 1996).

3.     <u>Requirement for Consent:</u>   Generally, when there is more than one defendant, the removal statute requires all of the defendants to consent to removal. <u>28 U.S.C. § 1446(a)</u>.   If one of the defendants refuses to consent, the removal is procedurally defective, and upon timely challenge by the Plaintiff, the case should be remanded. *Doe v. Kirkwood*, 969 F.2d 165, 167 (5th Cir. 1992).

(i)     Federal Officer Status:  The Fifth Circuit has recognized federal officer status as an independent statutory basis for removal under 29 U.S.C. § 1442(a).

(ii)     Federal Enclave jurisdiction has not been recognized as an independent statutory basis for removal.  "[T]here is a long-standing rule requiring that all defendants must consent to removal under 28 U.S.C. § 1441." *Doe v. Kerwood*, 969 F.2d 165, 167 (5th Cir. 1992); *Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp.2d 653, 667 (E.D. Tex. 1999) (when removal is sought pursuant to Section 1441(a), "28 U.S.C. § 1446(a), the provision entitled 'procedure for removal' requires the unanimous consent of all defendants for proper removal.")

4.     <u>Legal Burdens Under the Federal Officers Removal Statute:</u>  In order to establish federal officer jurisdiction, Removing Defendants must show (1) that one or more defendants acted at the direction of a federal officer; (2) there is a causal connection between the defendant's actions under color of federal law and the plaintiff's claims; and (3) there is a colorable federal defense to one or more of the plaintiffs' claims. *Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp.2d 653, 659 (E.D. Tex. 1999).  Removing Defendants must meet all three prongs in order to avail themselves of

the statute.  *Madden v. Able Supply Co.*, 205 F. Supp.2d 695, 699 (S.D. Tex. 2002) (citing *Mesa v. California*, 489 U.S. 121 (1989)).  The burden of establishing that one was acting under federal authority "is substantive and is not satisfied by incantations of government contractor status alone."  *Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F. Supp.2d 1144, 1152 (D. Colo. 2002).  The right to removal arises only when a "federal interest in the matter" exists.  *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998).  Critical to establishing federal officer jurisdiction is the extent to which defendants acted under federal direction at the time they were engaged in the conduct for which they are being sued.  *Freiberg*, 245 F. Supp.2d at 1155.  A removing defendant must "'by direct averment exclude the possibility" that the conduct for which it is being sued "was based on acts or conduct of his [that are] not justified by his federal duty.'"  *Id.* (quoting *Mesa v California*, 489 U.S. 121, 132 (1989)).

**B.   ARGUMENT AND AUTHORITIES:**

**1.    The Removing Defendants have failed to comply with the procedural requirements for Removal, and Remand is necessitated as a matter of law:**

a.    <u>Not Within Thirty Days of Service:</u>  The removing Defendants can not argue any set of facts which would make their removal of this action timely.  The first appearance in the action by a removing Defendant occurred on January 6, 2003.  None of the removing Defendants filed a Notice of Removal within thirty days of being served.  The latest date of appearance of a removing Defendant was October 19, 2003.   Fifth Circuit case law requires that a notice of removal would have had to have been filed within thirty days of service on the first Defendant, or back in January of 2003.

However, even after the passing of almost a full year from the sate of filing suit, none of the removing Defendants filed a Notice of Removal.

     b.   Not within 30 days of Receipt of Social Security Records:

The removing Defendants attempt to place their removal within the exception, asserting that they could not have known that the case was removable until they received the Plaintiff's Social Security records.  The Defendants concede that they became aware of the existence of the "Avondale 24" through the Social Security Records obtained in discovery in this case.  However, the removing Defendants have a little problem with this assertion.  Once the Social Security Records provided such information as was necessary to ascertain for the first time that the case was one which was removable, the removing Defendants failed to act on this information within thirty days as was required of them. The Social Security records were requested and received by the removing Defendants while these Defendants were active in the suit.  The Social Security records referenced and attached as exhibits by the Defendants **reflect on their face** that they were received by counsel for the removing Defendants between October 31, 2003 and December 3, 2003.[4] (A summary of the dates of receipt reflected by the Social Security records is attached hereto as Exhibit 2) A Petition for Removal would have to have been filed no later than November 30, 2003:  thirty days after the date that the removing Defendants are first charged with knowledge that a Plaintiff in the suit had been engaged at the Avondale facility.  At the latest, a Petition for Removal would have been necessitated no

