

MDL 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 20 2004

FILED
CLERK'S OFFICE

PLEADING NO. 4367

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | | |
|---|---|---|
| DOUG BENOIT, ET AL., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| V. | § | CIVIL ACTION No. 1:04CV597 (TH) |
| | § | JURY |
| J. RAY MCDERMOTT, INC., ET AL., | § | |
| | § | |
| *Defendants.* | § | |

2004 DEC 17 A 7:34   PANEL ON MULTIDISTRICT LITIGATION   RECEIVED CLERK'S OFFICE

MDL-875 + MDL 1535
RECOMMENDED ACTION
Vacate CTO's + H.S. Order
Approved/Date: MK 12/1

# MEMORANDUM OPINION AND ORDER
# REMANDING ACTION TO STATE COURT

Before the Court is a *Motion for Remand* [Clerk's Docket No. 9] filed by Doug Benoit on behalf of all plaintiffs. Having considered the motion, response and replies, and following hearing thereon, the Court is of the opinion that the motion should be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is a mass tort case in which 105 plaintiffs allege personal injury as a result of exposure welding rod fumes[1] and asbestos.

On November 14, 2002, Doug Benoit and others brought suit in the 58th Judicial District Court of Jefferson County, Texas. Alleging they were injured in the course of maritime employment, plaintiffs

---

[1] Exposure to toxic levels of manganese emitted in the welding process has allegedly been linked to serious neurological conditions.

OFFICIAL FILE COPY
IMAGED DEC 20 '04

brought suit against their former employer, J. Ray McDermott, for failure to provide a safe workplace under the Jones Act. 46 App. U.S.C. § 688 *et seq.* Plaintiffs also pled claims against various welding rod and asbestos manufacturers and suppliers under general negligence and product liability theories of recovery.

J. Ray McDermott in turn filed several third-party actions. Of central importance to this order of remand is the third-party action J. Ray McDermott filed on June 1, 2004 against the welding rod manufacturers and suppliers seeking indemnification. Of less importance to this order, but nonetheless worth mentioning in passing, is the complicating factor of the third-party action J. Ray McDermott subsequently brought against its insurers seeking a determination of rights and responsibilities under several policies potentially covering plaintiffs' claims.

Prior to June 8, 2004 various asbestos and welding rod defendants filed blanket cross actions seeking contribution and indemnity against "all defendants." *See Plaintiffs' Motion to Remand* at 8 [Clerk's Docket No. 9].

On June 8, 2004, the state court judge granted plaintiffs' voluntary motion to dismiss their claims against the welding rod defendants without prejudice to reurging. *See State Court Docket Sheet* [Clerk's Docket No. 1]. The dismissal was effected subject to a tolling agreement consummated by plaintiffs and the welding rod defendants on April 2, 2003. *Plaintiffs' Motion to Remand, Ex. 4* [Clerk's Docket No. 9]. This letter agreement provided that any reinstatement of plaintiffs' claims against the welding rod defendants would relate back to the original filing date. *Id.* After the state court granted this dismissal, the welding rod defendants remained parties to the litigation by virtue of J. Ray McDermott's pending claims for indemnification and the various blanket cross claims for contribution and indemnity alleged by other defendants.

Plaintiffs reinstated their claims against the welding rod manufacturers by two petitions filed on July 20, 2004. *Plaintiffs' Motion Remand, Ex. 3* [Clerk's Docket No. 9]. The petitions provided that the claims alleged therein lay against parties properly before the court. *Id.* Counsel for the removing defendants was electronically served with the petitions that day in accordance with TEX. R. CIV. P. 21a and JEFFERSON COUNTY LOCAL CIVIL RULE 7H. *Id.*

An amended docket control order was entered on August 20, 2004 and the case was set for the April 2005 trial docket.

On September 17, 2004, the welding rod defendants removed the case to federal court on the basis of after-acquired evidence of federal enclave jurisdiction and federal actor jurisdiction. *See* 28 U.S.C. §§ 1441, 1442(a), 1446(b); *see also Notice of Removal* at ¶¶ 8, 9 [Clerk's Docket No. 1]. According to the removing defendants, the factual predicate for the removal was first learned during the course of discovery.[2] It is undisputed that the welding rod defendants received this information by February 27, 2004 *at the very latest. Id.* at ¶ 3. As such, there is no question that the removing defendants could ascertain on this date that the case had become removable under their dual theories of jurisdiction.

