Mar 29 2005  17:12    P.02



MDL 875

MAR 3 1 2005

FILED
CLERK'S OFFICE
www.sdma.com

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

Three Gateway Center, 12th Floor
Newark, New Jersey 07102
Tel: 973.242.0002  Fax: 973.242.8099

March 29, 2005

<u>**VIA FACSIMILE**</u>
Michael J. Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002
202.502.2888

Re:   *Robert W. Nesbiet. v. General Electric Company, et al.*
      04 CIV 9321
      *Philip P. Maita v. General Electric Company, et al.*
      04 CIV 7038
      *Joseph S. Zafonte v. General Electric Company, et al.*
      04 CIV 9320

Dear Mr. Beck:

 This firm represents General Electric Company ("GE") in the above-referenced cases. These cases, currently pending in the Southern District of New York, are scheduled to be considered for a final transfer to MDL 875, *In re Asbestos Products Liability Litigation*, at the March 31, 2005 hearing of the Judicial Panel on Multidistrict Litigation ("Panel").

 On March 22, 2005, we wrote to inform the Panel that the parties agreed to a joint request for a one cycle adjournment of the transfer argument in these cases. We had anticipated that argument on the pending remand motions would take place in April 2005 either before Judge Scheindlin (*Nesbiet*) or Judge Jones (*Zafonte*). Subsequently, however, we were told that Judge Scheindlin's intent was to make a decision on plaintiff's motion to remand in *Nesbiet* by March 31, 2005. GE believed that a one cycle adjournment was no longer necessary because the parties had agreed to what Judge Scheindlin determined was a "de facto" consolidation of the cases. *See* Transcript of Hearing before Judge Scheindlin dated January 27, 2005 at page 7, line 19 to page 9, line 13 attached hereto. More specifically, Judge Scheindlin and the parties agreed to be bound by a decision by Judge

RECEIVED
CLERK'S OFFICE
2005 MAR 29 P

JPML PLEADING NO. 4459

NJ/138080v1      **OFFICIAL FILE COPY**

New York ▪ London ▪ San Francisco ▪ Zurich ▪ Los Angeles ▪ Paris ▪ Newark ▪ Orange County ▪ Chicago ▪ Dallas

**IMAGED** MAR 3 1 2005

Jones who, it appeared, would issue the first decision on plaintiffs' many motions to remand. *Id.* Thus, we wrote to the Panel on March 24, 2005 to withdraw GE's consent to an adjournment of the transfer argument.

Please be advised that on March 29, 2005, Judge Scheindlin issued a written decision wherein she denied plaintiff's motion to remand the *Nesbiet* case back to state court. *See* Judge Scheindlin's Decision attached hereto. Therefore, based upon this decision and the "de facto" consolidation, GE respectfully requests that all three of these cases be considered for final transfer at the March 31, 2005 hearing of the Panel.

Thank you for your consideration in this matter.

Respectfully submitted,

Michael A. Tanenbaum, Esq.

MAT/rm

cc: Bryan Belasky, Esq. (via facsimile with attachments)
All known defense counsel (via facsimile without attachments)

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 3 1 2005

FILED
CLERK'S OFFICE

## CERTIFICATION OF SERVICE

I hereby certify that a true copy of the foregoing letter was forwarded via facsimile on this the 29th day of March, 2005, to all counsel on the attached Facsimile Transmittal Sheet.

Christopher J. Keale, Esq.



# SEDGWICK
### DETERT, MORAN & ARNOLD LLP

Three Gateway Center, 12th Floor
Newark, New Jersey 07102
tel: 973.242.0002 fax: 973.242.8099

## Facsimile Transmittal Sheet

DATE: MARCH 29, 2005

TIME: 4:51 PM

NUMBER OF PAGES: _5_ (including cover page)

IF ANY PORTION OF THE FOLLOWING DOCUMENT IS ILLEGIBLE OR MISSING, PLEASE CALL
OUR FAX CENTER AT (973) 242-0002 AS SOON AS POSSIBLE.

## To:

| Name | Facsimile |
| --- | --- |
| Bryan Belasky<br>Bonnie Steinwolf | 212-344-5461 |
| Nancy McDonald | 973-425-0160 |
| Julie Evans | 212-490-3083 |
| Judith Yavitz | 212-278-1733 |
| Yvette Harmon | 212-548-2150 |
| Theodore Eder | 212-912-3667 |
| Art Bromberg | 973-422-0420 |
| Anna Dilonardo | 516-294-8202 |
| Edward Wilbraham<br>John Howarth | 215-564-4385 |
| John Fanning | 718-935-1509 |

### PRIVILEGE AND CONFIDENTIALITY NOTICE

The information contained in this facsimile message is attorney privileged and confidential information intended only for the person or entity named above. If you are not the intended recipient (or someone responsible to deliver it to the intended recipient), please be aware that any dissemination or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us by telephone immediately at (973) 242-0002 and return the original message to us at the address above via the U. S. Postal Service. Thank you.

