MDL 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION AUG 3 1 2005

FILED
CLERK'S OFFICE

IN RE: ASBESTOS PRODUCTS                          DOCKET NO. 875
LIABILITY LITIGATION (No. IV)

THIS DOCUMENT RELATES TO:                         (CTO-250)

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF VIRGINIA

Harriett C. King v. Northrup Grumman Systems Corp., et al., Newport News
Civil Action No.  VAE 4-05-29251

## MOTION TO VACATE
## THE CONDITIONAL TRANSFER ORDER

Plaintiff, pursuant to Rule 12(c) of the Rules of Procedure of the Judicial Panel on

Multidistrict Litigation, moves the Panel to vacate its Order, CTO-250, of August 5, 2005,

conditionally transferring the above-captioned case to the United States District  Court for the

Eastern District of Pennsylvania.  This motion is based on the attached Brief in Support of Motion

to Vacate Conditional Transfer Order and such other material as may be presented to the Panel at

the time of the hearing on the motion.

Respectfully submitted,

HARRIETT C. KING

By Counsel

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

2005 AUG 31  A 10: 46

RECEIVED
CLERK'S OFFICE

## OFFICIAL FILE COPY

IMAGED SEP - 1 2005

Gary W. Kendall, Esquire
MICHIE HAMLETT LOWRY RASMUSSEN & TWEEL PLLC
500 Court Square, Suite 300
P. O. Box 298
Charlottesville, VA 22902

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Motion to Vacate the Conditional Transfer Order and the Brief in Support of Motion to Vacate Conditional Transfer Order has been served via first class mail to all counsel contained on the attached Panel Service List (Excerpted from CTO-250) on this _30th_ day of August, 2005

Gary W. Kendall

BEFORE THE JUDICIAL PANEL ON MULTI DISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG 3 1 2005

| | |
|---|---|
| IN RE: ASBESTOS PRODUCTS<br>LIABILITY LITIGATION (No. IV) | DOCKET NO. 875 |

FILED
CLERK'S OFFICE

THIS DOCUMENT RELATES TO:                    (CTO-250)

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA

Harriett C. King v. Northrup Grumman Systems Corp., et al., Newport News
Civil Action No.  VAE 4-05-29251

## BRIEF IN SUPPORT OF MOTION TO VACATE
## CONDITIONAL TRANSFER ORDER

Plaintiff respectfully files this Brief in Support of her Motion to Vacate the Conditional

Transfer Order (CTO-250) entered by the Judicial Panel on Multidistrict Litigation on August 5, 2005

to the extent  that it conditionally transfers the above-styled action from the United States District

Court for the Eastern District of Virginia.  Pursuant to Panel Rules 5.12(a), 5.13 and 7.4(d), this Brief

in Support of the Motion to Vacate the Conditional Transfer Order is being filed  in support to the

Plaintiff's Notice of Opposition that was filed on August 18, 2005.

## INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff seeks compensation for injuries caused by exposure to asbestos. Plaintiff was exposed

to asbestos on multiple occasions in her household while handling and laundering the clothing of

family members who were employed at Northrup Grumman-Newport News ("the Shipyard").

On May 10, 2005,  the Plaintiff filed a Motion for Judgment in the Circuit Court  for the City

of Newport News, alleging that the Shipyard was negligent under Virginia law for failing to maintain

a safe workplace and failing to warn workers of the latent dangers associated with bringing asbestos-contaminated clothing into the home. The motion for judgment was served on the Shipyard and the Shipyard filed a notice of removal to the United States District Court for the Eastern District of Virginia asserting the existence of exclusive federal jurisdiction under 28 U.S.C. §1442(a)(1), the "federal officer" statute. The Shipyard then filed a motion requesting the transfer of this action to Asbestos MDL No. 875 in the Eastern District of Pennsylvania.

The Plaintiff filed a Motion to Remand with the United States District Court for the Eastern District of Virginia asserting the lack of subject matter jurisdiction.[1] The remand motion that is currently pending before Judge Jerome Friedman, has been fully briefed by both sides and should be decided shortly by the Court.

## ARGUMENT

The issue of federal jurisdiction should be decided by the District Court in Newport News. Despite the fact that the Panel entered its Conditional Transfer Order *before* the District Court Judge was able to rule on the motion, that judge has not lost jurisdiction over this case and, therefore, *can* make a determination as to the Plaintiff's Motion for Remand. Faulk v. Owens-Corning Fiberglas Corp., 48 F.Supp.2d 653, 657 (E.D. Tex. 1999); *See* Panel Rule 1.5, 181 FRD 1, 3 (1998); *see also* Bartley v. Borden, Inc., 1996 WL 68482 (E.D. La. 1996)(citing Panel Rule 18 which states that the pendency of a conditional transfer order "does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court" within the prescribed 15 day period). MCL 4th § 20.131, at 220 (2004)

---

[1]Plaintiff also filed a Brief in Support of its Remand Motion asserting that the Defendant failed to file its Brief in Opposition to Remand in a timely fashion as required by the Rules of Eastern District of Virginia.

In the case at bar, Plaintiff filed her Notice of Opposition within the prescribed fifteen-day period. Therefore, transmittal of the CTO was stayed until further action by the Panel. Finally, since the case has not been finally transferred, but only "provisionally" transferred, pending a final decision on transfer, it is still technically pending in the original district court to which it was removed. Since the issue regarding the remand of this case has been fully briefed and submitted to Judge Friedman, judicial economy would dictate that he be allowed to rule on the motion before these matters are transferred to a different district court where the whole briefing process would have to begin anew.

Plaintiff opposes the conditional transfer because she firmly believes that there is no federal jurisdiction over this case. First, the Shipyard is a privately-owned facility that regularly builds and repairs commercial vessels and installs asbestos products in various buildings throughout the Shipyard — unsupervised by the Navy or any other federal entity. Second, though the Shipyard has constructed and repaired Navy vessels, the Shipyard's liability in this case arises solely from its failure to warn its employees and third parties of workplace hazards and its failure to properly maintain a safe workplace. These general common law duties exist irrespective of any government contract and there is no evidence that the Navy ever prevented the Shipyard from warning its employees or their family members of the dangers of asbestos. Consequently, there is no causal nexus between the Shipyard's conduct under federal authority and Plaintiff's claim.

