

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR - 9 2006

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL ON MULTI-DISTRICT
IN AND FOR THE UNITED STATES OF AMER

| | | |
|---|---|---|
| CECIL JACKSON, DECEASED, ET AL. ET AL | § § § | |
| VS. | § § | MDL-875 (TXE 1:05-CV-0769) |
| KIMBERLY-CLARK CORPORATION | § | |
| | | |
| NEWBERN BROWN ADKINS, ET. AL. | § § | |
| VS. | § § | MDL 875 (TXE 1:05-CV-0882) |
| LINCOLN ELECTRIC COMPANY, ET. AL. | § | |
| | | |
| THOMAS VODRY ALLEN, ET AL | § § § § | |
| VS. | § § | MDL 875 (TXE 1:05-CV-0876) |
| KIMBERLY CLARK CORPORATION, ET. AL. | § § | |

---

### DEFENDANT KIMBERLY-CLARK CORPORATION'S
### RESPONSE TO PLAINTIFFS' MOTION TO VACATE
### CONDITIONAL TRANSFER ORDER NO. 257

---

**COMES NOW**, defendant, Kimberly-Clark Corporation (hereinafter sometimes "Kimberly-Clark", "KCC" or "defendant") and, pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multi-District Litigation, files this Response to Plaintiffs' Motion to Vacate Conditional Transfer Order No. 257 and would show unto this most Honorable Court as follows:

IMAGED MAR 0 9 2006   **OFFICIAL FILE COPY**

## I.  Introduction

1.    This cause represents the claims of eighty-three plaintiffs against Defendant Kimberly Clark Corporation.  Plaintiffs contend injury as a result of alleged exposure to asbestos-containing products on the premises of Defendant at the Coosa Pines facility located in Childersburg, Alabama during various decades.

2.    This case was originally commenced on Plaintiffs' motion, on or after September 9, 2005, when the claims of plaintiffs, Cecil Reuben Jackson, et al, and several defendants, were severed from the state court action Cause No. B-150,896; *Inez Martin, et al vs. A.C.&S., Inc, et al* into Cause No. B-150,896-AJ; *Cecil Jackson, et al vs. Kimberly-Clark, et al.*

3.    Although the *Jackson* case was not removable when originally filed, it became removable on either November 15, 2005 when plaintiff dismissed all of the remaining defendants from this case except for Kimberly Clark, or about October 28, 2005 when plaintiffs filed discovery responses ordered by the state court.   In either event, this case has been removed within thirty days of its becoming removable.

4.    This remaining claims were commenced on Plaintiffs' motion, on or after November 29, 2005, when the claims of plaintiffs and several defendants, were severed from the state court action into various independent causes.  Defendant subsequently removed each of these independent cases within thirty days of such severances.

5.    After removal of all independent causes and prior to the Judicial Panel's issuance of Conditional Transfer Order No. 257, Defendant sought consolidation of each case into the Jackson matter.  This case is the survivor of such consolidations.

## II. Response to Plaintiffs' Motion to Vacate

6.      Kimberly Clark Corporation respectfully requests that the Judicial Panel on Multi-District Litigation deny Plaintiffs' Motion to Vacate Conditional Transfer Order No. 257.

7.      This Honorable Panel's issuance of Conditional Transfer Order 257 is consistent with the interests and purposes of multi-district litigation.  "When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings.  Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. "  28 U.S.C. 1407(a).  In 1991, the Judicial Panel on Multidistrict Litigation consolidated all federal asbestos cases into MDL-875 in the Eastern District of Pennsylvania.  *In Re Asbestos Products Liability Litigation (No. VI)*, 771 F.Supp. 415 (J.P.M.L. 1991).  In so doing the Judicial Panel clearly and unequivocally set forth the reasons for the creation of MDL-875:

> In our view, it is precisely this change that now leads us to conclude that centralization of all federal asbestos personal injury/wrongful death actions, in the words of 28 U.S.C. § 1407(a), "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." In short, we are persuaded that this litigation has reached a magnitude, not contemplated in the record before us in 1977, that threatens the administration of justice and that requires a new, streamlined approach...

> The most objectionable aspects of asbestos litigation can be briefly summarized: dockets in both federal and state courts continue to grow; long delays are routine; trials are too long; the same issues are litigated over and over; transaction costs exceed the victims' recovery by nearly two to one; exhaustion of assets threatens and distorts the process; and future claimants may lose altogether.

*In re Asbestos Products Liability Litigation*, 771 F. Supp. 415, 418-419 (J.P.M.L. 1991).  In short, the Judicial Panel recognized the need for centralized administration of asbestos cases, of which the current cause is one.

8.     In their Motion to Vacate, Plaintiffs fail to present any evidence or argument addressing the correct issue before this Honorable Panel.  Specifically, Plaintiffs' motion is silent as to the issue of whether this action involves "one or more common questions of fact" and a "determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions" with MDL-875 as set forth as grounds for transferal pursuant to 28 U.S.C. 1407(a).  As a result, Plaintiffs' motion fails to establish any basis to abandon Conditional Transfer Order No. 257.

9.     Instead of addressing the correct issue in their motion, Plaintiffs attempt to obfuscate the consideration of the transfer of this case to MDL-875 with jurisdictional issues.

10.     28 U.S.C. 1407(a) does not authorize the consideration of jurisdictional issues as a basis either for or against transfer of particular actions to any multi-district litigation.  As a result, Plaintiffs' motion to vacate fails to establish any basis by which to vacate Conditional Transfer Order No. 257.

