1

**MDL 875**

Before the Panel on Multidistrict Litigation
MDL Docket No. 875
In Re: Asbestos Products Liability Litigation  (No. VI)

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 3 1 2006

Originating

FILED
CLERK'S OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MARIO BELLU ET UX. KJELLFRID BELLU | § § § | |
| VS. | § § | CIVIL ACTION NO. 06-0608 |
| Diamond Offshore (USA), Inc., et al. | § | |
| Murphy Exploration & Production Co. | § | Hon. A. J. McNamara |
| Odeco Drilling (UK) Limited., and | § | |
| Diamond Offshore, Limited | § | SECT. D; MAGIS. 5 |

**PLAINTIFFS' MOTION TO VACATE**
**Conditional Transfer Order CTO-259**
**And**
**BRIEF IN SUPPORT THEREOF**

 **Defendants removed, under diversity jurisdiction, this action filed by two aliens against two alien defendants and two citizens of different States, claiming that the alien defendants have no connection to the claim. Mario Bellu worked for years for one of the alien defendants and served upon a vessel owned by the other when the two were affiliates of Ocean Drilling & Exploration Co. The removing party has not and cannot show that the aliens were "fraudulently joined." Because there is no diversity of citizenship where an alien sues another alien (absent a dispute between citizens of different States), there is no jurisdiction under 28 U.S.C. 1332(a). The action should be remanded to state court for lack of subject matter jurisdiction.**

 COME NOW Plaintiffs Mario and Kjellfrid Bellu who file their Motion to Vacate

**Conditional Transfer Order CTO-259** which would transfer this maritime action into

the MDL 875. Plaintiffs further move the Court to remand this action to state court for

lack of subject matter jurisdiction under 28 U.S.C. 1332(a) and because the Notice of

Removal was defective. Because the two plaintiffs (the only plaintiffs) are aliens who

sued two alien defendants, Odeco Drilling (UK) Limited., and Diamond Offshore,

Limited, there is no diversity jurisdiction, the removal was improper, and the action

should be remanded to state court.

IMAGED APR - 3 2006    **OFFICIAL FILE COPY**

## Background

1       Plaintiff is terminally ill with malignant mesothelioma caused by occupational exposure to asbestos while in the employ and upon the fleet of the defendants, all of which were affiliates of Ocean Drilling & Exploration Co. (Ocean Drilling) of New Orleans.  Bellu and his wife sued the known successors to Ocean Drilling and its affiliates — on whose vessels and for whom he served at sea for around 20 years — seeking money damages for the uniquely asbestos-related malignancy (from which he shall shortly perish).  Murphy Exploration and Production Company (Murphy) removed this action from the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, alleging diversity jurisdiction and fraudulent joinder of alien defendants.

## Grounds for Removal

2.      Murphy predicated its diversity removal of this seaman's mesothelioma injury case upon the premise that Plaintiffs fraudulently joined defendants Odeco Drilling (UK) Limited (Odeco) and Diamond Offshore Limited (Diamond).  Because Murphy cannot show that Plaintiffs lack a colorable cause of action against both Odeco and Diamond, the claim of "fraudulent joinder" fails.  Given that both Odeco and Diamond are valid defendants and both are aliens, the claim of the two alien Plaintiffs does not create subject matter jurisdiction under 28 U.S.C. 1332.  There being no diversity jurisdiction — and no other basis for the removal — the court lacks subject matter jurisdiction and should remand this action to state court.

3.      To overcome the jurisdictional requirement of 28 U.S.C. §1332(a)[1], this not being a suit "between citizens of different States," Murphy claimed that defendant Odeco "never employed plaintiff and plaintiff did not work on any vessels owned or operated by [it]; therefore [it] is improperly and/or fraudulently joined as defendant . . . and its citizenship cannot be considered for the purposes of determining complete diversity." (Notice of Removal, para. 14). Murphy made the same claim about the other alien defendant, Diamond. (*Id.* at para. 19).

**Bellu's Odeco Employment**

4.      Plaintiff Mario Bellu did indeed work for Odeco, as well as its parent and other affiliates, as evidenced by his pay stubs attached as Exhibit A and incorporated by reference.  Mr. Bellu began his Ocean Drilling career in 1969 when he contracted for employment with Ocean Drilling whose address — according to the payslips — was, Odeco Building, 1600 Canal St., New Orleans, Louisiana, 70112. (Affidavit of Mario Bellu; Exhibit A)  He remained in the employ of Ocean Drilling, being transferred from one affiliate to another and from one Ocean Drilling rig to another at his employer's convenience and command, continuing until 1987. (*Id.*)  Among those Ocean Drilling employers, at least according to Mr. Bellu's handful of old payroll records, may be found the "fraudulently joined" Odeco Drilling (UK) Limited. Mr. Bellu alleged in his original petition that the negligence of Odeco was a proximate cause of his affliction

---

[1]      28 U.S.C. §1332      Diversity of Citizenship; amount in controversy; costs

(a)      The district courts shall have original jurisdiction of all civil actions where the amount in controversy exceeds the sum or value of $75,000 . . . and is between —
  (1) citizens of different States;
  (2) citizens of a State and citizens or subjects of a foreign state;
  (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
  (4) a foreign state . . . as plaintiff and citizens of a State or of different States.
                        *        *        *
(d)      The word "States", as used in this section, includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico.

with malignant mesothelioma.  He alleged the same for the other alien defendant, Diamond (Orig. Petition, pp. 2-5).

**Bellu's Time on Diamond's Vessel**

5.      Mr. Bellu served aboard the vessel "Ocean Alliance." (Bellu Affidavit).  As can be seen from Exhibit B, attached and incorporated by reference, the vessel "Ocean Alliance" was owned by a company called "Ben-Odeco Limited." (Exhibit B, *Bruce v. Ben Odeco Ltd.*, 1996 Scots Law Times 1315 (1st Div.).

6.      Ben-Odeco Limited changed its name on 9/17/92 to become Diamond M-Odeco Limited. The latter changed its name on 5/21/93 and became Diamond Offshore Limited, the name under which Bellu sued it in this case.  (Exhibit C, WebCHeck service, Company Details, Diamond Offshore Limited; www.CompaniesHouse.gov.UK).  It incorporated 12/2/68, *id.*, shortly before Mr. Bellu began his career  with Ocean Drilling. Therefore, Diamond is the company which owned the "Ocean Alliance" when Mr. Bellu toiled upon it.

7.      Because Mr. Bellu served upon and sustained injurious asbestos exposures during his service upon a vessel owned by Diamond, his claim against it is valid and undeniably actionable.  Diamond was manifestly not sued as part of a "fraudulent joinder." Murphy's ill-informed affiant, William C. Long, who swore in support of the Notice of Removal merely "upon information and belief" that "Mr. Bellu did not work on any vessels owned and/or operated by Diamond Offshore Limited" misspoke.

**Joinder Not Fraudulent if Claim is Real**

8.      In simple terms, a defendant is "fraudulently joined" only if the Plaintiff has no possibility of recovery from that defendant, *i.e.*, the Plaintiff has failed to state a claim for relief or the claim against the diversity destroying defendant is already resolved or satisfied.  On the face of the pleadings, Mr. Bellu manifestly pled a cause of action against Odeco and Diamond.  However, Murphy says — because it must say so in

order to conjure federal jurisdiction — that the two alien Defendants, Odeco and Diamond, were "fraudulently joined."

9.      As the removing party, it is Murphy's burden to establish the fraudulent joinder and this it has altogether failed to do.  Although Murphy cites the affidavits of Walter Compton and William C. Long as proof that Mr. Bellu never worked for Odeco or Diamond or aboard their vessels, the affiants both admit a lack personal knowledge of what Bellu's employers and vessels, relying merely upon "information and belief" unspecified in nature, source, or content. (Notice of Removal, Compton Affidavit; Long Affidavit).

10.     Happily for the Plaintiffs, "[t]he burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one." *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981). The court summarized the standards for evaluating a claim of fraudulent joinder in *Dodson v. Spiliada Maritime Corp.*,  951 F.2d 40 (5th Cir. 1992):

> Where charges of fraudulent joinder are used to establish [federal] jurisdiction, the removing [party has the burden of proving the claimed fraud. . . . To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is no possibility that [plaintiffs] would be able to establish a cause of action against them in state court.  In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party.  We are then to determine whether that party has any possibility of recovery against the party whose joinder is questioned.

*Id.* at 42 (citations omitted).  Of course the court need not pre-try a case to determine its removal jurisdiction, but fraudulent joinder claims may be resolved by "piercing the pleadings" and considering summary judgment-type evidence. *Carriere v. Sears Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.), *cert. denied*, 498 U.S. 817 (1990).

11.     Although the parties may submit summary judgment type evidence, the district court "should ordinarily assume that all the facts alleged in a plaintiff's state court petition are true." *Ford v. Elsbury*, 32 F.3d 931, 938 (5th Cir. 1994). In *Green v, Amerada Hess Corp.*, 707 F.2d 201 (5th Cir. 1983), *cert. denied*, 464 U.S. 1039 (1984), the court stated that:

> [T]he court must ordinarily evaluate all of the factual allegations in the plaintiff's state court pleadings in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff. ... [T]he court must ordinarily assume all the facts as set forth by the plaintiff to be true.

*Id.* at 205. The facts set forth by the Plaintiffs compel remand of this action.

### Bellu's Pleading & Proof Show Valid Claims

12.   Here, Plaintiffs allege in their pleading that Mr. Bellu sustained injurious occupational exposures to asbestos while working as a ship's welder for all the defendants, including aliens Odeco and Diamond.  Moreover, he established by affidavit the authenticity of retained pay slips from Odeco, thereby establishing his employment with that alien entity.  Mr. Bellu also proved that he served aboard the vessel "Ocean Alliance," owned by Diamond.  As noted above, the "evidence" presented by Murphy via the Compton Affidavit and the Long Affidavit lacks a foundation in personal knowledge. Both are merely conclusory and devoid of probative value on Mr. Bellu's employment and the vessels upon which he served. The affidavit of Mr. Bellu, however, relies upon his recall of his own employment history, and is supported by payslips from Odeco and affiliates.

13.   The pleadings of the plaintiff and the evidence presented meets and exceeds the threshold requirement neatly spelled out in *Ford* because it "establishes that [the] plaintiffs have at least a 'possibility' of establishing a state court cause of action" against the diversity jurisdiction-destroying alien defendants. *Ford*, 32 F.3d at 938. This irrefutable showing establishes conclusively that there was no fraudulent joinder of the two alien defendants. To the contrary, it can be truthfully argued that there was a fraudulent removal, instead.

