

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR - 6 2006

FILED
CLERK'S OFFICE

DOCKET NO. 875

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

(In Re: Condition Transfer Order (CTO-259))

CASE ORIGINATES FROM
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

MICHAEL CATANIA, ET AL                          CIVIL ACTION

VERSUS

ANCO INSULATIONS, INC., ET AL                   NO. 05-1418-JJB-DLD

## MOTION TO VACATE CONDITIONAL TRANSFER ORDER

NOW INTO COURT, through undersigned counsel, come plaintiffs, Michael Catania,

surviving spouse of Barbara Catania, and Kristen Catania, child of Barbara Catania, who file this

Motion to Vacate Conditional Transfer Order on the basis that the Conditional Transfer Order

entered on March 9, 2006, was invalid as there is no federal jurisdiction for the rendering of this

transfer order and, moreover, the collateral survival action which existed prior to Barbara

Catania's death was transferred back to the United District Court for the Middle District of

Louisiana which stated that the transfer was for Barbara Catania "or any spousal or dependent

actions" (Exhibit "1") and, likewise, this wrongful death matter should be transferred back to

the United States District Court for the Middle District of Louisiana. For these reasons as well

as for the reasons set forth below and in the memorandum attached hereto, the Conditional

Transfer Order should be vacated:

IMAGED APR - 7 2006          OFFICIAL FILE COPY

(1)     The action was originally filed in state court, and was improperly removed by third party defendant, DSM Copolymer, Inc., without a basis for federal jurisdiction;

(2)     Vacation of the Conditional Transfer Order/Remand is warranted because DSM Copolymer, Inc.'s attempted removal fails on its face because federal officer authority was not established;

(3)     Vacation of the Conditional Transfer Order/Remand is warranted because DSM Copolymer, Inc. does not meet the requirement for removal under 28 U.S.C. §1442(a)(1);

(4)     Vacation of the Conditional Transfer Order/Remand is warranted because DSM Copolymer, Inc. failed to satisfy the first prong of the federal officer removal statute because it was not shown that it was acting under federal direction;

(5)     Vacation of the Conditional Transfer Order/Remand is warranted because DSM Copolymer, Inc. does not have a colorable defense;

(6)     Vacation of the Conditional Transfer Order/Remand is warranted because DSM Copolymer, Inc. failed to show a unique federal interest to justify removal;

(7)     Vacation of the Conditional Transfer Order/Remand is warranted because DSM Copolymer, Inc. failed to show a conflict between state law and federal mandate;

(8)     Vacation of the Conditional Transfer Order/Remand is warranted because DSM Copolymer, Inc. has not established that the Defense Protection Act of 1950, 50 U.S.C. § 2061, et seq., provides a colorable defense in this matter;

(9)     Vacation of the Conditional Transfer Order/Remand is warranted because DSM Copolymer, Inc.'s attempted removal fails the third prong of the federal officer removal statute because DSM Copolymer, Inc. has not shown a nexus between the government's control and plaintiffs' legal theories;

(10)    Vacation of the Conditional Transfer Order/Remand is warranted because upon Judge Charles R. Weiner's Suggestion of Remand dated April 7, 2003 (See Attachment 1), the Panel issued Remand Orders dated April 30, 2003, and August 13, 2003, remanding the collateral survival case back to the United State District Court for the Middle District of Louisiana for the handling of the case. (See Attachments 2 & 3). Thereafter, discovery was completed, all motions were resolved, and the case proceeded to trial in November of 2003. During jury selections, the survival case was settled by all defendants. (See Attachment 4). The only additional event since the settlement of the survival action was the death of Barbara Catania on January 18, 2005.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR - 6 2006

FILED
CLERK'S OFFICE

(11)    Vacation of the Conditional Transfer Order/Remand is warranted because the
instant case is being handled by the same federal judge, Honorable James J.
Brady, who handled the survival action prior to Barbara Catania's death. In the
instant case, it is submitted that the case is ready for trial. Thus, a Remand Order
should be issued in the current collateral wrongful death matter;

(12)    The transfer was for Barbara Catania "or any spousal or dependent actions"
(Exhibit "1") and, accordingly, this wrongful death action filed by Mrs. Catania's
spouse and child should be transferred back to the United States District Court for
the Middle District of Louisiana.

(12)    Vacation of the Conditional Transfer Order/Remand is also warranted because the
defendants should be estopped from contesting this Motion To Vacate the
Conditional Transfer Order under principles of collateral estoppel.


WHEREFORE, plaintiffs respectfully submit that the conditional transfer order should be

vacated.

Respectfully submitted,

**ROUSSEL AND ROUSSEL**

GEROLYN P. ROUSSEL, TA– 1134
PERRY J. ROUSSEL, JR. – 20351
1710 Cannes Drive
LaPlace, LA 70068
Telephone: (985)651-6591
ATTORNEYS FOR PLAINTIFFS,
KRISTEN AND MICHAEL CATANIA


## CERTIFICATE OF SERVICE

I hereby certify that a copy of **Plaintiffs' Motion to Vacate Conditional Transfer**

**Order** has been served upon the parties listed on Attachment "A" (Panel Service List) by

mailing same to each, properly addressed and postage prepaid, on this April 5, 2006.

PERRY J. ROUSSEL, JR.

-3-

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR - 6 2006

FILED
CLERK'S OFFICE

DOCKET NO. 875
BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION
IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)
(In Re: Condition Transfer Order (CTO-259))

CASE ORIGINATES FROM
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| MICHAEL CATANIA, ET AL | CIVIL ACTION |
| VERSUS | |
| ANCO INSULATIONS, INC., ET AL | NO. 05-1418-JJB-DLD |

**MEMORANDUM IN SUPPORT
OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER**

**MAY IT PLEASE THE COURT:**

Plaintiffs, Michael Catania, surviving spouse of Barbara Catania, and Kristen Catania, only child

of Barbara Catania, have filed an opposition to the Conditional Transfer Order entered on March 9, 2006,

and this Motion to Vacate the Conditional Transfer Order and Memorandum in Support.

**BACKGROUND**

The current case (M.D. Louisiana, C.A. No. 05-1418-JJB-DLD) is the wrongful death component

of the prior collateral survival case (M.D. Louisiana, C.A. No. 3:02-368) which has already been

addressed by the Judicial Panel on MultiDistrict Litigation ("Panel") and Judge Charles R. Weiner.  Upon

Judge Charles R. Weiner's Suggestion of Remand dated April 7, 2003 (Exhibit "1"), the Panel issued

Remand Orders dated April 30, 2003, and August 13, 2003, remanding the collateral survival case back to

the United State District Court for the Middle District of Louisiana for the handling of the case.  (See

Exhibits "2" & "3").  Specifically, in **the Suggestion of Remand, Judge Charles R. Weiner stated that**

**the transfer was for the case of Barbara Catania "and any spousal or dependent actions."**  (Exhibit

"1"–Suggestion of Remand).  Thereafter, discovery was completed, all motions were resolved, and the

-1-

case proceeded to trial in November of 2003. During jury selections, the collateral survival case was

settled by all defendants. (See Exhibit "4").

The only additional event since the settlement of the survival action was the death of Barbara

Catania on January 18, 2005, from asbestos related mesothelioma.[1] The instant case is being handled by

the same judge, Honorable James J. Brady, who handled the collateral survival action prior to Barbara

Catania's death. In the instant case, it is submitted that the case is ready for trial. Thus, a Remand Order

should be issued in the current collateral wrongful death matter, and the defendants should be estopped

from contesting this remand under principles of collateral estoppel. Accordingly, plaintiffs' motion to

vacate the conditional transfer order should be granted.

