JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 2 4 2006

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE ASBESTOS PRODUCTS<br>LIABILITY LITIGATION (No. VI) | §<br>§<br>§<br>§ | MDL DOCKET NO. 875 |

IN UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | | |
|---|---|---|
| LEWIS A. SEYMOUR,<br>          *Plaintiff,*<br>vs.<br><br>SABERHAGEN HOLDINGS, INC., et al.,<br><br>          *Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No.<br>C05-2145 L |

IN UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | | |
|---|---|---|
| PRISCILLA ALIX, as Personal Representative<br>of the Estate of ALFREDO GREGORIO,<br><br>          *Plaintiff,*<br>vs.<br><br>SABERHAGEN HOLDINGS, INC., et al.,<br><br>          *Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No.<br>C05-2144 JLR |

**OFFICIAL FILE COPY**     ORIGINAL

**IMAGED** MAY 2 5 2006

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 2 4 2006

FILED
CLERK'S OFFICE

REPLY BRIEF IN SUPPORT OF MOTION TO VACATE THE
CONDITIONAL TRANSFER ORDER

## I.   PRELIMINARY STATEMENT

Federal jurisdiction in these cases hangs from a slender thread: defendant Elliott's allegation that it is protected by government contractor immunity pursuant to 28 U.S.C. §1442 (a)(1). That thread is about to be cut. Plaintiffs have filed summary judgment motions on Elliott's government contractor immunity defense in both matters. These motions are fully briefed, and have been pending before the United States District Court for the Western District of Washington since May 5, 2006. If the motions are granted, the federal courts will lose subject matter jurisdiction over these cases.

Plaintiffs respectfully request that their Motion to Vacate the Conditional Transfer Order be granted, as it is without opposition, or, at a minimum, that the motion be deferred until the next hearing session so that the trial court can resolve the pending summary judgment motions.

## II.  STATEMENT OF FACTS

Each plaintiff has filed a Motion for Summary Judgment and Remand with the trial court seeking summary judgment on Elliott's government contractor immunity defense. (Declaration of Glenn S. Draper in Support of Motion to Vacate Conditional Transfer Order, Exhibits 1 & 2.) These motions were noted for hearing on May 5, 2006. (Id.) If these motions are granted, the Court's subject matter jurisdiction over these matters will lost, and the cases remanded to state court.

III.   ARGUMENT

A. This Panel Should Defer Ruling on Plaintiff's Motion to Vacate or
Grant the Motion and Vacate the Conditional Transfer Order.

District court judges retain their jurisdiction to decide pre-trial matters such as

summary judgment where, as here, a party has timely filed its motion to vacate.  See

Faulk, et al. v. Owens-Corning Fiberglass Corp., et al., 48 F.Supp.2d 653, 657 (E.D. Tex.

1999); See Panel Rule 1.5, 181 F.R.D. 1,3 (1998); See also Bartley, et al. v. Borden, Inc.,

et al., 1996 WL 68482 (E.D. La. 1996)(citing Panel Rule 18 which states that the

pendency of a conditional transfer order "does not affect or suspend orders and pretrial

proceedings in the district court in which the action is pending and does not in any way

limit the pretrial jurisdiction of that court.")   The Panel should defer ruling on Plaintiffs'

Motion to Vacate the Conditional Transfer Order until the district court judges have had

an opportunity to rule on the pending summary judgment motions.  If the motions are

granted, the federal courts will no longer have subject matter jurisdiction over these

cases, and they can be remanded to state court.

/

/

/

/

/

/

/

/

3

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 2 4 2006

FILED
CLERK'S OFFICE

IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Panel vacate CTO-258, its order conditionally transferring these cases to MDL, so that these cases can proceed to trial in a timely fashion.

Respectfully Submitted,

Matthew P. Bergman, WSBA #20894
Glenn S. Draper, WSBA #24419
BERGMAN & FROCKT
705 Second Ave., Suite 1601
Seattle, WA  98104
(206) 957-9510
(206) 957-9549 fax
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2006, a true and correct copy of the foregoing Reply Brief in Support of Plaintiffs' Motion to Vacate the Conditional Transfer Order was mailed, postage pre-paid to each of the attorneys listed on the attached Attorney Service List of the Judicial Panel on Multidistrict Litigation, in addition to the counsel listed below.

**COUNSEL FOR KELLY-MOORE PAINT COMPANY**
Sharon Ambrosia-Walt
PREG O'DONNELL & GILLETT, PLLC
1800 – 9th Avenue #1500
Seattle, WA  98101
(206) 287-1775
(206) 287-9113 (facsimile)

/s/ Glenn S Draper
Glenn S Draper

**PANEL SERVICE LIST (Excerpted from CTO-258)**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

*Priscilla Alix, etc. v. Saberhagen Holdings, Inc., et al.,* W.D. Washington, C.A. No. 2:05-2144
*Lewis A. Seymour v. Saberhagen Holdings, Inc., et al.,* W.D. Washington, C.A. No. 2:05-2145

R. Dirk Bernhardt
Murray, Dunham & Murray
2225 4th Ave
Ste 200
Seattle, WA 98121

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Bruce D. Campbell
Perkins Coie, LLP
1201 Third Avenue
40th Floor
Seattle, WA 98101

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001

David A. Damico
Burns, White & Hickton, LLC
Four Northshore Center
106 Isabella St.
Pittsburgh, PA 15212

Christine E. Dinsdale
Soha & Lang, PS
701 Fifth Avenue
Suite 2400
Seattle, WA 98104

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106-2574

Carl E. Forsberg
Forsberg & Umlauf
900 4th Avenue
Suite 1700
Seattle, WA 98164-1039

David S. Frockt
Bergman & Frockt
705 Second Avenue
Suite 1601
Seattle, WA 98104

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Ronald C. Gardner
Gardner, Bond, Trabolsi, McDonald
 & Clement
2200 Sixth Avenue
Suite 600
Seattle, WA 98121

E. Pennock Gheen
Bullivant, Houser, Bailey, et al.
2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101

Susan M. Hansen
Brownson & Ballou
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

James E. Horne
Kingman, Peabody, Pierson
 & Fitzharris
505 Madison Street
Suite 300
Seattle, WA 98104-1138

Mick A. Jaeger
Wilson, Smith, Cochran & Dickerson
1215 Fourth Avenue, 17th Floor
Seattle, WA 98161-1007

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308-1314

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102

Christopher S. Marks
Williams, Kastner & Gibbs
P.O. Box 21926
Seattle, WA 98111-3926

John Michael Mattingly
Steven Rizzo, PC
Lincoln Place, Suite 350
1620 S.W. Taylor Street
Portland, OR 97205

Ronald L. Motley
Motley Rice, LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29465

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
Roven-Kaplan, LLP
2190 North Loop West
Suite 410
Houston, TX 77018

PANEL SERVICE LIST (Excerpted from CTO-258) - MDL-875                    PAGE 2 of 2

Jackson Schmidt
Pepple, Johnson,Cantu & Schmidt
1218 3rd Ave., Suite 1900
Seattle, WA 98104

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

G. William Shaw
Preston, Gates & Ellis, LLP
925 Fourth Avenue
Suite 2900
Seattle, WA 98104-1158

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA 19102

Katherine M. Steele
Stafford, Frey & Cooper, PC
601 Union Street
3100 Two Union Square
Seattle, WA 98101

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1570 Penobscot Building
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226

Timothy Kost Thorson
Carney Badley Spellman
701 Fifth Avenue
Suite 3600
Seattle, WA 98104-7010

Andrew J. Trevelise
Reed Smith, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Mark B. Tuvim
Corr Cronin Michelson Baumgardner
 & Preece
1001 4th Avenue
Ste. 3900
Seattle, WA 98154-1051

James K. Weston II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 2 4 2006

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE ASBESTOS PRODUCTS<br>LIABILITY LITIGATION (No. VI) | §<br>§<br>§<br>§ | MDL DOCKET NO. 875 |

IN UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | | |
|---|---|---|
| LEWIS A. SEYMOUR,<br>              *Plaintiff*,<br>vs.<br>SABERHAGEN HOLDINGS, INC., et al.,<br>              *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No.<br>C05-2145 L |

IN UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | | |
|---|---|---|
| PRISCILLA ALIX, as Personal Representative<br>of the Estate of ALFREDO GREGORIO,<br><br>              *Plaintiff*,<br>vs.<br>SABERHAGEN HOLDINGS, INC., et al.,<br><br>              *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No.<br>C05-2144 JLR |

**ORIGINAL**

1

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 24 2006

FILED
CLERK'S OFFICE

DECLARATION OF GLENN S. DRAPER IN SUPPORT OF PLAINTIFFS' MOTION
TO VACATE CONDITIONAL TRANSFER ORDER

I, Glenn S. Draper, declare and state as follows:

1.      I am one of the attorneys representing plaintiff in the above captioned
case.  I make this statement based on personal knowledge.

2.      Exhibit 1 attached hereto is a true and correct copy of Plaintiffs' Motion
for Summary Judgment and Remand in the <u>Seymour v. Saberhagen</u> et al., Cause No.
C05-2145 JCC, currently pending in the United States District Court for the western
District of Washington.

3.      Exhibit 2 attached hereto is a true and correct copy of Plaintiffs' Motion
for Summary Judgment and Remand in the <u>Alix v. Saberhagen</u> et al., Cause No. C05-
2144 JLR, currently pending in the United States District Court for the western District of
Washington.

4.      Briefing on both of these motions have been completed and the motions
pending before their respective judges since May 5, 2006.

DATED at Seattle, Washington this 23rd day of May, 2006.

Glenn S. Draper, WSBA #24419
Bergman & Frockt
705 Second Avenue, Suite 1601
Seattle, WA  98104
Telephone:     (206) 957-9510
Fax:            (206) 957-9549
E-mail: glenn@bergmanlegal.com

2

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 2 4 2006

FILED
CLERK'S OFFICE

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2006, a true and correct copy of the foregoing Declaration of Glenn S. Draper in Support of Plaintiffs' Motion to Vacate the Conditional Transfer Order was mailed, postage pre-paid to each of the attorneys listed on the attached Attorney Service List of the Judicial Panel on Multidistrict Litigation, in addition to the counsel listed below.

**COUNSEL FOR KELLY-MOORE PAINT COMPANY**
Sharon Ambrosia-Walt
PREG O'DONNELL & GILLETT, PLLC
1800 – 9th Avenue #1500
Seattle, WA  98101
(206) 287-1775
(206) 287-9113 (facsimile)

/s/ Glenn S. Draper
Glenn S Draper

**PANEL SERVICE LIST (Excerpted from CTO-258)**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

*Priscilla Alix, etc. v. Saberhagen Holdings, Inc., et al.,* W.D. Washington, C.A. No. 2:05-2144
*Lewis A. Seymour v. Saberhagen Holdings, Inc., et al.,* W.D. Washington. C.A. No. 2:05-2145

R. Dirk Bernhardt
Murray, Dunham & Murray
2225 4th Ave
Ste 200
Seattle, WA 98121

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Bruce D. Campbell
Perkins Coie, LLP
1201 Third Avenue
40th Floor
Seattle, WA 98101

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001

David A. Damico
Burns, White & Hickton, LLC
Four Northshore Center
106 Isabella St.
Pittsburgh, PA 15212

Christine E. Dinsdale
Soha & Lang, PS
701 Fifth Avenue
Suite 2400
Seattle, WA 98104

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106-2574

Carl E. Forsberg
Forsberg & Umlauf
900 4th Avenue
Suite 1700
Seattle, WA 98164-1039

David S. Frockt
Bergman & Frockt
705 Second Avenue
Suite 1601
Seattle, WA 98104

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Ronald C. Gardner
Gardner, Bond, Trabolsi, McDonald
 & Clement
2200 Sixth Avenue
Suite 600
Seattle, WA 98121

E. Pennock Gheen
Bullivant, Houser, Bailey, et al.
2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101

Susan M. Hansen
Brownson & Ballou
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

James E. Horne
Kingman, Peabody, Pierson
 & Fitzharris
505 Madison Street
Suite 300
Seattle, WA 98104-1138

Mick A. Jaeger
Wilson, Smith, Cochran & Dickerson
1215 Fourth Avenue, 17th Floor
Seattle, WA 98161-1007

