**MDL 875**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

OCT 11 2006

FILED
CLERK'S OFFICE

RE:   MDL Docket No. 875 – In Re: Asbestos Products Liability Litigation (No. VI)
      Conditional Transfer Order (CTO-268)

ROBERT H. CHOFF, etal.

    Plaintiffs,

Vs.                                         Civil Action No. 1:06-cv-95
                                         (Northern District, West Virginia)

CROWN BEVERAGE PACKAGING, etal.,

    Defendants.

### PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER

Comes now counsel for plaintiffs in the above referenced matter and hereby moves that this Court vacate conditional transfer order transferring this case to the Judicial Panel on Multidistrict Litigation. The Choff plaintiffs' claims are for medical monitoring pursuant to West Virginia case law. Plaintiffs are not, as yet, physically injured. There is no product liability claim against manufacturers of asbestos containing products. There are no common questions of fact pursuant to 28 U.S.C.A. §1407(a), and accordingly the Panel does not have venue or jurisdiction to transfer. Therefore plaintiffs oppose transfer and move this Court to vacate conditional transfer order with respect to their claims.

<u>Plaintiffs by counsel</u>

_____

Pat Jacobs, Esq.
Tom White, Esq.
Bickley & Jacobs
7020 MacCorkle Ave., SE
Charleston, WV  25324

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

2006 OCT 11  A 10: 49

RECEIVED
CLERK'S OFFICE

PLEADING NO. 4897

(304) 926-6676

John Skaggs, Esq.
THE CALWELL PRACTICE
500 Randolph St.
Charleston, WV 25302
(304) 343-4323

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION OCT 1 1 2006

FILED
CLERK'S OFFICE

RE:     MDL Docket No. 875 – In Re: Asbestos Products Liability Litigation (No. VI)
          Conditional Transfer Order (CTO-268)

ROBERT H. CHOFF, etal.

     Plaintiffs,

Vs.                                                           Civil Action No. 1:06-cv-95
                                                              (Northern District, West Virginia)

CROWN BEVERAGE PACKAGING, etal.,

     Defendants.

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF
### MOTION TO VACATE CONDITIONAL TRANSFER ORDER

Pursuant to Rule 7.4, plaintiffs in the above civil action have filed a motion to

vacate conditional transfer to the Judicial Panel on Multidistrict Litigation. The Choff

plaintiffs' claims are for medical monitoring pursuant to West Virginia case law.

Plaintiffs are not, as yet, physically injured. There is no asbestos product liability

defendant at all in this case. There are no common questions of fact pursuant to 28

U.S.C.A. §1407(a), and accordingly the Panel should not exercise venue or jurisdiction

over this case and should vacate conditional transfer.

The plaintiffs seek relief in the form of medical monitoring for their workplace

exposure to asbestos, silica and other hazardous substances at the defendants' cardboard

packaging manufacturing plant in Grafton, Taylor County, West Virginia. Defendants

are employers, owners and operators of this plant, a machinery manufacturer and a West

Virginia resident paper supplier. Not one defendant is a manufacturer of asbestos

containing products. There is no asbestos product liability claim alleged anywhere in

plaintiffs' complaint (Exhibit A).  Plaintiffs do allege long-term workplace exposure to these products, but do not allege physical injury.  The relief they seek is a fund to monitor their health in the future.

Plaintiffs' complaint is grounded in West Virginia common law.  Plaintiffs have alleged negligence, deliberate intent, strict liability and abnormally dangerous work conditions.  They seek relief in the form of medical monitoring pursuant to *Bower vs. Westinghouse Electric Corp.,* 522 S.E.2d 424 (W.Va. 1999).  The elements of this claim are far different from those before the Panel.

> In order to sustain a claim for medical monitoring expenses under West Virginia law, the plaintiff must prove that (1) he or she has, relative to the general population, been significantly exposed; (2) to a proven hazardous substance; (3) through the tortious conduct of the defendant; (4) as a proximate result of the exposure, plaintiff has suffered an increased risk of contracting a serious latent disease; (5) the increased risk of disease makes it reasonably necessary for the plaintiff to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of the exposure; and (6) monitoring procedures exist that make the early detection of a disease possible. *Bower,* Syl. Pt. 3.

Plaintiffs have to prove each one of these six factors to be entitled to medical monitoring relief.  However, they *do not* have to prove that they suffer current physical injury as they must in the multidistrict litigation before the panel.  Nor must they prove that defendants manufactured a dangerously defective product containing asbestos.

28 USCA §1407(a) provides for transfer to the Panel when civil actions in different districts involve "one or more common questions of fact," and when the Panel determines transfer will be convenient and will "promote the just and efficient conduct of such actions."  Choff plaintiffs by counsel submit that neither condition exists here.  Indeed, plaintiffs claim for medical monitoring shares *no* common question of fact with

the claims before the Panel in MDL-875 – *In Re: Asbestos Products Liability Litigation (No. VI)*.

28 USCA §1407(a) also provides that each action shall be remanded to the respective district upon conclusion of pretrial proceedings meriting transfer.   In the present case defendant International Paper, the sole defendant seeking transfer, has offered no common fact question to be resolved by the Panel.   Transfer will therefore only needless delay resolution of plaintiffs' claim.

Finally, plaintiffs submit that their action is a matter of West Virginia law to be determined by West Virginia courts.[1]   This case does not belong in federal court at all. First, although the *Choff* litigation was filed as a class action, the plaintiffs claims for medical monitoring do not meet the jurisdiction requirement of $5 million in order to satisfy federal jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C.A. §1332.   (See complaint)   Second, plaintiffs' complaint involves a matter of West Virginia law with a significant West Virginia defendant (Banner Fibreboard), thereby defeating diversity jurisdiction.   Third, and perhaps most important, 28 U.S.C.A. 1332(4) of CAFA provides that federal courts *shall* decline jurisdiction of class actions where at least one significant defendant and more than two-thirds of class members are citizens of the same state where the claim was filed, as in the present case.   (Please see attached *Plaintiffs Omnibus Reply to Defendants' Response To Motion to Remand, Stay and Further Response to Motion to Dismiss*, Attached as Exhibit B).   There is no discretion when these two conditions are met, and the federal court must decline jurisdiction.

---

[1]    This case was originally filed in the Circuit Court of Taylor County, West Virginia. Defendants sought removal to the Northern District of West Virginia at Clarksburg.  Pending before that Court is plaintiffs' motion to remand.

Therefore, in view of the foregoing, plaintiffs oppose transfer and move this Court to vacate the conditional transfer order Sept. 15, 2006 with respect to their claims.

<u>Plaintiffs by counsel</u>

Pat Jacobs, Esq.
Tom White, Esq.
Bickley & Jacobs
7020 MacCorkle Ave., SE
Charleston, WV  25324
(304) 926-6676

John Skaggs, Esq.
THE CALWELL PRACTICE
500 Randolph St.
Charleston, WV  25302
(304) 343-4323

4

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION OCT 1 1 2006

FILED
CLERK'S OFFICE

RE:  MDL Docket No. 875 – In Re: Asbestos Products Liability Litigation (No. VI)
Conditional Transfer Order (CTO-268)

ROBERT H. CHOFF, etal.

