**MDL 875**

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

FILED
CLERK'S OFFICE

RE:  MDL Docket No. 875 – In Re: Asbestos Products Liability Litigation (No. VI)
Conditional Transfer Order (CTO 268)

ROBERT H. CHOFF, PRESLEY KNIGHT,
KARL DOMBOSKI, RONNIE CRIMM,
JOHN JACOBS, RICHARD ABEL, and ROGER CURRY,

                    Plaintiffs,

v.

                                        Civil Action No. 1:06CV-95
                                        Northern District, West Virginia

CROWN BEVERAGE PACKING, INC., et al.,

                    Defendants.

## MEMORANDUM OPPOSING PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER

Comes now the separate Defendant, International Paper Company, in opposition to "Plaintiffs' Motion to Vacate Conditional Transfer Order". In support of this Motion, International Paper states the following:

**1.     Brief Statement of Facts**

On May 10, 2006, Plaintiffs filed their class action complaint in this matter in the Circuit Court of Taylor County, West Virginia, alleging that the Plaintiffs were exposed to asbestos and silica on Defendants' premises and that because of this exposure Plaintiffs suffer emotional distress and require medical monitoring. This matter was subsequently removed to the Northern District of West Virginia by Defendants on June 12, 2006 pursuant to the Class Action Fairness Act ("CAFA") found in 28 U.S.C. 1332 (d) (2006). On July 5, 2006, International Paper sent a "Notice of Potential Tag-Along" to the Clerk of the Judicial Panel on Multidistrict Litigation regarding this matter. On September 15, 2006, a Conditional Transfer Order was issued by the

## OFFICIAL FILE COPY

PLEADING NO. 4913

10270002v.1
IMAGED NOV - 8 2006

Clerk of the Judicial Panel on Multidistrict Litigation. Subsequently, Plaintiffs filed a Notice of Opposition on September 26, 2006 and filed a Motion to Vacate Conditional Transfer Order and a memorandum in support thereof on October 11, 2006.

**2.      Legal Argument.**

**A.      This Suit Should Be Transferred Because It Alleges Personal Injury Caused By Asbestos**

The arguments set forth in Plaintiffs' motion deal more with whether this matter should be remanded to state court than they do with whether this matter should be transferred to the Eastern District of Philadelphia for consolidated pretrial proceedings. The real issue here is whether all asbestos cases, no matter what theory of recovery are transferred to the Eastern District of Pennsylvania for consolidated treatment.

On July 29, 1991, the Judicial Panel on Multidistrict Litigation ("JPML") centralized all pending federal district court actions "involving allegations of personal injury or wrongful death caused by asbestos" in a single forum – the Eastern District of Pennsylvania – for coordinated pretrial proceedings. See In Re: Asbestos Product Liability Litigation (No. VI), 771 F.Supp. 415,416 (JPML 1991). Since the initial transfer of over 22,000 cases, an additional 81,426 cases have been transferred by the JPML to the Eastern District of Pennsylvania. (See Conditional Transfer Order (CTO-268), attached hereto as Exhibit "1"). Additionally, over 74,000 of those cases have been resolved by the pretrial actions in the Eastern District of Pennsylvania. (See Franklin Joseph Modley et al. v. 20th Century Glove Corp. of Texas et al. "Transfer Order" attached hereto as Exhibit "2").

In ordering the "centralization in a single district of all pending federal personal injury and wrongful death asbestos actions", (771 F.Supp. at 420) the JPML found that the 22,000 initial cases "involved common questions of fact relating to injuries or wrongful death allegedly

caused by exposure to asbestos or asbestos-containing products". 771 F.Supp. at 417. This suit alleges personal injury caused by asbestos and, accordingly, involves "common questions of fact with actions previously transferred under §1407," as required for "tag along" actions pursuant to Rule 1.1 of the Rules of Procedure of the JPML.

**B.**     **Asbestos Cases Pending In Federal Courts Alleging Injuries From Equipment Or Due To Asbestos Containing Materials In The Workplace Are Transferred For MDL Treatment.**

The plaintiff creates an artificial distinction between a "products liability" case involving asbestos and a "premises liability" case involving asbestos. The JPML made no such distinction in ordering the pre-trial consolidation of all federal actions "involving allegations of personal injury or wrongful death caused by asbestos". 771 F.Supp. at 416. Further, despite the plaintiff's labels of "products liability" and "premises liability", the plaintiff's "theory of liability" is negligence in the handling of asbestos – exactly the same theory in both a "products liability" case and a "premises liability" case. Furthermore, there is an equipment defendant in this case, Beazer East, Inc., and Plaintiffs are seeking damages based upon asbestos in the equipment and in the plant.

The over 100,000 cases transferred to MDL-875 have varying "theories of liability". The JPML has transferred cases involving premise owners to MDL-875. In Lewin, et al. v. American Export Lines, Inc., et al., Plaintiffs filed separate suits, one asserting claims against manufacturers of asbestos containing products and the other against the shipowners, upon whose ships Plaintiffs were allegedly exposed to asbestos; the JPML transferred all of these matters to the Eastern District of Pennsylvania on November 10, 1994. 224 F.R.D. 389, 396 (ND Ohio 2004). All asbestos cases, regardless of the theory of recovery, are transferred to the Eastern District of Pennsylvania for consolidated pretrial proceedings.

**C.    Federal Jurisdiction Exists Because Plaintiffs Do Not Fall Into Local Controversy Exception Of CAFA**

Plaintiffs also argue that their motion to remand should be granted because there is no federal jurisdiction. Plaintiffs contend that this matter falls into the local controversy exception to the Class Action Fairness Act. Plaintiffs have failed to meet the requirements of the local requirement exception of CAFA, found in 28 U.S.C. 1332 (d)(4), and this case must be tried in federal court.

The local controversy exception in the Class Action Fairness Act is a narrow exception which provides that where more than two-thirds of class members and at least one defendant are citizens of the state where the action was originally filed, a district court shall decline to exercise jurisdiction. See, Evans et al. v. Walter Industries, Inc. et al., 449 F.3d 1159 at __, 2006 U.S. App. LEXIS 12509 at 7 (11th Cir. 2006). The Plaintiff bears the burden of proving that the case falls within the local matter exception to the Class Action Fairness Act. Plaintiffs have failed to meet their burden in this regard.

In Evans, the Court held that in order for plaintiffs to avail themselves of the local controversy exception, they must prove that more than two-thirds of the proposed class members were Alabama citizens. Id. Plaintiffs only offered an affidavit by one of the attorneys for plaintiffs that she had reviewed or interviewed over ten thousand potential plaintiffs, determining that 5200 were members of the class and that 93.8% of those whom she determined to be class members were Alabama residents. Id. The Eleventh Circuit held that this affidavit was not persuasive. Id. at 17. The Court held that because this affidavit neither said anything about what percentage of the total class the 10,118 people interviewed represented, nor showed whether any effort was made to estimate the number of people with claims who no longer live in Alabama, it failed to prove that two-thirds of the proposed class were Alabama citizens. Id. The Court went

4

on to hold that although such evidence might be difficult to produce, that difficulty is a function of the composition of the class designed by the plaintiffs. Id.

Even though the attorney in Evans made a showing that over 93% of the 5,200 people whom she had determined to be class members were Alabama citizens, this failed to meet the local controversy exception requirements, since she offered no evidence showing that she had surveyed the entire class. In the current matter, Plaintiffs have apparently made no investigation into the citizenship of the putative class. Plaintiffs offer only the affidavit of Robert Choff stating that more that two thirds of his co-workers were citizens of West Virginia when they worked at the Grafton Box Plant. This self serving affidavit fails to meet the requirements set forth in Evans, therefore Plaintiffs have not satisfied the local controversy exception to the Class Action Fairness Act and jurisdiction is proper in this Court. These matters are further discussed in the "Answer of Defendant International Paper Company to Plaintiffs' Motion to Remand" attached hereto as Exhibit 3.

### D.   The Jurisdictional Amount Is Satisfied Because The Amount In Controversy Exceeds Five Million Dollars

Plaintiffs' second argument regarding remand is that the amount in controversy is less than the five million dollars fails to mention the fact that Plaintiffs are seeking damages for infliction of emotional distress. Plaintiffs' Motion in Opposition to Transfer states that Plaintiffs are only seeking damages for medical monitoring, however, Plaintiffs have alleged both intentional and negligent infliction of emotional distress in their complaint. The potential damages in a suit for infliction of emotional distress could exceed five million dollars. Other similar claims in West Virginia have resulted in verdicts and settlement amounts that would place the amount in controversy above five million dollars. In a recent West Virginia case, a jury awarded six plaintiffs who sued Norfolk & Western Railway Company for infliction of

5

emotional distress based upon their fear of cancer damages awards totalling $4.9 million, with the individual awards ranging between $770,000 to $1.2 million. <u>Norfolk & Western Railway Co. v. Ayers</u>, 538 U.S. 135, at 144 (U.S. 2003). In that matter, the plaintiffs suffered an asbestos-related injury, asbestosis, and brought suit based upon that disease and alleged that their damages included their fear of developing cancer. <u>Id.</u>

**3.    Conclusion**

Whether the theories of recovery in asbestos cases are premises liability, products liability or otherwise, all of these cases when they were removed to Federal Court fall under the jurisdiction of the United States District Court for the Eastern District of Pennsylvania. The plaintiffs have failed to carry their burden of proving the local controversy exception to the Class Action Fairness Act which requires class action cases be heard in Federal Court. The plaintiffs' allegation of damages for intentional and negligent infliction of emotional distress could easily be more than the $5 million. For these reasons, International Paper requests that this Court transfer this action for consolidated and coordinated pretrial proceedings before the United States District Court for the Eastern District of Pennsylvania and for all other relief that justice requires in association with this motion.

Respectfully submitted,

HAWKINS & PARNELL, LLP

Ollie M. Harton (WVSB 5217)
Margaret Droppleman (WVSB 5849)
Robert L. McKinney, II (WVSB 6932)
The Woodrums Building
602 Virginia Street, East Suite 200
Charleston, WV 25301-2154
304.345.8545 (phone)  304.345.8544 (fax)

COUNSEL FOR INTERNATIONAL
PAPER COMPANY

6

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION** NOV - 7 2006

RE:     MDL Docket No. 875 – In Re: Asbestos Products Liability Litigation (No. VI)  FILED
        Conditional Transfer Order (CTO 268)                                CLERK'S OFFICE

ROBERT H. CHOFF, PRESLEY KNIGHT,
KARL DOMBOSKI, RONNIE CRIMM,
JOHN JACOBS, RICHARD ABEL, and ROGER CURRY,

                        Plaintiffs,

v.

                                        Civil Action No. 1:06CV-95
                                        Northern District, West Virginia

CROWN BEVERAGE PACKING, INC., et al.,

                        Defendants.

## CERTIFICATE OF SERVICE

        I certify that I have this day mailed by U.S. mail, postage prepaid, a true and correct copy of the foregoing "Memorandum Opposing Plaintiffs' Motion to Vacate Conditional Transfer Order" upon defense counsel via e-mail and upon opposing counsel to the following :

John Skaggs, Esquire
**The Calwell Practice**
405 Capitol Street, Suite 607
Charleston, WV  25321

G. Patrick Jacobs, Esquire
Tom White, Esquire
**Bickley & Jacobs**
7020 MacCorkle Ave. SE
Charleston, WV 25304

Ollie M. Harton (WVSB 5217)
Margaret Droppleman (WVSB 5849)
Robert L. McKinney, II (WVSB 6932)
The Woodrums Building
602 Virginia Street, East Suite 200
Charleston, WV 25301-2154
304.345.8545 (phone)   304.345.8544 (fax)

COUNSEL FOR INTERNATIONAL
PAPER COMPANY

7

10270002v.1

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV - 7 2006

FILED
CLERK'S OFFICE

Page 1 of 2

## PANEL SERVICE LIST (Excerpted from CTO-268)
### DOCKET NO. 875
### IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*Robert H Choff, et al. v. Crown Beverage Packaging, Inc., et al.*, N.D. West Virginia,
C.A. No. 1:06-95 (Judge Irene M. Keeley)

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Edward J Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M Chud
Goodwin Procter, LLP
901 New York Avenue, N W
Washington, DC 20001

David A Damico
Burns, White & Hickton, LLC
Four Northshore Center
106 Isabella St
Pittsburgh, PA 15212

Margaret A. Droppleman
Hawkins & Parnell, L L P
The Woodrum Building
602 Virginia Street
Suite 200
Charleston, WV 25301

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106-2574

Ellen B Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Susan M Hansen
Brownson & Ballou
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

Ollie M. Harton
Hawkins & Parnell, LLP
4000 SunTrust Plaza
303 Peachtree Street, N E.
Atlanta, GA 30308-3243

Michael E Hutchins
Kasowitz, Benson, Torres & Friedman
1360 Peachtree Street, N.E
One Midtown Plaza, Suite 1150
Atlanta, GA 30309

G. Patrick Jacobs
Bickley & Jacobs
7020 MacCorkle Avenue, SE
Charleston, WV 25304

Reginald S Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308-1314

David C Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Robert R. Leight
Pietragallo, Bosick & Gordon
One Oxford Center
38th Floor
Pittsburgh, PA 15219

Gene Locks
Locks Law Firm, LLC
1500 Walnut Street
Philadelphia, PA 19102

J Miles Morgan
Hendrickson & Long, PLLC
P.O Box 11070
Charleston, WV 25339

Ronald L. Motley
Motley Rice, LLC
P O Box 1792
28 Bridgeside Blvd
Mt Pleasant, SC 29464

Beth Ann Rauer
Robinson & McElwee
P O Box 1791
Charleston, WV 25326

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney, PC
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

Jeffery L. Robinette
Robinette Legal Group, PLLC
475 Fairchance Road
Morgantown, WV 26508

John D. Roven
Roven, Kaplan & Wells, L L P
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P O. Box 1008
Columbus, OH 43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

John H Skaggs
Calwell Practice
500 Randolph Street
P O. Box 113
Charlestown, WV 25302

Amy M Smith
Steptoe & Johnson
P.O. Box 2190
Clarksburg, WV 26302-2190

Robert N. Spinelli
Kelley, Jasons, McGube & Spinelli
Centre Square West
15th Floor
Philadelphia, PA 19102

PANEL SERVICE LIST (Excerpted from CTO-268) - MDL-875                    Page 2 of 2

Robert E  Swickle
Jaques Admiralty Law Firm, P C
1570 Penobscot Building
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226

Andrew J  Trevelise
Reed Smith, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

James K  Weston II
Tom Riley Law Firm
4040 First Avenue, N E
P O  Box 998
Cedar Rapids, IA 52406

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV - 7 2006

FILED
CLERK'S OFFICE

# EXHIBIT 1

RECEIVED
CLERK'S OFFICE
2006 OCT 31  A 10: 51
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

# UNITED STATES OF AMERICA
## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

**MEMBERS:**
Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

Judge Anthony J. Scirica
United States Court of Appeals
Third Circuit

**DIRECT REPLY TO:**

Jeffery N. Lüthi
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D C  20002

Telephone:  (202) 502-2800
Fax:        (202) 502-2888

http://www.jpml.uscourts.gov

September 15, 2006

TO INVOLVED COUNSEL

Re:  MDL-875 -- In re Asbestos Products Liability Litigation (No. VI)

(See Attached CTO-268)

Dear Counsel:

Attached hereto is a copy of a conditional transfer order filed today by the Panel involving the above-captioned matter.  This matter is transferred pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001).  Copies of Rule 5.2, dealing with service, and Rules 7.4 and 7.5, regarding "tag-along" actions, are attached for your convenience.

