**MDL 875**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JAN - 9 2007

FILED
CLERK'S OFFICE

**PLEADING NO. 4940**

## BEFORE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In Re Asbestos Products Liability Litigation | **MDL Docket No. 875**<br>**CTO-271** |

JANET SCHUELER,          )
          )
       Plaintiff,    )
      v.         )    Case No. 2:06-1076
          )
AMERICAN OPTICAL CORP.     )
          )
       Defendant.   )

## MOTION AND BRIEF TO VACATE CONDITIONAL TRANSFER ORDER AND EXHIBITS

Please take notice that pursuant to MDL General Rules, Plaintiff, JANET SCHUELER, in the above-entitled action, herein files her Motion and Brief to Vacate Conditional Transfer Order and Exhibits.

**OFFICIAL FILE COPY**

RECEIVED
CLERK'S OFFICE
2007 JAN -9 A 10: 37
NOT FILED

**IMAGED** JAN - 9 2007

1.     On October 18, 2005 plaintiff Janet Schueler's matter was filed as part of a larger, multi-plaintiff case styled *Allen et al., v. Pfizer Inc., et al.,* 05 CV 1237, Winnebago County, WI. (Attached hereto as Exhibit 1).

2.     Each plaintiff in the *Allen* case made legal claims against defendants who manufactured respiratory protection equipment and defendants who supplied respiratory protection equipment to each plaintiff's employer. Specifically, plaintiff Schueler filed suit against the following defendants: Pfizer Inc., (subsequently dismissed), American Optical Corp., W.O.S. Inc., Conney Safety Products, Ideal Safety & Marketing Inc., Morton Safety, LLC, and W.A. Vorpahl Inc.

3.     As this was a multi-plaintiff lawsuit and Wisconsin is a notice pleading jurisdiction, the allegations as plead outlined several possible lung diseases suffered by all plaintiffs as well as all potential exposure sources to all plaintiffs. The *Allen* complaint was not, and under Wisconsin pleading requirements needn't be, disease and exposure source specific as to each plaintiff.

4.     On October 2, 2006 the Court entered a Stipulation and Order transferring plaintiff Orlin Schueler's case to Sheboygan County as against defendant American Optical only (Exhibit 2).

5.     Currently, plaintiff Schueler's claims against Wisconsin state defendants W.O.S. Inc., Conney Safety Products, Ideal Safety & Marketing Inc., Morton Safety, LLC, and W.A. Vorpahl Inc. remain pending in the Winnebago County Circuit Court, as part of the *Allen* litigation.

6.      Because none of the named Wisconsin defendants were part of the Transfer Order, American Optical removed the matter to the U.S. District Court for the Eastern District of Wisconsin.

7.      Plaintiff objected to the removal of the action in the federal court and also moved for modification of the transfer order in the Winnebago County Circuit Court consistent with Wisconsin law on claim preclusion.  American Optical filed an objection and after full briefing and a December 13, 2006 hearing on the matter, the Winnebago County Circuit Court denied plaintiff's motion to amend the transfer order.  As a result there are currently pending two matters arising from the same set of circumstances, the instant matter and the Winnebago County state court matter.  (A copy of the state court hearing and rulings is attached hereto as Exhibit 3).

8.      On December 11, 2006 two days before the state court hearing, but unknown to plaintiff the Eastern District Federal Court conditionally transferred this matter to the MDL.

9.      On December 15, 2006 based upon the Winnebago County ruling and conditional transfer, plaintiff withdrew her motion to remand in the district court.

10.      Plaintiff's objection to the transfer of her case to this, the Asbestos Products Liability Litigation MDL is that her claim is for the disease and death of her husband caused by inhalation of silica containing dusts, not asbestos containing dusts.

11.      As discussed in paragraph 3 above, the *Allen* lawsuit is multi-plaintiff multi-defendant complaint and therefore the allegations are drafted broadly.

12.      Between the time the instant matter was severed from the other *Allen* plaintiffs, Schueler had no opportunity to move any court for an order allowing her to amend

her pleadings to more clearly conform to the proofs. FRCP 15 (a) and (b), and its Wisconsin counterpart (Wis. Stat. §802.09) liberally allow for the amendment of pleadings to conform to the evidence "when justice so requires". Attached hereto as Exhibit 4 is plaintiff Schueler's First Amended Complaint at Law which she requests the Court at some point allow her to file as it now contains only the two parties within the federal court case and focuses her allegations on this one plaintiff, not all 13 as in the *Allen* case.

13.    Without allegations of asbestos caused injury to plaintiff's decedent, this MDL would not be the proper venue for this case. Plaintiff Schueler is aware of the fact the amended pleading and proofs would likely mean the transfer of her matter to the Silica Products Liability Litigation MDL before Judge Jack in Corpus Christi, TX. This however appears to be the more proper federal venue for this matter.


WHEREFORE, plaintiff respectfully requests this honorable Panel grant her the following relief:

a.    Vacate the Order transferring her matter to the Asbestos Products Liability MDL;

b.    Grant her leave to file her First Amended Complaint at Law, attached hereto as Exhibit 4, instanter;

c.    Transfer this matter to a more appropriate venue, either back to the Eastern District Court of Wisconsin or the Silica Products Liability Litigation MDL in Corpus Christi, TX.

Dated this 8th day of January, 2007.

PENN RAKAUSKI
Attorneys for Plaintiff Janet Schueler

By: _____
    Steven R. Penn

Penn Rakauski
927 Main Street
Racine, WI  53403-1524
Ph: 262 636 0036
Fax: 262 636 0030

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JAN - 9 2007

FILED
CLERK'S OFFICE

## BEFORE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

In Re Asbestos Products Liability Litigation

MDL Docket No. 875
CTO-271

JANET SCHUELER, )
)
            Plaintiff, )
    v. )                                    Case No. 2:06-1076
)
AMERICAN OPTICAL CORP. )
)
            Defendant. )

## PROOF OF SERVICE FOR MOTION AND BRIEF TO VACATE CONDITIONAL TRANSFER ORDER AND EXHIBITS

To:    Clerk of the Panel-Judicial Panel on Multidistrict Litigation
       Thurgood Marshall Federal Judiciary Building
       One Columbus Circle, N.E.
       Room G-255, North Lobby
       Washington, DC  20002-8004

       All counsel on Panel Service List for 2:06-1076

       The undersigned, under penalties as provided by law pursuant to 28 U.S.C. §1407, states that on January 8, 2007 the following document, **Motion and Brief to Vacate Conditional Transfer Order and Exhibits** was served by placing the same for overnight delivery to the Clerk of the Panel, Judicial Panel on Multidistrict Litigation and by placing the same in the U.S. Mail and mailing by First Class delivery with the proper postage to all Counsel listed on attached "Panel Service List".



By: _____
       Steven R. Penn

ATTORNEYS FOR PLAINTIFF JANET SCHUELER
Penn Rakauski
927 Main Street
Racine, WI  53403-1524
262.636.0036

**PANEL SERVICE LIST (Excerpted from CTO-271)**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

*Janet Schueler, etc. v. American Optical Corp.,* E.D. Wisconsin, C.A. No. 2:06-1076

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001

David A. Damico
Burns, White & Hickton, LLC
Four Northshore Center
106 Isabella St.
Pittsburgh, PA 15212

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106-2574

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Susan M. Hansen
Brownson & Ballou
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308-1314

John J. Laffey
Whyte Hirschboeck Dudek
555 E Wells St - Ste 1900
Milwaukee, WI 53202-3819

David C. Landin
Hunton & Williams, LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
Locks Law Firm, LLC
1500 Walnut Street
Philadelphia, PA 19102

Ronald L. Motley
Motley Rice, LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

Steven R. Penn
Penn Rakauski
927 Main Street
Racine, WI 53403

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
Roven-Kaplan, L.L.P.
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA 19102

Steven F. Stanaszak
Whyte Hirschboeck Dudek
555 E Wells St - Ste 1900
Milwaukee, WI 53202-3819

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1570 Penobscot Building
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226

Karen L. Tidwall
Whyte Hirschboeck Dudek Sc
555 E Wells St - Ste 1900
Milwaukee, WI 53202-3819

Andrew J. Trevelise
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

James K. Weston II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406



STATE OF WISCONSIN      CIRCUIT COURT      JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
WINNEBAGO COUNTY

JAN – 9 2007

FILED
CLERK'S OFFICE

DALE G. ALLEN, SR.
N7968 State Road 187
Shiocton, WI 54170

ROBERT BIRKHOLZ
1627 Oakview Drive
Neenah, WI 54956

LAWRENCE BIRLING
W6576 Manitowoc Rd
Menasha, WI 54952

WILLIAM BOTTINE
303 Hewitt Street
Neenah, WI 54956

LAWRENCE GUYETTE
328 McKinley St.
New London, WI 54961

MICHAEL GUYETTE
606 W. Jennings
New London, WI 54961

MARVIN HARRIS
413 Avon Street
New London, WI 54961

GUY LANDUA
W6880 Dinrail Ln.
Polar, WI 54418

KEITH A. OLSON
117 W. Cecil Street
Neenah, WI 54956

JAMES F. OMERNIK
201 Division St.
Neenah, WI 54956

MARTIN H. PENNEY
1409 Parkview Drive
New London, WI 54961



CASE NO:

05CV1237 BR6

CODE: 30100

EXHIBIT
1

JANET SCHUELER, individually and as the Special
Administrator of the estate of ORLIN SCHUELER
1093 Forest Hills Drive
Howards Grove, WI 53083

RICHARD VAN HANDLE
5 Floral Drive
Kimberly, WI 54136

                    PLAINTIFFS              v.

