**MDL 875**

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

---

In re Asbestos Products Liability     :     **MDL Docket No. 875**
Litigation (No. VI)                   :
---                                   :

**DEFENDANT NORTHROP GRUMMAN CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-271)**

Defendant Northrop Grumman Corporation (hereinafter "NGC"), by and through its

attorneys, and as fully explained in its supporting brief, hereby responds to the averments set

forth in the motion filed by Plaintiffs in *Lillian Harwood, et al. v. Bondex International Inc., et

al*, No. 1-06-CV-673 (D. DE), to vacate CTO-271 as follows:

   1.     Admitted.

   2.     Admitted.

   3.     Admitted.

   4.     Upon information and belief, admitted.

   5.     Denied.  NGC properly removed this case to Federal Court, in both a timely

fashion and with substantial support for federal question jurisdiction.

   6.     Denied.

   7.     Denied.

Wherefore, Defendant Northrop Grumman Corporation respectfully requests that this

Panel deny Plaintiffs' Motion to Vacate CTO-271.

**OFFICIAL FILE COPY**

IMAGED FEB 6 2007

1

ELZUFON AUSTIN REARDON TARLOV &
MONDELL, P.A.

Mark L. Reardon (DE #2627)
Penelope B. O'Connell (#4898)
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, Delaware 19899
(302) 428-3181

Nancy Shane Rappaport (DE #3428)
DLA Piper US LLP
1650 Market Street, Suite 4900
Philadelphia, PA 19103
(215) 656-3357

Attorneys for Defendant
Northrop Grumman Corporation

Dated: February 2, 2005

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FEB - 5 2007

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

In re Asbestos Products Liability       :       **MDL Docket No. 875**
Litigation (No. VI)       :
                                                :

### DEFENDANT NORTHROP GRUMMAN CORPORATION'S BRIEF IN SUPPORT OF ITS OPPOSITION TO PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-271)

On December 11, 2006, this Panel entered CTO-271, which identified asbestos claims in 100 additional "tag-along actions" to be conditionally transferred to MDL-875 pursuant to 28 U.S.C. § 1407. *See* Order of December 11, 2006 (Ex. A). Plaintiffs in *Lillian Harwood, et al. v. Bondex International Inc., et al*, No. 1-06-CV-673 (D. DE) filed a motion to vacate CTO-271.

Defendant Northrop Grumman Corporation (hereinafter "NGC"), by and through its attorneys, pursuant to 7.4(f) and 7.2 (c) of the Rules of Procedure of the JPML, submit this brief in opposition to the motion to vacate. This Panel has already determined that centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products is necessary for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. *In re Asbestos Prod. Liab. Litig. (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991) (Ex. B). These considerations apply with equal force to the claims at issue here, which share one or more common issues with the cases currently pending in MDL-875. Plaintiffs fail to provide any valid reasons why their asbestos exposure claim should not be transferred to the MDL, as explained below. Thus, this Panel should deny the motion to vacate CTO-271.

## STATEMENT OF THE CASE

As set forth in plaintiffs' Memorandum, Plaintiffs filed their Complaint in this matter 17 months after Lillian Harwood was diagnosed with mesothelioma.  In their Complaint, Plaintiffs did nothing more than allege their various types of employment over a span of many decades and then allege that they were exposed to asbestos-containing products over all those years both during employment and through non-occupational exposure.  In October, 2006, 19 months after Mrs. Harwood was diagnosed with mesothelioma, the Harwoods traveled to Delaware for their depositions.  Not until Plaintiff James Harwood testified about his allegations regarding specific Northrop Grumman products were the facts supporting federal question jurisdiction revealed.  Northrop Grumman removed this matter to federal court under § 1442 within 30 days of the first notice it received that acts it had taken under color of a federal officer were at issue.  *See* Notice of Removal (Ex. C); 28 U.S.C. § 1442.

After Northrop Grumman properly filing its notice of removal, plaintiffs filed a motion to remand.  The remand issue has been fully briefed by the Harwoods and Northrop Grumman.  *See* Northrop Grumman's Opposition to Plaintiffs' Motion for Remand (Ex. D).  The case was assigned to Judge Kent Jordan of the United States District Court for the District of Delaware.  In or about December, 2006, Judge Jordan was elevated to the Third Circuit Court of Appeals.  Although the parties have received notification that a magistrate judge has been assigned the case, the Court has not reassigned another judge for determination of the removal issue.

## ARGUMENT

### A.    Pendency of a Jurisdictional Objection is Not a Sufficient Reason To Deny Transfer Of Asbestos Exposure Claims To MDL-875

This Panel should reject Plaintiffs' argument that transfer of this case to MDL-875 is inappropriate due to a pending motion to remand.  It is beyond dispute that this Panel has the

authority to transfer cases in which motions to remand are pending. *See, e.g., In re Asbestos Prod. Liab. Litig. (No. VI), 170 F. Supp. 2d 1348, 1349 (J.P.J.L Oct. 18, 2001)* (finding there is no need to delay transfer in order permit resolution of pending motions to remand) (Ex. E)*; In re Asbestos Prod. Liab. Litg. (No. VI), 1999 U.S. Dist. LEXIS 12131, at \*2 (J.P.J.L. August 2, 1999)* (declining to delay transfer to MDL pending resolution on various dispositive motions)(Ex. F)*; In re Asbestos Prod. Liab. Litig. (No. VI),* 1996 WL 143826, at \*1 (J.P.J.L. Feb. 16, 1996) (declining to delay transfer to MDL pending resolution of motions to remand) (Ex. G); *In re Asbestos Prod. Liab. Litig. (No. VI),* 771 F. Supp. 415 (J.P.M.L. 1991) (considered and rejected the pendency of motions or other matters before the transferor court as grounds for carving out exceptions to transfer) (Ex. B).

Once transferred, such motions can be resolved by the MDL court. *See, e.g., In re Bextra & Celebrez Mktg., Sales Prac. & Prods. Liab. Litig.,* No. 1699, slip op. at 2 (J.P.M.L. Apr. 13, 2006) ("Pending motions to remand these actions to state court can…be presented to and decided by" the MDL court) (Ex. H); *In re Bextra & Celebrez Mktg., Sales Prac. & Prods. Liab. Litig.,* No. 1699, slip op. at 2 (J.P.M.L. Feb. 15, 2006) ("The pendency of a motion to remand to state court is not a sufficient basis to avoid inclusion in Section 1407 proceedings.") (Ex. I); *In re Rezulin Prods. Liab. Litig.,* 133 F. Supp. 2d 272, 288-92 (S.D.N.Y. 2001) (resolving motions to remand within MDL proceeding); *Falgoust v. Microsoft Corp.* 2000 WL 462919, at \*2 (E.D. La. Apr. 19, 2000) ("the JPML does have jurisdiction to transfer a case even where a jurisdictional objection is pending") (Ex. J); *In re Amino Acid Lysine Antitrust Litig.,* 910 F. Supp. 696, 700 (J.P.M.L. 1995) (pending motion to remand "can be presented to and decided by transferee judge"); *In re Air Crash Disaster at Florida Everglades on Dec. 29, 1972,* 368 F. Supp. 812, 813

(J.P.M.L. 1973) ("the transferee judge certainly has the power to determine the question of remand").

Indeed, courts have recognized that motions to remand *should* be decided by the MDL court in order to avoid inconsistent results in similarly situated cases. In *Ivy v. Diamond Shamrock Chem. Co.*, 901 F.2d 7 (2d Cir. 1990) – a case addressing the propriety of MDL transfer while motions to remand were pending in various district courts – the Second Circuit acknowledged that "the jurisdictional issue in question is easily capable of arising in hundreds or even thousands of cases in district courts throughout the nation. . . . Once transferred, the jurisdictional objections can be heard and resolved by a single court . . . . *Consistency as well as economy is thus served.*" *Id.* at 9 (emphasis added). This approach is consistent with that of the *Manual for Complex Litigation*, which notes that "the Pendency of motions raising questions common to related actions can itself be an additional justification for transfer." Manual for Complex Litigation, Fourth, § 20.131 at 221.

Plaintiffs have not identified *any* reason why the Eastern District of Pennsylvania is not capable of deciding the jurisdictional issues presented in the pending motion to remand. To the contrary, the MDL judge is certain to be very knowledgeable on issues relating to asbestos exposure and the range of jurisdictional issues raised by Plaintiffs. A judge with such experience and knowledge is actually in a better position to decide the often difficult legal and factual issues that are presented by motions to remand than numerous courts across the country. Recurrent jurisdictional issues involving the applicability of the federal officer removal statute and government contractor defense have arisen in these cases as well as in numerous other cases in the MDL, and the MDL Court is well-positioned to address these matters in an efficient and consistent manner for the benefit of all parties and the judiciary.

In addition, to the extent any remand decision requires interpretation and application of state law, the MDL court is well-suited to decide such issues. *See, e.g., In re Rezulin Prods. Liab. Litig.,* 133 F. Supp. 2d at 288-94 (MDL court in Rezulin litigation resolving motions to remand to state court under Alabama, Mississippi, Louisiana, Texas and West Virginia law).

Furthermore, coordinated resolution of all motions to remand will serve another important purpose of 28 U.S.C. § 1407 – conservation of resources of the parties, their counsel, and the judiciary. Absent coordinated treatment, substantially similar arguments for remand will be heard and decided in multiple district courts. The benefits of avoiding such a substantial waste of time and expense outweighs any possible minor inconvenience to Plaintiffs. Moreover, this Panel already has determined that "centralization of all federal court actions as one multidistrict docket (MDL-875) in the Eastern District of Pennsylvania will serve the convenience of the parties and witnesses and promote the just and efficient conduct of such actions." *In re Asbestos Prod. Liab. Litig. (No VI),* 771 F. Supp. 415 (J.P.M.L. 1991) (Ex. B).

Consequently, this Panel should reject Plaintiffs' arguments that their asbestos exposure claims should not be transferred to MDL-875 due to the pending motion to remand. Rather, transfer of these claims will effectuate the purposes of 28 U.S.C. § 1407 by ensuring consistency and conserving resources with respect to the motions to remand, as well as all other pretrial matters.

**B.**     **Northrop Grumman Properly Removed This Case to Federal Court, In Both a Timely Fashion and With Substantial Support for Federal Question Jurisdiction.**

Contrary to plaintiffs' unsupported arguments set forth in their Motion and Memorandum in Support of Motion to Vacate Conditional Transfer Order, Northrop Grumman filed its Notice of Removal in this case in a timely fashion and set forth all necessary support within the Notice

in accordance with federal notice pleading. *See Miller v. Principal Life Ins. Co.*, 189 F. Supp. 2d 254, 257, n.2 (E.D. Pa. 2002). Indeed, Northrop Grumman's basis for removal is not only set forth in the Notice of Removal (Ex. C), but also in Northrop Grumman's Opposition to Plaintiffs' Motion for Remand (Ex. D, excluding exhibits)[1].

A federal officer's right to remove under 28 U.S.C. § 1442 is "independent" and "absolute." *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996); *Willingham v. Morgan*, 395 U.S. 402, 406 (1969). This right cannot be overcome by plaintiffs' failure in the initial complaint to include facts giving rise to the right to remove. In the instant matter, Northrop Grumman, in conjunction with the United States Navy, has manufactured and produced numerous Naval vessels, including the USS John F. Kennedy, USS Newport News, various submarines, including nuclear submarines, and landing helicopter assault ships ("LGA") and landing helicopter dock ships ("LHD") on which Mr. Harwood worked, and Northrop Grumman has thus "'engaged in activities that amount to the implementation of a federal policy under the direction of a government officer' such that state court suits against [Northrop Grumman] could disrupt the execution of federal law." Under the facts of this case, there is no question that Northrop Grumman is thus entitled to defend itself in a federal forum under Section 1442. *See Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992) (internal citation omitted).

Section 1442 applies equally where a plaintiff has sued a corporation for actions taken at the direction of a federal officer. It is no surprise that the federal government requires the

---

[1]   Northrop Grumman's Opposition to Plaintiffs' Motion for Remand was supported by hundreds of pages of documents, creating quite a voluminous record. The issues on remand are not currently at issue before the MDL Panel on the issue of transfer. Rather than burden the Panel with this voluminous record, Northrop Grumman attaches the brief, alone, to point out to the Panel that plaintiffs' assertions that this case was "improvidently and improperly removed to federal court" are baseless. Nonetheless, Northrop Grumman will provide these exhibits upon the request of the MDL Panel.

assistance and cooperation of private parties in enforcing its laws and implementing its policies. As such, Northrop Grumman, as a private entity, is entitled to seek removal under § 1442, as are federal officers.  *See In re "Agent Orange," Product Liability Litigation, Isaacson v. Dow Chemical Company*, 304 F. Supp. 2d 442, 447 (2004).  Exercising this right, Northrop Grumman removed this matter to this Court under § 1442 within 30 days of the first notice it received that acts it had taken under color of a federal officer were at issue.  *See* 28 U.S.C. § 1442. Specifically, this case was removed after Northrop Grumman received "a copy of an . . . other paper [deposition transcript] from which it may first be ascertained that the case is one which is or has become removable," under 28 U.S.C. § 1446(b).

### C. <u>The Presence of Individualized Fact Issues is Not a Sufficient Reason to Deny Transfer of this claim to MDL-875.</u>

Plaintiffs in Harwood erroneously argue that transfer of their claim to MDL-875 is inappropriate because of the existence of individualized fact issues.  This Court already has rejected this argument.  *E.g., In re Asbestos Prod. Liab. Litig. (No VI),* 771 F. Supp. 415 (J.P.M.L. 1991) (This Panel rejected distinctions based on the uniqueness of a party's status, the type of defendant, the stage of pretrial proceedings, the presence of unique claims or additional claims not relating to asbestos injury or death as grounds for carving out exceptions to transfer) (Ex. B).  Therefore, Plaintiffs' argument should be rejected out-of-hand.

Further, there is no requirement that cases transferred to the MDL involve identical issues and claims or that common issue predominate.  To the contrary, every case pending in MDL-875 includes individualized issues relating to liability, causation, and damages.  Nevertheless, so long as the cases share at least one common question, coordination in MDL-875 will serve the purpose and function of MDL proceedings.  *See* 28 U.S.C. § 1407 (a) (MDL coordination may be ordered when civil actions share "one or more common questions of fact").  Clearly, this

case—in which Plaintiffs allege that exposure to asbestos caused Lillian Harwood to contract mesothelioma—involves at least one common issue with the other product liability cases pending in MDL-875. *See In re Asbestos Prod. Liab. Litig. (No VI),* 771 F. Supp. 415 (J.P.M.L. 1991) (Ex. B); *Harwood Complaint* (seeking damages for personal injuries related to exposure to asbestos) (Ex. K). Accordingly, transfer of this case to MDL-875 is warranted.

> **D.  Lillian Harwood's Diagnosis Provides No Support to Vacate the MDL's Transfer Order.**

It goes without saying that a substantial portion of the plaintiffs in asbestos litigation suffer from terminal illness. Consequently, it would make no sense to exclude each of these plaintiffs from the MDL, as this would surely defeat the purpose behind the MDL. Plaintiffs concede the futility of this argument in their failure to even address it in their Memorandum.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Panel deny Plaintiffs' Motion to Vacate CTO-271.

ELZUFON AUSTIN REARDON TARLOV & MONDELL, P.A.

Mark L. Reardon (DE #2627)
Penelope B. O'Connell (DE#4898)
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, Delaware 19899
(302) 428-3181

Nancy Shane Rappaport (DE #3428)
DLA Piper US LLP
1650 Market Street, Suite 4900
Philadelphia, PA 19103
(215) 656-3357

Dated: February 2, 2007

Attorneys for Defendant
Northrop Grumman Corporation

8

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FEB - 5 2007

FILED
CLERK'S OFFICE

CERTIFICATE OF SERVICE

I, Penelope B. O'Connell, hereby certify that on this 2nd day of February, 2007, the attached

Defendant's Opposition to Plaintiff's Motion to Vacate the Conditional Transfer Order was

served upon all counsel pursuant to the attached Panel Service List (CTO 271) Docket No. 875,

via U.S. Mail, first class, postage pre-paid.

ELZUFON AUSTIN REARDON
TARLOV & MONDELL, P.A.

Penelope B. O'Connell (#4898)
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, DE 19899-2165
Tel (302) 428-3181
Fax (302) 428-3180

**PANEL SERVICE LIST (Excerpted from CTO-271)**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

*Lillian Harwood, et al. v. Bondex International Inc., et al.*, D. Delaware, C.A. No. 1:06-673

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001

David A. Damico
Burns, White & Hickton, LLC
Four Northshore Center
106 Isabella St.
Pittsburgh, PA 15212

Timothy Andrew Dillon
Margolis Edelstein
1509 Gilpin Avenue
Wilmington, DE 19806

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106-2574

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street, 33rd Floor
Philadelphia, PA 19103

Susan M. Hansen
Brownson & Ballou
225 South Sixth Street, Suite 4800
Minneapolis, MN 55402

Reginald S. Kramer
Oldham & Dowling
195 South Main Street, Suite 300
Akron, OH 44308-1314

David C. Landin
Hunton & Williams, LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
Locks Law Firm, LLC
1500 Walnut Street
Philadelphia, PA 19102

Megan Trocki Mantzavinos
Marks, O'Neill, O'Brien & Courtney
913 North Market Street, Suite 800
Wilmington, DE 19801

Ana Marina McCann
Marshall, Dennehey, Warner, Coleman
& Goggin
1220 N. Market Street, 5th Floor
P.O. Box 888
Wilmington, DE 19899

Garvan F. McDaniel
Bifferato Gentilotti Biden & Balick
1308 Delaware Avenue
P.O. Box 2165
Wilmington, DE 19899-2165

Ronald L. Motley
Motley Rice, LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

Lynne M. Parker
Hollstein, Keating, Cattell, et al.
12th & Orange St., Suite 730
One Commerce Center
Wilmington, DE 19801

Mark L. Reardon
Elzufon Austin Reardon Tarlov , et al.
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, DE 19899-1630

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
Roven-Kaplan, L.L.P.
2190 North Loop West, Suite 410
Houston, TX 77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard, 6th Floor
Los Angeles, CA 90025

Christian J. Singewald
White & Williams, LLP
824 Market Street, Suite 902
P.O. Box 709
Wilmington, DE 19899

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West, 15th Floor
Philadelphia, PA 19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1570 Penobscot Building
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226

Andrew J. Trevelise
Reed Smith, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Beth E. Valocchi
Valocchi & Sasso, P.A.
1200 Pennsylvania Avenue
Suite 303
Wilmington, DE 19806

James K. Weston II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

EXHIBIT A

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FEB - 5 2007

FILED
CLERK'S OFFICE

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 1 1 2006

*DOCKET NO. 875*

FILED
CLERK'S OFFICE

*BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

*IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)*

*(SEE ATTACHED SCHEDULE)*

*CONDITIONAL TRANSFER ORDER (CTO-271)*

On July 29, 1991, the Panel transferred 21,937 civil actions to the United States District Court for the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* 771 F.Supp. 415 (J.P.M.L. 1991). Since that time, 81,567 additional actions have been transferred to the Eastern District of Pennsylvania. With the consent of that court, all such actions have been assigned to the Honorable James T. Giles.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Eastern District of Pennsylvania and assigned to Judge Giles.

Pursuant to Rule 7.4 of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation,</u> 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Eastern District of Pennsylvania for the reasons stated in the order of July 29, 1991, and, with the consent of that court, assigned to the Honorable James T. Giles.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Eastern District of Pennsylvania. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel



**SCHEDULE CTO-271 - TAG-ALONG ACTIONS**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

DIST. DIV. C.A. #                    CASE CAPTION

**ALABAMA NORTHERN**
ALN 2 06-1855         Melba Brooks v. A.W. Chesterton Co., et al.

**CALIFORNIA NORTHERN**
CAN 3 06-5381         Matt Hussey, et al. v. General Electric Co., et al.

**DELAWARE**
DE 1 06-668           Betty Agee, et al. v. A.W. Chesterton, Inc., et al.
DE 1 06-673           Lillian Harwood, et al. v. Bondex International Inc., et al.

**INDIANA NORTHERN**
INN 2 06-307          John Cunningham v. General Electric Co., et al.

**LOUISIANA EASTERN**
LAE 2 06-9439         Peggy P. Griffin v. Northrop Grumman Industries, et al.

**LOUISIANA MIDDLE**
LAM 3 06-458          Cletus Brewer v. Noble Drilling Corp., et al.

**MARYLAND**
MD 1 06-2667          William Miles v. Owens-Illinois Glass Co., et al.

**MISSISSIPPI NORTHERN**
MSN 3 06-134          Patricia Wright, etc. v. Budd Co., et al.

**MISSISSIPPI SOUTHERN**
MSS 1 06-1064         Robert Breazeale v. Allied Signal, Inc., et al.
MSS 1 06-1065         Ray Lee Regan v. Allied Signal, Inc., et al.
MSS 1 06-1066         James W. Nations v. Allied Signal, Inc., et al.
MSS 1 06-1067         Ronald E. Nations v. Allied Signal, Inc., et al.
MSS 1 06-1068         Malcolm Montgomery v. Allied Signal, Inc., et al.
MSS 1 06-1070         Harry Lambert v. Emerson Electric Co., et al.
MSS 1 06-1071         Lionel Anderson v. William Powell International Sales Corp., et al.
MSS 1 06-1074         Tina Fitzgerald, etc. v. American Standard, Inc., et al.
MSS 1 06-1075         Curtis Lee Jones v. Allied Signal, Inc., et al.
MSS 1 06-1076         O'Neal Chambers, Jr., etc. v. American Standard, Inc., et al.
MSS 1 06-1089         Robert Copeland v. General Electric Co., et al.
MSS 1 06-1096         Charles R. Rester v. Metropolitan Life Insurance Co., et al.
MSS 1 06-1147         George Moore v. Ingersoll-Rand Co., et al.

**NORTH CAROLINA EASTERN**
NCE 4 06-189          Van Crawford, et al. v. AMCA/KOEHRING Co., et al.
NCE 4 06-202          Johnnie P. Lee, et al. v. 3M Co., et al.
NCE 4 06-207          Angela Michelle Covington, etc. v. Anchor Packing Co., et al.
NCE 4 06-208          Freda C. Wells, etc. v. A.W. Chesterton, Inc., et al.
NCE 4 06-215          Roland Delos Cady, et al. v. Albany International Corp., et al.
NCE 4 06-216          Archie Clarence Forrester, et al. v. Albany International Corp., et al.

SCHEDULE- CTO-271 - TAG-ALONG ACTIONS - MDL-875                    Page 2 of 3

DIST. DIV. C.A. #                CASE CAPTION

NCE 4  06-217        Elizabeth A. Phelps, etc. v. Albany International Corp., et al.
NCE 5  06-342        Walker H. Lee v. 3M Co., et al.
NCE 5  06-391        Catherine Ruth Gailloux, etc. v. Anchor Packing Co., et al.
NCE 5  06-407        Louise Julyan Stanyer, etc. v. Anchor Packing Co., et al.
NCE 5  06-420        Abel Laberge, et al. v. Anchor Packing Co., et al.
NCE 5  06-431        Bryan Edward Zapf, et al. v. Anchor Packing Co., et al.
NCE 5  06-432        Harold John Hildebrandt v. Anchor Packing Co., et al.
NCE 5  06-435        Josie Bergeron, etc. v. Anchor Packing Co., et al.

NORTH CAROLINA MIDDLE
NCM 1  06-924        Patrick H. O'Connor, etc. v. DaimlerChrysler Corp., et al.
NCM 1  06-935        Allen W. Craver, et al. v. 3M Co., et al.
NCM 1  06-958        Gerald W. Sheets v. 3M Co., et al.

NORTH CAROLINA WESTERN
NCW 1  06-327        Charles Anthony Bynum, et al. v. Aqua-Chem, Inc., et al.
NCW 1  06-328        Albert Eugene Dellinger, et al. v. Aqua-Chem, Inc., et al.
NCW 1  06-330        Ernest James Cornelius, Jr., et al. v. Aqua-Chem, Inc., et al.
NCW 1  06-331        Ronald David Hamilton, et al. v. Aqua-Chem, Inc., et al.
NCW 1  06-332        Douglas Eugene Funderburk, et al. v. Aqua-Chem, Inc., et al.
NCW 1  06-334        James P. Butts, et al. v. 3M Co., et al.
NCW 1  06-337        Hal Terry Byers v. Aqua-Chem, Inc., et al.
NCW 1  06-338        Billy Grissett v. Aqua-Chem, Inc., et al.
NCW 1  06-339        William Jerry Hamby v. Aqua-Chem, Inc., et al.
NCW 1  06-340        Clarence Douglas Hunt, et al. v. Aqua-Chem, Inc., et al.
NCW 1  06-342        J.C. Beaver, et al. v. Aqua-Chem, Inc., et al.
NCW 1  06-343        Jerry Lee Hand, et al. v. Aqua-Chem, Inc., et al.
NCW 1  06-344        Jerry Thomas Miller, et al. v. Aqua-Chem, Inc., et al.
NCW 1  06-345        William David Hux, et al. v. Aqua-Chem, Inc., et al.
NCW 1  06-346        Thomas H. Smart v. 3M Co., et al.
NCW 1  06-348        Jerry Odell Wilson, Jr. v. Aqua-Chem, Inc., et al.
NCW 1  06-349        Judy Irene Boggs-Greer v. Aqua-Chem, Inc., et al.
NCW 1  06-351        John Ashley Wright, et al. v. Aqua-Chem, Inc., et al.
NCW 1  06-352        Roger Lee Perryman, et al. v. Aqua-Chem, Inc., et al.
NCW 1  06-353        Owen Edward Johnson v. Aqua-Chem, Inc., et al.
NCW 1  06-354        Ronald Edward Bland, et al. v. Aqua-Chem, Inc., et al.
NCW 1  06-356        Rickey Lynn Nance, et al. v. Aqua-Chem, Inc., et al.
NCW 1  06-358        Charles E.A. Ballard v. Aqua-Chem, Inc., et al.
NCW 1  06-364        Raymond B. Simpson, et al. v. 3M Co., et al.
NCW 1  06-369        Steven R. Patterson, et al. v. 3M Co., et al.

NEBRASKA
NE 8  06-639         Mervin Sipp v. BNSF Railway Co.
NE 8  06-640         Earl Motschenbacher v. BNSF Railway Co.
NE 8  06-641         Ivan Boettner v. BNSF Railway Co.
NE 8  06-642         James Anderson v. BNSF Railway Co.

NEW JERSEY
NJ 2  06-4899        Malcolm Hagen, et al. v. Benjamin Foster Co., et al.

NEW MEXICO
NM 1  05-416         Frank Torres v. Burlington Northern & Santa Fe Railway Co.
NM 1  06-915         Mauricio R. Gabaldon v. Burlington Northern & Santa Fe Railway Co.

