MDL 875

1    ALAN R. BRAYTON, ESQ., S.B. #73685
     DAVID R. DONADIO, ESQ., S.B. #154436
2    BRAYTON❖PURCELL LLP
     Attorneys at Law
3    222 Rush Landing Road
     P.O. Box 6169
4    Novato, California 94948-6169
     (415) 898-1555
5    (415) 898-1247 (Fax No.)

6    Attorneys for Plaintiff

7

8              **BEFORE THE JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION**

9    IN RE: ASBESTOS PRODUCTS LIABILITY      )    **MDL DOCKET NO. 875**
     LITIGATION (NO. VI),                    )    **CTO-276**
10                                           )
     This Document Relates to:              )
11   EDWARD MCINTYRE vs.  WARREN PUMPS      )
     LLC                                     )
12   _____    )

13                    THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
14
     EDWARD MCINTYRE,                        )    No. C06-6301-WHA
15                                           )
                Plaintiff,                   )
16                                           )
     vs.                                     )
17                                           )
     WARREN PUMPS LLC                        )
18                                           )
                Defendant.                   )
19   _____    )

20

21        **PLAINTIFF'S MOTION BEFORE THE JUDICIAL PANEL ON MULTI-DISTRICT
              LITIGATION TO VACATE CONDITIONAL TRANSFER ORDER 276**
22                    **AND BRIEF IN SUPPORT OF MOTION**

23        EDWARD MCINTYRE ("Movant" or "Plaintiff") by and through his counsel of record

24   files this consolidated Motion and Brief to Vacate Conditional Transfer Order 276 entered by the

25   Judicial Panel on Multi-District Litigation ("JPML" or "Panel") on April 27, 2007.

26        Movant seeks action of the JPML and not of the Northern District of California.

27   However, pursuant to the JPML's Order of July 29, 1991, found at *In re Asbestos Products*

28   *Liability Litigation (No. VI),* 771 F.Supp 415, 424 (1991), the originating court retains docketing

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1

MAY 2 2 2007

FILED
CLERK'S OFFICE

RECEIVED
CLERK'S OFFICE
2007 MAY 22  A 10: 4

IMAGED MAY 2 2 2007        **OFFICIAL FILE COPY**

1 | duties for matters before the JPML. Therefore, this motion is electronically filed with the
2 | Northern District of California and the paper original, plus four copies and computer readable
3 | diskette is filed with the Clerk of the JPML.

4 |      Movant, pursuant to JPML Rule 7.4(c), respectfully moves the Panel to vacate its order of
5 | April 27, 2007, conditionally transferring the above entitled and numbered case to the United
6 | States District Court for the Eastern District of Pennsylvania. This motion is based on the brief
7 | in support which is made a part of this filing, the accompanying Declaration of David R.
8 | Donadio and attached exhibits, and such other materials as may be presented to the JPML at the
9 | time of the hearing on the motion.

10 |      Pursuant to Rule 7.4(c), Movant requests the Clerk of the JPML to set this motion for
11 | hearing at the next session of the Panel.

12 |      In support thereof, the Movant respectfully shows to the Court, the following:

13 | <u>PRELIMINARY STATEMENT AND PROCEDURAL HISTORY</u>

14 |      28 U.S.C.A. § 1407(a) allows for the transfer of a civil action "involving one or more
15 | common questions of fact" after the Panel determines that a transfer "will be for the convenience
16 | of parties and witnesses and will promote the just and efficient conduct of such actions." 28
17 | U.S.C.A. § 1407(a) also allows the Panel to separate any claims before remand of the action to
18 | the original court. It is important to note that the statute requires the Panel to determine the
19 | advisability of a transfer before such a transfer, and the conditional transfer order is simply an
20 | administrative device to expedite matters, and the conditional transfer order should not be
21 | considered as a decision or judgment by the panel which must be reversed before such order can
22 | be vacated. *In re Grain Shipments*, 319 F. Supp. 533 (J.P.M.L. 1970). The statute does not
23 | exempt tag-along actions from this requirement of a determination.

24 |      This action was originally filed in the Northern District of California on October 6, 2006
25 | by Movant, Plaintiff EDWARD MCINTYRE, the sole plaintiff in this case, against WARREN
26 | PUMPS LLC, the sole named defendant. Jurisdiction is based on diversity of citizenship
27 | between Plaintiff and Defendant and the fact that the amount in controversy exceeds $75,000.

28 |

PLAINTIFF'S MOTION BEFORE THE JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION TO VACATE THE CONDITIONAL TRANSFER ORDER 276 AND BRIEF IN SUPPORT OF MOTION-- MDL DOCKET NO. 875, CTO-276 (Northern District of California Case No. C06-6301-WHA )

1    On November 28, 2007, Defendant WARREN PUMPS LLC filed a "Notice of Tag Along

2    Action" with the Clerk of the Northern District of California.  However, **to date**, Defendant has

3    not transmitted notice to the JPML  - - despite representations made in two court filings that it

4    had.  Instead, counsel for Defendant subsequently represented that it was the Plaintiff's duty to so

5    notify the panel.  Despite opposition to the transfer of this case to the Eastern District of

6    Pennsylvania, and despite disagreement with defendant's interpretation of the Panel Rules, out of

7    an abundance of caution to comply with Rule 7.5(e)[1], on March 29, 2007 counsel for Plaintiff

8    EDWARD MCINTYRE faxed a copy of Defendant's "Notice of Tag Along Action" to the Clerk

9    of the JPML.

10    Movant submits that Defendant's continued failure to notify the JPML of the existence of

11    this action is continuing proof that Defendant will suffer no prejudice by this action remaining in

12    the Northern District of California.

13    In addition, this case has progressed through numerous pretrial steps.  Indeed, by the time

14    the Panel hears this motion, the parties will be nearing the completion of discovery. The Parties

15    have completed their FRCivP 26 initial disclosure and  meet and confer obligations.  The parties

16    have appeared before the Honorable William H. Alsup of the Northern District of California for

17    the Case Management Conference.   Judge Alsup has set this case for pretrial and for trial on

18    November 5, and 19, 2007 respectively. The parties have already propounded discovery upon

19    each other. There is a July 3, 2007 deadline to list issues for which experts will be offered at trial.

20    Sometime soon, at least by July 25, 2007, the parties will participate in the Court ordered

21    Alternative Dispute Resolution before a neutral evaluator.   The parties are preparing their

22    damage studies and final designation of experts and reports due August 1, 2006; and preparing

23    for the responsive reports and replies due August 15, 2007 and August 22, 2007.

24    //

25

26

27    [1]JPML Rule 7.5(e) states that "[a]ny party or counsel in actions previously transferred under Section 1407 or under consideration by the Panel for transfer under Section 1407 shall promptly notify the Clerk of the Panel of any potential 'tag-along actions' in which that party is

28    also named or in which that counsel appears."

PLAINTIFF'S MOTION BEFORE THE JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION TO VACATE THE CONDITIONAL TRANSFER ORDER 276 AND BRIEF IN SUPPORT OF MOTION- - MDL DOCKET NO. 875, CTO-276 (Northern District of California Case No. C06-6301-WHA )

1    In addition, Defendant has *already* filed its Motion for Summary Judgement which has

2    been heard and denied by Order of the Court on April 30, 2007.

3    In documentation of the progress the parties (and the Court) have made thus far thought

4    the pretrial preparation of this case, Movant shows to the Panel the documents attached to the

5    Declaration of David R. Donadio filed contemporaneously herewith.  Those documents are:

6       •   Order denying Motion of Summary Judgment, filed April 30, 2007

7       •   Order Case Management Scheduling  / Order Referring Case to ADR (setting
          discovery deadlines and trial date), filed April 26, 2007

8

9       •   Defendant's Rule 26 Disclosures served March 29, 2007

        •   Plaintiff's Rule 26 Disclosures served March 29, 2007

10
        •   Plaintiff's supplemental Discovery Disclosure (Rule 26) served May 4, 2007
11
        •   Joint Stipulation selecting ADR by neutral evaluation, filed March 29, 2007.
12
        •   Declarations of Plaintiff's Expert Witnesses ( Richard Cohen, MD,  Charles Ay,
13          John Fening, Kenneth Cohen, Ph.D(filed March 29, 30, 2007 as Exhibit re
            Opposition to Summary Judgment)
14
        •   Plaintiff's operative complaint (original complaint filed October 6, 2006  First
15          Amended Complaint, filed November 13, 2006)

16   In light of these events, Movant respectfully submits that it is completely inconvenient to

17   the parties and witnesses and will not promote the just and efficient conduct of this case to allow

18   transfer away from Judge Alsup's Court.

19   This action is limited in nature (one plaintiff, one defendant), has progressed far into

20   pretrial proceedings, has already been ruled upon as to summary judgment, and neither party

21   would be prejudiced by the case remaining where it is.  There is little left for the transferee court

22   to do that has not already been addressed by Judge Alsup.  Indeed, transfer will not "prevent

23   inconsistent pretrial rulings"[2] but will create the potential for conflicting orders now that Judge

24   Alsup has settled all pretrial matters in his Case Management Order of April 26, 2007 (see copy

25   attached to Declaration of David R. Donadio as Exhibit "B".)

26   //

27

28   ² Quoting *In re Wireless Telephone Services*, 249 F. Supp. 2d at 1380.

PLAINTIFF'S MOTION BEFORE THE JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION TO VACATE THE CONDITIONAL
TRANSFER ORDER 276 AND BRIEF IN SUPPORT OF MOTION-- MDL DOCKET NO. 875, CTO-276 (Northern District of
California Case No. C06-6301-WHA )

1        For these reasons, and others explained below, Movant requests that the panel vacate the
2    Conditional Transfer Order.
3                            <u>ARGUMENT AND AUTHORITIES</u>
4        When assessing the appropriateness of consolidation under 28 U.S.C.A. § 1407, the Panel
5    considers the following factors: (1) do the cases depend on the existence of common issues of
6    fact?; (2) will consolidation promote the convenience of the parties and witnesses?; (3) will
7    consolidation promote the just and efficient conduct of the litigation? 28 U.S.C.A. § 1407; *In re*
8    *Tobacco/Gov. Health Care Costs Litigation,* 76 F. Supp 2d 7-8 (D.D.C. 1999).   Movant submits
9    that this case does not meet these requirements:
10       1.      This is a single plaintiff / single defendant action.  It is very specific to the facts
11               limited to Mr. MCINTYRE's exposure to WARREN PUMP LLC products only.
12               It is therefore dissimilar to the vast majority of cases in the MDL and not typical
13               of multi-plaintiff/multi-defendant cases for which it was created.
14       2.      A majority of the witnesses reside in California and the injuries and damages
15               occurred in California.
16       3.      Movant disagrees with any presumption that this case is of the nature that it could
17               be done remotely; to *effectively* practice before the Eastern District of
18               Pennsylvania counsel and witnesses will have to travel for events like settlement
19               conferences with the Honorable James T. Giles.   The time and cost of travel to
20               Pennsylvania presented by this transfer will be an unnecessary burden on Plaintiff
21               who anticipates practice before the Court in person.  The evidence that will be
22               presented in this case is essentially applicable to this one plaintiff and this one
23               defendant, most if not all discovery will take place in California specific to
24               movant's work history and this one defendant, and any possible benefit of
25               consolidation is outweighed by the fact that the parties will already be deep into
26               pretrial proceedings by the time the Panel decides the matter.
27    ///
28    ///

PLAINTIFF'S MOTION BEFORE THE JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION TO VACATE THE CONDITIONAL
TRANSFER ORDER 276 AND BRIEF IN SUPPORT OF MOTION-- MDL DOCKET NO. 875, CTO-276 (Northern District of
California Case No. C06-6301-WHA )

1        Movant EDWARD MCINTYRE is a 61 year old man suffering from Mesothelioma

2    diagnosed on or about June 15, 2006.  Mr. MCINTYRE will most likely die in the near future

3    from complications from this asbestos related malignancy.  Grouping his case with the MDL's

4    inventory of huge and unrelated cases would impede rather than enhance the progress of this

5    case.  If transfer goes forward, it is a certainty that Mr. MCINTYRE will never meet the jury in

6    his own case.  Instead of transfer, Plaintiff wishes to keep the current November trial date in the

7    Northern District of California to see his day in Court.

8         I.    **Uncommon Factual Issues Exist**

9        This is a single plaintiff / single defendant case already in the discovery phase with a trial

10   date set.  It differs markedly from the vast majority of existing MDL 875 cases by that very

11   nature.  The parties will not benefit from the MDL 875's focus on common asbestos defendants

12   because Plaintiff's case is focused only on one defendant,  WARREN PUMPS LLC, which is not

13   a common focus of litigation in the MDL.

14       Unlike the present case, the MCINTYRE case does not have a so called 'class action

15   natured asbestos action' (multiple unrelated plaintiffs against common asbestos product

16   manufactures).   It was in that 'class action' context that MDL 875 was created with the purpose

17   to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the

18   resources of the parties, their counsel, and the judiciary.   In contrast, this case is more in the

19   nature of a straightforward personal injury action and, judging by the rapidly paced schedule set

20   for it by Judge Alsup in the Northern District of California, it is considered by him to be such.

21        Transfer pursuant to 28 U.S.C.A. § 1407 will only be considered if there are common

22   facts present. *In re Drowning Incident at Quality Inn Northeast Washington, D.C. on May 3,*

23   *1974,* 405 F. Supp. 1304, 1306 (J.P.M.L. 1976).  Implicit in this consideration is the requirement

24   that the common facts be more than minimal. *In re Boeing Co. Employment Practices*

25   *Litigation*, 293 F. Supp,2d 1382 (J.P.M.L. 2003.)   A mere showing of common questions of fact

26   is not sufficient alone to merit transfer. *In re Truck Accident Near Almagordo, New Mexico on*

27   *June 18, 1969*, 387 F.Supp. 732,733 (J.P.M.L. 1975).   The MCINTYRE case is grossly

28   dissimilar from the multi-party Asbestos suits in MDL 875  and should remain in California.

PLAINTIFF'S MOTION BEFORE THE JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION TO VACATE THE CONDITIONAL TRANSFER ORDER 276 AND BRIEF IN SUPPORT OF MOTION- - MDL DOCKET NO. 875, CTO-276 (Northern District of California Case No. C06-6301-WHA )

1  The mere presence of some common factual issues does not automatically require transfer, even

2  in asbestos exposure and personal injury actions involving scientific causation issues.  While

3  Movant's case shares with all MDL 875 cases the common material, asbestos fibers, it is wholly

4  different in its simplicity and limited scope.  The critical issues presented in the MCINTYRE

5  case are the facts pertaining to the time and place of his exposure to WARREN PUMPS LLC

6  products and not the broad spectrum of asbestos product manufacturers which are the focus of a

7  majority of asbestos litigation.

8         II.    **Transfer Will Immensely Inconvenience Parties and Witnesses**

9         In its Order creating MDL 875, the Panel explained that since section 1407 transfer is

10  "primarily for pretrial, there is usually no need for the parties and witnesses to travel to

11  [Pennsylvania] for depositions or otherwise". *In re Asbestos Products Liability Litigation (No.*

12  *VI)*, 771 F.Supp 415, 422 (J.P.M.L. 1991).  Respectfully, Movant argues that *effective* practice

13  before the Eastern District of Pennsylvania, especially to get attention for this "small" case[3]

14  before the single Judge charged with ruling on all Federal Asbestos Litigation, will unavoidably

15  require travel to Philadelphia for settlement conferences in chambers before Judge Giles.  Travel

16  to Philadelphia will require expensive air fares and lodging for parties and, their attorneys.  There

17  is little benefit, and thus little convenience, to adding the present case to a massive number of

18  cases in the Pennsylvania proceedings. *In re Air Crash Disaster Near Upperville, Va. on*

19  *December 1, 1974*, 430 F. Supp. 1295 (J.P.M.L. 1977).

20         The Panel has noted that "judicious use of liaison counsel... will eliminate the need for

21  most counsel to ever travel to [Pennsylvania]." *Id* at 422.  This single plaintiff / single defendant

22  case is not one for which employment of liason counsel makes sense and is best litigated in its

23  limited nature before the Court that has already handled pretrial matters, developed a case

24  management plan, and set a trial date here in California.

25  ///

26

27        [3]*See generally In Re Mack Trucks, Inc. Antitrust Litig.* 405 F. Supp 14100, 1401
     (J.P.M.L. 1975) (denying transfer despite existence of common facts and parties where the
28  action proposed for transfer was a simple contract action capable of prompt resolution which
     upon transfer would have been entangled with complex antitrust matters previously transferred.)

1     III.     **Transfer Will Be Unjust and Inefficient.**

2           In reaching its decision to transfer, in addition to the convenience of the parties and

3     witnesses, the Panel should consider whether transfer will promote the just and efficient conduct

4     of the action in question. See *In re Patenaude,* 210 F.3d. 135, 142 (3rd Circuit 2000).   The most

5     important factor in determining whether consolidation of a tag along case is appropriate is

6     whether consolidation would promote the just and efficient conduct of the litigation.  *In re*

7     *Tobacco/Gov. Health Care Costs Litigation,* 76 F. Supp 2d 7-8 (D.D.C. 1999). The term

8     "efficiency" in this context usually refers to conserving judicial resources.  17 Moore's Federal

9     Practice 112.04(1)(d) (Matthew Bender 3d. Ed.)     *See generally In Re 'East of the Rockies'*

10    *Concrete Pipe Antitrust Cases,* 302 F. Supp. 244, 254-255 (J.P.M.L. 1969) (Wiegel, J.,

11    concurring) ("There are a number of inherent inconveniences in transfers for coordinated or

12    consolidated pretrial ... Considerable time and trouble are in the sheer mechanics of transferring

13    and remanding.  After transfer, the process of segregating the pretrial matters which should be

14    remanded for handling by the transferor courts may be time-consuming, as well as subject to

15    reasonable disagreement ... The basic question before the Panel in each proceeding looking to

16    coordinated or consolidated pretrial is, then, whether the objectives of the statute are sufficiently

17    served to justify the necessary inconvenience of transfer and remand.")   Judicial efficiency is

18    served where consolidation will: (1) avoid duplicative discovery; (2) prevent inconsistent pretrial

19    rulings, and (3) conserve resources of parties, their counsel and judiciary.  *In re Computervision*

20    *Corp. Sec. Litig.,* 814 F. Supp. 85, 65-86 (J.P.M.L. 1993)

21              1.       **The case is already well into discovery, past a summary judgment**

22                       **challenge and has been set for trial.**

23           Consolidation of the MCINTYRE case with MDL 875 will not serve any of these aims.

24    Discovery is well underway, the parties have made their FRCivP Rule 26 disclosures, the

25    originating court has already ruled on the issue of summary judgment and has set a trial date for

26    November 19, 2007.  No other motions are anticipated.  In fact, Judge Alsup has warned that he

27    does not want any other dispositve motions by Defendant without first seeking leave to do so.

28    Everything has already been scheduled in this case.

1    Practically speaking, a transfer from California to Pennsylvania will serve only to delay
2    the matter in the Eastern District of Pennsylvania and result in no coordinated or consolidated
3    pretrial proceedings before Judge Giles.  Simply put, a transfer to Judge Giles will merely
4    increase the judicial workload in that court while providing no coordination or consolidation as
5    to this action.  Shortly after the matter would be transferred to Judge Giles, Movant will seek
6    remand to California by Judge Giles on demonstration that the parties are already far into
7    discovery and trial preparation and that Judge Alsup's plan for the case should go forward
8    undisturbed.   The statute "obligates the Panel to remand any pending case to its originating court
9    when, at the latest, those pretrial proceedings have run their course." *Id.* (quoting *Lexecon, Inc. v.*
10   *Milberg, Weiss, Bershand, Hynes & Lerach*, 523 U.S. 26, 34-35 (1998)).  This obligation to
11   remand is 'impervious to judicial discretion'" *Id.*    Indeed, Judge Giles has the power to remand
12   "with a minimum of delay" any actions that prove incapable of benefitting from consolidation.
13   *In re Equity Funding Corp.*, 397 F. Supp. at 886.

14   The evidence that will be elicited in the MCINTYRE case will be of little possible
15   benefit to the parties is MDL 875 and any presumption towards consolidation for that purpose is
16   outweighed  by the fact that the parties will already be deep into discovery by the time the Panel
17   decides the matter.

18            2.     **Defendant has demonstrated acceptance of California court as forum**
19                   **for all pretrial matters.**

20   Defendant WARREN PUMPS LLC has never notified the Clerk of the Panel of the
21   existence of this case despite having represented to the Court of the Northern District of
22   California and to Movant in two filings that it had.  Movant submits that Defendant did so to
23   delay the transfer sufficiently to allow time to present its Motion for Summary Judgment.  If this
24   was indeed Defendant's motivation, as is apparent, its deception should not be rewarded by
25   transfer  - - it has selected the originating court as its choice of forum and the case should remain
26   where it is for this reason.

27   ///

28   ///

### 3.   The Clerk lacked basis for a JPML Rule 7.4 determination.

JPML Rule 7.4 grants the Clerk of the MDL Panel, upon learning of a tag along case, the power to enter a conditional order transferring that case to the previously designated transferee district court. However, the Clerk's decision to enter the Conditional Transfer Order ("CTO") must be "on the basis of the prior hearing session(s) and for the reasons expressed in previous opinions and orders of the Panel in the litigation."   Movant asserts that the CTO issued here was improper because the Clerk was offered no detail by the Defendant or Plaintiff about the MCINTYRE case against which to contrast the prior hearing sessions or orders of the panel. Defendant did not transmit a copy of the Complaint to the Clerk.  Movant submits that the  single plaintiff / single defendant nature of this case and the fact that WARREN PUMPS LLC is an uncommon defendant makes this case consistent with cases where conditional transfer orders have been vacated..

### CONCLUSION

Before the Panel may transfer cases pursuant to 28 U.S.C.A. § 1407, it must make an affirmative showing finding that the transfer: (1) will be for the convenience of the parties and witnesses; and (2) will promote the just and efficient conduct of the cases.  The Panel must also find that the cases share common issues of fact.  The case filed by Movant does not share common issues of fact with other asbestos litigation.  Further, neither the convenience of the parties will be served by the transfer nor will the transfer promote the just and efficient conduct of the case.

///

///

///

///

///

///

///

///

PLAINTIFF'S MOTION BEFORE THE JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION TO VACATE THE CONDITIONAL TRANSFER ORDER 276 AND BRIEF IN SUPPORT OF MOTION-- MDL DOCKET NO. 875, CTO-276 (Northern District of California Case No. C06-6301-WHA )

1    For the foregoing reasons, Movant submits that the requisite findings cannot be made

2  and, thus, respectfully asks that the Panel vacate its Conditional Transfer Order 276 of April 27,

3  2007, as to Movant.

4                                                                Respectfully submitted,

5  Dated: 5|21|07

6                                                                BRAYTON✦PURCELL LLP

7

8  By: _____
                                                                  David R. Donadio
                                                                  State Bar of California #154436
9                                                                BRAYTON✦PURCELL LLP
                                                                  Attorneys at Law
10                                                               222 Rush Landing Road
                                                                  P.O. Box 6169
11                                                               Novato, California  94948-6169
                                                                  (415) 898-1555
12                                                               (415) 898-1247 (Fax No.)
                                                                  Attorneys for Movant,
13                                                               Plaintiff Edward McIntyre

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

K:\Injured\106109\Fed\JPML\Motion to Vacate (LFL).wpd

PLAINTIFF'S MOTION BEFORE THE JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION TO VACATE THE CONDITIONAL
TRANSFER ORDER 276 AND BRIEF IN SUPPORT OF MOTION-- MDL DOCKET NO. 875, CTO-276 (Northern District of
California Case No. C06-6301-WHA )

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 22 2007

FILED
CLERK'S OFFICE

## PROOF OF SERVICE

I am over 18 years of age and not a party to the within action. I am employed in the County of Marin, California; my business address is 222 Rush Landing Road, P.O. Box 6169, Novato, California, 94948-6169.

On the ___21ˢᵗ___ day of May, 2007, I served the within:

**PLAINTIFF'S MOTION BEFORE THE JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION TO VACATE THE CONDITIONAL TRANSFER ORDER 276 AND BRIEF IN SUPPORT OF MOTION**

on the interested party(ies) in this action as LISTED ON THE **ATTACHED** "PANEL SERVICE LIST".

___X___  BY OFFICE MAILING:  I am readily familiar with this office's practice of collection and processing correspondence, pleadings and other matters for mailing with the United States Postal Service on that same day with postage thereon fully prepaid at Novato, California in the ordinary course of business.  I placed in the outgoing office mail, the above-described document(s), in a sealed envelope, addressed to the party(ies) as stated above, for collection and processing for mailing the same day in accordance with ordinary office practices.

Executed this ____ day of May, 2007, at Novato, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Signature: _____

JOHN DERBY
[name printed]

2007 MAY 22  A 10: 44

RECEIVED
CLERK'S OFFICE

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

PLAINTIFF'S MOTION BEFORE THE JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION TO VACATE THE CONDITIONAL TRANSFER ORDER 276 AND BRIEF IN SUPPORT OF MOTION-- MDL DOCKET NO. 875, CTO-276 (Northern District of California Case No. C06-6301-WHA )

**PANEL SERVICE LIST (Excerpted from CTO-276)**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION**

*Edward McIntyre v. Warren Pumps, LLC,* N.D. California, C.A. No. 3:06-6301

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

David R. Donadio
Brayton Purcell, LLP
222 Rush Landing Road
P.O. Box 6169
Novato, CA 94948-6169

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001

David A. Damico
Burns, White & Hickton, LLC
Four Northshore Center
106 Isabella St.
Pittsburgh, PA 15212

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106-2574

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Susan M. Hansen
Brownson & Ballou
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308-1314

David C. Landin
Hunton & Williams, LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
Locks Law Firm, LLC
1500 Walnut Street
Philadelphia, PA 19102

Ronald L. Motley
Motley Rice, LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

Evan C. Nelson
Carroll, Burdick & McDonough, LLP
44 Montgomery Street, Suite 400
San Francisco, CA 94104

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
Roven-Kaplan, L.L.P.
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA 19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
645 Griswold St.
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226-4192

Andrew J. Trevelise
Reed Smith, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

James K. Weston II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 22 2007

FILED
CLERK'S OFFICE

1   ALAN R. BRAYTON, ESQ., S.B. #73685
    DAVID R.  DONADIO, ESQ., S.B. #154436
2   BRAYTON❖PURCELL LLP
    Attorneys at Law
3   222 Rush Landing Road
    P.O. Box 6169
4   Novato, California  94948-6169
    (415) 898-1555
5   (415) 898-1247 (Fax No.)

6   Attorneys for Plaintiff

7
            **BEFORE THE JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION**
8

9   IN RE: ASBESTOS PRODUCTS LIABILITY      )   **MDL DOCKET NO. 875**
    LITIGATION (NO. VI),                    )   **CTO-276**
10                                          )
    This Document Relates to:              )
11  EDWARD MCINTYRE vs.  WARREN PUMPS       )
    LLC                                     )
12  ─────────────────────────────────────  )

13                  THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
14
    EDWARD MCINTYRE,                    )       No. C06-6301-WHA
15                                      )
            Plaintiff,                  )
16                                      )
    vs.                                 )
17                                      )
    WARREN PUMPS LLC                    )
18                                      )
            Defendant.                  )
19  ────────────────────────────────   )

20

21                        **RULE 7.2(A)(ii) SCHEDULE**

22  A.      Name of Action

23  Edward McIntyre, Plaintiff, vs. Warren Pumps LLC, Defendant.

24  B.      District Court

25   United States District Court for the Northern District of California (San Francisco Division)

26  C.      Civil Action Number

27  C06-6301-WHA

28  ///

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

JUDICIAL PANEL
2007 MAY 22 A 10: 45
RECEIVED
CLERK'S OFFICE

1  D.    Judges Assigned to Action

2  The Honorable William H. Alsup

3

4  Dated: _5|21|07_                           BRAYTON❖PURCELL LLP

5

6                                             By: _____

7                                             David R. Donadio
                                             State Bar of California  #154436
8                                             BRAYTON❖PURCELL LLP
                                             Attorneys at Law
9                                             222 Rush Landing Road
                                             P.O. Box 6169
10                                            Novato, California  94948-6169
                                             (415) 898-1555
11                                            (415) 898-1247 (Fax No.)
                                             Attorneys for Movant,
12                                            Plaintiff Edward McIntyre

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 2 2 2007

FILED
CLERK'S OFFICE

## PROOF OF SERVICE

I am over 18 years of age and not a party to the within action. I am employed in the County of Marin, California; my business address is 222 Rush Landing Road, P.O. Box 6169, Novato, California, 94948-6169.

On the __21st__ day of May, 2007, I served the within:

**RULE 7.2(A)(ii) SCHEDULE**

on the interested party(ies) in this action as LISTED ON THE **ATTACHED** "PANEL SERVICE LIST".

__X__   BY OFFICE MAILING: I am readily familiar with this office's practice of collection and processing correspondence, pleadings and other matters for mailing with the United States Postal Service on that same day with postage thereon fully prepaid at Novato, California in the ordinary course of business. I placed in the outgoing office mail, the above-described document(s), in a sealed envelope, addressed to the party(ies) as stated above, for collection and processing for mailing the same day in accordance with ordinary office practices.

Executed this ____ day of May, 2007, at Novato, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Signature: _____

_____
JOHN DENBY
[name printed]

2007 MAY 22   A 10: 45
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
RECEIVED
CLERK'S OFFICE

K:\Injured\106109\FedJPML\Rule 7 Schedule.wpd

3

RULE 7.2(A)(ii) SCHEDULE- - MDL DOCKET NO. 875, CTO-276 (Northern District of California Case No. C06-6301-WHA )

**PANEL SERVICE LIST (Excerpted from CTO-276)**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION**

*Edward McIntyre v. Warren Pumps, LLC,* N.D. California, C.A. No. 3:06-6301

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

David R. Donadio
Brayton Purcell, LLP
222 Rush Landing Road
P.O. Box 6169
Novato, CA 94948-6169

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001

David A. Damico
Burns, White & Hickton, LLC
Four Northshore Center
106 Isabella St.
Pittsburgh, PA 15212

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106-2574

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Susan M. Hansen
Brownson & Ballou
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308-1314

David C. Landin
Hunton & Williams, LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
Locks Law Firm, LLC
1500 Walnut Street
Philadelphia, PA 19102

Ronald L. Motley
Motley Rice, LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

Evan C. Nelson
Carroll, Burdick & McDonough, LLP
44 Montgomery Street, Suite 400
San Francisco, CA 94104

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
Roven-Kaplan, L.L.P.
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA 19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
645 Griswold St.
The Maritime Asbestos Legal Clinic
Detroit, MI 48226-4192

Andrew J. Trevelise
Reed Smith, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

James K. Weston II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 2 2 2007

FILED
CLERK'S OFFICE

1  ALAN R. BRAYTON, ESQ., S.B. #73685
   DAVID R.  DONADIO, ESQ., S.B. #154436
2  BRAYTON❖PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   P.O. Box 6169
4  Novato, California  94948-6169
   (415) 898-1555
5  (415) 898-1247 (Fax No.)

6  Attorneys for Plaintiff

7

       **BEFORE THE JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION**
8

9  IN RE: ASBESTOS PRODUCTS LIABILITY      )   **MDL DOCKET NO. 875**
   LITIGATION (NO. VI),                    )   **CTO-276**
10                                         )
   This Document Relates to:               )
11 EDWARD MCINTYRE vs.  WARREN PUMPS       )
   LLC                                     )
12 _____ )

13              THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF CALIFORNIA
14
   EDWARD MCINTYRE,               )   No. C06-6301-WHA
15                                )
            Plaintiff,            )
16                               )
   vs.                           )
17                               )
   WARREN PUMPS LLC              )
18                               )
            Defendant.           )
19 _____)

20

21      **REASONS WHY ORAL ARGUMENT SHOULD BE HEARD**

22

23      Movant, Plaintiff EDWARD MCINTYRE respectfully requests that oral argument be

24 premitted, pursuant to J.P.M.L. Rule 16.1, on the issues raised in PLAINTIFF'S MOTION

25 BEFORE THE JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION TO VACATE THE

26 CONDITIONAL TRANSFER ORDER 276 AND BRIEF IN SUPPORT OF MOTION filed

27 concurrently herewith.

28 ///

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

2007 MAY 22 A 10: 55
JUDICIAL PANEL
RECEIVED
CLERK'S OFFICE

1    The underlying case involves a nuanced procedural history and a number of complex

2  issues for which Movant believes the Panel's decisional process would be significantly aided by

3  oral argument.

4

5  Dated:  5 | 21 | 07                          BRAYTON❖PURCELL LLP

6

7                                      By: _____

8                                           David R. Donadio
                                             State Bar of California  #154436
                                             BRAYTON❖PURCELL LLP
9                                            Attorneys at Law
                                             222 Rush Landing Road
10                                           P.O. Box 6169
                                             Novato, California  94948-6169
11                                           (415) 898-1555
                                             (415) 898-1247 (Fax No.)
12                                           Attorneys for Movant,
                                             Plaintiff Edward McIntyre

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REASONS WHY ORAL ARGUMENT SHOULD BE HEARD- -  MDL DOCKET NO. 875, CTO-276 (Northern District of California Case
No. C06-6301-WHA )

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 2 2 2007

**PROOF OF SERVICE**

FILED
CLERK'S OFFICE

I am over 18 years of age and not a party to the within action. I am employed in the County of Marin, California; my business address is 222 Rush Landing Road, P.O. Box 6169, Novato, California, 94948-6169.

On the ___21ˢᵗ___ day of May, 2007, I served the within:

**REASONS WHY ORAL ARGUMENT SHOULD BE HEARD**

on the interested party(ies) in this action as LISTED ON THE **ATTACHED** "PANEL SERVICE LIST".

___X___ BY OFFICE MAILING:  I am readily familiar with this office's practice of collection and processing correspondence, pleadings and other matters for mailing with the United States Postal Service on that same day with postage thereon fully prepaid at Novato, California in the ordinary course of business.  I placed in the outgoing office mail, the above-described document(s), in a sealed envelope, addressed to the party(ies) as stated above, for collection and processing for mailing the same day in accordance with ordinary office practices.

Executed this ____ day of May, 2007, at Novato, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Signature:  _____

_____
JOHN DERBY
[name printed]

2007 MAY 22  A 10: 45
JUDICIAL PANEL ON
MULTIDISTRICT
RECEIVED
CLERK'S OFFICE

**PANEL SERVICE LIST (Excerpted from CTO-276)**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION**

*Edward McIntyre v. Warren Pumps, LLC*, N.D. California, C.A. No. 3:06-6301

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

David R. Donadio
Brayton Purcell, LLP
222 Rush Landing Road
P.O. Box 6169
Novato, CA 94948-6169

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001

David A. Damico
Burns, White & Hickton, LLC
Four Northshore Center
106 Isabella St.
Pittsburgh, PA 15212

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106-2574

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Susan M. Hansen
Brownson & Ballou
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308-1314

David C. Landin
Hunton & Williams, LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
Locks Law Firm, LLC
1500 Walnut Street
Philadelphia, PA 19102

Ronald L. Motley
Motley Rice, LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

Evan C. Nelson
Carroll, Burdick & McDonough, LLP
44 Montgomery Street, Suite 400
San Francisco, CA 94104

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
Roven-Kaplan, L.L.P.
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA 19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
645 Griswold St.
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226-4192

Andrew J. Trevelise
Reed Smith, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

James K. Weston II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 2 2 2007

FILED
CLERK'S OFFICE

1 | ALAN R. BRAYTON, ESQ., S.B. #73685
DAVID R.  DONADIO, ESQ., S.B. #154436
2 | BRAYTON❖PURCELL LLP
Attorneys at Law
3 | 222 Rush Landing Road
P.O. Box 6169
4 | Novato, California  94948-6169
(415) 898-1555
5 | (415) 898-1247 (Fax No.)

6 | Attorneys for Plaintiff

7

**BEFORE THE JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION**

8

9 | IN RE: ASBESTOS PRODUCTS LIABILITY )    **MDL DOCKET NO. 875**
LITIGATION (NO. VI), )    **CTO-276**
10 | )
This Document Relates to: )
11 | EDWARD MCINTYRE vs.  WARREN PUMPS )
LLC )
12 | _____ )

13 | THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

14

15 | EDWARD MCINTYRE, )    No. C06-6301-WHA
)
Plaintiff, )
16 | )
vs. )
17 | )
WARREN PUMPS LLC )
18 | )
Defendant. )
19 | _____ )

20

21

**DECLARATION OF DAVID R. DONADIO**
22 | **IN SUPPORT OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER 276**

23 |     I, David R. Donadio, declare as follows:

24 |     1.     I am an attorney at law duly licensed to practice before the United States District

25 | Court for the Northern District of California and am a partner with the law firm of

26 | Brayton❖Purcell LLP, attorneys of record for plaintiff / movant herein and as such am fully

27 | familiar with the facts of this case and if called as a witness regarding the matters set forth below,

28 | I would so testify.

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

RECEIVED
CLERK'S OFFICE
2007 MAY 22  A 10: 44
JUDICIAL PANEL ON

1    2.    Attached hereto, marked as Exhibits, are true and accurate copies of the following

2    documents offered in support of Movant EDWARD MCINTYRE's Motion to Vacate

3    Conditional Transfer Order.

4    Exhibit A:.    Order denying Motion of Summary Judgment, filed April 30, 2007

5    Exhibit B:.    Order Case Management Scheduling  / Order Referring Case to ADR

6             (setting discovery deadlines and trial date), filed April 26, 2007

7    Exhibit C:.    Defendant's Rule 26 Disclosures served March 29, 2007

8    Exhibit D:.    Plaintiff's Rule 26 Disclosures served March 29, 2007

9    Exhibit E:.    Plaintiff's supplemental Discovery Disclosure (Rule 26) served May 4,

10             2007

11   Exhibit F:.    Joint Stipulation selecting ADR by neutral evaluation, filed March 29,

12             2007.

13   Exhibit G:.    Declarations of Plaintiff's Expert Witnesses (Charles Ay, Kenneth Cohen,

14             Ph.D, John Fening, Richard Cohen, MD (filed March 29, 30, 2007 as

15             Exhibit re Opposition to Summary Judgment)

16   Exhibit H:.    Plaintiff's operative complaint (original complaint filed October 6, 2006

17             First Amended Complaint, filed November 13, 2006)

18   3.    By the time the Motion to Vacate will have been heard, it is likely that this case

19   will have  progressed far into pretrial proceedings and coming closer to completion of discovery.

20   The Parties have completed their initial disclosure and  meet and confer obligations and had their

21   Case Management Conference before Judge Alsup who has set the case for trial in November

22   2007.  Deadlines set for July will ensure that the parties have their experts reports, basis for

23   exhibits and damages studies completed and ready for trial.  ADR will also likely happen before

24   then.  Judge Alsup has already ruled on summary judgment and asked that no further motions of

25   that kind be filed without his permission. No other motions are anticipated by the undersigned.

26   There is little left for the transferee court to do that has not already been addressed by Judge

27   Alsup. Transfer will likely create the potential for conflicting orders.

28   //

1    4.    On November 28, 2007, although counsel for defendant filed a "Notice of Tag

2 Along Action" with the Clerk of the Northern District of California, counsel has never done so

3 with the Clerk of the Panel.  In two filings with the Court, Counsel for defendant represented that

4 he had notified the clerk of this transfer.  The evidence available makes it apparent that counsel

5 for defendant did so to delay the transfer sufficiently to allow time to present defendant's Motion

6 for Summary Judgment.  Counsel for defendant has represented that it was the Plaintiff's duty to

7 so notify the panel.   To the undersigned's knowledge, Counsel for Defendant still has not

8 notified the JPML of the existence of this action.  The undersigned believes that due to this

9 inaction, defendant will suffer no prejudice by this action remaining in the Northern District of

10 California and said inaction is considered a waiver.

11    5.    As shown in the First Amended Complaint attached hereto, the nature of Mr.

12 MCINTYRE's case is very specific in its facts as to Mr. MCINTYRE only and the pleadings are

13 limited to his exposure to WARREN PUMP LLC products only.  A majority of the witnesses

14 reside in California and the injuries and damages occurred in California. The evidence that will

15 be presented in this case is essentially applicable to this one plaintiff and this one defendant.

16    6.    To effectively practice before the Eastern District of Pennsylvania counsel and

17 witnesses will have to travel to Philidelphia for events like settlement conferences with Judge

18 Giles.  The time and cost of travel will be an unnecessary burden on Plaintiff.  Employment of

19 liason counsel is unlikely to mitigate this for the Plaintiff .

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

1    7.    Movant EDWARD MCINTYRE is a 61 year old man suffering from

2  Mesothelioma diagnosed on or about June 15, 2006.   It is the opinion of Mr. MCINTYRE's

3  physician that he will most likely die in the near future from complications from this asbestos

4  related malignancy.  Grouping his case with the MDL 875 cases would impede rather than

5  enhance the progress of his case and it is unlikely that he will meet the jury in his own case.

6        I declare under penalty of perjury under the laws of the State of California that the

7  foregoing is true and correct.

8        Executed on this the __21^{th}__ day of May, 2007, at Novato, California.

9

10                                             David R. Donadio

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF DAVID R. DONADIO IN SUPPORT OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER 276 - -
MDL DOCKET NO. 875, CTO-276 (Northern District of California Case No. C06-6301-WHA )

PANEL ON
MULTIDISTRICT LITIGATION

MAY 2 2 2007

FILED
CLERK'S OFFICE

**PROOF OF SERVICE**

I am over 18 years of age and not a party to the within action. I am employed in the County of Marin, California; my business address is 222 Rush Landing Road, P.O. Box 6169, Novato, California, 94948-6169.

On the __21st__ day of May, 2007, I served the within:

**DECLARATION OF DAVID R. DONADIO IN SUPPORT OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER 276 and attached exhibits**

on the interested party(ies) in this action as LISTED ON THE **ATTACHED** "PANEL SERVICE LIST".

___X___   BY OFFICE MAILING:  I am readily familiar with this office's practice of collection and processing correspondence, pleadings and other matters for mailing with the United States Postal Service on that same day with postage thereon fully prepaid at Novato, California in the ordinary course of business.  I placed in the outgoing office mail, the above-described document(s), in a sealed envelope, addressed to the party(ies) as stated above, for collection and processing for mailing the same day in accordance with ordinary office practices.

Executed this ____ day of May, 2007, at Novato, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Signature:   _____

JOHN DERBY
[name printed]

DECLARATION OF DAVID R. DONADIO IN SUPPORT OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER 276 - - MDL DOCKET NO. 875, CTO-276 (Northern District of California Case No. C06-6301-WHA )

**PANEL SERVICE LIST (Excerpted from CTO-276)**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION**

*Edward McIntyre v. Warren Pumps, LLC,* N.D. California, C.A. No. 3:06-6301

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

David R. Donadio
Brayton Purcell, LLP
222 Rush Landing Road
P.O. Box 6169
Novato, CA 94948-6169

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001

David A. Damico
Burns, White & Hickton, LLC
Four Northshore Center
106 Isabella St.
Pittsburgh, PA 15212

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106-2574

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Susan M. Hansen
Brownson & Ballou
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308-1314

David C. Landin
Hunton & Williams, LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
Locks Law Firm, LLC
1500 Walnut Street
Philadelphia, PA 19102

Ronald L. Motley
Motley Rice, LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

Evan C. Nelson
Carroll, Burdick & McDonough, LLP
44 Montgomery Street, Suite 400
San Francisco, CA 94104

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
Roven-Kaplan, L.L.P.
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West
15th Floor
Philadelphia, PA 19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
645 Griswold St.
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226-4192

Andrew J. Trevelise
Reed Smith, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

James K. Weston II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

1  ALAN R. BRAYTON, ESQ., S.B. #73685
   DAVID R. DONADIO, ESQ., S.B. #154436
2  BRAYTON❖PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   P.O. Box 6169
4  Novato, California  94948-6169
   (415) 898-1555
5  (415) 898-1247 (Fax No.)

6  Attorneys for Plaintiff

7

8          **BEFORE THE JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION**

9  IN RE: ASBESTOS PRODUCTS LIABILITY      )  **MDL DOCKET NO. 875**
   LITIGATION (NO. VI),                    )  **CTO-276**
10                                         )
   This Document Relates to:              )
11 EDWARD MCINTYRE vs.  WARREN PUMPS       )
   LLC                                     )
12 ─────────────────────────────────────  )

13            THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF CALIFORNIA
14
   EDWARD MCINTYRE,              )    No. C06-6301-WHA
15
            Plaintiff,           )
16
   vs.                           )
17
   WARREN PUMPS LLC              )
18
            Defendant.          )
19 ──────────────────────────────)

20

21

22                        **EXHIBITS**

23        (Attachments to DECLARATION OF DAVID R. DONADIO
              but separated pursuant to JPML Rule 7.1 (g))

24

25

26

27

28

K:\Injured\106109\Fed\JPML\Exhibit Cover.wpd                1
**EXHIBITS**  (Attachments to DECLARATION OF DAVID R. DONADIO  but separated pursuant to JPML Rule 7.1 (g))  -- MDL
DOCKET NO. 875, CTO-276 (Northern District of California Case No. C06-6301-WHA )

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

2007 MAY 22  A 11: 18
JUDICIAL PANEL ON
MULTIDISTRICT
RECEIVED
CLERK'S OFFICE

# EXHIBIT "A"

# EXHIBIT "A"

United States District Court
For the Northern District of California

1

2

3

4

5

6                         IN THE UNITED STATES DISTRICT COURT

7                         FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10   EDWARD MCINTYRE,                             No. C 06-06301 WHA

11              Plaintiff,

12        v.                                      **ORDER DENYING MOTION FOR
                                                  SUMMARY JUDGMENT**
13   WARREN PUMPS LLC,

14              Defendant.

15   _____/

16                              **INTRODUCTION**

17        In this asbestos products-liability action, defendant Warren Pumps LLC moves for

18   summary judgment under two theories. *First*, defendant asserts that as a military contractor, it

19   cannot be held liable. *Second*, defendant argues that plaintiff has failed to make out a prima

20   facie case because he has not produced evidence that he came into contact with defendant's

21   products. Defendant has failed to show that there are no triable issues of fact remaining on

22   either of the grounds it asserts for summary judgment. Accordingly, defendant's motion for

23   summary judgment is DENIED.

24                                **STATEMENT**

25        Plaintiff Edward McIntyre is currently 61 years old and suffers from mesothelioma, a

26   type of cancer associated with exposure to asbestos. He worked at Mare Island Naval Shipyard

27   in Vallejo, California, beginning in December 1963, through his retirement in June 1995

28   (Donadio Decl. Exh. A 144:4–145:2). His job duties included construction and overhaul of

United States District Court
For the Northern District of California

1   fast-attack nuclear submarines, including painting insulation and pumps.  Specifically, he

2   worked on the *USS Abraham Lincoln*, *USS Barb*, *USS Guardfish*, *USS Haddock*, *USS Patrick*

3   *Henry*, *USS Permit*, and *USS Seawolf* (*id.* at Exh. C).  According to plaintiff, the work of

4   overhauling Warren Pumps' products caused the disturbance and release of asbestos dust and

5   fibers into areas where McIntyre worked.  The fibers circulated throughout the ships,

6   contaminating all areas with asbestos dust and fibers (Cohen Decl. ¶¶ 18–29).

7         Defendant was a defense contractor who supplied pumps to the United States Navy both

8   directly and through contracts with the United States Maritime Commission.  These contracts

9   included supplying pumps for the propulsion systems of fast-attack nuclear submarines.

10   Defendant presents evidence from its expert, retired Rear Admiral Roger B. Horne, Jr., of the

11   United States Navy.  Horne declares that the products Warren Pumps provided to the Navy

12   were covered by military specifications and that the equipment was manufactured under the

13   Navy's close direction and supervision.  For products and components covered by the military

14   specifications, the Navy had final say over any engineering disputes and frequently dictated the

15   materials to be used in the components.  Plaintiff disagrees and presents the declaration of its

16   expert, Charles Ay, who declares that while most products ordered by the Navy are covered by

17   some military specification, some products do not reflect any judgment or decision by the

18   military as to design.  Furthermore, the pumps installed by defendant were no different than

19   those designated for civilian use (Ay Decl. ¶¶ 4–9).

20         Horne also declares that the Navy had greater knowledge than military contractors, such

21   as defendant, of the dangers associated with the use of asbestos.  The Navy had its own set of

22   training procedures and precautionary measures for dealing with asbestos (Nelson Decl. Exh. A

23   at ¶¶ 4–10, 12–13).  Plaintiff disagrees and presents its own expert, Dr. Richard Cohen, who

24   declares that sophisticated military contractors did not warn the Navy of the carcinogenic

25   properties of asbestos until the mid-1970s (Cohen Decl. ¶¶ 5–8).

26         Plaintiff originally filed an action against a number of defendants in California Superior

27   Court in early July 2006.  Warren Pumps was dismissed from that action, and plaintiff filed this

28   action in federal court.  Plaintiff has continued to litigate against the other defendants in state

**United States District Court**
For the Northern District of California

1  court, and a trial was set to begin on April 9, 2007, in that action.  As of this order, the trial in

2  that action is still ongoing.

### ANALYSIS

4        Summary judgment should be granted where the pleadings, discovery, and affidavits

5  show "that there is no genuine issue as to any material fact and that the moving party is entitled

6  to judgment as a matter of law."  Rule 56(c).  The moving party has the initial burden of

7  production to demonstrate the absence of any genuine issue of material fact.  *Playboy*

8  *Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1023–24 (9th Cir. 2004).

9  Once the moving party has met its initial burden, the nonmoving party must "designate specific

10  facts showing there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24

11  (1986).  "If the moving party shows the absence of a genuine issue of material fact, the

12  non-moving party must go beyond the pleadings and 'set forth specific facts' that show a

13  genuine issue for trial."  *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (citation

14  omitted).

15      1.    **MILITARY CONTRACTOR DEFENSE.**

16        The Federal Tort Claims Act allows plaintiffs to recover damages against the United

17  States for the negligent or wrongful acts of its employees within the scope of their employment

18  to the extent that a private person would be liable.  28 U.S.C. 1346(b).  This consent to suit does

19  not apply to "any claim . . . based upon the exercise or performance or the failure to exercise or

20  perform a discretionary function or duty on the part of a federal agency or an employee of the

21  Government, whether or not the discretion involved be abused."  28 U.S.C. 2680(a).  "[T]he

22  selection of the appropriate design for military equipment to be used by our Armed Forces is

23  assuredly a discretionary function within the meaning of this provision."  *Boyle v. United Tech.*

24  *Corp.*, 487 U.S. 500, 511 (1988).  "Liability for design defects in military equipment cannot be

25  imposed, pursuant to state law, when (1) the United States approved reasonably precise

26  specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned

27  the United States about the dangers in the use of the equipment that were known to the supplier

28  but not to the United States."  *Id.* at 512.  The military-contractor defense is an affirmative

United States District Court
For the Northern District of California

1  defense, so here defendant has the burden of establishing it. *Snell v. Bell Helicopter Textron,*

2  *Inc.*, 107 F.3d 744, 746 (9th Cir. 1997).

3          **A.**    **Reasonably Precise Specifications.**

4        Showing government approval of reasonably precise specifications "requires more than

5  a rubber stamp . . . . If the government contractor exercised actual discretion over the defective

6  feature of the design, then the contractor will not escape liability via the government contractor

7  defense . . . ." *Snell*, 107 F.3d at 748 (quoting *Trevino v. General Dynamics Corp.*, 865 F.2d

8  1474, 1480 (5th Cir.), *cert. denied*, 493 U.S. 935, (1989)). Furthermore, "the fact that a

9  company supplies goods to the military does not, in and of itself, immunize it from liability for

10  the injuries caused by those goods. Where the goods ordered by the military are those readily

11  available, in substantially similar form, to commercial users, the military contractor defense

12  does not apply." *In re Hawaii Fed. Asbestos Cases*, 960 F.2d 806, 811 (9th Cir. 1992).

13        Defendant presents the declaration of its expert, retired Rear Admiral Horne, to show

14  that defendant's products were made according to reasonably precise military specifications.

15  To Horne's declaration, defendant attached a laundry list of military specifications. They did

16  not, however, point to any one specification or part of a specification that covered defendant's

17  products or required the use of asbestos insulation. Horne did declare that the pumps were

18  required by the cited specifications, as well as other specifications, to contain asbestos.

19        Plaintiff argues that the asbestos insulation in question was no different from that used

20  for civilian projects. The insulation used on the pumps was more like the Navy ordering a can

21  of beans, so the argument goes, than commissioning an attack helicopter. Plaintiff presents the

22  declaration of its expert, Charles Ay, who declares that all products ordered by the military have

23  a corresponding military specification for requisition purposes. The specifications, however,

24  were not necessarily created by the military. Precise details are sometimes left up to contractors

25  and engineers, particularly in the selection of materials. Furthermore, Ay declared that there

26  was no difference between the asbestos insulation used for Warren Pumps' Navy contracts and

27  the asbestos insulation used for all other jobs (Ay Decl. ¶¶ 3–6). Plaintiff also points out that

28  defendant did not point to any particular military specifications that required that the insulation

**United States District Court**
For the Northern District of California

1    be made from asbestos.  The specifications only required that the insulation perform up to

2    certain standards, not that it be made of any particular material.

3            When the military specifies and approves a design, it "has thereby made a judgment,

4    rightly or wrongly, that the design was safe." *Sundstrom v. McDonnell Douglas Corp.*,

5    816 F. Supp 587, 589–90 (N.D. Cal. 1993) (Patel, J.).  Here, defendant has the burden of proof.

6    Defendant has come forward with its expert evidence that military specifications existed for the

7    products it provided.  Defendant has also presented evidence that the specifications for the

8    insulation were more demanding than those for a mere stock product ordered by the

9    government.  It has failed, however, to show that the Navy made a judgment in creating

10   reasonably precise specifications that mandated the use of asbestos.  In response, plaintiff has

11   presented evidence that the military may have not exercised its discretion in the selection of

12   asbestos for an insulation material.  The insulation may have been something the Navy merely

13   ordered.  Viewing the facts in the light most favorable to the plaintiff, a reasonable jury could

14   conclude the military did not require the use of asbestos and/or that the products were merely

15   ordered off the shelf.

16           **B.    Conformity With Specifications.**

17           For this prong of the *Boyle* test, defendant must show that its products were produced in

18   conformity with military specifications.  Here, defendant again presents the declaration of

19   retired Rear Admiral Horne who declares that defendant's products were made in strict

20   compliance with the specifications.  Plaintiff does not argue, nor does he present evidence, that

21   Warren Pumps' products were not produced according to military specifications.  Viewing the

22   evidence in the light most favorable to the plaintiff, there remain no triable issues of fact as to

23   this element of the *Boyle* defense.

24           **C.    Warnings and Knowledge of Dangers.**

25           Finally, defendant must show that it warned the United States of any dangers that were

26   known to defendant, but not to the United States.  "The third condition is necessary because, in

27   its absence, the displacement of state tort law would create some incentive for the manufacturer

28   to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but

5

United States District Court
For the Northern District of California

1   withholding it would produce no liability." *Boyle*, 487 U.S. at 512.  In this action, defendant

2   does not contend that it warned the Navy of any dangers associated with asbestos insulation.

3   Instead, defendant presents evidence that the Navy already had knowledge of the dangers that

4   was superior or equal to its own knowledge.

5       Again, defendant presents the declaration of its expert, who declares that for all the time

6   that McIntyre was working at Mare Island, the Navy had its own protocols and procedures for

7   handling asbestos.  Defendant also presents documents from the Navy showing that the Navy

8   had taken steps to try to contain asbestos fibers at times at least as early as 1957.  Furthermore,

9   defendant presents evidence that military specifications forbade it from placing warnings on its

10  products.  Even so, defendant contends, any warnings on its products about asbestos would

11  never have been seen by workers like McIntyre as they never dealt directly with asbestos

12  insulation.

13      In response, plaintiff argues that defendant has presented no evidence that the Navy

14  knew that asbestos was a carcinogen and that asbestos caused mesothelioma.  Specifically,

15  plaintiff's medical expert, Dr. Richard Cohen, declares that the dangers of asbestos were known

16  at least as early as 1952, and that in his experience, he had found no evidence that *any* asbestos-

17  producing company had warned the Navy of the risk of mesothelioma until at least the 1970s.

18  In his declaration, Dr. Cohen did not specifically identify any company that failed to warn the

19  Navy.

20      Here, defendant has not shown that the Navy knew of the risks associated with asbestos.

21  It has shown that the Navy recognized asbestos as a danger, but it has not shown that the Navy

22  was aware of asbestos' role in causing mesothelioma, or that the Navy's knowledge of those

23  risks were superior to defendant's own knowledge.  Accordingly, there still remain triable

24  issues of fact as to this issue, and summary judgment is not appropriate.  Defendant's motion is

25  DENIED.

26      **2.    PRIMA FACIE CASE OF EXPOSURE.**

27      Next, defendant moves for summary judgment on the theory that plaintiff has failed to

28  establish a prima facie case of exposure from Warren Pumps' products.  Plaintiff has the burden

6

United States District Court
For the Northern District of California

1   of showing that there was a reasonable medical probability that exposure to defendant's

2   products was a substantial factor in contributing to plaintiff's asbestos-related disease.

3   "The substantial factor standard is a relatively broad one, requiring only that the contribution of

4   the individual cause be more than negligible or theoretical." *Rutherford v. Owens-Illinois, Inc.*,

5   16 Cal. 4th 953, 976–78 (Cal. 1997).

6          Defendant argues that plaintiff has not presented any evidence that he was ever exposed

7   to its products.  It points to the absence of any reference to Warren Pumps in the initial

8   disclosures in McIntyre's case in state court and in McIntyre's deposition.  In his deposition,

9   plaintiff was asked to identify all asbestos-containing products that he encountered while

10  working at Mare Island and the companies that produced them.  He did not recall working

11  around any Warren Pumps products.  In his initial disclosures, McIntyre and his counsel were

12  asked to identify any asbestos-containing products with which plaintiff came into contact during

13  his work.  Warren Pumps products were not among them.

14         Now, plaintiff presents evidence that he worked on ships where Warren Pumps products

15  had been installed.  He first presents documents from the National Archives referencing

16  defendant's products on several of the ships where plaintiff worked (Donadio Decl. Exh. C).

17  The documents are dated from the late 1950s to the early 1960s.  Plaintiff next presents his

18  deposition testimony that he worked painting pumps and valves on those ships at various times,

19  including times close to when the ships were being overhauled (Donadio Decl. Exh. A at

20  746:11–747:24; 807:3–10).

21         Defendant contends that this evidence should not be considered because plaintiff is

22  bound by his prior statements in his discovery responses and his deposition.  The evidence

23  McIntyre presents now, so defendant argues, contradicts his prior deposition testimony and his

24  previous discovery responses.  Defendant is correct that a party cannot create a triable issue of

25  fact on summary judgment by a declaration contradicting his prior deposition testimony.

26  *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).  Here, however, the

27  evidence presented by plaintiff is neither his own later declaration nor directly contradictory to

28  his prior statements.  Plaintiff's failure to recall working around defendant's products does not

**United States District Court**
For the Northern District of California

1   constitute an explicit admission that he did not, in fact, work around defendant's products.

2   Furthermore, the discovery responses were filed in August 2006, and since then discovery has

3   proceeded in plaintiff's state court case. Plaintiff may have discovered the evidence he now

4   presents after those responses were filed.

5        Finally, defendant argues that the original asbestos-containing insulation packed around

6   the gaskets and pipes of defendant's pumps had to have been overhauled at least once between

7   the time they were installed on the ships and when plaintiff worked on the ships. According to

8   defendant, any asbestos insulation it provided with its pumps would have been torn out long

9   before plaintiff worked on the ships. Defendant urges the Court to follow the logic in

10  *Andrews v. Foster Wheeler LLC*, 138 Cal. App. 4th 96, 108–13 (Cal. Ct. App. 2006). That

11  decision held that the plaintiffs had not met their burden of showing exposure to the defendant's

12  products. There, the defendant showed that asbestos-containing products had been installed

13  over twenty years before the plaintiffs were allegedly exposed to them. The ships had

14  undergone extensive overhauls nearly fifteen years before plaintiffs were exposed, so all of the

15  defendant's products had already been removed. The decision concluded that there was

16  insufficient evidence to establish a reasonable medical probability that the defendant's products

17  were a substantial factor in causing the plaintiffs' disease. Here, Warren Pumps' argument is

18  not as foolproof as that in *Andrews*. Defendant has not specifically identified when plaintiff

19  was on the ships vis-à-vis when the ships were overhauled. Instead, defendant merely states

20  that this case is like *Andrews*, so the same result should follow. That is not sufficient.

21        Defendant also argues that the fiber drift and reentrainment theory advanced in

22  plaintiff's expert declarations is not supported by scientific evidence. This order need not reach

23  that issue because, even without relying on those declarations for the disputed points, defendant

24  has not eliminated all triable issues of fact with regard to plaintiff's exposure to its products. In

25  short, viewing the facts in the light most favorable to the plaintiff, as is required on summary

26  judgment, a reasonable jury could still conclude that plaintiff was exposed to defendant's

27  asbestos-containing products, and that defendant's products were a substantial factor in

28

1   plaintiff's developing mesothelioma.  Defendant's motion for summary judgment on the

2   grounds that plaintiff failed to make out a prima facie case for exposure is DENIED.

3                              **CONCLUSION**

4        For all of the above-stated reasons, defendant's motion for summary judgment is

5   DENIED.

6

7        **IT IS SO ORDERED.**

8

9   Dated:  April 30, 2007.

                                        _____
10                                      WILLIAM ALSUP
                                        UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

# EXHIBIT "B"

EXHIBIT "B"

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
**For the Northern District of California**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EDWARD MCINTYRE,

        Plaintiff,

    v.

WARREN PUMPS, LLC,
and DOES 1–300,

        Defendant.

_____/

No. C 06-06301 WHA

**CASE MANAGEMENT ORDER AND
REFERENCE TO ADR UNIT FOR
EARLY NEUTRAL EVALUATION**

    After a case management conference, the Court enters the following order pursuant to

Rule 16 of the Federal Rules of Civil Procedure ("FRCP") and Civil Local Rule 16-10:

1.    All initial disclosures under FRCP 26 must be completed by **MAY 4, 2007**, on pain of

        preclusion under FRCP 37(c).

2.    Leave to add any new parties or pleading amendments must be sought by **MAY 4, 2007**.

3.    The non-expert discovery cut-off date shall be **AUGUST 1, 2007**.

4.    The last date for designation of expert testimony and disclosure of full expert reports

        under FRCP 26(a)(2) as to any issue on which a party has the burden of proof

        ("opening reports") shall be **AUGUST 1, 2007**. Within **FOURTEEN CALENDAR DAYS**

        thereafter, all other parties may disclose responsive expert testimony with full expert

        reports responsive to opening reports ("opposition reports"). Within **SEVEN CALENDAR**

        **DAYS** thereafter, the opening parties may disclose any reply reports limited solely to

United States District Court
For the Northern District of California

1    rebutting specific material in opposition reports.  Reply reports must be limited to true

2    rebuttal and should be very brief.  They should not add new material that should have

3    been placed in the opening report.  The cutoff for all expert discovery shall be

4    FOURTEEN CALENDAR DAYS after the deadline for reply reports.  In aid of preparing an

5    opposition or reply report, a responding party may depose the adverse expert

6    sufficiently before the deadline for the opposition or reply report so as to use the

7    testimony in preparing the response.  Experts must make themselves readily available

8    for such depositions.  Alternatively, the responding party can elect to depose the expert

9    later in the expert-discovery period.  An expert, however, may be deposed only once

10   unless the expert is used for different opening and/or opposition reports, in which case

11   the expert may be deposed independently on the subject matter of each report.  At least

12   28 CALENDAR DAYS before the due date for opening reports, each party shall serve a

13   list of issues on which it will offer any expert testimony in its case-in-chief (including

14   from non-retained experts).  This is so that all parties will be timely able to obtain

15   counter-experts on the listed issues and to facilitate the timely completeness of all

16   expert reports.  Failure to so disclose may result in preclusion.

17   5.    As to damages studies, the cut-off date for *past damages* will be as of the expert report

18         (or such earlier date as the expert may select).  In addition, the experts may try to

19         project *future damages* (*i.e.*, after the cut-off date) if the substantive standards for

20         future damages can be met.  With timely leave of Court or by written stipulation, the

21         experts may update their reports (with supplemental reports) to a date closer to the time

22         of trial.

23   6.    At trial, the direct testimony of experts will be limited to the matters disclosed in their

24         reports.  Omitted material may not ordinarily be added on direct examination.

25         This means the reports must be complete and sufficiently detailed.  Illustrative

26         animations, diagrams, charts and models may be used on direct examination only if

27         they were part of the expert's report, with the exception of simple drawings and

28         tabulations that plainly illustrate what is already in the report, which can be drawn by

2

United States District Court
For the Northern District of California

1    the witness at trial or otherwise shown to the jury.  If cross-examination fairly opens

2    the door, however, an expert may go beyond the written report on cross-examination

3    and/or redirect examination.  By written stipulation, of course, all sides may relax these

4    requirements.

5    7.    To head off a recurring problem, experts lacking percipient knowledge should avoid

6    vouching for the credibility of witnesses, *i.e.*, whose version of the facts in dispute is

7    correct.  This means that they may not, for example, testify that based upon a review of

8    fact depositions and other material supplied by counsel, a police officer did (or did not)

9    violate standards.  Rather, the expert should be asked for his or her opinion based —

10    explicitly — upon an assumed fact scenario.  This will make clear that the witness is

11    not attempting to make credibility and fact findings and thereby to invade the province

12    of the jury.  Of course, a qualified expert can testify to relevant customs, usages,

13    practices, recognized standards of conduct, and other specialized matters beyond the

14    ken of a lay jury.  This subject is addressed further in the trial guidelines referenced in

15    paragraph 14 below.

16    8.    The last date to file dispositive motions shall be AUGUST 30, 2007.  No dispositive

17    motions shall be heard more than 35 days *after* this deadline, *i.e.*, if any party waits

18    until the last day to file, then the parties must adhere to the 35-day track in order to

19    avoid pressure on the trial date.

20    9.    The FINAL PRETRIAL CONFERENCE shall be at 2:00 P.M. on NOVEMBER 5, 2007.

21    For the form of submissions for the final pretrial conference and trial, please see

22    paragraph 14 below.

23    10.   A JURY TRIAL shall begin on NOVEMBER 19, 2007, at 7:30 A.M., in Courtroom 9,

24    19th Floor, 450 Golden Gate Avenue, San Francisco, California, 94102.  The trial

25    schedule and time limits shall be set at the final pretrial conference.  Although almost

26    all trials proceed on the date scheduled, it may be necessary on occasion for a case to

27    trail, meaning the trial may commence a few days or even a few weeks after the date

28

3

**United States District Court**
**For the Northern District of California**

1    stated above, due to calendar congestion and the need to give priority to criminal trials.

2    Counsel and the parties should plan accordingly, including advising witnesses.

3    11.   Counsel may not stipulate around the foregoing dates without Court approval.

4    12.   While the Court encourages the parties to engage in settlement discussions, please do

5    not ask for any extensions on the ground of settlement discussions or on the ground that

6    the parties experienced delays in scheduling settlement conferences, mediation or ENE.

7    The parties should proceed to prepare their cases for trial. No continuance (even if

8    stipulated) shall be granted on the ground of incomplete preparation without competent

9    and detailed declarations setting forth good cause.

10   13.   To avoid any misunderstanding with respect to the final pretrial conference and trial,

11   the Court wishes to emphasize that all filings and appearances must be made — on pain

12   of dismissal, default or other sanction — unless and until a dismissal fully resolving the

13   case is received. It will not be enough to inform the clerk that a settlement in principle

14   has been reached or to lodge a partially executed settlement agreement or to lodge a

15   fully executed agreement (or dismissal) that resolves less than the entire case. Where,

16   however, a fully-executed settlement agreement clearly and fully disposing of the entire

17   case is lodged reasonably in advance of the pretrial conference or trial and only a

18   ministerial act remains, the Court will arrange a telephone conference to work out an

19   alternate procedure pending a formal dismissal.

20   14.   If you have not already done so, please read and follow the "Supplemental Order to

21   Order Setting Initial Case Management Conference in Civil Cases Before Judge

22   William Alsup" and other orders issued by the Clerk's office when this action was

23   commenced. Among other things, the supplemental order explains when submissions

24   are to go to the Clerk's Office (the general rule) versus when submissions may go

25   directly to chambers (rarely). With respect to the final pretrial conference and trial,

26   please read and follow the "Guidelines For Trial and Final Pretrial Conference in Civil

27   Jury Cases Before The Honorable William Alsup." All orders and guidelines

28   referenced in the paragraph are available on the district court's website at

1    http://www.cand.uscourts.gov.  The website also includes other guidelines for

2    attorney's fees motions and the necessary form of attorney time records for cases

3    before Judge Alsup.  If you do not have access to the Internet, you may contact Deputy

4    Clerk Dawn K. Toland at (415) 522-2020 to learn how to pick up a hard copy.

5    15.    All pretrial disclosures under FRCP 26(a)(3) and objections required by FRCP 26(a)(3)

6    must be made on the schedule established by said rule.

7    16.    This matter is hereby **REFERRED** to the **ADR UNIT** for **EARLY NEUTRAL EVALUATION**.

8

9    **IT IS SO ORDERED.**

10

11    Dated:  April 26, 2007.

12                                              WILLIAM ALSUP
                                               UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

5

# EXHIBIT "C"

# EXHIBIT "C"

James P. Cunningham, No. 121406
Evan C. Nelson, No. 172957
**CARROLL, BURDICK & McDONOUGH** LLP
Attorneys at Law
44 Montgomery Street, Suite 400
San Francisco, CA 94104
Telephone:     415.989.5900
Facsimile:      415.989.0932
*Email:*         *jcunningham@cbmlaw.com*
               *enelson@cbmlaw.com*

Attorneys for Defendant
WARREN PUMPS, LLC

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EDWARD MCINTYRE, | No. C-06-6301 WHA |
| Plaintiff, | |
| v. | **DEFENDANT WARREN PUMPS, LLC'S INITIAL DISCLOSURES** F. R. CIV. P. 26(A)(1) |
| WARREN PUMPS, LLC, | |
| Defendant. | **DATE:    MARCH 29, 2007** |

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Defendant Warren

Pumps, LLC ("Warren Pumps") hereby submits its initial disclosures of documents and

witnesses:

    **A.    Witnesses**

        1.    Roland Doktor, c/o Carroll Burdick & McDonough, LLP

        2.    Carl Mangold, expert and percipient witness c/o Carroll Burdick &

McDonough, LLP

        3.    Admiral Roger B. Horne, Jr., expert and percipient witness c/o

Carroll, Burdick & McDonough, LLP

    Investigations will continue in the event summary judgment is not granted and

additional witnesses, if any, will be identified.

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-SF\SF350816.1                                     -1-

**WARREN PUMPS' INITIAL DISCLOSURES**

**B.    Documents**

1.    Though Defendant does not yet have possession of numerous documents, it identifies the following documents that it anticipates exist in the possession of Plaintiff of his counsel:

         a.    Discovery from other defendants and Plaintiff's responses;

         b.    Other defendants' responses to discovery from Plaintiff;

         c.    Plaintiff's submissions to Bankruptcy Trusts;

         d.    Plaintiff's medical and employment records;

         e.    Evidence submitted at trial in Plaintiff's state court action.

2.    Documents on the concurrently submitted exhibit list.

Investigations and discovery will continue if summary judgment is not granted and additional documents might be identified.

**C. – E.**    Inapplicable.

Dated:  March 29, 2007                CARROLL, BURDICK & McDONOUGH LLP

By _____
Evan C. Nelson
Attorneys for Defendant
WARREN PUMPS, LLC

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

WARREN PUMPS' INITIAL DISCLOSURES

Edward McIntyre v. Warren Pumps, LLC
MATTER NO. C06-6301-WHA
**WARREN PUMPS INITIAL DOCUMENT DISCLOSURE LIST**

**Top-left panel:**

| Description |
| --- |
| Health in Project Shipyards, dated July 7, 1943 (SOA-58) |
| Mills, A.  Present Naval Construction: Asbestos Insulating Felt (Amosite) Navy Department Spec. 32F3: Treated with a Non-flammable Water Repellent.  Memo to Supervisor of Shipbuilding, U.S.H. New York Shipbuilding Corp. (Sept. 18, 1943). (SOA-59) |
| Wood, G.  Present Naval Construction: Asbestos Insulating Felt (Amosite) Navy Department Spec. 32F3: Treated with a Non-flammable Water Repellent.  Navy Department, Office of Supervisor of Shipbuilding. Memo to Bureau of Ships. (Sept. 28, 1943). (SOA-60) |
| U.S. Dept. of Labor, Shipyard Injuries and Their Causes 1941.  House Document 879 (1943). (SOA-61) |
| Intentionally Omitted. (SOA-62) |
| Intentionally Omitted. (SOA-63) |
| A memo from Phillip Drinker, United States Maritime Commission Washington, regarding the use of amosite for pipe insulation on Navy vessels, January 8, 1944. (SOA-64) |
| U.S. Navy Department, Current Status of Critical Materials, Vol 4 (1944). (SOA-65) |
| Memo from C.D. Wheelock to Philip Drinker in reply to the letter sent January 8, 1944 in regard to the hazards involved in the use of amosite pipe insulation in Navy vessels dated January 20, 1944 (SOA-66) |
| Dreessen, W. and Fleischer, W.  Safety and Industrial Health Program Report on Investigation of Asbestosis from Amosite Pipe Covering at Bath Iron Works, Bath Maine, U.S Navy Department, War Shipping Administration. (1944). (SOA-67) |
| Letter written by Phillip Drinker, Chief Health Consultant for U.S. Maritime Commission, expressing workers concern about the use of asbestos, January 31, 1945 (SOA-68) |
| American Conference of Governmental Industrial Hygienists, Proceedings of the Eight Annual Meeting, dated April 7-13, 1946. (SOA-69) |
| Naval Safety Review. (1947). (SOA-70) |
| Blakeley, J D., Henderson, M., et al.  German Asbestos Industry.  British Intelligence Objectives Sub-committee, 32 Bryanston Square, dated 1947 (SOA-71) |
| Jacobs, M.  The Analytical Chemistry of Industrial Poisons, Hazards, and Solvents.  Chemical Analysis, Vol 1 (2nd ed.) (1949). (SOA-72) |
| U.S. Department of Labor.  Walsh-Healey Contracts Act.  (1951). (SOA-73) |
| Dunner, L, et al. and Bagnall, D.  Occupational Lung Damage in Ships Repairers.  Br J Radiol 36(311):590-594 (1953). (SOA-74) |
| Memo from R.F. Taylor to E.B. Stecher on Lagging for Cold Water Pipes on the CVA59 dated (SOA-75) |

**Top-right panel:**

| Description |
| --- |
| Irving J. Selikoff, "Occupational Respiratory Disease: Asbestos-Associated Disease," Public Health and Preventive Medicine 11th ed., pp. 568-644 (1980). (SOA-1) |
| Moarf J.  Stauss and Constance Wrench, "Mechanisms of Mesothelioma induction with Asbestos and Fibrous Glass," 48 National Cancer Institute No. 3 (March 1972) (SOA-2) |
| Cooke, W.E, Pulmonary Asbestosis. (1924) (SOA-3) |
| Merewether, E.R., et al, Report on Effects of Asbestos Dust on the Lungs and Dust Suppression in the Asbestos Industry.  His Majesty's Stationery. (1930) (SOA-4) |
| Lanza, et al, Effects of the Inhalation of Asbestos Dust on the Lungs of Asbestos Workers.  U.S. Treasury, Public Health Report, Vol. 50. (1935) (SOA-5) |
| Gloyne, S.R., Two Cases of Squamous Carcinoma of the Lung Occurring in Asbestosis. (1935) (SOA-6) |
| Dreessen, et al., "A Study of Asbestosis in the Asbestos Textile Industry."  U.S Treasury, Public Health Bulletin, Vol. 241. (1938) (SOA-7) |
| Sayers and Dreessen, Asbestosis. (1939) (SOA-8) |
| Walter E. Fleischer, Frederick J. Viles, Jr., Robert L. Gade, Phillip Drinker, "A Health Survey of Pipe Covering Operations in Constructing Naval Vessels." Journal of Industrial Hygiene and Toxicology, 28:9-16 (January 1946). (SOA-9) |
| Asbestosis and Cancer of the Lung.  JAMA, editorial. (1949) (SOA-10) |
| Smith, W.E., Survey of Some Current British and European Studies of Occupational Tumor Problems. (1952) (SOA-11) |
| Isselbacher, K.J., et al, Asbestosis and Bronchogenic Carcinoma.  American Journal of Medicine. (1955) (SOA-12) |
| Doll, R, Mortality from Lung Cancer in Asbestos Workers.  British Medical Association. (1955) (SOA-13) |
| Braun and Truan, An Epidemiological Study of Lung Cancer in Asbestos Miners. (1958) (SOA-14) |
| Wagner, J C., et al., Diffuse Pleural Mesothelioma and Asbestos Exposure in the North Western Cape Province. (1960) (SOA-15) |
| Leathart and Sanderson, Some Observations on Asbestosis. (1963) (SOA-16) |
| Selikoff, et al, Asbestos Exposure and Neoplasia.  JAMA 188: 122-125. (1964) (SOA-17) |
| Schall, E.L., Present Threshold Limit Value in the U.S.A. for Asbestos Dust: A Critique.  New York Academy of Science, Vol. 132. (1965) (SOA-18) |

**Middle-left panel:**

| Description |
| --- |
| General Specifications for Ships of the United States Navy.  Department of the Navy, Bureau of Ships, dated July 1, 1954. (SOA-76) |
| Memo from the Chief of the Bureau of Ships to the Supervisor of Shipbuilding and Dry Dock Company on Steam Piping and Flange Insulation in Aircraft Carriers (SOA-77) |
| Memo from the Chief of the Bureau of Ships to the Supervisor of Shipbuilding on Insulation, Lagging, and Removable Cover Cover Joints for Steam Temperatures 389 degrees and Above on Aircraft Carrier CVA59 (SOA-78) |
| Memo from the USN Supervisor of Shipbuilding and the Naval Inspector of Ordnance on Removable Cover Cover Joints for Steam Temperatures 389 degrees and Above on Aircraft Carrier CVA-59 (SOA-79) |
| Memo from the USN Supervisor of Shipbuilding and the Naval Inspector of Ordnance to Newport News Shipping and Dry Dock Company on Directions for Insulation and Lagging of Pipes and Auxiliaries on the USS Forrestal CVA59 (SOA-80) |
| Memo from the USN Supervisor of Shipbuilding and the Naval Inspector of Ordnance on Directions for Insulation and Lagging of Pipes and Auxiliaries on Aircraft Carrier CVA59 (SOA-81) |
| Memo from the Chief of the Bureau of Ships to the Supervisor of Shipbuilding on Insulation, Lagging, and Removable Cover Cover Joints for Steam Temperatures 389 degrees and Above in the USS Forrestal (SOA-82) |
| Hogan, B.  Memorandum to all ships and stations regarding threshold limit values for toxic materials.  Bureau of Medicine and Surgery (BUMED) Instruction 6270.3.  Department of the Navy, Bureau of Medicine and Surgery (1955). (SOA-83) |
| Memo from the USN Supervisor of Shipbuilding and the Naval Inspector of Ordnance on Pipe Insulation on the Aircraft Carrier CVA59 (SOA-84) |
| Memo from the USN Supervisor of Shipbuilding and the Naval Inspector of Ordnance to the Chief of the Bureau of Ships on the Pipe Insulation for High Temperature Steam Lines in the USS Forrestal (SOA-85) |
| Bureau of Naval Personnel, Military Requirements Petty Officer 3 & 2.  Navy Training Courses, NAVPERS 10056, United States Government Printing Office, Washington, 1957 (SOA-86) |
| BUMED Instructions 6260. From Chief, Bureau of Medicine and Surgery to All Ships and Stations  Ch-2 of the BUMED Instructions |

**Middle-right panel:**

| Description |
| --- |
| Selikoff, I.J., et al., The Occurrence of Asbestosis Among Insulation Workers in the United States. (1965) (SOA-19) |
| Balzer, J L. and W. C Cooper  "The work environment of insulating workers." Am Ind Hyg Assoc J 29(3):222-227 1968. (SOA-20) |
| Oels, et al., Diffuse Malignant Mesothelioma of the Pleura:  A Review of 37 Cases. (1971) (SOA-21) |
| Murphy, R. et al. and Gaensler, E.  Effects of Low Concentrations of Asbestos: Clinical, Environmental, Radiologic and Epidemiologic Observations in Shipyard Pipe Coverers and Controls. New England J of Med 285(23):1271-78 (1971). (SOA-22) |
| Selikoff, I.J., et al.  Carcinogenicity of Amosite Asbestos. (1972) (SOA-23) |
| Selikoff, I.J., Mortality Experience of Insulation Workers in the United States and Canada, 1943-1976. (1979) (SOA-24) |
| Garfinkel, L., Asbestos: Historical Perspective. (1984) (SOA-25) |
| Barclay, W.R., Asbestos: An Industrial Asset with a Health Cost. (1984) (SOA-26) |
| Peterson, et al., Non-Asbestos-Related Malignant Mesothelioma—A Review. (1984) 10-36, 85, 88-134, 140-141, 185, 187, 221-257, 260-265, 267-293, 295-338, 340-343, 459-460, 464-466, 489, 493 (SOA-27) |
| Threshold Limit Values -Discussion and Thirty-Five Year Index with Recommendations, v. 9 Annuals of the American Conference of Government Industrial Hygienists (1984) (SOA-28) |
| Draft Report Human Exposure to Asbestos, EPA Contract no. 68-01-5791, August 22, 1980 (SOA-29) |
| 1985 Surgeon General Report, The Health Consequences of Smoking - Cancer and Chronic Lung Disease in the Workplace. (SOA-30) |
| 1984 Surgeon General Report, Chronic Obstructive Lung Disease (SOA-31) |
| 1979 Surgeon General Report, Smoking and Health, Volumes I and II (SOA-32) |
| 1977-1978 Surgeon General Report, The Health Consequences of Smoking (SOA-33) |
| 1975 Surgeon General Report, The Health Consequences of Smoking (SOA-34) |
| 1974 Surgeon General Report, The Health Consequences of Smoking (SOA-35) |
| 1973 Surgeon General Report, The Health Consequences of Smoking (SOA-36) |
| 1972 Surgeon General Report, The Health Consequences of Smoking (SOA-37) |
| 1971 Surgeon General Report, The Health Consequences of Smoking (SOA-38) |
| 1969 Surgeon General Report, The Health Consequences of Smoking: 1969 Supplement to the 1967 Public Health Service Review. (SOA-39) |
| 1968 Surgeon General Report, The Health Consequences of Smoking: 1968 Supplement to the 1967 Public Health Service Review. |

**Bottom-left panel:**

| Description |
| --- |
| on the Threshold Limit of Toxic Materials.  Department of the Navy (SOA-87) |
| Patty, F.  Industrial Hygiene and Toxicology, Vol I: General Principles.  2nd ed., Interscience Publishers, 396-401 (1958). (SOA-88) |
| Memo from Chief, Bureau of Ships to Commander, New York Naval Shipyard. USS CONSTELLATION (CVA64) High Temperature Insulation: Procurement of.  Department of the Navy, Bureau of Ships (SOA-89) |
| Memo from the Supervisor of Shipbuilding and the Naval Inspector of Ordnance to the Chief of the Bureau of Ships on the Separation of High Temperature Thermal Insulation on the USS Forrestal and the USS Ranger (SOA-89) |
| Memo from Chief, Bureau of Ships to Commander, New York Naval Shipyard. USS CONSTELLATION (CVA64) High Temperature Insulation: Procurement of.  Department of the Navy, Bureau of Ships (SOA-90) |
| Memo from the Supervisor of Shipbuilding and the Naval Inspector of Ordnance, Newport News, VA, to Newport News Shipbuilding and Dry Dock Company, USS ENTERPRISE (CVAN1 65)  Insulation and Lagging Instructions, Piping and Components, Reactor Compartments, Approval of (Category Eh Pat).  US Navy (SOA-91) |
| Memo from the USN Supervisor of Shipbuilding and the Naval Inspector of Ordnance on High Temperature Thermal Insulation in Aircraft Carriers CVA-59 and CVA-61 (SOA-92) |
| Memo from the Officer in Charge, Naval Ship Engineering Center on Survey of Hazards of Asbestos; final; report on NAVSECPHILADEV Project FA-287, dated September 24, 1960 (SOA-93) |
| Safety and Health Regulations for Ship Repairing.  Federal Register 25(36):1543-43 (1960). (SOA-94) |
| BUMED Instruction 6270.3. From Chief, Bureau of Medicine and Surgery to All Ships and Stations.  Ch-3 of the BUMED Instructions on the Threshold Limit Values for Toxic Materials.  Department of the Navy. (SOA-95) |
| BUMED Instruction 6270.3A. From Chief, Bureau of Medicine and Surgery to All Ships and Stations.  Threshold Limit Values for Toxic Materials.  Department of the Navy. (SOA-96) |
| Memo from Chief, Bureau of Medicine and Surgery to Occupational Health Services. Attached to a Report Activities on Occupational Health Hazards, Release No. 29 (SOA-97) |
| Memo from Chief, Bureau of Medicine and Surgery to Occupational Health Services. Attached to a Report Activities on Occupational Health Hazards, Release No 26 (SOA-98) |
| Memo from Chief, Bureau of Medicine and Surgery to Occupational Health Services. Attached to a Report Activities on Occupational Health Hazards, Release No. 27 (SOA-99) |
| Memo from Chief, Bureau of Medicine and Surgery to Occupational Health Services. Attached to a Report Activities on Occupational Health Hazards, Release No.26 (SOA-100) |
| Patty, F.  Industrial Hygiene and Toxicology, Vol II: General Principles.  2nd ed., Interscience Publishers, 2242-45 (1962). (SOA-101) |
| Memo from Chief, Bureau of Medicine and Surgery to Occupational Health Services. Attached to a Report Activities on Occupational |

**Bottom-right panel:**

| Description |
| --- |
| (SOA-40) |
| 1967 Surgeon General Report, The Health Consequences of Smoking, A Public Health Service Review. (SOA-41) |
| 1964 Surgeon General Report, Smoking and Health: Report of the Advisory Committee of the Surgeon General of the Public Health Service. (SOA-42) |
| Insulation Hygiene Progress Reports, "The Asbestos Exposure of Insulation Workmen," Spring 1975. (SOA-43) |
| Selikoff I.J., Churg J, Hammond, EC: Relation between exposure to asbestos and mesothelioma. (SOA-44) |
| United States Navy. Regulations for the Government of the Navy of the United States.  U.S. Navy Regulations and Naval Instructions, 1918 (SOA-45) |
| Jones, R.  Instructions to Medical Officers: Industrial Hygiene at Navy Yards. The Division of preventative Medicine. Issued by the Bureau of Medicine and Surgery. Navy Department. U.S Naval Medical Bulletin 16:574-9 (1922). (SOA-46) |
| Articles for the Government of the United States Navy, 1930 (SOA-47) |
| Intentionally Omitted. (SOA-48) |
| The Handbook of the Hospital Corps published by the Bureau of Medicine and Surgery, 1939 (SOA-49) |
| Memo from H.E. Jenkins in the Manager of the Yard. Navy Yard, Boston, on Hazards to Health of Insulating Material, Dated July 13, 1939 (SOA-50) |
| Brown, E. Industrial Hygiene and the Navy in National Defense.  Air Hyg Foundation of America, Inc., Fifth Ann. Meeting (1940). (SOA-51) |
| Forrestal, J., Thermal Insulation, Chapter 39 NAVSHIPS 250-1000(39), Bureau of Ships Manual, dated February 26, 1940 (SOA-52) |
| Memo from Chief, Preventative Medicine to SG regarding meeting with assistant secretary in 1941 regarding inviting USPHS inspectors into the Navy yards, March 11, 1941 (SOA-53) |
| Memo from Fred Gardner about a brief report on the asbestos situation during the month of February 1942 (SOA-54) |
| Knowlton, J, Conservative Order No. N-79 Curtailing the Use of Certain Types of Asbestos. Title 32 National Defense. Chapter IX - Office of Production Management, Subchapter B. Priorities Division, Par 1054 Asbestos. (1942). (SOA-55) |
| Drinker, P., Wood, et al., Industrial Health Survey of the Bath Iron Works Corporation.  To the Maritime Commission of Washington, DC, 09742143 (SOA-56) |
| Memo from R.L. Johnson to L.R. Sanford on construction inspection coordinators report inspection, January 15, 1943 (SOA-57) |
| Memo from Forrestal to the Chief of Bureau of Ships on Joint Navy Maritime Commission project with respect to Safety and Industrial |

## Description

Airborne Toxic Materials. Department of the Navy. (SOA-150)

Memo from Chief, Bureau of Medicine and Surgery to Occupational Health Services. "Occupational Health Hazards" Attached to a Report Activities on Occupational Health Hazards, Release No. 67 (SOA-151)

BUMED Instructions 6270.3F. From Chief, Bureau of Medicine and Surgery to All Ships and Stations. Personnel Exposure Limit Values for Health Hazardous Air Contaminants. Department of the Navy (SOA-152)

Intentionally Omitted. (SOA-153)

Lawton, G., The Significance and Description of Exposure in Fabrication, Installation and Removal of Asbestos Materials in United States Navy Shipyard, Division of Industrial Environmental Health Bureau of Medicine and Surgery of the Navy Departments, August 31, 1971 (SOA-154)

Memo from the Commander, Naval Ship Systems Command on Asbestos Exposure Hazards; dated February 9, 1971 (SOA-155)

Ferris, B. et al. and Pendergrass, H. Prevalence of Chronic Respiratory Disease: Asbestosis in Ship Repair Workers. Arch Environ Health 21:220-25 (1971). (SOA-156)

Harries, P. A Comparison of Mass and Fibre Concentrations of Asbestos Dust in Shipyard Insulation Processes. Acc. Occup. Hyg. 14:235-240. (1971). (SOA-157)

Harries, P. Asbestos Dust Concentrations in Ship Repairing: A Practical Approach to Improving Asbestos Hygiene in Naval Dockyards. Ann. Occup. Hyg. 14:241-245. (1971). (SOA-158)

Intentionally Omitted (SOA-159)

Brennan, P., General Industry Standards and Interpretations, Volume 1, Occupational Safety and Health, October, 1972 (SOA-160)

Balzar, J. et al and Cooper, W. Dust-Producing Potential of Construction Materials. Safety and Health in Shipbuilding and Ship repairing, International Labour Office, Geneva 107-122 (1972). (SOA-161)

U.S. Department of Health, Education, and Welfare, Public Health Service. Health Services and Mental Health Administration. National Institute for Occupational Safety and Health, Occupational Exposure to Asbestos, dated 1972 (SOA-162)

Nicholson, W. et al. and Heitmann, H. Direct and Indirect Occupational Exposure to Insulation Dusts in United States Shipyards. Proc. of the International Symposium on Safety and Health in Shipbuilding and Ship Repairing, International Labour Office Occup Safety and Health Series No. 27 Geneva 37-47 (1972). (SOA-163)

First Report to the United States Department of Labor, impact proposed OSHA Standard for Asbestos, dated April 28, 1972 (SOA-164)

Memo from the Chief, Bureau of Medicine and Surgery on Asbestos; measures for control of, BUMED Instructions 6260.14, dated June 7, 1973. (SOA-165)

## Description

Health Hazards, Release No.33 (SOA-102)

Memo from Chief, Bureau of Medicine and Surgery to Occupational Health Services, attached to a Report Activities on Occupational Health Hazards, Close Release No.36 (SOA-103)

Department of the Navy, Memo: TLVs (1963) (SOA-104)

Bureau of Naval Personnel, Military Requirements Petty Officer 1 & C, Navy Training Course, NAVPERS 10057-A, September 26, 1963 (SOA-105)

BUMED Instructions 6270.3B From Chief, Bureau of Medicine and Surgery to All Ships and Stations. Threshold Limit Values for Toxic Materials. Department of the Navy. (SOA-106)

Merv, W. Asbestos Exposure During Naval Vessel Overhaul. Ind Hyg J 264-68 (1964). (SOA-107)

BUMED Instructions 6270.3C From Chief, Bureau of Medicine and Surgery to All Ships and Stations. Threshold Limit Values for Toxic Materials. Department of the Navy. (SOA-108)

Gafafer. W. Occupational Diseases: A Guide to Their Recognition. U.S. Department of Health, Education, and Welfare, 30-53 (1964). (SOA-109)

Memo from Case 700 to Case 300 on Respirators use of in asbestos and amosite work, dated July 23, 1965 (SOA-110)

Office of Civilian Manpower Management, Department of the Navy, Safety Precautions for Shore Activities. April 1965. (SOA-111)

Memo from R.B. Brown to Activities Submitting Occupational Health Reports (NAVMED 576) on Occupational Health Hazards; Release No. 44, Department of the Navy; dated February 8, 1966. (SOA-112)

Walsh-Healey Regulations: General Safety and Health Standards for Federal Supply Contracts. U.S. Dept. of Labor (1966). (SOA-113)

Memo from the Chief Bureau of Medicine and Surgery to Activities Submitting Occupational Health Reports on Occupational Health Hazards; Release No. 44, Department of the Navy, dated February 8, 1966 (SOA-114)

Military Specifications Turbines, Steam, Propulsion of the Naval Shipboard, dated September 21, 1966 (SOA-115)

Memo from Levinson on Insulation Block Operation, dated June 16, 1967 (SOA-116)

International Assoc of Heat and Frost Insulators and Asbestos Workers. Excerpt from Report of Proceedings of the Twenty-First Convention. (1967). (SOA-117)

Memo from Murray C. Brown, Med. Dir., USPMS, Chief Occupational Health Program on Asbestos, dated July 30, 1968 (SOA-118)

Memo from Assistant Chief for Research and Military Medical Specialties, "Asbestos Hazards to Shipyard Employees," dated December 6, 1968. (SOA-119)

## Description

Intentionally Omitted. (SOA-166)

Lawton, George Occupational Health Programs in the United Stated Naval Shipyards Environmental Research (1976) (SOA-167)

Harries, P. Experience with Asbestos Disease and its Control in Great Britain's Naval Dockyards. Environ Research 11:261-267 (1976) (SOA-168)

Selikoff, I. and Hammond, E. Asbestos-associated Disease in United States Shipyards. Cancer J for Clinicians 26(2):87-99 (1976). (SOA-169)

Asbestos Identification and Measurement, Proceedings of a Topical Symposium, The American Conference of Governmental Industrial Hygienists, Cincinnati, Ohio, dated April 9, 1979 (SOA-170)

Blot, W. et al. and Morris, L. Cancer Mortality in U.S. Counties with Shipyard Industries During World War II. Environ. Research 18:281-290 (1979)** (SOA-171)

Blot, W. and Fraumeni, J. Lung Cancer Mortality in the United States: Shipyard Correlations. Annals NY Acad Sci 330:313-15 (1979). (SOA-172)

Hirsch, A. et al. Asbestos Risk Among Full-Time Workers in an Electricity-Generating Power Station. Ann. NY Acad Sci 330:137-145 (1979). (SOA-173)

Puzzi, R. et al and Santi, L. Mortality Among Shipyard Workers in Genoa, Italy. Annals NY Acad Sci 353-77 (1979). (SOA-174)

Rossiter, C. and Harries, P. UK Naval Dockyards Asbestosis Study: Survey of the Sample Population Aged 50-59 Years. Brit. J. of Ind. Med. 36:281-291 (1979). (SOA-175)

United States Coast Guard, Department of Transportation. Navy Recommended Procedures for Control of Asbestos Hazard on Board Merchant Vessels, OCS Facilities and Deepwater Ports. Navigation and Vessel Inspection Circular No. 5-80 (1980). (SOA-176)

Tagnon, I. et al. and Fraumeni, J. Mesothelioma Associated with the Shipbuilding Industry in Coastal Virginia. Cancer Research 40:3875-79 (1980). (SOA-177)

Kolonel, L. et al. and Harries, D. Cancer Mortality in a Cohort of Naval Shipyard Workers in Hawaii: Early Findings. J NCL 64(1):739-43 (1980). (SOA-178)

Blot, W. and Fraumeni, J. Cancer among Shipyard Workers. Banbury Rep. 37-49 (1981). (SOA-179)

Jones, D. Technical Report: Commercial Applications of Marine Vessels: Maintenance and Repair. U.S. Dept of Commerce/Maritime Admin, Office of Research and Development MA-RD-930-81027 (1981). (SOA-180)

Corn, M. Asbestos and Disease: An Industrial Hygienist's Perspective. Am. Ind. Hyg. Assoc. J 47(9):515-523 (1986). (SOA-181)

Brogan, P. Industrial Hygiene Surveys of Rouge Steel Company Steam. Ford, Interoffice memo (1987). (SOA-182)

## Description

Intentionally Omitted. (SOA-120)

Balzer, J. Industrial Hygiene for Insulation Workers. J of Occup Med 10(1):25-31 (1968). (SOA-121)

Harries, P. Asbestos Hazards in Naval Dockyards. Ann. Occup Hyg. 11:135-145 (1968). (SOA-122)

Memo from J.W. Mardock on the Proposed Insulating Materials for Naval Vessels, Department of the Navy, dated May 5, 1969. (SOA-123)

Memo from Officer in Charge, Naval Ship Engineering Center, Philadelphia Division to Commander, Naval Ship Engineering Center on Asbestos Hazards of; NAVSECPHILADIV Project FA-287, dated April 24, 1969. (SOA-124)

Memo for the Assistant Chief of Naval Operations, OP-098 on Working on Asbestos Dust Control, Department of the Navy, April 20, 1969. (SOA-125)

Memo from A.S. Kevlin-New York to Diggers, R., Wilson, F., et al., dated April 17, 1969 on Subject of Asbestos and a program to investigate the use of its insulating products. (SOA-126)

Memo from the Commander, Puget Sound Naval Shipyard to Officer in Charge, Naval Ship Engineering Center, Philadelphia Division. "Shipyard Practices and Combating Hazards Attending Use of Insulating Materials; information concerning." May 6, 1969. (SOA-127)

Memo from the Commander, Puget Sound Naval Shipyard to Commander in Charge, Naval Ship Engineering Center, Philadelphia Division, 6764, Philadelphia, PA "Shipyard Practices and Combating Hazards Attending Use of Insulating Materials; information concerning, dated May 16(?), 1969 (SOA-128)

Memo from Officer in Charge, Naval Ship Engineering Center, Philadelphia Division to Commander, Naval Ship Engineering Center on Shipyard Practices and Combating Hazards in use of Insulating Materials, May 21, 1969. (SOA-129)

Memo from Code 730 to Code 720 on Asbestos dust finding during rip out aboard ships; report of, dated June 22, 1969 (SOA-130)

Memo from Officer in Charge, Naval Ship Engineering Center, Philadelphia Division to Commander, Naval Ship Engineering Center on Asbestos Hazards of; NAVSECPHILADIV Project FA-287, Department of the Navy, dated August 20, 1969 (SOA-131)

Memo from Officer in Charge, Naval Ship Engineering Center, Philadelphia Division to Commander, Naval Ship Engineering Center on Hazards of Asbestos; final report of NAVSECPHILADIV Project FA-287, Department of the Navy, dated September 24, 1969 (SOA-132)

Faucet, R. Memo from the Chief, Bureau of Medicine and Surgery to Commander, the Naval Ship Engineering Center. The Measures for Control of Asbestos Dust Exposure. BUMED-73-NER (SOA-133)

Faucet, R. Memo from the Chief, Bureau of Medicine and Surgery to Commander, Puget Sound Naval Shipyard, Bremerton. Asbestos Control Measure at the Puget Sound Naval Shipyard. BUMED-732-SHB (SOA-134)

## Description

U.S. Department of Transportation, United States Coast Guard. Navigation and Vessel Inspection Circular No.6-87. NVIC 6-87 (1987). (SOA-183)

Jaquet, L. Asbestos Exposure Abroad Merchant Ships. Third Wave of Asbestos Disease: Exposure in Place Conference (1990). (SOA-184)

Intentionally omitted. (SOA-185)

Paull, J.M., The Origin and basis of Threshold Limit Value. (SOA-186)

LaNier, M.E., Threshold Limit Values—Discussion and Thirty-Five Year Index with Recommendations. Annals of the American Conference of Governmental Industrial Hygienists, Vol. 9. (1984) (SOA-187)

Demonstrative chart re: State of the Art (SOA-188)

Copies of Slides Used by Bill Dyson at DRI Seminar re: Exposure Assessment. (SOA-189)

American Thoracic Society Official Statement adopted March 1986. The Diagnosis of Nonmalignant Disease Related to Asbestos (SOA-190)

Report of The Royal Commission on Matters of Health and Safety Arising from the Use of Asbestos in Ontario (2013) (SOA-191)

Correspondence from W. Clark Cooper, M.D. to Mr. Bernard Reuben dated March 31, 1983. (SOA-192)

Owens-Illinois, Inc.'s Memo Regarding Amosite Asbestos in Kaylo Insulation. (1953) (SOA-193)

Response of Armstrong World Industries to Plaintiffs' Master Interrogatories in Cameron County, Texas. (SOA-194)

Defendant Manville Corporation Asbestos Disease Compensation Fund's Answers to First Amended Standard Set of Liability Interrogatories. (SOA-195)

Insulation Hygiene Progress Reports, Vol. 1, No. 4 (Winter 1969). (SOA-196)

Deposition of Dr. Barry Castleman taken July 28, 2004. (SOA-198)

Drinker, P. Industrial Health Problems, J Ind. Hyg. Toxicol. 26(3): 86-89 (1944). (SOA-199)

Jones, R. "Instructions to Medical Officers: Occupation Hazards and Diagnostic Signs: A Guide to Impairments to be Looked for in Hazardous Occupations." The Division of Preventive Medicine. Issued by the Bureau of Medicine and Surgery, Navy Department. U.S. Naval Medical Bulletin 17:883-914 (1922). (SOA-200)

Letter to Bureau of Ships, Navy Department from Dr. Phillip Drinker, dated January 8, 1944. (SOA-203)

Cryor, R., "The Asbestos Textile Industry in Germany," Office of Military Gov't for Germany (US) 5 November 1945. (SOA-205)

Series of Dept. of Navy, Bureau of Medicine Memos. (SOA-206)

## Description

Barboo, S. Memo from the Chief, Bureau of Medicine and Surgery to Commander, the Naval Ship Engineering Center. Control Measures for Asbestos Dust Exposure in Naval Shipyards. BUMED-732-SHB (SOA-135)

Brown, J. Memo from Commander, Norfolk Naval Shipyard to Commander, Naval Ship System Command. Exposure to Airborne Asbestos Dust; Follow-Up Detailed Report. NY6/9260(760). (SOA-136)

Barboo, S. Airborne Asbestos. Brief Discussing a Visit to the John-Manville Research and Development Center and Plant and Views Exchanged about the Control of Asbestos. BUMED 5050-1. (SOA-137)

Murdock, J.Memo. Proposed Insulating Materials for Naval Vessels. Department of the Navy (SOA-138)

Intentionally Omitted. (SOA-139)

Pendelton, V. Memo from Chief of Naval Material to Commander, Naval Ship Systems Command. Measures for Control of Asbestos Dust Exposure Among Navy Shipyard Workers. BUMED-6260. (SOA-140)

Ward, N. Memo from Chief, Naval Operations to Commander, Naval Ship System Command. Measures for the Control of Asbestos Dust Exposure Among Navy Shipyard Workers. BUMED 6260. (SOA-141)

Carnevista, T. Memo from Commander, Naval Ship System to Commander, All Naval Shipyards. Evaluation of Asbestos Exposure to employees of Naval Shipyards. Department of the Navy, Navy Ship Systems Command. BUMED 6260. (SOA-142)

Davis, G. Memo from Chief, Bureau of Medicine and Surgery to Commander, Naval Ship Systems Command. Asbestos Health Hazards; Meeting for the Discussion of Control Measures. BUMED-732. (SOA-143)

Davis, G Memo from Chief, Bureau of Medicine and Surgery to Commander, Naval Material. "A Meeting for the Discussion of Control Measures of Asbestos Health Hazards" (SOA-144)

Barboo, S. Two Correspondence Cover Sheets enclosing documents on asbestos exposure (SOA-145)

Davis, G. Memo from Chief, Bureau of Medicine and Surgery to Commander, Naval Ship Systems Command. Measures for the Control of Asbestos Dust Exposure Among Navy Shipyard Workers. BUMED-73-NER (SOA-146)

Ward. N. Memo from Chief of Naval Operations to Chief, Bureau of Medicine and Surgery. The Hazards of Asbestos and Control Thereof. Department of the Navy, Office of Chief Naval Operations. BUMED 6260 (SOA-147)

Davis, G. Memo from Chief, Bureau of Medicine and Surgery to Commander, Naval Ship Systems Command. Evaluation of Asbestos Exposure to Employees of Naval Shipyards. Department of the Navy, Bureau of Medicine and Surgery. BUMED-732-SHB. (SOA-148)

Packovich, M. Memo and Medical Documents from the Industrial Medical Officer, Packovich, to Senior Medical Officer Capt, Uhhafer. Asbestos Health Hazard in the Navy Norfolk Shipyard "(SOA-149)

BUMED Instructions 6270.3E. From Chief, Bureau of Medicine and Surgery to All Ships and Stations. Threshold Limit Values for

## Description (Panel 1)

| Description |
| --- |
| Program in Naval Industrial Shore Establishments (October 20, 1942) (SOA-252) |
| Memorandum from the Assistant Secretary of the Navy to Inspector of Ordnance in Charge, U.S. Naval Ammunition Depot, Burns City, Indiana. Subject: Expansion of Safety and Industrial Health Program in Naval Industrial Shore Establishments. (October 24, 1942) (SOA-253) |
| Annual Report to the Secretary of the Navy by the Chief of the Bureau of Medicine and Surgery. Rear Admiral Ross T. McIntire, Medical Corps, USN. Fiscal Year 1939. (SOA-254) |
| Memorandum from the Assistant Secretary of Navy to Chairman, U.S. Maritime Commission, Subject: "Approval of Minimum Requirements for Industrial Health and Safety in Contract Shipyards." January 15, 1943. (SOA-255) |
| Memorandum from the Assistant to Bureau, Bureau of Engineering, to Various Commandants, Subject: "Boiler Casings, Uptakes and Breeching; Renewal of Insulation of." Dated December 14, 1932. (SOA-256) |
| Annual Report of the Surgeon General, U.S. Navy, Chief of the Bureau of Medicine and Surgery to the Secretary of the Navy Concerning Statistics of Diseases and Injuries in the United States Navy for the Calendar Year 1939. (1941) (SOA-257) |
| Dublin, Louis I. Occupational Hazards and Diagnostic Signs: A Guide to Impairments to be Looked for in Hazardous Occupations Bulletin of the United States Bureau of Labor Statistics. No. 306. April 1922. (SOA-258) |
| Keane, WT and MA Zavon. 1966. Occupational hazards of pipe insulators. Arch Environ Health 13 (2): 171-184 (SOA-259) |
| Selikoff, IJ, EC Hammond, and H Seidman. 1973. Cancer Risk of insulation workers in the United States. In: P Bogovski et al. (eds.), Biological effects of asbestos: proceedings of a working conference, Lyon: International Agency for Research on Cancer (IARC), IARC Scientific Publications No. 8, 209-216. (SOA-260) |
| Navy Memorandum Concerning the December 4, 1968 Washington Post article entitled "U.S. Warned of Asbestos Peril" and Selikoff. (SOA-261) |
| Biological Effects of Asbestos. Selikoff, ed. Annals of the New York Academy of Sciences, Vol. 132. 1965. (SOA-262) |
| Insulation Hygiene Program Reports. (SOA-263) |
| International Association of Heat and Frost Insulators and Asbestos Workers (1967). Excerpt from Report of Proceedings of the Twenty-First Convention of the International Association of Heat and Frost Insulators and Asbestos Workers. Chicago, IL. Sept. 5-7, 1967. (SOA-264) |
| Fleischein, A, AN Rohl, AM Langer, and IJ Selikoff. 1979. Drywall construction and asbestos exposure. Am Ind Hyg Assoc J 40:402-407. May 1979. (SOA-265) |
| Memo from S.H. Barbou, Head of Industrial Hygiene and Safety Branch, to D.J. Bresmer, Head, Industrial Hygiene Division, Puget |

## Description (Panel 2)

| Description |
| --- |
| Engineering, Operation and Maintenance prepared by Bureau of Naval Personnel - NAVPERS 10813-B. copyright 1966 (SOA-207) |
| Minimum Requirements for Safety and Health in Contract Shipyards. (1943): Washington, DC: United States Government Printing Office. The National Archives. Washington, DC. (SOA-208) |
| Memorandum from Ralph A. Bard, Assistant Secretary of the Navy (February 21, 1943): "To Commandants and Commanding Officers, Share Establishments. Subject: Safety and Health of Civil Employees." National Archives, Boston. Hygiene, Commandant Correspondence. Record group 181 (SOA-209) |
| Memorandum from Frank Knox, Secretary of the Navy (February 24, 1941): "To Chiefs of All Bureaus, Commandants and Commanding Officers, Naval Shore Establishments and Naval Supervisors of Shipbuilding. Subject: Expansion of Safety and Industrial Health Programs in Naval Industrial Shore Establishments." National Archives, Washington, DC. Shore Establishments Division, Shipyard Labor Relations. Record group 80. (SOA-210) |
| Memorandum from Frank Knox, Secretary of the Navy (February 23, 1942): "To Chiefs of All Bureaus, Commandants and Commanding Officers, Shore Establishments. Subject: Industrial Health Program, Duties of Medical Officers for Industrial Health." National Archives, Washington, DC. Shore Establishments Division, Shipyard Labor Relations. Record group 80. (SOA-211) |
| Memorandum from Rear Admiral Fisher and Daniel E. Ring (November 5, 1942): "To Ralph Bard, Assistant Secretary of the Navy and Admiral H.L. Vickery, Commissioner, U.S. Maritime Commission. Subject: Plans for Safety and Health Programs." National Archives, Washington, DC. Shore Establishments Division, Shipyard Labor Relations. Record group 80 (SOA-212) |
| Memorandum from Frank Knox, Secretary of the Navy (March 4, 1943): "To Chiefs of all Bureaus, Commandants and Commanding Officers, Naval Shore Establishments, Naval Supervisors of Shipbuilding. Subject: Minimum Requirements for Industrial Health and Safety." National Archives, Washington, DC. Shipyard Labor Relations, Health and Safety. Record group 178. (SOA-213) |
| Memorandum from Frank Knox, Secretary of the Navy (May 5, 1943): "To Chiefs of all Bureaus, Commandants and Commanding Officers, Naval Shore Establishments, Naval Supervisors of Shipbuilding. Subject: Joint Navy-Maritime Commission Project with respect to Safety and Industrial Health in Private Shipyards having Navy Contracts." National Archives, Washington, DC. Shipyard Labor Relations, Health and Safety. Record group 178. (SOA-214) |
| Industrial Health Survey of the Oregon Shipbuilding Corporation to the Maritime Commission (SOA-216) |
| Heating and Cooling for Naval in Industry - American Industrial Hygiene association 1970. (SOA-217) |
| Stockton, S.D., Industrial Hygiene Services Survey Report: Asbestos Exposure Evaluations USS Chemicals-Neville Island, May 17, 1984. (SOA-218) |
| Asbestos in Public & Commercial Buildings: Supplementary Analyses of Selected Data Previously Considered by the Literature Review Panel. Health Effects Institute - Asbestos Research 1992. (SOA-219) |

## Description (Panel 3)

| Description |
| --- |
| Sound Naval Shipyard, dated December 30, 1969. (SOA-282) |
| NAVSHIPS Notice 5100: From Commander, Naval Ship Systems Command, to Commander, All Naval Shipyards. "Asbestos Dust Exposure, measures to control." Department of the Navy. August 15, 1969. (SOA-283) |
| Memo from Chief, Bureau of Medicine and Surgery to Commander, Naval Ship Systems Command, "Proposed NAVSHIPS Instructions 5100 'Control of Asbestos Hazards," March 31, 1970. (SOA-284) |
| NAVSHIPS Notice 9390. From Commander, Naval Ship Systems Command, "Asbestos Hazard; reduction of," February 23, 1971. (SOA-285) |
| Memo from Chief, Bureau of Medicine and Surgery to Commander, Naval Ship Systems Command, "Naval Shipyard Use of Insulation Materials of High Asbestos Content," March 23, 1972. (SOA-286) |
| "Naval Ship Systems Command Technical News; for the information of personnel in the naval establishment," ed. John W. Whitmore, Vol. 21, No. 11, November 1972. (SOA-287) |
| Memo from the Commanding Officer, Navy Ships Part Control Center to the Director, General Services Administration, "NAVSEC Hyattsville, Md." December 12, 1973. (SOA-288) |
| OPNAV Instructions 6260.1 from the Chief of Naval Operations to All Ships and Stations (less Marine Corps field addresses not having Navy personnel attached) on Control of Asbestos Exposure to Navy Personnel. Department of the Navy, dated April 9, 1974. (SOA-289) |
| Memo from Acting Deputy Director, National Liaison Division, General Services Administration, "Asbestos Free Insulation." (SOA-290) |
| NAVSHIPS INSTRUCTION 5100.26, Memo from Commander, Naval Ship Systems Command on Asbestos Exposure Hazards; control of, dated February 9, 1971 (SOA-291) |
| "Partnership for Prevention - The Insulation Industry Hygiene Research Program." Industrial Medicine Vol. 38 No. 4, April 1970. (SOA-292) |
| Department of the Navy. From SEC 6100 to SHIPS 07. "Hazards of Asbestos" dated December 9, 1968. (SOA-293) |
| Any and all documents related to state of the art. (SOA-294) |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |

## Description (Panel 4)

| Description |
| --- |
| Ambient Water Quality Criteria for Asbestos Prepared by U.S. EPA, Office of Water Regulations and Standards, Criteria and Standards Division, Washington D.C., EPA 440/5-80-022, October 1980. (SOA-220) |
| William L. Dyson, Ph.D., "Mortality Among Individual Asbestos Exposures from Vague and Ambiguous Testimony and Records." (SOA-221) |
| John M. Dement, Ph.D., "Exposures and Mortality Among Chrysotile Asbestos Workers. Part 1: Exposure Estimates." (SOA-222) |
| Richard J. Hardy, "Indoor Asbestos Concentrations associated with the Use of Asbestos-Contaminated Tap Water in Portable Home Humidifiers." (SOA-223) |
| Intentionally Omitted. (SOA-224) |
| Irving J. Selikoff and Dr. H. Herbert Seidman, M.B.A. and E. Cuyler Hammond, Sc.D. Mortality Effects of Cigarette Smoking Among Asbestos Asbestos Factory Workers, JNCI, Vol. 65, No. 3, September 1980. (SOA-225) |
| Irving J. Selikoff and D.H.K. Lee, "Asbestos and Disease", pp. 17, 464-467, &477 (Academic Press 1978). (SOA-226) |
| Irving J. Selikoff, Ruth Lasar and William J. Nicholson, "Asbestos Disease in United States Shipyards," Annals of New York Academy of Sciences. 1979, 295-311. (SOA-227) |
| Irving J. Selikoff and E. Cuyler Hammond, "Asbestos-associated Disease in United States Shipyards," CA A Cancer Journal for Clinicians. 28(2) (1978). (SOA-228) |
| Jacqueline Karnell Corn, Ph.D.; Dr. Arts. and Jennifer Starr, MS, "Historical Perspective on Asbestos: Policies and Protective Measures in World War II Shipbuilding." American Journal of Industrial Medicine 11:359-373 (1987) (SOA-229) |
| Letter from Bath Iron Works to Supervisor of Shipbuilding, USN dated October 2, 1943 (SOA-230) |
| 10/6/43 letter from Supervisor of Shipbuilding to Gibbs & Cox re: insulation and lagging on DD692 class destroyers (SOA-231) |
| 10/14/43 memo to supervisor of shipbuilding at Bath re: lagging for insulation of piping and machinery on DD692 class destroyers (SOA-232) |
| 10/16/43 memo to Bureau of Ships referencing the 10/2/43 Bath Iron Works letter (SOA-233) |
| 07/06/44 memo to Supervisor of Shipbuilding from E.B. Perry re: insulation and lagging schedule for engineering piping on DD692 class destroyers (SOA-234) |
| Letter from Supervisor of Shipbuilding, USN to The Chief of BUSHIPS regarding the procurement of insulation for use on destroyers, including "thug hull" destroyers such as the Higbee. This letter is dated December 12, 1944, five months after BUSHIPS wrote the Supervisor of Shipbuilding regarding dangers of water repellent asbestos felt. (SOA-235) |
| Series of letters from August 9, 1946 to September 30, 1946 from Commanders to Chief of BUSHIPS regarding the use of Fiber-glass |

## Description (Panel 5)

| Description |
| --- |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |

## Description (Panel 6)

| Description |
| --- |
| Insulation. (SOA-236) |
| Memo from GSC-11/1 to The General Stores Supply Officer (Code GSC-A). "Meeting of the Asbestos Fibre and Textile manufacturers Industry Advisory Committee of the National Production Authority held in the new GAO, Building on 17 July 1951." 07/18/51 (SOA-237) |
| Memo from the Navy to Office of Naval Material. "Conservation of Amosite Asbestos." March 24, 1952 (SOA-238) |
| Memo from the Chief of Naval Material to Chairman of the Munitions Board. "Stockpiling of Amosite Asbestos." 1952. (SOA-239) |
| Memo from Chief, Bureau of Ships to Chief of Naval Material. "Asbestos: amosite." April 29, 1952 (SOA-240) |
| Memo from Chief of Naval Material to Chief, Bureau of Ships "Asbestos: amosite." April 08, 1952 (SOA-241) |
| Memo from Chief of Naval Material to Chairman of the Munitions Board. "Asbestos, Amosite, Current Navy Consumption of" Date unknown. (SOA-242) |
| Memo from Chief, Bureau of Ships to Chief on Naval Material. "Asbestos, Amosite, stockpiling of" 10/06/52 (SOA-243) |
| Memo for the Assistant Secretary of Defense. "Program Information on Amosite Asbestos." August 10, 1956 (SOA-244) |
| Memo from the Commander of the Naval Ship Engineering Center to the Commander of the Naval Ship Engineering Center, Philadelphia Division on Hazards of Asbestos in September of 1969 (SOA-245) |
| Memo from Officer in Charge, Naval Ship Engineering Center, Philadelphia Division to General Dynamics Corporation. "Shipyard Practices in Combating the Hazards Attending the Use of Insulating Materials; request for information confirming." NAVSECPHILADIV Project fA-2b7. April 30, 1969. (SOA-246) |
| Intentionally Omitted. (SOA-247) |
| "The Statutes at Large of the United States of America from January 1935 to June 1936: Concurrent Resolutions, Recent Treaties and Conventions, Executive Proclamations and Agreements." Volume XLIX, Part One: Public Acts and Resolutions. United States Government Printing Office, Washington: 1936. (SOA-248) |
| "Materials Survey Asbestos - 1950." Compiled for the National Security Resources Board by the United States Department of the Interior, Bureau of Mines (February 1952) (SOA-249) |
| Memorandum from Assistant Secretary of the Navy, Ralph A. Bard, to Commandants and Commanding Officers, Shore Establishments; Bureaus and Offices of the Navy Department. Subject: Funds for Safety Engineering. (September 4, 1941) (SOA-250) |
| Memorandum from Inspector of Ordnance in Charge to the Secretary of the Navy. Subject: Expansion of Safety and Industrial Health Program in Naval Industrial Shore Establishments. (October 6, 1942) (SOA-251) |
| Memorandum from Inspector of Ordnance in Charge to the Secretary of the Navy. Subject: Expansion of Safety and Industrial Health |

| Description |
| --- |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Biological Effects of Mineral Fibers, International Agency for Research on Cancer, Vol. 2, 1980 (ML-7) |
| Kevin Browne, The Epidemiology of Mesothelioma, J. Soc. Occup. Med. (1983) 33, 190-194 (ML-2) |
| Kevin Browne, "Is Asbestos or Asbestosis the Cause of the Increased Risk of Lung Cancer in Asbestos Workers?" British Journal of Industrial Medicine, 43:145-149 (1986) (ML-3) |
| Kevin Browne, "A Threshold for Asbestos Related Lung Cancer," British Journal of Industrial Medicine, 43:556-558 (1986) (ML-4) |
| Andrew Churg, Asbestos Fibers in the General Population, 1980 (ML-5) |
| Andrew Churg, Lung Asbestos Content in Long-Term Residents of a Chrysotile Mining Town, 1985 (ML-6) |
| Andrew Churg and Lisa Depaoli, Clearance of Chrysotile Asbestos from Human Lung, Experimental Lung Research, V. 14, no. 5, 1988, pp. 567-574. (ML-7) |
| Andrew Churg, M.D. and Barry Wiggs, Bsc, Fiber Size and Number in Workers Exposed to Processed Chrysotile Asbestos, Chrysotile Miners, and the General Population, American Journal of Industrial Medicine 9:143-152(1986) (ML-8) |
| Andrew Churg, M.D., F.C.C.P., Chrysotile, Tremolite, and Malignant Mesothelioma in Man, Chest/93/3/March, 1988. (ML-9) |
| Andrew Churg, "Analysis of Asbestos Lung Content," (editorial), British Journal of Industrial Medicine; 48:649-652 (1991). (ML-10) |
| John E. Craighead, "The Epidemiology and Pathogenesis of Malignant Mesothelioma", Chest, 96(1)92S (1989). (ML-11) |
| John E. Craighead, M.D., Do Silica and Asbestos Cause Lung Cancer", Arch Pathol Lab Med, Vol. 116, January 1992. (ML-12) |
| Edward A. Gaensler, M.D. & George W. Wright, M.D., Evaluation of Respiratory Impairment, Arch Environ Health, Vol. 12, February 1966. (ML-13) |
| Edward A. Gaensler, M.D., Peter J. Jederlinic, M.D., Theresa C. McLoud, M.D., Radiographic Progression of Asbestosis With And Without Continued Exposure, Department of Medicine and Surgery, Boston University School of Medicine and Department of Radiology, Harvard Medical School, Boston, MA. (ML-14) |
| Edward A. Gaensler, T. C. McLoud, and C. B. Carrington, "Thoracic Surgical Problems in Asbestos-Related Disorders," Annals of Thoracic Surgery, 40:82-89 (1985). (ML-15) |
| Edward A. Gaensler, M.D., "Asbestos Exposure in Buildings: Occupational Lung Diseases," Clinics in Chest Medicine, 13(2) (1992). (ML-16) |
| K. Browne and E. B. Ilgren, "Asbestos-Related Mesothelioma: Evidence for a Threshold in Animals and Humans." (ML-17) |

| Description |
| --- |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |

| Description |
| --- |
| P. B. Das, Mesothelioma in an Agricultural Community of India: A Clinicopathological Study, Aust. N.Z. J. Surg., Vol. 46 - No. 3, August 1976 (ML-18) |
| Davis, J M.G., McDonald, J.C., "Low Level Exposure to Asbestos: Is There a Cancer Risk?", British Journal of Industrial Medicine, 45:505-508 (1988). (ML-19) |
| Dewis, J M.G., "The Pathology of Asbestos-Related Disease," Thorax, 39:803 (1984). (ML-20) |
| M. Hobbs, S. Woodward, B. Murphy, A. Musk, and J. Elder, The Incidence of Pneumoconiosis, Mesothelioma and Other Respiratory Cancer in Men Engaged in Mining and Milling Crocidolite in Western Australia. (ML-21) |
| Hughes, J. and Weill, H., Lung Cancer Risk Associated with Manufacture of Asbestos-cement Productions; 627-635. (ML-22) |
| Hughes, J.M., and Weille, H., "Asbestosis as a Precursor of Asbestos Related Lung Cancer: results of a Prospective Mortality Study." British Journal of Industrial Medicine, 48:229-233 (1991). (ML-23) |
| Isselbacher, Klaus and Hardy "Asbestosis and Bronchogenic Carcinoma," 11:53. (ML-24) |
| J. Q. Huang, "A Study on the Dose-Response Relationship Between Asbestos Exposure Level and Asbestosis among Workers in a Chinese Chrysotile Product Factory." (ML-25) |
| B. Lanphear, M.D., C. Buncher, ScD., Latent Period for Malignant Mesothelioma of Occupational Origin. (ML-26) |
| Lemen, Dement and Wagoner, Epidemiology of Asbestos-Related Diseases. (ML-27) |
| Lindell, K.V., Biological Effects of Asbestos (Industrial Use of Asbestos), edited by P. Bogovski, J.C. Gilson, V. Timbrell and J.C. Wagner, International Agency for Research on Cancer, Lyon, France; 1973. (ML-28) |
| Alison D. McDonald and J. Corbett McDonald, Epidemiology of Malignant Mesothelioma, Asbestos-Related Malignancy, 1986. (ML-29) |
| J.C. McDonald, M.D., "Mesothelioma and Asbestos Fiber Type, Evidence from Lung Tissue Analysis," 1989. (ML-30) |
| G. Mowe, M.D., D. Gylseth, PhD., F. Hartveit, M.D., V. Skaug, M.D., Occupational Asbestos Exposure, Lung-Fiber Concentration and Latency Time in Malignant Mesothelioma, Scand J Work Environ Health 10 (1984) 293-298. (ML-31) |
| Mossman, B.T. and Gee, J.B.L., "Medical Progress: Asbestos-Related Diseases," New England Journal of Medicine, 320 (26):1721-1730 (1989). (ML-32) |
| K. Takahashi, et al, "Relation Between Lung Asbestos Fibre Burden and Exposure Indices Based on Job History." (ML-33) |
| Nicholson, W.J., et al., "Long Term Mortality Experience of Chrysotile Miners and Millers in Thetford Mines, Quebec, "Annals of New York Academy of Sciences, 330:11-221 (1979). (ML-34) |

| Description |
| --- |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |

| Description |
| --- |
| Ohlson, C.G. Hogsted, "Lung Cancer Among Asbestos Cement Workers, A. Swedish cohort study and a review," British Journal of Industrial Medicine, 42:397-402 (1985). (ML-35) |
| L. Christine Oliver, M.D., Ellen A. Eisen, ScD, Reginald Green, M.D. and Nancy L. Sprince, M.D., Asbestos-Related Pleural Plaques and Lung Function. (ML-36) |
| J. Peto, H. Seidman, and I. Selikoff, Mesothelioma Mortality in Asbestos Workers: Implications for Models of Carcinogenesis and Risk Assessment, Br J. Cancer (1982) 45, 124. (ML-37) |
| Pisani, R.J., et al., "Malignant Mesothelioma of the Pleura," Mayo Clinic Proceedings, 1234 (1988). (ML-38) |
| A.J. Rogers, Max, Relationship Between Lung Asbestos Fiber Type and Concentration and Relative Risk of Mesothelioma, American Journal of Industrial Medicine, Vol. 9, No. 2, 1986. (ML-39) |
| A. Sanden, M.D. and B. Jarvholm, M.D., A Study of Possible Predictors of Mesothelioma in Shipyard Workers Exposed to Asbestos. (ML-40) |
| Mark H. Schiffman, Case-Control Study of Diet and Mesothelioma in Louisiana, Cancer Research, 2911-2915, May 15, 1988. (ML-41) |
| Shin-Cremer, G.K., "The Relationship Between Asbestosis and Bronchial Cancer," Chest, 78(2):380-281 (1980). (ML-42) |
| G.K. Shin-Cremer, F D.K. Liddell, W P D Ungar, B n Becandershout, The Mortality of amphibole miners in South Africa 1946-80, British Journal of Industrial Medicine, 1992; 49-566. (ML-43) |
| Asbestosis and Pleural Tumors, H C.M. Van Der Schoot, June 7, 1958. (ML-44) |
| Wagner, J.C., Newhouse, M.L., Corrin, B., Rossiter, C.E.R. and Griffiths, D.M., "Correlation Between Fibre content of the Lung and Disease in East London Asbestos Factory Workers," British Journal of Industrial Medicine, 39:273-276 (1982). (ML-45) |
| Wagoner – Published Findings of Mesothelioma according to Source of Asbestos Exposure: Pre-1964. (ML-46) |
| Lung Cancer in Asbestos Patients, Wedler, 1943, translated. (ML-47) |
| Weill, Hans, "Asbestos-Associated Disease: Science, Public Policy and Litigation," Chest, 84/6/1 (1983). (ML-48) |
| Akira M. Yokoyama K., Yamamamoto S., Higashhara T., Morinage K. Kita No., Morimoto S., Rezoe J., Kozuka T., "Early asbestosis: evaluation with high-resolution CT," Radiology 1991; 178:409-416. (ML-49) |
| Selikoff I.J., Churg J, Hammond, EC: Relation between exposure to asbestos and mesotheliomas. (ML-50) |
| Roggli, VL, PC Pratt, and AR Brody. 1993. Asbestos fiber type in malignant mesothelioma: An analytical scanning electron microscopic study of 94 cases. Am J Ind Med 23: 605-614. (ML-51) |
| Hodgson, JT and A Darnton. The Quantitative Risks of Mesothelioma and Lung Cancer in Relation to Asbestos Exposure. Ann Occup |

| Description |
| --- |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |

**Description**

| Description |
| --- |
| August 10, 1994 OSHA Rules and Regulations Department of Labor "Occupational Exposures to Asbestos" Final Rule; 29 CFR 1910, 1915, 1926; RIN: 1218-AB25. (LRCS-12) |
| January 29, 1986, EPA, Asbestos: Proposed Mining and Import Restrictions and Proposed Manufacturing, Importation, and Processing Prohibitions. (LRCS-13) |
| Federal Register - EPA, - 40 C.F.R. — Parts 61 and 763. January 10, 1989: Asbestos NESHAP Revision, Including Disposal of AC Material Removed from Schools. (LRCS-14) |
| Title 41-Public Contracts and Property Management, Chapter 50 — Public Contracts, Depart of Labor, Part 50-20 1 — General Regulations, part 50-204-Safety and Health Standards for Federal Supply Contracts. 34 Fed. Reg. No. 96 (May 20, 1969). (LRCS-15) |
| Title 40, Chapter I, EPA, Part 61 -National Emission Standards for Hazardous Air Pollutants, 40 Fed. Reg. No. 199 (October 14, 1975). (LRCS-16) |
| Title 40, Chapter I, EPA, Part 61 — National Emission Standards for Hazardous Air Pollutants. 38 Fed. Reg. No. 66 (April 6, 1973). (LRCS-17) |
| 29 C.F.R. Chapter XVII, 7-1-92, OSHA, part 1910 1001 Asbestos. (LRCS-18) |
| 29 C.F.R. Chapter XVII, 7-1-86, OSHA, part 1910 1001 Asbestos. (LRCS-19) |
| 29 C.F.R. 1910, OSHA Safety and Health Standards: Standard for Exposure to Asbestos Dust, (June 7, 1972). (LRCS-20) |
| Title 29-Labor, Chapter XVII-OSHA, Part 1910.100 1-Asbestos, 42 Fed. Reg. No. 240 (December 14, 1977). (LRCS-21) |
| Proposed Rules, 40 Fed. Reg. No. 197 (October 9, 1975). (LRCS-22) |
| Proposed Rules, 57 Fed. Reg. No. 64 (April 2, 1992). (LRCS-23) |
| Proposed Rules, 57 Fed. Reg. No. 106 (June 2, 1992). (LRCS-24) |
| 40 C.F.R., Chapter I Part 763.60 - 763.179 Asbestos (7-1-93 Edition). (LRCS-25) |
| 40 C.F.R., Chapter I, Part 61 — National Emission Standards for Hazardous Air Pollutants (7-1-93 Edition). (LRCS-26) |
| 29 C.F.R. Chapter XVII (7-1-93 Edition), Part 1910 - OSHA Standard. (LRCS-27) |
| Title 29— Labor, Chapter XIII, Part 1518 — Safety and Health Regulations for Construction (Standard for Exposure to Asbestos Dust), 36 Fed. Reg. 234 — EPA proposals on standards for asbestos, beryllium and mercury, subpart B — National Emission Standards for Asbestos (December 7, 1971). Part 1900 - OSHA Emergency Standards for Exposure to Asbestos Dust. (LRCS-28) |
| 29 C.F.R. 1910 and 1926, Occupational Exposure to Asbestos, Tremolite, Anthophyllite, and Actinolite; Final Rules (LRCS-29) |
| Criteria for a Recommended Standard, Occupational Exposure to Asbestos, U.S. Department of Health, Education and Welfare, 1972. |

**Description**

| Description |
| --- |
| Hoy, 44 (8): 565-601, 2000. (ML-52) |
| Pathology of Occupational Lung Disease. A. Churg and FHY Green (editors), Williams & Wilkins, 1998. (ML-53) |
| Charg, A. and Green, F. Neoplastic Asbestos-Induced Disease in Pathology of Occupational Lung Disease. 2nd edition. Baltimore: Williams & Wilkins. 1998. (ML-54) |
| Suzuki, Y and SR Yuen. 2001. Asbestos Tissue burden study on human malignant mesothelioma. Ind. Health 39:150-160. (ML-55) |
| Roggli, VL, Pratt, P. and Brody, A. Mesothelioma in Pathology of Asbestos-Associated Diseases. Boston: Little, Brown, and Company. 1992. (ML-56) |
| Roggli, VL and Brody, A. Chapter 10. Experimental Models of Asbestos-Related Diseases. In Pathology of Asbestos-Associated Diseases. Roggli. V. Greenberg, S and Pratt, P. eds. Boston: Little Brown, and Company. 1992. (ML-57) |
| Any and all medical literature (ML-58) |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |

**Description**

| Description |
| --- |
| (LRCS-30) |
| "Proposed Criteria and Recommended Interim Standard for Asbestos; U.S. Department of Health, Education and Welfare (Draft Copy 6/12/83). (LRCS-31) |
| NIOSH, Manual of Analytical Methods 7400, issued 2/15/84. (LRCS-32) |
| NIOSH, Manual of Analytical Methods 7400, issued 8/15/87. (LRCS-33) |
| NIOSH Revised Recommended Asbestos Standard, December 1976. (LRCS-34) |
| NIOSH Revised Recommended Asbestos Standard. (LRCS-35) |
| Permissible Exposure Levels of Asbestos in the Workplace, OSHA Regulations published in Federal Register, Vol. 36, No. 105; Federal Register, Vol. 37, No. 110. (LRCS-36) |
| Walsh-Healey Regulations - 1972. (LRCS-37) |
| Walsh-Healey Regulations - 1966. (LRCS-38) |
| Industrial Hygiene Digest - May, 1967. (LRCS-39) |
| Federal Register Vol. 68, No. 24 Wednesday, February 3, 2003/ Notices. (LRCS-40) |
| Administration of the Federal Occupational Safety and Health Rules, Regulations, and Standards; outline of program intended to ensure OSHA compliance. (LRCS-41) |
| Excerpt from EPA's Regulatory Impact Analysis, Asbestos Products and Their Substitutes. (LRCS-42) |
| All government specifications of any kind, name or identification, which are military related. (LRCS-43) |
| Hydraulic Institute and other industry standards related to pumps. (LRCS-44) |
| Selective Training and Service Act of 1940, printed in "United States Statutes at Large containing the Laws and Concurrent Resolutions Enacted during the Second and Third Sessions of the Seventy-Sixth Congress of the United States of America 1939-1941." Volume 54, Part 1: Public Laws and Reorganization Plans. United States Government Printing Office, Washington. 1941. (LRCS-45) |
| OSHA. 1986. 29 CFR Parts 1910 and 1926. Occupational Exposure to Asbestos, Tremolite, Anthophylline, and Actinolite, Final Rules. 51 FR 22612-22790. (LRCS-46) |
| Walsh-Healy Regulations, 1949. (LRCS-47) |
| Walsh-Healy Regulations, 1960. (LRCS-48) |

**Description**

| Description |
| --- |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |

**Description**

| Description |
| --- |
| Code of Federal Regulations, Title 46: Shipping (LRCS-49) |
| Any and all documents related to laws, regulations, codes and standards. (LRCS-50) |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |

**Description**

| Description |
| --- |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| All state and federal regulations referring to asbestos. (LRCS-1) |
| Code of Federal Regulations, 29 CFR part 1910.1001. January 1, 1976-OSHA, Permissible Exposure 'Levels of Asbestos in the Workplace, July 7, 1972. (LRCS-2) |
| OSHA, Standard for Exposure to Asbestos Dust, Caution Label Exemption, Federal Register, Vol. 37, No. 110, Page 11318-11322. (LRCS-3) |
| EPA, Final Rule, Asbestos: Manufacture, Importation, Processing and Distribution on Commerce Prohibitions, Federal Register, Vol. 54, No. 132, PP 29460 to 29513. (LRCS-4) |
| EPA National Emission Standards of Hazardous Air Pollutants, Asbestos NESHAP Revision; Final Rule; November 20, 1990, Federal Register, Vol. 55, No. 224, Pages 48406-to 48433. (LRCS-5) |
| EPA, Continuing Restrictions, Asbestos: November 5, 1993. (LRCS-6) |
| Code of Federal Regulations, 29 CFR part 1910.1043, OSHA Cotton Dust Standard. (LRCS-7) |
| 1973, Code of Federal Regulations Title 29-Labor Section 1910.93 (1) Occupational Safety and Health Standards. (LRCS-8) |
| 1974, Code of Federal Regulations Title 29-Labor Section 1910.93 (1) Occupational Safety and Health Standards. (LRCS-9) |
| 1975, Code of Federal Regulations Title 29-Labor Section 1910.93 (1) Occupational Safety and Health Standards. (LRCS-10) |
| 1976, Code of Federal Regulations Title 29-Labor Section 1910.93 (1) Occupational Safety and Health Standards. (LRCS-11) |

**Panel 1 (top-left)**

| Description |
| --- |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |

**Panel 2 (top-right)**

| Description |
| --- |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Various corporate and/or product documents of Warren Pumps. (WP-1) |
| QPLS related to pumps manufactured by Warren Pumps, LLC. (WP-2) |
| Correspondence with U.S. Navy, or its agents, relating to milspec compliance, deviations, waivers, testing, and negotiations. (WP-3) |
| Component part information. (WP-4) |
| Warren test data for pumps manufactured by Warren. (WP-5) |
| Census data, population of Warren, Massachusetts. (WP-6) |
| Any and all exhibits needed for Warren Pumps relating to the products alleged to be involved in this litigation. (WP-7) |
| All instructions, warnings, labels and the like pertaining to the products of Warren Pumps alleged to be involved in this litigation. (WP-8) |
| Any and all advertisements and brochures of Warren Pumps relating to the products alleged to be involved in this litigation. (WP-9) |
| Picture of commemorative Warren Pump 250th anniversary ruler. (WP-10) |
| World War II Naval poster. (WP-11) |
| Naval recruiting posters circa World War II. (WP-12) |
| Warren Pumps Women at War. (WP-13) |
| Pictures of Warren Pumps facility and workers. (WP-14) |
| Historical Warren Steam Pump Articles. (WP-15) |
| Newspaper article from May 5, 1997 requesting citizens of Warren, Massachusetts to purchase stock of the company. (WP-16) |
| Historical documents concerning Warren, Massachusetts and its residents. (WP-17) |
| Pictures of Warren, Massachusetts. (WP-18) |

**Panel 3 (middle-left)**

| Description |
| --- |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Manual of Analytical Methods 7402, NIOSH. (IH-1) |
| Threshold Limit Values for Airborne Contaminants, American Conference of Governmental Industrial Hygienists. (IH-2) |
| Technical report for Garlock Inc; Occupational exposures during processing, handling, installation and removal of Garlock asbestos containing gaskets. McCrone Environmental Services, Inc. - June 1985. (IH-3) |
| Fiber release tests on asbestos valve packing material (6AM) of the Crane Packing Company, Morton Grove, Illinois, Michael Matteson, School of Chemical Engineering, Georgia Institute of Technology. (IH-4) |

**Panel 4 (middle-right)**

| Description |
| --- |
| The Army-Navy "E" awards to Warren Pumps (1943, 1944 and 1945). (WP-19) |
| "41 for 1 rooters" award presented to Warren Pumps (1954). (WP-20) |
| "Shipbuilding Excellence" award from the Navy AEGIS program (1981) presented to Warren Pumps. (WP-21) |
| Esposito, Andi "One-Stop Shop: Warren Pumps' Products Worth Million to Navy." Worcester Telegram & Gazette. (WP-22) |
| Woodcock, Andrew "Company Celebrates 100 Years," Springfield Union News/Sunday Republican, August 24, 1997. (WP-23) |
| Snock, Frederick A., "Warren Shop Works 100 Years." Telegram & Gazette, August 20, 1997. (WP-24) |
| Osterman, Elise, "Warren Pumps Has Long Helped Outfit Navy Ships." Springfield Union News/Sunday Republican, January 24, 1988. (WP-25) |
| Smith, Bradley, "Admiral Pumps Praise For Warren Firm's Work," October 15, 1981. "Army-Navy "E" Awarded to Warren Steam Pump Company, Inc.: Warren Concern Serves Ten Hitches in Navy in Two Wars." Springfield Union, September 10, 1943. (WP-26) |
| "They're in the Navy, Too," July 1940. (WP-27) |
| "Warren Steam Pump Company Observes Fiftieth Anniversary," July 1947. (WP-28) |
| First ever photograph of Warren Steam Pump facility, circa 1900. (WP-29) |
| Aerial photograph of Warren Pumps facilities. (WP-30) |
| Intentionally omitted. (WP-31) |
| Photograph of Warren Pumps company picnic - baseball game. (WP-32) |
| Photograph of Warren Pumps company picnic - marching band. (WP-33) |
| Photograph of Warren Pumps company picnic - baseball game. (WP-34) |
| Photograph of Warren Pumps employees and their families viewing marching band performance. (WP-35) |
| Official Citation presented to Warren Pumps Houdaille on October 14th, 1981 by the Massachusetts House of Representatives in recognition of receiving the United States Navy's Aegis Shipbuilding Excellence Award. (WP-36) |
| Photograph of Warren Pumps employees at work in the office. (WP-37) |
| Photograph of employees posing outside Warren Pumps facilities. (WP-38) |
| Photograph of employees and their families touring Warren Pumps facilities. (WP-39) |
| Photograph of military color guard raising American flag. (WP-40) |
| Correspondence between James Forrestal, Under Secretary of the United States Navy, and George Rowland, President of the Warren |

**Panel 5 (bottom-left)**

| Description |
| --- |
| NIOSH Heta 87-017-1949 Health hazard evaluation report. United Rubber Workers. (IH-5) |
| Bocher & Yates, Fiber Release Study Test Report, Maritime Fittings, Wire Brush, 12/1/96. (IH-6) |
| Bocher & Yates, Fiber Release Study Test Report, Maritime Fittings, Power Wire Brush, 12/12/96. (IH-7) |
| Bocher & Yates, Fiber Release Study Test Report, Maritime Fittings, Valve Packing Removal and Replacement, 12/24/96. (IH-8) |
| Nonmetallic Gaskets for Pipe Flanges – American Standard – ASA B16, 21 – 1951 – The American Society of Mechanical Engineers. (IH-9) |
| Nonmetallic Gaskets for Pipe Flanges – American Standard – ASA B16, 21 – 1962 – The American Society of Mechanical Engineers. (IH-10) |
| Nonmetallic Flat Gaskets for Pipe Flanges – American National Standard ANSI B16, 21 – 1978 – The American Society of Mechanical Engineers. (IH-11) |
| DMR & Associates, Donna M. Ringo gasket testing, 5/23/91; 91 - LGE-08, Magnolia Station, Louisville, KY. (IH-12) |
| DMR & Associates, Donna M. Ringo gasket testing, 9/08/91; 91-LGE-24, Mill Creek Station, Louisville, KY. (IH-13) |
| DMR & Associates, Donna M. Ringo gasket testing, 9/20; 23 & 24/91; 91 - LGE-25, Mill Creek Station, Louisville, KY. (IH-14) |
| DMR & Associates, Donna M. Ringo gasket & packing testing 10/1, 2 & 8/91; 91 LGE-28, Cane Run, Louisville, KY. (IH-15) |
| DMR & Associates, Donna M. Ringo gasket testing, 9/30/91 to 10/24/91; 91-LGE-26, Mill Creek Station, Louisville, KY. (IH-16) |
| DMR & Associates, Donna M. Ringo gasket testing, 9/91; 91 LGE-38, Mill Creek Station, Louisville, KY. (IH-17) |
| DMR & Associates, Donna M. Ringo gasket testing, 12/28/ 29/91; 91-LGE-43, Mill Creed Station, Louisville, KY. (IH-18) |
| DMR & Associates, Donna M. Ringo gasket testing, 1/10/92; 92-LGE-02, Mill Run Station, Louisville, KY. (IH-19) |
| DMR & Associates, Donna M. Ringo gasket testing, 1/17/92; 92-LGE-05, Cane Run Power Plant, Louisville, KY. (IH-20) |
| DMR & Associates, Donna M. Ringo gasket testing, 1/16/92; 92-LGE-04, Trimble County, Louisville, KY. (IH-21) |
| DMR & Associates, Donna M. Ringo gasket testing, 1/31/92; 92-LGE-06, Trimble County, Louisville, KY. (IH-22) |
| DMR & Associates, Donna M. Ringo gasket testing, 2/13/92; 92-LGE-14, Cane Run Station, Louisville, KY. (IH-23) |
| DMR & Associates, Donna M. Ringo gasket testing, 3/17, 18/92; Trimble County, Louisville, KY. (IH-24) |
| DMR & Associates, Donna M. Ringo gasket testing, 3/03/92; 92-LGE-71; W & S Shop, Louisville, KY. (IH-25) |
| DMR & Associates, Donna M. Ringo gasket testing, 3/25/92; 92-LGE- 37. The King's Daughter & Son Nursing Home, Louisville, KY (IH-26) |

**Panel 6 (bottom-right)**

| Description |
| --- |
| Steam Pump Company, regarding receipt of the Army-Navy "E" Award. (WP-41) |
| Excerpts from the Official Program of the presentation of the Army-Navy "E" Award Presentation to Warren Steam Pump Company by the United States Navy. (WP-42) |
| Photograph of United States Navy Officers and Warren Steam Pump executives holding the Army-Navy "E" Award. (WP-43) |
| Archival photographs of Warren's facilities. (WP-44) |
| Intentionally omitted. (WP-45) |
| Intentionally omitted. (WP-46) |
| Literature relating to pumps manufactured by Warren Pumps, LLC. (WP-47) |
| Contracts with Navy and/or shipyard. (WP-48) |
| Photographs and related documents of Warren Pumps products. (WP-49) |
| U.S. Navy forms related to compliance, waiver, and requests for deviations to milspecs. (WP-50) |
| Material specifications. (WP-51) |
| Headdress/Order sheets of Warren Pumps related to pumps at issue. (WP-521) |
| Drawings/Plans of Warren Pumps related to pumps at issue. (WP-53) |
| Instruction Books/Technical Manuals of Warren Pumps related to pumps at issue. (WP-54) |
| Intentionally omitted. (WP-55) |
| Intentionally omitted. (WP-56) |
| Any and all documents related to Warren Pumps (WP-57) |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |

**Top Left Panel:**

| Description |
| --- |
| Matteson School of Chemical Engineering Georgia Institute of Technology re: fiber release tests conducted on valve packing manufactured by Crane Packing Co. 6AM and 810. (IH-78) |
| Report: Fiber Release Tests on Asbestos Containing Material of the Crane Packing Company, Morton Grove, Illinois, Michael J. Matteson School of Chemical Engineering Georgia Institute of Technology re: fiber release studies conducted on AM. (IH-79) |
| Report: Fiber Release Tests on Asbestos Containing Material of the Crane Packing Company, Morton Grove, Illinois, Michael J. Matteson School of Chemical Engineering Georgia Institute of Technology re: fiber release studies conducted on a 2-1/2" gate valve that contained John Crane steam valve packing style 6-AM. (IH-80) |
| Report: Fiber Release Tests on Asbestos Containing Material of the Crane Packing Company, Morton Grove, Illinois, Michael J. Matteson School of Chemical Engineering Georgia Institute of Technology re: fiber release studies conducted on a 2-1/2" on packing styles 117-A1 and SS-3 AM. manufactured by Crane Packing Co. (IH-81) |
| Report: Fiber Release Tests on Asbestos Containing Material of the Crane Packing Company, Morton Grove, Illinois, Michael J. Matteson School of Chemical Engineering Georgia Institute of Technology re: fiber release studies conducted on AM. 810, 1871, NC-93, C-06, and C-60. (IH-82) |
| Report: Fiber Release Tests on ACM of the Crane Packing Company, Morton Grove, IL, M. J. Matteson School of Chemical Engineering GA Institute of Technology re: Fiber release studies conducted on packing style 804BI Manufact. By Crane Packing. (IH-83) |
| Fiber Release Study - Industrial Fittings - Flat Blade Scraper (10/09/96) Boelter Environmental Consultants - BAI Project No. 1418A-46202. (IH-84) |
| Fiber Release Study - Industrial Fittings - Wire Brush (10/28/96) Boelter Environmental Consultants - BAI Project No. 1418A-4602 (IH-85) |
| Fiber Release Study - Industrial Fittings - Making Gaskets With a Ball Peen Hammer (11/5/96). Boelter Environmental Consultants - BAI Project No. 1418A-4602. (IH-86) |
| Fiber Release Study - Industrial Fittings - Power Wire Brush (11/11/96). Boelter Environmental Consultants - BAI Project No. 1418A-4602. (IH-87) |
| Fiber Release Study - Industrial Fittings - Valve Packing Removal (11/19/96) Boelter Environmental Consultants - BAI Project No. 1418A-4602. (IH-88) |
| Fiber Release Study - Industrial Fittings - Flat Blade Scraper (11/22/96). Boelter Environmental Consultants - BAI Project No. 1418A-4602. (IH-89) |
| Fiber Release Study - Industrial Fittings - Wire Brush (12/1/96) Boelter Environmental Consultants - BAI Project No. 1418A-4602. |

**Top Right Panel:**

| Description |
| --- |
| DMR & Associates, Donna M. Ringo gasket testing, 4/03/92; 92-LGE-40, Trimble County, Louisville, KY. (IH-27) |
| DMR & Associates, Donna M. Ringo gasket testing, 3/27/93; 92-LGE-38, Taylor Boulevard, Louisville, KY. (IH-28) |
| DMR & Associates, Donna M. Ringo gasket testing, 3/27/92; 92-LGE-34, Custom Chrome, Louisville, KY. (IH-29) |
| DMR & Associates, Donna M. Ringo gasket testing, 3/27/92; 92-LGE-38, Portland Station, Louisville, KY. (IH-30) |
| DMR & Associates, Donna M. Ringo gasket testing, 4/22/92; 92-LGE50,92-LGE-53, Mill Creek Station, Louisville, KY. (IH-31) |
| DMR & Associates, Donna M. Ringo gasket testing, 4/29/92; 92-LGE-56, Ford Truck Plant, Louisville, KY. (IH-32) |
| DMR & Associates, Donna M. Ringo gasket testing, 5/12/92; 92-LGE-61, 11th & Main Streets, Louisville, KY. (IH-33) |
| DMR & Associates, Donna M. Ringo gasket testing, 5/15/92; 92-LGE-63, Doe Run Station, Louisville, KY. (IH-34) |
| DMR & Associates, Donna M. Ringo gasket testing, 4/24/92; 92-LGE-55, Gas Department, Louisville, KY. (IH-35) |
| DMR & Associates, Donna M. Ringo gasket testing, 3/11/92; 92-LGE-29, Magnolia Compressor Station, Louisville, KY. (IH-36) |
| DMR & Associates, Donna M. Ringo gasket testing, 4/06/92; 92-LGE-41, Penile road Station, Louisville, KY. (IH-37) |
| DMR & Associates, Donna M. Ringo gasket testing, 4/21/92; 92-LGE-48, Muldraugh, Louisville, KY. (IH-38) |
| DMR & Associates, Donna M. Ringo gasket testing, 4/22/92; 92-LGE-48, Muldraugh, Louisville, KY. (IH-39) |
| DMR & Associates, Donna M. Ringo gasket testing, 4/22-29/92; 92-LGE-55, Various regulators and relief pits, Louisville, KY. (IH-40) |
| DMR & Associates, Donna M. Ringo gasket testing, 6/15/92; 92-LGE-71, Magnolia Station, Louisville, KY. (IH-41) |
| DMR & Associates, Donna M. Ringo gasket testing, 4/16/92; 92-LGE-45, Crestwood Area, Louisville, KY. (IH-42) |
| DMR & Associates, Donna M. Ringo gasket testing, 4/20/92; 92-LGE-47, Muldraugh, Louisville, KY. (IH-43) |
| DMR & Associates, Donna M. Ringo gasket testing, 7/16/92; 92-LGE-73, Magnolia Facility, Louisville, KY. (IH-44) |
| DMR & Associates, Donna M. Ringo gasket testing, 7/6-10/92; 92-LGE-72, Muldraugh Compressor, Louisville, KY. (IH-45) |
| DMR & Associates, Donna M. Ringo gasket testing, 7/21-22/92; 92-LGE 75, Muldraugh Station, Louisville, KY. (IH-46) |
| DMR & Associates, Donna M. Ringo gasket testing, 7/27/92; 92-LGE-76, Magnolia Station, Louisville, KY. (IH-47) |
| DMR & Associates, Donna M. Ringo gasket testing, 7/28/92; 92-LGE-79-1, 4th & Brandeis Streets, Louisville, KY. (IH-48) |
| DMR & Associates, Donna M. Ringo gasket testing, 7/28/92; 92-LGE-79-2, Lexington & Brunview Streets, Louisville, KY. (IH-49) |
| DMR & Associates, Donna M. Ringo gasket testing, 7/30/92; 92-LGE-79-3, Belmont & Bardstown, Louisville, KY. (IH-50) |
| DMR & Associates, Donna M. Ringo gasket testing, 7/30/92; 92-LGE-81, St. Helen's Station, Louisville, KY. (IH-51) |

**Middle Left Panel:**

| Description |
| --- |
| (IH-90) |
| Fiber Release Study - Industrial Fittings - Power Wire Brush (12/12/96). Boelter Environmental Consultants - BAI Project No. 1418A-4602. (IH-91) |
| Fiber Release Study - Maritime Fittings - Making Gaskets With a Ball Peen Hammer (12/18/96). Boelter Environmental Consultants - BAI Project No. 1418A-4602. (IH-92) |
| Fiber Release Study - Industrial Fittings - Valve Packing Removal and Replacement (12/24/96). Boelter Environmental Consultants - BAI Project No. 1418A-4602. (IH-93) |
| "An evaluation of potential occupational exposure to airborne asbestos fibers encountered during installation and removal of asbestos containing gaskets - Gasket Type 604". Nelson Associates - April 1, 1982. (IH-94) |
| An evaluation of potential occupational exposure to airborne asbestos fibers during the installation and removal of braided asbestos gasketing materials. Nelson Associates - April 1982. (IH-95) |
| Asbestos Study for Ammoco Tools, Inc., North Chicago, Illinois. (IH-96) |
| John W. Spencer, CIH, CSP of Environmental Profiles, Inc. and J. LeRoy Balzer, PhD., Evaluation of the actual contributions of airborne asbestos fibers from the fabrication of gaskets. (IH-97) |
| John W. Spencer, CIH, CSP of Environmental Profiles, Inc. and J. LeRoy Balzer, PhD., Evaluation of the actual contributions of airborne asbestos fibers from the removal and installation of the gaskets and packing material. (IH-98) |
| John W. Spencer, CIH, CSP of Environmental Profiles, Inc. and J. LeRoy Balzer, PhD., Evaluation of the actual contributions of airborne asbestos fibers from the removal and installation of gaskets. (IH-99) |
| John W. Spencer, Exposure Assessment: An Evaluation of the Actual Contributions of Airborne Asbestos Fibers from the Fabrication of Gaskets, EPI Project No. 8489, September 11, 1998. (IH-100) |
| Report on the Measurement of Fiber Release from Simulated Steam-Stressed Durabla Gaskets (250 degrees for 30 days) for Health Hazard Evaluation. A.M. Langer, R.P. Nolan, Environmental Sciences Laboratory, Brooklyn College, December 9, 1992. (IH-101) |
| Report on the Measurement of Fiber Release from Simulated Steam-Stressed Durabla Gaskets (120, 106 and 190 degrees for 5 days) for Health Hazard Evaluation. A.M. Langer, R.P. Nolan, Environmental Sciences Laboratory, Brooklyn College, November 6, 1992. (IH-102) |
| Final Report Actual asbestos fiber release during gasket removal work practices. 8/23/91. (IH-103) |
| Report of ORR Safety Corporation regarding Air Monitoring During Gasket Removal. June 7, 1994. (IH-104) |
| Report of Nutrum Corporation of October 29, 1988 regarding air sampling during the manufacturing of metal spiral wound gaskets. (IH- |

**Middle Right Panel:**

| Description |
| --- |
| DMR & Associates, Donna M. Ringo gasket testing, 7/31/92, 92- LGE-82, Muldraugh Station, Louisville, KY. (IH-52) |
| DMR & Associates, Donna M. Ringo gasket testing, 8/03/92; 92-LGE-79-5, 3rd & Collins Streets, Louisville, KY. (IH-53) |
| DMR & Associates, Donna M. Ringo gasket testing, 8/05/92; 92-LGE-83, Trimble County Station, Louisville, KY. (IH-54) |
| DMR & Associates, Donna M. Ringo gasket testing, 08/06/92; 92-LGE-84, Magnolia Station, Louisville, KY. (IH-55) |
| DMR & Associates, Donna M. Ringo gasket testing, 8/26/92; 92-LGE-86, Muldraugh Station, Louisville, KY. (IH-56) |
| DMR & Associates, Donna M. Ringo gasket testing, 10/05/92; 92-LGE-92, Muldraugh Station, Louisville, KY. (IH-57) |
| DMR & Associates, Donna M. Ringo gasket testing, 10/29 - 30/92; 92-LGE-97, Mill Creek Station, Louisville, KY. (IH-58) |
| DMR & Associates, Donna M. Ringo gasket testing, 3/22, 29/93, 93-LGE-16, Palmer Ball, Louisville, KY. (IH-59) |
| DMR & Associates, Donna M. Ringo gasket testing, 5/12/93, 93-LGE-23, E. Broadway Street, Louisville, KY. (IH-60) |
| DMR & Associates, Donna M. Ringo gasket testing, 11/03/93, 93- GE-43, Muldraugh Station, Louisville, KY. (IH-61) |
| Fiber Release Tests on Asbestos Valve Packing Materials (6AM & 810), Report of Dr. Michael J. Matteson. (IH-62) |
| Fiber Release Tests on Asbestos Gasket Materials, Report of Dr. Michael J. Matteson. (IH-63) |
| Fiber Release Tests on Asbestos Tape, Report of Dr. Michael J. Matteson. (IH-64) |
| Report: Dust and Asbestos Fiber Release During Gasket Removal and Wire Brush Polishing of Two Scrap Flanges, Michael J. Matteson School of Chemical Engineering Georgia Institute of Technology, re: air sampling conducted on 6/24/98 for the determination of dust and asbestos fiber release while removing a used gasket from a flange and wire-brushing polishing two six inch flanges collected from the Oahu Sugar Refinery in Hawaii, 7/17/98. (IH-65) |
| Report: Fiber Release Tests on Asbestos Gasket Material of the Crane Packing Company, Morton Grove, Illinois, Michael J. Matteson School of Chemical Engineering Georgia Institute of Technology re: fiber release studies completed on 6 gasket materials numbered 333 (Grey), 33 (Yellow), 2112, 2155 (Grey) and 2150 (Yellow). (IH-66) |
| Report: Fiber Release Tests on Asbestos Gaskets Removed from Scrap Flanges, Michael J. Matteson School of Chemical Engineering Georgia Institute of Technology re: air sampling conducted on 5/7/98 for the determination of asbestos fiber release while removing used gaskets from four flanges collected from the Oahu Sugar Refinery and the Hawaiian Supply Salvage Yard in Hawaii, 6/5/98. (IH-67) |
| Report: Fiber Release Tests on Asbestos Containing Material of the Crane Packing Company, Morton Grove, Illinois, Michael J. Matteson School of Chemical Engineering Georgia Institute of Technology re: studies conducted on gasket material style numbered 333 sold by Crane Packing over the period March 31 - April 3, 1988. (IH-68) |

**Bottom Left Panel:**

| Description |
| --- |
| 105) |
| Report of Nutrum Corporation of October 19, 1988 regarding air sampling during the manufacturing of metal spiral wound gaskets. (IH-106) |
| Report of airborne asbestos contamination tests during disassembly and wire brushing of typical U.S. Navy steam pipe gaskets conducted at Flexitallic Gasket company, Inc., Bellmawr, New Jersey on August 13, and 14, 1984, test report number 18, 82KA. (IH-107) |
| "Pump Gasket and Packing Emission Evaluation." R.J. Lee Group, November 4, 1992. (IH-108) |
| Air Sampling for Airborne During Maintenance Activities at Trinity River Authority of Texas, Central Regional Wastewater System, Grand Prairie, TX, May 31, 1991, Technical Safety and Health Counseling Inc. (Larry Liskonen). (IH-109) |
| Analysis of fiber release from certain asbestos products, GCA Corporation-Technology Division - Dec. 1982. (IH-110) |
| Carl A. Mangold, CIH, Actual Contribution of Garlock Gasket Materials to the Occupational Exposure of Workers, October 1982. (IH-111) |
| Carl A. Mangold, CIH, The Actual Occupational Exposure to Airborne Asbestos Released by Garlock Spiral Wound, Braided and Encapsulated Gaskets, December, 1982. (IH-112) |
| Carl A. Mangold, CIH, Airborne Fibers in the Ambient Air in the Greater San Francisco Area, March 1983. (IH-113) |
| Carl A. Mangold, CIH, (Consultant) Joseph D. Wendlick, Ambient Asbestos Fiber Levels in the Metropolitan Areas of Norfolk Portsmouth - Newport News, Virginia, December 1983. (IH-114) |
| Carl A. Mangold, CIH, The Actual Release of Asbestos Fibers from New, Used and Flanged Garlock Asbestos Gasket Materials, September 1985. (IH-115) |
| Carl A. Mangold, CIH, The Asbestos Composition of Garlock, Inc. Braided Gasket Material, June 1987. (IH-116) |
| Carl A. Mangold, CIH, A Comparison of the Tyndall Phenomena to the Actual Concentration of Asbestos Fibers in the Breathing Zone of Workers, July 1986. (IH-117) |
| Carl A. Mangold, CIH, The Actual Contribution of Airborne Asbestos Fibers to the Occupational Exposure of By-standers During Selected Processing of Encapsulated Asbestos Gasket (B Volumes), January 1989. (IH-118) |
| Carl A. Mangold, CIH, & Robert L. Gay, Ph.D., The Actual Contribution of Airborne Asbestos Fibers from Removal and Installation of Asbestos Packing from Valves, May 1991. (IH-119) |
| Carl A. Mangold, CIH, & Robert L. Gay, Ph.D., The Actual Contribution of Airborne Asbestos Fiber Exposure During Gasket Removal from Pipe Flanges Aboard Ship, 11/83. (IH-120) |
| Miscellaneous Records of Carl Mangold regarding 1978 PSNS Report. (IH-121) |

**Bottom Right Panel:**

| Description |
| --- |
| Report: Fiber Release Tests on Asbestos Containing Material of the Crane Packing Company, Morton Grove, Illinois, Michael J. Matteson School of Chemical Engineering Georgia Institute of Technology re: 12 flanges which contained 4 different styles of John Crane gasket materials: 333, 888, 2150, and 2112, 10/5/90 Report: Fiber Release Tests on Asbestos Containing Material of the Crane Packing Company, Morton Grove, Illinois, Michael J. Matteson School of Chemical Engineering Georgia Institute of Technology re: gasket material numbered 888. (IH-69) |
| Report: Fiber Release Tests on Asbestos Containing Material of the Crane Packing Company, Morton Grove, Illinois, Michael J. Matteson School of Chemical Engineering Georgia Institute of Technology re: gasket material numbered 888. (IH-70) |
| Report: Fiber Release Tests on Asbestos Containing Material of the Crane Packing Company, Morton Grove, Illinois, Michael J. Matteson School of Chemical Engineering Georgia Institute of Technology re: asbestos-containing valve packing (8AM) manufactured by Crane Packing Company. (IH-71) |
| Report: Fiber Release Tests on Asbestos Containing Material of the Crane Packing Company, Morton Grove, Illinois, Michael J. Matteson School of Chemical Engineering Georgia Institute of Technology re: Report of fiber release tests performed on an asbestos-containing valve packing, type C-St, manufactured by John Crane-Houdaille, Inc. 5/29/87. (IH-72) |
| Report: Fiber Release Tests on Asbestos Containing Material of the Crane Packing Company, Morton Grove, Illinois, Michael J. Matteson School of Chemical Engineering Georgia Institute of Technology re: fiber release studies were conducted on John Crane steam valve packing styles, SS-1, C-06 and 117-2, 2/9/96 (IH-73) |
| Report: Fiber Release Tests on Asbestos Containing Material of the Crane Packing Company, Morton Grove, Illinois, Michael J. Matteson School of Chemical Engineering Georgia Institute of Technology re: fiber release studies conducted on a 2-1/2" gate valve that contained John Crane steam valve packing style C-60. (IH-74) |
| Report: Fiber Release Tests on Asbestos Containing Material of the Crane Packing Company, Morton Grove, Illinois, Michael J. Matteson School of Chemical Engineering Georgia Institute of Technology re: fiber release studies conducted on packing style 814 manufactured by Crane Packing, 3/7/88. (IH-75) |
| Report: Fiber Release Tests on Asbestos Containing Material of the Crane Packing Company, Morton Grove, Illinois, Michael J. Matteson School of Chemical Engineering Georgia Institute of Technology re: Summary Report on fiber release tests performed on an asbestos-containing valve packing, type 5810, manufactured by John Crane-Houdaille, Inc., 5/7/87. (IH-76) |
| Report: Fiber Release Tests on Asbestos Containing Material of the Crane Packing Company, Morton Grove, Illinois, Michael J. Matteson School of Chemical Engineering Georgia Institute of Technology re: tests performed conducted on packing material (SS-1) during removal, 11/13/96. (IH-77) |
| Report: Fiber Release Tests on Asbestos Containing Material of the Crane Packing Company, Morton Grove, Illinois, Michael J. |

**Description**

Fiber Release Tests on Asbestos Packing Material of the Crane Packing Company. Michael J. Matteson, School of Chemical Engineering, Georgia Institute of Technology. Four 2-1/2" gate valves that contained John Crane steam valve packing style 6-AM. (IH-170)

Fiber Release Tests on Asbestos Packing Material of the Crane Packing Company. Michael J. Matteson, School of Chemical Engineering, Georgia Institute of Technology. (packing styles 177-AI and SS-31AM, by Crane Packing Co.) (IH-171)

Fiber Release Tests on Asbestos Packing Material of the Crane Packing Company. Michael J. Matteson, School of Chemical Engineering, Georgia Institute of Technology. (valve packing 6-AM by Crane Packing Co.) (IH-172)

Fiber Release Tests on Asbestos Packing Material of the Crane Packing Company. Michael J. Matteson, School of Chemical Engineering, Georgia Institute of Technology. (5/29/87 summary report - asbestos-containing valve packing, type C-58, manufactured by John Crane-Houdaille, Inc.) (IH-173)

Fiber Release Tests on Asbestos Packing Material of the Crane Packing Company. Michael J. Matteson, School of Chemical Engineering, Georgia Institute of Technology. (5/7/87 summary report - asbestos-containing valve packing, type 5810, manufactured by John Crane-Houdaille, Inc.) (IH-174)

Fiber Release Tests on Asbestos Packing Material of the Crane Packing Company. (Valve packing material (6AM and SS-1) was cut and packed into a water pump.) (IH-175)

Fiber Release Tests on Asbestos Packing Material of the Crane Packing Company. (John Crane steam valve packing styles SS-1, C-66 and 187-I.) (IH-176)

Fiber Release Tests on Asbestos Containing Material of the Crane Packing Company. Michael J. Matteson, School of Chemical Engineering, Georgia Institute of Technology. (packing style 804HF manufactured by Crane Packing.) (IH-177)

Fiber Release Tests on Asbestos Valve Packing Material of the Crane Packing Company. Michael J. Matteson, School of Chemical Engineering, Georgia Institute of Technology. (valve packings manufactured by Crane Packing Co.) (IH-178)

Fiber Release Tests on Asbestos Valve Packing Material of the Crane Packing Company. Michael J. Matteson, School of Chemical Engineering, Georgia Institute of Technology. (asbestos-containing valve packing (6AM) manufactured by Crane Packing Co.) (IH-179)

Fiber Release Tests on Asbestos Valve Packing Material of the Crane Packing Company. Michael J. Matteson, School of Chemical Engineering, Georgia Institute of Technology. (7/7/88 fiber release studies were conducted on packing style 814 manufactured by Crane Packing Co.) (IH-180)

04/05/05 William Longo deposition taken in Bouhanna v. 128 Imports, Inc., et al.; In the Superior Court Commonwealth of MA. (IH-181)

---

**Description**

Mangold Photographs, September, 1992. (IH-122)

Mangold - Occurrence of Asbestos with Associated Basic Rock Formations, USA. (IH-123)

Mangold - Asbestos in Tap Water. (IH-124)

Mangold correspondence dated 09/22/92 to: McKinney report. (IH-125)

Carl A. Mangold, CIH, R. R. Becker, D. J. Brosseur. Asbestos Exposure and Control at Puget Sound Naval Shipyard, Bremerton, Washington; March 1970. (IH-126)

Carl Mangold, "Dated Status Sheet Coded Data" (Environmental Control Science, Inc., February 28, 1995). (IH-127)

Report by Henry Bueciginos, Use of John Crane Packing in the Railroad Industry, June 1985 (with November, 1985 supplement). (IH-128)

Report by Henry Bueciginos, Compression packing used in Industrial Applications, December 11, 1986. (IH-129)

Report from Henry L. Bueciginos to James Richardson, Esq., Sellar, Richardson & Stuart re: Examination of Packing used in Steam Applications 10/30/84. (IH-130)

John W. Spencer, CIH, CSP of Environmental Profiles, Inc. and J. LeRoy Balzer, PhD., Evaluation of the actual contribution of airborne asbestos fibers from the fabrication of gaskets. (IH-131)

John W. Spencer, CIH, CSP of Environmental Profiles, Inc. and J. LeRoy Balzer, PhD., Evaluation of the actual contribution of airborne asbestos fibers from the removal and installation of the gaskets and packing material. (IH-132)

John W. Spencer, CIH, CSP of Environmental Profiles, Inc. and J. LeRoy Balzer, PhD., Evaluation of the actual contribution of airborne asbestos fibers from the removal and installation of the gaskets. (IH-133)

John W. Spencer, Exposure Assessment: An Evaluation of the Actual Contribution of Airborne Asbestos Fibers from the Fabrication of Gaskets, EPI Project No. 8489, September 11, 1998. (IH-134)

John W. Spencer, Exposure Assessment: An Evaluation of the Actual Contribution of Airborne Asbestos Fibers from the Removal; and Installation of Gaskets and Packing Material, EPI Project No. 8500. (IH-135)

G. Berry and M. Newhouse, Mortality of Workers Manufacturing Friction Materials Using Asbestos. (IH-136)

Robert T. Chong and Henry J. McDermott, Exposure to Asbestos from Asbestos Gaskets, Applied Occupational and Environmental Hygiene, Vol. 6, No. 7, Page 588, July 1991. (IH-137)

Nurtan A. Esmen, "Adhesion and Aerodynamic Resuspension of Fibrous Particles." (IH-138)

Nurtan A. Esmen, "Analysis of Strategies for Reconstructing Exposures." (IH-139)

---

**Description**

02/04/04 William Longo Deposition taken in Jones v. Meyer's Auto Parts, Inc., et al.; In the Civil District Court, Parish of Orleans, LA (IH-182)

01/24/04 William Longo Deposition taken in Veret v. Amtico International, Inc., et al.; In the 17th Judicial District Court of Tarrant County, TX. (IH-183)

08/28/03 William Longo Deposition taken in Bertucci v. Northrop Grumman Systems Corp., et al.; In the Civil District Court Parish of Orleans, LA (IH-184)

02/24/02 William Longo Deposition taken in Guillory v. Hennessy Industries, Inc.; In the USDC for the Eastern District of Texas, Beaumont Division (IH-185)

11/19/03 William Longo Deposition taken in Maxcy v. AC&S, Inc., et al.; In the 128th Judicial District of Orange County, TX (IH-186)

10/19/01 William Longo Deposition taken in Gerke v. AC&S, Inc., et al.; In the Superior Court of Alameda County, CA (IH-187)

05/09/01 William Longo Deposition taken in Insurality v. AC&S, Inc.; In the County Court of Law #1, Dallas County, TX (IH-188)

01/08/01 William Longo Deposition taken in Gash v. Raybestos-Manhattan, Inc., et al; In the Superior Court of San Francisco County, CA (IH-189)

05/17/00 William Longo Deposition taken in Cavanaugh v. Owens-Corning Corp., et al.; In the 57th Judicial District of Bexar County, TX (IH-190)

10/23/99 William Longo Deposition taken in Dobbs v. AP Green Industries, Inc., et al.; In the Marion County Superior Court, IN (IH-191)

08/11/98 William Longo Deposition taken in Gillette v. Jambi, Inc., et al; In the Court of Common Pleas for the County of Northampton, PA (IH-192)

05/07/98 William Longo Deposition taken in Hudson v. Raybestos (IH-193)

04/23/98 William Longo Deposition taken in Cooey v. E.D. Bullard Co., et al.; In the Circuit Court of Jefferson County, MI (IH-194)

12/02/97 William Longo Deposition taken in Re: Monongalia Mass II; In the Circuit Court of Monongalia County, WV (IH-195)

09/09/97 William Longo Deposition taken in Re: Monongalia Mass II; In the Circuit Court of Monongalia County, WV (IH-196)

10/27/03 Larry Newton deposition taken in Bertucci v. Northrop Grumman Systems Corp., et al.; In the Civil District Court, Parish of Orleans, LA (IH-197)

07/13/01 Larry Newton deposition taken in Colletti v. Carlisle Corporation, et al.; In the Court of Common Pleas, Montgomery County, PA (IH-198)

---

**Description**

L. R. Liukonen, K. R. Still, R. R. Beckett, Asbestos Exposure from Gasket Operations, Naval Regional Medical Center, Puget Sound Naval Shipyard, Bremerton, Washington, May 1978. (IH-140)

P. Agostini, D. Smith, R. Schoene, H. Robertson, and J. Butler, Evaluation of Breathlessness in Asbestos Workers. (IH-141)

Argenio, Vittorio K., Ph.D., P.E., Exposure to Airborne Asbestos Fibers Due to Working with or around Asbestos containing Dryer Fabrics, May 6, 1995. (IH-142)

Stephen W. Campbell, "An Evaluation of Simulated Field Use of Various Asbestos Containing Packing Materials" (May 11, 1983). (IH-143)

Gardner, M.J., Winter, P.D., Pannett, B. and Powell, C.A., "Follow-up Study of Workers Manufacturing Chrysotile Asbestos Cement Products," British Journal of Industrial Medicine, 43:726-732 (1986). (IH-144)

Chemicals Report, "Asbestos Gasket Grinding Simulation." December 16, 1980; prepared by J. P. Koch (with letter from Carl Mangold). (IH-145)

P.A. Stewart and R.J. Herrick, "Issues in Performing Retrospective Exposure Assessment." (IH-146)

Langer, A.M. and Nolan, R.P., Report of the Measurement of Fiber Release From Stimulated Steam-stressed Durabla Gaskets (120, 160, 190, Degrees for 5 hours) For Health Hazard Evaluation, Environmental Sciences laboratory, Brooklyn College, Brooklyn, New York, January 31, 1992. (IH-147)

Mossman, B.T., Bignon, J., Corn, M. Seaton, A. and Gee, J.B.L., "Asbestos: Scientific Developments and Implications for Public Policy." Science, 247:294-301 (1990). (IH-148)

Raymond L.H. Murphy, Jr. M.D., What Does That Noise Mean? Faulkner Hospital, Boston, MA. (IH-149)

Julian Peto, Problems in Dose-response and Risk Assessment: The Example of Asbestos. (IH-150)

S.K. Spence and P.S.J. Rocchi, "Exposure to Asbestos Fibres During Gasket Removal," Annals of Occupational Hygiene, 40(5):583-588 (1996). (IH-151)

Charles M. Spooner, Ph.D., CIH Report: Testing of Packing and Gasket Materials, Hygeia, Inc., March 6, 1989. (IH-152)

Thomas, H.F., Benjamin, I.T., Elwood, P.C., and Sweetnam, P.M., "Further Follow-up Study of Workers from an Asbestos Cement Factory," British Journal of Industrial Medicine, 39:273-276 (1982). (IH-153)

Weill, H., Ziskind, M.M., Waggenspack, C. and Rossiter, C.E., "Lung Function Consequences of Dust Exposure in Asbestos Cement Manufacturing Plants," Archives of Environmental Health. 30:88-97 (1975). (IH-154)

An Investigation of the Fiber Release from Argo Valve Stem Packing Materials During Cutting, Installation and Replacement of Stem Packings. Dietrick A. Weyel, Sc.D., CIH January 1993. (IH-155)

---

**Description**

03/27/03 Richard Hatfield deposition taken in Katz v. Garlock, Inc., et al.; In the 23rd Judicial District of Brazoria County, TX (IH-199)

06/22/01 Richard Hatfield deposition taken in Wilson v. Able Supply Company, et al.; In the 23rd Judicial District of Brazoria County, TX (IH-200)

12/02/97 Richard Hatfield deposition taken in Re: Monongalia Mass II; In the Circuit Court of Monongalia County, WV (IH-201)

09/10/97 Richard Hatfield deposition taken in Re: Monongalia Mass II; In the Circuit Court of Monongalia County, WV (IH-202)

Affidavit of Eric Chatfield in response to use of TEM in Longo studies, August 20, 2003 (IH-203)

Various asbestos studies relating to Ametco Tools, Inc., North Chicago, Illinois. (IH-204)

Carl Mangold, Katherine Clark, Amy Madl, and Dennis Paustenbach "An Exposure Study of Bystanders and Workers During the Installation and Removal of Asbestos Gaskets and Packing," Journal of Occupational and Environmental Hygiene, 3: 87-98. (IH-205)

Chatfield, Eric J. "Analytical Protocol for Determination of Asbestos Contamination of Clothing and Other Fabrics" Microscope 38 (2): 221-222. 2nd Quarter 1990. (IH-206)

DMR & Associates, Donna M. Ringo gasket testing, 08/09/94, 94-LGE-42, Muldraugh Station, Louisville, KY (IH-207)

DMR & Associates, Donna M. Ringo gasket testing, 05/26/92, 92-LGE-66, Muldraugh, Louisville, KY (IH-208)

DMR & Associates, Donna M. Ringo gasket testing, 06/02/92 - 06/03/92, 92-LGE-68, Muldraugh Station, Louisville, KY (IH-209)

DMR & Associates, Donna M. Ringo gasket testing, 07/31/90, 92-LGE-79-4, Bardstown, Rd. & Douglas Blvd., Browns Lane & Taylorsville Rd., Louisville, KY (IH-210)

DMR & Associates, Donna M. Ringo gasket testing, 10/05/93 - 10/08/93, Major Locomotive Repair Facility During Gasket Removal (IH-211)

DMR & Associates, Donna M. Ringo gasket testing, 05/12/94, 94-LGE-2K, Muldraugh Station, Louisville, KY (IH-212)

NAVSHIPS Instruction 5100.26, "Asbestos Exposure Hazards; control of," Department of the Navy, Commander, Naval Ship Systems Command, February 9, 1971 (IH-213)

OPNAVINST Instruction 6260.1 "Occupational Health Standards, Control and Medical Surveillance Requirements," Department of the Navy, Chief of Naval Operations, April 9, 1974. (IH-214)

Camus, M.J Siemiatycki, and B Meek, 1998. Nonoccupational exposure to chrysotile asbestos and the risk of lung cancer. N Engl J Med. (IH-215)

Camus, M.J Siemiatycki, BW Case, M Deoy, L Richardson, and S Campbell, 2002. Risk of mesothelioma among women living near chrysotile mines versus US EPA asbestos risk model. Preliminary findings. Ann Occup Hyg 46(Suppl 1):95-98. (IH-216)

---

**Description**

Pouring of Insulating Cement - Work Practice Study." Prepared by William Longo and Richard Hatfield. (IH-156)

"Kaylo Pipe - Work Practice Study," prepared by William Longo and Richard Hatfield. (IH-157)

Kaylo II Hand Sawing - Asbestos Fiber Analysis Results," prepared by William Longo and Richard Hatfield. (IH-158)

Toca, F. "Investigation of Asbestos Exposure during Gasket Removal." Atlantic Environmental, Inc. (2001). (IH-159)

Toca, F. Asbestos Summary Report dated 12/28/98 states opinion that use, installation and removal of asbestos containing gasket and packing material does not create an increased risk to users of those products or to bystanders, because of the extremely low level of asbestos fibers released during these activities. (IH-160)

Mattewn, Michael's expert dated 11/19/99 commenting on report "Removal and Replacing Valve Packing II Study - Work Practice Simulation" by William Longo, Ted Dawson, Richard Hatfield and William Longo. (IH-161)

Mattewn, Michael's expert dated 2/28/00 as a follow-up to his report dated 11/19/99 concerning the removal and replacement of valve packing by Dr. Longo's group. (IH-162)

Mattewn, Michael's report dated 3/14/00 as an addendum to the previous two reports on 11/19/99 and 2/28/00 concerning the removal and replacement of valve packing by Dr. Longo's group. (IH-163)

Mattewn, Michael's report dated 7/12/00 critiquing the following reports: Gasket Removal Scraping and Handwire Brushing Work Practice Study II Dated 4/9/00 and Gasket Removal Electric Wire Brushing Work Practice Study III Dated 4/25/00 Both by Hatfield, Longo and Newton. (IH-164)

Mattewn, Michael's report dated 5/22/01 commenting on report "Secondary Asbestos Exposure from Work Clothing of Gasket Removal, III, Electric Wire Brushing (Hand Brushing of Work Clothing) by R.L. Hatfield, W.E. Longo and L.R. Newton dated 11/00. (IH-165)

Fiber Release Tests on Asbestos Containing Material of the Crane Packing Company. Michael J. Matteson, School of Chemical Engineering, Georgia Institute of Technology. (2-1/2" gate valve that contained John Crane steam valve packing style C-60). (IH-166)

Fiber Release Tests on Asbestos Containing Material of the Crane Packing Company. Michael J. Matteson, School of Chemical Engineering, Georgia Institute of Technology. (gasket material style 333, sold by Crane Packing). (IH-167)

Fiber Release Tests on Asbestos Gasket Material of the Crane Packing Company. Michael J. Matteson, School of Chemical Engineering, Georgia Institute of Technology. 12 flanges which contained 4 different styles of John Crane Gasket materials (333, 888, 2150 and 2112). (IH-168)

Fiber Release Tests on Asbestos Gasket Material of the Crane Packing Company. Michael J. Matteson, School of Chemical Engineering, Georgia Institute of Technology. 6 gasket materials (333, 888, 2150 and 2112). (IH-169)

**Top-left table**

| Description |
| --- |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| BUSHIPS, Navy Department. Military Specifications, and/or Fed. Specification for pumps at issue. (NAV-1) |
| BUSHIPS, Navy Department. Military Specifications, and/or Fed. Specifications for component parts related to the pumps at issue. (NAV-2) |
| General Specifications for Machinery, Bureau of Engineering, Navy Dept . Section 847 (all available revisions and amendments) (NAV-3) |
| Military Specifications related to pumps (all available revisions and amendments) (NAV-4) |
| Manual of Engineering Instructions, United States Navy (1921) (NAV-5) |
| Instructions for the Operation, Care and Repair of Pumps, United States Navy Department, Bureau of Engineering (1937) (NAV-6) |

CB4-SP.SF1?0448.1

**Top-right table**

| Description |
| --- |
| Cullen, MR and RS Baloyi. 1991. Chrysotile Asbestos And Health In Zimbabwe: I. Analysis Of Miners And Millers Compensated For Asbestos-related Diseases Since Independence (1980). Am J Ind Med 19:161-169. (IH-217) |
| Egilman, D, C Fehnel, and SR Bohme. 2003. Exposing the "myth" of ABC, "anything but chrysotile": A critique of the Canadian asbestos mining industry and McGill University chrysotile studies. Am J Ind Med 44:540-557. (IH-218) |
| Lemen, RA. 2004. Chrysotile asbestos as a cause of mesothelioma: Application of the Hill causation model. Int J Occup Environ Health 10(2):233-239. Apr-June 204. (IH-219) |
| McDonald, AD, BW Case, A Churg, A Dufresne, GW Gibbs, P Sebastien, and JC McDonald. 1997. Mesothelioma in Quebec chrysotile miners and millers: Epidemiology and aetiology. Ann Occup Hyg 41(6):707-719. (IH-220) |
| McDonald, JC, "Letter to the Editor Re: Work-Related Mesotheliomas in Quebec, 1967-1990", American Journal of Industrial Medicine, Vol. 24: 245-246 (1993). (IH-221) |
| McDonald, JC, et al; "The 1891-1920 Birth Cohort of Quebec Chrysotile Miners and Millers: Mortality 1976-1988, British Journal of Industrial Medicine, Vol. 50: 1073-1081 (1993). (IH-222) |
| McDonald, JC, et al; "The 1891-1920 Birth Cohort of Quebec Chrysotile Miners and Millers: Development From 1904 and Mortality to 1992, Annals of Occupational Hygiene, Vol. 41, No. 1: 13-36 (1997). (IH-223) |
| Nicholson, WJ, IJ Selikoff, H Seidman, R Lilis, and P Formby. 1979. Long-term mortality experience of chrysotile miners and millers in Thetford Mines, Quebec. Ann NY Acad Sci 330:11-21. (IH-224) |
| Selikoff, IJ and H Seidman. 1991. Asbestos-associated deaths among insulation workers in the United States and Canada, 1967-1987. Ann NY Acad Sci 643:1-14. (IH-225) |
| Piolatto, G, E Negri, C La Vecchia, E Pira, A Decarli, and J Peto. 1990. An update of cancer mortality among chrysotile asbestos miners in Balangero, northern Italy. Br J Ind Med 47:810-814. (IH-226) |
| Yano, E, ZM Wang, XR Wang, MZ Wang, and YJ Lan. 2001. Cancer mortality among workers exposed to amphibole-free chrysotile asbestos. Am J Epidemiol 154(6):538-543. (IH-227) |
| McDonald, AD, JS Fry, AJ Woolley, and J McDonald. 1983. Dust exposure and mortality in an American chrysotile textile plant. Br J Ind Med 40 (4): 361-367. (IH-228) |
| Any and all documents related to industrial hygiene. (IH-229) |
| Intentionally Omitted. |
| Intentionally Omitted. |

CB4-SF.SF1?0448.1

**Middle-left table**

| Description |
| --- |
| Instruction for the Operation and Maintenance of Pumps, United States Navy Department, Bureau of Ships (1941) (NAV-7) |
| BUSHIPS Manual, Chapter 47 - Pumps (July 1943) (NAV-8) |
| Instructions for the Operation and Maintenance of Pumps, Chapter 47, Bureau of Ships Manual, United States Navy Department (1944) (NAV-9) |
| Instructions for the Operation and Maintenance of Pumps, Chapter 47, Bureau of Ships Manual, United States Navy Department (1945) (NAV-10) |
| Bureau of Ships Manual, Chapter 47, Pumps (Nov. 1954) (NAV-11) |
| Bureau of Ships Tech. Manual, Chapter 47, Pumps (April 1959) (NAV-12) |
| Naval Ships Technical Manual, Chapter 9470, Pumps (January 1974) (NAV-13) |
| Naval Ships Technical Manual, Chapter 9470, Pumps (February 1969) (NAV-14) |
| Intentionally Omitted. (NAV-15) |
| Intentionally Omitted. |
| Intentionally Omitted. |
| U.S. Navy manuals and instructions relating to pumps (all available editions and revisions) (NAV-16) |
| Bureau of Ships Drawing B-153 relating to application of packing and gaskets (all available amendments, revisions, and notices) (NAV-17) |
| Gaskets and Packings for Obtaining Tightness of Hull Fittings, Hull Auxiliaries, and Hull Piping on Vessels of the United States Navy (March 1937) (NAV-18) |
| Manual of Engineering Instructions, Chapter 12, Pipings, Fittings, and Packing, Navy Dept. Bureau of Engineering (May 1938) (NAV-19) |
| Instructions Relative to Piping, Fittings, and Packing, U.S. Navy Dept., Bureau of Ships (1943) (NAV-20) |
| Bureau of Ships Manual, Chapter 95 - Gaskets and Packings (Feb. 1944) (NAV-21) |
| Bureau of Ships Manual, Chapter 95 - Gaskets and Packings, United States Navy Dept. (1945) (NAV-22) |
| Bureau of Ships Manual, Chapter 95 - Gaskets and Packings, United States Navy Dept. (Sept. 1946) (NAV-23) |
| Bureau of Ships Technical Manual, Chapter 95 - Gaskets and Packings (April 1960) (NAV-24) |

CB4-SF.SF1?0448.1

**Middle-right table**

| Description |
| --- |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |

CB4-SF.SF1?0448.1

**Bottom-left table**

| Description |
| --- |
| Memo from Commander of Destroyers, Pacific Fleet, to Commanding Officers of Destroyers, Pacific Fleet, Subj: "Packing Chart Preparation of," with Enclosures A (692 Class Destroyers Packing Chart) and Enclosure B (692 Class Destroyers Gasket & Packing Inventory) (January 22, 1946) (NAV-25) |
| Intentionally Omitted. (NAV-26) |
| Intentionally Omitted. |
| Intentionally Omitted. |
| General Specifications for Machinery, Bureau of Engineering, Navy Departments, Subsection S39 (all available editions and revisions) (NAV-27) |
| Manual of Engineering Instructions, Chapter 13, Heat Insulation, Navy Department, Bureau of Engineering (Dec. 1, 1933) (NAV-28) |
| Instructions Relative to Heat Insulation, U.S. Navy Department, Bureau of Engineering (1939) (NAV-29) |
| Bureau of Ships Manual, Chapter 39, Thermal Insulation (August 24, 1945) (NAV-30) |
| Bureau of Ships Manual, Chapter 39, Thermal Insulation (July 1, 1946) (NAV-31) |
| Bureau of Ships Manual, Chapter 39, Thermal Insulation (April 1, 1947) (NAV-32) |
| Bureau of Ships Technical Manual, Chapter 39, Thermal Insulation (April 15, 1959) (NAV-33) |
| Bureau of Ships Technical Manual, Chapter 9390, Thermal Insulation (Nov 1, 1965 with Change 1, Jan. 15, 1966) (NAV-34) |
| Naval Ships Technical Manual, Chapter 9390, Thermal Insulation (Sept. 1967) (NAV-35) |
| Naval Ships Technical Manual, Chapter 9390, Thermal Insulation (July 1, 1972) (NAV-36) |
| U.S. Navy manuals and instructions relating to insulation (all available editions and revisions) (NAV-37) |
| Intentionally Omitted. (NAV-38) |
| Intentionally Omitted. |
| Intentionally Omitted. |
| General Specifications for Machinery, Bureau of Engineering, Navy Dept., Subsection S48 (all available editions and revisions) (NAV-39) |
| Bureau of Ships Manual, Chapter 48, Piping (July 12, 1945) (NAV-40) |

CB4-SF.SF1?0448.1

**Bottom-right table**

| Description |
| --- |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |

CB4-SF.SF1?0448.1

| Description |
| --- |
| "Fireman" prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10520-E (1976) (NAV-91) |
| Intentionally Omitted. (NAV-92) |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| "Boilerman 1 & C," prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10536-C (1964) (NAV-93) |
| "Boilerman 1 & C," prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10536-D (1960) (NAV-94) |
| "Boilerman 3 & 2," prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10536-B (1960) (NAV-95) |
| "Boilerman 3 & 2," prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10535-C (1956) (NAV-96) |
| "Boilerman 3 & 2," prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10535-E (1968) (NAV-97) |
| "Boilerman 1 & C," prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10536-D (1957) (NAV-98) |
| "Boiler Technician 1 & C," prepared by the Naval Training Command, Rate Training Manual, NAVTRA 10536-E (1972) (NAV-100) |
| "Boilerman 1 & C," prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10536 (1950) (NAV-101) |
| "Boilerman 1 & C," prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10536-A (1953) (NAV-102) |
| Intentionally Omitted. (NAV-103) |
| Intentionally Omitted. |
| Intentionally Omitted. |
| "Machinist's Mate 1 & C" prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10525 (1955) (NAV-104) |
| "Machinist's Mate 1 & C" prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10525-D (1974) (NAV-105) |
| "Machinist's Mate 1 & C" prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10525-A (1960) (NAV-106) |
| "Machinist's Mate 1 & C" prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10525-B (1966) (NAV-107) |
| "Machinist's Mate 1 & C" prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10525-C (1968) (NAV-108) |
| "Machinist's Mate 3 & 2" prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10524-C (1968) (NAV-109) |

| Description |
| --- |
| Navy Dept., Bureau of Ships, Circular Letter No. 57 (Subj. Flanged Joints) (June 14, 1941) (NAV-41) |
| U.S. Navy manuals and instructions related to piping (all available editions and revisions) (NAV-42) |
| Intentionally Omitted. (NAV-43) |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Lubrication and Instructions for the Operations, Care, and Repair of Lubricants Systems, US Navy Department, Bureau of Engineering (July 1938) (NAV-44) |
| U.S. Navy manuals and instructions related to Lubrication (all available editions and revisions) (NAV-45) |
| Intentionally Omitted. (NAV-46) |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Bureau of Ships manuals and instructions relating to Auxiliary Engines (all available editions and revisions) (NAV-47) |
| Intentionally Omitted. (NAV-48) |
| Intentionally Omitted. (NAV-49) |
| Intentionally Omitted. (NAV-50) |
| Intentionally Omitted. (NAV-51) |
| Naval Auxiliary Machinery, US Naval Academy, Annapolis, MD, Revised 1952 (NAV-52) |
| Principles of Naval Engineering, prepared by the Bureau of Naval Personnel, NAVPERS 10788 (1958) (NAV-53) |
| "Engineering, Operation, and Maintenance," prepared by Bureau of Naval Personnel, NAVPERS 10813-B (1966) (NAV-54) |
| General Specifications for Machinery, Bureau of Engineering, Navy Dept., Section A-I – General Requirements (all available editions and revisions) (NAV-55) |
| General Specifications for Machinery, Bureau of Engineering, Navy Dept., Appendix I (all available editions and revisions) (NAV-56) |

| Description |
| --- |
| "Machinist's Mate 3 & 2" prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10524-B (1963) (NAV-110) |
| "Machinist's Mate 3 & 2" prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10524-D (1972) (NAV-111) |
| "Machinist's Mate 3" prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10522 (1958) (NAV-112) |
| "Machinist's Mate 2" prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10523 (1958) (NAV-113) |
| Intentionally Omitted. (NAV-114) |
| Intentionally Omitted. (NAV-115) |
| Intentionally Omitted. |
| Intentionally Omitted. |
| "Electrician's Mate 1 & C" prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10547 (1969) (NAV-116) |
| Intentionally Omitted (NAV-117) |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| "Seaman 1c" prepared by the Bureau of Naval Personnel, Navy Training Courses (1940) (NAV-118) |
| "Seaman 1c" prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10601 (1940) (NAV-119) |
| "Seaman" prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10120 (1944) (NAV-120) |
| "Seaman" prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10120-E (1965) (NAV-121) |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| "Metalsmith 3 & 2" prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10565-A (1951) (NAV-122) |
| Intentionally Omitted. |
| Intentionally Omitted. |

| Description |
| --- |
| General Specifications for Machinery, Bureau of Eng., Navy Dept., S1-1 - Plans (all available editions and revisions) (NAV-57) |
| General Specifications for Machinery, Bureau of Engineering, Navy Dept., Section S1-2 – Materials, Workmanship, and Welding (all available editions and revisions) (NAV-58) |
| General Specifications for Building Vessels of the United States Navy, Bureau of Construction and Repair, Section B-1 (all available editions and revisions) (NAV-59) |
| General Specifications for Building Vessels of the United States Navy, Bureau of Construction and Repair, Section C-6 - Materials (all available editions and revisions) (NAV-60) |
| Any and all sections of the General Specifications for Building Vessels of the United States Navy not specifically referenced (NAV-61) |
| Principles of Naval Engineering, prepared by the Bureau of Naval Personnel, NAVPERS 10788-B (1970) (NAV-62) |
| Intentionally Omitted. (NAV-63) |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Pointers on Safe Ship Building and Repairs, Bureau of Ships Technical Publication No. 14 (1945) (NAV-64) |
| Any and all specifications, manuals, or documents pertaining to the requirements for building ships of the U.S. Navy (NAV-65) |
| Intentionally Omitted. (NAV-66) |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Certificates of Approval and/or Qualified Products Lists on which Warren Pumps is listed (NAV-67) |
| Certificates of Approval/Qualified Products Lists for pumps on which Warren Pumps is noted (NAV-68) |
| Documents pertaining to Certificates of Approval/Qualified Products Lists for components used in pumps (NAV-69) |
| Documents pertaining to Certificates of Approval/Qualified Products Lists for insulation and insulating materials (NAV-70) |
| Documents pertaining to Certificates of Approval/Qualified Products Lists (all products) (NAV-71) |
| Intentionally Omitted. (NAV-72) |
| Intentionally Omitted. (NAV-73) |

| Description |
| --- |
| Intentionally Omitted. |
| Intentionally Omitted. |
| "Engineman 3 & 2" prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10542 (1951) (Vol. 2) (NAV-123) |
| "Engineman 3 & 2" prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10541-A (1967) (NAV-124) |
| "Engineman 1 & C" prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10543-D (1965) (NAV-125) |
| "Engineman 1 & C" prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVTRA 10543-D (1972) (NAV-126) |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| "Petty Officer 1 & C," prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10057-A (1963) (NAV-127) |
| "Petty Officer 3 & 2," prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10056 (1957) (NAV-128) |
| Intentionally Omitted. (NAV-129) |
| Intentionally Omitted. |
| Rate Training Manuals and other Navy publications relating to the rate of Storekeeper. (NAV-130) |
| U.S. Navy training manuals and related documents pertaining to other rates and grades not specifically listed (NAV-131) |
| "Command at Sea" (all available editions and revisions) (NAV-132) |
| Intentionally Omitted. (NAV-133) |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Records of the National Archives relating to the shipyard(s) or vessel(s) at issue, or class of vessels at issue, including but not limited to documents associated with the general arrangement, machinery arrangement, piping and insulation arrangement, listing of machinery, overhauls, material inspections, departure reports and correspondence between the Navy and manufacturers (NAV-134) |
| Records and documents related to the history of the vessels at issue (NAV-135) |

| Description |
| --- |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Bureau of Ships, Navy Department, Federal Specifications and/or Military Specification relating to Instruction Books/Technical Manuals (NAV-74) |
| Bureau of Ships, Navy Department, Federal Specifications and/or Military Specifications relating to nameplate/identification plates (NAV-75) |
| Bureau of Ships, Navy Department, Federal Specifications and/or Military Specifications relating to packaging/preservation/marking/shipment of machinery (NAV-76) |
| Bureau of Ships, Navy Department, Federal Specs and/or Military Specifications relating to plans/drawings (NAV-77) |
| Bureau of Ships, Navy Department, Federal Specs and/or Military Specifications relating to testing of products and machinery (NAV-78) |
| Bureau of Ships, Navy Department, Federal Specs and/or Military Specifications relating to inspection of material (NAV-79) |
| Any and all documents relating to the index of specifications published by the Bureau of Ships, Navy Department, NAVSEA and/or Department of Defense (NAV-81) |
| MIL-STD-769, all editions and revisions. (NAV-81) |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| The Blue Jackets Manual (all available editions) (NAV-82) |
| "Fireman 2c and Fireman 1c," prepared by the Bureau of Naval Personnel, Navy Training Courses (1939) (NAV-83) |
| "Fireman," prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10520 (1949) (NAV-84) |
| "Fireman," prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10520 (1951) (NAV-85) |
| "Fireman," prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10520-A (1954) (NAV-86) |
| "Fireman," prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10520-B (1960) (NAV-87) |
| "Fireman," prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10520-B (1961) (NAV-88) |
| "Fireman," prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10520-C (1966) (NAV-89) |
| "Fireman," prepared by the Bureau of Naval Personnel, Navy Training Courses, NAVPERS 10520-D (1971) (NAV-90) |

| Description |
| --- |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |

| Description |
| --- |
| Dictionary of American Naval Fighting Ships (all available volumes and editions) (NAV-136) |
| Photographs and images of the vessel(s), equipment, or shipyard(s) at issue in the case (NAV-137) |
| Navy Department/Federal Military Specifications relating to miscellaneous items found aboard Navy ships, such as, but not limited to, soap, coffee makers, etc. (NAV-138) |
| Intentionally Omitted. (NAV-139) |
| Intentionally Omitted. (NAV-140) |
| Intentionally Omitted. |
| Test Data for U.S. Navy pumps including, but not limited to, curves, performance, shock, noise and vibration (NAV-141) |
| U.S. Navy Inspector certifications of Warren test data for various U.S. Navy pumps (NAV-142) |
| Correspondence to/from Warren Pumps and the U.S. Navy regarding the Army/Navy E-Awards (NAV-143) |
| "Ships Depend on Pumps" by Rear Admiral E.L. Cochrane, USN Chief of the Bureau of Ships (NAV-144) |
| Federal Bureau of Investigation, Confidential Investigative Report of the Warren facility dated December 14, 1940 (NAV-145) |
| Navy War Program, Component Scheduling Progress Report, Issue No. 5, October 9, 1943 (NAV-146) |
| Intentionally Omitted. (NAV-147) |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Memo to Secretary of Navy, December 12, 1943 (NAV-148) |
| Osbourne, A. et al. "Modern Marine Engineer's Manual," Vol. 1, Cornell Maritime Press, (1941) (NAV-149) |
| Rules for the Regulation of the Navy of the United Colonies of North America, Articles 1-44, dated November 28, 1775 (NAV-150) |
| Statement by the President, dated December 23, 1941 (NAV-151) |
| Navy Department, Bureau of Ships Memorandum, for Admiral Robinson with enclosures dated September 29, 1941 (NAV-152) |
| Army and Navy Munitions Board Priorities Directive memorandum dated August 20, 1941 (NAV-153) |
| Letter addressed to Donald Nelson, Department of State, dated December 18, 1941 (NAV-154) |
| Letter addressed to the President of the United States from the Secretary of War, dated October 31, 1941 (NAV-155) |

| Description |
| --- |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |

| Description |
| --- |
| Memorandum from Chief of the Bureau of Ships to Supervisor of Shipbuilding, USN, Newport News regarding Aircraft Carriers CV 9-15 - Auxiliary Machinery Cooling Water Service Pump, dated January 8, 1943 (NAV-156) |
| Memorandum of the War Production Board regarding essential plants and manpower, dated November 4, 1943 (NAV-157) |
| Osbourne, A. et al. "Modern Marine Engineer's Manual," Vol. Ii, Cornell Maritime Press (1943) (NAV-158) |
| Intentionally Omitted. (NAV-159) |
| Intentionally Omitted. (NAV-160) |
| Intentionally Omitted. |
| Memorandum from Commanding Officer, Naval Air Station, Alameda, California to Commanding Officer, USS Hancock (CVA-19), Subj: "Industrial Sound Survey, report of," enclosing "Industrial Hygiene Survey of USS Hancock (CVA-19)," conducted from 6 July 1959 to 10 July 1959 (NAV-161) |
| War Production Board, History of the Cork, Asbestos, and Fibrous Glass Division, 1941-1945, with exhibits containing, amongst other things, Conservation Orders pertaining to asbestos enacted by the U.S. Congress. (NAV-162) |
| Annual Report of the Surgeon General, U.S. Navy to the Secretary of the Navy re: Statistics and Diseases in the United States Navy, (Washington, 1939) (NAV-163) |
| Secretary of the Navy to Chiefs of All Bureaus, Commandants and Commanding Officers, Naval Shore Establishment: Naval Supervisory Shipbuilding, (March 4, 1943) (NAV-164) |
| Letter from the Secretary of the Navy to Chief of Bureau of Ships (July 7, 1943) (NAV-165) |
| James E. Fuller, Industrial Hygiene Laboratory, to Portsmouth Naval Shipyard Medical Officer (July 31, 1945) (NAV-166) |
| Letter from Lieutenant Commander Walter E. Fleischer to Lt. James E. Fuller H(S) USNR, Industrial Health Laboratory and to Captain A. Eckert, MC, USN, both dated August 3, 1945. (NAV-167) |
| Minutes of Pipe and Copper Shop Master Mechanics' Conference, Boston Naval Shipyard (May 8-10, 1957) (NAV-168) |
| Industrial Health Survey of the Bath Iron Works Conference, Bath, Maine  Philip Drinker, Harvard School of Public Health, et al. September 22, 1942 (NAV-169) |
| U.S. Navy - U.S. Maritime Commission - War Shipping Administration Safety and Industrial Health Program. Report on Investigation of Asbestosis from Amosite Pipe Covering at Bath Iron Works, Bath, Maine, December 19, 1944, by D.C. Drosean, Surgeon U.S. Public Health Service and W. E. Fleischer, Lt.comdr. MC USNR, Health Consultant. (NAV-170) |

| Description |
| --- |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |

| Description |
| --- |
| Materials designated by other defendants including those relating to the ship on which plaintiff served (NAV-171) |
| Any and all documents related to the United States Navy and/or Federal Government (NAV-172) |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |
| Intentionally Omitted. |

**Description**

**Description**

Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.

**Description**

**Description**

Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.

**Description**

**Description**

Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.
Intentionally Omitted.

**Description**

**Description**

# EXHIBIT "D"

EXHIBIT "D"

1  ALAN R. BRAYTON, ESQ., S.B. #73685
    DAVID R.  DONADIO, ESQ., S.B. #154436
2  BRAYTON❖PURCELL LLP
    Attorneys at Law
3  222 Rush Landing Road
    P.O. Box 6169
4  Novato, California  94948-6169
    (415) 898-1555
5  (415) 898-1247 (Fax No.)

6  Attorneys for Plaintiffs

7

8           THE UNITED STATES DISTRICT COURT

9       FOR THE NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| 11 | EDWARD McINTYRE and ALLENE McINTYRE, | ) ) ) | No. C06-6301-WHA |
| 12 | | ) ) | PLAINTIFFS' FEDERAL RULES OF CIVIL PROCEDURE RULE 26(a)(1) |
| 13 | Plaintiffs, | ) ) | INITIAL DISCLOSURES |
| 14 | vs. | ) ) | FILING AND DOCUMENT |
| 15 | WARREN PUMPS, LLC, | ) ) | PRODUCTION DEADLINE: 3/29/2007 |
| 16 | Defendant. | ) ) | [FRCVP 26(a)(1)] |

17

18        Pursuant to Federal Rules of Civil Procedure Rule 26(a)(1), plaintiffs submit the

19  following:

20      A.      Pursuant to Rule 26 (a)(1)(A): a party must, without awaiting a discovery request,

21            provide to other parties: the name and, if known, the address and telephone

22            number of each individual likely to have discoverable information that the

23            disclosing party may use to support its claims or defenses, unless solely for

24            impeachment, identifying the subjects of the information.

25      Response:

26          1.      EDWARD McINTYRE, c/o Brayton❖Purcell LLP

27          2.      ALLENE McINTRYE, c/o Brayton❖Purcell LLP

28

<div style="writing-mode: vertical">BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555</div>

The following co-workers:

3.  Ron Hansen, address currently unknown

4.  Rickie Stewart, address currently unknown

5.  Thomas L. Fisher, 4183 Fairfax Drive, Napa, California

6.  John H. Abston, 421 Hilton Avenue, Vallejo, California

7.  Harvey E. Bantz, 4 Margo Court, Napa, California

8.  Michael A. Bostrom, Cordelia, California

9.  Clarence Carravajal, 179 South Montgomery, Napa, California

10. Robert G. Carrell, 1304 Carrell Lane, Napa, California

11. Beverly S. Cortner, 1433 Spring St., Helena, California

12. Bill V. Day Jr. 627 York St., Vallejo, California

13. Glenn N. Duque, 1110 Sacramento, Vallejo, California

14. Wayne C. Gordon, 19889 First Street West, Sonoma, California

15. Nestor A. Gorospe, 147 Stanford Dr., Vallejo, California

16. Arthur C. Harris, 3 Balsam St., Olympic Trailer Ct., Vallejo, California

17. Robert A. Helsel, 2380 Bohen St., Napa, California

18. T.W. Humphries, 1907½ Broadway St., Vallejo, California

19. Desmond T. Jeffers, 824 Humboldt St., Vallejo, California

20. Prentice Ivory, Oakland, California

21. D.T. Jones, 2 Corte Del Sol, Benicia, California

22. Roger M. Koch, 216 College, Vallejo, California

23. Don W. Link, 1366 Monteith Dr., Vallejo, California

24. James L. McKinlay, 1009 Mariposa St., Vallejo, California

25. William Patrick Morales, 14784 Midland Road, San Leandro, California

26. Curtis Ormiston, 463 Maples Ave., Vallejo, California

27. Robert R. Pendleton, 548 San Dimas, Fairfield, California

28. W.H. Pinkstaff, 2134 Road 20, San Pablo, California

29. Stephen Elias Walker, 201 Grapewood St., Vallejo, California

1        30.    Daniel P. Wildemann, 125 Rae Court, Vallejo, California

2        31.    Tom Szander, address currently unknown

3        32.    Lawrence c/o Brayton❖Purcell LLP

4        33.    Gregario Diaz c/o Brayton❖Purcell LLP

5        34.    Horace Owens c/o Brayton❖Purcell LLP

6        35.    Charles Scandlyn c/o Brayton❖Purcell LLP

7        36.    Kevin Rodman, 5073 Viltor Lane, Vacaville, California

8        37.    Charles Cannon, 1013 Hargus Ave., Vallejo, California

9  Investigation is ongoing.

10      B.    Pursuant to Rule 26 (a)(1)(B): a party must, without awaiting a discovery request,

11           provide to other parties: a copy of, or a description by category and location of,

12           all documents, electronically stored information, and tangible things that are in

13           the possession, custody, or control of the party and that the disclosing party may

14           use to support its claims or defenses, unless solely for impeachment.

15      Response:  Plaintiffs possess, in part or in full, the following documents, including, but

16  not limited to, those listed below. Although plaintiffs anticipate that defendant possesses each

17  document, copies or more detailed descriptions will be made available upon request.

18      1.    National Archive Documents placing Warren Pumps asbestos products on

19           Plaintiff's ships.

20      2.    Exposure to Asbestos Dust and Diffuse Pleural Mesotheliomas, J.G. Thomson;

21           British Medical Journal, July to December 1962.

22      3.    Medical Records identified as follows:

23           a.    Kaiser Permanente Medical Center, Vallejo, California

24           b.    Boiling Springs Medical Associates - Shelby, North Carolina

25           c.    William Salyer, M.D.

26      4.    Social Security Administration, Baltimore, Maryland

27      5.    Documents from Edward McIntyre and Allene McIntyre v. Asbestos Defendants

28  (B❖P), San Francisco Superior Court No. 453810, including, but not limited to:

1        a.    Plaintiff's Verified Responses to Standard Asbestos Case Interrogatories

2              Sets 1 and 2, Amendments and Supplements, and all exhibits attached

3              thereto in the matter of Edward McIntyre and Allene McIntyre v.

4              Asbestos Defendants (B❖P), San Francisco Superior Court No. 453810.

5        b.    Trial Preservation Testimony of Edward McIntyre, taken 10/03/06;

6              Discovery Deposition of Edward McIntyre, Volumes 1-6 taken 10/04/06-

7              10/06/06; 10/30/06-11/01/06; Discovery Deposition of Allene McIntyre

8              taken 11/02/06 all taken in the matter of Edward McIntyre and Allene

9              McIntyre v. Asbestos Defendants (B❖P), San Francisco Superior Court

10            No. 453810.

11      c.    Documents to prior actions involving defendant WARREN PUMPS, LLC.

12      d.    Deposition transcripts (and all exhibits attached thereto) for all of

13              defendant WARREN PUMPS, LLC's Custodian of Records/Persons Most

14              Knowledgeable.  The following have been identified by Plaintiffs:

15                    Anthony Cadlo, Elaine Roschewski,  Plaintiffs, v. Asbestos

16                    Defendants  San Francisco Superior Court No. 412325, Deposition of Roland Doktor October 20, 2003

17                    Anthony Cadlo, Elaine Roschewski,  Plaintiffs, v. Asbestos

18                    Defendants  San Francisco Superior Court No. 412325, Deposition of Deposition of William Goodloe April 1, 2004 and April 2, 2004

19                    Pauline Jensen, Individually and as Personal Representative of the Estate of Alvin Jensen,

20                    Plaintiff v. Saberhagen Holdings, Inc., et al., Superior Court of Washington for King County, Washington No. 04-2-20249-3 Sea,

21                    Deposition of Roland Doktor,  July 26, 2005

22                    Jim Henry and Caroline Henry, Plaintiffs, v. Alfa Laval, Inc., et Al. Los Angeles Superior Court   No. Bc 332 841 , Deposition of

23                    Warren Pumps, Llc, Through Its Designee, Roland Doktor, November 18, 2005.

24

25                    Rana French, as Personal Representative of the Estate of Ralph Dale Plaintiffs, v.

26                    Saberhagen Holdings, Inc., et al., Superior Court of Washington for King County, Washington, No. 05-2-09268-8 Sea Deposition

27                    of Warren Pumps, Through its Designee Roland Doktor, February 24, 2006.

28  Investigation is ongoing.

1     C.     Pursuant to Rule 26 (a)(1)(C): a party must, without awaiting a discovery request,

2     provide to other parties: a computation of any category of damages claimed by the

3     disclosing party, making available for inspection and copying as under Rule 34

4     the documents or other evidentiary material, not privileged or protected from

5     disclosure, on which such computation is based, including materials bearing on

6     the nature and extent of injuries suffered.

7     Response:   Plaintiffs are compiling all of the information necessary to determine the

8    amount of damages.  With respect to this section, all non-privileged records and information will

9    be forwarded when they become available.

10     D.     Pursuant to Rule 26 (a)(1)(D): a party must, without awaiting a discovery request,

11     provide to other parties:  for inspection and copying as under Rule 34 any

12     insurance agreement under which any person carrying on an insurance business

13     may be liable to satisfy part or all of a judgment which may be entered in the

14     action or to indemnify or reimburse for payments made to satisfy the judgment.

15    Response:  This section is not applicable.

16     E.     Pursuant to Rule 26 (a)(1)(E): The following categories of proceedings are

17     exempt from initial disclosure under Rule 26(a)(1): (i) an action for review on an

18     administrative record; (ii) a forfeiture action in rem arising from a federal statute;

19     (iii) a petition for habeas corpus or other proceeding to challenge a criminal

20     conviction or sentence; (iv) an action brought without counsel by a person in

21     custody of the United States, a state, or a state subdivision; (v) an action to

22     enforce or quash an administrative summons or subpoena; (vi) an action by the

23     United States to recover benefit payments; (vii) an action by the United States to

24     collect on a student loan guaranteed by the United States; (viii) a proceeding

25     ancillary to proceedings in other courts; and (ix) an action to enforce an

26     arbitration award.

27

28    ///

1

2   Response:    This section is not applicable.

3

4   Dated: March 29, 2007                         BRAYTON❖PURCELL LLP

5                                                    /s/  David R. Donadio

6                                             By: _____
                                                   David R. Donadio
7                                                  Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  ALAN R. BRAYTON, ESQ., S.B. #73685
   DAVID R. DONADIO, ESQ., S.B. #154436
2  BRAYTON❖PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   P.O. Box 6169
4  Novato, California  94948-6169
   (415) 898-1555
5  (415) 898-1247 (Fax No.)

6  Attorneys for Plaintiffs

7

8              THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11  EDWARD McINTYRE            )      No. C06-6301-WHA
                               )
12          Plaintiff,         )
                               )
13  vs.                        )      PROOF OF SERVICE
                               )      RE RULE 26 INITIAL DISCLOSURES
14  WARREN PUMPS, LLC,         )
                               )
15          Defendant.         )
                               )
16  _____   )

17       I am employed in the County of Marin, State of California.  I am over the age of 18 years

18  and am not a party to the within action.  My business address is 222 Rush Landing Road, P.O.

19  Box 6169, Novato, California 94948-6169.

20       On March 29, 2007, I served the following document(s) described as:

21       PLAINTIFFS' FEDERAL RULES OF CIVIL PROCEDURE RULE 26(a)(1) INITIAL
         DISCLOSURES
22  - attached hereto for reference

23  on the following:

24  Evan Nelson
    Carroll Burdick & McDonough
25  44 Montgomery St, Suite 400
    San Francisco, CA 94104
26  enelson@cbmlaw.com

27  ///

28

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

 __X__   BY OFFICE MAILING  I am readily familiar with this office's practice of collection and processing correspondence, pleadings and other matters for mailing with the United States Postal Service on that same day with postage thereon fully prepaid at , California in the ordinary course of business.  I placed in the outgoing office mail, the above-described document(s), in a sealed envelope, addressed to the party(ies) as stated above, for collection and processing for mailing the same day in accordance with ordinary office practices.

 __X__   BY EMAIL:  I caused each of the above document(s) to be emails this date to the office of the above partie(s)

Executed March 29, 2007 at Novato, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

John Derby

# EXHIBIT "E"

EXHIBIT "E"

1  ALAN R. BRAYTON, ESQ., S.B. #73685
   DAVID R. DONADIO, ESQ., S.B. #154436
2  BRAYTON✥PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   P.O. Box 6169
4  Novato, California 94948-6169
   (415) 898-1555
5
   Attorneys for Plaintiff
6

7

8              THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10               SAN FRANCISCO DIVISION

11 EDWARD MCINTYRE,                )   No. C06-6301-WHA
                                   )
12           Plaintiff,            )   INITIAL DISCOVERY DISCLOSURE
                                   )
13 vs.                            )   FILING DEADLINE: MAY 4, 2007
                                   )
14 WARREN PUMPS, LLC,             )   [FRCP 26(A)]
                                   )
15           Defendant.            )

16

17       Plaintiff hereby provides his Initial Disclosures as required pursuant to Federal Rules of

18 Civil Procedure (FRCP) 26(a)(1).

19 **FRCP 26(a)(1)**

20       (A)    **Disclosure of Plaintiff's Co-Worker Percipient Witnesses**

21       Plaintiff hereby discloses the identities of all currently known individuals likely to have

22 discoverable information supporting plaintiff's claims, and they hereby incorporate by reference

23 those additional individuals identified on plaintiff's current Witness List attached hereto as

24 Exhibit A.

25       Ron Hansen, address currently unknown; Rickie Stewart, address currently unknown;

26 Thomas L. Fisher, 4183 Fairfax Drive, Napa, California; John H. Abston, 421 Hilton Avenue,

27 Vallejo, California; Harvey E. Bantz, 4 Margo Court, Napa, California; Michael A. Bostrom,

28 Cordelia, California; Clarence Carravajal, 179 South Montgomery, Napa, California; Robert G.

K:\Injured\106109\Fed\pld-FRCP26-Disclosures-WARPUM.wpd          1
INITIAL DISCOVERY DISCLOSURE

*Left margin vertical text:*
BRAYTON✥PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P.O. BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

1  Carrell, 1304 Carrell Lane, Napa, California; Beverly S. Cortner, 1433 Spring St., Helena,

2  California; Bill V. Day Jr. 627 York St., Vallejo, California; Glenn N. Duque, 1110 Sacramento,

3  Vallejo, California; Wayne C. Gordon, 19889 First Street West, Sonoma, California; Nestor A.

4  Gorospe, 147 Stanford Drive, Vallejo, California; Arthur C. Harris, 3 Balsam Street, Olympic

5  Trailer Court, Vallejo, California; Robert A. Helsel, 2380 Bohen Street, Napa, California; T.W.

6  Humphries, 1907½ Broadway Street, Vallejo, California; Desmond T. Jeffers, 824 Humboldt

7  Street, Vallejo, California; Prentice Ivory, Oakland, California; D.T. Jones, 2 Corte Del Sol,

8  Benicia, California; Roger M. Koch, 216 College, Vallejo, California; Don W. Link, 1366

9  Monteith Drive, Vallejo, California; James L. McKinlay, 1009 Mariposa Street, Vallejo,

10  California; William Patrick Morales, 14784 Midland Road, San Leandro, California; Curtis

11  Ormiston, 463 Maples Avenue, Vallejo, California; Robert R. Pendleton, 548 San Dimas,

12  Fairfield, California; W.H. Pinkstaff, 2134 Road 20, San Pablo, California; Stephen Elias

13  Walker, 201 Grapewood Street, Vallejo, California; Daniel P. Wildemann, 125 Rae Court,

14  Vallejo, California; Tom Szander, address currently unknown.

15      <u>Disclosure of Plaintiff's Expert Witnesses</u>: Charles Ay; Barry Ben-Zion, Ph.D.; Richard

16  Bordow, M.D.; Donald Breyer, M.D.; Arnold R. Brody, Ph.D.; Herman Bruch, M.D.;

17  Barry Castleman, Ph.D.; Kenneth S. Cohen; Richard Cohen, M.D., M.P.H.; William Ewing,

18  C.I.H.; John Fening; Frank Ganzhorn, M.D.; Samuel Hammar, M.D.; Richard Hatfield; Barry

19  Horn, M.D.; William Longo; William Meseroll, M.D.; James R. Millette, Ph.D.; William

20  Nicholson, Ph.D.; William Salyer, M.D.; Allan H. Smith, M.D., Ph.D.; Rudolph Von Burg;

21  Joseph Wagoner, M.D.

22  **<u>FRCP 26(a)(1)</u>**

23      **(B)**    **<u>Disclosure of Relevant Documents in Plaintiff's Possession</u>**

24      Plaintiff hereby discloses all documents and tangible things that are in his possession

25  custody or control; further, as best plaintiff can describe those documents which plaintiff believes

26  in good faith to exist but are not currently in his possession, which plaintiff may use to support

27  his claims, plaintiff hereby incorporates by reference those additional documents and tangible

28  things identified in plaintiff's current "Plaintiffs' Exhibit List," Case No. C06-6301-WHA,

1  attached hereto as Exhibit B.  (Along with these written disclosures plaintiff provides to

2  defendant WARREN PUMPS, LLC's counsel electronic file copies of these aforementioned

3  documents not readily available to defendant from any other source.  Upon reasonable notice and

4  at a mutually agreeable time and date, plaintiff will produce for inspection and/or copying to

5  defendant all of the listed, non-privileged, relevant documents at the Law Offices of

6  Brayton❖Purcell LLP, 222 Rush Landing Road, Novato, California 94945.)

7       Plaintiff identifies EDWARD McINTYRE's Social Security records, National Personal

8  Records Center documents, his medical records and partial billings, all of which are equally

9  available to defendant from identified third parties; WARREN PUMPS, LLC's response to San

10  Francisco, California, Superior Court, General Order No.129 Standard Interrogatories, in the

11  matter In Re Complex Asbestos Litigation, No. 828684; WARREN PUMPS, LLC's responses to

12  the Supreme Court of the State of New York County of New York Liability Interrogatories and

13  Requests for Production of Documents in In Re New York City Asbestos Litigation, Index

14  No. 40000/88.  Plaintiff believes defendant is in possession of these documents.

15       Plaintiff further identifies all the papers, photographs, films, recordings, memoranda,

16  books, records, pamphlets, circulars, handbooks, manuals, periodicals, files, envelopes, notices,

17  instructions, transcripts, notes, telex messages, communications (including reports, notes,

18  notation and memoranda of telephone conversations and conferences, electronic mail, minutes,

19  transcriptions, correspondence, etc.) writings, letters, telegrams, correspondence, notes of

20  meetings or of conversations either in writing or upon any mechanical or electronic devices,

21  notes, accountants' statements or summaries, reports, invoices, canceled checks, check stubs

22  receipts, bank statements, diaries, desk calendars, appointment books, payment records,

23  telephone bills in defendant WARREN PUMPS, LLC's constructive possession custody, care or

24  control relating to plaintiff EDWARD McINTYRE and the jobsites where he worked.  Plaintiff

25  believes defendant is in possession of these documents.

26       Plaintiff also presently identifies all United States National Archives documents

27  pertaining to the vessels plaintiff EDWARD McINTYRE worked aboard.

28  ///

1    Plaintiff further identifies all of the correspondences, communications, agreements and
2    contracts between defendant, WARREN PUMPS, LLC, and any shipyard, shipbuilder contractors
3    and/or the United States Government or U.S. Navy, relating to the previously listed U.S. Navy
4    vessels.  Plaintiff believes defendant is in possession of these documents.

5    Plaintiff discloses the transcripts of all depositions taken in the California State action,
6    San Francisco Superior Court Case No. 453810, and attached exhibits; plaintiff EDWARD
7    McINTYRE's trial preservation and deposition transcripts and all exhibits, beginning October 3,
8    2006, reported by and available from Aiken & Welch, One Kaiser Plaza, Suite 505, Oakland,
9    California; plaintiff Allene Mcintyre's deposition transcript and all exhibits attached thereto,
10   beginning November 2, 2006, also reported by and available from Aiken & Welch.

11   Plaintiff identifies all transcripts and testimony of the Person Most Knowledgeable and
12   the Custodian of Records for all the named defendants in this action.  Plaintiff believes defendant
13   is in possession of these documents.

14   Further, plaintiff identifies numerous articles and studies relating to the health hazards
15   associated with exposure to asbestos which have appeared in medical and scientific literature
16   since the turn of the century and have also been summarized in various publications.  Plaintiff
17   identifies two texts that contain summaries and/or bibliographies of asbestos-related disease.
18   They are:  Asbestos:  Medical and Legal Aspects, Barry I. Castleman, Prentice-Hall Law and
19   Business, 1990; and Sourcebook on Asbestos Disease, Medical, Legal, and Engineering Aspects,
20   George A. Peters and Barbara J. Peters, Garland STPM Press, Vol. 1, 1980, Vol. 2, 1986.

21   Plaintiff identifies General Industry Safety Order promulgated pursuant to California
22   Labor Code § 6400, et seq., and California Administrative Code under the Division of Industrial
23   Safety, Department of Industrial Relations, including but not limited to, Title VIII,
24   Group 9 (Control of Hazardous Substances) Article 81, Section 4150, 4106-4108, and Threshold
25   Limit Values as documented for asbestos and other toxic substances under Appendix A, Table I,
26   of said Safety Orders.

27   Plaintiff further identifies NESHAP Asbestos Regulations (National Emission Standards
28   for Hazardous Air Pollutants) which are found at Code of Federal Regulations, Title 40,

1    Chapter 1, Subchapter C, Part 61, Subpart M, published under the Federal Clean Air Act of 1970,

2    42 U.S.C.A. section 7412(b)(1)(A) and 42 U.S.C.A. section 7412(b)(1)(B).  Plaintiff also

3    identifies OSHA Standards relating to asbestos, found at Code of Federal Regulations, Title 29,

4    Chapter 17, Section 1910, et seq.; and Title 8, Section 5208 of the California OSHA regulations

5    pertaining to asbestos exposure.

6    **FRCP 26(a)(1)**

7         (C)    **Disclosure of Plaintiff's Damages**

8         Plaintiff EDWARD McINTYRE's medical expenses are in excess of $50,000.00.  Future

9    medical expenses are expected to exceed $50,000.00.  Wage, pension, Social Security, and

10   household services loss is in excess of $859,500.00.  Additionally, plaintiff will suffer special

11   damages for future care, including home health care, in an amount yet to be determined.

12        Plaintiff hereby discloses all documents and tangible things that are in the possession

13   custody or control of plaintiff, which plaintiff may use to support his claims for damages.

14        Plaintiff identifies the Social Security Records of plaintiff EDWARD McINTYRE, the

15   NPRC Records of plaintiff EDWARD McINTYRE as a civilian employee of the Mare Island

16   Naval Shipyard, the Expert Report of Plaintiff's Economic Expert Dr. Barry Ben-Zion, Ph.D.,

17   plaintiff EDWARD McINTYRE's medical bills and medical records, whether in his own

18   possession or in that of the medical providers.

19   Dated:    5-4-07                        BRAYTON❖PURCELL LLP

20

21                                    By:  _____

22                                         David R. Donadio
                                           Attorneys for Plaintiff

23

24

25

26

27

28

Edward McIntyre and Allene McIntyre v. Warren Pumps, LLC
WITNESS LIST

Abston, John H., 421 Hilton Avenue, Vallejo, California
Ay, Charles
Bautz, Harvey E., 4 Margo Court, Napa, California
Barlow, Richard, M.D.
Bostrom, Michael A., Cordelia, California
Brody, Arnold R., Ph.D.
Bruch, Herman, M.D.
Cannon, Charles, 1013 Hargus Ave., Vallejo, California
Carravigal, Clarence, 179 South Montgomery, Napa, California
Carrell, Robert G., 1304 Carrell Lane, Napa, California
Castleman, Barry, Ph.D.
Cohen, Kenneth S.
Cohen, Richard, M.D., M.P.H.
Cormar, Beverly S., 1433 Spring St., Helena, California
Clark, Bruce., M.D.
Day, Bill V. Jr., 627 York St., Vallejo, California
Diaz, Gregario c/o Brayton❖Purcell LLP
Doktor, Roland
Dora, Robert, M.D.
Duque, Glenn N., 1110 Sacramento, Vallejo, California
Ewing, William, C.I.H.
Fening, John
Fisher, Thomas I., 4183 Fairfax Drive, Napa, California
Ganzhorn, Frank, M.D.
Gordon, Wayne C., 19889 First Street West, Sonoma, California
Gorospe, Nestor A., 147 Stanford Dr., Vallejo, California
Hammar, Samuel, M.D.
Hansen, Ron, address currently unknown
Harris, Arthur C., 3 Balsam St., Olympic Trailer Ct., Vallejo, California
Hatfield, Richard
Heisel, Robert A., 2380 Bohen St., Napa, California
Horn, Barry, M.D.
Horne, Roger
Humphries, T.W., 1907½ Broadway St., Vallejo, California
Hurlul, Hasan, N., M.D.
Ivory, Prentice, Oakland, California
Jeffers, Desmond T., 824 Humboldt St., Vallejo, California
Jones, D.T., 2 Corte Del Sol, Benicia, California
Longo, William
Kalakauakus, Lawrence c/o Brayton❖Purcell LLP
Koch, Roger M., 216 College, Vallejo, California
Link, Don W., 1366 Monteith Dr., Vallejo, California
McGee, David, M.D.
McIntyre Allene c/o Brayton❖Purcell LLP
McIntyre, Edward c/o Brayton❖Purcell LLP
McKinlay, James L., 1009 Mariposa St., Vallejo, California
Meneroll, William, M.D.
Millette, James R., Ph.D.
Morales, William Patrick, 14784 Midland Road, San Leandro, California
Nicholson, William, Ph.D.
Ormiston, Curtis, 463 Maples Ave., Vallejo, California

Owens, Horace c/o Brayton❖Purcell
Pendleton, Robert R., 548 San Domas, Fairfield, California
Pinkstaff, W.H., 2134 Road 20, San Pablo, California
Rodman, Kevin, 5073 Vittor Lane, Vacaville, California
Salyer, William, M.D.
Scandlyn, Charles c/o Brayton❖Purcell LLP
Silloway, Richard
Smith, Allan H., M.D., Ph.D.
Stewart, Rickie, address currently unknown
Szaszler, Tom, address currently unknown
Von Burg, Rudolph
Wagoner, Joseph, M.D.
Walker, Stephen Elias, 201 Grapewood St., Vallejo, California
Wildemann, Daniel P., 125 Rae Court, Vallejo, California

K:\Injured\501699\Pub\witness list.wpd

EXHIBIT __A__

---

PLAINTIFFS' EXHIBIT LIST

Case Name: Edward & Allene McIntyre v Warren Pumps, LLC

Case No.: C06-6301-WHA

Dept.: __Type of Hearing: __

| | | | | | | |
|---|---|---|---|---|---|---|
| 1. | Occupational & Environmental Medical Text Books and Articles | Plaintiffs | | | | |
| 2. | Dr. Richard Cohen - Bibliography | Plaintiffs | | | | |
| 3. | OSHA – 1994 – Occupational Exposure to Asbestos – Final Rule | Plaintiffs | | | | |
| 4. | CA – General Industry Safety Orders | Plaintiffs | | | | |
| 5. | NIOSH – 1992 – Asbestos Publications | Plaintiffs | | | | |
| 6. | 11th Report on Carcinogens | Plaintiffs | | | | |
| 7. | Various Medical Articles on Asbestos Diseases | Plaintiffs | | | | |
| 8. | Various Medical Drawings and Diagrams and Display Boards | Plaintiffs | | | | |
| 9. | Deposition of Edward Ames | Plaintiffs | | | | |
| 10. | California Health and Safety Code | Plaintiffs | | | | |
| 11. | 20 USCA 3601 | Plaintiffs | | | | |
| 12. | Anatomical lung model | Plaintiffs | | | | |
| 13. | Photographs of asbestos fibers | Plaintiffs | | | | |
| 14. | Asbestos product exemplars | Plaintiffs | | | | |
| 15. | Single use disposable mask | Plaintiffs | | | | |
| 16. | State of the art bibliography/article binder- Richard Cohen, M.D. Publications | Plaintiffs | | | | |
| 17. | Various Medical and Industrial Hygiene Articles on Mesothelioma and Asbestos Disease | Plaintiffs | | | | |
| 18. | Microscopy Photos of Asbestos | Plaintiffs | | | | |

K:\Injured\501699\Pub\Exhibit List01.wpd

EXHIBIT __B__

---

| | | | | | | |
|---|---|---|---|---|---|---|
| 19. | Curriculum Vitae for Charles Ay | Plaintiffs | | | | |
| 20. | Curriculum Vitae for Barry Ben-Zion Ph.D. | Plaintiffs | | | | |
| 21. | Curriculum Vitae for Kenneth S. Cohen | Plaintiffs | | | | |
| 22. | Curriculum Vitae for Richard Cohen, M.D., M.P.H. | Plaintiffs | | | | |
| 23. | Curriculum Vitae for John Fening | Plaintiffs | | | | |
| 24. | Curriculum Vitae for Samuel Hammar, M.D. | Plaintiffs | | | | |
| 25. | Curriculum Vitae for Barry Horn, M.D. | Plaintiffs | | | | |
| 26. | Curriculum Vitae for Allan Smith, M.D. | Plaintiffs | | | | |
| 27. | Photograph - Family with Edward McIntyre Photos | Plaintiffs | | | | |
| 28. | Photographs-Edward McIntyre Work related (MINSY) | Plaintiffs | | | | |
| 29. | Asbestos Exemplar | Plaintiffs | | | | |
| 30. | Plaintiff Edward McIntyre's Medical Records | Plaintiffs | | | | |
| 31. | Plaintiff Edward McIntyre's Medical Bills and Summary | Plaintiffs | | | | |
| 32. | Edward McIntyre's CT Scans | Plaintiffs | | | | |
| 33. | Edward McIntyre's X-Rays | Plaintiffs | | | | |
| 34. | National Archive Documents identifying Warren Pumps products onboard the ABRAHAM LINCOLN (SSBN-602) | Plaintiffs | | | | |
| 35. | Deposition of Gregorio Diaz in Diaz v. Asbestos Defendants, SFSC No. 431711, Vol. 2, 09/21/05, and Attached Exhibits | Plaintiffs | | | | |
| 36. | Deposition of Charles F. Cannon in Blackley v. Asbestos Defendants, SFSC No. 400336, 08/25/03, and Attached Exhibits | Plaintiffs | | | | |

2

K:\Injured\501699\Pub\Exhibit List01.wpd

---

| | | | | | | |
|---|---|---|---|---|---|---|
| 37. | Deposition of Charles F. Cannon in Blackley v. Asbestos Defendants, SFSC No. 400336, Vol. 1, 09/01/05, and Attached Exhibits | Plaintiffs | | | | |
| 38. | Deposition of Charles F. Cannon in Blackley v. Asbestos Defendants, SFSC No. 400336, Vol. 2, 09/02/05, and Attached Exhibits | Plaintiffs | | | | |
| 39. | Deposition of Charles F. Cannon in Blackley v. Asbestos Defendants, SFSC No. 400336, Vol. 3, 09/12/05, and Attached Exhibits | Plaintiffs | | | | |
| 40. | National Archive Documents identifying Warren Pumps products onboard the GUARDFISH (SSN-112) | Plaintiffs | | | | |
| 41. | National Archive Documents identifying Warren Pumps products onboard the HADDOCK (SSN-621) | Plaintiffs | | | | |
| 42. | National Archive Documents identifying Warren Pumps products onboard the HALIBUT (SSGN-587, SSN-587) | Plaintiffs | | | | |
| 43. | Deposition of Raymond D'Angine in Raymond D'Angine v. Abex Corporation, et al., SFSC No. 970184, 04/26/96, and Attached Exhibits | Plaintiffs | | | | |
| 44. | Deposition of Kenneth Kugelman in Kugelman v. Asbestos Defendants, SFSC No. 990559, 01/08/98, and Attached Exhibits | Plaintiffs | | | | |
| 45. | National Archive Documents identifying Warren Pumps products present at Marc Island Naval Shipyard, Vallejo, CA | Plaintiffs | | | | |
| 46. | Deposition of Walter Osborn in Osborn v. Asbestos Defendants, SFSC No. 421711, 07/30/03, and Attached Exhibits | Plaintiffs | | | | |

3

K:\Injured\501699\Pub\Exhibit List01.wpd

| 47. | National Archive Documents identifying Warren Pumps products onboard the ORLECK (DD-886) | |
|---|---|---|
| 48. | Jane's Fighting Ships - Submarines (Sturgeon Class; George Washington Class; Lafayette Class; Permit Class; Barbel Class; Grayback Class; Thresher Class; Ethan Allen Class; Benjamin Franklin Class; Sailfish Class; Skipjack Class; Seawolf Class; James Madison Class; Skate Class) | Plaintiffs |
| 49. | Deposition of Horace Owens in Horace Owens v. Abex Corporation, et al., SFSC No. 971029, 04/15/96, and Attached Exhibits | Plaintiffs |
| 50. | National Archive Documents identifying Warren Pumps products onboard the PATRICK HENRY (SSBN-599; SSN-599) | Plaintiffs |
| 51. | National Archive Documents identifying Warren Pumps products onboard the PERMIT (SSN-594) | Plaintiffs |
| 52. | National Archive Documents identifying Warren Pumps products onboard the PLUNGER (SSN-595) | Plaintiffs |
| 53. | Deposition of Charles Scandlyn in Charles and Sylvia Scandlyn v. Asbestos Defendants, SFSC No. 431122, 07/02/04, and Attached Exhibits | Plaintiffs |
| 54. | Deposition of Lawrence Kalakauskis in Lawrence Kalakauskis v. Asbestos Defendants (BHC), SFSC No. 401616; 7/07/03, 7/08/03, 5/27/03, 2/09/05, and Attached Exhibits | Plaintiffs |
| 55. | National Archive Documents identifying Warren Pumps products onboard the PORTERFIELD (DD-682) | Plaintiffs |

4

X:\injured\1861991FinExhibit List01.wpd

| 56. | National Archive Documents identifying Warren Pumps products onboard the SCAMP (SSN-588) | Plaintiffs |
|---|---|---|
| 57. | National Archive Documents identifying Warren Pumps products onboard the SEAWOLF (SSN-575) | Plaintiffs |
| 58. | National Archive Documents identifying Warren Pumps products onboard the SHARK (SSN-591) | Plaintiffs |
| 59. | National Archive Documents identifying Warren Pumps products onboard the SNOOK (SSN-592) | Plaintiffs |
| 60. | National Archive Documents identifying Warren Pumps products onboard the SOUTHERLAND (DD-743; DDR-743) | Plaintiffs |
| 61. | National Archive Documents identifying Warren Pumps products onboard the SWORDFISH (SSN-579) | Plaintiffs |
| 62. | National Archive Documents identifying Warren Pumps products onboard the BARB (SSN-596) | Plaintiffs |
| 63. | Tefft v. AC&S, Inc., U.S. District court for Western District of Washington at Seattle, Case No. C84-154M, dated 10/12/84 | Plaintiffs |
| 64. | Deposition of Everett Shuman, taken on 3/4/81, in St. Jacque v. Johns-Manville Products Corp., LAC No. C137465 and Exhibits Attached | Plaintiffs |
| 65. | Deposition of John M. Barnhart, 7/2/80, Kane, et al. v. Johns-Manville Products Corp., LASC No. C258490 and Exhibits Attached | Plaintiffs |
| 66. | Deposition of John Haas, 9/15/80, 9/16/80, and 11/5/80 in St. Jacque v. Johns-Manville Products Corp., LASC No. C137465 and Exhibits Attached | Plaintiffs |

5

X:\injured\1861991FinExhibit List01.wpd

| 67. | Asbestos Textile Institute Manager's Annual Report for the Year Ending March 1948, from Harris D. McKinney to George W. Marshall, Jr., dated April 1, 1948 | Plaintiffs |
|---|---|---|
| 68. | Minutes of the Technical Committee Meeting held Thursday, September 11, 1947 at the Engineers' Club, Philadelphia, Pennsylvania | Plaintiffs |
| 69. | Report of the Technical Committee of the Asbestos Textile Institute at Hotel Bismarck, Chicago, IL, April 7, 1948, prepared by J.M. Weaver | Plaintiffs |
| 70. | Minutes of the Meeting of the Sales Promotion Committee of the Asbestos Textile Institute held on June 13, 1951 at the Hotel Warwick, Philadelphia, Pennsylvania | Plaintiffs |
| 71. | Letter dated June 26, 1951 from J.A. Bettes, Jr. of Raybestos-Manhattan, Inc. to Russell Schwartz at the Office of Quartermaster General | Plaintiffs |
| 72. | Fellowship Report by Myril C. Shaw | Plaintiffs |
| 73. | Secretary's Report by Myril C. Shaw | Plaintiffs |
| 74. | Minutes of the Technical Committee Meeting held Wednesday, November 28, 1951 at the Warwick Hotel, Philadelphia, PA | Plaintiffs |
| 75. | Minutes of the Meeting of the Sales Promotion Committee and Technical Committee held at the Warwick Hotel, Philadelphia, Pennsylvania, on February 27, 1952 | Plaintiffs |
| 76. | Minutes of the Technical Committee Meeting held August 27 and 28, 1952 at New Brunswick, NJ | Plaintiffs |

6

X:\injured\1861991FinExhibit List01.wpd

| 77. | Report of the Technical Committee, December 10, 1953 General Meeting at the Warwick Hotel, Philadelphia, PA | Plaintiffs |
|---|---|---|
| 78. | Letter dated January 12, 1954 from Myril C. Shaw of the Asbestos Textile Institute to Members of the Technical and Sales Promotion Committees regarding Federal Specification Revisions | Plaintiffs |
| 79. | Report of the Technical Committee of the Asbestos Textile Institute for March 11, 1954 General Meeting at Essex House, New York, NY | Plaintiffs |
| 80. | Minutes of the Meeting of the Technical Committee of the Asbestos Textile Institute at Hotel Warwick, Philadelphia, PA, December 1, 1954 | Plaintiffs |
| 81. | December 2, 1954 Fellowship Report, Report #31, by Myril C. Shaw of Asbestos Textile Institute | Plaintiffs |
| 82. | June 11, 1959 Fellowship Report, Report #49, by Myril C. Shaw of Asbestos Textile Institute | Plaintiffs |
| 83. | September 11, 1959 Fellowship Report, Report #50, by Myril C. Shaw of Asbestos Textile Institute | Plaintiffs |
| 84. | March 4, 1960 Fellowship Report, Report #50, by Myril C. Shaw of Asbestos Textile Institute | Plaintiffs |
| 85. | Deposition of Edward McIntyre in Edward & Aileen McIntyre v. Asbestos Defendants, SFSC No. 453810, V. 1, 10/4/06 and Exhibits Attached | Plaintiffs |
| 86. | Deposition of Edward McIntyre in Edward & Aileen McIntyre v. Asbestos Defendants, SFSC No. 453810, V. 2, 10/5/06 and Exhibits Attached | Plaintiffs |

7

X:\injured\1861991FinExhibit List01.wpd

| | | | | | |
|---|---|---|---|---|---|
| 87. | Deposition of Edward McIntyre in *Edward & Allene McIntyre v. Asbestos Defendants*, SFSC No. 453810, V. 3, 10/6/06 and Exhibits Attached | Plaintiffs | | | |
| 88. | Deposition of Edward McIntyre in *Edward & Allene McIntyre v. Asbestos Defendants*, SFSC No. 453810, TVD, 10/3/06 and Exhibits Attached | Plaintiffs | | | |
| 89. | Deposition of Edward McIntyre in *Edward & Allene McIntyre v. Asbestos Defendants*, SFSC No. 453810, V. 4, 10/30/06 and Exhibits Attached | Plaintiffs | | | |
| 90. | Deposition of Edward McIntyre in *Edward & Allene McIntyre v. Asbestos Defendants*, SFSC No. 453810, V. 5, 10/31/06 and Exhibits Attached | Plaintiffs | | | |
| 91. | Deposition of Edward McIntyre in *Edward & Allene McIntyre v. Asbestos Defendants*, SFSC No. 453810, V. 6, 11/1/06 and Exhibits Attached | Plaintiffs | | | |
| 92. | Deposition of Allene McIntyre in *Edward & Allene McIntyre v. Asbestos Defendants*, SFSC No. 453810, 11/2/06 and Exhibits Attached | Plaintiffs | | | |
| 93. | Deposition of Fred Boness, PMK/COR of Eaton Electrical, Inc. in *Edward & Allene McIntyre v. Asbestos Defendants*, SFSC No. 453810, 12/14/06 and Exhibits Attached | Plaintiffs | | | |
| 94. | Deposition of J. David Godwin, M.D. in *Edward & Allene McIntyre v. Asbestos Defendants*, SFSC No. 453810, 3/27/07 and Exhibits Attached | Plaintiffs | | | |
| 95. | Deposition of Allan Smith, Ph. D. in *Edward & Allene McIntyre v. Asbestos Defendants*, SFSC No. 453810, 4/10/07 and Exhibits Attached | Plaintiffs | | | |

8

K:\legimd\206199\Fed\Exhibit List01.wpd

| | | | | | |
|---|---|---|---|---|---|
| 96. | Deposition of Richard Cohen in *Edward & Allene McIntyre v. Asbestos Defendants*, SFSC No. 453810, V. 1, 4/6/07 and Exhibits Attached | Plaintiffs | | | |
| 97. | Deposition of John Fening in *Edward & Allene McIntyre v. Asbestos Defendants*, SFSC No. 453810, 3/23/07 and Exhibits Attached | Plaintiffs | | | |
| 98. | Deposition of Charles Ay in *Edward & Allene McIntyre v. Asbestos Defendants*, SFSC No. 453810, 3/27/07 and Exhibits Attached | Plaintiffs | | | |
| 99. | Deposition of Barry Ben-Zion, Ph. D., in *Edward & Allene McIntyre v. Asbestos Defendants*, SFSC No. 453810, 4/5/07 and Exhibits Attached | Plaintiffs | | | |
| 100. | Deposition of Samuel Hammar, M.D. in *Edward & Allene McIntyre v. Asbestos Defendants*, SFSC No. 453810, 4/5/07 and Exhibits Attached | Plaintiffs | | | |
| 101. | Deposition of Richard Silloway in *Edward & Allene McIntyre v. Asbestos Defendants*, SFSC No. 453810, 4/4/07 and Exhibits Attached | Plaintiffs | | | |
| 102. | Deposition of Kenneth Cohen, CIH, in *Edward & Allene McIntyre v. Asbestos Defendants*, SFSC No. 453810, 4/5/07 and Exhibits Attached | Plaintiffs | | | |
| 103. | Deposition of William Salyer, M.D. in *Edward & Allene McIntyre v. Asbestos Defendants*, SFSC No. 453810, 4/5/07 and Exhibits Attached | Plaintiffs | | | |
| 104. | Deposition of Robert D. Strode, CIH, in *Edward & Allene McIntyre v. Asbestos Defendants*, SFSC No. 453810, 4/5/07 and Exhibits Attached | Plaintiffs | | | |

9

K:\legimd\206199\Fed\Exhibit List01.wpd

| | | | | | |
|---|---|---|---|---|---|
| 105. | Deposition of Barry R. Horn, M.D. in *Edward & Allene McIntyre v. Asbestos Defendants*, SFSC No. 453810, 4/20/07 and Exhibits Attached | Plaintiffs | | | |
| 106. | Video Deposition of Roland R. Doktor taken in the matter of *Kenneth E. Balthazar and Sandra L. Balthazar v. A.W Chesterton Company, et al.*, Commonwealth of Massachusetts - Department of Trial Court, Superior Court; Civil Action No. 06-3620; 4/19/07 and Attached Exhibits | Plaintiffs | | | |
| 107. | Deposition of WARREN PUMPS, through its designee Roland Doktor taken in the matter of *Robert Baxter v. Alfa Laval, Inc., et al.*, Commonwealth of Massachusetts Superior Court; Civil Action No. 05-4314; 6/26/06 and Attached Exhibits | Plaintiffs | | | |
| 108. | Deposition transcripts and all exhibits attached thereto, for all of defendant WARREN PUMPS, LLC's Custodian of Records/Persons Most Knowledgeable, dated 1980 to present including, but not limited to deponents: Roland Doktor; Richard Silloway; Roger Horne. | Plaintiffs | | | |
| 109. | Defendant WARREN PUMPS, LLC Responses to General Order No. 129, Amendments and Supplements, and all exhibits attached thereto, in the matter of In Re: Complex Asbestos Litigation SFSC No. 828684. | Plaintiffs | | | |
| 110. | Plaintiffs' Notice of Taking Deposition and Request for Production of Documents in the matter of Edward McIntyre and Allene McIntyre v. Asbestos Defendants (B◊P), San Francisco Superior Court No. 453810. | Plaintiffs | | | |

10

K:\legimd\206199\Fed\Exhibit List01.wpd

| | | | | | |
|---|---|---|---|---|---|
| 111. | Disclosure of Documents (not in plaintiff's possession but known to plaintiff-- plaintiff's discovery and investigations to locate copies of these documents is continuing.)<br><br>Warren Pumps Operator's Manual Fire & Bilge Eductor Pump<br><br>Warren Pumps Operator's Manual Aux Condensate Circulating Pump<br><br>Warren Pumps Operator's Manual Distiller Condensate Circulating Pump<br><br>Warren Pumps Operator's Manual Distiller Condensate Pump<br><br>Warren Pumps Operator's Manual Evaporator Feed Pump<br><br>Warren Pumps Operator's Manual Evaporator Brine Overboard Discharge Pump<br><br>Warren Pumps Operator's Manual Evaporator 1st Effect Tube Nest Drain Pump<br><br>Warren Pumps Operator's Manual Diesel Generator Salt Water Circ. Pump<br><br>Warren Pumps Operator's Manual Damage Drain Pump<br><br>Warren Pumps Operator's Manual Drainage Pump<br><br>Warren Pumps Operator's Manual Aux Drainage Pump | Plaintiffs | | | |

11

K:\legimd\206199\Fed\Exhibit List01.wpd

| | | | | | | |
|---|---|---|---|---|---|---|
| 112. | Trial testimony of Kenneth Cohen taken on 4/27/07 in the matter of Edward McIntyre and Allene McIntyre v. Asbestos Defendants (B&P), San Francisco Superior Court No. 453810. | Plaintiffs | | | | |
| 113. | Report of Barry Ben-Zion, Ph.D. | Plaintiffs | | | | |
| 114. | Report of Samuel Hammar, M.D. | Plaintiffs | | | | |
| 115. | Report of Barry Horn, M.D. | Plaintiffs | | | | |
| 116. | Report of William Salyer, M.D. | Plaintiffs | | | | |
| 117. | Social Security Administration Records Baltimore, Maryland | Plaintiffs | | | | |
| 118. | National Personnel Records Center, St. Louis, Missouri | Plaintiffs | | | | |
| 119. | Plaintiff's Verified Responses to Standard Asbestos Case Interrogatories Sets 1 and 2, Amendments and Supplements, and all exhibits attached thereto in the matter of Edward McIntyre and Allene McIntyre v. Asbestos Defendants (B&P), San Francisco Superior Court No. 453810. | Plaintiffs | | | | |
| 120. | Reserved | Plaintiffs | | | | |
| 121. | Reserved | Plaintiffs | | | | |
| 122. | Reserved | Plaintiffs | | | | |
| 123. | Reserved | Plaintiffs | | | | |
| 124. | Reserved | Plaintiffs | | | | |
| 125. | Reserved | Plaintiffs | | | | |
| 126. | Reserved | Plaintiffs | | | | |
| 127. | Reserved | Plaintiffs | | | | |
| 128. | Reserved | Plaintiffs | | | | |
| 129. | Reserved | Plaintiffs | | | | |
| 130. | Reserved | Plaintiffs | | | | |
| 131. | Reserved | Plaintiffs | | | | |
| 132. | Reserved | Plaintiffs | | | | |

12

K:\Injured\106109\Ped exhibit 2.ed9.wpd





1  ALAN R. BRAYTON, ESQ., S.B. #73685
   DAVID R. DONADIO, ESQ., S.B. #154436
2  BRAYTON❖PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   P.O. Box 6169
4  Novato, California  94948-6169
   (415) 898-1555
5  (415) 898-1247 (Fax No.)

6  Attorneys for Plaintiffs

7

8              THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11  EDWARD McINTYRE                    )    No. C06-6301-WHA
                                       )
12          Plaintiff,                 )
                                       )
13  vs.                                )    PROOF OF SERVICE
                                       )    RE: INITIAL DISCOVERY DISCLOSURE
14  WARREN PUMPS, LLC,                 )
                                       )
15          Defendant.                 )
                                       )
16  ─────────────────────────────     )

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

K:\Injured\106109\Fed\POS re Disclosure on 5 4 07.wpd

                                       1

PROOF OF SERVICE  – C06-6301-WHA

PROOF OF SERVICE BY HAND DELIVERY

I declare that I am employed in the County of Marin, California. I am over the age of eighteen years and not a party to the within action. My business address is 222 Rush Landing Road, P.O. Box 6169, Novato, California, 94948-6169.

I served the following document:

**INITIAL DISCOVERY DISCLOSURE**

by personally delivering a copy to the person served as follows:

a. Carrie Takahata
b. Carroll, Burdick & McDonough
   44 Montgomery St., Ste. 400
   San Francisco, CA 94104
c. May 4, 2007
d. 2:40 p.m.

Executed this 9th day of May, 2007, at Novato, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

*Nathan Burleson*
Nathan Burleson

Edward McIntyre, et al. v. Warren Pumps, LLC
No. C06-6301-WHA

1

PROOF OF SERVICE BY HAND DELIVERY

BRAYTON◆PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

# EXHIBIT "F"

EXHIBIT "F"

1    ALAN R. BRAYTON, ESQ., S.B. #73685
     DAVID R. DONADIO, ESQ., S.B. #154436
2    BRAYTON❖PURCELL LLP
     Attorneys at Law
3    222 Rush Landing Road
     P.O. Box 6169
4    Novato, California  94948-6169
     (415) 898-1555
5    (415) 898-1247 (Fax No.)

6    Attorneys for Plaintiff

7

8                    THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

12   EDWARD MCINTYRE,                    )   No. C06-6301-WHA
                                         )
13            Plaintiff,                 )
                                         )   STIPULATION AND [PROPOSED]
14   vs.                                 )   ORDER SELECTING ADR PROCESS
                                         )
15   WARREN PUMPS LLC                    )
                                         )   FILING DEADLINE: 3/29/2007
16            Defendant.                 )
                                         )
17   _____    )

18        Counsel report that they have met and conferred regarding ADR and have reached the

19   following stipulation pursuant to Civil L.R. 16-8 and ADR L.R. 3-5:

20        The parties agree to participate in the following ADR process:

21   Court Processes:

22   _____    Non-binding Arbitration (ADR L.R. 4)

23     ✗     Early Neutral Evaluation (ENE) (ADR L.R. 5)

24   _____    Mediation (ADR L.R. 6)

25   (Note: Parties who believe that an early settlement conference with a Magistrate Judge is

26   appreciably more likely to meet their needs than any other form of ADR, must participate in an

27   ADR phone conference and may not file this form. They must instead file a Notice of Need for

28   ADR Phone Conference. See Civil Local Rule 16-8 and ADR L.R. 3-5)

K:\Injured\106109\Fed\Joint ADR selection.wpd                    1
STIPULATION AND [PROPOSED] ORDER SELECTING ADR PROCESS  – C06-6301-WHA

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

1    Private Process:

2    ____    Private ADR (please identify process and provider) _____

3    _____

4    The parties agree to hold the ADR session by:

5    ____    the presumptive deadline (The deadline is 90 days from the date of the order

6    referring the case to an ADR process unless otherwise ordered. )

7    ____    other requested deadline _____

8

9    Dated: 3/28/07                            BRAYTON❖PURCELL LLP

10

11   By: _____
         David R. Donadio
12       Attorneys for Plaintiffs

13   Dated: 3/29/07                            CARROLL, BURDICK, & McDONOUGH,
                                               LLP
14

15   By: _____

16       Evan C. Nelson
         Attorneys for Defendant WARREN
17       PUMPS, LLC

18

19   When filing this document in ECF, please be sure to use the ADR Docket Event entitled "Stipulation and
     Proposed Order Selecting Early Neutral Evaluation." You must concurrently submit a copy of any ADR
20   forms filed to the ADR Unit by any of these methods: 1. PDF attachment by email to
     ADR@cand.uscourts.gov 2. Fax (415 522-4112) 3. Hand delivery to ADR Program, 450 Golden Gate
21   Avenue, 16th Floor, Room 16-6892, San Francisco, California.

22

23                           [PROPOSED] ORDER

24       Pursuant to the Stipulation above, the captioned matter is hereby referred to:

25   Non-binding Arbitration

26   ____    Early Neutral Evaluation (ENE)

27   ____    Mediation

28   ____    Private ADR

K:\Injured\106109\Fed\Joint ADR selection.wpd                2
STIPULATION AND [PROPOSED] ORDER SELECTING ADR PROCESS  – C06-6301-WHA

1    <u>Deadline for ADR session</u>

2    _____    90 days from the date of this order.

3    _____    other _____

4    IT IS SO ORDERED.

5    Dated: _____

6

7                                          _____
                                           William H. Alsup
8                                          United States District Court Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "G"

# EXHIBIT "G"

1  ALAN R. BRAYTON, ESQ., S.B. #73685
   DAVID R. DONADIO, ESQ., S.B. #154436
2  BRAYTON❖PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   P.O. Box 6169
4  Novato, California 94948-6169
   (415) 898-1555
5  (415) 898-1247 (Fax No.)

6  Attorneys for Plaintiff

7

8            THE UNITED STATES DISTRICT COURT

9        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION                **BY FAX**

11

   EDWARD MCINTYRE,              )   No. C06-6301-WHA
12                               )
            Plaintiff,           )   DECLARATION OF CHARLES AY IN
13                               )   SUPPORT OF PLAINTIFF'S
   vs.                           )   OPPOSITION TO DEFENDANT
14                               )   WARREN PUMPS, LLC.'S MOTION FOR
   WARREN PUMPS LLC              )   SUMMARY JUDGMENT
15                               )
            Defendant.           )
16                               )   Date:   April 19, 2007
                                 )   Time:   8:00 A.M.
17  _____)   Dept:   Courtroom 9
                                     Judge: Hon. William H. Alsup
18  Case 3:06-cv-06301-WHA     Document 21-6     Filed 03/29/2007     Page 2 of 4

19      I, Charles Ay, declare as follows:

20      1. I am certified by the State of California as an asbestos consultant, pursuant to Business

21  and Professions Code § 7180. I am certified as building inspector, management planner and

22  worker/supervisor for asbestos. I am certified by the Environmental Protection Agency to

23  sample and evaluate airborne asbestos fibers. I have been engaged in inspecting commercial,

24  residential and industrial buildings for asbestos since 1984.

25      2. I have been qualified to testify as an expert witness in federal and state courts in the

26  identification, use, installation and removal of asbestos-containing products. I have testified as

27  an expert witness in a number of trials regarding asbestos exposure.

28  ///

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

1      3. From 1956 to 1960, I worked as an asbestos pipe coverer and insulator in the

2  construction industry in refineries, power plants, and buildings. From 1960 to 1981, I worked in

3  the shipyard industry as an insulator. I worked on both U.S. Navy vessels and privately owned

4  vessels. During the time I was active as an insulator, I was a member of the International

5  Association of Heat and Frost Insulators and Asbestos Workers Union. I have worked on

6  virtually every type and class of U.S. Navy vessel including types, CVA, CV, Battleships, Heavy

7  Cruisers, Light Cruisers, Destroyers, Destroyer Escorts, DLG, Aircraft Carriers, AKA, Auxiliary

8  Transports, Aircraft Transports, Nuclear Cruisers, Nuclear Destroyers, Submarines, C2 and C3

9  Communications Vessels, C2 and C3 Tankers, AD, AR, AS, MSO, MSC, MS, LPD, and LST. I

10  have studied various materials, documents and reviewed countless documentaries regarding the

11  design and construction of these types and classes of Navy vessels. The vast majority of these

12  vessels on which I worked were steam drive, with the exception of the submarines, MSO, MSC

13  and which had auxiliary steam systems but were not steam propelled. I have worked on both

14  land based and ship pumps manufactured by Buffalo, Warren, Ingersoll-Rand and others. I have

15  worked along side of and had numerous occasions to observe the materials and practices of pump

16  repairmen. I have been present on countless occasions when pumps were installed, inspected,

17  tested and repaired.

Case 3:06-cv-06301-WHA   Document 21-6   Filed 03/29/2007   Page 2 of 4

18      4. I have worked in shipyard shop planning offices, and was responsible for the

19  procurement and acquisition of materials and equipment used in the construction and repair of

20  U.S. Navy vessels. I was formerly the business agent of the International Association of Heat

21  and Frost Insulators and Asbestos Workers Union. I have been the Vice President of the Metals

22  Counsel at the Long Beach Naval Shipyard.

23      5. I am familiar with the United States Military (MIL) specification numbering system.

24  Based upon my experience, I can state that all components purchased by the U.S. military have a

25  corresponding MIL number assigned for requisition purposes. The number does not mean that

26  the specification was written by the military. The specification for a product is written by the

27  product manufacturer and merely adopted by the military for procurement designation purposes.

28  Based upon my experience, any specification provided by the military for equipment acquisition

DECLARATION OF CHARLES AY IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT WARREN PUMPS, LLC'S MOTION FOR SUMMARY JUDGMENT

1  are "performance specifications" as opposed to construction detail and material specifications.

2  The selection of the materials and the equipment design details are left to the equipment

3  manufacturer, with the expectation that the resulting design will achieve the "performance

4  specification." For example, with regard to refractories and insulation materials, the MIL

5  specification would simply specify, 1) a volume/weight ratio or mass required, and 2) a "k"

6  factor or the thermal conductivity range required. The selection of the appropriate material was

7  left to the manufacturer, with the expectation that the material chosen would achieve the

8  performance specification.

9      6. Further, it is my experience that the mag insulation used on the exterior of pumps, on

10  U.S. Navy vessel brine pumps during the early 1960s is exactly the same material used on the

11  civilian commercial vessels and land based pumps. There was absolutely no difference between

12  the asbestos mag insulation used on the Warren Pumps on Navy vessels and the asbestos mag

13  insulation used on the Warren Pumps on civilian commercial ships or land based pumps.

14      7. Based upon my experience as a certified asbestos consultant, my research of the

15  asbestos content of various insulating and refractory materials used onboard ships, my own

16  personal knowledge and experience as an insulator, my review of the aforementioned materials

17  and my review of Mr. MCINTYRE's deposition testimony, it is my opinion that, more likely

18  than not, he was exposed to airborne asbestos dust and fiber from the mag insulation used on the

19  Warren Pumps on board the USS ABRAHAM LINCOLN (SSBN-602), USS BARB (SSN-596),

20  USS GUARDFISH (SSN-612), USS HADDOCK (SSN-621), USS PATRICK HENRY (SSBN-

21  599), USS PERMIT (SSN-594), USS PLUNGER (SSN-595), USS SEAWOLF (SSN-

22  575) after the pumps were installed, and continuously thereafter, while he performed his duties in

23  the engineering spaces.

24      I declare under penalty of perjury under the laws of the State of California that the

25  foregoing is true and correct.

26      Executed on _MARCH 29_, 2007, at _SAN FRANCISCO_, California.

27

28  **BY FAX**  Charles Ay

1  ALAN R. BRAYTON, ESQ., S.B. #73685
   DAVID R. DONADIO, ESQ., S.B. #154436
2  BRAYTON❖PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   P.O. Box 6169
4  Novato, California 94948-6169
   (415) 898-1555
5  (415) 898-1247 (Fax No.)

6  Attorneys for Plaintiff

7

8              THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION                **BY FAX**

11
   EDWARD MCINTYRE,                )   No. C06-6301-WHA
12                                  )
              Plaintiff,            )   DECLARATION OF KENNETH COHEN
13                                  )   IN SUPPORT OF PLAINTIFF'S
   vs.                             )   OPPOSITION TO DEFENDANT
14                                  )   WARREN PUMPS, LLC'S MOTION FOR
   WARREN PUMPS LLC                )   SUMMARY JUDGMENT
15                                  )
              Defendant.           )   ─────────────────────────────
16                                  )
                                    )   Date:  April 19, 2007
17  ──────────────────────────────  )   Time:  8:00 A.M.
                                        Dept:  Courtroom 9
18  Case 3:06-cv-06301-WHA   Document 21-8   Filed 03/29/2007   Page 2 of 12
                                        Judge: Hon. William H. Alsup
19         I, Kenneth Cohen, declare:

20         1. I have personal knowledge of the facts set forth in this Declaration, and if called upon

21  as a witness, I could, and would competently testify as to their truth.

22         2. I am recently retired from the active practice of industrial hygiene (A.B.I.H.

23  Certification number1537). My last position was with California OSHA where I worked as an

24  inspector in its High Hazard Unit, which involved evaluation of workplace risks, including those

25  posed by asbestos.   Industrial hygienists are often called upon to evaluate toxic exposures

26  (including asbestos) retrospectively. When accidents or other toxic exposures occur, it is rarely

27  possible to do scientific measurements contemporaneously; therefore, industrial hygienists are

28  often required to use their scientific knowledge and training to estimate the nature and extent of

─────────────────────────────────────────────────────
C:\Documents and Settings\Owner\My Documents\COMMUNICATIONS\WORD\Legal\B-P\2007\San Francisco\McIntyre-07\Dec-3-29-07\dec-cohen.wpd
DECLARATION OF KENNETH COHEN

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

1   toxic exposure. I have testified in this area as an expert witness on numerous occasions. I have

2   been employed as a consultant for over 20 years to advise and evaluate working conditions at

3   facilities owned and operated by corporate clients. I have extensive experience consulting on

4   workplace asbestos exposure levels and abatement procedures within the industry, including on

5   board ships, shipyards, railroad yards, power plants, and repair facilities. My work has involved

6   monitoring employees at these facilities to determine whether they were being exposed to

7   asbestos.

8       3. Through personal research and my work as a consulting industrial hygienist for the

9   US Navy, I have specific knowledge and experience with the levels of asbestos exposure to

10  shipyard workers and workers on board Navy ships during the 1940s, 1950s, 1960s, and 1970s,

11  including individuals working in the engine rooms and boiler rooms of Navy ships. During one

12  consulting project with the US Navy I not only monitored the workers performing abatement

13  inside a containment area but also monitored areas outside the containment area in order to

14  detect escaping fiber. I found fiber did escape during the work causing contamination of adjacent

15  areas which supports the well recognized ability of asbestos fiber to migrate away from the

16  source of fiber release.

17      4. I have taught the fundamentals of industrial hygiene either as a guest lecturer or

18  faculty appointee at various institutions including, University of California, San Diego, San

19  Diego State Graduate School of Public Health, Texas A&M, Old Dominion and Syracuse. At

20  the University of California, San Diego I was on the Engineering Extension faculty as a lecturer

21  for approximately four years. I was also a lecturer at the medical school for one year teaching

22  physicians and nurses industrial toxicology. At San Diego State I taught fundamentals of

23  environmental engineering, industrial hygiene, toxicology and other similar courses. I have

24  taught courses for industrial hygienists at numerous national conferences and presented

25  workshops for occupational physicians who were board certified in industrial pulmonary

26  medicine.

27      5. As an industrial hygienist I have researched into the products which contain asbestos

28  and the manufacturers which produced these products. I am familiar with asbestos and asbestos-

1   containing products used in industrial settings and on board ships. Such products include

2   gaskets, valve packing, pump packing, thermal insulation, refractory material, fire proofing,

3   cement piping, welding gloves, welding blankets, mill board, among others. Gaskets and packing

4   in the pumps of Navy ships contained asbestos through at least the 1970's. I have studied how

5   asbestos is released into the air from these products, and how it behaves in air once released. I

6   am well familiar with the physical and aerodynamic properties of asbestos that facilitates re-

7   entrainment and resuspension of asbestos in an air space once it is contaminated.

8       6. During my career, I have tested numerous environments, including on board ships, for

9   the presence of airborne asbestos. During one assignment, while I was working as a consultant

10   to an abatement contractor, the US Navy decided to sell two World War II destroyers from the

11   mothball fleet in Suisun Bay to a foreign government. I personally tested these vessels, which

12   had been "mothballed" for a number of years, prior to any work being done to measure a base

13   line level of asbestos contamination. These vessels had no machinery or engines in operation

14   nor was work being performed on any of the insulation. The vessels' insulation was typical of

15   asbestos-containing insulation used years earlier in the 1940s, 1950s and 1960s. The turbulence

16   of movement and re-entrainment of asbestos fiber taking place on the ships resulted in detectable

17   levels of asbestos at around one million fibers per cubic foot. The levels of asbestos presented a

18   significant hazard to personnel on the ship, and would have been higher when the ship was in

19   operation or undergoing over haul, maintenance or repair work because all of these activities

20   release asbestos fiber from the disturbance of asbestos-containing materials.

21       7. I have reviewed approximately one thousand asbestos air samples taken by personnel

22   at Mare Island Navel Shipyard during shipboard activities involving asbestos products as well as

23   data from many other Naval shipyards. I have reviewed and considered numerous reports in the

24   scientific literature of asbestos air sampling from ships, including sampling on naval vessels,

25   cargo ships, barges, and tankers, and related repair and maintenance activities. I have reviewed

26   the EPA Orange books (1979) which contained information on re-entrainment of asbestos fibers.

27   All these sources and measurements confirm the vast body of research that once released into the

28   air, asbestos fibers continue to contaminate the area of initial release and will migrate away from

1  the source contaminating remote areas.

2      8. I have consulted with numerous industrial hygienists and other scientists about their

3  work involving air sampling in a variety of locations including ships. I am familiar with the

4  1992 Report of Fiber Release from Simulated Steam-Stressed Durabla Gaskets for Health

5  Hazard Evaluation by Langer and Nolan, which discusses the concentration of respirable

6  chrysotile asbestos fiber released into the air while changing steam-stressed Durabla Black

7  gaskets. This work attempts to quantify and describe the time-dependent concentration of

8  asbestos material following a release as a function of position and time in a room using the

9  indoor dispersion model. The results of this work found detectable chrysotile fibers released

10  during the changing of Durabla Black gaskets. Although the fiber count was low the results

11  support a finding that in a ship setting, the removal of multiple asbestos packing and gaskets

12  from pumps and valves would contribute to the load of asbestos fiber circulating in the engine

13  and boiler rooms.

14      9. I have testified regarding the physical properties of asbestos and the concept of fiber

15  drift, re-entrainment and fiber persistence in various state and federal jurisdictions including,

16  Washington, Oregon, California, Hawaii, Massachusetts, Texas, Virginia and Ohio. No court in

17  America has ever precluded my testimony on re-entrainment, fiber drift, and fiber persistence

18  because it is supported by empirical evidence and peer reviewed research.

Case 3:06-cv-06301-WHA   Document 21-8   Filed 03/29/2007   Page 5 of 12

19      10. Re-entrainment is a term used to describe the continuous movement of asbestos fiber

20  from a settled state on surfaces to an airborne state. Fiber drift describes the movement of

21  asbestos fiber away from an original source of fiber release. Every time asbestos fiber is re-

22  entrained it is subject to fiber drift and migration throughout a building, ship or industrial site.

23  Persistence is the most known characteristic of asbestos and describes the ability of asbestos to

24  contaminate an area for long periods of time due to the indestructibility of asbestos fibers.

25  Resistence to high heat, physical force and chemical attack is the reason asbestos fiber was used

26  in so many products. Re-entrainment, fiber drift and fiber persistence are well known and

27  accepted properties of mineral fibers, especially asbestos, by industrial hygienists, regulators,

28  scientists, abatement contractors and occupational health professionals.

1    11. The ability of asbestos to continually go through cycles of settlement and

2  resuspension is the primary reason modern abatement procedures are required to prevent initial

3  release and to capture fiber that does become airborne.  Once released, given still air, asbestos

4  fibers will eventually settle onto surfaces.  However, minimal energy inputs can resuspend

5  asbestos fiber into the air and into the breathing zone of anyone entering the contaminated space.

6  The qualities which make asbestos fiber so useful in products also make the fiber highly

7  susceptible to re-entrainment and persistence.  Such qualities include exceptional resistence to

8  thermal and chemical degradation as well as high tensile strength.  Asbestos fiber's ability to

9  remain airborne was described as early as 1936 by Phillip Drinker and Theodore Hatch from

10  Harvard School of Public Health, in their seminal book, *Industrial Dust, Hygienic Significance,*

11  *Measurement and Control.*  Their work described the longitudinal cleaving of asbestos fiber

12  causing an attraction to molecules of air which surround the fiber.  This process is unique to

13  asbestos and contributes to the buoyancy of the fiber and the tendency asbestos fiber has to

14  remain suspended in the air.

15    12. The energy inputs sufficient to lift settled asbestos fiber into the air are numerous,

16  especially in a industrial or ship based environments.  The turbulence created by the movement

17  of people is grossly underestimated.  A person walking at a brisk pace walks at about 350 linear

18  feet per minute which can generate enough energy to move or rustle sheets of paper lying on a

19  nearby desk.  This is more than enough energy to re-entrain asbestos fiber, which is orders of

20  magnitude lighter than a sheet of paper.  Beyond human traffic, equipment in industrial and ship

21  settings vibrate and rotate, causing energy sufficient to resuspend asbestos fibers into the air and

22  to further keep them suspended once airborne.  Typically clean-down procedures also contribute

23  to the resuspension of asbestos fiber.  The most common cleaning procedures used in industrial

24  and ship settings in my experience as an industrial hygienist is the use of high velocity air hoses

25  because the process quickly makes an area appear clean.  The use of high velocity air

26  significantly contributes to the re-entrainment of asbestos fiber.

27    13.  The 1991 publication, *Asbestos in Public and Commercial Buildings: A Literature*

28  *Review and Synthesis of Current Knowledge* produced by the Health Effects Institute-Asbestos

1  Research, an independent, non-profit organization, confirmed the multiple means by which

2  asbestos fibers can be released from asbestos-containing material and become airborne.

3  Such mechanisms of release include impact, abrasion, fallout, vibration and fire damage.

4      14. The property of asbestos fiber to continually cycle between settling down on surfaces

5  and being airborne, or re-entrainment, is generally accepted in the scientific community and

6  among industrial hygienists.  Various writings, textbooks and publications on industrial hygiene

7  and asbestos dust exposure, dating as early as the 1930s, have discussed the properties of

8  asbestos dust and the concept of re-entrainment.  Such sources include *Manual of Industrial*

9  *Hygiene and Medical Service in War Industries*, National Institute of Health; *Industrial Dust,*

10  *Hygienic Significance, Measurement and Control*, Philip Drinker, Theodore Hatch; *Plant and*

11  *Process Ventilation*, WC Hemeon; *Dusts, Fumes, and Mists in Industry*, National Safety News;

12  *Advances in Environmental Measurement Methods for Asbestos*, Eric Chatfield; *Asbestos and*

13  *Disease*, Selikoff and Lee; *Asbestos Awareness Training, Environmental Health & Safety*, Iowa

14  State University; *UAB Policy for Maintenance Personnel Exposed to Asbestos*; University of

15  Alabama Birmingham, Office of Occupational Health & Safety, William Davis-Director;

16  *Stanford Special Review on Health and Safety – Phase II, a Report on Allegations, 1988;*

17  Stanford University, Internal Audit Department; *Asbestos in Settled Dust: A Brief Review,*

18  David M. Feterman; International Asbestos Testing Laboratory, Frank Ehrenfeld; *On the Issue of*

19  *Microvac Sampling*, EPA World Trade Center Expert Technical Review Panel  David M.

20  Newman, May 3, 2004; *W.R. Grace Mine-Libby Montana*, Montana Environmental Information

21  Center; *Assessment of Risk of Asbestos-Related Cancer Based on an Analysis of Air and Settled*

22  *Dust Samples From the 9/11 Attack on the World Trade Center*, Environmental Science

23  Laboratory – Brooklyn College of the City University of New York, Nolan M. Ross; *Armstrong*

24  *World Industries Inc. Pltf, Cross Def. & Respondent v. Aetna Casualty & Surety Co., et. al.*

25  Court of Appeal of California, 45 Cal. App. 4th 1; 1996 Cal. App. Lexis 402; 52 Cal. Rptr. 2d

26  690; 96 Cal. Daily Op. Service 3058; 96 Daily Journal DAR 5048; *How to Recognize ACBM*,

27  Olathe KS, Unified School District; *Asbestos*, California Air Toxics Program (AB 1807) 1986 ;

28  *Asbestos Fact Sheet* University of Massachusetts; *Adequacy of asbestos removal from carpets*

DECLARATION OF KENNETH COHEN

1   *using dry-type HEPA vacuum cleners;* USEPA – Memorandum, December 7, 2001; *Public*

2   *Hearing to Consider the Adoption of a Regulatory Amendment Identifying Asbestos as a Toxic*

3   *Air Contaminant,* State of California, AIR RESOURCES BOARD, March 27, 1986; *Asbestos*

4   *Awareness Training,* Iowa State University, Environmental Health & Safety, January 1996;

5   *Simultaneous phenomenon of particle deposition and reentrainment Effects of Surface*

6   *Roughness on Deposition Layer of Striped Pattern,* Aerosol Science & Technology, Andra

7   Adhiwidjaja, Vol. 33:4 October 2000; *Asbestos: a legal primer for Air Force Installation*

8   *attorneys,* Air Force Law Review, Winter 2004, James V. Cannizzo.

9       15. Asbestos fibers are microscopic, therefore an illustration is useful to demonstrate the

10  physical properties of asbestos and the concept of re-entrainment. Imagine a kitchen in a typical

11  four member and two cat family home.  Three cups of flour are placed in the center of the

12  kitchen floor.  Each pile of flour is a different color: red, white and blue, representing asbestos

13  from three different products.  The piles are each a foot away from each other.  The residents of

14  the house go about their daily activity without concern as to the flour piles.  What happens is no

15  surprise.  The piles get kicked, stepped on, crushed, and lofted into the air.  After several dinner

16  parties and typical daily activities, the three piles have become mixed and flour particles have

17  spread throughout the house as the flour is carried away, primarily on the resident's shoes and

18  pet's hair, from the original area of contamination, the kitchen.  Some flour made it outside,

19  some is still near the original piles, but the flour is making a mess throughout the house.  In

20  addition, the larger flour particles have been broken down resulting in a greater tendency to

21  become airborne and to form as a dust above the floor line and migrate into the breathing zones.

22  Absent any direct effort to sweep and vacuum the flour, at least some of the flour would remain

23  in the house 5, 10, 15 years or longer.

24      16.  Flour is fairly fine and the particles are small, but asbestos is far smaller and, given

25  its physical properties, asbestos fiber will migrate away from the original source much more

26  quickly than the flour in the example.  However, the results are the same, a mixing of asbestos

27  fiber from multiple sources throughout a contaminated ship or building.

28      17.  The contribution of surface dust to the airborne environment from resuspension of

1    settled dust has been studied by various researchers including: Sansone (1987), Sebastine (1980)

2    and Gazzi and Cockford (1987). These studies found that increased human activity in

3    commercial buildings resulted in higher levels of airborne fiber. These results would be

4    magnified in the context of an active naval ship where disturbances of surface fiber would be

5    intense and frequent through expected cleaning procedures and heavy foot traffic on surfaces

6    which typically contain higher levels of asbestos fiber then found in commercial buildings.

7    Coupling a higher level of surface asbestos fiber from multiple sources, including packing

8    gaskets and small room sizes with limited ventilation found on ships, greatly increases the

9    concentration of airborne asbestos fiber.

10         18. Once suspended due to *any force*, asbestos fibers have a tendency to remain airborne

11   for significant periods of time. Numerous studies support this conclusion and I am not aware of

12   any credible study which refutes this property of asbestos. The very tendency of asbestos to

13   remain airborne is what creates the need for many of the abatement procedures such as wetting

14   down material, using HEPA filters and plastic sheeting.  I have personally performed empirical

15   studies evidencing the ability of asbestos to remain suspended for long periods of time.  In

16   addition to the early Orange Book study, other sources discussing the ability of asbestos dusts to

17   remain airborne include: *Manual of Industrial Hygiene and Medical Service in War Industries*,

18   National Institute of Health; *Industrial Dust, Hygienic Significance, Measurement and Control*,

19   Philip Drinker, Theodore Hatch; *Plant and Process Ventilation*, WC Hemeon; *Dusts, Fumes,*

20   *and Mists in Industry*, National Safety News; *Advances in Environmental Measurement Methods*

21   *for Asbestos*, Eric Chatfield, *Asbestos and Disease*, Selikoff and Lee; *Asbestos Awareness*

22   *Training, Environmental Health & Safety*, Iowa State University. Even frequent defense expert

23   Dr. Morton Corn's own testimony on the record and his studies evidence that, based on Stokes

24   law, asbestos fibers ranging from 10 microns to one micron, which are rather large fibers, had

25   resident times in ambient air from 10 to 100 hours. Dr. Corn also concluded that smaller fibers

26   can remain suspended for much longer time periods.  There is no dispute among industrial

27   hygienists that asbestos fibers can remain suspended for significant periods of time and when the

28   fibers do finally settle out they are subject to being re-entrained back into the air. Any opinion

DECLARATION OF KENNETH COHEN

1   contrary to this would be baseless and not supported by empirical evidence.

2       19. Dr. Corn has also testified to, and published work, showing that the removal of

3   previously undamaged or encapsulated asbestos can lead to increases in airborne concentrations

4   of fibers in buildings, sometimes for months afterwards. In the engine room and boiler room

5   spaces down in a naval ship, the concentration of asbestos is far greater than a building due to

6   the smaller space and enclosed environment. I reference the 1992 EPA study, *EPA Project*

7   *Summary-Asbestos Concentration Two Years After Abatement in Seventeen Schools*, April 1992,

8   which found significantly higher concentrations of asbestos in air samples taken at two schools

9   two years after abatement activities, compared to the levels immediately after the abatement

10  work. Finally, I am aware of calculations made by Dr. Joseph Guth, CIH, that demonstrated a

11  .01 micron long asbestos fiber would take 468 days to fall eight feet in still air.

12      20. I have considered the excerpts of the deposition testimony of EDWARD

13  MCINTYRE, and the Declaration of John Fening in Opposition to WARREN PUMPS LLC's

14  Motion for Summary Judgment.

15      21. Mr. MCINTYRE testifies that for a period of nearly fifteen years he worked in and

16  out of various Naval vessels. During his time on board he testified to working in areas where,

17  per the Declaration of John Fening, Warren Pumps were located. The Declaration of Mr. Fening

18  identifies WARREN PUMPS LP Brine Pump for the 8K Evaporator and the HP Brine Pump as

19  well as Main Condensate Pumps, the presence of asbestos-containing packing and gaskets within

20  those pumps, and the maintenance schedule that would have applied to these pumps.

21      22. Based upon my background, knowledge, training, and experience, and the

22  information referenced above, I can state with reasonable scientific certainty, appropriate to the

23  field of industrial hygiene, that EDWARD MCINTYRE was exposed to hazardous and unsafe

24  levels of asbestos fibers and dust from multiple sources, including the asbestos-containing

25  WARREN PUMPS LP Brine Pump for the 8K Evaporator and the HP Brine Pump and Main

26  Condensate Pumps. EDWARD MCINTYRE was exposed to asbestos fiber and dust generated

27  and released from the activity he describes in his deposition transcript.

28      23. In the 1950s and 1960s, when the identified vessels were constructed, the asbestos-

1  containing pumps were installed in the engineering and distillation rooms of these ships.

2      24. As the Langer and Nolan paper evidences, the removal of gaskets, a material with

3  low friability, releases asbestos fiber. The release of asbestos from packing, would be

4  significantly higher. Portions of the asbestos fiber and dust released during the removal of the

5  original packing would remain in the air spaces, subject to re-entrainment, and would be brought

6  back up into the ambient air and re-circulated, causing successive, repeated exposures during the

7  time EDWARD MCINTYRE was in these compartments, absent stringent abatement procedures,

8  which there is no evidence of.

9      25. The persistence of asbestos in an area and the gradual reduction of concentration

10  over time is known as exponential decay of asbestos. Various studies have been done by myself

11  and others tracking the change in concentrations of asbestos as time passes after an initial

12  release. As evidenced by my work on the exponential decay of asbestos contamination, asbestos

13  fiber once released, tends to contaminate an area for considerable time unless proper abatement

14  is performed. This is especially so given successive release of fiber from a particular product.

15  Initial installation, product disturbance and deterioration, and finally removal all add to the total

16  load of fiber released into an area, absent strict abatement procedures. Each incidence of fiber

17  release would represent a starting concentration. Over time the concentration of asbestos in the

18  surrounding air would decrease as the fiber drifted out of the area, settled out, or was inhaled

19  into the lungs of people. However, a successive release would start the process again adding to

20  the total amount of fiber in an area.

21      26. The reason asbestos can persist in an area so long is not only the physical

22  indestructibility of the fiber, and the cycles of re-entrainment, but also the sheer number of fibers

23  which are released. Various studies over the last 40 years, including those at the Saranac

24  Laboratory, have found that, depending on the lighting, at 10 to 100 million fibers per cubic foot

25  some degree of visibility exists. In the studies that I have performed visibility began at around

26  60 million fibers per cubic foot. In situations where asbestos containing materials are cut,

27  disturbed or removed and significant dust is observed, concentrations can easily reach hundreds

28  of million fibers per cubic foot. If one assumed a starting release concentration of 200 million

1   fibers, even an 80% reduction in concentration would leave around 40 million fibers per cubic

2   foot which would present a health hazard to all those in the area of contamination.

3     27.  Applying exponential decay of asbestos contamination to the current facts one would

4   find that the initial release of the packing and gaskets would have occurred less than 10 years

5   prior to Mr. MCINTYRE boarding the identified vessels.  The removal of packing on these

6   vessels would have been performed with a packing hook and pliers.  This activity would have

7   created visible dust and debris from the packing material.  The removal of the gaskets would

8   have been performed by scraping and brushing the gasket material from surfaces on the pumps in

9   order to completely remove the gaskets.  This activity would have created visible dust and debris

10  from the gasket material.

11    28.  Given this exponential decay of asbestos contamination, asbestos fiber and dust from

12  all sources including gaskets and packing would have been re-entrained and circulated

13  throughout these compartments via the re-circulation ventilation system and by a number of

14  activities, including cleaning, walking, minor repairs and vibration-generating movements within

15  the identified vessels engineering spaces resulting in MCINTYRE's exposure to hazardous

16  levels of respirable asbestos.

17    29.  Much like the multi colored flour described above which contaminated the whole

18  house, when EDWARD MCINTYRE came aboard the identified vessels he would have been

19  exposed to asbestos fiber from multiple sources including gaskets and packing removed from LP

20  Brine Pump for the 8K Evaporator and the HP Brine Pump as well as Main Condensate Pumps.

21  This is especially so given the frequent repair activities described by Mr. MCINTYRE and the

22  short intervals between his work.

23    I declare under penalty of perjury under the laws of the State of California, that the

24  foregoing is true and correct.

25    Executed this 29th day of March 2007, at El Cajon, California.

26

27  **BY FAX** 

28          Kenneth Cohen

C:\Documents and Settings\Owner\My Documents\COMMUNICATIONS\WORD\Legal\UI-P\007\San Francisco\McIntyre-07\Dec\3-29-07\doc\cohen.wpd
DECLARATION OF KENNETH COHEN

1   ALAN R. BRAYTON, ESQ., S.B. #73685
    DAVID R. DONADIO, ESQ., S.B. #154436
2   BRAYTON❖PURCELL LLP
    Attorneys at Law
3   222 Rush Landing Road
    P.O. Box 6169
4   Novato, California 94948-6169
    (415) 898-1555
5   (415) 898-1247 (Fax No.)

6   Attorneys for Plaintiff

7

8              THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10             SAN FRANCISCO DIVISION        **BY FAX**

11  EDWARD MCINTYRE,                )   No. C06-6301-WHA
                                    )
12            Plaintiff,            )   DECLARATION OF JOHN FENING IN
                                    )   SUPPORT OF PLAINTIFF'S
13                                  )   OPPOSITION TO DEFENDANT
    vs.                             )   WARREN PUMPS LLC.'S MOTION FOR
14                                  )   SUMMARY JUDGMENT
    WARREN PUMPS LLC                )
15                                  )
              Defendant.            )   _____
16                                  )   Date:  April 19, 2007
                                    )   Time:  8:00 A.M.
17                                  )   Dept:  Courtroom 9
    _____)   Judge: Hon. William H. Alsup

18  Case 3:06-cv-06301-WHA    Document 27-2    Filed 03/30/2007    Page 1 of 4

    I, John Fening, declare:

19
20      1. I have personal knowledge of the facts set forth in this Declaration, and if called upon

21  as a witness, I could, and would competently testify as to their truth.

22      2. I served in the U.S. Navy as a Machinist Mate between 1972-1994. During my work

23  in the navy, I developed expertise in naval maritime engineering operations, and maintenance

24  practices. I have served on board several navy combat vessels in various positions, including

    Engineering Officer of the Watch, Engineering Watch Supervisor, Senior Maintenance
25
    Supervisor, Manager, and Trouble-Shooter, as well as Senior Enlisted Advisor in Engineering
26
    Department Machinery Divisions. During my service in the navy, I achieved the rating of Senior
27
    Chief Machinist Mate, an enlisted rank of E-8. The highest rating in this classification is E-9. I
28

Side text (vertical): BRAYTON❖PURCELL LLP / ATTORNEYS AT LAW / 222 RUSH LANDING ROAD / P.O. BOX 6169 / NOVATO, CALIFORNIA 94948-6169 / (415) 898-1555

C:\Documents and Settings\Owner\Local Settings\Temporary Internet Files\Content.IE5\ZBEWJ3VI\dec-fening-DRAFT[1].wpd
DECLARATION OF JOHN FENING IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT WARREN PUMPS INC.'S
MOTION FOR SUMMARY JUDGMENT

1   was certified as a Navy Quality Control Inspector, Quality Assurance Supervisor and **IMA Test**

2   **Engineer**. I served on board the <u>USS Seawolf</u> (SSN-575), the <u>USS John Marshall</u> (SSBN-611),

3   and the <u>USS Parche</u> SSN-683 all of whom were stationed at Mare Island Naval Shipyard. I have

4   participated in several overhauls, numerous scheduled refit availabilities and select IMA

5   Maintenance Periods on naval vessels which included the final compartment paint out by Shipyard

6   Shop Painters that I assisted with while on the <u>USS John Marshall</u> in overhaul. I have worked on

7   equipment and systems in the engine rooms and auxiliary machinery spaces of naval vessels and

8   naval training facilities. This equipment has included pumps, flanges, valves, and associated

9   equipment found in the main steam propulsion plant and auxiliary components that make up the

10   bulk of the machinery division engine room spaces on naval vessels. I am familiar with and have

11   worked on a variety of Warren Pumps associated with naval nuclear power program to include

12   repacking the LP Brine Pump for the 8K Evaporator, working on the LP Brine Pump for the 2K

13   Distilling Plant as well as the HP Brine Pump.

14       3. I am knowledgeable as to the operation, maintenance and repair practices, maintenance

15   schedules, and component details of the above-referenced pumps, including packing and gaskets

16   used on naval ships and submarines. I have removed and installed hundreds of gaskets of various

17   types and styles, as well as a variety of packing materials used in an assortment of valves, pumps,

18   condensers and heat exchangers associated with steam piping, condensate and feed systems,

19   distillation system, fresh water and high pressure drains, seawater cooling as well as turbine and

20   main lubrication services associated with the auxiliary and main propulsion systems used in the

21   nuclear steam plant systems of naval vessels. It is my opinion that the gasket and packing

22   materials used in the nuclear propulsion plant systems of naval vessels constructed in the 1950s,

23   1960s, and 1970s contained asbestos-fibers according to the mil-spec for this period. That the US

24   Navy required Original Equipment Manufacturers like Warren Pump to produce and supply only

25   top quality products on their awarded contracts which is the purpose of the DOD's mil-spec

26   program to establish these material specifications.

27   ///

28   ///

4.  It is my opinion that the gasket, and pump packing material in the pumps located in the engine room and machinery spaces on nuclear submarines, including the WARREN Pumps identified by the naval records, would have contained asbestos-fibers according to the mil-spec for this period.

5.  Based upon my background, training, experience, and familiarity with the Navy's 3-M preventive maintenance program and scheduled maintenance and overhaul practices for equipment in the engine room and boiler rooms of naval vessels such as the USS John Marshall (SSBN-611), it is my opinion that, under normal circumstances, the original asbestos-containing packing in these pumps would have been removed within approximately six to eight years of the commissioning of the ship in routine overhaul and other such maintenance and repair activities and the original asbestos-containing gaskets would have been removed within approximately four to eight years of the commissioning of the ship during routine overhaul and other such maintenance and repair activities.  This repair schedule would have been maintained for the life of the pump.

6.  The removal of the packing on the pumps would have been performed with a packing hook and pliers.  This activity would have created visible dust and debris from the packing material.  The removal of the gaskets would have been performed by scraping and brushing the gasket material from the surfaces on the pumps in order to completely remove the gasket.  This activity would have created visible dust and debris from the gasket material.  In my experience, some of this debris from the packing and gaskets being removed would have become airborne from the removal practices, and clean up methods used.  That this asbestos containing debris would have settled on horizontal surfaces and piping in the engineroom and machinery spaces of nuclear submarines requiring the Shipyard Shop Painters to clean this debris prior to painting and beautification of the compartment at the end of the overhaul period.

7.  It has been my experience that the ventilation systems on board naval vessels of this period were a recirculation type system, where fresh air was imported into the engineering spaces in one or two locations, and then recirculated through the entire space using a variety of fans and

1   ducting.  This tended to confine contaminates such as asbestos fibers in the engineering spaces,

2   because there was no mechanism to filter these types of entrained fibers from the air.

3        8.  I have considered both the deposition testimony of Edward McIntyre and various

4   National Archives documents evidencing Warren Pumps existence on several boats identified by

5   Mr. McIntyre, including USS ABRAHAM LINCOLN (SSBN-602), USS BARB (SSN-596),

6   USS GUARDFISH  (SSN-612), USS HADDOCK (SSN-621), USS PATRICK HENRY (SSBN-

7   599),  USS PERMIT (SSN-594), USS PLUNGER (SSN-595), USS SEAWOLF (SSN-575).

8   Given the commissioning dates of these vessels and the time period identified by Mr. McIntyre for

9   his work (the mid to late 1970s) that the pumps on board these boats would have been

10  overhauled, having the packing and gaskets removed at least once, if not on multiple occasions.

11       I declare under penalty of perjury under the laws of the State of California, that the

12  foregoing is true and correct.

13       Executed this _29_ day of March, 2007, at Bremerton, Washington.

14

15  **BY FAX** _____

16                              John Fening

17

18  Case 3:06-cv-06301-WHA    Document 27-2    Filed 03/30/2007    Page 4 of 4

19

20

21

22

23

24

25

26

27

28

ALAN R. BRAYTON, ESQ., S.B. #73685
DAVID R.  DONADIO, ESQ., S.B. #154436
BRAYTON❖PURCELL LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, California   94948-6169
(415) 898-1555
(415) 898-1247 (Fax No.)

**Attorneys for Plaintiff**

BRAYTON❖PURCELL
222 RUSH LANDING
ROAD
NOVATO,
CALIFORNIA
94948-6169
(415) 898-1555

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EDWARD MCINTYRE,<br><br>Plaintiff,<br><br>vs.<br><br>WARREN PUMPS LLC<br><br>Defendant. | No. C06-6301-WHA<br><br>DECLARATION OF RICHARD COHEN IN OPPOSITION TO DEFENDANT WARREN PUMPS LLC'S MOTION FOR SUMMARY JUDGEMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION<br><br>Date:   April 19, 2007<br>Time:  8:00 A.M.<br>Dept:   Courtroom 9<br>Judge: Hon. William H. Alsup |

Case 3:06-cv-06301-WHA     Document 36     Filed 04/18/2007     Page 1 of 40

I, Richard Cohen, M.D., M.P.H., declare:

i)   I am a licensed physician and am currently a Clinical Professor in the Division of
Occupational and Environmental Medicine in the Department of Internal Medicine at the
University of California San Francisco School of Medicine.   Additionally, I have a private
practice in Occupational Medicine and Industrial Toxicology.   I am certified by the American
Board of Preventative Medicine in General Preventive Medicine and Occupational Medicine.

ii)   I have researched and published numerous articles on occupational health and
industrial toxicology.   This research includes the area of asbestos, what was known about the
health hazards of asbestos, and when such information would have been reasonably known.

1     iii)   I been qualified as an expert and have testified in numerous asbestos cases regarding

2    the above, especially with regard to issues of when knowledge of the health hazards of asbestos

3    became available; generally recognized as "asbestos state-of-the-art."

4     iv)   Attached hereto as Exhibit A is a current *Curriculum Vitae*, which fairly summarizes

5    my professional and educational background, as well as lists some of my professional publications.

6     v)   In the course of my study of the historical documents relating to the asbestos industry

7    and use of asbestos, I have personally assembled a chronology of major publications, all prior to

8    1952, regarding the health hazards of asbestos.   I am not aware of a single document which

9    indicates that any manufacturer, including Warren Pumps, took affirmative action to   warn the

10   United States Navy of the dangers associated with its products as a result of those products

11   incorporating asbestos-containing materials as a component part.   In fact, as late as 1969,

12   Raybestos-Manhattan, Inc. represented to Dr. M. Anmuth, Project Engineer Naval Ship

13   Engineering Center in Philadelphia, Pennsylvania, that, "We feel the meager data available

14   concerning the hazards of working with or around asbestos is not convincing enough one way or

15   the other to justify a program designed to eliminate the use of asbestos in shipboard insulation."

16   Attached hereto as Exhibit A to this declaration are true and accurate copies of asbestos industry

17   letters and re-typed legible copies of same.

18    vi)   The document titled, "Occupational Health Hazards; Release No. 29", originated in

19   1961.   This document addressed a broad spectrum of health and safety concerns in shipyards,

20   from sanitation to the handling of flammable, volatile, or otherwise dangerous materials.   The

21   section I(A)1 & 2 which defendant relies upon is in actuality a launch into addressing over eighty

22   (80) occupational hazards.   Of the entire 60 pages of text only some 17 lines address "asbestos

23   and asbestosis."   There is no warning in the "Occupational Health Hazards; Release No. 29" of

24   the danger of asbestos as a carcinogen.   There is no warning that asbestos causes lung cancer.

25   There is no warning that asbestos causes mesothelioma.

26    vii)   Based upon my research, education and experience, it is my opinion that by 1952 it

27   was very clear that breathing airborne asbestos would cause asbestosis and that asbestos was a

DECLARATION OF RICHARD COHEN IN OPPOSITION TO DEFENDANT WARREN PUMPS, L.L.C.'S MOTION FOR SUMMARY
JUDGEMENT

1   hazard in a number of occupational settings.   Further, it is my professional opinion that by 1952

2   it was clear that, regardless of the setting, a person exposed to airborne asbestos was at increased

3   risk of developing cancer.

4          viii)   During the course of my work, professional studies, and while testifying as an

5   expert witness in asbestos-related lawsuits, I have not seen or heard of any evidence that Warren

6   Pumps warned the United States Navy of the dangers associated with the asbestos-containing

7   materials incorporated into its pumps.   I have seen no evidence indicating that prior to the 1970s

8   any manufacturer warned the United States Navy that asbestos was a carcinogen.   I have seen no

9   evidence indicating that prior to the 1970s any manufacturer warned the United States Navy that

10  asbestos caused mesothelioma.

11         I declare under penalty of perjury under the laws of the States of California, that the

12  foregoing is true and correct.

13

14  Executed this *13* day of *APRIL*, 2007, at *SARATOGA*,

15

16  Case 3:06-cv-06301-WHA    Document 36    Filed 04/17/2007    Page 3 of 40
                                        Richard Cohen, M.D., M.P.H.

17

18

19

20

21

22

23

24

25

26

27

28  C:\DOCUMENTS AND SETTINGS\RICH\LOCAL SETTINGS\TEMPORARY INTERNET FILES\OLK9\DEC R COHEN.WPD 3
    DECLARATION OF RICHARD COHEN IN OPPOSITION TO DEFENDANT WARREN PUMPS, L.L.C.'S MOTION FOR SUMMARY
    JUDGEMENT

## CURRICULUM VITAE

Richard Cohen, M.D., M.P.H.

P. O. Box 3717
Saratoga, CA  95070
(408) 395-9379 (Office)

### EDUCATION

| | | |
|---|---|---|
| College | University of Michigan | 1964-1967 |
| Medical School-M.D. | University of Michigan | 1967-1971 |
| Internship | General Rose Memorial Hospital Denver, CO (Rotating) | 1971-1972 |
| Graduate Degree-M.P.H. | University of California, Los Angeles School of Public Health; (Epidemiology) | 1974-1975 |
| Residency | University of California, Los Angeles, School of Public Health (Preventive and Occupational Medicine) | 1974-1977 |

### LICENSE

| | |
|---|---|
| California, | 1973 |

### BOARD CERTIFICATION

American Board of Preventive Medicine
- General Preventive Medicine    1977
- Occupational Medicine    1982

### HONORARY SOCIETIES AND AWARDS

William J. Brenstrom Memorial Prize, University of Michigan, 1967
Delta Omega Society, UCLA, 1975
American College of Preventive Medicine, 1977
American Academy of Occupational Medicine, 1984

### WORK EXPERIENCE:

Private Practice of    1981-Present
Occupational Medicine and Industrial Toxicology

Provide consultative services to industrial and other clients regarding occupational medicine and industrial toxicology. Included are interpretation and application of OSHA occupational health standards, and workplace assessment and recommendations regarding existing health hazards; interpretation of industrial hygiene data with assessment of health risk; recommendations for preplacement, periodic or other medical surveillance evaluations; review and approval of protocols and procedures for diagnosis and primary care by occupational health nurses and other

Richard Cohen  MD  MPH    1

---

first responders; interpretation of biological monitoring and medical surveillance data with recommendations, where appropriate, for further actions regarding health hazard identification and control; development of administrative policies and procedures for management of occupational health programs; analysis of injury and exposure data with recommendations, where indicated; development of programs for management and employee training in medical, safety and industrial hygiene; assistance with the development, and implementation of occupational health programs including patient evaluation, toxicity assessment, employee assistance and workers' compensation claims management; research or investigation in industrial toxicology including investigation of illness clusters, ergonomic exposures and scientific literature review; provide expert testimony in epidemiology and industrial toxicology; individual patient evaluation to determine the presence of acute or chronic occupational illness; assessment and primary care of acute exposure to toxic substances; evaluation of job related disabilities in conjunction with workplace ergonomic or chemical exposure; performance of preplacement and/or medical surveillance physical examinations with interpretation of laboratory data. Teaching medical professionals industrial toxicology, response to industrial medical emergencies, industrial spirometry, medical aspects of noise induced hearing loss and physical assessment for nurses.

Clinical Professor    1998-Present
Division of Occupational and Environmental Medicine,
Department of Internal Medicine
School of Medicine
University of California, San Francisco

Provide lectures/rounds as part of post doctoral training to physicians on subjects including occupational infections, ionizing radiation, non-ionizing radiation, preventive health programs, genetic screening, health hazards of biotechnology, and occupational medicine practice; serve as a mentor to occupational medicine residents for operational research and occupational medicine practice.

Director, Corporate Health & Safety  Varian Associates, Inc.    1981-1999

Direct corporate medical, safety, industrial hygiene, and loss prevention programs and functions at a Fortune 500 diversified electronics manufacturing firm.  Manage a staff of occupational health nurses, industrial hygienists, safety and fire professionals and administrative support personnel.  Provide counsel and technical expertise to line management including the development of company-wide policies and procedures. Fulfill responsibilities of the Medical Director and provide expertise in occupational medicine and in industrial toxicology.  Supervise and conduct health and safety audits including assessment of compliance with OSHA and company health and safety requirements with recommendations to achieve compliance where indicated.  As a direct report to the Vice President of Human Resources, participate as an active member of the Human Resource executive staff interacting with all other major corporate functions and executives.

Director of California Occupational    1980-1981
Medical Consultants

Develop, implement and direct Fit-Med, an executive health examination and counseling center; provide occupational medicine consultation similar to that described above under "Private Practice".

Assistant Chief Environmental Health Service(Active Duty-Commander, USN)    1977-1980
Naval Regional Medical Center
San Diego

Commander, United States Navy, Medical Corps, acting as infectious disease and occupational health epidemiologist for shore-based active duty Navy and civilian facilities in San Diego; provide technical and administrative guidance to the occupational medicine program servicing approximately 90,000 military and 30,000 civilian workers in San Diego; clinical evaluation of patients referred from other physicians for possible

Richard Cohen  MD  MPH    2

---

occupational illness; teaching industrial toxicology and occupational medicine to physicians, nurses, safety personnel and line supervisors; provide counsel to senior and flag officers regarding preventive and

occupational medicine; instructor in industrial toxicology at San Diego Community College and UCSD; clinical instructor University of California San Diego, School of Medicine; management of a department which included 8 industrial hygienists, approximately 15 sanitarians, 2 nosocomial infection nurses, industrial hygiene laboratory staff and administrative support personnel.

Residency-Preventive and Occupational Medicine  1974-1977

Completed a residency in preventive and occupational medicine at the UCLA School of Public Health. The first year included achievement of a Masters in Public Health specializing in epidemiology. The second and third years consisted of field experience including assignments as the Assistant Chief of the Long Beach City Health Department, consultation to the Long Beach Naval Shipyard in occupational health and epidemiology, consultation to the Los Angeles Department of Health Services in Infectious Disease and Public Health Administration and work as the nosocomial infection epidemiologist for LA County-USC Medical Center.

Kaiser Permanente, West Los Angeles    1975-1977
Urgent Care Clinic Physician

Diagnosis and treatment of non-traumatic adult medical illness.

General Medical Officer, U.S. Navy(Lt)    1972-1974

General practice of medicine aboard ship and ashore including emergency medicine.  (Active duty Lieutenant, MC, USNR)

### PROFESSIONAL ORGANIZATIONS

American College of Toxicology, 1980-2002
American Occupational Medicine Association, 1979-1989
American Industrial Hygiene Association, 1983-1991
Western Occupational Medicine Association, 1979-2004
Western Occupational Medicine Association Board of Directors, 1985-1989
American College of Occupational and Environmental Medicine 1989-2004

### PROFESSIONAL/COMMUNITY ACTIVITIES

Environmental Health Task Force, San Diego Lung Association, 1978-1980
Epidemiology Masters Degree Committee, UCSD, School of Medicine, 1978-1980
Cal/OSHA Advisory Committee on Trichloroethylene, 1980-1981
Bay Area Electronics Safety Group, 1980-1990
University of California, San Francisco, School of Medicine, Occupational Medicine Residency Advisory Committee, 1984-1986, 1999-.
Cal/OSHA Director's Advisory Committee, 1985-1987, 1990-1991
Cal/OSHA Airborne Contaminants Advisory Committee, 1997-2004
UCSF Occupational Medicine Residency Curriculum Committee, 1998-1999
Editorial Advisor (Manuscript Reviewer), International Journal of Occupational and Environmental Health, 1995-2004
Editorial Advisory Board, Official Disability Guidelines, 1997-.

Richard Cohen  MD  MPH    3

---

### PUBLICATIONS

Cohen, R., Mackey, K., Hymenolepis Diminuta Unresponsive to Quinacrine,
West J. Med., 127: 340-341, October 1977

Coyne, J., Cohen, R., Computer Assistance of the Infection Control Practitioner.  Presented at the annual meeting of the Association of Practitioners of Infection Control, Houston, May 1979

Cohen, R., Industrial Toxicology:  A Practical Approach,
Occupational Health Nursing, 28:9-12, June 1980

Cohen, R., Occupational Biologic Hazards,
Occupational Health Nursing, 28:20-24, August, 1980

Cohen, R., Responding to Toxic Exposure Emergencies,
Occupational Health and Safety, 49:35-37, October 1980

Cohen, R., Organic Solvents:  Avoiding Unsafe Solutions,
Occupational Health and Safety, 50:14-19, May 1981

Cohen, R., Occupational Lung Disease, Pneumoconioses,
Occupational Health Nursing, 29:10-13 April 1981

Cohen, R., Toxic Exposures - What To Do,
National Safety News, 124:59-61, October 1981

Cohen, R., Toxicology of Industrial Metals - Inorganic Lead,
Occupational Health Nursing, 30:25-28, November 1982

Cohen, R., Medical Surveillance - Which Tests?
Occupational Health Nursing, 32:244-247, May 1984

Cohen, R., Reversible Subacute Ethylene Glycol Monomethyl Ether Toxicity Associated with Microfilm Production:  A Case Report,
American Journal of Industrial Medicine, 6:441-446, 1984

Cohen, R., Radiofrequency and Microwave Radiation in the Microelectronics Industry, Occupational Medicine:
State of the Art Reviews, The Microelectronics Industry, 1(1):145-154,
January 1986

Palchak, RB, Cohen, R., Ainslee, M., Hoerner, CL, Airborne Endotoxin Associated with Industrial-Scale Production of Protein Products in
Gram Negative Bacteria, Am. Ind. Hyg. Assoc. J., 49(8):420-421, 1988

Palchak, RB, Cohen, R., Hoerner, CL, Ainslie, M., Letter,
American Industrial Hygiene Association Journal (50), A-596, August 1989

Cohen, R., Adams, R., Radiation, (in) Occupational Skin Disease,
2nd Edition, Adams, R., 65-72, W.B. Saunders 1990

Cohen, R., Injuries Due to Physical Hazards, Chapter 11, (in) Occupational Medicine, LaDou, J. (ed.), 106-131, Lange, 1990

Cohen, R., Occupational Infections, Chapter 15, (in) Occupational

Richard Cohen  MD  MPH    4

Medicine, LaDou, J. (ed.), 170-182, Lange, 1990

Palchak, RB, Cohen, R, Jaugstetter, J, A Threshold for Airborne Endotoxin Associated with Industrial-Scale Production of Proteins in Gram-Negative Bacteria Developments in Industrial Microbiology, Vol. 31:199-203, 1990

Cohen, R , Hoerner, CL, Occupational Health Perspective: Recombinant DNA Technology, BioPharm, 7(5):28-40, June, 1994

Cohen, R., Wald PH, Microwave, Radiofrequency and Extremely-Low-Frequency Energy, Chapter 15, in Physical and Biological Hazards of the Workplace, Wald PH, Stave GH. Van Nostrand Reinhold, New York p.203-315, 1994

Cohen Richard, Balzer Kameron, Industrial Toxicology, Chapter 6 (in) Fundamentals of Industrial Hygiene, 4th Edition, Plog, BA, Niland, J, Quinlan, PJ (eds.), National Safety Council, Itasca Illinois, p123-152, 1995

Cohen, R., Moellekin B., Disorders Due to Physical Agents, Chapter 37, Current Medical Diagnosis and Treatment, 1365-1385, Lange, 1996 (and all subsequent editions through 2000).

Cohen Richard, Hoerner Carol, Recombinant DNA Technology: A 20-Year Occupational Health Retrospective, Reviews on Environmental Health 11:149-165, 1996

Cohen, R., Ergonomics Program Development: Prevention in the Workplace, AIHA Journal (58):145-149, 1997

Cohen R, Radiation Effects, Physical Causes and Radiation Effects, Chapter 3, in)Adams R, Occupational Skin Disease, 3rd Edition, , 58-64, W B Saunders, 1999.

Cohen R, Wald PH, Microwave, Radiofrequency and Extremely Low Frequency Energy, Chapter 15, (in) Physical and Biological Hazards of the Workplace, 2nd Edition, Wald PH, Stave GM, (eds), 267-279, Wiley, 2002.

Cohen R, Industrial Toxicology, Chapter 6, (in) Fundamentals of Industrial Hygiene 5th Edition, Plog BA(ed), 123-148, National Safety Council Press, 2002.

Cohen R, Injuries Due To Physical Hazards, Chapter 11, (in) Current Occupational & Environmental Medicine, LaDou, J. (ed.), 122-152, McGraw-Hill, 2004

Cohen R, Estaco PL, Occupational Infections, Chapter 17, (in) Current Occupational & Environmental Medicine, LaDou, J. (ed.), 268-286, McGraw-Hill, 2004

Cohen R, Moellekin B, Disorders Due to Physical Agents, Chapter 38, Current Medical Diagnosis and Treatment, 2006, 45rd Edition, 1589-1606, McGraw Hill, 2006.

Cohen R, et al, Development of Permissible Exposure Limits: the California Experience. Int J Occup Environ Health 2006; 12:242;247.

Richard Cohen  MD  MPH                                              5

---

Richard Cohen MD MPH
May 1, 2005

BIBLIOGRAPHY

Richard Cohen, M.D., M.P.H.
May 1, 2005

Annual Report of the Chief Inspector of Factories and Workshops, 1898, Part II, p. 171-2, H.M. Stationery Office

Effect of Asbestos Dust on Workers' Health in Asbestos Mines and Factories, The Labour Gazette, 1912 Feb; p.761-762.

Hoffman, FL, Mortality From Respiratory Diseases in Dusty Trades (Inorganic Dusts), U.S. Dept of Labor, Bureau of Labor Statistics, 1918; 231:35-47 and 163-181.

Cooke, WE, Fibrosis of the Lungs Due to the Inhalation of Asbestos Dust. British Medical Journal, Memoranda, 1924 July 26, p. 147.

Cooke WE, Pulmonary Asbestosis. British Medical Journal 1927 Dec 3; p. 1024-1025.

McDonald S, Histology of Pulmonary Asbestosis. British Medical Journal 1927 Dec 3; p.1025-26.

Oliver T, Clinical Aspects of Pulmonary Asbestosis. British Medical Journal 1927 Dec 3; p. 1026-27.

Fellowship and Subscription Dues Now Payable, Association News, JAMA 1928 Dec 13.

Pulmonary Asbestosis, Journal of the American Medical Assn. (editorial) 1928, 90(2): 119-120.

Simson RW, Pulmonary Asbestosis in South Africa, British Medical Journal 1928, p. 885-887.

Haddow AC, Asbestos Dust, Lancet 1929 Aug 3; p.230-231.

Wood WB, Pulmonary Asbestosis, Tubercle 1929 May10; p.353-363.

Asbestos: A Monthly Market Journal, 1930 Mar; 11(9).

Health and Industrial Hygiene   Pulmonary Asbestosis, Monthly Labor Review, U.S. Bureau of Labor Statistics, 1930; 31:74-6.

1

---

Richard Cohen MD MPH
May 1, 2005

Journal of American Medical Assn. Foreign Letters, Compensation Act to be Extended to Asbestosis, 1930 June 28; p.2078.

Journal of American Medical Assn., Current Comment, Pulmonary Asbestosis, 1930; 95(19):1431.

Merewether, ERA, The Occurrence of Pulmonary Fibrosis and Other Pulmonary Affections in Asbestos Workers, J Industrial Hygiene 1930 May; 12(5):198-257; Jun; 12(6):239-257.

Merewether ERA, Price CW, Report on Effects of Asbestos Dust on the Lungs and Dust Suppression in the Asbestos Industry. His Majesty's Stationery Office, London, 1930; p.1-34.

Mills RG, Pulmonary Asbestosis: Report of a Case. Minnesota Medicine 1930 Jul; 495-9.

Occupation and Health   Encyclopedia of Hygiene, Pathology and Social Welfare Vol I, A-H, International Labour Office, Geneva, 1930; p.189-191.

Asbestos Dust in Factories, London Times, July 17, 1931.

Asbestos Industry. Law U.K. Regulation, Asbestos Industry 1931; 1140:181-185.

Gardner LU, Cummings DE, Studies on Experimental Pneumoconiosis. VI. Inhalation of Asbestos Dust: Its effect upon Primary Tuberculous Infection. Journal Industrial Hygiene 1931 Feb; 13(2):65-114; 1931 Mar; 13(3):97-114.

Stewart HL, Bucher CJ, Asbestosis: Report of two cases. Arch Path 1931; 12:909-16.

Willson R, The very Least an Employer Should Know About Dust and Fume Disease. Safety Engineering 1931 Nov; 62(5):317-318.

Gordon B, Pulmonary Asbestosis. Pennsylvania Medical Journal 1932 June; 35:637-9.

Memorandum on the Industrial Disease of Silicosis and Asbestosis. His Majesty's Stationery Office, London, 1932; 1-17.

Recent Studies of Pulmonary Asbestosis in Germany, US Bureau of Labor Statistics, Monthly Labor Review 1932; 35(9-3):541-2.

Wilcox FM, Industrial Commission of Wisconsin, Proceedings of Conference Concerning Effects of Dusts Upon the Respiratory System, 1932; p.167-207.

Donnelly J, Pulmonary Asbestosis, Am J Pub Hlth 1933; 23:1175-1281.

2

---

Richard Cohen MD MPH
May 1, 2005

Merewether ERA, Memorandum on Asbestosis. Tubercle 1933 Nov; p.69-81; Dec:p.100-118; 1934 Jan:p.152-159.

Asbestos, The Industrial Bulletin, 1934 Apr; 13(4):95.

Ellman P, Pneumonoconiosis Part III – Pulmonary Asbestosis. Br J Radiology 1934 May; 7:281-295.

Wood WB, Gloyne SR, Pulmonary Asbestosis, The Lancet, 1934 Dec 22; p.1383-1385.

Bloomfield JJ, When is Dust Control Effective? National Safety News 1935 Dec; p.17-18,64.

Fulton WB, et al, Asbestosis, Commonwealth of Pennsylvania, Dept Labor and Industry, Special Bulletin 1935 Sep 20; 42:1-35.

Gloyne SR, Two Cases of Squamous Carcinoma of the Lung occurring in Asbestosis. Tubercle 1935 Oct; p.5-10.

Hurlbut CS, Williams CR, The Mineralogy of Asbestos Dust. J Ind Med 1935 Nov; 17(6):289-293.

Lanza AJ, et al, Effects of the Inhalation of Asbestos Dust on the Lungs of Asbestos Workers. Public Health Reports 1935 Jan 4; 50(1):1-12.

Lynch KM, Pulmonary Asbestosis III: Carcinoma of Lung in Asbestos-Silicosis, Am J Cancer 1935; 24:56-64.

Proceedings of the Fifteenth Annual Meeting of the Assoc of Am Railroads, Medical and Surgical Section, June 10-11, 1935.

Wood WB, Gloyne SR, Pulmonary Asbestosis: A Review of One Hundred Cases. Ind Hygiene 1935 Apr; 10(4):219-220.

Kintz GM, Forler HC, Some Problems of Respiratory Protection in the Petroleum Industry with Suggestions for their Solution. US Bureau of Mines, Information Circular, 1936 Nov, p. 1-12.

Lanza AJ, Dust Diseases as They Affect the Construction Industry, Transactions of the 25th National Safety Congress, National Safety Council 1936; p.244-246.

Meller HB, Air Contaminants that Affect Health. National Safety News 1936 Dec; 34(6):34-36.

Sappington CO, Banish the Dust Hazard. Mill & Factory 1936 Mar; 69-71, 150-151.

3

Richard Cohen MD MPH
May 1, 2005

Proceedings of the Association of American Railroads, Medical and Surgical Section, 1937, p.20.

Bonsib RS, Dust Producing Operations in the Production of Petroleum Products and Associated Activities. Standard Oil Company Bulletin July 1937; p.1-82.

Page RT, Bloomfield JJ, A Study of Dust Control Methods in an Asbestos Fabricating Plant. U.S. Public Health Reports 1937 Nov 26; p.1713-1727.

Occupational Disease Hazards – Asbestos. The Employers' Group, Engineering Manual 1937 Jun1; p.i-ii.1-2.

Dreessen WC, A Study of Asbestosis in the Asbestos Textile Industry. Public Health Bulletin No 241, U.S. Treasury Dept, August 1938, p.1-126.

Lanza AJ, Silicosis and Asbestosis, Oxford University Press, 1938; p.22-23, 58-63, 174-175, 244-7, 384-391, 400-401, 418-421.

Nordmann M, Occupational Cancer in Asbestos Workers. Abstract of the Literature of Industrial Hygiene, Supplement to J Industrial Hygiene and Toxicology 1938; 20:184.

Asbestosis, Encyclopaedia Americana, 1939.

Industrial Dust, National Safety Council, Health Practices Pamphlet, Number 4, 1939; p.1-11.

George AW, Leonard RD, An X-ray Study of the Lungs of Workmen in the Asbestos Industry, Covering a Period of Ten Years. Radiology 1939 Aug; 33:196-202.

Silicosis. 1939 Technical Book of the Year.

Asbestosis in Brake-Belt Grinders and Drillers. Government Counsel for Industry Dr.med Brachmann, Dresden, 1940.

Dublin LI, Vane RJ, Occupation Hazards and Diagnostic Signs – A Guide to Impairments to be Looked for in Hazardous Occupations. U.S. Dept Labor, Division of Labor Standards, Bulletin No. 41, 1941, p.2,4, 25.

Holleb HB, Bronchiogenic Carcinoma in Association with Pulmonary Asbestos. Am J Pathology 1942; p.123-131.

Kuhn A, Illness Among Dock Workers at Wilhelmshaven with Special Reference to Industrial Accidents and Diseases (from 1930 to 1938), Bulletin of Hygiene, 1942;17(12):819-821.

4

---

Richard Cohen MD MPH
May 1, 2005

Minimum Requirements for Safety and Industrial Health in Contract Shipyards, U.S. Gov Printing Office, 1943, p.1-35.

Minimum Requirements for Safety and Industrial Health in Contract Shipyards, Journal of Industrial Medicine 1943 Apr; 12(4):259-260.

Environmental Cancer, Editorial, JAMA 1944 Nov 25; 126:836.

Hutchinson FW, Dust as an Industrial Health Hazard. Heating and Ventilating 1944 Jun; 41(6):34, 57-61.

Wedler HW, Asbestosis and Pulmonary Carcinoma. Bulletin of Hygiene 1944 May; p.362.

Proceedings Tenth Annual Meeting of Industrial Hygiene Foundation of America, Inc., Part IV, Nov 14-15,1945.

Annual Report of chief Inspector of Factories for the Year 1945, His Majesty's Stationery Office, London, 1946, p.13-14.

Fleischer WE, A Health Survey of Pipe Covering Operations in Constructing Naval Vessels. Journal of Industrial Hygiene and Toxicology 1946; 28(1):9-16.

Hemeon WCL, Report of Preliminary Dust Investigation for Asbestos Textile Institute, Industrial Health Foundation of America, June, 1947 Pittsburgh.

Lynch KM, Asbestosis: VI. Analysis of Forty Necropsied Cases, Diseases of the Chest 1948 Nov-Dec; XIV:874-889.

Annual Report of the Chief Inspector of Factories For the Year 1947. His Majesty's Stationery Office, London, 1949 p.79-81.

Asbestosis and Cancer of the Lung. Editorial, JAMA 1949 Aug 13; p.1219-1220.

Canepa G, Asbestosis in Port Workers. Journal of Legal Medicine and Insurance 1949 Jul-Dec; XII(Second Series)(3-4):188-205.

Conklin G, Cancer and Environment. Scientific American 1949; 180(1):11-15.

Kaempffert M, What We Know about Cancer. New York Times June 26, 1949. SM 14.

Report of the Secretary: Membership and Fellowship. JAMA 1949 Nov 5; 141(10):665.

Wyers H, Asbestosis. Postgraduate Medical Journal 1949 Dec; p.631-638.

5

---

Richard Cohen MD MPH
May 1, 2005

Hueper WC, Environmental Cancer Hazards Caused by Industrial Air Pollution, Archives of Industrial Hygiene and Occupational Medicine, 1950; 2:325-328.

Hueper WC, A Methodology for Environmental and Occupational Cancer Surveys. Public Health Technical Monograph No. 1, 1950;1-37.

Vorwald AJ, Pneumoconiosis. Paul B. Hoeber, Inc. 1950, p.567-573.

Owen TK, Carcinoma and Asbestosis of the Lung: Report of a Case. Br J Cancer 1951; 5(4):382-383.

Stoll R, Bass R, A, Angrist AA, Asbestosis Associated with Bronchogenic Carcinoma: Case Reports, A.M.A. Archives of Internal Medicine 1951; p.831-834.

Bohme A, Results of Periodical Examinations of Workers in an Asbestos Factory. Occupational Hygiene and Toxicology 1951; 26(5):511.

Chapman JS, Principles of Internal Medicine The Blakiston Company, Philadelphia, 1951, p.770-772.

Gloyne ST, Pneumoconiosis: A Histological Survey of Necropsy Material in 1205 Cases, Lancet 1951 Apr 14; p.810-814.

Vorwald AJ, Experimental Studies of Asbestosis. Archives of Industrial Hygiene and Occupational Medicine 1951 Jan; 3(1):1-43.

Encyclopaedia Britannica, 1952, Volume 4, p.731.

Symposium on the Endemiology of Cancer of the Lung, Council of the International Organizations of Medical Sciences, Louvain, Belgium, July 21-24, 1952.

Isselbacher KJ, Asbestosis and Bronchogenic Carcinoma. American Journal Medicine 1953 Nov; p.721-732.

Physician Says Smoking May Cause Lung Cancer. Los Angeles Times January 23, 1953; 21.

Weiss, A, Pleurakrebs bei Lungenasbestos, In vivo Morphalogische Gesichert. (Cancer of the Pleura in Conjunction with Lung Asbestosis Morphologically Proven in Vivo.) Die Medizinische 1953 Jan 17; 3:93-94.

Bonser GM, Occupational Cancer of the Urinary Bladder in Dyestuffs Operatives and of the Lung in Asbestos Textile Workers and Iron-Ore Miners. Am Journal of Clinical Pathology 1955 Feb; 25(2):126-134.

6

---

Richard Cohen MD MPH
May 1, 2005

Doll R, Mortality from Lung Cancer in Asbestos Workers. British Journal Industrial Medicine 1955; 12:81-86.

Illson M, Cancer of the Lungs Called 'Epidemic'. New York Times June 3, 1955; 25.

Silicosis, Asbestosis and Cancer of the Lung. Am J of Clinical Pathology (editorial) 1955 Dec; 25(12):1388-1390.

Frost J, Georg J, Moller PF, Asbestosis with Pleural Calcification among Insulation Workers.Danish Medical Bulletin 1956 Nov; 3(7):202-204.

Thomas DLG, Asbestosis. The Medical Journal of Australia. 1957 Jan 19; p.76-77.

Asbestos. Industrial Hygiene Journal 1958 Apr, p.161-163.

Braun DC, Truan TD, An Epidemiological Study of Lung Cancer in Asbestos Miners. A.M.A. Archives of Industrial Health 1958 Jun; 17:634-653.

Bishop JE, Technology's Advance Boosts On-job Health Problems for Industry. Wall Street Journal April 7, 1959; 1.

Job Relationship to Cancer Sought. New York Times April 7, 1959; 30.

Dunn ED Jr, Linden G, Breslow L, Lung Cancer Mortality Experience of Men in Certain Occupations in California. American Journal of Public Health 1960; 50:1475-1487.

Eisenstadt HB, Wilson FW, Primary Malignant Mesothelioma of the Pleura. The Journal-Lancet 1960 Nov; p.511-514.

Flemming AJ, D'Alonzo CA, Modern Occupational Medicine:1960; p.463-470

Keal EE, Asbestosis and Abdominal Neoplasms. The Lancet 1960 Dec 3; p.1211-1216.

Wagner JC, Diffuse Pleural Mesothelioma and Asbestos Exposure in the North Western Cape Province. Brit J Industr Medicine 1960; 17:260-271.

Hueper WC, Carcinogens in the Human Environment. Archives of Pathology 1961 Mar; 71:237-267.

Cordova JF, Asbestosis and Carcinoma of the Lung. Cancer 1962 Nov; 15(6):1181-1187.

Wagner JC, Experimental Production of Mesothelial Tumours of the Pleura by Implantation of Dusts in Laboratory Animals. Nature 1962 Oct 13; 196(4850):180-181.

7

Richard Cohen MD MPH
May 1, 2005

Wagner JC, Histochemical Demonstration of Hyaluronic Acid in Pleural Mesotheliomas. J Path Bact 1962; 84(73):73-78.

Construction Health Hazards. Michigan's Occupational Health, Michigan Dept Health 1963 Spring; 8(3):1-8.

Hemeon WCL, *Plant and Process Ventilation*. Second Edition, Industrial Press Inc., New York, 1963.

Blakeslee A, Asbestos Suspected as Cause of Cancer. Wall Street Journal(Associated Press), October 6, 1964.

Schmeck HM, A Rare Carcinoma Believed on Rise. The New York Times, Oct 7, 1964; 24:5.

Selikoff IJ, Asbestos Exposure and Neoplasia. JAMA 1964 Apr 6; 188(1):142-146.

Dunn ED Jr, Weir JM, Cancer Experience of Several Occupational Groups Followed Prospectively. American Journal of Public Health 1965; 55:1367-1375.

McVittie JC, Asbestosis in Great Britain. Annals New York Academy of Sciences 1965 Dec 31; 132:128-138.

Newhouse ML, Thompson H, Mesothelioma of Pleura and Peritoneum Following Exposure to Asbestos in the London Area. Brit J Industr Med 1965; 22:261-269.

Schall EL, Present Threshold Limit Value in the USA for Asbestos Dust: A Critique. Annals of the New York Academy of Sciences 1965 Dec 31; 132:317-321.

Selikoff IJ, The Occurrence of Asbestosis Among Insulation Workers in the United States. Annals of the New York Academy of Sciences 1965 Dec 31; 132:139-155.

Selikoff IF, Relation between Exposure to Asbestos and Mesothelioma. N England J Medicine 1965 Mar 18; 272(11):560-565.

Annals of the New York Academy of Sciences 1965 Dec 31;132 (Art 1):1-766.

Canadian Johns Manville-Bendix correspondence, September 1966.

*Principles of Internal Medicine* Fifth Edition, McGraw-Hill Book Company, New York 1966, p.910, 918, 936, 943, 946.

*Accident Prevention Manual for Industrial Operations* 5th edition, National Safety Council, Chicago, 1967, p.39-8, 39-27, 40-1, 40-18.

8

Richard Cohen MD MPH
May 1, 2005

Dunn JE Jr, Weir JM, A Prospective Study of Mortality of Several Occupational Groups. Archives of Environmental Health 1968; 17:71-76.

Godwin MC, et al, Asbestos and Mesothelioma. Journal of the American Medical Association 1968; 204(11):151.

Lynch JR, Brake Lining Decomposition Products. J Air Pollution Control Assoc 1968 Dec; 18(12):824-6.

Bentley ML, Control of the Use of Asbestos-Containing Friction Materials. Ann Occup Hyg 1970; 13:31-32.

Hatch D, Possible Alternatives to Asbestos as a Friction Material. Ann Occup Hyg 1970; 13:25-9.

Hickish DE, et al, Exposure to Asbestos during Brake Maintenance. Ann Occup Hyg 1970; 13:17-21.

Asbestos, Documentation of Threshold Limit Values, ACGIH, 1971, p.17-19.

Asbestos: The Need for and Feasibility of Air Pollution Controls. National Academy of Sciences, Washington D.C., 1971, p.30-31.

Champion P, Two Cases of Malignant Mesothelioma after Exposure to Asbestos. American Review of Respiratory Disease 1971; 103:821-826.

Oels HC, et al Diffuse Malignant Mesothelioma of the Pleura: A Review of 37 Cases. Chest 1971 Jun; 60(6):564-570.

Navratil M, Trippe F, Prevalence of pleural calcification in persons exposed to asbestos dust, and in the general population in the same district. Environ Res 1972; 5(2):210-6.

Rossiter C, Cancers in Relation to Type of Fibre, Dose, Duration of Exposure and Occupation.. Biological Effects of Asbestos, International Agency for Research on Cancer Conference, Lyon, France, October 2-6, 1972 p.226-227.

Selikoff IJ, Cancer risk of insulation workers in the United States. Biological Effects of Asbestos, International Agency for Research on Cancer Conference, Lyon, France, October 2-6, 1972 p.209-215.

Boillat MA, et al, Risque d'asbestose chez les travailleurs occupes a remplacer les garnitures de freins. Schweiz med Wschr 1973; 103:1354-1359.

9

Richard Cohen MD MPH
May 1, 2005

Asbestos: Asbestos exposure during servicing of motor vehicle brake and clutch assemblies. Current Intelligence Bulletin 5, National Institute for Occupational Safety and Health, August 8, 1975.

Becklake MR, Asbestos related diseases of the lung and other organs: Their epidemiology and implications for clinical practice. Am Review of Respiratory Disease 1976; 114:187-227.

Lorimer WV, Asbestos Exposure of Brake Repair Workers in the United States. Mount Sinai J Med 1976 Jun; 43(3):207-218.

Revised Recommended Asbestos Standard. NIOSH, December 1976.

Rohl AN, et al, Asbestos Exposure during Brake Lining Maintenance and Repair. Environmental Research 1976; 12:110-128.

Rohl RN, et al, Asbestos Content of Dust Encountered in Brake Maintenance and Repair. Proc roy Soc Med 1977 Jan; 70:32-37.

Smither WJ, Asbestos content of dust encountered in brake maintenance and repair. Proc R Soc Med 1977 May; 70(5):369-70.

Liukonen LR, et al, Asbestos Exposure from Gasket Operations. Industrial Hygiene Branch, Occupational and Environmental Health Service, Naval Regional Medical Center, Bremerton, Washington, May 1978, 1-67.

Physician Advisory – Health Effects of Asbestos. Surgeon General of Public Health Service, April 25, 1978.

Selikoff IJ, Lee DHK, *Asbestos and Disease*. Academic Press, New York, 1978.

Vianna NJ, Polan AK, Non-occupational Exposure to Asbestos and Malignant Mesotheliomas in Females. Lancet 1978 May 20, p.1,061-1,063.

Anderson HA, et al, Asbestosis among household contacts of asbestos factory workers. Annals New York Academy of Sciences 1979; 330:387-398.

Anderson H, et al, Household Exposure to Asbestos and Risk of Subsequent Disease. *Dusts and Disease* 1979, p.145-156.

Annals New York Academy of Sciences 1979, Vol 330.

Selikoff IJ, Mortality Experience of Insulation Workers in the United States and Canada. Annals New York Academy of Sciences 1979. p.91-116.

10

Richard Cohen MD MPH
May 1, 2005

Smither WJ, Surveillance of High-Risk Groups – A Survey of Asbestos Workers: The Present Position in the United Kingdom. Annals New York Academy of Sciences 1979; 330:525-532.

Asbestos – Lung Hazards on the Job. American Lung Association Pamphlet, 1980.

Castleman BI, et al, Impending proliferation of asbestos. Int J Health Serv 1980; 10(3):389-403.

Epler GR, et al, Asbestos-Related Disease from Household Exposure. Respiration 1980; 39:229-240.

McDonald AD, et al, Malignant Mesothelioma in North America. Cancer 1980; 46:1650-1656.

Lopez-Areal Del Amo L, Disease associated with asbestos in Spain. IARC Sci Publ 1980; 30:201-6.

Workplace Exposure to Asbestos. NIOSH Publication no. 81-103, November 1980.

Code of Practice Handling, Processing and Repair of Asbestos-Based Friction Materials. National Health and Medical Research Council, Commonwealth of Australia. 1981, p. 1-7.

Konetzke GW, Beck B, Risk factor asbestos. Arch Geschwulstforsch 1981, 51(7):567-574.

Investigation of Health Hazards in Brake Lining Repair and Maintenance Workers Occupationally Exposed to Asbestos. NTIS 1982, PB83220897.

Langer AM, et al, Mesothelioma in a brake repair worker. Lancet 1982 Nov 13; 2(8307):1101-3.

Nicholson WJ, Occupational Exposure to Asbestos: Population at Risk and Projected Mortality – 1980-2030. American Journal Industrial Medicine 1982; 3:259-311.

Whitaker D, et al, The mesothelium and its reactions: a review. CRC Crit Rev Toxicol 1982 Apr; 10(2):81-144.

Williams RL, et al, Asbestos brake emissions. Environ Res 1982 Oct; 29(1):70-82.

Berry G, et al, Mortality of workers manufacturing friction materials using asbestos. Br J Ind Med 1983 Feb; 40(1):1-7.

Guidance for Controlling Friable Asbestos-Containing Materials in Buildings. EPA Report Number 560/5-83-002, March 1983.

11

McDonald AD, et al, Dust exposure and mortality in an American factory using chrysotile, amosite and crocidolite in mainly textile manufacture. Br J Ind Med 1983 Nov; 40(4):368-74.

Occupational Exposure to Asbestos: Emergency Temporary Standard. Occupational Safety and Health Administration, Federal Register November 4, 1983; 48(215): 51086-51140.

Skidmore JW, et al, Environmental history of a factory producing friction material. Br J Ind Med 1983 Feb; 40(1):8-12.

Teta MJ, et al, Mesothelioma in Connecticut, 1955-1977. J Occup Med 1983 Oct; 25(10): 749-756.

McDonald AD, et al, Dust exposure and mortality in an American chrysotile asbestos friction products plant. Br J Ind Med 1984 May; 41(2):151-7.

Richter ED, Asbestos exposure in Israel: findings, issues and needs. Isr J Med Sci 1984 Feb; 20(2):89-97.

Hilt B, Langard S, et al, Asbestos Exposure, Smoking Habits and Cancer Incidence Among Production and Maintenance Workers in an Electrochemical Plant. American Journal of Industrial Medicine 1985; 8(6):565-577.

Kilburn KH, et al, Asbestos in Family Contacts of Shipyard Workers. American Journal of Public Health 1985; 75(6):615-617.

Paur R, et al, Pleural mesothelioma following asbestos exposure during brake repairs in the automobile trade: case report. Prax Klin Pneumol 1985; 39(10):362-6.

Cheng VKJ, et al, Asbestos Exposure in the Motor Vehicle Repair and Servicing Industry in Hong Kong. Journal of the Society of Occupational Medicine 1986; 36(3):104-106.

Estimates of Occupational Exposure to Asbestos in General Industry for 1984. Table 22, Federal Register 1986 Jun 20; 51(119):22665.

Guidance for Preventing Asbestos Disease Among Auto Mechanics. EPA-560-OPTS-86-002, June 1986.

Kilburn KH, et al, Asbestos Diseases and Pulmonary Symptoms and Signs in Shipyard Workers and Their Families in Los Angeles. Arch Intern Med 1986 Nov; 146: 2213-2220.

---

Krousel T, et al, Familial Clustering of Mesothelioma: A Report on Three Affected Persons in One Family. American Journal of Preventive Medicine 1986; 2(4):186-188.

Parkinson G, Skole R, Makers of Gaskets, Packing, Try Asbestos Replacements. Chemical Engineering 1986; 93(20):23-27.

Rodelsperger K, et al, Asbestos Dust Exposure During Brake Repair. Am J Indus Med 1986; 10:63-72.

Gunter BJ, Health Hazard Evaluation Report HETA 85-455-1724. Govt Reports Announcements & Index 1987; Issue 13.

Kauppinen T, et al, Exposure to Asbestos During Brake Maintenance of Automotive Vehicles by Different Methods. Am Ind Hyg Assoc J 1987; 48(5):499-504.

Marcus K, et al, Asbestos-associated lung effects in car mechanics. Scand J Work Environ Health 1987; 13:252-254.

Schwartz E, Proportionate Mortality Ratio Analysis of Automobile Mechanics and Gasoline Service Station Workers in New Hampshire. Am J Indus Med 1987; 12:91-99.

Sider Lee, et al, Changes on Radiographs of Wives of Workers Exposed to Asbestos. Radiology 1987 Sep; 164:723-726.

Jarvholm B, et al, Asbestos associated tumors in car mechanics. Br J Indus Med 1988; 45: 645-646.

Spirtas R, Time Trends and Risk Factors for Mesothelioma. Proceedings of the Fourth NCI/EPA/NIOSH Collaborative Workshop, NIOSH 1988, p. 391-400.

del Piano M, et al, Asbestos hazards in the city of Rome, Italy. Soc Sci Med 1989; 29(8): 1009-13.

Hansen ES, Mortality of auto mechanics. Scand J Work Environ Health 1989; 15:43-6.

Huncharek M, et al, Domestic asbestos exposure, lung fibre burden, and pleural mesothelioma in a housewife. British Journal of Industrial Medicine 1989 May; 46:354-355.

Huncharek M, et al, Pleural mesothelioma in a brake mechanic. Br J Indus Med 1989; 46: 69-71.

Huncharek M, et al, Pleural Mesothelioma in a Lift Mechanic. British Journal of Industrial Medicine 1989; 46(7):500-501.

---

Kohyama N, Airborne asbestos levels in non-occupational environments in Japan. IARC Sci Publ 1989; 90:262-276.

Raithel HJ, et al, Health hazards from fine asbestos dusts. An analysis of 70,656 occupational preventive medical investigations from 1973 to the end of 1986. Int Arch Occup Environ Health 1989; 61(8):527-541.

Dumortier P, et al, Asbestos bodies in bronchoalveolar lavage fluids of brake lining and asbestos cement workers. Br J Ind Med 1990 Feb; 47(2):91-8.

Parnes SM, Asbestos and cancer of the larynx: is there a relationship? Laryngoscope 1990 Mar; 100(3):254-61.

Cheng RT, McDermott HJ, Exposure to Asbestos from Asbestos Gaskets. Applied Occupational and Environmental Hygiene 1991; 6(7):588-591.

Grandjean P, et al, Lung Cancer in Filling Station Attendants. American Journal of Industrial Medicine 1991; 20(6):763-768.

Parnes SM, et al, Head and neck surveillance program for factory personnel exposed to asbestos. Ann Otol Rhinol Laryngol 1991 Sep; 100(9 Pt 1):731-736.

Roggli VL, et al, Mineral Fiber Content of Lung Tissue in Patients with Environmental Exposures: Household Contacts vs. Building Occupants. Annals New York Academy of Sciences 1991; 643:511-519.

The Third Wave of Asbestos Disease: Exposure to Asbestos in Place. Annals New York Academy of Sciences 1991 Dec 31; Volume 643:1-628.

Woitowitz H, et al, Chrysotile Asbestos and Mesothelioma. Am J Indus Med 1991; 19: 551-553.

Dahlqvist M, et al, Lung Function and Exposure to Asbestos among Vehicle Mechanics. American Journal of Industrial Medicine 1992; 22(1):59-68.

Koike S, Health effects of non-occupational exposure to asbestos. Sangyo Igaku 1992; 34(3):205-215.

McKinnery WN Jr, Moore RW, Evaluation of Airborne Asbestos Fiber Levels during Removal and Installation of Valve Gaskets and Packing. American Industrial Hygiene Association Journal 1992; 53(8):531-32.

Delon J, et al, Short-term exposures and exposures close to threshold limit values – the response. Archives des maladies professionnelles 1992; 53(2):91-98.

---

Spurny KR, Emission measurements of fibrous dust in the Federal Republic of Germany. Fibrous emissions from brake linings of motor vehicles. Zentralbl Hyg Umweltmed 1992; 193(3):287-94.

Magnani C, et al, A cohort study on mortality among wives of workers in the asbestos cement industry in Casale Monferrato, Italy. British Journal of Industrial Medicine. 1993; 50:779-784.

Millette JR, Mount MD, A Study Determining Asbestos Fiber Release during the Removal of Valve Packing. Applied Occupational and Environmental Hygiene 1993; 8(9):790-793.

Berry G, Mortality and cancer incidence of workers exposed to chrysotile asbestos in the friction-products industry. Ann Occup Hyg 1994 Aug; 38(4):539-46, 413.

Huncharek M, Asbestos and Cancer: Epidemiological and Public Health Controversies. Cancer Investigation 1994; 12(2):214-222.

Spirtas R, et al, Malignant mesothelioma: attributable risk of asbestos exposure. Occup Environ Med 1994; 51:804-811.

Woitowitz H-J, et al, Mesothelioma among Car Mechanics? Annals Occup Hyg 1994; 38(4):635-638.

Report to Congress on Workers' Home Contamination Study Conducted Under The Workers' Family Protection Act. U.S. Dept Health and Human Services, Sept 1995, DHHS Publication No. 95-123.

Ribak J, et al, Use of asbestos in expected and unexpected places in Israel. Public Health Rev 1995; 23(1):35-45.

Alderisio M, et al, Asbestos bodies in the sputum of workers exposed to environmental pollution. Anticancer Res 1996 Sep-Oct; 16(5A):2965-8.

Spence SK, Rocchi PSJ, Exposure to Asbestos Fibres during Gasket Removal. Ann Occup Hyg 1996; 40(5):583-588.

Levin JL, et al, Asbestosis and small cell lung cancer in a clutch refabricator. Occup Environ Med 1999; 56:602-605.

Yeung P, et al, An Australian study to evaluate worker exposure to chrysotile in the automotive service industry. Appl Occup Environ Hyg 1999 Jul; 14(7):448-57.

Neumann V, et al, Malignant mesothelioma - German mesothelioma register 1987-1999. Int Arch Occup Environ Health 2001; 74:383-395.

Richard Cohen MD MPH
May 1, 2005

Weir FW, et al, Characterization of vehicular brake service personnel exposure to airborne asbestos and particulate. Appl Occup Environ Hyg 2001 Dec; 16(12): 1139-46.

Wong O, Malignant mesothelioma and asbestos exposure among auto mechanics: appraisal of scientific evidence. Regul Toxicol Pharmacol 2001 Oct; 34(2):170-7.

Boelter FW, Crawford GN, et al, Airborne Fiber Exposure Assessment of Dry Asbestos-Containing Gaskets and Packings Found in Intact Industrial and Maritime Fittings. AIHA Journal 2002; 63:732-740.

Butnor KJ, et al, Exposure to brake dust and malignant mesothelioma: a study of 10 cases with mineral fiber analyses. Ann Occup Hyg 2003 Jun; 47(4):325-30.

Erdinc M, et al, Respiratory impairment due to asbestos exposure in brake-lining workers. Environ Res 2003 Mar; 91(3):151-6

Kishimoto T, Clinical Study of Asbestos-Related Lung Cancer. Indus Health 2003; 41: 94-100.

Levin JL, et al, International Sample Correlations with Clinical and Historical Data in a Friction Product Exposure. Inhalation Toxicology 2003; 15:639-647.

Paustenbach DJ, et al, An Evaluation of the Historical Exposures of Mechanics to Asbestos in Brake Dust. Applied Occup Envir Hyg 2003; 18:786-804.

Goodman M, et al, Mesothelioma and Lung Cancer Among Motor Vehicle Mechanics: a Meta-analysis. Ann Occup Hyg 2004; 48(4):309-326.

Lemen RA, Asbestos in Brakes: Exposure and Risk of Disease. Am J Indus Med 2004; 45:229-237.

Paustenbach DJ, et al, Environmental and Occupational Health Hazards Associated with the Presence of Asbestos in Brake Linings and Pads (1900 to Present). J Tox Envir Health 2004; Part B 7:33-110.

16

---



May 23, 1969

Mr. E. A. Schuman
Johns-Manville
22 East 40th Street
New York, New York   10016

cc:  R. P. Clark - Uniroyal, Inc.
     L. E. Moody - H. R. Porter Co.
     J. L. Rainey - American Asbestos Textile Co.
     C. D. Weiss - Garlock, Inc.
     H. C. Roosevelt - Cadwalader, Wickersham & Taft
     H. E. Sunbury - Asbestos Textile Institute

Dear Ed:

I am attaching to this letter and to copies addressed to each member of the Board of Governors of the A.T.I. a copy of a letter sent to R/M by Mr. J. W. Murdock, Head, Applied Physics department from the Department of the Navy, Philadelphia. It would seem that everyone has seen it by now but since it seems so important to all of us, I send it as a precautionary measure.

We certainly will place this subject on the agenda of the Sales Promotion Committee for the June 19th meeting at Seaview. At the same time, may I respectfully request that you make the letter available to the Environmental Study Committee who would also be most vitally concerned. We believe that some form of action should be taken by the Institute in the form of a protest at the earliest opportunity. Cliff Sheckler's group could certainly advise us in this area.

At the same time, Raybestos-Manhattan intends to reply independently at their invitation as outlined in paragraph 11. We feel it is expedient to submit a letter prior to June 15th in order to contribute to discouraging a development program on substitutes for asbestos in shipboard insulation.

Yours very truly,

M. Q. Scowcroft

M. Q. Scowcroft

---

RM-144

May 23, 1969

Mr. E. A. Schuman
Johns-Manville
22 East 40th Street
New York, New York   10016

cc:  R. P. Clark - Uniroyal, Inc.
     L. E. Moody - H. R. Porter Co.
     J. L. Rainey - American Asbestos Textile Co.
     C. D. Weiss - Garlock, Inc.
     H. C. Roosevelt - Cadwalader, Wickershaw & Taft
     H. E. Sunbury - Asbestos Textile Institute

Dear Ed:

I am attaching to this letter and to copies addressed to each member of the Board of Governors of the Institute a copy of a letter sent to R/M by Mr. J. W. Murdock, Head, Applied Physics department from the Department of the Navy, Philadelphia. It would seem that everyone has seen it by now but since it seems so important to all of us, I send it as a precautionary measure.

We certainly will place this subject on the agenda of the Sales Promotion Committee for the June 19th meeting at Seaview. At the same time, may I respectfully request that you make the letter available to the Environmental Study Committee who may also be most vitally concerned. We believe that some form of action should be taken by the Institute in the form of a protest at the earliest opportunity. Cliff Sheckler's group could certainly advise us in this area.

At the same time, Raybestos-Manhattan intends to reply independably at their invitation as outlined in paragraph 11. We feel it is expedient to submit a letter prior to June 15th in order to contribute to discouraging a development program on substitutes for asbestos in shipboard insulation.

Your very truly,

/s/ M. Q. Scowcroft

M. Q. Scowcroft

RETYPE

---

OS-180064

144
(RM 2)

DEPARTMENT OF THE NAVY
NAVAL SHIP ENGINEERING CENTER, PHILADELPHIA DIVISION
PHILADELPHIA, PA. 19112

IN REPLY REFER TO
6760;JLH:dnt
9390(PA-287)
Ser 750

5 MAY 1969

Raybestos-Manhattan Incorporated
61 Willett Street
Passaic, New Jersey   07055

Gentlemen:

Re:  Proposed Insulating Materials for Naval Vessels

The serious hazards of asbestos have recently received widespread publicity and have generated a high level of interest concerning its use by the U. S. Navy as an insulating material. There are many varied uses of asbestos in the Navy but the most disturbing, from a health hazard viewpoint, is that for piping and boiler insulation and lagging. The chief hazard exists wherever there is a possibility of dust evolution during operations such as fabrication, installation and especially during rip-out.

In order to minimize the hazards associated with the use of asbestos, and therefore reduce the possibility of deleterious effects to the workers, a comprehensive study has been initiated by the Naval Ship Engineering Center, Hyattsville, Md., to investigate the feasibility of substituting alternate materials for asbestos used as lagging, piping and boiler insulation. High temperature insulation, as used by the Navy, must be composed mainly of inorganic materials in order to endure temperatures above 200 F for extended periods. In addition, an acceptable insulation must exhibit the following characteristics:

1.  Low heat conductivity.

2.  Non-combustibility.

3.  Lightweight.

4.  Capability of easy molding and application.

5.  Moisture repellency.

6.  Non-corrosive, insoluble and chemically inert.

7.  Composition, structure and characteristics must remain unchanged by temperature at which it is to be used.

051180065

6764:HA:dat
9390(FA-287)
Ser 750

8.  Must be vermin proof.

9.  The material and application costs should be economical.

10.  The ideal insulation should be nontoxic and non-injurious to personnel during fabrication, installation, use, or rip-out.

11.  Once installed, it should not cluster, become lumpy, disintegrate or build up in masses from vibration.

The Philadelphia Division of the Naval Ship Engineering Center has been assigned tasks to conduct a survey of suppliers of insulation to the Navy, to secure technical data literature, and to investigate medical research findings, safety manuals, and data on research being pursued by private industry intended to develop new or improved materials which may be suitable for replacements for asbestos for piping, felts and lagging.  The cooperation and support of industry for this study is earnestly solicited by this activity since the health of the worker is the concern of management, labor and the government.  Accordingly, the Navy is desirous of obtaining information on the following:

a.  Are alternate non-asbestos containing materials available which may be used as thermal insulation pipe covering?  The insulation must offer protection up to 750 F and be manufactured in cylindrical sections up to 3 feet long, and split in half lengthwise.

b.  Are there any single layer or combination layered non-asbestos molded materials available which may be used as thermal insulation pipe covering for protection from 750 to 1200 F?

c.  What materials may be substituted for asbestos insulating felt (plain or water repellent) for use on valves or other irregular surfaces and which are suitable for a range from cold water temperature to 900 F?

d.  What non-asbestos containing cloth materials may be used as a lagging jacket over thermal insulation, or as a wrapping on engine exhaust pipes, or for piping or tubing, or on the inner and outer surfaces of removable covers and on flanges and valves from -5 F to 1050 F?

e.  What heat-resistant bonding materials may be substituted for asbestos insulation finishing cement over block insulation and irregular surfaces where powdering during rip-out has been a problem?

2

---

051180066

6764:HA:dat
9390(FA-287)
Ser 750

f.  What safety precautions to prevent inhalation of dust are observed during the manufacturing and processing of insulation materials?

g.  What safety precautions are recommended during the installation and replacement of insulating materials to prevent the inhalation of asbestos fibers and dust?

h.  To what extent or degree will material and installation costs be affected by the elimination or curtailment of the use of asbestos containing insulation?

Due to the urgency of this undertaking, it is requested that the above information be forwarded at your earliest convenience to Dr. M. Anmuth, the project engineer of this task, at the Naval Ship Engineering Center, Philadelphia Division, 6764, Philadelphia, Pa. 19112 (telephone number (215) 755-3922).  Information submitted to the Philadelphia Division of the Naval Ship Engineering Center will be utilized by the Naval Ship Systems Command in promulgating a directive which will eliminate the use of materials and practices which are potentially hazardous to the health of insulation workers.  This activity has been directed to complete the survey of insulation suppliers by 15 June 1969 to afford time for collation and personal contacts, if deemed necessary.

Please be assured that any product composition and formulas submitted in response to this survey will be held in strict confidence and will be viewed as a voluntary contribution to this perplexing problem of the insulation industry.  It is understood that submission of information solicited by this activity will not obligate the government or its agencies in any manner whatsoever.

Very truly yours,

J. W. Murdock

J. W. MURDOCK,
Head, Applied Physics Department

3

---

051190053

JOHNS-MANVILLE
RESEARCH & ENGINEERING CENTER
P. O. BOX 159  •  MANVILLE, N. J. 08835  •  TELEPHONE, 722-9000  •  AREA CODE 201

June 16, 1969

Mr. Milton Q. Scovcroft
Sales Manager
Asbestos Textile Division
Raybestos Manhattan
Manheim, Pa.

Dear Mr. Scovcroft:

Inclosed, in accordance with our telephone conversation of today, is a copy of Johns-Manville's reply to Dr. Anmuth at the Naval Ship Engineering Center.

Very truly yours,

E. M. Fenner, Director
Environmental Control

EMF/ems

Attach.

XC: MR. S. R. ZIMMERMAN
DR. E. A. STEEL
MR. G. F. DUCKER

---

051180054

195.01

JOHNS-MANVILLE
RESEARCH & ENGINEERING CENTER
P. O. BOX 159  •  MANVILLE, N. J. 08835  •  TELEPHONE, 722-9000  •  AREA CODE 201

June 13, 1969

Dr. M. Anmuth
Naval Ship Engineering Center
Philadelphia Division, 6764
Philadelphia, Pa. 19112

Dear Dr. Anmuth:

Re:  Your Inquiry 6764:HA:dat
9390 (FA-287)
Ser 743
Proposed Insulating Materials for Naval Vessels

Subject inquiry raises a number of questions concerning:

(A) the feasibility of substituting alternate materials for asbestos used as lagging, pipe and boiler insulation in naval ships; and

(B) safety precautions to be followed during the manufacturing, processing, installation and replacement of asbestos containing insulations.

This letter is Johns-Manville's reply to your inquiry.

Before answering your questions, I would like to state that it is our opinion that, in most naval applications, no other insulation material will perform as satisfactorily as those containing asbestos.

It is also our opinion that, when proper safety and health precautions are followed, asbestos containing insulations do not present a major hazard to the workman.  Therefore, we believe that the emphasis should be placed on safe handling of asbestos containing insulations, rather than searching for substitute materials.

It is in line with this belief that Johns-Manville, together with the Asbestos Workers Union, is sponsoring the Insulation Industry Hygiene Research Program at Mount Sinai School of Medicine.  This program is described in the attached copies of "Insulation Hygiene Progress Reports".  Dr. Irving J. Selikoff, Director of Mount Sinai Environmental Sciences Laboratory, and Director of this Hygiene Research Program, would be glad to discuss with you in detail the procedures and the goals of the program.

Our replies to your specific questions are as follows:

051180055

Dr. M. Anmuth                    -2-                    June 13, 1969

**Questions i. through 11.**

As an insulation to meet the specifications set forth in these questions (an insulation composed mainly of inorganic materials that will endure a temperature above 200°F), we have a fiber glass insulation, MICRO-LOK, which has a temperature limitation of 370°F, and 500° MICRO-LOK, which has a temperature limitation of 500°F. This insulation is also available with an aluminum or stainless steel jacket, under the trade name of METAL-LOK.

**Questions a. through e.**

Johns-Manville does not make any non-asbestos containing materials that will meet your specifications.

**Question d.**

For a lagging jacket we could offer an asbestos textile lagging cloth treated with a re-wettable adhesive compound that becomes sticky when immersed in water. This compound serves to encase the asbestos fibers, thus reducing the amount of dust created during handling and installation.

**Question f.**

Asbestos containing insulations are manufactured in Johns-Manville plants under strict dust control conditions. All steps in the process where dust is generated, whether asbestos containing or not, are provided with dust control systems engineered to rigid specifications.

**Question g.**

As to materials and methods that will reduce dust generation during installation and replacement of insulations, we have the following comments:

(A) - **Materials**

1. The use of our new molded THERMASBESTOS LD (calcium silicate) elbow insulation to eliminate field and/or shop fabrication of this item. Use of this material would also eliminate the need for mixing and applying the finishing cement that is required with the field fabricated elbow insulation.

2. The use of our metal jacketed (aluminum or stainless steel) calcium silicate pipe insulation, METAL-ON. The metal jacket on the pipe insulation greatly reduces dust generation during installation and removal.

(B) - **Methods**

The adoption and enforcement of improved working procedures and practices to reduce or eliminate dust generation, including:

---

Dr. M. Anmuth                    -3-                    June 13, 1969

1. Cutting and fabrication of insulation performed in a central or local fabricating shop equipped with suitable dust control devices to maintain dust concentrations below hazardous levels.

2. More detailed design of shipboard piping to reduce or eliminate the interference that requires the cutting and abrading of the insulation at the time of installation.

3. Adoption of health safety practices as recommended in the NIMA booklet (2 copies enclosed) on handling and applying thermal insulation products containing asbestos.

Additional information on the safe handling of asbestos containing insulations on shipboard can be obtained from the Asbestosis Research Council in Great Britain. Inquiries should be directed to:

Dr. S. Holmes, Secretary
The Asbestosis Research Council
Post Office Box #40
Rochdale, Lancashire
England.

**Question h.**

It is difficult for us to comment on the cost of non-asbestos containing insulations that would meet your specifications. It is our opinion, however, that such insulations would be higher in cost than the present asbestos containing insulations.

For your further information on the subject of asbestos and health, I enclose copies of two papers prepared by Johns-Manville entitled:

"Asbestos and Human Health", and
"Asbestos -- A Family of Minerals".

I am also enclosing sales literature describing the Johns-Manville products I have mentioned.

Johns-Manville representatives would be available to meet with you at the Naval Ship Engineering Center to discuss the subject in greater detail and answer any questions that may be raised by your comments in this letter. Also, we would be pleased to have you and your associates visit our Manville, N. J. Plant, where we could show you the manufacture of asbestos containing pipe and block insulations.

Please contact me if there is anything further that Johns-Manville can do.

Very truly yours,

E. M. Fenner, Director
Environmental Control

---

051180058

5201

COPY

RAYBESTOS-MANHATTAN, Inc.
Asbestos Textile Division
MANHEIM, PA.

16 June 1969

Mr. E. M. Fenner, Director of Environmental Control
Johns-Manville, Inc.
P. O. Box 159
Manville, New Jersey

Dear Mr. Fenner:

Thank you very much for your telephone call today and the interesting conversation which we had concerning the recent Navy letter which was circulated to insulation manufacturers in an attempt to invite various members of industry to suggest substitutions for asbestos in all its forms as shipboard insulation.

With this letter, I am enclosing a copy of my letter to Dr. M. Anmuth of the Naval Ship Engineering Center dated 12 June 1969. The letter in his letter of May 5th and I believe that it speaks for itself. We are capable of supplying him with more detailed medical information if necessary and would be only too happy to consult with them or have them visit our textile plants at his convenience. I believe that the letter which you submitted in reply was similar in tone and content and I hope that we will be effective in introducing caution to the program.

Thanks very much for this opportunity to discuss the problem.

Very truly yours,

H. O. Scowcroft
SALES MANAGER

asb
encl.

cc: Mr. F. J. Solon
    Mr. N. D. Morono
    Mr. S. R. Zimmerman, Jr. - R/M

---

051180059

145

5201

COPY

RAYBESTOS-MANHATTAN, Inc.
Asbestos Textile Division
MANHEIM, PA.

12 June 1969

Dr. M. Anmuth, Project Engineer
Naval Ship Engineering Center
Philadelphia Division 6761
Philadelphia, Pennsylvania 19112

Refer: 6761:MJM:jsh
       9390(PA-27)
       Ser 750

Dear Dr. Anmuth:

As a major supplier to the U. S. Navy as well as to private shipyards, Raybestos-Manhattan, Inc. is deeply disturbed to receive the letter referenced above and signed by Dr. J. W. Murdock. We, as well as all the members of our industry, have been very much of this unfavorable publicity which has flooded various media for the past several months. We feel that the proper data available concerning the hazards of working with or around asbestos is not convincing enough one way or the other to justify a program designed to eliminate the use of asbestos in shipboard insulation.

The questions posed in Dr. Murdock's letter of 5 May 1969 were not particularly designed for reply by a manufacturer of asbestos fabrics only. Nevertheless, paragraphs 11 and 12f do invite comment. In an effort to reduce the potential dust in the air, both in manufacturing and end use, we think much should be done in revising Federal Specification Mil-C-2461 7/3/64 to encourage wet spinning and weaving by the makers of the industry. Techniques have been perfected for these textile processes but several of the fabrics have to be "dry woven" due to the requirements of the Navy for moisture repellancy. A second suggestion involves this serious investigation by the Navy of the development of an innovative raw asbestos cloth which has been treated with water-activated adhesive. This product is currently available from some of the manufacturers. It practically eliminates dust in application, is clean and fast to work with, presents an outstanding surface for further finishes and considerably reduces dust during rip-out.

We feel that Raybestos-Manhattan, Inc. is a leader in our industry in safety equipment installed in our plants to prevent the inhalation of dust. We have continually employed the most modern measures, supervision and sophisticated dust-cover equipment. We are continually alert to improved handling techniques and superior manufacturing practices that would contribute to reducing dust count. In addition, we have cooperated extensively with Dr. L. J. Cralley and others of the U. S. Public Health Service who have conducted surveys of our plants over the last...

Dr. M. Annuth
- 2 -
12 June 1969

For many years, asbestos has proven to be a uniquely useful fiber. Everyone today is concerned with heat and flame protection for personnel, and flexible fire-resistant asbestos fabrics have proven indispensable time and again. Other useful features of asbestos textiles are chemical resistance, mildew resistance, good electrical characteristics and outstanding reinforcing properties. The industry is an important segment of our economy and great care should be exercised in condemning a program that might tend to legislate it out of existence.

In closing, we would like to say that we would be glad to consult with you or other personnel in the Naval Ship Engineering Center at any time and at your convenience.

Very truly yours,

M. B. SCOUSROFF
SALES MANAGER

scb

bcc:  Mr. S. R. Zimmerman, Jr.
      Dr. E. P. Stefl
      Mr. G. F. Ducker

ic:  B. E. SHIREY

---

COPY

RAYBESTOS-MANHATTAN, INC.
Asbestos Textile Division
MANHEIM, PA.

13 June 1969

Dr. M. Annuth, Project Engineer
Naval Ship Engineering Center
Philadelphia Division 6764
Philadelphia, Pennsylvania 19112

Refer:  6764: MA: dmt
        9390 (FA-287)
        Ser 750

Dear Dr. Annuth:

[body partially illegible]

---

Dr. M. Annuth
- 2 -
13 June 1969

For many years, asbestos has proven to be a uniquely useful fiber. Everyone today is concerned with heat and flame protection for personnel, and flexible fire-resistant asbestos fabrics have proven indispensable time and again. Other useful features of asbestos textiles are chemical resistance, mildew resistance, good electrical characteristics and outstanding reinforcing properties. The industry is an important segment of our economy and great care should be exercised in condemning a program that might tend to legislate it out of existence.

In closing, we would like to say that we would be glad to consult with you or other personnel in the Naval Ship Engineering Center at any time and at your convenience.

Very truly yours,

M. B. Scousroff
SALES MANAGER

scb

bcc:  Mr. S. R. Zimmerman, Jr.
      Dr. E. P. Stefl
      Mr. G. F. Ducker

---

CC:  DR. E. P. STEFL

C O P Y

RAYBESTOS-MANHATTAN, INC.
Asbestos Textile Division
MANHEIM, PA

13 June 1969

Dr. M. Annuth, Project Engineer
Naval Ship Engineering Division 6764
Philadelphia, Pennsylvania 19112

Refer:  6764: MA: dmt
        9390 (FA-287)
        Ser 750

Dear Dr. Annuth:

As a major supplier to the U. S. Navy as well as to private shipyards, Raybestos-Manhattan, Inc. is deeply disturbed to receive the letter referenced above and signed by Mr. J. W. Murdock. We, as well as all the members of our industry, have been very aware of the unfavorable publicity which has flooded various media for the past several months. We feel that the meager data available concerning the hazards of working with or around asbestos is not convincing enough one way or the other to justify a program designed to eliminate the use of asbestos in shipboard insulation.

The questions posed in Mr. Murdock's letter of 5 May 1969 were not particularly designed for reply by a manufacturer of asbestos fabrics only. Nevertheless, paragraphs 11 and 11f do invite comment. In an effort to reduce the potential dust in the air, both in manufacturing and end use, we think work should be done in revising Federal Specification SS-S-466c 7/2/64 to encourage wet spinning and weaving by the members of the industry. Techniques have been perfected for these textile processes but several of the fabrics have to be "dry-woven" due to the requirements of the Navy for moisture repellency. A second suggestion involves the serious investigation by the Navy of the development of an innovative new asbestos cloth which has been treated with water-activated adhesive. This product is currently available from most of the manufacturers. It practically eliminates dust in application, is clean and fast to work with, present an outstanding surface for further finishes and considerably reduces dust during rip-out.

We fell that Raybestos-Manhattan, Inc. is a leader in our industry in safety equipment installed in our plants to prevent the inhalation of dust. We make extensive use of vast exhaust systems, personal respirators and sophisticated dust-count equipment. We are constantly alert to improved handling techniques and superior manufacturing equipment that would contribute to reducing dust count. In addition, we have cooperated extensively with Dr. L. J. Cralley and others of the U. S. Public Health Service who have conducted surveys of our plants with satisfactory results.

RETYPE

Dr. M. Anmuth                                           12 June 1969
                              -2-

For many years, asbestos has proven to be a uniquely useful fiber.
Everyone today is concerned with heat and flame protection for personnel
and flexible fire-resistant asbestos fabrics have been indispensable
time and again.  Other useful features of asbestos textiles are chemical
resistance, mildew resistance, good electrical characteristics and out-
standing reinforcing properties.  The industry is an important segment
of our economy and great care should be exercised in conducting a program
that might tend to legislate it out of existence.

In closing, we would like to say that we would be glad to consult with
you or other personnel in the Naval Ship Engineering Center at any time
and at your convenience.

Very truly yours,

N. Q. SCONCROFT
SALES MANAGER

sab

bcc: Mr. S. R. Zimmerman, Jr.
     Dr. E. P. Stefl
     Mr. G. F. Ducker

         RETYPE

# EXHIBIT "H"

# EXHIBIT "H"

1 | ALAN R. BRAYTON, ESQ., S.B. #73685
DAVID R. DONADIO, ESQ., S.B. #154436
2 | BRAYTON❖PURCELL LLP
Attorneys at Law
3 | 222 Rush Landing Road
P.O. Box 6169
4 | Novato, California 94948-6169
(415) 898-1555
5 | (415) 898-1247 (Fax No.)

6 | Attorneys for Plaintiff

7

8 | **THE UNITED STATES DISTRICT COURT**

9 | **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10 | **SAN FRANCISCO DIVISION**

11

12 | EDWARD MCINTYRE,        )   No. C06-6301-WHA

           Plaintiff,   )

13 |                 )   FIRST AMENDED COMPLAINT
vs.             )   FOR ASBESTOS PERSONAL INJURY/

14 |                 )   PRODUCTS LIABILITY;
WARREN PUMPS, LLC,     )

15 |                 )   DEMAND FOR JURY TRIAL
          Defendant.  )

16 |                 )   CERTIFICATION OF INTERESTED
                )   ENTITIES OR PERSONS

17 |                 )

18 |                 )

19 |                 )

20 | **I.**

21 | **PARTIES**

22 |     1.    Plaintiff in this action, EDWARD MCINTYRE has sustained asbestos-related lung

23 | injuries as a result of his inhalation of asbestos fibers through his occupational exposure to

24 | asbestos.

25 |     2.    Plaintiff sustained an asbestos-related lung disease by the inhalation of asbestos

26 | fibers released during the handling of asbestos-containing products at Plaintiff's jobsites.

27 |     3.    The pathogenesis of Plaintiff's asbestos-related diseases is explained on **Exhibit A,**

28 | attached to Plaintiff's complaint and incorporated by reference herein.

**BRAYTON❖PURCELL LLP**
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

1       4.    All of Plaintiff's claims arise out of repeated exposure to asbestos-containing

2  products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or

3  maintained by defendants at Plaintiff's worksites, over a period of years, caused from release of

4  toxic asbestos fibers and subsequent inhalation by the Plaintiff, resulting in cumulative,

5  progressive, incurable lung diseases.

6       5.    Plaintiff claims damages for an asbestos-related disease arising from a series of

7  occurrences not dependent on Plaintiff's worksite but on the fact that asbestos-containing

8  products, when handled in the manner in which they were intended, released harmful asbestos

9  fibers which when inhaled by Plaintiff, caused serious lung disease.

10       6.    As used herein, Plaintiff shall mean the above-captioned asbestos-injured Plaintiff.

11       7.    Plaintiff is informed and believes, and thereon alleges that at all times herein

12  mentioned, Defendants were and are corporations, partnerships, unincorporated associations,

13  sole proprietorships and/or other business entities organized and existing under and by virtue of

14  the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that

15  said defendants, and each of them, were and are authorized to do and are doing business in the

16  State of California, and that said defendants have regularly conducted business in the County of

17  San Francisco, State of California.

18                    **II.**

19       **JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

20       8.    Jurisdiction: Plaintiff EDWARD MCINTYRE is a citizen of the State of New

21  York.   Defendant WARREN PUMPS, LLC  is a corporation incorporated under the laws of ,

22  and having its principal places of business in New Jersey.

23      This Court has original jurisdiction under 25 USC § 1332, in that it is a civil action

24  between citizens of different states in which the matter in controversy exceeds, exclusive of costs

25  and interest, seventy-five thousand dollars.

26       9.    Venue / Intradistrict Assignment. Venue is proper in the Northern District of

27  California and assignment to the San Francisco Division of said district is proper as a substantial

28  part of the events or omissions which give rise to the claims asserted by Plaintiff herein occurred

1    within the County of San Francisco, California, and Defendants are subject to personal

2    jurisdiction in this district at the time the action is commenced.

3                                                    **III.**

4                                        **CAUSES OF ACTION**

5                                        FIRST CAUSE OF ACTION

6                                            (Negligence)

7            PLAINTIFF EDWARD MCINTYRE COMPLAINS OF DEFENDANTS WARREN

8    PUMPS, LLC, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A

9    CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

10           10.   At all times herein mentioned, each of the named defendants was the successor,

11   successor in business, successor in product line or a portion thereof, assign, predecessor,

12   predecessor in business, predecessor in product line or a portion thereof, parent, holding

13   company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned

14   by, or the whole or partial owner of or member in an entity researching, studying, manufacturing,

15   fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering

16   for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating,

17   promoting, representing, endorsing servicing, installing, contracting for installation, repairing,

18   marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring,

19   mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product,

20   namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter

21   collectively be called ALTERNATE ENTITIES. Each of the herein named defendants is liable

22   for the tortious conduct of each successor, successor in business, successor in product line or a

23   portion thereof, assign,  predecessor in product line or a portion thereof, parent, holding

24   company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or

25   partially owned entity, or entity that it was a member of, or funded, that researched, studied,

26   manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought,

27   offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation,

28   repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain

1 product, namely asbestos, and other products containing asbestos. The following defendants,

2 and each of them, are liable for the acts of each and every ALTERNATE ENTITY, and each of

3 them, in that there has been a virtual destruction of plaintiff's remedy against each such

4 ALTERNATE ENTITY; defendants, and each of them, have acquired the assets, product line, or

5 a portion thereof, of each such ALTERNATE ENTITY; defendants, and each of them, caused

6 the destruction of plaintiff's remedy against each such ALTERNATE ENTITY; each such

7 defendant has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY;

8 and that each such defendant enjoys the goodwill originally attached to each such ALTERNATE

9 ENTITY:

10 DEFENDANT                                  ALTERNATE ENTITY

11 WARREN PUMPS, LLC                          WARREN PUMPS, INC.
                                            QUIMBY PUMP COMPANY
12                                           WARREN STEAM PUMPS COMPANY

13      11.   At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and

14 each of them, were and are engaged in the business of researching, manufacturing, fabricating,

15 designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

16 supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating,

17 promoting, representing, servicing, installing, contracting for installation, repairing, marketing,

18 warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating,

19 or otherwise directing and/or facilitating the use of, or advertising a certain product, namely

20 asbestos and other products containing asbestos.

21      12.   At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each

22 of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated,

23 designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of

24 the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied,

25 sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed,

26 represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded,

27 manufactured for others, packaged and advertised, a certain product, namely asbestos, and other

28 products containing asbestos, in that said products caused personal injuries to users, consumers,

1  workers, bystanders and others, including the plaintiff herein, (hereinafter collectively called

2  "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby

3  rendering said products hazardous, unsafe and dangerous for use by "exposed persons".

4      13.  Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to

5  exercise due care in the pursuance of the activities mentioned above and defendants, and each of

6  them, breached said duty of due care.

7      14.  Defendants, their ALTERNATE ENTITIES and each of them, knew, or should

8  have known, and intended that the aforementioned asbestos and products containing asbestos

9  and related products and equipment, would be transported by truck, rail, ship, and other common

10  carriers, that in the shipping process the products would break, crumble, or be otherwise

11  damaged; and/or that such products would be used for insulation, construction, plastering,

12  fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not

13  limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,

14  breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the

15  release of airborne asbestos fibers, and that through such foreseeable use and/or handling

16  "exposed persons", including plaintiff herein, would use or be in proximity to and exposed to

17  said asbestos fibers, which contaminated the packaging, products, environment, and clothing of

18  persons working in proximity to said products, directly or through reentrainment.

19      15.  Plaintiff have used, handled, or been otherwise exposed to asbestos and asbestos-

20  containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's

21  exposure to asbestos and asbestos-containing products is on current information as set forth at

22  various locations and circumstances in **Exhibit** A, attached to plaintiff's complaint and

23  incorporated by reference herein.

24      16.  As a direct and proximate result of the acts, omissions, and conduct of the defendants,

25  their ALTERNATE ENTITIES, and each of them, as aforesaid, Plaintiff's exposure to asbestos

26  and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to

27  the plaintiff as set forth in **Exhibit A,** attached to Plaintiff's complaint and incorporated by

28  reference herein.

17.  Plaintiff is informed and believes, and thereon alleges, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

18. Plaintiff suffers from a condition related to exposure to asbestos and asbestos-containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented risk of injury and/or disease.

19. As a direct and proximate result of the aforesaid conduct of defendants, their ALTERNATE ENTITIES, and each of them, Plaintiff has suffered, and continue to suffer, permanent injuries and/or future increased risk of injuries to their persons, body and health, including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to Plaintiff's general damage.

20. As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, Plaintiff has incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

21. As a further direct and proximate result of the said conduct of the defendants, their "alternate entities," and each of them, Plaintiff has incurred pecuniary losses, the full nature and extent of which are not yet known to Plaintiff; and leave is requested to amend this complaint to conform to proof at the time of trial.

22. Defendants, their ALTERNATE ENTITIES, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

23. Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them, and each

1   defendant's officers, directors and managing agents participated in, authorized, expressly and

2   impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their

3   ALTERNATE ENTITIES as set forth herein.

4       24. The herein-described conduct of said defendants, their ALTERNATE ENTITIES, and

5   each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard

6   and indifference to the safety and health of "exposed persons". Plaintiff, for the sake of example

7   and by way of punishing said defendants, seeks punitive damages according to proof.

8       WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and

9   each of them, as hereinafter set forth.

10                          SECOND CAUSE OF ACTION

11                              (Products Liability)

12       AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF

13   ACTION FOR PRODUCTS LIABILITY, PLAINTIFF EDWARD MCINTYRE COMPLAINS

14   OF DEFENDANTS WARREN PUMPS, LLC, THEIR "ALTERNATE ENTITIES," AND

15   EACH OF THEM, AS FOLLOWS:

16       25. Plaintiff incorporates herein by reference, as though fully set forth herein, the

17   allegations contained in each paragraph of the First Cause of Action herein.

18       26. Defendants, their ALTERNATE ENTITIES, and each of them, knew and intended

19   that the above-referenced asbestos and asbestos-containing products would be used by the

20   purchaser or user without inspection for defects therein or in any of their component parts and

21   without knowledge of the hazards involved in such use.

22       27. Said asbestos and asbestos-containing products were defective and unsafe for their

23   intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The

24   defect existed in the said products at the time they left the possession of defendants, their

25   "alternate entities," and each of them. Said products did, in fact, cause personal injuries,

26   including asbestosis, other lung damage, and cancer to "exposed persons", including Plaintiff

27   herein, while being used in a reasonably foreseeable manner, thereby rendering the same

28   defective, unsafe and dangerous for use.

K:\Injured\106109\Fed\Amd Fed Cmp (McIntyre PI solo) - no doe.wpd            7

FIRST AMENDED COMPLAINT – C06-6301-WHA

28.   "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons". Said defendants, their ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to which Plaintiff and others similarly situated were exposed.

29.   In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products, including, but not limited to, asbestosis, other lung damages and cancer. Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said defendants, their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

30.   On or before 1930, and thereafter, said defendants, their ALTERNATE ENTITIES and each of them, were aware that members of the general public and other "exposed persons", who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that members of the general public and other "exposed persons", who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

31.   With said knowledge, said defendants, their ALTERNATE ENTITIES, and each of

1  them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease,

2  buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market,

3  warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-

4  containing products without attempting to protect "exposed persons" from or warn "exposed

5  persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-

6  containing products. Rather than attempting to protect "exposed persons" from, or warn

7  "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

8  asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,

9  intentionally failed to reveal their knowledge of said risk, and consciously and actively

10 concealed and suppressed said knowledge from "exposed persons" and members of the general

11 public, thus impliedly representing to "exposed persons" and members of the general public that

12 asbestos and asbestos-containing products were safe for all reasonably foreseeable uses.

13 Defendants, their ALTERNATE ENTITIES, and each of them, engaged in this conduct and

14 made these implied representations with the knowledge of the falsity of said implied

15 representations.

16        32.    The above-referenced conduct of said defendants, their ALTERNATE ENTITIES,

17 and each of them, was motivated by the financial interest of said defendants, their ALTERNATE

18 ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification,

19 manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply,

20 sale, inspection, installation, contracting for installation, repair, marketing, warranting,

21 rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos-

22 containing products. In pursuance of said financial motivation, said defendants, their

23 ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed

24 persons" and in fact were consciously willing and intended to permit asbestos and asbestos-

25 containing products to cause injury to "exposed persons" and induced persons to work with and

26 be exposed thereto, including Plaintiff.

27        33.    Plaintiff alleges that the aforementioned defendants, their ALTERNATE

28 ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing

1 products to be safe for their intended use but that their asbestos and asbestos-containing

2 products, created an unreasonable risk of bodily harm to exposed persons.

3       34.  Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos

4 and various asbestos-containing products manufactured, fabricated, inadequately researched,

5 designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered

6 for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,

7 marketed, warranted, rebranded, manufactured for others, packaged and advertised by the

8 aforementioned defendants, their ALTERNATE ENTITIES, and each of them and that Plaintiff

9 cannot identify precisely which asbestos or asbestos-containing products caused the injuries

10 complained of herein.

11       35.  Plaintiff relied upon defendants', their "alternate entities'", and each of their

12 representations, lack of warnings, and implied warranties of fitness of asbestos and their

13 asbestos-containing products. As a direct, foreseeable and proximate result thereof, Plaintiff have

14 been injured permanently as alleged herein.

15       36.  As a direct and proximate result of the actions and conduct outlined herein, Plaintiff

16 have suffered the injuries and damages previously alleged.

17      WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE

18 ENTITIES, and each of them, as hereinafter set forth.

19 <div align="center">**IV.**</div>

20 <div align="center">**PRAYER**</div>

21      WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE

22 ENTITIES, and each of them in an amount to be proved at trial, as follows:

23      (a) For Plaintiff's general damages according to proof;

24      (b) For Plaintiff's loss of income, wages and earning potential according to proof;

25      (c) For Plaintiff's medical and related expenses according to proof;

26      (d) For Plaintiffs cost of suit herein;

27      (e) For exemplary or punitive damages according to proof;

28      (f) For damages for fraud according to proof; and

K:\Injured\106109\Fed\Amd Fed Cmp (McIntyre PI solo) - no doc.wpd     10

1  //

2  //

3    (g) For such other and further relief as the Court may deem just and proper, including

4        costs and prejudgment interest.

5  Dated: November 13, 2006        BRAYTON❖PURCELL LLP

6                 /s/ David R.  Donadio

7             By: _____

8                 David R.  Donadio
                   Attorneys for Plaintiffs

9

10               JURY DEMAND

11    Plaintiffs hereby demand trial by jury of all issues of this cause.

12  Dated: November 13, 2006        BRAYTON❖PURCELL LLP

13                 /s/ David R.  Donadio

14             By: _____

15                 David R.  Donadio
                   Attorneys for Plaintiffs

16

17     CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

18    Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed

19  persons, associations of persons, firms, partnerships, corporations (including parent

20  corporations) or other entities (i) have a financial interest in the subject matter in controversy or

21  in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a

22  party that could be substantially affected by the outcome of this proceeding: Allene McIntyre

23  (Spouse);

24  Sarah Allison McIntyre (Daughter).

25  Dated: November 13, 2006        BRAYTON❖PURCELL LLP

26                 /s/ David R.  Donadio

27             By: _____

28                 David R.  Donadio
                   Attorneys for Plaintiffs

EXHIBIT A

Plaintiff:     Edward McIntyre

Plaintiff's injuries:   Plaintiff was diagnosed with Mesothelioma on or about June 15, 2006.
Defendants:  Plaintiff contends that the asbestos-containing products to which he was or may
have been exposed to were manufactured, supplied, distributed, installed and/or contracted for
by Defendants.

Plaintiff's exposure to asbestos occurred at the following times and places, and involved
exposure to dust created by the contractors and the products of the entities listed below.  The
exposure includes, but is not limited, to the following presently known contractors and the
manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Department of Defense | Mare Island Naval Painting Shops Shipyard Vallejo, CA; | Painter | 12/01/1963- 12/31/1995 |
| | ABRAHAM LINCOLN (SSBN-602) | | |
| | ANCHORAGE (LSD-36) | | |
| | ANDREW JACKSON (SSBN-619) | | |
| | BARB (SSN 596) | | |
| | BARBEL (SS-580) | | |
| | BAINBRIDGE (DLGN-25) (CGN-25) | | |
| | DANIEL BOONE (SSBN-629) | | |
| | DOLPHIN (AGSS-555) | | |
| | DRUM (SSN-677) | | |
| | FLASHER (SSN-613) | | |

| | | | |
|---|---|---|---|
| U.S. Department of Defense (contd.) | Mare Island Naval Painting Shops Shipyard Vallejo, CA; | Painter | 12/01/1963-12/31/1995 |

GEORGE WASHINGTON (SSBN-598)

GRAYBACK (SSG-574)

GUARDFISH  (SSN-612)

GUITARRO (SSN-665)

GURNARD (SSN -662)

HADDOCK (SSN-621)

HALIBUT (SSN-587)

HAWKBILL (SSN-666)

INDRA (APL-37)

JOHN MARSHALL (SSBN-611)

KAMEHAMEHA (SSBN-642)

LONG BEACH (CLGN-160) (CGN-160) (CGN-9)

MARIANO G. VALLEJO (SSBN-658)

MARSHALL (SSBN-611)

NEREUS (AS-17)

ORLECK (DD-886)

ORTOLAN (ASR-22)

U.S. Department of Defense
(contd.)

PARCHE (SSN-683)

PATRICK HENRY
(SSBN-599)

PERMIT (SSN-594)

PIGEON (ASR-21)

PINTADO (SSN-672)

PLUNGER (SSN-595)

POGY (SSN-647)

POLLACK (SSN-603)

PORTERFIELD
(DD-682)

ROBERT E. LEE
(SSBN-601)

SALMON (SS-573)

SCAMP (SSN-588)

SEA CLIFF (DSR-4)

SEAWOLF (SSN-575)

SHARK (SSN-591)

SKIP JACK (SSN-585)

SNOOK (SSN-592)

WOODROW WILSON
(SSBN-624)

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Department of Defense (contd.) | Mare Island Naval Painting Shops Shipyard Vallejo, CA; | Painter | 12/01/1963-12/31/1995 |

WORDEN (DLG-18)

Job Duties:  Plaintiff's job duties included, but were not limited to, painting asbestos lagging on the pipes of the vessels listed above, working on new construction, sand blasting on various submarines and ships, painting the valve packing on various pipes, scraping off gaskets with a wire brush before painting, painting steam valves with high heat aluminum paint, and working with non-skid decking materials.

Plaintiff's job duties included, but were not limited to, painting duties at the various Painting Shops including, but not limited to, 11, 17, 45, 71 and 72, all shops in close proximity to Shop 31, Dry Docks II and IV, berths 6, 8, 10, Building 116, Building 334, Building 750, Building 418, Building 680, Building X11-390, and in the Shipfitter's Building 390.  Plaintiff recalls this was a shipfitters shop where plaintiff's job duties included, but were not limited to, mixing cream colored 'lagging paste' into 5 gallon buckets of paint.  Plaintiff recalls that the mixture was similar to a substance the insulators used as a finishing cement.

Plaintiff recalls that 90 percent of the painting work he performed was on nuclear and diesel submarines in the living spaces, topside, forward area, sail areas, engineering spaces, back portion areas, torpedo rooms, in various tanks including ballast tanks, W.R.T. tanks, and auxiliary tanks, and 20-30 percent of his time in the machinery spaces in the tank area, which was called the MR2 and MR1 auxiliary machine space.  Plaintiff recalls that 10 percent of his work was on surface ships.

Plaintiff worked in close proximity to the boilers on surface ships when  the boilers were opened for work.

Plaintiff worked in close proximity to insulators on submarines while the they removed insulation from pipes.  Plaintiff recalls insulation debris in the air would land on his shoulders.  Plaintiff recalls working in close proximity to various trades, including but not limited to: machinists, electricians, insulators, pipefitters.

Plaintiff worked in close proximity to insulators removing and installing the following brands of insulation including, but not limited to:  JOHNS-MANVILLE (JOHNS-MANVILLE); OCF (OWENS CORNING FIBERGLAS); PHILIP CAREY (RAPID-AMERICAN CORPORATION); and EAGLE PICHER (EAGLE-PICHER).

Plaintiff currently recalls the following co-workers: Ron Hansen, address currently unknown; and Tom Fischer, Napa, California.  Plaintiff currently contends that he was exposed to asbestos during this employment.

//

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Department of Defense | Naval Submarine Base New London Groton, CT | Painter | 09/01/1979-12/15/1979 |
| | NR-1 | | |

Job Duties:  Plaintiff's job duties included, but were not limited to, painting lagging aboard one experimental submarine, the NR-1, during this temporary duty assignment.  Plaintiff currently does not recall any supervisors or co-workers.  Plaintiff currently contends that he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Shelby Personnel Services Unlimited, Inc. 824 South Dekalb Street Shelby, North Carolina | Eaton Automotive Charlotte, NC | Factory Worker | 1997-1999 |

Job Duties: Plaintiff recalls that he was employed by a temporary employment agency who sent him to the Eaton jobsite. Plaintiff's job duties included, but were not limited to, drilling holes with a drill press for a new transmission housing, and performing work on casings.  Plaintiff currently does not recall any supervisors or co-workers.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Eaton Corporation 1111 Superior Avenue East Cleveland, OH | Eaton Automotive Charlotte, NC | Factory Worker | 10/1999-08/2000 |

Job Duties: Plaintiff's job duties included, but were not limited to, drilling holes with a drill press for a new transmission housing, and performing work on casings.  Plaintiff currently does not recall any supervisors or co-workers.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

//

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| City of Benicia<br>250 East L Street<br>Benicia, CA | Waste Treatment Plant<br>Benicia, CA | Maintenance<br>Mechanic | 10/2001-Present |

Job Duties:  Plaintiff's job duties included, but were not limited to, working part-time maintaining a black water sampling machine that regulates sewage pumps, and receiving laboratory equipment.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.