

| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF LOUISIANA | |
|---|---|
| EUELIS "ELLAU" SHEPPARD | CIVIL ACTION |
| VERSUS | NO: 07-2208 |
| NORTHROP GRUMMAN SYSTEMS<br>CORP., ET AL. | SECTION: "J"(3) |

### ORDER AND REASONS

Before the Court is Plaintiff's **Motion to Remand (Rec. Doc. 11)**. This motion was opposed and was set for hearing on the briefs on May 16, 2007. Upon review of the record, the memoranda of counsel, and the applicable law, this Court now finds that Plaintiff's motion should be granted.

### Factual Background

Plaintiff initially filed this suit against Defendant, Northrop Grumman Systems Corp. ("Northrop") and several other defendants in Civil District Court for the Parish of Orleans asserting that he contracted asbestos-related lung cancer while employed as a laborer and rigger by Avondale Shipyard in Avondale, Louisiana. Northrop and Peter Territo, an executive officer (hereinafter referred to as "Defendants"), removed this action to federal court under 28 U.S.C. § 1442 (a)(1) based on federal officer immunity. Defendants also stated that the Longshore and Harbor Workers' Compensation Act ("LHWCA") was a

1

basis for removal. The day before Defendants removed this action, Plaintiff filed and served a motion for leave of court to amend his petition in state court. (Exhibit G to motion to remand). Specifically, Plaintiff sought leave to amend his petition to delete paragraphs 47 and 49, which read in pertinent part:

> Avondale had the *garde* of the asbestos...and is thereby strictly liable pursuant to Louisiana Code Article 2317.
>
> Avondale fabricated asbestos-containing insulation products to which Petitioner was exposed and Avondale is strictly liable as a manufacturer....

Plaintiff argues that, in addition to his failure to warn claims, he erroneously asserted the above garde and product liability claims in his original petition. He claims that while neither of the above claims confer jurisdiction on this Court, he promptly (i.e., before the notice of removal was filed) sought leave to amend his petition so that Defendants could not argue that Plaintiff intended to pursue any cause of action over which this court would have jurisdiction. Five days after this action was removed, Plaintiff, again, sought leave to amend his Complaint, which was granted two days later.

### The Parties' Arguments

Plaintiff argues that this Court should make its jurisdictional determination based on his amended Complaint even though the amendment was allowed *after* removal. Plaintiff notes that it is clear that he is not attempting to engage in forum

2

shopping because he sought leave to amend his petition prior to removal.

Plaintiff next claims that Defendant has not satisfied its burden of proving that it is entitled to federal officer immunity. Plaintiff argues that Defendants have not properly invoked this Court's federal officer jurisdiction under § 1442(a)(1), because they cannot meet the criteria set forth in Mesa v. California, 489 U.S. 121, 124-25, 109 S. Ct. 959, 103 L. Ed. 2d 99 (1989). First, Plaintiff claims Defendants have not shown that they were acting under federal direction at the time the tort was committed. Plaintiff asserts that Defendants cannot establish that a federal officer directed and controlled their safety and warning-related activities specifically. Second, Plaintiff asserts that Defendants do not have colorable federal defense under the government contractor defense because there is no conflict between Defendants' federal and state duties. Plaintiff notes that the testimony of Peter Territo, executive officer of Defendant, demonstrates that no government regulation or contract specification prevented him from providing safety warnings. (Exhibit I to motion to remand, p. 143). Third, Plaintiff asserts that Defendants have not shown a nexus between the Government's control and Plaintiff's legal theories. Plaintiff notes that Defendants have provided no evidence showing that a federal officer exercised "direct and detailed" control

3

over safety and warnings, and thus, it is impossible for Defendants to show a causal nexus between the Government's supervision and their own tortious failure to warn. Thus, according to the Mesa test, Plaintiff argues that Defendants cannot invoke federal officer jurisdiction.

