MDL 875

PLEADING NO. 5064

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN - 7 2007

FILED
CLERK'S OFFICE

RICHARD ZGLINICKI,
IRIS ZGLINICKI, his spouse,

          Plaintiffs,

Hon. Hugh B. Scott

07CV278S

**Order**

v.

ARMSTRONG INTERNATIONAL, INC., et al.,

          Defendants.

Before the Court is plaintiffs' motion to remand and costs (Docket No. 19[1]).  They also have filed a motion for an expedited hearing of this motion (id.) which was granted (Docket No. 22).  Responses to the motion to remand were due on or before May 22, 2007[2], and oral argument was held on May 31, 2007 (Docket Nos. 22, 24).  The motion was deemed submitted following oral argument (Docket No. 31).

---

[1] In support of this motion, plaintiffs filed the motion for expedited hearing, with exhibits, Docket No. 19, memorandum of law, Docket No. 20, and memorandum in further support of their motion with exhibits, Docket No. 29.

In opposition, Garlock submitted its memorandum in opposition, Docket No. 26, and attorney's affidavit with exhibits, Docket No. 27.  Following oral argument Garlock's counsel submitted a letter enclosing copies of cases relied upon in its oral argument, letter to chambers of June 1, 2007.

[2] Plaintiffs object to Garlock's opposing papers being untimely per this Court's Local Civil Rule 7.1, Docket No. 29, Pls. Supp'al Memo. at 3.  That rule recognizes that the Court by Order may except the parties from the briefing requirements of that rule, W.D.N.Y. Local Civ. R. 7.1(c), and Local Civil Rule 7.1(d) allows the Court–as granted here–to order an expedited hearing of a matter.

**OFFICIAL FILE COPY**

IMAGED JUN 7 2007

MDL - 875  RECOMMENDED ACTION
Vacate Cro-278 - one action
Approved/Date:

## BACKGROUND

This is a personal injury action, commenced in New York State Supreme Court, Erie County, by reason of plaintiff Richard Zglinicki's ("plaintiff") alleged exposure to asbestos. Plaintiffs Richard Zglinicki and his wife Iris (collectively "plaintiffs") sued twelve defendants as part of the New York Supreme Court Eighth Judicial District Asbestos Litigation (see Docket No. 1, Notice of Removal, Ex. A, State Complaint). Plaintiffs expressly allege that plaintiff's exposure was not while he was on a federal enclave (id., Ex. A, ¶ 3). The initial Complaint was verified on March 9, 2007, and, according to the exhibit attached to the Notice of Removal, was received by Garlock Sealing Technologies ("Garlock") on March 26, 2007 (id.). Plaintiffs filed an Amended Complaint in the state case on March 14, 2007 (id. Ex. B), to add defendant Union Carbide, and Garlock indicates that it received that pleading on March 26, 2007 (id.; id. Notice of Removal ¶¶ 1, 2; cf. id. Notice of Removal ¶ 3 (Garlock was served on March 22, 2007, with the initial Complaint and March 23, 2007, with the Amended Complaint)).

Defendant Garlock filed the Notice of Removal of this action to this Court (Docket No. 1), on April 26, 2007, and filed its Answer (Docket Nos. 10 (Answer to Complaint), 11 (Answer to Amended Complaint)). Other defendants filed their Answers[3] but not all defendants have appeared in the removed action[4]. Garlock also filed notice for this action to be a tag-

---

[3]IMO Industries, Docket No. 5; Union Carbide Corporation, Docket No. 6; Ingersoll-Rand Company, Docket Nos. 12, 13 (Amended Complaint); Gould Pumps (IPG), Inc., Gould Pumps (NY), Docket No. 15. Some defendants filed cross-claims against one another that are not relevant to this motion. Buffalo Pumps, Inc., answered in state court, see Docket No. 1, Notice of Removal, Ex. E.

[4]Yet to appear are Armstrong International, Inc., individually and as successor to Armstrong Machine Works; Crane Co.; Gould Pumps Incorporated; Merger Corporation; Hoke Inc.; Yarway Corporation. Buffalo Pumps filed a Notice of joinder in the motion to remove,

along to pending federal asbestos actions now before the United States District Court for the
Eastern District of Pennsylvania pursuant to assignment by the Judicial Panel on Multidistrict
Litigation ("Multidistrict Panel") (Docket Nos. 2, 3). During oral argument on May 31, 2007,
Garlock produced a notice (dated May 23, 2007, MDL-875, In re Asbestos Product Liability
Litig. (No. VI), CTO-278) from the Multidistrict Panel with a conditional transfer order to send
this action to the Eastern District of Pennsylvania within fifteen days of entry of that conditional
order, with opposition to the transfer due by June 7, 2007. Plaintiffs, at oral argument, stated that
they intended to file objections to this transfer. Under that notice, counsel were to notify the
Multidistrict Panel "of any official changes in the status of the tag-along action. These changes
could involve dismissal of the action, remand to state court, . . ., etc." (id.).

Garlock contends that plaintiff was exposed to asbestos from 1966 to 1969 while he was
in the United States Air Force at Langley (in Virginia), Elmendorf Air Force Bases (in Alaska),
and Campion Air Station (also in Alaska) (Docket No. 1, Notice of Removal ¶ 6). Specifically,
plaintiff testified in his examination before trial that he was exposed as a steam fitter at Langley
from May to November 1966 and at Campion from December 1967 through September 1968
(id., Ex. D, Pl. EBT Tr. at 68-70). Thus, Garlock claims federal question jurisdiction because
plaintiff's exposure was while he was on a federal enclave (see id. ¶¶ 6-7, 11), despite plaintiff's
denials of any claims of exposure to asbestos dust while on a federal enclave (id. ¶ 4).

---

Docket No. 3, and Buffalo Pumps and other defendants indicated their consent to have this case
removed, Docket No. 1, Notice of Removal ¶ 12, Ex. F.

*Expedited Hearing*

Plaintiff is dying of mesothelioma, an "invariably fatal cancer . . . for which asbestos

exposure is the only known cause," In re Patenaude, 210 F.3d 135, 138 (3d Cir.), cert. denied,

531 U.S. 1011 (2000) (Docket No. 19, Pls. Motion for Expedited Hearing, at 1; Ex. B, Physician

Affirm. of Dr. John Vance ¶¶ 4-9 (concluding that Richard Zglinicki was in extremis). New

York Supreme Court ordered expedited discovery in this action on April 5, 2007 (id. Ex. A),

plaintiff's deposition and trial testimony taken back in April, and with a trial scheduled for

January 8, 2008 (id.). As a result, this Court ordered expedited hearing of plaintiffs' motion

(Docket No. 22).

*Motion to Remand*

On May 10, 2007, Plaintiffs timely moved to remand this action, arguing that the removal

was unauthorized by federal law and "is a transparent effort to delay the progress of the state case

of plaintiff, Richard V. Zglinicki, until he dies," (Docket No. 19, Pls. Motion for Expedited

Hearing at 1; see Docket No. 20, Pls. Memo. at 1; see also Docket No. 29, Pls. Supp'al Memo.

at 2, Ex. A). They argue that the removal notice was defective, lacking (for example) the State

Supreme Court's scheduling Order (Docket No. 19, Pls. Motion for Expedited Hearing at 2-3),

and vaguely referring to the basis for federal subject matter jurisdiction to justify the removal (id.

at 3). They next contend that the removal was untimely, filed more than thirty days from receipt

of the initial pleading (id. at 3-5). Since Garlock and plaintiffs are New Yorkers, plaintiffs

considered the sole basis for federal jurisdiction available here, federal question jurisdiction, and

conclude that there is no basis for that jurisdiction here (id. at 5-9), arguing whether Virginia and

4

Alaska ceded exclusive authority to the air bases where plaintiff worked to create a "federal enclave" (id. at 7-9).

