

MDL 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 2 8 2007

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE ASBESTOS PRODUCTS
LIABILITY LITIGATION
(NO. VI)

MDL Docket No. 875

CTO-276
ILC 1 07-1037
ILC 1 07-1038

## DEFENDANT PNEUMO ABEX LLC'S BRIEF OPPOSING
## PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER

Now comes Defendant Pneumo Abex LLC, successor in interest to Abex Corporation ("Abex"), by and through its attorneys, Swain, Hartshorn & Scott, Robert Scott and Tim Swain, and for its Brief Opposing Plaintiffs' Motion to Vacate Conditional Transfer Order, CTO-276, states as follows:

1.      Plaintiffs' filed their actions in state Court alleging Plaintiffs sustained personal injury as a result of exposure to asbestos.  Defendant removed these cases to the United States District Court for the Central District of Illinois on the grounds that the Defendant Illinois Central was improperly joined as a party defendant, and that without the Illinois Central as a defendant there was complete diversity between Plaintiffs and the remaining defendants.  A copy of the Supplemental Notices of Removal are attached as Exhibits A and B.

**OFFICIAL FILE COPY**

RECEIVED CLERK'S OFFICE
2007 JUN 28 A 10: 58

IMAGED JUN 2 9 2007

2.     Plaintiffs filed Motions to Remand and Defendant and the Illinois Central filed Responses to Plaintiffs' motions to remand.  Copies of Defendant's and the Illinois Central's Responses are attached as Exhibits C, D, E and F.

3.     Contrary to Plaintiffs' assertions in their Motion to Vacate, the Conditional Transfer Order was appropriate.  The MDL 875 was created precisely for the purpose of resolving asbestos claims such as these.

4.     In this Panel's original decision establishing MDL 875, and in countless Panel Orders since seeking to vacate conditional transfer orders, this Panel has held that the uniqueness of a party's status, the type of defendant, the docket condition of any specific federal district, the stage of pretrial proceedings, the presence of unique claims or additional claims not relating to asbestos injury were considered and rejected as grounds for carving out objections to transfer to the District Court for the Eastern District of Pennsylvania.

Since the creation of MDL 875 over 75,000 actions involving asbestos related injury have been closed in the transferee district.

5.     Given the experience of the United States District Court for the Eastern District of Pennsylvania in resolving asbestos claims, Plaintiffs have presented no persuasive arguments why that Court could not resolve any issues presented by this case.

WHEREFORE, for the reasons stated above, Plaintiffs' Motion to Vacate Conditional Transfer Order 276 should be denied, and this action should be transferred

to the United States District Court for the Easter District of Pennsylvania in accordance

with the Panel's prior Orders.

**PNEUMO ABEX LLC,** as
successor in interest to Abex Corporation,
Defendant

Timothy W. Swain II

Robert W. Scott, Esq.
Timothy W. Swain II, Esq.
**SWAIN HARTSHORN & SCOTT**
411 Hamilton Boulevard, Suite 1812
Peoria, IL  61602-1104
Telephone:  (309) 637-1700
Toll Free:  (800) 728-1806
Fax:  (309) 637-1708

RECEIVED
2007 JUN 28  A 10: 58
JUDICIAL PANEL ON

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 2 8 2007

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

FILED
CLERK'S OFFICE

IN RE ASBESTOS PRODUCTS
LIABILITY LITIGATION
(NO. VI)

MDL Docket No. 875

CTO-276
ILC 1 07-1037
ILC 1 07-1038

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2007, I served Defendant Pneumo Abex LLC's Brief Opposing Plaintiffs' Motion to Vacate Conditional Transfer Order on each of the attorneys lested on the attached Panel Service List by U. S. Mail, by depositing a copy of the same in a post office box, postage fully prepaid, in Peoria, Illinois.

**PNEUMO ABEX LLC**, successor in interest
to Abex Corporation, Defendant

Timothy W. Swain II, Esq.

Robert W. Scott, Esq.
Timothy W. Swain II, Esq.
**SWAIN, HARTSHORN & SCOTT**
**Attorneys for Defendant**
411 Hamilton Boulevard, Suite 1812
Peoria, IL 61602-1104
Telephone: (309) 637-1700
Toll Free: (800) 728-1806
Fax: (309) 637-1708

RECEIVED
CLERK'S OFFICE
2007 JUN 28 A 11: 05
PANEL ON

**PANEL SERVICE LIST (Excerpted from CTO-276)**
**Docket No. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

*Carol Durbin, etc. v. Pneumo Abex Corp., et al.,* C.D. Illinois, C.A. No. 1:07-1037
*Alan Nussbaum, etc. v. Pneumo Abex Corp., et al.* C.D. Illinois, C.A. No. 1:07-1038

Nicole Cress Behnen
Polsinelli, Shalton, Welte, Suelthaus
100 South Fourth Street, Suite 1100
St. Louis, MO 63102

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001

David A. Damico
Burns, White & Hickton, LLC
Four Northshore Center
106 Isabella St.
Pittsburgh, PA

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106-2574

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street, 33rd Floor
Philadelphia, PA 19103

Susan M. Hansen
Brownson & Ballou
225 South Sixth Street, Suite 4800
Minneapolis, MN 55402

Reginald S. Kramer
Oldham & Dowling
195 South Main Street, Suite 300
Akron, OH 44308-1314

Mark R. Kurz
Gundlach, Lee, Eggmann, Boyle
& Roessler
5000 West Main Street
P.O. Box 23560
Belleville, IL 62223-0560

David C. Landin
Hunton & Williams, LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Joshua Douglas Lee
Schiff Hardin, LLP
6600 Sears Tower
233 S. Wacker Drive
Chicago, IL 60606-6473

Gene Locks
Locks Law Firm, LLC
1500 Walnut Street
Philadelphia, PA 19102

Ronald L. Motley
Motley Rice, LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

James E. Peckert
Kehart Peckert & Booth
132 S. Water Street, Suite 200
P.O. Box 860
Decatur, IL 62525-0860

John J. Repcheck
Marks, O'Neill, O'Brien &
Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
Roven-Kaplan, L.L.P.
2190 North Loop West, Suite 410
Houston, TX 77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008

James Wylder
Wylder Corwin Kelly LLP
207 E. Washington Street, Suite 102
Bloomington, IL 61701

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard, Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West, 15th Floor
Philadelphia, PA 19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
645 Griswold St.
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226-4192

Andrew J. Trevelise
Reed Smith, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

James K. Weston II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

A

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 2 8 2007

FILED
CLERK'S OFFICE

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| ALAN NUSSBAUM and ROXY NUSSBAUM,<br><br>          Plaintiff,<br><br>   v.<br><br>PNEUMO ABEX CORPORATION, PNEUMO ABEX LLC, OWENS-ILLINOIS, INC., METROPOLITAN LIFE INSURANCE COMPANY, HONEYWELL INTERNATIONAL, INC., and ILLINOIS CENTRAL RAILROAD COMPANY,<br><br>          Defendants. | No. 07-CV-1038<br><br>SUPPLEMENT TO ITS NOTICE OF REMOVAL FROM THE STATE OF ILLINOIS, CIRCUIT COURT ELEVENTH JUDICIAL CIRCUIT, COUNTY OF MC LEAN, ILLINOIS |

## SUPPLEMENTAL NOTICE OF REMOVAL

As a Supplement to the Notice of Removal, the removing party, PNEUMO ABEX CORPORATION and PNEUMO ABEX LLC submits the following:

    1.    Removing party is a defendant in the above-entitled action.

    2.    On January 2, 2007, the above-entitled action was commenced against removing party in the Circuit Court of the Eleventh Judicial Circuit of Illinois, Mc Lean County, Illinois, and is now pending in such court.

    3.    On January 18, 2007, removing party was served with a summons and a complaint in the above-entitled action Corporation Service Company, Wilmington, Delaware, by Personal Service, in the County of New Castle, and State of Delaware.

    4.    No further proceedings have been had in this action in state court.

    5.    The amount in controversy in the above-entitled action, exclusive of interest and costs, exceeds the required jurisdictional amount of $75,000.00.

    6.    Plaintiff is a citizen of the state of Illinois. Defendant Pneumo Abex LLC is a Limited Liability Company created under the laws of Delaware with its

principal place of business in New Jersey. Pneumo Abex Corporation was a Delaware Corporation with its principal place of business in New Jersey. On November, 2004 Pneumo Abex Corporation was merged into Pneumo Abex LLC with Pneumo Abex as the surviving entity.

Owens-Illinois is a Delaware Corporation with its principal place of business in Ohio.

Metropolitan Life Insurance Company is a New York Corporation with its principal place of business in New York.

Honeywell International, Inc. is a Delaware Corporation with its principal place of business in New Jersey.

Illinois Central Railroad, Inc. is an Illinois Corporation. The basis for removing this case is that the Illinois Central Railroad, Inc. was improperly joined as a party to the plaintiff's suit. Without the Illinois Central Railroad as a defendant in the state court action there is complete diversity between plaintiff and the remaining defendants.

7.     The above-entitled action is a civil action for alleged injuries resulting in death from asbestos-containing materials.

8.     Copies of all state court process, pleadings, or orders served on petitioner in the above-entitled action are attached as Exhibits and filed with this notice.

9.     This notice is filed with this Court within 30 days after service on removing party of the summons and complaint in the above-entitled action, plus the intervening weekend following by the national holiday Presidents' Day during which the Court was closed.

10.     All defendants have consented to the removal, copies of the Consent Forms are attached as Exhibits A, B, C, & D.

Dated: March 5, 2007

PNEUMO ABEX CORPORATION
PNEUMO ABEX LLC
Defendants


/s/ Robert W. Scott
One of their attorneys

Robert W. Scott
SWAIN HARTSHORN & SCOTT
411 Hamilton Blvd, Suite 1812
Peoria, IL 61602
(309) 637-1700
Fax: (309) 637-1708

RECEIVED
CLERK'S OFFICE
2007 JUN 28  A 10: 58
PANEL ON

## CERTIFICATE OF SERVICE

Pursuant to the *Federal Rules of Civil Procedure, Rule 5(d)*, the undersigned attorney certifies that a true and correct copy of the paper entitled SUPPLEMENTAL NOTICE OF REMOVAL was served upon all attorneys of record in this legal matter by enclosing same in an envelope with proper postage prepaid, and prior to 5:00 pm on the 5th day of March, 2007, depositing said envelope in a United States Post Office mail box in Peoria, Illinois, with the complete address appearing on the envelope as below set forth:

WALKER & WYLDER, LTD.
Attorneys for Plaintiff
207 W. Jefferson Street
Bloomington, IL 61701

SCHIFF HARDIN, LLP
Attorneys for Owens-Illinois, Inc.
6600 Sears Tower
Chicago, IL 60606

KEHART, PECKART & BOOTH
Attorneys for Metropolitan
Life Insurance Company
132 S. Water Street, Suite 200
Decatur, IL 62523

POLSINELLI SHALTON WELTE SUELTHAUS
Attorneys for Honeywell International, Inc.
100 S. Fourth Street, Suite 1100
St. Louis, MO 63102

GUNDLACH, LEE, EGGMANN,
BOYLE & ROESSLER
Attorneys for Illinois Central
Railroad Company
5000 West Main Street
P.O. Box 23560
Belleville, IL 62223-0560

/s/ Robert W. Scott

# EXHIBIT
# A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| ALAN NUSSBAUM and ROXY NUSSBAUM,<br><br>    Plaintiff,<br><br>   v.<br><br>PNEUMO ABEX CORPORATION, PNEUMO ABEX LLC, OWENS-ILLINOIS, INC., METROPOLITAN LIFE INSURANCE COMPANY, HONEYWELL INTERNATIONAL, INC., and ILLINOIS CENTRAL RAILROAD   COMPANY,<br><br>    Defendants. | Case No. 07-cv-1038<br><br><br>CONSENT TO THE REMOVAL FROM THE ELEVENTH JUDICIAL CIRCUIT COURT, STATE OF ILLINOIS COUNTY OF MCLEAN. |

<u>CONSENT TO REMOVAL</u>

The undersigned attorney for Honeywell International, Inc., a Delaware Corporation, hereby consents to the Removal of McLean County Circuit Court Case No. 06-L-190 from the Eleventh Judicial Circuit of Illinois to the United States District Court for the Central District of Illinois.

Honeywell International, Inc., a Delaware Corporation, Defendant

_____
Nicole Behnen, Esq.

Nicole Behnen, Esq.
POLSINELLI SHALTON FLANIGAN SUELTHAUS
100 South Fourth Street, Suite 1100
St. Louis, MO 63102
Attorneys for Honeywell

# EXHIBIT
# B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

ALAN NUSSBAUM and ROXY
NUSSBAUM,
        Plaintiff,

    v.

PNEUMO ABEX CORPORATION,
PNEUMO ABEX LLC, OWENS-
ILLINOIS, INC., METROPOLITAN
LIFE INSURANCE COMPANY,
HONEYWELL INTERNATIONAL,
INC., and ILLINOIS CENTRAL
RAILROAD  COMPANY,

        Defendants.

Case No. 07-cv-1038

CONSENT TO THE REMOVAL FROM
THE ELEVENTH JUDICIAL CIRCUIT
COURT, STATE OF ILLINOIS
COUNTY OF MCLEAN.

## CONSENT TO REMOVAL

The undersigned attorney for Illinois Central Railroad, Inc., an Illinois Corporation,

hereby consents to the Removal of McLean County Circuit Court Case No. 06-L-190 from the

Eleventh Judicial Circuit of Illinois to the United States District Court for the Central District of

Illinois.

        Illinois Central Railroad, a Illinois Corporation,
        Defendant

        Thomas Peters, Esq.

        Thomas R. Peters, Esq.
        GUNDLACH, LEE, EGGMANN, BOYLE &
        ROESSLER
        5000 West Main Street
        Belleville, IL 62223-0560
        Attorneys for Illinois Central Railroad

# EXHIBIT C

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| ALAN NUSSBAUM and ROXY NUSSBAUM, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No.: 07-cv-1038 |
| | ) | |
| PNEUMO ABEX CORPORATION, PNEUMO | ) | CONSENT TO THE REMOVAL |
| ABEX LLC, METROPOLITAN LIFE INSURANCE | ) | FROM THE ELEVENTH |
| COMPANY, OWENS-ILLINOIS, INC., | ) | JUDICIAL CIRCUIT COURT, |
| HONEYWELL INTERNATIONAL, INC., and | ) | STATE OF ILLINOIS COUNTY |
| ILLINOIS CENTRAL RAILROAD COMPANY, | ) | |
| | ) | |

## **CONSENT TO REMOVAL**

The undersigned attorney for Metropolitan Life Insurance Company, a New York Corporation, hereby consents to the Removal of McLean County Circuit Court Case No. 06-L-190 from the Eleventh Judicial Circuit of Illinois to the United States District Court for the Central District of Illinois.

METROPOLITAN LIFE INSURANCE
COMPANY, a New York Corporation,
Defendant,


BY: ___/s/ James E. Peckert_____
Of Kehart, Peckert & Booth
Its Attorneys

James E. Peckert, Esquire
Jason B. Small, Esquire
Kehart, Peckert & Booth
132 South Water Street, Suite 200
P.O. Box 860
Decatur, Illinois  62525-0860
Ph: 217-428-4689
Fax: 217-422-7950

## PROOF OF SERVICE
### Alan Nussbaum and Roxy Nussbaum, v. Pneumo Abex Corporation, et al.
### McLean County Cause No. 06-L-190

The undersigned certifies that a copy of Defendant Metropolitan Life Insurance Company's Consent to Removal was filed electronically with the United States District Court for the Central District of Illinois on March 2, 2007, and that the following persons will be tendered a copy of this pleading filed with the United States District Court for the Central District of Illinois either electronically and/or by enclosing the same in an envelope, plainly addressed to each person at the address shown, with postage fully prepaid, and by depositing said envelope in a U.S. Post Office Mail Box in Decatur, Illinois, on the 2nd day of March, 2007.

**Attorneys for Plaintiffs**
James Wylder, Esq.
Walker & Wylder, Ltd.
207 West Jefferson
Bloomington, IL  61701

**Attorneys for Pneumo Abex**
Robert Scott, Esq.
Swain, Hartshorn & Scott
411 Hamilton Blvd., Suite 1812
Peoria, IL  61602-1104

**Attorneys for Honeywell**
Nicole C. Behnen, Esq.
Polsinelli, Shalton, Welte & Suelthaus
100 South Fourth Street, Suite 1110
St. Louis, MO  63102

**Attorneys for Owens-Illinois**
Joseph O'Hara, Jr., Esq.
Schiff, Hardin & Waite
6600 Sears Tower
233 South Wacker Drive
Chicago, IL  60606-6473

**Attorneys for Illinois Central Railroad Co.**
Mark R. Kurz, Esq.
Gundlach, Lee, Eggman, Boyle & Roessler
5000 West Main Street
P.O. Box 23560
Belleville, IL  62223

By:  /s/ James E. Peckert
         Of Kehart, Peckert & Booth

James E. Peckert
Jason B. Small
Kehart, Peckert & Booth
132 South Water Street, Suite 200
P.O. Box 860
Decatur, IL  62525-08650
Telephone:  217-428-4689
Facsimile:   217-422-7950

# EXHIBIT
# D

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

ALAN NUSSBAUM and ROXY
NUSSBAUM,
          Plaintiff,

    v.

PNEUMO ABEX CORPORATION,
PNEUMO ABEX LLC, OWENS-
ILLINOIS, INC., METROPOLITAN
LIFE INSURANCE COMPANY,
HONEYWELL INTERNATIONAL,
INC., and ILLINOIS CENTRAL
RAILROAD   COMPANY,

          Defendants.

Case No. 07-cv-1038

CONSENT TO THE REMOVAL FROM
THE ELEVENTH JUDICIAL CIRCUIT
COURT, STATE OF ILLINOIS
COUNTY OF MCLEAN.

<u>CONSENT TO REMOVAL</u>

The undersigned attorney for Owens-Illinois Inc., a Delaware Corporation, hereby

consents to the Removal of McLean County Circuit Court Case No. 06-L-190 from the Eleventh

Judicial Circuit of Illinois to the United States District Court for the Central District of Illinois.

Owens-Illinois Inc., a Delaware Corporation,
Defendant

Brooke D. Anthony, Esq.

SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL 60606
Attorneys for Owens-Illinois, Inc.

## Notices

1:07-cv-01038-MMM-JAG Nussbaum et al v. Pneumo Abex Corporation et al

12, 15, ASBESTOS, REFER, REMOVAL

### U.S. District Court

### United States District Court for the Central District of Illinois

## Notice of Electronic Filing

The following transaction was entered by Swain, Timothy on 3/5/2007 at 2:55 PM CST and filed on 3/5/2007

**Case Name:**     Nussbaum et al v. Pneumo Abex Corporation et al
**Case Number:**   1:07-cv-1038
**Filer:**         Pneumo Abex Corporation
                   Pneumo Abex LLC

**Document Number:** 4

**Docket Text:**
NOTICE OF REMOVAL by Pneumo Abex Corporation, Pneumo Abex LLC from Circuit Court of the Eleventh Judicial Circuit County of McLean, case number 06-L-190. (Attachments: # (1) Exhibit A# (2) Exhibit B# (3) Exhibit C# (4) Exhibit D)(Swain, Timothy)

**1:07-cv-1038 Notice has been electronically mailed to:**

Mark R Kurz     m.kurz@gundlachlee.com, info@gundlachlee.com, n.uhl@gundlachlee.com, s.wagner@gundlachlee.com

James E Peckert     jep@kehart.com, lara@kehart.com

Thomas R Peters     t.peters@gundlachlee.com, b.zawodniak@gundlachlee.com

Robert Westwood Scott     bobscott@peorialaw.com

James R Wylder     byounger@walkerwylder.com

**1:07-cv-1038 Notice has been delivered by other means to:**

Nicole C Behnen
POLSINELLI SHALTON & WELTE
Suite 1110
100 S Fourth St
St Louis, MO 63102-1825

Joseph J O'Hara , Jr
SCHIFF HARDIN LLP

6600 Sears Tower
233 S Wacker Dr
Chicago, IL 60606-6473

Jason B Small
KEHART PECKERT & BOOTH
132 S Water St Suite 200
PO Box 860
Decatur, IL 62525-0860

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1068668610 [Date=3/5/2007] [FileNumber=478186-0]
[72126be49e5cf096a93a0e57fdc97d717112b4f5eebc8dc8281d5e875bd086590f8c5
477a6df08dd670b860786515972b7f46ce2c885a46fa57d22b90351740b]]
**Document description:**Exhibit A
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1068668610 [Date=3/5/2007] [FileNumber=478186-1]
[9455314682c9cb811193d01892233331d8f4112143b8f57a5ada22e18059da9f71ed1
76bc5f2ef944c6bc63a80eac3224fe120d1bdd7ff60434cdb0a864c36d5]]
**Document description:**Exhibit B
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1068668610 [Date=3/5/2007] [FileNumber=478186-2]
[97993685fad516ef62a864f03d5582150dd04e28623cd90988ec3d935d59128634207
9265590b436e2be693e5b657f7b5a870f955da78906fa84e6c5c30d73cc]]
**Document description:**Exhibit C
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1068668610 [Date=3/5/2007] [FileNumber=478186-3]
[5dd7eb2f779371dcd903bff95b29a2cb5b2a66d1d788901832661208941625 3e5e9d4
88a0dea34db5543463078c8c9731758ada3545fbc4fd15653fa01d11be8]]
**Document description:**Exhibit D
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1068668610 [Date=3/5/2007] [FileNumber=478186-4]
[45028e1d514b3733853c40223e6b869fa1106ff3c660ecf4925849456e7072a9cdd07
b0c5bb9f2a465819dc0a5c22fe62db715a038fac1ebb79952e6c1d458e8]]

B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

CAROL DURBIN, individually, and
as Special Administrator of the
Estate of DEWEY DURBIN,
Deceased,

              Plaintiff,

       v.

PNEUMO ABEX CORPORATION,
PNEUMO ABEX LLC, OWENS-
ILLINOIS, INC., METROPOLITAN
LIFE INSURANCE COMPANY,
HONEYWELL INTERNATIONAL,
INC., and ILLINOIS CENTRAL
RAILROAD COMPANY,

              Defendants.

No. 07-CV-1037

SUPPLEMENT TO ITS NOTICE OF
REMOVAL FROM THE STATE OF
ILLINOIS, CIRCUIT COURT
ELEVENTH JUDICIAL CIRCUIT,
COUNTY OF MC LEAN, ILLINOIS

## SUPPLEMENTAL NOTICE OF REMOVAL

Pursuant to the Courts Order dated February 22, 2001, the removing party,
PNEUMO ABEX CORPORATION and PNEUMO ABEX LLC submits the
following:

    1.     Removing party is a defendant in the above-entitled action.

    2.     On January 2, 2007, the above-entitled action was commenced
against removing party in the Circuit Court of the Eleventh Judicial Circuit of
Illinois, Mc Lean County, Illinois, and is now pending in such court.

    3.     On January 18, 2007, removing party was served with a summons
and a complaint in the above-entitled action Corporation Service Company,
Wilmington, Delaware, by Personal Service, in the County of New Castle, and
State of Delaware.

    4.     No further proceedings have been had in this action in state court.

    5.     The amount in controversy in the above-entitled action, exclusive of
interest and costs, exceeds the required jurisdictional amount of $75,000.00.

6.     Plaintiff is a citizen of the state of Illinois, and defendant Pneumo Abex LLC is a Limited Liability Company created under the laws of Delaware with its principal place of business in New Jersey. Pneumo Abex Corporation was a Delaware Corporation with its principal place of business in New Jersey. On November, 2004 Pneumo Abex Corporation was merged into Pneumo Abex LLC with Pneumo Abex as the surviving entity.

Owens-Illinois is a Delaware Corporation with its principal place of business in Ohio.

Metropolitan Life Insurance Company is a New York Corporation with its principal place of business in New York.

Honeywell International, Inc. is a Delaware Corporation with its principal place of business in New Jersey.

Illinois Central Railroad, Inc. is an Illinois Corporation. The basis for removing this case is that the Illinois Central Railroad, Inc. was improperly joined as a party to the plaintiff's suit. Without the Illinois Central Railroad as a defendant in the state court action there is complete diversity between plaintiff and the remaining defendants.

7.     The above-entitled action is a civil action for alleged injuries resulting in death from asbestos-containing materials.

8.     Copies of all state court process, pleadings, or orders served on petitioner in the above-entitled action are attached as Exhibits and filed with this notice.

9.     This notice is filed with this Court within 30 days after service on removing party of the summons and complaint in the above-entitled action, plus the intervening weekend following by the national holiday Presidents' Day during which the Court was closed.

10.     All defendants have consented to the removal, copies of the Consent Forms are attached as Exhibits A, B, C, & D.

Dated: March 5, 2007

PNEUMO ABEX CORPORATION
PNEUMO ABEX LLC
Defendants


/s/ Robert W. Scott
One of their attorneys

Robert W. Scott
SWAIN HARTSHORN & SCOTT
411 Hamilton Blvd, Suite 1812
Peoria, IL 61602
(309) 637-1700
Fax: (309) 637-1708

## CERTIFICATE OF SERVICE

Pursuant to the *Federal Rules of Civil Procedure, Rule 5(d)*, the undersigned attorney certifies that a true and correct copy of the paper entitled SUPPLEMENTAL NOTICE OF REMOVAL was served upon all attorneys of record in this legal matter by enclosing same in an envelope with proper postage prepaid, and prior to 5:00 pm on the 5th day of March, 2007, depositing said envelope in a United States Post Office mail box in Peoria, Illinois, with the complete address appearing on the envelope as below set forth:

WALKER & WYLDER, LTD.
Attorneys for Plaintiff
207 W. Jefferson Street
Bloomington, IL 61701

SCHIFF HARDIN, LLP
Attorneys for Owens-Illinois, Inc.
6600 Sears Tower
Chicago, IL 60606

KEHART, PECKART & BOOTH
Attorneys for Metropolitan
Life Insurance Company
132 S. Water Street, Suite 200
Decatur, IL 62523

POLSINELLI SHALTON WELTE SUELTHAUS
Attorneys for Honeywell International, Inc.
100 S. Fourth Street, Suite 1100
St. Louis, MO 63102

GUNDLACH, LEE, EGGMANN,
BOYLE & ROESSLER
Attorneys for Illinois Central
Railroad Company
5000 West Main Street
P.O. Box 23560
Belleville, IL 62223-0560

/s/ Robert W. Scott

# EXHIBIT
# A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| CAROL DURBIN, individually, and as Special Administrator of the Estate of DEWEY DURBIN, Deceased, Plaintiff, v. PNEUMO ABEX CORPORATION, PNEUMO ABEX LLC, OWENS-ILLINOIS, INC., METROPOLITAN LIFE INSURANCE COMPANY, HONEYWELL INTERNATIONAL, INC., and ILLINOIS CENTRAL RAILROAD COMPANY, Defendants. | Case No. 07-cv-1037 CONSENT TO THE REMOVAL FROM THE ELEVENTH JUDICIAL CIRCUIT COURT, STATE OF ILLINOIS COUNTY OF MCLEAN. |

<u>CONSENT TO REMOVAL</u>

The undersigned attorney for Honeywell International, Inc., a Delaware Corporation, hereby consents to the Removal of McLean County Circuit Court Case No. 06-L-191 from the Eleventh Judicial Circuit of Illinois to the United States District Court for the Central District of Illinois.

