JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**MDL 875**

JUL 17 2007

<u>BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION</u>

FILED
CLERK'S OFFICE

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LEIGH COLE, SR. | * | CIVIL ACTION NO. 2:07-cv-3049 |
| | * | |
| VS. | * | JUDGE: FALLON |
| | * | SECTION: L |
| | * | |
| NORTHROP GRUMMAN SHIP, | * | MAGISTRATE: SHUSHAN |
| SYSTEMS, INC., ET AL | * | DIVISION: 1 |
| | * | |

*************************************************************************

*Pertains to:*   MDL-875 – In re Asbestos Products Liability Litigation (No. IV)
CONDITIONAL TRANSFER ORDER 281 (CTO-281)
Schedule CTO-281 - Tag-Along Action

*************************************************************************

<u>**MOTION TO VACATE CONDITIONAL TRANSFER ORDER WITH
INCORPORATED MEMORANDUM, OR IN THE ALTERNATIVE,
OPPOSITION AND MOTION FOR CONTINUANCE OF TRANSFER UNTIL
TRANSFEROR JUDGE RULES ON MOTION TO REMAND**</u>

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff to file his

Motion to Vacate Conditional Transfer Order, or in the alternative, Motion for

Continuance of Transfer Until the Transferor Judge Rules of Plaintiff's Motion to

Remand, and requests that the MDL vacate the conditional transfer order or wait to

transfer the case until Judge Fallon of the U.S.D.C. for the Eastern District of Louisiana

issues a ruling on Plaintiff's Motion to Remand.  Plaintiff mover the MDL for the

following reasons.

This action was originally filed in Louisiana State Court and was improperly

removed by one defendant, Peter Territo, an Executive Officer at Avondale Shipyard.

**OFFICIAL FILE COPY**

IMAGED JUL 1 8 2007

PLEADING NO. 5114

Plaintiff is currently seeking to have the case remanded to the state court from which it was wrongfully removed. To this end, the hearing on Plaintiff's Motion to Remand was conducted on June 20, 2007. The District Court Judge, the Honorable Eldon Fallon, took the matter under advisement and Plaintiff anticipates a ruling on the Motion to Remand very soon. Once it is determined that there is no federal jurisdiction in this case, remand is mandatory. *Insigna v. LaBella*, 485 F.2d 249 (11th Cir. 1988); *Bobby Jones Garden Apts. v. Suleski*, 391 F.2d 172 (5th Cir. 1968).

In light of the above, Plaintiff submits that transferring the instant case at this time would be a significant waste of judicial resources as the parties have already filed multiple memoranda on the remand issue, participated in the hearing on the Motion to Remand, and are waiting on the District Court Judge to issue a ruling, which has been under advisement since June 20, 2007.

Superimposed on the afore-stated judicial efficiency point, is the veritable fact that the exact issue in the instant case, whether the federal officer removal statute (28 U.S.C. §1442(a)(1)) is applicable to an Avondale Shipyard executive officer, has been rejected in every case in which the statute has been invoked in the Eastern District for Louisiana. This is no hyperbole; in the ten reported cases undersigned counsel knows of wherein an Avondale execute officer has invoked the federal officer removal statute, each and every case in the Eastern District of Louisiana has rejected the argument and remanded the case back to state court.

For the MDL's convenience, and in an effort to provide the MDL with a level of comfort to justify vacating the transfer order or at least waiting until Judge Fallon rules

on Plaintiff's Motion to Remand, attached are the following pleadings filed in the

captioned matter:

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUL 17 2007

FILED
CLERK'S OFFICE

> A.  Plaintiff's Motion to Remand with Memo in Support (Exhibit 1);
>
> B.  Plaintiff's Reply Brief (Exhibit 2);
>
> C.  Plaintiff's Post-Hearing Memorandum (Exhibit 3); and
>
> D.  Plaintiff's Motion to Supplement the Record (Exhibit 4).

**WHEREFORE**, Plaintiff respectfully requests that this matter not be transferred

to the Asbestos Multidistrict Litigation before this Honorable Court can rule on Plaintiff's

Motion to Remand.

Respectfully submitted,

**LANDRY & SWARR, L.L.C.**

s/David R. Cannella
Mickey P. Landry (La. Bar No. 22817)
Frank J. Swarr (La. Bar No. 23322)
David R. Cannella (La. Bar 26231)
1010 Common Street, Suite 2050
New Orleans, Louisiana 70112
Telephone: (504) 299-1214
Facsimile: (504) 299-1215

COUNSEL FOR PLAINTIFF

### CERTIFICATE OF SERVICE

I hereby certify that I have on this the 16th day of July, 2007, served a copy of the

foregoing on counsel to all parties in this proceeding by facsimile and/or mailing same by

Unites State mail, properly addressed and postage prepaid.

s/David R. Cannella
DAVID R. CANNELLA

**PANEL SERVICE LIST (Excerpted from CTO-281)**
**MDL NO. 875**
**IN RE Asbestos Products Liability Litigation (No. VI)**

*Leigh Cole, Sr. v. Northop Grumman Ship Systems, Inc., et al.,* E.D. Louisiana, C.A. No. 2:07-3049

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Brian C. Bossier
Blue Williams, LLP
3421 N. Causeway Boulevard, 9th Fl.
Metairie, LA 70002

David R. Cannella
Landry & Swarr
1010 Common Street, Suite 2050
New Orleans, LA 70112

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001

Kaye N. Courington
Duncan Courington & Rydberg, LLC
400 Poydras Street, Suite 1200
New Orleans, LA 70130

David A. Damico
Burns, White & Hickton, LLC
Four Northshore Center
106 Isabella St.
Pittsburgh, PA 15212

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106-2574

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street, 33rd Floor
Philadelphia, PA 19103

Susan M. Hansen
Brownson & Ballou
225 South Sixth Street, Suite 4800
Minneapolis. MN 55402

Reginald S. Kramer
Oldham & Dowling
195 South Main Street, Suite 300
Akron, OH 44308-1314

David C. Landin
Hunton & Williams, LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gary Allen Lee
Lee, Futrell & Perles, LLP
201 St. Charles Avenue, Suite 4120
New Orleans, LA 70170-4120

Christopher K. Lightfoot
Hailey, McNamara, Hall, Larmann
& Papale
One Galleria Boulevard, Suite 1400
P.O. Box 8288
Metairie, LA 70011-8288

Gene Locks
Locks Law Firm, LLC
1500 Walnut Street
Philadelphia, PA 19102

Thomas G. Milazzo
Pajares & Schexnaydre, LLC
103 Northpark Boulevard, Suite 110
Covington, LA 70433-6103

Ronald L. Motley
Motley Rice, LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

Thomas M. Nosewicz
Jones, Walker, Waechter, et al.
Place St. Charles, 49th Floor
201 St. Charles Avenue
New Orleans, LA 70170

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

Samuel M. Rosamond, III
Crawford Lewis, PLLC
400 Poydras Street, Suite 2100
New Orleans, LA 70130

John D. Roven
Roven-Kaplan, L.L.P.
2190 North Loop West, Suite 410
Houston, TX 77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard, Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli
Centre Square West, 15th Floor
Philadelphia, PA 19102

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
645 Griswold St.
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226-4192

Andrew J. Trevelise
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

Gordon P. Wilson
Lugenbuhl, Wheaton, et al.
601 Poydras Street
Suite 2775
New Orleans, LA 70130

1

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| LEIGH COLE, SR. | * | CIVIL ACTION NO. 2:07-cv-3049 | |
| | * | | |
| VS. | * | JUDGE: | FALLON |
| | * | SECTION: | L |
| | * | | |
| NORTHROP GRUMMAN SHIP, | * | MAGISTRATE: | SHUSHAN |
| SYSTEMS, INC., ET AL | * | DIVISION: | 1 |

**************************************************************************

## MOTION TO REMAND AND IMPOSE RULE 11 SANCTIONS

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff to move this Honorable Court to remand this matter to the Civil District Court for the Parish of Orleans, State of Louisiana, and to impose sanctions against the removing defendant pursuant to Federal Rule 11, for the reasons set forth herein:

I.

On May 30, 2005, Plaintiff received notice of removal to the United States District Court for the Eastern District of Louisiana by defendant Peter Territo.

II.

Plaintiff opposes removal and moves for remand back to the State Court on the basis that this Court does not have subject matter jurisdiction over this matter, as more fully set forth in the accompanying Memorandum in Support.

III.

Territo's removal of this case to federal court was a direct violation of Federal Rule 11, in that counsel for Territo knew full well that the removal was not grounded in



EXHIBIT
/

fact nor warranted by existing law, yet filed the removal anyway in order to cause unnecessary delay or needless increase in the cost of this litigation.

**WHEREFORE**, Plaintiff respectfully requests that this matter be remanded to the Civil District Court for the Parish of Orleans, State of Louisiana.   Additionally, Plaintiff asks that the Court award costs, including reasonable attorney fees, incurred in bringing this Motion to Remand.  Finally, Plaintiff asks that the Court impose appropriate sanctions, pursuant to Federal Rule 11, against counsel for Territo.

Respectfully submitted,

**LANDRY & SWARR, L.L.C.**

/s/ David R. Cannella
Mickey P. Landry (La. Bar No. 22817)
Frank J. Swarr (La. Bar No. 23322)
David R. Cannella (La. Bar 26231)
1010 Common Street, Suite 2050
New Orleans, Louisiana 70112
Telephone:  (504) 299-1214
Facsimile:  (504) 299-1215

COUNSEL FOR PLAINTIFF

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I have on this the 1st day of June, 2007, served a copy of the foregoing on counsel to all parties in this proceedings by mailing same by United States Mail, properly addressed and postage prepaid.

/s/ David R. Cannella
DAVID R. CANNELLA

Motion2Remand.doc

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| LEIGH COLE, SR. | * | CIVIL ACTION NO. 2:07-cv-3049 | |
| | * | | |
| VS. | * | JUDGE: | FALLON |
| | * | SECTION: | L |
| | * | | |
| NORTHROP GRUMMAN SHIP, | * | MAGISTRATE: | SHUSHAN |
| SYSTEMS, INC., ET AL | * | DIVISION: | 1 |

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

## MEMORANDUM IN SUPPORT OF MOTION TO
## REMAND AND MOTION FOR RULE 11 SANCTIONS

**MAY IT PLEASE THE COURT**:

As set forth below, this Court does not have federal question jurisdiction over this matter, and therefore, the case must be remanded back to the State Court in which it was filed. Further, counsel for the removing defendant knew full well that removal of this case had no basis in fact or in existing law, yet removed the case nonetheless simply to needlessly delay this case and increase its cost, in direct violation of Federal Rule 11.

### BACKGROUND

Plaintiff, Leigh Cole, worked at Avondale Shipyard's facilities in 1966 and 1967. In the course of his work, Mr. Cole was occupationally exposed to injurious levels of airborne asbestos fibers as a direct result of the failure of Avondale Shipyards and its safety officers to implement any of the many industrial hygiene and engineering controls then known to lessen or eliminate such exposures, provide Mr. Cole with any form of respiratory protection, or even warn him of the dangers that both Avondale Shipyards and its safety officers knew or should have known about. Mr. Cole's asbestos exposure occurred both on land and on vessels while those vessels

were being constructed at Avondale Shipyards.[1]  As a result of the tortious acts of Avondale

Shipyards and its safety officers, Mr. Cole contracted malignant mesothelioma.

During the 1960s, Avondale built many dozens of vessels for commercial customers such

as Likes, Delta, and Waterman, as well as the United States.  It is only now in Mr. Territo's latest

attempt to wrongfully remove cases such as this that he now asserts that work for the United

States "constituted the bulk of the construction work performed at Avondale Shipyards which

required the installation of asbestos-containing materials" (Notice of Removal at ¶ 7).  Of course,

no actual evidence to support this new assertion is supplied.

