MDL 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 16 2007

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION
MDL DOCKET NO. 875

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

IN RE ASBESTOS PRODUCTS )
LIABILITY LITIGATION )
(NO. VI) )
——————————————————— )
)
This Document Relates To: )
——————————————————— )          MDL. 875

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
Broward Circuit Court Case No. 07-18864

CASE NO: 07-61264-CIV-Seitz

JACKIE REEVES, Individually and        :
Personal Representative of the Estate   :
JOHNIE REEVES                           :
                                        :
        Plaintiffs,                     :
                                        :
-vs.-                                   :
                                        :
AMERICAN OPTICAL CORP. et al.,          :
                                        :
        Defendants,                     :
——————————————————————— :

RECEIVED CLERK'S OFFICE
2007 OCT 16 A 10: 17
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**MOTION TO VACATE THE
CONDITIONAL TRANSFER ORDER**

Plaintiffs, pursuant to Rule 12(c) of the Rules of Procedure of the Judicial Panel on

Multidistrict Litigation, move the Panel to vacate its order of September 28th, 2007, conditionally

transferring the above-captioned case to the United States District Court for the Eastern District

of Pennsylvania. This motion is based on the attached Brief in Support of Motion to Vacate

PLEADING NO. 5215

Conditional Transfer Order and such other materials as may be presented to the Panel at the time of the hearing on the motion.

Pursuant to Rule 12(c), movants request the Clerk to set this motion for hearing at the next session of the Panel.

Respectfully submitted,

**THE FERRARO LAW FIRM, P.A.**
*Attorneys for Plaintiffs*
4000 Ponce De Leon Boulevard, Suite 700
Miami, Florida 33146
Telephone (305) 375-0111
Facsimile (305) 379-6222

By:

**David A. Jagolinzer, Esq.**
Florida Bar No. 181153
Email: daj@ferrarolaw.com
**Case A. Dam, Esq.**
Florida Bar No. 756091
Email: cxd@ferrarolaw.com

Mailed to:

Jeffery N. Luthi
Clerk of the Panel
Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E.,
Room G-255, North Lobby
Washington, D.C 20002



JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION     OCT 1 6 2007

MDL DOCKET NO. 875

FILED
CLERK'S OFFICE

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

| | |
|---|---|
| IN RE ASBESTOS PRODUCTS<br>LIABILITY LITIGATION<br>(NO. VI)<br><br>This Document Relates To: | )<br>)<br>)<br>)<br>)<br>)<br>) |

MDL. 875

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
Broward Circuit Court Case No. 07-18864

CASE NO: 07-61264-CIV-Seitz

JACKIE REEVES, Individually and          :
Personal Representative of the Estate     :
JOHNIE REEVES                             :
                                          :
        Plaintiffs,                       :
                                          :
-vs.-                                     :
                                          :
AMERICAN OPTICAL CORP. et al.,           :
                                          :
        Defendants,                       :
                                          :

## PLAINTIFFS' BRIEF IN SUPPORT OF VACATING CONDITIONAL TRANSFER ORDER (CTO-290)

## I.      PRELIMINARY STATEMENT

Plaintiffs respectfully file this brief in support of their Motion to Vacate the Conditional Transfer Order (CTO-231) entered and mailed by the Judicial Panel on Multidistrict Litigation September 28, 2007. Pursuant to Panel Rules 5.12(a), 5.13 and 7.4(d), this Brief to Vacate the Conditional Transfer Order is being filed in support of plaintiff's Motion to Vacate, and her

1

previous Opposition, filed in accordance with Panel Rule 7.4(c)(*See* notice attached as Exhibits A). This submission is being filed within 15 days of the filing of the Notice of Opposition. For the reasons stated below, the Conditional Transfer Order should be vacated so that plaintiffs can proceed with the timely resolution of their claims in *state* court.

Plaintiffs have filed a motion for remand, which is presently scheduled for hearing on October 23, 2007, in the District Court for the Southern District of Florida. Despite entry of the Panel's Conditional Transfer Order before the district court judge has had the chance to rule on Plaintiffs' motion, the District Court for the Southern District of Florida has not lost jurisdiction over Plaintiffs' case and, thus, its ability to determine if Plaintiffs' Motions for Remand should be granted. Faulk v. Owens-Corning Fiberglas Corp., et al., 48 F.Supp.2d 653, 657 (E.D. Tex. 1999); *See* Panel Rule 1.5, 181 F.R.D. 1,3 (1998); *See also* Bartley v. Borden, Inc. et al., 1996 WL 68482 (E.D. La. 1996)(citing Panel Rule 18 which states that the pendency of a conditional transfer order "does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court" within the prescribed fifteen day period.)

Plaintiffs filed their Notice of Opposition within the prescribed fifteen-day period. Consequently, transmittal of the CTO was stayed and continues to be stayed until further action by this Panel. Finally, since the cases have not been finally transferred, but only "provisionally" transferred, pending a final decision on transfer, they are still technically pending in the original district court to which they were removed. Thus, not only does the United States District Court judge retain jurisdiction to rule on the Motion for Remand, but it may more promptly do so; thus preserving Plaintiffs' right to a timely resolution of her claims.

## II.   ARGUMENT IN SUPPORT OF VACATING CONDITIONAL TRANSFER ORDER 290

Pursuant to 28 U.S.C. § 1407(a), a case may be transferred to the MDL if the court makes an affirmative finding that the transfer: (1) "will be for the convenience of the parties and witnesses;" and (2) "will promote the just and efficient conduct of such actions." 29 U.S.C. § 1407(a). Transfer to the MDL is inappropriate in this case, as neither of these preconditions to transfer is satisfied.

### A.   Transfer Of This Case To The MDL In Philadelphia Will Not Be Convenient For The Parties or Witnesses

Transfer of this case from the State of Florida will *not* "be for the convenience of parties and witnesses" and, as the first precondition for transfer to the MDL is not met, transfer should not be allowed. 28 U.S.C. § 1407(a). Mrs. Reeves filed her lawsuit in Florida's 17th Judicial Circuit in and for Broward County, Florida, her home state, and her preferred choice of jurisdiction and venue. Aside from his time spent in the Navy, Mr. Reeves and his wife have lived over half their lives in Florida. Mr. Reeves was significantly exposed to asbestos in Florida, died in Florida and was later buried in Florida. His widow and children remain in the state of Florida; at least five of Mr. Reeves' co-workers who will testify in this matter reside in Florida; and at least one of the Defendants party to Mrs. Reeves action never did business outside the state of Florida. Plaintiffs and Defendants each have experts who reside in South Florida, and despite the fact that a few these experts and lay witnesses may be traveling in from various parts of the country for trial, there no little reason to suspect that traveling to Philadelphia for trial is more convenient than flying into Ft. Lauderdale's Airport which is four miles away from the Broward County Courthouse.

Considering these simple and indisputable facts, transfer to the MDL cannot be considered convenient for the parties or witnesses and transfer should not be allowed.

2.  ***Transfer of this case to the MDL. will not promote the just and efficient conduct of this action.***

Transfer to the MDL will not "promote the just and efficient conduct of [this] action." 28 U.S.C. § 1407(a). Since the second precondition for transfer cannot be satisfied, transfer should not be allowed.

The attempted removal of asbestos cases is all too common tactic used by asbestos-product manufacturers to delay or deny plaintiffs' rights to a trial on the merits of their state claims. Asbestos-product manufacturers seek to avail themselves of the "black hole" that is the federal asbestos MDL. *See*, Judge Davidson's Order attached as <u>Exhibit A.</u>; *See*, Copy of Defense Research Institutes', "Asbestos Medicine Faculty Listing & Seminar Schedule" as <u>Exhibit B</u>, p. 4. Once removed and assigned to the MDL, asbestos cases that would have proceeded to a timely trial in state court are forever mired in inactivity. Defendants benefit from the passage of time, while plaintiffs suffer the loss of their opportunity to put their claims to a jury. As Judge Michael Mills of the United States District Court for the Northern District of Mississippi stated:

> [A]sbestos removal litigation ... generally has less to do with effecting valid removals than with attempting to obtain a transfer of the case to a multi-district litigation (MDL) court, where the case generally languishes for a protracted period of time. While the desire of defendants to reach the comparative safety of an MDL court is understandable, their repeated efforts to do so, regardless of the jurisdictional merits, has resulted in an air of skepticism among the federal courts regarding the validity of most asbestos removals.

Rosamond v. Oarlock Sealing Technologies. Inc., No. 3:03CV235, 2004 WL 943924 at *4 (N.D. Miss, Apr. 5, 2004).

Asbestos cases removed to federal court are inevitably transferred to MDL-875. As this Panel is well aware, cases languishing in MDL-875 are not only never tried, but indeed virtually nothing happens to them at all. Chief Judge Hornsby of the United States District Court in Maine has recognized this very problem:

> If these claims return to state court, they will proceed to resolution. If they remain in federal court they will encounter significant delay upon theft transfer through the panel on multidistrict litigation to the Eastern District of Pennsylvania where no asbestos trials or discovery takes place in deference to global settlement efforts. This delay is of economic benefit to the defendants and imposes costs on the plaintiffs.

In re Maine Asbestos Cases, 44 F.Supp.2d 368, 374 (D.Me 1999).

Although approximately 103,000 asbestos cases have been transferred to MDL-875 since its inception, no common or global discovery has been sought or obtained by either the plaintiffs or the defendants. Nor has the asbestos Plaintiffs' Steering Committee met since 1993. The defendants may argue that this case can be tried if it is remanded from MDL-875. As the defendant who initially removed this case is well aware, while remand may be a theoretical possibility, it is not a real possibility. The MDL Court has made its intentions clear. According to orders issued by the former MDL Judge, remands are only for the "sick and dying," and only then *after* a conclusion that all settlement avenues have been decided. See Memorandum Opinion and Order, Judge Charles Weiner, Carlough et al v. Amchem Products. Inc. et al., C.A. No. 93-2 15, U.S. District Court for the Eastern District of Pennsylvania, April 1993, at 8 attached as Exhibit C. All other motions for remand are "routinely denied." Id. at 8.

4

As further ordered by the former MDL Judge, it is the Court's stated intention to resolve MDL-875 cases through *negotiation*, not trial. Indeed, MDL-875 Administrative Order No. 3, which establishes a priority system for resolving asbestos cases, discusses resolution by settlement only. *See*, Administrative Order No. 3, *In re Asbestos Products Liability Litigation* (No. VI), in the U.S. District Court for the Eastern District of Pennsylvania as Exhibit D. If there was any doubt that trial is not a realistic option for victims whose cases are transferred to MDL-875, those doubts were resolved when John F. Nangle, the then-Chair of the Multidistrict Litigation Panel, stated in reference to MDL-875, "that anything but trial is the answer." *See*, Excerpt from Transcript of Hearing, Judicial Panel on Multidistrict Litigation, *In re Asbestos Products Liability Litigation* (No. VI), Middle District of Florida, January 29, 1999, at 69 as Exhibit E.

The data collected by the Judicial Panel on Multidistrict Litigation clearly illustrates what an empty promise MDL-875 is, even for the sick and dying. By August 10, 2000, more than 86,000 cases had been transferred to MDL-875. Yet, during Fiscal Year 1998 (October 1, 1997-September 30, 1998, **only four cases were remanded back for trial. In Fiscal Year 1999, only six cases were remanded back for trial**. *See*, Letter from Ariana Estariel, Judicial Panel on Multidistrict Litigation, to Kay Gunderson Reeves, August 10, 2000, at 2 (results of data request) as Exhibit F. Though the data for FY2000 show an increase in remand activity, the number remanded as of the date of Ms. Estariel's letter was only 0.2294% of the total number of cases transferred to MDL-875. Id.

A recent summary of additional docket information from the MDL Court is instructive. See Summary attached here as Exhibit G. Between September 30, 2003 and September 30, 2004, only 20 of the 32,542 pending cases were remanded (<0.1% of pending MDL cases, or fewer than one-in-a-thousand). Between the same dates in 2004 and 2005, only an additional 61 cases were remanded (<0.2% of pending cases, or fewer than two-in-a-thousand). Between in 2005 and 2006, a scant 6 cases were remanded (<0.02% of pending cases, or **fewer than two-in-ten thousand**). The total numbers of transferred cases and pending cases have risen each year. And if one looks at the totals, it is plain to see that over 99% of all the pending cases remain dormant for years, if not forever. These statistics completely undermine any argument that transfer to the MDL will, "promote the just and efficient conduct of [this] action."

Remand is an empty dream for victims unlucky enough to have their cases transferred to MDL-875. Indeed, it is to achieve this very result (referral to the black hole that is MDL-875) that this removal was pursued in the first place. The plaintiffs' fate is best summed up by a concise statement from the United States District Court for the Southern District of Texas, which found that if the cases before that court were not remanded,

> [the case] will surely be transferred to the MDL Court in the Eastern District of Pennsylvania. There are thousands of asbestos cases pending in that forum, and, if history be any indicator, Plaintiffs claims against the Remaining Defendants will not be heard for many years. Keeping these claims in federal court will not increase efficiency and expediency. Rather the opposite is true.

Madden v. Able Supply Company. 205 F.Supp.2d 695, 702 (May 27, 2002).

The conditions for transfer to the MDL have not been met, and indeed, cannot be met. Transfer is therefore inappropriate and should not be allowed.

**B.      Transfer to the MDL Would Violate the Plaintiffs' Constitutional Rights.**

Transferring this case to the Asbestos MDL would violate the plaintiffs' constitutional rights under Article 1 § 21 and 22 of the Florida Constitution and the Seventh and Fourteenth Amendments to the United States Constitution.

> *1.      Transfer to the MDL would violate the plaintiffs' State right of redress or "right of open access to the courts."*

Article 1, § 21 of the Florida Constitution creates a "right of redress" or "right to open access to the courts" and provides that "The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." Florida's right of redress is an explicit constitutional guarantee of open access to the state courts to pursue any cause of action that existed at the time of the constitution's adoption. DR Lakes Inc. v. Brandsmart U.S.A. of West Palm Beach, 819 So.2d 971 (Fla. 4th DCA 2002)("the right to go to court to resolve our disputes is one of our fundamental rights" citing Psychiatric Assocs. v. Siegel, 610 So.2d 419, 424(Fla. 1992)).  Transfer to the MDL would wholly undermine Mrs. Reeves right of redress.

Although, "A constitutional provision insuring a certain remedy for all injuries or wrongs does not command continuation of a specific statutory remedy...in a jurisdiction wherein the constitutional guaranty applies to the legislature as well as to the judiciary...it has been held that

the guaranty precludes the repeal of a statute allowing a remedy where the statute was in force at the time of the adoption of the Constitution. Furthermore, . . . the guaranty also prevents, in some jurisdictions, the total abolition of a common-law remedy.' Kluger v. White, 281 So.2d 1, 3-4 (Fla. 1973)(citing to 16A C.J.S. Constitutional Law § 710, pp. 1218-1219) Florida is such a jurisdiction, and Florida's right of access provision precludes abolishing litigants' rights without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless an overpowering public necessity requires abolition, and no alternative method of meeting such public necessity can be shown. Id. at 4.

Vanquishing Plaintiffs' case to the MDL-875 is not a reasonable alternative to the Reeves' right to bring their case to trial. The statistics cited above show that there is virtually no movement of cases in the MDL. Upon transfer to the MDL, the plaintiffs' case will be mired in the MDL quicksand and all remedies against these particular defendants will be effectively extinguished. This systemic inertness violates the plaintiffs' State constitutional rights to redress and open access to the courts. Such an obvious injustice should not be allowed to stand.

### 2. *Transfer to the MDL would violate the plaintiffs' right of trial by jury as guaranteed by the Seventh Amendment to the U S. Constitution and Article 1, § 19 of the Connecticut Constitution.*

The Seventh Amendment to the United States Constitution guarantees that "[i]n Suits at common law....the right of trial by jury shall be preserved...." U.S.C.A. Const. Amend. VII. The Florida Constitution also protects this fundamental right: "The right of trial by jury shall be secure to all and remain inviolate." Fla. Const. Article 1, § 22. Transfer of the plaintiffs' case to the MDL would violate the plaintiffs' fundamental right to trial by jury, as guaranteed by the Seventh Amendment to the United States Constitution and Article 1, § 22 of the Florida Constitution. The Seventh Amendment enshrines and protects one of our most cherished and fundamental rights — the right of trial by jury — that was deemed so crucial to our new republic that the Founding Fathers included it among the first ten amendments — the Bill of Rights — that were added to the Constitution shortly after its ratification. With the current state of the MDL (indeed, the state that has persisted for many years now), there is no realistic hope of any trial, let alone a jury trial, for the vast majority of plaintiffs banished to Philadelphia.

