

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 30 2007

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (No. VI) | § § § § § | MDL DOCKET NO. 875 |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LEWIS SHIFFLETT, et ux., <br><br> Plaintiffs, <br><br> v. <br><br> AC & R INSULATION CO, et al., <br><br> Defendants. | § § § § § § § § § § § | CASE NO.: 1:07-CV02397-WDQ |

MOTION TO VACATE THE
<u>CONDITIONAL TRANSFER ORDER</u>

Plaintiffs, pursuant to Rules, 5, 7 and 12 of the Rules of Procedure of the Judicial Panel

on Multidistrict Litigation, move the Panel to vacate the Conditional Transfer Order entered on

October 1, 2007 in this matter.

1.     The grounds for this Motion are set forth in the accompanying Memorandum in

Support of Motion to Vacate Conditional Transfer Order, and are incorporated herein.

2.     Lewis Shifflett is dying from malignant mesothelioma.  Plaintiffs brought this suit

in state court, asserting solely state law grounds.  Two defendants removed the case, asserting

**OFFICIAL FILE COPY**

that federal question jurisdiction could be read into the Complaint.  Plaintiffs have submitted affidavits disclaiming any claims giving rise to federal jurisdiction in this lawsuit and have timely filed a Motion to Remand raising numerous procedural and jurisdictional bars to federal jurisdiction in this case.

      3.     Plaintiffs request that the Panel vacate the conditional transfer order, without prejudice, until the transferor court rules upon the motion to remand.  In practice, MDL-875 does not consider jurisdictional motions before requiring plaintiffs to undergo the procedures of that Court.  As a result, transfer to MDL-875 prior to determination of jurisdiction by the Court will result in Plaintiffs being forced to proceed through the maze of that Court, only to eventually have the case remanded to the transferor court for determination of whether federal jurisdiction exists.  In the interim, Mr. Shifflett is nearly certain to die.  That result is unjust, contrary to the interests of judicial economy, and totally avoidable.

      4.     The *reality* of MDL-875 does not match the *assumptions* of the Panel in previous decisions accepting the possibility of non-ruling by the transferor court on jurisdictional matters prior to transfer to MDL-875.  The *reality* of MDL-875 as it has evolved results in severe Constitutional and factual prejudice to persons like Mr. Shifflett when the transferor court does not rule on jurisdictional motions prior to transfer to MDL-875.  Accordingly, Plaintiffs request that the Court vacate the conditional transfer order in this case, without prejudice, until the question of federal jurisdiction is resolved.

      **WHEREFORE**, Plaintiffs request that the Court vacate the Conditional Transfer Order in this case, without prejudice, until the question of federal jurisdiction is resolved by the transferor court.

2

Respectfully submitted,

Jonathan Ruckdeschel
Federal Bar Number: 25015
The Ruckdeschel Law Firm, LLC
5126 Dorsey Hall Drive, Suite 201
Ellicott City, Maryland 21042
Telephone: 410.884.7825
Fascimile: 443.586.0430
ruck@rucklawfirm.com


## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of October 2007 a true and correct copy of this

Motion to Vacate the Conditional Transfer Order has been served by U.S. Mail on all counsel of

record pursuant to (MDL – CTO 291).

Jonathan Ruckdeschel

3

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 3 0 2007

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE ASBESTOS PRODUCTS | § | |
| LIABILITY LITIGATION (No. VI) | § | MDL DOCKET NO. 875 |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LEWIS SHIFFLETT, et ux., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CASE NO.: 1:07-CV02397-WDQ |
| | § | |
| AC & R INSULATION CO, et al., | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## MOTION TO VACATE CONDITIONAL TRANSFER ORDER

Plaintiffs, pursuant to Rules, 5, 7 and 12 of the Rules of Procedure of the Judicial Panel on

Multidistrict Litigation, file this Memorandum in Support of their Motion to Vacate Conditional

Transfer Order entered on October 1, 2007 in this matter.   The grounds for this Motion and

Memorandum are:

### Introduction

1.    Lewis Shifflett is 74 years old and dying of malignant mesothelioma.

2.    Mesothelioma is a rare, "fatal cancer of the lining of the lung or abdominal cavity"

1

that is caused almost exclusively by asbestos.  *See, e.g., Norfolk & Western Ry v. Ayers*, 538 U.S.

135, 142 (2003).  "Asbestos is the only cause of mesothelioma established thus far, although some

instances of the disease are not traceable to asbestos." *Id.* at 142 n.3.  The median time from

diagnosis to death ranges from 4 to 18 months. *Exhibit A, Roggli, et. al., Pathology of Asbestos-

Associated Diseases, p. 149 (2nd ed. 2003).*

      3.      Mr. Shifflett was diagnosed with mesothelioma on February 26, 2007.  Despite the

fact that there is no cure for mesothelioma, Mr. Shifflett nevertheless underwent to three cycles of

toxic chemotherapy in a desperate attempt to prolong his life.  Unfortunately, Mr. Shifflett was

unable to tolerate the side-effects of the chemotherapy and he is no longer receiving treatment for his

disease. *Exhibit B, Affidavit of Lewis Shifflett*.  While the Shiffletts remain hopeful that Mr. Shifflett

will survive through the holiday season and into next year, there is no realistic chance that Mr.

Shifflett will survive long enough to see his case go to trial if it is transferred to MDL-875.

### Procedural History

      4.      This case was filed on July 19, 2007.  On August 22, 2007, Plaintiffs filed a motion in

the Circuit Court for Baltimore City requesting that the case be added to the July 2008 mesothelioma

trial group in which counsel for Plaintiffs has three other mesothelioma cases set for trial.  On

September 7, 2007, two Defendants removed the case to federal court asserting a single ground for

removal – federal enclave jurisdiction relating to three specific jobsites out of over 50 jobsites

identified by Mr. Shifflett in his Answers to Interrogatories.

      5.      On October 4, 2007, Plaintiffs timely filed a Motion to Remand the case to State

Court. The Motion to Remand raised numerous independently dispositive reasons why removal was

improper and why federal jurisdiction was not present.  Simultaneous with the filing of the Motion to

Remand, the Shiffletts jointly and expressly disclaimed all claims that would give rise to federal jurisdiction.[1]  *Exhibits B & C, Affidavits of Lewis Shifflett and Maybrey Shifflett.*

## Transfer to MDL-875 Will Almost Certainly Result In Mr. Shifflett Dying Before He Receives His Day In Court

6.      There is a serious concern that the United States District Court for the District of Maryland will not rule upon Plaintiffs' Motion to Remand prior to the finalization of the Conditional Transfer Order.  In such circumstance, Mr. Shifflett would be required to undergo settlement negotiations, potential discovery and all of the other procedures related to MDL-875 despite the fact that federal jurisdiction does not exist in this case. As a practical matter, the resulting delays would almost certainly guarantee that Mr. Shifflett will die before he can have his day in Court.

7.      As the Panel is aware, the lengthy delays in MDL-875 have resulted in it being frequently referred to as a "black-hole" from which cases rarely, if ever, emerge.  The fate of cases condemned to the "black hole" of MDL-875 was graphically described by The Honorable Mark Davidson of the District Court of Harris County, Texas, who presides over the Texas intra-state MDL relating to asbestos cases.

> Plaintiffs claimed in argument before the court that if the case is refiled in Maine, it will immediately be removed to Federal Court, and from there transferred to the

---

[1] Courts in asbestos cases have held that disclaimers of federal jurisdiction preclude removal and require remand. *See e.g.*, *Sheppard v. Northrop Grumman*, 2007 WL 1550992 (E.D.La. May 24, 2007); *Westbrook v. Asbestos Defendants*, 2001 WL 902642 (N.D.Cal. July 31, 2001); *Galassi v. A.W. Chesterton, et. al.*, Case No. 3:05-cv-02017-WHA (N.D. Cal. June 13, 2005); *Mangialardi v. Harold's Auto Parts*, Case No. 2:02CV121-B-B (N.D. Miss. Nov. 18, 2002). *Accord, Overly v. Raybestos-Manhattan*, 1996 WL 532150 (N.D. Cal. Sept. 9, 1996)(noting plaintiffs' offer to disclaim). Courts in non-asbestos cases have similarly held. *See e.g.*, *Jenkins v. Board of Education of City of Chicago*, 2004 WL 783355 (N.D. Ill. Jan. 16, 2004); *Caldwell v. American Home Products*, 210 F.Supp.2d 809 (S.D. Miss. 2002); *Walker v. Atwood Chevrolet*, 189 F.Supp.2d 594 (S.D. Miss. 2001).  Copies of all unreported decisions are attached in Plaintiffs' *Appendix of Unpublished Decisions.*

3

Federal MDL. What will happen to the cases there? Apparently the judge will not give the plaintiff an opportunity to have his case heard before his death. The judge will attempt to get the case to settle. When and if the case is remanded, there will have been little, if any, judicial decision making performed that will assist the trial court. It will sit in this court, if it does not settle, for several years before it is remanded. The case will then go to the end of the docket in the federal court to which it is assigned. This isn't just what I have been able to find out from conferring with federal judges around the nation – this is what the Judge D. Brock Hornby, Chief Judge of the Federal Courts of the District of Maine, wrote in *In re Maine Asbestos Cases*, 44 F.Supp.2d 368 (D.Me. 1999).

*Exhibit D, Decision of Judge Davidson in Austin Richards, et. ux. v. Carver Pump Company et al.*;

Case No. 2006-22,116 (September 5, 2006). Judge Davidson then referred to the Federal MDL as it

has existed for many years as a "black hole." *Id.*

      8.     Lest Removing Defendants attempt to characterize Judge Davidson's "black hole"

comment as unfounded hyperbole, the agenda for this year's Defense Research Institute (DRI)

conference regarding asbestos litigation demonstrates the generally accepted view of the defense bar

regarding this issue. *Exhibit E, Agenda for DRI "Asbestos Medicine" Conference, November 8-9,*

*2007.* The first presentation at this year's convention of asbestos-defense lawyers is entitled:

> **MDL 875: Navigating the Black Hole – Its Future and Ramifications for State Courts:** Hear about the current role of the MDL and its projected impact on existing and future cases.

*Id.* at p. 4. While the possibility of eventual return from MDL-875 exists, there can be no reasonable

dispute that the delays in reaching that point will almost certainly result in Mr. Shifflett's death

before he has a chance to receive his day in court.

### Under Circumstances Of This Case, It Would Be A Gross Injustice And Violation Of Mr. Shifflett's Rights If He Is Required To Navigate The Maze Of MDL-875 Before Federal Jurisdiction Has Been Established.

      9.     There is no dispute that MDL-875 has resulted in the closure of tens of thousands of

cases. There equally can be no dispute, however, that the massive delays in MDL-875 almost always result in the death of individuals with mesothelioma prior to their receiving a day in court. Such delays may be an unavoidable reality in *cases where federal jurisdiction has been determined to be proper.* However, it is grossly inequitable that Mr. and Mrs. Shifflett might have to wait 1, 2 or even 3 years in MDL-875 only to have the original transferor Court determine that federal jurisdiction does not exist upon return of the case to the transfer court at the completion of the procedures of MDL-875.

10.     In making this Motion, Plaintiffs are cognizant of the past statements of this Panel in rulings such as *In re Asbestos Products Liability Litigation*, 170 F.Supp.2d 1384 (Jud. Pan. Mult. Lit. 2001) that "we are confident that Judge Weiner will continue to promptly review arguments for returning transferred actions or their claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever he is convinced that retention in the MDL-875 proceedings is no longer needed." *Id* at 1350.

11.     Based upon the recent experience of Plaintiffs' counsel discussed in more detail below, the *factual reality* is that MDL-875 does not consider jurisdictional motions and that "speedy return" from MDL-875 is impossible. While return to the transferor court can, occasionally, be secured, Plaintiffs are required to navigate the maze or MDL-875, including mandatory settlement conference and potential discovery, *prior to any determination regarding whether the federal courts have jurisdiction over the case at all.* That process is not "speedy" in the context of individuals with mesothelioma, whose expected lifespan is measured in months, rather than years. *See, Exhibit A* (median survival time from diagnosis is between 4 and 18 months).

12.     Plaintiff urges this Panel to re-consider its policy of approval of conditional transfer

orders in cases where jurisdictional motions to remand are pending in the transferor court, at least under the particular factual circumstances of this case. The factual posture of this case, when taken as a whole, is "unique" when compared to the mass of cases currently sequestered in MDL-875:

    a.   Mr. Shifflett has mesothelioma.  His cancer was inoperable and he has been unable to tolerate chemotherapy.  He currently is receiving no treatment for his disease.  Nevertheless, he is alive, and has expressly stated to the Court that it is important to him to receive his day in court during his lifetime.  *Exhibit B, Affidavit of Lewis Shifflett.*

    b.   Mr. Shifflett has a chance at obtaining a trial in his lifetime in state court if the case is remanded *now*.  Plaintiffs timely filed a Motion to add their case to the July 2008 mesothelioma trial group in Baltimore City, where their counsel has three other cases set for trial.  *Exhibit F, Plaintiffs' Motion to Add Case to July 2008 Mesothelioma Trial Group.*

    c.   It is undisputed that the Complaint in this case did not assert any claim under federal law.  Moreover, Mr. & Mrs. Shifflett have affirmatively, unambiguously and officially disclaimed in this case all claims giving rise to federal jurisdiction.  *Exhibits B & C, Affidavits of Lewis and Maybrey Shifflett.*

    d.   Mr. Shifflett has filed a sworn Affidavit disavowing any knowledge of exposure to asbestos at the three alleged federal enclaves named by the Removing Defendants in the Notice of Removal.  *Exhibit B, Affidavit of Lewis Shifflett.*

    e.   Numerous other substantial jurisdictional and procedural defects to the Removal of the case have been timely and properly raised by the Shiffletts.  *See, Exhibit G,*

*Plaintiffs' Motion to Remand.*

In these circumstances, it would be a grave injustice for Mr. Shifflett's case to be transferred to MDL-875 before the United States District Court for the District of Maryland rules upon the jurisdictional arguments raised by Plaintiffs.[2]

### It Is Unfair And Unconstitutional To Allow Transferor Courts To Arbitrarily Choose Whether Or Not To Rule On Jurisdictional Objections When Not Ruling Will Require Plaintiffs To Participate In Settlement Conferences, Discovery And Other MDL-875 Procedures

13.     Plaintiffs are cognizant of the Panel's prior statement to that transferor courts "wishing to address such motions have adequate time to do so" and that "those courts concluding that such issues should be addressed by the transferee judge need not rule on them...." *Id.*170 F. Supp. 2d at 1349, n. 1.  Plaintiffs submit that this policy is both unjust and based upon a faulty factual premise.

14.     The policy is unjust because it is grossly unfair for a dying Plaintiff to have his Constitutional right to due process subjected to the arbitrary question of whether the transferor court "wishes" to rule on the Motion to Remand.  The Panel's policy does not articulate any standards that would provide any principled basis for the "wish" of the transferor court.  The panel's policy does not require the transferor court to exercise discretion and to explain that exercise in a way that would allow for meaningful review.

15.     To the contrary, the Panels' policy allows the transferor court, without exercise of discretion, without analysis or explanation, and without any opportunity for challenge, to choose to

---

[2] Plaintiffs refer to the Motion to Remand simply to illustrate the jurisdictional arguments raised by Plaintiffs.  Accordingly, Plaintiffs attach the Motion only, and not the accompanying Memorandum or Exhibits.  Plaintiff will provide these materials to the Panel if requested.

not rule on a fundamental jurisdictional motion simply because it does not "wish" to do so. That is

unfair and unconstitutional. Discretion is not unbounded. In exercising discretion, judges must

actually consider cases and arguments – individually and on their merits. The Panel's policy accepts

unbounded, arbitrary and unexplained refusals to rule by transferor courts that indisputably result in

cases being marooned in federal court for months or years despite the lack of federal jurisdiction.

That is wrong. Moreover, it is entirely avoidable.[3]

## What Actually Happens In MDL-875

16.     The policy of the Panel to accept the unexplained choice of a transferor courts to not

rule upon jurisdictional motions to remand is based upon a faulty factual premise. In setting the

policy, the Panel expressly assumed that the MDL-875 judge would consider and rule upon Motions

to Remand. Specifically, in *In re Asbestos Products Liability Litigation*, the Panel stated "those

courts concluding that such issues should be addressed by the transferee judge need not rule on

them....". *Id.* at 1349 n.1. In truth, MDL-875 does not rule upon motions to remand.

17.     Contrary to the assumption of the Panel, it has been the practice of MDL-875 to

require parties to pursue the settlement and discovery process of MDL-875 irrespective of whether

there is a pending jurisdictional Motion to Remand. Moreover, it has been the practice of MDL-875

to NOT RULE upon pending Motions to Remand and, instead, to leave such motions pending until

the case is returned to the transferor court years after transfer. The transferor court then ends up

ruling on the jurisdictional Motion to Remand that had been pending all along.

---

[3] In this respect, Plaintiffs do not ascribe any improper or ulterior motive to Courts that have chosen
to not rule on such motions. To the contrary, Plaintiffs believe that these Courts are laboring under
the misperception that MDL-875 considers and rules upon jurisdictional motions when, in fact, it

18.     This is precisely what occurred in the last case in which counsel for the Plaintiff was involved that ended up in MDL-875 because the transferor court chose, without prior explanation, to not rule on the Motion the Remand. *See Exhibit H, Order Remanding Case To State Court in Hauck v. Borg Warner, et. al., Case No. 6:04-cv-01835* (M.D. Fla. October 12, 2006) (setting forth facts discussed below). The *Hauck* case provides a perfect example of the inequity of allowing transferor courts to arbitrarily decide, without explanation and without possibility of review, to not rule on jurisdictional Motions to Remand prior to transfer to MDL-875.

19.     On December 16, 2004, the *Hauck* case was removed to federal court on the sole ground of diversity of citizenship, despite the fact that the case had been diverse since filing.  In January, 2005, Plaintiff moved to remand the case to state court, asserting that the federal courts lacked jurisdiction over the case.  On February 17, 2005, the U.S. District Court for the Middle District of Florida heard oral argument on the Motion to Remand.

20.     In June 2005, six months after removal, five months after filing of the motion to remand and over three months after oral argument on the motion, this Panel entered the final transfer order in the *Hauck* case, over Ms. Hauck's objection that the federal courts lacked jurisdiction. Despite having had months to decide the jurisdictional remand motion, the U.S. District Court for the Middle District of Florida refused to substantively rule on the Motion to Remand.  No explanation for that refusal was ever provided.  Instead, after entry of the transfer order, the U.S. District Court for the Middle District of Florida simply entered a pro-forma Order denying the Motion to Remand without prejudice to the refiling of the Motion in MDL-875.

21.     Plaintiff promptly renewed her jurisdictional Motion to Remand in MDL-875.

---

does not.

Despite this, for the 14 months that the *Hauck* case remained in MDL-875, the court made no attempt to rule upon the motion or to even consider the jurisdictional arguments raised by Ms. Hauck.   To the contrary, MDL-875 required Ms. Hauck to undergo two useless settlement conferences and informal discovery before Judge Giles eventually recommended "remand" of the case to the Middle District of Florida for further proceedings. That Order was then confirmed by this Panel – again without consideration of the jurisdictional Motion to Remand – and the case returned to the Middle District of Florida with the fundamental question of federal jurisdiction still pending.

22.     Upon re-argument of Plaintiff's Motion to Remand, the *Hauck* court determined that federal jurisdiction did not exist (and had never existed) and ordered remand to the state court system on October 12, 2006 – nearly 22 months after it was removed and nearly 20 months after the transferor court first heard oral argument on the Motion to Remand.

23.     In making the Motion herein, the Shiffletts do not cast any aspersions at the hard work of Judge Weiner during his tenure or Judge Giles since his assumption of MDL-875.  Indeed, Plaintiffs do not question the statement of this Panel that "whenever the transferee judge has deemed remand of any claims or actions appropriate, procedures have been utilized to accomplish Section 1407 remand for trial with a minimum of delay." *Id.* at 1350.  The fact remains, however, that the "remand" discussed in that comment is not remand to state court due to determination that the federal courts lack jurisdiction.  To the contrary, it refers to remand to the transferor court for trial or further proceedings *after completion of the maze of MDL-875*.  There is no way to complete that maze, "with a minimum of delay" however.

24.     Nowhere are the famous words of Gladstone that "justice delayed is justice denied" more fitting than when used in connection with a lawsuit brought by a terminally ill individual

seeking justice regarding their disease. It is gravely unjust to require dying plaintiffs like Mr. Shifflett to negotiate the tortured maze of MDL-875 before they can obtain a ruling on a jurisdictional motion to remand. Lacking jurisdiction over the case at all, it is unconstitutional to require a plaintiff to navigate the inevitable delays of MDL-875 before jurisdiction of the federal courts is determined. As demonstrated by the Hauck case, contrary to the assumption of the Panel, MDL-875 does not and will not consider jurisdictional motions to remand. To the contrary, if a case is transferred to MDL-875 with a pending motion to remand, that motion remains pending while the plaintiff frantically tries to outrace the Reaper though the maze of MDL-875 in the hope that he or she will obtain referral back to the transferor court. Only at that point – one, two, three or even more years later – will the Plaintiff obtain their constitutionally guaranteed ruling upon the Motion to Remand.

### The Hope Of Having A Reasonable Likelihood Of Obtaining A Trial During Their Lifetime Is A Valuable Right

25.     Mesothelioma is asbestos cancer. People with mesothelioma die from mesothelioma and they almost always die within two years of diagnosis. There is no escape from this disease.

26.     Nevertheless, courts around the country, such as the courts of the state of Maryland, have developed remarkable procedures to provide persons with mesothelioma with a reasonable likelihood of receiving a trial in their extraordinarily limited lifetime. Here, prior to removal, Plaintiffs filed a Motion requesting that their case be added to the July 2008 trial group in which counsel for Plaintiff has three other mesothelioma cases consolidated for trial. Any significant delay in federal court will greatly jeopardize Plaintiffs' ability to have their case added to that trial group. While nobody knows if Mr. Shifflett will survive until July 2008, there can be no reasonable dispute

11

that he has almost no chance of being alive for trial if the CTO is finalized prior to determination of the jurisdictional issues raised in his Motion to Remand.

27.     It is unjust for Mr. Shifflett's case to spend months or years in MDL-875 without a determination that the federal courts have jurisdiction over his case.  If the federal courts have jurisdiction over this matter, Mr. Shifflett understands and accepts that his case will be transferred to MDL-875 and that he will almost certainly die before he can obtain a trial date.  *Exhibit B, Affidavit of Lewis Shifflett.*  That is precisely why Mr. Shifflett pled his case to only assert state law claims and why Mr. and Mrs. Shifflett have affirmatively, unambiguously and officially disclaimed any claims that would give rise to federal jurisdiction in this lawsuit.  *Exhibits B & C, Affidavits of Lewis and Maybrey Shifflett.*  Mr. Shifflett cannot understand and cannot accept, that even while federal jurisdiction does not exist, there is a possibility that he may lose his chance for trial during his lifetime, simply because the transferor court might choose not to rule on the Motion to Remand.

28.     Vacating the Conditional Transfer Order (CTO) in this case until the United States District Court for the District of Maryland rules upon the Motion to Remand will cause no prejudice to any party and will FURTHER the interests of judicial economy – the entire point of the MDL process.  If jurisdiction is rejected, the case leaves federal court.  If jurisdiction is confirmed, Plaintiff will not oppose transfer to MDL-875 and completion of the procedures of that Court.

29.     In contrast, finalizing the CTO prior to the ruling on jurisdiction will add yet another substantial case to the already crowded docket of MDL-875, further increasing the burden on Judge Giles and his staff despite the fact that jurisdiction is questionable at best.  Administrative costs will be incurred and all parties will be forced to expend valuable time and resources participating in MDL-875 procedures despite the lack of confirmation of jurisdiction.  Upon completion of those

procedures, the case will be sent back to the transferor court – incurring yet more administrative

costs and burdens – only to return to the same question pending today – whether the federal courts

have jurisdiction over this matter.

    **WHEREFORE**, Plaintiffs request that the Panel VACATE the conditional transfer order,

without prejudice, pending decision by the United States District Court for the District of Maryland

on Plaintiffs' Motion to Remand.

Respectfully submitted,

Jonathan Ruckdeschel
Federal Bar Number: 25015
The Ruckdeschel Law Firm, LLC
5126 Dorsey Hall Drive, Suite 201
Ellicott City, Maryland 21042
Telephone: 410.884.7825
Fascimile: 443.586.0430
ruck@rucklawfirm.com

## CERTIFICATE OF SERVICE

    I hereby certify that on this 30th day of October, 2007 that a true and correct copy of this

Memorandum in Support of Motion to Vacate the Conditional Transfer Order has been served by

U.S. Mail on all counsel of record pursuant to (MDL CTO 291).

