MDL 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV 16 2007

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON  MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI), | MDL Docket No. 875 |
| This Document Relates to: | CTO - 291 |
| HENRY BARABIN and GERALDINE BARABIN v.ALBANY INTERNATIONAL CORP., et al. | |
| *Western District of Washington, Case No. CO7-1454 RSL* | |

## DEFENDANTS' BRIEF IN RESPONSE TO PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER 291

Defendants AstenJohnson, Inc. ("Asten") and Scapa Dryer Fabrics, Inc.("Scapa") (collectively, "Defendants") hereby submit their joint opposition to Plaintiffs' Motion to Vacate Conditional Transfer Order 291, which was entered by the Judicial Panel on Multi-District Litigation ("JPML" or "Panel") on October 1, 2007.  Because pretrial proceedings in this case have not concluded, this matter is properly subject to multidistrict litigation.  *See In re Asbestos Products Liability Litigation*, 771 F. Supp. 415, 424 (JPML 1991) (transferring all asbestos-related cases that were "not in trial").

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION TO VACATE CONDITIONAL
TRANSFER ORDER 291 - 1
MDL Docket No. 875, CTO-291 (Western District of
Washington, Case No. C07-1454 RSL)
K:\2038878\00554\20695_KAR\20695P219I

**OFFICIAL FILE COPY**

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

IMAGED NOV 1 9 2007

PLEADING NO. 5 2 5 1

The Panel should also be "reluctant" to vacate a transfer order where, as here, the transferee district court has not issued a suggestion of remand. *See* JPML Rule 7.6(d).

Moreover, the JPML is well-suited to resolve the remaining pre-trial issues in this matter and facilitate settlement. Many of the remaining issues mirror those found in other cases in MDL-875, and the asbestos-related experience of the Panel will promote the just and efficient resolution of these issues and help to avoid inconsistent rulings between district courts. In accordance with proper procedure, Plaintiffs should wait until coordinated pretrial proceedings and settlement negotiations are concluded and only then, if remand is still sought, file a motion for remand. Absent the completion of such events, the Panel should deny Plaintiffs' motion to vacate the conditional transfer order.

## I.

## BACKGROUND

### A.    Procedural History

On December 16, 2006, Plaintiffs Henry and Geraldine Barabin ("Plaintiffs") filed suit in King County Superior Court against twenty-three named defendants. Plaintiffs allege that Mr. Barabin suffers from injuries caused by his exposure to various asbestos-containing products during his employment at the Crown Zellerbach Paper Mill in Camas, WA (the "Camas Mill") and the Texaco Refinery in Port Arthur, Texas. (*See* Declaration of Kevin Rosenfield in Opposition to Plaintiffs' Motion to Vacate ("Rosenfield Decl") ¶6, Ex. B.)

On September 10, 2007, in response to an email inquiry from the state court's bailiff, Plaintiffs' counsel disclosed that only three defendants still remained in the case: Crane Co.; Scapa; and Asten. (Rosenfield Decl. ¶2.) Because diversity jurisdiction now

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION TO VACATE CONDITIONAL
TRANSFER ORDER 291 - 2

MDL Docket No. 875, CTO-291 (Western District of
Washington, Case No. C07-1454 RSL)

K:\2038878\00554\20695_KAR\20695P2191

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

existed, Defendants removed the case to federal court on September 18, 2007 in accordance with 28 U.S.C. § 1446. (*Id.*)

On October 1, 2007, Conditional Transfer Order ("CTO") No. 291 transferred the case to MDL-875 in the Eastern District of Pennsylvania. (*See* CTO-291.)

## B.    Remaining Defendants

Two of the three remaining defendants—Asten and Scapa—are manufacturers of products known as dryer felts or dryer fabrics, which are designed, manufactured, and sold for use in making and drying paper. (Rosenfield Decl. ¶3.) For a period of time, some of these dryer felts and fabrics were woven, in part, using chrysotile-containing yarn, the only type of asbestos used by Asten and Scapa in the manufacture of their dryer felts and fabrics. (*Id.*) Various surveys and tests, however, demonstrate that the level of chrysotile fibers released from these felts during their normal use was, at most, the equivalent of background levels of asbestos found in ambient air. (*Id.* ¶4.)

Defendant Crane Co. is a manufacturer of valves. (*Id.* ¶5.) Mr. Barabin did not ever personally perform any valve repairs, and he recalled assisting co-workers with valve repairs on a mere six different occasions throughout the course of his career. (*Id.*, Ex. A. at 330:14-23; 332:2-22.)   Mr. Barabin does not know for certain whether all of these particular valves were manufactured by Crane Co., nor does he know whether these valves contained asbestos. (*Id.* at 335:6-19.)

Scapa and Asten intend to argue at trial that, if Mr. Barabin suffers from an asbestos-related disease, his injuries are the result of his exposure to various *other* asbestos-containing products found at both the Camas Mill and the Texaco Refinery. (*Id.* ¶7.) As such, the trier of fact will be asked to evaluate the broad spectrum of asbestos-product manufacturers that were present at these sites. (*Id.*)

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION TO VACATE CONDITIONAL
TRANSFER ORDER 291 - 3

MDL Docket No. 875, CTO-291 (Western District of
Washington, Case No. C07-1454 RSL)

K:\2038878\00554\20695_KAR\20695P219I

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE (206) 623-7022

C.    **Remaining Pretrial Proceedings**

Pretrial proceedings in this case are presently at an advanced stage—but still remain materially incomplete.  To date, depositions of various fact and expert witnesses remain uncompleted.  (*Id.* ¶8.)  Defendants are also still attempting to obtain records of asbestos-containing products at the Texaco Refinery and obtain Mr. Barabin's recent medical records.  (*Id.* ¶¶9-10.)  Additionally, numerous motions currently remain pending and are not yet fully briefed.  (*Id.* ¶11.)  Defendants are also still waiting for Plaintiffs to provide deposition designations in compliance with a court order.  (*Id.* ¶12.)

The federal court in this matter has not entered a final pretrial order, nor have Plaintiffs requested that the court issue a suggestion of remand (as set forth by JPML Rule 7.6(d)).  (*Id.* ¶13.)

