**MDL 875**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV 2 0 2007

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| In re ASBESTOS PRODUCTS LIABILITY LITIGATION (No. VI) | : | MDL DOCKET NO. 875 |
|  | : |  |
|  | : |  |
| *Christian Holinka v. Baxter Healthcare Corp., et al.* Civil Action No. 1:07-8019 (S.D. New York) | : |  |
|  | : |  |
|  | : |  |
|  | : |  |

---

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S
## MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-290)

---

PLEADING NO. 5254

OFFICIAL FILE COPY

RECEIVED
CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION
2007 NOV 19 A 9: 52

IMAGED NOV 2 1 2007

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 2

PROCEDURAL HISTORY AND STATEMENT OF FACTS..................................................... 4

LEGAL ARGUMENT

      POINT I   THE CONDITIONAL TRANSFER ORDER SHOULD NOT BE
               VACATED ....................................................................................... 9

               A.     Consolidation of this case with the Asbestos MDL is
                    Proper........................................................................................... 9

               B.     Defendants are entitled to the advantages and efficiencies
                    inherent in MDL proceedings ...................................................... 11

CONCLUSION....................................................................................................... 13

# TABLE OF AUTHORITIES

## CASES

In re Aircrach Disaster Near Monroe Michigan on January 9, 1997,
 20 F. Supp. 2d 1110 (E.D. Mich. 1998)................................................................10

In re Asbestos Products Liability Litigation (No. VI),
 771 F. Supp. 415 (J.P.M.L. 1991).......................................................................9

In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation,
 391 F. Supp. 2d 1377 (J.P.M.L. 2005)..............................................................12

In re Mutual Funds Investment Litigation,
 310 F. Supp. 2d 1359 (J.P.M.L. 2004)..............................................................12

In re Patenaude,
 210 F.3d 135 (3d Cir. 2000)..............................................................................10

In re Phenylpropanolamine Products Liability Litigation,
 460 F.3d 1217 (9th Cir. 2006) ..........................................................................10

Preaseau v. The Prudential Insurance Co. of America,
 591 F.2d 74 (9th Cir. 1979) ..............................................................................12

In re Smith Patent Litigation,
 407 F. Supp. 1403 (Jud. Pan. Mult. Lit. 1976) ................................................11

## STATUTES

28 U.S.C. § 1407(a) .........................................................................................................9

## OTHER

Annotated Manual for Complex Litigation, § 20.131........................................................9

Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 3d § 3866 .........10

## PRELIMINARY STATEMENT

Plaintiff's motion to vacate Conditional Transfer Order (CTO-290) rests on three intertwined arguments: First, plaintiff Christian Holinka will die before his trial unless trial is held "very soon"; second, this case is "essentially trial-ready" and third, this case involves "an unusual manner of asbestos exposure and remaining defendants who do not often appear in asbestos litigation."

The first argument, that plaintiff Christian Holinka will die "very soon", notably is unsupported by any affidavit of a treating physician. Such a serious claim, that Christian Holinka is on the brink of death, is one that demands the sworn statement of an expert – noticeably absent here. Plaintiff's argument on this point suffers from some internal confusion, as his brief states both that Dr. Holinka will die "very soon" and that Dr. Holinka will die "in a matter of months." These assertions also contradict the statements made by plaintiff's lawyers as of September 2007 that Dr. Holinka was doing very well and was still working and traveling. This inconsistency dramatically demonstrates the need for sworn expert testimony – presumably from the physicians who are treating Dr. Holinka for his mesothelioma.

The second argument, that this case is trial ready, is a flat misstatement, as it ignores a number of important issues which must be decided by the MDL Court prior to a trial. These pre-trial matters include Defendants' pending summary judgment motion (based on lack of product identification), various *Daubert* challenges, and a host of other pre-trial issues that should be overseen by the MDL Court. It is on this key issue that plaintiff's motion must fail. There is much more to be done before this matter is ready for trial.

Finally, as for the argument that this case involves an "unusual manner of asbestos exposure," plaintiff offers no reason why such exposure should affect transfer to the MDL court,

except to complain of failed settlement discussions – a topic which has no impact whatsoever on whether this case should be transferred to the MDL.

If, as plaintiff claims in his motion, time is of the essence here, there is no reason why proceedings in MDL 875 cannot be expedited. Plaintiff's motion should be denied and this matter should proceed in MDL 875.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

1.      Plaintiff Christian Holinka was diagnosed with mesothelioma in August 2006. He filed suit in New York Supreme Court on September 29, 2006.

2.      Plaintiff alleges in his Verified Complaint that 22 defendants manufactured or supplied products that caused his mesothelioma.  When Plaintiff was deposed in February and March of this year, he testified that he believes he was exposed to asbestos from using Bunsen burner pads and heat-resistant mittens, which he *thinks may have* contained asbestos, while working at various medical and research laboratories over a 32-year period.

