

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV 21 2007

FILED
CLERK'S OFFICE

# UNITED STATES OF AMERICA
## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| LEWIS SHIFFLETT, et ux., | * | |
| | * | MDL DOCKET NO. 875 |
| Plaintiffs | * | In re Asbestos Products Liability Litigation (No. VI) |
| v. | * | |
| AC & R INSULATION CO., et al., | * | D. Maryland |
| | * | |
| Defendants | * | C.A. No.  1:07-cv-02397-WDQ |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### REMOVING DEFENDANTS' RESPONSE
### IN OPPOSITION TO PLAINTIFFS' MOTION
### TO VACATE CONDITIONAL TRANSFER ORDER

Defendant CBS Corporation, a Delaware corporation, f/k/a Viacom Inc., successor by merger to CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation [hereinafter "CBS Corporation"], and the Defendant named as Federated Development Company, a Texas corporation merged into Federated Development, LLC, a Delaware limited liability company [hereinafter "Federated Development"], [CBS Corporation and Federated Development collectively hereinafter "Removing Defendants"], by their undersigned counsel, hereby respond in opposition to Plaintiff's Motion to Vacate Conditional Transfer Order, and in support of that opposition, state the following:

**OFFICIAL FILE COPY**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
2001 NOV 19 P 3: 52
RECEIVED
CLERK'S OFFICE

**IMAGED** NOV 21 2007

# I.  BACKGROUND

**A.**   **PROCEDURAL HISTORY.**

Plaintiffs originally filed their Complaint in the Circuit Court for Baltimore City on July 19, 2007, alleging occupational exposure of Plaintiff Lewis Shifflett to asbestos.  Subsequently, CBS Corporation and Federated Development were served on or about August 8 and August 17, 2007, respectively, via certified mail with the following:  Plaintiffs' Complaint and Prayer for Jury Trial; Civil–Non-Domestic Case Information Report; Request for Removal from Inactive Civil Docket; Inactive Civil Docket Plaintiff Information Form; a Surgical Pathology Report dated April 23, 2007; Plaintiffs' Answers to Defendants' Master Set of Interrogatories; and Plaintiff Lewis Shifflett's electronically-signed Verification of Answers to Interrogatories.

While most of these documents provided only general, non-specific work history for Mr. Shifflett, Plaintiffs' Answers to Defendants' Master Set of Interrogatories [hereinafter "Answers to Interrogatories"], Answer to Interrogatory No. 88, states that "Plaintiff was exposed to asbestos while working at various commercial and residential sites in and around the greater Baltimore/Washington/Northern Virginia metropolitan area."  Plaintiffs' Answer to Interrogatory No. 88 subsequently provides a specific list of fifty-two [52] job sites in Maryland, Virginia, and Washington, D.C. at which Mr. Shifflett was allegedly exposed to asbestos.  Among the sites listed were multiple federal enclaves, including, but not limited to, the following notable enclaves:  the Walter Reed Army Medical Center [hereinafter "Walter Reed"]; the National Institutes of Health ["NIH"]; and the Indian Head naval facility in Maryland (a.k.a./f.k.a. Naval Support Facility Indian Head, Naval Surface Warfare Center, Indian Head Division, Naval Ordnance Station Indian Head, Naval Propellant Plant Indian

Head, Naval Powder Factory Indian Head, Indian Head Naval Proving Grounds, etc.) [collectively hereinafter "Indian Head" or "Indian Head naval facility"].

Therefore, because documentation filed in support of Plaintiffs' Complaint alleged that Mr. Shifflett was exposed to asbestos while working on multiple, exclusive federal enclaves, Removing Defendants filed a Notice of Removal of Civil Action with the United States District Court for the District of Maryland, Northern Division [hereinafter "U.S. District Court"] on the basis of a Federal Question under 28 U.S.C. § 1331, namely that of federal enclave jurisdiction, as well as jurisdiction conferred pursuant to 16 U.S.C. § 457. This removal was timely filed on September 7, 2007 (at **Exhibit 1**), and was accompanied by the written joinder and consent of all other proper Defendants (see **Exhibit 2**). On September 17, 2007, Removing Defendants then filed a Joint Statement on behalf of all Defendants (**Exhibit 3**) in response to the U.S. District Court's Standing Order Concerning Removal.

Although the removal of this action complied with all procedural requirements and was based exclusively upon information contained in documents that had been served with Plaintiffs' Complaint, Plaintiffs nonetheless filed a Motion for Remand on October 4, 2007, and a Motion for Expedited Consideration of Plaintiffs' Motion for Remand on October 11. Removing Defendants subsequently filed a Response in Opposition to Plaintiffs' Motion for Remand (**Exhibit 4**), as well as a Response to Plaintiffs' Motion for Expedited Consideration (**Exhibit 5**). Plaintiffs filed a Reply on the remand motion on November 2, 2007, to which Removing Defendants filed a Motion for Leave to File a Surreply Memorandum, as well as the proposed Surreply Memorandum, on November 8 (**Exhibit 6**).

Separately, the Judicial Panel on Multidistrict Litigation ["MDL Panel"] issued a Conditional Transfer Order (CTO-275) on October 1, 2007, conditionally transferring this action to the United States District Court for the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. §1407.   On October 30, 2007, Plaintiffs ' filed a Motion to Vacate Conditional the Transfer Order and a Brief in Support, to which Removing Defendants presently respond.

**B.    LEGAL SUMMARY.**

Under 28 U.S.C. § 1407, the MDL Panel may transfer civil actions involving one or more common questions of fact, pending in different districts, to any district for coordinated or consolidated pretrial proceedings, upon the Panel's determination that transfers for such proceedings will be for the convenience of parties and witnesses, and will promote the just and efficient conduct of such actions.   Accordingly, the MDL Panel determined that asbestos litigation should be consolidated in order to serve the objectives set forth in the MDL statutory scheme; the Panel concluded that centralization of these actions under § 1407 would streamline the pretrial proceedings and avoid the most objectionable aspects of asbestos litigation – e.g. growing state and federal court dockets, delays, lengthy trials, repetition of litigation, higher costs than recoveries, etc. –  which result from the large number and complexity of cases alleging personal injury and/or wrongful death as a result of asbestos exposure. *In re Asbestos Products Liability Litigation*, 771 F.Supp. 415; *see also Report of The Judicial Conference Ad Hoc Committee on Asbestos Litigation*, 1-3 (1991).

Therefore, pursuant to 28 U.S.C. § 1407, on July 29, 1991, the MDL Panel transferred 21,937 civil actions to the U.S. District Court for the Eastern District of Pennsylvania

["Asbestos MDL Court"] for coordinated or consolidated pretrial proceedings. *See* 771 F.Supp. 415 (J.P.M.L. 1991) (*cited in Docket No. 875, Before the Judicial Panel on Multidistrict Litigation, In re Asbestos products Liability Litigation (No. VI), Conditional Transfer Order* (CTO-275)). Since that time, 81, 832 additional actions have been transferred to the Asbestos MDL Court, and all actions have been assigned to the Honorable James T. Giles. (CTO-275.) These later cases, termed "tab-along actions," are transferred by the MDL Panel pursuant to Rule 7.4 of the *Rules of Procedure of the Judicial Panel on Multidistrict Litigation* ["R.P.J.P.M.L."], 199 F.R.D. 425, 435-36 (2001). A "tag-along action" refers to a civil action pending in a district court and involving common questions of fact with actions previously transferred under 28 U.S.C. § 1407. Rule 1.1, R.P.J.P.M.L, 199 F.R.D. 425.

## II.  <u>ARGUMENTS</u>

In their Motion to Vacate, Plaintiffs assert that transfer of this action by the Judicial Panel on Multidistrict Litigation [hereinafter "MDL Panel"] to the U.S. District Court for the Eastern District of Pennsylvania is unjustified, based primarily upon the argument that transfer of this action to the Asbestos MDL Court would unfairly deny one of the two Plaintiffs, allegedly diagnosed with mesothelioma, a trial date prior to his death. This Response in Opposition refutes those arguments raised in Plaintiffs' Motion to Vacate.

A.  **IT IS HIGHLY UNLIKELY THAT PLAINTIFFS WOULD RECEIVE A TRIAL DATE BEFORE 2009, EVEN IF THE CASE WERE REMANDED TO STATE COURT.**

Plaintiffs, in their Motion to Vacate, repeatedly emphasize the poor health of Mr. Shifflett, arguing that he will not survive to have his day in court if Plaintiffs' case is transferred to the Asbestos MDL Court. In the process of making this argument, Plaintiffs

imply that they will receive a trial in July 2008 if the case was remanded to the Circuit Court for Baltimore City [hereinafter "State Court"]. However, Plaintiffs were never scheduled for a State Court trial in 2008, and it is highly unlikely that the case would be tried before 2009 even if remanded to State Court. Although Plaintiffs filed a Motion to Consolidate this case into their counsel's pre-existing 2008 mesothelioma trial group (in July 2008) prior to removal, this Motion was not yet ripe at the time of removal, and Defendants would be able to file oppositions in event the case was remanded State Court.

Further, given the short amount of time until the trial date requested by Plaintiffs (less than eight months), as well as the fact that practically no discovery has taken place in this case (though has already commenced in the other State Court cases in the applicable July 2008 trial group), it should be expected that Plaintiffs' Motion to Consolidate would be vigorously opposed by a number of Defendants if the case were remanded. Moreover, such opposition would be a virtual certainty given that significant deadlines for this July 2008 trial group have either already passed or are rapidly approaching (*see* **Exhibit 7**);[1] once passed, all Defendants would be unfairly prejudiced by consolidation into the July 2008 trial group. For all of these reasons, it would be highly unlikely that the State Court, which is acutely aware of the trial preparation required in complex products liability litigation, and based upon its recent practices, would grant Plaintiffs' Motion to Consolidate this action into the July 2008 mesothelioma trial group. This, combined with the fact that the remaining trial slots in the mesothelioma trial groupings of September, October, and November 2008 are currently filled

---

[1] Notably, Direct Defendants have until November 16, 2007 to identify parties against whom contribution and indemnity claims will be pursued. Under the Scheduling Order, any Defendant failing to identify such claims results in those claims being automatically dismissed (Exhibit 7). Also, direct Defendants have until November 30, 2007 to serve Third-Party Complaints. *Id.*

with cases from other plaintiffs' firms,[2] makes it highly unlikely that the Plaintiffs would
receive a 2008 trial date in State Court, even if the case were remanded.

**B.     THE ASBESTOS MDL COURT HAS INDICATED THAT IT GIVES PRIORITY STATUS TO
EXTREMIS CASES AND TO THOSE CASES INVOLVING MALIGNANCIES.**

Plaintiffs argue that their case is unique because it involves a situation where one of the
Plaintiffs is still alive, is dying from mesothelioma, and thus transfer to the Asbestos MDL
Court would be even more unjustified than normal.  However, there have been numerous cases
transferred to the Asbestos MDL Court in which a Plaintiff allegedly diagnosed with a
malignancy was still alive, and Plaintiffs have not identified anything that would distinguish the
present action from other such actions that were previously transferred.  Moreover, the
Asbestos MDL Court has expressly indicated that living Plaintiffs and cases involving
malignancies will receive priority status.  Thus Plaintiffs concerns in this regard have already
been specifically considered by the Asbestos MDL Court, as the Third Circuit noted in *In re
Patenaude*, 210 F.3d 135, 139-40 (3rd Cir. 2000):

> The transferee [Asbestos MDL] court has stated . . . that among its
> "overriding objectives" "[t]hroughout the course of the multidistrict
> litigation" is the court's "considered judicial opinion that the sick and dying,
> their widows and survivors should have their claims addressed first."
> *Carlough v. Amchem*, No. 93-215, at 8 (E.D.Pa. Apr. 15, 1993) (Mem.Op.).

(Citations in original.)  The Third Circuit further noted the following:

> The transferee court's Administrative Order No. 3, which relates to all
> asbestos actions, reflects this policy. This Order establishes that in
> attempting to resolve cases through negotiation, cases of mesothelioma and
> lung cancer with asbestosis will be "address[ed] ... on a priority basis."
> (A.47-48). However, the court cautioned that "special efforts to resolve

---

[2] It is the current standing practice of the Circuit Court for Baltimore City to schedule five [5] mesothelioma cases
per month, with the exception of August and December, in which no cases are scheduled for trial.

> hardship cases are not a substitute for broad-based negotiations designed to reduce docket the [sic] backlog." (A.47). The Order establishes the procedures for exchange of information and negotiation to be followed in MDL 875. If this process does not produce a resolution, "the Court shall determine whether the matter is appropriate for immediate remand of the plaintiff's compensatory damages claims." (A.50). The Order states that only when all priority cases have been addressed will the court consider applying similar procedures to address cases of other malignant conditions and asbestosis and that "[a]s to cases that involve non-malignant conditions other than asbestosis, the Court intends to establish an inactive docket." (A.53).

*In re Patenaude*, 210 F.3d 135, 139-40 (citations in original).

Thus Plaintiffs' case will be given priority status by the Asbestos MDL Court, which considers cases involving mesothelioma and cases involving the "sick and dying" on a priority basis. As such, there is no merit to Plaintiffs' arguments that their case would be unfairly and unreasonably prejudiced by transfer to the Asbestos MDL Court.

## C.   PLAINTIFFS' ARGUMENTS PERTAINING TO PROCEDURAL DEFICIENCIES AND LACK OF SUBJECT MATTER JURISDICTION ARE WITHOUT MERIT.

Despite Plaintiffs' numerous and varied arguments to the contrary, Removing Defendants fully complied with all statutory, procedural requirements for removal of this action, and submitted a Notice of Removal containing a colorable claim of removability. These matters were discussed at length in Removing Defendants' Response in Opposition to Plaintiffs' Motion for Remand (Exhibit 4). Further, and again despite Plaintiffs' assertions to the contrary, Removing Defendants have sufficiently demonstrated original federal court jurisdiction over *each* of the multiple, exclusive federal enclaves discussed by Removing Defendants in their Notice of Removal and in their Response in Opposition to Plaintiffs' Motion for Remand, any one of which would have been sufficient to confer "removal jurisdiction" (or subject matter jurisdiction) on the U.S. District Court.

*See* Exhibits 1, 3-6. Thus Plaintiffs claims of procedural or jurisdictional deficiencies with this removal are without merit.

Moreover, Plaintiffs arguments that the Conditional Transfer Order should be vacated "until the question of federal jurisdiction is resolved by the transferor court" (P.'s Motion to Vacate 2) is based on the faulty assumption that the Court is required to rule on Plaintiffs' Motion for Remand. In actuality, the U.S. District Court obtained jurisdiction over this action at the time the case was removed from State Court, and no further action would be required on the Motion for Remand *unless* the Court was to determine that the Court did not have subject matter jurisdiction over this action. However, as discussed *supra,* the District Court clearly has subject matter jurisdiction over this matter based on Plaintiffs' claims arising on exclusive federal enclaves, and thus no action on Plaintiffs' Motion for Remand is required.

**D.    PLAINTIFFS' ARGUMENTS THAT THE ASBESTOS MDL COURT IS A "BLACK HOLE" IS UNFOUNDED AND IRRELEVANT.**

Plaintiffs' disdain for the Asbestos MDL Court is not a proper topic for consideration by this Panel, as it involves policy arguments that are not only unfounded (relying on unreported opinions from other jurisdictions), but also irrelevant. At present, Congress and the federal judiciary have decided that the proper way to resolve the mass of asbestos litigation is to transfer cases to the Asbestos MDL Court for consolidated pretrial proceedings. This case clearly fits into that category of case, and is thus properly an action for consideration by the Asbestos MDL Court.

## III.  <u>CONCLUSION</u>

Based on the foregoing, this case was properly removed from State to Federal Court, and Plaintiffs' Motion to Vacate Condition Transfer Order should therefore be denied.

WHEREFORE, Defendants CBS Corporation and Federated Development respectfully requests that this Court deny Plaintiffs' Motion to Vacate Conditional Transfer Order.


/s/ _W. Thomas Law_

Philip A. Kulinski
Federal Bar # 27543

W. Thomas Lawrie
Federal Bar # 28226

EVERT WEATHERSBY HOUFF
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, MD  21202
Phone:    443-573-8500
Fax:        443-573-8501

Attorneys for:
**Defendant CBS Corporation**
**Defendant Federated Development**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV 2 1 2007

FILED
CLERK'S OFFICE

## CERTIFICATE OF SERVICE

I hereby certify that, on this 19th day of November, 2007, a true and correct copy of the foregoing Removing Defendants' Response in Opposition to Plaintiffs' Motion to Vacate Conditional Transfer Order was served via first-class mail, postage prepaid, upon the following individuals:

Jonathan Ruckdeschel, Esquire
The Ruckdeschel Law Firm, LLC
5126 Dorsey Hall Drive, Suite 201
Ellicott City, Maryland 21042

▪ **Attorneys for Plaintiffs**

Richard D. Albert, Esquire
Steptoe & Johnson, LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036-1795

Attorneys for the following Defendant:

▪ **Metropolitan Life Insurance Company**

David F. Albright, Esquire
The Law Offices of David F. Albright
1122 Kenilworth Drive, Suite 500
Baltimore, Maryland 21204

Attorneys for the following Defendant:

▪ **H.B. Smith Co., Inc.**

Steven A. Allen, Esquire
Hodes, Pessin & Katz, P.A.
901 Dulany Valley Road, Suite 400
Towson, Maryland 21204

Attorneys for the following Defendant:

▪ **Potomac Electric Power Company**

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

2007 NOV 20  A 11: 22

RECEIVED
CLERK'S OFFICE

Thomas P. Bernier, Esquire
Segal, McCambridge, Singer & Mahoney
One North Charles Street, Suite 2500
Baltimore, Maryland 21201

Attorneys for the following Defendant:

- **Weil-McLain**

Malcolm S. Brisker, Esquire
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, Maryland 21202

Attorneys for the following Defendants:

- **C.J. Coakley, Co., Inc.**
- **Rockbestos-Surprenant Cable Corp.**

Scott Patrick Burns, Esquire
Tydings & Rosenberg, LLP
100 East Pratt Street, 26th Floor
Baltimore, Maryland 21202

Attorneys for the following Defendant:

**Thomas Somerville Company**

Paul J. Day, Esquire
DLA Piper US LLP
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209-3600

Attorneys for the following Defendants:

- **Ford Motor Company**
- **General Motors Corporation**

Thomas L. Doran, Esquire
DeCaro, Doran, Siciliano, Gallagher & DeBlasis, LLP
4601 Forbes Boulevard, Suite 200
Post Office Box 40
Lanham, Maryland 20703

Attorneys for the following Defendant:

- **A.O. Smith Corporation**

---

George C. Doub, Esquire
The Murphy Firm
One South Street, 23rd Floor
Baltimore, Maryland 21202

Attorneys for the following Defendant:

- **Honeywell International, Inc.**

---

Katherine S. Duyer, Esquire
Gavett and Datt, P.C.
15850 Crabbs Branch Way, Suite 180
Rockville, Maryland 20855

Attorneys for the following Defendant:

- **AC&R Insulation Co., Inc.**
- **Keeler/Dorr-Oliver Boiler Company**

---

Richard L. Flax, Esquire
Law Offices of Richard L. Flax, LLC
100 North Charles Street, Suite 1700
Baltimore, Maryland 21201

Attorneys for the following Defendant:

- **Walter E. Campbell Company, Inc.**

---

Louis E. Grenzer, Jr., Esquire
Bodie, Nagle, Dolina, Smith & Hobbs, P.A.
21 W. Susquehanna Avenue
Towson, Maryland 21204

Attorneys for the following Defendant:

- **MCIC, Inc.**

Robert M. Gittins, Esquire
Law Offices of William J. Hickey
33 Wood Lane
Rockville, Maryland 20850

For:

- **Boiler and Furnace Cleaners, Inc.**
- **Hurley Company Operating Division of Boiler and Furnace Cleaners, Inc.**

Jeannie Pittillo Kauffman, Esquire
Bacon, Thorton & Palmer, LLP
6411 Ivy Lane, Suite 706
Greenbelt, Maryland 20770

Attorneys for the following Defendants:

- **Bondex International, Inc.**
- **RPM, Inc.**
- **RPM International, Inc.**

Steven A. Luxton, Esquire
Morgan, Lewis & Bockius, LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004

Attorneys for the following Defendant:

- **Owen-Illinois, Inc.**

Neil J. MacDonald, Esquire
Hartel, Kane, DeSantis, MacDonald & Howie, LLP
Calverton Office park
11720 Beltsville Drive, Suite 500
Beltsville, Maryland 20705

Attorneys for the following Defendant:

- **Crane Co.**
- **Kelly-Moore Paint Company, Inc.**

14

Joel D. Newport, Esquire
Moore & Jackson, LLC
305 Washington Avenue, Suite 401
Towson, Maryland 21204

Attorneys for the following Defendant:

- **Kaiser Gypsum, Co.**
- **Columbia Boiler Co.**

Jeremy W. North, Esquire
North & Cobb, P.A.
7313 York Road
Towson, Maryland 21204

Attorneys for the following Defendant:

- **General Refractories Company**

Richard P. O'Leary, Esquire
McCarter & English, LLP
245 Park Avenue
New York, New York 10167

Attorneys for the following Defendant:

- **Mestek, Inc.**

Vincent J. Palmiotto, Esquire
Miles & Stockbridge, P.C.
10 Light Street
Baltimore, Maryland 21202-1487

Attorneys for the following Defendants:

- **Avco Corporation, Spencer-Lycoming Division**
- **CertainTeed Corporation**
- **Cleaver-Brooks, Inc.**
- **Georgia-Pacific, LLC**
- **Superior Boiler Works**
- **TH Agriculture & Nutrition, LLC**

Steven J. Parrott, Esquire
DeHay & Elliston, LLP
36 South Charles Street, Suite 1300
Baltimore, Maryland 21201

Attorneys for the following Defendants:

- **Union Carbide Corporation**
- **Riley Power, Inc.**
- **Pneumo Abex LLC**
- **Foster Wheeler Energy Corporation**
- **Foster Wheeler, LLC**
- **The Okonite Company**

---

Scott H. Phillips, Esquire
Semmes, Bowen & Semmes, P.C.
250 West Pratt Street
Baltimore, Maryland 21201

Attorneys for the following Defendant:

- **Noland Company**

---

Michael A. Pichini, Esquire
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, Maryland 21202

Attorneys for the following Defendant:

- **Zurn Industries, LLC**

---

Theodore F. Roberts, Esquire
Venable, LLP
210 Allegheny Avenue
Post Office Box 5517
Towson, Maryland 21285-5517

Attorneys for the following Defendants:

- **American Standard Companies, Inc.**
- **Crown Cork and Seal Company**
- **Crown Cork & Seal USA, Inc.**
- **Rapid American Corporation**

---

David A. Seltzer, Esquire
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
The Colorado Building
1341 G Street, NW, Suite 500
Washington, D.C. 20005

Attorneys for the following Defendant:

- **Oakfabco, Inc.**

---

Deborah K. St. Lawrence, Esquire
Brown & Sheehan, LLP
One South Street, 23rd Floor
Baltimore, Maryland 21202

Attorneys for the following Defendant:

- **Chrysler LLC**

---

Keith R. Truffer, Esquire
Royston, Mueller, McLean & Reid, LLP
The Royston Building
102 West Pennsylvania Avenue, Suite 600
Towson, Maryland 21204

Attorneys for the following Defendant:

- **A.W. Chesterton Company**

---

James T. Zois, Esquire
Meringer, Zois & Quigg, LLC
300 East Lombard Street, Suite 1440
Baltimore, Maryland 21202

Attorneys for the following Defendant:

- **General Electric Company**

---

_W. Thomas Lawrie_
W. Thomas Lawrie

17

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV 2 1 2007

FILED
CLERK'S OFFICE

## PANEL SERVICE LIST

I hereby certify that, on this 19th day of November, 2007, a true and correct copy of the foregoing Removing Defendants' Response in Opposition to Plaintiffs' Motion to Vacate Conditional Transfer Order was served via first-class mail, postage prepaid, upon the following individuals pursuant to CTO-291:

Richard C. Binzley, Esq.
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, Ohio 44114

Edward J. Cass, Esq.
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, Ohio 44115

Adam M. Chud, Esq.
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001

David A. Damico, Esq.
Burns, White & Hickton, LLC
Four Northshore Center
106 Isabella Street
Pittsburgh, Pennsylvania 15212

Raymond P. Forceno, Esq.
Forceno & Hannon
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, Pennsylvania 19106-2574

Ellen B. Furman, Esq.
Goldfein & Hosmer
1600 Market Street, 33rd Floor
Philadelphia, Pennsylvania 19103

Ellen J. Gibbon, Esq.
McCarter & English, LLP
245 Park Avenue
27th Floor
New York, New York 10167

Susan M. Hansen, Esq.
Brownson & Ballou
225 South Sixth Street, Suite 4800
Minneapolis, Minnesota 55402

Reginald S. Kramer, Esq.
Oldham & Dowling
195 South Main Street, Suite 300
Akron, Ohio 44308-1314

David C. Landin, Esq.
Hunton & Williams, LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219

Gene Locks, Esq.
Locks Law Firm, LLC
1500 Walnut Street
Philadelphia, Pennsylvania 19102

Ronald L. Motley, Esq.
Motley Rice, LLC
P.O. Box 1792
28 Bridgeside Boulevard
Mt. Pleasant, South Carolina 29464

18

John J. Repcheck, Esq.
Marks, O'Neill, O'Brien & Courtney, PC
3200 Gulf Tower
707 Grant Street
Pittsburgh, Pennsylvania 15219

John D. Roven, Esq.
Roven-Kaplan, L.L.P.
2190 North Loop West, Suite 410
Houston, Texas 77018

Richard D. Schuster, Esq.
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008

Neil Selman, Esq.
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, California 90025

Robert N. Spinelli, Esq.
Kelley, Jasons, McGuire & Spinelli, L.L.P.
Centre Square West
15th Floor
Philadelphia, Pennsylvania 19102

Robert E. Swickle, Esq.
Jaques Admiralty Law Firm, PC
1370 Penobscot Building
645 Griwsold Street
The Maritime Asbestosis Legal Clinic
Detroit, Michigan 48226-4192

Andrew J. Trevelise, Esq.
Reed Smith, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, Pennsylvania 19103

James K. Weston, II, Esq.
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, Iowa 52406

*W. Thomas Lawrie*
W. Thomas Lawrie

# Exhibit 1

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LEWIS SHIFFLETT, et ux. | * | Civil Action: |
| Plaintiffs | * | (Circuit Court for Baltimore City Case No.:  24X07000313) |
| v. | * | |
| AC&R INSULATION CO., INC., et al. | * | |
| Defendants | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### NOTICE OF REMOVAL OF CIVIL ACTION

**TO PLAINTIFFS AND THEIR ATTORNEY OF RECORD:**

PLEASE TAKE NOTICE that Defendant CBS Corporation, a Delaware corporation, f/k/a Viacom Inc., successor by merger to CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation [hereinafter "CBS Corporation"], and the Defendant named as Federated Development Company, a Texas corporation merged into Federated Development, LLC, a Delaware limited liability company [hereinafter "Federated Development"], joined in and consented to by all Defendants named and served in the civil action filed in the Circuit Court for Baltimore City, Maryland, Civil Action No. 24X07000313 ["the State Case"], hereby note the removal of this action to the United States District Court for the District of Maryland, Northern Division.  The United States District court's basis for jurisdiction is that of a Federal Question under 28 U.S.C. § 1331, namely that of federal enclave jurisdiction, as well as jurisdiction conferred pursuant to 16 U.S.C. § 457, as the job sites at issue in this matter

include exclusive federal enclaves, notably the naval facility at Indian Head, Maryland, the Walter Reed Army Medical Center, and the National Institutes of Health.

In support thereof, CBS Corporation and Federated Development state the following:

1.    On or about August 8, 2007, CBS Corporation was served via certified mail with Plaintiffs' Complaint and Prayer for Jury Trial [hereinafter "Complaint" or "Plaintiffs' Complaint"]. *See* **Exhibit 1**. This service constituted CBS Corporation's first notice of this matter. On or about August 17, 2007, Federated Development was served via certified mail with Plaintiffs' Complaint. *See* **Exhibit 2**. This service constituted Federated Development's first notice of this matter.

2.    Plaintiffs' Complaint is based upon the alleged exposure of decedent Lewis Shifflett to asbestos. The documents attached to, and served with, Plaintiffs' complaint indicate that the job sites at which Mr. Shifflett was allegedly exposed to asbestos include the Indian Head Power Plant, which is located at the naval facility at Indian Head, Maryland (currently the Naval Support Facility (NSF) Indian Head, with the primary tenant being the Naval Surface Warfare Center (NSWC) Division at Indian Head) [hereinafter collectively "Indian Head" or "Indian Head naval facility"], at the Walter Reed Army Medical Center ["Walter Reed"], and at the National Institutes of Health ["NIH"]. Specifically, these sites are listed in Plaintiffs' Answer to Interrogatory No. 88 in Defendants' Master Set of Interrogatories. (Pl.'s Ans. to Interrog., 36-38; at **Exhibit 3**), which Plaintiffs have certified were mailed with the Complaints.

3.    The naval facility at Indian Head, Maryland has been an exclusive federal enclave for over 110 years, occupying a 3,500-acre peninsula, bounded by the Potomac

River and Mattawoman Creek, and is located in the town of Indian Head in Charles County, Maryland. http://www.dcmilitary.com/special_sections/sw/082107_ndw/ss_164639_31942.shtml (last visited September 7, 2007). The U.S. Navy originally purchased land at Indian Head at the end of the 19th century, http://www.townofindianheadmd.org/history-townfacts.htm (last visited September 7, 2007), and established a naval facility at Indian Head in 1890 when Ensign Dashiele came from the Annapolis area to survey and build a proving ground for the testing of guns, munitions, and armor plate for Navy ships. *Id*; *see also* http://www.globalsecurity.org/military/facility/indian-head-history.htm (last visited September 7, 2007); Naval Sea Systems Command, Naval Surface Warfare Center, Indian Head Division, *Indian Head History, 1890-1997* (at **Exhibit 4**). The Navy oversaw the building construction of brick dwellings for enlisted men, improvements to the water supply and the installation of an electric plant. http://www.townofindianheadmd.org/history-townfacts.htm After the Battle of manila Bay in 1898, which revealed a lack of an adequate supply of smokeless powder for the new rapid-fire gun, Congress passed a bill authorizing the navy to proceed with the construction of a powder factory at Indian Head devoted to smokeless powder production. *Id*. The Navy subsequently purchased a piece of acreage known as Mason's Enlargement with an eye toward World War I wartime expansion; this remote point became known as Stump Neck, with only a path connecting the area to the main road. http://www.globalsecurity.org/military/facility/indian-head-history.htm

At various times during its history, the naval facility at Indian Head was known as the Naval Propellant Plant, the Naval Proving Ground at Indian Head, the Naval Powder

Factory, and the Naval Ordnance Station.  Today, the Naval Surface Warfare Center (NSWC) Division at Indian Head is the primary tenant on Naval Support Facility (NSF) Indian Head.  The Indian Head naval facility remains a major naval center; the Navy's explosive research and undersea warhead development work has been transferred from NSCW White Oak, Maryland to Indian Head by BRAC 93, and the explosive loading facilities at Naval Weapons Station Yorktown have begun to be shut down with the work being transferred to Indian Head.  http://www.globalsecurity.org/military/facility/indian-head-history.htm  The Naval Support Activity South Potomac, which is part of naval District Washington, serves as base landlord, providing all shore installation management services (encompassing all land, buildings, and support services) to the tenant commands of NSF Indian Head, including NSWC Indian Head Division, Naval Explosive Ordnance Disposal Technology Division, Naval Ordnance Safety and Security Activity, and others.  http://www.cnic.navy.mil/SPotomac?AboutCNIC/index.htm (last visited September 7, 2007).  Federal law and military law applies to its establishment and continued operation.

4.     The Walter Reed Army Medical Center is an exclusive federal enclave.  The Walter Reed Army Medical Center, located at 6900 Georgia Avenue, N.W., Washington, D.C., is a United States Army medical facility.  http://www.narmc.amedd.army.mil/ (last visited September 7, 2007); http://www.wramc.amedd.army.mil/ (last visited September 7, 2007).  Federal law and military law also applies to its founding and continued operation.

At its founding, appropriations estimates were submitted by the Secretary of War by letter to the Secretary of the Treasury, Leslie Mortimer Shaw, "for the construction of an army general hospital at Washington, D.C., December 19, 1905. H.R.Doc.No.59-273,

Serial Set Vol. 4986.  This estimate was apparently insufficient, requiring additional appropriations. Committee on Appropriations - House, Urgent Deficiency Appropriations, January 18, 1906. H. R. Rep. No. 59-293, Serial Set Vol. 4906. Committee on Appropriations – Senate, Urgent Deficiency Bill, February 8, 1906. S. Rep. No. 59-798, Serial Set Vol. 4904. Committee of Conference – House, Conference Report on Bill Making Appropriations to Supply Urgent Deficiencies, February 19, 1906, Serial Set Vol. 4906.

On February 27, 1906, Congressional legislation authorized  appropriations for funding and construction of "an army general hospital in the District of Columbia" by the War Department.  The Statutes At Large of the United States of America from December, 1905 to March, 1907, Volume XXXIV. Part 1. Sess. I.  Ch. 510. 1906. 34 Stat. 27, Chapter 510, Bill No. H.R. 12320. http://www.wramc.amedd.army.mil/ (last visited September 5, 2007).

The naming of the Army General Hospital was in place before appropriations were finalized and Congress approved its construction.  By Order of the Secretary of War, F.C. Ainsworth, the authority for the naming of Walter Reed is General Order No. 172 of the War Department, paragraph II, dated October 16, 1905, which states, in part: "The Army General Hospital which will be constructed in the District of Columbia, under the authority conferred by the act of Congress approved March 8, 1905, is designated and will be known as the Walter Reed United States Army General Hospital…" (Source: Philip S. Hench Walter Reed Yellow Fever Collection, property of Historical Collections and Services of the Health Science Library, University of Virginia. http://yellowfever.lib.virginia.edu/reed/ (last visited September 5, 2007).

5

Appropriations estimates were again submitted by the Secretary of War by letter to the Secretary of the Treasury, Leslie Mortimer Shaw, "for the purchase of land adjoining the site of the Army General Hospital in the District of Columbia, February 25, 1907. S.Doc. No. 59-349, Serial Set Vol. 5072.

The Walter Reed United States Army General Hospital admitted its first patients on May 1, 1909 http://www.wramc.amedd.army.mil/ (last visited September 7, 2007). Pursuant to federal law, in 1910 Congress appropriated twenty five thousand dollars for construction of quarters for nurses. The Statutes At Large of the United States of America from March,1909 to March, 1911, Volume XXXVI, Part 1, Sess. II. Ch. 115,1906. Later, in 1933, General John L. Pershing signed the War Department Order, creating the Army Medical Center, while in September, 1951, the entire complex was renamed the Walter Reed Army Medical Center. http://www.wramc.amedd.army.mil/welcome/history (last visited November 6,2006).

Subsequently, in 1972, following five years of planning, after five years of planning, groundbreaking took place in 1972 for a new Walter Reed Army Medical Center medical building.  On September 26, 1977 it was dedicated by Walter Reed's granddaughter and other dignitaries. http://www.wramc.amedd.army.mil/ (last visited September 7, 2007).

As further evidence of federal control and oversight, in connection with Military Base Realignment and Closure (BRAC), Walter Reed Army Medical Center will merge with the National Naval Medical Center by September, 2011. Located in Bethesda, that facility will be called the Walter Reed National Military Medical Center.

http://www.wramc.amedd.army.mil/.    Also, *see* generally, the U.S. Department of

Defense BRAC web site at http://www.dod.mil.brac/ (last visited September 7, 2007).

Therefore, the events chronicled above constitute federal enclave jurisdiction

status for the Walter Reed Army Medical Center in this matter, where Federal law and

military law are the basis for its founding and continued operation.

5.    The National Institutes of health is an exclusive federal enclave. The

National Institutes of Health is an agency of the U.S. Department of Health and Human

Services. 42 U.S.C.A. § 281. The NIH is also an agency of the Public Health Service. 42

U.S.C.A. §202 and §281. The main NIH campus is located at 9000 Rockville Pike,

Bethesda, Maryland 20892. http://www.nih.gov (last visited September 7, 2007). The

property occupied by the NIH at this address is owned by the United States Government.

Maryland Department of Assessments and Taxation Real Property Data Search, Map

HP21, Parcel P598. http://www.dat.state.md.us/

The National Institutes of Health traces its beginning to July 16, 1798, when "An

Act for relief of sick and disabled Seamen" established the Marine Hospital Service for

merchant seamen. 1 Stat. L. 605. On or about May 26, 1930, The Ransdell Act

reorganized, expanded and redesignated the Hygienic Laboratory as the National Institute

of Health. Pub. L. 71-251, 46 Stat. L. 379. *See also*

www.nih.gov/about/almanac/histotical/legislative_chronology.htm (last visited September

7, 2007).

Federal law applies not only to its founding and organization but also the

administration, operation and security of the NIH.  The Director of the NIH is appointed

by the President with advice and consent of the Senate. 42 U.S.C.A. §282(a).  The duties

and responsibilities of the Director of the NIH are codified at 42 U.S.C.A. §282(b). The Director of the NIH has available a discretionary fund to carry out activities authorized under statute for, among other things, research meeting certain criteria and for the purchasing or renting of equipment for activities of various research Institutes. 42 U.S.C.A. §282(i).   Appropriations are also available for, among other things, the maintenance of NIH buildings. 42 U.S.C.A. §282(f).   Additionally, the Director of the NIH also manages the National Institutes of Health Management Fund. The use of this fund is for the purpose of facilitating the economical and efficient conduct of operations in the NIH under certain criteria. 42 U.S.C.A. §290. In the area of human resources or employee relations administration, the Director of the NIH may also establish day care for children of NIH employees. 42 U.S.C.A. §282(k).

With respect to security, the federal government put into place a system of emergency preparedness for the protection of life and property in the United States from hazards. Executive Order No. 12656 (EON 12656) assigns emergency preparedness responsibilities for coordination among federal government departments and agencies. Part 8, §801 of EON 12656 delineates those "lead responsibilities" for the Department of Health and Human Services. 42 U.S.C.A. §5195nt, EON12656.

Therefore, based on the above federal law applicable to its founding, organization, administration, operation and security, the National Institutes of Health qualify for federal enclave jurisdiction status in this matter.

Moreover, federal case law is clear that NIH is a federal enclave for federal jurisdiction purposes.  In his 1970 opinion in *Evans v. Cornman*, Justice Marshall wrote the following:

> Under Art. I, s 8, cl. 17, of the United States Constitution, Congress is empowered to 'exercise exclusive Legislation in all Cases whatsoever over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings.' **NIH, a medical research facility owned and operated by the United States Government, is one of the places subject to that congressional power.** The facility commenced operation more than 30 years ago, when land was purchased and residential buildings were built to allow scientists and doctors to live near their work. **It did not become a federal reservation, however, until 1953 when the State of Maryland ceded jurisdiction over the property to the United States.**[FN2]

398 U.S. 419, 421 (1970) (*emphasis added*) (with FN2 referring to Md.Ann.Code, Art. 96, s 34). Thus it is clear that the U.S. District Court has jurisdiction over alleged harms occurring at the NIH.

6.   The defendants' right of removal in a civil action is provided in 28 U.S.C. § 1441(a), which states:

> (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Thus pursuant to 28 U.S.C. § 1441(a), defendant(s) may remove an action to federal court if the case is one over which the U.S. district courts have original jurisdiction. Further, federal courts have "original jurisdiction" over cases involving diversity of citizenship between parties, because of claims arising under federal law, or by virtue of some other explicit grant of jurisdiction. *Powers v. South Central United Food & Commercial Workers Unions and Employers Health & Welfare Trust*, 719 F.2d 760, 763 (5th Cir. 1983). Claims "arising under" federal law are those based on federal question jurisdiction under 28 U.S.C. §1331, which provides that, "[t]he district courts shall have original

9

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

7.    In the instant matter, the U.S. District Court has original jurisdiction pursuant to federal enclave jurisdiction, which is a specific type of federal question jurisdiction arising under 28 U.S.C. § 1331. The Constitution grants Congress the power "[t]o exercise exclusive Legislation in all Cases whatsoever . . . over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, Dockyards, and other needful Buildings." U.S. Const. art. I., § 8, cl. 17. The federal courts have held that "[s]uch places are 'federal enclaves' within which the United States has exclusive jurisdiction." *Akin v. Ashland Chemical*, 156 F.3d 1030, 1034 (10th Cir. 1998), (*citing Mater v. Holley*, 200 F.2d 123, 124-25 (5th Cir. 1952)). As such, "[p]ersonal injury actions which arise from incidents occurring in federal enclaves may be removed to federal district court as a part of federal question jurisdiction." *Akin*, 156 F.3d at 1034; *Mater*, 200 F.2d at 124-25.

8.    The U.S. District Court also has original jurisdiction over this matter on the basis of 16 U.S.C. § 457, which provides the following:

> *Action for death or personal injury within national park or other place under jurisdiction of United States; application of State laws.* In the case of the death of any person by the neglect or wrongful act of another within a national part or other place subject to the exclusive jurisdiction of the United States, within the exterior boundaries of any State, such right of action shall exist as though the place were under the jurisdiction of the State within whose exterior boundaries such place may be; and in any action brought to recover on account of injuries sustained in any such place the rights of the parties shall be governed by the laws of the State within the exterior boundaries of which it may be. (Feb. 1, 1928, c. 15, 45 Stat. 54).

Pursuant to 16 U.S.C. § 457, federal courts are explicitly granted jurisdictional authority over death and personal injury claims arising in federal enclaves. *Stokes v. Adair*, 265 F.2d 662, 665-66 (4th Cir. 1959). The laws of the state that are assimilated under § 457 "lose their character as laws of the state and become laws of the Union," thereby providing an independent basis for federal jurisdiction independent of the "arising under federal law" provision of 28 U.S.C. § 1331. *Id.*

9.    In the present matter, because Mr. Shifflett was allegedly injured on exclusive federal enclaves, the United States District Courts have two independent bases for original jurisdiction: **federal enclave jurisdiction** – a specific type of federal question jurisdiction arising under 28 U.S.C. § 1331; and **16 U.S.C. § 457 jurisdiction**, by virtue of the explicit grant of authority provided by statute. Therefore, as these cases involve the federal courts' original jurisdiction, and as the Plaintiffs originally brought suit in Baltimore City, Maryland, the Defendants may properly remove this case to the United States District Court for the District of Maryland, Northern Division pursuant to 28 U.S.C. §1441(a). *See Akin v. Big Three Industries*, 851 F. Supp. 819, 821-22 (E.D. Tex. 1994) (stating that "enclave jurisdiction is properly invoked" where "plaintiffs' claims arise out of exposure to chemicals on base in furtherance of their employment duties"); *Fung v. Abex Corp., et al.*, 816 F. Supp. 569, 571 (N.D. Cal. 1992) (indicating that as plaintiff's causes of action arose on an exclusive federal enclave, they were properly the subject of federal jurisdiction).

10.    All other Defendants named and served in the State Case have joined in, and consented to, this Notice of Removal, and each has expressly stated their joinder and consent in written correspondence. These correspondences have been filed separately

with the Clerk, United States District Court for the District of Maryland under the docket entry, "Consent of Removal." These correspondences do not constitute a waiver of any defenses to which these Defendants are otherwise entitled, including without limitation, the defenses of lack of personal jurisdiction, insufficient process or service of process, and improper venue.

11.   CBS Corporation and Federated Development reserve the right to amend this Notice of Removal as may be necessary.

12.   CBS Corporation and Federated Development reserve all defenses, including without limitation, the defenses of lack of personal jurisdiction, insufficient process or service of process, and improper venue.

13.   In accordance with 28 U.S.C. §1446(a) and Local Rule 103(5)(a), CBS Corporation and Federated Development have filed with this Notice of Removal true and correct copies of all process, pleadings, and orders that have been served upon CBS Corporation and Federated Development in the State Case as of this date. Additionally, within 30 days, CBS Corporation and Federated Development will file true and correct copies of all other documents on file in the State Case, together with a certification from counsel that all filings in the State Case have been filed in the United States District court.

WHEREFORE, Defendants CBS Corporation and Federated Development, joined in and consented to by all other Defendants named and served in the State Case, remove this action to the United States District Court for the District of Maryland, Northern Division.

_____/s/_____

Philip A. Kulinski
Federal Bar # 27543

W. Thomas Lawrie
Federal Bar # 28226

EVERT WEATHERSBY HOUFF
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, MD  21202
Phone:    443-573-8500
Fax:       443-573-8501

Attorneys for:

**Defendant CBS Corporation**
**Defendant Federated Development**

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that, on this 7th day of September, 2007, a true and correct copy of the foregoing Notice of Removal of Civil Action was served via first-class mail, postage prepaid, upon the following individuals:

Jonathan Ruckdeschel, Esquire
The Ruckdeschel Law Firm, LLC
5126 Dorsey Hall Drive, Suite 201
Ellicott City, Maryland 21042

- **Attorneys for Plaintiffs**

---

Richard D. Albert, Esquire
Steptoe & Johnson, LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036-1795

Attorneys for the following Defendant:

- **Metropolitan Life Insurance Company**

---

David F. Albright, Esquire
The Law Offices of David F. Albright
1122 Kenilworth Drive, Suite 500
Baltimore, Maryland 21204

Attorneys for the following Defendant:

- **H.B. Smith Co., Inc.**

---

Steven A. Allen, Esquire
Hodes, Pessin & Katz, P.A.
901 Dulany Valley Road, Suite 400
Towson, Maryland 21204

Attorneys for the following Defendant:

- **Potomac Electric Power Company**

---

Thomas P. Bernier, Esquire
Segal, McCambridge, Singer & Mahoney
One North Charles Street, Suite 2500
Baltimore, Maryland 21201

Attorneys for the following Defendant:

- **Weil-McLain**

---

Malcolm S. Brisker, Esquire
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, Maryland 21202

Attorneys for the following Defendants:

- **C.J. Coakley, Co., Inc.**
- **Rockbestos-Surprenant Cable Corp.**

---

Scott Patrick Burns, Esquire
Tydings & Rosenberg, LLP
100 East Pratt Street, 26th Floor
Baltimore, Maryland 21202

Attorneys for the following Defendant:

**Thomas Somerville Company**

---

Paul J. Day, Esquire
DLA Piper US LLP
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209-3600

Attorneys for the following Defendants:

- **Ford Motor Company**
- **General Motors Corporation**

---

Thomas L. Doran, Esquire
DeCaro, Doran, Siciliano, Gallagher & DeBlasis, LLP
4601 Forbes Boulevard, Suite 200
Post Office Box 40
Lanham, Maryland 20703

Attorneys for the following Defendant:

- **A.O. Smith Corporation**

---

George C. Doub, Esquire
The Murphy Firm
One South Street, 23rd Floor
Baltimore, Maryland 21202

Attorneys for the following Defendant:

- **Honeywell International, Inc.**

---

Katherine S. Duyer, Esquire
Gavett and Datt, P.C.
15850 Crabbs Branch Way, Suite 180
Rockville, Maryland 20855

Attorneys for the following Defendant:

- **AC&R Insulation Co., Inc.**
- **Keeler/Dorr-Oliver Boiler Company**

---

Richard L. Flax, Esquire
Law Offices of Richard L. Flax, LLC
100 North Charles Street, Suite 1700
Baltimore, Maryland 21201

Attorneys for the following Defendant:

- **Walter E. Campbell Company, Inc.**

---

Louis E. Grenzer, Jr., Esquire
Bodie, Nagle, Dolina, Smith & Hobbs, P.A.
21 W. Susquehanna Avenue
Towson, Maryland 21204

Attorneys for the following Defendant:

- **MCIC, Inc.**

---

16

Patrick Hurley, Secretary and Treasurer
Boiler and Furnace Cleaners, Inc.
4320 Bladensburg Road
Brentwood, Maryland 20722

For:

- **Boiler and Furnace Cleaners, Inc.**
- **Hurley Company Operating Division of Boiler and Furnace Cleaners, Inc.**

---

Jeannie Pittillo Kauffman, Esquire
Bacon, Thorton & Palmer, LLP
6411 Ivy Lane, Suite 706
Greenbelt, Maryland 20770

Attorneys for the following Defendants:

- **Bondex International, Inc.**
- **RPM, Inc.**
- **RPM International, Inc.**

---

Steven A. Luxton, Esquire
Morgan, Lewis & Bockius, LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004

Attorneys for the following Defendant:

- **Owen-Illinois, Inc.**

---

Neil J. MacDonald, Esquire
Hartel, Kane, DeSantis, MacDonald & Howie, LLP
Calverton Office park
11720 Beltsville Drive, Suite 500
Beltsville, Maryland 20705

Attorneys for the following Defendant:

- **Crane Co.**
- **Kelly-Moore Paint Company, Inc.**

---

Joel D. Newport, Esquire
Moore & Jackson, LLC
305 Washington Avenue, Suite 401
Towson, Maryland 21204

Attorneys for the following Defendant:

- **Kaiser Gypsum, Co.**
- **Columbia Boiler Co.**

---

Jeremy W. North, Esquire
North & Cobb, P.A.
7313 York Road
Towson, Maryland 21204

Attorneys for the following Defendant:

- **General Refractories Company**

---

Richard P. O'Leary, Esquire
McCarter & English, LLP
245 Park Avenue
New York, New York 10167

Attorneys for the following Defendant:

- **Mestek, Inc.**

---

Vincent J. Palmiotto, Esquire
Miles & Stockbridge, P.C.
10 Light Street
Baltimore, Maryland 21202-1487

Attorneys for the following Defendants:

- **Avco Corporation, Spencer-Lycoming Division**
- **CertainTeed Corporation**
- **Cleaver-Brooks, Inc.**
- **Georgia-Pacific, LLC**
- **Superior Boiler Works**
- **TH Agriculture & Nutrition, LLC**

---

Steven J. Parrott, Esquire
DeHay & Elliston, LLP
36 South Charles Street, Suite 1300
Baltimore, Maryland 21201

Attorneys for the following Defendants:

- **Union Carbide Corporation**
- **Riley Power, Inc.**
- **Pneumo Abex LLC**
- **Foster Wheeler Energy Corporation**
- **Foster Wheeler, LLC**
- **The Okonite Company**

---

Scott H. Phillips, Esquire
Semmes, Bowen & Semmes, P.C.
250 West Pratt Street
Baltimore, Maryland 21201

Attorneys for the following Defendant:

- **Noland Company**

---

Michael A. Pichini, Esquire
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, Maryland 21202

Attorneys for the following Defendant:

- **Zurn Industries, LLC**

---

Theodore F. Roberts, Esquire
Venable, LLP
210 Allegheny Avenue
Post Office Box 5517
Towson, Maryland 21285-5517

Attorneys for the following Defendants:

- **American Standard Companies, Inc.**
- **Crown Cork and Seal Company**
- **Crown Cork & Seal USA, Inc.**
- **Rapid American Corporation**

---

David A. Seltzer, Esquire

Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
The Colorado Building
1341 G Street, NW, Suite 500
Washington, D.C. 20005

Attorneys for the following Defendant:

- **Oakfabco, Inc.**

---

Deborah K. St. Lawrence, Esquire
Brown & Sheehan, LLP
One South Street, 23rd Floor
Baltimore, Maryland 21202

Attorneys for the following Defendant:

- **Chrysler LLC**

---

Keith R. Truffer, Esquire
Royston, Mueller, McLean & Reid, LLP
The Royston Building
102 West Pennsylvania Avenue, Suite 600
Towson, Maryland 21204

Attorneys for the following Defendant:

- **A.W. Chesterton Company**

---

James T. Zois, Esquire
Meringer, Zois & Quigg, LLC
300 East Lombard Street, Suite 1440
Baltimore, Maryland 21202

Attorneys for the following Defendant:

- **General Electric Company**

---

_____/s/_____
W. Thomas Lawrie

# Exhibit 1

EFiled
Aug 10 2007 11:01AMEDT
Transaction ID 15903621

## IN THE CIRCUIT COURT FOR BALTIMORE CITY

IN RE:  BALTIMORE CITY                    *
ASBESTOS LITIGATION
                                          *

*     *     *     *     *     *     *     *     *     *     *     *

                                          *

LEWIS SHIFFLETT, et ux.                   *

          Plaintiffs,                     *

vs.                                       *          Case No.: 24x07000313

                                          *

AC&R INSULATION CO., INC. et. al.         *

          Defendants.                     *

*     *     *     *     *     *     *     *     *     *     *     *

## PROOF OF SERVICE

Plaintiff, Lewis Shifflett, states that on August 8, 2007, service of process was executed on the following Cross or Third Party Defendants.  Attached as Exhibit "A" are photo copies of the Certified Return Receipts received via USMAIL by the Ruckdeschel Law Firm, LLC on August 9, 2007:

| COMPANY | SERVE | Dated |
|---|---|---|
| A.C. & R. Insulation Co., Inc. | SERVE: Kathryn Sacco Duyer, Esq. | 8/8/2007 |
| A.O. Smith Corporation | SERVE: The Prentice Hall Corportation System | 8/8/2007 |
| American Standard | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| Boiler and Furnace Cleaners, Inc. | SERVE: The Corporation Trust | 8/8/2007 |
| CertainTeed  Corporation | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| CBS Corporation | SERVE: CSC Lawyers Incorporating Service Co. | 8/8/2007 |
| Crown Cork & Seal Company, Inc. | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| Crown Cork & Seal USA, Inc. | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| Daimler Chrysler Corporation | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| Door-Oliver Inc. | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| Ford Motor Company | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| General Electric Company | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| General Motors Corporation | SERVE: Corporation Trust, Inc. | 8/8/2007 |

| | | |
|---|---|---|
| Georgia-Pacific Corporation | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| Honeywell International, Inc. | SERVE: CSC Lawyers Incorporating Service Co. | 8/8/2007 |
| MCIC, Inc. | SERVE: Robert l. McCormick | 8/8/2007 |
| Noland Company | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| Owens-Illinois | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| Potomac Electric Power Company | SERVE: H. Edward Holtz | 8/8/2007 |
| Riley Stoker Corporation | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| Thos. Somerville Co. | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| Union Carbide Corporation | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| Zurn Industries, Inc. | SERVE: Corporation Trust, Inc. | 8/8/2007 |

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel
The Ruckdeschel Law Firm, LLC
5126 Dorsey Hall Drive, Suite 201
Ellicott City, Maryland 21042
(410) 884-7825 [O]
(443) 583-0430 [F]
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of August, 2007, a copy of the foregoing was served, via LexisNexis File & Serve, upon all counsel of record.

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel

**Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. Print your name and address on the reverse so that we can return the card to you. Attach this card to the back of the mailpiece, or on the front if space permits.**

A. Signature
X _____
☐ Agent
☐ Addressee

B. Received by (Printed Name)    PAUL SIMON    C. Date of Delivery  8/8

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

Article Addressed to:

...toiler and Furnace Cleaners, Inc.
SERVE: The Corporation Trust
...00 E. Lombard St.
...altimore, MD 21202

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☑ Yes

Article Number
(Transfer from service label)    7006 0100 0005 5869 0458

Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

**Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. Print your name and address on the reverse so that we can return the card to you. Attach this card to the back of the mailpiece, or on the front if space permits.**

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature   NANCY GRUENINGER
X _____
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery  8/8

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

Article Addressed to:

CBS Corporation
SERVE: CSC Lawyers Incorporating
Service Co.
11 E. Chase St.
Baltimore, MD 21202

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☑ Yes

Article Number
(Transfer from service label)    7006 0100 0005 5869 0489

Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

**Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. Print your name and address on the reverse so that we can return the card to you. Attach this card to the back of the mailpiece, or on the front if space permits.**

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery  8/8

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

Article Addressed to:

Certainteed Corporation
SERVE: Corporation Trust, Inc.
300 E. Lombard St.
Baltimore, MD 21202

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☑ Yes

Article Number
(Transfer from service label)    7006 0100 0005 5869 0472

Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

Exhibit 2

EFiled
Aug 22 2007 10:35AM EDT
Transaction ID 16037252

## IN THE CIRCUIT COURT FOR BALTIMORE CITY

IN RE:  BALTIMORE CITY     *
     ASBESTOS LITIGATION     *

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

                       *

LEWIS SHIFFLETT, et ux.     *

       Plaintiffs,     *

                       *

vs.                        *     Case No.: 24x07000313

AC&R INSULATION CO., INC. et. al.     *

       Defendants.     *

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

### PROOF OF SERVICE

Plaintiff, Lewis Shifflett, states that on August 14, 2007, service of process was executed on the following Cross or Third Party Defendants.  Attached as Exhibit "A" is a photo copy of the Certified Return Receipts received via USMAIL by the Ruckdeschel Law Firm, LLC on August 17, 2007 and August 20, 2007:

| COMPANY | SERVE | DATED | RECEIVED |
|---|---|---|---|
| Federated Development Company | SERVE: President | 8/14/2007 | 8/17/2007 |
| Crane Company, Inc. | SERVE: Eric C. Fast, President | 8/14/2007 | 8/20/2007 |

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel
The Ruckdeschel Law Firm, LLC
5126 Dorsey Hall Drive, Suite 201
Ellicott City, Maryland 21042
(410) 884-7825 [O]
(443) 583-0430 [F]
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of August, 2007, a copy of the foregoing was served, via LexisNexis File & Serve, upon all counsel of record.

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel

EFiled
Aug 22 2007 10:35AMEDT
Transaction ID 16037252

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Federated Development Company
SERVE: President
C/o MAXXAM, Inc.
1330 Post Oak Blvd, Ste 2000
Houston, TX 77056

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X William Cone   ☐ Agent   ☐ Addressee

B. Received by ( Printed Name )
William Cone   C. Date of Delivery 8-14-07

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☑ Yes

2. Article Number
(Transfer from service label)   7006 0100 0005 5869 0571

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Crane Company, Inc.
SERVE: Eric C. Fast, President/CEO
100 First Stamford Place
Stamford, CT 06902

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery 8 14 07

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☑ Yes

2. Article Number
(Transfer from service label)   7006 0100 0005 5869 0526

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

Exhibit 3

IN THE CIRCUIT COURT FOR BALTIMORE CITY

|  |  |
|---|---|
| IN RE: BALTIMORE CITY<br>      ASBESTOS LITIGATION | * |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

CASES AFFECTED:        *

LEWIS SHIFFLETT      *    Case No.: 24x07000313

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## PLAINTIFFS' ANSWERS TO DEFENDANTS' MASTER SET OF

## INTERROGATORIES

Plaintiff, Lewis Shifflett, by his undersigned attorneys, files this answer to the Master Interrogatories propounded by the Defendants, without waiving any objection as to the relevancy or admissibility of any of the information contained herein.

### INTRODUCTION

A.    The information supplied in these answers is not based solely on the knowledge of the Plaintiff, but includes the knowledge of the Plaintiff and his attorneys, unless privileged. The signature of the Plaintiff at the conclusion of these answers does not necessarily mean the Plaintiff has any personal knowledge as to any particular answer which is given.

B.    The word usage and sentence structure may be that of the attorney assisting in the preparation of these answers and thus does not necessarily purport to be the precise language of the Plaintiff.

C.    By responding to these Interrogatories, Plaintiff is not waiving any ground for objecting to the admissibility of the information.

### INTERROGATORIES
### PART ONE - DAMAGES

1.    State the following:

1

## PART TWO - LIABILITY

88.   If you have been exposed, or are being exposed, to any asbestos-containing product(s) in your work environment, state:

(a)   The employer's name and address;

(b)   Your job title and work description, including an exact description of job duties and responsibilities;

(c)   The duration of the job (month/day/year through month/day/year);

(d)   The duration of your exposure to asbestos on that job (month/day/year through month/day/year);

(e)   The location of the job;

(f)   The identity of your foreman or supervisor;

(g)   The identity of workers who you remember or your decedent remembered;

(h)   The identity of workers who recall the identity of asbestos-containing products and recall you or your decedent being exposed to those products;

(i)   The identity of workers who have a recollection of the identity of asbestos-containing products to which you claim exposure at the site;

(j)   A description of the types of asbestos-containing products to which you claim exposure (i.e., pipe covering, block, cement, cloth, etc.);

(k)   The identity of the supplier or distributor of each type of asbestos-containing product;

(l)   The identity of the manufacturer(s) of each type of asbestos-containing product;

(m)   The trade or brand names of each type of asbestos containing products;

(n)   The name of any contractors using asbestos-containing products at the site, stating the types of products they were using, names and manufacturers of the products, and the identity of persons working for any such contractors at the site.

**Answer:**  Plaintiff was exposed to asbestos while working at various commercial and residential sites in and around the greater Baltimore/Washington/Northern Virginia metropolitan area.   Information obtained from co-workers, Plaintiff's employers and the Defendants may provide evidence of Plaintiff's exposure.

Consequently, the information given here is preliminary and subject to change as a result of further discovery in this case. Plaintiff objects to this Interrogatory to the extent that it requires Plaintiff's counsel to investigate and disclose the precise information known by various witnesses or the precise witnesses Plaintiff's counsel intends to call at trial.

Because of the number of employers Plaintiff had over the years, the large number of different sites at which Plaintiff worked and the often numerous times Plaintiff worked at the various sites, it is impossible for Plaintiff to provide the information sought by this Interrogatory in the format posed by the Interrogatory.

Plaintiff believes that he was exposed to asbestos containing products while employed by the companies identified in response to Interrogatory No. 9. Plaintiff believes that he was exposed to products that may have contained asbestos were used by himself and others around him including one or more of the following: pipecovering, block, cement, fireproofing, drywall joint compound, wallboard, gaskets, cement pipe, welding rods, wire and cable, electrical switches, and other asbestos containing products. Plaintiff also may have been exposed to asbestos containing materials that may have been used to insulate machinery and/or that was used in conjunction with machinery and tools. Plaintiff was also exposed to brakes, clutches and other parts used in connection with the repair of automobiles that may have contained asbestos. These products were manufactured, distributed and/or used by the Defendants to this lawsuit and had various names.

Mr. Shifflett's job sites and locations varied over the expanse of his career. Some job sites may have included:

- a. Abington Apartments
- b. Annandale Terrace
- c. Arena Stage
- d. Arlington County Courthouse
- e. Arlington Village
- f. Bellview Apartments
- g. Benning Road Power Plant
- h. Burgundy Village
- i. Buzzard Point Power Plant
- j. Cameron Station Warehouse
- k. Capital Apartments
- l. Capitol Power Plant
- m. Carriage House Apartments
- n. Chatham House

37

o. Colonial Village
p. David Taylor Research Ctr.
q. Doctors Hospital
r. Dolly Madison Apts.
s. Embassy Dairy
t. Engleside Apartments
u. Farifax Hospital
nn. Firestone Building
oo. Foxwood Apartments
v. Glassmanor Apartments
w. Greenlawn Apartments
x. Hamilton Hotel
y. Hot Shoppes (Arlington)
z. Indianhead Powerhouse
aa. Johns Hopkins A.P.L.
bb. Kensington Gardens
pp. Key Towers Apartments
qq. King Mill Project
rr. King Street Apts.
cc. Landover House
ss. Lord & Taylor
dd. Madison House
ee. Mayflower Hotel
ff. National Airport
gg. National Institute of Health
tt. Rembrandt Apt. Bldg.
uu. Shirley Apts.
vv. Shirlington Apts.
hh. Shoreham Hotel
ww.        St. Elizabeth's Hospital
xx. Stover Apts
yy. Stowe Builders'
ii. Tower Apartments
zz. Triangle Towers
jj. Walter Reed Medical Center
kk. Washington & Lee Apts.
aaa.        Washington Flour
ll. Wilson Towers

38

# Exhibit 4



*NAVAL SEA SYSTEMS COMMAND*

**NSWC**
**Naval Surface Warfare Center**
**Indian Head Division**

# INDIAN HEAD HISTORY  1890 - 1997

**1990 INDIAN HEAD CENTENNIAL CELEBRATION**

As the U.S. Navy Ceremonial Band performed musical selections, scores of Naval Ordnance Station employees filled the amphitheater, spilling out onto the grassy fields to witness a once-a-lifetime event—the station's 100th birthday celebration observed Sept. 25, 1990.



Flags waving in air, the Presidential Ceremonial Color Guard proudly marched in and posted colors, intensifying the significance of the day.

Fifty state flags topped the amphitheater stage, decorated with red, white, and blue bunting, reflecting the radiant glare of the morning sun. Sitting atop the stage were the station's distinguished guests: RADM George R. Meinig, USN, Deputy Commander, Naval Sea Systems Command, the Honorable Roy Dyson, 1st Congressional District of Maryland, the Honorable Paul Sarbanes, US Senator from Maryland, NOS Commanding Officer, CAPT Edwin P. Nicholson, USN and NOS Technical Director Roger Smith.



Leading the ceremony's speakers, Technical Director Smith emphasized the stations mission, explaining what it means to be "ready." "When there is trouble in the world, they come to us for help. They come to us for help because we are part of the mobilization base. It happened in WWII, Korea, Viet Nam, the Persian Gulf, and now Desert Shield, and its our job to be ready."

CAPT Nicholson highlighted the richness and significance of the station's history. "Throughout our long and proud history, the station has been able to adapt to the changes brought about by time and emerging technologies . . . As times changed, so did Indian Head. And I believe—and am confident, that we will continue to move forward into our second century of operations with the same vitality and purpose that we have had in the past," stressed the captain. "I am honored to be part of the Naval Ordnance Station's rich past and I am committed to pursuing its hopes for the future. Today, I urge all of you to join me as we rededicate ourselves to the goal of keeping this station a national treasure, poised to respond to America's needs of the future."

Building on the importance of a strong America, ADM Meinig praised Indian Head employees for their constant commitment to product quality, and ability to meet the world's challenges. "Indian Head has been at the forefront of technology since the first guns were tested 99 years ago," stated the admiral. ". . And today, every ocean of the world has a U.S. Navy presence in a peace-preserving role—they are able to do their jobs because of you right here. I believe Indian Head has a proud past and an even prouder future .. . I wish you God speed in meeting the challenge!" ADM Meinig concluded.

Halfway into the ceremony, a message was delivered to CAPT Nicholson, who approached the podium to share its contents.

"We've just received a message from President Bush, who sends congratulations on our Centennial celebration," the captain said as he prepared to recite the President's message. " . . . The station can indeed boast of a 'Century of Excellence' ... Working together in a spirit of cooperation and understanding, the U.S. Navy and the citizens of Charles County have not only ensured the successful operation of this defense facility, but also helped to make it a catalyst for regional development. I congratulate you on your mutually rewarding efforts," the President wrote.

The ceremony's final speaker, Senator Sarbanes, expressed "enormous respect and regard for this institution and what it stands for," highlighting the distinct qualities possessed by Indian Head employees.

You can't have a first-rate nation without having dedicated federal service, and this station is an example of what dedication can represent. Thank you to all of you who have maintained that level of excellence," the senator said.

As the ceremony concluded and distinguished guests were escorted from the podium, the U.S. Navy Ceremonial Band performed "Happy Birthday" to Indian Head employees. "We are the Navy's oldest continuously operating ordnance station," said CAPT Nicholson during his address, " . . and proud of it."

### 1965 INDIAN HEAD 75TH ANNIVERSARY REMARKS

Twenty-five years ago, CAPT Leslie R. Olsen, Commanding Officer of the Naval Propellant Plant, addressed employees and guests assembled for a gala reception to commemorate the Naval Propellant Plant's 75th diamond anniversary.



'I believe Ensign Dashiell, the officer who first came to Indian Head to survey the site for a proving ground, would be impressed by the station if he were able to be here today.  For the past 75 years, this plant, as a proving ground, a powder factory and today as a propellant plant, has contributed significantly to the readiness of the Armed Forces defense of this great nation of ours,"  CAPT Olsen proudly stated on that festive Sept. 25, 1965 birthday.

### 1890 - 1899

It all began in September 1890 when the Bureau of Ordnance ordered young ENS Robert Brooke DASHIELL to Indian Head to take over construction and supervise the opening of the new Naval Proving Ground. His mission was to get the proving ground into operation as soon as possible in order to proceed with the testing of guns and armor, shells and mounts for the rapidly expanding fleet.



Young Dashiell had also set his sights on inventing a new mechanism for the breech loading of large naval guns, an invention later patented, commonly referred to as the Dashiell gun.

With a musty fishing shack serving as his headquarters, Ensign Dashiell set out to build his a model proving ground," hiring 40 men to begin construction on a swampy parcel of land where the Mattawoman Creek flowed into the Potomac.

These first Indian Head employees were Charles County farmers who gladly welcomed the opportunity for after-harvest work. On that first Monday morning, laborers could be seen arriving at the proving ground on horseback. Some rode 20 miles from their homes and would not return until the Saturday morning. Working at a feverish pace, they channeled the stream that divided the valley, built footbridges and constructed a wharf on the river front.

By the winter of 1890 the number of laborers grew to 100.



After the valley was drained, the proving ground began proof testing all guns turned out at the Navy Yard, and tested the powder purchased by the Navy Department. By early 1891 a steady flow of equipment and gun barrels arrived at the Indian Head Proving Ground. As the months passed more accomplishments unfolded under Ensign Dashiell's supervision, including the construction of valley firing positions, semi-underground shelters called gun-proofs, magazines and instrument houses.

Also to his credit was the construction of Quarters 2, 3 and 4 for his assistants, a house for the inspector and several small dwellings.

But the housing shortage for workers emerged as one of Indian Head's largest problems, as the Port Tobacco Times headlined, Several men employed at the Indian Head Proving Grounds were thought to have slept in a barn one evening...."

With the completion of additional living quarters, several families came to stay at the reservation, changing the surroundings of the proving ground. Mrs. James Swann's store at the Neck sent over pails of milk to the residences each morning and sausage and turkeys were delivered once a week by Mr. Jesse Rowe.

After that first year, gardens were planted on the old Irwin farm, meat was ordered from the big markets in Washington, and along the County Road, several frame buildings housed attractions such as Jack Quinn's Saloon and Patty O'Hearn's Bar.

In 1892, LT Newton E. MASON arrived to take over command from Ensign Dashiell.



The 32-year-old Dashiell, during his two year stay, had watched the swamp and brush of the valley transform into the model proving ground he had been ordered to build in the wilderness on the east shore of the Potomac.

The lieutenant continued the work on proving ground enhancements and kept up testing of ordnance and armor, but also focused on improving the working conditions.

Lieutenant Mason, like his predecessor, found the isolation difficult and immediately reported that, a Great trouble has been found in keeping good workmen down here on account of there being no place for them to live...." He recommended the construction of brick dwellings, improvements of the water supply, and the installation of an electric plant. By the end of his tenure in 1896, all of his ideas were in place or under construction. Three days after the Battle of Manila Bay in 1898, which revealed a lack of an adequate supply of smokeless powder for the new rapid-fire guns, Congress passed a bill authorizing the Navy to proceed with the construction of a powder factory at Indian Head, devoted to smokeless powder production.

CDR Albert R. COUDEN, who succeeded Lieutenant Mason, pushed the construction schedule for the new factory.

Two years later, on June 16, 1900, LT Joseph STRAUSS, CDR Couden's successor, celebrated the opening of the factory marked by its first lot of Indian Head smokeless powder, lot #148.

The community of Indian Head continued to expand as the families of the powder factory work force set up households nearby.  Enough children were being raised in the village to warrant the construction of a school house, and Miss Harriet Harris was soon hired as the institution's first teacher.


**1900 - 1919**


As the town of Indian Head and Powder Factory flourished, war in Europe brewed, facilitating full production of smokeless powder at the factory in case the United States entered the conflict. As more and more powder stockpiled at Indian Head, a marine unit arrived to protect the supplies, replacing the one strand of barbed wire that once marked the proving ground's boundary with a towering fence and gate.

In the spring of 1906 LCDR Joseph STRAUSS returned to Indian Head as Officer in Charge to work with chemist Dr. George PATTERSON in full-time war production.



The commander was admired for improvements made in employee working hours and the installation of a trolley system, and he continued his campaign to improve life at Indian Head.

As the proving ground began to test larger guns, a piece of acreage known as Mason's Enlargement was purchased as a matter of precaution - and with an eye toward World War I wartime expansion.

Stump Neck, as it came to be known, was a remote point with only a path connecting the area to the main road.

By 1913, the original mission of Indian Head evolved one step farther.  Work gradually moved away from the simple proving of guns and armor to include standardization of shells and powder.

In 1915 an ammonium picrate plant was opened, as George Patterson worked to expand the chemical research program, both routine and experimental, which he had set up in his first decade at Indian Head.

When the United States entered World War I in 1917, the Naval Powder Factory was a major producer of smokeless powder for the Navy.  Residents of Marbury and Pisgah could now arrive to work more quickly with the construction of a footbridge over the Mattawoman Creek, further linking the local community to Indian Head.

In his efforts to attract and hold the needed skilled labor force, CAPT Henry E. LACKEY, officer in charge from 1917 through 1920, strived to improve living conditions at Indian Head and addressed a range of troubling social problems including safety, housing, education, and communications concerns. CAPT Lackey commented in 1917, "First and foremost the station suffers from not having a village near large enough to accommodate the force necessary to carry on our work."



To help solve the housing problem, Captain Lackey orchestrated the construction of a new hotel, several barracks for civilians and a few new homes for both officers and civilians.

He also planned a post office, school house (later named Lackey School in 1920), and a set of dormitories. His hope was to "build up a real community spirit and make the Proving Ground one of the most attractive industrial communities under the Bureau of Ordnance."

During this period, mail was slow and supplies and greatly needed prospective employees were continually held up due to the lack of dependable transportation linking Indian Head to surrounding cities.

Fred and Marshall Bailey were awarded the contract to construct 14 and one-half miles of railroad from the Powder Factory to the established

Pennsylvania Railroad junction in White Plains, Md., moving their 30-man crew to Indian Head to begin construction.

The railroad opened six months later on Memorial Day, May 29,1919. Despite the opening of the railroad link to White Plains in 1919, the facility remained largely isolated and faced growing concerns in the coming decade. Low budgets, a restricted demand for powder, the move of the proving ground to Dahlgren, Va., and naval disarmament all plagued Indian Head during the "Roaring 20s."

But the community of Indian Head survived despite the challenges nipping at its heels. What surfaced was a tightly knit society with a long-term civilian workforce at its core.

**1920 - 1939**

After 1921 Indian Head was no longer designated as the "Naval Proving Ground" but was referred to as the "Naval Powder Factory."

The facility had shifted from a naval gun proving ground to a chemical factory, research laboratory and Explosive D factory, employing a talented civilian work force.

Among its ranks were chemists Dr. George W. PATTERSON, director of production and research from 1890 through 1940; and Dr. Walter FARNUM, director of production from 1940 through 1953.

With 10,000 people working at the Powder Factory each day, the facility was teeming with employees inside and outside its gates.

Residents did take time off from work, though, especially with the opening of the Annual September Fair in the early 1920s, organized by Officer in Charge CAPT J. W. GREENSLADE and supporters H. Marvin Coster and Henry Burroughs.

Held outside the gates near the housing area, the annual three-day fair attracted 10,000 visitors by 1927 and was considered a much looked-forward-to affair. Exhibitors for the Annual Fair and Carnival were solicited from many parts of Charles County. Among the many attractions were food and appliance shows boasting displays from both nearby Washington and far-away Baltimore. The new recreation building was brimming with the latest in ice boxes and cooks stoves, and the Maryland Department of Health conducted physical exams free of charge, becoming one of the most popular attractions each year. For Charles County children, though, the checkups were surpassed by the fair's carnival rides. It was a once-a-year treat for the county's children to swing from a gigantic Ferris wheel or whirl on a merry-go-round.

But the sound of laughing children high atop carnival rides was silenced when the naval facility and the town of Indian Head grew solemn with news of the Great Depression which crept into the lives of Charles County residents.

In the late 1920s men on the powder line wondered how long it would be before they, too, would be laid off.

President Herbert Hoover was quoted in local papers as, ". . . trying to get the country's finances under control," yet still the newspapers talked of public welfare and unemployment. Powder factory workers experienced two consecutive reductions in salary, then word came down from the Bureau of Ordnance to "cut down the force."

As employees packed up their families, the factory work force dwindled to less than 500. Bare windows took the place of cheery curtains and silence fell upon the small town as weeds sprung up around deserted homes and playgrounds.

It was assistance from President Roosevelt, who visited Indian Head during his time as Assistant Secretary of the Navy, that kept Indian Head going during the lean years. In 1933 the Navy Department allotted the Powder Factory $71,000 for the production of smokeless powder.

Meanwhile, the 325th Company of the Civilian Conservation Corps, a New Deal program, opened a work camp in Indian Head, creating additional jobs. The Corps worked to improve the roads, plant new trees and beautify the station. In 1938 and 1939 powder production was up to three million pounds per year, with increases planned in the event of war. During this time, a new Explosive D Plant and Extrusion Plant were built as Indian Head prepared for war.

**1940 - 1959**

After war had broken out in Europe but before the United States entered the war, 62 uniformed personnel and 794 civilians were employed at the Naval Powder Factory.

Doctor Patterson, now past retirement age and reappointed by a special legislative exemption, directed the Production Department as "Head Chemist," and Doctor Farnum, as "Senior Chemist," ran the chemical laboratory. The Explosive D Plant was directed by chemical engineers T. C. Jenkins, R. H. Dement, and H. M. Coster.

As Adolf Hitler's German Army swept through Europe claiming more territory for the Third Reich, U.S. forces stood poised on alert-and Indian Head encountered its second period of rapid, war induced expansion.

The World War II years brought rapid growth to the Indian Head Naval Powder Factory, which was considered one of the leading war-supply stations.



Some of this growth generated other laboratories and facilities, which relocated elsewhere, while a few of the new processes provided new capacities in facilities and personnel which would help shape the postwar identity of Indian Head.

Almost overnight, the Navy set up at Indian Head a facility referred to as the Explosives Investigation Laboratory where extensive examinations of captured enemy ordnance took place.

Another expansion centered in the area of production.

In cooperation with researchers at the California Institute of Technology in Pasadena, Calif., Indian Head put into operation an extrusion plant for pressing ballistite powder into rocket "grains," while continuing to produce smokeless powder and Explosive D.

The expansion into production of extruded grains would reshape the destiny and mission of the facility.

Based on suggestions and studies made by Ensign T. F. Dixon and civilian chemist J. B. Nichols, the extrusion plant was redesigned in 1943, incorporating the "Lauritzen" method of extrusion and finishing of double-base, JPN (Jet Propulsion/Navy) powder grains.

Also during this period of World War II expansion, victory gardens sprung up in the Dry House area as a form of lunchtime recreation for Indian Head's war-effort employees, who lived in temporary housing funded by Congressional appropriations.

More military members arrived to work in the plant and help with administration issues, punctuated by the arrival of the first Navy Waves in 1944.

Since no recreation opportunities existed in the town, the military pooled efforts with the civilian work force to build a golf course and swimming pool facilities.

Federal housing projects at Potomac Heights, for whites, and at Perry Wright (later Woodland Village), for blacks, provided 550 off-base homes in the area. An additional 350 housing units were built on the station grounds, and schools were enlarged. 'The government put up a lot of temporary housing - just a mass production - where they could house all of these people that were brought in," Indian Head resident Gilbert Milstead remembered in an interview for Andrea Hammer's book, "Praising the Bridge that Brought Me Over." "The majority of it was Potomac Heights, which is a home owner's organization now. And then down below the hill at Indian Head, at Woodland Village, was another area for temporary homes."

The chemical laboratory, founded by Doctor Patterson, continued to play a major role for the Bureau of Ordnance in providing chemical expertise in the field of explosives and propellants. After his retirement in 1940, Patterson's labs continued to enlarge. The development of laboratories, staff and equipment to test the new products positioned Indian Head at the end of World War II as a recognized research capacity.

By 1945, the station celebrated with the dedication of its $1 million research and development laboratory, headed up by its first director, Dr. Francis C. THAMES, who began his career at Indian Head in 1929 as an analytical chemist.

Indian Head numbered 5,217 civilians and military personnel, now not only making smokeless powder, but testing rocket fuel and experimenting with mines and other ordnance.

During the period 1946 through 1949, the station's commanding officers worked with civilian researchers and with the Bureau of Ordnance in attempting to get the official mission of the Indian Head Powder Factory modified to reflect its new strengths.

Although the Powder Factory had taken on a research and development emphasis, the larger scale employment at Indian Head depended upon the production facilities. With the decline in smokeless powder consumption and with the layoff of employees in the postwar months, congressmen and senators from Maryland soon came to the defense of the facility.

Shortly after these political pressures, the Bureau agreed to the establishment of a set of pilot plants at Indian Head which would have the capacity to produce experimental new propellants for naval research use. By the summer of 1947, the Bureau of Ordnance agreed to a plan to construct four pilot plants at Indian Head to include a nitroglycerin pilot plant; a plant to produce varied nitrogen-content nitrocellulose; a plant for mixing and rolling experimental lots of solvent and solventless propellant; and a fourth plant for experimental production of cast propulsion units. Over the next six years, Indian Head gradually built up its "pilot plant" capacity, building on strength in experimental propellants. Coming at a time of crisis, the pilot plants began to reshape the mission of Indian Head as its redefinition slowly emerged.

CAPT Clarence VOEGELI, Naval Powder Factory Commanding Officer from 1948 through 1952, carried on work in pilot plant construction initiated by his predecessor, CAPT Byron HANLON, Commanding Officer from 1946 through 1948.

Captain Voegeli pushed in 1948 for the completion of the nitroglycerin plant as his first priority, followed by construction of a nitrocellulose plant, mixing and rolling plant, and a casting plant.

Growing alongside the naval facility, the town of Indian Head by 1947 enjoyed 136 homes, five churches, two halls, one community center and 22 public buildings, including a score of flourishing businesses such as Carpenter & McWilliams Garage, Yank's Market, Ely's Department Store, Club Maryland and Speake's Barber Shop, to name but a few.

In 1950, the Korean conflict provided the impetus for the factory's stepped up explosive and propellant production.

Employment grew from 1,590 in 1950 to 3,044 employees in 1953.

And by 1954, the Biazzi nitroglycerin plant (patterned after a Swiss design), a nitro-guanidine and cordite N plants were in full operation.

With Indian Head carrying the name Powder Factory, CAPT Francis SCANLAND, Commanding Officer in 1952, argued that the term "powder factory" itself, "implied a plant primarily engaged in the manufacture of gun powder." While the facility's name had been correct in the 1940s, he stressed, "it is no longer correct and becoming more and more incorrect." He recommended that the name be changed to the Naval Propellant Development Station, pushed for a research and development and pilot plant focus, and continued housing of the Explosive Ordnance Disposal School, established at Stump Neck in 1946.

Following the congressional hearings in 1958, held to consider the Naval Powder Factory's future when production of smokeless powder had ended, Indian Head's mission became clearer.

Building on work done at the facility's Patterson Pilot Plant during the 1940s, the factory would now produce missile fuel for the long-range Polaris missile and smaller rockets, and later, propellants for emergency ejection mechanisms. With participation in the Polaris program taking place at Indian Head, 23 new buildings began construction in 1959 to support the work load. Reflecting its new mission and direction, the Naval Powder Factory shed its former name and officially became the Naval Propellant Plant on Aug.14, 1958, under Commanding Officer CAPT Griswold T. ATKINS.

By this time in Indian Head history, many employees were full of stories about their fathers and even grandfathers who contributed to Indian Head's destiny over the decades. For many production workers, employment at Indian Head had truly become a family matter.

Dorothy Artes, a long-time resident of Indian Head, recalled in an interview for the book, " Praising the Bridge that Brought Me Over," the family tradition of working at Indian Head. "I was born here, down below the hill in a very old residential area called Gering's Road. My father was a quarterman of the machine shop at the Naval Powder Factory. My father was employed there, my husband retired from there, and my son is there yet. I'm just a permanent fixture. And gladly."

**1960 - 1979**

Over the years 1962 through 1974, Joe BROWNING, who became technical director of the Naval Propellant Plant in 1962, worked to expand the mission of Indian Head bringing a period of creative and productive change to Indian Head.

Assisting Browning in managing the plant during this "transition" period were Art Mayer, Walt Rees, Brooks Ballance, and Jim Wilson. Mayer was head of production operations and later became head of a Fleet Support Engineering Department; Rees became head of all production operations, while Ballance was named head of pre-production operations.  Wilson later became head of the R&D Department.

In the mid-1960s Al Camp was brought in to enhance the plant's propellant technology expertise, and Bill Brimijoin continued for many years as the facility's world-recognized expert in the manufacture of nitroglycerin.

Highlighting the year 1962 was the pilot-scale manufacture of the X-248 third stage motor for the Scout missile, followed by Indian Head's development of Otto Fuel II for high-speed torpedoes in 1963, retooling the Biazzi Plant for its production.

Additional growth came from the increase in the need for weapons during the Vietnam conflict, specifically from 1965 through 1969.

Reflecting the diversification from propellants into related fields of chemistry, engineering, and production contract management, the Naval Propellant Plant again changed its name, becoming the Naval Ordnance Station in 1966.



The mid to late-1960s were characterized by the production of such products as the plastic explosive C-3 in 1965, an updated Zuni rocket in 1966, Polaris (A2 and A3) casting powder from 1961 through 1967, Poseidon casting powder (C-3) in 1967, and composite propellant and PBX explosive processing.

In mid-1972 Technical Director Browning created a new department of special programs, comprised of Electronics, Cartridge Actuated Devices, Gun Systems, and Documentation Divisions.  Over the next years, the department would become a resource for many of the new directions taken at Indian Head.

David LEE succeeded Joe Browning as technical director in 1975, serving through November 1985.

The new technical director reorganized station management, orienting the new offices toward particular customers and product lines. Where Browning had acted as the "chief marketer," soliciting business for the station, Lee began to divide up that responsibility and delegate it to specialists in each area. Under a single program management officer, separate individuals would now focus on groups of programs.

Through 1976 and 1977, Lee's reorganization efforts began to bear fruit.

And by 1978, Technical Director Lee pointed to successes in the Cartridge Actuated Devices/Propellant Actuated Devices (CAD/PAD) areas, electronics area, quality engineering work and in engineering in general. "For the first time in 26 years," he said, "Indian Head has been removed from the base closure list." This was testimony to his personal success and that of the commanding officers and employees at NOS.

Through the late 1970s, the tempo of production increased and volume of business expanded.

**1980 - 1997**

With the national mood turning in a more pro-business direction, the Navy-owned facilities at Indian Head in the early 1980s had found several niches in the propellant market. In addition to providing engineering services to translate a laboratory process into a production process for the private sector, and providing a national "back up" resource in the case of emergency, full-scale production at Indian Head would concentrate on several processes/products too unprofitable, too dangerous, or too difficult for the private sector to manufacture.

When Lee resigned in 1985, Dominic MONETTA was selected as technical director, serving from November 1986 through June 1989.

Technical Director Monetta reorganized the program management concept instituted by Lee, increasing the number of program managers from seven to 19; and created a rank of "associate technical director," which comprised three staff positions reporting directly to the technical director. The individuals he selected as associate technical director were A. J. Perk, Jay Thornburg and Vince Hungerford, known on station as "the three wise men." With the focus on new management ideas during the late 1980s, the station still concentrated, however, on technology and engineering projects.

Continuing a trend which began during the 1970s, NOS increased the proportion of engineering and administrative roles over production. Recognizing the achievement of the station, NAVSEA reconstituted several of the previously acquired agency roles as official "centers of excellence" for the Navy. This meant that the Navy would not duplicate the effort elsewhere and would treat the facility as the primary collection of experts in a particular area. NOS acquired the "center of excellence" designation by mid-1989 for six technologies, which had grown out of an established track record.   These were: guns, rockets and missiles; energetic chemicals; ordnance devices (CAD/PAD); missile weapon simulators; explosive process development engineering; and explosive safety, occupational safety and health, and environmental protection.

By 1989, the Naval Ordnance Station served as a resource for the Navy and provided innovative work on the systems of the next decade.   Special teams were assembled to work on critical issues such as the investigation into the gun turret explosion aboard the USS IOWA on April 25, 1989, and projects for the National Aeronautics and Space Administration and other agencies.

The world watched the Soviet withdrawal from Afghanistan in 1988 and 1989, democratic reforms in Eastern Europe, the tearing down of the Berlin Wall, and heard terms such as "glasnost" and "perestroika," all suggesting that relations with the Soviet Union would improve.

Facing new budgetary cuts, just as it had experienced in the 1920s and 1940s, Indian Head once again looks toward becoming a "lean and mean" facility.

When CAPT George F. WENDT, Commanding Officer from 1987 through 1989, completed his tour at Indian Head, NOS saw a complete change in leadership with both a new commanding officer and new technical director coming aboard within a few months of each other in June and October 1989.

CAPT Edwin P. NICHOLSON, Indian Head's new commanding officer, immediately set to work on trimming down costs along with recognizing the station's successes.  Taking over from Monetta in October 1989, Technical Director Roger SMITH, with 25 years in program management at NAVSEA, expressed motivation in using his knowledge to further enhance Indian Head's reputation with its customers.  At the station's helm, Captain Nicholson and Roger Smith have inherited a major development center-one with a century of evolution behind it, as the next 100 years lie before them.

"I still say thank God for the plant," said Indian Head resident Golden Evans. "Even though I came here from somewhere else, I came here and became a part of the plant.... That's why I say I'm not burning the bridge that brought me over; I'm praising the bridge that brought me over . . . I wouldn't be in this house today . . . if it hadn't been for Indian Head."

Now that the defense budget is decreasing, with the weapons budget decreasing to a much greater extent, Indian Head Division's importance to the DoD is greater than ever.  Private companies in energetics are getting out of the business, and more are expected to follow as the volume of work goes down.

There is no commercial market for their products, their large expensive facilities are idled and the cost of environmental compliance is skyrocketing (DuPont being one example).  The Navy has been planning for this and has taken actions to consolidate energetics work at Indian Head. The Navy's explosives research and undersea warhead development work (about 300 workers) has been transferred from NSWC White Oak Maryland to Indian Head by BRAC 93 and the explosive loading facilities at Naval Weapons Station Yorktown have begun to be shut down with the work transferred to Indian Head.

The Department of the Navy has established imperatives for the future, one of which is to ensure redundant plants for explosives or similar hazardous materials. The advantage of this was most recently seen during Desert Storm when we produced rockets and mine clearing explosives three shifts a day. Another facet of our mission is to develop production processes for explosives and propellants and to transfer these processes to the private sector.

Indian Head Division, Naval Surface Warfare Center, 101 Strauss Avenue, Indian Head, MD 20640-5035

Compiled by Larine Barr, Public Affairs Office (First Published on Indian Head's Centennial in 1990) 1997 Addendum by Peter Morrison, Brian Shaffer, and Kevin Grote. Source material: "Praising the Bridge that Brought Me Over," edited by Andrea Hammer; "1890: Naval Proving Ground, Naval Powder Factory, Naval Propellant Plan, Naval Ordnance Station"; and "Powder and Propellants: Energetic Materials at Indian Head, Maryland, 1890-1990," by Rodney Carlisle.

# Exhibit 2

**Main Office**
Suite 180
15850 Crabbs Branch Way
Rockville, MD 20855

301/948-1177
301/948-4334 Facsimile

**Katherine S. Duyer**
Licensed in MD, DC
kduyer@gavettdatt.com

# Gavett and
# Datt, P.C.
ATTORNEYS AT LAW

**Virginia Office**
122 South Royal Street
P.O. Box 19140
Alexandria, VA 22320

703/549-9329
*Please reply to Main Office

August 31, 2007

W. Thomas Lawrie, Esquire
Evert Weathersby Houff, LLC
Suntrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, MD  21202

> **Re:** *Removal of Lewis Shifflett, et ux. v. John Crane-Houdaille, Inc., et al,*
> *Case Number:  24x07000313, Circuit Court for Baltimore City*

Dear Mr. Lawrie:

My firm represents AC&R Insulation Co., Inc. ("AC&R") in the above-referenced matter.  AC&R was served in this case on August 8, 2007.  While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, AC&R joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

GAVETT AND DATT, P.C.

BY _____
Katherine S. Duyer

KSD/sej

L:\03.000\3-02253\letters\lawrie 8-31-07.wpd

# VENABLE LLP

210 Allegheny Avenue
Post Office Box 5517
Towson, Maryland 21285-5517

Telephone 410-494-6200
Facsimile 410-821-0147

www.venable.com

Theodore F. Roberts                410-494-6344                tfroberts@venable.com

August 31, 2007

**BY FIRST CLASS MAIL AND E-MAIL**

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:   Removal of *Lewis Shifflett, et ux. v. American Standard Companies, Inc.*
      Case Number: 24X07000313, Circuit Court for Baltimore City

Dear Mr. Lawrie:

My firm represents American Standard Companies, Inc. in the above-referenced matter. American Standard Companies, Inc. was served in this case on August 23, 2007. While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, American Standard Companies, Inc. joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Theodore F. Roberts

MARYLAND   VIRGINIA   WASHINGTON, DC

# DeCARO, DORAN, SICILIANO, GALLAGHER & DeBLASIS, LLP

Attorneys at Law

Alan R. Siciliano*▾
Jeffrey R. DeCaro*▾
Thomas L. Doran*
Charles E. Gallagher, Jr.*▾
Samuel J. DeBlasis II*
Christopher R. Dunn*
Warren D. Stephens*
Jeffrey T. Brown*
Anne Marie McGinley*
Erik H. Nyce*▾

*Of Counsel*
Richard A. Yeagley■
Charles C. Bowie*

4601 Forbes Boulevard
Suite 200
P.O. Box 40
Lanham, Maryland 20703-0040
(301) 306-4300
FAX (301) 306-4988

**VIRGINIA OFFICE**
3930 Walnut Street
Suite 250
Fairfax, Virginia 22030
(703) 255-6667
FAX (703) 299-8548

**EASTERN SHORE OFFICE**
740 Stagwell Road
Mail: P.O. Box 338
Queenstown, Maryland 21658
(410) 827-5013
FAX (410) 827-4323

Lynne J. Kinney*
Jennifer R. Albany*
Kathryn C. Buettner
Robert A. Richards*
James S. Liskow*

☐ Reply to Virginia Office
☒ Reply to Lanham Office

* Also member of D.C. Bar
▾ Also member of Virginia Bar
■ Member of D.C. and Virginia Bars

September 6, 2007

W. Thomas Lawrie, Esq.
Evert Wethersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:   Removal of *Lewis Shifflett, et ux. V. John-Crane Houdaille, Inc., et al.*,
      Case Number: 24X07000313, Circuit Court for Baltimore City

Dear Mr. Lawrie:

My firm represents A.O. Smith Corporation in the above-referenced matter. A.O. Smith Corporation was served in this case on August 8, 2007. While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, A. O. Smith Corporation joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Thomas L. Doran

I:\Common\WP\L1\TLD\AsbestosCases\Shifflett,Lewis B\Correspondence\Lawrie.LtrReRemovalJoinder.wpd

# MILES & STOCKBRIDGE P.C.

Vincent J. Palmiotto
(410) 385-3858
vpalmiotto@milesstockbridge.com

August 31, 2007

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

      Re:    Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.*,
               Circuit Court for Baltimore City
               Case Number: 24X07000313

Dear Mr. Lawrie,

My firm represents Avco Corporation, Spencer-Lycoming Division in the above-referenced matter. Avco Corporation, Spencer-Lycoming Division was served in this case on August 10, 2007. While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, Avco Corporation, Spencer-Lycoming Division joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Vincent J. Palmiotto

VJP/mlh

## ROYSTON, MUELLER, McLEAN & REID, LLP

ATTORNEYS AT LAW

R. TAYLOR McLEAN
E. HARRISON STONE
WILLIAM F. BLUE
THOMAS F. McDONOUGH
LAUREL PARETTA REESE*
KEITH R. TRUFFER*
ROBERT S. HANDZO*
EDWARD J. GILLISS
JOHN W. BROWNING
TIMOTHY J. OURSLER
ROBERT G. BLUE
CRAIG P. WARD

LEANNE M. SCHRECENGOST
DOUGLAS S. WALKER♦
DAVID F. LUBY

SUITE 600
THE ROYSTON BUILDING
102 WEST PENNSYLVANIA AVENUE

TOWSON, MARYLAND 21204-4575

TELEPHONE 410-823-1800
FACSIMILE 410-828-7859
www.rmmr.com

OF COUNSEL
RICHARD A. REID
EUGENE W. CUNNINGHAM, JR., P.A.
H. EMSLIE PARKS*
BRADFORD G.Y. CARNEY
LISA J. McGRATH

CARROLL W. ROYSTON
1913-1991

H. ANTHONY MUELLER
1913-2000

* ALSO ADMITTED IN D.C.
♦ALSO ADMITTED IN PA.

September 7, 2007

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

> Re:   Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.*,
>        Case Number: 24X07000313, Circuit Court for Baltimore City

Dear Mr. Lawrie,

My firm represents A.W. Chesterton Company in the above-referenced matter. In response to your request for the joinder and consent of my client to removal, please be advised that A.W. Chesterton Company has not been served in this case. Consequently, my client cannot honor your request at this time, for to do so would risk waiving certain defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction. However, while reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, please know that if and when A.W. Chesterton Company is properly served in the above-referenced case, then at that time A.W. Chesterton Company will join in, and consent to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Keith  R. Truffer

September 4, 2007

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

      Re:    Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.,*
              Case Number: 24X07000313, Circuit Court for Baltimore City

Dear Mr. Lawrie,

    Boiler and Furnace Cleaners, Inc. and Hurley Company (an operating division of Boiler and Furnace Cleaners, Inc.) were named as Defendants in the above-referenced action.  While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, Boiler and Furnace Cleaners, Inc. and Hurley Company join in, and consent to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

    The Plaintiffs also named J.E. Hurley Machine and Boiler Works as a Defendant in the above-referenced action.  J.E. Hurley Machine and Boiler Works was a business entity which no longer exists.  I am the sole surviving officer of this former business entity.  As J.E. Hurley Machine and Boiler Works no longer exists, it is incapable of joining in and consenting to the removal of this action to the U.S. District Court, although it certainly would have joined in and consented to the removal if it had still been in existence.

                    Very truly yours,

                    **Boiler and Furnace Cleaners, Inc.**

                    By:

                    Patrick Hurley
                    Secretary and Treasurer

**BACON, THORNTON & PALMER, L.L.P.**
Suite 706
6411 Ivy Lane
Greenbelt, Maryland 20770
(301) 345-7001
www.lawbtp.com

Edward C. Bacon
Patricia M. Thornton
Mark D. Palmer
Jeannie Pittillo Kauffman
_____
Sean Werner
R. Brent Fuller

August 31, 2007

W. Thomas Lawrie, Esquire
Evert, Weathersby & Houff, LLC
Sun Trust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, MD 21202

**Re:**   **Removal of Lewis Shifflett, et al. v. AC and R Insulation Company, Inc.,**
**Case No.: 24X07000313**

Dear Mr. Lawrie:

My firm represents Bondex International, Inc., in the above-referenced matter. Bondex was served in this case on August 10, 2007. While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, Bondex joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Jeannie Pittillo Kauffman

MILES & STOCKBRIDGE P.C.

Vincent J. Palmiotto
(410) 385-3858
vpalmiotto@milesstockbridge.com

September 4, 2007

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

      Re:    Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.,*
            Circuit Court for Baltimore City
            Case Number: 24X07000313

Dear Mr. Lawrie,

    My firm represents CertainTeed Corporation in the above-referenced matter.
CertainTeed Corporation was served in this case on August 8, 2007. While reserving all
defenses, including those relating to sufficiency of service, process, venue, and personal
jurisdiction, CertainTeed Corporation joins in, and consents to, the removal of this case to the
United States District Court for the District of Maryland based on both federal enclave
jurisdiction and 16 U.S.C. § 457 jurisdiction.

                    Very truly yours,

                    Vincent J. Palmiotto

VJP/mlh

Client Documents:4850-1259-4433v1|060001-8|BRCH|05/4/2007
10 Light Street, Baltimore, MD 21202-1487 • 410.727.6464 • Fax: 410.385.3700 • www.milesstockbridge.com

Cambridge, MD • Columbia, MD • Easton, MD • Frederick, MD • McLean, VA • Rockville, MD • Towson, MD



Brown & Sheehan, LLP
One South Street
23rd Floor
Baltimore, MD 21202

410-296-8500 • phone
410-296-1559 • fax

September 4, 2007

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:   Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.*,
      Case Number: 24X07000313, Circuit Court for Baltimore City

Dear Mr. Lawrie,

My firm represents Chrysler LLC in the above-referenced matter. Chrysler LLC was served in this case on August 8, 2007. While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, Chrysler LLC joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Deborah K. St. Lawrence

# GOODELL, DeVries, Leech & Dann, LLP

ATTORNEYS AT LAW
ONE SOUTH STREET, 20TH FLOOR
BALTIMORE, MARYLAND 21202

TELEPHONE (410) 783-4000

FACSIMILE (410) 783-4040

MALCOLM S. BRISKER
MSB@GDLDLAW.COM
WRITER'S DIRECT NUMBERS
410-783-4049 (Voice)
410-951-0451 (Fax)

ADMITTED IN MARYLAND
&
THE DISTRICT OF COLUMBIA

September 5, 2007

**Via Facsimile & U.S. Mail**
W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:   Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.,*
      Case Number: 24X07000313, Circuit Court for Baltimore City

Dear Mr. Lawrie,

My firm represents C.J. Coakley Co., Inc. in the above-referenced matter. C.J. Coakley Co., Inc. was served in this case on August 8, 2007. While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, C.J. Coakley Co., Inc. joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Malcolm S. Brisker

MSB/krc

887593

# MILES & STOCKBRIDGE P.C.

Vincent J. Palmiotto
(410) 385-3858
vpalmiotto@milesstockbridge.com

September 4, 2007

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:   Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.,*
      Circuit Court for Baltimore City
      Case Number: 24X07000313

Dear Mr. Lawrie,

My firm represents CertainTeed Corporation in the above-referenced matter. CertainTeed Corporation was served in this case on August 8, 2007.  While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, CertainTeed Corporation joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Vincent J. Palmiotto

VJP/mlh

Client Documents:4850-1259-4433v1|000001-#|IRCH|0|9/4/2007
10 Light Street, Baltimore, MD 21202-1487 • 410.727.6464 • Fax: 410.385.3700 • www.milesstockbridge.com

Cambridge, MD • Columbia, MD • Easton, MD • Frederick, MD • McLean, VA • Rockville, MD • Towson, MD

# MILES & STOCKBRIDGE P.C.

Vincent J. Palmiotto
(410) 385-3858
vpalmiotto@milesstockbridge.com

August 31, 2007

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:   Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.*,
Circuit Court for Baltimore City
Case Number: 24X07000313

Dear Mr. Lawrie,

My firm represents Cleaver-Brooks, Inc. in the above-referenced matter.  Cleaver-Brooks, Inc. was served in this case on August 10, 2007.  While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, Cleaver-Brooks, Inc. joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Vincent J. Palmiotto

VJP/mlh

Client Documents:4810-3986-7137v1[000001-#BRCH]08/31/2007
10 Light Street, Baltimore, MD 21202-1487 • 410.727.6464 • Fax: 410.385.3700 • www.milesstockbridge.com

Cambridge, MD • Columbia, MD • Easton, MD • Frederick, MD • McLean, VA • Rockville, MD • Towson, MD

# MOORE & JACKSON, LLC

### ATTORNEYS AT LAW

305 WASHINGTON AVENUE
SUITE 401
TOWSON, MARYLAND 21204

TELEPHONE 410-583-5241

FACSIMILE 410-583-7519

WWW.MOOREJACKSON.COM

Joel D. Newport
Direct Dial: 410-583-2207 ext. 110
Email: newport@moorejackson.com

Daniel J. Moore
William J. Jackson
Kevin M. Soper
Scott D. Goetsch
Joel D. Newport
Margaret Fonshell Ward

Karen Herzog Cooke
Andrew M. Belt

August 31, 2007

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:     Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.*,
          Case Number: 24X07000313, Circuit Court for Baltimore City

Dear Mr. Lawrie,

My firm represents Kaiser Gypsum Co. and Columbia Boiler Co. in the above-referenced

matter.

Kaiser Gypsum Co. was served in this case on or about August 10, 2007. Columbia

Boiler was served in this case on or about August 13, 2007.

While reserving all defenses, including those relating to sufficiency of service, process,

venue, and personal jurisdiction, Kaiser Gypsum and Columbia Boiler join in, and consent to, the

removal of this case to the United States District Court for the District of Maryland based on

both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Joel D. Newport

# HARTEL, KANE, DESANTIS, MACDONALD & HOWIE, LLP

## ATTORNEYS AT LAW

Timothy E. Howie* • †
Neil J. MacDonald* • †
Michael A. DeSantis* •
Deborah E. Kane* • †
John W. Hartel* • †
Solomon M. Sterenberg* • †

**Of Counsel:**
Michael P. Chervenak* • †

CALVERTON OFFICE PARK
11720 BELTSVILLE DRIVE, SUITE 500
BELTSVILLE, MARYLAND 20705

5924 NORTH 15TH STREET
ARLINGTON, VIRGINIA 22205

TELEPHONE: (301) 486-1200
FACSIMILE: (301) 486-0935

WWW.HARTELKANE.COM

Richard W. Souther* • †
Helyna M. Haussler* •
Ioannis A. Laskaris* •
Rachelle A. Schofield* •
Dana K. Schultz*
Kathleen M. Bartley*
Jack L. Inman* •
Okie C. Whiteru*
Laura M. Mayes* •
Tyler O. Prout †

*Maryland bar
•District of Columbia bar
†Virginia bar

Writer's Direct Telephone: (301) 313-3262
Writer's E-mail Address: NMACDONALD@HARTELKANE.COM

September 4, 2007

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

> Re:  Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.,*
> Case Number: 24X07000313, Circuit Court for Baltimore City

Dear Mr. Lawrie,

My firm represents Defendant Crane Co. in the above-referenced matter. Crane Co. was served in this case on August 20, 2007. While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, Defendant Crane Co. joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Neil J. MacDonald

# VENABLE LLP

210 Allegheny Avenue
Post Office Box 5517
Towson, Maryland 21285-5517

Telephone 410-494-6200
Facsimile 410-821-0147

www.venable.com

Theodore F. Roberts          410-494-6344          tfroberts@venable.com

August 31, 2007

## BY FIRST CLASS MAIL AND E-MAIL

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:   Removal of *Lewis Shifflett, et ux. v. Crown Cork and Seal Company*
Case Number: 24X07000313, Circuit Court for Baltimore City

Dear Mr. Lawrie:

My firm represents Crown Cork and Seal Company in the above-referenced matter. Crown Cork and Seal Company was served in this case on August 8, 2007. While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, Crown Cork and Seal Company joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Theodore F. Roberts

TO1DOCS/249858

MARYLAND   VIRGINIA   WASHINGTON, DC



210 Allegheny Avenue
Post Office Box 5517
Towson, Maryland 21285-5517

Telephone 410-494-6200
Facsimile 410-821-0147

www.venable.com

(410) 494-6364     smrichmond@venable.com

September 5, 2007

***HAND DELIVERED***

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:    Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.*,
       Case Number: 24X07000313, Circuit Court for Baltimore City

Dear Mr. Lawrie,

My firm represents Crown Cork & Seal USA, Inc. in the above-referenced matter.
Crown Cork & Seal USA, Inc. was served in this case on August 9, 2007  While
reserving all defenses, including those relating to sufficiency of service, process, venue,
and personal jurisdiction, Crown Cork & Seal USA, Inc. joins in, and consents to, the
removal of this case to the United States District Court for the District of Maryland based
on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Scott M. Richmond

SMR/bl
#249948

MARYLAND   VIRGINIA   WASHINGTON, DC



**DEHAY & ELLISTON, L.L.P.**
ATTORNEYS AND COUNSELORS

J. CARLISLE DEHAY, JR.
(1922-1991)

STEVEN J. PARROTT, ESQUIRE
Direct: 410-783-7002
Fax: 410-783-7221
Email: sjp@dehay.com

August 31, 2007

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re: Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.*, Case Number: 24X07000313, Circuit Court for Baltimore City

Dear Mr. Lawrie,

My firm represents Defendants Union Carbide Corporation, Riley Power, Inc. (f/k/a Babcock Borsig, Inc., f/k/a Riley Stoker Corporation), Pneumo Abex LLC, Foster Wheeler Energy Corporation, and Foster Wheeler, L.L.C. (survivor to a merger with Foster Wheeler Corporation), in the above-referenced matter. Defendants Riley Power, Inc. (f/k/a Babcock Borsig, Inc., f/k/a Riley Stoker Corporation), Foster Wheeler Energy Corporation, and Foster Wheeler, L.L.C. (survivor to a merger with Foster Wheeler Corporation) were served in this case on August 9, 2007. Defendants Union Carbide Corporation and Pneumo Abex LLC were served in this case on August 8, 2007 and August 7, 2007, respectively. While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, Defendants Union Carbide Corporation, Riley Power, Inc. (f/k/a Babcock Borsig, Inc., f/k/a Riley Stoker Corporation), Pneumo Abex LLC, Foster Wheeler Energy Corporation, and Foster Wheeler, L.L.C. (survivor to a merger with Foster Wheeler Corporation) join in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

/s/ Steven J. Parrott
Steven J. Parrott

DALLAS          BALTIMORE          HOUSTON
36 SOUTH CHARLES STREET, SUITE 1300, BALTIMORE, MARYLAND 21201
PHONE: 410.783.7225  FACSIMILE: 410.783.7221
WEBSITE: www.dehay.com

# MERINGER, ZOIS & QUIGG, LLC

ATTORNEYS AT LAW

300 EAST LOMBARD STREET

SUITE 1440

BALTIMORE, MD 21202

WWW.MERINGERLAW.COM

August 30, 2007

443-524-7978
FAX: 443-524-7982

**VIA FIRST CLASS MAIL**
W. Thomas Lawrie, Esquire
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 East Baltimore Street, Suite 1300
Baltimore, MD 21202

RE:     **Removal of *Lewis Shifflett, et ux. v. John Crane-Houdaille, Inc., et al.,*
        Case Number: 24X07000313, Circuit Court for Baltimore City**

Dear Mr. Lawrie:

My firm represents General Electric Company ("GE") in the above-referenced matter.
GE was served in this case on August 8, 2007.  While reserving all defenses, including those
relating to sufficiency of service, process, venue, and personal jurisdiction, GE joins in, and
consents to, the removal of this case to the United States District Court of Maryland based on
both federal enclave jurisdiction and 16 U.S.C. §457 jurisdiction.

Very truly yours,

James T. Zois

JTZ:adj



**DLA Piper US LLP**
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209-3600
T 410.580.3000
F 410.580.3001
W www.dlapiper.com

PAUL J. DAY
OF COUNSEL
paul.day@dlapiper.com
T 410.580.4133  F 410.580.3133

August 31, 2006

W. Thomas Lawrie, Esquire
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:   Removal of *Lewis Shifflett, et ux. v. John Crane-Houdaille, Inc., et al.*,
      Case Number: 24X07000313, Circuit Court for Baltimore City

Dear Mr. Lawrie:

My firm represents Ford Motor Company and General Motors Corporation in the above-referenced matter. Both Ford Motor Company and General Motors Corporation were served in this case on August 8, 2007. While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, Ford Motor Company and General Motors Corporation join in, and consent to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Sincerely yours,

Paul J. Day

# NORTH & COBB

A PROFESSIONAL ASSOCIATION
7313 YORK ROAD
TOWSON, MARYLAND 21204

JEREMY W. NORTH
JOHN S. COBB⁺*
MELISSA A. GUY

⁺ALSO ADMITTED IN FLORIDA
*ALSO ADMITTED IN D.C.

TELEPHONE 410.825.1472
FACSIMILE 410.821.7064
E-MAIL :JNORTH@NORTHANDCOBB.COM

OF COUNSEL
MICHAEL B. MANN*

September 6, 2007

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:   Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.*,
      Case Number: 24X07000313, Circuit Court for Baltimore City

Dear Mr. Lawrie,

My firm represents General Refractories Company in the above-referenced matter. General Refractories Company was served in this case on August 10, 2007. While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, General Refractories Company joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Jeremy W. North

# MILES & STOCKBRIDGE P.C.

Vincent J. Palmiotto
(410) 385-3858
vpalmiotto@milesstockbridge.com

September 4, 2007

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:   Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.,*
Circuit Court for Baltimore City
Case Number: 24X07000313

Dear Mr. Lawrie,

My firm represents Georgia-Pacific, LLC in the above-referenced matter. Georgia-Pacific, LLC was served in this case on August 8, 2007. While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, Georgia-Pacific, LLC joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Vincent J. Palmiotto

VJP/mlh

Client Documents:4810-8679-1425v1|000001-#|RCH|09/4/2007
10 Light Street, Baltimore, MD 21202-1487 • 410.727.6464 • Fax: 410.385.3700 • www.milesstockbridge.com

Cambridge, MD • Columbia, MD • Easton, MD • Frederick, MD • McLean, VA • Rockville, MD • Towson, MD

The Law Offices of

# DAVID F. ALBRIGHT

1122 Kenilworth Drive
Suite 500
Baltimore, Maryland 21204

Telephone (410) 823-5455
Facsimile (410) 823-5453
e-mail: dalbright@verizon.net

September 4, 2007

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:   Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.,*
      Case Number: 24X07000313, Circuit Court for Baltimore City

Dear Mr. Lawrie,

My firm represents H.B. Smith Co., Inc. in the above-referenced matter. H.B. Smith Co.,
Inc. was served in this case on August 9, 2007. While reserving all defenses, including those relating
to sufficiency of service, process, venue, and personal jurisdiction, H.B. Smith Co., Inc. joins in, and
consents to, the removal of this case to the United States District Court for the District of Maryland
based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

David F. Albright, Esq.

09/04/2007 16:19 FAX                                                                    ☒001/001

LAW OFFICES

The Murphy Firm

ONE SOUTH STREET, 23RD FLOOR
BALTIMORE, MARYLAND 21202
OFFICE: (410) 539-6500
FAX: (410) 539-6599

September 4, 2007

**BY FACSIMILE (443-573-8501)**

W. Thomas Lawrie, Esquire
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 East Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:   **Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.,***
      **Case Number: 24X07000313, Circuit Court for Baltimore City**

Dear Mr. Lawrie:

      My firm represents Honeywell International, Inc. ("Honeywell") in the above-referenced matter. Honeywell was served in this case on August 8, 2007. While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, Honeywell joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

George C. Doub

GCD:dwa



**Main Office**

Suite 180

15850 Crabbs Branch Way

Rockville, MD 20855

301/948-1177

301/948-1334 Facsimile

**Katherine S. Duyer**

Licensed in MD, DC

kduyer@gavettdatt.com

**Virginia Office**

122 South Royal Street

P.O. Box 19140

Alexandria, VA 22320

703/549-9329

*Please reply to Main Office*

August 31, 2007

W. Thomas Lawrie, Esquire

Evert Weathersby Houff, LLC

Suntrust Bank Building

120 E. Baltimore Street, Suite 1300

Baltimore, MD 21202

> **Re:** *Removal of Lewis Shifflett, et ux. v. John Crane-Houdaille, Inc., et al,*
> *Case Number: 24x07000313, Circuit Court for Baltimore City*

Dear Mr. Lawrie:

My firm represents Keeler/Dorr-Oliver Boiler Company ("KDO") in the above-referenced matter. KDO was served in this case on August 13, 2007. While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, KDO joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

GAVETT AND DATT, P.C.

BY _____

Katherine S. Duyer

KSD/sej

L:\24.000\24-00523\letters\lawrie 8-31-07.wpd

# HARTEL, KANE, DeSANTIS, MacDONALD & HOWIE, LLP

## ATTORNEYS AT LAW

Timothy E. Howie\*•†
Neil J. MacDonald\*•†
Michael A. DeSantis\*•
Deborah E. Kane\*•†
John W. Hartel\*•†
Solomon M. Sterenberg\*•†

**Of Counsel:**
Michael P. Chervenak\*•†

\*Maryland bar
•District of Columbia bar
†Virginia bar

CALVERTON OFFICE PARK
11720 BELTSVILLE DRIVE, SUITE 500
BELTSVILLE, MARYLAND 20705

5924 NORTH 15TH STREET
ARLINGTON, VIRGINIA 22205

TELEPHONE: (301) 486-1200
FACSIMILE: (301) 486-0935

WWW.HARTELKANE.COM

Writer's Direct Telephone: (301) 313-3262
Writer's E-mail Address: NMACDONALD@HARTELKANE.COM

Richard W. Souther\*•†
Helyna M. Haussler\*•
Ioannis A. Laskaris\*•
Rachelle A. Schofield\*•
Dana K. Schultz\*
Kathleen M. Bartley\*
Jack L. Inman\*•
Okie C. Whiteru\*
Laura M. Mayes\*•
Tyler O. Prout †

September 4, 2007

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

> Re:  Removal of *Lewis Shifflett, et ux. v. John Crane -
> Houdaille, Inc., et al.*,
> Case Number: 24X07000313, Circuit Court for Baltimore
> City

Dear Mr. Lawrie,

My firm represents Defendant Kelly-Moore Paint Company, Inc. in the above-referenced matter.  Kelly-Moore was served in this case on August 21, 2007.  While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, Defendant Kelly-Moore joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Neil J. MacDonald

09/05/2007 12:32 FAX 410 296 0432          BODIE NAGLE DOLINA                          ☒002



## BodieNagle
ATTORNEYS AT LAW

LOUIS E. GRENZER, JR.

August 31, 2007

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

      Re:    Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.*,
               Case Number: 24X07000313, Circuit Court for Baltimore City

Dear Mr. Lawrie,

      My firm represents MCIC, Inc. in the above-referenced matter.  MCIC, Inc. was
served in this case on August 8, 2007.  While reserving all defenses, including those
relating to sufficiency of service, process, venue, and personal jurisdiction, MCIC, Inc.
joins in, and consents to, the removal of this case to the United States District Court for
the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457
jurisdiction.

               Very truly yours,

               */s/ Louis E. Grenzer, Jr.*

               Louis E. Grenzer, Jr.

**BODIE, NAGLE, DOLINA, SMITH & HOBBS, P. A.**                     A PROFESSIONAL ASSOCIATION

REPLY TO:
TOWSON OFFICE:                REISTERSTOWN OFFICE:          HAGERSTOWN OFFICE                WEB SITE: http://www.bodienagle.com
21 W. SUSQUEHANNA AVE.        143 MAIN STREET              WEST WASHINGTON STREET, STE. 501    E-MAIL: [...]@bodienagle.com
TOWSON, MD  21204-5279        REISTERSTOWN, MD 21136       HAGERSTOWN, MD 21740
410.823.1250                  410.833.1221                 301.739-1013
410.296.0432 FAX              410.833.0026 FAX             877-739-1013  TOLL FREE

                                                           301-739-6432   FAX

SEP. 5. 2007  6:48PM    MCCARTER AND ENGLISH

NO. 5324   P. 2
McCarter & English, LLP
245 Park Avenue
New York, NY 10167
tel 212.609.6800
fax 212.609.6921
www.mccarter.com



**M<sup>c</sup>CARTER ENGLISH**
ATTORNEYS AT LAW

September 5, 2007

VIA FACSIMILE AND US MAIL

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:  Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.*
     Case Number: 24X07000313, Circuit Court for Baltimore City

Richard P. O'Leary
Partner
T. 212.609.6612
F. 212.935.1008
roleary@mccarter.com

McCarter & English, LLP
245 Park Avenue
27th Floor
New York, NY 10167
T. 212.609.6800
F. 212.609.6921
www.mccarter.com

Dear Mr. Lawrie:

My firm represents Mestek, Inc. in the above-referenced matter. Mestek, Inc. was served in this case on August 9, 2007. While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, Mestek, Inc. joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Richard P. O'Leary

Richard P. O'Leary

RPO'L:ja

HARTFORD        STAMFORD        NEW YORK CITY        NEWARK        PHILADELPHIA        WILMINGTON        BALTIMORE
860.275.6700    203.975.1600    212.609.6800         973.622.4444   215.979.3800        302.984.6300      410.659.8500
                ME1 6637455v.1

## STEPTOE & JOHNSON LLP

### ATTORNEYS AT LAW

Richard D. Albert
202.457.8339
ralbert@steptoe.com

1330 Connecticut Avenue, NW
Washington, DC 20036-1795
Tel 202.457.8339
Fax 202.429.3902
www.steptoe.com

September 4, 2007

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:    Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.*,
       Case Number: 24X07000313, Circuit Court for Baltimore City

Dear Mr. Lawrie,

My firm represents Metropolitan Life Insurance Company in the above-referenced matter.  Metropolitan Life Insurance Company was served in this case on August 15, 2007.  While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, Metropolitan Life Insurance Company joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

/s/ *Richard D. Albert*

Richard D. Albert

WASHINGTON  •  NEW YORK  •  CHICAGO  •  PHOENIX  •  LOS ANGELES  •  CENTURY CITY  •  LONDON  •  BRUSSELS

# SEMMES, BOWEN & SEMMES

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

250 WEST PRATT STREET
BALTIMORE, MARYLAND 21201

OFFICES IN
WASHINGTON, D.C.
HAGERSTOWN, MARYLAND
SALISBURY, MARYLAND
VIENNA, VIRGINIA

Scott H. Phillips
Direct Dial: 410-576-4717
Email: sphillips@semmes.com

TEL 410-539-5040

FAX 410-539-5223

WWW.SEMMES.COM

August 31, 2007

W. Thomas Lawrie, Esquire
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

RE:   Removal of *Lewis Shifflett, et ux. v. John Crane-Houdaille, Inc., et al.*
Case Number: 24X07000313, Circuit Court for Baltimore City

Dear Mr. Lawrie:

My firm represents Noland Company in the above-referenced matter. Noland Company was served in this case on August 15, 2007. While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, Noland Company joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Scott H. Phillips

SHP:jam

B0737071.WPD

# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

1341 G Street, N.W., The Colorado Building, Suite 500, Washington, DC 20005
Tel: (202) 626-7660   Fax: (202) 628-3606

New York • Los Angeles • San Francisco • Washington, DC • Newark • Philadelphia • Baltimore • Miami • Chicago • White Plains, NY
Dallas • Albany, NY • San Diego • Houston • Garden City, NY • Boston • McLean, VA • London
Affiliate Offices: Paris • Berlin • Cologne • Frankfurt • Munich

—

www.wemed.com

WRITER'S DIRECT DIAL (202) 626-7665
DAVID.SELTZER@WILSONELSER.COM
ADMITTED IN DC & MD

September 4, 2007

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:   Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.*,
        Case Number: 24X07000313, Circuit Court for Baltimore City

Dear Mr. Lawrie:

This firm represents Oakfabco, Inc. in the above-referenced matter. According to plaintiff's proof of service, Oakfabco was served in this case on August 10, 2007. While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, Oakfabco joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

David A. Seltzer

:das

270562.1

09/04/2007  17:43    2027393001                    MORGAN LEWIS                              PAGE  02/02

Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC  20004
Tel.  202.739.3000
Fax: 202.739.3001
www.morganlewis.com

# Morgan Lewis
COUNSELORS AT LAW

**Steven A. Luxton**
202.739.5452

September 4, 2007

**VIA FACSIMILE**

W. Thomas Lawrie, Esq.
EVERT WEATHERSBY HOUFF, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:   Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.*, Case
Number: 24X07000313, Circuit Court for Baltimore City

Dear Mr. Lawrie,

My firm represents Owens-Illinois, Inc. in the above-referenced matter.  Owens-Illinois, Inc. was served in this case on August 17, 2007.  While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, Owens-Illinois, Inc. joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Steven A. Luxton

Washington  Philadelphia  New York  Los Angeles  San Francisco  Miami  Pittsburgh  Princeton  Chicago  Minneapolis
Palo Alto  Dallas  Houston  Harrisburg  Irvine  Boston  London  Paris  Brussels  Frankfurt  Beijing  Tokyo

1-WA/2818942.1



**HODES, PESSIN & KATZ, P.A.**
901 Dulaney Valley Road  |  Suite 400  |  Towson, MD 21204
phone 410.938.8800  |  fax 410.832.5600  |  www.hpklegal.com

Steven A. Allen, Esquire
Direct Dial: (410) 339-6769
Facsimile: (410) 832-5602
sallen@hpklegal.com

August 29, 2007

W. Thomas Lawrie
Evert Weathersby Houff
SunTrust Bank Building
120 East Baltimore Street, Suite 1300
Baltimore, Maryland 21202

> RE: Removal of *Lewis Shifflett, et ux. V. John Crane – Houdaille, Inc., et al.*, Case
> Number: 24X07000313, Circuit Court for Baltimore City

Dear Mr. Lawrie:

My firm represents Defendant Potomac Electric Power Company ("PEPCO") in the above-referenced matter. PEPCO was served in this case on August 8, 2007. While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, PEPCO joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland, based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Steven A. Allen

SAA/mlt

cc:   John J. Sullivan, Esquire
      PEPCO Deputy General Counsel

*Big firm talent, small firm appeal.*
TOWSON     COLUMBIA     BEL AIR     CAMBRIDGE     BETHESDA

# GOODELL, DeVRIES, LEECH & DANN, LLP

ATTORNEYS AT LAW
ONE SOUTH STREET, 20TH FLOOR
BALTIMORE, MARYLAND 21202

TELEPHONE (410) 783-4000

FACSIMILE (410) 783-4040

MALCOLM S. BRISKER
MSB@GDLDLAW.COM
WRITER'S DIRECT NUMBERS
410-783-4049 (Voice)
410-951-0451 (Fax)

ADMITTED IN MARYLAND
&
THE DISTRICT OF COLUMBIA

September 5, 2007

**Via Facsimile & U.S. Mail**
W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:   Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.*,
Case Number: 24X07000313, Circuit Court for Baltimore City

Dear Mr. Lawrie,

My firm represents Rockbestos-Surprenant Cable Corp., formerly known as Rockbestos Company in the above-referenced matter. Rockbestos-Surprenant Cable Corp., formerly known as Rockbestos Company was served in this case on September 4, 2007. While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, Rockbestos-Surprenant Cable Corp., formerly known as Rockbestos Company joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Malcolm S. Brisker

MSB/krc
888056

**BACON, THORNTON & PALMER, L.L.P.**
Suite 706
6411 Ivy Lane
Greenbelt, Maryland 20770
(301) 345-7001
www.lawbtp.com

Edward C. Bacon
Patricia M. Thornton
Mark D. Palmer
Jeannie Pittillo Kauffman

Sean Werner
R. Brent Fuller
Sha'Donna Claggett

September 7, 2007

W. Thomas Lawrie, Esquire
Evert, Weathersby & Houff, LLC
Sun Trust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, MD  21202

Re:    **Removal of Lewis Shifflett, et al. v. AC and R Insulation Company, Inc.,**
       **Case No.: 24X07000313**

Dear Mr. Lawrie:

My firm represents Republic Powdered Metals, Inc., in the above-referenced matter.  Republic Powdered Metals, Inc., was served in this case on August 10, 2007.  While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, Republic Powdered Metals, Inc., joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Jeannie Pittillo Kauffman

**BACON, THORNTON & PALMER, L.L.P.**
Suite 706
6411 Ivy Lane
Greenbelt, Maryland 20770
(301) 345-7001
www.lawbtp.com

Edward C. Bacon
Patricia M. Thornton
Mark D. Palmer
Jeannie Pittillo Kauffman

_____
Sean Werner
R. Brent Fuller

August 31, 2007

W. Thomas Lawrie, Esquire
Evert, Weathersby & Houff, LLC
Sun Trust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, MD 21202

Re:   **Removal of Lewis Shifflett, et al. v. AC and R Insulation Company, Inc.,**
      **Case No.: 24X07000313**

Dear Mr. Lawrie:

My firm represents RPM, Inc. in the above-referenced matter. RPM, Inc. was served in this case on August 10, 2007. While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, RPM, Inc. joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Jeannie Pittillo Kauffman

**BACON, THORNTON & PALMER, L.L.P.**
Suite 706
6411 Ivy Lane
Greenbelt, Maryland 20770
(301) 345-7001
www.lawbtp.com

Edward C. Bacon
Patricia M. Thornton
Mark D. Palmer
Jeannie Pittillo Kauffman

Sean Werner
R. Brent Fuller

August 31, 2007

W. Thomas Lawrie, Esquire
Evert, Weathersby & Houff, LLC
Sun Trust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, MD 21202

Re:   **Removal of Lewis Shifflett, et al. v. AC and R Insulation Company, Inc.,**
      **Case No.: 24X07000313**

Dear Mr. Lawrie:

My firm represents RPM International, Inc., in the above-referenced matter. RPM International, Inc., was served in this case on August 16, 2007. While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, RPM International, Inc., joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Jeannie Pittillo Kauffman

# MILES & STOCKBRIDGE P.C.

Vincent J. Palmiotto
(410) 385-3858
vpalmiotto@milesstockbridge.com

August 31, 2007

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:   Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.*,
        Circuit Court for Baltimore City
        Case Number: 24X07000313

Dear Mr. Lawrie,

My firm represents Superior Boiler Works in the above-referenced matter.  Superior Boiler Works was served in this case on August 27, 2007.  While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, Superior Boiler Works joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Vincent J. Palmiotto

VJP/mlh

Client Documents:4828-8542-6433v1(000001-#BRCH(08/31/2007
10 Light Street, Baltimore, MD 21202-1487 • 410.727.6464 • Fax: 410.385.3700 • www.milesstockbridge.com

Cambridge, MD • Columbia, MD • Easton, MD • Frederick, MD • McLean, VA • Rockville, MD • Towson, MD

# MILES &STOCKBRIDGE P.C.

Vincent J. Palmiotto
(410) 385-3858
vpalmiotto@milesstockbridge.com

August 31, 2007

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:  Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.*,
Circuit Court for Baltimore City
Case Number: 24X07000313

Dear Mr. Lawrie,

My firm represents TH Agriculture & Nutrition, L.L.C. in the above-referenced matter.
TH Agriculture & Nutrition, L.L.C. was served in this case on August 9, 2007.  While reserving
all defenses, including those relating to sufficiency of service, process, venue, and personal
jurisdiction, TH Agriculture & Nutrition, L.L.C. joins in, and consents to, the removal of this
case to the United States District Court for the District of Maryland based on both federal
enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Vincent J. Palmiotto

VJP/mlh

**M** MERITAS LAW FIRMS WORLDWIDE
100 EAST PRATT STREET
26TH FLOOR
BALTIMORE MARYLAND 21202
410.752.9700
FAX 410.727.5460

www.tydingslaw.com

SCOTT P. BURNS
410.752.9743
sburns@tydingslaw.com

ATTORNEYS AT LAW

## TYDINGS & ROSENBERG LLP

September 5, 2007

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:   Removal of *Lewis Shifflett, et ux. v. John Crane Houdaille, Inc., et al.*,
Case Number: 24X07000313, Circuit Court for Baltimore City

Dear Mr. Lawrie,

My firm represents Thomas Somerville Company in the above-referenced matter.
Thomas Somerville Company was served in this case on about August 8, 2007.  While
reserving all defenses, including those relating to sufficiency of service, process, venue,
and personal jurisdiction, Thomas Somerville Company joins in, and consents to, the
removal of this case to the United States District Court for the District of Maryland based
on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Sincerely,

Scott Patrick Burns

# LAW OFFICES OF RICHARD L. FLAX, LLC

Suite 1700
100 NORTH CHARLES STREET
BALTIMORE, MARYLAND 21201

(410) 843-0512
FACSIMILE (410) 962-0589

E-Mail: richard.flax@zgf-law.com

RICHARD L. FLAX (MD, DC)
Cell Phone: (410) 303-2309

September 6, 2007

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:    Removal of Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.,
       Case Number: 24X07000313, Circuit Court for Baltimore City

Dear Mr. Lawrie,

My firm represents Defendant, Walter E. Campbell Company, Inc., in the above-referenced matter.  Walter E. Campbell Company, Inc., was served in this case on or about August 14, 2007.  While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, Walter E. Campbell Company, Inc., joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Richard L. Flax

RLF/rf



**Thomas P. Bernier, Esq.**
Direct (410) 779-3960
tbernier@smsm.com
Also Admitted in
Washington D.C.

August 31, 2007

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:    **Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.*,
Case Number: 24X07000313, Circuit Court for Baltimore City**

Dear Mr. Lawrie,

My firm represents Weil-McLain in the above-referenced matter. Weil-McLain
was served in this case on August 10, 2007. While reserving all defenses, including those
relating to sufficiency of service, process, venue, and personal jurisdiction, Weil-McLain
joins in, and consents to, the removal of this case to the United States District Court for
the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457
jurisdiction.

Very truly yours,

Thomas P. Bernier

One North Charles Street, Suite 2500
Baltimore, Maryland 21201
**www.smsm.com**
Tel: (410) 779-3960   Fax: (410) 779-3967

# GOODELL, DeVRIES, LEECH & DANN, LLP

ATTORNEYS AT LAW
ONE SOUTH STREET, 20TH FLOOR
BALTIMORE, MARYLAND 21202
http://www.gdldlaw.com

TELEPHONE  (410) 783-4000

FACSIMILE (410) 783-4040

MICHAEL A. PICHINI
map@gdldlaw.com
(410) 783-4015

September 5, 2007

**Via Facsimile & U.S. Mail**
W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:   Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.*,
Case Number: 24X07000313, Circuit Court for Baltimore City

Dear Mr. Lawrie,

My firm represents Zurn Industries, LLC, formerly known as Zurn Industries, Inc. in the above-referenced matter. Zurn Industries, LLC, formerly known as Zurn Industries, Inc. was served in this case on August 8, 2007. While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, Zurn Industries, LLC, formerly known as Zurn Industries, Inc. joins in, and consents to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Michael A. Pichini

MAP/krc
887589

**VENABLE**LLP

210 Allegheny Avenue
Post Office Box 5517
Towson, Maryland 21285-5517

Telephone 410-494-6200
Facsimile 410-821-0147

www.venable.com

(410) 494-6364        smrichmond@venable.com

September 7, 2007

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:    Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.,*
        Case Number: 24X07000313, Circuit Court for Baltimore City

Dear Mr. Lawrie,

My firm represents Rapid-American Corporation in the above-referenced matter.
Rapid-American Corporation was served in this case on September 6, 2007. While
reserving all defenses, including those relating to sufficiency of service, process, venue,
and personal jurisdiction, Rapid-American Corporation joins in, and consents to, the
removal of this case to the United States District Court for the District of Maryland based
on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

Very truly yours,

Scott M. Richmond

SMR/bl
#250035

MARYLAND   VIRGINIA   WASHINGTON, DC



**DEHAY & ELLISTON, L.L.P.**
ATTORNEYS AND COUNSELORS

J. CARLISLE DEHAY, JR.
(1922-1991)

STEVEN J. PARROTT, ESQUIRE
Direct: 410-783-7002
Fax: 410-783-7221
Email: sjp@dehay.com

September 7, 2007

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

     Re:    Removal of *Lewis Shifflett, et ux. v. John Crane - Houdaille, Inc., et al.,*
              Case Number: 24X07000313, Circuit Court for Baltimore City

Dear Mr. Lawrie,

    My firm represents Defendant, The Okonite Company, in the above-referenced matter. Defendant, The Okonite Company was served in this case on September 4, 2007. While reserving all defenses, including those relating to sufficiency of service, process, venue, and personal jurisdiction, Defendant, The Okonite Company join in, and consent to, the removal of this case to the United States District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.

               Very truly yours,

               *Steven J. Parrott /SPMH*

               Steven J. Parrott

DALLAS       BALTIMORE       HOUSTON

36 SOUTH CHARLES STREET, SUITE 1300, BALTIMORE, MARYLAND 21201
PHONE: 410.783.7225  FACSIMILE: 410.783.7221
WEBSITE: www.dehay.com

**From:** "Palmiotto, Vincent J." <vpalmiotto@MilesStockbridge.com>
**To:** "William T. Lawrie" <WTLawrie@ewhlaw.com>
**Date:** 9/4/2007 2:34 PM
**Subject:** Lewis Shiflett

Tom,

Aqua-Chem, Inc. is not a proper defendant as their name was changed to Cleaver-Brooks, Inc.   Please let me know if you need any further information.

Vince

Vincent J. Palmiotto, Esquire
Miles & Stockbridge P.C.
10 Light Street
Baltimore, MD  21202

410.385.3858 Telephone
410.385.3700 Fax

In accordance with Internal Revenue Service rules, any federal tax advice provided in this communication is not intended or written by the author to be used, and cannot be used by the recipient, for the purpose of avoiding penalties which may be imposed on the recipient by the IRS.  Please contact the author if you would like to receive written advice in a format which complies with IRS rules and may be relied upon to avoid penalties.

Confidentiality Notice: This e-mail, including any attachment(s), is intended for receipt and use by the intended addressee(s), and may contain confidential and privileged information. If you are not an intended recipient of this e-mail, you are hereby notified that any unauthorized use or distribution of this e-mail is strictly prohibited, and requested to delete this communication and its attachment(s) without making any copies thereof and to contact the sender of this e-mail immediately. Nothing contained in the body and/or header of this e-mail is intended as a signature or intended to bind the addressor or any person represented by the addressor to the terms of any agreement that may be the subject of this e-mail or its attachment(s), except where such intent is expressly indicated.

# Exhibit 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

LEWIS SHIFFLETT, et ux.                    *

    Plaintiffs                         *

                v.            *        Civil Action: 1:07-cv-02397-WDQ

AC&R INSULATION CO., INC., et al..,    *

    Defendants                        *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## JOINT STATEMENT

Defendant CBS Corporation, a Delaware corporation, f/k/a Viacom Inc., successor by merger to CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation [hereinafter "CBS Corporation"], and the Defendant named as Federated Development Company, a Texas corporation merged into Federated Development, LLC, a Delaware limited liability company [hereinafter "Federated Development"], in response to the Standing Order Concerning Removal issued by this Court on September 11, 2007, hereby submit the following Joint Statement on behalf of all removing Defendants:

1.    All proper Defendants in this action were served with the complaint on or after August 8, 2007, with the exception of A.W. Chesterton Company, which has no record of service. The specific date of service for each Defendant is indicated in the accompanying list, attached as **Exhibit 1**. Proofs of service for all Defendants, as originally filed by Plaintiffs in Baltimore City Circuit Court (and subsequently filed under multiple docket entries in this Court), are provided at **Exhibit 2**.

2.    This action was removed within 30 days of the date that the first Defendants were served with a copy of the complaint; the first service occurred on August 8, 2007, and the case was removed on September 7, 2007.

3.    Every proper Defendant that had been served with the complaint formally joined in and consented to the action's removal to the U.S. District Court for the District of Maryland prior to the time that CBS Corporation and Federated Development filed the Notice of Removal on September 7, 2007. These joinder and consent letters were filed previously with this Court, and appear at docket entry No. 2, "Consent to Removal..."

4.    A.W. Chesterton Company was not served with the complaint prior to removal, and so was unable to join in the removal without risking the waiver of certain defenses. However, included with the letters filed previously with this Court at docket entry No. 3, "Correspondence re: Letters from Counsel," is a letter from counsel for A.W. Chesterton Company, dated September 7, 2007, indicating that A.W. Chesterton will join in and consent to the removal of this action once A.W. Chesterton has been properly served with the complaint. Furthermore, subsequent correspondence from counsel for A.W. Chesterton Company, dated September 17, 2007 and attached hereto as **Exhibit 3**, indicates that A.W. Chesterton Company has still not been served with the complaint, and reiterates A.W. Chesterton's commitment to joining in the removal once it has been properly served.

5.    Aqua-Chem, Inc. was improperly named as a Defendant in this matter. Although Plaintiffs filed a Proof of Service alleging that Aqua-Chem, Inc. was served on August 13, 2007 (see **Exhibit 2**), the company's name was previously changed from Aqua-

2

Chem, Inc. to Cleaver-Brooks, Inc.; it follows that Aqua-Chem, Inc. is not a proper Defendant and cannot join in this removal. See correspondence from counsel at docket entry No. 3 ("Correspondence..."). However, Cleaver-Brooks, Inc. *has* joined in this removal, as evidenced by a letter from counsel dated August 31, 2007 and filed as part of docket entry No. 2 ("Consent to Removal..."). Thus the joinder and consent to removal by Cleaver-Brooks, Inc. satisfies any joinder requirements related to the improperly-named Aqua-Chem, Inc.

6.      J.E. Hurley Machine and Boiler Works [hereinafter "J.E. Hurley"] was also improperly named as a Defendant in this action. Although Plaintiffs filed a Proof of Service alleging that J.E. Hurley was served on August 24, 2007 (with service purportedly being made on "Patrick L. Hurley, VP, C/o Hurley Company;" see **Exhibit 2**), J.E. Hurley was a business entity which no longer exists; it follows that J.E. Hurley is not a proper Defendant and cannot join in the removal. See letter from Patrick Hurley, dated September 4, 2007 and filed as part of docket entry No. 2 ("Consent to Removal..."). However, Plaintiffs' Complaint also named the following Defendants in this action: "Boiler and Furnace Cleaners, Inc. a/k/a Hurley Co., **as successor to J.E. Hurley Machine and Boiler Works, Inc.,**" as well as "Hurley Company, **as successor to J.E. Hurley Machine and Boiler Works, Inc.**" (Complaint, 2, 6) (emphasis added).[1] Patrick Hurley expressly stated in his letter of September 4, 2007 that both Boiler and Furnace Cleaners, Inc. and the Hurley Company join in and consent to the removal of this action from Baltimore City Circuit Court to the U.S. District Court for the District of Maryland. Further, Mr. Hurley stated that he is the sole surviving officer of J.E. Hurley, and that J.E.

---

[1] Boiler and Furnace Cleaners, Inc. is a true business entity, while Hurley Company is only an operating division of Boiler and Furnace Cleaners, Inc. Neither is actually a successor to J.E. Hurley Machine and Boiler Works, despite Plaintiffs' representations to the contrary in the Complaint.

Hurley "certainly would have joined in and consented to the removal if it had still been in existence." Thus the joinder and consent to removal by Patrick Hurley on behalf of his companies satisfies any joinder requirements related to the improperly-named J.E. Hurley Machine and Boiler Works.

    7.    All removing Defendants have approved this Joint Statement. See correspondence from counsel at **Exhibit 4**.

<div align="center">/s/</div>

Philip A. Kulinski
Federal Bar # 27543

W. Thomas Lawrie
Federal Bar # 28226

EVERT WEATHERSBY HOUFF
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, MD 21202
Phone: 443-573-8500
Fax:    443-573-8501

Attorneys for:
**Defendant CBS Corporation**
**Defendant Federated Development**

<div align="center">4</div>

CERTIFICATE OF SERVICE

     I hereby certify that, on this 17th day of September, 2007, the foregoing Joint Statement was electronically filed and served on all counsel of record, and a true and correct copy of the foregoing Joint Statement was mailed via first class mail, postage prepaid, to the following parties:

Patrick Hurley, Secretary and Treasurer
Boiler and Furnace Cleaners, Inc.
4320 Bladensburg Road
Brentwood, Maryland 20722

For:
- **Boiler and Furnace Cleaners, Inc.**
- **Hurley Company Operating Division of Boiler and Furnace Cleaners, Inc.**

Jeremy W. North, Esquire
North & Cobb, P.A.
7313 York Road
Towson, Maryland 21204

Attorneys for the following Defendant:
- **General Refractories Company**

                                      _____/s/_____
                                     W. Thomas Lawrie

# Exhibit 1

| Defendant [1] | Service Date |
|---|---|
| AC&R Insulation Co. | August 8, 2007 |
| American Standard Companies, Inc. | August 8, 2007 |
| A.O. Smith Corp. | August 8, 2007 |
| Avco Corporation, Spencer-Lycoming Division | August 10, 2007 |
| A.W. Chesterton Company [2] | No record of service |
| Boiler and Furnace Cleaners, Inc. | August 8, 2007 |
| Bondex International, Inc. | August 10, 2007 |
| CBS Corporation | August 8, 2007 |
| CertainTeed Corporation | August 8, 2007 |
| Chrysler LLC (formerly DaimlerChrysler) | August 8, 2007 |
| C.J. Coakley Co., Inc. | August 30, 2007 |
| Cleaver-Brooks, Inc. | August 10, 2007 |
| Columbia Boiler Co. | August 13, 2007 |
| Crane Co. | August 14, 2007 |
| Crown Cork & Seal Company | August 8, 2007 |
| Crown Cork & Seal USA, Inc. | August 8, 2007 |
| Dorr-Oliver Incorporated as Successor to Keeler/Dorr-Oliver Boiler Company | August 8, 2007 |
| Federated Development | August 14, 2007 |
| Ford Motor Company | August 8, 2007 |
| Foster Wheeler, L.L.C. | August 10, 2007 |
| Foster Wheeler Energy Corporation | August 10, 2007 |
| General Electric Company | August 8, 2007 |
| General Motors Corporation | August 8, 2007 |
| General Refractories Company | August 10, 2007 |
| Georgia Pacific, LLC | August 8, 2007 |
| H.B. Smith Co., Inc. | August 9, 2007 |
| Honeywell International, Inc. | August 8, 2007 |
| Hurley Company | August 8, 2007 |
| Kaiser Gypsum Co. | August 10, 2007 |
| Kelly-Moore Paint Company, Inc. | August 17, 2007 |
| MCIC, Inc. | August 8, 2007 |
| Mestek, Inc. | August 9, 2007 |
| Metropolitan Life Insurance Company | August 13, 2007 |

| | |
|---|---|
| Noland Company [3] | August 8, 16, 2007 |
| Oakfabco, Inc. | August 10, 2007 |
| The Okonite Company | September 4, 2007 |
| Owens-Illinois, Inc. [4] | August 8, 16, 2007 |
| Pneumo Abex LLC | August 10, 2007 |
| Potomac Electric Company | August 8, 2007 |
| Rapid-American Corporation | September 4, 2007 |
| Republic Powdered Metals, Inc. | August 10, 2007 |
| Riley Power, Inc.(f/ka Babcock Borsig, Inc., f/k/a Riley Stoker Corporation) [3] | August 8, 16, 2007 |
| Rockbestos | August 27, 2007 |
| RPM, Inc. | August 10, 2007 |
| RPM International, Inc. | August 17, 2007 |
| Superior Boiler Works | August 27, 2007 |
| TH Agriculture & Nutrition, L.L.C. | August 9, 2007 |
| Thomas Somerville Company | August 8, 2007 |
| Union Carbide Corporation | August 8, 2007 |
| Walter E. Campbell Company, Inc. | August 14, 2007 |
| Weil-McLain | August 10, 2007 |
| Zurn Industries | August 8, 2007 |

[1]   Not included in this list are the following:  Aqua-Chem, Inc., which was improperly named as a Defendant – its name was previously changed to Cleaver-Brooks, Inc.; and J.E. Hurley Machine and Boiler Works, which no longer exists as a business entity. (See Joint Statement, paragraphs 5, 6.)

[2]   A.W. Chesterton Company has no record of service.  Further, Plaintiffs had not filed a Proof of Service for this company in the Circuit Court for Baltimore City prior to the time that the case was removed (though Plaintiffs had filed Proofs of Service for every other Defendant). (See Joint Statement, paragraph 4.)

[3]   Noland Company and Riley Power were served at two different locations:  at CTI on August 8, 2007; and at CSC Lawyers, Incorporating Service Co. on August 16, 2007.

[4]   Owens-Illinois was served at two different locations:  at CTI on August 8, 2007; and on the Company President at a corporate address on August 16, 2007.

# Exhibit 2

EFiled
Aug 10 2007 11:01AM EDT
Transaction ID 15903621

## IN THE CIRCUIT COURT FOR BALTIMORE CITY

IN RE:  BALTIMORE CITY
ASBESTOS LITIGATION

       \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

LEWIS SHIFFLETT, et ux.

    Plaintiffs,

vs.                                            Case No.: 24x07000313

AC&R INSULATION CO., INC. et. al.

    Defendants.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PROOF OF SERVICE

Plaintiff, Lewis Shifflett, states that on August 8, 2007, service of process was executed on the following Cross or Third Party Defendants.  Attached as Exhibit "A" are photo copies of the Certified Return Receipts received via USMAIL by the Ruckdeschel Law Firm, LLC on August 9, 2007:

| COMPANY | SERVE | Dated |
|---|---|---|
| A.C. & R. Insulation Co., Inc. | SERVE: Kathryn Sacco Duyer, Esq. | 8/8/2007 |
| | SERVE: The Prentice Hall Corportation System | 8/8/2007 |
| A.O. Smith Corporation | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| American Standard | | |
| Boiler and Furnace Cleaners, Inc. | SERVE: The Corporation Trust | 8/8/2007 |
| CertainTeed  Corporation | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| CBS Corporation | SERVE: CSC Lawyers Incorporating Service Co. | 8/8/2007 |
| Crown Cork & Seal Company, Inc. | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| Crown Cork & Seal USA, Inc. | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| Daimler Chrysler Corporation | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| Door-Oliver Inc. | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| Ford Motor Company | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| General Electric Company | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| General Motors Corporation | SERVE: Corporation Trust, Inc. | 8/8/2007 |

| | | |
|---|---|---|
| Georgia-Pacific Corporation | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| Honeywell International, Inc. | SERVE: CSC Lawyers Incorporating Service Co. | 8/8/2007 |
| MCIC, Inc. | SERVE: Robert I. McCormick | 8/8/2007 |
| Noland Company | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| Owens-Illinois | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| Potomac Electric Power Company | SERVE: H. Edward Holtz | 8/8/2007 |
| Riley Stoker Corporation | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| Thos. Somerville Co. | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| Union Carbide Corporation | SERVE: Corporation Trust, Inc. | 8/8/2007 |
| Zurn Industries, Inc. | SERVE: Corporation Trust, Inc. | 8/8/2007 |

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel
The Ruckdeschel Law Firm, LLC
5126 Dorsey Hall Drive, Suite 201
Ellicott City, Maryland 21042
(410) 884-7825 [O]
(443) 583-0430 [F]
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of August, 2007, a copy of the foregoing

was served, via LexisNexis File & Serve, upon all counsel of record.

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel

**EFiled**
**Aug 10 2007 11:01AM EDT**
**Transaction ID 15903621**

---

### First Receipt

complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
Print your name and address on the reverse
so that we can return the card to you.
Attach this card to the back of the mailpiece,
or on the front if space permits.

A. Signature ☐ Agent ☐ Addressee
X V. Mathewe

B. Received by (Printed Name) V. Mathewe   C. Date of Delivery 8/8/07

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

.C. & R. Insulation Co., Inc.
ERVE: Kathryn Sacco Duyer, Esq.
iavett and Darr, PC
5850 Crabbs Branch Way, Ste. 180
ockville, MD 20855-2628

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☒ Yes

Article Number (Transfer from service label): 7006 0100 0005 5869 0380

Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

### Second Receipt

SENDER: COMPLETE THIS SECTION

Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
Print your name and address on the reverse
so that we can return the card to you.
Attach this card to the back of the mailpiece,
or on the front if space permits.

COMPLETE THIS SECTION ON DELIVERY

A. Signature ☐ Agent ☐ Addressee
X NANCY GRUENINGER

B. Received by (Printed Name) Nancy Grueninger   C. Date of Delivery 8/8

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

A.O. Smith Corporation
SERVE: The Prentice Hall Corportation
System
11 E. Chase St.
Baltimore, MD 21202

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☒ Yes

Article Number (Transfer from service label): 7006 0100 0005 5869 0397

Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

### Third Receipt

SENDER: COMPLETE THIS SECTION

Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
Print your name and address on the reverse
so that we can return the card to you.
Attach this card to the back of the mailpiece,
or on the front if space permits.

COMPLETE THIS SECTION ON DELIVERY

A. Signature ☐ Agent ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery 8/8

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

American Standard
SERVE: Corporation Trust, Inc.
300 E. Lombard St.
Baltimore, MD 21202

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☒ Yes

Article Number (Transfer from service label): 7006 0100 0005 5869 0410

Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

Complete Items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
Print your name and address on the reverse
so that we can return the card to you.
Attach this card to the back of the mailpiece,
or on the front if space permits.

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

PAUL SIMON                    8/1

D. Is delivery address different from Item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

Article Addressed to:

Boiler and Furnace Cleaners, Inc.
SERVE: The Corporation Trust
00 E. Lombard St.
Baltimore, MD 21202

3. Service Type
   ☑ Certified Mail  ☐ Express Mail
   ☐ Registered      ☐ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☑ Yes

Article Number
(Transfer from service label)   7006 0100 0005 5869 0458

Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

SENDER: COMPLETE THIS SECTION

Complete Items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
Print your name and address on the reverse
so that we can return the card to you.
Attach this card to the back of the mailpiece,
or on the front if space permits.

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____  ☐ Agent  ☐ Addressee

NANCY GRUENINGER

B. Received by ( Printed Name )   C. Date of Delivery

8/8

D. Is delivery address different from Item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

Article Addressed to:

CBS Corporation
SERVE: CSC Lawyers Incorporating
Service Co.
11 E. Chase St.
Baltimore, MD 21202

3. Service Type
   ☑ Certified Mail  ☐ Express Mail
   ☐ Registered      ☐ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☑ Yes

Article Number
(Transfer from service label)   7006 0100 0005 5869 0489

Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

SENDER: COMPLETE THIS SECTION

Complete Items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
Print your name and address on the reverse
so that we can return the card to you.
Attach this card to the back of the mailpiece,
or on the front if space permits.

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____  ☐ Agent  ☑ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

PAUL SIMON                    8/8

D. Is delivery address different from Item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

Article Addressed to:

Certainteed Corporation
SERVE: Corporation Trust, Inc.
300 E. Lombard St.
Baltimore, MD 21202

3. Service Type
   ☑ Certified Mail  ☐ Express Mail
   ☐ Registered      ☐ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☑ Yes

Article Number
(Transfer from service label)   7006 0100 0005 5869 0472

Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

PAUL SIMON   8/8

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:   ☐ No

1. Article Addressed to:

Crown Cork & Seal USA, Inc.
SERVE: Corporation Trust, Inc.
300 E. Lombard St.
Baltimore, MD 21202

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☑ Yes

2. Article Number (Transfer from service label)

7006 0100 0005 5869 0540

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete Items 1, 2, and 3. Also complete Item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

PAUL SIMON   8/8

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:   ☐ No

1. Article Addressed to:

Crown Cork & Seal Company, Inc.
SERVE: Corporation Trust, Inc.
300 E. Lombard St.
Baltimore, MD 21202

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☑ Yes

2. Article Number (Transfer from service label)

7006 0100 0005 5869 0533

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete Item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

8/8

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:   ☐ No

1. Article Addressed to:

Daimler Chrysler Corporation
SERVE: Corporation Trust, Inc.
300 E. Lombard St.
Baltimore, MD 21202

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☑ Yes

2. Article Number (Transfer from service label)

7006 0100 0005 5869 0557

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

**SENDER: COMPLETE THIS SECTION**

- Complete Items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Paul Simon_ ☐ Agent ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

PAUL SIMON   8/8

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

Door-Oliver Inc.
SERVE: Corporation Trust, Inc.
300 E. Lombard St.
Baltimore, MD 21202

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☑ Yes

2. Article Number
(Transfer from service label)   7006 0100 0005 5869 0564

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete Items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____ ☐ Agent ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

PAUL SIMON   8/8

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

Ford Motor Company
SERVE: Corporation Trust, Inc.
300 E. Lombard St.
Baltimore, MD 21202

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☑ Yes

2. Article Number
(Transfer from service label)   7006 0100 0005 5869 0588

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete Items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____ ☐ Agent ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

PAUL SIMON   8/8

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

General Electric Company
SERVE: Corporation Trust, Inc.
300 E. Lombard St.
Baltimore, MD 21202

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☑ Yes

2. Article Number
(Transfer from service label)   7006 0100 0005 5869 0618

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

General Motors Corporation
SERVE: Corporation Trust, Inc.
300 E. Lombard St.
Baltimore, MD 21202

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
PAUL SIMON   8/8

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☑ Yes

2. Article Number
(Transfer from service label)   7006 0100 0005 5869 0625

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Georgia-Pacific Corporation
SERVE: Corporation Trust, Inc.
300 E. Lombard St.
Baltimore, MD 21202

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
PAUL SIMON   8/8

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☑ Yes

2. Article Number
(Transfer from service label)   7006 0100 0005 5869 0649

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Honeywell International, Inc.
SERVE: CSC Lawyers Incorporating
Service Co.
11 E. Chase St.
Baltimore, MD 21202

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ NANCY GRUENINGER   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
8/8

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☑ Yes

2. Article Number
(Transfer from service label)   7006 0100 0005 5869 0663

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete
  Item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse
  so that we can return the card to you.
- Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

MCIC, Inc.
SERVE: Robert I. McCormick
11424 Cronhill Drive
Owings Mills, MD 21117

**COMPLETE THIS SECTION ON DELIVERY**

X

B. Received by ( Printed Name )    C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☒ Yes

2. Article Number
   (Transfer from service label)    7006 0100 0005 5869 0717

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete
  Item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse
  so that we can return the card to you.
- Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

Noland Company
SERVE: Corporation Trust, Inc.
300 E. Lombard St.
Baltimore, MD 21202

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                      ☐ Agent
                                       ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery
PAUL SIMON

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☒ Yes

2. Article Number
   (Transfer from service label)    7006 0100 0005 5869 0748

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete
  Item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse
  so that we can return the card to you.
- Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

Owens-Illinois
SERVE: Corporation Trust, Inc.
300 E. Lombard St.
Baltimore, MD 21202

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                      ☐ Agent
                                       ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery
PAUL SIMON

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☒ Yes

2. Article Number
   (Transfer from service label)    7006 0100 0005 5869 0779

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

A. Signature
X _Martha Richards_   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
N. RICARDSon   8-8-07

1. Article Addressed to:

Potomac Electric Power Company
SERVE: H. Edward Holtz
1610 Gaither Road, 2nd Floor
Rockville, MD  20850

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☑ Yes

2. Article Number
(Transfer from service label)
7006 0100 0005 5869 0793

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Paul Simon_   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
PAUL SIMON   8/8

1. Article Addressed to:

Riley Stoker Corporation
SERVE: Corporation Trust, Inc.
300 E. Lombard St.
Baltimore, MD  21202

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☑ Yes

2. Article Number
(Transfer from service label)
7006 0100 0005 5869 0816

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Paul Simon_   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
   8/8

1. Article Addressed to:

Thos. Somerville Co.
SERVE: Corporation Trust, Inc.
300 E. Lombard St.
Baltimore, MD  21202

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)

2. Article Number
(Transfer from service label)
7006 0100 0005 5869 08__

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

- Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse
  so that we can return the card to you.
- Attach this card to the back of the mailpiece,
  or on the front if space permits.

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery
PAUL SIMON  8/8

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

Union Carbide Corporation
SERVE: Corporation Trust, Inc.
300 E. Lombard St.
Baltimore, MD 21202

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Mer...
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☒

2. Article Number
(Transfer from service label)

7006 0100 0005 5869 0892

PS Form 3811, February 2004      Domestic Return Receipt      10299

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse
  so that we can return the card to you.
- Attach this card to the back of the mailpiece,
  or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery
PAUL SIMON  8/8

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

Zurn Industries, Inc.
SERVE: Corporation Trust, Inc.
300 E. Lombard St.
Baltimore, MD 21202

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☒ Yes

2. Article Number
(Transfer from service label)

2260 6985 5000 0010 9002

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

EFiled
**Aug 15 2007 4:28PMEDT**
**Transaction ID 15964125**

## IN THE CIRCUIT COURT FOR BALTIMORE CITY

IN RE:  BALTIMORE CITY
ASBESTOS LITIGATION

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

LEWIS SHIFFLETT, et ux.

       Plaintiffs,

vs.                                                Case No.: 24x07000313

AC&R INSULATION CO., INC. et. al.

       Defendants.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### PROOF OF SERVICE

Plaintiff, Lewis Shifflett, states that on August 8, 2007, service of process was executed on the following Cross or Third Party Defendant.  Attached as Exhibit "A" is a photo copy of the Certified Return Receipt received via USMAIL by the Ruckdeschel Law Firm, LLC on August 10, 2007:

| COMPANY | SERVE | DATED | RECEIVED |
|---|---|---|---|
| Hurley Company | SERVE: Patrick L. Hurley | 8/8/2007 | 8/10/2007 |

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel
The Ruckdeschel Law Firm, LLC
5126 Dorsey Hall Drive, Suite 201
Ellicott City, Maryland 21042
(410) 884-7825 [O]
(443) 583-0430 [F]
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of August, 2007, a copy of the foregoing

was served, via LexisNexis File & Serve, upon all counsel of record.


/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel

EFiled
Aug 15 2007  4:28PMEDT
Transaction ID 15964125

| SENDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _Cynthia Gordon_   ☐ Agent  ☐ Addressee<br>B. Received by ( Printed Name)   C. Date of Delivery  8-8-07 |
| 1. Article Addressed to:<br><br>Hurley Company<br>SERVE: Patrick L. Hurley<br>4320 Bladensburg Road<br>Brentwood, MD 20722 | D. Is delivery address different from item 1?  ☐ Yes<br>If YES, enter delivery address below:  ☐ No<br><br>3. Service Type<br>☒ Certified Mail   ☐ Express Mail<br>☐ Registered   ☐ Return Receipt for Merchandise<br>☐ Insured Mail   ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee)   ☒ Yes |
| 2. Article Number<br>(Transfer from service label)   7006 0100 0005 5869 0687 | |

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

EFiled
Aug 15 2007 4:28PMEDT
Transaction ID 15964125

## IN THE CIRCUIT COURT FOR BALTIMORE CITY

IN RE:  BALTIMORE CITY      *
ASBESTOS LITIGATION

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

     *

LEWIS SHIFFLETT, et ux.      *

       Plaintiffs,      *

vs.      *      Case No.: 24x07000313

AC&R INSULATION CO., INC. et. al.      *

       Defendants.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PROOF OF SERVICE

Plaintiff, Lewis Shifflett, states that on August 9, 2007, service of process was executed on the following Cross or Third Party Defendants.  Attached as Exhibit "A" are photo copies of the Certified Return Receipts received via USMAIL by the Ruckdeschel Law Firm, LLC on August 13, 2007:

| COMPANY | SERVE | DATED | RECEIVED |
|---|---|---|---|
| H.B. Smith Company, Inc. | SERVE: Resident Agent Doretta M. Boomsma | 8/9/2007 | 8/13/2007 |
| Mestek, Inc. | SERVE: Prentice Hall Corporation | 8/9/2007 | 8/13/2007 |
| T.H. Agriculture & Nutrition, Inc. | SERVE: CSC Lawyers Incorporating Service Co. | 8/9/2007 | 8/13/2007 |

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel
The Ruckdeschel Law Firm, LLC
5126 Dorsey Hall Drive, Suite 201
Ellicott City, Maryland 21042
(410) 884-7825 [O]
(443) 583-0430 [F]
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of August, 2007, a copy of the foregoing was served, via LexisNexis File & Serve, upon all counsel of record.

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel

EFiled
4:28PMEDT
Transaction ID 15964125

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete Item 4 If Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent   ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

D. Is delivery address different from Item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

1. Article Addressed to:

H.B. Smith Company, Inc.
SERVE: Resident Agent Doretta M.
Boomsma
47 Westfield Industrial Park Road
Westfield, MA  01085

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7006 0100 0005 5869 0656

PS Form 3811, February 2004       Domestic Return Receipt       102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete Item 4 If Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent   ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

D. Is delivery address different from Item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

1. Article Addressed to:

Mestek, Inc.
SERVE: Prentice Hall Corporation
84 State Street
Boston, MA  02109

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7006 0100 0005 5869 0724

PS Form 3811, February 2004       Domestic Return Receipt       102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete Item 4 If Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Laura Cooper   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

AUG 09 2007
USPS 19808

1. Article Addressed to:

T.H. Agriculture & Nutrition, Inc.
SERVE: CSC Lawyers Incorporating
Service Co.
2711 W. Centerville Road
Wilmington, DE  19899

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merc.
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7006 0100 0005 5869 0878

PS Form 3811, February 2004       Domestic Return Receipt       102595-02-M-1540

EFiled
Aug 15 2007  4:28PM EDT
Transaction ID 15964125

## IN THE CIRCUIT COURT FOR BALTIMORE CITY

IN RE:  BALTIMORE CITY                                *
ASBESTOS LITIGATION                                   *

*     *     *     *     *     *     *     *     *     *     *     *

                                                      *

LEWIS SHIFFLETT, et ux.                               *

       Plaintiffs,                                 *

                                                      *          Case No.: 24x07000313

vs.                                                   *

AC&R INSULATION CO., INC. et. al.                     *

       Defendants.                                 *

*     *     *     *     *     *     *     *     *     *     *

## PROOF OF SERVICE

Plaintiff, Lewis Shifflett, states that on August 10, 2007, service of process was executed on the following Cross or Third Party Defendants.  Attached as Exhibit "A" are photo copies of the Certified Return Receipts received via USMAIL by the Ruckdeschel Law Firm, LLC on August 13 or 14, 2007:

| COMPANY | SERVE | DATED | RECEIVED |
|---|---|---|---|
| AVCO Corporation | SERVE: President | 8/10/2007 | 8/13/2007 |
| Bondex International, Inc. | SERVE: President/Resident Agent | 8/10/2007 | 8/14/2007 |
| Cleaver-Brooks Company | SERVE: CT Corporation System | 8/10/2007 | 8/13/2007 |
| Foster-Wheeler LLC | SERVE: President | 8/10/2007 | 8/13/2007 |
| Foster-Wheeler Energy Corp. | SERVE: Thomas R. O'Brien, Esq. | 8/10/2007 | 8/13/2007 |
| General Refractories Co. | SERVE: President, c/o Law Department | 8/10/2007 | 8/13/2007 |
| Kaiser Gypsum Company, Inc. | SERVE: CT Corporation System | 8/10/2007 | 8/13/2007 |
| Oakfabco, Inc. | SERVE: Resident Agent | 8/10/2007 | 8/13/2007 |
| Pneumo Abex, Inc. | SERVE: President | 8/10/2007 | 8/13/2007 |
| Republic Powdered Metals, Inc. | SERVE: Prentice Hall Corporation | 8/10/2007 | 8/13/2007 |
| RPM, Inc. | SERVE: Prentice Hall Corporation | 8/10/2007 | 8/14/2007 |
| Weil-McLain, Inc. | SERVE: Robert Grussing, President | 8/10/2007 | |

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel
The Ruckdeschel Law Firm, LLC
5126 Dorsey Hall Drive, Suite 201
Ellicott City, Maryland 21042

(410) 884-7825 [O]
(443) 583-0430 [F]
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of August, 2007, a copy of the foregoing

was served, via LexisNexis File & Serve, upon all counsel of record.

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel

**EFiled**

4:28PMEDT
ID 15964125

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
AUG 1 0 2007

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

AVCO Corporation
SERVE: President
40 Westminster Street
Providence, RI 02903

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☒ Yes

2. Article Number       7006 0100 0005 5869 0427
   (Transfer from service label)

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Carmen McKee   ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
AUG 1 0 2007

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

Cleaver-Brooks Company
SERVE: CT Corporation System
7800 North 113th St.
Milwaukee, WI 53224

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☒ Yes

2. Article Number       7006 0100 0005 5869 0502
   (Transfer from service label)

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Doug Foley   ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
DOUG FOLEY

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

Foster-Wheeler Energy Corp.
SERVE: Thomas R. O'Brien, Esq.
Perryville Corporate Park
Clinton, NJ 08809-4000

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☒ Yes

2. Article Number       7006 0100 0005 5869 0601
   (Transfer from service label)

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Foster-Wheeler LLC
SERVE: President
Perryville Corporate Park
Clinton, NJ 08809-4000

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent   ☐ Addressee
B. Received by ( Printed Name)   C. Date of Delivery
DOUG FOLEY   9/10
D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.
4. Restricted Delivery? (Extra Fee) ☑ Yes

2. Article Number
(Transfer from service label)   7006 0100 0005 5869 0595

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

General Refractories Co.
SERVE: President, c/o Law Department
225 City Line Ave.
Bala Cynwyd, PA 19904

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent   ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery
8/10
D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.
4. Restricted Delivery? (Extra Fee) ☑ Yes

2. Article Number
(Transfer from service label)   7006 0100 0005 5869 0632

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Kaiser Gypsum Company, Inc.
SERVE: CT Corporation System
818 W. 7th Street
Suite 1004
Los Angeles, CA 90017

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Rudy Rivera   ☐ Agent   ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery
RUDY RIVERA   8/2007
D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.
4. Restricted Delivery? (Extra Fee) ☑ Yes

2. Article Number
(Transfer from service label)   7006 0100 0005 5869 0694

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
☐ Agent
☐ Addressee

B. Received by ( Printed Name )     C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

1. Article Addressed to:

Oakfabco, Inc.
SERVE: Resident Agent
210 W. 22nd St.
Suite 105
Oak Brook, IL 60523

3. Service Type
☐ Certified Mail      ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)     7006 0100 0005 5869 0755

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by ( Printed Name )     C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

1. Article Addressed to:

Pneumo Abex, Inc.
SERVE: President
3rd St. and Jefferson Ave.
Camden, NJ 08104

3. Service Type
☐ Certified Mail      ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)     7006 0100 0005 5869 0786

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

RECEIVED

A. Signature   AUG 10 2007
X
☐ Agent
☐ Addressee

B. Received by ( Printed Name )  Deanne Kessler   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

1. Article Addressed to:

Republic Powdered Metals, Inc.
SERVE: Prentice Hall Corporation
50 W. Broad St.
Suite 1800
Columbus, OH 43215

3. Service Type
☐ Certified Mail      ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)     7006 0100 0005 5869 0823

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X   AUG 10 2007        ☐ Agent
                        ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery
   Deanne Kessler

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

1. Article Addressed to:

RPM, Inc.
SERVE: Prentice Hall Corporation
50 W. Broad St.
Suite 1800
Columbus, OH  43215

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)         ☐ Yes

2. Article Number
   (Transfer from service label)

   7006 0100 0005 5869 0830

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Bondex International, Inc.
SERVE: President/Resident Agent
707 Spirit 40 Park Dr.
Suite 130
Chesterfield, MO 63005

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
M. Archer   8/11/7

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☒ Yes

2. Article Number
(Transfer from service label)   7006 0100 0005 5869 0465

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Weil-McLain, Inc.
SERVE: Robert Grussing, President
500 Blaine St.
Michigan City, IN 46360-2388

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X James Veg   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
James Veg   8-10-07

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☒ Yes

2. Article Number
(Transfer from service label)   7006 0100 0005 5869 0708

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

EFiled
Aug 15 2007  4:28PMEDT
Transaction ID 15964125

## IN THE CIRCUIT COURT FOR BALTIMORE CITY

IN RE:  BALTIMORE CITY      *
  ASBESTOS LITIGATION      *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

                         *

LEWIS SHIFFLETT, et ux.      *

       Plaintiffs,      *

                         *   Case No.: 24x07000313

vs.      *

AC&R INSULATION CO., INC. et. al.      *

       Defendants.      *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PROOF OF SERVICE

Plaintiff, Lewis Shifflett, states that on August 13, 2007, service of process was executed on the following Cross or Third Party Defendant.  Attached as Exhibit "A" is a photo copy of the Certified Return Receipt received via USMAIL by the Ruckdeschel Law Firm, LLC on August 15, 2007:

| COMPANY | SERVE | DATED | RECEIVED |
|---|---|---|---|
| Columbia Boiler Company | SERVE: President | 8/13/2007 | 8/15/2007 |

                /s/ Jonathan Ruckdeschel
                Jonathan Ruckdeschel
                The Ruckdeschel Law Firm, LLC
                5126 Dorsey Hall Drive, Suite 201
                Ellicott City, Maryland 21042
                (410) 884-7825 [O]
                (443) 583-0430 [F]
                Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of August, 2007, a copy of the foregoing was served, via LexisNexis File & Serve, upon all counsel of record.

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel

EFiled
Aug 15 2007  4:28PMEDT
Transaction ID 15964125

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete Item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____ ☐ Agent   ☐ Addressee<br>B. Received by ( Printed Name) EDWARD MASSIMINE JR.   C. Date of Delivery 8/13/07<br>D. Is delivery address different from Item 1? ☐ Yes<br>    If YES, enter delivery address below:   ☐ No |

1. Article Addressed to:

Columbia Boiler Company
SERVE: President
P.O. Box 1070
Pottstown, PA 19464

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*)   ☐ Yes

2. Article Number
   (*Transfer from service label*)   7006 0100 0005 5869 0519

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

EFiled
Aug 22 2007 10:35AMEDT
Transaction ID 16037252

## IN THE CIRCUIT COURT FOR BALTIMORE CITY

IN RE: BALTIMORE CITY                    *
    ASBESTOS LITIGATION                  *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

                            *

LEWIS SHIFFLETT, et ux.                  *

        Plaintiffs,                    *

                        *    Case No.: 24x07000313

vs.                                      *

AC&R INSULATION CO., INC. et. al.        *

        Defendants.                    *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### PROOF OF SERVICE

Plaintiff, Lewis Shifflett, states that on August 13, 2007, service of process was executed on the following Cross or Third Party Defendants. Attached as Exhibit "A" is a photo copy of the Certified Return Receipts received via USMAIL by the Ruckdeschel Law Firm, LLC on August 16, 2007 and August 20th, 2007:

|  |  | DATED | RECEIVED |
|---|---|---|---|
| **COMPANY** | **SERVE** | 8/13/2007 | 8/16/2007 |
| Aqua-Chem, Inc. | SERVE: CT Corporation System | 8/13/2007 | 8/20/2007 |
| Metropolitan Life Insurance Co. | SERVE: President |  |  |

                    /s/ Jonathan Ruckdeschel
                      Jonathan Ruckdeschel
                      The Ruckdeschel Law Firm, LLC
                      5126 Dorsey Hall Drive, Suite 201
                      Ellicott City, Maryland 21042
                      (410) 884-7825 [O]
                      (443) 583-0430 [F]
                      Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of August, 2007, a copy of the foregoing was served, via LexisNexis File & Serve, upon all counsel of record.

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel

EFiled
Aug 22 2007 10:35AM EDT
Transaction ID 16037252

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

Aqua-Chem, Inc.
SERVE: CT Corporation System
7800 North 113th St.
Milwaukee, WI 53224

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Carmen McBroom_   ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☒ Yes

2. Article Number
   (Transfer from service label)   7006 0100 0005 5869 0434

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

Metropolitan Life Insurance, Co.
SERVE: President
1 Madison Ave.
New York, NY 10010

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Green_   ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery
   Green   8/13/07

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☒ Yes

2. Article Number
   (Transfer from service label)   7006 0100 0005 5869 0731

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

EFiled
Aug 15 2007  4:28PMEDT
Transaction ID 15964125

## IN THE CIRCUIT COURT FOR BALTIMORE CITY

IN RE:  BALTIMORE CITY      *
    ASBESTOS LITIGATION      *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

                                    *

LEWIS SHIFFLETT, et ux.      *

        Plaintiffs,      *

                            *     Case No.: 24x07000313

vs.      *

AC&R INSULATION CO., INC. et. al.      *

        Defendants.      *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PROOF OF SERVICE

Plaintiff, Lewis Shifflett, states that on August 14, 2007, service of process was executed on the following Cross or Third Party Defendant.  Attached as Exhibit "A" is a photo copy of the Certified Return Receipt received via USMAIL by the Ruckdeschel Law Firm, LLC on August 15, 2007:

| COMPANY | SERVE | DATED | RECEIVED |
|---|---|---|---|
| The Walter E. Campbell Company | SERVE: Michael C. Gibbons | 8/14/2007 | 8/15/2007 |

                         /s/ Jonathan Ruckdeschel
                          Jonathan Ruckdeschel
                          The Ruckdeschel Law Firm, LLC
                          5126 Dorsey Hall Drive, Suite 201
                          Ellicott City, Maryland 21042
                          (410) 884-7825 [O]
                          (443) 583-0430 [F]
                          Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of August, 2007, a copy of the foregoing

was served, via LexisNexis File & Serve, upon all counsel of record.

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel

EFiled
Aug 15 2007  4:28PMEDT
Transaction ID 15964125

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete Item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☑ Addressee<br>B. Received by (Printed Name)   C. Date of Delivery<br>D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |

1. Article Addressed to:

The Walter E. Campbell Company
SERVE: Michael C. Gibbons
361 Berkshire Drive
Riva, MD  21140

3. Service-Type
☑ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)
7006 0100 0005 5869 0915

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

EFiled
Aug 22 2007 10:35AMEDT
Transaction ID 16037252

## IN THE CIRCUIT COURT FOR BALTIMORE CITY

IN RE:  BALTIMORE CITY &ast;
    ASBESTOS LITIGATION

&ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;

&ast;

LEWIS SHIFFLETT, et ux.    &ast;

    Plaintiffs,    &ast;

    &ast;    Case No.: 24x07000313

vs.    &ast;

AC&R INSULATION CO., INC. et. al.    &ast;

    Defendants.

&ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;

## PROOF OF SERVICE

Plaintiff, Lewis Shifflett, states that on August 14, 2007, service of process was executed on the following Cross or Third Party Defendants.  Attached as Exhibit "A" is a photo copy of the Certified Return Receipts received via USMAIL by the Ruckdeschel Law Firm, LLC on August 17, 2007 and August 20, 2007:

| COMPANY | SERVE | DATED | RECEIVED |
|---|---|---|---|
| Federated Development Company | SERVE: President | 8/14/2007 | 8/17/2007 |
| Crane Company, Inc. | SERVE: Eric C. Fast, President | 8/14/2007 | 8/20/2007 |

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel
The Ruckdeschel Law Firm, LLC
5126 Dorsey Hall Drive, Suite 201
Ellicott City, Maryland 21042
(410) 884-7825 [O]
(443) 583-0430 [F]
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of August, 2007, a copy of the

foregoing was served, via LexisNexis File & Serve, upon all counsel of record.


/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel

EFiled
Aug 22 2007 10:35AMEDT
Transaction ID 16037252

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _William Cont_   ☐ Agent   ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery
_William Cone_   8-14-07

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

1. Article Addressed to:

Federated Development Company
SERVE: President
C/o MAXXAM, Inc.
1330 Post Oak Blvd, Ste 2000
Houston, TX 77056

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☑ Yes

2. Article Number
(Transfer from service label)   7006 0100 0005 5869 0571

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
8-14-07

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

1. Article Addressed to:

Crane Company, Inc.
SERVE: Eric C. Fast, President/CEO
100 First Stamford Place
Stamford, CT 06902

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☑ Yes

2. Article Number
(Transfer from service label)   7006 0100 0005 5869 0526

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

EFiled
Aug 22 2007 10:35AMEDT
Transaction ID 16037252

## IN THE CIRCUIT COURT FOR BALTIMORE CITY

IN RE: BALTIMORE CITY                    *
ASBESTOS LITIGATION
                                         *

*    *    *    *    *    *    *    *    *    *    *    *    *
                                         *

LEWIS SHIFFLETT, et ux.                  *

        Plaintiffs,                      *

                                         *        Case No.: 24x07000313
vs.                                      *

AC&R INSULATION CO., INC. et. al.        *

        Defendants.                      *

*    *    *    *    *    *    *    *    *    *    *    *

### PROOF OF SERVICE

Plaintiff, Lewis Shifflett, states that on August 16, 2007, service of process was executed on the following Cross or Third Party Defendants. Attached as Exhibit "A" is a photo copy of the Certified Return Receipts received via USMAIL by the Ruckdeschel Law Firm, LLC on August 20, 2007:

| COMPANY | SERVE | DATED | RECEIVED |
|---|---|---|---|
| Noland Company | SERVE: CSC Lawyers Incorporating Service Co. | 8/16/2007 | 8/20/2007 |
| Owens-Illinois | SERVE: President | 8/16/2007 | 8/20/2007 |
| Riley Stoker Corporation | SERVE: CSC Lawyers Incorporating Service Co. | 8/16/2007 | 8/20/2007 |
| RPM, International Inc. | SERVE: Prentice Hall Corporation | 8/16/2007 | 8/20/2007 |

/s/ Jonathan Ruckdeschel
        Jonathan Ruckdeschel
        The Ruckdeschel Law Firm, LLC
        5126 Dorsey Hall Drive, Suite 201
        Ellicott City, Maryland 21042
        (410) 884-7825 [O]
        (443) 583-0430 [F]
        Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of August, 2007, a copy of the foregoing was served, via LexisNexis File & Serve, upon all counsel of record.

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel

EFiled
Aug 22 2007 10:35AMEDT
Transaction ID 16037252

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Noland Company
SERVE: CSC Lawyers
Incorporating Service Company
7 Saint Paul St. Ste. 1660
Baltimore, MD  21202

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X  NANCY GRUENINGER    ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery
Nancy Grueninger    8/16

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☑ Yes

2. Article Number
(Transfer from service label)    7006 0100 0005 5869 0939

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

SERVE:  President
Owens-Illinois, Inc
1 Michael Owens Way
Perrysburg, OH 43551-2999

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X    ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery
A. Obendorfer    8/16

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☑ Yes

2. Article Number
(Transfer from service label)    7006 0100 0005 5869 0953

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Riley Stoker Corporation
SERVE: CSC Lawyers
Incorporating Service Company
7 Saint Paul St. Ste. 1660
Baltimore, MD 21202

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X NANCY GRUENINGER
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
8/16

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:          ☐ No

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7006 0100 0005 5869 0946

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

RPM, International Inc.
SERVE: Prentice Hall Corporation
50 W. Broad St.
Suite 1800
Columbus, OH 43215

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X AUG 16 2007
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
Deanne Kessler

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:          ☐ No

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7006 0100 0005 5869 0847

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

EFiled
Aug 22 2007 10:35AMEDT
Transaction ID 16037252

## IN THE CIRCUIT COURT FOR BALTIMORE CITY

IN RE: BALTIMORE CITY            *
    ASBESTOS LITIGATION          *

   *   *   *   *   *   *   *   *   *   *   *

                               *

LEWIS SHIFFLETT, et ux.            *

      Plaintiffs,              *

vs.                                *         Case No.: 24x07000313

AC&R INSULATION CO., INC. et. al.  *

      Defendants.              *

   *   *   *   *   *   *   *   *   *   *

## PROOF OF SERVICE

Plaintiff, Lewis Shifflett, states that on August 17, 2007, service of process was executed on the following Cross or Third Party Defendant. Attached as Exhibit "A" is a photo copy of the Certified Return Receipt received via USMAIL by the Ruckdeschel Law Firm, LLC on August 21, 2007:

|  |  | DATED | RECEIVED |
|---|---|---|---|
|  |  | 8/17/2007 | 8/21/2007 |

COMPANY              SERVE
Kelly-Moore Paint Co., Inc.   SERVE: Walter Leclerc

           /s/ Jonathan Ruckdeschel
           Jonathan Ruckdeschel
           The Ruckdeschel Law Firm, LLC
           5126 Dorsey Hall Drive, Suite 201
           Ellicott City, Maryland 21042
           (410) 884-7825 [O]
           (443) 583-0430 [F]
           Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of August, 2007, a copy of the foregoing was served, via LexisNexis File & Serve, upon all counsel of record.

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel

EFiled
Aug 22 2007 10:35AMEDT
Transaction ID 16037252

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. <br> ■ Print your name and address on the reverse so that we can return the card to you. <br> ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature ☐ Agent ☐ Addressee <br> B. Received by ( Printed Name) R. Sandoval    C. Date of Delivery 8/17 <br> D. Is delivery address different from item 1? ☐ Yes <br> If YES, enter delivery address below: ☐ No |
| 1. Article Addressed to: <br><br> Kelly-Moore Paint Co., Inc. <br> SERVE: Walter Leclerc <br> 987 Commercial Street <br> San Carols, CA  94070 | 3. Service Type <br> ☐ Certified Mail  ☐ Express Mail <br> ☐ Registered  ☐ Return Receipt for Merchandise <br> ☐ Insured Mail  ☐ C.O.D. <br> 4. Restricted Delivery? (Extra Fee)  ☑ Yes |
| 2. Article Number <br> (Transfer from service label) | 7006 0100 0005 5869 0700 |

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

**EFiled**
**Aug 29 2007  2:52PM EDT**
**Transaction ID 16127595**

## IN THE CIRCUIT COURT FOR BALTIMORE CITY

IN RE:  BALTIMORE CITY
ASBESTOS LITIGATION

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

LEWIS SHIFFLETT, et ux.

   Plaintiffs,

vs.

AC&R INSULATION CO., INC. et. al.

   Defendants.

Case No.: 24x07000313

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PROOF OF SERVICE

Plaintiff, Lewis Shifflett, states that on August 24, 2007, service of process was executed on the following Cross or Third Party Defendant. Attached as Exhibit "A" is a photo copy of the Certified Return Receipt received via USMAIL by the Ruckdeschel Law Firm, LLC on August 27, 2007:

| COMPANY | SERVE | DATED | RECEIVED |
|---|---|---|---|
| J. E. Hurley Machine & Boiler Wks | SERVE:  Patrick L. Hurley, VP | 8/24/2007 | 8/27/2007 |

/s/ Jonathan Ruckdeschel
  Jonathan Ruckdeschel
  The Ruckdeschel Law Firm, LLC
  5126 Dorsey Hall Drive, Suite 201
  Ellicott City, Maryland 21042
  (410) 884-7825 [O]
  (443) 583-0430 [F]
  Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of August, 2007, a copy of the foregoing was served, via LexisNexis File & Serve, upon all counsel of record.

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel

EFiled
Aug 29 2007  2:52PM EDT
Transaction ID 16127595

**SENDER: COMPLETE THIS SECTION**

■ Complete Items 1, 2, and 3. Also complete
  item 4 If Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

J.E. Hurley Machine & Boiler Wks.
SERVE: Patrick L. Hurley, VP
C/o Hurley Company
4320 Bladensburg Road
Brentwood, MD 20722

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____     ☐ Agent
                      ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery
                                   8-04-07

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
   ☒ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)      ☒ Yes

2. Article Number
   (Transfer from service label)     7006 0100 0005 5934 6507

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

EFiled
Aug 29 2007 2:52PMEDT
Transaction ID 16127595

## IN THE CIRCUIT COURT FOR BALTIMORE CITY

|  |  |
|---|---|
| IN RE: BALTIMORE CITY ASBESTOS LITIGATION | * <br> * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

|  |  |  |
|---|---|---|
| | * | |
| LEWIS SHIFFLETT, et ux. | | |
| | * | |
| Plaintiffs, | | |
| | * | |
| vs. | | Case No.: 24x07000313 |
| | * | |
| AC&R INSULATION CO., INC. et. al. | | |
| | * | |
| Defendants. | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PROOF OF SERVICE

Plaintiff, Lewis Shifflett, states that on August 27, 2007, service of process was executed on the following Cross or Third Party Defendant. Attached as Exhibit "A" is a photo copy of the Certified Return Receipt received via USMAIL by the Ruckdeschel Law Firm, LLC on August 29, 2007:

| COMPANY | SERVE | DATED | RECEIVED |
|---|---|---|---|
| Superior Boiler Works | SERVE: Al Wasinger | 8/27/2007 | 8/29/2007 |
| The Rockbestos Company | SERVE: United States Corporation Co. | 8/27/2007 | 8/29/2007 |

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel
The Ruckdeschel Law Firm, LLC
5126 Dorsey Hall Drive, Suite 201
Ellicott City, Maryland 21042
(410) 884-7825 [O]
(443) 583-0430 [F]
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of August, 2007, a copy of the foregoing was served, via LexisNexis File & Serve, upon all counsel of record.

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel

EFiled
Aug 29 2007 2:52PM EDT
Transaction ID 16127595

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Superior Boiler Works
SERVE: Al Wasinger
3524 E. 4th Street
Hutchinson, KS 67501

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X    STEVEN D. NEUFELD    ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery
Steven D. Neufeld

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☑ Yes

2. Article Number    7006 0100 0005 5934 6491
(Transfer from service label)

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

The Rockbestos Company
SERVE: United States Corporation Company
2711 Centerville Rd. Ste. 400
Wilmington, DE 19808

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
Laura Cooper    ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

WILMINGTON
AUG 27 2007
USPS 19808

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☑ Yes

2. Article Number    7006 0100 0005 5934 6521
(Transfer from service label)

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

EFiled
Sep 5 2007 3:52PMEDT
Transaction ID 16195379

IN THE CIRCUIT COURT FOR BALTIMORE CITY

IN RE: BALTIMORE CITY    *
 ASBESTOS LITIGATION    *

\* \* \* \* \* \* \* \* \* \* \* \*

            *

LEWIS SHIFFLETT, et ux.    *

   Plaintiffs,     *

vs.          *  Case No.: 24x07000313

AC&R INSULATION CO., INC. et. al. *

   Defendants. \* \* \* \* \* \*
\* \* \* \* \* \* \* \* \* \* \*

## PROOF OF SERVICE

Plaintiff, Lewis Shifflett, states that on August 30, 2007, service of process was executed on the following Cross or Third Party Defendant. Attached as Exhibit "A" is a photo copy of the Certified Return Receipt received via USMAIL by the Ruckdeschel Law Firm, LLC on September 4, 2007:

| COMPANY | SERVE | DATED | RECEIVED |
|---|---|---|---|
| C.J. Coakley Co., Inc. | SERVE: CSC Lawyers | 8/30/2007 | 9/4/2007 |

/s/ Jonathan Ruckdeschel
  Jonathan Ruckdeschel
  The Ruckdeschel Law Firm, LLC
  5126 Dorsey Hall Drive, Suite 201
  Ellicott City, Maryland 21042
  (410) 884-7825 [O]
  (443) 583-0430 [F]
  Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of September, 2007, a copy of the foregoing was served, via LexisNexis File & Serve, upon all counsel of record.

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel

EFiled
Sep 5 2007 3:52PMEDT
Transaction ID 16195379

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

C.J. Coakley, Co. Inc.
SERVE: CSC Lawyers Incorporating
Service Co.
7 Saint Paul Street, Ste. 1660
Baltimore, MD 21202

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X NANCY GRUENINGER    ☐ Agent    ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery
    5 2007

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered    ☐ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☑ Yes

2. Article Number
   (Transfer from service label)

7006 0100 0005 5869 0496

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

EFiled
Sep  7 2007 10:38AMEDT
Transaction ID 16221705

## IN THE CIRCUIT COURT FOR BALTIMORE CITY

IN RE:  BALTIMORE CITY      *
     ASBESTOS LITIGATION      *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

     *

LEWIS SHIFFLETT, et ux.      *

        Plaintiffs,      *

     *     Case No.: 24x07000313

vs.      *

AC&R INSULATION CO., INC. et. al.      *

        Defendants.      *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## PROOF OF SERVICE

Plaintiff, Lewis Shifflett, states that on September 4, 2007, service of process was executed on the following Cross or Third Party Defendants.  Attached as Exhibit "A" is a photo copy of the Certified Return Receipts received via USMAIL by the Ruckdeschel Law Firm, LLC on September 6, 2007:

| COMPANY | SERVE | DATED | RECEIVED |
|---|---|---|---|
| Rapid American Corporation | SERVE: CSC Lawyers | 9/4/2007 | 9/6/2007 |
| The Okonite Company | SERVE: Alfred Coppola, President | 9/4/2007 | 9/6/2007 |

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel
The Ruckdeschel Law Firm, LLC
5126 Dorsey Hall Drive, Suite 201
Ellicott City, Maryland 21042
(410) 884-7825 [O]
(443) 583-0430 [F]
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of September, 2007, a copy of the

foregoing was served, via LexisNexis File & Serve, upon all counsel of record.

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel

EFiled
Sep  7 2007 10:38AMEDT
Transaction ID 16221705

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

THE OKONITE COMPANY
SERVE: Alfred Coppola, President
102 Hilltop Road
Ramsey, NJ 07446-1119

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

MAHWAH NJ 07430
SEP 0 4 2007
USPS

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☑ Yes

2. Article Number
   (Transfer from service label)    7006 0100 0005 5934 6422

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

RAPID-AMERICAN CORP
SERVE: CSC Corporation
2711 Centerville Road
Wilmington, DE 19808

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Laura Cooper_    ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

SEP - 4 2007
USPS

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☑ Yes

2. Article Number
   (Transfer from service label)    7006 0100 0005 5934 6514

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

# Exhibit 3

**ROYSTON, MUELLER, McLEAN & REID, LLP**
ATTORNEYS AT LAW

SUITE 600
THE ROYSTON BUILDING
102 WEST PENNSYLVANIA AVENUE

**TOWSON, MARYLAND 21204-4575**

_____

TELEPHONE: (410) 823-1800
FACSIMILE: (410) 823-1708 or (410) 828-7859

KEITH R. TRUFFER*
*ALSO ADMITTED IN D.C.

September 17, 2007

<u>VIA e-mail</u>
Thomas Lawrie, Esquire
Evert, Weathersby & Houff
Sun Trust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, MD 21202

Re:   <u>Lewis Shifflett</u>

Dear Mr. Lawrie:

My firm represents A. W. Chesterton Company.  To the best of our understanding and belief, A. W. Chesterton Company has not yet been served with the Complaint in the <u>Lewis Shifflett</u> matter in the U. S. District Court for the District of Maryland, Case No. 1:07-cv-02397-WDQ, Shifflett, et ux v. AC&R Insulation Co., Inc., et al (formerly Circuit Court for Baltimore City, Case No. 24X07000313).  As we noted in prior correspondence to your firm, if A. W. Chesterton Company had been properly served in this matter, it would have joined in and consented to the removal of this action to the U. S. District Court for the District of Maryland; further, A. W. Chesterton Company will join in the removal once it is properly served.  Although not required, A.W. Chesterton Company notes its approval of the Joint Statement that CBS Corporation and Federated Development have prepared in response to the Standing Order Concerning Removal, issued by the Court on September 11, 2007.

Sincerely,

/s/ Keith R. Truffer

Keith R. Truffer

KRT:ps
G:\LITIGATIONS\KRT Asbestos\CHESTERTON\Letters\shifflett removal.doc

# Exhibit 4

| | |
|---|---|
| **From:** | "Pat Hurley" <Phurley@hurleyco.com> |
| **To:** | "'William T. Lawrie'" <WTLawrie@ewhlaw.com> |
| **Date:** | 9/17/2007 5:33 PM |
| **Subject:** | Shifflett case. |

"Dear Mr. Lawrie,

I am writing on behalf of Boiler and Furnace Cleaners, Inc. and Hurley Company (an operating division of Boiler and Furnace Cleaners, Inc.), which were named as Defendants in the Lewis Shifflett matter, U.S.District Court for the District of Maryland, Case 1:07-cv-02397-WDQ, Shifflett et ux. v. AC & R Insulation Co., Inc. et al. (formerly Circuit Court for Baltimore City Case No. 24X07000313). These Defendants joined in and consented to removal of this action from the Circuit Court for Baltimore City to the U.S. District Court for the District of Maryland prior to the time that the case was removed on September 7, 2007. These Defendants hereby approve the Joint Statement that CBS Corporation and Federated Development have prepared in response to the Standing Order Concerning Removal, issued by the Court on September 11, 2007.

Further, as I noted in prior correspondence to your firm, J.E. Hurley Machine and Boiler Works was a business entity which no longer exists. I am the sole surviving officer of this former business entity. As J.E. Hurley Machine and Boiler Works no longer exists, it was incapable of joining in and consenting to the removal of this action to the U.S. District Court, although it certainly would have joined in and consented to the removal if it had still been in existence.

Very truly yours,
Patrick Hurley,
Secretary and Treasurer,
Boiler and Furnace Cleaners, Inc.

**From:**      "Richard Flax" <richard.flax@zgf-law.com>
**To:**        "'William T. Lawrie'" <WTLawrie@ewhlaw.com>
**Date:**      9/14/2007 3:34 PM
**Subject:**   Shifflett et ux. v. AC & R Insulation Co., Inc. et al. ; U.S. District Court for the District of Maryland, Case 1:07-cv-02397-WDQ,


Dear Mr. Lawrie:

       My firm represents Defendant, Walter E. Campbell Company, Inc., in the Lewis Shifflett matter in the U.S. District Court for the District of Maryland, Case 1:07-cv-02397-WDQ, Shifflett et ux. v. AC & R Insulation Co., Inc. et al. (formerly Circuit Court for Baltimore City Case No. 24X07000313).  The above-mentioned Defendant joined in and consented to removal of this action from the Circuit Court for Baltimore City to the U.S. District Court for the District of Maryland prior to the time that the case was removed on September 7, 2007.  This client hereby approves the Joint Statement that CBS Corporation and Federated Development have prepared in response to the Standing Order Concerning Removal, which was issued by the Court on September 11, 2007.



       Very truly yours,




       /S/ Richard L. Flax




CONFIDENTIALITY NOTICE


This message from the Law Offices of Richard L. Flax, LLC contains information that is privileged, confidential and/or protected from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please reply to the sender

that you have received the message in error and delete the message, or
notify the sender immediately at (410) 843-0512 and delete the message.
Thank you.


Richard L. Flax, Esquire

Law Offices of Richard L. Flax, LLC

100 North Charles Street - Suite 1700

Baltimore, Maryland 21201

Telephone (410) 843-0512

Cell Phone (410) 303-2309

Fax (410) 962-0589

richard.flax@zgf-law.com

| | |
|---|---|
| **From:** | "Steve Allen" <sallen@HPKLegal.com> |
| **To:** | <WTLawrie@ewhlaw.com> |
| **Date:** | 9/14/2007 2:51 PM |
| **Subject:** | Shiflett |

Dear Mr. Lawrie,

My firm represents Defendant Potomac Electric Power Company, in the Lewis Shiflett matter in the U.S. District Court for the District of Maryland, Case 1:07-cv-02397-WDQ, Shifflett et ux. v. AC & R Insulation Co., Inc. et al. (formerly Circuit Court for Baltimore City Case No. 24X07000313). The above-mentioned Defendant joined in and consented to removal of this action from the Circuit Court for Baltimore City to the U.S. District Court for the District of Maryland prior to the time that the case was removed on September 7, 2007. This client hereby approves the Joint Statement that CBS Corporation and Federated Development have prepared in response to the Standing Order Concerning Removal, which was issued by the Court on September 11, 2007.


Very truly yours


Steven A. Allen
Hodes, Pessin & Katz, P.A.
901 Dulaney Valley Road
Suite 400
Towson, Maryland 21204
410-339-6769 (Direct Dial)
410-938-8800 (Switchboard)
410-832-5602 (Facsimile)
sallen@hpklegal.com (new e-mail address)


NOTICE: The information contained herein is for the use of the addressee only and may contain information that is privileged or confidential. It is not intended for transmission to, or receipt by, anyone other than the addressee. It should not be copied or forwarded to any unauthorized persons. If you received this transmission in error, delete it, do not copy or forward it, and please notify the sender by reply email or call 410-938-8800.

U.S. Treasury Circular 230 Notice: Any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties that may be imposed under the IRC or other tax authority; or (2) promoting, marketing or recommending to another party any tax-related matter addressed herein.

**From:**      "Alexis, Joan V." <JAlexis@McCarter.com>
**To:**        <wtlawrie@ewhlaw.com>
**Date:**      9/14/2007 1:49 PM
**Subject:**   FW: Re: Fwd: Shifflett Removal: Please Respond As Soon as possible

Dear Mr. Lawrie, per request:


"Dear Mr. Lawrie,

My firm represents Defendant Mestek, Inc. in the Lewis Shifflett matter
in the U.S. District Court for the District of Maryland, Case
1:07-cv-02397-WDQ, Shifflett et ux. v. AC & R Insulation Co., Inc. et
al. (formerly Circuit Court for Baltimore City Case No. 24X07000313).
The above-mentioned Defendant joined in and consented to removal of this
action from the Circuit Court for Baltimore City to the U.S. District
Court for the District of Maryland prior to the time that the case was
removed on September 7, 2007. These clients hereby approve the Joint
Statement that CBS Corporation and Federated Development have prepared
in response to the Standing Order Concerning Removal, which was issued
by the Court on September 11, 2007.

Very truly yours,

Richard P. O'Leary

Richard P. O'Leary"




Joan
Joan Alexis-Jarvis
Assistant to Richard P. O'Leary
    & Grace S. Kurdian
McCarter & English, LLP
245 Park Avenue
New York, New York 10167
Direct: (212) 609-6869
Main: (212) 609-6800
Fax: (212) 609-6921
E-mail: jalexis@mccarter.com <mailto:jalexis@mccarter.com>

This email message from the law firm of McCarter & English, LLP is for the sole use of the intended
recipient(s)and may contain confidential and privileged information. Any unauthorized review, use,
disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by
reply email(or helpdesk@mccarter.com) and destroy all copies of the original message.

# BodieNagle
ATTORNEYS AT LAW

LOUIS E. GRENZER, JR.

September 13, 2007

W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:   *Lewis Shifflett, et ux. v. AC&R Insulation Co., Inc., et al.*
      U.S District Court for the District of Maryland, Case 1:07-cv-02397-WDQ

Dear Mr. Lawrie,

My firm represents Defendant, MCIC, Inc., in the *Lewis Shifflet* matter in the U.S District Court for the District of Maryland, Case 1:07-cv-02397-WDQ, Shifflett et ux. v. AC&R Insulation, Co., Inc., et al. (formerly Circuit Court for Baltimore City Case No. 24x07000313). The above-mentioned Defendant joined in and consented to removal of this action from the Circuit Court for Baltimore City to the U.S. District Court for the District of Maryland prior to the time that the case was removed on September 7, 2007. This Defendant hereby approves the Joint Statement that CBS Corporation and Federated Development have prepared in response to the Standing Order Concerning Removal, which was issued by the Court on September 11, 2007.

Very truly yours,

/s/ Louis E. Grenzer, Jr.

Louis E. Grenzer, Jr.

LEG:jm

A PROFESSIONAL ASSOCIATION

BODIE, NAGLE, DOLINA, SMITH & HOBBS, P. A.

REPLY TO:
TOWSON OFFICE:
21 W. SUSQUEHANNA AVE.
TOWSON, MD 21204-5279
410.823.1250
410.296.0432 FAX

REISTERSTOWN OFFICE:
143 MAIN STREET
REISTERSTOWN, MD 21136
410.833.1221
410.833.0026 FAX

HAGERSTOWN OFFICE
WEST WASHINGTON STREET, STE. 501
HAGERSTOWN, MD 21740
301-739-1013
877-739-1013   TOLL FREE
301-739-6432   FAX

WEB SITE: http://www.bodienagle.com
E-MAIL:   (...)@bodienagle.com

**From:**   &lt;sluxton@morganlewis.com&gt;
**To:**   &lt;WTLawrie@ewhlaw.com&gt;
**Date:**   9/14/2007 2:00 PM

Dear Mr. Lawrie,

My firm represents Defendant Owens-Illinois, Inc. in the
Lewis Shifflett matter in the U.S. District Court for the District of
Maryland, Case 1:07-cv-02397-WDQ, Shifflett et ux. v. AC & R Insulation
Co., Inc. et al. (formerly Circuit Court for Baltimore City Case No.
24X07000313). The above-mentioned Defendant(s) joined in and consented
to removal of this action from the Circuit Court for Baltimore City to
the U.S. District Court for the District of Maryland prior to the time
that the case was removed on September 7, 2007. These clients hereby
approve the Joint Statement that CBS Corporation and Federated
Development have prepared in response to the Standing Order Concerning
Removal, which was issued by the Court on September 11, 2007.

Very truly yours,

Steven Luxton

Steven Luxton
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
202.739.5452
202.739.3001 (fax)
email: sluxton@morganlewis.com
DISCLAIMER
This e-mail message is intended only for the personal
use of the recipient(s) named above. This message may
be an attorney-client communication and as such privileged
and confidential. If you are not an intended recipient,
you may not review, copy or distribute this message. If
you have received this communication in error, please
notify us immediately by e-mail and delete the original
message.

**From:**     "Rachelle Schofield" <RSchofield@hartelkane.com>
**To:**       "William T. Lawrie" <WTLawrie@ewhlaw.com>
**Date:**     9/14/2007 1:22 PM
**Subject:**  Approval of Joint Motion

Dear Mr. Lawrie,

My firm represents Defendants Crane Co. and Kelly-Moore Paint Company, Inc., in the Lewis Shifflett matter in the U.S. District Court for the District of Maryland, Case 1:07-cv-02397-WDQ, Shifflett et ux. v. AC & R Insulation Co., Inc. et al. (formerly Circuit Court for Baltimore City Case No. 24X07000313).

The above-mentioned Defendants joined in and consented to removal of this action from the Circuit Court for Baltimore City to the U.S. District Court for the District of Maryland prior to the time that the case was removed on September 7, 2007.  These clients hereby approve the Joint Statement that CBS Corporation and Federated Development have prepared in response to the Standing Order Concerning Removal, which was issued by the Court on September 11, 2007.


Very truly yours,

Rachelle Schofield

Rachelle A. Schofield, Esq.
Hartel, Kane, DeSantis, MacDonald & Howie, LLP
11720 Beltsville Drive, Suite 500
Beltsville, Maryland 20705
telephone: 301.486.1200
facsimile:  301.486.0935
email: rschofield@hartelkane.com

This e-mail message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. If you are the intended recipient but do not wish to receive communications through this medium, please so advise the sender immediately.

**From:**      "Thomas Bernier" <TBernier@SMSM.com>
**To:**        "William T. Lawrie" <WTLawrie@ewhlaw.com>
**Date:**      9/14/2007 12:53 PM
**Subject:**   Lewis Shifflet Removal

"Dear Mr. Lawrie,

My firm represents Defendant, Weil-McLain, A Division of th Marly-Wylain Co., in the Lewis Shifflett matter in the U.S. District Court for the District of Maryland, Case 1:07-cv-02397-WDQ, Shifflett et ux. v. AC & R Insulation Co., Inc. et al. (formerly Circuit Court for Baltimore City Case No.

24X07000313). The above-mentioned Defendant joined in and consented to removal of this action from the Circuit Court for Baltimore City to the U.S. District Court for the District of Maryland prior to the time that the case was removed on September 7, 2007. These clients hereby approve the Joint Statement that CBS Corporation and Federated Development have prepared in response to the Standing Order Concerning Removal, which was issued by the Court on September 11, 2007.

Very truly yours,

Thomas P. Bernier, Esq.

Partner
Segal McCambridge Singer & Mahoney, Ltd.
One North Charles Street, Suite 2500
Baltimore, Maryland 21201
Phone: 410-779-3960
Fax: 410-779-3967
www.smsm.com <http://www.smsm.com/>

NOTICE: This e-mail message and all attachments transmitted with it are intended solely for the use of the addressee and may contain legally privileged and confidential information. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by replying to this message and please delete it from your computer.

The Law Offices of
David F. Albright
1122 Kenilworth Dr.
Suite 500, Baltimore Md. 21204

Dear Mr. Lawrie,

My firm represents Defendant H.B. Smith in the Louis Shifflett matter in the U.S. District Court for the District of Maryland, Case 1:07-cv-02397-WDQ, Shifflett ent ux v. AC&R Insulation Co., Inc, et al (formerly Circuit Court for Baltimore City Case No. 24X07000313. The above mentioned Defendant joined in and consented to removal of this action from the Circuit Court for Baltimore City to the U.S. District Court for the District of Maryland prior to the time that the case was removed on September 7, 2007. These clients hereby approve the Joint Statement that CBS Corporation and Federated Development have prepared in response to the Standing Order concerning Removal which was issued by the Court on September 11, 2007.

Very truly yours

David F. Albright
DAVID F. ALBRIGHT
attorney for H.B. Smith
410-823-5455
Fax 410-823-5453

| From: | "Joel Newport" <newport@moorejackson.com> |
|---|---|
| To: | "William T. Lawrie" <WTLawrie@ewhlaw.com> |
| Date: | 9/14/2007 12:02 PM |
| Subject: | Shifflett Removal |

Dear Mr. Lawrie:

My firm represents Defendants Columbia Boiler Co. and Kaiser Gypsum Co. in the Lewis Shifflett matter in the U.S. District Court for the District of Maryland, Case 1:07-cv-02397-WDQ, Shifflett et ux. v. AC & R Insulation Co., Inc. et al. (formerly Circuit Court for Baltimore City Case No. 24X07000313).

The above-mentioned Defendant(s) joined in and consented to removal of this action from the Circuit Court for Baltimore City to the U.S. District Court for the District of Maryland prior to the time that the case was removed on September 7, 2007.  These clients hereby approve the Joint Statement that CBS Corporation and Federated Development have prepared in response to the Standing Order Concerning Removal, which was issued by the Court on September 11, 2007.


Very truly yours,
Joel Newport

Moore & Jackson, LLC
305 Washington Avenue, Suite 401
Towson, Maryland  21204
410.583.5241
Direct Dial:  410.583.2207, extension 110
Fax: 410.583.7519


The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from  your computer system.
Thank you.

**From:**  "Deborah K. St. Lawrence" <dstlawrence@brownsheehan.com>
**To:**  "William T. Lawrie" <WTLawrie@ewhlaw.com>
**Date:**  9/14/2007 11:13 AM
**Subject:**  Shifflett Removal

**CC:**  "Michael A. Brown" <mbrown@brownsheehan.com>

Dear Mr. Lawrie,

My firm represents Defendant Chrysler LLC f/k/a DaimlerChrysler Company, LLC in the Lewis Shifflett matter in the U.S. District Court for the District of Maryland, Case 1:07-cv-02397-WDQ, Shifflett et ux. v. AC & R Insulation Co., Inc. et al. (formerly Circuit Court for Baltimore City Case No. 24X07000313).  The above-mentioned Defendant joined in and consented to removal of this action from the Circuit Court for Baltimore City to the U.S. District Court for the District of Maryland prior to the time that the case was removed on September 7, 2007.  These clients hereby approve the Joint Statement that CBS Corporation and Federated Development have prepared in response to the Standing Order Concerning Removal, which was issued by the Court on September 11, 2007.


Very truly yours,

Deborah

Deborah St.Lawrence, Esquire
Partner
Brown & Sheehan, LLP
(410) 951-8797 (direct)
dstlawrence@brownsheehan.com

# GOODELL, DeVries, Leech & Dann, LLP

### ATTORNEYS AT LAW
ONE SOUTH STREET, 20TH FLOOR
BALTIMORE, MARYLAND 21202

—

TELEPHONE (410) 783-4000

—

FACSIMILE (410) 783-4040

MALCOLM S. BRISKER
MSB@GDLDLAW.COM
WRITER'S DIRECT NUMBERS
410-783-4049 (Voice)
410-951-0451 (Fax)

ADMITTED IN MARYLAND
&
THE DISTRICT OF COLUMBIA

September 14, 2007

**Via E-Mail**
W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:  *Lewis Shifflett, et al. v. A.C. & R. Insulation Co., Inc., et al.,*
     Civil No.: WDQ-07-CV-2397

Dear Mr. Lawrie,

My firm represents Defendant, Rockbestos-Surprenant Cable Corp., formerly known as Rockbestos Company, in the *Lewis Shifflett* matter in the U.S. District Court for the District of Maryland, Case 1:07-cv-02397-WDQ, *Shifflett et ux. v. AC & R Insulation Co., Inc. et al.* (formerly Circuit Court for Baltimore City Case No. 24X07000313). The above-mentioned Defendant joined in and consented to removal of this action from the Circuit Court for Baltimore City to the U.S. District Court for the District of Maryland prior to the time that the case was removed on September 7, 2007. These clients hereby approve the Joint Statement that CBS Corporation and Federated Development have prepared in response to the Standing Order Concerning Removal, which was issued by the Court on September 11, 2007.

Very truly yours,

/s/ Malcolm S. Brisker
Malcolm S. Brisker

MSB/krc

890801

# GOODELL, DeVRIES, LEECH & DANN, LLP

### ATTORNEYS AT LAW
ONE SOUTH STREET, 20TH FLOOR
BALTIMORE, MARYLAND 21202

—

TELEPHONE (410) 783-4000

—

FACSIMILE (410) 783-4040

ADMITTED IN MARYLAND
&
THE DISTRICT OF COLUMBIA

MALCOLM S. BRISKER
MSB@GDLDLAW.COM
WRITER'S DIRECT NUMBERS
410-783-4049 (Voice)
410-951-0451 (Fax)

September 14, 2007

**Via E-Mail**
W. Thomas Lawrie, Esq.
Evert Weathersby Houff, LLC
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, Maryland 21202

Re:   *Lewis Shifflett, et al. v. A.C. & R. Insulation Co., Inc., et al.,*
      Civil No.:  WDQ-07-CV-2397

Dear Mr. Lawrie,

My firm represents Defendants, C.J. Coakley Company, Inc. and Zurn Industries, LLC, in the *Lewis Shifflett* matter in the U.S. District Court for the District of Maryland, Case 1:07-cv-02397-WDQ, *Shifflett et ux. v. AC & R Insulation Co., Inc. et al.* (formerly Circuit Court for Baltimore City Case No. 24X07000313). The above-mentioned Defendants joined in and consented to removal of this action from the Circuit Court for Baltimore City to the U.S. District Court for the District of Maryland prior to the time that the case was removed on September 7, 2007. These clients hereby approve the Joint Statement that CBS Corporation and Federated Development have prepared in response to the Standing Order Concerning Removal, which was issued by the Court on September 11, 2007.

Very truly yours,

/s/ Malcolm S. Brisker
Malcolm S. Brisker

MSB/krc

890759

**From:**   <gdoub@comcast.net>
**To:**     <WTLawrie@ewhlaw.com>
**Date:**   9/14/2007 7:22 AM

Dear Mr. Lawrie,

My firm represents Defendant honeywell international inc. in the
Lewis Shifflett matter in the U.S. District Court for the District of
Maryland, Case 1:07-cv-02397-WDQ, Shifflett et ux. v. AC & R Insulation
Co., Inc. et al. (formerly Circuit Court for Baltimore City Case No.
24X07000313). The above-mentioned Defendant(s) joined in and consented
to removal of this action from the Circuit Court for Baltimore City to
the U.S. District Court for the District of Maryland prior to the time
that the case was removed on September 7, 2007. These clients hereby
approve the Joint Statement that CBS Corporation and Federated
Development have prepared in response to the Standing Order Concerning
Removal, which was issued by the Court on September 11, 2007.

Very truly yours,
George c. doub

**From:**      "Day, Paul" <paul.day@dlapiper.com>
**To:**        "William T. Lawrie" <WTLawrie@ewhlaw.com>
**Date:**      9/13/2007 2:18 PM
**Subject:**   Shifflett Removal

Dear Mr. Lawrie,

My firm represents Defendants Ford Motor Company and General Motors
Corporation in the Lewis Shifflett matter in the U.S. District Court for
the District of Maryland, Case 1:07-cv-02397-WDQ, Shifflett et ux. v. AC
& R Insulation Co., Inc. et al. (formerly Circuit Court for Baltimore
City Case No. 24X07000313). The above-mentioned Defendant(s) joined in
and consented to removal of this action from the Circuit Court for
Baltimore City to the U.S. District Court for the District of Maryland
prior to the time that the case was removed on September 7, 2007. These
clients hereby approve the Joint Statement that CBS Corporation and
Federated Development have prepared in response to the Standing Order
Concerning Removal, which was issued by the Court on September 11, 2007.

Very truly yours,

Paul J. Day
_____

Paul J. Day
DLA Piper US LLP
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-4133
(410) 580-3133 (fax)
paul.day@dlapiper.com

_____

–

The information contained in this email may be confidential and/or legally privileged. It has been sent for
the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are
hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this
communication, or any of its contents, is strictly prohibited. If you have received this communication in
error, please contact the sender by reply email and destroy all copies of the original message. To contact
our email administrator directly, send to postmaster@dlapiper.com

Thank you.

–

**From:**       "Higgs, Laura" <lhiggs@dehay.com>
**To:**         <WTLawrie@ewhlaw.com>
**Date:**       9/13/2007 11:14 AM
**Subject:**    Shiflett Case

Dear Mr. Lawrie,

My firm represents Defendants Union Carbide Corporation, Riley Power, Inc. (f/k/a Babcock Borsig, Inc., f/k/a Riley Stoker Corporation), Pneumo Abex LLC, Foster Wheeler Energy Corporation, The Okonite Company , and Foster Wheeler, L.L.C. (survivor to a merger with Foster Wheeler Corporation) in the Lewis Shifflett matter in the U.S. District Court for the District of Maryland, Case 1:07-cv-02397-WDQ, Shifflett et ux. v. AC & R Insulation Co., Inc. et al. (formerly Circuit Court for Baltimore City Case No. 24X07000313). The above-mentioned Defendants joined in and consented to removal of this action from the Circuit Court for Baltimore City to the U.S.

District Court for the District of Maryland prior to the time that the case was removed on September 7, 2007. These clients hereby approve the Joint Statement that CBS Corporation and Federated Development have prepared in response to the Standing Order Concerning Removal, which was issued by the Court on September 11, 2007.

Please note that our initial letter stating the service date for Pneumo Abex LLC on August 7, 2007 was incorrect. Defendant Pneumo Abex LLC was served on

August 10, 2007. The service dates for Defendants Foster Wheeler LLC and Foster Wheeler Energy Corporation on August 9, 2007 were incorrect. Defendants Foster Wheeler LLC and Foster Wheeler Energy Corporation were served on August 10, 2007. The service date for Defendant Riley Power, Inc. on August 9, 2007 was incorrect. Defendant Riley Power, Inc. was served on August 8, 2007. Thank you for your attention to these matters.

Very truly yours,

Steven J. Parrott

Laura M. Higgs

Laura M. Higgs, Esquire

36. South Charles Street, Suite 1300

Baltimore, Maryland 21201

phone (410) 783-7225

direct dial (410) 783-7013

facsimile (410) 783-7221

**From:**   "Palmiotto, Vincent J." <vpalmiotto@MilesStockbridge.com>
**To:**   "William T. Lawrie" <WTLawrie@ewhlaw.com>
**Date:**   9/13/2007 10:57 AM
**Subject:**   Shiflett v. AC&R

Dear Mr. Lawrie,

My firm represents Defendants Georgia-Pacific, LLC, CertainTeed
Corporation, Superior Boiler Works, Inc., Avco Corporation,
T.H.Agriculture and Nutrition, LLC, and Cleaver-Brooks, Inc. in the
Lewis Shifflett matter in the U.S. District Court for the District of
Maryland, Case 1:07-cv-02397-WDQ, Shifflett et ux. v. AC & R Insulation
Co., Inc. et al. (formerly Circuit Court for Baltimore City Case
No.24X07000313). The above-mentioned Defendants joined in and consented
to removal of this action from the Circuit Court for Baltimore City to
the U.S. District Court for the District of Maryland prior to the time
that the case was removed on September 7, 2007. These clients hereby
approve the Joint Statement that CBS Corporation and Federated
Development have prepared in response to the Standing Order Concerning
Removal, which was issued by the Court on September 11, 2007.

Very truly yours,

Vincent J. Palmiotto

In accordance with Internal Revenue Service rules, any federal tax advice provided in this communication
is not intended or written by the author to be used, and cannot be used by the recipient, for the purpose of
avoiding penalties which may be imposed on the recipient by the IRS.  Please contact the author if you
would like to receive written advice in a format which complies with IRS rules and may be relied upon to
avoid penalties.

Confidentiality Notice: This e-mail, including any attachment(s), is intended for receipt and use by the
intended addressee(s), and may contain confidential and privileged information. If you are not an intended
recipient of this e-mail, you are hereby notified that any unauthorized use or distribution of this e-mail is
strictly prohibited, and requested to delete this communication and its attachment(s) without making any
copies thereof and to contact the sender of this e-mail immediately. Nothing contained in the body and/or
header of this e-mail is intended as a signature or intended to bind the addressor or any person
represented by the addressor to the terms of any agreement that may be the subject of this e-mail or its
attachment(s), except where such intent is expressly indicated.

Case MDL No. 875   Document 5255   Filed 11/21/07   Page 203 of 398 Page 1

9/13/2007) William T. Lawrie - Case 1:07-cv-02397-WDQ Insulation Co., et al.   Filed 09/17/2007   Page 21 of 33

**From:**  "Phillips, Scott" <SPhillips@semmes.com>
**To:**  "William T. Lawrie" <WTLawrie@ewhlaw.com>
**Date:**  9/13/2007 10:55 AM
**Subject:**  Shifflett v. AC&R Insulation Co., Inc., et al.

Dear Mr. Lawrie:

   My firm represents Defendant Noland Company in the Lewis Shifflett matter in the U.S. District Court for the District of Maryland, Case 1:07-cv-02397-WDQ, Shifflett et ux. v. AC&R Insulation Co., Inc., et al. (formerly Circuit Court for Baltimore City Case No. 24X07000313). The above-mentioned defendant joined in and consented to removal of this action from the Circuit Court for Baltimore City to the U.S. District Court for the District of Maryland prior to the time the case was removed on September 7, 2007. Noland Company hereby approves the Joint Statement that CBS Corporation and Federated Development have prepared in response to the Standing Order Concerning Removal, which was issued by the Court on September 11, 2007.

       Very truly yours,

       /s/

       Scott H. Phillips


Scott H. Phillips
Principal
Semmes, Bowen & Semmes
250 West Pratt Street
Baltimore, MD 21201
Tel: (410) 576-4717
Fax: (410) 539-5223
sphillips@semmes.com
IMPORTANT: Emails to clients of this firm presumptively and normally contain confidential and privileged material for the sole use of the intended recipient. Emails to non-clients are normally confidential and may be privileged. The use, distribution, transmittal or re-transmittal by an unintended recipient of any communication is prohibited without our express approval in writing or by email. Any use, distribution, transmittal or re-transmittal by persons who are not intended recipients of this email may be a violation of law and is strictly prohibited. If you are not the intended recipient please contact the sender and delete all copies.

William T. Lawrie - Shifflett v. AC & R, et al.  Civil No. WDQ-07-CV-2397

**From:**      "Jeremy W. North" <jnorth@northandcobb.com>
**To:**        William Lawrie <WTLawrie@ewhlaw.com>
**Date:**      9/13/2007 10:08 AM
**Subject:**   Shifflett v. AC & R, et al.  Civil No. WDQ-07-CV-2397

Dear Mr. Lawrie:

    My firm represents General Refractories Company in the Lewis Shifflett matter in the U.S. District Court for the District of Maryland, Case No. WDQ-07-CV-2397, Shifflett et ux. v. AC & R et al. (formerly referred to as Circuit Court for Baltimore City Case No, 24X07000313) The above mentioned Defendant joined in and consented to Removal of this action from the Circuit Court for Baltimore City to the U.S. District Court for the District of Maryland prior to the time the case was removed on September 7, 2007. This client hereby approves the Joint Statement that CBS and Federated Development have prepared in response to the Standing Order Concerning Removal, which was issued by the Court on September 11, 2007.

Very truly yours,
    /s/
Jeremy W. North, Esq.
North & Cobb, P.A.
7313 York Road
Towson, Maryland 21204
PHONE: 410-825-1472
FAX: 410-821-7064

CONFIDENTIALITY NOTICE
This information in this transmission is intended only for the individual or entity named above. It may be legally privileged and confidential. If you have received this information in error, notify us immediately by replying to this email. Delte the original transmission. If the reader of this message is not the intended recipient, you are hereby notified that any disclosure, dissemination, distribution or copying of this communication or its contents is strictly prohibited.

| From: | "Kathy Duyer" <kduyer@gavettdatt.com> |
|---|---|
| To: | "William T. Lawrie" <WTLawrie@ewhlaw.com> |
| Date: | 9/13/2007 9:43 AM |
| Subject: | Shifflett removal |

Dear Mr. Lawrie,

My firm represents Defendants AC&R Insulation Co., Inc. and Dorr-Oliver Incorporated as Successor to Keeler/Dorr-Oliver Boiler Company, in the Lewis Shifflett matter in the U.S. District Court for the District of Maryland, Case 1:07-cv-02397-WDQ, Shifflett et ux. v. AC & R Insulation Co., Inc. et al. (formerly Circuit Court for Baltimore City Case No.

24X07000313). The above-mentioned Defendants joined in and consented to removal of this action from the Circuit Court for Baltimore City to the U.S. District Court for the District of Maryland prior to the time that the case was removed on September 7, 2007. These clients hereby approve the Joint Statement that CBS Corporation and Federated Development have prepared in response to the Standing Order Concerning Removal, which was issued by the Court on September 11, 2007.

Very truly yours,

Katherine S. Duyer
Attorney
Gavett and Datt, P.C.

15850 Crabbs Branch Way
Suite 180
Rockville, MD  20855
Tele: 301-948-1177
Fax: 301-948-4334
Email: kduyer@gavettdatt.com <mailto:kduyer@gavettdatt.com>

This email message and any attachment to this email message contains confidential information belonging to the sender which is legally privileged and intended only for the use of the individual or entity named above. If you are not the intended recipient, you are requested to notify us by return email or by telephone at 301-948-1177 and to delete this email message and any attachments. Unauthorized disclosure, conversion to hard copy, copying, distribution, retransmission, or the taking of any action in reliance on the contents of this email message or any attachments to it is strictly prohibited and may violate Federal and state law.

**From:**       "TDORAN" <TDORAN@decarodoran.com>
**To:**          <wtlawrie@ewhlaw.com>
**Date:**       9/12/2007 5:48 PM
**Subject:**  Shifflett et ux. v. AC & R Insulation Co., Inc. et al. / Case 1:07-cv-02397-WDQ

**CC:**        "CHERBERT" <CHERBERT@decarodoran.com>, <PAKulinski@ewhlaw.com>

Dear Mr. Lawrie,

Our firm represents A.O. Smith Corporation, a Defendant in the Lewis Shifflett case, recently removed
from Baltimore City Circuit Court to the U.S. District Court for the District of Maryland, Case
1:07-cv-02397-WDQ, Shifflett et ux. v. AC & R Insulation Co., Inc. et al. (formerly Circuit Court for
Baltimore City Case No. 24X07000313). As you are aware, A.O. Smith Corporation joined in and
consented to removal of this action from the Circuit Court for Baltimore City to the U.S. District Court for
the District of Maryland prior to the time that the case was removed on September 7, 2007. Please be
advised that our client hereby approves the Joint Statement that CBS Corporation and Federated
Development have prepared in response to the Standing Order Concerning Removal, which was issued
by the Court on September 11, 2007. Please also be advised that we have filed our Rule 103.3
Disclosure Statement with the Court today.

Very truly yours,
Thomas L. Doran
DeCaro, Doran, Siciliano, Gallagher & DeBlasis, L.L.P.
4601 Forbes Boulevard, Suite 200
Lanham, Maryland 20706
Direct:  301/306-4314
Fax:     301/306-4988
tdoran@decarodoran.com

CONFIDENTIALITY NOTICE: This e-mail message is intended only for the person or entity to which it is
addressed and may contain confidential and/or privileged material. Any unauthorized review, use,
disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by
reply e-mail and destroy all copies of the original message. If you are the intended recipient but do not
wish to receive communications through this medium, please so advise the sender immediately.

**From:**     "Roberts, Theodore F." <TRoberts@Venable.com>
**To:**       <WTLawrie@ewhlaw.com>
**Date:**     9/12/2007 5:57 PM
**Subject:**   Shifflett Removal

**CC:**       "Sullivan, Cindy F." <CFSullivan@Venable.com>

Dear Mr. Lawrie:

        My firm represents defendants Rapid American, Crown Cork & Seal and American Standard in the Lewis Shifflett matter in the U.S. District Court for the District of Maryland, Case 1:07-cv-02397-WDQ, Shifflett et ux v. AC&R Insulation Co., Inc., at al. (formerly Circuit Court for Baltimore City Case No. 24X07000313). The above-referenced defendants joined in and consented to removal of this action from the Circuit Court of Baltimore City to the U.S. District Court for the District of Maryland prior to the time that the case was removed on September 7, 2007. These clients hereby approve the Joint Statement that CBS Corporation and Federated Development have prepared in response to the Standing Order Concerning Removal, which was issued by the Court on September 11, 2007.

                                                      Very

truly yours,

                                          /S/

                                         Theodore

F. Roberts

*********************************************************************
U.S. Treasury Circular 230 Notice: Any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (a) avoiding penalties that may be imposed under the Internal Revenue Code or by any other applicable tax authority; or (b) promoting, marketing or recommending to another party any tax-related matter addressed herein. We provide this disclosure on all outbound e-mails to assure compliance with new standards of professional practice, pursuant to which certain tax advice must satisfy requirements as to form and substance.
*********************************************************************
*********************************************************************
This electronic mail transmission may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.
*********************************************************************

Case MDL No. 875   Document 5255   Filed 11/21/07   Page 208 of 398 Page 1

(9/12/2007) William T. Lawrie - Shifflett v. AC & R et al (formerly Baltimore Ci... Case No. 24X07000313 Filed 09/17/2007   Page 26 of 33

**From:**     "Albert, Richard" <ralbert@steptoe.com>
**To:**       "William T. Lawrie" <WTLawrie@ewhlaw.com>
**Date:**     9/12/2007 5:57 PM
**Subject:**  Shifflett v. AC & R et al (formerly Baltimore City Case No. 24X07000313)

Dear Mr. Lawrie,

My firm represents Defendant(s) Metropolitan Life Insurance Company in
the Lewis Shifflett matter in the U.S. District Court for the District
of Maryland, Case 1:07-cv-02397-WDQ, Shifflett et ux. v. AC & R
Insulation Co., Inc. et al. (formerly Circuit Court for Baltimore City
Case No.
24X07000313).  The above-mentioned Defendant(s) joined in and consented
to removal of this action from the Circuit Court for Baltimore City to
the U.S. District Court for the District of Maryland prior to the time
that the case was removed on September 7, 2007.  These clients hereby
approve the Joint Statement that CBS Corporation and Federated
Development have prepared in response to the Standing Order Concerning
Removal, which was issued by the Court on September 11, 2007.


Very truly yours,

Richard D. Albert

Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202.457.8339
ralbert@steptoe.com

**From:**  "Richmond, Scott M." <SMRichmond@Venable.com>
**To:**  <WTLawrie@ewhlaw.com>
**Date:**  9/13/2007 9:45 AM

Dear Mr. Lawrie,

My firm represents Crown Cork & Seal USA, Inc. in the Lewis Shifflett matter in the U.S. District Court for the District of Maryland, Case 1:07-cv-02397-WDQ, Shifflett et ux. v. AC & R Insulation Co., Inc. et al. (formerly Circuit Court for Baltimore City Case No. 24X07000313). The above-mentioned Defendants joined in and consented to removal of this action from the Circuit Court for Baltimore City to the U.S. District Court for the District of Maryland prior to the time that the case was removed on September 7, 2007. These clients hereby approve the Joint Statement that CBS Corporation and Federated Development have prepared in response to the Standing Order Concerning Removal, which was issued by the Court on September 11, 2007.

Very truly yours,

Scott M. Richmond

Venable LLP

210 Allegheny Avenue

Towson, MD 21204

Telephone - (410) 494-6364

Facsimile - (410) 821-0147

This electronic mail transmission contains information from the law firm of Venable LLP which may be privileged or confidential. The information contained herein is for the exclusive use of the addressee named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this information is prohibited. If you have received this electronic mail transmission in error, please notify us by telephone (410-494-6200) or by electronic mail.

*****************************************************************************
*********
U.S. Treasury Circular 230 Notice: Any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (a) avoiding penalties that may be imposed under the Internal Revenue Code or by any other

applicable tax authority; or (b) promoting, marketing or recommending to another party any tax-related matter addressed herein. We provide this disclosure on all outbound e-mails to assure compliance with new standards of professional practice, pursuant to which certain tax advice must satisfy requirements as to form and substance.

*****************************************************************
U.S. Treasury Circular 230 Notice: Any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (a) avoiding penalties that may be imposed under the Internal Revenue
Code or by any other applicable tax authority; or (b) promoting, marketing or recommending to another party any tax-related matter addressed herein. We provide this disclosure on all outbound e-mails to assure compliance with new standards of professional practice, pursuant to which certain tax advice must satisfy requirements as to form and substance.
*****************************************************************
*****************************************************************
This electronic mail transmission may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.
*****************************************************************

**From:** "Scott Patrick Burns" <SBURNS@TydingsLaw.com>
**To:** "William T. Lawrie" <WTLawrie@ewhlaw.com>
**Date:** 9/12/2007 2:27 PM
**Subject:** Schifflett Removal

Dear Mr. Lawrie:

My firm represents Defendant Thos. Somerville Co. in the Lewis Shifflett matter in the U.S. District Court for the District of Maryland, Case 1:07-cv-02397-WDQ, Shifflett et ux. v. AC & R Insulation Co., Inc. et al. (formerly Circuit Court for Baltimore City Case No. 24X07000313). Thos. Somerville Co. joined in and consented to removal of this action from the Circuit Court for Baltimore City to the U.S. District Court for the District of Maryland prior to the time that the case was removed on September 7, 2007. This client hereby approve the Joint Statement that CBS Corporation and Federated Development have prepared in response to the Standing Order Concerning Removal, which was issued by the Court on September 11, 2007.

Sincerely,

Scott Patrick Burns
--------------------------------------------------------

Tydings & Rosenberg LLP
Scott Patrick Burns

100 East Pratt Street
26th Floor
Baltimore, MD  21202
mail: SBURNS@TydingsLaw.com
http://www.tydingslaw.com
tel: 410.752.9743
fax: 410.727.5460
http://www.meritas.org


IRS rules restrict written federal tax advice from lawyers and accountants. We include this statement in all outbound emails because even inadvertent violations may be penalized. Nothing in this message is intended to be used, or may be used, to avoid any penalty under federal tax laws. This message was not written to support the promotion or marketing of any transaction. Contact the sender if you wish to engage us to provide formal written advice as to tax issues.


This message contains information that may be privileged, confidential, or otherwise protected from disclosure.  Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone this message or any information contained in this message.  If you have received this message in error, please notify the sender by replying to this message, and then delete it from your system.  Thank you very much.
--------------------------------------------------------

**From:**      "Seltzer, David" <David.Seltzer@wilsonelser.com>
**To:**        "William T. Lawrie" <WTLawrie@ewhlaw.com>
**Date:**      9/12/2007 2:36 PM
**Subject:**   Shifflett Removal

Dear Mr. Lawrie,

My firm represents Defendant Oakfabco, Inc. in the Lewis Shifflett matter in the U.S. District Court for the District of Maryland, Case 1:07-cv-02397-WDQ, Shifflett et ux. v. AC & R Insulation Co., Inc. et al. (formerly Circuit Court for Baltimore City Case No. 24X07000313). Oakfabco joined in and consented to removal of this action from the Circuit Court for Baltimore City to the U.S. District Court for the District of Maryland prior to the time that the case was removed on September 7, 2007. My client hereby approves the Joint Statement that CBS Corporation and Federated Development have prepared in response to the Standing Order Concerning Removal, which was issued by the Court on September 11, 2007.

Thank for coordinating this filing.

Very truly yours,

David Seltzer


> David A. Seltzer
Wilson Elser Moskowitz Edelman & Dicker LLP
> 1341 G Street, NW, Suite 500
> Washington, DC 20005
> Ph.: (202) 626-7660
> Fx.: (202) 628-3606
> david.seltzer@wilsonelser.com
>

This communication was not intended or written to be used, and it cannot be used by any taxpayer, for the purpose of avoiding tax penalties. (The foregoing legend has been affixed pursuant to U.S. Treasury Regulations governing tax practice.)

*************************************************************

CONFIDENTIALITY NOTICE: This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system.

For further information about Wilson, Elser, Moskowitz, Edelman & Dicker LLP, please see our website at www.wilsonelser.com or refer to any of our offices. Thank you.

**From:**       "Dave Quigg" <dquigg@meringerlaw.com>
**To:**         <wtlawrie@ewhlaw.com>
**Date:**       9/12/2007 2:47 PM
**Subject:**    Shifflett - Joint Statement by Removing Defendants

**CC:**         <jzois@meringerlaw.com>

Dear Mr. Lawrie,

My firm represents Defendant General Electric Company in the Lewis Shifflett
matter in the U.S. District Court for the District of Maryland, Case
1:07-cv-02397-WDQ, Shifflett et ux. v. AC & R Insulation Co., Inc. et al.
(formerly Circuit Court for Baltimore City Case No. 24X07000313).  The
above-mentioned Defendant joined in and consented to removal of this action
from the Circuit Court for Baltimore City to the U.S. District Court for the
District of Maryland prior to the time that the case was removed on
September 7, 2007.  This client hereby approves the Joint Statement that CBS
Corporation and Federated

Development have prepared in response to the Standing Order Concerning
Removal, which was issued by the Court on September 11, 2007.

Very truly yours,

David J. Quigg

Meringer, Zois & Quigg, LLC

300 E. Lombard Street

Suite 1440

Baltimore, MD 21202

This email message from the law firm of Meringer, Zois & Quigg, LLC is for
the sole use of the intended recipient(s)and may contain confidential and
privileged information. Any unauthorized review, use, disclosure or
distribution is prohibited. If you are not the intended recipient, please
contact the sender by reply email(or  <mailto:helpdesk@meringerlaw.com>
helpdesk@meringerlaw.com) and destroy all copies of the original message.

**From:**     "Jeannie P. Kauffman" <JKauffman@lawbtp.com>
**To:**       "William T. Lawrie" <WTLawrie@ewhlaw.com>
**Date:**     9/12/2007 4:20 PM
**Subject:**  Shifflet Removal

Dear Mr. Lawrie,

My firm represents Defendants Bondex International, Inc., RPM, Inc.,
Republic Powdered Metals, Inc., and RPM International, Inc., in the
Lewis Shifflett matter in the U.S. District Court for the District of
Maryland, Case 1:07-cv-02397-WDQ, Shifflett et ux. v. AC & R Insulation
Co., Inc. et al. (formerly Circuit Court for Baltimore City Case No.
24X07000313).  The above-mentioned Defendant(s) joined in and consented
to removal of this action from the Circuit Court for Baltimore City to
the U.S. District Court for the District of Maryland prior to the time
that the case was removed on September 7, 2007.  These clients hereby
approve the Joint Statement that CBS Corporation and Federated
Development have prepared in response to the Standing Order Concerning
Removal, which was issued by the Court on September 11, 2007.



Very truly yours,



Jeannie Pittillo Kauffman, Esq.
Bacon, Thornton & Palmer, LLP
Capital Office Park
6411 Ivy Lane, Suite 706
Greenbelt, MD 20770-1411
301-345-7001
301-345-7075 (fax)
jkauffman@lawbtp.com

# Exhibit 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LEWIS SHIFFLETT, et ux.         *

      Plaintiffs              *

           v.             *      Civil Action:  1:07-cv-02397-WDQ

AC&R INSULATION CO., INC., et al.,   *

      Defendants           *

*     *     *     *     *     *     *     *     *     *     *     *     *

**REMOVING DEFENDANTS' RESPONSE
IN OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND**

## TABLE OF CONTENTS

Table of Contents ................................................................ ii.

Table of Exhibits ................................................................ v.

Response in Opposition ....................................................... 1.

I.   Background ................................................................ 2.

    A.   Procedural History ................................................ 2.

    B.   Legal Overview .................................................... 3.

II.   Discussion ................................................................ 6.

    A.   Defendants Properly Joined in and
Consented to this Action ............................................ 6.

        1.   Defendants fully complied with the procedural
requirements for removal. ........................................ 6.

        2.   Plaintiffs Misrepresent the Case Law on the
Rule of Unanimity ................................................ 8.

        3.   Patrick Hurley is capable of consenting for
Boiler and Furnace Cleaners, Inc. and Hurley Co. ....... 13.

        4.   Plaintiffs' arguments as to forfeited J.E. Hurley
are completely without merit. .................................. 20.

        5.   Plaintiffs' arguments pertaining to an e-mail
from counsel for Owen Illinois is a red herring. .......... 23.

        6.   A.W. Chesterton sufficiently expressed its joinder
and consent to removal. .......................................... 25.

B.   The U.S. District Court has original jurisdiction over
     this matter.                                                        28.

     1.   Plaintiffs' Interrogatory Answers provided the
          grounds for removal, thereby starting the
          30-day statutory clock for removal.                            28.

     2.   The only papers that can be considered in
          assessing the removability of this action
          are those provided by Plaintiffs prior to
          removal.                                                       28.

     3.   Any uncertainty pertaining to duration of
          exposure at particular locations are a direct
          result of Plaintiffs' obfuscation of relevant
          information.                                                   30.

     4.   Plaintiffs should not benefit from playing
          "games" with discovery.                                       31.

     5.   Plaintiffs improperly equate the number of
          alleged sites of exposure with the duration
          and amount of exposure.                                       33.

     6.   However, even if the number of federal job
          sites were of any import, Plaintiffs have
          severely understated the number of alleged
          sites constituting exclusive federal enclaves.                34.

          a.   Indian Head naval facility.                              36.

          b.   National Institutes of health                           37.

          c.   Walter Reed                                             38.

          d.   Cameron Station                                         38.

          e.   Washington National Airport                            39.

          f.   David Taylor Research Center.                          39.

          g.   The Fredericksburg and Spotsylvania
               National Military Park.                                 40.

C.     The "Well-Pleaded" Complaint rule does not call for remand of this action, but instead supports removal.     42.

     1.     Legal Summary.     42.

     2.     Plaintiffs' Complaint was artfully pled, as it omits essential federal issues, specifically that Plaintiff was injured on federal enclaves.     44.

D.     Plaintiffs' Alternative Motion to Dismiss is Wholly Unjustified.     46.

     1.     Plaintiffs' alternative Motion to Dismiss should be denied, as it is made with duplicitous intentions.     46.

     2.     Plaintiffs' rationale for dismissal would not preclude this case from subsequently being removable based on the same papers forming the basis for the current removal.     47.

     3.     Dismissal would substantially prejudice Defendants.     48.

III.     Conclusion     48.

# TABLE OF EXHIBITS

1.  Plaintiffs' Answers to Interrogatories (excerpt)

2.  Hudson Case Joinder Letters

3.  Liming Case Joinder Letters

4.  MDL Transfer Orders (Hudson; Liming)

5.  Shifflett Complaint, Summons (re: Hurley)

6.  Affidavit of Patrick Hurley

7.  Patrick Hurley Removal Letter

8.  Kevin Hoey Removal Letter (Hudson case)

9.  J.E. Hurley Memorandum of Points & Authorities in Support of Motion to Dismiss

10. Hudson Docket Report (excerpt)

11. A.W. Chesterton letter of September 7, 2007

12. A.W. Chesterton letter of September 17, 2007

13. Affidavit of Keith Truffer, counsel for A.W. Chesterton

14. Joint Statement

15. Proofs of Service for A.W. Chesterton

16. Affidavit of Carol S. Anadale (Linkenhoker case)

17. Chatham Manor information

18. Capital Power Plant information

19. Dolley Madison House information

20. St. Elizabeth's Hospital information

21. Indian Head naval facilty (*Inventory Report* excerpt)

22.    National Institutes of Health (*Inventory Report* excerpt)

23.    Walter Reed (*Inventory Report* excerpt)

24.    Cameron Station (*Inventory Report* excerpt)

25.    Washington National Airport (*Inventory Report* excerpt)

26.    David Taylor Research Center:  Time-Line

27.    Bureau of Ships Laboratory (*Inventory Report* excerpt)

28.    Navy Engineering Experiment Station (*Inventory Report* excerpt)

29.    Fredericksburg and Spotsylvania National Military Park (*Inventory Report* excerpt)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LEWIS SHIFFLETT, et ux.                        *

     Plaintiffs                           *

         v.                               *        Civil Action:  1:07-cv-02397-WDQ

AC&R INSULATION CO., INC., et al.,             *

     Defendants                           *

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

## REMOVING DEFENDANTS' RESPONSE
## IN OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND

Defendant CBS Corporation, a Delaware corporation, f/k/a Viacom Inc., successor by merger to CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation [hereinafter "CBS Corporation"], and the Defendant named as Federated Development Company, a Texas corporation merged into Federated Development, LLC, a Delaware limited liability company [hereinafter "Federated Development"], [CBS Corporation and Federated Development collectively hereinafter "Removing Defendants"], by their undersigned counsel, hereby oppose Plaintiffs' Motion for Remand, and in support of that opposition, state the following:

# I.   BACKGROUND

A.   **PROCEDURAL HISTORY**:

Plaintiffs originally filed their Complaint in the Circuit Court for Baltimore City on July 19, 2007, alleging occupational exposure of Plaintiff Lewis Shifflett to asbestos.   Subsequently, CBS Corporation and Federated Development were served on or about August 8 and August 17, 2007, respectively, via certified mail with the following:   Plaintiffs' Complaint and Prayer for Jury Trial; Civil–Non-Domestic Case Information Report; Request for Removal from Inactive Civil Docket; Inactive Civil Docket Plaintiff Information Form; a Surgical Pathology Report dated April 23, 2007; Plaintiffs' Answers to Defendants' Master Set of Interrogatories; and Plaintiff Lewis Shifflett's electronically-signed Verification of Answers to Interrogatories.

While most of these documents provided only general, non-specific work history for Mr. Shifflett, Plaintiffs' Answers to Defendants' Master Set of Interrogatories [hereinafter "Answers to Interrogatories"], Answer to Interrogatory No. 88, states that "Plaintiff was exposed to asbestos while working at various commercial and residential sites in and around the greater Baltimore/Washington/Northern Virginia metropolitan area." (*See* **Exhibit 1**).   Plaintiffs' Answer to Interrogatory No. 88 subsequently provides a specific list of fifty-two [52] job sites in Maryland, Virginia, and Washington, D.C. at which Mr. Shifflett was allegedly exposed to asbestos.   Among the sites listed were multiple federal enclaves, including, but not limited to, the following notable enclaves:  the Walter Reed Army Medical Center [hereinafter "Walter Reed"]; the National Institutes of Health ["NIH"]; and the Indian Head naval facility in Maryland (a.k.a./f.k.a. Naval Support Facility Indian Head, Naval Surface Warfare Center, Indian Head Division, Naval Ordnance Station Indian Head, Naval Propellant Plant Indian Head, Naval Powder Factory Indian Head, Indian Head Naval Proving Grounds, etc.) [collectively hereinafter "Indian Head" or "Indian Head naval facility"].

Therefore, because documentation filed in support of Plaintiffs' Complaint alleged that Mr. Shifflett was exposed to asbestos while working on multiple, exclusive federal enclaves, Removing Defendants filed a Notice of Removal of Civil Action with the United States District Court for the District of Maryland, Northern Division [hereinafter "U.S. District Court"] on the basis of a Federal Question under 28 U.S.C. § 1331, namely that of federal enclave jurisdiction, as well as jurisdiction conferred pursuant to 16 U.S.C. § 457. This removal was timely filed on September 7, 2007, and was accompanied by the written joinder and consent of all other proper Defendants. Further, this removal was based exclusively upon information contained in documents which were served with Plaintiffs' Complaint. Nonetheless, Plaintiffs filed a Motion for Remand on October 4, 2007, as well as a Motion for Expedited Consideration of Plaintiffs' Motion for Remand on October 11. This Response in Opposition addresses the Motion for Remand only; Removing Defendants will respond to Plaintiffs' Motion for Expedited Consideration separately, on or before October 29, 2007.

**B.    LEGAL OVERVIEW:**

Removal is permitted by defendants in an action over which the U.S. district courts have original jurisdiction. The defendants' right of removal in a civil action is provided in 28 U.S.C. § 1441(a), which states:

> (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

The procedures for removing an action are governed by 28 U.S.C. § 1446. This section provides, in part, the following:

> (a)  A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such actions pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and

> containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.
>
> (b) The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting for the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter. . . .

Thus pursuant to 28 U.S.C. §§ 1441 and 1446, defendant(s) may remove an action to federal court if the case is one over which the U.S. district courts have original jurisdiction, and if the removing defendant(s) adhere to specific procedural requirements. Federal courts have "original jurisdiction" over cases involving diversity of citizenship between parties, because of claims arising under federal law, or by virtue of some other explicit grant of jurisdiction. *Powers v. South Central United Food & Commercial Workers Unions and Employers Health & Welfare Trust*, 719 F.2d 760, 763 (5th Cir. 1983). Claims "arising under" federal law are those based on federal question jurisdiction under 28 U.S.C. §1331, which states, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

Federal enclave jurisdiction is a specific type of federal question jurisdiction arising under 28 U.S.C. § 1331. The federal government acquires jurisdiction over lands by one of two methods: by consent pursuant to Article I., section 8, clause 17 of the Constitution; or by a state's cessation of its rights of sovereignty. *U.S. v. Holmes*, 414 F.Supp. 831, 837 (D.C.Md. 1976). Under the first method, Clause 17 consent, the Constitution grants Congress the power, pursuant to art. I., § 8, cl. 17,

> To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cessation of particular States, and Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, Dockyards, and other needful Buildings.

4

Such consent may be in the form of a general consent statute or consent to a particular acquisition. *United States v. State Tax Commission of Mississippi*, 412 U.S. 363, 372 n.15 (1973). Under the second method, cessation, states enact legislation expressly ceding jurisdiction to the United States. *See, e.g., Collins v. Yosemite Park & Curry Co.*, 304 U.S. 518, 529 (1938); *Kleppe v. New Mexico*, 426 U.S. 529, 542 (1976).

Both methods are capable of creating federal enclaves "within which the United States has exclusive jurisdiction." *Akin v. Ashland Chemical*, 156 F.3d 1030, 1034 (10th Cir. 1998), *citing Mater v. Holley*, 200 F.2d 123, 124-25 (5th Cir. 1952). Further, "[p]ersonal injury actions which arise from incidents occurring in federal enclaves may be removed to federal district court on the basis of federal question jurisdiction." *Akin*, 156 F.3d at 1034; *Mater*, 200 F.2d at 124-25.

There is an additional source of federal district court "original jurisdiction" over federal enclaves, namely 16 U.S.C. § 457, which provides the following:

> *Action for death or personal injury within national park or other place under jurisdiction of United States; application of State laws.* In the case of the death of any person by the neglect or wrongful act of another within a national part or other place subject to the exclusive jurisdiction of the United States, within the exterior boundaries of any State, such right of action shall exist as though the place were under the jurisdiction of the State within whose exterior boundaries such place may be; and in any action brought to recover on account of injuries sustained in any such place the rights of the parties shall be governed by the laws of the State within the exterior boundaries of which it may be. (Feb. 1, 1928, c. 15, 45 Stat. 54).

Pursuant to 16 U.S.C. § 457, federal courts are explicitly granted jurisdictional authority over death and personal injury claims arising in exclusive federal enclaves. *Stokes v. Adair*, 265 F.2d 662, 665-66 (4th Cir. 1959). The laws of the state that are assimilated under § 457 "lose their character as laws of the state and become laws of the Union," thereby providing an independent basis for federal jurisdiction independent of the "arising under federal law" provision of 28 U.S.C. § 1331. *Id.*

Thus there are two different bases for the U.S. district courts' original jurisdiction over personal injury actions arising on a federal enclave. First, federal courts have original jurisdiction over claims involving federal enclaves pursuant to the "arising under" provision of 28 U.S.C. §1331 [hereinafter "federal enclave jurisdiction"]. Additionally, death and personal injury claims arising in exclusive federal enclaves are governed by 16 U.S.C. § 457, which provides federal courts original jurisdiction over such actions through an explicit grant of jurisdictional authority [hereinafter "16 U.S.C. § 457 jurisdiction"].

## II.   DISCUSSION

The numerous procedural and substantive arguments which Plaintiffs raise in the Motion to Remand are completely baseless, and are refuted in the following sections:

### A.   DEFENDANTS PROPERLY JOINED IN AND CONSENTED TO REMOVAL OF THIS ACTION.

1.   Defendants fully complied with the procedural requirements for removal.

The Removing Defendants fully complied with the procedural requirements set forth in 28 U.S.C. §§ 1441 and 1446, including complying with the "rule of unanimity"[1] by obtaining the written joinder and consent of the other Defendants to this action, and filing the Notice of Removal within 30 days of service. These letters were all signed by the parties or their counsel, and each fully indicates that particular Defendants join in, and consent to, the removal of this action from Baltimore City Circuit Court to the U.S. District Court for the District of Maryland based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction. These letters meet or exceed every procedural requirement pertaining to joinder and consent, were submitted by Removing Defendants in both hard

---

[1] The rule of unanimity, pursuant to 28 U.S.C. § 1446(a)-(b), does not require that all defendants sign the same notice of removal; rather, it requires "that each defendant file a notice of removal, either independently or by unambiguously joining in or consenting to another defendant's notice, within the thirty-day period following service of process." *Creekmore v. Food Lion, Inc.*, 797 F.Supp. 505, 508 (E.D.Va. 1992).

copy and electronically to the Office of the Clerk at the time of removal, and leave absolutely no doubt that all Defendants fully agreed to the removal of this action.

This process, whereby joining Defendants provide letters to Removing Defendants, who in turn submit the letters to the Office of the Clerk at the time of filing the Notice of Removal, is the current accepted practice of this Court, and has been sufficient to affirmatively demonstrate unambiguous joinder by co-defendants on multiple occasions in the past. For example, such letters were recently submitted to this Court at the time the Notice of Removal was filed in *Hudson v. Rapid American Corporation, et al.* (Civil Action: 1:06-cv-03319-JFM) (D. Md.) (letters entered as Docket Entry # 2, excerpt at **Exhibit 2**), as well as in *Liming v. AC and S, Inc., et al.* (Civil Action: 1:06-cv-3280-JFM) (D.Md.) (Docket Entry #2, excerpt at **Exhibit 3**). Although Motions to Remand were filed in both cases, neither Motion was granted, and each case was subsequently transferred to the Asbestos MDL Court at the U.S. District Court for the Eastern District of Pennsylvania (see **Exhibit 4**).[2]

Plaintiffs devote considerable time and energy attempting to impugn the sufficiency and validity of these joinder and consent letters. However, Plaintiffs' arguments are factually and legally erroneous.[3]

---

[2] Plaintiffs' arguments expressing their disdain for the MDL are completely irrelevant to the issues of whether this action was properly removed or whether dismissal is warranted, and thus will not be addressed in this Response.
[3] It should also be noted that the Plaintiffs cited to eight [8] different unreported opinions throughout their Memorandum, but failed to acknowledge them as "unreported" in their Table of Authorities on pages iv-v, failed to include them in their Index to Appendix of Unreported Decisions on page viii, and completely failed to cite to them as "Not Reported in Fed. Supp...," though Westlaw clearly indicates this to be part of the citation. These opinions were as follows (correct citations provided, rather than those used by Plaintiffs): *Bedell v. Board of Educ. of Kent County,* Not Reported in F.Supp.2d, 2006 WL 173677 (D.Md. 2006); *Black & Decker (U.S.) Inc. v. Twin City Fire Ins. Co.,* Not Reported in F.Supp., 1993 WL 56784 (D.Md 1993); *Brown v. Schiefer,* Not Reported in F.Supp.2d 2385314 (D.Md. 2006); *Jenkins v. Board of Educ. of City of Chicago,* Not Reported in F.Supp.2d, 2004 WL 783355 (N.D.Ill. 2004); *Nozick v. Davidson Hotel Co.,* Not Reported in F.Supp.2d, 2004 WL 34873 (D.Md. 2004); *Overly v. Raybestos-Manhattan,* Not Reported in F.Supp., 1996 WL 532150 (N.D.Cal. 1996); *Rosamond v. Garlock Sealing Technologies, Inc.,* Not Reported in F.Supp.2d, 2004 WL 943924 (N.D.Miss. 2004); *Westbrook v. Asbestos Defendants (BHC),* Not Reported in F.Supp.2d, 2001 WL 902642 (N.D.Cal. 2001).
    For six of these opinions, Plaintiffs never acknowledged them to be unreported at any point, yet utilized them on multiple occasions in support of their various arguments. Thus, for example, Plaintiffs cited to *Rosamond v. Garlock Sealing Technologies* at length on pages 3-4, and discussed *Brown v. Schiefer* as primary authority for an argument on

2.   Plaintiffs misrepresent the case law on the Rule of Unanimity.

Plaintiffs have made multiple disingenuous arguments pertaining to the Rule of Unanimity, misrepresenting the holdings in the cases to which they cite on pages 8-10 of their brief.  The cases cited by Plaintiffs actually stand for the proposition that the mere representation by counsel for one defendant that another defendant had <u>verbally</u> joined in, consented to, or did not object to removal, with nothing more, was insufficient to constitute joinder of that other party.  This is clearly inapposite with the case *sub judice*, in which every defendant provided a written letter, signed by their counsel or a company officer, expressing the defendants' unambiguous joinder in, and consent to, the removal. Yet Plaintiffs completely ignore the facts of these cases, and instead try to twist their holdings to mean that every defendant must personally sign the Notice of Removal or personally file their own written

---

page 18, yet failed to acknowledge them as unreported. For the other two opinions, *Bedell v. Board of Educ.*, and *Nozick v. Davidson Hotel Co.*, Plaintiffs indicated that they were unreported on pages 9-10 of their Memorandum; however, Plaintiffs also cited to *Bedell* and *Nozick* on page 13, and to *Nozick* again on page 18, without acknowledging them as unreported, and as indicated *supra*, Plaintiffs did not indicate that they unreported on their Table of Authorities or Index to Appendix of Unreported Decisions.  Although Plaintiffs have criticized Removing Defendants on the issue of candor towards the tribunal (see P's Memo, 22, n. 9), this is an instance where Plaintiffs' counsel clearly failed to disclose that which "candor towards the tribunal" requires.

However, even if Plaintiffs *had* acknowledged that these opinions were unreported, such opinions are not binding precedent in the Fourth Circuit. *See, e.g., Martin Oil Co. v. Philadelphia Life Ins. Co.*, 827 F.Supp. 1236, 1237 (N.D.W.Va. 1993). Further, the citation of unpublished dispositions issued prior to January 1, 2007 is disfavored. *See* Local Rules of the Fourth Circuit, Local Rule 32.1 (Citation of Unpublished Dispositions).  The only time that the use of unpublished opinions issued prior to January 1, 2007 is proper is when their use is essential to establishing *res judicata*, estoppel, law of the case, or when the opinions have material, precedential value for which there is no published opinion that would serve as well. *Id.*  However, none of these opinions was issued after January 1, 2007, and at no point in the current matter have Plaintiffs ever alleged circumstances that might justify Plaintiffs' reference to unpublished opinions.  Further, it should be noted that only four of these opinions involve Maryland district court cases; the other four are unreported opinions from other circuits.

Finally, this is not an isolated issue, but is indicative of Plaintiffs' misrepresentations throughout their Memorandum in Support.  For example, in discussing the Rule of Unanimity (*see* section II.B.2, *infra*.), Plaintiffs argued that an entire line of cases stood for one proposition that would have supported Plaintiffs' arguments (i.e. that co-defendants are personally required to submit their written consent directly to the court in order to effectuate unanimity in a removal action), when in fact the entire line of cases actually stood for something completely different altogether and inapposite to this matter (i.e. that the mere representation by counsel for one defendant that another defendant had <u>verbally</u> joined in, consented to, or did not object to removal, with nothing more, was insufficient to constitute joinder of that other party).  These and other distortions abound in Plaintiffs' papers, where Plaintiffs have raised numerous arguments that have no basis in fact or in law, solely to try and obtain remand or a dismissal without prejudice.

joinder directly with the district court. That is simply not the holding of these cases, is not the legal standard, and is contrary to the accepted practices of this Court.

For example, in *Anne Arundel County, Md. v. United Pacific Ins. Co.*, a case on which Plaintiffs heavily rely (see P.'s Motion to Remand 2, Memo in Support 8-10, 13, 15), the U.S. District Court for the District of Maryland determined that defendant United Pacific Insurance Company's ["USIP's"] Petition to Remove was defective because it failed to demonstrate that co-defendant Greenman Pedersen, Inc. ["GPI"] had actually joined in the removal. 905 F.Supp. 277, 278-279 (D.Md. 1995). Plaintiffs in the present matter claim that the holding of the *Anne Arundel Co.* Court was that, "each consenting party must *independently* and *officially* file with the court an unambiguous pleading indicating their consent to or joinder in removal" (P's Memo in Support, 8; emphasis in original), thereby implying that the case hinged on whether each defendant had personally submitted its own written joinder directly to the court. However, Plaintiffs have incorrectly paraphrased the Court's summary of the law, and have misrepresented the issues involved. The *Anne Arundel Co.* Court actually stated the following: "In addition, while § 1446 does not require that all defendants sign the same notice of removal, it does require that each defendant file a notice of removal, either independently *or by unambiguously joining in or consenting to another defendant's notice*, within the thirty-day period following service of process" (internal citations omitted, emphasis added). *Anne Arundel Co.*, 905 F.Supp. at 278 (*citing Creekmore v. Food Lion, Inc.*, 797 F.Supp. 505, 508 (E.D.Va. 1992)). Plaintiffs thus mischaracterized the Court's summary of the law; the Court did <u>not</u> state that each defendant was required to personally submit its own written joinder directly to the Court. Rather, the Court indicated only that the defendants were required to unambiguously join in or consent to the removal in writing.

Moreover, the decision in *Anne Arundel Co.* was actually based on the fact that GPI had, at most, made a <u>verbal</u> representation to UPIC, which was then set forth in writing by UPIC in its papers at the federal court. As the Court stated, "UPIC attempts to avoid this result [remand] by stating that "upon information and belief GPI does not object to this Petition for removal." However, that statement is not sufficient action by GPI to satisfy the requirements of § 1446." *Id* at 279. The Court ultimately concluded that it was basing its decision on a number of authorities, "which require all defendants within thirty days of service either to sign the petition *or consent to the removal in writing*" (emphasis added). *Id.* The Court <u>never</u> stated, as Plaintiffs in the present action have implied, that each defendant must personally file its own written joinder directly with the Court.

The other authorities cited by Plaintiffs on the issue of unanimity involve circumstances analogous to *Anne Arundel Co*, in which courts determined that the unanimity requirement is not satisfied when one party indicates in writing another party's <u>verbal</u> consent (or in some instances where the part argues that another party implicitly consented based on filing answers or motions in federal court, or by failing to object after removal). Such cases are thus inapposite to the present action, in which all proper defendants provided signed letters expressing their unambiguous joinder in the removal within the 30-day time period for removal. In addition to *Anne Arundel Co.*, Plaintiffs heavily rely on two similarly inapposite cases from the Fourth Circuit: *Creekmore v. Food Lion, Inc.*, 797 F.Supp. 505, 508 (E.D.Va. 1992) (holding that Food Lion's representations that two co-defendants had <u>verbally</u> consented to the removal were insufficient to demonstrate their affirmative and unambiguous desire to have the case removed); and *Martin Oil Co. v. Philadelphia Life Ins. Co.*, 827 F.Supp. 1236, 1237-38, 1239 (N.D.W.Va. 1993) (determining that joinder was insufficient when Philadelphia Life Insurance Company's notice of removal represented, without more, that counsel for a co-defendant had consented to the removal; the court held that, "it is insufficient for a defendant who

10

has not signed the removal petition to merely advise the removing defendant that it consents to removal and that the removing defendant may represent such consent to the Court on its behalf"). Plaintiffs also cite to various unreported opinions[4] from the Fourth Circuit that involve similar situations: *Bedell v. Board of Educ. of Kent County*, Not Reported in F.Supp.2d, 2006 WL 173677 (D.Md. 2006) (finding that the removing defendant's statement that, "the other Defendants in this case . . . consent to this removal, and the undersigned has been expressly authorized by their attorney to so state," with nothing more, was insufficient to satisfy the unanimity requirement); *Nozick v. Davidson Hotel Co.*, Not Reported in F.Supp.2d, 2004 WL 34873 (D.Md. 2004) (holding that a co-defendant's verbal consent to removal, given over the phone to counsel for the removing defendant on two separate occasions, did not constitute joinder and consent).

Plaintiffs also rely on similarly inapposite cases from other circuits.  These include the following cases in which removing counsel represented in a removal petition that another defendant had somehow verbally (or implicitly) consented to removal *Smith v. Union Nat'l Life*, 187 F.Supp.2d 635, 643-44 (S.D.Miss. 2001) (attorney's representation that "the notice of removal makes it objectively clear that [United National] consented to the removal and does not object to this federal forum" was insufficient to constitute joinder); *Amteco, Inc. v. BWAY Corp.*, 421 F.Supp.2d 1028, 1032 (E.D.Mo. 2003) (BWAY Corp.'s representation that St. Louis Paint Manufacturing Company had orally consented to removal was not sufficient under the removal statute); *Ogletree v. Barnes*, 851 F.Supp. 184, 187, 190 (E.D.Pa. 1994) (representations in a notice of removal that "all defendants to this action consent to its removal to Federal District Court," with nothing else from two co-defendants, did not satisfy "rule of unanimity"); *Nathe v. Pottenberg*, 931 F.Supp. 822, 824-25 (M.D.Fla. 1995) (joinder was not satisfied when the counsel for two removing defendants averred in the notice of

---

[4] See discussion at Section II.A, *supra*.

removal that "he has spoken with a representative of Hartford [Insurance Company of the Midwest] and has been advised that Hartford consents to the removal of this action," nor was it satisfied when Hartford filed an answer in federal court); *Landman v. Borough of Bristol*, 896 F.Supp. 406 (E.D.Pa. 1995) (finding that the Borough of Bristol had not provided its consent within 30 days based simply on Amtrak asserting in its removal petition that Bristol consented to the removal, with nothing more, or based on Bristol filing an answer in federal court); *Knickerbocker v. Chrysler Corp.*, 728 F.Supp. 460, 461 (E.D.Mich. 1990) (defendant Jonick's removal notice held defective after it simply represented in its removal petition, with nothing more, that co-defendant Chrysler Corp. "does not object to the removal of this action and once removal is effected, they would be willing to litigate this matter in Federal Court"); *Henderson v. Holmes*, 920 F.Supp. 1184, 1186-88 (D.Kan. 1996) (Ford Motor Company's notice of removal held procedurally defective when it simply stated that co-defendant Darren Holmes did not object to removal and had given his consent, with nothing more); *Production Stamping Corp. v. Maryland Cas. Co.*, 829 F.Supp. 1074, 1074-75 (E.D.Wis. 1993) (Maryland Casualty Company's mere assertion in the notice of removal that co-defendant Northbrook Property and Casualty Company's consented to the removal was insufficient to demonstrate joinder of Northbrook to removal, as was the fact that Northbrook filed an answer in federal court); *Spillers v. Tillman*, 959 F.Supp. 364 (S.D.Miss. 1997) (a removing physician's assertion in his Notice of Removal that the "defendants" are filing the removal does not demonstrate joinder and consent by the co-defendant hospital, nor does the fact that the hospital filed an answer and motion to dismiss in federal court); *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1263 (5th Cir. 1988) (assertion by a removing defendant in a notice of removal that a co-defendant had not been served, when co-defendant actually had been served two days before removal, but had submitted nothing in writing

within 30 days of service, "could render removal improvident within the meaning of 28 U.S.C. § 1447(c)").

These cases simply do not involve the situation which occurred in the case *sub judice*, where all defendants provided their unambiguous written joinder and consent to removal.

      3.    <u>Patrick Hurley is capable of consenting for Boiler and Furnace Cleaners, Inc. and Hurley Company, despite Plaintiffs' arguments to the contrary.</u>

Patrick Hurley is an officer of Boiler and Furnace Cleaners, Inc., and the Hurley Company (which is not an independent company but is actually the operating division of Boiler and Furnace Cleaners, Inc.), a fact which Plaintiffs have not disputed and which they clearly acknowledge, evidenced by the fact that Plaintiffs addressed their Complaint and Summons directly to Patrick Hurley (*see* excerpt of Complaint and proofs of service, at **Exhibit 5**). Additionally, the affidavit of Mr. Hurley at **Exhibit 6** indicates that he spoke directly with Plaintiffs' counsel about the Complaint. As a general rule, a corporation can act only through its duly authorized officers and agents, *see, e.g., In re Ben Weiss Co.*, 271 F.2d 234, 235 (7th Cir. 1959), and thus there are numerous contexts in which Mr. Hurley is permitted, and by necessity is required, to act on behalf of his companies. For example, he undoubtedly can bind the companies by entering into a contract on their behalf, and as the Supreme Court has noted, he can make an affidavit on the corporation's behalf. *Rowland v. California Men's Colony*, 506 U.S. 194, 204-05 (1993).

Moreover, despite Plaintiffs' claims to the contrary, Mr. Hurley can also act on behalf of his companies to provide their joinder and consent to removal. As the district court stated in *Foley v. Allied Interstate Inc.*, "federal courts have agreed that a corporation's consent to remove an action may be signed by someone other than a corporation's counsel of record, provided that such person has authority to bind the corporation." *Foley v. Allied Interstate Inc.*, 312 F.Supp.2d 1279, 1283 (C.D.Cal.

2004).    The *Foley* Court referred, *inter alia*, to the holding of the Fifth Circuit in *Getty Oil Corporation v. Insurance Company of North America.* (a case on which Plaintiffs in the present matter rely for authority on other issues), which had previously reached the same conclusion:

> While courts generally do not require all defendants to sign the removal petition itself, a corporation may consent to removal by "some timely filed written indication from each defendant, or some person or entity purporting to formally act on its behalf in this respect and to have authority to do so, that it has actually consented to such action."

*Foley*, 312 F.Supp.2d at 1283 (*citing Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262 n. 11 (5th Cir. 1988)).   Similarly, in *Nathe v. Potenberg* (another case on which Plaintiffs rely), a Florida court found the Fifth Circuit's holding in *Getty Oil Corp.* persuasive, stating that, "there must be some timely filed written indication from each served defendant, or from some person or entity purporting to formally act on its behalf in this respect and to have authority to do so, that it has actually consented to such action.   Otherwise, there would be nothing on the record to "bind" the allegedly consenting defendant." *Nathe v. Potenberg*, 931 F.Supp. 822, 824-25 (M.D.Fla. 1995) (citing *Getty Oil Corp.*, 841 F.2d at 1262 n. 11).

Other courts have also indicated that corporate officers or other authorized representatives can consent to removal on behalf of a corporation, even if not attorneys.   Thus in *Spillers v. Tillman* (yet another case on which Plaintiffs rely), the district court relied on, and cited at length, to the unreported holding in *Baker v. Ford Motor Company*, where the court had held that, when Ford Motor Company's counsel gave verbal consent to counsel for Grumman Allied Industries, it was "not the equivalent of written consent *by Ford or its attorney*," and thus "falls short of the requirement that served defendants officially indicate their unanimity in the removal of an action in a timely fashion." *Spillers v. Tillman*, 959 F.Supp. 364, 371 (S.D.Miss 1997) (emphasis added) (citing *Baker v. Ford Motor Company*, Not Reported in F.Supp., 1997 WL 88260 (N.D.Miss. 1997)).   These opinions make clear that the consent

of "Ford or its attorney" would have been sufficient for joinder, thereby contemplating that a non-attorney can effectuate joinder for a corporation.

Therefore, as Patrick Hurley is an officer of Boiler and Furnace Cleaners, Inc., he is fully capable of joining in, and consenting to, the removal of this action on behalf of both Boiler and Furnace Cleaners, Inc. and the Hurley Company (the operating division of Boiler and Furnace Cleaners, Inc.). Mr. Hurley provided such joinder and consent in his letter dated September 4, 2007 (**Exhibit 7**), which clearly indicated that he was joining in and consenting to the removal on behalf of his companies.

Moreover, corporate officers have been allowed to submit joinder letters on behalf of their companies in previous removals in this Court, as well. Thus in *Hudson v. Rapid American Corporation, et al.* (Civil Action: 1:06-cv-03319-JFM) (D. Md.), Kevin Hoey, President and Chief Executive Officer of AESYS Technologies, LLC, submitted a letter to Removing Defendants on December 7, 2006, expressing his company's joinder and consent to removal (*see* letter at **Exhibit 8**).[5] As discussed *supra*, the *Hudson* case remains in federal court. It should also be noted that in *Hudson*, just as in the present matter, the joinder and consent by a corporate officer rather than counsel was necessary because Plaintiffs sued, *inter alia*, a relatively small corporation that had not previously been named in Maryland State asbestos litigation; consequently, as the company had not previously retained counsel experienced in such litigation, it took some time for company officers to research and secure appropriate representation.

Plaintiffs attempt to argue that Mr. Hurley does not have authority to join in the removal on behalf of these companies because he is not an attorney. This argument is completely untenable. First, Plaintiffs clearly understand that Mr. Hurley is a corporate officer who is capable of speaking on

---

[5] The Company was improperly named as "York Shipley Global Division of AESYS Technologies, LLC."

behalf of both Boiler and Furnace Cleaners, Inc. and Hurley Company, as discussed *supra*; *see, e.g.,*
Exhibits 5 and 6.  Therefore, it is completely disingenuous for Plaintiffs to argue that, on the one hand
Mr. Hurley is capable of accepting service for the company and of discussing substantive issues with
Plaintiffs' counsel, yet on the other hand he is incapable of making decisions for the company.

Furthermore, the policy reasons for only allowing attorneys to represent corporations in federal
court are absent from this matter.  The reasons for requiring that an attorney appear are as follows:

> In summary, they are principally that the conduct of litigation by a nonlawyer
> creates unusual burdens not only for the party he represents but as well for his
> adversaries and the court. The lay litigant frequently brings pleadings that are
> awkwardly drafted, motions that are inarticulately presented, proceedings that are
> needlessly multiplicative. In addition to lacking the professional skills of a lawyer,
> the lay litigant lacks many of the attorney's ethical responsibilities, e.g., to avoid
> litigating unfounded or vexatious claims.

*Jones v. Niagara Frontier Transp. Authority,* 722 F.2d 20, 22 (C.A.N.Y. 1983) (cited favorably in
*Rowland,* 506 U.S. at 202).  Here, however, Mr. Hurley was able to provide joinder and consent
without appearing before the court.  By joining in the removal, he is simply consenting to an action
which other counsel seek to undertake on behalf of their clients.  Mr. Hurley certainly has not posed a
burden on his adversaries or the court, has not drafted any pleadings or motions, and has not brought
any needlessly multiplicative proceedings.  Additionally, he is not litigating an "unfounded or
vexatious claim," and thus the ethical considerations referenced above are not at issue.

In fact, because of the procedural issues involved with removals, Mr. Hurley could not have
appeared before the court or filed anything in this matter even if he had wanted to.  As discussed
*supra,* the Clerk's Office of the Maryland District Court does not open a case matter for a removed
action until the Notice of Removal is actually filed, which is generally done only *after* the removing

defendants have received written consent from all other co-defendants.[6]  As such, this action's federal case number did not even exist during the time that Mr. Hurley could join in the removal.  Thus when Mr. Hurley affirmatively and unambiguously stated in a letter to the Removing Defendants that his companies joined in the removal, he was simply engaging in the normal conduct of a corporate officer; he most certainly was <u>not</u> engaged in the unauthorized practice of law.

Additionally, it should be noted that the attorney for a non-removing corporate defendant acts only as an intermediary in the context of removal actions.  Such an attorney generally receives a request, by letter, e-mail, or phone call, from counsel for a removing defendant to join in the removal. The attorney in turn passes that request on to an officer, in-house counsel, or other individual at the company authorized to make decisions on behalf of the corporation.  While the attorney may provide advice or a recommendation, the decision is ultimately made by a corporate officer.  If the officer agrees to provide joinder and consent to removal on behalf of the company, then the attorney will represent that in writing to the removing defendants.  In the current matter, Mr. Hurley had not yet retained counsel, who would have acted as an intermediary.  Instead, the request necessarily went from counsel from removing defendants to Mr. Hurley, who in turn ultimately provided consent on behalf of his companies directly back to counsel for removing defendants, but only after having the attorney with whom Mr. Hurley was in early discussions about possible representation, and whom Mr. Hurley did ultimately retain, review the matter; see Patrick Hurley affidavit at Exhibit 6.

Despite these considerations, Plaintiffs attempt to contort the meaning of "appearing" in federal court to encompass Patrick Hurley sending a letter expressing the joinder and consent of his companies to removal. In asserting this argument, Plaintiffs cite to a single case from a New York

---

[6] Although it would theoretically be permissible for the Removing Defendants to file their Notice of Removal early on with the Court before obtaining written consent, this would be contrary to the current practices of the Office of the Clerk, and would potentially raise Rule 11 concerns if a co-defendant subsequently failed to submit a written joinder.

district court, *Codapro Corp. v. Wilson*, 997 F.Supp. 322 (E.D.N.Y. 1998), as authority for their proposition that Patrick Hurley, an officer of Boiler and Furnace Cleaners, Inc., is incapable of joining in a removal on behalf of his companies because he is not an attorney. (P.'s Memo 14.)

However, *Codapro Corp.* is distinguishable from the present action for numerous reasons. The case centered on common law fraud claims, which had been removed from New York State Court to federal court by an attorney named Samuel Boyd, a *pro se* defendant accused, *inter alia*, of using his attorney trust account as part of a fraudulent deal. *Codapro Corp.*, 997 F.Supp. at 324. The language of the opinion makes clear that the district court was highly skeptical of Boyd's representations, particularly since the other co-defendants had not filed a notice of appearance with the court. *Id.* ("None of the defendants filed any papers in this Court indicating their consent to the removal. In fact, as noted above, none of the defendants have [*sic*] filed a notice of appearance with the Court.").

Thus for example, the Court did not accept Boyd's claim of joinder as to co-defendant Edward Canino, *id.* at 326 ("In the Court's view, a letter written *by Boyd* to an unknown third person cannot qualify as an unambiguous written manifestation of Canino's consent"), and it rejected Boyd's assertion that "he was authorized to act on behalf of all the other defendants when he filed the Notice of Removal because he is an attorney," noting that, "indeed, one of the defendant's, Edel, has filed an affidavit stating that he *objects* to removal" (emphasis in original), *id.* at 326-327. The court further questioned the veracity of the "consent to removal" letters produced by Boyd. *Id.* at 324. It was in this context, with the court viewing Boyd's representations with justifiable skepticism, that it made its determination which forms the basis for Plaintiffs' argument in the current matter (that an officer cannot join in a removal on behalf of his company):

> This Court cannot accept Robert Wilson's letter to Boyd as an indication of consent on behalf of the five Euro Scotia companies and the Debenture Guranty Corporation. While Robert Wilson may represent himself as a *pro se* litigant, he cannot represent these six corporation in legal proceedings. A corporation, which

> is an artificial entity that can only act through agents, cannot proceed *pro se*. Accordingly, only retained counsel could have acted on behalf of these corporations.

*Id.* at 325.

However, the Court's holding in *Codapro Corp.* must be viewed in the context of this particular case, where an individual *defendant* allegedly mailed to an attorney, who was a *pro se co-defendant* and the removing party, a letter purporting to provide the consent to removal of himself (the sender) as well as six other corporate co-defendants, but with no indication that the sending defendant was an officer of these companies or that he had authority to act on their behalf. *Id.* at 324. Further, neither the sending defendant nor the six corporate co-defendants ever entered their appearances with the Court. *Id.* Moreover, there were numerous grounds for remand, as one defendant failed to provide any indication of joinder, while yet another actually filed an affidavit *objecting* to the removal. *Id.* at 324, 326-27. Thus it is by no means certain that the district court in *Codapro Corp.* would also conclude that a non-defendant officer of a corporation, such as Patrick Hurley in the present case, is precluded from expressing the joinder of his corporation at a time when he was seeking to retain counsel, and when counsel soon thereafter entered their appearance on his corporations' behalf.

However, to the extent that *Codapro Corp.* does stand for the proposition that only counsel can join in or consent to a removal on behalf of a corporation, its precedential value is limited to New York, for it is contrary to the laws of other jurisdictions. As discussed *supra*, multiple courts have indicated that the requirement for an individual to be able to join in a removal on behalf of a corporation is not that the person be an attorney, but rather than they have authority to bind the corporation. *See., e.g., Foley v. Allied Interstate Inc.*, 312 F.Supp.2d 1279, 1283 (C.D.Cal. 2004);

*Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262 n. 11 (5th Cir. 1988); *Spillers v. Tillman*,

959 F.Supp. at 371 (S.D.Miss 1997); *Nathe v. Potenberg*, 931 F.Supp. 822 (M.D.Fla. 1995).[7]

    4.    <u>Plaintiffs' arguments as to forfeited J.E. Hurley are completely without merit</u>.

Plaintiffs argue that J.E. Hurley Machine and Boiler Works, Inc. was a proper party to this

action, and thus was required to join in the removal, yet failed to do so. Plaintiffs also argue that even

though the corporation was forfeited, the corporation was not identified as such in the Notice of

Removal, and thus joinder was still required, which Patrick Hurley somehow expressly rejected.

These arguments are groundless.

J.E. Hurley is a forfeited company, which Plaintiffs improperly named in their complaint. *See*

Defendant J.E. Hurley Machine and Boiler Works, Inc.'s Memorandum of Points & Authorities in

Support of its Motion to Dismiss (at **Exhibit 9**), which cites primarily to the following: *Scott v. Seek*

*Lane Venture, Inc.*, 605 A.2d 942, 950-51 (Md.App. 1992); *Cloverfield Improvement Assoc., Inc. v.*

*Seabreeze Properties, Inc.*, 362 A.2d 675 (Md.App. 1976), *modified in part and aff'd* 373 A.2d 935

(Md. 1977); and *Atlantic Mill & Lumber Realty Co. v. Keefer*, 20 A.2d 178 (Md. 1941). These cases

---

[7] Plaintiffs also cite more generally to the Supreme Court decision in *Rowland v. California Men's Colony*, 506 U.S. 194 (1993), for the proposition that a corporation may appear in federal courts only through licensed counsel. (P.'s Memo in Support, 13-14.) However, that case is completely inapposite to the present matter. The Supreme Court in *Rowland* discussed whether artificial entities such as corporations could qualify for treatment *in forma pauperis* under 28 U.S.C. § 1915(a), which permits litigation without prepayment of fees, costs, or security "by a person who makes affidavit that he is unable to pay." 506 U.S. at 194. Thus their opinion discussed primarily the statutory circumstances under which the following portions of the Dictionary Act, 1 U.S.C. § 1, applied: "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise-. . . . the wor[d] 'person' . . . include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals (emphasis added)." *Id.* at 199. The Court went on to discuss very specific reasons why the statutory context of 28 U.S.C. § 1915(a) "indicates otherwise," ultimately concluding that only natural persons could qualify for treatment *in forma pauperis*.

However, in the process of discussing 1 U.S.C. § 1, the Court noted various situations in which a corporation could be considered a "person." Thus, for example, the Court acknowledged that a corporate officer or agent can make an affidavit on behalf of a corporation, "even when the applicable statute makes no express provision for doing so." *Id.* at 204, referring, e.g., to *In re Ben Weiss Co.*, 271 F.2d 234, 235 (7th Cir. 1959) ("As a corporation can act only through its duly authorized officers and agents, it is the general rule that affidavits upon behalf of corporations may be made by any duly authorized officers or agents having knowledge of the facts verified. It must necessarily be inferred that an officer or agent of a corporation may make an affidavit in its behalf even though the statute regulating the making of the affidavit makes no provision or exception in favor of corporations.")

make clear that under Maryland law, a forfeited corporation "can neither sue, nor be sued in either *in rem* or in *personam*." *Atlantic Mill & Lumber Realty*, 20 A.2d at 178.  Further, as a forfeited entity, J.E. Hurley no longer exists as a corporation (*see Cloverfield*, 362 A.2d at 675), and so its joinder and consent was therefore not possible.

Plaintiffs further argue that Removing Defendants failed to expressly indicate in their Notice of Removal that J.E. Hurley was improperly named, and thus remand is somehow required.  Plaintiffs cite to *Egle Nursing Home, Inc. v. Erie Ins. Group*, 981 F.Supp. 932 (D.Md. 1997) for the proposition that removal is procedurally defective when a Notice of Removal does not expressly state that a named co-defendant is a non-entity, and thus need not consent to removal.  However, Plaintiffs' assertion misstates the holding in *Egle Nursing Home*.  There, the district court remanded the case because there was no indication *whatsoever* in removing defendant Northern Insurance Co.'s notice of removal or accompanying papers that the failure of a named co-defendant, Erie Insurance Group, to join in the removal was justified, such as by an allegation that the co-defendant was a nominal party or had not been properly served. *Id.* at 934-35.  However, the Court distinguished this from other cases in which there *was* some form of indication in the record that a non-joining co-defendant was actually a nominal party, or that joinder was excused for lack of service. *Id.*

Thus the *Egle Nursing Home* Court cited favorably both to *Northern Ill. Gas Co. v. Airco Indus. Gases*, 676 F.2d 270, 272-73 (7th Cir. 1982) (permitting amendment to removal petition more than 30 days after removal, as the state court record attached to the removal petition contained the necessary information to establish the defendant's nominal party status; under these circumstances, the removing defendants' failure to allege nominal party status of a co-defendant was merely a technical defect), and to *Lewis v. Rego Co.*, 757 F.2d 66, 68 (3d Cir. 1985) (removal sustained despite non-joinder of a co-defendant when petition stated that "no entry of appearance has yet been made on

behalf of [the non-joining defendant];" this statement sufficiently implied that the non-joining defendant had not been served at the time of removal). *Egle Nursing Home*, 981 F.Supp. at 934-35.

In the present matter, the joinder letter of Patrick Hurley, dated September 4, 2007 (Exhibit 7), clearly indicates that J.E. Hurley no longer exists as a business entity, but that it would have joined in the removal if it had still been in existence:

> The Plaintiffs also named J.E. Hurley Machine and Boiler Works as a Defendant in the above-referenced action. J.E. Hurley Machine and Boiler Works was a business entity which no longer exists. I am the sole surviving officer of this former business entity. As J.E. Hurley Machine and Boiler Works no longer exists, it is incapable of joining in and consenting to the removal of this action to the U.S. District Court, although it certainly would have joined in and consented to the removal if it had still been in existence.

(Hurley ltr., Sep. 4, 2007). Thus the papers submitted with the Notice of Removal unquestionably state J.E. Hurley's nominal party status.

Further, to the extent that any joinder is technically required and possible on behalf of J.E. Hurley, Mr. Hurley's statement above sufficiently demonstrates the intent of the forfeited corporation to join in the removal had it been possible for it to do so. As its sole surviving officer, Mr. Hurley was the only one who possibly could have joined in the removal on its behalf, if such a joinder were possible. Although Plaintiffs claim in their Motion for Remand that Mr. Hurley expressly *denied* J.E. Hurley's joinder in the removal (P.'s Memo 17.), this argument is absolutely incorrect. Mr. Hurley simply noted that it was not possible for J.E. Hurley to join in the removal because it no longer existed as a corporate entity. Moreover, Mr. Hurley's statement expressed J.E. Hurley's joinder in the removal to the greatest extent possible under the law.

Finally, Plaintiffs' argument, that Mr. Hurley's failure to sign the letter "on behalf of J.E. Hurley" or to sign in his capacity as a former officer somehow precludes J.E. Hurley's joinder (P.'s Memo 18), is nonsensical, and is completely unsupported by the authority cited in Plaintiffs'

Memorandum, which relate to different issues altogether.  In addition to being completely off point, the primary authority cited by Plaintiffs is an unreported opinion, *Brown v. Schiefer*, Not Reported in F.Supp.2d WL 2385314 (D.Md. 2006), which Plaintiffs failed to mention was unreported and thus lacks precedential value.

     5.    <u>Plaintiffs' arguments pertaining to an e-mail from counsel for Owens Illinois is a red herring</u>.

Plaintiffs place considerable emphasis on a single e-mail from Steven Luxton, counsel for Owens Illinois, discussing whether he had actually seen the actual Notice of Removal that was eventually filed. (P.'s Motion 2; Memo. 11.) However, this issue is a red herring, as it is completely immaterial to the effectiveness and validity of Defendants' joinder and consent letters.  All of the joining Defendants were first contacted by phone prior to removal, where the various issues pertaining to removal were discussed, sometimes at great length, including the bases for removal.  Counsel and corporate officers had all either read the complaint, or had complete access to the complaint via Baltimore City Circuit Court's electronic filing system for asbestos litigation, LexisNexis File & Serve.  Subsequently, all Defendants agreed to join in the removal, and were provided template letters which would satisfy the joinder and consent requirements for this case.  However, these were not simply "form letters" that the counsel could blindly sign without reading.  The attorneys were still required to make changes to the wording in order to insert the name of the client or clients, and they had to research the dates their clients were served.  Further, most counsel placed the joinder letter on their own letterhead, and all were asked to personally sign the letter to indicate their clear intention to join.  Ultimately, it was incumbent upon each individual to satisfy themselves that that they should join in the removal on behalf of their clients and companies.

Separately, the great majority of the counsel for the joining Defendants had also participated in recent removals, including a removal by this firm in *Hudson v. Rapid American Corporation, et al.* (Civil Action: 1:06-cv-03319-JFM), discussed *supra*, and so were familiar with the basic content of the Notice of Removal and of the procedures involved. See excerpt of Docket Report for Hudson case at **Exhibit 10**. Of note, counsel for Owens Illinois, Steven Luxton, was among those who joined in the removal of the *Hudson* case; his joinder letter is included at Exhibit 2. If Mr. Luxton had any questions about the removal, or had wanted to review the final version of the Notice prior to joining in, and consenting to, the removal, Removing Defendants certainly would have provided him a copy.

Plaintiffs insinuate that this process was somehow tainted because each attorney did not personally review and approve the final version of the removal notice that was filed. However, the removal requirements only state that each defendant join in or consent to the removal, not that they "approve the specific language of the Notice of Removal." Further, the letters provided by the joining defendants specifically state that they agree to removal based on federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction. As such, they approved the bases for removal that were addressed in the Notice. These letters do not represent, nor have Removing Defendants represented, that the joining defendants approved the final wording of the Notice as filed. Nor is there any case law requiring them to do so. Removing Defendants merely represented that their co-defendants joined in, and consented to, the Removing Defendants filing a Notice of Removal in this action based on federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction. Plaintiffs' arguments on this point are completely without merit.

6.     <u>A.W. Chesterton sufficiently expressed its joinder and consent to removal</u>.

A.W. Chesterton, in its letters from counsel dated September 7 and September 17, 2007, as well by the affidavit of counsel dated October 22, 2007, sufficiently expressed its joinder and consent to the removal of this action. These three documents are at **Exhibits 11-13**.

Plaintiffs argue only in a footnote in their Memorandum that A.W. Chesterton has not "filed its own Notice of Removal, Notice of Consent, or Notice of Joinder with the Court." (P.'s Memo 17, n. 7.) However, this issue was not raised at all in Plaintiffs' Motion for Remand, nor was it raised in the body of Plaintiffs' Memorandum in Support; Removing Defendants thus believe that they are not required to address this issue in the present Response in Opposition.

However, to the extent that any response on this point is required, it is unclear whether Plaintiffs contend that A.W. Chesterton has not sufficiently expressed its intent to join in this action, or whether its joinder letter is supposedly deficient for the same reason that Plaintiffs contest every other joinder letter - because it was not filed directly with the Court by counsel for A.W. Chesterton. To the extent Plaintiffs contend the latter, see Section II.A.2, *supra*. To the extent they claim that A.W. Chesterton has not sufficiently expressed its intent to join, Removing Defendants respond as follows:

Prior to removal, using all due diligence, counsel for A.W. Chesterton was unable to ascertain that it had been served in this matter. See affidavit of counsel for A.W. Chesterton at Exhibit 13. However, A.W. Chesterton absolutely and unconditionally agreed to join in, and consent to, the removal of this action from State Court to U.S. District Court once properly served. Therefore, its counsel provided a letter prior to removal dated September 7, 2007, indicating that A.W. Chesterton will join and consent to the removal of this action when it is properly served. See Exhibit 11, which was provided electronically and in hard copy to the Office of the Clerk at the time the Notice of

Removal was filed (and presently included at Docket Entry # 3, along with an unrelated correspondence from another counsel).

Following removal, the Removing Defendants were required to submit a Joint Statement in response to the Court's Standing Order Concerning Removal, indicating the date of service for each Defendant and demonstrating that each Defendant had provided their joinder and consent prior to removal. Joint Statement is at **Exhibit 14** (exhibits 2-4 excluded).   At the time that the Joint Statement was being prepared, using all due diligence, counsel for A.W. Chesterton was again unable to ascertain that it had been served in this matter. See affidavit at Exhibit 13. Therefore, on September 17, 2007, counsel sent correspondence to Removing Defendants indicating that A.W. Chesterton had still not been served with the Complaint in this action, but again clearly stated that A.W. Chesterton will join in the removal once properly served. He also indicated that A.W. Chesterton consented to the wording of the Joint Statement. See Exhibit 12.

Prior to receiving Plaintiffs' Motion to Remand, neither A.W. Chesterton's local Maryland counsel nor their general counsel were aware that Plaintiffs had mailed a copy of the Summons and Complaint to A.W. Chesterton's resident agent in *Florida* (despite the fact that A.W. Chesterton is headquartered in Massachusetts and incorporated in Delaware). *See* affidavit at Exhibit 13.   The Summons and Complaint were never properly served, however, as they were apparently signed for by an individual named Fred Singer (*see* **Exhibit 15**), who on information and belief, is not an employee of CT Corporation, the registered agent authorized to accept service on behalf of A.W. Chesterton in Florida, and does not have any written authorization from CT Corporation to accept service on their behalf.   As such, service was improper, and the joinder of A.W. Chesterton in the removal of this action was therefore not required.

However, even if A.W. Chesterton *had* been properly served on September 5, 2007, as Plaintiffs claim, counsel could not have been unaware of such service prior to the time that the Removing Defendants filed the Notice of Removal on September 7, 2007, due to the obvious and foreseeable logistical and administrative delays that result when Plaintiffs address a Summons and Complaint for a Maryland action to a Massachusetts company's registered agent in Florida.  Under the best of circumstances, it would have taken several days for the papers to be transmitted from CT Corporation in Florida to A.W. Chesterton's corporate headquarters in Massachusetts, to be assessed by the company, and then transmitted to counsel in Maryland.  Consequently, it would have been a practical impossibility for counsel to have ascertained the alleged service of this action in Florida on September 5, 2007, prior to the time that removing Defendants filed their Notice of Removal on September 7, 2007.  The direct and foreseeable result of Plaintiffs' actions in this instance was thus to make it a practical impossibility for A.W. Chesterton to join in the removal before the Notice of Removal was filed.  As such, A.W. Chesterton should be excused from joining in this action.

Further, if A.W. Chesterton *had* been properly served on September 5, 2007, as Plaintiffs claim, then A.W. Chesterton effectively joined in the removal of this action pursuant to counsel's letter of September 7, 2007 (Exhibit 11), which was intended to express the unequivocal joinder and consent of A.W. Chesterton to removal upon proper service; *see* counsel's affidavit at Exhibit 13.  This clear expression of intent was reiterated in counsel's correspondence of September 17, 2007 (Exhibit 12). As such, assuming *arguendo* that service properly occurred on September 5, 2007, then counsel's first expression of A.W. Chesterton's clear intent to join in the removal – September 7, 2007 – is the effective date of A.W. Chesterton's joinder.

**B.      THE U.S. DISTRICT COURT HAS ORIGINAL JURISDICTION OVER THIS MATTER.**

1.      Plaintiffs' Interrogatory Answer provided the grounds for removal, thereby starting the 30-day statutory clock for removal.

Under Federal law, the period in which a defendant may remove an action begins to run from the point in time in which the defendant is first put on notice that the case is removable. *Lovern*, 121 F.3d at 162. The information that Plaintiffs did choose to disclose in their Answers to Interrogatories made clear that Mr. Shifflett was allegedly exposed to asbestos on multiple, exclusive federal enclaves. Mr. Shifflett answered under oath that the specific job sites at which he was allegedly exposed to asbestos included, but were not limited to, Indian Head naval facility in Maryland, Walter Reed Army Medical Center, and the National Institutes of Health; these sites were all exclusive federal enclaves during the timeframe of Mr. Shifflett's alleged exposures.  Upon providing this Answer, Plaintiffs effectively put Defendants on notice that this action was removable under federal question jurisdiction, thereby starting the clock on Defendants' narrow, 30-day window during which they are statutorily granted the right to remove the case from state to federal court pursuant to 28 U.S.C. §§ 1441 and 1446. If Defendants had failed to remove the action within 30 days of receiving such notice, they likely would have lost their right of removal forever on these grounds.

2.      The only papers that can be considered in assessing the removability of this action are those provided by Plaintiffs prior to removal.

The information and claims asserted in Plaintiffs' affidavits, provided in support of their Motion to Remand, cannot be considered by this Court.  The law is well settled in all federal circuits that have decided the issue, including the Fourth Circuit, that in assessing the removability of an action, a defendant is not under any duty to investigate or make further inquiry beyond the papers submitted by plaintiffs; rather, the defendant is entitled to rely upon what is contained in the "four

corners" of the Complaint or other papers that had been provided to defendant at the time of removal.

*Lovern*, 121 F.3d at 162. As the Fourth Circuit stated in *Lovern*,

> [W]e will not require courts to inquire into the subjective knowledge of the defendant, an inquiry that could degenerate into a mini-trial regarding who knew what and when. Rather, we will allow the court to rely on the face of the initial pleading and on the documents exchanged in the case by the parties to determine when the defendant had notice of the grounds for removal, requiring that those grounds be apparent within the four corners of the initial pleading or subsequent paper. This test that we adopt is consistent with that espoused by the Third and Fifth Circuits. *See Foster v. Mutual Fire, Marine & Inland Ins. Co.*, 986 F.2d 48, 53-54 (3d Cir. 1993); *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992). (citations in original). 121 F.3d at 162.

*See also Harris v. Bankers Life and Casualty Company*, 425 F.3d at 694 (9th Cir. 2005) (in holding that it would follow the law *of the other circuit courts that had examined the issue*, the Ninth Circuit stated, "[w]e now conclude that notice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry") (emphasis added).

Thus once an action has been removed, a plaintiff is not permitted to supplement the record in an effort to defeat the removal and secure a remand; instead, in assessing removal jurisdiction, the Court should only consider that which was known to the defendant at the time of removal. *See, e.g., Harris*, 425 F.3d at 689; *Chapman v. Powermatic*, 969 F.2d 160 (5th Cir. 1992); *Foster v. Mutual Fire, Marine & Inland Ins. Co.*, 986 F.2d 48 (3d Cir. 1993); *Lovern*, 121 F.3d at 162. This result is logical, considering that removal jurisdiction attaches at the time of removal, and subsequent events cannot deprive the federal district court of jurisdiction. *Harding v. U.S. Figure Skating Ass'n*, 851 F.Supp. 1476 (D.Or. 1994).

Therefore, in the matter *sub judice*, the only allegation of particular exposure locations that can be considered as to removal are those available within the "four-corners" of the papers which Plaintiffs had provided Defendants prior to removal. As such, all new details contained in Plaintiffs' affidavits,

including those pertaining to Mr. Shifflett's recent recollection that, when he previously alleged that he *was* exposed to asbestos at Walter Reed, he actually meant to state that he was *not* exposed at Bethesda Naval Hospital, as well as his claim that he was never actually exposed at Indian Head, cannot be considered as this information was submitted to the Defendants for the first time following removal. The record at the time of removal contained allegations of exposure at Walter Reed and Indian Head, and said nothing about a lack of exposure at Bethesda Naval Hospital. Thus Walter Reed and Indian Head must still be considered as an alleged site of asbestos exposure in assessing the removability of this action, while Plaintiffs' statement concerning Bethesda cannot be taken into account. Further, Plaintiffs allegations that exposure at NIH occurred prior to 1955 is completely unsupported by the documents served with Plaintiffs' Complaint. Plaintiffs indicated that exposure occurred at these sites "often numerous times" over the years. (P.'s Int. Ans. No. 88, p. 37), and it can reasonably be inferred that Plaintiff was exposed at NIH well after 1955.

3.     Any uncertainly pertaining to duration of exposure at particular locations is a direct result of Plaintiffs' obfuscation of relevant information.

Despite the histrionics contained in Plaintiffs' Motion to Remand, the Plaintiffs are squarely to blame for any uncertainty as to the duration of Mr. Shifflett's alleged asbestos exposures at particular job sites. Plaintiffs failed to adequately respond to proper, court-approved interrogatories, pursuant to which alleged dates and durational exposure information were requested, and instead provided only a list of fifty-two [52] specific work sites with no elaborating details. The dates and duration of alleged exposures is information of such nature that would be within the knowledge and control of Plaintiffs and not of the Defendants, yet was intentionally omitted from Plaintiffs' Answers to Interrogatories. Because Plaintiffs failed to disclose such relevant information, the Defendants and this Court are

forced to evaluate this matter based on that information which Plaintiffs did selectively decide to disclose, without having the benefit of that which Plaintiffs withheld.

4.   Plaintiffs should not benefit from playing "games" with discovery.

In response to Defendants' proper discovery request inquiring about the details of Plaintiffs' alleged occupational exposures to asbestos, Plaintiffs answered that, "Plaintiff was exposed to asbestos while working at various commercial and residential sites in and around the greater Baltimore/Washington/Northern Virginia metropolitan area."  Plaintiffs further responded that, "Mr. Shifflett's job sites and locations varied over the expanse of his career.  Some job sites may have included: . . .;" and then provided a list of fifty-two [52] specific job sites in Maryland, Virginia, and Washington, D.C.  Plaintiffs now attempt to argue that this list of fifty-two [52] sites should somehow be interpreted as constituting particular locations where Mr. Shifflett *may, or may not,* have been exposed to asbestos.  Such a construction would render the entire Answer wholly without meaning, as any job site in the entire world could have been listed under such an absurd construction.  This Court should not permit Plaintiffs to benefit from playing such "games" with discovery, whereby Plaintiffs provide specific answers and Defendants must then guess whether those answers have any actual meaning in this case.  Such a result would make a mockery of discovery.

Moreover, such conduct, if permitted, would be highly prejudicial to Defendants.  In this action, Plaintiffs' counsel made specific, strategic decisions about which documents to provide Defendants at the time they served Plaintiffs' Complaint, knowing that Defendants' ability to remove an action is limited to a thirty day period from the time that they are first made aware that an action is removable. Here, Plaintiffs' Answers to Interrogatories, indicating exposures on, *inter alia,* exclusive federal enclave, constitutes "other papers from which it may first be ascertained that the case is one which is or has become removable" under 28 U.S.C. §1446(b), and thus

Removing Defendant's thirty-day clock to file a Notice of Removal started when they were served in August 2007 with these Interrogatory Answers (*see* Exhibit 1).

Additionally, Defendants are entitled to rely on the representations made in these Interrogatories, which were signed under oath by Plaintiff Lewis Shifflett, and which, by serving these Answers with their signed Complaint, and by electronically filing it in the Circuit Court for Baltimore City, Plaintiffs counsel represented, pursuant to Maryland Rule 1-311(b) [Effect of Signature], "that the attorney has read the pleading or paper; that to the best of the attorney's knowledge, information, and belief there is good ground to support it; and that it is not interposed for improper purpose or delay." After becoming aware that this action was removable based on the representations in Plaintiffs' documents, CBS Corporation and Federated Development removed the case to the U.S. District Court. In the process, Removing Defendants complied with every applicable requirement of 28 U.S.C. §1446, including obtaining the joinder and consent to removal of each of the approximately fifty [50] other known defendants in this action. However, to do so, Removing Defendants necessarily expended considerable time and effort coordinating the joinder and preparing the removal, and incurred costs associated with filing a new action in the U.S. District Court. Further, by signing and then filing the Notice of Removal, counsel for Removing Defendants certified having met their affirmative duties imposed by Rule 11 of the Federal Rules of Civil Procedure to make a reasonable inquiry into the facts and law contained in the removal notice.

The result that Plaintiffs seek, whereby they could simply disclaim representations made in their own papers when it suits them, would be manifestly unjust, as Removing Defendants acted as they did in this matter based on their reasonable reliance on the representations contained in the

papers provided by Plaintiffs.  Additionally, such a result would practically vitiate Defendants' statutory right of removal under 28 U.S.C. §1441; if remand were granted on this basis, other plaintiffs would be free to submit qualified, conditional, conflicting, and/or incomplete information as to specific locations and timeframes of occupational exposures in each and every case that might conceivably be removable.  Then, if defendants filed a timely and properly joined notice of removal, plaintiffs could secure remand by simply indicating that the removal was based on incorrect information.  But if defendants failed to timely remove the action due to uncertainly about the reliability of such papers, plaintiffs could assert that the facts supporting removability were clearly stated in the documents, and thus pursuant to §1446(b), defendants' thirty-day clock started upon receipt of those papers.  Plaintiffs could thereby preclude defendants from removing appropriate cases to federal court based on the errors and omissions in plaintiffs' own documents.

5.    Plaintiffs improperly equate the number of alleged sites of exposure with the duration and amount of exposure.

Plaintiffs have significantly misrepresented the amount of alleged asbestos exposure occurring on exclusive federal enclaves compared to exposures on non-federal facilities.  The number of sites of alleged exposure on federal enclaves does not equate in any way to duration or total amount of exposure on such enclaves.  For example, Mr. Shifflett could have worked at a major federal facility for a number of years, and worked at a single apartment building for only a few hours on one particular day.  It follows that the "number" of alleged exposure sites does not shed light on the duration or amount of exposures at any of these particular sites.  Consequently, Plaintiffs' argument – that "[a]t most, three (3) of fifty two (52) jobsites (5.76%) identified by Mr. Shifflett are alleged federal enclaves" (P.'s Motion 5) – is completely immaterial; those three sites could have accounted for the vast majority of Mr. Shifflett's alleged exposures to asbestos.  There is simply no way to actually

ascertain the ratio of federal versus non-federal exposures in this matter from Plaintiffs' list of work sites.

6.   However, even if the number of federal job sites were of any import, Plaintiffs have severely understated the number of alleged sites constituting exclusive federal enclaves.

Although the number of federal versus non-federal exposure sites alone is immaterial to this matter, even assuming *arguendo* that this number *was* relevant, Plaintiffs have severely misrepresented the number of alleged exposure sites which constitute federal enclaves.   Although Removing Defendants identified three particular exclusive federal enclaves in their Notice of Removal, the Notice left open the possibility that other enclaves may exist, as Removing Defendants reserved the right to amend the Notice of Removal.  In fact, upon further research and review, Defendants CBS Corporation and Federated Development have determined that Plaintiffs have also alleged that Mr. Shifflett was exposed at multiple, additional federal enclaves over which the U.S. District Courts have original jurisdiction.[8]

The "Cameron Station Warehouse" was a job site at Cameron Station, an exclusive federal enclave located in the city of Alexandria, Virginia.   Washington National Airport, located in the county of Arlington, Virginia, was also an exclusive federal enclave.   The David Taylor Research Center had two locations: the Bureau of Ships laboratories at Carderock, Maryland (a.k.a. Naval Sea Systems Command, Carderock Division, David Taylor Naval Ship Research and Development Center, Naval Ship Research and Development Center, The David W. Taylor Model Basin, etc.) and the U.S. Navy Engineering Experiment Station in Annapolis, Maryland (a.k.a. Marine Engineering

---

[8] Since filing the Notice of Removal, the Removing Defendants have obtained the full text of a report entitled *Inventory Report on Jurisdictional Status of Federal Areas Within the States As of June 30, 1962* ["*Inventory Report*"], compiled by the General Services Administration ["GSA"] as an inventory of all federal lands located within the states.  This information was verified, and the *Inventory Report* was authenticated, in a 2001 notarized affidavit signed by Carol S. Anadale, Program Expert in the Office of Real Property of the GSA. (**Exhibit 16**).

Laboratory).  Although Plaintiffs did not specify whether they referred to the Carderock or Annapolis locations (or both) when they stated "David Taylor Research Center," that ambiguity is of no consequence in assessing removal, as both facilities were exclusive federal enclaves over which the District Courts had original jurisdiction.  Further, the Chatham House [actually Chatham Manor] is a federally-owned property which is part of the Fredericksburg and Spotsylvania National Military Park in Virginia (*see* **Exhibit 17**). The Capital Power Plant is located in Washington, D.C. and is controlled by the U.S. Congress (*see* **Exhibit 18**).  The [Dolley] Madison House in Washington D.C. is a federally owned historic building (*see* **Exhibit 19**), and St. Elizabeth's Hospital was a federally owned and operated mental hospital in Washington, D.C. (*see* **Exhibit 20**).  The U.S. District Courts have original jurisdiction over all of these facilities.

Further, many of Mr. Shifflett's numerous other work sites, as well as the two unions to which he belonged, were located in Washington, D.C., the entire area of which is an exclusive federal enclave over which the federal courts have original jurisdiction.  Therefore, although the number of federal versus non-federal sites alone is immaterial to this matter, even assuming *arguendo* that this number was actually relevant, Plaintiffs have severely misrepresented the sites that fall into either category.  Thus Plaintiffs' statement that "[a]t most, three (3) of fifty two (52) jobsites (5.76%) identified by Mr. Shifflett are alleged federal enclaves" (P.s Motion 5) significantly under-represents the number of alleged exposure sites which actually constitute federal enclaves, while their claim that "the balance (94%) favors remand" (P.'s Memo 36) is absolutely untrue.

Additionally, while the Notice of Removal clearly presents a colorable claim that this action is removable, describing the bases for removal and the enclave status of particular locations far beyond that which is minimally required, Plaintiffs have claimed that the Notice of Removal failed to

sufficiently demonstrate enclave status for particular locations. This contention is completely unfounded. However, to lay to rest any questions that Plaintiffs appear to have regarding the existence of exclusive federal enclaves on Plaintiffs' list of specific job sites during the periods of Plaintiffs' alleged exposures, and in response to Plaintiffs' assertion that that Removing Defendants have engaged in "*ipsi [sic] dixit* reasoning [that] is not supported by either the facts in this case or the law regarding federal question removal" (P.'s Memo 20), Removing Defendants submit the following summaries of information obtained directly from the GSA *Inventory Report*, which has very clear circumstantial guarantees of trustworthiness and which is clearly relevant to the issue of Mr. Shifflett's alleged exposures during the period 1950-1975 at several of the federal properties mentioned above over which the U.S. District Courts had original jurisdiction, including the three facilities mentioned in Defendants' Notice of Removal:

      a.    *Indian Head naval facility.*

The Indian Head naval facility is an exclusive federal enclave. An excerpt of the *Inventory Report*, attached hereto as **Exhibit 21**, indicates that the Indian Head naval facility (listed as "Propellant Plaint") is a federal property located in Charles County and Prince Georges County, Maryland. The *Inventory Report* further indicates that Indian Head is a federal property over which the Federal Government exercises exclusive legislative jurisdiction,[9] that the Federal Government acquired the property in 1890, and that the legislative authority granting the Federal Government

---

[9] In its summary of jurisdictional codes, the *Inventory Report* defines "exclusive legislative jurisdiction" as follows:

    Exclusive Legislative Jurisdiction. This term is applied when the Federal Government possesses, by whichever method acquired, all of the authority of the State, and in which the State concerned has not reserved to itself the right to exercise any of the authority concurrently with the United States except the right to serve civil or criminal process in the area for activities which occurred outside the area.

exclusive legislative jurisdiction over Indian Head was Maryland Laws 1906, chapter 743, page 1254.[10]

      *b.*    *National Institutes of Health.*

NIH is an exclusive federal enclave. An excerpt of the *Inventory Report*, attached hereto as **Exhibit 22**, indicates that NIH is a federal property located in Montgomery County, Maryland. The *Inventory Report* further indicates that NIH is a federal property over which the Federal Government exercises exclusive legislative jurisdiction, that the Federal Government acquired the property between 1935 and 1942, and that the legislative authority granting the Federal Government exclusive legislative jurisdiction over NIH was Maryland Laws 1953, Chapter 128. Additionally, the Inventory Report indicates that the Federal Government accepted jurisdiction over the land on August 25, 1955. However, because the land at NIH was acquired both before and after the Federal Government adopted 40 U.S.C. § 255 in 1940, the Federal Government acquired exclusive jurisdiction over those lands

---

[10] This Maryland Law reads as follows:

    AN ACT ceding to the United States exclusive jurisdiction over certain lands acquired for public purposes within this State, and authorizing the acquisition thereof.

    1.  *Be it enacted by the General Assembly of Maryland,* That the consent of the State of Maryland is hereby given in accordance with the seventeenth clause, eighth section of the first Article of the Constitution of the United States, to the acquisition by the United States by purchase, condemnation or otherwise of any land in this State required for sites for custom houses, courthouses, postoffices, arsenals or other public buildings whatever, or for any other purposes of the government.

    2.  That exclusive jurisdiction in and over any land so acquired by the United States shall be and the same is hereby ceded to the United States for all purposes except the service upon such sites of all civil and criminal process of the courts of this State, but the jurisdiction so ceded shall continue no longer than the said United States shall own such lands.

    3.  The jurisdiction ceded shall not vest until the United States shall have acquired the title to said lands by purchase, condemnation or otherwise; and so long as the said lands shall remain the property of the United States when acquired as aforesaid, and no longer, the same shall be and continue exempt and exonerated from all State, county and municipal taxation, assessment, or other charges which may be levied or imposed under the authority of this State.

    4.  This Act shall take effect and be in force from and after its passage.

Approved April 5, 1906.

acquired between 1935 and 1940 as of the date acquired, and exclusive jurisdiction over the remainder in 1955. *See, e.g.*, 63 Md. Op Att. Gen. 332, 1978 WL 33745 (Md.A.G.).

    *c.*    *Walter Reed Army Medical Center*:

The Walter Reed Army Medical Center is an exclusive federal enclave.  An excerpt of the *Inventory Report*, attached hereto as **Exhibit 23**, indicates that Walter Reed (listed as "Reed Walter AMC Forest") is a federal property located in Montgomery County, Maryland.  The Inventory Report further indicates that Walter Reed is a federal property over which the Federal Government exercises exclusive legislative jurisdiction, that the Federal Government acquired the property between 1942 and 1943, and that the legislative authority granting the Federal Government exclusive legislative jurisdiction over Walter Reed was Maryland Laws 1906, chapter 743, page 1254. (*See* note 10, *supra*). Additionally, the Inventory Report indicates that the Federal Government accepted jurisdiction over the land on April 22, 1943.

    *d.*    *Cameron Station*:

Cameron Station is an exclusive federal enclave.  An excerpt of the *Inventory Report*, attached hereto as **Exhibit 24**, indicates that Cameron Station is a federal property located in Alexandria City, Virginia.  The *Inventory Report* further indicates that Cameron Station is a federal property over which the Federal Government exercises exclusive legislative jurisdiction, that the Federal Government acquired the property between 1941 and 1942, and that the legislative authority granting the Federal Government exclusive legislative jurisdiction over Cameron Station was Virginia Laws 1940, chapter 422, page 761. Additionally, the Inventory Report indicates that the Federal Government accepted jurisdiction over the land on August 25, 1942.

*e.*      *Washington National Airport*

Washington National Airport ["National"] is an exclusive federal enclave.  An excerpt of the *Inventory Report*, attached hereto as **Exhibit 25**, indicates that National is a federal property located in Arlington, Virginia.  The *Inventory Report* further indicates that National is a federal property over which the Federal Government exercises exclusive legislative jurisdiction, that the Federal Government acquired the property between 1938 and 1953, and that the legislative authority granting the Federal Government exclusive legislative jurisdiction over National was Federal Law Volume 59, page 53.  However, because the land at National was acquired both before and after the Federal Government adopted 40 U.S.C. § 255 in 1940, the Federal Government acquired exclusive jurisdiction over those lands acquired between 1935 and 1940 as of the date acquired, and exclusive jurisdiction over the remainder in 1953. *See, e.g.,* 63 Md. Op Att. Gen. 332, 1978 WL 33745 (Md.A.G.).

*f.*      *David Taylor Research Center.*

The David Taylor Research Center had two locations: the Bureau of Ships Laboratory at Carderock, Maryland (a.k.a. Naval Sea Systems Command, Carderock Division, David Taylor Naval Ship Research and Development Center, Naval Ship Research and Development Center, The David W. Taylor Model Basin, BUSHIPS Laboratories, etc.) and the U.S. Navy Engineering Experiment Station in Annapolis, Maryland (a.k.a. Marine Engineering Laboratory). *See* Naval Sea Systems Command Time-Line at **Exhibit 26**.  Although Plaintiffs did not specify whether they referred to the Carderock or Annapolis locations (or both) when they stated "David Taylor Research Center," that ambiguity is of no consequence in assessing removal, as both facilities were exclusive federal enclaves over which the District Courts had original jurisdiction.

First, the Bureau of Ships Laboratory was an exclusive federal enclave.  An excerpt of the *Inventory Report*, attached hereto as **Exhibit 27**, indicates that the Bureau of Ships Laboratory (listed as "Laboratory BUSHIPS") is a federal property located in Montgomery County, Maryland.  The *Inventory Report* further indicates that the Bureau of Ships Laboratory is a federal property over which the Federal Government exercises exclusive legislative jurisdiction, that the Federal Government acquired the property between 1937 and 1943, and that the legislative authority granting the Federal Government exclusive legislative jurisdiction over the Bureau of Ships Laboratory was Maryland Laws 1906, chapter 743, page 1254. (*See* note 10, *supra*).  Additionally, the *Inventory Report* indicates that the Federal Government accepted jurisdiction over the land on June 14, 1943.

Second, the U.S. Navy Engineering Experiment Station was an exclusive federal enclave.  An excerpt of the *Inventory Report*, attached hereto as **Exhibit 28**, indicates that the Engineering Experiment Station is a federal property located in Anne Arundel County, Maryland.  The *Inventory Report* further indicates that the Engineering Experiment Station is a federal property over which the Federal Government exercises exclusive legislative jurisdiction, that the Federal Government acquired the property between 1904 and 1944, that the legislative authorities granting the Federal Government exclusive legislative jurisdiction over the Bureau of Ships Laboratory were Maryland Laws 1900, Maryland Laws 1906, chapter 743, page 1254 (*see* note 10, *supra*), as well as Maryland Laws 1939.  Additionally, the Inventory Report indicates that the Federal Government accepted jurisdiction over the land on April 21, 1944.

     g.    *The Fredericksburg and Spotsylvania National Military Park.*

The Fredericksburg and Spotsylvania National Military Park ["FSNMP"], on which Chatham Manor is located, is also a federal enclave.  An excerpt of the *Inventory Report*, attached hereto as **Exhibit 29**, indicates that FSNMP (referred to as "Fredericksburg Pk & Cem"), is a federal property

located in Caroline, Orange, and Spotsylvania Counties, Virginia. The *Inventory Report* further indicates that FSNMP is a federal property over which the Federal Government exercises concurrent legislative jurisdiction,[11,12] that the Federal Government acquired the property between 1933 and 1936, and that the legislative authority granting the Federal Government concurrent legislative jurisdiction over FSNMP was Virginia Laws 1932, chapter 213, page 400.

Therefore, because Mr. Shifflett has indicated exposures on a substantial number of federal enclaves that were clearly within federal jurisdiction throughout the entire period of Plaintiffs' alleged

---

[11] In its summary of jurisdictional codes, the *Inventory Report* defines "concurrent legislative jurisdiction" as follows:

> Concurrent Legislative Jurisdiction. This term is applied in those instances wherein in granting to the United States authority which would otherwise amount to exclusive legislative jurisdiction over an area, the State concerned has reserved to itself the right to exercise, concurrently with United States, all of the same authority.

[12] When assessing whether a case can be removed under 28 U.S.C. §1441, the issue of whether a federal court's jurisdiction is exclusive or concurrent is wholly irrelevant. Rather, the correct analysis focuses on whether the federal district court has original jurisdiction over an action, such as for §1331 federal questions. The U.S. district courts have original jurisdiction over federal enclaves in both exclusive and concurrent jurisdictional situations. Thus in *Gulf Offshore Co. v. Mobil Oil*, while the Supreme Court found that state courts have concurrent jurisdiction over causes of action arising under OSCSLA [Outer Continental Shelf Lands Act], the Court nonetheless stated that U.S. district courts maintain original jurisdiction as well. 453 U.S. at 479; *see also*, *Stokes*, 265 F.2d at 666 (4th Cir. 1959) (finding that district courts have original, concurrent jurisdiction over tort actions arising on lands within the exclusive legislative jurisdiction of the United States); *Mater*, 200 F.2d at 125 (in deciding whether the federal government had jurisdiction over a civil action arising on a federal fort, the Fifth Circuit held that "this action arises under the laws of the United States, within the meaning of 28 U.S.C. §1331," and thus "federal jurisdiction is not affected by concurrent jurisdiction in state courts").

Therefore, even assuming *arguendo* that there was *only* concurrent state and federal jurisdiction over the entire current action, both courts would have original jurisdiction, and thus defendants would still have had a statutory right of removal under 28 U.S.C. §1441. This statutory right of removal would not be defeated by the state court's original, concurrent jurisdiction. As the Supreme Court stated in *Gulf Offshore*, "Exclusive federal-court jurisdiction over a cause of action generally is unnecessary to protect the parties. The plaintiff may choose the available forum he prefers, and the defendant may remove the case if it could have been brought originally in a federal court." 453 U.S. at n. 12.

Instead, for Plaintiffs to prevail in this action, they would have had to show that the U.S. District Court completely lacks original jurisdiction over all claims arising within the federal enclaves cited herein. However, Plaintiffs have not advanced this argument, and for good reason. Federal courts have concluded that, because the United States has exclusive sovereignty in enclave areas, "it would be incongruous to hold that . . . courts of the United States are without power to adjudicate controversies arising therein" (internal parentheses omitted). *Akin*, 156 F.3d at 1034; *Mater*, 200 F.2d at 124. Therefore, because the U.S. District Court has original jurisdiction over this matter – regardless of whether that jurisdiction is exclusive or concurrent – this action was properly removed by Defendants to federal court.

occupational exposures, pursuant to 28 U.S.C. §1441[13] this case was removable to the U.S. District Court for the District of Maryland. *Fung v. Abex Corp.*, 816 F. Supp. 569, 571 (N.D. Cal. 1992) (plaintiff's motion to remand denied because plaintiff's causes of action arose on an exclusive federal enclave, which is properly the subject of federal jurisdiction); *see also Akin v. Big Three Industries*, 851 F. Supp. 819, 821-22 (E.D. Tex. 1994).

C.   THE "WELL-PLEADED" COMPLAINT RULE DOES NOT CALL FOR REMAND OF THIS ACTION, BUT INSTEAD SUPPORTS REMOVAL.

Plaintiffs argue that application of the "well-pleaded" complaint rule precludes removal jurisdiction in this action based on their contention that the "four corners" of the complaint does not make a claim under federal law. (P.'s Memo 19). This argument is fundamentally incorrect, as it misstates the "well-pleaded complaint rule," and then misapplies it to the facts of this case.

1.   Legal Summary.

The "well-pleaded complaint rule" can be summarized as follows: As the defendant in a civil action filed in state court is permitted to remove the action to federal court only if the action could have been brought originally in federal court (*Oxendine v. Merck and Co., Inc.*, 236 F.Supp.2d 517 (D.Md. 2002)), removal is limited to those cases in which a federal court would have had original jurisdiction over plaintiff's action at the time of removal (*Stanley v. Exxon Corp.*, 824 F.Supp. 52 (E.D.Pa. 1993)). Therefore, in assessing whether federal courts have original jurisdiction over matters involving a federal question under 28 U.S.C. § 1331, the presence or absence of jurisdiction is normally governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exits

---

[13] 28 U.S.C. §1441 reads, in part: "(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending . . . ."

only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *California v. United States*, 215 F.3d 1005, 1014 (9th Cir. 2000).

However, the "artful pleading doctrine" is an independent and established corollary to the well-pleaded complaint rule; this doctrine states that a plaintiff may not defeat removal by fraudulent means or by artfully failing to plead essential federal issues in a complaint. *See, e.g., Powers v. South Central United Food & Commercial Workers Unions and Employers Health & Welfare Trust*, 719 F.2d 760 (C.A.Tex. 1983). Thus while a plaintiff who has both federal and state causes of action may choose to ignore federal claims and pursue only state claims in state court, a defendant is entitled to have the case removed if the plaintiff is attempting to avoid having an essential federal claim adjudicated in a federal forum by artfully drafting the complaint in terms of state law. *People of State of Ill. v. Kerr-McGee Chemical Corp.*, 677 F.2d 671 (7th Cir. 1982), *cert. denied* 103 S.Ct. 469. Consequently, a plaintiff's failure to make specific reference in a complaint to an applicable source of federal law will not prevent removal. *Larsen v. Waddell*, 516 F.Supp. 1353 (W.D.Pa.1981).

In assessing a complaint for "artful pleading," federal courts are permitted to look beyond the face of the complaint to determine whether a plaintiff has artfully pleaded the cause of action so as to couch a federal claim in terms of state law. *See, e.g., Gateway 2000, Inc. v. Cyrix Corp.*, 942 F.Supp. 985 (D.N.J. 1996); *Emerson Power Transmission Corp. v. Roller Bearing Co. of America, Inc.*, 922 F.Supp 1306 (N.D.Ind. 1996). "Artful pleading doctrine" analysis requires removal courts to evaluate, *inter alia*, whether federal jurisdiction exists on the face of the complaint, whether federal preemption exists, and whether a remedy is provided by federal law. *Stokes v. Bechtel North American Power Corp.*, 614 F.Supp. 732 (N.D.Cal. 1985). If a court answers affirmatively to any of these inquiries, the complaint was artfully pled to defeat federal adjudication of the case, and federal courts properly have jurisdiction. *Id.*

43

2. <u>Plaintiffs' Complaint was artfully pled, as it omits essential federal issues, specifically</u>
<u>that Plaintiffs were injured on exclusive federal enclaves.</u>

As noted *supra*, in order for federal courts to apply the well-pleaded complaint rule, it is necessary that they examine a properly pleaded complaint. *California v. United States*, 215 F.3d. at 1014. In the present matter, the Complaint itself does not list any specific job sites where Plaintiffs were allegedly exposed to asbestos, nor does it provide any specific timeframes of alleged exposures at any particular location; instead, specific sites only were listed in Plaintiffs' Answers. However, Maryland Rule 2-304(c) states that "[t]ime and place *shall* be averred in a pleading *when material* to the cause of action or ground for defense" (emphasis added). A fact is considered material if it affects the outcome of the case. *Pence v. Norwest Bank Minn., N.A.*, 768 A.2d 639 (Md. 2001). Therefore, if the details of time and place would affect the outcome of this case, Plaintiffs' Complaint would fail to comport with the Maryland Rules of Procedure, and would thereby constitute an improperly pleaded complaint. *Id.*; *see also Nerenberg v. RICA of Southern Maryland,* 131 Md. App. 646, 660 (2000).

Under Maryland law, to establish proximate causation in an asbestos-related personal injury case, such as in the case at bar, a plaintiff must introduce evidence which would allow a jury reasonably to conclude "that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the [alleged injuries]." *Robin Express Transfer, Inc. v. Canton R.R.*, 338 A.2d 335, 343 (Md. App. 1975), *citing* W. Prosser, *The Law of Torts*, 212 (4th ed. 1971). To satisfy this substantial factor standard, a plaintiff must prove that he regularly worked with, or in proximity to, the asbestos-containing products of a particular defendant and inhaled respirable asbestos fibers from such products. *Eagle-Picher Indus. v. Balbos*, 604 A.2d 445 (Md. 1992). In *Balbos*, the Maryland Court of Appeals adopted what has become known as the "frequency, regularity and

proximity test" for determining the legal sufficiency of evidence of substantial factor causation in asbestos personal injury cases:

> Whether the exposure of any given bystander to any particular supplier's product will be legally sufficient to permit a finding of substantial factor-causation is fact specific to each case. The finding involves the interrelationship between the use of a defendant's product at the workplace and the activities of the plaintiff at the workplace. This requires an understanding of the physical characteristics of the workplace and of the relationship between the activities of the direct users of the product and the bystander plaintiff. Within that context, the factors to be evaluated include the nature of the product, the frequency of its use, the proximity, in distance and in time, of a plaintiff to the use of the product, and the regularity of the exposure of the plaintiff to the use of that product. In addition, trial courts must consider the evidence presented as to medical causation of the plaintiff's particular disease. 604 A.2d 445 (citations omitted).

Therefore, in order for the plaintiff in a Maryland asbestos-related personal injury case to satisfy the burden of proof as to the critical element of causation, the plaintiff must establish having worked with or in close proximity to a product manufactured, distributed or sold by a particular defendant, and whose product is capable of emitting significant levels of respirable asbestos fibers, on a regular and frequent basis, over a substantial period of time. The location or "place" of the alleged injuries is necessary for establishing proximity, while the "time" of the injuries is determinative of the frequency and regularity of exposure. Thus time and place are central to establishing causation, and will materially affect the outcome of the cause of action. In the case at bar, Plaintiffs' pleading does not constitute a "well-pleaded complaint," as it fails to aver the "time and place" of the alleged injury, as required by Maryland Rule 2-304. However, if Plaintiffs *had* served a "well-pleaded" complaint in this matter, that Complaint necessarily should have included, at minimum, specific representations made in the Complaint itself addressing the specific work sites at which Mr. Shifflett was allegedly exposed to asbestos, as well as the particular time-frames of those exposures. Such a pleading would thus have presented clear federal issues on its face – those of both federal enclave jurisdiction and 16

U.S.C. § 457 jurisdiction.  The well-pleaded complaint rule thus supports removal of this action, while Plaintiffs should not be able to obtain remand by simply failing to comply with the Maryland Rules.

**D.    PLAINTIFFS' ALTERNATIVE MOTION TO DISMISS IS WHOLLY UNJUSTIFIED.**

1.    <u>Plaintiffs' alternative motion to dismiss should be denied, as it is made with duplicitous intentions</u>.

In Plaintiffs' alternative motion to dismiss, Plaintiffs openly admit that they intend to re-file their Complaint in Baltimore City Circuit Court after removing all allegations of exposure on federal facilities and after disavowing all federal exposures.  However, the fact of the matter is that Plaintiffs have already alleged asbestos exposure on exclusive federal enclaves, and to go back and assert otherwise in Maryland State Court would be a blatant and intentional attempt to deceive that Court.

This situation can be distinguished from cases in which plaintiffs amend their pleadings by adding new defendants in order to destroy a District Court's diversity jurisdiction.  In such instances, there may or may not be legitimate reasons for the plaintiffs to so amend or to seek to re-file their complaint with the added defendants, and short of indisputable evidence to the contrary, it seems that federal courts are apt to permit them to do so.  Here, however, Plaintiffs do not seek to supplement their allegations; rather, they seek to completely rewrite the history of Plaintiffs' alleged exposures, pretending that they never alleged asbestos exposure on exclusive federal enclaves, when in fact, as this Court and all of the Parties to the action are fully aware, Plaintiffs already asserted such allegations.  Thus the *only* reason that Plaintiffs seek to have this claim dismissed without prejudice is to avoid federal jurisdiction, and they candidly admit that they intend to re-file this claim in which they will essentially make false allegations about Plaintiffs' previously-disclosed occupational exposure

history.  This motion should therefore be denied because there is no legitimate reason for Plaintiffs to change the specific facts underlying their Complaint.

    2.    <u>Plaintiffs' rationale for dismissal would not preclude this case from subsequently being removable based on the same papers forming the basis for the current removal</u>.

There would be nothing gained by dismissing this action without prejudice, as the allegations contained in the papers forming the basis for the present removal would still exist, and this case would therefore still be removable.  Plaintiffs wish to re-file their complaint in Baltimore City Circuit Court, and to purposely remove all reference to federal facilities and to disclaim all federal exposures. However, the fact of the matter is that Plaintiffs have already alleged exposures on exclusive federal enclaves, and disavowing federal exposures will not erase the existence of these previous allegations. In cases involving asbestos-related claims, in which Plaintiffs allege that every exposure is a substantial contributing cause of the development of their asbestos-related disease, the Plaintiffs' entire work history is extremely relevant and germane to the element of causation, both to Plaintiffs prosecuting a claim and to Defendants seeking to demonstrate alternative occupational exposures.  As such, Plaintiffs' intended disclaimer would have no practical effect, as the case would still be removable based on the allegations of exposure at exclusive federal enclaves contained in Plaintiffs' current papers.

Moreover, Plaintiffs' proposed course of action would have the effect of delaying the discovery in this matter, which Plaintiffs contend is time sensitive, and would create additional litigation expenses for every party to this action.  Thus while Plaintiffs' proposed dismissal would have no benefit, it would be costly and would only postpone the ultimate outcome, which is adjudication of this claim in federal court.

3.    Dismissal would substantially prejudice the Defendants.

Defendants would be substantially prejudiced by a dismissal of this action without prejudice. First, it is clear from Plaintiffs' alternative motion that they seek to change the allegations of fact underlying their Complaint. However, as a result of such action, the Defendants would subsequently be unable to rely on the veracity of any of Plaintiffs' later pleadings or other papers. Moreover, as discussed *supra*, Removing Defendants have relied on the allegations made by Plaintiffs in their discovery responses, pursuant to which Defendants properly removed this action to federal court at considerable cost and subject to Rule 11 obligations. For Plaintiffs to be able to change the entire factual allegations underlying their claims would essential vitiate Defendants' statutory right of removal, as Plaintiffs would always thereafter be able to modify the facts after a proper removal and restate their allegations in a manner that would subsequently appear not to be subject to federal jurisdiction. Such a result should not be entertained by this Court.

## III.    CONCLUSION

The U.S. District Court has original jurisdiction over this action under both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction, and thus removal of this action was appropriate under 28 U.S.C. § 1441. Further, Defendants fully adhered to all of the procedural requirements set forth in 28 U.S.C. §§ 1441 and 1446. As such, the removal of this action was proper, and Plaintiffs' Motion for Remand should be denied on all procedural and substantive grounds. Further, Plaintiffs' Alternative Motion to Dismiss should be denied for the reasons discussed above.

WHEREFORE, Removing Defendants respectfully request that this Court hold a hearing on this matter.

_____/s/_____

Philip A. Kulinski
Federal Bar # 27543

W. Thomas Lawrie
Federal Bar # 28226

EVERT WEATHERSBY HOUFF
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, MD  21202
Phone:  443-573-8500
Fax:      443-573-8501

Attorneys for:

CBS Corporation
Federated Development

## CERTIFICATE OF SERVICE

I hereby certify that, on this 22nd day of October, 2007, the foregoing Response in Opposition to Plaintiffs' Motion for Remand was electronically filed and served on all counsel of record.

_____/s/_____
W. Thomas Lawrie

# Exhibit 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LEWIS SHIFFLETT, et ux.         *

       Plaintiffs           *

           v.            *     Civil Action: 1:07-cv-02397-WDQ

AC&R INSULATION CO., INC., et al.,   *

       Defendants        *

*    *    *    *    *    *    *    *    *    *    *    *    *

**REMOVING DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR EXPEDITED
CONSIDERATION OF MOTION TO REMAND**

      Defendant CBS Corporation, a Delaware corporation, f/k/a Viacom Inc., successor by

merger to CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric

Corporation [hereinafter "CBS Corporation"], and the Defendant named as Federated

Development Company, a Texas corporation merged into Federated Development, LLC, a

Delaware limited liability company [hereinafter "Federated Development"], [CBS Corporation

and Federated Development collectively "Removing Defendants"], by their undersigned counsel,

hereby respond to Plaintiffs' Motion For Expedited Consideration of Motion to Remand as

follows:

## I.   PROCEDURAL BACKGROUND

Plaintiffs originally filed their Complaint in the Circuit Court for Baltimore City ["State Court"] on July 19, 2007, alleging occupational exposure of Plaintiff Lewis Shifflett to asbestos. Subsequently, CBS Corporation and Federated Development were served on or about August 8 and August 17, 2007, respectively, with Plaintiffs' Complaint and accompanying documents. While most of these documents provided only general, non-specific work history for Mr. Shifflett, Plaintiffs' sworn Answers to Defendants' Master Set of Interrogatories, Answer No. 88, stated that "Plaintiff was exposed to asbestos while working at various commercial and residential sites in and around the greater Baltimore/Washington/Northern Virginia metropolitan area." Plaintiffs' sworn Answer No. 88 subsequently provided a list of fifty-two [52] specific job sites in Maryland, Virginia, and Washington, D.C. at which Mr. Shifflett was allegedly exposed to asbestos. These work sites included a number of exclusive federal enclaves.

Therefore, because documentation filed in support of Plaintiffs' Complaint alleged that Mr. Shifflett was exposed to asbestos while working on multiple exclusive federal enclaves, pursuant to 28 U.S.C. §§ 1441 and 1446 Removing Defendants filed a Notice of Removal of Civil Action with the United States District Court for the District of Maryland, Northern Division [hereinafter "U.S. District Court"] on the basis of a Federal Question under 28 U.S.C. § 1331, namely that of federal enclave jurisdiction; as well as jurisdiction conferred pursuant to 16 U.S.C. § 457. The Notice of Removal was timely filed on September 7, 2007, and was accompanied by the written joinder and consent of all other proper Defendants. Further, this removal was based exclusively upon information contained in Plaintiffs' sworn discovery responses, which were provided by Plaintiffs and served with Plaintiffs' Complaint.

Nonetheless, Plaintiffs filed a Motion for Remand on October 4, 2007, as well as a Motion for Expedited Consideration of Plaintiffs' Motion for Remand on October 11. Removing Defendants filed a timely Response in Opposition to Plaintiffs' Motion for Remand on October 22, 2007. Replies to this Response in Opposition are due by November 6, 2007.

Separately, pursuant to federal requirements (*see* Section II.C, *infra*.), Removing Defendants submitted a Notice of Tag-Along Action to the United States Judicial Panel on Multidistrict Litigation [hereinafter "MDL Panel"] on September 7, 2007. The MDL Panel then issued a Conditional Transfer Order ["CTO-291"] on October 1, 2007 (**Exhibit 1**), to which Plaintiffs filed a Notice of Opposition on October 15 (**Exhibit 2**). Plaintiffs' Motion and Brief to Vacate CTO-291 is due on or before October 31, 2007. *See* Clerk of the Panel ltr. dated Oct. 16, 2007 (at **Exhibit 3**). Defendants will subsequently have 20 days from the date Plaintiffs' Motion to Vacate is filed in which to respond.

## II.   DISCUSSION

Almost all of the assertions in Plaintiffs' present Motion were previously raised in their Motion for Remand; these assertions were in turn refuted by Removing Defendants in their Response in Opposition to Plaintiffs' Motion for Remand. Therefore, Removing Defendants hereby incorporate by reference their Response in Opposition to Plaintiffs Motion for Remand in its entirety as if fully set forth herein. Although no further response is necessary, the following sections address a few of the more casuistic and specious arguments that Plaintiffs raise in their Motion for Expedited Consideration.

A.   **DEFENDANTS FULLY COMPLIED WITH THE PROCEDURAL REQUIREMENTS FOR REMOVAL.**

The Removing Defendants fully complied with the procedural requirements set forth in 28 U.S.C. §§ 1441 and 1446, including complying with the "rule of unanimity"[1] by obtaining the written joinder and consent of the other Defendants to this action, and filing the Notice of Removal within 30 days of service.  These letters were all signed by the parties or their counsel, and each fully indicated that particular Defendants joined in, and consented to, the removal of this action from State Court to the U.S. District Court based on both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction.  These letters meet or exceed every procedural requirement pertaining to joinder and consent, were submitted by Removing Defendants in both hard copy and in electronic format to the Office of the Clerk at the time of removal, and leave absolutely no doubt that all Defendants fully agreed to the removal of this action.

Although Plaintiffs devote considerable time and energy attempting to impugn the sufficiency and validity of these joinder and consent letters, both in their Motion for Remand and again in the present Motion, Plaintiffs' arguments are factually and legally erroneous, and are fully refuted in Removing Defendants' Response in Opposition to Plaintiffs' Motion for Remand.  In short, there are no procedural deficiencies associated with the removal of this action, and remand is unwarranted.

---

[1] The rule of unanimity, pursuant to 28 U.S.C. § 1446(a)-(b), does not require that all defendants sign the same notice of removal; rather, it requires "that each defendant file a notice of removal, either independently or by unambiguously joining in or consenting to another defendant's notice, within the thirty-day period following service of process." *Creekmore v. Food Lion, Inc.*, 797 F.Supp. 505, 508 (E.D.Va. 1992).

B.   ALTHOUGH PLAINTIFFS' ARGUMENT REGARDING "NUMEROUS JURISDICTIONAL DEFECTS" IS UNCLEAR, THERE ARE NO PROCEDURAL OR SUBSTANTIVE DEFECTS WITH THIS REMOVAL.

When referring to "numerous jurisdictional defects" in paragraph 7 of their Memorandum in Support of Motion for Expedited Consideration, it is unclear whether Plaintiffs are referring to the alleged procedural defects which they raise elsewhere in their Memorandum (e.g. paragraph 9), or whether they are referring to the alleged substantive defects as to federal enclave exposures which they raised in their Motion for Remand, and which impute subject matter jurisdiction.[2]  If the latter, Removing Defendants fully addressed the substantive issues related to subject matter jurisdiction in their Response in Opposition to Plaintiffs' Motion for Remand.  If the former (procedural issues), *see* Section II.A, *supra*.

C.   PLAINTIFFS IGNORE THE MDL TRANSFER PROCESS, WHILE THEIR ARGUMENTS ON THIS SUBJECT ARE COMPLETELY IRRELEVANT.

It appears that Plaintiffs have ignored the process by which the MDL Panel transfers cases to the U.S. District Court for the Eastern District of Pennsylvania, which the MDL Panel has designated as MDL No. 875 to conduct "coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407" in asbestos products liability litigation [hereinafter "Asbestos

---

[2] Under applicable law, procedural issues related to the "rule of unanimity" are not jurisdictional defects in actions removed pursuant to 28 U.S.C. § 1441, and can be waived in instances when Plaintiffs fail to file a timely Motion for Remand. *See, e.g., Brodar v. McKinney* 378 F.Supp.2d 634, 637 (M.D.N.C. 2005) ("[T]he failure of all defendants to join in or otherwise consent to a notice of removal constitutes a defect other than lack of subject matter jurisdiction, which is waived unless it is raised in a motion to remand within thirty days after the filing of the notice of removal under section 1446(a)" (adopting a holding from the unpublished opinion of *Miller ex rel. Estate of Dimas v. Morocho Brother's Const., Inc.*, Not Reported in F.Supp.2d, 2004 WL 727040 (M.D.N.C.)). However, from the context of Plaintiffs' statements in Paragraph 7 of their Memorandum in Support of Motion for Expedited Consideration, it appears that Plaintiffs have incorrectly equated "procedural defects" with "jurisdictional defects." This not simply an academic point, for an action is subject to remand for [lack of] "subject matter jurisdiction" at any time before final judgment, while a motion for remand based on alleged procedural defects must be made within 30 days after the filing of the notice of removal. 28 U.S.C. § 1447(c).

MDL Court"]. *See, e.g.,* **Exhibit 1**. Plaintiffs seem to imply that Defendants somehow acted

improperly by filing a Notice of Tag-Along Action with the MDL Panel. However, Removing

Defendants were required by the Rules of Procedure of the MDL Panel, Rule 7.5 (Miscellaneous

Provisions Concerning "Tag-Along Actions") to file such a Notice of Tag-Along Action:

> (e) Any party or counsel in actions previously transferred under Section
> 1407 or under consideration by the Panel for transfer under Section 1407
> *shall promptly notify* the Clerk of the Panel of any potential "tag-along
> actions" in which that party is also named or in which that counsel appears.
> (Emphasis added).

199 F.R.D. 425 (Amend. April 2, 2001).

Additionally, Plaintiffs argue that "it is imperative that this Court rule on the Motion to

Remand immediately - before the Conditional Transfer Order is finalized by the MDL." (P.'s

Memo in Support 2.) However, as indicated in the MDL Panel Rules of Procedure, Rule 7.4

(Conditional Transfer Orders For "Tag-Along Actions"), if Plaintiffs file a motion to vacate the

transfer, the MDL Panel will not make a decision on transfer until after both parties have had a

full opportunity to brief their respective positions, and until after the MDL Panel sets the motion

in for a hearing at the next session of the Panel:

> (c) Any party opposing the transfer shall file a notice of opposition with the
> Clerk of the Panel within the fifteen-day period. If a notice of opposition is
> received by the Clerk of the Panel within this fifteen-day period, the Clerk
> of the Panel shall not transmit said order to the clerk of the transferee district
> court until further order of the Panel. The Clerk of the Panel shall notify the
> parties of the briefing schedule.
>
> (d) Within fifteen days of the filing of its notice of opposition, the party
> opposing transfer shall file a motion to vacate the conditional transfer order
> and brief in support thereof. The Chairman of the Panel shall set the motion
> for the next appropriate hearing session of the Panel. Failure to file and
> serve a motion and brief shall be treated as withdrawal of the opposition and
> the Clerk of the Panel shall forthwith transmit the order to the clerk of the
> transferee district court.

199 F.R.D. 425 (Amend. April 2, 2001). This process takes several months from the point that the CTO is issued until the MDL Panel makes its final determination.

In the present action, the MDL process in its early stages: Plaintiffs have not yet submitted their Motion to Vacate; Defendants will subsequently have 20 days in which to file a response; and the MDL Panel has not set the motion in for a hearing. Any determination by the MDL Panel will thus be several months away. As such, Plaintiffs' request that "the Court Expedite Consideration of Motion to Remand and rule upon the Motion by November 2, 2007 so that their jurisdictional objections will be heard before they are caught up in the inevitably [*sic*] morass of delay in the MDL," is not at all consistent with the actual timing involved with the MDL transfer process.

Moreover, Plaintiffs' obvious disdain for the MDL Panel and Asbestos MDL Court, including their characterization of the Asbestos MDL Court as a "black hole," is completely irrelevant to this Court's consideration of the present Motion. Plaintiffs' criticisms of the MDL process ignore the fact that the MDL Panel was established, and that the MDL Courts were authorized, pursuant to federal law. Thus while Plaintiffs may dislike that Congress has given Defendants a statutory right of removal under 28 U.S.C. § 1441, and while Plaintiffs may be disdainful that such cases can be transferred to the Asbestos MDL Court pursuant to 28 U.S.C. § 1407, the fact remains that federal law controls these matters – not the wishes and preferences of the Plaintiffs or their counsel.

Additionally, it should be noted that, in Plaintiffs' attempt to convince this Court that another federal court poses a "serious and incontestable danger" to the Plaintiffs' case (P.'s

Memo 5), Plaintiffs have cited to nothing that would justify such a conclusion. First, without going into the merits of The Honorable Mark Davidson's comments about the MDL Court, the fact is that his opinion constitutes an unpublished, non-federal opinion from a different state, and thus has no precedential value whatsoever for the matter *sub judice*.

Second, Plaintiffs referenced an excerpt from Chief Judge Hornby's opinion from *In re Maine Asbestos Cases,* 44 F.Supp.2d 368, 374 n.2 (D.Me. 1999) out of context, thereby implying that Judge Hornby was critical of the MDL process. However, *In re Maine* was a case inapposite to this action, as it involved a removal based on diversity of citizenship, and hinged on whether one particular defendant had been fraudulently joined. None of those issues are applicable in the present matter. Moreover, the passage quoted by Plaintiffs was actually part of a longer footnote in which Judge Hornby attempted to explain the underlying motivations of the Parties, as the actions of both plaintiffs and defendants seemed to make little sense at first glance (with the plaintiffs suing a small Maine corporation that had little economic means and which would be unlikely to ever pay anything to plaintiffs, but with other co-defendants opposing the joinder of this additional corporation which potentially would have contributed another share for settlement or upon judgment, thereby reducing the individual payment of each co-defendant). Judge Hornby was not passing judgment on the Asbestos MDL Court; rather, he was explaining how economic realities were "driving the behavior of the parties in this matter." *Id.*

**D.      PLAINTIFFS UNREASONABLY EXPECTED A REPLY TO AN UNSIGNED CORRESPONDENCE.**

Plaintiffs' counsel transmitted an unsigned letter to counsel for Removing Defendants on October 8, 2007 (unsigned ltr. at Plaintiffs' Exhibit C), in which Plaintiffs essentially gave

Removing Defendants an ultimatum: either agree within two days to withdraw the Notice of Removal, or Plaintiffs "will have to file the Motion for Expedited Consideration . . ., as well as a Motion seeking fees pursuant to 28 U.S.C. 1447(c)." *See* Plaintiffs' Exhibit C. This letter further indicated that counsel was quite "troubled" by certain actions, which Plaintiffs' counsel implied were unethical. *Id.* ("I am very troubled by the representation in Paragraph 10 of the Notice of removal that all other defendants consented to the Removal;" . . . "the failure of the Notice of Removal to address the binding precedent of *Pratt v. Kelly* is very troubling"). However, as indicated in Removing Defendant's Response in Opposition to Plaintiffs' Motion for Remand, these contentions are completely unfounded. Moreover, Plaintiffs' counsel never contacted counsel for Removing Defendants by phone (as would normally occur for such informal interactions between the defense and plaintiffs' bars in Maryland asbestos litigation), but instead transmitted an *unsigned* letter by fax [a signed version was received only *after* the ultimatum deadline had passed]. As such, it seems unreasonable for Plaintiffs to have expected a response to an accusation-laden, unsigned letter with a two-day ultimatum deadline. Rather, Plaintiffs' "letter" did not warrant a response.

E.      DESPITE THEIR HYPERBOLE, PLAINTIFFS DO NOT HAVE A TRIAL DATE IN 2008.

Plaintiffs imply that they will quickly receive a trial if this case is remanded to State Court. However, Plaintiffs were never scheduled for trial in 2008, and it seems unlikely that the case would be tried before 2009 even if remanded to State Court. Although Plaintiffs filed a Motion to Consolidate this case into a pre-existing trial group (July 2008) prior to removal, this Motion was not yet ripe at the time of removal, and Defendants would be able to file oppositions

9

in event the case was remanded.  Further, given the short amount of time until the trial date requested by Plaintiffs (less than nine months), as well as the fact that practically no discovery has taken place, it should be expected that Plaintiffs' Motion to Consolidate would be vigorously opposed by a number of Defendants.

**F.     PLAINTIFFS' REQUEST FOR A RULING BY NOVEMBER 2 HAS NO RATIONAL BASIS, AND A RULING BY THAT DATE WOULD BE UNNECESSARILY HURRIED.**

Plaintiffs have asked this Court to make a ruling on their Motion for Remand by November 2, 2007.  However, there does not appear to be any logical reason for Plaintiffs advancing such a date; November 2 does not correspond to any filing deadline set by this Court or the MDL Panel, and it does not appear to correspond to any statutory deadlines or any other deadlines in the federal or Maryland rules.  Rather, November 2 appears to be an arbitrary date selected by Plaintiffs for some strategic reason.

Moreover, the Removing Defendants believe that a ruling "by November 2" would be very premature in the instant matter, as the Court has only recently received Removing Defendants' Response in Opposition to Plaintiffs' Motion for Remand.  Further, Plaintiffs still have until November 6, 2007 to file a Reply, and should that occur, Removing Defendants anticipate requesting leave to file a Surreply.  But even if Plaintiffs agreed to forego their Reply, it seems unreasonable for Plaintiffs to ask this Court to "rush" to make a decision in so short a time.  As discussed *supra*, there is almost no possibility that this case will be transferred to the Asbestos MDL Court within the next few months (assuming Plaintiffs file a Motion to Vacate); however, even if the action *was* transferred before a ruling could be made, the Asbestos MDL Judge could still consider the Motion for Remand.

Instead, the Removing Defendants request that this Court fully consider all of the issues before rendering any decision on Plaintiffs' Motion for Remand, as Removing Defendants are confident that the Court, upon fully reviewing both the Motion and the Response in Opposition thereto, will agree that this case was properly removed – both procedurally and from the standpoint of subject matter jurisdiction.   Additionally, it should be noted that Removing Defendants have requested a hearing in this matter; such a hearing would not be possible if the Court was to rule on Plaintiffs' Motion for Remand by November 2, 2007.

### III.   CONCLUSION

The U.S. District Court has original jurisdiction over this action under both federal enclave jurisdiction and 16 U.S.C. § 457 jurisdiction, and thus removal of this action was appropriate under 28 U.S.C. § 1441.   Further, Defendants fully adhered to the procedural requirements set forth in 28 U.S.C. §§ 1441 and 1446.   As such, the removal of this action was proper, and Plaintiffs' Motion for Remand (and Alternative Motion to Dismiss) should be denied on all procedural and substantive grounds.   To fully assess the issues involved, however, will likely require much longer than the date by which Plaintiffs have requested a ruling.   For these reasons, Plaintiffs' Motion for Expedited Consideration of Motion to Remand should be denied.

WHEREFORE, Removing Defendants respectfully request that this Court hold a hearing on this matter.

11

_____/s/_____
Philip A. Kulinski
Federal Bar # 27543

W. Thomas Lawrie
Federal Bar # 28226

EVERT WEATHERSBY HOUFF
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, MD  21202
Phone:  443-573-8500
Fax:     443-573-8501


Attorneys for:

CBS Corporation
Federated Development

CERTIFICATE OF SERVICE

I hereby certify that, on this 29th day of October, 2007, the foregoing Response to Plaintiffs' Motion for Expedited Consideration of Motion to Remand was electronically filed and served on all counsel of record.

/s/

W. Thomas Lawrie

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LEWIS SHIFFLETT, et ux.                    *

    Plaintiffs                           *

          v.                    *      Civil Action: 1:07-cv-02397-WDQ

AC&R INSULATION CO., INC., et al.,         *

    Defendants                           *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## ORDER

Upon consideration of Plaintiffs' Motion for Expedited Consideration of Motion to Remand, and of Removing Defendants' opposition thereto, it is, this _____ day of _____ 2007, by the United States District Court for the District of Maryland, hereby

**ORDERED** that Plaintiffs' Motion for Expedited Consideration of Motion to Remand is DENIED.

It is so ORDERED.

_____
    Date

_____
Judge William D. Quarles, Jr.
United States District Court
For the District of Maryland

# Exhibit 1

UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge John G. Heyburn II
United States District Court
Western District of Kentucky

**MEMBERS:**
Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

Judge Anthony J. Scirica
United States Court of Appeals
Third Circuit

**DIRECT REPLY TO:**
Jeffery N. Lüthi
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C.  20002

Telephone: [202] 502-2800
Fax:      [202] 502-2888
http://www.jpml.uscourts.gov

October 1, 2007

TO INVOLVED COUNSEL

Re:  MDL No. 875 -- IN RE: Asbestos Products Liability Litigation (No. VI)

(See Attached CTO-291)

Dear Counsel:

Attached hereto is a copy of a conditional transfer order filed today by the Panel involving the above-captioned matter.  This matter is transferred pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001).  Copies of Rule 5.2, dealing with service, and Rules 7.4 and 7.5, regarding "tag-along" actions, are attached for your convenience.

Inasmuch as there is an unavoidable time lag between notification of the pendency of the tag-along action and the filing of a conditional transfer order, counsel are required by Rule 7.4(b) to notify this office **BY FACSIMILE**, at (202) 502-2888, of any official changes in the status of the tag-along action.  These changes could involve dismissal of the action, remand to state court, transfer to another federal court, etc., as indicated by an order filed by the district court.  Your cooperation would be appreciated.

**NOTICE OF OPPOSITION DUE ON OR BEFORE: October 16, 2007**  (4 p.m. EST)
(Facsimile transmission is suggested.)

If you are considering opposing this conditional transfer order, please review Rules 7.4 and 7.5 of the Panel Rules before filing your Notice of Opposition.

A list of involved counsel is attached.

Very truly,

Jeffery N. Lüthi
Clerk of the Panel

By _Dana L. Stewart_
Deputy Clerk

Attachments

JPML Form 39

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT - 1 2007

FILED
CLERK'S OFFICE

# UNITED STATES JUDICIAL PANEL
on
## MULTIDISTRICT LITIGATION

IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)

MDL No. 875

(SEE ATTACHED SCHEDULE)

## CONDITIONAL TRANSFER ORDER (CTO-291)

On July 29, 1991, the Panel transferred 21,937 civil actions to the United States District Court for the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* 771 F.Supp. 415 (J.P.M.L. 1991). Since that time, 82,494 additional actions have been transferred to the Eastern District of Pennsylvania. With the consent of that court, all such actions have been assigned to the Honorable James T. Giles.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Eastern District of Pennsylvania and assigned to Judge Giles.

Pursuant to Rule 7.4 of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation</u>, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Eastern District of Pennsylvania for the reasons stated in the order of July 29, 1991, and, with the consent of that court, assigned to the Honorable James T. Giles.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Eastern District of Pennsylvania. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)                                          MDL No. 875

SCHEDULE CTO-291 - TAG-ALONG ACTIONS

| DIST. DIV. C.A. # | CASE CAPTION |
|---|---|

**CALIFORNIA NORTHERN**
CAN  3     07-4352          Jennifer S. Carolan, et al. v. General Electric Co.

**MARYLAND**
MD  1      07-2397          Lewis Shifflett, et al. v. AC&R Insulation Co., Inc., et al.

**NORTH CAROLINA EASTERN**
NCE  5     07-341           Judith Flynn Verret, et al. v. Anchor Packing Co., et al.
NCE  5     07-361           James B. Pridgen, et al. v. A.W. Chesterton Co., et al.

**NORTH CAROLINA MIDDLE**
NCM  1     07-556           William Jack Billings, et al. v. Aqua-Chem, Inc., et al.
NCM  1     07-557           Marvin Lucky Menius, et al. v. Aqua-Chem, Inc., et al.
NCM  1     07-558           John Stephen Litaker, et al. v. Aqua-Chem, Inc., et al.
NCM  1     07-681           Charles L. Vipperman v. A.W. Chesterton Co., et al.
NCM  1     07-684           Tony Fred Peacock, et al. v. Aqua-Chem, Inc., et al.
NCM  1     07-685           Henry Donald Heglar, et al. v. Aqua-Chem, Inc., et al.

**NORTH CAROLINA WESTERN**
NCW  1     07-299           Clarence B. Crotts, Jr. v. Aqua-Chem, Inc., et al.
NCW  1     07-300           Sally Lyton Gilleland, et al. v. Aqua-Chem, Inc., et al.
NCW  1     07-301           Richard Dennis Talbert, et al. v. Aqua-Chem, Inc., et al.

**SOUTH CAROLINA**
SC  0      07-3122          Bobby Ray Patrick, Sr., et al. v. Aqua-Chem, Inc., et al.
SC  8      07-3116          Henry R. Kirkland, et al. v. Aqua-Chem, Inc., et al.
SC  8      07-3117          Tony Allen Orr, et al. v. Aqua-Chem, Inc., et al.
SC  8      07-3119          Harold Timothy Crews, et al. v. Aqua-Chem, Inc., et al.
SC  8      07-3121          Donald Austin Gilstrap, et al. v. Aqua-Chem, Inc., et al.
SC  8      07-3123          Ricky Dean Wilkerson, et al. v. Aqua-Chem, Inc., et al.

**WASHINGTON WESTERN**
WAW  2     07-1454          Henry Barabin, et al. v. Albany International Corp., et al.

IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)                                    MDL No. 875

## INVOLVED COUNSEL LIST (CTO-291)

Richard Damon Albert
Steptoe & Johnson, LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036

David Foxwell Albright, Sr.
Law Offices of David F. Albright
1122 Kenilworth Drive
Suite 500
Baltimore, MD 21202

Steven A. Allen
Hodes, Pessin & Katz, PA
901 Dulaney Valley Road
Suite 400
Baltimore, MD 21204

Joshua H. Bennett
Bennett & Guthrie, P.L.L.C.
1560 Westbrook Plaza Drive
Winston-Salem, NC 27103

Thomas P. Bernier
Segal, McCambridge, Singer & Mahoney, Ltd.
One North Charles Street
Suite 2500
Baltimore, MD 21201

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Janet W. Black
Ward Black, P.A.
208 West Wendover Ave.
Greensboro, NC 27401-1307

Alan R. Brayton
Brayton Purcell, LLP
222 Rush Landing Road
Novato, CA 94948-6169

Malcolm S. Brisker
Goodell, DeVries, Leech & Dann, LLP.
One South Street
Alex Brown Building, 20th Floor
Balitmore, MD 21202

Scott Patrick Burns
Tydings & Rosenberg, LLP
100 East Pratt Street
26th Floor
Baltimore, MD 21202

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001

David A. Damico
Burns, White & Hickton, LLC
Four Northshore Center
106 Isabella Street
Pittsburgh, PA 15212

Paul Joseph Day
DLA Piper US, LLP
6225 Smith Avenue
Baltimore, MD 21209-3600

## MDL No. 875 - Involved Counsel List (CTO-291) (Continued)

Thomas L. Doran
DeCaro, Doran, Siciliano, Gallagher, et.al.
4601 Forbes Boulevard
Suite 200
P.O. Box 40
Lanham, MD 20703

George C. Doub, III
William H. Murphy, Jr. & Associates
12 West Madison Street
Baltimore, MD 21201

Katherine S. Duyer
Gavett & Datt, P.C.
15850 Crabbs Branch Way
Suite 180
Rockville, MD 20855

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106-2574

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Louis E. Grenzer, Jr.
Bodie, Nagle, Dolina, Smith & Hobbs, PA
21 W. Susquehanna Avenue
Towson, MD 21204

Susan M. Hansen
Brownson & Ballou
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

Derek Spencer Johnson
Sedgwick, Detert, Moran & Arnold, LLP
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, CA 94105

Jeannie P. Kauffman
Bacon Thornton & Palmer, LLP
Capital Office Park
6411 Ivy Lane, Suite 706
Greenbelt, MD 20770-1411

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308-1314

Philip A. Kulinski
Evert Weathersby Houff
120 E. Baltimore Street
Suite 1300
Baltimore, MD 21201

Carter T. Lambeth
Johnson & Lambeth
232 Princess Street
P.O. Box 660
Wilmington, NC 28402

David C. Landin
Hunton & Williams, LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
Locks Law Firm, LLC
1500 Walnut Street
Philadelphia, PA 19102

**MDL No. 875 - Involved Counsel List (CTO-291) (Continued)**

Steven Andrew Luxton
Edwards Burns & Krider LLP
201 North Charles Street
Suite 1402
Baltimore, MD 21201

Neil J. MacDonald
Hartel Kane Desantis MacDonald & Howie LLP
6301 Ivy Lane, Suite 800
Greenbelt, MD 20770

Christopher S. Marks
Williams, Kastner & Gibbs
P.O. Box 21926
Seattle, WA 98111-3926

Barry N. Mesher
Lane Powell, P.C.
1420 Fifth Avenue
Suite 4100
Seattle, WA 98101

Ronald L. Motley
Motley Rice, LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

Joel D. Newport
Moore & Jackson, LLC
305 Washington Avenue
Suite 401
Baltimore, MD 21204

Scott A. Niebling
Brayton Purcell, LLP
621 S.W. Morrison
Suite 955
Portland, OR 97205

Jeremy W. North
North & Cobb, P.A.
7313 York Road
Towson, MD 21204

Vincent J. Palmiotto
Miles & Stockbridge
10 Light Street
Baltimore, MD 21202

E. Spencer Parris
Martin & Jones
410 Glenwood Avenue
Suite 200
Raleigh, NC 27603

Steven J. Parrott
Dehay & Elliston, LLP
36 S. Charles Street
13th Floor
Baltimore, MD 21201

Scott Hamilton Phillips
Semmes, Bowen & Semmes
250 West Pratt Street
16th Floor
Baltimore, MD 21201

Michael A. Pichini
Goodell, DeVries, Leech & Dann, LLP.
One South Street
Alex Brown Building, 20th Floor
Baltimore, MD 21202

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney, PC
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

Page 4 of 5

**MDL No. 875 - Involved Counsel List (CTO-291) (Continued)**

Theodore F. Roberts
Venable, LLP
210 Allegheny Avenue
Towson, MD 21285-5517

John D. Roven
Roven-Kaplan, L.L.P.
2190 North Loop West
Suite 410
Houston, TX 77018

Jonathan Ruckdeschel
Ruckdeschel Law Firm, LLC
3645 Cragsmoor Rd.
Ellicott City, MD 21042

Rrichard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

David A. Seltzer
Wilson Elser Moskowitz Edelman & Dicker, LLP
1341 G Street N.W.
Suite 500
Washington, DC 20005-3105

G. William Shaw
Kirkpatrick & Lockhart Preston Gates Ellis, LLP
925 Fourth Avenue
Suite 2900
Seattle, WA 98104-1158

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli, L.L.P.
Centre Square West, 15th Floor
Philadelphia, PA 19102

Charles Monroe Sprinkle, III
Haynsworth Sinkler Boyd, P.A.
P.O. Box 2048
Greenville, SC 29602-2048

Deborah K. St. Lawrence
Brown & Sheehan, LLP
1010 Hull Street
Suite 300
Baltimore, MD 21230

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
645 Griswold Street
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226-4192

Jennifer M. Techman
Evert Weathersby & Houff, LLC
3405 Piedmont Road, N.E.
Suite 200
Atlanta, GA 30305

Mark S. Thomas
Williams Mullen Maupin Taylor
3200 Beechleaf Court
Suite 500
Raleigh, NC 27604

Andrew J. Trevelise
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Page 5 of 5

**MDL No. 875 - Involved Counsel List (CTO-291) (Continued)**

Keith R. Truffer
Royston, Mueller, McLean & Reid
102 W. Pennsylvania Avenue
Suite 600
Towson, MD 21204

Mona L. Wallace
Wallace & Graham, P.A.
525 North Main Street
Salisbury, NC 28144

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

Stephen B. Williamson
Van Winkle, Buck, Wall, Starnes & Davis, P.A.
11 N. Market Street
P.O. Box 7376
Ashville, NC 28802-7376

James T. Zois
Meringer, Zois & Quigg, LLC
300 East Lombard Street
Suite 1440
Baltimore, MD 21202

Case MDL No. 875   Document 5255   Filed 11/21/07   Page 296 of 398

RULE 7.4:    CONDITIONAL TRANSFER ORDERS FOR "TAG-ALONG ACTIONS"    Page 10 of 11
Case 1:07-cv-02397-WDQ    Document 150-3    Filed 10/29/2007    Page 10 of 11

(a)     Upon learning of the pendency of a potential "tag-along action," as defined in Rule 1.1 of these Rules, an order may be entered by the Clerk of the Panel transferring that action to the previously designated transferee district court on the basis of the prior hearing session(s) and for the reasons expressed in previous opinions and orders of the Panel in the litigation. The Clerk of the Panel shall serve this order on each party to the litigation but, in order to afford all parties the opportunity to oppose transfer, shall not send the order to the clerk of the transferee district court for fifteen days from the entry thereof.

(b)     Parties to an action subject to a conditional transfer order shall notify the Clerk of the Panel within the fifteen-day period if that action is no longer pending in its transferor district court.

(c)     Any party opposing the transfer shall file a notice of opposition with the Clerk of the Panel within the fifteen-day period. If a notice of opposition is received by the Clerk of the Panel within this fifteen-day period, the Clerk of the Panel shall not transmit said order to the clerk of the transferee district court until further order of the Panel. The Clerk of the Panel shall notify the parties of the briefing schedule.

(d)     Within fifteen days of the filing of its notice of opposition, the party opposing transfer shall file a motion to vacate the conditional transfer order and brief in support thereof. The Chairman of the Panel shall set the motion for the next appropriate hearing session of the Panel. Failure to file and serve a motion and brief shall be treated as withdrawal of the opposition and the Clerk of the Panel shall forthwith transmit the order to the clerk of the transferee district court.

(e)     Conditional transfer orders do not become effective unless and until they are filed with the clerk of the transferee district court.

(f)     Notices of opposition and motions to vacate such orders of the Panel and responses thereto shall be governed by Rules 5.12, 5.2, 7.1 and 7.2 of these Rules.

RULE 7.5:     MISCELLANEOUS PROVISIONS CONCERNING "TAG-ALONG ACTIONS"

(a)     Potential "tag-along actions" filed in the transferee district require no action on the part of the Panel and requests for assignment of such actions to the Section 1407 transferee judge should be made in accordance with local rules for the assignment of related actions.

(b)     Upon learning of the pendency of a potential "tag-along action" and having reasonable anticipation of opposition to transfer of that action, the Panel may direct the Clerk of the Panel to file a show cause order, in accordance with Rule 7.3 of these Rules, instead of a conditional transfer order.

(c)     Failure to serve one or more of the defendants in a potential "tag-along action" with the complaint and summons as required by Rule 4 of the Federal Rules of Civil Procedure does not preclude transfer of such action under Section 1407. Such failure, however, may be submitted by such a defendant as a basis for opposing the proposed transfer if prejudice can be shown. The inability of the Clerk of the Panel to serve a conditional transfer order on all plaintiffs or defendants or their counsel shall not render the transfer of the action void but can be submitted by such a party as a basis for moving to remand as to such party if prejudice can be shown.

(d)     A civil action apparently involving common questions of fact with actions under consideration by the Panel for transfer under Section 1407, which was either not included in a motion under Rule 7.2 of these Rules, or was included in such a motion that was filed too late to be included in the initial hearing session, will ordinarily be treated by the Panel as a potential "tag-along action."

(e)     Any party or counsel in actions previously transferred under Section 1407 or under consideration by the Panel for transfer under Section 1407 shall promptly notify the Clerk of the Panel of any potential "tag-along actions" in which that party is also named or in which that counsel appears.

RULE 5.2:    SERVICE OF PAPERS FILED

(a)    All papers filed with the Clerk of the Panel shall be accompanied by proof of previous or simultaneous service on all other parties in all actions involved in the litigation. Service and proof of service shall be made as provided in Rules 5 and 6 of the Federal Rules of Civil Procedure. The proof of service shall indicate the name and complete address of each person served and shall indicate the party represented by each. If a party is not represented by counsel, the proof of service shall indicate the name of the party and the party's last known address. The proof of service shall indicate why any person named as a party in a constituent complaint was not served with the Section 1407 pleading. The original proof of service shall be filed with the Clerk of the Panel and copies thereof shall be sent to each person included within the proof of service. After the "Panel Service List" described in subsection (d) of this Rule has been received from the Clerk of the Panel, the "Panel Service List" shall be utilized for service of responses to motions and all other filings. In such instances, the "Panel Service List" shall be attached to the proof of service and shall be supplemented in the proof of service in the event of the presence of additional parties or subsequent corrections relating to any party, counsel or address already on the "Panel Service List."

(b)    The proof of service pertaining to motions for transfer of actions pursuant to 28 U.S.C. §1407 shall certify that copies of the motions have been mailed or otherwise delivered for filing to the clerk of each district court in which an action is pending that will be affected by the motion. The proof of service pertaining to a motion for remand pursuant to 28 U.S.C. §1407 shall certify that a copy of the motion has been mailed or otherwise delivered for filing to the clerk of the Section 1407 transferee district court in which any action affected by the motion is pending.

(c)    Within eleven days of filing of a motion to transfer, an order to show cause or a conditional transfer order, each party or designated attorney shall notify the Clerk of the Panel, in writing, of the name and address of the attorney designated to receive service of all pleadings, notices, orders and other papers relating to practice before the Judicial Panel on Multidistrict Litigation. Only one attorney shall be designated for each party. Any party not represented by counsel shall be served by mailing such pleadings to the party's last known address. Requests for an extension of time to file the designation of attorney shall not be granted except in extraordinary circumstances.

(d)    In order to facilitate compliance with subsection (a) of this Rule, the Clerk of the Panel shall prepare and serve on all counsel and parties not represented by counsel, a "Panel Service List" containing the names and addresses of the designated attorneys and the party or parties they represent in the actions under consideration by the Panel and the names and addresses of the parties not represented by counsel in the actions under consideration by the Panel. After the "Panel Service List" has been received from the Clerk of the Panel, notice of subsequent corrections relating to any party, counsel or address on the "Panel Service List" shall be served on all other parties in all actions involved in the litigation.

(e)    If following transfer of any group of multidistrict litigation, the transferee district court appoints liaison counsel, this Rule shall be satisfied by serving each party in each affected action and all liaison counsel. Liaison counsel designated by the transferee district court shall receive copies of all Panel orders concerning their particular litigation and shall be responsible for distribution to the parties for whom he or she serves as liaison counsel.

# Exhibit 2

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | § | |
|---|---|---|
| IN RE ASBESTOS PRODUCTS | § | |
| LIABILITY LITIGATION (No. VI) | § | MDL DOCKET NO. 875 |
| | § | |
| | § | |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | § | |
|---|---|---|
| LEWIS SHIFFLETT, et ux., | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CASE NO.: 1:07-CV02397-WDQ |
| | § | |
| AC & R INSULATION CO, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## NOTICE OF OPPOSITION TO CONDITIONAL TRANSFER ORDER (CTO-291)

Plaintiffs, LEWIS SHIFFLETT and MAYBREY SHIFFLETT, by undersigned counsel,

hereby file this Opposition to Conditional Transfer Order (CTO-291), pursuant to Rule 7.4 (c) of

the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, and state as follows:

    1.    On July 19, 2007, Plaintiffs, LEWIS SHIFFLETT et ux., filed this case in the Circuit

Court for Baltimore City.

    2.    On September 7, 2007, Defendants removed the case to the Unites States District

Court for the District of Maryland.

3.    On September 14, 2007, Defendants filed a Notice of Tag-Along Action, seeking transfer of this case to the Multi-District Litigation in Philadelphia.

4.    On October 1, 2007, a Conditional Transfer Order was entered by the Judicial Panel on Multi-District Litigation provisionally ordering the transfer of this case to this court.

5.    On October 4, 2007, Plaintiffs filed a substantial Remand in the United States Court for the District of Maryland.

6.    Pursuant to Rule 7.4 (c) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiffs hereby notify the panel of their Objection to the Conditional Transfer Order.

7.    Plaintiffs will file a Motion to Vacate the Conditional Transfer Order within the time permitted.

WHEREFORE, Plaintiffs LEWIS SHIFFLET and MAYBREY SHIFFLETT respectfully file this Notice of Opposition to the Conditional Transfer.

Respectfully submitted,

Jonathan Ruckdeschel
Federal Bar Number: 25015
The Ruckdeschel Law Firm, LLC
5126 Dorsey Hall Drive, Suite 201
Ellicott City, Maryland 21042
Telephone: 410.884.7825
Fascimile: 443.586.0430
ruck@rucklawfirm.com

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Motion to Vacate the Conditional Transfer

Order has been served by facsimile to the Clerk of this Court pursuant to CTO-291 and upon all

counsel of record pursuant to Rule 5 of the Federal Rules of Civil Procedure, via first class mail,

postage pre-paid, on this 15th day of October 2007.

Jonathan Ruckdeschel

LEWIS SHIFFLETT, et ux., v. AC & R INSULATION CO, et al.
CASE NO.: 1:07-CV02397-WDQ
Counsel List

**Plaintiffs** Lewis & Maybrey Shifflett represented by **Jonathan Ruckdeschel**
The Ruckdeschel Law Firm LLC
5126 Dorsey Hall Drive, Ste 201
Ellicott City, MD 21042
14108847825
Fax: 14435830430
Email: ruck@rucklawfirm.com

**Defendant** A.C. & R. Insulation Co., Inc. represented by **Katherine S Duyer**
Gavett and Datt PC
15850 Crabbs Branch Way Ste 180
Rockville, MD 20855
13019481177
Fax: 13019484334
Email: kduyer@gavettdatt.com

**Defendant** A.O. Smith Corporation represented by **Thomas L Doran**
DeCaro Doran Siciliano Gallagher and DeBlasis LLP
4601 Forbes Blvd Ste 200 PO Box 40
Lanham, MD 20703
13013064300
Fax: 13013064988
Email: tdoran@decarodoran.com

**Defendant** Avco Corporation
*(for its Spencer-Lycoming Division)* represented by **Laura A Cellucci**
Miles and Stockbridge PC
10 Light St
Baltimore, MD 21202
14107276464
Fax: 14103853700
Email: lcellucci@milesstockbridge.com
**Vincent J Palmiotto**
Miles and Stockbridge PC
10 Light St
Baltimore, MD 21202
14103853858
Fax: 14103853700
Email: vpalmiotto@milesstockbridge.com

**Defendant** American Standard Inc. represented by **Theodore F Roberts**
Venable Baetjer and Howard LLP
210 Allegheny Ave
Towson, MD 21285
14104946200
Fax: 14108210147
Email: tfroberts@venable.com

LEWIS SHIFFLETT, et ux., v. AC & R INSULATION CO, et al.
CASE NO.: 1:07-CV02397-WDQ
Counsel List

**Defendant** Aqua-Chem, Inc. *doing business as* CLEAVER-BROOKS DIVISION
represented by Vincent J Palmiotto (see above for address)

**Defendant** A.W. Chesterton Company represented by **Keith R Truffer**
Royston Mueller McLean and Reid LLP
102 W Pennsylvania Ave Ste 600
Towson, MD 21204
14108231800
Fax: 14108287859
Email: ktruffer@rmmr.com

**Defendant** Boiler and Furnance Cleaners, Inc.
*as successor to J.E. HURLEY MACHINE AND BOILER WORKS, INC.*
*also known as*
Hurley Co. represented by **William J Hickey**
Law Offices of William J Hickey LLC
33 Wood Ln
Rockville, MD 20850
13014246300
Fax: 13012944568
Email: bill@hickeylegal.com

**Defendant** Bondex International, Inc. represented by **Jeannie Pittillo Kauffman**
Bacon Thornton and Palmer LLP
Capital Office Park
6411 Ivy Ln Ste 706
Greenbelt, MD 20770-1411
13013457001
Fax: 13013457075
Email: Jkauffman@lawbtp.com

**Defendant** CertainTeed Corporation represented by **Vincent J Palmiotto**
(See above for address)

**Defendant** CBS Corporation
*successor by merger to CBS Corporation*
*formerly known as*
Viacom, Inc.
*formerly known as*
Westinghouse Electric Corporation represented by **Philip A Kulinski**
Evert Weathersby Houff
120 E Baltimore St Ste 1300
Baltimore, MD 21201
14435738506
Fax: 14435738501
Email: PAKULINSKI@ewhlaw.com

LEWIS SHIFFLETT, et ux., v. AC & R INSULATION CO, et al.
CASE NO.: 1:07-CV02397-WDQ
Counsel List

**William Thomas Lawrie, Jr**
Evert Weathersby Houff
120 E Baltimore St Ste 1300
Baltimore, MD 21202
14435738500
Fax: 14435738501
Email: wtlawrie@ewhlaw.com

**Defendant** C.J. Coakley, Co., Inc. represented by **Malcolm Sean Brisker**
Goodell DeVries Leech and Dann LLP
One South St 20th Fl
Baltimore, MD 21202
14107834000
Fax: 14107834040
Email: msb@gdldlaw.com

**Defendant** Cleaver-Brooks Corporation represented by **Vincent J Palmiotto**
(See above for address)

**Defendant** Columbia Boiler Company represented by **Joel D Newport**
Moore and Jackson LLC
305 Washington Ave Ste 401
Baltimore, MD 21204
14105835241
Fax: 14105837519
Email: newport@moorejackson.com

**Defendant** Crane Company, Inc.
*(Individually and as successor to National-U.S. Radiator)* represented by **Neil J MacDonald**
Hartel Kane DeSantis MacDonald and Howie LLP
11720 Beltsville Dr Ste 500
Beltsville, MD 20705
13014861200
Fax: 13014860935
Email: nmacdonald@hartelkane.com

**Defendant** Crown Cork & Seal Company, Inc. represented by **Theodore F Roberts**
(See above for address)

**Defendant** Crown Cork & Seal USA, Inc. represented by **Theodore F Roberts**
(See above for address)

**Defendant** Daimler Chrysler Corporation represented by **Deborah K St Lawrence**
Brown and Sheehan LLP
1010 Hull St Ste 300
Baltimore, MD 21230
14102968500
Fax: 14102961559
Email: dstlawrence@brownsheehan.com

LEWIS SHIFFLETT, et ux., v. AC & R INSULATION CO, et al.
CASE NO.: 1:07-CV02397-WDQ
Counsel List

**Defendant Dorr-Oliver Incorporated**
*As Successor to Keeler/Dorr-Oliver Boiler Company* represented by **Katherine S Duyer**
(See above for address)

**Defendant Federated Development Company**
*(as Successor to National-U.S. Radiator)* represented by **Philip A Kulinski**
(See above for address)
**William Thomas Lawrie, Jr**
(See above for address)

**Defendant Ford Motor Company** represented by **Paul Joseph Day**
DLA Piper US LLP
6225 Smith Ave
Baltimore, MD 21209-3600
14105803000
Fax: 14105803001
Email: paul.day@dlapiper.com

**Defendant Foster-Wheeler LLC** represented by **Steven J Parrott**
Dehay and Elliston LLP
36 S Charles St Ste 1300
Baltimore, MD 21201
14107837225
Fax: 14107837221
Email: sj@dehay.com

**Defendant Foster Wheeler Energy Corp.** represented by **Steven J Parrott**
(See above for address)

**Defendant General Electric Company** represented by **James T Zois**
Meringer, Zois & Quigg, LLC
300 E Lombard St Ste 1440
Baltimore, MD 21202
14435247978
Fax: 14435247982
Email: jzois@meringerlaw.com
**David J Quigg**
Meringer Zois & Quigg, LLC
300 E Lombard St Ste 1440
Baltimore, MD 21202
14435297978
Fax: 14435297982
Email: dquigg@meringerlaw.com

**Defendant General Motors Corporation** represented by **Paul Joseph Day**
(See above for address)

LEWIS SHIFFLETT, et ux., v. AC & R INSULATION CO, et al.
CASE NO.: 1:07-CV02397-WDQ
Counsel List

**Defendant General Refractories Co.** represented by **Jeremy W North**
North and Cobb PA
7313 York Rd
Towson, MD 21204
141082? ?2
Fax: 141 3217064

**Defendant Georgia-Pacific Corporation** represented by **Laura A Cellucci**
(See above for address)
**Vincent J Palmiotto**
(See above for address)

**Defendant H.B. Smith Company, Inc.**
*also known as*
Smith Iron Boilers represented by **David Foxwell Albright, Sr**
Law Office of David F Albright
1122 Kenilworth Dr Ste 500
Baltimore, MD 21204
141024? ?350
Fax: 1410 5235453
Email: albright@verizon.net

**Defendant Honeywell International, Inc.** represented by **George C Doub, III**
George C Doub PC
12 W ?n St
Baltimore, MD 21201-5231
14105?? ?00
Fax: 1? ?374465
Email: doubiii@att.net

**Defendant J.E. Hurley and Boiler Works, Inc.** represented by **William J Hickey**
(See above for address)

**Defendant Hurley Company**
*as su?*
? to J.E. Hurley Machine and Boiler Works, Inc.* represented by **William J Hickey**
(See ? for address)

**Defendant Kaiser Gypsum Company, Inc.** represented by **Joel D Newport**
(See ? for address)

**Defendant Kelly-Moore Paint Co., Inc.** represented by **Neil J MacDonald**
(See ? for address)

**Defendant CIC, Inc.**
*formerly known as*
McCormick Asbestos Co. represented by **Louis E Grenzer, Jr**
Bodie Nagle Dolina Smith and Hobbs PA
21 W Susquehanna Ave
Towson, MD 21204
14108? ?0
Fax: ? ?0432
Email: grenzer@bodienagle.com

LEWIS SHIFFLETT, et ux., v. AC & R INSULATION CO, et al.
CASE NO.: 1:07-CV02397-WDQ
Counsel List

**Defe**      **Mestek, Inc.**
*Indi*     *s Successor in interest to H.B. SMITH COMPANY, INC.*
*also*
Smi   st   n Boilers represented by **Elizabeth Johanna Gibbon**
McC      English LLP
245 I      27th Fl
New        10167
1212    8(
Fax:      921
Ema     @mccarter.com

**Def**      **etropolitan Life Insurance Co.** represented by **Richard Damon Albert**
Ste    nc  ohnson LLP
1330     nc  cut Ave NW
Wash    or   C 20036
1202
Fax:    24.  3902
Emai    b    @steptoe.com

**Defc**    **land Company** represented by **Scott Hamilton Phillips**
Sen      en and Semmes PC
250        16th Fl
Bal      21201
1410     7
Fax:      5  223
Email    ni    @semmes.com

**Defe**    **kfabco, Inc.** *as successor-in-interest by merger to*
*KEW*   *E*   *DILER CORPORATION* represented by **David A Seltzer**
Wils        skowitz Edelman and Dicker LLP
134        Ste 500
The       Bldg
Wa        C 20005-3105
1202
Fax:      6  606
Email   vi   eltzer@wilsonelser.com

**Defe**    **Okonite Company** represented by **Steven J Parrott**
(See       address)

**Def**    **ens-Illinois, Inc.** represented by **Steven Andrew Luxton**
Mo        Bockius LLP
111       nia Avenue, N.W.
Wa        C 20004
202.7
Fax:    7   01
Email   ix   @morganlewis.com

**Def**    **umo Abex LLC** represented by **Steven J Parrott**
(Se       address)

LEWIS SHIFFLETT, et ux., v. AC & R INSULATION CO, et al.
CASE NO.: 1:07-CV02397-WDQ
Counsel List

**Def** ... F omac Electric Power Company represented by **Steven A Allen**
Hoc ... nd Katz PA
901 ... alley Rd Ste 400
Tows ... 1204
1410 ... ...
Fax: ... 98 ... 302
Emai ... hpklegal.com

**Defend** ... id American Corporation represented by **Theodore F Roberts**
(See ... address)

**Def** ... y Stoker Corporation
also ... Babcock Borsig Power, Inc. represented by **Steven J Parrott**
(Sec ... address)

**Defe** ... Rockbestos Company represented by **Malcolm Sean Brisker**
(Se ... address)

**Def** ... M, Inc. also known as **Republic Powdered Metals, Inc.**
Ind ... as successor To, alter ego or, otherwise responsible for The Reardon Company and
Bor ... tional represented by **Jeannie Pittillo Kauffman**
(Se ... address)

**Def** ... M, International Inc.
Indi ... as successor to, alter ego or, otherwise responsible for the Reardon Company and
Bor ... tional, Inc. represented by **Jeannie Pittillo Kauffman**
(Se ... address)

**Def** ... erior Boiler Works, Inc. represented by **Robin Silver**
Mil ... bridge PC
10 ... 
Bal ... 1202
141 ...
Fa ... 00
Em ... milesstockbridge.com
Vin ... iotto
(Se ... address)

**Def** ... lan ... Agriculture & Nutrition, LLC
Ina ... rall ... as successor to Thompson Hayward Chemical Company, Inc. represented by **Vincent J**
Pal ... tto
(Se ... ov ... address)

**Def** ... s. Somerville Co. represented by **Scott Patrick Burns**
Tyc ... senberg LLP
10C ... 6th Fl
Bal ... 1202
141C ...
Fa ... 107 ... 60
Em ... bu ... rdingslaw.com

LEWIS SHIFFLETT, et ux., v. AC & R INSULATION CO, et al.
CASE NO.: 1:07-CV02397-WDQ
Counsel List

**Def___ ___nt___ ___ion Carbide Corporation** represented by **Steven J Parrott**
(Se___ ov___ ___ address)

**Def___ ___il-McLain, Inc.** represented by **Thomas Peter Bernier**
Seg___ ___ ___ridge Singer and Mahoney Ltd
One ___ ___ St Ste 2500
Balt___ ___ 21201
141___ 939___
Fax___ ___107 ___967
Ema___ ___TB___ ___r@smsm.com
**Rob___ W___ ___n Sullivan, IV**
Seg___ ___c ___ ___ridge Singer and Mahoney Ltd
217 ___ ___ ___d St 21st Fl
Balt___ ___ 21202
141___
Fax___ ___967
Ema___ ___ ___@smsm.com

**Def___ ___an___ ___e Walter E. Campbell Company, Inc.** represented by **Thomas Peter Bernier**
(Se___ ov___ ___ address)
**Ric___ ___ ___ Flax**
Law ___ ___ s ___ Richard L Flax LLC
29 V___ ___ ___ehanna Ave Ste 500
Balt___ ___ 21204
141___
Fax___ ___ ___16
Ema___ ___ ___x@zgf-law.com

**Def___ ___ ___n Industries, Inc.**
also ___
(a/k___ ___ ___cessor-By-Merger to ERIE CITY IRON WORKS) represented by **Michael A Pichini**
Goo___ ___ ___s Leech and Dann LLP
One ___ ___0th Fl
Balt___ ___ 21202
141___
Fax___ ___ ___40
Ema___ ___ ___law.com

# Exhibit 3

# UNITED STATES JUDICIAL PANEL

on

## MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge John G. Heyburn II
United States District Court
Western District of Kentucky

**MEMBERS:**
Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

Judge Anthony J. Scirica
United States Court of Appeals
Third Circuit

**DIRECT REPLY TO:**

Jeffery N. Lüthi
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:         [202] 502-2888
http://www.jpml.uscourts.gov

October 16, 2007

Jonathan Ruckdeschel, Esq.
Ruckdeschel Law Firm, LLC
5126 Dorsey Hall Drive
Suite 201
Ellicott City, MD 21042

Re:  MDL No. 875 -- IN RE: Asbestos Products Liability Litigation (No. VI)

      Lewis Shifflett, et al. v. AC&R Insulation Co., Inc., et al., D. Maryland, C.A. No. 1:07-2397
          (Judge William D. Quarles, Jr.)

Motion and Brief Due on or before:  **October 31, 2007**

Dear Mr. Ruckdeschel:

     We have received and filed your Notice of Opposition to the proposed transfer of the referenced matter for coordinated or consolidated pretrial proceedings. In accordance with Rule 7.4(c) of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation</u>, 199 F.R.D. 425, 435 (2001), the conditional transfer order is stayed until further order of the Panel. You must adhere to the following filing requirements:

1)    **Your Motion and Brief to Vacate the Conditional Transfer Order must be received in the Panel office by the due date listed above. An ORIGINAL and FOUR copies of all pleadings, as well as a COMPUTER GENERATED DISK of the pleading in Adobe Acrobat (PDF) format, are currently required for filing. Fax transmission of your motion and brief will not be accepted.** *See* **Panel Rule 5.12(d). Counsel filing oppositions in more than one action are encouraged to consider filing a single motion and brief with an attached schedule of actions.**

2)    **Papers must be served on the enclosed Panel Service List. Please attach a copy of this list to your certificate of service.** (Counsel who have subsequently made appearances in your action should be added to your certificate of service).

3)    **Rule 5.3 corporate disclosure statements are due within 11 days of the filing of the motion to vacate.**

4)    **Failure to file and serve the required motion and brief within the allotted 15 days will be considered a withdrawal of the opposition and the stay of the conditional transfer order will be lifted.**

Any recent official change in the status of a referenced matter should be brought to the attention of the clerk's office as soon as possible by facsimile at (202) 502-2888.  Your cooperation would be appreciated.

Very truly,

Jeffery N. Lüthi
Clerk of the Panel

By _Dana P. Stewart_
Deputy Clerk

Enclosure

cc:    Panel Service List
       Transferee Judge:    Judge James T. Giles
       Transferor Judge:    Judge William D. Quarles, Jr.

JPML Form 37

IN RE: Asbestos Products Liability
Litigation (No. VI)                                                      MDL No. 875

## PANEL SERVICE LIST (Excerpted from CTO-291)

Lewis Shifflett, et al. v. AC&R Insulation Co., Inc., et al., D. Maryland, C.A. No. 1:07-2397
(Judge William D. Quarles, Jr.)

Richard Damon Albert
Steptoe & Johnson, LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036

David Foxwell Albright Sr.
Law Offices of David F. Albright
1122 Kenilworth Drive
Suite 500
Baltimore, MD 21202

Steven A. Allen
Hodes, Pessin & Katz, PA
901 Dulaney Valley Road
Suite 400
Baltimore, MD 21204

Thomas P. Bernier
Segal, McCambridge, Singer & Mahoney, Ltd.
One North Charles Street
Suite 2500
Baltimore, MD 21201

Richard C. Binzley
Thompson Hine, LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Malcolm S. Brisker
Goodell, DeVries, Leech & Dann, LLP
One South Street
Alex Brown Building, 20th Floor
Balitmore, MD 21202

Scott Patrick Burns
Tydings & Rosenberg, LLP
100 East Pratt Street
26th Floor
Baltimore, MD 21202

Edward J. Cass
Gallagher, Sharp, Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001

David A. Damico
Burns, White & Hickton, LLC
Four Northshore Center
106 Isabella Street
Pittsburgh, PA 15212

Paul Joseph Day
DLA Piper US, LLP
6225 Smith Avenue
Baltimore, MD 21209-3600

Thomas L. Doran
DeCaro, Doran, Siciliano, Gallagher, et.al.
4601 Forbes Boulevard
Suite 200
P.O. Box 40
Lanham, MD 20703

**MDL No. 875 - Panel Service List (Excerpted from CTO-291) (Continued)**

George C. Doub, III
William H. Murphy, Jr. & Associates
12 West Madison Street
Baltimore, MD 21201

Katherine S. Duyer
Gavett & Datt, P.C.
15850 Crabbs Branch Way
Suite 180
Rockville, MD 20855

Richard L. Flax
Law Offices Of Richard L. Flax LLC
29 West Susquehanna Avenue
Suite 500
Baltimore, MD 21201

Raymond P. Forceno
Forceno & Hannon
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106-2574

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Elizabeth J. Gibbon
McCarter & English, LLP
245 Park Avenue
27th Floor
New York, NY 10167

Louis E. Grenzer, Jr.
Bodie, Nagle, Dolina, Smith & Hobbs, PA
21 W. Susquehanna Avenue
Towson, MD 21204

Susan M. Hansen
Brownson & Ballou
225 South Sixth Street, Suite 4800
Minneapolis, MN 55402

William J. Hickey
Law Offices of William J. Hickey LLC
33 Wood Lane
Rockville, MD 20850

Jeannie P. Kauffman
Bacon Thornton & Palmer, LLP
Capital Office Park
6411 Ivy Lane, Suite 706
Greenbelt, MD 20770-1411

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308-1314

Philip A. Kulinski
Evert Weathersby Houff
120 E. Baltimore Street
Suite 1300
Baltimore, MD 21201

David C. Landin
Hunton & Williams, LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
Locks Law Firm, LLC
1500 Walnut Street
Philadelphia, PA 19102

Steven Andrew Luxton
Edwards Burns & Krider LLP
201 North Charles Street, Suite 1402
Baltimore, MD 21201

Neil J. MacDonald
Hartel Kane Desantis MacDonald & Howie LLP
6301 Ivy Lane, Suite 800
Greenbelt, MD 20770

**MDL No. 875 - Panel Service List (Excerpted from CTO-291) (Continued)**

Ronald L. Motley
Motley Rice, LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

Joel D. Newport
Moore & Jackson, LLC
305 Washington Avenue
Suite 401
Baltimore, MD 21204

Jeremy W. North
North & Cobb, P.A.
7313 York Road
Towson, MD 21204

Vincent J. Palmiotto
Miles & Stockbridge
10 Light Street
Baltimore, MD 21202

Steven J. Parrott
Dehay & Elliston, LLP
36 S. Charles Street
13th Floor
Baltimore, MD 21201

Scott Hamilton Phillips
Semmes, Bowen & Semmes
250 West Pratt Street
16th Floor
Baltimore, MD 21201

Michael A. Pichini
Goodell, DeVries, Leech & Dann, LLP
One South Street
Alex Brown Building, 20th Floor
Balitmore, MD 21202

John J. Repcheck
Marks, O'Neill, O'Brien & Courtney, PC
3200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

Theodore F. Roberts
Venable, LLP
210 Allegheny Avenue
Towson, MD 21285-5517

John D. Roven
Roven-Kaplan, L.L.P.
2190 North Loop West
Suite 410
Houston, TX 77018

Jonathan Ruckdeschel
Ruckdeschel Law Firm, LLC
5126 Dorsey Hall Drive
Suite 201
Ellicott City, MD 21042

Richard D. Schuster
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008

Neil Selman
Selman, Breitman & Burgess
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

David A. Seltzer
Wilson Elser Moskowitz Edelman & Dicker, LLP
1341 G Street N.W.
Suite 500
Washington, DC 20005-3105

Robert N. Spinelli
Kelley, Jasons, McGuire & Spinelli, L.L.P.
Centre Square West
15th Floor
Philadelphia, PA 19102

Deborah K. St. Lawrence
Brown & Sheehan, LLP
1010 Hull Street, Suite 300
Baltimore, MD 21230

**MDL No. 875 - Panel Service List (Excerpted from CTO-291) (Continued)**

Robert E. Swickle
Jaques Admiralty Law Firm, P.C.
1370 Penobscot Building
645 Griwsold Street
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226-4192

Andrew J. Trevelise
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA

Keith R. Truffer
Royston, Mueller, McLean & Reid
102 W. Pennsylvania Avenue
Suite 600
Towson, MD 21204

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

James T. Zois
Meringer, Zois & Quigg, LLC
300 East Lombard Street
Suite 1440
Baltimore, MD 21202

# Exhibit 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LEWIS SHIFFLETT, et ux.          *

      Plaintiffs          *

          v.          *          Civil Action: 1:07-cv-02397-WDQ

AC&R INSULATION CO., INC., et al.,          *

      Defendants          *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## REMOVING DEFENDANTS' MOTION
## FOR LEAVE TO FILE SURREPLY MEMORANDUM

      Defendant CBS Corporation, a Delaware corporation, f/k/a Viacom Inc., successor by merger to CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation [hereinafter "CBS Corporation"], and the Defendant named as Federated Development Company, a Texas corporation merged into Federated Development, LLC, a Delaware limited liability company [hereinafter "Federated Development"], [CBS Corporation and Federated Development collectively hereinafter "Removing Defendants"], by their undersigned counsel, pursuant to Local Rule 105.2a, hereby move this Court for leave to file the attached Surreply Memorandum in response to Plaintiffs' Memorandum in Reply to Removing Defendants' Opposition to Plaintiffs' Motion for Remand [hereinafter "Reply"], and in support thereof state the following:

      Plaintiffs have alleged certain matters for the first time in their Reply, and thus Removing Defendants have not had the opportunity to respond to and brief these matters. Therefore, in order

to supplement and correct the record on these issues, Removing Defendants request leave to address these new contentions raised by Plaintiffs.

WHEREFORE, CBS Corporation and Federated Development respectfully request that this Court grant Removing Defendants' Motion for Leave to File Surreply Memorandum.

_____/s/_____

Philip A. Kulinski
Federal Bar # 27543

W. Thomas Lawrie
Federal Bar # 28226

EVERT WEATHERSBY HOUFF
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, MD  21202
Phone:  443-573-8500
Fax:     443-573-8501

Attorneys for:
CBS Corporation
Federated Development

## CERTIFICATE OF SERVICE

I hereby certify that, on this 8th day of November, 2007, the foregoing Motion for Leave to File Surreply Memorandum, as well as the proposed Surreply Memorandum and accompanying Exhibits thereto, were electronically filed and served on all counsel of record.

_____/s/_____
W. Thomas Lawrie

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LEWIS SHIFFLETT, et ux.                    *

      Plaintiffs                    *

          v.                    *        Civil Action:  1:07-cv-02397-WDQ

AC&R INSULATION CO., INC., et al.,        *

      Defendants                    *

*    *    *    *    *    *    *    *    *    *    *    *    *

## SURREPLY MEMORANDUM

Defendant CBS Corporation, a Delaware corporation, f/k/a Viacom Inc., successor by merger to CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation [hereinafter "CBS Corporation"], and the Defendant named as Federated Development Company, a Texas corporation merged into Federated Development, LLC, a Delaware limited liability company [hereinafter "Federated Development"], [CBS Corporation and Federated Development collectively hereinafter "Removing Defendants"], by their undersigned counsel, in surreply to Plaintiffs' Memorandum in Reply to Removing Defendants' Opposition to Plaintiffs' Motion for Remand [hereinafter "Plaintiffs' Reply"], state the following:

A.    REMOVING DEFENDANTS FULLY COMPLIED WITH ALL REQUIREMENTS FOR REMOVAL.

Removing Defendants fully complied with all statutory, procedural requirements for removal of this action, and submitted a Notice of Removal containing a colorable claim of removability.  These matters were discussed at length in Removing Defendants' Response in Opposition to Plaintiffs' Motion for Remand.  As such, no surreply is necessary to Plaintiffs' *ad hominem* arguments.

**B.**     **THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THE PRESENT ACTION.**

Despite Plaintiffs' assertions to the contrary, Removing Defendants have sufficiently demonstrated original federal court jurisdiction over *each* of the federal enclaves discussed by Removing Defendants in their Notice of Removal and in their Response in Opposition to Plaintiffs' Motion for Remand [hereinafter "Response in Opposition"], any one of which would have been sufficient to confer "removal jurisdiction" (or subject matter jurisdiction) on this Court:

1.     The National Institutes of Health ["NIH"] was an exclusive federal enclave during the entire period of Mr. Shifflett's alleged exposure.

Plaintiffs have not disputed that NIH has been an exclusive federal enclave since at least 1955.  Rather, Plaintiffs argue that it is possible that Plaintiffs' exposures at NIH were confined to the years before NIH became an exclusive federal enclave in 1955, and thus federal jurisdiction has not sufficiently been established. (P.'s Reply 17.)  However, this argument is unsupported by the facts of this case.  The Affidavit of Lewis Shifflett, dated September 18, 2007, states that he only worked at NIH while "working for an electric company." (L. Shifflett Affidavit 3) (at **Exhibit 1**).[1] From the employment history provided in Plaintiffs' Answers to Defendants' Master Set of Interrogatories, Plaintiffs sworn Answer to Interrogatory No. 9 (at **Exhibit 2**) clearly indicates that

---

[1] Removing Defendants continue to assert that Plaintiffs' Affidavits, submitted after removal in support of their Motion for Remand, cannot be considered for the disclaimers or new allegations contained therein in order to defeat removal jurisdiction; the Defendants are entitled to rely on the "four corners" of the Complaint or other papers that had been provided to Defendants at the time of removal. *Lovern v. General Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997); *Harris v. Bankers Life and Casualty Company*, 425 F.3d 689, 694 (9th Cir. 2005); *Foster v. Mutual Fire, Marine & Inland Ins. Co.*, 986 F.2d 48, 53-54 (3d. Cir. 1993); *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992).  Thus once an action has been removed to federal court, a plaintiff is not permitted to supplement the record in an effort to defeat the removal and secure a remand; instead, in assessing removal jurisdiction, the Court should only consider that which was known to the defendant at the time of removal.  This result is logical, considering that removal jurisdiction attaches at the time of removal, and subsequent events cannot deprive the federal district court of jurisdiction. *Harding v. U.S. Figure Skating Ass'n,* 851 F.Supp. 1476, 1481 (D.Or. 1994) (citing to *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 292-93 (1938)).

However, Plaintiffs' Affidavits *can* be used by Removing Defendants in the present matter; these Affidavits constitute Plaintiffs' admissions against interest, and thus can be used by Defendants to clarify any ostensible ambiguities [now claimed by Plaintiffs] as to the meaning of those allegations made by Plaintiffs *prior* to removal.

Mr. Shifflett first worked as an electrician for electrical contractors beginning in *1956* (for Zimmerman Electric, Inc.); he subsequently worked for a number of other electrical companies over the remainder of his career. However, prior to 1956, Plaintiffs state that Mr. Shifflett worked only in the field of plumbing and heating, and that he was employed by the following plumbing and heating companies: Martin Brothers Plumbing & Heating, James Plumbing and Heating Inc., and J.E. Hurley's Machine and Boiler Works.[2] *See* Exhibit 2.

Therefore, based on Mr. Shifflett's verified discovery responses, it is clear that Plaintiffs' alleged exposures at NIH (asserted in Plaintiffs' Answers to Interrogatories that were provided *prior* to removal) must have occurred *in 1956 or later* – the period when he was employed by electrical contractors. As such, during any of the years that Plaintiffs might have been exposed to asbestos at NIH, the property was unquestionably an exclusive federal enclave over which the U.S. District Courts have original jurisdiction.

2.      Plaintiffs alleged exposures at Indian Head and Walter Reed were on lands constituting exclusive federal enclaves.

Rather than acknowledging that GSA's 1962 *Inventory Report* shows that several of the locations on which Plaintiffs have alleged exposure, including (but not limited to) the Indian Head naval facility and Walter Reed Army Medical Center, were federal enclaves over which the U.S. District Courts have original jurisdiction, Plaintiffs allege in their Reply that small, separate tracts of land, which the federal government acquired years or decades after the original enclave was established, somehow raise question as to whether Plaintiffs' alleged exposures occurred on the

---

[2] Plaintiffs' original pleadings confirm the fact that Mr. Shifflett worked as a boilermaker or helper for these companies, and not as an electrician; paragraph three (3) of the Complaint states that, "From the late 1940's through the early 1950's Lewis Shifflett was employed by Martin Brothers Plumbing and Heating and James Plumbing and Heating as a helper and J.E. Hurley Machine and Boiler Works and Capital Boiler as an [*sic*] boilermaker." (P.'s Complaint 11.)

3

original lands constituting exclusive federal enclaves or on the smaller, separate properties not

subject to original federal jurisdiction. In asserting this argument, Plaintiffs rely on an unreported

opinion issued by a magistrate judge from U.S. District Court for the Western District of New York

(*Zglinicki v. Armstrong International, Inc.*, Unreported Opinion, 07CV278S (W.D.N.Y. June 4,

2007)). However, this opinion not only lacks precedential value (as an unreported opinion from a

different circuit has no precedential value for the present action), while containing incorrect legal

analysis,[3] but the facts of the current matter are distinguishable from those presented in *Zglinicki*.

The decision in *Zglinicki* hinged, in part, on the magistrate's assessment of whether the

Plaintiff's alleged exposures at Langley Air Force Base in Virginia occurred on a 2,474 tract of

land acquired in 1942, or whether it occurred on 722 acres acquired between 1942 and 1959. *See*

*Zglinicki* Unreported Opinion at 22. The magistrate determined that, as it was unclear whether the

alleged exposures occurred on the original property (an exclusive federal enclave), or on the later-

---

[3] The magistrate erroneously indicated that federal enclave jurisdiction did not exist over a later-acquired parcel of land involving "concurrent legislative jurisdiction" (as compared with the original property, which involved "exclusive" jurisdiction). *See Zglinicki* Unreported Opinion at 22-23. However, as Removing Defendants in the present matter discussed in their Response in Opposition to Plaintiffs' Motion for Remand (at page 41, note 12), when assessing whether a case can be removed under 28 U.S.C. § 1441, the issue of whether a federal court's jurisdiction is exclusive or concurrent is wholly irrelevant; rather, the correct analysis focuses on whether the federal district court has original jurisdiction over an action, such as for § 1331 federal questions. In fact, the U.S. district courts have original jurisdiction over federal enclaves in both exclusive and concurrent jurisdictional situations. *See, e.g., Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 479, 483 n.12 (1981) (indicating that original federal jurisdiction is compatible with concurrent state court jurisdiction over causes of action arising under the outer Continental Shelf Lands Act; also stating: "Exclusive federal-court jurisdiction over a cause of action is unnecessary to protect the parties. The plaintiff may choose the available forum he prefers, and the defendant may remove the case if it could have been brought originally in a federal court."); *Mater v. Holley*, 200 F.2d 123, 124 (5th Cir. 1953) (deciding that a civil action arising on a federal fort "arises under the laws of the United States, within the meaning of 28 U.S.C. §1331," and that "federal jurisdiction is not affected by concurrent jurisdiction in state courts"). The opinion in *Zglinicki* subsequently shows the same analytical mistake with regard to Elmendorf and Campion Air Force bases in Alaska, erroneously stating that, because there was implied concurrent jurisdiction, federal enclave jurisdiction did not exist. (23-26). Even assuming *arguendo* that there was *only* concurrent jurisdiction as to all of the enclaves at issue, both federal and state courts would have had original jurisdiction, and defendants still had a statutory right of removal under 28 U.S.C. §1441 (which should not have been defeated by the state court's own original, concurrent jurisdiction).

acquired one, the removing defendant had failed to establish subject matter jurisdiction. This later-acquired land area represented approximately 23% of the 3,196 acres at issue as to Langley.

However, in the present action, unlike in *Zglinicki*, it is clear that Plaintiffs' alleged exposures occurred on exclusive federal enclaves. First, as to Indian Head, Plaintiffs in the present matter refer to a 55.6-acre [hereinafter "56-acre"] parcel of land that was acquired in 1945 – more than 50 years after the main 3,265.4-acre Indian Head naval facility was established (*see* Exhibit 21 to Removing Defendants' Response in Opposition). This small, later-acquired tract represents less than 2% of the 3,321 total acres at issue as to Indian Head, as compared with the much greater areas of land at issue in *Zglinicki*, which constituted nearly one-quarter of the total area of Langley. Further, Plaintiffs' verified discovery responses, which were served with Plaintiffs' Complaint, specifically alleged exposures in the Power Plant (or "Powerhouse") (*see* Answer No. 88, at **Exhibit 3**). The Power Plant at Indian Head refers to the Goddard Power Plant, which is the Indian Head naval facility's only operating power plant. *See* various references to the Power Plant at the following:  https://www.denix.osd.mil/denix/Public/News/Earthday97/Awards/Indian-head/Indian-head.html (last visited November 6, 2007); https://www.denix.osd.mil/denix/Public/News/Earthday99/Awards99/NAIndianHead/IndianHead.html (last visited November 6, 2007).

Moreover, the Power Plant is located on the Indian Head naval facility's Main Area, which consists of approximately 2,500 acres. *See, e.g., In the Matter of:  U.S. Department of the Navy, Naval Surface Warfare center, Indian Head Division, Indian Head, Md,* Federal Facility Agreement Under CERCLA Section 120, Administrative Docket Number: III-FCA-CERC-018, pp. 14-17, 21, 22 (December 9, 2000) (excerpt at **Exhibit 4**) (describing at length the federal property at Indian Head, including the Main Area of the facility, and then providing multiple references to the Power Plant in Section 6.2, "NSWC - IHDIV Main Area," on pages 21, 22) (full text available at

http://www.epa.gov/superfund/sites/iag/i01-03002.pdf) (last visited November 6, 2007).[4]   From this, it is clear that that the Indian Head Power Plant, at which Plaintiffs alleged exposure, is located on the large, original area of land acquired by the Navy in 1890 (over which the federal courts have original jurisdiction), and not on the separate, 56-acre property that was acquired decades later.

Second, as to Walter Reed, it is clear that Plaintiffs' alleged exposure at "Walter Reed" referred to the Walter Reed Army Medical Center, which is a hospital consisting of 113 acres of land in Washington, D.C. *See* the following: http://www.wramc.amedd.army.mil/visitors/ visitcenter/history/pages/default.aspx (last visited November 7, 2007);

http://www.wramc.amedd.army.mil/visitors/visitcenter/history/pages/dayinlife.aspx (last visited November 7, 2007).  This is an exclusive federal enclave over which the U.S. District Courts have original jurisdiction; Plaintiffs do not contest this point (*see* P.'s Reply 17-18).  However, Plaintiffs now claim (P.'s Reply 18) that their reference to "Walter Reed" in their Answers to Interrogatories could have meant exposure on Glen Haven, a small [20-acre] non-contiguous tract of land which the federal government acquired in 1947 (indicated in Exhibit 23 to Removing Defendants' Response in Opposition).  This property is located outside the Capital Beltway in Maryland, four (4) miles north of the Walter Reed Army Medical Center, and was acquired exclusively for the purposes of housing military personnel who worked at Walter Reed; it is considered off-post housing, and is referred to as "Glen Haven." *See* references to Glen Haven in the following: http://www.walterreed.amedd.army.mil/garrison/sites/directorates/downloads/GlenHaven_map.pdf (last visited November 6, 2007); http://www.walterreed.amedd.army.mil/garrison/sites/directorates/

---

[4] Additional references to Indian Head's Main Area of land can be seen at the following: http://www.epa.gov/reg3hscd/npl/MD7170024684.htm (last visited November 7, 2007); http://www.atsdr.cdc.gov/HAC/PHA/nsw/nsw_p1.html (last visited November 7, 2007); http://www.mde.state.md.us/assets/document/brownfields/Indian_Head_MD064.pdf (last visited November 7, 2007); *see also* http://www.atsdr.cdc.gov/HAC/PHA/nsw/nsw-f1.gif (last visited November 7, 2007).

dpw_rci.asp (last visited November 6, 2007); http://www.dcmilitary.com/special_sections/sw/ 012507_wrac/ss_182408_31946.shtml (last visited November 6, 2007). As such, even viewing these facts in a light most favorable to the Plaintiffs, it is inconceivable that Plaintiffs' reference to "Walter Reed" (a military hospital in Washington, DC) actually meant a separate housing facility outside the capital beltway at Glen Haven, Maryland. This interpretation is all the more unreasonable considering that Plaintiffs and their counsel are clearly familiar with the greater Washington, D.C. region and the surrounding communities.

However, even assuming *arguendo* that it was unclear whether Plaintiffs' allegations of exposure at "Walter Reed" referred to the hospital (an exclusive federal enclave) or to the separate Glen Haven housing facility, the Affidavit of Lewis Shifflett resolves any such doubt (assuming that such doubt existed, which it does not). This Affidavit clearly indicates that Mr. Shifflett was referring to a hospital. (L. Shifflett Affidavit 3-4.)[5] Therefore, Mr. Shifflett's allegations of exposure at "Walter Reed" referred to exposure at a hospital (i.e. the Walter Reed Army Medical Center), which is an exclusive federal enclave over which federal courts have original jurisdiction.

3. Removing Defendants properly asserted exposures on additional federal enclaves in their Response in Opposition to Plaintiffs' Motion for Remand.

Plaintiffs assert that Removing Defendants' arguments pertaining to alleged exposures on numerous additional federal enclaves constitute new grounds for removal, and thus cannot be considered by this Court. (P.'s Reply 18-20.) Plaintiffs' argument is unfounded for several reasons.

---

[5] Lewis Shifflett's Affidavit clearly demonstrates that Plaintiffs' allegations of exposure at "Walter Reed" (contained in Plaintiffs' papers submitted prior to removal and which were relied on by Defendants), referred to a *hospital* rather than to a housing facility. As discussed in note 1, *supra*, Removing Defendants are permitted to utilize the admissions in these Affidavits to clarify any perceived ambiguities [as claimed by Plaintiffs] in those allegations made by Plaintiffs prior to removal. However, Mr. Shifflett's assertion that he actually meant a different hospital (Bethesda Naval Hospital) or that he meant to say that he *wasn't* exposed at Bethesda (rather than stating that he *was* exposed at Walter Reed) cannot be considered, as these claims constitute new disclaimers and new factual allegations submitted *after* removal, and which were not contained in the "four corners" of the papers that Plaintiffs submitted prior to removal.

First, these additional alleged exposures that were noted by Removing Defendants (*see* Response in Opposition at 34-42) do not, in fact, constitute "new grounds" for removal, but rather supplement the same bases for removal previously asserted by Removing Defendants that were derived from Plaintiffs' sworn Answers to Interrogatories: federal enclave jurisdiction under federal question jurisdiction; and 16 U.S.C. § 457 jurisdiction.  However, even assuming *arguendo* that they *did* constitute new grounds, these additional federal enclaves can still be considered by this Court as evidence refuting the inaccurate assertions contained in Plaintiffs' Motion for Remand, whereby Plaintiffs drastically overstated the relative amount of alleged exposures on non-federal enclaves as compared with exposures on federal enclaves.  For examples, Plaintiffs erroneously claimed that, "[a]t most, three (3) of fifty two (52) jobsites (5.76%) identified by Mr. Shifflett are allege federal enclaves" (P.'s Motion 5).)]  Thus Plaintiffs repeated claims as to the percentage of alleged enclave and non-enclave sites of exposure are not only immaterial (as discussed at length in Removing Defendants' Response in Opposition, at 33-34), but the numbers and percentages cited by Plaintiffs are completely incorrect, evidenced by the numerous additional federal enclaves which Removing Defendants noted in their Response in Opposition.

For the reasons discussed above, removal of this action was proper, as this Court has original jurisdiction over Plaintiffs' claims arising on exclusive federal enclaves.

WHEREFORE, CBS Corporation and Federated Development respectfully request that this Court deny Plaintiffs' Motion for Remand.  Further, for the reasons stated in Removing Defendants' Response in Opposition to Plaintiffs' Motion for Remand, CBS Corporation and Federated Development respectfully request that this Court deny Plaintiffs' Alternative Motion to Dismiss Without Prejudice.

_____/s/_____

Philip A. Kulinski
Federal Bar # 27543

W. Thomas Lawrie
Federal Bar # 28226

EVERT WEATHERSBY HOUFF
SunTrust Bank Building
120 E. Baltimore Street, Suite 1300
Baltimore, MD  21202
Phone:  443-573-8500
Fax:    443-573-8501

Attorneys for:

CBS Corporation
Federated Development

# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CASE NO.: 1:07-CV02397-WDQ


LEWIS SHIFFLET, et ux.,                    (Circuit Court for Baltimore City
                                            Case No.: 24x07000313)
Plaintiffs,



v.

AC & R INSULATION CO., INC., et al,

        Defendants,

_____/

### AFFIDAVIT OF LEWIS SHIFFLETT

I, Lewis Shifflett, hereby depose and say:

1.      I am over the age of 18 and competent to testify regarding the maters set forth
in this Affidavit.

2.      In February 2007, I was diagnosed with malignant mesothelioma. I have been
informed by my doctors that there is no cure for mesothelioma.  After diagnosis, I was
informed that surgery was not an option for me.  I took three cycles of chemotherapy in the
hope of slowing the disease.  Unfortunately, the side effects from the chemotherapy were
unacceptable.  Currently, I am not receiving treatment for my disease.

3.      It is important to me to obtain a trial date in my lifetime.  I very much want
my day in Court.

1

4.    I have been informed that the Defendants have removed my case to the United States District Court for the District of Maryland on the alleged ground that the case arises from exposure on "federal enclaves". I understand that, if my case stays in federal court, it will be transferred to the Multi-District Litigation in Philadelphia and that it will take many months, if not years, to get the case sent back from Philadelphia. That result would be very disappointing to me as it would almost certainly mean that I will not be alive for my trial.

### DISCLAIMER OF CLAIMS REGARDING
### EXPOSURE ON ANY FEDERAL ENCLAVE

5.    To the extent that the Court considers there to be any validity to the Defendants' claims regarding exposure to asbestos on any "federal enclave", I hereby expressly disclaim every claim arising from any act or omission on any federal enclave.

### DISCLAIMER OF CLAIMS OTHERWISE
### GIVING RISE TO FEDERAL JURISDICTION

6.    I understand that the only grounds asserted for removal of my case to federal court is the Defendants' assertion of exposure on the three alleged "federal enclaves". It is very important to me to obtain a trial in my lifetime. Accordingly, so that we do not again end up in a situation like this were the Defendants have removed my case to federal court without proper justification, I hereby expressly disclaim any claims arising from the acts or omissions of any officer of the U.S. or any agency or person acting under him occurring under color of such office, other than failure to provide adequate warning of the dangerous propensity of the their products. I further expressly disclaim any other claims arising under the laws of the United States. I have no knowledge of any such claims or actions, but make this disclaimer to avoid any further unnecessary delays relating to federal court.

2

## REQUEST TO ALLOW DISMISSAL WITHOUT PREJUDICE

7.      To the extent that the Court is inclined to deny the Motion to Remand, or to not rule upon the Motion to Remand, for whatever reason, I request that the Court allow me to Dismiss my case, without prejudice, so that I can re-file the case in State Court as appropriate.

## DEFENDANTS' CLAIMS OF FEDERAL ENCLAVE EXPOSURE

8.      I understand that the Defendants are asserting that my Answer to Master Interrogatory No. 88 is a specific claim of exposure to asbestos at each of the jobsites listed. That characterization of the answer is not accurate. The Answer makes no such statement and instead, simply lists every jobsite I have been able to recall at this time. Regarding the three sites listed by the Defendants, I state the following:

   a. National Institutes of Health: The only time I worked at National Institutes of Health was while I was working for an electrical company. The only work I performed at NIH was installing wiring for computers and other machinery. The wiring was not insulated with asbestos nor did I work with or around any other asbestos containing product to my knowledge. The work was in existing buildings and there was no construction or other work being performed around me...I have no knowledge of any exposure to asbestos at N.I.H.

   b. Walter Reed Medical Center/Bethesda Naval Medical Center: I listed Walter Reed Medical Center as a work site in my Interrogatory Answer, referring to a facility on Wisconsin Avenue in Bethesda, Maryland. The facility to which

3

I was referring was, in fact, the Bethesda Naval Medical Center. I have never been at the Walter Reed Medical Center in Washington, D.C. My work at Bethesda Naval Medical Center was essentially the same as at NIH. The only work I performed was installing wiring for computers and other machinery. The wiring was not insulated with asbestos nor did I work with or around any other asbestos containing product to my knowledge. The work was in existing buildings and there was no construction or other work being performed around me...I have no knowledge of any exposure to asbestos at Bethesda Naval, Medical Center.

c.  Indian Head Power House:  While I worked at J.E. Hurley, the company had a job at Indian Head relating to a powerhouse. I do not know where on the Indian Head facility the powerhouse was/is located. The majority of the work for that job was performed at J.E. Hurley's facility in Washington, D.C. and was performed by others. My only connection to the job was driving a truck from the J.E. Hurley facility in Washington, D.C. to Indian Head to deliver materials. While I was briefly present at Indian Head to unload the truck, no other work was being performed around me at the site. I have no knowledge of being exposed to asbestos during the brief time I was at Indian Head.

4

## AFFIRMATION

I declare under penalties of perjury under the laws of the United States that the foregoing Affidavit is true and correct.


Executed On: Tuesday, September 18, 2007


Lewis Shifflett

Exhibit 2

EFiled
Aug 6 2007 11:03AMEDT
Transaction ID 15835036

## IN THE CIRCUIT COURT FOR BALTIMORE CITY

IN RE: BALTIMORE CITY      \*
       ASBESTOS LITIGATION    \*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

CASES AFFECTED:       \*

LEWIS SHIFFLETT       \*    Case No.: 24x07000313

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### PLAINTIFFS' ANSWERS TO DEFENDANTS' MASTER SET OF

### INTERROGATORIES

Plaintiff, Lewis Shifflett, by his undersigned attorneys, files this answer to the Master Interrogatories propounded by the Defendants, without waiving any objection as to the relevancy or admissibility of any of the information contained herein.

### INTRODUCTION

A.     The information supplied in these answers is not based solely on the knowledge of the Plaintiff, but includes the knowledge of the Plaintiff and his attorneys, unless privileged. The signature of the Plaintiff at the conclusion of these answers does not necessarily mean the Plaintiff has any personal knowledge as to any particular answer which is given.

B.     The word usage and sentence structure may be that of the attorney assisting in the preparation of these answers and thus does not necessarily purport to be the precise language of the Plaintiff.

C.     By responding to these Interrogatories, Plaintiff is not waiving any ground for objecting to the admissibility of the information.

### INTERROGATORIES
### PART ONE - DAMAGES

1.     State the following:

1

(a)     All names by which you have been known;

(b)     Your date and place of birth;

(c)     If deceased, date of death, place and location of death, and cause of death;

(d)     The date and place of each marriage and the name of each spouse; and

(e)     Social Security number.

Answer:     (a) Lewis B. Shifflett
            (b) 8/27/1933; Alexandria, Virginia
            (c) n/a
            (d) 8/9/1952; Alexandria, Virginia; Maybrey Shifflett
            (e) 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

2.     State the address of each place of residence that you have occupied from age 16 to date.

Answer:     1022 Cameron Street; Alexandria, VA

            Maple Street; Alexandria, VA

            2707 Hatcher Street; Alexandria, VA

            3113 Hatcher Street, Alexandria, VA

            3608 Old Bridge Road; Woodbridge, VA

            Rapidan Drive; Fredericksburg, VA

            6439 Perry Road; Lucama, NC

3.     State the names, ages, and present address of any children, identifying of which marriage, if by different marriages.

Answer:     Richard Shifflett

                Date of Birth: 3/19/53

                Address: Spotsylvania, VA

            David Shifflett

                Date of Birth: 6/29/56

                Address: Springfield, VA

            John Shifflett (adopted)

                Date of Birth: 7/7/64

                Address: Lucama, NC

2

4.    Identify all persons presently dependent upon you, or concerning whom you intend to make any claim in this lawsuit as to dependency, setting forth the inclusive dates of such dependency and the nature of such dependency, i.e., dependent, meaning financial support and maintenance or otherwise.  As to each dependent, set forth whether totally or partially dependent, and extent of any partial dependency.

Answer: Maybrey Shifflett

5.    Set forth completely your education, including public and private schooling, and/or specialized training for any trade or profession, stating the dates of attendance and grade or proficiency level attained.

Answer:    Mr. Shifflett attended Lee School for 1st-3rd grade, Jefferson Middle School for 4th-7th grade, and George Washington High School for 8th and 9th grade.

6.    Have you ever been a member of the armed forces of the United States?  If so, state the following:

(a)    The branch of the service, serial number, and the highest rank held;
(b)    The beginning and ending dates of your military service;
(c)    The type of discharge that you received;
(d)    Whether you were given a physical examination, which included x-rays, prior to the time you entered the service;
(e)    Whether you received any injury while in the military service;
(f)    Whether you sustained or incurred any illness while in the military service;
(g)    Whether you were given a physical examination which included x-rays upon leaving the service; and
(h)    Whether you claim disability for any injury or physical condition arising out of your military service, and, if so, the details thereof, including the date on which the claim was made, the nature of claim, the claimed disability, and the disability rating, if any was given you, and the compensation for such disability.

Answer: No.

7.    Have you ever been convicted of any crime other than minor traffic violations?  If so, for each conviction, state fully and in detail the date, place, docket number, and crime of which convicted.

Answer: No.

8.    State the periods during which you were exposed to asbestos fibers.

Answer: To the best of Plaintiff's belief, Plaintiff was exposed to asbestos fibers at various times during his working life, beginning in 1950 and continuing through his career as an electrician. Plaintiff was unaware at the time that many of the products to which he was exposed contained asbestos. Investigation into this topic continues.

9.    State the name and address of each employer for whom you have worked to date, stating as to each employer:

    (a)    The beginning and ending dates of employment;
    (b)    The nature of the business of the employer;
    (c)    The position held; and
    (d)    All occupational or incidental exposures to chemicals and/or dust, listing the types of chemical or dust involved and describing the process or dust involved.

Answer: Plaintiff is continuing to collect information regarding the specifics of his employment history. At this time, the following approximate employment history is available to Plaintiff:

Martin Brothers Plumbing & Heating; Arlington, VA
    a.    Approximately 1949 to 1949
    b.    Plumbing and Heating.
    c.    Helper.
    d.    Plaintiff worked with or around one or more of the following: boilers, pumps, turbines, machinery, piping, pipe covering, block insulation, cement, and welding rods. Plaintiff believes that some or all of these products may have contained asbestos.

James Plumbing and Heating Inc.; Alexandria, VA
    a.    Approximately 1949 to 1951
    b.    Plumbing and Heating.
    c.    Helper.
    d.    Plaintiff worked with or around one or more of the following: boilers, pumps, turbines, machinery, piping, pipe covering, block insulation, cement, and welding rods. Plaintiff believes that some or all of these products may have contained asbestos.

Capitol Boiler Works; Fairfax, VA

a.    Approximately 1951-1952
b.    Heating and Insulating and Repair.
c.    Boilermaker.
d.    Plaintiff worked with or around one or more of the following:
      boilers, pumps, turbines, machinery, piping, pipe covering, block
      insulation, cement, and welding rods.  Plaintiff believes that some
      or all of these products may have contained asbestos.

J.E. Hurley's Machine and Boiler Works; Washington, D.C.
a.    Approximately 1952-1956
b.    Heating and Insulating and Repair.
c.    Boilermaker.
d.    Plaintiff worked with or around one or more of the following:
      boilers, pumps, turbines, machinery, piping, pipe covering, block
      insulation, cement, and welding rods.  Plaintiff believes that some
      or all of these products may have contained asbestos.

Zimmerman Electric, Inc.; Washington, D.C.
a.    Approximately 1956-1956
b.    Electrical Contractors
c.    Electrician
d.    Plaintiff worked with or around one or more of the following:
      drywall joint compound, board, insulation, ductwork, electrical
      switches, wire, and cable, and other building materials.  Plaintiff
      believes that some of all of these products may have contained
      asbestos.

Capital Electric Company; Bladensburg, MD
a.    Approximately 1956-1960
b.    Electrical Contractors
c.    Electrician
d.    Plaintiff worked with or around one or more of the following:
      drywall, joint compound, board; thermal insulation, fireproofing,
      ductwork, electrical switches, wire, and cable, and other building
      materials.  Plaintiff believes that some of all of these products may
      have contained asbestos.

Neil Electric Company; Brentwood, MD
a.    Approximately 1960-1962
b.    Electrical Contractors
c.    Electrician
d.    Plaintiff worked with or around one or more of the following:
      drywall, joint compound, board, thermal insulation, fireproofing,

5

ductwork, electrical switches, wire, and cable, and other building materials. Plaintiff believes that some of all of these products may have contained asbestos.

R. E. Lee Electric Company, Inc.; Newington, VA
a. Approximately 1962-1963
b. Electrical Contractors
c. Electrician
d. Plaintiff worked with or around one or more of the following: drywall, joint compound, board, thermal insulation, fireproofing, ductwork, electrical switches, wire, and cable, and other building materials. Plaintiff believes that some of all of these products may have contained asbestos.

L.T. Bowden, Inc., Vienna, VA
a. Approximately 1963-1964
b. Electrical Contractors
c. Electrician
d. Plaintiff worked with or around one or more of the following: drywall, joint compound, board, thermal insulation, fireproofing, ductwork, electrical switches, wire, and cable, and other building materials. Plaintiff believes that some of all of these products may have contained asbestos.

Trovado Electric Company, Inc.; Vienna, VA
a. Approximately 1964-1965
b. Electrical Contractors
c. Electrician
d. Plaintiff worked with or around one or more of the following: drywall, joint compound, board, thermal insulation, fireproofing, ductwork, electrical switches, wire, and cable, and other building materials. Plaintiff believes that some of all of these products may have contained asbestos.

Bell Electric Company; Fairfax County, VA
a. Approximately 1964-1965
b. Electrical Contractors
c. Electrician
d. Plaintiff worked with or around one or more of the following: drywall, joint compound, board, thermal insulation, fireproofing, ductwork, electrical switches, wire, and cable, and other building materials. Plaintiff believes that some of all of these products may have contained asbestos.

Pel-Bern Electrical Contractors, Inc., Muirkirk, Md
a.     Approximately 1965-1966
b.     Electrical Contractors
c.     Electrician
d.     Plaintiff worked with or around one or more of the following: drywall, joint compound, board, thermal insulation, fireproofing, ductwork, electrical switches, wire, and cable, and other building materials. Plaintiff believes that some of all of these products may have contained asbestos.

Continental Corporation, Falls Church, VA
a.     Approximately 1965-1967
b.     Electrical Contractors
c.     Electrician
d.     Plaintiff worked with or around one or more of the following: drywall, joint compound, board, thermal insulation, fireproofing, ductwork, electrical switches, wire, and cable, and other building materials. Plaintiff believes that some of all of these products may have contained asbestos.

E.C. Ernst, Inc., Washington, D.C.
a.     Approximately 1967-1967
b.     Electrical Contractors
c.     Electrician
d.     Plaintiff worked with or around one or more of the following: drywall, joint compound, board, thermal insulation, fireproofing, ductwork, electrical switches, wire, and cable, and other building materials. Plaintiff believes that some of all of these products may have contained asbestos.

Herring Electric, Inc., Winchester, VA
a.     Approximately 1968-1968
b.     Electrical Contractors
c.     Electrician
d.     Plaintiff worked with or around one or more of the following: drywall, joint compound, board, thermal insulation, fireproofing, ductwork, electrical switches, wire, and cable, and other building materials. Plaintiff believes that some of all of these products may have contained asbestos.

Allen & Whalen, Inc.; Rockville, MD
a.      Approximately 1969-1969
b.      Electrical Contractors
c.      Electrician
d.      Plaintiff worked with or around one or more of the following: drywall, joint compound, board, thermal insulation, fireproofing, ductwork, electrical switches, wire, and cable, and other building materials.  Plaintiff believes that some of all of these products may have contained asbestos.

Shifflett Electric Company; Fredericksburg, VA
a.      Approximately 1969-2005
b.      Electrical Contractors
c.      Electrician.
d.      Plaintiff worked with or around one or more of the following: drywall, joint compound, board, thermal insulation, fireproofing, ductwork, electrical switches, wire, and cable, and other building materials.  Plaintiff believes that some of all of these products may have contained asbestos.

The social security printout for Plaintiff will be made available and provides additional information about Lewis Shifflett's employment history.

10.     State whether you have in your possession: any pieces or examples of any of the asbestos-containing products to which you allege exposure; work histories or diaries; product photos; job lists; newspaper articles regarding work sites or asbestos; or sales literature or other writings concerning the sale or use of asbestos-containing products. If so, identify each such item.

Answer: No.

11.     Set forth each time you worked in the insulation trade (or a related trade) as:

(a)     An apprentice; or
(b)     A journeyman or its equivalent.
Answer:  n/a

12.     Please identify all employers in whose employ you have come into contact with chromium, cadmium, coal, sheet-silicate, diatomaceous earth, brucite, fibrous glass, aluminum silicates, carborundum, lamp black, or fiberglass, or materials, alloys,

8

Answer: This matter is still being investigated. Plaintiff will identify any such person in accordance with the Pre-Trial Scheduling Order.

132.    Identify all documents not heretofore mentioned in your answers to these interrogatories that you contend contain facts material to this case.

Answer: Plaintiff objects to this interrogatory as overly broad, unduly burdensome and an improper method for obtaining the identification and production of documents.

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel
The Ruckdeschel Law Firm, LLC
5126 Dorsey Hall Drive, Suite 201
Ellicott City, Maryland 21042
(410) 884-7825 [O]
(443) 583-0430 [F]
Attorney for Plaintiffs

Date: Monday, August 06, 2007

57

I SOLEMNLY DECLARE AND AFFIRM, under the penalties of perjury, that the foregoing Answers to Interrogatories are true and correct to the best of my knowledge, information and belief.

/s/ _____

Lewis Shifflett

58

# Exhibit 3

## PART TWO - LIABILITY

88.    If you have been exposed, or are being exposed, to any asbestos-containing product(s) in your work environment, state:

(a)    The employer's name and address;

(b)    Your job title and work description, including an exact description of job duties and responsibilities;

(c)    The duration of the job (month/day/year through month/day/year);

(d)    The duration of your exposure to asbestos on that job (month/day/year through month/day/year);

(e)    The location of the job;

(f)    The identity of your foreman or supervisor;

(g)    The identity of workers who you remember or your decedent remembered;

(h)    The identity of workers who recall the identity of asbestos-containing products and recall you or your decedent being exposed to those products;

(i)    The identity of workers who have a recollection of the identity of asbestos-containing products to which you claim exposure at the site;

(j)    A description of the types of asbestos-containing products to which you claim exposure (i.e., pipe covering, block, cement, cloth, etc.);

(k)    The identity of the supplier or distributor of each type of asbestos-containing product;

(l)    The identity of the manufacturer(s) of each type of asbestos-containing product;

(m)    The trade or brand names of each type of asbestos containing products;

(n)    The name of any contractors using asbestos-containing products at the site, stating the types of products they were using, names and manufacturers of the products, and the identity of persons working for any such contractors at the site.

Answer: Plaintiff was exposed to asbestos while working at various commercial and residential sites in and around the greater Baltimore/Washington/Northern Virginia metropolitan area.    Information obtained from co-workers, Plaintiff's employers and the Defendants may provide evidence of Plaintiff's exposure.

36

Consequently, the information given here is preliminary and subject to change as a result of further discovery in this case. Plaintiff objects to this Interrogatory to the extent that it requires Plaintiff's counsel to investigate and disclose the precise information known by various witnesses or the precise witnesses Plaintiff's counsel intends to call at trial.

Because of the number of employers Plaintiff had over the years, the large number of different sites at which Plaintiff worked and the often numerous times Plaintiff worked at the various sites, it is impossible for Plaintiff to provide the information sought by this Interrogatory in the format posed by the Interrogatory.

Plaintiff believes that he was exposed to asbestos containing products while employed by the companies identified in response to Interrogatory No. 9. Plaintiff believes that he was exposed to products that may have contained asbestos were used by himself and others around him including one or more of the following: pipecovering, block, cement, fireproofing, drywall joint compound, wallboard, gaskets, cement pipe, welding rods, wire and cable, electrical switches, and other asbestos containing products. Plaintiff also may have been exposed to asbestos containing materials that may have been used to insulate machinery and/or that was used in conjunction with machinery and tools. Plaintiff was also exposed to brakes, clutches and other parts used in connection with the repair of automobiles that may have contained asbestos. These products were manufactured, distributed and/or used by the Defendants to this lawsuit and had various names.

Mr. Shifflett's job sites and locations varied over the expanse of his career. Some job sites may have included:

    a. Abington Apartments
    b. Annandale Terrace
    c. Arena Stage
    d. Arlington County Courthouse
    e. Arlington Village
    f. Bellview Apartments
    g. Benning Road Power Plant
    h. Burgundy Village
    i. Buzzard Point Power Plant
    j. Cameron Station Warehouse
    k. Capital Apartments
    l. Capitol Power Plant
    m. Carriage House Apartments
    n. Chatham House

o.   Colonial Village
p.   David Taylor Research Ctr.
q.   Doctors Hospital
r.   Dolly Madison Apts.
s.   Embassy Dairy
t.   Engleside Apartments
u.   Farifax Hospital
nn. Firestone Building
oo. Foxwood Apartments
v.   Glassmanor Apartments
w.   Greenlawn Apartments
x.   Hamilton Hotel
y.   Hot Shoppes (Arlington)
z.   Indianhead Powerhouse
aa. Johns Hopkins A.P.L.
bb. Kensington Gardens
pp. Key Towers Apartments
qq. King Mill Project
rr.  King Street Apts.
cc.  Landover House
ss.  Lord & Taylor
dd. Madison House
ee.  Mayflower Hotel
ff.  National Airport
gg. National Institute of Health
tt.  Rembrandt Apt. Bldg.
uu. Shirley Apts.
vv. Shirlington Apts.
hh. Shoreham Hotel
ww.         St. Elizabeth's Hospital
xx.  Stover Apts
yy. Stowe Builders'
ii.  Tower Apartments
zz.  Triangle Towers
jj.  Walter Reed Medical Center
kk. Washington & Lee Apts.
aaa.        Washington Flour
ll.  Wilson Towers

38

I SOLEMNLY DECLARE AND AFFIRM, under the penalties of perjury, that the foregoing Answers to Interrogatories are true and correct to the best of my knowledge, information and belief.

/s/_____
Lewis Shifflett

# Exhibit 4

# IAG COVER SHEET

FILE NAME: **IndianHead.pdf**

Title:            **Naval Surface Warfare Center Indian Head Division, IndianHead**

Subject:        **Region 3, III**

Author:         **Navy, DoD, Maryland, MD**

Keywords:     **12/09/00, 2000, FY01**

# UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

## REGION III

## AND THE

## UNITED STATES DEPARTMENT OF THE NAVY

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| U.S. Department of the Navy | ) | FEDERAL FACILITY AGREEMENT |
| Naval Surface Warfare Center | ) | Under CERCLA Section 120 |
| Indian Head Division | ) | |
| Indian Head, MD | ) | Administrative |
| | ) | Docket Number: |
| | ) | III-FCA-CERC-018 |

I.  JURISDICTION..............................................................................................................................4

II.  DEFINITIONS..............................................................................................................................5

III.  PARTIES BOUND ......................................................................................................................11

IV.  PURPOSE ..................................................................................................................................11

V.  SCOPE OF AGREEMENT ..........................................................................................................13

VI.  FINDINGS OF FACT ..................................................................................................................14

VII.  EPA DETERMINATIONS ..........................................................................................................25

VIII.  STATUTORY COMPLIANCE/RCRA-CERCLA INTEGRATION ..........................................26

IX.  WORK TO BE PERFORMED ....................................................................................................27

    REMEDIAL INVESTIGATIONS FOR 26 PREVIOUSLY IDENTIFIED SITES...................................28
    SITE-SCREENING AREAS...........................................................................................................30
    REMEDIAL INVESTIGATION AND FEASIBILITY STUDY.................................................................35
    PROCEDURES FOR INTERIM REMEDIAL ACTIONS ........................................................................35
    RECORDS OF DECISION AND PLANS FOR REMEDIAL ACTION.......................................................36
    REMEDIAL DESIGN AND REMEDIAL ACTION..............................................................................38
    FINALIZATION OF REMEDIAL ACTIONS.......................................................................................39
    ACCELERATED OPERABLE UNIT.................................................................................................39
    SUPPLEMENTAL RESPONSE ACTION............................................................................................40

X.  CONSULTATION .........................................................................................................................43

XI.  DEADLINES AND CONTENTS OF SITE MANAGEMENT PLAN ..........................................51

XII.  BUDGET DEVELOPMENT AND AMENDMENT OF SITE MANAGEMENT PLAN ..............53

XIII.  EXTENSIONS ...........................................................................................................................59

XIV.  PROJECT MANAGERS ...........................................................................................................61

XV.  EXEMPTIONS...........................................................................................................................65

XVI.  ACCESS ...................................................................................................................................65

XVII.  PERMITS ................................................................................................................................67

XVIII.  REMOVAL AND EMERGENCY ACTIONS ..........................................................................69

XIX.  PERIODIC REVIEW.................................................................................................................71

XX.  DISPUTE RESOLUTION...........................................................................................................72

XXI.  STIPULATED PENALTIES ................................................................................75

XXII.  FORCE MAJEURE ........................................................................................76

XXIII.  ENFORCEABILITY ......................................................................................77

XXIV.  OTHER CLAIMS ..........................................................................................78

XXV.  RESERVATION OF RIGHTS .........................................................................79

XXVI. PROPERTY TRANSFER ...............................................................................80

XXVII.  FUNDING ..................................................................................................80

XXVIII.  RECOVERY OF EPA EXPENSES .............................................................81

XXIX.  QUALITY ASSURANCE ..............................................................................82

XXX.  RECORD PRESERVATION ...........................................................................82

XXXI. SAMPLING AND DATA/DOCUMENT AVAILABILITY ................................83

XXXII.  PROTECTED INFORMATION ...................................................................83

XXXIII.  COMMUNITY RELATIONS ......................................................................84

XXXIV.  PUBLIC COMMENT ON THIS AGREEMENT ..........................................85

XXXV.  RESTORATION ADVISORY BOARD .........................................................88

XXXVI.  EFFECTIVE DATE ...................................................................................89

XXXVII.  AMENDMENT OF AGREEMENT ............................................................89

XXXVIII.  SEVERABILITY .....................................................................................90

XXXIX.  TERMINATION AND SATISFACTION......................................................90

AUTHORIZED SIGNATURES ................................................................................91

   APPENDIX A..........................................................................................................92
   APPENDIX B...........................................................................................................94

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

REGION III

AND THE

UNITED STATES DEPARTMENT OF THE NAVY

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| U.S. Department of the Navy | ) | FEDERAL FACILITY AGREEMENT |
| Naval Surface Warfare Center | ) | Under CERCLA Section 120 |
| Indian Head Division | ) | |
| Indian Head, MD | ) | Administrative |
| | ) | Docket Number: |
| | ) | III-FCA-CERC-018 |

     Based on the information available to the Parties on the
effective date of this Federal Facility Agreement (Agreement),
and without trial or adjudication of any issues of fact or law,
the Parties agree as follows:

## I.   JURISDICTION

1.1  Each Party is entering into this Agreement pursuant to the
following authorities:

     A.   The U.S. Environmental Protection Agency (EPA) Region
III enters into those portions of this Agreement that relate to
the Remedial Investigation/Feasibility Study (RI/FS) pursuant to
Section 120(e)(1) of the Comprehensive Environmental Response,
Compensation, and Liability Act (CERCLA), as amended by the
Superfund Amendments and Reauthorization Act of 1986 (SARA), Pub.
L. No. 99-499 (hereinafter jointly referred to as CERCLA), 42
U.S.C. Section 9620(e)(1), and Sections 6001, 3008(h) and 3004(u)
and (v) of the Resource Conservation and Recovery Act (RCRA), 42
U.S.C. Sections 6961, 6928(h), 6924(u) and (v) as amended by the
Hazardous and Solid Waste Amendments of 1984 (HSWA) (hereinafter
jointly referred to as RCRA), and Executive Order 12580;

     B.   EPA Region III enters into those portions of this
Agreement that relate to interim remedial actions and final

5

remedial actions pursuant to CERCLA Section 120(e)(2), 42 U.S.C. Section 9620(e)(2), RCRA Sections 6001, 3008(h) and 3004(u) and (v), 42 U.S.C. Sections 6961, 6928(h), 6924(u) and (v), and Executive Order 12580;

C.   The Navy enters into those portions of this Agreement that relate to the RI/FS pursuant to CERCLA Section 120(e)(1), 42 U.S.C. Section 9620(e)(1), RCRA Sections 6001, 3008(h) and 3004(u) and (v), 42 U.S.C. Sections 6961, 6928(h), 6924(u) and (v), Executive Order 12580, the National Environmental Policy Act, 42 U.S.C. Section 4321, and the Defense Environmental Restoration Program (DERP), 10 U.S.C. Section 2701 et. seq.;

D.   The Navy enters into those portions of this Agreement that relate to interim remedial actions and final remedial actions pursuant to CERCLA Section 120(e)(2), 42 U.S.C. Section 9620(e)(2), RCRA Sections 6001, 3008(h), 3004(u) and (v), 42 U.S.C. Sections 6961, 6928(h), 6924(u) and (v), Executive Order 12580 and the DERP.

## II.   DEFINITIONS

2.1   Except as noted below or otherwise explicitly stated, the definitions provided in CERCLA and the National Oil and Hazardous Substances Pollution Contingency Plan (NCP) shall control the meaning of terms used in this Agreement.

A.   "Accelerated Operable Unit" or "AOU" shall mean a remedial action which prevents, controls, or responds to a release or threatened release of hazardous substances, pollutants, and contaminants where prompt action is necessary but a response under removal authorities is not appropriate or desirable.  The purpose of an AOU is to allow the Parties to proceed with a remedial action for that Operable Unit prior to completion of the final Record of Decision (ROD) for the total remedial action.  AOUs are particularly appropriate where the size and complexity of the total remedial action would seriously delay implementation of independent parts of the action.  AOUs will only proceed after complying with applicable procedures in the NCP, and the Parties shall make every effort to expedite these procedures.  It is not intended that AOUs diminish the requirements for or delay the conduct of a total remedial action.

B.   "Agreement" shall refer to this document and shall include all Attachments to this document.  All such Attachments are integral parts of this Agreement and shall be enforceable to the extent provided herein.

14

5.4  The scope of this Agreement extends to the entire Site, as listed in the Federal Register proposing the Site for the National Priority List (NPL) and as provided for in this Agreement.  A release at the Site cannot be deleted from the NPL unless it is determined, in accordance with CERCLA/SARA, the NCP, and this Agreement, that the Navy has implemented all appropriate Response Actions for such release, and that the release at the Site no longer poses a threat to human health or the environment. All Response Actions at the Site shall occur in discrete locations termed Site Screening Areas or Operable Units (OUs) identified at the Site pursuant to this Agreement.

5.5  Any Response Action in progress on the Effective Date of this Agreement shall be subject to the obligations and procedures of this Agreement.

5.6  The Parties agree to use their best efforts to expedite the initiation of response actions at the Site, including Accelerated Operable Units (AOUs) and interim response actions, and to carry out all activities under this Agreement so as to protect the public health, welfare and the environment.  Upon request, the Parties agree to provide applicable guidance or reasonable assistance in obtaining such guidance relevant to the implementation of this Agreement.

## VI.   FINDINGS OF FACT

6.1  For purposes of this Agreement, the following constitutes a summary of the findings upon which this Agreement is based. Nothing contained in this Agreement shall constitute an admission of any liability by the Navy for any matters contained herein nor shall anything in this Agreement constitute an admission by the Navy with respect to any finding of fact or any legal determination noted herein.

A.   Naval Surface Warfare Center Indian Head Division, (NSWC Indian Head), formerly called the Naval Ordnance Station (NOS), the Naval Propellant Plant, the Naval Powder Factory, and the Naval Proving Grounds, is the lead Navy activity for propellants, explosives and pyrotechnics (referred to as energetics) whose mission is to provide services in energetics through engineering, operational support, manufacturing technology, and production.  The NSWC Indian Head also conducts research and development, and testing and evaluation of energetic materials and ordnance devices.

15

B.    NSWC Indian Head is located in Charles County, Maryland, 30 miles south of Washington, D.C.  The Main Area is located along the Potomac River at its confluence with the Mattawoman Creek, and is comprised of approximately 2,500 acres. The Stump Neck Annex consists of approximately 1,000 acres and is separated from the Main Site by the Mattawoman Creek. NSWC Indian Head has been active since 1890 and assumed its current name in 1992.  The United States is the current owner and operator.

C.    As a requirement of the Resource Conservation and Recovery Act (RCRA), NSWC Indian Head submitted notifications of Hazardous Waste Activity (Part A permit applications) to the EPA in November 1980, for both the Main Site and the Stump Neck Annex.  On December 21, 1981, EPA issued EPA ID Number MD 717 002 4684 to the Main Area.  At that time, the application for the Stump Neck Annex did not demonstrate that the facility was one that was required to have a permit under Section 3005 of RCRA, so the application was returned.  On December 13, 1984, the EPA issued the Main Area a new EPA ID Number, MD 417 002 4109. Between 1981 and 1985, the EPA issued ID Number MD 417 009 0001 to the Stump Neck Annex, which was operated by the Naval Explosive Ordnance Disposal Technology Center (later renamed the Naval Explosive Ordnance Disposal Technology Division).

D.    A RCRA Part B permit application was submitted to the EPA and MDE for the Main Area of NSWC Indian Head on July 26, 1985, for the treatment and storage of Controlled Hazardous Substances (CHS).  The Main Area operated under interim status until permit A223 was issued by the Maryland Department of the Environment (MDE) on April 14, 1988.

E.    Likewise, a RCRA Part B permit application was submitted to the EPA and MDE for the Stump Neck Annex of NSWC Indian Head on September 30, 1985, for the treatment and storage of CHS. The Stump Neck Annex operated under interim status until permit A223a was issued by the Maryland Department of the Environment (MDE) on November 13, 1987.

F.    RCRA Part B, Subpart X (miscellaneous units) permit applications were submitted to the EPA on November 8, 1988 for both the Main Area and the Stump Neck Annex of NSWC Indian Head. These permits include the thermal treatment of explosives at both Activities.  Both Activities are currently operating under interim status for these miscellaneous units.

G.    An Oil Operations permit, #83-OP-0666, was obtained for NSWC Indian Head on April 22, 1983.  This permit included oil

16

operations at both the Main Area and the Stump Neck Annex.  The MDE later issued separate Oil Operations permits for the Main Area and the Stump Neck Annex.  The Main Area operates under permit #99-OPT-3364, which was issued December 17, 1998, and the Stump Neck Annex operates under permit #99-OPT-3370, which was issued December 11, 1998.

H.   On September 15, 1978, the EPA issued National Pollutant Discharge Elimination System (NPDES) Industrial Wastewater (IW) Discharge Permit MD0003158 to NSWC Indian Head. This permit applied to both the Main Area and Stump Neck Annex. In 1985, the MDE issued State Discharge Permit 78-DP-2515. Currently, NSWC Indian Head operates under State Discharge Permit 95-DP-2515, which was issued February 1, 1998.

I.   NSWC Indian Head operates under NPDES Sanitary Wastewater Discharge Permit MD0020885.  The MDE issued permit number 88-DP-2528 to NSWC Indian Head, which applies to both the Main Area and the Stump Neck Annex.

J.   NSWC Indian Head was listed on the Federal Agency Hazardous Waste Compliance Docket, which was established pursuant to CERCLA Sections 120(c).

K.   EPA completed, pursuant to CERCLA, a Hazard Ranking System evaluation of the NSWC Indian Head that resulted in a score of 50.

L.   Based on the Hazard Ranking System evaluation, and in accordance with EPA policy, on February 13, 1995, NSWC Indian Head was proposed for inclusion on the National Priorities List (NPL). On September 29, 1995, NSWC Indian Head was finalized on the NPL. The notice was published in the Federal Register at 60 FR 50435.

M.   The NSWC Indian Head Installation Restoration Program includes a total list of 65 sites.  Sites numbered 1 through 29, and 39 through 57 are located on the Main Area of the facility. Sites numbered 30 through 38, and 58 through 65 are located on the Stump Neck Annex. Since 1990, the Navy has addressed the sites at the Stump Neck Annex under a separate Resource Conservation and Recovery Act (RCRA) Corrective Action Permit which provides for a similar process as CERCLA for the investigation and remediation of the sites.  Through the finalization of this Federal Facilities Agreement, the RCRA Corrective Action sites at the Stump Neck Annex will be included under the CERCLA program. The following Section 6.2 provides the environmental history and Findings of Fact of the IR Program at

17

the Main Area of the facility.  Section 6.3 provides the
environmental history and Findings of Fact of the IR Program at
the Stump Neck Annex.

## 6.2  NSWC - IHDIV Main Area

A.    The Navy completed an Initial Assessment Study (IAS) of
NSWC Indian Head in May 1983 pursuant to the DOD Installation
Restoration Program (IRP).  The IAS examined a total of 38
potentially contaminated sites. Sites numbered 1 through 29 are
located on the Main Area of the facility. Sites numbered 30
through 38 are located on the Stump Neck Annex. The 29 identified
Main Area sites are listed below. Stump Neck Sites 30 through 38
are discussed in Section 6.3.

| | |
|---|---|
| Site 1 | Thorium Spill |
| Site 2 | Waste Crankcase Oil applied to Torrense Road |
| Site 3 | Nitroglycerin Explosion, Nitration Building Area |
| Site 4 | Lloyd Road Oil Spill |
| Site 5 | X-ray Building, Building 731 |
| Site 6 | Radiographic Facility, Building 1349 |
| Site 7 | HMX Spill, Slurry Mix Building |
| Site 8 | Mercury Deposits, Building 766 |
| Site 9 | Patterson Avenue, Oil Spill |
| Site 10 | Single Base Propellant Grains Spill Area |
| Site 11 | Caffee Road Landfill |
| Site 12 | Town Gut Landfill |
| Site 13 | Paint Solvents Disposal Area |
| Site 14 | Waste Acid Disposal Pit |
| Site 15 | Mercury Deposits in Manhole, Fluorine Lab |
| Site 16 | Laboratory Chemical Disposal |
| Site 17 | Disposed Metal Parts Along Shoreline |
| Site 18 | Hog Island |
| Site 19 | Catch Basins at Chip Collection Houses |
| Site 20 | Single Base Powder Facilities |
| Site 21 | Bronson Road Landfill |
| Site 22 | NG Slums Burning Site |
| Site 23 | Hydraulic Oil Discharges from Extrusion Plant |
| Site 24 | Abandoned Drain Lines |
| Site 25 | Hypo Discharges from X-ray Building No.2 |
| Site 26 | Thermal Destructor 2 |
| Site 27 | Thermal Destructor 1 |
| Site 28 | Original Burning Ground |
| Site 29 | The Valley |

Of the 38 sites, the IAS recommended further study at Sites 5, 8,
and 12 based on the historical information available.
Additionally, because historical operations at Sites 6 and 25

18

were similar to those at Site 5, the IAS also recommended
additional study at these two sites if further investigation of
Site 5 indicated a problem.

B.   The Navy completed a Confirmation Study at NSWC Indian
Head in September 1985.  The Confirmation Study was designed to
evaluate the presence or absence of contamination at Sites 5, 8
and 12.  The results of the study are documented in the report
entitled "NACIP Confirmation Study, Naval Ordnance Station,
Indian Head, MD", dated September 1985.  Sites 5 and 8 were
determined to have extensive levels of silver and mercury,
respectively. The Confirmation Study determined that further
study and monitoring was necessary at Site 12.

C.   The Navy completed removal actions at Sites 5 and 8,
and continued investigations at Site 12.  The removal actions
involved the excavation of contaminated soils to prevent further
transport and migration of the contamination, and risk to
ecologically sensitive receptors. The Navy continued further
monitoring at Site 12, and completed a Remedial Investigation in
1999.  The RI recommended the preparation of a Feasibility Study
(FS) to evaluate methods for mitigating environmental risks, and
to address regulatory concerns connected with landfill closure
requirements.

D.   After further review of the original 29 IAS sites of
the Main Area, the Navy, EPA and Maryland Department of the
Environment (MDE) decided in 1996 to include Sites 6, 11, 13, 15,
16, 17, 21 and 25 into further Remedial Investigation because of
the potentially higher risks associated with these sites.  The
remainder of the original 29 IAS sites, including Sites 5 and 8,
will enter the Site Screening Process as outlined in section 9.3,
which will provide for a second evaluation, potentially including
some additional sampling, to confirm the presence or absence of
contamination at the sites, and the need for further action.

E.   The Navy completed a Supplemental Preliminary
Assessment (PA) Report for NSWC Indian Head in January 1992.  The
Preliminary Assessment was an addendum to the Initial Assessment
Study and examined an additional 17 sites located on the Main
Area.  The 17 additional sites are listed below.

| Site 39 | Silver Release to Sediments |
| Site 40 | Palladium Catalyst in Sediment |
| Site 41 | Scrap Yard |
| Site 42 | Olsen Road Landfill |
| Site 43 | Toluene Disposal |
| Site 44 | Soak Out Area |

19

```
Site 45    Abandoned Drums
Site 46    Cadmium Sandblast Grit
Site 47    Mercuric Nitrate Disposal Area
Site 48    NG Plant Disposal Area
Site 49    Chemical Disposal Pit
Site 50    Building 103 Crawl Space
Site 51    Building 101 Dry Well
Site 52    Building 102 Dry Well
Site 53    Mercury Contamination of the Sewage System
Site 54    Building 101
Site 55    Building 102
```

All but Sites 51 and 52 were recommended for further action.

F.    As a follow-up to the Supplemental Preliminary Assessment, the Navy conducted a Site Inspection (SI) on Sites 39 through 50, and Sites 53 through 55 in two phases.  Phase I focused on Site 42, Olsen Road Landfill.  Phase II focused on the remainder of the sites.  Based on the results of the SI, all of the sites were recommended for further study to determine the nature and extent of contamination and to identify the appropriate remedial action required.

G.    The Navy completed work plans for the Remedial Investigation of these sites in 1997.  Remedial Investigation Reports for Sites 41, 42 and 44 were completed in 1999. At Site 41, the RI recommended the preparation of a Feasibility Study (FS) to evaluate methods for mitigating human health and environmental risks posed by the contaminated surface soil at the site. At Site 42, the RI recommended the preparation of an FS to evaluate methods to address regulatory concerns connected with landfill closure requirements. No further action was recommended at Site 44. Remedial Investigations continue for the remainder of the 1992 PA sites.

H.    Since the 1992 PA, two additional sites were discovered on the Main Area of NSWC Indian Head. The 2 additional sites are listed below.

```
Site 56    IW-87 Lead Outfall
Site 57    Building 292 TCE Contamination
```

I.    Based on site sampling, the Navy performed an Engineering Evaluation / Cost Analysis (EE /CA) in 1994 and 1997 to evaluate the Removal Action options at Site 56 and Site 57, respectively. The Navy conducted a Removal Action at Site 56 in 1996, which involved the removal of lead contaminated sediments at IW-87 and the lining of the outfall pipe. These soils were

20

properly disposed of off-site. In 1998, the Navy completed a
Removal Action at Site 57 to address infiltration of TCE
contaminated groundwater into a storm sewer leading to outfall
IW-80. Approximately 700 feet of storm sewer was lined to
inhibit the accelerated migration of TCE. The Navy completed
Remedial Investigations at Site 57 in July 2000. The Navy will
continue further Feasibility Studies to evaluate potential
technology alternatives that may be used to remediate the site.

J.   The EPA Office of RCRA Programs conducted a RCRA Solid
Waste Management Unit (SWMU) Investigation at the NSWC-IHDIV, and
issued a draft RCRA Facilities Assessment in 1988. The draft
document provided a list of 78 RCRA Solid Waste Management Units
and 14 RCRA Areas of Concern.

Of the RCRA SWMUs and AOCs identified in the draft RFA, the
following 24 sites correspond to IR sites previously identified
in the original 1983 IAS, and will be addressed under CERCLA as
described <u>Section VIII - Statutory Compliance / RCRA-CERCLA</u>
<u>Integration</u> of this Agreement:

| | | |
|---|---|---|
| RCRA AOC E | IR Site 1 | Thorium Spill |
| RCRA SWMU 75 | IR Site 2 | Crank Case Oil Applied to Torrense Road |
| RCRA AOC B | IR Site 3 | Nitroglycerin Explosion, Nitration Area |
| RCRA SWMU 76 | IR Site 4 | Lloyd Road Oil Spill Sites |
| RCRA SWMU 55 | IR Site 5 | X-Ray Building 731 |
| RCRA SWMU 56 | IR Site 6 | Building 1349, Hypo Spill |
| RCRA SWMU 22 | IR Site 7 | Building 682, HMX Spill |
| RCRA SWMU 7 | IR Site 8 | Building 766, Mercury Deposits |
| RCRA AOC A | IR Site 9 | Patterson Avenue, Oil Spill |
| RCRA AOC C | IR Site 10 | Single-base Propellant Grains Spill |
| RCRA SWMU 37 | IR Site 11 | Caffee Road Landfill |
| RCRA SWMU 11 | IR Site 12 | Town Gut Landfill |
| RCRA SWMU 12 | IR Site 13 | Paint Solvents Disposal Ground |
| RCRA SWMU 14 | IR Site 14 | Waste Acid Disposal Pit |
| RCRA SWMU 15 | IR Site 15 | Mercury Manhole Deposits, Fluorine Lab |
| RCRA SWMU 60 | IR Site 16 | Laboratory Chemical Disposal |
| RCRA AOC M | IR Site 17 | Disposal Metal Parts Along Shoreline |
| RCRA SWMU 16 | IR Site 21 | Bronson Road Landfill |
| RCRA SWMU 77 | IR Site 22 | NG Slums Burning Site |
| RCRA AOC K | IR Site 24 | Abandoned Drain Lines |
| RCRA SWMU 61 | IR Site 25 | Hypo Discharge X-Ray Building No 2 |
| RCRA SWMU 63 | IR Site 26 | Thermal Destructor 2 |

21

| | |
|---|---|
| RCRA SWMU 62 | IR Site 27 Thermal Destructor 1 |
| AOC F | IR Site 29 The Valley |

In addition, the following RCRA SWMUs and AOCs identified in the draft RFA have been determined inactive, and are included as IR Areas of Concern listed in Appendix B of this Agreement:

| | |
|---|---|
| SWMU 4,5 | Underground Storage Tanks (Bldg. 290 and 525) |
| SWMU 6 | Used Battery Accumulation Area (Bldg. 766) |
| SWMU 27 | Waste Oil Storage Area (Goddard Power Plant) |
| SWMU 38 | Caffee Road Waste Oil Storage Area |
| SWMU 40-46 | Wastewater Collection/Treatment Tanks (Moser) |
| SWMU 47-51 | Spent Acid Storage/Treatment Tanks (Moser Plant) |
| SWMU 64-66 | Waste Water Storage Tanks (Bldg. 1596) |
| SWMU 69 | Temp Accumulation Dumpster for Explosive Scrap |
| SWMU 70 | Temp Areas for Drummed Explosive Scrap |
| SWMU 72 | Oil/Water Separators |
| SWMU 74 | Unlined Overland Drainage Ditches |
| AOC G | Sand Blasting Sand Storage Area |
| AOC H | Drum at Fuel Storage Area |
| SWMU 20 | Safety Burn Point |
| SWMU 21 | Caffee Road Decontamination Burn Point |

The following RCRA SWMUs and AOCs are currently active units, and/or RCRA permitted units, or have completed RCRA closure. These SWMUs and AOCs will not be investigated further, unless information leads the Parties to believe that the SWMU or AOC has released or has the potential to release hazardous waste into the environment, and poses a threat to human health and/or the environment:

| | |
|---|---|
| SWMU 1 | Inactive Container Storage Unit |
| SWMU 2 | Active Container Storage Unit (Bldg. 455) |
| SWMU 3 | PCB Storage (Bldg. 1440) |
| SWMU 8 | Drum Accumulation Area (Bldg. 766) |
| SWMU 9,10 | Spent Acid Tanks at Biazzi Plant |
| SWMU 13 | Drum Accumulation Area (Bldg. 870) |
| SWMU 17,18 | Oil/Water Separator and Oil Storage Tank-Extrusion |
| SWMU 19 | Cast Plant (Strauss Avenue) Burn Point |
| SWMU 23 | Sewage Treatment Plant |
| SWMU 24 | Spent Hexane/Acetone Accumulation Area (Extrusion) |
| SWMU 25 | Fly Ash Bag House (Goddard Power Plant) |
| SWMU 26 | Trench Drain and Oil/Water Separator (Goddard) |

22

| | |
|---|---|
| SWMU 28 | Ash Precipitation System (Goddard Power Plant) |
| SWMU 29 | Acid Neutralization Tank (Goddard Power Plant) |
| SWMU 30,31,32 | Coal Storage Area Sump and Neutralization Pits |
| SWMU 33,34,35 | Waste Water Sump and Settling Tanks (Organic Chemicals) |
| SWMU 36 | Radicator (Classified Paper Incinerator) |
| SWMU 39 | Drum Storage Area (Bldg. 314) |
| SWMU 52 | Nitroglycerin Slums Storage (Bldg. 891) |
| SWMU 53,54 | Spent Fixer Storage Tanks (Bldg. 266) |
| SWMU 57 | Asbestos Storage (Bldg. 296) |
| SWMU 58,59 | Asbestos Storage Dumpsters (by Bldg. 299) |
| SWMU 61 | Building 588 Area |
| SWMU 67 | Temporary Waste Accumulation Area |
| SWMU 68 | Wastewater Catch Basins and Tanks |
| SWMU 71 | Accumulation Dumpsters for Metal Scrap |
| SWMU 73 | Refuse Collection Dumpsters |
| SWMU 78 | Temporary Solvent Storage at Organic Chemical Plant |
| AOC D | Coal Storage Area |
| AOC I | Storage Building at Machine Shop |
| AOC J | Ballistic Test Areas |
| AOC L | Fuel Oil Tank Secondary Containment Area (Goddard) |
| AOC N | Carpentry Shop (Bldg. 314) Dust Collector |

## 6.3  NSWC – IHDIV Stump Neck Annex

A.   The EPA Office of RCRA Programs conducted a RCRA Solid Waste Management Unit (SWMU) Investigation of the NAVEDOTECHCEN at the NSWC-IHDIV, and issued a draft RCRA Facilities Assessment in July 1990. The RFA identified 24 SWMUs at the Stump Neck Annex:

| | |
|---|---|
| SWMU 1 | Rum Point Landfill |
| SWMU 2 | Range 3 Burn Point |
| SWMU 3 | Chicamuxen Creek's Edge Site A |
| SWMU 4 | Chicamuxen Creek's Edge Site B |
| SWMU 5 | Range 6 |
| SWMU 6 | Air Blast Pond |
| SWMU 7 | Scrap Metal Pit |
| SWMU 8 | Tool Burial Site |
| SWMU 9 | Torpedo Burial Site |
| SWMU 10 | Inactive Disposal Site |
| SWMU 11 | Suspected Tool Burial Site |
| SWMU 12 | Waste Oil Storage Site |

23

SWMU 13    Pink Water Treatment Tank
SWMU 14    Photographic Lab Septic Tank System
SWMU 15    Spent Photographic Solution Storage
SWMU 16    Thermal Treatment Tank
SWMU 17    Building 2015 - Chemical Lab Accumulation Area
SWMU 18    Waste Pile
SWMU 19    Disposal Area #1
SWMU 20    Disposal Area #2
SWMU 21    Drum Storage Area
SWMU 22    Stump Neck Impact Area
SWMU 23    Old Demolition Range
SWMU 24    Causeway

B.   The 1983 IAS of 38 sites at NSWC Indian Head originally
identified 9 of the 24 SWMUs found during the RFA (Sites 30
through 38). These 9 sites are listed below. These sites are
addressed as Site Screening Areas included in Appendix A of this
Agreement, and will continue under the Site Screening Process as
described in Section 9.3.

Site 30    SWMU 22    Stump Neck Impact Area
Site 31    SWMU 23    Old Demolition Range
Site 32    SWMU 11    Suspected Tool Burial Site
Site 33    SWMU 7     Scrap Metal Pit
Site 34    SWMU 8     Tool Burial Site
Site 35    SWMU 9     Torpedo Burial Site
Site 36    SWMU 10    Inactive Disposal Site
Site 37    SWMU 24    Causeway
Site 38    SWMU 1     Rum Point Landfill

C.   In December 1990, EPA issued the RCRA permit for
Corrective Action effective January 24, 1991 and expiring on
January 23, 2001. Of the 24 SWMUs, the permit contained
conditions requiring the Navy to perform further investigation at
the following 6 SWMUs.  These SWMUs were assigned IR site numbers
38, and 58 through 62 (SWMUs 1 through 6). The permit required
Verification Investigations (VI) at Sites 38, 60 and 62, and RCRA
Facilities Investigations (RFI) at Sites 58, 59, and 61. Draft
Reports for these Investigations were completed in January 1998.
These sites are addressed as Site Screening Areas included in
Appendix A of this Agreement, and information and conclusions
from these draft reports will be used in the Site Screening
Process.

Site 38    SWMU 1     Rum Point Landfill
Site 58    SWMU 2     Range 3 Burn Point
Site 59    SWMU 3     Chicamuxen Creek's Edge Site A

24

| Site 60 | SWMU 4 | Chicamuxen Creek's Edge Site B |
| Site 61 | SWMU 5 | Range 6 |
| Site 62 | SWMU 6 | Air Blast Pond |

D.    Pursuant to the requirements of the RCRA Corrective Action Permit, NSWC Indian Head notified the EPA Region III RCRA Programs Branch in 1991 of three additional SWMUs that were not originally identified in the RFA, but warranted further investigation. These 3 sites are listed below. These SWMUs were associated with operations of the Naval School Explosive Ordnance Disposal (NAVSCOLEOD).  The three "school" sites included Sites 63, 64 and 65 (SWMUs 25, 26, and 27), which would become inactive with the relocation of the school.  The Navy completed a Verification Investigation report on the three Sites in June 1996. The Navy will address these three Sites as Site Screening Areas included in Appendix A of this Agreement, and will continue under the Site Screening Process as described in Section 9.3

| Site 63 | SWMU 25 Area 8 |
| Site 64 | SWMU 26 IED |
| Site 65 | SWMU 27 IOD |

E.    Also in 1991, the Navy discovered a fourth SWMU (SWMU 30), which was associated with a dry well that was connected to a laboratory located in Building 2015.  SWMU 30, and 8 of the 24 originally identified SWMUs will be evaluated under the IR Program as Areas of Concern. These 9 SWMUs are listed below. As with the Main Area, these AOCs will undergo a "desk-top" evaluation as described in Section 9.3, which involves a thorough review of all existing or easily obtainable documentation/information on the identified areas.

| SWMU 30 | Bldg. 2015 Dry Well |
| SWMU 12 | Waste Oil Storage Site |
| SWMU 14 | Photographic Lab Septic Tank System, |
| SWMU 15 | Spent Photographic Solution Storage |
| SWMU 17 | Building 2015 - Chemical Lab Accumulation Area |
| SWMU 18 | Waste Pile |
| SWMU 19 | Disposal Area #1 |
| SWMU 20 | Disposal Area #2 |
| SWMU 21 | Drum Storage Area |

F.  ·  The following RCRA SWMUs are currently active units, and/or RCRA permitted units, or are undergoing RCRA closure. These SWMUs will not be investigated further, unless information leads the Parties to believe that the SWMU has released or has the potential to release hazardous waste into the environment, and poses a threat to human health and/or the environment:

25

```
SWMU 13    Pink Water Treatment Tank
SWMU 16    Thermal Treatment Tank
```

G.   In 1992, NSWC Indian Head notified the EPA of two other sites at the Stump Neck Annex, which later became SWMUs 28 and 29. These units will also be evaluated under the IR Program as Areas of Concern.

```
SWMU 28    Old Skeet and Trap Range
SWMU 29    Pistol Range
```

## VII.   EPA DETERMINATIONS

7.1  The following constitutes a summary of the determinations relied upon by EPA to establish its jurisdiction and authority to enter into this Agreement.  None of these determinations shall be considered admissions to any person, related or unrelated to this Agreement, for purposes other than determining the basis of this Agreement or establishing the jurisdiction and authority of the Parties to enter into this Agreement.

A.   The United States Department of the Navy is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. Section 9601(21).

B.   The NSWC Indian Head is a "facility" as defined by Section 101(9) of CERCLA, 42 U.S.C. Section 9601(9), and 10 U.S.C. Section 2701 et seq., and is subject to the Defense Environmental Restoration Program.

C.   The United States is the owner and operator of NSWC Indian Head as defined in Sections 101(20) and 107(a)(1) of CERCLA, 42 U.S.C. Sections 9601(20) and 9607(a)(1).  The Navy is the DOD component charged with fulfilling the obligations of the owner under CERCLA at NSWC Indian Head.

D.   There has been a release or a substantial threat of a release of hazardous substances, pollutants, contaminants, hazardous wastes or constituents at or from the Facility.

E.   The actions provided for in this Agreement are consistent with the NCP.

F.   The actions provided for in this Agreement are necessary to protect the public health, or welfare or the environment.

91

## AUTHORIZED SIGNATURES

Each of the undersigned representatives of the Parties certifies that he or she is fully authorized by the Party he or she represents to enter into the terms and conditions of this Agreement and to legally bind such Party to this Agreement.

IT IS SO AGREED:

By

_Elsie L. Munsell_                    Date

Elsie L. Munsell
Deputy Assistant Secretary of the Navy
(Environment & Safety)


By

_B. M. Campbell_  12/07/2004    Date

Bradley M. Campbell
Regional Administrator
Environmental Protection Agency, Region III

**Answer:** This matter is still being investigated. Plaintiff will identify any such person in accordance with the Pre-Trial Scheduling Order.

132.  Identify all documents not heretofore mentioned in your answers to these interrogatories that you contend contain facts material to this case.

**Answer:** Plaintiff objects to this interrogatory as overly broad, unduly burdensome and an improper method for obtaining the identification and production of documents.

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel
The Ruckdeschel Law Firm, LLC
5126 Dorsey Hall Drive, Suite 201
Ellicott City, Maryland 21042
(410) 884-7825 [O]
(443) 583-0430 [F]
Attorney for Plaintiffs

Date: Monday, August 06, 2007

EFiled
Aug  6 2007 11:03AMEDT
Transaction ID 15835036

## IN THE CIRCUIT COURT FOR BALTIMORE CITY

IN RE:  BALTIMORE CITY
      ASBESTOS LITIGATION

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

CASES AFFECTED:                              \*

LEWIS SHIFFLETT                         \*     Case No.:  24x07000313

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## PLAINTIFFS' ANSWERS TO DEFENDANTS' MASTER SET OF

### INTERROGATORIES

Plaintiff, Lewis Shifflett, by his undersigned attorneys, files this answer to the Master Interrogatories propounded by the Defendants, without waiving any objection as to the relevancy or admissibility of any of the information contained herein.

### INTRODUCTION

A.  The information supplied in these answers is not based solely on the knowledge of the Plaintiff, but includes the knowledge of the Plaintiff and his attorneys, unless privileged.  The signature of the Plaintiff at the conclusion of these answers does not necessarily mean the Plaintiff has any personal knowledge as to any particular answer which is given.

B.  The word usage and sentence structure may be that of the attorney assisting in the preparation of these answers and thus does not necessarily purport to be the precise language of the Plaintiff.

C.  By responding to these Interrogatories, Plaintiff is not waiving any ground for objecting to the admissibility of the information.

### INTERROGATORIES
### PART ONE - DAMAGES

1.  State the following:

(a)  All names by which you have been known;

(b)  Your date and place of birth;

(c)  If deceased, date of death, place and location of death, and cause of death;

(d)  The date and place of each marriage and the name of each spouse; and

(e)  Social Security number.

Answer:   (a) Lewis B. Shifflett
          (b) 8/27/1933; Alexandria, Virginia
          (c) n/a
          (d) 8/9/1952; Alexandria, Virginia; Maybrey Shifflett
          (e) 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

2.   State the address of each place of residence that you have occupied from age 16 to date.

Answer:        1022 Cameron Street; Alexandria, VA

               Maple Street; Alexandria, VA

               2707 Hatcher Street; Alexandria, VA

               3113 Hatcher Street, Alexandria, VA

               3608 Old Bridge Road; Woodbridge, VA

               Rapidan Drive; Fredericksburg, VA

               6439 Perry Road; Lucama, NC

3.   State the names, ages, and present address of any children, identifying of which marriage, if by different marriages.

Answer:   Richard Shifflett
               Date of Birth: 3/19/53
               Address: Spotsylvania, VA
          David Shifflett
               Date of Birth: 6/29/56
               Address: Springfield, VA
          John Shifflett (adopted)
               Date of Birth: 7/7/64
               Address: Lucama, NC

2

# Exhibit 7

EFiled
Mar 23 2007 9:42AMEDT
Transaction ID 14231783

IN RE: BALTIMORE CITY     *   JULY 8, 2008
     ASBESTOS LITIGATION      MESOTHELIOMA TRIAL CLUSTER
                  *   CONSOLIDATION NO.

          *   *   *   *   *   *   *   *   *

NAYMAN LAWSON, et al.,      *   IN THE      2 4 X   0 7 0 0 0 1 3 9

     Plaintiffs           *   CIRCUIT COURT

vs.                      *   FOR

ACandS, Inc., et al.,      *   BALTIMORE CITY

     Defendants          *   (The Ruckdeschel Law Firm and
                          Goldman & Skeen)

          *   *   *   *   *   *   *   *   *

CASES AFFECTED:

| | | |
|---|---|---|
| NAYMAN LAWSON | * | CASE NO. 24X07000029 |
| SHERRI MILLER | | CASE NO. 24X07000106 |
| WILLIAM SHIPLEY | * | CASE NO. 24X06000707 |
| GEORGE JURS | | CASE NO. 24X06000789 |
| ALFRED WILLIAMS | * | CASE NO. ~~24X04000623~~ 24X05000623 |

*****************************************

### CONSOLIDATION ORDER AND PRE-TRIAL SCHEDULE

It is this _21st_ day of _March_____, 2007, by the

Circuit Court for Baltimore City, ORDERED, that the above listed

cases are consolidated for trial and the Pre-Trial Schedule shall

be as follows, subject to further order of the Court.

_____         Cases identified for trial. Plaintiffs
                   identify the defendants they have served
                   with process. Plaintiffs identify the
                   parties with whom they have settled.

                   *Defendants shall notify Plaintiffs
                   within ten (10) days of any case in
                   which service is contested.*

10/12/2007          Plaintiffs provide executed answers
                    to interrogatories which identify
                    each worksite where plaintiff or
                    plaintiff's decedent worked, dates
                    at each site, co-workers at each
                    site, asbestos-containing products
                    (both type and manufacturer) at
                    each site, and contractors
                    installing asbestos products at
                    each site.  Plaintiffs respond to
                    requests for production of
                    documents and tangible things
                    (including medical records
                    plaintiffs have had possession of).
                    Plaintiffs produce authorization
                    for records.  Plaintiffs produce
                    Social Security print-out if in
                    Plaintiff's possession.  Defendants
                    must give notice to Plaintiffs of
                    any dispute contesting the adequacy
                    of discovery within seven (7) days
                    of receipt of discovery.

                    *Defendants must file any motions
                    contesting the adequacy of discovery
                    within fifteen (15) days of receipt of
                    discovery.  Plaintiffs shall respond
                    within five (5) days.  Any request(s)
                    for conference with the Court shall be
                    filed with the motion(s) or response(s).*

11/16/2007          Direct defendants identify parties
                    against whom contribution/set-off,
                    and indemnity claims will be
                    pursued.  Claims against any party
                    not so identified are hereby
                    dismissed.

11/30/2007          Last day for direct defendants to
                    serve third-party complaints.

12/14/2007          Cross and third-party defendants
                    identify parties against whom
                    contribution/set-off, and indemnity
                    claims will be pursued.  Claims
                    against any party not so identified
                    are hereby dismissed.

| | |
|---|---|
| 12/24/2007 | Last day for cross-and-third party defendants to serve complaints. |
| | Plaintiffs identify fact witnesses who may testify at trial. Plaintiffs provide addresses for witnesses who they cannot voluntarily produce for deposition without a subpoena from defendants. |
| 1/7/2008 | Plaintiffs name expert witnesses, provide Rule 2-402(e)(1) statements, and state available dates for deposition of expert witnesses. Plaintiffs produce imaging and pathology which plaintiffs have had possession of and provide plaintiff-specific reports. |
| 4/4/2008 | Last day for deposition of plaintiffs' fact witnesses who plaintiffs are able to voluntarily produce for deposition without subpoena by defendants. (Product Identification Witnesses) |
| 4/21/2008 | Plaintiffs name their "most likely to use" general product identification fact witnesses from the original fact witness list who have been previously deposed. Plaintiffs may supplement this list with names of any additional witnesses (1) who are specified as being made in substitution for an earlier-named witness who has become unavailable to testify at trial. The substituted witness must come from the original fact witness list or (2) whose testimony concerns job sites newly disclosed in documents or deposition testimony during the remaining time for depositions of fact witnesses. |
| 5/5/2008 | Defendants and third-party defendants name all witnesses who may testify at trial, provide Rule 2-402(e)(1) statements, and state available dates for deposition of expert witnesses. Defendants produce/return imaging and pathology which defendants have had possession of and provide plaintiff-specific reports. Defendants provide |

addresses of fact witnesses they cannot
voluntarily produce for deposition.
Defendants provide executed answer to
interrogatories which identify each
worksite where plaintiff or plaintiff's
decedent worked, dates at each site, co-
workers at each site, and contractors
installing asbestos products at each
site.  Defendants respond to requests
for production of documents and tangible
things (including medical records
defendants have had possession of).

*Plaintiffs must file any motions*
*contesting the adequacy of discovery.*
*Defendants shall respond within five (5)*
*days.  Any request(s) for conference*
*with the Court shall be filed with the*
*motion(s) or response(s).*

5/6/2008        Last day for deposition of plaintiffs'
                fact witnesses who plaintiffs are unable
                to voluntarily produce for deposition
                without a subpoena by defendants.  Last
                day for deposition of defense fact
                witnesses other than witnesses not
                subject to deposition under Judge
                Levin's Order dated April 16, 1990.

5/13/2008       Defendants name their "most likely to
                use," general product identification
                fact witnesses from the original fact
                witness list who have been previously
                deposed.  Defendants may supplement this
                list with names of any additional
                witnesses (1) who are specified as being
                made in substitution for an earlier-
                named witness who has become unavailable
                to testify at trial.  The substituted
                witness must come from the original fact
                witness list or (2) whose testimony
                concerns job sites newly disclosed in
                documents or deposition testimony during
                the remaining time for depositions of
                fact witnesses.

5/20/2008       File mandatory pre-trial motions, if
                any.  Any such motion serve on
                adversaries by hand, fax or e-filing.
                Copy provided to Judge's chambers on
                this date.

6/9/2008        Respond to pre-trial motions.  Responses
                served on adversaries by hand, fax, or
                e-filing.  Copy provided to Judge's
                chambers on this date.

6/17/2008       Complete all expert depositions.

6/17/2008       Pre-trial conference, 9:30.  Pre-trial
                motions hearing.  File voir dire.

7/8/2008        Jury selection and trial.


                         **Carol E. Smith**
                    The Judge's Signature Appears
                      On the Original Document

                       Judge Carol E. Smith


MesoJuly82008.wpd

# The Ruckdeschel Law Firm, LLC
3645 Cragsmoor Road
Ellicott City, Maryland 21042
443.286.8858

| | |
|---|---|
| Case Name: | Sherri Millar (decedent Thomas Glenn Millar) v. A.W. Chesterton |
| Case No: | 24X07000106 |
| Date Filed: | March 2, 2007 |
| Age: | 61 yrs old at death |
| D.O.D.: | 5/2/2006 |
| Union: | Sheet Metal Workers |
| Disease: | Mesothelioma |

Exposure Description: Mr. Millar was a welder and sheet metal worker at the Indian Head Naval research center in Indian Head Maryland and subsequently at the Treasury Department in Washington, D.C. Mr. Millar also performed mechanical and welding work at home and other locations outside of his full-time work. Mr. Millar was exposed to asbestos from, among other things, insulation products, drywall joint compound, welding rod coatings, asbestos cement pipe and panels, gaskets and packing and friction products.

Defendants in the Millar case are:

1.
2. A.W. CHESTERTON
3. BONDEX INTERNATIONAL
4. CERTAINTEED
5. CRANE CO.

6. DAIMLER CHRYSLER
7. DURABLA MANUFACTURING COMPANY
8. FORD MOTOR COMPANY
9. GARLOCK, INC.
10. GENERAL MOTORS
11. GEORGIA- PACIFIC
12. GOODRICH CORPORATION
13. GOODYEAR
14. HOBART BROTHERS
15. HONEYWELL INTERNATIONAL, INC.
16. JOHN CRANE, INC.
17. KAISER GYPSUM

18. LINCOLN ELECTRIC
19. MCIC
20. METROPOLITAN LIFE INSURANCE CO.
21. PNEUMO ABEX LLC
22. RAPID-AMERICAN
23. REPUBLIC POWDERED METALS, INC.
24. RPM, INC.
25. RPM, INTERNATIONAL INC.
26. T.H. AGRICULTURE & NUTRITION, LLC
27. UNION CARBIDE
28. UNIROYAL, INCORPORATED
29. WALTER E. CAMPBELL

# The Ruckdeschel Law Firm, LLC

3645 Cragsmoor Road
Ellicott City, Maryland 21042
443.286.8858

Case Name:   Nayman & Mary Lawson v. AC&R Insulation Co. et. al.
Case No:     24X07000029
Date Filed:  January 16, 2007
Age:         85
D.O.D:       n/a
Union:       United Mine Workers (Bartgis Brothers)/UAW (GM)
Disease:     Mesothelioma

Exposure Description: Mr. Lawson was a welder in the Norfolk Ship Yards during WWII and then at Bartgis Brothers Pulp & Paper in Ellicott City in the 1940s. He worked for GM at Broening Highway from 1949 until retirement in 1979. Mr. Lawson also worked for Tom Moxley Construction in and around Baltimore during the 1960s and early 1970s building and renovating residential buildings. During his employment he was exposed to asbestos dust from insulation, marine wallboard & flooring, gaskets & packing, joint compound, asbestos cement pipe, floor and ceiling tiles and friction materials.

Defendants in the Lawson case (without listing alternative corporate names) are:

1.

| | | | | | |
|---|---|---|---|---|---|
| 2. | AC&R | 21. | Foster-Wheeler | 40. | John Crane |
| 3. | AO Smith | | | 41. | Kaiser Gyp. |
| 4. | AW Chesterton | 22. | Garlock | 42. | Lincoln Electric |
| 5. | Am. Standard | 23. | G.E. | | |
| 6. | Aqua-Chem | 24. | G.M. | 43. | MCIC |
| 7. | Bondex | 25. | Gen. Refrac. | 44. | Mestek |
| 8. | Buffalo Pump | 26. | G.P. | 45. | Metropolitan Life |
| 9. | Certainteed | 27. | Goodrich | | |
| 10. | Cleaver-Brooks | 28. | Goodyear | 46. | 3M |
| | | 29. | Gould Pumps | 47. | Oakfabco |
| 11. | Columbia Boiler | 30. | Hampshire | 48. | OI |
| | | 31. | H.B. Fuller | 49. | PneumoAbex |
| 12. | Crane Co. | 32. | H.B. Smith | 50. | Rapid-Amer. |
| 13. | Crown Cork | 33. | Hennessy Industries | 51. | Riley Stoker |
| 14. | Chrysler | | | 52. | RPM |
| 15. | Door-Oliver | 34. | Hobart Brothers | 53. | SB Decking |
| 16. | Durabla | 35. | Hopeman Brothers | 54. | Seimans Demag Delaval |
| 17. | E.L. Stebbing | | | | |
| 18. | Erie City Iron Works | 36. | Honeywell | 55. | Superior Boiler |
| 19. | FMC Corp. | 37. | IMO | 56. | THAN |
| 20. | Ford | 38. | Ingersoll Rand | 57. | UCC |
| | | 39. | Int. Paper | | |

58.   Uniroyal
59.   Viacom
60.   Weil-McLain
61.   Walter
      Campbell
62.   Zurn

# The Ruckdeschel Law Firm, LLC
3645 Cragsmoor Road
Ellicott City, Maryland 21042
443.286.8858

Case Name:   William Shipley v. A.W. Chesterton
Case No:      24X06000707
Date Filed:   October 23, 2006
Age:          69
D.O.D.:       n/a
Union:        Asbestos Worker Local 11/Int. Union Elevator Constructors
Disease:      Mesothelioma

Exposure Description:  Mr. Shipley was a union insulator in and around Baltimore for various companies between approximately 1956 and 1971 at a variety of industrial and construction sites.  Mr. Shipley was a non-union supervisor for various insulation companies at a variety of industrial and construction sites in the greater Baltimore area until the late 1970s.  Mr. Shipley then became a union elevator mechanic's helper.  Mr. Shipley was exposed to asbestos from insulation, marine wallboard and flooring, gaskets and packing, brakes, and drywall joint compound.

Defendants in the Shipley case (without listing alternative corporate names) are:

1.
2.  AW Chesterton
3.  Bondex
4.  Crown Cork
5.  E.L. Stebbing
6.  ExxonMobil
7.  Hampshire
8.  Hopeman Brothers
9.  Honeywell
10. IMO
11. Ingersoll Rand
12. Int. Paper
13. Kaiser Gyp.
14. OI
15. Rapid-Amer.
16. RPM
17. SB Decking
18. Seimans Demag Delaval
19. THAN
20. UCC
21. Weil-McLain
22. Walter Campbell

## SKEEN, GOLDMAN, LLP
11 E. Lexington St., STE 400
Baltimore, MD 21202

HARRY GOLDMAN, JR.
ROBERT G. SKEEN

Voice: 410-837-4222        Fax:  866-335-1920        skeengoldman@comcast.net

February 27, 2007

<u>VIA FACSIMILE TO 410-649-2111</u>
Armand J. Velta, Esq.
Law Offices of Peter G. Angelos
One Charles Center
100 N. Charles Street, Suite 2200
Baltimore, MD 21202

        Re:    Skeen, Goldman, L.L.P. Cases Assignments

Dear Dino:

        At your request I amplify the information required by you to obtain assignments in these cases and again thank you for your kind help.

        George Jurs v. Allied Chemical Corp., et al., CT-5 Case No. 24x06000789. It was filed on December 27, 2006. The defendants have answered. George Jurs is a living man in this case. His testimony has been perpetuated by videotape. He was born April 8, 1922 and as stated, is still living. His first exposure was at Key Highway Shipyard in 1941 where he worked as a scaler in the labor gang. In January of 1942 he was transferred to Fairfield Shipyard as a riveter heater and backer. At Fairfield he worked for 2 ¼ years until 1944, returning to Key Highway as a helper handyman and working there all of 1945 with a brief stint in the second quarter of 1945 at Fairfield, returning to Key Highway in the third and fourth quarters of 1946. He also worked as a general laborer at the steel plant during this period of time, the exact dates of which are unknown. He was a member of Local 24 I.U.M.S.W.A. As stated, he is still living and his asbestosis case has previously been litigated and settled. (Case No. 9406502, Consolidated Case No. 24-01-001016 (Alder Group). He was diagnosed with mesothelioma on May 14, 2006. It would seem a case for expedited treatment.

        Next is the mesothelioma case of Alfred Williams. His case was filed on or about September 8, 2005, No. 24x40000623. Mr. Williams was born on January 10, 1924 and died on May 3, 2003 of mesothelioma. He was diagnosed on or about December 30, 2002.

Armand J. Volla, Esq.
February 27, 2007
Page 2

Mr. Williams first exposure to asbestos was at Patapsco Scrap in 1947 and 1948. His next exposure was at Maryland Shipbuilding and Drydock from 1952 to 1953 and one quarter in 1956 where he was again exposed to asbestos. He intermittently worked at Bethlehem Mills where he was exposed to asbestos from 1950 to 1963. He worked at Key Highway from 1956 to 1958 and was a member of Local 24. His occupation was a painter.

Next is a Remand from the Court of Special Appeals in the cases of James Knight and Curtis Stewart with which you are familiar since I sent you the Court of Special Appeals Opinion. The case designation is James Knight v. AcandS, Inc., et al., Case Nos. 00000454. Mr. Knight's case was filed on May 12, 2000. He was born on May 9, 1909 and died on October 11, 1996 of lung cancer. He worked as a crane hooker on from 1951 to 1972 at Sparrows Point, Local 33.

Curtis Stewart is a living lung cancer case. His birth date is March 29, 1919. He began work at Tin Mill, first exposure 1936 to 1942, worked at Maryland Drydock from 1946 to 1948 and then went to Sparrows Point Shipyard in 1948 until 1981 working as a crane man and hooker on. He was a member of Local 33, as was Mr. Knight. Case No. 90067502 filed March 8, 1990. He was first exposed to asbestos as a laborer at Tin Mill. In the interim he worked at Maryland Drydock from 1946 to 1948.

Next is the lung cancer death case of John Campbell, Nancy Lee, Personal Representative, Case No. 24x01000225 filed March 5, 2001. Mr. Campbell was born August 26, 1922 and died of cancer on February 4, 1998. His first exposure was at Maryland Drydock in 1948 where he worked as a boiler maker. He then went to Sparrows Point, working from 1949 to 1950 in the same trade and returned to Maryland Drydock working from 1951 to 1961. In the interim, he worked at Key Highway from 1955 to 1956 and part of 1961 as a ship fitter, last exposure.

There is the asbestosis death case with tissue of H. Curtis Lundy. Mr. Lundy was born September 10, 1916 and died of asbestosis on July 5, 1994. He worked from 1942 to 1979 at Maryland Drydock, his only asbestos exposure, as an electrician. His case was filed September 20, 1995, Case No. 94200504.

Finally, there is the lung cancer death case of Edwin Wild, Robert Wild and Dorothy Thomas, Co-Personal Representatives. Case No. x99000176 was filed on January 25, 1999. Mr. Wild was born on January 1, 1909 and died on June 13, 1997. He worked at Sparrows Point Shipyard as a painter. He was first exposed in 1941 retiring in 1972.

GEORGE JURS                                    *    IN THE
1717 Dundalk Avenue
Apt. B-4                                        *    CIRCUIT COURT
Baltimore, MD 21222
                                               *    FOR
        Plaintiff
v.                                             *    BALTIMORE CITY

ALLIED CHEMICAL CORPORATION                    *


and

ALLTITE GASKETS                                *
Serve On:
Resident Agent                                 *
323 William Street
South River, NJ 08882                          *       *      *      *      *      *

                                               *    CT-5 SHIPYARD CASES
 and
                                               *    COMPLAINT
ANCHOR PACKING COMPANY
Serve On: Corporate Trust Center               *    (FIRST AMENDED FORM)
         1209 North Orange Street
         Wilmington, DE 19801                  *    AND DEMAND FOR JURY TRIAL

                                               *    CASE NO. 24X 06000789
and
                                               *
A.W. CHESTERTON COMPANY
Middlesex Industrial Park                      *
Stoneham, MA 02180
Serve on: Corporation Trust
         32 South Street
         Baltimore, MD 21202
and

BABCOCK AND WILCOX COMPANY
c/o BABCOCK ASBESTOS
SETTLEMENT TRUST
P.O. Box 3378
Washington, DC 20033

and

COMBUSTION ENGINEERING, INC.
Serve On: Stephen McCloskey, Esq.
          Greber & Sims
          20 S. Charles Street, Suite 702
          Baltimore, MD 21201


and


CROKER, INC.


and


DURABLA MANUFACTURING COMPANY
821 Lancaster Avenue
Strafford-Wayne, PA 19087
Serve On: William F. Mueller, Esquire
          Royston, Mueller, McLean and Reid
          Clemente, Mueller & Tobia, P.A.
          213 Ridgedale Avenue
          Morristown, NJ 07962-1296


and


E. L. STEBBINGS & COMPANY
1600 Clough Street
Baltimore, MD 21213
Serve On: Resident Agent
          Mr. James L. Fisher
          1600 Clough Street
          Baltimore, MD 21213


and


FOSTER WHEELER CORPORATION
110 S. Orange Avenue
Livingston, NJ 07039
Serve On: President
          Perryville Corporate Park
          Clinton, NJ 08809-4000


and


FOSTER WHEELER ENERGY CORPORATION


2

110 S. Orange Avenue
Livingston, NJ 07039
Serve On: President
          Perryville Corporate Park
          Clinton, NJ 08809-4000

and

GARLOCK SEALING TECHNOLOGIES, LLC
f/k/a GARLOCK, INC.
1666 Division Street
Palmyra, NY 14522
Serve On: President
          Garlock, Inc.
          1666 Division Street
          Palmyra, NY 14522

and

GENERAL ELECTRIC COMPANY
1 River Road
Schenectady, NY
          Serve On: The Corporation Trust, Inc.
          300 East Lombard Street
          Baltimore, MD 21202

and

H. B. FULLER COMPANY
f/k/a AMCHEM Products, Inc.
f/k/a Benjamin Foster
1200 Willow Lake Boulevard
P.O. Box 64683
St. Paul, MN 55164-0683

and

HALLIBURTON COMPANY
3600 Lincoln Plaza
500 North Akard Street
Dallas, TX 75201-3391
Serve On:
Dave J. Lesar, Chairman of the Board
CEO and President

3

3600 Lincoln Plaza
500 North Akard Street
Dallas, TX 75201-3391

and

HAMPSHIRE INDUSTRIES, INC.
f/k/a JOHN H HAMPSHIRE CO.
Serve On: Resident Agent
        Mr. Charles E. Fry, Jr.
        Secretary/Treasurer
        320 West 24th Street
        Baltimore, MD 21211

and

HONEYWELL INTERNATIONAL, INC.
fka ALLIED SIGNAL, INC.
Successor in Interest to the
BENDIX CORPORATION
Serve on: The Corporation Service Co.
        2711 Centerville Road
        Suite 400
        Wilmington, DE 19808

and

HOPEMAN BROTHERS, INC.
P.O. Box 820
Waynesboro, VA 22980
Serve On: President
        P.O. Box 820
        Waynesboro, VA 22980

and

INTERNATIONAL PAPER COMPANY
(Individually and as Successor to in Interest to
CHAMPION INTERNATIONAL CORPORATION
and U.S. PLYWOOD CORP.)
Stamford, CT
Serve On: The Corporation Trust
        300 East Lombard Street
        Baltimore, MD 21202

4

and

J. E. STEIGERWALD COMPANY., INC.
Serve On: J. Edgar Steigerwald, Jr.
       3 Glenluce Court
       Towson, MD 21204

and

JOHN CRANE-HOUDAILLE, INC.
f/k/a CRANE PACKING COMPANY
Morton Grove, IL 60053
Serve On: President
       John Crane-Houdaille, Inc.
       6400 Oakton Street
       Morton Grove, IL 60053

and

LOFTON CORPORATION
(As Successor-in-Interest to
Wayne Manufacturing Corporation)
Route 666
P.O. Box 478
Greenville, VA 24440
Serve On: David Allen, Esquire
       1 South Street, 20th Floor
       Baltimore, MD 21202

and

McCORMICK ASBESTOS
3624 Woodland Avenue
Baltimore, MD 21215
Serve On:
Robert I. McCormick
Resident Agent
11424 Crownhill Drive
Owings Mills, MD 21117

and

MELRATH GASKET, INC.
Serve On: 2901 W. Hunting Park Avenue

5

Philadelphia, PA 19129

Serve On: Gavett & Datt, P.A.
15850 Crabbs Branch Way, Suite 180
Rockville, MD 20855

and

METROPOLITAN LIFE INSURANCE CO.
1 Madison Avenue
New York, NY 10010
Serve On: R. Steven Orr
            Maryland Insurance Commissioner
            Maryland Insurance Admin.
            525 St. Paul Place
            Baltimore, MD 21202-2272

and

NATIONAL GYPSUM COMPANY
Serve On: Asbestos Claims
            Management Corporation
            3 10 East I-30, Ste. 285
            Garland, TX 75043

and

OWENS-ILLINOIS GLASS CO.
OWENS-ILLINOIS, INC.
P.O. Box 1035
Toledo, Ohio 43604
Serve On: Owens-Illinois, Inc.-Legal Dept.
            One SeaGate, Eighth Floor
            Toledo, OH 43666

and

PARAMOUNT PACKING & RUBBER CO.
Serve On: Gavett & Datt, P.A.
15850 Crabbs Branch Way, Suite 180
Rockville, MD 20855

and

6

PHELPS PACKING & RUBBER CO.
Serve On: Charles Phelps
Phelps Industrial
6301 Washington Boulevard
Elkridge, MD 21075

and

QUIGLEY COMPANY, INC.
a Subsidiary of Pfizer, Inc.
Serve On: President/CEO
          235 East 42nd Street
          New York, NY 10017

and

SELBY, BATTERSBY & COMPANY
5235 Whitby Avenue
Philadelphia, PA
Serve On:
Francis McGill Hadden, Esquire
Hecker Brown Sherry and Johnson
1700 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103

and

UNIROYAL, INCORPORATED
Serve On:
The Prentice Hall Corporation System
    of Maryland, Inc.
11 E. Chase Street
Baltimore, MD 21202

and

UNION CARBIDE CORPORATION
32 East 42nd Street
New York, NY 10017
Serve On: Corporation Trust, Inc.
          32 South Street
          Baltimore, MD 21202

7

and

U.S. GYPSUM COMPANY
Serve On:
Corporate Trust, Inc.
300 East Lombard Street
Baltimore, MD 21202

and

VIACOM INC., SUCCESSOR BY MERGER
WITH CBS CORPORATION
f/k/a WESTINGHOUSE ELECTRIC CORPORATION
Serve On: CSC - Lawyers Incorporating
           Service Company
           11 East Chase Street
           Baltimore, MD 21202

and

WARREN PUMPS, INC.
Serve on: The Corporation Service Co.
           2711 Centerville Road
           Suite 400
           Wilmington, DE 19808

and

WAYNE MANUFACTURING CORPORATION
P.O. Box 820
Waynesboro, VA 22980
Serve On: David Allen, Esquire
           1 South Street, 20th Floor
           Baltimore, MD 21202

## COMPLAINT (FIRST AMENDED
## (SHORT FORM) AND DEMAND FOR JURY TRIAL

George Jurs, Plaintiff by his attorneys, Harry Goldman, Jr. and Robert G. Skeen, Skeen,

Goldman, L.L.P., sues the Defendants named in the caption herein and hereby adopts and

8

LORRAINE WILLIAMS, as Surviving Widow    *   IN THE
and Personal Representative for the Estate of
ALFRED WILLIAMS, Deceased    *   CIRCUIT COURT
15554 Cambridge Drive
Latrop, CA 95330    *   FOR

   *   BALTIMORE CITY

and    *   CT-5 Shipyard Cases

DEBORAH WILLIAMS, Surviving Daughter of    *
ALFRED WILLIAMS, Deceased
1610 N. Hilton Street, Apt. B1    *
Baltimore, MD 21216
   *

Plaintiffs    *

   *

v.    *

   *

MCIC, INC.
And its remaining Director Trustees,    *
      Robert I. McCormick,
      Elizabeth McCormick,    *
      and Patricia Schunk
Serve:  John J. Nagle, III, Esquire    *
      Bodie, Nagle, Dolina, Smith & Hobbs, P.A.
      21 W. Susquehanna Avenue    *
      Towson, MD 21204
State of Incorporation:  MD    *
Principal Place of Business:  MD
   *

UNIROYAL, INC.
Serve:  President/CEO    *
      70 Great Hill Road
      Naugatuck, CT 06770    *
State of Incorporation:  NJ
Principal Place of Business CT    *

RAPID AMERICAN CORPORATION    *
Serve:  The Prentice Hall Corporation
      Systems, Inc.    *
      2711 Centerville Road, Suite 400
      Wilmington, DE 19808    *
State of Incorporation:  DE
Principal Place of Business:  NY    *

1

LLOYD E. MITCHELL, INC.
Serve:  John J. Nagle, III, Esquire
   Bodie, Nagle, Dolina, Smith & Hobbs, P.A.
   21 W. Susquehanna Avenue
   Towson, MD 21204
State of Incorporation:  MD
Principal Place of Business:  MD

VIACOM, INC., Successor by Merger with
CBS CORPORATION, f/k/a WESTINGHOUSE
ELECTRIC CORPORATION
Serve:  CSC - Lawyers Incorporating Service Co.
   11 East Chase Street
   Baltimore, MD 21202
State of Incorporation:  PA
Principal Place of Business:  MD

GENERAL REFRACTORIES CO.
Serve:  President/CEO
   225 City Avenue, Suite 114
   Bala Cynwyd, PA 19004
State of Incorporation:  PA
Principal Place of Business:  PA

E. L. STEBBINGS & COMPANY
Serve:  Mr. James L. Fisher
   1600 Clough Street
   Baltimore, Maryland  21239
State of Incorporation:  MD
Principal Place of Business:  MD

HAMPSHIRE INDUSTRIES, INC.
Serve:  Mr. Charles E. Fry, Jr.
   330 West 24th Street
   Baltimore, Maryland  21211
State of Incorporation:  MD
Principal Place of Business:  MD

GEORGIA PACIFIC CORPORATION
Serve:  The Corporation Trust, Inc.
   300 East Lombard Street
   Baltimore, Maryland  21202
State of Incorporation:  MD
Principal Place of Business:  MD

2

METROPOLITAN LIFE INSURANCE CO.                    *
Serve:  Maryland Insurance Administration
            525 St. Paul Place                     *
            Baltimore, Maryland  21202             *
State of Incorporation:  MD
Principal Place of Business:  MD                   *

                                                   *

OWENS-ILLINOIS, INC.                               *
Serve:  The Corporation Trust, Inc.
            32 South Street                         *
            Baltimore, Maryland  21202
State of Incorporation:  OH                        *
Principal Place of Business:  OH

SELBY, BATTERSBY & CO. n/k/a                        *
SB DECKING, INC.
Serve:  Francis M. Hadden, Esquire                 *
            Hecker, Brown, Sherry & Johnson
            1700 Two Logan Square                   *
            18th & Arch Streets
            Philadelphia, PA  19103                 *
State of Incorporation:  DE
Principal Place of Business:  DE                    *

                                                   *

UNION CARBIDE CORPORATION                          *
Serve:  The Corporation Trust, Inc.
            300 East Lexington Street               *
            Baltimore, Maryland  21202
State of Incorporation:  NY                         *
Principal Place of Business:  NY

AMCHEM PRODUCTS, INC.                               *
Serve:  The Corporation Trust Co.
            Corporation Trust Center                *
            1209 Orange Street
            Wilmington, DE 19801                    *
State of Incorporation:  DE
Principal Place of Business:  PA                    *

DANA CORPORATION                                    *
Serve:  The Corporation Trust, Inc.
            300 East Lombard Street                 *

3

2711 Centerville Road, Suite 400      \*
Wilmington, DE 19808
State of Incorporation: DE            \*
Principal Place of Business: NJ
                                      \*
METROPOLITAN LIFE INSURANCE
COMPANY                               \*
No. 1 Metlife Plaza
27-01 Queens Plaza North              \*
Long Island City, New York  11101
                                      \*

      Defendants
\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## COMPLAINT AND PRAYER FOR JURY TRIAL

Lorraine Williams surviving widow and Personal Representative of Alfred Williams, deceased and Deborah Williams surviving daughter of Alfred Williams, deceased, by their attorneys Harry Goldman, Jr. and Robert G. Skeen, Skeen, Goldman, LLP, sue Defendants above named as follows:

### Preliminary Statement

1.  Alfred Williams was born January 10, 1924 and died of malignant mesothelioma on May 3, 2003.  His social security number is 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.  He worked as a burner, welder and chipper at various Maryland Shipyards and other locations in Maryland and Virginia where he was exposed to asbestos.  (See attached Social Security Employment Record).  Additionally, Plaintiff's decedent was exposed to asbestos during employment with the U.S. Government and the U.S. Navy and in other industrial and non-industrial settings.

### COUNT ONE - STRICT LIABILITY

Plaintiffs repeat, reallege and incorporate by reference herein Count One of the Master Amended Complaint filed June 20, 1990 by the law offices of Peter Angelos, CT5 Shipyard Cases June 20, 1990, only paragraphs (1), (3), (4), (5), (6), (7), (8) of said Complaint.

5

Baltimore, MD 21202
State of Incorporation: VA
Principal Place of Business: OH

CERTAINTEED CORPORATION
Serve:  The Corporation Trust, Inc.
        300 East Lombard Street
        Baltimore, MD 21202
State of Incorporation: MD
Principal Place of Business: MD

ANCHOR PACKING CO.
Serve:  The Corporation Trust, Inc.
        820 Bear Tavern Road
        West Trenton, NJ 08628
State of Incorporation: NJ
Principal Place of Business: GA

GARLOCK SEALING TECHNOLOGIES, LLC
f/k/a GARLOCK, INC.
Serve:  President/CEO
        5605 Carnegie Boulevard, Suite 500
        Charlotte, NC 28209-4674
State of Incorporation: OH
Principal Place of Business: NY

FOSTER WHEELER CORPORATION
Serve:  President/CEO
        Perryville Corporate Park
        Clinton, NJ 08809
State of Incorporation: NY
Principal Place of Business: NJ

A. W. CHESTERTON CO.
Serve:  President/CEO
        225 Fallon Road
        Stoneham, MA 02180
State of Incorporation: MA
Principal Place of Business: MA

HONEYWELL INTERNATIONAL INC.
f/k/a ALLIED SIGNAL, INC.
Successor in Interest to the
BENDIX CORPORATION
Serve:  Corporation Service Company

4