● **MDL 875** ●

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC - 6 2007

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| IN RE:  ASBESTOS PRODUCTS LIABILITY | : | MDL No. 875 |
| LITIGATION (NO. VI) | : | |
| | : | |
| | : | |
| | : | December 4, 2007 |

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| EDWARD A. MACHNIK, et al. | : | Civil Action No. |
| Plaintiffs, | : | 3:07-cv-00357-CFD |
| | : | |
| v. | : | |
| | : | |
| BUFFALO PUMPS, INC.,  et al. | : | |
| Defendants. | : | |

**PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER TO
MDL**

The plaintiffs in the above-captioned action hereby move this Court to vacate the

conditional transfer order that will transfer this case to the Asbestos MDL (MDL-875) in

Philadelphia (CTO-295).  Transfer of this case should not be allowed for two main

reasons:  1) this case does not satisfy the preconditions for transfer; and 2) transferring

this case to the MDL would violate the plaintiffs' constitutional rights.

A memorandum of law is attached.

**OFFICIAL FILE COPY**

1

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
**EARLY, LUDWICK & SWEENEY, L.L.C.**
ONE CENTURY TOWER • 11th FLOOR • 265 CHURCH STREET • P.O. BOX 1866
NEW HAVEN, CONNECTICUT 06508-1866 • (203) 777-7799 • JURIS. NO. 409080

PLEADING NO. 5276

Respectfully submitted,
THE PLAINTIFFS


By
Christopher Meisenkothen, Esq.
cmeisenkothen@elslaw.com
Federal Bar No.: CT 20906
Early, Ludwick & Sweeney, LLC
One Century Tower, 11th Floor
265 Church St., PO Box 1866
New Haven, CT  06508
203-777-7799 phone
203-785-1671 fax

## Certificate of Service

I hereby certify that on December 4, 2007 a copy of foregoing PLAINTIFFS'

MOTION TO VACATE CONDITIONAL TRANSFER ORDER TO MDL was

mailed, postage prepaid, via United States Postal Service to all parties listed on

the attached certification page.

/s/Christopher Meisenkothen, Esq.
Christopher Meisenkothen, Esq.
Federal Bar No.: CT 20906
Early, Ludwick & Sweeney, LLC
265 Church Street, 11th Floor
New Haven, CT  06510
203-777-7799 phone
203-785-1671 fax
cmeisenkothen@elslaw.com
Counsel for the Plaintiffs

2

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| IN RE:  ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI) | : | MDL No. 875 |
| | : | |
| | : | |
| | : | |
| | : | December 4, 2007 |

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| EDWARD A. MACHNIK, et al.<br>        Plaintiffs, | : | Civil Action No.<br>3:07-cv-00357-CFD |
| | : | |
| v. | : | |
| | : | |
| BUFFALO PUMPS, INC.,  et al.<br>        Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO
VACATE CONDITIONAL TRANSFER ORDER TO MDL**

The plaintiffs in the above-captioned action hereby move this Court to vacate the conditional transfer order that will transfer this case to the Asbestos MDL (MDL-875) in Philadelphia (CTO-295).  Transfer of this case should not be allowed for two main reasons:  1) this case does not satisfy the preconditions for transfer; and 2) transferring this case to the MDL would violate the plaintiffs' constitutional rights.

**I.**     **Introduction and facts:**

In accordance with Rules 7.4(c) and 7.4(d) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, the plaintiffs oppose the transfer of the above-captioned action to the United States District Court for the Eastern District of Pennsylvania under 28 U.S.C. § 1407.  The plaintiffs respectfully ask that this Court enter

1

an Order vacating CTO-295, and allowing this case to be litigated and proceed to trial in the United States District Court for the District of Connecticut.

This case was originally filed in the Superior Court for the Judicial District of Fairfield at Bridgeport in Bridgeport, CT in February of 2007. The plaintiff, Edward Machnik, was diagnosed with terminal malignant mesothelioma – an asbestos-related cancer – on or around December 11, 2006.[1] Pursuant to the standing pre-trial orders governing the Connecticut asbestos litigation, the plaintiffs filed a motion to "accelerate," or expedite, Mr. Machnik's case. Because malignant mesothelioma is almost invariably aggressive and terminal (often killing its victims within twelve months after diagnosis), the Connecticut pre-trial orders provide for the acceleration of those lawsuits involving living, malignant mesothelioma victims in the hope that they, or at least their survivors, will get their day in court. If a plaintiff dies after his or her case has been accelerated, the case retains its preferred status and the trial date is not lost or pushed back.

Mr. Machnik's lawsuit was filed in February of 2007, it was accelerated under the Connecticut pre-trial order, and it was originally placed in position for a trial at the very end of 2007 or very early 2008. Shortly after the lawsuit was filed, however, the defendants removed the case to federal court (District of Connecticut) claiming federal officer jurisdiction arising from Mr. Machnik's allegations of asbestos exposure while serving as a machinist's mate in the United States Navy. The plaintiffs filed a motion to remand the case to state court, which, after extensive briefing and oral argument, the court (Droney, J.) denied the plaintiffs' motion and retained federal jurisdiction over the case. Unfortunately, Mr. Machnik lost his battle with mesothelioma and died on May 23,

---

[1] Mesothelioma is an "invariably fatal cancer… for which asbestos exposure is the only known cause…." In re Patenaude, 210 F.3d 135, 138 (3d Cir.), cert. denied, 531 U.S. 1011 (2000).

