MDL 875◄

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 17 2007

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| WILLIAM J. HILBERT, JR. AND PAMELA A. HILBERT,<br><br>Plaintiff,<br><br>v.<br><br>MCDONNELL DOUGLAS CORPORATION et<br><br>Defendants. | MDL Docket No. 875 – In re Asbestos Products Liability Litigation (No. VI)<br><br>U.S.D.C. Massachusetts: Case No. 07-11900-NG |

**DEFENDANTS' JOINT RESPONSE TO PLAINTIFFS' MOTION FOR ORDER VACATING CONDITIONAL TRANSFER ORDER TO ALLOW TRANSFEROR COURT TO RULE ON PLAINTIFFS' MOTION FOR REMAND TO STATE COURT**

Comes now defendants McDonnell Douglas Corporation, The Boeing Company, Boeing North American, Inc., Northrop Grumman Corporation, and Raytheon Aircraft Company f/k/a Beech Aircraft Corporation (collectively, the "Defendants") and file this Response to *Plaintiffs' Motion for Order Vacating Conditional Transfer Order to Allow Transferor Court to Rule on Plaintiffs' Motion for Remand to State Court* (the "*Motion to Vacate*"). The Panel issued its *Conditional Transfer Order* to transfer this action as a tag-along action to the Multi-District Litigation ("MDL") No. 875 In Re Asbestos Product Liability Litigation proceedings in the United States District Court for the Eastern District of Pennsylvania ("MDL 875") on October 26, 2007

**OFFICIAL FILE COPY**

PLEADING NO. 5288

IMAGED DEC 1 8 2007

(the "*CTO*").  Plaintiffs' *Motion to Vacate* should be denied and the transfer should be finalized for the following reasons:

1.      Plaintiffs fail to articulate, let alone make the requisite strong showing for, any valid basis for this Panel to vacate the *CTO*.

2.      There is nothing unique about this case, including the issues arising from Plaintiffs' Motion for Remand, that warrants vacating the CTO.  Simply stated, this action is similar to thousands of asbestos injury and wrongful death actions that have been transferred from federal district courts throughout the country to MDL 875 for coordinated proceedings ever since MDL 875 was established in 1991, and is similar to thousands more such actions that no doubt will continue to be transferred to MDL 875 in the future.

3.      The fact that a motion to remand was filed in the transferor court provides no basis to vacate the CTO.  MDL 875 is fully capable of addressing the motion to remand in this routine asbestos case.

4.      Vacating the CTO based on the irrelevant and conclusory reasons advanced by Plaintiffs would completely undermine the primary reason for having MDL proceedings in general, and the main purpose of MDL 875 in particular.  Transfer of the case to MDL 875 serves judicial economy and efficiency.

Respectfully submitted,

**McDonnell Douglas Corporation, The Boeing Company,
Boeing North American, Inc., Northrop Grumman Corporation
and Raytheon Aircraft Company f/k/a Beech Aircraft Corporation,**

By their attorneys,

Robert J. Muldoon, Jr.
Katy E. Koski
Sherin and Lodgen LLP
101 Federal Street
Boston, Massachusetts 02110
Tel. (617) 646-2000

Robert E. Boone, III
James Pettis
Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386
Tel. (310) 576-2000

*Attorneys for McDonnell Douglas
Corporation*

Robert J. Muldoon, Jr.
Katy E. Koski
Sherin and Lodgen LLP
101 Federal Street
Boston, Massachusetts 02110
Tel. (617) 646-2000

John D. Dillow
Brendan Murphy
Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Tel. (206) 359-8000

*Attorneys for The Boeing Company and
Boeing North American, Inc.*

/s/ Marcy D. Smirnoff
Shepard M. Remis
Sheryl A. Koval
Marcy D. Smirnoff
Goodwin Procter LLP
Exchange Place
Boston, MA 02109
Tel. (617) 570-1000

*Attorneys for Northrop Grumman
Corporation*

/s/ Brian D. Gross
John B. Manning
Brian D. Gross
Jonathan F. Tabasky
Patrick S. Tracey
Cooley Manion Jones LLP
21 Custom House Street
Boston, MA 02110
Tel. (617) 737-3100

L. Michael Brooks, Jr.
Wells, Anderson & Race LLC
1700 Broadway
Suite 1020
Denver, CO 80290
Tel. (303) 830-1212

*Attorneys for Raytheon Aircraft Company,
Beech Aircraft Corporation*

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

2007 DEC 14  P 3: 44

RECEIVED
CLERK'S OFFICE

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 1 7 2007

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| WILLIAM J. HILBERT, JR. AND PAMELA A. HILBERT,<br><br>    Plaintiff,<br><br>v.<br><br>MCDONNELL DOUGLAS CORPORATION et al.,<br><br>    Defendants. | MDL Docket No. 875 – In re Asbestos Products Liability Litigation (No. VI)<br><br><br>U.S.D.C. Massachusetts: Case No. 07-11900-NG |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT RESPONSE TO PLAINTIFFS' MOTION FOR ORDER VACATING CONDITIONAL TRANSFER ORDER TO ALLOW TRANSFEROR COURT TO RULE ON PLAINTIFFS' MOTION FOR REMAND TO STATE COURT**

I.     <u>SUMMARY</u>

      Defendants McDonnell Douglas Corporation, The Boeing Company, Boeing North American, Inc., Northrop Grumman Corporation and Raytheon Aircraft Company f/k/a Beech Aircraft Corporation (collectively, the "Defendants") respectfully request this Panel to deny plaintiffs William J. Hilbert, Jr.'s and Pamela A. Hilbert's (collectively, the "Plaintiffs") motion to vacate the *Conditional Transfer Order* ("*CTO*") the Panel issued on October 26, 2007, conditionally transferring this related tag-along asbestos action to the Multi-District Litigation ("MDL") No. 875 <u>In Re Asbestos Product Liability Litigation</u> proceedings in the United States District Court for the Eastern District of Pennsylvania

("MDL 875" or "MDL Court"), for the simple reason that Plaintiffs have not articulated, and cannot proffer, any legitimate reason for doing so.

Plaintiffs' arguments in support of vacating the *CTO* display a fundamental misunderstanding of the law governing transfer of matters to the MDL. As this Panel knows, a party seeking to vacate a *CTO* must make a strong showing on specific grounds for such relief before it can be granted. Here, Plaintiffs fall far short of meeting that burden. Plaintiffs argue that the *CTO* should be vacated simply because they claim that transfer to the MDL proceedings would not promote judicial economy and, because of Mr. Hilbert's medical condition, he would be prejudiced by such a transfer. Contrary to Plaintiffs' bald assertions, this asbestos action, including Plaintiffs' remand motion and the issues arising therefrom, is not legally and factually unique so as to warrant vacating the *CTO*, nor will transferring the action to MDL 875 defeat goals of judicial economy or prejudice Plaintiffs. Accordingly, Plaintiffs' Motion should be denied.

## II.    BACKGROUND

This is a garden variety asbestos personal injury action. Plaintiffs filed suit in the Trial Court of the Commonwealth of Massachusetts, Middlesex County (Civil Action No. 06-1550) on December 21, 2006, alleging product liability claims against the Defendants (and other defendants who are no longer parties to the federal court action), claiming that Mr. Hilbert contracted mesothelioma caused by exposure to Defendants' respective purported asbestos-containing products (the "State Court Action"). Regarding the Defendants, Plaintiffs contend that Mr. Hilbert was exposed to asbestos in various military aircraft built

by the Defendants while Mr. Hilbert served in the United States Navy from approximately 1955 through 1974.[1]

Following Mr. Hilbert's product identification deposition on September 10-12, 2007, defendants McDonnell Douglas Corporation, The Boeing Company and Boeing North American, Inc. removed the State Court Action to the United States District Court for the District of Massachusetts on October 5, 2007 pursuant to 29 U.S.C. § 1442(a) ("federal officer" removal jurisdiction).  Subsequently, defendants NGC[2] and Raytheon joined in the removal on the same grounds.  On October 9, 2007, Defendants also filed a Notice of Potential Tag-Along Action.  Pursuant to Rule 7.5(e) of the Rules of the Judicial Panel on Multidistrict Litigation, on October 9, 2007, Defendants requested that the Panel transfer this action to MDL 875 as a related tag-along action to the MDL 875 proceedings before the Honorable James Giles in the United States District Court for the Eastern District of Pennsylvania, where all asbestos product liability cases pending in the federal courts are to be transferred for coordinated pre-trial matters.  MDL 875 was established in 1991, and since that time, Judge Giles and the Honorable Charles Weiner before him have heard tens of thousands of asbestos suits.[3]

---

[1] As to defendant Northrop Grumman Corporation ("NGC"), Plaintiffs also allege that Mr. Hilbert was exposed to asbestos in various military aircraft built by NGC during his employment with the United States Civil Service from approximately 1974 through 1991.

[2] NGC had removed the action in February 2007 before Plaintiffs identified any aircraft, and the action was remanded.  The current removal is distinct (as discussed further below) because it is based on Mr. Hilbert's identification of specific military aircraft and components of those aircraft.  (*See* Notice of Removal, attached hereto as Exhibit A and Opposition to Remand, attached hereto as Exhibit B).

[3] On July 29, 1991, the MDL Judicial Panel entered an order transferring all asbestos personal injury cases pending in federal courts to the Eastern District of Pennsylvania for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407.  That order also applies to "tag-along actions," or actions involving common questions of fact filed after January 17, 1991.

On October 15, 2007, Plaintiffs filed their *Motion for Remand* in the Massachusetts District Court. The Panel issued the *CTO* on October 26, 2007. Defendants filed their respective oppositions to the *Motion for Remand* on October 29, 2007 and October 31, 2007. The Massachusetts District Court (Gertner, J.) heard oral argument on the *Motion for Remand* on November 1, 2007. On November 5, 2007, Judge Gertner entered an order severing all defendants who had not asserted federal jurisdiction and remanding those defendants back to the State Court Action, thus allowing Plaintiffs' case to proceed in the State Court Action against majority of the defendants. According to the November 5th Order, the *Motion to Remand* "remains under advisement." To date, the Massachusetts District Court has taken no further action on the *Motion to Remand*.

On November 31, 2007, Plaintiffs filed their *Motion to Vacate* the *CTO,* claiming that the *CTO* should be vacated because (a) Mr. Hilbert is dying of mesothelioma; (b) Mr. Hilbert will be substantially prejudiced if the *Motion to Vacate* is not granted; and (c) it would be a waste of judicial resources to transfer the case while the *Motion to Remand* is under advisement. As set forth in *Defendants McDonnell Douglas Corporation's, The Boeing Company's and Boeing North American, Inc.'s Opposition to Plaintiffs' Motion for Remand* (the "*Opposition to Remand*"), a copy of which (the brief only) is attached as Exhibit B, the action was properly removed to federal court and, therefore, should be transferred to MDL 875 forthwith. [4]

---

[4] With few exceptions, NGC and Raytheon opposed the *Motion to Remand* on substantially the same grounds.

III.   **ARGUMENT**

A.   **Plaintiffs Must Satisfy a Heavy Burden of Proof Before the**
     _**CTO**_ **Can Be Vacated**

The hurdle for vacating a conditional transfer order is high.  Indeed, the party

requesting such relief must make a strong showing on specific grounds demonstrating no

"common questions of fact relating to injuries or wrongful death allegedly caused by

exposure to asbestos or asbestos containing products" in order to support its motion for

vacating the _CTO_.  In re Asbestos Products Liability Litigation (No. VI), 771 F. Supp. 415,

417 (J.P.M.L. 1991).  The Panel has previously rejected distinctions based on "the pendency

of motions or other matters before the transferor court, the uniqueness of a party's status,

the type of defendant, the docket condition of any specific federal district, the stage of

pretrial proceedings, the presence of unique claims or additional claims not relating to

asbestos injury or death, and/or the unanimity of opposition to transfer by the parties" as

grounds for carving out exceptions to transfer to MDL-875's extraordinary docket.  In re

Asbestos Products Liability Litigation (No. VI), 170 F. Supp. 2d 1348, 1349 (J.P.M.L. 2001).

B.   **Plaintiffs Fail to Satisfy Their Burden for Vacating the CTO**

Plaintiffs fall short of satisfying their burden.  In their brief in support of the _Motion_

_to Vacate_, Plaintiffs have not even alleged, much less shown, that there are no common

questions of fact relating to Plaintiffs' alleged injuries.  As such, Plaintiffs fail to state any

valid grounds for vacating the CTO, nor do they proffer any persuasive supporting facts or

evidence.

1.   Mr. Hilbert's Medical Condition Is Neither Relevant Nor Unique

Plaintiffs contend that the Panel should vacate the _CTO_ because of Mr. Hilbert's

health status.  Firstly, Mr. Hilbert's medical status is not relevant to the determination of

federal jurisdiction over this action.  As explained in detail in the _Opposition to Remand_,

5

Defendants have asserted a valid basis for jurisdiction over their government contractor immunity defense and, therefore, are entitled to pursue the case in federal court. (See Ex. B, *Opposition to Remand*). Mr. Hilbert's condition is not properly a part of this analysis.

Secondly, Mr. Hilbert's status is not unique. In fact, all cases filed in or transferred to MDL 875 involve allegations of personal injuries arising out of asbestos exposure and involve similar medical conditions. See In re Asbestos Case of Hatch, James & Dodge, G., No. 2:06-CV-741 TS, 2007 WL 582983, at * 1-2 (D. Utah 2007) (deferring to the MDL Panel plaintiff's motion to remand and finding plaintiff's argument that he would not get his day in court due to the terminal nature of mesothelioma unpersuasive in light of the policy implications of judicial efficiency). Thus, it is clear that a plaintiff's purported health status does not satisfy Plaintiffs' heavy burden in seeking to vacate the *CTO*. Moreover, as discovery has not yet been completed, no conclusions can be made as to Mr. Hilbert's diagnosis or prognosis. The evidence Plaintiffs have submitted establishes that Mr. Hilbert has remained "stable" and "without any major clinical issues or any new symptoms" since September of 2006. See Affidavit of S. George Saman, M.D. attached to the *Motion to Vacate* as Exhibit A.

Ultimately, this case is similar to literally thousands of asbestos cases which have been previously transferred to MDL 875 from virtually every federal district court in this country. Numerous future cases – that are similar to this one – no doubt will likewise be transferred to MDL 875. There is nothing special or unique about Mr. Hilbert's health status. There is nothing unique about Mr. Hilbert's alleged exposure – Plaintiffs claim Mr. Hilbert was exposed during his working career, just like thousands of other claimants have alleged occupational exposure. Mr. Hilbert's alleged exposure to asbestos in military equipment is remarkably <u>indistinguishable</u> from numerous other military exposure cases that have been part of the MDL proceedings for years, and is the precise basis for which the

Defendants have removed this case to the federal courts.

Plaintiffs' unsubstantiated claim of prejudice is likewise neither relevant nor unique and does not meet Plaintiffs' burden in requesting an order vacating the *CTO*. Plaintiffs make conclusory arguments that waiting for Judge Gertner to decide the remand will allow Mr. Hilbert to have his day in court. Plaintiffs have no way of knowing when Judge Gertner will announce a ruling on the *Motion to Remand* and self-servingly assume that the case will in fact be remanded. Again, for the reasons set forth in the *Opposition to Remand*, Defendants are properly under the jurisdiction of the federal court and, therefore, vacating the transfer order will cause further delay in reinitiating the transfer process. Finally, following Judge Gertner's severance order, Plaintiffs' case against the majority of the defendants (those without a basis for federal jurisdiction) is currently proceeding toward a trial in May of 2008.

Plaintiffs' conclusory statements regarding Mr. Hilbert's health and court calendars do not establish a valid basis for vacating the *CTO*.

> 2.   Pendency of a *Motion to Remand* is Not Sufficient To Support
>       An Order Vacating a Properly Issued *CTO*

Plaintiffs' argument that this Panel should vacate the *CTO* pending a ruling by the transferor court on their *Motion to Remand* is unavailing. In rejecting a similar motion to vacate, the Panel found in In re Asbestos Products Liability Litigation:

> **Plaintiffs in these actions have argued in essence that transfer should be denied or deferred in order to permit the resolution of pending motions to remand the actions to state court. There is no need to delay transfer in order to accommodate such an interest.** We note that: 1) as a practical matter, there is a lag time of at least three or four months from the filing of an action, its identification as a potential tag-along action, issuance of a conditional transfer order, stay of transfer when a party timely objects to the conditional transfer order, briefing on the question of transfer, the Panel hearing session, and the issuance of the Panel's subsequent order; 2) Panel Rule 1.5, R.P.J.P.M.L., 199 F.R.D. at 427, expressly

7

> provides that the pendency of a conditional transfer order does not in
> any way i) suspend orders and pretrial proceedings in the district
> court in which the action that is the subject of the conditional transfer
> order is pending, or ii) limit the pretrial jurisdiction of that court; and
> 3) accordingly, those courts wishing to address such motions have
> adequate time in which to do so, those courts concluding that such
> issues should be addressed by the transferee judge need not rule on
> them, and the process of 1407 transfer in MDL-875 can continue
> without any unnecessary interruption or delay.

170 F. Supp.2d 1348, 1349 n.1 (*emphasis added*).  The transfer process will not be complete

in this matter until the Panel schedules and holds a hearing and issues an order on the

*Motion to Vacate*.  As the hearing on the *Motion to Remand* was held on November 1, 2007,

this should give Judge Gertner ample time to rule on the *Motion to Remand* prior to final

transfer, if she so desires.  This will also allow for the added efficiency, which Plaintiffs

suggest they desire, that if remand is not ordered (as Defendants believe is appropriate),

there will not be further delay by reinitiating the transfer process from the beginning.

Moreover, the MDL Court is fully capable of deciding Plaintiffs' remand motion.  The

issues presented are not unique or isolated.  See In re Asbestos, 170 F.Supp.2d at 1349

(noting that the Panel has rejected distinctions based on the pendency of motions or other

matters before the transferor court as grounds for carving out exceptions).  The MDL Court

is more than qualified to determine and dispose of Plaintiffs' disingenuous timeliness

argument and move on to evaluating jurisdiction on the merits.  Numerous cases involving

the identical issue here, namely asbestos incorporated into military equipment under the

Government's direction, have been removed pursuant to Section 1442(a) on "federal officer"

grounds.  There are numerous military contractors being sued by asbestos plaintiffs in a

multitude of jurisdictions throughout the country for their use of Government-approved and

mandated asbestos components in military equipment, against which claims such

contractors, like the Defendants, are immune from liability pursuant to the "government

contractor" defense as stated in Boyle v. United Technologies, Inc., 487 U.S. 500 (1988) and

8

its progeny, including Niemann v. McDonnell Douglas Corp., 721 F.Supp. 1019 (S.D. Ill. 1989) (in which MDC obtained a grant of summary judgment under Boyle against asbestos claims regarding the manufacture of military aircraft).

The threshold jurisdictional issue is whether the Defendants are entitled to *assert* a defense based upon government contractor immunity. By operation of the defense, federal law, i.e., government contractor immunity, preempts state law product liability claims. The United States Supreme Court explicitly stated in Boyle that "civil liabilit[y] arising out of the performance of federal procurement contracts" is a "'uniquely federal' interest." Boyle, 487 U.S. at 505-06. "[I]t is plain that the Federal Government's interest in the procurement of equipment is implicated by [product liability] suits [against the contractor] – even though the dispute is one between private parties." Id. at 506. The rationale for the defense is based upon federal law, i.e., a military contractor should enjoy the same immunity as a federal officer enjoys under the discretionary function exception to the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 2680(a). Id. at 511. This is precisely the type of issue involving military contractors that is found in numerous cases in the MDL. Thus, permitting the MDL Court to address such issues, particularly jurisdictional issues, in numerous cases involving similar claims and common factual circumstances obviously would promote consistent and predictable results. See In re Ivy, 901 F.2d 7, 9 (2d Cir. 1990) (finding that transferor court should not hear motion because the issue was easily capable of arising in cases from other transferor district courts and, "consistency as well as economy is thus served [if] the …objections…[are] heard and resolved by a single court").

The Defendants properly and timely removed this case to federal court upon the first notice that "federal officer" removal grounds existed. (See Ex. B; *Opposition to Remand*). Defendants have provided substantial evidence that they each acted under the direction and control of a federal officer when they built the military aircraft at issue here, including

9

the installation of asbestos-containing components in the aircraft. To support removal, the Defendants have demonstrated the causal connection between Plaintiffs' claims and Defendants' alleged conduct under the direction of federal officers. Additionally, Defendants have asserted two separate colorable federal defenses, namely the government contractor defense under <u>Boyle v. United Technologies Corp.</u>, 487 U.S. 500 (1988), and derivative sovereign immunity under <u>Yearsley v. W.A. Ross Construction Co.</u>, 308 U.S. 18 (1940), to Plaintiffs' claims. As such, the Defendants have set out strong arguments supporting jurisdiction in federal court, and there is absolutely no bar to the transfer of this action to MDL 875 for coordinated pre-trial proceedings.

Finally, contrary to Plaintiffs' assertions in the *Motion to Remand*, Defendants are not precluded, as a matter of law, from removing the case a second time because the Court had remanded the case (removed by another defendant) based upon the same legal theory, *i.e.* 28 U.S.C. § 1442(a)(1). "[A] remand order that expressly addresses the theory of federal jurisdiction does not have res judicata effect on subsequent removals based on the same theory, provided that the subsequent removal petitions allege a different factual basis for seeking removal. If the defendant raises a new factual basis, the new factual basis is not deemed adjudicated with the remand order and, therefore, is not barred by res judicata." <u>S.W.S. Erectors, Inc. v. Infax, Inc.</u>, 72 F.3d 489, 493 (5th Cir. 1996) (*citing with approval* <u>O'Bryan v. Chandler</u>, 496 F.2d 403, 410 (10th Cir. 1974) and <u>One Sylvan Road North Assocs. v. Lark Int'l Ltd.</u>, 889 F. Supp. 60, 62-63 (D. Conn. 1995)). In <u>Infax</u>, the Fifth Circuit reaffirmed prior case law which holds that 28 U.S.C. 1446(b) allows the filing of successive removals based on newly developed facts and further upheld removal that was based upon new information learned during plaintiff's deposition. <u>Id.</u> at 494.

Thus, Plaintiffs' identification of specific aircraft manufactured by Defendants at deposition (in addition to his production of U.S. Navy manuals which he used in performing

10

maintenance on these aircraft), and not the bare allegations included in Plaintiffs'

Complaint and Disclosure Form, serve as the factual basis for the removal in this instance.

See, e.g., Snowdon v. A.W. Chesterton, 366 F. Supp. 2d 157, 162 (D. Maine 2005) (rejecting

plaintiff's contention that the "general and sweeping" allegations in the complaint were

adequate to give rise to colorable theory of removability).  As Defendants are entitled to

remove the case following the development of facts that give rise to federal officer

jurisdiction, they are further entitled to an analysis by the Court of the facts and evidence

proffered in support of that removal despite prior failed attempts to remove by other

defendants.

The MDL Court is well-qualified to determine motions for remand on such common

issues involving "federal officer" removal, and has shown a desire to actively control the

administration and adjudication of such pre-trial proceedings, including the determination

of pending motions.  (See MDL 875 Administrative Order No. 11, at No. 2, entered on

August 15, 2006.)  Clearly, the MDL Court has indicated an interest in ruling on motions

pending at the time of the transfer of a case.

### C.    Transfer of the Case to MDL 875 Will Best Serve Judicial Economy and Efficiency and Will Not Prejudice Plaintiffs

This case involves numerous questions of fact common with cases already pending in

the MDL 875 proceedings.  As this Panel well knows, there are numerous military

contractors being sued by asbestos plaintiffs in the MDL proceedings.  Mesothelioma, the

particular disease that Mr. Hilbert allegedly contracted, is shared by many asbestos

plaintiffs in the MDL proceedings; it is not a new disease.  As a result, there are numerous

common questions of fact pertaining to exposure, medical and causation matters, as well as

various defenses raised by the Defendants, including the "government contractor" defense

under Boyle v. United Technologies, Inc., 487 U.S. 500 (1988) and its progeny.  Judicial

11

resources will certainly be saved by avoiding duplicative litigation dealing with identical issues in multiple actions and permitting the transfer to proceed will prevent inconsistent rulings on common issues from case to case.

Plaintiffs will not be prejudiced by transfer of the action to the MDL proceedings.  It is clear that the case can be fairly and efficiently litigated in the MDL proceedings.   Upon the transfer to MDL 875, the case will immediately proceed.  Thus, Plaintiffs are guaranteed to have their day in court; in fact, Plaintiffs are proceeding towards a May 2008 trial date in the State Court Action against the non-removing defendants.

Further, despite Plaintiffs' claims of exigency, to date they have not conducted any offensive discovery in the State Court Action and waited until September of 2007 to schedule Mr. Hilbert's deposition, which resulted in the product identification sufficient to establish the basis for removal.  Plaintiffs' speculation as to the relative efficiencies between the transferor and transferee courts and Mr. Hilbert's health status has no merit and should not be permitted to interfere with the transfer of this routine asbestos case to the MDL.

## IV.   CONCLUSION

Defendants respectfully submit that the Panel should deny the *Motion to Vacate*, and transfer this action to MDL 875.

