**MDL 875**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JAN - 2 2008

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI) | ) ) ) ) ) ) ) | MDL NO. 875 |
| | | December 26, 2007 |

## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDWARD A. MACHNIK and ELIZABETH MACHNIK | ) ) | Case No. 3:07-CV-00357 (CFD) |
|    Plaintiffs | ) ) ) | |
| v. | ) ) | |
| BUFFALO PUMPS, INC., et al | ) ) ) | |
|    Defendants | ) | |

PLEADING NO. 5308

## DEFENDANT GENERAL ELECTRIC COMPANY'S
## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER TO MDL

Defendant General Electric Company ("GE") submits this Memorandum in

Opposition to Plaintiffs' Motion to Vacate Conditional Transfer Order to MDL, dated

December 4, 2007 ("the Motion").  Plaintiffs seek vacatur of the order transferring this

case to the Asbestos MDL (MDL-875).  Plaintiffs' Motion should be denied because (1)

this case is appropriate for transfer to the Asbestos MDL, and (2) transfer of this case to

the Asbestos MDL will in no way violate any of Plaintiffs' constitutional rights.

## OFFICIAL FILE COPY

IMAGED JAN 2   2008

**Brief Procedural History**

This civil action alleging asbestos-related injury was originally filed in the Connecticut Superior Court.  The action was removed to the District Court for the District of Connecticut pursuant to the Federal Officer Removal Statute, 28 U.S.C. §1442 (a)(1), and Plaintiffs moved to remand.  The District Court denied Plaintiffs' motion to remand in a written decision dated September 17, 2007.  A conditional transfer order to the Asbestos MDL (MDL-875) issued on November 16, 2007.  Plaintiffs now seek vacatur of that transfer order.

**Argument**

Plaintiffs' Motion to vacate the transfer order should be denied because, contrary to Plaintiffs' arguments, this case is appropriate for transfer to the Asbestos MDL, and transfer to that MDL certainly will not violate any of Plaintiffs' constitutional rights.

1.      ***The background and procedural posture of this case is no different from other cases that are routinely transferred to the Asbestos MDL.***

Pursuant to 28 U.S.C. § 1407(a), one consideration for transfer to an MDL is whether it "will be for the convenience of parties and witnesses."  Plaintiffs argue that transfer of this case would not be convenient because most of the parties and witnesses may be located in Connecticut.  As the J.P.M.L. has already decided, however, such considerations do not make transfer inappropriate for an asbestos-related case such as this.  *See In re Asbestos Prod. Liab. Litig.*, 771 F.Supp. 415, 422 (J.P.M.L. 1991) ("We remain sensitive to the concerns of some parties that § 1407 transfer will be

2

burdensome and inconvenient.  We note that since § 1407 transfer is primarily for

pretrial, there is usually no need for the parties and witnesses to travel to the transferee

district for depositions or otherwise."); *Carlough v. Amchem Prod., Inc.*, No. 93-215,

Memorandum Opinion and Order, at *3 (E.D.Pa. Apr. 15, 1993) (Weiner, J.) (Plaintiffs'

Exhibit A) ("Noting that the consolidation might prove burdensome or inconvenient to

some parties involved, the Panel concluded that centralization in the [E.D.Pa.], while

offering no panacea, would provide 'a great opportunity to all participants who sincerely

wish to resolve asbestos claims fairly and with as little unnecessary expense as

possible.'").  Indeed, Plaintiffs' argument proves too much because, if accepted, it would

likely preclude the transfer of virtually *any case* to the Asbestos MDL, as the parties

and witnesses in almost every asbestos-related case will likely be located in the

transferor district.  The facts cited by Plaintiffs here do not make this particular case

significantly different from other asbestos-related cases that are routinely transferred to

the Asbestos MDL.

### 2. *The Asbestos MDL promotes the just and efficient resolution of asbestos-related lawsuits.*

Another consideration for transfer to an MDL is whether it "will promote the just

and efficient conduct of such actions."  28 U.S.C. § 1407(a).  Plaintiffs argue that

transfer of this case will not promote these objectives because, in their words, the

Asbestos MDL is a "black hole" and cases transferred there are "forever mired in

inactivity."

