**MDL 875**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JAN - 8 2008

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL ON MULTIDRICT LITIGATION**

In re: Asbestos Products Liability Litigation (No. VI)          **MDL No. 875**

Mary Ellen Harris, Plaintiff and Special
Administrator of the Estate of Thomas
Harris, Deceased

          Plaintiff,

v.

Rapid American Corporation, et al

          Defendants.

Northern District of Illinois
USDC No. 07 C 6055

**RESPONSE TO PLAINTIFF'S MOTION TO VACATE
THE CONDITIONAL TRANSFER ORDER**

      Plaintiff Mary Ellen Harris filed a Complaint on September 10, 2007, in the Circuit Court

of Cook County, Illinois, against numerous defendants alleging that her husband, Thomas Lee

Harris, was injured as a result of exposure to asbestos-containing products manufactured or

supplied by the defendants, including Viad Corp, improperly named therein as "VIAD

CORPORATION f/k/a The Dial Corporation, Individually and as Successor-in-Interest to

Griscom Russell Company" (hereinafter "Viad"). On October 26, 2007, Viad removed this case

pursuant to 28 U.S.C. § 1442(a)(1) to the United States District Court for the Northern District of

Illinois, Eastern Division, where it was assigned to Senior Judge James B. Moran.  Also on

**OFFICIAL FILE COPY**

IMAGED JAN 8   2008

PLEADING NO. 5 3 1 4

October 26, 2007, after filing its Notice of Removal, Viad filed its Notice of Tag-Along Action

in the District Court, and mailed a copy its Notice of Tag-Along Action as an exhibit to Viad's

Notice of Related Action to this Judicial Panel on Multidistrict Litigation.

Plaintiff has alleged injuries caused by equipment Viad, as an alleged successor-in-

interest to Griscom-Russell Company ("Griscom-Russell"), allegedly supplied to the U.S. Navy

during World War II.  Although Viad denies that it is a successor-in-interest to Griscom-Russell,

based on the allegations of the complaint, Viad has asserted a military contractor defense that

immunizes Griscom-Russell, and therefore Viad, from liability for those injuries, and entitles

Viad to litigate its defense in federal court.  Viad submitted sworn affidavits from Rear Admiral

Ben J. Lehman (retired) and Charles R. Cushing with documentation supporting its military

contractor defense and entitlement to removal to the District Court.  Based on this evidence,

Viad's removal right was recognized and validated by Senior District Court Judge Moran in his

order entered on December 18, 2007, denying Plaintiff's motion to remand, a copy of which is

attached hereto as Viad's Exhibit A.[1]

Plaintiff's motion to vacate the conditional transfer order must be denied because Viad

has met its burden of showing it is entitled to federal officer removal under 28 U.S.C.

§1442(a)(1).  Plaintiff's sole argument in opposition to transfer is her belief that Viad's removal

was improper; however, Plaintiff's belief is mistaken for all the reasons set forth in the order

denying remand.  As the District Court correctly notes, Viad need not prove its federal defense in

order to perfect removal.  *Ex. A, p. 6.*  Further, the military contractor defense is a colorable

defense in state law failure-to-warn cases.  *Id.*  And, any attempts to attack the veracity or

---

[1] Although Plaintiff filed a motion to reconsider the denial of her remand motion on December 26, 2007, Plaintiff's motion to reconsider is not well founded and Viad is in the process of preparing its opposition thereto in advance of the February 12, 2008 reconsideration hearing date.

2

accuracy of Viad's affiants are "inappropriate ... at this juncture." *Ex. A, p. 7.*

A. **The Federal Officer Removal Statute is Liberally Construed in Favor of Removal**

A removal based on 28 U.S.C. § 1442(a)(1) is different from other grounds for removal. It allows removal even where the complaint has a non-federal cast. *See Paldrmic v. Altria Corporate Services, Inc.,* 327 F.Supp.2d 959, 963 (E.D. Wis. 2004)("suits against federal officers and those whom they direct may be removed despite the nonfederal cast of the complaint; the federal question element is satisfied if the defense depends on federal law."); *see also United States v. Todd,* 245 F.3d 691, 693 (8th Cir. 2001). This is because "the right to removal 'is made absolute whenever a suit in a state court is for any act 'under color' of federal office, regardless of whether the suit could originally have been brought in a federal court." *Todd,* 245 F.3d at 693 (*citing Willingham v. Morgan,* 395 U.S. 402, 406 (1969)). As the Supreme Court recognized in *Willingham,* "[o]ne of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court. The officer need not win his case before he can have it removed." *Willingham,* 395 U.S. at 407-08. If removal is allowed only where the removing party has "a clearly sustainable defense," "[t]he suit would be removed only to be dismissed." *Id.*

While Viad has the burden of establishing federal officer jurisdiction, courts have consistently held this burden does not require defendants to prove their case, but only requires them to offer sufficient evidence to justify presentation of their federal defense in a federal forum. *See, e.g., Id.* at 407-08. S*ee also Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006)("[W]hen federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal."). In fact, the Seventh Circuit has recognized this critical aspect of the burden in federal officer removals:

> Once the federal defendant has a plausible federal defense, removal is appropriate so that the federal court may determine whether the defense succeeds. A federal defendant need not show that he is entitled to *prevail* in order to have access to the federal forum.

*Venezia*, 16 F.3d at 212 (*citing Mesa*, 489 U.S. at 133, and *Willingham,* 395 U.S. at 406-07); *see also Todd*, 245 F.3d at 693; *Nesbiet v. General Electric Co.*, 399 F.Supp.2d 205, 210-11 (S.D.N.Y. 2005)(recognizing a federal defense "may be colorable even if the court ultimately rejects it"); *Ferguson v. Lorillard Tobacco Co.*, 475 F.Supp.2d 725, 731 (N.D. Ohio 2007)("At this stage I consider only whether Viad invokes a colorable federal defense, not whether the defense will succeed."); *McAboy v. IMO Industries,* No. C05-1241L, 2005 WL 2898047, *4 (W.D.Wash. Oct. 27, 2005)("Importantly, this order is deciding not whether [defendant] actually satisfies the requirements for the federal contractor defense, but rather only whether defendant can make a colorable claim that it will. [Defendant] has done so: it has raised an inference that the government controlled the design and warning labels, that it conformed to the government specifications, and that the government had superior knowledge about the potential health hazards."); *Contois v. Able Industries, Inc.*, 3:07CV01238(AWT), 2007 WL 3355680, *16 (D. Conn. Nov. 13, 2007)("[Defendant] raises a colorable federal defense. Whether that defense will be successful is an issue for trial, not one that the court should address on a motion to remand.").

