MDL 875

**BEFORE THE JUDICIAL PANEL OF MULTIDISTRICT LITIGATION**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| **IN RE: ASBETSOS PRODUCT LIABILITY LITIGATION (NO. VI)** | MDL No.: 875 |
| | January 9, 2007 |

**JAN 1 0 2008**

FILED
CLERK'S OFFICE

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| LAURA CONTOIS, EXECUTRIX OF THE ESTATE OF HUGO MORTENSON, | |
| Plaintiff, | Civil Action No.: 3:07-cv-01328-AWT |
| v. | (In Re: Bridgeport Asbestos Litigation, Superior Court, Judicial District of Fairfield at Bridgeport, Case No. 04-4004603-S) |
| ABLE INDUSTRIES, INC., et al. , | |
| Defendants. | |

PLEADING NO. 5318

**DEFENDANT BUFFALO PUMPS, INC.'S MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION TO VACATE CONDITIONAL
TRANSFER ORDER TO MDL**

Buffalo Pumps, Inc. ("Buffalo Pumps") respectfully submits this memorandum of law in

opposition to Plaintiff's Motion to Vacate Conditional Transfer Order No. 297 ("Motion").

Defendants are entitled to litigate this case in the Asbestos Multidistrict Litigation – 875

("MDL") pursuant to 28 U.S.C. §1407. Plaintiff alleges his injuries were caused by equipment

Buffalo Pumps supplied to the United States Navy during World War II. Buffalo Pumps has

pleaded the availability of the military contractor defense, which immunizes it from liability for

those injuries, and entitles it to litigate its defenses in the MDL. By Decision/Order dated

November 13, 2007 of the Honorable Alvin W. Thompson (a copy of which is annexed hereto as

**Exhibit 1**), the United States District Court for the District of Connecticut fully and finally

**OFFICIAL FILE COPY**

IMAGED JAN 1 1 2008

determined that Buffalo Pumps has met its burden of showing it is entitled to federal officer removal.

## I.      PROCEDURAL POSTURE

On November 24, 2004, Joan K. Mortenson[1], individually as executrix of the estate of Hugo Alfred Mortenson ("Plaintiffs") filed in the Connecticut Superior Court, Judicial District of Fairfield at Bridgeport an asbestos personal injury action (State Case No. 04-4004603-S) against approximately 40 defendants, including Buffalo Pumps.  Buffalo Pumps received service of the Summons and Complaint on December 27, 2004.  Thereafter, Plaintiff filed an amended Complaint on December 30, 2004.

Even though the case had been pending for nearly three years, Buffalo Pumps did not receive its first notice of the basis of Plaintiff's claims against it until August 2, 2007.  On that date, Buffalo Pumps received a "preliminary report" of an expert witness retained by Plaintiff – a paper in which Plaintiff disclosed that claims alleged against Buffalo Pumps involved alleged exposures to asbestos associated with pumps supplied for the *USS Borderlon*.  Plaintiff's decedent (Hugo Mortenson) served on the *USS Bordelon* while in the U.S. Navy.

Based on this report, Buffalo Pumps timely removed this case to this Court on August 31, 2007.[2]  Plaintiff then filed, and the District Court heard oral argument on, Plaintiff's motion to remand this case to state court.  Said motion was denied by Decision/Order of the Honorable Alvin W. Thompson dated November 13, 2007.  See Exhibit 1.

---

[1] Plaintiff Hugo Mortenson died on December 27, 2002, two years prior to commencement of this action filed by his wife, Joan Mortenson.  Thereafter, before this action was ever assigned to a trial list in Connecticut Superior Court, Joan Mortenson died and Plaintiffs' daughter, Laura Contois, was appointed executrix of the estate of Mr. Mortenson.

[2] The District Court expressly found that Buffalo Pumps "was only provided with an ascertainable basis for removing the case when [it] received the plaintiff's expert report…on August 2, 2007".  See Exhibit 1 at p. 5.  The District Court opined that due to the vague drafting employed by Plaintiff's counsel – both in the Complaint and in responses to discovery aimed at getting specific information about the basis for plaintiff's claims - Buffalo Pumps was continually left to guess as to the source of Plaintiff's exposure.

In addition, on October 1, 2007, Plaintiff filed a Motion with the District Court seeking to vacate the Conditional Transfer Order conditionally transferring the case to the Asbestos Multi-District Litigation in Philadelphia (MDL-875).[3]  Buffalo Pumps opposed that motion.  By Order of the Honorable Alvin W. Thompson dated December 4, 2007, this motion was likewise denied. A copy of the December 4, 2007 Order is annexed hereto as **Exhibit 2**.

## II.   ARGUMENT

### A.   Plaintiff's Emotional Appeal Is of No Moment

Plaintiff's principal basis for objecting to the transfer of this case to the MDL is founded on an unwarranted, emotional appeal.  Plaintiff's unfairly complain that Buffalo Pumps waited until "the eve of trial" to remove this case, after plaintiff had already waited "nearly three years" for said trial date.  As such, plaintiff contends, any further delays attendant to transfer of this case to the MDL would "unfairly prejudice" the plaintiff.

However, what Plaintiff's counsel notably fails to advise the Panel is that the District Court expressly found that Buffalo Pumps "was only provided with an ascertainable basis for removing the case when [it] received the plaintiff's expert report…on August 2, 2007".  See Exhibit 1 at p. 5.  The Court ruled that in response to a "very specific request for details concerning Mortenson's exposure to asbestos" by Defendants in their discovery requests, Plaintiffs had supplied only vague information that left the "defendants to guess as to whether [Mr.] Mortenson was exposed to products they manufactured that were used on the *USS Bordelon* during [Mr.] Mortenson's time in the Navy or that were used at [a non-military employer] during the much longer period of time he worked there."  Id. at pp. 4-5.  Finally, the Court ruled that "a proper response to [Defendants'] Interrogatory Number 43 would have given

---

[3]  Said motion was nearly identical to the instant Motion.

the defendants the answers they needed to make the determination that the case was removable, but the plaintiff failed to give one." Id. at p. 5.

Having chosen the path of obfuscation, Plaintiff cannot now complain about Buffalo Pumps' failure to discern that which Plaintiff declined to disclose. Had Plaintiff properly disclosed the basis for his claim in a timely manner, the federal courts, and, in particular the MDL, would have already had several years to foster resolution of this case.

**B.     The Asbestos MDL Is An Appropriate Venue**

Plaintiff alleges that transfer of this case to the MDL "is inconvenient" and "will not promote the just and efficient conduct of this action." This contention is specious.

The purpose of 28 USCS § 1407 is to provide centralized management under court supervision of pretrial proceedings of multidistrict litigation to assure just and efficient conduct of such actions and to eliminate potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate court in multidistrict related civil action. *Utah v. American Pipe & Constr. Co.,* 316 F Supp 837 (CD Cal., 1970). 28 USCS § 1407 transfer has the effect of placing actions before one judge who can formulate pretrial program that allows discovery with respect to any non-common issues to proceed concurrently with remaining discovery on common issues and ensures that pretrial proceedings will be conducted in manner leading to just and expeditious resolution of all actions to overall benefit of parties. *In re Cardiac Devices Qui Tam Litig.* , 254 F Supp 2d 1370 (Jud. Pan. Mult. Lit. 2003).

**i.     Transfer of this Case to the MDL Would Not Result in Substantial Inconvenience to the Parties**

Here, Plaintiff's allege that since original Plaintiffs Hugo and Joan Mortenson (both deceased) were Connecticut residents, and five of the defendants are Connecticut-based companies, transfer to the MDL would be "inconvenient" for the parties and their witnesses.

4

However, this logic ignores the fact that the vast majority of the parties (encompassing approximately 38 named defendants) are <u>not</u> Connecticut-based companies (including Buffalo Pumps, which is a New York corporation).  Further, several defendants named in the Complaint (including Crown Cork & Seal, Kaiser-Gypsum Company, FMC Corporation, Melrath Gasket and Struthers-Wells Corporation) <u>are</u> Pennsylvania-based entities, for whom the MDL in the Eastern District of Pennsylvania is clearly *more* convenient than the Plaintiff's preferred venue of Connecticut.  Additionally, it is expected that the vast majority of all corporate and expert witnesses for the multiple defendants in this action are located throughout the United States and Europe; as such, Connecticut poses no special convenience whatsoever for the vast majority of the parties and their witnesses.

Further, in creating the federal asbestos MDL, the Panel chose Philadelphia in large part for the convenience of the litigants.  The Panel found that the largest numbers of asbestos cases were in proximity to Philadelphia and also that:

> On the basis of the papers filed and the hearing held…the actions in this litigation involve common questions of fact relating to injuries or wrongful death allegedly caused by exposure to asbestos or asbestos containing products, and that centralization under 1407 in the Eastern District of Pennsylvania will best serve the convenience of the parties and the witness and promote the just and efficient conduct of this litigation.

*In re Asbestos Products Liability Litigation* (No VI) 771 F. Supp. 415, 417 (Jud. Panel. Mult.Lit., 1991).

Even if Pennsylvania isn't the most convenient venue for a particular case, the Panel has explained that "§1407 transfer is primarily for pre-trial, [so] there is usually no need for the parties and witnesses to travel to the transferee district for depositions or otherwise.  Furthermore…it is most logical to assume that prudent counsel will combine their forces and apportion their workload in order to streamline the efforts of parties and witnesses, their counsel and the judiciary." <u>Id</u>. at 422.  <u>See also</u> *Carlough v. Anchem Prod., Inc.*, No. 93-215,

Memorandum Opinion and Order, at *3 (E.D. PA., April 15, 1993)(Weiner, J.)[4]  Indeed, were

the Court to accept Plaintiff's argument, it would likely preclude transfer of virtually <u>any</u> case to

the MDL (thereby defeating the very purpose of the MDL).

>    **ii.**     **Transfer of this Case to the MDL Has the Potential to Promote the**
>             **Just and Efficient Resolution of this Case, as it Has for So Many**
>             **Other Cases**

Similarly unavailing is Plaintiff's allegation that transfer to the MDL will not promote the

"just and efficient conduct" of this action.  Before the creation of the MDL, both federal and

state courts faced "an asbestos litigation crisis." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

598 (1997).  The courts were overwhelmed with asbestos lawsuits.

