**875**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION
## MDL DOCKET NO. 875

FEB 2 8 2008

FILED
CLERK'S OFFICE

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
## PENNSYLVANIA

IN RE ASBESTOS PRODUCTS          )
LIABILITY LITIGATION             )
(NO. VI)                         )
_____  )
                                 )
This Document Relates To:        )
_____  )          **MDL 875**

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PHYLLIS KRAUSE, Individually and as          :
Personal Representative of the Estate of     :
FREDERICK J. KRAUSE, deceased,               :
                                             :
    Plaintiff(s),                       :          Case No. 8:07-cv-1954-T-17TGW
                                             :
- vs. –                                      :
                                             :
BONDEX INTERNATIONAL, INC.,  et. al.,        :
                                             :
    Defendants.                         :
_____             :

PLEADING NO. 5358

---

## LORILLARD TOBACCO COMPANY'S RESPONSE TO PLAINTIFFS' MOTION TO
## VACATE THE CONDITIONAL TRANSFER ORDER

---

### INTRODUCTION

Defendant Lorillard Tobacco Company ("Lorillard") respectfully submits this

Response to Plaintiffs' Motion to Vacate the Conditional Transfer Order.  The Panel should deny

Plaintiffs' motion because: (1) Plaintiffs' case is plainly a "tag-along" action involving common

questions of fact with personal injury and wrongful death asbestos actions already transferred to

# OFFICIAL FILE COPY

the consolidated asbestos litigation now pending in the United States District Court for the Eastern District of Pennsylvania (MDL DOCKET NO. 875) pursuant to 28 U.S.C.§1407; and (2) no grounds exist for exempting this case from transfer to MDL-875.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 11, 2007, Plaintiffs filed a Complaint in Hillsborough County, Florida, Case No. 07-11911.  A copy of the Complaint is attached hereto as Exhibit A.  The Plaintiffs allege that Frederick J. Krause died on September 11, 2005, as a result of mesothelioma caused by his exposures to asbestos-containing products manufactured, sold, and/or distributed by Defendants.  On October 29, 2007, Defendant Lorillard removed this action to the United States District Court for the Middle District of Florida based on diversity jurisdiction, pursuant to 28 U.S.C. § 1441.  On January 22, 2008, the Clerk of the Judicial Panel on Multidistrict Litigation ("the Panel") issued Conditional Transfer Order (CTO-300) transferring this case, among others, to MDL-875 pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("R.P.J.P.M.L.") and 28 U.S.C. § 1407.  A copy of CTO-300 and the Clerk's transmittal letter are attached hereto as Exhibit B and Exhibit C, respectively.  On February 6, 2008, Plaintiffs filed a Notice of Opposition to CTO-300 and a Brief in Support of Vacating CTO-300.

## ARGUMENT

**A.    THE STANDARD FOR TRANSFER OF "TAG-ALONG" PERSONAL INJURY AND WRONGFUL DEATH ASBESTOS ACTIONS TO MDL-875.**

Under 28 U.S.C. § 1407, this Panel is authorized to transfer civil actions pending in more than one district to a single district for consolidated pretrial proceedings.  Transfer is appropriate where: (1) the actions involve "one or more common questions of fact"; (2) transfer

"will be for the convenience of parties and witnesses"; and (3) transfer "will promote the just and efficient conduct of said actions." 28 U.S.C. § 1407(a).

On July 29, 1991, the Panel issued an order transferring over 20,000 personal injury and wrongful death asbestos actions pending in the federal courts to the United States District Court for the Eastern District of Pennsylvania pursuant to § 1407, assigning them to Judge Charles R. Weiner for coordinated or consolidated pretrial proceedings. See In re Asbestos Prods. Liab. Litig. (No. VI). 771 F.Supp. 415 (J.P.M.L. 1991) ("the 1991 Order"). Concerned by the increasing number of asbestos lawsuits pending nationwide which threatened to overwhelm the courts and frustrate the meaningful resolution of claims, the Panel sought, through consolidation in a single § 1407 proceeding, to relieve the courts of their burden, to provide for uniform case management and to reduce transaction costs. See id. at 418-20. The Panel concluded that the involved actions dealt with "common questions of fact relating to injuries or wrongful death allegedly caused by exposure to asbestos or asbestos containing products, and that centralization under § 1407 in the Eastern District of Pennsylvania will best serve the convenience of the parties and witness and promote the just and efficient conduct of this litigation." Id. at 417 (emphasis added). The litigation was reassigned to Judge James T. Giles pursuant to 28 U.S.C. § 1407 on December 9, 2005.

The 1991 Order specifically addressed so-called "tag-along" actions, reminding parties and counsel of their continuing obligation to notify the Clerk of the Panel of any potential tag-along actions. See id. at 424. Rule 1.1 of the R.P.J.P.M.L. defines a tag-along action as "a civil action pending in a district court and involving common questions of fact with actions previously transferred under Section 1407." Rule 7.4 of the R.P.J.P.M.L. authorizes the Panel to issue a conditional transfer order upon learning of the pendency of a potential tag-along action.

The January 22, 2008 transmittal letter enclosing CTO-300 identified this case as a potential tag-along action. Transfer of a potential tag-along action is appropriate where the action raises questions of fact common to those in actions previously transferred under § 1407. Consolidation with the previously transferred actions will further the purposes of § 1407, that is, transfer will best serve the convenience of the parties and witnesses and promote the efficient conduct of the litigation. See In re Air Crash Disaster, 424 F.Supp. 1075, 1076 (J.P.M.L. 1977).

**B.  BECAUSE THIS "TAG-ALONG" ACTION MEETS THE STANDARD FOR TRANSFER TO MDL-875, THE PANEL SHOULD DENY PLAINTIFFS' MOTION TO VACATE CTO-300.**

Plaintiffs contend that this case should not be transferred to MDL-875 because (1) transfer would be inconvenient and burdensome for the Plaintiffs and potential witnesses; and (2) transfer would not promote efficient conduct of the litigation. In creating MDL-875, the Panel previously rejected each of these arguments for avoiding a § 1407 transfer. Accordingly, Plaintiffs' motion should be denied.

**1.  This Action Involves Common Questions of Fact with Actions Pending in MDL-875 Because Plaintiffs Claim Injuries Allegedly Caused By Exposure To Asbestos Or Asbestos-Containing Products.**

Plaintiffs do not dispute that the Krause case shares common, if not identical, questions of fact with those actions pending in MDL-875. Cases involving asbestos-related injuries resulting from alleged occupational and non-occupational exposures to a variety of products sustained in a variety of locations - like the Krause case - are generally transferred to MDL-875. Section 1407 "does not require that there be strict identity of issues or a predominance of common questions or that they be central to or determinative of the controversy in order to justify transfer." 15 Charles Allen Wright, et al., Federal Practice and Procedure § 3863 at 523 (1986). In resolving this case, the parties will inevitably address issues such as product identification, product exposure, medical causation, state-of-the-art, and damages.

These very same questions are at issue in the cases pending in MDL-875. The Panel's 1991 Order set forth a broad standard for inclusion, which encompasses all actions involving common questions of fact relating to injuries or wrongful death allegedly caused by exposure to asbestos or asbestos containing products. In re Asbestos Prods. Liab. Litig. (No. VI). 771 F. Supp. at 417. Accordingly, this action is precisely the type of case that belongs in MDL-875.

> **2.     The Convenience Of The Parties And Witnesses Will Not Be Negatively Impacted By Transfer Of This Case.**

Plaintiffs argue that transfer will be inconvenient for the parties and witnesses because the Plaintiffs, potential unidentified witnesses, and Plaintiffs' treating physicians and other healthcare providers reside in or near Hillsborough County, Florida. When creating MDL-875, however, the Panel rejected these very arguments as misplaced, noting that "since § 1407 transfer is primarily for pretrial, there is usually no need for the parties and witnesses to travel to the transferee district for depositions or otherwise" and that "judicious use of liaison counsel, lead counsel and steering committees will eliminate the need for most counsel to ever travel to the transferee district." In re Asbestos Prods. Liab. Litig. (VI), 771 F. Supp. at 422; see also In re Sugar Indus. Antitrust Litig. (East Coast), 471 F.Supp. at 1094 (noting that depositions of parties and witnesses can be taken in the district where they reside).

The Panel further pointed out that the anticipated cost savings of consolidation would negate any inconvenience. See In re Asbestos Prod. Liab. Litig. (No. VI), 771 F.Supp. at 422. Moreover, should this case go to trial, it will be tried in the Middle District of Florida rather than the Eastern District of Pennsylvania. See Lexecon Inc. v. Milgberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 34 (1998) (holding that 28 U.S.C. § 1407(a) "obligates the [MDL] Panel to remand any pending case to its originating court when…pretrial proceedings have been terminated"). Given that the parties will not have to travel to the Eastern District of

Pennsylvania for either trial or depositions, Plaintiffs cannot in good faith argue that transfer to the Eastern District of Pennsylvania is inconvenient for them.

### 3.    Transfer Of This Case Is Just And Efficient.

In creating MDL-875, this Panel recognized the benefits of consolidating personal injury/wrongful death asbestos actions.  The Panel noted that the complexity of asbestos cases makes them expensive to litigate, costs are exacerbated when each individual has to prove his or her claim *de novo*, and high transaction costs reduce the recovery available to successful plaintiffs.  In re Asbestos Prod. Liab. Litig. (No. VI), 771 F.Supp. at 419.  MDL-875 is therefore intended to streamline the efforts of parties and witnesses, their counsel, and the judiciary to reduce the cost and inconvenience of multiple plaintiff asbestos cases.  Id. at 422.  In 1996, Judge Wiener reported that MDL-875 had in fact lowered costs in the asbestos litigation by reducing expensive discovery and repetitive proceedings and by encouraging settlements.  See In re Asbestos Prod. Liab. Litig. (No. VI), 1996 WL 539589, at *1 (E.D. Pa. Sept. 16, 1996). Furthermore, MDL-875 is equipped to integrate discovery proceedings in newly transferred cases into discovery proceedings already pending in MDL-875 thus promoting efficiency.  See In re Pennsylvania Life Co. Sec. Litig., 436 F. Supp. 406, 408 (J.P.M.L. 1977).

