**MDL 875**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR -- 3 2008

FILED
CLERK'S OFFICE

IN RE: MDL NO. 875 – ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)
(CTO-299)

| | | |
|---|---|---|
| WARREN W. SETHER and MARIE L. SETHER, | ) ) ) | |
| Plaintiffs, | ) ) | Cause No: 07-cv-00809-MJR-DGW |
| vs. | ) | |
| AGCO CORPORATION (individually and successor-in-interest to ALLIS-CHALMERS CORPORATION), et al., | ) ) ) ) | Pending before the U.S. District Court for the Southern District of Illinois |
| Defendants. | ) | |

PLEADING NO. 5 3 6 2

**DEFENDANT GENERAL ELECTRIC'S MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFFS'
MOTION TO VACATE CONDITIONAL TRANSFER ORDER TO MDL**

Defendant General Electric Company ("GE") submits this Memorandum in Opposition to

Plaintiffs' Motion to Vacate Conditional Transfer Order to the United States Judicial Panel on

Multidistrict Litigation, dated February 12, 2008 (the "Motion"). Plaintiffs' Motion should be

denied for two reasons: (1) the MDL is the appropriate venue for this action, and (2) transfer of

this action will not violate Plaintiffs' constitutional rights.

I.      **PROCEDURAL POSTURE**

On October 5, 2007, Plaintiffs Warren W. and Marie L. Sether ("Plaintiffs") filed their

First Amended Complaint in the Circuit Court of Madison County, Illinois, naming GE and

several other defendants. On November 19, 2007, GE timely removed this action to the United

States District Court for the Southern District of Illinois under 28 U.S.C. § 1442(a)(1) (the

"Federal Officer Removal Statute"). On December 18, 2007, Plaintiffs moved to remand the

action to state court. A conditional transfer order to the federal asbestos multidistrict litigation

docket No 875 (the "MDL") issued on January 11, 2008 ("CTO-299"). Plaintiffs now seek to

vacate CTO-299 and ask that the action proceed in the Southern District of Illinois.

**OFFICIAL FILE COPY** IMAGED MAR 4   2008

II.    **ARGUMENT**

The MDL was specifically designed to centralize all personal injury and wrongful death asbestos related litigation.  Accordingly, the MDL is the appropriate venue for this action.

A.    **The MDL is the Appropriate Venue for this Action.**

Pursuant to 28 U.S.C. § 1407(a), a consideration for transfer to the MDL is "whether it will be for the convenience of the parties and witnesses."  In their effort to vacate CTO-299, Plaintiffs argue that the MDL's location in Philadelphia will not be convenient for the parties or witnesses.  Not only is this argument somewhat illogical in the context of this specific action, but it runs counter to the logic espoused by the Judicial Panel on Multidistrict Litigation's ("J.P.M.L.") at its inception.

Although Plaintiffs initiated this action in Illinois, aside from approximately twelve months spent there in 1960-1961 while Plaintiff Warren W. Sether was finishing his naval service, Plaintiffs have never lived in Illinois.  Plaintiffs now live in Spring Hill, Florida (admittedly some 33 miles closer to East St. Louis, Illinois than to Philadelphia, but certainly no more convenient to access).  As Plaintiffs aptly point out, Plaintiff Warren W. Sether lived and worked in Connecticut for many years, Defendant GE is Connecticut based, and several of the parties' witnesses are likely to be found in that state.  Plaintiffs' argument that the Southern District of Illinois is more convenient for the parties than the Eastern District of Pennsylvania simply flies in the face of logic.

Further, in creating the MDL, the J.P.M.L. chose Philadelphia in large part for the convenience of *all* the asbestos related litigants.  The J.P.M.L. determined that the largest numbers of asbestos cases were in the proximity of Philadelphia and that:

> on the basis of the papers filed and the hearing held, . . . the actions in this litigation involve common questions of fact relating to injuries or wrongful death allegedly caused by exposure to asbestos or asbestos containing products, and that centralization under § 1407 in the Eastern District of Pennsylvania will best serve the convenience of the parties and witnesses and promote the just and efficient

conduct of this litigation.

*In re Asbestos Products Liability Litigation*, 771 F.Supp. 415, 417 (J.P.M.L. 1991).  *See* a copy of this order attached hereto as Exhibit A.  Moreover, "distinctions based on such matters as the pendency of motions or other matters before the transferor court, the uniqueness of a party's status, the type of defendant, the docket condition of any specific federal district, the stage of pretrial proceedings, the presence of unique claims or additional claims not relating to asbestos injury or death, and/or the unanimity of opposition to transfer by the parties to an action, [have been] considered and rejected by [the MDL] as grounds for carving out exceptions to transfer in this extraordinary docket." *In re Asbestos Products Liability Litigation*, 170 F.Supp. 2d 1348, 1349 1350 (J.P.M.L. 2001).  *See* a copy of this order attached hereto as Exhibit B.

The J.P.M.L. has also recognized that while the transfer might be burdensome or inconvenient to some, because a Section 1407 transfer "is primarily for pretrial, there is usually no need for the parties and witnesses to travel to the transferee district for depositions or otherwise." *In re Asbestos Products Liability Litigation*, 771 F.Supp. at 422.  The J.P.M.L. went on to suggest that ideally "prudent counsel will combine their forces and apportion their workload in order to streamline the efforts of the parties and witnesses, their counsel, and the judiciary." *Id.*

Plaintiffs' argument, in effect, proves too much, as Plaintiffs' lack of proximity to Illinois and ties to Connecticut, coupled with the J.P.M.L.'s dispensing of the inconvenience and other arguments in *In re Asbestos Products Liability Litigation* render Plaintiffs' suggestions illogical and without merit.  Accordingly, Plaintiffs' Motion should be denied.

**B.      The MDL is a Just and Efficient Venue for this Action.**

A closely related consideration for transfer to the MDL is whether it "will promote the

just and efficient resolution of such actions." 28 U.S.C. § 1407(a).  In their second argument to

vacate CTO-299, Plaintiffs argue that transfer of this action to the MDL will not promote these

objectives because such a transfer will result in the action being "forever mired in [the]

inactivity" of the MDL.  Plaintiffs further insinuate that GE's ultimate motive when it "pursued

[removal] in the first place." was to avail itself of the "black hole that is [the] MDL."  To the

contrary, GE has a legitimate jurisdictional basis for removal to federal court and, until this

Memorandum, GE has made no filing championing transfer of this action to the MDL.  But more

importantly, efficiency dictates that the MDL is the appropriate venue for the just and efficient

resolution of this action.

Before the creation of the MDL, the state and federal court systems faced "an asbestos

litigation crisis." *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 598 (1997).  The courts were

overwhelmed with a multiplicity of lawsuits:

> dockets in both federal and state courts continue to grow; long delays are routine,
> trials are too long; the same issues are litigated over and over; transaction costs
> exceed the victims' recovery by nearly two to one; exhaustion of assets threatens
> and distorts the process; and future claimants may lose altogether.

*Id.* (*citing* the Report of the Judicial Conference Ad Hoc Committee on Asbestos Litigation).  In

creating the MDL, the J.P.M.L. was persuaded that asbestos litigation had reached a magnitude

that threatened the administration of justice and that required a novel approach. *In re Asbestos*

*Products Liability Litigation*, 771 F.Supp. at 418.  A centralized system, it was concluded, "will

be for the convenience of parties and witnesses and will promote the just and efficient conduct of

such actions." *Id.*

Since that time, great strides have been made in bringing cases to resolution.  In 1996, the

number of cases resolved exceeded the number of new cases filed.  By 1997, the MDL was

closing 10,000 cases a year. *In re Patenaude*, 210 F.3d 135, 140 (3rd Cir. 2000). By September 2006, nearly 75,000 of the 110,000 cases in the MDL were resolved. *See* Judicial Panel on Multidistrict Litigation, Statistical Analysis of Multidistrict Litigation 2006. "As of February 1, 2008, (1) over 76,400 actions have been closed in the transferee district, and (2) over 1,370 actions or claims therein have been returned to their originating transferor districts." *In re Asbestos Products Liability Litigation*, --- F.Supp. 2d ---, *2 (J.P.M.L., Feb. 8, 2008). *See* a copy of this order attached hereto as Exhibit C.

Yet in the face of these compelling efficiencies, Plaintiffs misleadingly cite to a few "voices in the wilderness" as support for the "forever mired" in a "black hole" proposition. One such example is Plaintiffs' citation to *In re Maine Asbestos*, 44 F.Supp.2d 368 (D. Me 1999). Without question, the *Maine Asbestos* court makes disparaging comments about the MDL, albeit in a footnote. *See Maine Asbestos*, 44 F.Supp. 2d at 374 n.2. Notably, however, the court cites no statistics or authority for its statements and primarily directs its attack on the MDL's early efforts to achieve a global settlement, a now obsolete aspiration. Additionally, Plaintiffs cite to *Madden v. Able Supply Company*, 205 F.Supp.2d 695 (S.D. Tex. 2002). While the *Madden* court did clearly hold that keeping that particular action in federal court would not lead to greater efficiency or expediency, the court was largely persuaded by the fact that trial was already set in the state court for a mere eight weeks away. Similarly, Plaintiffs cite to *Rosamond v Garlock Sealing Technologies, Inc.*, 2004 WL 943924 (N.D. Miss. 2004), but fail to point out the fact that the *Rosamond* action was remanded to state court due to lack of subject matter jurisdiction based on diversity of citizenship and untimely removal grounds.

While some federal judges may disagree with the manner in which the MDL is administered, their dicta are hardly binding on this Court and cannot alter the fact that the MDL is an efficient forum for resolution of disputes. In this regard, the MDL has successfully created

procedures for overseeing its docket. *See In re Asbestos Products Liability Litigation*, 1996 WL
539589, *1 (E.D. Pa., Sept. 16, 1996). *See* a copy of this order attached hereto as Exhibit D.
More recently, Judge Giles of the MDL issued a series of administrative orders that further
strengthened the court's procedures. Specifically, Administrative Orders 11 and 12 adjust
calendar management and filing requirements. *See* copies of these recent orders attached hereto
as Exhibit E. These procedural orders, the aforementioned resolution of a significant number of
cases, and the MDL's extensive experience in similar matters, demonstrate that the MDL is the
most just and efficient venue for this action. Accordingly, Plaintiffs' Motion should be denied.

C.    **Plaintiffs' Constitutional Rights Will Not be Violated by Transfer to the
      MDL.**

Plaintiffs contend that a transfer to the MDL would violate their state rights of redress or
open access to the courts under the Seventh and Fourteenth Amendments of the United States
Constitution because, in their words, the MDL's "systemic inertia" would leave this action
"mired in the MDL quicksand."

*1.*    **Transfer to the MDL will not violate Plaintiffs' state rights of redress
        or open access.**

Setting aside, for the moment, that Plaintiffs may not even have standing to make such
assertions at this point in the proceedings, and resting aside, again for the moment, that the
J.P.M.L. has already considered and rejected such arguments (*see In re Asbestos Products
Liability Litigation*, 170 F.Supp. 2d at 1349-1350), Plaintiffs' argument rests upon the
assumption that their avenues for redress will be entirely foreclosed by transfer of the case to the
MDL. Such an assumption is wholly without merit. To the contrary, and as indicated above, the
MDL has extensive experience with similar litigation matters and the overarching goal of the
MDL is to streamline and simplify asbestos litigation for both the courts and the parties.
Plaintiffs' assertions require a broad leap of faith, which is neither supported by the published

cases addressing this very topic, nor the statistical reality of the resolved cases transferred to the MDL.  In fact, Plaintiffs cite to no authority in support of their proposition, but rather resort to gross hyperbole.

In actuality, transfer of this action to the MDL is not a wholesale denial of Plaintiffs' rights, as Plaintiffs are not being denied their rights to redress and open access.  In fact, the MDL is the tailor-made forum for handling just this type of action and does not foreclose Plaintiffs' ability to remand the case back to the transferor court.  *See In re Asbestos Products Liability Litigation*, --- F.Supp.2d at *2.  Accordingly, Plaintiffs' constitutional rights are not being violated by transfer of this action to the docket with the most expertise in the matter.

      **2.**       **Transfer to the MDL will not violate Plaintiffs' rights to trial by jury as guaranteed by the Seventh Amendment.**

Plaintiffs contend that unless CTO-299 is vacated, their rights to trial by jury will be violated.  Again, Plaintiffs rest their argument upon a meritless assumption – that a trial will be unduly delayed once this action is transferred to the MDL.  Unless Plaintiffs can see the future, this is not an assumption Plaintiffs can reasonably make.  In fact, there is strong empirical evidence demonstrating that the MDL is successful in handling and remanding cases to trial where appropriate.  As evidenced by the statistics quoted above, there is certainly no denial of jury trials for cases transferred to the MDL.  *See In re Asbestos Products Liability Litigation*, --- F.Supp.2d at *2 ("over 1,370 actions or claims therein have been returned to their originating transferor districts").  Plaintiffs' rights to a trial by jury are readily available and timely if and when deemed appropriate.