---

[4] Exhibit 3 to Defendants Notice of Removal

later than February 2, 2004: thirty days after the last set of Social Security Records were received. The deadline is missed, and the case must be remanded.

    c.    <u>Not Within Thirty Days of Receipt of Discovery Answers:</u>

The removing Defendants also assert that they could not have known that the case was removable *prior* to receiving the Plaintiff's responses to written discovery. The same problem confronts the removing Defendants. Discovery answers were served on the removing Defendants for the first time on October 31, 2003. If those answers placed the Defendants on notice that Plaintiffs had worked at Avondale, the Petition for Removal could be filed no later than November 30, 2003. If one allowed the removing Defendants every benefit of the doubt, and allowed them thirty days from February 27, 2004, the date the last responses were received, the removing Defendants would have only until March 29, 2004 to file their Petition for Removal. Once again the deadline is inexplicably missed, and the case must be remanded.

    d.    <u>Not within 30 days of Renewal of the Plaintiffs Claims:</u>

The weakest link in the Defendants argument lies in their misplaced assumption that they were not a party to this suit for some period of time because of the Plaintiffs' non-suit. The face of the record belies this assumption. While the record clearly reflects that the claims of the Plaintiffs against the removing Defendants were dismissed without prejudice by the Plaintiffs' non-suit on April 2, 2004; at the same time, there remained live cross-actions filed against the removing Defendants. Several defendants had filed

cross actions against "all defendants" for contribution and indemnity.[5]   Each of the removing Defendants remained a party in interest in the case as a matter of law.   The record clearly reflects that, at least in regard to the removing Defendants, the cross actions had not been dismissed, and no efforts had been made to extricate themselves as parties to the cross-claims.

The Defendants are charged, as a matter of law, with notice of the cross-claims against them, and were surely made aware of the need to extricate themselves from the cross-claims in order to fully extricate themselves as a party to the suit by the many motions filed by other Defendants who were properly taking the steps necessary to make a complete exit from the case.[6]   The continuation of the removing Defendants as active parties in the case is undeniable, and is a significant point to the analysis of the procedural propriety of the Petition for Removal.

Its significance lies in two points.   First, the removing Defendants are not in a position for a second bite at the apple simply because they were nonsuited by the Plaintiffs, and later brought back into the case.   Their appearance in the case is uninterrupted from their first filing.   They each stand in the same posture as any other defendant brought into a lawsuit after the deadline for the first-filed defendant to remove

---

[5] See e.g.: Pre-E Documents: 19: Cross Action of ABB Lummous; 21 and 22: Cross Actions of Big Three Industries and Air Liquide America; 33: Original Cross Claim of Ameriflex Rubber and Gasket Company; E-Document 10: Amended Cross Claim of Ameriflex Rubber and Gasket Company; 27:  Cross Claim of IMO Industries, Inc.; 156- Cross Claims of St. Gobain Abrasives, Inc.;

[6] See e.g.: E-Document 106- Nitram, Inc.'s Unopposed Motion to Dismiss All Cross Actions; 147- Forney Industries Unopposed Motion to Dismiss All Cross Claims;  182- Thermodyne's Unopposed Motion to Dismiss all Cross Actions; 194- Deloro Stellite's Unopposed Motion to Dismiss cross Actions; 195- Wall Colmony's Unopposed Motion to Dismiss Cross-Actions; 252- AB Alloy's Unopposed Motion to Dismiss Cross Actions; 258- International's Unopposed Motion to Dismiss Cross Actions; 294- Cooper Cameron's Unopposed Motion to Dismiss Cross Actions.

has passed. *See Brown*, 792 F.2d at 481-82. The failure of any defendant, including the removing Defendants, to remove this matter in March 2004 (or at such earlier time that they first learned of the employment of the Plaintiffs at Avoncraft) prevents any of them from now removing this case.

The second, and greater point of significance lies in the impact that the continuation of active party status of the removing Defendants has on the determination from whence the thirty days window for removal would run, if their assertion that the renewal of claims by the Plaintiffs did and does allow a window of opportunity to remove the case under the exception carved out by 28 U.S.C. 1446(b).[7]  As an active party in the case, service was and is properly effected on the removing Defendants under Texas Rules of Civil Procedure, Rule 21 and 21a, by the delivery of a copy of the pleading, motion or other document to their attorney of record in the case. No formal citation or service of citation was necessary.