Contemporaneous with the removal, the welding rod defendants notified the Judicial Panel on Multidistrict Litigation that this action related to certain MDL proceedings and requested transfer for coordinated proceedings. *See Notice of Related Action* [Clerk's Docket No. 2]. They specifically sought

---

[2]  Federal enclave jurisdiction is grounded on discovery answers indicating that one plaintiff worked on the premises of the Pensacola Naval Air Station, which is considered a territory over which the federal government has exclusive sovereignty. *Notice of Removal* at ¶¶ 3, 8 [Clerk's Docket No. 1]. Federal actor jurisdiction has been invoked on the basis of social security records indicating that 29 plaintiffs were employed by Avondale Industries at a time when the removing defendants contend Avondale was under contract to repair Naval vessels. *Id.* at ¶¶ 9, 14. Because "the government specifies all major aspects of the welding rods' design, manufacture, packaging, and delivery" their argument goes, they as welding rod manufacturers were acting pursuant to federal officer directions in manufacturing same. *Id.* at ¶ 15.

transfer to MDL-1535, the welding rod proceedings pending before Judge Kathleen McDonald O'Malley in the Northern District of Ohio. This proceeding was established to resolve common questions of fact alleged in welding rod litigation, including "whether exposure to welding fumes causes the conditions complained of by the plaintiffs and whether defendants knew or should have known of any health risks associated with exposure to welding fumes." *See In re Welding Rod Products Liability Litigation*, 269 F. Supp.2d 1365, 1367 (J.P.M.L. 2003). The claims of over 4000 plaintiffs against various welding defendants have been transferred to MDL-1535 since its creation. *See Defendants' Memorandum in Support of Motion to Stay* at 9 [Clerk's Docket No. 2].

On October 14, 2004 plaintiffs moved to remand the action to state court on the following grounds: (1) the notice was untimely filed; (2) removing defendants contractually waived any right to remove by virtue of the tolling agreement; and (3) lack of federal subject matter jurisdiction. *Plaintiffs' Motion to Remand* at 3 [Clerk's Docket No. 9].

On November 12, 2004, the Judicial Panel on Multidistrict Litigation entered conditional orders in connection with this action. *Notice of Conditional Transfer, Ex. A* [Clerk's Docket No. 51]. The conditional order contemplates severance and transfer of the welding rod claims to MDL-1535 and transfer of all other claims to the asbestos multidistrict litigation proceeding pending before Judge Charles R. Weiner in the Eastern District of Pennsylvania. *Id.* Because the conditional transfer order does not specifically address J. Ray McDermott's declaratory judgment action arising out of the insurance policies, it is not clear to this Court whether those claims will be transferred to the asbestos MDL by default or divided between the two MDL proceedings based upon the nature of the underlying claim.

The Court was advised on November 30, 2004 that oppositions to the transfer had been filed

by plaintiffs and J. Ray McDermott pursuant to 28 U.S.C. § 1407. *See Letter from JPML Regarding Opposition to Transfer* [Clerk's Docket No. 59].

On December 1, 2004, the Court heard argument on the motions to remand over removing defendants' written and oral objections. *Notice of Conditional Transfer Order* [Clerk's Docket No. 51].

## II. DISTRICT COURT JURISDICTION FOLLOWING ENTRY OF CONDITIONAL TRANSFER ORDER

The pendency of a conditional transfer order involving this case does not in any way limit this Court's jurisdiction. PANEL RULE 1.5; *see also Meyers v. Bayer AG*, 143 F. Supp.2d 1044, 1046 (E.D. Wis. 2001). It is only when a final order transferring the action for coordinated proceedings is filed in the MDL court that this Court's jurisdiction ceases to exist. PANEL RULE 1.5; 28 U.S.C. § 1407. Because no order of transfer has been filed in either the welding rod or asbestos multidistrict proceedings, this Court retains jurisdiction to remand this case.