New York  ■  London  ■  San Francisco  ■  Zurich  ■  Los Angeles  ■  Paris  ■  Newark  ■  Irvine  ■  Chicago  ■  Dallas

NJ/138111v1

march 29, 2005                                    Facsimile Transmittal Sheet

| | |
|---|---|
| David Schaefer<br>Joseph Carlisle<br>Mary Ellen Connor<br>William Bradley | 212-791-0286 |
| Cynthia Weiss Antonucci | 212-687-0659 |
| Charles S. Biemer | 212-986-0604 |
| William Mueller | 973-455-8118 |
| Cathi Hession<br>Jason Cohen | 212-964-9200 |
| Lisa Pascarella<br>Stephanie Divita | 732-528-4445 |
| Paul Scrudato | 212-753-5044 |
| Linda Yassky | 212-398-5245 |
| Frank Degrim | 212-818-1264 |
| Steve Kevelson | 718-649-4902<br>NO RESPONSE |
| John J. Repcheck | 412-391-8804 |
| Richard D. Schuster | 614-464-6350 |
| Joseph Colao<br>Helen Chung | 212-486-3099 |
| Robert N. Spinelli | 215-854-8434 |
| John D. Roven | 713-465-3658 |
| Andrew Trevelise | 215-851-1420 |
| Neil Selman | 310-473-2525 |
| Robert E. Swickle | 313-961-5275 |

Mar 29 2005  17:18  P. 31

march 29, 2005                                    Facsimile Transmittal Sheet

| | |
|---|---|
| James K. Weston | 319-363-8789 |
| Richard Binzley | 216-566-5800 |
| Ellen B. Furman | 215-979-8201 |
| David C. Landin | 804-788-8218 |
| Ronald L. Motley | 843-216-9450 |
| Edward J. Cass | 216-241-1608 |
| Susan M. Hansen | 612-332-4025 |
| Gene Locks | 215-985-2960 |
| Adam M. Chud | 202-346-4444 |
| David A. Damico | 412-281-1352 |
| Reginald S. Kramer | 330-762-7390 |

## FROM:

Name:        Michael A. Tanenbaum        Fax Back Number:    (973) 242-8099

Office:       Newark                                 Our File No.:        0045 127476

**RE:** *Zafonte v. General Electric Company, et al.* 04 CV 9320;
*Matia v. General Electric Company*, et al  04 CV 7038
*Nesbiet v. General Electric Company*, et al.  04 CV 9321

## MESSAGE:
Please see attached.  Thank you.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION  7

MAR 31 2005

FILED
CLERK'S OFFICE

51RJNESC                    Conference

7

1    can?

2           THE COURT:  Nothing can help me.

3           Don't you understand, my problem is, I gave a whole

4    lecture this week, you are too responsive.  That is why you

5    have all the work.  There is no way, the way everything is

6    working out, I should be the one.  I should not be the one, it

7    should be Judge Daniels or Judge Jones.  In fairness, she just

8    started the Ebers trial.

9           MR. TANENBAUM:  Judge Jones set a schedule for us.

10          THE COURT:  I realize.  She is really tied up for a

11   major period of time.

12          MR. TANENBAUM:  We are filing papers in two weeks.

13          THE COURT:  I know.  You do it in court after court.

14   You want to do it here or there.  This is not the way the

15   district should be handling the same issue.  The district court

16   should be handling this with one judge, but the judge should

17   not be me because I have a lot of complex and multidistrict

18   work.  I can't do any more.

19          MR. BELASKY:  Judge Jones has, as Mr. Tanenbaum was

20   saying, has indicated a willingness to deal with this, and she

21   set a briefing schedule and said pretty clearly to us on Monday

22   she will deal with least her three cases.

23          THE COURT:  Are they factually different?  Whatever

24   decision she reaches, why can't we ride with her?

25          MR. BELASKY:  I am perfectly happy with that.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

51RJNESC                    Conference

1      MR. TANENBAUM:  I have to look at the facts.  I won't

2  stand here and say a resolution by her won't constitute a

3  resolution.

4      THE COURT:  What?

5      MR. TANENBAUM:  I have to look at the facts of each of

6  the cases.  If there are no important distinctions as they

7  relate to jurisdiction --

8      THE COURT:  They don't.

9      MR. TANENBAUM:  -- I'll do otherwise.

10     THE COURT:  Then what if there are no factual

11 differences?

12     MR. TANENBAUM:  I would not argue it did not control.

13     MR. BELASKY:  I --

14     THE COURT:  Why don't we do nothing until Judge Jones

15 rules and not even set a briefing schedule, just leave it with

16 Judge Jones.  That is de facto consolidation, trying to get one

17 judge, not five, six or seven to handle the issue.  The briefs

18 are going to read the same.  It all has to do with the warning,

19 the government's warning, right?