And third, to properly invoke federal officer removal, the Shipyard must show that it has a "colorable" federal defense. The only federal defense asserted by the Shipyard is the government contractor defense, a defense that has been found "in thousands of asbestos cases" in the Eastern District of Virginia not to be available "in 'failure to warn' cases." McCormick v. C.E. Thurston & Sons, Inc., 977 F. Supp. 400, 403 (E.D. Va. 1997).

Plaintiff attaches hereto as Exhibit A, a copy of her Brief in Support of Remand that was filed in the Eastern District of Virginia. The Court in Newport News has received briefs from all of the parties to this issue and the matter is ripe for decision by the Court.

Plaintiff also incorporates by reference the Motions to Vacate and Briefs in Support of Motions to Vacate the Conditional Transfer Orders recently filed in the following cases:    (CTO 249)

| | |
|---|---|
| *Mary E. Blackburn v. Northrup Grumman Newport News* | *C.A. No. 4:05-2895* |
| *Albert W. Dail v. Northrup Grumman Newport News* | *C.A. No. 4:05-2896* |
| *Frances C. Diggs v. Northrup Grumman Newport News* | *C.A. No. 4:05-2897* |
| *Mildred S. Edwards v. Northrup Grumman Newport News* | *C.A. No. 4:05-2898* |
| *Doris M. Harmon v. Northrup Grumman Newport News* | *C.A. No. 4:05-2899* |
| *Burnell Landrum v. Northrup Grumman Newport News* | *C.A. No. 4:05-2900* |
| *Sandra L. Russell v. Northrup Grumman Newport News* | *C.A. No. 4:05-2901* |
| *Robert Schaffer, Jr. v. Northrup Grumman Newport News* | *C.A. No. 4:05-2902* |
| *Gladys I. Spikes v. Northrup Grumman Newport News* | *C.A. No. 4:05-2903* |
| *Peggy O. Sheets v. Northrup Grumman Newport News* | *C.A. No. 4:05-2904* |
| *Nonie C. White v. Northrup Grumman Newport News* | *C.A. No. 4:05-2905* |
| *Betty Jean Lancaster v. Northrup Grumman Newport News* | *C.A. No. 4:05-2906* |
| *Betty J. Williams v. Northrup Grumman Newport News* | *C.A. No. 4:05-2907* |
| *Crystal W. Moore v. Northrup Grumman Newport News* | *C.A. No. 4:05-2908* |
| *James T. Turner v. Northrup Grumman Newport News* | *C.A. No. 4:05-2909* |

These cases are also fully briefed and waiting a decision in the same District Court by the same Judge on the same federal jurisdiction issues.

As set forth in Plaintiff's Brief in Support of Remand, the Shipyard was not complying with government specifications when it neglected to warn its workforce about the foreseeable hazards associated with the use of asbestos, including bringing dust home on their clothing to expose their family members. The Shipyard was not complying with government specifications when it failed to provide suitable work clothes and to mandate that workers leave those clothes at work.  It was simply  violating its state common law duty to its employees and their family members.

## CONCLUSION

Subject matter jurisdiction is lacking because of the defendant's inability to meet the requirement of the federal officer statute.  This issue has been fully briefed and ripe for resolution by Judge Friedman.  Accordingly,  the Panel should stay any transfer pending the ruling of the United States District Court for the Eastern District of Virginia.

WHEREFORE,  Plaintiff respectfully request that the Conditional Transfer Order be vacated.

Respectfully submitted,


HARRIETT C. KING

By Counsel


Gary W. Kendall, Esquire (VSB # 15651)
**MICHIE HAMLETT LOWRY RASMUSSEN & TWEEL PLLC**
500 Court Square, Suite 300
P. O. Box 298
Charlottesville, VA 22902-0298
(434) 951-7200 phone
(434) 951-7218 fax


Page 5

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

### CERTIFICATE OF SERVICE

AUG 3 1 2005

FILED
CLERK'S OFFICE

I hereby certify that a true and correct copy of this Motion to Vacate the Conditional

Transfer Order and the Brief in Support of Motion to Vacate Conditional Transfer Order has been

served via first class mail to all counsel contained on the Attached Panel service List (Excerpted

from CTO-250) on this 30th   day of August, 2005.

Gary W. Kendall

Page 6

**PANEL SERVICE LIST (Excerpted from CTO-250)**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

*Harriett C. King v. Northrop Grumman Systems Corp., et al.,* E.D. Virginia, C.A. No. 4:05-2951

Michele D. Allen-Hart
Abbott Simses & Kuchler
400 Lafayette Street
Suite 200
New Orleans, LA 70130

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Bruce T. Bishop
Wilcox & Savage, P.C.
One Commercial Place, Suite 1800
Norfolk, VA 23510

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001

David A. Damico
Burns, White & Hickton, LLC
Four Northshore Center
106 Isabella St.
Pittsburgh, PA 15212

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106-2574

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Susan M. Hansen
Brownson & Ballou
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

Robert E. Kelly, Jr.
Abbott Simses & Kuchler
1360 Post Oak Boulevard
Suite 1700
Houston, TX 77056

Gary W. Kendall
Michie, Hamlett, Lowry, Rasmussen & Tweel
500 Court Square, Suite 300
P.O. Box 298
Charlottesville, VA 22902-0298

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308-1314

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102

Ronald L. Motley
Motley Rice, LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29465

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
Roven-Kaplan, LLP
2190 North Loop West
Suite 410
Houston, TX 77018

Brian James Schneider
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA 19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1570 Penobscot Building
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226

Andrew J. Trevelise
Reed Smith, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

Harriett C. King v. Northrop Gruman Systems Corp., et al.
USDC Eastern District of VA
Newport News Division
At Law No. 4:05:cv 295 Counsel List

Rex A. Davis, Clerk
Circuit Court for the City of Newport News
2500 Washington Ave
Newport News, VA  23607

John Epps, Esquire
Hunton and Williams
951 East Byrd Street
Richmond, VA 23219
*Counsel for Northrop Grumman Systems Corporation;*
*Newport News Shipbuilding and Dry Dock Company; and Newport News Shipbuilding, Inc.*

Robert L. O'Donnell, Esquire
Vandeventer, Black, LLP
500 World Trade Center
Norfolk, VA 23510-1699
*Counsel for Owens-Illinois*