11.     Further, while Defendant continues to maintain that jurisdictional considerations are not a proper issue before this Honorable Panel, Defendant submits its brief with this response addressing specifically the issues raised in Plaintiffs' motion.  Again, by this submission, Defendant does not concede that Plaintiffs' jurisdictional arguments have any relevance to the matter before this Panel.  Rather, Defendant seeks to provide this Panel with its response to the erroneous arguments proffered by Plaintiffs, should the Panel wish to review such materials.  In short, Conditional Transfer Order no. 257 is proper in this action in that this action involves asbestos litigation and, as such, is properly situated under

4

Federal jurisdiction in MDL-875. Further, this action involves Federal jurisdiction in the following particulars:

   a. Pursuant to U.S. CONST. Art. I, § 8, cl. 17 (commonly referred to as the "Enclave Clause"), the United States District Courts have exclusive jurisdiction over the matters in controversy in that that the facility at which Plaintiffs claim injury was constructed, purchased and/or operated as a federal military related property, in whole or part.

   b. Pursuant to 28 U.S.C. § 1442(a)(1) (commonly referred to as "Federal Officer Jurisdiction"), the United States District Courts have exclusive jurisdiction over the matters in controversy in that Defendant, acting pursuant to its obligations arising under the direction, management, and/or control of the United States Secretary of War.

   c. Defendant removed this case in a timely manner, pursuant to "equitable tolling" as set forth in *Tedford v. Warner Lambert Co.* 327 F3d 423 (5th Cir. 2003) which permits a removal under equitable circumstances.

13. The purpose behind implementation of MDL-875 was and remains the prevention or minimization of the morass created by asbestos litigation. MDL-875 has the means and more than a decade's experience of handling asbestos cases and considering the issues relevant to such litigation. Plaintiffs' motion fails to proffer any basis by which to vacate Conditional Transfer Order No. 257.

14. Defendant requests this Honorable Panel deny Plaintiffs' Motion to Vacate and that the Panel transfer this cause to MDL-875.

WHEREFORE, PREMISES CONSIDERED, Defendant Kimberly Clark Corporation requests that the Judicial Panel on Multi-District Litigation deny Plaintiffs' Motion to Vacate Conditional Transfer Order No. 257 and for such other and further relief to which it may show itself to be justly entitled.

Respectfully submitted,

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR - 9 2006

FILED
CLERK'S OFFICE

BY _____

**KENT M. ADAMS**
STATE BAR NO. 00869200
ADAMS & BOSWELL, P.C.
The Century Tower
550 Fannin, Suite 800
P. O. Box 7505
Beaumont, Texas  77726-7505
(409) 838-6767 – Phone
(409) 838-6950 – Fax
**ATTORNEY IN CHARGE FOR DEFENDANT,**
**KIMBERLY-CLARK CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of March, 2006, a true and correct copy of the above and foregoing document was provided to the counsel on the list attached to Defendant, Kimberly Clark Corporation's Response to Plaintiffs' Motion to Vacate Conditional Transfer Order 257.

_____

KENT M. ADAMS

6

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

BEFORE THE JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION
IN AND FOR THE UNITED STATES OF AMERICA          MAR - 9 2006

FILED
CLERK'S OFFICE

| | | |
|---|---|---|
| CECIL JACKSON, DECEASED, ET AL. | § | |
| ET AL | § | |
| | § | MDL-875 |
| VS. | § | (TXE 1:05-CV-0769) |
| | § | |
| KIMBERLY-CLARK CORPORATION | § | |

| | | |
|---|---|---|
| NEWBERN BROWN ADKINS, ET. AL. | § | |
| | § | |
| VS. | § | MDL 875 |
| | § | (TXE 1:05-CV-0882) |
| LINCOLN ELECTRIC COMPANY, ET. AL. | § | |

| | | |
|---|---|---|
| THOMAS VODRY ALLEN, | § | |
| ET AL | § | |
| | § | |
| | § | |
| VS. | § | MDL 875 |
| | § | (TXE 1:05-CV-0876) |
| | § | |
| KIMBERLY CLARK CORPORATION, | § | |
| ET. AL. | § | |

---

### DEFENDANT KIMBERLY-CLARK CORPORATION'S
### BRIEF IN SUPPORT OF RESPONSE TO PLAINTIFFS' MOTION
### TO VACATE CONDITIONAL TRANSFER ORDER NO. 257

---

**COMES NOW**, defendant, Kimberly-Clark Corporation (hereinafter sometimes "Kimberly-Clark", "KCC" or "defendant") and, pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multi-District Litigation, files this Brief in Support of its Response to Plaintiffs' Motion to Vacate Conditional Transfer Order No. 257 and would show unto this most Honorable Court as follows:

## Brief in Support of Defendant's Response to Plaintiffs' Motion to Vacate

1.      Under well-established Constitutional authority, statutory authority and precedent, removal of the claims presented in this cause was proper as the United States District Courts have exclusive jurisdiction over the matters in controversy.  Additionally, the proper forum for this action is MDL-875; In re: Asbestos Litigation; In the United States District Court for the Eastern District of Pennsylvania pursuant to the rules of the Judicial Panel on Multi-District Litigation.

### A.  Federal Enclave Jurisdiction

2.      Pursuant to U.S. CONST. Art. I, § 8, cl. 17 (commonly referred to as the "Enclave Clause"), the United States District Courts have exclusive jurisdiction over the matters in controversy herein, alleged personal injuries occurring wholly, or in part, at facility at which was constructed, purchased and/or operated as a federal military related property, in whole or part.

> The Congress shall have Power... To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of Particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards and other needful Buildings...

U.S. CONST. Art. I, § 8, cl. 17.

4.      The term 'exclusive legislation' is the equivalent of "exclusive jurisdiction". *United States v. Gliatta*, 580 F.2d 156, 158 (5th Cir. 1978) (citing *Surplus Trading Co. v. Cook*, 281 U.S. 647, 652, 74 L. Ed. 1091, 50 S. Ct. 455 (1930)).  It is a well and long established principle that a state may not exercise jurisdiction over a federal enclave, unless specifically reserved by the state at the time of her consent to the federal purchase or unless permitted by Congress. *Fort Leavenworth Railroad Co. v.*

2

*Lowe*, 114 U.S. 525, 526-28, 29 L. Ed. 264, 5 S. Ct. 995 (1885); *Paul v. United States*, 371 U.S. 245, 268, 9 L. Ed. 2d 292, 83 S. Ct. 426 (1963).