### Alien v. Alien = No Diversity Jurisdiction

14.   Murphy admits that both Odeco and Diamond are foreign companies (Notice of Removal, para. 13, 18) and are, therefore, not "citizens of a State" creating diversity of citizenship. All agree that the Plaintiffs are aliens, as well.  Because 28 U.S.C. 1332(a) —

the sole grounds urged for subject matter jurisdiction — provides no jurisdiction in cases where aliens sue aliens and the dispute is not between citizens of different States, the Court lacks subject matter jurisdiction. The removal was improvident and this action should be remanded to state court.

**Flawed Notice of Removal**

15.    Finally, the removal is improper because Murphy's Notice of Removal failed to comply with the precise requirements for a removal. Specifically, Murphy did not state or show in its Notice of Removal that complete diversity of citizenship existed between the parties (e.g., that it and its fellow, non-alien, defendant were not citizens of Louisiana) both when the plaintiffs filed the original petition and when Murphy removed the case to Federal Court. This it must do for the removal to stand. 14A C. Wright, A. Miller, & E. Cooper; FEDERAL PRACTICE & PROCEDURE. sec. 3723, and text supporting footnotes 15, 16. Because of Murphy's failure to declare in the Notice of Removal the citizenship of relevant defendants at both relevant times, this action must be remanded to state court.

16.    Because Odeco was indubitably one of Mr. Bellu's employers, because Diamond owned a vessel upon which Mr. Bellu served, and because Mr. Bellu alleges that he sustained injurious exposure to asbestos while in their service, he did properly join the aliens in his state court action in Louisiana. Neither defendant was "fraudulently joined." Because both Odeco Drilling (UK) Limited and Diamond Offshore Limited are foreign companies, i.e., aliens, there is no diversity of citizenship — therefore no subject matter jurisdiction — under 28 U.S.C. § 1332(a). Necessarily, the removal was improper. In addition the Notice of Removal is defective as shown above. Plaintiffs' motion to vacate the Conditional Transfer Order and to remand to state court should be granted.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray the Court grant their Motion to Vacate and to Remand this action to state court for lack of subject matter jurisdiction.

Respectfully submitted,



JOSEPH C. BLANKS, P.C.
Post Office Drawer 999
DOUCETTE, TEXAS 75942-0999
409-837-9707 FAX 409-837-9045
Texas Bar No. 02456770

_____
Joseph C. Blanks

LAW OFFICE OF HERSCHEL L. HOBSON
2190 Harrison Street
BEAUMONT, TEXAS 77701
409-838-6410 FAX 409-838-6084
Louisiana Bar No. 21244

_____
Randall D. Collins
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I served a true copy of the above on attorneys of record James Daigle & Robert Emmett at LEMLE KELLEHER, 601 Poydras St. — Suite 2100; New Orleans, LA 70130-6097, as counsel for all defendants, incl. Murphy Exploration & Production Co. on March 17, 2006, by first class mail, CRRR., and by telecopier the same date at 504-584-9142.

_____
Randall D. Collins/Joseph C. Blanks

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

CERTIFICATE OF SERVICE          MAR 31 2006

I served a true copy of the above upon The District Clerk for the Eastern District of

CLERK'S OFFICE

Louisiana, and a condensed copy upon the persons listed on the official "Panel Service

List" (Excerpted from CTO-0259) which list is attached hereto as required, as well as

upon all attorneys of record as identified on the previous page's certificate of service,

on March 28, 2006  by first class mail.

Joseph  C.  Blanks

**PANEL SERVICE LIST (Excerpted from CTO-259)**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

*Mario Bellu, et al. v. Diamond Offshore (USA), Inc., et al.,* E.D. Louisiana,
C.A. No. 2:06-608

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Joseph C. Blanks
Joseph C. Blanks, P.C.
P.O. Drawer 999
Doucette, TX 75942

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001

Randall D. Collins
Law Offices of Herschel L. Hobson
2190 Harrison Street
Beaumont, TX 77701

James H. Daigle
Lemle & Kelleher, L.L.P.
301 Main Street
Suite 1100
Baton Rouge, LA 70825

David A. Damico
Burns, White & Hickton, LLC
Four Northshore Center
106 Isabella St.
Pittsburgh, PA 15212

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106-2574

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Susan M. Hansen
Brownson & Ballou
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308-1314

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102

Ronald L. Motley
Motley Rice, LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29465

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
Roven, Kaplan & Wells, L.L.P.
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli, L.L.P.
Centre Square West
15th Floor
Philadelphia, PA 19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1570 Penobscot Building
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226

Andrew J. Trevelise
Reed Smith, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

James K. Weston II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 3 1 2006

FILED
CLERK'S OFFICE

## AFFIDAVIT OF MARIO BELLU

Before me the undersigned officer on this day appeared Mario Bellu, known to me, who on his oath deposed as follows:

"My name is Mario Bellu. I am the plaintiff in a lawsuit filed in Louisiana, now cause no. 06-0608, seeking money damages for my illness of mesothelioma. I am 60 years of age, have never been convicted of a felony or a crime of moral turpitude, and I am competent to make this affidavit. I have personal knowledge of the facts I set out below."

"Between 1969 and 1987 I worked primarily for Ocean Drilling and Exploration Company of New Orleans, or its affiliates. One of those was Ocean Drilling (UK) Limited."

"The attached Exhibit A is a collection of true copies of original payslips which I received during the course of my years of employment with various ODECO entities. The name upon the payslip would change as I was assigned to different drilling rigs wherever ODECO needed my expertise."

"During many of the years of my ODECO employment, the payslips had imprinted upon them the ODECO address in New Orleans. "

"During my career as an employee of ODECO and its affiliates, I worked aboard the "Ocean Alliance" where I endured the same sort of exposures to dust containing asbestos as I encountered on all the other ODECO drilling rigs/vessels."

"Further, affiant sayeth not."

*Mario Bellu*

MARIO BELLU

Sworn and subscribed before me, the undersigned authority, on this the 10th day of March, 2006 by Mario Bellu.

CpmccSSm          CHRISTINE P MCCOSSAN

NOTARY PUBLIC

## Statement 1

0073 ODECO DRILLING UK

**STATEMENT OF EARNINGS AND DEDUCTIONS**
**DETACH AND RETAIN FOR YOUR FILES**

No. 072131

CHECK NUMBER 072131

| PERIOD ENDING | | EMPLOYEE NUMBER | HOURS | | | EARNINGS | | | | TOTAL GROSS |
|---|---|---|---|---|---|---|---|---|---|---|
| DAY | MO | YR | | REGULAR | OVERTIME | TRAVEL | REGULAR | OVERTIME | OTHER | |
| 20 | 02 | 7 | 005992 | 24.0 | 36.0 | .0 | 105.12 | 262.80 | 46.75 | 414.67 |

| TAX DEDUCTIONS | | | NON-TAXABLE PAYMENT | |
|---|---|---|---|---|
| INCOME TAX | NAT INS | RETIREMENT | TRAVEL | OTHER |
| 85.55 | 37.32 | .00 | .00 | .00 |

| F I C A | | UNEMPLOYMENT | RETIREMENT | OTHER DEDUCTIONS |
|---|---|---|---|---|
| 0.00 | | .00 | .00 | |

211

| LOCATION CODE | GROSS EARNINGS | FICA | YEAR TO DATE | | NET PAY THIS PERIOD |
|---|---|---|---|---|---|
| | | | INCOME TAX | NAT INS | |
| 52047 | 5,331.22 | .00 | 1,298.30 | 427.40 | 291.80 |

MARIO BELLU
9 HUNTER AVE.
STONEHAVEN
KINCARDINESHIRE

## Statement 2

0073 ODECO DRILLING UK

**STATEMENT OF EARNINGS AND DEDUCTIONS**
**DETACH AND RETAIN FOR YOUR FILES**

No. 071027

CHECK NUMBER 071027

| PERIOD ENDING | | EMPLOYEE NUMBER | HOURS | | | EARNINGS | | | | TOTAL GROSS |
|---|---|---|---|---|---|---|---|---|---|---|
| DAY | MO | YR | | REGULAR | OVERTIME | TRAVEL | REGULAR | OVERTIME | OTHER | |
| 28 | 11 | 6 | 005992 | 35.0 | 40.0 | .0 | 153.30 | 289.08 | .00 | 442.38 |

| TAX DEDUCTIONS | | | NON-TAXABLE PAYMENT | |
|---|---|---|---|---|
| INCOME TAX | NAT INS | RETIREMENT | TRAVEL | OTHER |
| 102.05 | 39.81 | .00 | .00 | .00 |

221-16
WEEK.

| F I C A | | UNEMPLOYMENT | RETIREMENT | OTHER DEDUCTIONS |
|---|---|---|---|---|
| 0.00 | | .00 | .00 | |

211

| LOCATION CODE | GROSS EARNINGS | FICA | YEAR TO DATE | | NET PAY THIS PERIOD |
|---|---|---|---|---|---|
| | | | INCOME TAX | NAT INS | |
| 52047 | 1,975.38 | .00 | 525.00 | 140.78 | 300.52 |

MARIO BELLU
9 HUNTER AVE.
STONEHAVEN
KINCARDINESHIRE



PLAINTIFF'S
EXHIBIT

A

## ODECO DRILLING LMTD   No. 069989

CHECK NUMBER 069989

STATEMENT OF EARNINGS AND DEDUCTIONS
DETACH AND RETAIN FOR YOUR FILES

| PERIOD ENDING DAY | MO | YR | EMPLOYEE NUMBER | HOURS REGULAR | OVERTIME | TRAVEL | EARNINGS REGULAR | OVERTIME | OTHER | TOTAL GROSS |
|---|---|---|---|---|---|---|---|---|---|---|
| 08 | 08 | 6 | 002889 | 72.0 | 60.0 | .0 | 420.48 | 560.64 | .00 | 981.12 |