## I.   DSM'S ATTEMPTED REMOVAL FAILS ON ITS FACE BECAUSE FEDERAL OFFICER AUTHORITY WAS NOT ESTABLISHED.

In the Notice of Removal it is stated that defendant, DSM, seeks to remove this case on the basis

of 28 U.S.C. 1442(a)(1) and on this Court's Federal question jurisdiction as contained in 28 U.S.C. 1331.

On the face of the Notice of Removal, the federal courts lack subject matter jurisdiction[2].

First of all, the plaintiffs' petition is grounded solely on state law based on various theories of

liability as set forth in *Halphen v. Johns-Manville Sales Corp.*, 484 So. 2d 110 (La. 1986), the law

applicable to this case. Second, the demand against DSM makes absolutely no allegations that DSM's

products produced for the government contributed in any way to Barbara Catania's asbestos-related

mesothelioma and death. Third, nothing produced by DSM shows that the acts forming the basis of

---

[1] Barbara Catania was the secretary to the LSU system President for approximately 21 years. She was forty-nine (49) years old when she was diagnosed with mesothelioma. She has never worked on or at the facilities of DSM, and she was exposed as a small child through family members that did subcontracting work at DSM's facilities.

[2] As in *Lalonde*, DSM abandoned any real reliance on 28 U.S.C. 1442(a)(2) in support of removal jurisdiction, as it failed to present any credible evidence to support federal jurisdiction in the federal court under said statute.

Likewise, DSM also failed to produce any credible evidence to make a colorable claim to its entitlement to any benefits/immunities derived from the Defense Protection Act of 1950, 50 U.S.C. 2061, et seq. and/or to rebut plaintiffs' arguments presented in plaintiffs' motion to remand for the inapplicability of the Defense Protection Act of 1950 to the claims presented in this matter.

plaintiffs' state law claims were performed by DSM pursuant to a federal officer's direct orders or comprehensive and detailed regulations. Fourth, DSM cannot show that any alleged government control of their activities directly interfered with their ability to fulfill their state law obligations to Barbara Catania or to her family members with contaminated work clothing. Fifth, DSM cannot exclude that plaintiffs' state action is based on acts or conduct of DSM's which were not justified by its officer's federal duty. Sixth, DSM presents absolute no information showing that it, as part of its alleged federal officer duty, maintained direct and detailed control over the activities of the independent contractor, the Local 53 Asbestos Union workers or their procedures in handling asbestos, the source of Mrs. Catania's asbestos exposure. Seventh, DSM does not allege that the federal government maintained any direct control over safety or the activities of the Local 53 Asbestos Union workers at the facility, nor do they present any direct evidence that asbestos products were required by the government to be installed by the Local 53 independent contractors at their facility. Moreover, DSM presents no evidence showing that the government authority under which it worked required them to act negligently with regard to subcontractor workers nor can they establish that the [federal officer's] direction and control of their activities directly interfered with their ability to fulfill their state law obligation to warn workers of safety hazards.

Furthermore, Barbara Catania never visited the DSM facility, nor did she work at the DSM facility. Barbara Catania was a secretary to the LSU system President for approximately 21 years. Barbara Catania was allegedly exposed to asbestos through family members bringing home asbestos on their clothing, persons, and objects from working at DSM. DSM established no evidence to shows that Mrs. Catania's family members, who may have worked at the DSM operated facility for the Local 53 Asbestos Union as independent contracts, were somehow following federal orders or comprehensive and detailed regulations in bringing home asbestos on their clothing.

-3-

DSM alleges that removal to federal court is appropriate under 28 U. S. C. 1442(a)(1), the federal officer statute. The party seeking removal bears the burden of establishing federal jurisdiction. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S. Ct. 35, 37, 66 L. Ed 144 (1921). Further, regarding the applicability of 28 U. S. C. § 1442(a)(1), "[i]f the right to removal is doubtful, the case should be remanded [to state court]." *See Gauthe v. Asbestos Corp.*, 1997 WL 3255 (E.D. La. 1997); *Ryan v. Dow Chemical Co.*, 781 F.Supp. 934, 947 (E.D. N. Y. 1992); *Ruffin v. Armco Steel Corp.*, 959 F.Supp. 770 (S.D. Tex. 1997), *order vacated on other grounds*, 1999 WL 318023 (S. D. Tex. 1999); *Bahrs v. Hughes Aircraft Co.*, 795 F.Supp. 965, 969 (D. Ariz. 1992). It has been held that removal by a "person acting under" a federal officer must be predicated upon a showing that the acts that formed the basis for the state civil suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations. *Good v. Armstrong World Industries, Inc., et al*, 914 F.Supp. 1125 (E.D. Pa. 1996); *Ryan v. Dow Chemical Co.*, 781 F.Supp. 934, 947 (E.D. N.Y. 1992); *Freiberg, infra*. Regulation of a corporation by the government is insufficient to meet this test, and the "rule that appears to emerge from the case law is one of 'regulation plus...'." *Id.*; *Ryan, supra*; *Bahrs, supra*. Moreover, DSM must exclude the possibility that plaintiffs' state action is based on acts or conduct of DSM's not justified by their alleged officer's federal duty. *Freiberg v. Swinerton & Walberg Property Services, Inc.*, 245 F.Supp. 2d 1144, 1155 (D. Colo. 2002)(citing *Mesa v. California*, 489 U.S. 121, 132, 109 S.Ct. 959 (1989)).

DSM bears the burden of establishing that it did act under the specific authority of the federal government in causing Barbara Catania's secondary exposure to asbestos. Between 1942 and 1955, DSM alleges that its sole function was the operation of the facility under the authority of the U. S. government. DSM does not allege that the federal government maintained any direct control over safety or the activities of the Local 53 Asbestos Union workers at the facility, nor do they present any evidence that

asbestos products were required by the government to be installed by the Local 53 independent contractors at their facility.

Nothing presented by DSM establishes that the government or a federal officer specified the use of asbestos in its facility. Moreover, nothing presented by DSM establishes that DSM specified or controlled the procedures used by the Local 53 Asbestos Union in handling asbestos. In the instant case, DSM has not shown that "strong government intervention and the threat that a defendant will be sued in state court based on actions which follow federal direction." *Mouton v. Flexitallic, Inc.*, 1999 WL 225438 (E.D. La. 1999), p. 2; *Freiberg, supra*. Without this showing, DSM has not carried its burden of establishing federal jurisdiction over a suit initiated in state court, and the suit should be remanded to state court. *Ryan*, 781 F.Supp. at 939; *Good*, 914 F.Supp. at 1127; *Freiberg, supra*.

In the case of *Good v. Armstrong World Industries, Inc.*, 914 F.Supp. 1125 (E.D. Penn. 1996), a former member of the United States Navy filed suit for personal injuries from asbestos exposure from Viacom/Westinghouse generators. Viacom filed a notice of removal under the federal officer removal statute alleging that it designed and manufactured the turbine generators in accordance with specifications and regulations mandated by the Navy, and was entitled to remove the case to federal court pursuant to the federal officer removal statute, 28 U.S.C. 1442. The plaintiffs filed a motion for remand alleging that Westinghouse did not meet the statutory requirement for removal. *Id.* at 1127.

The *Good* court stated that "removal must be predicated upon a showing that the acts forming the basis of the state suit were performed pursuant to an officer's direct orders or comprehensive and detailed regulations." *Id.* at p. 1128. "By contrast, if the corporation establishes only that the relevant acts occurred under the general auspices of federal direction then it is not entitled to 28 U.S.C. 1442(a)(1) removal." *Id.* at p. 1128; see also *Mouton v. Flexitallic, Inc.*, 1999 WL 225438 (E.D. La. 1999), p. 2; *Ryan*, 781 F.Supp. at 947; *Fung v. Abex Corp.*, 816 F.Supp. 569 (N.D. Cal. 1992); *Freiberg, supra*.