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308-1314

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102

Christopher S. Marks
Williams, Kastner & Gibbs
P.O. Box 21926
Seattle, WA 98111-3926

John Michael Mattingly
Steven Rizzo, PC
Lincoln Place, Suite 350
1620 S.W. Taylor Street
Portland, OR 97205

Ronald L. Motley
Motley Rice, LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29465

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
Roven-Kaplan, LLP
2190 North Loop West
Suite 410
Houston, TX 77018

PANEL SERVICE LIST (Excerpted from CTO-258) - MDL-875                    PAGE 2 of 2

Jackson Schmidt
Pepple. Johnson,Cantu & Schmidt
1218 3rd Ave., Suite 1900
Seattle, WA 98104

Richard D. Schuster
Vorys, Sater, Seymour & Pease. LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

G. William Shaw
Preston, Gates & Ellis. LLP
925 Fourth Avenue
Suite 2900
Seattle, WA 98104-1158

Robert N. Spinelli
Kelley. Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA 19102

Katherine M. Steele
Stafford, Frey & Cooper. PC
601 Union Street
3100 Two Union Square
Seattle. WA 98101

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1570 Penobscot Building
The Maritime Asbestosis Legal Clinic
Detroit. MI 48226

Timothy Kost Thorson
Carney Badley Spellman
701 Fifth Avenue
Suite 3600
Seattle, WA 98104-7010

Andrew J. Trevelise
Reed Smith, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Mark B. Tuvim
Corr Cronin Michelson Baumgardner
 & Preece
1001 4th Avenue
Ste. 3900
Seattle, WA 98154-1051

James K. Weston II
Tom Riley Law Firm
4040 First Avenue. N.E.
P.O. Box 998
Cedar Rapids. IA 52406

THE HONORABLE JOHN C. COUGHENOUR

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 2 4 2006

FILED
CLERK'S OFFICE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LEWIS A. SEYMOUR. | NO.  C05-2145 JCC |
| Plaintiff. | PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMAND |
| v. | |
| SABERHAGEN HOLDINGS, INC., et al.. | **Note on Motion Calendar** **May 5, 2006** |
| Defendants. | ORAL ARGUMENT REQUESTED |

### I.    INTRODUCTION

This motion is brought to dismiss an affirmative defense asserted by defendant Elliott

Company ("Elliott"). That defense—the government contractor's defense—is the sole basis of

this Court's alleged federal jurisdiction in what is an otherwise standard, routine, and

unremarkable state-law tort case arising from Plaintiff's asbestos exposure and disease. Elliott

bears the burden of proof on this affirmative defense. For the reasons stated below, Elliott has

not and cannot meet its burden of proof on essential elements of this defense. As a result, the

defense—the sole basis for this case being removed to federal court—should be dismissed, and

this case should then be remanded to King County Superior Court in Washington for resolution.

**EXHIBIT** ___/___

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
REMAND - 1
CO5-2145 JCC
S Clients Clients_S SEYMOUR. Lewis Seymour, Pleadings Seymour, Federal Pleadings Seymour, PLD_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

## II.   STATEMENT OF FACTS

For several months now in Washington State, Elliott has been engaged in what appears to be a blanket policy of removing all asbestos cases where the plaintiff has encountered (or, indeed, may have encountered) a naval vessel, irrespective of the actual factual scenario governing the particular plaintiffs' work histories and exposure. Plaintiff's counsel is aware of at least seven cases in the past six to eight months where Elliott has removed asbestos cases from Washington state courts to federal court on the sole basis of the "government contractor's defense," 28 U.S.C. §1442(a)(1), as articulated in <u>Boyle v. United Technologies Corp.</u>, 487 U.S. 500 (1988).[1] In each of these cases, Elliott has filed substantially similar notices of removal with recycled supporting materials. The declarations submitted by Elliott with its notice of removal in each case are the same.[2] The documentary support for removal in each case is the same.[3] In fact, the notices of removal themselves are largely identical, save for the captions, names of the plaintiffs, and other minor plaintiff-specific details immaterial to the disposition of the government contractor's defense.

The work sites, occupations, timelines, and interaction with Elliott products among the plaintiffs are not identical in any of the cases Elliott has removed. In terms of plaintiffs' interactions with Elliott products, each case is unique and requires discreet, separate analysis.

This case was filed against Elliott in King County Superior Court on November 21,

---

[1] Those cases are <u>Denny v. Goulds Pumps, et. al</u>, No. 2:05-cv-1876; <u>Anderson v. Saberhagen Holdings, Inc.</u>, at al, No. C05-1929JLR; <u>McAboy v. IMO Industries</u>, et al,, No. C05-1241L; <u>Sweeney v. Saberhagen Holdings, Inc.</u>, et al, No. C05-1637Z; <u>Seymour v. Saberhagen Holdings, Inc.</u>, et al., No. C05-2145JCC; and <u>Alix v. Saberhagen Holdings, Inc.</u>, et al., No. C05-2144JLR.

[2] In fact, the Declarations of Tom Keenan, Ross Hackel, and Admiral Lehman appear to be filed in all cases; Elliott has only more recently filed the affidavit of Lawrence Betts. In this case, Elliott has withdrawn Betts and his affidavit.

[3] The documents Elliott has submitted in support of its notices of removal in these cases are found attached to the Declaration of Ross Hackel, in this case at Exhibits B-F.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
REMAND - 2
CO5-2145 JCC
S:\Clients\Clients_SSEYMOUR, Lewis\Seymour\L_Pleadings\Seymour\L_Federal Pleadings\Seymour\L_PLD_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1    2005.[4]  Elliott was served with the complaint in this matter on November 23, 2005.[5]  Elliott filed

2    its Notice of Removal on December 29. 2005.[6]  In its notice of removal, Elliott alleged federal

3    officer removal jurisdiction under 28 U.S.C. §1442(a)(1).  In support of its notice of removal,

4    Elliott counsel Catherine Jeannotte provided the Court declarations from four witnesses:  former

5    Elliott employee Ross Hackel: former Elliott employee Thomas J. Keenan; Retired Admiral Ben

6    J. Lehman, and retired Naval industrial hygienist Lawrence Stillwell Betts.[7]

7         Plaintiff requested depositions of all four.  After removal, Plaintiff deposed Ross Hackel,

8    Thomas Keenan, and Admiral Lehman.[8]  The testimony of all three indicates, without exception,

9    that Elliott does not possess the evidence required to establish the Boyle elements of the

10   government contractor's defense.

11       a.    **Ross Hackel**

12        Ross Hackel worked as an engineer for Elliott from 1960 to 2000; prior to joining Elliott,

13   he worked for Elliott's corporate parent Carrier Corporation from 1957 to 1960.[9]  He still has an

14   office at Elliott, though he retired from active work in his field with Elliott in 2000.  Mr. Hackel

15   is not an attorney and never has been, according to his C.V.[10]  Nonetheless, his office at Elliott is

16   located in the legal department.[11]

17        Plaintiff's counsel deposed Mr. Hackel on January 25, 2006 in Greensburg.

18   Pennsylvania.  Mr. Hackel's testimony consistently undermines Elliott's asserted government

19

20   [4] Declaration of Brian F. Ladenburg in Support of Plaintiff's Motion to Remand ("Ladenburg Dec."), Ex. 1.
     [5] Declaration of Catherine E. Jeannotte in Support of Elliott Company's Notice of Removal ("Jeannotte Dec."), Ex.

21   1.
     [6] Ladenburg Dec., Ex. 2.
     [7] Jeannotte Dec., Exs. 3-6.

22   [8] Elliott did not produce Lawrence Betts for deposition; rather, Elliott withdrew the Betts declaration in support of
     its remand. Ladenburg Dec., Ex. 4.

23   [9] Declaration of Ross Hackel ("Hackel Dec."), Ex. 1 (attached as Exhibit 3 to the Jeannotte Dec.)
     [10] Hackel Dec., Ex. 1.
     [11] Deposition of Ross Hackel, dated January 25, 2006 ("Hackel Dep."), Ladenburg Dec., Ex. 3, at 9; 7-14.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
REMAND - 3
CO5-2145 JCC
S:\Client\Clients_S.SEYMOUR, Lewis\Seymour\_Pleadings\Seymour\_Federal Pleadings\Seymour\_PLD_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1  contractor defense.  Mr. Hackel lacks any concrete, personal knowledge of government-

2  mandated contractual specifications on warnings issued to Elliott for work Elliott did for the

3  Navy:

> Q:     Do you have knowledge, Mr. Hackel, of any instance where Elliott
> Company ever asked the navy for permission to put a caution or warning
> label on its equipment that was being sold to the navy?
> A:     I'm not aware of any.
> Q:     Do you have knowledge of any instance where any other
> equipment manufacturer or supplier to the navy of equipment requested
> permission to place a caution or warning on the equipment that was being
> sold to the navy?
> A:     Relative to asbestos or just general?
> Q:     Well, let's talk first with regard to asbestos.
> A:     Not that I'm aware of as far as asbestos goes.
> Q:     It is your opinion that had Elliott requested permission to put a
> caution or warning on equipment it was selling to the navy with regard to
> asbestos, that the navy would not have granted permission, is that your
> opinion?
> A:     I think that would be the case, probably.  **It's a guess.**
> …
> Q:     I take it, Mr. Hackel, that you are not aware of the existence of any
> Navy or other government specification that says specifically that no
> caution or warning labels shall be used on Elliott equipment with regard to
> asbestos?
> Mr. Forsberg:  Object to the form.
> A:     I'm not aware—I'm not aware of any.[12]

### b.     Thomas Keenan

The other former Elliott employee who authored a declaration to support this removal is

no more knowledgeable.  Thomas Keenan worked for Elliott from 1965-2004 as a product

engineer, program manager, manager of projects and systems engineering, and manager of

assembly and test operations.  He testified to a similar lack of knowledge of any naval

specification that would have prohibited Elliott from warning about the dangers of the asbestos-

containing material in its products:

---

[12] Hackel Dep., at 12:16-13:12, and 62:5-11 (emphasis added).

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

Q:     Are you aware, Mr. Keenan, of the existence of any navy or
government specification that would have—that specifically said that
Elliott would not be permitted to put warnings or cautions on equipment
that Elliott was manufacturing and selling to the Navy and I'm talking
about warnings or cautions concerning asbestos?
A:     Did you say specifications?
Q:     Any specification. any—yeah, specifications.
A:     No.
Q:     Are you aware of any rule or regulation that specifically said that
Elliott would not be permitted to put warnings or cautions on equipment
that Elliott manufactured and sold to the navy?
A:     Not a specification or regulation.
Q:     Are you aware of **anything in writing** that forbade Elliott from
putting an asbestos caution or warning on equipment that it was
manufacturing and selling to the navy?
A:     No.
Q:     Are you aware of whether Elliott ever approached the Navy or any
Navy representative and asked permission to put an asbestos caution or
warning on any equipment manufactured by Elliott and sold to the Navy?
A:     I'm not aware of any.[13]

c.     **Admiral Ben Lehman (Ret.)**

Elliott's third and final removal witness is retired Admiral Ben J. Lehman, a former

Naval officer. The affidavit Admiral Lehman submitted with this notice of removal is dated

August 8, 2005, and it has been submitted verbatim and identically in most or all of the cases

Elliott has removed from Washington state courts in the past year.[14]  It does not discuss any

specific manufacturer's products or any specific manufacturer's interaction with the Navy.

Elliott is <u>not</u> mentioned once in the affidavit; nor is there any discussion of Elliott's products,

naval specifications for Elliot products. or Elliott's interactions and dealings with the Navy on

any projects whatsoever.   The affidavit cites no specific instance where the Navy ever refused to

---

[13] Deposition of Thomas Keenan ("Keenan Dep."), Ladenburg Dec., Ex. 6. at 7:24-9:1 (emphasis added).
[14] In fact, the "Lehman Affidavit" appears to be in wide circulation, since it was quoted with identical language by
the Court in New York considering a motion to remand in the case of <u>Neisbet v. General Electric Co.</u>, 2005 WL
697966 (S.D.N.Y 2005).  This opinion can be found as Exhibit. 2 to the December 28, 2005 Declaration of
Catherine E. Jeannotte submitted in Support of Elliott's Notice of Removal. It is worth noting that the quoted
portions of the Lehman Affidavit submitted in the New York case are, word for word. identical to the language in
his affidavit here.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
REMAND - 5
CO5-2145 JCC
> Chens Chens_SSEYMOUR_Lewis Seymour_Pleadings Seymour_Federal Pleadings Seymour_PLD_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1   permit a contractor to place a warning on its naval equipment. The affidavit is replete with

2   sweeping generalities, but totally devoid of a concrete, factual foundation of any sort—

3   particularly with respect to Elliott and Elliott's work with the Navy.