Plaintiffs,

Vs.                                    Civil Action No. 1:06-cv-95
(Northern District, West Virginia)

CROWN BEVERAGE PACKAGING, etal.,

Defendants.

### CERTIFICATE OF SERVICE

I, Tom White, hereby certify that on the _10_ day of _Oct._ 2006 I
electronically filed the within PLAINTIFFS' MOTION TO VACATE CONDITIONAL
TRANSFER ORDER, and PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION TO VACATE CONDITIONAL TRANSFER ORDER with the Clerk of the
Court and on the following counsel designated on the attached Panel Service List
(Excerpted from CTO-268, Docket No. 875:

Tom White, Bar No. 6393
Bickley & Jacobs
7020 MacCorkle Ave. SE
Charleston, WV 25304

**PANEL SERVICE LIST (Excerpted from CTO-268)**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

*Robert H. Choff, et al. v. Crown Beverage Packaging, Inc., et al.,* N.D. West Virginia,
C.A. No. 1:06-95  (Judge Irene M. Keeley)

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001

David A. Damico
Burns, White & Hickton, LLC
Four Northshore Center
106 Isabella St.
Pittsburgh, PA 15212

Margaret A. Droppleman
Hawkins & Parnell, LLP
The Woodrum Building
602 Virginia Street
Suite 200
Charleston, WV 25301

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106-2574

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Susan M. Hansen
Brownson & Ballou
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

Ollie M. Harton
Hawkins & Parnell, LLP
4000 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA 30308-3243

Michael E. Hutchins
Kasowitz, Benson, Torres & Friedman
1360 Peachtree Street, N.E.
One Midtown Plaza, Suite 1150
Atlanta, GA 30309

G. Patrick Jacobs
Bickley & Jacobs
7020 MacCorkle Avenue, SE
Charleston, WV 25304

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308-1314

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Robert R. Leight
Pietragallo, Bosick & Gordon
One Oxford Center
38th Floor
Pittsburgh, PA 15219

Gene Locks
Locks Law Firm, LLC
1500 Walnut Street
Philadelphia, PA 19102

J. Miles Morgan
Hendrickson & Long, PLLC
P.O. Box 11070
Charleston, WV 25339

Ronald L. Motley
Motley Rice, LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

Beth Ann Rauer
Robinson & McElwee
P.O. Box 1791
Charleston, WV 25326

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney, PC
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

Jeffery L. Robinette
Robinette Legal Group, PLLC
475 Fairchance Road
Morgantown, WV 26508

John D. Roven
Roven, Kaplan & Wells, L.L.P.
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

John H. Skaggs
Calwell Practice
500 Randolph Street
P.O. Box 113
Charlestown, WV 25302

Amy M. Smith
Steptoe & Johnson
P.O. Box 2190
Clarksburg, WV 26302-2190

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA 19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1570 Penobscot Building
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226

Andrew J. Trevelise
Reed Smith, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

James K. Weston II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

### CIVIL CASE INFORMATION STATEMENT
### CIRCUIT COURT OF TAYLOR COUNTY, WEST VIRGINIA

## I.  CASE STYLE:

**PLAINTIFFS**                                        CASE # 06-C-36    **FILE**

Robert H. Choff, Presly Knight,

Karl Domboski, Ronnie Crimm,

John Jacobs, Richard Abel, Roger Curry                    Date of

Filing:_____

c/o G. Patrick Jacobs, Esquire____

7020 MacCorkle Avenue, S.E.____               Judge:_____    CIRCUIT COURT
Street                                                            TAYLOR COUNTY
                                                                  FILED
Charleston, WV_____25304
City          State        Zip                                   MAY 10 2006
Phone Number: (304)__926-6676
                                                              VONDA M. RENEMAN
Social Security #:                                                  CLERK

vs.

**DEFENDANTS**                          Days to
                                        Answer        Type of Service
1.____Crown Beverage Packaging, Inc._____
                                          30__        Sec. State
C/O Ct Corporation 1600 Charleston National Plaza_
Street

Charleston, West Virginia 25301
City          State        Zip

2.____Georgia-Pacific Corporation_____           **FILE**

C/O CT Corporation System P.O. Box 951_____
Street

Charleston, WV 25323_____
City          State        Zip
Phone Number: _____
 Social Security #:_____

3.  International Paper Company
6400 Poplar Avenue
Memphis TN  38197

1



PLAINTIFF'S
EXHIBIT
A

4.  Pactiv Corporation
C/O Doug Schimpf
1900 West Field Court
Lake Forest, ILL  60045


5.  Banner Fibreboard Company
C/O/ Arthur W. Scherich
P.O. Box 390
Wellsburg, WV  26070

6.  Beazer East, Inc.
C/O CT Corporation
707 Virginia St., East
Charleston, WV  25301


7.  Packaging Corporation of America
C/O National Registered Agents, Inc.
300 Kanawha Blvd.
Charleston, WV  25321


9.  Danny Kirkpatrick and Lec Fleisher, individuals


Original and Two (2) copies of Complaint, Summons and Civil Case Information Statement furnished herewith.


| PLAINTIFF:   Choff, etal <br> DEFENDANT: Crown Beverage Packaging, etal. | CASE NUMBER: <br> 06-C-_____ |
| --- | --- |

## II.TYPE OF CASE:

## TORTSOTHERCIVIL

| | | |
| --- | --- | --- |
| Asbestos | Adoption | Appeal for Magistrate Court |
| Professional Malpractice | Contract | Petition for Modification Of Magistrate Sentence |
| **X** Personal Injury | Real Property | Miscellaneous Civil |

2

| Product Liability | Appeal of Administrative Agency | Other (Specify): |
|---|---|---|

III   JURY DEMAND **YES**   No

CASE WILL BE READY FOR TRIAL BY (MONTH/YEAR):  May 2008

IV   DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES
IN THIS CASE REQUIRE SPECIAL ACCOMMODATIONS
DUE TO A DISABILITY OR AGE? □ YES √ NO
IF YES, PLEASE SPECIFY:
      □ Wheelchair accessible hearing room and other facilities
      □ Interpreter or other auxiliary aid for the hearing impaired
      □ Reader or other auxiliary aid for the visually impaired
      □ Spokesperson or other auxiliary aid for the speech impaired
      □ Other:

*Attorney Name:* G. Patrick Jacobs
*Firm:* The Law Office of G. Patrick Jacobs, L.C.
*Address:* 7020 MacCorkle Avenue, S.E.
Charleston, WV 25304

*Representing:*
**Plaintiff**        *Defendant*
*Cross-Complainant Cross-Defendant*
*Dated* **05-08-06**

□ *Pro Se*

*G. Patrick Jacobs, Esq. (WVSBN. 1867)*

3

IN THE CIRCUIT COURT OF TAYLOR COUNTY, WEST VIRGINIA

Robert H. Choff, Presley Knight,
Karl Domboski, Ronnie Crimm,
John Jacobs, Richard Abel, Roger Curry

      Plaintiffs,

Vs.                        Taylor Civil Action No. 06-C-36

Crown Beverage Packaging, Inc., successor to Continental Can Corp.;
Georgia-Pacific Corporation;
International Paper Company, successor to St. Regis Paper Company;
Pactiv Corporation;
Packaging Corporation of America;
Beazer East, Inc., successor to Koppers Company, Inc.;
Banner Fibreboard Company;
Danny Kirkpatrick and Lec Fleisher, individuals,

      Defendants.