Inasmuch as there is an unavoidable time lag between notification of the pendency of the tag-along action and the filing of a conditional transfer order, counsel are required by Rule 7.4(b) to notify this office **BY FACSIMILE**, at (202) 502-2888, of any official changes in the status of the tag-along action.  These changes could involve dismissal of the action, remand to state court, transfer to another federal court, etc., as indicated by an order filed by the district court.  Your cooperation would be appreciated.

**NOTICE OF OPPOSITION DUE ON OR BEFORE:   October 2, 2006   (4 p.m. EST)**
(Facsimile transmission is suggested.)

If you are considering opposing this conditional transfer order, please review Rules 7.4 and 7.5 of the Panel Rules before filing your Notice of Opposition.

A list of involved counsel is attached.

Very truly,

Jeffery N. Lüthi
Clerk of the Panel

By *Teresa Bishop*
Deputy Clerk

Attachments

JPML Form 39

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

SEP 1 5 2006

*DOCKET NO. 875*

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

### (SEE ATTACHED SCHEDULE)

### CONDITIONAL TRANSFER ORDER (CTO-268)

On July 29, 1991, the Panel transferred 21,937 civil actions to the United States District Court for the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* 771 F.Supp. 415 (J.P.M.L. 1991). Since that time, 81,426 additional actions have been transferred to the Eastern District of Pennsylvania. With the consent of that court, all such actions have been assigned to the Honorable James T. Giles.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Eastern District of Pennsylvania and assigned to Judge Giles.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Eastern District of Pennsylvania for the reasons stated in the order of July 29, 1991, and, with the consent of that court, assigned to the Honorable James T. Giles

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Eastern District of Pennsylvania. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

SCHEDULE CTO-268 - TAG-ALONG ACTIONS
DOCKET NO. 875
IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

DIST. DIV. C.A. #          CASE CAPTION

ALABAMA NORTHERN
   ALN 2 06-1016          Julia Alford, et al v A.O Smith Electrical Products Co., et al.

CALIFORNIA NORTHERN
   CAN 3 06-3287          Joseph Kotarsky v. General Electric Co.
   CAN 3 06-3288          Carol Ann Winnett, et al v. General Electric Co.
   CAN 3 06-3724          Kerry O'Brien, et al v General Electric Co , et al.

INDIANA SOUTHERN
   INS 1 06-831           Kathleen Duchene v. C.E. Thurston & Sons, Inc., et al.

KENTUCKY WESTERN
   KYW 1 06-97            Kenneth W. Bunch, Jr., etc v Cytec Fiberite, Inc.

LOUISIANA EASTERN
   LAE 2 06-3738          Byron Granier, et al v Northrop Grumman Ship Systems, Inc., et al.

MARYLAND
   MD 1 06-1950           Joseph A. Reed, et al v Owens-Corning Fiberglas Corp , et al

MAINE
   ME 1 06-85             Theodore B. Cote, et al. v. Metropolitan Life Insurance Co , et al.

MINNESOTA
   MN 0 06-2049           Douglas H. McKillop, etc. v Garlock Sealing Technologies, LLC, et al.

MISSISSIPPI NORTHERN
   MSN 1 06-211           Willie B. Johnson v. John Crane, Inc., et al.

MISSISSIPPI SOUTHERN
   MSS 1 06-660           Archie Lord v. Phillips 66 Co , et al.
   MSS 1 06-661           Joseph Newsome v. Phillips 66 Co , et al
   MSS 1 06-662           Cleophus Smith v. Phillips 66 Co , et al
   MSS 1 06-668           Larry Sparkman v. Sears, Roebuck & Co., et al.
   MSS 1 06-686           Herbert Lee Heyward v Exxon Mobil Corp., et al.
   MSS 1 06-687           Oliver Walker, et al. v. Chicago Bridge & Iron Co., et al.
   MSS 1 06-690           Larry Gene Rhear, et al v. Shell Oil Co., et al
   MSS 1 06-701           Sammy Joe Bozeman v Parker-Hannifin Corp., et al.
   MSS 1 06-708           Clyde Brumfield, Jr. v. Plastics Engineering Co., et al
   MSS 1 06-709           Elwin Jackson Springs v. Ametek, Inc., et al.
   MSS 1 06-717           Robert J Cupstid, Jr. v. Shell Oil Co , et al.

NORTH CAROLINA EASTERN
   NCE 2 06-15            Cecil Clarence Craft, Jr , et al. v A.W. Chesterton Co., et al.
   NCE 2 06-18            John Michael Nardi, et al v. Aqua-Chem, Inc., et al.
   NCE 4 06-119           Helene A. Johnson, etc. v. Anchor Packing Co., et al.
   NCE 4 06-127           Gary W. Randolph, et al. v. Anchor Packing Co., et al

SCHEDULE CTO-268 - TAG-ALONG ACTIONS - MDL-875

| DIST. DIV. C.A. # | CASE CAPTION |
|---|---|

**NORTH CAROLINA EASTERN**
| NCE 4 06-145 | Patricia Wallace-Tilson, etc. v. Anchor Packing Co., et al. |
| NCE 4 06-148 | Robert Vaughn Scruggs, et al. v. Anchor Packing Co., et al. |
| NCE 5 06-210 | Alice F. Thompson, etc. v. Anchor Packing Co., et al. |
| NCE 5 06-228 | Elmer Lee Morgan, et al. v. Anchor Packing Co., et al. |
| NCE 5 06-242 | Marilyn R. Gillette, etc. v. 3M Co., et al. |
| NCE 5 06-249 | Charles Strahl, et al. v. Anchor Packing Co., et al. |

**NORTH CAROLINA MIDDLE**
| NCM 1 06-617 | Paula Messer, etc. v. 3M Co., et al. |
| NCM 1 06-660 | George Dewey Mumford, et al. v. Aqua-Chem, Inc., et al. |
| NCM 1 06-667 | Johnny Harold King, et al. v. Aqua-Chem, Inc., et al. |
| NCM 1 06-668 | Ronald Lee Tolbert, et al. v. Aqua-Chem, Inc., et al. |
| NCM 1 06-670 | William Thomas Ingram, et al. v. Aqua-Chem, Inc., et al. |
| NCM 1 06-671 | Dale Ellis Weaver, et al. v. Aqua-Chem, Inc., et al. |
| NCM 1 06-672 | Donnie Ray Edwards v. Aqua-Chem, Inc., et al. |
| NCM 1 06-676 | Carl Allison Hair, Jr., et al. v. Aqua-Chem, Inc., et al. |
| NCM 1 06-677 | David Eric Talbert, et al. v. Aqua-Chem, Inc., et al. |
| NCM 1 06-678 | Coy Ray Wiles, et al. v. Aqua-Chem, Inc., et al. |

**NORTH CAROLINA WESTERN**
| NCW 1 06-208 | Joseph Coleman Christopher v. Aqua-Chem, Inc., et al. |
| NCW 1 06-209 | Ernest Eugene Lawing v. Aqua-Chem, Inc., et al. |
| NCW 1 06-210 | Malcolm Bruce Crittenden, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 06-212 | Calvin Eugene McKee v. Aqua-Chem, Inc., et al. |
| NCW 1 06-213 | Leonard Kelly Carter v. Aqua-Chem, Inc., et al. |
| NCW 1 06-216 | James E. Gilstrap, et al. v. 3M Co., et al. |
| NCW 1 06-230 | Jerry Odell Hudgins, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 06-231 | Jerry Lee Jackson, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 06-232 | William David Stowe, Sr., et al. v. Aqua-Chem, Inc., et al. |

**NEW MEXICO**
| NM 1 06-642 | William H. Monroe, Jr., etc. v. Burlington Northern & Santa Fe Railway Co. |

**NEW YORK EASTERN**
| NYE 1 06-3279 | Leroy H. Webb, Jr. v. A.W. Chesterton Co., et al. |
| NYE 1 06-3280 | Barbara J. Bartley v. A.W. Chesterton Co., et al. |
| NYE 1 06-3404 | Clady J. Everhart v. A.W. Chesterton Co., et al. |
| NYE 1 06-3577 | George Smith, Jr. etc. v. A.W. Chesterton Co., et al. |
| NYE 1 06-3578 | George Collins v. A.W. Chesterton Co., et al. |

**OHIO NORTHERN**
| OHN 1 06-10001 | Eugenio Panerio v. A-C Product Liability Trust, et al. |
| OHN 1 06-10002 | Charles E. Seeley v. A-C Product Liability Trust, et al. |

**TENNESSEE EASTERN**
| TNE 3 06-286 | Caroline Welch, etc. v. Alcoa, Inc. |

**TEXAS WESTERN**
| TXW 6 06-209 | Judith Ann Lawson, etc. v. Texas Lehigh Cement Co., et al. |

SCHEDULE CTO-268 - TAG-ALONG ACTIONS - MDL-875

<u>DIST. DIV. C.A. #</u>                          <u>CASE CAPTION</u>

VIRGINIA EASTERN
  VAE  2  06-8983          Norman E. Craft v. American Standard, Inc., et al.
  VAE  2  06-8984          Harry D. Powers v. American Standard, Inc., et al.
  VAE  2  06-8985          E. L. Wilson v. American Standard, Inc., et al.

WEST VIRGINIA NORTHERN
  WVN  1  06-95            Robert H. Choff, et al. v. Crown Beverage Packaging, Inc., et al.

**INVOLVED COUNSEL LIST (CTO-268)**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

Robert C. Alden
Byrd, Davis & Eisenberg, et al
707 West 34th Street
Austin, TX 78705

David W. Allen
Goodell, DeVries, Leech & Dann, LLP
One South Street
20th Floor
Baltimore, MD 21202

Steven A. Allen
Hodes, Ulman, Pessin & Katz
901 Dulaney Valley Road
Suite 400
Baltimore, MD 21204

John M. Anderson
Bassford Remele, PA
33 South Sixth Street
Suite 3800
Minneapolis, MN 55402-3701

Mark E. Anderson
Patterson, Dilthey, Clay, Bryson
 & Anderson
4020 WestChase Boulevard
Suite 550
Raleigh, NC 27607

Michael T. Bartley
Forman, Perry, Watkins, Krutz
& Tardy, PLLC
P.O. Box 22608
Jackson, MS 39225-2608

Heidi A. Bean
Friedman, Gaythwaite, Wolf
& Leavitt
Six City Center
P.O. Box 4726
Portland, ME 04112

Joshua H. Bennett
Bennett & Guthrie, P.L.L.C.
1560 Westbrook Plaza Drive
Winston-Salem, NC 27103

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Janet W. Black
Ward Black, P.A.
208 West Wendover Ave.
Greensboro, NC 27401-1307

Paula H. Blazek
Germer Gertz, LLP
550 Fannin Street
Suite 700
Beaumont, TX 77701

Doris T. Bobadilla
Galloway, Johnson, Tompkins, Burr
& Smith
701 Poydras Street
Suite 4040
New Orleans, LA 70139

Joel M. Bondurant, Jr
Haynsworth, Sinkler, Boyd, P.A.
P.O. Box 2048
Greenville, SC 29602-2048

Brian C. Bossier
Blue Williams, LLP
3421 N. Causeway Boulevard
9th Floor
Metairie, LA 70002

Timothy W. Bouch
Leath, Bouch & Crawford
134 Meeting Street
P.O. Box 59
Charleston, SC 29402-0059

Margaret Twomey Brenner
Bracewell & Giuliani, LLP
Pennzoil Place - South Tower
Suite 2900
711 Louisiana Street
Houston, TX 77002-2781

Donald E. Britt, Jr
Britt Law Firm
720 North Third Street
Suite 401
Wilmington, NC 28401

Richard O. Burson
Ferris, Burson & Entrekin, PLLC
P.O. Box 1289
Laurel, MS 39441-1289

Lisa N. Busch
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038

Daniel J. Caruso
Simon, Peragine, Smith & Redfearn
Energy Centre
30th Floor
1100 Poydras Street
New Orleans, LA 70163

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001

Louis G. Close, Jr.
Porter Hayden Company
711 West 40th Street
Suite 351
Baltimore, MD 21211

Keith E. Coltrain
Elmore & Wall, PA
P.O. Box 10937
Raleigh, NC 27605

John F. Conley, Sr.
Glasser & Glasser, P.L.C.
Crown Center Building
Suite 600
580 East Main Street
Norfolk, VA 23510

Marcy B. Croft
Forman, Perry, Watkins, Krutz
& Tardy, PLLC
P.O. Box 22608
Jackson, MS 39225-2608

David A. Damico
Burns, White & Hickton, LLC
Four Northshore Center
106 Isabella St.
Pittsburgh, PA 15212

INVOLVED COUNSEL LIST (CTO-268) - MDL-875

Jessica B. DeGroote
Forman, Perry, Watkins, Krutz &
Tardy, PLLC
P.O Box 22608
Jackson, MS 39225-2608

Rodney A. Dean
Dean & Gibson, L.L.P
Cameron Brown Building
Suite 900
301 S McDowell Street
Charlotte, NC 28204-2686

David R Donadio
Brayton Purcell, LLP
222 Rush Landing Road
Novato, CA 94948-6169

George C. Doub, Jr
George C. Doub, PC
12 West Madison Street
Baltimore, MD 21201-5231

Helen K. Downs
Johnston, Barton, Proctor & Powell
2900 AmSouth/Harbert Plaza
1901 6th Avenue North
Birmingham, AL 35203-2618

Margaret A. Droppleman
Hawkins & Parnell, LLP
The Woodrum Building
602 Virginia Street
Suite 200
Charleston, WV 25301

Lawrence J. Duplass
Duplass, Witman & Zwain
Three Lakeway Center
Suite 2900
3838 N. Causeway Boulevard
Metairie, LA 70002

Adam Arthur Edwards
Dunn, McDonald, Coleman &
Reynolds, PC
6204 Baum Drive
Knoxville, TN 37919

Jenelle R. Evans
Balch & Bingham, LLP
P.O Box 306
Birmingham, AL 35201-0306

Keith Eugene Farr
5400 Bosque Blvd.
Waco, TX 76710-4414

Richard L Flax
Zauner & Flax, PA
100 North Charles Street, Suite 1700
Baltimore, MD 21201

Johan Daniel Flynn
Dehay & Elliston, LLP
36 S Charles Street
13th Floor
Baltimore, MD 21201

Raymond P Forceno
Forceno & Hannon
111 S Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106-2574

Shannon S. Frankel
Young, Moore & Henderson, P.A.
3101 Glenwood Avenue
Suite 200
Raleigh, NC 27612

Dawn E. Fulce
Aultman, Tyner & Ruffin, Ltd
P O Drawer 750
315 Hemphill Street
Hattiesburg, MS 39403-0750

Ellen B Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Charles E. Gallagher, Jr.
DeCaro, Doran, Siciliano,
Gallagher, et al.
4601 Forbes Blvd.
Suite 200
P.O. Box 40
Lanham, MD 20703

Dan J Gendreau
Rider Bennett, LLP
33 South Sixth Street
Suite 4900
Minneapolis, MN 55402

Beth V. George
Wright & Associates
615 Congress Street
Suite 201
P.O. Box 4077
Portland, ME 04101

Walter T. Gilmer, Jr.
McDowell, Knight, Roedder
& Sledge, L.L.C.
P O Box 350
Mobile, AL 36601

Richard S Glasser
Glasser & Glasser, P.L.C.
Crown Center Building
Suite 600
580 East Main Street
Norfolk, VA 23510