PFIZER, INC. (As successor to Borg-Warner/American Optical)
A foreign corporation,
Registered Agent: CT Corporation Systems
8025 Excelsior Dr. Suite 200
Madison, WI 53717

W.O.S. INC.,
A Wisconsin corporation;
Individually and as successor to Wisconsin
Optical Services, Inc.
Registered Agent: James R. La Luzerne
2985 S. Ridge Road
Green Bay, WI 54307-0387

CONNEY SAFETY PRODUCTS, LLC,
A foreign corporation,
Registered Agent: Lawdock, Inc.
411 E. Wisconsin Ave., Ste 2550
Milwaukee, WI 53202-4497

IDEAL SALES & MARKETING, INC.,
A Wisconsin corporation,
Individually and as successor to Lyons
Safety, Incorporated
Registered Agent: William O. Thompson
17155 W. Glendale Drive
New Berlin, WI 53151

MORTON SAFETY, LLC,
A Wisconsin corporation,
Registered Agent: Wyon F. Wiegratz
1112 S. Commercial Street
Neenah, WI 54956

W. A. VORPAHL, INC.,
A Wisconsin corporation,
Registered Agent: Kent S. Vorpahl
526 Lambeau Street
Green Bay, WI 54307-2175

MINE SAFETY APPLIANCES COMPANY,
A foreign corporation,
c/o President
121 Gamma Drive
Pittsburgh, PA 15238

MINNESOTA MINING & MANUFACTURING
COMPANY, A foreign corporation,
Registered Agent:       Delaware CT Corporation System
                        44 E. Mifflin Street
                        Madison, WI 53703

NORTH SAFETY PRODUCTS COMPANY,
A foreign corporation,
2000 Plainfield Pike
Cranston, RI 02921-2019

THE NORTON COMPANY,
A foreign corporation,
2000 Plainfield Pike
Cranston, RI 02921-2019

TEXTRON, INC.,
A foreign corporation,
Registered Agent:       Delaware CT Corporation System
                        1209 Orange Street
                        Wilmington, DE 19801

LIBERTY MUTUAL INSURANCE COMPANY
(As Insurer of the Welsh Manufacturing Company),
A foreign corporation,
Registered Agent:       CT Corporation System
                        Roger Giehart R/A
                        44 E. Mifflin Street
                        Madison, WI 53707

THE TRAVELERS CASUALTY AND SURETY COMPANY,
f/k/a AETNA CASUALTY AND SURETY COMPANY
(As Insurer of the Welsh Manufacturing Company),
A foreign corporation,

Registered Agent:    Kenneth F. Pond
Travelers Indemnity
445 S. Mooreland Road
Brookfield, WI 53005


AMERICAN OPTICAL CORPORATION,
A foreign corporation,
14 Mechanic St.
Southbridge, MA 01550-2555

DALLOZ SAFETY, INC., (f/k/a Willson Products, Inc.)
A foreign corporation,
205 Washington St.
Reading, PA 19601-4040

EMPLOYERS INSURANCE COMPANY OF
WAUSAU (As Insurer of Willson Products, Inc.),
A Wisconsin Corporation,
Registered Agent: W. John Hoffert
200 Westwood Drive Wausau, WI 54401-7881

AIG INSURANCE SERVICES, INC..
(As Insurer of Willson Products, Inc.),
A Foreign Corporation,
Registered Agent:    CSC-Lawyers Incorporating
Service Company
25 W. Main Street
Madison, WI 53703


DEFENDANTS

---

## **COMPLAINT AT LAW**

NOW COME the Plaintiffs, DALE ALLEN, ROBERT BIRKHOLZ, LAWRENCE BIRLING, WILLIAM BOTTINE, LAWRENCE GUYETTE, MICHAEL GUYETTE, MARVIN HARRIS, GUY LANDUA, KEITH OLSEN, JAMES OMERNIK,  MARTIN PENNEY, JANET SCHUELER,  AND RICHARD VAN HANDLE by their attorneys, PENN RAKAUSKI, and allege and show the court as follows:

### **INTRODUCTORY PARAGRAPHS**

1.   Plaintiffs are adults whose residences are as listed in the caption of this complaint, and

which are incorporated by reference as though set out here in their entirety.

2.   All of the plaintiffs (except Janet Schueler) and decedent Orlin Schueler are present or former foundry workers suffering from occupational lung diseases, including silicosis and/or asbestosis, and other diseases.

3.   All were exposed to silica-containing products, and all used one or more of the dust respirators manufactured by one or more of the defendants as specified in this paragraph below.  As a result, plaintiffs' claims share common issues of law and fact, including but not limited to the acts and omissions establishing the liability of the defendants in causing plaintiffs' disease.   Consolidation of plaintiffs' claims is in the interests of judicial economy and efficiency. On information and belief, each Plaintiff wore respirators/masks manufactured by particular Defendant(s) in this cause as follows:

| PLAINTIFF/ DECEDENT | 3M | AO | MSA | WELSH/ NORTON/ TEXTRON | WILLSON |
|---|---|---|---|---|---|
| Dale Allen | | X | | X | |
| Robert Birkholz | X | | X | | |
| Lawrence Birling | X | | X | X | X |
| William Bottine | X | | | | |
| Lawrence Guyette | X | | X | | |
| Michael Guyette | X | | X | X | |
| Marvin Harris | X | | X | X | |
| Guy Landua | X | | X | X | X |
| Keith Olsen | X | | | | |
| James Omernik | | | X | | |
| Martin Penney | X | | X | X | X |
| Orlin Schueler | | X | | | |
| Richard Van Handle | X | | X | | |

4.   The defendants, W.O.S. Inc., Conney Safety Products, LLC, Ideal Sales & Marketing Inc., Morton Safety, LLC, and W.A. Vorpahl, Inc., (Collectively referred to as Supplier Defendants") are corporations organized under Wisconsin law and are domiciled in this State, having done business in various counties including Winnebago County.

5.   The defendants, Mine Safety Appliances Company, Minnesota Mining & Manufacturing Company, Inc., Pfizer and American Optical Corporation are foreign corporations authorized to do, having done or still doing business in the State of Wisconsin in various counties, including Winnebago County, which represented substantial and not isolated activities in this state, and who manufactured respirators used by plaintiffs and/or their decedents.

6.   The Welsh Manufacturing Company and/or the Norton Company and/or North Safety Products Company are or were foreign corporations authorized to do, having done or still doing business in the State of Wisconsin in various counties, including Winnebago County, which represented substantial and not isolated activities in this state, and who manufactured respirators used by plaintiffs and/or their decedents. Welsh no longer exists, but Norton Company and/or Textron Inc., also a foreign corporation, are liable for Welsh's obligations, and North Safety Products Company is liable for the obligations of the Norton Company. At all times material hereto, Liberty Mutual Insurance Company, and The Travelers Casualty and Surety Company, formerly known as the Aetna Casualty and Surety Company, foreign corporations engaged in substantial and not isolated activities in this state, issued insurance to Welsh Manufacturing Company wherein they agreed to insure for liability, pay damages, defend and hold Welsh harmless for the injury to plaintiffs and/or their decedents from their use of defective and unreasonably dangerous respirators manufactured and sold by Welsh. Pursuant to those insurance policies, Liberty Mutual and Travelers are sued under the Wisconsin direct action statute, § 803.04(2), Wisconsin Statutes, under which they are proper parties' defendant in this action. All of the entities named in this paragraph are foreign companies authorized to do, having done, and doing

business in Winnebago County, Wisconsin, which represented substantial and not isolated activities in this state.

7. Willson Products Inc. manufactured respirators used by the plaintiffs and/or their decedents. Willson, at that time a foreign corporation which engaged in substantial and not isolated activities in this state, no longer exists, but Dalloz Safety Inc., formerly known as WGM Safety Corporation, also a foreign corporation, is liable for Willson's obligations. At all times material hereto, Employers Insurance Company of Wausau and American International Group (hereinafter "A.I.G.") issued insurance to Willson wherein it agreed to insure for liability, pay damages, defend and hold Willson harmless for the injury to plaintiffs and/or their decedents from their use of defective and unreasonably dangerous respirators manufactured and sold by Willson. Pursuant to those insurance policies, Employers Insurance Company of Wausau and A.I.G are sued under the Wisconsin direct action statute, § 803.04(2), Wisconsin Statutes, under which it is a proper party defendant in this action. Employers Insurance Company of Wausau is a Wisconsin corporation authorized to do, having done and doing business in the County of Winnebago, Wisconsin. A.I.G. is a foreign corporation authorized to do, having done, and doing business in Winnebago County, Wisconsin, which represented substantial and not isolated activities in this state.