SCHEDULE- CTO-271 - TAG-ALONG ACTIONS - MDL-875                          Page 3 of 3

| DIST. DIV. C.A. # | CASE CAPTION |
|---|---|
| NEW YORK EASTERN | |
| NYE 1 06-5563 | Paula I. Guillory v. A.W. Chesterton Co., et al. |
| OHIO NORTHERN | |
| OHN 1 06-10007 | Harry E. Hawkins v. A-c Product Liability Trust, et al. |
| PENNSYLVANIA WESTERN | |
| PAW 2 06-1388 | Frank J. Suloff v. Consolidated Rail Corp., et al. |
| SOUTH CAROLINA | |
| SC 8 06-2885 | Donald Lee Brooks, et al. v. Aqua-Chem, Inc., et al. |
| SC 8 06-2896 | Maurice Ira Phillips, et al. v. Aqua-Chem, Inc., et al. |
| TEXAS WESTERN | |
| TXW 6 06-299 | Donna David, etc. v. Alcoa, Inc. |
| VIRGINIA EASTERN | |
| VAE 2 06-9060 | Paul Allen v. American Standard, Inc., et al. |
| VAE 2 06-9061 | Carlton M. Beckman v. American Standard, Inc., et al. |
| VAE 2 06-9062 | Michael J. Bell v. American Standard, Inc., et al. |
| VAE 2 06-9063 | Phillip Bodine v. American Standard, Inc., et al. |
| VAE 2 06-9064 | Charles F. Brant v. American Standard, Inc., et al. |
| VAE 2 06-9065 | William E. Busby v. American Standard, Inc., et al. |
| VAE 2 06-9066 | Odell J. Malone v. American Standard, Inc., et al. |
| VAE 2 06-9067 | Dionico Sais v. American Standard, Inc., et al. |
| VAE 2 06-9068 | Samuel E. Crane v. American Standard, Inc., et al. |
| VAE 2 06-9069 | Jon W. Foster v. American Standard, Inc., et al. |
| VAE 2 06-9070 | Monroe v. American Standard, Inc., et al. |
| VAE 2 06-9071 | Earl J. Murphy v. American Standard, Inc., et al. |
| VAE 2 06-9072 | William H. Sheppard v. American Standard, Inc., et al. |
| VAE 2 06-9073 | James W. Bell v. American Standard, Inc., et al. |
| VAE 2 06-9074 | Stewart C. Brennan v. American Standard, Inc., et al. |
| VAE 2 06-9075 | Larry G. Brown v. American Standard, Inc., et al. |
| VAE 2 06-9076 | Frank L. Johnson v. American Standard, Inc., et al. |
| VAE 2 06-9077 | Monroe v. American Standard, Inc., et al. |
| VAE 2 06-9078 | Leonard S. Olson v. American Standard, Inc., et al. |
| WASHINGTON WESTERN | |
| WAW 2 05-1250 | Steven D. McAboy, etc. v. Viad Corp. |
| WAW 2 06-369 | Clint Johnson, etc. v. IMO Industries, Inc., et al. |
| WISCONSIN EASTERN | |
| WIE 2 06-397 | Byron Bessers v. International Paper Co., et al. |
| WIE 2 06-1076 | Janet Schueler, etc. v. American Optical Corp. |

INVOLVED COUNSEL LIST (CTO-271)
DOCKET NO. 875
IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

David Foxwell Albright, Sr.
Law Offices of David F. Albright
1122 Kenilworth Drive
Suite 500
Baltimore, MD 21202

David W. Allen
Goodell, DeVries, Leech & Dann
One South Street
20th Floor
Baltimore, MD 21202

Mark E. Anderson
Patterson, Dilthey, Clay, Bryson
& Anderson
4020 WestChase Boulevard
Suite 550
Raleigh, NC 27607

James F. Archibald, III
Bradley, Arant, Rose & White
P.O. Box 830709
Birmingham, AL 35283-0709

Robert M. Arentson, Jr.
Baker, Donelson, Bearman, Caldwell
& Berkowitz
P.O. Box 14167
Jackson, MS 39236-4167

John C. Babione
Mitchell, Hurst, Jacobs & Dick
152 E. Washington Street
Indianapolis, IN 46204

S. Allen Baker, Jr.
Balch & Bingham LLP
P.O. Box 306
Birmingham, AL 35201-0306

Michael T. Bartley
Forman, Perry, Watkins, Krutz
& Tardy, PLLC
P.O. Box 22608
Jackson, MS 39225-2608

Robert R. Baugh
Sirote & Permutt, P.C.
2222 Arlington Avenue South
P.O. Box 55727
Birmingham, AL 35255

Joshua H. Bennett
Bennett & Guthrie, P.L.L.C.
1560 Westbrook Plaza Drive
Winston-Salem, NC 27103

Gary A. Bezet
Kean, Miller, Hawthorne,
D'Armond, et al.
One American Place
22nd Floor
P.O. Box 3513
Baton Rouge, LA 70821-3513

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Janet W. Black
Ward Black, P.A.
208 West Wendover Ave.
Greensboro, NC 27401-1307

Brian M. Blythe
Bradley, Arant, Rose & White
1819 Fifth Avenue, North
Birmingham, AL 35203-2119

Joel M. Bondurant, Jr.
Haynsworth Sinkler Boyd, P.A.
P.O. Box 2048
Greenville, SC 29602-2048

Brian C. Bossier
Blue Williams, LLP
3421 N. Causeway Boulevard
9th Floor
Metairie, LA 70002

Timothy W. Bouch
Leath, Bouch & Crawford
134 Meeting Street
P.O. Box 59
Charleston, SC 29402-0059

Alan R. Brayton
Brayton Purcell, LLP
222 Rush Landing Road
Novato, CA 94948

A. Todd Brown
Hunton & Williams, LLP
Bank of America Plaza
101 Sout Tryon Street
Suite 3500
Charlotte, NC 28280

Lisa N. Busch
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038

Dennis F. Cantrell
Bingham McHale, LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN 46204-4900

Michael P. Cascino
Cascino Vaughan Law Offices, Ltd.
220 South Ashland Avenue
Chicago, IL 60607

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

William T. Causby
Nelson, Mullins, Riley & Scarborough, LLP
1330 Lady Street
Keenan Bldg., 3rd Floor
P.O. Box 11070
Columbia, SC 29211-1070

Adam M. Chud
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001

Michael Jason Clayton
Forman, Perry, Watkins, Krutz & Tardy
P.O. Box 22608
Jackson, MS 39225-2608

Susan Coco
Montague, Pittman & Varnado
P.O. Drawer 1975
Hattiesburg, MS 39403-1975

INVOLVED COUNSEL LIST (CTO-271) - MDL-875                    Page 2 of 7

John D. Cole
Ogletree, Deakins, Nash, Smoak
& Stewart, P.C.
400 West Trade Street
Charlotte, NC 28202

T. Hunt Cole, Jr.
Forman, Perry, Watkins, Krutz
& Tardy, PLLC
P.O. Box 22608
Jackson, MS 39225-2608

Keith E. Coltrain
Elmore & Wall, PA
P.O. Box 10937
Raleigh, NC 27605

John F. Conley
Glasser & Glasser, P.L.C.
Crown Center Building
Suite 600
580 East Main Street
Norfolk, VA 23510-2212

Langdon M. Cooper
Mullen, Holland & Cooper, P.A.
P.O. Box 488
301 S. York Street
Gastonia, NC 28053-0488

David A. Damico
Burns, White & Hickton, LLC
Four Northshore Center
106 Isabella St.
Pittsburgh, PA 15212

Cheryl A. Danner
Sheffer Law Firm, LLC
101 South Fifth Street
Suite 1600
Louisville, KY 40202

H. Lee Davis, Jr.
Davis & Hamrick, L.L.P.
P.O. Drawer 20039
Winston-Salem, NC 27120-0039

William Pearce Davis
Baker, Ravenel & Bender
P.O. Box 8057
Columbia, SC 29202

Timothy Andrew Dillon
Margolis Edelstein
1509 Gilpin Avenue
Wilmington, DE 19806

Ann Terrell Dorsett
Helms, Mulliss & Wicker
201 N. Tryon Street
Charlotte, NC 28202

Kathleen F. Drew
Adams & Reese, LLP
701 Poydras Street
Suite 4500
New Orleans, LA 70139

David M. Duke
Young, Moore & Henderson, P.A.
P.O. Box 31627
Raleigh, NC 27622-1330

Andrea L. Edney
Brunini, Grantham, Grower & Hewes
248 East Capitol Street
P.O. Box 119
Jackson, MS 39205-0119

Gary W. Fillingim
Edward B. McDonough, Jr., P.C.
P.O. Box 1943
Mobile, AL 36633

Evelyn M. Fletcher
Hawkins & Parnell, LLP
4000 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA 30308-3243

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106-2574

Shannon S. Frankel
Young, Moore & Henderson, P.A.
3101 Glenwood Avenue
Suite 200
Raleigh, NC 27612

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Ronald C. Gardner
Gardner, Bond, Trabolsi, McDonald
& Clement
2200 Sixth Avenue, Suite 600
Seattle, WA 98121

Keith L. Gates
Abbott, Simses & Kuchler
210 East Capitol Street
Suite 1090
Jackson, MS 39201

Geoffrey S. Gavett
Gavett & Datt, P.C.
15850 Crabbs Branch Way
Suite 180
Rockville, MD 20855

E. Pennock Gheen
Bullivant, Houser, Bailey, et al.
2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101

Walter T. Gilmer Jr.
McDowell, Knight, Roedder & Sledge
P.O. Box 350
Mobile, AL 36601

Richard S. Glasser
Glasser & Glasser, P.L.C.
Crown Center Building
Suite 600
580 East Main Street
Norfolk, VA 23510

Laura DeVaughn Goodson
Forman, Perry, Watkins, Krutz
& Tardy
P.O. Box 22608
Jackson, MS 39225-2608

Frank J. Gordon
Millberg Gordon & Stewars, PLLC
1101 Haynes Street
Suite 104
Raleigh, NC 27604

William M. Graham
Wallace & Graham, P.A.
525 North Main Street
Salisbury, NC 28144

Robert V. Greenlee
Forman, Perry, Watkins, Krutz
& Tardy
P.O. Box 22608
Jackson, MS 39225-2608

INVOLVED COUNSEL LIST (CTO-271) - MDL-875

Michael C. Griffin
McGuire Woods, LLP
100 North Tryon Street
Suite 2900
Charlotte, NC 28202

Melissa K. Habeck
Forsberg & Umlauf
900 4th Avenue
Suite 1700
Seattle, WA 98164-1039

Susan M. Hansen
Brownson & Ballou
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

Frances K. Hardage
Allred Law Firm
P.O. Box 3828
Jackson, MS 39207-3828

Scott Harford
Lynch Daskal Emery, LLP
264 West 40th Street
New York, NY 10018

Anthony C. Harlow
Starnes & Atchison, LLP
100 Brookwood Place
Seventh Floor
P.O. Box 598512
Birmingham, AL 35259

James A. Harris, III
Harris & Harris, LLP
Colonial Bank Building, Suite 450
2501 20th Place, South
Birmingham, AL 35223

Josephine H. Hicks
Parker, Poe, Adams & Bernstein
Three Wachovia Center
401 South Tryon Street
Suite 3000
Charlotte, NC 28202

M. King Hill, III
Venable, LLP
210 Allegheny Avenue
Towson, MD 21204

James E. Horne
Kingman, Peabody, Pierson
& Fitzharris
505 Madison Street
Suite 300
Seattle, WA 98104-1138

James G. House, III
Forman, Perry, Watkins, Krutz
& Tardy, PLLC
200 S. Lamar Street
City Center Building
Suite 100
Jackson, MS 39201-4099

Jeffrey P. Hubbard
Wells, Moore, Simmons & Hubbard
P.O. Box 1970
Jackson, MS 39215-1970

John B. Isbister
Tydings & Rosenberg, LLP
100 East Pratt Street
26th Floor
Baltimore, MD 21202

Robert Jacobs
Jacobs & Crumplar, P.A.
P.O. Box 2223
Wilmington, DE 19899

Michael E. Kaemper
Atkinson & Thal
201 Third Street, N.W.
#1850
Albuquerque, NM 87102

Jennifer J. Kalas
Hinshaw & Culbertson
222 Indianapolis Blvd
Suite 202
Schererville, IN 46375

G. Patterson Keahey, Jr.
Law Offices of
G. Patterson Keahey, Jr., PC
One Independence Plaza
Suite 612
Birmingham, AL 35209

Christopher J. Keale
Sedgwick, Detert, Moran & Arnold
Three Gateway Center
100 Mulberry Street - 12th Floor
Newark, NJ 07102

Daniel J. Kelly
Haight, Brown & Bonesteel
71 Stevenson Street
20th Floor
San Francisco, CA 94105-2981

Katherine V. Kemp
Holcomb Dunbar, PA
P.O. Drawer 707
Oxford, MS 38655-0707

James G. Kennedy
Pierce, Herns, Sloan & McLeod
The Blake House
321 East Bay Street
P.O. Box 22437
Charleston, SC 29413

Kristi D. Kennedy
Currie, Johnson, Griffin, Gaines
& Myers
P.O. Box 750
Jackson, MS 39205-0750

Richard J. Keshian
Kilpatrick & Stockton, LLP
1001 W. Fourth Street
Winston-Salem, NC 27101

Claire Williams Ketner
Brunini, Grantham, Grower & Hewes
P. O. Drawer 119
Jackson, MS 39205-0119

Timothy W. Knight
Kee & Selby, LLP
1900 International Park Drive
Suite 220
Birmingham, AL 35243

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308-1314

Donald A. Krispin
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
645 Griswold St.
Detroit, MI 48226

Matthew P. Lachaussee
Dogan & Wilkinson, PLLC
P. O. Box 1618
Pascagoula, MS 39568-1618

INVOLVED COUNSEL LIST (CTO-271) - MDL-875

John J. Laffey
Whyte Hirschboeck Dudek
555 E Wells St - Ste 1900
Milwaukee, WI 53202-3819

Carter T. Lambeth
Johnson & Lambeth
232 Princess Street
P.O. Box 660
Wilmington, NC 28402

Daphne M. Lancaster
Aultman, Tyner & Ruffin, Ltd.
P. O. Drawer 750
315 Hemphill Street
Hattiesburg, MS 39403-0750

David C. Landin
Hunton & Williams, LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Frank E. Lankford, Jr.
Huie, Fernambucq & Stewart
2801 Highway 280 South
Three Protective Center, Suite 200
Birmingham, AL 35223-2484

Teresa Fizardi Lazzaroni
Hawkins & Parnell, LLP
4000 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA 30308-3243

Gary Allen Lee
Lee, Futrell & Perles, LLP
201 St. Charles Avenue
Suite 4120
New Orleans, LA 70170-4120

Sidney G. Leech
Goodell, DeVries, Leech & Dann, LLP
Commerce Place
20th Floor
One South Street
Baltimore, MD 21202

Gene Locks
Locks Law Firm, LLC
1500 Walnut Street
Philadelphia, PA 19102

Daniel M. Long
Locke Reynolds, LLP
201 North Illinois Street
Suite 1000
P.O. Box 44961
Indianapolis, IN 46244-0961

Robert J. Lynott
Thomas & Libowitz
100 Light Street
Suite 1100
Baltimore, MD 21202-1053

Genevieve MacSteel
McGuireWoods, LLP
1345 Avenue of the Americas
7th Floor
New York, NY 10105

Moffatt Grier McDonald
Haynsworth Sinkler Boyd, P.A.
P.O. Box 2048
Greenville, SC 29602

Kimberly P. Mangum
Barfield & Associates
P.O. Drawer 3979
233 East Capitol Street
Jackson, MS 39207-3979

Megan Trocki Mantzavinos
Marks, O'Neill, O'Brien & Courtney
913 North Market Street
Suite 800
Wilmington, DE 19801

Bruce B. Marr
McKenna Storer
33 N Lasalle Street, Suite 1400
Chicago, IL 60602-2610

De Martenson
Huie Fernambucq & Stewart, LLP
2801 Highway 280 South
Birmingham, AL 35223

John Michael Mattingly
Steven Rizzo, PC
Lincoln Place, Suite 350
1620 S.W. Taylor Street
Portland, OR 97205

Ana Marina McCann
Marshall, Dennehey, Warner, Coleman & Goggin
1220 N. Market Street, 5th Floor
P.O. Box 888
Wilmington, DE 19899

Damon G. McClain
Sedgwick, Detert, Moran & Arnold
One Market Plaza
Steuart Tower
8th Floor
San Francisco, CA 94105

Robert G. McCoy
Cascino Vaughan Law Offices, Ltd.
220 South Ashland Avenue
Chicago, IL 60607

Garvan F. McDaniel
Bifferato Gentilotti Biden & Balick
1308 Delaware Avenue
P.O. Box 2165
Wilmington, DE 19899-2165

Edward Bailey McDonough, Jr.
Edward B. McDonough, Jr., P.C.
P.O. Box 1943
Mobile, AL 36633

William T. Mills, II
Porterfield, Harper, Mills & Motlow
22 Inverness Center Parkway
Suite 500
P.O. Box 530790
Birmingham, AL 35253-0790

Willard J. Moody, Jr.
Moody, Strople, Kloeppel, et al.
500 Crawford Street
Commerce Bank Bldg., Suite 300
P.O. Box 1138
Portsmouth, VA 23705

Lacey M. Moore
Nexsen, Pruet, Adams, Kleemeier
201 South Tryon Street
Suite 1200
Charlotte, NC 28202

R. Stan Morris
Cartee & Morris, LLC
P.O. Box 59767
Birmingham, AL 35259

INVOLVED COUNSEL LIST (CTO-271) - MDL-875

Ronald L. Motley
Motley Rice, LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

John J. Nagle, III
Bodie, Nagle, Dolina, Smith & Hobbs
21 W. Susquehanna Avenue
Towson, MD 21204

Jeremy W. North
North & Cobb, P.A.
7313 York Road
Towson, MD 21204

Robert L. Norton
Jones & Granger
10000 Memorial Drive
Suite 888
P.O. Box 4340
Houston, TX 77210-4340

Richard P. O'Leary
McCarter & English, L.L.P.
245 Park Avenue
27th Floor
New York, NY 10022

David T. Owens
Hunton & Williams, LLP
1601 Bryan Street
30th Floor
Dallas, TX 75201

Lynne M. Parker
Hollstein, Keating, Cattell, et al.
12th & Orange St.
Suite 730
One Commerce Center
Wilmington, DE 19801

E. Spencer Parris
Martin & Jones
410 Glenwood Avenue
Suite 200
Raleigh, NC 27603

Steven J. Parrott
Dehay & Elliston, LLP
36 S. Charles Street
13th Floor
Baltimore, MD 21201

Jonathan L. Parshall
Murphy, Spadaro & Landon
1011 Centre Road
Suite 210
Wilmington, DE 19805

Donald C. Partridge
Forman, Perry, Watkins, Krutz
& Tardy, PLLC
200 S. Lamar Street
City Center Building
Suite 100
Jackson, MS 39201-4099

Timothy Peck
Smith Moore, LLP
P.O. Box 21927
Greensboro, NC 27420

Robert H. Pedersen
Watkins & Eager
P. O. Box 650
Jackson, MS 39205

Patrick W. Pendley
Pendley, Baudin & Coffin, LLP
P.O. Drawer 71
24110 Eden Street
Plaquemine, LA 70764-0071

Steven R. Penn
Penn Rakauski
927 Main Street
Racine, WI 53403

Carl E. Pierce, II
Pierce, Herns, Sloan & McLeod
P.O. Box 22437
Charleston, SC 29413

Daniel Douglas Pipitone
Chamberlain, Harlicka, White,
Williams & Martin
1200 Smith Street
Suite 1400
Houston, TX 77002-4496

Christopher M. Placitella
Cohen, Placitella & Roth
115 Maple Avenue
Red Bank, NJ 07701

Timothy W. Porter
Porter & Malouf, P.A.
P.O. Box 12768
Jackson, MS 39236-2768

Steven J. Pugh
Richarson, Plowden, Carpenter
& Robinson, PA
P.O. Drawer 7788
Columbia, SC 29202

Richard S. Ranieri
Weber Gallagher, et al.
33 Washington Street
Suite 1005
Newark, NJ 07102

Hilary G. Reagin
Hissey, Kientz & Herron, PLLC
16800 Imperial Valley Drive
Suite 130
Houston, TX 77060

Mark L. Reardon
Elzufon Austin Reardon Tarlov
& Mondell, PA
300 Delaware Avenue
Suite 1700
P.O. Box 1630
Wilmington, DE 19899-1630

F. Grey Redditt, Jr.
Vickers, Riis, Murray & Curran
P.O. Drawer 2568
Mobile, AL 36652-2568

Simine Bazyari Reed
Forman, Perry, Watkins, Krutz
& Tardy, PLLC
P.O. Box 22608
Jackson, MS 39225-2608

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

McGready L. Richeson
Abbott, Simses & Kuchler
400 Lafayette Street
Suite 200
New Orleans, LA 70130

Deborah L. Robinson
Robinson Woolson
217 E. Redwood Street
Suite 1500
Baltimore, MD 21202

INVOLVED COUNSEL LIST (CTO-271) - MDL-875                          Page 6 of 7

John D. Roven
Roven-Kaplan, L.L.P.
2190 North Loop West
Suite 410
Houston, TX 77018

William Rutzick
Schroeter, Goldmark & Bender
500 Central Building
810 Third Avenue
Seattle, WA 98104

Richard P. Salloum
Franke, Rainey & Salloum
P. O. Drawer 460
Gulfport, MS 39502-0460

Thomas C. Sattler
Wolfe, Snowden Law Firm
1248 O Street
Suite 830, Wells Fargo Center
Lincoln, NE 68508

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Joseph A. Sherman
Bruini, Grantham, Grower & Hewes
P.O. Box 119
Jackson, MS 39205-0119

Jason T. Shipp
Goldberg, Persky & White, PC
1030 Fifth Avenue, Third Floor
Pittsburgh, PA 15219

Chadwick Lester Shook
Aultman, Tyner & Ruffin, Ltd.
P. O. Drawer 750
315 Hemphill Street
Hattiesburg, MS 39403-0750

E. Terry Sibbernsen
Sibbernsen, Strigenz Law Firm
8805 Indian Hills Drive
#325
Omaha, NE 68124

Stacey L. Sims
Morris, Sakalarios & Blackwell, PLLC
1817 Hardy Street
Hattiesburg, MS 39401

Christian J. Singewald
White & Williams, LLP
824 Market Street
Suite 902
P.O. Box 709
Wilmington, DE 19899

Jena W. Smith
Baldwin & Haspel
Energy Centre, Suite 2200
1100 Poydras Street
New Orleans, LA 70163

Frances L. Spinelli
Evert Weathersby & Houff, LLC
3405 Piedmont Road, N.E.
Suite 225
Atlanta, GA 30305

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA 19102

Steven F. Stanaszak
Whyte Hirschboeck Dudek Sc
555 E Wells St - Ste 1900
Milwaukee, WI 53202-3819

William B. Stewart
Copeland, Cook, Taylor & Bush
P.O. Box 6020
Ridgeland, MS 39158-6020

Matthew R. Straus
Weiner & Lesniak, LLP
888 Veterans Memorial Highway
Suite 540
Hauppauge, NY 11788

Richard P. Sulzer
Sulzer & Williams, LLC
201 Holiday Boulevard
Suite 335
Covington, LA 70433

Frank J. Swarr
Landry & Swarr
1010 Common Street
Suite 2050
New Orleans, LA 70112

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1570 Penobscot Building
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226

Michael A. Tanenbaum
Sedgwick, Detert, Moran & Arnold, LLP
Three Gateway Center
12th Floor
Newark, NJ 07102

Jennifer M. Techman
Evert Weathersby & Houff, LLC
3405 Piedmont Road, N.E.
Suite 200
Atlanta, GA 30305

Mark S. Thomas
Maupin, Taylor, PA
Highwoods Tower One
3200 Beechleaf Court, Suite 500
P.O. Drawer 19764
Raleigh, NC 27619-9764

Nathan Michael Thompson
Hawkins & Parnell, LLP
4000 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA 30308-3243

Karen L. Tidwall
Whyte Hirschboeck Dudek
555 E Wells St - Ste 1900
Milwaukee, WI 53202-3819

Tracy E. Tomlin
Nelson, Mullins, Riley & Scarborough
100 North Tryon Street
Suite 2400
Charlotte, NC 28202-4000

Andrew J. Trevelise
Reed Smith, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

David L. Trewolla
Dogan & Wilkinson, PLLC
P.O. Box 23062
Jackson, MS 39225-3062

INVOLVED COUNSEL LIST (CTO-271) - MDL-875

Keith R. Truffer
Royston, Mueller, McLean & Reid
102 W. Pennsylvania Avenue
Suite 600
Towson, MD 21204

Beth E. Valocchi
Valocchi & Sasso, P.A.
1200 Pennsylvania Avenue
Suite 303
Wilmington, DE 19806

Mary W. Van Slyke
Page, Mannino, Peresich &
McDermott
P.O. Drawer 289
Biloxi, MS 39533-0289

Jeffrey A. Varas
Varas & Morgan
P.O. Box 886
Hazlehurst, MS 39083

Carey R. Varnado
Montague, Pittman & Varnado
P.O. Drawer 1975
Hattiesburg, MS 39403-1975

Allen D. Vaughan
Cascino Vaughan Law Offices, Ltd.
220 South Ashland Avenue
Chicago, IL 60607-5308

Michael A. Vercher
Christian & Small, LLP
505 North 20th Street
Suite 1800
Birmingham, AL 35203-2696

Rose Marie Wade
Evert Weathersby & Houff, LLC
3405 Piedmont Road, N.E.
Suite 225
Atlanta, GA 30305-1764

Mona L. Wallace
Wallace & Graham, P.A.
525 North Main Street
Salisbury, NC 28144

Michael Waller
Kirkpatrick Lockhart Nicholson
& Graham, LLP
One Newark Center
10th Floor
Newark, NJ 07102

Margaret F. Ward
Moore & Jackson, LLC
305 Washington Avenue
Suite 401
Baltimore, MD 21204

Kirk G. Warner
Smith, Anderson, Blount,
Dorsett, et al.
P.O. Box 2611
2500 Wachovia Capitol Center
Raleigh, NC 27602-2611

William L. Waudby
Baker, Donelson, Bearman, Caldwell
& Berkowitz PC
420 North 20th Street
SouthTrust Tower, Suite 1600
Birmingham, AL 35203-5202

Michael C. Weber
LeBlanc & Waddell, LLC
6955 Perkins Road
Suite 100
Baton Rouge, LA 70808

Jacob H. Wellman
Teague, Campbell, Dennis
& Gorham
4800 Six Forks Road
Suite 300
P.O. Box 19207
Raleigh, NC 27619-9207

H. Thomas Wells, Jr.
Maynard Cooper & Gale PC
2400 AmSouth Harbert Plaza
1901 Sixth Avenue North
Birmingham, AL 35203

Kenneth L. Weltz
Lathrop & Gage, L.C.
10851 Mastin Blvd.
Building 82, Suite 1000
Overland Park, KS 66210-1669

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

Paul A. Weykamp
Law Offices of Paul A. Weykamp
16 Stenersen Lane
Suite 2
Hunt Valley, MD 21030

Allan R. Wheeler
Burr & Forman
Suite 3100
South Trust Tower
420 North 20th Street
Birmingham, AL 35203

Stephen B. Williamson
Van Winkle, Buck, Wall, Starnes
& Davis, P.A.
11 N. Market Street
P.O. Box 7376
Ashville, NC 28802-7376

Gordon P. Wilson
Lugenbuhl, Wheaton, et al.
601 Poydras Street
Suite 2775
New Orleans, LA 70130

Natasha L. Wilson
Lightfoot, Franklin & White
The Clark Building
400 20th Street North
Birmingham, AL 35203

Richard F. Yarborough, Jr.
Smith, Reeves & Yarborough
6360 I-55 North
Suite 201
Jackson, MS 39211

Shane C. Youtz
Youtz & Valdez, PC
900 Gold Avenue, SW
Albuquerque, NM 87102

John Anthony Zaloom
Moore & Van Allen, PLLC
430 Davis Drive
Suite 500
P.O. Box 13706
Research Triangle PA, NC 27705-4658

I. Timothy Zarsadias
Dean & Gibson, L.L.P.
Cameron Brown Building
Suite 900
301 South McDowell Street
Charlotte, NC 28204-2686

RULE 5.2:    SERVICE OF PAPERS FILED

(a)    All papers filed with the Clerk of the Panel shall be accompanied by proof of previous or simultaneous service on all other parties in all actions involved in the litigation.  Service and proof of service shall be made as provided in Rules 5 and 6 of the Federal Rules of Civil Procedure.  The proof of service shall indicate the name and complete address of each person served and shall indicate the party represented by each.  If a party is not represented by counsel, the proof of service shall indicate the name of the party and the party's last known address.  The proof of service shall indicate why any person named as a party in a constituent complaint was not served with the Section 1407 pleading.  The original proof of service shall be filed with the Clerk of the Panel and copies thereof shall be sent to each person included within the proof of service.  After the "Panel Service List" described in subsection (d) of this Rule has been received from the Clerk of the Panel, the "Panel Service List" shall be utilized for service of responses to motions and all other filings.  In such instances, the "Panel Service List" shall be attached to the proof of service and shall be supplemented in the proof of service in the event of the presence of additional parties or subsequent corrections relating to any party, counsel or address already on the "Panel Service List."

(b)    The proof of service pertaining to motions for transfer of actions pursuant to 28 U.S.C. §1407 shall certify that copies of the motions have been mailed or otherwise delivered for filing to the clerk of each district court in which an action is pending that will be affected by the motion.  The proof of service pertaining to motions for remand pursuant to 28 U.S.C. §1407 shall certify that a copy of the motion has been mailed or otherwise delivered for filing to the clerk of the Section 1407 transferee district court in which any action affected by the motion is pending.

(c)    Within eleven days of filing of a motion to transfer, an order to show cause or a conditional transfer order, each party or designated attorney shall notify the Clerk of the Panel, in writing, of the name and address of the attorney designated to receive service of all pleadings, notices, orders and other papers relating to practice before the Judicial Panel on Multidistrict Litigation.  Only one attorney shall be designated for each party.  Any party not represented by counsel shall be served by mailing such pleadings to the party's last known address.  Requests for an extension of time to file the designation of attorney shall not be granted except in extraordinary circumstances.

(d)    In order to facilitate compliance with subsection (a) of this Rule, the Clerk of the Panel shall prepare and serve on all counsel and parties not represented by counsel, a "Panel Service List" containing the names and addresses of the designated attorneys and the party or parties they represent in the actions under consideration by the Panel and the names and addresses of the parties not represented by counsel in the actions under consideration by the Panel.  After the "Panel Service List" has been received from the Clerk of the Panel, notice of subsequent corrections relating to any party, counsel or address on the "Panel Service List" shall be served on all other parties in all actions involved in the litigation.

(e)    If following transfer of any group of multidistrict litigation, the transferee district court appoints liaison counsel, this Rule shall be satisfied by serving each party in each affected action and all liaison counsel.  Liaison counsel designated by the transferee district court shall receive copies of all Panel orders concerning their particular litigation and shall be responsible for distribution to the parties for whom he or she serves as liaison counsel.

RULE 7.4:     CONDITIONAL TRANSFER ORDERS FOR "TAG-ALONG ACTIONS"

(a)     Upon learning of the pendency of a potential "tag-along action," as defined in Rule 1.1 of these Rules, an order may be entered by the Clerk of the Panel transferring that action to the previously designated transferee district court on the basis of the prior hearing session(s) and for the reasons expressed in previous opinions and orders of the Panel in the litigation. The Clerk of the Panel shall serve this order on each party to the litigation but, in order to afford all parties the opportunity to oppose transfer, shall not send the order to the clerk of the transferee district court for fifteen days from the entry thereof.

(b)     Parties to an action subject to a conditional transfer order shall notify the Clerk of the Panel within the fifteen-day period if that action is no longer pending in its transferor district court.

(c)     Any party opposing the transfer shall file a notice of opposition with the Clerk of the Panel within the fifteen-day period. If a notice of opposition is received by the Clerk of the Panel within this fifteen-day period, the Clerk of the Panel shall not transmit said order to the clerk of the transferee district court until further order of the Panel. The Clerk of the Panel shall notify the parties of the briefing schedule.

(d)     Within fifteen days of the filing of its notice of opposition, the party opposing transfer shall file a motion to vacate the conditional transfer order and brief in support thereof. The Chairman of the Panel shall set the motion for the next appropriate hearing session of the Panel. Failure to file and serve a motion and brief shall be treated as withdrawal of the opposition and the Clerk of the Panel shall forthwith transmit the order to the clerk of the transferee district court.

(e)     Conditional transfer orders do not become effective unless and until they are filed with the clerk of the transferee district court.

(f)     Notices of opposition and motions to vacate such orders of the Panel and responses thereto shall be governed by Rules 5.12, 5.2, 7.1 and 7.2 of these Rules.

RULE 7.5:     MISCELLANEOUS PROVISIONS CONCERNING "TAG-ALONG ACTIONS"

(a)     Potential "tag-along actions" filed in the transferee district require no action on the part of the Panel and requests for assignment of such actions to the Section 1407 transferee judge should be made in accordance with local rules for the assignment of related actions.

(b)     Upon learning of the pendency of a potential "tag-along action" and having reasonable anticipation of opposition to transfer of that action, the Panel may direct the Clerk of the Panel to file a show cause order, in accordance with Rule 7.3 of these Rules, instead of a conditional transfer order.

(c)     Failure to serve one or more of the defendants in a potential "tag-along action" with the complaint and summons as required by Rule 4 of the Federal Rules of Civil Procedure does not preclude transfer of such action under Section 1407. Such failure, however, may be submitted by such a defendant as a basis for opposing the proposed transfer if prejudice can be shown. The inability of the Clerk of the Panel to serve a conditional transfer order on all plaintiffs or defendants or their counsel shall not render the transfer of the action void but can be submitted by such a party as a basis for moving to remand as to such party if prejudice can be shown.

(d)     A civil action apparently involving common questions of fact with actions under consideration by the Panel for transfer under Section 1407, which was either not included in a motion under Rule 7.2 of these Rules, or was included in such a motion that was filed too late to be included in the initial hearing session, will ordinarily be treated by the Panel as a potential "tag-along action."

(e)     Any party or counsel in actions previously transferred under Section 1407 or under consideration by the Panel for transfer under Section 1407 shall promptly notify the Clerk of the Panel of any potential "tag-along actions" in which that party is also named or in which that counsel appears.

EXHIBIT B

LEXSEE 771 F. SUPP. 415

Caution
As of: Jan 25, 2007

**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

**Docket No. 875**

**JUDICIAL PANEL OF MULTIDISTRICT LITIGATION**

*771 F. Supp. 415; 1991 U.S. Dist. LEXIS 9901*

**July 29, 1991, Filed**

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Venue > Multidistrict Litigation*
[HN1] See *28 U.S.C.S. § 1407*(a).

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Venue > Multidistrict Litigation*
*Torts > Wrongful Death & Survival Actions > Joinder Requirements*
[HN2] The Judicial Panel of Multidistrict Litigation must weigh the interests of all the plaintiffs and all the defendants, and must consider multiple litigation as a whole in the light of the purposes of the law to centralize pending federal cases.

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Venue > Multidistrict Litigation*
*Civil Procedure > Judicial Officers > Judges > General Overview*
[HN3] The language of the first sentence of *28 U.S.C.S. § 1407*(b) is quite clear about the proper forum for resolution of merit issues - coordinated or consolidated pretrial proceedings shall be conducted by a judge or judges to whom such actions are assigned by the Judicial Panel of Multidistrict Litigation (the panel). The panel does not have neither the power nor the disposition to direct the transferee court in the exercise of its powers and discretion in pretrial proceedings. J.P.M.L.R.P. 14.