Further, Plaintiff asserts that he has disclaimed any cause of action which could invoke federal officer jurisdiction. Plaintiff asserts that if the Court concludes that Defendant have pled a colorable federal officer defense, Plaintiff's petition disclaimed any cause of action which would ripen the defense. Specifically, plaintiff pled:

> Plaintiffs [sic] disclaim any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave. *Plaintiffs also disclaim any cause of action or recovery for any injuries resulting from any exposure to asbestos dust caused by any acts or omissions of a party committed at the direction of an officer of the United States Government.*

(Petition, ¶ 56, <u>emphasis added</u>). Plaintiff asserts that in similar asbestos cases (which were removed to federal court by defendants asserting federal officer jurisdiction), courts have looked to similar post-removal disclaimers to remand the cases to state court. <u>See, Overly v. Raybestos-Manhattan</u>, 1996 WL 532150 (N.D. Cal. Sept. 9, 1996); <u>Westbrook v. Asbestos Defendants</u>, 2001 WL 902642 (N.D.Cal. 2001)("The court sees no reason not to hold plaintiffs in this case to their waiver of claims arising out of

4

work done on federal jobsites and vessels. This waiver, therefore, justifies remand. If plaintiffs later attempt to reverse course, and are allowed to do so by the state court despite their express waiver, [defendant] can always file for removal once again.") Thus, Plaintiff asserts that if the Court determines that there is jurisdiction based on Defendants' federal officer defense, Plaintiff should be bound by his disclaimer. Also, unlike the plaintiffs in Overly and Westbrook, who disclaimed causes of action post-removal (arguably implicating concerns of forum shopping), Plaintiff here disclaimed these causes of action in his original petition filed in state court.

Last, Plaintiff asserts that the LHWCA does not provide a colorable federal defense. Plaintiff notes that in Gauthe v. Asbestos Corp., 1997 WL 3255 (E.D. La. Jan. 2, 1997), Judge Duval addressed these same LHWCA arguments with regard to the Avondale Interests in an asbestos exposure case exactly the same as the case at bar. In rejecting Avondale's arguments, Judge Duval relied on both Louisiana law as well as the U.S. Supreme Court decision in Sun Ship, Inc. v. Pennsylvania, 100 S. Ct. 2432 (1980) to hold that the LHWCA does not preempt, but supplements, state remedies available to an injured worker. Plaintiff claims that from his Petition, it is clear that he intended to do just that: i.e., sue Defendants in state court for state law claims.

5

Plaintiff claims that he has not availed himself of any LHWCA benefits and does not seek to do so in his petition. Thus, removal is improper on the basis of his purported LHWCA claim.

In opposition, Defendants making up the Avondale Defendants (i.e., Northrop and its executive officers)[1] claim that they are entitled to remove this case based on federal officer jurisdiction. Specifically, Defendants assert that the intense government presence at Avondale and government control of the construction of vessels at Avondale, where Plaintiff allegedly was exposed to asbestos, was of such a direct and detailed nature that Defendants are entitled to defend this claim in federal court. (See Exhibit D to opposition). Defendant argues in essence that construction and inspection systems designed and implemented by the government to ensure that the proper materials were used and incorporated in the proper manner were thorough, all-encompassing, and included the authority for government inspectors to order that any non-compliance found be corrected by Avondale at any stage of the construction.

Defendants assert the importance of Lalonde v. Delta Field Erection, 1998 WL 34301466 (M.D. La. 1998). Defendants explain that in Lalonde, the court held that the federal government contractor, DSM, "was acting 'under an officer of the United

---

[1] An opposition advancing similar arguments was filed by Commercial Union Insurance Company (Rec. Doc. 18).

States or of an agency thereof' for purposes of removal under §1442(a)(1)" because DSM "operated a federal government-owned facility, exclusively for the government, under the oversight and ultimate control of officers of the federal government." Although Defendant admits that Avondale was not a government-owned facility, it argues that the work performed under contract with the government was performed exclusively for the government under the direct oversight and control of government officers. Defendant asserts that like DSM, Avondale acted exclusively for and under the control of the federal government in its operation under all of the government contracts. Defendants asserts that (1) government inspectors daily monitored compliance by Avondale with safety regulations made part of the contracts; (2) the government required the use of asbestos insulation; (3) the government specifically incorporated into the contracts federal asbestos safety regulations, which set standards for safe daily exposures to asbestos; and (4) government inspectors constantly monitored the ship construction process for compliance with all terms of the contract. Defendants claim these facts establish that the they were "acting under" the direction of the federal government and that the causal connection exists because the acts complained of were "under color" of federal office.