Garlock argues that it learned of plaintiffs' possible federal claims from the answers to interrogatories, hence its Notice of Removal of April 26, 2007, was timely (see Docket No. 26, Garlock Memo. at 2, 4-5). The Complaint, in fact, denied any basis for federal jurisdiction by disclaiming any alleged exposure while within a federal enclave (id. at 4). The omission of the state court scheduling Order was a formal defect and should not require remand due to a defect in the removed papers (id. at 5), see Dri Mark Products, Inc. v. Meyercord Co., 194 F. Supp. 536, 538 (S.D.N.Y. 1961). Garlock argues that federal jurisdiction arises here from plaintiff's exposure upon a federal enclave, that Langley and Campion air bases were ceded to the United States for its exclusive jurisdiction (id. at 6-8; Docket No. 27, Garlock Atty. Aff. ¶¶ 24-30, Exs. C, D, E, F, G). Garlock cites a 1962 General Services Administration survey of federal properties and their jurisdictional status, which listed Langley Air Force base as being exclusive federal property (Docket No. 27, Garlock Atty. Aff. ¶ 27, Ex. E).

## DISCUSSION

I.      Magistrate Judge Jurisdiction over this Motion

Since this is not one of the dispositive motions listed in 28 U.S.C. § 636(b)(1)(A), this motion can be decided by a Magistrate Judge by a Decision & Order. SG v. MC, No. 05CV508, Docket No. 14, Order of Sept. 25, 2005, at 1 n.1 (W.D.N.Y. 2005) (Scott, Mag. J.); Williams v. Beemiller, Inc., No. 05CV836, 2006 U.S. Dist. LEXIS 69024, at *3 (W.D.N.Y. Sept. 26, 2006) (Skretny, J.); McDonough v. Blue Cross of Northeastern Pa., 131 F.R.D. 467, 468 (W.D. Pa. 1990); see also Acme Elec. Corp. v. Sigma Instruments, Inc., 121 F.R.D. 26, 28 (W.D.N.Y.

1988) (Elfvin, J.) (magistrate judge could grant motion to amend even if resulting amended pleading would require remand to state court); <u>Wachovia Bank Nat'l Ass'n v. Deutsche Bank Trust Co. Americas</u>, 397 F. Supp. 2d 698, 700-03 (W.D.N.C. 2005) (district judge held magistrate judge could order remand); <u>Chandler v. Cheesecake Factory Restaurants, Inc.</u>, 239 F.R.D. 432, 440 n.6 (M.D.N.C. 2006) (citing <u>Johnson v. Wyeth</u>, 313 F. Sup. 2d 1272 (N.D. Ala. 2004)). Other courts disagree, <u>see, e.g.</u>, <u>National City Bank v. Aronson</u>, 474 F. Supp. 2d 925, 927 (S.D. Ohio 2007) (district court adopts Report & Recommendation, based upon 6th Circuit precedent, <u>Vogel v. U.S. Office Prods. Co.</u>, 258 F.3d 509, 517 (6th Cir. 2001), requiring treating remand as dispositive); <u>Innovative Medical Products, Inc. v. Felmet</u>, 472 F. Sup. 2d 678 (M.D.N.C. 2006) (district court adopts Report & Recommendation), but the law in this District is that motions to remand are non-dispositive and can be considered by the Magistrate Judge.

II.     Conditional Transfer Order

At oral argument Garlock announced that a conditional transfer order was issued by the Multidistrict Panel and urged that this Court either stay consideration of plaintiffs' present motion or defer ruling upon it until the status of the transfer by the Multidistrict Panel is determined. Garlock argued that this Court should exercise its discretion and delay ruling on plaintiffs' motion until the Multidistrict Panel has ruled on the transfer of this action, although Garlock (or any of the other defendants) has not moved for a stay.

> "The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel concerning transfer or remand of an action pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court. A transfer or remand pursuant to 28 U.S.C. § 1407 shall be effective when the transfer or remand order is filed in the office of the clerk of the district court of the transferee district,"

Rules of Procedure Jud. Panel on Multidist. Litig. 1.5. The conditional transfer order issued here

does not transfer this case until that order is filed with the clerk of the United States District

Court for the Eastern District of Pennsylvania, after the expiration of the period for filing

objections (here by June 7, 2007) (MDL-875, In re Asbestos Litig. (No. VI), CTO-278).

Garlock cites in its post-argument submission Judge Larimer's grant of a similar stay in

Krieger v. Merck & Co., No. 05CV6338, 2005 WL 2921640 (W.D.N.Y. Nov. 4, 2005)[5], a Vioxx

case removed to federal court and then conditionally transferred to the Multidistrict Litigation

court for Vioxx cases in Louisiana. In another asbestos action cited by Garlock, In re Asbestos

Cases (Hatch), No. 2:06-cv-741, 2007 WL 58293 (D. Utah Feb. 20, 2007), the court declined to

reconsider its decision not to rule on a pending motion to remand where the Multidistrict Panel

had issued a conditional transfer order. The Hatch court held that it was judicially efficient for

the Multidistrict Litigation court to decide the unsettled issue of whether a plaintiff could

disclaim federal enclave exposure to avoid federal court jurisdiction (where plaintiff was exposed

on and off of federal enclaves) despite plaintiff's terminal diagnosis of mesothelioma, 2007 WL

582983, at *2. In Stempien v. Eli Lilly & Co., No. C06-1811, 2006 U.S. Dist. LEXIS 28408

(N.D. Cal. May 4, 2006), another case cited by Garlock, the defendants sought a stay of

plaintiff's motion to remand while the conditional transfer order (and objections thereto) was

pending. The court there granted the stay, finding the judicial efficiency of handling Zyprexa

litigation outweighed deciding the remand motion because there were several other Zyprexa

---

[5]Garlock included in its post-argument submission two other of Judge Larimer Vioxx
cases which also stayed their motions pending transfer to the Vioxx Multidistrict Court, Bonilla
v. Merck & Co., No. 07CV6144, 2007 WL 952040 (W.D.N.Y. Mar. 28, 2007); North v. Merck
& Co., No. 05CV647, 2005 WL 2921638 (W.D.N.Y. Nov. 4, 2005).

cases pending that would have a common outcome as that case. In a third case cited by Garlock during oral argument, Jackson v. Johnson & Johnson, No. 01-2113, 2001 U.S. Dist. LEXIS 22329 (W.D. Tenn. Apr. 3, 2001), a drug class action was removed on diversity jurisdiction and then had a conditional transfer order from the Multidistrict Panel. Plaintiffs there moved to remand and the district court exercised its discretion in deferring ruling on that motion until after the transfer of the action, because the common issue of the amount in controversy applied to numerous parties now before the transferee court. The Jackson court found that judicial efficiency thus was served by having the transferee court decide the issue all at once as opposed to individual district courts deciding the same issue, id. at *7-8, 17, holding that the Multidistrict Panel had jurisdiction to transfer the action even though jurisdictional objections were pending before the court, id. at *8. This court cited the Second Circuit's decision in In re Ivy, 901 F.2d 7 (2d Cir. 1990), where plaintiffs objected to removal of their state Agent Orange action and transfer by the Multidistrict Panel to the Eastern District of New York. Since 28 U.S.C. § 1407 did not empower the Panel to "decide questions going to the jurisdiction or the merits of a case, including issues relating to a motion to remand" and the Circuit Court's review (on mandamus) was only of the decision to transfer and not the underlying jurisdictional issue, the transferee court could consider the jurisdictional question, 901 F.2d at 9. The Second Circuit did not consider the question of whether the initial district court had to defer to the Multidistrict Litigation process and stay action on a pending jurisdictional motion and await action on the transfer and (if granted) action by the transferee court.