Honeywell International, Inc., a Delaware
Corporation, Defendant

_____
Nicole Behnen, Esq.

Nicole Behnen, Esq.
POLSINELLI SHALTON FLANIGAN
SUELTHAUS
100 South Fourth Street, Suite 1100
St. Louis, MO 63102
Attorneys for Honeywell

# EXHIBIT
# B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| CAROL DURBIN, individually, and as Special Administrator of the Estate of DEWEY DURBIN, Deceased, <br> Plaintiff, <br> v. <br><br> PNEUMO ABEX CORPORATION, PNEUMO ABEX LLC, OWENS-ILLINOIS, INC., METROPOLITAN LIFE INSURANCE COMPANY, HONEYWELL INTERNATIONAL, INC., and ILLINOIS CENTRAL RAILROAD   COMPANY, <br><br> Defendants. | Case No. 07-cv-1037 <br><br> CONSENT TO THE REMOVAL FROM THE ELEVENTH JUDICIAL CIRCUIT COURT, STATE OF ILLINOIS COUNTY OF MCLEAN. |

### CONSENT TO REMOVAL

The undersigned attorney for Owens-Illinois Inc., a Delaware Corporation, hereby

consents to the Removal of McLean County Circuit Court Case No. 06-L-191 from the Eleventh

Judicial Circuit of Illinois to the United States District Court for the Central District of Illinois.


Owens-Illinois Inc., a Delaware Corporation,
Defendant

Brooke D. Anthony, Esq.

Brooke D. Anthony, Esq.
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL 60606
Attorneys for Owens-Illinois, Inc.

# EXHIBIT C

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| CAROL DURBIN, individually, and as Special Administrator of the Estate of DEWEY DURBIN, Deceased,<br><br>             Plaintiff,<br><br>v.<br><br>PNEUMO ABEX CORPORATION, PNEUMO ABEX LLC, OWENS-ILLINOIS, INC., METROPOLITAN LIFE INSURANCE COMPANY, HONEYWELL INTERNATIONAL, INC., and ILLINOIS CENTRAL RAILROAD COMPANY,<br><br>        Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )<br><br>Case No. 07-cv-1037<br><br>CONSENT TO THE REMOVAL FROM THE ELEVENTH JUDICIAL CIRCUIT COURT, STATE OF ILLINOIS COUNTY OF MCLEAN. |

## CONSENT TO REMOVAL

The undersigned attorney for Metropolitan Life Insurance Company, a New York Corporation, hereby consents to the Removal of McLean County Circuit Court Case No. 06-L-191 from the Eleventh Judicial Circuit of Illinois to the United States District Court for the Central District of Illinois.

METROPOLITAN LIFE INSURANCE
COMPANY, a New York Corporation,
Defendant,

BY:    /s/ James E. Peckert
      Of Kehart, Peckert & Booth
        Its Attorneys

James E. Peckert, Esquire
Jason B. Small, Esquire
Kehart, Peckert & Booth
132 South Water Street, Suite 200
P.O. Box 860
Decatur, Illinois 62525-0860
Ph: 217-428-4689
Fax: 217-422-7950

## PROOF OF SERVICE
### Durbin, Carol, v. Pneumo Abex Corporation, et al.
### McLean County Cause No. 06-L-191

The undersigned certifies that a copy of Defendant Metropolitan Life Insurance Company's Consent to Removal was filed electronically with the United States District Court for the Central District of Illinois on March 2, 2007, and that the following persons will be tendered a copy of this pleading filed with the United States District Court for the Central District of Illinois either electronically and/or by enclosing the same in an envelope, plainly addressed to each person at the address shown, with postage fully prepaid, and by depositing said envelope in a U.S. Post Office Mail Box in Decatur, Illinois, on the 2nd day of March, 2007.

**Attorneys for Plaintiffs**
James Wylder, Esq.
Walker & Wylder, Ltd.
207 West Jefferson
Bloomington, IL  61701

**Attorneys for Pneumo Abex**
Robert Scott, Esq.
Swain, Hartshorn & Scott
411 Hamilton Blvd., Suite 1812
Peoria, IL  61602-1104

**Attorneys for Honeywell**
Nicole C. Behnen, Esq.
Polsinelli, Shalton, Welte & Suelthaus
100 South Fourth Street, Suite 1110
St. Louis, MO  63102

**Attorneys for Owens-Illinois**
Joseph O'Hara, Jr., Esq.
Schiff, Hardin & Waite
6600 Sears Tower
233 South Wacker Drive
Chicago, IL  60606-6473

**Attorneys for Illinois Central Railroad Co.**
Mark R. Kurz, Esq.
Gundlach, Lee, Eggman, Boyle & Roessler
5000 West Main Street
P.O. Box 23560
Belleville, IL  62223

By:  /s/ James E. Peckert
       Of Kehart, Peckert & Booth

James E. Peckert
Jason B. Small
Kehart, Peckert & Booth
132 South Water Street, Suite 200
P.O. Box 860
Decatur, IL  62525-08650
Telephone:  217-428-4689
Facsimile:   217-422-7950

# EXHIBIT
# D

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| CAROL DURBIN, individually, and as Special Administrator of the Estate of DEWEY DURBIN, Deceased,<br>        Plaintiff,<br><br>    v.<br><br>PNEUMO ABEX CORPORATION, PNEUMO ABEX LLC, OWENS-ILLINOIS, INC., METROPOLITAN LIFE INSURANCE COMPANY, HONEYWELL INTERNATIONAL, INC., and ILLINOIS CENTRAL RAILROAD  COMPANY,<br><br>        Defendants. | Case No. 07-cv-1037<br><br><br>CONSENT TO THE REMOVAL FROM THE ELEVENTH JUDICIAL CIRCUIT COURT, STATE OF ILLINOIS COUNTY OF MCLEAN. |

## CONSENT TO REMOVAL

The undersigned attorney for Illinois Central Railroad, Inc., an Illinois Corporation, hereby consents to the Removal of McLean County Circuit Court Case No. 06-L-191 from the Eleventh Judicial Circuit of Illinois to the United States District Court for the Central District of Illinois.

Illinois Central Railroad, a Illinois Corporation, Defendant

_____
Thomas Peters, Esq.

Thomas R. Peters, Esq.
GUNDLACH, LEE, EGGMANN, BOYLE & ROESSLER
5000 West Main Street
Belleville, IL 62223-0560
Attorneys for Illinois Central Railroad

**Notices**

<u>1:07-cv-01037-JBM-JAG Durbin v. Peumo Abex Corporation et al</u>
13, 15, ASBESTOS, REFER, REMOVAL


### U.S. District Court

### United States District Court for the Central District of Illinois

## Notice of Electronic Filing

The following transaction was entered by Swain, Timothy on 3/5/2007 at 2:49 PM CST and filed on 3/5/2007

| | |
|---|---|
| **Case Name:** | Durbin v. Peumo Abex Corporation et al |
| **Case Number:** | <u>1:07-cv-1037</u> |
| **Filer:** | Pneumo Abex Corporation |
| | Pneumo Abex LLC |

**Document Number:** <u>5</u>

**Docket Text:**
NOTICE *OF REMOVAL- Supplemental* by Pneumo Abex Corporation, Pneumo Abex LLC (Attachments: # (1) Exhibit A# (2) Exhibit B# (3) Exhibit C# (4) Exhibit D)(Swain, Timothy)


**1:07-cv-1037 Notice has been electronically mailed to:**

Mark R Kurz    m.kurz@gundlachlee.com, info@gundlachlee.com, n.uhl@gundlachlee.com, s.wagner@gundlachlee.com

Robert Westwood Scott    bobscott@peorialaw.com

James R Wylder    byounger@walkerwylder.com

**1:07-cv-1037 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1068668610 [Date=3/5/2007] [FileNumber=478177-0]
[82f58c79b0a09147ec3a5f7d861ed6ff894ca52a701d077489af4c4bf762923ffaa54
624447f23e689e5c2f4ed1800a020035dd9f9d2ef55834958fa7f1b874e]]
**Document description:** Exhibit A
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1068668610 [Date=3/5/2007] [FileNumber=478177-1]
[8f8107587cdfc05519fd4658cbd4021b62257267ff8f9e52696a3c0e1f32d844ed0bf

0d1622ca251372238d267ef81d3a2b9bd41444e2a017783ee484bd31f2e]]

**Document description:**Exhibit B

**Original filename:**n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1068668610 [Date=3/5/2007] [FileNumber=478177-2]
[8688cfe35cd5de5cd955bfaf0acda918de33eda2f240e4d8ad7104c7616cec7164f94
2db9b0232a8baec473af1e34a024653310912495099a44ab85a25b3f9b2]]

**Document description:**Exhibit C

**Original filename:**n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1068668610 [Date=3/5/2007] [FileNumber=478177-3]
[241baf2880b218e2f51d28a9cf2dffcc1182c3a70a85118a8da969ee02d655d3a581]
fcc2c22e80598c96f98ea5e466859116a9aaafd54baeb5b0190c143721a]]

**Document description:**Exhibit D

**Original filename:**n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1068668610 [Date=3/5/2007] [FileNumber=478177-4]
[75288b7fd03b5c2ba2e11858673429ed918f9a82758bfba2be419665532b7223aedc6
ce292da975e2b81f6dbf775948383bddf90c7f6951c6be3a2a0184a12d2]]

C

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

ALAN NUSSBAUM and ROXY
NUSSBAUM,

         Plaintiff,

   v.

PNEUMO ABEX CORPORATION,
PNEUMO ABEX LLC, OWENS-
ILLINOIS, INC., METROPOLITAN
LIFE INSURANCE COMPANY,
HONEYWELL INTERNATIONAL,
INC., and ILLINOIS CENTRAL
RAILROAD COMPANY,

         Defendants.

No. 07-CV-1038

## DEFENDANT PNEUMO ABEX CORPORATION and PNEUMO ABEX LLC's

## RESPONSE TO PLAINTIFF'S MOTION FOR REMAND TO STATE COURT

NOW COMES PNEUMO ABEX CORPORATION and PNEUMO ABEX LLC (Abex) by its attorney Robert W. Scott of Swain Hartshorn & Scott, and for the Response to Plaintiff's Motion for Remand states as follows:

1.     On December 29, 2006 Plaintiff's filed a multi-count Complaint in the Circuit Court of McLean County Illinois, alleging that Plaintiff, Alan Nussbaum was suffering from an asbestos related disease. Counts 1 and 2 allege that Abex, Metropolitan Life Insurance Company, Owens-Illinois, Inc. and Honeywell International, Inc.

engaged in a conspiracy which was the proximate cause of Plaintiff's injuries. Counts 3 and 4 allege negligence claims against the Illinois Central Railroad.

2.    Defendants Abex, Metropolitan Life Insurance Company, Owens-Illinois, Inc and Honeywell International, Inc., are citizens of states other than Illinois. Defendant Illinois Central Railroad is a citizen of Illinois.

3.    Plaintiffs assert in their Motion for Remand that because the Illinois Central Railroad is a citizen of Illinois there is an absence of complete diversity.

4.    Defendant Illinois Central Railroad was fraudulently joined as a Defendant in the state court actions. Fraudulently joined parties do not destroy diversity jurisdiction. Gottlieb v. Western Hotel Co., 990 F 2d 323 (7th Cir., 1993).

5.    The Illinois Central Railroad was fraudulently joined because Plaintiffs will be unable to establish under Illinois law that the railroad owed any duty to Plaintiffs.

6.    Plaintiff's Complaint alleges, in Counts 3 and 4 that the Illinois Central Railroad negligently transported asbestos to Plaintiff Alan Nussbaum's place of employment, Union Asbestos and Rubber Company (Unarco), and negligently failed to warn Plaintiff and

other employees of the hazards of asbestos it was transporting. A copy of the Complaint is attached as Exhibit 1.

7. The only relationship between Plaintiff and Illinois Central Railroad is that Plaintiff was an employee at the consignee (Unarco) of the shipments of asbestos being transported by Illinois Central Railroad. As the affidavit of Charles G. Garrett Illinois Central Railroad (Attached as Exhibit 2) establishes that Illinois Central Railroad only transports to Unarco, bags of asbestos in railroad cars and products manufactured by Unarco for delivery, either directly or indirectly to other customers or consignees. Once the railroad cars reach Unarco the bags of asbestos are unloaded by employees of Unarco. Unarco employees load the finished products onto the railroad cars. The Illinois Central Railroad is paid only for transporting the asbestos. It never takes ownership of the asbestos and plays no role in determining the terms of the purchase by Unarco of the asbestos from the manufacturer or suppliers. The Illinois Central Railroad does not design, test, package, market advertise, label, alter or modify the bags of asbestos or finished products. The Illinois Central Railroad does nothing with the asbestos except transport it from one location to another. The Illinois Central Railroad has no knowledge of how the asbestos is used at Unarco nor which Unarco employees come into contact with the asbestos.

8.    In a recent case pending before the District Court for the Southern

District of Illinois the Court ruled, in virtually identical

circumstances, that Illinois law imposes no duty on a transportation

company to the employee of a consignee. Bergman v. U.S. Silica et

al., 2003 WL2982136 (S.D. Illinois, 2006). A copy of the Bergman

decision is attached as Exhibit 3. In Bergman Plaintiff sought to hold

liable, in both strict liability and negligence, a trucking company

which delivered silica to Plaintiff's employer. The Court, citing City

of Chicago v. Beretta U.S.A. Corp., 213 Ill. 2d 351, 821 N.E. 2d 1099

(2004), listed the factors courts in Illinois would use in imposing a

duty on the railroad: 1. whether it is reasonably foreseeable that the

conduct of the railroad would cause injury to another in

transporting the asbestos; 2. the likelihood of any injury to another

in transporting the asbestos; 3. the extent of the burden imposed on

the railroad to guard against such injury; and 4. the resulting

consequence if such a burden were imposed on the railroad. After

reviewing these factors the Court found there was no reasonable

possibility that Plaintiff could state a negligence claim against the

trucking company. In doing so the Court stated that the trucking

company    "...... cannot be reasonably expected to anticipate the injury

as caused in this case-otherwise, it would be expected to anticipate the

injuries for any and every product it may transport in the course of its

business. That is clearly unreasonable and would present too great a

burden, especially when considering the fact that Lotz Trucking has no knowledge of what UGL intended to do with the silica once it was unloaded from its trucks by UGL employees."

9. Under Illinois law a duty is an obligation to conform to a certain standard of conduct for the protection of another against an unreasonable risk of harm. Doe v Noe, 293 Ill. App 3d 1099, 690 N.E. 2d 1012, 228 Il. Dec. 937 (1st Dist. 1997). In determining whether a duty exists, Courts in Illinois ask whether the Defendant and the Plaintiff stood in such a relationship to one another that the law imposed upon the Defendant an obligation of reasonable conduct for the benefit of the Defendants. Mieher v. Brown, 54 Ill. 2d 539, 301 N.E. 2d 307 (1973). As the Court in Bergman noted, a number of policy considerations may be examined in making this determination, including the foreseeability and likelihood of the injury, the magnitude of imposing a burden of Defendants of guarding against such injury, and the consequences of placing that burden on Defendant. City of Chicagov. Beretta U.S.A. Corp., 213 Ill. 2d 351, 290 Ill. Dec. 525, 821 N.E. 2d 1099.

10. As set forth in the affidavit of Charles G. Garrett (Exhibit 2) the Illinois Central Railroad had no knowledge of what use Unarco was making of the asbestos it delivered to the plant, or how Unarco was operating its plant. Because it did not know what was being done with the asbestos after it was unloaded from the cars, the Plaintiffs

injuries could not have been foreseeable to the Illinois Central Railroad, nor could their injuries have appeared likely to the Illinois Central Railroad. As the Court in <u>Bergman</u> pointed out, a carrier cannot be reasonably expected to anticipate the injury as caused in this case. Otherwise, it would be expected to anticipate the injuries for any and every product it may transport in the course of its business.

11.   That such a duty would be overly burdensome on a common carrier is obvious. The courier would have to become an expert in every product or material it carries. Such a duty would require a common carrier to become such an expert to determine if its cargo posed a risk to the employees of its consignees, to ultimate end users of the product, and to persons living near its tracks or facilities. The imposition of such a duty by one state on an interstate carrier would be manifestly unreasonably burdensome.

12.   Plaintiffs, in their Motion for Remand attach several rulings by Circuit Court judges, in McLean County denying the Railroad's Motion to Dismiss or Motion for Summary Judgment. It needs to be pointed out these are Circuit Court decisions. None are appellate decisions, and Plaintiff cites no appellate authority in arguing that they can state a cause of action against the Illinois Central. Also, in none of their rulings do the Courts give any reasons or rationale for

its ruling. Plaintiff also attaches Orders approving settlements between Illinois Central Railroad and various Plaintiffs. It should not need to be pointed out that parties settle cases for a variety of reasons and parties often settle to avoid lengthy and expensive trials even if they believe they would ultimately prevail. Given the relatively small amounts the Illinois Central paid to settle the cases it can hardly be concluded that Illinois Central Railroad was conceding liability by settling.

13. If anyone owed a duty to Plaintiff it was his employer, Unarco. In fact, in Paragraph 16 of Count 1 of the Complaint Plaintiff alleges that employers such as Unarco had a "statutory, regulatory, and decisional law duty" to provide its employers such as Plaintiff with a safe workplace, and to warn Plaintiff of hazards in the workplace.

14. Plaintiffs cannot reasonably state a cause of action against the Illinois Central Railroad because they cannot establish a duty on the past of the Railroad. Because they cannot establish such a duty, the Illinois Central Railroad was fraudulently joined. Without the Illinois Central Railroad as a Defendant there exists complete diversity between the parties.

WHEREFORE, Defendant prays for an Order denying Plaintiff's Motion

for Remand.

DATED this 5th day of April, 2007.

PNEUMO ABEX LLC, as
successor in interest to Abex Corporation,
Defendant

/s/ Robert W. Scott
Robert W. Scott

Robert W. Scott, Esq.
Timothy W. Swain II, Esq.
SWAIN HARTSHORN & SCOTT
411 Hamilton Boulevard, Suite 1812
Peoria, IL 61602-1104
Telephone: (309) 637-1700
Toll Free:  (800) 728-1806
Fax:  (309) 637-1708

## CERTIFICATE OF SERVICE

Pursuant to the *Federal Rules of Civil Procedure, Rule 5(d)*, the undersigned attorney certifies that I filed the following Notice of Appearance with the Clerk of the Court using the EFC system which will send notification of such filing to:

Mark R Kurz    m.kurz@gundlachlee.com, info@gundlachlee.com, n.uhl@gundlachlee.com, s.wagner@gundlachlee.com

Joshua Douglas Lee    jdlee@schiffhardin.com, edocket@schiffhardin.com, estaggs@schiffhardin.com, tsallay@schiffhardin.com

James R Wylder    byounger@walkerwylder.com

I further certify that I served the above mentioned pleadings on the following this 5th day of April, 2007 by U.S. Mail, first class postage prepaid:

KEHART, PECKAR & BOOTH
Attorneys for Metropolitan
Life Insurance Company
132 S. Water Street, Suite 200
Decatur, IL 62523

POLSINELLI SHALTON WELTE SUELTHAUS
Attorneys for Honeywell International, Inc.
100 S. Fourth Street, Suite 1100
St. Louis, MO 63102

/s/ Robert W. Scott

# EXHIBIT
# 1

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
COUNTY OF McLEAN

ALAN NUSSBAUM and ROXY NUSSBAUM,    )
         )
    Plaintiffs,    )
    v.    ) No. 06 L ___
PNEUMO ABEX CORPORATION, PNEUMO    )
ABEX LLC, METROPOLITAN LIFE    )
INSURANCE COMPANY, OWENS-ILLINOIS,    )
INC., HONEYWELL INTERNATIONAL, INC.,    )
and ILLINOIS CENTRAL RAILROAD    )
COMPANY,    )
    Defendants.    )

**FILED**
McLEAN
DEC 2 9 2006
CIRCUIT CLERK
COUNTY

FIRST CASE MANAGEMENT CONFERENCE
BEFORE JUDGE _____ Sour
SET ON 6-1-07 AT 11:00 AM/PM

## COMPLAINT

### Count 1

Plaintiff, **ALAN NUSSBAUM**, complains of Defendants, PNEUMO ABEX

CORPORATION, PNEUMO ABEX LLC, METROPOLITAN LIFE INSURANCE

COMPANY, OWENS-ILLINOIS, INC., and HONEYWELL INTERNATIONAL, INC.,

as follows:

    1.    Alan Nussbaum was employed at the asbestos plant located at 1111 W.

Perry Street, Bloomington, Illinois, from August 1955 to May, 1958 when the plant was

owned and operated by Union Asbestos & Rubber Company, later known as Unarco

Industries, Inc.

    2.    Asbestos and asbestos products were at the plant during Alan Nussbaum's

employment.

    3.    Unarco Industries, Inc., Johns-Manville Corporation, Johns-Manville

Sales Corporation, Raymark Industries, Inc. (formerly Raybestos-Manhattan, Inc.),

Owens Corning, and Pittsburgh Corning Corporation, are corporations, and they, or their

corporate predecessors, were during the time relevant to the allegations herein, in the business of manufacturing and distributing asbestos containing products.

4.      Defendants, Pneumo Abex Corporation, Pneumo Abex LLC, Honeywell International, Inc., and Owens-Illinois, Inc., are corporations and were, during the times relevant to the allegations herein, themselves or through predecessors, in the business of manufacturing and distributing asbestos-containing products.

5.      Defendant, Metropolitan Life Insurance Company is a corporation.

6.      Hereafter "Conspirators" refers to each of the corporations named in paragraphs 3 through 5.

7.      Alan Nussbaum was exposed to asbestos, including asbestos from one or more of the conspirators, during his employment at the plant.

8.      Exposure to asbestos is a cause of serious disease and death, including asbestosis and malignancies.

9.      Alan Nussbaum contracted asbestosis as a result of his exposure to asbestos.

10.     The asbestosis from which Alan Nussbaum suffers is an indivisible injury which resulted from the total and cumulative effect of all the asbestos to which he was exposed.

11.     Before and during Alan Nussbaum's exposure to asbestos, the Conspirators knew that exposure to asbestos caused serious disease and death.

12.     The Conspirators knew that individuals exposed to asbestos were ignorant of the hazardous properties of asbestos.

13.    Before and during his exposure to asbestos, Alan Nussbaum was unaware that exposure to asbestos caused serious disease and death.

14.    The knowledge of the Conspirators included the following:

    a)    two or more Conspirators had been in the asbestos business for years and had directed manufacturing operations;

    b)    each had actual knowledge of asbestos disease and death among workers exposed to asbestos as early as the 1940's.

15.    The conspirators knew that asbestos was inherently dangerous and knew that under the decisional law of Illinois and other states, each was under a duty not to sell asbestos without providing adequate warning of its harmful qualities.

16.    Two or more Conspirators had employees who were exposed to asbestos dust and each of them had a statutory, regulatory, and decisional law duty to provide their employees with a safe place to work, or at the least, to warn the employees of the hazards presented by the presence of asbestos dust.

17.    Each Conspirator knew that if it adequately warned its own employees and other persons who were at risk of asbestos disease, the publication of such warning would cause workers to leave the industries using asbestos and therefore reduce the sale and usage of asbestos.

18.    The conspirators knowingly conspired and agreed among themselves to, among others:

    a)    positively assert what was not true, that it was safe for people to be exposed to asbestos and asbestos-containing products;

    b)    conceal information about the harmful effects of asbestos.

19.    One or more of the Conspirators performed the following overt acts in

furtherance of the conspiracy:

a)    sold asbestos or asbestos products which were used
at the plant without warning of the hazards known
to the conspirators, including sales by Johns-
Manville which exposed Alan Nussbaum to
asbestos;

b)    refused to warn its own exposed employees about
the hazards of asbestos known to it, including the
refusal of Unarco to warn its employee, Alan
Nussbaum;

c)    edited and altered the reports and drafts of
publications initially prepared by Dr. Lanza
concerning the hazards of asbestos during the
1930's;

d)    agreed in writing not to disclose the results of
research on the effects of asbestos upon health
unless the results suited their interests;

e)    obtained an agreement in the 1930's from the
editors of ASBESTOS, the only trade magazine
devoted exclusively to asbestos, that the magazine
would never publish articles on the fact that
exposure to asbestos caused disease, and sustained
this agreement into the 1970's;

f)    suppressed the dissemination of a report by
Dr. Gardner in 1943 which was critical of the
concept that there was a safe level of asbestos
exposure;

g)    through their control of the Asbestos Textile
Institute (ATI), defeated further study of the health
of workers when William Hemeon graphically
demonstrated the need for such study and
dissemination of information in the 1940's;

h)    edited and altered the reports and drafts of publications regarding asbestos and health initially prepared by Dr. Vorwald during 1948-1951;

i)    altered, including the deletion of all references to the association of asbestosis and lung cancer, the original report of the study performed by Braun & Truan of the Industrial Hygiene Foundation before the altered version was published in 1958;

j)    suppressed the results of the Fibrous Dust Studies conducted during 1966-74 by the Industrial Health Foundation, Inc., Johns-Manville, Raybestos Manhattan, Owens Corning, Pittsburgh Corning Corporation and PPG Industries, which results demonstrated and confirmed that exposure to asbestos caused cancer and asbestosis;

k)    purchased asbestos which did not contain warnings from co-conspirators, to which the purchaser then exposed its own employees without warning of the hazards known to the seller and purchaser, including the purchase of asbestos by Owens-Illinois from Unarco;

l)    refused to warn its employees who had to use asbestos-containing materials in the manufacture of other products for the conspirator of the hazards of exposure to asbestos known to the conspirator, including the refusal of Owens-Illinois to warn its employees who were exposed to asbestos in connection with the manufacture of glass products of the hazards of asbestos known to Owens-Illinois;

m)    purchased asbestos which did not contain warnings from co-conspirators, to which the purchaser then exposed its own employees without warning of the hazards known to the seller and purchaser, including the purchase of asbestos by Bendix (n/k/a Honeywell) from Johns-Manville;

n)    refused to warn its employees who had to use asbestos-containing materials in the manufacture of other products for the conspirator of the hazards of exposure to asbestos known to the conspirator,

including the refusal of Bendix to warn its
employees who were exposed to asbestos in
connection with the manufacture of friction
products of the hazards of asbestos known to
Bendix.

20.    The agreement and the acts done in furtherance of the agreement were
proximate causes of the injury to Alan Nussbaum.

21.    Illinois Central Railroad, named in other counts of this complaint, has its
principal place of business in the state of Illinois.

22.    Plaintiff did not know, or could have known, that Alan Nussbaum's
disease was wrongfully caused by exposure to asbestos until December 6, 2006, when
Alan Nussbaum was first informed, by his attorneys after his records were obtained from
healthcare providers, the results of chest x-rays previously taken revealed findings
consistent with asbestosis.

WHEREFORE, Plaintiff, **ALAN NUSSBAUM**, requests compensatory damages
from Defendants, jointly and severally with the other Defendants named in this cause, in
an amount in excess of $50,000 and demands trial by jury. Plaintiff further requests
punitive damages from each Defendant in an amount in excess of $50,000 and demands
trial by jury.

### Count 2

Plaintiff, **ROXY NUSSBAUM**, complains of Defendants, PNEUMO ABEX
CORPORATION, PNEUMO ABEX LLC, METROPOLITAN LIFE INSURANCE
COMPANY, OWENS-ILLINOIS, INC., and HONEYWELL INTERNATIONAL, INC.,
as follows:

1-22.   Plaintiff realleges paragraphs 1-22 of Count 1.

23.     Plaintiff is the spouse of Alan Nussbaum.

24.     As a result of the injury to her husband, Plaintiff suffered an injury to her husband/wife relationship and became obligated for the expense of the medical care received by her husband.

25.     The agreements and the acts done in furtherance of the agreements were proximate causes of Plaintiff's loss.

WHEREFORE, Plaintiff, **ROXY NUSSBAUM**, requests damages from Defendants, jointly and severally, with the other Defendants named in this cause, in an amount in excess of $50,000 and demands trial by jury.