Avondale Shipyard's and its safety officers' tortuous acts caused Mr. Cole to contract

malignant mesothelioma.  Mesothelioma is an incurable and fatal cancer of the lining of the lung

caused by asbestos exposure, and Louisiana law affords a plaintiff in Mr. Cole's situation

preferential scheduling of his claim.  La. Code Civ. Proc. Art. 1573.  Now, in a move clearly

designed to deny and delay Mr. Cole his right to a trial during his lifetime, defendant Peter

Territo has removed this case to federal court on the specious argument that the Federal

Government somehow compelled him to not warn or protect Mr. Cole from the dangers of

asbestos, which argument has been rejected time and time again by the Federal District Courts,

and specifically by the Eastern District of Louisiana.[2]

Judge Duval addressed these exact issues over eight years ago in *Gauthe v. Asbestos

Corp. Ltd.*, 1997 WL 3255 (E.D. La. 1997) (attached hereto as Exhibit 1).  There is absolutely

---

[1] As discussed in more detail *infra*, Territo's assertion that Mr. Cole's asbestos exposure occurred aboard "Federal Vessels" (Notice of Removal ¶ 7) being built for the United States Government is without any known basis in fact and appears to be made solely to support Territo's misguided "federal officer" defense – yet another example of why Rule 11 sanctions are appropriate here.

[2] The alleged basis for removal of this case has been rejected by most of the Judges of the Eastern District time and time again.  However, the Avondale Interests continue to remove cases under the pretext of the Government Contractor Defense as a delay tactic.  In the instant case, Mr. Cole's deposition was scheduled for June 1, 2007, in Texas.  However, Mr. Territo filed the instant Notice of Removal on May 29, 2007, and sent a copy of the notice to undersigned counsel by hand on May 30th.  Mr. Cole's deposition was postponed because of the removal.

nothing new presented in the instant removal that was not presented in *Gauthe*, and in fact as set forth below, the Federal Courts have unanimously agreed with and cited with approval Judge Duval's reasoning and holding in *Gauthe* in case after case after case. The only aspect of *Gauthe* that Plaintiff urges this Court to reconsider is its decision regarding Rule 11 sanctions. In *Gauthe*, the Court declined to impose sanctions in consideration of "the complexity of the issue presented." While that may have been true eight years ago, it can no longer be said that the Avondale Interests' repeated, and invariably unsuccessful, attempts to needlessly delay the progress of the claims of dying plaintiffs with this same, tired argument is anything other than sanctionable.

This case was originally filed on April 17, 2007, in the Civil District Court for the Parish of Orleans, State of Louisiana, in proceeding number 2007-3494, Division "E". On May 29, 2007, Territo removed this case to federal court on the basis of "federal officer immunity" pursuant to 28 U.S.C. 1442 (a) (1). Additionally, Territo argues as a basis for removal a defense pursuant to the Longshore and Harbor Worker's Compensation Act ("LHWCA"). Neither of these is a defense under Louisiana law but, even if they were, a defense is not a basis for removal. Accordingly, this action should be remanded to State Court because this Honorable Court is without jurisdiction to hear the case.

Furthermore, counsel for Territo (and the other Avondale Interests) has repeatedly removed cases such as this on these same bases and the Federal Courts have repeatedly remanded each and every one of those cases, such that the removal of this case was done with counsel for Territo's express knowledge that the removal had no basis in law or in fact and for no other reasons than to delay this action, needlessly increase its cost, and unfairly deny Mr. Cole

his day in court while he is still alive.  Thus, Federal Rule 11 mandates that counsel for Territo be sanctioned accordingly.

**LAW AND ARGUMENT**

The stated basis for Territo's removal of this case is the federal officer removal statute, 28 U.S.C. §1442(a)(1).  As set forth herein, the removal of this case is defective and it is respectfully submitted that this action should be remanded to the state court from which it was removed because this Honorable Court is without jurisdiction to hear this case.

First and foremost, the Court's attention is directed towards several recent decisions by other District Courts that have addressed the precise issues raised by Territo's removal of this case.  The cases are attached hereto for the Court's convenience, and the reasoning and analysis contained therein would be difficult to improve upon in this Memorandum:

| | |
|---|---|
| Exhibit 1 | *Gauthe v. Asbestos Corp.*, 1997 WL 3255, No. 962454 (E.D. La. 1997); |
| Exhibit 2 | *Quebedeaux v. Union Pacific Railroad*, No. 6:04cv2232 (W.D. La. 2004); |
| Exhibit 3 | *Bourgeois v. A.P. Green Industries Inc.*, No. 96-3764 (E.D. La. 1996); |
| Exhibit 4 | *Guidroz v. The Anchor Packing Co.*, No. 98-3709 (E.D. La. 1998); |
| Exhibit 5 | *Overly v. Raybestos-Manhattan*, No. C-96-2853 CI (N.D. Cal., 1996); |
| Exhibit 6 | *Westbrook v. Asbestos Defendants*, 2001 WL 902642 (N.D. Cal. 2001); |
| Exhibit 7 | *Mouton v. Flexitallic, Inc.*, 1999 WL 225438 (E.D. La. 1999); |
| Exhibit 8 | *Porche v. Flexitallic, Inc.*, 1996 WL 603919 (E.D. La. 1996); |
| Exhibit 9 | *Mabile v. Hidalgo*, No. 95-2200.9 (W.D. La. 1995); |
| Exhibit 10 | *Hampton v. Owens-Illinois*, No. 06-10929, 2007 WL 274794 (E.D. La 1/29/07); |

Exhibit 11   *Bradley v. Northrop Grumman Systems Corp.*, No. 07-1422, 2007 WL
1115246 (E.D. La. 4/12/07);

Exhibit 12   *Griffin v. Northrop Grumman Industries*, No. 06-9439, Sec. A (E.D. La.
12/15/06); and

Exhibit 13   *Landry v. Northrop Grumman Industries*, No. 06-9889, Sec. A (E.D. La.
12/15/06).

As made clear in those cases, the instant case must be remanded.

## I.   This Action Should Be Remanded *Sua Sponte*

In light of Mr. Cole's dim prognosis and the looming transfer of this matter to the
asbestos MDL if it is not remanded very soon, Plaintiff has moved for an expedited hearing of
his Motion to Remand.   However, it is respectfully requested that this Court determine *sua
sponte* that it does not have subject matter jurisdiction in this case.   A review of Plaintiff's
Petition for Damages, attached to Territo's Notice of Removal, reveals that there is no federal
jurisdiction in this matter.   On the face of the Petition, this Court lacks subject matter jurisdiction
and should remand this case.   Although Territo makes reference to Avondale records and
information presumably contained in those records upon which the factual contentions in the
Notice of Removal are based, the only evidence attached to the Notice of Removal is the
Plaintiff's Petition.   Clearly, the Notice of Removal contains absolutely no evidence in support of
Territo's assertions.   Moreover, lawyer argument is not a basis for removal, and lawyer argument
is not evidence showing that a case is removable to federal court.

A district court may and should always determine *sua sponte* whether its subject matter
jurisdiction has been properly invoked.   *Thomas v. Burlington Industries, Inc.*, 763 F. Supp.
1570, 1575 (S.D. Fla. 1991) (citing 14A C. Wright, A. Miller & E. Cooper, Federal Practice and

Procedure Sec. 3721). In this case, subject matter jurisdiction has not been invoked, and the case

should be remanded to the state court from which it was removed.

## II.    Federal Officer Removal Statute Does Not Apply

Title 28 USC § 1442(a)(1) provides as follows:

(a)    A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1)    Any officer of the United States or any agency thereof, or person acting under him, for any act under the color of such office or an account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

Under certain limited circumstances, this statute has been extended to nongovernmental

individuals who can show that (1) they have acted under the direction of a federal officer; (2)

they can raise a federal defense to plaintiffs' claims; and (3) they can demonstrate a casual nexus

between plaintiff's claims and the acts it performed under the color of federal office.[3]  It is not

enough to make factual allegations that one worked under the general auspices of federal

direction or regulation.   Removal must be predicated upon an officer's *direct and detailed*

*control.*[4]

In *Winters v. Diamond Shamrock Chemical Co.,* 149 F.3d 387 (5th Cir. 1998), the Fifth

Circuit set forth a three-part test for determining whether a party may invoke the federal officer

removal statute.   The court first considered whether the defendants were "persons" within the

meaning of the federal officer removal statute.   Second, the Fifth Circuit evaluated whether "the

defendants acted pursuant to a federal officer's directions," and whether there was "a causal

nexus" between the defendants' actions and the plaintiff's claims.   *Id.,* at 398.   The third factor

---

[3] *Mesa v. California,* 489 U.S. 121, 131-32, 109 S.Ct. 959, 966, 103, L.Ed.2d 99 (1989).
[4] *Bahrs v. Hughes Aircraft Co.,* 795 F. Supp. 934, 947 (E. D.N.Y.) 1992).

considered by the Fifth Circuit was whether the defendants had a "colorable federal defense." This test has been applied many times to Avondale and its executive officers (such as Territo) in cases they have removed to federal court. Time after time, the courts have remanded the cases because Avondale and Territo failed to satisfy the test for invoking the federal officer removal statute.

### A.   Territo Did Not Act Pursuant to Directions of an Officer of the United States in Failing To Discharge the Duties He Owed to Mr. Cole

In this case, Territo asserts that he is a federal officer within the meaning of 28 USC § 1442(a)(1), and that as such, he is entitled to removal because Mr. Cole's work environment and the asbestos-containing materials that found their way into that environment were exclusively controlled by officers of the Unites States. Notice of Removal ¶ 5. As set forth herein, that assertion is false, every Eastern District Judge who has had this issue before it has found it to be false, and Mr. Territo himself has testified under oath that it is false.

A federal officer cannot merely claim that he was doing his job in order to justify removal. To do so is to lapse into the same "scope of employment test" rejected by the Supreme Court in *Mesa*.[5]   Succinctly stated, the issue is not whether Territo acted under Defense Department officials or whether Federal inspectors were on the jobsite, but whether Territo is subject to being sued in state court based upon his actions taken pursuant to federal direction.[6]   It is not sufficient to prove only that "the relevant acts occurred under the general auspices of a federal officer" or that the defendant was a member of a regulated industry. *Overly v. Raybestos-Manhattan, infra*.   Even if Territo were able to establish that he or Avondale was under substantial control by the government regarding the installation of certain products containing asbestos, which is clearly not the case, he must also do so **"with regard to the warning of**

---

[5] *North Carolina v. Ivory*, 41 906 F.2d 999 (4th Cir. 1990).
[6] *Id.* at 1003.

**individuals of the presence of asbestos on the job."**[7]

Avondale was a privately owned shipyard which constructed both military and commercial vessels. (Exhibit 14, Affidavit of Felix Albert). Even with regard to government vessels, however, "Avondale employees did not work under the direct orders ... or direction" of an officer of the United States. *Id.* Moreover, "[t]he United States government inspectors neither monitored nor enforced safety regulations." *Id.* Finally, even during the construction of government vessels, safety was the responsibility of Avondale, not of the U.S. government.[8] *Id.*

Despite Mr. Albert's sworn statement, of which Mr. Territo is well aware, Territo asserts in his Notice of Removal that, to the extent that he might be liable to Mr. Cole, he was at all times "acting under the authority of an officer of the United States," apparently because certain nameless Navy, Coast Guard and Maritime Commission personnel were actually running all details of Avondale's safety department. As the Court can see, this assertion is directly contrary to Territo's prior sworn testimony:

> Q:    So the safety department was independent from the Federal officers that were aboard these vessels?
>
> A:    Yes.
>
> Q:    Were there any, to your knowledge, special [safety] rules that Avondale had to follow that weren't general rules for all ship building?

---

[7] *Overly v. Raybestos-Manhattan, Inc.* (Exhibit 5).