In 1787, no less an authority than Thomas Jefferson explained the fundamental importance of the right to trial by jury: "A bill of rights [should provide] clearly and without the aid of sophisms for... the eternal and unremitting force of the habeas corpus laws, and trials by jury in all matters of fact triable by the laws of the land and not by the law of nations." Thomas Jefferson to James Madison, 1787, ME 6:387 (http://etext.virginia.edu/~Jeffersonquotations/jeff1 520.htm). Two years later, Jefferson again intoned his unflinching faith in the bedrock principle of the jury system: "I consider trial by jury as the only anchor ever yet imagined by man, by which a government can be held to the principles of its constitution." Thomas Jefferson to Thomas       Paine,      1789,      ME      7:408,      Papers      15:269 (http://etext.virginia.edu/jefferson/quotations/jeff52O.htm).   The   case   before   this   Court represents more than simple ideological or historical platitudes about the jury system; it reveals the actual application of these fundamental, first principles: that all people should have equal access to the courts to seek redress for their legitimate grievances and that the government shall deny no person the right to trial by jury.  The data cited above from the MDL's own docket reveal the plaintiffs' words to be true. The MDL is not a proper forum for this case. The MDL does not move cases. The MDL is a "black hole" for asbestos cases. And the MDL denies plaintiffs their fundamental rights to redress, open access to the courts and trial by jury.

Some reasonable delay or alternative process in jury trials has sometimes been accepted as constitutional. See Woods v. Holy Cross Hospital, 591 F.2d 1164, 1178-Si (5th Cir. 1979) (mediation requirement for medical malpractice case prior to jury trial held constitutional); Crateo. Inc. v. Intermark. Inc., 536 F.2d 862, 867-68 (9th Cir. 1976), cert. denied, 429 U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180 (1976) (referral of complex matter to special master prior to jury trial held constitutional); In re Peterson, 253 U.S. 300, 304,40 S.Ct. 543,64 L.Ed. 919 (1920) (court-appointed auditor to conduct initial investigation and file report held constitutional). However, the interminable delay wrought by transfer to the MDL is not reasonable, nor constitutional, and it effectively denies the plaintiffs their rights to trial by jury.

The plaintiffs' assertions are not made in a vacuum or invented out of whole cloth. As we saw in Section A of this brief, even the federal courts themselves have acknowledged that the MDL is a broken quagmire. See Rosaniond v. Garlock Sealing Technologies. Inc., No. 3:03CV235, 2004 WL 943924 at *4 (N.D. Miss, Apr. 5, 2004); In re Maine Asbestos Cases, 44 F.Supp.2d 368, 374 (D.Me 1999); Madden v. Able Supply Company. 205 F.Supp.2d 695, 702

(May 27, 2002). The MDL does not simply *delay* the trial and resolution of asbestos cases, it effectively *eliminates* trials and halts resolution.

This type of substantial delay was ruled unconstitutional by the Ninth Circuit Court of Appeals. See Armster v. U.S. Dist. Court for the Central Dist. of Florida, 792 F.2d 1423 (9th Cir. 1986). See also Ex parte Milligan, 71 U.S. 2 (1866) (holding that criminal jury trials may not be suspended even during wartime). In Armster, the plaintiffs sought writs of mandamus prohibiting the local district courts from suspending all civil jury trials for a period of three-and-a-half-months due to budgetary concerns. See, Armster, 792 F.2d at 1424 ("alleged insufficiency of funds appropriated for the payment of juror fees"). The Court of Appeals noted that the United States Supreme Court has "emphasized, in no uncertain terms, the importance of the right to a civil jury trial and the need for the courts to be vigilant in guarding against the erosion of that right." Id. at 1428. "The right of jury trial in civil cases...is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment. A right so fundamental and sacred to the citizen. . . should be jealously guarded by the courts." Id. (quoting Jacob v. New York City, 315 U.S. 752, 752-53 (1942)).

*The Supreme Court has adopted a most rigorous standard for reviewing any potential infringement of the right to a civil trial.* The Court has said more than once that, "[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." Beacon Theatres v. Westover, 359 U.S. 500, 501 (1959) (quoting Dimick v. Schiedt. 293 U.S. 474, 486 (1935)). Thus, our duty is clear. *"We must vigilantly protect the right to civil jury trial, and we must scrutinize in the most rigorous manner possible any action that appears to limit in any way the availability of that right."* Id. at 1428-29 (emphasis added).

The Ninth Circuit emphatically rejected any cessation of civil jury trials for even a relatively short three-and-a-half-month period. The court explained:

> [C]onstitutional rights do not turn on the political mood of the moment, the outcome of cost/benefit analyses or the results of economic or fiscal calculations. Rather, our constitutional rights are fixed and immutable, subject to change only in the manner our forefathers established for the making of constitutional amendments. The constitutional mandate that federal courts provide civil litigants with a system of civil jury trials is clear. There is no price tag on the continued existence of that system, or on any other constitutionally-provided right.

Id. at 1429.

The court concluded that "the civil jury trial system may not be suspended for lack of funds" and *"the seventh amendment right to a civil jury trial is violated when, because of such a suspension, an individual is not afforded for any significant period of time, a jury trial he would otherwise receive."* Id. at 1430 (emphasis added). Mr. Reeves died on September 30, 2005. Now with the delay occasioned by the defendants' removal of this case to federal court and the impending transfer of the case to the MDL, the Reeves have lost all hope of having their wrongful death case resolved any time in this decade. As the Ninth Circuit forbade, the Reeves are "not [being] afforded, for any significant period of time, a jury trial [they] would otherwise receive." Id. The Ninth Circuit went so far as to determine that the three-and-a-half-month delay in Armster was "far more than a significant period, given the mandate of the seventh amendment." Id.

No one can argue in good faith that a system that denies over 99% of plaintiffs their rights to trial by jury is adequate, appropriate, fair or constitutional. The defendant cannot argue that the plaintiffs would be able to have any trial, let alone a timely trial, if this case is transferred to the MDL. The defendants did not address the plaintiffs' legitimate arguments, or the federal district courts, that have criticized the MDL, during the original removal/remand debate. Indeed, the defendants' silence on this "MDL-as-black-hole" issue in the Southern District of Florida is deafening. The defendants did not address these issues because they know they cannot credibly defend the transfer of this case to the MDL as fair, just, convenient or efficient. This case does not belong in the MDL and transfer should not be allowed.

## III.   CONCLUSION

This case does not belong in the MDL in Philadelphia.  By any objective measure this case belongs in the State of Florida and should be allowed to proceed to trial.  Transferring this case to the MDL will not "be for the convenience of parties and witnesses" and it will not promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).  The preconditions for transfer to the MDL have not been satisfied and, therefore, transfer is not appropriate and should not be allowed.  Transferring this case to the MDL will also violate the Plaintiffs' constitutional rights to redress and trial by jury.  Consequently, the plaintiffs respectfully request that this Court enter an Order prohibiting transfer of the case to MDL-875 in Philadelphia

Respectfully submitted,

**THE FERRARO LAW FIRM, P.A.**
*Attorneys for Plaintiffs*
4000 Ponce De Leon Boulevard, Suite 700
Miami, Florida 33146
Telephone (305) 375-0111
Facsimile (305) 379-6222

By:

**David A. Jagolinzer, Esq.**
Florida Bar No. 181153
Email: daj@ferrarolaw.com
**Case A. Dam, Esq.**
Florida Bar No. 756091
Email: cxd@ferrarolaw.com

Mailed to:

Jeffery N. Luthi
Clerk of the Panel
Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E.,
Room G-255, North Lobby
Washington, D.C 20002

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 1 6 2007

FILED
CLERK'S OFFICE

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing <u>Plaintiffs'</u>

<u>Motion to Vacate</u> was served electronically on all known counsel of record (service list

attached), and via first class mail on those not registered to receive electronic mail via CM/ECF

on the _12th_ day of _____October_____, 2007.


         **THE FERRARO LAW FIRM, P.A.**
         *Attorneys for Plaintiffs*
         4000 Ponce De Leon Boulevard, Suite 700
         Miami, Florida 33146
         Telephone (305) 375-0111
         Facsimile (305) 379-6222

By:

         **David A. Jagolinzer, Esq.**
         Florida Bar No. 181153
         Email: daj@ferrarolaw.com
         **Case A. Dam, Esq.**
         Florida Bar No. 756091
         Email: cxd@ferrarolaw.com



RECEIVED
CLERK'S OFFICE
2007 OCT 16 A 10: 17
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

# CERTIFICATION OF SERVICE

**RUMBERGER, KIRK & CALDWELL, P.A.**
Stuart L. Cohen, Esq.
M. Stephen Smith, Esq.
Brickell Bayview Centre
80 S.W. 8th Street, Suite 3000
Miami, FL 33130-3047
TEL: (305) 358-5577
FAX: (305) 371-7580
For: Coffin Turbo Pumps, Fairbanks Morris Pumps,
Foster Wheeler, Garlock, Green Tweed & Co,
Hercules Chemical, John Crane, Premier Refractories

**EDWARD MCDONOUGH, JR., P.C.**
Eddie McDonough, Esq.
107 St. Francis Street
1800 Amsouth Bank Building
Mobile, AL 36602
TEL: (334) 432-3296
FAX: (334) 432-3300
For: A.W. Chesteron

**NELSON, MULLINS, RILEY,**
**& SCARBOROUGH, L.L.P.**
Tracy E. Tomlin, Esq.
Bank of America Corporate Center, Suite 2400
100 North Tryon Street
Charlotte, NC 28202-4000
TEL: (704) 417-3000
FAX: (704) 377-4814
For: Owens, Illinois, Inc.

**AKERMAN, SENTERFITT**
Hugh Turner, Jr., Esq.
Las Olas Centre, II, Suite 1600
350 East Las Olas Blvd.
Fort Lauderdale, FL 33301-2229
TEL: (954) 463-2700
FAX: (954) 463-2224
For: American Optical Corporation, Carrier Corporation

**EVERT & WEATHERSBY, LLC**
C. Michael Evert, Jr., Esq.
3405 Piedmont Road, Suite 225
Atlanta, GA 30305
TEL: (404) 233-8718
FAX: (404) 233-8933
For: The Goodyear Tire & Rubber Company

**HAWKINS & PARNELL, LLP**
Albert Parnell, Esq.
J. Bruce Welch, Esq.
4000 Suntrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA 30308-3243
TEL: (404) 614-7400 / (800) 334-8957
FAX: (404) 614-7500
For: Chicago Pump Company, Union Carbide
Corp. General Electric Company, Warren
Pumps

**BILZIN SUMBERG**
**DUNN & AXELROD, LLP**
David W. Trench, Esq.
2500 First Union Financial Center
Miami, FL 33131-2336
TEL: (305) 374-7580
FAX: (305) 374-7593
For: Rapid American

**LAW OFFICE OF TIMOTHY CLARK, P.A.**
Timothy Clark, Esq.
Wellesley Corporate Plaza
7951 SW 6 Street, Suite 106
Plantation, Florida 33324
TEL: (954) 475-8803
FAX: (954) 475-9199
For: Cleaver-Brooks

**FOLEY & MANSFIELD, P.L.L.P.**
Virginia E. Johnson, Esq.
4770 Biscayne Boulevard, Suite 1000
Miami, Florida 33137-3251
Telephone:  305-438-9899
Facsimile:  305-438-9819
For: Chemtura Corporation, Sealing Equipment


**HINSHAW & CULBERTSON, P.A.**
Nickolas Berry, Esq.
One East Broward Boulevard, Suite 1010
Ft. Lauderdale, Florida 33301
Telephone:        954-467-7900
Facsimile:        954-467-1024
For: Flowserve Corporation, Gould Pumps, Inc.


**KIRKPATRICK & LOCKHART**
**NICHOLSON GRAHAM, L.L.P.**
Daniel A. Casey, Esq.
201 South Biscayne Boulevard, 20th Floor
Miami, Florida 33131-2399
Telephone:        305-539-3300
For: Crane Co.


**FOWLER WHITE BOGGS BANKER**
Mark C. Green, Esq.
501 E. Kennedy Boulevard
Tampa, Florida 33602
Telephone:        813-228-7411
For: Crown, Cork & Seal, Co.


**O'NEILL, LIEBMAN & COOPER, P.A.**
John B. Liebman, Esq.
2699 Lee Road, Suite #320
Winter Park, Florida 32789
Telephone:  407-647-9550
Facsimile:   407-647-9554
For: Bigham Insulation & Supply Co., Inc.


**LAW OFFICES OF STEVEN A. EDELSTEIN**
Steven A. Edelstein, Esq.
Biltmore Hotel Executive Office Center
1200 Anastasia Avenue, Suite 410
Coral Gables, Florida 33134
Telephone:        305-444-5660
Facsimile:        305-444-5646
For: Ingersoll- Rand Company


**CONROY, SIMBERG, GANON, KREVANS,**
**ABEL, LURVEY, MORROW & SCHEFER, P.A.**
Abigail M. Cohen, Esq.
3440 Hollywood Boulevard
2nd Floor
Hollywood, Florida 33021
Telephone:        305-970-4821
For: Durabla Manufacturing Co.


**BICE COLE LAW FIRM P.A.**
Kathleen M. LaBarge Esq.
Oakburst Professional Park
1333 S.E. 25th Loop
Suite 101
Ocala, Florida 34471
Telephone:        352-732-2255
For: Buffalo Pumps, SPX Corporation,
National Service Industries, Patterson Pump Company
Rockwell Automation, Inc., Velvan Valve Corporation

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 16 2007

## CERTIFICATE OF SERVICE

FILED
CLERK'S OFFICE

The undersigned hereby certifies that a true and correct copy of the foregoing <u>Plaintiffs'</u>

<u>Memorandum in Support of Plaintiffs' Motion to Vacate Conditional Transfer Order</u> was served

electronically or via first class mail on all counsel listed on the attached service list this

16th day of _October_, 2007.


**THE FERRARO LAW FIRM, P.A.**
*Attorneys for Plaintiffs*
4000 Ponce De Leon Boulevard, Suite 700
Miami, Florida 33146
Telephone (305) 375-0111
Facsimile (305) 379-6222

By:

**David A. Jagolinzer, Esq.**
Florida Bar No. 181153
Email: daj@ferrarolaw.com
**Case A. Dam, Esq.**
Florida Bar No. 756091
Email: cxd@ferrarolaw.com

2007 OCT 16 P 2:45
RECEIVED CLERK'S OFFICE
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 1 6 2007

FILED
CLERK'S OFFICE

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Brief in

Support of Plaintiffs' Motion to Vacate was served electronically on all known counsel of record

(service list attached), and via first class mail on those not registered to receive electronic mail

via CM/ECF on the _12th_ day of ___October___, 2007.

**THE FERRARO LAW FIRM, P.A.**
*Attorneys for Plaintiffs*
4000 Ponce De Leon Boulevard, Suite 700
Miami, Florida 33146
Telephone (305) 375-0111
Facsimile (305) 379-6222

By: _____

**David A. Jagolinzer, Esq.**
Florida Bar No. 181153
Email: daj@ferrarolaw.com
**Case A. Dam, Esq.**
Florida Bar No. 756091
Email: cxd@ferrarolaw.com

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

2007 OCT 16  P 2: 50

RECEIVED
CLERK'S OFFICE

3

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Brief in Support of Plaintiffs' Motion to Vacate was served electronically or via first class mail on all counsel listed on the attached service list this _16th_ day of _October_ , 2007.