Jonathan Ruckdeschel

13

LEWIS SHIFFLETT, et ux., v. AC & R INSULATION CO, et al.
CASE NO.: 1:07-CV02397-WDQ
Panel Service List

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**OCT 3 0 2007**

FILED
CLERK'S OFFICE

**Plaintiffs Lewis & Maybrey Shifflett** represented by **Jonathan Ruckdeschel**
The Ruckdeschel Law Firm LLC
5126 Dorsey Hall Drive, Ste 201
Ellicott City, MD 21042
14108847825
Fax: 14435830430
Email: ruck@rucklawfirm.com

**Defendant A.C. & R. Insulation Co., Inc.** represented by **Katherine S Duyer**
Gavett and Datt PC
15850 Crabbs Branch Way Ste 180
Rockville, MD 20855
13019481177
Fax: 13019484334
Email: kduyer@gavettdatt.com

**Defendant A.O. Smith Corporation** represented by **Thomas L Doran**
DeCaro Doran Siciliano Gallagher and DeBlasis LLP
4601 Forbes Blvd Ste 200 PO Box 40
Lanham, MD 20703
13013064300
Fax: 13013064988
Email: tdoran@decarodoran.com

**Defendant Avco Corporation**
*(for its Spencer-Lycoming Division)* represented by **Laura A Cellucci**
Miles and Stockbridge PC
10 Light St
Baltimore, MD 21202
14107276464
Fax: 14103853700
Email: lcellucci@milesstockbridge.com
**Vincent J Palmiotto**
Miles and Stockbridge PC
10 Light St
Baltimore, MD 21202
14103853858
Fax: 14103853700
Email: vpalmiotto@milesstockbridge.com

**Defendant American Standard Inc.** represented by **Theodore F Roberts**
Venable Baetjer and Howard LLP
210 Allegheny Ave
Towson, MD 21285
14104946200
Fax: 14108210147
Email: tfroberts@venable.com

LEWIS SHIFFLETT, et ux., v. AC & R INSULATION CO, et al.
CASE NO.: 1:07-CV02397-WDQ
Counsel List

**Defendant** **Aqua-Chem, Inc.** *doing business as* **CLEAVER-BROOKS DIVISION**
represented by **Vincent J Palmiotto** (see above for address)

**Defendant** **A.W. Chesterton Company** represented by **Keith R Truffer**
Royston Mueller McLean and Reid LLP
102 W Pennsylvania Ave Ste 600
Towson, MD 21204
14108231800
Fax: 14108287859
Email: ktruffer@rmmr.com

**Defendant** **Boiler and Furnance Cleaners, Inc.**
*as successor to J.E. HURLEY MACHINE AND BOILER WORKS, INC.*
*also known as*
Hurley Co. represented by **William J Hickey**
Law Offices of William J Hickey LLC
33 Wood Ln
Rockville, MD 20850
13014246300
Fax: 13012944568
Email: bill@hickeylegal.com

**Defendant** **Bondex International, Inc.** represented by **Jeannie Pittillo Kauffman**
Bacon Thornton and Palmer LLP
Capital Office Park
6411 Ivy Ln Ste 706
Greenbelt, MD 20770-1411
13013457001
Fax: 13013457075
Email: Jkauffman@lawbtp.com

**Defendant** **CertainTeed Corporation** represented by **Vincent J Palmiotto**
(See above for address)

**Defendant** **CBS Corporation**
*successor by merger to CBS Corporation*
*formerly known as*
Viacom, Inc.
*formerly known as*
Westinghouse Electric Corporation represented by **Philip A Kulinski**
Evert Weathersby Houff
120 E Baltimore St Ste 1300
Baltimore, MD 21201
14435738506
Fax: 14435738501
Email: PAKULINSKI@ewhlaw.com

LEWIS SHIFFLETT, et ux., v. AC & R INSULATION CO, et al.
CASE NO.: 1:07-CV02397-WDQ
Counsel List

**William Thomas Lawrie, Jr**
Evert Weathersby Houff
120 E Baltimore St Ste 1300
Baltimore, MD 21202
14435738500
Fax: 14435738501
Email: wtlawrie@ewhlaw.com

**Defendant** **C.J. Coakley, Co., Inc.** represented by **Malcolm Sean Brisker**
Goodell DeVries Leech and Dann LLP
One South St 20th Fl
Baltimore, MD 21202
14107834000
Fax: 14107834040
Email: msb@gdldlaw.com

**Defendant** **Cleaver-Brooks Corporation** represented by **Vincent J Palmiotto**
(See above for address)

**Defendant** **Columbia Boiler Company** represented by **Joel D Newport**
Moore and Jackson LLC
305 Washington Ave Ste 401
Baltimore, MD 21204
14105835241
Fax: 14105837519
Email: newport@moorejackson.com

**Defendant** **Crane Company, Inc.**
*(Individually and as successor to National-U.S. Radiator)* represented by **Neil J MacDonald**
Hartel Kane DeSantis MacDonald and Howie LLP
11720 Beltsville Dr Ste 500
Beltsville, MD 20705
13014861200
Fax: 13014860935
Email: nmacdonald@hartelkane.com

**Defendant** **Crown Cork & Seal Company, Inc.** represented by **Theodore F Roberts**
(See above for address)

**Defendant** **Crown Cork & Seal USA, Inc.** represented by **Theodore F Roberts**
(See above for address)

**Defendant** **Daimler Chrysler Corporation** represented by **Deborah K St Lawrence**
Brown and Sheehan LLP
1010 Hull St Ste 300
Baltimore, MD 21230
14102968500
Fax: 14102961559
Email: dstlawrence@brownsheehan.com

LEWIS SHIFFLETT, et ux., v. AC & R INSULATION CO, et al.
CASE NO.: 1:07-CV02397-WDQ
Counsel List

**Defendant Dorr-Oliver Incorporated**
*As Successor to Keeler/Dorr-Oliver Boiler Company* represented by **Katherine S Duyer**
(See above for address)

**Defendant Federated Development Company**
*(as Successor to National-U.S. Radiator)* represented by **Philip A Kulinski**
(See above for address)
**William Thomas Lawrie, Jr**
(See above for address)

**Defendant Ford Motor Company** represented by **Paul Joseph Day**
DLA Piper US LLP
6225 Smith Ave
Baltimore, MD 21209-3600
14105803000
Fax: 14105803001
Email: paul.day@dlapiper.com

**Defendant Foster-Wheeler LLC** represented by **Steven J Parrott**
Dehay and Elliston LLP
36 S Charles St Ste 1300
Baltimore, MD 21201
14107837225
Fax: 14107837221
Email: sjp@dehay.com

**Defendant Foster Wheeler Energy Corp.** represented by **Steven J Parrott**
(See above for address)

**Defendant General Electric Company** represented by **James T Zois**
Meringer, Zois & Quigg, LLC
300 E Lombard St Ste 1440
Baltimore, MD 21202
14435247978
Fax: 14435247982
Email: jzois@meringerlaw.com
**David J Quigg**
Meringer, Zois & Quigg, LLC
300 E Lombard St Ste 1440
Baltimore, MD 21202
14435297978
Fax: 14435297982
Email: dquigg@meringerlaw.com

**Defendant General Motors Corporation** represented by **Paul Joseph Day**
(See above for address)

LEWIS SHIFFLETT, et ux., v. AC & R INSULATION CO, et al.
CASE NO.: 1:07-CV02397-WDQ
Counsel List

<u>Defendant</u> **General Refractories Co.** represented by **Jeremy W North**
North and Cobb PA
7313 York Rd
Towson, MD 21204
14108251472
Fax: 14108217064

<u>Defendant</u> **Georgia-Pacific Corporation** represented by **Laura A Cellucci**
(See above for address)
**Vincent J Palmiotto**
(See above for address)

<u>Defendant</u> **H.B. Smith Company, Inc.**
*also known as*
Smith Cast Iron Boilers represented by **David Foxwell Albright, Sr**
Law Offices of David F Albright
1122 Kenilworth Dr Ste 500
Baltimore, MD 21204
14102440350
Fax: 14108235453
Email: dalbright@verizon.net

<u>Defendant</u> **Honeywell International, Inc.** represented by **George C Doub, III**
George C Doub PC
12 W Madison St
Baltimore, MD 21201-5231
14105470400
Fax: 14108374465
Email: g.doubiii@att.net

<u>Defendant</u> **J.E. Hurley and Boiler Works, Inc.** represented by **William J Hickey**
(See above for address)

<u>Defendant</u> **Hurley Company**
*as successor to J.E. Hurley Machine and Boiler Works, Inc.* represented by **William J Hickey**
(See above for address)

<u>Defendant</u> **Kaiser Gypsum Company, Inc.** represented by **Joel D Newport**
(See above for address)

<u>Defendant</u> **Kelly-Moore Paint Co., Inc.** represented by **Neil J MacDonald**
(See above for address)

<u>Defendant</u> **MCIC, Inc.**
*formerly known as*
McCormick Asbestos Co. represented by **Louis E Grenzer, Jr**
Bodie Nagle Dolina Smith and Hobbs PA
21 W Susquehanna Ave
Towson, MD 21204
14108231250
Fax: 14102960432
Email: lgrenzer@bodienagle.com

LEWIS SHIFFLETT, et ux., v. AC & R INSULATION CO, et al.
CASE NO.: 1:07-CV02397-WDQ
Counsel List

**Defendant** **Mestek, Inc.**
*Individually As Successor in interest to H.B. SMITH COMPANY, INC.*
*also known as* SMITH CAST IRON BOILERS
represented by **Elizabeth J. Gibbon and Richard P. O'Leary**
McCarter and English LLP
245 Park Ave 27th Fl
New York, NY 10167
12126096800
Fax: 1216096921
Email: jgibbon@mccarter.com; roleary@mccarter.com

**Defendant** **Metropolitan Life Insurance Co.** represented by **Richard Damon Albert**
Steptoe and Johnson LLP
1330 Connecticut Ave NW
Washington, DC 20036
12024293000
Fax: 12024293902
Email: ralbert@steptoe.com

**Defendant** **Noland Company** represented by **Scott Hamilton Phillips**
Semmes Bowen and Semmes PC
250 W Pratt St 16th Fl
Baltimore, MD 21201
14105764717
Fax: 14105395223
Email: sphillips@semmes.com

**Defendant** **Oakfabco, Inc.** *as successor-in-interest by merger to*
*KEWANEE BOILER CORPORATION* represented by **David A Seltzer**
Wilson Elser Moskowitz Edelman and Dicker LLP
1341 G St NW Ste 500
The Colorado Bldg
Washington, DC 20005-3105
12026267660
Fax: 12026283606
Email: David.Seltzer@wilsonelser.com

**Defendant** **The Okonite Company** represented by **Steven J Parrott**
(See above for address)

**Defendant** **Owens-Illinois, Inc.** represented by **Steven Andrew Luxton**
Morgan Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
202.739.3000
Fax: 202.739.3001
Email: sluxton@morganlewis.com

**Defendant** **Pneumo Abex LLC** represented by **Steven J Parrott**
(See above for address)

LEWIS SHIFFLETT, et ux., v. AC & R INSULATION CO, et al.
CASE NO.: 1:07-CV02397-WDQ
Counsel List

**Defendant** **Potomac Electric Power Company** represented by **Steven A Allen**
Hodes Pessin and Katz PA
901 Dulaney Valley Rd Ste 400
Towson, MD 21204
14109388800
Fax: 14108325602
Email: sallen@hpklegal.com

**Defendant** **Rapid American Corporation** represented by **Theodore F Roberts**
(See above for address)

**Defendant** **Riley Stoker Corporation**
*also known as* Babcock Borsig Power, Inc. represented by **Steven J Parrott**
(See above for address)

**Defendant** **The Rockbestos Company** represented by **Malcolm Sean Brisker**
(See above for address)

**Defendant** **RPM, Inc.** *also known as* **Republic Powdered Metals, Inc.**
*Individually and as successor To, alter ego or, otherwise responsible for The Reardon Company and Bondex International* represented by **Jeannie Pittillo Kauffman**
(See above for address)

**Defendant** **RPM, International Inc.**
*Individually and as successor to, alter ego or, otherwise responsible for the Reardon Company and Bondex International, Inc.* represented by **Jeannie Pittillo Kauffman**
(See above for address)

**Defendant** **Superior Boiler Works, Inc.** represented by **Robin Silver**
Miles and Stockbridge PC
10 Light St
Baltimore, MD 21202
14107276464
Fax: 14103853700
Email: rsilver@milesstockbridge.com
**Vincent J Palmiotto**
(See above for address)

**Defendant** **T.H. Agriculture & Nutrition, LLC**
*Individually and as successor to Thompson Hayward Chemical Company, Inc.*
represented by **Vincent J Palmiotto**
(See above for address)

**Defendant** **Thos. Somerville Co.** represented by **Scott Patrick Burns**
Tydings and Rosenberg LLP
100 E Pratt St 26th Fl
Baltimore, MD 21202
14107529743
Fax: 14107275460
Email: sburns@tydingslaw.com

LEWIS SHIFFLETT, et ux., v. AC & R INSULATION CO, et al.
CASE NO.: 1:07-CV02397-WDQ
Counsel List

**Defendant** **Union Carbide Corporation** represented by **Steven J Parrott**
(See above for address)

**Defendant** **Weil-McLain, Inc.** represented by **Thomas Peter Bernier**
Segal McCambridge Singer and Mahoney Ltd
One N Charles St Ste 2500
Baltimore, MD 21201
14107793960
Fax: 14107793967
Email: TBernier@smsm.com
**Robert William Sullivan, IV**
Segal McCambridge Singer and Mahoney Ltd
217 E Redwood St 21st Fl
Baltimore, MD 21202
14107793960
Fax: 14107793967
Email: Rsullivan@smsm.com

**Defendant** **The Walter E. Campbell Company, Inc.** represented by **Thomas Peter Bernier**
(See above for address)
**Richard Lloyd Flax**
Law Offices of Richard L Flax LLC
29 West Susquehanna Ave Ste 500
Baltimore, MD 21204
14105616451
Fax: 14439278916
Email: richard.flax@zgf-law.com

**Defendant** **Zurn Industries, Inc.**
*also known as*
(a/k/a and Successor-By-Merger to ERIE CITY IRON WORKS) represented by **Michael A Pichini**
Goodell DeVries Leech and Dann LLP
One South St 20th Fl
Baltimore, MD 21202
14107834000
Fax: 14107834040
Email: map@gdldlaw.com

LEWIS SHIFFLETT, et ux., v. AC & R INSULATION CO, et al.
CASE NO.: 1:07-CV02397-WDQ
Panel Service List

| Name | Firm | Address 1 | Address 2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Edward J. Class, Esq. | Gallagher, Sharp, Fulton & Norman | Bulkley Building, 7th Floor | 1501 Euclid Ave. | Cleveland | OH | 44115 |
| Adam M. Chud, Esq. | Goodwin Proctor, LLP | 901 New York Ave., NW | | Washington | DC | 20001 |
| David A. Damico, Esq. | Burns, White & Hickton, LLC | Four Northshore Center | 106 Isabella St. | Pittsburgh | PA | 15212 |
| Richard C. Binzley, Esq. | Thompson Hine, LLP | 127 Public Square | 3900 Key Center | Cleveland | OH | 44114 |
| Reginald S. Kramer, Esq. | Oldham & Dowling | 195 South Main St. | Suite 300 | Akron | OH | 44308 |
| Raymond P. Forenco, Esq. | Forenco & Hannon | 111 S. Independence Mall East | The Bourse, Ste 1000 | Philadelphia | PA | 19106 |
| David C. Landin, Esq. | Hunton & Williams, LLP | Riverfront Plaza, East Tower | 951 East Bryd Street | Richmond | VA | 23219 |
| Gene Locks, Esq. | Locks Law Firm, LLC | 1500 Walnut St. | | Philadelphia | PA | 19102 |
| Ellen B. Furman, Esq. | Goldfein & Hosmer | 1600 Market St. | 33rd Floor | Philadelphia | PA | 19103 |
| Susan M. Hansen, Esq. | Brownson & Ballou | 225 S. Sixth Street | Suite 4800 | Minneapolis | MN | 55402 |
| Ronald L. Motley, Esq. | Motley Rice, LLC | PO Box 1792 | 28 Bridgeside Blvd. | Mt. Pleasant | SC | 29464 |
| John D. Roven, Esq. | Roven-Kaplan LLP | 2190 North Loop West | Suite 410 | Houston | TX | 77018 |
| Richard D. Schuster, Esq. | Vorys, Sater, Seymour & Pease, LLP | 52 E. Gay St. | PO Box 1008 | Columbus | OH | 43216 |
| Neil Selman, Esq. | Selman, Breitman & Burgess | 11766 Wilshire Blvd. | 6th Floor | Los Angeles | CA | 90025 |
| Robert N. Spinelli, Esq. | Kelley, Jasons, McGuire & Spinelli, LLP | Center Square West | 15th Floor | Philadelphia | PA | 19102 |
| John J. Repcheck, Esq. | Marks, O'Neill, O'Brien & Courtney PC | 3200 Gulf Tower | 707 Grant St. | Pittsburgh | PA | 15219 |
| Robert E. Swickle, Esq. | Jaques Admiralty Law Firm PC | 1370 Penobsot Building | 645 Griswold St. | Detroit | MI | 48226 |
| Andrew J. Trevelise, Esq. | ReedSmith LLP | 2500 One Liberty Place | 1650 Market St. | Philadelphia | PA | 19102 |
| James K. Weston, II Esq. | Tom Riley Law Firm | 4040 First Ave., NE | PO Box 998 | Cedar Rapids | IA | 52406 |

# Exhibit A

# Pathology of Asbestos-Associated Diseases

**Second Edition**

**Victor L. Roggli, MD**
Professor of Pathology, Duke University and Durham VA Medical
Centers, Durham, North Carolina
**Tim D. Oury, MD, PhD**
Assistant Professor of Pathology, University of Pittsburgh Medical
Center, Pittsburgh, Pennsylvania
**Thomas A. Sporn, MD**
Assistant Professor of Pathology, Duke University Medical Center,
Durham, North Carolina

Editors

**With 130 Illustrations in 191 Parts**

 Springer

*Victor L. Roggli, MD*
Professor of Pathology
Duke University and Durham
  VA Medical Centers
Durham, NC 27710
USA

*Thomas A. Sporn, MD*
Assistant Professor of Pathology
Duke University Medical Center
Durham, NC 27710
USA

*Tim D. Oury, MD, PhD*
Assistant Professor of Pathology
University of Pittsburgh Medical
  Center
Pittsburgh, PA 15213
USA

Library of Congress Cataloging-in-Publication Data
Roggli, Victor L.
    Pathology of asbestos-associated diseases / Victor L. Roggli, Tim D. Oury, Thomas
A. Sporn.—2nd ed.
      p. ; cm.
    Includes bibliographical references and index.
    ISBN 0-387-20090-8 (hard cover : alk. paper)
    1. Asbestosis—Complications—Cytopathology.  2. Asbestosis—Complications—
Cytodiagnosis.  3. Asbestos—Carcinogenicity.  4. Asbestos fibers—Analysis.
I. Oury, Tim D.  II. Sporn, Thomas A.  III. Title.
    [DNLM: 1. Asbestosis—pathology.  2. Asbestos—adverse effects.  3. Lung
Neoplasms—pathology.  4. Mesothelioma—pathology.  5. Pleural Diseases—
pathology. WF 654 R733p 2003]
RC775.A8R64 2003
616.2'44—dc22                                                                   2003056816

First edition © 1992 Little, Brown and Company, Boston/Toronto/London.

ISBN 0-387-20090-8              Printed on acid-free paper.

© 2004 Springer Science+Business Media, Inc.
All rights reserved. This work may not be translated or copied in whole or in part without the
written permission of the publisher (Springer Science+Business Media, Inc., 233 Spring Street,
New York, NY 10013, USA), except for brief excerpts in connection with reviews or scholarly
analysis. Use in connection with any form of information storage and retrieval, electronic
adaptation, computer software, or by similar or dissimilar methodology now know or hereafter
developed is forbidden.
The use in this publication of trade names, trademarks, service marks and similar terms, even if
the are not identified as such, is not to be taken as an expression of opinion as to whether or not
they are subject to proprietary rights.

Printed in the United States of America.        (BS/MVY)

9 8 7 6 5 4 3 2

springeronline.com

etastasize to the
enotype should

1 are distinctly
1 the literature
  These tumors
ly encasing the
y present with
:ccompanied by
onstriction, or
ardiac enlarge-
in anterior pre-
e imaging may
  and extent of

has shown a
latoid variants
ultrastructural



encasement by

studies have only rarely been described,[290,291,294] but these tumors appear morphologically identical to their pleural and peritoneal counterparts. Pericardial mesotheliomas must be distinguished from the much more common carcinoma directly extending into or metastatic to the epicardium or pericardium.[295,296] In addition, pleural mesotheliomas may also directly extend into and invade the contiguous pericardium, further complicating the diagnosis of primary pericardial mesothelioma.[19] The so-called mesothelioma of the atrioventricular node is a benign tumor not derived from mesothelium at all, but from endoderm.[2,297–299] An exposure to asbestos has been established in several patients suffering from pericardial mesothelioma.[300-303]

## Treatment and Prognosis

The prognosis of malignant (diffuse) mesothelioma is poor. In most series, a median survival between 4 and 18 months is expected for the pleural forms.[304-311] Death typically results from respiratory failure or infection, but involvement of the heart and transdiaphragmatic involvement of abdominal viscera may also contribute to mortality.[312,313] Physicians experienced in treating mesothelioma will report occasional patients with significantly greater longevity following treatment. Consequently, a limited set of prognostic factors has been derived to predict outcome and to identify those patients most likely to receive benefit from radical treatment regimens. Numerous studies evaluating clinical prognostic factors have been reported over the past 20 years, identifying the importance of age, sex, performance status, weight loss, chest pain and clinical stage.[304] Conflicting data have been reported due in part to variances in disease staging, therapies given, assessment of response, and enrollment eligibility.

The issue of clinical stage as a prognosticator is particularly problematic. Surprisingly, several studies found stage not to be an important prognostic factor.[304] This may be related to the necessity for exploratory and cytoreductive surgery to fulfill all staging descriptors. Such criteria have not been fulfilled for most patients with mesothelioma, even at centers with special expertise in treatment and management of this disease. Thus, most historical staging data are only approximate. The prognostic scoring systems of the Cancer and Leukemia Group (CALGB) and European Organization for the Research and Treatment of Cancer (EORTC) have been applied to large numbers of patients with mesothelioma.[310,311] These distinct scoring systems have identified poor prognostic indicators which include nonepithelial subtype, male gender, poor performance status, and hematologic parameters of low hemoglobin, high leukocyte and platelet counts and high serum lactic dehydrogenase (LDH).[311] In a retrospective review of 121 cases of malignant pleural mesothelioma, univariate analysis demonstrated lower rates of survival in patients with poor performance status and nonepithelial histologic subtypes, and found that any form of treatment beyond supportive care led to longer survival.[314]

# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CASE NO.: 1:07-CV02397-WDQ

LEWIS SHIFFLET, et ux.,                    (Circuit Court for Baltimore City
                                            Case No.: 24x07000313)
Plaintiffs,


v.

AC & R INSULATION CO., INC., et al,

     Defendants,

_____/

## AFFIDAVIT OF LEWIS SHIFFLETT

I, Lewis Shifflett, hereby depose and say:

1.     I am over the age of 18 and competent to testify regarding the maters set forth in this Affidavit.

2.     In February 2007, I was diagnosed with malignant mesothelioma. I have been informed by my doctors that there is no cure for mesothelioma. After diagnosis, I was informed that surgery was not an option for me. I took three cycles of chemotherapy in the hope of slowing the disease. Unfortunately, the side effects from the chemotherapy were unacceptable. Currently, I am not receiving treatment for my disease.

3.     It is important to me to obtain a trial date in my lifetime. I very much want my day in Court.

1

4.      I have been informed that the Defendants have removed my case to the United States District Court for the District of Maryland on the alleged ground that the case arises from exposure on "federal enclaves". I understand that, if my case stays in federal court, it will be transferred to the Multi-District Litigation in Philadelphia and that it will take many months, if not years, to get the case sent back from Philadelphia. That result would be very disappointing to me as it would almost certainly mean that I will not be alive for my trial.

## DISCLAIMER OF CLAIMS REGARDING
## EXPOSURE ON ANY FEDERAL ENCLAVE

5.      To the extent that the Court considers there to be any validity to the Defendants' claims regarding exposure to asbestos on any "federal enclave", I hereby expressly disclaim every claim arising from any act or omission on any federal enclave.

## DISCLAIMER OF CLAIMS OTHERWISE
## GIVING RISE TO FEDERAL JURISDICTION

6.      I understand that the only grounds asserted for removal of my case to federal court is the Defendants' assertion of exposure on the three alleged "federal enclaves". It is very important to me to obtain a trial in my lifetime. Accordingly, so that we do not again end up in a situation like this were the Defendants have removed my case to federal court without proper justification, I hereby expressly disclaim any claims arising from the acts or omissions of any officer of the U.S. or any agency or person acting under him occurring under color of such office, other than failure to provide adequate warning of the dangerous propensity of the their products. I further expressly disclaim any other claims arising under the laws of the United States. I have no knowledge of any such claims or actions, but make this disclaimer to avoid any further unnecessary delays relating to federal court.

2

## REQUEST TO ALLOW DISMISSAL WITHOUT PREJUDICE

7.     To the extent that the Court is inclined to deny the Motion to Remand, or to not rule upon the Motion to Remand, for whatever reason, I request that the Court allow me to Dismiss my case, without prejudice, so that I can re-file the case in State Court as appropriate.

## DEFENDANTS' CLAIMS OF FEDERAL ENCLAVE EXPOSURE

8.     I understand that the Defendants are asserting that my Answer to Master Interrogatory No. 88 is a specific claim of exposure to asbestos at each of the jobsites listed. That characterization of the answer is not accurate.  The Answer makes no such statement and instead, simply lists every jobsite I have been able to recall at this time.  Regarding the three sites listed by the Defendants, I state the following:

      a.   <u>National Institutes of Health</u>: The only time I worked at National Institutes of Health was while I was working for an electrical company.  The only work I performed at NIH was installing wiring for computers and other machinery.  The wiring was not insulated with asbestos nor did I work with or around any other asbestos containing product to my knowledge.  The work was in existing buildings and there was no construction or other work being performed around me...I have no knowledge of any exposure to asbestos at N.I.H.

      b.   <u>Walter Reed Medical Center/Bethesda Naval Medical Center</u>: I listed Walter Reed Medical Center as a work site in my Interrogatory Answer, referring to a facility on Wisconsin Avenue in Bethesda, Maryland.  The facility to which

I was referring was, in fact, the Bethesda Naval Medical Center. I have never been at the Walter Reed Medical Center in Washington, D.C. My work at Bethesda Naval Medical Center was essentially the same as at NIH. The only work I performed was installing wiring for computers and other machinery. The wiring was not insulated with asbestos nor did I work with or around any other asbestos containing product to my knowledge. The work was in existing buildings and there was no construction or other work being performed around me...I have no knowledge of any exposure to asbestos at Bethesda Naval. Medical Center.

c.   Indian Head Power House: While I worked at J.E. Hurley, the company had a job at Indian Head relating to a powerhouse. I do not know where on the Indian Head facility the powerhouse was/is located. The majority of the work for that job was performed at J.E. Hurley's facility in Washington, D.C. and was performed by others. My only connection to the job was driving a truck from the J.E. Hurley facility in Washington, D.C. to Indian Head to deliver materials. While I was briefly present at Indian Head to unload the truck, no other work was being performed around me at the site. I have no knowledge of being exposed to asbestos during the brief time I was at Indian Head.