## II.

## ARGUMENT

A.    **Plaintiffs' Motion is Premature Because Pretrial Proceedings Are Not Yet Complete and this Action is "Not in Trial."**

On July 29, 1991, the Judicial Panel for Multidistrict Litigation issued an order transferring over 25,000 asbestos-related personal injury lawsuits to the Eastern District of Pennsylvania for pre-trial management.  So long as a case was still pending in federal court, the lone criteria to determine the propriety of transfer was whether the case was "not in trial."  *In re Asbestos Products Liability Litigation*, 771 F. Supp. 415, 424 (JPML 1991).  The scope of the Panel's order thus included those cases that were in the late stages of discovery or even on the eve of trial.  *See id.*

In its decision, the Panel expressly recognized that the breadth of its order would result in the transfer of cases that contained unique factual questions or were in the late stages of pre-trial proceedings.  The Panel remarked that, in 1977, it had previously

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION TO VACATE CONDITIONAL
TRANSFER ORDER 291 - 4

MDL Docket No. 875, CTO-291 (Western District of
Washington, Case No. C07-1454 RSL)

K:\2038878\00554\20695_KAR\20695P219I

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

rejected the transfer of various asbestos actions on the grounds that the cases had "factual questions unique to each action" and that "many of these actions already are well advanced." *Id.* at 418 (*quoting In re Asbestos and Asbestos Insulation Material Products Liability Litigation*, 431 F. Supp. 906, 910 (J.P.M.L 1977)).  Nevertheless, the Panel determined that the explosion of asbestos-related lawsuits mandated "a new, streamlined approach," thereby requiring "the centralization of all federal asbestos personal injury/wrongful death actions." *Id.* (emphasis added)[1]

Notably, transfer to the MDL is only improper if the case's "pretrial proceedings" have concluded. *See* 28 U.S.C. § 1407(a).  By definition, "[p]re-trial, as an adjective, means before trial– . . . all judicial proceedings before trial are pretrial proceedings." *In re Plumbing Fixture Cases*, 298 F.Supp. 484, 494 (J.P.M.L. 1968).  This means that pretrial proceedings do not conclude until a final pretrial order is entered, and all prior proceedings are considered pretrial proceedings that may properly remain before the transferee court. *See In re Patenaude*, 210 F.3d 135, 144-45 (3d Cir. 2000); *see also* JMPL Rule 7.6(d) (requiring motion to remand to include "a copy of the transferee district court's final pretrial order, where such order has been entered").[2]

Here, pretrial proceedings in the instant matter have not yet concluded.  Fact and expert witness depositions are currently incomplete. (Rosenfield Decl. ¶8.)  Various

---

[1] Plaintiffs' brief cites various cases related to multidistrict caselaw, but almost every case cited by Plaintiffs was decided prior to the JPML's 1991 order and/or does not involve asbestos-related litigation.

[2] Although 28 U.S.C. § 1407 refers to "coordinated or consolidated pretrial proceedings," its distinction from case-specific pretrial proceedings is effectively meaningless so long as its "common core"—i.e., asbestos-related exposure—is similar to others in MDL 875. *See, e.g., In re Wilson*, 451 F.3d 161, 170 (3d Cir. 2006) ("[T]he phrase "'coordinated or consolidated' is to be interpreted broadly... [A] proceeding that relates only to a single individual's case or claim can nonetheless be coordinated, as coordination can be found even if common issues are present only in relation to cases that have already been terminated."); *Patenaude*, 210 F.3d at 144 ("To be coordinated, it is not necessary that common issues are being contemporaneously addressed.").

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION TO VACATE CONDITIONAL
TRANSFER ORDER 291 - 5

MDL Docket No. 875, CTO-291 (Western District of
Washington, Case No. C07-1454 RSL)

K:\2038878\00554\20695_KAR\20695P219l

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

motions remain pending and not fully briefed, and select medical records and work site records remain unproduced. (*Id.* ¶¶9-12.) Defendants do not deny that this case is in an advanced stage of pretrial litigation, but this fact alone is not enough to avert transfer or distinguish the case from other asbestos-related cases in MDL-875 and CTO-291 subject to multi-district litigation. Simply put, Plaintiffs' motion to vacate the transfer order is essentially a premature motion for remand. Plaintiffs should wait until coordinated pretrial proceedings and settlement negotiations are concluded and then, if the case remains unresolved, file a motion for remand.

Due to the breadth of the Panel's 1991 transfer order and the necessities of asbestos litigation, Plaintiffs' motion to vacate is improper at this time. The instant case is not "in trial" and is therefore subject to multi-district litigation. The Panel should deny Plaintiffs' motion to vacate the conditional transfer order.

**B.    Plaintiffs Never Obtained a Suggestion of Remand from the Transferee District Court, Nor Complied with JPML Rule 7.6(d).**

Before filing the instant motion, Plaintiffs neglected to request that the district court issue a suggestion of remand. The Rules for the JPML expressly state that "the Panel is reluctant to order remand absent a suggestion of remand from the transferee district court." JPML Rule 7.6(d). Absent such a suggestion—or any indication whatsoever that the district court supports a remand of the case—the Panel should be "reluctant" to vacate the transfer order and remand the case. *Id.*

Moreover, Plaintiffs failed to adhere to the requirements of JPML Rule 7.6 in seeking remand. This Rule requires that such a motion must contain an affidavit requesting the following: (A) "whether the movant requested a suggestion of remand from the transferee court… and, if no such request was made, why"; and (B) "whether all common discovery and pretrial proceedings have been completed… and if not, what

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION TO VACATE CONDITIONAL
TRANSFER ORDER 291 - 6

MDL Docket No. 875, CTO-291 (Western District of
Washington, Case No. C07-1454 RSL)

K:\203887\00554\20695_KAR\20695P219I

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   remains to be done." *See* JPML Rule 7.6(d)(i).  Plaintiffs' motion, however, contains

2   neither.  Although the motion contains an affidavit from Plaintiffs' counsel, Mr.

3   Herschensohn, nowhere does the affidavit state whether the movant requested a

4   suggestion of remand, nor does the affidavit explain why he never requested one.  (*See*

5   Declaration of Zachary Herschensohn.)  Furthermore, Mr. Herschensohn fails to properly

6   state whether pretrial proceedings have been completed and explain what still remains to

7   be done.  Instead of pointing out to the Panel that various motions remain pending and

8   limited discovery remains to be done, Mr. Herschensohn's declaration states simply that

9   the parties have "completed their trial preparations."  (*Id.*)  Such a statement is inaccurate

10  and fails to adhere to the level of detail required by Rule 7.6.

11          Because of Plaintiffs' failure to request a suggestion of remand from the transferee

12  court and adhere to the affidavit requirements of JMPL Rule 7.6(d), the Panel should

13  reject Plaintiffs' attempt to remand the instant case.

14  **C.      The JPML is Well-Suited to Resolve Remaining Pre-Trial Issues in the
15          Instant Case and Facilitate Settlement.**

16          Plaintiffs' motion to vacate does not provide any evidence that their case is not the

17  typical asbestos-related lawsuit that is uniformly subject to multi-district litigation.  As a

18  personal injury lawsuit based on alleged exposure to various asbestos-containing products,

19  there is no question that Plaintiffs' case is very similar to other cases in MDL 875.  These

20  similarities—especially in conjunction with the asbestos-related experience of the

21  JPML—support the inclusion of the instant case in multidistrict litigation.  As discussed

22  below, such inclusion will promote the just and efficient conduct of the litigation and help

23  avoid inconsistent rulings.