3.      Plaintiff was, however, unable to state whether those products indeed contained asbestos and was unable to identify the manufacturers or suppliers of any of the products he claims to have used.  Instead, he testified only that he believes American Scientific, Fisher Scientific, Van Waters & Rogers and Cenco were "standard suppliers" of laboratory products in general during the relevant periods.

4.      Plaintiff does not know whether the products he used were actually purchased from the defendants in this case.

5.      Plaintiff cannot identify anyone who knows the identity of the manufacturers or suppliers of the pads or mittens he claims to have used, and he has no documents identifying those manufacturers or suppliers.

6.      The original discovery deadline for all cases in the May 2007 *in extremis* trial group was May 1, 2007.  However, due to Plaintiff's nine-week delay in serving the pathology materials upon which his mesothelioma diagnosis was based, the discovery deadline in this case was extended to August 1, 2007.

7.     On May 18, 2007, Plaintiff requested that this case be assigned for trial.  Over Defendants' objections, on June 4, 2007, *Holinka* and eight other Weitz & Luxenberg cases were assigned to the Hon. Joan A. Madden, J.S.C. for trial.  The plaintiffs then moved to consolidate the nine actions, which involved disparate types of employment, a myriad of exposure sites, different types of products, and varied time periods spanning several decades.  Defendants opposed that motion, and Justice Madden reserved ruling until the first day of trial, September 12, 2007.[1]

8.     Defendants filed their Joint Motion for Summary Judgment, based on lack of product identification, by Order to Show Cause, on August 17, 2007.  Justice Freedman, presiding over the NYCAL, set the motion for hearing on August 30, 2007.

9.     Based on several requests for adjournment by Plaintiff's counsel (one of which was made on September 6, 2007, three court days before trial, for the stated purpose of conducting further discovery), the hearing on the Joint Motion for Summary Judgment was continued to September 17, 2007.

10.    When the parties appeared before Justice Madden on September 12, 2007, Plaintiff's counsel distributed a final list of remaining defendants.  That list included only diverse defendants – specifically, American Scientific, Fisher Scientific and VWR.[2]  Plaintiff's trial counsel confirmed the information on the list when he announced in open court that there were only three[3] remaining defendants in this case.

---

[1] At the time Baxter removed this action to this Court, Justice Madden had not yet ruled on the consolidation motion.

[2] Plaintiff has consistently referred to VWR and Univar collectively as "VWR" in this litigation.  Univar disputes that it is a successor in interest to Van Waters & Rogers laboratory supply business.

[3] *See* footnote 2, above.

11.     Alerted for the first time that there was complete diversity, Baxter (with the consent of the other remaining defendants) removed this action to the United States District Court for the Southern District of New York that same day.

12.     On September 13, 2007, Baxter filed a Notice of Tag-Along Action with the JPML.

13.     The JPML issued CTO-290 on September 28, 2007, conditionally transferring this action to MDL 875.  Plaintiff filed a notice of opposition to the CTO on October 12, 2007.  This motion to vacate the CTO was filed on October 30, 2007.

14.     This action is pending in the Southern District of New York and is assigned to the Hon. Sidney H. Stein, U.S.D.J.   On September 14, 2007, Baxter filed a motion to stay all proceedings pending transfer to the Asbestos MDL.  By letters dated October 3 and 24, 2007, plaintiff opposed the motion and requested an initial conference and an expedited trial date.  On October 24, 2007, Judge Stein entered a stay and directed the parties to report to the Court every 30 days, starting December 1, 2007, regarding the status of Baxter's application to transfer this case to the Asbestos MDL.

15.     Plaintiff's expert Jacqueline Moline, M.D., was deposed on September 12, 2007. At her deposition, Dr. Moline was questioned as to her report, which stated: "Dr. Holinka appears to be clinically stable at present, but there is no cure for mesothelioma, and as a result his prognosis is poor." Dr. Moline testified that she based her opinion that Dr. Holinka has a poor prognosis based on the fact that "mesothelioma is virtually always fatal" but added that she had no expectation or estimate on what Dr. Holinka's life expectancy was. (Moline Tr. at 61-63)

16.    Despite plaintiff's claim that this case is ready for trial, there are numerous pre-trial issues remaining, warranting oversight and adjudication by the MDL court.  Those issues include:

(a)    Defendants' Joint Motion for Summary Judgment based on lack of product identification;

(b)    Service of a report from plaintiff's state-of-the-art expert, Barry Castleman, Ph.D. or Douglas Pohl, M.D., Ph.D.;

(c)    Service of the supplemental report from Jacqueline Moline, M.D.;

(d)    Defendants' deposition of Dr. James Strauchen, M.D., one of plaintiff's causation experts.