2

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
**EARLY, LUDWICK & SWEENEY, L.L.C.**
ONE CENTURY TOWER • 11th FLOOR • 265 CHURCH STREET • P.O. BOX 1866
NEW HAVEN, CONNECTICUT 06508-1866 • (203) 777-7799 • JURIS. NO. 409080

2007 awaiting the outcome of his remand motion.  The plaintiffs now move to prevent the transfer of this case to the MDL and the concomitant, irreparable damage that would be done to their lawsuit and to their constitutional rights.

## II.    **Argument:**

Pursuant to 28 U.S.C. § 1407(a), a case may be transferred to the MDL if the court makes an affirmative finding that the transfer 1) "will be for the convenience of parties and witnesses," and 2) "will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).  Neither of these preconditions to a transfer has been met in this case and, therefore, transfer to the MDL is inappropriate.  Even if these preconditions are deemed satisfied, transfer to the MDL should not be permitted as any transfer would irreparably violate the plaintiffs' constitutional rights.

### *1.    Transfer of this case to the MDL in Philadelphia will not be convenient for the parties or witnesses.*

Any transfer of this case out of the State of Connecticut will *not* "be for the convenience of parties and witnesses" and, therefore, the first precondition for transfer to the MDL is not met and transfer should not be allowed.  28 U.S.C. § 1407(a).  Mr. and Mrs. Machnik filed their lawsuit in the Superior Court of Connecticut, their home state and their preferred choice of jurisdiction and venue.

The Machniks have lived their entire lives in Connecticut.  Mr. Machnik died in Connecticut and Mr. Machnik is buried in Connecticut.  After completing his Navy service during the Korean War, Mr. Machnik returned to his hometown in Connecticut and worked in Connecticut and raised his family in Connecticut for the next forty years.  After retiring, the Machniks remained in Connecticut, where they are close to their

3

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
**EARLY, LUDWICK & SWEENEY, L.L.C.**
ONE CENTURY TOWER • 11th FLOOR • 265 CHURCH STREET • P.O. BOX 1866
NEW HAVEN, CONNECTICUT 06508-1866 • (203) 777-7799 • JURIS. NO. 409080

children and grandchildren, all of whom remain in Connecticut. One of the defendants, General Electric Company, is a Connecticut-based company with its headquarters in Fairfield. The parties have all retained Connecticut counsel to represent them in this action, discovery had already commenced in the Connecticut Superior Court and counsel had already participated in Mr. Machnik's deposition.

The plaintiffs' witnesses include Mrs. Machnik, who is elderly and infirm and who still resides in Connecticut; and Mr. and Mrs. Machnik's adult children, who also still reside in Connecticut. Although some expert and some lay witnesses may be traveling in from various parts of the country for trial, there is no reason why traveling to Philadelphia is any easier or more convenient than traveling to Connecticut. Since General Electric is based in Connecticut, one or more of GE's corporate witnesses (whether called by the defendant or by the plaintiffs) are also likely to be Connecticut-based.

It is hard to imagine why the jurisdiction of Connecticut is not an appropriate venue for this case. It is even harder to imagine why the jurisdiction of Philadelphia *would be* appropriate. Considering these simple facts, transfer to the MDL will not be for the convenience of the parties or witnesses and transfer should not be allowed.

2.  ***Transfer of this case to the MDL will <u>not</u> promote the just and efficient conduct of this action.***

Transfer to the MDL will also *not* "promote the just and efficient conduct of [this] action[]." 28 U.S.C. § 1407(a). Since the second precondition for transfer has also not been satisfied, transfer should not be allowed.

4

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
**EARLY, LUDWICK & SWEENEY, L.L.C.**
ONE CENTURY TOWER • 11th FLOOR • 265 CHURCH STREET • P.O. BOX 1866
NEW HAVEN, CONNECTICUT 06508-1866 • (203) 777-7799 • JURIS. NO. 409080

The attempted removal of asbestos cases is a common tactic for defendants seeking to delay or deny plaintiffs' rights to a trial on the merits of their state claims. Defendants seek to avail themselves of the "black hole" that is the federal Asbestos MDL. Once removed and assigned to the MDL, asbestos cases that would have proceeded to a timely trial in state court are forever mired in inactivity. Defendants benefit from the passage of time, while plaintiffs (most of whom die first) suffer from never having the opportunity to put their claims to a jury. As Judge Michael Mills of the United States District Court for the Northern District of Mississippi stated:

> [A]sbestos removal litigation ... generally has less to do with effecting valid removals than with attempting to obtain a transfer of the case to a multi-district litigation (MDL) court, where the case generally languishes for a protracted period of time. While the desire of defendants to reach the comparative safety of an MDL court is understandable, their repeated efforts to do so, regardless of the jurisdictional merits, has resulted in an air of skepticism among the federal courts regarding the validity of most asbestos removals.

Rosamond v. Garlock Sealing Technologies, Inc., No. 3:03CV235, 2004 WL 943924 at *4 (N.D. Miss, Apr. 5, 2004).

Asbestos cases removed to federal court are transferred to MDL-875. The cases languishing in MDL-875 are not only never tried, but indeed virtually nothing happens to them at all. In fact, Chief Judge Hornsby of the United States District Court in Maine has recognized this very problem:

> If these claims return to state court, they will proceed to resolution. If they remain in federal court they will encounter significant delay upon their transfer through the panel on multidistrict litigation to the Eastern District of Pennsylvania where no asbestos trials or discovery takes place in deference to global settlement efforts. This delay is of economic benefit to the defendants and imposes costs on the plaintiffs.