Respectfully submitted,

**McDonnell Douglas Corporation, The Boeing Company,
Boeing North American, Inc., Northrop Grumman Corporation
and Raytheon Aircraft Company f/k/a Beech Aircraft Corporation**

By their attorneys,

Robert J. Muldoon, Jr.
Katy E. Koski
Sherin and Lodgen LLP
101 Federal Street
Boston, Massachusetts 02110
Tel. (617) 646-2000

Robert E. Boone, III
James Pettis
Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386
Tel. (310) 576-2000

*Attorneys for McDonnell Douglas
Corporation*

Robert J. Muldoon, Jr.
Katy E. Koski
Sherin and Lodgen LLP
101 Federal Street
Boston, Massachusetts 02110
Tel. (617) 646-2000

John D. Dillow
Brendan Murphy
Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Tel. (206) 359-8000

*Attorneys for The Boeing Company and
Boeing North American, Inc.*

/s/ Marcy D. Smirnoff
Shepard M. Remis
Sheryl A. Koval
Marcy D. Smirnoff
Goodwin Procter LLP
Exchange Place
Boston, MA 02109
Tel. (617) 570-1000

*Attorneys for Northrop Grumman
Corporation*

/s/ Brian D. Gross
John B. Manning
Brian D. Gross
Jonathan F. Tabasky
Patrick S. Tracey
Cooley Manion Jones LLP
21 Custom House Street
Boston, MA 02110
Tel. (617) 737-3100

L. Michael Brooks, Jr.
Wells, Anderson & Race LLC
1700 Broadway
Suite 1020
Denver, CO 80290
Tel. (303) 830-1212

*Attorneys for Raytheon Aircraft
Company, f/k/a Beech Aircraft
Corporation*

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

2007 DEC 14 P 3:45

RECEIVED
CLERK'S OFFICE

13

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 17 2007

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| WILLIAM J. HILBERT, JR. AND PAMELA A. HILBERT,<br><br>                    Plaintiff,<br>v.<br><br>MCDONNELL DOUGLAS CORPORATION et al.,<br><br>                    Defendants. | MDL Docket No. 875 – In re Asbestos Products Liability Litigation (No. VI)<br><br><br>U.S.D.C. Massachusetts: Case No. 07-11900-NG |

## PROOF OF SERVICE

I hereby certify that a copy of the foregoing *Defendants' Joint Response to Plaintiffs' Motion for Order Vacating Conditional Transfer Order to Allow Transferor Court to Rule on Plaintiffs' Motion for Remand to State Court, Memorandum of Law in Support* and this *Certificate of Service* were served by Overnight Delivery on December 13, 2007, to the following:

Clerk for the United States District Court for the District of Massachusetts
Civil Action No. 07-11900-NG

Clerk for the United States District Court for the Eastern District of Pennsylvania
MDL Docket No. 875

Michael C. Shepard
The Shepard Law Firm, P.C.
10 High Street
Boston, MA 02110

          *Counsel for Plaintiffs*

Shepard M. Remis
Goodwin Procter LLP
Exchange Place
Boston, MA 02109

      *Counsel for Northrop Grumman Corporation*

Brian D. Gross
Cooley Manion Jones LLP
21 Custom House Street LLP
Boston, MA 02110

      *Counsel for Raytheon Corporation*


      I hereby certify that a copy of the foregoing *Defendants' Joint Response to Plaintiffs' Motion for Order Vacating Conditional Transfer Order to Allow Transferor Court to Rule on Plaintiffs' Motion for Remand to State Court, Memorandum of Law in Support* and this *Certificate of Service* were served by First Class Mail on December 17, 2007, to all counsel listed on the attached Panel Service List

                        Katy E. Koski

                        *Counsel for McDonnell Douglas Corporation, The Boeing Company and Boeing North American, Inc.*

Dated: December 17, 2007

- 2 -

Page 1 of 2

**IN RE: ASBESTOS PRODUCTS LIABILITY**
**LITIGATION (NO. VI)**

MDL No. 875

## PANEL SERVICE LIST (Excerpted from CTO-293)

William J. Hilbert, Jr., et al. v. McDonnell Douglas Corp., et al., D. Massachusetts,
C.A. No. 1:07-11900  (Judge Nancy Gertner)

Richard C. Binzley
THOMPSON HINE LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Edward J. Cass
GALLAGHER SHARP
FULTON & NORMAN
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC 20001

David A. Damico
BURNS WHITE
& HICKTON LLC
Four Northshore Center
106 Isabella Street
Pittsburgh, PA 15212

Raymond P. Forceno
FORCENO GOGGIN
& KELLER
1528 Walnut Street
Suite 900
Philadelphia, PA 19102

Ellen B. Furman
GOLDFEIN & HOSMER
1600 Market Street, 33rd Fl.
Philadelphia, PA 19103

Brian D. Gross
COOLEY MANION
& JONES LLP
21 Custom House Street
6th Floor
Boston, MA 02110

Susan M. Hansen
BROWNSON & BALLOU
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

Reginald S. Kramer
OLDHAM & DOWLING
195 South Main Street
Suite 300
Akron, OH 44308-1314

David C. Landin
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
LOCKS LAW FIRM LLC
1500 Walnut Street
Philadelphia, PA 19102

Ronald L. Motley
MOTLEY RICE LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

Robert J. Muldoon, Jr.
SHERIN & LODGEN LLP
101 Federal Street
Boston, MA 02110

John J. Repcheck
MARKS O'NEILL O'BRIEN
& COURTNEY PC
Gulf Tower, Suite 2600
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
ROVEN-KAPLAN LLP
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
VORYS SATER SEYMOUR
& PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008

Neil Selman
SELMAN BREITMAN
& BURGESS
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Michael C. Shepard
SHEPARD LAW FIRM
10 High Street, 11th Fl.
Boston, MA 02110

MDL No. 875 - Panel Service List (Excerpted from CTO-293)           Page 2 of 2

Marcy D. Smirnoff
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109-2881

Robert N. Spinelli
KELLEY JASONS MCGUIRE & SPINELLI LLP
Centre Square West
15th Floor
Philadelphia, PA 19102

Robert E. Swickle
JAQUES ADMIRALTY LAW FIRM PC
1370 Penobscot Building
645 Griwsold Street
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226-4192

Andrew J. Trevelise
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

James K. Weston II
TOM RILEY LAW FIRM
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 17 2007

FILED
CLERK'S OFFICE

# EXHIBIT A

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2007 OCT -5 P 2: 38

U.S. DISTRICT COURT
DISTRICT OF MASS.

**COPY**

WILLIAM J. HILBERT, JR. AND
PAMELA A. HILBERT,

        Plaintiff,

v.

MCDONNELL DOUGLAS
CORPORATION, et al.,

        Defendants.

Case No.

(Superior Court, Department of the Trial
Court, Middlesex County, Massachusetts,
Civil Action No. 06-4550)

*07 11885WGY*

*Mag - Alexander*

**DEFENDANTS MCDONNELL DOUGLAS CORPORATION, THE
BOEING COMPANY AND BOEING NORTH AMERICAN, INC.'S
NOTICE OF REMOVAL OF ACTION UNDER
28 U.S.C. § 1442(A)(1) (FEDERAL OFFICER JURISDICTION)**

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

        PLEASE TAKE NOTICE that Defendants McDONNELL DOUGLAS

CORPORATION ("MDC"), and THE BOEING COMPANY ("Boeing"), and BOEING

NORTH AMERICAN, INC. ("BNA"), file their Notice of Removal of the state court

action filed by Plaintiffs as described below to this Court pursuant to 28 U.S.C. § 1442(a)(1):

I.      **BACKGROUND**

        1.      This is an asbestos personal injury action in which Plaintiffs William J. Hilbert

and Pamela R. Hilbert ("Plaintiffs") allege that Mr. Hilbert contracted mesothelioma caused

by his exposure to asbestos in United States Government-procured and Government-

furnished aircraft brakes and engines, among other components, installed by MDC[1] in the

---

[1] Douglas Aircraft Company ("DAC"), a predecessor company to MDC, actually built A-4 and F-4
aircraft. DAC merged with McDonnell Aircraft Company in 1967 to form McDonnell Douglas
Corporation (Douglas Aircraft Company and McDonnell Douglas Corporation are collectively
referred to as "MDC").

A-4 and F-4 military aircraft during the manufacture and assembly of such planes, as required by MDC's procurement contracts with the United States Government, and under the direction and control of federal officers, i.e., procurement personnel and military officials from the Department of the Defense, and United States Navy ("Navy").

2.      Plaintiffs also alleged that Mr. Hilbert contracted mesothelioma caused by his exposure to asbestos in United States Government-procured and Government-furnished aircraft brakes, among other components, which were put in the SNJ military aircraft during the manufacture and assembly of such planes, as required by BNA's procurement contracts with the United States Government, and under the direction and control of federal officers, i.e., procurement personnel and military officials from the Department of the Defense, and Navy.[2]

3.      The A-4 and F-4 were military aircraft manufactured for the United States military.  The Navy procured A-4 and F-4 aircraft from MDC pursuant to a series of military equipment procurement contracts.  MDC delivered the A-4 and F-4 aircraft to the Navy from 1954 through 1979, and from 1959 through 1979, respectively.  MDC designed the A-4 and F-4 pursuant to Government-issued and/or Government-approved detail design specifications and requirements and continued to make Government-mandated changes throughout the life of the A-4 and F-4 aircraft.

4.      The SNJ was a military aircraft manufactured for the United States military.  The Navy procured SNJ aircraft from BNA pursuant to military equipment procurement contracts.  BNA designed the SNJ pursuant to Government-issued and/or Government-approved detail design specifications and requirements.

5.      As set forth in more detail below, federal officers (Navy, Marines and Department of Defense personnel) selected the A-4, F-4 and SNJ component parts,

_____

[2] BNA did not manufacture the SNJ aircraft.  BNA's predecessor, North American Aviation, manufactured the SNJ pursuant to government contracts.  However, to simplify matters, this Notice will refer only to BNA.

including engines and brakes, approved their design, including the use of any asbestos in them, independently procured certain component parts from manufacturers, supplied such component parts to MDC and BNA, and <u>required</u> MDC and Boeing to install them on the A-4, F-4 and SNJ aircraft. In other words, MDC and BNA had no choice but to install the government furnished component parts, including any asbestos components thereof, on such planes. Now, Plaintiffs sue MDC, Boeing, and BNA for allegedly using asbestos in those component parts. MDC, Boeing, and BNA hereby remove this action to this Court on "federal officer" grounds pursuant to 28 U.S.C. Section 1422(a)(1).[3]

6.      On or about December 21, 2006, Plaintiffs filed the complaint initiating this action entitled <u>William J. Hilbert, Jr. and Pamela R. Hilbert v. Aeroquip, Inc., et al.</u>, pending in the Superior Court, Department of the Trial Court, Middlesex County, Massachusetts ("State Court"), Civil Action No. 06-4550 (the "State Court Action"). A true and correct copy of the Complaint is attached as Exhibit A.

7.      MDC, Boeing, and BNA were served with the Complaint on or about January 5, 2007. True and correct copies of their Answers are attached as Exhibits B, C and D.

8.      The Complaint does not identify any aircraft or other products that Plaintiffs claim was a source of Mr. Hilbert's alleged asbestos exposure. Consequently, a basis for removal jurisdiction was not apparent from the Complaint.

9.      On September 7, 2007, counsel of record received electronic service of Plaintiffs' List of Hilbert Aircraft ("Aircraft List"), a true and correct copy of which is attached as Exhibit E. Plaintiffs' Aircraft List identified – for the first time in the State Court Action –MDC aircraft (including the A-4 and F-4) and BNA aircraft (including the SNJ) that Plaintiffs claim were a source of Mr. Hilbert's purported exposure to asbestos.

10.      Mr. Hilbert's deposition was taken on September 10, 11, and 12, 2007. He

---

[3] Plaintiff has not identified any products manufactured by Boeing. Plaintiff has alleged that Boeing is liable as a successor to MDC and BNA. If these allegations of successor liability are true, Boeing has the same federal defense and entitlement to removal as MDC and BNA. Boeing does not in any way admit it is liable as a successor manufacturer.

testified to working on brakes and engines of the A-4 and F-4 aircraft built by MDC while serving in the Navy at VAQ 33, NAS Norfolk between 1968 and 1970. Mr. Hilbert also testified to working on brakes of the SNJ aircraft built by BNA while serving in the Navy at VS 34, NAS Quonset Point and VS 24, NAS Norfolk from 1959 to 1963 and from 1963 to 1964, respectively.

11.    Plaintiffs assert negligence and strict product liability claims against MDC, Boeing, and BNA based on the Decedent's alleged exposure to asbestos in the A-4, F-4 and SNJ military aircraft. MDC and BNA built the A-4, F-4 and SNJ aircraft for the United States Government pursuant to military procurement contracts with the Navy. MDC and BNA built such equipment while acting under the direction and control of Navy officers. Such procurement contracts and federal officers required MDC and BNA to manufacture the A-4, F-4 and SNJ aircraft in strict compliance with reasonably precise design specifications and detailed design drawings, among other things, that were reviewed and approved by the Navy. More importantly, such contracts and federal officers required MDC and BNA to install on such aircraft certain components and systems thereof, designated by the Government as "Government Furnished Aircraft Equipment – Contractor Installed" (aka "GFAE-CI"), which the Government separately procured from the original equipment manufacturers ("OEMs") of that equipment under separate procurement contracts with those OEMs, provided to MDC and BNA for installation on the aircraft during manufacture, and required MDC and BNA to install on the planes. For example, the A-4 and F-4 engines and brakes that Plaintiffs contend contained asbestos to which Mr. Hilbert was allegedly exposed were GFAE-CI.

12.    Plaintiffs' Aircraft List and Mr. Hilbert's deposition testimony put MDC, Boeing, and BNA on notice for the first time of the particular MDC and BNA aircraft and components thereof to which Plaintiffs claim Mr. Hilbert was exposed to asbestos and, thus, that this case is one which is or has become removable on the ground of federal officer removal jurisdiction pursuant to 28 U.S.C. § 1442(a)(1).

13.     Besides the pleadings and other papers identified in this Notice of Removal, MDC, Boeing, and BNA have served or been served with additional pleadings and other papers filed with the State Court. True and correct copies of those documents will be included in an Appendix of Pleadings Filed in the State Court that will be filed within thirty days of the date of filing this Notice of Removal.

14.     This Notice of Removal is filed within 30 days of September 7, 2007, when MDC, Boeing, and BNA received the Aircraft List. This removal is filed within the time period prescribed by law. *See* 28 U.S.C. § 1446(b).

15.     This action is one which may be removed to this Court by MDC, Boeing, and BNA and over which this Court may properly exercise jurisdiction, on the ground of federal officer removal jurisdiction pursuant to 28 U.S.C. § 1442(a)(1).

## II.     FEDERAL OFFICER REMOVAL IS APPROPRIATE UNDER 28 U.S.C. § 1442(a)(1)

16.     Removal is proper under 28 U.S.C. § 1442(a)(1) when (a) the defendant seeking removal demonstrates that it is a "person" within the meaning of the statute; (b) the defendant demonstrates a causal nexus between the defendant's actions, taken pursuant to a federal officer's directions and under color of federal office, and the plaintiff's claims; and (c) the defendant asserts a "colorable federal defense." *Mesa v. California*, 489 U.S. 121, 124-25, 134-35 (1989).

17.     MDC, Boeing, and BNA each is a "person" within the meaning of 28 U.S.C. § 1442(a)(1). *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998); *Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992); *see also Green v. A.W. Chesterton Co.*, 366 F. Supp.2d 149, 1523 n.3 (D. Me. 2005).

18.     Plaintiffs sue MDC, Boeing, and BNA on product liability theories based on Mr. Hilbert's alleged exposure to asbestos-containing components MDC and BNA allegedly installed in the A-4, F-4 and SNJ military aircraft. In particular, Plaintiffs contend that Mr. Hilbert was exposed to asbestos in the engines and brakes of such aircraft.

19.    MDC manufactured the A-4 and F-4 aircraft pursuant to military procurement contracts with the Navy and in compliance with reasonably precise design specifications, as well as detailed design drawings, which were reviewed and approved by the Navy. The aircraft procurement contracts required A-4 and F-4 aircraft, as with all military aircraft, to be built in strict conformance with detailed design specifications for the aircraft, and these specifications were expressly incorporated by reference in the contracts. The Navy was intimately involved in the design, development and testing of these aircraft and their components and systems, and monitored MDC's performance under the contracts at all times and required MDC to construct the aircraft in accordance with the applicable and approved specifications and drawings incorporated into the contracts. All A-4 and F-4 aircraft built pursuant to these contracts were subject to inspection, testing and approval by the Navy. Government personnel had unrestricted access to MDC's plants and operations so that the Government could conduct inspections and tests of all material and workmanship. In addition, the Navy performed extensive flight tests of the aircraft and their components and systems prior to commission, to ensure complete conformity with the design specifications. To the extent that any part of those aircraft from which Mr. Hilbert was allegedly exposed to asbestos was installed in any aircraft during the initial manufacturing process, any asbestos contained in these aircraft, or any component part thereof, was explicitly and directly required by the Government under the direction of one or more of the following officers: the Secretary of the Navy, W.E. Butler, R. L. Ricketts, C.L. Marshall, S.E. Robbins, L.S. Chambers, J.A. Thomas, J.P. Sager and H.A. Liedke. *See Green*, 366 F. Supp.2d at 155-157; *Fung*, 816 F. Supp. 572-73.

20.    Navy quality control representatives maintained offices at MDC's production facilities at Long Beach, California (and later, Palmdale, California) and St. Louis, Missouri. Through NAVPRO, Navy officers, engineers, contract administrators and technicians had, and exercised, complete access to MDC's facilities to oversee the design, development and production of the Navy aircraft, including the A-4 and F-4. NAVPRO personnel also

conducted aircraft inspections and acceptance flights for each production A-4 and F-4.

21.     The Detail Specification and design specifications and drawings that the A-4 and F-4 contracts incorporated by reference, defined the design of the A-4 and F-4 aircraft and their components, systems and parts.  The Government had authority to reject any aircraft that failed to conform to these specifications.

22.     The design of A-4 and F-4 aircraft could not be changed by MDC without Government authorization.  Government approval for a major design change occurred through an engineering change proposal ("ECP"), which would define the change, establish a feasible production effectivity, determine retrofit activity, and calculate the costs of the change, following which the Government evaluated, review and approved the design change. The Government retained absolute authority to accept, reject or modify any aspect or portion of an ECP.  In addition, all minor changes (i.e., non-ECP changes) also required review and approval by the Government.

23.     Under A-4 and F-4 procurement contracts and detail design specifications and drawings, MDC was also required by the Government to comply with numerous and extensive Military Specifications ("MIL specs") in the manufacture of such aircraft.  These MIL specs required MDC to use Government-specified and approved materials, components, processes and/or techniques that were developed by the Government over many years of procuring, designing and manufacturing military equipment, including aircraft. Pursuant to various MIL specs, the Government required the use of specific materials on the aircraft.

24.     Furthermore and perhaps more importantly, the Government required MDC to install all GFAE-CI components on A-4 and F-4 aircraft, including alleged asbestos-containing components that Mr. Hilbert purportedly worked with and which Plaintiffs contend caused Mr. Hilbert to contract an asbestos-related disease.  Such GFAE-CI components include the brakes and engines, among many other components.

25.     The Government selected and separately procured engines of the A-4 and F-4

aircraft under separate procurement contracts with the engine manufacturer and required MDC to install these engines in the A-4 and F-4 aircraft as GFAE-CI.

26.    The Government selected and separately procured brakes for the A-4 and F-4 aircraft under separate procurement contracts with the engine manufacturer and required MDC to install the brakes in the A-4 and F-4 aircraft as GFAE-CI.

27.    Similarly, BNA manufactured the SNJ aircraft pursuant to military procurement contracts with the Navy and in compliance with reasonably precise design specifications, as well as detailed design drawings, which were reviewed and approved by the Navy. The military was intimately involved in the design, development and testing of these aircraft and their components and systems, and it required BNA to construct the aircraft in accordance with the applicable and approved specifications and drawings incorporated into the contracts.

28.    The Government required BNA to install some GFAE-CI components on SNJ aircraft. In particular, the brakes on the SNJ, which Plaintiff alleges contained asbestos, were GFAE-CI.

29.    Insofar as these GFAE-CI components contained asbestos, the procurement contracts and federal officers required MDC and BNA to install such asbestos on military aircraft. MDC and BNA did not design, select or procure these GFAE-CI components, including any asbestos in such components. MDC and BNA did not know the extent, if any, to which GFAE-CI components contained asbestos as this information was proprietary to the component manufacturers. Rather, the Government approved the design of, selected and independently procured all GFAE-CI components from the OEMs under separate procurement contracts with those OEM, provided the GFAE-CI components to MDC and BNA for installation on the aircraft during manufacture, and required MDC and Boeing to install such GFAE-CI on the aircraft.

30.    MDC, Boeing, and BNA assert a colorable federal defense, namely the "government contractor" immunity defense as stated in *Boyle v. United Technologies, Inc.*, 487

U.S. 500, 101 L.Ed. 442, 108 S.Ct. 2510 (1988) (government contractors are not liable for injuries caused by design defects in equipment when the contractor built such equipment according to reasonably precise government-approved design specifications), and its progeny, including *Niemann v McDonnell Douglas Corp.*, 721 F. Supp. 1019 (S.D. Ill. 1989) (in which MDC obtained a grant of summary judgment under *Boyle* against asbestos claims regarding the manufacture of military aircraft). *Boyle* establishes that a government contractor is not liable for injuries caused by design defects in equipment when the contractor built such equipment according to reasonably precise government-approved design specifications. The government contractor defense is satisfied here, because the design specifications for these aircraft were government-approved, the aircraft conformed to these specifications, and, to the extent that asbestos was known at the time to be a hazardous material, the Government's knowledge of such hazards was superior to the knowledge of MDC and BNA. *Fung*, 816 F. Supp. at 573.

31.     There is a causal nexus between MDC's and BNA's actions under color of Navy procurement officers and Mr. Hilbert's alleged exposure to asbestos because (1) his alleged exposure purportedly occurred while he worked on A-4, F-4 and SNJ aircraft built by MDC and BNA in compliance with Government specifications, and (2) the purported asbestos which allegedly caused his injuries was installed by MDC and BNA while they were acting under the direction of the federal officers. Indeed, since federal officers directed and required MDC and BNA to install certain GFAE-CI components on the A-4, F-4, and SNJ aircraft to which Mr. Hilbert was allegedly exposed, there is an unequivocal "causal nexus" between the direction MDC and BNA received from the military, which it followed, and Mr. Hilbert's alleged injury. *Akin v Big Three Indus.*, 851 F. Supp. 819, 823-824 (E.D. Tex. 1994) ("[W]hen a government contractor builds a product pursuant to Air Force specifications and is later sued because compliance with those specifications allegedly causes personal injuries, the nexus requirement is satisfied."); *Fung*, 816 F. Supp. at 572 (causal nexus is satisfied upon showing of "strong government intervention and the threat that a defendant will be sued in

state court 'based upon actions taken pursuant to federal direction"); *Pack v A CandS, Inc.*, 838 F. Supp. 1099, 1103 (D. Md. 1993) (defendant satisfied the causal nexus requirement because "the government here contracted with [defendant] to build turbine generators under government specifications during the World War II period").

32.     In addition, MDC, Boeing, and BNA are entitled to federal officer removal under 28 U.S.C. § 1442(a)(1) based upon the separate and additional federal defense of derivative sovereign immunity as set forth in *Yearsley v W.A. Ross Construction Co.*, 309 U.S. 18 (1940). *Yearsley* established that a government contractor, performing at the direction and authorization of a government officer, is immune from suit based upon performance of the contract. The *Yearsley* doctrine is satisfied here, because the acts complained of were performed at the direction of Government officers acting pursuant to Government authorization, and if the Government had performed these acts directly, it would be immune from suit.

## III.     INTRADISTRICT ASSIGNMENT

33.     Because this Court is the United States District Court for the district and division embracing the place where the original State Court Complaint was filed, it is the appropriate court for removal under 28 U.S.C. § 1446(a).

## IV.     TRANSFER OF THIS ACTION TO MULTI-DISTRICT LITIGATION ASBESTOS PROCEEDINGS

34.     MDC, Boeing, and BNA intend to seek transfer of this action to the Eastern District of Pennsylvania, where all Federal Court asbestos actions have been centralized in a single forum, i.e., In re Asbestos Products Liability Litigation (Multi District Litigation Docket No. 875), pursuant to 28 U.S.C. § 1407. MDC, Boeing, and BNA will file a Notice of Pendency of Other Action regarding MDL 875.

## V.     PROCEDURAL COMPLIANCE

35.     Because MDC, Boeing, and BNA satisfy the requirements for removal under 28 U.S.C. § 1442(a)(1), they are entitled to remove this entire action. Joinder of other

defendants in this action is not necessary to remove under 28 U.S.C. § 1442(a)(1). *Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*, 644 F.2d 1310, 1314 (9th Cir. 1981).

36.     MDC, Boeing, and BNA will comply with Local Rule 81.1 and give notice of the filing of this Notice as required by 28 U.S.C. § 1442(a)(1).

37.     MDC, Boeing, and BNA reserve the right to submit affidavits in support of removal, if necessary.

**WHEREFORE**, MDC, Boeing, and BNA request that this action proceed in this Court as a properly removed action.

Respectfully submitted,

Dated: October 5, 2007

**McDonnell Douglas Corporation, The Boeing Company, and Boeing North American, Inc.**

By their attorneys,

Robert J. Muldoon, Jr., BBO# 359480
Katy E. Koski, BBO# 650613
Sherin and Lodgen LLP
101 Federal Street
Boston, Massachusetts 02110
Tel. (617) 646-2000
Fax (617) 646-2222
rjmuldoon@sherin.com
kekoski@sherin.com

# EXHIBIT A

COPY

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

_____ X

WILLIAM J. HILBERT, Jr. and
PAMELA R. HILBERT,

     Plaintiffs,

v.