3

As an initial matter, the J.P.M.L. has already considered competing arguments about the efficiency and efficacy in administering an MDL for asbestos-related cases as opposed to maintaining traditional case-by-case adjudication of such cases. *See In re Asbestos Prod. Liab. Litig.*, 771 F.Supp. 415 (J.P.M.L. 1991). The Plaintiffs' protests and citations to other commentators' criticisms here merely represent disagreement with the J.P.M.L.'s ultimate policy decision – a reason insufficient to vacate transfer of this particular case. Moreover, Plaintiffs' claims are without merit – the Asbestos MDL *does* promote "just and efficient" resolution of asbestos-related lawsuits, and Plaintiffs' focus on the frequency of remands and trials of such actions, rather than overall *resolutions*, is a red herring.

First, Plaintiffs suggest that no discovery takes place in the Asbestos MDL, but that is patently untrue, as evidenced by court orders such as the MDL's Administrative Order No. 3 (Plaintiffs' Exhibit B) and Administrative Order No. 12 (attached hereto as Defendant's Exhibit 1, entered on May 31, 2007). These orders lay out thoughtful and methodical processes that require both plaintiffs and defendants to provide information and discovery about their cases to facilitate resolution, or barring that, remand for trial. And, in the case of recently-issued Administrative Order No. 12, hard deadlines are set for the submission of such discovery by the parties.

Second, Plaintiffs focus on the proportional infrequency of remands and trials, but the proper focus should be on overall *resolutions* of asbestos-related actions, which are occurring at a steady pace in the Asbestos MDL. Contrary to Plaintiffs' suggestions,

there is nothing improper about, and indeed it is actually preferable to, resolve cases through negotiation, settlement, and/or dismissal before trials of individual cases are ever needed.  As explained in the Manual for Complex Litigation (Third), § 31.132 (1995), "[o]ne of the values of multidistrict proceedings is that they bring before a single judge all of the cases, parties, and counsel comprising the litigation" and "therefore afford a unique opportunity for the negotiation of a global settlement[s]" that reduce litigation costs for *all* parties, thereby maximizing recovery by deserving plaintiffs.

True to form, the statistics on the Asbestos MDL reflect such efficiencies here. The statistics that Plaintiffs submitted with their Motion reflect that, as of September 30, 2006, the number of cases either transferred to and/or filed in the Asbestos MDL was 110,849.  *See* Summaries by Docket of Multidistrict Litigation, Plaintiffs' Exhibit E.  The number of cases resolved through dismissal was 74,563 (plus 820 cases returned/claims remaining), and the number of cases remanded for trial was 433, leaving 35,033 pending cases.  *Id.* Thus, as of last year, out of the approximately 110,000 cases that have been in the Asbestos MDL since its inception, approximately 75,000 cases, or just under 70%, have already been resolved in some fashion, and that achievement was reached even before Administrative Order No. 12 with its hard deadlines was entered earlier this year.  This reflects steady progress in the Asbestos MDL.

Additionally, there is nothing unusual or problematic about the relatively low number of remands coming out of the Asbestos MDL:  "[e]xperience [with MDLs] shows

that few cases are remanded for trial; most multidistrict litigation is settled in the transferee court." Manual for Complex Litigation (Third), § 31.132. Indeed, trials of individual cases are not a panacea because, as the former Asbestos MDL judge explained, "the necessity of trial when either or both parties refused to negotiate in good faith and lengthy post trial practice served only to deplete the funds otherwise available to compensate the victims." *Carlough*, at *7-8 (Plaintiffs' Exhibit A); *see also In re Asbestos Prod. Liab. Litig.*, 771 F.Supp. at 419 (collecting authorities "recount[ing] the inefficiencies and inequities of case-by-case adjudication in the context of mass tort disasters"). And Plaintiffs' focus on the proportionately low number of remands for trial also ignores that many of the remands that have been made were "certain key cases [that could] serve as test cases" and that the "results achieved in those test cases were used to help resolve substantial blocks of cases." *Carlough*, at *7 (Plaintiffs' Exhibit A).