Plaintiff's cites to the general tenets that federal courts have limited jurisdiction, "possess only that power authorized by Constitution and statute," and that it is "to be presumed that a cause lies outside this limited jurisdiction... [with] the burden of establishing the contrary rest[ing] upon the party asserting jurisdiction." (Pl.'s Mem. p. 4.) This approach, suggesting this Court resolve all doubts in favor of remand, has been rejected by the Supreme Court when a federal officer removal is at issue.  In the Seventh Circuit, a defendant need only assert a "plausible federal defense" for a federal officer removal to be appropriate. *See Venezia*, 16 F.3d

at 212.  It is then up to the federal court "to determine whether the defense succeeds."  *Id.*

As the Fifth Circuit recognized in *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d

387, 398 (5th Cir. 1998), applying *Willingham,* the right to federal officer removal should not be

frustrated by "a grudgingly narrow interpretation of the removal statute."  It is well established

that the Supreme Court has "admonish[ed] that the [federal officer removal] statute's 'color of

federal office' requirement is neither 'limited' nor 'narrow,' but should be afforded a broad

reading so as not to frustrate the statute's underlying rationale."  *Id.*  The Fifth Circuit goes on to

explain:

> It is important to note that the defendants need not prove the asserted defense, but
> need only articulate its 'colorable' applicability to the plaintiff's claims.  'One of
> the primary purposes of the removal statute – as history clearly demonstrates –
> was to have such defenses litigated in the federal courts … In fact, one of the
> most important reasons for removal is to have the validity of the defense of
> official immunity tried in a federal court. *The officer need not win his case before
> he can have it removed.'*

*Id.* at 400 (emphasis in original) (quoting *Willingham*).

As the *McAboy* court recognized, in a closely analogous situation, where it denied that

plaintiff's remand motion, the plaintiff "asserts too high a standard for removal pursuant to the

federal contractor defense … [which] was not intended to be granted only when the government

exercised absolute control over every aspect of a product's design." *McAboy*, 2005 WL 2898047,

at *4.  There, like here, the defendant argued that "because '[t]he Navy determined the nature of

hazards to be subject to any precautionary labeling and the content of any such labeling' [the

defendant] therefore will have a federal defense to [plaintiff]'s claims."  *Id.*

Viad has presented facts and evidence sufficient to allege a "plausible" government

contractor defense, which entitles it to litigate and ultimately prove this defense in federal court,

as evidenced by the District Court's order denying remand.  *See Ex. A.*  Accordingly, Viad's

removal was proper and Plaintiff's motion to vacate must be denied.

**B.** **Viad Is Entitled to Removal Under 28 U.S.C. §1442(a)(1) Because Plaintiff Alleges Injury Caused By Equipment Viad Allegedly Manufactured and Supplied Under The Direction of the U.S. Navy**

Viad has established the necessary elements to remove this case to federal court. Viad's affidavits and documents submitted to the District Court show that Griscom-Russell complied with detailed specifications of the U.S. Navy and U.S. Maritime Commission when manufacturing any equipment for Navy vessels, and that the Navy controlled any instructions or warnings relating to equipment on Navy vessels. Viad has raised a plausible military contractor defense and is entitled to have that defense litigated in federal court.

Several courts have recently denied remand motions in factually similar cases, some involving removals by Viad, where plaintiffs made the same or similar arguments regarding failure to warn claims not being removable. *See e.g., Ferguson,* 475 F. Supp.2d at 729; *Machnik,* 2007 WL 2705757, at *3-*4; *Nesbiet,* 399 F.Supp.2d at 212-13; *Contois,* 2007 WL 3355680, at *16-*17; *Ballenger v. Agco Corp.*, No. C06-2271 CW, 2007 WL 1813821 (N.D. Cal. June 22, 2007).

For example, in *Ferguson,* Viad removed an asbestos personal injury case based on allegations Mr. Ferguson was exposed to Griscom-Russell equipment on board a Navy vessel, the *U.S.S. Paine*. Viad provided affidavits of Admiral Lehman and Dr. Cushing in opposition to the remand motion. The court overruled plaintiffs' motion to strike those affidavits, finding both witnesses to have sufficient background and experiences to support their affidavits. *See Ferguson,* 475 F. Supp.2d at 728 ("Despite the understandable lack of first-hand experience with the *Paine*, the affiants have ample experience and familiarity with what they are talking about– how equipment was obtained, delivered, and installed, and how ships of that type were

constructed, to express their expert opinions.").

The court in *Ferguson* also denied plaintiff's remand motion based on its findings that

Viad raised a colorable military contractor defense based on evidence of the Navy's detailed

involvement in the equipment design process and evidence that Griscom-Russell could not

deviate from Navy specifications (including Admiral Lehman's Affidavit).  *Id.* at 729-31.

Likewise, the court in *Machnik* came to the same conclusion.  There, Viad, later joined

by co-defendant GE, removed an asbestos personal injury case based on substantially identical

allegations of fact and presented similar affidavits, including one from Admiral Lehman, in

support of removal.  The *Machnik* court held that a colorable military contractor defense was

established and denied the motion for remand explaining:

> To prove the "reasonably precise specifications" requirement, GE must show that
> the government actively participated in creating the specifications for the
> products and warning labels GE supplied, and that the government imposed these
> specifications on GE. ... GE satisfied this burden through the Affidavit of Ben J.
> Lehman, ... which avers that the Navy exercised complete control over every
> aspect of all equipment supplied by contractors, including warnings, and that any
> materials or equipment supplied that was inconsistent with the Navy's
> specifications would have been rejected.
> * * *
> At this preliminary stage, Lehman's affidavit sufficiently establishes that the U.S.
> Navy imposed "reasonably precise specifications" on GE, both in the design of
> the equipment it supplied and in the content of the accompanying written
> materials, including warnings.
> * * *
> Essentially, GE must demonstrate that the navy "received exactly what it
> sought." ... Again, the Lehman affidavit satisfies this element; the affidavit states
> that any materials supplied by a contractor that were not entirely consistent with
> the Navy's extensive specifications probably would have been rejected.

*Machnik*, 2007 WL 270575, at *2 (citations omitted).  *See also Ballenger,* 2007 WL 1813821, at

*3 (denying remand motion where evidence showed Navy controlled asbestos warnings);

*Nesbiet,* 399 F.Supp.2d at 209 (holding removal was warranted under federal officer removal

statute based on evidence the Navy controlled asbestos warnings).