> The most objectionable aspects of asbestos litigation can be briefly summarized:
> dockets in both federal and state courts continue to grow; long delays are routine,
> trials are too long; the same issues are litigated over and over; transaction costs
> exceed the victims' recovery by nearly two to one; exhaustion of assets threatens
> and distorts the process; and future claimants may lose altogether.

<u>Id.</u> (citing the Report of the Judicial Conference Ad Hoc Committee on Asbestos Litig. At 2-3

(Mar. 1991)).  In creating federal asbestos MDL 875, the court was persuaded that asbestos

litigation had reached a magnitude that threatened the administration of justice and that required

a new, streamlined approach.  *In re Asbestos Products Liability Litigation*, 771 F. Supp. at 418.

The centralization of all federal asbestos personal injury/wrongful death actions, in the words of

28 U.S.C. § 1407(a), "will be for the convenience of parties and witnesses and will promote the

just and efficient conduct of such actions."  <u>Id</u>.

In undertaking the asbestos litigation crisis, the MDL court has successfully created

procedures for overseeing the asbestos docket.  *In re Asbestos Prods. Liab. Litig.*, 1996 WL

539589, *1 (E.D. Pa Sept. 16, 1996).  For instance, through the MDL the parties developed a

settlement model that resolved cases in the New England area, a model that is now employed

---

[4] A copy of which is annexed to Plaintiffs' moving papers at Exhibit 3.

nationwide. Id. As a result, significant gains have been made to resolve cases. In 1996, the numbers of cases resolved exceeded the number of new cases filed. Id. at *2. In 1997 and 1998, the MDL court closed 10,000 cases per year. *In re Patenaude*, 210 F. 3d 135, 140 (3rd Cir. 2000). By September 2006, nearly 75,000 of the 110,000 cases in the MDL were resolved.[5] See Judicial Panel on Multidistrict Litig., Statistical Analysis of Multidistrict Litigation 2006, at 11 (Summary of Docket of Multidistrict Litigation Pending as of Sept. 30, 2006, of Closed since Oct. 1, 2005), available at http://www.jpml.uscourts.gov/Statistics/statistics.html.

In *In re Patenaude*, the United States Court of Appeals for the Third Circuit addressed and rejected the very same arguments made by Plaintiff here. 10 F.3d 135, 141-42 (3d Cir. 2000). There, the court noted that a large number of the cases assigned to MDL 875 were successfully resolved through settlement or remand. *Id.* See also *In re Collins*, 233 F.3d 809, 812 (3rd Cir. 2000), *cert. denied*, 532 U.S. 1066 (2001). Plaintiff's focus on the frequency of remands and trials of MDL cases, rather than overall resolutions, therefore misses the mark.

Surprisingly, Plaintiff's counsel cites *Maine Asbestos*, 44 F. Supp. 2d 368 (D.Me 1999) to this Court for the proposition that cases go untouched by this Court. Notably, the court cites neither statistics nor authority for its statements and, moreover, its comments were based on the MDL's early interest in achieving a global settlement, a now defunct goal.

Similarly, the Plaintiff misleads the court by quoting from *Rosamond v. Garlock Sealing Technologies, Inc.*, 2004 WL 943924 (N.D. Miss, 2004) to suggest that defendants' motives in seeking transfer to the MDL are disingenuous, but failing to advise the court of the fact that the *Rosamond* court remanded the case to state court because of a lack of subject matter jurisdiction

---

[5] Further, virtually all of the cases in the MDL that involve screened plaintiffs with non-malignancies (which likely represent more than 90% of the current docket. Stephen Carroll et al., Asbestos Litigation, Rand Institute for Civil Justice (2005) at p. 75) are subject to pending motions to dismiss on the grounds that those plaintiffs rely on (a) medical "records" created through mass screenings that are unreliable at best, and fraudulent at worst, and (b) testimony of purported medical experts (a handful of whom are used in literally tens of thousands of cases) who have routinely and repeatedly used flawed, and often fraudulent, methodology to falsely generate positive "diagnoses" of plaintiffs.

due to a lack of diversity of citizenship and also because the removal was not timely filed in regard to the one-year statute of limitations.

The MDL has effectively promoted the just and efficient resolution of the cases within its docket. For example, the MDL has issued several Administrative Orders (in particular, Administrative Order Nos. 11 and 12) which have strengthened the court's procedures over the docket by adjusting calendar management and filing requirements. Copies of these Administrative Orders are annexed hereto as **Exhibit 3**. These Administrative Orders, coupled with the aforementioned record of resolving the vast majority of cases and remanding many others for trial, conclusively establishes the MDL's efficiency in resolving asbestos actions. It is evident that MDL 875 is an appropriate venue for handling the instant case.

Plaintiff's true objection to the transfer to the MDL is not based on matters of convenience, or concerns of efficiency, but rather is best summarized by Plaintiff's statement in its moving papers that "it is the Court's stated intention to resolve MDL-875 cases through *negotiation*, not trial." (emphasis in original). Plaintiff's apparent distaste for negotiation is rather surprising, since no plaintiffs' counsel has tried an asbestos case to verdict in Connecticut in at least twenty (20) years[6], but has rather elected to settle hundreds of cases since the last such verdict in 1987. Given Plaintiff's counsel's preference for settlement, one is left to wonder why Plaintiff's counsel is so vehemently opposed to transfer to the MDL, a judicial construct created to attain this very goal?

### C.    Transfer to the MDL Does Not Trigger Constitutional Issues

Plaintiff relies on inapposite case law and also makes the remarkable assertion that the transfer of this case to the MDL would violate her right to a timely civil jury trial pursuant to Articles 1, 10 and 20 of the Connecticut Constitution and the Seventh and Fourteenth

---

[6] The asbestos last case tried to verdict in Connecticut in Connecticut Superior Court was *Champagne v Raybestos-Manhattan, Inc.* in 1987, which was tried by a different firm than Plaintiff's attorneys.

Amendments to the United States Constitution. Not surprisingly, Plaintiff's claim that the entire system designed to handle asbestos claims pending in federal courts somehow violates her constitutional rights has been addressed, and rejected, by the Judicial Panel on Multidistrict Litigation. *See, e.g.*, *In Re Asbestos Products Liability Litigation (No. VI)*, 170 F. Supp. 2d 1348 (J.P.M.L., Oct. 18, 2001), a copy of which is annexed hereto as **Exhibit 4**.

In *In Re Asbestos Products Liability Litigation (No. VI)*, the Panel, reaching the conclusion that the MDL procedures did <u>not</u> violate the constitutional rights of asbestos plaintiffs, noted (among other things), that plaintiffs' characterizations of the MDL as a "black hole" were inconsistent with the actual experience. The Panel also noted that the handling of cases in MDL-875 was consistent with the fact that "[t]he resources available to persons injured by asbestos are steadily being depleted, and it noted that the MDL procedures allowed ample opportunity for plaintiffs whose situations truly were unique to obtain remand for trial or other proceedings." *In re Asbestos Prods. Liab. Litig. v. Int'l Paper Co.*, 170 F. Supp. 2d 1348, 1350 (J.P.M.L. 2001).

Plaintiff also incorrectly contends that a transfer to the MDL would violate the plaintiff's state right of redress or right to open access to the courts under Article 1, §10 of the Connecticut Constitution. Their argument hinges on speculation that Plaintiff's avenues for redress will be foreclosed merely by the case being transferred to MDL 875. On the contrary, as discussed *supra*, the goal of the asbestos MDL is to streamline and simplify asbestos litigation for both the court and the parties. Plaintiff's assertions are a broad leap neither supported by the published cases, nor the statistical record of resolved MDL cases. There is no blanket denial of Plaintiff's right of redress and plaintiff is not being denied the right to open access in court. The MDL is, in fact, the judicial innovation for handling these exact types of cases and, therefore, plaintiff is not being denied her constitutional rights under Article 1, §10 of the Connecticut Constitution.

In an analogous case, *Woods v Holy Cross Hospital*, 591 F.2d 1164 (5th Cir., 1979), the 5th Circuit, quoting the United States Supreme Court, held in pertinent part that mandatory referral to a mediation panel aimed at negotiating a resolution short of trial was <u>not</u> violative of the Seventh Amendment:

> Mrs. Woods argues that the delay incident to the mediation prerequisite unconstitutionally infringes upon her seventh amendment right. This contention is without merit. The seventh amendment "does not prescribe at what stage of an action a trial by jury must, if demanded, be had, or what conditions may be imposed upon the demand of such a trial, consistently with preserving the right to it." *Capital Traction Co. v Hof*, 174 U.S. 1, 23, 19 SA. Ct. 580, 589, 43 L.Ed. 873 (1899). Noting in the seventh amendment requires that a jury make its findings at the earliest possible moment in the course of civil litigation; the requirement is only that the jury ultimately determine the issues of fact if they cannot be settled by the parties or determined as a matter of law. <u>See</u> *In re Patterson*, 235 U.S. 300, 40 S. ct. 543, 64 L.Ed. 919 (1920)…If a Federal Court may refer a complicated case to an auditor or a special master…it may certainly utilize a medical liability mediation panel without violating the dictates of the seventh amendment…So long as Mrs. Woods' right to have her claim fully and finally determined by a jury is preserved, she cannot be heard to complain that her right to a jury trial has been unconstitutionally restricted. Accord, e.g., *Eastin v. Broomfield*, 116 Ariz. 576, 580, 570 P.2d 744, 748 (1977) (en banc), Attorney General v. Johnson, 282 Md. 274, 297-306, 385 A.2d 57, 71-75 (1978).

<u>See</u> *Woods v Holy Cross Hospital*, 591 F.2d at 1178-79. While *Woods* involved referral to a medical malpractice mediation panel (rather than the MDL), the underlying rationale clearly supports transfer of this case to the MDL. Thus, transfer to the MDL will not violate plaintiff's right to trial by jury as guaranteed by the Seventh Amendment to the U.S. Constitution and Article 1, §19 of the Connecticut Constitution. <u>See also</u> *Capital Traction Co. v Hof*, 174 U.S. 1, (1899); *Crateo, Inc. v. Intermark, Inc.*, 536 F.2d 862, 867-68 (9th Cir. 1976), *cert. denied*, 429 U.S. 896, 97 S. Ct. 259, 50 L.Ed.2d 180 (1976) (referral of complex matter to special master prior to jury trial held constitutional); *In re Peterson*, 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed.2d 919 (1920) (court appointed auditor to conduct initial investigation and file report held constitutional); *Pittsburgh-Corning Corp. v. Bradley*, 453 A.2d 314, 316 (1982) (requirement that litigants proceed first in another forum [non-jury trial before any jury trial allowed for

asbestos case] does not offend the constitution"); *Rhea v. Massey-Ferguson, Inc.*, 767 F.2d 266 (6th Cir., 1985).