As this Panel is well aware, MDL-875 was reassigned to Judge Giles on December 9, 2005.  Since then, MDL-875 has undergone substantial changes.  According to the MDL docket, since December 9, 2005, numerous cases have been either remanded in part to federal courts,[1] or have been the subject of a Suggestion of Remand.  Second, the MDL Court has issued several orders with the specific intent to further improve the efficiency of the asbestos MDL's procedures.  In July 2006, Judge Giles relieved all plaintiffs' and defendants' attorneys of

---

[1]    As a general rule, when cases are remanded to a district court, pursuant to 28 U.S.C. § 1407, the severed claims for punitive or exemplary damages remain in MDL-875.

their positions as liaisons or members of the MDL committee. He then appointed a Joint Plaintiffs'/Defendants' Steering Committee to analyze MDL administrative issues and suggest solutions to the court. See Administrative Order No. 10, attached hereto as Exhibit D. Furthermore, MDL-875 Administrative Order No. 11 issued by Judge Giles on August 15, 2006, evidences his commitment to efficient procedures: "[T]he undersigned transferee judge has analyzed the existing Court case management procedures as they relate to MDL-875, and is of the view that adjustments of these procedures need to be made to allow a more efficient discharge of the [MDL's] responsibilities." See Administrative Order No. 11, In re Asbestos Products Liability Litigation (No VI), attached hereto as Exhibit E. At the same time, Judge Giles implemented new procedures to improve the MDL's calendar management, motions, exclusions, and conflicts. Id. More recently, Judge Giles issued Administrative Order No. 12, In re Asbestos Products Liability Litigation where, after extensive hearings, he stated that medical reports generated by asbestos litigation screenings "lack reliability and accountability," and concluded that the Court would entertain motions and conduct hearings to insure the evidentiary sufficiency of claims in non-malignant cases. 2007 WL 2372400, *2 (E.D. Pa. May 31, 2007). In implementing these new measures, Judge Giles affirmed his commitment to facilitate the expeditious movement of pending cases on the MDL docket. Id. at *1

Contrary to Plaintiffs' assertions, resolution of Plaintiffs' claims under MDL-875 is not merely theoretical. Judge Giles' actions demonstrate that the Court will only serve to improve the efficient and just resolution of Plaintiffs' case, while minimizing litigation costs.

Plaintiffs' case clearly meets each 28 U.S.C. § 1407 criteria for transfer to MDL-875, and Plaintiffs' Motion to Vacate CTO-300 should therefore be denied.

**C.   TRANSFER TO THE MDL WOULD NOT VIOLATE THE PLAINTIFFS' CONSTITUTIONAL RIGHTS**

It is undisputed that this case shares common, if not identical, questions of fact with those actions pending in MDL-875. Plaintiffs, however, argue that the MDL is not a proper forum for this case because the "MDL denies plaintiffs their fundamental rights to redress, open access to the courts and trial by jury." See Plaintiffs' Brief at 8. It appears, therefore, that Plaintiffs are not only arguing that the transfer of this case to the MDL will result in constitutional violations, but that each and every time a case is transferred to MDL-875, a plaintiff's constitutional rights are being violated. This argument is without merit.

The MDL is designed to ensure that all plaintiffs in asbestos litigation have equal access to the courts. In 1991, when it established MDL-875, the Judicial Panel on Multidistrict Litigation stated, "the sheer number of asbestos cases pending threatens to deny justice and compensation to many deserving claimants if each claim is handled individually." Asbestos Products Liability Litigation (No. VI), 771 F.Supp. 415, 419 (1991). The Panel further explained that the backlog in cases was "eroding a fundamental aspiration of our judicial system to provide equality of treatment for similarly situated persons." Id. The Panel anticipated that parties would resist the transfer of their cases to the MDL, stating:

> It is not surprising, therefore, that parties and courts involved in such actions might urge that inclusion of their actions in multidistrict proceedings is inappropriate. The Panel, however, must weigh the interests of all the plaintiffs and all the defendants, and must consider multiple litigation as a whole in light of the purposes of the law."

Id. at 420. The Panel further noted:

> Because many of the arguments of parties seeking exclusion from transfer are intertwined with the merits of their claims or defenses and affect the overall management of this litigation, we are unwilling, on the basis of the record presently before us, to carve out exceptions to transfer. We prefer instead to give the transferee

court the opportunity to conduct a substantive review of such contentions and how they affect the whole proceedings.

Id. The Panel recognized the potential dangers in allowing parties to opt out of inclusion in the MDL and guarded against it.

Plaintiffs' argument, at its base, is that they will be inconvenienced if they must wait for the MDL to resolve any pending pretrial issues before their case can go to trial. The Panel anticipated this argument and addressed it, pointing out that the anticipated cost savings of consolidation would negate any inconvenience. See In re Asbestos Prod. Liab. Litig. (No. VI), 771 F.Supp. at 422. Further, as explained above, Judge Giles has recently instituted substantial changes to the MDL's methods and procedures to increase the efficiency of the MDL and reduce any inconvenience to parties seeking resolution of their claims.

To the extent that Plaintiffs are arguing that they will be denied a jury trial altogether if this case is transferred to the MDL, they are incorrect. The United States Supreme Court has held that the MDL is obligated to remand any pending case to its originating court when pretrial proceedings are complete. See Lexicon, 523 U.S. at 34.

As fully explained above, all cases involving alleged asbestos-related injuries resulting from occupational exposures are subject to being transferred to MDL-875. There is no reason to treat this case differently. Transfer to the MDL will not result in Plaintiffs being singled out for unfair treatment, nor will it result in the violation of any constitutionally protected right. In fact, transferring their case to the MDL complies with the Panel's responsibility and goal to ensure that all plaintiffs are treated equally and that their claims are adjudicated as efficiently as possible.

**D.   THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA MAY PROPERLY RULE UPON PLAINTIFFS' REMAND MOTION**

Finally, Plaintiffs urge the Court to vacate CTO-300 so that the United States District Court for the Middle District of Florida may rule on Plaintiffs' Motion to Remand. Plaintiffs, however, ignore a long line of cases that recognize such motions should be decided after transfer by the transferee court.[2]   In fact, the JPML itself has explicitly stated that the transferee court has the power to decide such motions.  See In re Farmers Ins. Exchange Claims Representatives' Overtime Pay Litigation, 196 F. Supp. 2d 1373, 1373 (J.P.M.L. 2002) ("We note that pending motions to remand actions to their respective state courts can be presented to and decided by the transferee judge").  Further, Plaintiffs have not provided any reasons or authority to suggest that the Middle District of Florida is in a better position than the Eastern District of Pennsylvania to rule on the pending motion to remand.  Accordingly, Plaintiffs' Motion to Vacate the Conditional Transfer Order should be denied.

## CONCLUSION

Lorillard respectfully requests that this Panel deny Plaintiffs' Motion to Vacate the Conditional Transfer Order and allow this case to proceed before Judge Giles in the Eastern District of Pennsylvania.  Because Plaintiffs' alleged injuries from exposure to asbestos and/or

---

[2]   See Jackson v. Johnson & Johnson, Inc., 2001 WL 34048067 *6 (W.D. Tenn. April 3, 2001) (stating the "general rule is for federal courts to defer ruling on pending motions to remand in MDL litigation until after the [JPML] has transferred the case"); See also In re Ivy, 901 F.2d 7, 9 (2d Cir. 1990) ("Once transferred, the jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course. Consistency as well as judicial economy is thus served."); Moore v. Wyeth-Ayers Labs., 236 F. Supp.2d 509, 512 (D. Md. 2002) (staying motion to remand pending MDL transfer "because it furthers the goals of judicial economy and consistency").

asbestos-containing products, this "tag-along" action should be transferred to MDL-875 where

Judge Giles's expertise will promote efficient resolution of the case.


Nailah A. Jaffree
Florida Bar No.  689734
SHOOK, HARDY & BACON L.L.P.
100 North Tampa Street, Suite 2900
Tampa, FL 33602-5810
Telephone:      (813) 202-7100
Fax:                (813) 221-8837
njaffree@shb.com


Christopher Cotton
Angela Splittgerber
SHOOK, HARDY & BACON
2555 Grand Blvd.
Kansas City, MO 64108-2613
Telephone:     816/474-6550
Facsimile:      816/421-5547
ccotton@shb.com
asplittgerber@shb.com

RECEIVED
CLERK'S OFFICE
2008 FEB 26  A II: 03
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FEB 2 8 2008

FILED
CLERK'S OFFICE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically served to all counsel of record this 25th day of February 2008.

Respectfully submitted,

Nailah A. Jaffree
Florida Bar No.  689734
SHOOK, HARDY & BACON L.L.P.
100 North Tampa Street, Suite 2900
Tampa, FL 33602-5810
Telephone:      (813) 202-7100
Fax:              (813) 221-8837
njaffree@shb.com

RECEIVED
CLERK'S OFFICE
2008 FEB 26   A 11: 03
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

- 12 -

Page 1 of 2

IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)

MDL No. 875

PANEL SERVICE LIST (Excerpted from CTO-300)

Phyllis Krause, etc. v. Bondex International, Inc., et al., M.D. Florida, C.A. No. 8:07-1954

Richard C. Binzley
THOMPSON HINE LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Edward J. Cass
GALLAGHER SHARP FULTON
& NORMAN
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC 20001

Christopher J.M Collings
MORGAN LEWIS & BOCKIUS LLP
200 S. Biscayne Boulevard
Suite 5300
Miami, FL 33131-2339

Ceso A. Dern
FERRARO LAW FIRM PA
4000 Ponce De Leon Boulevard
Suite 700
Miami, FL 33146

David A. Damico
BURNS WHITE & HICKTON LLC
Four Northshore Center
106 Isabella Street
Pittsburgh, PA 15212

Evelyn M. Fletcher
HAWKINS & PARNELL LLP
4000 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA 30308-3243

Raymond P. Forceno
FORCENO GOGGIN & KELLER
1528 Walnut Street
Suite 900
Philadelphia, PA 19102

Ellen B. Furman
GOLDFEIN & HOSMER
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Susan M. Hansen
BROWNSON & BALLOU
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

Virginia E. Johnson
FOLEY & MANSFIELD PLLP
4770 Biscayne Boulevard
Suite 1000
Miami, FL 33137

Reginald S. Kramer
OLDHAM & DOWLING
195 South Main Street
Suite 300
Akron, OH 44308-1314

Kathleen M. LaBarge
BICE COLE LAW FIRM
999 Ponce de Leon Boulevard
Suite 710
Coral Gables, FL 33134

David C. Landin
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
LOCKS LAW FIRM LLC
1500 Walnut Street
Philadelphia, PA 19102

Gregory H. Maxwell
CRONDI & MAXWELL
2223 Oak Street
Jacksonville, FL 32204

Daniel F. Molony
SHOOK HARDY & BACON LLP
100 N. Tampa Street
Suite 2900
Tampa, FL 33602

Ronald L. Motley
MOTLEY RICE LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

John J. Repcheck
MARKS O'NEILL O'BRIEN
& COURTNEY PC
Gulf Tower, Suite 2600
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
ROVEN-KAPLAN LLP
2190 North Loop West
Suite 410
Houston, TX 77018

Henry Salas
COLE SCOTT & KISSANE PA
6301 Sunset Drive
South Miami, FL 33143

Richard D. Schuster
VORYS SATER SEYMOUR & PEASE
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008



MDL No. 875 - Panel Service List (Excerpted from CTO-300)(Continued)

Neil Selman
SELMAN BREITMAN & BURGESS
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
KELLEY JASONS MCGUIRE & SPINELLI LLP
Centre Square West
15th Floor
Philadelphia, PA 19102

Robert E. Swickle
JAQUES ADMIRALTY LAW FIRM PC
1370 Penobscot Building
645 Griswold Street
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226-4192

Tracy E. Tomlin
NELSON MULLINS RILEY & SCARBOROUGH LLP
100 North Tryon Street
42nd Floor
Charlotte, NC 28202-4007