Further, and although this is becoming a tired refrain, it is important to note that the J.P.M.L. has already considered and rejected this very constitutional argument.  Specifically, the plaintiffs in one of the actions cited above argued that the manner in which the MDL was being administered effectively denied them their right to a jury trial.  *See In re Asbestos Products*

*Liability Litigation*, 170 F.Supp.2d at 1349-1350.  The J.P.M.L. plainly rejected this argument, noting "[a]lthough the number of Section 1407 remands in this docket is proportionately small, this is only because under Judge Weiner's stewardship the vast majority of transferred actions have been able to be concluded in the transferee district during the course of pretrial proceedings...".  *Id.*  In defense of the MDL's track record, the J.P.M.L went on to elaborate that "whenever the transferee judge has deemed remand of any claims or actions appropriate, procedures have been utilized to accomplish Section 1407 remand for trial with a minimum of delay.  *Id.*

Plaintiffs aptly note that "[s]ome reasonable delay or alternative process in jury trials has sometimes been accepted as constitutional."  *See* Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion at p. 7.  In fact, there is nothing *per se* unconstitutional about some delay in getting a jury trial, particularly in the context of mass litigation.  *See, e.g., Capital Traction Company v. Hof*, 174 U.S. 1, 23 (1899) (the Seventh Amendment "does not prescribe at what stage of an action a trial by jury must, if demanded, be had"); *In re Vermont Supreme Court Administrative Directive No. 17*, 579 A.2d 1036, 1041 (Vt. 1990) ("actions that may delay or condition the jury trial right do not by themselves infringe on that right"); *Pittsburgh Corning Corporation v. Bradley*, 453 A.2d 314, 316 (Pa. 1982) (holding that "requirement that the litigants proceed first in another forum does not offend the Constitution"); *Rhea v. Massey-Ferguson, Inc.*, 767 F.2d 266, 268 (6th Cir. 1985) (holding that mandatory arbitration program does not violate right to jury trial).  However, Plaintiffs attempt to distinguish the MDL timeline as "interminable" by citation to the very same "voices in the wilderness" addressed above.  It bears repeating that in the *Maine Asbestos*, *Madden*, and *Rosamond* cases, the disapproving statements regarding the MDL, made in dicta, played virtually no role in the final disposition of each case.

Plaintiffs next attempt to analogize the reasonable delays which can occur by transfer to the MDL with those unreasonable delays that took place in *Armster v. U.S. District Court*, 792 F.2d 1423 (9th Cir, 1986) and *Ex parte Milligan*, 71 U.S. 2, 18 L.Ed. 281 (1866).  These cases are not analogues to the situation Plaintiffs would face if this action were transferred to the MDL.  In *Armster*, for example, all trials were completely suspended due to budgetary concerns.  There, the court held that the civil jury trial system may not be suspended for lack of funds and that to do so is an unconstitutional violation of a plaintiff's right to trial by jury.  *Id.* at 1428.  Further, the Civil War era *Milligan* was a criminal trial involving unlawful detainer.  Transfer of this action to the MDL bears no resemblance to a trial suspension due to lack of funds or unlawful suspension of process in a criminal context.  Moreover, despite Plaintiffs' suggestions to the contrary, there is no constitutional right to a speedy *civil* jury trial.

Admittedly because of the MDL's focus on collective pretrial, some reasonable delays can occur.  However, given the vast number of cases relying on the same facts, witnesses, and parties, collective pretrial is the most just and efficient venue for an action such as this one.

### 3.    Transfer to the MDL will not violate Plaintiffs' rights to equal protection as guaranteed by the Fourteenth Amendment.

Finally, in their pursuit to vacate CTO-299, Plaintiffs incorrectly assert that transfer to the MDL would be a violation of Plaintiffs equal protection rights under the Fourteenth Amendment to the United States Constitution based on a strict scrutiny analysis.

Setting aside the fact that the Fourteenth Amendment applies only to states and state actors, not the federal courts (*see* U.S. Const. amend. XIV, § 1; *see also Walton v. U.S. Dept. of Agriculture*, 2007 WL 1246845, *12 (E.D. Mo. 2007), Plaintiffs apply the wrong standard of review.  The proper standard of review with regard to equal protection matters is not strict scrutiny, but rather is rational basis review:  does the challenged practice have a reasonable relationship to a legitimate state interest?  *See, e.g.*, Mark A. Behrens & Manuel Lopez,

Unimpaired Asbestos Dockets: They Are Constitutional, 24 Rev. of Litig. 253, 292-93 (Spring 2005). For all of the reasons articulated above, that standard is plainly met in this instance, where the practices and procedures of the MDL promote the just and efficient resolution of mass asbestos litigation. Further, Plaintiffs cannot make the requisite threshold showing that the MDL subjects them to intentional discrimination because the MDL's practices and procedures operate upon and affect both plaintiffs and defendants in the same manner. Given the requirement of a threshold showing of intentional discrimination, Plaintiffs cannot demonstrate that the MDL's procedures have a disparate impact on asbestos plaintiffs and defendants.

Even under the Plaintiffs' incorrectly applied strict scrutiny standard of review – is the challenged practice closely related to a compelling governmental interest? – Plaintiffs argument must fail. When the federal government elected to tackle the "asbestos litigation crisis," it was confronting a compelling governmental interest. As mentioned above, "dockets in both federal and state courts continue[d] to grow; long delays [were] routine, trials [were] too long; the same issues [were being] litigated over and over; transaction costs exceed[ed] the victims' recovery by nearly two to one; exhaustion of assets threaten[ed] and distort[ed] the process; and [there was concern that ] future claimants may lose altogether." *Anchem Prods., Inc.*, 521 U.S. at 598 (*citing* the Report of the Judicial Conference Ad Hoc Committee on Asbestos Litigation). Due to the calamitous nature of the problem, an innovative solution was required. The creation and administration of the MDL was and still is the federal government's narrowly tailored means of addressing the problem. Accordingly, because Plaintiffs' constitutional rights will not be violated by transfer of this action to the MDL, Plaintiffs' Motion should be denied.

## III.    CONCLUSION

The MDL is the appropriate venue for this action for reasons of convenience, justice, and efficiency. Further, Plaintiffs' constitutional rights will not be violated by transfer to the MDL.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR - 3 2008

CLERK'S OFFICE

Wherefore, Defendant General Electric Company respectfully requests that Plaintiffs'

Motion to Vacate Conditional Transfer Order to the United States Judicial Panel on Multidistrict

Litigation be denied.

ARMSTRONG TEASDALE LLP

BY: *F. Scott Galt*

Raymond R. Fournie
Gregory A. Iken
F. Scott Galt
One Metropolitan Square, Suite 2600
St. Louis, Missouri 63102-2740
(314) 621-5070
(314) 621-5065 (facsimile)

Attorneys for Defendant General Electric Co.

## CERTIFICATE OF SERVICE

I hereby certify that an original and four copies of the foregoing document, along with a computer generated disk, were filed with the Clerk of the J.P.M.L. and that a copy was also served on the attached Panel Service List by depositing a copy of the same in the United States mail, postage prepaid, on the 29th day of February, 2008.

*F. L. Galt*

RECEIVED
CLERK'S OFFICE
2008 MAR - 3  A 11: 05
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

IN RE:  ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)

MDL No. 875

## PANEL SERVICE LIST (Excerpted from CTO-299)

Warren W. Sether, et al. v. AGCO Corp., et al., S.D. Illinois, C.A. No. 3:07-809
Harold Hendley, et al. v. American Standard, Inc., et al., W.D. Kentucky,
C.A. No. 5:07-208

Jeffrey T. Bash
HEYL ROYSTER VOELKER
& ALLEN
103 West Vandalia Street
P.O. Box 467
Edwardsville, IL 62025

Brenda C. Baum
HEPLER BROOM MACDONALD
HEBRANK ET AL
Mark Twain Plaza
103 West Vandalia Street, Suite 300
P.O. Box 510
Edwardsville, IL 62025-0510

Richard C. Binzley
THOMPSON HINE LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Melissa N. Bork
GREENEBAUM DOLL
& MCDONALD PLLC
101 S. Fifth Street
3300 National City Tower
Louisville, KY 40202-3197

J. David Boswell
BOSWELL SIMS & VASSEUR
425 S. Sixth Street
P.O. Box 1265
Paducah, KY 42002-1265

Edward K. Box
GAULT MARSHALL & MILLER
P.O. Box 30
129 S. Water Street
Paducah, KY 42002-0030

Robert J. Brummond
FOLEY & MANSFIELD PLLP
1001 Highlands Plaza Drive West
Suite 400
St. Louis, MO 63110

Kymala B. Carrier
MCAFEE & TAFT
2 Leadership Square 10th Fl
211 N. Robinson
Oklahoma City, OK 73102

Edward J. Cass
GALLAGHER SHARP FULTON
& NORMAN
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Jeffery G. Chrones
JOHNSON & BELL LTD
33 West Monroe Street
Suite 2700
Chicago, IL 60603-5404

Adam M. Chud
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC 20001

Thomas Bennet Clark
851 Corporate Drive
Suite 310
Lexington, KY 40503

Edward M. Crane
SKADDEN ARPS SLATE
MEAGHER & FLOM LLP
333 West Wacker Drive
Suite 2100
Chicago, IL 60606

Steven M. Crawford
FROST BROWN TODD LLC
400 West Market Street
32 Floor
Louisville, KY 40202-3363

Donald J. Dahlmann
WALKER & WILLIAMS
4343 West Main Street
Belleville, IL 62223

David A. Damico
BURNS WHITE & HICKTON LLC
Four Northshore Center
106 Isabella Street
Pittsburgh, PA 15212

Scott Allen Davidson
BOEHL STOPHER & GRAVES
400 W. Market Street
2300 Aegon Center
Louisville, KY 40202

Scott T. Dickens
FULTZ MADDOX HOVIOUS
& DICKENS PLC
101 South Fifth Street
2700 National City Tower
Louisville, KY 40202-3116

Daniel G. Donahue
FOLEY & MANSFIELD PLLP
1001 Highlands Plaza Drive West
Suite 400
St. Louis, MO 63110

Robert J. Evola
SAVILLE EVOLA & FLINT
322 East Broadway
P.O. Box 602
Alton, IL 62002

Raymond P. Forceno
FORCENO GOGGIN & KELLER
1528 Walnut Street
Suite 900
Philadelphia, PA 19102

Blaire M. Henley
WOODEN & MCLAUGHLIN
One Indiana Square, Suite 1800
211 North Pennsylvania
Indianapolis, IN 46204-4208

Rebecca K. Jude
Jude & Jude, PLLC
6424 Highway 98 West
Suite 50
P.O. Box 17468
Hattiesburgh, MS 39402

Raymond R. Fournie
ARMSTRONG TEASDALE LLP
One Metropolitan Square
211 North Broadway, Suite 2600
St. Louis, MO 63102-2740

Harry K. Herren, Jr.
WOODWARD HOBSON &
FULTON
2500 National City Tower
101 S. Fifth Street
Louisville, KY 40202

Mark A. Kinzie
STINSON MORRISON HECKER
100 South Fourth Street
Suite 700
St. Louis, MO 63102

Ellen B. Furman
GOLDFEIN & HOSMER
1600 Market Street
33rd Floor
Philadelphia, PA 19103

William A. Hoback II
MIDDLETON REUTLINGER PSC
2500 Brown & Williamson Tower
Louisville, KY 40202-3410

William M. Koziol
LAW OFFICES OF WILLIAM
M KOZIOL
1 Kemper Drive
Long Grove, IL 60049

John K. Gordinier
PEDLEY ZIELKE GORDINIER
& PENCE
462 South Fourth Avenue
2000 Meidinger Tower
Louisville, KY 40202

Stefan Richard Hughes
COLE & MOORE, PSC
P.O. Box 10240
Bowling Green, KY 42102

Reginald S. Kramer
OLDHAM & DOWLING
195 South Main Street
Suite 300
Akron, OH 44308-1314

Albert F. Grasch, Jr.
GRASCH & COWEN
302 West High Street
Lexington, KY 40507

Rebecca R. Jackson
BRYAN CAVE LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63 102-2750

Thomas Ksobiech
RASMUSSEN WILLIS DICKEY
& MOORE LLC
9200 Ward Parkway
Suite 310
Kansas City, MO 64114

Susan Gunty
GUNTY & MCCARTHY
150 South Wacker Drive
Suite 1025
Chicago, IL 60606

Joseph J. Janatka
ROSS & HARDIES
150 N. Michigan Avenue
Ste. 2500
Chicago, IL 60601