Even if one accepts for argument sake the posture taken by the removing Defendants - that the non-suit and refiling of claims against them by the Plaintiffs created a window under the exception carved out under 28 U.S.C. 1446(b), their Petition for Removal is still untimely and the case must be remanded. The removing Defendants contend that the Removal Petition was timely because it was filed within thirty days of service of citation and the Plaintiff's Fifth Amended Petition some time after August 19, 2004. There are a couple of problems with this position. First, the claims were not brought for the first time in the Plaintiffs' Fifth Petition on August 18 as erroneously

asserted by the removing Defendants. The claims, in fact, were brought on July 20, 2004 in the Plaintiffs' Cross Claim Petition and Supplement to the Fourth Amended Petition. Service of these instruments was properly effected, and is proven, by the e-transmittal of these pleadings to John Bissell, the attorney of record for the Defendants in accordance with Rules 21 and 21a, of the Texas Rules of Civil Procedure. This was accomplished on July 20, 2004.[8] (Exhibit 3). If a thirty day window of opportunity for the removing Defendants to file a Removal Petition was opened by the Plaintiffs re-urgence of claims against the removing Defendants, and it was not, that window opened at the *latest*, on July 20, 2004[9], and the Removal Petition is untimely as a matter of law if it was filed later than August 19, 2004. The filing of the Removal Petition in September 2004 is untimely, and the case must be remanded.

    e.    The Tolling Agreement is a Contractual Bar to Removal:

On April 2, 2004, the Plaintiffs entered into tolling contracts to allow dismissal of the removing Defendants. (Exhibit 4) Pursuant to the terms of the tolling agreements, Plaintiffs nonsuited Defendants without prejudice with the agreement that Plaintiffs retained the right to reinstate their clams against the removing Defendants under circumstances where the claims of Plaintiffs and the defenses of the removing Defendants remained static, and related back to the date of original filing. In essence, the bargained for agreement reflected by the tolling agreement is that it neither added to

---

[7] The Plaintiffs do not concede that any procedural window was opened which allowed the Defendants an opportunity to remove the action by the non-suit or renewal of claims against these Defendants.
[8] See: E-Documents 284 and 285.
[9] J. Ray McDermott brought virtually identical claims to those brought by the Plaintiff on June 1, 2004, which should result in the window closing on July 1, 2004.

nor took from any parties' positions as of April 2, 2003.   The pertinent part of the agreement is as follows:

> "Defendants agree that the statutes of limitations, and all other time based defenses, against the plaintiffs whose claims are non-suited, other than asbestos claims, will be tolled from the time of this execution of this agreement until April 30, 2004[10].

> "Defendants agree that up to and including April 30, 2004, plaintiffs may seek reinstatement of their non-asbestos claims in this case (i.e., the reinstatement will relate back to the original filing date for each claim), provided the defendants will not be prejudiced procedurally or substantively by the passage of time between the execution of this agreement, and the reinstatement.   Specifically, plaintiffs agree that the reinstatement is subject to defendants having the time to retain and disclose expert witnesses of their choice and do such necessary discovery as they feel appropriate as to plaintiffs' experts, whether or not others have deposed them during the period of the dismissal.   Specifically, these parties would have the right to an independent neurological examination by a physician of their choice.

> "Further, plaintiffs agree that these defendants' motion to transfer venue now set for hearing April 20[th], can be heard on May 7[th], when other venue motions are to be heard, if the claims against these defendants are reinstated.   Any motion or defense available to the defendants prior to the effective time of this agreement will not be waived or prejudiced by the defendants entering into this agreement."

The language of the contract is clear and unambiguous, allowing Plaintiffs the absolute right to reinstate their claims against the removing Defendants, and that the reinstatement would relate back to the date of original filing.   Consequently, it is somewhat disingenuous for the removing defendants to characterize their involvement in the suit as originating on August 19, 2004.[11]   The assertion by the Defendants that they filed their removal petition in a timely fashion is incorrect because the filing, by

---

[10] The agreement was extended on several occasions up to and including August 1st, 2004.