The removing defendants urge the Court to stay this proceeding and defer ruling on the motions to remand. *Defendants' Motion to Stay* [Clerk's Docket No. 2]; *Notice of Conditional Transfer Order* [Clerk's Docket No. 51]. They submit that it is the "more efficient and appropriate course" to allow the MDL courts to consider the merits of remand. *Notice of Conditional Transfer Order* [Clerk's Docket No. 51]. The Court disagrees.

Following entry of conditional transfer orders, district courts should not as a matter of course stay discovery, defer ruling on motions and suspend pretrial proceedings. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 20.131. To the contrary, motions to remand "raising issues unique to the

-5-

particular case may be particularly appropriate for resolution before the Panel acts on the motion to transfer." *Id.* In fact, the Panel has expressly encouraged this Court to rule on pending motions of this nature. *See Letter from J.P.M.L Regarding Opposition to Transfer* [Clerk's Docket No. 59].

It is appropriate for this Court to consider a motion to remand on the basis of a case-specific procedural defect. Whether an action has been timely removed involves considerations unique to each case. *See Wise v. Bayer,* 281 F. Supp.2d 878, 885-86 (W.D. La. 2003). Where the basis for remand is limited to the facts and procedural history of the case, disposition of the motion does not create a risk of rulings inconsistent with the multidistrict proceedings. The basis for this remand does not implicate any of the substantive questions coordinated for consolidated treatment. *In re Welding Rod Products Liability Litigation,* 269 F. Supp.2d at 1367 (J.P.M.L. 2003). Finally, given the extensive briefing and argument before this Court, resolution here and now of the issues raised by the motion promotes rather than thwarts judicial economy and efficiency.

## III. LEGAL STANDARD – MOTION TO REMAND
### BASED UPON PROCEDURAL DEFECT

The removal statute authorizes remand on the basis of timely raised defects in removal procedure. 28 U.S.C. § 1447(c); *Buchner v. Fed. Deposit Ins. Corp.,* 981 F.2d 816, 819 (5th Cir. 1993); *In re Medscope Marine Ltd.,* 972 F.2d 107, 109-10 (5th Cir. 1992); *Thompson v. Louisville Ladder Corp.,* 835 F. Supp. 336, 339-40 (E.D. Tex. 1993)(remand is required when a party timely presents a motion to remand complaining of a procedural defect).

When a procedural defect is timely raised, the party seeking to invoke the authority of the federal court bears the burden of demonstrating compliance with the removal statute. *Estate of Martineau v.*

*ARCO Chemical Co.,* 203 F.3d 904, 910 (5th Cir. 2000).

The removal statute is to be strictly construed. *Bosky v. Kroger Texas,* 288 F.3d 208, 211 (5th Cir. 2002). Any doubts surrounding the propriety of removal must be resolved in favor of remanding the action to state court. *Acuna v. Brown & Root, Inc.,* 200 F.3d 335, 339 (5th Cir. 2000), *cert. denied,* 530 U.S. 1229, 120 S. Ct. 2658 (2000). This narrow construction is compelled by the serious federalism concerns implicated by removal jurisdiction. *Frank v. Bear Stearns & Co.,* 128 F.3d 919, 922 (5th Cir. 1997). By divesting state courts of authority to hear claims otherwise before them, removal jurisdictions raises issues of state sovereignty and comity. *Id.*

This strict construction applies with equal force to the procedural requirements prescribed by the removal statute. *Brown v. Demco,* 792 F.2d 478, 481 (5th Cir. 1986); *Manguno v. Prudential Prop. and Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir. 2002). "[T]he view that technical flaws in a removal petition 'can be swept away like so much dust seriously misunderstands the conditions under which the formidable power of the federal judiciary can—and should—be invoked.'" *Smith v. Union Nat. Life Ins. Co.,* 187 F. Supp.2d 635, 645 (S.D. Miss. 2001). To the contrary, federal courts must "scrupulously confine . . . jurisdiction to the precise limits which the statute has defined." *Healy v. Ratta,* 292 U.S. 263, 270, 54 S. Ct. 700, 703 (1934); *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 109, 61 S. Ct. 868, 872 (1941).