20     MR. TANENBAUM:  It is with the warning, yes.

21     THE COURT:  The question is whether the government

22 controlled the warning, didn't control the warning, told you or

23 didn't tell you what to say.  That is the issue, federal

24 officer jurisdiction.

25     MR. TANENBAUM:  Correct.

51RJNESC                    Conference

1          MR. BELASKY:  That is perfectly acceptable to us.

2          I want to make sure that your Honor implied in that

3    your Honor will follow the reasoning of whatever Judge Jones

4    comes to.

5          THE COURT:  It is de facto consolidation.  I'll

6    consider myself bound, and you both agreed to it.  You don't

7    know the outcome she will reach.  You said I find that

8    perfectly acceptable.  If she rules against you, we follow

9    along and you have your appeal, maybe.  If she was remanded,

10   there is no appeal.  I realize that.  That is whay he wants the

11   remand.  You want the appeal.

12          In any event, it is a de facto consolidation.  I don't

13   know if she has a lower number than I.

14          MR. BELASKY:  She does.

15          THE COURT:  So she would --

16          MR. BELASKY:  She has the second lowest after Judge

17   Daniels.

18          THE COURT:  I am not even in the game, I am not, nor

19   do I wish to be.  So since both sides have consented to be

20   bound, so to speak, by Judge Jones' ruling, then I am staying

21   my case penning her ruling.

22          MR. TANENBAUM:  I am not saying I won't be bound.  All

23   I said is if these facts are similar.

24          THE COURT:  How could it be different?  It has to do

25   with the warning.  This is strictly a failure to warn case,

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 31 2005

FILED
CLERK'S OFFICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
                              :

ROBERT NESBIET,              :

              Plaintiff,     :

   - against -          :

GENERAL ELECTRIC CO., et al.,  :

             Defendants.  :
------------------------------------------------X

**OPINION AND ORDER**

04 Civ. 9321 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

      On October 26, 2004, Robert Nesbiet ("Nesbiet") sued General Electric Company ("GE") and other defendants in New York state court alleging, among other things, that he was exposed to asbestos-containing products while employed at the Brooklyn Navy Yard, where he worked on the USS Missouri between 1943 and 1944. Nesbiet is suing GE solely on the theory that it failed to warn of the dangers relating to asbestos used as insulation in marine steam turbines manufactured by GE. On November 29, 2004, GE filed a timely notice of removal asserting federal jurisdiction under the federal officer removal statute.[1] Nesbiet now moves to remand this action to state court.[2]

---

[1]    *See* 28 U.S.C. § 1442(a).

[2]    In addition, GE has moved to stay all proceedings in this Court pending a decision by the Judicial Panel on Multidistrict Litigation on whether to transfer and consolidate this action pursuant to 28 U.S.C. § 1407. This case is

# I.   BACKGROUND

## A.   Plaintiff's Allegations

Nesbiet's exposure to asbestos occurred, in part, during his employment at the Brooklyn Navy Yard, where he worked as a welder and shipfitter during World War II.[3]  In October, 2004, Nesbiet was diagnosed with mesothelioma, a cancer of the lining of the lungs caused by exposure to asbestos.[4] GE has confirmed that it manufactured marine steam turbines that were installed on the USS Missouri, a Navy ship that Nesbiet helped construct.[5]  Nesbiet has stated that the insulation on these turbines was a source of his asbestos exposure.[6] He alleges that GE failed to provide any warnings regarding asbestos on its

---

scheduled to be considered for transfer to MDL 875, *In re Asbestos Products Liability Litigation*, on March 31, 2005.

[3]      *See* Plaintiff's Responses to Defendant's Fourth Amended Standard Set of Interrogatories and Request for Production of Documents, Ex. C to Certification of Michael A. Tanenbaum, Counsel to GE, in Support of Defendant's Memorandum of Law ("Tanenbaum Cert."), at 24.

[4]      *See id.* at 9.

[5]      *See* GE's Notice of Removal ("GE Not.") ¶ 6.

[6]      *See* Plaintiff's Memorandum of Law in Support of His Motion to Remand at 5 ("Nesbiet Mem.").

turbines.[7]  Nesbiet's only claim against GE is for failure to warn about the dangers
of asbestos.

### B.    Grounds for Removal

In its notice of removal, GE avers that "in the manufacture and sale of
turbines and other equipment for the U.S. Navy, including all aspects of warnings
associated with those turbines and equipment, GE was acting under an officer or
agency of the United States within the meaning of 28 U.S.C. § 1442(a)(1)."[8]  In
support of removal, GE has proffered the following evidence.

### 1.    David Hobson's Affidavits

*First*, GE has submitted four affidavits of David Hobson ("Hobson"),
a former GE employee.[9]  Hobson began his employment with GE in 1969 and over
the course of the following twenty-seven years, "had frequent and extensive
business dealings on behalf of GE with commissioned officers and civilian
employees of the United States Navy in connection with the Navy's purchase and

---

[7]     *See* Weitz & Luxenberg, P.C., Amended Standard Asbestos
Complaint for Personal Injury No. 7, Ex. A to Tanenbaum Cert., ¶ 173.