Nichole Marsh, Esquire
Abbott, Simses, & Kuchler
400 Lafayette Street
New Orleans, LA 70130
*Counsel for Tenneco, Inc.*

Joyce Woods, Esquire
Willcox & Savage
1800 Sovran Center
Norfolk, VA 23510
*Counsel for Tenneco, Inc*

George Dancigers, Esquire
McKenry & Dancigers
192 Ballard Ct.
Virginia Beach, VA 23462
*Counsel for Waco, Inc.*



PLAINTIFF'S
EXHIBIT
A
ALL-STATE® INTERNATIONAL

### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### NEWPORT NEWS DIVISION

**HARRIETT C. KING**

      **Plaintiff,**

**v.**                           **At Law No.4:05:cv295**

**NORTHROP GRUMMAN SYSTEMS
CORPORATION, ET AL.,**

      **Defendants.**

### PLAINTIFF'S MOTION FOR REMAND

      Plaintiff, Harriett C. King, by counsel, moves the Court to remand this action to the Circuit Court for the City of Newport News, Virginia, and in support of this Motion states as follows:

      1.      This action was filed in the Circuit Court for the City of Newport News on May 10, 2005.

      2.      On June 10, 2005, the Defendants filed a Notice of Removal of this action pursuant to 28 USC §1442(a).

      3.      The Defendants alleged that removal is proper pursuant to the Federal Officer Removal Statute, 28 USC §1442(a)(1).

      4.      Removal under the above-cited federal statute is improper and this Honorable Court does not have jurisdiction to hear this matter.

      5.      This Motion for Remand has been filed within thirty days of the date of the Defendants' filing their Notice of Removal.

      **WHEREFORE,** for the reasons stated in her Brief in Support of Motion for Remand, Plaintiff, Harriett C. King, by counsel, requests that this action hereby be

remanded to the Circuit Court for the City of Newport News, Virginia, and for such other

and further relief as the Court may deem appropriate.

Respectfully submitted,

HARRIETT C. KING

By Counsel

Gary W. Kendall, (VSB # 16561)
MICHIE HAMLETT LOWRY RASMUSSEN & TWEEL PLLC
500 Court Square, Suite 300
P. O. Box 298
Charlottesville, VA 22902
(434) 951-7200 (p)
(434) 951-7218) (f)

J. Conard Metcalf, Esquire
Trine & Metcalf
1435 Arapahoe Ave.
Boulder, Colorado 80302
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing Notice was sent to

all counsel of record listed below this ___16th_____ day of June, 2005:

John D. Epps, Esquire, (VSB # 19594)
Hunton and Williams LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074

Robert L. O'Donnell, Esquire
Vandeventer, Black, LLP
500 World Trade Center
Norfolk, VA 23510-1699      For Owens-Illinois

George Dancigers, Esquire
McKenry & Dancigers
192 Ballard Ct.
Virginia Beach, VA 23462    For Waco

2

Joyce Woods, Esquire
Willcox & Savage
1800 Sovran Center
Norfolk, VA 23510    For Tenneco

Nichole Marsh, Esquire
Abbott, Simses, & Kuchler
400 Lafayette Street
New Orleans, LA 70130        For  Tenneco

Gary W. Kendall

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

**HARRIETT C. KING**

     **Plaintiff,**

**v.**                               **At Law No. 4:05:cv295**

**NORTHROP GRUMMAN SYSTEMS**
**CORPORATION, ET AL.,**

     **Defendants.**

**PLAINTIFF'S MEMORANDUM IN SUPPORT**
**OF THE MOTION FOR REMAND**

COMES NOW PLAINTIFF and files this memorandum in support of her motion for remand and would respectfully show the Court as follows:

**INTRODUCTION AND FACTUAL BACKGROUND**

Plaintiff is a living mesothelioma victim who seeks compensation for disabling and life-threatening injuries caused by her exposure to asbestos. Her life expectancy is short and she hopes to have her day in court. Plaintiff was exposed to asbestos on multiple occasions while handling and laundering the clothing of family member(s) who were employed at the Newport News Shipyard ("the Shipyard"). During the course of their careers at the Shipyard, Plaintiff's family members worked aboard both United States Naval vessels and commercial ships and were exposed to asbestos-containing products on these vessels as well as at various buildings, shipways, and other locations in the Shipyard.

1

On May 10, 2005, the Plaintiff filed a Motion for Judgment in the Circuit Court of for the City of Newport News alleging that the Shipyard was negligent in failing to warn of the latent dangers associated with the foreseeable use of asbestos-containing products on its premises and failing to maintain a safe workplace.     On June 10, 2005, the Shipyard filed a notice of removal asserting the existence of federal jurisdiction solely under 28 U.S.C. §1442(a)(1), the "federal officer" statute.

The claims in the motion for judgment are not product liability claims. They have nothing to do with any particular product manufactured by any particular manufacturer. They also have nothing to do with any specific government contract or the oversight of any particular government contract; nor do they implicate any specific federal interest. The claims are simply state negligence claims arising out of the Shipyard's common law duty to warn its employees and third parties of hazards and to provide a safe workplace. If this Court fails to remand this case, it will be opening the flood gates for removal of every tort claim filed against the Shipyard.

This removal is baseless because this Court does not have any subject matter jurisdiction of this claim. First, the Shipyard is a privately-owned facility that regularly builds and repairs commercial vessels and that installed asbestos products in various buildings throughout the Shipyard — unsupervised by the Navy or any other federal entity. Accordingly, to the extent that the asbestos dust on the Plaintiff's family members clothing was the result of construction and repair work on commercial vessels or buildings within the Shipyard, the Federal Officer Removal statute simply does not apply.

Second, though the Shipyard has constructed and repaired Navy vessels as well, the Shipyard's liability in this case arises solely from its failure to warn its employees and

2

third parties of workplace hazards and its failure to properly maintain a safe workplace. These general common law duties exist irrespective of any government contract. Moreover, there is no evidence that the Navy ever prevented the Shipyard from warning its employees or their family members of the dangers of asbestos. Consequently, there is no causal nexus between the Shipyard's conduct under federal authority and plaintiff's claims.