5.     In the case at bar, it is clearly evident from the patent dated December 12, 1942, which was executed between then Governor Dixon on behalf of the State of Alabama and the Secretary of War, that the State of Alabama ceded exclusive jurisdiction to the United States of America over the land comprising of the site of the Alabama Ordinance Plant[1]. Hence the Alabama Ordinance Plant is a federal enclave.

6.     Further, the Fifth Circuit Court of Appeals, on more than one occasion, has held that "in a toxic exposure case such as this, when the plaintiff's claims arise out of exposure to chemicals on [a military] base in furtherance of their employment duties, enclave jurisdiction is properly invoked. The result of this holding is that the case presents a question arising under federal law, 28 U.S.C. Sec. 1331, and is removable under 28 U.S.C. sec. 1441 (a)." *Akin vs. Big Three Industries*, 851 F. Supp 819 (U.S.D.C. E.D. Tex. 1994); *Mater v. Holley,* 200 F. 2d 123 (5th Cir. 1952); *Reed v. Fina Oil & Chemical Co.,* 995 F. Supp. 705 (E.D.Tex.1998*).*

7.     In a similar case, the Fifth Circuit, citing an earlier U.S. Supreme Court opinion, held that the federal courts have exclusive jurisdiction over suits arising all or in part from alleged injuries or exposures occurring on federal enclaves. "It is conceded that Fort McPherson is within the provisions of Art. I, sec. 8, clause 17, of the United States Constitution which grants to the United States 'exclusive legislation' over forts, magazines, arsenals, dockyards and other needful buildings, when lands therefore are acquired with the consent of the legislature of the state of their situs. Exclusive 'legislation' has been

---

1 See Patent dated December 22, 1942 executed between then Governor Dixon on behalf of the State of Alabama and the Secretary of War.

construed to mean exclusive 'jurisdiction' in the sense of exclusive sovereignty. *Surplus Trading Co. vs. Cook*, 281 U.S. 647, 652 (1930).

8.      *Reed v. Fina Oil & Chemical Co.*, 995 F. Supp. 705 (E.D.Tex.1998*)* is also analogous to the case at bar. In *Reed*, plaintiff alleged that he developed leukemia as a result of exposure to chemicals on defendant Philips Petroleum Company's synthetic rubber plant. Defendant Philips moved to remove the case based on federal enclave jurisdiction and federal officer jurisdiction. The United States District Court of Eastern District of Texas, Beaumont Division, held that since the federal government owned the plant from its construction until its sale and since it was considered an instrument of national security, the plant was a federal enclave.

9.      Similarly in this case, the patents mentioned above gave the United States Government exclusive jurisdiction over the land situated within and appurtenant to the Alabama Ordinance Plant. In addition, the lease between the Secretary of War and the Coosa River Newsprint Company (predecessor of Kimberly Clark) included provisions that provided the United States Government the right at any time to enter the leased property for the purpose of inspection and inventory and when otherwise deemed necessary for the protection of the interest of the Government[2]. The lease also states that the lessee was to make services available to the Government within thirty (30) days of the declaration of a national emergency[3]. Thus it is clearly evident that the land was a federal enclave and hence based on the well-established precedent set out by the Fifth Circuit, any actions brought for personal injury arising, on this federal enclave, are removable to federal court.

11.      In their motion, Plaintiffs incorrectly assert that a cause of action arises under Federal Law only when the Plaintiff's well-pleaded complaint raises issues of federal law.  The court in *Fung v. Abex*

---

2 Please see the lease at page 10.

*Corp.*, 816 F. Supp. 569 (N.D.Cal. 1992) held that although Plaintiffs do not mention in their complaint that the alleged exposure to asbestos took place while on federally procured submarines which were docked at Mare Island and other federal enclaves, they claim that the injuries were a consequence of their working on naval vessels under the supervision of General Dynamics. Failure to indicate the federal enclave status and location of the exposure will not shield plaintiffs from the consequences of this federal enclave status. Thus, the Court held that, as in *Mater*, plaintiffs' actions arise under the laws of the United States as stated in § 1331 and are properly the subject of federal jurisdiction.

12.     Similarly, in the case at bar, although Plaintiff's petitions do not mention federal property, plaintiffs do allege in their compliant and discovery responses, that they were exposed at all locations in the premises, the Kimberly Clark facility, which is a federal enclave pursuant to Art. I, sec. 8, clause 17, of the United States Constitution. Parts of the facility were at all material times operated by, set aside for, maintained for and made available for the U.S Government, pursuant to their lease with Kimberly-Clark, and pursuant to the deed from the U.S Government to Kimberly-Clark's predecessor. Thus, plaintiff's failure to indicate the federal enclave status and location of the exposure will not shield plaintiffs from the consequences of this federal enclave status and Defendant's removal on this basis is proper.

13.     Pursuant to U.S. CONST. Art. I, § 8, cl. 17 (commonly referred to as the "Enclave Clause"), the United States District Courts have exclusive jurisdiction over the matters in controversy in that that the facility at which Plaintiffs claim injury was constructed, purchased and/or operated as a federal military related property, in whole or part.

---

3 *Id.* at pg. 13.

### B. Federal Officer Jurisdiction

14.    Pursuant to 28 U.S.C. § 1442(a)(1) (commonly referred to as "Federal Officer Jurisdiction"), the United States District Courts have exclusive jurisdiction over the matters in controversy in that Defendant, acting pursuant to its obligations arising under the direction, management, and/or control of the United States Secretary of War.

> A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
>> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. §1442 (a)(1).