NON-TAXABLE PAYMENT
TRAVEL .00   OTHER .00

TAX DEDUCTIONS
| NAT INS | RETIREMENT | UNEMPLOYMENT | OTHER |
|---|---|---|---|
| 40.68 | .00 | .00 | |

OTHER DEDUCTIONS
RETIREMENT   19.62

211

| FICA | INCOME TAX | NAT INS | RETIREMENT | UNEMP | OTHER |
|---|---|---|---|---|---|
| 0.00 | 267.70 | 40.68 | | | |

YEAR TO DATE
| INCOME TAX | NAT INS |
|---|---|
| 2,969.80 | 386.16 |

MARIO BELLU
9 HUNTER AVENUE
STONEHAVEN
KINCARDIN

| LOCATION CODE | GROSS EARNINGS | FICA | INCOME TAX | NAT INS | RETIREMENT | UNEMP | OTHER | NET PAY THIS PERIOD |
|---|---|---|---|---|---|---|---|---|
| 22040 | 10,468.20 | .00 | 2,969.80 | 386.16 | .00 | | | 653.12 |

---

## 0073 ODECO DRILLING UK   No. 067129

CHECK NUMBER 067129

STATEMENT OF EARNINGS AND DEDUCTIONS
DETACH AND RETAIN FOR YOUR FILES

| PERIOD ENDING DAY | MO | YR | EMPLOYEE NUMBER | HOURS REGULAR | OVERTIME | TRAVEL | EARNINGS REGULAR | OVERTIME | OTHER | TOTAL GROSS |
|---|---|---|---|---|---|---|---|---|---|---|
| 21 | 03 | 6 | 002889 | 8.0 | 4.0 | 4.0 | 46.72 | 35.04 | 256.96 | 1838.72 |

NON-TAXABLE PAYMENT
TRAVEL .00   OTHER .00

TAX DEDUCTIONS
| NAT INS | RETIREMENT | UNEMPLOYMENT | OTHER |
|---|---|---|---|
| 24.73 | .00 | .00 | |

OTHER DEDUCTIONS
RETIREMENT   19.62

211

| FICA | INCOME TAX | NAT INS | RETIREMENT | UNEMP | OTHER |
|---|---|---|---|---|---|
| .00 | 58.50 | 24.73 | | | |

YEAR TO DATE
| INCOME TAX | NAT INS |
|---|---|
| 4,461.00 | 688.99 |

MARIO BELLU
9 HUNTER AVENUE
STONEHAVEN
KINCARDIN SHIRE

| LOCATION CODE | GROSS EARNINGS | FICA | INCOME TAX | NAT INS | RETIREMENT | UNEMP | OTHER | NET PAY THIS PERIOD |
|---|---|---|---|---|---|---|---|---|
| 52029 | 18,599.95 | .00 | 4,461.00 | 688.99 | .00 | | | 2351.87 |

**CANAM OFFSHORE LIMITED**
STATEMENT OF EARNINGS & DEDUCTIONS – DETACH AND RETAIN FOR YOUR FILES

No 732483

| PERIOD ENDING MO DAY YR | SOCIAL SECURITY NUMBER | EARNINGS REGULAR | OVERTIME | BOAT | OTHER | TOTAL GROSS |
|---|---|---|---|---|---|---|
| 4 4 75 | | 551.95 | | | | 551.95 |

OTHER DEDUCTIONS DETAIL

| | AMOUNT |
|---|---|
| Capital Loan | 185.00 |

HOURS: REGULAR / OVERTIME
OTHER DEDUCTIONS: RETIREMENT / GRP.INS. / LTD/ODI

FEDERAL TAX DEDUCTIONS: F.I.C.A. / INCOME TAX / THRIFT

| LOCATION CODE | YEAR TO DATE | | | | NET PAY THIS PERIOD |
|---|---|---|---|---|---|
| | GROSS EARNING | F.I.C.A. | FEDERAL INCOME 1 | 2 3 4 | 366.95 |

MARIO BELLU
370 PROVOST RUST DR
ABERDEEN   SCOTLAND

---

**CANAM OFFSHORE ~~~~~~ LTD**
STATEMENT OF EARNINGS AND DEDUCTIONS
DETACH AND RETAIN FOR YOUR FILES

No 070684

| PERIOD ENDING DAY MO YR | EMPLOYEE NUMBER | EARNINGS REGULAR | OVERTIME | OTHER | TOTAL GROSS |
|---|---|---|---|---|---|
| | 005955 | 144.96 | 425.82 | .00 | 570.78 |

NON-TAXABLE PAYMENT: TRAVEL .00   OTHER .00

OTHER DEDUCTIONS .00

| HOURS REGULAR | OVERTIME | TRAVEL |
|---|---|---|
| 24.0 | 43.0 | .0 |

TAX DEDUCTIONS

| | NAT.INS. | RETIREMENT | UNEMPLOYMENT |
|---|---|---|---|
| 51.30 | | .00 | .00 |

211

| F.I.C.A. | INCOME TAX |
|---|---|
| 0.00 | 130.75 |

MARIO BELLU
9 HUNTER AVENUE
STONEHAVEN
KINCARDESHIRE

From 27.9.86 to 31.10.86

YEAR TO DATE

| LOCATION CODE | GROSS EARNINGS | FICA | INCOME TAX | NAT.INS | UNEMP. | RETIREMENT | NET PAY THIS PERIOD |
|---|---|---|---|---|---|---|---|
| 62019 | 1,171.76 | .00 | 270.20 | 102.60 | | .00 | 388.73 |

STATEMENT OF EARNINGS AND DEDUCTIONS    No. 0J0100
DETACH AND RETAIN FOR YOUR FILES

0013 DRPTRDRPTRDSNSDRDR
CHECK NUMBER 050183

| PERIOD ENDING | EMPLOYEE NUMBER | HOURS | | | EARNINGS | | | TOTAL GROSS |
| | | REGULAR | OVERTIME | TRAVEL | REGULAR | OVERTIME | OTHER | |
| DAY MO YR | 002889 | 40.0 | 48.0 | 4.0 | 208.80 | 417.60 | 20.88 | 647.28 |
| 2 | | | | | | | | |

NON-TAXABLE PAYMENT
TRAVEL          OTHER
.00            .00

TAX DEDUCTIONS
| INCOME TAX | NAT INS | RETIREMENT | OTHER |
| 145.55 | 35.71 | .00 | .00 |

OTHER DEDUCTIONS
RETIREMENT      17.54

FICA
0.00

MARIO BELLU
9 HUNTER AVENUE
STONEHAVEN
KINCARDIN

211

1984

| LOCATION CODE | GROSS EARNINGS | FICA | YEAR TO DATE | | | | |
| | | | INCOME TAX | NAT INS | RETIREMENT | UNEMP | OTHER |
| 22029 | 9,637.43 | .00 | 2,381.55 | 452.51 | .00 | | |

NET PAY THIS PERIOD
448.48

---

STATEMENT OF EARNINGS AND DEDUCTIONS    No. 063890
DETACH AND RETAIN FOR YOUR FILES

DRPTRDRPTRDRPTRDRUK
CHECK NUMBER 063890

| PERIOD ENDING | EMPLOYEE NUMBER | HOURS | | | EARNINGS | | | TOTAL GROSS |
| | | REGULAR | OVERTIME | TRAVEL | REGULAR | OVERTIME | OTHER | |
| DAY MO YR | 002889 | 16.0 | 8.0 | 4.0 | 93.44 | 70.08 | 23.36 | 186.88 |

NON-TAXABLE PAYMENT
TRAVEL          OTHER
.00            .00

TAX DEDUCTIONS
| INCOME TAX | NAT INS | RETIREMENT | OTHER |
| 12.90 | 14.33 | .00 | .00 |

OTHER DEDUCTIONS
RETIREMENT      19.62

FICA
0.00

MARIO BELLU
9 HUNTER AVENUE
STONEHAVEN
KINCARDIN

1985      211

| LOCATION CODE | GROSS EARNINGS | FICA | YEAR TO DATE | | | | |
| | | | INCOME TAX | NAT INS | RETIREMENT | UNEMP | OTHER |
| 52029 | 12,219.75 | .00 | 2,891.10 | 456.26 | .00 | | |

NET PAY THIS PERIOD
140.03

## Statement 1

**STATEMENT OF EARNINGS AND DEDUCTIONS   No. 024613**
DETACH AND RETAIN FOR YOUR FILES

**CHECK NUMBER 024613**

| PERIOD ENDING | EMPLOYEE NUMBER | HOURS | | EARNINGS | | | |
|---|---|---|---|---|---|---|---|
| DAY MO YR | | REGULAR | OVERTIME | REGULAR | OVERTIME | OTHER | TOTAL GROSS |
| | 002889 | 14.0 | 28.0 | 71.40 | 244.80 | .00 | 316.20 |

| | TAX DEDUCTIONS | | NON-TAXABLE PAYMENT | |
|---|---|---|---|---|
| | | | TRAVEL | OTHER |
| INCOME TAX | NAT. INS. | RETIREMENT | .00 | .00 |
| 66.00 | 28.98 | .00 | | |

| | UNEMPLOYMENT | RETIREMENT | UNEMP | OTHER DEDUCTIONS |
|---|---|---|---|---|
| | .00 | .00 | .00 | |

RETIREMENT    00

MARIO BELLU
9 HUNTER AVENUE
STONEHAVEN
KINCARDIN

| | YEAR TO DATE | | | |
|---|---|---|---|---|
| FICA | INCOME TAX | NAT. INS. | | |
| 0.00 | 66.00 | 28.98 | | |

| LOCATION CODE | GROSS EARNINGS | FICA | INCOME TAX | |
|---|---|---|---|---|
| 22029 | 316.20 | .00 | | |

| NET PAY THIS PERIOD |
|---|
| 204.09 |

---

## Statement 2

**STATEMENT OF EARNINGS AND DEDUCTIONS   No. 049690**
DETACH AND RETAIN FOR YOUR FILES

**0073 ODE Co. DRILLING LNTD**
**CHECK NUMBER 049690**

| PERIOD ENDING | EMPLOYEE NUMBER | HOURS | | EARNINGS | | | |
|---|---|---|---|---|---|---|---|
| DAY MO YR | | REGULAR | OVERTIME | REGULAR | OVERTIME | OTHER | TOTAL GROSS |
| 07-09 | 002889 | 40.0 | 52.0 | 208.80 | 441.09 | .00 | 649.89 |

| | TAX DEDUCTIONS | | NON-TAXABLE PAYMENT | |
|---|---|---|---|---|
| | | | TRAVEL | OTHER |
| INCOME TAX | NAT. INS. | RETIREMENT | .00 | .00 |
| 146.35 | 35.71 | .00 | | |