-5-

The *Good* court stated that nothing presented by Westinghouse established that the Secretary of the Navy specified the use of asbestos in its turbine generators. Thus, Westinghouse did not meet its burden to make a causal connection between the state claim and the conduct undertaken pursuant to the direction given by an officer of the federal government. *Id.* at 1130.

Another case on point is the recent case of *Freiberg v. Swinerton & Walberg Property Services, Inc.*, 245 F.Supp. 2d 1144 (D. Colo. 2002). In *Freiberg*, plaintiffs who were directly exposed to asbestos-containing products during construction of a government nuclear weapons production facility brought personal injury actions against government contractors and product manufacturers and distributors. Defendant and government contractor, Swinerton Walberg Property Services, Corp. ("Swinerton"), removed the case to federal court based on alleged federal officer entitlement under 1442(a)(1). The plaintiffs moved for remand arguing that the acts giving rise to their claims were construction <u>activities independent of the U.S. government's</u> Rocky Flats nuclear weapons production facilities' <u>federal purpose</u> and that Swinerton was not entitled to special federal officer protection. The *Freiberg* court agreed and granted the plaintiffs' Motions For Remand. *Id.*

The *Freiberg* court stated that:

> [T]he established rule is that removal by a person "acting under" a federal officer must be predicated on a showing that the acts forming the basis of the state suit were performed pursuant to an officer's "direct orders or comprehensive and detailed regulations." Ryan, 781 F.Supp. at 947. It is not enough to prove only that "the relevant acts occurred under the general auspices of a federal office or officer" or that "a corporation participates in a regulated industry." Id. The official must have direct and detailed control over the defendant. Good, 914 F.Supp. at 1128.
>
> Direct and detailed control is established by showing strong government involvement and the possibility that a <u>defendant could be sued in state court as a result of the federal control</u>. Pack, 838 F.Supp. at 1103, Ryan, 781 F.Supp. at 948-9 (setting forth detailed analysis of cases). <u>"The issue is not simply whether the defendant acted under federal officials but whether they are in danger of being sued in state court 'based on action taken pursuant to federal direction.'"</u> Id.

(Emphasis Added); *Freiberg*, *supra* at 1152-53. The *Freiberg* court further stated:

> [U]nless an officer of the United States (or one acting under him) can justify what he did by reason of some official connection between the acts complained of and his official duties, the purpose of the statute to protect federal interests and immunities is not implicated and the proceeding is not removable. See *Brenner v. Kelly*, 201 F.Supp. 871 (D. Minn. 1962). The nexus requirement is established by showing that the <u>state action "has arisen out of the acts done</u> by the defendant under color of federal authority and in enforcement of federal law." *Mesa*, 489 U.S. at 131-32.... To sustain this burden, the defendant must also "by direct averment exclude the possibility that [the state action] was based on acts or conduct of his not justified by his federal duty." *Mesa*, 489 U.S. at 132.

(Emphasis Added). *Id.* at 1155. In defining the "under color" causal connection requirement in an

asbestos case, the *Freiberg* court stated:

> [T]hey are being sued for unnecessarily and negligently causing their employees and other workers to be exposed to asbestos dust on the job and for failing to warn these employees and workers of the associated dangers. <u>What they must establish for purpose of the 1442(a)(1) is that the government authority under which they worked required them to act as they did.</u> For purposes of Plaintiffs' failure to warn claims, for example, <u>they must establish the DOE's [Department of Defense] direction and control of their activities directly interfered with their ability to fulfill their state law obligation to warn employees of safety hazards.</u>

(Emphasis Added). *Id.* at 1155. Neither Swinerton nor any other defendant demonstrated the requisite

causal connection between the government control under which it purported to have acted and plaintiffs'

alleged injuries. Thus, there was no basis on which to find the existence of federal jurisdiction under 28

U.S.C. 1442(a)(1), and no basis for removing these cases to federal court. *Freiberg, supra* at 1156.

In the case at bar, DSM can present no evidence showing that the **"government authority under**

**which they worked required them to act"** negligently with regard to the Local 53 Asbestos workers

nor can they **"establish the [federal officer's] direction and control of their activities directly**

**interfered with their ability to fulfill their state law obligation to warn employees of safety**

**hazards."** *Freiberg, supra* at 1155. DSM has provided absolutely no evidence showing that the asbestos

used by the Local 53 Asbestos workers were pursuant to specifications outlined and at the direction given,

by an officer of the federal government. Nothing presented by DSM shows any specification for the work

-7-

done by the Local 53 Asbestos Union, and whether asbestos was a requirement of the job. Moreover, nothing presented by DSM shows that DSM had any direct control over the safety of these independent contractors or over the procedures used by these independent contractors for cleaning up after completing their tasks at the DSM operated facility, i.e. the source of the Barbara Catania's asbestos exposure and plaintiffs' state law claims. Without this showing, DSM cannot meet its burden of making a causal connection between the state claims being asserted in this matter (the conduct of carrying asbestos to Barbara Catania from clothing worn by family members) and the conduct undertaken pursuant to the direct orders (or comprehensive and detailed regulation) given by an officer of the federal government. Clearly, there is no federal jurisdiction under 28 U.S.C. 1442(a)(1), and no basis for removing this case from state court to federal court. Thus, the conditional transfer orders should be vacated, and this case should be remanded to the state court for lack of federal jurisdiction. Continued proceeding in federal court in this matter will result in a waste of judicial resources, time, and money.

In yet another case on point of *Overly v. Raybestos-Manhattan*, No. C-96-2853, 1996 WL 532150 (N.D. Cal. Sept. 9, 1996), a federal district court in California found that the attempted federal officer removal of Avondale Shipyard, the defendant, failed this prong of the federal-officer removal test because there was no evidence that a federal officer was involved in shipyard safety. In *Overly*, the plaintiff was exposed to asbestos while working at Avondale Shipyards. *Id*. at p. 1. After the plaintiff contracted an asbestos-related disease, he sued the defendant, alleging that the defendant's failure to warn about the hazards of asbestos caused his injury. *Id*. The defendant removed the case of federal court alleging federal officer jurisdiction because it was under "rigid guidelines" imposed by the federal government for the "design of ships." *Id*. The court rejected the defendant's attempted federal officer removal because it provided no evidence showing that the government controlled asbestos-related warnings or safety. "Although Avondale has established that it was under substantial control by the government regarding the

-8-

installation of certain products containing asbestos, it has not done so with regard to the warning of individuals of the presence of asbestos on the job site." *Id.* at p. 3.

To establish that the defendant acted under the control of a federal officer, for purposes of §1442(a)(1), therefore, the defendant must show that the government authority under which it worked directly interfered with its ability to fulfill its state law obligation to Barbara Catania. *Ruffin*, 959 F.Supp. at 776; *Freiberg*, *supra* at 1155. In *Ruffin*, the defendant failed to meet this burden and the case was remanded to state court. The *Ruffin* court concluded that "the mere fact that the government possessed the power to control or regulate employee safety neither establishes that the power was ever used nor that operational mandates of this type were ever issued. Without such proof, [the defendant] cannot satisfy the statutory requirements for removal under §1442(a)(1)." *Id.* at 776.

In the instant case, DSM has neither established that it acted pursuant to direct and detailed orders by the federal government regarding the activities of independent contractors working at its facilities nor that any federal duty under which it may have been required to act in any way interfered with its state imposed duty of safety towards these independent contractors and their employees. DSM has not established the first prong of the *Mesa* test and, therefore, the conditional transfer orders should be vacated, and this case should be remanded to state court for lack of federal jurisdiction.