4            Admiral Lehman was deposed after he prepared his affidavit, in an effort to ascertain just

5   what exactly it was he did know specifically about Elliott. At the time of his deposition, he knew

6   nothing about Elliott's interaction with the Navy on Elliott contracts. Admiral Lehman made

7   clear that he had not been given sufficient information to form any opinions whatsoever specific

8   to Elliott. Prior to the deposition, he had only been provided with the Plaintiff's deposition

9   transcript and the materials Elliott submitted with its notice of removal.  These materials did not

10  enable him to testify meaningfully.  He appeared to be somewhat agitated, and less than fully

11  amused with the situation:

12           Q:     Now, other than the documents that you have just gone through
                 [Plaintiff's deposition and Elliott's removal materials], which I believe
13               were supplied to you by counsel for Elliott: is that correct?
                 A:     That's correct.
14           Q:     Did you review any other materials specifically with regard to
                 giving your deposition today?
15           A:     Not that I can recall. I have a great many materials, but I don't
                 recall reviewing anything with regard to this deposition.
16           Q:     Have you prepared any written report in connection with your
                 work in this case?
17           A:     No, none has been requested.
                 Q:     Have you spoken with any employees, current or former
18               employees of Elliott Company, in connection with this case?
                 A:     No.
19           Q:     Can you remember any time any specific Elliott employee with
                 whom you have had conversations about anything?
20           A:     No.
                 Q:     Have you been asked to form any opinions with regard to any
21               aspect of this particular case?
                 A:     I was asked if I had been able to form any opinions.
22           Q:     And who asked you if you had been able to form  any opinions?
                 A:     Miss Habeck.
23           Q:     Okay. And what was your answer to Ms. Habeck when she asked
                 you if you had been able to form any opinions in connection with this

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
REMAND - 6
CO5-2145 JCC
S Clients-Clients_S\SEYMOUR, Lewis\Seymour\L_Pleadings\Seymour\L_Federal Pleadings\Seymour\L_PLD_MS.LindRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1    case?
     A:      **My answer was that I had not been able to form any opinions**
2    **because I had insufficient information.**
     Q:      What information did you feel you would require in order to form
3    opinions in connection with this case?
     A:      I have no idea where the plaintiff, Leo Hickman Sweeney, was
4    actually located, what he was on, what ships he was on, who his
     employers were. All of these things would have to do with my opinions, I
5    think. with regard to Mr. Sweeney and Elliott's position, and I don't have
     any of that information.[15]
6

7          Admiral Lehman knew nothing more than Keenan and Hackel with respect to Navy

8    specifications on warning labels for asbestos products:

9          Q:      Now, to your knowledge, sir, are there any military, federal
           government, specifications that expressly prohibit the putting of a label on
10         equipment to be used aboard ship which contains language about asbestos
           being potentially harmful to the health and precautionary measures to be
11         taken to eliminate or minimize the risk of exposure to asbestos?
           MS. HABECK:         Objection to form. overbroad. vague as to time. Go
12         ahead.
            THE WITNESS:        The question is, do I know of any specific
13         prohibition about doing something?
           BY MR. METCALF:
14         Q:      Correct.
           A:      No. There are many things that could be prohibited. certainly, that
15         could be prohibited, **but it's not and never has been.**
           Q:      Now. do you know of any specific instance when  a manufacturer
16         of equipment to be used aboard a Navy vessel went to the Navy and asked
           for permission to put an asbestos warning label on a piece of equipment
17         and the Navy refused that permission?
           MS. HABECK:         Objection to the form, vague, overbroad.  Go ahead.
18         THE WITNESS:        **I cannot think of any such instance being**
           **recorded in any document that I have ever  read.**
19         BY MR. METCALF:
           Q:      Do you know the name of anybody in the United States Navy who
20         refused an equipment manufacturer's request to place a warning label
           concerning asbestos on equipment that was to be installed in a Navy ship?
21         MS. HABECK: Objection to the form. overbroad, vague.
           THE WITNESS: No. I do not know that.  I have **never, never** had
22         occasion to query Naval officers who were on active duty during the
           periods I think are in question, whether anybody had ever made such
23

[15] Deposition of Admiral Ben Lehman ("Lehman Dep."), Ladenburg Dec., Ex. 7, at 14:6-15:20 (emphasis added).
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
REMAND - 7
CO5-2145 JCC
S Clent:Chem_S SEYMOUR, Lewis Seymour1. Pleadings:Seymour1, Federal Pleadings:Seymour1, PLD_MSlandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1    request.[16]

2

3        **d.    Plaintiff's Work History**

4        Plaintiff Lewis Seymour was exposed to asbestos during his work in the Navy and as an

5    electronic mechanic and boiler operator in the merchant marines from 1961 to 1989.[17]  He

6    worked at various locations while in the Navy, including Great Lakes, IL; Key West, FL,

7    Argentina, New London, CT, Norfolk, VA, and Portsmouth, VA.  During this time, he served

8    aboard the USS Argonaut.. He also served aboard many ships in the Merchant Marines from

9    1969 to 1989, at locations all over the world.  During the course of his work, he had occasion to

10   work aboard various ships, including but not limited to the SS Halaula Victory, the SS Overseas

11   Daphne, the SS Transeastern, the SS Commander, the SS Jefferson Davis, the SS Seatrain New

12   Jersey, the SS Mobilian, the SS Penny, the SS Overseas Arctic, the SS Sealand Economy  &

13   Consumer, the SS Ogden, the SS Charger, and the SS Ocean Wizard.[18]

         **e.    Status of Elliott's Removal Evidence**

14       In its notice of removal, Elliott has not produced <u>one</u> document related to any of the

15   above ships:  not one contract, specification, purchase order, bill of material, drawing, invoice,

16   letter, or other written documentation of Elliott's interaction with the Navy.[19]  The documents

17   Elliott has submitted with its notice of removal consist of:

18            1.      a 1954 Naval "General Specification for Ships"
19            2.      a 1951 excerpt from the Navy's "General Specifications for
                      Machinery for Vessels of the United States Navy";
20            3.      a Special Engineering Instruction Bill of Material from 1943 for
                      deaerators on Navy vessels:
21            4.      a 1944 Elliott purchase order for gaskets to be shipped to the Navy

22   ---

[16] Lehman Dep., at 22:22-24:10 (emphasis added)..
[17] Ladenburg Dec., Ex. 5.
23   [18] Mr. Seymour's work history is attached as Appendix A to Plaintiff's Answers to Style Interrogatories, Ladenburg Dec., Ex. 5.
[19] See generally, Jeannotte Dec., and attachments thereto.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
REMAND - 8
CO5-2145 JCC
S:\Clients\Clients_9.SEYMOUR. Lewis\Seymourl._Pleadings\Seymourl._Federal Pleadings\Seymourl._PLD_MS\JudRem nd.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1    yard in New York; and

5.    a 1942 order record for deaerating heaters sold the Navy.[20]

2

3    The most recent of these documents is dated a 7 years before Plaintiff commenced work

4    in the Navy, and 44 years before Plaintiff retired from the Merchant Marines.  None of these

5    documents mention or appear connected in any way whatsoever with the ships Plaintiff is known

6    to have worked aboard.  None of these documents mentions or addresses in any way whether it is

7    permissible or not for Elliott to place warnings on its asbestos-containing products.  So far as is

8    evident from the face of these documents, none of them have any connection whatsoever to the

9    facts of this case.

10                    III.    STATEMENT OF ISSUES

11    1.    Whether defendant Elliott Company's "Government Contractor Defense" should

12          be dismissed pursuant to Fed. R. Civ. P. 56, when Elliott cannot produce evidence

13          to meet its burden to sustain all essential elements of the defense?  Answer: Yes.

14    2.    Whether this case should be remanded to state Court for lack of jurisdiction.

15          Answer: Yes.

16                    IV.    EVIDENCE RELIED ON

17    Plaintiff relies on the December 28. 2005 Declaration of Catherine E. Jeannotte. and the

18    April 13, 2006 Declaration of Brian F. Ladenburg. and all exhibits thereto.

19                    V.    ARGUMENT

20    A. Summary Judgment Standard and Elliott's Burden of Proof

21    It In Celotex v. Catrett Corp., 477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986), the

22    United States Supreme Court clarified the standard for summary judgment in a case where a

23

---

[20] Hackel Dec., Exs. B-F.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
REMAND - 9
CO5-2145 JCC
S:\Clients\Clients_S.SEYMOUR, Lewis\Seymour\_Pleadings\Seymour\_Federal Pleadings\Seymour\_PLD_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1  party (like Elliott here) has no evidence to support an essential element of a claim on which that

2  party bears the burden of proof at trial.  The Court explained:

3
> Under Rule 56(c). summary judgment is proper "if the pleadings,
> depositions, answers to interrogatories, and admissions on file, together
4
> with the affidavits, if any, show that there is no genuine issue as to any
> material fact and that the moving party is entitled to a judgment as a
5
> matter of law." In our view, the plain language of Rule 56(c) **mandates
> the entry of summary judgment, after adequate time for discovery and
6
> upon motion, against a party who fails to make a showing sufficient to
> establish the existence of an element essential to that party's case, and
7
> on which that party will bear the burden of proof at trial.** In such a
> situation there can be "no genuine issue as to any material fact," since a
8
> complete failure of proof concerning an essential element of the
> nonmoving party's case necessarily renders all other facts immaterial. The
9
> moving party is "entitled to a judgment as a matter of law" because the
> nonmoving party has failed to make a sufficient showing on an essential
10
> element of her case with respect to which she has the burden of proof.

11  Celotex, 477 U.S., at 322-23 (emphasis added).  The Court rejected arguments that before such a

12  dismissal would be appropriate, the moving party would have to meet an initial burden

13  evidentiary burden to show the absence of genuine issues of material fact as to such elements of

14  the non-moving party's case.  Id.

15      In the present case, Elliott has removed this case from state court on the sole basis of the

16  "federal officer removal" statute, which states in relevant part:

17
> (a) A civil action or criminal prosecution commenced in a State court against any
> of the following may be removed by them to the district court of the United States
18
> for the district and division embracing the place wherein it is pending:

19
> (1) The United States or any agency thereof or any officer (or any person acting
> under that officer) of the United States or of any agency thereof, sued in an
20
> official or individual capacity for any act under color of such office or on account
> of any right. title or authority claimed under any Act of Congress for the
21
> apprehension or punishment of criminals or the collection of the revenue.

22  28 U.S.C. §1442(a)(1).  To prevail, a defendant in a state criminal or civil court must (1)

23  establish that it is acting under a federal officer; (2) establish that he was acting under color of

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
REMAND - 10
CO5-2145 JCC
S :Clients\Clients_S.SEYMOUR. Lewis\Seymour,l_Pleadings\Seymour,_Federal Pleadings\Seymour,l_PLD_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1  that officer's authority when engaged in the conduct at issue; and (3) raise a colorable federal

2  defense.

3       With respect to the third prong of the above. Elliott's "colorable federal defense" is the

4  "government contractor's defense" as set forth by the Supreme Court in Boyle v. United

5  Technologies Corp., 487 U.S. 500. 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). The government

6  contractor's defense is an affirmative defense. and it is Elliott's burden to establish the defense.

7  Snell v. Bell Helicopter Textron, Inc., 107 F.3d. 744, 749, (9th Cir. 1997); see also McKay v.

8  Rockwell Int'l Corp., 704 F.2d 444, 453 (9th Cir. 1983). Should Elliott be unable to come

9  forward with evidence to support essential elements of this defense, the defense must be

10  dismissed per Celotex.