## COMPLAINT

### PARTIES

1.     At all relevant times, plaintiffs were employees at the defendant employers' cardboard packaging plant located in Grafton, Taylor County, West Virginia.

2.     Defendant Crown Beverage Packaging, Inc., successor to Continental Can Corp., is a Delaware corporation licensed to do business in West Virginia, and owned and operated a cardboard packaging plant located in Grafton, Taylor County, West Virginia.

3.     Defendant Georgia-Pacific Corporation is a Georgia corporation licensed to do business in West Virginia, and owned and operated a cardboard packaging plant located in Grafton, Taylor County, West Virginia.

4.     Defendant International Paper Company, successor to St. Regis Paper Company, is a New York corporation licensed to do business in West Virginia, and owned

1

and operated a cardboard packaging plant located in Grafton, Taylor County, West Virginia.

5.     Defendant Pactiv Corporation is a Delaware corporation licensed to do business in West Virginia, and owned and operated a packaging plant located in Grafton, Taylor County, West Virginia.

6.     Defendant Packaging Corporation of America is a Delaware corporation licensed to do business in West Virginia, and owned and operated a packaging plant located in Grafton, Taylor County, West Virginia.

7.     Defendant Beazer East., Inc., is a Delaware corporation licensed to do business in West Virginia, and is successor to Koppers Company, Inc., which designed and sold the equipment and machinery installed in the cardboard packaging plant that is the subject of plaintiffs' complaint.

8.     Defendant Banner Fibreboard Company is a West Virginia corporation engaged in the manufacture, sale and distribution of paper packaging products.

9.     Defendants Danny Kirkpatrick and Lec Fleisher were at all relevant times, respectively, plant manager and production manager, West Virginia citizens, and agents and employees of defendants Pactiv Corporation and Packaging Corporation of America.

10.     Venue is proper in this court as the defendants were doing business in this jurisdiction consistent with W.Va. Code §§§56-1-1, 31-1-15, 31D-15-1501.

## FACTUAL ALLEGATIONS

11.     The following defendant corporations were, at all relevant times, the owners and operators of a card board paper packaging plant in Grafton, Taylor County, West Virginia and adjoining parcel with a building that at one time housed a glass plant:

2

Crown Beverage Packaging, Inc., successor to Continental Can Corp.;
Georgia-Pacific Corporation;
International Paper Company, successor to St. Regis Paper;
Pactiv Corporation;
Packaging Corporation of America;

12.     At all relevant times, plaintiffs were employees of the employer defendants named above, and worked at the above-mentioned plant and an adjoining glass plant facility, all owned and operated by said defendants.  Periods of their employment varied, and encompassed approximately 45 years from June 1959 to October 2005 when the plant ceased operations.

13.     During their employment, plaintiffs were continuously exposed to hazardous levels of respirable dust, including but not necessarily limited to asbestos and silica dust fibers.  The source of asbestos fibers included, among other things, a steam generating boiler and associated piping.  The source of silica fibers included, among other things, materials used in making, shaping and cutting of cardboard packaging at the plant. These fibers were friable, airborne, and hazardous to plaintiffs' health and well-being.  In fact, plant workers were frequently instructed to employ air pressure at up to 100 psi to clean accumulated dust from rafters, piping and other surfaces within the plant, thereby exposing themselves and others to unreasonable risks associated with these materials.

14.     Plaintiffs were required to handle and use asbestos and silica containing products, including removing asbestos insulation and handling, cutting and assembling silica containing paper products.  At such times when not actually handling these materials, plaintiff class members were frequently exposed to such fibers in the regular course of their duties.

15.    Cleaning of the machinery was accomplished by using, among other things, No. 2 heating oil or diesel fuel, which when in contact with hot machinery vaporized and exacerbated inhalation of hazardous dust fibers, and in itself was hazardous to the health of plaintiffs.

16.    The exposures to asbestos- and silica-containing materials, as well as to other dust particles and solvent or petroleum-based materials, as alleged in the foregoing paragraphs have jeopardized the future health and well-being of plaintiffs.   These exposures dramatically increase the risk of developing the following diseases, which diseases are non-exclusive:

*Asbestosis:*  This is by definition a fibrosis of the lung that has no other cause but exposure to asbestos.  It is a dose-responsive disease that is progressive in nature and that can be disabling and life threatening.

*Silicosis:* This is by definition a fibrosis of the lung that has no other cause but exposure to silica.  It is a dose-responsive disease that is progressive in nature and that can be disabling and life threatening.

*Lung Cancer:*  Neoplasms of the lung have long been associated with asbestos and silica exposure.  Asbestos is accepted as a carcinogen by the International Agency for Research on Cancer of the World Health Organization and US agencies such as NIOSH. The lung is an established target organ for the carcinogenic affects of asbestos.

*Other cancers:*  Laryngeal and other respiratory tract and GI tract carcinomas are also significantly promoted and occur at increase rate as a result of exposure to asbestos and/or silica.

4

*Mesothelioma:*   This disease, absent exposure to asbestos, is an extremely rare tumor of the lining of the lung (pleural mesothelioma), or the lining of the bottom of the lung resting on the diaphragm (peritoneal mesothelioma).   The only established cause of this tumor in man, except for radiation exposure, is asbestos.   It is always fatal.

17.   Each of the diseases set forth above tend to occur at increased rates the more a given population is exposed to asbestos, silica and other such dust fibers and materials.   For example, with specific reference to the neoplasms, even low levels of exposure to asbestos can and do cause these diseases.   There is no scientifically accepted "safe level" of exposure to asbestos.   Even standards developed by OSHA, calling for dust concentration to be kept below certain levels, were only designed to prevent asbestosis, they were never designed to prevent the occurrence of neoplasms.

18.   Medical and scientific studies have repeatedly warned that asbestos- and silica-containing materials in buildings represented a real and significant risk to those who regularly worked in or inhabited these structures.   The studies demonstrate the incidence of abnormalities on chest x-ray examination and pulmonary function tests, and even the occurrence of mesothelioma among such workers.