Laura DeVaughn Goodson
Forman, Perry, Watkins, Krutz
& Tardy, PLLC
P.O. Box 22608
Jackson, MS 39225-2608

William M. Graham
Wallace & Graham, P A.
525 North Main Street
Salisbury, NC 28144

William N Graham
Aultman, Tyner & Ruffin, Ltd.
P. O. Drawer 750
315 Hemphill Street
Hattiesburg, MS 39403-0750

Louis E. Grenzer, Jr
Bodie, Nagle, Dolina, Smith
& Hobbs, PA
21 W. Susquehanna Avenue
Towson, MD 21204

Jon Haddow
Farrell, Rosenblatt & Russell
P.O. Box 738
Bangor, ME 04402

S. Robert Hammond, Jr.
Ramsay & Hammond
P.O. Box 16567
Hattiesburg, MS 39404-6567

Susan M. Hansen
Brownson & Ballou
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

Scott Harford
Lynch Daskal Emery, LLP
264 West 40th Street
New York, NY 10018

James A. Harris, III
Harris & Harris, LLP
Colonial Bank Building, Suite 450
2501 20th Place, South
Birmingham, AL 35223

Ollie M. Harton
Hawkins & Parnell, LLP
4000 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA 30308-3243

Bradley A. Hays
Aultman, Tyner & Ruffin, Ltd.
P.O. Drawer 750
315 Hemphill Street
Hattiesburg, MS 39403-0750

Josephine H. Hicks
Parker, Poe, Adams & Bernstein
Three Wachovia Center
401 South Tryon Street
Suite 3000
Charlotte, NC 28202

Jonathan P. Hilbun
Montgomery, Barnett, Brown,
Read, et al.
1100 Poydras St.
3200 Energy Centre
New Orleans, LA 70163-3200

M. King Hill, III
Venable, LLP
210 Allegheny Avenue
Towson, MD 21204

Jeffrey P. Hubbard
Wells, Moore, Simmons & Hubbard
P.O. Box 1970
Jackson, MS 39215-1970

Michael E. Hutchins
Kasowitz, Benson, Torres & Friedman
1360 Peachtree Street, N.E.
One Midtown Plaza, Suite 1150
Atlanta, GA 30309

Eric J. Jacobi
Clay, Kenealy, Wagner & Adams
462 South Fourth Avenue
1730 Meidinger Tower
Louisville, KY 40202

G. Patrick Jacobs
Bickley & Jacobs
7020 MacCorkle Avenue, SE
Charleston, WV 25304

Clifton Wayne Jefferis
Forman, Perry, Watkins, Krutz
& Tardy, PLLC
200 South Lamar Street
City Centre, Suite 100
P.O. Box 22608
Jackson, MS 39225-2608

Lucy W. Jordan
Kee & Selby LLP
1900 International Park Drive
Suite 220
Birmingham, AL 35243

G. Patterson Keahey, Jr.
Law Offices of G. Patterson
Keahey, Jr., PC
One Independence Plaza
Suite 612
Birmingham, AL 35209

Timothy W. Knight
Kee & Selby LLP
1900 International Park Drive
Suite 220
Birmingham, AL 35243

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308-1314

Donald A. Krispin
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
645 Griswold St.
Detroit, MI 48226

Kenneth K. Kyre, Jr.
Pinto, Coates, Kyre & Brown, P.L.L.C.
P.O. Box 4848
Greensboro, NC 27404-4848

Carter T. Lambeth
Johnson & Lambeth
232 Princess Street
P.O. Box 660
Wilmington, NC 28402

Daphne M. Lancaster
Aultman, Tyner & Ruffin, Ltd.
P.O. Drawer 750
315 Hemphill Street
Hattiesburg, MS 39403-0750

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Frank E. Lankford, Jr.
Huie, Fernambucq & Stewart
2801 Highway 280 South
Three Protective Center, Suite 200
Birmingham, AL 35223-2484

Richard T. Lawrence
Watkins & Eager
P.O. Box 650
Jackson, MS 39205-0650

Gary Allen Lee
Lee, Futrell & Perles, LLP
201 St. Charles Avenue
Suite 4120
New Orleans, LA 70170-4120

Robert R. Leight
Pietragallo, Bosick & Gordon
One Oxford Center
38th Floor
Pittsburgh, PA 15219

Michael S. Libowitz
Thomas & Libowitz
100 Light Street
Suite 1100
Baltimore, MD 21202

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102

F. Ford Loker, Jr.
Miles & Stockbridge
10 Light Street
Baltimore, MD 21202

Matthew S. Lott
Dogan & Wilkinson
734 Delmas Avenue
Pascagoula, MS 39565

John A. Lucas
Hunton & Williams
P.O. Box 951
Knoxville, TN 37901

INVOLVED COUNSEL LIST (CTO-268) - MDL-875

Neil J. MacDonald
Hartel Kane Desantis MacDonald
& Howie LLP
6301 Ivy Lane, Suite 800
Greenbelt, MD 20770

Genevieve MacSteel
McGuireWoods, LLP
1345 Avenue of the Americas
7th Floor
New York, NY 10105

John Michael Mattingly
Steven Rizzo, PC
Lincoln Place, Suite 350
1620 S.W. Taylor Street
Portland, OR 97205

John C. McCants
Forman, Perry, Watkins, Krutz
& Tardy, PLLC
P O Box 22608
Jackson, MS 39225-2608

Damon G. McClain
Sedgwick, Detert, Moran & Arnold
One Market Plaza
Steuart Tower
8th Floor
San Francisco, CA 94105

Robert G. McCoy
Cascino Vaughan Law Offices, Ltd
220 South Ashland Avenue
Chicago, IL 60607

Edward Bailey McDonough, Jr.
Edward B. McDonough, Jr., P.C.
P.O. Box 1943
Mobile, AL 36633

Robert O. Meriwether
Nelson, Mullins, Riley & Scarborough
P O Box 11070
Columbia, SC 29211-0013

Byron N. Miller
Thompson, Miller & Simpson, PLC
600 West Main Street
Suite 500
Louisville, KY 40202

William T. Mills, II
Porterfield, Harper, Mills & Motlow
22 Inverness Center Parkway
Suite 500
P.O. Box 530790
Birmingham, AL 35253-0790

Willard J. Moody, Jr.
Moody, Strople, Kloeppel, et al.
500 Crawford Street
Commerce Bank Bldg , Suite 300
P O Box 1138
Portsmouth, VA 23705

J. Miles Morgan
Hendrickson & Long, PLLC
P.O. Box 11070
Charleston, WV 25339

Ronald L. Motley
Motley Rice, LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

Randi Peresich Mueller
Page, Mannino, Peresich & McDermott
P.O. Box 16450
Jackson, MS 39236

John J. Nagle, III
Bodie, Nagle, Dolina, Smith & Hobbs
21 W. Susquehanna Avenue
Towson, MD 21204

Jeremy W. North
North & Cobb, P.A.
7313 York Road
Towson, MD 21204

Alison E. O'Neal
Forman, Perry, Watkins, Krutz & Tardy
P O Box 22608
Jackson, MS 39225-2608

Brandy Reshaun Owens
Lightfoot, Franklin & White, L.L.C.
The Clark Building
400 20th Street North
Birmingham, AL 35203

E. Spencer Parris
Martin & Jones
410 Glenwood Avenue
Suite 200
Raleigh, NC 27603

Donald C. Partridge
Forman, Perry, Watkins, Krutz
& Tardy, PLLC
P.O. Box 22608
Jackson, MS 39225-2608

James L. Pattillo
Norman, Wood, Kendrick & Turner
505 20th Street, North
Financial Center, Suite 1600
Birmingham, AL 35203

Ronald G. Peresich
Page, Mannino, Peresich
& McDermott
P.O. Drawer 289
759 Vieux Marche' Mall
Biloxi, MS 39533-0289

Ashley J. Platt
Brown, Buchanan & Sessoms, PA
P.O. Box 1377
Biloxi, MS 39533-1377

Michael S. Polk
Sieben, Polk, LaVerdiere, Jones
& Hawn
999 Westview Drive
Hastings, MN 55033-2495

Timothy W. Porter
Porter & Malouf, P A
P.O. Box 12768
Jackson, MS 39236-2768

R. Thomas Radcliffe, Jr.
Dehay & Elliston, LLP
36 S. Charles Street
13th Floor
Baltimore, MD 21201

Beth Ann Rauer
Robinson & McElwee
P.O. Box 1791
Charleston, WV 25326

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

F. Brady Rigdon
Porterfield, Harper, Mills & Motlow
22 Inverness Center Parkway
Suite 600
P.O. Box 530790
Birmingham, AL 35253-0790

Matthew Robinett
Norman, Wood, Kendrick & Turner
Financial Center, Suite 1600
505 20th Street North
Birmingham, AL 35203

INVOLVED COUNSEL LIST (CTO-268) - MDL-875

Jeffery L. Robinette
Robinette Legal Group, PLLC
475 Fairchance Road
Morgantown, WV 26508

Deborah L. Robinson
Robinson Woolson PA
217 E. Redwood Street
Suite 1500
Baltimore, MD 21202

Tom S. Roper
Carr Allison Pugh Howard Oliver
& Sisson, PC
100 Vestavia Parkway
Suite 200
Birmingham, AL 35216

Samuel M. Rosamond, III
Crawford Lewis, PLLC
400 Poydras Street
Suite 2100
New Orleans, LA 70130

Gerolyn Roussel
Roussel & Roussel
1710 Cannes Drive
Laplace, LA 70068

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P O Box 1008
Columbus, OH 43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Chadwick Lester Shook
Aultman, Tyner & Ruffin, Ltd.
P O Drawer 750
315 Hemphill Street
Hattiesburg, MS 39403-0750

Robin Silver
Miles & Stockbridge
10 Light Street
Baltimore, MD 21202

Stacey L. Sims
Morris, Sakalarios & Blackwell, PLLC
1817 Hardy Street
Hattiesburg, MS 39401

John H. Skaggs
Calwell Practice
500 Randolph Street
P.O. Box 113
Charlestown, WV 25302

Amy M. Smith
Steptoe & Johnson
P O Box 2190
Clarksburg, WV 26302-2190

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA 19102

Jennifer M. Studebaker
Forman, Perry, Watkins, Krutz
& Tardy, PLLC
P.O. Box 22608
Jackson, MS 39225-2608

John P. Sweeney
Miles & Stockbridge
10 Light Street
Baltimore, MD 21202-1487

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1570 Penobscot Building
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226

Cowles E. Symmes
Page, Mannino, Peresich
& McDermott, PLLC
759 Vieux Marche' Mall
P.O. Drawer 289
Biloxi, MS 39533-0289

Vasiliki P. Szczesny
Law Offices of Peter G. Angelos
4061 Powder Mill Road
Suite 315
Beltsville, MD 21201

Gregory M. Taube
Nelson Mullins Riley & Scarborough
999 Peachtree Street, N.E.
First Union Plaza, Suite 1400
Atlanta, GA 30309-3964

Jennifer M. Techman
Evert Weathersby & Houff, LLC
3405 Piedmont Road, N.E.
Suite 225
Atlanta, GA 30305

Richard M. Thayer
Christian & Small, LLP
Financial Center, Suite 1800
505 North 20th Street
Birmingham, AL 35203-2696

Mark S. Thomas
Maupin, Taylor, PA
Highwoods Tower One
3200 Beechleaf Court, Suite 500
P.O. Drawer 19764
Raleigh, NC 27619-9764

Nathan Michael Thompson
Hawkins & Parnell, LLP
4000 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA 30308-3243

Michael P. Thornton
Thornton & Naumes, L.L.P.
100 Summer Street
30th Floor
Boston, MA 02110

Patrick T. Tierney
Collins, Buckley, Sauntry & Haugh
West 1100 First National Bank
Building
332 Minnesota Street
St. Paul, MN 55101

Tracy E. Tomlin
Nelson, Mullins, Riley &
Scarborough
100 North Tryon Street
Suite 2400
Charlotte, NC 28202-4000

Gerry H. Tostanoski
Tydings & Rosenberg, LLP
100 East Pratt Street
26th Floor
Baltimore, MD 21202

Andrew J. Trevelise
Reed Smith, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

INVOLVED COUNSEL LIST (CTO-268) - MDL-875

J. Jeffrey Trotter
Adams & Reese, LLP
P.O. Box 24297
Jackson, MS 39225-4297

Thomas W. Tyner
Aultman, Tyner & Ruffin, Ltd
P.O. Box 750
315 Hemphill Street
Hattiesburg, MS 39403-0750

Carey R. Varnado
Montague, Pittman & Varnado
P.O. Drawer 1975
Hattiesburg, MS 39403-1975

Allen R. Vaught
Franklin, Cardwell & Jones
1001 McKinney
18th Floor
Houston, TX 77002

John D. Waller
Wooden & McLaughlin, LLP
One Indiana Square
Suite 1800
Indianapolis, IN 46204-2019

Margaret F. Ward
Moore & Jackson, LLC
305 Washington Avenue
Suite 401
Baltimore, MD 21204

Kirk G. Warner
Smith, Anderson, Blount,
Dorsett, et al.
P.O. Box 2611
2500 Wachovia Capitol Center
Raleigh, NC 27602-2611

William L. Waudby
Baker, Donelson, Bearman, Caldwell
& Berkowitz PC
420 North 20th Street
SouthTrust Tower, Suite 1600
Birmingham, AL 35203-5202

Michael C. Weber
LeBlanc & Waddell, LLC
6955 Perkins Road
Suite 100
Baton Rouge, LA 70808

James K. Weston II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

Allan R. Wheeler
Burr & Forman, LLP
Suite 3100
South Trust Tower
420 North 20th Street
Birmingham, AL 35203

Robert W. Wilkinson
Dogan & Wilkinson, PLLC
734 Del Mas Avenue
P.O. Box 1618
Pascagoula, MS 39568-1618

Stephen B. Williamson
Van Winkle, Buck, Wall, Starnes
& Davis, P.A.
11 N. Market Street
P.O. Box 7376
Asheville, NC 28802-7376

Gordon P. Wilson
Lugenbuhl, Wheaton, et al.
601 Poydras Street
Suite 2775
New Orleans, LA 70130

Shane C. Youtz
Youtz & Valdez, PC
900 Gold Avenue, SW
Albuquerque, NM 87102

RULE 5.2:  SERVICE OF PAPERS FILED

(a)    All papers filed with the Clerk of the Panel shall be accompanied by proof of previous or simultaneous service on all other parties in all actions involved in the litigation. Service and proof of service shall be made as provided in Rules 5 and 6 of the Federal Rules of Civil Procedure. The proof of service shall indicate the name and complete address of each person served and shall indicate the party represented by each. If a party is not represented by counsel, the proof of service shall indicate the name of the party and the party's last known address. The proof of service shall indicate why any person named as a party in a constituent complaint was not served with the Section 1407 pleading. The original proof of service shall be filed with the Clerk of the Panel and copies thereof shall be sent to each person included within the proof of service. After the "Panel Service List" described in subsection (d) of this Rule has been received from the Clerk of the Panel, the "Panel Service List" shall be utilized for service of responses to motions and all other filings. In such instances, the "Panel Service List" shall be attached to the proof of service and shall be supplemented in the proof of service in the event of the presence of additional parties or subsequent corrections relating to any party, counsel or address already on the "Panel Service List."

(b)    The proof of service pertaining to motions for transfer of actions pursuant to 28 U.S.C. §1407 shall certify that copies of the motions have been mailed or otherwise delivered for filing to the clerk of each district court in which an action is pending that will be affected by the motion. The proof of service pertaining to a motion for remand pursuant to 28 U.S.C. §1407 shall certify that a copy of the motion has been mailed or otherwise delivered for filing to the clerk of the Section 1407 transferee district court in which any action affected by the motion is pending.