8. Plaintiff Janet Schueler is the wife of decedent Orlin Schueler, and is suing as special administrator of her decedent's estate for injury to the person of her decedent, and for herself for her loss of consortium and support during her decedent's life time due to his injury, and for her decedent's wrongful death under § 895.03, Wisconsin Statutes, for

pecuniary loss, loss of society and companionship, and medical, funeral, burial, and cemetery expenses resulting from the death of her decedent.

9.  Plaintiffs (except Janet Schueler) and decedent Orlin Schueler were exposed to silica sand and silica-containing products and/or other pneumoconiosis-producing dusts such as asbestos, and all used one or more of the dust respirators and masks manufactured by one or more of the defendants who made and sold respirators and masks.

10.  Defendants Mine Safety Appliances Company, Minnesota Mining & Manufacturing Company, Inc., Pfizer, American Optical Corporation, the Norton Company, and North Safety Products Company, together with Welsh Manufacturing Company and Willson Products, Inc., are all collectively hereinafter referred to as the "respiratory protection defendants." The respiratory protection defendants manufactured, distributed, and/or sold respirators and dust masks to plaintiffs' employers who were provided to and worn by plaintiffs and/or their decedents during their work at the foundries. The devices were sold and used in the State of Wisconsin.

11.  Plaintiffs and/or their decedents were exposed to dust from silica sand and from silica-containing products and/or to other pneumoconiosis-producing dusts, such as asbestos, on those occasions when they wore the respirators of the respiratory protection defendants. The silica products, other dust producing products, respirators and dust masks were subjected to normal use, and remained, in all material respects, in the same condition as at the time of sale by the supplier defendants.

12.  Plaintiffs and/or their decedents developed severe and potentially fatal lung diseases such as silicosis, and other diseases caused by breathing silica dust and other pneumoconiosis-

producing dust particles while wearing the respirators and dust masks. Plaintiff's decedent Orlin Schueler specifically developed silicosis and/or asbestosis.

13.   The respiratory protection defendants engaged in concerted action pursuant to a common scheme or plan to protect their industry by hiding the limitations and defects of their respiratory protective devices from the purchasers and users, by means of a tacit or explicit agreement, and/or by encouraging each other by their conduct, not to reveal the defects they had discovered in their products and in their competitors' products to the government and the public at large, and by means of misrepresentations about the safety of their products, each thereby aiding the others and giving them substantial assistance or encouragement in their conduct, and knowing that such conduct constituted a breach of duty by each of the others. These concerted actions jointly caused or contributed to plaintiffs' diseases, injuries, and their decedents' deaths, for all of which the respiratory protection defendants are jointly and severally liable under § 895.045 Wisconsin Statutes.

14.   The acts or omissions of the respiratory protection defendants and supplier defendants jointly and cumulatively caused a single, indivisible injury to each plaintiff and/or her decedent, i.e., silicosis and other ill health effects, including the death of Orlin Schueler from inhaling dangerous levels of silica dust particles, and other pneumoconiosis-producing dusts, for which the defendants are jointly and severally liable.

15.   The respiratory protection defendants and supplier defendants are also jointly and severally liable for the liabilities asserted herein because Wisconsin Statutes, §§ 895.045 and 895.85, as applied to the present litigation, are unconstitutional under the Wisconsin and United States Constitutions, by reason of the fact that the defendants' conduct and the resulting injury occurred before their enactment. Therefore, the foregoing statutes cannot

constitutionally apply to plaintiffs' claims, and petitioners' claims are governed by the principles of joint and several liability which were in effect at the time of defendants' conduct and the resulting injury to each plaintiff and/or decedent.

16. Plaintiffs were not aware more than three years before the filing of their complaint, and were not possessed of information from which they ought to have been aware, of both the nature of their injury and its causal connection to the negligence and/or defective products of defendants, nor were plaintiffs' decedents so aware before their deaths.

17. RESERVED

## FIRST CLAIM FOR RELIEF IN TORT – STRICT LIABILITY

18. Plaintiffs reallege the allegations of paragraph 1 through 17 of this complaint.

19. The respirators and dust masks manufactured by the respiratory protection defendants, and supplied by supplier defendants were, at the time when shipped by them, defective in design and manufacture, and unreasonably dangerous, in that in normal use they failed to adequately protect plaintiffs and/or their decedents from inhaling dangerous quantities of respirable-size silica particles, and other pneumoconiosis-producing dusts, resulting in plaintiffs' and/or their decedents' development of silicosis and other ill health effects, including death.

20. The respiratory protection defendants and suppliers are strictly liable in tort because of the defective design and unreasonable hazard from normal use of their products, and because of their failure to properly warn or inform purchasers and users that the "approved" dust respirators typically used in foundries for protection from pneumoconiosis-producing dust, and used by plaintiffs and/or their decedents, could not be safely used with silica sand and silica-containing products during foundry operations, and that they could not be safely used

for respiratory protection above certain concentration levels of dust from silica-containing products.

21. As the result of the above-described injuries proximately caused by the defendants, the plaintiffs and/or their decedents suffer presently, suffered in the past, and will continue to suffer, substantial physical and mental pain and discomfort as a result of their or their decedents' occupational lung disease and/or other diseases, and the loss of enjoyment of life; and loss of the love, society and companionship, and support of plaintiffs' decedents, both before and after their deaths.

22. Furthermore, plaintiffs suffering from silicosis have a high risk of developing lung cancer and other diseases such as scleroderma, systemic lupus erythematosus, repeated episodes of tuberculosis and rheumatoid arthritis, an increased risk of developing lung infections and other health complications due to silicosis, and have a reasonable fear of developing lung cancer and these other diseases.

23. Also as the result of the above-described injuries proximately caused by the defendants, the plaintiffs and/or their decedents suffer presently, suffered in the past, and will continue to suffer, economic losses. They have incurred, and will continue to incur, medical expenses for the treatment, diagnosis and monitoring of silicosis and the complications of silicosis, and funeral, burial and cemetery expenses of their decedents. They have lost wages and will lose future earning capacity as a result of their illness. Plaintiffs will have increased difficulty in obtaining health insurance and/or will be required to pay higher premiums to purchase health insurance as a result of silicosis, tuberculosis and the complications and risks of silicosis.

## SECOND CLAIM FOR RELIEF IN TORT - NEGLIGENCE

24. Plaintiffs reallege the allegations of paragraph 1 through 23 of this complaint.

25. All of the respiratory protection defendants performed or were aware of research that led them to the knowledge that their products would not sufficiently prevent the users' inhalation of respirable-size, pneumoconiosis-producing dust particles that cause potentially fatal lung disease.

26. As a result of the research described above, the defendant respirator manufacturers knew full well at all times relevant to this action that no one size respirator model fits every face safely, and that, without an adequate fit, their products would not prevent the inhalation of dangerous amounts of disease causing respirable particles.

27. Each respirator manufacturer defendant also knew that its negative pressure dust respirators or masks should not be used for protection above certain dust concentration levels.

28. Each respirator manufacturer defendant was aware that harmful respirable substances, such as silica and asbestos, occur in industry in extremely small sizes that would readily penetrate their dust filter materials.  Each was aware that certain conditions in the atmosphere, such as moisture, chemical vapors and oil mists, significantly and adversely affected the effectiveness of their dust filter materials and that the degradation of the filter materials was at its worst in foundries. Each was aware that, as a result, the filter material used in each respirator model would allow significant penetration and leakage of respirable-size particles of harmful substances, such as silica and asbestos, under typical circumstances and conditions found in the workplace, including foundries.

29. All of the respiratory protection defendants knew that, despite the above deficiencies, their products could meet governmental approval standards, and yet still fail to provide adequate

respiratory protection to prevent the diseases they were marketed as preventing. All of the respiratory protection defendants, collectively and in concert with each other, also concealed and failed to disclose to the government, the public at large, and the purchasers and users of their products the research they were aware of which disproved their marketing claims, and engaged, instead, in a marketing campaign based on misrepresentations, and which included using the governmental approval as a cover for selling masks which they knew were defective and ineffective.

30. The respiratory protection defendants are liable for their negligence in manufacturing respiratory protective equipment which they knew or should have known had defects and dangerous limitations for safe use as stated above, and for their negligence in failing to warn purchasers and users that their products could not be safely used with silica sand and silica-containing products during foundry operations, and in failing to provide proper instructions, information, or warnings that their products could not provide adequate respiratory protection above certain concentration levels of dust from silica-containing products.

31. The acts and omissions of the respiratory protection defendants were in violation of their duty to use reasonable care for the safety of users of their products, including plaintiffs and/or their decedents.

32. Supplier defendants, as a safety equipment product supplier held to the standard of an expert regarding foreseeable harm from the ordinary and intended use of the products, it supplied should have known that, because of the deficiencies of the respirators and masks typically in use in foundries, they would not protect foundry workers from the hazards of its silica products arising from their foreseeable and intended use in foundries.

33.  Supplier defendants had no reason to believe that the employers of plaintiffs and/or their decedents would know of the inability of the dust respirators and masks to protect their employees from the hazards arising from the ordinary and intended use of the safety equipment products it supplied, or would take alternative and effective means necessary to so protect them.