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Venue > Multidistrict Litigation*
[HN4] If a transferee court deems remand of any transferred claims or actions appropriate, the transferee court can communicate to the Judicial Panel of Multidistrict Litigation (the panel), and the panel will accomplish remand with a minimum of delay.

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Judicial Officers > Judges > General Overview*
*Governments > Courts > Judges*
[HN5] *28 U.S.C.S. § 1407*(b) contemplates that multidistrict litigation be conducted by a judge or judges. It further expressly provides that upon request of the panel, a circuit judge or a district judge may be designated and assigned temporarily for service in the transferee district by the Chief Justice of the United States or the chief judge of the circuit, as may be required, in accordance with the provisions of chapter 13 of the title. The Judicial Panel of Multidistrict Litigation expresses its willingness to appoint additional transferee judges in litigants whose size and complexity make it difficult for the original transferee judge to handle *28 U.S.C.S. § 1407* proceedings alone.



Case MDL No. 875   Document 4960   Filed 02/05/07   Page 29 of 138

Page 2

771 F. Supp. 415, *; 1991 U.S. Dist. LEXIS 9901, **

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Venue > Multidistrict Litigation*
[HN6] J.P.L.M.R.P. 13(e) provides that any party or counsel in actions previously transferred under *28 U.S.C.S. § 1407* or under consideration by the Judicial Panel of Multidistrict Litigation (the panel) for transfer under § 1407 shall notify the clerk of the panel of any potential "tag-along actions" in which that party is also named or in which that counsel appears.

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Venue > Multidistrict Litigation*
[HN7] The Judicial Panel of Multidistrict Litigation's authority under *28 U.S.C.S. § 1407* is to transfer for "pretrial" proceedings.

**JUDGES:** [**1]

John F. Nangle, Chairman, S. Hugh Dillin, * Milton Pollack, * Louis H. Pollak, Halbert O. Woodward, Robert R. Merhige, Jr., and William B. Enright, Judges of the Panel.

* Judges Dillin and Pollack did not participate in the decision of this matter.

**OPINION BY:**

NANGLE

**OPINION:**

[*416] *OPINION AND ORDER*

Judge Nangle, Chairman, Delivered the Opinion of the Panel, in which Judges Pollak, Woodward, Merhige and Enright joined.

On January 17, 1991, the Panel issued an order to show cause why all pending federal district court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos should not be centralized in a single forum under *28 U.S.C. § 1407*. Because of the difficulty in serving this order on the enormous number of parties in this docket, the Panel relied on the clerks of all district courts to serve the parties to actions in their respective districts. n1 As a result, the parties to the 26,639 actions pending in 87 federal districts and listed on the following Schedule A are subject to the Panel's order. n2 More than 180 pleadings have been filed in response to the Panel's order, and a four hour hearing on the question of transfer was held on May 30, 1991 [**2] in New York City, at which time 37 counsel presented oral argument. In many instances the attorneys filing these pleadings or participating in oral argument were representing the views of large groups of parties.

n1 It appears that the only districts with pending asbestos actions that did not effect service of the Panel's order are the Eastern District of Wisconsin and the District of Rhode Island. In view of the Panel's disposition of this docket, the actions pending there will be treated as potential tag-along actions in accordance with the Panel's Rules. See *Rules 12 and 13, R.P.J.P.M.L., 120 F.R.D. 251, 258-59 (1988)*.

n2 The Statistical Division of the Administrative Office of the United States Courts reports that as of March 31, 1991, nearly 31,000 actions were pending in federal districts. Based on Panel communications with courts throughout the country, the approximately 4,000 pending actions not embraced by the present order likely include actions that, as of January 17, 1991, were overlooked, in trial or already at least partially tried but not yet statistically closed because, inter alia, claims against one or more defendants were stayed under the Bankruptcy Code.

[**3]

Supporting transfer are plaintiffs in approximately 17,000 actions (including a core group of more than 14,000 plaintiffs represented by over 50 law firms) and 30 defendants (24 of which are named in more than 20,000 actions). Opposing transfer are plaintiffs in at least 5,200 actions and 454 defendants. The positions of those parties that have expressed a preference with respect [*417] to transferee district are varied. Many parties suggest centralization in what amounts to their home forum. The Eastern District of Pennsylvania is the district either expressly favored or not objected to in the greatest number of pleadings. The Eastern District of Texas, which is the choice of the aforementioned core group of 14,000 plaintiffs, is also the district that has generated the most opposition from defendants. Other suggested districts that go beyond the home forum approach are the District of the District of Columbia, the Eastern District of Louisiana, the Northern District of Ohio, and the Eastern District of New York. Some parties' forum recommendations are expressed in the form of a suggested individual transferee judge or transferee judge structure.

On the basis of the papers filed and the [**4] hearing held, the Panel finds that the actions in this litigation involve common questions of fact relating to injuries or wrongful death allegedly caused by exposure to asbestos

Case MDL No. 875   Document 4960   Filed 02/05/07   Page 30 of 138

Page 3

771 F. Supp. 415, *; 1991 U.S. Dist. LEXIS 9901, **

or asbestos containing products, and that centralization under § 1407 in the Eastern District of Pennsylvania will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation.

### DISCUSSION

Any discussion of § 1407 transfer in this docket must begin with the recognition that the question does not arise in a vacuum. Indeed, the impetus for the Panel's order to show cause was a November 21, 1990 letter signed by eight federal district judges responsible for many asbestos actions in their respective districts. n3 These judges, citing the serious problem that asbestos personal injury litigation continues to be for the federal judiciary, requested that the Panel act on its own initiative to address the question of § 1407 transfer. Furthermore, as the title of this docket suggests, this is the sixth time that the Panel has considered transfer of asbestos litigation. On the five previous occasions (1977, 1980, 1985, 1986 and 1987) that the Panel considered [**5] the question, it denied transfer in each instance. n4

n3 The signatories to this letter are Judges Walter J. Gex, III (S.D.Miss.), Thomas D. Lambros (N.D. Ohio), Alan H. Nevas (D. Conn.), Richard A. Schell (E.D.Tx.), Charles Schwartz, Jr. (E.D.La.), Charles R. Weiner (E.D.Pa.), Charles R. Wolle (S.D. Iowa) and Rya W. Zobel (D.Mass.). Additionally, Judge Jack B. Weinstein (E.D.N.Y.) has contacted the Panel staff and requested that he also be considered a signatory to the letter.

n4 *In re Asbestos and Asbestos Insulation Material Products Liability Litigation, 431 F. Supp. 906 (J.P.M.L. 1977);* In re Asbestos Products Liability Litigation (No. II), MDL-416 (J.P.M.L. March 13, 1980) (unpublished order); *In re Asbestos School Products Liability Litigation, 606 F. Supp. 713 (J.P.M.L. 1985);* In re Ship Asbestos Products Liability Litigation, MDL-676 (J.P.M.L. Feb. 4, 1986) (unpublished order); and In re Leon Blair Asbestos Products Liability Litigation, MDL-702 (J.P.M.L. Feb. 6, 1987) (unpublished order).

[**6]

The Panel's constancy is not as dramatic as a mere recitation of the denials might suggest, however. The 1986 and 1987 dockets considered by the Panel involved only five and two actions, respectively. The 1985 Panel decision pertained not to personal injury/wrongful death

asbestos actions but rather to property damage claims of school districts that incurred significant costs in removing asbestos products from school buildings. The denial in the 1980 Panel docket was based almost exclusively on the movants' failure to offer any distinctions that would warrant a disposition different from the Panel's first asbestos decision in 1977.

It is only in the 1977 decision, pertaining to 103 actions in nineteen districts, that the Panel offered any detailed analysis of its asbestos litigation reasoning with respect to asbestos personal injury/wrongful death actions. In that decision, the Panel first listed the primary arguments of the responding parties that unanimously opposed transfer: advanced stage of proceedings in many of the actions; use of voluntary coordinating arrangements in several districts; lack of commonality among defendants and plaintiffs; circumstances of exposure predominantly [**7] unique to each action; individual questions of causation in each action; predominantly individual questions of the liability of each defendant in each action; [*418] local issues predominating in the discovery process; absence of possibility of inconsistent or overlapping class certifications; and the readily discernible nature of the principal area common to all actions, the state of medical and scientific knowledge at a particular time regarding the health hazards posed by exposure to asbestos.

In denying transfer in the 1977 decision, the Panel recognized the existence of some common questions of fact among the actions. For that docket, as in the matter currently before the Panel, all actions contained allegations of personal injury or death as a result of exposure to asbestos or asbestos containing products. The Panel nevertheless held that the other criteria for § 1407 transfer were not satisfied. In relevant part, the Panel stated:

> Many factual questions unique to each action or to a group of actions already pending in a single district clearly predominate, and therefore transfer is unwarranted. . . . Furthermore, many of these actions already are well advanced. Some of the actions [**8] have been pending for up to four years, and trial dates or discovery cutoff dates have been set in several actions. Under these circumstances, transfer would not further the purposes of Section 1407.

*In re Asbestos and Asbestos Insulation Material Products Liability Litigation, 431 F. Supp. 906, 910 (J.P.M.L. 1977).*

Case MDL No. 875   Document 4960   Filed 02/05/07   Page 31 of 138

Page 4

771 F. Supp. 415, *; 1991 U.S. Dist. LEXIS 9901, **

Many of the parties presently opposing transfer in this docket rely on the facts and reasoning of the Panel's 1977 transfer decision. They insist that the situation that warranted denial then not only still prevails but has been magnified by the greatly increased number of actions and parties in federal asbestos personal injury/wrongful death litigation -- more than 30,000 pending federal actions now, as opposed to the 103 actions subject to the Panel's 1977 decision. In our view, it is precisely this change that now leads us to conclude that centralization of all federal asbestos personal injury/wrongful death actions, in the words of 28 U.S.C. § 1407(a), "[HN1] will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." In short, we are persuaded that this litigation has reached a magnitude, not [**9] contemplated in the record before us in 1977, that threatens the administration of justice and that requires a new, streamlined approach.

The Panel is not the first to reach such a conclusion. Just this past March 1991, the Judicial Conference Ad Hoc Committee on Asbestos Litigation, whose members were appointed by Chief Justice William H. Rehnquist, stated as follows:

The committee has struggled with the problems confronting the courts of this nation arising from death and disease attributable to airborne asbestos industrial materials and products. The committee has concluded that the situation has reached critical dimensions and is getting worse. What has been a frustrating problem is becoming a disaster of major proportions to both the victims and the producers of asbestos products, which the courts are ill-equipped to meet effectively.

After extensive study, the Institute for Civil Justice of the Rand Corporation in 1985 observed, with respect to how the civil justice system handles asbestos claims, that --

The picture is not a pretty one. Decisions concerning thousands of deaths, millions of injuries, and billions of dollars are entangled in a litigation system whose strengths [**10] have increasingly been overshadowed by its weaknesses.

The ensuing five years have seen the picture worsen: increased filings, larger backlogs, higher costs, more bankruptcies and poorer prospects that judgments - if ever obtained - can be collected.

It is a tale of danger known in the 1930s, exposure inflicted upon millions of Americans in the 1940s and 1950s, injuries that began to take their toll in the 1960s, and a flood of lawsuits beginning in the 1970s. On the basis of past and current filing data, and because of a latency period that may last as long as 40 years for some asbestos related diseases, [*419] a continuing stream of claims can be expected. The final toll of asbestos related injuries is unknown. Predictions have been made of 200,000 asbestos disease deaths before the year 2000 and as many as 265,000 by the year 2015.

The most objectionable aspects of asbestos litigation can be briefly summarized: dockets in both federal and state courts continue to grow; long delays are routine; trials are too long; the same issues are litigated over and over; transaction costs exceed the victims' recovery by nearly two to one; exhaustion of assets threatens and distorts the process; and [**11] future claimants may lose altogether.

Report of The Judicial Conference Ad Hoc Committee on Asbestos Litigation, 1-3 (1991) (footnote omitted) (hereinafter Asbestos Committee Report). The Committee pointed out that presently in the federal system nearly two new asbestos actions are being filed for every action terminated, and that at the current rate, there will be more than 48,000 actions pending in the federal courts at the end of three years. Asbestos Committee Report, supra, at 8.

The Committee also discussed the ongoing change in the demographics of asbestos litigation in the federal courts:

In 1984, when the Federal Judicial Center held its first asbestos conference, asbestos litigation in the federal courts was largely concentrated in only four district courts. Since that time, however, asbestos cases have infiltrated virtually every federal district. Asbestos litigation must therefore be viewed as a national problem rather than merely a local or regional one, especially with the number of Americans affected.

Case MDL No. 875   Document 4960   Filed 02/05/07   Page 32 of 138

Page 5

771 F. Supp. 415, *; 1991 U.S. Dist. LEXIS 9901, **

Asbestos Committee Report, supra, at 9 (footnote omitted).

Conclusions similar to those of the Judicial Conference Asbestos Committee have also been [**12] reached by judges actively involved in asbestos litigation. In perhaps the most recent comprehensive review of asbestos litigation, Judge Jack B. Weinstein (E.D.N.Y.) observed:

> The large number of asbestos lawsuits pending throughout the country threatens to overwhelm the courts and deprive all litigants, in asbestos suits as well as other civil cases, of meaningful resolution of their claims. . . . Several commentators have recounted the inefficiencies and inequities of case-by-case adjudication in the context of mass tort disasters. See, e.g., Rosenberg, Class Actions for Mass Torts: Doing Individual Justice by Collective Means, *62 Ind. L.J. 561 (1987);* Trends in Asbestos Litigation (Federal Judicial Center 1987); Rubin, Mass Torts and Litigation Disasters, *20 Ga. L. Rev. 429 (1986);* Note, Class Certification in Mass Accident Cases Under Rule 23(b)(1), *96 Harv. L. Rev. 1143 (1983);* Comment, Federal Mass Tort Class Actions: A Step Toward Equity and Efficiency, *47 Alb. L. Rev. 1180 (1983).*

> The heyday of individual adjudication of asbestos mass tort lawsuits has long passed. See [Asbestos Committee [**13] Report], supra, at 7 ("one point on which plaintiffs' counsel, defense counsel and the judiciary can agree is that the present way in which we have attempted to resolve asbestos cases has failed"). The reasons are obvious: the complexity of asbestos cases makes them expensive to litigate; costs are exacerbated when each individual has to prove his or her claim de novo; high transaction costs reduce the recovery available to successful plaintiffs; and the sheer number of asbestos cases pending nationwide threatens to deny justice and compensation to many deserving claimants if each claim is handled individually. The backlog is eroding a fundamental aspiration of our judicial system to provide equality of treatment for similarly situated persons. Cf. [Asbestos in the Courts: The Chal-

lenge of Mass Toxic Torts (RAND, Inst. of Social Justice 1985)], supra, at 12 (recent wave of asbestos litigation marked by high concentration of claims, dominance of characteristics of individual asbestos cases, behavior of parties, lawyers and the attributes of judges "created a situation in which dispositions are [*420] slow, costs are high, and outcomes are variable").

> Overhanging this massive [**14] failure of the present system is the reality that there is not enough available from traditional defendants to pay for current and future claims. Even the most conservative estimates of future claims, if realistically estimated on the books of many present defendants, would lead to a declaration of insolvency -- as in the case of some dozen manufacturers already in bankruptcy.

In re Johns-Manville Corporation, et al., No. 90-3973, slip op. at 61-63 (E.D.N.Y. May 16, 1991).

Given the dimensions of the perceived problem in federal asbestos litigation, it is not surprising that no ready solution has emerged. The Judicial Conference Asbestos Committee concluded that the only true solution lies in Congressional legislation. Nevertheless, it stressed that "at the same time, or failing congressional action, the federal judiciary must itself act now to achieve the best performance possible from system under current law." Asbestos Committee Report, supra, at 4. The Committee also noted that the Panel's order to show cause was pending at the time of the issuance of the Committee's report. The Committee observed that "this committee, by its recommendations, does not intend to affect [**15] or restrict in any way the actions of the Panel under *28 U.S.C. § 1407* or reduce the Panel's jurisdiction or authority." Id. at 22. n5

> n5 The Committee also observed that, in the interest of centralizing asbestos claims to the greatest extent possible, the Panel's authority "could be expanded to allow the Panel to transfer actions for trial as well as for pretrial proceedings." Asbestos Committee Report, supra, at 31.

It is against this backdrop that the Panel's decision and role in this litigation must be understood. First of all, our decision to order transfer is not unmindful of the fact that the impact of asbestos litigation varies from district

Case MDL No. 875   Document 4960   Filed 02/05/07   Page 33 of 138

Page 6

771 F. Supp. 415, *; 1991 U.S. Dist. LEXIS 9901, **

to district, and that in some courts asbestos personal injury actions are being resolved in a fashion indistinguishable from other civil actions. It is not surprising, therefore, that parties and courts involved in such actions might urge that inclusion of their actions in multidistrict proceedings is inappropriate. [HN2] The Panel, however, must weigh the interests of [**16] all the plaintiffs and all the defendants, and must consider multiple litigation as a whole in the light of the purposes of the law. *In re Multidistrict Private Civil Treble Damage Litigation Involving Library Editions of Children's Books, 297 F. Supp. 385, 386 (J.P.M.L. 1968).* It is this perspective that leads us to conclude that centralization in a single district of all pending federal personal injury and wrongful death asbestos actions is necessary.

Much of the argument presented to the Panel in response to its order to show cause is devoted to parties' differing (and often inconsistent) visions of § 1407 proceedings: 1) some plaintiffs see centralized pretrial proceedings as a vehicle leading to a single national class action trial or other types of consolidated trials on product defect, state of the art and punitive damages, while many defendants staunchly oppose such a trial, favor a reverse bifurcation procedure where actual damages and individual causation are tried before liability, and hope to use § 1407 proceedings to effect the severance of claims for punitive damages through a transferee court order directing that, upon the return of any case to its [**17] transferor district, such claims not be tried until claims for compensatory damages have been resolved in all federal cases; 2) some parties hope to persuade the transferee court to establish case deferral programs for plaintiffs who are not critically ill, or who have been exposed to asbestos but do not presently show any signs of impairment (i.e., pleural registries), while many plaintiffs assert that such procedures are unfair or unconstitutional; 3) in response to the pressing concern about transaction costs in this litigation, some defendants consider § 1407 transfer necessary in order to provide a single federal forum in which limits on plaintiffs' contingent fees can be addressed, while some plaintiffs maintain that transfer is necessary to prevent [*421] the depletion of defendants' limited insurance coverage by defense costs incurred in multiple districts; 4) some plaintiffs and defendants urge that transfer is necessary in order to develop through discovery proceedings nationwide product data bases on all asbestos products and corporate histories of all asbestos defendants, while other plaintiffs and defendants contend that such efforts would be of no utility and are simply designed [**18] to shift liability; 5) some plaintiffs are suggesting that defendants' finances are so fragile as to require limited fund class action determinations pursuant to *Fed.R.Civ.P. 23(b)(1)(B)*, while other plaintiffs resist any attempt to restrict their right to pursue punitive damages; 6) some parties anticipate that a

single transferee court would speed up case disposition and purge meritless claims, while others expect a system of spacing out claims so as not to overwhelm currently solvent defendants' cash flow and drive them into bankruptcy; and 7) some parties contend that single transferee court is necessary for the purpose of exploring the opportunities for global settlements or alternative dispute resolution mechanisms, while other parties assert that such hopes are utopian at best as long as i) more than twice as many asbestos cases remain pending in state courts as in federal courts, and ii) currently stayed claims against bankrupt defendants cannot be addressed by the transferee court. n6

n6 There appears to be some confusion among the parties concerning the interaction of the provisions of the Bankruptcy Code and § 1407. Transfer under § 1407 of an action containing claims against a defendant in bankruptcy has no effect on the automatic stay provisions of the Bankruptcy Code *(11 U.S.C. § 362).* Claims that have been stayed in the transferor court remain stayed in the transferee court. The Panel, however, has never considered the pendency of such stayed claims in an action to be an impediment to transfer of the action. *28 U.S.C. § 1407*(a) authorizes the Panel to transfer only "civil actions" and not claims. The complex multidistrict litigations before the Panel have often included actions brought against multiple defendants, the claims against one or more of which have been stayed as a result of bankruptcy. To have allowed the pendency of claims against a single bankrupt defendant to preclude the transfer of actions containing claims actively being litigated against common nonbankrupt defendants would have frustrated the essential purpose of § 1407.

Some parties have urged the Panel to treat the bankruptcy reorganizations themselves as "civil actions" appropriate for transfer under § 1407 to the transferee district. The reorganization proceedings are not subject to our order to show cause, and this question is therefore not ripe for a Panel decision. We have not addressed this question before and would be reluctant to do so until: 1) the transferee court determines that other alternatives, such as coordination with the concerned bankruptcy courts, are insufficient to accomplish the goals of § 1407; and 2) other suggested means of transferring the bankruptcy reorganizations or relevant portions thereof have been fully explored by the transferee court and the concerned bankruptcy courts.

Case MDL No. 875   Document 4960   Filed 02/05/07   Page 34 of 138

Page 7

771 F. Supp. 415, *; 1991 U.S. Dist. LEXIS 9901, **

Finally, we note that to the extent that state court actions and bankruptcy proceedings are excluded from the ambit of the Panel's transfer decision, transfer will nonetheless have the salutary effect of creating one federal court with which such proceedings can be coordinated, to the extent deemed desirable by the concerned courts. Indeed, state court judges have communicated to the Panel that coordination among state courts and a single transferee court for the federal actions is an objective worthy of pursuit.

[**19]

We enumerate these issues not for the purpose, as some parties seemingly misunderstand, of passing on their merits. [HN3] The language of the first sentence of paragraph (b) of § 1407 is quite clear about the proper forum for resolution of such issues -- "coordinated or consolidated pretrial proceedings *shall* be conducted by a judge or judges to whom such actions are assigned" by the Panel (emphasis added). The Panel has neither the power nor the disposition to direct the transferee court in the exercise of its powers and discretion in pretrial proceedings. *In re Plumbing Fixture Cases, 298 F. Supp. 484, 489 (J.P.M.L. 1968).*

We cite these issues only as illustrations of 1) the types of pretrial matters that need to be addressed by a single transferee court in order to avoid duplication of effort (with concomitant unnecessary expenses) by the parties and witnesses, their counsel, and the judiciary, and in order to prevent inconsistent decisions; n7 and 2) why, at [*422] least initially, all pending federal personal injury or wrongful death asbestos actions not yet in trial must be included in § 1407 proceedings. For example, if, as some courts, parties and commentators have [**20] suggested, there are insufficient funds to fairly compensate all deserving claimants, this should be determined before plaintiffs in lightly impacted districts go to trial and secure recoveries (often including punitive damages) at the possible expense of deserving plaintiffs litigating in districts where speedy trial dates have not been available. Similarly, if there are economies to be achieved with respect to remaining national discovery, pretrial rulings or efforts at settlement, these should be secured before claims against distinct types or groups of defendants are separated out of the litigation. Finally, because many of the arguments of parties seeking exclusion from transfer are intertwined with the merits of their claims or defenses and affect the overall management of this litigation, we are unwilling, on the basis of the record presently before us, to carve out exceptions to transfer. We prefer instead to give the transferee court the opportunity to conduct a substantive review of such contentions and how they affect the whole proceedings.

n7 We note that to the extent any of these pretrial decisions are subject to appellate review pursuant to interlocutory appeal or writ of mandamus, § 1407 transfer will also help to minimize the potential for inconsistent decisions from courts of appeals.

[**21]

It may well be that on further refinement of the issues and close scrutiny by the transferee court, some claims or actions can be remanded in advance of the other actions in the transferee district. [HN4] Should the transferee court deem remand of any claims or actions appropriate, the transferee court can communicate this to the Panel, and the Panel will accomplish remand with a minimum of delay. See *Rule 14, R.P.J.P.M.L., 120 F.R.D. 251, 259-61 (1988).* n8 We add that for those parties urging that resolution of this litigation lies primarily in the setting of firm, credible trial dates, § 1407 transfer may serve as a mechanism enabling the transferee court to develop a nationwide roster of senior district and other judges available to follow actions remanded back to heavily impacted districts, for trials in advance of when such districts' overburdened judges may have otherwise been able to schedule them.

n8 Those parties who may seek early remand of their actions or claims are reminded of i) Panel Rule 14(d)'s expression of the Panel's reluctance to order remand absent a suggestion of remand from the transferee judge, and ii) the special affidavit requirement of that *Rule. 120 F.R.D. at 260.* See also *In re Holiday Magic Securities and Antitrust Litigation, 433 F. Supp. 1125, 1126 (J.P.M.L. 1977).*

[**22]

We remain sensitive to the concerns of some parties that § 1407 transfer will be burdensome or inconvenient. We note that since § 1407 transfer is primarily for pretrial, there is usually no need for the parties and witnesses to travel to the transferee district for depositions or otherwise. See, e.g., *Fed.R.Civ.P. 45(d)(2).* Furthermore, the judicious use of liaison counsel, lead counsel and steering committees will eliminate the need for most counsel ever to travel to the transferee district. See Manual for Complex Litigation, Second, § 20.22 (1985). n9 And it is most logical to assume that prudent counsel will combine their forces and apportion their workload in order to streamline the efforts of the parties and witnesses, their counsel, and the judiciary, thereby effectuating an overall savings of cost and a reduction of incon-

Case MDL No. 875   Document 4960   Filed 02/05/07   Page 35 of 138

Page 8

771 F. Supp. 415, *; 1991 U.S. Dist. LEXIS 9901, **

venience to all concerned. See *In re Nissan Motor Corporation Antitrust Litigation, 385 F. Supp. 1253, 1255 (J.P.M.L. 1974)*. Hopefully, combining such practices with a uniform case management approach will, in fact, lead to sizeable reductions in transaction costs (and especially in attorneys' fees).

> n9 Liaison counsel would be called upon by the Panel to distribute future Panel orders regarding tag-along actions and any other matters to their liaison group as contemplated in Panel Rule 8(e). *R.P.J.P.M.L., supra, 120 F.R.D. at 255.*

[**23]

In a docket of this size and scope, no district emerges as the clear nexus where centralized pretrial proceedings should be conducted. The Panel has decided to centralize this litigation in the Eastern District of Pennsylvania before Judge Charles R. Weiner. We note that: 1) more asbestos personal injury or wrongful death actions [*423] are pending in that district than any other; 2) the court there has extensive experience in complex litigation in general and asbestos litigation in particular; and 3) the court has graciously expressed its willingness to assume the responsibility for this massive undertaking. Furthermore, in the person of Judge Weiner the Panel finds a judge thoroughly familiar with the issues in asbestos litigation, a track record of accomplishment and successful innovation, n10 and, on the basis of the pleadings before the Panel in which an opinion was expressed, a selection to which the majority of responding plaintiffs and defendants either expressly agree or are not opposed.

> n10 The Asbestos Committee Report, supra, noted at 15:
>
> > Judge Charles Weiner, the asbestos case manager in the Eastern District of Pennsylvania, is able to call upon over 20 active and senior judges in the district to handle asbestos cases on a priority basis. In addition to mandating standard, abbreviated pleadings, such as complaint, answer, and discovery requests, Judge Weiner meets regularly with counsel and handles on a regular basis all motions and discovery requests. Applying these sophisticated case management techniques, Judge Weiner and his

colleagues have disposed of more than 2,000 cases through 1990.

Another testament to Judge Weiner's techniques comes from the Panel pleading of certain plaintiffs already before him in the Pennsylvania district:

> The Eastern District of Pennsylvania may be unique in another respect, and that again is due to the involvement of the Court. Perhaps no other jurisdiction has had the mutual cooperation of liaison counsel who have been instrumental, together with the Court in attempting to resolve the asbestos problem. The adversary system remains, but the Court has eliminated the usual posturing of the litigants and has encouraged them to come up with programs and solutions. The classic example is the unique program established by counsel with the Court of binding arbitration through stipulated percentage of defendants' liability. The arbitrators are experts in asbestos litigation, and the medical issues are tried by submission on report. The average disposition rate is four cases in one day without judicial time.

Pleading 87, Response of Greitzer and Locks at 15.

Our reference to these passages is not meant to be an endorsement of any pretrial techniques to the exclusion of others, and in no way should be viewed as limiting Judge Weiner in his assessment of the appropriate tools to be used now that all federal personal injury/wrongful death asbestos actions will be before him for pretrial proceedings. We do consider such passages to be helpful, however, in allaying the fears of parties not familiar with Judge Weiner that § 1407 transfer will result in their actions entering some black hole, never to be seen again.

[**24]

Many parties have suggested that the dynamics of this litigation make it impractical, if not impossible, for one single judge to discharge the responsibilities of transferee judge, while other parties have emphasized

Case MDL No. 875   Document 4960   Filed 02/05/07   Page 36 of 138

Page 9

771 F. Supp. 415, *; 1991 U.S. Dist. LEXIS 9901, **

that more than a single transferee judge would dilute the judicial control needed to effectively manage the litigation. Varying suggestions have been made that the Panel appoint additional transferee judges to handle specific issues (e.g., class or limited fund determinations, discovery, settlement, claims administration, etc.), to deal with separate types of claims or defendants (e.g., maritime asbestos actions, railroad worker actions, friction materials actions, tire workers actions, etc.), or to divide the litigation along regional or circuit lines (helping to insure uniformity of decisions within each circuit pertaining, inter alia, to state law questions involved in the actions). Each of these suggestions has merit, as long as one judge has the opportunity to maintain overall control.

[HN5] Section 1407(b) contemplates that multidistrict litigation may be conducted by "a judge or judges." It further expressly provides that "upon request of the panel, a circuit judge [**25] or a district judge may be designated and assigned temporarily for service in the transferee district by the Chief Justice of the United States of the United States or the chief judge of the circuit, as may be required, in accordance with the provisions of chapter 13 of this title." And the Panel has long expressed its willingness to appoint additional transferee judges in litigants whose size and complexity make it difficult for the original transferee judge to handle § 1407 proceedings alone. See *In re Multidistrict Civil Antitrust Actions Involving Antibiotic Drugs, 320 F. Supp. 586, 588 (J.P.M.L. 1970).* We emphasize our intention to do everything without our power to provide such assistance in this docket. [*424] Before making any specific appointments, however, we deem it advisable to allow the transferee judge to make his own assessment of the needs of this docket and communicate his preferences to us.

The Panel is under no illusion that centralization will, of itself, markedly relieve the critical asbestos situation. It offers no panacea. Only through the combined and determined efforts of the transferee judge and his judicial colleagues, of the many attorneys [**26] involved in asbestos matters, and of the parties, can true progress be made toward solving the "asbestos mess." This order does offer a great opportunity to all participants who sincerely wish to resolve these asbestos matters fairly and with as little unnecessary expense as possible.

Finally, in light of the Panel's disposition in this docket, it is necessary to remind parties and counsel of their continuing responsibility with respect to transfer of potential tag-along actions, including those either inadvertently overlooked at the time of the January 17, 1991 filing of the Panel's order to show cause or filed subsequent to the issuance of the Panel's order to show cause. We note that Panel Rule 13(e) provides as follows:

[HN6] Any party or counsel in actions previously transferred under Section 1407 or under consideration by the Panel for transfer under Section 1407 shall notify the Clerk of the Panel of any potential "tag-along actions" in which that party is also named or in which that counsel appears.