Next, Defendants claim they can successfully assert a colorable federal defense, i.e., the federal contractor defense.

Defendants claims they always conformed to the exceptionally precise specifications for the construction of the vessels that were drafted and approved by the government. Defendants also argue that Avondale had no knowledge of any dangers associated with the use of asbestos about which the government was not aware, given the extensive presence and control of the construction by the government, the incorporation into the contracts of the Walsh-Healey Act, and federal asbestos safety regulations promulgated by the LHWCA.

The second of Defendants' two available federal defenses is the immunity provision contained in the LHWCA. Defendants claim that Plaintiff, Territo, and Avondale satisfy the "status" and "situs" test and are, thus, all qualify for treatment under the LHWCA. Defendants assert that it is without serious dispute that federal law governs the question of whether the LHWCA preempts state law. Defendants argue that decisions such as the United States Supreme Court in Sun Ship make clear that Congress intended that disputes between longshore workers be resolved within the exclusive framework of the LHWCA.

Defendants also claim that the recent rulings in Melford v. Northrop Grumman Systems Corp., case no. 05-1405 (M.D. La.) and McFarlain v. Northrop Grumman Systems, case no. 05-1406 (M.D. La.) are applicable and suggest that remand should be denied. Defendants note that the Melford case was removed to the Middle

8

District of Louisiana on the same grounds that were asserted here: pervasive government regulation of federal ship construction contracts entitled the defendant to federal court jurisdiction under the Federal Officer Removal statute. The Court denied the plaintiff's motion to remand, wherein the plaintiff made the same arguments as the plaintiff here makes: the government never forced the defendant "not to warn," the <u>Overly</u> test applies, and the Federal Contractor Defense is not colorable. Defendants note that the <u>Melford</u> ruling is contrary to every Eastern District ruling against Defendants to date.

In <u>McFarlain</u>, the plaintiff urged much more than "failure-to-warn" claims. Specifically, the plaintiff had alleged "strict liability" claims. Defendants note that in Plaintiff's original Petition in this case, he also makes strict liability claims that seek to attach liability to Defendants for the mere presence of asbestos at the workplace. (See paragraphs 47 and 49 of original Petition). Defendants claim that this Court should rule as the <u>McFarlain</u> Court did and find that, at least as far as the strict liability claims are concerned, Defendant's federal contractor defense is colorable and all three prongs of the removal test are met. Similarly, Defendants claim this Court should exercise its supplemental jurisdiction over the remaining claims and deny Plaintiff's motion to remand. As for Plaintiff's post-removal amendment to delete the strict liability claims from his

9

Petition, Defendants argue that the Court should not consider the amended Petition because what controls is the Petition as it reads at the time of removal.

## Analysis

**The Amended Petition:**

Although this case was properly removed based on federal question jurisdiction, a mere seven days after removal, Plaintiff was granted leave to amend his Complaint. This amendment effectively allowed Plaintiff to delete any possibility of federal claims from his Complaint. The fact that this amendment occurred so quickly after removal and the fact that Plaintiff had sought leave to amend his petition in state court the day before Defendants filed their notice of removal prompts the Court to consider the amended petition in its determination of this motion to remand. The Supreme Court has held that if a federal claim that formed the basis of federal question jurisdiction is dismissed, the court has discretion to remand the state law claims. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357, 108 S. Ct. 614, 98 L .Ed.2d 720 (1988) (affirming remand of state claims after plaintiff's amended complaint dropped claim that was preempted). The Carnegie-Mellon Court held that if a federal question is eliminated relatively soon after removal, it is ordinarily preferable to remand the case. Id. Indeed, the Court noted that retaining a case after a fresh federal claim is

10

dropped early in litigation may be an abuse of discretion. Id. Thus, the Court concludes that in this situation, the amended Complaint will be used to determine whether the case should be remanded.