These actions had in common that plaintiffs in each case had common arguments either for not transferring the action or for not removing it to federal court with other parties in pending

Multidistrict Litigation cases.  Hence judicial efficiency is had when a single court decides all like motions rather than separate courts dealing with each motion in their several cases.  For example, in In re Ivy, supra, 901 F.2d at 9, the Second Circuit concluded that in Agent Orange cases the jurisdictional issues posed by plaintiffs there were "easily capable of arising in hundreds or even thousands of cases in district courts throughout the nation," with common questions of law and fact, hence the "real economies in transferring such cases," see also Krieger, supra, 2005 WL 2921640, at *1.  Also most of these actions had motions for stays pending resolution of the transfer issue.

Here, the jurisdictional question is fundamental and unique to this plaintiff.  One key basis for federal jurisdiction here (for either this Court or ultimately the Multidistrict Panel court in Philadelphia) boils down to whether Langley or Campion Air Force bases were federal enclaves, particularly whether the places on those bases in which plaintiff worked and was exposed to asbestos were within federal enclaves.  While among the over one hundred thousand federal asbestos actions pending in the Eastern District of Pennsylvania (see CTO-278, from the number of federal asbestos cases transferred to that court), a few may have arisen from exposure at those two locations, or whether exposure was on a federal enclave, that issue is not so specialized or require such uniformity in decision that transfer to the asbestos multidistrict court would be judicially efficient.  Further, the conditional transfer order was presented at oral argument for the first time and no defendant sought a stay of this motion pending the transfer process.

This is similar to a case included by Garlock in its post-argument submission, Morales v. American Home Products Corp., 214 F. Supp. 2d 723, 725 (S.D. Tex. 2002), in which Chief

Judge Kazen <u>declined</u> to stay the pending motion to remand while awaiting action on the transfer

order and went on to consider whether there was fraudulent joinder of a defendant to avoid

diversity jurisdiction. As Chief Judge Kazen noted, the conditional transfer order does not affect

or suspend any pretrial proceedings in the transferor court and, while the court has deferred to the

Multidistrict Litigation court when presented with an issue common among the other cases, when

the issue is discrete to that particular case "there is no reason to ask a federal court in Washington

to make that decision," <u>id.</u> at 725. That court went on to grant a remand of the action, <u>id.</u> at 726.

Courts have balanced judicial efficiency of dealing with common issues by one court with

the potential for delay to the parties (even, as in <u>Hatch</u>, <u>supra</u>, 2007 WL 582983, at *1, and

potentially here, the possibility of denial of plaintiff's day in court). Here, there is no common

issue, it is a discrete issue that can be best decided prior to transfer. This Court will next

consider the pending motion to remand.

III.    Removal and Remand Standards

Under 28 U.S.C. § 1441, a defendant alleging original federal jurisdiction may have the

pending state action removed upon notice, filing a notice to remove thirty days from service of

the pleading or other paper that suggests federal court jurisdiction, 28 U.S.C. § 1446(b). The

plaintiff, on any issue (aside from subject matter jurisdiction) within thirty days of the filing of

the notice of removal, may then move to have that action remanded to state court, 28 U.S.C.

§ 1447(c). The burden is upon the party seeking to preserve federal court removal jurisdiction

(here, defendant Garlock) to show that the requirements for removal were met, <u>see</u> 14C Charles

A. Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice and Procedure</u>, § 3739, at

424 (Jurisdiction 3d ed. 1998). The Court reviews the Complaint, the Notice of Removal, and

10

the state court record, to determine whether removal was proper, id. at 468.  Removal statutes are

to be construed against removal and in favor of remand, Martropico Compania Naviera S.A. v.

Perusahaan Pertambangan Minyak Dan Gas Bumi Negara (Pertamina), 428 F. Supp. 1035, 1037

(S.D.N.Y. (S.D.N.Y. 1977) (citing Shamrock Oil Co. v. Sheets, 313 U.S. 100, 108-09 (1941)).

Removal requires the filing an index of documents filed in state court, copy of all process,

pleadings, and orders served upon defendant there, 28 U.S.C. § 1446(a) (procedure for removal),

and (under this Court's rules) copies of the documents filed in state court, W.D.N.Y. Local Civ.

R. 81(a)(3).

IV.     Application

Plaintiffs raise three objections to Garlock's removal of this action, two procedural or

timing deficiencies with the Notice and the absence of federal subject matter jurisdiction to

justify the removal.  The Court shall consider each objection in the order presented by plaintiffs.

A.     Deficiencies in the Removal Notice

Plaintiffs first object to Garlock's failure to include with the Notice of Removal a copy of

all orders served upon defendant, in particular the expedited discovery and scheduling order of

April 11, 2007, see 28 U.S.C. § 1446(a); W.D.N.Y. Loc. Civ. R. 81(a)(3)(B) (Docket No. 20, Pls.

Memo. at 1 n.1, 2-3).  Next, they object to the ambiguity in the Notice as to the basis for federal

jurisdiction, concluding that the Notice was rendered defective (id. at 3).

Garlock here only filed an index of the process and pleadings served in the state action

(Docket No. 1, Notice of Removal ¶ 13, Ex. G) and did not list or include the New York

Supreme Court's scheduling Order.

11

Cases under § 1446(a) have upheld removal where a defendant did not include all of the pleadings and papers from the state court action, e.g., Boxdorfer v. DaimlerChrysler Corp., 396 F. Supp. 2d 946 (C.D. Ill. 2005), aff'd, 435 F.3d 785 (7th Cir. 2005); Dri Mark, supra, 194 F. Supp. at 538, but cases have remanded actions where the removal papers failed to allege the timing of the removal, Cook v. Robinson, 612 F. Supp. 187 (E.D. Va. 1985), or failed to provide a copy of all state court pleadings and papers and did not contain a statement of fact which entitled defendant to removal, Kingman v. Sears, Roebuck and Co., 526 F. Supp. 1182 (D. Me. 1981). Omission of some state court documents are not jurisdictional, Dri Mark, supra, 194 F. Supp. at 538, but omitting documents that state the basis for federal jurisdiction is fatal to the removal notice.

This Court's Local Civil Rule requires the removing party to file a Notice of Removal with an index of all documents filed in state court, with a copy of each document, W.D.N.Y. Loc. Civ. R. 81(a)(3)(A), (B), although 28 U.S.C. § 1446(a) only calls for filing with the Notice a copy of the orders served upon defendant, cf. 28 U.S.C. § 1446(a). Here, plaintiff apprised the Court of the state court's pending Scheduling Order and its omission by Garlock could have been readily remedied by Garlock, cf. Dri Mark, supra, 194 F. Supp. at 538. Therefore, this technical deficiency is **not sufficient to require remanding** this action to state court.