### Count 3

Plaintiff, **ALAN NUSSBAUM**, complains of Defendant, ILLINOIS CENTRAL RAILROAD COMPANY, as follows:

1.     Illinois Central Railroad Company, or one or more of its corporate predecessors, all of whom will hereafter be referred to as "Defendant", owned a building and adjacent railway located at 1111 W. Perry Street in Bloomington, Illinois.

2.     Alan Nussbaum was employed within the building during 1955 to 1958.

3.     During the 1950's Defendant transported asbestos in railcars over Defendant's railway to the plant at 1111 W. Perry Street and transported from the building asbestos containing products that were manufactured within the building.

4.     The transportation, unloading and loading of asbestos and asbestos containing products released asbestos into the atmosphere.

5.     Alan Nussbaum inhaled some of the asbestos.

6.     Alan Nussbaum contracted asbestosis as a result of his exposure to asbestos.

7.     Before Defendant released the asbestos into the atmosphere Defendant knew, or should have known, that exposure to airborne asbestos caused pulmonary fibrosis (asbestosis) and cancers (lung cancer and mesothelioma).  Part of what Defendant knew was that exposure to airborne asbestos had caused pulmonary fibrosis and cancer among Defendant's own employees.

8.     Before Defendant released the asbestos into the atmosphere, Defendant knew that Alan Nussbaum, and others who worked in the plant, were ignorant of the hazardous properties of asbestos and knew that Alan Nussbaum, and the others, would not learn from any other source of the risks involved in exposure to asbestos released as a result of Defendant's conduct.

9.     Defendant was negligent in one or more of the following respects:

   a)     failed to transport the asbestos and asbestos-
          containing products so as to prevent the release of
          asbestos fibers into the atmosphere;

   b)     failed to warn Alan Nussbaum and others similarly
          situated, of the hazard which Defendant had created
          by its release of asbestos fibers.

10.    Defendant's negligence was a proximate cause of the injury to Alan Nussbaum.

11.    Defendant's principal place of business is within the state of Illinois.

12.    Plaintiff realleges paragraph 22 of Count 1.

WHEREFORE, Plaintiff, **ALAN NUSSBAUM**, requests damages from Defendant, jointly and severally with the other Defendants named in this cause, in an amount in excess of $50,000 and demands trial by jury.

### Count 4

Plaintiff, **ROXY NUSSBAUM**, complains of Defendant, ILLINOIS CENTRAL RAILROAD COMPANY, as follows:

1-11.   Plaintiff realleges paragraphs 1-11 of Count 3.

12.   Plaintiff is the spouse of Alan Nussbaum.

13.   As a result of the injury to her husband, Plaintiff has suffered an injury to her husband/wife relationship and become obligated for the expense of medical care received by her husband.

14.   The negligence of Defendant was a proximate cause of Plaintiff's loss.

15.   Plaintiff realleges paragraph 22 of Count 1.

WHEREFORE, Plaintiff, **ROXY NUSSBAUM**, requests damages from Defendant, jointly and severally with the other Defendants named in this cause, in an amount in excess of $50,000 and demands trial by jury.

### Count 5

Plaintiff, **ALAN NUSSBAUM**, complains of Defendant, HONEYWELL INTERNATIONAL, INC., as follows:

1.   Beginning in the 1950's and continuing to the 1960's Alan Nussbaum was employed at Welch's Standard Service on Main Street in Bloomington, Illinois.

2.   During Alan Nussbaum's employment at Welch's, Alan Nussbaum performed brake work on vehicles.

3.    Defendant, through its predecessor, Bendix, manufactured and sold asbestos containing brake linings which were used where Alan Nussbaum was exposed.

4.    Defendant's products gave off asbestos dust.

5.    Alan Nussbaum was exposed to asbestos dust from Defendant's products.

6.    Asbestosis and malignancies are caused by exposure to asbestos.

7.    Alan Nussbaum contracted asbestosis as a result of being exposed to asbestos from Defendant's products.

8.    The asbestosis is a single, indivisible injury.

9.    Before Defendant manufactured and sold the products to which Alan Nussbaum was exposed, Defendant knew that exposure to asbestos dust caused asbestosis and malignancies.

10.    Defendant was negligent in the following respects:

    a)    failed to warn that exposure to asbestos dust caused serious disease and death;

    b)    failed to warn that exposure to asbestos dust caused asbestosis;

    c)    failed to warn that exposure to asbestos dust caused malignancies;

    d)    failed to provide instruction as to safe methods, if any existed, of handling and processing asbestos containing products.

11.    Defendant's negligence was a proximate cause of the injury to Alan Nussbaum.

12.    Plaintiff reallages paragraph 22 of Count 1.

WHEREFORE, Plaintiff, **ALAN NUSSBAUM**, requests damages from Defendant, jointly and severally, with the other Defendants named in this cause, in an amount in excess of $50,000 and demands trial by jury.

### Count 6

Plaintiff, **ROXY NUSSBAUM**, complains of Defendant, HONEYWELL INTERNATIONAL, INC., as follows:

1-11.   Plaintiff realleges paragraphs 1-11 of Count 5.

12-13.  Plaintiff realleges paragraphs 23-24 of Count 2.

14.     Defendant's negligence was a proximate cause of Plaintiff's loss.

15.     Plaintiff realleges paragraph 22 of Count 1.

WHEREFORE, Plaintiff, **ROXY NUSSBAUM**, requests damages from Defendant, jointly and severally, with the other Defendants named in this cause, in an amount in excess of $50,000 and demands trial by jury.

### Count 7

Plaintiff, **ALAN NUSSBAUM**, complains of Defendant, HONEYWELL INTERNATIONAL, INC., as follows:

1-9.    Plaintiff realleges paragraphs 1-9 of Count 5.

10.     Defendant was wilful and wanton in the following respects:

   a)     failed to warn that exposure to asbestos dust caused serious disease and death;

   b)     failed to warn that exposure to asbestos dust caused asbestosis;

   c)     failed to warn that exposure to asbestos dust caused malignancies;

    d)    failed to provide instruction as to safe methods, if any existed, of handling and processing asbestos containing products.

11.    The wilful and wanton conduct of Defendant was a proximate cause of the injury to Alan Nussbaum.

12.    Plaintiff reallages paragraph 22 of Count 1.

WHEREFORE, Plaintiff, **ALAN NUSSBAUM**, requests damages from Defendant, jointly and severally, with the other Defendants named in this cause, in an amount in excess of $50,000 and demands trial by jury. Plaintiff further requests punitive damages from Defendant in an amount in excess of $50,000 and demands trial by jury.

<u>**Count 8**</u>

Plaintiff, **ROXY NUSSBAUM**, complains of Defendant, HONEYWELL INTERNATIONAL, INC., as follows:

1-9.    Plaintiff realleges paragraphs 1-9 of Count 5.

10-11.  Plaintiff realleges paragraphs 10-11 of Count 7.

12-13.  Plaintiff realleges paragraphs 23-24 of Count 2.

14.    Defendant's wilful and wanton conduct was a proximate cause of Plaintiff's loss.

15.    Plaintiff realleges paragraph 22 of Count 1.

WHEREFORE, Plaintiff, **ROXY NUSSBAUM**, requests damages from Defendant, jointly and severally, with the other Defendants named in this cause, in an amount in excess of $50,000 and demands trial by jury.

ALAN NUSSBAUM and ROXY
NUSSBAUM, Plaintiffs,

WALKER & WYLDER, LTD.
Attorneys for Plaintiffs
207 W. Jefferson Street
Bloomington, IL 61701
309/828-5044
JR/el

IN SHERIFF'S HANDS
NEW CASTLE COUNTY

2007 JAN 12  PM 1:11



**CSC.**

CORPORATION SERVICE COMPANY'

DDZ / ALL
Transmittal Number: 4964780
Date Processed: 01/18/2007

# Notice of Service of Process

| | |
|---|---|
| Primary Contact: | Barry F Schwartz<br>Macandrews & Forbes Holdings Inc.<br>35 East 62nd Street<br>New York, NY 10021 |
| Copy of transmittal only sent to: | Dexter Kenfield<br>Gina Knight |
| Entity: | Pneumo Abex LLC<br>Entity ID Number 2309785 |
| Entity Served: | Pneumo Abex, LLC |
| Title of Action: | Alan Nussbaum vs. Pneumo Abex Corporation |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Asbestos |
| Court: | McLean County 11th Judicial Circuit Court, Illinois |
| Case Number: | 06 L 190 |
| Jurisdiction Served: | Delaware |
| Date Served on CSC: | 01/18/2007 |
| Answer or Appearance Due: | 30 Days |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Plaintiff's Attorney: | James Wylder<br>309-828-5044 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road  Wilmington, DE 19808  (888) 690-2882  |  sop@cscinfo.com

In the Circuit Court
Of the 11ᵗʰ Judicial Circuit
McLean County, Illinois

No. 06L 190 

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
COUNTY OF MC LEAN

ALAN NUSSBAUM and ROXY NUSSBAUM, )
                                  )
                 Plaintiffs, )
                                    )
           v. )
PNEUMO ABEX CORPORATION, PNEUMO )
ABEX LLC, METROPOLITAN LIFE )
INSURANCE   COMPANY, OWENS-ILLINOIS, )
INC., HONEYWELL INTERNATIONAL, INC., )
and ILLINOIS CENTRAL RAILROAD )
COMPANY, )
                            Defendants. )

A FEE WILL BE DUE AT THE
TIME OF FILING AN
APPEARANCE OR ANSWER
YOUR FILING FEE WILL BE
$ 123.00

SUMMONS

To the defendant Pneumo Abex LLC, c/o Prentice Hall Corp System, 2711 Centerville Rd., Ste 200, Wilmington, DE  19808

       You are summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the clerk of this court, Room 404 Law and Justice Center, Bloomington, Illinois, within 30 days after service of this summons, not counting the day of service. IF YOU FAIL TO DO SO, A JUDGMENT OR DECREE BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.

To the officer:
       This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service.  If service cannot be made, this summons shall be returned so endorsed.
       This summons may not be served later than 30 days after its date.

Plaintiff's Attorney James Wylder, Walker & Wylder, Ltd.
Address 207 W. Jefferson St.
City Bloomington, IL. 61701
Telephone 309/828-5044

Witness January 4 2007

              Clerk of Court

By _____
                 Deputy

(Seal of Court)

Date of Service _____, 2007
(To be inserted by officer on copy left
with defendant or other person.)

To:_____

"IN SHERIFF'S HANDS
NEW CASTLE COUNTY
2007 JAN 12  PM 1: 12

SHERIFF'S FEES

Service and return ............................................$_____
Miles_____ ....................................._____
          Total.............................................................$_____ _____

_____
                                    Sheriff of _____ County

I certify that I served this summons by leaving a copy thereof together with a copy of the complaint and a copy of each of the following documents: _____
_____ on defendant as follows:

**(a) (Individual defendants – personal):**
By leaving a copy with each individual defendant personally, as follows:

          Name of Defendant          Date of Service


**(b) (Individual defendants – abode):**
By leaving a copy at the usual place of abode of each individual defendant with a person of his family, of the age of 13 years or upwards, informing that person of the contents of the summons, and also by sending a copy of the summons and of the complaint in a sealed envelope with postage fully prepaid, addressed to each individual defendant at his usual place of abode, as follows:

Name of Defendant          Person With Whom Left    Date of Service          Date of Mailing


**(c) (Corporation defendants):**
By leaving a copy with the registered agent, officer or agent of each defendant corporation, as follows:

          Defendant Corporation          Registered Agent, Officer or Agent    Date of Service


**(d) (Other service):**


                              _____

                              Sheriff of _____ County

                              By _____, Deputy

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
COUNTY OF McLEAN

ALAN NUSSBAUM and ROXY NUSSBAUM,     )
                                     )
              Plaintiffs,            )
                                     )     No. 06 L \⬤0
         v.                          )
PNEUMO ABEX CORPORATION, PNEUMO      )
ABEX LLC, METROPOLITAN LIFE          )
INSURANCE COMPANY, OWENS-ILLINOIS,   )
INC., HONEYWELL INTERNATIONAL, INC., )
and ILLINOIS CENTRAL RAILROAD        )
COMPANY,                             )  FIRST CASE MANAGEMENT CONFERENCE
              Defendants.            )  BEFORE JUDGE   Sou
                                     )  SET ON  6-1-07  AT  11.00 AM/PM

**FILED**
McLEAN  DEC 2 9 2006  COUNTY
CIRCUIT CLERK

## COMPLAINT

### Count 1

Plaintiff, **ALAN NUSSBAUM**, complains of Defendants, PNEUMO ABEX

CORPORATION, PNEUMO ABEX LLC, METROPOLITAN LIFE INSURANCE

COMPANY, OWENS-ILLINOIS, INC., and HONEYWELL INTERNATIONAL, INC.,

as follows:

    1.    Alan Nussbaum was employed at the asbestos plant located at 1111 W.

Perry Street, Bloomington, Illinois, from August 1955 to May, 1958 when the plant was

owned and operated by Union Asbestos & Rubber Company, later known as Unarco

Industries, Inc.

    2.    Asbestos and asbestos products were at the plant during Alan Nussbaum's

employment.

    3.    Unarco Industries, Inc., Johns-Manville Corporation, Johns-Manville

Sales Corporation, Raymark Industries, Inc. (formerly Raybestos-Manhattan, Inc.),

Owens Corning, and Pittsburgh Corning Corporation, are corporations, and they, or their

corporate predecessors, were during the time relevant to the allegations herein, in the business of manufacturing and distributing asbestos containing products.

4.     Defendants, Pneumo Abex Corporation, Pneumo Abex LLC, Honeywell International, Inc., and Owens-Illinois, Inc., are corporations and were, during the times relevant to the allegations herein, themselves or through predecessors, in the business of manufacturing and distributing asbestos-containing products.

5.     Defendant, Metropolitan Life Insurance Company is a corporation.

6.     Hereafter "Conspirators" refers to each of the corporations named in paragraphs 3 through 5.

7.     Alan Nussbaum was exposed to asbestos, including asbestos from one or more of the conspirators, during his employment at the plant.

8.     Exposure to asbestos is a cause of serious disease and death, including asbestosis and malignancies.

9.     Alan Nussbaum contracted asbestosis as a result of his exposure to asbestos.

10.    The asbestosis from which Alan Nussbaum suffers is an indivisible injury which resulted from the total and cumulative effect of all the asbestos to which he was exposed.

11.    Before and during Alan Nussbaum's exposure to asbestos, the Conspirators knew that exposure to asbestos caused serious disease and death.

12.    The Conspirators knew that individuals exposed to asbestos were ignorant of the hazardous properties of asbestos.

13.   Before and during his exposure to asbestos, Alan Nussbaum was unaware that exposure to asbestos caused serious disease and death.

14.   The knowledge of the Conspirators included the following:

    a)    two or more Conspirators had been in the asbestos business for years and had directed manufacturing operations;

    b)    each had actual knowledge of asbestos disease and death among workers exposed to asbestos as early as the 1940's.

15.   The conspirators knew that asbestos was inherently dangerous and knew that under the decisional law of Illinois and other states, each was under a duty not to sell asbestos without providing adequate warning of its harmful qualities.

16.   Two or more Conspirators had employees who were exposed to asbestos dust and each of them had a statutory, regulatory, and decisional law duty to provide their employees with a safe place to work, or at the least, to warn the employees of the hazards presented by the presence of asbestos dust.

17.   Each Conspirator knew that if it adequately warned its own employees and other persons who were at risk of asbestos disease, the publication of such warning would cause workers to leave the industries using asbestos and therefore reduce the sale and usage of asbestos.

18.   The conspirators knowingly conspired and agreed among themselves to, among others:

    a)    positively assert what was not true, that it was safe for people to be exposed to asbestos and asbestos-containing products;

    b)    conceal information about the harmful effects of asbestos.

19.    One or more of the Conspirators performed the following overt acts in

furtherance of the conspiracy:

a)    sold asbestos or asbestos products which were used
at the plant without warning of the hazards known
to the conspirators, including sales by Johns-
Manville which exposed Alan Nussbaum to
asbestos;

b)    refused to warn its own exposed employees about
the hazards of asbestos known to it, including the
refusal of Unarco to warn its employee, Alan
Nussbaum;

c)    edited and altered the reports and drafts of
publications initially prepared by Dr. Lanza
concerning the hazards of asbestos during the
1930's;

d)    agreed in writing not to disclose the results of
research on the effects of asbestos upon health
unless the results suited their interests;

e)    obtained an agreement in the 1930's from the
editors of ASBESTOS, the only trade magazine
devoted exclusively to asbestos, that the magazine
would never publish articles on the fact that
exposure to asbestos caused disease, and sustained
this agreement into the 1970's;

f)    suppressed the dissemination of a report by
Dr. Gardner in 1943 which was critical of the
concept that there was a safe level of asbestos
exposure;

g)    through their control of the Asbestos Textile
Institute (ATI), defeated further study of the health
of workers when William Hemeon graphically
demonstrated the need for such study and
dissemination of information in the 1940's;

h)    edited and altered the reports and drafts of
      publications regarding asbestos and health initially
      prepared by Dr. Vorwald during 1948-1951;

i)    altered, including the deletion of all references to
      the association of asbestosis and lung cancer, the
      original report of the study performed by Braun &
      Truan of the Industrial Hygiene Foundation before
      the altered version was published in 1958;

j)    suppressed the results of the Fibrous Dust Studies
      conducted during 1966-74 by the Industrial Health
      Foundation, Inc., Johns-Manville, Raybestos
      Manhattan, Owens Corning, Pittsburgh Corning
      Corporation and PPG Industries, which results
      demonstrated and confirmed that exposure to
      asbestos caused cancer and asbestosis;

k)    purchased asbestos which did not contain
      warnings from co-conspirators, to which the
      purchaser then exposed its own employees without
      warning of the hazards known to the seller and
      purchaser, including the purchase of asbestos by
      Owens-Illinois from Unarco;

l)    refused to warn its employees who had to use
      asbestos-containing materials in the manufacture
      of other products for the conspirator of the hazards
      of exposure to asbestos known to the conspirator,
      including the refusal of Owens-Illinois to warn its
      employees who were exposed to asbestos in
      connection with the manufacture of glass products
      of the hazards of asbestos known to Owens-
      Illinois;

m)    purchased asbestos which did not contain
      warnings from co-conspirators, to which the
      purchaser then exposed its own employees without
      warning of the hazards known to the seller and
      purchaser, including the purchase of asbestos by
      Bendix (n/k/a Honeywell) from Johns-Manville;

n)    refused to warn its employees who had to use
      asbestos-containing materials in the manufacture
      of other products for the conspirator of the hazards
      of exposure to asbestos known to the conspirator,

including the refusal of Bendix to warn its
employees who were exposed to asbestos in
connection with the manufacture of friction
products of the hazards of asbestos known to
Bendix.

20.   The agreement and the acts done in furtherance of the agreement were

proximate causes of the injury to Alan Nussbaum.

21.   Illinois Central Railroad, named in other counts of this complaint, has its

principal place of business in the state of Illinois.

22.   Plaintiff did not know, or could have known, that Alan Nussbaum's

disease was wrongfully caused by exposure to asbestos until December 6, 2006, when

Alan Nussbaum was first informed, by his attorneys after his records were obtained from

healthcare providers, the results of chest x-rays previously taken revealed findings

consistent with asbestosis.

WHEREFORE, Plaintiff, **ALAN NUSSBAUM**, requests compensatory damages

from Defendants, jointly and severally with the other Defendants named in this cause, in

an amount in excess of $50,000 and demands trial by jury. Plaintiff further requests

punitive damages from each Defendant in an amount in excess of $50,000 and demands

trial by jury.

### Count 2

Plaintiff, **ROXY NUSSBAUM**, complains of Defendants, PNEUMO ABEX

CORPORATION, PNEUMO ABEX LLC, METROPOLITAN LIFE INSURANCE

COMPANY, OWENS-ILLINOIS, INC., and HONEYWELL INTERNATIONAL, INC.,

as follows:

1-22.   Plaintiff realleges paragraphs 1-22 of Count 1.

23.    Plaintiff is the spouse of Alan Nussbaum.

24.    As a result of the injury to her husband, Plaintiff suffered an injury to her husband/wife relationship and became obligated for the expense of the medical care received by her husband.

25.    The agreements and the acts done in furtherance of the agreements were proximate causes of Plaintiff's loss.

WHEREFORE, Plaintiff, **ROXY NUSSBAUM**, requests damages from Defendants, jointly and severally, with the other Defendants named in this cause, in an amount in excess of $50,000 and demands trial by jury.

## Count 3

Plaintiff, **ALAN NUSSBAUM**, complains of Defendant, ILLINOIS CENTRAL RAILROAD COMPANY, as follows:

1.    Illinois Central Railroad Company, or one or more of its corporate predecessors, all of whom will hereafter be referred to as "Defendant", owned a building and adjacent railway located at 1111 W. Perry Street in Bloomington, Illinois.

2.    Alan Nussbaum was employed within the building during 1955 to 1958.

3.    During the 1950's Defendant transported asbestos in railcars over Defendant's railway to the plant at 1111 W. Perry Street and transported from the building asbestos containing products that were manufactured within the building.

4.    The transportation, unloading and loading of asbestos and asbestos containing products released asbestos into the atmosphere.

5.    Alan Nussbaum inhaled some of the asbestos.

6.    Alan Nussbaum contracted asbestosis as a result of his exposure to asbestos.

7.    Before Defendant released the asbestos into the atmosphere Defendant knew, or should have known, that exposure to airborne asbestos caused pulmonary fibrosis (asbestosis) and cancers (lung cancer and mesothelioma). Part of what Defendant knew was that exposure to airborne asbestos had caused pulmonary fibrosis and cancer among Defendant's own employees.

8.    Before Defendant released the asbestos into the atmosphere, Defendant knew that Alan Nussbaum, and others who worked in the plant, were ignorant of the hazardous properties of asbestos and knew that Alan Nussbaum, and the others, would not learn from any other source of the risks involved in exposure to asbestos released as a result of Defendant's conduct.

9.    Defendant was negligent in one or more of the following respects:

a)    failed to transport the asbestos and asbestos-containing products so as to prevent the release of asbestos fibers into the atmosphere;

b)    failed to warn Alan Nussbaum and others similarly situated, of the hazard which Defendant had created by its release of asbestos fibers.

10.    Defendant's negligence was a proximate cause of the injury to Alan Nussbaum.

11.    Defendant's principal place of business is within the state of Illinois.

12.    Plaintiff realleges paragraph 22 of Count 1.

WHEREFORE, Plaintiff, **ALAN NUSSBAUM**, requests damages from Defendant, jointly and severally with the other Defendants named in this cause, in an amount in excess of $50,000 and demands trial by jury.

## Count 4

Plaintiff, **ROXY NUSSBAUM**, complains of Defendant, ILLINOIS CENTRAL RAILROAD COMPANY, as follows:

1-11.    Plaintiff realleges paragraphs 1-11 of Count 3.

12.    Plaintiff is the spouse of Alan Nussbaum.

13.    As a result of the injury to her husband, Plaintiff has suffered an injury to her husband/wife relationship and become obligated for the expense of medical care received by her husband.

14.    The negligence of Defendant was a proximate cause of Plaintiff's loss.

15.    Plaintiff realleges paragraph 22 of Count 1.

WHEREFORE, Plaintiff, **ROXY NUSSBAUM**, requests damages from Defendant, jointly and severally with the other Defendants named in this cause, in an amount in excess of $50,000 and demands trial by jury.

## Count 5

Plaintiff, **ALAN NUSSBAUM**, complains of Defendant, HONEYWELL INTERNATIONAL, INC., as follows:

1.    Beginning in the 1950's and continuing to the 1960's Alan Nussbaum was employed at Welch's Standard Service on Main Street in Bloomington, Illinois.

2.    During Alan Nussbaum's employment at Welch's, Alan Nussbaum performed brake work on vehicles.

3.    Defendant, through its predecessor, Bendix, manufactured and sold asbestos containing brake linings which were used where Alan Nussbaum was exposed.

4.    Defendant's products gave off asbestos dust.

5.    Alan Nussbaum was exposed to asbestos dust from Defendant's products.

6.    Asbestosis and malignancies are caused by exposure to asbestos.

7.    Alan Nussbaum contracted asbestosis as a result of being exposed to asbestos from Defendant's products.

8.    The asbestosis is a single, indivisible injury.

9.    Before Defendant manufactured and sold the products to which Alan Nussbaum was exposed, Defendant knew that exposure to asbestos dust caused asbestosis and malignancies.

10.    Defendant was negligent in the following respects:

　　a)    failed to warn that exposure to asbestos dust caused serious disease and death;

　　b)    failed to warn that exposure to asbestos dust caused asbestosis;

　　c)    failed to warn that exposure to asbestos dust caused malignancies;

　　d)    failed to provide instruction as to safe methods, if any existed, of handling and processing asbestos containing products.

11.    Defendant's negligence was a proximate cause of the injury to Alan Nussbaum.

12.    Plaintiff reallages paragraph 22 of Count 1.

WHEREFORE, Plaintiff, **ALAN NUSSBAUM**, requests damages from Defendant, jointly and severally, with the other Defendants named in this cause, in an amount in excess of $50,000 and demands trial by jury.

### Count 6

Plaintiff, **ROXY NUSSBAUM**, complains of Defendant, HONEYWELL INTERNATIONAL, INC., as follows:

1-11.   Plaintiff realleges paragraphs 1-11 of Count 5.

12-13.   Plaintiff realleges paragraphs 23-24 of Count 2.

14.   Defendant's negligence was a proximate cause of Plaintiff's loss.

15.   Plaintiff realleges paragraph 22 of Count 1.

WHEREFORE, Plaintiff, **ROXY NUSSBAUM**, requests damages from Defendant, jointly and severally, with the other Defendants named in this cause, in an amount in excess of $50,000 and demands trial by jury.

### Count 7

Plaintiff, **ALAN NUSSBAUM**, complains of Defendant, HONEYWELL INTERNATIONAL, INC., as follows:

1-9.   Plaintiff realleges paragraphs 1-9 of Count 5.

10.   Defendant was wilful and wanton in the following respects:

   a)   failed to warn that exposure to asbestos dust caused serious disease and death;

   b)   failed to warn that exposure to asbestos dust caused asbestosis;

   c)   failed to warn that exposure to asbestos dust caused malignancies;

        d)      failed to provide instruction as to safe methods, if any existed, of handling and processing asbestos containing products.

11.    The wilful and wanton conduct of Defendant was a proximate cause of the injury to Alan Nussbaum.

12.    Plaintiff reallages paragraph 22 of Count 1.

WHEREFORE, Plaintiff, **ALAN NUSSBAUM**, requests damages from Defendant, jointly and severally, with the other Defendants named in this cause, in an amount in excess of $50,000 and demands trial by jury.  Plaintiff further requests punitive damages from Defendant in an amount in excess of $50,000 and demands trial by jury.

## Count 8

Plaintiff, **ROXY NUSSBAUM**, complains of Defendant, HONEYWELL INTERNATIONAL, INC., as follows:

1-9.    Plaintiff realleges paragraphs 1-9 of Count 5.

10-11. Plaintiff realleges paragraphs 10-11 of Count 7.

12-13. Plaintiff realleges paragraphs 23-24 of Count 2.

14.    Defendant's wilful and wanton conduct was a proximate cause of Plaintiff's loss.

15.    Plaintiff realleges paragraph 22 of Count 1.

WHEREFORE, Plaintiff, **ROXY NUSSBAUM**, requests damages from Defendant, jointly and severally, with the other Defendants named in this cause, in an amount in excess of $50,000 and demands trial by jury.