[8] Mr. Cole's mesothelioma was caused by exposure to asbestos-containing products. Asbestos containing insulation products have been held not to be military equipment and, accordingly, the government contractor's defense does not apply. This issue was addressed in the case of *In re: Hawaii Federal Asbestos Cases*, 960 F.2d 806 (9th Cir. 1992). In that case, sailors who were exposed to asbestos dust while serving the U.S. Navy sued various manufacturers of asbestos insulation products which had been used aboard the Navy vessels. In rejecting the defendant's argument that they were shielded from liability under the government contractor defense, the Court held that asbestos insulation is not military equipment. *Id.*, at 812. The court went on to state that even if asbestos insulation was military equipment, which it is not, a manufacture still has an obligation to warn of dangers inherent in its products. *Id.* Accordingly, the asbestos defendants could not avail themselves to the government contractor defense. Likewise, the U.S. 5th Circuit Court of Appeals rejected Johns-Manville's argument that it was entitled to the government contractor defense in a suit by the widow of a former shipyard worker who died from an asbestos-related disease. *Hansen v. Johns –Manville Products Corporation*, 734 F.2d 1036 (5th Cir. 1984), *cert denied*, 105 S. Ct. 1749, 84 L.Ed. 2d 814 (1985).

A:    No.

Q:    That aside, what I'm asking you is whether or not the Federal officers that were on board the vessels, the Naval inspectors, did they control the safety department at Avondale?

A:    No.

Q:    To your knowledge, is there any Federal regulation or specification in the contracts with the Navy that would prevent you from putting up a [warning] sign in a naval vessel?

A:    If it was under construction?

Q:    Yes.

A:    No.

Q:    So if you wanted to put up a warning sign because lead paint is being used or being ripped out, you could do that?

A:    Minimal standards?

Q:    In other words, is there anything preventing Avondale from doing more than what those regulations called for?

A:    No.

Deposition of Peter Territo of September 26, 1996, at 129-144, taken in the *Gauthe* case that was improperly removed and subsequently remanded, attached hereto as Exhibit 15.  Also, Eddie Blanchard, Superintendent of Outfitting during the relevant time periods and former himself an executive officer of Avondale, had this to say about acts under the direction of federal officers:

Q:    Am I going outside the realm of knowledge to ask you whether or not any Federal officer directed or controlled the safety department; can you tell me whether or not a Federal officer directed or controlled the safety department?

A:    No, it did not.

Q:      They did not?

A:      Certainly not.

Q:      So on commercial vessels like the Lykes Line, the construction of the Lykes Line was done under general regulations that had to be compiled with?

A:      That is true.

Q:      Were there any specific regulations that a Federal officer was in there to direct and control, that you are aware of?

A:      No.

Q:      Did Mr. Blum [federal officer] have the authority, did he have authority over Mr. Territo, that you are aware of?

A:      No.

Q:      Did Mr. Blum have authority over you that you are aware of?

A:      No.

Q:      So that Naval or Government inspectors were there for the purpose of seeing that the general regulations were followed, and not to control the employees of Avondale?

A:      Individually, that's correct.

Deposition of Eddie Blanchard of September 25, 1996, attached hereto as Exhibit 16.

Despite the blatant misrepresentations made in his latest Notice of Removal, Territo has himself admitted, and Eddie Blanchard has corroborated, that his duties as a safety officer at Avondale were in no way controlled or directed by any officer of the United States.

**B.      No Causal Nexus Exists Between Plaintiff's Claims and Acts Performed By Territo Under Color of Federal Office**

Territo's argument that a causal nexus exists between Plaintiff's claims and acts performed by Territo under color of Federal office "is simply meritless."   *Gauthe*, at p. 3 (Exhibit 1).   Territo's argument in this regard has been previously rejected.   Under the third

prong for federal-officer jurisdiction, Territo must show that a nexus exists between actions for which Territo is being sued and the directives of the federal government. *Ryan*, 781 F. Supp. at 945; *Ruffin*, 959 F. Supp. at 775; *Freiberg, supra* at 1152-6; *Gauthe, supra; Mouton, supra*; and *Porche, supra*. To determine whether a causal nexus exists, "[t]he critical analysis is to what extent defendants acted under the federal direction at the time they were engaged in conduct now being sued upon." *Bahrs v. Hughes Aircraft Co.*, 795 F. Supp. 965, 969 (D. Ariz. 1992) (internal quotes omitted); *Freiberg, supra* at 1152-6. To meet this burden, a defendant must "by direct averment exclude the possibility that [the state action] was based on acts or conduct of his not justified by his federal duty." *Mesa*, 109 S. Ct. at 966; *Freiberg, supra* at 1152-6. Simply put, Territo must show that the federal authority under which Avondale's safety department operated "directly interfered with its ability to fulfill its state law obligation" of care. *See Ruffin*, 959 F. Supp. at 776, *(citing Ryan*, 781 F. Supp. at 950); *Freiberg, supra* at pages 1152-6. This factor is similar to the determination of whether Avondale acted under federal authority.[9] When making this determination, most courts require "direct and detailed control" by the federal officer over the specific conduct of the defendant that forms the basis for the plaintiff's tort claims. *Bahrs*, 795 F. Supp. at 969; *Freiberg, supra* at pages 1152-6; *Gauthe, supra; Mouton, supra*; and *Porch; supra*.

    In this case, Territo has provided no evidence showing that a federal officer exercised "direct and detailed" control over his operations, over Avondale's safety activities, or over Avondale's handling of asbestos. In fact, the evidence is clear and uncontested that asbestos-related safety measures used at Avondale were never under federal direction and control. This

---

[9] The causal nexus requirement is necessarily predicated upon the existence of federal authority. In some cases, the two requirements are combined into one test. *See Ames v. Boeing North American, Inc.*, 997 F. Supp. 1268, 1273 (C.D. Cal. 1998).

lack of an evidentiary foundation, once again, requires that this case be remanded to state court.

*Freiberg, supra* at pages 1152-6; *Gauthe, supra; Mouton, supra;* and *Porch, supra.*

Although Avondale may produced an abundance of evidence attesting to the regulations imposed by the federal government on the manufacture and design of ships built by Avondale for the government to the court in *Overly,* the court held that:

> "**none** of these guidelines address Avondale's responsibility to warn its employees of their exposure to products containing asbestos. The government in no way restricted Avondale's ability to notify individuals of the presence of asbestos in the work environment. Thus, there is no causal connection between the control exercised by the United States over Avondale and the legal theory in which plaintiffs seek to hold Avondale liable."

(Exhibit 5, at p. 8.)

Consequently, the *Overly* court found that Avondale had no basis upon which to remove the case, and therefore remanded the case to state court.

Plaintiff would also like to call this Court's attention to a recent case decided by the United States District Court for the Northern District of West Virginia which also addresses this same issue, in which the court remanded the case removed on the same basis as the instant case. In doing so, the court held that:

> "[T]he removing defendants have each failed to demonstrate a causal nexus between plaintiffs asserted claims and the acts performed by the respective defendants under the direction of a federal officer. Furthermore, the removing defendants have each failed to assert a colorable federal defense to the plaintiffs' respective claims. Neither the government contractor defense nor immunity under the Defense Procurement Act give rise to a colorable federal defense against the plaintiffs' respective claims. In that both a causal nexus and a colorable federal defense are necessary requirements, jurisdiction under 28 USC § 1442(a) is lacking. In essence, plaintiffs' claims against the removing defendants are for the negligent operation of the respective buildings, not for the manufacturing of goods or equipment at the direction of and for the federal government. Therefore, plaintiffs' claims are clearly more analogous to the prosecution by the State of California against postal employees' negligent operation of postal vehicles while on duty when the United States Supreme Court in *Mesa v. California*, 489 U.S. 121 (1969) found no federal jurisdiction under the

> Federal Officer Removal Statute.  Simply put, the removing defendants herein are not being sued because of their efforts to carry out their federally mandated duties."

*Mon Mass II v. 20th Century Globe Corp.*, Civil Action No. 96-CV-91, (N.D. Va. July 19, 1996) (Attached herein as Exhibit 17).

Another case on point in this regard is the case of *Bahrs v. Hughes Aircraft Co.*, 795 F. Supp. 965, 969 (D. Ariz. 1992).  In *Bahrs*, General Dynamics was sued for dumping toxic waste, including TCE, into the ground, which eventually seeped into the ground and injured the plaintiffs.  *Id.*, at 967.  General Dynamics removed the case, alleging that federal-officer jurisdiction was appropriate because when performing the work that created the toxic waste, they were fulfilling a government contract.  The court rejected the defendant's attempt to invoke federal officer jurisdiction because while the federal government may have exercised control over the procedures that created the toxic TCE waste, there was no evidence that it exercised "direct and detailed" control over the conduct that caused the plaintiffs' injuries, the waste-disposal procedures:

> "While the government officials were undoubtedly most interested in the production of war materials, the record before this Court does not demonstrate the government's necessary control over the method of waste disposal.  The mere fact that the government possessed the power to exercise control over the project does not establish that the power was in fact ever exercised."

*Id.*, at 970.  Thus, the court found no nexus existed between the control exercised by the federal government and the tortious conduct that formed the basis of the plaintiff's lawsuit against General Dynamics.  *Id.*  In this case, Territo cannot establish this required nexus.

### C.    Territo Can Not Raise A Colorable Federal Defense

In his Notice of Removal, Territo asserts that is raising a colorable federal defense to this action under both "the Longshore and Harbor Workers' Compensation Act and under the

jurisprudential doctrine known as the 'Federal Contractor Defense.'" Notice of Removal ¶ 6. Neither the LHWCA nor the federal contractor defense is a colorable defense to Mr. Cole's claims against Territo.

### 1.    Longshore and Harbor Workers Compensation Act Is Inapplicable

Territo first asserts that he is asserting a defense based upon the Longshore and Harbor Workers Compensation Act ("LHWCA"). This exact issue was addressed in *Aaron v. National Union Fire Insurance Co.*, 876 F.2d 1157 (5th Cir. 1989), *cert. denied sub nom., American Home Insurance Group v. Aaron*, 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed. 1028 (1990), wherein the Fifth Circuit held that the LHWCA is not a basis for removal. The *Aaron* court reiterates well-established law that a case cannot be removed to federal court on the basis of a federal defense, even if the defense is anticipated in plaintiffs' complaint and even if the parties concede that the federal defense is the only question truly at issue. *Aaron,* at 1161; *Franchise Tax Bd. of California v. Constr. Laborers Trust for Southern California,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed. 2d 420 (1983); *Powers vs. South Central United Food & Commercial Workers Unions*, 719 F.2d 760, 764 (5th Cir. 1983). The *Aaron* court stated that the LHWCA statutes are devoid of any indication of specific jurisdictional grants to federal courts as are found in ERISA and LMRA. Thus, "[t]he LHWCA is ... nothing more than a statutory defense to a state court cause of action – the classic circumstance of non-removability." *Aaron,* at 1166 (emphasis added); *see also Lowe v. Ingalls Shipbuilding,* 723 F.2d 1172, 1182 (5th Cir. 1984).

Further, the LHWCA does not pre-empt Plaintiffs' state law claims against Territo. In *Masters v. Swiftships Freeport, Inc.,* 867 F. Supp 555 (S.D. Tex 1994), the defendant argued that its case was properly removed to federal court because the LHWCA preempted plaintiff's state law claims. The *Swiftships* court stated that the defendant's argument was **"absurd on its**

face, and the Court is genuinely troubled as to how any such claim could be made in good faith." *Swiftships*, at 557 (emphasis added). The *Swiftships* Court points out that "the Fifth Circuit concluded that the LHWCA failed each part of the [the preemption] test and that removal... on LHWCA grounds was improper." *Id.* (*citing Brown v. Crop Hail Management, Inc.*, 813 F. Supp. 519, 523-4 (S.D. Tex. 1993)). Therefore, the *Swiftships* Court found that the defendant's removal and opposition to plaintiffs' Motion to Remand was "frivolous", "utterly groundless", and "prosecuted in bad faith." Thereupon, the *Swiftships* Court sanctioned the defendant and remanded the case to state court. *Id.,* at 558-59.