THE FERRARO LAW FIRM, P.A.
*Attorneys for Plaintiffs*
4000 Ponce De Leon Boulevard, Suite 700
Miami, Florida 33146
Telephone (305) 375-0111
Facsimile (305) 379-6222

By:

David A. Jagolinzer, Esq.
Florida Bar No. 181153
Email: daj@ferrarolaw.com
Case A. Dam, Esq.
Florida Bar No. 756091
Email: cxd@ferrarolaw.com

RECEIVED
CLERK'S OFFICE
2007 OCT 16 P 2: 45
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

IN RE: Asbestos Products Liability Litigation (No. VI)

MDL No. 875

## PANEL SERVICE LIST (Excerpted from CTO-290)

Jackie Reeves, etc. v. American Optical Corp., et al., S.D. Florida, C.A. No. 0:07-61264

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Daniel A. Casey
Kirkpatrick & Lockhart Preston Gates Ellis
201 S. Biscayne Boulevard
Suite 2000
Miami, FL 33131-2399

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001

Robert W. Cochren
Sonnenschein, Nath & Rosenthal, LLP
1221 Avenue of the Americas
24th Floor
New York, NY 10020

Abigail M. Cohen
Conroy, Simberg, Ganon, Krevans & Abel
Venture Corporate Center I
Second Floor
3440 Hollywood Boulevard
Hollywood, FL 33021

Stuart L. Cohen
Rumberger, Kirk & Caldwell
80 S.W. 8th Street
Suite 3000
Miami, FL 33130

Christopher J.M Collings
Morgan, Lewis & Bockius LLP
200 S. Biscayne Boulevard
5300 Wachovia Financial Center
Miami, FL 33131-2339

Case A. Dam
Ferraro & Associates
4000 Ponce De Leon Boulevard
Suite 700
Miami, FL 33146

David A. Damico
Burns, White & Hickton, LLC
Four Northshore Center
106 Isabella Street
Pittsburgh, PA 15212

Evelyn M. Fletcher
Hawkins & Parnell, LLP
4000 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA 30308-3243

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106-2574

Peter J. Frommer
Hinshaw & Culbertson LLP
1 East Broward Boulevard
Suite 1010
Fort Lauderdale, FL 33301

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

## MDL No. 875 - Panel Service List (Excerpted from CTO-290) (Continued)

Brenda Godfrey
Hawkins & Parnell, LLP
4000 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA 30308-3243

Trent Hamilton
Alston & Bird, LLP
1201 West Peachtree Street
One Atlantic Center
Atlanta, GA 30309-3424

Susan M. Hansen
Brownson & Ballou
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

David M. Hawthorne
Akerman Senterfitt
350 East Las Olas Blvd.
Suite 1600
Fort Lauderdale, FL 33301

Virginia E. Johnson
Foley & Mansfield, PLLP
4770 Biscayne Boulevard
Suite 1000
Miami, FL 33137

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308-1314

Kathleen M. LaBarge
Bice Cole Law Firm
999 Ponce De Leon Blvd.
Suite 710
Coral Gables, FL 33134

David C. Landin
Hunton & Williams, LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Richard M. Lauth
Evert Weathersby & Houff, LLC
3405 Piedmont Road, Suite 225
Atlanta, GA 30305-1764

Gene Locks
Locks Law Firm, LLC
1500 Walnut Street
Philadelphia, PA 19102

Ronald L. Motley
Motley Rice, LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney, PC
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
Roven-Kaplan, L.L.P.
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli, L.L.P.
Centre Square West
15th Floor
Philadelphia, PA 19102

**MDL No. 875 - Panel Service List (Excerpted from CTO-290) (Continued)**

Laura Anne Stuzin
Rumberger, Kirk & Caldwell
80 SW 8th Street
Suite 3000
Miami, FL 33130

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
645 Griswold Street
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226-4192

Tracy E. Tomlin
Nelson Mullins Riley & Scarborough LLP
100 North Tryon Street
Suite 2400
Charlotte, NC 28202-4000

Andrew J. Trevelise
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

# EXHIBIT A





**F** I L E **D**
CHARLES BACARISSE
District Clerk

SEP 0 6 2006

Harris County, Texas
By _____ 10:00am
                    Deputy

# JUDGE MARK DAVIDSON

201 Caroline, 9th Floor
Houston, Texas   77002

(713) 368-6020
FAX (713) 368-4317

September 5, 2006

Re:   Austin Richards, et ux. v. Carver Pump Company, et al; Cause no. 2006-22,116

Dear Counsel:

The court has carefully considered the Defendants' Motion for Dismissal for Forum Non Conveniens in the above case.  Because this is not the last of these motions I will be asked to determine, I am stating my reasons as a guide to the attorneys representing clients in other asbestos cases.

All counsel are familiar with the fact that shortly after I became the MDL Judge assigned to hear asbestos cases, I issued a ruling in the *Pomeranky* case which bemoaned my inability to dismiss cases on grounds of forum non conveniens based on the language of Section 71.051 of the Civil Practices and Remedies Code.  After that ruling, the language of the statute was amended to significantly broaden the discretion of Texas trial courts.  To my knowledge, this is the first time I have been asked to exercise the powers given trial judges under the amended statute.

The facts in this case are, if anything, more compelling than those in *Pomranky*.  There is absolutely no connection between the State of Texas and any element of negligence, causation or damages.  It is apparently undisputed that the Plaintiff spent his entire life, was exposed to asbestos, was diagnosed with mesothelioma and, in all probability, will die in the state of Maine.  All of his co-worker witnesses, treating physicians and family members live in Maine.  Based on these facts, I have struggled with any way any attorney could argue with a straight face that the case belongs in Texas.

Then I reread the language of the new statute.  Section 71.051(b) states:

If a court of this state, on written motion of a party, finds that *in the interest of justice* and for the convenience of the parties a claim or action to which

this section applies would be more properly heard in a forum outside of this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall dismiss the claim or action… (italics added)

Plaintiffs claimed in argument before the court that if the case is refiled in Maine, it will immediately be removed to Federal Court, and from there transferred to the Federal MDL. What will happen to the cases there? Apparently, the judge will not give the plaintiff an opportunity to have his case heard before his death. The judge will attempt to get the case to settle. When and if the case is remanded, there will have been little, if any, judicial decision making performed that will assist the trial court. It will sit in this court, if it does not settle, for several years before it is remanded. The case will then go to the end of the docket in the federal court to which it is assigned. This isn't just what I have been able to find out from conferring with federal judges around the nation – this is what the Judge D. Brock Hornby, Chief Judge of the Federal Courts of the District of Maine, wrote in *In re Maine Asbestos Cases*. 44 F.Supp.2d 368 (D. Me. 1999).

The Federal MDL is located in Pennsylvania. Therefore, my ruling on this motion will not decide whether the case will go to Texas or Maine. If it were, my ruling would be different. This ruling will decide whether Texas or Pennsylvania will be the forum of the case. If it is the Federal Court of Pennsylvania, it is certain that Mr. Richards will not be alive to have his day in court, and will die without knowing whether or not his widow will get a recovery from this case. A system of justice that would mandate such a result has nothing to do with the concept of justice.

My ruling on this motion might well have been different if the Defendants had assured me that no effort would have been made to remove this case to Federal Court. The Defendants were quite forthcoming that they would not waive their removal rights. Since they did not, I am unable to conclude that it is in the interests of justice to decline to accept jurisdiction over this case. I will therefore deny the motion.

I must admit that I did not think this would be the ruling I would make on the first Forum Non Conveniens motion I heard under the new statute. I am aware that under new leadership, the Federal MDL is beginning to try to devise a system that makes it less of a "black hole" than has been in the past. My ruling on the next such motion I get will be different if the Federal MDL becomes a pre-trial court, as opposed to a settlement court. Even if it does not improve, my next ruling may be different if a waiver of removal to federal court is offered by Defendants.

I will sign an order denying the motion, so that any party wishing may initiate appellate review.

Respectfully submitted,

MARK DAVIDSON

# EXHIBIT B

**Asbestos Medicine Faculty Listing & Seminar Schedule**
**November 8-9, 2007**
**San Diego Marriott**
**San Diego, California**

**Angela L. Abel**
Angela L. Abel is a vice president at DecisionQuest in its Atlanta office. She specializes in the development of litigation communication strategies. Ms. Abel has experience in more than 800 cases of diverse practice areas including intellectual properties, toxic tort, products liability, construction and personal injury litigation.

**Bruce T. Bishop**
Bruce T. Bishop is a member of Willcox & Savage PC in Norfolk, Virginia. Since 1977, Mr. Bishop has focused on toxic tort and environmental litigation. He has extensive trial experience in state and federal courts throughout the U.S. in the defense of toxic torts/products liability claims. Mr. Bishop has also developed a nationwide reputation for his work with medical and state-of-the-art issues associated with toxic tort litigation.

**Sandra F. Clark**
Sandra F. Clark, a shareholder of Mehaffy Weber PC practices out of the firm's Beaumont and Houston offices. She has tried more than 25 major toxic tort cases to verdict and has been involved in the successful defense of many others. Ms. Clark is a member of the Texas Asbestos MDL Liaison Committee, the Houston Chapter of ABOTA, the Advisory Committee for Personal Injury for the Texas Board of Legal Specialization, Texas Bar Foundation, FDCC, Products Liability Advisory Council and the Michelle F. Mehaffy Inn of Court.

**James H. Crosby**
James H. Crosby is a member of Crosby Saad LLC in Mobile, Alabama. His principal areas of practice include corporate law, corporate defense, products liability, toxic torts, litigation limitation, litigation management and insurance coverage.

**Hon. Mark Davidson**
The Honorable Mark Davidson serves as judge of the 11th District Court of Texas in Houston. He has tried more than 400 jury trials. Named as the first Multi District Litigation Judge in Texas, he was assigned to hear all pre-trial matters in all Texas asbestos cases filed in the state after September 2003. In 2005, his mandate was expanded to include all 58,000 asbestos cases pending in Texas. Judge Davidson has developed procedures that has led to the trial and disposition of many cases and has broken ground in rulings on *Daubert* challenges to scientific evidence.

**Jeanette S. Eirich**
Jeanette S. Eirich is an attorney at the law firm of Socha Perczak Setter & Anderson PC in Denver. Her practice areas include complex and multi-district litigation, products liability, RICO, fraud litigation and mass torts. Ms. Eirich is a member of the Colorado and Texas Bars.

**Douglas R. Elliott**
Douglas R. Elliott is a partner with Deutsch Kerrigan & Stiles LLP in New Orleans. His practice focuses on civil litigation, product liability, insurance defense, mass torts, toxic torts and criminal law.

**I. Allan Feingold, M.D., FRCP©, FCCP**
I. Allan Feingold, M.D., FRCP(C), FCCP, is chief of the Division of Pulmonary Medicine of South Miami Hospital in Miami, Florida. Dr. Feingold is a fellow of the Royal College of Physicians (Internal Medicine), board certified in Internal Medicine and Pulmonary Medicine by the American Board of Internal Medicine and a certified NIOSH B Reader.

**George F. Fitzpatrick, Jr.**
George F. Fitzpatrick, Jr., is the founding partner of Swanson Martin & Bell in Chicago. For 20 years, Mr. Fitzpatrick has served as national coordinating counsel in asbestos litigation for numerous defendants, including pump, valve and other equipment manufactures, brake manufacturers and users, and premises owners. He has successfully argued two appeals of significance to equipment manufacturer defendants in asbestos litigation. He is a member of DRI and the National Forum for Environmental and Toxic Tort Issues.

**John M. Fitzpatrick**
John M. Fitzpatrick, a partner in Wheeler Trigg Kennedy LLP in Denver, handles high exposure cases for national

clients, including product defects in asbestos (GE, Foster Wheeler and Velan), aviation (Global Aerospace), equipment (MTD), chemical release (Air Products) and medical devices (LabCorp). His primary focus during the last few years has involved high exposure claims due to product defects or general negligence claims. Mr. Fitzpatrick has tried in excess of 150 cases to verdict in 22 states and obtained defense verdicts in more than 140 cases.

**Evelyn McRee Fletcher**
Evelyn McRee Fletcher is a partner at Hawkins & Parnell LLP in its Atlanta office. Ms. Fletcher has served as national and local counsel for numerous companies involved in product liability, asbestos and silica litigation. She is a board member of the Atlanta Council of Younger Lawyers and a member of the Atlanta Bar Association, DRI and the Georgia Defense Lawyers Association.

**Johan D. Flynn**
Johan D. Flynn is an attorney in the firm of DeHay & Elliston LLP in Baltimore. His practice focuses on litigation, insurance defense, products liability, asbestos litigation and mass torts.

**Catherine E. Boyd Goldhaber**
Catherine E. Boyd Goldhaber is an attorney at Segal McCambridge Singer & Mahoney Ltd. in Chicago. Her areas of concentration include litigation, toxic torts, products liability, child welfare, juvenile law and general liability.

**Samuel P. Hammar, M.D.**
Samuel P. Hammar, M.D., is the director of Diagnostic Specialties Laboratory in Bremerton, Washington. He is board-certified in anatomic and clinical pathology and specializes in lung disease, cancer and diagnostic techniques used to investigate cancer. For the past 18 years, Dr. Hammar has been primarily interested in asbestos-related disease, especially mesothelioma. He has done extensive research on asbestos-related lung disease in conjunction with Dr. Ronald F. Dodson and sees asbestos-induced lung disease on a regular basis as a pathologist.

**Mark K. Hsu**
Mark K. Hsu is special counsel at the New York City office of Kasowitz Benson Torres & Friedman LLP. Mr. Hsu focuses his practice on products liability and commercial litigation.

**Michael E. Hutchins**
Michael E. Hutchins is a partner at Kasowitz Benson Torres & Friedman LLP in Atlanta. Mr. Hutchins focuses his practice on environmental litigation, products liability, commercial cases and general civil litigation. He has handled asbestos and toxic tort litigation throughout the U.S. for the past 18 years.

**John J. Kurowski**
John J. Kurowski is the managing partner of Kurowski Bailey & Shultz LLC in Swansea, Illinois. He specializes in complex civil litigation with an emphasis in asbestos and toxic tort. Mr. Kurowski has defended asbestos litigation for more than 20 years. He serves as national coordinating and trial counsel for several asbestos litigation clients, as well as local counsel for several companies in Madison County, Illinois, and the St. Louis area.

**John A. LaBoon**
John A. LaBoon is a partner at Segal McCambridge Singer & Mahoney Ltd. in Austin, Texas. Since 1993, Mr. LaBoon has focused on tort defense litigation with an emphasis in asbestos and silica litigation involving products liability, contractor liability and premises liability claims. In asbestos and silica cases, he has represented numerous manufacturers, an international premises owner and a major construction contractor. Mr. LaBoon has served on local, regional and national trial teams for defendants in asbestos litigation.

**David C. Landin**
David Craig Landin is a partner in the Litigation, Intellectual Property and Antitrust team at Hunton & Williams LLP in Richmond, Virginia. Mr. Landin has served as national coordinating and trial counsel in a variety of litigation settings. He is a past president of the Virginia Bar Association.

**Janet L. MacDonell**
Janet L. MacDonell was a partner at Deutsch Kerrigan & Stiles LLP in New Orleans until 2004, when she semi-retired. She works, on a limited basis, coordinating litigation nationwide for a client and assisting in complicated cases upon request. Her expertise is in defense of long-term exposure, latent disease cases, medical device, environmental and products liability claims. Ms. MacDonell has extensive experience working with medical

experts.

**Barry N. Meshner**
Barry N. Mesher is a partner in the law firm of Lane Powell PC in Seattle. He has been involved in multiple toxic tort and environmental litigation cases for more than 25 years and serves as national coordinating counsel, regional coordinating counsel and local counsel for a number of asbestos litigation clients. Mr. Mesher is a member of the firm's London, Insurance and Toxic Tort Practice Groups and a member of DRI, the American College of Law and Medicine and Washington Defense Trial Lawyers Association.

**Albert H. Parnell**
Albert H. Parnell is a trial lawyer and partner in Hawkins & Parnell LLP in Atlanta, Georgia, and Charleston, West Virginia, and a partner in the Dallas office of Hawkins Parnell & Thackston LLP. Mr. Parnell is a founding and current member of DRI's Law Institute and a former member of the DRI Board of Directors. He has tried more than 250 lawsuits to jury verdict in more than 25 states.

**Victor L. Roggli, M.D.**
Victor L. Roggli, M.D., is a professor of pathology at the Duke University Medical Center in Durham, North Carolina, and the director of the Electron Microscopy Laboratory at the Durham Veterans Administration Medical Center. His research interests include pneumoconioses, asbestos-related diseases and analytical electron microscopy. Dr. Roggli has published more than 140 articles and 26 chapters in textbooks. He has also written four books, including *Microprobe Analysis in Medicine*, *Biomedical Applications of Microprobe Analysis*, and *Pathology of Asbestos-Associated Diseases*, 1st and 2nd editions.