## **AFFIRMATION**

I declare under penalties of perjury under the laws of the United States that the foregoing Affidavit is true and correct.

Executed On: Tuesday, September 18, 2007

Lewis Shifflett

# Exhibit C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CASE NO.: 1:07-CV02397-WDQ

LEWIS SHIFFLET, et ux.,
(Circuit Court for Baltimore City
Case No.: 24x07000313)

Plaintiffs,

v.

AC & R INSULATION CO., INC., et al,

Defendants,

_____ /

## AFFIDAVIT OF MAYBREY SHIFFLETT

I, Maybrey Shifflett, hereby depose and say:

1.      I am over the age of 18 and competent to testify regarding the maters set forth in this Affidavit.

2.      My husband, Lewis, has been diagnosed with malignant mesothelioma.  It is very important to both Lewis and me, that we obtain a trial date during his lifetime.

## DISCLAIMER OF CLAIMS REGARDING
## EXPOSURE ON ANY FEDERAL ENCLAVE

3.      To the extent that the Court considers there to be any validity to the Defendants' claims regarding exposure to asbestos on any "federal enclave", I hereby join Lewis and expressly disclaim every claim arising from any act or omission on any federal enclave.

1

## DISCLAIMER OF CLAIMS OTHERWISE
## GIVING RISE TO FEDERAL JURISDICTION

4.      I also join Lewis and expressly disclaim any claims arising from the acts or omissions of any officer of the U.S. or any agency or person acting under him occurring under color of such office, other than failure to provide adequate warning of the dangerous propensity of the their products. I further expressly disclaim any other claims arising under the laws of the United States. I have no knowledge of any such claims or actions, but make this disclaimer to avoid any further unnecessary delays relating to federal court.

## REQUEST TO ALLOW DISMISSAL WITHOUT PREJUDICE

5.      To the extent that the Court is inclined to deny the Motion to Remand, or to not rule upon the Motion to Remand, for whatever reason, I request that the Court allow us to Dismiss the case, without prejudice, so that we can re-file the case in State Court as appropriate.

## AFFIRMATION

I declare under penalties of perjury under the laws of the United States that the foregoing Affidavit is true and correct.

Executed On:  Monday, September 17, 2007


Maybrey Shifflett
Maybrey Shifflett

2

# Exhibit D



CHARLES BACARISSE
District Clerk

SEP 0 6 2006

Harris County, Texas
By _____ 17:00am
Deputy



# JUDGE MARK DAVIDSON

201 Caroline, 9th Floor
Houston, Texas   77002

(713) 368-6020
FAX (713) 368-4317

September 5, 2006

Re:   Austin Richards, et ux. v. Carver Pump Company, et al; Cause no. 2006-
22,116

Dear Counsel:

The court has carefully considered the Defendants' Motion for Dismissal for
Forum Non Conveniens in the above case. Because this is not the last of these motions I
will be asked to determine, I am stating my reasons as a guide to the attorneys
representing clients in other asbestos cases.

All counsel are familiar with the fact that shortly after I became the MDL Judge
assigned to hear asbestos cases, I issued a ruling in the *Pomeranky* case which bemoaned
my inability to dismiss cases on grounds of forum non conveniens based on the language
of Section 71.051 of the Civil Practices and Remedies Code. After that ruling, the
language of the statute was amended to significantly broaden the discretion of Texas trial
courts. To my knowledge, this is the first time I have been asked to exercise the powers
given trial judges under the amended statute.

The facts in this case are, if anything, more compelling than those in *Pomranky*.
There is absolutely no connection between the State of Texas and any element of
negligence, causation or damages. It is apparently undisputed that the Plaintiff spent his
entire life, was exposed to asbestos, was diagnosed with mesothelioma and, in all
probability, will die in the state of Maine. All of his co-worker witnesses, treating
physicians and family members live in Maine. Based on these facts, I have struggled
with any way any attorney could argue with a straight face that the case belongs in Texas.

Then I reread the language of the new statute. Section 71.051(b) states:

If a court of this state, on written motion of a party, finds that *in the
interest of justice* and for the convenience of the parties a claim or action to which

this section applies would be more properly heard in a forum outside of this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall dismiss the claim or action... (italics added)

Plaintiffs claimed in argument before the court that if the case is refiled in Maine, it will immediately be removed to Federal Court, and from there transferred to the Federal MDL. What will happen to the cases there? Apparently, the judge will not give the plaintiff an opportunity to have his case heard before his death. The judge will attempt to get the case to settle. When and if the case is remanded, there will have been little, if any, judicial decision making performed that will assist the trial court. It will sit in this court, if it does not settle, for several years before it is remanded. The case will then go to the end of the docket in the federal court to which it is assigned. This isn't just what I have been able to find out from conferring with federal judges around the nation – this is what the Judge D. Brock Hornby, Chief Judge of the Federal Courts of the District of Maine, wrote in *In re Maine Asbestos Cases.* 44 F.Supp.2d 368 (D. Me. 1999).

The Federal MDL is located in Pennsylvania. Therefore, my ruling on this motion will not decide whether the case will go to Texas or Maine. If it were, my ruling would be different. This ruling will decide whether Texas or Pennsylvania will be the forum of the case. If it is the Federal Court of Pennsylvania, it is certain that Mr. Richards will not be alive to have his day in court, and will die without knowing whether or not his widow will get a recovery from this case. A system of justice that would mandate such a result has nothing to do with the concept of justice.

My ruling on this motion might well have been different if the Defendants had assured me that no effort would have been made to remove this case to Federal Court. The Defendants were quite forthcoming that they would not waive their removal rights. Since they did not, I am unable to conclude that it is in the interests of justice to decline to accept jurisdiction over this case. I will therefore deny the motion.

I must admit that I did not think this would be the ruling I would make on the first Forum Non Conveniens motion I heard under the new statute. I am aware that under new leadership, the Federal MDL is beginning to try to devise a system that makes it less of a "black hole" than is has been in the past. My ruling on the next such motion I get will be different if the Federal MDL becomes a pre-trial court, as opposed to a settlement court. Even if it does not improve, my next ruling may be different if a waiver of removal to federal court is offered by Defendants.

I will sign an order denying the motion, so that any party wishing may initiate appellate review.

Respectfully submitted,

MARK DAVIDSON

# Exhibit E



# ASBESTOS MEDICINE SEMINAR

NOVEMBER 8–9, 2007

SAN DIEGO MARRIOTT

SAN DIEGO, CALIFORNIA

**Who Should Attend**

- Defense lawyers
- National in-house counsel
- Insurance and self-insured professionals
- Risk managers
- Medical nurses and paralegals

**DRI**™
The Voice of the Defense Bar



This year's DRI Asbestos Medicine Seminar offers the latest medical and legal developments in the field, taught by an experienced faculty of physicians and attorneys. Medical experts will provide up-to-date information on various types of mesotheliomas, disease detection and diagnosis. A practical analysis of causation, including recent decisions affecting exposure and cause will be covered. Strategies for defending the "other cancers" and the importance of the 2006 Institute of Medicine study will be discussed. Learn more about the potential liability of equipment manufacturers and premises owners. Hear about the latest industrial hygiene technology and its impact on litigation. Strategize with some of the finest, most experienced litigators in this field. Please join us in San Diego and take advantage of this unique networking and learning opportunity.

ALBERT H. PARNELL

*Program Chair and Law Institute*

### What You Will Learn

- Latest developments in asbestos litigation
- Update on MDL 875 and its future impact
- Recent court decisions affecting causation
- Review of disease diagnosis and causation evidence
- Warning issues for premises owners
- Latest methods for defending "low dose" products
- Strategies for defending screened cases
- Defending the "other cancers" on the science

*Asbestos Medicine Seminar*

## WEDNESDAY, NOVEMBER 7, 2007

6:00 p.m.   REGISTRATION AND NETWORKING RECEPTION

## THURSDAY, NOVEMBER 8, 2007

CAPPUCCINO BAR

*Sponsored by*



INTERNET CAFÉ

*Sponsored by* McCaffery & Associates, Inc.
*Historical Research*

7:30 a.m.   REGISTRATION AND CONTINENTAL BREAKFAST

8:15 a.m.   WELCOME AND INTRODUCTION
ALBERT H. PARNELL, *Hawkins & Parnell LLP*, Atlanta, Georgia

8:25 a.m.   MDL 875: NAVIGATING THE BLACK HOLE — ITS FUTURE AND
RAMIFICATIONS FOR STATE COURTS
Hear about the current role of the MDL and its projected
impact on existing and future cases.
DAVID CRAIG LANDIN, *Hunton & Williams LLP*, Richmond,
Virginia

9:00 a.m.   SPREADING THE WEALTH BY SHARING THE RESPONSIBILITY
Many states now permit the submission of non-parties,
including bankrupt companies and employers, to the jury for
apportionment of responsibility. This section will provide ideas
for broadly spreading responsibility, thereby reducing the
"share" of trial defendants.
T. LYNN WALDEN, *Jenkins & Martin LLP*, Beaumont, Texas

9:40 a.m.   THE CHANGING WORLD OF CAUSATION — RECENT DECISIONS
AND TRENDS AFFECTING EXPOSURE AND CAUSE
Courts around the country are tackling, as though for the first
time, these questions: Is there evidence of sufficient exposure to
asbestos to be the cause of plaintiff's injuries? Do friction
products alone release enough respirable fibers to be the cause
of plaintiff's injury? Is asbestos exposure without asbestosis
sufficient to be a cause of lung cancer in a plaintiff who smoked
cigarettes? How much exposure is required to support the
"substantial factor" standard for causation?
SANDRA F. CLARK, *MehaffyWeber PC*, Beaumont, Texas

10:15 a.m.   REFRESHMENT BREAK
*Sponsored by* EXponent®

| | |
|---|---|
| 10:35 a.m. | TEXAS'S ASBESTOS MDL—THE FIRST THREE YEARS AND COMING ATTRACTIONS |
| | The Texas Asbestos MDL is a unique system of administration of cases and is quite different from what its initial proponents and opponents envisioned. Judge Davidson will discuss developments to date and make predictions on upcoming issues. |
| | HONORABLE MARK DAVIDSON, *11th District Court of Texas*, Houston, Texas |
| 11:15 a.m. | PERITONEAL MESOTHELIOMA—AN UPDATE |
| | Learn the latest in the field from an experienced medical expert. |
| | VICTOR L. ROGGLI, M.D., *Duke University Medical Center*, Durham, North Carolina |
| 11:55 a.m. | LUNCH *(on your own)* |
| 11:55 a.m. | WOMEN'S NETWORKING LUNCHEON *(included in registration)* |
| | *Sponsored by* **Segal McCambridge** Segal McCambridge Singer & Mahoney |
| 1:20 p.m. | POTENTIAL LIABILITY OF EQUIPMENT MANUFACTURERS FOR POST-SALE APPLICATION OF ASBESTOS-CONTAINING INSULATION AND OTHER PRODUCTS NOT SUPPLIED OR SPECIFIED BY THE EQUIPMENT MANUFACTURER |
| | There is developing case law on product liability, forseeability and duty to warn, most of which, from a defense perspective, is going in the wrong direction. If plaintiffs win on this issue, it eliminates or severely hinders the state of the art, low dose and chrysotile defenses, as equipment manufacturers will be called upon to defend the insulation product. |
| | GEORGE F. FITZPATRICK, JR., *Swanson Martin & Bell*, Chicago, Illinois |
| 1:55 p.m. | THE CURRENT STATUS OF THE POTENTIAL LIABILITY OF PREMISES OWNERS AND OTHER WARNING AND NO WARNING ISSUES AND POTENTIAL DEFENSES |
| | The world of the premises owner constantly changes, along with various warning issues. Additionally, equipment manufacturers are now subject to claims for a duty to warn of another manufacturer's products. Mr. Mesher will discuss these topics. |
| | BARRY N. MESHER, *Lane Powell PC*, Seattle, Washington |
| 2:35 p.m. | A PRACTICAL REVIEW OF DISEASE DIAGNOSIS AND CAUSATION EVIDENCE IN ASBESTOS LITIGATION |
| | The methods and analytical techniques utilized in diagnosing disease and determining potential causative agents will be reviewed. The use of fiber burden studies, new advanced staining techniques, basic pathology analysis and clinical correlation will be discussed. The importance of fully developed medical and occupational history for evaluating and presenting legal challenges to expert opinions will be stressed. |
| | EDWARD M. SLAUGHTER, *Hawkins Parnell & Thackston LLP*, Dallas, Texas |

*Asbestos Medicine Seminar*

| | |
|---|---|
| 3:15 p.m. | THE INDUSTRIAL HYGIENE WORLD AND ASBESTOS LITIGATION |

Dr. Toca will discuss various aspects of current industrial hygiene technology and its potential impact on modern asbestos litigation.

FREDRICK M. TOCA, PH.D., CIH, CSP, *Atlantic Environmental Inc.*, Atlanta, Georgia

| | |
|---|---|
| 4:00 p.m. | REFRESHMENT BREAK |

*Sponsored by* **EXponent**®

## BREAKOUT SESSIONS

*(All breakout sessions are limited to defense lawyers and their clients only. Plaintiffs' lawyers are invited to meet elsewhere on their own.)*

| | |
|---|---|
| 4:20 p.m. | BREAKOUT A: THE LOW DOSE STORY *(1 hour)* |

**Moderator**

JOHN J. KUROWSKI, *Kurowski Bailey & Shultz LLC*, Swansea, Illinois

BREAKOUT B: NEW PLAINTIFF AND PRODUCT INVESTIGATION — FOR THE NOVICE, THE EXPERIENCED AND EVERYONE ELSE *(1 hour)*

**Moderator**

EVELYN MCREE FLETCHER, *Hawkins & Parnell LLP*, Atlanta, Georgia

**Panelists**

JOHAN D. FLYNN, *DeHay & Elliston LLP*, Baltimore, Maryland

CATHERINE E. BOYD GOLDHABER, *Segal McCambridge Singer & Mahoney Ltd.*, Chicago, Illinois

MARK K. HSU, *Kasowitz Benson Torres & Friedman LLP*, New York, New York

BREAKOUT C: HISTORICAL PERSPECTIVE — GREAT MOMENTS IN ASBESTOS LITIGATION *(2 hours)*

**Moderators**

JAMES H. CROSBY, *Crosby Saad LLC*, Mobile, Alabama

MICHAEL E. HUTCHINS, *Kasowitz Benson Torres & Friedman LLP*, Atlanta, Georgia

ALBERT H. PARNELL, *Hawkins & Parnell LLP*, Atlanta, Georgia

| | |
|---|---|
| 5:20 p.m. | BREAKOUT D: HOT TOPICS *(1 hour)* |

DAVID CRAIG LANDIN, *Hunton & Williams LLP*, Richmond, Virginia

BREAKOUT E: BEST ASBESTOS JURY SELECTION IDEAS OF THE CENTURY *(1 hour)*

**Moderator**

ANGELA L. ABEL, *DecisionQuest*, Atlanta, Georgia

| | |
|---|---|
| 6:20 p.m. | ADJOURN |
| 6:30 p.m. | NETWORKING RECEPTION |

*Sponsored by* **HAWKINS & PARNELL, LLP**

*and* **NAVIGANT** CONSULTING

*November 8–9, 2007*

## FRIDAY, NOVEMBER 9, 2007

CAPPUCCINO BAR

*Sponsored by*



INTERNET CAFÉ

*Sponsored by* 

| | |
|---|---|
| 7:30 a.m. | REGISTRATION AND CONTINENTAL BREAKFAST |
| 8:15 a.m. | ANNOUNCEMENTS<br>ALBERT H. PARNELL, *Hawkins & Parnell LLP*, Atlanta, Georgia<br>MICHAEL E. HUTCHINS, *Kasowitz Benson Torres & Friedman LLP*, Atlanta, Georgia |
| 8:20 a.m. | YOU BET YOUR (ETHICAL) LIFE<br>Legal ethics in asbestos litigation will be examined in the context of a series of game show questions, answers and hypotheticals.<br>DOUGLAS R. ELLIOTT, *Deutsch Kerrigan & Stiles LLP*, New Orleans, Louisiana<br>JANET L. MACDONELL, *Deutsch Kerrigan & Stiles LLP*, New Orleans, Louisiana |
| 9:20 a.m. | BURNING PLAINTIFFS' STRAW MAN — PREPARING YOUR PMK WITNESS<br>Learn ways to deal with plaintiffs' strategy of making your corporate rep look bad with collateral "Notice of Asbestos Hazard Document" versus official interrogatory answers on notice.<br>JOHN M. FITZPATRICK, *Wheeler Trigg Kennedy LLP*, Denver, Colorado |
| 10:00 a.m. | REFRESHMENT BREAK<br>*Sponsored by* |
| 10:20 a.m. | COMPLEX MEDICAL ANALYSIS — THERE ARE NO 'ROUTINE' CASES<br>Clinical, radiological, pathological and DNA findings in challenging asbestos cases will be covered.<br>I. ALLAN FEINGOLD, M.D., FRCP(C), FCCP, *South Miami Hospital*, Miami, Florida |
| 11:20 a.m. | ROUND CELL MESOTHELIOMAS WITH AN EMPHASIS ON DECIDUOLD MESOTHELIOMAS<br>SAMUEL P. HAMMAR, M.D., *Diagnostic Specialties Laboratory*, Bremerton, Washington |
| 12:00 p.m. | LUNCH *(on your own)* |

*Asbestos Medicine Seminar*

| | |
|---|---|
| 1:20 p.m. | SUBSTANTIAL CONTRIBUTING FACTOR AND MESOTHELIOMA — HOW TO DEFEAT PLAINTIFFS' ARGUMENT THAT EVERY EXPOSURE CONTRIBUTES |

Learn ways to defeat plaintiffs' argument that every exposure contributes.

BRUCE T. BISHOP, *Willcox & Savage PC*, Norfolk, Virginia

| | |
|---|---|
| 2:00 p.m. | THE NEXT STEPS IN DEFENDING SCREENED CASES |

Discussion of (1) suspect companies/physicians and how these cases still appear in various jurisdictions, as well as how to conduct discovery and proceed, once a suspect company/physician is identified; (2) Impairment and positive rates in screenings versus literature; and (3) defense strategies to uncover and defend against still active screening processes.

ANDREW L. KALISH, *Socha Perczak Setter & Anderson PC*, Denver, Colorado

| | |
|---|---|
| 2:35 p.m. | THE EPIDEMIOLOGY OF THE "OTHER CANCERS" — A REVIEW OF THE IOM/NIH STUDY |

The association and causal connection between asbestos exposure and gastrointestinal, colorectal, esophogeal, laryngeal and pharyngeal malignancies has remained controversial, despite continuing medical and scientific interest in this subject. The vital 2006 IOM study and recent literature on these malignancies will be explored.

JOHN A. LaBOON, *Segal McCambridge Singer & Mahoney Ltd.*, Austin, Texas

| | |
|---|---|
| 3:15 p.m. | REFRESHMENT BREAK |

*Sponsored by* J&M Jenkins & Martin, L.L.P.

| | |
|---|---|
| 3:35 p.m. | DEFENDING THE "OTHER CANCERS" ON THE SCIENCE |

Building on the previous session, this presentation will discuss the tools necessary to defend these cases at pretrial, *Daubert* and *Frye* hearings and at trial, on the medicine and science, using the 2006 IOM/NIH study, recent literature and other trial tactics.

JOHN J. KUROWSKI, *Kurowski Bailey & Shultz LLC*, Swansea, Illinois

| | |
|---|---|
| 4:15 p.m. | TRIAL PANEL—"OTHER CANCERS," LOW DOSE, CROSS EXAMINATION AND EXPERTS |

**Moderator**

ALBERT H. PARNELL, *Hawkins & Parnell LLP*, Atlanta, Georgia

**Panelists**

BRUCE T. BISHOP, *Willcox & Savage PC*, Norfolk, Virginia

SANDRA F. CLARK, *Mehaffy Weber PC*, Beaumont, Texas

JOHN M. FITZPATRICK, *Wheeler Trigg Kennedy LLP*, Denver, Colorado

JOHN J. KUROWSKI, *Kurowski Bailey & Shultz LLC*, Swansea, Illinois

T. LYNN WALDEN, *Jenkins & Martin LLP*, Beaumont, Texas

| | |
|---|---|
| 5:00 p.m. | ADJOURN |

*November 8–9, 2007*

## GENERAL INFORMATION

### CLE Accreditation

This seminar has been approved for MCLE credit by the State Bar of California in the amount of **14.5** hours, including **1** hour of ethics credit. Accreditation has been requested from every state with mandatory continuing legal education (CLE) requirements. Certificates of attendance will be provided to each attendee. Attendees are responsible for obtaining CLE credits from their respective states. Credit availability and requirements vary from state to state; please check our website at **www.dri.org** for credit information for your state.

### Registration

The registration fee is **$645** for members and those who join DRI when registering and **$775** for non-members. The registration fee includes CD-ROM course materials, continental breakfasts, women's networking luncheon, refreshment breaks and networking receptions. If you wish to have your name appear on the registration list distributed at the conference and receive the CD-ROM course materials in advance, DRI must receive your registration by **October 19, 2007** *(please allow 10 days for processing)*. Registrations received after **October 19, 2007**, will be processed on-site

### Special Discounts

The first and second registrations from the same firm or company are subject to the fees outlined above. The registration fee for additional registrants from the same firm or company is **$595**, regardless of membership status. All registrations must be received at the same time to receive the discount.

### Refund Policy

The registration fee is fully refundable for cancellations received on or before **October 19, 2007**. Cancellations received after **October 19** and on or before **October 26, 2007**, will receive a refund, less a $50 processing fee. Cancellations made after **October 26** will not receive a refund, but the course materials on CD-ROM and a $100 certificate good for any DRI seminar within the next 12 months will be issued. All cancellations and requests for refunds must be made in writing. Fax to DRI's Accounting Department at 312.795.0747. All refunds will be mailed within four weeks after the date of the conference. Substitutions may be made at any time without charge and must be submitted in writing.

### Course Materials

In order to better serve and satisfy the numerous requests from our membership, DRI will mail the course materials to all registrants in CD-ROM format 12 days in advance of the seminar. You can order additional copies by checking the appropriate box on the registration form on the back of this brochure or ordering online at **www.dri.org**.

*Sponsored by*   **HENJUM GOUCHER**
*Reporting Services*

*Asbestos Medicine Seminar*

---

### Supplemental Materials

Recommended supplemental material for this seminar is ***Exploring Toxic Tort and Environmental Liability Claims*** from DRI's Defense Library Series. Order your copy by checking the appropriate box on the registration form on the back of this brochure. You can also view the entire list of DRI publications offerings and make purchases online at **www.dri.org**.

### Hotel Accommodations

A limited number of discounted hotel rooms have been made available at the **San Diego Marriott, 33 West Harbor Drive, San Diego, California 92101**. For reservations, **contact the hotel directly at 619.234.1500**. Please mention DRI's Asbestos Medicine Seminar to take advantage of the group rate of **$245 Cityview Single/$265 Bayview Double**. The hotel block is limited and rooms and rates are available on a first-come, first-served basis. You must make reservations by **October 10, 2007**, to be eligible for the group rate. Requests for reservations made after **October 10** are subject to room and rate availability.

### Travel Discounts

DRI offers discounted meeting fares on various major air carriers for **DRI's Asbestos Medicine Seminar** attendees. To receive these discounts, please contact Hobson Travel Ltd., DRI's official travel provider at 800.538.7464. As always, to obtain the lowest available fares, early booking is recommended.

---

The taping or recording of DRI seminars is prohibited without the written permission of DRI.

Speakers and times may be subject to last-minute changes.

DRI policy provides there will be no group functions sponsored by others in connection with its seminars.



**DRI™**
**COMMITTED TO DIVERSITY**
DRI is the international membership organization of all lawyers involved in the defense of civil litigation. As such, DRI wishes to express its strong commitment to the goal of diversity in its membership. Our member attorneys conduct business throughout the United States and around the world, and DRI values highly the perspectives and varied experiences that are found only in a diverse membership. The promotion and retention of a diverse membership is essential to the success of our organization as a whole as well as our respective professional pursuits. Diversity brings to our organization a broader and richer environment, which produces creative thinking and solutions. As such, DRI embraces and encourages diversity in all aspects of its activities. DRI is committed to creating and maintaining a culture that supports and promotes diversity in its organization.

## FACULTY

ANGELA L. ABEL is a vice president at DecisionQuest in its Atlanta office. She specializes in the development of litigation communication strategies. Ms. Abel has experience in more than 800 cases of diverse practice areas including intellectual properties, toxic tort, products liability, construction and personal injury litigation.

BRUCE T. BISHOP is a member of Willcox & Savage PC in Norfolk, Virginia. Since 1977, Mr. Bishop has focused on toxic tort and environmental litigation. He has extensive trial experience in state and federal courts throughout the U.S. in the defense of toxic torts/products liability claims. Mr. Bishop has also developed a nationwide reputation for his work with medical and state-of-the-art issues associated with toxic tort litigation.

SANDRA F. CLARK, a shareholder of MehaffyWeber PC practices out of the firm's Beaumont and Houston offices. She has tried more than 25 major toxic tort cases to verdict and has been involved in the successful defense of many others. Ms. Clark is a member of the Texas Asbestos MDL Liaison Committee, the Houston Chapter of ABOTA, the Advisory Committee for Personal Injury for the Texas Board of Legal Specialization, Texas Bar Foundation, FDCC, Products Liability Advisory Council and the Michelle F. Mehaffy Inn of Court.

JAMES H. CROSBY is a member of Crosby Saad LLC in Mobile, Alabama. His principal areas of practice include corporate law, corporate defense, products liability, toxic torts, litigation limitation, litigation management and insurance coverage.

THE HONORABLE MARK DAVIDSON serves as judge of the 11th District Court of Texas in Houston. He has tried more than 400 jury trials. Named as the first Multi District Litigation Judge in Texas, he was assigned to hear all pre-trial matters in all Texas asbestos cases filed in the state after September 2003. In 2005, his mandate was expanded to include all 58,000 asbestos cases pending in Texas. Judge Davidson has developed procedures that has led to the trial and disposition of many cases and has broken ground in rulings on *Daubert* challenges to scientific evidence.

DOUGLAS R. ELLIOTT is a partner with Deutsch Kerrigan & Stiles LLP in New Orleans. His practice focuses on civil litigation, product liability, insurance defense, mass torts, toxic torts and criminal law.