24          Plaintiffs do not dispute that their lawsuit involves the same injuries, products, and

25  claims that predominate in most of the cases within MDL 875.  Instead, Plaintiffs insist

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION TO VACATE CONDITIONAL
TRANSFER ORDER 291 - 7

MDL Docket No. 875, CTO-291 (Western District of
Washington, Case No. C07-1454 RSL)

K:\203887\00554\20695_KAR\20695P219I

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1
2
3
4
5
6
7
8
9
10

that the case is "different in its simplicity and limited scope" because only three defendants presently remain in the action. (Pl. Mot. at 5.)  This statement, however, ignores the fundamental scope and burdens of asbestos-related litigation.  Because Defendants intend to show that the alleged contact with their products did not cause Mr. Barabin's injuries, the entire universe of Mr. Barabin's asbestos exposure remains at issue. Defendants will present evidence indicative of the numerous asbestos-containing products that were present at the paper mill and oil refinery where Mr. Barabin worked, and the amount of asbestos fibers released by such products.  Most of these products are, undoubtedly, the same products and manufacturers currently involved in the various cases pending within MDL 875.

11
12
13
14
15
16
17
18
19

Indeed, many of the remaining pretrial issues in this matter are the same issues that face many of the cases in the MDL.  Defendants, for instance, filed pending motions to limit the testimony of several of Plaintiffs' experts, many of whom routinely testify in asbestos-related matters all across the nation. (*See* Rosenfield Decl. ¶11.)  The methodologies utilized by these experts are likely the same as those previously (and currently) used by the experts in many of the other MDL cases.  As such, the expertise and familiarity of MDL judges with these methodologies and issues will assist in the just and efficient resolution of the filed motions and help avoid inconsistent rulings from one district to another.

20
21
22
23
24
25

Similarly, Defendants also filed a motion regarding the effect of low-dose exposure to asbestos and whether such exposure can cause mesothelioma. (*Id.*)  Again, this issue predominates many, if not most, of the cases in the MDL.  The dosage requirements of mesothelioma are a critical question that affects the majority of cases in

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION TO VACATE CONDITIONAL
TRANSFER ORDER 291 - 8
MDL Docket No. 875, CTO-291 (Western District of
Washington, Case No. C07-1454 RSL)
K:\2038878\00554\20695_KAR\20695P2191

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    the MDL.  As such, the familiarity of MDL judges with this issue and the desire to avoid

2    inconsistent rulings favor the inclusion of this case in MDL litigation.[3]

3         Finally, the JPML is experienced in facilitating settlements in asbestos-related

4    cases and can potentially help the parties achieve resolution before trial, and Asten is

5    amenable to engaging in settlement negotiations with the assistance of an MDL judge.

6    (*Id.* ¶15.)  The JPML has achieved substantial success in resolving those cases assigned to

7    MDL 875, and this case may ultimately prove no different.  *See Patenaude*, 210 F.3d at

8    140.

9         This matter is very similar to other asbestos-related cases in MDL-875, and—

10    aided by the knowledge and experience of the JPML—the temporary inclusion of this case

11    in multidistrict litigation will promote the just and efficient conduct of the litigation and

12    help avoid inconsistent rulings.

13

14                     **III.**

15             **<u>CONCLUSION</u>**

16         Pretrial proceedings in this case have not yet concluded, and the transferee district

17    court has not issued a suggestion of remand.  Accordingly, Plaintiffs should wait until

18    coordinated pretrial proceedings and settlement negotiations are concluded and only then,

19    if remand is still sought, file a motion for remand.  The nature of Mr. Barabin's injuries

20    does not, on its own, permit Plaintiffs to avert multidistrict litigation, and—for the reasons

21    / /

22

23

24    _____

25    [3] Moreover, the District Court for the Western District of Washington does not typically handle
asbestos-related cases. (Rosenfield Decl. ¶14.)  In light of its substantial experience with asbestos-
related matters, the Panel could therefore provide valuable assistance in efficiently evaluating and
resolving remaining issues.

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION TO VACATE CONDITIONAL
TRANSFER ORDER 291 - 9

MDL Docket No. 875, CTO-291 (Western District of
Washington, Case No. C07-1454 RSL)

K:\2038878\00554\20695_KAR\20695P219I

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

set forth above—the Panel should deny Plaintiffs' motion to vacate the conditional transfer order.

DATED this 15th day of November, 2007.

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP

By _____
G. William Shaw, WSBA # 8573
Kevin A. Rosenfield, WSBA # 34972
925 Fourth Avenue Suite 2900
Seattle WA 98104-1158
Telephone: (206) 623-7580
Facsimile: (206) 370-6309
Attorneys for Defendant
AstenJohnson, Inc.

WILLIAMS, KASTNER & GIBBS, PLLC

By _____
Jan C. Kirkwood, WSBA # 11092
Two Union Square
601 Union Street, Suite 4100
P.O. Box 21926
Seattle, Washington 98101
Telephone: 206-628-2765
Facsimile: 206-628-6611
Attorneys for Defendant
Scapa Dryer Fabrics, Inc.

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION TO VACATE CONDITIONAL
TRANSFER ORDER 291 - 10

MDL Docket No. 875, CTO-291 (Western District of
Washington, Case No. C07-1454 RSL)

K:\2038878\00554\20695_KAR\20695P219I

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE: (206) 623-7022

2001 NOV 16  A 10: 29
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION
RECEIVED
CLERK'S OFFICE

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**NOV 16 2007**

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON  MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI), | MDL Docket No. 875 |
| This Document Relates to: | CTO - 291 |
| HENRY BARABIN and GERALDINE BARABIN v.ALBANY INTERNATIONAL CORP., et al. | |
| *Western District of Washington,*<br>*Case No. CO7-1454 RSL* | |

## DECLARATION OF KEVIN A. ROSENFIELD IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO VACATE

I, KEVIN A. ROSENFIELD, declare as follows:

1.     I am an attorney at Kirkpatrick & Lockhart Preston Gates Ellis LLP and one of the attorneys for defendant AstenJohnson, Inc. ("Asten") in this action.  I have personal knowledge of the facts set forth in this declaration, and I am competent to testify.

2.     On September 10, 2007, in response to an email inquiry from the state court's bailiff, Plaintiffs' counsel disclosed that only three defendants still remained in the case: Crane Co.; Scapa Dryer Fabrics, Inc. ("Scapa"); and Asten.  Because diversity jurisdiction now existed, Defendants removed the case to federal court on September 18, 2007 in accordance with 28 U.S.C. § 1446.