(e)    Defendants' deposition of Dr. Castleman or Dr. Pohl (depending on which state-of-the-art expert plaintiff will use at trial);

(f)    Defendants' deposition of Dr. Moline regarding her supplemental report;

(g)    Plaintiff's deposition of Robert Adams, M.S., C.I.H., C.I.P., defendants' industrial hygiene expert;

(h)    Plaintiff's deposition of Eric Mundt, Ph.D., defendants' epidemiology expert;

(i)    Plaintiff's deposition of Sheldon Rabinovitz, Ph.D., defendants' state-of-the-art and industrial hygiene expert;

(j)    Plaintiff's deposition of Robert Sawyer, M.D., defendants' causation expert;

(k)    Plaintiff's deposition of Kenneth S. Weinberg, Ph.D., defendants' laboratory expert;

(l)    Defendants' *Daubert* motion to exclude Drs. Moline and Strauchen;

(m)    Defendants' *Daubert* motion to exclude Dr. Castleman;

(n)     Defendants' *Daubert* motion to exclude Dr. Pohl;

(o)     Plaintiff's *Daubert* motion to exclude a portion of Dr. Rabinovitz's state-of-the testimony;

(p)     Plaintiff's *Daubert* motion to exclude Dr. Weinberg;

(q)     Plaintiff's *Daubert* motion to exclude all evidence of "exposure assessment;" and,

(r)     A *Daubert* hearing on the reliability of "exposure assessment."

## LEGAL ARGUMENT

## POINT I

## THE CONDITIONAL TRANSFER ORDER SHOULD NOT BE VACATED

### A. Consolidation of this case with the Asbestos MDL is Proper.

With additional discovery to be conducted and multiple motions to be adjudicated, consolidation of this case with the MDL is appropriate based upon the language and clear intent of the Panel's transfer orders and pursuant to the language and spirit of the MDL statute. Section 1407 provides, in pertinent part:

> When civil actions involving **one or more common questions of fact** are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. **Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions.**

28 U.S.C. § 1407(a) (emphasis added). "The objective of transfer is to eliminate duplication in discovery, avoid conflicting pretrial rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." *Annotated Manual for Complex Litigation*, § 20.131, "Requests for Transfer" (4th ed. 2005). It is on the authority of Section 1407 and the initial transfer order that the Panel ordered transfer of the *Holinka* case to the Asbestos MDL. Indeed, as set forth in CTO-290, the *Holinka* case and the others subject to the CTO involve "questions of fact that are common to the actions previously transferred," and were transferred "for the reasons stated in the order of July 29, 1991." See CTO-290.

As for this case, the remaining discovery to be conducted and the motions to be adjudicated are exactly the types of pre-trial matters that the Asbestos MDL was created to address. MDL Procedures are designed to avoid duplication of discovery, conserve resources and prevent inconsistent pre-trial rulings. *See In re Asbestos Products Liability Litigation (No.*

9

*VI)*, 771 F. Supp. 415, 421 (J.P.M.L. 1991). MDL judges have "the jurisdiction and power over pretrial proceedings ... that the transferor judge would have had in the absence of transfer." *In re Aircrash Disaster Near Monroe Michigan on January 9, 1997*, 20 F. Supp. 2d 1110, 111 (E.D. Mich. 1998) (quoting *In re FMC Corp. Patent Litigation*, 422 F. Supp. 1163 (J.P.M.L. 1976)).

The MDL court has authority over fact and expert discovery, depositions, discovery motions, *Daubert* motions, summary judgment motions, and settlement negotiations. *In re Patenaude*, 210 F.3d 135, 144 (3d Cir. 2000); *In re Phenylpropanolamine Products Liability Litigation*, 460 F.3d 1217, 1231 (9th Cir. 2006); Wright, Miller & Cooper, *Federal Practice & Procedure*: Jurisdiction 3d § 3866.

The MDL's jurisdiction and power also extend to case-specific issues. *In re Patenaude*, 210 F.3d at 143. Indeed, not only does the Asbestos MDL have authority over the remaining pre-trial issues in this case, but that court is especially well-suited to adjudicate those issues. Several of the outstanding matters will have ramifications beyond this case, and the resolution of others will be aided by the MDL Judge's familiarity with the issues and evidence in this litigation, including the medicine and the science.

For example, Defendants have filed a motion to exclude plaintiff's causation experts, Drs. Moline and Strauchen, because there is no evidence that plaintiff was exposed to sufficient amounts of asbestos – if he was exposed to asbestos at all – to cause mesothelioma. During her deposition, Dr. Moline admitted that she does not know how much asbestos (if any) would have been released from plaintiff's use of the products in issue, assuming they contained asbestos. (Moline Tr. at 20:14-20.) Based on his expert report, defendants' anticipate that Dr. Strauchen's testimony will be no more substantive. Whether the mere allegation that a plaintiff worked with

10

an asbestos product, without proof that use of the product would have exposed the plaintiff to a sufficient amount of asbestos to cause mesothelioma, is an issue that extends beyond this case. It is, therefore, important for the MDL Court to consider and resolve this issue to ensure consistency within the litigation.