5

In re Maine Asbestos Cases, 44 F.Supp.2d 368, 374 (D.Me 1999).  Although

approximately 103,000 asbestos cases have been transferred to MDL-875 from other

federal courts during the life of MDL-875, no common or global discovery has been

sought or obtained by either the plaintiffs or the defendants.  Nor has the asbestos

Plaintiffs' Steering Committee met since 1993.  The defendants may argue that this case

can be tried if it is remanded from MDL-875.  As the defendant is well aware, however,

while remand may be a theoretical possibility, it is not a real possibility.  According to

orders issued by the former MDL Judge, remands are only for the "sick and dying," and

only then *after* a conclusion that all settlement avenues have been decided.  See Carlough

et al v. Amchem Products, Inc. et al., C.A. No. 93-215, U.S.D.C. for the E.D. of Penn., at

8 (April 1993) (Weiner, J.) (attached as Exhibit A).  The MDL Court has made its

intentions clear.  All other motions for remand are "routinely denied."  Id. at 8.

As further ordered by the former MDL Judge, it is the Court's stated intention to

resolve MDL-875 cases through *negotiation*, not trial.  Indeed, MDL-875 Administrative

Order No. 3, which establishes a priority system for resolving asbestos cases, discusses

resolution by settlement **only**.  See Administrative Order No. 3, *In re Asbestos Products*

*Liability Litigation (No. VI)*, in the U.S. District Court for the Eastern District of

Pennsylvania (attached as Exhibit B).  If there was any doubt that trial is not a realistic

option for victims whose cases are transferred to MDL-875, those doubts were resolved

when John F. Nangle, the then-Chair of the Multidistrict Litigation Panel, stated in

reference to MDL-875, "**that anything but trial is the answer**."  See Excerpt from

Transcript of Hearing, Judicial Panel on Multidistrict Litigation, *In re Asbestos Products*

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
**EARLY, LUDWICK & SWEENEY, L.L.C.**
ONE CENTURY TOWER • 11th FLOOR • 265 CHURCH STREET • P.O. BOX 1866
NEW HAVEN, CONNECTICUT 06508-1866 • (203) 777-7799 • JURIS. NO. 409080

*Liability Litigation(No. VI)*, Middle District of Florida, January 29, 1999, at 69 (attached as Exhibit C).

The data collected by the Judicial Panel on Multidistrict Litigation clearly illustrates what an empty promise MDL-875 is, even for the sick and dying. By August 10, 2000, more than 86,000 cases had been transferred to MDL-875. Yet, during Fiscal Year 1998 (October 1, 1997-September 30, 1998) **only four cases were remanded back for trial. In Fiscal Year 1999, only six cases were remanded back for trial.** See Letter from Ariana Estariel, Judicial Panel on Multidistrict Litigation, to Kay Gunderson Reeves, August 10, 2000, at 2 (results of data request) (attached as Exhibit D). Though the data for FY2000 show an increase in remand activity, the number remanded as of the date of Ms. Estariel's letter was only 0.2294% of the total number of cases transferred to MDL-875. Id.

A recent summary of additional docket information from the MDL Court is instructive. See Summary (attached here as Exhibit E). Between September 30, 2003 and September 30, 2004, only 20 of the 32,542 pending cases were remanded (<0.1% of pending MDL cases, or fewer than one-in-a-thousand). Between the same dates in 2004 and 2005, only an additional 61 cases were remanded (<0.2% of pending cases, or fewer than two-in-a-thousand). Between 2005 and 2006, a scant 6 cases were remanded (<0.02% of pending cases, or **fewer than two-in-ten thousand**). The total numbers of transferred cases and pending cases have risen each year. And if one looks at the totals, it

7

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
**EARLY, LUDWICK & SWEENEY, L.L.C.**
ONE CENTURY TOWER • 11th FLOOR • 265 CHURCH STREET • P.O. BOX 1866
NEW HAVEN, CONNECTICUT 06508-1866 • (203) 777-7799 • JURIS. NO. 409080

is plain to see that over 99% of all the pending cases remain dormant for years, if not forever. These are not encouraging statistics.[2]

Remand is an empty dream for victims unlucky enough to have their cases transferred to MDL-875. Indeed, it is to achieve this very result (referral to the black hole that is MDL-875) that this removal was pursued in the first place. The defendants should not be rewarded for taking unfair advantage of procedural tools that will permit this malignant mesothelioma case to disappear into the Asbestos MDL. The defendant has already thwarted the plaintiffs' hopes for a speedy trial on the accelerated docket in the Connecticut Superior Court by removing this case to federal court. After successfully challenging the plaintiffs' motion to remand this case to state court, the defendant (revealing its true motives) is not content simply to litigate this case in the federal forum. Instead, the defendant continues to thwart any remaining hopes that the plaintiffs had for a trial by pursuing transfer of this case to the Asbestos MDL, a transfer, it should be noted, that has been seriously and legitimately criticized not only by the plaintiffs, but by the federal courts themselves. See Rosamond v. Garlock Sealing Technologies, Inc., No. 3:03CV235, 2004 WL 943924 at *4 (N.D. Miss, Apr. 5, 2004); In re Maine Asbestos Cases, 44 F.Supp.2d 368, 374 (D.Me 1999); Madden v. Able Supply Company, 205 F.Supp.2d 695, 702 (May 27, 2002).