AEROQUIP, INC.
AIRCRAFT BRAKING SYSTEMS f/k/a The Goodyear
    Tire & Rubber Co.
ARVINMERITOR, INC., Successor-in-interest to
    Rockwell Automation, Inc., f/k/a
    Rockwell Automation Corporation
A.W. CHESTERTON CO.
B.F. GOODRICH AEROSPACE
B.F. GOODRICH COMPANY
THE BOEING COMPANY, Individually and as Successor
    In Interest to McDonnell Douglas Corporation, North
    American Rockwell, North American Aviation and
    Rockwell International
BOEING NORTH AMERICAN, INC.
EATON AEROQUIP INC.
EATON CORP, Individually and as Successor
    In Interest to Aeroquip
GARLOCK, INC.
GENERAL DYNAMICS CORPORATION
GOODRICH CORPORATION, Individually and as Successor
    In Interest to B.F. Goodrich Aerospace and the B.F.
    Goodrich Company
THE GOODYEAR TIRE & RUBBER COMPANY
GRUMMAN AEROSPACE CORPORATION
H.B. SMITH CO., INC.
HONEYWELL INTERNATIONAL INC., f/k/a AlliedSignal, Inc.,
    f/k/a The Bendix Corporation
IMO INDUSTRIES, INC., as successor in interest to Adel Fasteners
METROPOLITAN LIFE INSURANCE CO.
MCDONNELL DOUGLAS CORPORATION, Individually and
    as successor-in-interest to North American Aviation
NORTH AMERICAN AVIATION CORPORATION

SUPERIOR COURT
DEPARTMENT OF THE
TRIAL COURT

CIVIL ACTION NO.
06-1540

COMPLAINT

PLAINTIFF DEMANDS
TRIAL BY JURY

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

DEC 21 2006

Edward J. Sullivan

CLERK

NORTH AMERICAN ROCKWELL CORPORATION
NORTHROP GRUMMAN CORPORATION
PARKER-HANNIFIN CORPORATION, Individually and as
      Successor-in-interest to Stratoflex
PNEUMO ABEX CORPORATION
RAPID-AMERICAN CORP.
RAYTHEON AIRCRAFT COMPANY, f/k/a Beech Aircraft Corporation
ROCKWELL INTERNATIONAL as successor-in-interest
     to North American Aviation
TRANSDIGM, INC., individually and as successor-in-interest
     to Adel Fasteners

Defendants.
_____X


## PARTY PLAINTIFFS

1.      The plaintiffs, WILLIAM J. HILBERT and PAMELA R. HILBERT, reside at 758 Red Mill Rd., Norfolk, VA .

## PARTY DEFENDANTS

2A.     AEROQUIP, INC.. is a Michigan corporation with its principal place of business at 30600 Telegraph Road, Bingham Farms, MI 48025. AEROQUIP, INC., has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2B.     AIRCRAFT BRAKING SYSTEMS f/k/a The Goodyear Tire & Rubber Co., is a Delaware corporation with its principal place of business at 1204 Massillon Rd., Akron, OH 44306. AIRCRAFT BRAKING SYSTEMS f/k/a The Goodyear Tire & Rubber Co. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2C.     ARVINMERITOR, INC., Successor-in-interest to Rockwell Automation, Inc., f/k/a Rockwell Automation Corporation is a Nevada corporation with its principal place of

2

business outside of Massachusetts.  ARVINMERITOR, INC., Successor-in-interest to Rockwell Automation, Inc., f/k/a Rockwell Automation Corporation has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

      2D.    A.W. CHESTERTON CO. is a Massachusetts corporation with its principal place of business at 225 Fallon Road, Stoncham, MA, 02180.

      2E.    B.F. GOODRICH AEROSPACE is a foreign corporation with its principal place of business outside of Massachusetts.  B.F. GOODRICH AEROSPACE has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

      2F.    B.F. GOODRICH COMPANY is a New York corporation with a principal place of business at 4020 Kinross Lakes Parkway, Richfield, OH 44286.  GOODRICH CORPORATION may be served through the registered agent CT Corporation Systems, 101 Federal Street, Boston, MA, 02110.  B.F. GOODRICH COMPANY has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

      2G.    THE BOEING COMPANY, Individually and as Successor in interest to McDonnell Douglas Corporation, North American Rockwell, North American Aviation and Rockwell International, is a Delaware corporation with its principal place of business at 7755 E. Marsinal Way, Seattle, WA 98124.  THE BOEING COMPANY has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.  Upon Information and Belief, THE BOEING COMPANY, holds the liabilities for Boeing Aircraft and North American Aviation.

      2H.    BOEING NORTH AMERICAN, INC. is a Delaware corporation with its principal place of business at 2201 Seal Beach Blvd., Seal Beach, CA 90740.  BOEING NORTH

AMERICAN, INC. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2I.     EATON AEROQUIP INC., individually and as successor-in-interest to Aeroquip Inc., is a Michigan corporation with its principal place of business at Eaton Center, 1111 Superior Ave, Cleveland, OH 44114.  EATON AEROQUIP INC., individually and as successor-in-interest to Aeroquip Inc., may be served through their Registered Agent, CT Corporation Systems, 101 Federal Street, Boston, MA, 02110.  EATON AEROQUIP INC., has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2J.     EATON CORP., individually and as successor-in-interest to Aeroquip Inc., is an Ohio corporation with its principal place of business at 1111 Superior Ave, Cleveland, OH 44114.  EATON CORP., individually and as successor-in-interest to Aeroquip Inc., may be served through their Registered Agent, CT Corporation Systems, 101 Federal Street, Boston, MA, 02110.  EATON CORP., individually and as successor-in-interest to Aeroquip Inc has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2K.     GARLOCK, INC. is a New York corporation with its principal place of business at 1666 Division Street, Palmyra, NY, 14522.  GARLOCK. INC. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2L.     GENERAL DYNAMICS CORPORATION, is a Delaware corporation with a registered agent listed at Corporation Trust Center, 1209 Orange Street, Wilmington, DE, 19801.  GENERAL DYNAMICS CORPORATION has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts. Upon Information and Belief, GENERAL DYNAMICS CORPORATION owns the liabilities for Convair Aircraft.

4

2M.     GOODRICH CORPORATION, individually and as successor-in-interest to B.F. Goodrich Aerospace and the B.F. Goodrich Company, upon information and belief, is a New York corporation with a principal place of business at 4020 Kinross Lakes Parkway, Richfield, OH 44286.  GOODRICH CORPORATION may be served through the registered agent CT Corporation Systems, 101 Federal Street, Boston, MA, 02110.  GOODRICH CORPORATION has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2N.     THE GOODYEAR TIRE & RUBBER COMPANY is a Ohio corporation with its principal place of business at 1144 E. Market Street, Akron, OH 44316.  THE GOODYEAR TIRE & RUBBER COMPANY has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2O.     GRUMMAN AEROSPACE CORPORATION  is a New York corporation with its principal place of business at 1840 Century Park East, Los Angeles, CA 90067.  GRUMMAN AEROSPACE CORPORATION has conducted business in and has derived substantial revenue from the Commonwealth of  Massachusetts.

2P.     H.B. SMITH CO., INC. is a Massachusetts corporation with its principal place of business at 47 Westfield  Industrial Park, Westfield, Massachusetts, 01085.

2Q.     HONEYWELL INTERNATIONAL INC., f/k/a AlliedSignal, Inc., f/k/a The Bendix Corporation, is a Delaware corporation with its principal place of business at 101 Columbia Road, Morristown, NJ, 07962.  HONEYWELL INTERNATIONAL INC., f/k/a AlliedSignal, Inc., f/k/a The Bendix Corporation, has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

5

2R.     IMO INDUSTRIES. INC., as successor-in-interest to Adel Fasteners, is a Delaware corporation with its principal place of business at 1009 Lenox Dr., BLDG 4 West, Lawrenceville, NJ 08648.  IMO INDUSTRIES, INC.  has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2S.     METROPOLITAN LIFE INSURANCE COMPANY is a New York corporation with its principal place of business at 1 Madison Avenue, New York, NY, 10010-3644. METROPOLITAN LIFE INSURANCE COMPANY has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2T.     MCDONNELL DOUGLAS CORPORATION is a Maryland corporation with its principal place of business at 100 N. Riverside Place, Chicago, IL 63134.  MCDONNEL DOUGLAS CORPORATION has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2U.     NORTH AMERICAN AVIATION CORPORATION is a Delaware corporation with its principal place of business located outside of Massachusetts.  NORTH AMERICAN AVIATION CORPORATION has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2V.     NORTH AMERICAN ROCKWELL CORPORATION is a Delaware corporation with its principal place of business located outside of Massachusetts.  NORTH AMERICAN ROCKWELL CORPORATION has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2W.     NORTHROP GRUMMAN CORPORATION is, upon information and belief, a corporation with its principal place of business at 1840 Century Park East, Los Angeles, CA,

90067. NORTHROP GRUMMAN has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2X.    PARKER-HANNIFIN CORPORATION, individually and as successor-in-interest to Stratoflex, is an Ohio corporation with its principal place of business at 6035 Parkland Boulevard, Cleveland, OH, 44124. PARKER-HANNIFIN CORPORATION, individually and as successor-in-interest to Stratoflex, has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2Y.    PNEUMO ABEX CORPORATION is a Delaware corporation with its principal place of business at Third Street and Jefferson Avenue, Camden, NJ, 08104. PNEUMO ABEX CORPORATION has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2Z.    RAPID AMERICAN CORP. is a Pennsylvania corporation with its principal place of business at 667 Madison Avenue, New York, NY, 10022. RAPID AMERICAN CORP. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2AA.   RAYTHEON AIRCRAFT COMPANY, f/k/a Beech Aircraft Corporation, is a Kansas corporation with its principal place of business at 9709 East Central, Wichita, KS, 67206. RAYTHEON AIRCRAFT COMPANY, f/k/a Beech Aircraft Corporation, has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2BB.   ROCKWELL INTERNATIONAL as successor-in-interest to North American Aviation is a Nevada corporation with its principal place of business at 1201 South 2nd Street, E-7F19, Milwaukee, WI 53204. ROCKWELL INTERNATIONAL may be served through their Corporate Secretary, CT Corporation Systems, 101 Federal Street, Boston, MA, 02110.

ROCKWELL INTERNATIONAL has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2CC.   TRANSDIGM, INC.. is a Delaware corporation with its principal place of business at 1301 East 9th Street. Cleveland, OH 44114.  TRANSDIGM, INC.. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

As used in this Complaint, the terms "defendant," "defendants" or "defendant corporations" shall include the party defendants identified in paragraphs 2A-2CC hereof, and their predecessors and successors, which shall include, but is not limited to, any person, corporation, company or business entity which formed part of any combination, consolidation, merger or reorganization from which any party defendant was created or was the surviving corporation or other entity, or into which any party defendant was merged, consolidated or reorganized: whose assets, stock, property, employees, customers, good will, products or product line was acquired by or from any party defendant; whose patent rights, trademark rights, trade secrets or goodwill was acquired by or from any party defendant; or, which was dominated or controlled by any party defendant to such an extent that said party defendant was the "alter ego" of said corporation.

3.      The plaintiffs' cause of action arises from the defendants:  (a) transacting business in Massachusetts; (b) contracting to supply and/or sell goods in Massachusetts; (c) doing or causing a tortious act to be done within Massachusetts; and/or, (d) causing the consequence of a tortious act to occur within Massachusetts.

## FACTUAL BACKGROUND

4.      Plaintiff William J. Hilbert during the 1950's to 1990's was employed as an aircraft mechanic.  Plaintiff William J. Hilbert worked continuously around the defendants' asbestos and asbestos-containing products during the course of his employment.

5.      During the period of time set forth in Paragraph 8, plaintiff William J. Hilbert was exposed to and did inhale and/or ingest asbestos dust, fibers, and particles, which dust, fibers, and particles came from the asbestos and asbestos-containing products which were mined, milled, manufactured, fabricated, supplied, distributed, sold, installed and/or used by the defendant corporations.

6.      The asbestos and asbestos-containing products to which plaintiff William J. Hilbert was exposed were mined, milled, manufactured, fabricated, supplied, distributed, sold, installed and/or used by the defendant corporations, acting through their duly authorized agents, servants, and employees, who were then and there acting in the course and scope of their employment and in furtherance of the business of the defendants.

7.      At all times pertinent hereto, the defendant corporations were engaged in the business of mining, milling, manufacturing, fabricating, supplying, distributing, selling, installing and/or using asbestos and asbestos-containing products.

8.      At all times pertinent hereto, the asbestos products were products mined, milled, manufactured, fabricated, supplied, distributed, sold, installed and/or used by the defendant corporations and reached plaintiff William J. Hilbert without any substantial change in the condition of the product or products from the time that they were sold.

9.      As a direct and proximate result of working with, around, and/or near asbestos materials mined, processed, manufactured, tested, furnished, packaged, distributed, delivered, distributed, sold, installed, used and otherwise placed in the stream of commerce by the

defendants, plaintiff William J. Hilbert developed an asbestos-related disease. He suffered serious personal injuries, endured great pain of body and mind, suffered severe mental anguish and distress, was prevented from transacting his business, and incurred substantial medical expenses. His earning capacity was greatly impaired. Further, his spouse and next of kin incurred great expenses and were deprived of his services, protection, care, assistance, society, companionship, comfort, affection, guidance, counsel and advice.

**COUNT I**

**NEGLIGENCE**

**(CONSCIOUS PAIN AND SUFFERING)**

10.    The plaintiff incorporates by reference paragraphs 1 through 9 above as if expressly alleged and set forth herein.

11.    It was the duty of the defendant corporations to use and exercise reasonable and due care in the manufacture, fabrication, testing, inspection, production, marketing, packaging, contracting, installation, distribution and sale of its asbestos and asbestos-containing products.

12.    It was also the duty of the defendant corporations to provide detailed and adequate instructions relative to the proper and safe handling and use of their asbestos and asbestos-containing products, and to provide detailed and adequate warnings concerning any and all dangers, characteristics, and potentialities of their asbestos and asbestos-containing products.

13.    It was the continuing duty of the defendant corporations to advise and warn purchasers, consumers, users, and prior purchasers, prior consumers, and prior users of all dangers, characteristics, potentialities and defects discovered subsequent to their initial marketing or sale of their asbestos and asbestos-containing products.

14.     Yet, nevertheless, wholly disregarding the aforesaid duties, the defendant corporations breached their duties by: (a) failing to warn plaintiff William J. Hilbert of the dangers, characteristics, and potentialities of their asbestos-containing products when the defendant corporations knew or should have known that exposure to their asbestos-containing products would cause disease and injury; (b) failing to warn plaintiff William J. Hilbert of the dangers to which he was exposed when they knew or should have known of the dangers; (c) failing to exercise reasonable care to warn plaintiff William J. Hilbert of what would be safe, sufficient, and proper protective clothing, equipment, and appliances when working with or near or being exposed to their asbestos and asbestos-containing products; (d) failing to provide safe, sufficient and proper protective clothing, equipment and appliances with their asbestos and asbestos-containing products; (e) failing to test its asbestos and asbestos-containing products in order to ascertain the extent of danger involved upon exposure thereto; (f) failing to conduct such research as should have been conducted in the exercise of reasonable care, in order to ascertain the dangers involved upon exposure to their asbestos and asbestos-containing products; (g) failing to remove the product or products from the market when the defendant corporations knew or should have known of the hazards of exposure to their asbestos and asbestos-containing products; (h) failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos to adequately warn and apprise plaintiff William J. Hilbert of said dangers, hazards, and potentialities discovered; (i) failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos to package said asbestos and asbestos-containing products so as to eliminate said dangers, hazards, and potentialities; and (j) generally using unreasonable, careless, and negligent conduct in the manufacture, fabrication, supply, distribution, sale, installation, and/or use of their asbestos and asbestos-containing products.  To the extent that any of the plaintiff's

11

asbestos exposure occurred on board vessels of the United States Navy or the construction and/or repair of such vessels, plaintiff's negligence claims against manufacturers, sellers and suppliers of pumps, valves, boilers, turbines, separators, steam traps, and other mechanical equipment installed in such vessels are not based on the theory of defective design, but rather on the theory of failure to warn.

15. As a direct and proximate result of the unreasonable, careless, and negligent conduct of the defendant corporations, plaintiff William J. Hilbert developed an asbestos-related disease. He suffered serious personal injuries, endured great pain of body and mind, incurred substantial medical expenses. His earning capacity was greatly impaired. Further, his spouse and next of kin incurred great expenses and were deprived of his services, protection, care, assistance, society, companionship, comfort, affection, guidance, counsel and advice.

16. The defendants knew, or with the reasonable exercise of care, should have known of the dangerous characteristics, properties, and potentialities of asbestos and asbestos-containing products.

WHEREFORE, plaintiffs demand judgment against the defendants for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

## COUNT II

### BREACH OF EXPRESS AND IMPLIED WARRANTIES

17. The plaintiffs incorporate by reference paragraphs 1 through 16 above as if expressly alleged and set forth herein.

18. Plaintiff William J. Hilbert was a person whom the defendants could reasonably have expected to use, consume, or be affected by the defendants' asbestos and asbestos-containing products within the meaning of Massachusetts General Laws c. 106, secs. 2-314 and

2-318, as the defendants knew or had reason to know that their asbestos and asbestos-containing products would be used in the aircraft industry and that individuals such as plaintiff William J. Hilbert would come in contact with such asbestos materials.

19.     The defendants expressly and impliedly warranted that the asbestos and asbestos-containing products described above were merchantable, safe, and fit for their ordinary purposes, and the particular purposes and requirements of plaintiff William J. Hilbert.

20.     The defendants had reason to know of the particular purposes for which their asbestos and asbestos-containing products would be used.

21.     Plaintiff William J. Hilbert relied upon the defendants' skill or judgment in selecting suitable insulation or construction products for safe use.

22.     The defendants breached these warranties, in that the asbestos and asbestos-containing products they sold were not merchantable, safe, suitable, or fit for their ordinary or particular purposes.  To the extent that any of the plaintiff's asbestos exposure occurred on board vessels of the United States Navy or the construction and/or repair of such vessels, plaintiff's breach of warranty claims against manufacturers, sellers and suppliers of pumps, valves, boilers, turbines, separators, steam traps, and other mechanical equipment installed in such vessels are not based on the theory of defective design, but rather on the theory of failure to warn.

23.     As a direct and proximate result of the defendants' breach of warranties, plaintiff William J. Hilbert contracted an asbestos-related disease.  Plaintiff William J. Hilbert suffered serious personal injuries, endured great physical pain and suffering, suffered severe mental anguish and distress, and was prevented from transacting his business.  He incurred substantial medical expenses in connection with his asbestos-related disease.  His earning capacity was greatly impaired.  Further, his spouse and next of kin incurred great expenses and were deprived

13

of his services, protection, care, assistance, society, companionship, comfort, affection, guidance, counsel and advice.

WHEREFORE, plaintiffs demand judgment against the defendants for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

## COUNT III

## CONSPIRACY OR CONCERT OF ACTION: METROPOLITAN ONLY

24      Plaintiffs reallege the allegations of Paragraphs 1 through 23 of the Complaint, and by reference, makes them part of this Count.

25.      In addition, during the time period set forth in Paragraph 4, the plaintiff was exposed to and did inhale and/or ingest asbestos dust, fibers, and particles, which dust, fibers, and particles came from the asbestos or asbestos-containing products which were mined, milled, manufactured, fabricated, supplied, and/or sold by the Johns Manville Corporation (hereinafter 'Manville') and/or Raymark Industries, Inc. (hereinafter 'Raymark).

26.      The defendant, Metropolitan Life Insurance Company, (hereinafter 'Metropolitan') together with Manville, Raymark and other persons and entities, known and unknown at times relevant hereto, engaged in a conspiracy or concert of action to inflict injury on the plaintiff, and to withhold, alter, suppress and misrepresent information about the health effects of asbestos exposure. One or more of said conspirators did cause tortious injury to the plaintiff in the course of or as a consequence of the conspiracy or concert of action. At least the following enumerated acts were undertaken by the conspirators in the course of and in furtherance of the conspiracy or concert of action.

a.    In 1932, Metropolitan, through its agents, Dr. Anthony Lanza and others,

assisted Manville with medical examinations of over 1,000 employees of

Manville's factory in Manville, New Jersey.  The report of this study

shows that a large percentage of the employees suffered from asbestosis

including employees not directly involved in the manufacturing process.

This 1932 medical survey was not published in the medical literature and,

therefore, was unavailable to scientists studying the issue of asbestos

related disease.  Further collaboration between Manville and Metropolitan

continued the cover-up.

b.    Beginning in approximately 1934, Manville, through its agents, Vandiver

Brown and Attorney J.C. Hobart, suggested to Dr. Anthony Lanza,

Associate Director of Metropolitan, (insurer of Manville and Raymark)

that Lanza publish a study on asbestosis in which Lanza would

affirmatively misrepresent material facts about the health consequences of

asbestos exposure.  This was accomplished through intentional deletion of

Lanza's description of asbestosis as 'fatal' and through other selective

editing that affirmatively misrepresent asbestosis as a disease process less

serious than it actually is and was known to be.  As a result, Lanza's study

was published in the medical literature in this misleading fashion in 1935.

The conspirators were motivated, in part, to effectuate this fraudulent

misrepresentation and fraudulent nondisclosure by the desire to influence

proposed legislation to regulate asbestos exposure and to provide a

defense in lawsuits involving Manville, Raymark, and Metropolitan, as

15

insurer.  Furthermore, upon information and belief. it is alleged that

Metropolitan, at all times relevant hereto. had substantial monetary

investments in Manville and Raymark. among other asbestos product

manufacturers and distributors.

c.      In 1936, the conspirators or some of them, including Manville. Raymark,

and other companies entered into an agreement with the Saranac

Laboratories in New York.  Under this agreement, these conspirators

acquired the power to decide what information Saranac Laboratories could

publish about asbestos disease and to control in what form such

publications would occur.  This agreement gave these conspirators power

to affirmatively misrepresent the results of the work at Saranac. and also

gave these conspirators power to material facts included in any study.  On

numerous occasions thereafter. the conspirators exercised their power to

prevent Saranac scientists from disclosing material scientific data,

resulting in numerous misstatements of fact being made at scientific

meetings.

d.      By November 1948. or earlier, Manville. Metropolitan (acting through Dr.

Lanza), Raymark, and others decided to exert their influence to materially

alter and misrepresent material facts about the substance of research

started by Dr. Leroy Gardner at the Saranac Laboratories beginning in

1936.  Dr. Gardner's research involved carcinogenicity of asbestos in mice

and also included an evaluation of the health effects of asbestos on

16

humans with a critical review of the then-existing standards of dust exposure for asbestos and asbestos products.

e.    At a meeting on November 11, 1948, these conspirators and others intentionally and affirmatively determined that Dr. Gardner's work should be edited to specifically delete material facts about the cancer-causing propensities of asbestos and the health effects of asbestos on humans and they determined that only an edited version would be published.  These conspirators thereby fraudulently misrepresented the risks of asbestos exposure to the public, in general, and to the class of persons exposed to asbestos, including the plaintiff.

f.    As a direct result of influence exerted by the above described conspirators, Dr. Arthur Vorwald published Dr. Gardner's edited work in the Journal of Industrial Hygiene, AMA Archives of Industrial Hygiene and Occupational Health in 1951 in a form that stressed those portions of Dr. Gardner's work that the conspirators wished stressed, but which omitted references to human asbestosis and cancer, thereby fraudulently and affirmatively misrepresenting the extent of the risks.  The conspirators affirmatively and deliberately disseminated this misleading Vorwald publication to universities, libraries, government officials, agencies and others.

g.    .  Such action constituted a material affirmative misrepresentation of the material facts involved in Dr. Gardner's work and resulted in creating an

17

appearance that inhalation of asbestos was a less serious health concern than Dr. Gardner's unedited work indicated.

27.    Plaintiff further alleges that Metropolitan, Manville, Raymark, and/or their predecessors in interest knowingly agreed, contrived, combined, confederated, and conspired among themselves to cause plaintiff injuries, diseases, and/or illnesses by exposing plaintiff to harmful and dangerous asbestos-containing products and/or machinery  requiring or calling for the use of asbestos and/or asbestos-containing products.  Metropolitan, Manville, and Raymark further knowingly agreed, contrived, combined, confederated and conspired to deprive plaintiff of the opportunity of informed free choice as to whether to use said asbestos containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products or to expose themselves to said dangers.  In this connection, plaintiff has sued the Metropolitan Life Insurance Company in its capacity and because it committed tortious act in concert with others pursuant to a common design.  Metropolitan, Manville, and Raymark committed the above described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to Manville's and/or Raymark's asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

28.    In furtherance of said conspiracies, Metropolitan, Manville, and Raymark performed the following overt acts:

a.    for many decades, Metropolitan, individually, jointly and in conspiracy with Manville and Raymark, have been in possession of medical and scientific data, literature, and test reports which clearly indicated that the inhalation of asbestos dust and fibers resulting from the ordinary

foreseeable use of said asbestos-containing products and/or machinery

requiring or calling for the use of asbestos or asbestos-containing products

were unreasonably dangerous, hazardous, deleterious to human health,

carcinogenic, and potentially deadly;

b.        despite the medical and scientific data, literature and test reports possessed

by and available to Metropolitan, individually and in conspiracy with

Manville and Raymark, fraudulently, willfully and maliciously:

      (i)        withheld, concealed and suppressed said medical and scientific

      data, literature and test reports regarding the risks of asbestosis,

      cancer, mesothelioma, and other illnesses and diseases from

      plaintiff who using and being exposed to Manville or Raymark

      asbestos-containing products and/or machinery requiring or calling

      for the use of asbestos and/or asbestos-containing products;

      (ii)       caused to be released, published and disseminated medical and

      scientific data, literature and test reports containing information

      and statements regarding the risks of asbestosis, cancer,

      mesothelioma and other illnesses and diseases, which

      Metropolitan, Manville and Raymark knew were either incorrect,

      incomplete, outdated and misleading; and

      (iii)      distorted the results of medical examinations conducted upon

      workers such as plaintiff who were using asbestos-containing

      products and/or machinery requiring or calling for the use of

      asbestos and/or asbestos-containing products and being exposed to

the inhalation of asbestos dust and fibers by falsely stating and/or

concealing the nature and extent of the harm to which workers

such as plaintiff has suffered; and

(iv)    failing to adequately warn the plaintiff of the dangers to which he

was exposed when they knew of the dangers.

c.      by the false and fraudulent representations, omissions, failures, and

concealments set forth above, Metropolitan, Manville and Raymark,

individually, jointly, and in conspiracy with each other, intended to induce

the plaintiff to rely upon said false and fraudulent representations,

omissions, failures, and concealments, to continue to expose themselves to

the dangers inherent in the use of and exposure to their asbestos

containing products and/or machinery requiring or calling for the use of

asbestos and/or asbestos-containing products.