Finally, it should be emphasized that virtually all of the cases in the Asbestos MDL that involve screened plaintiffs with non-malignancies (which likely represent more than 90% of that MDL's current docket, Stephen Carroll et al., *Asbestos Litigation*, RAND Institute for Civil Justice (2005), at 75) are subject to pending motions to dismiss on the grounds that those plaintiffs rely on (1) medical "records" created through mass screenings that are unreliable at best, and fraudulent at worst, and on (2) testimony of purported medical experts (a handful of whom are used in literally tens of thousands of cases) who have routinely and repeatedly used flawed, and often fraudulent,

methodology in order to falsely generate positive "diagnoses" of plaintiffs.[1]  Not only are these precisely the sorts of issues that an MDL is best equipped to handle, but this also contravenes the Plaintiffs' presumption here that there are thousands of meritorious cases bollixed up in the Asbestos MDL for no reason other than that MDL's supposed pro-defense bias.  The MDL court is expected to rule on these motions to dismiss in the upcoming months.

In summary, contrary to Plaintiffs' aspersions, the history of resolutions in the Asbestos MDL so far is very "encouraging," for both defendants *and* plaintiffs.

### 3.  *Transfer to the Asbestos MDL will not violate any of Plaintiffs' constitutional rights.*

As a final attack on the Asbestos MDL, Plaintiffs claim that a slate of state and federal constitutional rights – the right of redress or right of open access to the courts, the right of trial by jury, and equal protection – will be violated if this case is transferred to the Asbestos MDL and that this MDL "insults the fundamental visions of the Framers."  Putting aside that Plaintiffs may not even have standing to assert such claims at this point in the proceedings, the J.P.M.L. has already considered and rejected the same type of arguments regarding the constitutionality of this MDL and, in any case, Plaintiffs' sweeping claims here are wholly without merit.  Contrary to Plaintiffs' efforts to cast the Asbestos MDL as some tribunal lacking in basic legal procedures, the reality is

---

[1] These motions are presently on file with the Asbestos MDL court.  This Court may take judicial notice of the filing of these motions.  Defendants, however, would also be happy to provide this Court with copies of the relevant motions, should this Court deem that helpful to its analysis herein.

that parties are not denied any rights by having their cases transferred to a federal court such as the Asbestos MDL.

The J.P.M.L. has already considered and rejected a challenge by other asbestos plaintiffs that "transfer [to the MDL] should be denied because the way in which MDL-875 is being administered effectively denies them their constitutional right to a jury trial." *In re Asbestos Prod. Liab. Litig.*, 170 F.Supp. 2d 1348, 1349-50 (J.P.M.L. 2001). In rejecting this challenge to a transfer and the constitutionality of the Asbestos MDL, the J.P.M.L. explained that "[a]lthough the number of Section 1407 remands in this docket is proportionately small, this is only because under Judge Weiner's stewardship the vast majority of transferred actions have been able to be concluded in the transferee district during the course of pretrial proceedings . . . The fact remains that whenever the transferee judge has deemed remand of any claims or actions appropriate, procedures have been utilized to accomplish Section 1407 remand for trial with a minimum of delay." *Id.* Plaintiffs' arguments about the impending violation of their right to a trial by jury here are no different, and should be similarly rejected.

Furthermore, Plaintiffs here fail to recognize the crucial distinction for constitutional purposes between a blanket moratorium on all jury trials (such as those in the cases Plaintiffs cite, *Armster v. U.S. Dist. Ct.*, 792 F.2d 1423, 1428 (9th Cir. 1986) and *Ex parte Milligan,* 71 U.S. 2 (1866) (which actually involved *criminal* trials)) as opposed to some delay in getting a civil jury trial. As evidenced by the statistics quoted herein, there is certainly no absolute denial of jury trials for cases in the Asbestos MDL.