Here, Plaintiff cites *Westmiller v. Imo Industries, Inc.,* No. C05-945RSM, 2005 WL 2850334 (W.D. Wash. Oct. 20, 2005), and *Fortier v. Ampco-Pittsburgh Corp.*, No. 3:07-cv-00005 (WWE) (D. Conn. Mar. 5, 2007) to attack Admiral Lehman's affidavit as being a sufficient basis for the fact that Griscom-Russell acted under the direction of a federal officer. (Pl.'s Mem. pp. 8-12.)  Neither of these cases supports Plaintiff's motion to vacate and are distinguishable on their facts.

In *Westmiller*, the court struck the affidavit of Dr. Cushing based on the erroneous conclusion that his statements about the required specifications were speculative absent the actual specifications.  The court also found Admiral Lehman's affidavit did not relate to the time period at issue in the *Westmiller* case (i.e., the 1950s, and Admiral Lehman's experience occurred in the 1940s).  *See Westmiller,* 2005 WL 2850334, at *1.  As noted above and recognized by the court in *Westmiller*, other courts have accepted affidavits without requiring supporting documentation.  *See Nesbiet*, 399 F.Supp.2d at 212-13; *Ballenger*, 2007 WL 1813821, at *3.  Here, Viad is being sued as an alleged successor to Griscom-Russell, a defunct company that allegedly supplied equipment to the government in the 1940s and 1950s.  It is unreasonable to punish Viad for not having records regarding a company it denies liability for, in relation to activities that occurred over half a century ago, especially before Plaintiff is required to prove the very allegations of exposure upon which liability is premised.  As for the *Westmiller* court's position regarding the sufficiency of Admiral Lehmans's affidavit, Admiral Lehman's experience in the 1940s is directly relevant to the issues in this case, where Plaintiff claims asbestos exposure from equipment Griscom-Russell supplied to the Navy in the 1940s, when Mr. Harris's ship, the *U.S.S. Montrose,* was constructed.

Similarly, this Panel should not be influenced by *Fortier* because that court ignored any

evidence submitted by defendants in support of removal, and focused on a single, irrelevant

document submitted by that plaintiff relating to labeling hazardous chemicals, which is the same

document Plaintiff has filed in this case as Exhibit 6 to her memorandum in support of her

motion to vacate. *See Fortier*, No. 3:07-cv-00005, at p 5. Plaintiff's Exhibit 6 is not applicable

to mechanical equipment. *See Contois,* 2007 WL 3355680 at *19 ("Uniform Labeling Program-

Navy would not have applied to product manufacturers … that contracted with the Navy

because, by its terms, it 'governed the labeling of hazardous chemicals by Navy personnel, not

outside product manufacturers.'"). This critical distinction regarding the significance of

Plaintiff's Exhibit 6 concerning hazardous chemicals versus requirements for mechanical

equipment, was also validated by the *Machnik* court, sitting in the same jurisdiction as *Fortier*

and decided six months later*,* where *Machnik* denied remand noting:

> The Court recognizes that another Court in this district, in *Fortier v. Ampc -Pittsburgh
> Corp.*, Case NO. 07-cv-5, addressed similar issues and nearly identical facts on a motion
> to remand the case to state court. Although that Court granted the plaintiffs' motion to
> remand, this Court respectfully disagrees with his decision. GE was also a defendant in
> that case, and avers here that it submitted the same evidence of a federal defense in both
> cases. *Fortier*, however, did not analyze GE's evidence concerning the specifications the
> Navy issued to its contractors. Rather, that ruling focused on evidence of the Uniform
> Labeling Program ("ULP"), which governed the labeling of hazardous chemicals by
> Naval personnel, not outside product manufacturers. …

*Machnik*, 2007 WL 270575, at *3 n.3.

Viad successfully established its federal officer removal based on the military contractor

defense in this matter (*see* Ex. A), as well as in other jurisdictions, most recently in *Ferguson* and

*Machnik.* Plaintiff's argument against removal focuses on a claim that the Navy did not prohibit

Griscom-Russell from warning about asbestos hazards, which Viad refutes with the affidavits

and other evidence submitted to this Court that demonstrate the Navy controlled any asbestos

warnings on Navy vessels. The resolution of this debate, including the sufficiency and veracity

of any affiants' statements, goes to the merits of Viad's military contractor defense, not to whether Viad has asserted a plausible defense, which it has. Viad has established a colorable federal defense and is entitled to litigate and ultimately prove its defense in federal court. Accordingly, Plaintiff's motion to vacate must be denied.

>**1.** **Viad Is Entitled to Allege a Military Contractor Defense Because It Allegedly Manufactured Equipment For The U.S. Navy According to Detailed Navy Specifications As Required By Law**

Viad has alleged a colorable federal defense. Plaintiff argues Viad, through the acts of Griscom-Russell, was not prohibited from warning about asbestos hazards, therefore it cannot show the government required it to do anything inconsistent with state law. However, the affidavits of Lehman and Cushing state precisely what Plaintiff says is missing –that the Navy prohibited Viad from warning. Plaintiff's motion to vacate is nothing more than another attack on the merits of Viad's military contractor defense, which is not the issue before this Panel. The issue at hand is solely whether Viad has pleaded a plausible federal defense supporting its federal officer removal, not whether that defense will prevail.

The military contractor defense shields a contractor acting under the direction and control of the government with the same immunity that is available to the government officers themselves who were directing and controlling the contractor. *See Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988). Courts use a three-part test to assess removability based on the government contractor defense: (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. *Id.* at 512.

Plaintiff argues this case must be remanded because Viad cannot show that the Navy ever

prohibited it from warning as required by the "modified *Boyle* test" some circuits have adopted

requiring proof the "United States exercised its discretion and approved the warnings" before a

defendant can prove it is entitled to a military contractor defense.  *See Tate v. Boeing*

*Helicopters*, 55 F.3d 1150, 1156-57 (6th Cir. 1995); *Kerstetter v . Pacific Scientific Co.*, 210

F.3d 431, 438 (5th Cir. 2000) ("This is a modified *Boyle* test."); *Oliver v. Oshkosh Truck Corp.*,

96 F.3d 992, 1003 (7th Cir. 1996).  This argument is centered on the theory that state law cannot

be displaced where there is no evidence that the government contractor could not comply with

both its contractual obligations to manufacture products according to U.S. Navy specifications

and its alleged duties under state law to warn of asbestos hazards.[2]

Viad has met the test of showing both that the Navy approved reasonably precise

specifications for any equipment that Griscom-Russell may have manufactured for the Navy,

including warnings, and that any such equipment conformed to those specifications.  (Ex. A.)