In "support" of it contention that transfer to the MDL yields unconstitutional delay[7], Plaintiff relies upon wholly inapposite case law, principally *Armster v. U.S. Dist. Court for the Central District of Florida*, 729 F.2d 1423 (9th Cir., 1986) and *Ex parte Milligan*, 71 U.S. 2, 18 L.Ed. 281 (1866).  In *Armster*, the plaintiffs sought writs of mandamus prohibiting the local district court from suspending civil jury trials for three and half months due to budgetary constraints, while in *Milligan* the court held that criminal trials could not be suspended during wartime.  These cases are readily distinguishable.

Here, Plaintiff's right to a trial is not being "suspended" at all.  Rather, Plaintiff is simply being asked to comply with a court-established, pre-trial mediation procedure aimed at resolving the case <u>prior</u> to trial.  Indeed, this is no different than being required to comply with written discovery, depositions or document production, all of which are elements of litigation which must be completed before any case may proceed to trial.  While it is true that the focus of the MDL is on collective pretrial and given the enormous numbers of cases the MDL encourages settlement negotiations, the MDL can and does remand trials to the transferor courts for trial when appropriate. Given these facts, Plaintiff's right to a trial by jury would be alive and well within MDL 875, if the conditional transfer is ordered.

Plaintiff also incorrectly asserts that transfer to the MDL would be a violation of her equal protection rights under Article 1, §§ 1 and 20 of the Connecticut Constitution and the Fourteenth Amendment to the United States Constitution.  Plaintiff contends that the transfer of cases under §1407 to the asbestos MDL 875 is unconstitutional because it does not meet the

---

[7] Plaintiff admits that reasonable delays and alternative process in jury trials have been accepted as constitutional. *See* Plaintiff's Brief, pg. 13.  However, the Plaintiff attempts to distinguish the typical timeline as unreasonable by quoting to cases in which Judges have made disapproving statements in dicta, but never as part of their decision.  In *Maine Asbestos* and *Rosamond v. Garlock Sealing Technologies, Inc.*, each distinguished *supra*, the court's dicta regarding the MDL played either a limited role or none whatsoever in the final disposition by the court.

strict scrutiny standard.  To pass muster under the strict scrutiny test, a challenged governmental

action must be closely related to a compelling governmental interest.  The government already

recognized its compelling interest when it created the MDL.  The well-known asbestos crisis

included overcrowded dockets in both federal and state courts, long delays, cumbersome trials,

repetitiously litigated issues, transaction costs exceed the victims' recovery by nearly two to one,

exhaustion of assets, etc.  These issues were an interest necessary to be addressed and the

transfer of cases to the MDL is the government's narrowly tailored means to address those needs.

Since Plaintiff's equal protection has not been violated, the transfer of this case to the MDL is

proper.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Vacate Conditional Transfer Order to

MDL should be denied.

Respectfully submitted,

The Defendant,
BUFFALO PUMPS, INC.
By its attorneys,

_____
Geoffrey L. Squitiero, Esq.
Maher & Murtha, LLC
528 Clinton Avenue, P.O. Box 901
Bridgeport, CT 06601
203-367-2700

_____
Bryna Rosen Misiura, Esq.
Michael D. Simons, Esq.
265 Franklin Street, 15th Floor
Boston, MA 02110
617-737-9045

DATED: January 9, 2008

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

## CERTIFICATION

JAN 1 0 2008

FILED
CLERK'S OFFICE

I hereby certify that on January 9, 2008, a copy of the foregoing DEFENDANT'S
BUFFALO PUMPS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION TO VACATE CONDITIONAL TRANSFER ORDER TO MDL was mailed, first
class postage pre-paid, to all counsel of record as shown on the attached Panel Service List.

_____

Michael D. Simons

IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)                              MDL No. 875

## PANEL SERVICE LIST (Excerpted from CTO-297)

Laura Contois, etc. v. Able Industries, Inc., et al., D. Connecticut, C.A. No. 3:07-1328

Richard C. Binzley
THOMPSON HINE LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Mena J. Bonazzoli
CUMMINGS & LOCKWOOD
Six Landmark Square
Stamford, CT 06901

Edward J. Cass
GALLAGHER SHARP FULTON
& NORMAN
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC 20001

George W. Clark
CETRULO & CAPONE LLP
Two Seaport Lane, 10th Floor
Boston, MA 02210

David A. Damico
BURNS WHITE & HICKTON
Four Northshore Center
106 Isabella Street
Pittsburgh, PA 15212

Richard M. Dighello, Jr.
UPDIKE KELLY & SPELLACY
One State Street, Suite 2400
P.O. Box 231277
Hartford, CT 06123-1277

Robert R. Dombrowski
MORRISON MAHONEY
One Constitution Plaza,
10th Floor
Hartford, CT 06103-1810

Marc S. Edrich
LITCHFIELD CAVO
40 Tower Lane, Suite 200
Avon, CT 06001

Raymond P. Forceno
FORCENO GOGGIN
& KELLER
1528 Walnut Street, Suite 900
Philadelphia, PA 19102

Ellen B. Furman
GOLDFEIN & HOSMER
1600 Market Street, 33rd Floor
Philadelphia, PA 19103

Susan M. Hansen
BROWNSON & BALLOU
225 South Sixth St., Ste. 4800
Minneapolis, MN 55402

Anthony J. Iaconis
DISERIO MARTIN O'CONNOR
& CASTIGLIONI
One Atlantic Street, Suite 500
Stamford, CT 06901

Reginald S. Kramer
OLDHAM & DOWLING
195 South Main Street, Ste. 300
Akron, OH 44308-1314

Dan E. LaBelle
HALLORAN & SAGE
315 Post Road, West
Westport, CT 06880

David C. Landin
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
LOCKS LAW FIRM LLC
1500 Walnut Street
Philadelphia, PA 19102

Robert Stuart Ludlum
PIERCE DAVIS & PERRITANO
Ten Winthrop Square
Boston, MA 02110

Thomas F. Maxwell, Jr.
PULLMAN & COMLEY LLC
850 Main Street
P.O. Box 7006
Bridgeport, CT 06601-7006

Kevin C. McCaffrey
CULLEN & DYKMAN
177 Montague Street
Brooklyn, NY 11201

Christopher Meisenkothen
EARLY LUDWICK &
SWEENEY L L C
265 Church Street, 11th Floor
P.O. Box 1866
New Haven, CT 06508-1866

MDL No. 875 - Panel Service List (Excerpted from CTO-295)(Continued)

Bryna Rosen Misiura
GOVERNO LAW FIRM LLC
260 Franklin Street
15th Floor
Boston, MA 02110

Ronald L. Motley
MOTLEY RICE LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

William E. Murray
EDWARDS ANGELL PALMER
& DODGE LLP
90 State House Square
9th Floor
Hartford, CT 06103

James R. Oswald
ADLER POLLOCK & SHEEHAN
2300 Bank Boston Plaza
Providence, RI 02903

John J. Repcheck
MARKS O'NEILL O'BRIEN
& COURTNEY PC
Gulf Tower, Suite 2600
707 Grant Street
Pittsburgh, PA 15219

John J. Robinson
MCCARTER & ENGLISH LLP
City Place I
185 Asylum Street
36th Floor
Hartford, CT 06103-3495

John D. Roven
ROVEN-KAPLAN LLP
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
VORYS SATER SEYMOUR
& PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008

Neil Selman
SELMAN BREITMAN
& BURGESS
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Reed Adam Slatas
MCGIVNEY & KLUGER
406 Farmington Ave.
Farmington, CT 06032

Robert N. Spinelli
KELLEY JASONS MCGUIRE
& SPINELLI LLP
Centre Square West
15th Floor
Philadelphia, PA 19102

Robert E. Swickle
JAQUES ADMIRALTY
LAW FIRM PC
1370 Penobscot Building
645 Griwsold Street
The Maritime Asbestosis
Legal Clinic
Detroit, MI 48226-4192

Jonathan F. Tabasky
COOLEY MANION & JONES
21 Custom House Street
6th Floor
Boston, MA 02110

Andrew J. Trevelise
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Frank G. Usseglio
KENNY O'KEEFE & USSEGLIO
21 Oak Street
Suite 208
Hartford, CT 06106

Edward V. Walsh
MAHER & MURTHA
528 Clinton Avenue
P.O. Box 901
Bridgeport, CT 06601

James K. Weston II
TOM RILEY LAW FIRM
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

Steven Frenkel, Esq.
Cummings & Lockwood
6 Landmark Square
Stamford, CT 06901

John Rooney, Esq.
Melick, Porter & Shea
28 State Street
Boston, MA 02109-1775

Matthew Oleyer, Esq.
Richard B. Kirby, Esq.
Keegan Werlin LLP
265 Franklin Street
Boston, MA 02110

Thomas Maxwell, Esq.
Pullman & Comley LLC
850 Main Street
P.O. Box 7006
Bridgeport, CT 06601-7006

Robert Allen, Esq.
Tyler, Cooper & Alcorn
205 Church Street
P.O. Box 1936
New Haven, CT 06510

John J. Bogdanski, Esq.
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114-1190

Kenneth Neal, Esq.
Danaher Lagnese & Neal
Capitol Place, 21 Oak Street
Hartford, CT 06106

Erik DiMarco, Esq.
Wilson Elser Moskowitz Edelman
Dicker
150 East 42nd Street
New York, NY 10017

Richard F. Connors, Esq.
127 Washington Avenue
P.O. Box 219
North Haven, CT 06473

Michael Chefitz, Esq.
Bonner Kiernan Trebach & Crociata
One Liberty Square
Boston, MA 02109

Levitt Rockwood, PC
33 Riverside Drive
P.O. Box 5116
Westport, CT 06881-5116

Maciej A. Piatkowski, Esq.
Whitman Breed Abbott & Morgan
100 Field Point Road
P.O. Box 2250
Greenwich, CT 06830

Susan Miller, Esq.
Skelley Rottner, P.C.
433 South Main Street, Suite 305
West Hartford, CT 06107