Andrew J. Trevelise
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

James K. Weston II
TOM RILEY LAW FIRM
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FEB 2 6 2008

FILED
CLERK'S OFFICE

# EXHIBIT A

IN THE CIRCUIT COURT OF THE 13TH
JUDICIAL CIRCUIT IN AND FOR
HILLSBOROUGH COUNTY, FLORIDA

ASBESTOS LITIGATION

CASE NO:    07  11911

Phylis Krause, Individually and as Personal
Representative of the Estate of
Frederick J Krause, deceased,

**DIVISION A**
RECEIVED AND FILED

     Plaintiff(s),

SEP 1 1 2007

-vs.-

CLERK OF CIRCUIT COURT
HILLSBOROUGH COUNTY, FL

BONDEX INTERNATIONAL, INC., (a subsidiary of BONDEX COMPANY),
CERTAINTEED CORPORATION,
DISCOUNT AUTO PARTS, INC.,
DURO-DYNE CORPORATION,
ELECTROLUX, INC., (as successor in interest to FRIGIDAIRE),
GENERAL MOTORS CORPORATION,
GEORGIA-PACIFIC L.L.C.,
LORILLARD TOBACCO COMPANY (by and through its predecessor
    P. Lorillard Tobacco Company),
OWENS-ILLINOIS, INC.,
RAPID AMERICAN CORPORATION,
REPUBLIC POWDERED METALS, INC., (RPM, INC.)
    (Individually and as success-in-interest to and/or Alter ego of
    and/or otherwise Responsible for The Reardon Company and
    Bondex International),
T H AGRICULTURE & NUTRITION, L.L.C., individually and as
    a successor in interest to THOMPSON-HAYWARD CHEMICAL CO.,
UNION CARBIDE CORPORATION,
WHIRLPOOL CORPORATION,

    Defendants.

1

W0F772817

## COMPLAINT AND DEMAND FOR A JURY TRIAL

COME NOW, the Plaintiffs, Phyllis Krause, Individually and as Personal Representative of the Estate of Frederick J Krause, and file this, their Original Complaint against the Defendants and allege as follows:

1.      Plaintiffs' action is an action for damages in excess of the sum of FIFTEEN THOUSAND AND NO/100 ($15,000.00) DOLLARS.

2.      Phyllis Krause, Individually and as Personal Representative and Survivor of the Estate of Frederick J Krause, is the widow of the Decedent and the representative Plaintiff herein.

3.      The Decedent, Frederick J Krause, was born on July 22, 1938 and died on September 11, 2005, at the age of 67, as a result of mesothelioma caused by his exposures to asbestos-containing products manufactured, sold and/or distributed by Defendants.

4.      The survivors of the Decedent are as follows:

Phyllis Krause - Frederick J Krause's widow

Kimberly Baker - Daughter

Frederick Krause - Son

James Krause - Son

Shawna Nummendtor - Daughter

5.      Decedent resided in the State of Florida at the time of his diagnosis, and at least one of the Defendants against whom this action is brought resides in the county where the above styled circuit court sits; and thus venue of this action properly lies in this court pursuant to Florida Law.

2

6.    "Asbestos and/or asbestos-containing products" as used in this complaint means asbestos as well as any and all materials, products, supplies, and/or goods containing or including asbestos in whole or in any mixture (including as a contaminant) with other materials manufactured, marketed and/or used for any and all purposes, including, but not limited to, joint compounds, joint cements, cements, cigarettes, puttys, coatings, mastics, sealants, adhesives, millboard, siding, pipes, pipecovering, block, washers, dryers, ovens, stoves, brakes, brake lining, clutches, gaskets, packing, motors, plaster, insulation and raw asbestos fibers.

## DEFENDANTS

7.    Defendant, BONDEX INTERNATIONAL, INC., (a subsidiary of BONDEX COMPANY), is a corporation authorized to do and/or doing business within the jurisdiction of this Court, duly organized, created and existing under and by virtue of the laws of Ohio with its principal place of business located in the State of Missouri. At all times material to this cause of action, said Defendant engaged in the manufacture, sale and/or distribution of asbestos-containing products which Plaintiff used or was exposed to in his trade, occupation and/or daily life, during which time asbestos fibers from said Defendant's asbestos-containing products were liberated into the air and inhaled by Plaintiff which caused him to develop mesothelioma and/or other asbestos-related injuries. Service of process on such Defendant is predicated on FLA. STAT. ANN. § 48.081(3) and FLA. STAT. ANN. § 48.091.

8.    Defendant, CERTAINTEED CORPORATION, f/k/a CERTAINTEED PRODUCTS CORP., (subsidiary of Compagnie de Saint-Gobain; successor and/or parent of Keasbey & Mattison Company's Asbestos Cement Pipe Division), is a corporation authorized to do and/or doing business within the jurisdiction of this Court, duly organized, created and existing under and by virtue of the laws of Delaware with its principal place of business located

3

in the State of Pennsylvania. At all times material to this cause of action, said Defendant engaged in the manufacture, sale and/or distribution of asbestos-containing products which Plaintiff used or was exposed to in his trade, occupation and/or daily life, during which time asbestos fibers from said Defendant's asbestos-containing products were liberated into the air and inhaled by Plaintiff which caused him to develop mesothelioma and/or other asbestos-related injuries. Service of process on such Defendant is predicated on FLA. STAT. ANN. § 48.081(3) and FLA. STAT. ANN. § 48.091.

9.      Defendant, DISCOUNT AUTO PARTS, INC., is a corporation authorized to do and/or doing business within the jurisdiction of this Court, duly organized, created and existing under and by virtue of the laws of Florida with its principal place of business located in the State of Florida. At all times material to this cause of action, said Defendant engaged in the manufacture, sale and/or distribution of asbestos-containing products which Plaintiff used or was exposed to in his trade, occupation and/or daily life, during which time asbestos fibers from said Defendant's asbestos-containing products were liberated into the air and inhaled by Plaintiff which caused him to develop mesothelioma and/or other asbestos-related injuries. Service of process on such Defendant is predicated on FLA. STAT. ANN. § 48.081(3) and FLA. STAT. ANN. § 48.091.

10.      Defendant, DURO-DYNE CORPORATION, is a corporation authorized to do and/or doing business within the jurisdiction of this Court, duly organized, created and existing under and by virtue of the laws of New York with its principal place of business located in the State of New York. At all times material to this cause of action, said Defendant engaged in the manufacture, sale and/or distribution of asbestos-containing products which Plaintiff used or was exposed to in his trade, occupation and/or daily life, during which time asbestos fibers from

4

said Defendant's asbestos-containing products were liberated into the air and inhaled by Plaintiff which caused him to develop mesothelioma and/or other asbestos-related injuries. Service of process on such Defendant is predicated on FLA. STAT. ANN. § 48.081(3) and FLA. STAT. ANN. § 48.091.

11.    Defendant, ELECTROLUX, INC., (as successor in interest to FRIGIDAIRE), is a corporation authorized to do and/or doing business within the jurisdiction of this Court, duly organized, created and existing under and by virtue of the laws of Delaware with its principle place of business located in the State of Ohio.  At all times material to this cause of action, said Defendant engaged in the manufacture, sale and/or distribution of asbestos-containing products which Plaintiff used or was exposed to in his trade, occupation and/or daily life, during which time asbestos fibers from said Defendant's asbestos-containing products were liberated into the air and inhaled by Plaintiff which caused him to develop mesothelioma and/or other asbestos-related injuries.  Service of process on such Defendant is predicated on FLA. STAT. ANN. § 48.081(3) and FLA. STAT. ANN. § 48.091.

12.    Defendant, GENERAL MOTORS CORPORATION, is a corporation authorized to do and/or doing business within the jurisdiction of this Court, duly organized, created and existing under and by virtue of the laws of Delaware with its principal place of business located in the State of Michigan.  At all times material to this cause of action, said Defendant engaged in the manufacture, sale and/or distribution of asbestos-containing products which Plaintiff used or was exposed to in his trade, occupation and/or daily life, during which time asbestos fibers from said Defendant's asbestos-containing products were liberated into the air and inhaled by Plaintiff which caused him to develop mesothelioma and/or other asbestos-

related injuries.  Service of process on such Defendant is predicated on FLA. STAT. ANN. § 48.081(3) and FLA. STAT. ANN. § 48.091.

13.   Defendant, **GEORGIA-PACIFIC L.L.C.,** f/k/a GEORGIA PACIFIC CORPORATION, f/k/a GEORGIA HARDWOOD LUMBER CO. f/k/a GEORGIA-PACIFIC PLYWOOD and LUMBER CO. f/k/a GEORGIA-PACIFIC PLYWOOD CO. (successor and/or parent of Bestwall Gypsum Company), is a corporation authorized to do and/or doing business within the jurisdiction of this Court, duly organized, created and existing under and by virtue of the laws of Delaware with its principal place of business located in the State of Georgia. At all times material to this cause of action, said Defendant engaged in the manufacture, sale and/or distribution of asbestos-containing products which Plaintiff used or was exposed to in his trade, occupation and/or daily life, during which time asbestos fibers from said Defendant's asbestos-containing products were liberated into the air and inhaled by Plaintiff which caused him to develop mesothelioma and/or other asbestos-related injuries.  Service of process on such Defendant is predicated on FLA. STAT. ANN. § 48.081(3) and FLA. STAT. ANN. § 48.091.

14.   Defendant, **LORILLARD TOBACCO COMPANY,** (by and through its predecessor P. Lorillard Tobacco Company), is a corporation authorized to do and/or doing business within the jurisdiction of this Court, duly organized, created and existing under and by virtue of the laws of Delaware with its principal place of business located in the State of North Carolina.  At all times material to this cause of action, said Defendant engaged in the manufacture, sale and/or distribution of asbestos-containing products which Plaintiff used or was exposed to in his trade, occupation and/or daily life, during which time asbestos fibers from said Defendant's asbestos-containing products were liberated into the air and inhaled by Plaintiff which caused him to develop mesothelioma and/or other asbestos-related injuries.

6

W0F5505407

W0F770622

Service of process on such Defendant is predicated on FLA. STAT. ANN. § 48.081(3) and FLA. STAT. ANN. § 48.091.

15.    Defendant, OWENS-ILLINOIS, INC., is a corporation authorized to do and/or doing business within the jurisdiction of this Court, duly organized, created and existing under and by virtue of the laws of Delaware with its principle place of business located in the State of Ohio. At all times material to this cause of action, said Defendant engaged in the manufacture, sale and/or distribution of asbestos-containing products which Plaintiff used or was exposed to in his trade, occupation and/or daily life, during which time asbestos fibers from said Defendant's asbestos-containing products were liberated into the air and inhaled by Plaintiff which caused him to develop mesothelioma and/or other asbestos-related injuries. Service of process on such Defendant is predicated on FLA. STAT. ANN. § 48.081(3) and FLA. STAT. ANN. § 48.091.