Kimberly K. Kuhlengel-Jones
255 East St. Louis Street
Nashville, IL 62263

Susan M. Hansen
BROWNSON & BALLOU
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

Charles L. Joley
DONOVAN ROSE NESTER
& JOLEY
8 East Washington Street
Belleville, IL 62220

John J. Kurowski
KUROWSKI BAILEY & SHULTZ
24 Bronze Pointe
Swansea, IL 62226

Max S. Hartz
MCCARROLL NUNLEY
& HARTZ
111 E. Third Street
P.O. Box 925
Owensboro, KY 42302-0925

A. Timothy Jones
HAWKINS & PARNELL LLP
4000 One Peachtree Center
303 Peachtree Street, N.E.
Atlanta, GA 30308-3243

Candice C. Kusmer
KUROWSKI BAILEY & SHULTZ
24 Bronze Pointe
Swansea, IL 62226

Mary Ann Hatch
HERZOG CREBS LLP
One City Centre
515 North Sixth Street, 24th Floor
St. Louis, MO 63101

David E. Larson
LARSON & LARSON
11150 OverBrook Road, Suite 350
Leewood, KS 66211

Gene Locks
LOCKS LAW FIRM LLC
1500 Walnut Street
Philadelphia, PA 19102

Stephen J. Maassen
HOAGLAND FITZGERALD ET AL
401 Market Street, P.O. Box 130
Alton, IL 62002

William F. Mahoney
SEGAL MCCAMBRIDGE SINGER
& MAHONEY LTD
233 South Wacker Drive, Suite 5500
Chicago, IL 60606

Ryan J. McQueeney
SANCHEZ DANIELS & HOFFMAN
333 West Wacker Drive
Suite 500
Chicago, IL 60606

Robert J. Meyer
SWANSON MARTIN & BELL LLP
330 North Wabash, Suite 3300
Chicago, IL 60611

John B. Moore
PHILLIPS PARKER ORBERSON
& MOORE PLC
716 West Main Street, Suite 300
Louisville, KY 40202

H. Patrick Morris
JOHNSON & BELL LTD
33 West Monroe Street, Suite 2700
Chicago, IL 60603-5404

Walter M. Jones
WYATT TARRANT & COMBS
500 W. Jefferson Street
Suite 2800
Louisville, KY 40202

John J. Repcheck
MARKS O'NEILL O'BRIEN
& COURTNEY PC
Gulf Tower, Suite 2600
707 Grant Street
Pittsburgh, PA 15219

Karen M. Rheingans
SEGAL MCCAMBRIDGE SINGER
& MAHONEY LTD
330 North Wabash Avenue
Suite 200
Chicago, IL 60611-3514

John D. Roven
ROVEN-KAPLAN LLP
2190 North Loop West
Suite 410
Houston, TX 77018

Rebecca F. Schupbach
WYATT TARRANT & COMBS
500 W. Jefferson Street
Suite 2800
Louisville, KY 40202

Richard D. Schuster
VORYS SATER SEYMOUR
& PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008

Neil Selman
SELMAN BREITMAN & BURGESS
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Adam B. Shadburne
THOMPSON MILLER & SIMPSON
600 W. Main Street
Suite 500
Louisville, KY 40202

David C. Landin
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Stephen E. Smith, Jr.
MCMURRY & LIVINGSTON
P.O. Box 1700
333 Broadway
Paducah, KY 42002-1700

Milton C. Spaulding
SPENCER FANE BRITT
& BROWNE LLP
1 N. Brentwood Boulevard
Suite 1000
St. Louis, MO 63105

Robert N. Spinelli
KELLEY JASONS MCGUIRE
& SPINELLI LLP
Centre Square West
15th Floor
Philadelphia, PA 19102

Robert E. Swickle
JAQUES ADMIRALTY LAW FIRM
1370 Penobscot Building
645 Griwsold Street
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226-4192

James K. Toohey
JOHNSON & BELL LTD
33 West Monroe Street, Suite 2700
Chicago, IL 60603-5404

Andrew J. Trevelise
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Palmer G. Vance II
STOLL KEENON & OGDEN
300 W. Vine Street
Suite 2100
Lexington, KY 40507-1380

Ronald L. Motley
MOTLEY RICE LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

Robert H. Shultz, Jr.
HEYL ROYSTER VOELKER
& ALLEN
103 West Vandalia Street
Suite 100
P.O. Box 467
Edwardsville, IL 62025

James K. Weston II
TOM RILEY LAW FIRM
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

James W. Owens
730 Clark Street
P.O. Box 2757
Paducah, KY 42002-2757

Gary E. Wiseman
NOONAN & W1SEMAN PC
701 Market, Suite 650
St. Louis, MO

Westlaw.

771 F.Supp. 415
771 F.Supp. 415, 60 USLW 2103
**(Cite as: 771 F.Supp. 415)**

Page 1

**H**
In re Asbestos Products Liability Litigation (No. VI)
Jud.Pan.Mult.Lit.,1991.

Judicial Panel onMultidistrict Litigation.
In re ASBESTOS PRODUCTS LIABILITY LITIGA-
TION (NO. VI).
**MDL No. 875.**

July 29, 1991.

After issuing order to show cause why all pending fed-
eral district court actions not then in trial involving al-
legations of personal injury or wrongful death caused by
asbestos should not be centralized in a single forum, the
Judicial Panel on Multidistrict Litigation, Nangle, J.,
held that pursuant to statute governing transfer in mul-
tidistrict cases, 26,639 actions involving allegations of
personal injury or wrongful death caused by asbestos
would be transferred to the Eastern District of
Pennsylvania for pretrial proceedings, considering that
actions involved common questions of fact, and that
centralization of actions would best serve convenience
of parties and witnesses and promote the just and effi-
cient conduct of litigation.

So ordered.

West Headnotes

**Federal Courts 170B ⟐152.5**

170B Federal Courts
    170BII Venue
        170BII(B) Change of Venue
            170BII(B)5 Multi-District Litigation; Transfer
for Pre-Trial Proceedings
                170Bk152 Particular Transferable Cases
                    170Bk152.5 k. In General. Most Cited
Cases
    (Formerly 170Bk152)
Pursuant to statute governing transfer in multidistrict
cases, 26,639 actions involving allegations of personal
injury or wrongful death caused by asbestos would be
transferred to the Eastern District of Pennsylvania for

pretrial proceedings, considering that actions involved
common questions of fact, and that centralization of ac-
tions would best serve convenience of parties and wit-
nesses and promote the just and efficient conduct of lit-
igation. 28 U.S.C.A. § 1407.

**\*416** Before JOHN F. NANGLE, Chairman, S. HUGH
DILLIN,[FN*]MILTON POLLACK,\*LOUIS H. POL-
LAK, HALBERT O. WOODWARD, ROBERT R.
MERHIGE, Jr., and WILLIAM B. ENRIGHT, Judges
of the Panel.

> FN* Judges Dillin and Pollack did not particip-
> ate in the decision of this matter.

OPINION AND ORDER

Judge NANGLE, Chairman, Delivered the Opinion of
the Panel, in Which Judges POLLAK, WOODWARD,
MERHIGE and ENRIGHT joined.
    On January 17, 1991, the Panel issued an order to
show cause why all pending federal district court ac-
tions not then in trial involving allegations of personal
injury or wrongful death caused by asbestos should not
be centralized in a single forum under 28 U.S.C. § 1407.
Because of the difficulty in serving this order on the
enormous number of parties in this docket, the Panel re-
lied on the clerks of all district courts to serve the
parties to actions in their respective districts.[FN1] As a
result, the parties to the 26,639 actions pending in 87
federal districts and listed on the following Schedule A
are subject to the Panel's order.[FN2] [Editor's Note: All
but the Summary of Schedule A has been omitted from
publication by the Court.] More than 180 pleadings
have been filed in response to the Panel's order, and a
four hour hearing on the question of transfer was held
on May 30, 1991 in New York City, at which time 37
counsel presented oral argument. In many instances the
attorneys filing these pleadings or participating in oral
argument were representing the views of large groups of
parties.

> FN1. It appears that the only districts with

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

JUDICIAL PANEL ON
MULTIDISTRICT
2008 MAR -3 A 11: 05
CLERK'S OFFICE
RECEIVED

Exhibit
A

pending asbestos actions that did not effect service of the Panel's order are the Eastern District of Wisconsin and the District of Rhode Island. In view of the Panel's disposition of this docket, the actions pending there will be treated as potential tag-along actions in accordance with the Panel's Rules. *See* Rules 12 and 13, R.P.J.P.M.L., 120 F.R.D. 251, 258-59 (1988).

FN2. The Statistical Division of the Administrative Office of the United States Courts reports that as of March 31, 1991, nearly 31,000 actions were pending in federal districts. Based on Panel communications with courts throughout the country, the approximately 4,000 pending actions not embraced by the present order likely include actions that, as of January 17, 1991, were overlooked, in trial or already at least partially tried but not yet statistically closed because, *inter alia,* claims against one or more defendants were stayed under the Bankruptcy Code.

Supporting transfer are plaintiffs in approximately 17,000 actions (including a core group of more than 14,000 plaintiffs represented by over 50 law firms) and 30 defendants (24 of which are named in more than 20,000 actions). Opposing transfer are plaintiffs in at least 5,200 actions and 454 defendants. The positions of those parties that have expressed a preference with respect*417 to transferee district are varied. Many parties suggest centralization in what amounts to their home forum. The Eastern District of Pennsylvania is the district either expressly favored or not objected to in the greatest number of pleadings. The Eastern District of Texas, which is the choice of the aforementioned core group of 14,000 plaintiffs, is also the district that has generated the most opposition from defendants. Other suggested districts that go beyond the home forum approach are the District of the District of Columbia, the Eastern District of Louisiana, the Northern District of Ohio, and the Eastern District of New York. Some parties' forum recommendations are expressed in the form of a suggested individual transferee judge or transferee judge structure.

On the basis of the papers filed and the hearing held, the Panel finds that the actions in this litigation involve common questions of fact relating to injuries or wrongful death allegedly caused by exposure to asbestos or asbestos containing products, and that centralization under § 1407 in the Eastern District of Pennsylvania will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation.

## DISCUSSION

Any discussion of § 1407 transfer in this docket must begin with the recognition that the question does not arise in a vacuum. Indeed, the impetus for the Panel's order to show cause was a November 21, 1990 letter signed by eight federal district judges responsible for many asbestos actions in their respective districts.[FN3] These judges, citing the serious problem that asbestos personal injury litigation continues to be for the federal judiciary, requested that the Panel act on its own initiative to address the question of § 1407 transfer. Furthermore, as the title of this docket suggests, this is the sixth time that the Panel has considered transfer of asbestos litigation. On the five previous occasions (1977, 1980, 1985, 1986 and 1987) that the Panel considered the question, it denied transfer in each instance.[FN4]

FN3. The signatories to this letter are Judges Walter J. Gex, III (S.D.Miss.), Thomas D. Lambros (N.D.Ohio), Alan H. Nevas (D.Conn.), Richard A. Schell (E.D.Tx.), Charles Schwartz, Jr. (E.D.La.), Charles R. Weiner (E.D.Pa.), Charles R. Wolle (S.D.Iowa) and Rya W. Zobel (D.Mass.). Additionally, Judge Jack B. Weinstein (E.D.N.Y.) has contacted the Panel staff and requested that he also be considered a signatory to the letter.

FN4. *In re Asbestos and Asbestos Insulation Material Products Liability Litigation,* 431 F.Supp. 906 (J.P.M.L.1977); *In re Asbestos Products Liability Litigation (No. II),* MDL-416 (J.P.M.L. March 13, 1980) (unpublished order); *In re Asbestos School Products Liability*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Litigation,* 606 F.Supp. 713 (J.P.M.L.1985); *In re Ship Asbestos Products Liability Litigation,* MDL-676 (J.P.M.L. Feb. 4, 1986) (unpublished order); and *In re Leon Blair Asbestos Products Liability Litigation,* MDL-702 (J.P.M.L. Feb. 6, 1987) (unpublished order).

The Panel's constancy is not as dramatic as a mere recitation of the denials might suggest, however. The 1986 and 1987 dockets considered by the Panel involved five and two actions, respectively. The 1985 Panel decision pertained not to personal injury/ wrongful death asbestos actions but rather to property damage claims of school districts that incurred significant costs in removing asbestos products from school buildings. The denial in the 1980 Panel docket was based almost exclusively on the movants' failure to offer any distinctions that would warrant a disposition different from the Panel's first asbestos decision in 1977.