[11] Not only is the assertion by the Defendants disingenuous, it is also factually incorrect.  The Plaintiffs' reinstated their claims against the removing defendants by the filing of their Original Cross Claim Petition on July 20, 2004 and their Second Supplemental Fourth Amended Petition on July 20, 2004.

contractual agreement, is deemed to have occurred on November 20, 2002. The Fifth Circuit recognizes that a party may waive removal rights by contract. *Waters v. Browning-Ferris Industries, Inc.,* 252 F.3d 796, 797 (5th Cir. 2001).

  f. Jones Act Suits are Non-Removable by Statute:

The record as the time of notice of removal is that Plaintiffs have brought a Jones Act case arising out of Plaintiffs welding fume and asbestos exposure while working for McDermott, and other maritime employers. (E-Doc-296- Plaintiffs' Sixth Amended Petition) The Removing Defendants are precluding from removing this Jones Act under 46 U.S.C. § 688. The Jones Act adopts the preclusions and prohibitions against removal recited in the Federal Employers Liability Act. *Lackey v. Atlantic Richfield Company,* 990 F.2d 202, 207 (5th Cir. 1993) In addition to the Jones Act claims which are the original basis for the suit against McDermott (and have been resolved by compromise settlement agreement), Jones Act claims continue to be asserted against other employers are set forth in the Plaintiff's Sixth Amended Petition, and specifically itemized from that Pleading for the convenience of the Court in Exhibit 5).

  g. <u>Federal Enclave Removal Requires the Consent of all Defendants:</u>

Removing Defendants assert that the case is removable under Section 1441(a) because one Plaintiff allegedly may have been exposed to welding fumes while working on a Naval air base, thus creating "federal enclave" jurisdiction. "[T]here is a long-standing rule requiring that all defendants must consent to removal under 28 U.S.C. § 1441." *Doe v. Kerwood,* 969 F.2d 165, 167 (5th Cir. 1992); *Faulk v. Owens-Corning Fiberglass Corp.,* 48 F. Supp.2d 653, 667 (E.D. Tex. 1999) (when removal is sought pursuant to Section 1441(a), "28 U.S.C. § 1446(a), the provision entitled 'procedure for

removal,' requires the unanimous consent of all defendants for proper removal.")   If all defendants properly joined and served at the time of the removal do not join the removal petition, the removal is defective. *Faulk*, 48 F. Supp.2d at 667.   No exception to this rule exists for removals brought on the basis of alleged federal enclave jurisdiction. *See id.* (distinguishing federal enclave jurisdiction from federal officer jurisdiction and holding that the removal procedure under federal enclave jurisdiction is subject to the requirements of 28 U.S.C. § 1446).   Because Removing Defendants did not obtain the unanimous consent of all defendants, their removal on the basis of federal enclave jurisdiction is defective and the case must be remanded.

**2.      The Removing Defendants have not, and cannot meet the legal burdens to sustain Federal Question Jurisdiction, and Remand is necessitated as a matter of law:**

a.      Removing Defendants Federal Enclave Jurisdiction fails because no federal question jurisdiction is presented on the face of the well plead complaint:

Removal on the ground of federal enclave jurisdiction is improper under the "well-pleaded complaint" rule. To remove a case under 28 U.S.C. § 1441(a) on the basis that it falls within federal-question jurisdiction, the federal question must appear on the face of a properly pleaded complaint; an anticipated or actual federal defense does not qualify a case for removal. *Jefferson Cty. v. Acker*, 527 U.S. 423, 430-31 (1999); *Aquafaith Shipping, Ltd. v. Jarillas*, 963 F.2d 806, 808 (5th Cir. 1992); *Faulk*, 48 F. Supp.2d at 657 (whether or not removal was proper is determined on the basis of the claims in the state court complaint as it exists at the time of removal). Nothing in the Plaintiffs' Fifth Amended Petition, the live pleading on file at the time of removal,

suggests that there is a basis for federal enclave jurisdiction. Because the plaintiff's pleadings do not reflect that any of their claims arise under federal law, the notice of removal is defective.

      b.    <u>Federal Enclave Jurisdiction is not implicated under the "well pled complaint" rule:</u>

With regard to 28 U.S.C. 1441(a), there is nothing in Plaintiffs pleadings that raises a federal question that provides a basis for removal. To remove a case under 28 U.S.C. § 1441(a) on the basis that it falls within federal-question jurisdiction, the federal question must appear on the face of a properly pleaded complaint; an anticipated or actual federal defense does not qualify a case for removal. *Jefferson Cty. v. Acker*, 527 U.S. 423, 430-31 (1999); *Aquafaith Shipping, Ltd. v. Jarillas*, 963 F.2d 806, 808 (5th Cir. 1992); *Faulk*, 48 F. Supp.2d at 657 (whether or not removal was proper is determined on the basis of the claims in the state court complaint as it exists at the time of removal). Nothing in the Plaintiffs' Cross Claim or Second Supplemental Petition, suggests that there is a basis for federal question jurisdiction. Even Plaintiffs Fifth Amended Petition, which the removing Defendants assert as the basis of removal, does not raise a federal question. Because the plaintiff's pleadings do not reflect that any of their claims arise under federal law, the notice of removal is defective.