Remand based upon a timely-raised defect in removal procedure is not reviewable on appeal or otherwise. 28 U.S.C. § 1447(d). This is so because appellate courts lack jurisdiction over actions remanded pursuant to section 1447(c). *Victor v. Grand Casino-Coushatta,* 359 F.3d 782, 784 (5th Cir. 2004); *Schexnayder v. Entergy Louisiana,* ___ F.3d ___, 2004 WL 2849540 (5th Cir. 2004).

-7-

## IV.  PLAINTIFFS HAVE TIMELY RAISED A DEFECT IN
## REMOVAL PROCEDURE AUTHORIZING REMAND

The Court need not reach the merits of the alleged bases for subject matter jurisdiction because a valid defect in removal procedures has been timely raised. Plaintiffs contend the action was removed well over thirty days after the welding rod defendants could first ascertain the case had become removable under their dual theories of federal jurisdiction. The Court agrees.

When an action is not removable as initially filed, "a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b); *Bosky v. Kroger Texas*, 288 F.3d 208, 211 (5th Cir. 2002).

According to defendants, the factual predicate supporting federal jurisdiction is found in plaintiffs' discovery responses. *Notice of Removal*, ¶ 3 [Clerk's Docket No. 1]. This Court recognizes that discovery responses can constitute "other paper" within the contemplated meaning of section 1446(b). *Krajca v. Southland Corp.*, 206 F. Supp.2d 1079 (D. Nev. 2002); *Staton v. Wells Fargo Bank*, 192 F. Supp. 2d 681 (N.D. Tex. 2002); *Cabibbo v. Einstein/Noah Bagel Partners*, 181 F. Supp.2d 428 (E.D. Pa. 2002); *Rice-Bey v. Koppers Indus., Inc.*, 180 F. Supp.2d 988 (S.D. Ill. 2002); *Shonk Land Co. v. Ark Land Co.*, 170 F. Supp 2d 660 (S.D. W. Va. 2001); *Leboeuf v. Texaco*, 9 F. Supp.2d 661 (E.D. La. 1998).

After receiving plaintiffs' discovery responses, defendants had thirty days to file their notice of removal. 28 U.S.C. § 1446(b); *Delgado v. Shell Oil Co.*, 231 F.3d 165, 177 (5th Cir. 2000), *cert. denied*, 532 U.S. 972, 121 S. Ct. 1603 (2001). The purpose of the 30-day window is to prevent litigants from taking a wait-and-see attitude toward removal, to prevent delay and to avoid duplication of judicial resources. *See Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 427 (5th Cir. 2003); *see also Johnson v. Heublein*, 227 F. 3d

-8-

236, 242 (5th Cir. 2000); *see also Nasco. v. Norsworthy*, 785 F. Supp. 707, 710 (M.D. Tenn. 1992); *see also Sanborn Plastics Corp. v. St. Paul Fire and Marine Ins. Co.*, 753 F. Supp. 660, 664 (N.D. Ohio 1990). While not jurisdictional, the thirty-day statutory time period for removal is "mandatory in terms of scope and character." 14C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3732 (3d ed. 2004); *Brown v. Demco*, 792 F.2d 478, 481 (5th Cir. 1986). As with the removal statute generally, the thirty-time limit "must be construed strictly." *Id.*

Here, defendants acknowledge they did not remove this case within thirty days of receiving the discovery upon which federal jurisdiction is grounded. *Notice of Removal,* ¶ 3 [Clerk's Docket No. 1]. By failing to timely perfect removal, they waived their right to remove on those grounds. "[A] party may implicitly waive its right to remove a case by failing timely to file a notice of removal." *Buchner v. Federal Deposit Ins. Corp.*, 981 F.2d 816, 818 (5th Cir. 1990); *Le Manquais v. Glick*, 17 F. Supp. 347, 350 (W.D. Tex. 1936). A finding of waiver is supported by the unnecessary delay occasioned by the tardy removal and duplication of judicial resources resulting from the substantial developments in state court.

That amended pleadings were later filed by plaintiffs does not change this result. Where a party's right to remove lapses, amended pleadings will only render the "case again removable" if the amendments "give rise to another basis for removal." *Miles v. Starks*, 440 F. Supp. 947, 948 (N.D. Tex. 1977).