[8]     GE Not. ¶ 6.

[9]     *See* 10/17/03 Affidavit of David Hobson; 3/31/04 Affidavit of David
Hobson ("Hobson 2"); 10/6/04 Affidavit of David Hobson ("Hobson 3"); 2/4/05
Affidavit of David Hobson ("Hobson 4"), Exs. 1-4 to Defendant's Memorandum
of Law in Opposition to Plaintiff's Motion to Remand ("GE Opp.").

-3-

use of marine steam turbines from GE."[10]  Prior to his employment by GE, Hobson

worked as an engineer at a shipyard and on steam ships, from 1965 until 1969.[11]

The Hobson affidavits show that GE manufactured and supplied

turbines for U.S. Navy ships under contracts between GE and the Navy

Department or contracts between GE and shipyards that had themselves contracted

with the Navy Department.[12]  The Navy Department administered these contracts

through Navy Sea Systems Command, whose personnel exclusively developed

ship designs and plans, as well as comprehensive and detailed guidelines and

specifications for all equipment on U.S. Navy ships.[13]  This portion of the

affidavits is uncontroverted.

Nesbiet strenuously objects, however, to those portions of Hobson's

affidavits regarding the Navy's control over warnings and, more specifically,

whether the Navy prevented GE from providing warnings on the dangers of

asbestos.  Hobson declares, in relevant part:

> [T]he Navy had precise specifications as to the nature of any
> information that was to be affixed to equipment supplied to the

---

[10]  Hobson 2 ¶ 3.

[11]  *See id.* ¶ 1.

[12]  *See id.* ¶ 6.

[13]  *See id.*

-4-

> Navy by GE. Under the Navy's specifications and procedures, as well as under actual Navy practice as it evolved in the field, GE would not have been permitted to affix any type of warning or caution to a piece of equipment intended for installation onto a naval vessel, beyond those expressly specified by the Navy. The Navy also had precise specifications as to the nature and contents of all written materials that were to be delivered with naval turbines. . . .   These [materials] included safety and hazard information only to the extent directed by the Navy. [14]

Nesbiet argues that this and other similar statements contained in Hobson's affidavits could not possibly be based on Hobson's personal knowledge and, in any case, have no basis in fact.[15]  When deposed concerning the first two of his affidavits, Hobson admitted that he has no personal knowledge concerning the relationship between GE and the Navy prior to 1965; mentoring from the previous generation of GE engineers was his only source of knowledge with respect to the relevant time period.[16]  There is no indication that this mentoring included the subject of the Navy's specifications, procedures or practice concerning asbestos-related warnings during World War II.[17]  It follows that Hobson lacks personal

---

[14]     Hobson 3 ¶¶ 4-5.

[15]     Nesbiet Mem. at 7-16.

[16]     *See* Continued Deposition under Oral Examination of David Hobson on July 21, 2004, Ex. B. to Affidavit of Bryan Belasky ("Belasky"), Counsel to Nesbiet, at 217-18.

[17]     After his deposition, Hobson submitted two additional sworn affidavits:  Hobson 3 and 4.  In the first of these, Hobson asserts that "[b]y virtue

knowledge as to the Navy's control over such warnings when Nesbiet was

working on the USS Missouri.  Therefore, to the extent that Hobson's affidavits

suggest that during the relevant time period the Navy prohibited warnings

concerning the dangers of asbestos, the statements are without foundation — and

therefore inadmissible — as being beyond the scope of Hobson's personal

knowledge and experience.[18]

2.    **Admiral Ben J. Lehman's Affidavit**

*Second*, GE has submitted the affidavit of Ben J. Lehman

("Lehman"), a retired Rear Admiral of the U.S. Navy, who served as a ship

---

of the knowledge I have obtained over the course of my career concerning the
historical practice of GE and the U.S. Navy with regard to marine steam turbines, I
can state that the practices described in my October 17, 2003 affidavit [Hobson 2]
concerning the U.S. Navy's control and direction related to marine steam turbines
would have been applicable at least as far back in time as World War II." Hobson
3 ¶ 2. This assertion is insufficient to establish personal knowledge with regard to
whether a particular kind of warning was forbidden over twenty years prior to the
start of Hobson's career.