Third, to properly invoke Federal Officer Removal, the Shipyard must show that it has a "colorable" federal defense. The only federal defense asserted by the Shipyard is the government contractor defense. But this Court has held "in thousands of asbestos cases" in the Eastern District of Virginia "that the government contract defense is not available in 'failure to warn' cases." *McCormick v. C.E. Thurston & Sons, Inc.*, 977 F. Supp. 400, 403 (E.D. Va. 1997). According to this Court:

> Despite Defendant's arguments, in thousands of asbestos cases that have preceded, the United States District Court for the Eastern District of Virginia has determined that the government contract defense is not available in 'failure to warn' cases. Judge Miller set forth his ruling that the *Boyle* case did not apply in failure to warn cases back in October of 1988. *See* Order dated October 19, 1988 from *Worley v. Celotex Corp.*, C.A. No. 88-243-N. This position was subsequently adopted by the entire Court and incorporated into the Summary of Prior Rulings and Preservation of Objections Pertaining to Motions for which Oral Argument is Waived. . . .

*Id.* So the government contract defense is not a colorable defense in this case.

## ARGUMENT

The right to removal is limited. It arises only when a federal interest in the matter exists. *Willingham v. Morgan*, 395 U.S. 402, 406 (1969). Yet, the Shipyard, through its removal of this state law tort case, would open the floodgates for removal of every tort case brought against it. The Court should bear in mind that:

3

> Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . which is not to be expanded by judicial decree . . . . It is to be presumed that a cause lies outside this limited jurisdiction . . ., and the burden of establishing the contrary rests upon the party asserting jurisdiction . . . ."

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted).

In a removed case, the removing party bears the burden of establishing a basis for jurisdiction. *Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994). Since removal raises significant federalism concerns, removal jurisdiction must be strictly construed and all doubts must be resolved against removal and in favor of remanding the case to state court. *Id.*; *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 1000 (1941). Finally, remand orders for lack of subject matter jurisdiction are "not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise."); *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336 (1976); *DaWalt, et al. v. Purdue Pharma*, 397 F.3d 392, 397 (6th Cir. 2005).

The Shipyard removed this case alleging that federal jurisdiction exists pursuant to 28 U.S.C. § 1442(a)(1). That statute provides as follows:

> (a)  A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

> (1)  Any officer of the Unites States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

The federal officer removal statute is designed to "ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official

4

duties." *Arizona v. Manypenny,* 451 U.S. 232, 241-42 (1981); *Winters v. Diamond Shamrock Chemical Co.,* 149 F.3d 387, 397 (5th Cir. 1998). This case is not removable under the federal officer removal statute for two reasons. First, much of the asbestos exposure of Plaintiff's family members occurred during work on commercial vessels or in the Shipyard's own buildings, neither of which had any connection to a federal contract and neither of which involved the exercise of federal supervision or federal discretionary decisionmaking. Second, even where these family members were exposed on Navy ships, there is no causal nexus and there is no colorable federal defense. This Court, therefore, should remand this case to Newport News Circuit Court.

**A.    Federal Officer Removal Does Not Apply to Exposure Aboard Commercial Ships or in Private Buildings Where There is No Connection to any Federal Contract And No Exercise of Federal Supervision or Discretionary Decisionmaking.**

Much of the exposure of Plaintiff's family members was to asbestos-containing products used during the construction, repair, or renovation of commercial ships and private buildings at the Shipyard. These exposures had nothing to do with any government contract and were not supervised by any federal officer; nor was the Shipyard acting as a federal agent for purposes of those discreet activities. In other words, no federal officer dictated any specification or made any decision relating to warning the Shipyard's employees of the hazards of using asbestos-containing products on commercial ships. And no federal officer demanded that the Shipyard use asbestos products on commercial vessels or, for that matter, on the Shipyard's own facilities. These exposures involved only private contracts, or the internal development or renovation of the facilities of a privately-owned Shipyard. Since the federal officer removal statue is designed to "ensure a federal forum in any case where a federal official

5

is entitled to raise a defense arising out of his official duties," *Manypenny*, 451 U.S. at 241-42, and no federal officials or official duties are implicated by these completely private activities, this case should be remanded.

**B.      Even Where Employees Were Exposed on Navy Vessels, Federal Officer Removal Does Not Apply Because there is No Causal Nexus and There is No Colorable Federal Defense.**

Even where a federal officer may be involved, removal is proper under the statute only when:

1)      The defendants "demonstrate that they are 'persons' within the meaning of the statute;"

2)      The "defendants acted pursuant to a federal officer's directions and that a causal nexus exists between the defendant's actions under color of federal office and the plaintiff's claims;" and

3)      The defendants assert "a 'colorable federal defense.'"

*Winters*, 149 F.3d at 398, 400. This removal fails primarily under prongs two and three. Under prong two, the Defendant has failed to demonstrate any causal nexus between its actions under color of federal office and the plaintiff's claims. And, under prong three, the defendant has failed to assert a colorable federal defense. This Court, therefore, should remand this case to its proper venue in Newport News Circuit Court.

**1.      There is No Causal Nexus Between Plaintiffs' Claims and the Shipyard's Actions Under Color of a Federal Office**

Although it is defendant's burden to set out a basis for federal subject matter jurisdiction in a removal notice, the notice in this case is simply silent as to how any federal officer would have had anything to do with the Shipyard's alleged failure to warn its employees and their family members of the hazards of asbestos exposure and its

failure to maintain a safe workplace. This case is not a products liability case, much less a design defect case. This case is more akin to a premises liability case. But the Shipyard is attempting to "shroud" its "entire *facilities* from state-law claims simply because the federal government controlled" some of the "*products* manufactured there." *Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653, 670 (E.D. Tex. 1999) (emphasis in original). The district court in *Faulk* refused to "generate such unprecedented precedent" and joined "other courts unwilling to blindly permit such blanket immunity." *Id.* This Court should do the same by remanding this case back to the state court.