15.    The United States Supreme Court established the test by which to determine the applicability of the federal officer statute, specifically requiring the showing of that:

> 1) the removing defendant must be a federal officer or a "person" acting under a federal officer;
> 2) the removing defendant was acting at the direction of an officer of the United States and that a causal nexus exists between the defendant's actions under color of federal office and the plaintiff's claims; and
> 3) the removing defendant asserts a colorable federal defense. *Winters v. Diamond Shamrock Chemical Co.,* 149 F.3d at 398-400*;* See also *Reed v. Fina Oil & Chemical Co.,* 995 F. Supp. 705 (E.D.Tex.1998).

*Mesa v. California,* 489 U.S. 121, 109 S. Ct. 959, 103 L. Ed. 2d. 99 (1989).  Of note, the Fifth Circuit recently combined both the "acting at the direction" and "causal nexus" prongs.  *Winters,* 149 F.3d at 398.

6

**(1) Kimberly Clark Corporation is a person for purposes of Federal Officer Jurisdiction**

16.     In construing the statute, most courts have held that corporations can be "persons" within the meaning of the federal officer removal statute. *Peterson v. Blue Cross/Blue Shield of Texas,* 508 F. 2d 55 (5th Cir.), cert. denied, 422 U.S. 1043, 45 L. Ed. 2d. 694, 95 S. Ct. 2657 (1975), *Akin v. Big Three Industries,* 851 F. Supp. 819, 823 (E. D. Tex. 1994).

17.     The Court in *Pack,* held that "where rules are drafted by a legislative body familiar with traditional legal concepts, one can reasonably assume that the word "person" is intended to indicate more than natural persons. *Pack v. AC and S, Inc.,* 838 F. Supp. 1099, 1101-02 (D.Md. 1993); see e.g., *1 U.S.C. §1; 5 U.S.C. § 551(2)*; see also *Perrin v. United States, 444 U.S. 37, 45, 48-9, 62 L. Ed. 2d 199, 100 S. Ct. 311 (1979)* (statute will ordinarily be viewed as using the common meaning of a word).

18.     The Court in *Ryan v. Dow Chemical Co., 781 F. Supp. 934, 946 (E.D. N.Y. 1992)* looked at the definition of a person "in light of the purpose of the section read as a whole," and found that a "purely legal person such as a corporation could be engaged in activities that amount to the implementation of a federal policy under the direction of a government officer" such that state court suits against those corporations could inhibit federal policy; accord *Fung v. Abex Corp., 816 F. Supp. 569, 572 (N.D. Cal. 1992); Bahrs v. Hughes Aircraft Co., 795 F. Supp. 965, 968 (D. Ariz. 1992)* (same); see *Bakalis v. Crossland Sav. Bank, 781 F. Supp. 140, 144 (E.D. N.Y. 1991).*

19.     Kimberly Clark Corporation is a corporation organized under the laws of the State of Delaware.   In prior submissions, both written and through evidence elicited at hearing before this Honorable Court, Defendant has provided proof of its corporate status.   Thus, based on the standards set above, Kimberly Clark can satisfy the first prong and will be considered a "person" within the meaning of the statute.

### (2) Kimberly Clark Corporation acted at the direction of Federal officers

20.     "Direct control" is established by showing strong government intervention and the possibility that a defendant will be sued in state court as a result of the federal control. *Fung, 816 F. Supp. at 572;* see *Gulati v. Zuckerman, 723 F. Supp. 353, 358 (E.D. Pa. 1989).*

21.     The *Pack* case is illustrative of the control issue. *Pack v. AC and S, Inc.,* 838 F. Supp. 1099 (D.Md. 1993). In *Pack*, the government contracted with Westinghouse to build turbine generators under government specifications during the World War II period. Officers of the Navy and Maritime Commission had extensive control over the construction, design and testing of the turbines. The court also held that, the government would specify and approve the type of asbestos cloth to be used when insulating valves and flanges. It monitored Westinghouse's performance and on occasion it returned drawings and specifications for revision. After installation of the turbines aboard a ship, the government performed sea trials, and reviewed and approved the results. Thus, Westinghouse satisfied the "acting under" requirement of § 1442(a)(1).

22.     Similarly in the case at bar, Kimberly Clark and its predecessor, Coosa River Newsprint Company, from whom it obtained control of the subject premises, were obligated under their lease with the Federal government to maintain, in favor of the U.S. Government, the leased premises and numerous easements running through the premises. Neither Kimberly Clark nor Coosa River Newsprint could build any structures on the premises without the prior written approval of the U.S Army Corps of Engineers' Division Engineer.  Kimberly Clark and Coosa River Newsprint were required to prepare and maintain adequate drawings showing location and connection and other installations data of **each** item that was reconnected or removed, for identification purposes. Any facilities that were built on the portion of the

leased property where Kimberly Clark and Coosa River Newsprint had the option to purchase, Kimberly Clark and Coosa River Newsprint were required to get the prior written approval of the Division Engineer to relocate those facilities. Kimberly Clark and Coosa River Newsprint were required to maintain the leased facilities in efficient operating condition[4], to accommodate U.S. Government personnel at the facility[5], to make services available to the Government within thirty (30) days of the declaration of a national emergency[6], to maintain all leased premises not being used for newsprint operations in standby condition for the War Department[7].

23.     Further, Kimberly Clark and Coosa River Newsprint were required to maintain all property within their exclusive possession in an efficient operating condition to provide at all times the power generating, transmission, water pumping and filtering service. The U.S. Government reserved the right to enter the leased property at any time for the purposes of inspection and inventory and when otherwise deemed necessary for the protection of the interests of the Government[8]. The lease also specifies that any facilities of ingress, egress and communication that were jointly used by the Government and the lessee were subject to the rules, regulations and restrictions set forth by the Commanding Officer for the safety and security of the property of the Government[9]. The Government also reserved the right to maintain personnel and to operate facility on the leased property to provide water service to the Government's plant on adjacent property until the Kimberly Clark and Coosa River Newsprint agreed to provide those services to the U.S. Government.