| | UNEMPLOYMENT | RETIREMENT | UNEMP | OTHER DEDUCTIONS |
|---|---|---|---|---|
| | .00 | .00 | .00 | |

RETIREMENT    211

MARIO BELLU
9 HUNTER AVENUE
STONEHAVEN
KINCARDIN

| | YEAR TO DATE | | | |
|---|---|---|---|---|
| FICA | INCOME TAX | NAT. INS. | | |
| 0.00 | 2,236.00 | 416.80 | | |

| LOCATION CODE | GROSS EARNINGS | FICA | INCOME TAX | |
|---|---|---|---|---|
| 22029 | 8,990.15 | .00 | | |

| NET PAY THIS PERIOD |
|---|
| 450.29 |

## Statement 1

ODECO DRILLING LIMITED

STATEMENT OF EARNINGS AND DEDUCTIONS FOR YOUR FILES
DETACH AND RETAIN

No. 016591

| PERIOD ENDING | | EMPLOYEE NUMBER | HOURS | | | EARNINGS | | | | TOTAL GROSS |
|---|---|---|---|---|---|---|---|---|---|---|
| DAY | MO. | YR. | | REGULAR | OVERTIME | TRAVEL | REGULAR | OVERTIME | OTHER | |
| 23 | | | 000515 | .00 | .00 | .00 | 664.05 | .00 | .00 | 664.05 |

| | NON-TAXABLE PAYMENT | | |
|---|---|---|---|
| TRAVEL | OTHER | | |
| .00 | .00 | | .00 |

| | TAX DEDUCTIONS | | OTHER DEDUCTIONS |
|---|---|---|---|
| FICA | INCOME TAX | RETIREMENT | NAT. INS. |
| 0.00 | .00 | .00 | .00 |

THRIFT
21  RETIREMENT
U.K.TAX

25.00
6.64
40.00

MARIO BELLU
9 HUNTER AVENUE
STONEHAVEN KINCARDINESHIRE
SCOTLAND

| LOCATION CODE | GROSS EARNINGS | YEAR TO DATE | | | | NET PAY THIS PERIOD |
|---|---|---|---|---|---|---|
| | | FICA | INCOME TAX | RETIREMENT | UNEMP. | OTHER | |
| 21021 | 16,605.76 | .00 | .00 | .00 | .00 | .00 | 592.41 |

## Statement 2

ODECO DRILLING LIMITED

STATEMENT OF EARNINGS AND DEDUCTIONS FOR YOUR FILES
DETACH AND RETAIN

No. 016710

| PERIOD ENDING | | EMPLOYEE NUMBER | HOURS | | | EARNINGS | | | | TOTAL GROSS |
|---|---|---|---|---|---|---|---|---|---|---|
| DAY | MO. | YR. | | REGULAR | OVERTIME | TRAVEL | REGULAR | OVERTIME | OTHER | |
| | | | 000515 | .00 | .00 | .00 | 664.05 | .00 | .00 | 664.05 |

| | NON-TAXABLE PAYMENT | | |
|---|---|---|---|
| TRAVEL | OTHER | | |
| .00 | .00 | | .00 |

| | TAX DEDUCTIONS | | OTHER DEDUCTIONS |
|---|---|---|---|
| FICA | INCOME TAX | RETIREMENT | NAT. INS. |
| 0.00 | .00 | .00 | .00 |

THRIFT
21  RETIREMENT
U.K.TAX

25.00
6.64
40.00

MARIO BELLU
9 HUNTER AVENUE
STONEHAVEN KINCARDINESHIRE
SCOTLAND

| LOCATION CODE | GROSS EARNINGS | YEAR TO DATE | | | | NET PAY THIS PERIOD |
|---|---|---|---|---|---|---|
| | | FICA | INCOME TAX | RETIREMENT | UNEMP. | OTHER | |
| 21021 | 664.05 | .00 | .00 | .00 | .00 | .00 | 592.41 |



**OCEAN DRILLING & EXPLORATION COMPANY**
ODECO BUILDING · 1600 CANAL STREET
NEW ORLEANS, LOUISIANA 70112
STATEMENT OF EARNINGS & DEDUCTIONS—DETACH AND RETAIN FOR YOUR FILES

No. 251051

| PERIOD ENDING | SOCIAL SECURITY NUMBER | | HOURS | | | EARNINGS | | | |
|---|---|---|---|---|---|---|---|---|---|
| MO. | DAY | YR. | | REGULAR | OVERTIME | BOAT | REGULAR | OVERTIME | OTHER | TOTAL GROSS |
| 04 | 23 | 71 | 888 88 0004 | | | | | | | 419.32 |

| | | OTHER TAX DEDUCTIONS | | | OTHER DEDUCTIONS | |
|---|---|---|---|---|---|---|
| FEDERAL TAX DEDUCTIONS | | INCOME TAX | | | DETAIL | AMOUNT |
| F.I.C.A. | INCOME TAX | ST. UNEMP. | CITY INCOME | | | |

Vacation -- 22 days

| | Y E A R   T O   D A T E | | | | | | |
|---|---|---|---|---|---|---|---|
| LOCATION CODE | GROSS EARNINGS | F.I.C.A. | ST. UNEMP. | FEDERAL INCOME | STATE INCOME | COUNTY INC. | CITY INCOME |
| 00752 | | | | | | | |

| NET PAY THIS PERIOD |
|---|
| 419.32 |

---

**OCEAN DRILLING & EXPLORATION COMPANY**
ODECO BUILDING · 1600 CANAL STREET
NEW ORLEANS, LOUISIANA 70112
STATEMENT OF EARNINGS & DEDUCTIONS—DETACH AND RETAIN FOR YOUR FILES

No. 210171

| PERIOD ENDING | SOCIAL SECURITY NUMBER | | HOURS | | | EARNINGS | | | |
|---|---|---|---|---|---|---|---|---|---|
| MO. | DAY | YR. | | REGULAR | OVERTIME | BOAT | REGULAR | OVERTIME | OTHER | TOTAL GROSS |
| 04 | 23 | 71 | 888 88 0004 | 12.0 | | | 28.68 | | | 28.68 |

| | | OTHER TAX DEDUCTIONS | | | OTHER DEDUCTIONS | |
|---|---|---|---|---|---|---|
| FEDERAL TAX DEDUCTIONS | | INCOME TAX | | | DETAIL | AMOUNT |
| F.I.C.A. | INCOME TAX | ST. UNEMP. | CITY INCOME | | RETAINED BONUS | 23.07 |
| | | | | | GDI INSURANCE | 1.04 |
| | | | | | RETAINED BONUS | 23.07 |

| | Y E A R   T O   D A T E | | | | | | |
|---|---|---|---|---|---|---|---|
| LOCATION CODE | GROSS EARNINGS | F.I.C.A. | ST. UNEMP. | FEDERAL INCOME | STATE INCOME | COUNTY INC. | CITY INCOME |
| 752 | 2,419.97 | | | | | | |

| NET PAY THIS PERIOD |
|---|
| 27.64 |



ODECO DRILLING LIMITED
ODECO BLDG   1600 CANAL ST.   NEW ORLEANS, LOUISIANA 70112

MARIO BELLU
9 HUNTER AVENUE
STONEHAVEN
KINCARDINESHIRE
SCOTLAND

FOR A CHANGE OF ADDRESS USE ENCLOSED FORM BY REMOVING FRONT PART OF ENVELOPE.

RETAIN FOR YOUR RECORDS

NOT NEGOTIABLE

## Statement 1

No. 019084

STATEMENT OF EARNINGS AND DEDUCTIONS
DETACH AND RETAIN FOR YOUR FILES

CHECK NUMBER 019084

| PERIOD ENDING | EMPLOYEE NUMBER | HOURS | | | | EARNINGS | | | | |
| DAY | MO | YR | | REGULAR | OVERTIME | TRAVEL | REGULAR | OVERTIME | OTHER | TOTAL GROSS |
|---|---|---|---|---|---|---|---|---|---|---|
| 14 | | | 002889 | 14.0 | 4.0 | 4.0 | 63.70 | 27.30 | 18.20 | 189.20 |

| | TAX DEDUCTIONS | | | NON-TAXABLE PAYMENT | |
|---|---|---|---|---|---|
| INCOME TAX | FICA | NAT. INS | RETIREMENT | TRAVEL | OTHER |
| 76.05- | .00 | 22.35 | | | .00 |

| | YEAR TO DATE | | | OTHER DEDUCTIONS | |
|---|---|---|---|---|---|
| F.I.C.A. | INCOME TAX | NAT. INS | RETIREMENT | UNEMP. | OTHER |
| 0.00 | 1,506.10 | 223.50 | .00 | .00 | .00 |

RETIREMENT

00

15.29

MARIO BELLU
9 HUNTER AVENUE
STONEHAVEN
KINCARDIN

| LOCATION CODE | GROSS EARNINGS | | | | NET PAY THIS PERIOD |
|---|---|---|---|---|---|
| 22025 | 6,381.39 | | | | 147.61 |

## Statement 2

No. 006833

STATEMENT OF EARNINGS AND DEDUCTIONS
DETACH AND RETAIN FOR YOUR FILES

OCEAN DRILLING LIMITED

| PERIOD ENDING | EMPLOYEE NUMBER | HOURS | | | | EARNINGS | | | | |
| DAY | MO | YR | | REGULAR | OVERTIME | TRAVEL | REGULAR | OVERTIME | OTHER | TOTAL GROSS |
|---|---|---|---|---|---|---|---|---|---|---|
| | | 5 | 000515 | 78.0 | .0 | .0 | 551.95 | 53.92 | .00 | 605.87 |

| | TAX DEDUCTIONS | | | NON-TAXABLE PAYMENT | |
|---|---|---|---|---|---|
| INCOME TAX | FICA | NAT. INS | RETIREMENT | TRAVEL | OTHER |
| .00 | .00 | | | | .00 |

| | YEAR TO DATE | | | OTHER DEDUCTIONS | |
|---|---|---|---|---|---|
| F.I.C.A. | INCOME TAX | NAT. INS | RETIREMENT | UNEMP. | OTHER |
| 0.00 | .00 | .00 | .00 | .00 | .00 |

CAPITAL LOAN

05

185.00

MARIO BELLU
370 PROVOST RUST DRIVE
ABERDEEN
SCOTLAND

| LOCATION CODE | GROSS EARNINGS | | | | NET PAY THIS PERIOD |
|---|---|---|---|---|---|
| 21021 | 12,628.99 | | | | 420.87 |