## II.   DSM'S UNSUPPORTED ALLEGATIONS OF FEDERAL OFFICER AUTHORITY DO NOT SUPPORT REMOVAL UNDER THE FEDERAL OFFICER REMOVAL STATUTE.

### A.   DSM Does Not Meet the Statutory Requirement for Removal Under 28 U. S. C. 1442(a)(1).

Even if DSM met its threshold burden by providing evidentiary support for its factual allegations, which is denied, those allegations are wholly insufficient to support a finding of federal officer authority as required by §1442(a)(1). An action may be removed to federal court if defendant shows that the suit involves:

> The United States or any agency thereof or any officer (or any person <u>acting under that officer</u>) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under an Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U. S. C. 1442(a)(1) (emphasis added).

To properly invoke this Court's federal officer jurisdiction under §1442(a)(1), DSM must meet the criteria set forth in *Mesa v. California*, 489 U.S. 121, 124-25, 134-35, 109 S. Ct. 959, 962, 103 L. Ed. 2d 99 (1989). First, DSM must show that it was acting under the direction and control of a specific federal officer at the time the alleged tort was committed. *Id.* Second, DSM must show that it has a colorable federal defense to plaintiffs' claims. *Id.* And third, DSM must show that a causal nexus existed between the tortious conduct that resulted in plaintiffs' injuries and the alleged federal authority. *Id.* DSM must establish all three elements for removal to be proper. *Gauthe*, 1997 WL 3255 at *2.

**1.     DSM Fails the First Prong of the Federal Officer Removal Statute Because it Has Not Shown That it Was Acting under Federal Direction.**

Under the first prong of federal-officer removal, the defendant must show that it is being sued for actions taken at the direction of a federal officer. *See Mesa,* 109 S. Ct. at 962. The well-accepted test for establishing whether a defendant was "acting under" a federal officer requires a showing that the acts forming the basis of the action were performed "pursuant to an officer's direct orders or to comprehensive and detailed regulations." *Good,* 914 F.Supp. at 1127; *Overly, supra*; *Ryan,* 781 F.Supp. at 947. Indeed, the vast majority of courts that have considered this issue have interpreted this first element as requiring direct orders/regulations from the federal government. *See Ruffin, supra*; *Gauthe v. Asbestos Corp.*, 1997 WL 3255 (E. D. La. Jan. 2, 1997); *Bahrs v. Hughes Aircraft Co.*, 795 F. Supp. 965, 969 (D. Ariz. 1992); *Ryan,* 781 F. Supp. at p. 947; *Good,* 914 F. Supp. at p. 1128; *Overly, supra*; *Arness v. Boeing North America, Inc.*, 997 F. Supp. 1268 (C. D. Cal. 1998); *Pack v. AC&S, Inc.*, 838 F. Supp. 1099 (D. Md.

-10-

1993). If, on the other hand, a defendant only establishes that the relevant acts occurred under the "general auspices" of federal direction, it is **not** entitled to removal under § 1442(a)(1). *Good,* 914 F. Supp. at p. 1128 (allegations of general control and direction of Navy insufficient to show defendant acted pursuant to direct orders or comprehensive and detailed regulations).

And there is no question that the burden rests squarely on DSM. *See Wilson v. Republic Iron & Steel Co.,* 257 U. S. 92, 97, 42 S. Ct. 35, 37, 66 L. Ed 144 (1921). It was incumbent upon DSM to show through specific facts that it was acting under the authority of a federal officer. *See Fowler v. Southern Bell Telephone & Telegraph Co.,* 343 F. 2d 150, 154 (5th Cir. 1965) (incumbent upon defendants to show that they were federal officers acting within their duties).

Specifically relevant to the case at bar, DSM has not established that the safety or procedures of the Local 53 Asbestos Union independent contractors were under the direction and control of a federal officer, nor has it shown that asbestos installation was required at the direction of a federal officer. *Ryan,* 781 F. Supp. at p. 947. Plaintiffs further note that no documents offered by DSM Copolymer reference any direct order or instruction from the United States Government that asbestos had to be used in the DSM facility, or that the United States Government gave specific instruction to DSM to not take adequate precautions to protect workers on their premises (and their resulting family members) from exposure to deadly asbestos fibers, or to not warn workers on their premises of the deadly hazards of asbestos exposure to themselves and their resulting family members, the lack thereof of such evidence clearly indicating DSM's inability to claim any protection provided under government contractor immunity. Similarly, a federal district court in California found that the attempted federal officer removal of Avondale Shipyard, the defendant, failed this first prong of federal-officer removal test because there was no evidence that a federal officer was involved in shipyard safety. *Overly, supra.* To establish that the defendant acted under the control of a federal officer, for purposes of § 1442(a)(1), therefore, the

-11-

defendant must show that the government authority under which it worked directly interfered with its ability to fulfill its state law obligations to Barbara Cantania, the deceased spouse who never visited the DSM facilities. *Ruffin,* 959 F.Supp. at 776.

DSM has neither established that it acted pursuant to direct and detailed orders by the federal government regarding the activities of independent contractors working at its facilities nor that any federal duty under which it may have been required to act in any way interfered with its state imposed duty of safety towards these independent contractors. DSM has not established the first prong of the *Mesa* test and, therefore, this motion to vacate should be granted and the case remanded to state court.

### 2.   DSM Does Not Have a Colorable Federal Defense.

Nor can DSM satisfy the second prong of the federal officer removal test. To qualify for federal-officer jurisdiction under § 1442(a)(1), a defendant must establish that it has a colorable federal defense to the plaintiffs' claims. *See Mesa,* 109 S.Ct. at 968. DSM asserts that it may rely on the government contractor defense, *see Boyle v. United Technologies Corp.,* 487 U. S. 500, 108 S. Ct. 2510, 101 L. Ed. 2d 442 (1988), and/or defenses and immunities available under the Defense Protection Act of 1950, 50 U. S. C. 2061, *et seq.* For the reasons set forth below, neither the government contractor defense nor the Defense Protection Act of 1950 provide DSM with a colorable federal defense to plaintiffs' claims.[3]

---

[3] It is well-settled law that "a defense that raises a federal question is inadequate to confer federal jurisdiction." *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 3232, 92 L.Ed. 2d 650 (1986) (citing *Louisville & Nashville R. Co. v. Mottley,* 211 U.. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). The federal question in removal cases must be disclosed on the face of the plaintiff's complaint and must be essential to the plaintiff's cause of action; it is not enough that the federal question arises by way of a defense to that action. *Oliver v. Trunkline Gas Co.,* 789 F.2d 341, 343 (5th Cir. 1986); *PAAC v. Rizzo,* 502 F.2d 306, 313 (3d Cir. 1974); *Border City S. & L. Ass'n v. Kennecorp Mtg.,* 523 F. Supp. 190, 192 (S.D. Ohio 1981); *Bruan, Gordon & Co. v. Hellmers,* 502 F. Supp. 897, 900 (S.D. N.Y. 1980); 1A Moore's Federal practice, Sec. 0.160 (1974); C. Wright, Law of Federal Courts, Sec. 38 at 179 (1976). A case may not be removed to federal court on the basis of a federal defense, even if the defense is anticipated in plaintiff's complaint and even if the parties concede that the federal defense is the only question truly at issue. *Franchise Tax Bd. of Calif. v. Constr. Laborers Trust for Southern Calif.,* 463 U.S. 1, 103 S.Ct. 2841 (1983); *Thomas v. Burlington Industries, Inc.,* 763 F. Supp. 1570, 1575 (S.D. Fla. 1991).