11       The government contractor defense arises from the "significant conflict" that may arise

12  when duties imposed by state tort law and duties imposed by government contracts directly

13  conflict. Boyle., at 507. Under Boyle. a federal contractor is entitled to a federal, common-law

14  defense to state tort claims when it can establish (1) that the United States approved reasonably

15  precise specifications for the product or equipment at issue; (2) that the equipment furnished

16  conformed to those specifications; and (3) that it warned the United States about the dangers in

17  the use of the equipment that were known to the contractor but not to the United States. Butler v.

18  Ingalls Shipbuilding, Inc., 89 F.3d 582, 584 (9th Cir. 1996). "The first two elements of the

19  defense are intended to ensure that it is indeed a discretionary decision on the part of the

20  government that is being immunized. The third is intended to ensure that the contractor has fully

21  conveyed all information necessary to allow the government to make a fully informed decision."

22  Id.

23

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
REMAND - 11
CO5-2145 JCC
S:\Client\Chens_S.SEYMOUR. Lewis Seymour._Pleadings\Seymour._Federal Pleadings\Seymour._PLD_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

**B. Because Elliott Lacks Evidence to Support All Three Elements of the Government Contractor's Defense, The Defense Should Be Dismissed.**

Under Boyle, a contractor is entitled to a federal, common-law defense to state tort claims when it can establish (1) that the United States approved reasonably precise specifications for the product or equipment at issue; (2) that the equipment furnished conformed to those specifications; and (3) that it warned the United States about the dangers in the use of the equipment that were known to the contractor but not to the United States. Butler v. Ingalls Shipbuilding, Inc., 89 F.3d 582, 584 (9th Cir. 1996). Elliott has failed to establish, and cannot establish, even one of the three elements required for to prevail on this defense.

    i.    **Elliott Cannot Show and Has Not Shown It Supplied Products Pursuant to Reasonably Precise Specifications.**

Elliott has not supplied the Court with even a single Naval specification for Elliott products shipped to Naval vessels where Plaintiff served between 1961 and 1966.[21]   Elliott has not supplied the Court with a single Naval specification for Elliott products installed aboard any of the vessels that Plaintiff is known to have worked on. Elliott has not identified which, if any, of its products (deaerator, pump, or turbine, for example) it claims was manufactured, shipped, or installed pursuant to reasonably precise Naval specifications, and how the specification required Elliott to ship its product with deadly and toxic asbestos fibers without so much as a warning—contrary to state tort law. Elliott must come forward with something in the form of evidence to support this element of its defense. In its Notice of Removal and supporting materials, Elliott has completely failed to do so.

---

[21] In fact, at this point, Elliott has not even informed the Court exactly what these products are (turbines, deaerators, heaters, motors, etc.). Of course, Elliott has a vested interest in not disclosing in court where it shipped its asbestos-containing products and when; nonetheless, its reticence to prepare and submit admissions under oath in court that potentially jeopardize its liability defenses are tactical decisions that do not relieve Elliott of the burden to establish jurisdiction on the stated basis with factual support—even if doing so undermines Elliott's defense on the merits.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
REMAND - 12
CO5-2145 JCC
S:\Clients\Clients_S SEYMOUR, Lewis\Seymour,L_Pleadings\Seymour,L_Federal Pleadings\Seymour,L_PLD_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1    The two Naval specifications Elliott has submitted appear to be factually unrelated to this

2    case and do not establish the requisite degree of specificity. Both specifications are "General,"

3    both in their title and in their application. Neither deals with specific products, or with specific

4    ships; rather, both merely set forth general standards for all Naval contractors (presumably to

5    include Elliott). "When only minimal or very general requirements are set for the contractor by

6    the United States, the [government contractor defense] is inapplicable. The situation is different

7    where the U.S. reviewed and approved a detailed set of specifications." McKay v. Rockwell

8    Int'l Corp., 704 F.2d 444, 451 (5th Cir. 1983) cert. denied 464 U.S. 1043, 104 S.Ct. 711, 79 L.

9    Ed.2d 175 (1984). General requirements issued for all Naval ships (like those Elliott has relied

10   on here) will not suffice. Trevino v. General Dynamics Corp., 865 F.2d 1474 (5th Cir.) cert.

11   denied, 493 U.S. 935, 110 S.Ct. 327, 107 L. Ed.2d 317 (1989). Rather, at least in the Ninth

12   Circuit, there should typically be a "back and forth dialogue culminating in approval" and a

13   "continuous exchange between the contractor and the government" to satisfy Boyle's first test.

14   Butler v. Ingalls Shipbuilding, 89 F.3d 582, 585-86 (9th Cir. 1996). Elliott has made no such

15   specific, detailed, and concrete showing of governmental control and involvement with any

16   products it shipped to Plaintiff's workplace or placed aboard ships he worked on there. Elliott

17   has completely failed to offer evidence of a specification, regulation, statute, code, or industry

18   standard from the Navy that directed Elliott to do or refrain from doing anything on the particular

19   ships and jobsites relevant to this case.

20        ii.    **Elliott Cannot Show and Has Not Shown That Its Equipment Furnished
                 Conformed to Reasonably Precise Specifications.**

21

22        As a preliminary matter, analysis of the second element of the Boyle test is impossible

23   when (as here) there are no specifications submitted to analyze. Put simply, it is impossible to

     determine whether Elliott's equipment conformed to "reasonably precise" government

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
REMAND - 13
CO5-2145 JCC
S:\Clients\Clients_S.SEYMOUR, Lewis\Seymour\_Pleadings\Seymour\_Federal Pleadings\Seymour\_PLD_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1   specifications when Elliott has not produced government specifications for the products at issue

2   in this case.  Until and unless Elliott does make such a showing, Elliott <u>cannot</u> make a showing

3   that it complied with the second element of the <u>Boyle</u> test.

4           Nonetheless.  Even assuming that the two ancient Naval specifications Elliott has

5   submitted are sufficiently precise to meet the first <u>Boyle</u> test and have some connection with this

6   plaintiff's jobsites,  Elliott's own witnesses establish that Elliott failed to meet these

7   specifications (such as they are).  According to Elliott witness Thomas Keenan.  "Elliott shipped

8   naval equipment to the Navy without any thermal insulation materials (asbestos-containing or

9   other) anywhere on them. Elliott did not manufacture, sell, or install equipment with asbestos-

10  containing insulation."[22]  Elliott also states that all of its "naval equipment" was shipped

11  "without any external insulation."[23]  Given Elliott's clear stance that it never shipped.

12  manufactured. or installed any exterior insulation, it is curious indeed that one of the naval

13  specifications Elliott relies on for federal jurisdiction here is a specification entitled "Thermal

14  Insulation for Machinery and Piping."  That specification specifically relates to <u>external</u>

15  insulation to be applied to pipes and machinery aboard U.S. Naval vessels:

16          **S39-2-d.  General Design and requirements.**

17          Insulate all hot <u>external</u> surfaces or mechanical equipment such as boilers.
            evaporators, heaters, turbines. boiler feed pumps and feed booster pumps. pipe
18          and tubing, valves and fittings. as specified herein.[24]

19          If Elliott's witnesses are to be believed, Elliott has established that it <u>did not</u> comply with

20  this insulation specification—since Elliott did not ship insulation with its products.

21          Of course. Elliott well knows that Plaintiffs are not alleging Elliott shipped external

22  insulation.  Elliott's asbestos-containing products consisted of other materials, such as gaskets

23  [22] Keenan Dec., ¶22.
    [23] Hackel Dec., ¶7.
    [24] Hackel Dec., Ex. C., p. 1, line 40-45.
    PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
    REMAND - 14
    CO5-2145 JCC
    S.\Client\Clients_9\SEYMOUR. Lewis\Seymour L_Pleadings\Seymour L_Federal Pleadings\Seymour L_PLD_MSJandRemand.doc

    BERGMAN & FROCKT
    705 SECOND AVENUE, SUITE 1601
    SEATTLE, WA 98104
    TELEPHONE: 206.957.9510
    FACSIMILE: 206.957.9549

1   and valve packing. as Elliott appears to concede.[25]  In any event, Elliott can hardly be held to

2   have complied with a general specification regarding exterior insulation when Elliott so

3   vociferously disclaims any involvement whatsoever with such insulation at any time.

4       Moreover, to the extent that Elliott is claiming to have shown its products conformed

5   with some other unidentified, but nonetheless still somehow paradoxically "reasonably precise"

6   specifications regarding Plaintiffs' failure to warn claims. Elliott's evidentiary submission fails.

7   In Ninth Circuit cases involving failure to warn claims under state tort law, "if the record is

8   bereft of any evidence of a conflict between the specifications in [the government contractor's]

9   contract with the Navy and state law requirements of a duty to warn, the government contractor

10  defense is inapplicable." Butler. 89 F.3d at 586. Rather, the contractor must show that a

11  decision not to warn was made because the contractor was "acting in compliance with reasonably

12  precise specifications," imposed on it by the United States. Id. (citing In Re Federal Asbestos

13  Cases. 960 F.2d 806, 813 (9th Cir. 1990). See also In Re Joint E & S Dist New York Asbestos

14  Litig., 897 F.2d 626. 629-32 (2d. Cir. 1990)("In a failure to warn action, where no conflict exists

15  between requirements imposed under a federal contract and a state law duty to warn, regardless

16  of any conflict which may exist between the contract and state law design requirements, Boyle

17  commands that we defer to the operation of state law.")

18      Elliott has not even attempted to show the Court a specification that either required them

19  not to warn of asbestos dangers or prevented them from issuing such a warning.  The self-

20  serving, vague, and subjunctive statements of Elliott's corporate witnesses notwithstanding.

21  Elliott has failed to make a threshold showing that its products conformed to any reasonably-

22

23

---

[25] See Notice of Removal at ¶20.
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
REMAND - 15
CO5-2145 JCC
S:\Clients\Clients_S\SEYMOUR, Lewis\Seymour_Pleadings\Seymourt_Federal Pleadings\Seymourt_PLD_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1    precise Naval specification in force at plaintiff's workplace from 1961-1966 (the only time

2    Plaintiff served in the Navy).

3         Should Elliott attempt to make such a showing in response to this motion, Elliott will

4    have to locate new witnesses to do so.   The three witnesses who offered declarations to support

5    removal (Hackel, Keenan, and Lehman) have all testified that they are totally unaware of any

6    Naval specification that forbid the placement of an asbestos warning on Elliott products.[26]

7         iii.    **Elliott Has Made Now Showing that It Warned the United States of Dangers
                  in the Use of its Equipment Known to Elliott and Unknown to the United**
8                 **States Government.**

9         Finally, Elliott has made <u>no showing whatsoever</u> on this third and critical element of the

10   government contractor's defense.  Elliott's entire argument, such as it is, consists of language on

11   the relative knowledge of Elliott and the Navy, taken from the affidavit of Dr. Betts—a witness

12   Elliott has now withdrawn.[27]  Elliott has made no other attempt to show that it warned the United

13   States of the dangers of its asbestos-containing equipment that were known to Elliott and not

14   known to the United States.

15        In fact, no Elliott witness has even provided the Court with an affirmative claim as to

16   what Elliott's knowledge was regarding the hazards of asbestos in the relevant time frame.  At a

17   minimum, Elliot should be required to make some sort of factual showing regarding both its

18   knowledge and the Navy's.  Elliott has failed to do so, and with the withdrawal of Betts as a

19   witness, has not even tried.  Elliott has made no showing on this issue, and (lacking a witness to

20   do so) Elliott can make no showing.

21

22

23

---

[26] See Section II, <u>infra.</u>
[27] See Ladenburg Dec., Ex. 4 (Elliott's notice of withdrawal of Dr. Betts as a removal witness).

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
REMAND - 16
CO5-2145 JCC
S:\Clients Clients_S.SEYMOUR, Lewis\Seymourt_Pleadings\Seymourt_Federal Pleadings\Seymourt_PLD_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1  **C. Without the Government Contractor's Defense, this Case should Be Remanded for**

2      **Lack of Jurisdiction.**

3      In our federal system, it has been axiomatic since the Constitution's ratification that

4  federal Article III courts are courts of limited jurisdiction. Article III of the Constitution states,

5  *inter alia*, that the judicial power of the United States extends "to all cases, in Law or Equity,

6  arising under this Constitution, the Laws of the United States...," and to "controversies to which

7  the United States shall be a party." U.S. Const., Art III. §2.