19.   It has long been recognized in science and medicine that environment and "neighborhood" exposures were sufficient to cause occupational lung diseases.

20.   The Plaintiffs have suffered, and will continue to suffer for the rest of their lives, emotional distress, mental anguish and fear over the unwarranted risks that they will develop an asbestos, silica or other occupational-related disease or cancer as a direct and proximate result of the Defendants' acts and omissions.   In light of the scientific and medical evidence that exposure to these dust-containing materials as alleged herein is a

precedent to real and significant risks of disease and cancer, the Plaintiffs' fears are reasonable and proportionate to the risks presented.

21.     These risks require that Plaintiffs be regularly monitored by doctors competent to detect early signs of disease, in the hope that (i) at least as to lung cancer early intervention might save lives, and (ii) for other dust-related, or other occupationally-related diseases that every effort might be made to minimize or contain the harm.

## CLASS ACTION ALLEGATIONS

22.     Plaintiffs bring this action as a class action for damages pursuant to Rule 23(b)(3) of the West Virginia Rules of Civil Procedure.  The class is defined as follows:

> All full-time employees of the defendants at the Grafton packaging facility from 1959 to October 2005 who currently do not suffer from any occupational asbestos- or silica-related disease, cancer or condition.

23.     Plaintiffs are members of the Class they seek to represent.  The members of the Class are so numerous, numbering in the hundreds, that their individual joinder as plaintiffs is impracticable.

24. There are many issues of the law and fact common to each member of the Class including but not limited to:

(A)     The employer defendants exposed Class members to asbestos, silica or other dusts, or hazardous substances;

(B)     The defendants failed to warn the Class members about the existence, nature and hazards of asbestos and silica contamination in, throughout and about the Defendants' buildings;

(C)   Class members' increased risk of sustaining harm makes periodic diagnostic medical examinations (medical monitoring) reasonably necessary.

(D)   Emotional distress and mental suffering and anguish claimed by Class members is a reasonable, anticipated and foreseeable harm in light of the possible sequella that can flow from their exposures to asbestos and silica dusts and other materials as alleged herein;

(E)   The ascertainment of damages necessary to find the medical monitoring of each Class member, now and in the future, and the ascertainment of damages to compensate each Class member for the reasonable fear and anxiety suffered by each member of the class.

25.   The claims of the named Plaintiffs are typical of the claims of the Class in that the named plaintiffs and the members of the Class were exposed to asbestos and silica dusts in, on or about the Defendants' premises and workplace.

26.   Notice can be provided to Class members by first class mail and/or by published notice using the manners and forms of notice customarily used in toxic-related class action tort litigation consistent with Rule 23(b)(3) and Rule 23(c) of the West Virginia Rules of Civil Procedure.

27.   Plaintiffs seek compensatory relief for themselves and for each member of the Class who have suffered emotional distress over the fact that their individual and collective health and well-being have been put at risk as a consequence of the Defendants exposing the Plaintiffs and Class members to dangerous levels of asbestos and silica dusts, known human carcinogens.

7

28.     Class certification is also appropriate because the prosecution of separate actions by or against individual members of the Class would create substantial risk of incompatible standards of conduct for the Defendants and inconsistent or varying adjudications for all parties.

29.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class.  In that regard they have retained skilled counsel experienced in asbestos litigation and class action.

30.     The value of plaintiffs' claims does not exceed $5 million.

31.     Wherefore, the plaintiffs pray that this Court find that the plaintiffs have stated a class action pursuant to Rule 23 of the West Virginia Rules of Civil Procedure, that notice be given affected persons, that they be appointed class representatives, that counsel be designated class counsel, and that they be granted such further relief as the Court may deem fit.

## COUNT I – NEGLIGENCE BY PREMISES OWNERS

32.     Plaintiffs incorporate by reference all preceding paragraphs.

33.     The following defendant corporations were, at all times relevant herein, the premises owners of the card board paper packaging plant in Grafton, Taylor County, West Virginia and adjoining parcel with a building that at one time housed a glass plant, all of which are the subject of plaintiffs' complaint:

>   Crown Beverage Packaging, Inc., successor to Continental Can Corp.;
>   Georgia-Pacific Corporation;
>   International Paper Company, successor to St. Regis Paper;
>   Pactiv Corporation;
>   Packaging Corporation of America;

34.     Defendants premises owners, as owners and operators of the premises described herein, owed the plaintiffs a duty to provide a reasonably safe place to work and to exercise reasonable care in protecting plaintiffs from workplace hazards.  Defendants negligently breached this duty in the following non-exclusive particulars:

(a)     Defendants specified the use of asbestos products, including but not limited to pipe insulation, cement and finishing products, for use in the plant, including by the plaintiffs and coworkers, after defendants knew or reasonably should have known of the dangers associated with workplace exposure to airborne asbestos fibers.

(b)     Defendants specified the use of silica containing products, including but not limited to, cardboard papers and clays associated in the manufacturing, cutting and shaping of defendants' packaging products.

(c)     Defendants knew or reasonably should have known of the dangers associated with airborne asbestos, silica and other dust fibers and petroleum or solvent materials, created by among other things: cutting, shaping or removing asbestos insulation; tearing out existing asbestos insulation; cutting shaping and manufacturing silica-containing packaging; cleaning, sweeping and blowing silica and asbestos containing dusts.

(d)     Defendants failed to take reasonable precautions to warn plaintiffs of the dangers to which they were exposed.

(e)     Defendants failed to provide protective equipment and/or clothing to protect plaintiffs from exposure to these materials.

(f)       Design, construction, maintenance, installation or placement of asbestos insulation in the defendants' facility created an unreasonable risk of harm to plaintiffs directed to work on defendants' premises.

(g)       The manufacturing, shaping and cutting of silica-containing clays, paper and packaging materials created an unreasonable risk of harm to plaintiffs directed to work on defendants' premises.

(h)       Defendants failed to provide adequate inspection and supervision with regard to the activities of their own employees, contractors and subcontractors involving use of asbestos and silica containing materials as aforesaid.

(i)       Defendants failed to provide adequate ventilation systems to prevent the risk of exposure to hazardous asbestos, silica and other dusts and materials.

35.     As a direct and proximate result of defendants' negligence described above, plaintiffs have suffered, and will continue to suffer for the rest of their lives, emotional distress, mental anguish and fear over the unwarranted risks that they will develop an asbestos, silica or other occupational disease or cancer.