(c)    Within eleven days of filing of a motion to transfer, an order to show cause or a conditional transfer order, each party or designated attorney shall notify the Clerk of the Panel, in writing, of the name and address of the attorney designated to receive service of all pleadings, notices, orders and other papers relating to practice before the Judicial Panel on Multidistrict Litigation. Only one attorney shall be designated for each party. Any party not represented by counsel shall be served by mailing such pleadings to the party's last known address. Requests for an extension of time to file the designation of attorney shall not be granted except in extraordinary circumstances.

(d)    In order to facilitate compliance with subsection (a) of this Rule, the Clerk of the Panel shall prepare and serve on all counsel and parties not represented by counsel, a "Panel Service List" containing the names and addresses of the designated attorneys and the party or parties they represent in the actions under consideration by the Panel and the names and addresses of the parties not represented by counsel in the actions under consideration by the Panel. After the "Panel Service List" has been received from the Clerk of the Panel, notice of subsequent corrections relating to any party, counsel or address on the "Panel Service List" shall be served on all other parties in all actions involved in the litigation.

(e)    If following transfer of any group of multidistrict litigation, the transferee district court appoints liaison counsel, this Rule shall be satisfied by serving each party in each affected action and all liaison counsel. Liaison counsel designated by the transferee district court shall receive copies of all Panel orders concerning their particular litigation and shall be responsible for distribution to the parties for whom he or she serves as liaison counsel.

**RULE 7.4:          CONDITIONAL TRANSFER ORDERS FOR "TAG-ALONG ACTIONS"**

(a)          Upon learning of the pendency of a potential "tag-along action," as defined in Rule 1.1 of these Rules, an order may be entered by the Clerk of the Panel transferring that action to the previously designated transferee district court on the basis of the prior hearing session(s) and for the reasons expressed in previous opinions and orders of the Panel in the litigation. The Clerk of the Panel shall serve this order on each party to the litigation but, in order to afford all parties the opportunity to oppose transfer, shall not send the order to the clerk of the transferee district court for fifteen days from the entry thereof.

(b)          Parties to an action subject to a conditional transfer order shall notify the Clerk of the Panel within the fifteen-day period if that action is no longer pending in its transferor district court.

(c)          Any party opposing the transfer shall file a notice of opposition with the Clerk of the Panel within the fifteen-day period. If a notice of opposition is received by the Clerk of the Panel within this fifteen-day period, the Clerk of the Panel shall not transmit said order to the clerk of the transferee district court until further order of the Panel. The Clerk of the Panel shall notify the parties of the briefing schedule.

(d)          Within fifteen days of the filing of its notice of opposition, the party opposing transfer shall file a motion to vacate the conditional transfer order and brief in support thereof. The Chairman of the Panel shall set the motion for the next appropriate hearing session of the Panel. Failure to file and serve a motion and brief shall be treated as withdrawal of the opposition and the Clerk of the Panel shall forthwith transmit the order to the clerk of the transferee district court.

(e)          Conditional transfer orders do not become effective unless and until they are filed with the clerk of the transferee district court.

(f)          Notices of opposition and motions to vacate such orders of the Panel and responses thereto shall be governed by Rules 5.12, 5.2, 7.1 and 7.2 of these Rules.

**RULE 7.5:          MISCELLANEOUS PROVISIONS CONCERNING "TAG-ALONG ACTIONS"**

(a)          Potential "tag-along actions" filed in the transferee district require no action on the part of the Panel and requests for assignment of such actions to the Section 1407 transferee judge should be made in accordance with local rules for the assignment of related actions.

(b)          Upon learning of the pendency of a potential "tag-along action" and having reasonable anticipation of opposition to transfer of that action, the Panel may direct the Clerk of the Panel to file a show cause order, in accordance with Rule 7.3 of these Rules, instead of a conditional transfer order.

(c)          Failure to serve one or more of the defendants in a potential "tag-along action" with the complaint and summons as required by Rule 4 of the Federal Rules of Civil Procedure does not preclude transfer of such action under Section 1407. Such failure, however, may be submitted by such a defendant as a basis for opposing the proposed transfer if prejudice can be shown. The inability of the Clerk of the Panel to serve a conditional transfer order on all plaintiffs or defendants or their counsel shall not render the transfer of the action void but can be submitted by such a party as a basis for moving to remand as to such party if prejudice can be shown.

(d)          A civil action apparently involving common questions of fact with actions under consideration by the Panel for transfer under Section 1407, which was either not included in a motion under Rule 7.2 of these Rules, or was included in such a motion that was filed too late to be included in the initial hearing session, will ordinarily be treated by the Panel as a potential "tag-along action."

(e)          Any party or counsel in actions previously transferred under Section 1407 or under consideration by the Panel for transfer under Section 1407 shall promptly notify the Clerk of the Panel of any potential "tag-along actions" in which that party is also named or in which that counsel appears.

# EXHIBIT 2

ENTERED

OCT 2 6 2006

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

A CERTIFIED TRUE COPY

OCT 1 6 2006

ATTEST
FOR THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 1 6 2006

FILED
CLERK'S OFFICE

*DOCKET NO. 875*

*JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

*IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)*

*Donald McCarty, et al. v. Allied Glove Corp., et al.,* W.D. Pennsylvania, C.A. No. 2:06-625
*Franklin Joseph Modley, et al. v. 20th Century Glove Corp. of Texas, et al.,* S.D. West Virginia, C.A. No. 2:06-213

## *BEFORE WM. TERRELL HODGES, CHAIRMAN, D. LOWELL JENSEN, J. FREDERICK MOTZ,\* ROBERT L. MILLER, JR., KATHRYN H. VRATIL, DAVID R. HANSEN AND ANTHONY J. SCIRICA, JUDGES OF THE PANEL*

### *TRANSFER ORDER*

Before the Panel are motions brought, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), by plaintiffs in two actions pending in the Western District of Pennsylvania and the Southern District of West Virginia, respectively. Movants ask the Panel to vacate its orders conditionally transferring their actions to the Eastern District of Pennsylvania for inclusion in the centralized pretrial proceedings occurring there in this docket before Judge James T. Giles.

On the basis of the papers filed and hearing session held (without oral argument), the Panel finds that these actions involve common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the actions to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of the actions is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI),* 771 F.Supp. 415 (J.P.M.L. 1991). Particularly, in the Panel's original decision distinctions based on such matters as the pendency of motions or other matters before the transferor court,[1] the uniqueness of a party's status, the type of defendant, the

---

\*Judge Motz took no part in the disposition of this matter.

[1] Plaintiffs have argued that transfer of their actions should be denied or deferred in order to permit the resolution of motions to remand the actions to state court. There is no need to delay transfer in order to accommodate such an interest. We make the following observations: 1) as a practical matter, there is a lag time of at least three or four months from the filing of an action, its identification as a potential tag-along action, issuance of a conditional transfer order, stay of transfer when a party timely objects to the conditional transfer, briefing on the question of transfer, the Panel hearing session, and the issuance of the Panel's subsequent order; 2) Panel Rule 1.5, R.P.J.P.M.L., 199 F.R.D. at 427, expressly provides that the pendency of a conditional transfer order does not in any way i) suspend orders and pretrial proceedings in the district court in which the action that is the subject of the conditional transfer order is pending, or ii) limit the pretrial jurisdiction of that court; and 3) accordingly, those

(continued...)

- 2 -

docket condition of any specific federal district, the stage of pretrial proceedings, the presence of unique claims or additional claims not relating to asbestos injury or death, and/or the unanimity of opposition to transfer by the parties to an action, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket. We are not persuaded to depart from this approach in dealing with the question of transfer of the actions now before the Panel.

Under the stewardship of the transferee court, as of October 2, 2006, i) over 74,450 actions have been closed in the transferee district, and ii) over 1,350 actions or claims therein have been returned to their originating transferor districts.  To any parties that believe the uniqueness of their particular situation renders continued inclusion of their action in MDL-875 unnecessary or inadvisable, whenever the transferee court deems remand of any claims or actions appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L., 199 F.R.D. at 436-38. We are confident that the transferee court will continue to promptly review arguments for returning transferred actions or claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever it is convinced that retention in the MDL-875 proceedings is no longer needed.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, these two actions are transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable James T. Giles for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

_____
Wm. Terrell Hodges
Chairman

A TRUE COPY CERTIFIED TO FROM THE RECORD

DATED  10-26-06

ATTEST:

DEPUTY CLERK, UNITED STATES DISTRICT COURT



A TRUE COPY CERTIFIED ON

OCT 2 6 2006

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia
By_____Deputy

(...continued)
courts wishing to address such motions have adequate time in which to do so, those courts concluding that such issues should be addressed by the transferee judge need not rule on them, and the process of Section 1407 transfer in MDL-875 can continue without any unnecessary interruption or delay.

# EXHIBIT 3

**Responses and Replies**
1:06-cv-00095-IMK Choff et al v. Crown Beverage Packaging, Inc. et al

## U.S. District Court

## Northern District of West Virginia [Live]

Notice of Electronic Filing

The following transaction was received from Hicks, Elliot entered on 7/24/2006 at 4:34 PM EDT and filed on 7/24/2006

**Case Name:**      Choff et al v. Crown Beverage Packaging, Inc. et al
**Case Number:**    1:06-cv-95
**Filer:**          International Paper Company
**Document Number:** 36

**Docket Text:**
RESPONSE in Opposition re [32] MOTION to Remand filed by International Paper Company. (Hicks, Elliot)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079362125 [Date=7/24/2006] [FileNumber=253381-0]
[7fb0707800afda84e04bb9d2c5080ed55fd3f4388d497f12667140a216ae4f7dd6eb
e690b9bbf9b2aa2a57efc528eb0d4ca28ddd638c7336182397238a6061e1]]

**1:06-cv-95 Notice will be electronically mailed to:**

Joseph S. Beeson     jsb@ramlaw.com,

Robert E. Gifford    gifforre@steptoe-johnson.com, donna.swisher@steptoe-johnson.com;
natalie.alker@steptoe-johnson.com; knightvr@steptoe-johnson.com

Robert R. Leight     RRL@PBandG.com, LJS@PBandG.com

R. Scott Long    scottl@handl.com,

Robert L. McKinney , II    rmckinney@hplegal.com

J. Miles Morgan    miles@handl.com

James J.A. Mulhall    mulhallja@steptoe-johnson.com

Beth Ann Rauer    bar@ramlaw.com

Jeffery L. Robinette    jrobinette@labs.net, jmaxwell@labs.net

John H. Skaggs    jskaggs@calwelllaw.com

Amy M. Smith     smitha@steptoe-johnson.com

Trevor K. Taylor     ttaylor@labs.net,

**1:06-cv-95 Notice will be delivered by other means to:**

Margaret A. Droppleman
Hawkins & Parnell, LLP
The Woodrum Bldg.
602 Virginia St.
Suite 200
Charleston, WV 25301

Ollie M. Harton
Hawkins & Parnell
4000 One Peachtree Center
303 peachtree St, NE
Atlanta, GA 30308-3243

Michael E. Hutchins
Kasowitz, Benson, Torres & Friedman, LLP
1360 W. Peachtree St., NE
Suite 1150
Atlanta, GA 30309

G. Patrick Jacobs
Bickley & Jacobs
7020 MacCorkle Ave., SE
Charleston, WV 25304

Tom White
Bickley & Jacobs
7020 MacCorkle Ave., SE
Charleston, WV 25304

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
#### - CLARKSBURG DIVISION -

ROBERT H. CHOFF, PRESLEY KNIGHT,
KARL DOMBOSKI, RONNIE CRIMM,
JOHN JACOBS, RICHARD ABEL, ROGER CURRY,

      Plaintiffs,

v.                                            Civil Action No. 1:06CV-95

CROWN BEVERAGE PACKAGING, INC.,
successor to Continental Can Corp.,
GEORGIA-PACIFIC CORPORATION,
INTERNATIONAL PAPER COMPANY,
successor to St. Regis Paper Company,
PACTIV CORPORATION,
PACKAGING CORPORATION OF AMERICA,
BEAZER EAST, INC., successor to Koppers Company, Inc.,
BANNER FIBREBOARD COMPANY,
DANNY KIRKPATRICK and LEC FLEISHER, individuals,

      Defendants.

### ANSWER OF DEFENDANT INTERNATIONAL PAPER
### COMPANY TO PLAINTIFFS' MOTION TO REMAND

Comes now, Defendant International Paper Company (hereinafter sometimes referred to as "Defendant"), in response to Plaintiffs' Motion to Remand and Argument in Support filed on July 10, 2006.

### STATEMENT OF FACTS

On May 10, 2006, Plaintiffs filed their class action complaint in this matter in the Circuit Court of Taylor County, West Virginia, alleging that the Plaintiffs were exposed to asbestos and silica on Defendants' premises. This matter was subsequently removed to the Northern District of West Virginia by Defendants on June 12, 2006 pursuant to the Class Action Fairness Act

("CAFA") found in 28 U.S.C. 1332 (d) (2006).  On July 10, 2006, Plaintiffs filed a motion to remand this matter to the Circuit Court of Taylor County, West Virginia.

In support of their Motion to Remand, Plaintiffs ignore the minimal diversity requirement of CAFA.  Rather, the focus is upon the five million dollar amount in controversy requirement and an argument that the amount in controversy is less than five million dollars.  In support of this argument, Plaintiffs point to a non-binding statement in the complaint that the amount in controversy is less than five million dollars, then make a waiver of rights on behalf of the entire class that they will not seek more than five million dollars without any apparent authority to do so.  Although Plaintiffs Counsel have alleged that the members of the class number "in the hundreds", they have seemingly made no effort to survey the potential class members to determine whether this matter is a local controversy, nor have they offered any proof that these hundreds of class members have consented to the stipulation that they will not accept greater than five million dollars.

## LEGAL ARGUMENT

### I.        Summary of Legal Argument

Plaintiffs are not bound by the statement in the complaint that the amount in controversy is less than five million dollars, nor can Plaintiffs' Counsel make a stipulation that waives the rights of putative class members who have not consented to such waiver of rights.  Plaintiffs have asserted that by pleading in the *ad damnum* clause of the complaint that the damages are less than five million dollars and by supposedly stipulating that they will accept no more than five million dollars, the requirements of the Class Action Fairness Act have not been met.  This is incorrect because (1) Plaintiffs have failed to show, nor have they raised the argument, that this matter is a local controversy; (2) under West Virginia law, a plaintiff is not bound by the

2

amount plead in the *ad damnum* clause of a complaint; (3) a party cannot make a unilateral waiver of rights of the putative class; and, (4) the potential verdict in this matter may be in excess of five million dollars.

## II.    Plaintiffs have failed to allege that this is a local controversy.

Plaintiffs have failed to meet the requirements of the local requirement exception of CAFA, found in 28 U.S.C. 1332 (d)(4), and this case must be tried in federal court. Plaintiffs apparently concede that this matter does not fall within the exception.

The local controversy exception is a narrow exception which provides that where more than two-thirds of class members and at least one defendant are citizens of the state where the action was originally filed, a district court shall decline to exercise jurisdiction. See, Evans et al. v. Walter Industries, Inc. et al., 449 F.3d 1159 at __, 2006 U.S. App. LEXIS 12509 at 7 (11th Cir. 2006). Although the burden falls upon the removing party to prove that the jurisdictional amount in controversy has been satisfied, the Plaintiff bears the burden of proving that the case falls within the local matter exception to the Class Action Fairness Act. Plaintiffs have failed to meet their burden in this regard.