34.  Supplier defendants is liable for its negligence in selling dangerous and defective safety equipment products when it knew or should have known of their dangers or defects to foundry workers using such typical dust respirators and masks, and for its negligence in failing to properly warn that these products could not be safely used.

35.  Supplier defendants' acts and omissions were in violation of its duty to use reasonable care for the safety of users of the safety equipment products it sold by their ordinary use, including plaintiffs and/or their decedents.

## THIRD CLAIM FOR RELIEF IN TORT - MISREPRESENTATION

36.  Plaintiffs reallege the allegations of paragraph 1 through 35 of this complaint.

37.  Despite their knowledge of the limitations and deficiencies of their products, the respiratory protection defendants made express warranties, and material representations in sales literature, advertisements and through sales promotional communications, which they knew were false, i.e., that their products were safe and effective in providing respiratory protection from dust and dust diseases.

38.  The respiratory defendants wrongfully, collectively and in concert with each other pursuant to a common scheme or plan, unjustifiably marketed and advertised their respirator products to be effective against respirable-size, fibrosis producing dusts, such as silica in

foundries, and sold their respirator products under the false representation that the use of these respirators would protect workers and their lungs, and prevent workers from breathing air contaminated with harmful, disease-producing substances, such as silica dust, and so would effectively prevent occupational lung disease. Specific representations made by the respirator manufacturers which they knew were false include:

a) Workers can know for sure that their nose, mouth, and lungs are protected (3M);

b) The 8710 [model respirator] stops pneumoconiosis and fibrosis producing dusts from ever reaching the lungs (3M);

c) The nose needs help.  It's not efficient enough to filter out everything harmful to a worker's lungs, things like pneumoconiosis and fibrosis producing dusts.  The 3M brand respirator 8710 is efficient enough (3M);

d) A formable aluminum facepiece that can be shaped to fit individual facial contours. Soft-rubber face cushion forms an air-tight seal on the face (MSA);

e) Unique formable aluminum facepiece can be shaped to fit any face (MSA);

f) Respirator fits any face safely, comfortably, without adjustment (AO);

g) Combining safety with comfort, the soft, pliable rubber face mask fits any face, can be worn for long periods of time without fatigue or discomfort (AO);

h) Simple, efficient design; filter replacement particularly easy, and a dust tight seal is assured (Welsh/Norton/North);

i) Air-aider features a soft and pliable facepiece body that molds itself to facial contours. The headbands anchor to the rigid louvered cover which assures an airtight seal (Welsh/Norton/North);

j) A facepiece that fits all facial contours (Willson);

k) One-piece molded rubber facepiece respirator provides comfortably safe fit for all facial contours (Willson).

39. By reason of the foregoing, the respiratory protection defendants intentionally and/or negligently misrepresented the safety and efficacy of their respiratory protective products with the intention of inducing the general public at large, including the plaintiffs' employers and the plaintiffs and/or their decedents, to purchase and/or use their products, in reliance on their misrepresentations, and in order to obtain the promised respiratory protection.

40. The respiratory protection defendants had a duty to the employers, purchasers and/or users of their products to communicate accurate information about the safety of those products, which they breached by virtue of their concealment of information and by their misrepresentations.

41. As a result of the concerted action by the respirator manufacturer defendants, they were able to successfully establish a market for their defective products and sell them to the public at large at great profit to themselves, by causing purchasers and users of their deficient products to be ignorant of the defects of their products, and to be subjected to a false sense of security and confidence in the safety of the devices, based upon the representations of their safety and their assurances that the masks met governmental approval standards.

42. As a result of the maintenance of this market for their defective masks, the respiratory protection defendants sold and distributed masks to plaintiffs' employers, who, in reliance upon the representations of the safety of the products, purchased them for use by plaintiffs and/or their decedents, who in turn used them in the belief that they would provide

adequate respiratory protection, in reliance on their employers in supplying such devices, and/or in reliance on the defendants' representations.

43. Because of their defects, the masks insidiously harmed their users who relied on the safety of the products and on the representations of the respiratory defendants pertaining thereto, by causing them to inhale harmful substances, which the respiratory protection defendants knew all the while would cause debilitating lung disease, and potentially death from those diseases, as actually happened to plaintiffs and/or their decedents.

## FOURTH CLAIM FOR RELIEF IN TORT – PUNITIVE DAMAGES

44. Plaintiffs reallege the allegations of paragraph 1 through 43 of this complaint.

45. The respiratory protection defendants knew that users of their products could and did contract debilitating and potentially fatal diseases because of the products' leakage of significant amounts of pneumoconiosis producing dust.

46. The respiratory protection defendants were aware of means available to them to cure the defects in the respiratory protection devices which they manufactured, which would prevent the users from contracting the debilitating and potentially fatal diseases they were contracting.

47. The respiratory protection defendants acted maliciously and/or with intentional disregard for the rights and safety of the plaintiffs and/or their decedents and others, and engaged in outrageous conduct, by concealing from the government, the general public, and the end-users of their products, evidence known and available to all of them about the defects and deficiencies of their products, and by knowingly producing, manufacturing and distributing products, without warning, which they knew were certain to cause grave personal injury

and death, and by representing that the devices were safe and effective, despite their contrary knowledge.

48.    The suppression of information and misrepresentations by the respiratory protection defendants were motivated by their desire to obtain an unjust economic advantage, including maximizing sales and profits from the sale of their products, at the expense of the health and lives of plaintiffs and/or their decedents, and untold numbers of others.

49.    Plaintiffs are entitled to a judgment of punitive damages against each of the respiratory protection defendants.

**WHEREFORE**, plaintiffs demand: 1) judgment against all the defendants, jointly and severally, for compensatory damages in an amount to be determined by a jury to be sufficient to compensate them for their actual damages, together with the costs and disbursements of this action; and, 2) judgment for punitive damages against each of the respiratory protection defendants in an amount that is just and determined by a jury to be sufficient to punish them for their actions and to deter them and others from similar conduct.

Dated this 16th day of October, 2005.

PENN RAKAUSKI
Attorneys for Plaintiffs

By: _____
STEVEN R. PENN No. 1029249

**PURSUANT TO WISCONSIN STATUTES, PLAINTIFFS DEMAND A TRIAL BY A JURY OF 12**

PENN RAKAUSKI
Attorneys at Law
927 Main Street
Racine, WI 53403
262/636-0036
262/636-0036 (f)
spenn@dustlaw.com

09/25/2006   00:52   2626360030   PENN RAKAUSKI   PAGE   03/04

STATE OF WISCONSIN            CIRCUIT COURT            WINNEBAGO COUNTY

DALE G. ALLEN, SR., ROBERT BIRKHOLZ,
LAWRENCE BIRLING, WILLIAM BOTTINE,          Case No. 05-CV-1237
LAWRENCE GUYETTE, MICHAEL GUYETTE,
MARVIN HARRIS, GUY LANDAU, KEITH A.         Code: 30100
OLSON, JAMES F. OMERNIK, MARTIN H.
PENNEY, JANET SCHUELER, individually and
as the Special Administrator of the Estate of ORLIN
SCHUELER, and RICHARD VAN HANDLE,

              Plaintiffs,

     vs.

W.O.S. INC., Individually and as successor to
Wisconsin Optical Services, Inc., CONNEY
SAFETY PRODUCTS, LLC, IDEAL SALES &
MARKETING, INC., Individually and as successor
to Lyons Safety, Incorporated, MORTON
SAFETY, LLC, W. A. VORPAHL, INC., MINE
SAFETY APPLIANCES COMPANY,
MINNESOTA MINING & MANUFACTURING
COMPANY, NORTH SAFETY PRODUCTS
COMPANY, THE NORTON COMPANY,
TEXTRON, INC., LIBERTY MUTUAL
INSURANCE COMPANY (as Insurer of the Welsh
Manufacturing Company), THE TRAVELERS
CASUALTY AND SURETY COMPANY, f/k/a
AETNA CASUALTY AND SURETY COMPANY
(as Insurer of the Welsh Manufacturing Company),
AMERICAN OPTICAL CORPORAITON,
DALLOZ SAFETY, INC., (f/k/a Willson Products,
Inc.), EMPLOYERS INSURANCE COMPANY
OF WAUSAU (as Insurer of Willson Products,
Inc.), and AIG INSURANCE SERVICES, INC. (as
Insurer of Willson Products, Inc.),

              Defendants.



---

### STIPULATION AND ORDER

---

    The parties hereby stipulate and agree, by their undersigned counsel, that the claims of

Janet Schueler, individually and as the Special Administrator of the estate of Orlin Schueler,

against American Optical Corporation, may be transferred to Sheboygan County.

MILWAUKEE\1284581.1



EXHIBIT
2

09/25/2006 MON 13:48 [TX/RX NO 8668] ☑003

PENN RAKAUSKI
Attorneys for Plaintiffs

Date: 9/25/6

Steven R. Penn
State Bar No. 1025249

WHYTE HIRSCHBOECK DUDEK SC
Attorneys for Defendant,
American Optical Corporation

Date: 9/25/06

John J. Laffey
State Bar No. 1010885
Steven F. Stanaszak
State Bar No. 1022255

## ORDER

Based upon the foregoing stipulation;

**IT IS HEREBY ORDERED** that the claims of Janet Schueler, individually and as the

Special Administrator of the Estate of Orlin Schueler, against American Optical Corporation, are

hereby transferred to Sheboygan County.