*R.P.J.M.L., supra, 120 F.R.D. at 259.*

IT IS THEREFORE ORDERED that, pursuant to *28 U.S.C. § 1407,* the actions listed on the following Schedule A that are pending as of the date [**27] of this order, are not in trial, and are pending outside the Eastern District of Pennsylvania, be, and the same hereby are, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for coordinated or consolidated pretrial proceedings with the actions on Schedule A that remain pending in that district and are not in trial. n11

n11 [HN7] The Panel's authority under § 1407 is to transfer for "pretrial" proceedings; actions on Schedule A that have been resolved or are presently in trial are not intended to be within the scope of the Panel's transfer decision. Given the tremendous number of actions pending in almost every federal district, however, it is not possible for the Panel to know at any one time the current status of all actions on Schedule A. When, pursuant to § 1407(c), the clerks of the transferor district courts receive a certified copy of the MDL-875 transfer order from the clerk of the transferee district court, we request the transferor district clerks to notify the Clerk of the Panel of any actions on Schedule A in their districts that have been resolved or are in trial, so as to permit the Panel to issue a correction order excluding such actions from transfer. We also remind counsel in such actions of the requirements of Panel Rule 10(f):

With respect to any action that is the subject of Panel consideration, counsel shall notify the Clerk of the Panel of any development that would partially or completely moot the matter before the Panel.

*Id. at 257.*

[**28]

IT IS FURTHER ORDERED that Panel Rule 19(a) be, and the same hereby is, suspended for this docket. n12

n12 Panel Rule 19(a), *id. at 263,* requires clerks of transferor district courts to forward to the clerk of the transferee district court the com-

plete original file and docket sheet for each transferred action. Because of the voluminous files in this docket, we are suspending this rule. Instead, we will rely on the judgment of the transferee judge to request from the transferor district clerks or the parties whatever case files and docket sheets he needs.

[SEE SCHEDULE A IN ORIGINAL]

**EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

IN RE:  ASBESTOS LITIGATION:     )

 )

LILLIAN HARWOOD and JAMES HARWOOD,   )
her husband    )

 )

               Plaintiffs    )    C.A. No.

 )

        -vs.-    )

 )

BONDEX INTERNATIONAL INC.,    )
CERTAIN-TEED CORPORATION,    )
FORD MOTOR COMPANY,    )
FOSTER WHEELER ENERGY CORP.,    )
GARLOCK INC.,    )
GENERAL ELECTRIC COMPANY,    )
GENERAL MOTORS CORPORATION,    )
HONEYWELL INTERNATIONAL INC.,    )
INGERSOLL-RAND COMPANY,    )
JOHN CRANE, INC.,    )
METROPOLITAN LIFE INSURANCE COMPANY,    )
NORTHROP GRUMMAN CORPORATION,    )
PHILIPS ELECTRONICS NORTH AMERICA    )
      CORPORATION    )
RPM INTERNATIONAL, INC.,    )
RPM INC.,    )
T.H. AGRICULTURE & NUTRITION, L.L.C. successor   )
      to THOMPSON HAYWARD CHEMICAL CO.,   )
      INC.,    )
UNION CARBIDE CORPORATION,    )
WESTINGHOUSE ELECTRIC CORPORATION,    )
      n/k/a VIACOM, INC.    )

 )

             Defendants


**DEFENDANT NORTHROP GRUMMAN CORPORATION'S NOTICE OF REMOVAL OF ACTION FROM DELAWARE SUPERIOR COURT**



1

TO THE JUDGE OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Northrop Grumman Corporation, pursuant to 28 U.S.C. §§ 1331, 1332, 1442(a)(1), and 1446, hereby removes the above-styled action, which was initially filed in the Superior Court of the State of Delaware In And For New Castle County bearing Case No. 06C-08-224 ASB, to the United States District Court for the District of Delaware. Removal to this Court is appropriate under the federal officer removal statute and on the ground that Plaintiffs' claims involve a federal question. The grounds for removal are more particularly stated as follows:

1.  On August 24, 2006, Plaintiffs Lillian Harwood and James Harwood filed their Complaint in the Superior Court of Delaware, in and for New Castle County, naming "Northrop Grumman Corporation" (Northrop Grumman) as one of the defendants. Northrop Grumman was served with the Complaint on September 19, 2006, a copy of which is attached hereto as Exhibit "A." Nothing in the Complaint put Northrop Grumman on notice that this case was removable.

2.  Plaintiffs' Complaint contains claims based on both products liability and premises liability. With respect to the products liability claims, the Complaint contains vague and general allegations that Plaintiff Lillian Harwood was exposed to asbestos from 1952 to 1953 while working as a secretary at the Newport News Shipbuilding and Dry Dock Co. located in Newport News, Virginia. In addition, the Complaint alleges that Plaintiff, James Harwood was exposed to asbestos while working as a machinist and design specialist from 1950 to 1970 at the same Newport News facility and as an engineer at Ingall's located in Pascagoula, Mississippi from 1970 to 1994. It is further alleged that asbestos fibers carried home upon his person and clothing led to additional exposure of Lillian Harwood at the couple's homes.

3.  The Complaint does not contain the name, type or class of product to which the Plaintiffs were allegedly exposed, or which Northrop Grumman allegedly manufactured, distributed or sold. The Complaint fails to identify where and to which of Northrop Grumman's

2

products Plaintiffs were allegedly exposed, and it fails to state a specific time period when the alleged exposure to a Northrop Grumman product occurred.  With respect to the premises liability claims, Plaintiffs bring strict liability claims, among others, alleging that Northrop Grumman engaged in an ultrahazardous activity resulting in Plaintiffs' exposure to asbestos at locations in Newport News, Virginia and Pascagoula, Mississippi.

4.  Plaintiffs' August 24, 2006, Complaint was unclear as to the extent of Mr. Harwood's work history at the Newport News and Pascagoula, Mississippi facilitities and to his responsibilities regarding same, noting only that Mr. Harwood was a "machinist and design specialist" at the Newport News facility and an "engineer" while employed in Mississippi who would "on many occasions work with and around asbestos and asbestos containing products."

5.  Plaintiffs' Answers to Standard Form Interrogatories, filed on August 28, 2006, were similarly vague as to product identification and exposure history, directing the reader to "see work and exposure history forms of Lillian Harwood and James Harwood, her husband, attached hereto."

6.  A review of their respective work histories indicates that Lillian Harwood performed secretarial tasks in an office located on the Newport News Shipyard "within 100 feet of shipyard facilities."   James Harwood's employment history alleges that he worked with a number of generic asbestos containing products while working on unidentified ships, to include boilers, turbines, insulation and the like while employed at the Newport News Shipyard. A true and correct copy of Plaintiffs' Standard Form Interrogatory Responses and Referenced Employment and Work Histories are attached hereto as Exhibit "B."

7.  The work histories of Lillian and James Harwood are devoid of any reference to Northrop Grumman, a Northrop Grumman ship, or a Northrop Grumman product.

3

8. On October 2, 2006, Plaintiffs Lillian and James Harwood were deposed. At the time of deposition, Mr. Harwood testified that his work at the shipyards involved hands-on design responsibilities for U.S. Navy ships and that he worked daily on Navy helicopters and miscellaneous Navy vessels. In fact, Mr. Harwood was required to obtain a security clearance in order to conduct such work.

9. For more than a century, Northrop Grumman has designed, built, overhauled and repaired a wide variety of ships for the U.S. Navy. These ships, and each of their parts, are designed and built in accordance with U.S. Navy specifications.

10. As such, Plaintiff James Harwood's deposition transcript, which was certified and completed on October 12, 2006, served as notice that this is a civil action which may be removed pursuant to 28 U.S.C. § 1442(a)(1), the federal officer removal statute, and § 1441(b), claims involving a federal question.

11. Accordingly, this Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), which provides that the notice of removal shall be filed within thirty (30) days after receipt by the Defendant, by service or otherwise, of a paper from which it may first be ascertained that the case is one which is or has become removable.

12. Northrop Grumman, if it is deemed to be a proper party, is entitled to rely on the federal officer removal statute because: (1) Northrop Grumman was acting under the direction of a federal officer or agency; (2) Northrop Grumman has colorable federal defenses arising out of its duties to the federal government; and (3) Northrop Grumman will demonstrate that there is a causal connection between the acts they performed under color of federal office and Plaintiffs' allegations in the case at bar. *See Mesa v. California*, 489 U.S. 121, 109 S. Ct. 953, 103 L. Ed.2d 99 (1989).

13. Northrop Grumman, if it is deemed to be a proper party, is entitled to rely on the government contractor defense (also referred to as the military contractor defense), which was developed from the principle of sovereign immunity. This defense has also been described as derivative sovereign immunity. This defense is uniquely federal in nature and thus displaces state law and is governed by federal common law. *Boyle v. United Tech. Corp.*, 487 U.S. 500, 505 and 505 n.1, 108 S. Ct. 2510, 2514-15 and 2515 n.1 (1988) ("Another area that we have found to be of peculiarly federal concern, warranting the displacement of state law, is the civil liability of federal officials for actions taken in the course of their duty. We have held in many contexts that the scope of that liability is controlled by federal law. . . . [T]he liability of independent contractors performing work for the Federal Government, like the liability of federal officials, is an area of uniquely federal interest."); *Yearsly v. Ross Constr. Co.*, 309 U.S. 18, 60 S. Ct. 413, 84 L. Ed. 554 (1940). *See also Zinck v. ITT Corp.*, 690 F. Supp. 1331, 1333 (S.D.N.Y. 1988) ("When a contractor acts under the authority and direction of the United States, it shares in the immunity enjoyed by the Government. . . . The application of this principle in a military context is even more sound because the government contractor defense serves not only the historic purpose, but it promotes and protects both the separation of powers and the military procurement process.").

14. The government contractor defense results in preemption of Plaintiffs' claims and shields Northrop Grumman from any liability for injuries arising from any exposure to asbestos while on the Newport News premises. *See Boyle*, 487 U.S. at 505-06, 108 S. Ct. at 2514-15; *Yearsly*, 309 U.S. at 20-21, 60 S. Ct. at 414 ("[I]t is clear that if [the] authority to carry out the project was validly conferred, that is, if what was done was within the Constitutional power of Congress, there is no liability on the part of the contractor for executing its will."); *City of Worcester v. HCA Mgmt Co.*, 753 F. Supp. 31, 37-38 (D. Mass. 1990) ("The Supreme Court has long held that, pursuant to sovereign immunity, a private company which contracts with the federal government to perform the duties of the government will not be held liable for its actions

on behalf of the government."). If it is deemed to be a proper party, Northrop Grumman can prove that they followed detailed instructions and specifications provided by the United States Navy in providing services at Newport News, and the services it performed conformed to those instructions and specifications.

15. Plaintiffs' allegation that Northrop Grumman is strictly liable for alleged ultra-hazardous activity does not change the analysis here.

> Although the plaintiff's [strict liability] claim is against private contractors and not against the government, it is important to remember that strict liability claims are based upon the ultrahazardous nature of the activity and not upon the reasonableness of the defendants' conduct while engaged in that activity. Therefore, even though the government is not a defendant in this case, the strict liability claim is, in reality, based upon the government's operation of the [premises]. As a result it would thwart the government's retained immunity against strict liability if the plaintiffs were allowed to pursue this type of claim against the contractors.

*Lamb v. Martin Marietta Energy Sys., Inc.*, 835 F. Supp. 959, 971 (W.D. Ky. 1993).

16. The federal officer removal statute is not narrow or limited, and it should not be frustrated by a narrow interpretation of § 1442(a)(1). *Willingham v. Morgan*, 395 U.S. 402, 405; 89 S. Ct. 1813, 23 L. Ed. 2d 396 (1960).

17. Northrop Grumman is not required to notify and obtain consent of any other defendant in the action in order to remove Plaintiffs' action as a whole under 28 U.S.C. § 1442(a)(1) because the statute is jurisdictional in nature. *Ely Valley Mines Inc. v. Hartford Accident Indemnity Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981); *National Audubon Society v. Department of Water & Power of the City of Los Angeles*, 496 F. Supp. 499, 509 (E.D. Cal. 1980).

18. Northrop Grumman is also entitled to remove this case on the basis of federal question pursuant to § 1331 because Plaintiffs' claims arise under the laws of the United States, as explained in *Yearsly* and *Boyle*.

6

19. Whether Plaintiffs have stated a cause of action under which a military contractor can be liable or whether such claims are preempted is a uniquely federal issue that invokes this Court's jurisdiction pursuant to § 1331. *See Boyle*, 487 U.S. at 505, 108 S. Ct. at 2514-15.

20. Northrop Grumman reserves the right to amend or supplement this Notice of Removal.

21. Northrop Grumman reserves all defenses, including, without limitation, the defense of lack of personal jurisdiction.

22. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on all parties and filed with the Prothonotary of the Superior Court of the State of Delaware, in and for New Castle County.

23. A Notice of Tag-Along Action, identifying the coordinated pre-trial proceedings in the Eastern District of Pennsylvania (In Re Asbestos Products Liability Litigation, MDL Docket No. 875), to which this case may be transferred, will be filed with this Court.

24. Northrop Grumman has attached those documents required by 28 U.S.C. § 1446(a) as Exhibit A.

WHEREFORE, PREMISES CONSIDERED, Defendant Northrop Grumman Corporation notes the removal of this action to this Court on the 1st day of November, 2006.

ELZUFON AUSTIN REARDON
TARLOV & MONDELL, P.A.

*/s/ Mark L. Reardon*
MARK L. REARDON (DE #2627)
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, Delaware 19899
(302) 428-3181

NANCY SHANE RAPPAPORT (DE #3428)
DLA Piper US LLP
1650 Market Street, Suite 4900
Philadelphia, PA 19103
(215) 656-3357

Attorneys for Defendant
Northrop Grumman Corporation

Date:  November 1, 2006
G:\Docs\CLIENT\1407\17691\pleading\00366815.DOC

EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN RE:  ASBESTOS LITIGATION:           )
                                       )
LILLIAN HARWOOD and                    )
JAMES HARWOOD,                         )
her husband                            )
                                       )
           Plaintiffs           )      Case No. 1:06-cv-00673
                                       )
      -vs.-                    )
                                       )
BONDEX INTERNATIONAL INC. et al,       )
                                       )
      Defendants                )

---

## DEFENDANT NORTHROP GRUMMAN CORPORATION'S
## BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

---

Mark L. Reardon (DE #2627)
ELZUFON AUSTIN REARDON TARLOV &
    MONDELL, P.A.
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, Delaware 19899
(302) 428-3181

Nancy Shane Rappaport (DE #3428)
DLA PIPER US LLP
1650 Market Street, Suite 4900
Philadelphia, PA 19103
(215) 656-3357

Attorneys for Defendant
Northrop Grumman Corporation

Date:  November 20, 2006



# TABLE OF CONTENTS

Page

I.      NATURE AND STAGE OF THE PROCEEDING ........................................................... 1

II.     SUMMARY OF ARGUMENT ................................................................................. 1

III.    FACTUAL BACKGROUND .................................................................................... 3

    A.      The Complaint ......................................................................................... 3

    B.      Plaintiffs' Discovery Responses ............................................................. 4

    C.      Plaintiffs' Depositions ............................................................................ 5

    D.      U.S. Military Control Over Navy Vessels At Newport News and Ingalls ........... 6

        1.      Chain of Command ................................................................... 6

        2.      Government Contracts and Specifications.................................. 8

        3.      Ship Testing ............................................................................. 9

        4.      Military Control Over Construction, Overhaul and Repair ..................... 10

IV.     ARGUMENT....................................................................................................... 10

    A.      This Court Should Refrain From Ruling On Plaintiffs' Motion To Remand And Stay All Proceedings Pending Transfer To The MDL Court....................... 10

    B.      Northrop Grumman's Notice of Removal Was Timely Filed Because Plaintiffs' Deposition Transcript Was Its First Notice of Removability ............. 11

    C.      This Court May Consider Supplemental Facts Contained in Subsequently Filed Affidavits .................................................................................... 14

    D.      Northrop Grumman Properly Removed This Action Pursuant to Federal Officer Removal Statute 28 U.S.C. § 1442 Et Seq ............................... 15

        1.      The Federal Officer Removal Statute Provides An Independent Basis For Jurisdiction And Does Not Require Consent Of All Other Defendants ........................................................................ 15

        2.      Removal Under the Federal Officer Statute is to be Broadly Construed ................................................................................ 16

        3.      Northrop Grumman Can Satisfy Each Required Element of the Federal Officer Removal Statute ............................................... 17

            a.      Northrop Grumman is a person within the meaning of the statute ............................................................................ 17

            b.      Northrop Grumman was acting under the direction of a federal officer.................................................................... 18

            c.      Northrop Grumman can satisfy the requirement of a colorable federal defense ........................................................ 23

i

**TABLE OF CONTENTS**

Page

(1)   Northrop Grumman followed reasonably precise
specifications from the military ........................................ 24

(2)   Equipment manufactured by Northrop Grumman
conformed to military specifications ............................... 25

(3)   Military contractor defense applies to both design
defect and failure to warn claim........................................ 26

(4)   Northrop Grumman was only required to warn of
dangers known to it, but not known to the
government ..................................................................... 27

d.   Northrop Grumman can also satisfy the causal nexus
requirement of the federal officer removal statute....................... 28

E.   This Case Should Remain, In Its Entirety, In Federal Court ............................... 29

V.   CONCLUSION............................................................................................................. 30

## TABLE OF AUTHORITIES

**Cases**

*Akin v. Ashland Chem. Co.,*
156 F. 3d 1030, 1035 (10th Cir. 1998) ............................................................................ 15, 17

*Akin v. Big Three Industries, Inc.,*
851 F. Supp. 819, 824 (E.D. Tex. 1994) ............................................................................ 12, 23

*Blackman v. Asbestos Defendants (BHC),*
1997 U.S. Dist. Lexis 17821, *5 (N.D. Cal. 1997) .................................................... 18, 21, 28

*Boyle v. United Techs. Corp.,*
487 U.S. 500, 512 (1988) ............................................................................................ 13, 24, 27

*Bradford v. Harding,*
284 F. 2d 307, 310 (2nd Cir. 1960) ........................................................................................ 15

*Carter v. Acands, Inc.,*
2002 U.S. Dist. LEXIS 24057, 2002 WL 31682352 *4-5 (E.D. Tex. 2002) ........................... 22

*Cohn v. Petsmart, Inc.,*
281 F.3d 837, 840 n.1 (9th Cir. 2002) ..................................................................................... 14

*Crocker v. Borden, Inc.,*
852 F. Supp. 1322, 1326 (E.D. La. 1994) ............................................................................... 22

*Durham v. Lockheed Martin Corp.,*
445 F.3d 1247 (9th Cir. 2006) ..................................................................................... 12, 13, 16

*Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co.,*
644 F. 2d 1310, 1315 (9th Cir. 1981) ..................................................................................... 15

*Fiedt v. Owens Corning Fiberglass Corp.,*
153 F.3d 124, 127 (3d Cir. 1998) ............................................................................................ 17

*Fowler v. Southern Bell Tel. & Tel. Co.,*
343 F. 2d 150, 152 (5th Cir. 1965) ........................................................................................ 15

*Fung v. Abex Corp.,*
816 F. Supp. 569 ...................................................................................................................... 20

*Good v. Armstrong World Industries,*
914 F. Supp. 1125 (E.D. Pa. 1996) ........................................................................... 17, 21, 22

i

*Green v. A.W. Chesterton Co.*,
 366 F.Supp.2d 149 (D. Me. 2005) ........................................................................... 12

*Herbert Pack, et al. v. AC and S, Inc.*,
 838 F. Supp 1099, 1103 (Dist. Of MD 1993) ........................................................ 22

*International Insur. Co. v. Saco Def. Inc.*,
 1999 U.S. Dist. Lexis 237, *3 (N.D. Ill. 1999).............................................. 11, 12

*Kolibash v. Committee On Legal Ethics of W. VA Bar*,
 872 F.2d 571, 576 (4th Cir. 1989) ......................................................................... 17

*Lefall v. Dallas Indep. School Dist.*,
 28 F. 3d 521, 525 (5th Cir. 1994) .......................................................................... 11

*Madden v. Able Supply Co.*,
 205 F. Supp. 2d 695, 701 (S.D. Tex. 2002) ..................................................... 28, 30

*McGlasson v. Barger*,
 220 F. Supp. 938 (D. Colo. 1963).......................................................................... 14

*Mesa v. California*,
 489 U.S. 121, 124-25, 134-35, 103 L. Ed. 2d 99, 109 S. Ct. 959 (1989) ................. 17

*Miller v. Principal Life Ins. Co.*,
 189 F. Supp. 2d at 257 n.2 ............................................................................... 14, 15

*Mitchell v. AC&S Inc.*,
 Civ. Act. No. 4:04cv2713, 2004 U.S. Dist. LEXIS 29504, at *9 (E.D. Va. Dec. 15, 2004) .... 22

*Niemann v. McDonnell Douglas Corp.*,
 721 F. Supp. 1019 (S.D. Ill. 1989)................................................... 24, 25, 26, 27, 28

*Oliver v. Oshkosh Truck Corp.*,
 96 F.3d 992 (7th Cir. 1996) ............................................................. 25, 26, 27, 28

*Ryan v. Dow Chemical Co.*,
 781 F. Supp. 934, 939 (E.D. N.Y. 1992) ................................................................ 28

*Steel Valley Auth. v. Union Switch & Signal Div.*,
 809 F.2d 1006, 1010 (3d Cir. 1987) ...................................................................... 16

*Sun Buick, Inc. v. Saab Cars USA, Inc.*,
 26 F.3d 1259, 1262 (3d Cir. 1994) ........................................................................ 17

*Trevino v. General Dynamics Corp.*,
 865 F.2d 1474, 1487 (5th Cir. 1989) ..................................................................... 27

*USX Corp. v. Adriatic Ins. Co.*,
  345 F.3d 190 (3d Cir. 2003) ................................................................................................. 14

*Venezia v. Robinson*,
  16 F.3d 209, 211 (7th Cir. 1994) .......................................................................................... 24

*Western Securities Co. v. Derwinski*,
  937 F.2d 1276, 1279 (7th Cir. 1991) .................................................................................... 16

*Williams v. GE*,
  418 F. Supp. 2d 610, 615 (M.D. Pa. 2005) .......................................................................... 23

*Willingham v. Morgan*,
  395 U.S. 402, 408 n.3 (1969).................................................................................... 14, 15, 16

*Winters v. Diamond Shamrock Chemical Co.*,
  149 F.3d 387, 398 (5th Cir. 1998) ................................................................................. 17, 23

*Wisconsin v. Schaffer*,
  565 F.2d 961, 963-4 (7th Cir. 1977) ..................................................................................... 16

## Statutes

28 U.S.C. § 1367(a) ....................................................................................................... 2, 29

28 U.S.C. § 1367(c) ............................................................................................................ 29

28 U.S.C. § 1441................................................................................................................ 16

28 U.S.C. § 1442......................................................................................................... 11, 16

28 U.S.C. § 1442(a) ..................................................................................................... 21, 22

28 U.S.C. § 1442(a)(1)............................................................................ 2, 16, 17, 21, 23, 29

28 U.S.C. § 1442(a)(2)....................................................................................................... 16

28 U.S.C. § 1446(b) ...................................................................................................... 2, 11

28 USC § 1441(d) .............................................................................................................. 14

Defendant Northrop Grumman Corporation (hereinafter "Northrop Grumman") hereby opposes Plaintiffs' Motion to Remand this action to the Superior Court for New Castle County, Delaware, on the grounds that Northrop Grumman's removal of this action was both timely and proper.

## I.   NATURE AND STAGE OF THE PROCEEDING

Plaintiffs James and Lillian Harwood seek to recover for personal injury allegedly resulting from exposure to asbestos containing products during occupational and non-occupational activities. On August 24, 2006, Plaintiffs filed their Complaint, asserting both products and premises liability claims, in the Superior Court of Delaware, in and for New Castle County, naming Northrop Grumman Corporation ("Northrop Grumman") as one of many defendants. Northrop Grumman was served with the Complaint on September 19, 2006, a copy of which is attached hereto as Exhibit "A." This case was not removable on the face of the Complaint. However, upon receipt of the transcripts of Plaintiffs' deposition, Northrop Grumman was able to ascertain for the first time from any paper that the case was removable. Northrop Grumman then timely filed its Notice of Removal, and immediately thereafter filed a Motion to Stay these Proceedings pending transfer of this matter to MDL-875 for consolidated and coordinated pretrial proceedings. Plaintiffs filed a Motion to Remand this matter to state court on November 8, 2006.

## II.   SUMMARY OF ARGUMENT

This Court should refrain from ruling on Plaintiffs' Motion pending the transfer of this case to MDL-875 for consolidated and coordinated pretrial proceedings.

1

Northrop Grumman timely removed this case within 30 days from the date it received the first paper from which it could ascertain that the case was removable, namely Plaintiffs' deposition transcripts, pursuant to 28 U.S.C. § 1446(b).  Northrop Grumman properly filed a Notice of Removal, which conforms to the "less onerous standard of notice pleading."  Federal courts have made clear that Northrop Grumman is entitled to provide factual support for its removal subsequent to filing its Notice of Removal.

Northrop Grumman is entitled to have the claims against it heard in federal court because it has met the prerequisites for federal officer removal under 28 U.S.C. § 1442(a)(1). The provisions of the federal officer removal statute are to be broadly construed.  Specifically, Northrop Grumman can show that (1) it is a person within the meaning of the statute; (2) the Plaintiffs' claims are based upon its alleged conduct acting under a federal officer; (3) it has a colorable federal defense to Plaintiffs' claims; and (4) there is a causal nexus between the claims and the conduct performed under color of federal office.  Northrop Grumman is entitled to the protections of a federal defense, specifically the military contractor defense.  Plaintiffs' state law claims of products liability and strict liability for an ultrahazardous activity against Northrop Grumman are barred because Northrop Grumman can prove that (1) the United States approved reasonably precise specifications for the Navy vessels that it was building; (2) the Navy vessels conformed to those specifications; and (3) the United States knew about the dangers of asbestos, such that Northrop Grumman was not required to warn the United States.  Northrop Grumman is not required to prove that it is entitled to the military contractor defense at this stage, but rather it is only required to show a colorable defense.  Finally, after denying Plaintiffs' Motion to Remand, this Court should retain supplemental jurisdiction over this controversy in its entirety pursuant to 28 U.S.C. § 1367(a).

III.   **FACTUAL BACKGROUND**

    A.    **The Complaint**

Plaintiffs' Complaint contains claims based on both products liability and premises liability, sounding in negligence and strict liability. *See generally,* Complaint (Exh. A).  With respect to the product liability claims, the Complaint contains vague and general allegations that Plaintiff Lillian Harwood was exposed to asbestos containing products manufactured, sold, distributed, or installed by the defendants, including Northrop Grumman from 1952 to 1953 while working as a secretary at the Newport News Shipbuilding and Dry Dock Co. (hereinafter "Newport News") located in Newport News, Virginia. *Id.* at ¶ 3.  In addition, the Complaint alleges that Plaintiff James Harwood was exposed to asbestos containing products manufactured, sold, distributed, or installed by the defendants, including Northrop Grumman, while working as a machinist and design specialist from 1950 to 1970 at the same Newport News facility and as an engineer at Northrop Grumman Ship Systems' Ingalls Operations (hereinafter "Ingalls") located in Pascagoula, Mississippi from 1970 to 1994.   *Id.* at ¶ 4.  It is further alleged that asbestos fibers carried home upon his person and clothing led to additional exposure of Lillian Harwood at the couple's homes. *Id.*

The Complaint does not contain the name, type, or class of product to which the Plaintiffs were allegedly exposed, or which Northrop Grumman allegedly manufactured, sold, distributed or installed.  The Complaint fails to identify where or to which of Northrop Grumman's products Plaintiffs were allegedly exposed, and it fails to state a specific time period when the alleged exposure to a Northrop Grumman product occurred.

With respect to the premises liability allegations, Plaintiffs brought both strict liability and negligence claims. *See* Complaint at ¶¶ 34-51 (Exh. A). Plaintiffs' strict liability premises claim is based on allegations that Northrop Grumman's use of asbestos on its premises amounted to an ultrahazardous activity, which resulted in James Harwood's exposure to asbestos fibers at Newport News and Ingalls. *Id.* at ¶ 40. Plaintiffs' further allege that such fibers were carried home on his person and clothing resulting in alleged exposure to Lillian Harwood *Id.* at ¶¶ 35-36. The negligence claims are based on allegations that Northrop Grumman failed to use ordinary care to see that the premises, at which Lillian Harwood's husband was rightfully present, were in a reasonably safe condition. *Id.* at ¶ 44.

### B.     Plaintiffs' Discovery Responses

Plaintiffs' Answers to Standard Form Interrogatories, filed on August 28, 2006, failed to identify any Northrop Grumman product and did not provide any details sufficient to determine that removal was proper. The Answers referenced attached "work and exposure history forms of Lillian Harwood and James Harwood, her husband." According to her work history, Lillian Harwood performed secretarial tasks in an office located on the Newport News shipyard "within 100 feet of shipyard facilities." James Harwood's employment history alleges that he worked with a number of generic asbestos containing products while working on unidentified ships, to include boilers, turbines, insulation and the like while employed at the Newport News Shipyard. A true and correct copy of Plaintiffs' Standard Form Interrogatory Responses and Referenced Employment and Work Histories are attached hereto as Exhibit "B."

Plaintiffs' Answers to Interrogatories and their work histories are devoid of any reference to Northrop Grumman, a Northrop Grumman ship, or a Northrop Grumman product. As such, Northrop Grumman had neither a basis to ascertain on which ships Mr. Harwood had worked

(whether built for private or government use) nor would the company be able to pull the pertinent contracts for their construction and any accompanying specifications regarding same to the extent they still exist.

### C.    Plaintiffs' Depositions

On October 2, 2006, Plaintiffs Lillian and James Harwood were deposed and defendants first learned, through Mr. Harwood's testimony, that his work at the Newport News shipyard involved hands-on work aboard the USS John F. Kennedy, the USS Newport News, USS Nimitz and several unidentified nuclear submarines. *See* James Harwood Deposition at 60-62, 116, attached hereto as Exhibit "C."   Mr. Harwood also indicated he had certain design responsibilities for the USS Nimitz, a nuclear vessel. *See id.* 60 (Exh. C).  Mr. Harwood's work at the Ingalls facility included work done on several landing helicopter assault ships ("LHA") and landing helicopter dock ships ("LHD") which he identified by number as being LHA 1, 2, 3, 4, 5, 6 and possibly 7 and LHD 1, 2, 3. *Id.* at 80-81 (Exh. C).  In addition, the work described above required Mr. Harwood to obtain a "nuclear security clearance" *Id.* at 58-59 (Exh. C).

The receipt of the transcript of Plaintiff James Harwood's deposition was the first paper from which Northrop Grumman could ascertain that this case was removable as it was the first time that allegations were made as to the type of asbestos containing products (namely, military ships that were designed and manufactured at the specific direction of the United States Navy) to which Mr. Harwood was exposed and the time and place where such exposure allegedly occurred.  Plaintiff's testimony made it clear that the activities that allegedly caused Plaintiffs' injuries, namely working on asbestos containing Navy vessels that purportedly later caused or contributed to the injuries claimed, occurred during Mr. Harwood's work on the USS John F. Kennedy, the USS Newport News, USS Nimitz, and various submarines (including nuclear

submarines) while at Newport News, and on several LHAs and LHDs while working at Ingalls on behalf of Northrop Grumman.