**Should this Matter be Remanded?**

The Federal Officer Removal Statute provides as follows:

> (a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is presiding:
>
> (1) The United States or any agency thereof or any officer (or any acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue....

28 U.S.C. § 1442(a)(1). The Fifth Circuit has explained that removal pursuant to this statute is meant to "ensure a federal forum in any case where a federal officer is entitled to raise a defense arising out of his official duties." Winters v. Diamond Shamrock Chemical Co., 149 F.3d 387, 398 (5th Cir. 1998). It is the removing defendants that have the burden of establishing the existence of federal jurisdiction. Id. at 397. In considering whether removal was proper under the federal officer removal statute, a court must determine whether the removing defendants

11

have established the following factors: (1) that they are "persons" under § 1442(a)(1); (2) that they acted under the direction of a federal officer; (3) that they have demonstrated a causal nexus between plaintiff's claims and defendants' actions performed under the color of a federal office; and (4) that they can raise a federal defense to plaintiff's claims. Mesa, 489 U.S. at 131-32; Winters, 149 F.3d at 398.

### (1) Are Defendants "persons" within the meaning of the statute?

Both removing defendants (Northrop as a corporation and Territo as an executive officer for the corporation) satisfy the first Mesa prong. See Winters, 149 F.3d at 398; Bradley v. Northrop Grumman Systems, Corp., 2007 WL 1115246 (E.D. La. Apr., 12, 2007).

### (2) Were Defendants acting under the direction of a federal officer?

The Court concludes that Defendants' removal fails on this prong because they failed to establish their safety and warning-related activities were under the requisite direction of a federal officer. Federal direction requires "more than 'general auspices' of a federal officer, or participation in a regulated industry." Savoie v. Northrop Grumman Ship Systems, Inc., No. 05-2086 (E.D. La. 2005). Defendants must show "strong government intervention and the threat that a defendant will be sued in state court" based on actions which follow federal

direction. Mouton v. Flextallic, Inc., 1999 WL 225438 *2-3 (E.D. La. 1999).

Nothing in the record establishes that the safety procedures at issue were controlled by the government or related to government specifications in the building of ships at Avondale. See also Bradley, 2007 WL 1115246; Guidroz v. The Anchor Packing Co., No. 98-3709 (E.D. La); Mouton, 1999 WL 225438 (no causal connection between the Navy's direction pursuant to design contracts and plaintiff's failure to warn claims). Territo testified that there were no federal officers on board the vessels and that Naval inspectors did not control the safety department at Avondale. (Exhibit I to motion to remand, p. 135). He also admitted that nothing in the federal regulations prevented Avondale from warning its employees of the dangers of asbestos exposure. (Exhibit I to motion to remand, p. 143). Thus, this Court finds that Defendants are not entitled to federal officer removal in this instance.

**(3) Was there a causal nexus between Plaintiff's claims and Defendants' actions performed under the color of a federal office?**

Because Defendants have failed to demonstrate that the government exercised the requisite authority and control over Defendants' safety procedures, there can be no causal nexus between the authority of the federal officer and Plaintiff's claims that Defendants failed to use asbestos safely. See also

13

Bradley, 2007 WL 1115246, *3; Gauthe, 1997 WL 3255 (no causal nexus under similar facts and circumstances).