B.     Basis for Federal Subject Matter Jurisdiction for this Removal

Garlock initially asserted two bases for removal of this action, diversity and federal question from the federal enclave jurisdiction under Article I, Section 8, Clause 17 of the United States Constitution.

12

1.    Diversity

First, Garlock claimed that this Court would have jurisdiction on the basis of diversity

jurisdiction, that is citizens of different states and alleged claims that exceed the statutory

threshold of $75,000, see 28 U.S.C. § 1332(a)(1) (Docket No. 1, Notice of Removal, at page 1).

Plaintiffs contend that there is no diversity of citizenship between them and Garlock because

both are citizens of New York for diversity purposes (Docket No. 20, Pls. Memo. at 3 n.2), but

plaintiffs do not cite any authority for this proposition. The Complaint (Docket No. 1, Notice of

Removal, Ex. A) and Amended Complaint (id., Ex. B) alleged that Garlock is a foreign business

corporation authorized to and transacting business in New York (id., Ex. A, ¶ 8, Ex. B, ¶ 8). The

Summonses for these pleadings listed Garlock's address being in Palmyra, New York, while

asserting that plaintiffs lived in Buffalo (id., Ex. A, Summons, Ex. B, Summons). In its Answers

to the Complaint and to the Amended Complaint, Garlock admitted that it is a foreign

corporation authorized to transact business in New York (Docket No. 10, Ans. ¶ 2; Docket

No. 11, Ans. to Am. Compl. ¶ 2), but does not state where it is incorporated or has its principal

place of business. In response to this motion to remand, Garlock does not argue diversity as a

basis for federal jurisdiction (possibly, in part, to make the removal timely, since diversity

jurisdiction would have been apparent when plaintiffs served their Complaint).

As the proponent for federal jurisdiction for this removed action, defendant Garlock bears

the burden of establishing diversity jurisdiction. See Robinson v. Overseas Military Sales Corp.,

28 F.3d 502, 507 (2d Cir. 1994); In re Ski Train Fire in Karprun, Austria on Nov. 11, 2000,

257 F. Supp. 2d 717, 724 n.9 (S.D.N.Y. 2003); Gliatta v. Stein, No. 03CV214, 2004 U.S. Dist.

LEXIS 9892, at *7-8 (W.D.N.Y. May 23, 2004) (Skretny, J.) (dismissed amended complaint's

claims against corporation where plaintiff, claiming diversity jurisdiction, failed to allege

corporate defendant's state of incorporation or principal place of business). As the proponent for

this Court's jurisdiction, Garlock "bears the burden of demonstrating that the grounds for

diversity exist and that diversity is complete." Advani Enter., Inc. v. Underwriters at Lloyds,

140 F.3d 157, 160 (2d Cir. 1998) (citations omitted). That is, Garlock needs to show plaintiffs'

state of citizenship and allege that all defendants are not New York corporations and did not have

their principal places of business in New York to otherwise defeat diversity, in particular assert

Garlock's state of incorporation and principal place of business. See Denlinger v. Brennan,

87 F.3d 214 (7th Cir. 1996) (allegations of diversity jurisdiction were defective where they did

not allege organization's principal place of business or place of incorporation). Diversity under

§ 1332 has to be complete, thus all plaintiffs must have a different citizenship from each

defendant, Caterpillar, Inc. v. Lewis, 519 U.S. 61, 75-78 (1998); Durove v. Fabian Transp. Inc.,

CCH Prod. Liab. Rptr. ¶ 17,258, 2004 U.S. Dist. LEXIS 25258, at *4 (S.D.N.Y. Dec. 14, 2004).

Diversity jurisdiction for corporations depends upon the state of incorporation and the

principal place of business of the corporate party, 28 U.S.C. § 1332(c). Neither the state of

incorporation nor the principal place of business is alleged for Garlock. Instead, both plaintiffs

and Garlock concede that Garlock is a foreign corporation that transacts business in New York.

Transaction of business is a concept derived from New York's long-arm statute, see N.Y.

CPLR 302(a)(2), to enable New York State courts (and this Court) to exercise personal

jurisdiction over foreign entities because of their activities in New York. "Transacting business"

does not answer the federal subject matter jurisdiction question under § 1332 of whether the

defendant corporation is diverse from the New York plaintiffs or not for diversity purposes. See

14

also Forrester v. Supermarket General Corp., No. 92 Civ. 1265, 1992 U.S. Dist. LEXIS 15953, at

*3 (S.D.N.Y. Oct. 19, 1992) (a principal place of business for purposes of personal jurisdiction

under New York Business Corporation Law does not necessarily make that corporation a New

York corporation for diversity jurisdiction purposes). Since Garlock has not asserted its principal

place of business or state of incorporation to determine if it is diverse from plaintiffs and now is

not arguing diversity, the Court turns next to the other basis asserted for federal jurisdiction, that

of federal question jurisdiction under § 1331.

      2.    Federal Question-Federal Enclave Jurisdiction

    This Court also has original jurisdiction "of all civil actions arising under the

Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331. Garlock argues that the

jurisdictional basis is federal question jurisdiction, 28 U.S.C. § 1331; see Akin v. Big Three

Industries, 851 F. Supp. 819, 821-22 (E.D. Tex. 1994) (federal enclave jurisdiction found for

exposure to toxins at Tinker Air Force Base) (Docket No. 1, Notice of Removal ¶ 11). Plaintiffs

contend that Garlock vaguely asserts the nature of this basis, surmising that it is federal enclave

jurisdiction under United States Constitution article I, section 8, clause 17 (Docket No. 20, Pls.

Memo. at 3). They deny the existence of such "federal enclave jurisdiction" (id. at 6), arguing

that Garlock confuses Congress's legislative jurisdiction over federal enclaves under the Enclave

Clause with this Court's jurisdiction under congressionally mandated 28 U.S.C. § 1331 (id. at 8).

They contend that "just because Congress has authority under Article I to legislate in federal

enclaves, this does not mean a federal district court automatically has jurisdiction to try a tort

case arising from an incident within a federal enclave. Congress must statutorily authorize a

district court to try such an 'enclave' case. It has not." (Id. at 8-9.) Thus, a tort committed on a

federal enclave needs a federal law (a statute, treaty, or constitutional provision) distinct from the
Enclave Clause in order to create a federal question (see id. at 8-9). Plaintiffs point to the origin
of federal jurisdiction is so much of Article III jurisdiction that Congress has enacted, concluding
that Congress has given far less than the jurisdiction allowed by Article III (id. at 5-6), or as
applicable here, as may be allowed by the Enclave Clause, and apparently has not enacted
judicial jurisdiction over events within federal enclaves.

Garlock argues that the Enclave Clause itself creates federal subject matter jurisdiction
(Docket No. 26, Garlock Memo. at 7-8), see Akin v. Ashland Chem. Co., 156 F.3d 1030, 1034
(10th Cir. 1998) (federal enclaves are subject of exclusive federal jurisdiction and thus personal
injuries arising thereon are part of federal question), cert. denied, 526 U.S. 1112 (1999). Plaintiff
stated in his interrogatory answer that his asbestos exposure was only at Langley and Campion,
both owned and purchased by the United States and Virginia and Alaska respectively ceded
jurisdiction to the United States for those properties (id. at 8).