ALAN NUSSBAUM and ROXY
NUSSBAUM, Plaintiffs,

WALKER & WYLDER, LTD.
Attorneys for Plaintiffs
207 W. Jefferson Street
Bloomington, IL 61701
309/828-5044
JR/el

# RECORD SHEET

Case No ___06 L 190___                    Nature of Case ___ASBESTOS___

ALAN NUSSBAUM AND ROXY NUSSBAUM
                                    PLAINTIFF

-V-

PNEUMO ABEX CORP, PNEUMO ABEX LLC,
METROPOLITAN LIFE INS CO, OWENS-IL INC, HONEYWELL
INTERNATIONAL INC AND IL CENTRAL RAILROAD CO
                                    DEFENDANTS

Attorney   JAMES WYLDER
           WALKER & WYLDER
           207 W JEFFERSON
           BLOOMINGTON, IL 61701
           309-828-5044

| DATE | | | JUDGE AND REPORTER | | COSTS DOLLARS CENTS |
|---|---|---|---|---|---|
| 12 | 29 | 06 | SOUK | COMPLAINT FILED | |
| 12 | 29 | 06 | | RECEIPT #567378 | 435.50 |
| 12 | 29 | 06 | | JUDGE ASSIGNMENT FILED | |
| 01 | 04 | 07 | | SUMMONS ISSUED TO PNEUMO ABEX CORP, PNEUMO ABEX LLC, MET LIFE, OWENS-IL, HONEYWELL AND IL CENTRAL RAILROAD | |
| 1 | 17 | 07 | | Alias Summons issued to Owens-Il Receipt #567503 | 5— |
| 1 | 30 | 07 | | Return of Service on Il Central RR, Honeywell and Met Life filed | |
| 2 | 1 | 07 | | Affidavits of Service on Pneumo Abex LLC and Pneumo Abex Corp filed | |
| 2 | 5 | 07 | | Entry of Appearance filed Receipt #567680 | 123— |
| 2 | 8 | 07 | | Affidavit of Service on Owen-Il filed | |
| 2 | 14 | 07 | | Honeywell International Inc's Answer and Affirmative Defenses to Plaintiffs' Complaint filed  Receipt #567750 | 123- |

Case No. 06L190          **RECORD SHEET**          Page No. 2

| DATE | JUDGE AND REPORTER | | COSTS | |
|---|---|---|---|---|
| | | | Dollars | Cents |
| 2 14 07 | | Honeywell International Inc's Motion to Strike Plaintiffs' Prayer for Punitive Damages filed | | |
| 2 14 07 | | Defendant Honeywell International Inc's Motion for Substitution of Judge filed | | |
| 2 15 07 | | Notice of Hearing filed | | |

7/96

æ. mm 266683



CORPORATION SERVICE COMPANY

# Notice of Service of Process

DDZ / ALL
Transmittal Number: 4964379
Date Processed: 01/18/2007

| | |
|---|---|
| Primary Contact: | Barry F Schwartz<br>Macandrews & Forbes Holdings Inc.<br>35 East 62nd Street<br>New York, NY 10021 |
| Copy of transmittal only sent to: | Dexter Kenfield<br>Gina Knight |

| | |
|---|---|
| Entity: | Pneumo Abex Corporation<br>Entity ID Number  0558063 |
| Entity Served: | Pneumo Abex Corp. |
| Title of Action: | Alan Nussbaum vs. Pneumo Abex Corporation |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Asbestos |
| Court: | McLean County 11th Judicial Circuit Court, Illinois |
| Case Number: | 06 L 190 |
| Jurisdiction Served: | Delaware |
| Date Served on CSC: | 01/18/2007 |
| Answer or Appearance Due: | 30 Days |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Plaintiff's Attorney: | James Wylder<br>309-828-5044 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not
constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road  Wilmington, DE 19808  (888) 690-2882  |  sop@cscinfo.com



# EXHIBIT
# 2

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

ALAN NUSSBAUM and ROXY NUSSBAUM,      )
                                      )
              Plaintiffs,             )
                                      )
       V.                             )          NO. 07-1038
                                      )
ILLINOIS CENTRAL RAILROAD COMPANY,    )
et al.,                               )
                                      )
              Defendants.             )

## DECLARATION OF CHARLES G. GARRETT

1.   My name is Charles G. Garrett.  I am the Risk Mitigation Manager of Illinois Central

Railroad ("IC"), which has its principal place of business at 455 North Cityfront Plaza Drive

Chicago, Illinois 60611-5504.  IC is an Illinois corporation.

2.   In this declaration I am providing factual background on IC's (hereinafter "IC" refers

to Illinois Central Railroad Company and all of its predecessor railroads) transportation of

asbestos to an asbestos plant located at 1111 Perry Street, Bloomington, Illinois, once owned and

operated by Union Asbestos & Rubber Company ("the plant"), and the transportation of products

containing asbestos from that plant, in the 1955-1958 period, based on my understanding of IC's

railroad operations at that time.

3.   I have worked for IC since 1976.  My present position is Risk Mitigation Manager.

My preceding positions with IC were Claim Agent, Claims Manager, Risk Manager, and Senior

Risk Mitigation Officer.

4. Through involvement in prior asbestos cases against IC I am personally generally familiar with the plant site in question and IC's operations concerning movements to and from that plant during the time period in question.

5. As a common carrier by rail IC was required by federal law to take on any reasonable request for transportation.

6. IC would transport cars carrying asbestos typically received from other railroads which it would deliver to the plant, where plant employees or others provided by the plant would unload the asbestos.

7. IC had no control over or employer-employee relationship with the personnel at the plant who unloaded the asbestos from, or loaded the asbestos-related products into, the rail cars it carried to or from the plant.

8. IC would also pick up from the plant cars into which plant personnel had loaded packages containing asbestos-related products, for transportation to receivers directly or through interchange with other rail carriers for further transportation to the ultimate customer/consignee.

9. The individuals who unloaded the asbestos or loaded the asbestos-related products at the plant were not employees of IC.

10. IC did not take ownership of the asbestos or asbestos-related products it transported to or from the plant or play any role in the pricing or marketing of the asbestos or asbestos-related products it carried to or from the plant.

11. IC did not design, test, package, market, advertise, label or modify the packaging of the asbestos or asbestos-related products it was called upon to carry to or from the plant.

12. I am familiar with similar prior cases filed in state court concerning alleged asbestos-related diseases including claims by or with respect to former employees of the same plant about

2

IC's actions, but am aware of none where the court entered a final judgment ruling on the merits that the plaintiff had stated a valid claim against IC under state law that was not preempted by federal law.

13. IC has at times been willing to settle claims concerning former employees of the plant, despite their lack of legal merit, because of the uncertainties and risks they may have presented, including adverse but erroneous rulings by the trial court on issues of federal or state law, the costs of further litigation at the trial court level or on appeal, and the risks of adverse verdicts and judgments that might not be effectively reversed on appeal.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on April 4, 2007.

Charles G. Garrett
Risk Mitigation Manager

3

# EXHIBIT
# 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**JAMES BERGMAN and**
**LORI BERGMAN,**

     **Plaintiffs,**

**v.**

**U.S. SILICA, DUPONT and DUPONT TITANIUM,**
**TECHNOLOGIES, KERR-McGEE CORPORATION**
**and TRONOX, LLC, f/k/a KERR-McGEE**
**CHEMICAL, LLC, KRONOS WORLDWIDE, INC.,**
**and LOTZ TRUCKING,**

     **Defendants.**                 **Case No. 06-cv-356-DRH**

## MEMORANDUM & ORDER

**HERNDON, District Judge:**

## I. INTRODUCTION

This matter is before us on a Motion to Remand (Doc. 14), filed by

plaintiffs James Bergman and Lori Bergman.  Defendants Kerr-McGee Corporation

and Kerr-McGee Chemical, LLC, removed this case on the basis of diversity

jurisdiction (*see* Doc. 3) with the remaining Defendants consenting to the removal

(*see* Docs. 7-10).  Plaintiffs, who are Illinois residents, contest Defendants' assertion

that complete diversity jurisdiction exists between the parties, arguing that defendant

Lotz Trucking – an Illinois corporation with its principal place of business in Illinois

– is a non-diverse party.  All Defendants oppose the remand (Doc. 21), arguing complete diversity jurisdiction does exist, as they believe defendant Lotz Trucking was fraudulently joined to Plaintiffs' suit.  The Court agrees with Defendants and must therefore deny a remand.

## II.  **BACKGROUND**

Plaintiff James Bergman is an Illinois resident who alleges that he has developed silicosis/pneumoconiosis, causing permanent disability (Doc. 5, ¶ 12). Bergman, together with his wife, Lori, have filed suit against Defendants (Doc. 5). Mr. Bergman brings claims of strict products liability, negligence and breach of implied warranty against Defendants (Doc. 5).  Additionally, Lori Bergman states a claim for loss of consortium (*Id.*).   James Bergman was employed by United Gilsonite Laboratories ("UGL"), where he managed the maintenance department from 1986 to 2002 (*Id.* at ¶¶ 2, 8).   Plaintiffs allege James Bergman's work environment caused him to be exposed to dangerous chemicals, including titanium dust and silica products (*Id.* at ¶ 9).   This exposure allegedly caused James Bergman's debilitating condition.   Plaintiffs further allege that these sand and silicosil products were manufactured by defendant U.S. Silica (*Id.* at ¶ 10).   The titanium dioxide contained in a paint mix was allegedly manufactured and sold to UGL by defendants Kronos, Kerr-McGee (and Tronox) and DuPont (and DuPont Titanium) (*Id.* at ¶11).

Aside from the manufacturer-Defendants, Plaintiffs also initially brought claims against Miller Trucking (also considered a citizen of Illinois).  However,

subsequent to filing their initial Complaint, Plaintiffs learned that defendant Lotz Trucking was a proper party Defendant to the case,[1] so they sought leave to amend their Complaint, adding Lotz Trucking and thereafter voluntarily dismissing Miller Trucking (Doc. 15, p. 1; *see also* Doc. 3, Attachments, p. 2; Doc. 21, Ex. C). Plaintiffs, among other things, allege that Lotz Trucking transported the products at issue from the manufacturers to UGL (Doc. 21).

During pretrial discovery, Lotz Trucking served its responses to Plaintiffs' interrogatories on all parties (Doc. 21, Ex. B). Defendants state they first became aware that Lotz Trucking had been fraudulently joined upon reading these responses, coupled with a review of Lotz Trucking's Answer and Affirmative Defenses to Plaintiffs' Amended Complaint (Doc. 6), as Lotz Trucking stated it was neither the manufacturer or seller of the products at issue (Doc. 3, ¶¶ 18-20). Defendants argue that but for the fraudulent joinder of Lotz Trucking, as it is a non-diverse party, complete diversity jurisdiction would exist, pursuant to **28 U.S.C. § 1332**, making removal proper (*Id.* at ¶ 21).

---

[1] Plaintiffs learned that Lotz Trucking had leased transportation equipment from Miller Trucking (Doc. 14, ¶ 3 and Ex. A).

### III.  ANALYSIS

**A.     Legal Standard**

**1.      Removal**

The removal statute, **28 U.S.C. § 1441**, is construed narrowly, and doubts concerning removal are resolved in favor of remand. ***Doe v. Allied-Signal, Inc.,* 985 F.2d 908, 911 (7th Cir. 1993)**. Defendants bear the burden to present evidence of federal jurisdiction once the existence of that jurisdiction is fairly cast into doubt. ***See In re Brand Name Prescription Drugs Antitrust Litig.,* 123 F.3d 599, 607 (7th Cir. 1997)**. "A defendant meets this burden by supporting [its] allegations of jurisdiction with 'competent proof,' which in [the Seventh Circuit] requires the defendant to offer evidence which proves 'to a reasonable probability that jurisdiction exists.'" ***Chase v. Shop 'N Save Warehouse Foods, Inc.,* 110 F.3d 424, 427 (7th Cir. 1997)*(citations omitted)*. However, if the district court lacks subject matter jurisdiction, the action must be remanded to state court pursuant to **28 U.S.C. § 1447(c)**.

The statute regarding diversity jurisdiction, **28 U.S.C. § 1332,** requires complete diversity between the parties plus an amount in controversy which exceeds $75,000, exclusive of interest and costs. Complete diversity means that "none of the parties on either side of the litigation may be a citizen of the state of which a party on the other side is a citizen." ***Howell v. Tribune Entertainment Co.,* 106 F.3d 215, 217 (7th Cir. 1997) *(citations omitted)*. In this case, as defendant Lotz

Trucking is also considered a citizen of Illinois, there is not complete diversity among the parties, as Plaintiffs are also Illinois citizens.  Plaintiffs, in their Motion to Remand, do not contest any other aspect of the Defendants' assertion of diversity jurisdiction (such as amount in controversy), other than the fact that defendant Lotz Trucking is a proper party and thus, a non-diverse party that destroys diversity jurisdiction.    Therefore,  the  sole  matter  for  determination  regarding  proper jurisdiction is the issue of fraudulent joinder.

### 2.    Fraudulent Joinder

If  diversity  jurisdiction  exists  among  proper  parties,  it  will  not  be destroyed due to fraudulently joined non-diverse parties. ***Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993)(collecting cases)**.  In the context of jurisdiction, "fraudulent" is a term of art. ***See Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992)**.  "Although false allegations of jurisdictional fact may make joinder fraudulent . . .  in most cases fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success whatever the plaintiff's motives." ***Id.* (collecting cases)**.  To prove fraudulent joinder, the out-of-state defendant must "show there exists no 'reasonable possibility that a state court would rule against the [in-state] defendant,'" ***Schwartz v. State Farm Mutual Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999)(citing *Poulos*, 959 F.2d at 73))**, or "if a state court has come to judgment, there [is not] any reasonable possibility that the judgment will be reversed on appeal." ***Poulos*, 959 F.2d at 73**.  The defendant

bears a heavy burden in this regard. *Id.* This burden can be met by introducing uncontradicted evidence. ***See Faucett v. Ingersoll-Rand Mining & Machinery Co., 960 F.2d 653, 655 (7th Cir. 1992)(where uncontradicted affidavit of the non-diverse defendant attesting to facts showing that the plaintiff could not establish a cause of action against him under Illinois law was sufficient to establish fraudulent joinder)***.

**B.     DISCUSSION**

Plaintiffs bring three separate counts against Lotz Trucking for strict products liability, negligence and breach of implied warranty. Mrs. Bergman also brings a claim against all Defendants for loss of consortium, which hinges upon a finding of liability on any of the previous three counts (*see* Doc. 5). As these are state law claims, Illinois substantive law applies. ***See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)***.

**1.     Products Liability**

Count XVI of Plaintiffs' First Amended Complaint (Doc. 5, ¶¶ 78-81) alleges a claim based upon a theory of strict products liability, brought by James Bergman against Lotz Trucking. Specifically, he alleges, "Lotz Trucking, the Lesee of Roger Miller Trucking . . . was engaged in the delivery, distribution and sale of silica products including sand and silicosil (hereinafter "silica")" (*Id.* at ¶ 79). Therefore, Plaintiff claims Lotz Trucking is strictly liable in tort because:

    i.  Defendants knew or should have known at the time the silica in question was placed in the stream of commerce that it was unreasonably dangerous and defective in that it could cause silicosis;

    ii.  The above-described defect existed at the time the silica left the control of Lotz Trucking;

    iii.   The silica was accompanied by inadequate warnings of the danger presented by the silica;

    iv.  Defendant Lotz Trucking knew of the propensity of the silica to cause silicosis if inhaled prior to the time it produced the silica which eventually injured plaintiff's lungs, and

    v.  The silica reached plaintiff in the same condition as when it left the control of defendant Lotz Trucking.

(*Id.* at ¶ 80),

Defendants have submitted evidence in support of both their Notice of Removal and in their opposing Response to Plaintiffs' Motion to Remand, to show Lotz Trucking neither manufactured, distributed nor sold the silica as alleged in the Complaint. Therefore, Defendants argue that Plaintiffs cannot properly bring a strict products liability claim against Lotz Trucking under Illinois law. The substantiating evidence consists of Lotz Trucking's responses to Plaintiffs' interrogatories, its affirmative defenses made in its Answer, and an affidavit of Kevin Kuntz, who is currently the operations manager of Lotz Trucking. In his affidavit, Kuntz states that Lotz Trucking only provided transportation services – it did "not buy, sell, wholesale, retail or manufacture any silica and/or titanium dioxide products" (Doc. 21, Ex. D, ¶ 2).

Regarding the circumstances at issue in Plaintiffs' Complaint, Kuntz attests that Lotz Trucking was contacted by defendant U.S. Silica because it had an order which needed to be delivered to UGL (James Bergman's employer) (*Id.* at ¶ 3). Lotz Trucking's function was to deliver the product ordered by UGL from U.S. Silica to UGL.  Kuntz provides a detailed description of the receipt, transport and delivery process of silica as follows:

> One of our trucks then travels to the U.S. Silica facility where bags of silica sand are present on pallets which are shrink-wrapped.  Employees of U.S. Silica then load these shrink-wrapped pallets of silica sand onto one of our trucks.  Lotz Trucking does not buy any of the silica sand.  Lotz Trucking has no involvement in what type or brand of silica sand is selected by [UGL] from U.S. Silica.  The bags of silica sand are then hauled by Lotz Trucking to the [UGL] facility in Jacksonville, Illinois.  [UGL] then pays Lotz Trucking only for delivery charges.  It is my understanding that [UGL] pays U.S. Silica directly for the purchase of the silica sand itself.  Lotz Trucking never takes ownership of any of the silica sand hauled from U.S. Silica to [UGL]. Lotz Trucking plays no role in the determination of the price of silica sand which is sold by U.S. Silica to [UGL].  U.S. Silica uses a forklift to load the pallets of silica sand onto our trailer.  Likewise, [UGL] uses a forklift to unload our trailer.  Thus, Lotz Trucking does not handle these materials . . . .  Lotz Trucking does nothing to the pallets of silica sand bags except transport them from one location to another.  Lotz Trucking does not design, test, package, market, advertise, label, alter or modify the bags of silica sand or any other silica product in issue. Lotz Trucking has no knowledge as to how the silica sand is used at [UGL] and does not have knowledge of which individuals, if any, may ultimately come into contact with silica sand at [UGL].

(Doc. 21, Ex. D, ¶¶ 3-9).

Liability, in a products liability action, can be imposed on manufacturers of the product at issue, as well as "all persons in the distributive chain . . . including suppliers, distributors, wholesalers and retailers." *Hammond v. North American Asbestos Corp.*, 97 Ill.2d 195, 206, 454 N.E.2d 210, 216 (1983)(citing *Thomas v. Kaiser Agricultural Chemicals*, 81 Ill.2d 206, 214, 407 N.E.2d 32 (1980)); *see also Mechanical Rubber and Supply Co. v. Caterpillar Tractor Co.*, 80 Ill. App. 3d 262, 264, 399 N.E.2d 722, 723 (Ill. Ct. App. 1980). The logic behind the imposition of this strict liability derives from the fact that both manufacturers and parties within the "distributive chain" theoretically have the ability, by virtue of their involvement in the marketing process, "to exert pressure on the manufacturer to enhance the safety of the product." *Id.* (citing *Dunham v. Vaughan & Bushnell Manufacturing Co.*, 42 Ill.2d 339, 344, 247 N.E.2d 401 (1969)). However, along the lines of this logic follows the notion that if the party merely provides a service in relation to the manufacture and sale of the product at issue, but this "relationship is peripheral and not directly related to the distributive process," such peripheral party cannot be subjected to strict products liability. *Mechanical Rubber and Supply Co.*, 80 Ill. App. 3d at 264, 399 N.E.2d at 723. This is true even if the services provided by the peripheral party required it to exercise reasonable care in the performance of that service. *Id.* Illinois law recognizes a transportation company (among others) as one such type of peripheral party. *Id.*; *see also Milford v. Commercial Carriers, Inc.*, 210 F. Supp. 2d 987,

990 (N.D. Ill. 2002); *Alvarez v. Koby Machinery Co., Ltd.*, 163 Ill. App. 3d 711, 716, 516 N.E.2d 930, 933 (Ill. Ct. App. 1987). Moreover, Defendants offer a case, although not binding precedent, that is very similar to the situation at hand, which found that a transportation company was not liable in a products liability action.

The recent case cited by Defendants is from the United States District Court for the Southern District of Mississippi. *Lundy v. Cliburn Truck Lines, Inc.*, 397 F. Supp. 2d 823 (S.D. Miss. 2005). In *Lundy*, the plaintiff suffered from a condition allegedly caused by exposure to a carcinogen known as benzene, an ingredient in some gasolines, while she was working at various Conoco convenience stores for 13 years. *Id.* at 825. Among the parties she filed a products liability suit against was defendant Cliburn Tank Lines for allegedly supplying and distributing the gasoline at issue. *Id.* As in this case, the *Lundy* plaintiff stated claims of strict products liability, negligence and breach of warranties. *Id.* at 826. The case was removed to the federal district court by the defendants on the basis of diversity, even though Cliburn Tank Lines was a non-diverse party. The *Lundy* defendants, also like the instant matter, claimed Cliburn Tank Lines was fraudulently joined to defeat diversity of citizenship. *Id.* The plaintiff filed for remand, hence the district court examined the fraudulent joinder issue.

The *Lundy* court analyzed the plaintiff's claims against Cliburn Tank Lines, reciting the fraudulent joinder standard that "[r]emoval is proper 'if the plaintiff's pleading is pierced and it is shown that as a matter of law there is no

reasonable basis for predicting that the plaintiff might establish liability [under state law] on that claim against the instate defendant.'" *Id.* at 827 (**citing *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 290 (5th Cir. 2000)**). Further, the district court recognized that the plaintiff could not merely state conclusory allegations of wrongful behavior to make sufficient showing that the non-diverse party was *not* fraudulently joined, as external evidence, such as affidavits, could be used to prove otherwise. *Id.*

In order to oppose the remand, the *Lundy* defendants submitted the sworn affidavit of Donald Cliburn, the President of Cliburn Tank Lines, attesting to the following: Cliburn Tank Lines "had no control over the employees or premises to which the gasoline was delivered . . ." and did not "buy, sell, wholesale, retail or manufacture gasoline products, and that it did not design, test, package, market, advertise, label, alter or modify the gasoline in issue . . . ." *Id.* at 828. Noting that the plaintiffs had offered no evidence to rebut the statements made in the Cliburn affidavit, other than what was alleged in the complaint, the *Lundy* court found that the substance of the affidavit must be taken as true. *Id.*  The *Lundy* court determined that Cliburn Tank Lines was merely the deliverer of gasoline from seller to buyer, had nothing to do with the manufacture or sale of the product and thereby liability could not be imposed upon the transportation company. Thus, Cliburn Tank Lines was found to be fraudulently joined, was therefore dismissed and the remand denied. *Id.*

Countless parallels run between **Lundy** and this case.  Though it is not binding precedent, as it generally applies the same standard for determining fraudulent joinder and because the theory behind the imposition of products liability is somewhat universal regardless of the state, the Court finds the **Lundy** case insightful.  Further, Illinois law supports the finding in **Lundy**, as the Illinois courts have previously recognized that transportation companies serving merely in a peripheral relationship with the product at issue, cannot be held liable in a products liability action.  *See, e.g., **Mechanical Rubber and Supply Co.**, 80 Ill. App. 3d at 264, 399 N.E.2d at 723*.  In their memorandum in support of the Motion to Remand (Doc. 15), Plaintiffs have failed to cite any case law supporting their theory that a transportation company should be held liable for being part of the manufacturing and distribution chain.  Instead, the cases cited by Plaintiffs to support their strict product liability claim against Lotz Trucking merely stand for the proposition that product liability can be imposed upon a manufacturer, seller or distributor (Doc. 15, p. 2, citing **Hammond**, 97 Ill.2d at 206, 454 N.E.2d at 216; **Thomas**, 81 Ill.2d at 214, 407 N.E.2d at 32).

Even more detrimental to Plaintiffs' position is their failure to reply to Defendants' arguments,  Yet, what is most crucial is the fact that Plaintiffs have offered no evidence whatsoever to rebut the assertions made by Lotz Trucking.  In other words, Plaintiffs attempt to merely rest on their allegations of wrongdoing and liability in order to show Lotz Trucking has not been fraudulently joined to this

Page 12 of 16

action.  This will not suffice.  Therefore, as in **Lundy**, the Court will take the averments stated in the affidavit of Kevin Kuntz and Lotz Trucking's Responses to Plaintiffs' Interrogatories as true.

The evidence, therefore, clearly shows that Lotz Trucking is not involved, nor responsible for the manufacture or retail of the silica product at issue. Nor does Lotz Trucking determine the distribution of the silica.  It simply, when needed, provides a service to get the product from Point A to Point B.  In fact, Lotz Trucking does not stand to make any financial profit from the sale of the silica as it is paid only for the transportation services it provides.  Lotz Trucking has no control or influence over the marketing of the silica.  It is also not in a position to have knowledge of the safety and/or handling of the silica (other than its transportation), as it neither loads or unloads the product.  These tasks are left to the employees of U.S. Silica and UGL.  In sum, Lotz Trucking, in this instance, is merely a peripheral party – not able to likely press upon the manufacturer to enhance the safety of this product.  Therefore, the Court finds no reasonable possibility that Plaintiff can prevail on a strict products liability claim against Lotz Trucking in an Illinois state court.

**2.    Negligence**

In their memorandum, Plaintiffs assert that the basis for liability in negligence is based upon the "duty of a manufacturer or seller of a product . . . to exercise reasonable care in the distribution of and warnings given concerning the use of the product" (Doc. 15, p. 3).  Thus, there must be an existing duty compelling Lotz

Trucking to do something – in this case, to use reasonable care in distributing the silica and also to provide warning regarding the use of the silica.   Determining whether such duty exists is a question of law, requiring the Court to examine such factors as: (1) whether it is reasonably foreseeable that the conduct of Lotz Trucking could cause injury to another in transporting the silica; (2) the likelihood of any injury occurring due to Lotz Trucking's transport of the silica; (3) the extent of the burden imposed upon Lotz Trucking to guard against such injury; and (4) the resulting consequences if such burden were imposed upon Lotz Trucking. **See City of Chicago v. Beretta U.S.A. Corp., 213 Ill.2d 351, 391, 821 N.E.2d 1099, 1125 (Ill. 2004)**.

Even Plaintiffs' own legal authority makes it evident that Lotz Trucking had no duty in this instance.   The law cited by Plaintiffs imposes such duty upon a *manufacturer* or *seller* – not a peripheral transportation company.   Plaintiffs have not offered supporting law or other legal argument to prove otherwise.   Looking at the factors regarding the existence of a duty, Lotz Trucking cannot be reasonably expected to anticipate the injury as caused in this case – otherwise, it would be expected to anticipate the injuries for any and every product it may transport in the course of its business.   That is clearly *un*reasonable and would present too great of a burden, especially when considering the fact that Lotz Trucking has no knowledge of what UGL intended to do with the silica once it was unloaded from its trucks by UGL employees.   For these reasons, coupled with Plaintiffs' failure to show why such

duty should exist, other than merely resting on their allegations and a couple of basic case cites regarding negligence in a products liability action, the Court finds no reasonable possibility that Plaintiff could state a successful claim of negligence against Lotz Trucking in an Illinois state court.

### 3.   Breach of Implied Warranty

Again, in their supporting memorandum, Plaintiffs specifically state "[a] defendant in a breach of warranty action must be a *seller* . . ." (Doc. 15, p. 3)(emphasis added).  As evidence has already proven Lotz Trucking is not a seller of silica in any way, the Court finds no reasonably possibility that Plaintiff to prevail in Illinois state court against Lotz Trucking based upon a breach of implied warranty theory.

### 4.   Loss of Consortium

James Bergman's wife, Lori Bergman, states one count against all Defendants, for loss of consortium for her husband's injuries allegedly caused by the silica, which hinges upon a finding of liability.  Thus, as the Court has found no reasonable possibility that all of the Counts stated against Lotz Trucking would be successful in an Illinois state court, it follows that there is no reasonable possibility that Mrs. Bergman's loss of consortium claim would be successful.