It should be noted that this very same defendant, Peter Territo, attempted this same tactic in the case of *Bartley vs. Borden, Inc.*, U.S. Eastern District of Louisiana, Sec. "E", C.A. No. 96-145 c/w 96-157 through 96-204. In *Bartley*, Judge Marcel Livaudais, Jr. remanded the cases to state court (Exhibit 14). Similarly, in *Bourgeois v. A.P. Green Industries, Inc.*, U.S. Eastern District of Louisiana, Sec. "L", C.A. No. 96-3764, the insurer for Peter Territo, American Motorists, attempted this identical strategy. In response, the court held that "I do not feel that reliance on the longshoreman harbor workers act is not sufficient to make it a federal question or to raise it to federal jurisdiction" (Exhibit 3, p. 34), and remanded the case to state court. *Id.* Shortly thereafter, in *Gauthe v. Asbestos Corp.*, U.S Eastern District of Louisiana, 1997 WL 3255, C.A. No. 96-2454, Avondale and Peter Territo made a similar argument regarding the LHWCA; that is, that the LHWCA provided a colorable federal defense. Again, the argument was rejected by this very Court and the case was remanded (Exhibit 1). In *Mouton v. Flexitallic, Inc.*, U.S. Eastern District of Louisiana, C.A. No. 99-0162, this strategy was again pursued by Avondale executive officers[10] and was rejected by Judge Porteous.[11] (Exhibit 7). Likewise, the

---

[10] The Order and Reasons note that the petition named as defendants Avondale and its executive officers; however, the Order and Reasons refer to Avondale executive officer Kennedy as the party that filed the motion to remove. In

Travelers Insurance Company tried this same tactic in the case of *Mabile vs. Hidalgo*, U.S. Western District of Louisiana, Div. "L", C.A. No. 95-2200.9. In *Mabile*, Judge Rebecca Doherty remanded the case to state court (Exhibit 9).

### 2. Territo Can Not Avail Himself of the Federal Contractor Defense

As set forth in Plaintiff's Petition for Damages, Mr. Cole does not assert claims against Territo or Avondale Shipyards based upon a design defect or a manufacturing defect. And as Judge Duval held in *Gauthe*, "to stretch the government contractor defense to encompass something other than a design defect or manufacturing defect is not indicated here." *Gauthe*, at p. 5 (Exhibit 1). Undeterred, Territo nonetheless presents the identical argument here that has been unanimously rejected by every Federal Court that has heard it.

A government contractor is allowed to escape liability for harms caused by their product under specific conditions. *Ryan v. Dow Chem. Co.*, 781 F. Supp. 934, 944 (E.D.N.Y. 1992). In the present case, Mr. Cole was not harmed by a product manufactured by Avondale or Territo. The products that caused plaintiffs' harm were asbestos-containing insulation products manufactured, not by the Avondale Interests, but by various asbestos manufacturers. Asbestos-containing insulation products have been held not to be military equipment, and accordingly, the government contractor's defense does not apply. *In re Hawaii Fed. Asbestos Cases*, 960 F.2d 806, 812 (9th Cir. 1992). Likewise, the United States Fifth Circuit Court of Appeals has rejected Johns-Manville's argument that it was entitled to the government contractor defense in a suit by a widow of a former shipyard worker who died from an asbestos-related disease. *Hansen v. Johns-Manville Prod. Corp.*, 734 F.2d 1036 (5th Cir. 1984), *cert denied*, 105 S. Ct. 1749, 84

---

addressing the merits of the ruling and rejecting the same argument presently before this court, the Order and Reasons seem to refer to all Avondale Interests, presumably Avondale and other Avondale executive officers asserted the LHWCA argument. The same argument used in the present case.

[11] By agreement of the parties, the ruling in *Mouton* applied to four similar cases.

L.Ed. 2d 814 (1985). If the manufacturer of an asbestos-containing product cannot claim the government contractor defense, then certainly that defense cannot be claimed by the shipyard that builds, converts and repairs a vessel that upon completion caused no injury to Plaintiff.

Undeterred by the obvious inapplicability of the government contractor defense to the instant case, Territo nonetheless asserts that he can rely upon that defense as articulated in *Boyle v. United Technologies Corp.*, 487 U. S. 500, 108 S. Ct. 2510, 101 L Ed. 2d 442 (1988). This Honorable Court should note in ruling upon Plaintiff's Motion for Sanctions in this case that Territo and Avondale have used this argument before and been told exactly how meritless it is.

In *Overly v. Raybestos Manhattan* (attached as Exhibit 5), a case nearly identical factually to the instant case, the court recognized that in order to meet the *Boyle* test in a case such as this, a defendant such as Avondale must show that the government affirmatively instructed it regarding the provision of warnings. The court found that Avondale failed to meet this prong of the *Boyle* test and held:

> "Defendants only showing on this motion relates to the government's manufacturing and engineering specifications. Defendant has not demonstrated that the government provided "reasonably precise specifications" affecting Avondale's provision of warnings. Absent a showing by the defendant that the federal government gave specific instructions to Avondale not to warn employees of the existence of asbestos, Avondale has offered no protection by government contractor immunity."

*Id.* The court further held that Avondale failed to meet the second prong of the *Mesa* standard as Avondale has no colorable federal defense to the charges in the instant case.

Moreover, before the Court can consider whether this serves as a colorable federal defense in this case, Territo bears the burden of establishing that two requisite conditions are met: (1) whether the case concerns a unique federal issue and (2) whether there was a significant conflict between federal policy and state law. *Boyle*, 108 S. Ct. at 2515. If either of these

– 17 –

conditions is not met, a defendant cannot rely upon the federal contractor defense. *Dorse v. Eagle-Picher Industries, Inc.*, 898 F. 2d 1487, 1490 (11th Cir. 1990) (state law not displaced where no conflict existed between federal contractual duties and state duty of care — contractor could comply with both obligations). In this case, Territo has presented absolutely not evidence which would establish these two requisite conditions and thus, Territo cannot rely on the government contractor defense.

### a.    No Unique Federal Interest Justifies Removal.

Since asbestos products have been banned for a long time and are no longer used in most equipment, any federal interest in this case is meager at best. Using precisely this reasoning, the Eastern District of Pennsylvania rejected an asbestos manufacturer's claim that it was entitled to the federal-contractor defense to support its attempted federal-officer removal:

> The impact of this personal injury action on the federal interest in protecting future defense procurement — the fundamental point of the government contract defense — is speculative. It is common knowledge that asbestos is no longer used in the design and manufacture of equipment, so that this lawsuit cannot interfere with a federal program involving products that contain asbestos. Therefore, the adjudication of this personal injury action in state court does not threaten the enforcement of a federal policy sufficient to warrant removal.

*Good v. Armstrong World Indus., Inc.*, 914 F. Supp. 1125, 1131 (E.D. Pa. 1996). Here, Territo does not, and indeed can not, present any evidence that a unique federal interest is at issue in this case.

### b.    No Conflict Exists Between State Law and Federal Mandate.

Assuming for purposes of argument that a federal interest does exist in this case, which is denied, that federal interest would "merely established a necessary, not a sufficient, condition for the displacement of state law." *Boyle,* 108 S. Ct at 507. The Court must then determine whether a conflict exists between state law and federal mandate. Displacement of state law "will occur

only where. . . a 'significant conflict' exists between an identifiable 'federal policy or interest and

the [operation] of state law or the application of state law would 'frustrate specific objectives' of

federal legislation." *Id.*   The *Boyle* court offered an example of a situation in which federal

mandate does not conflict with state imposed duty:

> "If, for example, the United States contracts for the purchase and installation of an
> air conditioning-unit, specifying the cooling capacity but not the precise manner
> of construction, a state law imposing upon the manufacturer of such units a duty
> of care to include a certain safety feature would not be a duty identical to anything
> promised the Government, but neither would it be contrary.  The contractor could
> comply with both its contractual obligations and the state-prescribed duty of care.
> No one suggests that state law would generally be pre-empted in this context."

*Id.*[12]   This example clearly highlights the facts applicable to this case are clearly outside the

removal statutes.  Territo presents nothing to suggest that there were federal mandates that pre-

empted Avondale's state prescribed duty of care to Mr. Cole.  *Gauthe, supra; Mouton, supra;*

and *Porch; supra*; among many others.

Therefore, even if the Court determined that there is a federal interest in this case, which

is denied, Territo would still have to establish a conflict exists between its duties imposed by

state law and its duties imposed by federal authority.  Indeed, in a similar situation, the Eleventh

Circuit determined that the evidence did not support the requirements for the government

contractor defense where "the contractor could comply with both its contractual obligations and

the state-prescribed duty of care."  *Dorse v. Eagle-Picher*, 898 F.2d 1487, 1490 (11[th] 1990)

(*citing Boyle*, 108 S.Ct. at 2517).  The Ninth Circuit clearly articulated this requirement in the

failure to warn context:

---

[12]As opposed to the instant claims, *Boyle* was a design defect case.  In *Boyle*, the state-imposed duty of care was
directly contrary to the duty imposed by contract with the federal government.  *Boyle*, 108 S. Ct. at 2517.  However,
Territo presents no evidence that his "federal duty," if any, limited his ability to fulfill his state law duty of care to
Leigh Cole.

"*Boyle* displaces state law only when the Government, making a discretionary, safety-related military procurement decision contrary to the requirements of state law, incorporates this decision into a military contractor's contractual obligations, thereby limiting the contractor's ability to accommodate safety in a different fashion."

*Id.; See Also, In re Hawaii Asbestos Cases*, 960 F. 2d 806, 813 (9th Cir. 1992).

In the instant case, Territo has not established that his duties imposed by federal authority in any way conflicted with his duties of care imposed by state law. Specifically, under Louisiana law, Territo had a duty to warn and to provide safe condition for employees or persons working on or near Avondale's facilities. *See, e.g., Jones v. Trailer*, 636 So.2d 1112, 1122 (La. App. 4th Cir.), *writ denied sub nom., Rome v. Traylor*, 642 So.2d 193 (La. 1994) (referring to La. R. S. § 23.13) ; *Canzoneri v. Smith*, 381 So. 2d 973, 975-76 (La. App. 4th Cir 1980). This duty includes a duty to warn of work-related dangers and how to avoid them. *Canzoneri*, 381 So.2d at 976; *Miller v. Lambert*, 380 So.2d 695, 700 (La. App. 4th Cir. 1980). Accordingly, Territo had a duty, imposed by state law, to warn of the dangers of asbestos on the job site. His failure to do so was in direct violation of state law, and nothing in Territo's notice of removal, or otherwise, in any way suggests that Territo's alleged federal authority conflicted with this state imposed duty of care. Where no conflict with state law exists, Territo is not entitled to rely upon the government contractor defense. Assuming Territo did work under the direct and detailed supervision of the federal government, which is denied and contrary to his own prior sworn testimony, Territo provides no evidence that anything about that supervision touched upon or prevented him from warning persons working on or near asbestos products about the dangers associated with asbestos or implementing safe work practices in those areas. Thus, the government contractor defense is simply not available to Territo in this case.

## II.    *Lalonde v. Delta Field Erection* Does Not Support Removal

Territo cites *Lalonde v. Delta Field Erection*, 1998 WL 34301466 (M.D. La.), and attaches a copy of that decision to its Notice of Removal as if that case in any way supported removal of this case. As can be seen from a review of the facts of *Lalonde*, that case is wholly inapplicable here.

In *Lalonde*, the widow of an employee of DSM Polymer, who had died of silicosis, sued DSM for its failure to warn Mr. Lalonde of the dangers of silica. DSM removed the case under the federal officer removal statute, and the court refused to remand the matter. However, *Lalonde* is factually distinguishable from this case. Unlike Avondale, DSM "operated a federal government-owned facility, **exclusively** for the government, under the oversight and ultimate control of the officers of the federal government."[13] The government, moreover, specifically controlled safety matters.[14] Given the overwhelming federal interests in that case, the court reasoned removal was proper to avoid state court interference with federal functions.[15] Such facts are not present here, as Avondale is a privately-owned shipyard that contracts with private and public interests, and in which safety officers such as Territo operate wholly independent of any Government control.

This is not the first time *Lalonde* has been cited in support of the frivolous removal of a case such as Mr. Cole's. In *Guidroz v. The Anchor Packing Co.*, No. 98-3709 "B," Eastern District of Louisiana (attached hereto as Exhibit 4), Judge Lemelle had the following to say about *Lalonde*'s applicability here:

> "The Court places little emphasis on the Magistrate Judge's "Ruling" in <u>Lalonde v. Delta Field Erection</u>, No. 96-3244-B-M3 (M.D. La. Aug. 5, 1998) from the Middle District of Louisiana cited by ADDSCO. First the Court is unclear as to

---

[13]*Id.*, at 4 (emphasis added).