**Edward M. Slaughter**
Edward M. Slaughter, a partner in Hawkins Parnell & Thackston LLP in Dallas, focuses his practice in the areas of product liability and toxic tort litigation. Mr. Slaughter has extensive experience in litigation involving asbestos, paints and solvents, pesticides and other chemicals.

**Frederick M. Toca, Ph.D., CIH, CSP**
Fredrick M. Toca, Ph.D., CIH, CSP, is an industrial hygienist for Atlantic Environmental Inc. in Atlanta, Georgia. Dr. Toca has more than 20 years of experience managing programs and acting as the principal technical specialist in industrial hygiene, occupational safety and environmental sciences. He is the former director of Occupational Safety & Health for Hoechst Celanese, the former director of Industrial Hygiene Safety & Compliance for USX Corporation and the former manager of Environmental Protection for General Electric Co., Plastics Division. Dr. Toca is a past president of the AIHA.

**T. Lynn Walden**
T. Lynn Walden is a partner at Jenkins & Martin LLP in Beaumont, Texas. Mr. Walden's practice is focused upon asbestos defense, toxic torts, medical malpractice and pharmaceutical litigation. He has extensive jury trial experience from his 16 years of practice. He has served as trial counsel for Bondex International for the last three years. Since 2004, he has been involved in numerous asbestos trials, including representation as lead trial counsel for his clients, resulting in eight verdicts in mesothelioma cases.

**Schedule of Events**

**Wednesday, November 7, 2007**

**6:00 p.m.**
**Registration**

**6:00 p.m.**
**Networking Reception**
*Sponsored by* **Brown & Gallo LLC**

**Thursday, November 8, 2007**

**Cappuccino Bar**
*Sponsored by* **Pohlman USA**

**Internet Café**

*Sponsored by* **McCaffery & Associates, Inc.**

**7:30 a.m.**
**Registration and Continental Breakfast**

**8:15 a.m.**
**Welcome and Introduction**
**Albert H. Parnell**, *Hawkins & Parnell LLP*, Atlanta, Georgia

**8:25 a.m.**
**MDL 875: Navigating the Black Hole—Its Future and Ramifications for State Courts**
Hear about the current role of the MDL and its projected impact on existing and future cases.
**David Craig Landin**, *Hunton & Williams LLP*, Richmond, Virginia

**9:00 a.m.**
**Spreading the Wealth by Sharing the Responsibility**
Many states now permit the submission of non-parties, including bankrupt companies and employers, to the jury for apportionment of responsibility. This section will provide ideas for broadly spreading responsibility, thereby reducing the "share" of trial defendants.
**T. Lynn Walden**, *Jenkins & Martin LLP*, Beaumont, Texas

**9:40 a.m.**
**The Changing World of Causation—Recent Decisions and Trends Affecting Exposure and Cause**
Courts around the country are tackling, as though for the first time, these questions: Is there evidence of sufficient exposure to asbestos to be the cause of plaintiff 's injuries? Do friction products alone release enough respirable fibers to be the cause of plaintiff 's injury? Is asbestos exposure without asbestosis sufficient to be a cause of lung cancer in a plaintiff who smoked cigarettes? How much exposure is required to support the "substantial factor" standard for causation?
**Sandra F. Clark**, *MehaffyWeber PC*, Beaumont, Texas

**10:15 a.m**
**Refreshment Break**
*Sponsored by* **Exponent**

**10:35 a.m.**
**Texas's Asbestos MDL—The First Three Years and Coming Attractions**
The Texas Asbestos MDL is a unique system of administration of cases and is quite different from what its initial proponents and opponents envisioned. Judge Davidson will discuss developments to date and make predictions on upcoming issues.
**Honorable Mark Davidson**, *11th District Court of Texas*, Houston, Texas

**11:15 a.m.**
**Peritoneal Mesothelioma—An Update**
Learn the latest in the field from an experienced medical expert.
**Victor L. Roggli, M.D.**, *Duke University Medical Center*, Durham, North Carolina

**11:55 a.m.**
**Lunch** *(on your own)*

**11:55 a.m.**
**Women's Networking Luncheon** *(included in registration)*
*Sponsored by* **Segal McCambridge**

**1:20 p.m.**
**Potential Liability of Equipment Manufacturers for Post-Sale Application of Asbestos-Containing Insulation and Other Products Not Supplied or Specified by the Equipment Manufacturer**
There is developing case law on product liability, forseeability and duty to warn, most of which, from a defense perspective, is going in the wrong direction. If plaintiffs win on this issue, it eliminates or severely hinders the state of the art, low dose and chrysotile defenses, as equipment manufacturers will be called upon to defend the insulation product.
**George F. Fitzpatrick, Jr.**, *Swanson Martin & Bell*, Chicago, Illinois

**1:55 p.m.**
**The Current Status of the Potential Liability of Premises Owners and Other Warning and No Warning Issues and Potential Defenses**
The world of the premises owner constantly changes, along with various warning issues. Additionally, equipment manufacturers are now subject to claims for a duty to warn of another manufacturer's products. Mr. Mesher will discuss these topics.
**Barry N. Mesher**, *Lane Powell PC*, Seattle, Washington

**2:35 p.m.**
**A Practical Review of Disease Diagnosis and CausationEvidence in Asbestos Litigation**
The methods and analytical techniques utilized in diagnosing disease and determining potential causative agents will be reviewed. The use of fiber burden studies, new advanced staining techniques, basic pathology analysis and clinical correlation will be discussed. The importance of fully developed medical and occupational history for evaluating and presenting legal challenges to expert opinions will be stressed.
**Edward M. Slaughter**, *Hawkins Parnell & Thackston LLP*, Dallas, Texas

**3:15 p.m.**
**The Industrial Hygiene World and Asbestos Litigation**
Dr. Toca will discuss various aspects of current industrial hygiene technology and its potential impact on modern asbestos litigation.
**Fredrick M. Toca, Ph.D., CIH, CSP**, *Atlantic Environmental Inc.*, Atlanta, Georgia

**4:00 p.m.**
**Refreshment Break**
*Sponsored by* **Exponent**

**BREAKOUT SESSIONS**
*(All breakout sessions are limited to defense lawyers and their clients only.*
*Plaintiffs' lawyers are invited to meet elsewhere on their own.)*

**4:20 p.m.**

**Breakout A: The Low Dose Story** *(1 hour)*
**Moderator**
**John J. Kurowski**, *Kurowski Bailey & Shultz LLC*, Swansea, Illinois

**Breakout B:**
**New Plaintiff and Product Investigation—For the Novice, the Experienced and Everyone Else** *(1 hour)*
**Moderator**
**Evelyn McRee Fletcher**, *Hawkins & Parnell LLP*, Atlanta, Georgia

**Panelists**
**Johan D. Flynn**, *DeHay & Elliston LLP*, Baltimore, Maryland
**Catherine E. Boyd Goldhaber**, *Segal McCambridge Singer & Mahoney Ltd.*, Chicago, Illinois
**Mark K. Hsu**, *Kasowitz Benson Torres & Friedman LLP*, New York, New York

**Breakout C:**
**Historical Perspective—Great Moments in Asbestos Litigation** *(2 hours)*
**Moderators**
**James H. Crosby**, *Crosby Saad LLC*, Mobile, Alabama
**Michael E. Hutchins**, *Kasowitz Benson Torres & Friedman LLP*, Atlanta, Georgia
**Albert H. Parnell**, *Hawkins & Parnell LLP*, Atlanta, Georgia

**5:20 p.m.**
**Breakout D: Hot Topics** *(1 hour)*
**David Craig Landin**, *Hunton & Williams LLP*, Richmond, Virginia

**Breakout E:**
**Best Asbestos Jury Selection Ideas of the Century** *(1 hour)*
**Moderator**

**Angela L. Abel**, *DecisionQuest*, Atlanta, Georgia

**6:20 p.m.**
**Adjourn**

6:30 p.m.
Networking Reception
*Sponsored by* **Hawkins & Parnell, LLP** *and* **Navigant Consulting**

<u>**Friday, November 9, 2007**</u>

**Cappuccino Bar**
*Sponsored by* **Pohlman USA/}**

**Internet Café**
*Sponsored by* **McCaffery & Associates, Inc.**

**7:30 a.m.**
**Registration and Continental Breakfast**

**8:15 a.m.**
**Announcements**
**Albert H. Parnell**, *Hawkins & Parnell LLP*, Atlanta, Georgia
**Michael E. Hutchins**, *Kasowitz Benson Torres & Friedman LLP*, Atlanta, Georgia
**8:20 a.m.**
**You Bet Your (Ethical) Life**
Legal ethics in asbestos litigation will be examined in the context of a series of game show questions, answers and hypotheticals.
**Douglas R. Elliott**, *Deutsch Kerrigan & Stiles LLP*, New Orleans, Louisiana
**Janet L. MacDonell**, *Deutsch Kerrigan & Stiles LLP*, New Orleans, Louisiana

**9:20 a.m.**
**Burning Plaintiffs' Straw Man—Preparing Your PMK Witness**
Learn ways to deal with plaintiffs' strategy of making your corporate rep look bad with collateral "Notice of Asbestos Hazard Document" versus official interrogatory answers on notice.
**John M. Fitzpatrick**, *Wheeler Trigg Kennedy LLP*, Denver, Colorado

**10:00 a.m.**
**Refreshment Break**
*Sponsored by* **Jenkins & Martin, L.L.P.**

**10:20 a.m.**
**Complex Medical Analysis—There Are No 'Routine' Cases**
Clinical, radiological, pathological and DNA findings in challenging asbestos cases will be covered.
**I. Allan Feingold, M.D., FRCP(C), FCCP**, *South Miami Hospital*, Miami, Florida

**11:20 a.m.**
**Round Cell Mesotheliomas with an Emphasis on Deciduold Mesotheliomas**
**Samuel P. Hammar, M.D.,** *Diagnostic Specialties Laboratory*, Bremerton, Washington

**12:00 p.m.**
**Lunch** *(on your own)*

**1:20 p.m.**
**Substantial Contributing Factor and Mesothelioma—How to Defeat Plaintiffs' Argument that Every Exposure Contributes**
Learn ways to defeat plaintiffs' argument that every exposure contributes.
**Bruce T. Bishop**, *Willcox & Savage PC*, Norfolk, Virginia

**2:00 p.m.**
**The Next Steps in Defending Screened Cases**

Discussion of (1) suspect companies/physicians and how these cases still appear in various jurisdictions, as well as how to conduct discovery and proceed, once a suspect company/physician is identified; (2) Impairment and positive rates in screenings versus literature; and (3) defense strategies to uncover and defend against still active screening processes.
**Jeannette S. Eirich**, *Socha Perczak Setter & Anderson PC*, Denver, Colorado

**2:35 p.m.**
**The Epidemiology of the "Other Cancers"—A Review of the IOM/NIH Study**
The association and causal connection between asbestos exposure and gastrointestinal, colorectal, esophogeal, laryngeal and pharyngeal malignancies has remained controversial, despite continuing medical and scientific interest in this subject. The vital 2006 IOM study and recent literature on these malignancies will be explored.
John A. LaBoon, *Segal McCambridge Singer & Mahoney Ltd.*, Austin, Texas

**3:15 p.m.**
**Refreshment Break**
*Sponsored by* **Jenkins & Martin, L.L. P.**

**3:35 p.m.**
**Defending the "Other Cancers" on the Science**
Building on the previous session, this presentation will discuss the tools necessary to defend these cases at pretrial, *Daubert* and *Frye* hearings and at trial, on the medicine and science, using the 2006 IOM/NIH study, recent literature and other trial tactics.
**John J. Kurowski**, *Kurowski Bailey & Shultz LLC*, Swansea, Illinois

**4:15 p.m.**
**Trial Panel—"Other Cancers," Low Dose, Cross Examination and Experts**
**Moderator**
**Albert H. Parnell**, *Hawkins & Parnell LLP*, Atlanta, Georgia
**Panelists**
**Bruce T. Bishop**, *Willcox & Savage PC*, Norfolk, Virginia
**Sandra F. Clark**, *Mehaffy Weber PC*, Beaumont, Texas
**John M. Fitzpatrick**, *Wheeler Trigg Kennedy LLP*, Denver, Colorado
**John J. Kurowski**, *Kurowski Bailey & Shultz LLC*, Swansea, Illinois
**T. Lynn Walden**, *Jenkins & Martin LLP*, Beaumont, Texas

**5:00 p.m.**
**Adjourn**

# EXHIBIT C

JAN.18.2002  1:32PM
APR.14.2002  4:15PM

NO.646   P.8
NO.928   P.2

CRW



292

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD J. CARLOUGH; PAVLOS
KEKRIDES and NAFSSICA KEKRIDES,
his wife; LAVERNE WINBUN,
Executrix of the Estate of
JOSEPH E. WINBUN, deceased;
AMBROS VOGT, JR. and JOANNE
VOGT, his wife; CARLOS RAVER
and DOROTHY M. RAVER, his wife;
JOHN A. BAUMGARTNER and ANNA
MARIE BAUMGARTNER, his wife;
TIMOTHY MURPHY and GAY
MURPHY, his wife; TY T. ANNAS; and
FRED ANGUS SYLVESTER,

ON BEHALF OF THEMSELVES AND
ALL OTHERS SIMILARLY SITUATED

v.

AMCHEM PRODUCTS, INC., ET

WEINER, J.

F I L E D
APR 1 6 1993
MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

C.A. NO. 93-215

April 15 1993

## MEMORANDUM OPINION AND ORDER

### Introduction

Plaintiffs in this class action are individuals who have alleged asbestos related personal injury claims against defendants represented by the Center for Claims Resolution (hereafter CCR). Following the initiation of this action, Carl D. Roland, Gloria J. Roland,



JAN.18.2002  1:33PM
2002  4:15PM

NO.646    P.9
NO.929    P.3

Shelva D. Wiese, Carl D. Payne, Sr., Helen E. Payne, Walter L. Mays, Sr., and Shirley G. Mays (hereafter "the Wiese parties") filed a joint motion to intervene in this matter as parties plaintiff. On February 19, 1993, the court entered an order granting the intervention. Subsequently, an objection to the motion to intervene was filed by CCR,[1] alleging that the intervention would deprive the court of diversity jurisdiction[2] CCR also averred that the Wiese parties did not satisfy the requirements of Fed. R. Civ. P. 24 and that denying their intervention would not deprive the movants of their rights to participate fully in the consideration of the issues involved in the class action. On February 24, 1993, the court issued an Order directing the Wiese parties to file a response to the CCR objections and set the issue down for oral argument.

Subsequently, the Wiese parties filed motions (1) to decertify the class; (2) to dismiss the action for lack of subject matter jurisdiction or in the alternative for partial decertification of the class; (3) to dismiss this matter on the grounds it is collusive; (4) to create sub-classes; (5) to disqualify class counsel; and (6) for recusal of the court. To place the motions in their proper context, it is necessary to review the long history of asbestos personal injury litigation in the courts, and the history of the multidistrict litigation consolidated in this court.

1. The court ruled on the motion prior to the expiration of the time to file responsive pleadings, believing that the motion was unopposed. Accordingly, we shall treat the CCR *Memorandum in Opposition to Motion to Intervene* as a motion for reconsideration of the court's February 19, 1993 order.

2. The allegedly non-diverse intervenors, Carl D. Roland, Gloria J. Roland, Walter L. Mays, Sr. and Shirley G. Mays have been voluntarily dismissed. Accordingly, this portion of the CCR's objections are moot.

2

<u>Factual</u> <u>Background</u> <u>of</u> <u>Asbestos</u> <u>Litigation</u> <u>and</u> <u>the</u> <u>MDL</u> <u>Panel</u> <u>Order</u>

In 1985, the Rand Report[3] estimated that the total number of asbestos cases, federal and state, was approximately 30,000. It predicted that tens of thousands more could be expected over the following decade. On July 29, 1991, the Judicial Panel on Multidistrict Litigation entered an order transferring all pending federal district court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos to the United States District Court for Eastern District of Pennsylvania. Since the Multidistrict Panel entered its transfer order, this court has received in excess of 38,000 cases; the estimates of state court dockets range from 70,000 to 100,000 cases. In its order, the Panel determined that those cases involved common questions of fact relating to injuries or wrongful death allegedly caused by exposure to asbestos and that centralization would best promote the just and efficient conduct of that litigation.