I. ALLAN FEINGOLD, M.D., FRCP(C), FCCP, is chief of the Division of Pulmonary Medicine of South Miami Hospital in Miami, Florida. Dr. Feingold is a fellow of the Royal College of Physicians (Internal Medicine), board certified in Internal Medicine and Pulmonary Medicine by the American Board of Internal Medicine and a certified NIOSH B Reader.

GEORGE F. FITZPATRICK, JR., is the founding partner of Swanson Martin & Bell in Chicago. For 20 years, Mr. Fitzpatrick has served as national coordinating counsel in asbestos litigation for numerous defendants, including pump, valve and other equipment manufactures, brake manufacturers and users, and premises owners. He has successfully argued two appeals of significance to equipment manufacturer defendants in asbestos litigation. He is a member of DRI and the National Forum for Environmental and Toxic Tort Issues.

JOHN M. FITZPATRICK, a partner in Wheeler Trigg Kennedy LLP in Denver, handles high exposure cases for national clients, including product defects in asbestos (GE, Foster Wheeler and Velan), aviation (Global Aerospace), equipment (MTD), chemical release (Air Products) and medical devices (LabCorp). His primary focus during the last few years has involved high exposure claims due to product defects or general negligence claims. Mr. Fitzpatrick has tried in excess of 150 cases to verdict in 22 states and obtained defense verdicts in more than 140 cases.

EVELYN MCREE FLETCHER is a partner at Hawkins & Parnell LLP in its Atlanta office. Ms. Fletcher has served as national and local counsel for numerous companies involved in product liability, asbestos and silica litigation. She is a board member of the Atlanta Council of Younger Lawyers and a member of the Atlanta Bar Association, DRI and the Georgia Defense Lawyers Association.

JOHAN D. FLYNN is an attorney in the firm of DeHay & Elliston LLP in Baltimore. His practice focuses on litigation, insurance defense, products liability, asbestos litigation and mass torts.

CATHERINE E. BOYD GOLDHABER is an attorney at Segal McCambridge Singer & Mahoney Ltd. in Chicago. Her areas of concentration include litigation, toxic torts, products liability, child welfare, juvenile law and general liability.

SAMUEL P. HAMMAR, M.D., is the director of Diagnostic Specialties Laboratory in Bremerton, Washington. He is board-certified in anatomic and clinical pathology and specializes in lung disease, cancer and diagnostic techniques used to investigate cancer. For the past 18 years, Dr. Hammar has been primarily interested in asbestos-related disease, especially mesothelioma. He has done extensive research on asbestos-related lung disease in conjunction with Dr. Ronald F. Dodson and sees asbestos-induced lung disease on a regular basis as a pathologist.

MARK K. HSU is special counsel at the New York City office of Kasowitz Benson Torres & Friedman LLP. Mr. Hsu focuses his practice on products liability and commercial litigation.

MICHAEL E. HUTCHINS is a partner at Kasowitz Benson Torres & Friedman LLP in Atlanta. Mr. Hutchins focuses his practice on environmental litigation, products liability, commercial cases and general civil litigation. He has handled asbestos and toxic tort litigation throughout the U.S. for the past 18 years.

ANDREW L. KALISH is an attorney at the law firm of Socha Perczak Setter & Anderson PC in Denver. His practice areas include complex and multi-district litigation, products liability and mass torts.

JOHN J. KUROWSKI is the managing partner of Kurowski Bailey & Shultz LLC in Swansea, Illinois. He specializes in complex civil litigation with an emphasis in asbestos and toxic tort. Mr. Kurowski has defended asbestos litigation for more than 20 years. He serves as national coordinating and trial counsel for several asbestos litigation clients, as well as local counsel for several companies in Madison County, Illinois, and the St. Louis area.

JOHN A. LaBOON is a partner at Segal McCambridge Singer & Mahoney Ltd. in Austin, Texas. Since 1993, Mr. LaBoon has focused on tort defense litigation with an emphasis in asbestos and silica litigation involving products liability, contractor liability and premises liability claims. In asbestos and silica cases, he has represented numerous manufacturers, an international premises owner and a major construction contractor. Mr. LaBoon has served on local, regional and national trial teams for defendants in asbestos litigation.

DAVID CRAIG LANDIN is a partner in the Litigation, Intellectual Property and Antitrust team at Hunton & Williams LLP in Richmond, Virginia. Mr. Landin has served as national coordinating and trial counsel in a variety of litigation settings. He is a past president of the Virginia Bar Association.

JANET L. MACDONELL was a partner at Deutsch Kerrigan & Stiles LLP in New Orleans until 2004, when she semi-retired. She works, on a limited basis, coordinating litigation nationwide for a client and assisting in complicated cases upon request. Her expertise is in defense of long-term exposure, latent disease cases, medical device, environmental and products liability claims. Ms. MacDonell has extensive experience working with medical experts.

BARRY N. MESHER is a partner in the law firm of Lane Powell PC in Seattle. He has been involved in multiple toxic tort and environmental litigation cases for more than 25 years and serves as national coordinating counsel, regional coordinating counsel and local counsel for a number of asbestos litigation clients. Mr. Mesher is a member of the firm's London, Insurance and Toxic Tort Practice Groups and a member of DRI, the American College of Law and Medicine and Washington Defense Trial Lawyers Association.

ALBERT H. PARNELL is a trial lawyer and partner in Hawkins & Parnell LLP in Atlanta, Georgia, and Charleston, West Virginia, and a partner in the Dallas office of Hawkins Parnell & Thackston LLP. Mr. Parnell is a founding and current member of DRI's Law Institute and a former member of the DRI Board of Directors. He has tried more than 250 lawsuits to jury verdict in more than 25 states.

VICTOR L. ROGGLI, M.D., is a professor of pathology at the Duke University Medical Center in Durham, North Carolina, and the director of the Electron Microscopy Laboratory at the Durham Veterans Administration Medical Center. His research interests include pneumoconioses, asbestos-related diseases and analytical electron microscopy. Dr. Roggli has published more than 140 articles and 26 chapters in textbooks. He has also written four books, including *Microprobe Analysis in Medicine, Biomedical Applications of Microprobe Analysis,* and *Pathology of Asbestos-Associated Diseases,* 1st and 2nd editions.

EDWARD M. SLAUGHTER, a partner in Hawkins Parnell & Thackston LLP in Dallas, focuses his practice in the areas of product liability and toxic tort litigation. Mr. Slaughter has extensive experience in litigation involving asbestos, paints and solvents, pesticides and other chemicals.

FREDRICK M. TOCA, PH.D., CIH, CSP, is an industrial hygienist for Atlantic Environmental Inc. in Atlanta, Georgia. Dr. Toca has more than 20 years of experience managing programs and acting as the principal technical specialist in industrial hygiene, occupational safety and environmental sciences. He is the former director of Occupational Safety & Health for Hoechst Celanese, the former director of Industrial Hygiene Safety & Compliance for USX Corporation and the former manager of Environmental Protection for General Electric Co., Plastics Division. Dr. Toca is a past president of the AIHA.

T. LYNN WALDEN is a partner at Jenkins & Martin LLP in Beaumont, Texas. Mr. Walden's practice is focused upon asbestos defense, toxic torts, medical malpractice and pharmaceutical litigation. He has extensive jury trial experience from his 16 years of practice. He has served as trial counsel for Bondex International for the last three years. Since 2004, he has been involved in numerous asbestos trials, including representation as lead trial counsel for his clients, resulting in eight verdicts in mesothelioma cases.

*Asbestos Medicine Seminar*

## 2007 DRI SEMINAR SCHEDULE

| | |
|---|---|
| September 6–7 | STRICTLY AUTOMOTIVE<br>*Hotel del Coronado*, San Diego, CA |
| September 6–7 | CONSTRUCTION LAW<br>*The Westin Kierland*, Scottsdale, AZ |
| September 27–28 | NURSING HOME/ALF LITIGATION<br>*Bellagio*, Las Vegas, NV |
| September 27–29 | PREEMINENT LAWYERS — SUPERSTARS OF TRIAL<br>*The Westin Michigan Avenue*, Chicago, IL |
| October 10–14 | DRI ANNUAL MEETING<br>*Marriott Wardman Park*, Washington, DC |
| November 1–2 | COMPLEX COMMERCIAL LITIGATION<br>*JW Marriott Desert Ridge*, Phoenix, AZ |
| November 1–2 | FIRE AND CASUALTY<br>*The Westin Chicago River North*, Chicago, IL |
| November 8–9 | ASBESTOS MEDICINE<br>*San Diego Marriott*, San Diego, CA |
| December 13–14 | INSURANCE COVERAGE AND PRACTICE<br>*Sheraton New York Hotel and Towers*, New York, NY |

## 2008 DRI SEMINAR SCHEDULE

| | |
|---|---|
| January 24–25 | CIVIL RIGHTS AND GOVERNMENTAL TORT LIABILITY<br>*Hyatt Regency*, Scottsdale, AZ |
| February 6–8 | PRODUCT LIABILITY CONFERENCE<br>*Arizona Biltmore*, Phoenix, AZ |
| February 28–29 | APPELLATE ADVOCACY<br>*Eden Roc*, Miami Beach, FL |
| February 28–29 | TOXIC TORTS AND ENVIRONMENTAL LAW<br>*The Ritz-Carlton New Orleans*, New Orleans, LA |
| March 12–14 | MEDICAL LIABILITY AND HEALTH CARE LAW<br>*Hotel Inter-Continental*, San Francisco, CA |
| March 27–28 | DAMAGES<br>*Caesars Palace*, Las Vegas, NV |
| April 10–11 | INSURANCE COVERAGE AND CLAIMS<br>*The Drake Hotel*, Chicago, IL |
| April 17–18 | TRUCKING LAW<br>*Pointe Hilton Tapatio Cliffs*, Phoenix, AZ |
| April 23–25 | LIFE, HEALTH, DISABILITY AND ERISA CLAIMS<br>*Hotel Inter-Continental*, San Francisco, CA |
| May 1–2 | DRUG AND MEDICAL DEVICE LITIGATION<br>*Sheraton New Orleans*, New Orleans, LA |
| May 15–16 | ELECTRONIC DISCOVERY<br>*Renaissance Washington, DC Hotel*, Washington, DC |
| May 15–16 | EMPLOYMENT LAW<br>*Renaissance Chicago Hotel*, Chicago, IL |

**Join DRI now and register at the member rate—a $130 savings!**

## DRI™ MEMBERSHIP APPLICATION

*This application/registration form for first-time members only—all other registrants please use reverse side.*

**Member Category**
- ☐ Defense Attorney — $225 USD/year
- ☐ Government Attorney — $160 USD/year
- ☐ Young Lawyer* — $130 USD/year *(admitted to the Bar for 5 years or less)*
- ☐ Law Student — $20 USD/year

☐ Male  ☐ Female

_____
DATE OF BIRTH (MONTH/DAY/YEAR)

_____
NAME

_____
NAME AS YOU WOULD LIKE IT TO APPEAR ON BADGE

_____
COMPANY/FIRM/LAW SCHOOL

_____
ADDRESS

_____
CITY

_____
STATE/PROVINCE                    ZIP/POST CODE

_____
COUNTRY

_____
TELEPHONE                         FAX

_____
E-MAIL

Is this the first time you are attending this DRI seminar?  ☐ Yes  ☐ No

_____
NUMBER OF ATTORNEYS IN YOUR FIRM      PRIMARY AREA OF PRACTICE

Admitted to the Bar in _____
                       STATE/PROVINCE    MONTH/YEAR    BAR NUMBER

_____
REFERRED BY

*DRI is committed to the principle of diversity in its membership and leadership. Accordingly, applicants are invited, at their option, to indicate which one of the following may best describe them:*

- ☐ African American
- ☐ Asian American
- ☐ Hispanic origin
- ☐ Native American
- ☐ White
- ☐ Other

I am a member of a state or local defense organization.  ☐ Yes  ☐ No

_____
NAME OF ORGANIZATION

*To the extent that I engage in personal injury litigation, I DO NOT, for the most part, represent plaintiffs. I have read the above and hereby make application for individual membership.*

_____
SIGNATURE                         DATE

*All applications must be signed and dated.*

### Registration/Application Fees

Seminar Registration:
- ☐ $645   [Member]
- ☐ $400   [Government DRI Member]
- ☐ $0     [Law Student DRI Member]

Membership (*check one*):
- ☐ $225   [Defense Attorney]
- ☐ $160   [Government Attorney]
- ☐ $130*  [Young Lawyer]
- ☐ $20    [Law Student]

Total: _____

> *Those eligible for Young Lawyer membership will receive a certificate for one free seminar when they join.

### Payment Method

- ☐ My check for _____ (USD) is enclosed.
- ☐ Please charge my  ☐ VISA  ☐ MasterCard  ☐ American Express

☐☐☐☐ ☐☐☐☐ ☐☐☐☐ ☐☐☐☐      ☐☐–☐☐
CARD NUMBER                        EXPIRATION DATE

_____
SIGNATURE AS IT APPEARS ON CARD

*Please remit payment to:*
DRI, 72225 Eagle Way, Chicago, IL 60678-7252
Phone: 312.795.1101      Fax: 312.795.0747
Website: www.dri.org     E-mail: membership@dri.org

3400-0020-21
Asbestos

2007-0020B

**DRI**™
The Voice of the Defense Bar

150 North Michigan Avenue
Suite 300
Chicago, IL 60601

*Please remit payment to:*

DRI
7225 Eagle Way
Chicago, IL 60678-7252

*Questions?*
Phone: 312.795.1101
Fax: 312.795.0749
E-mail: seminars@dri.org
Website: www.dri.org



**Asbestos Medicine Seminar**
**November 8–9, 2007**

Advance Registration Deadline: **October 19, 2007**
*(For inclusion on the pre-registration list and to receive course materials in advance, register by this date.)*

NAME _____

NAME AS YOU WOULD LIKE IT TO APPEAR ON BADGE
_____

COMPANY/FIRM _____

ADDRESS _____

TELEPHONE _____ FAX _____

E-MAIL _____

Are you a first-time attendee at this DRI seminar?  ☐ Yes  ☐ No

How many attorneys are          What is your primary
in your firm? _____          area of practice? _____

**Registration Fees** *(includes course materials)*
*(If joining DRI to get the member rate, complete the form on the reverse side.)*
☐ Member: $645   ☐ Non-member: $775   ☐ Government DRI Member: $400
☐ Law Student DRI Member: Free   ☐ Special Discount Price: $595 *(See brochure for eligibility)*

**Publications for Purchase**
Course Materials *(included in registration fee)*
☐ Member: $75   ☐ Non-member: $95

**Supplemental Materials**
*Exploring Toxic Tort and Environmental Liability Claims*
CD-ROM   ☐ Member: $85   ☐ Non-member: $105
Hard copy  ☐ Member: $115   ☐ Non-member: $135
*(Illinois residents, please add 9% sales tax. Shipping charges will be added to each order.)*

**Payment Method**
My check for $ _____ (USD) is enclosed.
Please charge my
☐ VISA   ☐ MasterCard   ☐ American Express

CARD NUMBER ☐☐☐☐ ☐☐☐☐ ☐☐☐☐ ☐☐☐☐

EXPIRATION DATE ☐☐–☐☐

SIGNATURE AS IT APPEARS ON CARD _____

PRSRT STD
U.S. POSTAGE
PAID
DRI

3400-0020-21
Asbestos

2007-0020

# Exhibit F

Exhibit F.

## IN THE CIRCUIT COURT FOR BALTIMORE CITY

IN RE: BALTIMORE CITY                                *
  ASBESTOS LITIGATION
                                  *

*    *    *    *    *    *    *    *    *    *    *    *    *

                                  *

LEWIS SHIFFLETT, et ux.                              *

      Plaintiffs,                                  *

vs.                                    Case No.: 24x07000313

                                  *

AC& R INSULATION CO., INC. et. al.                   *

      Defendants.                                  *

*    *    *    *    *    *    *    *    *    *    *    *    *

## MOTION TO ADD CASE TO JULY 8, 2008 TRIAL GROUP

Plaintiffs, Lewis and Maybrey Shifflett, by their undersigned attorneys, respectfully request that the Court add this case to the July 8, 2008 mesothelioma trial group. As grounds therefore, Plaintiffs state as follows:

1.    Mr. Shifflett is a living mesothelioma victim.

2.    On July 19, 2007, Mr. Shifflett filed this action. At the same time, Mr. Shifflett filed a Request for Removal from the Inactive Docket, and various other documents required at filing. On August 6, 2007, Mr. Shifflett filed Answers to Master Interrogatories on LexisNexis.

3.    The July 15, 2008 mesothelioma trial group currently contains five cases, three of which (Shipley, Lawson & Millar) are being prosecuted by The Ruckdeschel Law Firm, LLC. Plaintiff anticipates using the same experts for Mr. Shifflett's case as will be used for the other three cases.

4.       Plaintiff currently anticipates making Mr. Shifflett available for deposition in September, 2007.

5.       No defendant will be prejudiced by the addition of the <u>Shifflett</u> case to the July 8, 2008 trial group.  To the contrary, Defendants will have *more* information *earlier* than required. Under the current Scheduling Order governing the July 8, 2008 trial group, Answers to Interrogatories are not due until October 12, 2007.  By that time, not only will Defendants have received Answers to Master Interrogatories (filed on LexisNexis on August 6, 2007), they will also have had the opportunity to depose Mr. Shifflett.  There are significant overlapping defendants and products in the <u>Shifflett</u> case and the other cases in the July 8, 2008 trial group that further make consolidation appropriate.

6.       To the extent that any Defendant objects to the addition of the <u>Shifflett</u> case to the July 8, 2008 trial group on the ground that the trial group would then contain six (6) cases rather than five (5), and to the extent that the Court considers such objection valid, Plaintiffs in the <u>Lawson</u> case have agreed to allow the <u>Shifflett</u> case to be substituted for it in the July 8, 2008 trial group and to be assigned a new trial date at a later date.  In such circumstance, Plaintiffs request that they be substituted for <u>Lawson</u> case.

WHEREFORE, Plaintiffs request that the Court add the <u>Shifflett</u> case to the July 8, 2008 trial group.

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel
The Ruckdeschel Law Firm, LLC
5126 Dorsey Hall Drive, Suite 201
Ellicott City, Maryland 21042
(410) 884-7825 [O]
(443) 583-0430 [F]
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of August, 2007, a copy of the foregoing was served, via LexisNexis File & Serve, upon all counsel of record and by U.S. mail upon all parties that have not yet entered an appearance in the case.

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel

# Exhibit G

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
CASE NO.: 1:07-CV02397-WDQ

LEWIS SHIFFLETT, et ux.,　　　　　　　　　(Circuit Court for Baltimore City

　　　　　　　　　　　　　　　　　　　　　Case No.: 24x07000313)

Plaintiffs,


v.

AC & R INSULATION CO., INC., et al,

　　　　　　Defendants,

_____/

## PLAINTIFFS' MOTION FOR REMAND

　　　Lewis and Maybrey Shifflett, by their undersigned attorneys, pursuant to 28

U.S.C. § 1447(c), file the following Motion for Remand.　The grounds therefore, which

are more fully set forth in the accompanying Memorandum In Support of Motion For

Remand, are:

　　　1.　　　On September 7, 2007, Defendants CBS Corporation and Federated

Development filed a Notice of Removal of this case asserting the "federal enclave"

doctrine as the sole basis for Removal.　The Notice of Removal was filed on the 30th day

after service upon CBS Corporation and numerous other Defendants.

　　　2.　　　No other Defendant signed the Notice of Removal.　No other Defendant

filed its own Notice of Removal.　No other Defendant filed a Notice of Joinder or

Consent with the Court in compliance with Rule 11 of the Federal Rules or Local Rule

102 of this Court.  Accordingly, Removing Defendants failed to meet the requirements of the unanimity rule and remand is required.

a.      Removing Defendants filed with the Notice of Removal a number of unofficial, form "consent letters," addressed to counsel for Removing Defendants (and not to the Court) as alleged proof of consent/joinder.  The evidence in this case demonstrates that the "consent letters" were solicited and obtained by counsel for Removing Defendants prior to the "consenting Defendants" even being provided with a copy of the proposed Notice of Removal.  These letters fail to comply with 28 U.S.C. 1446(a), Rule 11 of the Federal Rules of Civil Procedure, Local Rule 102 of this Court or the *Standing Order Concerning Removal* filed by the Court in this case on September 11, 2007 and a long line of cases holding that communications between counsel do not satisfy the unanimity rule.  *See e.g., Anne Arundel County v. United Pacific Life Ins. Co*, 905 F.Supp. 277 (D.Md. 1995).

b.      Moreover, the "consent letter" signed by Patrick Hurley is invalid because corporations may not appear *pro se* and Patrick Hurley is neither a lawyer nor admitted to practice before the Court.  *See, e.g., Rule 101 of the Local Rules of the U.S. Dist. Ct. for the Dist. Of Md.*

c.      Furthermore, Removing Defendants failed to obtain the consent of Defendant J.E. Hurley Machine and Boiler Works, Inc. ("J.E. Hurley"), and failed to allege or demonstrate in the Notice of Removal that J.E. Hurley's consent was excused. *See e.g., Egle v. Erie Ins. Group*, 981 F.Supp. 932 (D.Md. 1997).

3.      The Notice of Removal also fails substantively to support removal of this action based upon federal question jurisdiction under the "federal enclave" doctrine.

a.     It is undisputed that the Shiffletts' Complaint does not facially assert a claim arising under federal law. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 61 (1987).

b.     Contrary to the assertion of Removing Defendants, Mr. Shifflett's Answer to Master Interrogatory No. 88 does *not* assert exposure to asbestos at the three alleged federal enclaves, but instead, simply lists fifty two (52) jobsites at which Mr. Shifflett "may" have worked. *Shifflett Answer to Master Interrogatory No. 88.*

c.     To the extent that there is any argument by Removing Defendants regarding the proper interpretation of Mr. Shifflett's Answer to Interrogatory No. 88, Mr. Shifflett has submitted with this Motion an Affidavit that eliminates any claim that he has asserted exposure to asbestos at the three alleged federal enclaves.

d.     Moreover, even assuming Mr. Shifflett's Answer to Interrogatory No. 88 asserted exposure to asbestos at the three alleged federal enclaves, the Answer would still not support invoking federal jurisdiction because the forty nine (49) other jobsites identified in the Answer (which Removing Defendants apparently concede would be governed by state law) preclude a finding that resolution of any federal law claim is necessary to the resolution of Mr. Shifflett's claims.  Since the jury could find for Mr. Shifflett solely upon the state law claims, remand is required. *See, e.g., Dixon v. Coburg Dairy*, 369 F.3d 811 (4th Cir. 2004).

4.     Because Removing Defendants are asserting that the Shiffletts are asserting claims under federal law despite the plain language of their Complaint, the Shiffletts have both submitted Affidavits with this Motion in which they expressly disclaim any claims arising from exposure to asbestos on any federal enclave or that

otherwise would give rise to federal jurisdiction. These disclaimers mandate remand. *See, e.g., Sheppard v. Northrop Grumman*, 2007 WL 1550992 (E.D.La. May 24, 2007).

5. The Notice of Removal further fails to demonstrate that any of the three alleged federal enclaves were federal enclaves when Mr. Shifflett was present.

a. Under long-settled law, mere ownership of property by the federal government *does not* establish federal enclave status. *See, e.g., Pratt v. Kelly*, 585 F.2d 692 (4th Cir. 1978). To the contrary, federal enclave can only arise as a result of express relinquishment of sovereignty over a piece of property by the State government and acceptance of that grant of sovereignty by the federal government. Accordingly, whether a particular piece of property is a federal enclave can only be made after examination of the deed or other documents granting title to the federal government, and the statutes or other official documents granting jurisdiction by the state government and accepting jurisdiction by the federal government. The Notice of Removal fails to examine these fundamental issues and, instead, equates ownership with enclave status.

b. The Notice of Removal additionally fails to demonstrate that Mr. Shifflett was present at any of the three alleged federal enclaves at a time that they were, in fact, federal enclaves.

i. Regarding Walter Reed, Mr. Shifflett has clarified in his affidavit (a) that he was actually at the Naval Medical Center in Bethesda, Maryland, and not at any of the three Walter Reed facilities in the Washington, D.C. area; and (b) that he is unaware of any exposure to asbestos at that facility.

ii. Regarding the National Institutes of Health ("NIH"), the Notice of Removal concedes that the earliest any portion of NIH became a federal

enclave is 1953. *Notice of Removal at p. 8-9, citing Evans v. Cornman*, 398 U.S. 419 (1970). The Notice fails to allege or show that Mr. Shifflett was at NIH *after* 1953, however. Since Mr. Shifflett's working career began in 1950, the Notice is facially insufficient.

        iii.    Regarding the Indian Head facility (indeed regarding all three facilities), the Notice of Removal simply asserts that the federal government owns and operates the facility. *Notice of Removal at p. 2-4.* The Fourth Circuit has directly held that federal ownership of property is insufficient to demonstrate enclave status. *Pratt v. Kelly, supra.* Accordingly, the Notice fails to even facially support the allegation that the Indian Head facility was a federal enclave when Mr. Shifflett was present.

        c.    Finally, the Notice of Removal fails to show that federal law will be a substantial portion of the case, even if all of its allegations were accurate. At most, three (3) of fifty two (52) jobsites (5.76%) identified by Mr. Shifflett are alleged federal enclaves. Under these facts, there can be no reasonable dispute that the federal law aspects of this case are far from "substantial". Accordingly, remand is required.

        6.    In the alternative, to the extent that the Court has any hesitation regarding the propriety of remand of this matter, Plaintiffs request leave pursuant to Federal Rule 41(a)(2) to dismiss their claims without prejudice so that they may refile in state court. The Fourth Circuit has held that leave should be granted unless Defendants can demonstrate prejudice and that the fact that a subsequent lawsuit will be filed is *not* prejudice for these purposes. *See, e.g., Ellett Brothers v. United States Fidelity & Guaranty*, 275 F.2d. 384 (4th Cir. 2001).

**WHEREFORE**, Plaintiffs, Lewis and Maybrey Shifflett, request that the Court GRANT their Motion to Remand, and Remand this case to the Circuit Court for Baltimore City.  In the alternative, Plaintiffs request that the Court grant them leave to dismiss this matter, without prejudice.