DECLARATION OF KEVIN A. ROSENFIELD  - 1

MDL Docket No. 875, CTO-291 (Western District of
Washington, Case No. C07-1454 RSL)

K:\2038878\00554\20695_KAR\20695P219L

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE (206) 623-7022

3.     Two of the three remaining defendants—Asten and Scapa—are both manufacturers of products known as dryer felts or dryer fabrics, which are designed, manufactured, and sold for use making and drying paper.  For a period of time, some of these dryer felts and fabrics were woven, in part, using chrysotile-containing yarn, the only type of asbestos used by Asten and Scapa in the manufacture of their dryer felts and fabrics.

4.     Various surveys and tests demonstrate that the level of chrysotile fibers released from chrysotile-containing dryer felts used in the normal course of the paper-making process was far below applicable governmental standards, and, in most instances, was the functional equivalent of background levels of asbestos found in ambient air.  *See* Wendlick, J.D., *Asbestos Dust Testing - Machine Room #1*, Weyerhaeuser Co. (1973); Salazar, A., *Asbestos in Paper Machines* (1st Review), PALO ALTO MEDICAL CLINIC/ENVIRONMENTAL HEALTH SCIENCES (1977); and Salazar, A., *Asbestos in Paper Machines (2nd Review)*, PALO ALTO MEDICAL CLINIC/ENVIRONMENTAL HEALTH SCIENCES (1978); RJ LEE GROUP, *Blowdown Testing of Asten Dryer Felts and Fabrics*, (1998); *Testing Asbestos-Containing Dryer Felts for Asbestos Fiber Release* at the WESTERN MICHIGAN UNIVERSITY PILOT PLANT (2001).

5.     Defendant Crane Co. is a manufacturer of valves.  Mr. Barabin did not personally perform any valve repairs, and he recalled assisting others with valve repairs on a mere six different occasions.  Mr. Barabin does not know for certain whether these particular valves were Crane Co. valves, or whether these valves contained asbestos.  Attached as **Exhibit A** is a true and correct copy of relevant excerpts from the discovery deposition of Henry Barabin, taken March 22, 2007.

6.     Plaintiffs contend that Mr. Barabin was exposed to Defendants' products while employed at the Crown Zellerbach Paper Mill in Camas, WA (the "Camas Mill").

DECLARATION OF KEVIN A. ROSENFIELD  - 2

MDL Docket No. 875, CTO-291 (Western District of
Washington, Case No. C07-1454 RSL)

K:\2038878\00554\20695_KAR\20695P219L

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Additionally, Mr. Barabin worked at the Texaco Refinery in Port Arthur, Texas. Attached as **Exhibit B** is a true and correct copy of relevant excerpts from Plaintiffs' answers to Defendants' Style First Set of Interrogatories.

7.      Asten intends to argue at trial that, if Mr. Barabin suffers from an asbestos-related disease, his injuries are the result of his exposure to various other asbestos-containing products found at his previous work sites. As such, the trier of fact will be asked to evaluate the broad spectrum of asbestos-product manufacturers that were present at these sites.

8.      Pretrial proceedings remain incomplete. To date, both parties have yet to complete the depositions of various fact and expert witnesses. Defendants still seek to depose Mr. Barabin's brother, Leroy, who was a co-worker of Mr. Barabin at the Texaco Refinery. Additionally, Plaintiffs have indicated their intent to depose the following witnesses: Dr. Samuel Hammar, who is the pathologist in this matter for both Scapa and Asten; Charles Blake, an industrial hygienist and witness for Crane Co.; and Dorsett Smith, MD, a pulmonologist and B-reader for Crane Co.

9.      Defendants are also still seeking to obtain records of asbestos-containing products at the Texaco Refinery, which is subject to a third-party subpoena. Defendants have been unable to obtain the entirety of these records, although they expect to receive these documents shortly. Defendants are currently awaiting final approval from counsel for Texaco and the Environmental Protection Agency, which should result in the release of the remaining documents.

10.     Additionally, Defendants seek to obtain Mr. Barabin's recent medical records. Plaintiffs have not returned stipulations for the release of these records (despite Defendants' repeated requests), so Defendants have not yet obtained them.

DECLARATION OF KEVIN A. ROSENFIELD - 3

MDL Docket No. 875, CTO-291 (Western District of
Washington, Case No. C07-1454 RSL)

K:\2038878\00554\20695_KAR\20695P219L

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

11.     All parties filed numerous motions in this action that are still unresolved and have not yet been fully briefed.  These include, but are not limited to, the following motions:

- Plaintiffs' motion to exclude evidence that all persons are exposed to ambient or background levels of asbestos.

- Asten's motion to exclude the opinion of Plaintiffs' experts that each and every inhalation of asbestos —no matter how slight— operated as an indivisible and cumulative cause of Mr. Barabin's injuries. ("Motion to Exclude Testimony That Every Asbestos Fiber is Causative")

- Asten's motion to exclude the expert testimony of Kenneth Cohen on the grounds that he not qualified to testify as an expert and his methodology and findings regarding asbestos exposure are not generally accepted within the relevant scientific community. ("Motion to Exclude Kenneth Cohen")

- Asten's motion to exclude testimony from Plaintiffs' expert, James Millette, regarding tests he performed in 1998 and 2003 on dryer felt materials. ("Motion to Exclude Certain Testimony of James Millette")

- Scapa's motion to exclude all evidence relating to the Asbestos Textile Institute.

- Asten's motion to exclude the expert testimony of Arnold Brody, Ph.D.

- Crane Co.'s motion to exclude the Southern Power and Light Advertisers Index and Articles.

- Crane Co.'s motion to exclude videos purporting to show release of asbestos fibers by use of Tyndall Lighting.

- Defendants' omnibus motions in limine, as filed by Crane Co., Scapa, and Asten.

- Plaintiffs' omnibus motions in limine.

12.     Defendants are also still waiting for Plaintiffs to properly designate the depositions that it intends to use at trial.  On September 14, 2007, the court ordered

DECLARATION OF KEVIN A. ROSENFIELD  - 4

MDL Docket No. 875, CTO-291 (Western District of Washington, Case No. C07-1454 RSL)

K:\2038878\00554\20695_KAR\20695P219L

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Plaintiffs "to provide specific page and  line designations of the depositions they intend to present at trial."

13.     The federal court in this matter, the United States District Court for the Western District of Washington, has not entered a final pretrial order.  Plaintiffs have not requested that the court provide a suggestion of remand, nor has the court ever provided one.

14.     The District Court for the Western District of Washington does not typically handle asbestos-related cases.

15.     Although settlement negotiations previously proved unsuccessful, Asten is amenable to engaging again in settlement negotiations with the assistance of an MDL judge.