Likewise, plaintiff likely will seek to exclude all evidence of "exposure assessment," arguing this scientific technique, which has been used by industrial hygienists for decades, is not reliable. Plaintiff does not claim that defendants' experts are not qualified to render such an opinion or that they employed improper methodologies. Rather, he attacks the science itself. The outcome of this motion will be cited whenever the plaintiffs bar seeks to exclude "exposure assessment" in future cases. Whether this technique is reliable when used to assess a plaintiff's historical exposure to asbestos, and therefore admissible in the asbestos litigation, should be determined by the MDL Court.

**B. Defendants are entitled to the advantages and efficiencies inherent in MDL proceedings**

The JPML created MDL 875, *In Re Asbestos Products Liability Litigation (No. VI)* ("MDL 875"), in 1991, ruling that all federal actions involving allegations of personal injury or wrongful death caused by asbestos be centralized for pre-trial purposes in the United States District Court for the Eastern District of Pennsylvania. This case, now a Federal Court action, involves allegations of personal injury caused by asbestos. As such, it should be transferred to MDL 875. As one Court has noted:

> **Transfer under Section 1407** has the salutary effect of placing all actions before a single judge who can formulate a pretrial program that: 1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues, *In re Smith Patent Litigation*, 407 *F. Supp.* 1403, 1404 (Jud. Pan. Mult. Lit. 1976); and 2) **ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties.** The transferee court can employ any number of pretrial techniques – such as establishing

> separate discovery and/or motion tracks – to efficiently manage this litigation. In any event, we leave the extent and manner of coordination or consolidation of these actions to the discretion of the transferee court. *In re Mutual Funds Investment Litigation*, 310 F. *Supp. 2d* 1359 (Jud. Pan. Mult. Lit. 2004). **We are confident in the transferee judge's ability to streamline pretrial proceedings in these actions, while concomitantly directing the appropriate resolution of all claims.**

*In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation*, 391 F. Supp. 2d 1377, 1379 (J.P.M.L. 2005) (emphasis added).

Plaintiff claims, without support, that defendants removed this matter to the United States District Court  for the purpose of delaying trial. This unfounded and untrue claim ignores a central fact: plaintiff controlled the timing as to when diversity jurisdiction was created. Indeed, rejecting an argument such as the one plaintiff makes here, the United States Court of Appeals for the Ninth Circuit has ruled:

> [Plaintiff] forgets that it was she who determined to name Doe defendants who might destroy diversity . . . and it was she who determined that the Doe defendants would not be dismissed until the day of trial. Thus she, not [defendant], controlled when the 30 day time limit of § 1446 (b) would begin running.

*Preaseau v. The Prudential Ins. Co. of America*, 591 F.2d 74, 79 (9th Cir. 1979).

Plaintiff here chose to wait until the first day of trial to dismiss certain defendants and create diversity. Plaintiff alone controlled the timing of that decision. Defendants should not now be criticized for exercising their rights to have this matter heard in Federal Court, and to have the MDL court efficiently manage this litigation.

## CONCLUSION

For the above-stated reasons, Plaintiff's motion to vacate Conditional Transfer Order 290

should be denied, and this case transferred to MDL No. 875.

| | |
|---|---|
| **DRINKER BIDDLE & REATH LLP**<br>140 Broadway, 39th Floor<br>New York, New York 10005<br>(212) 284-3140<br>Attorneys for Defendant<br>Baxter Healthcare Corporation<br><br>By: _Daniel B. Carroll_ | **HOAGLAND, LONGO, MORAN,**<br>**DUNST & DOUKAS, LLP**<br>40 Paterson Street<br>New Brunswick, New Jersey 08901<br>(732) 545-4717<br>Attorneys for Defendant<br>Fisher Scientific International Inc.<br><br>By: _Kristy K. Lyons_ |
| **MARKS, O'NEILL, O'BRIEN &**<br>**COURTNEY, P.C.**<br>530 Saw Mill River Road<br>Elmsford, NY 10523<br>Attorneys for Defendants<br>VWR International, Inc. and Univar USA Inc.<br><br>By: _Carol M. Tempesta_ | |

Dated: November 16, 2007.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV 2 0 2007

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

|  |  |  |
|---|---|---|
| **In re ASBESTOS PRODUCTS** | : | MDL DOCKET NO. 875 |
| **LIABILITY LITIGATION (No. VI)** | : | |
| | : | |
| *Christian Holinka v. Baxter Healthcare* | : | |
| *Corp., et al.* Civil Action No. 1:07-8019 | : | **CERTIFICATION OF** |
| (S.D. New York) | : | **TIMOTHY J. FRASER** |
| | : | |
| | : | |

TIMOTHY J. FRASER, being of full age, certifies as follows:

1.      I am an attorney at law of the State of New York, am admitted to the Southern District of New York and am associated with the law firm of Drinker Biddle & Reath LLP, attorneys for defendant Baxter Healthcare Corporation.  I have personal knowledge of the facts set forth herein.

2.      Attached hereto are true and complete copies of pages 20 and 61-63 from the transcript of the September 12, 2007 deposition of Jaqueline Moline, M.D.