Although invited to do so by the plaintiffs, the defendant has not agreed to litigate this case in the Connecticut federal court. If the defendant's real motive was simply to avail itself of a federal forum within which to litigate its federal defenses, then those

---

[2] The numbers are similarly abysmal if one compares the total number of remanded cases (433) to the total number of transferred cases (103,364) as of September 30, 2006. Using those numbers, the rate of remand for all cases is less than 0.45%, or fewer than five-in-a-thousand.

8

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
**EARLY, LUDWICK & SWEENEY, L.L.C.**
ONE CENTURY TOWER • 11th FLOOR • 265 CHURCH STREET • P.O. BOX 1866
NEW HAVEN, CONNECTICUT 06508-1866 • (203) 777-7799 • JURIS. NO. 409080

motives would be fulfilled by litigating this case in the District of Connecticut.  But the

defendant is not content even to litigate in Connecticut.  The defendant apparently

believes that letting this case stagnate in the MDL is the only option that is "fair" to all

parties.  It should be crystal clear by now what the defendant's true motive is – transfer to

the MDL and eternal stagnation of this mesothelioma death case.

There is little serious question that the plaintiffs are about to suffer substantial

harm if their case is transferred to the MDL where it will become one of 30,000+ pending

cases, never to see the light of day again.[3]  The defendant may claim that the plaintiffs

have relied on outdated data and have essentially ignored the 75,000 cases that have been

"terminated" by the MDL.  This is simply untrue.  The plaintiffs have provided all

current data from the Asbestos MDL's own docket, which clearly show an abysmal

remand rate even up through September of 2006.  The number of cases "terminated" or

"dismissed" is misleading since that number takes into consideration cases that were

dismissed voluntarily by plaintiffs as well as cases that were dismissed (not remanded for

trial) by the MDL for a variety of reasons, including recent attempts by various

defendants to dismiss large numbers of nonmalignant cases that rely on certain doctors

---

[3] At last count, plaintiffs' counsel had over 600 plaintiffs sitting in the Asbestos MDL (some in individual
cases and some in multi-plaintiff cases) for several years (some dating back to the inception of the MDL)
and literally no action of any kind has been taken in those cases.  As one specific example, since October of
2006 plaintiffs' counsel has been actively trying to get one of their Rhode Island mesothelioma cases
transferred back to Rhode Island for trial.  After numerous trips to Philadelphia for settlement conferences,
a small number of defendants have settled the case, but one or more defendants remain obstinate that they
will not take any action due to the fact that the case is in limbo in the MDL.  As of the date of this Motion
(more than one year later) that case is still pending in the MDL with no indication of when, or if, it will be
transferred back to Rhode Island for trial.  The plaintiffs encourage the defendants to submit any and all
data they have on the numbers of cases that they have settled or tried (as opposed to simply "resolved" or
"terminated" or "dismissed") in the MDL for comparison.  It would be helpful and instructive for the
plaintiffs and the Court to know what the defendant's own experience has been in the MDL.  The plaintiffs
have provided real data and real information on their own experience in the MDL, but, to date, the
defendant has provided no information about its experience "resolving" cases in the MDL.

9

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
**EARLY, LUDWICK & SWEENEY, L.L.C.**
ONE CENTURY TOWER • 11th FLOOR • 265 CHURCH STREET • P.O. BOX 1866
NEW HAVEN, CONNECTICUT 06508-1866 • (203) 777-7799 • JURIS. NO. 409080

for their diagnoses. In any event, the number of cases "terminated" or "dismissed" by the MDL is **not** an indication of the number of cases settled, tried or remanded.

Again, the plaintiffs encourage the defendants to share their own experiences in the MDL. The plaintiffs have provided current data from the MDL itself, and plaintiffs' counsel has provided details about its own experience in the MDL, but, to date, the defendants have provided no information about their own experience in the MDL. Perhaps the defendants can prove the plaintiffs wrong and show that the defendants have a successful history or settling or trying a number of cases in the MDL. That information would be insightful, instructive and welcome, but the plaintiffs venture to guess that the defendants will not, because they cannot, provide any such information to this Court.

The plaintiffs' fate is best summed up by a concise statement from the United States District Court for the Southern District of Texas, which found that if the cases before that court were not remanded,

> they will surely be transferred to the MDL Court in the Eastern District of
> Pennsylvania. There are thousands of asbestos cases pending in that
> forum, and, if history be any indicator, Plaintiff's claims against the
> Remaining Defendants will not be heard for many years. Keeping these
> claims in federal court will not increase efficiency and expediency. Rather
> the opposite is true.