Said misrepresentations were false, incomplete, and misleading and constitute negligent

misrepresentations as defined by Sections 311 and 522 of the Restatement (Second) of Torts.

29.     Plaintiff reasonably and in good faith relied upon the false and fraudulent

representations, omissions, failures, and concealments made by Metropolitan, Manville, and

Raymark regarding the nature of their asbestos-containing products and/or machinery requiring

or calling for the use of asbestos and/or asbestos-containing products.

30.     As a direct and proximate result of the conspiracy and concert of action between

Metropolitan, Manville and Raymark, the plaintiff has been deprived of the opportunity of

informed free choice and connection with the use of and exposure to Manville and Raymark's

asbestos and asbestos-containing products, and therefore continued to work with and be exposed

to the co-conspirator corporation's asbestos and asbestos-containing products and as a result

contracted asbestos-related diseases and other conditions, and/or aggravated pre-existing

conditions, as a result of which the plaintiff has suffered a dramatic reduction of his life

expectancy, incurred great mental and physical pain and suffering, sustained lost wages and lost

earning capacity, incurred medical expenses, and their enjoyment of life has been greatly

impaired, which damages are continuing in nature.

WHEREFORE, plaintiff demands compensatory damages, plus interest and costs.

## COUNT IV

## UNDERTAKING OF SPECIAL DUTY: METROPOLITAN ONLY

31.   Plaintiffs reallege the allegations of Paragraphs 1 through 30 of the Complaint,

and by reference, makes them part of this Count.

32.   Defendant Metropolitan, through its Policymakers Service Bureau, undertook

duties owed by entities which manufactured, sold, supplied, or distributed asbestos-containing

products, including Manville and Raymark to plaintiff by testing of asbestos workers and the

conduct of scientific studies.  These duties included, without limitation, as follows:

a.      to test fully and adequately for health risks concomitant to the normal and

intended use of their products; and

b.      to instruct fully and adequately in the use of their products so as to

eliminate or reduce health hazards concomitant with their normal or

intended use.

In undertaking these duties, Metropolitan knew or should have known that it was providing

testing services for the ultimate protection of third persons, including the plaintiff.

33.    In both conducting said tests and publishing their alleged results, Metropolitan failed to exercise reasonable care to conduct or publish complete, adequate, and accurate tests of the health effects of asbestos.  Metropolitan also caused to be published intentionally false, misleading, inaccurate and deceptive information about the health effects of asbestos exposure. In so acting, Metropolitan breached their special responsibility by failing to exercise reasonable care to protect their undertaking, as described above.

34.    The plaintiff unwittingly but justifiably relied upon the thoroughness of Metropolitan's tests and information dissemination, the results of which Metropolitan published in leading medical journals.

35.    In failing to test fully and adequately for the adverse health effects from exposure to asbestos; in delaying the publication of such results; and in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with entities which manufactured, sold, supplied, or distributed asbestos-containing products, including Manville and Raymark, to understate the hazards of asbestos exposure, all for pecuniary profit and gain, Metropolitan acted recklessly, wantonly, and in calculated disregard for the welfare of the general public, including the plaintiff.

36.    As a direct and proximate result of Metropolitan's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so; (i) the risk of harm to the plaintiff from asbestos exposure was increased, and (ii) plaintiff contracted asbestos-related diseases and other conditions, and/or aggravated pre-existing conditions, as a result of which the plaintiff has suffered dramatic reduction of their life expectancy, incurred great mental and physical pain and suffering, sustained lost wages and lost

22

earning capacity, incurred medical expenses, and their enjoyment of life has been greatly impaired, which damages are continuing in nature.

WHEREFORE, plaintiff demands compensatory damages, plus interest and costs.

## COUNT V

## LOSS OF CONSORTIUM

37.     The plaintiffs incorporate by reference paragraphs 1 through 36 above as if expressly alleged and set forth herein.

38.     Pamela R. Hillbert is the living spouse of William J. Hillbert, and at all pertinent times was the wife of William J. Hillbert.

39.     As a direct and proximate result of the breach of duty and wrongdoing of the defendants and the resultant injury to plaintiff William J. Hillbert, as more particularly described in the preceding Counts, Pamela R. Hillbert has suffered and will continue to suffer a loss of her right to consortium with her husband and the loss of her husband's services, guidance, affection, comfort, protection, society, counsel, advice, and companionship, and she has suffered great mental anguish.

WHEREFORE, plaintiffs demand judgment against the defendants for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

## DEMAND FOR TRIAL BY JURY

The plaintiffs hereby demand a trial by jury on each claim asserted or hereafter asserted by the plaintiffs and on each defense asserted or hereafter asserted by the defendants.

Respectfully submitted,
The plaintiffs,
By their attorney,

Dated: December 21, 2006

Michael C. Shepard, Esq.
B.B.O. No. 567842
Erika A. Olson, Esq.
B.B.O. No. 661534
The Shepard Law Firm, P.C.
10 High Street, Suite 1100
Boston, MA 02110
(617) 451-9191

# EXHIBIT B

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM J. HILBERT, JR. AND PAMELA A. HILBERT, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 07-10205-NG |
| AEROQUIP, INC., et al., | |
| Defendants. | |

## ANSWER AND CROSS-CLAIM OF
## DEFENDANT MCDONNELL DOUGLAS CORPORATION

Defendant McDonnell Douglas Corporation ("MDC") answers the numbered paragraphs of the Complaint of William J. Hilbert, Jr. and Pamela R. Hilbert ("Plaintiffs") as follows:

### PARTY PLAINTIFFS

1.      MDC lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 1 of the Complaint, and on that basis denies generally and specifically each and every allegation set forth therein.

### PARTY DEFENDANTS

2A-2S.  The allegations contained in Paragraphs 2A through 2F of the Complaint are directed to other defendants and require no response from MDC.  To the extent that the allegations of Paragraphs 2A through 2F are deemed to include allegations against MDC, MDC denies generally and specifically each and every allegation.

2T.     Admitted.

2U.-2CC. The allegations contained in Paragraphs 2H through 2CC of the Complaint are directed to other defendants and require no response from MDC.  To the extent that

the allegations of Paragraphs 2I through 2CC are deemed to include allegations against MDC, MDC denies generally and specifically each and every allegation.

Answering further, MDC objects to Plaintiffs' definition of the terms "defendant," "defendants" and "defendant corporations" as overly broad, vague and unduly burdensome, and beyond the scope of the applicable Rules of Civil Procedure.

3.      Paragraph 3 of the Complaint consists solely of conclusions of law to which no response is required; to the extent that a response is required, MDC denies generally and specifically each and every allegation contained in Paragraph 3 of the Complaint.

## FACTUAL BACKGROUND

4.      MDC lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 4 of the Complaint, and on that basis denies generally and specifically each and every allegation set forth therein.

5.      MDC lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 5 of the Complaint, and on that basis denies generally and specifically each and every allegation set forth therein.

6.      To the extent the allegations contained in Paragraph 6 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than MDC, MDC is without knowledge or information sufficient to form a belief as to the truth of the allegations.  MDC denies each and every allegation contained in Paragraph 6 that pertains to MDC.

7.      To the extent the allegations contained in Paragraph 7 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than MDC, MDC is without knowledge or information sufficient to form a belief as to the truth of the allegations.  MDC denies each and every allegation contained in Paragraph 7 that pertains to MDC.

8.    MDC lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 8 of the Complaint, and on that basis denies generally and specifically each and every allegation set forth therein.

9.    MDC lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 9 of the Complaint, and on that basis denies generally and specifically each and every allegation set forth therein.

## COUNT I
## NEGLIGENCE
### (CONSCIOUS PAIN AND SUFFERING)

10.    MDC incorporates by reference Paragraphs 1 through 9 above.

11.    To the extent the allegations contained in Paragraph 11 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than MDC, MDC is without knowledge or information sufficient to form a belief as to the truth of the allegations.  MDC  denies each and every allegation contained in Paragraph 11 that pertains to MDC.

12.    To the extent the allegations contained in Paragraph 12 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than MDC, MDC is without knowledge or information sufficient to form a belief as to the truth of the allegations.  MDC denies each and every allegation contained in Paragraph 12 that pertains to MDC.

13.    To the extent the allegations contained in Paragraph 13 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than MDC,  MDC is without knowledge or information sufficient to form a belief as to the truth of the allegations.  MDC  denies each and every allegation contained in Paragraph 13 that pertains to MDC.

14.    To the extent the allegations contained in Paragraph 14 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than MDC, MDC is without

knowledge or information sufficient to form a belief as to the truth of the allegations.  MDC denies

each and every allegation contained in Paragraph 14 that pertains to MDC.

15.      To the extent the allegations contained in Paragraph 15 of the Complaint refer to the

knowledge, conduct or actions of persons, entities or defendants other than MDC, MDC is without

knowledge or information sufficient to form a belief as to the truth of the allegations.  MDC denies

each and every allegation contained in Paragraph 15 that pertains to MDC.

16.      To the extent the allegations contained in Paragraph 16 of the Complaint refer to the

knowledge, conduct or actions of persons, entities or defendants other than MDC, MDC is without

knowledge or information sufficient to form a belief as to the truth of the allegations.  MDC denies

each and every allegation contained in Paragraph 16 that pertains to MDC.

**COUNT II**
**BREACH OF EXPRESS AND IMPLIED WARRANTIES**

17.      MDC  incorporates by reference Paragraphs 1 through 16 above.

18.      Paragraph 18 of the Complaint consists solely of conclusions of law to which no

response is required; to the extent that a response is required, MDC denies generally and specifically

each and every allegation contained in Paragraph 18 of the Complaint.

19.      To the extent the allegations contained in Paragraph 19 of the Complaint refer to the

knowledge, conduct or actions of persons, entities or defendants other than MDC, MDC is without

knowledge or information sufficient to form a belief as to the truth of the allegations.  MDC denies

each and every allegation contained in Paragraph 19 that pertains to MDC.

20.      To the extent the allegations contained in Paragraph 20 of the Complaint refer to the

knowledge, conduct or actions of persons, entities or defendants other than MDC, MDC is without

knowledge or information sufficient to form a belief as to the truth of the allegations.  MDC denies

each and every allegation contained in Paragraph 20 that pertains to MDC.

21.     MDC lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 21 of the Complaint, and on that basis denies generally and specifically each and every allegation set forth therein.

22.     To the extent the allegations contained in Paragraph 22 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than MDC, MDC is without knowledge or information sufficient to form a belief as to the truth of the allegations.  MDC denies each and every allegation contained in Paragraph 22 that pertains to MDC.

23.     To the extent the allegations contained in first sentence of Paragraph 23 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than MDC, MDC is without knowledge or information sufficient to form a belief as to the truth of the allegations.  MDC denies each and every allegation contained in the first sentence of Paragraph 23 that pertains to MDC.   MDC lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 23 of the Complaint, and on that basis denies generally and specifically each and every allegation set forth therein.

**COUNT III**
**CONSPIRACY OR CONCERT OF ACTION: METROPOLITAN ONLY**

24.     MDC  incorporates by reference Paragraphs 1 through 23 above.

25-30.   The allegations contained in Paragraphs 25 through 30 of the Complaint are directed to other defendants and require no response from MDC.   To the extent that the allegations of Paragraphs 25 through 30 are deemed to include allegations against MDC, MDC  denies generally and specifically each and every allegation.

**COUNT IV**
**UNDERTAKING OF SPECIAL DUTY: METROPOLITAN ONLY**

31.     MDC  incorporates by reference Paragraphs 1 through 30 above.

32-36.  The allegations contained in Paragraphs 32 through 36 of the Complaint are directed to other defendants and require no response from MDC.   To the extent that the allegations of Paragraphs 32 through 36 are deemed to include allegations against MDC, MDC denies generally and specifically each and every allegation.

**COUNT V**
**LOSS OF CONSORTIUM**

37.      MDC incorporates by reference Paragraphs 1 through 36 above.

38.      MDC lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 38 of the Complaint, and on that basis denies generally and specifically each and every allegation set forth therein.

39.      To the extent the allegations contained in Paragraph 39 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than MDC, MDC is without knowledge or information sufficient to form a belief as to the truth of the allegations.  MDC denies each and every allegation contained in Paragraph 39 that pertains to MDC.

**MDC'S AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

MDC denies each and every material allegation of the Complaint.

**SECOND AFFIRMATIVE DEFENSE**

MDC denies that the Plaintiffs are entitled to the damages claimed or to the relief demanded.

**THIRD AFFIRMATIVE DEFENSE**

The Complaint fails to state a claim upon which relief can be granted.

**FOURTH AFFIRMATIVE DEFENSE**

The Complaint must be dismissed based upon the doctrine of *forum non conveniens*.

### FIFTH AFFIRMATIVE DEFENSE

The Complaint should be dismissed for lack of subject matter jurisdiction.

### SIXTH AFFIRMATIVE DEFENSE

The Complaint should be dismissed for improper venue.

### SEVENTH AFFIRMATIVE DEFENSE

The Complaint should be dismissed for insufficiency of service of process.

### EIGHTH AFFIRMATIVE DEFENSE

The Complaint should be dismissed for insufficiency of process.

### NINTH AFFIRMATIVE DEFENSE

The claims asserted are barred by the applicable statutes of limitation.

### TENTH AFFIRMATIVE DEFENSE

The claims asserted are barred by any and all statutes of repose, including but not limited to M.G.L. c. 260 § 2B and General Aviation Revitalization Act of 1994, 49 U.S.C. 40101.

### ELEVENTH AFFIRMATIVE DEFENSE

The claims asserted are barred by the doctrine of laches.

### TWELFTH AFFIRMATIVE DEFENSE

The claims asserted are barred or mitigated by Plaintiffs' contributory negligence.

### THIRTEENTH AFFIRMATIVE DEFENSE

The Plaintiffs have failed to join a party or parties necessary for a just adjudication of this matter.

### FOURTEENTH AFFIRMATIVE DEFENSE

The Plaintiffs have failed to mitigate damages and the Plaintiffs are, therefore, barred from recovery.

### FIFTEENTH AFFIRMATIVE DEFENSE

If the Plaintiff, William J. Hilbert, was a user of tobacco products, such use contributed to any lung disease from which the Plaintiff suffered and further MDC states that the tobacco industry placed warnings on its products notifying the public of potential hazards associated with its use, which hazards the Plaintiff knew or should have known, may have adversely affected the Plaintiff's health.

### SIXTEENTH AFFIRMATIVE DEFENSE

The claims asserted are barred because Plaintiff voluntarily assumed the risk of injury after the alleged hazard became known to him.

### SEVENTEENTH AFFIRMATIVE DEFENSE

Any injuries, losses or damages were caused by acts of others over whom MDC had no control, and for whose acts MDC is not legally answerable.

### EIGHTEENTH AFFIRMATIVE DEFENSE

If Plaintiff was injured or harmed as alleged, which MDC denies, such injuries or harm were caused by the intervening and/or superseding acts of others over whom MDC has no control, and for whose acts MDC is not legally answerable.

### NINETEENTH AFFIRMATIVE DEFENSE

The Complaint fails to state a claim for which exemplary or punitive damages may be granted.

### TWENTIETH AFFIRMATIVE DEFENSE

Punitive damages cannot be awarded against MDC for any of the alleged actions or omissions of and of MDC 's alleged predecessors because there is not a sufficient degree of identity between MDC and any of its alleged predecessors to justify such an award.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

At all times relevant to the alleged conditions, conduct or injuries, Plaintiffs had or should have had notice and knowledge of the risks and dangers, if any, associated with such conditions, conduct and injuries because any such risk or danger was open, obvious and apparent to Plaintiffs, they appreciated the danger or risk, and they voluntarily assumed any such danger or risk.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

MDC reserves the right to seek contribution and/or indemnity from those parties not joined in this action as a result of bankruptcy.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

The claim of loss of consortium as set forth in the Complaint is a derivative action and in the event the Plaintiffs are barred from recovery against MDC on their underlying theories of liability, the Plaintiffs cannot recover any damages for loss of consortium against MDC.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

If Mr. Hilbert has applied for and received worker's compensation benefits, then this Complaint is barred by the provisions of any and all applicable workers compensation acts and statutes.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

MDC did not supervise or control any work done by any contractors or subcontractors.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

MDC denies the applicability of the doctrine of strict liability in tort to this litigation.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

The claims asserted are barred by reason of estoppel and waiver.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

If Plaintiff was injured by exposure to asbestos or asbestos-containing products, which MDC denies, then such injuries were or may have resulted from exposure to products of one or more other manufacturers not parties to this action.

### TWENTY-NINTH AFFIRMATIVE DEFENSE

The Plaintiffs; claims are barred based upon the learned intermediary doctrine.

### THIRTIETH AFFIRMATIVE DEFENSE

The plans or designs, method or technique of manufacturing, assembling, testing, and labeling any product alleged in the Complaint to have caused all or part of Plaintiffs' alleged damages conformed with the state of the art at the time any such product was designed, manufactured and/or sold by MDC.

### THIRTY-FIRST AFFIRMATIVE DEFENSE

The claims asserted in the Complaint are barred because they have been released and/or forfeited.

### THIRTY-SECOND AFFIRMATIVE DEFENSE

MDC states that the injuries or damages alleged were caused in whole or in part by the violation by the Plaintiffs or the Plaintiffs' servants or agents, of the various statutes, ordinances and regulations governing the conduct of the parties at the time said injuries or damages was sustained.

### THIRTY-THIRD AFFIRMATIVE DEFENSE

The claims asserted are barred because any exposure of the Plaintiff to products allegedly sold, distributed or installed by MDC, which exposure MDC denies, was so minimal as to be insufficient to establish a reasonable degree of probability that the exposure caused his claimed injuries or illness.

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

MDC did not act individually or engage in concert of action with any one or more of the Defendants herein for the purpose of accomplishing any unlawful purpose or to accomplish some purpose, not in and of itself unlawful, by unlawful means, nor did Plaintiffs suffer any injury as a result of the actions or inactions of MDC . Accordingly, Plaintiffs cannot recover against MDC under a theory of civil conspiracy.

### THIRTY-FIFTH AFFIRMATIVE DEFENSE

The claims asserted are barred because at all times relevant hereto, the state of medical and scientific knowledge and the state of the art or the design and manufacture of asbestos-containing materials was such that MDC neither knew nor should have known that such products presented a significant risk of harm.

### THIRTY-SIXTH AFFIRMATIVE DEFENSE

MDC denies that there was any defect or negligent mining, processing, manufacture, design, testing, investigation, fashioning, packaging, distributing, delivery and/or sale, in any asbestos product or material referred to in the Plaintiffs' Complaint, but if there was any defect or negligence as alleged, than MDC is not liable as it justifiably relied upon inspection by others in the regular course of trade and business.

### THIRTY-SEVENTH AFFIRMATIVE DEFENSE

MDC did not mine, process, manufacture, design, test, fashion, package, distribute, deliver or sell any products which were the proximate cause of the alleged claimed injuries.

### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

The Plaintiffs were not purchasers within the meaning of M.G.L. c. 231, §85J, nor did MDC make any sale to them, nor did it make any sale by fraud, deceit or misrepresentation.

### THIRTY-NINTH AFFIRMATIVE DEFENSE

MDC breached no warranties, either express or implied, in connection with the sale or distribution of any products which allegedly harmed Plaintiffs.

### FORTIETH AFFIRMATIVE DEFENSE

MDC states that if MDC 's agents or servants made any express warranties, which MDC specifically denies, then the agents or servants did so without authority, express or implied.

### FORTY-FIRST AFFIRMATIVE DEFENSE

MDC states that if MDC, its agent or servants made any express warranties, which MDC specifically denies, then the Plaintiff did not rely on the express warranties and further, there was no such reliance by any person or entity authorized to represent the Plaintiff.

### FORTY-SECOND AFFIRMATIVE DEFENSE

MDC denies it knew of the particular purpose for which the alleged product was intended to be used by the Plaintiff and further denies that the Plaintiff relied on MDC 's, its agents', servants' or employees' skill or judgment in selecting the alleged produced.

### FORTY-THIRD AFFIRMATIVE DEFENSE

Any claims against MDC for breach of warranty are barred in whole or in part by Plaintiff's failure to give timely notice to MDC of the alleged breach of warranty and the failure to provide notice resulted in prejudice to the defendant.

### FORTY-FOURTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint are barred because MDC was not engaged in the business of a selling a product.

### FORTY-FIFTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint are barred because the product complained of was not in a defective condition unreasonably dangerous to the user or consumer.

### FORTY-SIXTH AFFIRMATIVE DEFENSE

MDC states that the utility of the products manufactured by MDC outweigh the danger allegedly involved, and therefore, the Plaintiff's claims are barred as a matter of public policy.

### FORTY-SEVENTH AFFIRMATIVE DEFENSE

The claims asserted are barred because the products at issue were substantially changed or modified.

### FORTY-EIGHTH AFFIRMATIVE DEFENSE

The claims asserted are barred because MDC was required to warn only of those dangers of which it had actual knowledge of or which were reasonably foreseeable and knowable at the time of sale and because MDC had no such knowledge nor was such knowledge reasonably foreseeable and knowable at the time of sale.

### FORTY-NINTH AFFIRMATIVE DEFENSE

The claims asserted are barred because MDC has performed and fulfilled all promises and obligations arising under all applicable warranties.

### FIFTIETH AFFIRMATIVE DEFENSE

The claims asserted are barred to the extent that they resulted from modifications and/or alterations made by other persons or entities.

### FIFTY-FIRST AFFIRMATIVE DEFENSE

The claims asserted are barred because MDC gave no warranties, express or implied.

### FIFTY-SECOND AFFIRMATIVE DEFENSE

MDC states that if the Plaintiff has released, settled, entered into an accord and satisfaction or otherwise compromised the Plaintiff's claims herein, then said claims are barred in the amount of said settlement by operation of law.

### FIFTY-THIRD AFFIRMATIVE DEFENSE

MDC states that if the Plaintiff has heretofore settled or should hereafter settle for any of his alleged injuries and damages with any parties, then MDC is entitled to a credit in the amount of said settlement.

### FIFTY-FOURTH AFFIRMATIVE DEFENSE

The claims asserted are barred because MDC is not a merchant as alleged and as defined by Article 2, M.G.L. c. 106.

### FIFTY-FIFTH AFFIRMATIVE DEFENSE

The claims asserted based on allegations of express or implied warranty are barred because no sale of goods occurred within the meaning of Article 2, M.G.L. c. 106.

### FIFTY-SIXTH AFFIRMATIVE DEFENSE

The claims asserted are barred because Plaintiff was not a third-party beneficiary with reference to any alleged warranties, express or implied.

### FIFTY-SEVENTH AFFIRMATIVE DEFENSE

The claims asserted are barred because Plaintiff misused the products which allegedly caused him injury and such use was not reasonably foreseeable.

### FIFTY-EIGHTH AFFIRMATIVE DEFENSE

The actions of MDC were in conformity with the state of the medical, industrial, and scientific arts, so that there was no duty to warn Plaintiffs under the circumstances, or to the extent such a duty arose, MDC provided adequate warnings, labels and/or instructions concerning any product in question. If those warnings, labels and/or instructions were not made available or heeded, it is the fault of others and not MDC.

### FIFTY-NINTH AFFIRMATIVE DEFENSE

MDC did not design and/or manufacture some or all of the products alleged in the Complaint.

### SIXTIETH AFFIRMATIVE DEFENSE

At no time relevant herein were Plaintiffs exposed to any asbestos from products designed or manufactured by MDC.

### SIXTY-FIRST AFFIRMATIVE DEFENSE

Any and all "market share," "enterprise" and/or "concert of action" theories of liability are inapplicable to MDC  and/or any of its products in question.

### SIXTY-SECOND AFFIRMATIVE DEFENSE

If the Plaintiffs were injured or harmed, which MDC denies, the negligence of the Plaintiff's employer proximately caused such injuries or harm, and Plaintiffs received worker's compensation benefits from his employer.  Therefore, if Plaintiffs are entitled to damages, which MDC denies, MDC is entitled to a setoff in the amount of said worker's compensation benefits.

### SIXTY-THIRD AFFIRMATIVE DEFENSE

MDC is not the successor in interest to North American Aviation, thus, Plaintiffs claims against MDC are barred to the extent they are premised upon liability of North American Aviation.