Plaintiffs are incorrect when they characterize the Asbestos MDL as "a system that denies over 99% of plaintiffs their rights to trial by jury" because, as explained above, this characterization ignores that jury trials are not even sought in most cases in the Asbestos MDL because those cases are otherwise resolved through settlement or dismissal.  And, as Plaintiffs themselves allude, there is no *per se* constitutional infirmity with some delay in getting a jury trial, particularly in the context of mass tort litigation such as this.  *See, e.g., Capital Traction Co. v. Hof,* 174 U.S. 1, 23 (1899) (the Seventh Amendment "does not prescribe at what stage of an action a trial by jury must, if demanded, be had"); *In re Vermont Supreme Court Admin. Directive No. 17,* 579 A.2d 1036, 1041 (Vt. 1990) ("actions that may delay or condition the jury trial right do not by themselves infringe on that right"); *Pittsburgh Corning Corp. v. Bradley,* 453 A.2d 314, 316 (Pa. 1982) (holding that "requirement that the litigants proceed first in another forum [non-jury trial before any jury trial allowed for asbestos cases] does not offend the Constitution"); *Rhea v. Massey-Ferguson, Inc.,* 767 F.2d 266, 268 (6th Cir. 1985) (holding that mandatory arbitration program does not violate right to jury trial and explaining that "the core of these fundamental elements is the right to have a 'jury *ultimately* determine the issues of fact if they cannot be settled by the parties or determined as a matter of law'" (citation omitted)) (per curiam).  Despite Plaintiffs' suggestions to the contrary, there is no constitutional right to a speedy *civil* jury trial.

With regard to the right of redress or right of open access to the courts, Plaintiffs suggest that the Asbestos MDL erodes their right of access to the courts because, in

their words, "there is virtually no movement of cases in the MDL" and, once in the MDL, "all remedies against these particular defendants [are] effectively extinguished," leaving them with no means of redress.  To the extent that such a right of redress is even cognizable apart from other constitutional rights, Plaintiffs' view is mistaken because of the more-than-adequate opportunities for discovery and resolution available in the Asbestos MDL, as outlined throughout this brief.  Just because a court provides a different procedure or rules for resolution does not mean that it is an inadequate forum, even if a particular plaintiff's lawsuit ceases to be economically viable under such a system.  *See, e.g., Gonzalez v. Chrysler Corp.*, 301 F.3d 377 (5th Cir. 2002) (holding that a Mexican court was an adequate forum even though there was a damages cap of $2500 and no strict products liability under Mexican law).  Any notion that a federal court such as the Asbestos MDL is inadequate to hear Plaintiffs' lawsuit is preposterous.

With regard to equal protection, the proper standard of review would not be strict scrutiny; rather, it would be rational basis review – whether the challenged practice has a reasonable relationship to a legitimate state interest.  *See, e.g.,* Mark A. Behrens & Manuel Lopez, *Unimpaired Asbestos Dockets:  They Are Constitutional*, 24 Rev. Litig. 253, 292-93 (Spring 2005).  For all of the reasons explained throughout this brief, that standard is certainly met here, where the Asbestos MDL promotes the just and efficient resolution of this mass tort litigation.  Moreover, Plaintiffs cannot make the necessary threshold showing that the Asbestos MDL subjects them to intentional discrimination

because the MDL's procedures operate upon and affect both plaintiffs *and* defendants, and given the requirement of a showing of intentional discrimination, it is insufficient for Plaintiffs to argue, as they attempt to do here, that the MDL's procedures have a disparate *impact* on asbestos plaintiffs.

## Conclusion

For all of the reasons stated herein, Plaintiffs' Motion to Vacate Conditional Transfer Order to MDL should be denied.

DEFENDANT
GENERAL ELECTRIC COMPANY

Dan E. LaBelle ct01984
Halloran & Sage LLP
315 Post Road West
Westport, CT  06611
(203) 227-2855
labelle@hallotan-sage.com

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JAN - 2 2008

FILED
CLERK'S OFFICE

## **CERTIFICATION**

I hereby certify that on December 26, 2007, a copy of the foregoing DEFENDANT
GENERAL ELECTRIC COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER TO MDL
was mailed, first class postage pre-paid, to all counsel of record as shown on the attached
Panel Service List.