The court in *Ferguson* came to this very conclusion based on evidence similar to that presented

here: "Viad claims, and its affidavits support, that any warnings on the product itself were

dictated by the Navy.  Therefore, no deviation from the warnings or lack thereof was permitted

(making it difficult for the warnings to be anything the Navy did not already know)."  *See*

*Ferguson*, 475 F. Supp.2d at 730.  *See also, Machnik, supra.*

In *Nesbiet*, the court considered and rejected the same argument plaintiff is making here –

that defendant GE was not entitled to remove the case to federal court because there was no

evidence the Navy prohibited it from warning about asbestos hazards.  The court rejected that

argument based on Admiral Lehman's affidavit attesting that the Navy's control over every

aspect of equipment "included the decision of what warnings should or should not be included,"

---

[2] However, Viad denies that Griscom-Russell owed any duty to warn anyone of asbestos hazards
associated with insulation someone else sold to the Navy over 60 years ago, especially because the Navy
itself knew of those hazards.

and that the Navy "determined the nature of the hazards to be subject to any precautionary labeling and the content of such labeling." 399 F.Supp2d at 207-08.

In *Ballenger,* the court relied on similar testimony from Admiral Horne to deny plaintiffs' remand motion in an asbestos personal injury case alleging exposure while repairing a Navy vessel on the premises of removing defendant Todd Shipyards. 2007 WL 1813821, at *3-*4. The *Ballenger* court ruled defendant met all of the elements for federal officer removal, based on the affidavit of Admiral Horne stating "the Navy dictated every aspect of the design, manufacture, installation, overhaul, written documentation and warnings associated with its ships." *Id.* There, as do Viad's affiants here, Admiral Horne stated that no private contractor could have placed a warning anywhere aboard an active duty Navy ship except by permission of the Navy. *Id.* The court also rejected plaintiff's argument that defendant could not show it acted under the direction of federal officers unless it produced actual contractual documentation of the work it performed on behalf of the U.S. Navy, concluding that Admiral Horne's affidavit was sufficient to support the removal. *Id.* The court did not require defendant to produce any additional evidence that the Navy prohibited the defendant from warning about asbestos (which is exactly what Plaintiff here claims is required), again finding the affidavits sufficed to show "direct and detailed control" by the Navy over the defendant. *Id.* Based on this same evidence, the court found defendant had established a colorable federal defense, noting "the officer need not win his case before he can have it removed." *Id.* (quoting *Willingham, supra*).

Plaintiff has submitted one document, SECNAV Instruction 5100.8 (Pl.'s Ex. 6), to support her claim that the Navy never prohibited Viad from warning about asbestos hazards. However, this document does not say or mean what Plaintiff's counsel claims it means. Plaintiff has not produced anyone with the knowledge or expertise to interpret this document, which

likely accounts for the mischaracterization of its significance. *See, e.g., Nesbiet*, 399 F.Supp.2d at 208-09 (rejecting plaintiffs' attempt to refute the affidavit of Admiral Lehman with military specifications plaintiff mischaracterized as requiring contractors to warn of asbestos hazards). Admiral Lehman, however, has reviewed this document on behalf of Viad, and has determined it is either irrelevant or, in fact, supports his position that the Navy required standardized warnings and information, had final approval of any and all warnings and instructions, and prohibited gratuitous warnings from equipment manufacturers about other companies' asbestos products. *See Nesbiet*, 399 F.Supp.2d at 209 (military specifications provided by plaintiff as evidence of a duty to warn "appear to support, rather than undercut, Lehman's affidavit"); *Contois,* 2007 WL 3355680 at *19 (Uniform Labeling Program-Navy does not apply to product manufacturers).

Plaintiff acknowledges that "The Seventh Circuit has not had occasion to examine the military contractor defense in an asbestos failure to warn case." (Pl.'s Mem. p. 11.)  Plaintiff's citation to *Hammond v. North American Asbestos Corp.*, 454 N.E.2d 210, 217 (1983), for the proposition that the Illinois Supreme Court has held "that where a defendant cannot cite a specific prohibition against warning, and ... a defendant placed no warning on its non-government products, it is not relieved of its duty to warn," has absolutely no application to this military contractor analysis, by definition, because there were no government products at issue in *Hammond.  Compare Oliver*, 96 F.3d at 1004 (where Seventh Circuit affirmed summary judgment for contractor of transport vehicle based on military contractor defense as to both design defect and failure to warn claims).

As for the cases Plaintiff relies on as precedent for rejecting Viad's federal officer removal, these cases are clearly distinguishable and have no bearing on the determination of whether Viad is entitled to litigate its military contractor defense in federal court based on the

evidence presented in this case.

Plaintiff cites *In re Joint Eastern and Southern Dist. New York Asbestos Litig.*, 897 F.2d 626, 629 (2nd Cir. 1990)[3], as modifying the *Boyle* factors in an asbestos failure to warn case, to require vendors asserting a military contractor defense to: "(1) establish government control over the nature of product warnings; (2) demonstrate its compliance with the Government's directions; and (3) demonstrate its communication to the Government of all product dangers known to it but not to the Government." (Plaintiff's Memo., p. 13). Plaintiff's reliance upon this decision for any value other than setting forth the "modified *Boyle* test" is misplaced. First, Eagle-Pitcher was a supplier of asbestos cement, not mechanical equipment, an important factual distinction. Second, that case involved resolution of a motion for summary judgment, which involves a much different analysis and burden of proof as to the merits of the defense.

Likewise, Plaintiff's reliance on *In re Hawaii Federal Asbestos Cases*, 960 F.2d 806, 812 (9th Cir. 1992), and *Dorse v. Eagle-Pitcher Indus.*, 898 F.2d 1487, 1489 (11th Cir. 1990), have no application here. The former suit was an appeal from jury verdicts, while the latter reviewed entries of summary judgment, both involving different burdens of proof and stages of litigation not presently at issue.

Plaintiff does not argue that the "modified *Boyle* test" is actually followed in the Seventh Circuit, rather she cites some circuits that apply that test in failure to warn cases, and some courts that have remanded federal officer removals for lack of evidence that the government prohibited warnings. Notably, even in circuits where Plaintiff claims the "modified *Boyle* test" is followed, including the Second and Ninth Circuits, district courts have still denied remand motions in failure to warn cases where, as here, the evidence shows the Navy did prohibit asbestos

---

[3] Plaintiff has mistakenly entitled this matter as "Grispo v. Eagle Picher Indus., Inc." on p.10 of her memorandum in support of her motion to vacate.

warnings.