# **Exhibit 1**

### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
LAURA CONTOIS,                :
EXECUTRIX OF THE ESTATE OF    :
HUGO MORTENSON,               :
                              :
          Plaintiff,          :
                              :     Civil No.3:07CV01328(AWT)
v.                            :
                              :
ABLE INDUSTRIES INC., ET AL., :
                              :
          Defendants.         :
                              :
------------------------------x
```

### RULING ON MOTION TO REMAND

By a complaint dated September 10, 2004, and amended on December 30, 2004, the plaintiff initiated an action in Connecticut Superior Court seeking damages for injuries allegedly sustained as a result of Hugo Mortenson being exposed to asbestos-containing materials.  Mortenson had been diagnosed with malignant mesothelioma in August 2002 and died on December 27, 2002.  On August 31, 2007, defendant Buffalo Pumps, Inc. ("Buffalo Pumps") filed a notice of removal of the case to federal court pursuant to 28 U.S.C. § 1442(a), the federal officer jurisdiction statute.  The petition for removal was subsequently joined by defendant General Electric Company ("GE").  The plaintiff has moved to remand the case to state court on the grounds that (1) the notice of removal was untimely filed, and

-1-

(2) the defendants have failed to satisfy the requirements for federal officer jurisdiction.  For the reasons set forth below, the motion to remand is being denied.

## I.   TIMELINESS

The plaintiff argues that, under 28 U.S.C. 1446(b), Buffalo Pumps' notice of removal was untimely because it was filed more than 30 days after service of the original complaint, as well as more than 30 days after service of the Amended Complaint; the Amended Complaint provides additional information not contained in the original complaint.  However, § 1446(b) states:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b).  The Second Circuit has noted that "[a] case is removable when the initial pleading enables the defendant to 'intelligently ascertain' removability from the face of such pleading...." Whitaker v. American Telecasting, Inc., 261 F.3d 196, 205-06 (2d Cir. 2001) (internal citation omitted).  "A pleading enables a defendant to intelligently ascertain removability when it provides the necessary facts to support [the] removal petition...While this standard requires a defendant to apply a reasonable amount of intelligence in ascertaining removability, it does not require a defendant to look beyond the

initial pleading for facts giving rise to removability." Id. at
206.

The court concludes that the defendants could not have
intelligently ascertained that the case was removable even at the
time they received the Amended Complaint.  The Amended Complaint
merely states that Mortenson was exposed to asbestos while
serving in the U.S. Navy from 1951 to 1955 and while working as
an electrical engineer from 1962 to 2002.  (See Doc. No. 1,
Notice of Removal, Ex. 1).  It does not provide any information
related to the ship(s) on which he served while in the Navy or as
to the employer(s) he worked for as an electrical engineer.  It
also fails to indicate which products manufactured by which of
the over sixty defendants named in the Amended Complaint caused
Mortenson to be exposed to asbestos.  Nor does it allege whether
Mortenson came into contact with such products during his four-
year stint in the Navy and/or during the forty-year period he
worked as an electrical engineer.  The court concludes that
Buffalo Pumps could not have ascertained grounds for removal
based on federal officer jurisdiction given the very general
reference in the Amended Complaint to Mortenson's service in the
Navy.

The plaintiff argues that the defendants should have at
least been able to intelligently ascertain removability once they
received the plaintiff's interrogatory responses.  Interrogatory

-3-

Number Forty Three asked the plaintiff to provide information relating to the names and addresses of Mortenson's employers and job sites, the dates of his employment, the asbestos products used by Mortenson (including the names of the manufacturers if known), other asbestos products the plaintiff contends Mortenson was exposed to (including the names of the manufacturers if known), and the source of the exposure to other asbestos products to which the plaintiff contends Mortenson was exposed.  (See Doc. No. 69, GE's Mem. Opp., Ex. 9, at 16-17).  In response to this very specific request for details concerning Mortenson's exposure to asbestos, the plaintiff responded that Mortenson worked as a seaman in the U.S. Navy on the USS Bordelon from 1951 to 1955 and that he worked as an engineer at Carling Technologies Inc. ("Carling") in Plainville, Connecticut, from 1960 to 2002. Although this response provided more information than did the Amended Complaint, it still failed to provide Buffalo Pumps with sufficient information to intelligently ascertain the removability of the case.  The plaintiff stated that Mortenson worked on the USS Bordelon, but provided no information about where on this vessel he performed his duties.  In addition, the interrogatory response also made no mention of any specific asbestos-containing product with which Mortenson came in contact. Finally, the interrogatory response reiterated that Mortenson was also exposed to asbestos-containing materials during the over

-4-

forty years he worked at Carling, leaving the defendants to guess
as to whether Mortenson was exposed to products they manufactured
that were used on the USS Bordelon during Mortenson's time in the
Navy or that were used at Carling during the much longer period
of time he worked there.  A proper response to Interrogatory
Number 43 would have given the defendants the answers they needed
to make the determination that the case was removable, but the
plaintiff failed to give one.

The defendants were only provided with an ascertainable
basis for removing the case when they received the plaintiff's
expert report of R. Bruce Woodruff, a Captain, USN (RET), on
August 2, 2007.  In that report, Woodruff states his opinion that
Mortenson "may have been exposed to asbestos aboard the USS
Bordelon (DDR 881) on which he was stationed from 1951-1955 -
possibly in significant quantities."  (See Notice of Removal, Ex.
2 at 4).  In this report, specific asbestos-containing products,
including main steam turbines manufactured by GE and pumps
manufactured by Buffalo Pumps, were mentioned for the first time.
The report focuses exclusively on the time spent by Mortenson in
the Navy, with no mention of possible exposure to asbestos while
he worked at Carling.  After receiving this report, Buffalo Pumps
filed its Notice of Removal on August 31, 2007.  Thus, its filing
occurred within thirty days from the date when the defendants
could intelligently ascertain removability.  Therefore, the court

-5-

concludes that the petition for removal was timely filed.

## II.   FEDERAL OFFICER JURISDICTION

### A. Legal Standard

The federal officer removal statute permits removal from state court of cases against "any officer (or any person acting under that officer) of the United States or any agency thereof, sued in an official or individual capacity for any act under color of such office...."  28 U.S.C. § 1442(a)(1).  A defendant who is not a federal officer or agency must show (1) that it is a person within the meaning of the statute, (2) that it was "acting under" a federal officer and that there was a "causal connection" between the charged conduct and the asserted official authority, and (3) that it has a "colorable" federal defense.  See In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation, 488 F.3d 112, 124 (2d Cir. 2007).

It is undisputed that corporations are "persons" within the meaning of the statute.  To establish the second element, a defendant must show that "the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations."  Id. (citation and internal quotation marks omitted).  In examining whether defendants satisfy this requirement, courts should look to the extent to which defendants "acted under federal direction at the time they were engaged in

-6-

the conduct now being sued upon." Id. at 125.  Acts that are
performed under the "general auspices" of a federal officer, or
the mere participation of a corporation in a regulated industry,
are insufficient to support removal based on federal officer
jurisdiction.  Id.

     To establish the third element, i.e. the existence of a
colorable federal defense, a defendant must prove that (1) "the
United States approved reasonably precise specifications" for the
military equipment supplied by the contractor; (2) "the equipment
conformed to those specifications; and (3) the [military
contractor] warned the United States about the dangers in the use
of the equipment that were known to the [contractor] but not to
the United States."  Boyle v. United Techs. Corp., 487 U.S. 500,
512 (1988).  To establish that Boyle displaces any state law duty
to warn, a defendant "must show that the applicable federal
contract includes warning requirements that significantly
conflict with those that might be imposed by state law."  Grispo
v. Eagle-Picher Indus., Inc., 897 F.2d 626, 630 (2d Cir. 1990).
In addition, a contractor "must show that whatever warnings
accompanied a product resulted from a determination of a
government official, and thus that the Government itself
'dictated' the content of the warnings meant to accompany the
product."  Id. (internal citations omitted).  "For the military
contractor defense to apply, government officials ultimately must

-7-

remain the agents of decision." <u>Id</u>.

## B. <u>Discussion</u>

## 1.   Colorable Federal Defense

In order to raise a colorable federal defense in this case,
the defendants must establish that the U.S. Navy approved
reasonably precise specifications for equipment on board Navy
ships and dictated the content of all warnings that may have
appeared on such equipment.  To establish this element, Buffalo
Pumps and GE have supplied the court with several affidavits from
former Navy officials.  Roger Horne, a retired Rear Admiral,
avers that pumps built for Navy vessels were "manufactured
according to detailed specifications prepared...by the Navy."
(Notice of Removal, Ex. 3, Horne Aff. ¶ 5).  These specifications
"also covered the nature of any communication affixed to pumps or
other equipment supplied to the Navy," (<u>id</u>. ¶ 4) and "governed
the form and content of written materials to be delivered with
equipment." (<u>Id</u>. ¶ 15).  Retired Rear Admiral Ben Lehman avers
that "[m]ilitary specifications governed every characteristic of
the equipment used on Navy ships, including the instructions and
warnings."  (GE's Mem. Opp., Ex. 6, Lehman Aff. ¶ 4).
"Furthermore, the Navy had specifications as to the nature and
content of all written material that was delivered with each
piece of equipment, including turbines."  (<u>Id</u>.).  This evidence
supports the conclusion that the Navy had precise specifications

-8-

for all equipment on board its ships, as well as control over the content of any warnings or safety information.

Second, the defendants have shown that any products supplied to the Navy conformed to its detailed specifications. The affidavits submitted by the defendants support the conclusion that the Navy would not have permitted a manufacturer to place its own warning on equipment without approval from the Navy. Admiral Horne states that the "Navy believed that excessive warnings for common shipboard hazards led to apathy and resulting disregard of hazard." (Doc. No. 62, Buffalo Pumps Mem. Opp., Ex. 1, Horne Supp. Aff. ¶ 12).  Therefore, "the Navy would not have permitted...a vendor such as Buffalo Pumps to attach any type of warning or cautionary statement not required and approved by the Navy, including any statement related to asbestos."  (Id.).  An attempt by a manufacturer to affix a warning label "would have been futile, and would have been rejected as contrary to Navy protocols for instruction and training relating to the use of asbestos materials."  (Id.).  Admiral Lehman states that "the Navy dictated every aspect of the design, manufacture, installation, overhaul, written documentation and warnings associated with its ships and did not permit deviation from any of its contractors." (GE's Mem. Opp., Ex. 6, Lehman Aff. ¶ 5).  Another retired Rear Admiral, David Sargent, avers that "the Navy would not have permitted Buffalo Pumps or other equipment

suppliers to place asbestos related warnings in technical manuals
supplied with pumps for Navy ships during the 1940s, 1950s, and
1960s." (Buffalo Pumps Mem. Opp., Ex. 2, Sargent Supp. Aff. ¶
14).   Finally, Lawrence Stillwell Betts, a retired Navy Captain
and president of a medical corporation, concludes, after an
extensive review of the relevant literature, that "[i]t would be
unreasonable to assume that the Navy would have accepted
gratuitous comments from equipment manufacturers about hazards
associated with a product it neither made nor sold and about
which the Navy was already aware."   (GE's Mem. Opp., Ex. 7,
Betts Aff. ¶ 20).

Third, in order to raise a colorable federal defense, the
defendants must show that the supplier warned the Navy about
dangers in the use of any product that were known to the supplier
but were not known to the Navy.  The Betts affidavit provides
sufficient evidence to satisfy this element.  Betts relies not
only on his own personal experience, but also on extensive
historical documentation and research, which is attached to his
affidavit.  Betts reviews the evidence of the standards and
procedures the Navy adopted with respect to asbestos.  He
observes that "the Navy's knowledge regarding the applications of
asbestos and the health effects represented the state of the
art." (Id. at ¶ 30). From the early 1920s to the late 1960s,
"there was nothing about the hazards associated with the use of

asbestos-containing products on a marine steam turbine on United States Navy ships known by a turbine manufacturer... that [was] not known by the United States." (Id.).  This conclusion is supplemented by the opinion of Samuel Forman, a medical doctor who investigated the Navy's historical handling and knowledge of industrial hygiene issues, including asbestos.  Relying upon documentary evidence, Forman concludes that the "Navy knew by 1922 that asbestos exposure was a potential health hazard, and that its knowledge and awareness continued to develop through the following decades."  (Notice of Removal, Ex. 5, Forman Aff. ¶ 9).  This evidence from Betts and Forman establishes the superior knowledge of potential hazards on the part of the Navy vis-a-vis the equipment manufacturers at the time the injury to Mortenson is claimed to have occurred.