16.    Defendant, RAPID AMERICAN CORPORATION, f/k/a GLEN ALDEN CORPORATION, is a corporation authorized to do and/or doing business within the jurisdiction of this Court, duly organized, created and existing under and by virtue of the laws of Ohio with its principal place of business located in the State of New York. At all times material to this cause of action, said Defendant engaged in the manufacture, sale and/or distribution of asbestos-containing products which Plaintiff used or was exposed to in his trade, occupation and/or daily life, during which time asbestos fibers from said Defendant's asbestos-containing products were liberated into the air and inhaled by Plaintiff which caused him to develop mesothelioma and/or other asbestos-related injuries. Service of process on such Defendant is predicated on FLA. STAT. ANN. § 48.081(3) and FLA. STAT. ANN. § 48.091.

7

17.   Defendant, REPUBLIC POWDERED METALS, INC., (RPM, INC.) (Individually and as success-in-interest to and/or Alter ego of and/or otherwise Responsible for The Reardon Company and Bondex International), is a corporation authorized to do and/or doing business within the jurisdiction of this Court, duly organized, created and existing under and by virtue of the laws of Ohio with its principal place of business located in the State of Ohio. At all times material to this cause of action, said Defendant engaged in the manufacture, sale and/or distribution of asbestos-containing products which Plaintiff used or was exposed to in his trade, occupation and/or daily life, during which time asbestos fibers from said Defendant's asbestos-containing products were liberated into the air and inhaled by Plaintiff which caused him to develop mesothelioma and/or other asbestos-related injuries. Service of process on such Defendant is predicated on FLA. STAT. ANN. § 48.081(3) and FLA. STAT. ANN. § 48.091.

18.   Defendant, T H AGRICULTURE & NUTRITION, L.L.C., individually and as a successor in interest to THOMPSON-HAYWARD CHEMICAL CO., is a corporation authorized to do and/or doing business within the jurisdiction of this Court, duly organized, created and existing under and by virtue of the laws of Delaware with its principal place of business located in the State of Kansas. At all times material to this cause of action, said Defendant engaged in the manufacture, sale and/or distribution of asbestos-containing products which Plaintiff used or was exposed to in his trade, occupation and/or daily life, during which time asbestos fibers from said Defendant's asbestos-containing products were liberated into the air and inhaled by Plaintiff which caused him to develop mesothelioma and/or other asbestos-related injuries. Service of process on such Defendant is predicated on FLA. STAT. ANN. § 48.081(3) and FLA. STAT. ANN. § 48.091.

19.     Defendant, UNION CARBIDE CORPORATION f/k/a Union Carbide
Chemicals & Plastics f/k/a Union Carbide and Carbon Co., f/k/a Union Carbide Corp.
(successor and/or parent of Magnolia Welding Supply Co., Inc.; successor and/or parent of The
Mobile Welding Supply Company; successor and/or parent of Gas Technics Gases &
Equipment Centers of Eastern Penn., Inc.; successor and/or parent of The Linde Air Products
Company), is a corporation authorized to do and/or doing business within the jurisdiction of this
Court, duly organized, created and existing under and by virtue of the laws of New York with
its principal place of business located in the State of Connecticut.   At all times material to this
cause of action, said Defendant engaged in the manufacture, sale and/or distribution of asbestos-
containing products which Plaintiff used or was exposed to in his trade, occupation and/or daily
life, during which time asbestos fibers from said Defendant's asbestos-containing products were
liberated into the air and inhaled by Plaintiff which caused him to develop mesothelioma and/or
other asbestos-related injuries.   Service of process on such Defendant is predicated on FLA.
STAT. ANN. § 48.081(3) and FLA. STAT. ANN. § 48.091.

20.     Defendant, WHIRLPOOL CORPORATION, (Individually and as success-in-
interest to Maytag Corporation) is a corporation authorized to do and/or doing business within
the jurisdiction of this Court, duly organized, created and existing under and by virtue of the
laws of Delaware with its principal place of business located in the State of Michigan.   At all
times material to this cause of action, said Defendant engaged in the manufacture, sale and/or
distribution of asbestos-containing products which Plaintiff used or was exposed to in his trade,
occupation and/or daily life, during which time asbestos fibers from said Defendant's asbestos-
containing products were liberated into the air and inhaled by Plaintiff which caused him to

9

W0F525500

W0F772625

develop mesothelioma and/or other asbestos-related injuries.   Service of process on such

Defendant is predicated on FLA. STAT. ANN. § 48.081(3) and FLA. STAT. ANN. § 48.091.

     21.   The Defendants identified in the caption of this Complaint are domestic and

foreign corporations, amenable to jurisdiction in the Courts of Florida because they now

conduct or have conducted business or business ventures, or have had offices or agencies within

Florida, subjecting them to the jurisdiction of Florida's courts.   The alleged causes of action

arise out of, or are incidental to, the business or business ventures conducted within Florida by

each of the Defendants.   Each domestic and foreign corporation has through brokers, jobbers,

wholesalers, or distributors sold, consigned, or leased tangible or intangible personal property to

persons in this state.   Each domestic and foreign corporation has committed wrongful acts either

outside or inside this state causing injury to Decedent. Each domestic and foreign corporation

derives substantial revenue from interstate or international commerce and should reasonably

have expected their acts to have consequences in this state or any other state.   Each domestic

and foreign corporation has conducted substantial and not isolated activity within Florida.   Each

foreign corporation mines or mined, manufactures or manufactured, processes or processed,

imports or imported, converts or converted, compounds or compounded, and/or retains or

retained substantial amounts of asbestos and asbestos related materials which are or were sold,

distributed and used in Florida.

     22.   Plaintiffs allege that the Defendants have, during the period of time as listed on

the Plaintiffs' Exposure Sheets, any supplements or Amended Exposure Sheets, and through

and including the present, and at all times material to this cause of action, maintained sufficient

contacts with the State of Florida and/or transacted substantial revenue-producing business in

the State of Florida to subject them to the jurisdiction of this Court pursuant to Florida Statute §48.181 and/or §48.182 and/or §48.193 and/or §47.16.

23.    Defendants have, at all times material to this cause of action, through their agents, officers and representatives, operated, conducted, engaged in and carried on a business venture in this state; maintained an office or agency in this state; solicited business or provided service activities within this state and/or committed a tortious act within the state by selling and disseminating to the public an inherently dangerous asbestos and/or asbestos-containing products:

    a.    Without testing said products to determine their harmful effects on persons coming in contact with said products;

    b.    By failing to take any reasonable precautions or to exercise reasonable care to adequately or sufficiently warn Decedent and other persons similarly situated, of the risks, dangers and harm of contracting asbestosis, lung cancer, mesothelioma and other forms of cancers, through exposure to, contact with, use of, handling and/or manipulation of Defendants' asbestos and/or asbestos-containing products and the consequent inhalation of the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos and/or asbestos containing products.

24.    Defendants' tortious conduct is continuing and presently existing, caused injuries to Decedent herein, arose out of the acts and/or omissions which occurred inside and outside of the State of Florida during the relevant period of time. Defendants' products were used and/or consumed in the ordinary course of commerce, trade and/or use, as set forth herein and said use or consumption resulted in injuries to Decedent. Therefore, pursuant to Florida Law jurisdiction properly lies in this court, as to Plaintiffs' action.

11

25.     Throughout his working career, the Decedent worked with and was exposed to asbestos and/or asbestos-containing products mined, milled, manufactured, sold and/or distributed by the Defendants, or their predecessors.

26.     Decedent used Defendants' asbestos and/or asbestos-containing products in the intended manner and without significant change in their condition, and being unaware of the dangerous properties of asbestos, relied on the Defendants' instructions, as to proper methods of handling their asbestos-containing products.

27.     Decedent's exposure to Defendants' asbestos and/or asbestos-containing products and inhalation of the asbestos and/or products' asbestos fibers caused Decedent to contract asbestos-related mesothelioma.

## COUNT I: NEGLIGENCE

28.     All of the allegations contained in paragraphs 1 through 27 are realleged herein.

29.     The products complained of were asbestos and/or asbestos-containing products manufactured, sold, supplied and/or distributed by each of the Defendants and/or their predecessors in interest, to which Decedent was exposed in his trade, occupation and/or daily life.

30.     Plaintiffs allege that Decedent was exposed to asbestos and/or asbestos-containing products milled, mined, manufactured, sold, supplied and/or distributed by each Defendant, in the aforementioned manner. Each exposure to such asbestos and/or asbestos-containing products of each Defendant, caused Decedent to inhale asbestos fibers of each Defendant's asbestos and/or asbestos-containing products causing Decedent to develop injuries including, but not limited to mesothelioma and/or other asbestos-related injuries. Each exposure to Defendants' asbestos and/or asbestos-containing products, which were connected to and incidental to the manufacture,

W0F525503

W0F772628

sale, supply and/or distribution by each Defendant of its asbestos and/or asbestos-containing products, was harmful and caused, or contributed substantially to Decedent aforementioned injuries and eventual death.

31.    Decedent was continuously exposed to asbestos and/or asbestos-containing products either milled, manufactured, processed, sold, supplied and/or distributed by each Defendant and/or their predecessors in interest during his working career and daily life. Plaintiffs allege that Decedent was exposed to and did inhale asbestos fibers of Defendants' asbestos and/or asbestos-containing products, mined, milled, manufactured, sold and/or distributed by each Defendant.  Said exposures directly and proximately caused Decedent to develop mesothelioma, in addition to other asbestos related physical conditions, which have resulted in and directly caused Decedent to suffer severe bodily injuries and eventually die.

32.    Due to his injuries Decedent required medical treatment; was greatly inconvenienced in his ability to lead and enjoy a normal life; was permanently impaired; and ultimately died from mesothelioma.  Moreover, as a result of said exposure, Decedent was permanently and totally disabled and his earning capacity was impaired.  As a result of his condition, which caused Decedent to suffer pain therefrom, Decedent suffered mental anguish, depression and other mental disorders, incurred medical expenses in the treatment of such physical and mental injuries, and suffered physical handicap and impairment.  Said injuries were permanent and continuing in nature, causing Decedent to horribly suffer until his death.

33.    The aforementioned injuries, disabilities and death of Decedent were the direct and proximate cause of the negligence of the Defendants and/or their predecessors in interest, in that they produced, sold and/or otherwise placed into the stream of intrastate and interstate commerce, asbestos and/or asbestos-containing products which the Defendants knew, or, in the

W0F525504

W0F772629

exercise of ordinary care should have known, were deleterious and highly harmful to Decedent health and well being. Each of the Defendants prior to selling and/or distributing their asbestos and/or asbestos-containing products, to which Decedent was exposed, knew, or, in the exercise of ordinary care should have known, that exposure to asbestos and/or asbestos-containing products was harmful to human beings and that it could cause injuries including, but not limited to, asbestosis, lung cancer, mesothelioma and/or other forms of cancer. The Defendants also knew that Decedent and others similarly situated would use and be exposed to their respective asbestos and/or asbestos-containing products, and in such a manner as to cause Decedent to inhale the asbestos fibers of each Defendants' asbestos and/or asbestos containing products.