It is only in the 1977 decision, pertaining to 103 actions in nineteen districts, that the Panel offered any detailed analysis of its asbestos litigation reasoning with respect to asbestos personal injury/wrongful death actions. In that decision, the Panel first listed the primary arguments of the responding parties that unanimously opposed transfer: advanced stage of proceedings in many of the actions; use of voluntary coordinating arrangements in several districts; lack of commonality among defendants and plaintiffs; circumstances of exposure predominantly unique to each action; individual questions of causation in each action; predominantly individual questions of the liability of each defendant in each action; *418 local issues predominating in the discovery process; absence of possibility of inconsistent or overlapping class certifications; and the readily discernible nature of the principal area common to all actions, the state of medical and scientific knowledge at a particular time regarding the health hazards posed by exposure to asbestos.

In denying transfer in the 1977 decision, the Panel recognized the existence of some common questions of fact among the actions. For in that docket, as in the matter currently before the Panel, all actions contained allegations of personal injury or death as a result of exposure to asbestos or asbestos containing products. The Panel nevertheless held that the other criteria for § 1407 transfer were not satisfied. In relevant part, the Panel stated:

Many factual questions unique to each action or to a group of actions already pending in a single district clearly predominate, and therefore transfer is unwarranted.... Furthermore, many of these actions already are well advanced. Some of the actions have been pending for up to four years, and trial dates or discovery cutoff dates have been set in several actions. Under these circumstances, transfer would not further the purposes of Section 1407.

*In re Asbestos and Asbestos Insulation Material Products Liability Litigation,* 431 F.Supp. 906, 910 (J.P.M.L.1977).

Many of the parties presently opposing transfer in this docket rely on the facts and reasoning of the Panel's 1977 transfer decision. They insist that the situation that warranted denial then not only still prevails but has been magnified by the greatly increased number of actions and parties in federal asbestos personal injury/ wrongful death litigation-more than 30,000 pending federal actions now, as opposed to the 103 actions subject to the Panel's 1977 decision. In our view, it is precisely this change that now leads us to conclude that centralization of all federal asbestos personal injury/ wrongful death actions, in the words of 28 U.S.C. § 1407(a), "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." In short, we are persuaded that this litigation has reached a magnitude, not contemplated in the record before us in 1977, that threatens the administration of justice and that requires a new, streamlined approach.

The Panel is not the first to reach such a conclusion. Just this past March 1991, the Judicial Conference Ad Hoc Committee on Asbestos Litigation, whose members were appointed by Chief Justice William H. Rehnquist, stated as follows:

The committee has struggled with the problems confronting the courts of this nation arising from death and disease attributable to airborne asbestos industrial

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

771 F.Supp. 415
771 F.Supp. 415, 60 USLW 2103
**(Cite as: 771 F.Supp. 415)**

Page 4

materials and products. The committee has concluded that the situation has reached critical dimensions and is getting worse. What has been a frustrating problem is becoming a disaster of major proportions to both the victims and the producers of asbestos products, which the courts are ill-equipped to meet effectively.

After extensive study, the Institute for Civil Justice of the Rand Corporation in 1985 observed, with respect to how the civil justice system handles asbestos claims, that-

The picture is not a pretty one. Decisions concerning thousands of deaths, millions of injuries, and billions of dollars are entangled in a litigation system whose strengths have increasingly been overshadowed by its weaknesses.

The ensuing five years have seen the picture worsen: increased filings, larger backlogs, higher costs, more bankruptcies and poorer prospects that judgments-if ever obtained-can be collected.

It is a tale of danger known in the 1930s, exposure inflicted upon millions of Americans in the 1940s and 1950s, injuries that began to take their toll in the 1960s, and a flood of lawsuits beginning in the 1970s. On the basis of past and current filing data, and because of a latency period that may last as long as 40 years for some asbestos related diseases,**419** a continuing stream of claims can be expected. The final toll of asbestos related injuries is unknown. Predictions have been made of 200,000 asbestos disease deaths before the year 2000 and as many as 265,000 by the year 2015.

The most objectionable aspects of asbestos litigation can be briefly summarized: dockets in both federal and state courts continue to grow; long delays are routine; trials are too long; the same issues are litigated over and over; transaction costs exceed the victims' recovery by nearly two to one; exhaustion of assets threatens and distorts the process; and future claimants may lose altogether.

*Report of The Judicial Conference Ad Hoc Committee on Asbestos Litigation,* 1-3 (1991) (footnote omitted) (hereinafter *Asbestos Committee Report* ). The Committee pointed out that presently in the federal system nearly two new asbestos actions are being filed for every action terminated, and that at the current rate,

there will be more than 48,000 actions pending in the federal courts at the end of three years. *Asbestos Committee Report, supra,* at 8.

The Committee also discussed the ongoing change in the demographics of asbestos litigation in the federal courts:

In 1984, when the Federal Judicial Center held its first asbestos conference, asbestos litigation in the federal courts was largely concentrated in only four district courts. Since that time, however, asbestos cases have infiltrated virtually every federal district. Asbestos litigation must therefore be viewed as a national problem rather than merely a local or regional one, especially with the number of Americans affected.

*Asbestos Committee Report, supra,* at 9 (footnote omitted).

Conclusions similar to those of the Judicial Conference Asbestos Committee have also been reached by judges actively involved in asbestos litigation. In perhaps the most recent comprehensive review of asbestos litigation, Judge Jack B. Weinstein (E.D.N.Y.) ob- served:

The large number of asbestos lawsuits pending throughout the country threatens to overwhelm the courts and deprive all litigants, in asbestos suits as well as other civil cases, of meaningful resolution of their claims.... Several commentators have recounted the inefficiencies and inequities of case-by-case adjudication in the context of mass tort disasters. *See, e.g.,* Rosenberg, *Class Actions for Mass Torts: Doing Individual Justice by Collective Means,* 62 Ind.L.J. 561 (1987); *Trends in Asbestos Litigation* (Federal Judicial Center 1987); Rubin, *Mass Torts and Litigation Disasters,* 20 Ga.L.Rev. 429 (1986); Note, *Class Certification in Mass Accident Cases Under Rule 23(b)(1),* 96 Harv.L.Rev. 1143 (1983); Comment, *Federal Mass Tort Class Actions: A Step Toward Equity and Efficiency,* 47 Alb.L.Rev. 1180 (1983).

The heyday of individual adjudication of asbestos mass tort lawsuits has long passed. *See* [*Asbestos Committee Report* ], *supra,* at 7 ("one point on which plaintiffs' counsel, defense counsel and the judiciary can agree is that the present way in which we have attemp-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ted to resolve asbestos cases has failed"). The reasons are obvious: the complexity of asbestos cases makes them expensive to litigate; costs are exacerbated when each individual has to prove his or her claim *de novo;* high transaction costs reduce the recovery available to successful plaintiffs; and the sheer number of asbestos cases pending nationwide threatens to deny justice and compensation to many deserving claimants if each claim is handled individually. The backlog is eroding a fundamental aspiration of our judicial system to provide equality of treatment for similarly situated persons. *Cf.* [*Asbestos in the Courts: The Challenge of Mass Toxic Torts* (RAND, Inst. of Social Science 1985) ], *supra,* at 12 (recent wave of asbestos litigation marked by high concentration of claims, dominance of characteristics of individual asbestos cases, behavior of parties, lawyers and the attributes of judges "created a situation in which dispositions are *420 slow, costs are high, and outcomes are variable").

Overhanging this massive failure of the present system is the reality that there is not enough money available from traditional defendants to pay for current and future claims. Even the most conservative estimates of future claims, if realistically estimated on the books of many present defendants, would lead to a declaration of insolvency-as in the case of some dozen manufacturers already in bankruptcy.

*In re Johns-Manville Corporation, et al.,* No. 90-3973, slip op. at 61-63, 1991 WL 86304 (E.D.N.Y. May 16, 1991).

Given the dimensions of the perceived problem in federal asbestos litigation, it is not surprising that no ready solution has emerged. The Judicial Conference Asbestos Committee concluded that the only true solution lies in Congressional legislation. Nevertheless, it stressed that "[a]t the same time, or failing congressional action, the federal judiciary must itself act now to achieve the best performance possible from the system under current law." *Asbestos Committee Report, supra,* at 4. The Committee also noted that the Panel's order to show cause was pending at the time of the issuance of the Committee's report. The Committee observed that "this committee, by its recommendations, does not in-

tend to affect or restrict in any way the actions of the Panel under 28 U.S.C. § 1407 or reduce the Panel's jurisdiction or authority." *Id.* at 22.[FN5]

> FN5. The Committee also observed that, in the interest of centralizing asbestos claims to the greatest extent possible, the Panel's authority "could be expanded to allow the Panel to transfer actions for trial as well as for pretrial proceedings." *Asbestos Committee Report, supra,* at 31.

It is against this backdrop that the Panel's decision and role in this litigation must be understood. First of all, our decision to order transfer is not unmindful of the fact that the impact of asbestos litigation varies from district to district, and that in some courts asbestos personal injury actions are being resolved in a fashion indistinguishable from other civil actions. It is not surprising, therefore, that parties and courts involved in such actions might urge that inclusion of their actions in multidistrict proceedings is inappropriate. The Panel, however, must weigh the interests of all the plaintiffs and all the defendants, and must consider multiple litigation as a whole in the light of the purposes of the law. *In re Multidistrict Private Civil Treble Damage Litigation Involving Library Editions of Children's Books,* 297 F.Supp. 385, 386 (J.P.M.L.1968). It is this perspective that leads us to conclude that centralization in a single district of all pending federal personal injury and wrongful death asbestos actions is necessary.

Much of the argument presented to the Panel in response to its order to show cause is devoted to parties' differing (and often inconsistent) visions of § 1407 proceedings: 1) some plaintiffs see centralized pretrial proceedings as a vehicle leading to a single national class action trial or other types of consolidated trials on product defect, state of the art and punitive damages, while many defendants staunchly oppose such a trial, favor a reverse bifurcation procedure where actual damages and individual causation are tried before liability, and hope to use § 1407 proceedings to effect the severance of claims for punitive damages through a transferee court order directing that, upon the return of any case to its transferor district, such claims not be tried until

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

771 F.Supp. 415
771 F.Supp. 415, 60 USLW 2103
**(Cite as: 771 F.Supp. 415)**

Page 6

claims for compensatory damages have been resolved in all federal cases; 2) some parties hope to persuade the transferee court to establish case deferral programs for plaintiffs who are not critically ill, or who have been exposed to asbestos but do not presently show any signs of impairment (i.e., pleural registries), while many plaintiffs assert that such procedures are unfair or unconstitutional; 3) in response to the pressing concern about transaction costs in this litigation, some defendants consider § 1407 transfer necessary in order to provide a single federal forum in which limits on plaintiffs' contingent fees can be addressed, while some plaintiffs maintain that transfer is necessary to prevent**421** the depletion of defendants' limited insurance coverage by defense costs incurred in multiple districts; 4) some plaintiffs and defendants urge that transfer is necessary in order to develop through discovery proceedings nationwide product data bases on all asbestos products and corporate histories of all asbestos defendants, while other plaintiffs and defendants contend that such efforts would be of no utility and are simply designed to shift liability; 5) some plaintiffs are suggesting that defendants' finances are so fragile as to require limited fund class action determinations pursuant to Fed.R.Civ.P. 23(b)(1)(B), while other plaintiffs resist any attempt to restrict their right to pursue punitive damages; 6) some parties anticipate that a single transferee court would speed up case disposition and purge meritless claims, while others expect a system of spacing out claims so as not to overwhelm currently solvent defendants' cash flow and drive them into bankruptcy; and 7) some parties contend that a single transferee court is necessary for the purpose of exploring the opportunities for global settlements or alternative dispute resolution mechanisms, while other parties assert that such hopes are utopian at best as long as i) more than twice as many asbestos cases remain pending in state courts as in federal courts, and ii) currently stayed claims against bankrupt defendants cannot be addressed by the transferee court.[FN6]

> FN6. There appears to be some confusion among the parties concerning the interaction of the provisions of the Bankruptcy Code and § 1407. Transfer under § 1407 of an action con-

taining claims against a defendant in bankruptcy has no effect on the automatic stay provisions of the Bankruptcy Code (11 U.S.C. § 362). Claims that have been stayed in the transferor court remain stayed in the transferee court. The Panel, however, has never considered the pendency of such stayed claims in an action to be an impediment to transfer of the action. 28 U.S.C. § 1407(a) authorizes the Panel to transfer only "civil actions" and not claims. The complex multidistrict litigations before the Panel have often included actions brought against multiple defendants, the claims against one or more of which have been stayed as a result of bankruptcy. To have allowed the pendency of claims against a single bankrupt defendant to preclude the transfer of actions containing claims actively being litigated against common nonbankrupt defendants would have frustrated the essential purpose of § 1407.