The removing Defendants assert that "this case is removable under 28 U.S.C. § 1441 because at least one plaintiff has indicated in his discovery responses that he was exposed to welding fumes while working on a Naval air base." *See* Notice of Removal ¶ 8. In fact, the discovery reference by the removing Defendants states only that one Plaintiff had been

employed at the Naval Air Station in Pensacola, Florida. There is no evidence that the Plaintiff's job duties there, whether he was exposed to welding products at the NAS, whether any products were supplied by Defendants, the terms under which Defendant would have supplied the products, that the product were supplied in a manner that raises any federal question, nor any relationship between the product and the Plaintiffs allegations. The only record before the Court is that the single Plaintiffs seeks recovery for his injuries arising out of his work as a Jones Act sailor.

     c.    <u>No federal officer jurisdiction:</u>

The Removing Defendants have alleged that the case is removable under 28 U.S.C. § 1442(a)(1), the Federal Officer Removal Statute.  In order to establish federal officer jurisdiction, Removing Defendants must show (1) that one or more defendants acted at the direction of a federal officer; (2) there is a causal connection between the defendant's actions under color of federal law and the plaintiff's claims; and (3) there is a colorable federal defense to one or more of the plaintiffs' claims.  *Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp.2d 653, 659 (E.D. Tex. 1999).  Removing Defendants must meet all three prongs in order to avail themselves of the statute. *Madden v. Able Supply Co.*, 205 F. Supp.2d 695, 699 (S.D. Tex. 2002) (citing *Mesa v. California*, 489 U.S. 121 (1989)).   The removing Defendants have not shown that this case meets any of the three requirements.

The removing Defendants have not given any evidence or explanation of how the removing Defendants acted at the direction of a federal officer.  In order to justify its removal under 28 U.S.C. § 1442(a)(1), the Federal Officer Removal Statute, the Removing Defendants must show causal nexus between the acts of which Plaintiffs

complain and any action Removing Defendants took under federal direction. The removing Defendants have not done so. The removing Defendants have not shown how they acted in capacity of federal officer with regard to Avondale. Second, the removing Defendants have not shown any connection between such an act and any allegation of Plaintiffs suit. As a basis for removal under the Federal Officer Removal Statute, the removing Defendants have asserted that Social Security records show that 29 of the 110 Plaintiffs had been "employed by Avondale Industries, Inc., a shipyard in Louisiana with substantial Navy shipbuilding and repair businesses." *See* Notice of Removal ¶¶ 3, 8-9. There are a number of reasons why this statement is insufficient.

1.     Plaintiffs' claims do not arise out of any employment at Avondale. Plaintiffs' claims arise out of their employment by McDermott.

2.     Avondale has a number of shipyards in Louisiana, which did not work, on Navy vessels.

3.     Employment at Avondale does not prove that Plaintiffs worked on Navy vessels.

4.     Employment at Avondale does not show any connection between any act by Defendant and any injury alleged by Plaintiffs.

The removing Defendants' unsupported statement that they may have supplied welding products for use at Avondale shipyard does not satisfy their burden of establishing that Defendants were acting under federal authority. *Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F. Supp.2d 1144, 1152 (D. Colo. 2002). To show that there is a causal connection between a Defendant's actions under color of federal office and the plaintiff's claims, each Defendant must show that a "federal interest in the

matter" exists. *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998). In other words, the Defendants must each show that their actions were under so controlled by the federal government that Defendants could not satisfy their independent legal duties to Plaintiffs. *Freiberg*, 245 F. Supp.2d at 1155. Plaintiffs' claims are based upon Defendants' failure to warn of the hazards of using its products. (E-Document 296- Plaintiffs' Sixth Amended Petition). Defendants have not detailed how their contracts with the federal government prevented Defendants from warning Plaintiffs of the hazards of use of Defendants' products as Jones Act Sailors.