Although an exceedingly narrow exception to this rule on equitable grounds has been recognized, the voluminous record before the Court is devoid of any grounds that would excuse compliance based on such considerations. In the absence of an equitable reason excusing compliance, "a defendant who does not timely assert the right to remove loses that right." *Brown v. Demco*, 792 F.2d

236, 242 (5th Cir. 2000); *see also Nasco. v. Norsworthy*, 785 F. Supp. 707, 710 (M.D. Tenn. 1992); *see also Sanborn Plastics Corp. v. St. Paul Fire and Marine Ins. Co.*, 753 F. Supp. 660, 664 (N.D. Ohio 1990). While not jurisdictional, the thirty-day statutory time period for removal is "mandatory in terms of scope and character." 14C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3732 (3d ed. 2004); *Brown v. Demco*, 792 F.2d 478, 481 (5th Cir. 1986). As with the removal statute generally, the thirty-time limit "must be construed strictly." *Id.*

Here, defendants acknowledge they did not remove this case within thirty days of receiving the discovery upon which federal jurisdiction is grounded. *Notice of Removal*, ¶ 3 [Clerk's Docket No. 1]. By failing to timely perfect removal, they waived their right to remove on those grounds. "[A] party may implicitly waive its right to remove a case by failing timely to file a notice of removal." *Buchner v. Federal Deposit Ins. Corp.*, 981 F.2d 816, 818 (5th Cir. 1990); *Le Manquais v. Glick*, 17 F. Supp. 347, 350 (W.D. Tex. 1936). A finding of waiver is supported by the unnecessary delay occasioned by the tardy removal and duplication of judicial resources resulting from the substantial developments in state court.

That amended pleadings were later filed by plaintiffs does not change this result. Where a party's right to remove lapses, amended pleadings will only render the "case again removable" if the amendments "give rise to another basis for removal." *Miles v. Starks*, 440 F. Supp. 947, 948 (N. D. Tex. 1977).

Although an exceedingly narrow exception to this rule on equitable grounds has been recognized, the voluminous record before the Court is devoid of any grounds that would excuse compliance based on such considerations. In the absence of an equitable reason excusing compliance, "a defendant who does not timely assert the right to remove loses that right." *Brown v. Demco*, 792 F.2d at 481.

In light of plaintiffs' timely objection to the defect in removal procedure, the Court finds that the welding rod defendants waived the right to remove this case on the basis of federal enclave and federal officer jurisdiction. The Court is unmoved by defendants' arguments to the contrary. The removing defendants submit that the removal window was revived by the dismissal and subsequent refiling of plaintiffs' claims against them. There are several problems with this argument.

First, this untimely removal cannot be excused by virtue of the judicially created "revival exception." The revival exception comes into play when a plaintiff creates a new basis for removal or amends the state court pleadings "so substantially as to alter the character of the action and constitute essentially a new lawsuit." *Johnson v. Heublein*, 227 F.3d at 241-42; *Cliett v. Scott*, 233 F.2d 269, 271 (5th Cir. 1956). When applicable, the revival exception triggers a second thirty-day window to remove. *Id.* This exception is grounded on the logic that "willingness on the part of the defendants to remain in a state court to litigate a particular claim should not be interpreted as a willingness on his part to remain in state court to adjudicate a completely different claim." 14C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3732 (3d ed. 2004). The exception does not apply, however, "where the 'new action' commenced is no more than a formality and a continuation, in all other respects, of the original action." *Korzinski v. Jackson*, 326 F. Supp.2d 704, 706 (E.D. N.C. 2004). It would be contrary to the purpose of the removal statute to revive the removal window where a party neglected to previously remove a "substantially identical cause of action." *Id.* at 707.

The welding rod defendants characterize the claims alleged by plaintiffs following the June 8, 2004 dismissal as a second action triggering anew the thirty day window to remove. *Removing Defendants' Opposition* at 2, 20 [Clerk's Docket No. 30]. This position is neither legally sound nor factually supported by the record. The amended pleadings *reinstated* plaintiffs' original claims against the welding rod defendants. The pleadings neither create a new basis for removal nor constitute a lawsuit different from

-10-

the one the removing defendants previously neglected to remove. Having evinced a willingness to remain in state court to defend plaintiffs' claims after receiving papers potentially supporting removal, the welding rod defendants cannot now ground removal on virtually identical amended pleadings. Revival in this situation would contravene the express purpose of the statute, implicate federalism concerns and result in inefficient use of judicial resources.