[18]    Nesbiet has requested an opportunity to depose Hobson concerning
his last two affidavits. This request was granted. As of the date of this opinion,
however, Nesbiet has not yet been able to further depose Hobson. Nonetheless,
because this Court has concluded that Hobson cannot offer competent evidence
concerning the Navy's control over asbestos-related warnings during the relevant
time period, Nesbiet is in no way prejudiced by his inability to depose Hobson a
second time.

superintendent for repairs at the Brooklyn Navy Yard between 1942 and 1944.[19]

In that capacity, Lehman "was personally involved with the supervision or

oversight of ship alterations and equipment overhauls."[20] Lehman's affidavit

states, in relevant part:

> In the 1940s and afterward, the Navy had complete control over
> every aspect of each piece of equipment. Military specifications
> governed every characteristic of the equipment used on Navy
> ships, including the instructions and warnings. . . . This control
> included the decision of what warnings should or should not be
> included. . . . Furthermore, the Navy had specifications as to the
> nature and content of all written material that was delivered with
> each piece of equipment, including turbines. The Navy was
> intimately involved with and had final approval of all . . . safety
> and hazard information and any other written information that
> accompanied a piece of equipment. The Navy determined the
> nature of the hazards to be subject to any precautionary labeling
> and the content of any such labeling. In short, the Navy dictated
> every aspect of the . . . warnings associated with its ships and did
> not permit deviation from any of its contractors.[21]

The affidavit thus raises the inference that GE did not provide a warning

concerning the dangers of asbestos because the Navy did not permit any such

warning.

---

[19]     *See* Affidavit of Admiral Ben J. Lehman ("Lehman Aff."), Ex. 6 to
GE Opp., ¶ 1.

[20]     *Id.* ¶ 3.

[21]     *Id.* ¶¶ 4-5.

Plaintiff deposed Lehman concerning the foundation for the statements contained in his affidavit. Based on this deposition, plaintiff contends that Lehman, like Hobson, has no personal knowledge of the relevant facts.[22] In that deposition, however, plaintiff did not attack Lehman's competence to make the statements in his affidavit. Rather, plaintiff attacks Lehman's conclusion by asserting that he lacks direct knowledge of warnings or instructions on GE's marine steam turbines in the 1940s. While the deposition reveals that Lehman has no direct knowledge as to whether the Navy specifically prohibited GE, or other manufacturers, from providing warnings about asbestos,[23] Lehman made no such assertion in his affidavit. But, as stated earlier, his affidavit raises the *inference* that the Navy prohibited warnings about asbestos because, based on Lehman's knowledge and experience, the Navy exercised *complete* control over *all* warnings placed on equipment or in accompanying technical manuals by its contractors. By virtue of the position he occupied at the Brooklyn Navy Yard during the relevant time period, Lehman is competent to make the statements contained in his affidavit.

Nesbiet further contests the factual basis for Lehman's affidavit by

----

[22]    *See* 3/24/05 Letter of Belasky to the Court, at 1.

[23]    *See* Deposition of Ben Lehman at 32, 77-78, 103-04.

-8-

submitting a number of military specifications, or "milspecs," covering the contents of instruction manuals for electrical and mechanical equipment,[24] which Nesbiet contends "imposed an affirmative requirement to warn on contractors such as GE since at least the 1950s and possibly even earlier."[25] However, Nesbiet has mischaracterized this so-called requirement. For example, the earliest of these milspecs, dated October 20, 1952, states that an instruction manual "shall contain data such as the following: (a) Safety notice (where high voltages or special hazards are involved) (see figure 9)."[26] "Figure 9" itself consists of detailed instructions on how to safely handle equipment that involves high voltages.[27] If anything, the milspec requires that the manufacturer provide safety instructions, such as those regarding high voltages, *as dictated by the Navy*. Moreover, the

---

[24]   *See* Military Specifications, MIL-M-15071A-G, Exs. C through I to Affidavit of Bryan Belasky ("Belasky Aff."), Counsel to Nesbiet.

[25]   Nesbiet Mem. at 15. Nesbiet proffers that he has been unable to locate the milspec that was in force during WWII. *See id.* at 16 n.5.

[26]   Interim Military Specification, MIL-M-15071A ("1952 Milspec"), Ex. I to Belasky Aff., at 5. The second oldest of the milspecs submitted by Nesbiet, dated August 18, 1954, contains identical language to that found in the 1952 milspec. *See* Military Specification, MIL-M-15071B, Ex. H to Belasky Aff., at 6.

[27]   *See* 1952 Milspec at fig. 9. (stating, for example, "MAKE SURE YOU ARE NOT GROUNDED whenever you are adjusting equipment or using measuring equipment. . . . In general, USE ONE HAND ONLY when servicing live equipment.").

1952 milspec indicates that the content of instruction manuals is subject to the approval of the Navy.[28] Therefore, these milspecs appear to support, rather than undercut, Lehman's affidavit.

In sum, Lehman's affidavit establishes, for the purposes of this motion, that the Navy controlled the nature of warnings to be included on all equipment (or in the accompanying technical manuals) to be installed on its ships. This evidence in turn supports the inference that no warnings appeared on the turbines or in the written materials because the Navy prohibited them.