### 2.    The Shipyard Has Not Asserted a Colorable Federal Defense

To warrant removal, the Shipyard must also establish that it has a colorable federal defense to plaintiffs' allegations. The Shipyard asserts that it is entitled to the protection of the government contractor defense. The modern standard for the government contractor defense was announced by the U.S. Supreme Court in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). In that case, Marine helicopter pilot David Boyle was killed after his helicopter crashed off the coast of Virginia. Although he survived the impact, he drowned because the helicopter's escape hatch opened outward and he could not overcome the water pressure once the craft was submerged. Boyle's father sued the helicopter manufacturer alleging that it defectively designed the emergency escape system, even though the government contract specified that the hatch must open outward.[1]    The Supreme Court granted certiorari to consider if and when

---

[1] The plaintiffs in *Boyle* also alleged that the helicopter manufacturer defectively repaired part of the helicopter's automatic flight control system, but the Fourth Circuit Court of Appeals found that the plaintiffs failed to meet their burden of proof and dismissed that claim. The plaintiffs did not appeal that decision; therefore, plaintiffs' defective repair claim did not form the basis of the Supreme Court's opinion.

7

federal law provided a defense for government contractors to state tort claims. *Id.* at 502-03.

The Court ruled that state tort law claims may be preempted by federal law when the claims involve "uniquely federal interests," *id.* at 503-04, and a "significant conflict" exists between the federal interest and the operation of state law, *id.* at 507. It also concluded that civil liabilities arising out of the performance of a military procurement contract is an area of unique federal interest. *Id.* at 505-06. However, the existence of a federal interest is not sufficient to warrant displacement of state law. State law will be preempted only if there is a significant conflict between the defendants' contractual duties to the federal government and its state law duties. *Id.*

However, like the causal nexus test discussed above, that defense requires evidence that the Shipyard's liability arises out of its actions on behalf of the federal government and that there was conflict between the federal requirement and state law. The federal government never approved, specified, or prohibited warnings regarding asbestos nor imposed any regulations on the Shipyard regarding shower facilities, locker rooms and other means of providing a safe workplace. Moreover, *Boyle* was a design defect case; this case is a failure to warn case. This Court has repeatedly held that the government contractor defense does not apply to failure to warn cases. Finally, there is no conflict between any federal requirement and the state common law duties at issue in this case. The Shipyard, therefore, has not asserted a colorable federal defense that would support the Court's exercise of subject matter jurisdiction over this case.

> a) *This Court has Repeatedly Held that the Government Contractor Defense Does Not Apply to Failure to Warn Cases*

This Court has rejected the government contractor defense as an affirmative defense in "thousands of asbestos cases." *See, e.g.*, *McCormick v. C.E. Thurston & Sons, Inc.*, 977 F. Supp. 400, 403 (E.D. Va. 1997). In *McCormick*, the court granted the plaintiffs' motion to remand, holding that CET failed to demonstrate a colorable federal defense. The court stated:

> Despite Defendant's arguments, in thousands of asbestos cases that have preceded, the United States District Court for the Eastern District of Virginia has determined that the government contract defense is not available in 'failure to warn' cases. Judge Miller set forth his ruling that the *Boyle* case did not apply in failure to warn cases back in October of 1988. *See* Order dated October 19, 1988 from *Worley v. Celotex Corp.*, C.A. No. 88-243-N. This position was subsequently adopted by the entire Court and incorporated into the Summary of Prior Rulings and Preservation of Objections Pertaining to Motions for which Oral Argument is Waived. . . .

*McCormick*, 977 F. Supp. at 403 (emphasis added). As can be seen in this passage, this Court's ruling in *McCormick* was based on Judge Thomas Miller's decision in *Worley v. Celotex Corp.*, C.A. No. 88-243-N (E.D. Va. 1988) (Order dated Oct. 19, 1988). In *Worley*, Judge Miller stated:

> I'm granting the Plaintiffs' motion in limine to prevent the issue of the contractor defense to be presented to this jury. That is based upon the evidence I've heard so far and the complaints filed in this case, there is no allegation of a design defect in the military equipment. . . . The issue is whether there was a failure to warn, which is not, in my opinion, a design defect matter. Therefore, the *Boyle* case does not apply.

*Worley* (Transcript excerpt of Trial Proceedings at 943, line 23 to 944, line 7, attached as Exhibit A). The *Worley* ruling was incorporated into the Summary of Prior Rulings and adopted by the United States District Court for the Eastern District of Virginia in all asbestos cases. *See* excerpt of the Summary of Rulings and Preservation of Objections Pertaining to Motions for Which Oral Argument is Waived at Paragraph 10, which is attached as Exhibit B; *see also McCormick*, 977 F. Supp. at 403. This case is a failure to warn case. The

9

government contractor defense, under this Court's prior rulings, is accordingly not a colorable defense in this case.

Moreover, the ruling in *Worley* was also adopted by both the Norfolk Circuit Court and the Newport News Circuit Court. *See Belvin v. H.K. Porter Co.*, At Law No. L88-3476 (Norfolk Cir. Ct. Oct. 30, 1989) (a copy of the Order is attached as Exhibit C); *In re: Consolidated Asbestos Trial*, (Newport News Cir. Ct. Oct. 16, 2002), (a copy of the transcript is attached as Exhibit D); *In re: Consolidated Asbestos Trial Against C.E. Thurston & Sons, Inc.*, At Law No. 10000C-01 ("Consolidated Asbestos Trial Against CET") (Judge Curran, Newport News Cir. Ct. April 19, 2002) (Transcript excerpt at 67, attached as Exhibit E); *Moore v. H.K. Porter Co.*, At Law Nos. 13603-S, 13945-S (Newport News Cir. Ct. Mar. 9, 1990). Judge Tench, Judge Conway and Judge Hubbard in Newport News Circuit Court also recently struck the government contractor defense as a matter of law. *See Chappell v. The Okonite Company*, At Law No. 37089T-05 (Newport News Circuit Ct. 2005) (Transcript attached as Exhibit F); *Little v. Dana Corp.*, At Law No. 31799V-04 (Newport News Circuit Ct., Sep. 13, 2004) (Order attached as Exhibit G); *Pyatt v. Garlock*, At Law No. 36688H-02 (Newport News Circuit Ct., Nov. 2, 2004) (Order attached as Exhibit H).

Finally, every circuit court to address the application of the *Boyle* doctrine in failure to warn cases has concluded that the government contractor defense is available in that context only when the contractor's warning conforms to one that the government at least approved, if not dictated. The Fifth Circuit recently joined its sister courts by requiring defendants to meet a modified *Boyle* standard to present a government contractor defense in a failure to warn case. In *Kerstetter v. Pacific Scientific Co.*, 210

10

F.3d 431 (5th Cir. 2000), the court held that state law is displaced in a failure-to-warn claim only if:

> (1)  the United States exercised its discretion and approved the warnings, if any;
>
> (2)  the contractor provided warnings that conformed to the approved warnings; and
>
> (3)  the contractor warned the United States of the dangers in the equipment's use about which the contractor knew, but the United States did not.