---

4 Lease, copy marked Exhibit "A" and attached hereto, dated June 12, 1947, by and between the Secretary of War of the United States and Coosa River Newsprint Company, p. 10.
5 Id, at p. 12.
6 Id, at p. 13.
7 Id, at p. 21.
8 Id, at p. 10.
9 Id, at p. 11.

24.  All of the above obligations and several others set forth in the lease clearly establish the continuing obligations of the Coosa River Newsprint Company and ultimately Kimberly Clark to act under the direction of the U.S. Government. Thus at all times, for the duration of the lease, Kimberly Clark acted under the directions of a federal officer, the Secretary of War and his successors, and maintained the premises as built.

25.  A causal nexus existed between Plaintiffs' claims and Defendants' alleged actions is established by virtue of the occurrence of the alleged exposure on the facility. In their interrogatories, Plaintiffs allege exposure to asbestos while working on the Coosa River Newsprint Company Plant that was being maintained by Kimberly Clark and its predecessors based on the guidelines, rules and regulations set forth by the Commanding Officer[10] for the safety and security of the property of the Government. In addition, as set forth in Mr. Pinkerton's deposition, and as pointed out by Plaintiff in its Motion to Remand, " **the government built the power house" and that " we did not modify the powerhouse until 1983, 1984".** Plaintiff's Motion to Remand at p. 14.  Further, Plaintiff Jackson in his deposition alleged exposure to asbestos from unknown structures at the Kimberly Clark facility during mid-1960s and mid 1970s. *See* Page 29, lines 7-11 of the deposition of Cecil Jackson. During the time of Plaintiff's alleged exposure, Kimberly Clark and its predecessors leased the property from the U.S. Government as is evident from the lease and maintained the structures and facilities built by the U.S. Government on the leased property under the rules and regulations set forth by then Commanding Officer and his successors on behalf of the U.S. Government.  Hence, there is no doubt that there is a casual nexus between Kimberly Clark's actions and alleged complaints by Plaintiff.

---

10 *Id*, at note 6.

**10**

26.     Plaintiffs erroneously rely on the *Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653 (E. D. Tex. 1999) in denying any causal nexus between Plaintiffs' complaint and defendant's action under the control of the federal officer.  In *Faulk*, the trial judge did not find any casual nexus between defendant's actions and color of federal office in that case, only because according to the Court, the defendants made a mistake by attempting to transform their entire "facility" (claims based on premises liability) into "products" (product liability).  Therein, the Court further went on in detail to explain:

> In all of this Court's cases dealing with removal in light of the federal officer statute-- Winters, Reed, and Akin--this Court's brethren found a causal nexus between defendants' actions under color of federal office and the plaintiffs' claims.  Here, Defendants are attempting to extend these cases into new and uncharted territory. In this particular case, Defendants seek shelter in the federal officer statute even though the federal officer was silent as to whether to warn about the dangers of asbestos. Moreover, the product whose manufacture was arguably "controlled" by the federal government *is not the product allegedly causing injury to the Plaintiffs.*

27.     Faulk is easily distinguished from the instant case. Plaintiffs claim alleged exposure to asbestos from structures on the Coosa River Newsprint Company/Kimberly Clark facility. The structures, namely, the powerhouse and the water filtration plant were built by the U.S. Government. The U.S. Government is the appropriate authority with the knowledge of the materials used in the construction of these structures. Kimberly Clark only maintained these structures pursuant to the lease and thereby was acting under the direction of the federal officer. The structures that were part of the property which allegedly caused the alleged harm to Plaintiff. So a casual nexus between the Plaintiff's complaint and Kimberly Clark's actions could be construed, however, it is important to note that since Kimberly Clark did **not modify the powerhouse** until 1983, 1984 long after Plaintiff left the premises, there was no way for Kimberly Clark to have known the type of insulation used in the powerhouse or any of the structures built by the U.S. Government on the leased property at the time of Plaintiff's exposure.  Unlike *Faulk*, the

alleged agent of injury to Plaintiffs, asbestos, was specified, installed and maintained by or at the direction of the U.S. Government.

### (3)  Kimberly Clark has a colorable defense to Plaintiffs' Claims

28.    To effect removal under 28 U.S.C. § 1442(a)(1), the defendant must assert a colorable federal defense. *Akin v. Big Three Industries, Inc., 851 F. Supp. 819, 823* (citing *Mesa v. California, 489 U.S. 121, 103 L. Ed. 2d 99, 109 S. Ct. 959 (1989))*. For the initial jurisdictional question, it is not necessary that the defendant prove that the defense is valid. "Any determination as to the merits [of the defense] is collateral to the jurisdictional question here presented." *Id.*

29.    Kimberly Clark is entitled to application of the government contractor defense established by the U.S. Supreme court in *Boyle v. United Technologies Corp., 487 U.S. 500, 512, 101 L. Ed. 2d 442, 108 S. Ct. 2510 (1988)*. In *Boyle*, the Court held that "liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Guillory v. Ree's Contract Service, Inc.,* 872 F. Supp. 344 (S.D. Miss. 1994) (citing *Boyle,* 487 U.S. at 513, 108 S. Ct. at 2518).

30.    The Court in *Guillory* also held that the government contractor defense is not limited to military procurement contracts alone. In that case, the court found more persuasive the reasoning of those courts which have determined that the defense applies to all contractors, not just military contractors, and that it applies to performance contracts, not just procurement contracts. See *Carley v. Wheeled Coach, 991 F.2d 1117, 1119 (3d Cir. 1993)* (collecting cases); *Richland-Lexington Airport v.*

*Atlas Properties*, 854 F. Supp. 400, 422 (D.S.C. 1994); *Lamb v. Martin Marietta Energy Sys., Inc.*, 835 F. Supp. 959, 966 & n.7 (W.D. Ky. 1993).