# OCEAN DRILLING LIMITED

**No. 005044**

STATEMENT OF EARNINGS AND DEDUCTIONS
DETACH AND RETAIN FOR YOUR FILES

| PERIOD ENDING | | | EMPLOYEE NUMBER | HOURS | | | EARNINGS | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DAY | MO | YR | | REGULAR | OVERTIME | TRAVEL | REGULAR | OVERTIME | TRAVEL | OTHER | TOTAL GROSS |
| 05 | 09 | 2 | 000515 | 6.0 | .0 | .0 | 551.95 | .00 | | .00 | 551.95 |

| | TAX DEDUCTIONS | | | | NON-TAXABLE PAYMENT | | |
|---|---|---|---|---|---|---|---|
| FICA | INCOME TAX | NAT INS | UNEMPLOYMENT | RETIREMENT | OTHER | TRAVEL | OTHER |
| 0.00 | .00 | .00 | .00 | .00 | .00 | .00 | .00 |

NET PAY THIS PERIOD
**366.95**

OTHER DEDUCTIONS
CAPITAL LOAN   185.00

MARIO BELLU
370 PROVOST RUST DRIVE
ABERDEEN
SCOTLAND

| LOCATION CODE | GROSS EARNINGS | FICA | INCOME TAX | YEAR TO DATE | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | NAT INS | RETIREMENT | UNEMP | OTHER | |
| 21021 | 7,364.88 | .00 | .00 | .00 | .00 | .00 | .00 | |

---

# OCEAN DRILLING LIMITED

**No. 035590**

STATEMENT OF EARNINGS AND DEDUCTIONS
DETACH AND RETAIN FOR YOUR FILES

CHECK NUMBER 035590

| PERIOD ENDING | | | EMPLOYEE NUMBER | HOURS | | | EARNINGS | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DAY | MO | YR | | REGULAR | OVERTIME | TRAVEL | REGULAR | OVERTIME | TRAVEL | OTHER | TOTAL GROSS |
| 08 | 09 | 3 | 002889 | 14.0 | 4.0 | 4.0 | 71.40 | 30.60 | 4.20 | 20.40 | 122.40 |

| | TAX DEDUCTIONS | | | | NON-TAXABLE PAYMENT | | |
|---|---|---|---|---|---|---|---|
| FICA | INCOME TAX | NAT INS | UNEMPLOYMENT | RETIREMENT | OTHER | TRAVEL | OTHER |
| 0.00 | 4.20 | 9.78 | .00 | .00 | | .00 | .00 |

NET PAY THIS PERIOD
**91.29**

OTHER DEDUCTIONS
RETIREMENT   17.13

MARIO BELLU
9 HUNTER AVENUE
STONEHAVEN
KINCARDIN

| LOCATION CODE | GROSS EARNINGS | FICA | INCOME TAX | YEAR TO DATE | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | NAT INS | RETIREMENT | UNEMP | OTHER | |
| 22029 | 122.40 | .00 | 4.20 | 9.78 | .00 | | | |

## Statement 1

STATEMENT OF EARNINGS AND DEDUCTIONS
DETACH AND RETAIN FOR YOUR FILES

**No. 068207**

PERIOD ENDING EMPLOYEE NUMBER

| DAY | MO | YR | EMPLOYEE NUMBER |
|-----|----|----|----|
| | | | 002889 |

| | HOURS | | | | EARNINGS | | | | TOTAL GROSS |
|---|---|---|---|---|---|---|---|---|---|
| REGULAR | OVERTIME | TRAVEL | | REGULAR | OVERTIME | OTHER | | | |
| 64.0 | 92.0 | .0 | | 373.76 | 911.04 | .00 | | | 1,284.80 |

| | TAX DEDUCTIONS | | | NON-TAXABLE PAYMENT | |
|---|---|---|---|---|---|
| INCOME TAX | NAT INS | RETIREMENT | UNEMPLOYMENT | TRAVEL | OTHER |
| 443.35 | 40.68 | .00 | .00 | | .00 |

| F.I.C.A. | | | | OTHER DEDUCTIONS |
|---|---|---|---|---|
| 0.00 | | | | |

RETIREMENT  211

19.62

| LOCATION CODE | GROSS EARNINGS | FICA | INCOME TAX | NAT INS | NET PAY THIS PERIOD |
|---|---|---|---|---|---|
| 52029 | 3,594.52 | .00 | 1,162.00 | 122.04 | 781.15 |

MARIO BELLU
9 HUNTER AVENUE
STONEHAVEN
KINCARDIN

## Statement 2

STATEMENT OF EARNINGS AND DEDUCTIONS
DETACH AND RETAIN FOR YOUR FILES

**No. 070603**

PERIOD ENDING EMPLOYEE NUMBER

| DAY | MO | YR | EMPLOYEE NUMBER |
|-----|----|----|----|
| 03 | 10 | 6 | 005955 |

| | HOURS | | | | EARNINGS | | | | TOTAL GROSS |
|---|---|---|---|---|---|---|---|---|---|
| REGULAR | OVERTIME | TRAVEL | | REGULAR | OVERTIME | OTHER | | | |
| 32.0 | 41.0 | .0 | | 193.28 | 407.70 | .00 | | | 600.98 |

| | TAX DEDUCTIONS | | | NON-TAXABLE PAYMENT | |
|---|---|---|---|---|---|
| INCOME TAX | NAT INS | RETIREMENT | UNEMPLOYMENT | TRAVEL | OTHER |
| 139.45 | 51.30 | .00 | .00 | | .00 |

| F.I.C.A. | | | | OTHER DEDUCTIONS |
|---|---|---|---|---|
| 0.00 | | | | |

211

| LOCATION CODE | GROSS EARNINGS | FICA | INCOME TAX | NAT INS | NET PAY THIS PERIOD |
|---|---|---|---|---|---|
| 62019 | 600.98 | .00 | 139.45 | 51.30 | 410.23 |

MARIO BELLU
9 HUNTER AVENUE
STONEHAVEN
KINCARDSHIRE

## Statement 1

**0073 ODECO DRILLING LMTD**
**CHECK NUMBER 068936**

**STATEMENT OF EARNINGS AND DEDUCTIONS**
**DETACH AND RETAIN FOR YOUR FILES**

**No. 068930**

| PERIOD ENDING | | EMPLOYEE NUMBER | HOURS | | | EARNINGS | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| DAY | MO | YR | | REGULAR | OVERTIME | TRAVEL | REGULAR | OVERTIME | OTHER | TOTAL GROSS |
| 13 | 06 | 6 | 002889 | 72.0 | 84.0 | .0 | 420.48 | 805.92 | .00 | 1,226.40 |

| | TAX DEDUCTIONS | | | | | | | NON-TAXABLE PAYMENT | | |
|---|---|---|---|---|---|---|---|---|---|---|
| FICA | INCOME TAX | NAT INS | RETIREMENT | UNEMPLOYMENT | UNEMP. | OTHER | | TRAVEL | OTHER | |
| 40.68 | 377.55 | | .00 | .00 | | | | .00 | .00 | |

RETIREMENT           211

OTHER DEDUCTIONS           19.62

| LOCATION CODE | GROSS EARNINGS | FICA | INCOME TAX | NAT INS | RETIREMENT | OTHER | THE PAY THIS PERIOD |
|---|---|---|---|---|---|---|---|
| 22040 | 6,397.72 | 0.00 | 1,834.10 | 223.44 | .00 | | 788.55 |

MARIO BELLU
9 HUNTER AVENUE
STONEHAVEN
KINCARDIN

## Statement 2

**ODECO DRILLING LTD**
**CHECK NUMBER 070899**

**STATEMENT OF EARNINGS AND DEDUCTIONS**
**DETACH AND RETAIN FOR YOUR FILES**

**No. 070899**

| PERIOD ENDING | | EMPLOYEE NUMBER | HOURS | | | EARNINGS | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| DAY | MO | YR | | REGULAR | OVERTIME | TRAVEL | REGULAR | OVERTIME | OTHER | TOTAL GROSS |
| | | | 005992 | 80.0 | 88.0 | .0 | 350.40 | 630.72 | .00 | 981.12 |

| | TAX DEDUCTIONS | | | | | | | NON-TAXABLE PAYMENT | | |
|---|---|---|---|---|---|---|---|---|---|---|
| FICA | INCOME TAX | NAT INS | RETIREMENT | UNEMPLOYMENT | UNEMP. | OTHER | | TRAVEL | OTHER | |
| 51.30 | 289.30 | | .00 | .00 | | | | .00 | .00 | |

211

| LOCATION CODE | GROSS EARNINGS | FICA | INCOME TAX | NAT INS | RETIREMENT | OTHER | THE PAY THIS PERIOD |
|---|---|---|---|---|---|---|---|
| 52047 | 1,533.00 | 0.00 | 422.95 | 100.97 | .00 | | 640.52 |

MARIO BELLU
9 HUNTER AVE.
STONEHAVEN
KINCARDINESHIRE

## No. 069649

**0073 ODECO DRILLING UK**
**CHECK NUMBER 069649**

STATEMENT OF EARNINGS AND DEDUCTIONS
DETACH AND RETAIN FOR YOUR FILES

| PERIOD ENDING | | | EMPLOYEE NUMBER | HOURS | | | EARNINGS | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DAY | MO | YR | | REGULAR | OVERTIME | TRAVEL | REGULAR | OVERTIME | OTHER | | TOTAL GROSS |
| 11 | 07 | 6 | 002889 | 80.0 | 88.0 | .0 | 467.20 | 840.96 | .00 | | 1,308.16 |

| | | TAX DEDUCTIONS | | | | NON-TAXABLE PAYMENT | | |
|---|---|---|---|---|---|---|---|---|
| INCOME TAX | NAT INS | RETIREMENT | UNEMPLOYMENT | OTHER | | TRAVEL | OTHER | |
| 414.45 | 40.68 | .00 | | .00 | | .00 | .00 | |

| F.I.C.A. | | | | | | OTHER DEDUCTIONS |
|---|---|---|---|---|---|---|
| 0.00 | | | | | | 19.62 |

RETIREMENT       211

| LOCATION CODE | GROSS EARNINGS | FICA | YEAR TO DATE | | | | NET PAY THIS PERIOD |
|---|---|---|---|---|---|---|---|
| | | | INCOME TAX | NAT INS | RETIREMENT | UNEMP | OTHER | |
| 52025 | 8,470.92 | .00 | 2,419.05 | 304.80 | .00 | | 833.41 |