Therefore, DSM has failed to establish this second prong of the *Mesa* test and plaintiffs' motion to vacate should be granted and the matter remanded to state court.

> **a.    Application of the Government Contractor Defense Must Be Predicated Upon Both a Federal Interest and a Conflict Between Duties Imposed by State Law and Duties Imposed by Federal Authority.**

DSM suggests that it can rely upon the government contractor defense articulated in *Boyle, supra*.[4] But before the Court can consider whether this serves as a colorable federal defense in this case, DSM bears the burden of establishing that two requisite conditions are met: whether the case concerns a unique federal issue and whether there was a significant conflict between federal policy and state law. *Boyle*, 108 S. Ct. at 2515. If either of these conditions are not met, a defendant cannot rely upon the federal contractor defense. *Dorse v. Eagle-Picher Industries, Inc.*, 898 F. 2d 1487, 1490 (11th Cir. 1990) (state law not displaced where no conflict existed between federal contractual duties and state duty of care — contractor could comply with both obligations). In this case, because DSM cannot meet these two requisite conditions, it cannot rely on the government contractor defense.

> **1.    No Unique Federal Interest Justifies Removal.**

Since asbestos products have been banned for a long time and are no longer used in most equipment, any federal interest in this case is meager at best. This case does not involve work presently taking place by contractors of the government or employees or agents of the government, and no chilling effect would be presented in regards to future work performed by government contractors as this case

---

[4] To establish the applicability of the government contractor defense, the defendant must satisfy a three-part test: 1) the United States approved reasonably precise specifications; 2) the equipment conformed to those specifications; and 3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not the United States. *Boyle*, 108 S. Ct. at 2518. *Boyle* involved a products liability action against an independent contractor that supplied military helicopters to the United States; not a failure to warn action. While the Fifth Circuit has applied the *Boyle* test to failure to warn actions, it recognized the difficulty a defendant would have "establishing an identifiable federal interest or policy in the existence of method of warning and a significant conflict between that federal interest or policy and the operation of state law." *Garner v. Santoro*, 865 F. 2d 629, 635 (5th Cir. 1989), *cited in Ruffin*, 959 F. Supp. at 774.

involves exposures to asbestos occurring prior to 1970, and asbestos is no longer utilized by said contractors. Using precisely this reasoning, the Eastern District of Pennsylvania rejected an asbestos manufacturer's claim that it was entitled to the federal-contractor defense to support its attempted federal-officer removal:

> The impact of this personal injury action on the federal interest in protecting future defense procurement — the fundamental point of the government contract defense — is speculative. It is common knowledge that asbestos is no longer used in the design and manufacture of equipment, so that this lawsuit cannot interfere with a federal program involving products that contain asbestos. Therefore, the adjudication of this personal injury action in state court does not threaten the enforcement of a federal policy sufficient to warrant removal.

*Good v. Armstrong World Indus., Inc.*, 914 F. Supp. 1125, 1131 (E.D. Pa. 1996).

### 2.    No Conflict Exists Between State Law and Federal Mandate.

Even if the Court determines that a federal interest does exist in this case, that federal interest "merely established a necessary, not a sufficient, condition for the displacement of state law." *Boyle*, 108 S. Ct at 507. The court must then determine whether a conflict exists between state law and federal mandate.   Displacement of state law "will occur only where. . . a 'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law or the application of state law would 'frustrate specific objectives' of federal legislation." *Id.* The *Boyle* court offered an example of a situation in which federal mandate does not conflict with state imposed duty:

> If, for example, the United States contracts for the purchase and installation of an air conditioning-unit, specifying the cooling capacity but not the precise manner of construction, a state law imposing upon the manufacturer of such units a duty of care to include a certain safety feature would not be a duty  identical to anything promised the Government, but neither would it be contrary.  The contractor could comply with both its contractual obligations and the state-prescribed duty of care.  No one suggests that state law would generally be pre-empted in this context.

*Id.*[5] This example clearly highlights the facts applicable to the case at bar are clearly outside the removal statutes, and there is no federal jurisdiction.

Therefore, even if the Court determined that there is a federal interest in this case, DSM would still have to establish a conflict exists between its duties imposed by state law and its duties imposed by federal authority. Indeed, in a similar situation, the Eleventh Circuit determined that the evidence did not support the requirements for the government contractor defense where "the contractor could comply with both its contractual obligations and the state-prescribed duty of care." *Dorse*, 898 F. 2d at 1490. The Ninth Circuit clearly articulated this requirement in the failure to warn context:

> *Boyle* displaces state law only when the Government, making a discretionary, safety-related military procurement decision contrary to the requirements of state law, incorporates this decision into a military contractor's contractual obligations, thereby limiting the contractor's ability to accommodate safety in a different fashion.

*In re Hawaii Asbestos Cases*, 960 F. 2d 806, 813 (9th Cir. 1992).

DSM still has not established that its duties imposed by federal authority in any way conflicted with its duties of care imposed by state law. Specifically, under Louisiana law, an employer has a duty to provide a safe work place for its employees or persons working on its premises. *See, e.g., Jones v. Trailer*, 636 So. 2d 1112, 1122 (La.App. 4th Cir. 1994) , *writ denied sub nom., Rome v. Traylor*, 642 So. 2d 193 (La. 1994) (referring to La. R. S. § 23.13) ; *Canzoneri v. Smith*, 381 So. 2d 973, 975-76 (La. App. 4th Cir 1980). This duty includes a duty to warn of work-related dangers and how to avoid them. *Canzoneri*, 381 So. 2d at 976; *Miller v. Lambert*, 380 So. 2d 695, 700 (La. Ct. App. 1980). Accordingly, DSM had a duty, imposed by state law, to warn its employees or independent contractors of the dangers of asbestos on the job site. Plaintiffs further show DSM's own Exhibit "C" attached to its opposition to plaintiffs' motion to remand, at Section "15(e)", establishes that DSM was contractually required to

---

[5] *Boyle* involved a different set of facts. In that case, the state-imposed duty of care was directly contrary to the duty imposed by contract with the federal government. *Boyle*, 108 S. Ct. at 2517.

comply with safety, sanitary, and factory inspection laws of the State of Louisiana in its operating

agreement entered into in regards to the Baton Rouge facility. (See Exhibit "5", old document of poor

quality filed by DMS taken directly from Middle District of Louisiana). DSM was obligated under both

federal and state law to provide a safe place to work for those working on its premises and their resulting

family members, including protection from exposure to deadly asbestos fibers. *Zimko v. American

Cyanamid*, 905 So.2d 465, 483-484 (La.App. 4 Cir. 6/8/05). As such, there was no conflict between

federal and state law in regards to warning of the hazards of asbestos and taking necessary precautions to

protect the workers and their family members from being exposed to asbestos. This is not the situation as

was in *Boyle, supra*, wherein in *Boyle* the state-imposed duty of care that was the asserted basis of the

contractor's liability was precisely contrary to the duty imposed by the Government contract.[6] In this

case, the obligations of DSM were the same under both federal and state law. Furthermore, this case does

not involve the United States as a party, and is merely between private litigants. Certainly, DSM cannot

be shielded from state court liability applying state law from its breach of substantially identical duties

imposed by both federal and state law, not to mention its agreed upon contractual duty to follow the laws

of the State of Louisiana to protect citizens such as Barbara Catania from exposure to deadly asbestos

fibers. DSM Copolymer had a duty to complied with its alleged contractual obligations and the state-

prescribed duty of care.

This case also does not result from injury to products manufactured and sold to the U.S.