8      Unlike state courts of general jurisdiction, federal courts are empowered only to hear

9  matters that are both within the constitutionally-defined judicial power of the United States set

10  forth in Article III, and that have been entrusted to the federal courts by an explicit jurisdictional

11  grant from Congress. Insurance Corp of Ireland v. Compagnie des Bauxites de Guinea, 456 U.S.

12  694, 102 S. Ct. 2099, 72 L. Ed.2d 492 (1982).

13      As a result, there is a presumption that a federal court lacks jurisdiction in any particular

14  case; the party seeking to invoke jurisdiction in federal court has the burden of demonstrating it.

15  Fifty Associates v. Prudential Ins. Co. of America, 446 F.2d 1187 (9th Cir. 1970). Statutes

16  conferring jurisdiction are to be strictly and narrowly construed, and any doubts are to be

17  resolved against a finding of jurisdiction. Kirby v. United States, 479 F. Supp. 873 (D. S.C.,

18  1979). Doubtful cases should be remanded to state court. Syngenta Crop Protection, Inc. v.

19  Henson, 537 U.S. 28, 31, 123 S.Ct. 366, 154 L. Ed.2d 368 (2002).

20      In this case, the sole basis of alleged federal jurisdiction is the federal officer removal

21  statute, 28 U.S.C. §1442(a)(1). In Mesa v. California, 489 U.S. 121, 109 S. Ct. 959, 103 L.Ed.

22  2d 99 (1989), the Court explained that the Federal Officer Removal Statute is a "pure"

23

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
REMAND - 17
CO5-2145 JCC
S:\Client Cleno_S.SEYMOUR. Lewis Seymour\_ Pleadings\Seymour\_ Federal Pleadings\Seymour\_ PLD_MS.ImdRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1   jurisdictional statute, and not a law for which federal courts will able to exercise more standard

2   federal question or "arising under" jurisdiction:

3          Section 1442(a), in our view, is a pure jurisdictional statute, seeking to do
           nothing more than grant district court jurisdiction over cases in which a
4          federal officer is a defendant. Section 1442(a), therefore, cannot
           independently support Art. III "arising under" jurisdiction. Rather, it is the
5          raising of a federal question in the officer's removal petition that
           constitutes the federal law under which the action against the federal
6          officer arises for Art. III purposes. The removal statute itself merely serves
           to overcome the "well-pleaded complaint" rule which would otherwise
7          preclude removal even if a federal defense were alleged.

8   Mesa, 489 U.S., at 136 (emphasis added).  This jurisdictional statute requires Elliott to

9   assert a "colorable" federal defense as a required. essential element of its burden to show

10  federal jurisdiction.  Boyle v. United Technologies Corp, 487 U.S. 500, 108 S.Ct. 2510.

11  101 L. Ed.2d 442 (1988).  In this case. Elliott's federal defense is the "government

12  contractor's defense" set forth in Boyle.

13         Because Elliott has not—and cannot—come forward with any evidence to support

14  any of the required three elements of the Boyle defense, this case should be remanded to

15  Washington State Superior Court for lack of jurisdiction.

16

17                          VI.     CONCLUSION

18         For the foregoing reasons, the Court should dismiss Elliott's "government

19  contractor" affirmative defense, and remand this case to Washington State Superior

20  Court.

21

22         DATED this 13th day of April, 2006.

23

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
REMAND - 18
CO5-2145 JCC
S:\Clients\Client_SSEYMOUR, Lewis\Seymour\_Pleadings\Seymour\_Federal Pleadings\Seymour\_PLD_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1

BERGMAN & FROCKT

2

/s/ _____
Matthew P. Bergman, WSBA #20894

3

David S. Frockt, WSBA #28568
Brian F. Ladenburg, WSBA #29531

4

Counsel for Plaintiff
Bergman & Frockt

5

705 Second Avenue, Suite 1601
Seattle. WA  98104

6

Telephone:    (206) 957-9510
Fax:              (206) 957-9549

7

E-mail: david@bergmanlegal.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

1

### Certificate of Service

2

3    I certify that on the date noted below I electronically filed this document entitled "Plaintiffs' Motion for Summary Judgment and Remand" with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

4

**Counsel for Saberhagen Holdings, Inc.; and Aqua Chem, Inc.**
5    Timothy Thorson
CARNEY BADLEY & SPELLMAN
6    701 Fifth Avenue, Suite 5800
Seattle, WA 98104

7

**Counsel for Elliott Company**
8    Catherine Jeannotte/Melissa K Habeck
FORSBERG & UMLAUF, P.S.
9    900 Fourth Avenue, Suite 1700
Seattle, WA 98164

10

**Counsel for Fairbanks Morse Pump Corporation**
11   G William Shaw
PRESTON GATES & ELLIS, LLP
12   925 Fourth Avenue, Suite 2900
Seattle, WA 98104

13

**Counsel for J.T. Thorpe & Son, Inc.**
14   Katherine M Steele
STAFFORD FREY COOPER
15   601 Union Street, Suite 3100
Seattle, WA 98101

16

**Counsel for Warren Pumps, Inc.**
17   J Michael Mattingly
STEVEN V. RIZZO, P.C.
18   Lincoln Place, Suite 350
1620 S.W. Taylor Street
19   Portland, OR 97205

20   **Counsel for Kelly-Moore Paint Company, Inc.**
Sharon Ambrosia-Walt
21   PREG O'DONNELL & GILLETT, PLLC
1800 – 9th Ave. #1500
22   Seattle, WA  98101

23

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
REMAND - 20
CO5-2145 JCC
S:\Clients\Clients_ISSEYMOUR, Lewis\Seymour\L_Pleadings\Seymour\_Federal Pleadings\Seymour\_PLD_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1

2   **Counsel for Owens Illinois, Inc.**
    Jackson Schmidt
    PEPPLE, JOHNSON, CANTU & SCHMIDT, PLLC
3   1900 Seattle Tower Building
    1218 Third Avenue
4   Seattle. WA 98101

5

6
                DATED at Seattle, Washington this 13th day of April, 2006.
7

8
                                    //s
9                                   David S. Frockt, WSBA #28568
                                    Bergman & Frockt
10                                  705 Second Avenue, Suite 1601
                                    Seattle. WA  98104
11                                  Telephone:     (206) 957-9510
                                    Fax:           (206) 957-9549
12                                  E-mail: david@bergmanlegal.com

13

14

15

16

17

18

19

20

21

22

23

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
REMAND - 21
CO5-2145 JCC
S:\Clients\Clients_S.SEYMOUR. Lewis\Seymour\_Pleadings\Seymour\_Federal Pleadings\Seymour\_PLD_MSJandRemand.doc

THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PRISCILLA ALIX, as Personal Representative of the Estate of ALFREDO GREGORIO, <br><br> Plaintiff, <br><br> v. <br><br> SABERHAGEN HOLDINGS, INC., et al., <br><br> Defendants. | NO. C05-2144 JLR <br><br> PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMAND <br><br> **Note on Motion Calendar:** <br> **May 5, 2006** <br> ORAL ARGUMENT REQUESTED |

## I.   INTRODUCTION

This motion is brought to dismiss an affirmative defense asserted by defendant Elliott Company ("Elliott"). That defense—the government contractor's defense—is the sole basis of this Court's alleged federal jurisdiction in what is an otherwise standard, routine, and unremarkable state-law tort case arising from Plaintiff's asbestos exposure and disease. Elliott bears the burden of proof on this affirmative defense. For the reasons stated below, Elliott has not and cannot meet its burden of proof on essential elements of this defense. As a result, the defense—the sole basis for this case being removed to federal court—should be dismissed, and this case should then be remanded to King County Superior Court in Washington for resolution.

**EXHIBIT 2**

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMAND- 1
CO5-2144 JLR
S:\Clients\Clients_G\GREGORIO, Alfredo GregorioA_Pleadings\GregorioA_Federal
Pleadings GregorioA_PLD_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1

## II.   STATEMENT OF FACTS

2       For several months now in Washington State, Elliott has been engaged in what appears to

3   be a blanket policy of removing all asbestos cases where the plaintiff has encountered (or,

4   indeed, may have encountered) a naval vessel, irrespective of the actual factual scenario

5   governing the particular plaintiffs' work histories and exposure.  Plaintiff's counsel is aware of at

6   least seven cases in the past six to eight months where Elliott has removed asbestos cases from

7   Washington state courts to federal court on the sole basis of the "government contractor's

8   defense," 28 U.S.C. §1442(a)(1), as articulated in <u>Boyle v. United Technologies Corp.</u>, 487 U.S.

9   500 (1988).[1] In each of these cases, Elliott has filed substantially similar notices of removal with

10   recycled supporting materials.  The declarations submitted by Elliott with its notice of removal in

11   each case are the same.[2]  The documentary support for removal in each case is the same.[3]  In

12   fact, the notices of removal themselves are largely identical, save for the captions, names of the

13   plaintiffs, and other minor plaintiff-specific details immaterial to the disposition of the

14   government contractor's defense.

15       The work sites, occupations, timelines, and interaction with Elliott products among the

16   plaintiffs are not identical in any of the cases Elliott has removed.  In terms of plaintiffs'

17   interactions with Elliott products, each case is unique and requires discreet, separate analysis.

18       This case was filed against Elliott in King County Superior Court on November 21,

19

20

---

[1] Those cases are <u>Denny v. Goulds Pumps, et. al</u>, No. 2:05-cv-1876; <u>Anderson v. Saberhagen Holdings, Inc.</u>, et al.

21   No. C05-1929JLR; <u>McAboy v. IMO Industries</u>, et al., No. C05-1241L; <u>Sweeney v. Saberhagen Holdings, Inc.</u>, et al,
No. C05-1637Z; <u>Seymour v. Saberhagen Holdings, Inc.</u>, et al., No. C05-2145JCC; and <u>Alix v. Saberhagen Holdings,
Inc.</u>, et al., No. C05-2144JLR.

22   [2] In fact, the Declarations of Tom Keenan, Ross Hackel, and Admiral Lehman appear to be filed in all cases; Elliott
has only more recently filed the affidavit of Lawrence Betts.  In this case, Elliott has withdrawn Betts and his

23   affidavit.
[3] The documents Elliott has submitted in support of its notices of removal in these cases are found attached to the
Declaration of Ross Hackel, in this case at Exhibits B-F.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMAND- 2
CO5-2144 JLR
S:\Clients\Clients_G\GREGORIO, Alfredo\GregorioA_Pleadings\GregorioA_Federal
Pleadings\GregorioA_PLD_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1    2005.[4]  Elliott was served with the complaint in this matter on November 23. 2005.[5]  Elliott filed

2    its Notice of Removal on December 29, 2005.[6]  In its notice of removal. Elliott alleged federal

3    officer removal jurisdiction under 28 U.S.C. §1442(a)(1).  In support of its notice of removal,

4    Elliott counsel Catherine Jeannotte provided the Court declarations from four witnesses: former

5    Elliott employee Ross Hackel; former Elliott employee Thomas J. Keenan; Retired Admiral Ben

6    J. Lehman, and retired Naval industrial hygienist Lawrence Stillwell Betts.[7]

7            Plaintiff requested depositions of all four.  After removal, Plaintiff deposed Ross Hackel,

8    Thomas Keenan, and Admiral Lehman.[8]  The testimony of all three indicates, without exception,

9    that Elliott does not possess the evidence required to establish the <u>Boyle</u> elements of the

10   government contractor's defense.

11           a.    Ross Hackel

12           Ross Hackel worked as an engineer for Elliott from 1960 to 2000; prior to joining Elliott,

13   he worked for Elliott's corporate parent Carrier Corporation from 1957 to 1960.[9]  He still has an

14   office at Elliott, though he retired from active work in his field with Elliott in 2000.  Mr. Hackel

15   is not an attorney and never has been, according to his C.V.[10]  Nonetheless, his office at Elliott is

16   located in the legal department.[11]

17           Plaintiff's counsel deposed Mr. Hackel on January 25, 2006 in Greensburg.

18   Pennsylvania.  Mr. Hackel's testimony consistently undermines Elliott's asserted government

19

20   [4] Declaration of Brian F. Ladenburg in Support of Plaintiff's Motion to Remand ("Ladenburg Dec."), Ex. 1.
     [5] Declaration of Catherine E. Jeannotte in Support of Elliott Company's Notice of Removal ("Jeannotte Dec."), Ex.