## COUNT II -- DELIBERATE INTENT BY EMPLOYERS

36.     Plaintiffs incorporate by reference all preceding paragraphs.

37.     The following defendant corporations were, at all times relevant herein, the employers of the plaintiffs at said packaging plant:

Crown Beverage Packaging, Inc., successor to Continental Can Corp.;
Georgia-Pacific Corporation;
International Paper Company, successor to St. Regis Paper;

Pactiv Corporation;
Packaging Corporation of America;
Danny Kirkpatrick and Lec Fleisher, individuals and agents of employers

38.     Defendants conduct as alleged herein constitute acts of deliberate intention as that term is defined in W.Va. Code §23-4-2(c)2(ii) as follows:

a.      At all relevant times, defendant employers knew that a specific unsafe working condition existed at said plant which presented a high degree of risk and a strong probability of serious injury or death to plaintiffs.  This specific unsafe working condition is the opportunity for exposure to respirable asbestos, silica and other dusts and materials as a direct and proximate result of defendants' failure to provide adequate ventilation, protective equipment and other industrial hygiene controls,

b.      At all relevant times, defendant employers had a subjective realization and appreciation of the existence of such specific unsafe working conditions and of the high degree of risk and strong probability of serious injury or death presented by such conditions.

c.      At all relevant times, defendant employers knew that such unsafe working conditions were in violation of state or federal safety statutes, rules or regulations, and of commonly accepted and well-known industry safety standards, as well as rules and regulations governing the safety of those employed in the manner of the plaintiffs.  Such violations include, but are not limited to, failure to conduct adequate hazard assessments; to provide personal

protective equipment, to conduct air and biological monitoring; and to provide hazardous material training.

d.     Notwithstanding the foregoing, defendant employers nevertheless intentionally exposed plaintiffs to such specific unsafe working conditions.

e.     As a direct and proximate result of exposing plaintiffs to specific unsafe working conditions, Plaintiffs have suffered, and will continue to suffer for the rest of their lives, emotional distress, mental anguish and fear over the unwarranted risks that they will develop an asbestos, silica or other occupational disease or cancer.

## COUNT III – LIABILITY OF DEFENDANTS PACTIV CORP., PACKAGING CORPORATION OF AMERICA LOSS OF STATUTORY IMMUNITY

39.     Plaintiffs incorporate by reference all preceding paragraphs.

40.     Defendant Pactiv Corporation, then known as Packaging Corporation of America, was in default of its legal obligations to the West Virginia Workers Compensation Fund, within the meaning of W.Va. Code §23-2-5, during the periods of Jan. 31, 1991 to May 29, 1991, from August 1, 1997 to Nov. 10,1997, and from Feb. 7, 1998 to May 5, 1998.

41.     As a result of said defaults defendant Pactiv Corporation has lost statutory immunity from common law liability under W.Va. Code §§23-2-6, 23-2-8 for the time periods above, and is stripped of any and all common law defenses.  Defendant Pactiv Corporation is strictly liable to plaintiffs.

42.     As a direct and proximate result of exposing plaintiffs to specific unsafe working conditions, Plaintiffs have suffered, and will continue to suffer for the rest of their lives, emotional distress, mental anguish and fear over the unwarranted risks that they will develop an asbestos, silica or other occupational disease or cancer.

### COUNT IV – NEGLIGENCE BY BEAZER EAST, INC.

43.     Plaintiffs incorporate all preceding paragraphs.

44.     Defendant Beazer East., Inc, successor to Koppers Company, Inc. owed a duty to plaintiffs to properly design, manufacture, distribute and install the machinery used by plaintiffs at premises defendants' packaging plant, including among other things the corrugator.

45.     The corrugator and other machinery used to manufacture, cut and shape packaging at said plant was negligently engineered, designed, manufactured, distributed and installed, including in the following, non-exclusive particulars:

a.     Inadequate ventilation to the exterior of any dust particles and fumes and vapors generated in the manufacturing process;

b.     Inadequate warnings that working with and around the machinery would expose workers to unsafe levels or respirable dust and fumes and vapors;

c.     Inadequate protective measures to protect workers from exposure to respirable dust and fumes and vapors.

47.     The negligent design and engineering of the machinery as specified above created an unreasonable risk to plaintiffs of unsafe exposure to silica-containing dust.

48.     As a direct and proximate result of the negligent design, engineering and installation of the machinery described herein, Plaintiffs have suffered, and will continue

to suffer for the rest of their lives, emotional distress, mental anguish and fear over the unwarranted risks that they will develop an asbestos, silica or other occupational disease or cancer.

## COUNT IV -- STRICT LIABILITY BY BEAZER EAST

46.     Defendant Beazer East., Inc, successor to Koppers Company, Inc. designed, engineered, manufactured, distributed and installed the machinery used by plaintiffs at premises defendants' packaging plant, including among other things the corrugator.

47.     Defendant Beazer's machinery used to manufacture, cut and shape packaging at said plant was not reasonably safe for its intended use, including in the following, non-exclusive particulars:

  d.     Inadequate ventilation to the exterior of any dust particles and fumes and vapors generated in the manufacturing process;

  e.     Inadequate warnings that working with and around the machinery would expose workers to unsafe levels or respirable dust and fumes and vapors;

  f.     Inadequate protective measures to protect workers from exposure to respirable dust and fumes and vapors.

48.     The unsafe design and engineering of the machinery as specified above created an unreasonable risk to plaintiffs of unsafe exposure to silica-containing dust.

49.     As a direct and proximate result of the design, engineering and installation of the corrugator and other plant machinery, Plaintiffs have suffered, and will continue to suffer for the rest of their lives, emotional distress, mental anguish and fear over the unwarranted risks that they will develop an asbestos, silica or other occupational disease

or cancer, for which Defendant Beazer East, Inc., is strictly liable to plaintiffs. *Morningstar vs. Black & Decker*, 253 S.E.2d 666 (W.Va. 1979)

### COUNT V – STRICT LIABILITY AS TO ALL PREMISES DEFENDANTS

50.    Plaintiffs incorporate all preceding paragraphs.

51.    At all relevant times premise defendants' possession and use of asbestos and silica containing materials constituted the use of abnormally dangerous instrumentalities and the carrying on of abnormally dangerous activities: to wit:

a.    Presence of respirable asbestos, silica and other dust fibers and materials, creating high risk of harm to plaintiffs.

b.    Respirable asbestos, silica and other dust fibers and materials created the likelihood that such harm would be great.

c.    There existed an inability to eliminate risk by exercise of reasonable care.

d.    The use and presence of such fibers is not a matter of common useage.

e.    The use and presence of these dust fibers is inappropriate to carry on in the presence of human beings.

f.    The dangerous attributes of these dust fibers outweigh any value to the community. *Peneschi vs. National Steel*, 295 S.E.2d 1 (W.Va. 1982).

52.    At all relevant times plaintiffs had no knowledge of the abnormally dangerous nature of the defendants' premises.

53.    At all relevant times, the abnormally dangerous nature of the premises was in the control of the defendants.

54.    At all relevant times, plaintiffs were not employed specifically to work with and around known abnormally dangerous instrumentalities.

15

55.     As a direct and proximate result of the abnormally dangerous condition of the defendants' premises, Plaintiffs have suffered, and will continue to suffer for the rest of their lives, emotional distress, mental anguish and fear over the unwarranted risks that they will develop an asbestos, silica or other occupational disease or cancer for which defendant premises owners are strictly liable.