In Evans, the Court held that in order for plaintiffs to avail themselves of the local controversy exception, they must prove that more than two-thirds of the proposed class members were Alabama citizens. Id. Plaintiffs only offered an affidavit by one of the attorneys for plaintiffs that she had reviewed or interviewed over ten thousand potential plaintiffs, determining that 5200 were members of the class and that 93.8% of those whom she determined to be class members were Alabama residents. Id. The Eleventh Circuit held that this affidavit was not persuasive. Id. at 17. The Court held that because this affidavit neither said anything about what percentage of the total class the 10,118 people interviewed represented, nor showed whether any

3

effort was made to estimate the number of people with claims who no longer live in Alabama, it failed to prove that two-thirds of the proposed class were Alabama citizens. Id. The Court went on to hold that although such evidence might be difficult to produce, that difficulty is a function of the composition of the class designed by the plaintiffs. Id.

Even though the attorney in Evans made a showing that over 93% of the 5,200 people whom she had determined to be class members were Alabama citizens, this failed to meet the local controversy exception requirements, since she offered no evidence showing that she had surveyed the entire class. In the current matter, Plaintiffs have apparently made no investigation into the citizenship of the putative class. Plaintiffs have offered no evidence that any members of the putative class, other than the six named defendants, are citizens of West Virginia. Therefore Plaintiffs have not satisfied the local controversy exception to the Class Action Fairness Act and jurisdiction is proper in this Court.

### III.    Neither the Plaintiffs' ad damnum clause nor the purported subsequent stipulation are binding.

The propriety of a verdict is to be tested by the evidence to support recovery rather than the amount plead in the *ad damnum* clause. Berry v. Nationwide Mut. Fire Ins. Co., 181 W.Va. 168 at 177, 381 S.E. 2d 367 at 376 (W.Va. 1989). A lawsuit's value is not determined definitively by the *ad damnum* clause. State ex Rel. Strickland v. Daniels, 173 W.Va. 576 at 581, 318 S.E. 2d 627 at 631 (W.Va. 1984). Although Plaintiffs have plead in their complaint that they are seeking damages of less than five million dollars, a jury is not bound by this allegation. In fact, the West Virginia Supreme Court has held that a jury is not to be informed of the amount stated in the *ad damnum* clause. Bennet v. 3 C Coal Co., 180 W.Va. 665, 379 S.E.2d 388 (W.Va. 1989). This District has held that only a binding, pre-removal stipulation signed by plaintiffs and counsel which explicitly limits recovery, filed contemporaneously with the

4

complaint may serve to prevent removal. Asbury-Casto v. Glaxosmithkline, Inc., 352 F. Supp. 2d 729, at 733, 2005 U.S. Dist. LEXIS 819, at 10 (N.D. W.Va. 2005), (citing McCoy v. Erie Ins. Co., et al., 147 F. Supp. 2d 481, at 485-486 (S.D. W.Va. 2001)).

In Asbury-Casto, the Plaintiff filed suit in Brooke County West Virginia, alleging damages of less than the seventy-five thousand dollars in the ad damnum clause of the complaint. Id., at 731. Defendant removed that case pursuant to 28 U.S.C. § 1332. Id. Both parties agreed that there was complete diversity, so the amount in controversy and the dispute regarding Plaintiff's attempt to disclaim damages greater than seventy-five thousand dollars became the crux of Plaintiff's motion to remand. Id. The Plaintiff argued that her disclaimer of damages greater than seventy-five thousand dollars in the ad damnum clause and her attempt to file a separate disclaimer of damages greater than seventy-five thousand dollars defeated diversity jurisdiction. Id., at 732. The Court held that pursuant to West Virginia law, a plaintiff is not bound by a restriction of damages in the ad damnum clause of a complaint. Id., at 733. The Court went on to hold that plaintiff's subsequent disclaimers were also ineffective because they were not filed prior to removal and signed by both the plaintiff and her counsel. Id.

The Plaintiffs here have not satisfied the necessary requirement. Instead, they have made a non-binding statement in the complaint that they are seeking damages of less than five million dollars and then when confronted with removal, counsel for Plaintiffs have stated in the motion for remand that they will not accept any judgment greater than five million dollars. There has been no formal pre-removal stipulation that Plaintiffs will accept less than five million dollars signed by the named Plaintiffs, let alone the hundreds of class members alleged in the complaint, therefore Plaintiffs' ad damnum clause allegations and subsequent stipulation are not binding.

5

IV.    **The named plaintiffs cannot make a unilateral waiver of class rights.**

Even assuming that Plaintiffs' statement in the *ad damnum* clause and later in the motion

to remand has legal effect, a party cannot make a unilateral waiver of the rights of the putative

class without their authorization.  Manguno v. Prudential Prop. & Cas. Ins. Co. 276 F. 3d 720, at

724 (5th Cir. 2002).  In Manguno, the plaintiff filed a putative class action in Louisiana state

court.  Id. at 721.  Prudential removed the case to federal court, asserting that potential attorney's

fees for the entire class should be aggregated to the named plaintiff; Manguno did not dispute

that such fees should be aggregated, but rather made a stipulation that attorney's fees would be

waived.  Id. at 722.    The Fifth Circuit held a party cannot make a unilateral waiver of rights on

behalf of the entire putative class because one party may not ethically bind the putative class

without authorization.  Id. at 724.

Here, the situation is such that the putative class numbers "in the hundreds".  The six

named plaintiffs, however, cannot unilaterally waive the rights of recovery for all other members

of the putative class.  Plaintiffs' Counsel have offered no proof that they have obtained the

consent of these "hundreds" of class members to this waiver of their rights.

V.    **The amount in controversy is likely greater than five million dollars.**

The amount in controversy, based on prior West Virginia cases, may be in excess of the

five million dollar jurisdictional amount.  Other similar claims in West Virginia have resulted in

verdicts and settlement amounts that would place the amount in controversy above five million

dollars.  In a recent West Virginia case, a jury awarded six plaintiffs who sued Norfolk &

Western Railway Company for infliction of emotional distress based upon their fear of cancer

damages awards totalling $4.9 million, with the individual awards ranging between $770,000 to

$1.2 million. <u>Norfolk & Western Railway Co. v. Ayers</u>, 538 U.S. 135, at 144 (U.S. 2003). In that matter, the plaintiffs suffered an asbestos-related injury, asbestosis, and brought suit based upon that disease and alleged that their damages included their fear of developing cancer. <u>Id.</u>

Moreover, in addition to the infliction of emotional distress claims, Plaintiffs have alleged damages for medical monitoring. In a recent case, where a class action was brought against West Virginia University seeking medical monitoring, the parties entered a settlement agreement, attached hereto. Pursuant to the agreement (attached hereto as Exhibit 1), West Virginia University agreed to a cash settlement of one million dollars, the policy limit of the defendant's insurance. The cash settlement was to go toward attorney fees and costs. The defendant also agreed to institute a medical monitoring plan, the value of which was estimated to be between $1.5 million and $2 million dollars by Dr. James Lockey, an expert in that matter. *See* Affidavit of Lockey attached hereto as Exhibit 2. (*See also* the report of the Special Commissioner in that matter, attached hereto as Exhibit 3.) In his affidavit, Dr. Lockey stated that this cost was very low because West Virginia University would be conducting much of the medical surveillance program in house, performing much of its own administrative and clinical work. None of the defendants in the present matter are major universities which have hospitals and the ability to perform the clinical and administrative duties of a medical monitoring program in house. Furthermore, the program to which West Virginia University agreed was only to last twenty years, with the possibility that it would terminate after twelve years if there is no significant finding of asbestos related disease among the class members.

Plaintiffs in the current matter are seeking a surveillance program which is not limited by any time frame. Even assuming that the defendants in this matter could provide a twenty year medical monitoring within the $1.5 million to $2 million range, which is doubtful, the plaintiffs

7

here have not requested any sort of limitation on the medical monitoring program. There is no certainty as to how long the putative members of the class will continue to live and require medical surveillance and, therefore, there is no certainty as to the duration of the program or the expense of such a program.

## VI.   Silica exposure is not a basis for remand.

Plaintiffs have raised the fact that their complaint alleges exposure to silica dust in addition to asbestos as if that somehow is a basis for remand. The basis for removal of this action to federal court is that this case meets the requirements of CAFA. Whether Plaintiffs were exposed to silica, asbestos or both have no bearing on whether this matter should be removed to federal court pursuant to CAFA. Defendant directs this Court's attention to the case Ronald G. Toppins v. 3M Company, wherein the Judicial Panel on Multidistrict Litigation transferred to the United States District Court, Eastern District of Pennsylvania on June 14, 2006 (Transfer Order attached hereto as Exhibit 4). [1] In that case, the plaintiff argued against defendant's motion to stay the proceedings pending the MDL's decision as to whether the case would be transferred to the Eastern District of Pennsylvania notwithstanding the fact that the case also involved claims regarding exposure to silica dust. Toppins, 2006 U.S. Dist. LEXIS 36 at 3 (E.D. MO 2006). The District Court held that the proceedings should be stayed until Judicial Panel on Multidistrict Litigation rendered its decision. Id. The Judicial Panel on Multidistrict Litigation subsequently transferred this matter to the Eastern District of Pennsylvania on June 14, 2006. See Exhibit A.

## CONCLUSION

Defendants have met their burden under the Class Action Fairness Act, proving that the amount in controversy is in fact more than five million dollars. Although Plaintiffs have

---

[1] International Paper Company on July 5, 2006 filed a "Notice of Tag-Along", with respect to MDL 875

attempted to represent that they will accept no judgment greater than five million dollars, they have not made a binding stipulation. Thus, any such representation is inconsequential. More importantly, named Plaintiffs cannot make such a stipulation on behalf of the entire putative class. Further, the Plaintiffs' motion should be denied because Plaintiffs have failed to prove that this action falls within the local controversy exception to the Class Action Fairness Act.

For the foregoing reasons, Defendant requests that Plaintiffs' Motion to remand be denied.

This 14th day of July, 2006.

Respectfully submitted,

HAWKINS & PARNELL, LLP

Ollie M. Harton (WVSB 5217)
Robert L. McKinney, II (WVSB 6932)
Margaret A. Droppleman (WVSB 5849)
Elliot G. Hicks (WVSB 1707)
The Woodrums Building
602 Virginia Street, East Suite 200
Charleston, WV 25301-2154
304.345.8545 (phone)
304.345.8544 (fax)

COUNSEL FOR INTERNATIONAL
PAPER COMPANY

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
- CLARKSBURG DIVISION -

ROBERT H. CHOFF, PRESLEY KNIGHT,
KARL DOMBOSKI, RONNIE CRIMM,
JOHN JACOBS, RICHARD ABEL, ROGER CURRY,

      Plaintiffs,

v.                                       Civil Action No. 1:06CV-95

CROWN BEVERAGE PACKAGING, INC.,
successor to Continental Can Corp.,
GEORGIA-PACIFIC CORPORATION,
INTERNATIONAL PAPER COMPANY,
successor to St. Regis Paper Company,
PACTIV CORPORATION,
PACKAGING CORPORATION OF AMERICA,
BEAZER EAST, INC., successor to Koppers Company, Inc.,
BANNER FIBREBOARD COMPANY,
DANNY KIRKPATRICK and LEC FLEISHER, individuals,

      Defendants.

## CERTIFICATE OF SERVICE

    This is to certify that I have this day caused to be served a copy of the within and foregoing "ANSWER OF DEFENDANT INTERNATIONAL PAPER COMPANY TO PLAINTIFFS' MOTION TO REMAND" upon opposing counsel by depositing a copy of same in the United States mail, with adequate postage thereon to ensure delivery, to the following:

John Skaggs, Esquire
**The Calwell Practice**
405 Capitol Street, Suite 607
Charleston, WV 25321

G. Patrick Jacobs, Esquire
Tom White, Esquire
**Bickley & Jacobs**
7020 MacCorkle Ave. SE
Charleston, WV 25304

I also certify that all defense counsel of record on this date are hereby notified of this filing via Defense E-mail Chain.

Respectfully submitted this 24th day of July, 2006.

HAWKINS & PARNELL, LLP

*Elliot Hicks*

Ollie M. Harton (WVSB 5217)
Robert L. McKinney, II (WVSB 6932)
Margaret A. Droppleman (WVSB 5849)
Elliot G. Hicks (WVSB 1707)
The Woodrums Building
602 Virginia Street, East Suite 200
Charleston, WV 25301-2154
304.345.8545 (phone)
304.345.8544 (fax)

COUNSEL FOR INTERNATIONAL
PAPER COMPANY

11

# EXHIBIT 1

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

DAVID STURMS, etc., et al.,

        **Plaintiffs**

vs.

UNIVERSITY OF WEST VIRGINIA
BOARD OF TRUSTEES AND WEST
VIRGINIA UNIVERSITY, et. al.

        **Defendants**

Civil Action No. 00-C-1035
Judge Tod J. Kaufman

2005 DEC 22  AM 10: 47

## CLASS ACTION
## SETTLEMENT AGREEMENT

This Agreement, having first been approved by the Court pursuant to West Virginia Civil Rule 23(E), is entered into, by West Virginia University (hereinafter referred to as the "Defendant" or "WVU"), and the parties Plaintiff, individually and as representatives of the Plaintiff Class (hereinafter referred to as the "Plaintiffs" or the "Class"), acting by and through their respective counsel.

WHEREAS, the Plaintiffs originally filed lawsuit on April 20, 2000, alleging the Defendant was responsible for Plaintiffs' wrongful exposure to asbestos as employees of WVU, seeking medical monitoring and recovery for anxiety due to such exposures; and

WHEREAS, the Plaintiffs sought appointment as Class representative of WVU employees, and following a hearing on July 22, 2004, the Court certified the Class, by Order entered on October 7, 2004, finding a Class consisting of:

> All full-time, non-student employees of the Defendant, West Virginia University, except those categorized by the University as "Executive/Administrative/Managerial" in the EEO reporting required of federal contractors, who currently do not suffer from any asbestos related disease, cancer, or condition, who have worked (or are expected to work) for the Defendant, West Virginia University, at any time between January 1, 1986 and December 31, 2006 in its Morgantown facilities, so long as their total University employment in Morgantown was, or reached, five years during the period, as measured in the cumulative.

and:

WHEREAS, the Parties have subsequently fully exchanged discovery and information as to the make-up of the Class, the historical information as to the presence of asbestos on the Morgantown Campus of WVU, and the potential for exposure to the same, and have further had opportunity to consult with their respective medical and industrial hygiene experts, and have



developed a plan for responsible medical surveillance that would address the needs of this specific Class; and

**WHEREAS,** the Parties have further mediated this case to narrow their differences and reach a compromise in the best interests of WVU, the employees, and the interests of our state;

**WHEREAS,** This agreement is a compromise and is not an admission of any liability, fault, or responsibility on the part of the Defendant, by whom liability and fault have always been, denied;

**WHEREFORE,** taking into consideration such things as the complexity of the medical and scientific issues, insurance coverage issues, potential exposure of the Defendants, potential risk to the Plaintiffs, and the costs and further delay that will be brought about by ongoing litigation of this case, the Parties have come to the following settlement:

**I.     The Defendants agree to institute and pay for a medical surveillance program covering class members, as previously defined by the Court. The basic features of the program, as agreed to by the parties, are set forth below. The Defendant will submit a more detailed description of the Program to the Court within sixty (60) days of the Court's approval of this Settlement.**

  **A. Purpose and Specific Aims:**  The purpose of the medical surveillance program is to benefit all members of the Class by first providing a professional assessment of their potential exposure to asbestos, and then providing appropriate medical surveillance when it is medically advisable.  Importantly, only those belonging to the class as defined by the Court are contemplated to receive services under this agreement.  Those not belonging to the above stated class, as defined by the Court above, are not eligible to receive any services under this agreement.