Dated this 2 day of 10 , 2006.

BY THE COURT

Honorable Thomas J. Gritton
Circuit Court Judge

STATE OF WISCONSIN       CIRCUIT COURT       WINNEBAGO COUNTY
                           BRANCH 1

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DALE G. ALLEN, ET. AL.,

                   Plaintiffs,

-vs-                              **CASE NO. 05-CV-1237**

PFIZER, INC. ET. AL.,                          COPY

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


                        *     *     *     *

                        <u>**MOTION HEARING**</u>

                        <u>**DECEMBER 13, 2006**</u>

                        *     *     *     *




             Transcript of Proceedings in the above-captioned case
                   held in Circuit Court, Branch I, with the
                   **HONORABLE THOMAS J. GRITTON** presiding.



                        *     *     *     *




                           *LYNN M. EGAN*
                   *Court Reporter, RPR, CRR*
                           *Branch I*
                   *Winnebago County Courthouse*
                           *Oshkosh, WI*
                         *920-236-4806*

EXHIBIT

**3**

APPEARANCES:


On behalf of Plaintiffs:

ATTORNEY STEVEN PENN
PENN & RAKAUSKI
927 Main Street
Racine, WI  53403

On behalf of Defendant American Optical:

ATTORNEY JOHN LAFFEY
ATTORNEY STEVEN STANASZAK
WHYTE, HIRSCHBOECK, DUDEK
555 East Wells Street #1900
Milwaukee, WI  53202-3819


On behalf of Defendant WOS & Conney Safety Product:

ATTORNEY JIM NIQUET
CRIVELLO, CARLSON & MENTKOWSKI
710 N. Plankinton Avenue
Suite 500
Milwaukee, WI  53202-2404

On behalf of Defendant Mine Safety Appliances:

ATTORNEY JOSH JOHANNINGMEIER
LAFOLLETTE, GODFREY & KAHN
One East Main Street
P.  O. Box 2719
Madison, WI  53701-2719

On behalf of Defendant Idea Sales & Marketing:

ATTORNEY GREGORY LYONS
O'NEIL, CANNON, HOLLMAN, DEJONG, SC
Bank One Plaza, Suite 1400
111 East Wisconsin Avenue
Milwaukee, WI  53202-4870

On behalf of Defendant 3-M:

ATTORNEY JAMES REIHER
MAWICKE & GOISMAN
1509 North Prospect Avenue
Milwaukee, WI   53202-2323


On behalf of Defendant W. A. Vorpahl:

ATTORNEY TONY KORDUS
LIEBMANN, CONWAY, OLEJNICZAK & JERRY, SC.
231 South Adams Street
P. O. Box 23200
Green Bay, WI 54305-3200

1     **THE CLERK:** Dale G Allen, et. al. versus

2 Pfizer, Incorporated, et. al., Case No. 05CV1237.

3     **THE COURT:**   Let's start with appearances in

4 the front row.

5     **MR. PENN:**   Good afternoon.  On behalf of

6 plaintiffs, Steven Penn.

7     **MR. LAFFEY:**   On behalf of American Optical,

8 John Laffey and Steve Stanaszak.

9     **MR. NIQUET:**   Your Honor, for Conney and WOS,

10 Jim Niquet from Crivello, Carlson.

11     **MR. LYONS:**   Your Honor, on behalf of Ideal

12 Sales and Marketing, Greg Lyons of O'Neil, Cannon,

13 Hollman, DeJong.

14     **MR. KORDUS:**   Good afternoon.  Tony Kordus on

15 behalf of W. A. Vorpahl.

16     **MR. JOHANNINGMEIER:** Josh Johanningmeier from

17 Mine Safety Appliances.

18     **MR. REIHER:**   Jim Reiher for 3-M.

19     **THE COURT:**   As long as you are here, Mr.

20 Reiher, I have the order.

21     **MR. REIHER:**   That is what I am here for.

22     **THE COURT:**   I'll give you a copy.  If you can

23 give Mr. Penn a copy.

24     **THE COURT:**   Does that take care of you,

25 Mr. Reiher?

1          **MR. REIHER:**   Pretty much.   I am not going to

2     have anything to say.

3          **THE COURT:**   We are set for a motion regarding

4     the venue issue and the amendment of the order.   I want

5     to lay some ground rules.   First of all, I have read

6     everything so I don't want to hear regurgitation of

7     that.   If there is something new, I am willing to listen

8     to that.

9          I have also been up and down about whether or

10    not what the date was people had to reply, and from the

11    minutes I have from my judicial assistant on that date I

12    had given people until December 1 to reply, and quite

13    frankly I think it is a motion that I am going to listen

14    to it; and whether there was some misunderstanding about

15    when people had time to file, maybe that is my fault, we

16    should have been more specific about having an order

17    done, but I am going to listen to what people have to

18    say in that regard; but, like I said, I don't want

19    regurgitation of what I have already read.

20          And I am going to give you my initial

21    impression of a couple of areas so that if you want to

22    address it, that is fine.

23          When I read through as far as the issue

24    regarding 806.07 sub -- make sure I have the right

25    subsection here -- (1)(a), I think having reviewed the

1    statute and some of the cases, I think it is very clear

2    to me that it does not fall under that subsection.  And

3    the case that I am specifically looking at is the

4    *Women's Medical Service v. Scheidler*.  And I think it is

5    real clear several of the things in that case that

6    convince me of that are that basically, and I am looking

7    at page -- I hate Lois Law -- well, I don't know exactly

8    the page but there is reference in there about

9    carelessness or lack of due care, and I think what is

10   also interesting when I read through that case, and I

11   didn't see any argument about this from any of the

12   parties is that they actually go through a contract

13   analysis about whether or not there was mistake or

14   inadvertence and nobody actually looked at the contract

15   analysis that they actually go through in that case

16   which I think is interesting from the standpoint of this

17   case.  I have one side saying that wasn't what we

18   negotiated for; the other side is saying that is exactly

19   what we negotiated for; and it seems to me that reading

20   that case that that contract issue really, it really is

21   a contract analysis, and this case lays that out very

22   clearly about how to go about doing that from the

23   Court's perspective.

24            And the reason I don't think it falls under

25   (1)(a) or the contract analysis is -- well, let me talk

1    about (1)(a) first, the carelessness, and I don't think

2    it falls under the excusable neglect.  The inadvertence,

3    it talks about that in the case law.  This isn't a

4    situation for that.

5          And the Court of Appeals, the Court in this

6    case, confirmed that and they made that finding so let's

7    move on to the contract analysis, and as I said, I don't

8    think either party that I saw addressed that but it says

9    very clearly that -- in fact, I think it is interesting,

10    the language they use, the Court of Appeals says:  We

11    conclude further that the trial court erred in its

12    attempt to devine the parties' intent.  And they go on

13    to say that the judge in this case said:  Well, this is

14    a very clear order.  There is nothing ambiguous about it

15    and there is nothing ambiguous about the order that was

16    signed here either.

17          **MR. LAFFEY:**  Which, your Honor, which is why

18    from American Optical's point we did not argue that

19    contract analysis in that case because that is what we

20    were taking the position, it was clear so there was no

21    ambiguity.  We thought that only applied with ambiguity.

22          **THE COURT:**   I think this is an important

23    analysis from this standpoint.  The Court goes on to

24    say:  If the Court finds it is unambiguous, extraneous

25    information is irrelevant and you are not even to

1    consider that so I get there and with that understanding

2    I think a lot of the information I was provided at least

3    for purposes of that analysis I can't consider because I

4    think this is a very clear order.  It says -- there is

5    no other way that it can be interpreted at least in my

6    opinion other than exactly what it says.

7         So we move on -- to me the only issue left

8    here from the standpoint of whether I am going to amend

9    this order is the (1)(h) and whether or not it is fair

10   under the circumstances and whether or not that justice

11   prevails in this case, and I think that's really the

12   only argument quite frankly that I think is relevant

13   today.

14        And I guess I'd ask, and I can tell you I have

15   already made my mind up on the other two areas, I looked

16   at that, I read the law, and I don't see there is

17   anything that you are going to convince me otherwise so

18   I would ask that you keep your comments as to whether or

19   not I am going to sign this amended order to the

20   fairness, the overall justice, and whether or not

21   somebody gets their day in court and so that is kind of

22   where I am at with my thinking, and so with that in

23   mind, Mr. Penn, I'll allow you to go first because it is

24   your motion.