**D.     U.S. Military Control Over Navy Vessels At Newport News and Ingalls**

The primary business of Newport News is the construction of nuclear powered submarines and aircraft carriers. *See* Affidavit of Ronald Ward (hereinafter "Ward Aff.") at ¶ 5, attached hereto as Exhibit "D." Newport News has also constructed cruisers, destroyers, and other vessels for the Navy. *Id.* It overhauls and repairs all types of naval vessels and refuels nuclear powered submarines and carriers. *Id.* Newport News did not manufacture military vessels for the U.S. Navy for any purpose other than to meet the defense needs of the United States government. Ward Aff. at ¶ 19. And, the United States military asserted extensive control over the specifications for the design and manufacture of those vessels. Ward Aff. at ¶ 6.

**1.     Chain of Command**

All Navy vessels are manufactured according to plans and specifications defined exclusively by the Navy, specifically Naval Sea Systems Command ("NAVSEA"). *See* Affidavit of Bernard P. Clark (hereinafter "Clark Aff.") at ¶ 4, attached hereto as Exhibit "E;" *see also* Ward Aff. at ¶ 6. The chain of command within the Navy concerning shipbuilding involves multiple tiers of authority. Clark Aff. at ¶ 4. Foremost authority resides with, the Secretary of the Navy for Navy personnel and operations, including the construction, outfitting, and repair of naval ships. *Id.* Immediately below and reporting to the Secretary is the Assistant Secretary of the Navy (Research, Development and Acquisition), whose responsibility includes the development and acquisition of Navy ships through command of an organization that includes the Deputy Assistant Secretary of the Navy for Ship Programs. *Id.* The Deputy Assistant Secretary of the Navy for Ship Programs is the principal advisor and coordinator for the Assistant Secretary on all

matters pertaining to Navy surface ships and submarines, and she monitors and advises the Assistant Secretary on ship programs managed by NAVSEA. *Id.*

Under the command of NAVSEA, the Navy's shipbuilding organization includes several divisions responsible for ship design, manufacture, repair and inspection. Clark Aff. at ¶ 5. Technical and contractual control over shipboard equipment and material is directed by NAVSEA. *Id.* NAVSEA has oversight responsibility concerning all vessels built for the Navy. *Id.* This oversight is performed by the local Supervisor of Shipbuilding ("SupShips") office. SupShips directly monitors and manages compliance with the standards and specifications required for vessels built for the Navy. *Id.* SupShips inspectors work onsite in fulfilling their responsibilities at public sector and private sector shipyards, with Newport News as one such private sector shipyard. *Id.* SupShips responsibilities are numerous and include general surveillance of on-going work in the shipyard, inspections of in-process and final work completion as required by specifications, drawings, and/or procedures, witnessing Newport News testing, audits of Newport News' processes, approval of Newport News procedures where required by specification, and communication with Newport News regarding these issues via quality meetings and written communication. *Id.*

The Navy, specifically NAVSEA, defines the Navy's requirements for shipboard equipment and materials in detailed technical specifications that include state of the art specifications known as "MilSpecs," and any changes or revisions to those specifications are made exclusively by the Navy pursuant to formal procedures. Clark Aff. At ¶ 6. NAVSEA is responsible for defining the Navy's requirements in these specifications largely because it has superior knowledge and expertise concerning the Navy's combat and combat-ready missions and procuring particular platforms (ships) needed to fulfill these missions. *Id.*

7

In addition, Newport News is subject to the direction and control of the Office of Naval Reactors, which oversees the use of nuclear power aboard Navy vessels such as the ones boarded by Mr. Harwood. Clark Aff. At ¶ 7. The Office of Naval Reactors has an office at Newport News, the Naval Reactor Representatives Office, which monitors and provides oversight in the propulsion plant spaces aboard nuclear-powered Navy vessels. *Id.* All aspects of the development, manufacture, overhaul, repair, and testing of nuclear-powered Navy vessels are subject to this close government control. *Id; see generally* Ward Aff. at ¶ 7.

Pursuant to these defined procedures for the U.S. Navy's procurement of naval vessels, the U.S. Navy maintained an extensive level of supervision and control over the manufacture of vessels for the Navy by private sector shipyards, including Newport News. Clark Aff. At ¶ 8. NAVSEA approved the initial conceptual design for all classes of naval vessels, including the weight, size, power output, speed, and other design parameters. Ward Aff. at ¶ 8. In the design phase, as in all other phases, the U.S. Navy retained ultimate decisional authority over the design of vessels. *Id.* If a design disagreement arose between the Navy and Newport News, the Navy controlled the design adopted. All final drawings and specifications required express U.S. Navy approval and adoption. *Id.*

### 2.     Government Contracts and Specifications

The contract documents for ship construction and overhaul are extensive and detailed. The contracts often include multiple volumes of specifications and detailed drawings. Ward Aff. at ¶ 9. The specifications include or incorporate by reference provisions from an extensive set of general specifications governing all aspects of shipbuilding for the United States Navy, as well as Department of Defense or MilSpecs. *Id.* The MilSpecs incorporated several lower-level

specifications, which together totaled several thousands of pages, and included requirements for the materials to be used, including asbestos-containing materials such as thermal insulation. *Id.*

Mr. Harwood testified he worked on submarines, including nuclear submarines, when they started with the 601 class. James Harwood dep. at 61 (Exh. C). The contract, entered into between Newport News and the Bureau of Ships in 1963 for such vessels, required conformity with specifications requiring asbestos for a number of applications. *These contracts required Newport News to use asbestos onboard these ships for insulation and other purposes.* Ward Aff. at ¶¶ 10-11. (Exh. D). Indeed, documents attached hereto as Exhibit "F," prove the government required use of asbestos in various applications on the very ships on which Mr. Harwood spent time.

### 3.    Ship Testing

Once a ship was launched and outfitted, testing known as sea trials followed. The first test was called the builders trial and testing was conducted by the shipyard using its personnel, with U.S. Navy personnel on board for ship systems operations, observation and approval. Ward Aff. at ¶ 13. Following successful completion of the builder's trials, the U.S. Navy would conduct its own sea trial, called an "acceptance trial." Ward Aff. at ¶ 14. Acceptance trials were fully conducted and staffed by U.S. Navy officers, civilian employees and crew, with shipyard representatives along to observe. *Id.* Any deficiencies discovered in the construction during acceptance trials would be the responsibility of Newport News to correct. *Id.* Following the acceptance trials, the vessel was commissioned and would typically embark on a "shakedown cruise." Ward Aff. at ¶ 15. During this cruise, the operation of all components of the vessel were further evaluated and tested under the widest possible range of operating conditions. *Id.* Approximately six months after the shakedown cruise, the vessel would return to Newport News for

post-shakedown availability. *Id.* During this phase, any incomplete or warranty items would be addressed by Newport News. *Id.*

### 4.    Military Control Over Construction, Overhaul and Repair

With regard to the overhauling and refueling of the nuclear reactors on Naval vessels, the processes and level of government control over Naval construction at Newport News was essentially the same as new ship construction. Ward Aff. at ¶ 17. The specifications for material were just as detailed and were required by the Navy. *Id.* Indeed, in some instances, the level of control exercised by the Navy was greater during overhauls and refueling, which involves substantial rebuilding of major parts of the vessels. *Id.*

All construction, overhaul and repair of Navy vessels by Newport News was done in accordance with binding Navy specifications and approved exclusively by the Navy and its designated officers. Ward Aff. at ¶ 18. In order for Northrop Grumman to comply with the United States specifications for its ships, Northrop Grumman had to have such specified materials on hand, including asbestos-containing materials, for use at its shipyards. Ward Aff. at ¶ 21.

Northrop Grumman incorporates by reference all facts stated in the affidavits, contracts and specifications attached as Exhibits to this brief, as factual support of its Opposition to Remand.

## IV.   ARGUMENT

### A.    This Court Should Refrain From Ruling On Plaintiffs' Motion To Remand And Stay All Proceedings Pending Transfer To The MDL Court.

As a threshold matter, the Court should refrain from ruling on Plaintiffs' Motion pending the expected transfer of this case to MDL-875 for consolidated and coordinated pretrial proceedings. As set forth in Northrop Grumman's Motion to Stay (incorporated herein by

reference), a stay or deferral of all proceedings — including consideration of Plaintiffs' Motion — pending transfer to the MDL Court is warranted to meet the goals of uniformity and efficiency that multi-district litigation is designed to serve. If this Court declines to stay proceedings, which it should not, Plaintiffs' Motion should be denied because this case was properly removed to this court pursuant to 28 U.S.C. § 1442, the "Federal Officer Removal" statute.

**B.      Northrop Grumman's Notice of Removal Was Timely Filed Because Plaintiffs' Deposition Transcript Was Its First Notice of Removability.**

Northrop Grumman removed this case within thirty days of its receipt of a paper from which it could be ascertained that the case was removable, pursuant to 28 U.S.C. § 1446(b). When the case stated in the complaint does not indicate grounds for removal, the thirty day time limit is not triggered. 28 U.S.C. § 1446(b); *International Insur. Co. v. Saco Def. Inc.*, 1999 U.S. Dist. Lexis 237, *3 (N.D. Ill. 1999). Instead, "a notice of removal may be filed within thirty days after receipt by the defendant of a copy of an amended pleading, motion, order or *other paper* from which it may first be ascertained that the case is one which is or has become removable." *Id.* The case stated by Plaintiffs' in their initial pleading was not removable. The Plaintiffs' Answers to Interrogatories did not provide any information from which removability could have been ascertained. The receipt of the deposition transcript was the first paper from which removability could be ascertained; therefore, Northrop Grumman's removal, within thirty days of that triggering event, was timely.

Federal courts have held that there is no burden on defendants to investigate facts beyond a plaintiff's complaint to determine if a case may be removable. *See Lefall v. Dallas Indep. School Dist.*, 28 F. 3d 521, 525 (5th Cir. 1994) (rejecting argument that the thirty-day removal

clock should begin to run when a plaintiff files a pleading that is indeterminate as to removability if the defendant would know in the exercise of due diligence that the case is removable).

Indeed, Plaintiffs' argument that their Complaint was facially sufficient to trigger removal is undercut by a case cited in their own brief. *See Green v. A.W. Chesterton Co.*, 366 F.Supp.2d 149 (D. Me. 2005) (noting removal proper as first ascertainment of basis for asserting federal contractor defense came not in complaint but in supplemental interrogatory responses which identified specific Navy ships for which Westinghouse had supplied asbestos-insulated turbines pursuant to contracts with the U.S. Navy). Despite Plaintiffs' claims to the contrary, Defendants are not required to guess about what facts could possibly exist and what possible various bases for removal those dreamed up facts would create. "[T]he removal statute says that the thirty day time limit begins to run when the defendant can first ascertain that the case '*is* or *has become* removable,' not when the case may be removable." *International Insur. Co. v. Saco Def. Inc.*, 1999 U.S. Dist. Lexis 237 at *12-13. As that court explained, "[a] 'reasonable basis' standard is not sufficiently objective to guide defendants as to when they possess information sufficient to require them to act." *Id.* at 13-14. The purpose of the statute is to discourage a plaintiff from disguising the removability of his action by the artful drafting of his pleading and other papers and to prevent defendants from having to speculate as to whether the case is removable. *Akin v. Big Three Industries, Inc.*, 851 F. Supp. 819, 824 (E.D. Tex. 1994).

Illustrative of this fact is the Ninth Circuit's recent opinion in *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247 (9th Cir. 2006). The *Durham* case was also removed pursuant to the Federal Officer Removal statute and the underlying military contractor defense. Plaintiff brought suit against, *inter alia*, Lockheed Martin, for alleged exposure to asbestos during his thirty-year service as an electronics technician for the United States Air Force and Air Force

12

Reserves. *See id.* at 1249.  In his complaint, Durham listed the Air Force facilities where he worked, but did not allege which Lockheed products exposed him to asbestos.  Ten days later, Lockheed received plaintiff's answers to interrogatories.  These interrogatories for the first time disclosed the specifics of Durham's claim -- that he was exposed to asbestos while working on the SR-71 Blackbird and the C-141 Starlifter aircraft on military bases where Lockheed was a contractor.  *See id.*  Only then did Lockheed remove the matter as Durham's responses disclosed to Lockheed a basis for removing the case: namely that Lockheed assembled the aircraft while acting as an agent of a federal officer, and was therefore immune to suit as a federal contractor. Plaintiff moved to remand the case arguing Lockheed's removal was untimely in that it was filed 30 days after plaintiff's complaint. *See id.* at 1250.

The court held that until plaintiff revealed which aircraft he had worked on during his Air Force career, Lockheed couldn't assert either that its actions were taken pursuant to a federal officer's directions, or that it had a colorable federal defense. "Lockheed, like other federal military contractors, performs some activities on military bases that are protected by federal contractor immunity, and others that are not." *Id.* citing *Boyle v. United Techs. Corp.,* 487 U.S. 500, 512 (1988).  Further that "there wasn't enough information in Durham's complaint for Lockheed to discern whether its allegedly wrongful conduct was protected by federal contractor immunity." *Id.*  Had it removed upon filing of the complaint, it may well have subjected itself to fees and costs, and potentially Rule 11 sanctions, for filing a baseless notice of removal.  As such, the Court noted that it would not require defendants to take such a blind leap: "We don't charge defendants with notice of removability until they've received a paper that gives them enough information to remove." *Durham,* 445 F.3d at 1251.

13

**C.    This Court May Consider Supplemental Facts Contained in Subsequently Filed Affidavits.**

Northrop Grumman is entitled to present factual support for its removal after it has filed its Notice of Removal. First, and most simply, the federal courts require "notice" pleading. Section 1446(a) was amended to require defendants to conform to the "less onerous standard of notice pleading," and defendants are required to file only a Notice of Removal. *Miller v. Principal Life Ins. Co.,* 189 F. Supp. 2d at 257 n.2. Indeed, the 1963 case cited by Plaintiffs, *McGlasson v. Barger,* 220 F. Supp. 938 (D. Colo. 1963), is inapplicable as it analyzed the standard for a "Petition for Removal," which was required prior to the amendment of § 1446(a) in 1988.

Second, the United States Supreme Court in *Willingham v. Morgan,* 395 U.S. 402, 408 n.3 (1969), specifically allowed an affidavit to be filed in support of removal, even though it was not offered until a later proceeding. Similarly, in *USX Corp. v. Adriatic Ins. Co.,* 345 F.3d 190 (3d Cir. 2003), the Third Circuit Court of Appeals permitted the consideration of facts contained in an affidavit which were relevant to the party's jurisdictional basis for removal under 28 USC § 1441(d) that were first submitted in response to a motion to remand an insurance policy coverage case to state court.

In doing so, the Third Circuit referenced *Willingham,* noting "the Supreme Court has upheld removal where jurisdictional facts required to support the removal were found in later-filed affidavits rather than in the notice of removal." *Id.* at 206. The Court went on to note that "other courts more recently have allowed consideration of facts contained in later-filed affidavits, treating those facts as an amendment of the notice of removal under § 1653," regarding amendments of pleadings to show jurisdiction. *See id.* citing *Cohn v. Petsmart, Inc.,*

14

281 F.3d 837, 840 n.1 (9th Cir. 2002) (holding that the district court did not err in construing an affidavit setting forth the facts supporting the amount in controversy in a diversity case as an amendment under § 1653 to the notice of removal which stated summarily, without alleging any underlying facts, that the amount in controversy exceeded $ 75,000); *Miller v. Principal Life Ins. Co.*, 189 F. Supp. 2d 254, 257-58 (E.D. Pa. 2002) (holding that, even assuming that the defendant's initial removal petition was defective in that it did not state that a codefendant was only a nominal defendant, *Willingham* permitted treatment of an amended notice of removal filed more than 30 days after the filing of the original removal notice and after service of a motion to remand as an amendment of the original notice under § 1653).

These cases illustrate that this Court is not precluded from considering facts contained in affidavits, or otherwise, that are filed concurrently with Northrop Grumman's Opposition to Plaintiffs' Motion to Remand.

**D.     Northrop Grumman Properly Removed This Action Pursuant to Federal Officer Removal Statute 28 U.S.C. § 1442 Et Seq.**

**1.     The Federal Officer Removal Statute Provides An Independent Basis For Jurisdiction And Does Not Require Consent Of All Other Defendants.**

A defendant entitled to remove under § 1442 is not required to obtain the consent of other defendants. *Akin v. Ashland Chem. Co.*, 156 F. 3d 1030, 1035 (10th Cir. 1998). As that court recognized, "[t]he Congressional policy permitting federal officer removal could easily be frustrated by simply joining non-federal defendants unwilling to remove if consent of defendant(s) were required." *Id.* at 1034; *see also Bradford v. Harding*, 284 F. 2d 307, 310 (2nd Cir. 1960) (government must be able to assure each of its officers that a federal forum will be available if he wishes it, whether others wish it or no); *Fowler v. Southern Bell Tel. & Tel. Co.*, 343 F. 2d 150, 152 (5th Cir. 1965); *Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co.*,

644 F. 2d 1310, 1315 (9ᵗʰ Cir. 1981). The Federal Officer Removal Statute provides an independent basis for federal court jurisdiction; thus, removal is unaffected by the district court's lack of original jurisdiction. *Western Securities Co. v. Derwinski*, 937 F.2d 1276, 1279 (7th Cir. 1991). This is consistent with the intention of the federal officer removal statute to insure a federal forum where appropriate regardless of whether the Plaintiff could have selected such a forum. *Id.*; *Wisconsin v. Schaffer*, 565 F.2d 961, 963-4 (7th Cir. 1977).

### 2. Removal Under the Federal Officer Statute is to be Broadly Construed.

The United States Supreme Court in *Willingham v. Morgan*, 395 U.S. 402 (1969) has held that 28 U.S.C. § 1442(a)(2) is not "narrow" or "limited." *Id.* at 406. The Court explained that "Congress has decided that federal officers....require the protection of a federal forum. This policy should not be frustrated by a narrow, grudging interpretation of 28 U.S.C. § 1442(a)(1)." *Id.* at 407. *Accord* 16 MOORE'S FEDERAL PRACTICE REMOVAL § 107.15[1][b] (3d ed. 2005) ("[A]t the same time Congress has gradually restricted the right of removal under the general removal statute, it has broadened the right of removal for federal...officers."). This broad construction not only applies to federal officers, but applies with equal force to their agents as well. *See Durham vs. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006) ("We take from this history a clear command from both Congress and the Supreme Court that when federal officers, and their agents are seeking a federal forum, we are to interpret 28 U.S.C. § 1442 broadly in favor of removal.").

Similarly, the Third Circuit has drawn a distinction between the provisions of the federal officer removal statute, which are to be "broadly construed" and provisions of 28 U.S.C. § 1441, which "'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Id.* (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010

16

(3d Cir. 1987), and *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1262 (3d Cir. 1994));

*see also Kolibash v. Committee On Legal Ethics of W. VA Bar*, 872 F.2d 571, 576 (4th Cir. 1989)

(noting "the right of removal conferred by 28 U.S.C. § 1442(a)(1) is to be broadly construed.").

In light of federal law favoring removal, and as explained in additional detail below,

Northrop Grumman has satisfied 28 U.S.C. § 1442(a)(1) and, thus, Plaintiffs' motion should be

defeated.

> **3.      Northrop Grumman Can Satisfy Each Required Element of the
> Federal Officer Removal Statute.**

Within the Third Circuit, the prerequisites for Federal Officer Removal under

§1442(a)(1) are met if Northrop Grumman can show that "(1) it is a 'person' within the meaning

of the statute; (2) the plaintiff's claims are based upon the defendant's conduct 'acting under' a

federal officer; (3) it raises a colorable federal defense [to plaintiff's claims]; and (4) there is a

causal nexus between the claims and the conduct performed under color of federal office." *Fiedt

v. Owens Corning Fiberglass Corp.*, 153 F.3d 124, 127 (3d Cir. 1998); *Mesa v. California*, 489

U.S. 121, 124-25, 134-35, 103 L. Ed. 2d 99, 109 S. Ct. 959 (1989)).

> *a.      Northrop Grumman is a person within the meaning of the
> statute.*

Northrop Grumman is entitled to the protections of the statute, as corporations are

"persons" within the meaning of 28 U.S.C. § 1442(a)(1).  *See Good v. Armstrong World

Industries*, 914 F. Supp. 1125 (E.D. Pa. 1996) (recognizing Westinghouse, a corporation that

designed and manufactured turbines, was a "person" within the meaning of the federal officer

removal statute); *see also Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 398 (5th

Cir. 1998) (holding that a corporate manufacturer of Agent Orange was a "person" within the

meaning of the federal officer removal statute); *Akin*, 156 F.3d 1030 (holding that a corporate

manufacturer of chemicals used by Air Force employees met all criteria for federal officer removal); *Blackman v. Asbestos Defendants (BHC)*, 1997 U.S. Dist. Lexis 17821, *5 (N.D. Cal. 1997) (concluding that a corporation is a person under the statute).  Plaintiffs have not disputed this fact.

**b.      *Northrop Grumman was acting under the direction of a federal officer.***

The second requirement of the statute is satisfied because Northrop Grumman was acting under the direction of a federal officer, namely the Secretary of the Navy, the Navy's Supervisor of Ships, and contracting officers with the Naval Sea Systems Command (collectively "NAVSEA"), when it manufactured the Navy vessels that plaintiff has identified as well as every other Navy vessel being built during his tenure at Newport News and Ingalls.  *See* Ward Aff. at ¶¶ 6, 18 (Exh. D); Clark Aff. at ¶¶ 4, 5 (Exh. E).  Furthermore, to the extent that Plaintiffs' seek to impose strict liability on Northrop Grumman for its alleged use of asbestos on its premises, Northrop Grumman was also acting under the direction of a federal officer and was required to have available and install any material necessary to build the Naval vessels to the specifications of the Navy.

Northrop Grumman acted under the direction of a federal officer when manufacturing the military vessels upon which Plaintiff worked.  *See* Ward Aff. at ¶¶ 6, 18 (Exh. D); Clark Aff. at ¶¶ 4, 5 (Exh. E); James Harwood deposition at 60-62, 66, 118 (Exh. C).  During all phases of its construction of Naval vessels at Newport News and Ingalls, Northrop Grumman has performed its work under immediate supervision and control by NAVSEA and, with respect to nuclear-powered vessels (like the nuclear submarines on which Mr. Harwood worked), the NRRO.  *See* Ward Aff. at ¶ 18 (Exh. D); Clark Aff. at ¶ 8 (Exh. E).  *See also* Ingalls LHA Contract, attached

hereto as Exhibit "G," at 5 (stating Ingalls may not revise government contract specifications without prior concurrence by the LHA Project Manager or his designee (a government position)).

Plaintiff James Harwood himself testified to the extent of control the United States Navy asserted over not only the Newport News facility, but the specific work that he was doing and the ships he boarded. Mr. Harwood was required to have security clearance to conduct much of his work. *See* James Harwood dep. at 59, 65 (Exh. C). Navy personnel supervised numerous aspects of his work during pre-contract vessel planning and during the preparation of preconstruction drawings necessary to build a particular ship. *Id.* at 66-68. Additionally, Mr. Harwood and/or his supervisor would attend design status meetings and/or progress meetings with representatives from the naval Supervisor of Shipbuilding. *See id.* at 87.

Contracts between the military and Northrop Grumman for the very vessels on which Mr. Harwood worked required Newport News to comply with "contract terms, contract plans, and specifications. . . subject to review and approval by the Government." Ward Aff. at ¶¶ 10, 20 (Exh. D). The work Mr. Harwood performed on these ship systems was pursuant to work plans, technical manuals and other design data produced by the Navy, which were required to "be used without deviation, unless deviations are authorized by the Bureau of Ships." *Id.*

Likewise, it is beyond dispute that Newport News constructed and overhauled Navy vessels, including those on which Mr. Harwood worked, according to precise, *detailed specifications promulgated by NAVSEA that required the use of asbestos-containing products.* *See* US Navy Bureau of Ships Specifications (Exh. F); Ward Aff., Exh. B (Exh. D). Mr. Harwood testified that the initial specifications and plans for military vessels at the Newport News facility were issued by military officials, specifically NAVSEA. *See* James Harwood dep. at 66-67 (Exh. C). These specifications, which totaled several thousands of pages, were based

19

on NAVSEA's superior knowledge and expertise regarding the Navy's combat needs and could only be changed by Navy officials. *See* Ward Aff. at ¶ 9 (Exh. D); Clark Aff. at ¶ 6 (Exh. E). The use of asbestos products, as with all other aspects of shipbuilding for the Navy, was pursuant to strict direction and control of officers of the United States Navy. Contrary to Plaintiffs' claims that "[a]t most, the Navy selected stock-item materials, some of which contained asbestos," government's specifications for the USS Newport News, a vessel on which Mr. Harwood worked, were extraordinarily specific and required use of specific asbestos-containing materials. *See* US Navy Bureau of Ships Specifications (Exh. F); *see also* Ward Aff. Exh. B (Exh. D).

Plaintiff's experience at the Ingalls facility was similar in that the Navy required Mr. Harwood to have a security clearance, provided civilian employees such as Mr. Harwood with the preliminary drawings, specifications, and plans for LHAs and LHDs, and that Plaintiff had "never known them to be done in any other way." *Id*. at 82-83. In sum, virtually no aspect of the construction of Navy vessels escaped the close control of Navy officials directing work at Newport News or Ingalls. Even post construction sea trials were completed with Navy personnel on board. *See* James Harwood dep. at 88 (Exh. C).

Courts addressing similar factual situations have found that military contractors are entitled to federal officer removal and are "acting under" a federal officer for the purpose of the statute. In *Fung v. Abex Corp.*, 816 F. Supp. 569, the Plaintiff alleged personal injuries arising out of his exposure to asbestos while serving in the United States Navy aboard a submarine. The manufacturer of the submarine was found to have satisfied the "acting under" prong of the statute because it was "authorized to build submarines under a federal contract" and was under "the direct control of the Secretary of the Navy." *Id.* at 572.

20

Also, in *Blackman v. Asbestos Defendants (BHC),* plaintiff filed suit against a rocket manufacturer for personal injuries alleged to have resulted from his work assembling rocket parts. 1997 U.S. Dist. Lexis 17821 (N.D. Cal. 1997). The court found that the manufacturer was acting under a federal officer because the rockets and their parts were being manufactured pursuant to a contract with the United States Air Force, under which the U.S. Air Force exerted direct control. *Id.* at *6. Additionally, the court found that rocket motors manufactured by the defendant were made according to designs and specifications provided by the Air Force, designs which required the use of asbestos. *Id.*

For these same reasons, Northrop Grumman has satisfied the "acting under" prong of the statute. Plaintiffs' reliance on *Good v. Armstrong World Industries*, 914 F. Supp. 1125 (E.D. Pa. 1996) for the notion that "if the corporation establishes only that the relevant facts occurred under the general auspices of federal direction then it is not entitled to removal" is inapposite. In *Good*, which involved removal of a case to federal court premised on 28 U.S.C. § 1442(a), the court found that the defendant did not establish that it acted under the direct and personal control of a single, specific federal officer, namely the Secretary of the Navy. The *Good* court found that Westinghouse had designed and manufactured the equipment at issue in accordance with the specifications and regulations mandated by the United States Navy, but it did not consider this to be sufficient to remove under § 1442(a)(1), because Westinghouse was not acting directly under control of the Secretary of the Navy, as it had suggested in its Notice of Removal. *See Good*, 914 F. Supp. at 1130. The court in *Good* read the statute literally, requiring that the contractor act under the direct control of the Secretary of the Navy himself, or another officer of the United States by stating:

Removal must be predicated upon a showing that the acts forming the basis of the state suit were performed pursuant to an officer's direct orders or comprehensive and detailed regulations. (internal citations omitted) By contrast, if the corporation establishes only that the relevant acts occurred under the general auspices of federal direction then it is not entitled to § 1442(a)(1) removal.

*Id.* at 1128.

This strict literal approach has not been adopted by the majority of courts that have considered the federal officer removal statute. *See Mitchell v. AC&S Inc.*, Civ. Act. No. 4:04cv2713, 2004 U.S. Dist. LEXIS 29504, at *9 (E.D. Va. Dec. 15, 2004) (agreeing with viewpoint of majority of jurisdictions rejecting strict literal approach taken by the *Good* court); *Crocker v. Borden, Inc.*, 852 F. Supp. 1322, 1326 (E.D. La. 1994) (finding, in facts nearly identical to *Good*, that defendant acted under direction of United States Navy in constructing marine turbines); *Herbert Pack, et al. v. AC and S, Inc.*, 838 F. Supp 1099, 1103 (Dist. Of MD 1993); *Carter v. Acands, Inc.*, 2002 U.S. Dist. LEXIS 24057, 2002 WL 31682352 *4-5 (E.D. Tex. 2002) (finding that extensive control exercised by United States Navy over production and supply of Westinghouse turbines met § 1442(a) requirements).

For prudent reasons and in keeping with the rationale of the federal officer removal statute, the majority of courts have interpreted the language of § 1442(a) more liberally than the *Good* court.  § 1446 does not detail a definition of a federal officer.  As the *Mitchell* court noted in rejecting the strict application of *Good*, "to refuse to accept the direction of a branch of the armed services as the direction of a 'federal officer' is to 'deny that the government is composed of entities as well as people.'"  *Mitchell*, 2004 U.S. Dist. LEXIS 29504, at *9 citing Kristina L. Garcia, Comments: The Boyle Festers: How Lax Casual Nexus Requirements and the "Federal Contractor Defense" Are Leading to a Disruption of Comity under the Federal Officer Removal

Statute, 46 Emory L.J. 1629, 1645 (1997) (detailing problems with strict interpretation of "federal officer" in § 1442(a)(1)).

The affidavits of Messers. Ward and Clark, as well as the testimony of the Plaintiff himself, makes clear that Northrop Grumman was acting under the direction of a federal officer in the manufacture of the Naval vessels to which Plaintiff claims to have been exposed and any ultrahazardous activity alleged by the Plaintiffs was done at the direction of a federal officer.

> ### c.   *Northrop Grumman can satisfy the requirement of a colorable federal defense*

Removal is proper because Northrop Grumman can raise a colorable federal defense, specifically the military contractor defense (also referred to by courts as the government contractor defense). Courts are to construe a removing party's assertion of a colorable federal defense liberally. "We . . . do not require the officer virtually to 'win his case before he can have it removed.'" *Williams v. GE*, 418 F. Supp. 2d 610, 615 (M.D. Pa. 2005). In *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387 (5th Cir. 1998) the court found that because the government provided specifications for the "Agent Orange" manufactured by the defendant and because the product conformed to those specifications, the defendant was entitled to remove the action based on its assertion of the government contractor defense. Similarly, in *Akin v. Big Three Industries*, the court held the defendant raised a colorable claim to the government contractor defense, and explained, "[a]lthough GE might or might not ultimately prevail on its government contractor defense .... [a]ll that is required under § 1442(a)(1) ... is that GE assert a colorable claim." 851 F. Supp. at 823.

In *Venezia v. Robinson*, 16 F.3d 209, 211 (7th Cir. 1994), the court acknowledged the necessity of a defendant's "*bona fide* federal defense" to the state law claim before federal officer removal could be granted, but it stressed that the *merits* of a colorable defense are distinct from this prerequisite.  The court stated, "[o]nce the federal defendant has a *plausible* federal defense, removal is appropriate so that the federal court may determine whether the defense succeeds." *Id.* at 212 (emphasis added).

In *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512, 101 L. Ed. 2d 442, 108 S. Ct. 2510 (1988), the Supreme Court set forth the three specific requirements of the government contractor defense: "Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." Northrop Grumman has made a colorable showing that it is entitled to this defense.