### (4) Have Defendants established a colorable federal defense?

The Court determines that Defendants have failed to establish a colorable defense under either the government contractor defense theory or the LHWCA defense theory. First, Defendants cannot successfully invoke the government contractor defense, as set forth in Boyle v. United Technologies Corp., 487 U. S. 500 (1988), because Defendants cannot carry their the burden of establishing that the following two conditions are met: 1) that the case concerns a unique federal issue, and 2) that a significant conflict exists between federal policy and state law as applied to this case. Boyle, 108 S. Ct. at 2515. Here, there is no conflict between Defendants' federal and state duties. Territo's own testimony demonstrates that no government regulation or contract specification prevented him or Northrop from providing safety warnings:

> Q: To your knowledge, is there any Federal regulation or specifications in the contracts with the Navy that would prevent you from putting up a [warning] sign in a Navy vessel?
>
> A: If it was under construction?
>
> Q: Yes.
>
> A: No.

(Exhibit I to motion to remand, p. 143). There is no conflict

because Defendants could comply with both their contractual obligations and the state-prescribed duty of care. Thus, Defendants cannot take advantage of this defense.

Also, the Court finds that Defendants have not established a colorable defense under the LHWCA for the same reasons previously set forth by Judge Duval in <u>Gauthe</u>, 1997 WL 3255. The <u>Gauthe</u> court addressed these same LHWCA arguments with regard to Defendants in an asbestos exposure case. In rejecting Defendants' arguments, Judge Duval relied on both Louisiana law as well as the U.S. Supreme Court decision in <u>Sun Ship</u> to hold that the LHWCA does not preempt, but instead, supplements state remedies available to an injured worker. Thus, a person injured while shipbuilding may maintain an action under either the Louisiana state compensation scheme or the LHWCA. A review of Plaintiff's petition reveals that it was Plaintiff's intent to sue Defendants in state court for state law claims. Thus, it appears that the facts of this specific case do not invoke federal officer jurisdiction.

In further support of the above conclusion is the fact that, in his original Petition filed in state court, Plaintiff disclaimed any cause of action which could invoke federal officer jurisdiction. Specifically, Plaintiff pled:

> Plaintiffs [sic] disclaim any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave. Plaintiffs also disclaim any cause of

15

>     action or recovery for any injuries resulting from
>     any exposure to asbestos dust caused by any acts
>     or omissions of a party committed at the direction
>     of an officer of the United States Government.

(Petition, ¶ 56). Courts have looked to similar disclaimers that were filed after removal to remand cases to state court in similar asbestos cases. Overly, 1996 WL 532150; Westbrook, 2001 WL 902642 ("[t]he court sees no reason not to hold plaintiffs in this case to their waiver of claims arising out of work done on federal jobsites and vessels. This waiver, therefore, justifies remand. If plaintiffs later attempt to reverse course, and are allowed to do so by the state court despite their express waiver, [defendant] can always file for removal once again."). Also, the Court concludes that its decision to follow Plaintiff's disclaimer is further supported by the fact that, unlike the plaintiffs in Overly and Westbrook who disclaimed causes of action post-removal, Plaintiff here disclaimed these causes of action in his original petition in state court.

The Court is unpersuaded, just as Judge McNamara was "unpersuaded" in the Bradley case, by the opinions out of the Middle District of Louisiana (Lalonde; Melford; and McFarlain) that contrast with those out of this district. First, the Lalonde case is inapplicable because the government in Lalonde specifically controlled safety matters at a government-owned facility. Here, Avondale is a privately-owned shipyard that

16

contracts with private and public interests, and in which safety officers such as Territo operate wholly independent of any Government control. In McFarlain, the Court rejected the assertions that the LHWCA conferred federal jurisdiction and also rejected the argument that the Avondale defendants met their burden of removal of the failure to warn claims based on the government contractor defense. The sticking point for the McFarlain Court was the fact that the plaintiff had made a strict liability claim in addition to the failure to warn claim against the Avondale defendants. Here, Plaintiff has amended his petition to omit any strict liability claim. Thus at present, Plaintiff's amended petition only states theories of liability which sound in negligence, which should be remanded according to all Eastern District precedent, as explained above. Accordingly,

**IT IS ORDERED** that Plaintiff's **Motion to Remand (Rec. Doc. 11)** should be and hereby is **GRANTED**. This matter is now remanded to the state court from which it was removed.

New Orleans, Louisiana this 24th day of May, 2007.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

17