The issues, then, are whether Garlock has established exclusive federal jurisdiction over
portions of either Air Force base in which plaintiff worked at in the 1960s to be federal enclaves
and what federal law was implicated by plaintiff's exposure to asbestos while in those enclaves
to create federal question jurisdiction.

    a.    Did Garlock Establish the Existence of a Federal Enclave?

In Akin v. Big Three Industries, the district court held that the Enclave Clause by itself
established federal question jurisdiction under 28 U.S.C. § 1331 and a removable case under
§ 1441(a), even if the state court would have concurrent jurisdiction over the matter,
851 F. Supp. at 821-22, 822 n.1; see also Akin v. Ashland Chem., supra, 156 F.3d at 1034.

Plaintiffs argue that the Enclave Clause, U.S. Const. art. I, § 8, cl. 17, requires the federal government affirmatively act to acquire exclusive jurisdiction over the land from the state for property used for specified purposes (id. at 7), see United States v. Johnson, 994 F.2d 980, 984-85, 981 (2d Cir. 1993) (parcel within Brooklyn Navy Yard); 40 U.S.C. § 3112. Plaintiffs argue that Garlock has not proved that Virginia or Alaska ceded exclusive jurisdiction to the United States (id. at 7-8), or had not done so in 1966-68 when plaintiff was on these bases (Docket No. 29, Pls. Supp'al Memo. at 4). During oral argument, they contended that Garlock failed to produce deeds or statutory enactments declaring the conveyance of the base properties from the states to the United States. If these bases were federal enclaves presumably federal common law for torts committed upon those enclaves would apply.

In Johnson, defendant was convicted of murder and attempted murder and other offenses under federal criminal law for offenses committed on the Brooklyn Navy Yard. New York State had transferred exclusive jurisdiction to much of the Brooklyn Navy Yard to the United States. During World War II, the United States acquired a parcel at issue in the Johnson criminal case as part of the Navy Yard and New York deeded exclusive jurisdiction to the United States for that parcel, 994 F.2d at 983. The Second Circuit held that the United States affirmatively accepted exclusive jurisdiction over the Navy Yard parcel by following New York's law for succession, an option available for acquiring exclusive federal jurisdiction under 40 U.S.C. § 3112 (then § 255), id. at 985.

Plaintiffs at oral argument cited, for example, Sinicki v. General Electric, No. 05CV508, 2005 U.S. Dist. LEXIS 13446 (N.D.N.Y. July 7, 2005), in which Judge McAvoy held that defendant failed to show that the Malta Test Station was ever a federal enclave. The court found

17

that defendant failed to show that New York sold the property or that it otherwise ceded it to the United States. It held that the Enclave Clause required a purchase of the property by the federal government; there, the Malta Test Station was acquired by eminent domain, id. at *4-5.

Personal injury action for asbestos exposure while on a federal enclave is subject to federal question jurisdiction and may be removed to federal courts, Fung v. Abex Corp., 816 F. Supp. 569 (N.D. Cal. 1992); see Sinicki, supra, 2005 U.S. Dist. LEXIS 13446, at *3 (citing Akin v. Ashland Chem., supra, 156 F.3d 1030); Adams v. Alliant Techsystems, Inc., 201 F. Supp. 2d 700, 704 (W.D. Va. 2002) (personal injury claims on federal enclave, here the Radford Army Ammunition Plant, are subject to federal question jurisdiction). In Adams, the district court held that the Commonwealth of Virginia ceded all jurisdiction (except service of process) to the United States for the Radford Army Ammunition Plant, 201 F. Supp. 2d at 705. Defendants, contractors at the plant sued for hearing loss by plaintiff employees there, argued that Virginia law did not apply within this federal enclave. The district court held that, technically, Virginia law did not apply to these claims but plaintiffs' personal injury claims arising from that arsenal were federal claims, id., with 16 U.S.C. § 457 adopting state law as federal substantive law for wrongful acts within federal reservations, 201 F. Supp. 2d at 705-06. The court concluded that, for federal question purposes, personal injury actions arising on federal enclaves are subject to federal question jurisdiction, see id. at 705 n.4, apparently relying upon the Enclave Clause to establish federal question jurisdiction. In Fung, plaintiff was exposed to asbestos in submarines based at the Mare Island Shipyard, a United States Navy facility, and other federal facilities, 816 F. Supp. at 571. Defendants also claimed plaintiff's exposure was due to construction on submarines pursuant to a federal contract, id. The district court there held that the exposure to

18

asbestos occurred while on federal enclaves or vessels, and their action arose under 28 U.S.C.
§ 1331, 816 F. Supp. at 571 (citing Mater v. Holley, 200 F.2d 123 (5th Cir. 1952) (Fort
McPherson held to be federal enclave)). Thus, the Enclave Clause by itself provides the federal
law basis for this Court's subject matter jurisdiction.

Next, to have the Enclave Clause apply here Garlock needs to show that Virginia or
Alaska ceded exclusive jurisdiction to the United States and the United States affirmatively
accepted exclusive jurisdiction over the bases, either by showing the filing of a notice of
acceptance with the governors of Virginia or Alaska, or "in another manner prescribed by the
laws of the State where the land is situated," 40 U.S.C. § 3112(b). At oral argument, Garlock's
counsel stated that she uncovered what she produced to date in her responding papers due to the
expedited nature of this hearing and had outstanding Freedom of Information and other requests.

(1)    Virginia

Plaintiff first worked at the Langley Air Force Base, Hampton, Virginia, in 1966 (see
Docket No. 29, Pls. Supp'al Memo. at 4). He testified that he worked as a steam fitter in the
main buildings of the base from May to November 1966, working on the steam lines among the
main buildings (Docket No. 1, Notice of Removal, Ex. D, Pl. EBT Tr. at 45-47, 69-70, 77-78).

Virginia statutes retain jurisdiction and require an express deeding of additional
jurisdiction to the United States by the Governor and Attorney General, and acceptance by the
United States under 40 U.S.C. § 3112, Va. Code Ann. §§ 1-400, 1-401. Garlock points to
Virginia Code § 7.1-21 which conferred exclusive jurisdiction to the United States over the
Langley base (Docket No. 26, Garlock Memo. at 8) and notes the 1962 inventory listing Langley
as under the United States' exclusive jurisdiction (Docket No. 27, Garlock Atty. Aff. ¶¶ 27-28,

19

Ex. F, at 803 (Langley coded as "1," exclusive federal jurisdiction[6])). Garlock does not include a

more current survey by the General Services Administration or like agency but produced at oral

argument one of the two extant copies of the 1962 volume.

According to the GSA survey, parcels for the majority of Langley Air Force Base were

acquired between 1916 and 1942, with federal acceptance of jurisdiction by August 25, 1942

(id.). Garlock also presents federal government plans or programs for Langley stating

affirmatively that the United States has exclusive jurisdiction over that property (id. Exs. C, at 2

(public health assessment by the United States Department of Health and Human Services,

Langley purchased by the War Department in 1917), E, Appendix I at I2 (NASA Langley

Research Center emergency plan, Langley and neighboring NASA Langley Research Center

covered by "Exclusive Federal jurisdiction"); id. Garlock Atty. Aff. ¶¶ 24 (Langley described as

"federally owned"), 26).