### 5.   Federal Preemption

The Court notes that Defendants have also asserted, in their opposing Response (Doc. 21, pp. 12-15), that even if Plaintiffs could state viable claims in

Illinois court against defendant Lotz Trucking, such claims were preempted by the Federal Aviation Administration Authorization Act. **49 U.S.C. § 14501**. As the Court has already found that Lotz Trucking was fraudulently joined, it will not examine the preemption issue.

## IV.  CONCLUSION

As the Court has found under the legal standard as stated in ***Poulos***, that there exists no reasonable possibility that an Illinois state court would rule against Lotz Trucking on either Plaintiffs' strict products liability, negligence, breach of implied warranty or loss of consortium claims, it thereby concludes Lotz Trucking has been fraudulently joined in this action.  Based upon this conclusion, Lotz Trucking should be dismissed as a party defendant in this case.  Without Lotz Trucking as a defendant, there exists complete diversity of citizenship between the parties.  Accordingly, Plaintiffs' Motion to Remand (Doc. 14) is hereby **DENIED**.

**IT IS SO ORDERED.**

Signed this 17th day of October, 2006.

/s/ _____ David  RHerndon
**United States District Court**

## Responses and Replies

1:07-cv-01038-MMM-JAG Nussbaum et al v. Pneumo Abex Corporation et al

12, 15, ASBESTOS, REFER, REMOVAL

### U.S. District Court

### United States District Court for the Central District of Illinois

### Notice of Electronic Filing

The following transaction was entered by Swain, Timothy on 4/5/2007 at 3:41 PM CDT and filed on 4/5/2007

**Case Name:**       Nussbaum et al v. Pneumo Abex Corporation et al
**Case Number:**     1:07-cv-1038
**Filer:**           Pneumo Abex Corporation
                     Pneumo Abex LLC

**Document Number:** 14

**Docket Text:**
RESPONSE to Motion re [11] MOTION to Remand *to State Court* filed by Defendants Pneumo Abex Corporation, Pneumo Abex LLC. (Attachments: # (1) Exhibit 1# (2) Exhibit 2# (3) Exhibit 3)(Swain, Timothy)

**1:07-cv-1038 Notice has been electronically mailed to:**

Mark R Kurz    m.kurz@gundlachlee.com, info@gundlachlee.com, n.uhl@gundlachlee.com, s.wagner@gundlachlee.com

Joshua Douglas Lee    jdlee@schiffhardin.com, edocket@schiffhardin.com, tsallay@schiffhardin.com

James E Peckert    jep@kehart.com, lara@kehart.com

Thomas R Peters    t.peters@gundlachlee.com, info@gundlachlee.com, l.schafer@gundlachlee.com

Robert Westwood Scott    bobscott@peorialaw.com

Timothy Whitzel Swain , II    timswain@peorialaw.com, shannonmcmahill@peorialaw.com

James R Wylder    byounger@walkerwylder.com

**1:07-cv-1038 Notice has been delivered by other means to:**

Nicole C Behnen
POLSINELLI SHALTON & WELTE
Suite 1110
100 S Fourth St

St Louis, MO 63102-1825

Jason B Small
KEHART PECKERT & BOOTH
132 S Water St Suite 200
PO Box 860
Decatur, IL 62525-0860

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1068668610 [Date=4/5/2007] [FileNumber=495971-0]
[0a6f657400a9122d0de4b5d4a2d324d182fed1f0e145f397a94305b46027bf00a43a7
aeb3621954d208d1cae974c8e2c216fa47a1782744465a10a5cca3b0ef8]]
**Document description:**Exhibit 1
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1068668610 [Date=4/5/2007] [FileNumber=495971-1]
[66e8bdcd5ce358e589ba8b1924d81dd95524917ecd9f72fd866a453a8d2603fda5a0e
cc09844b8810a1bea7fad82744d6396a95e1616dc67e5adb5ce88945760]]
**Document description:**Exhibit 2
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1068668610 [Date=4/5/2007] [FileNumber=495971-2]
[4f85f6641b0069f78873234ed3fe907cc693e972d787cc6730b40db21d7852934cabf
25f72e1815770dab2ac2169c240dec02f4f7d5bf0d9a20bf9d2840bffd4]]
**Document description:**Exhibit 3
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1068668610 [Date=4/5/2007] [FileNumber=495971-3]
[03f146666fc66fded2db7e14b1668ef30ccb7e170ba173f5bcf59f185f777d418777c
db6d57eef29cbcf1a60b549b375740f4f18f1f8c6161feca8b889583778]]

D

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

CAROL DURBIN, individually, and
as Special Administrator of the
Estate of DEWEY DURBIN,
Deceased,
                    Plaintiff,

v.                                                    No.  07-CV-1037

PNEUMO ABEX CORPORATION,
PNEUMO ABEX LLC, OWENS-
ILLINOIS, INC., METROPOLITAN
LIFE INSURANCE COMPANY,
HONEYWELL INTERNATIONAL,
INC., and ILLINOIS CENTRAL
RAILROAD COMPANY,
                    Defendants.

DEFENDANT PNEUMO ABEX CORPORATION and PNEUMO ABEX LLC's

RESPONSE TO PLAINTIFF'S MOTION FOR REMAND TO STATE COURT


NOW COMES PNEUMO ABEX CORPORATION and PNEUMO ABEX

LLC (Abex) by its attorney Robert W. Scott of Swain Hartshorn & Scott, and for

the Response to Plaintiff's Motion for Remand states as follows:


1.      On January 2, 2006 Plaintiff's filed a multi-count Complaint in the

        Circuit Court of McLean County Illinois, alleging that Plaintiff's

        decedent Dewey Durbin suffered from an asbestos related disease.

        Counts 1, 2 and 3 allege that Abex, Metropolitan Life Insurance

Company, Owens-Illinois, Inc. and Honeywell International, Inc. engaged in a conspiracy which was the proximate cause of Plaintiff's injuries. Count 4 alleges negligence claims against the Illinois Central Railroad.

2.  Defendants Abex, Metropolitan Life Insurance Company, Owens-Illinois, Inc and Honeywell International, Inc., are citizens of states other than Illinois. Defendant Illinois Central Railroad is a citizen of Illinois.

3.  Plaintiffs assert in their Motion for Remand that because the Illinois Central Railroad is a citizen of Illinois there is an absence of complete diversity.

4.  Defendant Illinois Central Railroad was fraudulently joined as a Defendant in the state court actions. Fraudulently joined parties do not destroy diversity jurisdiction. Gottlieb v. Western Hotel Co., 990 F 2d 323 (7th Cir., 1993).

5.  The Illinois Central Railroad was fraudulently joined because Plaintiffs will be unable to establish under Illinois law that the railroad owed any duty to Plaintiffs.

6.  Plaintiff's Complaint alleges, in Count 4 that the Illinois Central Railroad negligently transported asbestos to Plaintiff Alan Nussbaum's place of employment, Union Asbestos and Rubber Company (Unarco), and negligently failed to warn Plaintiff and

other employees of the hazards of asbestos it was transporting. A copy of the Complaint is attached as Exhibit 1.

7.   The only relationship between Plaintiff and Illinois Central Railroad is that Plaintiff was an employee at the consignee (Unarco) of the shipments of asbestos being transported by Illinois Central Railroad. As the affidavit of Charles G. Garrett, Illinois Central Railroad (Attached as Exhibit 2) establishes that Illinois Central Railroad only transports to Unarco, bags of asbestos in railroad cars and products manufactured by Unarco for delivery, either directly or indirectly to other customers or consignees. Once the railroad cars reach Unarco the bags of asbestos are unloaded by employees of Unarco. Unarco employees load the finished products onto the railroad cars. The Illinois Central Railroad is paid only for transporting the asbestos. It never takes ownership of the asbestos and plays no role in determining the terms of the purchase by Unarco of the asbestos from the manufacturer or suppliers. The Illinois Central Railroad does not design, test, package, market advertise, label, alter or modify the bags of asbestos or finished products. The Illinois Central Railroad does nothing with the asbestos except transport it from one location to another. The Illinois Central Railroad has no knowledge of how the asbestos is used at Unarco nor which Unarco employees come into contact with the asbestos.

8.   In a recent case pending before the District Court for the Southern District of Illinois the Court ruled, in virtually identical circumstances, that Illinois law imposes no duty on a transportation company to the employee of a consignee. Bergman v. U.S. Silica et al., 2003 WL2982136 (S.D. Illinois, 2006). A copy of the Bergman decision is attached as Exhibit 3. In Bergman Plaintiff sought to hold liable, in both strict liability and negligence, a trucking company which delivered silica to Plaintiff's employer. The Court, citing City of Chicago v. Beretta U.S.A. Corp., 213 Ill. 2d 351, 821 N.E. 2d 1099 (2004), listed the factors courts in Illinois would use in imposing a duty on the railroad: 1. whether it is reasonably foreseeable that the conduct of the railroad would cause injury to another in transporting the asbestos; 2. the likelihood of any injury to another in transporting the asbestos; 3. the extent of the burden imposed on the railroad to guard against such injury; and 4. the resulting consequence if such a burden were imposed on the railroad. After reviewing these factors the Court found there was no reasonable possibility that Plaintiff could state a negligence claim against the trucking company. In doing so the Court stated that the trucking company   "...... cannot be reasonably expected to anticipate the injury as caused in this case-otherwise, it would be expected to anticipate the injuries for any and every product it may transport in the course of its business. That is clearly unreasonable and would present too great a

burden, especially when considering the fact that Lotz Trucking has no
knowledge of what UGL intended to do with the silica once it was
unloaded from its trucks by UGL employees."

9.  Under Illinois law a duty is an obligation to conform to a certain
standard of conduct for the protection of another against an
unreasonable risk of harm. Doe v Noe, 293 Ill. App 3d 1099, 690
N.E. 2d 1012, 228 Il. Dec. 937 (1st Dist. 1997). In determining
whether a duty exists, Courts in Illinois ask whether the Defendant
and the Plaintiff stood in such a relationship to one another that the
law imposed upon the Defendant an obligation of reasonable
conduct for the benefit of the Defendants. Mieher v. Brown, 54 Ill.
2d 539, 301 N.E. 2d 307 (1973). As the Court in Bergman noted, a
number of policy considerations may be examined in making this
determination, including the foreseeability and likelihood of the
injury, the magnitude of imposing a burden of Defendants of
guarding against such injury, and the consequences of placing that
burden on Defendant. City of Chicagov. Beretta U.S.A. Corp., 213 Ill.
2d 351, 290 Ill. Dec. 525, 821 N.E. 2d 1099.

10.  As set forth in the affidavit of Charles G. Garrett (Exhibit 2) the
Illinois Central Railroad had no knowledge of what use Unarco was
making of the asbestos it delivered to the plant, or how Unarco was
operating its plant. Because it did not know what was being done
with the asbestos after it was unloaded from the cars, the Plaintiffs

injuries could not have been foreseeable to the Illinois Central Railroad, nor could their injuries have appeared likely to the Illinois Central Railroad. As the Court in <u>Bergman</u> pointed out, a carrier cannot be reasonably expected to anticipate the injury as caused in this case. Otherwise, it would be expected to anticipate the injuries for any and every product it may transport in the course of its business.

11.   That such a duty would be overly burdensome on a common carrier is obvious. The courier would have to become an expert in every product or material it carries. Such a duty would require a common carrier to become such an expert to determine if its cargo posed a risk to the employees of its consignees, to ultimate end users of the product, and to persons living near its tracks or facilities. The imposition of such a duty by one state on an interstate carrier would be manifestly unreasonably burdensome.

12.   Plaintiffs, in their Motion for Remand attach several rulings by Circuit Court judges, in McLean County denying the Railroad's Motion to Dismiss or Motion for Summary Judgment. It needs to be pointed out these are Circuit Court decisions. None are appellate decisions, and Plaintiff cites no appellate authority in arguing that they can state a cause of action against the Illinois Central. Also, in none of their rulings do the Courts give any reasons or rationale for

its ruling. Plaintiff also attaches Orders approving settlements between Illinois Central Railroad and various Plaintiffs. It should not need to be pointed out that parties settle cases for a variety of reasons and parties often settle to avoid lengthy and expensive trials even if they believe they would ultimately prevail. Given the relatively small amounts the Illinois Central paid to settle the cases it can hardly be concluded that Illinois Central Railroad was conceding liability by settling.

13. If anyone owed a duty to Plaintiff it was his employer, Unarco. In fact, in Paragraph 18 of Count 1 of the Complaint Plaintiff alleges that employers such as Unarco had a "statutory, regulatory, and decisional law duty" to provide its employers such as Plaintiff with a safe workplace, and to warn Plaintiff of hazards in the workplace.

14. Plaintiffs cannot reasonably state a cause of action against the Illinois Central Railroad because they cannot establish a duty on the past of the Railroad. Because they cannot establish such a duty, the Illinois Central Railroad was fraudulently joined. Without the Illinois Central Railroad as a Defendant there exists complete diversity between the parties.

WHEREFORE, Defendant prays for an Order denying Plaintiff's Motion

for Remand.

DATED this 5th day of April, 2007.

> **PNEUMO ABEX LLC,** as
> successor in interest to Abex Corporation,
> Defendant
>
> /s/ Robert W. Scott
> Robert W. Scott
>
> Robert W. Scott, Esq.
> Timothy W. Swain II, Esq.
> **SWAIN HARTSHORN & SCOTT**
> 411 Hamilton Boulevard, Suite 1812
> Peoria, IL 61602-1104
> Telephone: (309) 637-1700
> Toll Free: (800) 728-1806
> Fax: (309) 637-1708

## CERTIFICATE OF SERVICE

Pursuant to the *Federal Rules of Civil Procedure, Rule 5(d)*, the undersigned attorney certifies that I filed the following Notice of Appearance with the Clerk of the Court using the EFC system which will send notification of such filing to:

Mark R Kurz    m.kurz@gundlachlee.com, info@gundlachlee.com, n.uhl@gundlachlee.com,s.wagner@gundlachlee.com

Joshua Douglas Lee    jdlee@schiffhardin.com, edocket@schiffhardin.com, estaggs@schiffhardin.com, tsallay@schiffhardin.com

James R Wylder    byounger@walkerwylder.com

jep@kehart.com, lara@kehart.com

I further certify that I served the above mentioned pleadings on the following this 5th day of April, 2007 by U.S. Mail, first class postage prepaid:


POLSINELLI SHALTON WELTE SUELTHAUS
Attorneys for Honeywell International, Inc.
100 S. Fourth Street, Suite 1100
St. Louis, MO 63102


/s/ Robert W. Scott

# EXHIBIT
# 1

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
COUNTY OF McLEAN

*FILED*
McLEAN
JAN 0 2 2007
CIRCUIT CLERK
COUNTY

CAROL DURBIN, individually, and as Special )
Administrator of the Estate of DEWEY DURBIN, )
Deceased, )
             Plaintiff, )
      v. )
PNEUMO ABEX CORPORATION, et al., )
             Defendants. )

No. 06 L | 9|

FIRST CASE MANAGEMENT CONFERENCE
BEFORE JUDGE *Beyard*
SET ON ~~_____~~ AT ~~_____~~ PM

### Count 1

Plaintiff, CAROL DURBIN, as Special Administrator of the estate of Dewey

Durbin, deceased, complains of Defendants, PNEUMO ABEX CORPORATION,

PNEUMO ABEX LLC, OWENS-ILLINOIS, INC., METROPOLITAN LIFE

INSURANCE COMPANY and HONEYWELL INTERNATIONAL, INC., as follows:

    1.    Dewey Durbin was employed at the asbestos plant located at 1111 W.

Perry Street, Bloomington, Illinois, during the years 1966 to 1969 when the plant was

owned and operated by Unarco Industries, Inc. (formerly Union Asbestos & Rubber

Company).

    2.    Beginning in April, 1970 the plant was owned and operated by Owens

Corning.

    3.    During 1966 to 1969 the grinding, milling, transport, and other processing

of asbestos fibers was conducted at the UNARCO plant.

    4.    The grinding, milling, transport, and other processing procedures released

asbestos particles into the atmosphere of the UNARCO plant during 1966 to 1969.

    5.    Unarco Industries, Inc., (formerly Union Asbestos & Rubber Company)

Johns-Manville Corporation, Johns-Manville Sales Corporation, Owens Corning,

Raymark Industries, Inc. (formerly Raybestos-Manhattan, Inc.), and Pittsburgh Corning Corporation are corporations and they, or their corporate predecessors, were during the time relevant to the allegations herein, in the business of manufacturing and distributing asbestos containing products.

6.      Defendants Pneumo Abex Corporation, Pneumo Abex LLC, Owens-Illinois, Inc., and Honeywell International, Inc., are corporations and were, during the times relevant to the allegations herein, themselves or through predecessors, in the business of distributing and manufacturing asbestos-containing products.

7.      Defendant Metropolitan Life Insurance Company is a corporation.

8.      Hereafter "Conspirators" refers to the each of the corporations named in paragraphs 5 through 7.

9.      Exposure to asbestos is a cause of serious disease and death, including asbestosis and cancers, including lung cancer and mesothelioma.

10.     Dewey Durbin was exposed to asbestos, including asbestos from one or more of the Conspirators, during his employment.

11.     Dewey Durbin contracted mesothelioma as a result of his exposure to asbestos.

12.     The mesothelioma from which Dewey Durbin suffered was an indivisible injury which resulted from the total and cumulative effect of all the asbestos to which he was exposed.

13.     Before and during Dewey Durbin's exposure to asbestos, the Conspirators knew that exposure to asbestos caused serious disease and death.

14.     The Conspirators knew that individuals exposed to asbestos were ignorant of the hazardous properties of asbestos.

15.     Before and during his exposure Dewey Durbin was unaware that exposure to asbestos caused serious disease and death.

16.     The knowledge of the Conspirators included the following:

    a)    two or more of the Conspirators had been in the asbestos business for years and had directed manufacturing operations;

    b)    each had knowledge of asbestos disease and death among workers exposed to asbestos as early as the 1940's.

17.     The Conspirators knew that asbestos was inherently dangerous and knew that under the decisional law of Illinois and other states, each was under a duty not to expose individuals to asbestos without providing adequate warning of its harmful qualities.

18.     Two or more of the Conspirators had employees who were exposed to asbestos dust and therefore had a statutory, regulatory, and decisional law duty to provide their employees with a safe place to work, or at the least, to warn the employees of the hazards presented by the presence of asbestos dust.

19.     Each of the Conspirators knew that if it adequately warned its own employees and others whose work brought them into contact with asbestos, that the publication of such warning would cause workers to leave those industries using asbestos and therefore reduce the sale and usage of asbestos.

20.     The Conspirators knowingly conspired and agreed among themselves to, among others:

a)  assert what was not true: that it was safe for people to be exposed to asbestos and asbestos-containing materials;

b)  conceal information about the harmful effects of asbestos.

21.     One or more of the Conspirators performed the following acts in furtherance of the conspiracy:

a)  sold asbestos products which were used at the Perry Street plant without warning of the hazards known to the Conspirators, including sales by Johns-Manville which exposed Dewey Durbin to asbestos;

b)  refused to warn its own employees and those who lived and worked near the plant about the hazards of asbestos known to the Conspirators; including the failure of Unarco to warn Dewey Durbin and other employees and those who lived and worked near the plant of the hazards of asbestos known to Unarco;

c)  edited and altered the reports and drafts of publications initially prepared by Dr. Lanza concerning the hazards of asbestos during the 1930's;

d)  agreed in writing not to disclose the results of research on the effects of asbestos upon health unless the results suited their interests;

e)  obtained an agreement in the 1930's from the editors of ASBESTOS , the only trade magazine devoted exclusively to asbestos, that the magazine would never publish articles on the fact that exposure to asbestos caused disease, and sustained this agreement into the 1970's;

f)  suppressed the dissemination of a report by Dr. Gardner in 1943 which was critical of the concept that there was a safe level of asbestos exposure;

g)  through their control of the Asbestos Textile Institute (ATI), defeated further study of the health of workers when William Hemeon graphically

demonstrated the need for such study and
dissemination of information in the 1940's;

h)      edited and altered the reports and drafts of
publications regarding asbestos and health initially
prepared by Dr. Vorwald during 1948-1951;

i)      suppressed the results of the Fibrous Dust Studies
conducted during 1966-74 by the Industrial Health
Foundation, Inc., Johns-Manville, Raybestos
Manhattan, Owens Corning, Pittsburgh Corning
Corporation and PPG Industries, which results
demonstrated and confirmed that exposure to
asbestos caused lung cancer and mesothelioma;

j)      acting under the name of NIMA, published a
pamphlet entitled "Recommended Health Safety
Practices for Handling and Applying Thermal
Insulation Products Containing Asbestos" in which
they purported to inform readers about the health
hazards of airborne asbestos, but withheld, among
other facts, that asbestos caused serious disease and
death, including cancer, that there was no cure for
asbestos disease, and that there was no known safe
level of exposure to asbestos;

k)      purchased asbestos which did not contain warnings
from co-conspirators, to which the purchaser then
expoed its own employees without warning of the
hazards known to the seller and purchaser,
including the purchase of asbestos by Owens-
Illinois from Unarco;

l)      refused to warn its employees who had to use
asbestos-containing materials in the manufacture of
other products for the conspirator of the hazards of
exposure to asbestos known to the conspirator,
including the refusal of Owens-Illinois to warn its
employees who were exposed to asbestos in
connection with the manufacture of glass products
of the hazards of asbestos known to Owens-Illinois;

m)      purchased asbestos which did not contain warnings
from co-conspirators, to which the purchaser then
expected its own employees without warning of the
hazards known to the seller and purchaser,

including the purchase of asbestos by Bendix (n/k/a Honeywell) from Johns-Manville;

n) refused to warn its employees who had to use asbestos-containing materials in the manufacture of other products for the conspirator of the hazards of exposure to asbestos known to the conspirator, including the refusal of Bendix to warn its employees who were exposed to asbestos in connection with the manufacture of friction products of the hazards of asbestos known to Bendix; and

o) altered, including the deletion of all references to the association of asbestosis and lung cancer, the original report of the study performed by Braun & Truam of the Industrial Hygiene Foundation before the altered version was published in 1958.

22. The agreements and the acts done in furtherance of the agreements were proximate causes of the injury and death of Dewey Durbin.

23. Plaintiff first knew or could have known Dewey Durbin's mesothelioma was wrongfully caused by exposure to asbestos when the diagnosis of mesothelioma was initially made after review of pathology in September, 2006.

24. Illinois Central Railroad Company has its principal place of business within the State of Illinois.

25. Dewey Durbin died May 14, 2005.

26. The next of kin of Decedent are: Carol Durbin, widow; Ernest Durbin, son; Judy McCarley, daughter; Denita Hamm, daughter; and Shannon Casey, daughter.

27. As a result of the death of Decedent, his wife and children suffered a loss of benefits of a pecuniary value and society including money, goods and services which he would have contributed to them had he lived.

28.     Plaintiff was appointed Special Administrator of the Estate of Decedent and brings this action for wrongful death under 740 ILCS 180/1 and 2.

WHEREFORE, Plaintiff, CAROL DURBIN, as Special Administrator of the Estate of Dewey Durbin, requests damages from Defendants, jointly and severally with the other Defendants named in this cause, in an amount in excess of $50,000 and demands trial by jury.

### Count 2

Plaintiff, CAROL DURBIN, individually, complains of Defendants, PNEUMO ABEX CORPORATION, PNEUMO ABEX LLC, OWENS-ILLINOIS, INC. METROPOLITAN LIFE INSURANCE COMPANY and HONEYWELL INTERNATIONAL, INC., as follows:

1-25.    Plaintiff realleges paragraphs 1-25 of Count 1.

26.     Plaintiff was the spouse of Dewey Durbin.

27.     As a result of the injury to her husband during the period between the onset of his disease and his death, Plaintiff suffered an injury to her husband/wife relationship and became obligated for the expense of the medical care received by her husband.

28.     The agreements and the acts done in furtherance of the agreements were proximate causes of Plaintiff's loss.

WHEREFORE, Plaintiff, CAROL DURBIN, individually, requests damages from Defendants, jointly and severally, with the other Defendants named in this cause, in an amount in excess of $50,000 and demands trial by jury.

## Count 3

Plaintiff, CAROL DURBIN, Special Administrator of the Estate of Dewey Durbin, deceased, complains of Defendants, PNEUMO ABEX CORPORATION, PNEUMO ABEX LLC, OWENS-ILLINOIS, INC., METROPOLITAN LIFE INSURANCE COMPANY and HONEYWELL INTERNATIONAL, INC., as follows:

1-25.   Plaintiff realleges paragraphs 1-25 of Count 1.

26.     Dewey Durbin was ill from mesothelioma for a period before his death.

27.     Plaintiff was appointed Special Administrator of the Estate of Decedent and brings this action pursuant to 735 ILCS 5/13-209 for the damages sustained by Decedent prior to his death.

WHEREFORE, CAROL DURBIN, Special Administrator of the Estate of Dewey Durbin, deceased, requests damages from Defendants, jointly and severally, in an amount in excess of $50,000 and demands trial by jury.

## Count 4

Plaintiff, CAROL DURBIN, Special Administrator of the Estate of Dewey Durbin, deceased, complains of Defendant, ILLINOIS CENTRAL RAILROAD COMPANY, as follows:

1.     Illinois Central Railroad Company, or one or more of its corporate predecessors, all of whom will hereafter be referred to as "Defendant", owned a building and adjacent railway located at 1111 W. Perry Street in Bloomington, Illinois.

2.     Dewey Durbin was employed in the building during the years 1966 to 1969.

3.    During the 1960's Defendant transported asbestos in railcars over Defendant's railway to the plant at 1111 W. Perry Street and transported from the building asbestos containing products that were manufactured within the building.

4.    The transportation, unloading and loading of asbestos and asbestos containing products released asbestos into the atmosphere of the surrounding area.

5.    Dewey Durbin inhaled some of the asbestos.

6.    Dewey Durbin contracted mesothelioma as a result of his exposure to asbestos.

7.    Before Defendant released the asbestos into the atmosphere Defendant knew, or should have known, that exposure to airborne asbestos caused pulmonary fibrosis and cancers, including mesothelioma. Part of what Defendant knew was that exposure to airborne asbestos had caused pulmonary fibrosis and cancer among Defendant's own employees.

8.    Before Defendant released the asbestos into the atmosphere, Defendant knew that Dewey Durbin, and others who worked in or near the plant, were ignorant of the hazardous properties of asbestos and knew that Dewey Durbin, and the others, would not learn from any other source of the risks involved in exposure to asbestos released as a result of Defendant's conduct.

9.    Defendant was negligent in one or more of the following respects:

    a)    failed to transport the asbestos and asbestos-containing products so as to prevent the release of asbestos fibers into the atmosphere; and

    b)    failed to warn Dewey Durbin and others similarly situated, of the hazard which Defendant had created by its release of asbestos fibers.

Files:Durbin:Complaint.doc

10.    Defendant's negligence was a proximate cause of the injury and death of Dewey Durbin.

11.    Plaintiff realleges paragraph 23 of Count 1.

12.    Defendant's principal place of business is within the State of Illinois.

13-16.  Plaintiff realleges paragraphs 25-28 of Count 1.

WHEREFORE, Plaintiff, CAROL DURBIN, Special Administrator of the Estate of Dewey Durbin, deceased, requests damages from Defendant, jointly and severally with the other Defendant named in this cause, in an amount in excess of $50,000 and demands trial by jury.

<u>**Count 5**</u>

Plaintiff, CAROL DURBIN, individually, complains of Defendant, ILLINOIS CENTRAL RAILROAD COMPANY, as follows:

1-10.  Plaintiff realleges paragraphs 1-10 of Count 4.