[14]*Id.*

[15] *Id.* at 5.

the jurisdictional authority under with the Magistrate Judge, rather than a District Judge, entered this jurisdictional "Ruling."   Second and most relevant, the Magistrate Judge chose to ignore Overly v. Raybestos-Manhattan, 1996 WL 532150 (N.D. Ca. Sept. 9, 1996) (unpublished) and other unidentified "similar cases" (presumably those raised by plaintiff herein) on the basis that these lower court cases "do not involve a government contractor acting exclusively as an agent for the federal government in operating a government-owned facility," as she was faced with in Lalonde.  Lalonde, slip op. at 7 n. 13.  The Magistrate Judge found it all but frivolous to consider that an agent operating such a plant would have to prove that each act it performed had been under Government supervision. That is not the case here.  For this reason, Lalonde and its protracted reasoning are distinguishable."

Guidroz, at n. 3.

Judge Lemelle's assessment of *Lalonde* and its inapplicability to the instant case was recently echoed by Judge Haik in his decision in *Quebedeaux v. Union Pacific* (Exhibit 2).

## III.   The Federal Courts Are Unanimous That Remand is Proper

As evidence of the necessity for sanctions against counsel for Territo in this case, each and every time a case such as this one has been removed for the reasons asserted by Territo, the federal courts have remanded the case.  Territo himself, Avondale, and their insurers have been directly involved in many of those cases, and sanctions are necessary to stem the repeated frivolous removal of cases such as this.  The following are such cases:

### A.    Gauthe v. Asbestos Corporation

In *Gauthe v. Asbestos Corp.*, 1997 WL 3255 (E.D. La) (attached hereto as Exhibit 1), this Honorable Court remanded the case which had been removed by Avondale under the federal officer removal statute.  The facts are essentially identical to those presented here.

Mr. Gauthe died from an asbestos-related disease.  Mr. Gauthe had been exposed to asbestos at Avondale.  After Mr. Gauthe's death, his widow and children sued Avondale, its executive officers (including Peter Territo) and their insurers.  The plaintiffs asserted a failure-to-warn claim, alleging that Avondale had not warned Mr. Gauthe about the dangers of

asbestos.[16]

Avondale removed the case under the federal officer removal statute. Avondale alleged it was acting under the authority of an officer of the United States government because of the government's alleged supervision of the construction of naval vessels.[17]

The court rejected Avondale's arguments and remanded the case. The court found no causal nexus between Avondale's work for the Navy and the plaintiffs' failure-to-warn claim. The court explained:

> "This case against Avondale centers on their failure to warn...There is no evidence that the Government restricted or prohibited Avondale's ability to notify individuals of the presence of asbestos in the work environment. Assuming that Avondale built ships under the direct supervision of the federal government, nothing about that supervision prevented Avondale from warning Mr. Gauthe about the dangers. **Thus, there is no causal connection between the injury alleged by Mr. Gauthe with respect to Avondale's failure to warn and Avondale working on behalf of the federal government.**"

1997 WL 3255 at * 2 (emphasis supplied). This Honorable Court also rejected Avondale's suggestion that its misconduct should be excused because Avondale had met its contractual obligations to the Navy. The Court found this argument to be **"simply meritless."** *Id.* (emphasis supplied).

The court, in addition, found the federal officer removal statute did not apply because Avondale had not established a colorable federal defense. The court rejected Avondale's claim that the Longshore Harbor Workers' Compensation Act ("LHWCA") immunized it from liability. Plaintiffs had the right to proceed under Louisiana law **or** the LHWCA, and they chose

---

[16]1997 WL 3255 at * 1.

[17]*Id.*

to sue the Avondale interests under state law.[18]  Moreover, Avondale could not rely on the government-contractor defense in a failure-to-warn case.[19]  Despite this ruling, Territo relies on the **same** defenses here. *See* Notice of Removal at ¶5.

### B.     Bourgeois v. A.P. Green Indus., Inc.

In *Bourgeois v. A.P. Green Indus., Inc.*, 96-3764 (E.D. La. 1996), for example, Judge Fallon remanded a case removed by Avondale under the federal officer removal statute (Exhibit 3, excerpt of trial transcript).  Avondale was not under the control of federal officers with regard to safety procedures, and Avondale could not assert the LWHCA as a viable federal defense.

### C.     Other Cases From the Eastern District of Louisiana.

Other cases from the Eastern District make clear Avondale cannot invoke the federal officer removal statute.  In *Mouton v. Flexitallic, Inc.*, *supra* (attached hereto as Exhibit 7), various plaintiffs sued Avondale and its executive officers for their failure to warn about the dangers of asbestos and their failure to provide a safe workplace.  Avondale removed the case, claiming it was acting under the authority of the Navy and the Federal Maritime Commission in constructing Navy vessels.[20]

The court disagreed and remanded the case for two reasons.  First, there was no causal nexus between Avondale's work for the Navy and plaintiffs' failure-to-warn claims.  Judge Porteous stated:

> "Although Avondale arguably "acted under" the Navy's direction when working by detailed instructions to build the destroyers, the specifications under the contract specified technical parameters, and only had more general references to safety regulations.  The federal government provided no direction on warnings

---

[18]*Id.* at 3.

[19]*Id.* at 4.

[20]1999 WL 225438 at 1.

when using asbestos, and further did not prevent Avondale from taking its own safety precautions above the minimum standards incorporated in the federal contracts. **Thus, the Court finds that Avondale has failed to establish a causal connection between the Navy's direction pursuant to the design contracts and the plaintiff's failure to warn claims.**"

1999 WL 225438 at 2. (emphasis added).   Second, the court rejected Avondale's colorable federal defense.   Avondale had maintained (as it did in *Gauthe*) that the LHWCA provided Avondale with a defense to plaintiffs' claims.[21]

In another case, *Porche v. Flexitallic, Inc.*, *supra* (attached hereto as Exhibit 8), Avondale again tried to remove a state court suit based on the federal officer removal statute.   The court, while not directly addressing the removal issue, cited with approval *Overly v. Raybestos-Manhattan*, *supra*, which concluded that Avondale could not invoke the federal officer removal statute.   *Id.*, at 2.

The Avondale Interests have unsuccessfully made the same arguments for removal in several other cases resulting in a remand.   However, the rulings are unpublished and undersigned counsel was unable to locate such rulings.   Nonetheless, in complying with its duty of candor to this court, the Avondale Interests should advise this court and provide this court with all rulings relevant to the present inquiry where the same argument has been <u>repeatedly</u> rejected.   See, e.g. *Youriel J. Dennis and Albert A. Monistere v. A.P. Green*, U.S. Eastern District of Louisiana, C.A. No. 99-3395, Section "C" Mag. "2"; *John Anderson and Eva Washington Anderson v. Avondale Industries, Inc.*, U.S. Eastern District of Louisiana, C.A. No. 96-2395, Sec. "K", Mag. "4."

## D.    CASES FROM OTHER JURISDICTIONS

### 1.    Overly v. Raybestos-Manhattan

---

[21]*Id.* at 3.

The *Overly* decision (attached hereto as Exhibit 5) is on all fours with the present case and, thus, particularly persuasive on the removal issue.  In *Overly*, the same factual scenario recurs— the plaintiff was exposed to asbestos at Avondale's shipyard and subsequently developed mesothelioma.  He sued Avondale for  its failure to warn him of this hazard.[22]  The court concluded that remand was appropriate because there was no causal nexus between Avondale's work with the Navy and the plaintiff's failure-to-warn claim:

> "[A]lthough Avondale has established it was under substantial control by the government regarding the installation of certain products containing asbestos, it has not done so with regard to the warning of individuals of the presence of asbestos on the job site...

Defendant has produced abundant evidence attesting to the regulations imposed by the federal government on the manufacture and design of ships built by Avondale for the U.S. Navy.  However, **none of these guidelines addresses Avondale's responsibility to warn its employees of their exposure to products containing asbestos.  The government in no way restricted Avondale's ability to notify individuals of the presence of asbestos in the work environment.  Thus, there is no causal connection between the control exercised by the United States over Avondale and the legal theory under which plaintiffs seek to hold Avondale liable**.  Consequently, Avondale has no basis on which to assert application of the Federal Officer Removal Statute, and the case must be remanded to state court.[23]

Remand, moreover, was appropriate because Avondale lacked a colorable federal defense.  Avondale could not rely on the government-contractor defense in a failure to warn case.

## 2.    Westbrook v. Asbestos Defendants

---

[22] 1996 WL 532150 at * 1.

[23] 1996 WL 532150 at *2- 3. (emphasis added).

In *Westbrook v. Asbestos Defendants*[24] (attached hereto as Exhibit 6), the plaintiff, diagnosed with an asbestosis, sued Todd Shipyard claiming it had failed to warn him of the dangers of asbestos. Todd removed the suit under the federal officer removal statute. The district court remanded, stating:

> "...[T]he cause of action plaintiffs bring, based on premises owner/contractor liability, does not turn simply on Todd's use of asbestos. Rather **the claim appears to turn on a failure to warn about the dangers of asbestos and the negligent exercise of retained control. The defense: "The Navy made me do it," does not apply to either basis of liability. Todd has shown that the Navy required Todd to use asbestos insulation. But Todd has not shown that the Navy required it to refrain from issuing warnings**. Absent such a showing, Todd has no colorable military contractor defense to a failure to warn claim."

2001 WL 902642 at 2 (emphasis added).

## VI.   Public Policy Considerations Demand Remand

Remand is proper here because a broad interpretation of §1442(a) would run afoul of federalism concerns. One court has explained:

> From the standpoint of federalism, the mere assertion of a nebulous procurement interest cannot, without further specification, be a basis for removal. Otherwise, any state suit against a manufacturer whose product has at one time been diverted and adapted for military use .... would potentially be subject to removal, seriously undercutting the power of the state courts to hear and decide basic tort law. Such a result is incompatible with the respect owed to state courts under our federal system.[25]

Federalism concerns are particularly acute in asbestos cases, as thousands of such claims are pending in state court.

## VII.   Rule 11 Sanctions Are Called For

As set forth above, the removal of this case was patently improper and had no basis in law or in fact. Counsel for Territo has been told time and time again that the arguments they

---

[24]2001 WL 902642 (N.D. Cal.).

[25]*Ryan v. Dow Chem. Co.,* 781 F. Supp. 934, 951 (E.D.N.Y. 1992).

make in this case are meritless and even frivolous.   These same arguments have incurred

sanctions on at least three occasions that undersigned is aware of, including *Swiftships*, *Porch*,

and *Overly*, and this Court is urged to read those three cases and the reasons set forth herein.   It is

submitted that even heavier sanctions are warranted here in light of the failure of previous

sanction to curb this egregious conduct.

Counsel for Territo was told just a few months ago by Judge Haik of the Western District

of Louisiana that had the plaintiff not withdrew his request for sanctions in that case, he would

have imposed Rule 11 sanctions (Exhibit 2).   It is literally stunning that these same attorneys

would repeat this same conduct in another Federal Court so soon after being told in no uncertain

terms that the conduct would not be tolerated.

This removal is solely about getting Mr. Cole's case lost in that MDL just long enough to

deny him his day in court, and that is exactly what Federal Rule 11 empowers this Court to put a

stop to.

## CONCLUSION

The case should be remanded under §1447(c) due to a lack of jurisdiction.   Territo has

not satisfied the criteria necessary to invoke the federal officer removal statute.   Time and time

again, the argument alleged by Mr. Territo has been rejected – no less than four times since

December 2006.[26]   Given that these issues were resolved long ago and the Eastern District has

consistently maintained the rule of law established therein, Plaintiff respectfully requests not

only fees and costs incurred in bringing this Motion to Remand, but sanctions pursuant to

Federal Rule 11.