The Multidistrict Panel's decision to consolidate these cases was made only after consideration of the burden that asbestos litigation has placed on the federal courts and the interests of all plaintiffs and defendants involved in the cases. Noting that the consolidation might prove burdensome or inconvenient to some parties involved, the Panel concluded that centralization in the Eastern District of Pennsylvania, while offering no panacea, would provide "a great opportunity to all participants who sincerely wish to resolve asbestos claims fairly and with as little unnecessary expense as possible". The Panel, in its order, also stated:

---

3. D. Hensler, W. Felstiner, M. Selvin and P. Ebener, <u>Asbestos in the Courts - The Challenge of Mass Toxic Torts</u>, The Rand Corporation - Institute for Civil Justice, 1985.

information convinced the court that the state and federal courts had to work together in a coordinated effort to resolve these cases. The court met and continues to meet with the State Court Toxic Tort Committee on a regular basis. The focus of the court in its own cases prior to multidistrict consolidation was on the victims who were ill and dying and their families. The court has applied this same approach to the MDL.

Plaintiffs, defendants and peripheral parties organized themselves into working committees. The court established separate dockets for maritime and FELA cases because of their involvement with the Jones Act and railroads. The worker cases were also separated because of the number of talc defendants in these actions. The court then undertook to work with these committees, jointly and separately, with the knowledge and agreement of all involved in an attempt to arrive at a global resolution. Unfortunately, this effort, though coming very close to fruition, failed in achieving its stated goal, although all felt this was probably the best means of arriving at an equitable solution.

The negotiation process, however, did provide a vehicle for the parties to begin to talk to each other through the committees and explore alternate methods for a solution to the massive problems involved in these cases. It also had the benefit of establishing better credibility between the plaintiffs and defendants and caused each side to begin analyzing historical data in these cases. The long and arduous adversarial stance, even among those on the same side of an issue, which had developed over the years, caused them to be wary, resentful and distrustful of each other. The court's ability to provide a neutral meeting ground and the committee structure facilitated the process of removing the barriers and getting the various parties to be more cooperative.

5

Various factors, including statistics and regional differentiation in the asbestos bar's outlook on the litigation of asbestos cases, led the court to conclude that narrowing the focus of settlement activity might prove more successful. Consequently, the court next undertook to bring about a regional settlement, hopeful that the example of one region would provide a national model. Focusing first on the New England area, where there appeared requisite case numbers, historical information and counsel interested in settlement, extensive negotiations were begun involving those plaintiffs' attorneys with the greatest number of cases on file, and the attorneys for the core asbestos defendants and peripheral defendants in an effort to resolve blocks of cases[5].

The court's involvement in this process at the behest of the parties was to provide a neutral forum for meetings and to arbitrate those issues the parties were unable to resolve. The defendants agreed to settle the complete inventory of each plaintiff's attorney's case load on the condition that they agree to a "futures agreement", whereby future claims would be entered on pleural registries established by the courts or placed into alternative dispute resolution systems.[6] Many courts in the nation, in order to manage their crowded dockets, have set up pleural registries, or "dormant dockets"[7], into which they can, with the agreement of the parties, place cases involving plaintiffs who are currently

---

5.  These blocks included cases that had grown quite old and those in which there was concern about the viability of the litigants and the availability of necessary evidence.

6.  The Eastern District of Pennsylvania never set up any pleural registries. Prior to and since the initiation of the MDL, this court had never been presented with a futures agreement for review and approval.

7.  The term is one used by defendants and later adopted by the plaintiffs.

JAN. 11. 2002  4. 5:34PM                                    NO. 454  P. 8. 5

asymptomatic.  This procedure's purpose is to guarantee that funds are available to those who were seriously ill or dying or to their surviving family members.  The parties never submitted these futures agreements to the court and each defense counsel separately negotiated with each plaintiff's counsel a futures agreement that met their particular requirements.  Court approval was not needed nor requested and the court has never reviewed or seen a futures agreement.

While the negotiations in New England were progressing, the court focused its attention in other areas of the country and, with the cooperation of the aforesaid committees and local counsel, began the resolution of other cases.  Many serious cases that seemed impossible to settle were remanded; local judges then either set them down for trial or subjected them to alternative dispute resolution.  Certain key cases were also remanded to serve as test cases.  The results achieved in those test cases were used to help resolve substantial blocks of cases in certain areas in the nation.

To date, the court has closed approximately 14,000 cases.  These include cases not originally assigned to the MDL.  Also, through its involvement with the State Court Committee on Toxic Torts, this court has played a role in resolving state cases in a number of jurisdictions.  These efforts have helped to bring the parties together to have a meaningful dialogue and engender an atmosphere of trust.

In so doing, the court constantly focused on the claims of the sick and dying plaintiffs and maintained a constant concern that the transaction costs not exhaust the assets to be used for the compensation of the seriously ill victims.  The court's purpose was to reduce discovery to its essentials and to end overbroad, duplicative and expensive activity

7

by all counsel. Posturing by counsel, the necessity of trial when either or both parties refused to negotiate in good faith and lengthy post trial practice served only to deplete the funds otherwise available to compensate the victims. Very rarely have final judgments ever been subject to execution; instead they are used for bargaining leverage in the resolution of larger numbers or blocks of cases.

### Judicial objectives

Throughout the course of the multidistrict litigation, the court has maintained several overriding objectives. Foremost, it is this court's considered judicial opinion that the sick and the dying, their widows and survivors should have their claims addressed first. Accordingly, the court steadfastly resisted motions to remand cases back to transferor courts unless the claimant was seriously ill or dying and all avenues of settlement were exhausted. In hardship circumstances, the court requested that the remand result in an early trial setting. The court advised counsel that motions to remand involving other circumstances would only serve to deplete resources otherwise available for settlements and thus would be routinely denied. This philosophy has also guided the court in conducting settlement negotiations.

The court sought to follow through on the Panel's observation that consolidation would preserve judicial resources. Consolidation removed from the other eighty-eight (88) federal judicial districts which previously had asbestos cases on their dockets the onus of dealing with the asbestos case load and, perhaps as importantly, relieved those

8

districts of the administrative burdens of these complicated cases. This court also made it a primary objective to coordinate its efforts with those of the state court judges who are managing large asbestos case loads in order to eliminate duplicative efforts, conserve their judicial resources, and better coordinate comprehensive solutions to the national asbestos litigation problem.

Finally, the consolidation of asbestos cases has enabled the court to perceive asbestos litigation from a unique perspective. The major concern of the defendants in asbestos cases is to bring the case load in asbestos litigation to manageable proportions so that the necessary funds can be obtained and allocated for their resolution; the primary concern of the plaintiffs is to move their cases forward and obtain recoveries. In the context of the MDL, the objective of this court is to find a means, through the device of coordinated pre-trial proceedings, to satisfy the interests of justice. In ordering the consolidation of asbestos cases, the Panel sought to promote a just and efficient resolution to the litigation. It is this court's opinion that a continuation of the consolidated MDL proceedings and the cooperation by all those concerned will satisfy the stated goals of all involved to develop a comprehensive plan or plans for the future of asbestos claims procedure in the United States.

The initiation of this action

On January 15, 1993, counsel for the plaintiff's class, Gene Locks of Greitzer and Locks of Philadelphia and Ron Motley of Ness, Motley, Loadholt, Richardson and Poole

9

JAN. 11. 2002   5:34PM
JAN. 11. 2002   4:16PM                                    NO. NO. 454   P. 1 P. 8

of Charleston, South Carolina, filed the complaint in this action, along with motions for class

certification and for approval of a settlement agreement. Although the grapevine which

winds its way among all those involved in asbestos litigation had given the court an inkling

that such a lawsuit was being prepared, until the complaint was actually filed with the Clerk

of Court, this court had no knowledge of the contents of the complaint, the claims to be

included, the defendants to be named, the definition of the putative class, nor of the terms

of the proposed settlement agreement, and the process of negotiations which led thereto.


## Discussion


The motion of the Wiese parties for recusal is premised upon 28 U.S.C.

§455(a), which provides:

> Any justice, judge or magistrate of the United States shall
> disqualify himself in any proceeding in which his impartiality
> might reasonably be questioned.

This section, amended in 1974, has been interpreted as providing an objective, "reasonable

person" standard, which a judge must use in determining whether recusal is appropriate

under the circumstances. The 1974 amendment is also seen as eliminating the so-called

"duty to sit" - the presumption that a judge must not recuse himself unless a clear

demonstration of extrajudicial bias or prejudice is made. Blizard v. Frechette, 601 F.2d 1217,

1220 (1st Cir. 1979). Congress has, however, cautioned that:

> While the proposed legislation would remove the "duty to sit"
> concept of present law, a cautionary note is in order. No judge,
> of course, has a duty to sit where his impartiality might be

10

reasonably questioned. However, the new test should not be used by judges to avoid sitting on difficult or controversial cases.

At the same time, in assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision. Disqualification for lack of impartiality must have a reasonable basis. Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice.

H.R Rep. No. 93-1453, House Judiciary Committee, 93d Cong, 2d Sess., 1974 U.S. Code Cong. & Ad. News 6351, 6355 (emphasis in original). The ultimate issue, committed to the sound discretion of the district judge," is whether a reasonable man would infer that the judge's impartiality is, under all the circumstances, subject to question. This decision is to be made from the prospective of an uninvolved observer in light of the full record, and not simply in the light of an isolated incident. In re Federal Skywalk Cases, 680 F.2d 1175, 1183-84 (8th Cir. 1982); In re Wirebound Boxes Antitrust Litigation, 724 F.Supp. 648, 651 (D.Minn. 1989).

The policy served by §455(a) is crucial to the institutional dignity of the Judicial Branch. The appearance of impartiality in a judicial officer has correctly been termed by our Court of Appeals the "sine qua non of the American legal system", Lewis v. Curtis, 671 F.2d 779, 789 (3d Cir 1982), and a "basic requirement of due process". Haines v. Liggett Group, Inc., 975 F.2d 81, 98 (3d Cir. 1992). As that court has stated, "Congress

8.   In this circuit, review by the Court of Appeals of a district court's action on recusal is by an abuse of discretion standard. Johnson v. Trueblood, 629 F.2d 287, 290 (3d Cir. 1980).

11

enacted section 455(a) precisely because 'people who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges'. . . In high profile cases such as this one, the outcome of which will in some way affect millions of people, such suspicions are especially likely and untoward". In re School Asbestos Litigation, 977 F.2d 764, 782 (3d Cir. 1992). How these lofty goals are translated into workable decision making criteria is perhaps, an even more difficult task. A recusal motion, even one raising frivolous grounds, tends to shift the focus of inquiry from those matters rightly in issue to the manner in which they are resolved. While the courts must take great care to insure the proponents of such a motion are not permitted to unjustly gain the result they seek, merely by propounding the allegation, it remains that the court is thereby placed in the untenable position of examining its own actions to address the averments.

The decisions of other district judges both before and after the 1974 amendment to §455, provide enlightenment on how the objective standard is to be applied. In United States v. Mitchell, 377 F.Supp. 1312 (D.D.C. 1974), former Attorney General John Mitchell requested the recusal of Chief Judge John Sirica on the grounds that he had had prior contact with the proceedings at the grand jury stage, that he had met with the special prosecutor and the prosecution personnel in the absence of defense counsel, and that he had met with columnist Jack Anderson, following Anderson's publication of grand jury minutes. Judge Sirica explained that his prior contact with the case occurred through his duty as chief judge to supervise grand jury proceedings, that the meetings with the special prosecutor were also necessitated by his grand jury duties, and that the alleged meeting with Anderson was

12

actually a meeting with his attorneys resulting in the cessation of publication of the secret minutes. Judge Sirica concluded that each of the activities cited was the result of his judicial activities, rather than evidence of personal prejudice. Accordingly, he denied the motion for recusal, which was affirmed through the denial of a writ of mandamus. Mitchell v. Sirica, 502 F.2d 375 (D.C. Cir. 1974), cert. denied 431 U.S. 933, rehearing denied 439 U.S. 916 (1974).

In Bradley v. School Board (Richmond Virginia), 324 F.Supp. 439, (E.D.Va. 1971), defendants sought the recusal of the district judge because he wrote a letter to plaintiff's counsel, suggesting a means of proceeding in the matter. The judge held that, even assuming that the allegations were true, they did not indicate prejudgment of any factual issues in the case. In deciding that neither 28 U.S.C §144 nor §455 necessitated his disqualification, the judge indicated that in writing the letter he was fulfilling his obligation "to assist the litigants in the case in any appropriate manner to the end that the law is conformed to." 324 F.Supp. at 448.

In Bradley v. Milliken, 426 F.Supp. 929 (E.D. Mich. 1977), plaintiffs sought recusal of the district judge, alleging the court engaged in various ex parte discussions and negotiations and met secretly with numerous individuals and community groups. Applying the reasonable person standard of §455(a), the court denied the motion for recusal on the basis that its actions were not directly related to contested issues, but resulted solely from judicial activities designed to insure a community climate receptive to the court's orders and were well within the court's discretion.

13

Indeed, these cases stand amid a long line of cases distinguishing judicial actions resulting from information learned by the judge in his judicial capacity, from knowledge gained from extra judicial sources. See, e.g., Berger v. United States, 255 U.S. 22, 31 (1920); United States v. Grinnell Corp, 384 U.S. 563, 583 (an alleged bias, to be disqualifying, must stem from an extrajudicial source); United States v. Gordon, 634 F.2d 639 (1st Cir. 1980); United States v. Patrick, 542 F.2d 381 (7th Cir. 1976); United States v. Bernstein, 533 F.2d 775, 785 (2d Cir. 1976) (the rule of law is that what a judge learns in his judicial capacity . . . is a proper basis for judicial observations, and the use of such information is not the kind of matter that results in disqualification); In re Foster Iron Works, Inc., 3 B.R. 715 (E.D. Tx. 1980) (disqualification of judge under §455(a) will result only from extra judicial conduct and not from conduct within judicial context).

The two recent cases from our Court of Appeals also help define when a reasonable observer would find that a judge's partiality might reasonably be questioned. In Haines, the court found it necessary to order a case reassigned on remand where the district judge had included in his decision his personal opinion regarding a defendant's corporate culpability. In In re School Asbestos Litigation, the court granted a mandamus against a district judge who attended a conference sponsored by the plaintiffs' bar wherein he was exposed to the expert scientific evidence which would later be presented at trial. In both these cases, the court, apparently focusing upon the extra-judicial nature of the allegation, found that the district judges should have recused themselves.

From these examples, it may be extrapolated that courts have properly denied motions seeking recusal when the basis for the motion is an allegation of the appearance of

impropriety arising out the court's legitimate judicial actions in trying cases, managing its caseload, and applying the expertise it has garnered in handling similar cases. In those situations, it has been concluded that the reasonable person examining the judge's actions would not find his partiality might be reasonably questioned. Where, however, the allegations involve extra judicial activity, i.e. something not integral to the judicial function, such as the attendance of a conference wherein the judge is exposed to one party's evidence, or stating an opinion regarding the merits of a pending case that is based upon personally held beliefs rather than evidence, the motion for recusal should be granted.

Turning then to the issues presented sub judice, the basis of the Wiese parties' motion is this court's prior involvement with asbestos personal injury litigation, both within the context of the pending multidistrict litigation and the ongoing asbestos litigation track within the Eastern District of Pennsylvania. It is asserted that the court's prior involvement in asbestos cases,

> approving and widely promoting the proposed extrajudicial future claims settlement as the most efficient means for resolving future asbestos claims

Brief in Support of Motion for Recusal at 4, has brought this court's impartiality into question. While acknowledging that some judicial role in the settlement process is entirely appropriate, Id., citing Johnson v. Trueblood, supra, 629 F.2d 287, the Wiese parties allege that the court has engaged in ex parte contacts with counsel for asbestos victims and others

wherein this type of an "extrajudicial" settlement of future claims has been touted as a preferred method to obtain maximum settlement value for present claims.[9]

It is noted initially, that no affidavit, affirmation of counsel or other evidence to substantiate this claim is appended to the instant motion. While the Wiess parties request discovery in aid of their motion, it is incumbent upon them to come forward with some substantiation of their allegations at the time those allegations are made to merit further inquiry. The court would hope that counsel had some basis for filing this motion, which contains such serious allegations and cannot understand why some preliminary effort to substantiate these allegations was not attempted prior to the time the motion was filed. This failure weighs heavily upon the question of whether their allegations of impartiality are objectively reasonable.