Respectfully submitted,

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel
Federal Bar Number: 25015
The Ruckdeschel Law Firm, LLC
5126 Dorsey Hall Drive, Suite 201
Ellicott City, Maryland 21042
Telephone: 410.884.7825
Fascimile: 443.586.0430
ruck@rucklawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of October 2007, a copy of Plaintiffs' Motion for Remand and all attachments thereto were served upon all counsel of record in this matter via electronic submission on CM/ECF in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel

# Exhibit H

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANN HAUCK,

                    Plaintiff,

-vs-                                    Case No.  6:04-cv-1835-Orl-28DAB

BORG WARNER CORP., DAIMLER
CHRYSLER CORPORATION, DANA
CORPORATION, d/b/a Dana Racine
Corporation, f/k/a Spice Manufacturing
Corp., FORD MOTOR COMPANY,
GENERAL MOTORS CORPORATION,
GENUINE PARTS CO., GOODYEAR TIRE
AND RUBBER COMPANY, HONEYWELL
INTERNATIONAL, INC., f/k/a Allied-
Signal, Inc., BENDIX CORPORATION,
MACK TRUCKS, INC., MAREMONT
CORPORATION, NAVISTAR
INTERNATIONAL TRANSPORTATION
CORP., PNEUMO ABEX CORPORATION,
STEEL GRIP, INC., f/k/a Industrial
Gloves, Co., f/k/a Steel Grip Safety
Apparel Co., VELLUMOID, INC.,

                    Defendants.

_____

## ORDER

    This cause is before the Court on several pending motions following remand by the

Judicial Panel on Multidistrict Litigation.

### I.  Background

    This case has a somewhat complicated procedural history.  Plaintiff initially filed suit

alleging claims arising from her asbestos-related disease in the Florida state circuit court in

Dade County, Florida, in July 2004. (See Compl., Doc. 4).  By agreement of the parties after

the filing of a motion to transfer venue, the case was transferred to the Circuit Court, Eighteenth Judicial Circuit, in and for Brevard County, Florida. (See Agreed Order on Def.'s Mot. to Transfer Venue, entered in Case No. 04-16153 CA 42 in the Eleventh Judicial Circuit Court in and for Dade County, Florida, part of Composite Ex. E to Notice of Removal, see Doc. 24). The case was then removed to this Court on December 16, 2004. (Notice of Removal, Doc. 2). The jurisdiction of this Court was invoked based on diversity of citizenship. (See id. at 2).

Upon removal on December 16, 2004, several motions to dismiss that had been filed in the circuit court in Dade County were docketed in this court as pending. (See Docs. 8, 9, 11, 13, & 14). Although initially assigned to another judge, the case was reassigned to the undersigned district judge on January 5, 2005. (See Doc. 36). Upon receipt of the case and review of the file, and noting that no responses had apparently been filed to the docketed motions to dismiss, the Court granted the motions to dismiss (Docs. 8, 9, 11, 13, & 14) as unopposed. (Order, Doc. 42).

In January 2005, Plaintiff moved to remand the case to state court (Doc. 63) and moved to vacate the Order granting the five motions to dismiss (Doc. 65). This Court held a hearing on these motions on February 17, 2005. (See Mins. of 02/27/05 Hr'g, Doc. 100). However, in March 2005, before this Court had ruled on the motion for remand (Doc. 63) or the motion to vacate (Doc. 65), the Judicial Panel on Multidistrict Litigation ("the MDL panel") entered a Conditional Transfer Order covering this case. (See Doc. 107). The MDL panel entered a Transfer Order in June 2005, transferring this case to the Eastern District of Pennsylvania for consolidated pretrial proceedings (Doc. 127). This Court denied all then-

-2-

pending motions – including the motion to remand and the motion to vacate – as moot, "to be refiled, if appropriate, in the Eastern District of Pennsylvania" (Doc. 129, filed July 5, 2005).

On August 14, 2006, the MDL panel remanded all but the punitive and exemplary damages claims to this Court. (Doc. 143). On August 18, 2006, Plaintiff filed a "Notice of Remand from MDL, Notification of Outstanding Motions, Motion for Immediate Status Conference, and Conditional Motion for Expedited Trial" (Doc. 144) noting in part that on July 25, 2005 – shortly after the case had been transferred – she had renewed her motion for remand and her motion to vacate dismissal in the transferee court in the Eastern District of Pennsylvania, but the transferee court did not rule on those motions prior to the MDL panel's remand of her claims to this Court. (Doc. 144 at 2-3). This Court held a status conference on September 1, 2006, during which counsel again made argument regarding the motion for remand and the motion to vacate. (See Mins. of 09/01/2006 Status Conference, Doc. 162). The Court took these motions[1] under advisement and now issues rulings thereon.

## II. Discussion

### A. Motion to Vacate (Doc. 65)

When the case was removed from state court, several motions to dismiss that had

---

[1]As noted in Plaintiff's Notice of Remand (Doc. 144), the motions have not been refiled here; instead, Plaintiff relies on the motions (Docs. 63 & 65) already on file with this Court. As noted in the text, this Court previously denied these motions with leave to refile them (see Doc. 129); the original motions will now be reinstated and then ruled upon.

been filed in the state court in Miami were docketed in this Court as pending. These were

motions filed by the following Defendants: Daimler Chrysler Corporation (Doc. 8);

Bridgestone/Firestone North American Tire, LLC, Genuine Parts Company, Mack Trucks,

Inc., and International Truck & Engine Company (Doc. 9); Honeywell International, Inc. (Doc.

11); Ford Motor Company (Doc. 13); and General Motors Corporation (Doc. 14). Three

weeks later, when the case was reassigned to the undersigned district judge, these motions

were granted as unopposed[2] because no opposition to the motions had apparently been

made. (Order, Doc. 42).

    Plaintiff then filed a motion to vacate (Doc. 65) the Order (Doc. 42) granting the

motions to dismiss as unopposed. As outlined in the Background section above, when the

case was transferred to the Eastern District of Pennsylvania the motion was denied by this

Court, subject to being refiled in the Eastern District of Pennsylvania. The motion is now

again before this Court for ruling.

    In her motion to vacate, Plaintiff makes several arguments in support of her

contention that this Court erred in granting the motions to dismiss as unopposed. First,

Plaintiff asserts that an Omnibus Case Management Order in the circuit court in Dade

County effectively ruled on the motions while they were pending in that Court, before venue

was transferred to Brevard County. Second, Plaintiff contends that even if that Omnibus

Case Management Order had not disposed of the motions, Plaintiff had noticed an "all open

---

    [2]One of the motions (Doc. 9) was denied as moot as to Defendant
Bridgestone/Firestone North America Tire, LLC because Plaintiff had voluntarily dismissed
that defendant prior to removal. (See Order, Doc. 42; see also Notice of Voluntary
Dismissal, Doc. 19).

motions hearing" in Brevard County and had thereby noted her opposition to the motions prior to the time that this matter was removed to this Court; Plaintiff points out that written oppositions are not required in state court. Third, Plaintiff notes that simultaneously with her motion to vacate she filed written responses to the motions to dismiss, and she argues that the delay in submitting a response was minimal and due to a good-faith misunderstanding by her counsel. Finally, Plaintiff contends that her motion for remand of the matter to state court based on defective removal should be resolved prior to the motions to dismiss.

The parties have treated the motion to vacate as one brought under Federal Rule of Civil Procedure 60(b). However, that rule applies only to final orders and judgments. The Order granting the motions to dismiss was not a final order. It merely granted the motions of several of the defendants in this case; no judgment was entered pursuant to that Order. Because the Order did not dispose of all parties and claims in this case, it "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed. R. Civ. P. 54(b); see also Burke v. Warren County Sheriff's Dep't, 916 F. Supp. 181, 183 (N.D.N.Y. 1996) ("Plaintiffs ostensibly bring this motion under Federal Rule of Civil Procedure 60(b). The court observes, however, that this motion is not properly brought under that rule. . . . Interlocutory orders and judgments are not subject to the strictures of Rule 60(b), but remain within 'the complete power of the court rendering them to afford such relief from them as justice requires.'") (quoting Fed. R. Civ. P. 60(b) 1946 amendment advisory committee's note); Gagne v. Carl Bauer Schraubenfabrick, GmbH, 595 F. Supp. 1081, 1083-84 (D. Me. 1984) ("[T]he standards of Rule 60(b) shall not be applied to this motion because the order granting summary judgment

[which adjudicated the rights of fewer than all parties] . . . is not a final judgment within the meaning of the Federal Rules of Civil Procedure. . . . The order is merely interlocutory and not a final judgment.  As such, its revision is not subject to the restrictive provisions of Rule 60(b). . . .  The Court retains plenary power to afford such relief as justice requires.") (footnote omitted); Watwood v. Barber, 70 F.R.D. 1, 8 (N.D. Ga. 1976) ("A decision whether to afford relief from an interlocutory order, upon motions for reconsideration filed immediately after the issuance of that order, is 'left subject to the complete power of the court . . . to afford such relief . . . as justice requires.'") (quoting Fed. R. Civ. P. 60(b) advisory committee's note) (alteration in original); cf. Doctor v. Seaboard Coast Line R.R. Co., 540 F.2d 699, 712 (4th Cir. 1976) (concluding that dismissal of complaint against labor union defendants was not subject to appeal but instead was, under Rule 54(b), "'subject to revision at any time before the entry of judgment adjudicating all the claims'") (quoting Fed. R. Civ. P. 54(b)).

The Court finds that justice requires that the Order granting the motions to dismiss be vacated.  At the time the motions were granted as unopposed, this Court was not aware of the existence of, or of the parties' disagreement regarding the effect of, Omnibus Orders entered in the state circuit court in Dade County.  However, it is clear from the record that the parties were in disagreement about the effect of those Orders.  (See, e.g., Def. Honeywell Int'l Inc.'s Resp. to Pl.'s Mot. to Vacate, Doc. 73 at 2 n.1 ("The effect of the Omnibus Order in State Court was disputed, and the parties had differing interpretations of the mechanics of the Order . . . .")).  It is also clear from the record that prior to the removal of the case to this Court, Plaintiff had expressed her belief that an Omnibus Order had

disposed of the motions to dismiss. (See Pl.'s Conditional Notice for Trial filed in state court, Ex. B to Doc. 72, at 2 & n.1 (stating that "Plaintiff[] believe[s] that the Motions filed by the Defendants were automatically addressed prior to transfer from Dade County by operation of the Omnibus Order and that, accordingly, the case is at issue" and noting that "[i]n the abundance of caution, Plaintiff has set an 'all open Motions' hearing for January 26, 2005 to address any Motions that the Defendants assert are currently pending and that prevent the case from being at issue"). This Court was not aware at the time of granting the motions to dismiss that Plaintiff had set an "all motions" hearing in Brevard County prior to the removal of this case; the Court has now located that notice in the record. (Notice of Hr'g, filed in Case No. 2004 CA 13357 in the Eighteenth Judicial Circuit Court in and for Brevard County, Florida, part of Composite Ex. E to Notice of Removal, see Doc. 24).

Furthermore, after the entry of this Court's Order granting the motions to dismiss of several of the Defendants as unopposed, and after Plaintiff had moved to vacate that Order, two other Defendants – Pneumo Abex Corporation ("Pneumo Abex") and Borg-Warner Corporation ("Borg-Warner") – moved to be dismissed nunc pro tunc. (Docs. 93 & 96, filed February 11 and February 14, 2005, respectively). The motions by Pneumo Abex and Borg-Warner were based on these defendants' adoption in Dade County circuit court of their "master" motions to dismiss – a practice which had been provided for by a Dade County circuit court Omnibus Order. (See Def. Pneumo Abex Corp's. Notice of Adoption of Master Adoption of Mots. to Dismiss, Mots. to Strike and Other Defense Motions; Burns Int'l Servs.'[3]

---

[3]Burns International Services was apparently formerly known as Borg-Warner Corporation.

Notice of Adoption of Its Master Answer, Affirmative Defenses, Motion to Dismiss and/or

Strike All Pls.' Master Married/Single/Wrongful Death Complaints, filed in August 2004 in

Case No. 04-16153 CA 42 in the Eleventh Judicial Circuit Court in and for Dade County,

Florida, part of Composite Ex. E to Notice of Removal, see Doc. 24). In their nunc pro tunc

motions, Pneumo Abex and Borg-Warner sought dismissal "on the same grounds as the

other defendants were dismissed by Order dated January 6, 2005," (Doc. 93 at 1) – that is,

a lack of opposition thereto by Plaintiff – and these Defendants noted that "[t]he failure to

dismiss [them] is due to apparent inadvertence rather than based upon any distinction

between the defendants," (id.; see also Doc. 96 at 2 ("It appears this Honorable Court

inadvertently failed to dismiss Borg Warner Corporation on January 6, 2005.")). These

"adopted master motions" by Pneumo Abex and Borg-Warner were not docketed as pending

motions in this Court when the case was removed.  The two motions for nunc pro tunc

dismissal (Docs. 93 & 96) were denied as moot along with all other then-pending motions

when the case was transferred by the MDL Panel. (Order, Doc. 129).

In sum, when the motions to dismiss were granted as unopposed this Court was not

aware of Omnibus Orders entered in Dade County (or any potential effect thereof), nor was

it aware of Omnibus motions filed by at least two of the Defendants. The Court also was not

aware that Plaintiff had previously set an "all pending motions" hearing in Brevard County.

Although Plaintiff should have filed some sort of opposition to the motions in this Court once

the case was removed,[4] had the Court known of the setting of the motions hearing and the

---

[4]Local Rule 4.02(c): "When a case is removed to this Court with pending motions on which briefs or legal memoranda have not been submitted, the moving party shall file and

dispute regarding the effect of the Omnibus Order the Court likely would have given Plaintiff

an opportunity to file responses to the motions rather than granting them as unopposed.

Additionally, similarly-situated Defendants have been treated differently due to the confusing

state of the record. Plaintiff promptly informed the Court of the prior activity in the case and

moved to vacate the Order. The convoluted path that this case has taken to this Court, as

well as the unusual omnibus proceedings in the Dade County court – with which this Court

was previously unfamiliar – have led to rulings which should, and shall, be vacated in the

interests of justice.

### B. Motion for Remand (Doc. 63)

This case was removed on the basis of diversity of citizenship. See 28 U.S.C. §§

1332, 1441. It is undisputed that the parties to this case are diverse and that the requisite

amount in controversy for diversity jurisdiction has been satisfied. However, one of the

Defendants – Steel Grip, Inc. ("Steel Grip") – did not consent to removal.

The Notice of Removal (Doc. 2) was filed on December 16, 2004 by Defendant

Genuine Parts Company ("Genuine Parts"). In that Notice, Genuine Parts noted that all

Defendants except Steel Grip consented to removal. However, Genuine Parts also asserted

that Steel Grip had been "fraudulently joined in this action for the purpose of preventing the

Defendants from removing this action" and that therefore Steel Grip's consent was not

required for removal. (Doc. 2 at 6). Plaintiff, on the other hand, contends that Steel Grip's

---

serve a supporting brief within ten (10) days after the removal in accordance with Rule
3.01(a) of these rules, and the party or parties opposing the motion shall then comply with
Rule 3.01(b) of these rules."

consent was necessary in order for removal to be proper and that this case should be remanded to state court. In her motion for remand (Doc. 63), Plaintiff raises several arguments, including the failure of the Defendants to establish – as is their burden – that Steel Grip was "fraudulently joined." This argument is dispositive and persuasive, and Plaintiff's claims shall be remanded to state court.

"The removing party must show . . . removal is proper. An action removed to Federal court may be remanded to state court pursuant to Section 1447(c) [of Title 28] on the basis of any defect in the removal procedure. When confronted with a motion to remand, the removing party has the burden of establishing the propriety of removal." Telesis Mergers & Acquisitions, Inc. v. Atlis Fed. Servs., Inc., 918 F. Supp. 823, 828 (D.N.J. 1996) (citations and footnote omitted). Moreover, removal statutes – whether jurisdictional or procedural – are strictly construed, with doubts resolved in favor of remand to the state court. See, e.g., Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 32 (2002) ("The right of removal is entirely a creature of statute and a suit commenced in state court must remain there until cause is shown for its transfer under some act of Congress. These statutory procedures for removal are to be strictly construed.") (citations and internal marks omitted); Payne v. Overhead Door Corp., 172 F. Supp. 2d 475, 477 (S.D.N.Y. 2001) ("[E]ven though a defect in removal procedure is not jurisdictional, the removal statute, especially with reference to diversity jurisdiction cases, must be strictly construed.").

It is well settled that in a multiple-defendant case, in order for removal to be proper all defendants generally must consent. See, e.g., Russell Corp. v. Am. Home Assurance Co., 264 F.3d 1040, 1044 (11th Cir. 2001). However, the consent of fraudulently joined or

nominal defendants is not required. See, e.g., Emrich v. Touche Ross & Co., 846 F.2d 1190, 1193 n.1 (9th Cir. 1988) ("Ordinarily, under 28 U.S.C. § 1446(a), all defendants in a state action must join in the petition for removal, except for nominal, unknown, or fraudulently joined parties."); Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1009 n.2 (3d Cir. 1987).

"The burden of establishing fraudulent joinder is a heavy one. Where a plaintiff states even a colorable claim against the [allegedly fraudulently-joined] defendant, joinder is proper and the case should be remanded to state court. Pacheco De Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998). "A claim of fraudulent joinder must be supported by clear and convincing evidence." Clingan v. Celtic Life Ins. Co., 244 F. Supp. 2d 1298, 1301 (M.D. Ala. 2003).

"Fraudulent joinder" is generally invoked in diversity cases where one of the named defendants is not diverse or is an in-state defendant[5]; the diverse or out-of-state defendant(s) in such cases then contend that the plaintiff has sued the non-diverse or in-state defendant in the state court case in order to prevent removal to federal court. See, e.g., Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998) ("Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity."). However, in this case, the consenting Defendants assert that Steel Grip – a diverse defendant – has been improperly joined in order for removal to be avoided.

---

[5]A case invoking the federal court's diversity jurisdiction is "removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

Plaintiff contends that the doctrine of fraudulent joinder is not applicable where the parties are diverse, as in this case. Some courts have, however, applied a fraudulent joinder analysis – or the somewhat analogous "nominal party" exception to the unanimity requirement – to federal question cases or cases where diversity is not an issue. See, e.g., Farias v. Bexar County Bd. of Trs., 925 F.2d 866, 871-72 (5th Cir. 1991) ("Since equity is the major concern in the nominal party inquiry, no limitation should be placed on the type of jurisdiction used to remove the action from state to federal court. Similarly, the test for determining a nominal party . . . applies equally whether diversity or federal question jurisdiction is the mode of removal."); In re Pharm. Indus. Average Wholesale Price Litig., 431 F. Supp. 2d 109, 118 (D. Mass. 2006) (noting that "[a]s many courts have held, the rationale for the doctrine of fraudulent joinder applies with equal force in the context of removal based on federal question jurisdiction," and applying fraudulent joinder analysis to federal question case) ; cf. Hernandez v. Seminole County, 334 F.3d 1233 (11th Cir. 2003) (describing, but finding unreviewable, decision of this Court to remand federal question case to state court based on conclusion that non-consenting defendant was not a mere nominal party).

Nevertheless, an allegation of fraudulent joinder of a non-diverse or in-state defendant in a case removed on the basis of diversity, on the one hand, is different in character than an allegation of fraudulent joinder of a diverse defendant or in a federal question case on the other. In the former, the plaintiff's very act of joining the non-diverse or in-state defendant creates an impediment to removal under the plain language of the removal statutes. However, where a diverse or out-of-state defendant is allegedly

fraudulently joined (or where fraudulent joinder is alleged in a federal question case), the

impediment to proper removal is not the plaintiff's joinder of that defendant but rather that

defendant's lack of consent – a circumstance which is generally beyond the plaintiff's

control.[6] Thus, in such cases, an allegation of collusion between the plaintiff and the non-

consenting defendant is typically made. See, e.g., *In re* Pharm. Indus. Average Wholesale

Price Litig., 431 F. Supp. 2d at 119.

In the instant case, there are vague allegations of collusion between Plaintiff and

Steel Grip but no evidence thereof. On December 27, 2005, Steel Grip filed a "Response"

to the Notice of Removal. (Doc. 30). In that Response, Steel Grip stated that it "has

legitimate and valid reasons for not consenting to the removal of [asbestos cases] to Federal

Court." (Doc. 30 at 2). Steel Grip stated that it prefers to litigate its cases in state court and

that it "seeks to resolve the large amounts of pending asbestos cases against it as quickly

and efficiently as possible." (Id. at 3). A few weeks later,[7] Plaintiff filed her motion for

remand (Doc. 63).

The consenting Defendants assert that Plaintiff's law firm has brought numerous

---

[6]See generally Simpson v. Union Pac. R.R. Co., 282 F. Supp. 2d 1151, 1156 (N.D. Cal. 2003) ("Here the only obstacle to removal – the consent of all defendants – does not lie within the control of the plaintiffs and therefore is not susceptible to manipulation through improper allegations in the complaint. Absent collusion, plaintiffs could not have known in advance that the School District would refuse to join in removal, and so could not have affected the forum by advancing fraudulent claims against that particular defendant.")

[7]The docket reflects that Plaintiff initially electronically filed a motion for remand on January 18, 2005; that motion was terminated due to a lack of signature. (See docket entry for Doc. 60). The motion was then refiled on January 19, 2005 (Doc. 63) with the signature problem corrected. The Court rejects the consenting Defendants' assertions that the motion for remand was untimely filed.

asbestos cases and that it only names Steel Grip in cases where no non-diverse or in-state

defendant is named – suggesting that Plaintiff does not sue Steel Grip where the case is not

removable due to lack of diversity or the presence of an in-state defendant (and therefore

Steel Grip's lack of consent is unnecessary to defeat removal).  However, the evidence

presented on this point is far from compelling and reveals that sometimes Plaintiff's firm

sues Steel Grip, and sometimes it does not.  The Court has been unable to draw the

removing Defendants' suggested inference from the chart provided. (See Chart, "Steel Grip

vs. Florida Defendant in Asbestos Cases," Ex. A to Doc. 80).  Again, there is no direct

evidence of a collusive agreement between Plaintiff and Steel Grip, and no evidence to

counter Steel Grip's assertions that it has its own reasons – which it is entitled to have – for

not wanting the case removed from state court.

     Not only have the consenting Defendants not presented clear and convincing

evidence of collusion, but they also have failed to otherwise establish fraudulent joinder of

Steel Grip.  "Joinder has been deemed fraudulent . . . when there is no possibility that the

plaintiff can prove a cause of action against the [nonconsenting] defendant." Triggs v. John

Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998). "When considering a motion for

remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining

whether it is an arguable one under state law. 'If there is even a possibility that a state court

would find that the complaint states a cause of action against [the nonconsenting

defendant], the federal court must find that joinder was proper and remand the case to state

court.'" Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997) (quoting Coker v. Amoco

Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983)). "[T]he district court must evaluate the

factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff. The federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties." Id. (citations omitted).

Plaintiff's claims are based on asbestos exposure beginning in her childhood at an automotive garage operated by her father. Steel Grip is a maker of allegedly asbestos-containing gloves used in welding. The consenting Defendants sought to remove this case to federal court after depositions of Plaintiff, her brother, and her mother had been taken and none of those deponents recalled welding occurring at the garage.

The consenting Defendants have failed to persuade this Court that Steel Grip has been fraudulently joined. As the Eleventh Circuit has instructed:

> For a plaintiff to present an arguable claim against an [allegedly fraudulently joined] defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that . . . defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law *might* impose liability on the facts involved." Because the procedures are similar while the substantive standards are very different, district courts must exercise extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them.
>
> In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims. Although we have said that district courts may look beyond the face of the

> complaint, we emphasize that the district court is to stop short
> of adjudicating the merits of cases that do not appear readily to
> be frivolous or fraudulent.

Crowe, 133 F.3d at 1541-42 (quoting B. Inc., v. Miller Brewing Co., 663 F.2d 545, 549 (5th

Cir. Unit A 1981)) (emphasis in original). The consenting Defendants in this case essentially

seek for this Court to undertake a summary judgment inquiry. However, as stated in Crowe,

summary judgment is not the appropriate standard here, and the "court's authority to look

into the ultimate merit of the plaintiff's claims must be limited to checking for obviously

fraudulent or frivolous claims." Id. Plaintiff's claims against Steel Grip are not "obviously

fraudulent or frivolous."

Here, the record does not reflect a Plaintiff frivolously asserting far-fetched claims

against a company from whom she could not conceivably recover; instead, it reflects

Defendants who, disappointed at that company's refusal to consent, sought removal after

discovery revealed potential problems with Plaintiff's proof against that company. However,

an ultimate failure of proof is not the equivalent of a failure to state a cause of action. See

Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998) ("The fact that the

plaintiffs may not ultimately prevail against the individual defendants because of an

insufficient causal link between the defendants' actions and the plaintiffs' injuries does not

mean that the plaintiffs have not stated a cause of action for purposes of the fraudulent

joinder analysis.").

In sum, the consenting Defendants have failed to meet their burden of establishing

by clear and convincing evidence that Steel Grip was fraudulently joined. Therefore, the

failure of Steel Grip to consent to removal renders the removal procedurally improper.[8]

Plaintiff's claims shall be remanded to state court.

_____

[8]Although the failure of the consenting Defendants to establish fraudulent joinder is dispositive of the motion to remand, one other issue raised by Plaintiff bears mentioning. Plaintiff asserts that the Notice of Removal was untimely filed because it was filed more than thirty days after service of the initial pleading, as required by 28 U.S.C. § 1446(b). The consenting Defendants contend, however, that the Notice was timely under the second paragraph of 28 U.S.C. § 1446(b), which provides that "[i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may be first be ascertained that the case is one which is or has become removable . . . ." (emphasis added). The removing Defendants contend that "the case was not removable when it was initially filed because Defendant Steel Grip refused to consent to removal," (Notice of Removal, Doc. 2 at 6) and that the Notice was filed within thirty days of receipt of "other paper" indicating that Plaintiff would not be able to establish her claims against Steel Grip.