I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.


EXECUTED this 15th day of November, 2007 at Seattle, Washington.

Kevin A. Rosenfield
Kirkpatrick & Lockhart
Preston Gates Ellis LLP
925 Fourth Avenue, Suite 2900
Seattle, WA  98104
Phone:  (206) 623-7580

DECLARATION OF KEVIN A. ROSENFIELD  - 5
MDL Docket No. 875, CTO-291 (Western District of
Washington, Case No. C07-1454 RSL)
K:\2038878\00554\20695_KAR\20695P219L

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**NOV 16 2007**

FILED
CLERK'S OFFICE

1

2

3

4

5

6            BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

7   IN RE: ASBESOTS PRODUCTS
    LIABILITY LITIGATION (NO. VI),          MDL DOCKET NO. 875
8                                           CTO - 291
    This Document Relates to:
9
    HENRY BARABIN and GERALDINE
10  BARABIN v. ALBANY
    INTERNATIONAL CORP., et al.
11

12

13                    UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF WASHINGTON
14                            AT SEATTLE

15  HENRY BARABIN and GERALDINE
    BARABIN,                                No. C07-1454 RSL
16
                              Plaintiffs,   King County Superior Court
17                                          Cause No. 06-2-39452-6 SEA
          v.
18                                          DECLARATION OF SERVICE
    ALBANY INTERNATIONAL CORP.;
19  et al.,

20                            Defendants.

21        I am employed by the law firm of Kirkpatrick & Lockhart Preston Gates Ellis LLP.

22  I am over the age of eighteen years and not a party to the within cause. My business

23  address is 925 4th Avenue, Suite 2900, Seattle, Washington 98104.

24        On the date below, I caused to be served the within **DEFENDANTS' BRIEF IN**

25  **RESPONSE TO PLAINTIFFS' MOTION TO VACATE CONDITIONAL**

DECLARATION OF SERVICE - 1
MDL DOCKET NO. 875, CTO-291
(Western District of Washington Case          KIRKPATRICK & LOCKHART
No. C07-1454 RSL)                             PRESTON GATES ELLIS LLP
                                              925 FOURTH AVENUE
K:\2038878\00554\20514_GWS\20514P27B1              SUITE 2900
                                              SEATTLE, WASHINGTON 98104-1158
                                              TELEPHONE: (206) 623-7580
                                              FACSIMILE: (206) 623-7022

1  **TRANSFER ORDER 291** and **DECLARATION OF KEVIN A. ROSENFIELD IN**

2  **SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO**

3  **VACATE** to the parties listed below by transmitting a true copy thereof in the following

4  manner unless otherwise indicated.

5  <u>XX</u>   I caused each of the above document(s) to be placed in a sealed envelope, first
       class postage thereon prepaid, addressed and served on the attorneys/parties listed
6       below.

7  ____   The above document was transmitted by facsimile transmission to the
       attorneys/parties listed below.

8
   ____   I delivered by hand this date the above listed document(s) in an envelope to the
9        offices of the attorneys/parties listed below.

10       I declare under penalty of perjury and under the laws of the State of Washington

11  (RCW 9A.72.085) that the foregoing is true and correct.

12       Executed at Seattle, Washington this ____ day of November, 2007.

13

14                              Laura G. White, Legal Secretary

15

| 16 | RICHARD C. BINZLEY<br>Tompson Hine, LLP<br>127 Public Square<br>3900 Key Center<br>Cleveland, OH 44144 | GENE LOCKS<br>Locks Law Firm, LLC<br>1500 Walnut Street<br>Philadelphia, PA 19102 |
|---|---|---|
| 19 | EDWARD J. CASS<br>Gallagher, Sharp, Fulton & Norman<br>Bulkley Building, 7th Floor<br>1501 Euclid Avenue<br>Cleveland, OH 44115 | RONALD L. MOTLEY<br>Motley Rice, LLL<br>PO Box 1792<br>28 Bridgeside Boulevard<br>Mt. Pleasant, SC 29464 |
| 22 | ADAM M. CHUD<br>Goodwin Procter, LLP<br>901 New York Avenue, NW<br>Washington, DC 20001 | JOHN J. REPCHECK<br>Marks, O'Neill, O'Brien & Courtney, PC<br>3200 Gulf Tower<br>707 Grant Street<br>Pittsburgh, PA 15219 |

25



DECLARATION OF SERVICE - 2
MDL DOCKET NO. 875, CTO-291
(Western District of Washington Case
No. C07-1454 RSL)

K:\2038878\00554\20514_GWS\20514P27B1

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

| | |
|---|---|
| DAVID A. DAMICO<br>Burns, White & Hickton, LLC<br>Four Northshore Center<br>106 Isabella Street<br>Pittsburgh, PA 15212 | JOHN D. ROVEN<br>Roven-Kaplan, LLP<br>2190 North Loop West, Suite 410<br>Houston, TX 77018 |
| RAYMOND P. FORCENO<br>Forenco & Hannon<br>111 S. Independence Mall East<br>The Bourse, Suite 1000<br>Philadelphia, PA 19106-2574 | RICHARD D. SCHUSTER<br>Vorys, Sater, Seymour & Pease, LLP<br>52 East Gray Street<br>PO Box 1008<br>Columbis, OH 43216-1008 |
| ELLEN B. FURMAN<br>Goldfein & Hosmer<br>1600 Market Street<br>33rd Floor<br>Philadelphia, PA 19103 | NEIL SELMAN<br>Selman, Breitman & Burgess<br>11766 Wilshire Boulevard<br>Sixth Floor<br>Los Angeles, CA 90025 |
| SUSAN M. HANSEN<br>Brownson & Ballou<br>225 South Sixth Street, Suite 4800<br>Minneapolis, MN 55402 | ROBERT N. SPINELLI<br>Kelley, Jasons, McGuire & Spinelli, LLP<br>Centre Square West<br>15th Floor<br>Philadelphia, PA 19102 |
| REGINALD S. KRAMER<br>Oldham & Dowling<br>195 South Main Street, Suite 300<br>Akron, OH 44308-1314 | ROBERT E. SWICKLE<br>Jaques Admiralty Law Firm, PC<br>1370 Penobscot Building<br>645 Griswold Street<br>The Maritime Asbestosis Legal Clinic<br>Detroit, MI 48226-4192 |
| DAVID C. LANDIN<br>Hunton & Williams, LLP<br>Riverfront Plaza, East Tower<br>951 East Dyrd Street<br>Richmond, VA 23219 | ANDREW J. TREVELISE<br>Reed Smith LLP<br>2500 One Liberty Place<br>1650 Market Street<br>Phildelphia, PA 19103 |
| JAMES K. WESTON, II<br>Tom Riley Law Firm<br>4040 First Avenue, NE<br>PO Box 998<br>Cedar Rapids, IA 52406 | BARRY N. MESHER<br>BRIAN D. ZERINGER<br>Lane Powell PC<br>1420 Fifth Avenue, Suite 4100<br>Seattle, WA 98101-2338<br>**Attorneys for Crane Co.** |