3.      I certify under penalty of perjury that the foregoing is true and correct.

DRINKER BIDDLE & REATH LLP
140 Broadway, 39th Floor
New York, New York 10005
(212) 284-3140
Attorneys for Defendant
Baxter Healthcare Corporation

By:_____
Timothy J. Fraser

2007 NOV 19  A 9: 52

RECEIVED
CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

|  |  |  |
|---|---|---|
| **In re ASBESTOS PRODUCTS LIABILITY LITIGATION (No. VI)** | : : : : | MDL DOCKET NO. 875 |
| *Christian Holinka v. Baxter Healthcare Corp., et al.* Civil Action No. 1:07-8019 (S.D. New York) | : : : : : | **CERTIFICATION OF SERVICE** |

TIMOTHY J. FRASER, being of full age, certifies as follows:

1.      I am an attorney at law of the State of New York, am admitted to the Southern District of New York and am associated with the law firm of Drinker Biddle & Reath LLP, attorneys for defendant Baxter Healthcare Corporation.  I have personal knowledge of the facts set forth herein.

2.      On November 16, 2007, I caused the <u>original</u> and <u>four copies</u> of Defendants' Brief in Opposition to Plaintiff's Motion To Vacate CTO 290, the certification of Timothy J. Fraser and this certification of service (collectively, "Motion Papers"), along with a CD containing pdf copies of the foregoing, to be filed via Federal Express with the following:

> Clerk of the Panel
> Judicial Panel on Multidistrict Litigation
> Thurgood Marshall Federal Judiciary Building
> One Columbia Circle, NE, Room G-255, North Lobby
> Washington, D.C. 20002-8004

3.      On November 16, 2007, I caused <u>one copy</u> of Defendants' Motion Papers to be served via Federal Express upon the following:

> Stephen J. Riegel, Esq.
> Weitz & Luxenberg, P.C.
> 180 Maiden Lane, 17th Floor
> New York, New York 10038

2007 NOV 19  A 4: 52
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION
RECEIVED
CLERK'S OFFICE

4.      On November 16, 2007, I caused <u>one copy</u> of Defendants' Motion Papers to be

served via first class mail upon the following:

| | |
|---|---|
| Richard C. Binzley<br>Thompson Hine, LLP<br>127 Public Square<br>3900 Key Center<br>Cleveland, OH 44114 | Marc S. Gaffrey<br>Hoagland, Longo, Moran, Dunst & Doukas<br>40 Paterson Street<br>P.O. Box 480<br>New Brunswick, NJ 08903 |
| Edward J. Cass<br>Gallagher, Sharp, Fulton & Norman<br>Bulkley Building, 7th Floor<br>1501 Euclid Avenue<br>Cleveland, OH 44115 | Susan M. Hansen<br>Brownson & Ballou<br>225 South Sixth Street<br>Suite 4800<br>Minneapolis, MN 55402 |
| Adam M. Chud<br>Goodwin Procter, LLP<br>901 New York Avenue, N.W.<br>Washington, DC 20001 | Reginald S. Kramer<br>Oldham & Dowling<br>195 South Main Street<br>Suite 300<br>Akron, OH 44308-1314 |
| David A. Damico<br>Burns, White & Hickton, LLC<br>Four Northshore Center<br>106 Isabella Street<br>Pittsburgh, PA 15212 | David C. Landin<br>Hunton & Williams, LLP<br>Riverfront Plaza, East Tower<br>951 East Byrd Street<br>Richmond, VA 23219 |
| Raymond P. Forceno<br>Forceno & Hannon<br>111 S. Independence Mall East<br>The Bourse, Suite 1000<br>Philadelphia, PA 19106-2574 | Gene Locks<br>Locks Law Firm, LLC<br>1500 Walnut Street<br>Philadelphia, PA 19102 |
| Ronald J. Motley<br>Motley Rice LLC<br>P.O. Box 1792<br>28 Bridgeside Blvd.<br>Mt. Pleasant, SC 29464 | Ellen B. Furman<br>Goldfein & Hosmer<br>1600 Market Street, 33rd Floor<br>Philadelphia, PA 19103 |
| James Stephen Nowak<br>Kenney, Shelton, Liptak & Nowak, L.L.P.<br>Rand Building, Suite 510<br>14 Lafayette Square<br>Buffalo, NY 14203 | John J. Repcheck<br>Marks, O'Neill, O'Brien & Courtney, PC<br>3200 Gulf Tower<br>707 Grant Street<br>Pittsburgh, PA 15219 |
| Andrew J. Trevelise<br>Reed Smith LLP<br>2500 One Liberty Place<br>1650 Market Street<br>Philadelphia, PA 19103 | Stephen Jeffrey Riegel<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane<br>New York, NY 10038-4925 |