Madden v. Able Supply Company, 205 F.Supp.2d 695, 702 (May 27, 2002). The conditions for transfer to the MDL have not been met, and indeed, cannot be met. Transfer is inappropriate and should not be allowed.[4]

---

[4] The plaintiffs also take personal and professional umbrage at the particularly offensive claim that they are engaging in an "elaborate game of forum shopping," which the defendants accused the plaintiffs of doing in the District Court. If anyone is forum shopping, it is the defendants. For all intents and purposes, the plaintiffs are lifelong residents of the State of Connecticut. At least one of the defendants is a Connecticut-based company. The plaintiffs retained Connecticut counsel and filed their case in the court of their **home state**. It was the defendants that removed this case to the USDC for the District of Connecticut and it is the defendants who are now attempting to transfer this case to the distant foreign forum of Philadelphia. It is

10

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
**EARLY, LUDWICK & SWEENEY, L.L.C.**
ONE CENTURY TOWER • 11th FLOOR • 265 CHURCH STREET • P.O. BOX 1866
NEW HAVEN, CONNECTICUT 06508-1866 • (203) 777-7799 • JURIS. NO. 409080

**3.**     *Transfer to the MDL would violate the plaintiffs' constitutional rights.*

Transferring this case to the Asbestos MDL would violate the plaintiffs'

constitutional rights under Article 1, §§ 1, 10 and 20 of the Connecticut Constitution and

the Seventh and Fourteenth Amendments to the United States Constitution.

> *a.*     *Transfer to the MDL would violate the plaintiffs' State right of redress or "right of open access to the courts."*

Article 1, § 10 of the Connecticut Constitution creates a "right of redress" or

"right to open access to the courts" and provides that "[a]ll courts shall be open, and

every person, for an injury done to him in his person, property or reputation, shall have

remedy by due course of law, and right and justice administered without sale, denial or

delay." The state right of redress holds a slightly different meaning than the various

equal protection provisions by providing an explicit constitutional guarantee of open

access to the state courts to pursue any cause of action that existed at the time of the

constitution's adoption. See Daily v. New Britain Machine Co., 200 Conn. 562, 512

A.2d 893 (1986).

Although the state constitutional right of redress does not "automatically

translate[] each and every claim that a litigant may raise into one invoking fundamental

rights;" Zapata v. Burns, 207 Conn. 496, 507, 542 A.2d 700 (1988); it did "recognize[]

all existing rights and removed from the power of the legislature the authority to abolish

those rights in their entirety . . . ." Daily, 200 Conn. at 585. However, "the legislature

retains the power to provide reasonable alternatives to the enforcement of such rights.

Where such reasonable alternatives are created, the legislature may then restrict or

---

baffling to understand how the defendants could claim that the **plaintiffs** are the ones who are forum
shopping.

11

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
**EARLY, LUDWICK & SWEENEY, L.L.C.**
ONE CENTURY TOWER • 11th FLOOR • 265 CHURCH STREET • P.O. BOX 1866
NEW HAVEN, CONNECTICUT 06508-1866 • (203) 777-7799 • JURIS. NO. 409080

abolish the incorporated common-law or statutory rights." Id. The Workers'

Compensation Act represents one such example of the legislature's power. Conn. Gen.

Stat. § 31-275, *et seq*.

In passing the Workers' Compensation Act, the legislature abolished employees'

common law right to sue their employers in tort. As a "reasonable alternative" to the

common law right it abolished, the legislature created a workers' compensation system

wherein an injured worker received the "new" right to seek compensation for an injury

sustained in the course of his employment without regard to fault. This is the

fundamental public policy trade-off underlying the Workers' Compensation Act.

Employers have a responsibility to compensate employees for workplace injuries and

employees surrender their common law right to sue their employers in tort. Employers

get predictable, finite compensation scales and "fixed" liability, while employees get

quick compensation for their injuries at a fixed percentage of their usual wage. This type

of "substitution" scheme is normally permissible, provided that the alternative remedy is

reasonable and adequate. However, in the case of the Asbestos MDL, no such reasonable

alternative exists for plaintiffs that are transferred to Philadelphia.

The statistics cited above show that there is virtually no movement of cases in the

MDL. This systemic inertia violates the plaintiffs' State constitutional rights to redress

and open access to the courts. Upon transfer to the MDL, the plaintiffs' case will be

mired in the MDL quicksand and all remedies against these particular defendants will be

effectively extinguished, leaving no "reasonable alternative" for the plaintiffs' to pursue

their lawful claims against these defendants. The plaintiffs' State constitutional right to

seek redress against these defendants for their injuries would be foreclosed, and their

12

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
**EARLY, LUDWICK & SWEENEY, L.L.C.**
ONE CENTURY TOWER • 11th FLOOR • 265 CHURCH STREET • P.O. BOX 1866
NEW HAVEN, CONNECTICUT 06508-1866 • (203) 777-7799 • JURIS. NO. 409080

right to open access to the courts would become a nullity.  Such an obvious injustice should not be allowed to stand.

> b.      *Transfer to the MDL would violate the plaintiffs' right of trial by*
> *jury as guaranteed by the Seventh Amendment to the U.S.*
> *Constitution and Article 1, § 19 of the Connecticut Constitution.*

The Seventh Amendment to the United States Constitution guarantees that "[i]n Suits at common law . . . the right of trial by jury shall be preserved . . ." U.S.C.A. Const. Amend. VII.  The Connecticut Constitution also protects this fundamental right: "The right of trial by jury shall remain inviolate . . ." Conn. Const. Article 1, § 19.  Transfer of the plaintiffs' case to the MDL would violate the plaintiffs' fundamental right to trial by jury, as guaranteed by the Seventh Amendment to the United States Constitution and Article 1, § 19 of the Connecticut Constitution.  The Seventh Amendment enshrines and protects one of our most cherished and fundamental rights – the right of trial by jury – that was deemed so crucial to our new republic that the Founding Fathers included it among the first ten amendments – the Bill of Rights – that were added to the Constitution shortly after its ratification.  With the current state of the MDL (indeed, the state that has persisted for many years now), there is no realistic hope of any trial, let alone a jury trial, for the vast majority of plaintiffs banished to Philadelphia.