### SIXTY-FOURTH AFFIRMATIVE DEFENSE

MDC avails itself of and adopts such other defenses raised by any other Defendants as may be applicable.

### SIXTY-FIFTH AFFIRMATIVE DEFENSE

MDC reserves the right to raise additional affirmative defenses after discovery.

**WHEREFORE**, MDC prays for judgment against Plaintiffs dismissing the Complaint and each and every claim for relief alleged therein, and awarding to MDC costs, interest, reasonable attorneys' fees and disbursements.

## CROSS CLAIM

McDonnell Douglas Corporation adopts the Model Cross-Claim of Defendants.

## JURY DEMAND

McDonnell Douglas Corporation demands a trial by jury on all issues raised in the Complaint and the cross-claims asserted herein.

Respectfully submitted,

**McDonnell Douglas Corporation**

By its attorneys,

Robert J. Muldoon, Jr., BBO# 359480
Katy E. Koski, BBO# 650613
Sherin and Lodgen LLP
101 Federal Street
Boston, Massachusetts 02110
617.646.2000

Dated: March 5, 2007

*Of Counsel:*

Robert E. Boone, III
James Pettis
Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386
Tel. (310) 576-2000
reboone@bryancave.com
james.pettis@bryancave.com

## CERTIFICATE OF SERVICE

I, Katy E. Koski, attorney for defendant McDonnell Douglas Corporation, hereby certify that I electronically served a copy of the above referenced document on all counsel of record via Lexis Nexis File and Serve and this Court's CM/ECF system on March 5, 2007.

Katy E. Koski

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM J. HILBERT, JR. AND PAMELA
A. HILBERT,

        Plaintiff,

v.

AEROQUIP, INC., et al.,

        Defendants.

CIVIL ACTION NO. 07-10205-NG

## ANSWER AND CROSS-CLAIM OF
## DEFENDANT THE BOEING COMPANY

Defendant The Boeing Company ("Boeing") answers the numbered paragraphs of

the Complaint of William J. Hilbert, Jr. and Pamela R. Hilbert ("Plaintiffs") as follows:

### PARTY PLAINTIFFS

1.      Boeing lacks knowledge and information sufficient to form a belief as to the truth of

the allegations set forth in Paragraph 1 of the Complaint, and on that basis denies generally and

specifically each and every allegation set forth therein.

### PARTY DEFENDANTS

2A-2F.  The allegations contained in Paragraphs 2A through 2F of the Complaint are

directed to other defendants and require no response from Boeing.   To the extent that the

allegations of Paragraphs 2A through 2F are deemed to include allegations against Boeing,

Boeing denies generally and specifically each and every allegation.

2G.     Boeing admits only that it is a corporation organized under the laws of the

State of Delaware.  Boeing denies generally and specifically the remaining allegations not

expressly admitted herein.

2H.-2CC. The allegations contained in Paragraphs 2H through 2CC of the Complaint are directed to other defendants and require no response from Boeing  To the extent that the allegations of Paragraphs 2I through 2CC are deemed to include allegations against Boeing , Boeing  denies generally and specifically each and every allegation.

Answering further, Boeing objects to Plaintiffs definition of the terms "defendant," "defendants" and "defendant corporations" as overly broad, vague and unduly burdensome, and beyond the scope of the applicable Rules of Civil Procedure.

3.      Paragraph 3 of the Complaint consists solely of conclusions of law to which no response is required; to the extent that a response is required, Boeing denies generally and specifically each and every allegation contained in Paragraph 3 of the Complaint.

## FACTUAL BACKGROUND

4.      Boeing lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 4 of the Complaint, and on that basis denies generally and specifically each and every allegation set forth therein.

5.      Boeing lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 5 of the Complaint, and on that basis denies generally and specifically each and every allegation set forth therein.

6.      To the extent the allegations contained in Paragraph 6 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than Boeing, Boeing is without knowledge or information sufficient to form a belief as to the truth of the allegations. Boeing  denies each and every allegation contained in Paragraph 6 that pertains to Boeing

7.      To the extent the allegations contained in Paragraph 7 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than Boeing, Boeing is

without knowledge or information sufficient to form a belief as to the truth of the allegations. Boeing denies each and every allegation contained in Paragraph 7 that pertains to Boeing

8.       Boeing lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 8 of the Complaint, and on that basis denies generally and specifically each and every allegation set forth therein.

9.       Boeing lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 9 of the Complaint, and on that basis denies generally and specifically each and every allegation set forth therein.

## COUNT I
## NEGLIGENCE
## (CONSCIOUS PAIN AND SUFFERING)

10.       Boeing incorporates by reference Paragraphs 1 through 9 above.

11.       To the extent the allegations contained in Paragraph 11 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than Boeing, Boeing is without knowledge or information sufficient to form a belief as to the truth of the allegations. Boeing denies each and every allegation contained in Paragraph 11 that pertains to Boeing

12.       To the extent the allegations contained in Paragraph 12 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than Boeing, Boeing is without knowledge or information sufficient to form a belief as to the truth of the allegations. Boeing denies each and every allegation contained in Paragraph 12 that pertains to Boeing

13.       To the extent the allegations contained in Paragraph 13 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than Boeing, Boeing is without knowledge or information sufficient to form a belief as to the truth of the allegations. Boeing denies each and every allegation contained in Paragraph 13 that pertains to Boeing

14.    To the extent the allegations contained in Paragraph 14 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than Boeing, Boeing is without knowledge or information sufficient to form a belief as to the truth of the allegations. Boeing denies each and every allegation contained in Paragraph 14 that pertains to Boeing

15.    To the extent the allegations contained in Paragraph 15 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than Boeing , Boeing is without knowledge or information sufficient to form a belief as to the truth of the allegations. Boeing denies each and every allegation contained in Paragraph 15 that pertains to Boeing

16.    To the extent the allegations contained in Paragraph 16 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than Boeing , Boeing is without knowledge or information sufficient to form a belief as to the truth of the allegations. Boeing denies each and every allegation contained in Paragraph 16 that pertains to Boeing

## COUNT II
## BREACH OF EXPRESS AND IMPLIED WARRANTIES

17.    Boeing incorporates by reference Paragraphs 1 through 16 above.

18.    Paragraph 18 of the Complaint consists solely of conclusions of law to which no response is required; to the extent that a response is required, Boeing denies generally and specifically each and every allegation contained in Paragraph 18 of the Complaint.

19.    To the extent the allegations contained in Paragraph 19 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than Boeing , Boeing is without knowledge or information sufficient to form a belief as to the truth of the allegations. Boeing denies each and every allegation contained in Paragraph 19 that pertains to Boeing

20.    To the extent the allegations contained in Paragraph 20 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than Boeing , Boeing is

without knowledge or information sufficient to form a belief as to the truth of the allegations. Boeing denies each and every allegation contained in Paragraph 20 that pertains to Boeing

21.    Boeing lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 21 of the Complaint, and on that basis denies generally and specifically each and every allegation set forth therein.

22.    To the extent the allegations contained in Paragraph 22 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than Boeing , Boeing is without knowledge or information sufficient to form a belief as to the truth of the allegations. Boeing denies each and every allegation contained in Paragraph 22 that pertains to Boeing

23.    To the extent the allegations contained in first sentence of Paragraph 23 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than Boeing , Boeing is without knowledge or information sufficient to form a belief as to the truth of the allegations. Boeing denies each and every allegation contained in the first sentence of Paragraph 23 that pertains to Boeing.  Boeing lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 23 of the Complaint, and on that basis denies generally and specifically each and every allegation set forth therein.

## COUNT III
### CONSPIRACY OR CONCERT OF ACTION: METROPOLITAN ONLY

24.    Boeing incorporates by reference Paragraphs 1 through 23 above.

25-30.  The allegations contained in Paragraphs 25 through 30 of the Complaint are directed to other defendants and require no response from Boeing  To the extent that the allegations of Paragraphs 25 through 30 are deemed to include allegations against Boeing , Boeing denies generally and specifically each and every allegation.

## COUNT IV
## UNDERTAKING OF SPECIAL DUTY: METROPOLITAN ONLY

31.      Boeing  incorporates by reference Paragraphs 1 through 30 above.

32-36.  The allegations contained in Paragraphs 32 through 36 of the Complaint are directed to other defendants and require no response from Boeing  To the extent that the allegations of Paragraphs 32 through 36 are deemed to include allegations against Boeing , Boeing  denies generally and specifically each and every allegation.

## COUNT V
## LOSS OF CONSORTIUM

37.      Boeing  incorporates by reference Paragraphs 1 through 36 above.

38.      Boeing  lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 38 of the Complaint, and on that basis denies generally and specifically each and every allegation set forth therein.

39.      To the extent the allegations contained in Paragraph 39 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than Boeing , Boeing  is without knowledge or information sufficient to form a belief as to the truth of the allegations.  Boeing  denies each and every allegation contained in Paragraph 39 that pertains to Boeing

### BOEING 'S AFFIRMATIVE DEFENSES

#### FIRST AFFIRMATIVE DEFENSE

Boeing  denies each and every material allegation of the Complaint.

#### SECOND AFFIRMATIVE DEFENSE

Boeing  denies that the Plaintiffs are entitled to the damages claimed or to the relief demanded.

#### THIRD AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### FOURTH AFFIRMATIVE DEFENSE

The Complaint must be dismissed based upon the doctrine of *forum non conveniens*.

### FIFTH AFFIRMATIVE DEFENSE

The Complaint should be dismissed for improper venue.

### SIXTH AFFIRMATIVE DEFENSE

The Complaint should be dismissed for insufficiency of service of process.

### SEVENTH AFFIRMATIVE DEFENSE

The Complaint should be dismissed for insufficiency of process.

### EIGHTH AFFIRMATIVE DEFENSE

The claims asserted are barred by the applicable statutes of limitation.

### NINTH AFFIRMATIVE DEFENSE

The claims asserted are barred by any and all statutes of repose, including but not limited to M.G.L. c. 260 § 2B and General Aviation Revitalization Act of 1994, 49 U.S.C. 40101.

### TENTH AFFIRMATIVE DEFENSE

The claims asserted are barred by the doctrine of laches.

### ELEVENTH AFFIRMATIVE DEFENSE

The claims asserted are barred or mitigated by Plaintiffs' contributory negligence.

### TWELFTH AFFIRMATIVE DEFENSE

The Plaintiffs have failed to join a party or parties necessary for a just adjudication of this matter.

### THIRTEENTH AFFIRMATIVE DEFENSE

The Plaintiffs have failed to mitigate damages and the Plaintiffs are, therefore, barred from recovery.

### FOURTEENTH AFFIRMATIVE DEFENSE

If the Plaintiff, William J. Hilbert, was a user of tobacco products, such use contributed to any lung disease from which the Plaintiff suffered and further, Boeing states that the tobacco industry placed warnings on its products notifying the public of potential hazards associated with its use, which hazards, the Plaintiff knew or should have known, may have adversely affected the Plaintiff's health.

### FIFTEENTH AFFIRMATIVE DEFENSE

The claims asserted are barred because Plaintiff voluntarily assumed the risk of injury after the alleged hazard became known to him.

### SIXTEENTH AFFIRMATIVE DEFENSE

Any injuries, losses or damages were caused by acts of others over whom Boeing had no control, and for whose acts Boeing is not legally answerable.

### SEVENTEENTH AFFIRMATIVE DEFENSE

If Plaintiff was injured or harmed as alleged, which Boeing denies, such injuries or harm were caused by the intervening and/or superseding acts of others over whom Boeing has no control, and for whose acts Boeing is not legally answerable.

### EIGHTEENTH AFFIRMATIVE DEFENSE

The Complaint fails to state a claim for which exemplary or punitive damages may be granted.

### NINETEENTH AFFIRMATIVE DEFENSE

Punitive damages cannot be awarded against Boeing for any of the alleged actions or omissions of and of Boeing 's alleged predecessors because there is not a sufficient degree of identity between Boeing and any of its alleged predecessors to justify such an award.

### TWENTIETH AFFIRMATIVE DEFENSE

At all times relevant to the alleged conditions, conduct or injuries, Plaintiffs had or should have had notice and knowledge of the risks and dangers, if any, associated with such conditions, conduct and injuries because any such risk or danger was open, obvious and apparent to Plaintiffs, they appreciated the danger or risk, and they voluntarily assumed any such danger or risk.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

Boeing reserves the right to seek contribution and/or indemnity from those parties not joined in this action as a result of bankruptcy.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

The claim of loss of consortium as set forth in the Complaint is a derivative action and in the event the Plaintiffs are barred from recovery against Boeing on their underlying theories of liability, the Plaintiffs cannot recovery any damages for loss of consortium against Boeing

### TWENTY-THIRD AFFIRMATIVE DEFENSE

If Mr. Hilbert has applied for and received worker's compensation benefits, then this Complaint is barred by the provisions of any and all applicable workers compensation acts and statutes.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

Boeing  did not supervise or control any work done by any contractors or subcontractors.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

Boeing  denies the applicability of the doctrine of strict liability in tort to this litigation.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

The claims asserted are barred by reason of estoppel and waiver.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

If Plaintiff was injured by exposure to asbestos or asbestos-containing products, which Boeing  denies, then such injuries were or may have resulted from exposure to products of one or more other manufacturers not parties to this action.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred based upon the learned intermediary doctrine.

### TWENTY-NINTH AFFIRMATIVE DEFENSE

The plans or designs, method or technique of manufacturing, assembling, testing, and labeling any product alleged in the Complaint to have caused all or part of Plaintiffs' alleged damages conformed with the state of the art at the time any such product was designed, manufactured and/or sold by Boeing .

### THIRTIETH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint are barred because they have been released and/or forfeited.

### THIRTY-FIRST AFFIRMATIVE DEFENSE

Boeing states that the injuries or damages alleged were caused in whole or in part by the violation by the Plaintiff or the Plaintiff's servants or agents, of the various statutes, ordinances and regulations governing the conduct of the parties at the time said injuries or damages was sustained.

### THIRTY-SECOND AFFIRMATIVE DEFENSE

The claims asserted are barred because any exposure of the Plaintiff to products allegedly sold, distributed or installed by Boeing, which exposure Boeing denies, was so minimal as to be

insufficient to establish a reasonable degree of probability that the exposure caused his claimed injuries or illness.

### THIRTY-THIRD AFFIRMATIVE DEFENSE

Boeing did not act individually or engage in concert of action with any one or more of the Defendants herein for the purpose of accomplishing any unlawful purpose or to accomplish some purpose, not in and of itself unlawful, by unlawful means, nor did Plaintiff suffer any injury as a result of the actions or inactions of Boeing . Accordingly, Plaintiff cannot recover against Boeing under a theory of civil conspiracy.

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

The claims asserted are barred because at all times relevant hereto, the state of medical and scientific knowledge and the state of the art or the design and manufacture of asbestos-containing materials was such that Boeing  neither knew nor should have known that such products presented a significant risk of harm.

### THIRTY-FIFTH AFFIRMATIVE DEFENSE

Boeing denies that there was any defect or negligent mining, processing, manufacture, design, testing, investigation, fashioning, packaging, distributing, delivery and/or sale, in any asbestos product or material referred to in the Plaintiff's Complaint, but if there was any defect or negligence as alleged, than Boeing  is not liable as it justifiably relied upon inspection by others in the regular course of trade and business.

### THIRTY-SIXTH AFFIRMATIVE DEFENSE

Boeing did not mine, process, manufacture, design, test, fashion, package, distribute, deliver or sell any products which were the proximate cause of the alleged claimed injuries.

### THIRTY-SEVENTH AFFIRMATIVE DEFENSE

The Plaintiff was not a purchaser within the meaning of M.G.L. c. 231, §85J, nor did Boeing make any sale to him, nor did it make any sale by fraud, deceit or misrepresentation

### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

Boeing breached no warranties, either express or implied, in connection with the sale or distribution of any products which allegedly harmed Plaintiff.

### THIRTY-NINTH AFFIRMATIVE DEFENSE

Boeing states that if Boeing's agents or servants made any express warranties, which Boeing specifically denies, then the agents or servants did so without authority, express or implied.

### FORTIETH AFFIRMATIVE DEFENSE

Boeing states that if Boeing, its agent or servants made any express warranties, which Boeing specifically denies, then the Plaintiff did not rely on the express warranties and further, there was no such reliance by any person or entity authorized to represent the Plaintiff.

### FORTY-FIRST AFFIRMATIVE DEFENSE

Boeing denies it knew of the particular purpose for which the alleged product was intended to be used by the Plaintiff and further denies that the Plaintiff relied on Boeing's, its agents', servants' or employees' skill or judgment in selecting the alleged produced.

### FORTY-SECOND AFFIRMATIVE DEFENSE

Any claims against Boeing for breach of warranty are barred in whole or in part by Plaintiff's failure to give timely notice to Boeing of the alleged breach of warranty and the failure to provide notice resulted in prejudice to the defendant.

### FORTY-THIRD AFFIRMATIVE DEFENSE

The claims asserted in the Complaint are barred because Boeing was not engaged in the business of a selling a product.

### FORTY-FOURTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint are barred because the product complained of was not in a defective condition unreasonably dangerous to the user or consumer.

### FORTY-FIFTH AFFIRMATIVE DEFENSE

Boeing states that the utility of the products manufactured by Boeing outweigh the danger allegedly involved, and therefore, the Plaintiff's claims are barred as a matter of public policy.

### FORTY-SIXTH AFFIRMATIVE DEFENSE

The claims asserted are barred because the products at issue were substantially changed or modified.

### FORTY-SEVENTH AFFIRMATIVE DEFENSE

The claims asserted are barred because Boeing was required to warn only of those dangers of which it had actual knowledge of or which were reasonably foreseeable and knowable at the time of sale and because Boeing had no such knowledge nor was such knowledge reasonably foreseeable and knowable at the time of sale.

### FORTY-EIGHTH AFFIRMATIVE DEFENSE

The claims asserted are barred because Boeing has performed and fulfilled all promises and obligations arising under all applicable warranties.

### FORTY-NINTH AFFIRMATIVE DEFENSE

The claims asserted are barred to the extent that they resulted from modifications and/or alterations made by other persons or entities.

### FIFTIETH AFFIRMATIVE DEFENSE

The claims asserted are barred because Boeing gave no warranties, express or implied.

### FIFTY-FIRST AFFIRMATIVE DEFENSE

Boeing states that if the Plaintiffs have released, settled, entered into an accord and satisfaction or otherwise compromised the Plaintiffs' claims herein, then said claims are barred in the amount of said settlement by operation of law.

### FIFTY-SECOND AFFIRMATIVE DEFENSE

Boeing states that if the Plaintiffs have heretofore settled or should hereafter settle for any of the alleged injuries and damages with any parties, then Boeing is entitled to a credit in the amount of said settlement.

### FIFTY-THIRD AFFIRMATIVE DEFENSE

The claims asserted are barred because Boeing is not a merchant as alleged and as defined by Article 2, M.G.L. c. 106.

### FIFTY-FOURTH AFFIRMATIVE DEFENSE

The claims asserted based on allegations of express or implied warranty are barred because no sale of goods occurred within the meaning of Article 2, M.G.L. c. 106.

### FIFTY-FIFTH AFFIRMATIVE DEFENSE

The claims asserted are barred because Plaintiffs were not third-party beneficiaries with reference to any alleged warranties, express or implied.

### FIFTY-SIXTH AFFIRMATIVE DEFENSE

The claims asserted are barred because Plaintiff misused the products which allegedly caused him injury and such use was not reasonably foreseeable.

### FIFTY-SEVENTH AFFIRMATIVE DEFENSE

The actions of Boeing were in conformity with the state of the medical, industrial, and scientific arts, so that there was no duty to warn Plaintiffs under the circumstances, or to the extent such a duty arose, Boeing provided adequate warnings, labels and/or instructions concerning any product in question.  If those warnings, labels and/or instructions were not made available or heeded, it is the fault of others and not Boeing.

### FIFTY-EIGHTH AFFIRMATIVE DEFENSE

Boeing did not design and/or manufacture some or all of the products alleged in the Complaint.

### FIFTY-NINTH AFFIRMATIVE DEFENSE

At no time relevant herein were Plaintiffs exposed to any asbestos from products designed or manufactured by Boeing.

### SIXTIETH AFFIRMATIVE DEFENSE

Any and all "market share," "enterprise" and/or "concert of action" theories of liability are inapplicable to Boeing and/or any of its products in question.

### SIXTY-FIRST AFFIRMATIVE DEFENSE

If the Plaintiffs were injured or harmed, which Boeing denies, the negligence of the Plaintiff's employer proximately caused such injuries or harm, and Plaintiffs received worker's compensation benefits from his employer.  Therefore, if Plaintiff is entitled to damages, which Boeing denies, Boeing  is entitled to a setoff in the amount of said worker's compensation benefits.

### SIXTY-SECOND AFFIRMATIVE DEFENSE

Boeing avails itself of and adopts such other defenses raised by any other Defendants as may be applicable.

### SIXTY-THIRD AFFIRMATIVE DEFENSE

Boeing reserves the right to raise additional affirmative defenses after discovery.

**WHEREFORE**, Boeing prays for judgment against Plaintiffs dismissing the Complaint and each and every claim for relief alleged therein, and awarding to Boeing costs, interest, reasonable attorneys' fees and disbursements.

## CROSS-CLAIMS

The Boeing Company hereby adopts the Model Cross-Claim of Defendants.


## JURY DEMAND

The Boeing Company demands a trial by jury on all issues raised in the Complaint and the cross-claims asserted herein.

Respectfully submitted,

The Boeing Company

By its attorneys,

Robert J. Muldoon, Jr., BBO# 359480
Katy E. Koski, BBO# 650613
Sherin and Lodgen LLP
101 Federal Street
Boston, Massachusetts 02110
617.646.2000

Dated: March 5, 2007


*Of Counsel:*

John D. Dillow
Brendan Murphy
Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Tel. (206) 359-8000
JDillow@perkinscoie.com
BMurphy@perkinscoie.com


## CERTIFICATE OF SERVICE

I, Katy E. Koski, attorney for defendant The Boeing Company, hereby certify that I electronically served a copy of the above referenced document on all counsel of record via Lexis Nexis File and Serve and this Court's CM/ECF System on March 5, 2007.

Katy E. Koski

# EXHIBIT D

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

WILLIAM J. HILBERT, JR. AND PAMELA
A. HILBERT,

          Plaintiff,

v.

AEROQUIP, INC., et al.,

          Defendants.

CIVIL ACTION NO. 07-10205-NG

## ANSWER AND CROSS-CLAIM OF
## DEFENDANT BOEING NORTH AMERICAN, INC.

Defendant Boeing North American, Inc. ("BNA") answers the numbered

paragraphs of the Complaint of William J. Hilbert, Jr. and Pamela R. Hilbert ("Plaintiffs") as

follows:

### PARTY PLAINTIFFS

1.      BNA lacks knowledge and information sufficient to form a belief as to the truth of

the allegations set forth in Paragraph 1 of the Complaint, and on that basis denies generally and

specifically each and every allegation set forth therein.

### PARTY DEFENDANTS

2A-2G.  The allegations contained in Paragraphs 2A through 2F of the Complaint are

directed to other defendants and require no response from BNA.  To the extent that the

allegations of Paragraphs 2A through 2F are deemed to include allegations against BNA,

BNA denies generally and specifically each and every allegation.

2H.     BNA admits that it was a corporation organized under the laws of Delaware

until December 1999, when it was merged into the Boeing Company.  BNA denies each and

every remaining allegation contained in Paragraph 2H.

00150896.DOC / 2

2I.-2CC. The allegations contained in Paragraphs 2H through 2CC of the Complaint are directed to other defendants and require no response from BNA. To the extent that the allegations of Paragraphs 2I through 2CC are deemed to include allegations against BNA, BNA denies generally and specifically each and every allegation.

Answering further, BNA objects to Plaintiffs' definition of the terms "defendant," "defendants" and "defendant corporations" as overly broad, vague and unduly burdensome, and beyond the scope of the applicable Rules of Civil Procedure.

3. Paragraph 3 of the Complaint consists solely of conclusions of law to which no response is required; to the extent that a response is required, BNA denies generally and specifically each and every allegation contained in Paragraph 3 of the Complaint.

## FACTUAL BACKGROUND

4. BNA lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 4 of the Complaint, and on that basis denies generally and specifically each and every allegation set forth therein.

5. BNA lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 5 of the Complaint, and on that basis denies generally and specifically each and every allegation set forth therein.

6. To the extent the allegations contained in Paragraph 6 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than BNA, BNA is without knowledge or information sufficient to form a belief as to the truth of the allegations. BNA denies each and every allegation contained in Paragraph 6 that pertains to BNA.

7. To the extent the allegations contained in Paragraph 7 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than BNA, BNA is without

knowledge or information sufficient to form a belief as to the truth of the allegations. BNA denies each and every allegation contained in Paragraph 7 that pertains to BNA.

8.     BNA lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 8 of the Complaint, and on that basis denies generally and specifically each and every allegation set forth therein.

9.     BNA lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 9 of the Complaint, and on that basis denies generally and specifically each and every allegation set forth therein.

## COUNT I
### NEGLIGENCE
### (CONSCIOUS PAIN AND SUFFERING)

10.     BNA incorporates by reference Paragraphs 1 through 9 above.

11.     To the extent the allegations contained in Paragraph 11 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than BNA, BNA is without knowledge or information sufficient to form a belief as to the truth of the allegations. BNA denies each and every allegation contained in Paragraph 11 that pertains to BNA.

12.     To the extent the allegations contained in Paragraph 12 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than BNA, BNA is without knowledge or information sufficient to form a belief as to the truth of the allegations. BNA denies each and every allegation contained in Paragraph 12 that pertains to BNA.