Dan E. LaBelle

1100803v.1

**IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)**     MDL No. 875

## PANEL SERVICE LIST (Excerpted from CTO-295)

Elizabeth Machnik, etc. v. Buffalo Pumps, Inc., et al., D. Connecticut, C.A. No. 3:07-357

Richard C. Binzley
THOMPSON HINE LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Edward J. Cass
GALLAGHER SHARP
FULTON & NORMAN
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

James M. Celentano
HALLORAN & SAGE
Goodwin Square
225 Asylum Street
Hartford, CT 06103

Adam M. Chud
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC 20001

David A. Damico
BURNS WHITE & HICKTON
Four Northshore Center
106 Isabella Street
Pittsburgh, PA 15212

Raymond P. Forceno
FORCENO GOGGIN &
KELLER
1528 Walnut Street
Suite 900
Philadelphia, PA 19102

Ellen B. Furman
GOLDFEIN & HOSMER
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Susan M. Hansen
BROWNSON & BALLOU
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

Timothy E. Kapshandy
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603

Reginald S. Kramer
OLDHAM & DOWLING
195 South Main Street
Suite 300
Akron, OH 44308-1314

Dan E. LaBelle
HALLORAN & SAGE
315 Post Road, West
Westport, CT 06880

David C. Landin
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
LOCKS LAW FIRM LLC
1500 Walnut Street
Philadelphia, PA 19102

Christopher Meisenkothen
EARLY LUDWICK &
SWEENEY L L C
265 Church Street, 11th Floor
P.O. Box 1866
New Haven, CT 06508-1866

Ronald L. Motley
MOTLEY RICE LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

James R. Oswald
ADLER POLLOCK &
SHEEHAN PC
2300 Bank Boston Plaza
Providence, RI 02903

John J. Repcheck
MARKS O'NEILL O'BRIEN
& COURTNEY PC
Gulf Tower, Suite 2600
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
ROVEN-KAPLAN LLP
2190 North Loop West
Suite 410
Houston, TX 77018

MDL No. 875 - Panel Service List (Excerpted from CTO-295)          Page 2 of 2

Richard D. Schuster
VORYS SATER SEYMOUR & PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008

Neil Selman
SELMAN BREITMAN & BURGESS
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
KELLEY JASONS MCGUIRE & SPINELLI LLP
Centre Square West
15th Floor
Philadelphia, PA 19102

Geoffrey Lane Squitiero
MAHER & MURTHA
528 Clinton Avenue
P.O. Box 901
Bridgeport, CT 06601

Robert E. Swickle
JAQUES ADMIRALTY LAW FIRM PC
1370 Penobscot Building
645 Griwsold Street
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226-4192

Andrew J. Trevelise
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

James K. Weston, II
TOM RILEY LAW FIRM
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

IN RE: ASBESTOS PRODUCTS
LIABILITY LITIGATION (NO. VI)          :

                                     **Civil Action No. MDL 875**

This Document Relates To:
    **ALL ACTIONS**
_____x

## ADMINISTRATIVE ORDER NO 12

    THE COURT, after examination of current procedures in place in this matter, and with a desire to facilitate the expeditious movement of pending cases on the MDL docket, and having had the benefit of input from the court-appointed plaintiff and defendant steering committees, hereby imposes the following filing requirements and procedures:

**1.**    **SUBMISSION OF IDENTIFICATION INFORMATION**

    All plaintiffs shall submit to the Court a report identifying each plaintiff by full name, date of birth, last four digits of plaintiffs SSN, and a statement indicating the status of the plaintiff in the case before this Court; ie., asbestos-related injury victim, spouse of injured party, administrator of injured party of deceased injured party, executor(trix), child of injured party, etc.

**2.**    **SUBMISSION OF RELATED COURT ACTIONS**

    Each plaintiff shall identify each and every prior or pending court or administrative action brought with the intent of satisfjlng in whole or in part the damages sustained by the plaintiffs alleged asbestos-related personal injury. In each such instance the plaintiff shall identify the claim, the parties involved and the results of any action thereon.

**3.**    **SUBMISSION OF STATEMENT OF CASE STATUS**

    The plaintiff in each case shall identify all of the named defendants in the following manner:

    a) Each defendant with whom the plaintiff has achieved resolution of his/her claim, whether by settlement or agreement to dismiss without payment or by payment of a claim through the bankruptcy court, shall be identified and, where a dismissal has not yet been entered of record, a proposed order shall be submitted.

b) Each defendant that the plaintiff now desires to dismiss from the action, with or without prejudice, the reason for the dismissal, and a proposed order.

c) Each remaining defendant that is currently in bankruptcy with a claim pending, together with an order for the transfer of the claim to an inactive docket which the court has created for the holding of such claims.

d) Each non-bankrupt unsettled defendant.