In *Nesbiet*, located in the Second Circuit, the court determined defendant GE presented a colorable military contractor defense because Admiral Lehman's affidavit in that case "establishes for the purposes of this motion that the Navy's specifications controlled all aspects of the design and manufacture of marine steam turbines, including the nature of warnings to be affixed to or included with these turbines." 399 F.Supp.2d at 211-12. Further noting Admiral Lehman's assertion that any deviation from those specifications would result in rejection, the court concluded "[t]his proffer is sufficient" to establish the "colorable defense" test for federal officer removal. *Id.* at 212.

In *Ballenger*, located in the Ninth Circuit, the court found defendant had a colorable federal defense, noting defendant was not required to produce detailed declarations regarding whether the Navy "affirmatively prohibited any kind of warning." *See Ballenger*, 2007 WL 1813821, at *3. Though this finding was in the context of analyzing whether defendant was acting under the direction of a federal officer (the court decided it was), the court referenced that conclusion in also concluding defendant had a colorable federal defense under *Boyle.* *Id.*

As for the two prior decisions granting remand that are cited by Plaintiff and involved Viad as a defendant: 1) *Fortier,* was decided in Connecticut, but was subsequently distinguished by the *Machnik* court in the same district, which declined to follow and denied the remand motion; and 2) *Westmiller,* was decided in Washington, which is the same jurisdiction where the *McAboy* court denied remand in a factually similar application of federal officer removal.

The remaining cases relied on by Plaintiff in support of her claim that Viad is not entitled to assert a military contractor defense are also distinguishable. Plaintiff places great emphasis on the recent opinion in *Weese v. Union Carbide Corp.*, 2007 U.S. Dist. LEXIS 73970 (S.D. Ill.

Oct. 3, 2007), as somehow precluding Viad from ever being able to assert a military contractor defense. First, the *Weese* opinion was decided in the Southern District of Illinois, and is not binding precedent on the Northern District of Illinois, to where this case was removed. Second, the *Weese* decision is factually distinguishable because it was a premises liability case and this is a product liability case, which is a different application of federal officer removal. Following another premises liability case, *Faulk v. Owens Corning Fiberglass Corp.,* 48 F.Supp.2d 653 (E.D. Tex. 1999) (finding no evidence the federal government controlled asbestos warnings in industrial facilities where various products were being manufactured according to government specifications), the *Weese* court rejected those defendants' attempt to transform their entire facilities into the "products" being manufactured under the direction of the federal government. Finally, the *Weese* opinion should not be considered because there is no indication what, if any, evidence Union Carbide produced in support of its federal officer removal, which Union Carbide reportedly abandoned when it withdrew its notice of removal.

In *Hilbert*, the court found the defendants did not submit any affidavits or documents in response to documents submitted by plaintiffs they claimed showed the Navy permitted warnings to be placed on products. 486 F.Supp.2d at 141-42; *see also Westbrook v. Asbestos Defendants*, No. C-01-1661, 2001 WL 902642 (N.D. Cal. July 31, 2001) (finding defendant had no colorable military contractor defense because it "has not shown that the Navy required it to refrain from issuing warnings").

The facts here are clearly distinguishable as Viad has provided the Court with substantial evidence the Navy prohibited Griscom-Russell from affixing warnings to any equipment it may have supplied to the Navy. In fact, providing warnings is the third prong of the *Boyle* test – i.e., the supplier is required to warn the United States about hazards known to the supplier but not

known to the United States.  Viad has submitted evidence that the Navy was a leader in the field

of occupational medicine relating to asbestos hazards by the time Griscom-Russell allegedly

supplied equipment to the Navy in the 1940s.  Accordingly, if Viad owed no duty to warn the

Navy of any asbestos hazards, it could not have owed Mr. Harris a duty to warn.  Whether Viad

can prove it did not need to warn the Navy of asbestos hazards is an issue that should be litigated

in federal court with the other elements of Viad's military contractor defense.

### 2. There is a Causal Nexus Between Plaintiff's Claims and Defendant's Conduct Under Color of Federal Office

Plaintiff also argues Viad cannot show a causal nexus because it cannot show the alleged

"failure to warn" was a direct result of compliance with federal authority.  For the same reasons

Viad can show a colorable military contractor defense, it can also establish a causal nexus for

purposes of § 1442(a)(1).

Viad, through Griscom-Russell, allegedly supplied equipment to the Navy for the *U.S.S.*

*Montrose*.  The Navy prohibited Griscom-Russell from warning about asbestos hazards,

according to the affidavits filed herewith in support of removal.  Plaintiff claims Viad owed a

duty to warn Mr. Harris of asbestos hazards while in the Navy on board the *U.S.S. Montrose*, and

that the lack of a warning caused his injuries.  The causal nexus is clear – Griscom-Russell could

not warn Mr. Harris because the Navy prohibited it from warning.  Viad has established a causal

nexus sufficient for purposes of removal.  *See, e.g., Ferguson*, 475 F. Supp.2d at 731 (finding a

causal connection where defendant's allegedly injury-causing evaporators were supplied within

the scope of its duties as a Navy contractor); *Machnik*, 2007 WL 2705757, at *4 (finding "causal

nexus" between defendant's actions and plaintiffs' failure to warn claims for purposes of remand

motion citing Lehman affidavit); *Nesbiet*, 399 F.Supp.2d at 212 (finding causal nexus based on

Admiral Lehman affidavit establishing the Navy controlled the nature of warnings on

equipment); *Ballenger*, 2007 WL 1813821, at *3-*4 (finding causal nexus because Admiral Horne's affidavit showed Navy controlled asbestos warnings).

Here, Viad submitted evidence to the District Court showing that the Navy prohibited Griscom-Russell from warning about asbestos hazards associated with insulation Mr. Harris may have worked with or around on the *U.S.S. Montrose*. Viad has shown it was not allowed to deviate from Navy specifications, under penalty of law. This evidence raises the same inference found in *Nesbiet,* that the "alleged failure to warn of the dangers of asbestos resulted from the Navy's prohibition of any such warning." *Nesbiet*, 399 F.Supp.2d at 212.

Plaintiff's motion to vacate should be denied because Viad has submitted sufficient evidence to raise a colorable military contractor defense, and to show a causal nexus between the alleged failure to warn and Plaintiff's alleged injuries, thereby making Viad's removal to federal court proper. Plaintiff's arguments in support of vacating the transfer of this case go to the merits of Viad's military contractor defense. As the District Court acknowledged in denying Plaintiff's motion to remand, Viad only needs to show it is entitled to assert that defense to proceed in federal court, not that it can prove it. *Ex. A, p. 3.* Plaintiff's motion to vacate should be denied so Viad can litigate its military contractor defense in federal court, which is its right under § 1442(a)(1).