     The plaintiff attacks the opinions offered in the affidavits provided by Buffalo Pumps and General Electric as conclusory.  However, the opinions offered by Betts, in particular, can hardly be considered conclusory.  The Betts affidavit is accompanied by voluminous documentation and historical research that provides a background for his conclusions. In conjunction with the other affidavits of retired Navy admirals submitted by the defendants, the evidence offered by Betts raises a colorable federal defense.  Whether that defense will be successful is an issue for trial, not one that

the court should address on a motion to remand.

   **2.   The Requirement that the Defendants Acted Under a
          Federal Officer or Agency and the Existence of a
          Casual Nexus Between the Plantiff's Claims and the
          Defendants' Conduct**

   The evidence discussed above also satisfies the other
requirements for federal officer jurisdiction.  The evidence
establishing that (i) the Navy had complete control over the
manufacture and design of every piece of equipment on its ships,
as well as the nature of warnings issued, and (ii) contractors,
such as Buffalo Pumps and GE, would not have been permitted by
the Navy to place warning labels or cautionary language on
products containing asbestos aboard Navy ships, shows that the
defendants were "acting under" a federal agency when they
supplied products to the Navy, and also shows the requisite
causal nexus between the defendants' conduct under the direction
of a federal officer and the plaintiff's claim that the
defendants failed to warn Mortenson of the hazards associated
with asbestos.

   **3. The Plaintiff's Arguments in Favor of Remand**

   The plaintiff makes several arguments in support of her
contention that the requirements of the federal officer removal
statute are not met here, each of which the court finds
unpersuasive.  First, the plaintiff relies on a military
specification issued on June 6, 1961 relating to service manuals
for shipboard electrical and mechanical equipment.  This

-12-

specification makes reference to an "intent to accept the
manufacturer's commercial type of manual or one prepared in
accordance with his commercial practice whenever it is roughly
equivalent to the detail requirements included herein."  (Doc.
No. 22, Pl.'s Mem. Supp., Ex. F, MIL-M-15071D).   The
specification states that "[a]pproval of a class A manual will be
by the Bureau of Ships only and, once approved, the basic manual
shall not be modified without the approval of the Bureau of
Ships."  (Id.).  Similarly, class B manuals must be approved by
the Bureau or its field representative and cannot be modified
without permission.  Finally, the specification reads in
pertinent part: "Notes, cautions, and warnings should be used to
emphasize important and critical instructions.  The use should be
as sparing as is consistent with real need."  (Id.).  The
plaintiff contends that this specification indicates that the
defendants had discretion over whether to include warnings about
the hazards of asbestos on their products sold to the Navy and in
use aboard the USS Bordelon during the time Mortenson served in
the Navy.

As an initial matter, this specification was issued after
Mortenson had completed his service in the Navy.  Moreover, the
language in this specification does not support the plaintiff's
position.  Rather, it suggests that Navy approval was required
for any safety information contained in the manufacturer's

-13-

service manual because the prerequisite for acceptance of the
manufacturer's manual is that it be roughly equivalent to the
detail requirements included in that military specification.  The
specification also explicitly states that the use of warnings
should be sparing.  The affidavits of Betts, Horne, and Sargent
state that this specification did not suggest that manufacturers
were free to provide their own warning information with respect
to products on board Navy ships, but rather reflects the Navy's
emphasis on the uniformity and standardization of safety
information that was provided.  The court finds that evidence
persuasive.

     Second, the plaintiff points to the Uniform Labeling
Program-Navy, which is a uniform labeling program for hazardous
industrial chemicals and materials, dated September 24, 1956.
This document states that the instructions regarding labeling
requirements for hazardous chemical products during the usage
stage are "not intended to govern" the "type of labels to be
affixed by the manufacturer." (Pl.'s Mem. Supp., Ex. G, Uniform
Labeling Program).  However, the Uniform Labeling Program-Navy
would not have applied to product manufacturers, such as Buffalo
Pumps and GE, that contracted with the Navy because, by its
terms, it "governed the labeling of hazardous chemicals by Navy
personnel, not outside product manufacturers." Machnik v.
Buffalo Pumps, Inc., 2007 WL 270757 at *4, n. 3 (D.Conn.

-14-

September 17, 2007).  But see Fortier v. Ampco-Pittsburgh Corp.,
2007 WL 735703 at *2 (D.Conn. March 7, 2007) (concluding that
under this program suppliers were free to include warnings not
dictated by the Navy).  This interpretation of the Uniform
Labeling Program-Navy is supported by the well-researched Betts
affidavit submitted in this case.

Third, the plaintiff points to the deposition testimony of
Martin Kraft, a current Buffalo Pumps employee, in which Kraft
concedes that Buffalo Pumps put a warning label relating to
asbestos on its pumps in 1987, even though the Navy specification
in effect at the time did not require such a warning.  (See Pl.'s
Mem. Supp., Ex. A, Kraft Deposition, at 4).  However, as the
defendants properly note, the mere fact that Buffalo Pumps was
able to put a warning related to asbestos on its products in 1987
does not necessarily mean that it would have been able to do so
decades earlier.  Over the years, knowledge about the hazards of
asbestos had increased dramatically.  This fact is reflected by
Admiral Sargent's express limitation of his conclusion regarding
Navy control over asbestos-related warnings to the 1940s, 1950s,
and 1960s.  For the fact that Buffalo Pumps put a warning about
asbestos on its pumps for the Navy in 1987 to be given weight in
the court's analysis, the plaintiff must show much more than the
mere fact that the situation occurred.

The plaintiff contends that evidence she has produced

-15-

regarding the experience of the Phelps Dodge Corporation, a
manufacturer of asbestos-insulated wires and cables for the Navy
during the 1940s and 1950s, helps support a conclusion that the
defendants have not satisfied the requirements for federal
officer jurisdiction.   The plaintiff has provided four items of
evidence.   One is the deposition testimony of William Daniels, a
retired Phelps Dodge employee.   During his deposition, Daniels
was presented with three documents from the Phelps Dodge
archives, but he knew nothing about any of these documents.
While Daniels' testimony may have provided the plaintiff with
leads for discovering pertinent testimony, Daniels' testimony
itself adds nothing to the analysis of the issue presented by the
instant motion; the only meaningful evidence is the documents
themselves.

       As an initial matter, the court notes that in no case did
the plaintiff provide an entire document, but only what the
plaintiff represents are relevant excerpts.   However, even those
relevant excerpts fall short of showing what the plaintiff
contends is shown by these documents.   The first document is a
copy of the first two pages of a "Cable Comparison Guide" first
published in 1946 to facilitate utilization of electric shipboard
cable and to assist in the planning of cable installations.   The
plaintiff points to the second paragraph of the preface, but the
first paragraph of the preface is more pertinent to the issue

under consideration.  That paragraph reads as follows:

> The information in this reference guide is based on
> current and superseded issues of Section S62-2 of the
> General Specifications for Machinery for Vessels of the
> United States Navy and is not intended to replace that
> specification.  All applications, installations, rating
> and characteristics of the cable are to be in
> accordance with the specification.  In the event of any
> conflict between the information in this guide and the
> detailed requirements of Section S62-2 of the General
> Specification for Ships of the U.S. Navy, the latter
> shall govern.

(Pl.'s Mem. Supp., Ex. B, "Cable Comparison Guide").  Thus, the

language in this document is more consistent with the defendants'

contentions than with those of the plaintiff.

The second document is an April 25, 1950 Phelps Dodge

internal memorandum also concerning shipboard cable for the Navy.

However, it is not apparent from this memorandum that this is an

instance of the Navy supplying samples directly to Phelps Dodge

for evaluating, testing, and recommendations.  Rather, the only

thing that can be said is that the Navy has given Phelps Dodge

data, which has been reviewed by Phelps Dodge.  In the first

paragraph discussing the power cable, the memorandum makes

reference to the manufacturer producing a "cable which will pass

the specification," not to the manufacturer advising the Navy

what the specification should be.  (Id., Ex. B, "Inter-Office

Correspondence").  This document does not do what the plaintiff

contends it does, i.e. illustrate that the Navy consulted with

industry and sought industry's advice and recommendations on

materials and testing.

However, the third document does appear to document a meeting that was part of a process of the Navy consulting with industry and seeking its advice and recommendations on materials and testing. The third document is a March 21, 1949 report of a meeting attended by representatives of the Navy and individuals from various companies. The purpose of the meeting was to review the combined experiences of the military and industry in the use of underwater cable. But it is clear from the portion of the report that has been provided by the plaintiff that, unlike the Navy's standards and procedures with respect to asbestos that were already in place, this was a new product for use by the Navy. The report also appears to indicate that the Navy would be writing the specification for the cable and had simply gotten input from people in private industry who were familiar with the area before proceeding to write the specification. Thus, this document is consistent with the defendants' contention that once the Navy had developed specifications in a particular area, compliance with those specifications was required.

Finally, the plaintiff relies on the recent Second Circuit holding in MTBE. In MTBE, several states brought actions in state court against corporations that manufactured or sold gasoline containing methyl tertiary butyl ether ("MTBE"). The corporations attempted to remove the actions to federal court,

arguing that the federal officer removal statute was applicable merely because the defendants were participants in a heavily regulated industry.  The Second Circuit held that removal was inappropriate because the Clean Air Act and its implementing regulations did not require the use of MTBE, and therefore, the corporations had failed to establish that they were acting under a federal officer or agency.  MTBE, 488 F.3d at 124-132.  The court concludes that MTBE is inapposite.  Here, the defendants have not produced evidence which establishes merely that they were participants in a heavily regulated industry, but rather have produced evidence that establishes that they were operating under the direct control of federal officers.[1]

The court finds the evidence produced by the defendants more persuasive than the fact that Buffalo Pumps put a warning label relating to asbestos on its pumps in 1987 and the fact that Navy officials held a meeting with representatives of Phelps Dodge and other companies in 1949 to review the combined experiences of the military and industry in the use of a new product, i.e. underwater cable.

**4.    The "Defective Design" Claim**

The defendants contend that, in addition to a failure to

---

[1] The plaintiff also argues that the court should be wary of permitting removal of the case because of inefficiencies present in the asbestos litigation before the Multi-district Litigation Panel. This argument is irrelevant to the merits of the instant motion.

warn claim, the plaintiffs set forth a defective design claim in
the Amended Complaint.  The plaintiff alleges, <u>inter alia</u>, that
the "asbestos-containing products were unreasonably defective"
because "said products were and are unreasonably dangerous, in
that they were and are dangerous to an extent beyond that which
the ordinary worker in the position of the plaintiff would
contemplate."  (GE's Mem. Opp., Ex. 8, Amended Complaint, ¶
6(a)(2)).  As discussed above, the defendants have submitted
affidavits from Horne, who avers that "the Navy retained the
'final say' over the design of any piece of equipment," (Horne
Aff. ¶ 9), and Lehman, who avers that "the Navy had complete
control over every aspect of each piece of equipment." (Lehman
Aff. ¶ 4).  Therefore, the defendants have a military contractor
defense to the defective design claim.  The court agrees with the
defendants that this case is properly removable to federal court
as long as they have a military contractor defense to any of the
plaintiff's claims.  The plaintiff had no response to this
argument either in her submissions to the court or during oral
argument, and the court finds that the defendants have also
satisfied the requirements for federal officer removal based on
the defective design claim.

### III. CONCLUSION

For the reasons set forth above, the Plaintiffs' Motion to
Remand (Doc. No. 21) is hereby DENIED.

-20-

It is so ordered.

Dated this 13th day of November 2007 at Hartford,

Connecticut.

_____/s/ AWT_____
Alvin W. Thompson
United States District Judge

# **Exhibit 2**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------x
                              :
LAURA CONTOIS,                :
EXECUTRIX OF THE ESTATE OF    :
HUGO MORTENSON,               :
                              :
          Plaintiff,          :
                              :     Civil No.3:07CV01328(AWT)
v.                            :
                              :
ABLE INDUSTRIES INC., ET AL., :
                              :
          Defendants.         :
                              :
-----------------------------x
```