34.     Each Defendants' asbestos and/or asbestos-containing products contained latent characteristics and/or latent functional defects at the time they were manufactured and at the time Decedent was exposed to them in his occupation and/or daily life, in that said products contained asbestos which each Defendant knew or in the exercise of reasonable care, should have known would cause injuries, including, but not limited to, asbestosis, lung cancer, mesothelioma and/or other forms of cancer to the Decedent, or those similarly situated, who was required to work with and around said products and/or be exposed to them, and which caused Decedent to develop the aforementioned injuries.

35.   Each Defendant knew that its asbestos and/or asbestos-containing products would be used by and around Decedent, or those similarly situated, without inspection for defects and that any such inspection would not have advised Decedent of the fact that the asbestos contained in each Defendant's asbestos and/or asbestos-containing products could cause severe bodily harm and/or the injuries from which he now suffers. Such facts made each of the Defendants' asbestos and/or asbestos-containing products inherently and unreasonably dangerous in that

14

Decedent could not know and would not contemplate the danger of contracting the aforementioned injuries as a result inhaling the asbestos fibers of each Defendants' asbestos and/or asbestos-containing products which he used or was exposed to during his occupation and/or daily life.

36.    Plaintiffs allege that there were substitute materials for asbestos known to each Defendant and unknown to the Decedent, which could have been used by each Defendant in designing and manufacturing their asbestos containing products to which Decedent was exposed, handled and/or used.  Each of the Defendants was in the business of manufacturing, selling and/or distributing its asbestos and/or asbestos-containing products during the times pertinent to this suit, and knew or should have know that Decedent, and others similarly situated, would come in contact with each of their asbestos-containing products, and would be exposed by inhaling the asbestos fibers contained in each of their asbestos and/or asbestos-containing products, causing Decedent's fatal injuries including mesothelioma.  Each of the Defendants were negligent in one, some and/or all of the following respects, same being the proximate cause of Decedent's injuries, and/or disabilities, which acts of negligence have continued to the present time:

a.    In failing to adequately warn Decedent of the dangerous characteristics of asbestos and/or asbestos-containing products in that each Defendant failed to warn Decedent that he could develop serious injuries including, but not limited to, asbestosis, lung cancer, mesothelioma and/or other forms of cancer, as a result of being exposed to each Defendants' asbestos-containing products.

b.    In failing to place adequate warnings on the containers of said asbestos and/or asbestos-containing materials to warn of the dangers to one's health of coming in

15

W0F525506

W0F772631

contact with said asbestos and/or asbestos-containing materials and of the gravity of the risk and extent of danger that Decedent was exposing himself by working with and being exposed to said products.

c.      In failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and a safe method of handling and installing asbestos and/or asbestos containing materials.

d.      In failing to develop and utilize a substitute material to eliminate asbestos fibers in the products manufactured, sold and distributed.

e.      In failing to utilize the available substitute materials for asbestos fibers in the products manufactured, sold and distributed.

f.      In continuing to manufacture, sell and otherwise distribute asbestos products when each Defendant knew or should have known at the time of said manufacture, sale and/or distribution of said products, that such products could cause injuries including, but not limited to, lung cancer, mesothelioma, asbestosis and/or other forms of cancer, to those persons exposed to said products.

g.      In affirmatively misrepresenting to Decedent and other members of the public in advertising, by labels and otherwise, that the asbestos and/or asbestos- containing products manufactured, sold and/or distributed were safe in their ordinary and foreseeable use, which material misrepresentation induced Decedent to unknowingly expose himself to the hazards of developing injuries including, but not limited to, asbestosis, lung cancer, mesothelioma and/or other forms of cancer.

h.      In failing to adequately test their respective asbestos and/or asbestos-containing products before offering them for sale and use so that Decedent and other

16

W0F7725507

W0F7725632

persons similarly situated, would not inhale the asbestos dust and fibers resulting from the
ordinary and foreseeable use of said asbestos and/or asbestos products and thereby expose
himself to the development of fatal injuries including, but not limited to, asbestosis, lung
cancer, mesothelioma and/or other forms of cancer as a result of such inhalation of the
asbestos dust and fibers.

37.   The Defendants asbestos and/or asbestos-containing products to which Decedent
was exposed were used in the manner in which they were intended.

38.   The Defendants asbestos and/or asbestos-containing products failed to perform as
safely as Decedent expected they would in that they caused him to develop injuries including,
but not limited to, mesothelioma, as a result of inhalation of the asbestos fibers of each
Defendants' asbestos and/or asbestos containing products during exposure to said products.

39.   Each of the Defendants' asbestos and/or asbestos-containing products suffered
from a manufacturing and design defect in that they contained asbestos, which each Defendant
knew was extremely harmful to human beings in that exposure to such asbestos causes the
injuries previously mentioned in this complaint and/or death, and for which there were available
materials to substitute for the asbestos used in their design and manufacture at the time of their
design, manufacture, sale and/or distribution.

WHEREFORE, Plaintiffs pray for judgment against the Defendants and each of them
jointly, individually and severally, on all of the aforementioned counts for compensatory
damages against all Defendants herein, for their costs expended herein, for interest and for such
other and further relief both at law and in equity to which Plaintiffs may show themselves to be
justly entitled.

17

## COUNT II: STRICT LIABILITY

40.    All of the allegations contained in paragraphs 1 through 27 are realleged herein.

41.    Each Defendant, their predecessors-in-interest and/or their alter egos are and/or have been a miller, manufacturer, distributor, supplier, retailer, wholesaler and/or assembler of asbestos and/or asbestos-containing products.

42.    The products complained of were asbestos and/or asbestos-containing products manufactured, distributed, supplied, sold and/or assembled by each of the Defendants and used by and/or in the vicinity of the Decedent in his trade, occupation and/or daily life.

43.    The aforesaid products were distributed, supplied, sold and/or otherwise placed into the stream of commerce and/or caused to be placed into the stream of commerce by the Defendants.

44.    Plaintiff alleges that the Decedent was exposed to each Defendants' asbestos and/or asbestos-containing products in his trade, occupation and/or daily life during which time asbestos fibers from each of Defendants' asbestos and/or asbestos-containing products were liberated into the air and inhaled by Decedent which caused him to develop injuries including, but not limited to, mesothelioma which ultimately caused his death.

45.    At the time each of the Defendants manufactured, distributed, supplied, sold and/or assembled the aforesaid asbestos and/or asbestos-containing products, such products were expected to, and did, reach Decedent in a condition without substantial change from that in which such products were when within the possession of Defendants.

46.    The Defendants' asbestos and/or asbestos-containing products were in a condition unreasonably dangerous to users and/or bystanders, such as Decedent, and said products were expected to, and did, reach Decedent without substantial change affecting that condition.

18

47.     The Defendants' asbestos and/or asbestos-containing products were, by reason of their design, in a condition unreasonably dangerous to users and/or bystanders, such as Decedent, and said products were expected to, and did, reach Decedent without substantial change affecting that condition.

48.     The Defendants' asbestos and/or asbestos-containing products were unreasonably dangerous because of their design in that the risk of danger to users and/or bystanders, such as Decedent, outweighed the benefits.

49.     The Defendants' asbestos and/or asbestos-containing products were dangerous beyond the expectation of the ordinary user/consumer/bystander when used as intended or in a manner reasonably foreseeable by Defendants.

50.     The Defendants' asbestos and/or asbestos-containing products were unreasonably dangerous because a less dangerous alternative and/or modification was economically feasible.

51.     Defendants' asbestos containing products were in a defective condition, unreasonably dangerous, in that those products:

a.     Did not provide an adequate warning of the potential harm that might result from exposure to asbestos and/or asbestos containing dust and, alternatively, did not have adequate instructions for safe use of the products;

b.     Did not contain proper respirators to protect users and/or bystanders, such as Decedent, from the potential harm that might result from exposure to asbestos and/or asbestos containing dust;

19

W0F520510

W0F772635

    c.     Did not have warnings to persons, such as Decedent, who had been, or reasonably may have been, exposed to Defendants' asbestos and/or asbestos-containing products, of their disease potential, the proper steps to take to reduce the harmful effects of previous exposure, the need to have periodic chest x-rays and medical examinations including the giving of histories which revealed the details of the previous exposure, and the need to have immediate and vigorous medical treatment for all respiratory problems;

    d.     By design contained asbestos, a substance deleterious, poisonous, and highly harmful to the Decedent;

    e.     Contained asbestos when and after it became feasible to design, manufacture and market reasonably comparable products not containing asbestos.

52.    Decedent, unaware of the defective and unreasonably dangerous condition of the Defendants' asbestos and/or asbestos-containing products at a time when such products were being used for the purposes for which they were intended, was exposed to Defendants' asbestos and/or asbestos-containing products.

53.    Each Defendant knew that their asbestos and/or asbestos-containing products would be used without inspection for defects, and by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include the safe handling, installation and replacement of said asbestos products.

54.    Decedent, unaware of the hazards and defects in the asbestos and/or asbestos-containing products of the Defendant, was exposed to Defendants' asbestos and/or asbestos-containing products, causing Decedent to develop mesothelioma and other asbestos related diseases, which will ultimately result in his death, and making said products unsafe for the purpose of handling, installation and removal of same.

55.     As a direct and proximate result of the product defects as described herein, Decedent was caused to contract diseases and injuries to his body, including mesothelioma, and/or other diseases, causing Decedent, pain, suffering and mental anguish.

WHEREFORE, Plaintiff prays for judgment against the defendants and each of them jointly, individually and severally, on all of the aforementioned counts for compensatory damages against all Defendants herein, for their costs expended herein, for interest and for such other and further relief both at law and in equity to which Plaintiff may show himself to be justly entitled.

## DAMAGES

56.     All of the allegations contained in paragraph 1 through 55 are realleged herein.

57.     As a direct and proximate result of the negligence, carelessness, strict liability, and willful omissions of the Defendants as described herein, Decedent was caused to contract mesothelioma and other asbestos-related injuries, causing Decedent pain, suffering and mental anguish. Decedent's death arose out of, was connected to, and was incidental to the manufacture, sale and distribution of Defendant's asbestos and/or asbestos containing products.

58.     As a direct and proximate result of the aforesaid, Decedent was obliged to spend various sums of money to treat his disease. Additionally because of the injuries, disabilities, and death suffered by the Decedent as alleged herein, his spouse has incurred expenses for medical attention rendered to her said spouse and funeral expenses.

59.     As a direct and proximate result of the aforesaid, Decedent and his estate had lost and will continue to loss the benefits of his earnings and earning capacity; and as a direct and proximate result of the aforesaid, Decedent's enjoyment of life was impaired and his life expectancy was shortened, all to Decedent's and Plaintiffs' great loss.

21

60.    As a direct and proximate result of the aforesaid, Decedent, and his estate, had and will continue to suffer the disintegration and deterioration of the family unit and the relationships existing therein, resulting in enhanced anguish, depression and other symptoms of psychological stress and disorder.

61.    As a direct and proximate result of all of the foregoing allegations, Decedent's spouse, has suffered the loss of the services of her spouse, his support and/or consortium, the care and comfort of his society, his companionship, his protection, and has suffered and continues to suffer severe mental pain and suffering from the death of her husband, which may require future psychological and/or medical treatment.