Some parties have urged the Panel to treat the bankruptcy reorganizations themselves as "civil actions" appropriate for transfer under § 1407 to the transferee district. The reorganization proceedings are not subject to our order to show cause, and this question is therefore not ripe for a Panel decision. We have not addressed this question before and would be reluctant to do so until: 1) the transferee court determines that other alternatives, such as coordination with the concerned bankruptcy courts, are insufficient to accomplish the goals of § 1407; and 2) other suggested means of transferring the bankruptcy reorganizations or relevant portions thereof have been fully explored by the transferee court and the concerned bankruptcy courts.

Finally, we note that to the extent that state court actions and bankruptcy proceedings are excluded from the ambit of the Panel's transfer decision, transfer will nonetheless have the salutary effect of creating one federal court with which such proceedings can be coordinated, to the extent deemed desirable by the concerned courts. Indeed, state court judges have communicated to the Panel that coordination among state courts and a single transferee court for the federal actions is an objective worthy of pursuit.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

We enumerate these issues not for the purpose, as some parties seemingly misunderstand, of passing on their merits. The language of the first sentence of paragraph (b) of § 1407 is quite clear about the proper forum for resolution of such issues-"coordinated or consolidated pretrial proceedings shall be conducted by a judge or judges to whom such actions are assigned" by the Panel (emphasis added). The Panel has neither the power nor the disposition to direct the transferee court in the exercise of its powers and discretion in pretrial proceedings. *In re Plumbing Fixture Cases,* 298 F.Supp. 484, 489 (J.P.M.L.1968).

We cite these issues only as illustrations of 1) the types of pretrial matters that need to be addressed by a single transferee court in order to avoid duplication of effort (with concomitant unnecessary expenses) by the parties and witnesses, their counsel, and the judiciary, and in order to prevent inconsistent decisions; [FN7] and 2) why, at *422 least initially, all pending federal personal injury or wrongful death asbestos actions not yet in trial should be included in § 1407 proceedings. For example, if, as some courts, parties and commentators have suggested, there are insufficient funds to fairly compensate all deserving claimants, this should be determined before plaintiffs in lightly impacted districts go to trial and secure recoveries (often including punitive damages) at the possible expense of deserving plaintiffs litigating in districts where speedy trial dates have not been available. Similarly, if there are economies to be achieved with respect to remaining national discovery, pretrial rulings or efforts at settlement, these should be secured for claims against distinct types or groups of defendants are separated out of the litigation. Finally, because many of the arguments of parties seeking exclusion from transfer are intertwined with the merits of their claims or defenses and affect the overall management of this litigation, we are unwilling, on the basis of the record presently before us, to carve out exceptions to transfer. We prefer instead to give the transferee court the opportunity to conduct a substantive review of such contentions and how they affect the whole proceedings.

FN7. We note that to the extent any of these

pretrial decisions are subject to appellate review pursuant to interlocutory appeal or writ of mandamus, § 1407 transfer will also help to minimize the potential for inconsistent decisions from courts of appeals.

It may well be that on further refinement of the issues and close scrutiny by the transferee court, some claims or actions can be remanded in advance of the other actions in the transferee district. Should the transferee court deem remand of any claims or actions appropriate, the transferee court can communicate this to the Panel, and the Panel will accomplish remand with a minimum of delay. *See* Rule 14, R.P.J.P.M.L., 120 F.R.D. 251, 259-61 (1988).[FN8] We add that for those parties urging that resolution of this litigation lies primarily in the setting of firm, credible trial dates, § 1407 transfer may serve as a mechanism enabling the transferee court to develop a nationwide roster of senior district and other judges available to follow actions remanded back to heavily impacted districts, for trials in advance of when such districts' overburdened judges may have otherwise been able to schedule them.

FN8. Those parties who may seek early remand of their actions or claims are reminded of i) Panel Rule 14(d)'s expression of the Panel's reluctance to order remand absent a suggestion of remand from the transferee judge, and ii) the special affidavit requirement of that Rule. 120 F.R.D. at 260. *See also In re Holiday Magic Securities and Antitrust Litigation,* 433 F.Supp. 1125, 1126 (J.P.M.L.1977).

We remain sensitive to the concerns of some parties that § 1407 transfer will be burdensome or inconvenient. We note that since § 1407 transfer is primarily for pretrial, there is usually no need for the parties and witnesses to travel to the transferee district for depositions or otherwise. *See, e.g.,* Fed.R.Civ.P. 45(d)(2). Furthermore, the judicious use of liaison counsel, lead counsel and steering committees will eliminate the need for most counsel ever to travel to the transferee district. *See Manual for Complex Litigation, Second,* § 20.22 (1985).FN9 And it is most logical to assume that prudent counsel will combine their forces and apportion

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

their workload in order to streamline the efforts of the parties and witnesses, their counsel, and the judiciary, thereby effectuating an overall savings of cost and a reduction of inconvenience to all concerned. *See In re Nissan Motor Corporation Antitrust Litigation,* 385 F.Supp. 1253, 1255 (J.P.M.L.1974). Hopefully, combining such practices with a uniform case management approach will, in fact, lead to sizeable reductions in transaction costs (and especially in attorneys' fees).

> FN9. Liaison counsel would be called upon by the Panel to distribute future Panel orders regarding tag-along actions and any other matters to their liaison group as contemplated in Panel Rule 8(e). R.P.J.P.M.L., *supra,* 120 F.R.D. at 255.

In a docket of this size and scope, no district emerges as the clear nexus where centralized pretrial proceedings should be conducted. The Panel has decided to centralize this litigation in the Eastern District of Pennsylvania before Judge Charles R. Weiner. We note that: 1) more asbestos personal injury or wrongful death actions *423 are pending in that district than any other; 2) the court there has extensive experience in complex litigation in general and asbestos litigation in particular; and 3) the court has graciously expressed its willingness to assume the responsibility for this massive undertaking. Furthermore, in the person of Judge Weiner the Panel finds a judge thoroughly familiar with the issues in asbestos litigation, a track record of accomplishment and successful innovation,[FN10] and, on the basis of the pleadings before the Panel in which an opinion was expressed, a selection to which the majority of responding plaintiffs and defendants either expressly agree or are not opposed.

> FN10. The *Asbestos Committee Report, supra,* noted at 15:
> Judge Charles Weiner, the asbestos case manager in the Eastern District of Pennsylvania, is able to call upon over 20 active and senior judges in the district to handle asbestos cases on a priority basis. In addition to mandating standard, abbreviated pleadings, such as complaint, answer, and discovery requests, Judge Weiner meets regularly with counsel and handles on a regular basis all

motions and discovery requests. Applying these sophisticated case management techniques, Judge Weiner and his colleagues have disposed of more than 2,000 cases through 1990.

Another testament to Judge Weiner's techniques comes from the Panel pleading of certain plaintiffs already before him in the Pennsylvania district:

> The Eastern District of Pennsylvania may be unique in another respect, and that again is due to the involvement of the Court. Perhaps no other jurisdiction has had the mutual cooperation of liaison counsel who have been instrumental, together with the Court in attempting to resolve the asbestos problem. The adversary system remains, but the Court has eliminated the usual posturing of the litigants and has encouraged them to come up with programs and solutions. The classic example is the unique program established by counsel with the Court of binding arbitration through stipulated percentage of defendants' liability. The arbitrators are experts in asbestos litigation, and the medical issues are tried by submission on report. The average disposition rate is four cases in one day without judicial time.

Pleading 87, Response of Greitzer and Locks at 15.

Our reference to these passages is not meant to be an endorsement of any pretrial techniques to the exclusion of others, and in no way should be viewed as limiting Judge Weiner in his assessment of the appropriate tools to be used now that all federal personal injury/wrongful death asbestos actions will be before him for pretrial proceedings. We do consider such passages to be helpful, however, in allaying the fears of parties not familiar with Judge Weiner that § 1407 transfer will result in their actions entering some black hole, never to be seen again.

Many parties have suggested that the dynamics of this litigation make it impractical, if not impossible, for one single judge to discharge the responsibilities of transferee judge, while other parties have emphasized that more than a single transferee judge would dilute the judicial control needed to effectively manage the litigation. Varying suggestions have been made that the Panel appoint additional transferee judges to handle specific issues (e.g., class or limited fund determinations, discovery, settlement, claims administration, etc.), to deal

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

with separate types of claims or defendants (e.g., maritime asbestos actions, railroad worker actions, friction materials actions, tire workers actions, etc.), or to divide the litigation along regional or circuit lines (helping to insure uniformity of decisions within each circuit pertaining, *inter alia*, to state law questions involved in the actions). Each of these suggestions has merit, as long as one judge has the opportunity to maintain overall control.

Section 1407(b) contemplates that multidistrict litigation may be conducted by "a judge or judges." It further expressly provides that "upon request of the panel, a circuit judge or a district judge may be designated and assigned temporarily for service in the transferee district by the Chief Justice of the United States or the chief judge of the circuit, as may be required, in accordance with the provisions of chapter 13 of this title." And the Panel has long expressed its willingness to appoint additional transferee judges in litigations whose size and complexity make it difficult for the original transferee judge to handle § 1407 proceedings alone. *See In re Multidistrict Civil Antitrust Actions Involving Antibiotic Drugs,* 320 F.Supp. 586, 588 (J.P.M.L.1970). We emphasize our intention to do everything within our power to provide such assistance in this docket. **424** Before making any specific appointments, however, we deem it advisable to allow the transferee judge to make his own assessment of the needs of this docket and communicate his preferences to us.

The Panel is under no illusion that centralization will, of itself, markedly relieve the critical asbestos situation. It offers no panacea. Only through the combined and determined efforts of the transferee judge and his judicial colleagues, of the many attorneys involved in asbestos matters, and of the parties, can true progress be made toward solving the "asbestos mess." This order does offer a great opportunity to all participants who sincerely wish to resolve these asbestos matters fairly and with as little unnecessary expense as possible.

Finally, in light of the Panel's disposition in this docket, it is necessary to remind parties and counsel of their continuing responsibility with respect to transfer of potential tag-along actions, including those either in

advertently overlooked at the time of the January 17, 1991 filing of the Panel's order to show cause or filed subsequent to the issuance of the Panel's order to show cause. We note that Panel Rule 13(e) provides as follows:

Any party or counsel in actions previously transferred under Section 1407 or under consideration by the Panel for transfer under Section 1407 shall notify the Clerk of the Panel of any potential "tag-along actions" in which that party is also named or in which that counsel appears.

R.P.J.M.L., *supra,* 120 F.R.D. at 259.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on the following Schedule A that are pending as of the date of this order, are not in trial, and are pending outside the Eastern District of Pennsylvania, be, and the same hereby are, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for coordinated or consolidated pretrial proceedings with the actions on Schedule A that remain pending in that district and are not in trial.[FN11]

> FN11. The Panel's authority under § 1407 is to transfer for "pretrial" proceedings; actions on Schedule A that have been resolved or are presently in trial are not intended to be within the scope of the Panel's transfer decision. Given the tremendous number of actions pending in almost every federal district, however, it is not possible for the Panel to know at any one time the current status of all actions on Schedule A. When, pursuant to § 1407(c), the clerks of the transferor district courts receive a certified copy of the MDL-875 transfer order from the clerk of the transferee district court, we request the transferor district clerks to notify the Clerk of the Panel of any actions on Schedule A in their districts that have been resolved or are in trial, so as to permit the Panel to issue a correction order excluding such actions from transfer. We also remind counsel in such actions of the requirements of Panel Rule 10(f):
> With respect to any action that is the subject of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

771 F.Supp. 415
771 F.Supp. 415, 60 USLW 2103
(Cite as: 771 F.Supp. 415)

Panel consideration, counsel shall notify the Clerk of the Panel of any development that would partially or completely moot the matter before the Panel. *Id.* at 257.

IT IS FURTHER ORDERED that Panel Rule 19(a) be, and the same hereby is, suspended for this docket.[FN12]

> FN12. Panel Rule 19(a), *id.* at 263, requires clerks of transferor district courts to forward to the clerk of the transferee district court the complete original file and docket sheet for each

transferred action. Because of the voluminous files in this docket, we are suspending this rule. Instead, we will rely on the judgment of the transferee judge to request from the transferor district clerks or the parties whatever case files and docket sheets he needs.