Defendants have attempted to draw a parallel between this case and *In Re Welding Rod Products Litigation;* No. 1:03-CV-17000. MDL 1535, 2004 WL 1179454, at *8 (N.D. Ohio 2004). In fact *In re Welding Rod Products* illustrate the deficiency of Defendants assertion in this case. In *In re Welding Rod Products,* the defendants removed because the plaintiffs alleged exposure to welding rods developed and produced pursuant to government specifications for use on construction of Navy vessels. In other words, the government directed and controlled the products used. There is no showing of such direction and control in this case. Further, there is no showing that Plaintiffs used such products, if it existed. Defendants have not met the second requirement of showing a connection between their acts under federal control and any allegation of Plaintiffs.

The third prong of the federal officer removal test is a showing of a colorable federal defense. The Removing Defendants' assert the government contractor defense and immunity under the Defense Production Act ("DPA") as their colorable defenses. In order to avail themselves of the government contractor defense, Removing Defendants

must prove that they were acting in their role as federal military contractors when they provided the allegedly defective welding rods to the Jones Act sailor plaintiffs , and they were acting under federal direction during manufacture. *In Re Welding Rod Products Liability Litigation*, 2004 WL 1179454. at 8. As described above, the Removing Defendants have not shown how they were acting under federal control with regard to any of Plaintiffs' allegations. Specifically, the contractor must establish three conditions to escape liability for design defects (1) the U.S. approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the U.S. about the dangers in the use of the equipment that were known to the supplier but not the U.S. *Id.* (citing *Boyle v. United Technologies Corp.*, 487 U.S. 500, 101 L.Ed. 2d 442, 108 S.Ct. 2510 (1988)). The removing Defendants have not established any of these three elements. Removing Defendants neither pled nor provided any evidence indicating: that the U.S. approved reasonably precise specifications or what those specifications were; that Removing Defendants' welding rods conformed to those specifications; and that Removing Defendants warned the U.S. about the dangers in the use of the welding rods, which were known to the Removing Defendants, but not the U.S. Therefore, Removing Defendants have not satisfied the requirements to avail themselves of the government contractor defense.

Further, the Removing Defendants cannot have not satisfied the requirements under the Defense Production Act ("DPA"). Section 707 of the DPA codifies an "impossibility-of-performance" defense and shields a contractor from liability in a breach of contract case where the contractor's obligation to the government prevents it from meeting a supply order to a third party. *Hercules Inc. v. United States*, 24 F.3d 188, 203

(Fed. Cir. 1994), *aff'd*, 526 U.S. 417 (1996). This is not a breach of contract case, but a tort case to which the DPA does not apply.

The Removing Defendants have not satisfied the third prong of the Federal Officer Removal requirements. Therefore, the removal is defective and the case should be remanded.

**3.    There is no colorable basis to have sought removal under the facts and circumstances of this case and removing Defendants should be Ordered to pay costs:**

The removing Defendants have completely misconstrued the nature of the record below in their improper and unfounded attempt at removal of this action. Because of this, the Plaintiffs have been required to brief the issues, reply to the Motion for Stay, and Motion for Remand in the face of an obviously baseless Petition for Removal from a procedural standpoint. Consequently, it is reasonable and proper to seek an Order from the Court awarding the Plaintiffs' reasonable costs and expenses thereby incurred in the sum of $7,500.00, jointly and severally of and from the removing Defendants.

For these reasons, this court lacks subject mater jurisdiction, and this case must be remanded to the 58th Judicial District Court of Jefferson County, Texas, of which such an Order the Plaintiffs, and each o them pray. The Plaintiffs further pray for an award and or judgment against the removing Defendants, jointly and severally, for their expenses and the reasonable value of services rendered in responding to the removal in the sum of $7,500.00.

Respectfully submitted,

THE CARLILE LAW FIRM, L.L.P.
400 South Alamo
Marshall, Texas 75670
Telephone No.: 903-938-1655
Fax No.: 903-938-0235

By:
/s/_____

BRUCE A. CRAIG
State Bar No.: 04975270

DAVID C. CARLILE
State Bar No.: 03804500

D. SCOTT CARLILE
State Bar No. 24004576

MARK D. STRACHAN
State Bar No.: 19351500

And

K. Camp Bailey
State Bar Number 24006782

WILLIAMS BAILEY LAW FIRM, L.L.P.
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
Telephone Number: (713) 230-2356
Facsimile Number: (713) 643-6226

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was forwarded this 14th day of October 2004 to all counsel entitled to notice pursuant to the Federal Rules of Civil Procedure by e-filing.

/s/_____
Bruce A. Craig