The terms of the contractual tolling agreement further undercut any argument that the removal clock began anew by virtue of the July 20, 2004 pleadings. How defendants square their argument that plaintiffs launched a new and independent second suit against the welding rod defendants in the face of the tolling agreement is lost on the Court. *Removing Defendants' Opposition* at 2, 20 [Clerk's Docket No. 30]. The letter agreement executed between plaintiffs and the welding rod defendants on April 2, 2004 contemplated dismissal of plaintiffs' claims against the welding rod defendants subject to plaintiffs' right to seek reinstatement. *Plaintiffs' Motion to Remand, Ex. 4* [Clerk's Docket No. 9]. It expressly provided that "reinstatement will relate back to the original filing date for each claim." *Id.* Once plaintiffs refiled their claims against the welding rod defendants, the agreement had the effect of restoring the case to its procedural posture as of April 2, 2004. While true the agreement preserved all defenses available to the defendants prior to the effective date of the agreement, the removal window lapsed prior to that date. For these reasons, the Court rejects this tortured characterization of the litigation following the June 8, 2004 dismissal.

Removing defendants make much of the fact plaintiffs did not personally serve formal citation after reinstating their claims in July 2004. This point is unpersuasive for two reasons. First, it was not necessary to effectuate formal service of process. A party "who is in court by reason of having filed an answer is not entitled to service of new process after an amendment of the plaintiffs petition" or upon the filing of a cross claim. *Arce v. Burrow*, 958 S.W.2d 239, 257 (Tex. App.—Houston[14th Dist.] 1997,

-11-

*modified on other grounds,* 997 S.W.2d 229 (Tex. 1999)); *Houston Crushed Concrete v. Concrete Recycling Corp.,* 879 S.W.2d 258, 261 (Tex. App.—Houston [14th Dist.]1994, no writ).  Once the party is before the court, "service under Rule 21a is sufficient." TEX. R. CIV. P. 124; *Mays v. Perkins,* 927 S.W.2d 222, 227 (Tex. App.—Houston[1st Dist.] 1996, no writ).  Under JEFFERSON COUNTY LOCAL CIVIL RULE 7H, electronic service of pleadings in EFILE is considered valid and effective service pursuant to Rule 21a." *Motion to Remand, Ex 1* [Clerk's Docket No. 9].

Here, the removing defendants all entered general appearances no later than September 19, 2003.  As such, they were before the state court for all purposes.  Once plaintiffs' claims against the welding rod defendants were dismissed, they remained parties to the action by virtue of both J. Ray McDermott's claims for indemnity and the blanket cross claims for contribution and indemnity initiated by the various defendants.  As such, service of amended pleadings and cross claims comporting with Rule 21a was sufficient.  Because the amended pleadings filed on July 20, 2004 were served in accordance with both the local and state rules, the argument regarding defective service is without merit. Alternatively, to the extent formal service was required after plaintiffs dismissed their claims against the removing defendants, the relation back provision of the tolling agreement rendered personal service of process unnecessary.

For all of the foregoing, the Court finds that plaintiffs have timely raised a procedural defect regarding the timing of the removal so as to warrant remand to state court.

## V. ORDER

**IT IS THEREFORE ORDERED** that the *Motion for Remand* [Clerk's Docket No. 9] is in all things **GRANTED.**

-12-

IT IS FURTHER ORDERED that this civil action is **REMANDED** to the 58th Judicial

District Court of Jefferson County, Texas on the basis of timely-raised defects in removal procedure

pursuant to 28 U.S.C. § 1447(c).


IT IS FURTHER ORDERED that all pending motions are **DENIED AS MOOT**.


IT IS FURTHER ORDERED that the clerk is **DIRECTED** to send a certified copy of this

order of remand to the 58th Judicial District Court of Jefferson County, Texas.


SO ORDERED.


SIGNED this the 15 day of **December, 2004.**


Thad Heartfield
United States District Judge