### 3.   Dr. Lawrence Stillwell Betts's Affidavit

*Third*, GE has submitted the affidavit of Lawrence Stillwell Betts ("Betts"), a medical doctor and retired U.S. Navy Captain. During his Navy career, which began in 1971 and ended in 2001, Betts became a "qualified surface warfare medical department officer," in which capacity he became "generally familiar with the industrial products that were used by the Navy."[29] Through his training and experience, Betts is also familiar with "the history and practice of the

---

[28]    *See id.* at 4 ("Prior to the printing of the final instruction books, a preliminary instruction book shall be prepared and submitted in duplicate to the bureau or agency concerned via the Government inspector for approval.").

[29]    Affidavit of Lawrence Stillwell Betts ("Betts Aff."), Ex. 5 to GE Opp., ¶ 1; Curriculum Vitae of Lawrence Stillwell Betts, Ex. A to Betts Aff., at 2-3.

Navy occupational health program from . . . before World War II until the present time."[30]  Betts has supported his conclusions by attaching to his affidavit numerous journal articles, reports, and other documents dating back to before World War II.

Betts's testimony indicates that the Navy's knowledge of the health hazards associated with the use of asbestos aboard Navy vessels during the 1940s represented the state-of-the-art.[31]  Consequently, according to Betts's affidavit, GE could not have possessed any information regarding the dangers posed by the use of asbestos-containing products in marine steam turbines that was not already known by the U.S. Navy.[32]

## II.    APPLICABLE LAW

Section 1442(a) of Title 28 provides, in relevant part:

A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district of the United States for the district and division embracing the place wherein it is pending:
(1) The United States or any agency thereof or any officer (or any other person acting under that officer) of the United States or of any agency thereof, sued in an official capacity for any act

---

[30]    *Id.* ¶ 2.

[31]    *See id.* ¶ 31.

[32]    *See id.* ¶¶ 30-31.

under color of such office.

This statute overcomes the well-pleaded complaint rule by providing a method to

remove a case brought in state court against a federal officer, or any person acting

under a federal officer, despite the absence of a federal cause of action.[33]  The

Supreme Court has noted that one of the purposes of the federal officer removal

statute is to ensure that a federal court will adjudicate the validity of a defendant's

official immunity defense.[34]  To remove a state court action under the statute, a

private party must establish that (1) it has a colorable federal defense, (2) it acted

under the direction of a federal agency or officer, and (3) there is a causal nexus

between the claims and the conduct performed under the color of federal office.[35]

A defendant seeking removal bears the burden of demonstrating

---

[33]     *See Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).

[34]     *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981).

[35]     *See id.*; *Mesa v. California*, 489 U.S. 121, 124-25, 134-36 (1989).  A
corporation is a "person" within the meaning of section 1442(a).  *See, e.g., Winters
v. Diamond Shamrock Chemical Co.*, 149 F.3d 387 (5th Cir. 1998); *McGillick v.
World Trade Ctr. Props., LLC*, No. 04 Civ. 3747, 2004 WL 2049260, at *2
(S.D.N.Y. Sept. 13, 2004); *Isaacson v. Dow Chem. Co.*, 304 F. Supp. 2d 442, 447
(E.D.N.Y. 2004); *Arness v. Boeing N. Am., Inc.*, 997 F. Supp. 1268, 1272 (C.D.
Cal. 1998); *Good v. Armstrong World Indus.*, 914 F. Supp. 1125, 1127-28 (E.D.
Pa. 1996).

-12-

federal subject matter jurisdiction.[36]  Although federal courts generally construe

the removal statutes narrowly, remanding doubtful cases to state court,[37] the

Supreme Court has emphasized that "the federal officer removal statute is not

narrow or limited."[38]  Indeed, "the policy favoring removal 'should not be

frustrated by a narrow, grudging interpretation of § 1442(a)(1).'"[39]  Furthermore,

"it is axiomatic that the right of the states, consistently with the Constitution and

the laws of the United States, to make and enforce their own laws is equal to the

right of the federal government to exert exclusive and supreme power in the field

that by virtue of the Constitution belongs to it.  The [federal officer] removal

statute . . . is to be considered with highest regard for such equality."[40]

The first requirement for federal officer removal — a colorable

federal defense — is broadly construed.  "We . . . do not require the officer

_____

[36]    *See California Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368
F.3d 86, 100 (2d Cir. 2004).

[37]    *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 31 (2002);
*Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1045-46 (2d Cir. 1991).

[38]    *Willingham v. Morgan*, 395 U.S. 402, 406 (1969) (quotation marks
omitted).

[39]    *Manypenny*, 451 U.S. at 242 (quoting *Willingham*, 395 U.S. at 407).

[40]    *State of Colorado v. Symes*, 286 U.S. 510, 518 (1932).