*Id.* at 438.

The Fifth Circuit's conclusion in *Kerstetter* was essentially foretold by its earlier opinion in *In re Air Disaster at Ramstein Air Base*, 81 F.3d 570 (5th Cir. 1996). In that case, the court held that a contractor is entitled to the defense in a failure to warn case only if it establishes "an identifiable federal interest or policy *in the existence or methods of warning* and a significant conflict between the federal interest or policy and the operation of state law." *Id.* at 576 (emphasis added). The court then concluded that, based on the evidence presented, it could not determine whether the government exercised sufficient discretion with respect to a warning to bring the plaintiffs' claim within the scope of *Boyle* because the defendants had not presented any evidence to establish whether they and the government were involved in any discussions about warnings. *Id.* Therefore, the Fifth Circuit requires a contractor to prove that the government exercised some discretion over a warning before the contractor can claim the protection of the government contractor defense in a failure to warn case. *But see Stout v. Borg-Warner Corp.*, 933 F.2d 331, 336-37 (5th Cir. 1991) (applying the government contractor defense to a failure to warn claim without discussion).

The Sixth and Seventh Circuits also require defendants to present evidence that the government exercised discretion over a warning before the government contractor defense will bar a failure-to-warn claim, even if the defendant would be immune from a design defect claim.  In *Tate v. Boeing Helicopters*, 55 F. 3d 1150, 1156-57 (6th Cir. 1995), the Sixth Circuit reasoned that:

> Simply because the government exercises discretion in approving a design does not mean that the government considered the appropriate warnings, if any, that should accompany the product.

*Id.* at 1156.  The Seventh Circuit also noted that it is well established that a defendant may not defeat a state failure-to-warn claim simply by establishing the elements of the government contractor defense with respect to a design defect claim because "design defect and failure to warn claims differ practically as well as theoretically."  *Oliver v. Oshkos Truck Corp.*, 96 F.3d 992, 1003 (7th Cir. 1996).  Accordingly, both courts applied the same modified *Boyle* factors used by the Fifth Circuit in *Kerstetter*.  *Tate*, 55 F.3d at 1157; *Oliver*, 96 F.3d at 1003-04.

The Second, Ninth, and Eleventh Circuits specifically addressed the application of the *Boyle* doctrine in asbestos-related failure to warn claims, and all three courts required the contractors to prove that the applicable federal contract included specific, contractually-required warning.  *In re Joint Eastern and Southern District New York Asbestos Litigation*, 897 F.2d 626, 630 (2nd Cir. 1990); *In re Hawaii Federal Asbestos Cases*, 960 F.2d 806, 812-13 (9th Cir. 1992); *Dorse v. Eagle Picher Indus.*, 898 F.2d 1487, 1489 (11th Cir. 1990).  As the Second Circuit noted:

> Stripped to its essentials, the military contractor's defense under *Boyle* is to claim, "The Government made me do it."  *Boyle* displaces state law only when the Government, making a discretionary, safety-related military procurement decision contrary to the requirements of state law,

12

incorporates this decision into a military contractor's contractual
obligations, thereby limiting the contractor's ability to accommodate
safety in a different fashion.

*In re Joint Eastern and Southern District New York Asbestos Litigation*, 897 F.2d at 632.

In *In re Hawaii Federal Asbestos Cases*, the Ninth Circuit held that the defendant

contractor was not entitled to protection under the *Boyle* defense because it produced no

evidence that the government required it to do anything with respect to warnings on its

products. *In re Hawaii Federal Asbestos Cases*, 960 F.2d. at 813; *see also Butler v.*

*Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 586 (9th Cir. 1996) ("[The government contractor

defense] is inapplicable to a failure to warn claim in the absence of evidence that in

making its decision whether to provide a warning . . . [the contractor] was 'acting in

compliance with "reasonably precise specifications" imposed on [it] by the United

States'" (citations omitted)); *Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 749 (9[th]

Cir. 1997) ("Bell has shown neither that 'the government considered the appropriate

warnings, if any, that should accompany the product,' nor that it 'approved reasonably

precise specifications' constraining Bell's ability to comply with whatever duty to warn it

may have had. Summary judgment on this claim was therefore inappropriate." (citations

omitted)).

The consensus among all of these courts should come as no surprise; the Supreme

Court contemplated this result in *Boyle*. One fundamental tenet underlying the *Boyle*

doctrine is that state law should not be preempted when the state law duty sought to be

imposed on a contractor is not contrary to a duty assumed under a government contract.

*Boyle*, 487 U.S. at 508-09. Borrowing the Court's example, if the government contracted

to purchase an air conditioner, specifying the cooling capacity but not its precise

13

construction, a state law imposing a duty upon the manufacturer to include certain safety features [e.g. a warning] would not be contrary to the contractor's duty under the contract. *Id.* "The contractor could comply with both its contractual obligations and the state-prescribed duty of care." *Id.*

Of course, the Shipyard is quick to point out that the federal defense need only be "colorable" and emphasizes the broad pleading requirements discussed in cases such as *Peck v. AC&S*, 838 F Supp 1099, 1101 (D. Md. 1993). While it is true that the pleading requirements are broad and a defendant need not prove the merits of its defense to warrant removal, the Shipyard still must prove that a defense is at least available. And, given the clear precedent in this Court and the overwhelming consensus of the other courts, discussed above, this defense is not available in a failure to warn context.

In short, the Shipyard was not complying with government specifications when it neglected to warn its workforce about the foreseeable hazards associated with the use of asbestos, including bringing dust home on their clothing to expose their family members. The Shipyard was not complying with government specifications when it failed to provide suitable work clothes and mandate that workers leave those clothes at work. It simply was violating its state common law duty to its employees and their family members.

> b) *Boyle Does Not Preempt State Law Failure To Warn Claims Where No Conflict Exists Between State And Federal Law.*

*Boyle* does not preempt state law claims where the contractor can comply with both its contractual obligations and the state-prescribed duty of care. Because the defendant's contractual duty in *Boyle* (design an outward opening escape hatch) was "precisely contrary" to its state law duty of care (design an inward opening escape hatch), the

14

Supreme Court held that state law was preempted by the government contractor defense.