31.     In the instant case, the structures, namely the powerhouse and the water filtration plant were designed, specified and built by, or on behalf of, the U.S. Government as is evident from the deposition of Mr. Pinkerton (See Deposition of Mr. S. B. Pinkerton, page 72, line 2-5). These facilities were only leased to and used by Coosa River Newsprint and Kimberly Clark in mill operations. Therefore, the first and second prongs, that the United States approved reasonably precise specifications and the equipment conformed to those specifications, are satisfied.

Thus defendant has established, that it is a person for the purposes of the Federal Officer Removal Statute, that it was acting under the directions of the federal officer and that it has a colorable defense.

32.     Therefore, pursuant to 28 U.S.C. § 1442(a)(1) (commonly referred to as "Federal Officer Jurisdiction"), the United States District Courts have exclusive jurisdiction over the matters in controversy in that Defendant, acting pursuant to its obligations arising under the direction, management, and/or control of the United States Secretary of War.

### C. Timeliness of Removal

33.     Defendant removed this case in a timely manner, pursuant to "equitable tolling" as set forth in *Tedford v. Warner Lambert Co.* 327 F3d 423 (5th Cir. 2003) which permits a removal under equitable circumstances.

34.     The general removal procedure is prescribed by statute:

The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever

13

period is shorter.

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title [28 USCS § 1332] more than 1 year after commencement of the action.

28 U.S.C.S. § 1446(b).

35.     It is well established law, that where the "pleadings are ambiguous, the thirty days set forth in 28 U.S.C. § 1446(b) are tolled until the defendants received sufficient notice of removability via receipt of an ..."other paper." *See Pack v. AC and S, Inc.,* 838 F. Supp. 1099, 1101-02 (D.Md. 1993) (holding that when initial pleading required defendant to guess as to removability, such pleading is insufficient to trigger thirty day limit). This holding advances both policies behind § 1446(b) – the defendants should not have to speculate as to removability, and plaintiffs should not be encouraged to draft pleadings with an eye toward insulating federal cases from removal." *Id.*

37.     As set forth in Defendant's Second Notice of Removal, Plaintiff has never alleged, in any of their pleadings, the locations where they claim plaintiffs were exposed to asbestos by this Defendant. Plaintiffs did stipulate, in a document filed with this Court, on December 14, 2005, that the alleged exposures in this case, as to this Defendant, occurred at the Coosa Pines Newsprint Mill in Alabama. This is believed to be the first, and only pleading or other paper ever filed by Plaintiffs in this cause, setting forth the specific alleged location of exposure as to this Defendant.

38.     In their Motion to Remand, Plaintiffs erroneously allege that Defendant received notice suffieient to determine the removability of this case when plaintiffs filed their Motion for Class Certification and Consolidation on September 30, 1997. As defendant stated in its Notice of Removal,

**14**

this case became removable only after it was severed on September 9, 2005. The proceedings prior to September 9, 2005, did not constitute an action "commenced" between Cecil Reuben Jackson and Defendant Kimberly Clark because only on or after September 9, 2005, when this case came to life after it was severed from the *Inez Martin, et al vs. A.C.&S., Inc, et al* case,  did meaningful discovery commence.

39.    Similarly, Plaintiffs cannot rely on Defendant's discovery responses for a determination of removability.  In *Rivers v. International Matex Tank Terminal, 864 F. Supp. 556 (E.D. La. 1994)*, the Court considered whether plaintiff's deposition, in which she admitted that she did not know what the nondiverse defendants did to cause her husband's illness, could be an "other paper" under Section 1446(b). Defendant claimed that removal was permissible within thirty days of this testimony because it indicated fraudulent joinder. The Court held that the deposition testimony **did not** constitute "other paper" because it was not sufficiently voluntary. The Court reasoned that the testimony was elicited by opposing counsel's professional questioning, it was not a definitive statement of what evidence plaintiff did or did not have, and it did not rise to the level of certainty required for removal based on diversity. *Rivers, 864 F. Supp. at 559-60*. Therefore, the deposition testimony did not commence the running of a new thirty-day period for removal under Section 1446(b). *Id. at 560*.

40.    Further, the *Rivers* court also stated that the Fifth Circuit has maintained that "a case that was not removable at the time of the plaintiff's initial pleading may only become removable under *28 U.S.C. § 1446*(b) 'pursuant to a voluntary act of the plaintiff. . . .'" *Weems v. Louis Dreyfus Corp., 380 F.2d 545, 547 (5th Cir. 1967)*. In *Rivers*, the defendants' deposition of plaintiff, elicited by professional questioning, resulted in what substantively was a conclusory statement; the factual basis for the response

15

was not within plaintiff's complete personal knowledge, and certainly was not considered to have been voluntary. The Court also stated that the statement of a witness made in a discovery context could well be useful in the trial setting, but not necessarily in an inquiry about jurisdiction.

41.     As in *Rivers*, Plaintiffs herein allege that because Plaintiffs' counsel made a statement to Mr. S. B. Pinkerton during Pinkerton's depositoion, that "the claims were based on products at the Coosa Pines facility", such statement would constitute an "other paper informing defendant re: removability.

42.     Additionally, the Court in *Harrell v. Reynolds Metals Co.,* 599 F. Supp. 966, 968, 970 (N.D. Ala. 1985) held that the deposition taken by defense does not constitute an "other paper" and was not a voluntary act permitting removal. The court specifically reiterated that removability is triggered by 28 U.S.C. § 1446 only by service of the summons and complaint or by "receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained" that the case is removable. A deposition taken by defendant does not constitute any of these events. *Id. at 970.* In the *Harrell* case Plaintiffs filed an action against defendants in state court. Defendants filed a motion to dismiss, and the state court entered an order dismissing count II of the complaint as against the individual defendants, dismissing count III as to the wife, and dismissing count IV as against all defendants. After discovering certain information during the husband's deposition, defendants removed the action to the court. Plaintiffs filed a motion to remand the action to state court, and the court granted the motion. The court held that defendants' removal of the action was not timely because removability was triggered only by the service of the summons and complaint, or by defendants' receipt of a copy of

16

any amended pleading, motion, order, or other paper from which it could first be ascertained that the case was removable, and the deposition did not constitute any of those events.