MARIO BELLU
9 HUNTER AVENUE
STONEHAVEN
KINCARDIN

---

## No. 069371

**0073 ODECO DRILLING UK**
**CHECK NUMBER 069371**

STATEMENT OF EARNINGS AND DEDUCTIONS
DETACH AND RETAIN FOR YOUR FILES

| PERIOD ENDING | | | EMPLOYEE NUMBER | HOURS | | | EARNINGS | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DAY | MO | YR | | REGULAR | OVERTIME | TRAVEL | REGULAR | OVERTIME | OTHER | | TOTAL GROSS |
| 27 | 06 | 6 | 002889 | 40.0 | 52.0 | 4.0 | 233.60 | 508.08 | 23.36 | | 765.04 |

| | | TAX DEDUCTIONS | | | | NON-TAXABLE PAYMENT | | |
|---|---|---|---|---|---|---|---|---|
| INCOME TAX | NAT INS | RETIREMENT | UNEMPLOYMENT | OTHER | | TRAVEL | OTHER | |
| 170.50 | 40.68 | .00 | | .00 | | .00 | .00 | |

| F.I.C.A. | | | | | | OTHER DEDUCTIONS |
|---|---|---|---|---|---|---|
| 0.00 | | | | | | 19.62 |

RETIREMENT       211

| LOCATION CODE | GROSS EARNINGS | FICA | YEAR TO DATE | | | | NET PAY THIS PERIOD |
|---|---|---|---|---|---|---|---|
| | | | INCOME TAX | NAT INS | RETIREMENT | UNEMP | OTHER | |
| 52025 | 7,162.76 | .00 | 2,004.60 | 264.12 | .00 | | 534.24 |

MARIO BELLU
9 HUNTER AVENUE
STONEHAVEN
KINCARDIN

g the right to insist on a division an[d]
that "While what happens in th[e]
y influence the attitude of bot[h]
disposal of the matrimonial hom[e]
cannot in my view deny to t[he]
pursue this action now."

s sought to found on the decisi[on]
v Rae, where it was held that
[l]d sale in the sheriff court sho[uld]
the resolution of an action
of Session. In that case, howe[ver]
married and the defender se[..]
e action an order for transfer
matrimonial home. The adv[..]
whole dispute on property c[..]
[f]or divorce had been recognis[ed]
rt and the Court of Session [..]
ere the motion for sist had b[een]
considered that he was bound[..]
ry. In the Court of Session th[e]
hed in respect of the on[..]
y the defender was seeking
property of the matrim[..]
se there was no alternati[ve]
tly available to the wife [..]
in occupation of the ma[..]
of Rae was also different [..]
ect that the motion in R[..]
the granting of decree und[..]
of the Matrimonial Ho[mes]
land) Act 1981 wherea[s]
e at common law for a [..]
e distinct from the pre[sent]
has passed and no quest[ion]
ncial provisions on div[orce]
the pursuer has an abso[lute]
. While he was prevent[ed]
for the five years fro[m..]
period has expired an[d..]

Counsel for the d[ef..]
dicis to have regard[..]
uffer on a division of[..]
n to us for the sugg[..]
division and sale is su[..]
the extent that the[..]
sheriff were in them[..]
we find no ground[..]
the conclusion whic[h]
ed.

d Respondent, [..]
(for Cochran, D[..]
nsel for Defend[..]
, Shepherd & W[..]
urray, Greenock)[..]

# Bruce v Ben Odeco Ltd

FIRST DIVISION

THE LORD PRESIDENT (HOPE),
LORDS CLYDE AND MILLIGAN

7 MAY 1996

*Reparation — Negligence — Breach of statutory duty — Offshore installation to be "so maintained as to ensure" its safety and safety of persons — Slippery substance accumulated on floor — Whether premises "maintained" in dilate condition — Offshore Installations (Operational Safety, Health and Welfare) Regulations 1976 (SI 1976/1019), reg 5 (1).*

Regulation 5 (1) of the Offshore Installations (Operational Safety, Health and Welfare) Regulations 1976 provides that: "All parts of every offshore installation and its equipment shall be so maintained as to ensure the safety of the installation and the safety and health of the persons thereon."

A mechanic, employed on a drilling rig in the North Sea, was injured in the course of his employment. While walking from a boiler room to a spare parts department on the offshore installation, his foot slipped on the metal surface of the floor, on which there was a slippery substance similar to dieselene or grease. He raised an action of damages against his employers, one of the bases of the action being a breach of reg 5 (1). The defenders argued that reg 5 was irrelevant where the cause of the accident was a substance on the surface of the installation, but not a defect in the installation itself, which argument was dismissed by the sheriff. The defenders appealed to the Court of Session.

**Held**, (1) that the obligation of maintenance in reg 5(1), which imposed an absolute duty, was directed to the structural integrity of the installation, which had to be kept in a proper state of repair (pp 1317F, 1318B-C and 1318K-L); (2) that as the pursuer's averments were that the accident was caused by the presence on the floor of a slippery substance which was a transient condition which was not due in any way to a lack of maintenance of the structure of the floor, his averments were insufficient to found breach of reg 5 (1) (pp 1317H-J, 1318E-F and 1318H-I); and appeal *allowed*.

*Breslin v Britoil plc*, 1992 SLT 414, *overruled in part*.

**Action of damages**

John Bruce raised an action in the sheriff court at Aberdeen against his employers Ben Odeco Ltd, claiming damages in respect of personal injuries sustained by him in the course of his employment. He raised his action upon breaches of regs 5 (1) and 14 of the Offshore Installations (Operational Safety, Health and Welfare) Regulations 1976.

The case came for debate before the sheriff

(C M A F Gimblett) on the defenders' preliminary plea in law directed to the applicability of reg 5 (1).

**Statutory provisions**

The Offshore Installations (Operational Safety, Health and Welfare) Regulations 1976 provide:

"5.—(1) All parts of every offshore installation and its equipment shall be so maintained as to ensure the safety of the installation and the safety and health of the persons thereon."

**Cases referred to**

*Breslin v Britoil plc*, 1992 SLT 414.
*Hamilton v National Coal Board*, 1960 SC (HL) 1; 1960 SLT 24.
*Latimer v AEC Ltd* [1953] AC 643; [1953] 3 WLR 259; [1953] 2 All ER 449.
*O'Neill v Brown* [1961] 1 QB 420; [1961] 2 WLR 224; [1961] 1 All ER 571.
*Ross v Duncan*, 1959 SLT (Notes) 14.
*Smith v Cammell Laird & Co* [1940] AC 242.

The sheriff *repelled* the defenders' plea and *allowed* a proof. The defenders appealed to the Court of Session.

**Appeal**

The appeal was heard before the First Division on 2 May 1996.

On 17 May 1996 the court *allowed* the appeal and *excluded* the relative averments from probation.

**THE LORD PRESIDENT (HOPE).**—The pursuer seeks damages from the defenders as reparation for an injury which he claims to have sustained when he was employed as a mechanic on the defenders' drilling rig Ocean Alliance when it was situated within the Scottish area of the North Sea. The rig was an offshore installation in terms of the Mineral Workings (Offshore Installations) Act 1971. It was also a fixed installation for the purposes of the Offshore Installations (Operational Safety, Health and Welfare) Regulations 1976, which apply to any offshore installation, not being a dredging installation registered as a vessel, which is maintained in controlled waters for the carrying on of any activity to which the Act applies. He claims that while he was walking from the boiler room of the installation to the spare parts department in the engine room his foot slipped on the metal surface of the floor, on which there was a slippery substance similar to dieselene or grease. Article 3 of the condescendence contains this averment: "The pursuer believes and avers that said slippery substance had been spilt when work was being carried out to the boilers in the boiler room, and had been carried to the area of the door between the boiler room and spare parts department on the boots of those who had been working at the boiler."

Although the pursuer states in his first plea in law that he sustained loss, injury and damage as a result of the fault and negligence et separatim breach of statu-

PLAINTIFF'S EXHIBIT
B

tory duty of the defenders, there is no case of fault at
common law. The action is laid entirely on the basis of
breaches of statutory duty. Two such breaches are
alleged. The first is a breach of reg 5 (1) of the 1976
Regulations, which is concerned with general main-
tenance. The second is a breach of reg 14, which is
concerned with general safety and imposes a duty on
the owner of the rig at all times to take all reasonably
practicable steps to ensure the safety of persons at all
places on the installation. Regulation 5 (1) is in these
terms: (his Lordship quoted the terms of reg 5 (1)
and continued:)

The defenders, who admit that the pursuer fell
while passing through a door in the engine room but
deny liability for the accident, have a general plea to
the relevancy. When the case came before the sheriff
for debate the argument was directed only to the
pursuer's case under reg 5 (1) of the 1976 Regu-
lations. The defenders were content that the case
which was made under reg 14 should go to proof. The
sheriff was attracted by the defenders' argument that
the case under reg 5 (1) was irrelevant. But, in the
light of the decision in *Breslin v Bristol plc*, she felt that
she had no option but to find in the pursuer's favour.
She repelled the defenders' plea to the relevancy and
allowed parties a proof of their averments. The
defenders have now appealed against that decision,
on the ground that the sheriff erred in law in failing to
sustain their plea to the relevancy of the averments in
regard to reg 5 (1), and that in any event she should
have reserved the plea to the relevancy and allowed a
proof before answer.

Counsel for the defenders accepted that reg 5 (1)
imposed an absolute duty to maintain the structure of
the installation. But he submitted that that duty did
not extend to removing from the floor deposits of a
transient nature, such as the substance which the
pursuer avers caused him to slip when he sustained
his accident. This was because such deposits were not
part of the structure of the installation. The duty was
to maintain the installation and its equipment, not to
keep them free of substances which did not affect the
structural safety of the installation or the operation of
its equipment. He submitted that the regulations
should be read as a whole, and that it was clear that the
regulation which applied to the facts as averred by the
pursuer in this case was reg 14, the opening words of
which state that the duty imposed by it, requiring all
reasonably practicable steps to be taken to this effect,
extends to the provision of safe means of access to and
egress from any place on the installation. That was
the appropriate regulation where substances likely
to cause people to slip were in issue, the presence of
which on the surface of the structure might be
transitory and not easy to predict.