Government by DSM, but instead results from DSM's failure to warn and protect workers on its premises

and their resulting family members from exposure to deadly asbestos fibers, despite its contractual and

state imposed obligations to protect such individuals from these hazards. Nothing in DSM's notice of

---

[6] *Boyle* is also distinguishable on the basis that *Boyle* involved a case alleging a design defect in regards to a piece of
machinery manufactured by a contractor, which allegation is not present in regards to DSM in this matter. As such,
the test pronounced in *Boyle* is inapplicable to this matter.

-16-

removal in any way suggests that the alleged federal authority conflicted with this state imposed duty to warn.  Where no conflict with state law exists, DSM is not entitled to rely upon the government contractor defense.  Assuming DSM did work under the direct and detailed supervision of the federal government, DSM provides no evidence that anything about that supervision prevented it from warning the employees of the independent contractors about the dangers associated with asbestos.  Thus, the government contractor defense is not available in this case.

      **b.**     **DSM Has Not Established That the Defense Protection Act of 1950, 50 U. S. C. § 2061, et seq., Provides a Colorable Federal Defense in this Case.**

DSM asserts that it may rely on "defenses and immunities" available under the Defense Protection Act of 1950.  Such "defenses and immunities" are articulated in 50 U. S. C. 2157, which provides in part:

> No person shall be held liable for damages or penalties for any act or failure to act <u>resulting directly or indirectly from compliance with a rule, regulation, or order issued pursuant to this act [sections 2061 to 2071 of this Appendix]</u>, notwithstanding that any such rule, regulation, or order shall thereafter be declared by judicial or other competent authority to be invalid.

28 U. S. C. 2157.

On the face of the statute, it is clear that this immunity provision only applies to acts resulting from compliance with the Defense Protection Act.  Nothing in DSM's notice of removal suggests that it was acting under the Defense Protection Act.  Therefore, § 2157 is not a colorable federal defense.

Even if DSM had alleged that it was acting pursuant to the Defense Protection Act, § 2157 does not provide immunity to contractors for the tortious conduct alleged in Plaintiffs' petition.  The purpose of the statute is to shield contractors from liability from having to "re-prioritize its outstanding contracts in order to give the required preference to a compelled DPA [Defense Protection Act] contract."  *See Hercules Inc. v. U. S.*, 24 F. 3d 188, 204 (Fed. Cir. 1994).  The *Hercules* court concluded that the plain language of the statute "reinforces the view that the immunity from suit provided by section 707 [50 U. S.

-17-

C. 2157] does not extend to tort suits in which it is alleged that the item produced by the DPA is inherently dangerous. *Id.* The instant case does not involve DSM's products, but involves a tort action arising out of Barbara Catania's secondary exposure to asbestos dust for the clothing of independent contractors working on DSM's premises. These is no evidence that DSM's products contained any asbestos or used any asbestos. Also, this suit does not involve damages arising from the re-prioritization of contracts. Therefore, following the reasoning in *Hercules*, DSM cannot rely on 50 U. S. C. 2157 to shield it from liability in this case.

### 1. DSM's Attempted Removal Fails the Third Prong of the Federal Officer Removal Statute Because it Has Not Shown a Nexus Between the Government's Control and Plaintiffs' Legal Theories.

Under the third prong for federal-officer jurisdiction, DSM must show that a nexus exists between actions for which it is being sued and the directives of the federal government. *Ryan*, 781 F.Supp. at 945; *Ruffin*, 959 F.Supp. at 775; *Freiberg, supra* at 1152-6. To determine whether a causal nexus exists, "[t]he critical analysis is to what extent defendants acted under the federal direction at the time they were engaged in conduct now being sued upon." *Bahrs*, 795 F.Supp. at 969 (internal quotes omitted); *Freiberg, supra* at 1152-6. To meet this burden, a defendant must "by direct averment exclude the possibility that [the state action] was based on acts or conduct of his not justified by his federal duty." *Mesa*, 109 S. Ct. at 966; *Freiberg, supra* at p. 1152-6. Simply put, DSM must show that the federal authority under which it operated "directly interfered with its ability to fulfill its state law obligation" of care. *See Ruffin*, 959 F.Supp. at 776, *citing Ryan*, 781 F.Supp. at 950; *Freiberg, supra* at 1152-6. This factor is similar to the determination of whether DSM acted under federal authority.[7] And when making this determination, most courts require "direct and detailed control" by the federal officer over the

---

[7] The causal nexus requirement is necessarily predicated upon the existence of federal authority. In some cases, the two requirements are combined into one test. *See Arness v. Boeing North American, Inc.*, 997 F.Supp. 1268, 1273 (C.D. Cal. 1998).

specific conduct of the defendant that forms the basis for the plaintiffs' tort claims. *Bahrs*, 795 F.Supp. at 969; *Freiberg, supra* at 1152-6.

In this case, DSM has provided no evidence showing that a federal officer exercised "direct and detailed" control over the procedures of the Local 53 Asbestos Union workers or over their handling of asbestos; no evidence showing that asbestos-related safety measures used by the Local 53 Asbestos workers or anything else was ever under federal direction and control; no evidence that that the government restricted DSM's ability to notify individuals of the presence of asbestos in the work environment and the resulting hazards of exposure to same. There is no causal connection between the control allegedly exercised by the United States over DSM and the legal theory under which DSM may be held liable.[8] Furthermore, this case does not result from injury to products manufactured and sold to the U.S. Government by DSM, but instead results from DSM's failure to warn and protect workers on its premises and their resulting family members from exposure to deadly asbestos.

The case of *Bahrs v. Hughes Aircraft Co.*, 795 F. Supp. 965, 969 (D. Ariz. 1992), is directly on point. In *Bahrs*, General Dynamics was sued for dumping toxic waste, including TCE, into the ground, which eventually seeped into the ground and injured the plaintiffs. *Id.* at 967. General Dynamics sought to remove, alleging that federal-officer jurisdiction was appropriate because, when performing the work that created the toxic waste, they were fulfilling a government contract. The court rejected the defendant's attempt to invoke federal officer jurisdiction because, while the federal government may have exercised control over the procedures that created the toxic TCE waste, there was no evidence that it exercised "direct and detailed" control over the conduct that caused the plaintiffs' injuries, the waste-

---

[8]   The self-serving affidavit of Robert R. Dennis, Jr. attached as Exhibit "F" to DSM's remand opposition, mentions nothing of why workers were not warned of the hazards of asbestos to themselves and their resulting family members, or why adequate precautions were not taken by DSM to protect the workers on its premises and their resulting family members from exposure to deadly asbestos fibers. Also, Mr. Dennis makes allegations covering time periods when he was not even employed with DSM which are certainly not based upon his personal knowledge.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR - 6 2006

FILED
CLERK'S OFFICE

disposal procedures: "While the government officials were undoubtedly most interested in the production of war materials, the record before this Court does not demonstrate the government's necessary control over the method of waste disposal. The mere fact that the government possessed the power to exercise control over the project does not establish that the power was in fact ever exercised." *Id.* at 970. Thus, the court found no nexus existed between the control exercised by the federal government and the tortious conduct that formed the basis of the plaintiffs' lawsuit against General Dynamics. *Id.*

**WHEREFORE, FOR ALL OF THE REASONS SET FORTH ABOVE,** it is respectfully submitted that this Motion to Vacate Conditional Transfer Order should be granted and the action remanded to the state court from which it was improperly removed.