21   1.
     [6] Ladenburg Dec.. Ex. 2.
     [7] Jeannotte Dec., Exs. 3-6.

22   [8] Elliott did not produce Lawrence Betts for deposition; rather, Elliott withdrew the Betts declaration in support of
     its remand. Ladenburg Dec., Ex. 4.

23   [9] Declaration of Ross Hackel ("Hackel Dec."), Ex. 1 (attached as Exhibit 3 to the Jeannotte Dec.)
     [10] Hackel Dec.. Ex. 1.
     [11] Deposition of Ross Hackel, dated January 25, 2006 ("Hackel Dep."), Ladenburg Dec.. Ex. 3, at 9; 7-14.

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1   contractor defense. Mr. Hackel lacks any concrete. personal knowledge of government-

2   mandated contractual specifications on warnings issued to Elliott for work Elliott did for the

3   Navy:

4      Q:     Do you have knowledge, Mr. Hackel. of any instance where Elliott
           Company ever asked the navy for permission to put a caution or warning
5          label on its equipment that was being sold to the navy?
        A:     I'm not aware of any.
6      Q:     Do you have knowledge of any instance where any other
           equipment manufacturer or supplier to the navy of equipment requested
7          permission to place a caution or warning on the equipment that was being
           sold to the navy?
8      A:     Relative to asbestos or just general?
        Q:     Well. let's talk first with regard to asbestos.
9      A:     Not that I'm aware of as far as asbestos goes.
        Q:     It is your opinion that had Elliott requested permission to put a
10         caution or warning on equipment it was selling to the navy with regard to
           asbestos. that the navy would not have granted permission. is that your
11         opinion?
        A:     I think that would be the case, probably. **It's a guess.**
12         ...
        Q:     I take it. Mr. Hackel, that you are not aware of the existence of any
13         Navy or other government specification that says specifically that no
           caution or warning labels shall be used on Elliott equipment with regard to
14         asbestos?
        Mr. Forsberg: Object to the form.
15     A:     I'm not aware—I'm not aware of any.[12]

16

17     b.     **Thomas Keenan**

18         The other former Elliott employee who authored a declaration to support this removal is

19   no more knowledgeable. Thomas Keenan worked for Elliott from 1965-2004 as a product

20   engineer, program manager. manager of projects and systems engineering, and manager of

21   assembly and test operations. He testified to a similar lack of knowledge of any naval

22   specification that would have prohibited Elliott from warning about the dangers of the asbestos-

23   containing material in its products:

---

[12] Hackel Dep., at 12:16-13:12, and 62:5-11 (emphasis added).
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMAND- 4
CO5-2144 JLR
S:\Clients\Clients_G\GREGORIO. Alfredo\Gregorio A_Pleadings\Gregorio A_Federal
Pleadings\Gregorio A_PLD_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1   Q:   Are you aware, Mr. Keenan, of the existence of any navy or
     government specification that would have—that specifically said that
2   Elliott would not be permitted to put warnings or cautions on equipment
     that Elliott was manufacturing and selling to the Navy and I'm talking
3   about warnings or cautions concerning asbestos?
     A:   Did you say specifications?
4   Q:   Any specification, any—yeah, specifications.
     A:   No.
5   Q:   Are you aware of any rule or regulation that specifically said that
     Elliott would not be permitted to put warnings or cautions on equipment
6   that Elliott manufactured and sold to the navy?
     A:   Not a specification or regulation.
7   Q:   Are you aware of **anything in writing** that forbade Elliott from
     putting an asbestos caution or warning on equipment that it was
8   manufacturing and selling to the navy?
     A:   No.
9   Q:   Are you aware of whether Elliott ever approached the Navy or any
     Navy representative and asked permission to put an asbestos caution or
10   warning on any equipment manufactured by Elliott and sold to the Navy?
     A:   I'm not aware of any.[13]

11

12   **c.   Admiral Ben Lehman (Ret.)**

13      Elliott's third and final removal witness is retired Admiral Ben J. Lehman, a former

14   Naval officer. The affidavit Admiral Lehman submitted with this notice of removal is dated

15   August 8, 2005, and it has been submitted verbatim and identically in no fewer than seven cases

16   Elliott has removed from Washington state courts in the past year.[14] It does not discuss any

17   specific manufacturer's products or any specific manufacturer's interaction with the Navy.

18   Elliott is <u>not</u> mentioned once in the affidavit; nor is there any discussion of Elliott's products,

19   naval specifications for Elliot products, or Elliott's interactions and dealings with the Navy on

20   any projects whatsoever.   The affidavit cites no specific instance where the Navy ever refused to

21   permit a contractor to place a warning on its naval equipment.   The affidavit is replete with

22   ───────────────
     [13] Deposition of Thomas Keenan ("Keenan Dep."), Ladenburg Dec., Ex. 6, at 7:24-9:1 (emphasis added).
     [14] In fact, the "Lehman Affidavit" appears to be in wide circulation, since it was quoted with identical language by
23   the Court in New York considering a motion to remand in the case of <u>Neisbet v. General Electric Co.</u>, 2005 WL
     697966 (S.D.N.Y 2005). This opinion can be found as Exhibit. 2 to the December 28, 2005 Declaration of
     Catherine E. Jeannotte submitted in Support of Elliott's Notice of Removal.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMAND- 5
CO5-2144 JLR
S:\Clients\Clients_OA\GREGORIO, Alfredo\GregorioA_Pleadings\GregorioA_Federal
Pleadings\GregorioA_PLD_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1   sweeping generalities. but totally devoid of a concrete, factual foundation of any sort—

2   particularly with respect to Elliott and Elliott's work with the Navy.

3          Admiral Lehman was deposed after he prepared his affidavit, in an effort to ascertain just

4   what exactly it was he did know specifically about Elliott.  At the time of his deposition, he knew

5   nothing about Elliott's interaction with the Navy on Elliott contracts.  Admiral Lehman made

6   clear that he had not been given sufficient information to form any opinions whatsoever specific

7   to Elliott.  Prior to the deposition, he had only been provided with the Plaintiff's deposition

8   transcript and the materials Elliott submitted with its notice of removal.   These materials did not

9   enable him to testify meaningfully.  He appeared to be somewhat agitated. and less than fully

10  amused with the situation:

11          Q:     Now. other than the documents that you have just gone through
               [Plaintiff's deposition and Elliott's removal materials], which I believe
12          were supplied to you by counsel for Elliott; is that correct?
                A:    That's correct.
13          Q:     Did you review any other materials specifically with regard to
               giving your deposition today?
14          A:    Not that I can recall.  I have a great many materials, but I don't
               recall reviewing anything with regard to this deposition.
15          Q:     Have you prepared any written report in connection with your
               work in this case?
16          A:    No. none has been requested.
               Q:     Have you spoken with any employees, current or former
17          employees of Elliott Company. in connection with this case?
               A:    No.
18          Q:     Can you remember any time any specific Elliott employee with
               whom you have had conversations about anything?
19          A:    No.
               Q:     Have you been asked to form any opinions with regard to any
20          aspect of this particular case?
               A:    I was asked if I had been able to form any opinions.
21          Q:     And who asked you if you had been able to form  any opinions?
               A:    Miss Habeck.
22          Q:     Okay.  And what was your answer to Ms. Habeck when she asked
               you if you had been able to form any opinions in connection with this
23          case?
               A:    **My answer was that I had not been able to form any opinions**

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1   **because I had insufficient information.**
      Q:     What information did you feel you would require in order to form
2   opinions in connection with this case?
      A:     I have no idea where the plaintiff, Leo Hickman Sweeney, was
3   actually located, what he was doing, what ships he was on, who his
      employers were. All of these things would have to do with my opinions, I
4   think, with regard to Mr. Sweeney and Elliott's position. and I don't have
      any of that information.[15]

5

6        Admiral Lehman knew nothing more than Keenan and Hackel with respect to Navy

7   specifications on warning labels for asbestos products:

8        Q:     Now, to your knowledge, sir, are there any military, federal
      government. specifications that expressly prohibit the putting of a label on
9   equipment to be used aboard ship which contains language about asbestos
      being potentially harmful to the health and precautionary measures to be
10   taken to eliminate or minimize the risk of exposure to asbestos?
      MS. HABECK:        Objection to form. overbroad, vague as to time. Go
11   ahead.
       THE WITNESS:        The question is, do I know of any specific
12   prohibition about doing something?
      BY MR. METCALF:
13   Q:     Correct.
      A:     No. There are many things that could be prohibited, certainly. that
14   could be prohibited, **but it's not and never has been.**
      Q:     Now, do you know of any specific instance when a manufacturer
15   of equipment to be used aboard a Navy vessel went to the Navy and asked
      for permission to put an asbestos warning label on a piece of equipment
16   and the Navy refused that permission?
      MS. HABECK:        Objection to the form, vague, overbroad. Go ahead.
17   THE WITNESS:        **I cannot think of any such instance being**
      **recorded in any document that I have ever read.**
18   BY MR. METCALF:
      Q:     Do you know the name of anybody in the United States Navy who
19   refused an equipment manufacturer's request to place a warning label
      concerning asbestos on equipment that was to be installed in a Navy ship?
20   MS. HABECK: Objection to the form, overbroad. vague.
      THE WITNESS: No, I do not know that. I have **never, never** had
21   occasion to query Naval officers who were on active duty during the
      periods I think are in question, whether anybody had ever made such
22   request.[16]

23
---
[15] Deposition of Admiral Ben Lehman ("Lehman Dep."), Ladenburg Dec., Ex. 7, at 14:6-15:20 (emphasis added).
[16] Lehman Dep., at 22:22-24:10 (emphasis added)..

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMAND- 7
CO5-2144 JLR
S:\Clients\Clients_G\GREGORIO. Alfredo\GregorioA_Pleadings\GregorioA_Federal
Pleadings\GregorioA_PLD_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1

2          d.     **Plaintiff's Work History**

3          Plaintiff Alfredo Gregorio was exposed to asbestos during his work as painter and

4   machinist from 1969-`1979.[17] He worked at the Subic Bay Naval Base in the Philippines.

5   During the course of his work, he had occasion to work aboard various ships, including but not

6   limited to the USS Kitty Hawk, the USS Black, the USS Grapple, the USS Taussig, the USS

7   Valley Forge, the USS Conserver, the USS Tombigbee, the USS Duluth, the USS Goldsborough,

8   the USS Vesuvius, and the USS Henry W. Tucker.

9          e.     **Status of Elliott's Removal Evidence**

10         In its notice of removal, Elliott has not produced <u>one</u> document related to any of the

11  above ships: not one contract, specification, purchase order, bill of material, drawing, invoice,

12  letter, or other written documentation of Elliott's interaction with the Navy.[18] The documents

13  Elliott has submitted with its notice of removal consist of:

14         1.     a 1954 Naval "General Specification for Ships"
           2.     a 1951 excerpt from the Navy's "General Specifications for
15                Machinery for Vessels of the United States Navy";
           3.     a Special Engineering Instruction Bill of Material from 1943 for
16                deaerators on Navy vessels;
           4.     a 1944 Elliott purchase order for gaskets to be shipped to the Navy
17                yard in New York; and
           5.     a 1942 order record for deaerating heaters sold the Navy.[19]
18

19         The most recent of these documents is dated a full 15 years before Plaintiff commenced

20  work at the Naval base in the Philippines. None of these documents mention or appear

21  connected in any way whatsoever with the ships Plaintiff is known to have worked aboard.

22  None of these documents mentions or addresses in any way whether it is permissible or not for

23  _____
[17] Ladenburg Dec., Ex. 5.
[18] See generally, Jeannotte Dec., and attachments thereto.
[19] Hackel Dec., Exs. B-F.

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1 | Elliott to place warnings on its asbestos-containing products. So far as is evident from the face

2 | of these documents, none of them have any connection whatsoever to the facts of this case.