## COUNT VI – STRICT LIABILITY AS TO DEFENDANT BANNER FIBREBOARD

56.     Plaintiffs incorporate all preceding paragraphs.

57.     Defendant   Banner   Fibreboard   Company,   of   Wellsburg,   WV, manufactured, sold and distributed paper products to premises defendants during relevant time periods.

58.     Defendant Banner Fibreboard manufactured, sold and distributed paper products to premises defendants that were unreasonably dangerous in the following non-exclusive particulars:

(a)     Paper products contained silica-containing materials that, when shaped, cut or molded, became friable and respirable, thereby creating an unsafe work environment for plaintiffs;

(b)     Defendant Banner Fibreboard failed to warn end-users that cutting, shaping or molding their paper products would release respirable fibers of silica dust particles, thereby creating an unsafe working environment.

59.     As a direct and proximate result of Banner Fibreboard's conduct, Plaintiffs have suffered, and will continue to suffer for the rest of their lives, emotional distress, mental anguish and fear over the unwarranted risks that they will develop an asbestos,

silica or other occupational disease or cancer, for which Defendant Banner Fibreboard, is

strictly liable to plaintiffs. *Morningstar vs. Black & Decker*, 253 S.E.2d 666 (W.Va. 1979)

## PRAYER FOR RELIEF – INFLICTION OF EMOTIONAL DISTRESS AND MEDICAL MONITORING

Wherefore, Plaintiffs demand judgment against the defendants jointly and

severally for infliction of emotional distress, for medical monitoring, for damages in total

amount not to exceed $5 million, and for such other relief as the Court deems

appropriate.  Plaintiffs pray for attorney fees, costs, expenses and interest and such other

relief as the Court may deem proper.  Plaintiffs demand a jury trial on all issues.

Plaintiffs by counsel

G. Patrick Jacobs, Esq. 1867
Tom White, Esq. 6393
BICKLEY & JACOBS
7020 MacCorkle Ave. SE
Charleston, WV  25304

John Skaggs, Esq.
THE CALWELL PRACTICE, PLLC
500 Randolph St.
Charleston, WV 25302

17

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

ROBERT CHOFF, et al

      Plaintiffs,

Vs.                     Civil Action No.     1:06-CV-95

CROWN BEVERAGE PACKAGING, INC., et al,

      Defendants.

### PLAINTIFFS' OMNIBUS REPLY TO DEFENDANTS' RESPONSES TO MOTION TO REMAND, STAY AND FURTHER RESPONSE TO MOTION TO DISMISS

Introduction

     This is the Reply of the Plaintiffs to the Defendants' Responses to the Plaintiffs' Motion to Remand, the Reply of the Plaintiffs' to the Defendants' Response to Plaintiffs Motion to Stay or Abstain and Plaintiffs Further Response to Defendants Motion To Dismiss. In that the major points to be made are directed to all responses, the plaintiffs have combined their replies.

     For the reasons set forth below, the plaintiffs contend that the Class Action Fairness Act (hereafter CAFA) requires remand of this action to the state courts, in accordance with 28 USC 1332(4). There are more than one hundred potential class members, more than 2/3rds of the plaintiffs reside in West Virginia, where the alleged wrongful conduct and injuries occurred and the plaintiffs allege state common law, products liability claims against a state defendant, Banner Fiberboard. The claims against the state defendant are significant claims and will be pursued regardless of the ruling



PLAINTIFF'S EXHIBIT
B

regarding PCA's liability.[1]   Finally, the aggregated cost of these medical monitoring claims will be less than the statutory minimum required for federal jurisdiction. For these reasons, the case should be remanded.

In addition, there is a compelling state interest which should be honored by the court. The defendants contend that the recent case of *Bias v. Eastern Associated Coal Corp.*--- S.E.2d ----, 2005 WL 4076760 (W.Va., 2006) bars the claim of the plaintiffs against the employer, on the grounds that "medical monitoring" is not part of the workers compensation statute. However, in *Bias*, there was a specific statute holding certain psychiatric claims non-compensable. The statute, on the other hand, does provide for benefits for occupational diseases, which the plaintiffs here contend they are at risk of developing. Further, in the case of *Rohrbaugh v. Wal-Mart Stores, Inc.* 212 W.Va. 358, 572 S.E.2d 881 (W.Va., 2002) the court held that an **employee** could recover nominal damages for the tort of invasion of privacy. There is at a minimum a conflict between these cases regarding just what common law actions survive in the context of an employee/employer relationship. Given that there is a compelling issue of state law, a large majority of plaintiffs who are state residents, a significant state defendant and a state law issue regarding the interplay of the PCA claim and the product liability claims, this federal court should not exercise jurisdiction and should remand the case to the state court, where it properly belongs. The issues raised here are uniquely state court issues and are not proper issues for federal jurisdiction.

---

[1] Banner Fiberboard is presently in bankruptcy. The plaintiffs are preparing a motion to lift the bankruptcy stay to the extent of insurance coverage, and have been notified by counsel retained by the insurer of his representation of Banner to the extent of insurance coverage.

Argument

Defendants assert that remand is improper because of federal question jurisdiction and because they assert that the amount in controversy is more than $5 million. They are wrong on both counts.

At the outset, removal is to be strictly construed and any doubt as to whether this Court has jurisdiction is to be resolved in favor of remand. (For multiple case references stating this rule, See generally, *Notes of Decisions*, Section 1, Construction, 28 USCA §1447.)  In addition, if the Court does not have subject matter jurisdiction of this case, then it lacks authority to rule on substantive matters such as defendants' motion to dismiss.  See, e.g., *Cunningham vs. BHP Petroleum Great Britain, PLC*, 427 F.3d. 1238 (C.A. 10, 2005), *Sanders vs. Medtronic*, 2006 WL 1788975 (E.D. Va., June 26, 2006).

Federal question jurisdiction and preemption

This litigation involves a state tort claim for medical monitoring pursuant to *Bower vs. Westinghouse*, 522 S.E.2d 424 (W.Va. 1999).  There is no federal question jurisdiction pursuant to 28 USCA §1331 because tort claims are not preempted by OSHA as defendants contend.  See e.g. *Pedraza vs. Shell Oil*, 942 S.E.2d 48 (C.A.1, Mass., 1991), *Barrientos vs. UT-Batelle, LLC*, 284 F.Supp., 908 (S.D. Ohio, 2003), *Sakellaridis vs. Polar Air Cargo*, 104 F.Supp. 160 (E.D. N.Y. 2000).  (For multiple cases standing for this proposition, See generally *Notes of Decisions*, Section 4, State regulation or control, 29 USCA §653.)

This Court has already ruled in *Fullen vs. Phillips Electronics North America*, 266 F.Supp.2d 471 (N.D.W.Va. 2002) that OSHA does not preempt employees' tort claims. In *Fullen*, this Court said that in order for federal preemption to support removal, the

preemptive force of a statute's preemption clause must be so powerful that it displaces entirely any state cause of action. *Fullen* at 474.