  **B. Class Grouping:**  The class, as defined by the Court above, will be divided into three different groups for the purposes of this agreement. Each class group, A, B and C, will have defined characteristics under this agreement.

  **1. Group A:**
Those class members who are currently assigned to perform asbestos related work and are currently participating in the WVU medical surveillance program for asbestos monitoring, by OSHA mandate, will automatically qualify for ongoing medical surveillance under this class action program upon separation from the OSHA mandated surveillance.  Those class members are hereafter referred to as "Group A" or "Current Exposure Group".  Class members currently participating in the OSHA mandated program for asbestos related work, will not fully participate in both programs at once, except to the extent that they may receive contemporaneously any additional services offered under this program that is not offered under the OSHA mandated program.  Upon separation from the OSHA program, class members of Group A will have one (1) year to join the class program to be eligible for surveillance.  Failure to join the class program within the prescribed time will constitute a waiver, thus excluding them from this program.

2

### 2. Group B:

Certain class members, due to their current or past job category, will automatically qualify for medical surveillance under this agreement. Class member employees who meet the following criteria will be considered "Group B" and/or "Potential Exposure Group."

Any class member, not otherwise excluded, who has worked at least two (2) years in any of the following buildings, and doing any of the following jobs, will be considered a "Group B" class member:

> *Building Designations*: Coliseum, Law Center, Creative Arts Center, Health Sciences (North or South), and Allen-Percival Halls.

> *Job Designations*: Campus Service Worker, Maintenance Worker, Trade Specialist doing HVAC work.

Further, any class member working in any of the following trades for a minimum of five (5) years will automatically qualify for medical monitoring as a "Group B" class member:

> *Designated Trades*: Trade Specialists performing plumbing, electrical, carpentry, brick laying, sheet metal, or telecommunications technical work.

Any class member who holds any of the above job titles, but does not qualify as outlined above, will be considered for medical surveillance under this agreement as a "Group C" class member.

### 3. Group C:

The remainder of the WVU class members, those not fitting the requirements of "Group A" or "Group B" (including faculty, secretarial and other support, and administrative) can generally be assumed to have "de minimis exposure" to asbestos, not ordinarily exceeding environmental exposure greater than ambient level, and almost universally below the permissible exposure limit. This remaining class group is therefore designated as "Group C," or the "De minimis Group".

For the vast majority of Group C, ongoing medical surveillance will not be offered. However, if a Group C class member should, in the estimation of the Industrial Hygienist (as discussed below), likely have been exposed to the permissible exposure limit sufficient to warrant ongoing medical surveillance, then such employee will be eligible for ongoing medical surveillance. The Group C class members who are eligible for ongoing medical surveillance will be identified, and listed, in the findings report of the Certified Industrial Hygienist.

C. **Exposure Analysis by CIH**: This program will enlist the services of an independent Certified Industrial Hygienist (hereafter CIH) familiar with the task of correlating existing industrial hygiene data and job function information with potential asbestos exposure. Since Group A and B members have already been selected to participate in the medical surveillance program, as stated above, the CIH will only review information and data necessary to make a

3

determination as to the Group C class members.

In order to accomplish this task, each class member that wishes to participate in this program will be required from the outset to complete an occupational history questionnaire. After receiving the questionnaire, the program administrator will sort them according to class grouping, such as A, B, or C. The program administrator will then submit to the CIH, the class members that fall into the Group C category. At that time, the CIH will examine the questionnaires, and other necessary data, to determine what Group C class members qualify for the medical surveillance program.

In some cases, there may not be enough historical data for the CIH to accurately quantify asbestos exposures. Therefore, the CIH will evaluate the Group C class members by means of industrial hygiene data, job category information, interviews (where deemed appropriate), surveys, and application of appropriate methodology and skill in the field of industrial hygiene. It is expected, based upon this information, that the CIH will be able to create a Uniform Job Titles (UJT) dictionary, and will also be able to rank each class member job title to their potential exposure to asbestos.

The CIH will then be expected to assess each Group C class member's possible exposure to asbestos by combining the existing and historical industrial hygiene data for WVU, and the UJT dictionary ranking of exposures, with the Industrial Hygienist's assessment of the individual's occupational questionnaire. Unless otherwise provided herein, ongoing medical surveillance will be offered only to Group C employees judged by the CIH to have potentially sustained a threshold exposure, defined to be a likely exposure at or above the current OSHA 8-hour TWA permissible exposure limit (PEL) (0.1 fcc) for a cumulative duration of 180 days (6 months). In setting forth this standard, however, it is understood that the CIH ultimately has the discretion to evaluate the issue of exposure and to determine who likely may have had sufficient exposures to qualify for medical surveillance.

## D. Aspects of agreement common to all Class Members:

### 1. EDUCATION:

At the outset of the program, WVU will conduct an educational process, and meet with groups of class members to explain the program.

### 2. INITIAL EXAMINATION:

All class members, will have the opportunity at the outset of the program to undergo a comprehensive occupational and pulmonary medical history questionnaire and examination with a health care professional. Each class member, after being informed of the benefits and dangers of the procedures, will have the right to a pulmonary function test and examination with a health care professional. All Group members will also have the right to a chest x-ray as part of the initial examination, with the exception of Group A members who have had a chest x-ray in the last 24 months. This portion of the program will be called the "Initial Examination."

The purpose of the "Initial Examination" is to assist and establish whether or not a class member has, or is at risk, for non-asbestos related pulmonary disease or impairment and if the class member would be eligible for limited preventive interventions as defined in section F-3 of this document. The "Initial Examination" in part serves a medical purpose, but also in part is

intended to address the mental anxiety, if any, of the Class Members.

The specific components of the initial examination is:

a. *Occupational History Questionnaire*:  This questionnaire will be designed to elicit comprehensive information as to the class member's possible exposures. It will be utilized to classify class members into their respective A, B, or C groupings. Class members must complete this questionnaire in order to be considered for medical surveillance.

b. *Respiratory Symptoms Questionnaire*:  In order to evaluate respiratory symptoms, an American Thoracic Society (ATS) respiratory questionnaire will be administered by health care professionals to class members.

c. *Informed Consent*:  Each class member must sign an informed consent prior to any testing. The informed consent will consist of information sufficient to put all class members on notice of dangers or injuries that may result from testing procedures, and whatever further information that the physician feels is necessary. Those who refuse to sign such consent will be excluded from this program.

d. *Spirometry*:  Spirometric testing will be done by technicians trained in a manner that meets or exceeds standardized ATS and NIOSH criteria. All testing will be done in the standing position unless a medical/physical condition precludes it. Individuals will be examined with loosening of tight-fitting clothing, use of a nose clip, and removal of loose fitting dentures. The class member's age, gender, race, pulse and blood pressure will be recorded. Height and weight will be measured without shoes to the nearest quarter inch and whole pound, respectively.

e. *Chest Radiographs*: Standard chest radiographs may be taken and interpreted. All films will be interpreted by WVU pulmonologists who are current, certified B-Readers, using the 2000 (or any more recent revision) ILO (International Labor Organization) International Classification of Radiographs of Pneumoconiosis. Chest radiographs classified as unreadable will be repeated with class member's permission. A radiographic reading will be defined as positive for asbestos related disease when the B-reading indicates pleural and/or interstitial changes as follows:  1.) Pleural thickening defined as diffuse thickening or the pleural membranes that includes blunting of the costophrenic angle (while blunting of the costophrenic angle only with no pleural changes will be noted separately); 2.) Pleural plaques defined as pleural thickening with or without calcification along the chest wall,  diaphragm and/or pericardium not otherwise classified as diffuse pleural thickening; 3.) Interstitial changes defined as parenchymal opacities (for interstitial changes, profusion category $\exists$ 1/0) of a rounded and/or irregular nature and ranked according to profusion category.

Radiographs positive for changes consistent with asbestos related disease as defined above will be sent to a second independent B-reader, or the class member will be referred for additional imaging such as high resolution computer tomography (HRCT) or spiral CT scan, as recommended by the consulting pulmonologist.

f. *Medical Examination, Medical Risk Assessment and Disease Prevention*:  All class members participating in the "initial examination" phase of the program, as discussed above, will have the right to be examined by a health care professional.  The class member's respiratory medical history will be reviewed; where medically necessary as defined by WVU physicians, they will receive an examination focusing on the upper respiratory system, cardiovascular system, lungs, and extremities; chest radiology and B-reader reports will be reviewed; respiratory diseases and disease risks will be assessed; and recommendations for respiratory disease risk reduction provided.

g. *Testing Locations*:

(i)  All class members residing in West Virginia and those class members who reside in another state but are within 100 miles of Morgantown West Virginia will be required to be evaluated and tested at the Physicians Office Center of West Virginia University.

(ii)  All class members who reside in States other than West Virginia, AND are more than 100 miles from Morgantown, West Virginia, upon written request, shall be provided by the program administrator all necessary questionnaires by mail. Said class members may submit chest radiographs and spirometry test results to the Program, which shall be evaluated and categorized under the requirements of the Program as if they had participated in person.  If, after review by the staff of the Program, a determination is made that a class member needs further medical examination by a pulmonary physician or other specialist in order to resolve uncertainties from reviewed films and/or spirometry results, the class member shall be notified in writing. The class member will then be responsible for arranging for such an examination in a location of their choosing and obtaining a written report from such physician to submit it to the Program for consideration.  The cost of both obtaining the mailed-in x-rays and test results, together with the cost of obtaining any additional testing requested by the staff,  shall be reimbursed to the class member within 60 days of submission of bills and invoices.  However no bill shall be reimbursed if it exceeds $200, unless prior written approval was given by the Program Administrator.  The same procedures shall apply to any ongoing medical surveillance that a given individual qualifies for, under the following sections of this Settlement.

### 4. Notification to Class Members following Initial Examination:

For each class member who  participates in the initial examination phase of the program, the program administrator will send to them, by letter (addressed to their last known address), a summary of the results of their examination, discussing, where applicable, diagnosis, risks, and preventative recommendations, along with a copy of any B-reader reports. The letter will also indicate to the class member to what class group they are assigned, and notify those who qualify for ongoing surveillance what Risk Stratum they are assigned to (discussed below in detail). The notice will also provide the class member when their next examination is scheduled, if necessary As for those class members who also qualify for additional interventions discussed below (such as influenza vaccination), the program administrator will also notify them of how they can follow-up and schedule for such care, if they so choose.

**F. Medical Surveillance Phase of the Program**:

        (i)  All class members classified as "Group A," will be able to participate fully in this program after separating from the OSHA mandated program (as long as they elect to participate in this program within one (1) year after separation from the OSHA program).

        (ii)  All "Group B" class members will participate in ongoing medical surveillance as defined per the terms of this agreement.

        (iii)  Class members who are classified as "Group C" shall be entitled to ongoing medical surveillance under this program, PROVIDED they are designated to do so based upon the findings of the CIH's report. Those Group C members not designated for ongoing medical surveillance by the CIH will be eliminated from the program after their initial examination is completed.

    Those class members qualifying for ongoing medical surveillance will be further stratified into the following strata by the program physicians:

        (i)  High and intermediate risk of developing or worsening pulmonary disease risk or pulmonary related impairment (Risk Stratum 1).

        (ii)  Low risk of developing pulmonary impairment (Risk Stratum 2).

        **1.** *Medical, Prior Occupational and Social Risk Factors*:  Some of the factors taken into consideration when classifying class members in high or intermediate risk, and therefore in Risk Stratum 1, are:

            a. The diagnosis of asthma, chronic bronchitis, chronic obstructive pulmonary disease (COPD), or other chronic pulmonary disease including silicosis;

            b. Morbid obesity,  defined by body mass index (BMI) of greater than 35 sleep apnea,  an independent risk factor for COPD;

            c. Smoking history in pack years with start and stop date. Exposed individuals will be considered at additional risk with over 15 pack-years of tobacco smoking exposure,  or 5 pack years if currently smoking > ½ ppd or having smoked regularly within the last 1 year;

            d. Exposure to asbestos or silica in previous employment or a determination by Certified Industrial Hygiene exposure assessment of a likely WVU permissible exposure limit of greater than 2.5 fiber-years.

        **2.** *Subsequent Medical Surveillance*:

    Class members who are qualified for ongoing medical surveillance under this program will be able to continue to participate in the medical surveillance program at a frequency based on age, latency from initial potential asbestos exposure, and whether they are still deemed potentially exposed to asbestos based on their current WVU employment.

The standard medical surveillance tests used in the initial examination session will be comprised of the pulmonary medical history questionnaire, chest radiograph, pulmonary function tests, medical examination, and counseling.

Additional tests may be recommended by the program physicians for participating class members on the class member's potential asbestos exposure categorization and the Risk Stratum he or she is ranked in. These additional tests may include; to the extent medically necessary as determined by program physicians:

     a. "Low dose" spiral CT scan of the chest (lung cancer);

     b. High resolution CT scan or oblique chest x-ray (pleural changes or suspicion of early asbestosis);

     c. Diffusing capacity of carbon monoxide (asbestosis or COPD);

     d. Lung function tests for lung volume (asbestosis or COPD);

     e. Pre-post bronchodilator-spirometry (asthma, and other pulmonary);

     f. Other potential biological monitoring tests yet to be proven useful, such as blood mesothelin level, may be considered in the future if deemed appropriate and of benefit.

Those class members diagnosed with positive disease outcomes will be provided written recommendations by the Program's health care professionals for future care. The results and recommendations will then be released to the class member's primary care physician, upon execution of a standard medical authorization release form. Those class members who are diagnosed with positive disease outcomes may continue to be monitored in the program or not, based on their written desires. Follow-up care for those class members with asbestos related illness requiring medication or treatment will be provided by the class member's primary care provider and not the program physicians. Nothing in this agreement obligates West Virginia University to be responsible for the payment of any such further expenses for the care and treatment of the class member who may have asbestos related illness. It is anticipated that class members who have insurance coverage for work related asbestos health abnormalities would be covered through the class member's health care plan or may be covered under appropriate workers' compensation carrier.

     3. *Additional Interventions for those in Risk Stratum I*: The following additional options, if medically necessary as determined by the program physicians, will be offered to those class members who qualify as Risk Stratum 1:
        a. Influenza vaccines for those at risk;
        b. Opportunity to enroll in a smoking cessation program;
        c. Opportunity for initial consultation (one-time consultation) with a

nutritionist and exercise physiologist in regard to a weight reduction
and exercise program.

**4.** ***Time Intervals for Individual Participation in medical surveillance program***:
Group A class members will be followed in the medical surveillance program at five, two, or one
year intervals based on age and time from initial asbestos exposure (Table 1):

Table 1.  Year Intervals for Medical Monitoring Program

| Age (years) | 18 to 35 | 36 to 45 | > 46 |
|---|---|---|---|
| Latency (years) | | | |
| 1 -10 | 5 | 5 | 5 |
| > 10 | 5 | 2 | 1 |

Group B and qualified Group C class members will be followed in the medical
surveillance program at three and five-year intervals depending on whether they are in Risk
Stratum 1 or 2; PROVIDED, however, that those class members who have less than 10 years of
latency from potential first exposure will be re-monitored at five-year intervals, regardless of
Risk Stratum placement.