25             **MR. PENN:**  Thank you, your Honor.  I'll be

```
 1        brief and I won't regurgitate my materials.

 2               I think the Court's analysis, the Supreme

 3        Court analysis in both cases that I have cited, as well

 4        as counsel has cited, looked to the various factors, and

 5        I think the most important factor here is and I think

 6        the Court has said the most important factor is this

 7        fair versus final and what is more important, getting

 8        the right result or getting a final order, and I think

 9        the end result here is if this order is granted as is

10        and if there is no pending case subsequently against the

11        supplier-defendants, which I don't even know where that

12        leaves us even if this order was granted, that there

13        still has not been dismissal as to those parties, but if

14        there was and now you have American Optical and myself

15        sitting there only, I just don't think Mrs. Schueler has

16        had her day in court against the supplier-defendants and

17        I think the Court should look to that factor as being

18        most important.

19               In light of what you have said about (1)(a),

20        carelessness, neglect, and whatnot, that is certainly a

21        factor to be considered herein, too, excusable neglect

22        as they discuss, but the overriding factor is whether

23        other not it is fair to the parties, and in her

24        situation I just don't think it is fair.  We would be

25        dismissing parties.  It would be akin to a summary
```

1     judgment finding against other parties that may have

2     culpability here and I don't think a hearing without the

3     merits, without having a hearing on the merits as to

4     this order, is fair, and it does not give her day in

5     court and that is really all I have to say on that,

6     Judge.

7           **THE COURT:**   Mr. Laffey, are you or

8     Mr. Stanaszak going to make the argument?

9           **MR. LAFFEY:**   I will, Judge, thank you.

10          (1)(h), your Honor, is a catch-all but it is a

11    catch-all to be applied under extraordinary

12    circumstances and we have cited case law to that effect,

13    and the question you ask, you know, about fairness or

14    unfairness or Mrs. Schueler having her day in court,

15    well, I don't see that that is necessarily implicated at

16    all.

17         The distributor claims, to the extent there

18    are any in general and I am not specifically relative to

19    these distributors because plaintiff has still not come

20    across with a shred of factual evidence that there is

21    any reasonable basis to believe that these distributors

22    had any involvement with Kohler Foundry, Putting that

23    aside, in general a distributor claim is a claim that is

24    essentially derivative of the main product liability

25    claim, and as often is the case when you get down to

1       arguing about verdict forms in light of the *Fuchsgruber*

2       cases and questions of joint and several liability, you

3       get down to an analysis of, well, they are all in the

4       chain of the product, assuming you have the appropriate

5       distributor parties, and it is a matter of contribution

6       amongst the respected product defendants vis-a-vis that

7       particular product.

8               Mrs. Schueler's claim against American Optical

9       is as alive as it ever was.  It is simply in a different

10      forum.  We found out this morning as a matter of fact a

11      federal court case has been transferred to the

12      multi-district litigation in the Eastern District of

13      Pennsylvania.  Something about asbestos being in the

14      complaint and they have moved it out of the Eastern

15      District of Wisconsin.  Nonetheless, her claim against

16      American Optical survives so it is not an issue of

17      whether she is going to get her day in court at all.

18      She will get her day in court.  It is a question of

19      forum, and it does come back, Judge, whether or not

20      there has been a showing here of any extraordinary

21      circumstance under the catch-all of (1)(h)to get relief

22      from the stipulation and order that was entered into,

23      and we still have nothing here presented that shows that

24      there is any fact to connect these distributors to

25      Koeller which was the point of the request for admission

1      and it was --

2              THE COURT:  Let me ask this question:  When we

3      start talking about that, if I understood Mr. Penn's

4      information, basically he is saying that is premature.

5      Is that fair to say?

6              MR. PENN:  That's correct, Judge.

7              THE COURT:   How do you address that part of

8      it?

9              MR. LAFFEY:  Well, it is not premature in the

10     sense that a lawsuit was started by a number of

11     plaintiffs including Mrs. Schueler and Mrs. Schueler

12     making claims directly against my client and these

13     various distributors, and as I understand it in this

14     state, we cannot just file complaints without either

15     actual or at least a good faith basis in some kind of

16     facts to file the complaint.

17             THE COURT:   Let me stop you, and I one

18     hundred percent agree with you, but what I am saying is

19     my question is what does that have to do with whether or

20     not venue is going to be transferred?  And if I am going

21     to make a decision today saying, well, they have not

22     shown that these are legitimate parties here, isn't that

23     really a different form of a motion, a motion to dismiss

24     or summary judgment motion?

25             MR. LAFFEY:  That is what plaintiff would like

1   you to think and I don't believe that it is.

2         **THE COURT:**   Why?

3         **MR. LAFFEY:**   Because that is an issue for the

4   distributor defendants to formalize for another day.

5   The transfer issue --

6         **THE COURT:**   My understanding is if I don't

7   grant this, there will be no other day.  Is that fair to

8   say?

9         **MR. LAFFEY:**   It is not my dog in that fight.

10   I don't know.  Maybe that is true.  The record would

11   still be the same which is why we went to the request

12   for admissions route, Judge, to find out if there is any

13   framework on a factual basis to show that there really

14   was a reason for the distributors that were named in

15   this lawsuit to be connected to Kohler.  If there had

16   been something coming back which the record shows, I

17   made my analysis clear, if there was something coming

18   back in support of the denial of the admissions that I

19   sent out that leads to the conclusion, yeah, they have

20   some facts, here they are, to support the nondiverse

21   defendant staying in that Kohler case, then, yeah, that

22   should all be transferred but I am not going to federal

23   court.

24         The fact of the matter is, that in response to

25   requests for admissions there is nothing, zero.  Name

13

1    three employees which in a later motion filed by counsel

2    was represented, you know what, the employees don't know

3    anything either, maybe the employer does, so you look at

4    the totality of the record here and we have not one fact

5    in the record where there is a reason to have some facts

6    in the record which is the request for admission.  You

7    deny those at your peril.  I mean you better have some

8    basis for it.  They were properly asked what the basis

9    for the denials were and at the end of the day the

10    record is, hum, we don't real have any facts right now,

11    we are told we should have gone and taken discovery from

12    Kohler.  I didn't file the lawsuit, Judge.  I don't have

13    to take discovery from Kohler on that.  I took the most

14    efficient form of discovery that I could think have to

15    find out if there was an issue with those distributors.

16    Those distributors are in the Winnebago County

17    litigation stemming from Neenah Foundry.  I have a

18    pretty good idea where those names came from.  Probably

19    from the past litigation.  I don't know where Kohler

20    gets connected to them and that is why we did the

21    request for admissions so fair, not fair, does this

22    ruling amending the order transferring venue of Schueler

23    versus American Optical affectively result in a

24    dismissal of the distributors?  An argument could be

25    made that it does.

1          **THE COURT:**   I am sure it will at some point.

2          **MR. LAFFEY:**   And based on this record again it

3     is not my fight, and based on this record with not a

4     fact being shown they have any relationship to Kohler, I

5     think that would be a logical result, and if I were the

6     distributors, I would be filing that motion.

7          **THE COURT:**   Anything else?

8          **MR. LAFFEY:**   One of the factors under (1)(h)

9     as outlined in the *Sakula* case at 282 Wis. 2d Page 46.

10    The first thing that the Court says is whether the

11    judgment, or in this case the stipulation and order, was

12    the result of conscientious, deliberate, and well-

13    informed choice of claimant.  Clearly as you noted under

14    the (1)(a) analysis, the record and the stipulation is

15    clear as a bell, and everything leading up to this

16    stipulation and the entry of the order also is clear as

17    a bell.  It was never mistaken as to what was going to

18    happen if the nondiverse parties were not part of this

19    litigation.  We were going to federal court which we

20    did.  And I have nothing else to add.

21         **THE COURT:**   Any of the other parties want to

22    add something?

23         **MR. NIQUET:**   No, your Honor.  For Conney we'll

24    stand on the brief.

25         **MR. LYONS:**   Your Honor, Ideal Sales joins in

1    was filed urgently, it was heard, and my position has

2    been consistent throughout that even if we took these

3    three depositions, we still don't have a complete answer

4    to this.  If you transfer, and I even said in my motion

5    for protective order, if we transfer this to Sheboygan

6    County where venue is more proper but less -- probably

7    less judicially economical, I don't have a problem with

8    that.  Yeah, I certainly mistakenly read the order.  You

9    are right, it is clear on its face but the intent and my

10   understanding was always that the case all goes or none

11   of it goes.

12           And I think the only other thing I would say

13   is when you work up the chain, as Mr. Laffey said, will

14   she have her day in court?  I can represent to the Court

15   a few years ago when we were in front of Schmidt AO was

16   economically talking about going bankrupt.  They didn't

17   and I don't know what their economics are but if that

18   were to happen and there are viable people that do have

19   culpability here, in that situation she does lose her

20   day in court and she has a right to proceed against all

21   of those folks.

22           THE COURT:   Well, this is my ruling.  It kind

23   of falls under my analysis before.  The order reads very

24   plainly and because I have indicated that I am not going

25   to be looking at all of this other information at least

17

1    for the contract purposes, I think I have the right to

2    look at that information for purposes of the overall

3    justice here is the way I am going to put it.  And I

4    can't read people's minds so when I look at the

5    documentation and the information that I have been

6    provided everything leads me to the fact that everybody

7    knew exactly what was going to happen here.  The letter

8    of the 21st, I believe that was from Mr. Laffey to the

9    Court and everybody was copied in on that.  It is clear

10   in that letter and it is clear on the stipulation about

11   what was the intention here and that's the information I

12   have before me.  I have an affidavit that says I was

13   mistaken but I don't think that that is enough for me

14   just to override the stipulation.  The parties entered

15   into something, and as the case law indicates, that is

16   the order of the Court unless there is some legitimate

17   reason to get rid of it.