> (1)   *Northrop   Grumman   followed   reasonably   precise*
> *specifications from the military*

In any contract under which Northrop Grumman produced military vessels and its parts for the U.S. Government, it followed detailed specifications provided by or approved by a federal Contracting Officer and the military branch for which such vessels was produced. *See* Ward Aff. at ¶¶ 8–12, 20 (Exh. D); Clark Aff. at ¶¶ 4-6 (Exh. E); James Harwood dep. 66-67 (Exh. C).  In a case involving allegations similar to this case, the court found the military contractor's defense barred plaintiff's asbestos personal injury claims. In *Niemann v. McDonnell Douglas Corp.*, 721 F. Supp. 1019 (S.D. Ill. 1989), a products liability suit against a manufacturer of asbestos-filled vessel components, the court held that the contractor satisfied the

first prong because the United States Air Force was "involved in the preparation and approval of proposed specifications and drawings" for the vessels, was "closely involved in the preparation of the specifications" and conducted a formal U.S. Air Force review "to assess the design specifications package and prototype, direct any changes to the design and ultimately approve the design package." *Id.* at 1025.

In *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992 (7th Cir. 1996), a products liability suit against the manufacturer of a Marine Corps MK-48 support vehicle that exploded upon collision with another vehicle, the court also found the military contractor defense barred plaintiff's personal injury claims. The *Oshkosh* court found that the contractor satisfied the first prong, because the MK-48 vehicle design was developed collaboratively, the progress was meaningfully reviewed and approval by the Marine Corps was required. Further, the defendant adhered to "a detailed set of performance and dimension specifications" provided by the Marine Corps. Finally, the court held that the decision to make the design modifications that caused the injury were unavoidable given the Marine Corps precise specifications. *Id.* at 995.

The protocol that Northrop Grumman followed whenever it manufactured military vessels pursuant to a contract with the U.S. Navy and its Contracting Officers is sufficient to invoke the military contractor defense in this case. See Ward Aff. at ¶¶ 6, 18, 20 (Exh. D); Clark Aff. at ¶¶ 4, 5 (Exh. E).

> (2)   *Equipment   manufactured   by   Northrop   Grumman
> conformed to military specifications*

As to the second prong of the defense, the *Niemann* court held that where the requirements of the first prong had been met and the Air Force had accepted the product as produced, and where nothing in the record indicated the contractor's failure to adhere to Air

Force specifications, this prong was also satisfied.  721 F. Supp. at 1027; *accord Oshkosh*, 96 F.3d at 1001 (finding that the contractor "did not deviate from" the Marine Corps' specifications, the court determined that Oshkosh met the second prong of the *Boyle* test).  Likewise, there are no allegations in this case that Plaintiff was injured because any naval vessel, including the USS John F. Kennedy and USS Newport News, did not conform to military specifications.  There is no claim that these products did not meet detailed specifications provided by the military.

> (3)  *Military contractor defense applies to both design defect and failure to warn claim*

In addition to the well-accepted rule that the military or government contractor defense applies to design defect claims, the Seventh Circuit has held unequivocally that "the government contractor defense ... may operate to defeat a state failure-to-warn claim."  *Oshkosh*, 96 F.3d 1003; *accord Niemann*, 721 F. Supp. at 1024 ("the policy behind the government contractor defense ... supports the interpretation that the government contractor defense applies in failure to warn cases.").

The Seventh Circuit provided a failure-to-warn version of the Boyle test:

> [W]hen state law would otherwise impose liability for a failure to warn, that law can be displaced when the contractor can show that: (1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; and (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government.

*Oshkosh*, 96 F.3d at 1003-1004.  The court found that like with the design defect claims, these requirements had been met and the failure-to-warn claims were similarly barred by the government contractor's defense.  The *Oshkosh* court recognized that there is a "significant conflict" between state law that would hold government contractors liable for "design defects in

26

military equipment and the 'uniquely federal interest' in immunizing 'the trade-off between greater safety and greater combat effectiveness.'" 96 F. 3d at 997 (citing *Boyle*, 487 U.S. at 511-12, 108 S. Ct. at 2518).

Northrop Grumman is not required at this stage to prove each of these elements of the government contractor defense and that Plaintiffs' claims are barred. Northrop Grumman must demonstrate a colorable defense. It is plausible that the government contractor defense may bar Plaintiffs' claims. Northrop Grumman has met its burden.

> (4) *Northrop Grumman was only required to warn of dangers known to it, but not known to the government*

The third prong of the *Boyle* test requires a government contractor to warn of dangers known to the contractor, but *not* to the government. *Niemann,* 721 F. Supp. at 1027-28. *Accord Trevino v. General Dynamics Corp.*, 865 F.2d 1474, 1487 (5th Cir. 1989) ("After *Boyle*, a government contractor only has the duty to warn the government of dangers of which it has knowledge but the government does not."). The *Niemann* court found strong evidence that the third prong was satisfied. Not only was there no indication on record that defendants were aware of the danger of using asbestos, but there was uncontroverted evidence that the government was aware of such danger and proceeded nevertheless. *Id.* The court found that in the 1940's and 1950's, the time period in which the subject vessels were manufactured, the United States was well aware of the risks of asbestos use, but "chose to continue use of asbestos in spite of this knowledge." *Id.* at 1028. The court deliberately avoided a "should have known" standard in accordance with the language of *Boyle*. *Niemann,* 721 F. Supp. at 1027-28; *accord Oshkosh*, 96 F.3d at 1001.

In keeping with the reasoning in *Niemann*, construction of the USS John F. Kennedy began in October of 1964 while construction of the USS Newport News began in October of 1945, long after the United States was aware of the risks of asbestos.   In sum, Northrop Grumman was not required to warn the government about dangers of which the government was already aware, a conclusion reached by many courts, including the Southern District of Illinois. *Niemann*, 721 F. Supp. at 1027-28; *accord Oshkosh*, 96 F.3d at 1001.

> **d.    *Northrop Grumman can also satisfy the causal nexus requirement of the federal officer removal statute.***

Northrop Grumman can also satisfy the final requirement of the federal officer removal statute, by demonstrating a causal nexus between its actions and Plaintiffs' claims.  In *Blackman v. Asbestos Defendants (BHC)*, the court explained that "[t]o demonstrate a causal nexus between a plaintiff's claims and a defendant's acts, the defendant must prove that his 'acts being sued upon were undertaken by a federal officer or person acting under him.'"  *Blackman*, at *7 (citing *Ryan v. Dow Chemical Co.*, 781 F. Supp. 934, 939 (E.D. N.Y. 1992)).   The court applied the causal nexus analysis to a government contractor for the U.S. Air Force, stating that "because [the Defendant] 'acted under' the direct control of the USAF and its agents, there is a causal nexus."  In that case, the plaintiff was suing the manufacturer of rockets and rocket parts based on the presence of asbestos in those products and those products were made at the direction of the United States Air Force, therefore a causal nexus existed between plaintiff's claims and the acts attributed to the defendant.

In addition to the above, in *Madden v. Able Supply Co.*, 205 F. Supp. 2d 695, 701 (S.D. Tex. 2002), the court observed that where a plaintiff claims exposure to an asbestos containing product used aboard a Navy ship, and a showing is made that the defendant's design and/or

manufacture of the product (and use of asbestos) was dictated by the Navy, the "casual nexus" required by § 1442(a)(1) has not only been established – it is "axiomatic."

Plaintiffs' allegations against Northrop Grumman arise out of actions that Northrop Grumman would have taken on behalf of the federal government and its officers, thus demonstrating the necessary causal nexus.

E.      **This Case Should Remain, In Its Entirety, In Federal Court.**

After this Court has denied Plaintiffs' Motion to Remand, as it should, the Court should retain supplemental jurisdiction over this controversy in its entirety because no circumstances exist to justify the claims being severed. 28 U.S.C. § 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under." Section (c) of the statute refines the supplemental jurisdiction doctrine by enumerating four circumstances in which District Courts have discretion to decline supplemental jurisdiction over state law claims: "(1) when the claims raise novel or complex issues of state law; (2) when the claims substantially predominate over the claims within the district court's original jurisdiction; (3) when the district court dismisses the claims over which it has original jurisdiction; and (4) in exceptional circumstances, if there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

The claims raised in this case do not "raise novel or complex issues of state law." This is a personal injury matter brought under longstanding theories of liability, namely strict products liability, negligence, and premises liability. To the extent that any novel or complex issues of state law do exist, they are not questions of Delaware law, the state to which Plaintiffs' seek

29

remand, but rather under choice of law principles, Plaintiffs' claims are more likely governed by the law of Virginia or Mississippi. While Plaintiffs' claims against the remaining Defendants involve state law, such claims do not predominate over Plaintiffs' claims against Northrop Grumman. Mr. Harwood's work history establishes he spent the vast majority of his work, spanning from 1950 to 1994, while employed at the Newport News and Ingalls facilities designing and constructing naval warships. As the overwhelming majority of Mr. Harwood's work experience occurred at Northrop Grumman operated facilities, his claims against Northrop Grumman predominate over his state law claims against the remaining Defendants as the vast majority of alleged asbestos exposure, if proven, would have occurred at Northrop Grumman facilities. Should this Court deny Plaintiffs' Motion to Remand, the third factor becomes irrelevant. Under the fourth factor, there are no exceptional circumstances which necessitate that this Court should decline jurisdiction over the remaining claims.

Unlike *Madden v. Able Supply Co.*, cited by Plaintiffs, this matter is in its infancy, having been filed approximately two months ago. 205 F.Supp. 2d 695. The underlying claims in *Madden*, on the other hand, had been litigated for almost two years and were trial-ready at the time of removal. 205 F.Supp. 2d 695. Here, limited discovery has taken place and many defendants have just been served. In addition, there is an adequate and proper forum for the resolution of this case in its entirety, namely the MDL Court in the Eastern District of Pennsylvania where all pretrial matters can be resolved.

## V.    CONCLUSION

In sum, as laid out above and in the hundreds of pages of exhibits attached hereto, the United States Navy asserted intense control and scrutiny over Northrop Grumman's Newport News and Ingalls facilities and over the manufacture and design of the very vessels identified by

Plaintiffs in this action.  Specifications for these vessels laid out over the course of hundreds, if not thousands, of pages specified the precise materials to be used, including asbestos.  For all of the forgoing reasons, Northrop Grumman respectfully requests that this Court deny Plaintiffs' Motion to Remand.

ELZUFON AUSTIN REARDON TARLOV &
MONDELL, P.A.

/s/ *Mark L. Reardon*

Mark L. Reardon (DE #2627)
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, Delaware 19899
(302) 428-3181

Nancy Shane Rappaport (DE #3428)
DLA Piper US LLP
1650 Market Street, Suite 4900
Philadelphia, PA 19103
(215) 656-3357

Attorneys for Defendant
Northrop Grumman Corporation

Date:  November 20, 2006

EXHIBIT E

3 of 6 DOCUMENTS



Analysis
As of: Jan 25, 2007

**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI); Justin Shane Wooley v. International Paper Co., et al., S.D. Mississippi, C.A. No. 1:01-237; Sylvia Ann Baden, et al. v. BPU Reynolds, Inc., et al., S.D. Texas, C.A. No. 2:01-288**

**DOCKET NO. 875, C.A. No. 1:01-237, C.A. No. 2:01-288**

**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

*170 F. Supp. 2d 1348; 2001 U.S. Dist. LEXIS 17555*

**October 18, 2001, Filed**

**PRIOR HISTORY:** Doval v. Maremont Corp. (In re Asbestos Prods. Liab. Litig.), *2001 U.S. Dist. LEXIS 13761* (J.P.M.L. Aug. 29, 2001)

**DISPOSITION:** [**1] Action was transferred to the Eastern District of Pennsylvania.

**LexisNexis(R) Headnotes**

*Civil Procedure > Venue > Multidistrict Litigation*
*Civil Procedure > Pretrial Matters > Conferences > Pretrial Orders*
[HN1] J.P.M.L.R.P. 1.5, expressly provides that the pendency of a conditional transfer order does not in any way suspend orders and pretrial proceedings in the district court in which the action that is the subject of the conditional transfer order is pending, or limit the pretrial jurisdiction of that court; and accordingly, those courts wishing to address such motions have adequate time in which to do so, those courts concluding that such issues should be addressed by the transferee judge need not rule on them, and the process of *28 U.S.C.S. § 1407* transfer can continue without any unnecessary interruption or delay.

*Civil Procedure > Venue > Multidistrict Litigation*
*Civil Procedure > Judicial Officers > Judges > General Overview*
[HN2] Whenever the transferee judge deems remand of any claims or actions appropriate, procedures have been utilized to accomplish *28 U.S.C.S. § 1407* remand for trial with a minimum of delay. J.P.M.L.R.P. 7.6.

**JUDGES:** BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, MOREY L. SEAR, BRUCE M. SELYA, JULIA SMITH GIBBONS, D. LOWELL JENSEN AND J. FREDERICK MOTZ, JUDGES OF THE PANEL.

**OPINION BY:** Wm. Terrell Hodges

**OPINION:** [*1349]

*TRANSFER ORDER*

Before the Panel are motions brought, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), by plaintiffs in two Southern District of Mississippi and Southern District of Texas actions to vacate the Panel's orders conditionally transferring the actions to the Eastern District of Pennsylvania for inclusion in the centralized pretrial proceedings occurring there in this docket before Judge Charles R. Weiner.

On the basis of the papers filed and hearing session held, the Panel finds that these two actions involve common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the actions to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring in that district will serve the convenience of the parties and witnesses and promote the just and efficient [**2] conduct of the litigation. We find that transfer of the actions is appropriate for reasons expressed by the Panel in its

Case MDL No. 875   Document 4960   Filed 02/05/07   Page 87 of 138

Page 2

170 F. Supp. 2d 1348, *; 2001 U.S. Dist. LEXIS 17555, **

original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI), 771 F. Supp. 415 (J.P.M.L. 1991).* In particular, we note that in the Panel's original decision distinctions based on such matters as the pendency of motions or other matters before the transferor court, n1 the uniqueness of a party's status, the type of defendant, the docket condition of any specific federal district, the stage of pretrial proceedings, the presence of unique claims or additional claims not relating to asbestos injury or death, and/or the unanimity of opposition to transfer by the parties to an action, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket.

n1 Plaintiffs in these actions have argued in essence that transfer should be denied or deferred in order to permit the resolution of pending motions to remand the actions to state court. There is no need to delay transfer in order to accommodate such an interest. We note that: 1) as a practical matter, there is a lag time of at least three or four months from the filing of an action, its identification as a potential tag-along action, issuance of a conditional transfer order, stay of transfer when a party timely objects to the conditional transfer, briefing on the question of transfer, the Panel hearing session, and the issuance of the Panel's subsequent order; 2) [HN1] Panel Rule 1.5, R.P.J.P.M.L., 199 F.R.D. at 427, expressly provides that the pendency of a conditional transfer order does not in any way i) suspend orders and pretrial proceedings in the district court in which the action that is the subject of the conditional transfer order is pending, or ii) limit the pretrial jurisdiction of that court; and 3) accordingly, those courts wishing to address such motions have adequate time in which to do so, those courts concluding that such issues should be addressed by the transferee judge need not rule on them, and the process of 1407 transfer in MDL-875 can continue without any unnecessary interruption or delay.

[**3]

We are not persuaded to depart from this approach in dealing with the question of transfer of the actions now before the Panel. Plaintiffs in the Southern District of Texas action have suggested that transfer should be denied because the way in which MDL-875 is being administered effectively denies them their constitutional

right to a jury trial. We reject this argument. Although the number of Section 1407 remands in this docket is proportionately small, this is only because under Judge Weiner's stewardship the vast majority of transferred actions have been able to be concluded in the transferee district [*1350] during the course of pretrial proceedings (as of October 9, 2001, nearly 70,000 such actions have been closed in the transferee district). The fact remains that [HN2] whenever the transferee judge has deemed remand of any claims or actions appropriate, procedures have been utilized to accomplish Section 1407 remand for trial with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L., 199 F.R.D. at 436-38. Accordingly, as of October 9, 2001, over 1,100 actions or claims therein have been returned to their originating transferor districts. The transferee court, when suggesting remand [**4] of claims, has differentiated between claims for compensatory damages and claims for punitive damages, choosing to retain jurisdiction over punitive damage claims for continuing pretrial effort. The Panel has deferred to this suggested approach, recognizing that the recommendations of the transferee judge regarding the timing of remand should be given great weight, because that judge, after all, is the one who supervises day-to-day pretrial proceedings. When challenged by MDL-875 parties, the appellate court with authority over Panel transfers and remands in this docket has endorsed the Panel's treatment of remand of punitive damage claims:

> The resources available to persons injured by asbestos are steadily being depleted. The continuing filings of bankruptcy by asbestos defendants disclose that the process is accelerating. It is responsible public policy to give priority to compensatory claims over exemplary punitive damage windfalls; this prudent conservation more than vindicates the Panel's decision to withhold punitive damage claims on remand. It is discouraging that while the Panel and transferee court follow this enlightened practice, some state courts allow punitive damages [**5] in asbestos cases. The continued hemorrhaging of available funds deprives current and future victims of rightful compensation.

*In re Collins, 233 F.3d 809, 812 (3rd Cir. 2000), cert. denied, 532 U.S. 1066, 150 L. Ed. 2d 209, 121 S. Ct. 2216 (2001).* Finally, with respect to any parties that believe the uniqueness of their particular situation renders inclusion of their action in MDL-875 unnecessary or inadvisable, we are confident that Judge Weiner will

170 F. Supp. 2d 1348, *; 2001 U.S. Dist. LEXIS 17555, **

continue to promptly review arguments for returning transferred actions or claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever he is convinced that retention in the MDL-875 proceedings is no longer needed.

IT IS THEREFORE ORDERED that, pursuant to *28 U.S.C. § 1407,* these two actions are transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

Wm. Terrell Hodges

Chairman

EXHIBIT F

4 of 6 DOCUMENTS



Caution
As of: Jan 25, 2007

**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI); Janice Chis-
holm v. United States of America, et al., N.D. California, C.A. No. 3:99-224SC;
Charles I. Harley v. Owens-Corning Fiberglas Corp., et al., W.D. Kentucky, C.A.
No. 3:99-38; John L. Renfro, Sr. v. Owens-Corning Fiberglas Corp., et al., W.D.
Kentucky, C.A. No. 3:99-71; Amiel P. Amin, et al. v. Owens-Corning Fiberglas
Corp., et al., W.D. Kentucky, C.A. No. 3:99-79; Lawrence D. Graves, et al. v. Owens-
Corning Fiberglas Corp., et al., W.D. Kentucky, C.A. No. 3:99-80; Clarence F. Met-
sker, et al. v. Owens-Corning Fiberglas Corp., et al., W.D. Kentucky, C.A. No. 3:99-
81; Charles R. Ernst, et al. v. Owens-Corning Fiberglas Corp., et al., W.D. Ken-
tucky, C.A. No. 3:99-82; Louis E. Atzinger, et al. v. Owens-Corning Fiberglas Corp.,
et al., W.D. Kentucky, C.A. No. 3:99-87; Harold R. Allen, Sr., et al. v. Owens-
Corning Fiberglas Corp., et al., W.D. Kentucky, C.A. No. 3:99-109; Alpha Knight,
etc. v. Owens-Corning Fiberglas Corp., et al., W.D. Kentucky, C.A. No. 3:99-110;
Jack B. Boston, et al. v. Owens-Corning Fiberglas Corp., et al., W.D. Kentucky, C.A.
No. 3:99-143; Ronald C. Foree, et al. v. Owens-Corning Fiberglas Corp., et al., W.D.
Kentucky, C.A. No. 3:99-179; Raymond Hall, et al. v. Owens-Corning Fiberglas
Corp., et al., W.D. Kentucky, C.A. No. 3:99-229**

**DOCKET NO. 875, C.A. No. 3:99-224SC, C.A. No. 3:99-38, C.A. No. 3:99-71, C.A.
No. 3:99-79, C.A. No. 3:99-80, C.A. No. 3:99-81, C.A. No. 3:99-82, C.A. No. 3:99-87,
C.A. No. 3:99-109, C.A. No. 3:99-110, C.A. No. 3:99-143, C.A. No. 3:99-179, C.A. No.
3:99-229**

**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

*1999 U.S. Dist. LEXIS 12131*

**July 27, 1999, Filed; August 2, 1999, Filed**

**COUNSEL:** [*1] For JANICE CHISHOLM, Plaintiff (99-CV-224): James Geagan, Clayton Kent, Brayton Purcell Curtis & Geagan, Novato, CA.

For JANICE CHISHOLM, Plaintiff (99-CV-224): Patricia J. Kenney, U.S. Attorney's Office, San Francisco, CA.

For JANICE CHISHOLM, Plaintiff (99-CV-224): Ina L. Strichartz, U.S. Department of Justice, Washington, DC.

For UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF AGRICULTURE, US FOREST SERVICE, defendants (99-CV-224): Patricia J. Kenney, U.S. Attorney's Office, San Francisco, CA.

For UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF AGRICULTURE, US FOREST SERVICE, defendants (99-CV-224): Ina L. Strichartz, U.S. Department of Justice, Washington, DC.

**JUDGES:** BEFORE JOHN F. NANGLE, CHAIRMAN, WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS, * LOUIS C. BECHTLE AND JOHN F. KEENAN, JUDGES OF THE PANEL.

> * Judge Sanders took no part in the decision of this matter.

**OPINION:**



## TRANSFER ORDER

Before the Panel are motions brought, pursuant to *Rule 7.4, R.P.J.P.M.L., 181 F.R.D. 1, 10 (1998),* [*2] by i) certain plaintiffs and/or defendant Cardinal Industrial Insulation, Inc., in the twelve above-captioned Western District of Kentucky actions, and ii) plaintiff in the remaining above-captioned Northern District of California action. All movants request that the Panel vacate the portions of its orders conditionally transferring their respective action(s) to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner.

On the basis of the papers filed, n1 the Panel finds that these actions involve common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the actions to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of these actions is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions [*3] not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI), 771 F. Supp. 415 (J.P.M.L. 1991).* In particular, we note that in the Panel's original decision distinctions based on such matters as the pendency of motions or other matters before the transferor court, n2 the uniqueness of a party's status, the type of defendant, the docket condition of any specific federal district, the stage of pretrial proceedings, the presence of unique claims or additional claims not relating to injury or death, and/or the unanimity of opposition to transfer by the parties to an action, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket.

n1 The parties to these actions waived oral argument and, accordingly, the question of Section 1407 transfer of the actions was submitted on the briefs. *Rule 16.2, R.P.J.P.M.L., 181 F.R.D. 1, 14 (1998).*

We are not persuaded to depart from this approach in dealing with the question of transfer of these actions now before the panel. We note that under Judge Weiner's stewardship, as of July 27, 1999, i) nearly 60,000 actions have been closed in the transferee district, and ii) nearly 1,000 actions or claims therein have been returned to their originating transferor districts. To parties that believe the uniqueness of their particular situation renders inclusion of their action in MDL-875 unnecessary or inadvisable, we note that whenever the transferee judge deems remand of any claims or actions appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See Rule 7.6 R.P.J.M.L., supra, 181 F.R.D. at 11-13.* We are confident that Judge Weiner will continue to promptly review arguments for returning transferred actions or claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever he is convinced that retention in the MDL-875 proceedings is no longer needed.

n2 Parties in certain of the actions before the Panel have argued that transfer should be denied or deferred in order to permit the judges assigned the actions to rule on various potentially dispositive pending motions. There is no need to delay transfer in order to accommodate such an interest. We note that: 1) as a practical matter, there is a lag time of at least three or four months from the filing of an action, its identification as a potential tag-along action, issuance of a conditional transfer order, stay of transfer when a party timely objects to the conditional transfer, briefing on the question of transfer, the Panel hearing, and the issuance of the Panel's subsequent order; 2) *Panel Rule 1.5, R.P.J.P.M.L., supra, 181 F.R.D. at 3,* expressly provides that the pendency of a conditional transfer order does not in any way i) suspend orders and pretrial proceedings in the district court in which the action that is the subject of the conditional transfer order is pending, or ii) limit the pretrial jurisdiction of that court; and 3) accordingly, those courts wishing to address such motions have adequate time in which to do so, those courts concluding that such issues should be addressed by the transferee judge need not rule on them, and process of 1407 transfer in MDL-875 can continue without any unnecessary interruption or delay

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

IT IS THEREFORE ORDERED that, pursuant to *28 U.S.C. § 1407,* the thirteen above-captioned actions be, and the same hereby are, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL

/s/Signature

John F. Nangle

Chairman

ATTACHMENT

**INVOLVED COUNSEL LIST**

**DOCKET NO. 875**

**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

Craig R. Banford
Huddleston, Bolen, Beatty, Porter & Copen
P.O. Box 2185
Huntington, WV 25722

Robert F. Barron
Kahn, Dees, Donovan & Kahn
305 Union Federal Building
P.O. Box 3646
Evansville, IN 47735

Richard C. Binzley
Thompson, Hine & Flory
127 Public Square
3900 Key Center
Cleveland, OH 44114

Sheila L. Birnbaum
Skadden, Arps, Slate, Meagher & Flom
919 Third Avenue
New York, NY 10022

Stephen M. Bowers
Hawkins & Parnell
4000 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA 30308

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

James [*4]  E. Cleveland
Huddleston, Bolen, Beatty, Porter & Copen
1442 Winchester Avenue
P.O. Box 770
Ashland, KY 41105

Kathy K. Condo
Reed, Smith, Shaw & McClay

Mellon Square
435 Sixth Avenue
Pittsburgh, PA 15219

David A. Damico

Burns, White & Hickton

2400 Fifth Avenue Place

120 Fifth Avenue

Pittsburgh, PA 15222

Scott T. Dickens

Tachau, Maddox, Hovious & Dickens

200 South 5th Street

Suite 200 N.

Louisville, KY 40202

John L. Dotson

O'Bryan, Brown & Toner

1500 Starks Building

Louisville, KY 40202

Robert C. Ewald

Wyatt, Tarrant & Combs

500 West Jefferson Street

2600 Citizens Plaza

Louisville, KY 40202

Raymond P. Forceno

Forceno & Hannon

Philadelphia Bourse Building

Suite 1000

Independence Mall East

Philadelphia, PA 19106

Ellen B. Furman

Goldfein & Joseph

Packard Building, 17th Floor

15th & Chestnut Streets

Philadelphia, PA 19102

James M. Gary

Weber & Rose, P.S.C.

2700 Aegon Center

400 West Market Street

Louisville, KY 40202

John K. Gordinier

Pedley, Zielke, Gordinier, Olt & Pence

Starks Building, Suite 1150

455 South Fourth Avenue

Louisville, KY 40202

- UNDELIVERABLE - Gregory S. Gowen

City Law Department

601 W. Jefferson Street [*5]

Room 200, City Hall

Louisville, KY 40202

Albert F. Grasch

Grasch, Walters & Cowen

302 West High Street

Lexington, KY 40507

Susan M. Hanson

Stich, Angell, Kreidler & Muth, P.A.

The Crossings, Suite 120

250 2nd Avenue South

Minneapolis, MN 55401

Max S. Hartz

McCarroll, Nunley & Hartz

111 East Third Street

P.O. Box 925

Owensboro, KY 12302

Harry K. Herren

Woodward, Hobson & Fulton, LLP

2500 First National Tower

Louisville, KY 40202

Frank P. Hilliard

Starks Building, Suite 380

455 S. Fourth Avenue

Louisville, KY 40202

Joseph P. Hummel

Lynch, Cox, Gioman & Mahan

500 Meidinger Tower

Louisville, KY 40202

Clayton W. Kent

Brayton, Purcell, Curtis & Geagan

222 Rush Landing Road

Novato, CA 94948

David C. Landin
Hunton & Williams
Riverfront Plaza
East Tower
951 East Byrd Street
Richmond, VA 23219

Christopher D. Lee
Kahn, Dees, Donovan & Kahn
305 Union Federal Building
P.O. Box 3646
Evansville, IN 47735

Gene Locks
Greitzer & Locks
1500 Walnut Street
Philadelphia, PA 19102

Armer H. Mahan
Lynch, Cox, Gioman & Mahan
500 Meidinger Tower
Louisville, KY 40202

Gregory L. Monge
Vanantwerp, Hughes, Monge, Jones & Edwards LLP
P. [*6] O. Box 1111
Ashland, KY 41105

John B. Moore
Boehl, Stopher & Graves
2300 Aegon Center
400 West Market Street
Louisville, KY 40202

M. D. Moretz
Woolf, McClane, Bright, Allen
900 Riverview Tower
900 South Gay Street
P.O. Box 900
Knoxville, TN 37902

R. K. Morton
Huddleston, Bolen, Beatty, Porter & Copen
P.O. Box 2185
Huntington, WV 25722

Ronald L. Motley

1999 U.S. Dist. LEXIS 12131, *

Ness, Motley, Loadholt, Richardson & Poole
P.O. Box 1137
Charleston, SC 29402

Donald A. Powell

Buckingham, Doolittle & Burroughs

50 South Main Street

P.O. Box 1500

Akron, OH 44309

John J. Repcheck

Sharlock, Repcheck & Mahler

3280 USX Tower

600 Grant Building

Pittsburgh, PA 15219

John D. Roven

9575 Katy Freeway

# 400

Houston, TX 77024

Kenneth L. Sales

Segal, Sales, Stewart, Cutler & Tillman

325 W. Main Street

2100 Waterfront Plaza

Louisville, KY 40202

Joseph D. Satterley

Segal, Sales, Stewart, Cutler & Tillman

2100 Waterfront Plaza

325 West Main Street

Louisville, KY 40202

Richard D. Schuster

Vorys, Sater, Seymour & Pease

52 East Gay Street

P.O. Box 1008

Columbus, OH 43216

Stephen F. Schuster

Ogden, Newell & Welch [*7]

500 West Jefferson Street

1700 Citizens Plaza

Louisville, KY 40202

Neil Selman

Selman, Breitman & Burgess

11766 Wilshire Boulevard

Sixth Floor

Los Angeles, CA 90025

Thomas C. Smith

Ziegler & Schneider, PSC

541 Buttermilk Place

P.O. Box 175710

Covington, KY 41017

Thomas W. Speckman

Speckman & Hoback

2330 Citizens Plaza

Louisville, KY 40202

Robert N. Spinelli

Kelley, Jasons, McGuire & Spinelli,

One Penn Center

Suite 1400

1617 JFK Boulevard

Philadelphia, PA 19103

Ina L. Strichartz

U.S. Department Of Justice

Environmental Dept.

P.O. Box 340

Ben Franklin Station

Washington, DC 20044

Robert E. Swickle

Jaques Admiralty Law Firm, P.C.

1370 Penobscot Building

Detroit, MI 48226

Andrew J. Trevelise

Reed, Smith, Shaw & McClay

2500 One Liberty Place

Philadelphia, PA 19103

Henry A. Triplett

Bennett, Bowman, Triplett & Vittitow

1999 U.S. Dist. LEXIS 12131, *

200 South 5th Street                    Tom Riley Law Firm

Suite 400                               4040 First Avenue, N.E.

Louisville, KY 40202                    P.O. Box 998

James K. Weston                         Cedar Rapids, IA 52406

EXHIBIT G

Westlaw.