---

[6]"Exclusive legislative jurisdiction" was defined in that study as "this term is applied
when the Federal Government possesses, by whichever method acquired, all of the authority of
the State, and in which the State concerned has not reserved to itself the right to exercise any of
the authority concurrently with the United States except the right to serve civil or criminal
process in the area for activities which occurred outside the area," Docket No. 27, Ex. F.

Code 2 for "concurrent legislative jurisdiction" was defined as "those instances wherein
in granting to the United States authority which would otherwise amount to exclusive jurisdiction
over an area, the State concerned has reserved to itself the right to exercise, concurrently with the
United States, all of the same authority," Docket No. 27, Ex. F.

Code 4 for "proprietorial interest only" was defined as "apply[ing] to those instances
wherein the Federal Government has acquired some right or title to an area in a State, but has not
obtained any measure of the State's authority over the area. In applying this definition,
recognition should be given to the fact that the United States, by virtue of its functions and
authority under various provision of the Constitution, has many powers and immunities not
possessed by ordinary landowners with respect to areas in which it acquires an interest, and of the
further fact that all its properties and functions are held or performed in a governmental rather
than a proprietary capacity," id.

Plaintiffs question the admissibility of Garlock's Internet research and argue that they fail to meet the tests set forth in Johnson (Docket No. 29, Pls. Supp'al Memo. at 5-8). They note that the 1962 GSA report cited by Garlock notes that a 722 acre parcel at Langley was owned by the United States but only in a proprietary interest, concluding that Garlock failed to show exclusive jurisdiction over all of that base (id. at 8; see Docket No. 27, Ex. F, at 803). That parcel was acquired between 1942 and 1959, and, as noted below, Virginia had concurrent jurisdiction with the United States over that parcel, see 1963-1964 Op. Atty. Gen. Va. 77, 1964 Va. AG LEXIS 265, at *2-3 (1964), infra. Plaintiffs argue that Virginia Code § 1-400(c) favors concurrent federal and state jurisdiction (Docket No. 29, Pls. Supp'al Memo. at 9). During the oral argument, plaintiffs point out that Garlock has not produced deeds from Virginia to the United States for any of the Langley parcels or a survey for any Langley parcel to tell whether the locations where plaintiff worked were part of a federal enclave.

In its own research, the Court found a Virginia Attorney General's opinion that may be relevant. When asked about the enforcement of Virginia advertising restrictions upon a business somewhere on Langley Air Force Base, the Virginia Attorney General opined that

> "The area upon which Langley Field is located was acquired by the United States during World War I. By Chapter 382, Acts of 1918, the United States was granted exclusive jurisdiction over such lands, the only right reserved by the State being the right to serve civil and criminal process thereon. If any additional land for this air force base was obtained by the United States after 1936, then concurrent jurisdiction is vested in the State according to the provisions of § 7-19 of the Code of 1930, which would include the authority to impose a license tax on businesses operated thereon. After 1936, in order to obtain the exclusive jurisdiction over lands acquired, a deed executed by the Governor and the Attorney General under the provisions of § 7-24 of the Code is necessary. I am not advised whether the activities which you seek to regulate or prohibit are on an area acquired subsequent to 1936 upon which Virginia has concurrent jurisdiction. Only an examination of the records of York County and Elizabeth City County would

21

disclose when the United States acquired this area and whether over the portion, if any, acquired after 1936 Virginia has ceded exclusive jurisdiction under the provisions of § 7-24 of the Code.

> "Assuming that the entire area comprising Langley Field was acquired by the United States prior to 1936, I am of the opinion that the State of Virginia has no authority to prosecute the violation of § 54-396 and § 54-398.26, Code of Virginia (1950) as amended."

1963-1964 Op. Atty. Gen. Va. 77, 1964 Va. AG LEXIS 265, at *2-3. This opinion (almost contemporaneous to when plaintiff was stationed on Langley) expressly did not distinguish parcels within the Langley base, in fact the Attorney General announced that he did not know where on that base (relative to when acquired by the United States) the activity at issue was to occur, id. This is similar to the parcel at issue in Johnson, supra, 994 F.2d at 983, but without the pedigree of the Brooklyn Navy Yard parcel found to have been ceded to the United States in Johnson.

But Garlock did not point out this source and the evidence it has produced does not clearly establish exclusive federal jurisdiction over the entire Langley base. While plaintiff testified that he worked on steam lines connecting the base's main buildings (Docket No. 1, Notice of Removal, Ex. D, Pl. EBT Tr. at 45-47, 69-70, 77-78), no one has stated where the main buildings or their steam lines were or whether that property is part of the 2,474 acres acquired by 1942 or part of the 722 acres acquired between 1942 and 1959 which has concurrent Virginia and federal jurisdiction (see Docket No. 1, Ex. F, at 803), cf. Johnson, supra, 994 F.2d at 983-85); 1964 Va. AG LEXIS 265, supra, at *2-3, and when the federal government acquired its interest in that parcel. Garlock bears the burden of showing the existence of federal question jurisdiction, in particular that (if a federal enclave is claimed) that the federal government had exclusive

JUN-06-2007   15:11       LIPSITZ & PONTERIO                716-849-0707       P.039
Case 1:07-cv-00278-WMS-HBS    Document 32    Filed 06/07/07    Page 23 of 32
Case 1:07-cv-00278-WMS-HBS    Document 32    Filed 06/04/2007    Page 23 of 32

jurisdiction over the site where plaintiff was exposed. Garlock's other exhibits are
environmental studies for Langley Air Force Base (Docket No. 27, Ex. C) with a general
declaration that the federal government owned the base, or the emergency plan for NASA's
facility at the base (id. Ex. E), which has a separate listing in the 1962 GSA survey (id. Ex. F, at
803, Langley Research Center). The Research Center was also listed in the GSA survey as the
United States owned only as a code 4, proprietorial interest in it.

On the facts alleged to date, this Court would have to assume, as the Virginia Attorney
General did in his 1964 opinion, that plaintiff was exposed on "Langley Field," the bulk of the
base that was acquired prior to 1936 to have exclusive federal jurisdiction over it to declare that
portion of the base to be a federal enclave; the main buildings of the base probably would be part
of the bulk of the base which the United States has exclusive jurisdiction. Garlock, however, has
the burden of showing that this Court has subject matter jurisdiction, the Court cannot make that
assumption. As a result, Garlock has not established the existence of a federal enclave at
Langley where plaintiff worked to form a basis for federal question jurisdiction.