11.    Plaintiff was the spouse of Dewey Durbin.

12.    Plaintiff realleges paragraph 27 of Count 2.

13.    The negligence of Defendant was a proximate cause of Plaintiff's loss.

14.    Plaintiff realleges paragraph 23 of Count 1.

WHEREFORE, Plaintiff, CAROL DURBIN, individually, requests damages from Defendant, jointly and severally, with the other Defendants named in this cause, in an amount in excess of $50,000 and demands trial by jury.

## Count 6

Plainitff, CAROPL DURBIN, Special Administrator of the Estate of Dewey

Durbin, deceased, complains of Defendant, ILLINOIS CENTRAL RAILROAD

COMPANY, as follows:

     1-10.   Plaintiff realleges paragraphs 1-10 of Count 4.

     11.      Plaintiff realleges paragraph 23 of Count 1.

     12-13.  Plaintiff realleges paragraphs 26-27 of Count 3.

WHEREFORE, Plaintiff, CAROL DURBIN, Special Administrator of the Estate

of Dewey Durbin, deceased, requests damages from Defendant, jointly and severally,

with the other Defendants named in this cause, in an amount in excess of $50,000 and

demands trial by jury.

> CAROL DURBIN, individually, and as
> Special Administrator of the Estate of
> DEWEY DURBIN, Deceased, Plaintiff,

WALKER & WYLDER, LTD.
Attorneys for Plaintiff
207 W. Jefferson Street
Bloomington, IL 61701
309/828-5044
JR/el



*26. m m 26082*

CORPORATION SERVICE COMPANY®

DDZ / ALL
Transmittal Number: 4964779
Date Processed: 01/18/2007

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Barry F Schwartz<br>Macandrews & Forbes Holdings Inc.<br>35 East 62nd Street<br>New York, NY 10021 |
| **Copy of transmittal only sent to:** | Dexter Kenfield<br>Gina Knight |

| | |
|---|---|
| **Entity:** | Pneumo Abex LLC<br>Entity ID Number  2309785 |
| **Entity Served:** | Pneumo Abex, LLC |
| **Title of Action:** | Carol Durbin vs. Pneumo Abex Corporation |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Asbestos |
| **Court:** | McLean County 11th Judicial Circuit Court, Illinois |
| **Case Number:** | 06 L 191 |
| **Jurisdiction Served:** | Delaware |
| **Date Served on CSC:** | 01/18/2007 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Plaintiff's Attorney:** | James Wylder<br>309-828-5044 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808  (888) 690-2882   |   sop@cscinfo.com

# EXHIBIT

# 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **CAROL DURBIN, Individually, and as** | ) | |
| **Special Administrator of the Estate of** | ) | |
| **DEWEY DURBIN, Deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 07-CV-1037** |
| | ) | |
| **PNEUMO ABEX CORPORATION, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### DECLARATION OF CHARLES G. GARRETT

1.   My name is Charles G. Garrett.  I am the Risk Mitigation Manager of Illinois Central Railroad ("IC"), which has its principal place of business at 455 North Cityfront Plaza Drive Chicago, Illinois 60611-5504.  IC is an Illinois corporation.

2.   In this declaration I am providing factual background on IC's (hereinafter "IC" refers to Illinois Central Railroad Company and all of its predecessor railroads) transportation of asbestos to an asbestos plant located at 1111 Perry Street, Bloomington, Illinois, once owned and operated by Union Asbestos & Rubber Company ("the plant"), and the transportation of products containing asbestos from that plant, in the 1966-1969 period, based on my understanding of IC's railroad operations at that time.

3.   I have worked for IC since 1976.  My present position is Risk Mitigation Manager.  My preceding positions with IC were Claim Agent, Claims Manager, Risk Manager, and Senior Risk Mitigation Officer.

4.  Through involvement in prior asbestos cases against IC I am personally generally familiar with the plant site in question and IC's operations concerning movements to and from that plant during the time period in question.

5.  As a common carrier by rail IC was required by federal law to take on any reasonable request for transportation.

6.  IC would transport cars carrying asbestos typically received from other railroads which it would deliver to the plant, where plant employees or others provided by the plant would unload the asbestos.

7.  IC had no control over or employer-employee relationship with the personnel at the plant who unloaded the asbestos from, or loaded the asbestos-related products into, the rail cars it carried to or from the plant.

8.  IC would also pick up from the plant cars into which plant personnel had loaded packages containing asbestos-related products, for transportation to receivers directly or through interchange with other rail carriers for further transportation to the ultimate customer/consignee.

9.  The individuals who unloaded the asbestos or loaded the asbestos-related products at the plant were not employees of IC.

10. IC did not take ownership of the asbestos or asbestos-related products it transported to or from the plant or play any role in the pricing or marketing of the asbestos or asbestos-related products it carried to or from the plant.

11. IC did not design, test, package, market, advertise, label or modify the packaging of the asbestos or asbestos-related products it was called upon to carry to or from the plant.

2

12. I am familiar with similar prior cases filed in state court concerning alleged asbestos-related diseases including claims by or with respect to former employees of the same plant about IC's actions, but am aware of none where the court entered a final judgment ruling on the merits that the plaintiff had stated a valid claim against IC under state law that was not preempted by federal law.

13. IC has at times been willing to settle claims concerning former employees of the plant, despite their lack of legal merit, because of the uncertainties and risks they may have presented, including adverse but erroneous rulings by the trial court on issues of federal or state law, the costs of further litigation at the trial court level or on appeal, and the risks of adverse verdicts and judgments that might not be effectively reversed on appeal.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on April 4, 2007.

Charles G. Garrett
Risk Mitigation Manager

3

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES BERGMAN and
LORI BERGMAN,

      Plaintiffs,

v.

U.S. SILICA, DUPONT and DUPONT TITANIUM,
TECHNOLOGIES, KERR-McGEE CORPORATION
and TRONOX, LLC, f/k/a KERR-McGEE
CHEMICAL, LLC, KRONOS WORLDWIDE, INC.,
and LOTZ TRUCKING,

      Defendants.                    Case No. 06-cv-356-DRH

MEMORANDUM & ORDER

HERNDON, District Judge:

## I. INTRODUCTION

        This matter is before us on a Motion to Remand (Doc. 14), filed by

plaintiffs James Bergman and Lori Bergman.  Defendants Kerr-McGee Corporation

and Kerr-McGee Chemical, LLC, removed this case on the basis of diversity

jurisdiction (*see* Doc. 3) with the remaining Defendants consenting to the removal

(*see* Docs. 7-10).  Plaintiffs, who are Illinois residents, contest Defendants' assertion

that complete diversity jurisdiction exists between the parties, arguing that defendant

Lotz Trucking – an Illinois corporation with its principal place of business in Illinois

– is a non-diverse party.  All Defendants oppose the remand (Doc. 21), arguing complete diversity jurisdiction does exist, as they believe defendant Lotz Trucking was fraudulently joined to Plaintiffs' suit.  The Court agrees with Defendants and must therefore deny a remand.

## II. **BACKGROUND**

Plaintiff James Bergman is an Illinois resident who alleges that he has developed silicosis/pneumoconiosis, causing permanent disability (Doc. 5, ¶ 12). Bergman, together with his wife, Lori, have filed suit against Defendants (Doc. 5). Mr. Bergman brings claims of strict products liability, negligence and breach of implied warranty against Defendants (Doc. 5).  Additionally, Lori Bergman states a claim for loss of consortium (*Id.*).  James Bergman was employed by United Gilsonite Laboratories ("UGL"), where he managed the maintenance department from 1986 to 2002 (*Id.* at ¶¶ 2, 8).  Plaintiffs allege James Bergman's work environment caused him to be exposed to dangerous chemicals, including titanium dust and silica products (*Id.* at ¶ 9).  This exposure allegedly caused James Bergman's debilitating condition.  Plaintiffs further allege that these sand and silicosil products were manufactured by defendant U.S. Silica (*Id.* at ¶ 10).  The titanium dioxide contained in a paint mix was allegedly manufactured and sold to UGL by defendants Kronos, Kerr-McGee (and Tronox) and DuPont (and DuPont Titanium) (*Id.* at ¶11).

Aside from the manufacturer-Defendants, Plaintiffs also initially brought claims against Miller Trucking (also considered a citizen of Illinois).  However,

subsequent to filing their initial Complaint, Plaintiffs learned that defendant Lotz Trucking was a proper party Defendant to the case,[1] so they sought leave to amend their Complaint, adding Lotz Trucking and thereafter voluntarily dismissing Miller Trucking (Doc. 15, p. 1; *see also* Doc. 3, Attachments, p. 2; Doc. 21, Ex. C). Plaintiffs, among other things, allege that Lotz Trucking transported the products at issue from the manufacturers to UGL (Doc. 21).

During pretrial discovery, Lotz Trucking served its responses to Plaintiffs' interrogatories on all parties (Doc. 21, Ex. B). Defendants state they first became aware that Lotz Trucking had been fraudulently joined upon reading these responses, coupled with a review of Lotz Trucking's Answer and Affirmative Defenses to Plaintiffs' Amended Complaint (Doc. 6), as Lotz Trucking stated it was neither the manufacturer or seller of the products at issue (Doc. 3, ¶¶ 18-20). Defendants argue that but for the fraudulent joinder of Lotz Trucking, as it is a non-diverse party, complete diversity jurisdiction would exist, pursuant to **28 U.S.C. § 1332**, making removal proper (*Id.* at ¶ 21).

---

[1] Plaintiffs learned that Lotz Trucking had leased transportation equipment from Miller Trucking (Doc. 14, ¶ 3 and Ex. A).

### III. ANALYSIS

**A.     Legal Standard**

**1.     Removal**

The removal statute, **28 U.S.C. § 1441**, is construed narrowly, and doubts concerning removal are resolved in favor of remand. ***Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)**. Defendants bear the burden to present evidence of federal jurisdiction once the existence of that jurisdiction is fairly cast into doubt. **See *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 607 (7th Cir. 1997)**. "A defendant meets this burden by supporting [its] allegations of jurisdiction with 'competent proof,' which in [the Seventh Circuit] requires the defendant to offer evidence which proves 'to a reasonable probability that jurisdiction exists.'" ***Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997)(citations omitted)**. However, if the district court lacks subject matter jurisdiction, the action must be remanded to state court pursuant to **28 U.S.C. § 1447(c)**.

The statute regarding diversity jurisdiction, **28 U.S.C. § 1332,** requires complete diversity between the parties plus an amount in controversy which exceeds $75,000, exclusive of interest and costs. Complete diversity means that "none of the parties on either side of the litigation may be a citizen of the state of which a party on the other side is a citizen." ***Howell v. Tribune Entertainment Co.*, 106 F.3d 215, 217 (7th Cir. 1997) (citations omitted)**. In this case, as defendant Lotz

Trucking is also considered a citizen of Illinois, there is not complete diversity among the parties, as Plaintiffs are also Illinois citizens.  Plaintiffs, in their Motion to Remand, do not contest any other aspect of the Defendants' assertion of diversity jurisdiction (such as amount in controversy), other than the fact that defendant Lotz Trucking is a proper party and thus, a non-diverse party that destroys diversity jurisdiction.   Therefore, the sole matter for determination regarding proper jurisdiction is the issue of fraudulent joinder.

    **2.**    **Fraudulent Joinder**

        If diversity jurisdiction exists among proper parties, it will not be destroyed due to fraudulently joined non-diverse parties. ***Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993)(collecting cases)**.   In the context of jurisdiction, "fraudulent" is a term of art. ***See Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992)**.  "Although false allegations of jurisdictional fact may make joinder fraudulent . . .  in most cases fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success whatever the plaintiff's motives." ***Id.* (collecting cases)**.  To prove fraudulent joinder, the out-of-state defendant must "show there exists no 'reasonable possibility that a state court would rule against the [in-state] defendant,'" ***Schwartz v. State Farm Mutual Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999)(citing *Poulos*, 959 F.2d at 73)**, or "if a state court has come to judgment, there [is not] any reasonable possibility that the judgment will be reversed on appeal." ***Poulos*, 959 F.2d at 73**.  The defendant

bears a heavy burden in this regard. *Id.* This burden can be met by introducing

uncontradicted evidence. *See Faucett v. Ingersoll-Rand Mining & Machinery*

*Co.*, **960 F.2d 653, 655 (7th Cir. 1992)(where uncontradicted affidavit of the**

**non-diverse defendant attesting to facts showing that the plaintiff could not**

**establish a cause of action against him under Illinois law was sufficient to**

**establish fraudulent joinder)**.

**B.    DISCUSSION**

        Plaintiffs bring three separate counts against Lotz Trucking for strict

products liability, negligence and breach of implied warranty.  Mrs. Bergman also

brings a claim against all Defendants for loss of consortium, which hinges upon a

finding of liability on any of the previous three counts (*see* Doc. 5).  As these are state

law claims, Illinois substantive law applies. *See Erie R. Co. v. Tompkins*, **304 U.S.**

**64, 78 (1938)**.

**1.    Products Liability**

        Count XVI of Plaintiffs' First Amended Complaint (Doc. 5, ¶¶ 78-81)

alleges a claim based upon a theory of strict products liability, brought by James

Bergman against Lotz Trucking.  Specifically, he alleges, "Lotz Trucking, the Lesee

of Roger Miller Trucking . . . was engaged in the delivery, distribution and sale of

silica products including sand and silicosil (hereinafter "silica")" (*Id.* at ¶ 79).

Therefore, Plaintiff claims Lotz Trucking is strictly liable in tort because:

    i. Defendants knew or should have known at the time the silica in question was placed in the stream of commerce that it was unreasonably dangerous and defective in that it could cause silicosis;

    ii. The above-described defect existed at the time the silica left the control of Lotz Trucking;

    iii. The silica was accompanied by inadequate warnings of the danger presented by the silica;

    iv. Defendant Lotz Trucking knew of the propensity of the silica to cause silicosis if inhaled prior to the time it produced the silica which eventually injured plaintiff's lungs, and

    v. The silica reached plaintiff in the same condition as when it left the control of defendant Lotz Trucking.

(*Id.* at ¶ 80),

Defendants have submitted evidence in support of both their Notice of Removal and in their opposing Response to Plaintiffs' Motion to Remand, to show Lotz Trucking neither manufactured, distributed nor sold the silica as alleged in the Complaint. Therefore, Defendants argue that Plaintiffs cannot properly bring a strict products liability claim against Lotz Trucking under Illinois law. The substantiating evidence consists of Lotz Trucking's responses to Plaintiffs' interrogatories, its affirmative defenses made in its Answer, and an affidavit of Kevin Kuntz, who is currently the operations manager of Lotz Trucking. In his affidavit, Kuntz states that Lotz Trucking only provided transportation services – it did "not buy, sell, wholesale, retail or manufacture any silica and/or titanium dioxide products" (Doc. 21, Ex. D, ¶ 2).

Regarding the circumstances at issue in Plaintiffs' Complaint, Kuntz attests that Lotz Trucking was contacted by defendant U.S. Silica because it had an order which needed to be delivered to UGL (James Bergman's employer) (*Id.* at ¶ 3). Lotz Trucking's function was to deliver the product ordered by UGL from U.S. Silica to UGL. Kuntz provides a detailed description of the receipt, transport and delivery process of silica as follows:

> One of our trucks then travels to the U.S. Silica facility where bags of silica sand are present on pallets which are shrink-wrapped. Employees of U.S. Silica then load these shrink-wrapped pallets of silica sand onto one of our trucks. Lotz Trucking does not buy any of the silica sand. Lotz Trucking has no involvement in what type or brand of silica sand is selected by [UGL] from U.S. Silica. The bags of silica sand are then hauled by Lotz Trucking to the [UGL] facility in Jacksonville, Illinois. [UGL] then pays Lotz Trucking only for delivery charges. It is my understanding that [UGL] pays U.S. Silica directly for the purchase of the silica sand itself. Lotz Trucking never takes ownership of any of the silica sand hauled from U.S. Silica to [UGL]. Lotz Trucking plays no role in the determination of the price of silica sand which is sold by U.S. Silica to [UGL]. U.S. Silica uses a forklift to load the pallets of silica sand onto our trailer. Likewise, [UGL] uses a forklift to unload our trailer. Thus, Lotz Trucking does not handle these materials . . . . Lotz Trucking does nothing to the pallets of silica sand bags except transport them from one location to another. Lotz Trucking does not design, test, package, market, advertise, label, alter or modify the bags of silica sand or any other silica product in issue. Lotz Trucking has no knowledge as to how the silica sand is used at [UGL] and does not have knowledge of which individuals, if any, may ultimately come into contact with silica sand at [UGL].

(Doc. 21, Ex. D, ¶¶ 3-9).

Liability, in a products liability action, can be imposed on manufacturers of the product at issue, as well as "all persons in the distributive chain . . . including suppliers, distributors, wholesalers and retailers." ***Hammond v. North American Asbestos Corp.*, 97 Ill.2d 195, 206, 454 N.E.2d 210, 216 (1983)(citing *Thomas v. Kaiser Agricultural Chemicals*, 81 Ill.2d 206, 214, 407 N.E.2d 32 (1980)); *see also Mechanical Rubber and Supply Co. v. Caterpillar Tractor Co.*, 80 Ill. App. 3d 262, 264, 399 N.E.2d 722, 723 (Ill. Ct. App. 1980)**. The logic behind the imposition of this strict liability derives from the fact that both manufacturers and parties within the"distributive chain" theoretically have the ability, by virtue of their involvement in the marketing process, "to exert pressure on the manufacturer to enhance the safety of the product." ***Id.* (citing *Dunham v. Vaughan & Bushnell Manufacturing Co.*, 42 Ill.2d 339, 344, 247 N.E.2d 401 (1969))**. However, along the lines of this logic follows the notion that if the party merely provides a service in relation to the manufacture and sale of the product at issue, but this "relationship is peripheral and not directly related to the distributive process," such peripheral party cannot be subjected to strict products liability. ***Mechanical Rubber and Supply Co.*, 80 Ill. App. 3d at 264, 399 N.E.2d at 723**. This is true even if the services provided by the peripheral party required it to exercise reasonable care in the performance of that service. ***Id.*** Illinois law recognizes a transportation company (among others) as one such type of peripheral party. ***Id.*; *see also Milford v. Commercial Carriers, Inc.*, 210 F. Supp. 2d 987,**

990 (N.D. Ill. 2002); *Alvarez v. Koby Machinery Co., Ltd.*, 163 Ill. App. 3d 711, 716, 516 N.E.2d 930, 933 (Ill. Ct. App. 1987). Moreover, Defendants offer a case, although not binding precedent, that is very similar to the situation at hand, which found that a transportation company was not liable in a products liability action.

The recent case cited by Defendants is from the United States District Court for the Southern District of Mississippi. *Lundy v. Cliburn Truck Lines, Inc.*, 397 F. Supp. 2d 823 (S.D. Miss. 2005). In *Lundy*, the plaintiff suffered from a condition allegedly caused by exposure to a carcinogen known as benzene, an ingredient in some gasolines, while she was working at various Conoco convenience stores for 13 years. *Id.* at 825. Among the parties she filed a products liability suit against was defendant Cliburn Tank Lines for allegedly supplying and distributing the gasoline at issue. *Id.* As in this case, the *Lundy* plaintiff stated claims of strict products liability, negligence and breach of warranties. *Id.* at 826. The case was removed to the federal district court by the defendants on the basis of diversity, even though Cliburn Tank Lines was a non-diverse party. The *Lundy* defendants, also like the instant matter, claimed Cliburn Tank Lines was fraudulently joined to defeat diversity of citizenship. *Id.* The plaintiff filed for remand, hence the district court examined the fraudulent joinder issue.

The *Lundy* court analyzed the plaintiff's claims against Cliburn Tank Lines, reciting the fraudulent joinder standard that "[r]emoval is proper 'if the plaintiff's pleading is pierced and it is shown that as a matter of law there is no

reasonable basis for predicting that the plaintiff might establish liability [under state law] on that claim against the instate defendant.'" *Id.* at 827 (citing *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 290 (5th Cir. 2000)). Further, the district court recognized that the plaintiff could not merely state conclusory allegations of wrongful behavior to make sufficient showing that the non-diverse party was *not* fraudulently joined, as external evidence, such as affidavits, could be used to prove otherwise. *Id.*

In order to oppose the remand, the *Lundy* defendants submitted the sworn affidavit of Donald Cliburn, the President of Cliburn Tank Lines, attesting to the following: Cliburn Tank Lines "had no control over the employees or premises to which the gasoline was delivered . . ." and did not "buy, sell, wholesale, retail or manufacture gasoline products, and that it did not design, test, package, market, advertise, label, alter or modify the gasoline in issue . . . ." *Id.* at 828. Noting that the plaintiffs had offered no evidence to rebut the statements made in the Cliburn affidavit, other than what was alleged in the complaint, the *Lundy* court found that the substance of the affidavit must be taken as true. *Id.* The *Lundy* court determined that Cliburn Tank Lines was merely the deliverer of gasoline from seller to buyer, had nothing to do with the manufacture or sale of the product and thereby liability could not be imposed upon the transportation company. Thus, Cliburn Tank Lines was found to be fraudulently joined, was therefore dismissed and the remand denied. *Id.*

Countless parallels run between ***Lundy*** and this case.  Though it is not binding precedent, as it generally applies the same standard for determining fraudulent joinder and because the theory behind the imposition of products liability is somewhat universal regardless of the state, the Court finds the ***Lundy*** case insightful.  Further, Illinois law supports the finding in ***Lundy***, as the Illinois courts have previously recognized that transportation companies serving merely in a peripheral relationship with the product at issue, cannot be held liable in a products liability action.  ***See, e.g., Mechanical Rubber and Supply Co.*, 80 Ill. App. 3d at 264, 399 N.E.2d at 723**.  In their memorandum in support of the Motion to Remand (Doc. 15), Plaintiffs have failed to cite any case law supporting their theory that a transportation company should be held liable for being part of the manufacturing and distribution chain.  Instead, the cases cited by Plaintiffs to support their strict product liability claim against Lotz Trucking merely stand for the proposition that product liability can be imposed upon a manufacturer, seller or distributor (Doc. 15, p. 2, citing ***Hammond*, 97 Ill.2d at 206, 454 N.E.2d at 216; *Thomas*, 81 Ill.2d at 214, 407 N.E.2d at 32**).

Even more detrimental to Plaintiffs' position is their failure to reply to Defendants' arguments.  Yet, what is most crucial is the fact that Plaintiffs have offered no evidence whatsoever to rebut the assertions made by Lotz Trucking.  In other words, Plaintiffs attempt to merely rest on their allegations of wrongdoing and liability in order to show Lotz Trucking has not been fraudulently joined to this

action.  This will not suffice.  Therefore, as in **Lundy**, the Court will take the averments stated in the affidavit of Kevin Kuntz and Lotz Trucking's Responses to Plaintiffs' Interrogatories as true.

The evidence, therefore, clearly shows that Lotz Trucking is not involved, nor responsible for the manufacture or retail of the silica product at issue. Nor does Lotz Trucking determine the distribution of the silica.  It simply, when needed, provides a service to get the product from Point A to Point B.  In fact, Lotz Trucking does not stand to make any financial profit from the sale of the silica as it is paid only for the transportation services it provides.  Lotz Trucking has no control or influence over the marketing of the silica.  It is also not in a position to have knowledge of the safety and/or handling of the silica (other than its transportation), as it neither loads or unloads the product.  These tasks are left to the employees of U.S. Silica and UGL.  In sum, Lotz Trucking, in this instance, is merely a peripheral party – not able to likely press upon the manufacturer to enhance the safety of this product.  Therefore, the Court finds no reasonable possibility that Plaintiff can prevail on a strict products liability claim against Lotz Trucking in an Illinois state court.

### 2.    Negligence

In their memorandum, Plaintiffs assert that the basis for liability in negligence is based upon the "duty of a manufacturer or seller of a product . . . to exercise reasonable care in the distribution of and warnings given concerning the use of the product" (Doc. 15, p. 3).  Thus, there must be an existing duty compelling Lotz

Trucking to do something – in this case, to use reasonable care in distributing the silica and also to provide warning regarding the use of the silica. Determining whether such duty exists is a question of law, requiring the Court to examine such factors as: (1) whether it is reasonably foreseeable that the conduct of Lotz Trucking could cause injury to another in transporting the silica; (2) the likelihood of any injury occurring due to Lotz Trucking's transport of the silica; (3) the extent of the burden imposed upon Lotz Trucking to guard against such injury; and (4) the resulting consequences if such burden were imposed upon Lotz Trucking. *See City of Chicago v. Beretta U.S.A. Corp.***, 213 Ill.2d 351, 391, 821 N.E.2d 1099, 1125 (Ill. 2004)**.

Even Plaintiffs' own legal authority makes it evident that Lotz Trucking had no duty in this instance. The law cited by Plaintiffs imposes such duty upon a *manufacturer* or *seller* – not a peripheral transportation company. Plaintiffs have not offered supporting law or other legal argument to prove otherwise. Looking at the factors regarding the existence of a duty, Lotz Trucking cannot be reasonably expected to anticipate the injury as caused in this case – otherwise, it would be expected to anticipate the injuries for any and every product it may transport in the course of its business. That is clearly *un*reasonable and would present too great of a burden, especially when considering the fact that Lotz Trucking has no knowledge of what UGL intended to do with the silica once it was unloaded from its trucks by UGL employees. For these reasons, coupled with Plaintiffs' failure to show why such

duty should exist, other than merely resting on their allegations and a couple of basic case cites regarding negligence in a products liability action, the Court finds no reasonable possibility that Plaintiff could state a successful claim of negligence against Lotz Trucking in an Illinois state court.

### 3.    Breach of Implied Warranty

Again, in their supporting memorandum, Plaintiffs specifically state "[a] defendant in a breach of warranty action must be a *seller* . . ." (Doc. 15, p. 3)(emphasis added). As evidence has already proven Lotz Trucking is not a seller of silica in any way, the Court finds no reasonably possibility that Plaintiff to prevail in Illinois state court against Lotz Trucking based upon a breach of implied warranty theory.

### 4.    Loss of Consortium

James Bergman's wife, Lori Bergman, states one count against all Defendants, for loss of consortium for her husband's injuries allegedly caused by the silica, which hinges upon a finding of liability. Thus, as the Court has found no reasonable possibility that all of the Counts stated against Lotz Trucking would be successful in an Illinois state court, it follows that there is no reasonable possibility that Mrs. Bergman's loss of consortium claim would be successful.

### 5.    Federal Preemption

The Court notes that Defendants have also asserted, in their opposing Response (Doc. 21, pp. 12-15), that even if Plaintiffs could state viable claims in

Illinois court against defendant Lotz Trucking, such claims were preempted by the Federal Aviation Administration Authorization Act. **49 U.S.C. § 14501**. As the Court has already found that Lotz Trucking was fraudulently joined, it will not examine the preemption issue.

## IV. <u>CONCLUSION</u>

As the Court has found under the legal standard as stated in ***Poulos***, that there exists no reasonable possibility that an Illinois state court would rule against Lotz Trucking on either Plaintiffs' strict products liability, negligence, breach of implied warranty or loss of consortium claims, it thereby concludes Lotz Trucking has been fraudulently joined in this action. Based upon this conclusion, Lotz Trucking should be dismissed as a party defendant in this case. Without Lotz Trucking as a defendant, there exists complete diversity of citizenship between the parties. Accordingly, Plaintiffs' Motion to Remand (Doc. 14) is hereby **DENIED**.

**IT IS SO ORDERED.**

Signed this 17th day of October, 2006.