---

26 *Hampton v. Owens-Illinois*, No. 06-10929, 2007 WL 274794 (E.D. La 1/29/07) (Delta Shipyard was the
employer, but the same argument as alleged by Mr. Territo in the instant case was rejected); *Bradley v. Northrop
Grumman Systems Corp.*, No. 07-1422, 2007 WL 1115246 (E.D. La. 4/12/07); *Griffin v. Northrop Grumman
Industries*, No. 06-9439, Sec. A (E.D. La. 12/15/06); and *Landry v. Northrop Grumman Industries*, No. 06-9889,
Sec. A (E.D. La. 12/15/06).

Respectfully submitted,

**LANDRY & SWARR, L.L.C.**

/s/ David R. Cannella
Mickey P. Landry (La. Bar No. 22817)
Frank J. Swarr (La. Bar No. 23322)
David R. Cannella (La. Bar 26231)
1010 Common Street, Suite 2050
New Orleans, Louisiana 70112
Telephone:  (504) 299-1214
Facsimile:  (504) 299-1215

ATTORNEYS FOR PLAINTIFF, LEIGH COLE

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading has been served upon counsel for all parties by mailing same to each, properly addressed and postage prepaid, on this 1st day of June, 2007.

/s/ David R. Cannella
DAVID R. CANNELLA

MemoInSupportRemand&Sanctions.FINALVERSION.doc

**2**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| LEIGH COLE, SR. | * | CIVIL ACTION NO. 2:07-cv-3049 | |
| | * | | |
| VS. | * | JUDGE: | FALLON |
| | * | SECTION: | L |
| | * | | |
| NORTHROP GRUMMAN SHIP, | * | MAGISTRATE: | SHUSHAN |
| SYSTEMS, INC., ET AL | * | DIVISION: | 1 |

**************************************************************************

### PLAINTIFF'S REPLY TO DEFENDANT PETER TERRITO'S MEMORANDUM IN OPPOSITION TO MOTION TO REMAND

**MAY IT PLEASE THE COURT**:

Plaintiff Leigh Cole's claims against Territo[1] do not implicate the "government contractor defense" nor is there a causal nexus between those claims and actions taken at the behest of the government.  In addition, as this Honorable Court opined eleven years ago in *Bourgeois v. A.P. Green Indust.*, 96-3764 "L" (E.D. La. 1/15/96), the strict liability and negligence claims against Avondale and the negligence claim against Territo are not even in the "ball park" of the design defect cases that could serve as a proper basis for removal of this case to Federal Court (Rec. Doc. 16, Exhibit #3, p 32).  Consequently, this Honorable Court does not have federal question jurisdiction over this matter and the case must be remanded.

Plaintiff alleges that he was occupationally exposed to injurious levels of asbestos from working at Avondale Shipyards in 1966 and 1967 and that his exposure to asbestos at Avondale caused him to contract mesothelioma, a rare form of cancer caused only by asbestos exposure. Plaintiff names a number of defendants, but only Peter Territo, an Executive Officer of Avondale, removed the case on May 29, 2007, alleging that the action arises "under the

---

1 Only Defendant Territo and his insurer(s) timely filed a Notice of Removal.  Avondale was served on April 24, 2007, but failed to remove the case within thirty days of service.  Consequently, Plaintiff objects to any pleadings or arguments alleged by Avondale or its insurers, or on their behalf, as those arguments are not properly before the Court in this instance.

– 1 –

**EXHIBIT**

2

Constitution, laws or treaties of the United States" and involves persons acting under authority of the officer of the United States within the meaning of 28 U.S.C. § 1442.[2]

1.   **Federal Officer Jurisdiction: The Only Evolving Landscape in the Eastern District of Louisiana is the Growing Mountain of Orders and Reasons Uniformly Rejecting Territo's Argument**

Since this Honorable Court's ruling in *Bourgeois*, 96-3764 (E.D. La. 1/15/96), circumstances have not "evolved" and Territo has not received "conflicting treatment" in the Eastern District.   Unanimously, every judge who has heard this issue has found that Territo's removal fails on the first prong.[3]   Territo has not demonstrated that he was acting under the direction of a federal officer specific to the claims alleged in Plaintiff's Petition, namely, those dealing with the safety procedures and plans of Avondale. Claims against Territo include failure to provide Mr. Cole with a safe work place and safety equipment; failure to disclose, warn, or reveal medical and safety information regarding asbestos hazards and safety and health risks associated with asbestos; failure to properly supervise; failure to remove asbestos hazards from the work place; failure to provide a safe and suitable means of asbestos (i.e., failure to segregate work forces, failure to provide ventilation, and/or failure to provide respiratory equipment) (see Petition, ¶31).   Territo cannot overcome the long line of precedent addressing the very issues herein, which held that removal was improper.[4]

---

2 The applicable law in the instant case is the law in effect at the time Mr. Cole was exposed to asbestos. *Cole v. Celotex*, 599 So. 2d 1058 (La. 1992).  In addition, as Mr. Cole was exposed in 1966 and 1967, the law at that time allowed Mr. Cole to sue Avondale's executive officers, pursuant to *Canter v. Koehring Co.*, 283 So. 2d 716 (La. 1973).

3 As stated in Plaintiff's Memorandum in support of Motion to Remand, to prove federal officer jurisdiction, Territo must satisfy all three prongs of the *Mesa* test. *Mesa* provides a three pronged inquiry which requires the moving "person" acting "under a federal officer" to: (1) demonstrate that he acted under the direction of a federal officer; (2) raise a colorable federal defense to the plaintiffs' claims; and (3) demonstrate a causal nexus between plaintiffs' claims and acts he performed under color of federal office. *Crocker*, 852 F. Supp. at 1325. In this case, there is no dispute that the removing defendant is a "person" for purposes of the statute. However, all three *Mesa* factors must be met for removal to be proper.

4 *Gauthe v. Asbestos Corp.*, 1997 WL 3255, No. 962454 (E.D. La. 1997); *Quebedeaux v. Union Pacific Railroad*, No. 6:04cv2232 (W.D. La. 2004); *Bourgeois v. A.P. Green Industries Inc.*, No. 96-3764 (E.D. La. 1996); *Guidroz v. The Anchor Packing Co.*, No. 98-3709 (E.D. La. 1998); *Overly v. Raybestos-Manhattan*, No. C-96-2853 CI (N.D.

Furthermore, Territo's sworn testimony shows that the safety department at Avondale was not under the control of federal officers (see Rec. Doc. 16, Attachment #16; see also, Rec. Doc. 14, Attachment #17). The prior decisions analyzing what constitutes federal direction are clear: Territo is required to show more than 'general auspices' of a federal officer, or participation in a regulated industry. *Mouton v. Flexitallic, Inc.*, 1999 WL 225438 (E.D. La. 1999) (*citing Ryan v. Dow Chemical Co.*, 781 F.Supp.934, 946 (E.D.N.Y.1992). "Instead the defendant must show 'strong government intervention and the threat that a defendant will be sued in state court' based on actions which follow federal direction." *Mouton v. Flexitallic, Inc.*, 1999 WL 225438 (E.D. La. 1999) (*citing Fung v. Abex Corp.*, 816 F.Supp. 569, 572 (N.D.Ca.1992)). Territo's sworn testimony, in light of the requirements of proof, shows that the safety department at Avondale was not under the control of federal officers, and therefore, Territo cannot prove the first prong of the *Mesa* test.

Territo cites *Melford v. Territo*, 05-1405 (M.D. La. 1/31/06), to justify his removal of this case to Federal Court. According to Territo, in *Melford*, Judge Parker completely rejected the *Overly* test and denied remand. However, upon closer review of the *Melford* ruling, it is very clear that the court missed a critical distinction, which the Eastern and Western District Judges highlight in finding Territo fails to prove that he was acting under the direction of a federal officer.

The critical distinction is this: Territo's affidavit, which is attached to Territo's Opposition in this case, is not consistent with Territo's prior testimony, wherein he admits that

Cal., 1996); *Westbrook v. Asbestos Defendants*, 2001 WL 902642 (N.D. Cal. 2001*); Mouton v. Flexitallic, Inc.*, 1999 WL 225438 (E.D. La. 1999); *Porche v. Flexitallic, Inc.*, 1996 WL 603919 (E.D. La. 1996); *Mabile v. Hidalgo*, No. 95-2200.9 (W.D. La. 1995); *Hampton v. Owens-Illinois*, No. 06-10929, 2007 WL 274794 (E.D. La 1/29/07); *Bradley v. Northrop Grumman Systems Corp.*, No. 07-1422, 2007 WL 1115246 (E.D. La. 4/12/07); *Griffin v. Northrop Grumman Industries*, No. 06-9439, Sec. A (E.D. La. 12/15/06); *Landry v. Northrop Grumman Industries*, No. 06-9889, Sec. A (E.D. La. 12/15/06); *Sheppard v. Northrop Grumman Systems Corp.*, 2007-2208 (E.D. La. 5/24/07); and *Savoie v. Northrop Grumman Systems Corp.*, 2005-2086 (E.D. La. 7/13/05).

the Naval Officers did not control the safety department at Avondale Shipyard.[5]  Because of this inconsistency, the Eastern and Western District Judges find that Territo fails to establish that Avondale's safety and warning-related activities were under the requisite direction of a federal officer.[6]

Again, in the instant case, there is nothing in the record to establish that the safety procedures at issue were controlled by the government or related to government specifications in the building of ships at Avondale.  Indeed, Defendant Territo has admitted:

> Q. ... what I'm asking you is whether or not the Federal officers that were on board the vessels, the Naval inspectors, did they control the safety department at Avondale?

> A. No.

(See Rec. Doc. 16, Attachment #16, Territo Deposition, p. 135).  On April 12, 2007, Judge McNamara in *Bradley v. Northrop Grumman Systems Corp.*, No. 07-1422; 2007 WL 1115246 (E.D. La. 4/12/07), found that Avondale's safety department was not controlled by the federal government based on the same sworn testimony cited above (Rec. Doc. 16, Attachment #12).

In addition, no Eastern District Court has ever found that Territo satisfied the third prong of the *Mesa* test, namely, a causal nexus between plaintiff's claims and defendants' actions performed under the color of a federal office.  In particular, the Court has uniformly found that there is no causal nexus between the government's direction pursuant to ship construction contracts and plaintiff's claims alleging failure to warn and provide a safe work environment.[7]

---

5 Territo's Affidavit in the instant case only indicates that the federal officers had a "presence" at the shipyard and "conducted inspections."  Interestingly, in regard to the federal officers' work, the word "control," or any variation thereof, is absent from the affidavit (Rec. Doc. 20, Exhibit F).
6 It should also be noted that the same theme of inconsistency appears between Edward Blanchard's affidavit (Rec. Doc. 20, Exhibit E) and his sworn testimony (Rec. Doc. 14, Attachment #17).
7 *See Sheppard v. Northrop Grumman Systems Corp.*, 2007-2208 (E.D. La. 5/24/07) (Barbier, J.) (Because Territo and Avondale failed to demonstrate that the government exercised the requisite authority and control over Avondale's safety procedures and plans, there can be no causal nexus between the authority of the federal officer and plaintiffs' claims that defendants failed to use asbestos safely.) See also *Gauthe v. Asbestos Corp.*, 1997 WL 3255

2.  Plaintiff Is Not Alleging *Products* Strict Liability Claims Against Avondale or Territo.  Plaintiff Is Alleging *Premises* Strict Liability and Negligence Claims Against Avondale.  Plaintiff Is Alleging a Negligence Claim Against Territo

As already discussed above, the "government contractor defense" is not a colorable defense to Plaintiff's claims, but it is equally true that Territo cannot establish the causal nexus required by *Mesa, supra*.  This is due to the fundamental fact that Plaintiff's claims in this case are based solely upon Territo's failure to fulfill his safety responsibilities as it relates to the use of asbestos, and not simply upon Avondale's use of asbestos.[8]

Specifically, Plaintiff's claims against Avondale and Territo are set forth in Paragraphs 25 – 32 of Plaintiff's Petition for Damages (Rec. Doc. 1, Attachment #1).  As the Court can see, these allegations are grouped by headings.  The first set of allegations, Paragraphs 25 – 28, is entitled "**Strict Liability and Negligence of Avondale Industries, Inc.**" and applies only to Avondale.  In those allegations, Plaintiff asserts against Avondale both negligence claims and strict premise liability claims based upon Louisiana Civil Code article 2317.  The second set of allegations, Paragraphs 29 – 32, is entitled "**Negligence Action Against Avondale Industries, Inc., and Its Executive Officers**" and applies to both Avondale and to Territo.  In those allegations, which are summarized and pled in the disjunctive in Paragraph 31, Plaintiff only asserts a negligence claim against Territo.