Addressing the merits of the allegation, the court finds that application of the objective standards of §455(a) does not require that the court recuse itself from this litigation. This court's preference for a negotiated resolution of asbestos claims, rather than litigation, is well known. From its handling of asbestos claims from their genesis, this court has developed a unique perspective and insight into the vagaries of these cases. This has

---

9. We do not understand the movant's use of term "extra judicial" to describe the proposed future claims vehicle as invoking the line of cases cited above distinguishing information garnered by a judge through his involvement in a case with an extra judicial bias derived from something other than the judge's participation in judicial proceedings. If this was the movant's intention, we reject this characterization. There is no explanation why this settlement, if approved by the court and executed under its auspices, constitutes an extra judicial remedy.
    As stated above, it was the defendants who insisted on a futures agreement or pleural registry as a condition for settling the plaintiffs' cases, to which the plaintiffs agreed.

16

shaped the court's judicial philosophy in managing these cases along two interrelated lines: making sure that those who are seriously ill and their families receive a priority, and reducing transactional costs to make more money available for those who truly deserve it.

This court's experience over the past decade led the Judicial Panel on Multidistrict Litigation to select this court as the transferee of all asbestos personal injury litigation suits pending in the federal courts.[10] Since being designated as the asbestos coordinating judge for this district, and later as transferee judge under the Panel's transfer order, this court has carefully reserved for itself the role of management of these cases, while designating other judges to hear trials and dispositive motions.[11] Specifically, in the matter

---

10. In its order the Panel stated:

> The Panel has decided to centralize this litigation in the Eastern District of Pennsylvania before Judge Charles R. Weiner. We note that: 1) more asbestos personal injury or wrongful death actions are pending in that district than any other; 2) the court there has extensive experience in complex litigation in general and asbestos litigation in particular; and 3) the court has graciously expressed its willingness to assume the responsibility for this massive undertaking.

J.P.M.L. Docket No. 875, Order of July 29, 1991, slip op at 13. At the time the Panel transferred the cases, this district's asbestos docket was among the most current in the country, even though it had one of the highest concentrations of asbestos filings. Were it not for the institution of the MDL, this district would have no asbestos backlog.

11. In addition to the one instance cited by the movants, the court has also called upon Judge Robert Parker of the District of Texas and Circuit Judge Patrick Higginbotham of the Court of Appeals for the Fifth Circuit to help with MDL cases involving defendant Fiberboard because of their familiarity with issues presented in those cases.

It has as of this date involved in various capacities more than sixteen federal and state court judges in order to expedite these cases.

17

JA1JAN.11.2002 4 6:00PM                                    NO.NO.1.456 P.1.8

sub judice, the court has designated another judge to pass upon the fairness to the class of the proposed settlement reached between the parties.[12] While the Wiese parties cite this order as indicating that this court itself perceives an appearance problem, it must be remembered that the Judicial Panel approved this procedure for the management of the MDL, recognizing that the shear breadth of asbestos litigation would cause problems in administration and tax the finite resources of any district judge.[13]

12. It should also be noted, that while this court granted the plaintiffs' motion for class certification, it was granted conditionally, subject to decertification, should any issue of the adequacy of class representation arise. Accordingly, this court's order was merely ministerial, entered so that the proceedings in this matter could move along expeditiously. Several of the motions filed by the Wiese parties involve the conditional class certification order. It has always been the court's intention to assign class certification issues to another judge, to be determined in conjunction with the issue of fairness of the settlement. The order which follows effectively makes this assignment, since the pending motions are dismissed without prejudice to the Wiese parties filing objections on these same grounds in the course of the fairness hearings.

13. It should also be noted that another of the Wiese parties' specific charges, that the court organized and met with a group of bankruptcy judges who are hearing asbestos defendants' reorganization cases, also arose out of a Panel proceeding. The movant's allege that the court "touted the virtues of this settlement device" and that a memorandum prepared for that conference sets out the means and merits to accomplish it. Again, significantly, no substantiation of this allegation is included with the brief. The court prepared no such memorandum. To aid the court's duty to prepare quarterly reports ordained by the Panel, the conference was convened, at the suggestion of the Panel, to coordinate activities in order to obtain additional funding for the asbestos victims and to provide a coordinated approach for the processing of the asbestos claims, to address the concerns of those and other judges involved to keep transaction costs and fees at a minimum and to expedite the distribution of those funds. Congress in considering a bill to attempt to eliminate "soaring costs and inefficiencies" that exist in the Bankruptcy Act.

It should be noted that despite all these allegations, the office of the counsel for the Wiese parties has asked for the court's intercession in negotiating a settlement of the entire inventory for a counsel for the plaintiff from another state in which the defendants insisted as they have in all such matters to a futures agreement. The court merely got the parties together, communicating and negotiating, and the court was subsequently advised that the cases had been settled and that futures agreements had been negotiated. The court never saw nor was privy to these agreements the same as in the previous futures agreements entered into by other counsel.

In order to effectuate the goals of reducing transaction costs and ensuring the sick are compensated, it has often become necessary for the court to involve itself in the negotiations, at the invitation of the participants, to amicably resolve suits and ensure the process continues apace. In so doing, the court studiously avoids ex parte contacts unless, during the give and take of negotiation, it appears that speaking with the parties in confidence will assist the process. This is usually requested by the parties. In those circumstances, the court always seeks the permission of all parties to speak with them separately. There has never been an objection to this process as it is done at their behest.

In managing this MDL, the court, in accordance with the Manual for Complex Litigation, has appointed and met with, on a continuous basis, plaintiff and defendant steering committees. The court has also met with individual plaintiffs' attorneys, defendants' national counsel and local counsel in a continuous effort to develop methods for the

19

resolution of common issues which arise in these cases[14]. The court also receives numerous requests from all counsel to hold conferences to expedite outstanding matters, so as to avoid paper wars and additional expense. The court denies, unequivocally, that it has in any way "created this lawsuit" as the Wiese parties allege, or engaged in conduct which would reasonably lead one to conclude that it had any role therein. There is a great leap in the movant's logic in concluding from the court's willingness to foster and aid the parties to communicate and negotiate settlements, that the court in some manner engineered the filing of this action, or involved itself in the pre-complaint negotiations.

Indeed, nothing is further from the truth. As stated, this action was filed by the parties with no prior notice to the court of the contents of the complaint or the settlement agreement. The volume of the complaint and proposed settlement agreements are witness to the fact that many hours must have been spent by all counsel prior to the initiation of the suit. This is agreed to by the Wiese parties. See, Brief in Support of Motion to Intervene at 4 (. . . present class representatives have invested months of negotiation into the settlement. . .) Had the court been involved with these parties prior to the filing of the complaint, as alleged by the movants, the court could scarcely have spent any time on its other dockets. In short, this court has not permitted its role as a facilitator of negotiations in current MDL cases to obscure its paramount duty to administer the law in a manner that is both fair in fact and has the appearance of fairness.

---

14. The court averages over two hundred pieces of mail per day, which includes among other things motions, complaints, answers, briefs, orders, stipulations, correspondence and other sundry matters.

We find it patent from the Wiess parties' brief that their objection to the court's actions derive from the court's judicial philosophy, prior experience and understanding of the dynamics of asbestos personal injury litigation, rather than from some extra-judicial source or bias. The activities of the court which form the basis of the motion are not directly related to contested issues of liability, proximate cause and damages which arise in individual constituent lawsuits within the MDL. Rather they are judicial actions taken in the context of managing the MDL, along the lines of the court's experiences gained from handling these cases, and working with the parties to bring about a universal resolution of the issues. The court's objectives, as previously set out, have not precluded the court from retaining an open mind and forum to receive input from diverse sources[15]. The court has received communications from many sources who feel that they have an "answer" to this massive tort litigation all of which have been either published or sent to plaintiffs and defendants as well as the court.

We find that an objective reasonable person, placed in the position of an uninvolved observer familiar with the full record of asbestos litigation in this country, would determine that the instant motion is motivated not by a perceived appearance of impropriety in the actions of the court, by rather by the fear that, if recusal does not occur, the

---

15.   The court has previously granted amicus curiae status to Fibreboard Corporation, Owens Corning Fiberglas, Inc., Owens-Illinois, Inc., the state of Texas, W.R. Grace & Co. - Conn, and Pittsburgh Corning Corporation and has also permitted participation by the White Lung Association, a national asbestos victims' association, which is appearing pro se.

21

controlling point of law will be resolved against the Wiese parties' interests.[16] As quoted above from the legislative history of §455, in assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision.

For these reasons, the motion pursuant to 28 U.S.C. §455(a) will be denied. Thus, we shall address the other motions filed by the Wiese parties.

## The motion to intervene

In their original motion, the Wiese parties averred that intervention under Rule 24(a) should be granted as of right because they have substantial interests in the subject matter of this action, they need the ability to protect those interests, and their interests may not be adequately represented by existing representative parties. Alternatively, they contended that permissive intervention should be granted because their intervening complaint raised common issues of law and fact, and because they are members of the class on whose benefit the original action was brought. After CCR's response was received, the court directed the intervening plaintiffs to file a reply to CCR's averments that the interven-

---

16.   It should be stressed that the solution to having the case *sub iudica* resolved against the movants' interest is for them to opt out of this Fed. R. Civ. P. 23(b)(3) class action.

22

tion would deprive this court of diversity jurisdiction and that they did not meet the requirements of Fed. R. Civ. P. 24.[17]        Rule 24(a)(2) provides:

> Upon timely application anyone shall be permitted to intervene in an action . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Thus, whether applicants are entitled to intervene under 24(a)(2) depends upon their meeting three criteria:

> First, that they had sufficient interest in the matter, and that their interest would be affected by the disposition; second, that their interest was not adequately represented by the existing parties; and third, that their application was timely.

Commonwealth of Pennsylvania v. Rizzo, 530 F.2d 501, 504 (3d Cir. 1976). We find the Wiese parties have failed to demonstrate that whatever interests they have will not be adequately represented by the existing class representatives, so as to qualify to intervene in this action as a matter of right.

The burden, however minimal after Trbovich v. United Mine Workers, 404 U.S. 528, 538, n.10 (1972), is on the applicant for intervention as of right to show that his interests are not adequately represented by the existing parties. Hoots v. Pennsylvania, 672 F.2d 1133, 1135 (3d Cir. 1982). A determination of the adequacy of representation issue must focus upon "a comparison of the interests asserted by the applicant for intervention and the existing party". United States v. I.B.M., 62 F.R.D. 530, 535 (S.D.N.Y. 1974). If the

_____

17.   At Oral Argument, class counsel joined in the CCR opposition to the Wiese parties' intervention.   Transcript of Hearing on Motion to Intervene of March 31, 1993 at 23.

23

existing parties' interests are adverse to the proposed intervenors, intervention will ordinarily be granted assuming compliance with the other requirement of Rule 24(a)(2).  7A Wright & Miller, Federal Practice and Procedure § 1909.  If the applicants' interests are considered similar to those of the existing parties, intervention will be granted unless it is clear that the existing parties will provide adequate representation.  Id.  Finally, if the interests of the applicants and existing parties are deemed identical, the applicants must make a compelling showing why representation by the existing parties will not be adequate.  Id.  Representation of an absent party is generally considered adequate if no collusion is shown between the representative and an opposing party, if the representative does not represent an interest adverse to the proposed intervenor, and if the representative has been diligent in prosecuting the litigation.  Delaware Valley Citizens' Council v. Commonwealth of Pennsylvania, 674 F.2d 970, 972 (3d Cir. 1982).

In their brief, the only argument proffered by the Wiese parties to show their interests are adverse to the representative parties, is their suspicions about the manner and circumstances in which the settlement of this action was negotiated.  They state:

> Since the present class representatives have invested months of negotiation into the settlement, they may not perceive a need to conduct discovery into those issues; thus, intervention is necessary to ensure that all aspects of the settlement are explored, including the manner in which it was negotiated.

Brief in Support of Motion to Intervene at 4.[18]  This argument misses the mark.  While it may be cause to object, at an appropriate time, to the fairness of the settlement reached

---

18.   In their Reply to CCR Defendants' Memorandum in Opposition to Motion to Intervene, the Wiese parties also apparently incorporate by reference their more extensive discussion of this issue in their separate Motion to Disqualify Class Counsel and Supporting Brief.

24

between the representative parties and CCR, it does not establish the type of adverseness of interest required by Rule 24(a)(2) for intervention as of right.

Indeed, the arguments presented by the Wiese parties demonstrate that their status should more appropriately be that of objectors, rather than intervenors. Accordingly, invoking the discretion accorded this court by Rule 24(b)(2)[19], we also find that permissive intervention should not be granted at this time. We note that the Wiese parties' Complaint in Intervention raises the same issues as the class complaint. While the settlement they would prefer might diverge from those of the class representative, a putative intervenor's interest is not inadequately represented merely because its motives in the litigation are different from that of a party to the action. _Washington Electric Cooperative, Inc. v. Massachusetts Municipal Wholesale Electric Co._, 922 F.2d 92, 98, (2d Cir. 1990). As objectors to the class representatives' settlement, they would have the right to appear through counsel, participate in the fairness hearing and conduct discovery. Further, as counsel for CCR point out, they would have standing to appeal the court's approval or disapproval of the class action settlement. Clearly, this is the option favored by the authors of the _Manual for Complex Litigation 2nd_ when they stated:

---

19.   Rule 24(b)(2) provides:
      Upon timely application anyone may be permit-
      ted to intervene in an action: . . . (2) when
      an applicant's claim or defense and the main
      action have a question of law or fact in
      common. . . . In exercising its discretion
      the court shall consider whether the interven-
      tion will unduly delay or prejudice the adju-
      dication of the rights of the original par-
      ties.

Formal intervention by class members is usually unnecessary and inadvisable. Class members in (b)(3) actions may, however, appear by their own attorneys, subject to the court's power to adopt appropriate controls regarding the organization of counsel.

Id. at §30.15 n. 31 (1986).

Accordingly, the court's order of February 19, 1993, granting the Wiese parties' motion to intervene will be vacated, without prejudice to their continued rights to file objections to the class settlement as putative members of the class. Additionally, the Wiese parties shall be granted the status of amicus curia, so that they may comment on issues brought to the court's attention by other parties.

## The Wiese Parties' Other Motions

Also before the court are motions filed by the Wiese parties after the court's February 19, 1993 order was entered, seeking (1) to decertify the class; (2) to dismiss the action for lack of subject matter jurisdiction or in the alternative for partial decertification of the class; (3) to dismiss this matter on the grounds it is collusive; (4) to create sub-classes; and (5) to disqualify class counsel. We do not believe that these motions should be dismissed as moot now that the February 19, 1993 order has been vacated. Several of them will presumably be reasserted as objections to the fairness of the settlement at the appropriate time, and we do not wish to place an imprimatur upon their merit. Instead, the motions filed by the Wiese parties shall be dismissed without prejudice to their being reasserted as objections to the class settlement. The Wiese parties and all other interested

26

JR JAN. 11. 2002  4  6:03PM

NO. 456    P. 17
NO. 523    P. 28

parties will be granted leave to renew all their objections before the judge assigned to hear this matter.

An appropriate order follows.

27

JAN.11.2002 41 6:03PM

*CRW*

NO. 456  P. 18
NO. 924

(292)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD J. CARLOUGH; PAVLOS
KEKRIDES and NAFSSICA KEKRIDES,
his wife; LAVERNE WINBUN,
Executrix of the Estate of
JOSEPH E. WINBUN, deceased;
AMBROS VOGT, JR. and JOANNE
VOGT, his wife; CARLOS RAVER
and DOROTHY M. RAVER, his wife;
JOHN A. BAUMGARTNER and ANNA
MARIE BAUMGARTNER, his wife;
TIMOTHY MURPHY and GAY
MURPHY, his wife; TY T. ANNAS; and
FRED ANGUS SYLVESTER,

ON BEHALF OF THEMSELVES AND
ALL OTHERS SIMILARLY SITUATED

v.