Plaintiff appears to be correct that the Notice was untimely.  This case, as stated by the initial pleading, was "removable" because it is a case described in 28 U.S.C. § 1441 – entitled "Actions removable generally"; it was brought in state court and of which this district court had original jurisdiction, see 28 U.S.C. § 1441(a), and because none of the defendants is a Florida citizen, 28 U.S.C. § 1441(b).  Thus, the portion of Section 1446(b) upon which the Defendants rely is not applicable.

The fact that not all of the defendants consented to removal does not affect the matter's "removability" for the purposes of complying with 28 U.S.C. § 1446's procedural requirements. Taken to its logical extension, a finding that the consent of defendants affects "removability" would mean that a defendant's change of mind about whether to consent would restart the 30-day clock. Failure of all defendants to consent is a waivable procedural defect rather than a "removability" problem. See generally Hampton Paint Mfg. Co. v. Union Oil Co. of Cal., Civ. A. No. 91-104-NN, 1991 WL 274441, at *4 (E.D. Va. Dec. 16, 1991) ("[A] distinction must be made between the prerequisites identifying a removable case and the procedures that must be followed in removing such a case to federal court. The instant case was removable under 28 U.S.C. § 1441 at its inception, as it fell within the diversity jurisdiction of the federal courts and did not fall into specific, non-procedural exceptions provided for by Congress.  In order to take advantage of the opportunity to remove, certain procedural requirements had to be met:  a notice of removal had to be filed within the thirty-day period provided by the statute and all defendants had to join in that notice.") (citations omitted). But see Parker v. County of Oxford, 224 F. Supp. 2d 292, 294 (D. Me. 2002) (concluding that case was not "removable" initially where some defendants did not consent to removal and that the case "did not become removable until the nonconsenting Defendant was dismissed from the case").

III.  Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.  The Order (Doc. 129) denying as moot the Motion for Remand (Doc. 63), denying as moot the Motion to Vacate (Doc. 65), and denying as moot the motions for nunc pro tunc dismissal (Doc. 93 & 96) is **VACATED** and those motions (Docs. 63, 65, 93, & 96) are **REINSTATED**.

2.  The Motion to Vacate (Doc. 65) is **GRANTED**, and the Order (Doc. 42) granting the motions to dismiss (Docs. 8, 9, 11, 13, & 14) as unopposed is hereby **VACATED** insofar as it pertains to Defendants Daimler Chrysler Corporation; Genuine Parts Company; Mack Trucks, Inc.; International Truck & Engine Company; Honeywell International, Inc.; Ford Motor Company; and General Motors Company.  The motions to dismiss (Docs. 8, 9, 11, 13, & 14) are hereby **REINSTATED**, except that the motion (Doc. 9) filed by Defendants Bridgestone/Firestone North American Tire, LLC, Genuine Parts Company, Mack Trucks, Inc., and International Truck & Engine Company remains **DENIED as moot** as to Defendant Bridgestone/Firestone North American Tire, LLC in light of the Notice of Voluntary Dismissal without Prejudice of Defendant Bridgestone/Firestone North American Tire, LLC filed by Plaintiff (Doc. 19).  (See also Order, Doc. 42 at 2-3).

3.  The Motion to Adopt (Doc. 150) is **GRANTED**.

4.  The Motion to Expedite (Doc. 144) is **DENIED as moot**.

5.  The Motion to Strike (Doc. 154) is **DENIED**.

6.  The Motion for Remand (Doc. 63) is **GRANTED**.  Plaintiff's claims, with the

exception of the punitive and exemplary damages claims which remain pending in the Easter District of Pennsylvania, are hereby **REMANDED** to the Circuit Court, Eighteenth Judicial Circuit, in and for Brevard County, Florida, Case No. 2004-CA-013357, *Ann Hauck v. Borg-Warner Corporation et al.* The pending motion for summary judgment (Doc. 159) and all other pending motions, including the motions to dismiss (Docs. 8, 9, 11, 13, 14, 93, & 96) are **DENIED without prejudice** to resubmission in the state court.

7.   This case shall be administratively closed while the punitive and exemplary damages claims remain in the district court for the Eastern District of Pennsylvania pursuant to transfer by the Judicial Panel on Multidistrict Litigation.

**DONE** and **ORDERED** in Orlando, Florida this 12th day of October, 2006.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party

# Appendix of Unpublished Decisions

**Appendix of Unpublished Decisions**

1.  Galassi v. A.W. Chesterton, et. al., Case No. 3:05-cv-02017-WHA (N.D. Cal. June 13, 2005)

2.  Jenkins v. Board of Education of City of Chicago, 2004 WL 783355 (N.D. Ill. Jan. 16, 2004)

3.  Mangialardi v. Harold's Auto Parts, Case No. 2:02CV121-B-B (N.D. Miss. Nov. 18, 2002)

4.  Overly v. Raybestos-Manhattan, 1996 WL 532150 (N.D. Cal. Sept. 9, 1996)

5.  Sheppard v. Northrop Grumman, 2007 WL 1550992 (E.D.La. May 24, 2007)

6.  Westbrook v. Asbestos Defendants, 2001 WL 902642 (N.D.Cal. July 31, 2001)

Case MDL No. 875   Document 5232   Filed 10/30/07   Page 92 of 118

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PETER GALASSI and LOUISE L. GALASSI,          No. C 05-02017 WHA

    Plaintiffs,

  v.                                          **ORDER REMANDING CASE**
**AND VACATING HEARING**
A. W. CHESTERTON CO. *et al.*,

    Defendants.

_____/

## INTRODUCTION

In this personal-injury case, the Court finds that there was no basis for removal under either 28 U.S.C. 1441(b) or 1442(a)(1). Moreover, the removal was procedurally defective. Accordingly, this order **GRANTS** plaintiff's motion to remand the action.

## STATEMENT

On November 8, 2004, plaintiff Peter Galassi (along with his wife) filed a complaint in state court alleging among other things, that he had been exposed to asbestos in products made by numerous defendants while working at Naval shipyards (*see* Compl. Exh. A). Plaintiffs expressly disclaimed "any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave" as well as "any cause of action or recovery for any injuries resulting from exposure to asbestos dust caused by any acts or omissions of a party committed at the direction of an officer of the United States Government" (Compl. ¶ 3). Galassi suffers from mesothelioma (a fatal lung cancer) and his treating physician has expressed doubt that he will survive beyond the next six months (Valieres Decl. ¶ 14). Pursuant to a state court procedure for expediting such cases, a trial date was set for the week of June 13, 2005.

1   California Civil Procedure Code § 36.  Plaintiffs' motion for remand was briefed on an

2   shortened schedule in light of this upcoming trial date.

3        On May 16, 2005, defendant Warren Pumps, Inc. removed the action to this Court,

4   acknowledging that there was no basis for removal on the face of plaintiffs' complaint (Notice

5   of Removal ¶ 3–4).  Nonetheless, Warren Pumps alleged that removal was timely pursuant to 28

6   U.S.C. 1446(b), which provides for removal "within thirty days after receipt by the defendant,

7   through service or otherwise, of a copy of an amended pleading, motion, order or other paper

8   from which it may first be ascertained that the case is one which is or has become removable."

9        The "other paper" received was a set of discovery requests, served on April 12, 2005,

10  that allegedly raised a federal question (Notice of Removal ¶ 6).  Specifically, Warren Pumps

11  objects to plaintiffs' requests for production Nos. 3 ("all documents pertaining to your

12  manufacture of asbestos-containing products"), 13 ("any document that relates to the hazards of

13  your asbestos-containing product(s)"), and 18 ("any documents relating to your warnings

14  between 1930 and the present").  It argues that these requests were overly broad and sought

15  classified information related to matters of national defense, such that only a federal court can

16  decide whether such documents must be produced (*id.* ¶¶ 8, 12).  In addition, Warren Pumps

17  argues that removal is otherwise proper under the federal officer removal statute because it was

18  obligated to manufacture pumps according to specifications set forth by the United States Navy

19  or agents thereof (*id.* ¶¶ 23–28).

20       On May 24, 2005, defendant IMO Industries, Inc. filed a joinder in the notice of

21  removal.  This joinder was subsequently withdrawn on June 2, 2005.  It is the Court's

22  understanding that no other defendants have joined in the removal.

**ANALYSIS**

**1.    28 U.S.C. 1441(b).**

25       Removal under 28 U.S.C. 1441(b) is permitted for actions involving a federal question

26  over which the district court would have had original jurisdiction pursuant to 28 U.S.C. 1331.

27  The removing party always bears the burden of establishing removal is proper.  *Emrich v.*

28  *Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1990).  The "well-pleaded complaint rule"

United States District Court
For the Northern District of California

2

provides that federal jurisdiction only exists when a federal question is presented on the face of

plaintiff's properly pleaded complaint, unaided by the answer or by the petition for removal.

*Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 113 (1936)(further noting that the federal

issue must not be "merely a possible or conjectural one"). Similarly, where removal is based on

a federal question ascertainable for the first time in an amended pleading, motion, order or other

paper, the federal question must appear on the face of that document. *Roskind v. Morgan*

*Stanley Dean Witter & Co.*, 165 F.Supp.2d 1059, 1065 (N.D. Cal. 2001). A federal defense,

even if anticipated, is not part of a plaintiff's cause of action. *Rivet v. Regions Bank*, 522 U.S.

470, 475 (1998). This rule thus enables the plaintiff, as "master of the complaint" to have his

action heard in state court "by eschewing claims based on federal law." *Caterpillar Inc. v.*

*Williams*, 482 U.S. 385, 399 (1987).

Here, Warren Pumps has openly conceded that there was no federal question presented

on the face of the complaint. Plaintiff correctly argues that while discovery *responses* could

qualify as "other papers" that trigger removal under 28 U.S.C. 1446(b), discovery requests

cannot. By its very nature, a request for documents *seeks*, rather than *provides*, information.

Regardless, no federal question appears on the face of the challenged discovery request.

Even accepting *arguendo* that some responsive documents would be privileged as a

matter of national security, that plaintiffs' discovery requests were too broad is an objection that

can be adequately addressed by the state court. It does not raise even a federal *defense* to

plaintiffs' causes of action. In any event, the privilege to protect military and state secrets by

blocking discovery that would adversely affect national security "belongs to the Government

and must be asserted by it; it can neither be claimed nor waived by a private party," such as

Warren Pumps. *United States v. Reynolds*, 345 U.S. 1, 7 (1953). Moreover, Warren Pumps has

not asserted that the Department of Defense did object to this discovery, merely that it might.

Plaintiffs further argue that the removal was procedurally defective. This order agrees.

Where fewer than all the defendants have joined in a removal action, the removing party has the

burden "to explain affirmatively the absence of any co-defendants in the notice for removal."

*Prize Frize, Inc. v. Matrix, Inc.*, 167 F.3d 1261, 1266 (9th Cir. 1999). Here, the record suggests

United States District Court

For the Northern District of California

3

1    that *no* co-defendants joined in the removal, with the exception of IMO Industries, which

2    subsequently withdrew its joinder. The absence of the other defendants was not explained in

3    the notice for removal. Moreover, IMO Industries' withdrawal also prevents Warren Pumps

4    from curing this defect within the thirty-day statutory period permitted for joinder. *Ibid.* For

5    numerous reasons, removal under 28 U.S.C. 1441 was improper.

6            **2.     28 U.S.C. 1442(a)(1).**

7            In the alternative, Warren Pumps argues that removal was proper under 28 U.S.C.

8    1446(a)(1), which provides that an action may be removed by federal officers acting under color

9    of such office or any person acting under direction of such officer. Under this section, removal

10   solely on the basis of a federal defense is allowed and co-defendants need not be joined.

11   *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). To qualify for removal, the defendant

12   must: (1) demonstrate that it acted under the direction of a federal officer, (2) raise a colorable

13   federal defense to the plaintiff's claims; and (3) demonstrate a causal nexus between the

14   plaintiff's claims and the acts the defendant performed under color of federal office. *Mesa v.*

15   *California*, 489 U.S. 121, 124–25, 134–35 (1989).

16           As a procedural matter, this order finds that removal on this basis is untimely. To the

17   extent that Warren Pumps could assert a federal defense on the basis that it was acting under

18   direction of the United States Navy, it would have been alerted to availability of that defense by

19   the complaint, which listed all the Navy ships on which plaintiff had worked. There is no

20   dispute that more than thirty days have elapsed since that filing.

21           Even if the Court were to reach the merits, Warren Pumps has failed to meet its burden

22   of demonstrating removal was proper. With regard to the first prong of the *Mesa* test, the notice

23   of removal fails to allege sufficient facts to demonstrate that Warren Pumps was acting under

24   direction of the Navy. There is no evidence proffered demonstrating that Navy specifications

25   for the manufactured pumps required the use of asbestos materials or that the Navy exercised

26   any control over defendant's asbestos warnings (or absence thereof). As to the second prong,

27   Warren Pumps has failed to raise a colorable federal defense to plaintiffs' claims. As discussed

28   above, not only does a discovery objection fail to rise to the level of a "defense," but the

4

privilege to protect matters of national security cannot be asserted by Warren Pumps on behalf

of the Government. Finally, under the third prong of the *Mesa* test, Warren Pumps does not

(and cannot) demonstrate a causal nexus between plaintiffs' claims and the acts allegedly

performed under color of federal office because it concedes that the complaint expressly

disclaims any cause of action based asbsetos exposure resulting from such acts. *Compare*

*Westbrook v. Asbestos Defendants*, 2001 U.S. Dist LEXIS 11575 (N.D. Cal. 2001)(remanding

case when plaintiff waived all claims arising from acts under the direction of federal officers,

rendering defendant's military contractor defense unavailable). Thus, remand is appropriate.

**3.    28 U.S.C. 1447(c).**

"An order remanding the case may require payment of just costs and any actual

expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. 1447(c). The

Court has "wide discretion" to award attorney's fees and costs under this section, even in the

absence of a finding that the removing party acted in bad faith. *Moore v. Permanente Medical*

*Group, Inc.*, 981 F2d. 443, 446–47 (1992). Independent of the questionable timing, Warren

Pumps' removal of the action was wholly unnecessary, meritless and obviously an attempt to

delay plaintiffs' upcoming trial date. Accordingly, an award of attorney's fees and costs, in an

amount to be determined, is warranted.

**CONCLUSION**

For the reasons stated above, plaintiffs' motion to remand is **GRANTED**. This action is

immediately **REMANDED** to the Superior Court of California for the County of San Francisco.

The hearing on this motion, currently scheduled for **JUNE 16, 2005 AT 8:00 A.M.**, is **VACATED**.

The Court retains jurisdiction to decide only the collateral matter of attorney's fees. A separate

order will issue on the procedure to determine the amount that shall be awarded.

**IT IS SO ORDERED.**

Dated: June 13, 2005                 

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

*Left margin:* **United States District Court** / For the Northern District of California

Westlaw.

Not Reported in F.Supp.2d                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 783355 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

**C**

Jenkins v. Board of Educ. of City of Chicago
N.D.Ill.,2004.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
Brianna JENKINS, by her father and next friend
Donnell Davis, and Donnell Davis, Plaintiffs,
v.
BOARD OF EDUCATION OF THE CITY OF
CHICAGO, a body politic and corporate, d/b/a
Chicago Public Schools, Dustin Berrien, individually,
and Fenner High School, Defendants.
**No. 03 C 7428.**

Jan. 16, 2004.

Larry R. Rogers, Powers, Rogers & Smith, Chicago,
IL, for Plaintiffs.
William Adams Morgan, Joseph D. Gergeni,
Chicago, IL, Robert William Fioretti, John Benton
Lower, Andrew Athis Muchoney, Coston, Fioretti &
Lichtman, Chicago, IL, for Defendants.

HART, J.
*1 Plaintiffs Brianna Jenkins and Donnell Davis [FN1]
filed this action in the Circuit Court of Cook County,
Illinois. Named as defendants are the Board of
Education of the City of Chicago (the "Board"),
Fenger High School ("Fenger"),[FN2] and Dustin
Berrien. Defendants removed the case to federal
court and plaintiffs have moved to remand the case.

> FN1. Because Jenkins is a minor, her claims
> are actually brought by Davis as her father
> and next friend.

> FN2. For purposes of today's ruling, it is
> unnecessary to determine whether the public
> entities are properly denominated nor
> whether the high school may be sued as a
> separate and distinct entity from the Board.

According to the allegations of the complaint,
Jenkins was a student at Fenger and Berrien was a
teacher and/or coach. Berrien allegedly had
inappropriate sexual contact with Jenkins. It is also
alleged that Berrien had engaged in prior sexual

misconduct with other students and that school
employees knew or should have known of this prior
misconduct, but did not take action to prevent further
misconduct.

Plaintiffs' Complaint has nine counts. Counts I
through VIII are brought by Jenkins and Count IX is
brought by Davis. The Counts are labeled as follows:
Count I-negligence against the Board and Fenger;
Count II-wilful and wanton negligence against the
Board and Fenger; Count III-negligent infliction of
emotional distress against the Board and Fenger;
Count IV-wilful and wanton negligent infliction of
emotional distress against the Board and Fenger;
Count V-negligence against Berrien; Count VI-wilful
and wanton negligence against Berrien; Count VII-
negligent infliction of emotional distress against
Berrien; Count VIII-wilful and wanton negligent
infliction of emotional distress against Berrien; Count
IX-Family Expense Act claim.[FN3]

> FN3. Count IX is clearly intended to be
> against the Board. It is unclear whether it is
> against Fenger and Berrien as well. The
> Family Expense Act is found at 750 ILCS
> 65/15. See Tully v. Cuddy, 139 Ill.App.3d
> 697, 94 Ill.Dec. 218, 487 N.E.2d 1095, 1096
> (1st Dist.1985).

Each count contains an identical ¶ 19 which reads:
19. That on or about September 3, 2002, and at all
times relevant, the Defendants owed a duty to
protect, the minor Plaintiff from known and unknown
harm, and to provide her with an education without
being subjected to sexual discrimination, under
Illinois common law, the Illinois Constitution and
Title IX.

Defendants contend this case was properly removable
because the claims involve a federal question in that
each count alleges violations of Title IX of the
Education Amendments of 1972, 20 U.S.C. §
1681(a). Plaintiffs expressly disclaim that they are
bringing any claim under Title IX. They contend they
are bringing state law claims only and that the reason
Title IX is mentioned in the complaint is because,
under Illinois common law, violation of a federal
statute may be considered as evidence of negligence
or fault. See Abbasi ex rel. Abbasi v.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Paraskevoulakos,* 187 Ill.2d 386, 240 Ill.Dec. 700, 718 N.E.2d 181, 185 (1999); *Fournier v. Luftshansa German Airlines,* 191 F.Supp.2d 996, 1001 (N.D.Ill.2002).

Section 1681(a) provides in part that no person shall be subjected to discrimination on the basis of sex under any educational program or activity receiving federal financial assistance. Title IX has been construed as providing that a federally funded school district may be liable for being deliberately indifferent in failing to stop sexual molestation or harassment by one of its employees. *Gebser v. Lago Vista Independent School District,* 524 U.S. 274, 290, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998); *Kinman v. Omaha Public School District,* 171 F.3d 607, 609-10 (8th Cir.1999). See also *Davis v. Monroe County Board of Education,* 526 U.S. 629, 641, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (sexual harassment by another student); *Gabrielle M. v. Park Forest-Chicago Heights, Ill. School District 163,* 315 F.3d 817, 821-22 (7th Cir.2003) (same). The private right of action under Title IX, however, may only be brought against the recipient of federal funding; it may not be brought against someone who is simply an employee of the recipient. *Smith v. Metropolitan School District Perry Township,* 128 F.3d 1014, 1018-19 (7th Cir.1997), *cert. denied,*524 U.S. 951, 118 S.Ct. 2367, 141 L.Ed.2d 736 (1998); *Kinman,* 171 F.3d at 610-11. Thus, in the present case, any possible private right of action under Title IX may only be brought against the Board and/or Fenger. No Title IX claim could be brought against Berrien individually.

*2 Since the Complaint labels the claims as being state law tort and statutory claims and since plaintiffs disclaim any intention of pursuing a private right of action under Title IX, the Complaint must be construed as bringing state law claims. *McPhail v. Wal-Mart Stores, Inc.,* 2003 WL 1750886 *3 (D.Kan. March 27, 2003); *Walker v. Atwood Chevrolet-Olds. Inc.,* 189 F.Supp.2d 594, 599 (S.D.Miss.2001); *Greer v. MAJR Financial Corp.,* 105 F.Supp.2d 583, 591 n. 6 (S.D.Miss.2000). Therefore, removal was only proper if the possible violation of Title IX that may be used as evidence of negligence or wilful conduct for one or more of the state law claims makes such claims turn on a federal question to an extent sufficient to confer federal jurisdiction under 28 U.S.C. § 1331.

Not every case in which a federal question is "an ingredient" contains claims "arising under" federal law as that term is used in § 1331. *Merrell Dow*

*Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 807, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).[FN4] It is true "that a case may arise under federal law 'where the vindication of a right under state law necessarily turned on some construction of federal law.' " *Id.* at 808 (quoting *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 9, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). However, the presence of such a factor does not automatically make the case one in which a federal question arises. Instead, the particulars of the case must be considered. *Merrell Dow,* 478 U.S. at 810, 813-14. *Merrell Dow* stands for the proposition that the lack of a particular factor will preclude the possibility of federal question jurisdiction. Even if a nonfederal cause of action involves construction of a federal statute, federal question jurisdiction will not lie if the federal statute does not provide for a private right of action. *Id.* at 812, 817;*Seinfeld v. Austen,* 39 F.3d 761, 764 (7th Cir.1994), *cert. denied,*514 U.S. 1126, 115 S.Ct. 1998, 131 L.Ed.2d 1000 (1995); *Fournier,* 191 F.Supp.2d at 1001. That, though, is not the situation in the present case. As discussed above, Title IX does provide for a private right of action against the Board and/or Fenger in the present type of situation. Therefore, additional factors have to be considered.

> FN4. Although *Merrell Dow* and its progeny establish the analytical framework applicable to the jurisdictional issue presently before the court, the parties have not cited *Merrell Dow* nor any of its progeny.

... [T]he court must examine the centrality of the federal law to the claim and consider policy factors. "What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of causation ... a selective process which picks the substantial causes out of the web and lays the other ones aside."*Franchise Tax Board,* 463 U.S. at 20, 103 S.Ct. 2841, 77 L.Ed.2d 420,*quoting*,*Gully v. First National Bank,* 299 U.S. 109, 117-18, 57 S.Ct. 96, 81 L.Ed. 70 (1936).

The evaluation of the importance of the federal issue to the state claim has been stated variously. As discussed in *Hunter [v. United Van Lines,* 746 F.2d 635 (9th Cir.1984), *cert. denied,*474 U.S. 863, 106 S.Ct. 180, 88 L.Ed.2d 150 (1985) ], courts have stated that the federal element in a claim must be "direct and essential as opposed to attenuated," "basic as opposed to collateral," "necessary as

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 783355 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

opposed to merely possible," "pivotal," "substantial as opposed to merely incidental" or "paramount as opposed to collateral." *Hunter,* 746 F.2d at 646 (internal quotations omitted). The fact that the state claim "hinges on" federal law is not, in and of itself, sufficient.*Id.* at 645-46.In *Hunter,* the court held that the fact that the federal element determined as a preliminary matter whether the state law duty of good faith applied was insufficient. *Id.* at 646.Just as the creation [of] property rights through federal land patents, trademarks and copyrights has been held not to transform state law actions to enforce contract and property rights into federal claims, the federal element in *Hunter* (contract claim based on federal law) was deemed to be involved only "incidentally;" the bad faith count "fundamentally asserts [state] claims." *Id.* at 647 (quotations omitted). Similarly, in *Moore [v. Chesapeake & O. Ry. Co.,* 291 U.S. 205, 54 S.Ct. 402, 78 L.Ed. 755 (1934) ], and *Merrell Dow,supra,*"the violation of the federal standard as an element of state tort recovery did not fundamentally change the state tort nature of the action."*Merrell Dow,* 478 U.S. at 814 n. 12, 106 S.Ct. 3229, 92 L.Ed.2d 650,*citing,Moore,* 291 U.S. at 216-17, 54 S.Ct. 402, 78 L.Ed. 755.

**\*3** "[D]eterminations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system."*Merrell Dow,* 478 U.S. at 810, 106 S.Ct. 3229, 92 L.Ed.2d 650. The analysis must be informed by "the demands of reason and coherence, and the dictates of sound judicial policy."*Id.*

*Precision Pay Phones v. Qwest Communications Corp.,* 210 F.Supp.2d 1106, 1117-18 (N.D.Cal.2002).

Another important factor is that, where violation of the federal statute is only an alternative basis for establishing a state law claim, there will generally be an insufficient basis for finding the presence of federal question jurisdiction. *Rains v. Criterion Systems, Inc.,* 80 F.3d 339, 346 (9th Cir.1996); *Dantzler v. Nationwide Credit, Inc.,* 1999 WL 1939258 \*4 (M.D.N.C. Feb.17, 1999); *Wagner v. Regent Investments, Inc.,* 903 F.Supp. 966, 970 (E.D.Va.1995).*See also**Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 809, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (applying the same rule in determining the existence of federal patent jurisdiction under 28 U.S.C. § 1338).

Cases that have considered jurisdiction over state law

claims which incorporate standards from federal statutes prohibiting discrimination have generally found that the cases do not involve federal question jurisdiction. *See**Rains,* 80 F.3d at 343-47 (California law wrongful termination claim which alleged violation of federal and state statutes prohibiting religious discrimination as support for violation of public policy); *Dantzler,* 1999 WL 1939258 at \*4 (North Carolina law negligent retention and supervision claims which alleged defendant employer allowed and condoned continuing violation of federal and state anti-discrimination laws); *Wagner,* 903 F.Supp. at 969-70 (Virginia law negligence claim in which it was alleged that failure to comply with entrance and exit construction requirements of Americans with Disabilities Act was negligence); *Lamson v. Firestone Tire & Rubber Co.,* 724 F.Supp. 511, 513-14 (N.D.Ohio 1989) (Ohio law negligence claim based on breach of Title VII duty of employer to investigate employee complaints of sexual discrimination and harassment).*See also**McPhail,* 2003 WL 1750886 at \*3-4;*McDowell v. Ohio Outdoor Advertising Corp.,* 1999 WL 1491773 \*1 (N.D.Ohio Dec.30, 1999); *Mathews v. Anderson,* 826 F.Supp. 479, 481-82 (M.D.Ga.1993).*Compare Danfelt v. Board of County Commissioners of Washington County, Md.,* 998 F.Supp. 606, 608-10 (D.Md.1998) (violation of Americans with Disabilities Act or Family Medical Leave Act was a necessary element of Maryland wrongful discharge claim).