DECLARATION OF SERVICE - 3
MDL DOCKET NO. 875, CTO-291
(Western District of Washington Case
No. C07-1454 RSL)

K:\2038878\00554\20514_GWS\20514P27B1

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE (206) 623-7022

| | |
|---|---|
| 1 | ZACHARY HERSCHENSOHN<br>Brayton Purcell LLP<br>Columbia Square Building<br>111 SW Columbia Street, Suite 250<br>Portland, OR 97201<br>**Attorneys for Barabins** | CHRISTOPHER MARKS<br>JAN KIRKWOOD<br>GEORGE S. PITCHER<br>Williams, Kastner & Gibbs, PLLC<br>Two Union Square, Suite 4100<br>PO Box 219226<br>Seattle, WA 98111-3926<br>**Attorneys for Scapa Dryer Fabrics, Inc.** |

1

2

3

4

5

| | |
|---|---|
| 6 | US District Court, Western District of<br>Washington<br>700 Stewart Street<br>Seattle, WA 98101 | |

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DECLARATION OF SERVICE - 4
MDL DOCKET NO. 875, CTO-291
(Western District of Washington Case
No. C07-1454 RSL)

K:\2038878\00554\20514_GWS\20514P27B1

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

# Exhibit A

3/22/2007 Discovery Depo of Henry Barabin   Vol. 2
Barabin v.  Albany, et al.

Page 229

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF KING

HENRY BARABIN and GERALDINE     )
BARABIN,                        )
                                )
            Plaintiffs,          )
                                )Cause No.
vs.                             )06-2-39452-6 SEA
                                )
ALBANY INTERNATIONAL CORP., et  )
al.,                            )
                                )
            Defendants.          )
                                )

DISCOVERY DEPOSITION OF HENRY BARABIN
VOLUME II, Pages 229 through 374

Surprise, Arizona
March 22, 2007
9:40 a.m.

(COPY)

Prepared by:
JoAnn Klemm, RPR
Certified Reporter #50022

KLEMM REPORTING SERVICES

23425 North 39th Drive, Suite 104-182

Glendale, Arizona  85310

(623) 581-8503

63e6c883-b766-43e7-8bfb-c28d890943d4

3/22/2007 Discovery Depo of Henry Barabin   Vol. 2
Barabin v.   Albany, et al.

Page 330

1 and 8.
2    How frequently would you do assistance to valve
3 repairs with respect to machines 7 and 8?
4    A.  You're talking over a long period.  I would say
5 three times simply because I don't remember exactly.
6    Q.  Three times total?
7    A.  Uh-huh, three times.
8    MR. JUDD:  Was that a yes?
9    THE WITNESS:  Yes.  I'm sorry.
10    Q.  BY MR. SINGH:  On machine 20, how many times do
11 you believe that you assisted with valve repairs?
12    A.  I believe that might have been three times.  I
13 would say three times, and that's just a guesstimate.
14    Q.  And I just want to clarify.  You remember doing
15 this three times on machine 20 and three times total
16 between 7 and 8 or three times for 7 and three times for
17 8?
18    A.  That I can't tell you definitely, because I
19 don't remember exactly -- I would say three times, but I
20 couldn't tell you exactly how many times, because we had
21 a lot of valves, and valves were always sticking.  We had
22 to adjust the valves or whatever.  To say exactly how
23 many times, I couldn't tell you that.
24    Q.  That goes to my next question.  What type of
25 valves were you working on?

Page 331

1    A.  I remember Crane or Crane Co.
2    Q.  Can you describe the valve in general, other
3 than the name that you associate with it?
4    A.  They hooked on each end of a pipe, and they had
5 a sort of like a -- I don't know what you call it -- a
6 flip in it.  When you wanted it to pump or not to open or
7 close, they had a mechanism that opened and closed the
8 valve.  Most of the time that was done with the
9 electricity, I would imagine, but that's as far as I know
10 about the valves.
11    Q.  And what type of material was flowing through
12 these valves?
13    A.  Stock.
14    Q.  And was it hot?
15    A.  Yes, most of our stock was hot.
16    Q.  Do you know how old these valves were that you
17 were working on?
18    A.  No idea.
19    Q.  And when we're talking about your assisting
20 millwrights with valve repairs, what exactly is that;
21 what exactly were you doing?
22    A.  Reach him this.  Reach him that.
23    Q.  I'm sorry?
24    A.  Reach him this.  Reach him that.
25    Q.  So could you elaborate?  I'm not sure I

Page 332

1 understand.
2    A.  I would give him whatever he would ask me to
3 reach him or give him.  If he was taking the valves out,
4 I would probably get on the ladder and help him to bring
5 the valve down, if it was a big one.  As far as repairing
6 the valve, that was his job.
7    Q.  Okay.  So during these occasions when you were
8 assisting him, you would be standing pretty close to the
9 valve?
10    A.  Yes, I would be standing close to him.
11    Q.  Like within a few feet?
12    A.  Yes.
13    Q.  And how long would these projects last when he
14 was repairing the valve?
15    A.  Again, that all depends.  There was no set time
16 to tell you exact.  It took 20 minutes or hour, hour and
17 a half.  I don't know.
18    Q.  Would you say that 90 minutes was the longest
19 it would take or longer than that?
20    A.  It all depends.  Sometimes 90 minutes;
21 sometimes less than 90 minutes.  It all depends what was
22 wrong with the valve.
23    Q.  Do you remember any of those projects where you
24 were assisting a millwright on a valve repair lasting
25 more than 90 minutes?

Page 333

1    A.  If he had to take the valve down to do whatever
2 he needed to do with that, yes.
3    Q.  If he took the valve down, would you be with
4 him the entire time?
5    A.  Yes, if the machine was down and that was the
6 particular thing we were working on and was trying to get
7 it back online, yes, I would be with him.
8    Q.  And during one of these projects, were you
9 there to hand the millwright things that he needs for him
10 to perform his task, right?
11    A.  Yes, that was it.
12    Q.  During the entire -- let's say just as an
13 example, one 30-minute -- let's say that it took him
14 30 minutes to repair the valve.  You would be standing
15 there right next to him the entire time?
16    A.  In the general area of where he was, yes, I
17 would be.
18    Q.  When I say "right next to him," within five
19 feet?
20    A.  Yes.
21    Q.  And when you're getting him things, where are
22 those tools and equipment located?
23    A.  Probably below the -- if he was up on the
24 ladder, they were down, and I would reach him up whatever
25 he wanted from the floor to the ladder.