| | |
|---|---|
| James K. Weston, II<br>Tom Riley Law Firm<br>4040 First Avenue, N.E.<br>P.O. box 998<br>Cedar Rapids, IA 52406 | John D. Roven<br>Roven-Kaplan, L.L.P.<br>2190 North Loop West, Suite 410<br>Houston, TX 77018 |
| Richard D. Schuster<br>Vorys, Sater, Seymour & Pease, LLP<br>52 East Gay Street<br>P.O. Box 1008<br>Columbus, OH 43216-1008 | Neil Selman<br>Selman, Brietman & Burgess<br>117666 Wilshire Blvd., Sixth Floor<br>Los Angeles,CA 90025 |
| Robert N. Spinelli<br>Kelley, Jasons, McGuire & Spinelli, L.L.P.<br>Center Square West, 15th Floor<br>Philadelphia, PA 19102 | Robert E. Swickle<br>Jaques Admiralty Law Firm, P.C.<br>1370 Penobscot Building<br>645 Griwsold Street<br>The Maritime Asbestosis Legal Clinic<br>Detroit, MI 48226-4192 |
| Carol M. Tempesta<br>Marks, O'Neil, O'Brien & Courtney, PC<br>530 Saw Mill River Road<br>Elmsford, NY 10523 | |

5.      I certify under penalty of perjury that the foregoing is true and correct.


                         DRINKER BIDDLE & REATH LLP
                         140 Broadway, 39th Floor
                         New York, New York 10005
                         (212) 284-3140
                         Attorneys for Defendant
                         Baxter Healthcare Corporation


                         By: _____
                               Timothy J. Fraser

Holinka v. Asbestos
September 12, 2007

Jacqueline Moline, MD

```
 1                    SUPREME COURT:  ALL COUNTIES
                     WITHIN THE STATE OF NEW YORK
 2


 3
       IN RE:  NEW YORK CITY           :
 4              ASBESTOS LITIGATION     :
                                        : DEPOSITION UPON
 5      This Document Applies To:       : ORAL EXAMINATION
                                        :       OF
 6         CHRISTIAN HOLINKA            : JACQUELINE MOLINE,
       ----------------------------    : M.D.
 7


 8


 9              T R A N S C R I P T of the deposition of

10      JACQUELINE MOLINE, M.D., called for Oral Examination in

11      the above entitled action, said deposition being taken

12      pursuant to Rules governing Civil Practice in the Courts

13      of New York, by and before KERRY D. HALPERN, a Notary

14      Public and Shorthand Reporter of the State of New York,

15      at the MOUNT SINAI SCHOOL of MEDICINE, BASIC SCIENCES

16      BUILDING, place 10 East 101st Street, New York, New York,

17      on Wednesday, September 12, 2007, commencing at 1:50 p.m.

18

19

20

21

22            Priority-One Court Reporting Services
                          899 Manor Road
23            Staten Island, New York   10314
                        (718) 983-1234

24

25
```

Holinka v. Asbestos
September 12, 2007

Jacqueline Moline, MD

Page 18

1 already been supplied.
2          THE WITNESS:  Do you want me
3 to run upstairs and see if I have a
4 list of the records?
5          MR. LONG:  Let's do it when we
6 get a break.
7          MR. CARROLL:  We'll wait for a
8 break.
9     Q.     Doctor, I asked you a few minutes ago if
10 the review of the medical records was going to change any
11 of the opinions you had in your original report which I
12 will turn to in a moment.  You said, "no."
13          Let me ask you another question.  Is it
14 going to amplify any of the opinions that you hold or you
15 state in your original report?
16     A.     I don't know what you mean by amplify.
17     Q.     Does it make any of your points --
18 strike that.
19          Does your review of the medical records
20 provide additional support for any of the opinions you
21 state in your first report?
22     A.     No.  They are consistent with what I
23 initially stated.
24     Q.     All right.
25          Doctor, I have had marked as exhibit

Page 19

1 Moline 1 your report, and we are going to work through
2 that, so it's probably best for you to have a copy in
3 front of you.
4     A.     I do.  I have two of them actually.
5     Q.     And they are the same hopefully.
6     A.     It looks identical.
7     Q.     Doctor, it's correct that in your report
8 dated March 8, 2007, which we marked for identification
9 as Exhibit Moline 1, you are not offering any opinion as
10 to the laboratory environment in which Dr. Holinka
11 worked, correct?
12     A.     I don't know what you mean by laboratory
13 environment.
14     Q.     Well, in your report you note that
15 Dr. Holinka states that he was exposed to various
16 asbestos-containing products, correct?
17     A.     Correct.
18     Q.     And that was during in a laboratory
19 environment?
20     A.     Correct.
21     Q.     And your report does not contain any
22 opinion as to the conditions of any of those
23 laboratories, correct?
24     A.     Apart from the equipment that he stated
25 he used, correct.