In 1787, no less an authority than Thomas Jefferson explained the fundamental importance of the right to trial by jury: "A bill of rights [should provide] clearly and without the aid of sophisms for... the eternal and unremitting force of the habeas corpus laws, and trials by jury in all matters of fact triable by the laws of the land and not by the law of nations." Thomas Jefferson to James Madison, 1787, ME 6:387 (http://etext.virginia.edu/jefferson/quotations/jeff1520.htm).  Two years later, Jefferson

13

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
**EARLY, LUDWICK & SWEENEY, L.L.C.**
ONE CENTURY TOWER • 11th FLOOR • 265 CHURCH STREET • P.O. BOX 1866
NEW HAVEN, CONNECTICUT 06508-1866 • (203) 777-7799 • JURIS. NO. 409080

again intoned his unflinching faith in the bedrock principle of the jury system: "I consider trial by jury as the only anchor ever yet imagined by man, by which a government can be held to the principles of its constitution." Thomas Jefferson to Thomas Paine, 1789, ME 7:408, Papers 15:269 (http://etext.virginia.edu/jefferson/quotations/jeff1520.htm). The case before this Court represents more than simple ideological or historical platitudes about the jury system; it reveals the actual application of these fundamental, first principles: that all people should have equal access to the courts to seek redress for their legitimate grievances and that the government shall deny no person the right to trial by jury.

Some The data cited above from the MDL's own docket reveal the plaintiffs' words to be true. The MDL is not a proper forum for this case. The MDL does not move cases. The MDL is a "black hole" for asbestos cases. And the MDL denies plaintiffs their fundamental rights to redress, open access to the courts and trial by jury.

Some reasonable delay or alternative process in jury trials has sometimes been accepted as constitutional. See Woods v. Holy Cross Hospital, 591 F.2d 1164, 1178-81 (5th Cir. 1979) (mediation requirement for medical malpractice case prior to jury trial held constitutional); Crateo, Inc. v. Intermark, Inc., 536 F.2d 862, 867-68 (9th Cir. 1976), cert. denied, 429 U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180 (1976) (referral of complex matter to special master prior to jury trial held constitutional); In re Peterson, 253 U.S. 300, 304, 40 S.Ct. 543, 64 L.Ed. 919 (1920) (court-appointed auditor to conduct initial investigation and file report held constitutional). However, the interminable delay wrought by transfer to the MDL is not reasonable nor constitutional, and it effectively denies the plaintiffs their rights to trial by jury.

14

The plaintiffs' assertions are not made in a vacuum or invented out of whole cloth. As we saw in Section 2 of this brief, even the federal courts themselves have acknowledged that the Asbestos MDL is broken. See Rosamond v. Garlock Sealing Technologies, Inc., No. 3:03CV235, 2004 WL 943924 at *4 (N.D. Miss, Apr. 5, 2004); In re Maine Asbestos Cases, 44 F.Supp.2d 368, 374 (D.Me 1999); Madden v. Able Supply Company, 205 F.Supp.2d 695, 702 (May 27, 2002). The MDL does not simply *delay* the trial and resolution of asbestos cases, it effectively *eliminates* trials and halts resolution.

This type of substantial delay was ruled unconstitutional by the Ninth Circuit Court of Appeals. See Armster v. U.S. Dist. Court for the Central Dist. of Florida, 792 F.2d 1423 (9th Cir. 1986). See also Ex parte Milligan, 71 U.S. 2, 18 L.Ed. 281 (1866) (holding that criminal jury trials may not be suspended even during wartime). In Armster, the plaintiffs sought writs of mandamus prohibiting the local district courts from suspending all civil jury trials for a period of *three-and-a-half-months* due to budgetary concerns. See Armster, 792 F.2d at 1424 ("alleged insufficiency of funds appropriated for the payment of juror fees"). The Court of Appeals noted that the United States Supreme Court has "emphasized, in no uncertain terms, the importance of the right to a civil jury trial and the need for the courts to be vigilant in guarding against the erosion of that right." Id. at 1428. "The right of jury trial in civil cases . . . is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment. A right so fundamental and sacred to the citizen . . . should be jealously guarded by the courts." Id. (quoting Jacob v. New York City, 315 U.S. 752, 752-53, 62 S.Ct. 854, 86 L.Ed. 1166 (1942)).

15

*The Supreme Court has adopted a most rigorous standard for reviewing any potential infringement of the right to a civil trial.* The Court has said more than once that "'[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.'" Beacon Theatres v. Westover, 359 U.S. 500, 501, 79 S.Ct. 948, 951, 3 L.Ed.2d 988 (1959) (quoting Dimick v. Schiedt, 293 U.S. 474, 486, 55 S.Ct. 296, 301 (1935)). Thus, our duty is clear. *We must vigilantly protect the right to civil jury trials, and we must scrutinize in the most rigorous manner possible any action that appears to limit in any way the availability of that right.*

Id. at 1428-29 (emphasis added).

The Ninth Circuit emphatically rejected any cessation of civil jury trials for even a relatively short three-and-a-half-month period. The court explained:

*[C]onstitutional rights do not turn on the political mood of the moment, the outcome of cost/benefit analyses or the results of economic or fiscal calculations.* Rather, our constitutional rights are fixed and immutable, subject to change only in the manner our forefathers established for the making of constitutional amendments. The constitutional mandate that federal courts provide civil litigants with a system of civil jury trials is clear. There is no price tag on the continued existence of that system, or on any other constitutionally-provided right.