13.     To the extent the allegations contained in Paragraph 13 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than BNA, BNA is without knowledge or information sufficient to form a belief as to the truth of the allegations. BNA denies each and every allegation contained in Paragraph 13 that pertains to BNA.

14.     To the extent the allegations contained in Paragraph 14 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than BNA, BNA is without knowledge or information sufficient to form a belief as to the truth of the allegations.  BNA denies each and every allegation contained in Paragraph 14 that pertains to BNA.

15.     To the extent the allegations contained in Paragraph 15 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than BNA, BNA is without knowledge or information sufficient to form a belief as to the truth of the allegations.  BNA denies each and every allegation contained in Paragraph 15 that pertains to BNA.

16.     To the extent the allegations contained in Paragraph 16 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than BNA, BNA is without knowledge or information sufficient to form a belief as to the truth of the allegations.  BNA denies each and every allegation contained in Paragraph 16 that pertains to BNA.

**COUNT II**
**BREACH OF EXPRESS AND IMPLIED WARRANTIES**

17.     BNA incorporates by reference Paragraphs 1 through 16 above.

18.     Paragraph 18 of the Complaint consists solely of conclusions of law to which no response is required; to the extent that a response is required, BNA denies generally and specifically each and every allegation contained in Paragraph 18 of the Complaint.

19.     To the extent the allegations contained in Paragraph 19 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than BNA, BNA is without knowledge or information sufficient to form a belief as to the truth of the allegations.  BNA denies each and every allegation contained in Paragraph 19 that pertains to BNA.

20.     To the extent the allegations contained in Paragraph 20 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than BNA, BNA is without

4

knowledge or information sufficient to form a belief as to the truth of the allegations. BNA denies each and every allegation contained in Paragraph 20 that pertains to BNA.

21.    BNA lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 21 of the Complaint, and on that basis denies generally and specifically each and every allegation set forth therein.

22.    To the extent the allegations contained in Paragraph 22 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than BNA, BNA is without knowledge or information sufficient to form a belief as to the truth of the allegations. BNA denies each and every allegation contained in Paragraph 22 that pertains to BNA.

23.    To the extent the allegations contained in first sentence of Paragraph 23 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than BNA, BNA is without knowledge or information sufficient to form a belief as to the truth of the allegations. BNA denies each and every allegation contained in the first sentence of Paragraph 23 that pertains to BNA.   BNA lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 23 of the Complaint, and on that basis denies generally and specifically each and every allegation set forth therein.

**COUNT III**
**CONSPIRACY OR CONCERT OF ACTION: METROPOLITAN ONLY**

24.    BNA incorporates by reference Paragraphs 1 through 23 above.

25-30.    The allegations contained in Paragraphs 25 through 30 of the Complaint are directed to other defendants and require no response from BNA. To the extent that the allegations of Paragraphs 25 through 30 are deemed to include allegations against BNA, BNA denies generally and specifically each and every allegation.

## COUNT IV
## UNDERTAKING OF SPECIAL DUTY: METROPOLITAN ONLY

31.     BNA incorporates by reference Paragraphs 1 through 30 above.

32-36.  The allegations contained in Paragraphs 32 through 36 of the Complaint are directed to other defendants and require no response from BNA  To the extent that the allegations of Paragraphs 32 through 36 are deemed to include allegations against BNA, BNA denies generally and specifically each and every allegation.

## COUNT V
## LOSS OF CONSORTIUM

37.     BNA incorporates by reference Paragraphs 1 through 36 above.

38.     BNA lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 38 of the Complaint, and on that basis denies generally and specifically each and every allegation set forth therein.

39.     To the extent the allegations contained in Paragraph 39 of the Complaint refer to the knowledge, conduct or actions of persons, entities or defendants other than BNA, BNA is without knowledge or information sufficient to form a belief as to the truth of the allegations.  BNA denies each and every allegation contained in Paragraph 39 that pertains to BNA.

### BNA'S AFFIRMATIVE DEFENSES

#### FIRST AFFIRMATIVE DEFENSE

BNA denies each and every material allegation of the Complaint.

#### SECOND AFFIRMATIVE DEFENSE

BNA denies that the Plaintiffs are entitled to the damages claimed or to the relief demanded.

#### THIRD AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

6

### FOURTH AFFIRMATIVE DEFENSE

The Complaint must be dismissed based upon the doctrine of *forum non conveniens*.

### FIFTH AFFIRMATIVE DEFENSE

The Complaint should be dismissed for improper venue.

### SIXTH AFFIRMATIVE DEFENSE

The Complaint should be dismissed for insufficiency of service of process.

### SEVENTH AFFIRMATIVE DEFENSE

The Complaint should be dismissed for insufficiency of process.

### EIGHTH AFFIRMATIVE DEFENSE

The claims asserted are barred by the applicable statutes of limitation.

### NINTH AFFIRMATIVE DEFENSE

The claims asserted are barred by any and all statutes of repose, including but not limited to M.G.L. c. 260 § 2B and General Aviation Revitalization Act of 1994, 49 U.S.C. 40101.

### TENTH AFFIRMATIVE DEFENSE

The claims asserted are barred by the doctrine of laches.

### ELEVENTH AFFIRMATIVE DEFENSE

The claims asserted are barred or mitigated by Plaintiffs' contributory negligence.

### TWELFTH AFFIRMATIVE DEFENSE

The Plaintiffs have failed to join a party or parties necessary for a just adjudication of this matter.

### THIRTEENTH AFFIRMATIVE DEFENSE

The Plaintiffs have failed to mitigate damages and the Plaintiffs are, therefore, barred from recovery.

### FOURTEENTH AFFIRMATIVE DEFENSE

If the Plaintiff, William J. Hilbert, was a user of tobacco products, such use contributed to any lung disease from which the Plaintiff suffered and further, BNA states that the tobacco industry placed warnings on its products notifying the public of potential hazards associated with its use, which hazards, the Plaintiff knew or should have known, may have adversely affected the Plaintiff's health.

00150896.DOC / 2

### FIFTEENTH AFFIRMATIVE DEFENSE

The claims asserted are barred because Plaintiff voluntarily assumed the risk of injury after the alleged hazard became known to him.

### SIXTEENTH AFFIRMATIVE DEFENSE

Any injuries, losses or damages were caused by acts of others over whom BNA had no control, and for whose acts BNA is not legally answerable.

### SEVENTEENTH AFFIRMATIVE DEFENSE

If Plaintiff was injured or harmed as alleged, which BNA denies, such injuries or harm were caused by the intervening and/or superseding acts of others over whom BNA has no control, and for whose acts BNA is not legally answerable.

### EIGHTEENTH AFFIRMATIVE DEFENSE

The Complaint fails to state a claim for which exemplary or punitive damages may be granted.

### NINETEENTH AFFIRMATIVE DEFENSE

Punitive damages cannot be awarded against BNA for any of the alleged actions or omissions of and of BNA's alleged predecessors because there is not a sufficient degree of identity between BNA and any of its alleged predecessors to justify such an award.

### TWENTIETH AFFIRMATIVE DEFENSE

At all times relevant to the alleged conditions, conduct or injuries, Plaintiffs had or should have had notice and knowledge of the risks and dangers, if any, associated with such conditions, conduct and injuries because any such risk or danger was open, obvious and apparent to Plaintiffs, they appreciated the danger or risk, and they voluntarily assumed any such danger or risk.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

BNA reserves the right to seek contribution and/or indemnity from those parties not joined in this action as a result of bankruptcy.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

The claim of loss of consortium as set forth in the Complaint is a derivative action and in the event the Plaintiffs are barred from recovery against BNA on their underlying theories of liability, the Plaintiffs cannot recovery any damages for loss of consortium against BNA.

8

### TWENTY-THIRD AFFIRMATIVE DEFENSE

If Mr. Hilbert has applied for and received worker's compensation benefits, then this Complaint is barred by the provisions of any and all applicable workers compensation acts and statutes.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

BNA did not supervise or control any work done by any contractors or subcontractors.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

BNA denies the applicability of the doctrine of strict liability in tort to this litigation.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

The claims asserted are barred by reason of estoppel and waiver.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

If Plaintiff was injured by exposure to asbestos or asbestos-containing products, which BNA denies, then such injuries were or may have resulted from exposure to products of one or more other manufacturers not parties to this action.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred based upon the learned intermediary doctrine.

### TWENTY-NINTH AFFIRMATIVE DEFENSE

The plans or designs, method or technique of manufacturing, assembling, testing, and labeling any product alleged in the Complaint to have caused all or part of Plaintiffs' alleged damages conformed with the state of the art at the time any such product was designed, manufactured and/or sold by BNA.

### THIRTIETH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint are barred because they have been released and/or forfeited.

### THIRTY-FIRST AFFIRMATIVE DEFENSE

BNA states that the injuries or damages alleged were caused in whole or in part by the violation by the Plaintiff or the Plaintiffs' servants or agents, of the various statutes, ordinances and regulations governing the conduct of the parties at the time said injuries or damages was sustained.

### THIRTY-SECOND AFFIRMATIVE DEFENSE

The claims asserted are barred because any exposure of the Plaintiff to products allegedly sold, distributed or installed by BNA, which exposure BNA denies, was so minimal as to be

insufficient to establish a reasonable degree of probability that the exposure caused his claimed injuries or illness.

### THIRTY-THIRD AFFIRMATIVE DEFENSE

BNA did not act individually or engage in concert of action with any one or more of the Defendants herein for the purpose of accomplishing any unlawful purpose or to accomplish some purpose, not in and of itself unlawful, by unlawful means, nor did Plaintiffs suffer any injury as a result of the actions or inactions of BNA . Accordingly, Plaintiffs cannot recover against BNA under a theory of civil conspiracy.

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

The claims asserted are barred because at all times relevant hereto, the state of medical and scientific knowledge and the state of the art or the design and manufacture of asbestos-containing materials was such that BNA neither knew nor should have known that such products presented a significant risk of harm.

### THIRTY-FIFTH AFFIRMATIVE DEFENSE

BNA denies that there was any defect or negligent mining, processing, manufacture, design, testing, investigation, fashioning, packaging, distributing, delivery and/or sale, in any asbestos product or material referred to in the Plaintiff's Complaint, but if there was any defect or negligence as alleged, than BNA is not liable as it justifiably relied upon inspection by others in the regular course of trade and business.

### THIRTY-SIXTH AFFIRMATIVE DEFENSE

BNA did not mine, process, manufacture, design, test, fashion, package, distribute, deliver or sell any products which were the proximate cause of the alleged claimed injuries.

### THIRTY-SEVENTH AFFIRMATIVE DEFENSE

The Plaintiffs were not a purchaser within the meaning of M.G.L. c. 231, §85J, nor did BNA make any sale to THEM, nor did it make any sale by fraud, deceit or misrepresentation

### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

BNA breached no warranties, either express or implied, in connection with the sale or distribution of any products which allegedly harmed Plaintiffs.

### THIRTY-NINTH AFFIRMATIVE DEFENSE

BNA states that if BNA's agents or servants made any express warranties, which BNA specifically denies, then the agents or servants did so without authority, express or implied.

### FORTIETH AFFIRMATIVE DEFENSE

BNA states that if BNA, its agent or servants made any express warranties, which BNA specifically denies, then the Plaintiff did not rely on the express warranties and further, there was no such reliance by any person or entity authorized to represent the Plaintiff.

### FORTY-FIRST AFFIRMATIVE DEFENSE

BNA denies it knew of the particular purpose for which the alleged product was intended to be used by the Plaintiff and further denies that the Plaintiff relied on BNA's, its agents', servants' or employees' skill or judgment in selecting the alleged produced.

### FORTY-SECOND AFFIRMATIVE DEFENSE

Any claims against BNA for breach of warranty are barred in whole or in part by Plaintiff's failure to give timely notice to BNA of the alleged breach of warranty and the failure to provide notice resulted in prejudice to the defendant.

### FORTY-THIRD AFFIRMATIVE DEFENSE

The claims asserted in the Complaint are barred because BNA was not engaged in the business of a selling a product.

### FORTY-FOURTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint are barred because the product complained of was not in a defective condition unreasonably dangerous to the user or consumer.

### FORTY-FIFTH AFFIRMATIVE DEFENSE

BNA states that the utility of the products manufactured by BNA outweigh the danger allegedly involved, and therefore, the Plaintiff's claims are barred as a matter of public policy.

### FORTY-SIXTH AFFIRMATIVE DEFENSE

The claims asserted are barred because the products at issue were substantially changed or modified.

### FORTY-SEVENTH AFFIRMATIVE DEFENSE

The claims asserted are barred because BNA was required to warn only of those dangers of which it had actual knowledge of or which were reasonably foreseeable and knowable at the time of sale and because BNA had no such knowledge nor was such knowledge reasonably foreseeable and knowable at the time of sale.

### FORTY-EIGHTH AFFIRMATIVE DEFENSE

The claims asserted are barred because BNA has performed and fulfilled all promises and obligations arising under all applicable warranties.

00150896.DOC / 2

### FORTY-NINTH AFFIRMATIVE DEFENSE

The claims asserted are barred to the extent that they resulted from modifications and/or alterations made by other persons or entities.

### FIFTIETH AFFIRMATIVE DEFENSE

The claims asserted are barred because BNA gave no warranties, express or implied.

### FIFTY-FIRST AFFIRMATIVE DEFENSE

BNA states that if the Plaintiffs have released, settled, entered into an accord and satisfaction or otherwise compromised the Plaintiffs' claims herein, then said claims are barred in the amount of said settlement by operation of law.

### FIFTY-SECOND AFFIRMATIVE DEFENSE

BNA states that if the Plaintiffs have heretofore settled or should hereafter settle for any of the alleged injuries and damages with any parties, then BNA is entitled to a credit in the amount of said settlement.

### FIFTY-THIRD AFFIRMATIVE DEFENSE

The claims asserted are barred because BNA is not a merchant as alleged and as defined by Article 2, M.G.L. c. 106.

### FIFTY-FOURTH AFFIRMATIVE DEFENSE

The claims asserted based on allegations of express or implied warranty are barred because no sale of goods occurred within the meaning of Article 2, M.G.L. c. 106.

### FIFTY-FIFTH AFFIRMATIVE DEFENSE

The claims asserted are barred because Plaintiffs were not third-party beneficiaries with reference to any alleged warranties, express or implied.

### FIFTY-SIXTH AFFIRMATIVE DEFENSE

The claims asserted are barred because Plaintiff misused the products which allegedly caused him injury and such use was not reasonably foreseeable.

### FIFTY-SEVENTH AFFIRMATIVE DEFENSE

The actions of BNA were in conformity with the state of the medical, industrial, and scientific arts, so that there was no duty to warn Plaintiffs under the circumstances, or to the extent such a duty arose, BNA provided adequate warnings, labels and/or instructions concerning any product in question. If those warnings, labels and/or instructions were not made available or heeded, it is the fault of others and not BNA.

### FIFTY-EIGHTH AFFIRMATIVE DEFENSE

BNA did not design and/or manufacture some or all of the products alleged in the Complaint.

### FIFTY-NINTH AFFIRMATIVE DEFENSE

At no time relevant herein were Plaintiffs exposed to any asbestos from products designed or manufactured by BNA

### SIXTIETH AFFIRMATIVE DEFENSE

Any and all "market share," "enterprise" and/or "concert of action" theories of liability are inapplicable to BNA and/or any of its products in question.

### SIXTY-FIRST AFFIRMATIVE DEFENSE

If the Plaintiffs were injured or harmed, which BNA denies, the negligence of the Plaintiff's employer proximately caused such injuries or harm, and Plaintiffs received worker's compensation benefits from his employer.  Therefore, if Plaintiff is entitled to damages, which BNA denies, BNA is entitled to a setoff in the amount of said worker's compensation benefits.

### SIXTY-SECOND AFFIRMATIVE DEFENSE

BNA avails itself of and adopts such other defenses raised by any other Defendants as may be applicable.

### SIXTY-THIRD AFFIRMATIVE DEFENSE

BNA reserves the right to raise additional affirmative defenses after discovery.

## CROSS-CLAIM

Boeing North American, Inc. hereby adopts the Model Cross-Claim of Defendants.

00150896.DOC / 2

## JURY DEMAND

Boeing North American, Inc. demands a trial by jury on all issues raised in the Complaint and the cross-claims adopted herein.

Respectfully submitted,

Boeing North American, Inc.

By its attorneys,

Robert J. Muldoon, Jr., BBO# 359480
Katy E. Koski, BBO# 650613
Sherin and Lodgen LLP
101 Federal Street
Boston, Massachusetts 02110
617.646.2000

Dated: March 5, 2007
*Of Counsel:*

John D. Dillow
Brendan Murphy
Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Tel. (206) 359-8000
JDillow@perkinscoie.com
BMurphy@perkinscoie.com

## CERTIFICATE OF SERVICE

I, Katy E. Koski, attorney for defendant Boeing North American, Inc., hereby certify that I electronically served a copy of the above referenced document on all counsel of record via Lexis Nexis File and Serve and this Court's CM/ECF System on March 5, 2007.

Katy E. Koski

14

00150896.DOC / 2

# EXHIBIT E



16233615

Sep 7 2007
4:54PM

# **List of Hilbert Aircraft**

1. S2F-1
   S2F-2
   S2F-3
   - Built by Grumman
   - Brakes: Bendix

2. C1A Trader
   - Built by Grumman
   - Brakes: Bendix

3. RA-3B
   - Built by McDonnell Douglas
   - Brakes: Goodyear

4. A-4
   TA-4F
   - Built by McDonnell Douglass
   - Brakes: (for TA-4F) Goodyear

5. F-4
   F-4B
   F-4J
   - Built by Douglas Aircraft Corp.
   - Brakes: General Tire & Rubber

6. C-117
   - Built by McDonnell Douglas
   - Brakes: Goodyear

7. C-131 (D)
   - Built by Convair
   - Brakes: Goodyear

8. T-28
   - Built by North American Aviation
   - Brakes: Goodyear

9. SNB
   - Built by Beech Aircraft
   - Brakes: Bendix/Goodyear

10. SNJ
    - Built by North American Aviation
    - Brakes: Hayes/Goodrich

\* Please note that this list is not necessarily all-inclusive.  During the deposition more manufacturers of aircraft and/or aircraft component parts may be identified.

*Of Counsel:*

Robert E. Boone, III
James Pettis
Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386
Tel. (310) 576-2000
Fax (310) 576-2200
reboone@bryancave.com
james.pettis@bryancave.com

*Attorneys for Defendant McDonnell Douglas
Corporation*

Brendan Murphy
Sara Baynard-Cooke
Perkin Coie LLP
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Tel. (206) 359-8000
Fax (206) 359-9000
BMurphy@perkinscoie.com
SBaynardCooke@perkinscoie.com

*Attorneys for Defendants The Boeing Company
and Boeing North American, Inc.*

## CERTIFICATE OF SERVICE

I, Robert J. Muldoon, attorney for defendants McDonnell Douglas Corporation, the Boeing Company and North American Aviation, Inc., hereby certify that I electronically served a copy of the above referenced document on all counsel of record via Lexis Nexis File and Serve on October 5, 2007.

Robert J. Muldoon

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 17 2007

FILED
CLERK'S OFFICE

# EXHIBIT B

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM J. HILBERT, JR. AND PAMELA A. HILBERT, <br><br>          Plaintiff, <br> v. <br><br> MCDONNELL DOUGLAS CORPORATION et al., <br><br>          Defendants. | Case No.  07-11900-NG <br><br> (Superior Court, Department of the Trial Court, Middlesex County, Massachusetts, Civil Action No. 06-4550) |

**DEFENDANTS McDONNELL DOUGLAS CORPORATION'S, THE BOEING COMPANY'S AND BOEING NORTH AMERICAN, INC'S OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND**

**Table of Contents**

| | | Page |
|---|---|---:|
| I. | SUMMARY OF ARGUMENT | 1 |
| II. | FACTUAL AND PROCEDURAL BACKGROUND | 3 |
| | A. Plaintiffs' Claims | 3 |
| | B. Defendants Built A-4, F-4 and SNJ Military Aircraft Pursuant to Contracts With and Under the Direction and Control of Federal Officers | 4 |
| III. | ARGUMENT | 7 |
| | A. The Remand of Grumman's Initial Removal has no Preclusive Effect on Defendants' Right to Remove on Independent Grounds | 7 |
| | 1. Res Judicata Is Inapplicable In The Same Case | 7 |
| | 2. Prior Remand Does Not Have Preclusive Effect On Defendants' Removal Based On New and Independent Grounds | 8 |
| | B. Defendants' Removal Was Timely | 9 |
| | C. "Federal Officer" Removal Jurisdiction is Appropriate | 13 |
| | 1. Defendants Acted Under the Direction of Federal Officers | 13 |
| | 2. A Causal Nexus Exists Between Defendants' Action Under Color of Federal Office and Plaintiffs' Claims | 18 |
| | 3. Defendants Have a "Colorable Federal Defense," i.e., Government Contractor Defense and Derivative Sovereign Immunity | 19 |
| | D. Plaintiffs' "Failure to Warn" Arguments Lack Merit | 24 |
| | E. Plaintiffs Are Not Entitled to Fees and Costs | 28 |
| IV. | CONCLUSION | 29 |

## Table of Authorities

Page

### Cases

Akin v. Big Three Industries,
851 F. Supp. 819 (E.D. Tex. 1994) ................................................................. 18, 20

Blackman v. Asbestos Defendants (BHC),
1997 WL 703773 at 2 (N.D. Cal. November 3, 1997) ................................................ 17

Goldman v. Radioshack Corp.,
2003 U.S. Dist. LEXIS 7611 (E.D. Pa. 2003) ........................................................ 28

Good v. Armstrong World Industries, Inc.,
914 F. Supp. 1125 (E.D. Pa. 1996) ................................................................. 15

Growth Horizons, Inc. v. Delaware County, Pa.,
983 F.2d 1277 (3d Cir. 1993) ........................................................................ 28

Harris v.Bankers Life and Casualty Co.,
425 F.3d 689 (9th Cir. 2005) ........................................................................ 13

Hawaii Federal Asbestos Cases,
960 F.2d 806 (9th Cir. 1992) .................................................................... 26, 27

In re Aircraft Crash Litigation Frederick, Maryland,
752 F. Supp. 1326 (S.D. Ohio 1990) ................................................................. 16

International Primate Protection League v. Administrators of Tulane Educational Fund,
500 U.S. 72 (1991) .................................................................................. 15

Kleemann v. McDonnell Douglas Corp.,
890 F.2d 698 (4th Cir. 1989),
110 S. Ct. 2219 (1990) .............................................................................. 22

Koutsoubos v. Boeing Vertol,
553 F. Supp. 340 (E.D. Pa. 1982),
755 F.2d 352 (3d Cir.),
474 U.S. 821 (1985) ............................................................................ 21, 23

Maguire v. Hughes Aircraft Corp.,
912 F.2d 67 (3rd Cir. 1990) ..................................................................... 22, 23

Martin v. Franklin Capital Corp.,
546 U.S. 132 (2005) ................................................................................. 28

Mesa v. California,
489 U.S. 121,
109 S. Ct. 959,
103 L.Ed.2d 99 (1989) ...................................................................... 10, 18, 20

Nicholson v. United Technologies Corp.,
697 F.Supp. 598 (D.Conn. 1988) ................................................................ 25, 26

Pack v. AC&S,
    838 F. Supp. 1099(D. Md. 1993) ................................................................................ 14, 15, 20

Ramey v. Martin-Baker Aircraft Co.,
    874 F.2d 946 (4th Cir. 1989) ................................................................................................ 21

Smith v. Xerox Corp.,
    866 F.2d 135 (5th Cir. 1989) ................................................................................................ 25

State of Nebraska ex rel. Department of Social Services v. Benston,
    146 F.3d 676, 678 (9th Cir. 1998) ....................................................................................... 15

Sundstrom v. McDonnell Douglas Corp.,
    816 F. Supp. 577 (N.D. Cal. 1993) ...................................................................................... 22

U.S. v. Aerodex,
    469 F.2d 1003 (5th Cir. 1972) .............................................................................................. 18

U.S. v. Bornstein,
    423 U.S. 303,
    96 S.Ct. 523,
    46 L.Ed.2d 514 (1976) .......................................................................................................... 18

Wasserman v. Potamkin Toyota Inc.,
    78 Fair Empl. Prac. Cas (BNA) 446 (E.D. Pa. 1998)........................................................... 28

Winters v. Diamond Shamrock Chemical Co.,
    149 F.3d 387 (5th Cir. 1998) ................................................................................................ 13

**Statutes**

28 U.S.C. § 1442(a)(1).......................................................................................................... passim

28 U.S.C. § 1446(b) ......................................................................................................... 10, 13

28 U.S.C. § 2680(a) .................................................................................................................. 20

31 U.S.C. § 3729(a) .................................................................................................................. 18

## I.    **SUMMARY OF ARGUMENT**

The Court should deny Plaintiffs' Motion to Remand because there exists "federal officer" removal jurisdiction over this action pursuant to 28 U.S.C. § 1442(a)(1).  Plaintiffs' assertions that the instant removal by McDonnell Douglas Corporation ("MDC"), The Boeing Company ("Boeing") and Boeing North American, Inc. ("BNA") (collectively "Defendants") is untimely and barred by the doctrine of *res judicata* have no merit whatsoever.  Defendants promptly and properly removed the action once Plaintiffs identified which of Defendants' aircraft (and components thereof) are the alleged sources of Plaintiff William J. Hilbert's asbestos exposure, and have made the requisite showing that they have the right to have this case adjudicated in federal court.