4.   **SUBMISSION OF MEDICAL REPORTS**

Each plaintiff asserting a claim based upon an alleged asbestos-related malignancy shall submit to the court a copy of the medical diagnosing report or opinion upon which the plaintiff now relies for the prosecution of the claim as if to withstand a dispositive motion.

Each plaintiff asserting a claim based upon an alleged **non-malignant** injury or condition shall submit to the court a copy of the medical diagnosing report or opinion upon which the plaintiff now relies for the prosecution of the claim as if to withstand a dispositive motion.

Each report or opinion submitted hereunder shall be based upon objective and subjective data which shall be identified and descriptively set out within the report or opinion.

5.   **ALTERNATIVE PLAINTIFF SUBMISSION**

Alternative submissions to the court are acceptable under the following circumstances:

a) If the plaintiff has remaining claims only against bankrupt parties and is desirous of seeking payment on those claims through the bankruptcy action, then, as an alternative to the required submissions under sections 2. and 4. above, the plaintiff may submit a proposed order for the transfer of this case to the "Bankrupts Only" docket in the form attached.

b) If the plaintiff has viable claims remaining against both bankrupt and non-bankrupt parties and wishes to pursue through the bankruptcy action only those claims remaining against the bankrupt parties, then, as an alternative to the required submissions under sections 2. and 4. above, the plaintiff may submit a proposed order for the dismissal of the non-bankrupt parties with prejudice and the transfer of the remaining claims against the bankrupt parties to the "Bankrupts Only" docket in the form attached.

c) The plaintiff may at any time submit to the court a proposed order to dismiss his/her case against all parties with prejudice. Plaintiff may also request a dismissal against any or all parties without prejudice; however, notice must be given to all parties, any of whom may file an objection within thirty (30) days thereafter. The court will hold a hearing if deemed necessary.

6.    **TIMING REQUIREMENTS**

Plaintiffs shall submit required documentation and proposed orders to the court in accordance with the schedule set forth:

a) Plaintiffs whose cases were filed during the years 2007,2006, and before July 29,1991 shall file with the court their required papers on or before August 1,2007.

b) Plaintiffs whose cases were filed between July 29,1991 and December 31,1995 shall file with the court their required papers on or before September 1,2007.

c) Plaintiffs whose cases were filed in 1996, 1997 and 1998, shall file with the court their required papers on or before October 1,2007.

d) Plaintiffs whose cases were filed in 1999,2000,2001 and 2002, shall file with the court their required papers on or before November 1,2007.

e) Plaintiffs whose cases were filed in 2003,2004, and 2005 shall file with the court their required papers on or before December 1,2007.

The court may dismiss pursuant to F.R.C.P. 41(b) the cases of any plaintiffs who fail to comply with the requirements set forth.

7.    **SCREENED CASES**

Current litigation efforts in this court and in the silica litigation have revealed that many mass screenings lack reliability and accountability and have been conducted in a manner which failed to adhere to certain necessary medical standards and regulations. The result is that mass screenings create an inherent suspicion as to their reliability. Where screenings have been conducted by the Sheet Metal Occupational Health Institute Trust and other organizations utilizing standards and protocols established by the American Thoracic Society (ATS), the Association of Occupational and Environmental Clinics (AOEC), and other accredited health organizations, there is a larger probability of adequacy for the reliablity foundation necessary for admissibility. This court will therefore entertain motions and conduct such hearings as may be necessary to resolve questions of evidentiary sufficiency in non-malignant cases supported only by the results of mass screenings which allegedly fail to comport with acceptable screening standards.

8.    **EXCLUSIONS**

The cases designated as 2MDL 875 (MARDOC) shall be excluded from the requirements set forth and those actions shall continue to be governed by the requirements of previous orders of this court concerning the management of the MARDOC cases.