**C.   Viad's Federal Officer Removal Is Not Meritless As Evidenced By Caselaw From Other Jurisdictions Allowing Removals Brought By Military Contractors To The Navy Under Substantially Similar Circumstances**

Contrary to Plaintiff's claims, Viad has established a jurisdictional basis to be in federal court. In fact, Viad's right to be in federal court was recognized by *Ferguson* and *Machnik,* two opinions Viad provided to plaintiff's counsel prior to the removal of this case. Plaintiff has completely disregarded the authorities cited by Viad in support of removal, wherein removals

substantially similar to Viad's, including ones previously asserted by Viad, have been validated and accepted by reviewing courts. *See e.g., Ferguson*, 475 F. Supp. 2d at 731 (federal officer removal of asbestos injury lawsuit allowed for evaporator manufacturer that supplied product in accordance with Navy specifications); *Machnik*, 2007 WL 2705757, at *4 (Navy ship equipment manufacturers' federal officer removal allowed in asbestos personal injury claim involving state law failure to warn claims); *Nesbiet*, 399 F.Supp.2d at 213 (federal officer removal by Navy ship turbine manufacturer was warranted in asbestos personal injury lawsuit); *Crocker v. Borden, Inc.*, 852 F. Supp. 1322 (D.C. La. 1994) (government contractor allowed to remove asbestos-related claims when it shows it was acting under direction of the Navy); *Pack v. AC&S, Inc.*, 838 F.Supp. 1099 (D.C. Md. 1993) (removal of asbestos personal injury lawsuit against manufacturer of turbines supplied to government allowed); *Fung v. Abex Corp.*, 816 F. Supp. 569 (D.C.Cal. 1992) (government contractor may be "acting under" officer of United States for purposes of removal statute when Secretary of Navy exercised direct and detailed control over submarine construction).

Plaintiff's failure to address Viad's authorities is a tacit admission of their validity. Plaintiff has confused Viad's burden of establishing federal officer jurisdiction, namely proof of the availability of a plausible federal defense (here, the military contractor defense), with a premature and improperly heightened burden of actually proving the defense at trial. Plaintiff's position is tantamount to requiring Viad to prove its immunity defense within the thirty days its responsive pleading is required, absent any proof from Plaintiff establishing the allegations of her pleadings. In other words, Plaintiff is requiring Viad to prove its defense before Plaintiff is required to prove liability and damages, which is undoubtedly "too high a standard for removal pursuant to the federal contractor defense." *McAboy*, 2005 WL 2898047, at *4.

19

**D.      The MDL Has No Bearing On The Decision Before This Court And Should Not Be A Factor In Ruling On Plaintiff's Motion To Remand**

Plaintiff speculates Viad only removed this action "to take advantage of the inherent delay" when an asbestos case is removed to federal court and to "get [this case] away from any court that might possibly give it a trial date in the near future." (Pl.'s Mem. pp. 3.) As clearly established above, Viad removed this case because it has a federal defense to Plaintiff's claims, which Viad is entitled to litigate and ultimately prove in federal court. Regardless, a defendant's subjective motives are irrelevant in ruling on a remand motion. *See In re Maine Asbestos Cases*, 44 F.Supp.2d 368, 374 n.2 (D. Me. 1999) ("[T]he Supreme Court has declared subjective motives irrelevant on the remand decision, and it is not for this court to fashion a different rule tailored specifically to the demands of mass tort litigation.").

The only issue here is whether Viad properly removed this case to federal court. The existence of the MDL and what happens to the lawsuit after removal has no bearing on this determination and should not be a factor considered in ruling on a remand motion.

Plaintiff opposes transfer to the MDL out of fear that it is an unjust or inefficient forum and that Viad seeks to avail itself of what has been colloquially referred to as the "black hole" of the federal asbestos MDL. To the contrary, the MDL is the appropriate and an adequate venue for this litigation. Furthermore, Plaintiff's right to a trial by jury would be alive and well within MDL 875, if a transfer is ordered. This case could be returned for trial to the transferor court, where Plaintiff has admitted that "If the remand motion was denied, Plaintiff would gladly go to trial before [the district] court." (Pl.'s Mem. p. 3.)

For all of the reasons set out above and based on the evidence filed herewith, Viad respectfully request that Plaintiff's Motion to Vacate be denied.

DATED: __1/4/08__

**FOLEY & MANSFIELD, P.L.L.P.**

By:_____
      Robert J. Brummond    #6184723
      John Mark Mooney    #6292167
      Christina E. Dubis     #6242820
      1001 Highlands Plaza Dr. W., Suite 400
      St. Louis, MO 63110
      (314) 645-7788
      (314) 645-9945 [FAX]
      **Attorneys for Defendant Viad Corp**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JAN - 8 2008

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDRICT LITIGATION

**In re: Asbestos Products Liability Litigation (No. VI)**                    **MDL No. 875**

Mary Ellen Harris, Plaintiff and Special
Administrator of the Estate of Thomas
Harris, Deceased

                        Plaintiff,                    Northern District of Illinois
                                                      USDC No. 07 C 6055

v.

Rapid American Corporation, et al

                        Defendants.

### CERTIFICATE OF SERVICE

The undersigned certifies that on **January 4, 2008** Defendant Viad Corp's Response to

Plaintiff's Motion to Vacate the Conditional Transfer Order was sent via overnight mail to the Clerk

of the United States Judicial Panel on Multidistrict Litigation, and sent via U.S. Mail to all counsel

reflected on the attached Panel Service List (Excerpted from CTO-295).

**FOLEY & MANSFIELD, P.L.L.P.**

By: _____

Robert J. Brummond        #6184723
John Mark Mooney          #6292167
Christina E. Dubis        #6242820
1001 Highlands Plaza Dr. W., Suite 400
St. Louis, MO 63110
(314) 645-7788
(314) 645-9945 [FAX]
**Attorneys for Defendant Viad Corp**

RECEIVED
CLERK'S OFFICE

2008 JAN -7 A 10: 43

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served upon all parties
listed on attached Panel Service List by U. S. Mail on the 4th day of January, 2008.