**ORDER RE PLAINTIFF'S MOTION**
**TO VACATE CONDITIONAL TRANSFER ORDER TO MDL**

Plaintiffs' Motion to Vacate Conditional Transfer Order to MDL (Doc. No. 59) is hereby DENIED.

Although a conditional order transferring this case to the Asbestos Multi-District Litigation in Philadelphia, Pennsylvania (MDL-875) has not yet been issued, the plaintiff has moved to vacate the order that it anticipates will be issued. As an initial matter, the motion should be denied because it is premature. However, in any event, this court is not the proper court to determine whether a conditional or final transfer order should be issued, and it also lacks jurisdiction to vacate a final transfer order.

The controlling statute  provides that "[s]uch transfers shall be made by the judicial panel on multidistrict litigation

-1-

authorized by this section upon its determination that transfers
for such proceedings will be for the convenience of parties and
witnesses and will promote the just and efficient conduct of such
actions." 28 U.S.C. § 1407(a). In addition, Rule 7.4 of the
Rules of Procedure of the Judicial Panel on Multidistrict
Litigation provides that objections to a conditional transfer
order must be filed with the panel itself, not with the district
court in which the action was originally filed. Rule 7.4(a)
provides, "[a]n order may be entered by the Clerk of the Panel
transferring that action to the previously designated transferee
district court on the basis of the prior hearing session(s) and
for the reasons expressed in previous opinions and orders of the
Panel in the litigation." Rule 7.4(c) provides, "Any party
opposing the transfer shall file a notice of opposition with the
Clerk of the Panel within the fifteen-day period." Finally, Rule
7.4(d) provides, "Within fifteen days of the filing of its notice
of opposition, the party opposing transfer shall file a motion to
vacate the conditional transfer order and brief in support
thereof. The Chairman of the Panel shall set the motion for the
next appropriate hearing session of the Panel." Thus, the
plaintiff's arguments that (i) the prerequisites for a transfer
are not satisfied in this case, and (ii) transferring this case
to the MDL would violate the plaintiff's constitutional rights
should be addressed to the panel in the first instance.

-2-

In addition, 28 U.S.C. § 1407(e) provides:

No proceedings for review of any order of the panel may be permitted except by extraordinary writ pursuant to the provisions of title 28, section 1651, United States Code.  Petitions for an extraordinary writ to review an order of the panel to set a transfer hearing and other orders of the panel issued prior to the order either directing or denying transfer shall be filed only in the court of appeals having jurisdiction over the district in which a hearing is to be or has been held. Petitions for an extraordinary writ to review an order to transfer or orders subsequent to transfer shall be filed only in the court of appeals having jurisdiction over the transferee district. There shall be no appeal or review of an order of the panel denying a motion to transfer for consolidated or coordinated proceedings.

Thus, the statute clearly contemplates that the decision as to whether to transfer a case rests with the panel on multidistrict litigation, and that any request for review of a final transfer order be filed with the court of appeals with jurisdiction over the transferee district.  The district court in which the action was originally filed does not have jurisdiction at either step.

It is so ordered.

Dated this 4th day of December 2007 at Hartford, Connecticut.

_____/s/AWT_____
Alvin W. Thompson
United States District Judge

# Exhibit 3

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS     :     **MULTIDISTRICT LITIGATION**
LIABILITY LITIGATION          :     **NO. MDL 875**

### ADMINISTRATIVE ORDER NO. 11

Whereas Asbestos Products Liability Litigation (MDL 875) has been an active, ongoing multidistrict action since July 29, 1991, and

Whereas the undersigned transferee judge has analyzed the existing Court case management procedures as they relate to MDL 875, and is of the view that adjustments of these procedures need to be made to allow a more efficient discharge of the transferee court's responsibilities, it is hereby

**ORDERED** that the following modifications to the existing procedures for the processing of cases, dockets, pleadings and orders in MDL 875 cases are adopted:

1.     *Calendar Management.*

Effective immediately, and except as otherwise set forth herein, the management of the case files and dockets for all pending MDL 875 cases (and, the files and dockets for all future MDL 875 cases filed after the entry of this Administrative Order) shall be transferred to the Transferee Court in accordance with both the schedule compiled by the Clerk of the Transferee Court and the following terms:

A.     **Actions to be taken by the Clerks of the Transferor Courts.**

I.     The Clerks of the Transferor Courts shall retain all case files for those actions in which all claims have been completely resolved between all parties, including bankrupt defendants, whether by dismissal, stipulation or attrition. Unless otherwise directed, case files and dockets of cases previously remanded to the Transferor Courts by the Judicial Panel on Multidistrict Litigation shall also be retained by the Transferor Court. In addition, the Clerks of the Transferor Courts shall retain all case files and dockets for those actions transferred to a state court or a federal district court registry which has been previously specifically established for the placement and tracking of asbestos personal injury cases which do not currently meet specified criteria for advancement to trial.

II.     The remaining cases having unresolved claims against bankrupt defendants and non-bankrupt defendants shall be transferred to the Transferee Court in the following manner:

a.     In the interests of administrative efficiency and uniformity, upon the entry of an Order of Transfer by the undersigned

judge, a list of all cases to be transferred shall be sent by the Clerk of the Transferee Court to the Clerk of the Transferor Court. The Clerk of the Transferee Court shall retrieve a copy of each docket sheet from the CM/ECF system from the Clerk of the Transferor Court for the transferred cases, and shall initiate a new file in the Transferee Court. The Clerk of the Transferor Court shall mark the Transferor Court's file "CLOSED."

b.    In the event the Transferor Court does not maintain its MDL 875 cases under the CM/ECF system, a paper copy of each docket sheet for the cases to be transferred shall be forwarded to the Clerk of the Transferee Court.

c.    New pleadings, documents and other papers received for filing after the case has been transferred shall be forwarded to the Clerk of the Transferee Court, and the Clerk of the Transferor Court shall notify all counsel concerned, as well as all *pro se* parties, that all future pleadings are to be filed with the Clerk of the Transferee Court, in accordance with the conditions set forth in Section 1.B.II of this Administrative Order, by giving notice of this Order to counsel and to any *pro se* party.

III.    Documents in any asbestos personal injury lawsuit involving MDL 875 filed in any one Transferor Court shall not be filed in the Transferee Court until a Transfer Order has been entered in the Transferee Court that states that documents in that specific Transferor Court shall be filed in the Transferee Court.