62.    As a direct and proximate result of the wrongful death of Decedent, the Estate of Decedent has also sustained the following losses and damages:

a.  Loss of earnings of the Decedent from the date of injury to the date of death;

b.  Loss of prospective net accumulations;

c.  Medical and funeral expenses due to the Decedent's death; and

d.  Any other damages available to the estate, spouse and survivors pursuant to Florida Statute § 768.21.

WHEREFORE, Plaintiffs pray for judgment against the defendants and each of them jointly, individually and severally, on all of the aforementioned counts for compensatory damages against all Defendants herein, for their costs expended herein, for interest and for such other and further relief both at law and in equity to which Plaintiffs may show themselves to be justly entitled.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable as a matter of right.

DATE: _____9/10/07_____

Respectfully submitted,

THE FERRARO LAW FIRM, P.A.
*Attorneys for Plaintiffs*
4000 Ponce de Leon Boulevard, Suite #700
Miami, Florida 33146
Telephone (305) 375-0111
Facsimile (305) 379-6222

By: _____

David A. Jagolinzer, Esq.
Florida Bar No. 181153
Case A. Dam, Esq.
Florida Bar No. 756091

23

*EXPOSURE SHEET*
For Frederick J Krause, Deceased

*Manufacturer:* Bondex International, Inc.
  *Products:* Joint cements, joint compounds, puttys, coatings, mastic, cement paints

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| Grandorf Plumbing & Heating | LaPorte | IN | 1/1/62 | 12/31/67 |
| Dye Heating & Plumbing | LaPorte | IN | 1/1/69 | 12/31/89 |
| University of Notre Dame | S. Bend | IN | 1/1/70 | 1/1/72 |
| South Bend City Library | S. Bend | IN | 1/1/70 | 1/1/72 |
| Kingsbury Ordinance Plant | Kingsbury | IN | 1/1/72 | 7/1/72 |
| South Bend Courthouse | S. Bend | IN | 1/1/72 | 7/1/72 |
| Mishawaha Sewer & Water | Mishawaha | IN | 1/1/73 | 1/1/74 |
| Merrilville High School | Merrilville | IN | 1/1/73 | 1/1/74 |

*Manufacturer:* Certain-Teed Corporation
  *Products:* Certain-Teed asbestos cement pipe, palmetto packing, sealing cement, adhesives, joint compound, boiler coatings, millboard, siding, roof coating

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| Grandorf Plumbing & Heating | LaPorte | IN | 1/1/62 | 12/31/67 |
| Dye Heating & Plumbing | LaPorte | IN | 1/1/69 | 12/31/89 |
| University of Notre Dame | S. Bend | IN | 1/1/70 | 1/1/72 |
| South Bend City Library | S. Bend | IN | 1/1/70 | 1/1/72 |
| Kingsbury Ordinance Plant | Kingsbury | IN | 1/1/72 | 7/1/72 |
| South Bend Courthouse | S. Bend | IN | 1/1/72 | 7/1/72 |
| Mishawaha Sewer & Water | Mishawaha | IN | 1/1/73 | 1/1/74 |
| Merrilville High School | Merrilville | IN | 1/1/73 | 1/1/74 |

*Manufacturer:* Discount Auto Parts, Inc.
  *Products:* Asbestos-containing brakes, clutches and gaskets

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| Russ & Jim's Service Station | LaPorte | IN | 8/1/55 | 6/1/56 |
| Humble Oil Company | LaPorte | IN | 1/1/62 | 12/31/70 |
| Home auto repair | LaPorte | IN | 1/1/56 | 12/31/99 |
| Home auto repair | Bradenton | FL | 1/1/00 | 12/31/03 |

*Manufacturer:* Duro Dyne Corporation
  *Products:* Insulation, adhesives, sealers

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| Grandorf Plumbing & Heating | LaPorte | IN | 1/1/62 | 12/31/67 |
| Dye Heating & Plumbing | LaPorte | IN | 1/1/69 | 12/31/89 |
| University of Notre Dame | S. Bend | IN | 1/1/70 | 1/1/72 |
| South Bend City Library | S. Bend | IN | 1/1/70 | 1/1/72 |
| Kingsbury Ordinance Plant | Kingsbury | IN | 1/1/72 | 1/1/72 |
| South Bend Courthouse | S. Bend | IN | 1/1/72 | 7/1/72 |
| Mishawaha Sewer & Water | Mishawaha | IN | 1/1/73 | 7/1/72 |
| Merrilville High School | Merrilville | IN | 1/1/73 | 1/1/74 |

L

W0F752551/5

W0F772840

*Manufacturer:* Electrolux Inc. (Frigidaire)
  *Products:* Asbestos-containing components

| Jobsite | City | State | Start Date | Stop Date |
|---------|------|-------|-----------|-----------|
| Best-Way Stores | LaPorte | IN | 10/1/60 | 9/1/61 |

*Manufacturer:* General Motors Corporation
  *Products:* Asbestos-containing brake pads and brake linings, Asbestos-containing brakes, clutches and gaskets

| Jobsite | City | State | Start Date | Stop Date |
|---------|------|-------|-----------|-----------|
| Russ & Jim's Service Station | LaPorte | IN | 8/1/55 | 6/1/56 |
| Humble Oil Company | LaPorte | IN | 1/1/62 | 12/31/67 |
| Home auto repair | LaPorte | IN | 1/1/56 | 12/31/99 |
| Home auto repair | Bradenton | FL | 1/1/00 | 12/31/03 |

*Manufacturer:* Georgia-Pacific, LLC
  *Products:* Asbestos-containing ceiling texture, bestwall, topping compound, joint compound, plaster

| Jobsite | City | State | Start Date | Stop Date |
|---------|------|-------|-----------|-----------|
| Grandorf Plumbing & Heating | LaPorte | IN | 1/1/62 | 12/31/67 |
| Dye Heating & Plumbing | LaPorte | IN | 1/1/69 | 12/31/89 |
| University of Notre Dame | S. Bend | IN | 1/1/70 | 1/1/72 |
| South Bend City Library | S. Bend | IN | 1/1/70 | 1/1/72 |
| Kingsbury Ordinance Plant | Kingsbury | IN | 1/1/72 | 7/1/72 |
| South Bend Courthouse | S. Bend | IN | 1/1/72 | 7/1/72 |
| Mishawaka Sewer & Water | Mishawaka | IN | 1/1/73 | 1/1/74 |
| Merrilville High School | Merrilville | IN | 1/1/73 | 1/1/74 |

*Manufacturer:* Lorillard Tobacco Company
  *Products:* Kent Micronite Asbestos Filtered Cigarettes

| Jobsite | City | State | Start Date | Stop Date |
|---------|------|-------|-----------|-----------|
| Home | LaPorte | IN | 1/1/50 | 12/31/57 |
| Russ & Jim's Service Station | LaPorte | IN | 8/1/55 | 6/1/56 |
| U.S. Air Force | San Antonio | TX | 6/1/56 | 12/31/57 |

*Manufacturer:* Owens-Illinois, Inc.
  *Products:* Kaylo PC & Block

| Jobsite | City | State | Start Date | Stop Date |
|---------|------|-------|-----------|-----------|
| Grandorf Plumbing & Heating | LaPorte | IN | 1/1/62 | 12/31/67 |
| Dye Heating & Plumbing | LaPorte | IN | 1/1/69 | 12/31/89 |
| University of Notre Dame | S. Bend | IN | 1/1/70 | 1/1/72 |
| South Bend City Library | S. Bend | IN | 1/1/70 | 1/1/72 |
| Kingsbury Ordinance Plant | Kingsbury | IN | 1/1/72 | 7/1/72 |
| South Bend Courthouse | S. Bend | IN | 1/1/72 | 7/1/72 |
| Mishawaka Sewer & Water | Mishawaka | IN | 1/1/73 | 1/1/74 |
| Merrilville High School | Merrilville | IN | 1/1/73 | 1/1/74 |

2

W0F7726641   W0F5265516

**Manufacturer:** Rapid American Corporation
**Products:** Cement, PC, Block, Cement Board, Siding

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| Grandorf Plumbing & Heating | LaPorte | IN | 1/1/62 | 12/31/67 |
| Dye Heating & Plumbing | LaPorte | IN | 1/1/69 | 12/31/89 |
| University of Notre Dame | S. Bend | IN | 1/1/70 | 1/1/72 |
| South Bend City Library | S. Bend | IN | 1/1/70 | 1/1/72 |
| Kingsbury Ordinance Plant | Kingsbury | IN | 1/1/72 | 7/1/72 |
| South Bend Courthouse | S. Bend | IN | 1/1/72 | 7/1/72 |
| Mishawaka Sewer & Water | Mishawaka | IN | 1/1/73 | 1/1/74 |
| Merrilville High School | Merrilville | IN | 1/1/73 | 1/1/74 |

**Manufacturer:** Republic Powdered Metals, Inc. (RPM, Inc.)
**Products:** Joint compounds, paints, and other asbestos containing products

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| Grandorf Plumbing & Heating | LaPorte | IN | 1/1/62 | 12/31/67 |
| Dye Heating & Plumbing | LaPorte | IN | 1/1/69 | 12/31/89 |
| University of Notre Dame | S. Bend | IN | 1/1/70 | 1/1/72 |
| South Bend City Library | S. Bend | IN | 1/1/70 | 1/1/72 |
| Kingsbury Ordinance Plant | Kingsbury | IN | 1/1/72 | 7/1/72 |
| South Bend Courthouse | S. Bend | IN | 1/1/72 | 7/1/72 |
| Mishawaka Sewer & Water | Mishawaka | IN | 1/1/73 | 1/1/74 |
| Merrilville High School | Merrilville | IN | 1/1/73 | 1/1/74 |

**Manufacturer:** TH Agriculture & Nutrition, LLC
**Products:** Raw asbestos fiber, Welco joint compound, Ruco joint compound, Proko joint compound, various other joint compounds

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| Grandorf Plumbing & Heating | LaPorte | IN | 1/1/62 | 12/31/67 |
| Dye Heating & Plumbing | LaPorte | IN | 1/1/69 | 12/31/89 |
| University of Notre Dame | S. Bend | IN | 1/1/70 | 1/1/72 |
| South Bend City Library | S. Bend | IN | 1/1/70 | 1/1/72 |
| Kingsbury Ordinance Plant | Kingsbury | IN | 1/1/72 | 7/1/72 |
| South Bend Courthouse | S. Bend | IN | 1/1/72 | 7/1/72 |
| Mishawaka Sewer & Water | Mishawaka | IN | 1/1/73 | 1/1/74 |
| Merrilville High School | Merrilville | IN | 1/1/73 | 1/1/74 |

**Manufacturer:** Union Carbide Corporation
**Products:** Calidria containing products, Bakelite, joint compounds, cements