SUMMARY OF SCHEDULE A
DOCKET NO. 875
IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

| DISTRICT | # OF CASES | DISTRICT | # OF CASES |
|---|---|---|---|
| AK. | 6 | MS., S. | 997 |
| AL., N. | 58 | MT. | 79 |
| AL., S. | 64 | NC., E. | 83 |
| AR., E. | 75 | NC., M. | 27 |
| AR., W. | 18 | NC., W. | 126 |
| AZ. | 112 | ND. | 12 |
| CA., C. | 31 | NE. | 93 |
| CA., E. | 1 | NH. | 61 |
| CA., N. | 3 | NJ. | 147 |
| CA., S. | 4 | NM. | 63 |
| CO. | 4 | NV. | 22 |
| CT. | 345 | NY., E. | 425 |
| DC. | 32 | NY., N. | 589 |
| DE. | 16 | NY., S. | 1441 |
| FL., M. | 220 | NY., W. | 420 |
| FL., N. | 1 | OH., N. | 4022 |
| FL., S. | 135 | OH., S. | 84 |
| GA., M. | 39 | OK., E. | 2 |
| GA., N. | 180 | OK., N. | 538 |
| GA., S. | 673 | OK., W. | 17 |
| HI. | 105 | OR. | 75 |
| IA., N. | 19 | PA., E. | 5703 |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

771 F.Supp. 415
771 F.Supp. 415, 60 USLW 2103
(Cite as: 771 F.Supp. 415)

Page 11

| | | | | |
|---|---|---|---|---|
| IA., S. | 65 | | PA., M. | 244 |
| ID. | 30 | | PA., W. | 264 |
| IL., C. | 166 | | SC. | 266 |
| IL., N. | 459 | | SD. | 2 |
| IL., S. | 37 | | TN., E. | 78 |
| IN., N. | 1 | | TN., M. | 65 |
| IN., S. | 169 | | TN., W. | 29 |
| KS. | 26 | | TX., E. | 1165 |
| KY., E. | 48 | | TX., N. | 34 |
| KY., W. | 64 | | TX., S. | 477 |
| LA., E. | 163 | | TX., W. | 24 |
| LA., M. | 89 | | UT. | 21 |
| LA., W. | 48 | | VA., E. | 618 |
| MA. | 2630 | | VA., W. | 275 |
| MD. | 597 | | VI. | 61 |
| ME. | 39 | | WA., E. | 14 |
| MI., E. | 242 | | WA., W. | 193 |
| MI., W. | 9 | | WI., W. | 22 |
| MN. | 12 | | WV., N. | 23 |
| MO., E. | 69 | | WV., S. | 586 |
| MO., W. | 42 | | WY. | 1 |
| MS., N. | 5 | | | |

**TOTAL DISTRICTS:** 87

**TOTAL TRANSFERS:**
26,639

Jud.Pan.Mult.Lit.,1991.
In re Asbestos Products Liability Litigation (No. VI)
771 F.Supp. 415, 60 USLW 2103

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

170 F.Supp.2d 1348
170 F.Supp.2d 1348
**(Cite as: 170 F.Supp.2d 1348)**

Page 1

**H**

In re Asbestos Products Liability Litigation
Jud.Pan.Mult.Lit.,2001.

Judicial Panel on Multidistrict Litigation.
In re ASBESTOS PRODUCTS LIABILITY LITIG-
ATION (No. VI).
Justin Shane Wooley
v.
International Paper Co., et al.
Sylvia Ann Baden, et al.
v.
BPU Reynolds, Inc., et al.
**No. 875.**
**Nos. C.A. 1:01-237, C.A. 2:01-288.**

Oct. 18, 2001.

Plaintiffs who made claims for punitive damages in
their asbestos litigation sought to vacate the Panel's
orders conditionally transferring their actions for
inclusion in centralized pretrial proceedings. The
Judicial Panel on Multidistrict Litigation, William
Terell Hodges, J., held that transfer was warranted.

Motion granted.

West Headnotes

**[1] Federal Courts 170B ⟷157**

170B Federal Courts
    170BII Venue
        170BII(B) Change of Venue
            170BII(B)5    Multi-District    Litigation;
Transfer for Pre-Trial Proceedings
                170Bk157 k.  Effect of  Transfer and
Subsequent Proceedings. Most Cited Cases
Delaying transfer of multidistrict litigation back to
district court for inclusion in centralized pretrial
proceedings was not warranted, in asbestos
products liability litigation; although plaintiffs as-
serted that transfer should be denied or deferred in
order to permit resolution of pending motions to re-
mand to state court, that process would take three to

four months to complete and if district court wished
to address such motions it had adequate time in
which to do so. 28 U.S.C.A. §1407.

**[2] Federal Courts 170B ⟷157**

170B Federal Courts
    170BII Venue
        170BII(B) Change of Venue
            170BII(B)5    Multi-District    Litigation;
Transfer for Pre-Trial Proceedings
                170Bk157 k.  Effect  of  Transfer and
Subsequent Proceedings. Most Cited Cases
Transfer by Judicial Panel on Multidistrict Litiga-
tion of lawsuits that contained claims for punitive
damages, for inclusion in centralized pretrial pro-
ceedings, was warranted; although plaintiffs asser-
ted that they were being denied their constitutional
right to a jury trial because transferee court differ-
entiated between claims for compensatory damages
and claims for punitive damages choosing to retain
jurisdiction over punitive damage claims for con-
tinuing pretrial effort, such administration was war-
ranted as responsible public policy because it gave
priority to compensatory claims over exemplary
punitive damage windfalls. U.S.C.A. Const.Amend.
7; 28 U.S.C.A. § 1407.

**\*1348** BEFORE: WM. TERRELL HODGES,
Chairman, JOHN F. KEENAN, MOREY L. SEAR,
BRUCE M. SELYA, JULIA SMITH GIBBONS, D.
LOWELL JENSEN and J. FREDERICK MOTZ,
JUDGES of the Panel.

**\*1349 TRANSFER ORDER**

WILLIAM TERELL HODGES, Chairman.

    Before the Panel are motions brought, pursuant
to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36
(2001), by plaintiffs in two Southern District of
Mississippi and Southern District of Texas actions
to vacate the Panel's orders conditionally transfer-
ring the actions to the Eastern District of
Pennsylvania for inclusion in the centralized pretri-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit
B**

170 F.Supp.2d 1348
170 F.Supp.2d 1348
**(Cite as: 170 F.Supp.2d 1348)**

al proceedings occurring there in this docket before Judge Charles R. Weiner.

[1][2] On the basis of the papers filed and hearing session held, the Panel finds that these two actions involve common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the actions to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of the actions is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI),* 771 F.Supp. 415 (Jud.Pan.Mult.Lit.1991). In particular, we note that in the Panel's original decision distinctions based on such matters as the pendency of motions or other matters before the transferor court,[FN1] the uniqueness of a party's status, the type of defendant, the docket condition of any specific federal district, the stage of pretrial proceedings, the presence of unique claims or additional claims not relating to asbestos injury or death, and/or the unanimity of opposition to transfer by the parties to an action, were considered and rejected by the Panel **as grounds** for carving out **exceptions to transfer** in this **extraordinary docket.**

> FN1. Plaintiffs in these actions have argued in essence that transfer should be denied or deferred in order to permit the resolution of pending motions to remand the actions to state court. There is no need to delay transfer in order to accommodate such an interest. We note that: 1) as a practical matter, there is a lag time of at least three or four months from the filing of an action, its identification as a potential tag-

along action, issuance of a conditional transfer order, stay of transfer when a party timely objects to the conditional transfer, briefing on the question of transfer, the Panel hearing session, and the issuance of the Panel's subsequent order; 2) Panel Rule 1.5, R.P.J.P.M.L., 199 F.R.D. at 427, expressly provides that the pendency of a conditional transfer order does not in any way i) suspend orders and pretrial proceedings in the district court in which the action that is the subject of the conditional transfer order is pending, or ii) limit the pretrial jurisdiction of that court; and 3) accordingly, those courts wishing to address such motions have adequate time in which to do so, those courts concluding that such issues should be addressed by the transferee judge need not rule on them, and the process of 1407 transfer in MDL-875 can continue without any unnecessary interruption or delay.

We are not persuaded to depart from this approach in dealing with the question of transfer of the actions now before the Panel. Plaintiffs in the Southern District of Texas action have suggested that transfer should be denied because the way in which MDL-875 is being administered effectively denies them their constitutional right to a jury trial. We reject this argument. Although the number of Section 1407 remands in this docket is proportionately small, this is only because under Judge Weiner's stewardship the vast majority of transferred actions have been able to be concluded in the transferee district *1350 during the course of pretrial proceedings (as of October 9, 2001, nearly 70,000 such actions have been closed in the transferee district). The fact remains that whenever the transferee judge has deemed remand of any claims or actions appropriate, procedures have been utilized to accomplish Section 1407 remand for trial with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L., 199 F.R.D. at 436-38. Accordingly, as of October 9, 2001, over 1,100 actions or claims therein have

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

170 F.Supp.2d 1348
170 F.Supp.2d 1348
**(Cite as: 170 F.Supp.2d 1348)**

Page 3

been returned to their originating transferor districts. The transferee court, when suggesting remand of claims, has differentiated between claims for compensatory damages and claims for punitive damages, choosing to retain jurisdiction over punitive damage claims for continuing pretrial effort. The Panel has deferred to this suggested approach, recognizing that the recommendations of the transferee judge regarding the timing of remand should be given great weight, because that judge, after all, is the one who supervises day-to-day pretrial proceedings. When challenged by MDL-875 parties, the appellate court with authority over Panel transfers and remands in this docket has endorsed the Panel's treatment of remand of punitive damage claims:

The resources available to persons injured by asbestos are steadily being depleted. The continuing filings of bankruptcy by asbestos defendants disclose that the process is accelerating. It is responsible public policy to give priority to compensatory claims over exemplary punitive damage windfalls; this prudent conservation more than vindicates the Panel's decision to withhold punitive damage claims on remand. It is discouraging that while the Panel and transferee court follow this enlightened practice, some state courts allow punitive damages in asbestos cases. The continued hemorrhaging of available funds deprives current and future victims of rightful compensation.

*In re Collins,* 233 F.3d 809, 812 (3rd Cir.2000), *cert. denied,*532 U.S. 1066, 121 S.Ct. 2216, 150 L.Ed.2d 209 (2001). Finally, with respect to any parties that believe the uniqueness of their particular situation renders inclusion of their action in MDL-875 unnecessary or inadvisable, we are confident that Judge Weiner will continue to promptly review arguments for returning transferred actions or claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever he is convinced that retention in the MDL-875 proceedings is no longer needed.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, these two actions are transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

Jud.Pan.Mult.Lit.,2001.
In re Asbestos Products Liability Litigation
170 F.Supp.2d 1348

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

**IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (No. VI)**                                                       MDL No. 875

## TRANSFER ORDER

**Before the entire Panel**[*]: Plaintiffs in five actions listed on Schedule A and pending in the District of Connecticut, Eastern District of Louisiana, District of Maryland, Southern District of New York, and Western District of Washington, respectively, have moved, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), to vacate our orders conditionally transferring the actions to the Eastern District of Pennsylvania for inclusion in MDL No. 875. Responding defendants[1] oppose the motions to vacate.

After considering all argument of counsel, we find that these actions involve common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of these actions to the Eastern District of Pennsylvania for inclusion in MDL No. 875 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We further find that transfer of these actions is appropriate for reasons that we set out in our original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI)*, 771 F.Supp. 415 (J.P.M.L. 1991). Particularly, in our original decision distinctions based on such matters as the pendency of motions or other matters before the transferor court, the uniqueness of a party's status, the type of defendant, the docket condition of any specific federal district, the stage of pretrial proceedings, the presence of unique claims or additional claims not relating to asbestos injury or death, and/or the unanimity of opposition to transfer by the parties to an action, were considered and rejected by us as grounds for carving out exceptions to transfer in this extraordinary docket. We are not persuaded to depart from this approach in dealing with the question of transfer of the present actions.

---

[*]      Judge Heyburn took no part in the disposition of this matter. Judge Motz took no part in the disposition of this matter with respect to the District of Connecticut *Machnik* and District of Maryland *Shifflett* actions.

[1]      General Electric Co. and Viad Corp. (in the District of Connecticut action); Certainteed Corp. (in the Eastern District of Louisiana action); CBS Corp. and Federated Development, L.L.C. (in the District of Maryland action); Baxter Healthcare Corp., Fisher Scientific International Inc., VWR International, Inc., and Univar USA Inc. (in the Southern District of New York action); and AstenJohnson, Inc., and Scapa Dryer Fabrics, Inc. (in the Western District of Washington action).