-13-

virtually to 'win his case before he can have it removed.'"[41]  Thus, a defense may

be colorable even if the court ultimately rejects it.[42]  "[A]t the removal stage, it is

not the Court's role to assess the validity of a particular defense.  The Supreme

Court made it clear in [*Willingham v. Morgan*[43]] that the phrase 'under color of . . .

office' allows removal even if, on the record then existing, it could not be said that

'the officers had a clearly sustainable defense.'"[44]

    A defendant meets the second requirement — acting under the

direction of a federal officer — by showing a "substantial degree of direct and

detailed federal control over the defendant's work."[45]  By contrast, a person or

corporation establishing only that the relevant acts occurred under the general

auspices of a federal agency or officer is not entitled to removal under section

---

[41]   *Jefferson County*, 527 U.S. at 431 (quoting *Willingham*, 395 U.S. at 407).

[42]   *See id.*

[43]   395 U.S. 402.

[44]   *Reiser v. Fitzmaurice*, No. 94 Civ. 7512, 1994 WL 54326, at *3 (S.D.N.Y. Feb. 8, 1996) (alteration in original).  *See also Symes*, 286 U.S. at 519 (when a defendant seeks removal  pursuant to the federal officer removal statute, "no determination of fact is required but it must fairly appear from the showing made that [the defendant's removal] claim is not without foundation and is made in good faith").

[45]   *Isaacson*, 304 F. Supp. 2d at 447.

-14-

1442(a).[46]  "Courts generally have not found jurisdiction where the government

officer did not directly require a purported agent to take specific actions."[47]

Finally, to satisfy the third requirement — the existence of a causal

nexus — the defendant must show that the state lawsuit "has arisen out of the acts

done by [the defendant] under color of federal authority and in enforcement of

federal law."[48]  In the context of a failure to warn claim, the defendant must

establish that the government's control over warnings directly interfered with the

defendant's ability to fulfill its state law obligation to warn of safety hazards.[49]

## III.   DISCUSSION

---

[46]     *See Ryan v. Dow Chem. Co.*, 781 F. Supp. 934, 947 (E.D.N.Y. 1992);
*Good*, 914 F. Supp. at 1128.

[47]     *McGillick*, 2004 WL 2049260, at *3.

[48]     *Mesa*, 489 U.S. at 131-32.

[49]     *See Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F. Supp.
2d 1144, 1155 (D. Colo. 2002) ("What [the defendants] must establish for purpose
of . . . § 1442(a)(1) is that the government authority under which they worked
required them to act as they did.  For purposes of [p]laintiff's failure to warn
claims . . . [the defendants] must establish [that the government's] direction and
control of their activities directly interfered with their ability to fulfill their state
law obligation to warn employees of safety hazards."); *Faulk v. Owens-Corning
Fiberglass Corp.*, 48 F. Supp. 2d 653, 663 (E.D. Tex. 1999) (holding that the
causal nexus requirement of the federal officer removal statute was not satisfied
"[b]ecause the federal government provided no direction or control on warnings
when using asbestos [and] did not prevent [d]efendants from taking their own
safety precautions heeding state-law standards").

## A.    "Colorable Federal Defense" Requirement

GE asserts the military contractor defense.[50] This defense shields contractors from liability under state tort law for defects in military equipment supplied to the United States when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."[51] In the context of a failure-to-warn claim, the Second Circuit has held that in order to satisfy the first element of the military contractor defense, the defendant must show that the government itself dictated or otherwise controlled the content of the warnings meant to accompany the product.[52]

In order to satisfy the first prong of section 1442(a), GE must demonstrate merely that its claim to the military contractor defense is "colorable." GE has met this burden. *First*, the Lehman affidavit establishes for the purposes of this motion that the Navy's specifications controlled all aspects of the design

---

[50]    *See* GE Mem. at 12.

[51]    *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988). *See also Grispo v. Eagle-Picher Indus., Inc.*, 897 F.2d 626, 629 (2d Cir. 1990) (holding that the *Boyle* test may apply to a state law failure-to-warn claim).

[52]    *See Grispo*, 897 F.2d at 630.

and manufacture of marine steam turbines, including the nature of warnings to be affixed to or included with these turbines.[53] *Second*, Lehman asserts that any deviation from these specifications would likely have resulted in rejection of the equipment.[54] This proffer is sufficient, for the purpose of the "colorable defense" prong, to satisfy the requirement that the equipment and accompanying warnings, if any, conformed to the Navy's specifications. *Third*, Betts's affidavit establishes that the Navy's knowledge of the dangers of asbestos on board its ships was state-of-the-art and, therefore, the Navy would have known of any dangers that were known to GE.[55] Thus, GE has shown it has a colorable federal defense.

**B.    "Acting Under" and "Causal Nexus" Requirements**

As stated earlier, GE's proffer has established that the Navy determined the nature of warnings to be included on the turbines and in the accompanying technical manuals and, furthermore, did not permit contractors to deviate from any of its specifications. This evidence in turn raises an inference that GE's alleged failure to warn of the dangers of asbestos resulted from the Navy's prohibition of any such warning. Nesbiet has not effectively rebutted this

---

[53]    *See* Lehman Aff. ¶¶ 4-5.