*Boyle,* 487 U.S. at 509.  But the Court stated that this would not always be the case.

> [I]t is easy to conceive of [a] . . . situation, in which the duty sought
> to be imposed on the contractor is not identical to one assumed under the
> contract, but is also not contrary to any assumed.  If, for example, the United
> States contracts for the purchase and installation of an air-conditioning unit,
> specifying the cooling capacity but not the precise manner of construction, a
> state law imposing upon the manufacturer of such units a duty of care to
> include a certain safety feature would not be a duty identical to anything
> promised the Government, but neither would it be contrary.  The contractor
> could comply with both its contractual obligations and the state-prescribed
> duty of care.  **No one suggests that state law would generally be pre-
> empted in this context.**

*Id.* (emphasis added).  Thus even in a pure design defect claim, *Boyle* does not necessarily

preempt a state law claim.

There was no conflict between the Shipyard's federal and state responsibilities in

this case.  The Shipyard could have easily complied with both its federal contractual

duties and its state law duty to warn of the foreseeable dangers inherent to the use of

asbestos on its premises.  And, in the absence of a conflict, the government contractor

defense simply does not apply.  *See Adams v. Alliant Techsystems, Inc.*, 201 F. Supp. 2d

700 (W.D. Va. 2002) (rejecting the government contractor's defense in an employee

action against  a government contractor employer for hearing loss).  In *Adams*, employees

of a government contractor at the Radford Army Ammunition Plant brought an action in

federal court against their employer for hearing loss.  The employer claimed, among

other things, immunity under the government contractor defense.  The Western District,

however, rejected this defense.  The court recognized that "the production of munitions

for the Army is uniquely a federal interest."  *Id.* at 707.   "However,

the court continued, "Virginia's personal injury law . . . does not conflict with that interest." In other words, the defendants in *Adams* had

> not demonstrated that the duty of care defendants owe their employees conflicts with or even burdens defendants' federal regulatory or contractual obligations. Defendants, therefore, have not shown that the circumstances in this case even remotely resemble the circumstances in *Boyle, Yearsley,* and *Mangold,* which involved significant conflicts between state law and the federal interests.

*Id.* (citing *Boyle, Yearsley v. W.A. Ross Cosnt. Co.,* 309 U.S. 18 (1940), and *Mangold v. Analytic Servs. Inc.,* 77 F.3d 1442 (4th Cir. 1996)).

The Western District is not alone. Federal and state courts throughout United States have come to the same conclusion. Finding that government specifications concerning asbestos products did not preclude placing warning on the products, these circuits held that there was no conflict between the duty to warn and the federal specifications. *See, e.g., Butler, supra; In re: Joint E. and S. Dist. N.Y. Asbestos Litig. (Grispo),* 897 F.2d 626, 630 (2nd Cir. 1990) ("The Navy's specifications requiring that Eagle-Picher's cement product include asbestos does not conflict with a state law duty to warn and accordingly does not command its displacement."); *Van Nguyen v. Allied Signal, Inc.,* No. C98-03616 SI, 1998 US. Dist. LEXIS 15517 (N.D. Cal. Sept. 28, 1998) (holding that the asbestos manufacturer defendants could not raise the government contractor defense because "defendants have made no showing that their contractual obligations to the government specifically prohibited them from placing warnings on their products"); *Dorse v. Armstrong World Indus.,* 716 F. Supp. 589 (S.D. Fla. 1989), *aff'd,* 898 F.2d 1487 (11th Cir. 1990) (stating that "the evidence suggests that no conflict exists between the state tort duty [to warn] and the federal contractual duty [to

16

manufacture and deliver cement containing asbestos]"); *In re: Hawaii Fed. Asbestos Cases*, 715 F. Supp. 298, 300 (D. Haw. 1988), *aff'd, Hawaii Asbestos Cases, supra* ("Clearly, the defendants could have complied with their state law-imposed duty to provide adequate warnings without breaching their government contract); *In re: Joint E. and S. Dist. Asbestos Litig. (Ferraiuolo)*, 715 F. Supp. 1167, 1169 (E.D. & S.D.N.Y. 1988) ("[B]ecause federal specifications were silent on the matter of warnings, defendant could have provided adequate warnings to plaintiffs and complied with the federal specifications."); *In re N.Y. City Asbestos Litig. (Weitzman)*, 542 N.Y.S.2d at 120 ("Since Eagle-Pitcher as manufacturer could have complied with both the military specifications and also placed adequate warnings on its packages, without in any way frustrating any identifiable Federal interest, there was no significant conflict."); *Hoglund v. Raymark Industries, Inc.*, 749 P.2d 164, 170 (Wash. Ct. App. 1987) (holding that the trial court properly excluded an instruction concerning the government contractor defense because government specifications concerning the asbestos products "did not prevent [the asbestos manufacturer] from fulfilling its duty to warn of the dangers posed by exposure to the products") (applying Washington statute).[2]

In *Hawaii Federal Asbestos Cases, supra*, the Ninth Circuit stated that "[e]ven if the asbestos insulation were military equipment, we would still affirm the district court's decision that the contractor defense does not preclude plaintiffs' recovery." 960 F.2d at 812. The court stated with regard to the plaintiffs' failure to warn claim:

---

[2] *See also*, with regard to bags of raw asbestos, *Hammond v. North Am. Asbestos Corp.*, 454 N.E.2d 210, 217 (Ill. 1983) (holding that the defendant asbestos company, which mined, milled and packaged raw asbestos, could not rely upon government specifications that stated that the bags of asbestos "shall not carry any security classification or marking other than the contract number" because "the specifications did not preclude defendant from placing a warning on the bags and therefore as a matter of law was not a defense to plaintiff's action.").

17

[The manufacturer defendants] could have provided detailed and prominent statements regarding the dangers of asbestos insulation without violating the terms of their procurement contracts or their product specifications. There existed no conflict between their state law duty to provide adequate warnings to the users of their insulation and the conditions imposed on them pursuant to the agreements they had entered into with the Government.