43.    In their Motion to Remand, Plaintiffs again incorrectly allege that the transcript of the deposition of Plaintiff Cecil Jackson on August 22, 1996 constituted an "other paper" to trigger removability. Based on the holdings in the *Harrell* and the *River's* case, the deposition of Cecil Jackson on August 22, 1996, by other counsel does not constitute an "other paper" within the meaning of 28 U.S.C. § 1442.

44.    In *Erectors, Inc., d/b/a Southwest Signs v. Infax, Inc.*, 72 F. 3d 489 (1996), the Court held that under *28 U.S.C. § 1446*(b), when an action is not initially removable, the defendant has 30 days after it receives a copy of "other paper from which it may first be ascertained" that the case is or has become removable. The Fifth Circuit has indicated that the "other paper" conversion requires a *voluntary act by the plaintiff*. See *Gaitor v. Peninsular & Occidental S.S. Co.*, 287 F.2d 252, 254 (5th Cir. 1961) (in explaining that "other paper" requires a voluntary act of the plaintiff, the court specifically noted that an initially non-removable case "cannot be converted into a removable one by evidence of the defendant or by an order of the court"). Further, the Court held that the defendant's subjective knowledge cannot convert a case into a removable action.  *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992).

45.    Ordinarily a case must be removed within one year of commencement of the action. Given the fact that this case was commenced after September 9, 2005, when this case was severed from *Inez Martin* case, and when plaintiffs designated *inter alia*, that Cecil Timothy Jackson was a plaintiff, this case was removed well within one year. *Tedford v. Warner-Lambert Co., et al*, 327 F3d 423 (5th. Cir. 2003).

46.     Plaintiffs argue that the age of this case should be calculated based on the age of the predecessor *Inez Martin* case. The *Martin* case was manipulated to defeat diversity, to forum shop, and to allow plaintiffs to manipulate the Texas legal system as they saw fit. Accordingly, equity provides that the one-year period as asserted by Plaintiffs is inapplicable.   "Where a plaintiff has attempted to manipulate the statutory rules for determining federal removal jurisdiction, thereby preventing the defendant from exercising its rights, equity may require that the one-year limit in USC section 1446 (b) be extended". *Tedford v. Warner-Lambert Co., et al*, 327 F3d 423 (5th. Cir. 2003).

### D. Consent Unnecessary

48.     Finally, consent of all defendants to removal is unnecessary in this cause in that the removal is based in part upon federal officer liability.  *Cirilo v. Lincoln Elec. Co.*, 2004 U.S. Dist. LEXIS 28679 (W.D. Tex. 2004); *Ruffin v. Armco Steel Corp.*, 959 F.Supp. 770, 773 (S.D. Tex. 1997); *Doe v. Kerwood*, 969 F.2d 165, 168 (5th Cir. 1992).

49.     Plaintiffs incorrectly contend that the consent of all other defendant is required for removal.  In support of that position, Plaintiffs rely on the general rule of the necessity of consent espoused in 28 U.S.C. 1446.  However, in so doing, Plaintiffs ignore the specific exception to consent in removals based upon federal officer liability pursuant to 28 U.S.C. 1442(a).  In fact, Plaintiffs also ignore the prior holding in the Fifth Circuit that, "[t]he language of the specific statutory authority for removal is the controlling factor in determining whether a defendant must obtain the consent of co-defendants." *Doe*, 969 F.2d at 168.  Defendant concedes the general rule proffered by Plaintiffs.  However, Defendant relies upon the controlling precedent in the Fifth Circuit that the general rule does not apply to situations involving federal officer liability.  In short, consent of all defendants is simply not required in this cause.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR - 9 2006

CLERK'S OFFICE

WHEREFORE, PREMISES CONSIDERED, Defendant Kimberly Clark Corporation submits this its' Brief in Support of its Response to Plaintiffs' Motion to Vacate Conditional Transfer Order No. 257 and requests that the Judicial Panel on Multi-District Litigation deny Plaintiffs' Motion to Vacate Conditional Transfer Order No. 257 and for such other and further relief to which it may show itself to be justly entitled.

Respectfully submitted,

BY _____

KENT M. ADAMS
STATE BAR NO. 00869200
ADAMS & BOSWELL, P.C.
The Century Tower
550 Fannin, Suite 800
P. O. Box 7505
Beaumont, Texas  77726-7505
(409) 838-6767 – Phone
(409) 838-6950 – Fax
**ATTORNEY IN CHARGE FOR DEFENDANT,
KIMBERLY-CLARK CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of March, 2006, a true and correct copy of the above and foregoing document was provided to the counsel on the list attached to Defendant, Kimberly Clark Corporation's Brief in Support of Response to Plaintiffs' Motion to Vacate Conditional Transfer Order No. 257.