For the pursuer, counsel's argument was that reg 5
(1) was concerned with safety, including the health
and safety of all persons on the installation. While
some parts of reg 5 clearly related only to the equip-
ment, reg 5 (1) was wide enough, since it extended to

all parts of the installation, to include the floor. The
obligation was so to maintain the floor as to ensure the
safety and health of all the persons thereon. There was
admittedly some overlap between reg 5 (1) and reg
14. But that was only to be expected, and it did not
detract from the generality of reg 5 (1) which should
be interpreted according to its terms. The purpose
which was sought to be achieved was clearly stated by
it, and even although the presence of the substance on
the floor might be transitory it was sufficient for there
to be a breach of reg 5 (1) that it was there and that it
affected the safety and health of persons on the instal-
lation.

In *Breslin v Bristol* the pursuer sustained injury
when he fell from a ladder on an oil rig platform. The
accident was held to have been caused by a mixture of
mud and oil adhering to the surface of his boots. This
made them slippery when they were in contact with
the smooth rungs of the ladder. This mixture of oil
and mud had dropped down from the wellhead area
above the walkways on the deck, and it had been
carried from there on the boots of the workmen. Lord
MacLean held that the pursuer's common law case
against the defenders was established, and that they
were also in breach of reg 14 of the 1976 Regulations.
But he also held that, by allowing the deck to be in the
condition it was, the defenders had failed to keep it in
a condition that ensured the safety of those working
on the installation and that for this reason they were in
breach also of reg 5 (1). He was of opinion that the
word "maintained" in the context of reg 5 (1) meant
simply "kept", and that because the deck was not kept
in a safe condition the defenders had failed so to
maintain it as to ensure the safety of the persons
thereon. It was this decision which persuaded the
sheriff that the defenders' plea to the relevancy in the
present case should be repelled.

There is no difficulty in accepting that reg 5 (1)
imposes an absolute duty. This point was, as I have
said, conceded by counsel for the defenders. Ample
support for this is to be found in *Smith v Cammell
Laird & Co* and *Hamilton v National Coal Board*. As
Viscount Simonds pointed out at 1960 SC (HL), p 6;
1960 SLT, p 25, in *Hamilton v National Coal Board*,
this is a construction which has been put upon the
word "maintain" in the context of machinery and
works of all kinds under the Factories Acts and the
Mines and Quarries Act and regulations made under
them. The point which requires further examination
is what is required by the word "maintain" in the
context of this regulation. There is no definition of the
word in the regulations, so its meaning must be found
by giving the word its ordinary meaning in its context.
It is not enough to discover the ordinary meaning of
the word to substitute the synonym "keep", which is
simply another way of stating the absolute nature of
the obligation.

Some assistance as to what is meant by the word
"maintain" is to be found in *Latimer v AEC Ltd*,
which does not appear to have been cited to Lord

Mac
diff s.
havin
mixt
whet
been
defei
have
negli
brea
prov:
ways
main

It v
duty,
not b
was i
wet a

M:
was i
word
[195:
it not
provi
repai
doub
floor
him t
It is v
no dc
*Ltd*, s
the w
be ke
stanc
in its
Facte
same
all flo
same
keep
subst
of thi
first,
mean
of sul
secon
free o
the er

In r
in reg
graph
lation
to ent
and h
maint
the ir
which
deper
reg 5.
in for

MacLean in *Breslin v Britoil Ltd*. In that case the plaintiff slipped on a floor and injured his ankle, the floor having become slippery due to the presence of a mixture of water and oil which had got on to the floor when it flooded during a rain storm and had not been treated with sawdust. It was held that, as the defenders had done all a reasonable employer could have been expected to do, there was no common law negligence. The issue was whether they were in breach of s 25 (1) of the Factories Act 1937 which provided: "All floors, steps, stairs, passages and gangways shall be of sound construction and properly maintained."

It was held that there was no breach of this statutory duty, since the floor was structurally sound and could not be said not to be properly maintained because it was in a transient and exceptional condition of being wet and oily.

Much of the discussion in the speeches in that case was taken up with the effect of the definition of the word "maintained" in s 152 (1) of the 1937 Act. At [1953] AC, p 653 however Lord Porter said that, were it not for the definition, s 25 would seem merely to provide for sound construction and a proper state of repair. At p 656 Lord Reid said that, while s 25 was no doubt dealing with safety, keeping the surface of a floor free from dangerous material did not appear to him to come within the scope of maintaining the floor. It is worth noting that by s 4 of the Factories Act 1959, no doubt in the light of the decision in *Latimer v AEC Ltd*, s 25 (1) of the 1937 Act was amended by adding the words "and shall, so far as reasonably practicable, be kept free from any obstruction and from any substance likely to cause persons to slip". Section 25 (1) in its amended form was re-enacted in s 28 (1) of the Factories Act 1961. That subsection contains the same absolute obligation of maintenance in regard to all floors, steps, stairs, passages and gangways and the same obligation, so far as reasonably practicable, to keep them free from any obstruction and from any substance likely to cause persons to slip. The wording of this provision implies a recognition by Parliament, first, that the word "maintain" in its ordinary meaning does not extend to keeping the surface clear of substances which may cause people to slip and, secondly, that as regards keeping the surface of a floor free of such substances it is inappropriate to subject the employer to an absolute obligation.

In my opinion the context in which the word is used in reg 5 (1) supports this approach. What this paragraph in reg 5 (1) requires is that all parts of the installation and its equipment shall be "so maintained" as to ensure the safety of the installation and the safety and health of the persons thereon. The obligation of maintenance appears to be directed to the structure of the installation, that is to its structural safety upon which the safety and health of the persons thereon depends. Then there are the following paragraphs of reg 5. These paragraphs require there to be at all times in force a scheme providing for the systematic exami-

nation, maintenance and, where appropriate, testing of all parts of the installation and its equipment. This is to be carried out by, or under the supervision of, a responsible person. Provision is made for the content of the scheme and the way in which it is to be carried out. The expression "responsible person" is defined in reg 1 as meaning, in relation to any structure or equipment, the relevant competent person appointed under reg 30 (1) to be responsible for the particular thing. Regulation 30 (1), so far as relevant to a scheme under reg 5, provides for the appointment of a competent person by the installation manager, to be responsible for the control and safety of the structure of the installation and its electrical and mechanical equipment. These provisions provide a further indication that it is the structure of the installation which is to be maintained in the exercise of the absolute duty by keeping the structure in a proper state of repair.

It is clear from the pursuer's averments that his case is that his accident was caused, not by some defect in the structure of the floor, but by the presence on the surface of it of the slippery substance which had been spilt in the boiler room and carried to the area of the door between the boiler room and the spare parts department on the boots of persons who had been working in the boiler room. There is no averment about the length of time for which the floor had been in this condition. But it is clear that this was a transient condition which was not due in any way to a lack of maintenance of the structure of the floor. For these reasons I do not think that these averments, if proved, are sufficient to establish that the defenders were in breach of reg 5 (1) of the 1976 Regulations. Insofar as *Breslin v Britoil plc* suggests the contrary, I would hold that it was wrongly decided on this point.

I would allow this appeal by recalling the sheriff's interlocutor and sustaining the defenders' first plea in law, to the extent of excluding from probation the pursuer's averments in art 4 of the condescendence. Quoad ultra I would allow the pursuer a proof of his averments.

**LORD CLYDE.**—The pursuer in this action for damages bases his case on alleged breaches of reg 5 (1) and reg 14 of the Offshore Installations (Operational Safety, Health and Welfare) Regulations 1976. No challenge is made to the relevancy of his averments in relation to the case made under reg 14. In relation to reg 5 (1) the critical averment in his pleadings is that "The said area of floor where the pursuer fell was not maintained in a safe condition, in that a slippery substance had been allowed to accumulate there as hereinbefore condescended upon."

The pursuer makes no averments about the length of time over which the substance had accumulated or remained on the floor but no argument was presented to us in that connection. The question raised in the appeal is whether the substance of the obligation to "maintain" in reg 5 (1) is one of preserving the struc-

1318                    BRUCE v BEN ODECO LTD (1st Div)                    1996

A  tural integrity of the installation or whether it extends further to the keeping of the parts and equipment in every respect safe for the people on the installation. The former view is in line with the approach taken in the case of *Latimer v AEC Ltd*. The latter view has the direct support of the Lord Ordinary in the case of *Breslin v Britoil*.

The word "maintain" is open to construction and must be interpreted in its context. Its ambiguity was noted in *Hamilton v NCB* by Lord Keith at 1960 SC (HL), p 12; 1960 SLT, p 28, and the differences in
B  meaning and effect are illustrated by the case of *Ross v Duncan*. In the present case the intended purpose and effect of the obligation is "to ensure the safety of the installation and the safety and health of the persons thereon". The former reference seems to me to refer to the structural integrity of the installation and while it is possible to construe the reference to the safety and health of the persons on it as independent of matters of structural integrity, the natural force in my
C  view is to the danger to persons on account of some structural defect. That the regulation is concerned with matters of structural integrity seems to me to be borne out by a consideration of its subparagraphs. While the schedule required by reg 5 (2) for the "systematic examination, maintenance and, where appropriate, testing" of the installation and its equipment could at least to some extent be read as including the cleaning of floors, it reads more easily as relating to matters of structural safety. Further it seems to me of significance that the responsible
D  person charged under reg 5 (3) to carry out or supervise the maintenance, examination and testing of any part of the installation and its equipment is defined by reg 1 (2) as meaning "the relevant competent person appointed under regulation 30 (1) below to be responsible for the particular activity or thing", and the only relevant part of the definition in reg 30 (1) refers to a competent person to be responsible for the control and safety of "the structure of the installa-
E  tion". The later subparagraphs of reg 5 are concerned substantially with equipment rather than with parts of the installation but appear also to be concerned with matters of repair and performance.

Within the context of reg 5 it seems to me that the obligation of maintenance does not extend to the preventing of danger caused by material which has at some unknown time been deposited on a floor and which does not form part of the floor. In my view that risk is adequately covered by reg 14, on which the
F  pursuer also founds and the relevance of which is not in dispute. It is accepted that the obligation under reg 5 for the purpose of a civil claim is absolute and it seems to me unlikely that the intention could have been that an absolute civil liability should arise as soon as anything landed on a floor or walkway of the installation causing the surface to be slippery and dangerous. Regulation 14 on the other hand is qualified by considerations of reasonable practicability and provides a sufficient protection for those on the installation against risks of the general kind alleged in the

present case. Furthermore, even although the crimi-
G  nal liability is not absolute by reason of reg 34 (4), the consideration that a breach of reg 5 can have penal consequences provides further ground for limiting its scope.