Respectfully submitted,

**ROUSSEL AND ROUSSEL**

GEROLYN P. ROUSSEL, TA– 1134
PERRY J. ROUSSEL, JR. – 20351
1710 Cannes Drive
LaPlace, LA 70068
Telephone: (985) 651-6591
ATTORNEYS FOR PLAINTIFFS,
KRISTEN AND MICHAEL CATANIA

## CERTIFICATE OF SERVICE

I hereby certify that a copy of **Plaintiffs' Memorandum in Support of Motion to Vacate Conditional Transfer Order** has been served upon the parties listed on Attachment "A" (Panel Service List) by mailing same to each, properly addressed and postage prepaid, on this 5th day of April, 2006.

PERRY J. ROUSSEL, JR.

-20-



"A"

## PANEL SERVICE LIST (Excerpted from CTO-259)
## DOCKET NO. 875
## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

Michael Catania, et al. v. Anco Insulations, Inc., et al., M.D. Louisiana,
C.A. No. 3:05-1418

Gary A. Bezet
Kean, Miller, Hawthorne,
D'Armond, et al.
One American Place
22nd Floor
P.O. Box 3513
Baton Rouge, LA 70821-3513

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001

David A. Damico
Burns, White & Hickton, LLC
Four Northshore Center
106 Isabella St.
Pittsburgh, PA 15212

S. Gene Fendler
Liskow & Lewis
One Shell Square
701 Poydras Street
Suite 5000
New Orleans, LA 70139

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106-2574

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Leon Gary, Jr.
Jones, Walker, Waechter, et al.
Four United Plaza
8555 United Plaza Boulevard
5th Floor
Baton Rouge, LA 70809

Kathleen A. Gendusa
Taylor, Porter, Brooks & Phillips
P. O. Box 2471
451 Florida Street, 8th Floor
Baton Rouge, LA 70820

Susan M. Hansen
Brownson & Ballou
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

Ralph S. Hubbard, III
Lugenbuhl, Wheaton, et al.
601 Poydras Street
Suite 2775
New Orleans, LA 70130

Susan B. Kohn
Simon, Peragaine, Smith & Redfearn
1100 Poydras Street
Suite 300
New Orleans, LA 70163

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308-1314

Deborah D. Kuchler
Abbott, Simses & Kuchler
400 Lafayette Street
Suite 200
New Orleans, LA 70130

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Christopher K. Lightfoot
Hailey, McNamara, Hall, Larmann
& Papale
One Galleria Boulevard
Suite 1400
P.O. Box 8288
Metairie, LA 70011-8288

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102

Lynn M. Luker
Lynn Luker & Associates
3433 Magazine Street
New Orleans, LA 70115

Janet L. MacDonell
Deutsch, Kerrigan & Stiles
755 Magazine Street
New Orleans, LA 70130

Ronald L. Motley
Motley Rice, LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29465

David K. Nelson
Kean, Miller, Hawthorne,
D'Armond, et al.
One American Place
22nd Floor
P.O. Box 3513
Baton Rouge, LA 70825-3513

Andrew L. Plauche, Jr.
Plauche, Maselli, Landry
& Parkerson, LLP
201 St. Charles Avenue
Suite 4240
New Orleans, LA 70170-4240

PANEL SERVICE LIST (Excerpted from CTO-259) - MDL-875

Lawrence G. Pugh III
Montgomery, Barnett, Brown,
Read, et al.
1100 Poydras Street
3200 Energy Centre
New Orleans, LA 70163-3200

John J. Repcheck
Marks, O'Neill, O'Brien
& Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

Gerolyn P. Roussel
Roussel & Roussel
1710 Cannes Drive
Laplace, LA 70068

John D. Roven
Roven, Kaplan & Wells, L.L.P.
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA 19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1570 Penobscot Building
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226

Andrew J. Trevelise
Reed Smith, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Mark E. Van Horn
Taggart, Morton, Ogden, Staub
& O'Brien, LLC
1100 Poydras Street
Suite 2100
New Orleans, LA 70163-2100

James K. Weston II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS LIABILITY     :
LITIGATION (NO. VI)                    :
                                       :
_____x

This Document Relates to:              :        CIVIL ACTION NO. MDL 875

Law Offices of Roussel & Roussel       :

United States District Court           :
Middle District of Louisiana           :

Barbara CATANIA, C.A. No. 3:02-368      :
                                       :
[ In the event the above-listed case is a multiple  :
plaintiff (victim) action, this transfer is for the :
above-named party only, or said parties repre-      :
sentative, and any spousal or dependent actions.]:
_____x

**FILED**   APR - 7 2003

SUGGESTION OF REMAND

THIS MATTER being reviewed this date upon Plaintiff's Motion To Remand to the

United States District Court for the Middle District of Louisiana, and the Court having reviewed this case

and having had settlement conferences with the parties, and now believing that such motion is appropriate

since few defendants remain for trial;

THE COURT FINDS that the issue of punitive damages must be resolved at a further

date with regard to the entire MDL action, and therefore any claims for punitive or exemplary

damages are hereby ORDERED severed from this case and retained by the Court within its jurisdiction over MDL 875 in the Eastern District of Pennsylvania.

THE COURT SUGGESTS that the within entitled matter should be REMANDED to the United States District Court for the Middle District of Louisiana for resolution of all outstanding motions and such further action as may be deemed proper by that Court.

BY THE COURT:

Date: 4/7/2003

Charles   R.   Weiner                    J.

ENTERED

APR - 7 2003

CLERK OF COURT

2

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 3 0 2003

FILED
CLERK'S OFFICE

## DOCKET NO. 875

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*Barbara Catania, et al. v. ACandS, Inc., et al.*, E.D. Pennsylvania (M.D. Louisiana, C.A. No. 3:02-368)

## CONDITIONAL REMAND ORDER

The transferee court in this litigation has:  1) severed all claims for punitive or exemplary damages in the above-captioned action assigned to the court; and 2) advised the Panel that coordinated or consolidated pretrial proceedings with respect to the remaining claims in the above-captioned action have been completed, and that remand of those claims to the transferor court, as provided in 28 U.S.C. §1407(a), is appropriate.

IT IS THEREFORE ORDERED that all claims in the above-captioned action except the severed claims for punitive or exemplary damages be remanded to the United States District Court for the Middle District of Louisiana.

IT IS ALSO ORDERED that pursuant to Rule 7.6 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 436-38 (2001), the transmittal of this order to the transferee clerk for filing shall be stayed fifteen days from the date of this order and if any party files a Notice of Opposition with the Clerk of the Panel within this fifteen-day period, the stay will be continued until further order of the Panel.  This order does not become effective until it is filed in the office of the Clerk for the United States District Court for the Eastern District of Pennsylvania.

IT IS FURTHER ORDERED that, pursuant to Rule 7.6(g), R.P.J.P.M.L., and coinciding with the effective date of this order, the parties shall furnish the Clerk for the Eastern District of Pennsylvania with a stipulation or designation of the contents of the record to be remanded and furnish said Clerk all necessary copies of any pleadings or other matter filed so as to enable said Clerk to comply with the order of remand.

FOR THE PANEL:

*Michael J. Beck*

Michael J. Beck
Clerk of the Panel

A CERTIFIED TRUE COPY

AUG 1 3 2003

ATTEST

MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED
U.S. DIST COURT
MIDDLE DIST. LA.