3 | <center>III.    **STATEMENT OF ISSUES**</center>

4 | 1.    Whether defendant Elliott Company's "Government Contractor Defense" should

5 | be dismissed pursuant to Fed. R. Civ. P. 56, when Elliott cannot produce evidence

6 | to meet its burden to sustain all essential elements of the defense? **Answer: Yes.**

7 | 2.    Whether this case should be remanded to state Court for lack of jurisdiction.

8 | **Answer: Yes.**

9 | <center>IV.    **EVIDENCE RELIED ON**</center>

10 | Plaintiff relies on the December 28, 2005 Declaration of Catherine E. Jeannotte, and the

11 | April 13, 2006 Declaration of Brian F. Ladenburg, and all exhibits thereto.

12 | <center>V.    **ARGUMENT**</center>

13 | **A. Summary Judgment Standard and Elliott's Burden of Proof**

14 | It In <u>Celotex v. Catrett Corp.</u>, 477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986), the

15 | United States Supreme Court clarified the standard for summary judgment in a case where a

16 | party (like Elliott here) has no evidence to support an essential element of a claim on which that

17 | party bears the burden of proof at trial. The Court explained:

18 | Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together
19 | with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a
20 | matter of law." In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and
21 | upon motion, **against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and**
22 | **on which that party will bear the burden of proof at trial.** In such a situation there can be "no genuine issue as to any material fact." since a
23 | complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMAND-9
CO5-2144 JLR
S :Clients\Clients_G\GREGORIO, Alfredo\Gregorio\_Pleadings\Gregorio\_Federal
Pleadings\GregorioA_PLD_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1      moving party is "entitled to a judgment as a matter of law" because the
nonmoving party has failed to make a sufficient showing on an essential

2      element of her case with respect to which she has the burden of proof.

3   Celotex, 477 U.S., at 322-23 (emphasis added). The Court rejected arguments that before such a

4   dismissal would be appropriate, the moving party would have to meet an initial burden

5   evidentiary burden to show the absence of genuine issues of material fact as to such elements of

6   the non-moving party's case. Id.

7       In the present case, Elliott has removed this case from state court on the sole basis of the

8   "federal officer removal" statute, which states in relevant part:

9      (a) A civil action or criminal prosecution commenced in a State court against any
of the following may be removed by them to the district court of the United States

10     for the district and division embracing the place wherein it is pending:

11     (1) The United States or any agency thereof or any officer (or any person acting
under that officer) of the United States or of any agency thereof, sued in an

12     official or individual capacity for any act under color of such office or on account
of any right, title or authority claimed under any Act of Congress for the

13     apprehension or punishment of criminals or the collection of the revenue.

14   28 U.S.C. §1442(a)(1). To prevail, a defendant in a state criminal or civil court must (1)

15   establish that it is acting under a federal officer; (2) establish that he was acting under color of

16   that officer's authority when engaged in the conduct at issue; and (3) raise a colorable federal

17   defense.

18       With respect to the third prong of the above, Elliott's "colorable federal defense" is the

19   "government contractor's defense" as set forth by the Supreme Court in Boyle v. United

20   Technologies Corp., 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). The government

21   contractor's defense is an affirmative defense, and it is Elliott's burden to establish the defense.

22   Snell v. Bell Helicopter Textron, Inc., 107 F.3d. 744, 749, (9th Cir. 1997); see also McKay v.

23   Rockwell Int'l Corp., 704 F.2d 444, 453 (9th Cir. 1983). Should Elliott be unable to come

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMAND- 10
CO5-2144 JLR
S:\Clients\Clients_G\GREGORIO, Alfredo\GregorioA_Pleadings\GregorioA_Federal
Pleadings\GregorioA_Pl-D_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1   forward with evidence to support essential elements of this defense. the defense must be

2   dismissed per <u>Celotex.</u>

3          The government contractor defense arises from the "significant conflict" that may arise

4   when duties imposed by state tort law and duties imposed by government contracts directly

5   conflict. <u>Boyle.</u> at 507. Under <u>Boyle.</u> a federal contractor is entitled to a federal. common-law

6   defense to state tort claims when it can establish (1) that the United States approved reasonably

7   precise specifications for the product or equipment at issue: (2) that the equipment furnished

8   conformed to those specifications; and (3) that it warned the United States about the dangers in

9   the use of the equipment that were known to the contractor but not to the United States. <u>Butler v.</u>

10  <u>Ingalls Shipbuilding. Inc.</u>, 89 F.3d 582. 584 (9th Cir. 1996). "The first two elements of the

11  defense are intended to ensure that it is indeed a discretionary decision on the part of the

12  government that is being immunized. The third is intended to ensure that the contractor has fully

13  conveyed all information necessary to allow the government to make a fully informed decision."

14  <u>Id.</u>

15      **B. Because Elliott Lacks Evidence to Support All Three Elements of the Government**

16         **Contractor's Defense, The Defense Should Be Dismissed.**

17          Under <u>Boyle,</u> a contractor is entitled to a federal. common-law defense to state tort claims

18  when it can establish (1) that the United States approved reasonably precise specifications for

19  the product or equipment at issue: (2) that the equipment furnished conformed to those

20  specifications: and (3) that it warned the United States about the dangers in the use of the

21  equipment that were known to the contractor but not to the United States. <u>Butler v. Ingalls</u>

22  <u>Shipbuilding. Inc.</u>, 89 F.3d 582, 584 (9th Cir. 1996). Elliott has failed to establish, and cannot

23  establish. even one of the three elements required for to prevail on this defense.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMAND- 11
CO5-2144 JLR
S:\Clients\Clients_G\GREGORIO. Alfredo\Gregorio\A_Pleadings\Gregorio\A_Federal
Pleadings\Gregorio\A_PLD_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206 957.9510
FACSIMILE: 206 957.9549

i.  **Elliott Cannot Show and Has Not Shown It Supplied Products Pursuant to Reasonably Precise Specifications.**

Elliott has not supplied the Court with even a single Naval specification for Elliott products shipped to the Subic Bay Naval Base shipyards between 1969 and 1979.[20]   Elliott has not supplied the Court with a single Naval specification for Elliott products installed aboard any of the vessels that Plaintiff is known to have worked on.  Elliott has not identified which, if any, of its products (deaerator, pump, or turbine, for example) it claims was manufactured, shipped, or installed pursuant to reasonably precise Naval specifications, and how the specification required Elliott to ship its product with deadly and toxic asbestos fibers without so much as a warning—contrary to state tort law.  Elliott must come forward with something in the form of evidence to support this element of its defense.  In its Notice of Removal and supporting materials, Elliott has completely failed to do so.

The two Naval specifications Elliott has submitted appear to be factually unrelated to this case and do not establish the requisite degree of specificity.  Both specifications are "General," both in their title and in their application.  Neither deals with specific products, or with specific ships; rather, both merely set forth general standards for all Naval contractors (presumably to include Elliott).  "When only minimal or very general requirements are set for the contractor by the United States, the [government contractor defense] is inapplicable.  The situation is different where the U.S. reviewed and approved a detailed set of specifications."  McKay v. Rockwell Int'l Corp., 704 F.2d 444, 451 (5th Cir. 1983) cert. denied 464 U.S. 1043, 104 S.Ct. 711, 79 L. Ed.2d 175 (1984).  General requirements issued for all Naval ships (like those Elliott has relied on here) will not suffice.  Trevino v. General Dynamics Corp., 865 F.2d 1474 (5th Cir.) cert.

[20] In fact, at this point, Elliott has not even informed the Court exactly what these products are (turbines, deaerators, heaters, motors, etc.).  Of course, Elliott has a vested interest in not disclosing in court where it shipped its asbestos-containing products and when; nonetheless, its reticence to prepare admissions that potentially jeopardize its liability defenses are tactical decisions that do not relieve Elliott of the burden to establish jurisdiction on the stated basis.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMAND- 12
CO5-2144 JLR

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1   denied, 493 U.S. 935, 110 S.Ct. 327. 107 L. Ed.2d 317 (1989). Rather, at least in the Ninth

2   Circuit, there should typically be a "back and forth dialogue culminating in approval" and a

3   "continuous exchange between the contractor and the government" to satisfy Boyle's first test.

4   Butler v. Ingalls Shipbuilding, 89 F.3d 582, 585-86 (9th Cir. 1996). Elliott has made no such

5   specific, detailed, and concrete showing of governmental control and involvement with any

6   products it shipped to Plaintiff's workplace or placed aboard ships he worked on there. Elliott

7   has completely failed to offer evidence of a specification, regulation, statute, code, or industry

8   standard from the Navy that directed Elliott to do or refrain from doing anything on the particular

9   ships and jobsites relevant to this case.

10      ii.      **Elliott Cannot Show and Has Not Shown That Its Equipment Furnished
                 Conformed to Reasonably Precise Specifications.**

11

12          As a preliminary matter, analysis of the second element of the Boyle test is impossible

13   when (as here) there are no specifications submitted to analyze. Put simply. it is impossible to

     determine whether Elliott's equipment conformed to "reasonably precise" government
14
     specifications when Elliott has not produced government specifications for the products at issue
15
     in this case. Until and unless Elliott does make such a showing. Elliott cannot make a showing
16
     that it complied with the second element of the Boyle test.
17
            Nonetheless, Even assuming that the two ancient Naval specifications Elliott has
18
     submitted are sufficiently precise to meet the first Boyle test and have some connection with this
19
     plaintiff's jobsites. Elliott's own witnesses establish that Elliott failed to meet these
20
     specifications (such as they are). According to Elliott witness Thomas Keenan. "Elliott shipped
21
     naval equipment to the Navy without any thermal insulation materials (asbestos-containing or
22
     other) anywhere on them. Elliott did not manufacture. sell, or install equipment with asbestos-
23

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1   containing insulation."[21]  Elliott also states that all of its "naval equipment" was shipped

2   "without any external insulation."[22]  Given Elliott's clear stance that it never shipped,

3   manufactured, or installed any exterior insulation, it is curious indeed that one of the naval

4   specifications Elliott relies on for federal jurisdiction here is a specification entitled "Thermal

5   Insulation for Machinery and Piping."  That specification specifically relates to <u>external</u>

6   insulation to be applied to pipes and machinery aboard U.S. Naval vessels:

7        **S39-2-d.  General Design and requirements.**

8        Insulate all hot <u>external</u> surfaces or mechanical equipment such as boilers,
         evaporators, heaters, turbines, boiler feed pumps and feed booster pumps, pipe
9        and tubing, valves and fittings, as specified herein.[23]

10       If Elliott's witnesses are to be believed, Elliott has established that it <u>did not</u> comply with

11  this insulation specification—since Elliott did not ship insulation with its products.

12       Of course, Elliott well knows that Plaintiffs are not alleging Elliott shipped external

13  insulation.  Elliott's asbestos-containing products consisted of other materials, such as gaskets

14  and valve packing, as Elliott appears to concede.[24]  In any event, Elliott can hardly be held to

15  have complied with a general specification regarding exterior insulation when Elliott so

16  vociferously disclaims any involvement whatsoever with such insulation at any time.

17       Moreover, to the extent that Elliott is claiming to have shown its products conformed

18  with some other unidentified, but nonetheless still somehow paradoxically "reasonably precise"

19  specifications regarding Plaintiffs' failure to warn claims, Elliott's evidentiary submission fails.

20  In Ninth Circuit cases involving failure to warn claims under state tort law, "if the record is

21  bereft of any evidence of a conflict between the specifications in [the government contractor's]

22  _____

23  [21] Keenan Dec., ¶22.
    [22] Hackel Dec., ¶7.
    [23] Hackel Dec., Ex. C., p. 1, line 40-45.
    [24] See Notice of Removal at ¶20.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMAND- 14
CO5-2144 JLR
S:\Clients\Clients_G\GREGORIO, Alfredo\GregorioA_Pleadings\GregorioA_Federal
Pleadings\GregorioA_PLD_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1   contract with the Navy and state law requirements of a duty to warn, the government contractor

2   defense is inapplicable." Butler, 89 F.3d at 586. Rather, the contractor must show that a

3   decision not to warn was made because the contractor was "acting in compliance with reasonably

4   precise specifications," imposed on it by the United States. Id. (citing In Re Federal Asbestos

5   Cases, 960 F.2d 806, 813 (9th Cir. 1990). See also In Re Joint E & S Dist New York Asbestos

6   Litig., 897 F.2d 626, 629-32 (2d. Cir. 1990)("In a failure to warn action, where no conflict exists

7   between requirements imposed under a federal contract and a state law duty to warn, regardless

8   of any conflict which may exist between the contract and state law design requirements, Boyle

9   commands that we defer to the operation of state law.")