> OSHA's savings clause is unambiguous:

> Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of employment. 29 USC §653(b)(4).

Clearly, then, Congress did not intend to preempt common law tort claims, either under the complete preemption doctrine or the standard preemption doctrine. See also, *W.Va. Mfrs. Assn. vs. State of West Virginia,* 714 F.2d 308 (C.A. 4, W.Va. 1983)

Plaintiffs have alleged a tort claim for medical monitoring pursuant to *Bower vs. Westinghouse,* 522 S.E.2d 424 (W.Va. 1999). OSHA regulations at 29 CFR §§1910.1000, 1001 address exposure to asbestos *in the workplace*. (See for example, permissible exposure limit, 8-hour time-weighted average of no more than 0.1 fiber per cubic centimeter of air at 29 CFR §1910.1001(c). This plant closed in October 2005. Plaintiffs were exposed to asbestos in significant amounts during their employment and seek relief from defendants in the form of medical monitoring pursuant to *Bower*.

> In order to sustain a claim for medical monitoring expenses under West Virginia law, the plaintiff must prove that (1) he or she has, relative to the general population, been significantly exposed; (2) to a proven hazardous substance; (3) through the tortuous conduct of the defendant; (4) as a proximate result of the exposure, plaintiff has suffered an increased risk of contracting a serious latent disease; (5) the increased risk of disease makes it reasonably necessary for the plaintiff to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of the exposure; and (6) monitoring procedures exist that makes the early detection of a disease possible. *Bower,* Syl Pt. 3.

Plaintiffs defy defendants to explain to this Court how their claim for medical monitoring under *Bower* will interfere with OSHA. It simply cannot be done. The medical surveillance provisions of the OSHA regulations deal with asbestos exposure in the workplace during employment. There is nothing in the six-factor *Bower* test that comes remotely close to interfering with OSHA, or setting some 'higher standard' than OSHA.

To quote *Fullen* and *Geier vs. American Honda Motor Co.*, 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000) (cited by defendants): "*Geier* dealt with a state tort claim that sought to enforce one standard where the federal law permitted many. Here (OSHA) provides only one measure to follow, which makes the inquiry much simpler. If the state tort claim does not seek to hold the defendant to a higher standard of conduct than that required by federal law, there can be no interference and the claim is not preempted. *See, Cipollone vs. Liggett Group, Inc.*, 505 U.S. 504, 524, 112 S.Ct. 2608, 120 L.Ed.2d. 407 (1992)."

### Amount in Controversy

28 USCA §1332(d) vests this Court with original jurisdiction over any class action in which the amount in controversy exceeds $5 million. Plaintiffs' *ad damnum* clause seeks medical monitoring not to exceed $5 million for themselves and the class. In a semantic stretch, defendants ignore the plain language of the complaint in an attempt to argue that $5 million limit only applies to seven named plaintiffs, and that relief for everybody else in the class would exceed the jurisdictional minimum. This is not what the complaint says.

Again removal jurisdiction is to be strictly construed and all doubt resolved in favor of remand. The party seeking federal jurisdiction has the burden of proof on the amount in controversy. That is, the defendants must convince this Court that the plaintiffs claim for medical monitoring exceeds $5 million. See, *McCoy vs. Erie Ins. Co.,* 147 F.Supp.2d. 481, 486 (S.D. W.Va. 2001)

The defendants rely on a Senate Judiciary Committee Report for the proposition that it is the plaintiffs who bear the burden of showing that removal is improper. S. Rep. No. 14, 109th Cong. 1st Sess. 42 (2005). This argument was expressly rejected in *Brill vs. Countrywide Home Loans, Inc.,* 427 F.3[rd] 446 (C.A. 7, Ill., 2005) because such burden-shifting did not become enacted as part of the new CAFA law.

Judge Haden, in *McCoy vs. Erie,* traced the history of the various standards of proof required to establish the amount in controversy for diversity jurisdiction arising from the 'legal certainty' test of *St. Paul Mercury Indemnity Co. vs. Red Cab Co.,* 303 US 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). *McCoy* adopted a preponderance of the evidence standard as a compromise between defendants' interest in litigating in federal court and plaintiff's interest in remaining in the forum of his or her choice. This means that defendants must prove by a preponderance of the evidence that plaintiffs claim exceeds the $5 million jurisdictional minimum. Their pleadings do not do this; they offer conclusury statements only.

Two cases have addressed the issue of burden of proof and the basis of a finding regarding the amount in controversy under CAFA. A. defendant removing a state-court action pursuant to Class Action Fairness Act, in order to establish federal-court jurisdiction in response to remand motion, did not have to show that Act's amount-in-

controversy minimum would be surpassed by award to plaintiff if plaintiff prevailed;

instead, defendant only had to show <u>reasonable probability</u> that amount satisfying Act's

minimum was being claimed, and in order to refute that plaintiff had to show legal

certainty that any judgment would be for amount below minimum. *Brill v. Countrywide*

*Home Loans, Inc.*, C.A.7 (Ill.) 2005, 427 F.3d 446.

An automobile insurer established that the amount in controversy in putative class

action challenging its valuation practices exceeded $5 million threshold necessary for

removal pursuant to Class Action Fairness Act (CAFA), where proposed class included

"thousands of insureds," and complaint sought actual and putative damages in excess of

$10,000, as well as additional damages of $100,000 or more for each proven individual

claim for bad faith. *Plummer v. Farmers Group, Inc.*, E.D.Okla.2005, 388 F.Supp.2d

1310. As shown below, both the number of members in the class and the per claim value

is significantly less here than in *Plummer*.

The defendants have offered no facts in this case on which to base a finding of a

reasonable probability that the amount in controversy would exceed the jurisdictional

limit. Here, the plaintiffs contend that this work place employed at most only a few

hundred people over the last 40 years of its operation  Finally, the relief sought is in the

nature of a chest x-ray, physical examination, occupational history and certain breathing

studies. The cost of these exams would be a few hundred dollars. Under no stretch of the

imagination should the amount in controversy exceed the jurisdictional limit. The

speculation of the defendants of such an event does not meet the reasonable probability

test.

Defendants make much of the fact that a pre-removal stipulation limiting recovery has not been filed to date. Yet defendants ignore the fact that it is their burden to prove the amount in controversy.[2] The total number of surviving class members has been estimated at approximately 200 to 300. Seniority list from various years show in the neighborhood of 50 to 60 employees. Even allowing for employee turn over and attrition, it is probable that there are no more than 200 to 300 people in the proposed class.