**G.  Time frame and compliance with agreement:**

WVU agrees to conduct this monitoring program for 20 years.  However, if after a
minimum of 12 years there is not a significant finding of any asbestos related disease in the class
members participating in the medical surveillance program, then upon application and approval
of the Court, WVU may elect to end the program.

Those class members who are eligible to participate in the program, must act to join the
program within two (2) years of its initiation to be included. Joining/participating is defined as
taking part in the educational and initial examination portion of this program. Those who fail to
participate in the program within the initial two (2) year time frame will be excluded from the
program, unless good cause for such failure can be shown.

Class members currently employed with WVU agree and hereby waive any right to file
grievances under West Virginia Code 29-6A-1 et sec. regarding the fairness and administration
of this program.  This, however, in no way, prevents the class members' abilities to pursue
enforcement of this agreement by and through counsel and/or the Courts having jurisdiction over
this matter.

**H.  Timetable for Initiation of the Program:**
Assuming that this Settlement is approved by the Court on December 22,
2005, WVU and Plaintiffs will meet the following deadlines for initiating the Program.  It
is recognized that the following dates are provided as start up dates only, and will be

9

somewhat contingent on the participation of the class members in this program.

1. Funding for the initial start-up costs, including expenses for the Certified Industrial Hygienists, Medical Professionals, testing, and administrative expenses, will be in place and/or accessible by January 22, 2006.

2. WVU will identify the program administrator by January 22, 2006. This person will be directly responsible for the day-to-day administration of the program.

3. WVU will identify the independent Certified Industrial Hygenist(s) as called for in the Program by December 22, 2005. The plan will be for the initial review of historical exposure data and campus survey to be completed by June 30, 2006 and for the design of historical exposure questionnaire to be completed by April 30, 2006.

4. After class members have enrolled in the program, WVU will begin the educational aspects this agreement by April 30, 2006. These informational meetings will be conducted on a schedule designed to be completed within the first three months of when the Program actually begins to conduct initial examinations.

5. The initial examination, as defined above, will have a start date of April 1, 2006. The Program will attempt to complete the initial aspects of the program as quickly as possible but will be expected to complete these initial aspects so that all Class members agreeing to participate will have been through the initial examination of the Program no later than two years from the start date, except for good cause shown.

**II.    Defendants agree to pay $1,000,000.00 (One Million Dollars), within sixty days of the approval of this Settlement.**

The Defendants assert that the limits of the insurance coverage available to potentially cover the claims made in this case is no more than one million dollars ($1,000,000.00). They have agreed to offer this entire coverage, and the Plaintiffs have agreed, on behalf of themselves and the class as a whole, to accept this offer as an additional payment to be made under this Settlement.

There will be no cash payments made to any individual Plaintiff, whether named or as a member of the class in general, from any portion of this Settlement. Instead these funds will be used to pay Plaintiff's legal expenses and attorneys' fees, subject to the approval of the Court. Additionally up to $25,000 of this money will be used as the Plaintiffs' payment toward the

10

shared costs associated with the retention of the independent CIH called for under this settlement agreement. The remaining amount will be maintained, held and used for the benefit, health, and safety of the Class Members as approved by the Court.

**III.    In consideration of the Defendant's agreement to provide medical surveillance and additionally pay a cash settlement as outlined above, the Plaintiffs for themselves individually and as representatives of the Class agree to do all the following:**

On their own behalf, and on behalf of the class, Plaintiffs hereby release and discharge the Defendants, their predecessors, subsidiaries, affiliates, and all of their current, future, and former employees, officers, trustees, directors, board members, agents, representatives, successors and assigns from and against any and all claims, liabilities, causes of action, and demands arising out of their potential exposure to asbestos as employees of WVU, as alleged in the current case, known as David Sturms et. al. v. University of WV Bd. of Trustees and WVU Case No.: 00-C-1035, filed in Circuit Court of Kanawha County, West Virginia.

The Plaintiffs further agree, subject to the approval of the Court, to dismiss the action known as David Sturms et. al. v. University of WV Bd. of Trustees and WVU Case No.: 00-C-1035, filed in Circuit Court of Kanawha County, West Virginia, in its entirety, with prejudice.

**IV.    Non-Admission of Liability**: It is understood and agreed this Settlement Agreement is a compromise of a disputed claim(s) and is not to be construed as an admission of any liability, fault, or responsibility on the part of the Defendant, by whom liability and fault are, and have always been, expressly denied.

**V.    Non-Retaliation**: It is specifically stated that the Defendants will never retaliate against any named Plaintiff, or any member of the class, for participating in this litigation or participating in the medical surveillance program itself. This includes a promise to never view an employee's participation in this litigation, or in the medical surveillance program itself, in a negative light so as to effect terms and conditions of employment or advancement. Further, no employee will be penalized by loss of pay or sick leave time for participating in either the initial examination phase or ongoing medical surveillance phase of this program.

**VI.    Severability**: The Parties agree that if any of the provisions of this Settlement Agreement are declared illegal, unenforceable, or ineffective in a legal forum of competent jurisdiction, such provisions shall be modified if possible in order to achieve the intentions of the Parties, and if necessary, such provisions shall be deemed severable, such that all other provisions in this Agreement shall remain valid and binding upon both Parties.

**VII.    Controlling Law and Continuing Jurisdiction of the Court**: The Parties agree this Settlement Agreement will be governed by the laws of the State of West Virginia. Further, the Parties specifically agree that, at the time this case is dismissed, this Settlement Agreement shall be attached to the order and the order shall provide that the trial Court shall retain subject matter jurisdiction for the purposes of enforcement of the settlement during the term of the medical surveillance program itself.

11

**VIII.   Entire Agreement**: This Settlement Agreement sets forth the entire Agreement of the Parties, subject only to modification as set forth hereinafter.  As was stated on page 2 of this Agreement, within heading I, the Defendants are to submit a more detailed description of the medical surveillance program to the Court within sixty (60) days of approval of this Settlement.

That written and detailed description shall become part of this Agreement.  However, if any provision in this Agreement is directly contradicted or substantially changed by the detailed description submitted by the Defendants, then this Agreement controls and shall prevail over such conflicting provision.  No provision of this Agreement may be amended, nor any rights under this Agreement waived, except by written instrument executed by all parties.

**The following Counsel, having first warranted they are fully authorized to execute this Settlement Agreement on behalf of their clients,  do hereby sign and enter into this Settlement Agreement on behalf of their respective clients, on the date opposite their signatures:**

**For and on Behalf of the Parties Plaintiff and as Class Counsel representing Members of the Class:**

ROBERT P. SWEENEY (Ohio Bar No. 0026605)
ROBERT E. SWEENEY CO., L.P.A.
55 Public Square, Suite 1500
Cleveland, OH  44113
(216) 696-0606

Date   Dec 22, 2005

PATRICK JACOBS (WV State Bar No. 1867)
BICKLEY & JACOBS
7020 MacCorkle Ave., S.E.
Charleston, WV  25304
(304) 926-6676

Date   12-22-05

GARY W. RICH (WV State Bar No. 3078)
Brock, Reed & Wade Building
212 High Street, Suite 223
Morgantown, WV  26505
(304) 292-1215

Date   12/22/2005

12

**For and on Behalf of the Defendant:**
**West Virginia University**

_(signature)_                12/22/05

STEPHEN M. FOWLER (WV State Bar No: 5113)        Date

KEITH C. GAMBLE (WV State Bar No: 7971)
PULLIN, FOWLER & FLANAGAN
901 Quarrier St.
Charleston, WV 25301
(304) 344-0100

_(signature)_                11/10/05

MR. NARVEL WEESE                  Date
INTERIM VICE PRESIDENT FOR
ADMINISTRATION, FINANCE
AND HUMAN RESOURCES ON
BEHALF OF WEST VIRGINIA UNIVERSITY

## Court Approval

This Settlement came on for hearing of the Court, pursuant to Notice and the Requirements of Civil Rule 23, on 22nd day of December , 2005, and the Court being fully advised does hereby approve the Settlement as fair and in the best interest of the Class. Journal Entry to follow.

_(signature)_                12/22/05

The Honorable Judge Tod J. Kaufman       Date

RECORDED

13

4 cc ND to atty
12/23/05 30

# EXHIBIT 2

STATE OF OHIO                    :         AFFIDAVIT OF DR. JAMES LOCKEY
                                 : SS:
COUNTY OF HAMILTON               :

     Now comes Dr. James Lockey, MD, and having first been duly sworn, do state and attest as follows:

1.    I am the former Director of the Division of Occupational and Environmental Medicine Department of Environmental Health, University of Cincinnati College of Medicine and am currently a full time faculty member of the Department of Environmental Health. My office is located at University of Cincinnati College of Medicine, 3223 Eden Avenue, Mi 0056, Cincinnati, OH 45267-0056

2.    I am a graduate of the Temple University School of Medicine (1972). I did my internship in Internal Medicine at the University of Minnesota Hospital, followed by my Residency in Internal Medicine (completed in 1975). I then went into a Fellowship program in Pulmonary Medicine at the University of Minnesota Hospital (completed in 1978), followed by a Fellowship in Occupational Medicine at the University of Cincinnati College of Medicine (completed in 1980)

3.    I am Board Certified in Internal Medicine, Subspecialty Pulmonary Disease, and in Preventive Medicine, Subspecialty Occupational Medicine. And I am a Certified 'B' Reader for the interpretation of Radiographs, under the ILO-1980 International Classification of Radiographs for Pneumoconiosis.

4.    I am a tenured Professor of Environmental Health at the University of Cincinnati College of Medicine.

5.    I am licensed to practice medicine in Ohio and Kentucky. Along with my administrative duties as Associate Director of the Department of Environmental Health at the University of Cincinnati, my practice also involves clinical work with patients and research work. The research work is in the field of occupational lung disease. This work has involved numerous clinical and basic scientific research projects.

6.    Additionally I have served as an expert witness to both the defense and the plaintiffs in asbestos and other industrial dust-based litigations. I have been a consultant to various industries concerned with occupational dust diseases. I have served as an expert at the request of the United States Department of Justice, in the context of their investigation of W.R. Grace and the vermiculite contamination in Libby, Montana. I have also served as a court appointed expert, at the request of Judge Joseph Spiegel of the United States District Court, Southern District of Ohio, to help design and conduct medical monitoring

of workers exposed to hazardous materials including asbestos at the Fernad nuclear Production Facility in Fernald, Ohio

I have also been the medical consultant and expert retained by the plaintiffs in the current case known as David Sturms et. al., v. University of WV Bd. of Trustees et. al., filed in the Kanawha County Circuit Court. Case No. 00-C-1955 and now pending as a Class Action In that capacity I have reviewed documents produced to me by plaintiffs' counsel including air sampling and area sampling data taken from various campus buildings located at the Morgantown campus of West Virginia University (hereinafter WVU) along with various narrative reports from inspection of these buildings over the years by industrial hygienists or consultants brought in to evaluate the asbestos exposures in said buildings.

I also reviewed and took into consideration the report submitted to plaintiffs by their expert certified industrial hygienist, Steven Paskal who evaluated the occupational risk to these employees, based on what was known as to their exposures to asbestos over the years

I have also reviewed over 70 standard chest x-rays, all coming from employees of WVU who are part of this Class Action lawsuit and evaluated those films from the standpoint of whether they showed any asbestos related disease.

Based on my expertise and in the context of what I reviewed with respect to West Virginia University, I was able to draft a proposed plan for a medical monitoring program, which I submitted to counsel for the plaintiffs, and which I believe was subsequently shared with the defense, as the plaintiffs proposal for medical monitoring of this Class

8.  Subsequently I have recently been asked to review the actual program of medical surveillance that has been agreed to by the parties and submitted to the Court for its approval (herein "Medical Surveillance Program" or "the Program"). **Upon completing that review I can state unequivocally that the compromise reached by the parties in their negotiations of settlement in this case has lead to a Medical Surveillance Program that is responsible, fair and even progressive by today's standards.**

The medical monitoring program that I had proposed is a program that was based on optimum access to tests and protocols, without regard to cost. In that sense the program understandably needed to be modified in the context of real cost limitations Additionally, my proposed plan could not assume that so much of the diagnostic and clinical work required by the plan would be done at WVU itself. But as I now review the actual Program submitted to the Court, it is clear that much of the administrative and clinical work required of the Program will actually be done in-house, at WVU. This should result in significant cost savings, thereby reducing the overall cost of the Program

The medical monitoring plan that I had originally recommended would have extended

2

into the range for 40 years. The Program as adopted by the parties calls for medical surveillance for the next 20 years, or to be shortened after 12 years, if no significant asbestos related findings are discovered during the Program, subject to approval of the Court. I find this to be a reasonable modification of my proposal, that is medically sound, especially taking into consideration that much of the more significant exposures can be assumed to have occurred more than 10 years ago, so that the 20 year latency period of asbestos related diseases is adequately accommodated by the Program, even though not conducted for a full 40 years.

19. I had originally recommended that a colonoscopy test be offered to some members of the Class as part of their medical monitoring benefit. This has been eliminated from the Program now before the Court. But in light of the fact that the risk of colon cancer from asbestos exposure is so much less than the risk of lung cancer I find this modification to be reasonable and medically sound. This is another example of how the negotiated settlement altered my original proposal but still does not unnecessarily dilute the overall goal of the plan.

20. The cost of delivering the Program now offered by WVU will still be very substantial, even taking into consideration these modifications and the fact that significant cost savings will result from doing much of the Program in-house. I am told that discussion during negotiations estimated that the overall cost of conducting the Program to be in the area of $1,500,000. I find this figure to be low, and certainly the benefit to the Class is at least that great in value, and probably more in the area of $2,000,000 in my estimation, to within a reasonable degree of certainty based on my experience in other medical monitoring situations.

21. I attach hereto a copy of my original report and medical monitoring plan, as submitted to plaintiff's counsel on December 7, 2004, and incorporate it by reference into this affidavit.

Further affiant saith naught

_____          _____
DATE                             DR. JAMES E. LOCKEY, MD, MS

## NOTARY

Sworn and subscribed in my presence on this **14th** day of December, 2005

Notary Public

CONNIE THRASHER
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES 11-24-08

# The Center for Occupational Health

| Mailing Address: | Location: | Telephone: (513) 558-1234 | A member of |
| --- | --- | --- | --- |
| Center for Occupational Health | Medical Arts Building | Fax: (513) 475-7711 | |
| 3223 Eden Avenue · ML# 0458 | 222 Piedmont Avenue · Suite 3400 | Disability | |
| Cincinnati OH 45267-0458 | Cincinnati. OH | Management: (513) 319-1780 | |



December 7, 2004

Robert P. Sweeney, Esq.
Robert E. Sweeney Company, LPA
55 Public Square, Suite 1500
Cleveland, Ohio 44113-1998

Dear Mr. Sweeney.

Enclosed is the document outlining the proposed asbestos medical monitoring program for the WVU class members.

If you have any questions, please do not hesitate to contact me.

Regards,

James E. Lockey, MD. MS
Professor
Occupational Pulmonary Medicine
University of Cincinnati

# EXHIBIT 3

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

DAVID STURMS, *et al.*,

        Plaintiffs,

   v.

Civil Action No. 00-C-1035
Hon. Tod J. Kaufman

UNIVERSITY OF WEST VIRGINIA
BOARD OF TRUSTEES,
WEST VIRGINIA UNIVERSITY,
     *et al.*,

       Defendants.