18            And the unfortunate reality here may be down

19   the road that these parties ended up being dismissed

20   from the Schueler matter because of it, but everything

21   that I see here I don't see that extraordinary

22   circumstance that bashes me upside the head and it says

23   I have to amend this order so I am going to deny that

24   request.

25            **MR. PENN:**  Judge, in terms of workability just

1    so I understand, because somebody brought this up about

2    the supplier-defendants, we did not answer Schueler's

3    discovery under the CMO because my belief was it has

4    been transferred to Sheboygan County.  If the case is

5    not dismissed as against the supplier-defendants, is the

6    case still in front of you or is it transferred to

7    Sheboygan County?

8              THE COURT:   As far as I am concerned, they

9    are still part of this action in this county.

10              MR. PENN:  Okay.

11              THE COURT:   And I heard I believe other

12   people agree with that.  So whether or not they bring

13   something in the future here, that is up to them

14   obviously.  But as of right now I have considered them

15   still to be part of this action because I have not

16   signed anything or not made any ruling saying they are

17   out other than 3-M and MSA I believe.

18              I guess the question comes, and I don't

19   know -- well, where are we at right now?  Do we need to

20   schedule something else?  We have another date

21   scheduled.

22              MR. LAFFEY:  The end of January, your Honor,

23   as a follow-up status pursuant to the case management

24   order that you entered.

25              THE COURT:   Is that there to get our

1    groupings?

2         MR. LAFFEY:   I guess in an ideal world but I

3    think at a minimum it certainly is a check-in day to

4    find out what progress we have made in substantive

5    discovery and will we be in a position to consider trial

6    groupings and what have you.

7         THE COURT:   And my next question is are we

8    doing that by phone or are we going to do that here in

9    person?  I think I said in person, did I not?

10        MR. LAFFEY:   You wanted it in person, yes.

11        THE COURT:   Okay.

12        MR. LAFFEY:   You mentioned that when we were

13   in chambers last time next time we get together to talk

14   about status you wanted people in the courtroom or in

15   your chambers or wherever but in person.

16        THE COURT:   And I'll say this for purely

17   selfish reasons, it benefits me to be able to watch the

18   progress of the case and to be able to see somebody face

19   to face.

20        MR. LAFFEY:   For American Optical, we agree

21   with that.  No problem with that at all.

22        THE COURT:   So I think that is it for the

23   day?

24        MR. LAFFEY:   It is.

25        THE COURT:   Mr. Laffey, I would ask that you

1   provide an order reflecting my decision here today and I

2   ask that you include -- well, I suppose it is based upon

3   the record.  But each party will be given five days to

4   object to the form of the order once I have received it.

5   And I use business days.

6          So with the holidays coming up I don't know if

7   we'll make it there.

8          **MR. LAFFEY:**  We'll get it in sooner than that.

9          **MR. PENN:**  And, Judge, I apologize, just so I

10  am clear, that order will reflect the case remains

11  pending before you as to everybody but American Optical.

12  All the other supplier-defendants, correct?

13          **MR. LAFFEY:**  I thought I would just draft an

14  order that says that the motion for amendment of the

15  transfer order was briefed and heard and denied.  Simple

16  order.  That is what was before the Court.

17          **THE COURT:**  Yes, and I think that is true but

18  I don't think we need an order for the other part.

19          **MR. PENN:**  We have a record.  That is fine.

20          **THE COURT:**  Yes, it is on the record.

21          Let me ask is there anybody that disagrees

22  that you are still in this if you are one of the

23  parties?  Who is it, WOS, Vorpahl, Ideal?

24          **MR. LYONS:**  What is the Court asking exactly?

25  Is it before the Court?  This is Greg Lyons.  What is

1    here is before the Court subject to the issues that have

2    been raised in terms of claim preclusion, correct.

3              **THE COURT:**   Yes.

4              **MR. LAFFEY:**   Yes.

5              **THE COURT:**   Everybody is shaking their head.

6    Everybody agrees with me.

7              **MR. LAFFEY:**   Just so there is no question, I

8    am going to draft an order that goes to directly the

9    point of the motion in denying the motion.  That is what

10   I am going to do.

11             **THE COURT:**   Based upon the record it is

12   denied.  Something very simple.

13

14              *(THE PROCEEDINGS THEN CAME TO A CLOSE.)*

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N    P A G E

STATE OF WISCONSIN   )

                     )   SS:

COUNTY OF WINNEBAGO  )


          I, LYNN M. EGAN, hereby certify that I am the
Official Court Reporter for the Circuit Court, Branch 1, of
Winnebago County, Oshkosh, Wisconsin.  I made full and correct
stenographic notes of the foregoing proceedings; that the same
was later reduced to written form by Computer-Aided
Transcription; and that the foregoing is a true and correct
transcript of my original stenographic notes so taken.

          Dated at Oshkosh, Wisconsin, this 1st day of
May, 2006.



                    _____
                    Lynn M. Egan
                    Official Court Reporter
                    Circuit Court Branch 1
                    Winnebago County Courthouse
                    Oshkosh, Wisconsin.



          The foregoing certification of this transcript
does not apply to any reproduction of the same by any means
unless under the direct control and/or direction of the
certifying reporter.

## BEFORE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| In Re Asbestos Products Liability Litigation | MDL Docket No. 875 CTO-271 |
|---|---|

JANET SCHUELER, et al.,      )
)
          Plaintiff,   )
v.                )      Case No. 2:06-1076
)
AMERICAN OPTICAL CORP.    )
)
          Defendant.   )

## FIRST AMENDED COMPLAINT AT LAW

NOW COMES the Plaintiff, JANET SCHUELER, individually and as the Administrator of the Estate of Orlin Schueler, deceased by her attorneys, PENN RAKAUSKI, and allege and show the court as follows:

### INTRODUCTORY PARAGRAPHS

1.    Plaintiff is an adult whose resides in Sheboygan County, Wisconsin.

2.    Plaintiff Janet Schueler's decedent Orlin Schueler is a former foundry worker who suffered from the occupational lung diseases silicosis and progressive massive fibrosis, and died as a result of those injuries.

Plaintiff's decedent was exposed to silica-containing products, and used one or more dust respirator manufactured by defendant American Optical Corp.



EXHIBIT
**4**

3. The defendant, American Optical Corporation is a foreign corporation authorized to do, having done or still doing business in the State of Wisconsin in various counties, including Sheboygan County, which represented substantial and not isolated activities in this state, and that manufactured respirators used by plaintiff's decedent.

4. Plaintiff Janet Schueler was the wife of decedent Orlin Schueler, and is suing as special administrator of her decedent's estate for injury to the person of her decedent, and for herself for her loss of consortium and support during her decedent's life time due to his injury, and for her decedent's wrongful death under § 895.03, Wisconsin Statutes, for pecuniary loss, loss of society and companionship, and medical, funeral, burial, and cemetery expenses resulting from the death of her decedent.

5. Plaintiff's decedent Orlin Schueler was exposed to silica sand and silica-containing products and used one or more of the dust respirators and masks manufactured by defendant American Optical Corp.

6. Defendant, American Optical Corporation, manufactured, distributed, and/or sold respirators and dust masks to plaintiff's decedent's employer who provided them to plaintiff's decedent who wore same during his work at the foundry. The devices were sold and used in the State of Wisconsin, County of Sheboygan.

7. Plaintiff's decedent was exposed to dust from silica sand and from silica-containing products on those occasions when he wore the respirators of the defendant. The silica containing products, respirators and dust masks were subjected to normal use, and remained, in all material respects, in the same condition as at the time of manufacturer, distribution, or sale by the defendant.

2

8.  Plaintiff's decedent developed the severe and fatal lung diseases silicosis and progressive massive fibrosis, from breathing silica dust and silica containing-products while wearing the defendant's respirators and dust masks.

9.  Defendant, American Optical Corp., along with other respiratory protection manufacturers engaged in concerted action pursuant to a common scheme or plan to protect their industry by hiding the limitations and defects of their respiratory protective devices from the purchasers and users, by means of a tacit or explicit agreement, and/or by encouraging each other by their conduct, not to reveal the defects they had discovered in their products and in their competitors' products to the government and the public at large, and by means of misrepresentations about the safety of their products, each thereby aiding the others and giving them substantial assistance or encouragement in their conduct, and knowing that such conduct constituted a breach of duty by each of the others. These concerted actions jointly caused or contributed to plaintiff's decedent's diseases, injuries, and death, for all of which the defendant is liable.

10. The acts or omissions of the defendant caused a single, indivisible injury to plaintiff's decedent, including the death of Orlin Schueler from inhaling dangerous levels of silica dust particles, for which the defendant is liable.