Not Reported in F.Supp.                                                                    Page 1
Not Reported in F.Supp., 1996 WL 143826 (Jud.Pan.Mult.Lit.)
(Cite as: Not Reported in F.Supp.)

In re Asbestos Products Liability Litigation (No. VI)Jud.Pan.Mult.Lit.,1996.Only the Westlaw citation is currently available.
Judicial Panel on Multidistrict Litigation.
In re ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI).
No. 875.

Feb. 16, 1996.

*1 *Edgardo P. Gonzales v. Owens-Corning Fiberglas Corp., et al.*, N.D. California, C.A. No. 3:95-3705
*Nicandor San Juan v. Owens-Corning Fiberglas Corp., et al.*, N.D. California, C.A. No. 3:95-3709
*Catherine H. Simoneaux, et al. v. Exxon Corp., et al.*, M.D. Louisiana, C.A. No. 3:95-652
*Faye Carlson, etc. v. Anchor Packing Co., et al.*, D. Oregon, C.A. No. 3:95-1337
*Joseph R. Headley v. Anchor Packing Co., et al.*, D. Oregon, C.A. No. 3:95-1543

Before JOHN F. NANGLE, Chairman, ROBERT R. MERHIGE, Jr., WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS [FN*] and LOUIS C. BECHTLE, Judges of the Panel.

TRANSFER ORDER
JOHN F. NANGLE, Chairman.
Presently before the Panel are motions, pursuant to Rule 12, R.P.J.P.M.L., 147 F.R.D. 589, 596 (1993), by plaintiffs in the five above-captioned N.D. California, M.D. Louisiana and D. Oregon actions requesting that the Panel vacate the portions of its orders conditionally transferring their respective action to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner.

On the basis of the papers filed,[FN1] the Panel finds that these actions involve common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the actions to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of these actions is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. See *In re Asbestos Products Liability Litigation (No. VI),* 771 F. Supp. 415 (J.P.M.L. 1991). In particular, we note that in the Panel's original decision distinctions based on such matters as the pendency of motions or other matters before the transferor court,[FN2] the uniqueness of a party's status, the type of defendant, the docket condition of any specific federal district, the presence of unique or additional claims not relating to injury or death, and/or the unanimity of opposition to transfer by the parties to an action, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket. We find no reason to depart from this approach in dealing with the question of transfer of the actions now before the Panel.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the five above-captioned actions be, and the same hereby are, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FN* Judge Sanders took no part in the decision of this matter.

FN1. The parties to the five actions waived oral argument and, accordingly, the question of Section 1407 transfer with respect to the actions was submitted on the briefs. Rule 17, R.P.J.P.M.L., 147 F.R.D. 589, 600-01 (1993).

FN2. The plaintiffs in the California and Oregon actions have argued that transfer should be denied or deferred in order to permit the judges assigned the actions to rule on motions to remand to state court. There is no need to delay transfer in order to accommodate such interests. We note that: 1) as a practical matter, there is a lag time of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



EXHIBIT
G

Not Reported in F.Supp.                                                                              Page 2
Not Reported in F.Supp., 1996 WL 143826 (Jud.Pan.Mult.Lit.)
(Cite as: Not Reported in F.Supp.)

at least three or four months from the filing
of an action, its identification as a potential
tag-along action issuance of a conditional
transfer order, stay of transfer when a party
timely objects to the conditional transfer
briefing on the question of transfer, the
Panel hearing, and the issuance of the
Panel's subsequent order 2) Panel Rule 18,
R.P.J.P.M.L., *supra,* 147 F.R.D. at 601,
expressly provides that the pendency of a
conditional transfer order does not in any
way i) suspend orders and pretrial
proceedings in the district court in which the
action that is the subject of the conditional
transfer order is pending, or ii) limit the
pretrial jurisdiction of that court; and 3)
accordingly, those courts wishing to address
such motions have adequate time in which
to do so those courts concluding that such
issues should be addressed by the transferee
judge need not rule on them and the process
of 1407 transfer in MDL-875 can continue
without any unnecessary interruption or
delay

Jud.Pan.Mult.Lit.,1996.
In re Asbestos Products Liability Litigation (No. VI)
Not Reported in F.Supp., 1996 WL 143826
(Jud.Pan.Mult.Lit.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT H

**MDL 1699**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 1 3 2006

FILED
CLERK'S OFFICE

### DOCKET NOS. 1657 & 1699

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

### IN RE VIOXX MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION
### IN RE BEXTRA AND CELEBREX MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION

### BEFORE WM. TERRELL HODGES,* CHAIRMAN, JOHN F. KEENAN, D. LOWELL JENSEN, J. FREDERICK MOTZ,* ROBERT L. MILLER, JR., KATHRYN H. VRATIL AND DAVID R. HANSEN, JUDGES OF THE PANEL

### ORDER OF TRANSFER WITH SIMULTANEOUS SEPARATION, REMAND AND TRANSFER

Presently before the Panel are motions, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), by plaintiffs in 41 actions listed on Schedule A to vacate the Panel's orders conditionally i) transferring these actions involving the prescription medication Vioxx (manufactured by Merck & Co., Inc. (Merck)) to the Eastern District of Louisiana for inclusion in the Section 1407 proceedings occurring there in MDL-1657; ii) simultaneously separating and remanding claims in these actions relating to prescription medications Bextra and Celebrex (manufactured by Pfizer Inc. (Pfizer)) to their respective transferor districts; and iii) transferring the resulting Bextra/Celebrex actions to the Northern District of California for inclusion in MDL-1699 pretrial proceedings. Defendants Pfizer, Pharmacia Corp., G.D. Searle LLC and Merck oppose these motions and urge effectuation of the Panel's orders.

On the basis of the papers filed and hearing session held, the Panel finds that these actions involve common questions of fact with i) actions in MDL-1657 previously transferred to the Eastern District of Louisiana, and ii) actions in MDL-1699 similarly centralized in the Northern District of California. The Panel further finds that transfer for inclusion in the coordinated or consolidated pretrial proceedings in those two districts will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. Transfer is also appropriate for reasons expressed by the Panel in its original orders directing centralization in these two dockets. In MDL-1657, the Panel held that the Eastern District of Louisiana was a proper Section 1407 forum for actions relating to Vioxx. *See In re Vioxx Products Liability Litigation*, 360 F.Supp.2d 1352 (J.P.M.L. 2005). Likewise, the Panel held that the Northern District of California was a proper Section 1407 forum for actions relating to Bextra and/or Celebrex. *See In re Bextra and Celebrex Marketing, Sales Practices and Products*

---

*   Judges Hodges and Motz took no part in the decision of this matter.

**OFFICIAL FILE COPY**

IMAGED APR 1 3 2006


EXHIBIT
H

- 2 -

*Liability Litigation*, 391 F.Supp.2d 1377 (J.P.M.L. 2005). Pending motions to remand these actions to state court can, in appropriate parts, be presented to and decided by each of the transferee courts. *See, e.g., In re Ivy*, 901 F.2d 7 (2d Cir. 1990); *In re Prudential Insurance Company of America Sales Practices Litigation*, 170 F.Supp.2d 1346, 1347-48 (J.P.M.L. 2001).

Some opposing plaintiffs argue that separation and transfer of these claims for inclusion in MDL-1657 and MDL-1699 will foster inefficiency and inconsistency and/or disrupt ongoing related state court proceedings. We are unpersuaded by these arguments. *See In re Vioxx Marketing, Sales Practices and Products Liability Litigation/In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation*, ___ F.Supp.2d ___, 2006 WL 461029 (J.P.M.L. Feb. 15, 2006).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, these actions are transferred to the Eastern District of Louisiana and, with the consent of that court, assigned to the Honorable Eldon E. Fallon for inclusion in the coordinated or consolidated pretrial proceedings occurring there in MDL-1657 – *In re Vioxx Marketing, Sales Practices and Products Liability Litigation*. The claims relating to Pfizer's Bextra and Celebrex prescription medications are separated and remanded, pursuant to 28 U.S.C. § 1407(a), to their respective transferor courts.

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 1407, the resulting actions involving claims relating to Bextra and Celebrex are transferred to the Northern District of California and, with the consent of that court, assigned to the Honorable Charles R. Breyer for inclusion in the coordinated or consolidated pretrial proceedings occurring there in MDL-1699 – *In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation*.

FOR THE PANEL:

John F. Keenan
Acting Chairman

## Schedule A

<u>MDL-1657 -- In re Vioxx Marketing, Sales Practices and Products Liability Litigation</u>
<u>MDL-1699 -- In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation</u>

### <u>Eastern District of California</u>

*Barbara Hacker v. Merck & Co., Inc., et al.*, C.A. No. 2:05-2193
*Christopher Lesson v. Merck & Co., Inc., et al.*, C.A. No. 2:05-2240

### <u>Western District of Kentucky</u>

*Rhoda Overstreet v. Merck & Co., Inc., et al.*, C.A. No. 3:05-561
*Randall R. Jackson, et al. v. Merck & Co., Inc., et al.*, C.A. No. 3:05-562
*Bonnie Mullins, et al. v. Merck & Co., Inc., et al.*, C.A. No. 3:05-577
*Ernest D. Weber, Jr., et al. v. Merck & Co., Inc., et al.*, C.A. No. 3:05-623
*Robert Manley, et al. v. Merck & Co., Inc., et al.*, C.A. No. 3:05-656
*Harold Thomas, et al. v. Merck & Co., Inc., et al.*, C.A. No. 3:05-669
*Joan O'Bryan, etc. v. Merck & Co., Inc., et al.*, C.A. No. 3:05-681
*Doyle A. Coen, et al. v. Merck & Co., Inc., et al.*, C.A. No. 3:05-682
*Johnnie Anderson, etc. v. Merck & Co., Inc., et al.*, C.A. No. 3:05-685
*Galen Noe, et al. v. Merck & Co., Inc., et al.*, C.A. No. 3:05-700
*Cathy Grace Stearns, etc. v. Merck & Co., Inc., et al.*, C.A. No. 3:05-710
*Natella Kaye Cox v. Merck & Co., Inc., et al.*, C.A. No. 3:05-716
*Robert Sampson v. Merck & Co., Inc., et al.*, C.A. No. 3:05-722
*Douglas Adams, et al. v. Merck & Co., Inc., et al.*, C.A. No. 3:05-723

### <u>Eastern District of Missouri</u>

*Lonnie Case v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1562
*Jessie Abbott v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1563
*Bertha Armstead v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1564
*Berlin Jenkerson v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1565
*David Wagner v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1590
*John Kaczmarczyk v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1592
*Jerry M. Dance v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1666
*Doris Crenshaw v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1669
*Jeanette Lasky v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1741
*Francesca A. Saimieri v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1744
*Vincent Calamia v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1746
*Thomas Kasper v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1747
*Bernadean Acreman v. Merck & Co., Inc, et al.*, C.A. No. 4:05-1748
*Josephine Tourville v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1750
*Jacqueline M. Lawrence v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1751
*Adele Anthon v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1752
*James B. Elgin, Jr., v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1753

- A2 -

<u>Eastern District of Missouri</u> (Continued)

*Richard Menzel v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1755
*Marcy A. West v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1756
*Hilda L. Tucker v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1757
*Arzie Stephens v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1758
*Shirley Adams, et al. v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1947
*Marie Nobles, et al. v. Merck & Co., Inc., et al.*, C.A. No. 4:05-2040
*Bernadette Dryer, et al. v. Merck & Co., Inc., et al.*, C.A. No. 4:05-2043
*Jean Davis, et al. v. Merck & Co., Inc., et al.*, C.A. No. 4:05-2076

EXHIBIT I

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**MDL 1699**

FEB 15 2006

FILED
CLERK'S OFFICE

*RELEASED FOR PUBLICATION*

*DOCKET NOS. 1657 & 1699*

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

*IN RE VIOXX MARKETING, SALES PRACTICES AND PRODUCTS
LIABILITY LITIGATION*
*IN RE BEXTRA AND CELEBREX MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION*

Juanell Y. McBrayer Wilkes, et al. v. Merck & Co., Inc., et al., N.D. Alabama, C.A. No. 2:05-1214
Jackie Collins v. Merck & Co., Inc., et al., S.D. Illinois, C.A. No. 3:05-451
Gracie Blount v. Merck & Co., Inc., et al., S.D. Illinois, C.A. No. 3:05-673

**BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, D.
LOWELL JENSEN, J. FREDERICK MOTZ,* ROBERT L. MILLER, JR.,
KATHRYN H. VRATIL AND DAVID R. HANSEN, JUDGES OF THE PANEL**

*ORDER OF TRANSFER WITH SIMULTANEOUS
SEPARATION, REMAND AND TRANSFER*

Presently before the Panel are motions, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), by plaintiffs in the two Illinois actions and the health care provider defendants in the Alabama action seeking to vacate the Panel's order conditionally i) transferring these actions involving the prescription medication Vioxx (manufactured by Merck & Co., Inc. (Merck)) to the Eastern District of Louisiana for inclusion in the Section 1407 proceedings occurring there in MDL-1657; ii) simultaneously separating and remanding claims in these actions relating to prescription medications Bextra and Celebrex (manufactured by Pfizer Inc. (Pfizer)) to their respective transferor districts; and iii) transferring the resulting Bextra/Celebrex actions to the Northern District of California for inclusion in MDL-1699 pretrial proceedings. Defendants Pfizer, Pharmacia Corp., G.D. Searle LLC and Merck oppose these motions and urge effectuation of the Panel's order.

On the basis of the papers filed and hearing session held, the Panel finds that these actions involve common questions of fact with i) actions in MDL-1657 previously transferred to the Eastern District of Louisiana, and ii) actions in MDL-1699 similarly centralized in the Northern District of California. The Panel further finds that transfer for inclusion in the coordinated or consolidated pretrial proceedings in those two districts will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. Transfer is also appropriate for reasons expressed by the Panel in its

---

\* Judge Motz took no part in the decision of this matter.



- 2 -

original orders directing centralization in these two dockets. In MDL-1657, the Panel held that the Eastern District of Louisiana was a proper Section 1407 forum for actions relating to Vioxx. *See In re Vioxx Products Liability Litigation*, 360 F.Supp.2d 1352 (J.P.M.L. 2005). Likewise, the Panel held that the Northern District of California was a proper Section 1407 forum for actions relating to Bextra and/or Celebrex. *See In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation*, 391 F.Supp.2d 1377 (J.P.M.L. 2005). Pending motions to remand these actions to state court can, in appropriate parts, be presented to and decided by each of the transferee courts. *See, e.g., In re Ivy*, 901 F.2d 7 (2d Cir. 1990); *In re Prudential Insurance Company of America Sales Practices Litigation*, 170 F.Supp.2d 1346, 1347-48 (J.P.M.L. 2001).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, these actions are transferred to the Eastern District of Louisiana and, with the consent of that court, assigned to the Honorable Eldon E. Fallon for inclusion in the coordinated or consolidated pretrial proceedings occurring there in MDL-1657 -- *In re Vioxx Marketing, Sales Practices and Products Liability Litigation*. The claims relating to Pfizer's Bextra and Celebrex prescription medications are separated and remanded, pursuant to 28 U.S.C. § 1407(a), to their respective transferor courts.

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 1407, the resulting actions involving claims relating to Bextra and Celebrex are transferred to the Northern District of California and, with the consent of that court, assigned to the Honorable Charles R. Breyer for inclusion in the coordinated or consolidated pretrial proceedings occurring there in MDL-1699 -- *In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation*.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

EXHIBIT J



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 462919 (E.D.La.), 2000-1 Trade Cases  P 72,885
(Cite as: Not Reported in F.Supp.2d)

▷
Briefs and Other Related Documents

Falgoust v. Microsoft Corp.E.D.La.,2000.
    United States District Court, E.D. Louisiana.
        Clair FALGOUST, et al.
            v.
        MICROSOFT CORPORATION
            No. CIV.A.00-0779.

            April 19, 2000.

MCNAMARA, Chief J.
*1 Before the court are the following motions:

(1) "Motion to Remand" filed by Plaintiffs and opposed by Defendant Microsoft; and

(2) "Motion to Stay All Proceedings Until the MDL Panel Rules on Motions to Transfer this and Other Actions Pursuant to 28 U.S.C. § 1407" filed by Defendant and opposed by Plaintiffs.

The motions, set for hearing on April 19, 2000, are before the court on briefs without oral argument. Having considered the memorands of counsel and the applicable law, the court now rules.

            BACKGROUND

The instant action is one of many cases filed against Microsoft after findings of fact were issued in *United States v. Microsoft* on November 5, 1999. Currently, there are motions by several parties in these cases pending before the Judicial Panel on Multidistrict Litigation ("JPML") for consolidation of all cases against Microsoft.

The Defendant requests that this court exercise its discretion and stay pretrial proceedings, including determinations of jurisdictional issues, pending a determination by the JPML. Plaintiffs oppose the motion, and urge this court to deny the stay, determine that jurisdiction is lacking and remand the case to state court.

            ANALYSIS

The JPML is established under 28 U.S.C. § 1407. The purpose of this statute is to permit the

centralization in one district of all pretrial proceedings in civil actions involving one or more common questions of fact pending in different districts.[FN1] Further, the statute seeks to eliminate potential conflicting rulings by coordinate district and appellate judges.[FN2]

> FN1. *Matter of New York City Mun. Securities Litigation, 572 F.2d 49, 51-52 (2nd Cir.1978).*

> FN2. *In re Air Crash Disaster off Long Island, N.Y. on July 17, 1996, 965 F.Supp. 5, 7 (S.D.N.Y.1997).*

A pending motion before the JPML does not affect the jurisdiction of the transferor court.[FN3] However, courts have inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."[FN4]

> FN3. *In re Air Crash Disaster at Paris, France on March 3, 1974, 376 F.Supp. 887, 888 (J.P.M.L.1974).*

> FN4. *Landis v. North American Co., 57 S.Ct. 163, 166 (1936).*

Plaintiffs assert that this court lacks subject matter jurisdiction and that jurisdictional issues should be resolved prior to any other action. While generally true, cases such as this require special consideration.

As stated previously, the purpose of the JPML is to promote judicial economy and to prevent inconsistent rulings. This case presents questions of fact similar to the other actions pending before the JPML. Additionally, the same jurisdictional question raised in this case has been raised before this court in another case against Microsoft, and will likely be raised in many of the other cases pending against Microsoft in other districts.

In support of their opposition, Plaintiffs have included a letter from the JPML to Judge Fallon regarding *Tramonte v. Chrysler Corp.*[FN5] where a motion to transfer was pending before the JPML and a motion to remand was pending before Judge Fallon. Plaintiffs quote a sentence from the letter which

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



EXHIBIT
ALL-STATE LEGAL®
J

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 462919 (E.D.La.), 2000-1 Trade Cases P 72,885
(Cite as: Not Reported in F.Supp.2d)

Page 2

states "In the Panel's experience, such motions to remand to state court often involve questions unique to an action that are well suited for decisions prior to the 1407 transfer." While in *Tramonte* there were unique questions to be considered regarding jurisdiction, this is not the case here. As previously stated, this exact issue was presented to this court in another action against Microsoft, and will surely be an issue in many of the other cases pending against Microsoft in other districts.

FN5. Civil Action No. 95-2109 (E.D. La. June 28, 1999).

*2 Plaintiffs also cite *Panama v. American Tobacco Co.*,[FN6] in support of their position, and assert that "the facts of this case closely mirror those in *Panama*." Plaintiffs' reliance on *Panama* is misplaced. Procedurally, the two cases are similar in that defendants in both cases filed motions to stay pending a decision by the JPML, and plaintiffs in both cases filed motions to remand. However, the court in *Panama* noted that not all defendants joined in the motion to transfer and consolidate with the JPML and that there was the likelihood that the JPML "may not accept this case."[FN7]

FN6. 1999 WL 350030 (E.D.La.1999).

FN7. *Id.* at n2.

Plaintiffs assert that the JPML "does not have the power to consider the propriety of coordinated or consolidated pretrial proceedings in state court actions."[FN8] However, once removed, federal courts have jurisdiction to determine jurisdiction, the JPML has the power to transfer cases with motions to remand pending, and the district courts have discretion to stay actions pending decisions of the JPML even where jurisdictional questions exist.

FN8. See Plaintiffs' Memorandum in Opposition at p. 5.

The Second Circuit determined that the JPML does have jurisdiction to transfer a case even where a jurisdictional objection is pending.[FN9] In *Weinke v. Microsoft,* this same issue was presented to the district court. In that case, the court exercised its jurisdiction and stayed the action pending a decision by the JPML.[FN10]

FN9. See *In re Ivy,* 901 F.2d 7, 9 (2d Cir.1990).

FN10. 2000 WL 220496 (E.D.Wis.1999).

In *Boudreaux v. Metropolitan Life Ins. Co.,* the court stated that "'[t]he transferee judge 'certainly has the power to determine the question of remand,' and if remand issues are common to many of [these cases], decisions by the transferee judge would avoid 'duplicative discovery and conflicting pretrial rulings.'"[FN11] Other cases have come to this same conclusion.[FN12]

FN11. 1995 WL 83788 at *2, (E.D.La.1995)(quoting *In re Air Crash Disaster at Florida,* 368 F.Supp. 812, 813 (J.P.M.L.1973)).

FN12. *In re Professional Hockey Antitrust Litigation,* 369 F.Supp. 1117, 1118 (J.P.M.L.1974); *In re Air Crash Disaster at Juneau Alaska,* 360 F.Supp. 1406 (J.P.M.L.1973).

In all of these cases the courts determined that consistency and economy would be served by resolution of these issues by a single court after transfer by the JPML. The same is true in this case. In the event that the Panel determines that consolidation of these cases is not warranted, Plaintiff may re-urge the motion.

Courts consider the following factors in deciding whether a stay of the proceedings is appropriate: 1) hardship and inequity on the moving party without a stay; 2) prejudice the non-moving party will suffer if a stay is granted; and 3) judicial economy.[FN13]

FN13. See *Rivers v. Walt Disney Co.,* 980 F.Supp. 1358, 1360 (C.D.Cal.1997); See generally *Arthur-Magna, Inc. v. Del-Val Financial Corp.,* 1991 WL 13725 (D.N.J.1991); *Boudreaux v. Metropolitan Life Ins. Co.,* 1995 WL 83788 (E.D.La.1995).

First, Microsoft would suffer a considerable hardship and inequity if forced to simultaneously litigate multiple suits in multiple courts. Further, they could potentially suffer conflicting rulings by different judges in these multiple suits. Second, Plaintiffs have

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 462919 (E.D.La.), 2000-1 Trade Cases P 72,885
(Cite as: Not Reported in F.Supp.2d)

failed to show any significant prejudice they would suffer, beyond the slight delay pending the JPML decision. Finally, the interests of judicial economy would best be served by granting a stay.

Accordingly;

IT IS ORDERED that further proceedings in this case are STAYED pending the decision on consolidation and transfer by the JPML.

*3 IT IS FURTHER ORDERED that Plaintiffs' Motion to Remand is DENIED at this time and may be re-urged if necessary after the decision of the JPML.

E.D.La.,2000.
Falgoust v. Microsoft Corp.
Not Reported in F.Supp.2d, 2000 WL 462919 (E.D.La.), 2000-1 Trade Cases P 72,885

Briefs and Other Related Documents (Back to top)

• 2:00CV00779 (Docket) (Mar. 14, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT K



EFiled:  Aug 24 2006  5:50PM EDT
Transaction ID 12176251

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| IN RE:  ASBESTOS LITIGATION: | ) |
| | ) |
| LILLIAN HARWOOD and JAMES HARWOOD, | ) |
| her husband, | ) |
| | ) |
| Plaintiffs , | ) |
| | ) |
| -vs.- | ) CA. NO. _06C-08-224_ |
| | ) |
| BONDEX INTERNATIONAL INC., | ) ASBESTOS |
| CERTAIN-TEED CORPORATION, | ) |
| FORD MOTOR COMPANY, | ) NON-ARBITRATION |
| FOSTER WHEELER ENERGY CORP., | ) |
| GARLOCK INC., | ) TRIAL BY JURY OF |
| GENERAL ELECTRIC COMPANY, | ) TWELVE DEMANDED |
| GENERAL MOTORS CORPORATION, | ) |
| HONEYWELL INTERNATIONAL INC., | ) |
| INGERSOLL-RAND COMPANY, | ) |
| JOHN CRANE, INC., | ) |
| METROPOLITAN LIFE INSURANCE | ) |
| COMPANY, | ) |
| NORTHRUP GRUMMAN CORPORATION, | ) |
| PHILIPS ELECTRONICS NORTH AMERICA | ) |
| CORPORATION, | ) |
| RPM INTERNATIONAL INC., | ) |
| RPM INC., | ) |
| T.H. AGRICULTURE & NUTRITION, L.L.C. successor to) |
| THOMPSON HAYWARD CHEMICAL CO., INC., | ) |
| UNION CARBIDE CORPORATION, | ) |
| WESTINGHOUSE ELECTRIC CORPORATION, | ) |
| n/k/a VIACOM, INC., | ) |
| | ) |
| Defendants, | ) |

## COMPLAINT

Comes now Plaintiffs, Lillian Harwood and James Harwood, by and through their

attorneys, BIFFERATO, GENTILOTTI, BIDEN & BALICK, L.L.C., and in support of

their claims against the Defendants, states as follows:

1



## FACTS

1.      Lillian Harwood and her husband, James Harwood  reside at:  110 San Souci Ave., Ocean Springs, Mississippi, and have lived at this residence from 1970 to the present.   Lillian Harwood's former residences include, but are not limited to: 920 Big Bethel Road, Hampton, Virginia, from 1965 to 1970; 3 Dimmock Ave., Newport News, Virginia, from 1959 to 1965; 636 Augusta St., Hampton, Virginia, from 1952 to 1959; 5885 Wickham Ave., Newport News, Virginia, from 1951 to 1952; 5400 Arlington Ave., Newport News, Virginia, from 1930 to 1951.

2.      Lillian Harwood was employed by Newport News Shipbuilding and Dry Dock Co. located at Newport News, Virginia, as a secretary from 1952 to 1953.   During the above employment, Lillian Harwood, was exposed to, inhaled, ingested and otherwise absorbed asbestos fibers emanating from various sources including, but not limited to, industrial equipment, industrial materials, refractories, insulation and sheet gasket material.

3.     Lillian Harwood, was exposed to asbestos from brakes, friction materials, and other automotive components during non-occupational projects, including, but not limited to, automotive repair and maintenance in Hampton, Virginia; Newport News, Virginia; and Ocean Springs, Mississippi; and from joint compound, drywall, roofing materials, siding, cement, and other building materials during non-occupational projects, including, but not limited to, home construction in Hampton, Virginia.

4.      Lillian Harwood's husband, James Harwood, was employed by Newport News Shipbuilding & Dry Dock Co. located at/in Newport News, Virginia, as a machinist and design specialist from 1950 to 1970, while Lillian Harwood resided with

her husband.   Lillian Harwood's husband, James Harwood, former employers include, but are not limited to the following:  Ingall's located at/in Pascagoula, Mississippi, as an engineer from 1970 to 1994.  Lillian Harwood's husband would on many occasions work with and around asbestos and asbestos-containing products, including, but not limited to, industrial equipment, industrial materials, boilers, turbines, insulation, sheet gasket material, pumps, electrical components and materials, and refractories. Dust containing asbestos fibers created by working with and around said asbestos and asbestos-containing products would permeate the person and clothing of  Lillian Harwood 's husband.  Said family members carried this dust into the home, family vehicles and other areas where it became airborne.  As a result,  Lillian Harwood was repeatedly exposed to, inhaled, ingested and otherwise absorbed asbestos fibers originating from said family members' employment.

     5.    Lillian Harwood and James Harwood disclaim any claim for relief for any portion of the injuries sustained upon a federal enclave or as a result of the malfeasance of any persons acting as federal officers. Lillian Harwood and James Harwood allege no claim arising under the maritime law of the United States or arising under any other law of the United States of America or its Constitution.  One or more Defendants are citizens of the State of Delaware and this action is not properly removable on any theory or jurisdictional basis.

     a.    Defendant Bondex International Inc. is a foreign business entity doing business in the State of Delaware and subject to service of process pursuant to 10 Del. C. § 3104(c) by service upon the Secretary of State of the State of Delaware.

     b.    Defendant Certain-Teed Corporation  is a Delaware Corporation whose registered agent for service of process is The Corporation Trust Company, 1209

3

Orange Street, Wilmington, DE 19801.

c.      Defendant Ford Motor Company is a Delaware Corporation whose registered agent for service of process is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

d.      Defendant Foster Wheeler Energy Corp. is a Delaware Corporation whose registered agent for service of process is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

e.      Defendant Garlock Inc. is a foreign business entity doing business in the State of Delaware and subject to service of process pursuant to 10 Del. C. § 3104(c) by service upon the Secretary of State of the State of Delaware.

f.      Defendant General Electric Company is a Delaware Corporation whose registered agent for service of process is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

g.      Defendant General Motors Corporation is a Delaware Corporation whose registered agent for service of process is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

h.      Defendant Honeywell International Inc. is a Delaware Corporation whose registered agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

i.      Defendant Ingersoll-Rand Company is a Delaware Corporation whose registered agent for service of process is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

j.      Defendant John Crane, Inc. is a Delaware Corporation whose registered

4

agent for service of process is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

k.      Defendant Metropolitan Life Insurance Company is an insurance company licensed to do business in the State of Delaware and as such is subject to service of process by serving the Insurance Commissioner of Delaware, 841 Silver Lake Blvd., Dover, DE 19901.

l.      Defendant Northrop Grumman Corporation is a Delaware Corporation whose registered agent for service of process is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

m.      Defendant Philips Electronics North America Corporation is a Delaware Corporation whose registered agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

n.      Defendant RPM International Inc. is a Delaware Corporation whose registered agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

o.      Defendant RPM Inc. is a foreign business entity doing business in the State of Delaware and subject to service of process pursuant to 10 Del. C. § 3104(c) by service upon the Secretary of State of the State of Delaware.

p.      Defendant T.H. Agriculture & Nutrition, L.L.C. successot to Thompson Hayward Chemical Co., Inc. is a Delaware Corporation whose registered agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

q.      Defendant Union Carbide Corporation is a Delaware Corporation whose

5

registered agent for service of process is The Corporation Trust Company, 1209

Orange Street, Wilmington, DE 19801.

    r.     Defendant Westinghouse Electric Corporation n/k/a Viacom, Inc. is a

Delaware Corporation whose registered agent for service of process is

Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington,

DE 19808.

6.     All Defendants herein except for Metropolitan Life Insurance Company were at

all times pertinent directly or indirectly engaged in the specification, mining, manufacturing,

distribution, sales, licensing, leasing, installation, removal or use of asbestos and asbestos-

containing products. They were also engaged in the development, manufacture, distribution,

sales, licensing or leasing of equipment, procedures, or technology necessary to mine,

manufacture, sell, distribute, install, remove and use asbestos and asbestos-containing

products.