(2)    Alaska

The Court next examines whether there was federal enclave in Alaska. Plaintiff also
worked at two Air Force facilities in Alaska, Elmendorf and Campion in 1967-68 (see Docket
No. 29, Pls. Supp'al Memo. at 4), although plaintiffs contend that Richard Zglinicki was exposed
to asbestos only at the latter facility (see Docket No. 1, Notice of Removal ¶ 7; Docket No. 20,
Pls. Memo. at 6; id., Ex. D, Pl. EBT Tr. at 69, 70; Docket No. 27, Ex. B, Pl. Trial Tr. at 54-55).
Garlock notes that Campion was acquired as an air base in 1952, prior to Alaska's statehood
(Docket No. 27, Garlock Atty. Aff. ¶ 29, Ex. G, U.S. Health & Human Services public health

23

assessment, at 3).  Campion Air Station is not listed among the federal properties in the 1962

GSA report, but it lists Air Force properties acquired between 1891 and 1959 (when Campion

was acquired) as totaling 144,184 acres and classified as code "2" or concurrent legislative

jurisdiction[7].  Under section 5 of the Alaska Statehood Act, the United States retained title to

property that it possessed prior to statehood (id. Garlock Atty. Aff. ¶ 30; Docket No. 26, Garlock

Memo. at 8).  Garlock found an Alaska Department of Environmental Conservation study that

identified Campion as owned by the "U.S.D.O.D.–Air Force–Elmendorf" (Docket No. 27,

Garlock Atty. Aff. ¶ 25, Ex. D).  That report itself, however, may question whether the United

States obtained exclusive jurisdiction over that base if the Air Force is answering to a state

environmental agency regarding its property.

Plaintiffs contend that the Alaska Statehood Act created concurrent jurisdiction over

federal bases in that state unless Congress expressly asserted exclusive jurisdiction in a separate

enactment (Docket No. 29, Pls. Supp'al Memo. at 7, 8-9, quoting Alaska Statehood Act, § 11(b),

discussed infra).

The Court also found that the Alaska Attorney General opined that "Because the Alaska

Statehood Act reserves exclusive federal jurisdiction only in Mt. McKinley National Park, and

reserves the power of exclusive legislation only over military reservations (generally speaking),

on other federal property in Alaska the state definitely has [concurrent sic] jurisdiction,"

1980 Op. (Inf.) Alaska Atty. Gen. (Oct. 10, 1980), 1980 Alas. AG LEXIS 413, at *3-4 (1980),

concluding that Alaska enjoys concurrent jurisdiction with the United States over national

---

[7]At oral argument, the parties produced copies of the pages from the GSA survey
involving Alaska.

monument property, id. at *4. Both Elmendorf and Campion were federal military bases that predated Alaska's statehood in 1959.

The Alaska Statehood Act, Pub. L. No. 85-508, § 11(b), 72 Stat. 339 (1958) (codified as amended at 48 U.S.C.A. prec. § 21), reserved for the United States the exercise by Congress of exclusive legislation under the Enclave Clause over military, Air Force, naval, and Coast Guard reservations (including the naval petroleum reserve) as prior to statehood, while excepting Alaska's power to serve civil and criminal process on these parcels. That section, however, recognized that Alaska had concurrent jurisdiction, absent further action by Congress to exercise exclusive jurisdiction. Federal exclusive jurisdiction (once asserted by Congress) would remain provided the particular parcel remain owned by the United States and was used for military purposes. Id.; see also United States v. Alaska, 521 U.S. 1, 41 (1997). Thus, Congress had to enact separate legislation asserting exclusive jurisdiction over bases or other pre-statehood federal property in Alaska.

The United States District Court for the District of Alaska, shortly after statehood, held that this provision granted Alaska concurrent jurisdiction over the naval petroleum reserve with the United States absent subsequent congressional action to exercise exclusive jurisdiction over that reserve, Petition of Long, 200 F. Supp. 313, 314-16 (D. Alaska 1961). The court discussed the legislative history and congressional debate prior to enactment of the Statehood Act, noting that Congress expressly stated its desire to require a second act to claim exclusive jurisdiction and implied concurrent jurisdiction with Alaska save such further legislation.

Garlock, not discussing the above authorities, has not shown subsequent congressional action to exercise exclusive jurisdiction over Campion.

Thus, Campion and Elmendorf are subject to concurrent jurisdiction of Alaska and the United States, and not exclusive federal jurisdiction to create a federal enclave for federal question jurisdiction.

With the federal enclave status of the Langley Air Force Base in Virginia unclear from the facts asserted herein, Garlock has failed to show either alleged asbestos exposure site were federal enclaves to create federal question jurisdiction. Thus, plaintiffs' motion to remand is **granted** on the basis of the lack of federal subject matter jurisdiction.

        b.    Remand and Multidistrict Litigation

The determination of whether a federal court has jurisdiction (be it this court or a transferee court under the Multidistrict Litigation statute) need not be deferred until this case is formally transferred. Although Garlock contends that the Multidistrict Litigation Court has confronted this jurisdictional issue before, this Court's research has not found rulings from the Eastern District of Pennsylvania on whether Langley or Campion were federal enclaves or any published ruling regarding federal enclaves generally. In fact, since 1991 and the establishment of a Multidistrict Litigation court for federal asbestos cases, the Court found twenty-five decisions by district courts other than the Eastern District of Pennsylvania considering federal enclave jurisdictional questions.[8]

---

[8]See Faulk v. Owens-Corning Fiberglass Corp., 48 F. Supp. 2d 653, 657 n.2 (E.D. Tex. 1999) (conditional transfer order pending, court retained jurisdiction over remand motion); Durham v. Lockheed Martin Corp., 445 F.3d 1247 (9th Cir. 2006); Adams, supra, 201 F. Supp. 2d 701; Hines v. AC & S, Inc., 128 F. Supp. 2d 1003 (N.D. Tex. 2001) (remanding due to untimely notice of removal); Anderson v. Crown Cork & Seal, 93 F. Supp. 2d 697 (E.D. Va. 2000); McGinty v. Anchor Packing Co., No. C 99-3786 SI, 1999 U.S. Dist. LEXIS 14294 (N.D. Cal. Sept. 3, 1999); Fung, supra, 816 F. Supp. 569; see also McCormick v. C.E. Thurston & Sons, 977 F. Supp. 400 (E.D. Va. 1997) (holding that aircraft carrier was doubtful as a federal enclave). Several cases turned on whether the removing defendants obtained consent of all defendants to

Case MDL-No 875   Document 5064   Filed 06/07/07   Page 27 of 32

For example, in <u>Freiberg v. Swinerton & Walberg Property Services</u>, 245 F. Supp. 2d

1144, 1149 n.2 (D. Colo. 2002), the asbestos Multidistrict Litigation court advised the district

court to proceed to decide a pending remand motion despite the conditional transfer of these

cases to the transferee court.  Defendants did not pursue removal on the basis of federal enclave

(since they could not get all defendants to consent to removal, <u>id.</u> at 1149 n.3) and argued on

federal officer jurisdiction, <u>id.</u> at 1148-49.  The district court rejected federal officer jurisdiction

and remanded the case to state court, <u>id.</u> at 1152-56.  The United States District Court for the

Northern District of California also has ruled on a pending remand motion despite a conditional

transfer order to the Multidistrict Litigation court.  <u>Viala v. Owens-Corning Fiberglass Corp.</u>,

No. C 94-0399 EFL, 1994 U.S. Dist. LEXIS 4824, at *3 (N.D. Cal. Apr. 13, 1994).

      The specialized expertise developed by that court in asbestos matters is not applicable to

deciding this basic, jurisdictional question.  Although Garlock argues that this Court should defer

decision until the transfer process is completed, no one has shown that exposure to asbestos at

federal military installations is common enough that it would be more efficient to have the

Multidistrict Litigation court resolve this issue.  As discussed above, delving into whether

particular parcels within military bases are or are not "federal enclaves" is very fact specific.