/s/          David  RHerndon
**United States District Court**

## Responses and Replies

1:07-cv-01037-JBM-JAG Durbin v. Peumo Abex Corporation et al
13, 15, ASBESTOS, REFER, REMOVAL

### U.S. District Court

### United States District Court for the Central District of Illinois

### Notice of Electronic Filing

The following transaction was entered by Swain, Timothy on 4/5/2007 at 3:27 PM CDT and filed on 4/5/2007

**Case Name:**    Durbin v. Peumo Abex Corporation et al
**Case Number:**    1:07-cv-1037
**Filer:**    Pneumo Abex Corporation
    Pneumo Abex LLC

**Document Number:** 14

**Docket Text:**
RESPONSE to Motion re [12] MOTION to Remand *to State Court* filed by Defendants Pneumo Abex Corporation, Pneumo Abex LLC. (Attachments: # (1) Exhibit 1# (2) Exhibit 2# (3) Exhibit 3)(Swain, Timothy)

**1:07-cv-1037 Notice has been electronically mailed to:**

Mark R Kurz    m.kurz@gundlachlee.com, info@gundlachlee.com, n.uhl@gundlachlee.com, s.wagner@gundlachlee.com

Joshua Douglas Lee    jdlee@schiffhardin.com, edocket@schiffhardin.com, tsallay@schiffhardin.com

James E Peckert    jep@kehart.com, lara@kehart.com

Thomas R Peters    t.peters@gundlachlee.com, info@gundlachlee.com, l.schafer@gundlachlee.com

Robert Westwood Scott    bobscott@peorialaw.com

Timothy Whitzel Swain , II    timswain@peorialaw.com, shannonmcmahill@peorialaw.com

James R Wylder    byounger@walkerwylder.com

**1:07-cv-1037 Notice has been delivered by other means to:**

Jason B Small
KEHART PECKERT & BOOTH
132 S Water St Suite 200
PO Box 860

Decatur, IL 62525-0860

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1068668610 [Date=4/5/2007] [FileNumber=495956-0]
[57fda35f4686908b2323ef3b28cade8dc34161ca7ff7b90e0e755038e221492e3d617
649f4ecc5dab4ab25bc99e1574607dd689a7817fd9ed4f5d307c26563b1]]
**Document description:**Exhibit 1
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1068668610 [Date=4/5/2007] [FileNumber=495956-1]
[a246de4e421d7d2ab37d0eaa3f00b4b22f88ba00a1f6bc1b74432048808cd7a57d0a4
c701369cc67e798bbc25c9a89eba9c37eb181f3a15dd762cceb2e999634]]
**Document description:**Exhibit 2
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1068668610 [Date=4/5/2007] [FileNumber=495956-2]
[87e2f7b98686cae1594eb33fbc31b7efe528ee21d0f45d12027562234f34e087bfe87
6ff3110b0bbdb2a20434cc53f13d0970b11951dc736e84a0f46582a7e21]]
**Document description:**Exhibit 3
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1068668610 [Date=4/5/2007] [FileNumber=495956-3]
[4a001c916e30412cf58f1bac4cf246e3f28b6d3ff89d2955a9bc6ab1eb6cd6f61742d
a42fb5e9d2cfef841721e85e236df7ea0ff6d57ca0bd60671e31ae9d245]]

E

E-FILED
Thursday, 05 April, 2007  03:58:51 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CAROL DURBIN, Individually, and as Special Administrator of the Estate of DEWEY DURBIN, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 07-CV-1037 |
| PNEUMO ABEX CORPORATION, et al., | ) ) | |
| Defendants. | ) | |

### DEFENDANT ILLINOIS CENTRAL RAILROAD'S
### MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Defendant Illinois Central Railroad ("IC") submits this memorandum in opposition to Plaintiff's Motion to Remand this case to state court.

### Introduction and Factual Background

Plaintiff filed her complaint in this action in the Circuit Court for the Eleventh Judicial Circuit in McLean County, Illinois, on January 2, 2007.  The complaint alleges in part the following: (1) Plaintiff Carol Durbin is a citizen of Illinois; and (2) she is suing individually and as administrator of the estate of her late husband, who worked at the Union Asbestos & Rubber Company ("Unarco Industries") plant in Bloomington, Illinois, between 1966 and 1969, where, she alleges, he was exposed to asbestos and products containing asbestos transported to or from the plant by IC, which exposure caused him to develop mesothelioma[1] from which he died.[2]

---

[1] Due to an oversight IC's Memorandum in Support of Motion to Dismiss referred to asbestosis rather than mesothelioma.

[2] Plaintiff alleges that during the relevant period of employment IC owned the plant but leased it to UNARCO. However, plaintiff's claims are based on asbestos dust generated by the unloading that remained on the cars after they were unloaded by UNARCO's employees, not on IC's mere legal ownership of the building.

Plaintiff has sued several companies[3] that she alleges provided, produced or sent asbestos or asbestos products to or from the plant or were otherwise involved in or responsible for Mr. Durbin's exposure to asbestos at the plant, did not adequately warn him of the dangers of asbestos, and/or conspired to hide such information from him and other employees of the plant.

Defendant IC is an interstate common carrier by rail. Plaintiff alleges IC is liable because of its role in transporting asbestos to the plant and transporting products containing asbestos from the plant (Complaint Count 4 ¶¶ 3, 7-9; *id.* Counts 5, 6).[4] IC, an Illinois corporation, has its principal place of business in Illinois. For purposes of diversity of citizenship as a basis for this Court's jurisdiction under 28 U.S.C. § 1332, all Defendants but IC are citizens of and have their principal place of business in states other than Illinois.

IC is thus the sole non-diverse defendant, which, Defendants contend, Plaintiff named as a defendant in an effort to preclude removal. Plaintiff's state law claims against IC – a mere transporter – must be dismissed as they lack legal merit and have in any event been preempted by federal law. On February 20, 2007, Defendants removed the case from the state court to this Court,[5] where on February 27, 2007, IC filed a Motion to Dismiss, showing that the joinder of IC was "fraudulent" for purposes of the long-established "fraudulent joinder" doctrine permitting removal. *See generally Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 72-73 (7th Cir. 1992). When the inclusion of IC as a defendant is appropriately disregarded, the case is indisputably removable on the basis of diversity. *See* 28 U.S.C. §§ 1332, 1441(b).[6]

---

[3] Pneumo Abex Corporation, Pneumo Abex LLC, Owens-Illinois, Inc., Metropolitan Life Insurance Company, and Honeywell International, Inc.

[4] IC's Memorandum in support of its motion to dismiss inadvertently cited the wrong paragraphs.
[5] The Notice of Removal was originally filed by the Pneumo parties (Pneumo Abex Corp. and Pneumo Abex LLC), and all other Defendants, including IC, consented to the removal. On March 5, 2007, the Pneumo parties filed a Supplemental Notice of Removal, setting forth the citizenship of the Defendants and attaching their consents to removal, thereby curing such procedural defects as were noted in the Court's order of February 21, 2007.

[6] Plaintiff does not dispute that her claims satisfy the "amount in controversy" requirement under 28 U.S.C. § 1332.

Plaintiff did not timely file any memorandum in opposition to IC's duly served Motion to

Dismiss, to which a response was due by March 16.  On March 19, 2007, Plaintiff filed a Motion

to Remand, baldly asserting that her claims against IC are viable causes of action under Illinois

law because IC transported asbestos or asbestos products to and from the asbestos plant where

plaintiff's decedent worked.  Plaintiff is wrong and her Motion to Remand did not rebut the

grounds set forth in IC's Motion to Dismiss.[7]  Therefore, IC's Motion to Dismiss should be

granted, and Plaintiff's Motion to Remand should be denied.

## ARGUMENT

### I.    Plaintiff's Threshold Procedural Objection to the Notice of Removal Lacks Merit

Plaintiff's first point in support of her Motion to Remand is that Defendants' notice of

removal did not elaborate upon the "improper joinder" of IC (Motion to Remand at 2).

However, the federal removal statute only requires that the defendant or defendants file a

"notice" that need only contain "a short and plain statement of the grounds for removal, together

with a copy of all process, pleadings, and orders served upon such defendant or defendants in

such action." 28 U.S.C. § 1446.  This statute was amended in 1988 to eliminate a more

burdensome requirement that the defendant or defendants file a "petition" stating the facts that

entitled the defendant to remove the action; the amendment was "designed to make the

statement of the grounds for removal simpler," so that "detailed grounds for removal need not

be set forth in the notice."  14C Charles Alan Wright, Arthur R. Miller, and Edward R. Cooper,

Federal Practice and Procedure: Jurisdiction 3d § 3733.  Moreover, Plaintiff identifies no

prejudice from Defendants' alleged failure to file a sufficiently detailed notice and, especially in

---

[7] Although Plaintiff did not timely file an opposition to IC's Motion to Dismiss (nn. 8-9), Plaintiff's Motion to Remand contains some discussion which could be read as being directed to that motion.  Late in the day before responses to plaintiff's motion to remand were due, plaintiff sought leave to file a belated opposition to that motion. IC reserves the right to seek leave to reply if the Court grants plaintiff's motion.

light of IC's almost simultaneous Motion to Dismiss setting forth the grounds for removal in greater detail, none exists.

## II.    The Legal Standard for "Fraudulent Joinder" as to Removals Is Met Here

Removal based on diversity of citizenship requires that all the defendants be of diverse state citizenship from the plaintiff.  28 U.S.C. § 1332.  In evaluating diversity of citizenship, however, a court must disregard a defendant who has been "fraudulently joined."  *See Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999).  "'[F]raudulent' is a term of art which, at least in the context of joinder, does not necessarily imply bad faith on the part of the plaintiff." *Id.* at 879 n.3.  A defendant is fraudulently joined not only "where there has been outright fraud in plaintiff's pleading of jurisdictional facts," but also where there is not "any reasonable possibility" that the plaintiff will prevail on his [state law] claim against the non-diverse defendant.  *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993); *Poulos,* 959 F.2d at 73; *Lance v. Employers Fire Ins. Co.*, 66 F.Supp.2d 921, 924 (C.D. Ill. 1999).  That burden can be met with evidence of a "reasonable possibility" that federal jurisdiction exists.  *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997).

On the allegations of the Complaint here, as next discussed, there is no reasonable possibility that IC can be held liable to the Plaintiff under state law.[8]  Therefore IC is "fraudulently joined" and should be dismissed, and Plaintiff's Motion for Remand should be denied.

## III.    IC's Motion to Dismiss Should Be Granted

Throughout the relevant time period in the 1960s IC was, as it is now, a common carrier by rail.  As such, IC was required by federal law to transport cargo tendered by shipper-

---

[8] The Court may pierce the pleadings to consider uncontroverted evidence establishing that a diversity-defeating defendant should not be held liable to a plaintiff under applicable state law. *Faucett v. Ingersoll-Rand Min. &*

4

consignors for delivery to receiver-consignees. 49 U.S.C. § 1(4) (1964) (codified in 1978 to 49

U.S.C. § 11101) ("It shall be the duty of every common carrier subject to [the Interstate

Commerce Act] to provide and furnish transportation upon reasonable request therefor ….").[9]

This duty applies even to transportation of cargo that may be inherently dangerous. *Akron C. &*

*Y. R.R. v. I.C.C.*, 611 F.2d 1162 (6th Cir. 1979) (nuclear waste).

IC has moved to dismiss the Complaint as to IC on two basic grounds: (1) as a matter of

Illinois state law, a common carrier has no duty to warn third parties about possible injury from

the inherent nature of the product it has been required by law to transport, and is not liable to

third parties, such as employees of a consignor or consignee, for damages caused by their

exposure to such transported products; and (2) as a matter of federal law, state law that might

otherwise impose such a duty or liability is preempted.

As discussed below, Plaintiff's Motion to Remand does not address these issues, which

bear directly on the question of "fraudulent joinder" raised by IC's Motion to Dismiss and

underlying the removal, and Plaintiff may be deemed to have conceded IC's contentions. Given

the need to dismiss the "fraudulently joined" IC as a defendant, there is no basis for Plaintiff's

Motion to Remand, because all of the remaining Defendants are of diverse citizenship.

### A.      Plaintiff Has Not Stated a Claim Under State Law Against IC as a Common Carrier Transporter

Plaintiff's Complaint alleges that IC is liable to Plaintiff for negligence as the result of

IC's having breached a duty to Plaintiff's husband by (a) transporting asbestos and asbestos-

containing products to or from the asbestos plant where he worked, during which transportation

---

*Mach. Co.*, 960 F.2d 653, 654-55 (7th Cir. 1992).

[9] The current version of this provision is found at 49 U.S.C. § 11101(a) and provides: "A rail carrier providing transportation or service subject to the jurisidiction of the [Surface Transportation] Board under [49 U.S.C. §§ 10101-11908] shall provide the transportation or service on reasonable request."

asbestos fibers were released into the atmosphere; and (b) failing to warn Plaintiff's husband of

the resulting hazard from exposure to asbestos (Complaint Count 4, ¶¶ 3-4, 9). Plaintiff's

Complaint thus attempts to state one cause of action against IC: a tort claim she labels

negligence.[10] This is not a viable claim under Illinois law.

IC's role here as a common carrier was to transport asbestos to the plant of Plaintiff's

husband's asbestos company employer, and to transport products containing asbestos away from

the plant to third parties, all in the course of commerce. There is no allegation that IC (1)

purchased or sold the asbestos, (2) was paid for anything other than its common carrier

transportation services, (3) participated in the profits derived from moving the asbestos along in

the stream of commerce, or (4) played any role, let alone an integral role, in marketing the

asbestos products. Further, there is no allegation that IC had the ability to prevent the asbestos

from proceeding through the stream of commerce, or that IC was in the business of placing

asbestos or asbestos-containing products into the stream of commerce.[11] It simply provided a

common carrier transportation service, as required by federal law, to those who did so.

Illinois cases state that a plaintiff may not assert claims of the sort Plaintiff makes here

against a mere transporter of products. As the court held as to claims for liability as to dangerous

products in *Mechanical Rubber & Supply Co. v. Caterpillar Tractor Co.*, 80 Ill. App. 3d 262,

399 N.E. 2d 722, 723 (3rd Dist.1980), for example, they are "still limited to those parties in the

chain of manufacturing and distributing a product."

> There are many parties who conceivably have some relation with the manufacture
> and sale of the product, but their relationship is peripheral and not directly related
> to the distributive process. For example, a patent licensor, a consultant, an
> independent engineering firm,... *or, for that matter, a transportation company* or

---

[10] Counts 5 and 6 against IC repeat the same substantive allegations.

[11] Nor is there a legally suportable allegation that a common carrier like IC is liable for dust the shipper or consignee
generates in loading or unloading a rail car and leaves on the rail car when done.

an independent warehouse, might have some relation to a product and, although perhaps related to the general economic system, *they are outside the manufacturing distributing system contemplated by products liability theories.* [*Id.* at 723-24 (emphasis added).]

For this reason, in the recent decision in *Bergman v. U.S. Silica*, 2006 WL 2982136 (S.D. Ill. Oct. 17, 2006), cited in IC's memorandum in support of its Motion to Dismiss (at 11-12) but not addressed by Plaintiff, the District Court for the Southern District of Illinois granted the motion of a transporter (there, a trucking company) to dismiss a complaint alleging that the defendant trucker, an Illinois citizen, was liable to an employee of the consignee. The employee claimed injury from exposure to silica which the trucker had transported to the facility where the employee had worked. The district court also deemed the trucker, the only non-diverse defendant, fraudulently joined, and denied the plaintiffs' motion to remand. The case is on all fours.[12]

Therefore it is not surprising that Plaintiff has not cited any reported opinion in Illinois as authority for imposing negligence liability on a railroad in IC's position for transporting a product to be used or sold by a customer or other third party where that party's employee is injured by exposure to the product in the course of loading or unloading it.

**B.    Even Apart from Precedent Concerning Liability of Transporters, Plaintiff Has Failed to State a Claim Against IC for Negligence.**

In general, to prevail in an action for negligence, the plaintiff must establish that the defendant owed a duty of care, that the defendant breached that duty, and that the plaintiff

---

[12] In asserting that IC was not improperly joined, Plaintiff relies entirely on the assertion that, in other cases brought against IC over the years by other plaintiffs similarly alleging exposure to asbestos at the same plant, the state court denied motions to dismiss made on grounds not identified in the cited orders (Motion to Remand at 3). In support, Plaintiff has attached a variety of often cryptic state trial court orders without explanatory opinions or other documents clearly reflecting the grounds of the motions or the rulings. . Significantly, plaintiff identifies no case in which a judgment was entered against IC based on a verdict against IC. Plaintiff does not (and cannot) assert that these motions or the rulings addressed all the issues raised by IC's Motion to Dismiss in this case. In any event, those denials did not address IC's argument based on Illinois law concerning the limited liability of transporters as set forth in *Bergman*, which was not decided until after all but the last of the orders on which Plaintiff relies.

incurred injuries proximately caused by the breach. *Adams v. Northern Ill. Gas Co.*, 211 Ill. 2d

32, 809 N.E.2d 1248, 1257 (2004). Absent a statute, the existence of a duty is a question of law

for the court to decide. *Id.* There can be no recovery in tort for negligence unless the defendant

has breached a duty owed to the plaintiff. *Id.*; *Boyd v. Racine Currency Exch., Inc.*, 56 Ill. 2d 95,

306 N.E.2d 39, 40 (1973). Duty is a question of whether the defendant and the plaintiff stood in

such a relationship to one another that the law imposed upon the defendant an obligation to take

action for the benefit of the plaintiff. *Id.*; *Happel v. Wal-Mart Stores, Inc.*, 199 Ill. 2d 179, 766

N.E.2d 1118, 1123-24 (2002).

Here, however, IC was a rail common carrier hired and statutorily obliged to deliver a

product. IC, like any other transportation company, has not been saddled with the enormous

burden of anticipating the likelihood of injury concerning all the numerous and diverse products

it is required to deliver. If that were the case, transportation companies might be liable for every

purportedly defective or dangerous product delivered. That would clearly be unreasonable, and

it is not the law.

The rail carrier has no duty to load or unload rail cars. *Pennsylvania R.R. v. Kittaning

Iron & Steel Mfg. Co.*, 253 U.S. 319, 323 (1920) (per Brandeis, J.) ("The duty of loading and of

unloading carload shipments rests upon the shipper or consignee."). Hence any duty to advise

employees of the shipper or consignee of hazards associated with a product being shipped should

be on the more knowledgeable parties, the shipper or consignee, not the carrier.

Any imposition on a railroad of a duty to warn employees of a shipper/consignor or

receiver/consignee of hazards presented by the cargo it is required by law to carry would be

especially unwarranted here, where Plaintiff alleges that her husband's employer, and the other

asbestos-related Defendants, had a duty to warn employees of "the hazards presented by the

presence of asbestos dust" (Complaint Count 1 ¶ 18).

Plaintiff cites no authority for the alleged duty of a mere transporter to warn or inspect or otherwise have any knowledge that it should provide to employees of the consignees about the products that it is obliged by federal law to carry.[13]  Nor does Plaintiff suggest why IC – as well as other common carriers across this country – should be required to (1) inspect all of the goods that they carry to or from shippers or receivers in Illinois, (2) independently determine the hazards of those products, and then (3) develop and deliver an appropriate warning to the employees of the recipient of those goods.

Illinois courts have recognized that there is no valid claim for relief where a plaintiff has failed to establish a legally-recognized duty owed to them by a defendant.  *See Ferry v. Checker Taxi Co., Inc.*, 165 Ill. App. 3d 744, 520 N.E.2d 733, 739-40 (1st Dist. 1987) (no cause of action as to common carrier for negligence because proximate cause and damage elements were simply too speculative); *Parks v. Kownacki*, 193 Ill. 2d 164, 737 N.E.2d 287 (2000) (complaint failed to allege a legally cognizable duty and therefore failed to state a claim upon which relief could be granted).  Similarly, the lack of a legally cognizable duty on IC in these circumstances warrants dismissal.

The limitations on transporter liability are further illustrated by a recent fraudulent joinder federal case, *Lundy v. Cliburn Truck Lines, Inc.*, 397 F.Supp.2d 823 (S.D. Miss. 2005).

---

[13] None of the cases cited by Plaintiff (Motion to Remand at 2-3) held a transportation company to have a duty to deliver a safe product or provide warnings for the products it delivered.  They are all distinguishable.  In three, the defendants were insurance companies and other parties who, it was alleged, had been fraudulently joined: in *Lance v. Employers Fire Ins. Co.*, 66 F.Supp.2d 921 (C.D. Ill. 1999), the alleged agent of the defendant insurance company; in *Credit Ins. Consultants, Inc., v. Gerling Global Reinsurance Corp.*, 2001 WL 1143177 (N.D. Ill. Sept. 27, 2001), a company administering extended warranty programs that had been insured by the insurance company; in *Batoff v. State Farm Ins. Co.*, 977 F.2d 848 (3d Cir. 1992), a psychologist who had been consulted by the insurance company.  In *Poulos v. Naas Foods, Inc.*, 959 F.2d 69 (7th Cir. 1992), the case was brought under the Wisconsin Fair Dealership Law against a franchisor and its parent (the latter of which, it was alleged, had been fraudulently joined).  *Regal Ware, Inc. v. Advanced Marketing Int'l, Inc.*, 2006 WL 752899 (E.D. Wis. Mar. 21, 2006), arose out of a marketing agreement; the plaintiff brought the action against its distributor under that agreement and against several parties associated with the distributor by family or business relationships.

There the plaintiff sued in state court alleging that she sustained injuries while working at various convenience stores as a result of exposure to benzene that the defendant transporter had delivered to her place of employment. She asserted claims for products liability, negligence, and breach of warranties. *Id.* at 826. The trucker had no control over the employees or the premises to which the gasoline was delivered, did not buy, sell, wholesale, retail or manufacture gasoline products, and did not design, test, package, market, advertise, label, alter or modify the gasoline in issue. *Id.* at 828. After removal, the district court held that plaintiffs failed to assert viable claims against the trucker, because it was merely a transporter of a dangerous product from the seller to the buyer, had nothing else to do with the product, and was "fraudulently joined."

As the Eleventh Circuit held in rejecting a similar plaintiff's theory of liability under Georgia law, a carrier "will not, and should not, be required to examine information about the content of the shipment entrusted to him and warn the ultimate consignee of that shipment of any potential dangers arising from the nature of the cargo." *Crockett v. Uniroyal, Inc.*, 772 F.2d 1524, 1531 (11th Cir. 1985). *See also Rockwell v. United Parcel Serv., Inc.*, 1999 WL 33100089 (D.Vt. 1999) (holding UPS had no duty under Vermont law to inspect packages and warn of hazardous or life-threatening contents). As Plaintiff has not alleged facts sufficient to impose a duty on IC, Plaintiff has failed to state a claim, and the Complaint against IC should be dismissed. *Cunis v. Brennan*, 56 Ill. 2d 372, 308 N.E.2d 617, 618 (1974).

In summary, Plaintiff has asserted no valid or viable claims against IC under Illinois law. Therefore, this Court should dismiss the Complaint as to IC, and deny the Motion to Remand because diversity of citizenship exists between Plaintiff and the remaining Defendants. If the Court agrees, it need go no further. If, however, the Court believes Illinois law may support

Plaintiff's claim against IC, the Motion to Dismiss should still be granted, and the Motion to

Remand should be denied because, as shown next, federal law preempts any such claims.

### C.   Plaintiff's State Law Tort Claims Against IC Are Preempted by Federal Law.

Even assuming Plaintiff could assert any of her tort claims under Illinois state law, those

claims are preempted by federal law, including the Commerce Clause of the United States

Constitution, as discussed in IC's Motion to Dismiss (at 2-11).  For this additional reason,

Plaintiff's claims against IC have no basis, and IC is fraudulently joined.  Plaintiff has not

addressed the preemption issue and the point must be deemed conceded.

Any "duty" imposed to inspect and warn would have required wholesale changes to the

way railroad companies served their customers.  It would have imposed an obligation on all rail

carriers to inspect the products they carry and warn the people to whom they delivered the

products – people who presumably ordered the cargo in the first place – of aspects of the product

that could be hazardous.  The imposition of such changes would be a job for Congress and the

federal agencies responsible for the operations and safety of railroads, not the state courts.

Indeed, subsequent to the 1960s period at issue here, Congress did comprehensively

address and regulate the transportation of hazardous materials, including asbestos.  *See*

Hazardous Materials Transportation Act, Pub. L. No. 93-633, §§ 101-115, 88 Stat. 2156

("HMTA") (codified as amended at 49 U.S.C. §§ 5101-5127).  Yet even in that regulatory

undertaking Congress did not impose on railroads a broad duty to advise employees of shippers

or receivers of the dangers of exposure to asbestos or asbestos products carried by the railroad.

The Hazardous Materials Regulations, implementing HMTA, required rail cars containing

hazardous materials to be placarded in order to identify their contents, but imposed the

placarding duty on the shipper.  *See* 49 C.F.R. §§ 172.508(b), 174.59.  The railroad's duty was

limited to replacing placards lost in transit. *Id.* §§ 172.508(a), 174.59.

Even if they were recognized under Illinois law, the Plaintiff's claims against IC would thus be preempted. For this additional reason, there is no possible valid claim against IC under Illinois law. IC must be deemed fraudulently joined for the purposes of removal law. Accordingly, Plaintiff's motion for remand should be denied.

Respectfully submitted,

/s/Mark R. Kurz
Thomas R. Peters, #06195055
Mark R. Kurz, #06211071
Gundlach, Lee, Eggmann, Boyle & Roessler
5000 West Main Street, PO Box 23560
Belleville, IL  62223-0560
Phone: (618) 277-9000
Fax: (618) 277-4594
E-mail: m.kurz@gundlachlee.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| CAROL DURBIN, Individually, and as | ) | |
| Special Administrator of the Estate of | ) | |
| DEWEY DURBIN, Deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-CV-1037 |
| | ) | |
| PNEUMO ABEX CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

**PLAINTIFF'S ATTORNEY**
James Wylder
Walker & Wylder, Ltd.
207 W. Jefferson Street
Bloomington, IL 61701

**ATTORNEYS FOR METROPOLITAN
LIFE INSURANCE**
James E. Peckert
Jason B. Small
Kehart, Peckert & Booth
132 So. Water Street, Suite 200
P. O. Box 860
Decatur, IL 62525-0860

**ATTORNEYS FOR PNEUMO ABEX
CORP. & PNEUMO ABEX LLC**
Robert W. Scott
Timothy W. Swain
Swain Hartshorn & Scott
411 Hamilton Blvd., Suite 1812
Peoria, IL 61602

**ATTORNEYS FOR OWENS-ILLINOIS**
Joshua D. Lee
Schiff Hardin, LLP
6600 Sears Tower
Chicago, IL 60606

I hereby certify that on April 5, 2007, I mailed by United States Postal Service, the above-listed document(s) to the following non-registered participants:

**ATTORNEYS FOR HONEYWELL**
**INTERNATIONAL INC.**
Nicole C. Behnen
Luke J. Mangan
Polsinelli Shalton Flanigan Suelthaus
100 South Fourth Street, Suite1100
St. Louis, MO 63102
-and-
Dennis J. Dobbels
Andrew J. Cross
Polsinelli Shalton Flanigan Suelthaus
101 West Vandalia Street, Suite 325
Edwardsville, IL  62025

Jason B. Small
Kehart, Peckert & Booth
132 So. Water Street, Suite 200
P. O. Box 860
Decatur, IL  62525-0860

Respectfully submitted,
/s/Mark R. Kurz
Thomas R. Peters, #06195055
Mark R. Kurz, #06211071

**Shannon McMahill**

| | |
|---|---|
| **From:** | ECF_Returns@ilcd.uscourts.gov |
| **Sent:** | Thursday, April 05, 2007 3:57 PM |
| **To:** | ECF_Notices@ilcd.uscourts.gov |
| **Subject:** | Activity in Case 1:07-cv-01038-MMM-JAG Nussbaum et al v. Pneumo Abex Corporation et al Memorandum in Opposition to Motion/Petition |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

### U.S. District Court

### United States District Court for the Central District of Illinois

## Notice of Electronic Filing

The following transaction was entered by Kurz, Mark on 4/5/2007 at 3:57 PM CDT and filed on 4/5/2007

**Case Name:**      Nussbaum et al v. Pneumo Abex Corporation et al
**Case Number:**     1:07-cv-1038
**Filer:**        Illinois Central Railroad Company
**Document Number:** 15

**Docket Text:**
MEMORANDUM in Opposition re [11] MOTION to Remand filed by Defendant Illinois Central Railroad Company. (Attachments: # (1) Declaration of Charles Garrett)(Kurz, Mark)


**1:07-cv-1038 Notice has been electronically mailed to:**

Mark R Kurz     m.kurz@gundlachlee.com, info@gundlachlee.com, n.uhl@gundlachlee.com, s.wagner@gundlachlee.com

Joshua Douglas Lee     jdlee@schiffhardin.com, edocket@schiffhardin.com, tsallay@schiffhardin.com

James E Peckert     jep@kehart.com, lara@kehart.com

Thomas R Peters     t.peters@gundlachlee.com, info@gundlachlee.com, l.schafer@gundlachlee.com

Robert Westwood Scott     bobscott@peorialaw.com

Timothy Whitzel Swain , II     timswain@peorialaw.com, shannonmcmahill@peorialaw.com

James R Wylder     byounger@walkerwylder.com

**1:07-cv-1038 Notice has been delivered by other means to:**

Nicole C Behnen
POLSINELLI SHALTON & WELTE
Suite 1110
100 S Fourth St
St Louis, MO 63102-1825

Jason B Small
KEHART PECKERT & BOOTH
132 S Water St Suite 200
PO Box 860
Decatur, IL 62525-0860

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1068668610 [Date=4/5/2007] [FileNumber=496003-0]
[7d38cb3bde5edcb6cbb225d813bb6cbcee5687cb6c634a9796f29ead5ba688ac7eaab
5c8c554319f28b96c9d6c72df7346d2fa99cb7c69a8b3cd33042facd131]]
**Document description:** Declaration of Charles Garrett
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1068668610 [Date=4/5/2007] [FileNumber=496003-1]
[6c94162a1c44d41c97103e3f3304dd575d2dfea36b57b74c3090cc124ede2234a900e
966f627c22149d6ddc4c85689dff0b145916ae76eafdd2f5ae2bfc306c7]]

F

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ALAN NUSSBAUM and ROXY NUSSBAUM | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 07-CV-1038 |
| PNEUMO ABEX CORPORATION, et al., | ) ) ) | |
| Defendants. | ) | |

### DEFENDANT ILLINOIS CENTRAL RAILROAD'S
### MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Defendant Illinois Central Railroad ("IC") submits this memorandum in opposition to Plaintiffs' Motion to Remand this case to state court.