A.    **Claims Against Avondale**

Clearly, Plaintiff makes a premises strict liability claim against Avondale based upon La. Civ. C. Art. 2317.  But, such a claim bears no resemblance to a product design defect claim as in

---

(E.D.La.1997)(Duval, J.)(finding no causal nexus under similar facts and circumstances); *Guidroz v. The Anchor Packing Co.*, (Lemelle, J.) (no causal nexus).

[8] By way of analogy, if Avondale used unsafe lifting devices and dropped a steel door on a worker during the construction of a vessel, even a Navy vessel, and the worker sued Avondale, Avondale could not argue the government contractor defense by saying that the Navy specified that it use a steel door and the injury resulted from a steel door.  Such an argument would fail because Avondale would not be liable for the use of a steel door, but rather the **unsafe** use of a steel door.

*Boyle* nor does it depend upon what the federal government may have directed Avondale to do or not to do. Counsel for Territo's attempt to portray Plaintiff's claim against Territo and Avondale as liability without fault (i.e., the mere presence of asbestos equates to liability) based solely upon the government-mandated use of asbestos is not accurate.

Strict liability is most certainly not "liability without fault." Under the old strict liability articles (pre-1996), lack of knowledge was not a defense to the custodian/owner of an unreasonably dangerous thing. That fact was the only difference between strict liability and negligence. Maraist and Galligan, *Louisiana Tort Law*, §14-2 (citing Thomas C. Galligan, Jr., *Strict Liability in Action: The Truncated Learned Hand Formula*, 52 La. L. Rev. 323 (1991)).

In alleging that "plaintiff also makes strict liability claims that seek to attach liability to Territo for the mere presence of asbestos at the plaintiff's workplace" (Rec. Doc. 20, p. 16), Counsel for Territo is apparently confusing strict liability with absolute liability, as in cases of ultrahazardous activities as in *Burton v. Conoco Offshore, Inc.*, 631 So.2d 1374 (La. App. 5th Cir. 1994). To the contrary, La. Civ. C. Art. 2317 has never been construed to impose a mode of strict liability which, upon the showing of causation, is absolute and unconditional. *Smith v. Reliance Ins. Co.* 431 So.2d 907, 910 (La. App. 2nd Cir. 1983). Instead, a strict liability claim based upon La. Civ. C. Art. 2317 is identical to a negligence claim except that the issue of knowledge regarding the danger is presumed with strict liability. *Kerry v. Basco*, 687 So.2d 420 (La. App. 3rd Cir. 1996). This well-known legal principle was recognized by Judge Duval when he remanded a nearly identical case on an identical petition, commenting, "Their [the plaintiffs'] claims are based on negligence; any claim brought under La. Civ. Code Art. 2317 'has never been construed to impose a mode of strict liability which, upon the showing of causation, is

absolute and unconditional'." (Exhibit 1, *Savoie v. Northrop Grumman Systems Corp.*, 2005-2086 (E.D. La. 7/13/05).

For a thing to be defective within the meaning of strict liability under La. Civ. C. Art. 2317 it must create an unreasonable risk of harm. *Loescher v. Parr*, 324 So. 2d 441 (La. 1975). In determining whether the risk of harm is unreasonable, the court must weigh the magnitude and the probability of injury against the burden of preventing the injury, and in applying the law to the facts of each particular case, the court must consider the moral, social and economic values, as well as the ideal of justice, in reaching an intelligent and responsible decision. Additionally, the mere fact that a thing creates a hazard does not necessarily mean it is defective within the meaning of strict liability. The key word is "unreasonable" and the plaintiff must show the risk created was unreasonable under all the circumstances. *Tracy v. Jefferson*, 523 So. 2d 266 (5th Cir. 1988) (*citing Entrevia v. Hood*, 427 So. 2d 1146 (La. 1983)).

Furthermore, not every minor imperfection or irregularity will give rise to strict liability. The defect must be of such a nature to constitute a dangerous condition, which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. In determining whether a given condition is unreasonably dangerous, the degree to which the danger may be observed by a potential victim who may then provide self-protection is a major factor. *Bennett v. City of Lafayette*, 635 So. 2d 515 (La. App. 3rd Cir. 1994).

Counsel for Territo appears to assert that all Plaintiff has to prove is that asbestos was present at Avondale, and because the government mandated it be used, the causal nexus element is satisfied. Again, counsel is confused. Strict premises liability in Louisiana requires more than simply showing that asbestos was there, and as in Plaintiff's allegations against Avondale, Plaintiff alleges far more than simply the presence of asbestos. Plaintiff alleges, and Louisiana

law requires him to prove, that the premises was unreasonably dangerous because an unsafe condition existed on it **and the owner/custodian failed to remedy it or warn of the danger**. The actions and inactions of Avondale's Safety Department regarding the safe use of asbestos are central to Plaintiff's claims against Territo and Avondale, and have nothing whatsoever to do with the Federal Government.

Therefore, while Plaintiff does allege strict premises liability against Avondale, those claims do not invoke either the government contractor defense nor provide a causal nexus between the claims and what the government may have directed Avondale to do or not do and certainly have nothing to do with Territo.

### B.    Claims Against Territo

The simple fact of the matter is that Plaintiff's claims against Territo are grounded solely in negligence (as defined and explained by the Louisiana Supreme Court in *Canter v. Koehring Co.*, 283 So. 2d 716 (La. 1973)).  Territo contends that the allegation of Paragraph 31 is to be read as if Plaintiff were asserting that Territo is strictly liable for the actions listed in subparagraphs (a) – (h).  However, contrary to Territo's reading of the Petition, the subject paragraph alleges multiple theories of law *in the disjunctive* against Avondale and Territo. Simply put, one cannot read Plaintiff's Petition for Damages, and particularly the allegations against Territo, and conclude that Plaintiff's case against Territo is riding upon the mere existence of asbestos-containing products used in the construction of vessels at Avondale.[9]

In sum, Territo essentially argues that products liability claims are subject to removal (*a la Fink, Delancy,* etc.), products liability claims are strict liability claims, La. Civ. C. Art. 2317 claims are strict liability claims, and therefore La. Civ. C. Art. 2317 claims are subject to

---

9 But, even if this Court were to nonetheless conclude that Plaintiff is in fact asserting a La. Civ. C. Art. 2317 strict liability claim, just as in the case of Avondale discussed in the previous pages of this Reply Brief, there is no federal jurisdiction here.

removal. That argument is nonsensical and simplistic. It simply can not be reasonably disputed that Plaintiff's claims against both Territo and Avondale are not based upon the mere existence of asbestos-containing products within the shipyard, but instead are based upon Territo's and Avondale's failure to safely work with those materials and warn those being exposed as a result of that unsafe work. As this Honorable Court opined over eleven years ago in *Bourgeois v. A.P. Green Indust.*, 96-3764 "L" (E.D. La. 1/15/96), the strict liability and negligence claims against Avondale and the negligence claim against Territo are not even in the "ball park" of the design defect cases that could serve as a proper basis for removal of this case to Federal Court (Rec. Doc. 16, Exhibit #3, p 32).

**3.      *Lalonde* and *McFarlain* Are Not Applicable**

Finally, every time Territo presents the *Lalonde* or *McFarlain* cases to a Judge in the Eastern District, the Judge has been "unpersuaded." First, *Lalonde* is not applicable because, in *Lalonde*, the government controlled safety matters at the government-owned facility at issue in that case. The Avondale cases are different because Avondale is a privately-owned shipyard that contracts with private and public interests, and in which safety officers such as Territo operate wholly independent of any Government control.

Second, *McFarlain* is inapposite because the court, without any analysis or case law in support of its position, interpreted plaintiffs' strict liability allegations against Avondale to include a claim that Avondale was liable simply because asbestos was used at the facility. As stated above, the strict liability claim alleged in the captioned case is not an allegation that Avondale is liable because asbestos was present at the shipyard. Rather, the claim arises out of the duty of an owner or person having custody of immovable property to keep such property in a reasonably safe condition. The owner/custodian must discover any unreasonably dangerous

condition on the premises and either correct the condition or warn potential victims of its existence. This duty is the same under both the strict liability theory of La. Civ. C. Art. 2317 and the negligence liability theory of La. Civ. C. Art. 2315. *Anderson v. Tenneco Oil*, 826 So.2d 1143, 1152 (La. App. 4th Cir. 2002). As Judge Duval stated on a nearly identical set of circumstances in *Savoie*, "Their [plaintiffs'] claims are based on negligence; any claim brought under La. Civ. Code Art. 2317 'has never been construed to impose a mode of strict liability which, upon the showing of causation, is absolute and unconditional.' *Smith v. Reliance Ins. Co.*, 431 So.2d 907 (La.App.2nd Cir.1983)." (Exhibit 1, *Savoie v. Northrop Grumman Systems Corp.*, 2005-2086 (E.D. La. 7/13/05).

Mr. Cole, in the instant matter, does not make any design or manufacturing defect claims against defendants. Plaintiff's claim is based in negligence and is based on Territo's and Avondale's failure to use asbestos safely and not based simply upon their use of asbestos.

Wherefore, for the reasons stated herein, Plaintiff respectfully re-urges his request that the Court grant his Motion to Remand and send this case back to state court.

Respectfully submitted,

**Landry & Swarr, LLC**
By:  /s/ David R. Cannella
MICKEY P. LANDRY, Bar No. (22817)
FRANK J. SWARR, Bar No. (23322)
DAVID R. CANNELLA, Bar No.(26231)
1010 Common Street, Suite 2050, NOLA 70112
Phone: (504) 299-1214 / Fax:(504) 299-1215
**ATTORNEY FOR PLAINTIFF LEIGH COLE**

**CERTIFICATE OF SERVICE**

I hereby certify that on this ___18[th]___ day of June, 2007, a copy of the foregoing has been filed with the United States District Court for the Eastern District of Louisiana by electronic case filing/case management. All Counsel of record are being served this filing by either the court's electronic filing system or by telefaxing and/or placing a copy of same in the United States mail, properly addressed and with adequate postage affixed thereon.

/s/ David R. Cannella

**3**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LEIGH COLE, SR. | * | CIVIL ACTION NO. 2:07-cv-3049 |
| | * | |
| VS. | * | JUDGE: FALLON |
| | * | SECTION: L |
| | * | |
| NORTHROP GRUMMAN SHIP, | * | MAGISTRATE: SHUSHAN |
| SYSTEMS, INC., ET AL | * | DIVISION: 1 |

**************************************************************************

### PLAINTIFF'S POST-HEARING MEMORANDUM
### IN SUPPORT OF MOTION TO REMAND

**MAY IT PLEASE THE COURT**:

Plaintiff respectfully submits this Post-Hearing Memorandum to briefly address two issues raised by the Court at the June 20, 2007 oral argument.

**1.     The MDL Issue**

The Court indicated at the hearing that, in light of the fact that the captioned matter was subject to the MDL proceedings, it was inclined to let the case get transferred to the MDL and have the transferee judge address the remand issue.  Plaintiff respectfully submits that this Honorable Court should address the remand issue now as the case is never permanently transferred off of the Court's docket, but rather, is only temporarily transferred to the MDL for the limited purpose of discovery and settlement negotiations.