AMCHEM PRODUCTS, INC., ET AL

FILED

APR 1 6 1993

MICHAEL E. KUNZ, Clerk
By _____ Dep. Clerk

C.A. NO. 93-215

## ORDER

The motion of Carl D. Roland, Gloria J. Roland, Shelva D. Wiese, Carl D.
Payne, Sr., Helen E. Payne, Walter L. Mays, Sr., and Shirley G. Mays, pursuant to 28 U.S.C.
$455(a) is DENIED.

28

The court's Order of February 19, 1993, granting the motion of Carl D. Roland, Gloria J. Roland, Shelva D. Wiese, Carl D. Payne, Sr., Helen E. Payne, Walter L. Mays, Sr., and Shirley G. Mays to intervene as parties plaintiff in this matter is VACATED.

In its stead, the motion of Carl D. Roland, Gloria J. Roland, Shelva D. Wiese, Carl D. Payne, Sr., Helen E. Payne, Walter L. Mays, Sr., and Shirley G. Mays to intervene as parties plaintiff in this matter is DENIED.

Shelva D. Wiese, Carl D. Payne, Sr., and Helen E. Payne are sua sponte granted the status of amicus curia, as well as the status as objectors to the class settlement, should they wish to so proceed, or such other status as the court may grant them.

The motions of Shelva D. Wiese, Carl D. Payne, Sr., and Helen E. Payne (1) to decertify the class; (2) to dismiss the action for lack of subject matter jurisdiction or in the alternative for partial decertification of the class; (3) to dismiss this matter on the grounds it is collusive; (4) to create sub-classes; and (5) to disqualify class counsel are DISMISSED WITHOUT PREJUDICE to their being reasserted as objections to the class settlement.

IT IS SO ORDERED.

CHARLES R. WEINER

29

# EXHIBIT D

JAN.18.2002  1:30PM

CRW

NO.646   P.2
NO.894   P.2/7

658

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS FILED,
LIABILITY
LITIGATION (NO. VI)

SEP 9 1992

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

CIVIL ACTION NO. MDL 875
(Including MARDOG, FELA,
and TIREWORKER cases)

This Document Relates
ALL ACTIONS

## ADMINISTRATIVE ORDER NO. 3

It is the intention of the Court that the cases be resolved through negotiation wherever possible. The Court and all parties agree that, as that process proceeds, it is often necessary to give special attention to certain cases. Although all settlements represent steps toward the Court's ultimate goal, special efforts to resolve these cases are not a substitute for broad-based negotiations designed to reduce the docket backlog.

In accordance with ADMINISTRATIVE ORDER NO. 2 Plaintiffs' counsel has previously submitted information to the Court relating to their malignancy and asbestosis cases. The Court has determined to give a priority to malignancy, death and total disability cases where the substantial contributing cause is an asbestos-related disease or injury. The following procedures are hereby established for review, settlement and/or further action in these cases:

I     SELECTED CASES

Selected cases are identified by disease category. In each case, plaintiff's counsel must have a written medical opinion by a board certified specialist setting forth that exposure to asbestos or asbestos-containing products is a substantial contributing cause to the condition or death of plaintiff (plaintiff's decedent). The disease categories are:

A.   Mesothelioma, living and deceased.
B.   Lung Cancer, living and deceased.
C.   Other malignancies, living and deceased.
D.   Asbestosis, total disability deceased or total disability living.

II    PROCEDURES FOR PLAINTIFFS' COUNSEL

The Court will process all cases previously identified by Plaintiffs' counsel pursuant to ADMINISTRATIVE ORDER NO. 2 as mesothelioma and lung cancer in accordance herewith UNLESS the


PLAINTIFFS EXHIBIT

Court is advised that such cases do not meet the above criteria. Plaintiffs' counsel must affirmatively identify all other malignancy and asbestosis cases which meet the requirements hereof. In all instances hereunder, the cases shall be identified by plaintiff's name, the transferor jurisdiction, and the individual case number assigned by the transferor district. The Court will advise plaintiffs' counsel (with a copy to defense, plaintiff's and peripheral liaison counsel) when his/her cases are ready for processing. Plaintiffs' counsel shall then take the following steps:

A. Identify to the Court all remaining viable defendants from whom plaintiff expects to recover damages.

B. Provide the necessary fact information for defense counsel to process the cases for settlement. (Work history, exposure information, date of birth/death, medical history, smoking history, Social Security Number, and printout or release etc.)

C. Provide defense counsel with X-rays and pathology in plaintiff's possession, together with necessary releases for medical and employment records.

D. Provide a reasonable settlement demand to each remaining defendant.

E. Notify the Court when each of the above requirements is completed.

III  PROCEDURES FOR DEFENSE COUNSEL

Each defendant shall be prepared to identify the counsel who will be available and able to conduct all settlement negotiations with any particular plaintiffs' counsel. Defense counsel shall take the following steps in these proceedings:

A. Within fifteen (15) days of receipt of notice that plaintiffs' counsel has complied with the requirements set forth in Section II above, notify the Court and Plaintiff's counsel by telephone and in writing as to any discrepancies in such notice, and set forth in detail all necessary additional information.

B. Within forty-five (45) days of receipt of the information from the plaintiff necessary to engage in settlement negotiations and the demand from plaintiffs' counsel, defense counsel shall review the same and accept such terms or make a reasonable offer for settlement.

JAN. 18. 2002 1:31PM

NO. 646   P. 4
NO. 894   P. 4/7

## IV   SETTLEMENT NEGOTIATIONS

Following the initial procedures, all counsel shall make themselves readily available for personal and telephone settlement conferences. AT THIS TIME, NEGOTIATION IS TO BE ONGOING AND IN GOOD FAITH. All counsel are to report no less than once a week by telephone to the Court as to their progress. The Court will be available on a regular basis for participation in a settlement conference, either by telephone or in person. If, after thirty (30) days, any party feels that his/her opponent is not negotiating in good faith, they may request the Court to forward the matter to the Mediation Committee for a recommendation. If a request is made to refer the matter to the Mediation Committee, such request shall be honored by the Court. When the Court determines that further settlement discussions are unlikely to be productive, the Court will hold a termination conference to discover the status of all remaining parties to the action(s) in negotiation and to determine whether the case is to be forwarded to the Mediation Committee. A referral may be of one or a number of cases. If no request for referral is made, and the parties have been unable to resolve their differences, the Court shall determine whether the matter is appropriate for immediate remand.

## V   MEDIATOR

The Court shall appoint a neutral mediator for each case who is familiar with the jurisdiction. Once the Mediator is selected, he/she shall hear all referrals for that jurisdiction subject to resignation or Court reassignment. Upon receipt of a referral from the Court, the Mediator shall take the following action:

A.  Provide notice to each party of the time and place of a mediation hearing, which hearing shall take place no sooner than ten (10) days after such notice, but as soon thereafter as possible.

B.  Each party may provide a short position statement to his/her opponent and to the Mediator no less than five (5) days prior to the hearing.

C.  The Mediator shall set forth his/her own rules for proceeding on the referral and shall advise the participants.

D.  At the hearing the Mediator shall attempt to mediate settlement as to all parties. As to any case in the group that is not so resolved, the Mediator shall determine whether the participants have negotiated in good faith. This determination shall be made on a case-by-case basis.

E.  The Mediator shall make a report to the Court setting forth his/her determination regarding the good or bad faith of all parties to the negotiations. Upon receipt of the report from the Mediator, the Court shall allow those parties who have been negotiating in good faith a reasonable time to complete a settlement. There shall be a presumption that where the plaintiff has acted in good faith and one or more defendants have been found to be acting in bad faith, the case will be immediately remanded for trial as to such defendants. If all parties are acting in good faith the Court will make additional efforts to settle the case. If no settlement is achieved the matter will be remanded. The Court will act promptly in all respects upon receipt of a report from the Mediator.

F.  All information provided to the Mediator by the parties shall be kept in confidence except as set forth to the Court in the Mediator's report.

VI  **GOOD FAITH NEGOTIATIONS**

In order for the participants to the settlement negotiations to be in good faith, there must be a reasonable relationship between their demand/offer and the following criteria:

A.  Historical settlement averages between the same defendants with the same plaintiff's counsel in the same jurisdiction in similar cases. Variances from such historical criteria can be justified by the following factors:

1.  Severity/mildness of disease.
2.  Lack of exposure to product.
3.  Personal factors, i.e./ smoking, age, occupation, etc.
4.  Other persuasive evidence.

B.  Historical averages by disease category for cases that have been previously settled in that jurisdiction with that plaintiff's counsel and with that defendant.

C.  If there is no historical settlement average by disease category between plaintiff's counsel and the defendant in the jurisdiction from which the case arises, then comparable settlement averages for similar cases in that same jurisdiction with that defendant shall be confidentially provided to the Mediator.

JAN.18.2002   1:32PM   PM

NO.646   P.6
NO.894   P.6/7

Because different viewpoints of the same case are
equally understandable, a finding of bad faith is not necessary
in all instances where the parties are unable to reconcile their
differences and settle.

BY THE COURT:

Date: ___9/2/92___

CHARLES R. WEINER, J.

Xc 9/10/92: attached liaison counsel list
                      all USDC's
                      attached pltff's counsel list (498)

# EXHIBIT E

27

1  JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

2  MIDDLE DISTRICT OF FLORIDA

3  FORT MYERS, FLORIDA

4  DOCKET NUMBER 875

5  In Re:  Asbestos Products Liability Litigation (No. VI)

6

7  DATE OF HEARING:    January 29, 1999

8  LOCATION OF HEARING:  United States Courthouse
                          2110 First Street
9                        Fort Myers, Florida  33901

10  CHAIRMAN:

11  JUDGE JOHN F. NANGLE
     United States District Court
12   Southern District of Georgia

13

14  MEMBERS:

15  JUDGE WILLIAM B. ENRIGHT
     United States District Court
     Southern District of California
16

17  JUDGE CLARENCE A. BRIMMER
     United States District Court
     District of Wyoming
18

19  JUDGE JOHN F. GRADY
     United States District Court
     Northern District of Illinois
20

21  JUDGE BAREFOOT SANDERS
     United States District Court
     Norther District of Texas
22

23  JUDGE LOUIS C. BECHTLE
     United States District Court
     Eastern District of Pennsylvania
24

25  JUDGE JOHN F. KEENAN
     United States District Court

COPY


PLAINTIFF'S EXHIBIT

69

1    I just tried, what, three, four asbestos

2 cases within the last two months. All these judges up

3 here have been through it. We know. But the problem

4 is a big problem to try to keep these companies from

5 going under and to try to keep it in some kind of an

6 organized fashion. That's our game.

7    MR. BAUGHMAN: Your Honor, there are public

8 policy problems that you have just identified and

9 others have been identified as well.

10   JUDGE NANGLE: We all know Congress should

11 have taken care of it, but it didn't.

12   MR. BAUGHMAN: Those are substantive

13 problems that it's up to the State legislatures, the

14 State courts or Congress to deal with. It is not the

15 role of 28 U.S.C. 14.07(a) and the transferee court

16 that has been transferred to multidistrict litigation

17 under that statute.

18   JUDGE NANGLE: I tell you, if you had cases

19 in my district, you wouldn't survive because we -- I'd

20 challenge the lawyer who handles them in the Southern

21 District of Georgia. He'll tell you, try em, try em

22 and get done with them and they all -- anything but

23 trial is the answer.

24   MR. BAUGHMAN: The vast majority of asbestos

25 litigation in this country now is in State courts, as I

# EXHIBIT F

AUG. 10. 2000 11:54AM    JPML     **FAX TRANSMITTAL SHEET**     NO. 2752   P. 1



# JUDICIAL PANEL ON MULTIDISTRICT LITIGATION
One Columbus Circle, NE
Thurgood Marshall Federal Judiciary Building
Room G-255
Washington, DC 20002-8004

Telephone: (202) 502-2800    FAX Nº: (202) 502-2888

Date: August 10, 2000                    Time: 11:46 AM

To:    Ms. Kay Gunderson Reeves

From: Ariana Estariel

Re:    REQUEST OF AUGUST 9, 2000

Notes: Dear Ms. Reeves:

Here is your request. I have provided the information based on fiscal year data as opposed to calendar year data. When the word "remand" is used it is a reference to a 28 U.S.C. §1407 remand. The word "dismissed" as used encompasses several methods for termination within the transferee court which the Panel does not break out in their statistics. If there is any jargon that may not be immediately clear to you or I may be of additional service, please call me at (202) 502-2811. An invoice is also enclosed.

Sincerely,

*Ariana Estariel*

Number of pages transmitted (including this page) 3

Original document is being ____ *mailed* _X_ *retained in our file.*


PLAINTIFF'S EXHIBIT

Please call the Panel office regarding any difficulties involved in this transmission.

NO. 2752    2

AUG. 10. 2000 11:54AM

**Judicial Panel on Multidistrict Litigation**
**MDL-875 — Request of August 9, 2000**

As of August 10, 2000:
    Total Transferred to PAE Under §1407:    86,746
    Total Filed in the Transferee Court:    7,376

        Combined Totals:    94,122
        Total Pending:    32,892

Terminated Actions:
  From October 1, 1997 to September 30, 1998
      Total Cases Remanded:    4
      Returned/Claims Remaining:    162
      Total Dismissed or Terminated
        Via §1404* Transfer:    12,998

  From October 1, 1998 to September 30, 1999
      Total Cases Remanded:    6.
      Returned/Claims Remaining:    0
      Total Dismissed or Terminated
        Via §1404 Transfer:    1,084

  From September 30, 1999 to August 10, 2000
      Total Cases Remanded:    199
      Returned/Claims Remaining:    0
      Total Dismissed or Terminated
        Via §1404 Transfer:    2,276

* 28 U.S.C. 1404

*[handwritten notes:]*
100 Terminated 1404 = 100
DISMISS or Termin total
Via 1404 Transfer most
: J. Weiner decides #=
: 1404 Transfer (to dismissed
    effectuate dismissal) —
pre-dates 1407.
Lexecon: 1404 dismiss/
    transfer err. nt.

NO. 2752    P. 3

AUG. 10. 2000  11:54AM    JPM!