In the present case, violation of Title IX is just one possible piece of evidence to be used in establishing defendants' negligence, wilful conduct, and/or deliberate indifference. A violation of Title IX is not an essential element of any of plaintiffs' claims nor central to any of the claims. Plaintiffs could establish all of their claims without claiming that the conduct violated Title IX. Moreover, defendants do not dispute the allegation that the sexual misconduct alleged, and the failure to stop it, violate Illinois statutes and common law as well, including Illinois anti-discrimination laws. Under the circumstances alleged, plaintiffs' claims do not arise under federal law. This case was improvidently removed.

**\*4** IT IS THEREFORE ORDERED that plaintiffs' motion to remand [5] is granted. The Clerk of the Court is directed to remand this case to the Circuit Court of Cook County, Illinois, County Department, Law Division. Each party shall bear its own costs of removal.

N.D.Ill.,2004.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 783355 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

Jenkins v. Board of Educ. of City of Chicago
Not Reported in F.Supp.2d, 2004 WL 783355
(N.D.Ill.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FILED

NOV 1 8 2002

ARLENE ROGER, CLERK
By PLA BIN
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

FLOWER MANGIALARDI, et al.                                      **PLAINTIFFS**

V.                                              CIVIL ACTION NO. 2:02CV121-B-B

HAROLD'S AUTO PARTS, INC., et al.                              **DEFENDANTS**

### MEMORANDUM OPINION

This cause comes before the court upon the plaintiffs' motion to remand or, in the alternative, to sever. Upon due consideration of the motion, the responses thereto, and the parties' memoranda and exhibits, the court is ready to rule.

### Procedural History

This case involves asbestos-related personal injury claims brought by the plaintiffs against more than one hundred defendants in the Circuit Court of Bolivar County, Mississippi. On June 5, 2002, several defendants removed the plaintiffs' consolidated claims to this Court. The defendants asserted that the claims of at least two of the plaintiffs, John Adamson and Greely Smith, were subject to "federal enclave" jurisdiction because those plaintiffs had been allegedly exposed to asbestos during their employment at such federal enclaves as the United States Postal Service and the Tennessee Valley Authority. The other defendants joined or consented to this removal and some asserted "federal officer" jurisdiction as an additional ground for removal. The plaintiffs filed the present motion on June 20, 2002. The plaintiffs subsequently filed a motion for expedited remand of all "non-federal-question plaintiffs." The court granted the latter motion, and the claims of all but twenty-five plaintiffs were remanded to state court. A conditional transfer order from the Panel on Multi-District Litigation has been entered in this case.

RECEIVED NOV 1 9 2002

FROM : PAT_KEAHEYAttorney at Law      FAX NO. : 2058710B0163        May. 27 2003 10:13AM  P3

## Analysis

The plaintiffs assert that remand of the claims of all plaintiffs is proper because they have expressly disavowed any and all federal claims in paragraph eight of their original complaint and in each amended complaint filed thereafter. The following disclaimer appears in the original and each amended complaint:

> The Federal Courts lack subject matter jurisdiction over this action, as there is no federal question and incomplete diversity of citizenship due to the presence of a Mississippi defendant. Removal is improper. Every claim arising under the Constitution, treaties, or laws of the United States is expressly disclaimed (including any claim arising from an act or omission on a federal enclave, or of any officer of the U.S. or any agency or person acting under him occurring under color of such office). No claim of admiralty or maritime law is raised. Plaintiffs sue no foreign state or agency. Venue is proper in Bolivar County, Rosedale District.

The defendants take issue with the fact that, despite the plaintiffs' waiver, the plaintiffs plead "failure to warn" claims based in whole or in part upon alleged exposures to asbestos which occurred either within the confines of a federal enclave or due to conduct undertaken upon the direction of a federal officer. The defendants assert that such claims are removable. The plaintiffs maintain that removal is improper if the only claim is that of a failure to warn.

The Fifth Circuit has expressly held that failure to warn claims are subject to the "government contractor defense" — the defense which underpins federal officer jurisdiction in this case. See, e.g., Kerstetter v. Pacific Scientific Corp., 210 F.3d 431, 435 (5th Cir. 2000). Upon proof that a manufacturer's purported failure to warn of a product's hazards was the result of government control or direction, a related failure to warn claim is subject to both the government contractor defense and the federal officer removal statute. Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 399-400 (5th Cir. 1998). It is, nevertheless, unnecessary for this court to apply the test for federal officer removal in this case or to determine whether the defendants have a colorable federal defense and have, therefore,

2

FROM : PAT_KEAHEYAttorney at Law      FAX NO. : 205871000163                May. 27 2003 10:13AM  P4
NOV-21-2002  08:03      CHAMPION LEWIS AND SWAN                              662 627 4171    P.04

properly removed this action.  The court finds that the plaintiffs have waived all federal claims;

therefore, the case should be remanded.  It should be emphasized, however, that remand in this case rests

upon the plaintiffs' complete waiver and disavowal of all federal claims, including all failure to warn

claims based in whole or in part upon federal asbestos exposure.  Any future attempt by plaintiffs to

reassert such federal-exposure-based claims would immediately render this case once again subject to

removal.

Further, though work histories for the twenty-five remaining plaintiffs indicate a possibility of

federal exposure, there is no compelling evidence in the record to show that these plaintiffs were actually

exposed to asbestos at federal enclaves.  While the court acknowledges that discovery is incomplete at

this point, the factual question of federal exposure is rendered inconsequential in light of the plaintiffs'

complete waiver and disavowal of all federal claims.  If the plaintiffs are later found to have suffered

federal exposure, they will not be allowed to bring those claims, as the claims are being waived for all

time and before all courts.

Since the plaintiffs have stipulated that they will not pursue any federal claims, should any of

these plaintiffs' alleged injuries be proven at trial to have resulted from federal exposure, the fact-finder

is precluded from considering those injuries in the calculation of damages.  Just as a plaintiff who

stipulates damages in an amount less than $75,000 to avoid diversity jurisdiction cannot later claim

greater damages in state court, the plaintiffs in the present case cannot now disclaim their federal causes

of action and later argue damages caused by federal exposure.

Courts throughout the Fifth Circuit and this state have ruled that a plaintiff may defeat removal

to the federal courts by disavowing claims which give rise to federal jurisdiction.  *See, e.g.*, Caldwell

v. American Home Products Corp., 210 F. Supp. 2d 809 (S.D. Miss. 2002); Walker v. Atwood

Chevrolet-Olds, Inc., 189 F. Supp. 2d 594 (S.D. Mississippi 2001); Hardmon v. City of Clarksdale, No.

FROM : PAT_KEAHEYAttorney at Law     FAX NO. : 205871080163     May. 27 2003 10:14AM  P5
662 627 4171    P.05

2:97CV32-S-B, 1998 WL 378380 (N.D. Miss. May 21, 1998). This court finds that the plaintiffs in the present case have effectively waived their federal claims now and forever and have thereby defeated removal.

## Conclusion

For the forgoing reasons, the Court finds that the plaintiffs' motion to remand is well-taken and shall be granted. An order will issue accordingly.

This, the _____ day of November, 2002.

NEAL B. BIGGERS, JR.
SENIOR U.S. DISTRICT JUDGE

4

FROM : PAT KEAHEYAttorney at Law      FAX NO. : 205871080163      May. 27 2003 10:14AM  P6
                                                              662 627 4171    P.06

**FILED**

NOV 1 8 2002

ARLENE JOYCE/CLERK
By _____ Deputy

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### DELTA DIVISION

FLOWER MANGIALARDI, et al.                                        **PLAINTIFFS**

V.                                              CIVIL ACTION NO. 2:02CV121-B-B

HAROLD'S AUTO PARTS, INC., et al.                               **DEFENDANTS**

## ORDER

Pursuant to the memorandum opinion issued simultaneously herewith, it is **ORDERED** and

**ADJUDGED** that the plaintiffs' motion to remand is **GRANTED**, and this case is hereby remanded to

the Circuit Court of Bolivar County, Mississippi.

This, the _18_ day of November, 2002.


                                    _____
                                    NEAL B. BIGGERS, JR.
                                    SENIOR U.S. DISTRICT JUDGE

Westlaw.

Not Reported in F.Supp.                                          Page 1

Not Reported in F.Supp., 1996 WL 532150 (N.D.Cal.)

(Cite as: Not Reported in F.Supp.)

▷
Overly v. Raybestos-Manhattan
N.D.Cal.,1996.
Only the Westlaw citation is currently available.
United States District Court, N.D. California.
Robert S. OVERLY and Louise S. Overly Plaintiffs,
v.
RAYBESTOS-MANHATTAN, et al. Defendants.
No. C-96-2853 SI.

Sept. 9, 1996.

ORDER REMANDING CASE TO SUPERIOR
COURT
ILLSTON, District Judge.
*1 On September 6, 1996, the Court heard argument
on plaintiffs' motion to remand. Having considered
the arguments of counsel and the papers submitted,
the Court hereby GRANTS plaintiffs' motion to
remand this case to San Francisco County Superior
Court. The Court also GRANTS plaintiffs' motion for
attorney fees and costs under 28 U.S.C. § 1447(c).

BACKGROUND

On April 30, 1996, plaintiffs filed the complaint in
this action in San Francisco County Superior Court.
The Superior Court granted trial preference to the
case pursuant to California Code of Civil Procedure §
36(d), because Mr. Overly is dying and is expected to
survive only a few months; trial was set for October
7, 1996.

On August 9, 1996, after the trial date had been set,
defendant Avondale Industries, Inc. removed the case
to federal court pursuant to 28 U.S.C §§ 1441, 1442,
and 1446. On August 20, 1996, plaintiffs filed a
motion to remand and requested that it be heard on an
expedited basis.

According to the allegations of the complaint,
plaintiff Robert Overly was exposed to asbestos
while working in a shipyard in the 1960's. Defendant
Avondale controlled part of the premises of Mr.
Overly's employment during this period of time.
Plaintiffs' complaint alleges that Avondale knew or
should have known that the premises it controlled
contained hazardous conditions, namely products
containing asbestos. Plaintiffs further allege that

defendant hired contractors and subcontractors who
used products containing asbestos, but failed to warn
individuals in the surrounding area of the existence of
asbestos or to take precautions against human
exposure to the chemical.

Plaintiffs allege that, as a result of exposure to
asbestos while working in the shipyard, Mr. Overly
acquired mesothelioma, a cancer usually resulting
from asbestos exposure. In May of this year, Mr.
Overly was diagnosed with six months remaining to
live. Plaintiffs have proceeded against Avondale on
the " failure to warn theory" of products liability.

Avondale does not contest Mr. Overly's assertion that
he was exposed to asbestos during his work on the
Avondale shipyard. Instead, it claims that the work
done by Mr. Overly consisted primarily of work on
naval ships, and that Avondale is therefore protected
by government contractor immunity. Avondale
asserts that it was under rigid guidelines by the
federal government concerning the design of naval
ships. Thus, Avondale asserts that it is entitled to the
protection of the Federal Officer Removal Statute,
thereby providing grounds for federal jurisdiction.

LEGAL STANDARD

A suit filed in state court may be removed to federal
court if the federal court would have had original
subject matter jurisdiction over that suit. 28 U.S.C. §
1441(a); Snow v. Ford Motor Co., 561 F.2d 787, 789
(9th Cir.1977). Three potential bases for federal
subject-matter jurisdiction are relevant to this suit: (1)
federal question jurisdiction under 28 U.S.C. § 1331,
[FN1] (2) admiralty jurisdiction under 28 U.S.C. § 1333,
[FN2] and (3) supplemental jurisdiction under 28 U.S.C.
§ 1367.[FN3]

> FN1. 28 U.S.C. § 1331 states that " [t]he
> district courts shall have original jurisdiction
> of all civil actions arising under the
> Constitution, laws, or treaties of the United
> States."

> FN2. Under 28 U.S.C. § 1333, " [t]he
> district   courts   shall   have   original
> jurisdiction, exclusive of the courts of the
> States, of ... [a]ny civil case of admiralty or
> maritime jurisdiction, saving to suitors in all

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

cases all other remedies to which they are otherwise entitled."

FN3. Supplemental or pendent party jurisdiction exists where claims " are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).
The Court may decline to exercise supplemental jurisdiction if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. § 1367(c).

**\*2** A motion to remand is the proper procedure for challenging removal. Remand to state court may be ordered either for lack of subject matter jurisdiction or for any defect in removal procedure. See 28 U.S.C. § 1447(c). The court may remand *sua sponte* or on motion of a party, and the parties who invoked the federal court's removal jurisdiction have the burden of establishing federal jurisdiction. See *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1195 (9th Cir.1988) (citing *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97 (1921)).

The removal statute is strictly construed against removal jurisdiction and doubt is resolved in favor of remand. *Libhart v. Santa Monica Dairy Co.,* 592 F.2d 1062, 1064 (9th Cir.1979).

The existence of federal jurisdiction on removal must normally be determined on the face of the plaintiff's complaint. See *Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149 (1908). A " cause of action arises under federal law only when the plaintiff's well pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co v. Taylor,* 481 U.S. 58, 63 (1987).

However, the Court may examine the entire record to determine if the real nature of the claim is federal, notwithstanding plaintiff's characterization to the contrary, when the plaintiff has, by " artful pleading," attempted to defeat defendant's right to a federal forum. See *Federated Dep't Stores, Inc. v. Moitie,*

452 U.S. 394, 397 n. 2 (1981); *Salveson,* 525 F.Supp. at 572. A complainant cannot " avoid federal jurisdiction simply by omitting from the complaint federal law essential to his claim, or by casting in state law terms a claim that can be made only under federal law." *Harper v. San Diego Transit Corp.,* 764 F.2d 663, 666 (9th Cir.1985).

The Federal Employee Removal Statute was enacted as a means for federal employees to bypass the well-pleaded complaint rule and raise immunity-related defenses as a basis for removal.

## DISCUSSION

### I. *Jurisdiction Under the Federal Officer Removal Statute*

The Federal Officer Removal Statute provides that an action may be removed by " [a]ny officer of the United States or any agency thereof, or person acting under him, for any act under color of such office." Title 28 U.S.C. § 1442(a)(1). In *Mesa v. California,* 489 U.S. 121 (1989), the Supreme Court held that § 1442(a)(1) requires the moving party to: (1) demonstrate that it acted under the direction of a federal officer; (2) raise a colorable federal defense to plaintiff's claims; and (3) demonstrate a causal nexus between plaintiff's claims and the acts defendants performed under color of federal office. *Id.* at 124-25, 134-35. Before applying the test outlined in *Mesa,* however, a defendant must qualify as a " person" for the purposes of 28 U.S.C. § 1441(a)(1). As a corporation, defendant Avondale meets this preliminary requirement. *Fung v. Abex Corp.,* 816 F.Supp. 569, 572 (N.D.Cal.1992).

### A. Acts Under the Direction of A Federal Officer

**\*3** Under the first prong of the *Mesa* test, defendant must show that it was acting under the direction of a federal officer. It is not enough to prove only that " the relevant acts occurred under the general auspices of" a federal officer, *Ryan v. Dow Chemical Co.,* 781 F.Supp. 934, 946 (E.D.N.Y.1992), or that the defendant was a member of a regulated industry. *Id.; Bakalis v. Crossland Sav. Bank,* 781 F.Supp. 140, 144-45 (E.D.N.Y.1991). In the area of product liability, government contract immunity has been limited to cases where defendant companies can show " strong government intervention and the threat that a defendant will be sued in state court ' based upon actions taken pursuant to federal direction.' "

Not Reported in F.Supp.                                              Page 3

Not Reported in F.Supp., 1996 WL 532150 (N.D.Cal.)

**(Cite as: Not Reported in F.Supp.)**

*Fung v. Abex Corp.,* 816 F.Supp. at 573 (quoting *Gulati v. Zuckerman,* 723 F.Supp. 353 (E.D.Pa.1989)).

In this case, the liability asserted by the plaintiffs is limited to the failure to warn theory of products liability. Plaintiffs allege that because Avondale failed to warn Mr. Overly of the existence of asbestos in his work environment, Avondale should be held liable for his resulting illness. Plaintiffs are not pursuing a design defect claim of products liability and have offered in writing to waive all potential claims related to design defects.

Although Avondale has established that it was under substantial control by the government regarding the installation of certain products containing asbestos, it has not done so with regard to the warning of individuals of the presence of asbestos on the job site.

**B. Colorable Federal Defense**

The second prong of the *Mesa* test is that defendant must possess a colorable federal defense. Defendant Avondale presents two potential federal defenses.

**1. Longshore and Harbor Workers Compensation Act**

One defense asserted by Avondale is that plaintiffs' recovery is limited to relief under the Longshore and Harbor Workers Compensation Act (LHWCA) § 1 et seq., 33 U.S.C.A. § 901 et seq. The LHWCA provides a basis for compensation from employers to certain employees injured in the course of employment while working upon navigable waters or the harbors and shipyards adjoining such waters. 33 U.S.C.A. § 903.

As an initial matter, defendant is barred from asserting a defense on this basis because the LHWCA was not mentioned in defendant's petition for removal as required under 28 U.S.C. § 1446(a).

Furthermore, even if applied to this case, the LHWCA does not constitute a colorable federal defense for Avondale. Mr. Overly was not an employee of Avondale, he was an employee of Westinghouse. The " borrowed employee" concept asserted by defendant has not been adopted by the Ninth Circuit. Furthermore, even under the Third Circuit guidelines cited by the defendant, Mr. Overly would not qualify as a " borrowed employee" for the purposes of the LHWCA because there has been

absolutely no showing that he explicitly agreed to work under conditions controlled solely by Avondale. *Peter v. Hess Oil Virgin Islands Corp.,* 903 F.2d 935, 942 (1990). Thus, the LWHCA does not constitute a colorable defense to plaintiffs' common law causes of action.

**2. Government Contractor Immunity**

**\*4** The second ground on which defendant asserts it possesses a colorable federal defense is the government contractor defense. Under this theory, contractors who supply military equipment to the government are immunized from liability under state tort law providing that they can meet the test outlined in *Boyle v. United Technologies Corp.,* 487 U.S. 500 (1988). In *Boyle,* the Court set the standard for finding state law liability for design defects in military equipment. *Id.* at 511. Military contractor immunity for design defects applies when: " (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Id.* at 512.

The Ninth Circuit has ruled that in failure to warn product liability cases involving asbestos allegedly used in the construction of naval ships, a defendant must specifically show that " in making [its] decisions regarding warnings [it was] acting in compliance with ' reasonably precise specifications' imposed on [it] by the United States." *In re Hawaii Federal Asbestos Cases,* 960 F.2d 806, 813 (9th Cir.1992). Thus, in order to meet the *Boyle* test in a failure to warn case, the defendant must show that the government affirmatively instructed it regarding the provision of warnings.

Defendant's only showing on this motion relates to the government's manufacturing and engineering specifications. Defendant has not demonstrated that the government provided " reasonably precise specifications" affecting Avondale's provision of warnings. *Boyle,* 487 U.S. at 512. Absent a showing by defendant that the federal government gave specific instructions to Avondale not to warn employees of the existence of asbestos, Avondale is offered no protection by government contractor immunity. *See In re Hawaii Federal Asbestos Cases,* 960 F.2d at 813. Therefore, defendant fails to meet the second prong of the *Mesa* standard because

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                      Page 4

Not Reported in F.Supp., 1996 WL 532150 (N.D.Cal.)

**(Cite as: Not Reported in F.Supp.)**

Avondale has no colorable federal defense to the charges in this case.

### C. Causal Nexus

The final requirement under the *Mesa* test is that there be a causal nexus between the rules imposed by the United States on the defendant contractor by the federal government and the liability asserted by plaintiff. " [T]here must be a causal connection between what the officer has done under asserted official authority and the state prosecution. It must appear that the [state] prosecution has arisen out of the acts done by the officer under color of federal authority and in enforcement of federal law." *Maryland v. Soper,* 270 U.S. 9, 22 (1926).

Defendant has produced abundant evidence attesting to the regulations imposed by the federal government on the manufacture and design of ships built by Avondale for the U.S. Navy. However, *none* of these guidelines addresses Avondale's responsibility to warn its employees of their exposure to products containing asbestos. The government in no way restricted Avondale's ability to notify individuals of the presence of asbestos in the work environment. Thus, there is no causal connection between the control exercised by the United States over Avondale and the legal theory under which plaintiffs seek to hold Avondale liable. Consequently, Avondale has no basis on which to assert application of the Federal Officer Removal Statute, and the case must be remanded to state court.

### II. *Attorney Fees & Costs*

**\*5** Title 28 U.S.C. § 1447(c) provides that when granting a motion for remand on the basis of a lack of federal subject matter jurisdiction, a court may order the defendant to pay plaintiff " its just costs and any actual expenses, including attorney fees, incurred as a result of the removal." An award under § 1447(c) is entirely within the Court's discretion.

Under its discretion, the Court finds that the case was removed " improvidently and without jurisdiction." *Id.* The Court hereby awards plaintiffs their reasonable costs and attorney fees associated with removal, as requested, in the amount of $2,000, to be paid by defendant Avondale within ten days of the date of this order.

### CONCLUSION

For the foregoing reasons and for good cause shown, plaintiffs' motion to remand is GRANTED. Plaintiffs' motion for reasonable costs and attorney fees incurred as a direct consequence of removal is GRANTED in the amount of $2,000.

IT IS SO ORDERED.

N.D.Cal.,1996.
Overly v. Raybestos-Manhattan
Not Reported in F.Supp., 1996 WL 532150 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                                    Page 1

Slip Copy, 2007 WL 1550992 (E.D.La.)

**(Cite as: Slip Copy)**

Sheppard v. Northrop Grumman Systems Corp.
E.D.La.,2007.
Only the Westlaw citation is currently
available.Euelis " Ellau" SHEPPARD
v.
NORTHROP GRUMMAN SYSTEMS CORP., et al.
**Civil Action No. 07-2208.**

May 24, 2007.

Scott R. Bickford, Jeffrey Matthew Burg, Spencer R.
Doody, Martzell & Bickford, New Orleans, LA, for
Euelis " Ellau" Sheppard.
Brian C. Bossier, Christopher Thomas Grace, III,
Edwin A. Ellinghausen, III, Blue Williams, L.L.P.,
Charles V. Giordano, Miranda, Warwick, Milazzo,
Giordano & Hebbler, APLC, Christopher Kelly
Lightfoot, Hailey, McNamara, Hall, Larmann &
Papale, Metairie, LA, Glenn Lyle Maximilian
Swetman, Aultman, Tyner & Ruffin, Ltd., Gordon
Peter Wilson, Frederick Lewis Parks, Lugenbuhl,
Wheaton, Peck, Rankin & Hubbard, Gary Allen Lee,
Richard Marshall Perles, Lee, Futrell & Perles, LLP,
Samuel Milton Rosamond, III, Crawford Lewis,
PLLC, New Orleans, LA, William L. Schuette, Jr.,
Jones, Walker, Waechter, Poitevent, Carrere &
Denegre, LLP, Baton Rouge, LA, for Northrop
Grumman Systems Corp., et al.

CARL J. BARBIER, United States District Judge.
*1 Before the Court is Plaintiff's **Motion to Remand
(Rec.Doc.11).** This motion was opposed and was set
for hearing on the briefs on May 16, 2007. Upon
review of the record, the memoranda of counsel, and
the applicable law, this Court now finds that
Plaintiff's motion should be granted.

*Factual Background*

Plaintiff initially filed this suit against Defendant,
Northrop Grumman Systems Corp. (" Northrop" )
and several other defendants in Civil District Court
for the Parish of Orleans asserting that he contracted
asbestos-related lung cancer while employed as a
laborer and rigger by Avondale Shipyard in
Avondale, Louisiana. Northrop and Peter Territo, an
executive officer (hereinafter referred to as "
Defendants" ), removed this action to federal court
under 28 U.S.C. § 1442(a)(1) based on federal officer
immunity. Defendants also stated that the Longshore

and Harbor Workers' Compensation Act (" LHWCA"
) was a basis for removal. The day before Defendants
removed this action, Plaintiff filed and served a
motion for leave of court to amend his petition in
state court. (Exhibit G to motion to remand).
Specifically, Plaintiff sought leave to amend his
petition to delete paragraphs 47 and 49, which read in
pertinent part:
Avondale had the *garde* of the asbestos ... and is
thereby strictly liable pursuant to Louisiana Code
Article 2317.
Avondale fabricated asbestos-containing insulation
products to which Petitioner was exposed and
Avondale is strictly liable as a manufacturer....

Plaintiff argues that, in addition to his failure to warn
claims, he erroneously asserted the above garde and
product liability claims in his original petition. He
claims that while neither of the above claims confer
jurisdiction on this Court, he promptly (i.e., before
the notice of removal was filed) sought leave to
amend his petition so that Defendants could not argue
that Plaintiff intended to pursue any cause of action
over which this court would have jurisdiction. Five
days after this action was removed, Plaintiff, again,
sought leave to amend his Complaint, which was
granted two days later.

*The Parties' Arguments*

Plaintiff argues that this Court should make its
jurisdictional determination based on his amended
Complaint even though the amendment was allowed
*after* removal. Plaintiff notes that it is clear that he is
not attempting to engage in forum shopping because
he sought leave to amend his petition prior to
removal.

Plaintiff next claims that Defendant has not satisfied
its burden of proving that it is entitled to federal
officer immunity. Plaintiff argues that Defendants
have not properly invoked this Court's federal officer
jurisdiction under § 1442(a)(1), because they cannot
meet the criteria set forth in *Mesa v. California,* 489
U.S. 121, 124-25, 109 S.Ct. 959, 103 L.Ed.2d 99
(1989). First, Plaintiff claims Defendants have not
shown that they were acting under federal direction at
the time the tort was committed. Plaintiff asserts that
Defendants cannot establish that a federal officer

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

directed and controlled their safety and warning-related activities specifically. Second, Plaintiff asserts that Defendants do not have colorable federal defense under the government contractor defense because there is no conflict between Defendants' federal and state duties. Plaintiff notes that the testimony of Peter Territo, executive officer of Avondale, demonstrates that no government regulation or contract specification prevented him from providing safety warnings. (Exhibit I to motion to remand, p. 143). Third, Plaintiff asserts that Defendants have not shown a nexus between the Government's control and Plaintiff's legal theories. Plaintiff notes that Defendants have provided no evidence showing that a federal officer exercised " direct and detailed" control over safety and warnings, and thus, it is impossible for Defendants to show a causal nexus between the Government's supervision and their own tortious failure to warn. Thus, according to the Mesa test, Plaintiff argues that Defendants cannot invoke federal officer jurisdiction.