27 (Pages 330 to 333)

63e6c883-b766-43e7-8bfb-c26d890943d4

3/22/2007 Discovery Depo of Henry Barabin   Vol. 2
Barabin v.   Albany, et al.

Page 334

1      Q.  So sometimes during these projects, he would be
2  up on a ladder, and you would be waiting down --
3      A.  Yes.
4      Q.  -- on the ground?
5      A.  On the floor, yes.
6      Q.  How high would the ladder be?
7      A.  I have no idea.  All depends how high the valve
8  was.
9      Q.  Of the times that you assisted the millwright
10  in doing a valve repair, about what -- how many of those
11  times was there a ladder involved?
12      A.  I don't know.  We had tons of valves.  I mean,
13  if you've ever been to a paper machine, that's all you
14  have are valves and pumps and pipes.
15      Q.  Is there any other kind of work that you did in
16  assisting the millwright other than what you've already
17  told me?
18      A.  No.
19      Q.  Now, you told me that you recalled working
20  around -- some of these valves that you worked around
21  were Crane Co. valves?
22      A.  Yes.
23      Q.  And how do you know that?
24      A.  Written on the valve.
25      Q.  So you have a specific recollection of seeing

Page 335

1  "Crane Co." written on the valve that you were helping
2  with?
3      A.  On some of the valves, yes.
4      Q.  How many of those do you --
5      A.  I don't know.
6      Q.  Some of them may have been manufactured by
7  companies other than Crane Co.?
8      A.  Yes.
9      Q.  But you know for sure that some of them, at
10  least, were Crane Co. valves?
11      A.  Yes.
12      Q.  Are there any other products that you've worked
13  with or around that you associate with Crane Co. other
14  than what you just told me?
15      A.  Outside of valves, I can't remember anything
16  else at Crane Co.
17      Q.  Do you know whether these valves that you were
18  helping the millwrights work on contained asbestos?
19      A.  No, I have no idea.
20      MR. SINGH:  That's all I have.  Thank you.
21
22              EXAMINATION
23  BY MS. WOLINSKY:
24      Q.  Hi, my name is Faith Wolinsky.  Hopefully, I
25  have a few questions.

Page 336

1      Have you ever heard of a company called
2  Garlock?  That's G-a-r-l-o-c-k.
3      A.  I have heard of the name, but I can't tell you
4  exactly -- I think it was valves, also.  Gaskets, I think
5  it was, but I couldn't swear to it.
6      Q.  Okay.  Do you recall -- bear with me one
7  moment.
8      Do you recall working while you were a fourth
9  hand -- while you were fourth man, was that the only time
10  that you removed and replaced gaskets on your own?
11      A.  Well, most of the gaskets I replaced on my own
12  was when I was a filterman.
13      Q.  The filterman?
14      A.  On the other gaskets I was working on, it was
15  with the millwright.
16      Q.  The millwright.  I know you've been asked this,
17  and I do apologize I have to ask it again.
18      Do you recall the brand name or manufacturer of
19  the gaskets you worked with?
20      A.  No, I don't.
21      Q.  So you don't recall Garlock being one of those
22  gaskets?
23      A.  I remember the name Garlock, but whether it was
24  on a gasket or wherever, I can't remember exactly where I
25  saw it.

Page 337

1      Q.  Okay.  You have no clear memory of Garlock
2  being either on the gasket or on the packaging or
3  anywhere else when you were --
4      A.  I can't swear I saw it on the gasket, no, I
5  couldn't.
6      Q.  What about on packing materials; did they come
7  in packages?
8      A.  The packing or --
9      Q.  The packing?
10      A.  I don't remember exactly what the packing
11  material came in.  I remember it wrapped in
12  cellophane-type stuff.
13      Q.  Do you recall any writing being on the roll or
14  the spool or anything else?
15      A.  There was writing on it, but I don't recall
16  what it says.
17      MS. WOLINSKY:  All right.  Thank you.  I think
18  that's all I have.  Thank you.
19      MR. JUDD:  Anybody else in the room?
20      MR. RUBENSTEIN:  I'm going to ask follow-up.
21      MR. PITCHER:  I have a handful of follow-up.
22      MR. RUBENSTEIN:  I want to get everybody
23  through.
24      MR. PITCHER:  Has everybody on the phone gone
25  once?

28 (Pages 334 to 337)

KLEMM REPORTING SERVICES   -   (623) 581-8503

# Exhibit B

Rs

RECEIVED

FEB 2 8 2007

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP

1

2

3

4

5

6

7

8                    IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

9                          IN AND FOR THE COUNTY OF KING

10   HENRY BARABIN and GERALDINE            )    Cause No. 06-2-39452-6SEA
     BARABIN,                               )
11                                          )    DEFENDANTS' STYLE FIRST SET OF
                      Plaintiffs,           )    INTERROGATORIES PROPOUNDED
12                                          )    TO PLAINTIFF AND ANSWERS
           v.                               )    THERETO
13                                          )    _____
     ALBANY INTERNATIONAL CORP., et         )
14   al.,                                   )
                                            )
15                    Defendants.           )
                                            )
16   _____

17   TO:        HENRY BARABIN, Plaintiff

18   AND TO:    Zachary B. Herschensohn and Brayton Purcell, LLP, Attorneys for Plaintiff

19         In accordance with CR 26 and CR 33 and the applicable style order governing asbestos

20   litigation, you will please answer the following interrogatories, separately and fully, under oath,

21   within sixty (60) days of the date of service of these interrogatories upon you or within the time

22   periods set by the appropriate style order.

23         These interrogatories are to be treated as continuing.  If information is not available

24   within the time limits of the Civil Rules, you must answer each interrogatory as fully as possible

25   within the time limit and furnish additional information when it becomes available.  If additional

26   information is discovered between the time of making these answers and the time of trial, these

27   interrogatories are directed to that information.  If such information is not furnished, the

28   defendants will move at the time of trial to exclude from evidence any information requested and

1 -  DEFENDANTS' STYLE FIRST SET OF INTERROGATORIES PROPOUNDED TO PLAINTIFF AND
     ANSWERS THERETO
     J:\WA\106995\Pld\Style.wpd
                                                    BRAYTON ❖ PURCELL, LLP
                                                           American Bank Building
                                                     621 SW Morrison Street, Suite 950
                                                          Portland, Oregon 97205
                                                  Phone: (503) 295-4931; Fax: (503) 241-2573

amount smoked, whether or not you inhaled, type of tobacco product, brand names, etc.)

**ANSWER:**

Plaintiff smoked cigarettes from 1961 to 1984. Plaintiff smoked approximately one pack per day. Plaintiff smoked Winston brand cigarettes.