Page 20

1     Q.     All right.
2          And, Doctor, is it correct that you
3 don't have any opinion on the actual products on which
4 Dr. Holinka claims his injuries?
5     A.     Do you mean the manufacturer, the brand
6 name of them?
7     Q.     Brand name, manufacturer I'll take.
8     A.     No.  Just the products as they were
9 stated to me.  I don't know what brand they were.
10     Q.     You don't know in fact whether or not
11 they contained asbestos or not, correct?
12     A.     I didn't independently see any of those
13 products, no.
14     Q.     And you don't have any opinion as to how
15 much asbestos could have been released from those
16 products, correct?
17     A.     From those specific products, I don't --
18 there were no tests that I am aware of from the specific
19 products that Dr. Holinka used during that time period,
20 no.
21     Q.     Doctor, did you review anything to
22 prepare for today's deposition?
23     A.     Yes.
24     Q.     What did you review?
25     A.     I reviewed some medical literature.

Page 21

1     Q.     What medical literature did you review,
2 Doctor?
3     A.     An article by Samimi.
4     Q.     What is the title of that?
5     A.     "Occupational Exposure to Asbestos
6 Fibers Resulting From Use of Asbestos Gloves."
7     Q.     I have that article, and I was going to
8 ask you about that later in the day, so I will put that
9 aside for now.
10          Did you review anything else in
11 preparation for this deposition?
12     A.     A letter to the editor entitled
13 "Asbestos Hazard from Protective Clothing" published in
14 the --
15     Q.     "Annals of Occupational Hygiene."
16     A.     "Annals of Occupational Hygiene."
17     Q.     All right.
18     A.     Another article from "Annals of
19 Occupational Hygiene" entitled "Fibre Release From
20 Asbestos Garments," and an article entitled "Health
21 Hazards of Asbestos Protective Clothing" by Sors, and an
22 abstract from 1981 "Asbestos Induced Mesothelioma Results
23 of a Retrospective Study."
24     Q.     Doctor, did you review anything else to
25 prepare for today's deposition?

6 (Pages 18 to 21)

Holinka v. Asbestos
September 12, 2007

Jacqueline Moline, MD



Page 58

1    A.    Bordering on hypertension, but you don't
2 diagnose hypertension from a one-time evaluation.
3    Q.    You note his pulse was 76 beats.
4         Is that within normal limits?
5    A.    Yes.
6    Q.    His respiratory rate, you state, is 14
7 beats per minute.
8    A.    Whoops.
9    Q.    Is that breaths?
10   A.    Yes.
11   Q.    Okay.
12        Would 14 breaths per minute be of a
13 normal rate?
14   A.    Yes.
15   Q.    You noted that his eyes show arcus
16 senilus.  I looked that up, and that's an age-related
17 condition?
18   A.    Yeah.  It can be seen in people in their
19 50's. It's just that's the medical term.
20        MR. LONG:  What is it?
21        THE WITNESS:  It's a white rim
22   around the iris of the eye.
23   A.    It doesn't imply age per se, but it's
24 seen in older individuals or as people age.  It's not
25 seen in young people, super young people.

Page 59

1    Q.    Like all of us here.
2         You noted the presence of infusion port
3 and thoracoscopy scars, thorac --
4    A.    Thoracoscopy.
5    Q.    Thank you.
6         You note decreased breath sounds in his
7 right lung.
8         Could you qualify how decreased the
9 breath sounds were on the right side?
10   A.    They were just muffled compared to the
11 left lung.
12   Q.    Otherwise, your examination showed
13 nothing out of the ordinary, correct?
14   A.    Correct.
15   Q.    Turning to the conclusions, Doctor, you
16 state
17        "Assuming the information
18        provided by Dr. Holinka is correct, I
19        believe that Dr. Holinka's
20        mesothelioma is the result of his
21        exposures to asbestos while working in
22        a variety of laboratories where he had
23        exposure to asbestos-containing pads
24        and mittens."
25        Now, as to when you wrote the report,

Page 60

1 the diagnosis of mesothelioma was from what Dr. Holinka
2 told you, correct?
3    A.    Correct.
4    Q.    And that was one of the things that is
5 likely to be supplemented with your review of the medical
6 records we've discussed when you went through Exhibit 3
7 earlier?
8    A.    Correct.  Although what he stated was
9 actually correct.
10   Q.    Do you hold the opinion that
11 Dr. Holinka's mesothelioma is the result of his exposure
12 to asbestos in laboratories to a reasonable degree of
13 medical certainty?
14   A.    Yes.
15   Q.    If Dr. Holinka was incorrect as to the
16 information he provided you, your opinion changes,
17 correct?
18   A.    Correct.
19   Q.    In what way would your opinion change if
20 the information is incorrect?
21   A.    If Dr. Holinka had never been exposed to
22 asbestos in the laboratories, then I would not be able to
23 state that his mesothelioma arose out of his laboratory
24 work.
25   Q.    It would be idiopathic in your opinion?