Id. at 1429 (emphasis added). The court concluded that "the civil jury trial system may not be suspended for lack of funds" and *the seventh amendment right to a civil jury trial is violated when, because of such a suspension, an individual is not afforded, for any significant period of time, a jury trial he would otherwise receive.*" Id. at 1430 (emphasis added). We should recall that the Machniks' case was originally filed in February of 2007 and was scheduled for trial by early 2008, about twelve months later. Now with the delay occasioned by the defendants' removal of this case to federal court and the impending transfer of the case to the MDL, the Machniks have lost all hope of having their trial by early 2008. As the Ninth Circuit forbade, the Machniks are "not

16

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
**EARLY, LUDWICK & SWEENEY, L.L.C.**
ONE CENTURY TOWER • 11th FLOOR • 265 CHURCH STREET • P.O. BOX 1866
NEW HAVEN, CONNECTICUT 06508-1866 • (203) 777-7799 • JURIS. NO. 409080

[being] afforded, for any significant period of time, a jury trial [they] would otherwise receive." Id. The Ninth Circuit went so far as to determine that the three-and-a-half-month delay in Armster was "far more than a significant period, given the mandate of the seventh amendment." Id.

Is anyone prepared to argue that a system that denies over 99% of plaintiffs their right to trial by jury is adequate, appropriate, fair or constitutional? Is anyone prepared to argue that years of stagnation in the MDL passes constitutional muster? The very notion insults the fundamental vision of the Framers.

The defendant cannot argue that the plaintiffs would be able to have any trial, let alone a timely trial, if this case is transferred to the MDL 875. Indeed, the defendants' silence on this "MDL-as-black-hole" issue is deafening. The defendants barely even addressed the plaintiffs' legitimate arguments, or the federal district courts that have criticized the Asbestos MDL, during the original removal/remand debate. The defendants did not address these issues because they know they cannot credibly defend the transfer of this case to the MDL as fair, just, convenient or efficient. This case does not belong in the Asbestos MDL and transfer should not be allowed.

        *c.*     *Transfer to the MDL would violate the plaintiffs' rights to equal protection as guaranteed by Article 1, §§ 1 and 20 of the Connecticut Constitution and the Fourteenth Amendment to the U.S. Constitution.*

Transferring this case to the MDL would violate the plaintiffs' rights of equal protection under Article 1, §§ 1 and 20 of the Connecticut Constitution and the Fourteenth Amendment to the United States Constitution.

When a statute is challenged on equal protection grounds . . . the reviewing court must first determine the standard by which the challenged

17

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
**EARLY, LUDWICK & SWEENEY, L.L.C.**
ONE CENTURY TOWER • 11th FLOOR • 265 CHURCH STREET • P.O. BOX 1866
NEW HAVEN, CONNECTICUT 06508-1866 • (203) 777-7799 • JURIS. NO. 409080

statute's constitutional validity will be determined. When a statutory
classification impinges upon an inherently suspect class or affects a
fundamental personal right, the statute is subject to strict scrutiny and is
justified only by a compelling state interest. Otherwise, a statute will
stand if the classification bears a reasonable relation to a legitimate state
interest. . . . A right is fundamental for purposes of equal protection
analysis if it is explicitly or implicitly guaranteed by the constitution.

Id. at 505 (citations omitted; internal quotation marks omitted). Transfer to the MDL

affects the plaintiffs' rights to trial by jury, which are explicitly guaranteed under both the

Connecticut and the U.S. constitutions. Because transfer to the MDL affects the

plaintiffs' fundamental rights to trial by jury, courts must utilize a strict scrutiny standard

when reviewing the constitutionality of the MDL for equal protection purposes. See id.

Article 1, § 1, of the Connecticut Constitution creates a "right of equality" that

states: "All men when they form a social compact, are equal in rights, and no man or set

of men are entitled to exclusive public emoluments or privileges from the community."

Article 1, § 20, the state equal protection provision, states that "[n]o person shall be

denied equal protection of the law nor be subjected to segregation or discrimination in the

exercise or enjoyment or his or her civil or political rights because of religion, race, color,

ancestry, national origin, sex or physical or mental disability." Section 1 of the

Fourteenth Amendment to the United States Constitution provides that "[no] State [shall]

deprive any person of life, liberty, or property, without due process of law; nor deny to

any person within its jurisdiction the equal protection of the laws."

"The equality of rights provision contained in article first, § 1, of the Connecticut

Constitution has a meaning equivalent to the equal protection clause contained in the

fourteenth amendment to the United States Constitution." Zapata v. Burns, 207 Conn.

496, 504, 542 A.2d 700 (1988). "Similarly, the equal protection provisions of the federal

18

and state constitutions have the same meaning and limitations." Id. (internal quotation marks omitted). See also Barnes v. City of New Haven, 140 Conn. 8, 98 A.2d 523 (1953); Lyman v. Adorno, 133 Conn. 511, 52 A.2d 702 (1947).