Simply put, this Court's prior remand of the action based on Northrup-Grumman's inability to sustain its initial, solo removal attempt, before Plaintiff identified any aircraft, does not constitute *res judicata* as to the instant removal in general or, more importantly, the grounds for Defendants' removal in particular. *Res judicata* is not applicable because the Court's prior remand decision was not a final decision of the merits of Defendants' removal – because no such issue was before the Court – and that decision was not issued in a prior lawsuit involving the same parties.  Moreover, a plaintiff cannot use *res judicata* offensively to bar re-litigation of jurisdictional issues that are not subject to appellate review.

Defendants timely removed this action upon first notice from Plaintiffs that they were alleging claims based on Mr. Hilbert's alleged exposure to asbestos in connection with government-furnished components that were installed in military aircraft built by MDC[1/] and

---

[1/]  Douglas Aircraft Company ("DAC"), a predecessor company to MDC, actually built A-4 and F-4 aircraft.  DAC merged with McDonnell Aircraft Company in 1967 to form McDonnell Douglas Corporation (Douglas Aircraft Company and McDonnell Douglas Corporation are collectively referred to as "MDC").

BNA,[2/] including the A-4, F-4 and SNJ aircraft (collectively the "Aircraft"), which components Defendants were required by the Government to install on those planes. Not until September 7, 2007 did Plaintiffs reveal for the first time that they were alleging claims against Defendants based on the Aircraft and disclose sufficient information regarding those claims to put Defendants on notice of grounds for "federal officer" removal.

Plaintiffs' contention that Defendants were on notice earlier of their ability to remove the case based on Plaintiffs' generic Complaint and Disclosure Form -- *wherein no aircraft were identified* -- is false and contrary to controlling law. As articulated in Durham v. Lockheed Martin Corp., 445 F.3d 1247 (9th Cir. 2006), federal officer removal is not triggered until plaintiff discloses sufficient information from which it is apparent that a valid basis for federal officer removal exists -- that is, enough detailed facts to support each of the substantive requirements for federal officer removal. Plaintiffs' prior disclosure failed to identify any particular work Mr. Hilbert performed on any particular aircraft or component thereof, let alone Defendants' aircraft, and thus, under Durham, did not trigger Defendants' removal clock.

Although Plaintiffs apparently do not challenge the actual grounds for Defendants' removal, "federal officer" removal exists here because (1) Defendants are "persons" within the meaning of Section 1442(a)(1); (2) Defendants acted under the direction of federal officers when they included allegedly asbestos-containing components in the Aircraft; (3) there is a causal connection between Plaintiffs' claims and Defendants' Government-ordered conduct; and (4) Defendants have asserted colorable federal defenses to Plaintiffs' claims.

The Government was intimately involved in and exercised extensive control over procurement, design, manufacture, assembly, testing and modification of the Aircraft. In fact,

---

[2/] BNA did not manufacture the SNJ aircraft. BNA's predecessor, North American Aviation, manufactured the SNJ pursuant to government contracts.

the Government required Defendants to install certain components that allegedly contained asbestos, such as brakes and engines, on the Aircraft. Such equipment was designated by the Navy as "Government Furnished Aircraft Equipment-Contractor Installed" ("GFAE-CI") in procurement contracts,[3/] which expressly mandated that Defendants install such equipment. The Government selected, reviewed and approved design of, and separately procured, GFAE-CI components directly from original equipment manufacturers ("OEMs"), not Defendants. Defendants had no choice but to install GFAE-CI components on the Aircraft. In addition, the Government required Defendants to comply with numerous military specifications ("MIL specs"), promulgated by the Government, many of which mandated use of asbestos.

As "federal officer" jurisdiction is proper, Plaintiffs' Motion should be denied.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Plaintiffs' Claims

Plaintiffs' Complaint alleges broad product liability claims sounding in negligence and breach of warranty against Defendants for their alleged manufacture, fabrication, testing, inspection, production, marketing, packaging, contracting, installation, distribution and sale of the Aircraft by merely using allegedly asbestos-containing components in the planes. (Pettis Aff. ¶ 2; Compl. ¶¶ 5-9, 11-16, 18-23.) Particularly, in Paragraph 14(j), Plaintiffs allege that Defendants "breached their duties" by "generally using unreasonable, careless, and negligent conduct in the manufacture, fabrication, supply, distribution, sale, installation, and/or use" of the Aircraft. (Id.)

---

[3/] Government Furnished Aircraft Equipment ("GFAE") component parts can be of two types: (1) GFAE-CI (Contractor installed GFAE) and (2) GFAE-GI (Government installed GFAE). Defendants were required to install GFAE-CI equipment on aircraft pursuant to its procurement contracts with the Government. ( See Decl. of William W. Smith ¶¶ 11, 32-43; Brezenoff Decl. Ex. A. at 27-28.) GFAE-CI components are specified in Aircraft Detail Specifications, which are incorporated by reference into each production contract.

On September 7, 2007, Defendants received their first notice that Plaintiffs allege – as stated for the first time in Plaintiffs' List of Hilbert Aircraft ("Aircraft List") – that Mr. Hilbert's alleged disease was caused by exposure to asbestos in the A-4, F-4 and SNJ military aircraft designed and built by Defendants for the Navy pursuant to military equipment procurement contracts with the Government.  (See Pettis Aff. ¶¶ 3 & 4; Aircraft List, Ex. 1.)  Mr. Hilbert confirmed that he is claiming his disease was caused by exposure to asbestos from the Aircraft during his deposition.  (See Pettis Aff. ¶¶ 5, 6; Exs. 2 & 3.)  Specifically, Mr. Hilbert claims that he was exposed to asbestos-containing brakes and asbestos-containing gaskets in engines.  (See id.)  Based on this new information, Defendants promptly removed the action to this Court on October 5, 2007.  (Pettis Aff. ¶ 5.)

At no time before September 7 did Plaintiffs identify any of Defendants' aircraft or component parts thereof as a source of Mr. Hilbert's alleged asbestos exposure and a basis for their claims.  Before such time, Plaintiffs generally contended only that Mr. Hilbert was exposed to asbestos while working on aircraft in the Navy.  (See Pettis Aff. ¶ 2-5; Compl. ¶ 4; Ex. 1.)  Plaintiffs actually asserted that Defendants were being sued for components "for use in private aircraft," and did not identify any particular model aircraft, or claim that Mr. Hilbert worked on any particular aircraft built or supplied by Defendants at any time. (See Pettis Aff. ¶ 4; Ex. 4.)

**B.    Defendants Built A-4, F-4 and SNJ Military Aircraft Pursuant to Contracts With and Under the Direction and Control of Federal Officers**

Defendants built the Aircraft pursuant to military procurement contracts with the Navy and in compliance with reasonably precise design specifications, as well as detailed design drawings, which were reviewed and approved by the Navy.  Perhaps most important, many component parts used in the Aircraft, including the components that Mr. Hilbert alleges contained the asbestos he was exposed to, were GFAE-CI.  (See Brezenoff Decl. Ex. A. at 27-28;

Smith Decl. ¶¶ 11, 32-43; Volkening Decl. ¶¶ 19-22.)  GFAE is a government procurement term and refers to a component that is acquired by the Government and furnished to the contractor for performance of the contract.  (See Gionta Decl. ¶ 3 (explaining the meaning of Government Furnished Equipment ("GFE")).)  The Government has exclusive control over the specification of components that are designated GFAE under a government contract.  (See id. ¶ 4 (discussing GFE).)

Federal officers, not Defendants, selected and approved the design of GFAE-CI components used in the Aircraft, including the use of any asbestos in those components.  For instance, Defendants did not design, make or sell the brakes or engines used on the Aircraft. Rather, the brakes and engines were GFAE-CI components procured by the Government from other manufacturers.  (See Brezenoff Decl Ex. A at 27-28; Lombardi Decl. Ex. A at 210, 601, 876, 1122; Smith Decl. ¶¶ 11, 32-61, 77; Volkening Decl. ¶¶ 19-22.)  Federal officers independently procured these GFAE-CI components from their OEMs and supplied the GFAE-CI components to Defendants for installation.  Defendants had no choice but to install these components, including any asbestos contained in them, on the Aircraft.  Defendants did not select, design or make the brakes or any asbestos-containing components of the engines.  (Smith Decl. ¶¶ 11, 32-61, 77; Volkening Decl. ¶¶ 19-22.)

Defendants were not allowed to change the design of GFAE-CI components, or issue warnings about asbestos.  (Smith Decl. ¶¶ 37, 72; Volkening Decl. ¶¶ 17-19.)  The Government and OEMs controlled those designs and the extent to which any warnings were issued, including maintenance manuals for such components.  Neither the Government nor OEMs informed Defendants about asbestos that may have been used in GFAE-CI, such as brakes or engines. (Smith Decl. ¶¶ 63, 71.)  Further, the Government knew about the purported hazards of asbestos

in the 1940s.  (Alvin F. Meyer, Jr. Affidavit, Ex. 75.)  Defendants were not aware of any such alleged hazards until the Government-issued OSHA regulations regarding asbestos in 1972. (Chalk Decl. ¶¶ 6-7, Ex. 74.)

The Navy also required Defendants to comply with numerous Government-authored military specifications ("MIL specs").  These MIL specs were developed by the Government over years of procuring military aircraft and controlled the design and construction of various components.  Some of these MIL specs mandated use of asbestos in certain components.  (Smith Decl. ¶¶ 34-37, 65-70; Volkening Decl. ¶¶ 15-17.)  By requiring Defendants to comply with these MIL specs, the Government compelled Defendants to install such asbestos components on the Aircraft.  Moreover, Navy personnel reviewed and approved detailed design drawings that incorporated such MIL specs, and ensured that Defendants complied with those specifications.

Moreover, as detailed in the declarations of MDC's engineers William W. Smith and Edwin F. Volkening, federal officers were intimately involved in design, development, testing and production of the Aircraft and their components, and closely monitored MDC's performance at all times and required MDC to construct the F-4 and A-4 in accordance with applicable and approved specifications and drawings incorporated into the contracts.  During all phases of the projects, the military had stationed at various facilities a resident contracting officer, along with a full staff of scientists, engineers, procurement officers, technicians and security personnel. Military personnel had, and exercised, complete access to MDC's facilities on a daily basis to oversee design, development and production of the aircraft to ensure that designs complied with design specifications, contractual requirements and all applicable Government specifications. Federal officers controlled any and all design changes to the aircraft, and in fact directed many design changes throughout production.  Even design modifications proposed by MDC occurred

only after a proposed change had been submitted to, and evaluated and approved by, federal officers. All Aircraft built pursuant to these contracts were subject to inspection, testing and approval by the Navy. The Navy performed extensive flight tests of the Aircraft and their components prior to commission to ensure complete conformity with design specifications. (Smith Decl. ¶¶ 5-73; Volkening Decl. ¶¶ 6-22.)

## III.   ARGUMENT

### A.   The Remand of Grumman's Initial Removal has no Preclusive Effect on Defendants' Right to Remove on Independent Grounds

Plaintiffs erroneously argue that Defendants are precluded from removing the case pursuant to 28 U.S.C. § 1442(a)(1) based upon the doctrine of *res judicata*. Plaintiffs' position must be rejected because *res judicata* does not apply to a prior decision within the same action, and does not apply in the removal/remand context.

#### 1.   Res Judicata Is Inapplicable In The Same Case

Plaintiffs' invocation of the doctrine of *res judicata* is misplaced. "Before res judicata will apply, three factors must be present: "(1) a final judgment on the merits in the earlier action; (2) an identity of the cause of action in both the earlier and later suits; and (3) an identity of parties or privies in the two suits."" Maher v. GSI Lumonics, Inc., 433 F.3d 123, 127 (1st Cir. 2005) (*quoting* Kale v. Combined Ins. Co. of Am., 924 F.2d 1161, 1165 (1st Cir. 1991)). Thus, *res judicata* relates to the preclusive effect of decisions issued in prior lawsuits between the parties – either as to entire claims or as to particular issues raised and decided in that prior action.

Here, Plaintiffs seek to invoke the doctrine to prevent Defendants from asserting a particular basis for removal (and defense to the claims asserted) because of a prior ruling as to another defendant in the same action. This latter principle is more appropriately referred to as the "law of the case" doctrine and does not serve to preclude Defendants from asserting removal

pursuant 28 U.S.C. § 1442(a)(1).  In re Justice Oaks II, Ltd., 898 F.2d 1544, 1549 n.2 (11th Cir. 1990) (holding that a bankruptcy court's order authorizing settlement did not constitute a final decision on the merits, and therefore did not have any preclusive effect on future litigation).

Moreover, a plaintiff cannot use collateral estoppel/*res judicata* or the law of the case doctrine offensively to bar re-litigation of jurisdictional issues that are not subject to appellate review.  Winters v. Diamond Shamrock Chemical Co., 149 F.3d 387, 395 (5th Cir. 1998); see also Benson v. SI Handling Systems, Inc., 188 F.3d 780, 783 (7th Cir. 1999) (remand order that was law of case can be revisited if subsequent facts develop to support removability).  Pursuant to 28 U.S.C. § 1447(d), a remand order based upon federal officer removal is not subject to appellate review.  Thus, in Winters, the Fifth Circuit upheld the district court's decision to reject plaintiff's attempt to offensively preclude consideration of a second removal based upon the federal officer removal statute and further upheld the district court's determination that such a basis for removal was sound.  Id. at 401.

> 2.  Prior Remand Does Not Have Preclusive Effect On Defendants' Removal Based On New and Independent Grounds

Plaintiffs assert that Defendants are precluded from removing the case a second time because the Court has already remanded a case (removed by another defendant) based upon the same legal theory, *i.e.* 28 U.S.C. § 1442(a)(1).  This assertion is contrary to the law.  "[A] remand order that expressly addresses the theory of federal jurisdiction does not have res judicata effect on subsequent removals based on the same theory, provided that the subsequent removal petitions allege a different factual basis for seeking removal.  If the defendant raises a new factual basis, the new factual basis is not deemed adjudicated with the remand order and, therefore, is not barred by res judicata."  S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 493 (5th Cir. 1996) (*citing with approval* O'Bryan v. Chandler, 496 F.2d 403, 410 (10th Cir. 1974)

and <u>One Sylvan Road North Assocs. V. Lark Int'l Ltd.</u>, 889 F. Supp. 60, 62-63 (D. Conn. 1995)). In <u>Infax</u>, the Fifth Circuit reaffirmed prior case law which holds that 28 U.S.C. 1446(b) allows the filing of successive removals based on newly developed facts and further upheld removal that was based upon new information learned during plaintiff's deposition. <u>Id.</u> at 494.

Thus, Plaintiffs' identification of specific aircraft manufactured by Defendants in the Aircraft List and confirmed at deposition (in addition to his production of US Navy manuals which he used in performing maintenance on these aircraft), and not the bare allegations included in Plaintiffs' Complaint and Disclosure Form, serve as the factual basis for the removal in this instance. <u>See, e.g.</u>, <u>Snowdon v. A.W. Chesterton</u>, 366 F. Supp.2d 157, 162 (D. Maine 2005) (rejecting Plaintiff's contention that the "general and sweeping" allegations in the complaint were adequate to give rise to colorable theory of removability). As Defendants are entitled to remove the case following the development of facts that give rise to federal officer jurisdiction, they are further entitled to an analysis by the Court of the facts and evidence proffered in support of that removal despite prior failed attempts to remove by other defendants.

**B.**     **Defendants' Removal Was Timely**

Likewise, Plaintiffs' contention that Defendants' removal is untimely has no merit.  28 U.S.C. § 1442(a)(1) governs federal officer removal jurisdiction and states in relevant part:

> (a) A civil action...commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place where it is pending:
>
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) or the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . . .

To establish federal officer removal jurisdiction, the removing party must (1) must be a "person" within the meaning of the statute; (2) demonstrate that it acted under direction of a

federal officer; (3) demonstrate a causal nexus between plaintiff's claims and the acts defendant performed under color of federal office; and (4) raise a colorable federal defense to plaintiff's claims.  Mesa v. California, 489 U.S. 121, 124-35, 109 S. Ct. 959, 103 L.Ed.2d 99 (1989).

The trigger to start the clock running on a defendant's notice of removal is "receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable . . . ."  28 U.S.C. § 1446(b).  Durham v. Lockheed Martin Corp., 445 F.3d 1247 (9th Cir. 2006), establishes the following standard for determining when the time period for "federal officer" removal under Section 1442(a)(1) is triggered:  Removal is not triggered until plaintiff discloses (in a pleading or other paper) sufficiently detailed facts based on which is it apparent to the removing defendant that it can satisfy all four requirements of the statute.

In Durham, an electronics technician, who suffered from lung cancer allegedly caused by his exposure to asbestos while in the Air Force, brought claims in state court against Lockheed Martin Corporation ("Lockheed") and others.  Lockheed did not attempt to remove the case based on federal enclave grounds evident from the complaint, but later removed when federal officer grounds were revealed through interrogatory responses that detailed, for the first time, plaintiff's specific allegations as to Lockheed's military aircraft.  Plaintiff moved to remand, claiming that Lockheed's removal was untimely as it did not remove on federal enclave grounds within thirty days of receipt of the complaint.  The district court remanded the case and awarded fees and costs to plaintiff, finding that the thirty-day time period ran from the service of the complaint, i.e., date of notice of federal enclave removal grounds.  Lockheed filed an appeal as to the award of fees and costs.  In overruling the award of fees and costs, the Ninth Circuit reasoned that:

> To start the thirty-day clock under <u>Harris</u>, Durham had to provide Lockheed **with facts to support each of the three requirements**. Until Durham revealed which aircraft he had worked on during his Air Force career, Lockheed couldn't assert either that its actions were taken pursuant to a federal officer's directions, or that it had a colorable federal defense. Lockheed, like other federal military contractors, performs some activities on military bases that are protected by federal contractor immunity, and others that are not.

<u>Durham</u>, 445 F.3d at 1251 (emphasis added.) Further, the Court held:

> Removable is not a defined term in the statute, and there are two plausible ways to construe it in the context of federal officer removals ... The second way to interpret "removable" is to look to each ground for removal separately. Under this reading, a case does not become removable **until the particular basis on which removal is sought becomes apparent from the record.** Seen in this light, the case wasn't removable until **Lockheed learned that it could remove the case unilaterally based on federal officer jurisdiction.**

<u>Id.</u> at 445 F.3d at 1252 (emphasis added).

Here, Defendants promptly removed the action upon first notice that they had valid federal officer removal grounds. Plaintiffs never provided sufficient information from which Defendants could discern that their actions were taken pursuant to a federal officer's directions and that colorable federal defenses existed until Plaintiffs revealed on September 7, 2007, in the Aircraft List, that their claims were based on Mr. Hilbert's alleged exposure to asbestos-containing components in the Aircraft, which was confirmed during his depositions.

Plaintiffs' argument that Defendants knew or should have known of removal grounds before such time was rejected in <u>Durham</u>. Plaintiffs' generic Complaint and Disclosure Statement do not specify which particular aircraft contained the allegedly asbestos-containing components that Mr. Hilbert was allegedly exposed to. Plaintiffs' Aircraft List was the first paper that gave Defendants "enough information to remove." <u>Id.</u> at 1251. Plaintiffs' argument that Defendants "should've known" the basis for removal based on a generic statement that Mr.

Hilbert worked on unspecified *private* aircraft runs against the policies underlying 28 U.S.C. §§ 1442 and 1446. See id. at 1253.

Durham clarifies that the clock for federal officer removal is not triggered by a plaintiff's vague claims that he worked on unidentified aircraft allegedly built by a defendant, or that he served in the military. To determine if grounds for federal officer removal exist, a defendant must have sufficient information regarding the particular model aircraft, the aircraft's specific components that are alleged to be a source of asbestos exposure, and what work the plaintiff performed on such components. This information is necessary in order to conduct an adequate investigation into whether the subject components contained asbestos and were mandated by the Government to be installed on the aircraft – i.e., were in fact GFAE or MIL spec parts. See Durham, 445 F.3d at 1251. Without such information, Defendants could not assert either that their actions were taken pursuant to a federal officer's directions or that they had colorable federal defenses. See id.

Plaintiffs' contention that Defendants were on notice simply because Mr. Hilbert was in the Navy and alleged to have worked on aircraft is misguided, unavailing and completely contrary to the positions taken by Plaintiffs in their prior remand papers. Plaintiffs suggest that Defendants were on notice that "federal officer" removal jurisdiction existed because Defendants were on notice that Mr. Hilbert was an aircraft mechanic in the Navy. However, Plaintiffs' own Disclosure Statements declare that Mr. Hilbert worked on *civilian* aircraft. (Ex 4.) Further, over the last nine decades, Defendants have built thousands of different models of aircraft, both civilian and military. Although Defendants built military aircraft under contracts with the Government, that fact alone does not necessarily confer "federal officer" removal. Which particular components of Defendants' military aircraft were GFAE and/or controlled by MIL

specs varied from aircraft to aircraft.  Which components contained asbestos also varied from aircraft to aircraft.  Plaintiffs' purported disclosure that Mr. Hilbert was exposed to asbestos from aircraft while in the Navy not only fails to identify any particular model aircraft, but also fails to identify any specific part.  Aircraft have a multitude of component parts, and as noted by the court in Durham, Defendants were not required to take a "blind leap" by guessing which specific components of what particular aircraft is the alleged source of Mr. Hilbert's purported exposure and then risk the potential adverse consequences of an improvident removal.[4]  Id.  Moreover, Defendants had no duty to investigate Plaintiffs' vague, unsupported claims to determine whether grounds for federal officer removal actually existed.  See Harris v. Bankers Life and Casualty Co., 425 F.3d 689, 694-95 (9th Cir. 2005) (removability determined through four corners of applicable pleadings, not through subjective knowledge or duty of further inquiry).

Defendants' removal was timely because the triggering events did not occur until Plaintiffs provided sufficient information about Defendants' military aircraft and specific components thereof so Defendants could discern federal officer removal jurisdiction existed.

**C.**      **"Federal Officer" Removal Jurisdiction is Appropriate**

Defendants have satisfied the requirements for "federal officer" removal under Mesa.[5]

1.      <u>Defendants Acted Under the Direction of Federal Officers</u>

---

[4] The court stated: "Our interpretation of section 1446(b) protects the government's right of removal and encourages plaintiffs to disclose the facts underlying their claims early on.  We note that an opposite result would encourage gamesmanship and defeat the policies underlying sections 1442 and 1446."  Id.  Indeed, this was the particular difficulty Northrup-Grumman faced in its first removal attempt – i.e., Plaintiffs had not yet identified any of its aircraft and, thus, Northrup-Grumman was unable to proffer aircraft-specific evidence to sustain its removal attempt.

[5] Plaintiffs cannot contend that Defendants fail to satisfy the first of these requirements – that is, that Defendants are "persons" under the statute.  Corporate entities are considered "persons" for purposes of Section 1442(a)(1).  See Winters v. Diamond Shamrock Chemical Co., 149 F.3d 387, 398 (5th Cir. 1998).

A corporate defendant is "acting under" the direction of a federal officer when that officer had "direct and detailed control" over the defendant." See Fung v. Abex Corp., 816 F. Supp. 569, 572 (N.D. Cal. 1992). "This control requirement can be satisfied by strong government intervention and the threat that a corporate defendant will be sued in state court 'based upon actions taken pursuant to federal direction.'" Id. (quoting Gulati v. Zuckerman, 723 F.Supp. 353 (E.D.Pa.1989)).

Courts have sustained removal on federal officer grounds and, in doing so, found the removing defendant satisfied the "acting under" prong under circumstances similar to, but less compelling than, those presented here. For example, in Fung, Navy personnel filed personal injury product liability actions against General Dynamics based on their alleged exposure to asbestos in submarines General Dynamics built for the Navy pursuant to military procurement contracts. The court sustained General Dynamics' removal on federal officer grounds, holding that General Dynamics satisfied the "acting under" prong because: (1) it was "under the direct control of the Secretary of the Navy and authorized to build submarines under federal contract," (2) the Government "monitored General Dynamics' performance at all times and required the defendant to construct and repair the [submarines] in accordance with the applicable and approved specifications incorporated into the contracts," (3) "all contract supplies were subject to inspection, test, and approval by the government," and (4) "the government also performed extensive dock and sea trial on the submarines prior to commission, to ensure complete conformity with design specifications." Id. at 572-73.

Similarly, in Pack v. AC&S, 838 F. Supp. 1099, 1103 (D. Md. 1993), the court found that Westinghouse, which designed and manufactured turbine generators for the Navy properly removed over 500 product liability actions against it on "federal officer" grounds. Westinghouse

satisfied the "acting under" requirement by demonstrating that the Government (1) exercised "extensive control over the construction, design and testing of the turbines," (2) "monitored Westinghouse's performance and on occasion it returned drawings and specifications for revision," (3) specified and approved asbestos-containing components used, and (4) tested the turbines. Id. at 1103.

Here, the Government exercised at least the same level of involvement and control over Defendants' production of the Aircraft, as it did with the products in Fung and Pack. In fact, Defendants have shown a greater level of Government intervention because neither Fung nor Pack involved GFAE-CI components on military equipment.

Further, Plaintiffs' contention that federal officer jurisdiction should be strictly construed against removal misstates applicable law. The cases relied upon by Plaintiffs, including Good v. Armstrong World Industries, Inc., 914 F. Supp. 1125, 1128 (E.D. Pa. 1996), are inapplicable because they were decided under a prior version of § 1442, which did not permit the Government or its agencies to remove under the federal officer statute. See, e.g., Int'l Primate Prot. League v. Adm'r of Tulane Educ. Fund, 500 U.S. 72, 76 (1991). Congress enacted the Federal Courts Improvement Act of 1996 that amended § 1442 to permit removal by the Government and its agencies, abrogating the cases relied on by Plaintiffs. See State of Nebraska ex rel. Dept. of Soc. Servs. v. Benston, 146 F.3d 676, 678 (9th Cir. 1998). There is no longer any reason to preclude removal under § 1442 by corporate defendants acting under the control of the Government or federal agency, and Defendants are entitled to remove under § 1442 based upon the direct control of the Government.[6]

---

[6] Even Pack and Fung were decided before the 1996 amendments, further showing that, under the now more liberal standard, Defendants satisfy federal officer removal.