9.    **SETTLEMENT CONFERENCES/SUGGESTIONS OF REMAND**

The court intends upon stepping up the pace of settlement conferences and will accordingly issue orders to that effect. Counsel are expected to comply with all requirements of the notice and to be prepared at the conference. All parties shall submit to the court at the time of the first settlement conference in any case a **short** position paper stating their position relative to disease, exposure and damages. Mitigating factors for the purposes of settlement shall also be set forth.

If the parties have failed to achieve settlement following one or more settlement conferences and working with the court, the case may be referred to mediation or, if the court finds that the parties have negotiated in good faith without success, the court may suggest the case for remand. A determination of good faith may not be necessary with regard to all defendants. The court will continue to prioritize malignant and exigent cases.

10.     **MANNER OF SUBMISSIONS**

All submissions to be made to the court pursuant to this order shall be paper filings with copies provided to all remaining viable parties in accordance with Rule 5, F.R.C.P.

IT IS SO ORDERED

Date: 5/31/07

BY THE COURT

James T. Giles                     J.

[Administrative Order No. 12 - Exhibit to Section 5 a)]

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS :
LIABILITY LITIGATION (NO. VI) :     Civil Action No.  MDL - 875

---

### This Document Relates To:

---

## UNITED STATES DISTRICT COURT
## FOR THE (name of Transferor District)

DOE, John and Mary                     :
                                       :
                                       :     Civil Action No. (Transferor Ct. No.)
         v.                            :
                                       :
ABC Corp., et al.                      :

---

## MOTION AND ORDER TO TRANSFER TO "BANKRUPT's ONLY" DOCKET

Plaintiff hereby submits to the Court, in accordance with this Court's Administrative Order No. 12, that the only remaining claims in this action are against defendants in bankruptcy and that the defendant wishes at this time to pursue those claims through the bankruptcy claim process.

Plaintiff therefore moves that this action be transferred to the Court's administrative "Bankrupt's Only" docket. The Plaintiff understands that should there be a change of circumstances, the Plaintiff may, upon compliance with Administrative Order No. 12, petition the Court to have this action reinstated against certain defendants.

Plaintiff further understands that it is Plaintiff's responsibility to submit a final dismissal order to this Court when all claims have been resolved.

SUBMITTED BY:                          SO ORDERED

_____( / / )         _____J.
(Counsel for Plaintiff)                James T. GILES
address                                ( / / )
tel. No.

[Administrative Order No. 12 - Exhibit to Section 5 b)]

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | : | |
| LIABILITY LITIGATION (NO. VI) | : | Civil Action No.  MDL - 875 |

**This Document Relates To:**

## UNITED STATES DISTRICT COURT
### FOR THE (name of Transferor District)

| | | |
|---|---|---|
| DOE, John and Mary | : | |
| | : | |
| v. | : | Civil Action No. (Transferor Ct. No.) |
| | : | |
| ABC Corp., et al. | : | |

## MOTION FOR PARTIAL DISMISSAL AND ORDER TO TRANSFER TO "BANKRUPT's ONLY" DOCKET

Plaintiff hereby submits to the Court, in accordance with this Court's Administrative Order No. 12, that the remaining claims in this action are against bankrupt and non-bankrupt defendants. Plaintiff desires to dismiss with prejudice all claims against the remaining non-bankrupt defendants and pursue those claims remaining against the bankrupt defendants through the bankruptcy claim process.

The remaining non-bankrupt defendants to be dismissed with prejudice are:
(list non-bankrupt defendants to be dismissed with prejudice)

Plaintiff therefore moves that, following the dismissal of the non-bankrupt defendants, this action be transferred to the Court's administrative "Bankrupt's Only" docket.  The Plaintiff understands that should there be a change of circumstances, the Plaintiff may, upon compliance with Administrative Order No. 12, petition the Court to have this action reinstated against certain bankrupt defendants.

Plaintiff further understands that it is Plaintiff's responsibility to submit a final dismissal order to this Court when all claims have been resolved.

SUBMITTED BY:

SO ORDERED

_____ ( / / )
(Counsel for Plaintiff)
address
tel. No.

_____J.
James T. GILES
( / / )