_____

1

**IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)**                    MDL No. 875

## PANEL SERVICE LIST (Excerpted from CTO-295)

Mary Ellen Harris, etc. v. Rapid-American Corp., et al., N.D. Illinois, C.A. No. 1:07-6055

Richard C. Binzley
THOMPSON HINE LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Robert J. Brummond
FOLEY & MANSFIELD
1001 Highlands Plaza Drive
West
Suite 400
St. Louis, MO 63110

Kathy Byrne
COONEY & CONWAY
120 North Lasalle Street
30th Floor
Chicago, IL 60602

Edward J. Cass
GALLAGHER SHARP
FULTON & NORMAN
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC 20001

David A. Damico
BURNS WHITE & HICKTON
Four Northshore Center
106 Isabella Street
Pittsburgh, PA 15212

Raymond P. Forceno
FORCENO GOGGIN
& KELLER
1528 Walnut Street
Suite 900
Philadelphia, PA 19102

Ellen B. Furman
GOLDFEIN & HOSMER
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Susan M. Hansen
BROWNSON & BALLOU
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

Reginald S. Kramer
OLDHAM & DOWLING
195 South Main Street
Suite 300
Akron, OH 44308-1314

David C. Landin
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
LOCKS LAW FIRM LLC
1500 Walnut Street
Philadelphia, PA 19102

John Mark Mooney
FOLEY & MANSFIELD PLLP
39 South La Salle Street
Suite 1110
Chicago, IL 60603

Ronald L. Motley
MOTLEY RICE LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

John J. Repcheck
MARKS O'NEILL O'BRIEN
& COURTNEY PC
Gulf Tower, Suite 2600
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
ROVEN-KAPLAN LLP
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
VORYS SATER SEYMOUR
& PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008

MDL No. 875 - Panel Service List (Excerpted from CTO-295) (Continued)


Neil Selman
SELMAN BREITMAN
& BURGESS
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
KELLEY JASONS MCGUIRE & SPINELLI LLP
Centre Square West
15th Floor
Philadelphia, PA 19102

Robert E. Swickle
JAQUES ADMIRALTY
LAW FIRM PC
1370 Penobscot Building
645 Griwsold Street
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226-4192

Andrew J. Trevelise
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

James K. Weston II
TOM RILEY LAW FIRM
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

*cH*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MARY ELLEN HARRIS, Special )
Administrator of the Estate of Thomas )
Lee Harris, Deceased, )
           )
          Plaintiff, )
           )
      vs. )    No. 07 C 6055
           )
RAPID AMERICAN CORPORATION, )
et al., )
           )
        Defendants. )

### MEMORANDUM OPINION AND ORDER

Thomas Lee Harris died of asbestos-caused lung cancer on September 15, 2007. Plaintiff Mary Ellen Harris, his widow, brought this action against Viad Corp. and numerous other defendants in Illinois state court. Plaintiff's claims are derived solely from state law. Defendant Viad Corporation, asserting Federal Officer jurisdiction, removed the entire action to this court under 28 U.S.C. § 1442(a)(1). Plaintiff moved for remand to state court. For the reasons stated below, the motion is denied.

### BACKGROUND

Thomas Harris enlisted in the Navy in 1957 and was stationed at Great Lakes Naval Training Center. After training to become a machinist mate, he was assigned to the U.S.S. Montrose to work on the ship's evaporators, pumps and compressors. He worked in this capacity until he was discharged in 1960.

Plaintiff alleges that Harris was exposed, without warning, to asbestos-containing evaporators manufactured by defendant Viad's predecessor, Griscom-Russell. Specifically the


EXHIBIT
A

alleged exposure took place while Harris was in active service and stationed at Great Lakes

Naval Training Center and on board the U.S.S. Montrose.  Defendant Viad does not challenge

plaintiff's assertion that Harris was exposed to asbestos, but Viad contends that the Navy

specified all mechanical equipment in question and dictated what warnings were to be

provided with the equipment.  As such, Viad asserts a military contractor defense that, it

contends, allows it to litigate this case in federal court.

Legal Standard

The Federal Officer Removal Statute provides in relevant part:

> A civil action or criminal prosecution commenced in a State court against any
> of the following may be removed by them to the district court of the United
> States for the district and division embracing the place wherein it is pending:
> (1) The United States or any agency thereof or any officer (or any person acting
> under that officer) of the United States or of any agency thereof, sued in an
> official or individual capacity for any act under color of such office . . . .

28 U.S.C. § 1442(a)(1).  The party seeking removal under § 1442 must demonstrate that (1) it

is a "person" within the meaning of the statute; (2) it acted under the direction of a federal

officer, meaning there is a nexus or causal connections between plaintiff's claims and its

actions; and (3) it can assert a colorable federal defense to state-law liability.  *See* Jefferson

County, Ala. v. Acker, 527 U.S. 423, 431 (1999); Mesa v. California, 489 U.S. 121, 129 (1989);

Arizona v. Manypenny, 451 U.S. 232, 242 (1981).

Typically, removal statutes are construed narrowly, with any doubt as to the right of

removal resulting in remand to state court.  Jefferson County, 527 U.S. at 430-31. *See also* Doe

v. Allied Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993).  Removal under § 1442 is an exception

to that general rule.  Jefferson County, 527 U.S. at 431.  Although the burden of proving

federal jurisdiction under § 1442 is on the defendant, the Supreme Court has held that "the

policy favoring removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." Manypenny, 451 U.S. at 242 (internal quotations omitted).

The basic purpose of § 1442(a)(1) is to ensure a federal forum for defenses of official immunity by federal officers. Willingham v. Morgan, 395 U.S. 402, 407 (1969). Thus, removal under § 1442(a)(1) forgoes the usual "well-pleaded complaint" rule. Even if a plaintiff's complaint does not, on its own, raise a federal question, federal jurisdiction is proper where a defendant meets the three requirements. Jefferson County, 527 U.S. at 430-31. But the federal defense need only be colorable, not guaranteed to prevail. Mesa, 489 U.S. at 133.

### Analysis

Over the last several years, numerous former members of the military have brought suits in state court claiming failure to warn of the dangers of asbestos, only to have the suits removed to federal court by defendants invoking the Federal Officer Removal Statute. These cases often rely on similar facts that took place many years back. In most cases, because the details took place so long ago, the defendants support removal with affidavits concerning past policies and practices of the U.S. Navy. Often times these affidavits come from the same limited pool of experts. This is just such a case.

The federal courts, however, have disagreed on whether these affidavits are sufficient to support Federal Officer Removal. Some courts have found that the affidavits are not specific enough to support removal and have remanded the cases back to state court. *See, e.g.,* Westmiller v. IMO Industries, Inc., No. C05-945RSM, 2005 WL 2850334 (W.D. Wash. Oct. 20, 2005); Schilz v. A.P. Green Industries, Inc., No. C01-4299 MMC, 2002 WL 102608 (N.D. Cal. Jan. 15, 2002); Westbrook v. Asbestos Defendants, No. C-01-1661 VRW, 2001 WL 902642 (N.D. Cal. Jul. 31, 2001); Nguyen v. Allied Signal, No. C 98-03616 SI, 1998 WL 690854 (N.D.