IV.    Any document in any asbestos personal injury lawsuit involving MDL 875, over which the Transferor Court, and not the Transferee Court, has jurisdiction and venue, shall not be filed in the Transferee Court until a Transfer Order has been entered in the Transferee Court that states that documents in that specific Transferor Court shall be filed in the Transferee Court.

**B.    Actions to be taken by the Clerk of the Transferee Court.**

I.    The Clerk of the Transferee Court shall maintain dockets and create case files in all actions transferred from the Transferor Courts as soon as they are received.

II.    All documents submitted to the Clerk of the Transferee Court shall be treated in all respects in accordance with the Transferee Court's Local Rules of Civil Procedure 5.1.2; 5.1.3; and, 5.1.4. All attorneys who file documents pursuant to the Transferee Court's Local Rule of Civil Procedure 5.1.4 shall apply for a signature code by completing and filing with the Clerk of the Transferee Court a

Validation of Signature Form, a copy of which is attached hereto. Such an attorney's signature code shall be entered on the signature line of the courtesy copy of the document for the purpose of signature validation pursuant to Federal Rule of Civil Procedure 11.

III.    The Clerk of the Transferee Court shall compile a schedule of all MDL 875 cases in order to allow for the more efficient transfer of MDL 875 cases from the Transferor Court to the Transferee Court.

IV.    The Clerk of the Transferee Court shall submit to the undersigned transferee judge a quarterly pending caseload status report specific to the Transferee Court and each Transferor District Court.

2.    *Motions.*

All Motions pending in MDL 875 which are neither granted nor denied as of the date of transfer of a case from the Clerk of the Transferor Court to the Clerk of the Transferee Court shall be deemed denied *without prejudice* and with all time requirements held in abeyance from the initial date of filing. Counsel may refile any unresolved motions for further transferee court action. Motions brought in accordance with the procedures contained in Administrative Order #3 shall be preceded by a telephone conference with the Court. Disputing counsel shall attempt to resolve issues between the parties without Court assistance, and failing resolution, through a telephone conference with the Court prior to the filing of any disputed motion.

3.    *Exclusions.*

The dockets and files for cases filed in the United States District Court for the Northern District of Ohio under the designation "MARDOC-MDL875(2)" shall not be transferred at this time under the terms of this order.

4.    *Conflicts.*

To the extent that any conflicts exist, this Administrative Order shall take precedence over and supercede all previous administrative orders in this Multidistrict Litigation consolidation.

**BY THE COURT:**

__8/15/06___                              _/s/ James T. Giles_____
**DATE**                                   **JAMES T. GILES, J.**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS
LIABILITY LITIGATION (NO. VI)          :

                                     Civil Action No. MDL 875

**This Document Relates To:**
    **ALL ACTIONS**
——————————————————x

## ADMINISTRATIVE ORDER NO 12

THE COURT, after examination of current procedures in place in this matter, and with a desire to facilitate the expeditious movement of pending cases on the MDL docket, and having had the benefit of input from the court-appointed plaintiff and defendant steering committees, hereby imposes the following filing requirements and procedures:

**1.    SUBMISSION OF IDENTIFICATION INFORMATION**

All plaintiffs shall submit to the Court a report identifying each plaintiff by full name, date of birth, last four digits of plaintiffs SSN, and a statement indicating the status of the plaintiff in the case before this Court; ie., asbestos-related injury victim, spouse of injured party, administrator of injured party of deceased injured party, executor(trix), child of injured party, etc.

**2.    SUBMISSION OF RELATED COURT ACTIONS**

Each plaintiff shall identify each and every prior or pending court or administrative action brought with the intent of satisfjlng in whole or in part the damages sustained by the plaintiffs alleged asbestos-related personal injury. In each such instance the plaintiff shall identify the claim, the parties involved and the results of any action thereon.

**3.    SUBMISSION OF STATEMENT OF CASE STATUS**

The plaintiff in each case shall identify all of the named defendants in the following manner:

a) Each defendant with whom the plaintiff has achieved resolution of his/her claim, whether by settlement or agreement to dismiss without payment or by payment of a claim through the bankruptcy court, shall be identified and, where a dismissal has not yet been entered of record, a proposed order shall be submitted.

b) Each defendant that the plaintiff now desires to dismiss from the action, with or without prejudice, the reason for the dismissal, and a proposed order.

c) Each remaining defendant that is currently in bankruptcy with a claim pending, together with an order for the transfer of the claim to an inactive docket which the court has created for the holding of such claims.

d) Each non-bankrupt unsettled defendant.

## 4.   SUBMISSION OF MEDICAL REPORTS

Each plaintiff asserting a claim based upon an alleged asbestos-related malignancy shall submit to the court a copy of the medical diagnosing report or opinion upon which the plaintiff now relies for the prosecution of the claim as if to withstand a dispositive motion.

Each plaintiff asserting a claim based upon an alleged non-malignant injury or condition shall submit to the court a copy of the medical diagnosing report or opinion upon which the plaintiff now relies for the prosecution of the claim as if to withstand a dispositive motion.

Each report or opinion submitted hereunder shall be based upon objective and subjective data which shall be identified and descriptively set out within the report or opinion.

## 5.   ALTERNATIVE PLAINTIFF SUBMISSION

Alternative submissions to the court are acceptable under the following circumstances:

a) If the plaintiff has remaining claims only against bankrupt parties and is desirous of seeking payment on those claims through the bankruptcy action, then, as an alternative to the required submissions under sections 2. and 4. above, the plaintiff may submit a proposed order for the transfer of this case to the "Bankrupts Only" docket in the form attached.

b) If the plaintiff has viable claims remaining against both bankrupt and non-bankrupt parties and wishes to pursue through the bankruptcy action only those claims remaining against the bankrupt parties, then, as an alternative to the required submissions under sections 2. and 4. above, the plaintiff may submit a proposed order for the dismissal of the non-bankrupt parties with prejudice and the transfer of the remaining claims against the bankrupt parties to the "Bankrupts Only" docket in the form attached.

c) The plaintiff may at any time submit to the court a proposed order to dismiss his/her case against all parties with prejudice. Plaintiff may also request a dismissal against any or all parties without prejudice; however, notice must be given to all parties, any of whom may file an objection within thirty (30) days thereafter. The court will hold a hearing if deemed necessary.

6.   **TIMING REQUIREMENTS**

Plaintiffs shall submit required documentation and proposed orders to the court in accordance with the schedule set forth:

a) Plaintiffs whose cases were filed during the years 2007, 2006, and before July 29, 1991 shall file with the court their required papers on or before August 1, 2007.

b) Plaintiffs whose cases were filed between July 29, 1991 and December 31, 1995 shall file with the court their required papers on or before September 1, 2007.

c) Plaintiffs whose cases were filed in 1996, 1997 and 1998, shall file with the court their required papers on or before October 1, 2007.

d) Plaintiffs whose cases were filed in 1999, 2000, 2001 and 2002, shall file with the court their required papers on or before November 1, 2007.

e) Plaintiffs whose cases were filed in 2003, 2004, and 2005 shall file with the court their required papers on or before December 1, 2007.

The court may dismiss pursuant to F.R.C.P. 41(b) the cases of any plaintiffs who fail to comply with the requirements set forth.

7.   **SCREENED CASES**

Current litigation efforts in this court and in the silica litigation have revealed that many mass screenings lack reliability and accountability and have been conducted in a manner which failed to adhere to certain necessary medical standards and regulations. The result is that mass screenings create an inherent suspicion as to their reliability. Where screenings have been conducted by the Sheet Metal Occupational Health Institute Trust and other organizations utilizing standards and protocols established by the American Thoracic Society (ATS), the Association of Occupational and Environmental Clinics (AOEC), and other accredited health organizations, there is a larger probability of adequacy for the reliability foundation necessary for admissibility. This court will therefore entertain motions and conduct such hearings as may be necessary to resolve questions of evidentiary sufficiency in non-malignant cases supported only by the results of mass screenings which allegedly fail to comport with acceptable screening standards.

8.   **EXCLUSIONS**

The cases designated as 2MDL 875 (MARDOC) shall be excluded from the requirements set forth and those actions shall continue to be governed by the requirements of previous orders of this court concerning the management of the MARDOC cases.

9.   **SETTLEMENT CONFERENCES/SUGGESTIONS OF REMAND**

The court intends upon stepping up the pace of settlement conferences and will accordingly issue orders to that effect. Counsel are expected to comply with all requirements of the notice and to be prepared at the conference. All parties shall submit to the court at the time of the first settlement conference in any case a **short** position paper stating their position relative to disease, exposure and damages. Mitigating factors for the purposes of settlement shall also be set forth

If the parties have failed to achieve settlement following one or more settlement conferences and working with the court, the case may be referred to mediation or, if the court finds that the parties have negotiated in good faith without success, the court may suggest the case for remand. A determination of good faith may not be necessary with regard to all defendants. The court will continue to prioritize malignant and exigent cases.

10. <u>**MANNER OF SUBMISSIONS**</u>

All submissions to be made to the court pursuant to this order shall be paper filings with copies provided to all remaining viable parties in accordance with Rule 5, F.R.C.P.

IT IS SO ORDERED

Date: 5/31/07

BY THE COURT

James T. Giles, J.

[Administrative Order No. 12 - Exhibit to Section 5 a)]

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS      :
LIABILITY LITIGATION (NO. VI)    :     Civil Action No.  MDL - 875

This Document Relates To:

## UNITED STATES DISTRICT COURT
### FOR THE (name of Transferor District)

DOE, John and Mary             :
                       :
      v.                  :     Civil Action No. (Transferor Ct. No.)
                       :
ABC Corp., et al.             :

## MOTION AND ORDER TO TRANSFER TO "BANKRUPT's ONLY" DOCKET

Plaintiff hereby submits to the Court, in accordance with this Court's Administrative Order No. 12, that the only remaining claims in this action are against defendants in bankruptcy and that the defendant wishes at this time to pursue those claims through the bankruptcy claim process.

Plaintiff therefore moves that this action be transferred to the Court's administrative "Bankrupt's Only" docket. The Plaintiff understands that should there be a change of circumstances, the Plaintiff may, upon compliance with Administrative Order No. 12, petition the Court to have this action reinstated against certain defendants.

Plaintiff further understands that it is Plaintiff's responsibility to submit a final dismissal order to this Court when all claims have been resolved.

SUBMITTED BY:                      SO ORDERED

_____ (   /   /   )      _____ J.
(Counsel for Plaintiff)             James T. GILES
address                          (   /   /   )
tel. No.