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| Grandorf Plumbing & Heating | LaPorte | IN | 1/1/62 | 12/31/67 |
| Dye Heating & Plumbing | LaPorte | IN | 1/1/69 | 12/31/89 |
| University of Notre Dame | S. Bend | IN | 1/1/70 | 1/1/72 |
| South Bend City Library | S. Bend | IN | 1/1/70 | 1/1/72 |
| Kingsbury Ordinance Plant | Kingsbury | IN | 1/1/72 | 7/1/72 |
| South Bend Courthouse | S. Bend | IN | 1/1/72 | 7/1/72 |
| Mishawaka Sewer & Water | Mishawaka | IN | 1/1/73 | 1/1/74 |
| Merrilville High School | Merrilville | IN | 1/1/73 | 1/1/74 |

3

W0F525517

W0F772642

**Manufacturer:** Whirlpool Corporation
**Products:** Ovens, washers, dryers, dishwashers, disposers, ranges, refrigerators

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| Best-Way Stores | LaPorte | IN | 10/1/60 | 9/1/61 |

4

W0F525518

W0F772643

LMS Packing Slip

# Package ID: 842595

**Tracking Number:** 944762445590

**Package Recipient:** Gina McHone

**Recepient Company:** Womble Carlyle Sandridge & Rice, PLLC

**Recepient Address:** Case Management Facility 301 North Main Street Winston-Salem NC 27101 USA

**Phone Number:** 3367472771

**Package Contents:**

| Transmittal Number | Case Number | Title of Action |
|---|---|---|
| 5361842 | 07-11911 (A) | Phyllis Krause vs. Bondex International, Inc. |

# EXHIBIT B

# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge John G. Heyburn II
United States District Court
Western District of Kentucky

**MEMBERS:**
Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

Judge Anthony J. Scirica
United States Court of Appeals
Third Circuit

**DIRECT REPLY TO:**
Jeffery N. Lüthi
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:        [202] 502-2888
http://www.jpml.uscourts.gov

January 22, 2008

TO INVOLVED COUNSEL

Re:  MDL No. 875 -- IN RE: Asbestos Products Liability Litigation (No. VI)

(See Attached CTO-300)

Dear Counsel:

    Attached hereto is a copy of a conditional transfer order filed today by the Panel involving the above-captioned matter. This matter is transferred pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001). Copies of Rule 5.2, dealing with service, and Rules 7.4 and 7.5, regarding "tag-along" actions, are attached for your convenience.

    Inasmuch as there is an unavoidable time lag between notification of the pendency of the tag-along action and the filing of a conditional transfer order, counsel are required by Rule 7.4(b) to notify this office **BY FACSIMILE**, at (202) 502-2888, of any official changes in the status of the tag-along action. These changes could involve dismissal of the action, remand to state court, transfer to another federal court, etc., as indicated by an order filed by the district court. Your cooperation would be appreciated.

    **NOTICE OF OPPOSITION DUE ON OR BEFORE:**  February 6, 2008  (4 p.m. EST)
        (Facsimile transmission is suggested.)

    If you are considering opposing this conditional transfer order, please review Rules 7.4 and 7.5 of the Panel Rules before filing your Notice of Opposition.

    A list of involved counsel is attached.

            Very truly,

            Jeffery N. Lüthi
            Clerk of the Panel

            By _Teresa Bishop_
              Deputy Clerk

Attachments

JPML Form 39

W0FAD1984

# EXHIBIT C

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

JAN 2 2 2008

FILED
CLERK'S OFFICE

IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)

MDL No. 875

(SEE ATTACHED SCHEDULE)

**CONDITIONAL TRANSFER ORDER (CTO-300)**

On July 29, 1991, the Panel transferred 21,937 civil actions to the United States District Court for the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* 771 F.Supp. 415 (J.P.M.L. 1991). Since that time, 82,701 additional actions have been transferred to the Eastern District of Pennsylvania. With the consent of that court, all such actions have been assigned to the Honorable James T. Giles.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Eastern District of Pennsylvania and assigned to Judge Giles.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Eastern District of Pennsylvania for the reasons stated in the order of July 29, 1991, and, with the consent of that court, assigned to the Honorable James T. Giles.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Eastern District of Pennsylvania. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

W0FAD1985

IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)

MDL No. 875

### SCHEDULE CTO-300 - TAG-ALONG ACTIONS

| DIST. | DIV. | C.A. # | CASE CAPTION |
|---|---|---|---|
| **FLORIDA MIDDLE** | | | |
| FLM | 8 | 07-1954 | Phyllis Krause, etc. v. Bondex International, Inc., et al. |
| **NORTH CAROLINA MIDDLE** | | | |
| NCM | 1 | 08-20 | James T. Kendricks, etc. v. A.W. Chesterton Co., et al. |
| **NORTH CAROLINA WESTERN** | | | |
| NCW | 1 | 07-393 | Ronald L. Truett, et al. v. A.W. Chesterton Co., et al. |
| NCW | 1 | 08-1 | Steven D. Bumgardner, et al. v. Aqua-Chem, Inc., et al. |
| NCW | 1 | 08-2 | James Harrison Key v. Aqua-Chem, Inc., et al. |
| NCW | 1 | 08-3 | Anna Bolt Michael, et al. v. Aqua-Chem, Inc., et al. |
| NCW | 1 | 08-4 | Thomas E. Potts, et al. v. Aqua-Chem, Inc., et al. |
| NCW | 1 | 08-6 | Richard Keith Stiles, et al. v. Aqua-Chem, Inc., et al. |
| **NEW YORK EASTERN** | | | |
| NYE | 1 | 07-5220 | Kelly Harris, etc. v. A.W. Chesterton Co., et al. |
| NYE | 1 | 07-5255 | Owen W. Ferrell v. A.W. Chesterton Co., et al. |
| NYE | 1 | 07-5258 | Paul E. Cash v. A.W. Chesterton Co., et al. |
| NYE | 1 | 07-5265 | Pat A. Guess v. A.W. Chesterton Co., et al. |
| NYE | 1 | 07-5266 | Carole Sandstrom, etc. v. A.W. Chesterton Co., et al. |
| **SOUTH CAROLINA** | | | |
| SC | 0 | 08-12 | Nelson E. Henderson, et al. v. Aqua-Chem, Inc., et al. |
| SC | 6 | 08-10 | Jerry Richard Proctor, et al. v. Aqua-Chem, Inc., et al. |
| SC | 7 | 08-9 | Yvan Lee Walker, et al. v. Aqua-Chem, Inc., et al. |
| SC | 7 | 08-11 | Ronald Benson Lytle, et al. v. Aqua-Chem, Inc., et al. |
| **WISCONSIN EASTERN** | | | |
| WIE | 2 | 07-893 | Carla Jeske, etc. v. American Standard, Inc., et al. |

W0FAD1986

Page 1 of 2

IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)

MDL No. 875

## INVOLVED COUNSEL LIST (CTO-300)

Steven J. Barber
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036

Joshua H. Bennett
BENNETT & GUTHRIE P LLC
1560 Westbrook Plaza Drive
Winston-Salem, NC 27103

Richard C. Binzley
THOMPSON HINE LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Janet W. Black
WARD BLACK PA
208 West Wendover Avenue
Greensboro, NC 27401-1307

Lisa N. Busch
WEITZ & LUXENBERG PC
180 Maiden Lane
New York, NY 10038

Michael P. Cascino
CASCINO VAUGHAN LAW
OFFICES LTD
220 S. Ashland Avenue
Chicago, IL 60607-5308

Edward J. Cass
GALLAGHER SHARP FULTON
& NORMAN
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Jacquelyn A. Champagne
MICHAEL BEST & FRIEDRICH
100 E. Wisconsin Avenue
Suite 3300
Milwaukee, WI 53202-4108

Adam M. Chud
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC 20001

Christopher J.M Collings
MORGAN LEWIS &
BOCKIUS LLP
200 S. Biscayne Boulevard
Suite 5300
Miami, FL 33131-2339

William P. Croke
VON BRIESEN & ROPER SC
P.O. Box 3262
Milwaukee, WI 53201-3262

Case A. Dam
FERRARO LAW FIRM PA
4000 Ponce de Leon Boulevard
Suite 700
Miami, FL 33146

David A. Damico
BURNS WHITE & HICKTON
Four Northshore Center
106 Isabella Street
Pittsburgh, PA 15212

Michael W. Drumke
SCHIFF HARDIN LLP
233 South Wacker Drive
Suite 6600, Sears Tower
Chicago, IL 60606-6473

William W. Ehrke
CRIVELLO CARLSON SC
710 North Plankinton Avenue
The Empire Building, Suite 500
Milwaukee, WI 53203-2404

Evelyn M. Fletcher
HAWKINS & PARNELL LLP
4000 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA 30308-3243

Raymond P. Forceno
FORCENO GOGGIN &
KELLER
1528 Walnut Street, Suite 900
Philadelphia, PA 19102

Ellen B. Furman
GOLDFEIN & HOSMER
1600 Market Street, 33rd Floor
Philadelphia, PA 19103

Nora E. Gierke
REINHART BOERNER VAN
DEUREN SC
1000 North Water Street
Suite 2100
P.O. Box 2965
Milwaukee, WI 53202

Susan M. Hansen
BROWNSON & BALLOU
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

Daniel G. Jardine
JARDINE LAW OFFICE LLC
119 South Main Street
DeForest, WI 53532-1109

Virginia E. Johnson
FOLEY & MANSFIELD PLLP
4770 Biscayne Boulevard
Suite 1000
Miami, FL 33137

Reginald S. Kramer
OLDHAM & DOWLING
195 South Main Street
Suite 300
Akron, OH 44308-1314

Kathleen M. LaBarge
BICE COLE LAW FIRM
999 Ponce de Leon Boulevard
Suite 710
Coral Gables, FL 33134

W0FAD1987

## MDL No. 875 - Involved Counsel List (CTO-300) (Continued)

David C. Landin
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
LOCKS LAW FIRM LLC
1500 Walnut Street
Philadelphia, PA 19102

James C. Long, Jr.
WEITZ & LUXENBERG PC
180 Maiden Lane
New York, NY 10038

Gregory H. Maxwell
CRONIN & MAXWELL
2223 Oak Street
Jacksonville, FL 32204

Daniel F. Molony
SHOOK HARDY & BACON
100 N. Tampa Street
Suite 2900
Tampa, FL 33602

Ronald L. Motley
MOTLEY RICE LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

John J. Repcheck
MARKS O'NEILL O'BRIEN &
COURTNEY PC
Gulf Tower, Suite 2600
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
ROVEN-KAPLAN LLP
2190 North Loop West
Suite 410
Houston, TX 77018

Henry Salas
SALAS EDE PETERSON &
LAGE LLC
6301 Sunset Drive
Miami, FL 33143

Richard D. Schuster
VORYS SATER SEYMOUR &
PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008

Neil Selman
SELMAN BREITMAN &
BURGESS
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
KELLEY JASONS MCGUIRE
& SPINELLI LLP
Centre Square West, 15th Floor
Philadelphia, PA 19102

Robert E. Swickle
JAQUES ADMIRALTY LAW
FIRM PC
1370 Penobscot Building
645 Griwsold Street
The Maritime Asbestosis Legal
Clinic
Detroit, MI 48226-4192