<div style="border:2px solid black; float:right;">

**Exhibit
C**

</div>

- 2 -

Under the stewardship of the transferee court, as of February 1, 2008, (1) over 76,400 actions have been closed in the transferee district, and (2) over 1,370 actions or claims therein have been returned to their originating transferor districts.  To any parties that believe the uniqueness of their particular situation renders continued inclusion of their action in MDL No. 875 unnecessary or inadvisable, whenever the transferee court deems remand of any claims or actions appropriate, procedures are available whereby this may be accomplished with a minimum of delay.  *See* Rule 7.6, R.P.J.P.M.L., 199 F.R.D. at 436-38.  We are confident that the transferee court will continue to promptly review arguments for returning transferred actions or claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever it is convinced that retention in the MDL No. 875 proceedings is no longer needed.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, these five actions are transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable James T. Giles for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

PANEL ON MULTIDISTRICT LITIGATION

D. Lowell Jensen
Acting Chairman

| | |
|---|---|
| John G. Heyburn II, Chairman[*] | J. Frederick Motz[*] |
| Robert L. Miller, Jr. | Kathryn H. Vratil |
| David R. Hansen | Anthony J. Scirica |

**IN RE: ASBESTOS PRODUCTS LIABILITY**
**LITIGATION (No. VI)**                                    MDL No. 875

## SCHEDULE A

District of Connecticut

Elizabeth Machnik, etc. v. Buffalo Pumps, Inc., et al., C.A. No. 3:07-357

Eastern District of Louisiana

Fernando Agusto Silva v. CertainTeed Corp., et al., C.A. No. 2:07-6259

District of Maryland

Lewis Shifflett, et al. v. AC&R Insulation Co., Inc., et al., C.A. No. 1:07-2397

Southern District of New York

Christian Holinka v. Baxter Healthcare Corp., et al., C.A. No. 1:07-8019

Western District of Washington

Henry Barabin, et al. v. Albany International Corp., et al., C.A. No. 2:07-1454

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 539589 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

Page 1

**H**

In re Asbestos Products Liability Litigation (No. VI)
E.D.Pa.,1996.
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
In re ASBESTOS PRODUCTS LIABILITY LITIG-
ATION (NO. VI).
This Document Relates To Plaintiffs' Motion For
Suggestion Of Remand Of All MDL Cases filed by
the Law Firm of Robles & Gonzalez, P.A. (the mo-
tion relates to approximately 2,700 cases filed in 47
jurisdictions by the law firm of Robles & Gonzalez,
P.A.)
**Civ. A. No. MDL 875.**

Sept. 16, 1996.

Francis E. McGovern, Tuscaloosa, AL, Special
Master.
Stephen B. Burbank, Philadelphia, Special Master.
A. Wendel Stout, III, Deutsch, Kerrigan & Stiles,
New Orleans, LA, Karl M. Koons, III, Locke,
Reynolds, Boyd & Weisell, Indianapolis, IN, for
movant Center for Claims Resolution.

*MEMORANDUM OPINION AND ORDER*

WEINER, District Judge.
  *1 On June 28, 1996, Plaintiffs' counsel,
Robles & Gonzalez, P.A., of Miami, Florida, filed
Plaintiff's Motion For Suggestion Of Remand Of
All MDL 875 Cases [FN1]. At the same time, a sim-
ilar motion for remand was filed with the Judicial
Panel For Multidistrict Litigation. On July 10,
1996, this Court issued a Show Cause Order relat-
ing to the motion for suggestion of remand and
scheduling a hearing on the matter for August 22,
1996 following briefing. The motion before the Ju-
dicial Panel is scheduled for hearing on September
20, 1996. This Court's hearing was held on August
22 and attended by Juan Bauta, Esq., for the
plaintiffs from the law firm of Robles & Gonzalez,
P.A., and by several defense counsel. The Court has

also received and reviewed numerous briefs.

  FN1. The title of the motion was confusing
  in that plaintiff was referred to in the sin-
  gular, yet it purported to address *ALL* of
  the MDL 875 cases. Further reading of the
  motion reveals that the request is by the
  law firm of Robles & Gonzalez, P.A., and
  seeks a suggestion of remand as to only
  those cases filed in federal court by the
  Robles firm and transferred to MDL 875.
  The attachments provided indicate approx-
  imately 2700 cases in 47 district venues.

BACKGROUND

  On July 29, 1991, the Judicial Panel For Mul-
tidistrict Litigation issued an order transferring all
pending asbestos-related, personal injury lawsuits
to the Eastern District of Pennsylvania for pre-trial
management by this Court. This promulgating order
for MDL 875 further provided a mechanism for the
transfer of future tag-along cases. As of this date,
approximately 62,000 cases had been assigned to
MDL 875 and, approximately 40,000 cases had
been closed [FN2]. The remaining 22,000 include
thousands of claims which are resolved but not yet
dismissed and removed statistically [FN3]. This
Court instituted procedures shortly after the MDL
assignment which created methods and procedures
which led to block settlements. Plaintiff and de-
fendant steering committees were appointed, test
areas were sampled and the sealed data was ex-
amined by experts chosen by the attorneys. There-
after, the parties, by utilizing the same methods, de-
veloped a model which resolved the cases in the
New England area. This became the vehicle that
was used by all the parties. For the most part, the
attorneys were able to achieve settlement of present
cases which incorporated a method for handling fu-
ture cases as claims. The defendants would waive
the statute of limitations and plaintiffs would pro-
cess the cases by providing medical and exposure
data. This settlement process is now in use in every

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit
D**

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 539589 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

jurisdiction across the country and almost every plaintiffs attorney has an agreement with one or more of the defendants.

> FN2. Assignment to MDL 875 includes ED of PA cases which do not need to be transferred. Closure includes approximately 750 cases returned for trial or completion of settlement procedures. As a practical matter, these actions are seldom returned until all but one or two defendants remain, and then, they routinely settle in total without trial. Of the very few trials which have actually occurred following transfer, a number have resulted in defense verdicts.

> FN3. Many of the plaintiffs' counsel, and certainly most of the defendants, are engaged in thousands of cases. When settlement occurs, medical and exposure details may still need to be provided, releases must be signed, and frequently, the payout period may extend for several years. The last matter tended to by counsel is usually the submission of a dismissal order. As a result, the Court often finds that cases which remain on the dockets with seemingly large numbers of remaining defendants are either settled completely or have only one or two actual claims remaining.

During the early months of the MDL process, this Court outlined to all of the parties that the Court would continue to focus on certain priorities. These priorities have guided much of the Court's activity. Because transaction costs have been so high in this litigation, the Court desired to reduce these costs, allowing more funds to be available for payment to those who were sick or injured. Without staying discovery, the Court has caused the parties to substantially reduce costly discovery expenses by avoiding repetitive proceedings. By encouraging case settlement in the manner of a claim, expensive fees and additional costs have also been avoided or curtailed. The Court's concern over the continued

viability of the defendants, particularly with an unknown quantity of future injuries brought about due to the latency of asbestos-related diseases. The loss of any defendant to bankruptcy [FN4] shifts a greater burden to the remaining defendants. One defendant sought bankruptcy protection shortly after this Court received jurisdiction but there have been none since because the parties now process their claims through a time and cash flow schedule. Finally, the Court has prioritized malignancies and other serious disease cases. Only a very small percentage of the cases filed have serious asbestos-related afflictions, but they are prone to be lost in the shuffle with pleural and other non-malignancy cases. At the request of plaintiffs' steering committee, the Court implemented a procedure to move the serious cases forward. Because of this, there are now very few remaining malignancy actions.

> FN4. Approximately 15 defendants have previously filed for protection under the Bankruptcy Code, Manville Corp. being the most notable. Several of these companies had been major players in the litigation, such as Celotex, Eagle-Picher, Forty-Eight Insulation, UNR, Raymark, H.K. Porter and National Gypsum. Some of these companies have provided some funds for payment of continuing claims, but rarely does it approach even a small percentage of their former share in the litigation. The Court has been in touch with the bankruptcy courts in regard to their progress.

**\*2** This Court's processing of MDL 875 has resulted in the removal of 7-8,000 cases per year from the federal court dockets, while at the same time, these courts have been freed of the morass caused by the mass of asbestos case filings and able to transact other important court business. For the first time, the case resolution numbers are exceeding new filings. Additionally, the Court has been able to encourage, as well as participate in cooperation with the state courts, the parties to settle state cases as part of their settlement packaging in the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                  Page 3
Not Reported in F.Supp., 1996 WL 539589 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

federal court. This has had a positive impact upon the state court calendars as well.

## PRESENT ACTION

Plaintiffs' counsel filed the present motion setting forth their desire to have approximately 2,700 cases remanded to 47 federal districts. In their motion, plaintiffs state that they have had "no movement whatsoever" for over three and one half years, and that, in light of the order issued on May 10, 1996, by the Third Circuit Court of Appeals in *Georgine v. Amchem Products, Inc.,* (3rd Cir.1996) (full cite omitted) [FN5], the cases should be remanded at this time. Counsel further indicates that he does not anticipate settlement under the MDL process and *all* of his negotiations are at an impasse [FN6].

> FN5. The *Georgine* case, filed before this Court in 1993 (USDC, ED-PA, C.A. No. 93-00215), involved a settlement class action between two of the larger plaintiffs' asbestos law firms and the Center for Claims Resolution, a settlement consortium of twenty of the asbestos defendants. The plaintiff achieved settlement of their present inventory of cases through the class settlement and had negotiated an agreement to handle future claims in behalf of the class as claims, utilizing exposure and medical criteria. While the Third Circuit rejected this as a class action, the Sixth Circuit was affirming a similar action involving Fibreboard, Inc. as the defendant in the case of *Ahearn v. Fibreboard, Corp.*

> FN6. Plaintiffs' motion was accompanied by an affidavit executed by Louis S. Robles, Esq. setting forth many of these statements. A similar affidavit executed by Stuart D. Fried, Esq. was attached to the motion before the Panel. Oddly enough, neither Mr. Robles or Mr. Fried appeared

before this Court for the hearing on the motion, nor did they request a continuance.

This Court is familiar with the undertakings of the Court and with counsel who have appeared before it. Early in this process, plaintiffs' counsel (Mr. Robles) did have an opportunity to seek this Court's assistance in a settlement with Owens Corning (one of the major defendants). Since that successful intervention by the Court, there have been few contacts made by plaintiffs' firm to the Court. Nonetheless, the Court has continued to encourage several of the defendants to work out settlements with the Robles & Gonzalez firm. In many instances, this has led to successful negotiations.

At the hearing, Mr. Bauta stated that his firm has in fact settled with some of the non-major defendants and that they have a long-term relationship with these settling parties. The Court is aware that a continuum of settlement orders have been filed in the Robles & Gonzalez cases whereby settlement has been achieved with defendants Foster Wheeler, Babcock & Wilcox, U.S. Mineral, Garlock, Crown Cork & Seal, Flintkote and Combustion Engineering.

Plaintiffs have settled with many of the defendants in the litigation considered to be majors [FN7] as well. The Court is unsure of the numbers, but knows that many settlements have passed through with Fibreboard as the settling party.

> FN7. The major defendants are generally those which pay higher dollars in a vast multitude of jurisdictions and cases. They include Center for Claims Resolution, Owens Corning, Owens-Illinois, Pittsburgh Corning and Fibreboard Corporation. Johns-Manville Corporation was the first of the majors, but bankruptcy has substantially lessened its role in the litigation.

Mr. Bauta also provided that his firm has settled more than 2,100 cases with Center for Claims Resolution which is a major defendant in

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                      Page 4
Not Reported in F.Supp., 1996 WL 539589 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

the litigation representing a group of twenty manu-
facturers and suppliers. Although Mr. Bauta repres-
ented that his firm had only settled 496 cases with
Owens-Illinois, counsel for Owens-Illinois submit-
ted that their company had resolved 2,849 state and
federal cases, of which more than 1,460 were feder-
al actions in the MDL. Owens-Illinois' counsel fur-
ther pointed out that more than 65% of these cases
were dismissed without prejudice as to Owens-
Illinois because they were pleural only [FN8]. Coun-
sel for Owens-Illinois further advised the Court
that, but for the MDL, these settlements would not
have occurred.

> FN8. Pleural disease is most often an
> asymptomatic scarring of the pleura-a tis-
> sue thin membrane surrounding the lung.
> Many states, including Pennsylvania, do
> not allow for a cause of action based upon
> this condition alone if it is asymptomatic.
> It can only be discovered through x-ray
> and, in and of itself, does not pose a health
> risk or impairment.

**\*3** Upon reviewing the motion and affidavits of
plaintiffs' counsel, and after hearing the testimony
and arguments presented to the Court, this Court is
of the belief that the actual facts fail to give much
support to the position of the plaintiffs. In fact,
plaintiffs have made great strides toward settlement
of their cases, including their non-serious claims,
and this has been as a result of the efforts of the
MDL. It is interesting to note that few plaintiffs'
counsel have joined in this motion. All counsel who
have cooperated with each other and have diligently
pursued their cases and claims, and have sought the
aid of the Court, have achieved a successful conclu-
sion for their clients. We commend all counsel who
have been cooperative with each other and the
Court, and we urge others to continue to follow this
same path so that we can continue to resolve the re-
maining cases without additional and needless ex-
penditure of either time or money.