[54]    *See id.* ¶¶ 3, 5.

[55]    *See* Betts Aff. ¶ 31.

-17-

inference with any evidence of his own.  In fact, the milspecs submitted by Nesbiet

support rather than undermine GE's evidence.  GE's proffer thus establishes, for

the purposes of this motion, that (1) the Navy exercised a substantial degree of

direct and detailed control over GE's provision of warnings and (2) the Navy's

control over warnings directly interfered with GE's ability to fulfill its state law

obligation to warn about the dangers of asbestos.  GE has therefore satisfied

"acting under" and "causal nexus" requirements under section 1442(a).[56]

Nesbiet suggests that in order to meet the "causal nexus" requirement

GE must provide direct evidence that the Navy "specifically prohibited it from

warning about asbestos."[57]  This is more than GE is required to do.  The Supreme

Court has admonished, "[j]ust as requiring a 'clearly sustainable defense' rather

than a colorable defense would defeat the purpose of the removal statute . . . so

---

[56]    *See Carter v. Acands, Inc.*, No. 3:02-CV-00009, 2002 WL 31682352,
at *4 (E.D. Tex. June 27, 2002) (holding in a case that included a failure-to-warn
claim against a manufacturer of turbines for the Navy that the "acting under"
requirement of the federal officer removal statute was satisfied because the Navy
had ultimate control over warnings affixed to equipment or included in the
accompanying written materials); *Madden v. Able Supply Co.*, 205 F. Supp. 2d
695, 702 (S.D. Tex. 2002) (stating in a case that included a failure-to-warn claim
against a manufacturer of turbines for the Navy that "any warnings promulgated
(or not promulgated) with respect to the turbines were governed by Navy
guidelines.  Thus, the causal nexus is axiomatic.").

[57]    Reply Memorandum of Law in Further Support of Plaintiff's Motion
to Remand at 5.

-18-

would demanding an airtight case on the merits [of the defendant's claim to official immunity] in order to show the required causal connection."[58] Moreover, the cases cited by Nesbiet in support its position are distinguishable from this case for the simple reason that in each of those cases, the court found that the defendant had produced *no* evidence — direct or circumstantial — supporting a causal nexus. For instance, in *Faulk v. Owens-Corning Fiberglass Corp.*,[59] which involved a failure-to-warn claim arising from the plaintiffs' exposure to asbestos at a job site where the defendants manufactured various products for the federal government, the defendants supported removal under section 1442(a) by arguing that they could not have constructed or operated their manufacturing facility without using asbestos insulation.[60] The court found this assertion to be irrelevant because whether or not there was a comparable insulating product that did not include asbestos, the "myriad of documents" submitted by the defendants did not show "direction or control by the federal officer relating to *warning[s]* . . . about asbestos."[61] Thus, the defendants had failed to present *any* evidence to satisfy the

-------------------------------------------------

[58]    *Jefferson County*, 527 U.S. at 432 (citation omitted).

[59]    48 F. Supp. 2d 653.

[60]    *See id.* at 662 n.12.

[61]    *Id.* at 664 (emphasis added).

-19-

"causal nexus" prong.[62]  By contrast, in this case, GE has established, albeit

circumstantially, that the Navy prohibited GE from providing warnings.  GE's

evidence is not airtight, but it is sufficient for the purposes of section 1442(a) to

demonstrate that the Navy's control over warnings directly interfered with GE's

duty to warn under state law.  Thus, GE has satisfied the "causal nexus"

requirement.

In sum, GE has met each of the three requirements under section

1442(a), and removal of this case to federal court is therefore proper.

## IV.   CONCLUSION

For the foregoing reasons, Nesbiet's motion to remand this action to

state court is denied.  GE's motion to stay all proceedings in this Court pending a

decision by the Judicial Panel on Multidistrict Litigation whether to transfer this

---

[62]     Cf. *Gauthe v. Asbestos Corp.*, No. Civ. A. 96-2454, 1997 WL 3255, at
*3 (E.D. La. Jan. 2, 1997) (holding in a failure-to-warn case arising from the
plaintiffs' exposure to asbestos at the defendant's shipyard, where ships were
constructed for the Navy, that the "causal nexus" requirement had not been
satisfied because "[t]here is no evidence that the Government restricted or
prohibited [defendant's] ability to notify individuals of the presence of asbestos in
the work environment"); *Overly v. Raybestos-Manhattan*, No. C-96-2853 SI, 1996
WL 532150, at *4 (N.D. Cal. Sept. 9, 1996) (holding in a case involving nearly
identical facts to those in *Gauthe* that the defendant failed to satisfy the
requirements of section 1442(a) because the defendant's "only showing on this
motion relates to the government's manufacturing and engineering
specifications").

-20-

Mar 29 2005  17:17    P.27

case to the Eastern District of Pennsylvania is moot. The Clerk of the Court is directed to close these motions (docket # 5 and # 7).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             March 28, 2005

-21-