As a result, **a crucial element of the military contractor defense as defined in *Boyle* is missing.** Owens-Illinois and Fibreboard have simply failed to allege, let alone establish, that in making their decisions regarding warnings they were acting in compliance with "reasonably precise specifications" imposed on them by the United States. As the Second Circuit recently noted in *In re: Joint Eastern and Southern District New York Asbestos Litigation*, 897 F.2d 626, 632 (2nd Cir. 1990), "Stripped to its essentials, the military contractor's defense under *Boyle* is when the Government, making a discretionary, safety-related military procurement decision contrary to the requirements of state law, incorporates this decision into a military contractor's contractual obligations, thereby limiting the contractor's ability to accommodate safety in a different fashion." Here, the Government did not require Fibreboard or Owens-Illinois to do anything with respect to the placement of warnings on their products. Nothing in *Boyle* suggests preemption of a state law duty to warn under such circumstances.

*Id*. at 812-13 (citations omitted). "In the absence of any evidence of a conflict between State warning requirements and any Federal prescription of label information or proscription of a warning, there [is] no basis . . . [the] government contract defense." *In re: N.Y. City Asbestos Litig. (Ronsini)*, 683 N.Y.S.2d 39, 40 (App. Div 1st Dep't 1998), *cert. denied*., 529 U.S. 1019 (2000) (citations omitted).

In this case, the Shipyard cannot show *any* conflict between any reasonably specific contractual warning requirement and its common law duty to warn its own employees and their families of occupational hazards in the workplace. The Shipyard could — and does today on a regular basis — warn its employees of various occupational hazards without *any* impact on any federal contractual requirement.

18

A brief look at the Shipyard's own internal documents, moreover, reveals that the Shipyard was aware of the dangers of asbestos since at least 1955. *See* Exhibit I Memo from Dr. Stallard dated Oct. 1973, with cover page; Exhibit J, Memo of Dr. D. J. Cracovaner dated Apr. 18, 1966. In this memoranda, the Shipyard's own doctors noted the occurrence of asbestosis, lung cancer, and mesothelioma in shipyard employees and recommended controls to "curtail the occupational diseases . . . ." Yet, noticeably absent from both letters is any indication of a conflict between any federal contracting requirements and state law. Indeed the cover letter attached to Dr. Stallard's memorandum states that "[w]ithout instituting controls to curtail the occupational diseases, as the doctor recommends,  . . . the cost of occupational diseases will be tremendous, under current workmen's compensation regulations." Exhibit I.

### C.     This Court's Decision in Mitchell does not Control This Motion to Remand.

The primary support for the Shipyard's removal is this Court's decision in *Mitchell v. AC&S*, Civil Action No. 4:04cv2713 (E.D. Va. December15, 2004). Contrary to the Shipyard's statement that the *Mitchell* facts were "strikingly similar to those in the case at bar," *Mitchell* is readily distinguishable both by its facts and by its legal theory of recovery.

First, the exposure to asbestos involved in *Mitchell* occurred during the repair and/or installation of turbines on two United States naval vessels. Based on the affidavits referenced in the opinion, the turbines were manufactured in accordance with specific federal specifications that required asbestos to be incorporated as part of the turbine. In contrast, the exposure to asbestos in the present case occurred as a result of activities that

19

were performed on non-government commercial vessels, Shipyard buildings and shipways, in addition to some United States naval vessels.

Second, *Mitchell* involved a product liability claim against the turbine manufacturer. A review of the opinion reveals that the plaintiff must have alleged a design defect claim since the opinion does not mention a failure to warn claim nor was one cited by the plaintiff in response to the Notice of Removal. Here, the claim is not a product liability claim involving a design defect but rather a straight-forward common law negligence claim based on the Shipyard's failure to warn of foreseeable hazards and a failure to maintain a safe workplace as required by state law.

While there was potential for *Mitchell*'s design defect product liability claim to directly conflict with the federal government's specifications regarding the component parts for the Westinghouse turbines at issue in that case, the failure to warn claims in the case at bar are the sole basis for liability and do not impede any federal interests. The defendant Shipyard is a private, commercial concern, not a government-owned construction or repair facility. The Shipyard has not, and cannot, point toward any "government specifications" that controlled its conduct regarding warnings to its own employees of hazardous conditions or proscribed it from implementing safe work practices that would have prevented toxic substances from its premises being transported into the Plaintiff's home.

Finally, the plaintiff in *Mitchell* did not raise the issue that the government contractor defense does not apply to a failure to warn claim. Instead, the plaintiff contended that Westinghouse had not acted under the supervision of a federal officer and that, even if it did, it did not have a "colorable" federal defense. By failing to raise any

20

issue of the application of the government contractor defense in a failure to warn case and by further conceding the nexus requirement was met, the *Mitchell* plaintiff essentially acquiesced to the conflict between his design defect claims and the federal specifications.

## CONCLUSION

Subject matter jurisdiction is lacking because of the defendant's inability to meet the requirements of the federal officer statute.   Plaintiff therefore respectfully requests that this case be remanded to the Circuit Court for the City of Newport News, Virginia, pursuant to 28 U.S.C. §1447(c), for lack of subject matter jurisdiction.

Respectfully submitted,

HARRIETT C. KING

By Counsel

Gary W. Kendall, (VSB # 15651)
MICHIE HAMLETT LOWRY RASMUSSEN & TWEEL PLLC
500 Court Square, Suite 300
P. O. Box 298
Charlottesville, VA 22902-0298
(434) 951-7200 (p)
(434) 951-7218) (f)

J. Conard Metcalf, Esquire
Trine & Metcalf
1435 Arapahoe Ave.
Boulder, Colorado 80302
*Counsel for Plaintiff*

21

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Notice was sent to all counsel of record listed below this __16th__ day of June, 2005:

John D. Epps, Esquire, (VSB # 19594)
Hunton and Williams LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074

Robert L. O'Donnell, Esquire
Vandeventer, Black, LLP
500 World Trade Center
Norfolk, VA 23510-1699     For Owens-Illinois

George Dancigers, Esquire
McKenry & Dancigers
192 Ballard Ct.
Virginia Beach, VA 23462    For Waco

Joyce Woods, Esquire
Willcox & Savage
1800 Sovran Center
Norfolk, VA 23510    For Tenneco

Nichole Marsh, Esquire
Abbott, Simses, & Kuchler
400 Lafayette Street
New Orleans, LA 70130     For  Tenneco

Gary W. Kendall