_____

KENT M. ADAMS

19

**PANEL SERVICE LIST (Excerpted from CTO-257)**
**DOCKET NO. 875**
**IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO.VI)**

*Cecil Ruben Jackson, et al v. Kimberly Clark Corp.,* **E.D. Texas, C.A. No. 1:05-769**
*Thomas Vodry Allen, et al vs. Kimberly Clark Corp., et al;* **E.D. Texas , C.A. No. 1-05-876**
*Newbern Brown Adkins, et al v. Kimberl-Clark Corp., et a;* **E.D. Texas, C.A. No. 1-05-882**

Glen W. Morgan
Reaud, Morgan & Quinn, L.L.P.
801 Laurel Street
Beaumont, Texas 77720

Robert L. Adams
Kacal, Adams & Law
One Riverway, Suite 1200
Houston, Texas 77056

Jerry L. Beane
Andrews & Kurth
BankOne Center
1717 Main Street, Suite 3700
Dallas, Texas 75201

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

John G. Bissell
Strong Pipkin, Bissell &
Ledyard
1111 Bagby Street
 Suite 2300
Houston, Texas 77002

Paula H. Blazek
Germer Gertz
550 Fannin Street, Suite 700
Beaumont, Texas 77701

Eugene W. Brees II
Whitehurst Harkness, Ozmun &
Brees
P.O. Box 1802
Austin, Texas 78767

George Read Carlton
Godwin Pappas Langley
Ronquillo
1201 Elm Street
Suite 1700
Dallas, Texas 75207

Edward J. Cass
Gallagher Sharp, Fulton &
Norman
Buckley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Goodwin Procter, LLP
901 New York Avenue, NW
Washington, DC 20001

Sandra F. Clark
Mehaffy & Weber
P.O. Box 16
Beaumont, Texas 77704

David Damico
Burns White & Hickton
Fourth Northshore Center
106 Isabella St.
Pittsburgh, PA 15212

James D. Dowell
Rienstra, Dowell & Flatton
595 Orleans Street, Suite 1007
Beaumont, Texas 77701

Gary D. Elliston
DeHay & Elliston, LLP
3500 Bank of America Plaza
901 Main Street
Dallas, Texas 75202

Michael M. Essmyer
Essmyer & Tritico
4300 Scotland
Houston, Texas 77007

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street, 33rd Floor
Philadelphia, PA 19103

Susan M. Hansen
Brownson & Ballou
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

Frank G. Harmon, III
Crain, Caton, James
1401 McKinney, Suite 1900
Houston, Texas 77010

Kathryn Oakes Hermes
DeHay & Elliston LLP
901 Main Street, Suite 3500
Dallas, Texas 75202

John L. Hill, Jr.
Locke Liddell & Sapp
600 Travis Street
3400 JP Morgan Chase Tower
Houston, Texas

Paul J. Holmes
Paul J. Holmes, PC
550 Fannin
P.O. Box 3746
Beaumont, Texas 77701

Gail J. Jenkins
Jenkins & Martin
P.O. Box 26008
2615 Calder, Suite 500
Beaumont, Texas 77720

D. Allan Jones
Orgain, Bell & Tucker, LLP
P.O. Box 1751
Beaumont, Texas 77704

George J. Kacal, Jr.
Kacal, Adams, & Law
One Riverway, Suite 1200
Houston, Texas 77056

J. Frank Kinsel, Jr.
Cantey & Hanger, LLP
2100 Burnett Plaza
801 Cherry Street
Ft. Worth, Texas 76102

Reginald S. Kramer
Oldham & Dowling
195 South Main Street, Suite 300
Akron, OH 44308-1314

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102

C. Robert Mace
Tekell, Book, Matthews &
Limmer
4300 One Houston Center
1221 McKinney
Houston, Texas 77010

D. Ferguson McNiel
Vinson & Elkins
1001 Fannin Street, Suite 2300
Houston, Texas 77002

Peter A. Moir
Quilling Selander, Cummiskey,
2001 Bryan Street
Bryan Tower, Suite 1800
Dallas, Texas 75201

Ronald L. Motley
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC  29465

John J. Mundy
Mundy & Singley
816 Congress Avenue
 Suite 1230
Austin, Texas 78701

James R. Old, Jr.
Germer Gertz
550 Fannin Street, Suite 1700
Beaumont, Texas 77701

David Arthur Oliver, Jr.
Porter & Hedges, LLP
1000 main Street, Suite 1700
Beaumont, Texas 77701

Rex Wayne Peveto
Peveto Law Firm
118 Border Street
Orange, Texas 77630

Franklin A. Poff
Crisp, Boyd & Poff
2301 Moores Lane
P.O. Box 6297
Texarkana, Texas 75505

James H. Powers
Powers & Frost, LLP
2400 One Houston Center
1221 McKinney Street
Houston, Texas 77010

John J. Repcheck
Marks, O'Neil, O'Brien &
Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

H. Tracy Richardson, III
Strong Pipkin Nelson & Bissell
1400 San Jancinto Building
595 Orleans
Beaumont, Texas 77013

James M. Riley, Jr.
Coats Rose Yale Ryman & Lee
3 Greenway Plaza, Suite 2000
Houston, Texas 77046

Lauren Miller Robbins
Munisteri Sprott Rigby Newsom
3323 Richmond Avenue, Suite A
Houston, Texas 77098

John D. Roven
Roven-Kaplan LLP
2190 North Loop West
Suite 410
Houston, Texas 77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
Kelley Jasons McGuire &
Spinelli
Center Square West, 15th Floor
Philadelphia, PA 19102

Robert E. Swickle
Jacques Admiralty Law Firm
1570 Penobscot Building
The Maritime Asbestosis Legal
Clinic
Detroit, MI 48226

Thomas W. Taylor
Andrews & Kurth
600 Travis, Suite 4200
Houston, Texas 77002

Andrew J. Trevelise
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Thomas J. Ward, Jr.
Law Office of T. John Ward
P.O. Box 1231
Longview, Texas 75606

James L. Ware
Sheehy, Serpe & Ware
2500 Two Houston Centre
909 Fannin
Houston, Texas 77010

James K. Weston II
Tom Riley Law Firm
4040 First Avenue NE
P.O. Box 998
Cedar Rapids, IA 52406

Gene M. Williams
Shook, Hardy & Bacon
Chase Tower, Suite 1600
600 Travis Street
Houston, Texas 77002