In the case of *Breslin v Britoil* the Lord Ordinary had already held the defenders liable at common law before he turned to consider the statutory cases. It does not appear that the case of *Latimer* was put before him, and the one case to which reference is
H  made, *O'Neill v Brown*, does not seem to me to be of material assistance. While the point has no effect on the result reached in the case I am persuaded that the view that "maintained" simply means "kept" was incorrect in the context of reg 5 (1).

On the whole matter I agree with the course proposed by your Lordship in the chair.

**LORD MILLIGAN.**—I agree with the opinion of your Lordship in the chair. Had the pursuer sustained
I  the accident which he alleges in a factory onshore, the extent of his employer's liability would be, in terms of s 28 (1) of the Factories Act 1961, to have kept the floor concerned "so far as is reasonably practicable . . . free from any obstruction and from any substance likely to cause persons to slip". Your Lordship in the chair has already dealt with the background to this legislation. In terms of the same s 28 (1) of the 1961 Act, in the event of an accident caused by a defect in the floor itself, such as a hole, the liability would be
J  absolute without requirement to show reasonable practicability of prevention. The practical effect of the submission for the respondent in this appeal is that, in terms of the Offshore Installations (Operational Safety, Health and Welfare) Regulations 1976, reg 5, the distinction between a structural defect of, and a spillage on, a floor so far as absolute liability is concerned in the case of a factory onshore does not apply in the case of an offshore installation. Counsel for the pursuer submitted that the explanation for this was
K  that Parliament wished to recognise the greater hazards of working on offshore installations and, accordingly, had deliberately made the onshore/offshore distinction suggested. I do not accept this submission because, in my view, had Parliament wished to so provide, reg 5 could have been worded to make this clear. Far from this being the case, it seems to me clear that reg 5 is designed to impose no greater liability on employers in the case of flooring concerned than was provided for in s 25 (1) of the
L  Factories Act 1937, as originally enacted, namely that "all floors, steps, stairs, passages and gangways shall be of sound construction and properly maintained". It may be that hazards peculiar to working offshore may be relevant in application of the wide general protection afforded by reg 14 of the 1976 Regulations but that is another matter. The protection afforded by reg 14 is not in issue in this appeal but the terms of that regulation do appear to provide an appropriate remedy if spillage of slippery material is permitted to remain on floors on which workmen require to walk

where
would b

*Coun*
*Solicitor*
*Fraser,*
*(Respon*
*& Willi*

**Bar**
**Rig**

EXTR
C LORE
JOHN
24 MA

*Success*
*solicitor*
*visions*
*testame*

A te
various
Short
solicit
1983,
additio
the re
niary
enclos
incluc
Deatl
referм
to un
adopt
for he
had b
resid:
Cot I
Hous
these
ficia
1991
solici

He
print
inten
treat
docu
the p
looki
close

*[left column — fragments of adjacent report]*

lthough the crim-
a of reg 34 (4), the
5 can have penal
and for limiting its

he Lord Ordinary
de at common law
statutory cases. It
*Latimer* was put
which reference is
em to me to be of
it has no effect on
persuaded that the
means "kept" was

with the course
hair.

with the opinion of
pursuer sustained
ctory onshore, the
uld be, in terms of
, to have kept the
mably practicable
om any substance
r Lordship in the
ackground to this
28 (1) of the 1961
used by a defect in
liability would be
show reasonable
actical effect of the
is appeal is that, in
ons (Operational
ations 1976, reg 5,
al defect of, and a
ite liability is con-
ore does not apply
n. Counsel for the
ation for this was
gnise the greater
installations and,
de the onshore/
do not accept this
, had Parliament
ve been worded to
: the case, it seems
impose no greater
: of flooring con-
s 25 (1) of the
acted, namely that
nd gangways shall
erly maintained".
working offshore
wide general pro-
'6 Regulations but
on afforded by reg
: the terms of that
: an appropriate
ial is permitted to
:n require to walk

*[main column]*

where the taking of reasonably practicable steps
A would have dealt with the hazard.

*Counsel for Pursuer (Appellant), Bell, QC, Primrose;*
*Solicitors, Balfour & Manson (for Burnside Kemp*
*Fraser, Aberdeen) — Counsel for Defenders*
*(Respondents), Bowen, QC, McCreadie; Solicitors, Paull*
*& Williamsons.*

RFH

# Barker's Executors v Scottish Rights of Way Society Ltd

EXTRA DIVISION

C LORDS McCLUSKEY, PROSSER AND JOHNSTON

24 MAY 1996

*Succession — Testate succession — Various writings sent to*
*solicitor after execution of formal will, changing its pro-*
*visions — Whether writings amounted to validly executed*
*testamentary disposition revoking earlier will.*

A testatrix executed a formal will in 1985 in which
D various charities were listed as residuary legatees.
Shortly before her death in 1991 she wrote to her
solicitors enclosing a copy of an earlier will, dated
1983, to which she had made various handwritten
additions and alterations which included changing
the residuary legatees under the 1985 will into pecu-
niary legatees to receive specified benefits. She also
enclosed various other handwritten papers which
included the provision, "any residue to Scottish Cot
Death Trust". The covering letter to her solicitors
referred to an "extra ordinary document" for them
E to unravel and stated that she had signed it "to be
adopted as holograph" in case things did not go well
for her. She died a few days later before further action
had been taken by the solicitors. The executors, the
residuary beneficiaries under the 1985 will, and the
Cot Death Trust presented a special case to the Inner
House for its judgment on the testamentary effect of
these writings. On behalf of the residuary bene-
F ficiaries under the 1985 will it was argued that the
1991 bundle amounted only to instructions to the
solicitor to alter the will.

*Held*, (1) that documents which were partly
printed and partly handwritten, which were clearly
intended to be taken and read together, fell to be
treated as a single, properly executed testamentary
document if the writer signed the writing and adopted
the printed material as holograph (p 1320I-J); (2) that
looking to the terms of the covering letter and the
close correlation between the handwritten list of

bequests and the will with its alterations, it was clear
that in the mind of the testatrix she was enclosing a
G single "document", albeit consisting of a number of
parts (p 1320J-L); (3) that while the testatrix was
giving her solicitor instructions to change her will, it
was also plain from the letter that given the state of her
health she wanted the document to constitute an
immediate testamentary disposition and the 1991
writings validly bequeathed the residue to the trust
and revoked the earlier bequest of residue to the
other charities (p 1321G-H and L); and questions
*answered* accordingly.

**Special case**

Donald Neil Gordon and Charles Fraser Scott
Williamson, executors of Miss Janette Barker in terms
of a will dated 25 January 1985, parties of the first
part, The Scottish Rights of Way Society Ltd and
others, parties of the second part, and The Scottish
Cot Death Trust, party of the third part, presented a
special case to the Inner House for its opinion on the
destination of the residue of the estate of the late Miss
Janette Barker. The issue for the court was whether
documents sent by the deceased to her solicitor on 3
November 1991 amounted to a valid testamentary
disposal of the residue.

The case came before an Extra Division for a
hearing on 23 April 1996.

**Cases referred to**

*Jamieson's Executors*, 1982 SC 1; 1982 SLT 198.
*MacLaren's Trustees v Mitchell and Brattan*, 1959 SC
183; (sub nom *MacLaren's Trustees v Roberts*)
1959 SLT 290.

On 24 May 1996 the Extra Division *found* that the
1991 documents amounted to an effective bequest of
the residue and revoked any earlier bequest, and
*answered* the questions stated accordingly.

The following opinion of the court was delivered by
Lord Johnston:

**OPINION OF THE COURT.**—This is a special
case concerned with the destination of the residue of
the estate of the late Miss Janette Barker (the testatrix)
who died on 17 November 1991 leaving certain
writings in relation to her estate. The writings
included a formal will dated 25 January 1985, which
inter alia revoked all prior testamentary writings. She
L had previously executed a formal will, dated 12 June
1983, and a copy of that document, with handwritten
alterations and additions, was sent by her to her soli-
citor as part of a bundle of documents accompanying
a letter written by the testatrix to her solicitor on
3 November 1991 — these documents were referred
to in argument as "the 1991 package". In addition to
the alterations and additions in the testatrix's hand-
writing were further notes, handwritten by her on the
backing of that copy will. A further single sheet of



Companies House
— for the record —

Home |      Bookmark site |     Links

⚑About us    ⚑Forms    ⚑Press Desk    ⚑Careers    ⚑Contact us         ℹ️ Info and guidance on    🔍 Tools to help you

Login  |  My Account  |  My Download Area  |  ⊕ Your Order          Please select ▲▼         Please select ▲▼

## Company Details

The WebCHeck service is available from Monday to Saturday 7.00am to 12 Midnight UK Time

|  HELP  |  |  PRINT PAGE  |

Name & Registered Office:
**DIAMOND OFFSHORE LIMITED**
**10 FOSTER LANE**
**LONDON**
**EC2V 6HH**
**Company No. 00943475**

☐  **Order information on this company**

🔍 | SEARCH FOR ANOTHER COMPANY |

**Status**: Active
**Date of Incorporation**: 02/12/1968

**Country of Origin**: United Kingdom

**Company Type**: Private Limited Company
**Nature of Business (SIC(03))**:
1110 - Extraction of petroleum & natural gas

**Tell Us**

▸ Are you satisfied with our service?

▸ Have you got a question?

**Accounting Reference Date**: 31/12
**Last Accounts Made Up To**: 31/12/2003  (GROUP)
**Next Accounts Due**: 31/01/2006 OVERDUE
**Last Return Made Up To**: 31/12/2005
**Next Return Due**: 28/01/2007

**Last Members List**: 31/12/2005

**Previous Names:**

| Date of change | Previous Name |
|---|---|
| 21/05/1993 | DIAMOND M-ODECO LIMITED |
| 17/09/1992 | BEN-ODECO LIMITED |

**Branch Details**
There are no branches associated with this company.

**Oversea Company Info**
There are no Oversea Details associated with this company.

**System Requirements**

**Return to search page**



PLAINTIFF'S
EXHIBIT
C

Top

  Contact Centre : +44 (0)870 33 33 636  available 08:30 to 18:00 (UK time)      Email  enquiries@companies-house.gov.uk

Disclaimer  |  Privacy Statement  |  Acceptable use statement  |  Use of cookies  |  © Crown Copyright 2003  |  Website powered by Orchid Telematics