2003 AUG 27 CLERK'S OFFICE
FILED

BY DEPUTY CLERK

DC

*DOCKET NO. 875*

*BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

# IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*Barbara Catania, et al. v. ACandS, Inc., et al.*, E.D. Pennsylvania (M.D. Louisiana, C.A. No. 3:02-368)
*Vonnie K. Agner, et al. v. Fluor Daniel, Inc., et al.*, E.D. Pennsylvania (W.D. North Carolina, C.A. No. 3:98-138)
*Vonnie K. Agner, et al. v. Fluor Daniel, Inc., et al.*, E.D. Pennsylvania (W.D. North Carolina, C.A. No. 3:98-220)

## BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, BRUCE M. SELYA,* JULIA SMITH GIBBONS, D. LOWELL JENSEN, J. FREDERICK MOTZ* AND ROBERT L. MILLER, JR., JUDGES OF THE PANEL

### SEPARATION OF CLAIMS AND REMAND ORDER

Before the Panel are two motions, pursuant to Rule 7.6(f), R.P.J.P.M.L., 199 F.R.D. 425, 438 (2001), brought by i) defendants Dow Chemical Co., Exxon Mobil Corp., and DSM Copolymer in one MDL-875 action previously transferred by the Panel under Section 1407 from the Middle District of Louisiana, and ii) defendants Fluor Daniel, Inc., Fluor Daniel Environmental Services, Inc., Fluor Daniel Services Corp., and SOS International, Inc., in two MDL-875 actions previously transferred by the Panel under Section 1407 from the Western District of North Carolina. Movants seek to vacate orders entered by the Panel in their respective action(s), pursuant to which the Panel conditionally remanded all claims in the actions except claims for punitive or exemplary damages that had previously been severed in the actions by the transferee court. Plaintiffs in each of the three actions support remand.

On the basis of the papers filed and hearing session held, the Panel finds that remand of the non-punitive/exemplary damage claims is appropriate at this time. The following quotation from an earlier Panel opinion is very instructive:

Date Docketed
AUG 2 6 2003
Notices Mailed

The Panel's Rules of Procedure provide that the Panel shall consider the question of remand on the motion of any party, on the suggestion of the transferee court or on the Panel's own initiative. Rule [7.6(c)], R.P.J.P.M.L., [199] F.R.D. [425, 437 (2001)]. In considering the question of remand, the Panel has consistently given great weight to the transferee judge's determination that remand of a particular action at a particular time is appropriate because the transferee judge, after all, supervises the day-to-day pretrial proceedings. *See, e.g., In re IBM Peripheral EDP Devices Antitrust Litigation,* 407 F. Supp. 254, 256 (J.P.M.L. 1976). The transferee judge's notice of suggestion of remand to the Panel is obviously an indication that he perceives his role under Section 1407 to have

QUESTIONS | DOCKET#

214

_____

*Judges Selya and Motz took no part in the decision of this matter with respect to the Catania action.

A TRUE COPY CERTIFIED TO FROM THE RECORD

DATED:

ATTEST:

DEPUTY CLERK, UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

- 2 -

ended. *In re Air Crash Disaster Near Dayton, Ohio, on March 9, 1967*, 386 F.Supp. 908, 909 (J.P.M.L. 1975).

*In re Holiday Magic Securities and Antitrust Litigation*, 433 F.Supp. 1125, 1126 (J.P.M.L. 1977).

In the matter now before us, the transferee judge has entered orders reflecting his determination that remand of the non-punitive/exemplary damage claims in the three actions is now appropriate. The number of Section 1407 remands in this docket is proportionately small, because under Judge Charles R. Weiner's stewardship the vast majority of transferred actions have been successfully concluded in the transferee district during the course of Section 1407 pretrial proceedings (as of July 23, 2003, over 73,500 such actions have been closed in the transferee district). This success rate makes us particularly reluctant to overrule Judge Weiner's advice when he determines, with respect to a given constituent action, that i) common pretrial proceedings have been completed, ii) resolution in the transferee district is no longer likely, and iii) remand of the action or claims therein has become the preferred course. We therefore will adopt Judge Weiner's suggestion and order remand of the suggested claims in the three actions.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, all claims in *Barbara Catantu, et al. v. ACandS, Inc., et al.*, E.D. Pennsylvania (M.D. Louisiana, C.A. No. 3:02-368) except the severed claims for punitive or exemplary damages are remanded to the Middle District of Louisiana; and all claims in *Vonnie K. Agner, et al. v. Fluor Daniel, Inc., et al.*, E.D. Pennsylvania (W.D. North Carolina, C.A. No. 3:98-138) and *Vonnie K. Agner, et al. v. Fluor Daniel, Inc., et al.*, E.D. Pennsylvania (W.D. North Carolina, C.A. No. 3:98-220) except the severed claims for punitive or exemplary damages are remanded to the Western District of North Carolina.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FILED
U.S. DIST. COURT
MIDDLE DIST. OF LA.

03 NOV 20  PM 2: 13

SIGN_____
by DEPUTY CLERK

BARBARA CATANIA, ET AL.

VERSUS

A C AND S, INC., ET AL.

CIVIL ACTION

NO. 02-368-D

### ORDER

This matter having settled after the jury had been picked and the court finding it appropriate to assess the costs of the jury;

IT IS HEREBY ORDERED that the plaintiffs be taxed with the costs of the jury in this case in the amount of $3,175.04, as reflected on the attached memorandum.

Baton Rouge, Louisiana, November 20th, 2003.

JAMES J. BRADY, DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

Date Docketed

NOV 2 0 2003

Notices Mailed To:

JDB
SE
Cnsl 19

INITIALS | DOCKET#
BS | 747

1



NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

𝔗𝔬 all to whom these presents shall come. 𝔊reeting:

virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf,

e seal of the National Archives of the United States, that the attached reproduction(s) is a true and

opy of documents in his custody.



| SIGNATURE | | |
|---|---|---|
| *Robert W Coren* | | |
| NAME | | DATE |
| Robert W. COren | | 7/22/97 |
| TITLE | | |
| Chief, NWDTC | | |
| NAME AND ADDRESS OF DEPOSITORY | | |
| The National Archives | | |
| Washington, D.C. 20408 | | |

NA FORM APR 85 1407-A





DSM
EXHIBIT
C

[illegible] will [illegible] Operator in [illegible] of any [illegible] with any item of cost as determined by Operator [illegible] thereafter will not disagree with such costs. In the event [illegible] parties hereto fail to agree on the inclusion of any item of cost, as [illegible] herein, such question shall be submitted for determination to an independent certified public accountant, approved by both parties, who shall be given access [illegible] to the applicable records and whose decision shall be conclusive upon both parties. In the event of inability of the parties hereto to agree upon the selection of such certified public accountant, either party may request the Secretary of the American Institute of Accountants to designate an independent certified public accountant, and the designation so made shall be accepted by both parties. The expense of any such submission shall be borne by the party whose contention is not sustained, or if the contention of neither party is wholly sustained, such expense shall be borne by either party, or by both parties in proportionate amounts, as shall be determined by said certified public accountant.

Section 1.2. (a) For purposes of this Section 5, the term "Contract Year" shall mean each of the several consecutive fiscal periods of twelve (12) months (or part thereof in the event of the cancellation or expiration of this contract prior to the end of any such period), the first such period commencing with the date upon which Operator shall make the first delivery of Synthetic Rubber hereunder.

[illegible] The overhead and management charge for the production in the Plant shall be an amount equal to one and one-half cents ($.015) per pound for the first fifteen thousand (15,000) long tons (a long ton comprising two thousand two hundred forty (2,240) pounds) of Synthetic Rubber produced for Reserve in any one Contract Year, one and one-quarter cents ($.0125) per pound for the second fifteen thousand (15,000) long tons in the same Contract Year, one cent ($.01) per pound for the third fifteen thousand (15,000) long tons in the same Contract Year, eighty-five one-hundredths of a cent ($.0085) per pound for the fourth fifteen thousand (15,000) long tons in the same Contract Year, and seven-tenths of a cent ($.007) per pound [illegible] in excess of sixty thousand (60,000) long tons in the [illegible] basis of weights determined in a [illegible] [illegible]



