10          Elliott has not even attempted to show the Court a specification that either required them

11   not to warn of asbestos dangers or prevented them from issuing such a warning. The self-

12   serving, vague, and subjunctive statements of Elliott's corporate witnesses notwithstanding,

13   Elliott has failed to make a threshold showing that its products conformed to any reasonably-

14   precise Naval specification in force at plaintiff's workplace from 1969-1979.

15          Should Elliott attempt to make such a showing in response to this motion, Elliott will

16   have to locate new witnesses to do so. The three witnesses who offered declarations to support

17   removal (Hackel, Keenan, and Lehman) have all testified that they are totally unaware of any

18   Naval specification that forbid the placement of an asbestos warning on Elliott products.[25]

19          **iii.   Elliott Has Made Now Showing that It Warned the United States of Dangers

20          in the Use of its Equipment Known to Elliott and Unknown to the United

            States Government.**

21          Finally, Elliott has made no showing whatsoever on this third and critical element of the

22   government contractor's defense. Elliott's entire argument, such as it is, consists of language on

23

_____

[25] See Section II. infra.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMAND- 15
CO5-2144 JLR
S:\Clients\Clients_G\GREGORIO, Alfredo\GregorioA_Pleadings\GregorioA_Federal
Pleadings\GregorioA_PLD_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1    the relative knowledge of Elliott and the Navy, taken from the affidavit of Dr. Betts—a witness

2    Elliott has now withdrawn.[26]   Elliott has made no other attempt to show that it warned the United

3    States of the dangers of its asbestos-containing equipment that were known to Elliott and not

4    known to the United States.

5          In fact, no Elliott witness has even provided the Court with an affirmative claim as to

6    what Elliott's knowledge was regarding the hazards of asbestos in the relevant time frame.  At a

7    minimum, Elliot should be required to make some sort of factual showing regarding both its

8    knowledge and the Navy's.  Elliott has failed to do so, and with the withdrawal of Betts as a

9    witness, has not even tried.   Elliott has made no showing on this issue, and (lacking a witness to

10   do so) Elliott can make no showing.

11   **C.  Without the Government Contractor's Defense, this Case should Be Remanded for**

12        **Lack of Jurisdiction.**

13         In our federal system, it has been axiomatic since the Constitution's ratification that

14   federal Article III courts are courts of limited jurisdiction.  Article III of the Constitution states,

15   *inter alia*, that the judicial power of the United States extends "to all cases, in Law or Equity,

16   arising under this Constitution, the Laws of the United States...." and to "controversies to which

17   the United States shall be a party."  U.S. Const., Art III. §2.

18         Unlike state courts of general jurisdiction, federal courts are empowered only to hear

19   matters that are both within the constitutionally-defined judicial power of the United States set

20   forth in Article III, and that have been entrusted to the federal courts by an explicit jurisdictional

21   grant from Congress.  <u>Insurance Corp of Ireland v. Compagnie des Bauxites de Guinea</u>, 456 U.S.

22   694, 102 S. Ct. 2099, 72 L. Ed.2d 492 (1982).

23

---

[26] See Ladenburg Dec., Ex. 4 (Elliott's notice of withdrawal of Dr. Betts as a removal witness).

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMAND- 16
CO5-2144 JLR
S:\Clients\Clients_G\GREGORIO, Alfredo\GregorioA_Pleadings\GregorioA_Federal
Pleadings\GregorioA_PLD_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1    As a result, there is a presumption that a federal court lacks jurisdiction in any particular

2    case; the party seeking to invoke jurisdiction in federal court has the burden of demonstrating it.

3    Fifty Associates v. Prudential Ins. Co. of America, 446 F.2d 1187 (9th Cir. 1970).  Statutes

4    conferring jurisdiction are to be strictly and narrowly construed, and any doubts are to be

5    resolved against a finding of jurisdiction.  Kirby v. United States, 479 F. Supp. 873 (D. S.C.,

6    1979).  Doubtful cases should be remanded to state court.  Syngenta Crop Protection, Inc. v.

7    Henson, 537 U.S. 28, 31, 123 S.Ct. 366, 154 L. Ed.2d 368 (2002).

8    In this case, the sole basis of alleged federal jurisdiction is the federal officer removal

9    statute, 28 U.S.C. §1442(a)(1).  In Mesa v. California, 489 U.S. 121. 109 S. Ct. 959, 103 L.Ed.

10   2d 99 (1989), the Court explained that the Federal Officer Removal Statute is a "pure"

11   jurisdictional statute, and not a law for which federal courts will able to exercise more standard

12   federal question or "arising under" jurisdiction:

13       Section 1442(a), in our view, is a pure jurisdictional statute, seeking to do
         nothing more than grant district court jurisdiction over cases in which a
14       federal officer is a defendant. Section 1442(a), therefore, cannot
         independently support Art. III "arising under" jurisdiction. Rather, it is the
15       raising of a federal question in the officer's removal petition that
         constitutes the federal law under which the action against the federal
16       officer arises for Art. III purposes. The removal statute itself merely serves
         to overcome the "well-pleaded complaint" rule which would otherwise
17       preclude removal even if a federal defense were alleged.

18   Mesa, 489 U.S., at 136 (emphasis added).  This jurisdictional statute requires Elliott to

19   assert a "colorable" federal defense as a required, essential element of its burden to show

20   federal jurisdiction.  Boyle v. United Technologies Corp, 487 U.S. 500, 108 S.Ct. 2510,

21   101 L. Ed.2d 442 (1988).  In this case, Elliott's federal defense is the "government

22   contractor's defense" set forth in Boyle.

23

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMAND- 17
CO5-2144 JLR
S:\Clients\Clients_G\GREGORIO, Allied\GregorioA_Pleadings\GregorioA_Federal
Pleadings\GregorioA_PLD_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1   Because Elliott has not—and cannot—come forward with any evidence to support

2   any of the required three elements of the <u>Boyle</u> defense, this case should be remanded to

3   Washington State Superior Court for lack of jurisdiction.

4                              VI.   **CONCLUSION**

5       For the foregoing reasons. the Court should dismiss Elliott's "government

6   contractor" affirmative defense, and remand this case to Washington State Superior

7   Court.

8

9       DATED this 13th day of April, 2006.

10                         BERGMAN & FROCKT

11

12                         __//s_____

13                         Matthew P. Bergman, WSBA #20894
                           David S. Frockt. WSBA #28568
                           Brian F. Ladenburg, WSBA #29531
14                         Counsel for Plaintiff
                           Bergman & Frockt
15                         705 Second Avenue, Suite 1601
                           Seattle, WA  98104
16                         Telephone:    (206) 957-9510
                           Fax:          (206) 957-9549
17                         E-mail: david@bergmanlegal.com

18

19

20

21

22

23

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMAND- 18
CO5-2144 JLR
S:\Clients\Clients_G\GREGORIO, Alfredo\GregorioA_Pleadings\GregorioA_Federal
Pleadings\GregorioA_PLD_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

<u>Certificate of Service</u>

I certify that on the date noted below I electronically filed this document entitled "Notice of Intent to File Motion to Remand" with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

**Counsel for Saberhagen Holdings, Inc.**
Timothy Thorson
CARNEY BADLEY & SPELLMAN
701 Fifth Avenue, Suite 5800
Seattle, WA 98104

**Counsel for Ingersoll-Rand; and Leslie Controls, Inc.**
Kevin C Baumgardner
CORR CRONIN MICHELSON BAUMGARDNER & PREECE, LLP
1001 Fourth Avenue, Suite 3900
Seattle, WA 98154

**Counsel for Allis-Chalmers Corporation Product Liability Trust**
Chris R Youtz
SIRIANNI YOUTZ MEIER & SPOONEMORE
719 Second Avenue, Suite 1100
Seattle, WA 98104

**Counsel for IMO Industries, Inc.**
James E Horne
KINGMAN PEABODY PIERSON & FITZHARRIS
505 Madison, Suite #300
Seattle, WA 98104

**Counsel for Carrier Corporation**
Dennis Smith
WILSON SMITH COCHRAN DICKERSON
1215 Fourth Avenue, Suite 1700
Seattle, WA 98161

**Counsel for Caterpillar, Inc.**
Thomas R Merrick
BULLIVANT HOUSER BAILEY, PC
1601 Fifth Avenue, Suite 2400
Seattle, WA 98101

**Counsel for Crane Co.; and Colpes Vulcan, inc.**
Barry N Mesher
Brian Zeringer
LANE POWELL, PC

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMAND- 19
CO5-2144 JLR
S:\Clients\Clients_G\GREGORIO, Alfredo\GregorioA_Pleadings\GregorioA_Federal
Pleadings\GregorioA_Pl.D_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1420 Fifth Avenue. Suite 4100
Seattle, WA 98101

**Counsel for Elliott Company**
Catherine Jeannotte/Melissa K Habeck
FORSBERG & UMLAUF. P.S.
900 Fourth Avenue, Suite 1700
Seattle. WA 98164

**Counsel for Fairbanks Morse Pump Corporation**
G William Shaw
PRESTON GATES & ELLIS, LLP
925 Fourth Avenue, Suite 2900
Seattle. WA 98104

**Counsel for Viad Corporation**
Ronald C Gardner
GARDNER BOND TRABOLSI ST. LOUIS & CLEMENT. PLLC
2200 Sixth Avenue, Suite 600
Seattle, WA 98121

**Counsel for Hardie-Tynes Co., Inc.**
Jackson Schmidt
PEPPLE JOHNSON CANTU & SCHMIDT, PLLC
1218 Third Avenue, Suite 1900
Seattle. WA 98101

**Counsel for The Gorman-Rupp Company**
Christopher S Marks
WILLIAMS KASTNER & GIBBS. PLLC
601 Union Street, Suite 4100
Seattle, WA 98101

**Counsel for J.T. Thorpe & Son, Inc.**
Katherine M Steele
STAFFORD FREY COOPER
601 Union Street, Suite 3100
Seattle. WA 98101

**Counsel for Warren Pumps, Inc. and Dover Corporation**
J Michael Mattingly
STEVEN V. RIZZO, P.C.
Lincoln Place, Suite 350
1620 S.W. Taylor Street
Portland, OR 97205

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMAND- 20
CO5-2144 JLR
S:\Clients\Clients_GIGREGORIO, Alfredo\GregorioA_Pleadings\GregorioA_Federal
Pleadings\GregorioA_PLD_MSJandRemand.doc

BERGMAN & FROCKT
7115 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549

1  **Counsel for Kelly-Moore Paint Company, Inc.**
   Sharon Ambrosia-Walt
2  PREG O'DONNELL & GILLETT, PLLC
   1800 – 9th Ave. #1500
3  Seattle, WA  98101

4  **Counsel for Cooper Industries, Inc.**
   Steven W. Block
5  BETTS PATTERSON & MINES, P.S.
   701 Pike Street, Suite 1400
6  Seattle, WA 98101

7

8

9          DATED at Seattle, Washington this 13th day of April, 2006.

10

11                              //s
                                David S. Frockt, WSBA #28568
12                              Bergman & Frockt
                                705 Second Avenue, Suite 1601
                                Seattle, WA  98104
13                              Telephone:     (206) 957-9510
                                Fax:               (206) 957-9549
14                              E-mail: david@bergmanlegal.com

15

16

17

18

19

20

21

22

23

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMAND- 21
CO5-2144 JLR
S:\Clients\Clients_G\GREGORIO, Alfredo\GregorioA_Pleadings\GregorioA_Federal
Pleadings\GregorioA_PLD_MSJandRemand.doc

BERGMAN & FROCKT
705 SECOND AVENUE, SUITE 1601
SEATTLE, WA 98104
TELEPHONE: 206.957.9510
FACSIMILE: 206.957.9549