Even should the per person medical monitoring costs total $10,000, that is still only $3 million aggregate, for the high estimate of the number of employees. In fact, in a similar medical monitoring claim involving 4,000 to 5,000 class members, the initial estimated cost for monitoring was eight thousand, four hundred dollars ($8,400.00) per individual. The program approved by the court, which used the facilities of the West Virginia University Medical School, was fifteen hundred ($1,500.00) to two thousand dollars ($2,000.00). (See Dr. Lockey's affidavit in *Sturms vs. University of West Virginia Board of Trustees,* Kanawha Civil Action No. 00-C-1035, Ex. 2)

If there are 300 members of this class, at the high figure from *Sturms,* the value of the case is two million, five hundred thousand dollars ($2,500,000.00). Based on experience in at least one other similar case, there does not seem any likelihood that the jurisdictional minimum would be met here. Plaintiffs submit that defendants have failed to prove by a preponderance of evidence that plaintiffs' claim for relief exceeds the jurisdictional $5 million minimum.[3]

---

[2]    Plaintiffs anticipate submitting binding stipulations at a later date.
[3]    Plaintiffs would point out that there are three West Virginia defendants, Banner Fibreboard and two individuals (supervisors). Banner has been served. Plaintiffs anticipate the two individuals will be served within two weeks.

The reasonableness of remand in this case is also boosted by a further provision in

CAFA, which removes the one year limitation on removal for class action cases.  The

United States Code provides:

> § 1453. Removal of class actions
> (a) Definitions.--In this section, the terms "class", "class action", "class
> certification order", and "class member" shall have the meanings given such terms
> under section 1332(d)(1).
> (b) In general.--A class action may be removed to a district court of the United
> States in accordance with section 1446 (except that the 1-year limitation under
> section 1446(b) shall not apply), without regard to whether any defendant is a
> citizen of the State in which the action is brought, except that such action may be
> removed by any defendant without the consent of all defendants.

Clearly, the purpose of this amendment is to allow defendants a fair opportunity

to discover a case, and remove it to federal court, if at any time during its pendency it

appears that the amount in controversy exceeds the jurisdictional limit.  This provision

allows the court to determine the issue of the amount in controversy based on the record

at the time of the motion to remand, without recourse to speculation about what may

happen in the future.  If, in the future, the amount goes above the jurisdictional minimum

then the defendants have the opportunity to remove the case.

The defendants also do not address application of 28 USC § 1332, Diversity of

citizenship; amount in controversy; costs, as it applies to these cases.  The plaintiffs seek

relief from multiple defendants on various theories.  Even if the employer defendant is

dismissed, there will remain defendants with product liability claims.  The presence of

these claims also support remand.

28 USC § 1332 provides in relevant part:

(d)(1) In this subsection--

(A) the term "class" means all of the class members in a class action;
(B) the term "class action" means any civil action filed under rule 23 of the
Federal Rules of Civil Procedure or similar State statute or rule of judicial

procedure authorizing an action to be brought by 1 or more representative persons
as a class action;
(C) the term "class certification order" means an order issued by a court approving
the treatment of some or all aspects of a civil action as a class action; and
(D) the term "class members" means the persons (named or unnamed) who fall
within the definition of the proposed or certified class in a class action.

(2) The district courts shall have original jurisdiction of any civil action in which
the matter in controversy exceeds the sum or value of $5,000,000, exclusive of
interest and costs, and is a class action in which--

(A) any member of a class of plaintiffs is a citizen of a State different from any
defendant;
(B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a
foreign state and any defendant is a citizen of a State; or
(C) any member of a class of plaintiffs is a citizen of a State and any defendant is
a foreign state or a citizen or subject of a foreign state.

Under 28 USC § 1332(4), the Court must remand the case.  That subsection

provides:

(4) A district court **shall** decline to exercise jurisdiction under paragraph (2)--

(A)(i) over a class action in which--
(I) greater than two-thirds of the members of all proposed plaintiff classes in the
aggregate are citizens of the State in which the action was originally filed;
(II) at least 1 defendant is a defendant--
(aa) from whom significant relief is sought by members of the plaintiff class;
(bb) whose alleged conduct forms a significant basis for the claims asserted by the
proposed plaintiff class; and
(cc) who is a citizen of the State in which the action was originally filed; and
(III) principal injuries resulting from the alleged conduct or any related conduct of
each defendant were incurred in the State in which the action was originally filed;
and
(ii) during the 3-year period preceding the filing of that class action, no other class
action has been filed asserting the same or similar factual allegations against any
of the defendants on behalf of the same or other persons; or
(B) two-thirds or more of the members of all proposed plaintiff classes in the
aggregate, and the primary defendants, are citizens of the State in which the
action was originally filed.

(5) Paragraphs (2) through (4) shall not apply to any class action in which--

(A) the primary defendants are States, State officials, or other governmental
entities against whom the district court may be foreclosed from ordering relief; or

(B) the number of members of all proposed plaintiff classes in the aggregate is less than 100.

(6) In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

Here, based on the affidavit of the plaintiff Choff, more than two thirds of the plaintiffs' class are residents of the state in which the alleged wrongful conduct occurred. One defendant, Banner Fiberboard, is a defendant supplier of kraft paper. This is a significant claim under West Virginia product liability law. Banner is in bankruptcy, but the plaintiffs making a motion to lift the stay to the extent of insurance coverage, and the plaintiffs have been contacted by counsel for banner's insurer. Under West Virginia law, the claim of product liability against Banner is a significant claim. The claim arises from conduct in West Virginia, including of course the manufacturing site in Grafton, West Virginia. No similar cases have been filed in the preceding three years.

Under these facts, paragraph 4 of 28 U.S.C. 1453 requires the court to remand the case. There is a significant state interest in the resolution of this matter, and the interests in the preservation of the state interests in state matters, the lack of probability that the claims will exceed in the aggregate the jurisdiction minimum require this court to remand the case.

As set forth above, there are significant state interests at issue here, including the interest of both plaintiff and defendant state residents, issues of conflicting case law regarding significant legal issues and issues of the status of a state resident product liability defendant should the employer defendant be dismissed. It would be an invasion of states rights for the court to retain jurisdiction in these circumstances.

Plaintiffs' Motion for Extension and Abstention

Defendants also make much of the fact that the plaintiffs' motion for extension and abstention was not filed within 14 days per Local Rule 7.02(b) and that it should therefore be denied. First Rule 6(b) providing for enlargement of time is discretionary. Second, no prejudice has been demonstrated to defendants. And third, the Court has pending plaintiffs' motion for remand which logically comes first.

### Conclusion

Therefore, in view of all the foregoing, plaintiffs pray that this Court remand this case to Taylor Circuit Court and abstain from hearing any further matters herein.

Plaintiffs by counsel

/s/ John H. Skaggs, for
Pat Jacobs, Esq.
Tom White, Esq.
Bickley & Jacobs
7020 MacCorkle Ave., SE
Charleston, WV  25324
(304) 926-6676


/s/ John H. Skaggs
John Skaggs, Esq. Bar No. 3432
THE CALWELL PRACTICE
500 Randolph St.
Charleston, WV  25302
(304) 343-4323