## REPORT AND RECOMMENDATION OF THE SPECIAL COMMISSIONER

By order entered December 14, 2005, the Circuit Court of Kanawha County, the Honorable Tod J. Kaufman presiding, appointed the undersigned as special commissioner to evaluate and recommend a disposition of Plaintiffs' pending motion for approval of attorneys' fees. I have done so, and now render this report and recommendation.

This case is a class action and has been settled as such. The certified class consists of current or former employees of West Virginia University with five or more years of cumulative service after 1986. Plaintiffs alleged in essence that class members were exposed to asbestos during their employment and that the University took inadequate steps to protect their health. Although all class members are by definition asymptomatic for asbestos-related disease, the complaint sought establishment of a medical monitoring program for their benefit. *See Bowers v. Westinghouse Electric Corp.*, 206 W.Va. 133, 522 S.E.2d 424 (1999).

The settlement establishes such a monitoring program, and it also provides for a payment of $1 million in cash.   The agreement does not contemplate direct monetary payments to class members; instead, the cash is available for payment of Plaintiffs' expenses and attorneys' fees, with the residuum to be managed and expended in a manner consistent with the underlying purposes of the litigation.   Notice of the proposed settlement was provided to over 4,000 class members, and only a relative handful (143) exercised the right to opt out.  Plaintiffs now seek a total award of fees and expenses of $862,000, with $690,000 of that amount constituting attorneys' fees.

In performing my assigned task, I first reviewed the motion, Plaintiffs' initial and supplemental memoranda in support thereof, and the class action settlement agreement. This review brought a number of questions to mind, which questions I posed to counsel for Plaintiffs and Defendants in a letter dated January 5, 2006. In this letter, I asked (i) that counsel analyze the fee request under the twelve-factor test announced in *Aetna Casualty & Surety Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986); (ii) how the value of the result achieved should be measured; (iii) what evidence exists in the record as to the value of the non-cash relief to the class; (iv) how any residual funds will be managed for the benefit of the class; and (v) how the scope of the class members' release might affect the value of what the class has obtained.  The written responses of counsel to this correspondence were prompt and helpful.  Because I believe that my inquiry and those responses should be a part of the record, I attach them to this report as Exhibits 1 through 3.

Before moving on to the central question of fees, I first conclude that the expenses for which counsel seeks reimbursement appear to have been reasonably incurred, and they should therefore be recovered.

In our State, the relevant inquiry into the reasonableness of attorneys' fees is a multifaceted one, in which the court awarding fees must consider a wide range of factors that flow from the general ethical principle that an attorney's fee must be reasonable. *Aetna Casualty & Surety Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156, 162 (1986). Specifically, the *Aetna Casualty* Court held that "[t]he reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Syl. pt. 4 (in part), *Aetna Casualty*. The Court has consistently applied these many factors whenever it has been asked to review the propriety of a fee award. *See, e.g., Hollen v. Hathaway Elec., Inc.*, 213 W.Va. 667, 673, 584 S.E.2d 523, 529 (2003); *Statler v. Dodson*, 195 W.Va. 646, 655, 466 S.E.2d 497, 506 (1995); *Brown v. Thompson*, 192 W.Va. 412, 414, 452 S.E.2d 728, 730 (1994); *Bishop Coal Co. v. Salyers*, 181 W.Va. 71, 81-83, 380 S.E.2d 238, 248-250 (1989).

3

Although the *Aetna Casualty* inquiry was not announced in a class action, much less one where, as here, fees are to be paid from a common fund secured for the class, its twelve-factor test is deliberately comprehensive and flexible enough to apply to most if not all situations in which a court is asked to assess the reasonableness of a fee request. Hence, I will apply it here.

The factors overlap, and not every one will be relevant in every case.[1] However, the Court has made clear that the first factors to be considered, and indeed the centerpiece of the inquiry, are time and labor expended and the reasonable and customary hourly fee for that time:

> [T]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.
>
> This sum is referred to as the "lodestar." . . . [T]he lodestar may be adjusted upward or downward to reflect the twelve factors[.]

*Rice v. Mike Ferrell Ford, Inc.*, 184 W.Va. 757, 760, 403 S.E.2d 774, 777 (1991) (citation and quotation omitted).

I have examined the evidence submitted by class counsel concerning the time expended on this litigation – 3,340 hours – and I find it to be reasonable. Although 3,340 hours is indeed a very significant investment of time, when one considers it in the context of five years of class-action litigation involving the aggregate (though not unduly duplicative) efforts of three law firms, in my view its reasonableness is apparent. As for a reasonable and customary hourly rate, the fee application is based on a rate of $206.50

---

[1] Thus, to the extent a particular factor is not addressed in this memorandum, I have considered it and found it either irrelevant or having negligible effect on my recommendation.

4

per hour for Plaintiffs' counsel's time. I find that this rate is a reasonable one for legal services of comparable difficulty and skill in the Charleston market.

Hence, the fee requested here is identical to the "lodestar" – that is, Plaintiffs do not seek an *upward* adjustment. My inquiry, therefore, is whether, taking other relevant factors into account, there should be a *downward* adjustment. I believe that there should not be.

The result obtained is an obvious factor that can in some instances induce a court to adjust a fee downward – a fee grossly disproportional to the benefit to a lawyer's client is less likely to be reasonable. The value of the result obtained here is not readily calculable, inasmuch as the primary component of the settlement is non-cash consideration in the form of a long-term medical monitoring program. The question is further complicated because Defendants plan to use in-house resources to provide much of the program. Nonetheless, there is competent evidence of record, in the form of the Lockey affidavit, that the value of the program is approximately $2 million, which, when combined with the $1 million cash payment, produces a total value of $3 million. For their part, the Defendants concede that the value of the results achieved is likely between $2.5 million and $3 million. Hence, I accept the $3 million figure for purposes of my analysis, and the requested fee, which is 23% of that figure, is reasonable and proportional to that result.

Although the time expended, rate requested, and results achieved are perhaps the most important considerations, several of the other *Aetna Casualty* factors also support Plaintiffs' application and argue against a downward adjustment. Three related ones are the novelty of the issues, the skill required to meet them, and the ability

of counsel to meet those requirements. Several issues in this case appear to have been novel and difficult, and indeed remain unaddressed by the Supreme Court of Appeals. Two in particular that I consider quite intriguing and debatable involve Defendants' assertions of workers' compensation and sovereign immunity. In addition, obtaining class certification, almost by its nature, requires special attorney skill. Finally, it appears that there were sharp factual disputes and that, had satisfactory settlement not been achieved, Defendants intended to vigorously contest liability and damages at trial. In short, this case was complex, it demanded skilled lawyering, and the information available to me shows that it received skilled lawyering.

Another particularly relevant factor here is preclusion of other employment on account of the litigation. Having one case does not, standing alone, preclude taking another. A lawyer can spend more time on his work in general when business and circumstances require, and most surely do. But there are human and temporal limits on such efforts, and I think it self-evident that 3,340 hours of labor must have significantly precluded other employment.

For all of these reasons, I believe that no downward adjustment to the requested lodestar fee is appropriate, and that the fee is a reasonable one.

One issue does cause me some concern, however. Payment of counsel's fees and expenses will leave a residuum of over $100,000. As the parties reported to me in response to my inquiry, plans are not yet in place for this money to be managed and used. It does seem to me that payment of counsel's full fee is inappropriate until this large detail is taken care of, presumably through preparation and court approval of trust documents and appointment of a trustee. Hence, I recommend that the Court direct that a

portion of the fee be withheld and not paid over to class counsel until the trust is established and is ready to accept and manage the residual funds  I believe that $20,000 of the $690,000 fee should be so temporarily withheld.

In sum, and subject to my comments regarding the residual trust matter, I find that Plaintiffs' application for fees and expenses is a reasonable one, and I recommend that the Court grant the application in the amounts requested.

Respectfully submitted,

THOMAS R. GOODWIN (WV Bar #1435)
GOODWIN & GOODWIN, LLP
300 Summers Street, Suite 1500
Charleston, West Virginia  25301
(304) 346-7000

## CERTIFICATE OF SERVICE

FILED
2006 FEB 10   AM 9: 46

I, Thomas R. Goodwin, Special Commissioner, certify that I observed the

foregoing "Report and Recommendation of the Special Commissioner" this 10th day of

February, 2006, by facsimile transmission (without attachments) and placing a true and

correct copy (with attachments) in the United States Mail, postage prepaid, and addressed

as follows:

Robert P. Sweeney, Esq.
Robert E. Sweeney Co., L.P.A.
55 Public Square, Suite 1500
Cleveland, Ohio 44113

Stephen M. Fowler, Esq.
Pullin, Fowler & Flanagan PLLC
901 Quarrier Street
Charleston, West Virginia 25301

THOMAS R. GOODWIN
SPECIAL COMMISIONER FOR
THE CIRCUIT COURT
OF KANAWHA COUNTY

# EXHIBIT 4

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 1 4 2006

FILED
CLERK'S OFFICE

### DOCKET NO. 875

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

# IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*Charles Richard Archer, et al. v. Mead Corp., et al.*, N.D. Alabama, C.A. No. 4:05-2466
*Rebekah Riggs, etc. v. Mead Corp., et al.*, N.D. Alabama, C.A. No. 4:05-2472
*Alford McGuffie v. Mead Corp., et al.*, N.D. Alabama, C.A. No. 4:05-2473
*Kim Thorp v. Illinois Central Railroad*, S.D. Illinois, C.A. No. 3:05-551
*Dennis Montague v. Illinois Central Railroad*, S.D. Illinois, C.A. No. 3:05-666
*Brian Ritchie v. Illinois Central Railroad*, S.D. Illinois, C.A. No. 3:05-677
*John Rogers v. Illinois Central Railroad Co.*, S.D. Illinois, C.A. No. 3:05-685
*Karl E. Drake v. Illinois Central Railroad*, S.D. Illinois, C.A. No. 3:05-686
*Beatrice M. Chiasson, et al. v. Honeywell International, Inc., et al.*, E.D. Louisiana, C.A. No. 2:05-5221
*Mario Bellu, et al. v. Diamond Offshore (USA), Inc., et al.*, E.D. Louisiana, C.A. No. 2:06-608
*Daniel W. Melford, Sr. v. Peter Territo, et al.*, M.D. Louisiana, C.A. No. 3:05-1405
*Michael Catania, et al. v. Anco Insulations, Inc., et al.*, M.D. Louisiana, C.A. No. 3:05-1418
*Ronald Jacob Laughter, etc. v. Georgia-Pacific Corp.*, N.D. Mississippi, C.A. No. 2:06-7
*James Turner v. Ameron International Corp., et al.*, S.D. Mississippi, C.A. No. 1:05-663
*Thomas A. Chisolm v. Ingersoll-Rand Co., et al.*, S.D. Mississippi, C.A. No. 1:05-665
*Leon V. Hartfield v. Allied Signal, Inc., et al.*, S.D. Mississippi, C.A. No. 1:05-670
*Deborah McDonald, etc. v. Minnesota Mining & Manufacturing Co., et al.*, S.D. Mississippi, C.A. No. 1:06-62
*Ronald G. Toppins v. 3M Co.*, E.D. Missouri C.A. No. 4:05-1356
*Cecil Reuben Jackson, et al. v. Kimberly-Clark Corp.*, E.D. Texas, C.A. No. 1:05-769
*Thomas Vodry Allen, et al. v. Kimberly-Clark Corp., et al.*, E.D. Texas, C.A. No. 1:05-876
*Newbern Brown Adkins, et al. v. Kimberly-Clark Corp., et al.*, E.D. Texas, C.A. No. 1:05-882
*Jacqueline D. Skinner, et al. v. Atlantic Richfield Co., et al.*, S.D. Texas, C.A. No. 4:05-4094
*Priscilla Alix, etc. v. Saberhagen Holdings, Inc., et al.*, W.D. Washington, C.A. No. 2:05-2144
*Lewis A. Seymour v. Saberhagen Holdings, Inc., et al.*, W.D. Washington, C.A. No. 2:05-2145

## BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN,* D. LOWELL JENSEN, J. FREDERICK MOTZ,* ROBERT L. MILLER, JR., KATHRYN H. VRATIL AND DAVID R. HANSEN, JUDGES OF THE PANEL

### TRANSFER ORDER

---

*Judge Keenan took no part in the disposition of this matter with respect to the Eastern District of Louisiana *Chiasson* action and the Southern District of Mississippi *Hartfield* action; and Judge Motz took no part in the disposition of this matter with respect to the Northern District of Alabama *Riggs* action, the Eastern District of Louisiana *Chiasson* action, the Middle District of Louisiana *Catania* action, the Southern District of Mississippi *Turner* and *Hartfield* actions, the Eastern District of Texas *Jackson* action, and the Western District of Washington *Alix* action

- 2 -

Before the Panel are motions brought, pursuant to Rule 7.4, R.P.J.M.L., 199 F.R.D. 425, 435-36 (2001), by plaintiffs in 24 actions pending in the Northern District of Alabama, the Southern District of Illinois, the Eastern and Middle Districts of Louisiana, the Northern and Southern Districts of Mississippi, the Eastern District of Missouri, the Eastern and Southern Districts of Texas, and the Western District of Washington. Movants ask the Panel to vacate its orders conditionally transferring their actions to the Eastern District of Pennsylvania for inclusion in the centralized pretrial proceedings occurring there in this docket before Judge James T. Giles.

On the basis of the papers filed and hearing session held, the Panel finds that these actions involve common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the actions to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of the actions is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI),* 771 F.Supp. 415 (J.P.M.L. 1991). Particularly, in the Panel's original decision distinctions based on such matters as the pendency of motions or other matters before the transferor court,[1] the uniqueness of a party's status, the type of defendant, the docket condition of any specific federal district, the stage of pretrial proceedings, the presence of unique claims or additional claims not relating to asbestos injury or death, and/or the unanimity of opposition to transfer by the parties to an action, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket. We are not persuaded to depart from this approach in dealing with the question of transfer of the actions now before the Panel.

Under the stewardship of the transferee court, as of May 25, 2006, i) over 74,450 actions have been closed in the transferee district, and ii) over 1,350 actions or claims therein have been returned to their originating transferor districts. To any parties that believe the uniqueness of their particular situation renders continued inclusion of their action in MDL-875 unnecessary or inadvisable, whenever the transferee court deems remand of any claims or actions appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L., 199 F.R.D. at 436-38. We are confident that the transferee court will continue to promptly review arguments for returning transferred

---

[1] Some plaintiffs have argued that transfer of their actions should be denied or deferred in order to permit the resolution of motions to remand the actions to state court. There is no need to delay transfer in order to accommodate such an interest. We make the following observations: 1) as a practical matter, there is a lag time of at least three or four months from the filing of an action, its identification as a potential tag-along action, issuance of a conditional transfer order, stay of transfer when a party timely objects to the conditional transfer, briefing on the question of transfer, the Panel hearing session, and the issuance of the Panel's subsequent order; 2) Panel Rule 1.5, R.P.J.P.M.L., 199 F.R.D. at 427, expressly provides that the pendency of a conditional transfer order does not in any way i) suspend orders and pretrial proceedings in the district court in which the action that is the subject of the conditional transfer order is pending, or ii) limit the pretrial jurisdiction of that court; and 3) accordingly, those courts wishing to address such motions have adequate time in which to do so; those courts concluding that such issues should be addressed by the transferee judge need not rule on them, and the process of Section 1407 transfer in MDL-875 can continue without any unnecessary interruption or delay.

- 3 -

actions or claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever it is convinced that retention in the MDL-875 proceedings is no longer needed.

     IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, these 24 actions are transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable James Giles for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

                              FOR THE PANEL:

                                   Wm. Terrell Hodges
                                   Chairman