11. Plaintiff was not aware more than three years before the filing of her complaint, and was not possessed of information from which she ought to have been aware, of both the nature of their injury and its causal connection to the negligence and/or defective products of defendant, nor was plaintiff's decedent so aware before his death.

## FIRST CLAIM FOR RELIEF IN TORT – STRICT LIABILITY

12.   Plaintiff realleges the allegations of paragraph 1 through 11 of this complaint.

13.   The respirators and dust masks manufactured by the defendant were, at the time when shipped by it, defective in design and manufacture, and unreasonably dangerous, in that in normal use they failed to adequately protect plaintiff's decedent from inhaling dangerous quantities of respirable-size silica particles, resulting in plaintiff's' decedents' development of silicosis, progressive massive fibrosis, and death.

14.   The defendant is strictly liable in tort because of the defective design and unreasonable hazard from normal use of its products, and because of its failure to properly warn or inform purchasers and users that the "approved" dust respirators typically used in foundries for protection from silica dust, and used by plaintiff's decedent, could not be safely used with silica sand and silica-containing products during foundry operations, and that they could not be safely used for respiratory protection above certain concentration levels of dust from silica-containing products.

15.   As the result of the above-described injuries and death proximately caused by the defendant, the plaintiff's decedent suffered in the past, substantial physical and mental pain and discomfort as a result of his silicosis and progressive massive fibrosis, and the loss of enjoyment of life; and loss of the love, society and companionship, and support of plaintiff's decedent, both before and after his death.

16.   Also as the result of the above-described injuries proximately caused by the defendant, the plaintiff suffers presently, suffered in the past, and will continue to suffer, economic loss. She has incurred medical expenses for the treatment, diagnosis and prior monitoring of

silicosis and the complications of silicosis, and funeral, burial and cemetery expenses of her

decedent.  Plaintiff's decedent lost wages as a result of his illness and death.

## SECOND CLAIM FOR RELIEF IN TORT - NEGLIGENCE

17.   Plaintiff realleges the allegations of paragraph 1 through 16 of this complaint.

18.   Defendant performed or was aware of research that led it to the knowledge that its products

would not sufficiently prevent the users' inhalation of respirable-size, silica containing dust

particles that cause fatal lung disease.

19.   As a result of the research described above, the defendant knew full well at all times

relevant to this action that no "one-size" respirator model fits every face safely, and that,

without an adequate fit, its products would not prevent the inhalation of dangerous amounts

of silica disease causing respirable particles.

20.   Defendant also knew that its negative pressure dust respirators or masks should not be used

for protection above certain dust concentration levels.

21.   Defendant was aware that harmful respirable silica occurs in industry in extremely small

sizes that would readily penetrate its dust filter materials.  Defendant was aware that certain

conditions in the atmosphere, such as moisture, chemical vapors and oil mists, significantly

and adversely affected the effectiveness of its dust filter materials and that the degradation

of the filter materials was at its worst in foundries. Defendant was aware that, as a result,

the filter material used in its respirators would allow significant penetration and leakage of

respirable-size particles of harmful substances, such as silica, under typical circumstances

and conditions found in the workplace, including foundries.

22.   Defendant knew that, despite the above deficiencies, its products could meet governmental

approval standards, and yet still fail to provide adequate respiratory protection to prevent

the diseases they were marketed as preventing. Defendant and other respiratory protection manufactures, collectively and in concert with each other, concealed and failed to disclose to the government, the public at large, and the purchasers and users of their products the research they were aware of which disproved their marketing claims, and engaged, instead, in a marketing campaign based on misrepresentations, and which included using the governmental approval as a cover for selling masks which they knew were defective and ineffective.

23. Defendant is liable for its negligence in manufacturing respiratory protective equipment which it knew or should have known had defects and dangerous limitations for safe use as stated above, and for its negligence in failing to warn purchasers and users that its products could not be safely used with silica sand and silica-containing products during foundry operations, and in failing to provide proper instructions, information, or warnings that its products could not provide adequate respiratory protection above certain concentration levels of dust from silica-containing products.

24. The acts and omissions of the defendant were in direct violation of its duty to use reasonable care for the safety of users of their products, including plaintiff's decedent.

25. Defendant had no reason to believe that the employer of plaintiff's decedent would know of the inability of the dust respirators and masks to protect its employees from the hazards arising from the ordinary and intended use of the safety equipment products it supplied, or would take alternative and effective means necessary to so protect them.

26. Defendant is liable for its negligence in selling dangerous and defective safety equipment products when it knew or should have known of their dangers or defects to foundry

workers using such typical dust respirators and masks, and for its negligence in failing to properly warn that these products could not be safely used.

27. Defendant's acts and omissions were in violation of its duty to use reasonable care for the safety of users of the safety equipment products it sold by their ordinary use, including plaintiff's decedent.

## THIRD CLAIM FOR RELIEF IN TORT - MISREPRESENTATION

28. Plaintiff realleges the allegations of paragraph 1 through 27 of this complaint.

29. Despite its knowledge of the limitations and deficiencies of its products, the defendant made express warranties, and material representations in sales literature, advertisements and through sales promotional communications, which it knew were false, i.e., that its products were safe and effective in providing respiratory protection from dust and dust diseases.

30. Defendant wrongfully, collectively and in concert with other respiratory protection manufacturers, pursuant to a common scheme or plan, unjustifiably marketed and advertised their respirator products to be effective against respirable-size, fibrosis producing dusts, such as silica in foundries, and sold their respirators under the false representation that the use of these products would protect workers and their lungs, and prevent workers from breathing air contaminated with harmful, disease-producing substances, such as silica dust, and so would effectively prevent occupational lung disease. Specific representations made by the defendant which it knew were false include:

   a) "Respirator fits any face safely, comfortably, without adjustment."

   b) "Combining safety with comfort, the soft, pliable rubber face mask fits any face,

can be worn for long periods of time without fatigue or discomfort."

31.  By reason of the foregoing, defendant intentionally and/or negligently misrepresented the safety and efficacy of its respiratory protection equipment with the intention of inducing the general public at large, including the plaintiff's decedent's employer and the plaintiff's decedent, to purchase and/or use its products, in reliance on its misrepresentations, and in order to obtain the promised respiratory protection.

32.  Defendants had a duty to the employer, and user of its products to communicate accurate information about the safety of those products, which it breached by virtue of its concealment of information and by its misrepresentations.

33.  As a result of the concerted action by defendant and other respirator manufacturers, all were able to successfully establish a market for their defective products and sell them to the public at large at great profit to themselves, by causing purchasers and users of their deficient products to be ignorant of the defects of their products, and to be subjected to a false sense of security and confidence in the safety of the devices, based upon the representations of their safety and their assurances that the masks met governmental approval standards.

34.  As a result of the maintenance of this market for its defective masks, the defendant sold and distributed masks to plaintiff's decedent's employer, who, in reliance upon the representations of the safety of the products, purchased them for use by plaintiff's decedent, who in turn used them in the belief that they would provide adequate respiratory protection, in reliance on his employer in supplying such devices, and/or in reliance on the defendant's representations.

35.   Because of their defects, the defendant's masks insidiously harmed their users who relied on the safety of the products and on the representations of the defendant pertaining thereto, by causing them to inhale harmful substances, which the defendant knew all the while would cause debilitating lung disease, and potentially death, as actually happened to plaintiff's decedent.

### FOURTH CLAIM FOR RELIEF IN TORT – PUNITIVE DAMAGES

36.   Plaintiff realleges the allegations of paragraph 1 through 35 of this complaint.

37.   Defendant knew that users of its products could and did contract debilitating and potentially fatal diseases because of the products' leakage of significant amounts of silicosis producing dust.

38.   Defendant was aware of means available to it to cure the defects in the respiratory protection devices it manufactured, which would prevent users from contracting the debilitating and potentially fatal disease which they were contracting.

39.   Defendants acted maliciously and/or with intentional disregard for the rights and safety of the plaintiff's decedent and others, and engaged in outrageous conduct, by concealing from the government, the general public, and the end-users of its products, evidence known and available to it about the defects and deficiencies of its products, and by knowingly producing, manufacturing and distributing products, without warning, which it knew were certain to cause grave personal injury and death, and by representing that the devices were safe and effective, despite its contrary knowledge.

40.   The suppression of information and misrepresentations by the defendant were motivated by its desire to obtain an unjust economic advantage, including maximizing sales and profits

from the sale of their products, at the expense of the health and lives of plaintiff's decedent, and untold numbers of others.

41.   Plaintiff is entitled to a judgment of punitive damages against defendant.


**WHEREFORE**, plaintiff demands: 1) judgment against defendant, for compensatory damages in an amount to be determined by a jury to be sufficient to compensate her for her actual damages, together with the costs and disbursements of this action; and, 2) judgment for punitive damages against defendant in an amount that is just and determined by a jury to be sufficient to punish it for its actions and to deter it and others from similar conduct.

Dated this 9th day of January, 2007.

PENN RAKAUSKI
Attorneys for Plaintiff Janet Schueler

By:   _____
      Steven R. Penn

Penn Rakauski
927 Main Street
Racine, WI  53403-1524
Ph: 262 636 0036
Fax: 262 636 0030