7.     During the course of her employment and her husband's employment at the

location(s) mentioned above, during non-occupational work projects (including, but not

limited to, home and automotive repairs, maintenance and remodeling) and/or in other ways,

Lillian Harwood was wrongfully exposed to and inhaled, ingested or otherwise absorbed

asbestos fibers, an inherently dangerous toxic substance emanating from certain products she

and her husband  were working with and around which were manufactured, sold, distributed

or installed by the Defendants:  BONDEX INTERNATIONAL INC., CERTAIN-TEED

CORPORATION, FORD MOTOR COMPANY, FOSTER WHEELER ENERGY CORP.,

GARLOCK INC., GENERAL ELECTRIC COMPANY, GENERAL MOTORS

CORPORATION, HONEYWELL INTERNATIONAL INC., INGERSOLL-RAND

COMPANY, JOHN CRANE, INC., METROPOLITAN LIFE INSURANCE COMPANY, NORTHROP GRUMMAN CORPORATION, PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, RPM INTERNATIONAL INC., RPM INC., T.H. AGRICULTURE & NUTRITION, L.L.C. successor to THOMPSON HAYWARD CHEMICAL CO., INC., UNION CARBIDE CORPORATION, WESTINGHOUSE ELECTRIC CORPORATION, n/k/a VIACOM, INC.

8.    At all times herein set forth, the Defendants' products were being employed in the manner and for the purposes for which they were intended.

9.    Lillian Harwood's and/or her husband's exposure to and inhalation, ingestion or absorption of the asbestos fibers emanating from the above-mentioned products was completely foreseeable and could or should have been anticipated by the Defendants.

10.    The Defendants knew or should have known that the asbestos fibers contained in their products had a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them.

11.    Lillian Harwood suffers from an asbestos-related disease(s), including but not limited to, mesothelioma. Lillian Harwood first became aware that she suffered from said disease(s) on or about March 14, 2006, and, subsequently thereto, became aware that the same was wrongfully caused. As a result of her developing mesothelioma, Lillian Harwood has endured great physical pain and suffering, mental anguish and emotional pain and suffering. Further, as a result of Defendants' wrongful conduct, Lillian Harwood was required to receive and received medical treatment to mitigate her asbestos related disease, incurring reasonable and necessary costs for medical care, diagnosis and treatment.

## COUNT I

7

## STRICT LIABILITY

12.    The allegations in paragraphs One (1) through Eleven (11) are realleged and incorporated by reference within this Count.  Plaintiff's recovery herein is predicated upon the substantive law of the State of Mississippi or such law as the Court holds to be applicable.

13.   At the time Defendants and each of them manufactured, sold and distributed the asbestos-containing products to which Plaintiff was exposed, said products were in a defective condition and were unreasonably dangerous in that:

(a)    Said products contained friable asbestos fibers as a constituent substance;

(b)    Said asbestos fibers were highly toxic, deleterious, poisonous and harmful to the health of Plaintiff and others similarly situated;

(c)    Said products were not accompanied by any warning/instructions or by adequate warning/ instructions advising of the danger of exposure to asbestos or of precautions to be employed in the use of asbestos-containing products.

14.    Said products reached the point of Plaintiff's exposure in substantially the same condition as when manufactured, distributed and sold.

15.    At all times relevant hereto, said products were used in the manner and environment intended, and in a manner reasonably foreseeable and anticipated by Defendants and each of them.

16.    Defendants are strictly liable to Lillian Harwood, deceased, for all injuries and damages which were contracted as a direct and proximate result of her exposure to asbestos from said products.

17.    That as a direct and proximate result of one or more of the foregoing negligent

8

acts or omissions on the part of the Defendants, Lillian Harwood was exposed to and inhaled,

ingested or otherwise absorbed asbestos fibers causing Lillian Harwood to develop the asbestos

disease aforesaid, which has disabled and disfigured Lillian Harwood ; Lillian Harwood has in

the past and will in the future be compelled to expend and become liable for large sums of

monies for hospital, medical and other health care services necessary for the treatment of her

asbestos-induced disease and conditions; Lillian Harwood has in the past and will in the future

experience great physical pain and mental anguish as a result of her asbestos-induced disease and

conditions, Lillian Harwood has in the past and will in the future be hindered and prevented

from pursuing her normal course of employment, thereby losing large sums of money which

otherwise would have accrued to her.

**COUNT II**

**NEGLIGENCE**
**AS TO MANUFACTURERS, SELLERS, DISTRIBUTORS AND INSTALLERS**
**OF ASBESTOS PRODUCTS**

18.     The allegations in paragraphs One (1) through Seventeen (17) are realleged and

incorporated by reference within this Count.   Plaintiff's recovery herein is predicated upon the

substantive law of the State of Mississippi and the State of Virginia or such law as the Court

holds to be applicable.

19.     At all times herein relevant, the Defendants had a duty to exercise reasonable care

and caution for the safety of Lillian Harwood and her husband and others working with and

around the products of the Defendants containing asbestos.

20.     The Defendants knew or should have known that the asbestos fibers contained in

their products had a toxic, poisonous, and highly deleterious effect upon the health of persons

inhaling, ingesting or otherwise absorbing them.

9

21.     The Defendants were negligent in that they failed to exercise ordinary care and caution for the safety of Lillian Harwood in one or more of the following respects:

a.  Included asbestos in their products, even though it was completely foreseeable and could or should have been anticipated that persons such as Lillian Harwood and her husband working with or around them would inhale, ingest or otherwise absorb asbestos;

b.  Included asbestos in their products when the Defendants knew or should have known that said asbestos fibers would have a toxic, poisonous and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them;

c.  Included asbestos in their products when adequate substitutes for the asbestos in them was available;

d.  Failed to provide any or adequate warnings to persons working with and around the products of the dangers of inhaling, ingesting or otherwise absorbing the asbestos fibers contained in them;

e.  Failed to provide any or adequate instructions concerning the safe methods of working with and around the products, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing the asbestos fibers in them;

f.  Failed to conduct tests on the asbestos containing products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which persons such as Lillian Harwood and workers such as Lillian Harwood's husband might be exposed while working with the products; and,

g.  Failed to require and/or advise workers such as Lillian Harwood's family members of hygiene practices designed to reduce and/or prevent carrying asbestos fibers into the home and thereby exposing family members such as Lillian Harwood; and,

g.  Designed, manufactured and sold equipment, vehicles, machinery, technologies and systems that included asbestos-containing components and required and/or specified the use of asbestos-containing replacement components.

22.     That as a direct and proximate result of one or more of the foregoing negligent acts or omissions on the part of the Defendants, Lillian Harwood was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers causing Lillian Harwood to develop the asbestos

10

disease aforesaid, which has disabled and disfigured Lillian Harwood; Lillian Harwood has in

the past and will in the future be compelled to expend and become liable for large sums of

monies for hospital, medical and other health care services necessary for the treatment of her

asbestos-induced disease and conditions; Lillian Harwood has in the past and will in the future

experience great physical pain and mental anguish as a result of her asbestos-induced disease and

conditions, Lillian Harwood  has in the past and will in the future be hindered and prevented

from pursuing her normal course of employment, thereby losing large sums of money which

otherwise would have accrued to her.

<u>**COUNT III**</u>

<u>**WILLFUL AND WANTON CONDUCT**</u>
<u>**AS TO MANUFACTURERS, SELLERS, DISTRIBUTORS AND INSTALLERS**</u>
<u>**OF ASBESTOS PRODUCTS**</u>

23.    The allegations in paragraphs One (1) through Twenty-Two (22) are realleged and

incorporated by reference within this Count.  Plaintiff's recovery herein is predicated upon the

substantive law of the State of Mississippi and the State of Virginia or such law as the Court

holds to be applicable.

24.    The Defendants had a duty to refrain from willful and wanton acts or omissions

which would harm Lillian Harwood.

25.    Defendants are guilty of one or more of the following acts or omissions

amounting to willful and wanton misconduct:

        a.    Intentionally or with reckless disregard for the safety of Lillian Harwood,
included asbestos in their products, even though it was completely
foreseeable and could or should have been anticipated that persons such as
Lillian Harwood and her husband working with or around them would
inhale, ingest or otherwise absorb asbestos;

11

b.     Intentionally or with a reckless disregard for the safety of Lillian Harwood, included asbestos in their products when the Defendants knew or should have known that said asbestos fibers would have a toxic, poisonous and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them;

c.     Intentionally or with a reckless disregard for the safety of Lillian Harwood, included asbestos in the products when adequate substitutes for the asbestos in them was available;

d.     Intentionally or with a reckless disregard for the safety of Lillian Harwood, failed to provide any or adequate warnings to persons working with and around the products of the dangers of inhaling, ingesting or otherwise absorbing the asbestos fibers in them;

e.     Intentionally or with a reckless disregard for the safety of Lillian Harwood, failed to provide any or adequate instructions concerning the safe methods of working with and around the products, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing the asbestos fibers in them;

f.     Intentionally or with a reckless disregard for the safety of Lillian Harwood, failed to conduct tests on the asbestos-containing products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which persons such as Lillian Harwood and workers such as Lillian Harwood's husband might be exposed while working with the products;

g.     Failed to adequately label, warn, package, market, distribute, install, remove, or use asbestos in a reasonable manner which would minimize or eliminate the escape of asbestos dust and fibers, therefore adding to the exposure of Lillian Harwood and other similarly situated;

h.     Failed to take adequate steps to remedy the above failures, including but not limited to (1) failure to recall or require removal of asbestos and asbestos products, coupled with (2) ongoing failure to conduct research as to how to cure or minimize asbestos injuries and how to use, install, or distribute asbestos so as to render if safe, and (3) failure to promptly and safely remove the asbestos now in place; and,

i.     Intentionally or with a reckless disregard for the safety of Lillian Harwood,  failed to require and/or advise workers such as Lillian Harwood's family members of hygiene practices designed to reduce and/or prevent carrying asbestos fibers into the home and thereby exposing family members such as Lillian Harwood; and,

12

    j.      Intentionally or with a reckless disregard for the safety of Lillian Harwood, designed, manufactured and sold equipment, vehicles, machinery, technologies and systems that included asbestos-containing components and required and/or specified the use of asbestos-containing replacement components.

26.    As a direct and proximate result of the above actions and/or omissions of Defendants, Lillian Harwood was injured as described herein.

27.    A direct and proximate result of one or more of the foregoing acts or omissions on the part of the Defendants, Lillian Harwood was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers causing Lillian Harwood to develop the asbestos disease aforesaid, which has disabled and disfigured Lillian Harwood ; Lillian Harwood has in the past and will in the future be compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of her asbestos-induced disease and conditions; Lillian Harwood has in the past and will in the future experience great physical pain and mental anguish as a result of her asbestos-induced disease and conditions, Lillian Harwood has in the past and will in the future be hindered and prevented from pursuing her normal course of employment, thereby losing large sums of money which otherwise would have accrued to her.

28.    In addition to compensatory damages, an award of punitive damages is appropriate and necessary in order to punish Defendants and each of them, for their willful, wanton, intentional and/or reckless misconduct and to deter each Defendant and others similarly situated from engaging in like misconduct in the future.

## COUNT IV

## (CONSPIRACY AGAINST METROPOLITAN LIFE INSURANCE COMPANY)

13

29.     The allegations in paragraphs One (1) through Twenty-Eight (28) are realleged and incorporated by reference within this Count.  Plaintiff's recovery herein is predicated upon the substantive law of the State of Mississippi and the State of Virginia or such law as the Court holds to be applicable.

30.     Defendants METROPOLITAN LIFE INSURANCE COMPANY agreed and conspired with the Defendants named herein and with other miners, manufacturers, sellers, distributors and installers of asbestos-containing products to suppress and misrepresent the hazards of exposure to asbestos.

31.     Defendants Metropolitan Life Insurance Company, as well as other members of the asbestos industry, including but not limited to Defendants listed herein, engaged in investigations and research as to the hazards of asbestos and often edited out observations and conclusions deemed to be potentially harmful to the asbestos industry and only published favorable portions of their findings or refrained from publishing anything.  Furthermore, Metropolitan Life financially aided the asbestos industry in its endeavors to mislead and obfuscate.

32.     As a direct and proximate result of the above wrongful activities of the Defendants, Lillian Harwood and her family members were exposed to asbestos and he developed the asbestos-related disease discussed and sustained the injuries described herein.

33.     As a direct and proximate result of such actions and omissions of Defendants, Lillian Harwood was damaged as described herein.

## COUNT V

## STRICT LIABILITY/ULTRA-HAZARDOUS ACTIVITY (TAKE HOME PREMISES)

14

34.   The allegations in paragraphs One (1) through Thirty-Three (33) are realleged and incorporated by reference within this Count.   Plaintiff's recovery herein is predicated upon the substantive law of the State of Mississippi and the State of Virginia or such law as the Court holds to be applicable.

35.   Defendant, **NORTHROP GRUMMAN CORPORATION**, owned, operated and/or controlled the Newport News Shipbuilding & Dry Dock Co. premises located at/in Newport News, Virginia, at all relevant times.   While Lillian Harwood resided with her husband, Lillian Harwood's husband worked at the premises of Defendant from 1950 to 1970. Defendant, **NORTHROP GRUMMAN CORPORATION**, owned, operated and/or controlled the Ingall's premises located at/in Pascagoula, Mississippi, at all relevant times.

36.   While present upon the above-named premises, and during employment with Defendants, Lillian Harwood's husband was exposed to asbestos fiber emanating from asbestos-containing materials and raw asbestos present and being used at said premises by Lillian Harwood's husband and others, which Lillian Harwood's husband carried home on his person and clothing.   Lillian Harwood was exposed to and inhaled, ingested or otherwise absorbed the asbestos fibers carried home on the person and clothing of her husband.

37.   As a direct and proximate result of said exposure, inhalation, ingestion and/or absorption, Lillian Harwood suffered from asbestos-related disease(s), including but not limited to, mesothelioma.   Lillian Harwood first became aware that she suffered from said disease(s) on or about March 14, 2006, and, subsequently thereto, became aware that the same was wrongfully caused.

15

38.   Lillian Harwood and/or her husband's exposure to and inhalation, ingestion and/or absorption of said asbestos fibers was foreseeable and could or should have been anticipated by Defendants and each of them.

39.   Defendants knew or should have known that exposure to asbestos fibers posed an unreasonable risk of harm to and others similarly situated.

40.   Defendants' use of asbestos-containing products and raw asbestos at the above-named facilities, in a manner causing the release of asbestos fibers, constituted an ultra-hazardous activity.  Defendants are strictly liable for injuries caused by such activity, regardless of the amount care exercised.

41.   That as a direct and proximate result of one or more of the foregoing acts and/or omissions on the part of the Defendants, Lillian Harwood was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers causing Lillian Harwood to develop the asbestos disease aforesaid, which has disabled and disfigured Lillian Harwood; Lillian Harwood has in the past and will in the future be compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of her asbestos-induced disease and conditions; Lillian Harwood has in the past and will in the future experience great physical pain and mental anguish as a result of her asbestos-induced disease and conditions, Lillian Harwood has in the past and will in the future be hindered and prevented from pursuing her normal course of employment, thereby losing large sums of money which otherwise would have accrued to her.

## COUNT VI

## NEGLIGENCE (TAKE HOME PREMISES)

16

42.    The allegations in paragraphs One (1) through Forty-One (41) are realleged and incorporated by reference within this Count.   Plaintiff's recovery herein is predicated upon the substantive law of the State of Mississippi and the State of Virginia or such law as the Court holds to be applicable.

43.    Lillian Harwood and her husband were unaware and had no reasonable way to know or realize the risks of being exposed to asbestos.  Defendants should have anticipated that Lillian Harwood and her husband did not know and would not discover or realize the risks of being exposed to asbestos fibers or the risks of carrying asbestos fibers home.

44.    Defendants had a duty to use ordinary care to see that the premises, at which Lillian Harwood's husband was rightfully present, were in a reasonably safe condition for use by Lillian Harwood's husband and to use ordinary care for the safety of Lillian Harwood and her husband in conducting any operations or activities on said premises.

45.    Defendants breached its duties to Lillian Harwood and her husband and were negligent in one or more of the following respects:

> (a) Specified/required the use/application/removal of asbestos-containing materials by Lillian Harwood's husband, and others, including co-workers of Lillian Harwood's husband and outside contractors, in the vicinity of Lillian Harwood's husband and/or in areas in the vicinity of Lillian Harwood's husband and/or in areas in which Lillian Harwood's husband performed work;
>
> (b) Required Lillian Harwood's husband to perform work in the vicinity of those using/applying/removing asbestos-containing materials;
>
> (c) Purchased/provided asbestos-containing materials for purposes of application at the above-named premises;
>
> (d) Failed to replace asbestos-containing materials at the premises with non-asbestos substitutes, which Defendants knew or should have known were available;

17

(e) Failed to warn Lillian Harwood's husband that they were working with and/or around asbestos-containing materials and of the risks associated therewith, including that Lillian Harwood and her husband were being exposed to asbestos fibers and of the adverse health effects of such exposure;

(f) Failed to require and/or advise Lillian Harwood's husband, other employers and/or outside contractors to use safety equipment and practices designed to reduce the release of asbestos fibers and/or exposure to asbestos;

(g) Failed to provide equipment designed to contain asbestos fibers and reduce the risks of exposure to asbestos;

(h) Failed to conduct tests on the asbestos containing products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which persons such as Lillian Harwood and workers such as her husband might be exposed while working with the products; and,

(i) Failed to require and/or advise workers such as Lillian Harwood's husband of hygiene practices designed to reduce and/or prevent carrying asbestos fibers into the home and thereby exposing family members such as Lillian Harwood.

46.   As a direct and proximate result of one or more of the foregoing acts and/or omissions by Defendants, Lillian Harwood was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers, causing Lillian Harwood to develop the aforementioned asbestos-related disease.

47.   That as a direct and proximate result of one or more of the foregoing acts and/or omissions on the part of the Defendants, Lillian Harwood was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers causing Lillian Harwood to develop the asbestos disease aforesaid, which has disabled and disfigured Lillian Harwood; Lillian Harwood has in the past and will in the future be compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of her asbestos-induced disease and conditions; Lillian Harwood has in the past and will in the future experience great physical pain and mental anguish as a result of her asbestos-induced disease and

18

conditions, Lillian Harwood has in the past and will in the future be hindered and prevented from

pursuing her normal course of employment, thereby losing large sums of money which otherwise

would have accrued to her.

<u>**COUNT VII**</u>

<u>**WILLFUL AND WANTON MISCONDUCT (TAKE HOME PREMISES)**</u>

48.   The allegations in paragraphs One (1) through Forty-Seven (47) are realleged and

incorporated by reference within this Count.   Plaintiff's recovery herein is predicated upon the

substantive law of the State of Mississippi and the State of Virginia or such law as the Court

holds to be applicable.

49.   Defendants and each of them had a duty to see that the premises, at which Lillian

Harwood's husband was rightfully present, was in a reasonably safe condition for use by Lillian

Harwood's husband and to protect Lillian Harwood and Lillian Harwood's husband from harm in

conducting any operations or activities on said premises.

50.   Defendants breached their duties to Lillian Harwood and her husband and acted

willfully, wantonly, intentionally and/or in reckless disregard for Lillian Harwood and her

husband's safety and health in one or more of the following respects:

> (a) Intentionally or with a reckless disregard for the safety of Lillian Harwood
> and/or her husband, specified/required the use/application/removal of
> asbestos-containing materials by Lillian Harwood's husband, and others,
> including co-workers of Lillian Harwood's Lillian Harwood and outside
> contractors, in the vicinity of Lillian Harwood's husband and/or in areas in the
> vicinity of Lillian Harwood's husband and/or in areas in which Lillian Harwood's
> husband performed work;

> (b) Intentionally or with a reckless disregard for the safety of Lillian Harwood
> and/or her husband, required Lillian Harwood's husband to perform work in the
> vicinity of those using/applying/removing asbestos-containing materials;

19

(c) Intentionally or with a reckless disregard for the safety of Lillian Harwood and/or her husband, purchased/provided asbestos-containing materials for purposes of application at the above-named premises;

(d) Intentionally or with a reckless disregard for the safety of Lillian Harwood and/or her husband, failed to replace asbestos-containing materials at the premises with non-asbestos substitutes, which Defendants knew or should have known were available;

(e) Intentionally or with a reckless disregard for the safety of Lillian Harwood and/or her husband, failed to warn Lillian Harwood's husband that he was working with and/or around asbestos-containing materials and of the risks associated therewith, including that Lillian Harwood and her husband were being exposed to asbestos fibers and of the adverse health effects of such exposure;

(f) Intentionally or with a reckless disregard for the safety of Lillian Harwood and/or her husband, failed to require and/or advise Lillian Harwood's husband, other employers and/or outside contractors to use safety equipment and practices designed to reduce the release of asbestos fibers and/or exposure to asbestos;

(g) Intentionally or with a reckless disregard for the safety of Lillian Harwood and/or her husband, failed to provide equipment designed to contain asbestos fibers and reduce the risks of exposure to asbestos;

(h)  Intentionally or with a reckless disregard for the safety of Lillian Harwood and/or her husband, failed to conduct tests on the asbestos containing products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which persons such as Lillian Harwood and workers such as her husband might be exposed while working with the products; and,

(i)  Intentionally or with a reckless disregard for the safety of Lillian Harwood and/or her husband, failed to require and/or advise workers such as Lillian Harwood's husband of hygiene practices designed to reduce and/or prevent carrying asbestos fibers into the home and thereby exposing family members such as Lillian Harwood.

51.    As a direct and proximate result of one or more of the foregoing willful, wanton, intentional and/or reckless acts and/or omissions by Defendants, Lillian Harwood was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers, causing her to develop the aforementioned asbestos-related disease for which Lillian Harwood is entitled to recover compensatory damages, as prayed above.

20

52. That as a direct and proximate result of one or more of the foregoing acts and/or omissions on the part of the Defendants, Lillian Harwood was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers causing Lillian Harwood to develop the asbestos disease aforesaid, which has disabled and disfigured Lillian Harwood; Lillian Harwood has in the past and will in the future be compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of her asbestos-induced disease and conditions; Lillian Harwood has in the past and will in the future experience great physical pain and mental anguish as a result of her asbestos-induced disease and conditions, Lillian Harwood has in the past and will in the future be hindered and prevented from pursuing her normal course of employment, thereby losing large sums of money which otherwise would have accrued to her.

## COUNT VIII

## LOSS OF CONSORTIUM

53. The allegations in paragraphs One (1) through Fifty-Two (52) are realleged and incorporated by reference within this Count. Plaintiff's recovery herein is predicated upon the substantive law of the State of Mississippi and the State of Virginia or such law as the Court holds to be applicable.

54. Plaintiff James Harwood is married to plaintiff Lillian Harwood. As a result of the Defendants' wrongful conduct which cause her husband's above stated asbestos-related disease and problems, plaintiff James Harwood has and will continue in the future to suffer a loss of support, consortium and society of her husband, together with related mental anguish and pain and suffering.

21

WHEREFORE, plaintiffs, Lillian Harwood and James Harwood pray this Court to enter

judgment against Defendants and to award: compensatory damages in an amount to be proved at

trial, but believed to exceed $100,000; and punitive damages in an amount sufficient to punish

Defendants for their misconduct and to deter similarly situated parties from committing like acts

of misconduct in the future; and for such other and further relief that this Court deems

appropriate.

> **BIFFERATO, GENTILOTTI, BIDEN**
> **& BALICK, L.L.C.**
>
> _____
> Ian Connor Bifferato (DE Id. No. 3273)
> Garvan F. McDaniel (DE Id. No. 4167)
> 1308 Delaware Avenue
> P.O. Box 2165
> Wilmington DE 19899-2165
> Tel. (302) 429-1900
> Fax. (302) 429-8600

Dated: _8/24/06_

**OF COUNSEL**
SIMMONSCOOPER LLC
John A. Barnerd (IL Id. No. 6269365)
707 Berkshire Boulevard
East Alton, Illinois 62024
Tele: (618) 259-2222
Fax: (618) 259-2251

22



EFiled: Aug 24 2006 5:50PM EDT
Transaction ID 12176251

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

IN RE: ASBESTOS LITIGATION: )
)
LILLIAN HARWOOD and JAMES HARWOOD, )
her husband, )
)
Plaintiffs , )
)
-vs.- )   CA. NO. *06C-08-224*
)
BONDEX INTERNATIONAL INC., )   ASBESTOS
CERTAIN-TEED CORPORATION, )
FORD MOTOR COMPANY, )   NON-ARBITRATION
FOSTER WHEELER ENERGY CORP., )
GARLOCK INC., )   TRIAL BY JURY OF
GENERAL ELECTRIC COMPANY, )   TWELVE DEMANDED
GENERAL MOTORS CORPORATION, )
HONEYWELL INTERNATIONAL INC., )
INGERSOLL-RAND COMPANY, )
JOHN CRANE, INC., )
METROPOLITAN LIFE INSURANCE )
   COMPANY, )
NORTHROP GRUMMAN CORPORATION, )
PHILIPS ELECTRONICS NORTH AMERICA )
   CORPORATION, )
RPM INTERNATIONAL INC., )
RPM INC., )
T.H. AGRICULTURE & NUTRITION, L.L.C. successor to)
   THOMPSON HAYWARD CHEMICAL CO., INC., )
UNION CARBIDE CORPORATION, )
WESTINGHOUSE ELECTRIC CORPORATION, )
   n/k/a VIACOM, INC., )
)
      Defendants, )

## CERTIFICATION OF VALUE

I, Garvan F. McDaniel, Esquire, attorney for the plaintiffs, hereby certify in good faith

at this time in my opinion that the sum of damages of the plaintiffs is in excess of $100,000.00,

exclusive of costs and interest.

1

BIFFERATO, GENTILOTTI, BIDEN,
& BALICK L.L.C.

_____

Ian Connor Bifferato (DE Id. No. 3273)
Garvan F. McDaniel (DE Id. No. 4167)
1308 Delaware Avenue
P.O. Box 2165
Wilmington DE 19899
Tel. (302) 429-1900
Fax. (302) 429-8600

Dated: _____8/24/06_____

EFiled: Aug 24 2006 5:50PM EDT
Transaction ID 12176251

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

IN RE:  ASBESTOS LITIGATION:  )
                              )
LILLIAN HARWOOD and JAMES HARWOOD,  )
  her husband,                )
                              )
        Plaintiffs ,          )
                              )
        -vs.-                 )    CA. NO. _06C-08-224_
                              )
BONDEX INTERNATIONAL INC.,    )    ASBESTOS
CERTAIN-TEED CORPORATION,     )
FORD MOTOR COMPANY,           )    NON-ARBITRATION
FOSTER WHEELER ENERGY CORP.,  )
GARLOCK INC.,                 )    TRIAL BY JURY OF
GENERAL ELECTRIC COMPANY,     )    TWELVE DEMANDED
GENERAL MOTORS CORPORATION,   )
HONEYWELL INTERNATIONAL INC., )
INGERSOLL-RAND COMPANY,       )
JOHN CRANE, INC.,             )
METROPOLITAN LIFE INSURANCE   )
  COMPANY,                    )
NORTHROP GRUMMAN CORPORATION, )
PHILIPS ELECTRONICS NORTH AMERICA )
  CORPORATION,                )
RPM INTERNATIONAL INC.,       )
RPM INC.,                     )
T.H. AGRICULTURE & NUTRITION, L.L.C. successor to)
  THOMPSON HAYWARD CHEMICAL CO., INC., )
UNION CARBIDE CORPORATION,    )
WESTINGHOUSE ELECTRIC CORPORATION, )
  n/k/a VIACOM, INC.,         )
                              )
        Defendants,           )

### SUMMONS

THE STATE OF DELAWARE:
TO THE SHERIFF OF NEW CASTLE COUNTY:
YOU ARE COMMANDED:

    To summon the above named Defendants,  as noted in the Praecipe,  so that, within 20
days after service hereof upon Defendants' agent, exclusive of the day of service,  Defendants

1

shall serve upon Plaintiffs' attorney, Ian Connor Bifferato, at Bifferato Gentilotti, Biden & Balick, L.L.C., 1308 Delaware Avenue, Wilmington, Delaware, 19806, an answer to the Complaint (and, if an affidavit of demand has been filed, an affidavit of defense).

To serve upon Defendants' Agent a copy hereof and of the Complaint (and of the affidavit of demand if any has been filed by Plaintiffs).

Date:   9/12/06

Prothonotary
SHARON D. AGNEW

Per Deputy

**TO THE ABOVE NAMED DEFENDANTS:**

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on Plaintiffs' attorney named above an answer to the Complaint (and, if an affidavit of demand has been filed, an affidavit of defense), judgment by default will be rendered against you for the relief demanded in the Complaint (or in the affidavit of demand, if any).

9/12/06

Prothonotary
SHARON D. AGNEW

Per Deputy

2

**SUPERIOR COURT CIVIL CASE INFORMATION STATEMENT (CIS)**

EFiled: Aug 24 2006  5:50PM EDT

COUNTY:     (N)     K     S          CIVIL ACTION NUMBER Transaction ID 12176251

                                     *OGC-08-224 ASB*

CIVIL CASE CODE:   CASB             CIVIL CASE TYPE:   Asbestos Non-Arbitration

(SEE REVERSE SIDE FOR CODE AND TYPE)

| CAPTION: | NAME AND STATUS OF PARTY FILING DOCUMENT: |
|---|---|
| Lillian Harwood and James Harwood, her husband., <br><br> Plaintiffs, <br><br> v. <br><br> Bondex International, Inc., et.al., <br><br> Defendants. | Lillian Harwood and James Harwood., Plaintiffs <br><br> DOCUMENT TYPE: (E.G., COMPLAINT; ANSWER WITH COUNTERCLAIM) <br><br> Complaint <br><br> NON-ARBITRATION _____   E-FILE ___X___ <br>(CERTIFICATE OF VALUE MAY BE REQUIRED) <br><br> ARBITRATION ____   MEDIATION_____   NEUTRAL ASSESSMENT____ <br><br> DEFENDANT (CIRCLE ONE)   ACCEPT     REJECT <br><br> JURY DEMAND ___X___ YES _____ NO <br><br> TRACK ASSIGNMENT REQUESTED: (CIRCLE ONE) <br> **EXPEDITED   STANDARD   COMPLEX** |
| Attorney Name(s): <br> Ian Connor Bifferato/Garvan McDaniel <br><br> ATTORNEY ID(S): <br> #3273/4167 <br><br> FIRM NAME: <br> BIFFERATO, GENTILOTTI, BIDEN & BALICK, L.L.C. <br><br> ADDRESS: <br> 1308 Delaware Avenue, P.O. Box 2165 <br> Wilmington, DE 19899-2165 <br><br> TELEPHONE NUMBER: <br> (302) 429-1900 <br><br> FAX NUMBER: <br> (302) 429-8600 <br><br> E-MAIL ADDRESS: <br> ICB@BGBBLAW.COM/GFM@BGBBLAW.COM | IDENTIFY ANY RELATED CASES NOW PENDING IN THE SUPERIOR COURT BY CAPTION AND CIVIL ACTION NUMBER INCLUDING JUDGE'S INITIALS <br><br> EXPLAIN THE RELATIONSHIP(S): <br><br><br> OTHER UNUSUAL ISSUES THAT AFFECT CASE MANAGEMENT: <br><br><br> (IF ADDITIONAL SPACE IS NEEDED, PLEASE ATTACH PAGES) |

THE PROTHONOTARY WILL NOT PROCESS THE COMPLAINT, ANSWER OR FIRST RESPONSIVE PLEADING IN THIS MATTER FOR SERVICE UNTIL THE CASE INFORMATION STATEMENT (CIS) IS FILED. THE FAILURE TO FILE THE CIS AND TO HAVE THE PLEADING PROCESSED FOR SERVICE MAY RESULT IN THE DISMISSAL OF THE COMPLAINT OR MAY RESULT IN THE ANSWER OR FIRST RESPONSIVE PLEADING BEING STRICKEN.