This individual analysis should be dealt with by the transferor court.  Therefore, this Court orders

that this action **be remanded.**

---

the removal, <u>e.g.</u>, <u>Nguyen v. Allied Signal</u>, No. C 98-03616 SI, 1998 U.S. Dist. LEXIS 15517
(N.D. Cal. Sept. 28, 1998); <u>Yap v. Owens-Corning Fiberglass Corp.</u>, No. C-94-4450 EFL, 1995
U.S. Dist. LEXIS 3779 (N.D. Cal. 1995).

c.     Federal Question Jurisdiction

If somehow either Langley or Campion is found to be a federal enclave, plaintiffs still

argue that Congress had to establish statutes that create a federal cause of action in order for this

Court to exercise original jurisdiction (Docket No. 20, Pls. Memo. at 8-9), and that the Enclave

Clause by itself cannot be used as a basis for federal question jurisdiction. Cases discussed

above applying federal enclave jurisdiction, however, found that the Enclave Clause itself was

sufficient grounds for federal question jurisdiction without requiring some additional federal

provision. See, e.g., Akin, supra, 851 F. Supp. at 822 & n.1 (workplace exposure to toxic

emissions); Fung, supra, 816 F. Supp. at 571 (workplace asbestos exposure); Adams, supra,

201 F. Supp. 2d at 705-06, 705 n.4 (workplace exposure to excessive noise); Sinicki, supra,

2005 U.S. Dist. LEXIS 13446, at *2, 3 (workplace explosion of rocket fuel, citing Akin v.

Ashland Chem., supra, 156 F.3d 1030). Garlock, however, needed to show that plaintiff was

exposed on a federal enclave. Since Garlock did not do this, and fails to show any other basis for

federal jurisdiction, plaintiffs' motion to remand is **granted**.

C.     Timeliness of the Removal

For completeness, the Court next considers the timing of Garlock's Notice of Removal

raised in plaintiffs' objection. Garlock was served with the Summons and Complaint[9] on

March 22, 2007, and dated and filed this Notice of Removal[10] on April 26, 2007 (Docket No. 1,

Notice of Removal ¶ 3).

---

[9]As stated above, the Summons and Complaint were stamped received by Garlock on
March 26, 2007, Docket No. 1, Notice of Removal, Ex. A.

[10]Plaintiffs argue that the Notice was filed on April 27, 2007, Docket No. 20, Pls. Memo.
at 4, but the Court's docket indicates that the Notice was filed the day before.

> "The notice of removal of a civil action or proceeding shall be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> "If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable,"

28 U.S.C. § 1446(b). If the receipt of the Complaint is used as the start date, the next business day thirty days from March 22, 2007, is Monday, April 23, 2007, see Fed. R. Civ. P. 6(a)(calculating time, if the last day is a Sunday, the period runs to the next business day).

Plaintiffs answered interrogatories on April 2, 2007, disclosing when and where plaintiff was exposed to asbestos dust. On April 23, 2007 (and previously on April 16 and 17, 2007), plaintiff testified that his only asbestos exposure occurred at the air bases (Docket No. 1, Notice of Removal ¶ 7). Plaintiffs argue that Garlock was on notice of possible federal jurisdiction from the Complaint[11] (as admitted by Garlock's counsel, Docket No. 20, Pls. Memo. at 4) and from the Answer of co-defendant Buffalo Pumps (Docket No. 1, Notice of Removal, Ex. E, ¶ 23, Mar. 26, 2007), which asserted a federal government contractor's defense from In re Eastern & Southern District Asbestos Litigation, 897 F.2d 626 (2d Cir. 1990), putting Garlock and the other defendants on notice of possible federal jurisdiction (Docket No. 20, Pls. Memo. at 4-5). Plaintiffs state that they alleged in paragraph 3 of their Complaint the disclaimer of any injury while on a federal enclave to avoid removal of their case to federal court (id. at 4 n.3).

---

[11]Plaintiffs cite to paragraph 3 of the Complaint where they disclaim any action for injuries caused by exposure to asbestos dust that occurred on a federal enclave, see Docket No. 20, Pls. Memo. at 4.

Garlock argued in the Notice of Removal that the removal time started later than the service of the Complaint (Docket No. 1, Notice of Removal ¶ 8), apparently referring to receipt of plaintiffs' interrogatory answers from April 2, 2007 (see id. ¶ 6, Ex. C), and subsequent deposition and trial preservation testimony (see id. ¶ 7, Ex. D). In opposing this motion, Garlock expressly states that it first learned of the possible federal claims from plaintiff's interrogatory answers of April 2, 2007 (Docket No. 27, Garlock Atty. Aff. ¶¶ 8-10). The Complaint expressly disclaimed federal enclave (or federal contractor) liability, so when Garlock's counsel received the Complaint she believed that there was no basis for removal (id. ¶¶ 4-7). Plaintiff's subsequent deposition refuted the Complaint's allegation of not claiming exposure on a federal enclave since plaintiff's exposure was only from being on federal bases (id. ¶ 12). Using the April 2, 2007, date, Garlock's April 26, 2007, Notice becomes timely (see id. ¶ 16).

The timeliness of a removal is not jurisdictional, its assertion may be barred by estoppel, Staples v. Joseph Morton Co., 444 F. Supp. 1312, 1313 (E.D.N.Y. 1978). But this timeliness is strictly construed by the courts, Martropico Compania, supra, 428 F. Supp. at 1038, 1036 (remanding action commenced in July 1976 on petition and notice of removal of January 1977); see also Stack v. Strang, 191 F.2d 106, 108 (2d Cir. 1951) (remanding untimely removal after former twenty-day period for filing notice). Section 1446(b) has two different possible starting points for the removal period, either when the defendant receives the Complaint alleging a basis for federal jurisdiction or after service of the Complaint when the defendant receives any pleading, motion, order or other paper that suggests federal jurisdiction. Here, Garlock argues that it learned of possible federal jurisdiction when plaintiff answered interrogatories that he was

30

exposed to asbestos on a federal enclave, despite the denial in the Complaint that their claims arose from a federal enclave.

Based on Garlock later learning of the possible federal claim from plaintiff's interrogatory answers, Garlock's notice of removal is timely. As discussed above, due to the absence of federal subject matter jurisdiction in this case, plaintiffs' motion to remand on that basis is **granted**.

As provided in 28 U.S.C. § 1450, "all injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect . . . ." The Court Clerk shall mail a certified copy of this Order to the Erie County Clerk, the court clerk for New York State Supreme Court, Erie County, see N.Y. Const. art. VI, § 6, subdiv. (e); N.Y. County Law § 525(1). Pursuant to the conditional transfer order, counsel shall notify the Judicial Panel on Multidistrict Litigation of this Order to remand.

     D.    Costs

Plaintiffs also seek recovery of their motion costs in seeking removal of this action (Docket No. 19). That motion is also **granted**. Plaintiffs are to submit their costs for their motion within five (5) days of entry of this Order.

CONCLUSION

For the reasons stated above, plaintiffs' motion to remand this action to New York State Supreme Court (Docket No. 19) is granted. Pursuant to 28 U.S.C. § 1447, the Clerk of Court is directed mail a certified copy of the Order of remand to the Erie County Clerk, the clerk of the New York Supreme Court from which this case was removed. Counsel are to notify the Judicial

31

Panel on Multidistrict Litigation of this Order.  Plaintiffs are to submit their costs for making this motion within five (5) days of entry of this Order.

So Ordered.

/s/ Hugh B. Scott
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
June 4, 2007