### Introduction and Factual Background

Plaintiffs filed their complaint in this action in the Circuit Court for the Eleventh Judicial Circuit in McLean County, Illinois, on December 29, 2006.  The complaint alleges in part the following: (1) Plaintiffs Alan Nussbaum and his wife Roxy Nussbaum are citizens of Illinois; and (2) Mr. Nussbaum worked at the Union Asbestos & Rubber Company ("Unarco Industries") plant in Bloomington, Illinois, between 1955 and 1958, where, they allege, he was exposed to asbestos and products containing asbestos transported to or from the plant by IC, which exposure caused him to develop asbestosis.[1]

Plaintiffs have sued several companies[2] that they allege provided, produced or sent asbestos or asbestos products to or from the plant or were otherwise involved in or responsible

---

[1]  Plaintiffs allege that during the relevant period of employment IC owned the plant but leased it to UNARCO. However, plaintiffs' claims are based on asbestos dust generated by the unloading that remained on the cars after they were unloaded by UNARCO's employees, not on IC's mere legal ownership of the building.

[2]  Pneumo Abex Corporation, Pneumo Abex LLC, Owens-Illinois, Inc., Metropolitan Life Insurance Company, and

1

for Mr. Nussbaum's exposure to asbestos at the plant, did not adequately warn him of the dangers of asbestos, and/or conspired to hide such information from him and other employees of the plant.

Defendant IC is an interstate common carrier by rail. Plaintiffs allege IC is liable because of its role in transporting asbestos to the plant and transporting products containing asbestos from the plant (Complaint Count 3 ¶¶ 3, 7-9; *id.* Count 4). IC, an Illinois corporation, has its principal place of business in Illinois. For purposes of diversity of citizenship as a basis for this Court's jurisdiction under 28 U.S.C. § 1332, all Defendants but IC are citizens of and have their principal place of business in states other than Illinois.

IC is thus the sole non-diverse defendant, which, Defendants contend, Plaintiffs named as a defendant in an effort to preclude removal. Plaintiffs' state law claims against IC – a mere transporter – must be dismissed as they lack legal merit and have in any event been preempted by federal law. On February 20, 2007, Defendants removed the case from the state court to this Court,[3] where on February 27, 2007, IC filed a Motion to Dismiss, showing that the joinder of IC was "fraudulent" for purposes of the long-established "fraudulent joinder" doctrine permitting removal. *See generally Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 72-73 (7th Cir. 1992). When the inclusion of IC as a defendant is appropriately disregarded, the case is indisputably removable on the basis of diversity. *See* 28 U.S.C. §§ 1332, 1441(b).[4]

Plaintiffs did not timely file any memorandum in opposition to IC's duly served Motion to Dismiss, to which a response was due by March 16. On March 19, 2007, Plaintiffs filed a

---

Honeywell International, Inc.

[3] The Notice of Removal was originally filed by the Pneumo parties (Pneumo Abex Corp. and Pneumo Abex LLC), and all other Defendants, including IC, consented to the removal. On March 5, 2007, the Pneumo parties filed a Supplemental Notice of Removal, setting forth the citizenship of the Defendants and attaching their consents to removal.

[4] Plaintiffs do not dispute that their claims satisfy the "amount in controversy" requirement under 28 U.S.C. § 1332.

Motion to Remand, baldly asserting that their claims against IC are viable causes of action under Illinois law because IC transported asbestos or asbestos products to and from the asbestos plant where Mr. Nussbaum worked.  Plaintiffs are wrong and their Motion to Remand did not rebut the grounds set forth in IC's Motion to Dismiss.[5]  Therefore, IC's Motion to Dismiss should be granted, and Plaintiffs' Motion to Remand should be denied.

## ARGUMENT

**I.    Plaintiffs' Threshold Procedural Objection to the Notice of Removal Lacks Merit**

Plaintiffs' first point in support of their Motion to Remand is that Defendants' notice of removal did not elaborate upon the "improper joinder" of IC (Motion to Remand at 2).  However, the federal removal statute only requires that the defendant or defendants file a "notice" that need only contain "a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." 28 U.S.C. § 1446.  This statute was amended in 1988 to eliminate a more burdensome requirement that the defendant or defendants file a "petition" stating the facts that entitled the defendant to remove the action; the amendment was "designed to make the statement of the grounds for removal simpler," so that "detailed grounds for removal need not be set forth in the notice."  14C Charles Alan Wright, Arthur R. Miller, and Edward R. Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3733.  Moreover, Plaintiffs identify no prejudice from Defendants' alleged failure to file a sufficiently detailed notice and, especially in light of IC's almost simultaneous Motion to Dismiss setting forth the grounds for removal in greater detail, none exists.

---

[5] Although Plaintiffs did not timely file an opposition to IC's Motion to Dismiss, their Motion to Remand contains some discussion which could be read as being directed to that motion, as noted below (nn. 8-9).  Late in the day before responses to plaintiffs' motion to remand were due, plaintiffs sought leave to file a belated opposition to that motion.  IC reserves the right to seek leave to reply if the Court grants plaintiffs' motion.

## II.     The Legal Standard for "Fraudulent Joinder" as to Removals Is Met Here

Removal based on diversity of citizenship requires that all the defendants be of diverse

state citizenship from the plaintiff. 28 U.S.C. § 1332. In evaluating diversity of citizenship,

however, a court must disregard a defendant who has been "fraudulently joined." *See Schwartz*

*v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999). "'[F]raudulent' is a term of

art which, at least in the context of joinder, does not necessarily imply bad faith on the part of the

plaintiff." *Id.* at 879 n.3. A defendant is fraudulently joined not only "where there has been

outright fraud in plaintiff's pleading of jurisdictional facts," but also where there is not "any

reasonable possibility" that the plaintiff will prevail on his [state law] claim against the non-

diverse defendant. *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993); *Poulos*, 959

F.2d at 73; *Lance v. Employers Fire Ins. Co.*, 66 F.Supp.2d 921, 924 (C.D. Ill. 1999). That

burden can be met with evidence of a "reasonable possibility" that federal jurisdiction exists.

*Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997).

On the allegations of the Complaint here, as next discussed, there is no reasonable

possibility that IC can be held liable to the Plaintiffs under state law.[6] Therefore IC is

"fraudulently joined" and should be dismissed, and Plaintiffs' Motion for Remand should be

denied.

## III.    IC's Motion to Dismiss Should Be Granted

Throughout the relevant time period in the 1950s IC was, as it is now, a common carrier

by rail. As such, IC was required by federal law to transport cargo tendered by shipper-

consignors for delivery to receiver-consignees. 49 U.S.C. § 1(4) (1952) (codified in 1978 to 49

---

[6] The Court may pierce the pleadings to consider uncontroverted evidence establishing that a diversity-defeating defendant should not be held liable to a plaintiff under applicable state law. *Faucett v. Ingersoll-Rand Min. & Mach. Co.*, 960 F.2d 653, 654-55 (7th Cir. 1992).

U.S.C. § 11101) ("It shall be the duty of every common carrier subject to [the Interstate Commerce Act] to provide and furnish transportation upon reasonable request therefor ….").[7] This duty applies even to transportation of cargo that may be inherently dangerous. *Akron C. & Y. R.R. v. I.C.C.*, 611 F.2d 1162 (6th Cir. 1979) (nuclear waste).

IC has moved to dismiss the Complaint as to IC on two basic grounds: (1) as a matter of Illinois state law, a common carrier has no duty to warn third parties about possible injury from the inherent nature of the product it has been required by law to transport, and is not liable to third parties, such as employees of a consignor or consignee, for damages caused by their exposure to such transported products; and (2) as a matter of federal law, state law that might otherwise impose such a duty or liability is preempted.

As discussed below, Plaintiffs' Motion to Remand does not address these issues, which bear directly on the question of "fraudulent joinder" raised by IC's Motion to Dismiss and underlying the removal, and Plaintiffs may be deemed to have conceded IC's contentions. Given the need to dismiss the "fraudulently joined" IC as a defendant, there is no basis for Plaintiffs' Motion to Remand, because all of the remaining Defendants are of diverse citizenship.

### A.    Plaintiffs Have Not Stated a Claim Under State Law Against IC as a Common Carrier Transporter

Plaintiffs' Complaint alleges that IC is liable to Plaintiffs for negligence as the result of IC's having breached a duty to Mr. Nussbaum by (a) transporting asbestos and asbestos-containing products to or from the asbestos plant where he worked, during which transportation asbestos fibers were released into the atmosphere; and (b) failing to warn him of the resulting hazard from exposure to asbestos (Complaint Count 3, ¶¶ 3-4, 9). Plaintiffs' Complaint thus

---

[7] The current version of this provision is found at 49 U.S.C. § 11101(a) and provides: "A rail carrier providing transportation or service subject to the jurisdiction of the [Surface Transportation] Board under [49 U.S.C. §§ 10101-11908] shall provide the transportation or service on reasonable request."

attempts to state one cause of action against IC: a tort claim they label negligence.[8] This is not a viable claim under Illinois law.

IC's role here as a common carrier was to transport asbestos to the plant of Mr. Nussbaum's asbestos company employer, and to transport products containing asbestos away from the plant to third parties, all in the course of commerce. There is no allegation that IC (1) purchased or sold the asbestos, (2) was paid for anything other than its common carrier transportation services, (3) participated in the profits derived from moving the asbestos along in the stream of commerce, or (4) played any role, let alone an integral role, in marketing the asbestos products. Further, there is no allegation that IC had the ability to prevent the asbestos from proceeding through the stream of commerce, or that IC was in the business of placing asbestos or asbestos-containing products into the stream of commerce.[9] It simply provided a common carrier transportation service, as required by federal law, to those who did so.

Illinois cases state that a plaintiff may not assert claims of the sort Plaintiffs make here against a mere transporter of products. As the court held as to claims for liability as to dangerous products in *Mechanical Rubber & Supply Co. v. Caterpillar Tractor Co.*, 80 Ill. App. 3d 262, 399 N.E. 2d 722, 723 (3rd Dist. 1980), for example, they are "still limited to those parties in the chain of manufacturing and distributing a product."

> There are many parties who conceivably have some relation with the manufacture and sale of the product, but their relationship is peripheral and not directly related to the distributive process. For example, a patent licensor, a consultant, an independent engineering firm,… *or, for that matter, a transportation company* or an independent warehouse, might have some relation to a product and, although perhaps related to the general economic system, *they are outside the manufacturing distributing system contemplated by products liability theories.* [*Id.* at 723-24 (emphasis added).]

---

[8] Count 4 against IC repeats the same substantive allegations.

[9] Nor is there a legally suportable allegation that a common carrier like IC is liable for dust the shipper or consignee generates in loading or unloading a rail car and leaves on the rail car when done.

For this reason, in the recent decision in *Bergman v. U.S. Silica*, 2006 WL 2982136 (S.D. Ill. Oct. 17, 2006), cited in IC's memorandum in support of its Motion to Dismiss (at 11-12) but not addressed by Plaintiffs, the District Court for the Southern District of Illinois granted the motion of a transporter (there, a trucking company) to dismiss a complaint alleging that the defendant trucker, an Illinois citizen, was liable to an employee of the consignee. The employee claimed injury from exposure to silica which the trucker had transported to the facility where the employee had worked. The district court also deemed the trucker, the only non-diverse defendant, fraudulently joined, and denied the plaintiffs' motion to remand. The case is on all fours.[10]

Therefore it is not surprising that Plaintiffs have not cited any reported opinion in Illinois as authority for imposing negligence liability on a railroad in IC's position for transporting a product to be used or sold by a customer or other third party where that party's employee is injured by exposure to the product in the course of loading or unloading it.

**B.      Even Apart from Precedent Concerning Liability of Transporters, Plaintiffs Have Failed to State a Claim Against IC for Negligence.**

In general, to prevail in an action for negligence, the plaintiff must establish that the defendant owed a duty of care, that the defendant breached that duty, and that the plaintiff incurred injuries proximately caused by the breach. *Adams v. Northern Ill. Gas Co.*, 211 Ill. 2d 32, 809 N.E.2d 1248, 1257 (2004). Absent a statute, the existence of a duty is a question of law for the court to decide. *Id.* There can be no recovery in tort for negligence unless the defendant

---

[10] In asserting that IC was not improperly joined, Plaintiffs rely entirely on the assertion that, in other cases brought against IC over the years by other plaintiffs similarly alleging exposure to asbestos at the same plant, the state court denied motions to dismiss made on grounds not identified in the cited orders (Motion to Remand at 3). In support, Plaintiffs have attached a variety of often cryptic state trial court orders without explanatory opinions or other documents clearly reflecting the grounds of the motions or the rulings. Significantly, plaintiffs identify no case in which a judgment was entered against IC based on a verdict against IC. Plaintiffs do not (and cannot) assert that these motions or the rulings addressed all the issues raised by IC's Motion to Dismiss in this case. In any event, those denials did not address IC's argument based on Illinois law concerning the limited liability of transporters as

has breached a duty owed to the plaintiff. *Id.*; *Boyd v. Racine Currency Exch., Inc.*, 56 Ill. 2d 95, 306 N.E.2d 39, 40 (1973). Duty is a question of whether the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon the defendant an obligation to take action for the benefit of the plaintiff. *Id.*; *Happel v. Wal-Mart Stores, Inc.*, 199 Ill. 2d 179, 766 N.E.2d 1118, 1123-24 (2002).

Here, however, IC was a rail common carrier hired and statutorily obliged to deliver a product. IC, like any other transportation company, has not been saddled with the enormous burden of anticipating the likelihood of injury concerning all the numerous and diverse products it is required to deliver. If that were the case, transportation companies might be liable for every purportedly defective or dangerous product delivered. That would clearly be unreasonable, and it is not the law.

The rail carrier has no duty to load or unload rail cars. *Pennsylvania R.R. v. Kittaning Iron & Steel Mfg. Co.*, 253 U.S. 319, 323 (1920) (per Brandeis, J.) ("The duty of loading and of unloading carload shipments rests upon the shipper or consignee."). Hence any duty to advise employees of the shipper or consignee of hazards associated with a product being shipped should be on the more knowledgeable parties, the shipper or consignee, not the carrier.

Any imposition on a railroad of a duty to warn employees of a shipper/consignor or receiver/consignee of hazards presented by the cargo it is required by law to carry would be especially unwarranted here, where Plaintiffs allege that Mr. Nussbaum's employer, and the other asbestos-related Defendants, had a duty to warn employees of "the hazards presented by the presence of asbestos dust" (Complaint Count 1 ¶ 16).

Plaintiffs cite no authority for the alleged duty of a mere transporter to warn or inspect or

---

set forth in *Bergman*, which was not decided until after all but the last of the orders on which Plaintiffs rely.

otherwise have any knowledge that it should provide to employees of the consignees about the

products that it is obliged by federal law to carry.[11]  Nor do Plaintiffs suggest why IC – as well as

other common carriers across this country – should be required to (1) inspect all of the goods that

they carry to or from shippers or receivers in Illinois, (2) independently determine the hazards of

those products, and then (3) develop and deliver an appropriate warning to the employees of the

recipient of those goods.

Illinois courts have recognized that there is no valid claim for relief where a plaintiff has

failed to establish a legally-recognized duty owed to them by a defendant.  *See Ferry v. Checker*

*Taxi Co., Inc.*, 165 Ill. App. 3d 744, 520 N.E.2d 733, 739-40 (1987) (no cause of action as to

common carrier for negligence because proximate cause and damage elements were simply too

speculative); *Parks v. Kownacki*, 193 Ill. 2d 164, 737 N.E.2d 287 (2000) (complaint failed to

allege a legally cognizable duty and therefore failed to state a claim upon which relief could be

granted).  Similarly, the lack of a legally cognizable duty on IC in these circumstances warrants

dismissal.

The limitations on transporter liability are further illustrated by a recent fraudulent

joinder federal case, *Lundy v. Cliburn Truck Lines, Inc.*, 397 F.Supp.2d 823 (S.D. Miss. 2005).

There the plaintiff sued in state court alleging that she sustained injuries while working at

various convenience stores as a result of exposure to benzene that the defendant transporter had

---

[11] None of the cases cited by Plaintiffs (Motion to Remand at 2-3) held a transportation company to have a duty to deliver a safe product or provide warnings for the products it delivered.  They are all distinguishable.  In three, the defendants were insurance companies and other parties who, it was alleged, had been fraudulently joined: in *Lance v. Employers Fire Ins. Co.*, 66 F.Supp.2d 921 (C.D. Ill. 1999), the alleged agent of the defendant insurance company; in *Credit Ins. Consultants, Inc., v. Gerling Global Reinsurance Corp.*, 2001 WL 1143177 (N.D. Ill. Sept. 27, 2001), a company administering extended warranty programs that had been insured by the insurance company; in *Batoff v. State Farm Ins. Co.*, 977 F.2d 848 (3d Cir. 1992), a psychologist who had been consulted by the insurance company.  In *Poulos v. Naas Foods, Inc.*, 959 F.2d 69 (7th Cir. 1992), the case was brought under the Wisconsin Fair Dealership Law against a franchisor and its parent (the latter of which, it was alleged, had been fraudulently joined).  *Regal Ware, Inc. v. Advanced Marketing Int'l, Inc.*, 2006 WL 752899 (E.D. Wis. Mar. 21, 2006), arose out of a marketing agreement; the plaintiff brought the action against its distributor under that agreement and against several parties associated with the distributor by family or business relationships.

delivered to her place of employment. She asserted claims for products liability, negligence, and breach of warranties. *Id.* at 826. The trucker had no control over the employees or the premises to which the gasoline was delivered, did not buy, sell, wholesale, retail or manufacture gasoline products, and did not design, test, package, market, advertise, label, alter or modify the gasoline in issue. *Id.* at 828. After removal, the district court held that plaintiffs failed to assert viable claims against the trucker, because it was merely a transporter of a dangerous product from the seller to the buyer, had nothing else to do with the product, and was "fraudulently joined."

As the Eleventh Circuit held in rejecting a similar plaintiff's theory of liability under Georgia law, a carrier "will not, and should not, be required to examine information about the content of the shipment entrusted to him and warn the ultimate consignee of that shipment of any potential dangers arising from the nature of the cargo." *Crockett v. Uniroyal, Inc.*, 772 F.2d 1524, 1531 (11th Cir. 1985). *See also Rockwell v. United Parcel Serv., Inc.*, 1999 WL 33100089 (D.Vt. 1999) (holding UPS had no duty under Vermont law to inspect packages and warn of hazardous or life-threatening contents). As Plaintiffs have not alleged facts sufficient to impose a duty on IC, Plaintiffs have failed to state a claim, and the Complaint against IC should be dismissed. *Cunis v. Brennan*, 56 Ill. 2d 372, 308 N.E.2d 617, 618 (1974).

In summary, Plaintiffs have asserted no valid or viable claims against IC under Illinois law. Therefore, this Court should dismiss the Complaint as to IC, and deny the Motion to Remand because diversity of citizenship exists between Plaintiffs and the remaining Defendants. If the Court agrees, it need go no further. If, however, the Court believes Illinois law may support Plaintiffs' claim against IC, the Motion to Dismiss should still be granted, and the Motion to Remand should be denied because, as shown next, federal law preempts any such

claims.

### C.   Plaintiffs' State Law Tort Claims Against IC Are Preempted by Federal Law.

Even assuming Plaintiffs could assert any of their tort claims under Illinois state law, those claims are preempted by federal law, including the Commerce Clause of the United States Constitution, as discussed in IC's Motion to Dismiss (at 2-11). For this additional reason, Plaintiffs' claims against IC have no basis, and IC is fraudulently joined. Plaintiffs have not addressed the preemption issue and the point must be deemed conceded.

Any "duty" imposed to inspect and warn would have required wholesale changes to the way railroad companies served their customers. It would have imposed an obligation on all rail carriers to inspect the products they carry and warn the people to whom they delivered the products – people who presumably ordered the cargo in the first place – of aspects of the product that could be hazardous. The imposition of such changes would be a job for Congress and the federal agencies responsible for the operations and safety of railroads, not the state courts.

Indeed, subsequent to the 1950s period at issue here, Congress did comprehensively address and regulate the transportation of hazardous materials, including asbestos. *See* Hazardous Materials Transportation Act, Pub. L. No. 93-633, §§ 101-115, 88 Stat. 2156 ("HMTA") (codified as amended at 49 U.S.C. §§ 5101-5127). Yet even in that regulatory undertaking Congress did not impose on railroads a broad duty to advise employees of shippers or receivers of the dangers of exposure to asbestos or asbestos products carried by the railroad. The Hazardous Materials Regulations, implementing HMTA, required rail cars containing hazardous materials to be placarded in order to identify their contents, but imposed the placarding duty on the shipper. *See* 49 C.F.R. §§ 172.508(b), 174.59. The railroad's duty was limited to replacing placards lost in transit. *Id.* §§ 172.508(a), 174.59.

Even if they were recognized under Illinois law, the Plaintiffs' claims against IC would thus be preempted.  For this additional reason, there is no possible valid claim against IC under Illinois law.  IC must be deemed fraudulently joined for the purposes of removal law. Accordingly, Plaintiffs' motion for remand should be denied.

Respectfully submitted,

/s/Mark R. Kurz
Thomas R. Peters, #06195055
Mark R. Kurz, #06211071
Gundlach, Lee, Eggmann, Boyle & Roessler
5000 West Main Street, PO Box 23560
Belleville, IL  62223-0560
Phone: (618) 277-9000
Fax: (618) 277-4594
E-mail: m.kurz@gundlachlee.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| ALAN NUSSBAUM and ROXY NUSSBAUM | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 07-CV-1038 |
| PNEUMO ABEX CORPORATION, et al., | ) ) ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

**PLAINTIFF'S ATTORNEY**
James Wylder
Walker & Wylder, Ltd.
207 W. Jefferson Street
Bloomington, IL  61701

**ATTORNEYS FOR METROPOLITAN
LIFE INSURANCE**
James E. Peckert
Jason B. Small
Kehart, Peckert & Booth
132 So. Water Street, Suite 200
P. O. Box 860
Decatur, IL  62525-0860

**ATTORNEYS FOR PNEUMO ABEX
CORP. & PNEUMO ABEX LLC**
Robert W. Scott
Timothy W. Swain
Swain Hartshorn & Scott
411 Hamilton Blvd., Suite 1812
Peoria, IL 61602

**ATTORNEYS FOR OWENS-ILLINOIS**
Joshua D. Lee
Schiff Hardin, LLP
6600 Sears Tower
Chicago, IL  60606

I hereby certify that on April 5, 2007, I mailed by United States Postal Service, the

above-listed document(s) to the following non-registered participants:


**ATTORNEYS FOR HONEYWELL**
**INTERNATIONAL INC.**
Nicole C. Behnen
Luke J. Mangan
Polsinelli Shalton Flanigan Suelthaus
100 South Fourth Street, Suite1100
St. Louis, MO 63102
-and-
Dennis J. Dobbels
Andrew J. Cross
Polsinelli Shalton Flanigan Suelthaus
101 West Vandalia Street, Suite 325
Edwardsville, IL  62025

Jason B. Small
Kehart, Peckert & Booth
132 So. Water Street, Suite 200
P. O. Box 860
Decatur, IL  62525-0860


Respectfully submitted,
/s/Mark R. Kurz
Thomas R. Peters, #06195055
Mark R. Kurz, #06211071

**Shannon McMahill**

| | |
|---|---|
| **From:** | ECF_Returns@ilcd.uscourts.gov |
| **Sent:** | Thursday, April 05, 2007 4:00 PM |
| **To:** | ECF_Notices@ilcd.uscourts.gov |
| **Subject:** | Activity in Case 1:07-cv-01037-JBM-JAG Durbin v. Peumo Abex Corporation et al Memorandum in Opposition to Motion/Petition |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.

### U.S. District Court

### United States District Court for the Central District of Illinois

## Notice of Electronic Filing

The following transaction was entered by Kurz, Mark on 4/5/2007 at 3:59 PM CDT and filed on 4/5/2007

| | |
|---|---|
| **Case Name:** | Durbin v. Peumo Abex Corporation et al |
| **Case Number:** | 1:07-cv-1037 |
| **Filer:** | Illinois Central Railroad Company |
| **Document Number:** | 15 |

**Docket Text:**
MEMORANDUM in Opposition re [12] MOTION to Remand filed by Defendant Illinois Central Railroad Company. (Attachments: # (1) Declaration of Charles Garrett)(Kurz, Mark)

**1:07-cv-1037 Notice has been electronically mailed to:**

Mark R Kurz    m.kurz@gundlachlee.com, info@gundlachlee.com, n.uhl@gundlachlee.com, s.wagner@gundlachlee.com

Joshua Douglas Lee    jdlee@schiffhardin.com, edocket@schiffhardin.com, tsallay@schiffhardin.com

James E Peckert    jep@kehart.com, lara@kehart.com

Thomas R Peters    t.peters@gundlachlee.com, info@gundlachlee.com, l.schafer@gundlachlee.com

Robert Westwood Scott    bobscott@peorialaw.com

Timothy Whitzel Swain , II    timswain@peorialaw.com, shannonmcmahill@peorialaw.com

James R Wylder    byounger@walkerwylder.com

**1:07-cv-1037 Notice has been delivered by other means to:**