The asbestos products liability litigation (MDL-875) was created because asbestos cases pending in various federal district courts, in theory, involve one or more common questions of fact such that the actions should be transferred to one federal district for coordinated or consolidated pretrial proceedings.  The purposes of this transfer or "centralization" process are to avoid duplication of discovery, to prevent inconsistent pretrial rulings, and to conserve the resources of the parties, their counsel and the judiciary. ***Most importantly, transferred actions***

– 1 –



*not terminated in the MDL are remanded to their originating transferor districts by the MDL at or before the conclusion of centralized pretrial proceedings.* MDL Brochure, *An Introduction    to    the    Judicial    Panel    on    Multidistrict    Litigation,* http://www.jpml.uscourts.gov/General_Information/PanelBrochure-06-07.pdf (emphasis added).

Thus, this case would actually be tried by this Honorable Court if federal jurisdiction was to attach and thus, this is not a true "transferor/transferee" situation. Further, because Mr. Cole is terminally ill and entitled to expedited scheduling of his claim under Louisiana law, it is critical that the threshold question of whether there is federal jurisdiction or not be decided as quickly as possible. These considerations have lead to the creation of overwhelming Eastern District and Western District precedent on substantially similar records (approximately twenty cases remanded in this district alone) in which the court to which the case is originally removed makes that threshold determination.

Plaintiffs respectfully request that the Court determine the remand issue now as this case, even if transferred to the MDL, will return to this Court after discovery and settlement negotiations, provided the MDL judge does not send the case back to state court in the interim.

**2.    The Strict Liability Issue**

The other issue raised by the Court was whether Plaintiff had made strict liability claims against Territo and whether such claims would distinguish this case from the legion of prior cases that have been remanded. The simple fact of the matter is that Plaintiff has not made any such claims against Territo, and even if he had done so, those claims are not analogous to the design or manufacturing defect claims that have supported federal jurisdiction in other cases.

Plaintiff Leigh Cole does not make any design or manufacturing defect claims against defendants. Plaintiff's claim is based in negligence and is based on Territo's and Avondale's

– 2 –

failure to use asbestos safely and not based simply upon their use of asbestos.  At the hearing,

counsel for Territo alleged, in a very limited and myopic reading of Plaintiff's Petition, that in

¶31 Plaintiff is a strict liability claim against the executive officers.  However, Plaintiff's Petition

makes no such allegation.  ¶31 of Plaintiff's Petition, in its entirety reads as follows:

31.    Avondale and its Executive Officers negligently, recklessly, willfully
and/or because of gross and wanton negligence, fault, or strict liability,
failed to properly discharge their duties to the Petitioner in the following:

a.    failed to provide the Petitioner with a safe work place;
b.    failed to provide the Petitioner with safety equipment;
c.    failed to provide the Petitioner with correct, adequate, or proper
safety equipment;
d.    recklessly and negligently failed to disclose, warn or reveal critical
medical and safety information to the Petitioner regarding asbestos
hazards in general and with regard to those specific hazards at the
Petitioner's worksite;
e.    recklessly concealed and negligently omitted to reveal critical
medical and safety information from the Petitioner regarding the
safety and health risks associated with the asbestos and asbestos-
containing products at his worksites;
f.    failed to timely remove asbestos hazards from the work place;
g.    failed to properly supervise or monitor the work areas for
compliance with safety regulations; and
h.    failed to provide a safe and suitable means of eliminating the
amount of asbestos dust in the air.

As the Court can see, the allegations in this summarizing paragraph arise out of Pete

Territo's failure to provide a safe work environment.  Plaintiff's claims against Territo are

grounded solely in negligence pursuant to *Canter v. Koehring Co.*, 283 So. 2d 716 (La. 1973).

Territo's contention that the allegation of ¶31 is to be read as if Plaintiff were asserting that

Territo is strictly liable for the actions listed in subparagraphs (a) – (h) is not accurate as the

subject paragraph alleges multiple theories of law *in the disjunctive* against Avondale and

Territo.  Simply put, one cannot read Plaintiff's Petition for Damages, and particularly the

allegations against Territo, and conclude that Plaintiff's case against Territo is riding upon the mere existence of asbestos-containing products used in the construction of vessels at Avondale.

Furthermore, ¶32 of the Petition confirms Plaintiff's position that the claims against Territo are grounded solely in negligence. ¶32 describes the acts enumerated in ¶31 as "acts of negligence." ¶32 states: "The above-described ***negligence***, fault and willful misconduct of these defendants were a proximate cause of the Petitioner's injuries" (emphasis added).

In *Crocker*, Judge Livaudais recognized that certain manufacturing and design defect claims may give rise to Federal Question jurisdiction. *Crocker v. Borden, Inc.*, 94-1303, 852 F. Supp. 1322 (E.D. La., 5/6/94). However, later in *Porche*, Judge Livaudais found that the absence of a manufacturing or design defect claim required the plaintiffs claim against Avondale and its executive officers to be remanded back to State Court. *Porche v. Flexitallic, Inc.*, 1996 WL 603919 (E.D. La. 1996). This distinction was not lost on Judge Porteous, who in *Mouton v. Flexitallic, Inc.*, 1999 WL 225438 (E.D. La. 1999), remanded plaintiffs claims against Avondale and its executive officers because no design defect or manufacturing claims were made against the Avondale Interests, while at the same time refused to remand the *Fink* case due to the allegation of a manufacturing and defective design claim advanced against General Electric for its turbines. *Fink v. Todd Shipyards*, 04-430, 2004 WL 856734 (E.D. La. 4/20/04).

Territo essentially argues that products liability claims are subject to removal (*a la Fink, Delancy,* etc.), that products liability claims are strict liability claims, that La. Civ. C. Art. 2317 claims are strict liability claims, and therefore, La. Civ. C. Art. 2317 claims are subject to removal. That argument is nonsensical and simplistic. Plaintiff's claims against both Territo and Avondale are not based upon the mere existence of asbestos-containing products within the

shipyard, but instead are based upon Territo's and Avondale's failure to safely work with those materials and warn those being exposed as a result of that unsafe work.

Notwithstanding all of the above, assuming Plaintiff's allegations are contorted in such a way to be deemed a claim against Pete Territo for strict liability (which Plaintiff unequivocally denies), Territo must still satisfy the *Mesa* requirements to prove Federal Question jurisdiction. Assuming Plaintiff made a strict liability claim against the executive officers, Territo still cannot meet all of the *Mesa* elements of jurisdiction.

The sole distinction between a negligence claim under La. Civ. C. Art. 2315 and a strict *garde* liability claim under La. Civ. C. Art. 2317 is that **strict liability serves only to relieve the plaintiff of proving that the owner or guardian knew or should have known of the risk involved**. *Kent v. Gulf States Utilities Co.*, 418 So. 2d 493 (La. 1982) (emphasis added). In *Kent*, Justice Lemmon wrote that in strict liability, a defendant will be presumed to have knowledge of the injury-causing quality or propensity of the thing, and then ask, given that knowledge, whether the defendant acted reasonably in the manner of his maintenance of it.

Returning to the case before the Court, assuming Mr. Cole made a strict liability claim against Territo, the only difference from the negligence claim would be that knowledge of the injury-causing quality of asbestos would be imputed to Territo. However, even when Territo is presumed to know of the dangerous condition, Territo cannot prove to this Honorable Court that he was acting under the direction of a federal officer because Territo's sworn testimony shows that the safety department at Avondale was not under the control of federal officers (see Rec. Doc. 16, Attachment #16; see also, Rec. Doc. 14, Attachment #17).

As this Honorable Court pointed out in *Bourgeois*, the allegation is that Territo did not warn the workers of the risk and/or supply them with some safety provisions to guard against the

-5-

hazard.  Workers can safely work with and around asbestos if provided with the proper warnings, information, industrial hygiene controls, and gear to inform them of the problem.  (Rec. Doc. 16, Exhibit #3, p. 32, *Bourgeois v. A.P. Green Indust.*, 96-3764 "L" (E.D. La. 1/15/96).   This Honorable Court is urged to revisit its ruling in *Bourgeois* and its analysis of the negligence claims made against Avondale and Territo, and now apply that analysis to strict *garde* liability claims made pursuant to La. Civ. C. Art. 2317, where the only difference is the imputed knowledge of the harm, and the Court will see that there simply can be no difference in the outcome of the *Mesa* analysis.

Wherefore, for the reasons stated herein, Plaintiff respectfully re-urges his request that the Court grant his Motion to Remand and send this case back to state court.

Respectfully submitted,

**Landry & Swarr, LLC**
By:  /s/ David R. Cannella
MICKEY P. LANDRY, Bar No. (22817)
FRANK J. SWARR, Bar No. (23322)
DAVID R. CANNELLA, Bar No.(26231)
1010 Common Street, Suite 2050, NOLA 70112
Phone: (504) 299-1214 / Fax:(504) 299-1215
**ATTORNEY FOR PLAINTIFF LEIGH COLE**

### CERTIFICATE OF SERVICE

I hereby certify that on this ___21st___ day of June, 2007, a copy of the foregoing has been filed with the United States District Court for the Eastern District of Louisiana by electronic case filing/case management.  All Counsel of record are being served this filing by either the court's electronic filing system or by telefaxing and/or placing a copy of same in the United States mail, properly addressed and with adequate postage affixed thereon.

/s/ David R. Cannella

**4**

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LEIGH COLE, SR.** | * | **CIVIL ACTION NO. 2:07-cv-3049** |
| | * | |
| **VS.** | * | **JUDGE:**      **FALLON** |
| | * | **SECTION:**   **L** |
| | * | |
| **NORTHROP GRUMMAN SHIP,** | * | **MAGISTRATE:**   **SHUSHAN** |
| **SYSTEMS, INC., ET AL** | * | **DIVISION:**       **1** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF'S MEMORANDUM
## IN SUPPORT OF SUPPLEMENTING THE RECORD

**MAY IT PLEASE THE COURT**:

Plaintiff respectfully moves this Honorable Court for permission to supplement the record in the captioned matter for the reasons that follow.

At the June 20, 2007 Hearing on Plaintiff's Motion to Remand, counsel for Plaintiff represented to the Court that Mr. Cole did not allege, and was not pursuing, a strict liability claim against the Avondale safety director, Peter Territo. Plaintiff maintained that the allegations in the Petition could not be reasonably read to include a strict liability claim against the executive officers.

After the hearing, surprisingly, undersigned counsel discovered proof that Pete Territo through one of the removing attorneys in the captioned matter, Mr. Gary Lee, agrees. As the Court can see from the attached exhibit, in the *Savoie* case, plaintiff made an identical set of allegations against Avondale and its executive officers (Exhibit 1, relevant excerpts from the *Savoie* Petition). In response to the Petition allegations, Territo filed an "**Exception of No Cause of Action - Strict Liability**" for the executive officers, admitting that the allegations made in paragraphs 29-32 set forth claims of negligence only. Territo specifically identified ¶31



EXHIBIT
4

-1-

and remarked that plaintiff failed to make a strict liability allegation. In *Savoie*, counsel for

Territo stated:

> Although plaintiff's allegations regarding the alleged Avondale Executive
> Officers set forth claims of negligence, ***there are no allegations on which a claim
> for strict liability against the alleged acts and omissions of the executive officers
> could be based*** (emphasis added) (Exhibit 2, Territo's Exceptions and
> Memorandum in Support; see specifically, memorandum at p. 3).

Wherefore, for the reasons stated herein, Plaintiff respectfully re-urges his request that

the Court grant his Motion to Remand and send this case back to state court.

Respectfully submitted,

**Landry & Swarr, LLC**
By:  /s/ David R. Cannella
MICKEY P. LANDRY, Bar No. (22817)
FRANK J. SWARR, Bar No. (23322)
DAVID R. CANNELLA, Bar No.(26231)
1010 Common Street, Suite 2050, NOLA 70112
Phone: (504) 299-1214 / Fax:(504) 299-1215
**ATTORNEY FOR PLAINTIFF LEIGH COLE**

### CERTIFICATE OF SERVICE

I hereby certify that on this ___22nd___ day of June, 2007, a copy of the foregoing has been filed with the United States District Court for the Eastern District of Louisiana by electronic case filing/case management. All Counsel of record are being served this filing by either the court's electronic filing system or by telefaxing and/or placing a copy of same in the United States mail, properly addressed and with adequate postage affixed thereon.

 /s/ David R. Cannella