ED ID#. 53-0197081

_able Upon Receipt

| INVOICE DATE: August 10, 2000 |
| FUND: 322388  MXXXXXC |

# JUDICIAL PANEL ON MULTIDISTRICT LITIGATION
*One Columbus Circle, NE, Room G-255*
Washington, DC 20002-8004

Phone: (202) 502-2800

BILL TO:    Kay Gunderson Reeves
Kaeske Reeves LLP
6301 Gaston Avenue
Suite 735
Dallas, TX 75214

Telephone Nº: (214) 877-1721

Please remit check to this office in the amount of $ 15.00  payable to:

## Judicial Panel on Multidistrict Litigation
(Please reference the above Invoice Date and Fund information on check and return a copy
of this invoice with your remittance)

MDL Docket Nº: 875 – In re Asbestos Products Liability Litigation (VI)

Pleading Nº(s) or description of document(s) copied/certified and/or retrieved from Federal Records Center or
Automated Diskette Information:

1)    Information on terminated cases for 1998 & 1999

Nº of pages @ $0.50 per page ____          Nº of documents certified @ $5.00 each ____
Nº of diskettes @ $25.00 each ____          Nº of dockets retrieved from Federal Records Center @ $25.00 per docket ____
Nº of names/items researched @ $15.00 per name/item _1_ (See numbered list above)

### THANK YOU

Office of the Clerk, Judicial Panel on Multidistrict Litigation

By: _____
Clerical/Automation Analyst

# EXHIBIT G

SUMMARY BY DOCKET OF MULTIDISTRICT LITIGATION PENDING AS OF SEPTEMBER 30, 2003, OR CLOSED SINCE OCTOBER 1, 2002

## THIRD CIRCUIT
### (continued)

| Index to Trf Dist | MDL No. | MDL Caption | Transferee Judge | Transferor Districts and Number of Cases Transferred | Total Trf'd | Total Filed in Trf Court | Dis'd | Rem'd | Cases Pending |
|---|---|---|---|---|---|---|---|---|---|
| | 1514 | Electrical Carbon Products AT | Simandle, J.B. | 1-CAN; 1-ILN; 10-FAE.............. | 12 | 4 | 0 | 0 | 16 |
| | 1540 | MOSAID Technologies, Inc., PAT | Mantini, W.J. | 1-CAN.............. | 1 | 1 | 0 | 0 | 2 |
| | 1550 | IDT Corp. Calling Card Terms | Walls, W.H. | 1-NYS.............. | 1 | 1 | 0 | 0 | 2 |
| 313 | | **PENNSYLVANIA, EASTERN** <br> *13 Litigations* | | | | | | | |
| | 875 | Asbestos PL (No. VI) | Weiner, C.R. | 154-AK; 3-ALM; 119-ALN; 97-ALS; 70-ARE; 15-ARW; 358-AZ; 50-CAC; 10-CAE; 285-CAN; 57-CAS; 252-CO; 125-CT; 42-DC; 24-DE; 332-FLM; 16-FLN; 218-FLS; 52-GAM; 365-GAN; 1295-GAS; 1974-HI; 33-IAN; 938-IAS; 87-ID; 1069-ILC; 1104-ILN; 447-ILS; 1138-INN; 1576-INS; 179-KS; 202-KYE; 262-KTW; 288-LAE; 129-LAM; 260-LAW; 3051-MA; 1294-MD; 546-ME; 313-MIE; 35-MIW; 167-MN; 202-MOE; 95-MOW; 16-MSN; 1101-MSS; 187-MT; 484-NCE; 264-NCM; 36S-NCW; 165-ND; 146-NE; 125-NH; 363-NJ; 298-NM; 157-NV; 149S-NYE; 620-NYN; 4810-NYS; 466-NYW; 46929-OHN; 159-OHS; 24-OKE; 625-OKN; 138-OKW; 183-OR; 245-PAM; 320-PAW; 6-PR; 253-RI; 1576-SC; 6-SD; 239-TNE; 78-TNM; 78-TNW; 5326-TXE; 1316-TXN; 809-TXS; 53-TXW; 340-UT; 826-VAE; 387-YAW; 88-VT; 2-VT; 140-WAE; 297-WAN; 512-WIE; 261-WIW; 22-WVN; 654-WVS; 70-WY.......... Returned/Claims Remain.......... | 99268 | 7428 | 73748 | 346 | 31782 |
| | 969 | Unisys Corp. Retiree Medical Benefit "ERISA" | Kaufman, B.W. | 1-MIE; 1-MN; 1-NYE.............. | 3 | 8 | 6 | 0 | 5 |




SUMMARY BY DOCKET OF MULTIDISTRICT LITIGATION PENDING AS OF SEPTEMBER 30, 2004, OR CLOSED SINCE OCTOBER 1, 2003

Page 8

## THIRD CIRCUIT
### (continued)

| Index to Tre.Dist | MDL No. | MDL Caption | Transferee Judge | Transferee Districts and Number of Cases Transferred | Total Tr'd | Total Filed in Tre Court | Cases Terminated Dis'd | Rem'd | Cases Pending |
|---|---|---|---|---|---|---|---|---|---|
| | 1514 | Electrical Carbon Products AT | Simandle, J.B. | 1-CAN; 1-ILN; 10-PAE........... | 12 | 12 | 20 | 0 | 4 |
| | 1540 | MOSAID Technologies, Inc. PAT | Martini, W.J. | 1-CAN........... | 1 | 1 | 0 | 0 | 2 |
| | 1550 | IDT Corp. Calling Card Terms | Walls, W.H. | 2-NYS........... | 2 | 2 | 1 | 0 | 3 |

**PENNSYLVANIA, EASTERN** — *12 Litigations*

| Index to Tre.Dist | MDL No. | MDL Caption | Transferee Judge | Transferee Districts and Number of Cases Transferred | Total Tr'd | Total Filed in Tre Court | Cases Terminated Dis'd | Rem'd | Cases Pending |
|---|---|---|---|---|---|---|---|---|---|
| 313 | 875 | Asbestos PL (No. VI) | Weiner, C.R. | 153-AK; 3-ALM; 120-ALN; 97-ALS; 70-ARE; 15-ARW; 358-AZ; 50-CAC; 12-CAE; 285-CAN; 58-CAS; 252-CO; 132-CT; 43-DC; 24-DE; 332-FLM; 16-FLN; 223-FLS; 52-GAM; 365-GAN; 129-GAS; 197-HI; 32-IAN; 959-IAS; 87-ID; 1069-ILC; 1122-ILN; 459-ILS; 1166-INN; 1580-INS; 180-KS; 203-KYE; 264-KYW; 292-LAE; 131-LAM; 260-LAW; 3052-MA; 1309-MD; 547-ME; 313-MIE; 35-MIW; 216-MN; 202-MOE; 117-MOW; 20-MSN; 1125-MSS; 189-MT; 523-NCE; 270-NCM; 372-NCW; 166-ND; 149-NE; 125-NH; 365-NJ; 299-NM; 4-NMI; 158-NV; 1556-NYE; 620-NYN; 4817-NYS; 466-NYW; 47066-OHN; 161-OHS; 28-OKE; 626-OKN; 158-OKW; 184-OR; 243-PAM; 330-PAW; 6-PR; 255-RI; 1603-SC; 6-SD; 239-TNE; 78-TNM; 78-TNW; 5330-TXE; 1368-TXN; 819-TXS; 54-TXW; 341-UT; 884A-VAE; 387-VAW; 88-VT; 2-VT; 160-WAE; 298-WAW; 521-WIE; 261-WIW; 22-WVN; 654-WVS; 70-WY; Returned/Claims Remain........... | 100412 | 7468 | 74152 | 366 | 32542 |
| | 969 | Unisys Corp. Retiree Medical Benefit "ERISA" | Kaufman, B.W. | 1-MIE; 1-MN; 1-NYE........... | 3 | 11 | 6 | 0 | 8 |

SUMMARY BY DOCKET OF MULTIDISTRICT LITIGATION PENDING AS OF SEPTEMBER 30, 2005, OR CLOSED SINCE OCTOBER 1, 2004

## THIRD CIRCUIT
### (continued)

| Index to Tr'e Dist. | MDL No. | MDL Caption | Transferee Judge | Transferor Districts and Number of Cases Transferred | Total Tr'd | Total Filed in Tr'e Court | Cases Terminated Dis'd | Rem'd | Cases Pending |
|---|---|---|---|---|---|---|---|---|---|
| | 1653 | Insurance Brokerage AT | Hochberg, F.S. | 1-CAN; 7-ILN; 1-MSS; 1-NYE; 2-NYS; 2-PAE; 1-SC; 1-TRNW; 1-TXS........ | 17 | 9 | 1 | 0 | 25 |
| | 1687 | Ford Motor Co. E-350 Van PL (No. II) | Ackerman, H.A. | 1-ALN; 1-ARW; 1-CAC; 1-ILN........ | 4 | 1 | 0 | 0 | 5 |
| 313 | | **PENNSYLVANIA, EASTERN** | *14 Litigations* | | | | | | |
| | 875 | Asbestos PL (No. VI) | Weiner, C.R. | 153-AK; 3-ALM; 123-ALN; 98-ALS; 70-ARE; 15-ARW; 359-AZ; 51-CAC; 12-CAE; 294-CAN; 53-CAS; 252-CO; 1326-CT; 4-DC; 24-DE; 338-FLM; 18-FLN; 237-FLS; 52-GAM; 367-GAN; 1301-GAS; 198-HI; 32-IAN; 959-IAS; 87-ID; 1069-ILC; 1126-ILN; 463-ILS; 1167-INN; 1592-INS; 180-KS; 203-KYE; 266-KYW; 295-LAE; 134-LAM; 261-LAW; 3053-MA; 124-MD; 551-ME; 315-MIE; 35-MIW; 292-MN; 228-MOE; 121-MOW; 22-MSN; 1195-MSS; 190-MT; 561-NCE; 281-NCM; 394-NCW; 166-ND; 199-NE; 125-NH; 318-NJ; 304-NM; 4-NME; 138-NV; 1614-NYE; 628-NYN; 4838-NYS; 467-NYW; 4709-OHN; 161-OHS; 29-OKE; 627-OKN; 160-OKW; 186-OR; 243-PAM; 322-PAW; 74-PR; 257-RI; 1624-SC; 6-SD; 239-TNE; 78-TNM; 74-TNW; 5333-TXE; 1394-TXN; 828-TXS; 57-TXW; 341-UT; 5814-VAE; 387-VAW; 88-VI; 2-VT; 140-WAE; 300-WAW; 522-WIE; 262-WIW; 22-WVN; 655-WVS; 71-WY........  Returned/Claims Remain........ | 101962 | 7481 | 74297 | 427 | 33899 |
| | 969 | Unisys Corp. Retiree Medical Benefit "ERISA" | Kaufman, B.W. | 1-MIE; 1-MN; 1-NYE........ | 3 | 0 | 820 | 0 | 0 |

SUMMARY BY DOCKET OF MULTIDISTRICT LITIGATION PENDING AS OF SEPTEMBER 30, 2006, OR CLOSED SINCE OCTOBER 1, 2005

| Index to Tre Dist. | MDL No. | MDL Caption | Transferee Judge | Transferee Districts and Number of Cases Transferred | Total Tr'd | Total Filed in Tre Court | Cases Terminated Dis'd | Rem'd | Cases Pending |
|---|---|---|---|---|---|---|---|---|---|
| | | | | **THIRD CIRCUIT** (continued) | | | | | |
| 313 | 875 | PENNSYLVANIA, EASTERN Asbestos PL (No. VI) | Giles, J.T. | 152-AK; 3-ALM; 132-ALN; 98-ALS 70-ARE; 15-ARW; 399-AZ, 51-CAC; 14-CAE; 320-CAN; 58-CAS; 252-CO; 1326-CT; 43-DC; 24-DE; 398-FLM; 19-FLN; 293-FLS; 52-GAM; 367-GAN; 1301-GAS; 1-GU; 194-HI; 32-IAN; 959-IAS; 88-ID; 1070-ILC; 1130-ILN; 472-ILS; 1167-INN; 1594-INS; 180-KS; 203-KYE; 265-KYW; 100-LAE; 138-LAM; 262-LAW; 3054-MA; 1336-MD; 553-ME; 315-MIE; 35-MIW; 320-MN; 225-MOE; 122-MOW; 109-MSN; 1583-MSS; 190-MT; 576-NCE; 323-NCM; 493-NCW; 166-ND; 159-NE; 125-NH; 391-NJ; 312-NM; 4-NME; 158-NV; 1650-NYE; 620-NYN; 4859-NYS; 457-NYW; 47112-OHN; 161-OHS; 29-OKE; 627-OKN; 160-OKW; 18-OR; 243-PAM; 324-PAW; 7-PR; 257-RI; 1739-SC; 6-SD; 23-TNE; 78-TNM; 78-TNW; 5337-TXE; 1394-TXN; 833-TXS; 57-TXW; 343-UT; 10196-VAE; 387-VAW; 88-VI; 2-VT; 140-WAE; 309-WAW; 522-WIE; 262-WIW; 23-WVN; 656-WVS; 71-WY.............. | 103364 | 7485 | 74563 | 433 | 35033 |
| | | | | Returned/Claims Remain.............. | 0 | 0 | 820 | 0 | 0 |
| | | | | **17 Litigations** | | | | | |
| | 969 | Unisys Corp. Retiree Medical Benefit "ERISA" | Kaufman, B.W. | 1-MIE; 1-MN; 1-NYE............... | 3 | 11 | 6 | 0 | 8 |

## CERTIFICATION OF SERVICE

**RUMBERGER, KIRK & CALDWELL, P.A.**
Stuart L. Cohen, Esq.
M. Stephen Smith, Esq.
Brickell Bayview Centre
80 S.W. 8th Street, Suite 3000
Miami, FL 33130-3047
TEL: (305) 358-5577
FAX: (305) 371-7580
For: Coffin Turbo Pumps, Fairbanks Morris Pumps,
Foster Wheeler, Garlock, Green Tweed & Co,
Hercules Chemical, John Crane, Premier Refractories

**EDWARD MCDONOUGH, JR., P.C.**
Eddie McDonough, Esq.
107 St. Francis Street
1800 Amsouth Bank Building
Mobile, AL 36602
TEL: (334) 432-3296
FAX: (334) 432-3300
For: A.W. Chesteron

**NELSON, MULLINS, RILEY,**
**& SCARBOROUGH, L.L.P.**
Tracy E. Tomlin, Esq.
Bank of America Corporate Center, Suite 2400
100 North Tryon Street
Charlotte, NC 28202-4000
TEL: (704) 417-3000
FAX: (704) 377-4814
For: Owens, Illinois, Inc.

**AKERMAN, SENTERFITT**
Hugh Turner, Jr., Esq.
Las Olas Centre, II, Suite 1600
350 East Las Olas Blvd.
Fort Lauderdale, FL 33301-2229
TEL: (954) 463-2700
FAX: (954) 463-2224
For: American Optical Corporation, Carrier Corporation

**EVERT & WEATHERSBY, LLC**
C. Michael Evert, Jr., Esq.
3405 Piedmont Road, Suite 225
Atlanta, GA 30305
TEL: (404) 233-8718
FAX: (404) 233-8933
For: The Goodyear Tire & Rubber Company

**HAWKINS & PARNELL, LLP**
Albert Parnell, Esq.
J. Bruce Welch, Esq.
4000 Suntrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA 30308-3243
TEL: (404) 614-7400 / (800) 334-8957
FAX: (404) 614-7500
For: Chicago Pump Company, Union Carbide
Corp. General Electric Company, Warren
Pumps

**BILZIN SUMBERG**
**DUNN & AXELROD, LLP**
David W. Trench, Esq.
2500 First Union Financial Center
Miami, FL 33131-2336
TEL: (305) 374-7580
FAX: (305) 374-7593
For: Rapid American

**LAW OFFICE OF TIMOTHY CLARK, P.A.**
Timothy Clark, Esq.
Wellesley Corporate Plaza
7951 SW 6 Street, Suite 106
Plantation, Florida 33324
TEL: (954) 475-8803
FAX: (954) 475-9199
For: Cleaver-Brooks

**FOLEY & MANSFIELD, P.L.L.P.**
Virginia E. Johnson, Esq.
4770 Biscayne Boulevard, Suite 1000
Miami, Florida 33137-3251
Telephone:  305-438-9899
Facsimile:  305-438-9819
For: Chemtura Corporation, Sealing Equipment

**HINSHAW & CULBERTSON, P.A.**
Nickolas Berry, Esq.
One East Broward Boulevard, Suite 1010
Ft. Lauderdale, Florida 33301
Telephone:        954-467-7900
Facsimile:        954-467-1024
For: Flowserve Corporation, Gould Pumps, Inc.

**KIRKPATRICK & LOCKHART**
**NICHOLSON GRAHAM, L.L.P.**
Daniel A. Casey, Esq.
201 South Biscayne Boulevard, 20th Floor
Miami, Florida 33131-2399
Telephone:        305-539-3300
For: Crane Co.

**FOWLER WHITE BOGGS BANKER**
Mark C. Green, Esq.
501 E. Kennedy Boulevard
Tampa, Florida 33602
Telephone:        813-228-7411
For: Crown, Cork & Seal, Co.

**O'NEILL, LIEBMAN & COOPER, P.A.**
John B. Liebman, Esq.
2699 Lee Road, Suite #320
Winter Park, Florida 32789
Telephone:  407-647-9550
Facsimile:  407-647-9554
For: Bigham Insulation & Supply Co., Inc.

**LAW OFFICES OF STEVEN A. EDELSTEIN**
Steven A. Edelstein, Esq.
Biltmore Hotel Executive Office Center
1200 Anastasia Avenue, Suite 410
Coral Gables, Florida 33134
Telephone:        305-444-5660
Facsimile:        305-444-5646
For: Ingersoll- Rand Company

**CONROY, SIMBERG, GANON, KREVANS,**
**ABEL, LURVEY, MORROW & SCHEFER, P.A.**
Abigail M. Cohen, Esq.
3440 Hollywood Boulevard
2nd Floor
Hollywood, Florida 33021
Telephone:        305-970-4821
For: Durabla Manufacturing Co.

**BICE COLE LAW FIRM P.A.**
Kathleen M. LaBarge Esq.
Oakburst Professional Park
1333 S.E. 25th Loop
Suite 101
Ocala, Florida 34471
Telephone:        352-732-2255
For: Buffalo Pumps, SPX Corporation,
National Service Industries, Patterson Pump Company
Rockwell Automation, Inc., Velvan Valve Corporation