**\*2** Further, Plaintiff asserts that he has **disclaimed** any cause of action which could invoke federal officer jurisdiction. Plaintiff asserts that if the Court concludes that Defendant have pled a colorable federal officer defense, Plaintiff's petition **disclaimed** any cause of action which would ripen the defense. Specifically, plaintiff pled:
Plaintiffs [sic] **disclaim** any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a **federalenclave**. *Plaintiffs also **disclaim** any cause of action or recovery for any injuries resulting from any exposure to asbestos dust caused by any acts or omissions of a party committed at the direction of an officer of the United States Government.*

(Petition, ¶ 56, *emphasis added* ). Plaintiff asserts that in similar asbestos cases (which were removed to federal court by defendants asserting federal officer jurisdiction), courts have looked to similar post-removal **disclaimers** to remand the cases to state court. *See, Overly v. Raybestos-Manhattan,* 1996 WL 532150 (N.D.Cal. Sept. 9, 1996); *Westbrook v. Asbestos Defendants,* 2001 WL 902642 (N.D.Cal.2001)(" The court sees no reason not to hold plaintiffs in this case to their waiver of claims arising out of work done on federal jobsites and vessels. This waiver, therefore, justifies remand. If plaintiffs later attempt to reverse course, and are allowed to do so by the state court despite their express waiver, [defendant] can always file for

removal once again." ) Thus, Plaintiff asserts that if the Court determines that there is jurisdiction based on Defendants' federal officer defense, Plaintiff should be bound by his **disclaimer.** Also, unlike the plaintiffs in *Overly* and *Westbrook,* who **disclaimed** causes of action post-removal (arguably implicating concerns of forum shopping), Plaintiff here **disclaimed** these causes of action in his original petition filed in state court.

Last, Plaintiff asserts that the LHWCA does not provide a colorable federal defense. Plaintiff notes that in *Gauthe v. Asbestos Corp.,* 1997 WL 3255 (E.D.La. Jan. 2, 1997), Judge Duval addressed these same LHWCA arguments with regard to the Avondale Interests in an asbestos exposure case exactly the same as the case at bar. In rejecting Avondale's arguments, Judge Duval relied on both Louisiana law as well as the U.S. Supreme Court decision in *Sun Ship, Inc. v. Pennsylvania,* 100 S.Ct. 2432 (1980) to hold that the LHWCA does not preempt, but supplements, state remedies available to an injured worker. Plaintiff claims that from his Petition, it is clear that he intended to do just that: i.e., sue Defendants in state court for state law claims. Plaintiff claims that he has not availed himself of any LHWCA benefits and does not seek to do so in his petition. Thus, removal is improper on the basis of his purported LHWCA claim.

In opposition, Defendants making up the Avondale Defendants (i.e., Northrop and its executive officers) [FN1] claim that they are entitled to remove this case based on federal officer jurisdiction. Specifically, Defendants assert that the intense government presence at Avondale and government control of the construction of vessels at Avondale, where Plaintiff allegedly was exposed to asbestos, was of such a direct and detailed nature that Defendants are entitled to defend this claim in federal court. (See Exhibit D to opposition). Defendant argues in essence that construction and inspection systems designed and implemented by the government to ensure that the proper materials were used and incorporated in the proper manner were thorough, all-encompassing, and included the authority for government inspectors to order that any non-compliance found be corrected by Avondale at any stage of the construction.

> FN1. An opposition advancing similar arguments was filed by Commercial Union Insurance Company (Rec.Doc.18).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*3** Defendants assert the importance of *Lalonde v. Delta Field Erection,* 1998 WL 34301466 (M.D.La.1998). Defendants explain that in *Lalonde,* the court held that the federal government contractor, DSM, " was acting ' under an officer of the United States or of an agency thereof' for purposes of removal under § 1442(a)(1)" because DSM " operated a federal government-owned facility, exclusively for the government, under the oversight and ultimate control of officers of the federal government." Although Defendant admits that Avondale was not a government-owned facility, it argues that the work performed under contract with the government was performed exclusively for the government under the direct oversight and control of government officers. Defendant asserts that like DSM, Avondale acted exclusively for and under the control of the federal government in its operation under all of the government contracts. Defendants asserts that (1) government inspectors daily monitored compliance by Avondale with safety regulations made part of the contracts; (2) the government required the use of asbestos insulation; (3) the government specifically incorporated into the contracts federal asbestos safety regulations, which set standards for safe daily exposures to asbestos; and (4) government inspectors constantly monitored the ship construction process for compliance with all terms of the contract. Defendants claim these facts establish that the they were " acting under" the direction of the federal government and that the causal connection exists because the acts complained of were " under color" of federal office.

Next, Defendants claim they can successfully assert a colorable federal defense, i.e., the federal contractor defense. Defendants claims they always conformed to the exceptionally precise specifications for the construction of the vessels that were drafted and approved by the government. Defendants also argue that Avondale had no knowledge of any dangers associated with the use of asbestos about which the government was not aware, given the extensive presence and control of the construction by the government, the incorporation into the contracts of the Walsh-Healey Act, and federal asbestos safety regulations promulgated by the LHWCA.

The second of Defendants' two available federal defenses is the immunity provision contained in the LHWCA. Defendants claim that Plaintiff, Territo, and Avondale satisfy the " status" and " situs" test and are, thus, all qualify for treatment under the LHWCA. Defendants assert that it is without serious dispute that federal law governs the question of whether the LHWCA preempts state law. Defendants argue that decisions such as the United States Supreme Court in *Sun Ship* make clear that Congress intended that disputes between longshore workers be resolved within the exclusive framework of the LHWCA.

Defendants also claim that the recent rulings in *Melford v. Northrop Grumman Systems Corp.,* case no. 05-1405 (M.D.La.) and *McFarlain v. Northrop Grumman Systems,* case no. 05-1406 (M.D.La .) are applicable and suggest that remand should be denied. Defendants note that the *Melford* case was removed to the Middle District of Louisiana on the same grounds that were asserted here: pervasive government regulation of federal ship construction contracts entitled the defendant to federal court jurisdiction under the Federal Officer Removal statute. The Court denied the plaintiff's motion to remand, wherein the plaintiff made the same arguments as the plaintiff here makes: the government never forced the defendant " not to warn," the *Overly* test applies, and the Federal Contractor Defense is not colorable. Defendants note that the *Melford* ruling is contrary to every Eastern District ruling against Defendants to date.

**\*4** In *McFarlain,* the plaintiff urged much more than " failure-to-warn" claims. Specifically, the plaintiff had alleged " strict liability" claims. Defendants note that in Plaintiff's original Petition in this case, he also makes strict liability claims that seek to attach liability to Defendants for the mere presence of asbestos at the workplace. (See paragraphs 47 and 49 of original Petition). Defendants claim that this Court should rule as the *McFarlain* Court did and find that, at least as far as the strict liability claims are concerned, Defendant's federal contractor defense is colorable and all three prongs of the removal test are met. Similarly, Defendants claim this Court should exercise its supplemental jurisdiction over the remaining claims and deny Plaintiff's motion to remand. As for Plaintiff's post-removal amendment to delete the strict liability claims from his Petition, Defendants argue that the Court should not consider the amended Petition because what controls is the Petition as it reads at the time of removal.

*Analysis*

**The Amended Petition:**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 1550992 (E.D.La.)

**(Cite as: Slip Copy)**

Although this case was properly removed based on federal question jurisdiction, a mere seven days after removal, Plaintiff was granted leave to amend his Complaint. This amendment effectively allowed Plaintiff to delete any possibility of federal claims from his Complaint. The fact that this amendment occurred so quickly after removal and the fact that Plaintiff had sought leave to amend his petition in state court the day before Defendants filed their notice of removal prompts the Court to consider the amended petition in its determination of this motion to remand. The Supreme Court has held that if a federal claim that formed the basis of federal question jurisdiction is dismissed, the court has discretion to remand the state law claims. *See Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 357, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (affirming remand of state claims after plaintiff's amended complaint dropped claim that was preempted). The *Carnegie-Mellon* Court held that if a federal question is eliminated relatively soon after removal, it is ordinarily preferable to remand the case. *Id.* Indeed, the Court noted that retaining a case after a fresh federal claim is dropped early in litigation may be an abuse of discretion. *Id.* Thus, the Court concludes that in this situation, the amended Complaint will be used to determine whether the case should be remanded.

### Should this Matter be Remanded?

The Federal Officer Removal Statute provides as follows:

(a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is presiding:

(1) The United States or any agency thereof or any officer (or any acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or for the collection of the revenue....

**\*5** 28 U.S.C. § 1442(a)(1). The Fifth Circuit has explained that removal pursuant to this statute is meant to " ensure a federal forum in any case where a federal officer is entitled to raise a defense arising out of his official duties." *Winters v. Diamond Shamrock*

*Chemical Co.,* 149 F.3d 387, 398 (5th Cir.1998). It is the removing defendants that have the burden of establishing the existence of federal jurisdiction. *Id.* at 397.In considering whether removal was proper under the federal officer removal statute, a court must determine whether the removing defendants have established the following factors: (1) that they are " persons" under § 1442(a)(1); (2) that they acted under the direction of a federal officer; (3) that they have demonstrated a causal nexus between plaintiff's claims and defendants' actions performed under the color of a federal office; and (4) that they can raise a federal defense to plaintiff's claims. *Mesa,* 489 U.S. at 131-32;*Winters,* 149 F.3d at 398.

### (1) Are Defendants " persons" within the meaning of the statute?

Both removing defendants (Northrop as a corporation and Territo as an executive officer for the corporation) satisfy the first *Mesa* prong. *See Winters,* 149 F.3d at 398;*Bradley v. Northrop Grumman Systems, Corp.,* 2007 WL 1115246 (E.D.La. Apr., 12, 2007).

### (2) Were Defendants acting under the direction of a federal officer?

The Court concludes that Defendants' removal fails on this prong because they failed to establish their safety and warning-related activities were under the requisite direction of a federal officer. Federal direction requires " more than ' general auspices' of a federal officer, or participation in a regulated industry." *Savoie v. Northrop Grumman Ship Systems, Inc.,* No. 05-2086 (E.D . La.2005). Defendants must show " strong government intervention and the threat that a defendant will be sued in state court" based on actions which follow federal direction. *Mouton v. Flextallic, Inc.,* 1999 WL 225438 *2-3 (E.D.La.1999).

Nothing in the record establishes that the safety procedures at issue were controlled by the government or related to government specifications in the building of ships at Avondale. *See also Bradley,* 2007 WL 1115246;*Guidroz v. The Anchor Packing Co.,* No. 98-3709 (E.D.La); *Mouton,* 1999 WL 225438 (no causal connection between the Navy's direction pursuant to design contracts and plaintiff's failure to warn claims). Territo testified that there were no federal officers on board the vessels and that Naval inspectors did not control the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 1550992 (E.D.La.)

**(Cite as: Slip Copy)**

safety department at Avondale. (Exhibit I to motion to remand, p. 135). He also admitted that nothing in the federal regulations prevented Avondale from warning its employees of the dangers of asbestos exposure. (Exhibit I to motion to remand, p. 143). Thus, this Court finds that Defendants are not entitled to federal officer removal in this instance.

### (3) Was there a causal nexus between Plaintiff's claims and Defendants' actions performed under the color of a federal office?

**\*6** Because Defendants have failed to demonstrate that the government exercised the requisite authority and control over Defendants' safety procedures, there can be no causal nexus between the authority of the federal officer and Plaintiff's claims that Defendants failed to use asbestos safely. *See also Bradley,* 2007 WL 1115246, \*3;*Gauthe,* 1997 WL 3255 (no causal nexus under similar facts and circumstances).

### (4) Have Defendants established a colorable federal defense?

The Court determines that Defendants have failed to establish a colorable defense under either the government contractor defense theory or the LHWCA defense theory. First, Defendants cannot successfully invoke the government contractor defense, as set forth in *Boyle v. United Technologies Corp.,* 487 U.S. 500 (1988), because Defendants cannot carry their the burden of establishing that the following two conditions are met: 1) that the case concerns a unique federal issue, and 2) that a significant conflict exists between federal policy and state law as applied to this case. *Boyle,* 108 S.Ct. at 2515. Here, there is no conflict between Defendants' federal and state duties. Territo's own testimony demonstrates that no government regulation or contract requirement prevented him or Northrop from providing safety warnings:

Q: To your knowledge, is there any Federal regulation or specifications in the contracts with the Navy that would prevent you from putting up a [warning] sign in a Navy vessel?
A: If it was under construction?
Q: Yes.
A: No.

(Exhibit I to motion to remand, p. 143). There is no conflict because Defendants could comply with both their contractual obligations and the state-prescribed duty of care. Thus, Defendants cannot take advantage

of this defense.

Also, the Court finds that Defendants have not established a colorable defense under the LHWCA for the same reasons previously set forth by Judge Duval in *Gauthe,* 1997 WL 3255. The *Gauthe* court addressed these same LHWCA arguments with regard to Defendants in an asbestos exposure case. In rejecting Defendants' arguments, Judge Duval relied on both Louisiana law as well as the U.S. Supreme Court decision in *Sun Ship* to hold that the LHWCA does not preempt, but instead, supplements state remedies available to an injured worker. Thus, a person injured while shipbuilding may maintain an action under either the Louisiana state compensation scheme or the LHWCA. A review of Plaintiff's petition reveals that it was Plaintiff's intent to sue Defendants in state court for state law claims. Thus, it appears that the facts of this specific case do not invoke federal officer jurisdiction.

In further support of the above conclusion is the fact that, in his original Petition filed in state court, Plaintiff **disclaimed** any cause of action which could invoke federal officer jurisdiction. Specifically, Plaintiff pled:
Plaintiffs [sic] **disclaim** any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a **federalenclave**. Plaintiffs also **disclaim** any cause of action or recovery for any injuries resulting from any exposure to asbestos dust caused by any acts or omissions of a party committed at the direction of an officer of the United States Government.

**\*7** (Petition, ¶ 56). Courts have looked to similar **disclaimers** that were filed after removal to remand cases to state court in similar asbestos cases.*Overly,* 1996 WL 532150;*Westbrook,* 2001 WL 902642 (" [t]he court sees no reason not to hold plaintiffs in this case to their waiver of claims arising out of work done on federal jobsites and vessels. This waiver, therefore, justifies remand. If plaintiffs later attempt to reverse course, and are allowed to do so by the state court despite their express waiver, [defendant] can always file for removal once again." ). Also, the Court concludes that its decision to follow Plaintiff's **disclaimer** is further supported by the fact that, unlike the plaintiffs in *Overly* and *Westbrook* who **disclaimed** causes of action post-removal, Plaintiff here **disclaimed** these causes of action in his original petition in state court.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 6

Slip Copy, 2007 WL 1550992 (E.D.La.)

**(Cite as: Slip Copy)**

The Court is unpersuaded, just as Judge McNamara was " unpersuaded" in the *Bradley* case, by the opinions out of the Middle District of Louisiana (*Lalonde; Melford;* and *McFarlain* ) that contrast with those out of this district. First, the *Lalonde* case is inapplicable because the government in *Lalonde* specifically controlled safety matters at a government-owned facility. Here, Avondale is a privately-owned shipyard that contracts with private and public interests, and in which safety officers such as Territo operate wholly independent of any Government control. In *McFarlain,* the Court rejected the assertions that the LHWCA conferred federal jurisdiction and also rejected the argument that the Avondale defendants met their burden of removal of the failure to warn claims based on the government contractor defense. The sticking point for the *McFarlain* Court was the fact that the plaintiff had made a strict liability claim in addition to the failure to warn claim against the Avondale defendants. Here, Plaintiff has amended his petition to omit any strict liability claim. Thus at present, Plaintiff's amended petition only states theories of liability which sound in negligence, which should be remanded according to all Eastern District precedent, as explained above. Accordingly,

**IT IS ORDERED** that Plaintiff's **Motion to Remand (Rec.Doc.11)** should be and hereby is **GRANTED.**This matter is now remanded to the state court from which it was removed.

E.D.La.,2007.
Sheppard v. Northrop Grumman Systems Corp.
Slip Copy, 2007 WL 1550992 (E.D.La.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                          Page 1

Not Reported in F.Supp.2d, 2001 WL 902642 (N.D.Cal.)

**(Cite as: Not Reported in F.Supp.2d)**

▷

Westbrook v. Asbestos Defendants (BHC)

N.D.Cal.,2001.

Only the Westlaw citation is currently available.

United States District Court, N.D. California.

Paul WESTBROOK and Marlene Westbrook,

Plaintiffs,

v.

ASBESTOS DEFENDANTS (BHC), Defendants.

**No. C-01-1661 VRW.**

July 31, 2001.

ORDER

WALKER, J.

*1 Invoking the federal officer removal statute, 28 USC § 1442(a)(1), and the military contractor defense, defendant Todd Shipyards Corp removed this asbestos related tort action to federal court on April 27, 2001. According to Todd, to the extent asbestos was used on its property, the United States Navy required it, giving rise to the military contractors defense and allowing removal. Presently before the court is plaintiffs' motion to remand. For the reasons that follow, the motion is GRANTED.

I

On March 14, 2001, plaintiffs Paul and Marlene Westbrook filed suit in the San Francisco superior court alleging personal injury and loss of consortium against numerous defendants, among them Todd. Plaintiff Paul Westbrook formerly worked with asbestos as an insulator and now suffers from asbestosis and asbestos-related pleural disease. He has an increased risk of developing further conditions, including cancer.

Plaintiffs' suit against Todd arises out of the operation of a facility at which plaintiff worked for certain subcontractors in the 1960s and 1970s. Plaintiff indicates that he worked as an insulator for both Owens Corning Fiberglass Corp (1960s and 1970s) and Roberts Brothers Construction Company (1974) on Todd's premises. Def Exhibits, Exh B, Complaint at 7 & 8. It is not clear from the complaint how much plaintiff worked on United States Navy ships at Todd's facilities.

Against Todd, plaintiffs allege only loss of consortium and " premises owner/contractor liability." Id at 2. This is in contrast with the numerous causes of action brought against other defendants. Plaintiffs allege that Todd:

1. " Should have recognized that the work of said contractors would create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm plaintiff and others unless special precautions were taken;"

2. " Knew or had reason to know, that the contractors it had selected and hired to install, remove, abate or otherwise handle asbestos-containing materials were unfit or unqualified to do so;" and

3. " Failed to use reasonable care to discover whether the contractors it selected and hired to install, remove, abate or otherwise handle asbestos-containing materials were competent or qualified to do so."

Id at 2-3.The precise nature of plaintiffs' allegations against Todd is murky in two ways.

First, the portions of the complaint cited above focus on the negligent hiring of subcontractors (numbers 2 and 3). But plaintiffs explicitly disclaim any claims based on negligent hiring in their reply brief in connection with this motion. In that brief, plaintiffs assert that their cause of action for premises owner/contractor liability has two components: (1) failure to warn of a dangerous condition on the premises; and (2) negligent exercise of retained control over the premises. Reply Br at 3 (citing *Grahn v. Tosco Corporation*, 58 Cal App 4th 1373, 68 Cal Rptr 2d 806 (1997)).

*2 The complaint also fails to make clear to what extent the insulating work that caused plaintiff's injuries was done on United States Navy ships. The complaint lists United States Navy ships and no private ships. But plaintiffs have disclaimed, in writing, any claims arising out of work done on United States Navy ships. See Leroy Decl, Exh A.

In any event, on April 27, 2001, Todd removed the case to this court. Plaintiffs now move to remand to state court.

II

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 902642 (N.D.Cal.)

**(Cite as: Not Reported in F.Supp.2d)**

Page 2

Todd bears the burden of establishing that removal is proper. *Gaus v. Miles, Inc.* 980 F.2d 564, 566 (9th Cir1992). To remove a case failing within the federal-question grant of federal jurisdiction, a defendant would have to show that a federal question appears on the face of a well-pleaded complaint. See *Louisville & Nashville R Co v. Motley,* 211 U.S. 149, 152 (1908). An actual or anticipated federal defense would not justify removal. Id. Removal under the federal officer removal statute, however, is different. That statute allows removal on the basis of a federal defense.

Under 28 USC § 1442(a)(1), " [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office" may remove to federal court. Removal is proper if the moving party can (1) demonstrate that it acted under the direction of a federal officer; (2) raise a colorable defense to plaintiffs' claims; and (3) demonstrate a causal nexus between plaintiffs' claims and acts performed under color of federal office. *Fung v. Abex Corp.* 816 F Supp 569, 571-72 (ND Cal 1992) (citing *Mesa v. California,* 489 U.S. 121, 124-25, 134-35 (1989)); *Jefferson County, Alabama v. Acker,* 527 U.S. 423, 431 (1999) (defense need only be colorable).

In this case, Todd claims that it is shielded from liability by military contractors immunity. This doctrine was set forth in *Boyle v. United Technologies Corp.* 487 U.S. 500 (1988). The *Boyle* Court held that " [l]iability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." Id at 512.

Applying the *Mesa* test to the facts of this case, the court concludes that plaintiffs' motion to remand must be granted for two reasons. First, plaintiffs have asserted, in writing in the state court action, that: " Plaintiff's claims against defendant Todd Shipyards Corporation, exclude plaintiff's asbestos exposure at military and federal government jobsites and aboard U.S. Navy vessels." Leroy Decl, Exh A. To the extent this " stipulation" (as plaintiffs call it) is binding, Todd's ground for removal is eviscerated. If plaintiffs' claims arise only from work done on private ships, not under the direction of any federal officers, Todd's military contractor defense is unavailable.

**\*3** The question then is whether plaintiffs' written waiver is sufficient. The waiver of claims arising out of work done on federal jobsites and vessels is not a " stipulation" between the parties since Todd has not signed it. But another judge in this district has credited such a written disclaimer in a motion to remand. See *Overly v. Raybestos-Manhattan,* 1996 WL 532150 at \*3 (ND Cal 1996). In *Overly,* Judge Illston accepted the plaintiffs' written waiver of claims related to design defects and therefore granted the motion to remand. The court sees no reason not to hold plaintiffs in this case to their waiver of claims arising out of work done on federal jobsites and vessels. This waiver, therefore, justifies remand. If plaintiffs later attempt to reverse course, and are allowed to do so by the state court despite their express waiver, Todd can always file for removal once again.

The motion to remand is also appropriate for a second reason. Even if plaintiffs' claims relate to work done on United States Navy ships, it is not clear that they even implicate the military contractors defense. In terms of the *Mesa* test, prongs (2) or (3) are probably not met. This is because the cause of action plaintiffs bring, based on premises owner/contractor liability, does not turn simply on Todd's use of asbestos. Rather, the claim appears to turn on a failure to warn about the dangers of asbestos and negligent exercise of retained control. The defense: " The Navy made me do it," does not apply to either basis of liability. Todd has shown, through the declaration of Roger B Horne (Exh I), the deposition of Tom Hixson (Exh C) and various military specifications documents (Exh J, K, L & M), that the Navy required Todd to use asbestos insulation. But Todd has not shown that the Navy required it to refrain from issuing warnings. Absent such a showing, Todd has no colorable military contractor defense to a failure to warn claim. See *In re Hawaii Federal Asbestos Cases,* 960 F.2d 806, 812-13 (9th Cir1992); *Overly,* 1996 WL 532150 at \*4; see also *Feidt v Owens Corning Fiberglas Corp.* 153 F3d 124, 129 (3d Cir1998) (discussing district court's remand of failure to warn claim in the face of a military contractors' defense, but affirming remand based on 28 USC § 1447(d)).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 902642 (N.D.Cal.)

**(Cite as: Not Reported in F.Supp.2d)**

Page 3

Todd's military contractors defense would fare no better with respect to the negligent exercise of retained control claim. That claim, as explained in _Grahn v. Tosco,_ 58 Cal App 4th 1373, 68 Cal Rptr 2d 806 (1997), is premised on the notion that " One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Id at 1393.The degree of control Todd retained in this case is not clear. But accepting Todd's contention that it was required by the Navy to use asbestos, the decision to use asbestos cannot give rise to liability under this theory. Only decisions within Todd's control, whether to have the workers use breathers for example, could give rise to liability. Since Todd alleges that only the use of asbestos was required by the Navy, Todd's military contractor defense cannot shield Todd from liability for negligent exercise of retained control.

*4 As the court understands plaintiffs' claims, Todd lacks a colorable military contractor defense. This means that Todd cannot meet prong two of the _Mesa_ test. Another way to describe this situation is to say that Todd does have a colorable military contractor defense, but it is limited to defending against claims arising only out of the choice to use asbestos, because that is the only action that was directed by the government. Under this rubric, it is prong three of the _Mesa_ test that is not met as there is no causal connection between the acts performed under the government's orders and the claims brought by plaintiffs. Either way, given the court's understanding of plaintiffs' claims, Todd would be unable to demonstrate that removal was appropriate even if plaintiffs had not waived their claims arising out of work at government jobsites and on government vessels.

For these reasons, plaintiffs' motion to remand (Doc # 3) is GRANTED. Plaintiffs seek an award of $1563.78, the amount they incurred in attorneys' fees bringing this motion to remand. Under 28 USC § 1447(c), the court may order a removing defendant to pay plaintiffs their " just costs and any actual expenses, including attorney fees, incurred as a result of removal." Whether to grant such an award is within the court's discretion. In this case, the removal was unnecessary. The day before Todd removed this action, plaintiffs waived their claims to damages arising out of work done on federal government jobsites and vessels. As a result, the court concludes that an award of fees is appropriate and awards the requested amount, $1563.78. The amount is supported by the Leroy declaration and appears reasonable.

IT IS SO ORDERED.

N.D.Cal.,2001.
Westbrook v. Asbestos Defendants (BHC)
Not Reported in F.Supp.2d, 2001 WL 902642 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.