**Employment**

10.     For each employer for whom you ever worked (including self-employment and part time employment) please identify:

(a)     In chronological order, the beginning and ending dates of each period of employment;

(b)     The place of each such employment;

(c)     The nature of the business for each such employment; and

(d)     Your particular title or job description or function for each such employment.

**ANSWER:** Plaintiff identifies the following employers:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|---------------------|-----------|----------------|
| CA Turner | Texaco Refinery, Port Arthur, Texas | Laborer | 1961-1968 |

Job Duties: Plaintiff worked in every area at this refinery. Plaintiff worked in the grease plant, where he dumped resin into hoppers and mixed the resin with petroleum to make motor oil. Plaintiff recalls the grease plant had insulated heaters used to heat resin. Plaintiff recalls insulators making repairs to the heaters and tearing insulation off of them. Plaintiff boxed up bottles of motor oil, and loaded the boxes onto freight cars. Plaintiff worked in proximity to insulators and pipefitters tearing insulation off of vessels, tanks, cat towers, and boilers throughout the refinery. Plaintiff swept up and gathered insulation debris after it was torn off of equipment and pipe lines. Plaintiff worked in proximity to brick layers re-bricking boilers. Plaintiff picked up old brick, mortar, and insulation left behind by the brick layers. Plaintiff recalls the insulation and brick being very dusty. Plaintiff worked in proximity to welders. Plaintiff recalls welders were constantly welding in all areas of the refinery. Plaintiff recalls the following co-worker: Leroy Barigan (cousin), Port Arthur, TX. Plaintiff currently contends he

1    was exposed to asbestos during this employment.

2

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Currently unknown | Willamette Iron & Steel, Portland, OR | Laborer | 1968 (one day) |

6    Job Duties: Plaintiff worked onboard a ship stripping paint inside a hull below deck. Plaintiff
7    currently contends he was exposed to asbestos during this employment.

8

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Crown Zellerbach Corporation | Crown-Zellerbach, Camas, WA | Paper Machine Operator | 1968-2001 |

Job Duties: Plaintiff started at this site as a paper packer. Plaintiff then worked as a pulp and paper tester. As a pulp and paper tester, plaintiff worked on all of the paper machines. Plaintiff recalls there were 16 paper machines. Plaintiff recalls most of the machines were manufactured by BELOIT. Plaintiff collected samples of pulp from each machine on a daily basis and took the samples to the pulp lab to be tested for consistency. Plaintiff walked through the chlorine plant to get to the pulp lab. Plaintiff recalled routinely walking past large insulated digesters. Plaintiff recalls the digesters would vibrate so much, dust and debris would be falling off of them. Plaintiff collected the samples by opening valves on the paper machine. Plaintiff recalls the lines and valves were insulated. Plaintiff then worked as a filter man. As a filter man, plaintiff routinely cleaned out pulp filters on all of the paper machines. Plaintiff recalls the filters were located at the top of the machines. Plaintiff recalls he typically cleaned out the filters while the machines were shut down. Plaintiff worked in proximity to millwrights performing routine maintenance, checking valves, taking covers off of pumps and repairing lines during paper machine shut downs. Both as a filter man, and as a pulp and paper tester, plaintiff's job duties took him to all areas of the mill. Plaintiff worked in proximity to brick layers and boilermakers, removing and replacing insulation and refractory materials on the boilers at the mill. Plaintiff worked in proximity to evaporators. Plaintiff recalls insulators and millwrights replacing components on the evaporators. Plaintiff frequently passed through the machine shop at this mill. Plaintiff worked in proximity to electricians and millwrights performing maintenance to GE and WESTINGHOUSE turbines in the turbine rooms. Plaintiff was next assigned to the #4, 5, 6, 7 and 8 paper machines. Plaintiff recalls these machines were used to make kraft paper and paper bags. Plaintiff worked on all areas of these machines from the wet end to the dry end. Plaintiff worked in several capacities on these machines including machine operator, back tender, and winder man. Plaintiff changed machine clothing, including the wet felts and the dryer felts. Plaintiff had to cut the felt off the pins and rollers. Plaintiff had to cut up the felt and take it out into the yard so laborers could dispose of it. Plaintiff recalls the replacement felts were stored in a warehouse at the mill. Plaintiff recalls frequently working in the warehouse. During machine shut downs, plaintiff used high pressure hoses to clean out insulated lines on the paper machine. Plaintiff recalls insulation flaking off of the lines. Plaintiff assisted millwrights with machine valve repairs. Plaintiff recalls the millwrights removing and installing new gaskets and packing

on the valves.  Plaintiff recalls some of the valves were manufactured by CRANE CO.  Plaintiff assisted millwrights with maintenance on pumps associated with the paper machines.  Plaintiff recalls millwrights opening up the pumps, and replacing gaskets.  Plaintiff recalls some of these pumps were VIKING PUMPS.  Plaintiff recalls working in the basement below the paper machines.  Plaintiff recalls the basement was filled with insulated steam lines and pipes.  Plaintiff recalls insulators and pipefitters removing and replacing the insulated lines in the basement below the paper machines.  In 1984, plaintiff was assigned to the No. 20 paper machine, a brand new paper machine at the time. Plaintiff was the lead paper machine operator, but performed all duties associated with the machine, including back tender, winder man, and machine assistant. Plaintiff recalls the following manufacturers of dryer felts: ASTEN JOHNSON, INC., ALBANY INTERNATIONAL CORP., and APPLETON MILLS (VOITH FABRICS APPLETON, INC.). Plaintiff recalls the following co-workers: Buford Sanders, 1109 NW Fourth Ave, Camas, WA 98607-2708, (360) 834-6506; Harry Mickes, 3201 G St, Washougal, WA 98671-2051, (360) 835-3129; Leard Henry, 9009 NE 54th St. E35, Vancouver, WA 98662; Dave Matson, address currently unknown; Harry Weeks, address currently unknown; Larry Mansfield, address currently unknown; Andy Nosko, 3223 I St, Washougal, WA 98671-1914 (360) 835-2509. Plaintiff currently contends he was exposed to asbestos during this employment.

## Asbestos Exposure/Job sites

11.     Identify each job site or ship (referencing its specific location and the dates of your

employment) at which you claim exposure to asbestos-containing products and your occupation

or trade at each job site.

## ANSWER:

        Plaintiff refers to his response to Interrogatory No. 10, above.

12.     State separately for each job site or ship enumerated in your response to Interrogatory No.

11, the following:

        (a)     The name and address of your employer;

        (b)     The names of each contractor that brought, installed, or used the asbestos or

asbestos-containing product on the job site, the date, and the contractor that is related to your

exposure;

        (c)     The nature of your exposure to asbestos-containing products (including job title,

duties performed, and details as to whether exposure occurred during rip-out, repair, new