Page 61

1    A.    It would have -- he would have had an
2 exposure somewhere or it would be idiopathic or unknown.
3 I tend to use the -- more the term unknown exposures rather
4 than idiopathic.
5    Q.    Is that for mesothelioma or other lung
6 conditions as well?
7    A.    It depends on the circumstances.  When
8 you are talking about exposure-based conditions, often we
9 don't know what the exposures -- where the exposures
10 might have happened.  But, certainly I do use the term
11 idiopathic to describe other medical conditions.
12   Q.    Doctor, in your final paragraph you
13 state quote
14        "Dr. Holinka's malignant
15        mesothelioma was the result of his
16        exposure to asbestos while working in
17        laboratories beginning in 1957.  I
18        base this conclusion on the clinical
19        and pathological diagnosis of
20        mesothelioma, the history of asbestos
21        exposure, and the appropriate latency
22        period from the onset of exposure to
23        the development of disease.
24        Dr. Holinka appears to be clinically
25        stable at present, but there is no

16 (Pages 58 to 61)

Holinka v. Asbestos
September 12, 2007

Jacqueline Moline, MD

---

Page 62

1       cure for mesothelioma, and as a
2       result, his prognosis is poor."
3           What is the appropriate latency period
4 that you refer to in that paragraph, Doctor?
5       A.     One does not develop asbestos-related
6 cancers overnight, so I use a minimum of 15 years from
7 onset of exposure.
8       Q.     In the final paragraph of your report,
9 Doctor, is it correct that this final paragraph would
10 change if Dr. Holinka's information as to asbestos
11 exposure was incorrect?
12       A.     That is correct.
13       Q.     In your statement here that Dr. Holinka
14 was exposed to asbestos is based strictly and only on
15 what Dr. Holinka told you during his examination on
16 February 23, 2007?
17       A.     Correct.
18       Q.     You were talking about whether or not
19 you had any specific knowledge of asbestos mittens here
20 at Mount Sinai, and I forgot to ask you the same question
21 for Bunsen burner pads, so let me do that.
22           Do you have any specific knowledge as to
23 whether asbestos Bunsen burner pads were ever used here
24 at Mount Sinai?
25       A.     No.

Page 63

1       Q.     And you have seen Dr. Holinka once. You
2 are not treating him now. Correct?
3       A.     Correct.
4       Q.     And your statement that Dr. Holinka has
5 a poor prognosis, do you hold that opinion to a
6 reasonable degree of medical certainty?
7       A.     Yes.
8       Q.     And that is based strictly on -- strike
9 that.
10           Is that based on both your examination
11 of him and your supplemental review of records?
12       A.     No. It's based on the fact that
13 mesothelioma is virtually always fatal.
14       Q.     Do you have an expectation or an
15 estimate on what Dr. Holinka's life expectancy is?
16       A.     No. The median survival time is 13
17 months for individuals who are diagnosed with
18 mesothelioma, but there's people who are at various
19 ranges. You know, this is a disease that's described in
20 terms of two-year survival rather than five-year or
21 20-year survival.
22       Q.     And the fact that he is clinically
23 stable that doesn't --
24       A.     I've seen people who are clinically
25 stable one month and then the next month they have marked

Page 64

1 progression of disease. That means he's having some good
2 months, but doesn't mean it will continue for long. It's
3 hard to predict.
4       Q.     Doctor, what I would like to do now is
5 work through the articles that you mentioned when we were
6 first talking. I will refer quickly to them.
7           I have 11 articles. Do you have 11?
8       A.     I have five.
9       Q.     So, the first one you have is
10 "Occupational Exposure to Asbestos Fibers Resulting From
11 Use of Asbestos Gloves."
12       A.     Yes.
13           MR. CARROLL: I would like to
14     mark that Exhibit Moline 4.
15           (Defendants' Exhibit Moline 4
16     was marked for identification.)
17       Q.     Doctor, let me do this. Let me go
18 through and see what you have, mark them and then I will
19 question you on each document.
20           What is the next one that you have?
21       A.     "Prevention of Occupational
22 Cancer-International Symposium."
23           MR. CARROLL: Let's mark that
24     as Exhibit Moline 5.
25           (Defendants' Exhibit Moline 5

Page 65

1 was marked for identification.)
2       Q.     Doctor, what is the next one you have in
3 your pile of articles?
4       A.     "The Health Hazards of Asbestos
5 Protective Clothing." That's the CIS abstract.
6       Q.     Attached to that is the translation of
7 the discussion section of Sors et al Hazards of Asbestos
8 Protective Clothing.
9       A.     And the original French.
10           MR. LONG: Followed by the
11 original French.
12       Q.     Followed by the original French.
13       A.     Right.
14           MR. CARROLL: Let's mark that
15     as Exhibit Moline 6.
16           (Defendants' Exhibit Moline 6
17     was marked for identification.)
18       Q.     Doctor, what is the next article that
19 you have in your file?
20       A.     "Fibre Released From Asbestos Garments"
21 by Gibbs.
22           MR. CARROLL: Let's mark that
23     as Exhibit Moline 7.
24           (Defendants' Exhibit Moline 7
25     was marked for identification.)

17 (Pages 62 to 65)