As is, unfortunately, clearly shown by the Asbestos MDL's own policies and statistics, cases stagnate in the MDL and become forgotten. A miniscule fraction of one percent of the pending cases in any given year are remanded for trial. While courts have sometimes permitted reasonable delays and alternative procedures in jury trials, this unique MDL brand of litigation limbo was never intended nor anticipated, and it should not be permitted. There is simply no compelling state interest in allowing legitimate lawsuits to disappear into a "black hole" and in denying plaintiffs their fundamental right to trial by jury.[5]

## III.    Conclusion:

This case does not belong in the Asbestos MDL in Philadelphia. By any objective measure, this case belongs in the State of Connecticut and it should be allowed to proceed to trial. The preconditions for transfer to the MDL have not been satisfied and, therefore, transfer is not appropriate and should not be allowed. Transferring this case to the MDL will not "be for the convenience of parties and witnesses" and it will not promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Transferring this case to the MDL will also violate the plaintiffs' constitutional rights to redress, open access to the courts, equal protection and trial by jury. The plaintiffs respectfully request that this

---

[5] The plaintiffs' arguments are not an indictment of the entire system of multidistrict litigation, which itself has been upheld as constitutional. Multidistrict litigation may be appropriate, efficient and functional in another context, but in this particular context – asbestos cases – the Asbestos MDL has been a proven failure. This Court can strike down and dismantle the Asbestos MDL as unconstitutional while leaving intact the existing law upholding the propriety of multidistrict litigation in other contexts.

19

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
**EARLY, LUDWICK & SWEENEY, L.L.C.**
ONE CENTURY TOWER • 11th FLOOR • 265 CHURCH STREET • P.O. BOX 1866
NEW HAVEN, CONNECTICUT 06508-1866 • (203) 777-7799 • JURIS. NO. 409080

Court enter an Order vacating Conditional Transfer Order 295 and prohibiting transfer of

this case to MDL-875 in Philadelphia.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC - 6 2007

FILED
CLERK'S OFFICE

Respectfully submitted,
THE PLAINTIFFS

By
Christopher Meisenkothen, Esq.
cmeisenkothen@elslaw.com
Federal Bar No.: CT 20906
Early, Ludwick & Sweeney, LLC
One Century Tower, 11th Floor
265 Church St., PO Box 1866
New Haven, CT  06508
203-777-7799 phone
203-785-1671 fax

## Certificate of Service

I hereby certify that on December 4, 2007a copy of foregoing MEMORANDUM
OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO VACATE
CONDITIONAL TRANSFER ORDER TO MDL was filed and served by mail,
postage prepaid, via United States Postal Service to all parties listed on the
attached certification page.

/s/Christopher Meisenkothen, Esq.
Christopher Meisenkothen, Esq.
Federal Bar No.: CT 20906
Early, Ludwick & Sweeney, LLC
265 Church Street, 11th Floor
New Haven, CT  06510
203-777-7799 phone
203-785-1671 fax
cmeisenkothen@elslaw.com
Counsel for the Plaintiffs

20

**James M. Celentano**
Halloran & Sage LLP
One Goodwin Sq.
225 Asylum St.
Hartford, CT 06103

Richard C. Binzley
Thompson Hine LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

**Timothy E. Kapshandy**
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603

Edward J. Cass
Gallagher Sharp Fulton
Norman
Bulkley Building; 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Susan M. Hansen
Brownson & Ballou
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

**Dan E. LaBelle**
Halloran & Sage
315 Post Rd. West
Westport, CT 06880

Adam M., Chud
Goodwin Procter, LLP
901 New York Avenue,
N.W.
Washington, DC 20001

Reginald S. Kramer
Oldham & Dowling
195 South Main Street
Suite 300
Akron, OH 44308-1314

**Geoffrey Lane Squitiero**
Maher & Murtha
528 Clinton Ave., PO Box
901
Bridgeport, CT 06601

David A. Damico
Burns White & Hickton
Four Northshore Center
106 Isabella Street
Pittsburgh, PA 15212

David C. Landin
Hunton & Williams, LLP
Riverfront Tower
East Tower
951 East Byrd Street
Richmond, VA 23219

**James R. Oswald**
Adler, Pollock & Sheehan
One Citizens Plaza, 8th Floor
Providence, RI 02903

Raymond P. Forceno
Forceno Goggin & Keller
1528 Walnut Street
Suite 900
Philadelphia, PA 19102

Gene Locks
Locks Law Firm LLC
1500 Walnut Street
Philadelphia, PA 19102

Ronald L. Motley
Motley & Rice LLC
PO Box 1792
28 Bridgeside Blvd
Mt Pleasant, SC 29464

John J. Repcheck
Marks O'Neill O'Brien &
Courtney PC
Gulf Tower; Suite 2600
707 Grant Street
Philadelphia, PA 15219

John D. Roven
Roven-Kaplan LLP
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
Vorys Sater Seymour
& Pease, LLP
52 East Gay Street
PO Box 1008
Columbus, OH  43216-1008

Robert N. Spinelli
Kelley Jasons McGuire & Spinelli LLP
Centre Square West
15th Floor
Philadelphia, PA  19102

Neil Selman
Selman Breitman & Burgess
11766 Wilshire Blvd
Sixth Floor
Los Angeles, CA  90025

Robert E. Swickle
Jaques Admiralty Law Firm
PC
1370 Penobscot Building
645 Griswold Street
Maritime Asb. Legal Clinic
Detroit, MI  48226-4192

Andrew Trevelise
Reed Smith LLP
2500 Liberty Place
1650 Market Street
Philadelphia,•PA  19103

James K. Weston, II
Tom Riley Law Firm
4040 First Avenue, NE
PO Box 998
Cedar Rapids, IA  52406