(a) **Defendants satisfy the "acting under" requirement based on the Government's mandate that Defendants install GFAE-CI components**

Defendants were "acting under" a federal officer because the Government selected and furnished to Defendants the very equipment that Plaintiffs claim caused Mr. Hilbert's asbestos exposure, and required that Defendants install this equipment in the Aircraft. The Government, not Defendants, selected the GFAE-CI components, including the brakes and engines used in the Aircraft. (See Smith Decl. ¶¶ 11, 32-63; Volkening Decl. ¶¶ 19-22; Brezenoff Decl. Ex. A at 27-28 (establishing that the brakes and engine on the SNJ were government furnished equipment); Gionta Decl. ¶ 4 (explaining that the government has exclusive control over the selection of GFE parts).) As the Government's requirements for aircraft evolved, so did design, and the Government issued Change Orders directing Defendants to install GFAE-CI asbestos-containing parts on later aircraft. (Smith Decl. ¶¶ 11, 32-63; Volkening Decl. ¶¶ 19-22.) The Government selected each such component on its own, separately procured them from OEMs, supplied them to Defendants as GFAE-CI, and required Defendants to install them on the Aircraft during assembly. Id. Courts have recognized that inclusion of GFAE-CI permits greater Government control over aircraft design by allowing the Government to be directly involved in design and development of aircraft subsystems. In re Aircraft Crash Litigation Frederick, Maryland, 752 F. Supp. 1326 (S.D. Ohio 1990).

(b) **Defendants satisfy the "acting under" requirement based on the Government's mandate to comply with MIL specs requiring asbestos**

The Government's requirement that Defendants install certain components that complied with material specifications, such as Air Force-Navy Aeronautical Standards and MIL specs, also satisfies the "acting under" requirement. These specifications required use of asbestos in certain parts, such as gaskets, which were incorporated into the Aircraft and GFAE-CI subsystems. For

instance, MIL specs MIL-G-7021 and MIL-G-7021A specifically required the use of asbestos material for heat resistant gaskets including, but not limited to, AN4044 and AN763 type gaskets, in A-4 and F-4 aircraft. (Smith Decl. ¶¶ 67-68; see Volkening Decl. ¶ 16.) Air Force-Navy Aeronautical Standards AN4044 and AN763 specifically required the use of MIL-G-7021/7021A material composition, thus requiring the use of asbestos. Likewise, Air Force-Navy Aeronautical Standard AN900 specifically required the use of asbestos material encapsulated in copper sheet. (Smith Decl. ¶ 69.) Navy representatives reviewed and approved drawings requiring the installation of AN4044, AN763 and AN900 gaskets on A-4 aircraft, including, but not limited to, installations on the turbine power plant section, turbine fuel pump and oil tank.

> (c)     Defendants satisfy the "acting under" requirement based on the Government's extensive involvement in and control over Defendants' production of the Aircraft

As discussed in detail in the Smith and Volkening Declarations, the Government was directly and closely involved in all phases of A-4 and F-4 programs, including the design, manufacture, testing and modification of the Aircraft, for many years. Indeed, the Government was "omnipresent." Federal officers and personnel were stationed and worked at Defendants' manufacturing facilities, and had, and exercised, complete access to Defendants' facilities to review, approve and oversee design, development, and production of the Aircraft, to ensure that the Aircraft complied with all applicable Government specifications and requirements. Such presence, oversight and direction by military officials constitute detailed and direct Governmental control. See Fung, 816 F. Supp. at 572-74.

Further, the Government reviewed and approved all aspects of aircraft design, down to review and approval of design specifications and detailed parts drawings. Defendants could not change the design without prior Government authorization, and the Government controlled the design change process, retaining absolute authority to accept, reject or modify any aspect of a

proposed design change.  Frequently, the Government initiated and mandated design changes, as was the case with design changes to the A-4 brakes and a change in engines used in the F-4. (Smith Decl. ¶¶ 12-28, 39-62; Volkening Decl. ¶ 17-22.)

Moreover, the Government had authority to reject any aircraft that failed to conform to these specifications.  As Government contractors, Defendants would be subject to liability and penalties under 31 U.S.C. § 3729(a) of the False Claims Act ("FCA") for failure to deliver aircraft that conformed with contractual specifications.  U.S. v. Aerodex, 469 F.2d 1003 (5th Cir. 1972) (manufacturer of aircraft engine component liable for failure to comply with specifications).

      2.    A Causal Nexus Exists Between Defendants' Action Under Color of Federal Office and Plaintiffs' Claims

Defendants satisfy the "causal nexus" requirement because Plaintiffs' claims arise directly from Defendants' acts under color of federal office, i.e., Mr. Hilbert's alleged exposure to asbestos from GFAE parts installed in aircraft manufactured by Defendants pursuant to Government procurement contracts and under extensive Government control.  That is, there is a "causal nexus" between Plaintiffs' claims and the acts Defendants performed because Plaintiffs' claims are based on parts exclusively selected by the government for installation on the Aircraft, and Defendants were required to install these GFAE parts by federal officers pursuant to government contracts.  Mesa, 489 U.S. at 131-132.

In Fung, the Court found the requisite causal nexus because plaintiffs' alleged exposure occurred while they worked on submarines that were constructed with asbestos at the Government's direction and approval.  Fung, 816 F. Supp. at 572-573.  Similarly, in Akin v. Big Three Industries, 851 F. Supp. 819, 823-824 (E.D. Tex. 1994), the court held that "[p]lainly, when a government contractor builds a product pursuant to Air Force specifications and is later

sued because compliance with those specifications allegedly causes personal injuries, the nexus requirement is satisfied" and removal jurisdiction is proper.

Here, Defendants' use of asbestos-containing components in the Aircraft was specifically compelled by the Government. Defendants had no choice but to install those components on the Aircraft in carrying out their obligations under procurement contracts with the Navy. Had they not done so, the Aircraft would not have complied with Government-approved design specifications, and Defendants would have been in breach of those procurement contracts and subject to penalties under the FCA. Now, Plaintiffs are suing Defendants because they installed such asbestos parts on that military equipment.

### 3. Defendants Have a "Colorable Federal Defense," i.e., Government Contractor Defense and Derivative Sovereign Immunity

Defendants have raised a colorable federal defense to Plaintiffs' claims by asserting the "government contractor" defense as stated in Boyle v. United Technologies, Inc., 487 U.S. 500 (1988), and its progeny, including Niemann v. McDonnell Douglas Corp., 721 F. Supp. 1019 (S.D. Ill. 1989) (in which MDC obtained summary judgment under Boyle against asbestos claims regarding manufacture of military aircraft). Further, Defendants raised the separate and additional colorable federal defense of "derivative sovereign immunity" as set forth in Yearsley v. W.A. Ross Construction Co., 309 U.S. 18 (1940).

Under Boyle, civil tort liability for design defects in military equipment cannot be imposed against the manufacturer under state law if (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about dangers in use of equipment that was known to the supplier but not to the United States. Boyle, 487 U.S. at 512.

The government contractor defense is based on federal law and, indeed, was created by federal courts.  By operation of the defense, federal law, i.e., government contractor immunity, preempts state law product liability claims.  The Supreme Court explicitly stated in Boyle that "civil liabilit[y] arising out of the performance of federal procurement contracts" is a "'uniquely federal' interest."  Id. at 505-06.  "[I]t is plain that the Federal Government's interest in the procurement of equipment is implicated by [product liability] suits [against the contractor] – even though the dispute is one between private parties."  Id. at 506.  The rationale for the defense is based upon federal law, i.e., a military contractor should enjoy the same immunity as a federal officer enjoys under the discretionary function exception to the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 2680(a).  Id. at 511.  As the Supreme Court stated:

> We think that the selection of the appropriate design for military equipment to be used by our Armed Forces is assuredly a discretionary function within the meaning of [28 U.S.C. § 2680(a)] . . . And we are further of the view that permitting 'second-guessing' of these judgments . . . through state tort suits against contractors would produce the same effect sought to be avoided by the FTCA exemption . . . It makes little sense to insulate the Government against financial liability for the judgment that a particular feature of military equipment is necessary when the Government produces the equipment itself, but not when it contracts for the production.  **In sum, we are of the view that state law which holds Government contractors liable for design defects in military equipment does in some circumstances present a 'significant conflict' with federal policy and must be displaced.**

Id. at 511-12 (citations omitted; emphasis added).

Defendants' assertion of the government contractor defense is "colorable" within the meaning of § 1442(a)(1) so as to confer removal jurisdiction.  The question at this stage is not whether Defendants' claimed defense is meritorious or even whether Defendants will likely prevail on that defense.  Mesa, 489 U.S. at 128-29; see also Pack, 838 F. Supp. at 1103.  The appropriate inquiry is whether this Court will be deciding a question of federal law.  Akin, 851 F.

Supp. at 823.  Defendants' evidence shows that (1) the Government approved reasonably precise specifications for the Aircraft; (2) the Aircraft conformed to those specifications; and (3) Defendants warned the Government about the dangers in the use of the equipment that were known to Defendants but not to the Government.[7]

Plaintiffs' argument that Defendants had a duty to warn of the hazards of asbestos is untenable.  As determined by Niemann, Defendants had no duty to warn the Government about the alleged hazards of asbestos, and thus satisfy the third prong of the Boyle test, because the Navy already had superior knowledge about those hazards.  Niemann, 721 F. Supp. at 1027-1028.  Defendants have demonstrated the military's superior knowledge about asbestos through testimony by Colonel Alvin F. Meyer, Jr. (Ret.) and Colonel Walter Melvin, M.D.  (Exs. 72, 73 & 75.)  Also, Ramey v. Martin-Baker Aircraft Co., 874 F.2d 946, 950-51 (4th Cir. 1989), held that because of the Government's knowledge of risk of asbestos, the third element of Boyle was satisfied regardless of the level of defendant's knowledge of risks.  Additionally, Defendants could not place any markings or labels on the Aircraft or Aircraft components, including GFAE-CI components, except as required by Government specifications.  (Smith Decl. ¶¶ 72-73.)

To meet the first element of the Boyle test, Defendants must demonstrate only that the product supplied was a particular product specified by the Government.  See Koutsoubos v. Boeing Vertol, 553 F. Supp. 340, 343 (E.D. Pa. 1982), aff'd, 755 F.2d 352 (3d Cir.), cert. denied, 474 U.S. 821 (1985).  The Aircraft were not "stock" or "off the shelf" products.  Indeed, these were military aircraft specified by the Government in procurement contracts.  Plaintiffs' argument that components of the Aircraft, particularly GFAE-CI and MIL spec components,

---

[7] There can be no doubt that Defendants' "government contractor" defense is colorable, especially in light Niemann, where MDC obtained summary judgment under Boyle against asbestos claims regarding military aircraft. See Fung, 816 F. Supp. at 569 (acknowledging Niemann decision).

were not designed for military use is absurd and contrary to the evidence and law. As Niemann clearly stated, under Boyle, in cases involving aircraft manufacturers, the products at issue are the aircraft themselves, and not any particular component part of those aircraft. 721 F. Supp. at 1027. No piece of military equipment more typifies the situation to which the Boyle decision speaks than procurement of military aircraft, which at the time represented the extreme boundaries of state of the art military aircraft design and technology, and which the U.S. military operated for several decades. The primary purpose for those aircraft was to satisfy the military's need for naval aircraft critical to national defense. Courts have regularly granted summary judgment in favor of aircraft defense contractors on the basis of the government contractor defense. See Maguire v. Hughes Aircraft Corp., 912 F.2d 67 (3rd Cir. 1990); Kleemann v. McDonnell Douglas Corp., 890 F.2d 698 (4th Cir. 1989), cert. denied, 110 S. Ct. 2219 (1990); Sundstrom v. McDonnell Douglas Corp., 816 F. Supp. 577 (N.D. Cal. 1993); Niemann, 721 F. Supp. at 1019 (involving the C-54, C-118, C-131 and T-29).[8/]

Here, the Government approved reasonably precise specifications for the Aircraft, just as it did with regard to the aircraft involved in Niemann and other cases. Government officers were intimately involved in design and development of the Aircraft and actually reviewed and approved detail specifications, as well as design drawings and mock-ups. The Government also tested the Aircraft and its various systems to insure that it satisfied detail specifications. This

---

[8/] In Niemann, a case on all fours with this one, the estate of a former USAF aircraft maintenance worker brought a wrongful death action against MDC and others, claiming that the decedent's death was caused by asbestos used in T-29, C-131, C-54 and C-118 aircraft. In opposing defendants' motion for summary judgment, plaintiff raised the "stock product" exception to the military contractor defense, claiming that there was no specification for the asbestos containing parts; therefore, they were purchased off-the-shelf, and not pursuant to any military specification. 721 F. Supp. at 1022-23. The court soundly rejected that argument, holding that under Boyle the products at issue were the aircraft themselves, and not each individual component contained in the aircraft. Id. at 1023. The court further noted that the Government had not merely ordered a quantity of a product, i.e., aircraft; rather, the aircraft designs in question resulted from negotiation and an approval process between the contractors and the Government. Id. at 1026. Finding that all three factors of the Boyle defense had been met, the court granted defendants' motion for summary judgment.

tedious submittal, negotiation and review process unquestionably satisfies the requirement that the Government approve reasonably precise specifications.  See Koutsoubos, 755 F.2d at 355; Maguire v. Hughes Aircraft Corp., 725 F. Supp. 821, 823-24 (DNJ 1989).  Indeed, that was the very same process involved in Niemann.

Defendants' assertion of the "derivative sovereign immunity" defense under Yearsley 309 U.S. 18 (1940), is also "colorable" within the meaning of § 1442(a)(1) so as to confer removal jurisdiction.  In Yearsley, a government contractor built dikes in the Mississippi River, which disturbed the river's flow and washed away part of plaintiff's land.  Id. at 19.  Plaintiff sued the government contractor and the court found that the contractor was acting under the direction of the Government and, as such, that plaintiff could only proceed against the Government under the takings clause of the Fifth Amendment to the United States Constitution. Id. at 20-21.  The Supreme Court found that "the work that the contractor had done in the river bed was all authorized and directed by the Government of the United States for the purpose of improving the navigation of this navigable river."  Id. at 20.  Based on this finding, the court held, "it is clear that if this authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will."  Id. at 21 (citations omitted).

Similarly, the work Defendants performed was authorized and directed by the U.S. Government.  Defendants were required under government contracts to comply with extensive specifications and to install GFAE-CI engines and brakes on the Aircraft.  Since these GFAE-CI components were separately procured by the Government under separate contracts with other manufacturers, Defendants had no input into their design or manufacture.  Defendants were simply required to install the GFAE parts on the Aircraft.  Plaintiffs allege that Mr. Hilbert was

exposed to asbestos by working on these GFAE-CI components.  Thus, the actions involved were directed by the U.S. Government, and Defendants have asserted a second, separate colorable federal defense to Plaintiffs' claims under the derivate sovereign immunity doctrine.

**D.      Plaintiffs' "Failure to Warn" Arguments Lack Merit**

Plaintiffs maintain that they allege only failure to warn claims and argue that Defendants cannot establish that a "causal nexus" exists without showing that the Government dictated that Defendants "must use asbestos" and that Defendants "must not warn" of the asbestos. (Grumman Remand Mtn., pp. 13.)  This argument fails because Plaintiffs' Complaint is not so narrowly pled.  Rather, the Complaint expressly alleges broad product design and manufacturing defect claims against Defendants based on its inclusion of asbestos in the Aircraft.  (Compl. ¶¶ 5-9, 11-16, 18-23.)  The validity of a removal is determined from the pleadings at the time of removal.  Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1065 (9th Cir. 1979).  Plaintiffs cannot later morph their Complaint for the purpose of defeating removal.  Thus, Plaintiffs' assertion that Defendants must first show that the Government controlled any warnings of asbestos in order to establish a "causal connection" is incorrect, and the cases cited by Plaintiffs do not apply.

Even if Plaintiffs had alleged only failure to warn claims, Defendants have still established a "causal nexus" because the Government had exclusive control over the design of GFAE-CI components, including any warnings regarding those components, MIL specs, and warnings used on military aircraft.  Defendants could not change the design of GFAE-CI engines and brakes they were required to install in the Aircraft, modify or add warnings to any technical manuals regarding those components, or place warnings on those components.  All of that was dictated by the Government in connection with its procurement of the engines from the OEMs.

(Smith Decl. ¶¶ 11, 32-63, 72-73; Volkening Decl. ¶¶ 18-22.)   According to USAF Colonel Alvin F. Meyer, Jr. (Ret.):

> All warnings placed on military equipment procured from government contractors, and warnings placed in technical manuals for that equipment, were under the exclusive control and required the approval of the United States government.

(Ex. 75 (Col. Meyer Aff. ¶ 26).)  As Col. Meyer explained, even if Defendants had wanted to place asbestos warnings on aircraft, the Government would not have allowed it.  (Id. at ¶ 27.) The Government reviewed, approved and mandated content of all manuals and markings associated with subject aircraft, including all changes. (Smith Decl. ¶¶ 72, 73.)

Since Boyle, most courts addressing the issue have held that some form of the government contractor defense applies in failure to warn cases. See Smith v. Xerox Corp., 866 F.2d 135 (5th Cir. 1989); Nicholson v. United Technologies Corp., 697 F. Supp. 598, 604 (D. Conn. 1988).[9/]  In Nicholson, plaintiff was injured when the nose landing gear of an Army helicopter exploded allegedly because of a defect in design in the strut.  Along with a claim of design defect, plaintiffs' theory rested on defendant's alleged violation of its duty to provide, in the manual, instructions and warnings concerning dangers in repairing and disassembling the strut.  Id. at 602-03.  After considering the policy basis for the government contractor defense articulated in Boyle, the court concluded that a contractor should not be held liable for deficiencies in a maintenance manual if its contents are dictated by the government, reasoning:

> Liability for failure to warn as asserted in this case would have the same negative effects on military procurement as was outlined in Boyle.  Further, the government's decision on the contents of a

---

[9/] See also Bynum v. FMC Corp., 770 F.2d 556, 574 n.24 (5th Cir. 1985) ("policies underlying the government contractor defense apply equally well regardless of whether the action is predicated on an allegedly dangerous defect in the design of the product or a failure to warn, the government contractor defense functions as an affirmative defense against both claims of tort liability").

> maintenance manual involves the same balancing of technical, military and even social considerations protected in <u>Boyle</u>.
>
> Because the policy justifications underlying the government contractor defense apply equally well regardless of whether the action is based on an allegedly dangerous design defect or a failure to provide adequate warnings and instructions, the government contractor defense can function as an affirmative defense against both claims.

<u>Id.</u> at 604, <u>citing</u> <u>Bynum</u>, 770 F.2d at 574 n.24. In <u>Nicholson</u>, the contractor's affidavit showed that the government established specifications for development of the manual, that the government was in large part responsible for contents of the manual and revisions to it and that the manual was provided under contract to the government. <u>Id.</u>

In re Hawaii Federal Asbestos Cases, 960 F.2d 806 (9th Cir. 1992), heavily relied upon by Plaintiffs, did not involve military equipment and thus does not apply here. Unlike the Aircraft, defendants' insulation involved in <u>Hawaii Federal Asbestos Cases</u> was designed for commercial use without any Government intervention – the Navy just happened to purchase an insignificant amount of it for installation on ships. <u>Id.</u> at 811, 812. That defendants' insulation was not a military product was the "driving force" behind the Ninth Circuit's opinion. Indeed, the court noted that its decision not to extend government contractor immunity under <u>Boyle</u> to the insulation manufacturers would not have the "chilling effect" on the military equipment procurement process <u>Boyle</u> was intended to avoid.

> The contractors, furthermore, already will have factored the costs of ordinary tort liability into the price of their goods. That they will not enjoy immunity from tort liability with respect to the goods sold to one of their customers, the Government, is unlikely to affect their marketing behavior or their pricing.

<u>Id.</u> By contrast, the Aircraft here were designed solely for military use and were not commercially available. Defendants are among the largest government contractors. If Defendants and other government contractors cannot enjoy immunity under <u>Boyle</u> against state

law failure to warn claims such as Plaintiffs allege here, then the government procurement process will be negatively impacted, particularly since Defendants would in effect be penalized for having fulfilled their contractual obligations to the Government at a time when the Government had superior knowledge about asbestos and did not consider its use on aircraft dangerous.

In any event, courts have acknowledged the applicability of the government contractor defense to Hawaii state law failure to warn claims, and further noted that, were the insulation a military product, defendants could have availed themselves of the defense had they demonstrated that the Government specified the use of asbestos in their products or controlled warnings about the products.  Id. at 813.  However, in Hawaii Federal Asbestos Cases, defendants had no such evidence and, in fact, conceded that the Government did not specify the use of asbestos in, or exert any control over warning about, the insulation products.  Id.  Thus, there was no conflict between the state law duty to warn and federal policy.

Here, the alleged duty under state tort law to warn about asbestos presents a significant conflict with federal policy and federal law in several ways.  First, a duty to warn conflicts with Defendants' obligation to comply with the Aircraft contract specifications that mandated Defendants to install allegedly asbestos-containing GFAE-CI components, such as brakes and engines, on the Aircraft.  Defendants were not permitted to modify the design of or warn about GFAE-CI components.  The Government was vested with, and exercised, pervasive control over the nature and content of warnings on military aircraft and in technical manuals.  Defendants were prohibited from placing warnings on aircraft, and/or in technical manuals unless authorized by the Government.  Even if Defendants had known about asbestos and suggested placing asbestos warnings on the aircraft, the Government would not have allowed it.  Finally, requiring

Defendants to have warned about asbestos -- when the Government knew about it and Defendants did not -- would run afoul of the third prong of <u>Boyle</u> requiring the contractor to warn only about risks the contractor knew of but the Government does not.

The Government's decision not to include asbestos warnings for its military aircraft is a paradigm example of government discretion controlling an article of military procurement. Just as decades of the military's operation of the Aircraft confirm the Government's understanding and acceptance of those aircraft designs, so too does the Government's extended experience with those aircraft support a finding that the decision not to publish warnings about exposure to asbestos represent the Government's well-considered judgment of how flight and maintenance crews should be instructed and hazards of which they should be warned. Under <u>Boyle</u>, that decision cannot be second-guessed in this action by Plaintiffs.

### E. Plaintiffs Are Not Entitled to Fees and Costs

Removal is proper under 28 U.S.C. § 1442. However, in the event the Court decides otherwise, Plaintiffs are not entitled to fees and costs. "Absent unusual circumstances, attorneys' fees should not be awarded when the removing party has an objectively reasonable basis for removal." <u>Durham</u>, 445 F.3d at 1250 (citing <u>Martin v. Franklin Capital Corp.</u>, 546 U.S. 132 (2005)). Plaintiffs are not entitled to any award because Defendants had an objectively reasonable basis for removal.[10]

---

[10] Plaintiffs have not properly moved to sever other defendants from the federal action. Regardless, Plaintiffs would have no legal justification for such a request, which is not authorized by Section 1367, or any other law. Additionally, remanding other defendants would be unfair, inconvenient, and will not serve judicial economy. See <u>Growth Horizons, Inc. v. Delaware County, Pa.</u>, 983 F.2d 1277, 1284 (3d Cir. 1993). The fact that duplicative state and federal trials would occur weighs in favor of keeping the claims together in federal court. See <u>Wasserman v. Potamkin Toyota Inc.</u>, 78 Fair Empl. Prac. Cas (BNA) 446 (E.D. Pa. 1998); <u>Occhiato v. Exeter Township</u>, 2005 U.S. Dist. LEXIS 31020 (M.D. Pa. 2005).

IV.  **CONCLUSION**

Defendants respectfully request the Court to deny Plaintiffs' Motion for Remand because removal is proper under 28 U.S.C. § 1442.

Respectfully submitted,

> **McDonnell Douglas Corporation, The Boeing Company and Boeing North American, Inc.**
> By their attorneys,
>
> /s/ Katy E. Koski
> Robert J. Muldoon, Jr., BBO# 359480
> Katy E. Koski, BBO# 650613
> Sherin and Lodgen LLP
> 101 Federal Street
> Boston, Massachusetts 02110
> 617.646.2000

Dated: October 29, 2007

*Of Counsel:*

| | |
|---|---|
| Robert E. Boone, III | John D. Dillow |
| James Pettis | Brendan Murphy |
| Bryan Cave LLP | Perkins Coie LLP |
| 120 Broadway, Suite 300 | 1201 Third Avenue, Suite 4800 |
| Santa Monica, California 90401-2386 | Seattle, Washington 98101-3099 |
| Tel. (310) 576-2000 | Tel. (206) 359-8000 |
| reboone@bryancave.com | JDillow@perkinscoie.com |
| james.pettis@bryancave.com | BMurphy@perkinscoie.com |
| *Attorneys for McDonnell Douglas Corporation* | *Attorneys for The Boeing Company and Boeing North American, Inc.* |

## CERTIFICATE OF SERVICE

I, Katy E. Koski attorney for the Defendants, hereby certify that I electronically served a copy of the above referenced document on all counsel of record via Lexis Nexis File and Serve and this Court's CM/ECF system on October 29, 2007.

/s/ Katy E. Koski
Katy E. Koski