Cal. Sep. 29, 1998).  Others have held that circumstantial evidence (like the affidavits) is

sufficient to at least allow the defendants to proceed in federal court. *See, e.g.,* Contois v. Able

Industries, Inc., No. 3:07CV01328(AWT), 2007 WL 3355680 (D. Conn. Nov. 13, 2007);

Machnik v. Buffalo Pumps, Inc., 506 F. Supp. 2d 99 (D. Conn. 2007); Ballenger v. Agco Corp.,

No. C 06-2271 CW, 2007 WL 1813821 (N.D. Cal. June 22, 2007); Ferguson v. Lorillard

Tobacco Co., Inc., 475 F. Supp. 2d 725 (N.D. Ohio 2007); Nesbiet v. General Electric Co., 399

F. Supp. 2d 205 (S.D.N.Y. 2005).  Because we believe that the latter approach is most in

keeping with the goal of § 1442(a)(1), we join those courts that have held that circumstantial

evidence is sufficient to remove a case to federal court under § 1442(a)(1).  Because plaintiff

makes no argument that Viad is not a "person" under the statute, we discuss only the second

and third requirements for Federal Officer Removal.

A. Viad Acted Under the Direction of a Federal Officer

Plaintiff argues that Viad has not shown that Griscom-Russell acted under the direction

of the Navy because it has not produced any contract or directive sent to it by the Navy.

Further, plaintiff contends that the evidence Viad did submit, affidavits from Rear Admiral

Ben J. Lehamn (retired) and Charles R. Cushing, were not specific enough to demonstrate that

Griscom-Russell acted under the direction of the Navy.  We disagree.

Admiral Lehman served as ship superintendent and dry docking officer at the Brooklyn

Naval Yard between 1942 and 1944,and ship superintendent at the San Francisco Naval

Shipyard from 1950 to 1952.  In 1952, he was transferred to the Assistant Industrial Manager

Office in San Francisco, as a planning officer. In 1954, he entered private industry and joined

the Naval Reserves, where he served as commanding officer of the Naval Reserve Engineering

Companies.  From his tenure in the Navy and Naval Reserves, Admiral Lehman obtained

personal knowledge of the Navy's procurement practices regarding ship alterations and equipment overhauls. He explains that "[i]n the 1940s, 1950s, and afterward the Navy had complete control over every aspect of each piece of equipment. Military specifications governed every characteristic of the equipment used on Navy ships, including the instructions and warnings. . . . In short, the Navy dictated every aspect of the design, manufacture, installation, overhaul, written documentation and warnings associated with its ships and did not permit deviation by any of its contractors."

Charles Cushing is president of C.R. Cushing & Co., Inc., Naval Architects, Marine Engineers and Transportation Consultants. His affidavit is based upon his experience, education, and training as a naval architect and marine engineer. He asserts that the U.S.S. Montrose was built during World War II, and that "the United States Government was intimately involved in the manufacture of any Griscom-Russell equipment used on United States [WWII]-built vessels, as the equipment manufactured for those vessels was designed and built to meet precise and exacting specifications at the U.S. Navy."

Although the affidavits are general and do not specifically reference Harris, we find that at this preliminary stage, this general background and knowledge are sufficient to demonstrate that (1) the Navy had complete control over the manufacture and design of every piece of equipment on its ships, as well as the nature of warnings issued, and (2) contractors, such as Griscom-Russell, were not allowed to deviate from these specifications. This is sufficient to show that Griscom-Russell was "acting under" a federal agency when they supplied products to the Navy, and also to show the requisite causal nexus between the defendants' conduct under the direction of a federal officer and the plaintiff's claim that the defendants failed to warn Harris of the hazards associated with asbestos.

## B. <u>Viad Asserted a Colorable Federal Defense</u>

We begin our discussion of this factor by emphasizing that to meet this requirement Viad must show that it has a colorable federal defense; it need not prove that its defense will be meritorious. <u>Mesa</u>, 489 U.S. 133. To hold otherwise would require Viad to win its case before it can have the case removed. <u>Willingham</u>, 395 U.S. at 407. This would defeat the purpose of the federal officer removal.

Plaintiff argues that the military contractor defense is not a colorable defense for asbestos failure-to-warn cases, but she is incorrect. Although not specifically applied in the context of an asbestos case, the Seventh Circuit Court of Appeals, in <u>Oliver v. Oshkosh Truck Corp.</u>, 96 F.3d 992 (7th Cir. 1996), recognized the military contract defense in failure-to-warn cases. To invoke the defense, Viad must prove that "(1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; and (3) the contractor warned the government about the dangers in the equipment's use that were known to the contractor but not to the government." <u>Oliver</u>, 96 F.3d at 1003-04. The government's exercise of discretion must go beyond mere "rubber stamping" of the contractor's choice. <u>Id</u>. at 1004. The contractor has fulfilled the first condition if the government chooses its own warnings. <u>Id</u>.

We find that the affidavits are sufficient to provide a colorable defense under the <u>Oliver</u> standard. As previously discussed, Admiral Lehman explains that the Navy had complete control over the nature of the warnings used on all naval equipment and that contractors were not permitted to deviate from the precise specifications. This suggests that the Navy chose its own warnings and that Griscom-Russell provided those warnings. Further, Admiral Lehman states that "by 1940 the United States Navy was a leader in the field of occupational medicine

relating to, among other things, asbestos exposure." Thus, Griscom-Russell was not required to warn the Navy of the dangers of asbestos because the Navy was already aware of those dangers. We find that, under <u>Oliver</u>, Viad has asserted a colorable federal defense.

### C. Plaintiff's Remaining Arguments

Plaintiff also argues that Viad had nefarious motives when it removed this case to federal court. She contends that Viad is ultimately trying to frustrate her right to a trial on the merits by exploiting the inefficiencies present in the asbestos litigation before the Multi-district Litigation Panel. But a defendant's motives for removal are not part of the analysis under § 1442(a)(1). Therefore, we decline to address this argument.

Finally, to the extent that plaintiff questions the veracity or accuracy of the affidavits, we believe that it is inappropriate to do so at this juncture. The affidavits are not patently false, and thus they are sufficient to invoke federal jurisdiction under the statute. We make no prediction as to whether Viad will ultimately succeed on the merits of its defense, we simply find that at this preliminary stage it has shown enough to have that defense tried in a federal forum.

### CONCLUSION

For the forgoing reasons, plaintiff's motion to remand is denied.

 

 

 

                                        **JAMES B. MORAN**

                           Senior Judge, U. S. District Court

_____Dec. 18_____, 2007.