[Administrative Order No 12 - Exhibit to Section 5 b)]

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | : | |
| LIABILITY LITIGATION (NO. VI) | : | Civil Action No.  MDL - 875 |

---

### This Document Relates To:

---

### UNITED STATES DISTRICT COURT
### FOR THE (name of Transferor District)

| | | |
|---|---|---|
| DOE, John and Mary | : | |
| | : | |
| v. | : | Civil Action No. (Transferor Ct. No.) |
| | : | |
| ABC Corp., et al. | : | |

---

## MOTION FOR PARTIAL DISMISSAL AND ORDER TO TRANSFER TO
## "BANKRUPT's ONLY" DOCKET

Plaintiff hereby submits to the Court, in accordance with this Court's Administrative Order No. 12, that the remaining claims in this action are against bankrupt and non-bankrupt defendants. Plaintiff desires to dismiss with prejudice all claims against the remaining non-bankrupt defendants and pursue those claims remaining against the bankrupt defendants through the bankruptcy claim process.

The remaining non-bankrupt defendants to be dismissed with prejudice are:
(list non-bankrupt defendants to be dismissed with prejudice)

Plaintiff therefore moves that, following the dismissal of the non-bankrupt defendants, this action be transferred to the Court's administrative "Bankrupt's Only" docket. The Plaintiff understands that should there be a change of circumstances, the Plaintiff may, upon compliance with Administrative Order No 12, petition the Court to have this action reinstated against certain bankrupt defendants.

Plaintiff further understands that it is Plaintiff's responsibility to submit a final dismissal order to this Court when all claims have been resolved.

SUBMITTED BY:                          SO ORDERED

_____( / / )         _____J.
(Counsel for Plaintiff)                James T. GILES
address                                ( / / )
tel. No.

# **Exhibit 4**

170 F. Supp. 2d 1348, *; 2001 U.S. Dist. LEXIS 17555, **
IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI); Justin Shane Wooley
v. International Paper Co., et al., S.D. Mississippi, C.A. No. 1:01-237; Sylvia Ann
Baden, et al. v. BPU Reynolds, Inc., et al., S.D. Texas, C.A. No. 2:01-288
DOCKET NO. 875, C.A. No. 1:01-237, C.A. No. 2:01-288
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION
170 F. Supp. 2d 1348; 2001 U.S. Dist. LEXIS 17555

October 18, 2001, Filed
PRIOR HISTORY: Doval v. Maremont Corp. (In re Asbestos Prods. Liab. Litig.), 2001
U.S. Dist. LEXIS 13761 (J.P.M.L. Aug. 29, 2001)

DISPOSITION:  [**1]  Action was transferred to the Eastern District of Pennsylvania.

CASE SUMMARYPROCEDURAL POSTURE: Two plaintiffs in asbestos litigation moved,
pursuant to J.P.M.L.R.P. 7.4, to vacate the multidistrict litigation panel's order
conditionally transferring their actions to another federal district for inclusion in the
centralized pretrial proceedings occurring there.

OVERVIEW: Plaintiffs argued that transfer to the asbestos multidistrict litigation
should be denied or deferred in order to permit the resolution of pending motion to
remand the actions to state court. The multidistrict panel (panel) found that the
instant cases had common questions of fact with those cases already transferred.
The transfer of such cases did not in any way suspend the orders and pretrial
proceedings in the district courts in which the action was pending. The panel rejected
the argument that transfer should be denied because the way in which the asbestos
multidistrict litigation was being administered effectively deprived the plaintiffs of the
right to a jury trial. Under 28 U.S.C.S. § 1407, the transferee judge could remand
the action for trial with a minimum of delay, however the timing of any remands
should be left to the transferee judge.

OUTCOME: Two asbestos cases were transferred to another federal district for
inclusion in the coordinated or consolidated pretrial proceedings occurring there.

CORE TERMS: pretrial proceedings, transferee, asbestos, transfer order, transferred,
conditional, inclusion, damage claims, punitive damages, transferor, occurring,
punitive, consolidated, compensatory, coordinated, uniqueness, pretrial, pendency,
deferred, issuance, session

LexisNexis® HeadnotesHide
Civil Procedure > Venue > Multidistrict Litigation Civil Procedure > Venue >
Multidistrict Litigation
Civil Procedure > Pretrial Matters > Conferences > Pretrial Orders Civil Procedure >
Pretrial Matters > Conferences > Pretrial Orders
HN1J.P.M.L.R.P. 1.5, expressly provides that the pendency of a conditional transfer
order does not in any way suspend orders and pretrial proceedings in the district
court in which the action that is the subject of the conditional transfer order is
pending, or limit the pretrial jurisdiction of that court; and accordingly, those courts
wishing to address such motions have adequate time in which to do so, those courts
concluding that such issues should be addressed by the transferee judge need not
rule on them, and the process of 28 U.S.C.S. § 1407 transfer can continue without
any unnecessary interruption or delay.  More Like This Headnote | Shepardize:
Restrict By Headnote

Civil Procedure > Venue > Multidistrict Litigation Civil Procedure > Venue > Multidistrict Litigation
Civil Procedure > Judicial Officers > Judges > General Overview Civil Procedure > Judicial Officers > Judges > General Overview
HN2Whenever the transferee judge deems remand of any claims or actions appropriate, procedures have been utilized to accomplish 28 U.S.C.S. § 1407 remand for trial with a minimum of delay. J.P.M.L.R.P. 7.6.  More Like This Headnote

JUDGES: BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, MOREY L. SEAR, BRUCE M. SELYA, JULIA SMITH GIBBONS, D. LOWELL JENSEN AND J. FREDERICK MOTZ, JUDGES OF THE PANEL.

OPINION BY: Wm. Terrell Hodges

OPINION

[*1349] TRANSFER ORDER

Before the Panel are motions brought, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), by plaintiffs in two Southern District of Mississippi and Southern District of Texas actions to vacate the Panel's orders conditionally transferring the actions to the Eastern District of Pennsylvania for inclusion in the centralized pretrial proceedings occurring there in this docket before Judge Charles R. Weiner.

On the basis of the papers filed and hearing session held, the Panel finds that these two actions involve common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the actions to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring in that district will serve the convenience of the parties and witnesses and promote the just and efficient [**2] conduct of the litigation. We find that transfer of the actions is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. See In re Asbestos Products Liability Litigation (No. VI), 771 F. Supp. 415 (J.P.M.L. 1991). In particular, we note that in the Panel's original decision distinctions based on such matters as the pendency of motions or other matters before the transferor court, n1 the uniqueness of a party's status, the type of defendant, the docket condition of any specific federal district, the stage of pretrial proceedings, the presence of unique claims or additional claims not relating to asbestos injury or death, and/or the unanimity of opposition to transfer by the parties to an action, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket.

FOOTNOTES

n1 Plaintiffs in these actions have argued in essence that transfer should be denied or deferred in order to permit the resolution of pending motions to remand the actions to state court. There is no need to delay transfer in order to accommodate such an interest. We note that: 1) as a practical matter, there is a lag time of at least three or four months from the filing of an action, its identification as a potential tag-along action, issuance of a conditional transfer order, stay of transfer when a party timely objects to the conditional transfer, briefing on the question of transfer, the Panel hearing session, and the issuance of the Panel's subsequent order; 2) HN1

Panel Rule 1.5, R.P.J.P.M.L., 199 F.R.D. at 427, expressly provides that the pendency of a conditional transfer order does not in any way i) suspend orders and pretrial proceedings in the district court in which the action that is the subject of the conditional transfer order is pending, or ii) limit the pretrial jurisdiction of that court; and 3) accordingly, those courts wishing to address such motions have adequate time in which to do so, those courts concluding that such issues should be addressed by the transferee judge need not rule on them, and the process of 1407 transfer in MDL-875 can continue without any unnecessary interruption or delay.

[**3]  We are not persuaded to depart from this approach in dealing with the question of transfer of the actions now before the Panel. Plaintiffs in the Southern District of Texas action have suggested that transfer should be denied because the way in which MDL-875 is being administered effectively denies them their constitutional right to a jury trial. We reject this argument. Although the number of Section 1407 remands in this docket is proportionately small, this is only because under Judge Weiner's stewardship the vast majority of transferred actions have been able to be concluded in the transferee district  [*1350]  during the course of pretrial proceedings (as of October 9, 2001, nearly 70,000 such actions have been closed in the transferee district). The fact remains that HN2whenever the transferee judge has deemed remand of any claims or actions appropriate, procedures have been utilized to accomplish Section 1407 remand for trial with a minimum of delay. See Rule 7.6, R.P.J.P.M.L., 199 F.R.D. at 436-38. Accordingly, as of October 9, 2001, over 1,100 actions or claims therein have been returned to their originating transferor districts. The transferee court, when suggesting remand [**4]  of claims, has differentiated between claims for compensatory damages and claims for punitive damages, choosing to retain jurisdiction over punitive damage claims for continuing pretrial effort. The Panel has deferred to this suggested approach, recognizing that the recommendations of the transferee judge regarding the timing of remand should be given great weight, because that judge, after all, is the one who supervises day-to-day pretrial proceedings. When challenged by MDL-875 parties, the appellate court with authority over Panel transfers and remands in this docket has endorsed the Panel's treatment of remand of punitive damage claims: The resources available to persons injured by asbestos are steadily being depleted. The continuing filings of bankruptcy by asbestos defendants disclose that the process is accelerating. It is responsible public policy to give priority to compensatory claims over exemplary punitive damage windfalls; this prudent conservation more than vindicates the Panel's decision to withhold punitive damage claims on remand. It is discouraging that while the Panel and transferee court follow this enlightened practice, some state courts allow punitive damages [**5]  in asbestos cases. The continued hemorrhaging of available funds deprives current and future victims of rightful compensation.In re Collins, 233 F.3d 809, 812 (3rd Cir. 2000), cert. denied, 532 U.S. 1066, 150 L. Ed. 2d 209, 121 S. Ct. 2216 (2001). Finally, with respect to any parties that believe the uniqueness of their particular situation renders inclusion of their action in MDL-875 unnecessary or inadvisable, we are confident that Judge Weiner will continue to promptly review arguments for returning transferred actions or claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever he is convinced that retention in the MDL-875 proceedings is no longer needed.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, these two actions are transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or

consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

Wm. Terrell Hodges

Chairman