Jennifer M. Techman
EVERT WEATHERSBY &
HOUFF LLC
3405 Piedmont Road, N.E.
Suite 200
Atlanta, GA 30305

Leon W. Todd
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306

Tracy E. Tomlin
NELSON MULLINS RILEY &
SCARBOROUGH LLP
100 North Tryon Street
42nd Floor
Charlotte, NC 28202-4007

Andrew J. Trevelise
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Mona Lisa Wallace
WALLACE & GRAHAM PA
525 North Main Street
Salisbury, NC 28144

James K. Weston, II
TOM RILEY LAW FIRM
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

Stephen B. Williamson
VAN WINKLE BUCK WALL
STARNES & DAVIS P A
11 North Market Street
P.O. Box 7376
Ashville, NC 28802-7376

# EXHIBIT D



## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In Re Asbestos Products Liability Litigation
(No. VI)

MDL 875

### ADMINISTRATIVE ORDER NO. 10

Whereas, Asbestos Products Liability Litigation MDL 875 has been an active matter since July 29, 1991and continues to have need of an active Attorney Liaison Committee; and

Whereas, the dynamics of the MDL 875 have changed substantially over time by reason of modifications in the laws of numerous states, bankruptcy filings by the vast majority of the original defendants, change in alleged exposure environments and other factors; and

Whereas, legal representatives of both plaintiffs' bar and defense bar have been substituted considerably over this fifteen year period; and

Whereas, the Court has determined that the efficiency and management of this litigation will be aided by reconstituting the liaison counsel and counsel committees to be fairly representative of the present structure of MDL 875;

NOW THEREFORE, all counsel previously appointed to plaintiff and defendant liaison and committee positions are relieved of their duties with the full gratitude of the Court and the Court appoints the following bar members to serve on a Joint Plaintiffs'/Defendants' Steering Committee which will analyze certain MDL administrative issues and suggest solutions to the Court:

Peter Angelos, Esq.
    100 North Charles Street
    Baltimore, MD 21201-3804
    1-800-556-5522

Janet Ward Black, Esq.
    Donaldson & Black
    208 West Wendover Avenue
    Greensboro, NC 27401
    504-581-9065

Roger Lane, Esq.
    1601 Reynolds Street
    Brunswick, GA 31520
    912-264-8296

John Cooney, Esq.
    Cooney & Conway
    suite 3000
    120 North LaSalle Street
    Chicago, IL 60602
    312-236-6166

Steven Kazan, Esq.
    Kazan, McClain, Abrams, Fernandez
    Lyons, Farrise & Greenwood
    171 Twelth Street, 3rd Floor
    Oakland, CA 94607
    510-302-1000

Peter Kraus, Esq.
    Waters & Kraus
    3219 McKinney Avenue
    Dallas, TX 75204
    214-357-6244

Kevin Jordan, Esq.
    Baker Botts, L.L.P.
    One Shell Plaza
    910 Louisiana Street
    Houston, TX 77002-4995
    713-229-1322

William Mahoney, Esq.
    Segal, McCambridge, Singer & Mahoney
    1 IBM Plaza, suite 200
    Chicago, IL 60611
    312-645-7806

W. G. Watkins, Esq.
    Forman, Perry, Watkins, Krutz & Tardy
    City Centre, suite 100
    200 South Lamar Street
    Jackson, MS 39201
    601-960-8600

David Landon, Esq.
    Hunton & Williams
    951 East Byrd Street
    PO Box 1535
    Richmond, VA 23218-1535
    804-788-8387

J. John Mc Shea, Esq.
    Mc Shea + Tecce
    Bell Atlantic Tower
    28th Floor
    1717 Arch Street
    Philadelphia, PA 19103

Thomas Packer, Esq.
    Gordon & Rees
    Embarcadero Center West, suite 2000
    275 Battery Street
    San Francisco, CA 94111
    415-875-3110

Joseph Rice, Esq.
    Motley Rice
    28 Bridgeside Boulevard
    Mount Pleasant, SC 29464
    843-216-9156

Philip McWeeny, Esq.
    Owens-Illinois, Inc.
    Legal Department, 8-OSG
    One Seagate
    Toledo, OH 43666
    419-247-1004

Russell Budd, Esq.
    Baron & Budd
    The Centrum, suite 1100
    3102 Oak Lawn Avenue
    Dallas, TX 75219
    214-521-3605

Robert Malaby, Esq.
    Malaby, Carlisle & Bradley
    suite 600
    150 Broadway
    New York City, NY 10038
    212-791-0285

Michael Thornton, Esq.
    Thornton & Naumes
    30th Floor
    100 Summer Street
    Boston, MA 02110
    617-720-2445

Paul Kalish, Esq.
    Crowell & Moring
    1001 Pennsylvania Avenue NW
    Washington, DC 20004-2595
    202-624-2644

The joint steering committee shall meet with the Court upon the Court's call and at such other times as may be requested to do business with the Court. The Court further anticipates that the steering committee may meet outside the Court's presence in order to conduct business. For the purposes of conducting business outside the Court's presence the committee may separate itself into plaintiffs' and defendants' steering committees and may also appoint sub-committees with other members of the bar as members of such sub-committees. All reports, recommendations and information submitted by the joint steering committee to the Court shall be advisory only.

Date: 7/10/06

BY THE COURT

_James T. Giles_, J.
James T. Giles

# EXHIBIT E

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS     :     **MULTIDISTRICT LITIGATION**
LIABILITY LITIGATION          :     **NO. MDL 875**

### ADMINISTRATIVE ORDER NO. 11

Whereas Asbestos Products Liability Litigation (MDL 875) has been an active, ongoing multidistrict action since July 29, 1991, and

Whereas the undersigned transferee judge has analyzed the existing Court case management procedures as they relate to MDL 875, and is of the view that adjustments of these procedures need to be made to allow a more efficient discharge of the transferee court's responsibilities, it is hereby

**ORDERED** that the following modifications to the existing procedures for the processing of cases, dockets, pleadings and orders in MDL 875 cases are adopted:

1. *__Calendar Management.__*

    Effective immediately, and except as otherwise set forth herein, the management of the case files and dockets for all pending MDL 875 cases (and, the files and dockets for all future MDL 875 cases filed after the entry of this Administrative Order) shall be transferred to the Transferee Court in accordance with both the schedule compiled by the Clerk of the Transferee Court and the following terms:

    A.    **Actions to be taken by the Clerks of the Transferor Courts.**

          I.    The Clerks of the Transferor Courts shall retain all case files for those actions in which all claims have been completely resolved between all parties, including bankrupt defendants, whether by dismissal, stipulation or attrition. Unless otherwise directed, case files and dockets of cases previously remanded to the Transferor Courts by the Judicial Panel on Multidistrict Litigation shall also be retained by the Transferor Court. In addition, the Clerks of the Transferor Courts shall retain all case files and dockets for those actions transferred to a state court or a federal district court registry which has been previously specifically established for the placement and tracking of asbestos personal injury cases which do not currently meet specified criteria for advancement to trial.

          II.   The remaining cases having unresolved claims against bankrupt defendants and non-bankrupt defendants shall be transferred to the Transferee Court in the following manner:

              a.    In the interests of administrative efficiency and uniformity, upon the entry of an Order of Transfer by the undersigned

judge, a list of all cases to be transferred shall be sent by the Clerk of the Transferee Court to the Clerk of the Transferor Court.  The Clerk of the Transferee Court shall retrieve a copy of each docket sheet from the CM/ECF system from the Clerk of the Transferor Court for the transferred cases, and shall initiate a new file in the Transferee Court.  The Clerk of the Transferor Court shall mark the Transferor Court's file "CLOSED."

b.    In the event the Transferor Court does not maintain its MDL 875 cases under the CM/ECF system, a paper copy of each docket sheet for the cases to be transferred shall be forwarded to the Clerk of the Transferee Court.

c.    New pleadings, documents and other papers received for filing after the case has been transferred shall be forwarded to the Clerk of the Transferee Court, and the Clerk of the Transferor Court shall notify all counsel concerned, as well as all *pro se* parties, that all future pleadings are to be filed with the Clerk of the Transferee Court, in accordance with the conditions set forth in Section 1.B.II of this Administrative Order, by giving notice of this Order to counsel and to any *pro se* party.

III.    Documents in any asbestos personal injury lawsuit involving MDL 875 filed in any one Transferor Court shall not be filed in the Transferee Court until a Transfer Order has been entered in the Transferee Court that states that documents in that specific Transferor Court shall be filed in the Transferee Court.

IV.    Any document in any asbestos personal injury lawsuit involving MDL 875, over which the Transferor Court, and not the Transferee Court, has jurisdiction and venue, shall not be filed in the Transferee Court until a Transfer Order has been entered in the Transferee Court that states that documents in that specific Transferor Court shall be filed in the Transferee Court.

B.    **Actions to be taken by the Clerk of the Transferee Court.**

I.    The Clerk of the Transferee Court shall maintain dockets and create case files in all actions transferred from the Transferor Courts as soon as they are received.

II.    All documents submitted to the Clerk of the Transferee Court shall be treated in all respects in accordance with the Transferee Court's Local Rules of Civil Procedure 5.1.2; 5.1.3; and, 5.1.4.  All attorneys who file documents pursuant to the Transferee Court's Local Rule of Civil Procedure 5.1.4 shall apply for a signature code by completing and filing with the Clerk of the Transferee Court a

Validation of Signature Form, a copy of which is attached hereto. Such an attorney's signature code shall be entered on the signature line of the courtesy copy of the document for the purpose of signature validation pursuant to Federal Rule of Civil Procedure 11.

III.     The Clerk of the Transferee Court shall compile a schedule of all MDL 875 cases in order to allow for the more efficient transfer of MDL 875 cases from the Transferor Court to the Transferee Court.

IV.     The Clerk of the Transferee Court shall submit to the undersigned transferee judge a quarterly pending caseload status report specific to  the Transferee Court and each Transferor District Court.

2.     *Motions.*

All Motions pending in MDL 875 which are neither granted nor denied as of the date of transfer of a case from the Clerk of the Transferor Court to the Clerk of the Transferee Court shall be deemed denied *without prejudice* and with all time requirements held in abeyance from the initial date of filing.  Counsel may refile any unresolved motions for further transferee court action.  Motions brought in accordance with the procedures contained in Administrative Order #3 shall be preceded by a telephone conference with the Court.  Disputing counsel shall attempt to resolve issues between the parties without Court assistance, and failing resolution, through a telephone conference with the Court prior to the filing of any disputed motion.

3.     *Exclusions.*

The dockets and files for cases filed in the United States District Court for the Northern District of Ohio under the designation "MARDOC-MDL875(2)" shall not be transferred at this time under the terms of this order.

4.     *Conflicts.*

To the extent that any conflicts exist, this Administrative Order shall take precedence over and supercede all previous administrative orders in this Multidistrict Litigation consolidation.

**BY THE COURT:**

 8/15/06                                                  /s/ James T. Giles
**DATE**                                          **JAMES T. GILES, J.**