*ORDER*

For the reasons set forth in this Court's Memor-
andum Opinion this date, Plaintiff's Motion For
Suggestion Of Remand Of All MDL 875 Cases
filed by the law firm of Robles & Gonzalez, P.A.,
on June 28, 1996, IS DENIED.

E.D.Pa.,1996.
In re Asbestos Products Liability Litigation (No. VI)
Not Reported in F.Supp., 1996 WL 539589 (E.D.Pa.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | : | **MULTIDISTRICT LITIGATION** |
| LIABILITY LITIGATION | : | **NO. MDL 875** |

## ADMINISTRATIVE ORDER NO. 11

Whereas Asbestos Products Liability Litigation (MDL 875) has been an active, ongoing multidistrict action since July 29, 1991, and

Whereas the undersigned transferee judge has analyzed the existing Court case management procedures as they relate to MDL 875, and is of the view that adjustments of these procedures need to be made to allow a more efficient discharge of the transferee court's responsibilities, it is hereby

**ORDERED** that the following modifications to the existing procedures for the processing of cases, dockets, pleadings and orders in MDL 875 cases are adopted:

1. *Calendar Management.*

Effective immediately, and except as otherwise set forth herein, the management of the case files and dockets for all pending MDL 875 cases (and, the files and dockets for all future MDL 875 cases filed after the entry of this Administrative Order) shall be transferred to the Transferee Court in accordance with both the schedule compiled by the Clerk of the Transferee Court and the following terms:

A.    **Actions to be taken by the Clerks of the Transferor Courts.**

   I.    The Clerks of the Transferor Courts shall retain all case files for those actions in which all claims have been completely resolved between all parties, including bankrupt defendants, whether by dismissal, stipulation or attrition. Unless otherwise directed, case files and dockets of cases previously remanded to the Transferor Courts by the Judicial Panel on Multidistrict Litigation shall also be retained by the Transferee Court. In addition, the Clerks of the Transferor Courts shall retain all case files and dockets for those actions transferred to a state court or a federal district court registry which has been previously specifically established for the placement and tracking of asbestos personal injury cases which do not currently meet specified criteria for advancement to trial.

   II.    The remaining cases having unresolved claims against bankrupt defendants and non-bankrupt defendants shall be transferred to the Transferee Court in the following manner:

      a.    In the interests of administrative efficiency and uniformity, upon the entry of an Order of Transfer by the undersigned

<div style="border:1px solid black; text-align:center;">

**Exhibit
E**

</div>

judge, a list of all cases to be transferred shall be sent by the Clerk of the Transferee Court to the Clerk of the Transferor Court.  The Clerk of the Transferee Court shall retrieve a copy of each docket sheet from the CM/ECF system from the Clerk of the Transferor Court for the transferred cases, and shall initiate a new file in the Transferee Court.  The Clerk of the Transferor Court shall mark the Transferor Court's file "CLOSED."

b.    In the event the Transferor Court does not maintain its MDL 875 cases under the CM/ECF system, a paper copy of each docket sheet for the cases to be transferred shall be forwarded to the Clerk of the Transferee Court.

c.    New pleadings, documents and other papers received for filing after the case has been transferred shall be forwarded to the Clerk of the Transferee Court, and the Clerk of the Transferor Court shall notify all counsel concerned, as well as all _pro se_ parties, that all future pleadings are to be filed with the Clerk of the Transferee Court, in accordance with the conditions set forth in Section 1.B.II of this Administrative Order, by giving notice of this Order to counsel and to any _pro se_ party.

III.    Documents in any asbestos personal injury lawsuit involving MDL 875 filed in any one Transferor Court shall not be filed in the Transferee Court until a Transfer Order has been entered in the Transferee Court that states that documents in that specific Transferor Court shall be filed in the Transferee Court.

IV.    Any document in any asbestos personal injury lawsuit involving MDL 875, over which the Transferor Court, and not the Transferee Court, has jurisdiction and venue, shall not be filed in the Transferee Court until a Transfer Order has been entered in the Transferee Court that states that documents in that specific Transferor Court shall be filed in the Transferee Court.

B.    **Actions to be taken by the Clerk of the Transferee Court.**

I.    The Clerk of the Transferee Court shall maintain dockets and create case files in all actions transferred from the Transferor Courts as soon as they are received.

II.    All documents submitted to the Clerk of the Transferee Court shall be treated in all respects in accordance with the Transferee Court's Local Rules of Civil Procedure 5.1.2; 5.1.3; and, 5.1.4.  All attorneys who file documents pursuant to the Transferee Court's Local Rule of Civil Procedure 5.1.4 shall apply for a signature code by completing and filing with the Clerk of the Transferee Court a

Validation of Signature Form, a copy of which is attached hereto. Such an attorney's signature code shall be entered on the signature line of the courtesy copy of the document for the purpose of signature validation pursuant to Federal Rule of Civil Procedure 11.

III.  The Clerk of the Transferee Court shall compile a schedule of all MDL 875 cases in order to allow for the more efficient transfer of MDL 875 cases from the Transferor Court to the Transferee Court.

IV.  The Clerk of the Transferee Court shall submit to the undersigned transferee judge a quarterly pending caseload status report specific to the Transferee Court and each Transferor District Court.

2.  *Motions.*

All Motions pending in MDL 875 which are neither granted nor denied as of the date of transfer of a case from the Clerk of the Transferor Court to the Clerk of the Transferee Court shall be deemed denied *without prejudice* and with all time requirements held in abeyance from the initial date of filing. Counsel may refile any unresolved motions for further transferee court action. Motions brought in accordance with the procedures contained in Administrative Order #3 shall be preceded by a telephone conference with the Court. Disputing counsel shall attempt to resolve issues between the parties without Court assistance, and failing resolution, through a telephone conference with the Court prior to the filing of any disputed motion.

3.  *Exclusions.*

The dockets and files for cases filed in the United States District Court for the Northern District of Ohio under the designation "MARDOC-MDL875(2)" shall not be transferred at this time under the terms of this order.

4.  *Conflicts.*

To the extent that any conflicts exist, this Administrative Order shall take precedence over and supercede all previous administrative orders in this Multidistrict Litigation consolidation.

**BY THE COURT:**

8/15/06
**DATE**

/s/ James T. Giles
**JAMES T. GILES, J.**

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS
LIABILITY LITIGATION (NO. VI)          :

Civil Action No. MDL 875

This Document Relates To:
   **ALL ACTIONS**

_____ x

## ADMINISTRATIVE ORDER  NO 12

THE COURT, after examination of current procedures in place in this matter, and with a desire to facilitate the expeditious movement of pending cases on the MDL docket, and having had the benefit of input from the court-appointed plaintiff and defendant steering committees, hereby imposes the following filing requirements and procedures:

### 1.     SUBMISSION OF IDENTIFICATION INFORMATION

All plaintiffs shall submit to the Court a report identifying each plaintiff by full name, date of birth, last four digits of plaintiffs SSN, and a statement indicating the status of the plaintiff in the case before this Court; ie., asbestos-related injury victim, spouse of injured party, administrator of injured party of deceased injured party, executor(trix), child of injured party, etc.

### 2.     SUBMISSION OF RELATED COURT ACTIONS

Each plaintiff shall identify each and every prior or pending court or administrative action brought with the intent of satisfjing in whole or in part the damages sustained by the plaintiffs alleged asbestos-related personal injury.  In each such instance the plaintiff shall identify the claim, the parties involved and the results of any action thereon.

### 3.     SUBMISSION OF STATEMENT OF CASE STATUS

The plaintiff in each case shall identify all of the named defendants in the following manner:

a) Each defendant with whom the plaintiff has achieved resolution of his/her claim, whether by settlement or agreement to dismiss without payment or by payment of a claim through the bankruptcy court, shall be identified and, where a dismissal has not yet been entered of record, a proposed order shall be submitted.

b) Each defendant that the plaintiff now desires to dismiss from the action, with or without prejudice, the reason for the dismissal, and a proposed order.

c) Each remaining defendant that is currently in bankruptcy with a claim pending, together with an order for the transfer of the claim to an inactive docket which the court has created for the holding of such claims.

d) Each non-bankrupt unsettled defendant.

## 4.   SUBMISSION OF MEDICAL REPORTS

Each plaintiff asserting a claim based upon an alleged asbestos-related malignancy shall submit to the court a copy of the medical diagnosing report or opinion upon which the plaintiff now relies for the prosecution of the claim as if to withstand a dispositive motion.

Each plaintiff asserting a claim based upon an alleged non-malignant injury or condition shall submit to the court a copy of the medical diagnosing report or opinion upon which the plaintiff now relies for the prosecution of the claim as if to withstand a dispositive motion.

Each report or opinion submitted hereunder shall be based upon objective and subjective data which shall be identified and descriptively set out within the report or opinion.

## 5.   ALTERNATIVE PLAINTIFF SUBMISSION

Alternative submissions to the court are acceptable under the following circumstances:

a) If the plaintiff has remaining claims only against bankrupt parties and is desirous of seeking payment on those claims through the bankruptcy action, then, as an alternative to the required submissions under sections 2. and 4. above, the plaintiff may submit a proposed order for the transfer of this case to the "Bankrupts Only" docket in the form attached.

b) If the plaintiff has viable claims remaining against both bankrupt and non-bankrupt parties and wishes to pursue through the bankruptcy action only those claims remaining against the bankrupt parties, then, as an alternative to the required submissions under sections 2. and 4. above, the plaintiff may submit a proposed order for the dismissal of the non-bankrupt parties with prejudice and the transfer of the remaining claims against the bankrupt parties to the "Bankrupts Only" docket in the form attached.

c) The plaintiff may at any time submit to the court a proposed order to dismiss his/her case against all parties with prejudice. Plaintiff may also request a dismissal against any or all parties without prejudice; however, notice must be given to all parties, any of whom may file an objection within thirty (30) days thereafter. The court will hold a hearing if deemed necessary.

6.   **TIMING REQUIREMENTS**

Plaintiffs shall submit required documentation and proposed orders to the court in accordance with the schedule set forth:

a) Plaintiffs whose cases were filed during the years 2007, 2006, and before July 29, 1991 shall file with the court their required papers on or before August 1, 2007.

b) Plaintiffs whose cases were filed between July 29, 1991 and December 31, 1995 shall file with the court their required papers on or before September 1, 2007.

c) Plaintiffs whose cases were filed in 1996, 1997 and 1998, shall file with the court their required papers on or before October 1, 2007.

d) Plaintiffs whose cases were filed in 1999, 2000, 2001 and 2002, shall file with the court their required papers on or before November 1, 2007.

e) Plaintiffs whose cases were filed in 2003, 2004, and 2005 shall file with the court their required papers on or before December 1, 2007.

The court may dismiss pursuant to F.R.C.P. 41(b) the cases of any plaintiffs who fail to comply with the requirements set forth.

7.   **SCREENED CASES**

Current litigation efforts in this court and in the silica litigation have revealed that many mass screenings lack reliability and accountability and have been conducted in a manner which failed to adhere to certain necessary medical standards and regulations. The result is that mass screenings create an inherent suspicion as to their reliability. Where screenings have been conducted by the Sheet Metal Occupational Health Institute Trust and other organizations utilizing standards and protocols established by the American Thoracic Society (ATS), the Association of Occupational and Environmental Clinics (AOEC), and other accredited health organizations, there is a larger probability of adequacy for the reliablity foundation necessary for admissibility. This court will therefore entertain motions and conduct such hearings as may be necessary to resolve questions of evidentiary sufficiency in non-malignant cases supported only by the results of mass screenings which allegedly fail to comport with acceptable screening standards.

8.   **EXCLUSIONS**

The cases designated as 2MDL 875 (MARDOC) shall be excluded from the requirements set forth and those actions shall continue to be governed by the requirements of previous orders of this court concerning the management of the MARDOC cases.

9.   **SETTLEMENT CONFERENCES/SUGGESTIONS OF REMAND**

The court intends upon stepping up the pace of settlement conferences and will accordingly issue orders to that effect. Counsel are expected to comply with all requirements of the notice and to be prepared at the conference. All parties shall submit to the court at the time of the first settlement conference in any case a **short** position paper stating their position relative to disease, exposure and damages. Mitigating factors for the purposes of settlement shall also be set forth.

If the parties have failed to achieve settlement following one or more settlement conferences and working with the court, the case may be referred to mediation or, if the court finds that the parties have negotiated in good faith without success, the court may suggest the case for remand. A determination of good faith may not be necessary with regard to all defendants. The court will continue to prioritize malignant and exigent cases.

10.  **MANNER OF SUBMISSIONS**

All submissions to be made to the court pursuant to this order shall be paper filings with copies provided to all remaining viable parties in accordance with Rule 5, F.R.C.P.

IT IS SO ORDERED

Date: 5/31/07

BY THE COURT

_James T. Giles_, J.

James T. Giles