MDL 875●

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 2 6 2008

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (No. VI) | ) ) ) ) | MDL DOCKET NO. 875 |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| TODD KORTEKAMP, et al. Plaintiffs, v. 3M CO., et al., Defendants. | ) ) ) ) ) ) ) ) | CASE NO. 1: RI  08-43 |

**PLAINTIFFS' MOTION TO VACATE
THE CONDITIONAL TRANSFER ORDER**

Plaintiffs, pursuant to Rules 5, 7 and 12 of the Rules of Procedure of the Judicial Panel

on Multidistrict Litigation, request that the Panel VACATE the Conditional Transfer Order,

without prejudice, or in the alternative, STAY the transfer of this case to MDL 875 pending

decision by the United States District Court for the District of Rhode Island on Plaintiffs' Motion

to Remand.  The grounds for this Motion are set forth in the accompanying Memorandum in

Support of Plaintiffs' Motion to Vacate the Conditional Transfer Order, and are incorporated

herein.

1.      Plaintiffs brought this suit in state court, asserting solely state law grounds.  One

defendant removed the case, asserting that federal question jurisdiction.  No federal question is

raised and no federal issue must be decided to establish Defendants' liability under the causes of

PLEADING NO. 5386

OFFICIAL FILE COPY
IMAGED MAR 2 6 2008

action set forth in the Plaintiffs' Complaint.

2.      Plaintiffs have a timely filed Motion to Remand pending in the District of Rhode Island raising numerous procedural and jurisdictional bars to federal jurisdiction in this case.

3.      On March 14, 2008, the Honorable Judge William E. Smith, of the Federal District Court for the District of Rhode Island, held a hearing to determine whether he would have a hearing on Plaintiffs' Motion to Remand to State Court.  The Judge stated that he would issue a ruling in the near future.

4.      The jurisdictional issues to be determined by the Court in Plaintiffs' Motion to Remand are discrete to this particular case.  Furthermore, the glaring deficiencies in GE's case for removal make apparent that there are many case-specific issues of fact and law that should be decided in the District of Rhode Island rather than in the consolidated docket of the MDL.

5.      In practice, MDL-875 does not consider jurisdictional motions before requiring plaintiffs to undergo the procedures of that Court.  As a result, transfer to MDL-875 prior to determination of jurisdiction by the Court will result in Plaintiffs being forced to proceed through the maze of that Court, only to eventually have the case remanded to the transferor court for determination of whether federal jurisdiction exists.  That result is unjust, contrary to the interests of judicial economy, and totally avoidable.

6.      The *reality* of MDL-875 does not match the *assumptions* of the Panel in previous decisions accepting the possibility of non-ruling by the transferor court on jurisdictional matters prior to transfer to MDL-875.  The *reality* of MDL-875 as it has evolved results in severe Constitutional and factual prejudice to persons like the Plaintiffs when the transferor court does not rule on jurisdictional motions prior to transfer to MDL-875.

2

7.    Accordingly, Plaintiffs respectfully request the Panel to change its policy of transferring cases before outstanding jurisdictional motions have been ruled upon by the transferor court.

**WHEREFORE**, Plaintiffs request that the Panel VACATE the conditional transfer order, without prejudice, or in the alternative, STAY the transfer of this case to MDL 875 pending decision by the United States District Court for the District of Rhode Island on Plaintiffs' Motion to Remand.

Respectfully Submitted,
The Plaintiffs,

By: _____

John E. Deaton, Esq. (#6537)
jdeaton@deatonlawfirm.com
The Deaton Law Firm
One Richmond Square, Suite 163W
Providence, Rhode Island 02906
(401) 351-6400   Tel.
(401) 351-6401   Fax

## CERTIFICATION OF SERVICE

I hereby certify that on this 25th day of March 2008, a copy of the foregoing was: filed with the Clerk of the Panel via Federal Express; sent to the attached Panel Service List via first class mail; filed with the Federal Court's CM/ECF system; and sent electronically to the state court defendants via Rhode Island Asbestos Litigation Electronic Filing Service provided by LexisNexis.

_____

John E. Deaton

3

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 26 2008

FILED
CLERK'S OFFICE

# IN RE: ASBESTOS PRODUCTS LIABILITY
# LITIGATION (NO. VI)

MDL NO. 875

## PANEL SERVICE LIST (Excerpted from CTO-303)

Todd Kortekamp, et al. v. 3M Co., et al., D. Rhode Island, C.A. No. 1:08-43

Richard C. Binzley
THOMPSON HINE LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Jeffrey S. Brenner
NIXON PEABODY LAW FIRM
One Citizens Plaza
Providence, RI 02903

Edward J. Cass
GALLAGHER SHARP FULTON
& NORMAN
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC 20001

David A. Damico
BURNS WHITE & HICKTON LLC
Four Northshore Center
106 Isabella Street
Pittsburgh, PA 15212

John E. Deaton
DEATON LAW FIRM LLC
One Richmond Square
Suite 163W
Providence, RI 02906

Raymond P. Forceno
FORCENO GOGGIN & KELLER
1528 Walnut Street, Suite 900
Philadelphia, PA 19102

Ellen B. Furman
GOLDFEIN & HOSMER
1600 Market Street, 33rd Floor
Philadelphia, PA 19103

Susan M. Hansen
BROWNSON & BALLOU
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

Reginald S. Kramer
OLDHAM & DOWLING
195 South Main Street
Suite 300
Akron, OH 44308-1314

David C. Landin
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
LOCKS LAW FIRM LLC
1500 Walnut Street
Philadelphia, PA 19102

Ronald L. Motley
MOTLEY RICE LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

John J. Repcheck
MARKS O'NEILL O'BRIEN
& COURTNEY PC
Gulf Tower, Suite 2600
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
ROVEN-KAPLAN LLP
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
VORYS SATER SEYMOUR
& PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008

Neil Selman
SELMAN BREITMAN & BURGESS
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
KELLEY JASONS MCGUIRE
& SPINELLI LLP
Centre Square West
15th Floor
Philadelphia, PA 19102

Robert E. Swickle
JAQUES ADMIRALTY LAW FIRM
1370 Penobscot Building
645 Griswold Street
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226-4192

Jeffrey M. Thomen
MCCARTER & ENGLISH LLP
185 Asylum Street
City Place I
Hartford, CT 06103-3495

Andrew J. Trevelise
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

James K. Weston II
TOM RILEY LAW FIRM
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

MAR 26 2008

FILED
CLERK'S OFFICE

|  |  |  |
|---|---|---|
| IN RE ASBESTOS PRODUCTS | ) | |
| LIABILITY LITIGATION (No. VI) | ) | MDL DOCKET NO. 875 |
|  | ) | |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| TODD KORTEKAMP, et al. | ) | |
|      Plaintiffs, | ) | |
|  | ) | |
|      v. | ) | CASE NO. 1: RI  08-43 |
|  | ) | |
| 3M CO., et al., | ) | |
|      Defendants. | ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
## MOTION TO VACATE THE CONDITIONAL TRANSFER ORDER

Plaintiffs, pursuant to Rules 5, 7 and 12 of the Rules of Procedure of the Judicial Panel on

Multidistrict Litigation, file this Memorandum in Support of their Motion to Vacate the Conditional

Transfer Order entered on February 26, 2008 in this matter.  Plaintiffs have a Motion to Remand to

State Court pending before the Federal District Court for the District of Rhode Island ("transferor

court").  Because Plaintiffs' Motion to Remand raises several legitimate and significant reasons why

federal subject matter jurisdiction is not present in this case, Plaintiffs respectfully request that the

Panel VACATE the Conditional Transfer Order, without prejudice, or in the alternative, STAY the

transfer of this case to MDL 875 pending decision by the United States District Court for the District

of Rhode Island on Plaintiffs' Motion to Remand.

1

**TABLE OF CONTENTS**

## **TABLE OF CONTENTS**

I.   PROCEDURAL HISTORY ...................................................................................3

II.  THIS CASE SHOULD NOT BE TRANSFERRED TO MDL 875 BEFORE THE
OUTSTANDING JURISDICTIONAL MOTIONS HAVE BEEN RULED UPON BY
THE TRANSFEROR COURT.................................................................................4

III. FEDERAL SUBJECT MATTER JURISDICTION IS LACKING IN THIS CASE................5

   a.   GE's Removal Of This Case Was Untimely........................................................ 5

   b.   GE Has Not, And Cannot, Carry Its Burden Under §1442(a)(1) .......................... 5

IV. BECAUSE THE JURISDICTIONAL QUESTION IS FUNDAMENTAL AND UNIQUE
TO THE PLAINTIFFS, THE TRANSFEROR COURT SHOULD RULE ON
PLAINTIFFS' MOTION TO REMAND ...................................................................7

V.  MDL-875 DOES NOT RULE UPON MOTIONS TO REMAND .........................................7

VI. IT WOULD BE UNJUST AND A VIOLATION OF THE PLAINTIFFS' RIGHTS IF
THEY ARE REQUIRED TO NAVIGATE THE MAZE OF MDL-875 BEFORE
FEDERAL JURISDICTION HAS BEEN ESTABLISHED .................................................10

I. **PROCEDURAL HISTORY**

The following is a brief outline of the relevant procedural history:

**1)**     This case was originally filed in Rhode Island Superior Court on June 16, 2006. Defendant General Electric ("GE") was a party defendant in the original complaint. GE was served and its counsel, Jeffrey M. Thomen, filed an Entry of Appearance on July 25, 2006. In the state court Complaint, Plaintiffs' allege negligence, strict liability and breach of warranties claims against the Defendants based upon their <u>failure to warn</u> of the health hazards associated with asbestos exposure. No claim arising under federal law is alleged in the Complaint. No federal question is raised and no federal issue must be decided to establish Defendants' liability under the causes of action set forth in the Plaintiffs' Complaint.

**2)**     This case was scheduled for trial on April, 14 2008. *See R.I. Superior Court Judge Trial Calendar Order* (attached as "Exhibit A").

**3)**     GE removed this case to federal court on February 5, 2008 pursuant to 28 U.S.C. § 1442(a)(1) (federal officer or agency removal). GE removed this case just over 2 months before the state court trial date and exactly 555 days from the date its counsel first entered its appearance in the matter. GE based its removal upon the fact that Plaintiff was exposed to asbestos at the Knolls Atomic Power Laboratory ("KAPL"), a facility designed, constructed, and operated by GE under government contract. No other defendant has joined in the removal.

**4)**     GE then filed its Notice of "Tag Along-Action" in the U.S. District Court for the Eastern District of Pennsylvania to have this case transferred to the Multidistrict Litigation No. 875 ("MDL") on February 8, 2008.

**5)** On February 19, 2008, well within the 30-day window provided by 28 U.S.C. 1447(c) (Procedure after removal generally), the Plaintiffs filed a Motion to Remand to state court requesting an expedited hearing. The Motion to Remand raised numerous independently dispositive reasons why removal was improper and why federal jurisdiction was not present. This Motion is currently pending before the Honorable Judge Smith of the transferor court.

**6)** Before the court had an opportunity to rule on Plaintiffs' Motion or grant an expedited hearing, a Conditional Transfer Order to MDL 875 was issued by the Panel on Multidistrict Litigation on February 26, 2008.

**7)** On March 14, 2008, in the District of Rhode Island, Judge Smith held a hearing to determine whether he would have a hearing on Plaintiffs' Motion to Remand to State Court. The Judge stated that he would issue a ruling in the near future. At this hearing, the Judge indicated that it would be inappropriate for this case to be transferred before he decided whether he would rule on Plaintiffs' Motion to Remand (Plaintiffs have requested and are still waiting for a copy of the transcript).

## II.   THIS CASE SHOULD NOT BE TRANSFERRED TO MDL 875 BEFORE THE OUTSTANDING JURISDICTIONAL MOTIONS HAVE BEEN RULED UPON BY THE TRANSFEROR COURT

As outlined below, there are numerous independently dispositive reasons why removal was improper and why federal jurisdiction is not present. If this were a case pending in federal court, not subject to transfer to an MDL, outstanding jurisdictional motions would be resolved before the case continued down the path of pre-trial and trial procedure. Yet, under the current practice of the Panel, the case at hand may be transferred to MDL 875 and subject to forced pre-trial procedure and

4

settlement conference without the jurisdictional motion ever being heard.  Plaintiffs respectfully

request the Panel to change its policy of transferring cases before outstanding jurisdictional motions

have been ruled upon by the transferor court.

### III.    FEDERAL SUBJECT MATTER JURISDICTION IS LACKING IN THIS CASE

Plaintiffs will briefly outline the defects in GE's removal and the of lack of federal subject

matter jurisdiction in this case.

#### a.   GE's Removal Of This Case Was Untimely

GE did not timely file its Notice of Removal within the 30-day window pursuant to §1446(b).

GE had notice of a removable issue in the case from Mr. Kortekamp's Answers to Interrogatories

(filed August 2, 2006) that identified GE pumps on a Navy submarine upon which Mr. Kortekamp

served, the USS Skate.  Despite this knowledge, GE chose not to remove until after a co-worker

deposition that took place on January 31, 2008, well over a year later.  GE's failure to timely file its

Notice of Removal is an absolute bar on removal.  On this basis alone, there is no federal subject

matter jurisdiction and the Conditional Transfer Order should be vacated without prejudice, or in the

alternative, stayed until the transferor court has ruled on Plaintiffs' pending Motion to Remand.

#### b.   GE Has Not, And Cannot, Carry Its Burden Under §1442(a)(1)

GE had the burden to establish: (1) that GE was a federal officer or a 'person' acting under a

federal officer; (2) that GE was acting at the direction of an officer of the United States and that a

causal nexus exists between the defendant's actions under color of federal office and the plaintiffs'

claims; and (3) that it asserts a colorable federal defense. *See Mesa v. California*, 489 U.S. 121, 129

(1989). Specifically, in this failure to warn case, GE had to establish all three of these elements regarding GE's decision not to warn of the hazards of asbestos in its turbines and elsewhere at KAPL. GE has never addressed the fact that this is a failure to warn case.

GE provided no actual evidence to support its Notice of Removal. It was apparent from the lack of evidence, that this was a procedural delay tactic by GE presented at the cusp of the state court trial. GE did not provide any Navy specifications of any kind, let alone specifications regarding warning of the hazards of asbestos at KAPL. GE is not a federal officer. GE's Notice does not specifically allege that any government officer expressly specified the use of asbestos as a component of the marine turbines on which Mr. Kortekamp worked. In fact, it does not identify any discretionary decision by a federal officer which caused Mr. Kortekamp to be exposed to asbestos.

GE's case for removal is based entirely on general affidavits of individuals who have no personal knowledge of KAPL or the contract between GE and the government. Rather, the affidavits provide general information about the Navy and its relationship with contractors that built and supplied parts for Navy ships. GE does not fall into the class of a mere parts supplier. The KAPL contract states that GE had near complete responsible for every aspect of KAPL. Furthermore, when looked at objectively and in its entirety, the contract clearly establishes: (1) that the government neither prevented GE from warning nor gave GE any direction regarding asbestos warnings at KAPL; (2) that there is no conflict between GE's duty to warn and the KAPL contract or any related federal policy; (3) that GE had unfettered discretion to manage all aspects of KAPL including design, safety and warnings; (4) that GE was permitted and expected to deviate from any existing specifications. In light of this explicit contractual language, GE is unable to make even a colorable showing of any of the three elements of the *Mesa* test or the federal contractor defense, in this failure

6

to warn case. As a result, there is no federal subject matter jurisdiction and the Conditional Transfer

Order should be vacated without prejudice, or in the alternative, stayed until the transferor court has

ruled on Plaintiffs' pending Motion to Remand.

**IV.    BECAUSE THE JURISDICTIONAL QUESTION IS FUNDAMENTAL AND UNIQUE TO THE PLAINTIFFS, THE TRANSFEROR COURT SHOULD RULE ON PLAINTIFFS' MOTION TO REMAND**

The purpose of the MDL is to achieve judicial efficiency through the administration of

groups of similar cases with common issues. However, Plaintiffs' Motion to Remand involves

issues that are unique from all other transferred cases listed in Conditional Transfer Order 303.

Other courts have noted that the Motions to Remand are properly considered by the transferor court.

*See e.g. Remand Order of Judge Hugh B. Scott in Zglinicki v. Armstrong International, Inc., et al,*

(W.D.N.Y. 2007) Case No. 07CV278S at 10 (attached as "Exhibit B") (Noting that while the court

has deferred to the Multidistrict Litigation court when presented with an issue common among the

other cases, when the issue is discrete to that particular case there is no reason to ask a federal court

in Washington to make that decision.) The brief outline in section III *supra*, highlights the glaring

deficiencies in GE's case for removal and makes apparent that there are many case-specific issues of

fact and law that should be decided in the District of Rhode Island rather than in the consolidated

docket of the MDL.

**V.    MDL-875 DOES NOT RULE UPON MOTIONS TO REMAND**

It has been the practice of MDL-875 to NOT RULE upon pending Motions to Remand and,

instead, to leave such motions pending until the case is returned to the transferor court years after

transfer. The transferor court then ends up ruling on the jurisdictional Motion to Remand that had

been pending all along.

This is precisely what occurred in recent case that ended up in MDL-875 because the transferor court chose, without prior explanation, to not rule on the Motion the Remand. *See Order Remanding Case To State Court in Hauck v. Borg Warner, et. al.,* Case No. 6:04-cv-01835 (M.D. Fla. October 12, 2006) (attached as "Exhibit C") (setting forth facts discussed below). The *Hauck* case provides a perfect example of the inequity of allowing transferor courts to arbitrarily decide, without explanation and without possibility of review, to not rule on jurisdictional Motions to Remand prior to transfer to MDL-875.

On December 16, 2004, the *Hauck* case was removed to federal court on the sole ground of diversity of citizenship, despite the fact that the case had been diverse since filing. In January, 2005, Plaintiff moved to remand the case to state court, asserting that the federal court lacked jurisdiction over the case. On February 17, 2005, the U.S. District Court for the Middle District of Florida heard oral argument on the Motion to Remand.

In June 2005, six months after removal, five months after filing of the Motion to Remand, and over three months after oral argument on the motion, this Panel entered the final transfer order in the *Hauck* case, over Ms. Hauck's objection that the federal courts lacked jurisdiction.   Despite having had months to decide the jurisdictional remand motion, the U.S. District Court for the Middle District of Florida refused to substantively rule on the Motion to Remand.  No explanation for that refusal was ever provided.  Instead, after entry of the transfer order, the U.S. District Court for the Middle District of Florida simply entered a pro-forma Order denying the Motion to Remand without prejudice to the refilling of the Motion in MDL-875.

Plaintiff promptly renewed her jurisdictional Motion to Remand in MDL-875.  Despite this,

8

for the 14 months that the *Hauck* case remained in MDL-875, the court made no attempt to rule upon the motion or to even consider the jurisdictional arguments raised by Ms. Hauck. To the contrary, MDL-875 required Ms. Hauck to undergo two settlement conferences and informal discovery before Judge Giles eventually recommended "remand" of the case to the Middle District of Florida for further proceedings. That Order was then confirmed by MDL Panel – again without consideration of the jurisdictional Motion to Remand – and the case returned to the Middle District of Florida with the fundamental question of federal jurisdiction still pending.

Upon re-argument of Plaintiff's Motion to Remand, the *Hauck* court determined that federal jurisdiction did not exist (**and had never existed**) and ordered remand to the state court system on October 12, 2006 – nearly 22 months after it was removed and nearly 20 months after the transferor court first heard oral argument on the Motion to Remand.

In making the Motion herein, the Plaintiffs do not cast any aspersions at the hard work of Judge Weiner during his tenure or Judge Giles since his assumption of MDL-875. Indeed, Plaintiffs do not question the statement of the MDL Panel that "whenever the transferee judge has deemed remand of any claims or actions appropriate, procedures have been utilized to accomplish Section 1407 remand for trial with a minimum of delay." *Id.* at 1350. In fact, during oral argument, GE cited to this very language. The fact remains, however, that the "remand" discussed in that comment is not remand to state court due to determination that the federal courts lack jurisdiction. To the contrary, it refers to remand to the transferor court for trial or further proceedings *after completion of the maze of MDL-875.* However, there is no way to complete that maze, "with a minimum of delay".

It is unjust to require the Plaintiffs to negotiate the tortured maze of MDL-875 before they can obtain a ruling on a jurisdictional Motion to Remand. Lacking jurisdiction over the case at all, it

is unconstitutional to require a plaintiff to navigate the inevitable delays of MDL-875 before

jurisdiction of the federal courts is determined.  As demonstrated by the Hauck case, contrary to the

assumption of the Panel, MDL-875 does not and will not consider jurisdictional Motions to Remand.

 To the contrary, if a case is transferred to MDL-875 with a pending Motion to Remand, that motion

remains pending while the plaintiff waits for referral back to the transferor court.  Only at that point –

one, two, three or even more years later – will the Plaintiffs obtain their constitutionally guaranteed

ruling upon the Motion to Remand.


**VI.**     **IT WOULD BE UNJUST AND A VIOLATION OF THE PLAINTIFFS' RIGHTS IF THEY ARE REQUIRED TO NAVIGATE THE MAZE OF MDL-875 BEFORE FEDERAL JURISDICTION HAS BEEN ESTABLISHED**

There is no dispute that MDL-875 has resulted in the closure of tens of thousands of cases.

There equally can be no dispute, however, that there are massive delays in MDL-875.  Such delays

may be an unavoidable reality in *cases where federal jurisdiction has been determined to be proper*.

However, it is grossly inequitable that Plaintiffs might have to wait 1, 2 or even 3 years in MDL-875

only to have the original transferor Court determine that federal jurisdiction does not exist upon

return of the case to the transfer court at the completion of the procedures of MDL-875.

The *factual reality* is that MDL-875 does not consider jurisdictional motions and that "speedy"

return" from MDL-875 is impossible.  While return to the transferor court can, occasionally, be

secured, plaintiffs are required to navigate the maze or MDL-875, including mandatory settlement

conference and potential discovery, *prior to any determination regarding whether the federal courts

have jurisdiction over the case at all*.  That process is not "speedy" – especially in light of the fact

that there was a firm state court trial date for April 14, 2008.

The lengthy delays in MDL-875 have resulted in it being frequently referred to as a "black-hole" from which cases rarely, if ever, emerge. The fate of cases condemned to the "black hole" of MDL-875 was graphically described by The Honorable Mark Davidson of the District Court of Harris County, Texas, who presides over the Texas intra-state MDL relating to asbestos cases.

> Plaintiffs claimed in argument before the court that if the case is refiled in Maine, it will immediately be removed to Federal Court, and from there transferred to the Federal MDL. What will happen to the cases there? Apparently the judge will not give the plaintiff an opportunity to have his case heard before his death. The judge will attempt to get the case to settle. When and if the case is remanded, there will have been little, if any, judicial decision making performed that will assist the trial court. It will sit in this court, if it does not settle, for several years before it is remanded. The case will then go to the end of the docket in the federal court to which it is assigned. This isn't just what I have been able to find out from conferring with federal judges around the nation – this is what the Judge D. Brock Hornby, Chief Judge of the Federal Courts of the District of Maine, wrote in *In re Maine Asbestos Cases*, 44 F.Supp.2d 368 (D.Me. 1999).

*See Decision of Judge Davidson in Austin Richards, et. ux. v. Carver Pump Company et al.*; Case No. 2006-22,116 (September 5, 2006) (attached as "Exhibit D"). Judge Davidson then referred to the Federal MDL as it has existed for many years as a "black hole." *Id.*

Lest removing Defendants attempt to characterize Judge Davidson's "black hole" comment as unfounded hyperbole, the agenda for the 2007 Defense Research Institute (DRI) conference regarding asbestos litigation demonstrates the generally accepted view of the defense bar regarding this issue. *See Agenda for DRI "Asbestos Medicine" Conference, November 8-9, 2007* (attached as "Exhibit E"). The first presentation at this convention of asbestos-defense lawyers was entitled:

> **MDL 875: Navigating the Black Hole – Its Future and Ramifications for State Courts:** Hear about the current role of the MDL and its projected impact on existing and future cases.

*Id.* at p. 4.

11

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 26 2008

FILED
CLERK'S OFFICE

**WHEREFORE**, Plaintiffs request that the Panel VACATE the Conditional Transfer Order,

without prejudice, or in the alternative, STAY the transfer of this case to MDL 875 pending decision

by the United States District Court for the District of Rhode Island on Plaintiffs' Motion to Remand.

Respectfully Submitted,
The Plaintiffs,

By: _____

John E. Deaton, Esq. (#6537)
jdeaton@deatonlawfirm.com
The Deaton Law Firm
One Richmond Square, Suite 163W
Providence, Rhode Island 02906
(401) 351-6400   Tel.
(401) 351-6401   Fax

## CERTIFICATION OF SERVICE

I hereby certify that on this 25th day of March 2008, a copy of the foregoing was: filed with

the Clerk of the Panel via Federal Express; sent to the attached Panel Service List via first class mail;

filed with the Federal Court's CM/ECF system; and sent electronically to the state court defendants

via Rhode Island Asbestos Litigation Electronic Filing Service provided by LexisNexis.

_____
John E. Deaton

12

IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)

MDL No. 875

## PANEL SERVICE LIST (Excerpted from CTO-303)

Todd Kortekamp, et al. v. 3M Co., et al., D. Rhode Island, C.A. No. 1:08-43

Richard C. Binzley
THOMPSON HINE LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Jeffrey S. Brenner
NIXON PEABODY LAW FIRM
One Citizens Plaza
Providence, RI 02903

Edward J. Cass
GALLAGHER SHARP FULTON
& NORMAN
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Adam M. Chud
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC 20001

David A. Damico
BURNS WHITE & HICKTON LLC
Four Northshore Center
106 Isabella Street
Pittsburgh, PA 15212

John E. Deaton
DEATON LAW FIRM LLC
One Richmond Square
Suite 163W
Providence, RI 02906

Raymond P. Forceno
FORCENO GOGGIN & KELLER
1528 Walnut Street, Suite 900
Philadelphia, PA 19102

Ellen B. Furman
GOLDFEIN & HOSMER
1600 Market Street, 33rd Floor
Philadelphia, PA 19103

Susan M. Hansen
BROWNSON & BALLOU
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

Reginald S. Kramer
OLDHAM & DOWLING
195 South Main Street
Suite 300
Akron, OH 44308-1314

David C. Landin
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Gene Locks
LOCKS LAW FIRM LLC
1500 Walnut Street
Philadelphia, PA 19102

Ronald L. Motley
MOTLEY RICE LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

John J. Repcheck
MARKS O'NEILL O'BRIEN
& COURTNEY PC
Gulf Tower, Suite 2600
707 Grant Street
Pittsburgh, PA 15219

John D. Roven
ROVEN-KAPLAN LLP
2190 North Loop West
Suite 410
Houston, TX 77018

Richard D. Schuster
VORYS SATER SEYMOUR
& PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008

Neil Selman
SELMAN BREITMAN & BURGESS
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

Robert N. Spinelli
KELLEY JASONS MCGUIRE
& SPINELLI LLP
Centre Square West
15th Floor
Philadelphia, PA 19102

Robert E. Swickle
JAQUES ADMIRALTY LAW FIRM
1370 Penobscot Building
645 Griwsold Street
The Maritime Asbestosis Legal Clinic
Detroit, MI 48226-4192

Jeffrey M. Thomen
MCCARTER & ENGLISH LLP
185 Asylum Street
City Place I
Hartford, CT 06103-3495

Andrew J. Trevelise
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

James K. Weston II
TOM RILEY LAW FIRM
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

# Exhibit A

STATE OF RHODE ISLAND
PROVIDENCE                                                    SUPERIOR COURT

IN RE: ASBESTOS LITIGATION

## THE DEATON LAW FIRM

## 2008 TRIAL CALENDAR*

| Case(s) | Status | Primary Trial Date | Secondary Trial Date |
|---|---|---|---|
| LaPointe | January 30, 2008 | February 11, 2008 | |
| Phillips, Crandall | February 6, 2008 | | February 25, 2008 |
| Kraud, Ballew, Lucadamo, Nelson | February 27, 2008 | March 17, 2008 | |
| Tetu, St.Ana | March 5, 2008 | March 24, 2008 | |
| Kortekamp | March 26, 2008 | April 14, 2008 | |
| Downs, Cashman | April 2, 2008 | April 21, 2008 | |
| Fosh | April 2, 2008 | | April 21, 2008 |
| Clayton | April 23, 2008 | May 5, 2008 | |
| Mayer, Mazza, Kozak | April 23, 2008 | | May 5, 2008 |
| Hicks, Benoit, Bledsoe | April 30, 2008 | May 19, 2008 | |
| Koniak | April 30, 2008 | | May 19, 2008 |
| Brandt, Wolosuk, Murphy | May 7, 2008 | May 26, 2008 | |
| Wright | May 7, 2008 | | May 26, 2008 |
| Picker, Bosser | May 21, 2008 | | June 9, 2008 |

BY ORDER of the SUPERIOR COURT OF RHODE ISLAND:

_Dersie M Gueston_

Justice Alice B. Gibney / Clerk

_deputy_

Dated: _1/23/08_

*This represents the current 2008 first half trial calendar for Deaton Law Firm filed cases and
will be supplemented accordingly. This list does not represent all filed cases of the Deaton Law
Firm and will be supplemented on a continuous basis.

PRESENTED BY:

John Deaton, Esq. (RI Bar #6537)
THE DEATON LAW FIRM
One Richmond Square, Suite 163W
Providence, RI 02906
(401) 351-6400
(401) 351-6401 (FAX)

# Exhibit B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RICHARD ZGLINICKI,
IRIS ZGLINICKI, his spouse,

                          Plaintiffs,                     **Hon. Hugh B. Scott**

                                                              07CV278S

                                                              **Order**

        v.


ARMSTRONG INTERNATIONAL, INC., et al.,

                          Defendants.


        Before the Court is plaintiffs' motion to remand and costs (Docket No. 19[1]).  They also

have filed a motion for an expedited hearing of this motion (id.) which was granted (Docket

No. 22).  Responses to the motion to remand were due on or before May 22, 2007[2], and oral

argument was held on May 31, 2007 (Docket Nos. 22, 24).  The motion was deemed submitted

following oral argument (Docket No. 31).

        ─────────────

        [1]In support of this motion, plaintiffs filed the motion for expedited hearing, with exhibits,
Docket No. 19, memorandum of law, Docket No. 20, and memorandum in further support of
their motion with exhibits, Docket No. 29.
        In opposition, Garlock submitted its memorandum in opposition, Docket No. 26, and
attorney's affidavit with exhibits, Docket No. 27.  Following oral argument Garlock's counsel
submitted a letter enclosing copies of cases relied upon in its oral argument, letter to chambers of
June 1, 2007.

        [2]Plaintiffs object to Garlock's opposing papers being untimely per this Court's Local
Civil Rule 7.1, Docket No. 29, Pls. Supp'al Memo. at 3.  That rule recognizes that the Court by
Order may except the parties from the briefing requirements of that rule, W.D.N.Y. Local Civ.
R. 7.1(c), and Local Civil Rule 7.1(d) allows the Court–as granted here–to order an expedited
hearing of a matter.

## BACKGROUND

This is a personal injury action, commenced in New York State Supreme Court, Erie County, by reason of plaintiff Richard Zglinicki's ("plaintiff") alleged exposure to asbestos. Plaintiffs Richard Zglinicki and his wife Iris (collectively "plaintiffs") sued twelve defendants as part of the New York Supreme Court Eighth Judicial District Asbestos Litigation (see Docket No. 1, Notice of Removal, Ex. A, State Complaint). Plaintiffs expressly allege that plaintiff's exposure was not while he was on a federal enclave (id., Ex. A, ¶ 3). The initial Complaint was verified on March 9, 2007, and, according to the exhibit attached to the Notice of Removal, was received by Garlock Sealing Technologies ("Garlock") on March 26, 2007 (id.). Plaintiffs filed an Amended Complaint in the state case on March 14, 2007 (id. Ex. B), to add defendant Union Carbide, and Garlock indicates that it received that pleading on March 26, 2007 (id.; id. Notice of Removal ¶¶ 1, 2; cf. id. Notice of Removal ¶ 3 (Garlock was served on March 22, 2007, with the initial Complaint and March 23, 2007, with the Amended Complaint)).

Defendant Garlock filed the Notice of Removal of this action to this Court (Docket No. 1), on April 26, 2007, and filed its Answer (Docket Nos. 10 (Answer to Complaint), 11 (Answer to Amended Complaint)). Other defendants filed their Answers[3] but not all defendants have appeared in the removed action[4]. Garlock also filed notice for this action to be a tag-

---

[3]IMO Industries, Docket No. 5; Union Carbide Corporation, Docket No. 6; Ingersoll-Rand Company, Docket Nos. 12, 13 (Amended Complaint); Gould Pumps (IPG), Inc., Gould Pumps (NY), Docket No. 15. Some defendants filed cross-claims against one another that are not relevant to this motion. Buffalo Pumps, Inc., answered in state court, see Docket No. 1, Notice of Removal, Ex. E.

[4]Yet to appear are Armstrong International, Inc., individually and as successor to Armstrong Machine Works; Crane Co.; Gould Pumps Incorporated; Merger Corporation; Hoke Inc.; Yarway Corporation. Buffalo Pumps filed a Notice of joinder in the motion to remove,

along to pending federal asbestos actions now before the United States District Court for the Eastern District of Pennsylvania pursuant to assignment by the Judicial Panel on Multidistrict Litigation ("Multidistrict Panel") (Docket Nos. 2, 3). During oral argument on May 31, 2007, Garlock produced a notice (dated May 23, 2007, MDL-875, In re Asbestos Product Liability Litig. (No. VI), CTO-278) from the Multidistrict Panel with a conditional transfer order to send this action to the Eastern District of Pennsylvania within fifteen days of entry of that conditional order, with opposition to the transfer due by June 7, 2007. Plaintiffs, at oral argument, stated that they intended to file objections to this transfer. Under that notice, counsel were to notify the Multidistrict Panel "of any official changes in the status of the tag-along action. These changes could involve dismissal of the action, remand to state court, . . ., etc." (id.).

Garlock contends that plaintiff was exposed to asbestos from 1966 to 1969 while he was in the United States Air Force at Langley (in Virginia), Elmendorf Air Force Bases (in Alaska), and Campion Air Station (also in Alaska) (Docket No. 1, Notice of Removal ¶ 6). Specifically, plaintiff testified in his examination before trial that he was exposed as a steam fitter at Langley from May to November 1966 and at Campion from December 1967 through September 1968 (id., Ex. D, Pl. EBT Tr. at 68-70). Thus, Garlock claims federal question jurisdiction because plaintiff's exposure was while he was on a federal enclave (see id. ¶¶ 6-7, 11), despite plaintiff's denials of any claims of exposure to asbestos dust while on a federal enclave (id. ¶ 4).

---

Docket No. 3, and Buffalo Pumps and other defendants indicated their consent to have this case removed, Docket No. 1, Notice of Removal ¶ 12, Ex. F.

*Expedited Hearing*

      Plaintiff is dying of mesothelioma, an "invariably fatal cancer . . . for which asbestos exposure is the only known cause," In re Patenaude, 210 F.3d 135, 138 (3d Cir.), cert. denied, 531 U.S. 1011 (2000) (Docket No. 19, Pls. Motion for Expedited Hearing, at 1; Ex. B, Physician Affirm. of Dr. John Vance ¶¶ 4-9 (concluding that Richard Zglinicki was in extremis).  New York Supreme Court ordered expedited discovery in this action on April 5, 2007 (id. Ex. A), plaintiff's deposition and trial testimony taken back in April, and with a trial scheduled for January 8, 2008 (id.).  As a result, this Court ordered expedited hearing of plaintiffs' motion (Docket No. 22).

*Motion to Remand*

      On May 10, 2007, Plaintiffs timely moved to remand this action, arguing that the removal was unauthorized by federal law and "is a transparent effort to delay the progress of the state case of plaintiff, Richard V. Zglinicki, until he dies," (Docket No. 19, Pls. Motion for Expedited Hearing at 1; see Docket No. 20, Pls. Memo. at 1; see also Docket No. 29, Pls. Supp'al Memo. at 2, Ex. A).  They argue that the removal notice was defective, lacking (for example) the State Supreme Court's scheduling Order (Docket No. 19, Pls. Motion for Expedited Hearing at 2-3), and vaguely referring to the basis for federal subject matter jurisdiction to justify the removal (id. at 3).  They next contend that the removal was untimely, filed more than thirty days from receipt of the initial pleading (id. at 3-5).  Since Garlock and plaintiffs are New Yorkers, plaintiffs considered the sole basis for federal jurisdiction available here, federal question jurisdiction, and conclude that there is no basis for that jurisdiction here (id. at 5-9), arguing whether Virginia and

Alaska ceded exclusive authority to the air bases where plaintiff worked to create a "federal enclave" (id. at 7-9).

Garlock argues that it learned of plaintiffs' possible federal claims from the answers to interrogatories, hence its Notice of Removal of April 26, 2007, was timely (see Docket No. 26, Garlock Memo. at 2, 4-5). The Complaint, in fact, denied any basis for federal jurisdiction by disclaiming any alleged exposure while within a federal enclave (id. at 4). The omission of the state court scheduling Order was a formal defect and should not require remand due to a defect in the removed papers (id. at 5), see Dri Mark Products, Inc. v. Meyercord Co., 194 F. Supp. 536, 538 (S.D.N.Y. 1961). Garlock argues that federal jurisdiction arises here from plaintiff's exposure upon a federal enclave, that Langley and Campion air bases were ceded to the United States for its exclusive jurisdiction (id. at 6-8; Docket No. 27, Garlock Atty. Aff. ¶¶ 24-30, Exs. C, D, E, F, G). Garlock cites a 1962 General Services Administration survey of federal properties and their jurisdictional status, which listed Langley Air Force base as being exclusive federal property (Docket No. 27, Garlock Atty. Aff. ¶ 27, Ex. E).

<u>DISCUSSION</u>

I.    Magistrate Judge Jurisdiction over this Motion

Since this is not one of the dispositive motions listed in 28 U.S.C. § 636(b)(1)(A), this motion can be decided by a Magistrate Judge by a Decision & Order. SG v. MC, No. 05CV508, Docket No. 14, Order of Sept. 25, 2005, at 1 n.1 (W.D.N.Y. 2005) (Scott, Mag. J.); Williams v. Beemiller, Inc., No. 05CV836, 2006 U.S. Dist. LEXIS 69024, at *3 (W.D.N.Y. Sept. 26, 2006) (Skretny, J.); McDonough v. Blue Cross of Northeastern Pa., 131 F.R.D. 467, 468 (W.D. Pa. 1990); see also Acme Elec. Corp. v. Sigma Instruments, Inc., 121 F.R.D. 26, 28 (W.D.N.Y.

1988) (Elfvin, J.) (magistrate judge could grant motion to amend even if resulting amended

pleading would require remand to state court); Wachovia Bank Nat'l Ass'n v. Deutsche Bank

Trust Co. Americas, 397 F. Supp. 2d 698, 700-03 (W.D.N.C. 2005) (district judge held

magistrate judge could order remand); Chandler v. Cheesecake Factory Restaurants, Inc., 239

F.R.D. 432, 440 n.6 (M.D.N.C. 2006) (citing Johnson v. Wyeth, 313 F. Sup. 2d 1272 (N.D. Ala.

2004)).  Other courts disagree, see, e.g., National City Bank v. Aronson, 474 F. Supp. 2d 925,

927 (S.D. Ohio 2007) (district court adopts Report & Recommendation, based upon 6th Circuit

precedent, Vogel v. U.S. Office Prods. Co., 258 F.3d 509, 517 (6th Cir. 2001), requiring treating

remand as dispositive); Innovative Medical Products, Inc. v. Felmet, 472 F. Sup. 2d 678

(M.D.N.C. 2006) (district court adopts Report & Recommendation), but the law in this District is

that motions to remand are non-dispositive and can be considered by the Magistrate Judge.

II.      Conditional Transfer Order

        At oral argument Garlock announced that a conditional transfer order was issued by the

Multidistrict Panel and urged that this Court either stay consideration of plaintiffs' present

motion or defer ruling upon it until the status of the transfer by the Multidistrict Panel is

determined.  Garlock argued that this Court should exercise its discretion and delay ruling on

plaintiffs' motion until the Multidistrict Panel has ruled on the transfer of this action, although

Garlock (or any of the other defendants) has not moved for a stay.

> "The pendency of a motion, order to show cause, conditional transfer order or
> conditional remand order before the Panel concerning transfer or remand of an
> action pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial
> proceedings in the district court in which the action is pending and does not in any
> way limit the pretrial jurisdiction of that court.  A transfer or remand pursuant to
> 28 U.S.C. § 1407 shall be effective when the transfer or remand order is filed in
> the office of the clerk of the district court of the transferee district,"

Rules of Procedure Jud. Panel on Multidist. Litig. 1.5. The conditional transfer order issued here does not transfer this case until that order is filed with the clerk of the United States District Court for the Eastern District of Pennsylvania, after the expiration of the period for filing objections (here by June 7, 2007) (MDL-875, In re Asbestos Litig. (No. VI), CTO-278).

Garlock cites in its post-argument submission Judge Larimer's grant of a similar stay in Krieger v. Merck & Co., No. 05CV6338, 2005 WL 2921640 (W.D.N.Y. Nov. 4, 2005)[5], a Vioxx case removed to federal court and then conditionally transferred to the Multidistrict Litigation court for Vioxx cases in Louisiana. In another asbestos action cited by Garlock, In re Asbestos Cases (Hatch), No. 2:06-cv-741, 2007 WL 58293 (D. Utah Feb. 20, 2007), the court declined to reconsider its decision not to rule on a pending motion to remand where the Multidistrict Panel had issued a conditional transfer order. The Hatch court held that it was judicially efficient for the Multidistrict Litigation court to decide the unsettled issue of whether a plaintiff could disclaim federal enclave exposure to avoid federal court jurisdiction (where plaintiff was exposed on and off of federal enclaves) despite plaintiff's terminal diagnosis of mesothelioma, 2007 WL 582983, at *2. In Stempien v. Eli Lilly & Co., No. C06-1811, 2006 U.S. Dist. LEXIS 28408 (N.D. Cal. May 4, 2006), another case cited by Garlock, the defendants sought a stay of plaintiff's motion to remand while the conditional transfer order (and objections thereto) was pending. The court there granted the stay, finding the judicial efficiency of handling Zyprexa litigation outweighed deciding the remand motion because there were several other Zyprexa

---

[5]Garlock included in its post-argument submission two other of Judge Larimer Vioxx cases which also stayed their motions pending transfer to the Vioxx Multidistrict Court, Bonilla v. Merck & Co., No. 07CV6144, 2007 WL 952040 (W.D.N.Y. Mar. 28, 2007); North v. Merck & Co., No. 05CV647, 2005 WL 2921638 (W.D.N.Y. Nov. 4, 2005).

cases pending that would have a common outcome as that case. In a third case cited by Garlock during oral argument, Jackson v. Johnson & Johnson, No. 01-2113, 2001 U.S. Dist. LEXIS 22329 (W.D. Tenn. Apr. 3, 2001), a drug class action was removed on diversity jurisdiction and then had a conditional transfer order from the Multidistrict Panel. Plaintiffs there moved to remand and the district court exercised its discretion in deferring ruling on that motion until after the transfer of the action, because the common issue of the amount in controversy applied to numerous parties now before the transferee court. The Jackson court found that judicial efficiency thus was served by having the transferee court decide the issue all at once as opposed to individual district courts deciding the same issue, id. at *7-8, 17, holding that the Multidistrict Panel had jurisdiction to transfer the action even though jurisdictional objections were pending before the court, id. at *8. This court cited the Second Circuit's decision in In re Ivy, 901 F.2d 7 (2d Cir. 1990), where plaintiffs objected to removal of their state Agent Orange action and transfer by the Multidistrict Panel to the Eastern District of New York. Since 28 U.S.C. § 1407 did not empower the Panel to "decide questions going to the jurisdiction or the merits of a case, including issues relating to a motion to remand" and the Circuit Court's review (on mandamus) was only of the decision to transfer and not the underlying jurisdictional issue, the transferee court could consider the jurisdictional question, 901 F.2d at 9. The Second Circuit did not consider the question of whether the initial district court had to defer to the Multidistrict Litigation process and stay action on a pending jurisdictional motion and await action on the transfer and (if granted) action by the transferee court.

These actions had in common that plaintiffs in each case had common arguments either for not transferring the action or for not removing it to federal court with other parties in pending

Multidistrict Litigation cases.  Hence judicial efficiency is had when a single court decides all like motions rather than separate courts dealing with each motion in their several cases.  For example, in In re Ivy, supra, 901 F.2d at 9, the Second Circuit concluded that in Agent Orange cases the jurisdictional issues posed by plaintiffs there were "easily capable of arising in hundreds or even thousands of cases in district courts throughout the nation," with common questions of law and fact, hence the "real economies in transferring such cases," see also Krieger, supra, 2005 WL 2921640, at *1.  Also most of these actions had motions for stays pending resolution of the transfer issue.

Here, the jurisdictional question is fundamental and unique to this plaintiff.  One key basis for federal jurisdiction here (for either this Court or ultimately the Multidistrict Panel court in Philadelphia) boils down to whether Langley or Campion Air Force bases were federal enclaves, particularly whether the places on those bases in which plaintiff worked and was exposed to asbestos were within federal enclaves.  While among the over one hundred thousand federal asbestos actions pending in the Eastern District of Pennsylvania (see CTO-278, from the number of federal asbestos cases transferred to that court), a few may have arisen from exposure at those two locations, or whether exposure was on a federal enclave, that issue is not so specialized or require such uniformity in decision that transfer to the asbestos multidistrict court would be judicially efficient.  Further, the conditional transfer order was presented at oral argument for the first time and no defendant sought a stay of this motion pending the transfer process.

This is similar to a case included by Garlock in its post-argument submission, Morales v. American Home Products Corp., 214 F. Supp. 2d 723, 725 (S.D. Tex. 2002), in which Chief

Judge Kazen <u>declined</u> to stay the pending motion to remand while awaiting action on the transfer order and went on to consider whether there was fraudulent joinder of a defendant to avoid diversity jurisdiction. As Chief Judge Kazen noted, the conditional transfer order does not affect or suspend any pretrial proceedings in the transferor court and, while the court has deferred to the Multidistrict Litigation court when presented with an issue common among the other cases, when the issue is discrete to that particular case "there is no reason to ask a federal court in Washington to make that decision," <u>id.</u> at 725. That court went on to grant a remand of the action, <u>id.</u> at 726.

Courts have balanced judicial efficiency of dealing with common issues by one court with the potential for delay to the parties (even, as in <u>Hatch</u>, <u>supra</u>, 2007 WL 582983, at *1, and potentially here, the possibility of denial of plaintiff's day in court). Here, there is no common issue, it is a discrete issue that can be best decided prior to transfer. This Court will next consider the pending motion to remand.

III.    Removal and Remand Standards

Under 28 U.S.C. § 1441, a defendant alleging original federal jurisdiction may have the pending state action removed upon notice, filing a notice to remove thirty days from service of the pleading or other paper that suggests federal court jurisdiction, 28 U.S.C. § 1446(b). The plaintiff, on any issue (aside from subject matter jurisdiction) within thirty days of the filing of the notice of removal, may then move to have that action remanded to state court, 28 U.S.C. § 1447(c). The burden is upon the party seeking to preserve federal court removal jurisdiction (here, defendant Garlock) to show that the requirements for removal were met, <u>see</u> 14C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice and Procedure</u>, § 3739, at 424 (Jurisdiction 3d ed. 1998). The Court reviews the Complaint, the Notice of Removal, and

the state court record, to determine whether removal was proper, id. at 468. Removal statutes are

to be construed against removal and in favor of remand, Martropico Compania Naviera S.A. v.

Perusahaan Pertambangan Minyak Dan Gas Bumi Negara (Pertamina), 428 F. Supp. 1035, 1037

(S.D.N.Y. (S.D.N.Y. 1977) (citing Shamrock Oil Co. v. Sheets, 313 U.S. 100, 108-09 (1941)).

Removal requires the filing an index of documents filed in state court, copy of all process,

pleadings, and orders served upon defendant there, 28 U.S.C. § 1446(a) (procedure for removal),

and (under this Court's rules) copies of the documents filed in state court, W.D.N.Y. Local Civ.

R. 81(a)(3).

IV.    Application

Plaintiffs raise three objections to Garlock's removal of this action, two procedural or

timing deficiencies with the Notice and the absence of federal subject matter jurisdiction to

justify the removal. The Court shall consider each objection in the order presented by plaintiffs.

A.      Deficiencies in the Removal Notice

Plaintiffs first object to Garlock's failure to include with the Notice of Removal a copy of

all orders served upon defendant, in particular the expedited discovery and scheduling order of

April 11, 2007, see 28 U.S.C. § 1446(a); W.D.N.Y. Loc. Civ. R. 81(a)(3)(B) (Docket No. 20, Pls.

Memo. at 1 n.1, 2-3). Next, they object to the ambiguity in the Notice as to the basis for federal

jurisdiction, concluding that the Notice was rendered defective (id. at 3).

Garlock here only filed an index of the process and pleadings served in the state action

(Docket No. 1, Notice of Removal ¶ 13, Ex. G) and did not list or include the New York

Supreme Court's scheduling Order.

Cases under § 1446(a) have upheld removal where a defendant did not include all of the pleadings and papers from the state court action, e.g., Boxdorfer v. DaimlerChrysler Corp., 396 F. Supp. 2d 946 (C.D. Ill. 2005), aff'd, 435 F.3d 785 (7th Cir. 2005); Dri Mark, supra, 194 F. Supp. at 538, but cases have remanded actions where the removal papers failed to allege the timing of the removal, Cook v. Robinson, 612 F. Supp. 187 (E.D. Va. 1985), or failed to provide a copy of all state court pleadings and papers and did not contain a statement of fact which entitled defendant to removal, Kingman v. Sears, Roebuck and Co., 526 F. Supp. 1182 (D. Me. 1981). Omission of some state court documents are not jurisdictional, Dri Mark, supra, 194 F. Supp. at 538, but omitting documents that state the basis for federal jurisdiction is fatal to the removal notice.

This Court's Local Civil Rule requires the removing party to file a Notice of Removal with an index of all documents filed in state court, with a copy of each document, W.D.N.Y. Loc. Civ. R. 81(a)(3)(A), (B), although 28 U.S.C. § 1446(a) only calls for filing with the Notice a copy of the orders served upon defendant, cf. 28 U.S.C. § 1446(a). Here, plaintiff apprised the Court of the state court's pending Scheduling Order and its omission by Garlock could have been readily remedied by Garlock, cf. Dri Mark, supra, 194 F. Supp. at 538. Therefore, this technical deficiency is **not sufficient to require remanding** this action to state court.

B.      Basis for Federal Subject Matter Jurisdiction for this Removal

Garlock initially asserted two bases for removal of this action, diversity and federal question from the federal enclave jurisdiction under Article I, Section 8, Clause 17 of the United States Constitution.

1.    Diversity

First, Garlock claimed that this Court would have jurisdiction on the basis of diversity

jurisdiction, that is citizens of different states and alleged claims that exceed the statutory

threshold of $75,000, see 28 U.S.C. § 1332(a)(1) (Docket No. 1, Notice of Removal, at page 1).

Plaintiffs contend that there is no diversity of citizenship between them and Garlock because

both are citizens of New York for diversity purposes (Docket No. 20, Pls. Memo. at 3 n.2), but

plaintiffs do not cite any authority for this proposition. The Complaint (Docket No. 1, Notice of

Removal, Ex. A) and Amended Complaint (id., Ex. B) alleged that Garlock is a foreign business

corporation authorized to and transacting business in New York (id., Ex. A, ¶ 8, Ex. B, ¶ 8).  The

Summonses for these pleadings listed Garlock's address being in Palmyra, New York, while

asserting that plaintiffs lived in Buffalo (id., Ex. A, Summons, Ex. B, Summons).  In its Answers

to the Complaint and to the Amended Complaint, Garlock admitted that it is a foreign

corporation authorized to transact business in New York (Docket No. 10, Ans. ¶ 2; Docket

No. 11, Ans. to Am. Compl. ¶ 2), but does not state where it is incorporated or has its principal

place of business.  In response to this motion to remand, Garlock does not argue diversity as a

basis for federal jurisdiction (possibly, in part, to make the removal timely, since diversity

jurisdiction would have been apparent when plaintiffs served their Complaint).

As the proponent for federal jurisdiction for this removed action, defendant Garlock bears

the burden of establishing diversity jurisdiction.  See Robinson v. Overseas Military Sales Corp.,

28 F.3d 502, 507 (2d Cir. 1994); In re Ski Train Fire in Karprun, Austria on Nov. 11, 2000,

257 F. Supp. 2d 717, 724 n.9 (S.D.N.Y. 2003); Gliatta v. Stein, No. 03CV214, 2004 U.S. Dist.

LEXIS 9892, at *7-8 (W.D.N.Y. May 23, 2004) (Skretny, J.) (dismissed amended complaint's

claims against corporation where plaintiff, claiming diversity jurisdiction, failed to allege corporate defendant's state of incorporation or principal place of business).  As the proponent for this Court's jurisdiction, Garlock "bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." Advani Enter., Inc. v. Underwriters at Lloyds, 140 F.3d 157, 160 (2d Cir. 1998) (citations omitted).  That is, Garlock needs to show plaintiffs' state of citizenship and allege that all defendants are not New York corporations and did not have their principal places of business in New York to otherwise defeat diversity, in particular assert Garlock's state of incorporation and principal place of business. See Denlinger v. Brennan, 87 F.3d 214 (7th Cir. 1996) (allegations of diversity jurisdiction were defective where they did not allege organization's principal place of business or place of incorporation).  Diversity under § 1332 has to be complete, thus all plaintiffs must have a different citizenship from each defendant, Caterpillar, Inc. v. Lewis, 519 U.S. 61, 75-78 (1998); Durove v. Fabian Transp. Inc., CCH Prod. Liab. Rptr.  ¶ 17,258, 2004 U.S. Dist. LEXIS 25258, at *4 (S.D.N.Y. Dec. 14, 2004).

Diversity jurisdiction for corporations depends upon the state of incorporation and the principal place of business of the corporate party, 28 U.S.C. § 1332(c).  Neither the state of incorporation nor the principal place of business is alleged for Garlock.  Instead, both plaintiffs and Garlock concede that Garlock is a foreign corporation that transacts business in New York. Transaction of business is a concept derived from New York's long-arm statute, see N.Y. CPLR 302(a)(2), to enable New York State courts (and this Court) to exercise personal jurisdiction over foreign entities because of their activities in New York.  "Transacting business" does not answer the federal subject matter jurisdiction question under § 1332 of whether the defendant corporation is diverse from the New York plaintiffs or not for diversity purposes. See

14

also Forrester v. Supermarket General Corp., No. 92 Civ. 1265, 1992 U.S. Dist. LEXIS 15953, at

*3 (S.D.N.Y. Oct. 19, 1992) (a principal place of business for purposes of personal jurisdiction

under New York Business Corporation Law does not necessarily make that corporation a New

York corporation for diversity jurisdiction purposes).  Since Garlock has not asserted its principal

place of business or state of incorporation to determine if it is diverse from plaintiffs and now is

not arguing diversity, the Court turns next to the other basis asserted for federal jurisdiction, that

of federal question jurisdiction under § 1331.

        2.     Federal Question-Federal Enclave Jurisdiction

This Court also has original jurisdiction "of all civil actions arising under the

Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331.  Garlock argues that the

jurisdictional basis is federal question jurisdiction, 28 U.S.C. § 1331; see Akin v. Big Three

Industries, 851 F. Supp. 819, 821-22 (E.D. Tex. 1994) (federal enclave jurisdiction found for

exposure to toxins at Tinker Air Force Base) (Docket No. 1, Notice of Removal ¶ 11).  Plaintiffs

contend that Garlock vaguely asserts the nature of this basis, surmising that it is federal enclave

jurisdiction under United States Constitution article I, section 8, clause 17 (Docket No. 20, Pls.

Memo. at 3).  They deny the existence of such "federal enclave jurisdiction" (id. at 6), arguing

that Garlock confuses Congress's legislative jurisdiction over federal enclaves under the Enclave

Clause with this Court's jurisdiction under congressionally mandated 28 U.S.C. § 1331 (id. at 8).

They contend that "just because Congress has authority under Article I to legislate in federal

enclaves, this does not mean a federal district court automatically has jurisdiction to try a tort

case arising from an incident within a federal enclave.  Congress must statutorily authorize a

district court to try such an 'enclave' case.  It has not." (Id. at 8-9.)  Thus, a tort committed on a

federal enclave needs a federal law (a statute, treaty, or constitutional provision) distinct from the
Enclave Clause in order to create a federal question (see id. at 8-9).  Plaintiffs point to the origin
of federal jurisdiction is so much of Article III jurisdiction that Congress has enacted, concluding
that Congress has given far less than the jurisdiction allowed by Article III (id. at 5-6), or as
applicable here, as may be allowed by the Enclave Clause, and apparently has not enacted
judicial jurisdiction over events within federal enclaves.

     Garlock argues that the Enclave Clause itself creates federal subject matter jurisdiction
(Docket No. 26, Garlock Memo. at 7-8), see Akin v. Ashland Chem. Co., 156 F.3d 1030, 1034
(10th Cir. 1998) (federal enclaves are subject of exclusive federal jurisdiction and thus personal
injuries arising thereon are part of federal question), cert. denied, 526 U.S. 1112 (1999).  Plaintiff
stated in his interrogatory answer that his asbestos exposure was only at Langley and Campion,
both owned and purchased by the United States and Virginia and Alaska respectively ceded
jurisdiction to the United States for those properties (id. at 8).

     The issues, then, are whether Garlock has established exclusive federal jurisdiction over
portions of either Air Force base in which plaintiff worked at in the 1960s to be federal enclaves
and what federal law was implicated by plaintiff's exposure to asbestos while in those enclaves
to create federal question jurisdiction.

        a.     Did Garlock Establish the Existence of a Federal Enclave?

    In Akin v. Big Three Industries, the district court held that the Enclave Clause by itself
established federal question jurisdiction under 28 U.S.C. § 1331 and a removable case under
§ 1441(a), even if the state court would have concurrent jurisdiction over the matter,
851 F. Supp. at 821-22, 822 n.1; see also Akin v. Ashland Chem., supra, 156 F.3d at 1034.

16

Plaintiffs argue that the Enclave Clause, U.S. Const. art. I, § 8, cl. 17, requires the federal government affirmatively act to acquire exclusive jurisdiction over the land from the state for property used for specified purposes (id. at 7), see United States v. Johnson, 994 F.2d 980, 984-85, 981 (2d Cir. 1993) (parcel within Brooklyn Navy Yard); 40 U.S.C. § 3112. Plaintiffs argue that Garlock has not proved that Virginia or Alaska ceded exclusive jurisdiction to the United States (id. at 7-8), or had not done so in 1966-68 when plaintiff was on these bases (Docket No. 29, Pls. Supp'al Memo. at 4). During oral argument, they contended that Garlock failed to produce deeds or statutory enactments declaring the conveyance of the base properties from the states to the United States. If these bases were federal enclaves presumably federal common law for torts committed upon those enclaves would apply.

In Johnson, defendant was convicted of murder and attempted murder and other offenses under federal criminal law for offenses committed on the Brooklyn Navy Yard, New York State had transferred exclusive jurisdiction to much of the Brooklyn Navy Yard to the United States. During World War II, the United States acquired a parcel at issue in the Johnson criminal case as part of the Navy Yard and New York deeded exclusive jurisdiction to the United States for that parcel, 994 F.2d at 983. The Second Circuit held that the United States affirmatively accepted exclusive jurisdiction over the Navy Yard parcel by following New York's law for succession, an option available for acquiring exclusive federal jurisdiction under 40 U.S.C. § 3112 (then § 255), id. at 985.

Plaintiffs at oral argument cited, for example, Sinicki v. General Electric, No. 05CV508, 2005 U.S. Dist. LEXIS 13446 (N.D.N.Y. July 7, 2005), in which Judge McAvoy held that defendant failed to show that the Malta Test Station was ever a federal enclave. The court found

that defendant failed to show that New York sold the property or that it otherwise ceded it to the United States. It held that the Enclave Clause required a purchase of the property by the federal government; there, the Malta Test Station was acquired by eminent domain, id. at *4-5.

Personal injury action for asbestos exposure while on a federal enclave is subject to federal question jurisdiction and may be removed to federal courts, Fung v. Abex Corp., 816 F. Supp. 569 (N.D. Cal. 1992); see Sinicki, supra, 2005 U.S. Dist. LEXIS 13446, at *3 (citing Akin v. Ashland Chem., supra, 156 F.3d 1030); Adams v. Alliant Techsystems, Inc., 201 F. Supp. 2d 700, 704 (W.D. Va. 2002) (personal injury claims on federal enclave, here the Radford Army Ammunition Plant, are subject to federal question jurisdiction). In Adams, the district court held that the Commonwealth of Virginia ceded all jurisdiction (except service of process) to the United States for the Radford Army Ammunition Plant, 201 F. Supp. 2d at 705. Defendants, contractors at the plant sued for hearing loss by plaintiff employees there, argued that Virginia law did not apply within this federal enclave. The district court held that, technically, Virginia law did not apply to these claims but plaintiffs' personal injury claims arising from that arsenal were federal claims, id., with 16 U.S.C. § 457 adopting state law as federal substantive law for wrongful acts within federal reservations, 201 F. Supp. 2d at 705-06. The court concluded that, for federal question purposes, personal injury actions arising on federal enclaves are subject to federal question jurisdiction, see id. at 705 n.4, apparently relying upon the Enclave Clause to establish federal question jurisdiction. In Fung, plaintiff was exposed to asbestos in submarines based at the Mare Island Shipyard, a United States Navy facility, and other federal facilities, 816 F. Supp. at 571. Defendants also claimed plaintiff's exposure was due to construction on submarines pursuant to a federal contract, id. The district court there held that the exposure to

18

asbestos occurred while on federal enclaves or vessels, and their action arose under 28 U.S.C. § 1331, 816 F. Supp. at 571 (citing Mater v. Holley, 200 F.2d 123 (5th Cir. 1952) (Fort McPherson held to be federal enclave)). Thus, the Enclave Clause by itself provides the federal law basis for this Court's subject matter jurisdiction.

Next, to have the Enclave Clause apply here Garlock needs to show that Virginia or Alaska ceded exclusive jurisdiction to the United States and the United States affirmatively accepted exclusive jurisdiction over the bases, either by showing the filing of a notice of acceptance with the governors of Virginia or Alaska, or "in another manner prescribed by the laws of the State where the land is situated," 40 U.S.C. § 3112(b). At oral argument, Garlock's counsel stated that she uncovered what she produced to date in her responding papers due to the expedited nature of this hearing and had outstanding Freedom of Information and other requests.

(1)    Virginia

Plaintiff first worked at the Langley Air Force Base, Hampton, Virginia, in 1966 (see Docket No. 29, Pls. Supp'al Memo. at 4). He testified that he worked as a steam fitter in the main buildings of the base from May to November 1966, working on the steam lines among the main buildings (Docket No. 1, Notice of Removal, Ex. D, Pl. EBT Tr. at 45-47, 69-70, 77-78).

Virginia statutes retain jurisdiction and require an express deeding of additional jurisdiction to the United States by the Governor and Attorney General, and acceptance by the United States under 40 U.S.C. § 3112, Va. Code Ann. §§ 1-400, 1-401. Garlock points to Virginia Code § 7.1-21 which conferred exclusive jurisdiction to the United States over the Langley base (Docket No. 26, Garlock Memo. at 8) and notes the 1962 inventory listing Langley as under the United States' exclusive jurisdiction (Docket No. 27, Garlock Atty. Aff. ¶¶ 27-28,

19

Ex. F, at 803 (Langley coded as "1," exclusive federal jurisdiction[6])).  Garlock does not include a

more current survey by the General Services Administration or like agency but produced at oral

argument one of the two extant copies of the 1962 volume.

According to the GSA survey, parcels for the majority of Langley Air Force Base were

acquired between 1916 and 1942, with federal acceptance of jurisdiction by August 25, 1942

(id.).  Garlock also presents federal government plans or programs for Langley stating

affirmatively that the United States has exclusive jurisdiction over that property (id. Exs. C, at 2

(public health assessment by the United States Department of Health and Human Services,

Langley purchased by the War Department in 1917), E, Appendix I at I2 (NASA Langley

Research Center emergency plan, Langley and neighboring NASA Langley Research Center

covered by "Exclusive Federal jurisdiction"); id. Garlock Atty. Aff. ¶¶ 24 (Langley described as

"federally owned"), 26).

---

[6]"Exclusive legislative jurisdiction" was defined in that study as "this term is applied
when the Federal Government possesses, by whichever method acquired, all of the authority of
the State, and in which the State concerned has not reserved to itself the right to exercise any of
the authority concurrently with the United States except the right to serve civil or criminal
process in the area for activities which occurred outside the area," Docket No. 27, Ex. F.
　　Code 2 for "concurrent legislative jurisdiction" was defined as "those instances wherein
in granting to the United States authority which would otherwise amount to exclusive jurisdiction
over an area, the State concerned has reserved to itself the right to exercise, concurrently with the
United States, all of the same authority," Docket No. 27, Ex. F.
　　Code 4 for "proprietorial interest only" was defined as "apply[ing] to those instances
wherein the Federal Government has acquired some right or title to an area in a State, but has not
obtained any measure of the State's authority over the area.  In applying this definition,
recognition should be given to the fact that the United States, by virtue of its functions and
authority under various provision of the Constitution, has many powers and immunities not
possessed by ordinary landowners with respect to areas in which it acquires an interest, and of the
further fact that all its properties and functions are held or performed in a governmental rather
than a proprietary capacity," id.

Plaintiffs question the admissibility of Garlock's Internet research and argue that they fail to meet the tests set forth in <u>Johnson</u> (Docket No. 29, Pls. Supp'al Memo. at 5-8). They note that the 1962 GSA report cited by Garlock notes that a 722 acre parcel at Langley was owned by the United States but only in a proprietary interest, concluding that Garlock failed to show exclusive jurisdiction over all of that base (<u>id.</u> at 8; <u>see</u> Docket No. 27, Ex. F, at 803). That parcel was acquired between 1942 and 1959, and, as noted below, Virginia had concurrent jurisdiction with the United States over that parcel, <u>see</u> 1963-1964 Op. Atty. Gen. Va. 77, 1964 Va. AG LEXIS 265, at *2-3 (1964), <u>infra</u>. Plaintiffs argue that Virginia Code § 1-400(c) favors concurrent federal and state jurisdiction (Docket No. 29, Pls. Supp'al Memo. at 9). During the oral argument, plaintiffs point out that Garlock has not produced deeds from Virginia to the United States for any of the Langley parcels or a survey for any Langley parcel to tell whether the locations where plaintiff worked were part of a federal enclave.

In its own research, the Court found a Virginia Attorney General's opinion that may be relevant. When asked about the enforcement of Virginia advertising restrictions upon a business somewhere on Langley Air Force Base, the Virginia Attorney General opined that

"The area upon which Langley Field is located was acquired by the United States during World War I. By Chapter 382, Acts of 1918, the United States was granted exclusive jurisdiction over such lands, the only right reserved by the State being the right to serve civil and criminal process thereon. If any additional land for this air force base was obtained by the United States after 1936, then concurrent jurisdiction is vested in the State according to the provisions of § 7-19 of the Code of 1930, which would include the authority to impose a license tax on businesses operated thereon. After 1936, in order to obtain the exclusive jurisdiction over lands acquired, a deed executed by the Governor and the Attorney General under the provisions of § 7-24 of the Code is necessary. I am not advised whether the activities which you seek to regulate or prohibit are on an area acquired subsequent to 1936 upon which Virginia has concurrent jurisdiction. Only an examination of the records of York County and Elizabeth City County would

disclose when the United States acquired this area and whether over the portion, if any, acquired after 1936 Virginia has ceded exclusive jurisdiction under the provisions of § 7-24 of the Code.

"Assuming that the entire area comprising Langley Field was acquired by the United States prior to 1936, I am of the opinion that the State of Virginia has no authority to prosecute the violation of § 54-396 and § 54-398.26, Code of Virginia  (1950) as amended."

1963-1964 Op. Atty. Gen. Va. 77, 1964 Va. AG LEXIS 265, at *2-3.  This opinion (almost

contemporaneous to when plaintiff was stationed on Langley) expressly did not distinguish

parcels within the Langley base, in fact the Attorney General announced that he did not know

where on that base (relative to when acquired by the United States) the activity at issue was to

occur, id.  This is similar to the parcel at issue in Johnson, supra, 994 F.2d at 983, but without the

pedigree of the Brooklyn Navy Yard parcel found to have been ceded to the United States in

Johnson.

But Garlock did not point out this source and the evidence it has produced does not

clearly establish exclusive federal jurisdiction over the entire Langley base.  While plaintiff

testified that he worked on steam lines connecting the base's main buildings (Docket No. 1,

Notice of Removal, Ex. D, Pl. EBT Tr. at 45-47, 69-70, 77-78), no one has stated where the main

buildings or their steam lines were or whether that property is part of the 2,474 acres acquired by

1942 or part of the 722 acres acquired between 1942 and 1959 which has concurrent Virginia and

federal jurisdiction (see Docket No. 1, Ex. F, at 803), cf. Johnson, supra, 994 F.2d at 983-85);

1964 Va. AG LEXIS 265, supra, at *2-3, and when the federal government acquired its interest

in that parcel.  Garlock bears the burden of showing the existence of federal question jurisdiction,

in particular that (if a federal enclave is claimed) that the federal government had exclusive

jurisdiction over the site where plaintiff was exposed. Garlock's other exhibits are

environmental studies for Langley Air Force Base (Docket No. 27, Ex. C) with a general

declaration that the federal government owned the base, or the emergency plan for NASA's

facility at the base (id. Ex. E), which has a separate listing in the 1962 GSA survey (id. Ex. F, at

803, Langley Research Center). The Research Center was also listed in the GSA survey as the

United States owned only as a code 4, proprietorial interest in it.

On the facts alleged to date, this Court would have to assume, as the Virginia Attorney

General did in his 1964 opinion, that plaintiff was exposed on "Langley Field," the bulk of the

base that was acquired prior to 1936 to have exclusive federal jurisdiction over it to declare that

portion of the base to be a federal enclave; the main buildings of the base probably would be part

of the bulk of the base which the United States has exclusive jurisdiction. Garlock, however, has

the burden of showing that this Court has subject matter jurisdiction, the Court cannot make that

assumption. As a result, Garlock **has not** established the existence of a federal enclave at

Langley where plaintiff worked to form a basis for federal question jurisdiction.

(2)    Alaska

The Court next examines whether there was federal enclave in Alaska. Plaintiff also

worked at two Air Force facilities in Alaska, Elmendorf and Campion in 1967-68 (see Docket

No. 29, Pls. Supp'al Memo. at 4), although plaintiffs contend that Richard Zglinicki was exposed

to asbestos only at the latter facility (see Docket No. 1, Notice of Removal ¶ 7; Docket No. 20,

Pls. Memo. at 6; id., Ex. D, Pl. EBT Tr. at 69, 70; Docket No. 27, Ex. B, Pl. Trial Tr. at 54-55).

Garlock notes that Campion was acquired as an air base in 1952, prior to Alaska's statehood

(Docket No. 27, Garlock Atty. Aff. ¶ 29, Ex. G, U.S. Health & Human Services public health

23

assessment, at 3). Campion Air Station is not listed among the federal properties in the 1962

GSA report, but it lists Air Force properties acquired between 1891 and 1959 (when Campion

was acquired) as totaling 144,184 acres and classified as code "2" or concurrent legislative

jurisdiction[7]. Under section 5 of the Alaska Statehood Act, the United States retained title to

property that it possessed prior to statehood (id. Garlock Atty. Aff. ¶ 30; Docket No. 26, Garlock

Memo. at 8). Garlock found an Alaska Department of Environmental Conservation study that

identified Campion as owned by the "U.S.D.O.D.–Air Force–Elmendorf" (Docket No. 27,

Garlock Atty. Aff. ¶ 25, Ex. D). That report itself, however, may question whether the United

States obtained exclusive jurisdiction over that base if the Air Force is answering to a state

environmental agency regarding its property.

Plaintiffs contend that the Alaska Statehood Act created concurrent jurisdiction over

federal bases in that state unless Congress expressly asserted exclusive jurisdiction in a separate

enactment (Docket No. 29, Pls. Supp'al Memo. at 7, 8-9, quoting Alaska Statehood Act, § 11(b),

discussed infra).

The Court also found that the Alaska Attorney General opined that "Because the Alaska

Statehood Act reserves exclusive federal jurisdiction only in Mt. McKinley National Park, and

reserves the power of exclusive legislation only over military reservations (generally speaking),

on other federal property in Alaska the state definitely has [concurrent sic] jurisdiction,"

1980 Op. (Inf.) Alaska Atty. Gen. (Oct. 10, 1980), 1980 Alas. AG LEXIS 413, at *3-4 (1980),

concluding that Alaska enjoys concurrent jurisdiction with the United States over national

---

[7]At oral argument, the parties produced copies of the pages from the GSA survey
involving Alaska.

monument property, id. at *4.  Both Elmendorf and Campion were federal military bases that predated Alaska's statehood in 1959.

The Alaska Statehood Act, Pub. L. No. 85-508, § 11(b), 72 Stat. 339 (1958) (codified as amended at 48 U.S.C.A. prec. § 21), reserved for the United States the exercise by Congress of exclusive legislation under the Enclave Clause over military, Air Force, naval, and Coast Guard reservations (including the naval petroleum reserve) as prior to statehood, while excepting Alaska's power to serve civil and criminal process on these parcels.  That section, however, recognized that Alaska had concurrent jurisdiction, absent further action by Congress to exercise exclusive jurisdiction.  Federal exclusive jurisdiction (once asserted by Congress) would remain provided the particular parcel remain owned by the United States and was used for military purposes.  Id.; see also United States v. Alaska, 521 U.S. 1, 41 (1997).  Thus, Congress had to enact separate legislation asserting exclusive jurisdiction over bases or other pre-statehood federal property in Alaska.

The United States District Court for the District of Alaska, shortly after statehood, held that this provision granted Alaska concurrent jurisdiction over the naval petroleum reserve with the United States absent subsequent congressional action to exercise exclusive jurisdiction over that reserve, Petition of Long, 200 F. Supp. 313, 314-16 (D. Alaska 1961).  The court discussed the legislative history and congressional debate prior to enactment of the Statehood Act, noting that Congress expressly stated its desire to require a second act to claim exclusive jurisdiction and implied concurrent jurisdiction with Alaska save such further legislation.

Garlock, not discussing the above authorities, has not shown subsequent congressional action to exercise exclusive jurisdiction over Campion.

25

Thus, Campion and Elmendorf are subject to concurrent jurisdiction of Alaska and the United States, and not exclusive federal jurisdiction to create a federal enclave for federal question jurisdiction.

With the federal enclave status of the Langley Air Force Base in Virginia unclear from the facts asserted herein, Garlock has failed to show either alleged asbestos exposure site were federal enclaves to create federal question jurisdiction. Thus, plaintiffs' motion to remand is **granted** on the basis of the lack of federal subject matter jurisdiction.

> b.    Remand and Multidistrict Litigation

The determination of whether a federal court has jurisdiction (be it this court or a transferee court under the Multidistrict Litigation statute) need not be deferred until this case is formally transferred. Although Garlock contends that the Multidistrict Litigation Court has confronted this jurisdictional issue before, this Court's research has not found rulings from the Eastern District of Pennsylvania on whether Langley or Campion were federal enclaves or any published ruling regarding federal enclaves generally. In fact, since 1991 and the establishment of a Multidistrict Litigation court for federal asbestos cases, the Court found twenty-five decisions by district courts <u>other than</u> the Eastern District of Pennsylvania considering federal enclave jurisdictional questions.[8]

---

[8]<u>See</u> <u>Faulk v. Owens-Corning Fiberglass Corp.</u>, 48 F. Supp. 2d 653, 657 n.2 (E.D. Tex. 1999) (conditional transfer order pending, court retained jurisdiction over remand motion); Durham v. Lockheed Martin Corp., 445 F.3d 1247 (9th Cir. 2006); <u>Adams</u>, <u>supra</u>, 201 F. Supp. 2d 701; <u>Hines v. AC & S, Inc.</u>, 128 F. Supp. 2d 1003 (N.D. Tex. 2001) (remanding due to untimely notice of removal); <u>Anderson v. Crown Cork & Seal</u>, 93 F. Supp. 2d 697 (E.D. Va. 2000); <u>McGinty v. Anchor Packing Co.</u>, No. C 99-3786 SI, 1999 U.S. Dist. LEXIS 14294 (N.D. Cal. Sept. 3, 1999); <u>Fung</u>, <u>supra</u>, 816 F. Supp. 569; <u>see also</u> <u>McCormick v. C.E. Thurston & Sons</u>, 977 F. Supp. 400 (E.D. Va. 1997) (holding that aircraft carrier was doubtful as a federal enclave). Several cases turned on whether the removing defendants obtained consent of all defendants to

For example, in <u>Freiberg v. Swinerton & Walberg Property Services</u>, 245 F. Supp. 2d 1144, 1149 n.2 (D. Colo. 2002), the asbestos Multidistrict Litigation court advised the district court to proceed to decide a pending remand motion despite the conditional transfer of these cases to the transferee court.  Defendants did not pursue removal on the basis of federal enclave (since they could not get all defendants to consent to removal, <u>id.</u> at 1149 n.3) and argued on federal officer jurisdiction, <u>id.</u> at 1148-49.  The district court rejected federal officer jurisdiction and remanded the case to state court, <u>id.</u> at 1152-56.  The United States District Court for the Northern District of California also has ruled on a pending remand motion despite a conditional transfer order to the Multidistrict Litigation court.  <u>Viala v. Owens-Corning Fiberglass Corp.</u>, No. C 94-0399 EFL, 1994 U.S. Dist. LEXIS 4824, at *3 (N.D. Cal. Apr. 13, 1994).

The specialized expertise developed by that court in asbestos matters is not applicable to deciding this basic, jurisdictional question.  Although Garlock argues that this Court should defer decision until the transfer process is completed, no one has shown that exposure to asbestos at federal military installations is common enough that it would be more efficient to have the Multidistrict Litigation court resolve this issue.  As discussed above, delving into whether particular parcels within military bases are or are not "federal enclaves" is very fact specific.  This individual analysis should be dealt with by the transferor court.  Therefore, this Court orders that this action **be remanded**.

---

the removal, <u>e.g.</u>, <u>Nguyen v. Allied Signal</u>, No. C 98-03616 SI, 1998 U.S. Dist. LEXIS 15517 (N.D. Cal. Sept. 28, 1998); <u>Yap v. Owens-Corning Fiberglass Corp.</u>, No. C-94-4450 EFL, 1995 U.S. Dist. LEXIS 3779 (N.D. Cal. 1995).

c.     Federal Question Jurisdiction

If somehow either Langley or Campion is found to be a federal enclave, plaintiffs still

argue that Congress had to establish statutes that create a federal cause of action in order for this

Court to exercise original jurisdiction (Docket No. 20, Pls. Memo. at 8-9), and that the Enclave

Clause by itself cannot be used as a basis for federal question jurisdiction.  Cases discussed

above applying federal enclave jurisdiction, however, found that the Enclave Clause itself was

sufficient grounds for federal question jurisdiction without requiring some additional federal

provision.  See, e.g., Akin, supra, 851 F. Supp. at 822 & n.1 (workplace exposure to toxic

emissions); Fung, supra, 816 F. Supp. at 571 (workplace asbestos exposure); Adams, supra,

201 F. Supp. 2d at 705-06, 705 n.4 (workplace exposure to excessive noise); Sinicki, supra,

2005 U.S. Dist. LEXIS 13446, at *2, 3 (workplace explosion of rocket fuel, citing Akin v.

Ashland Chem., supra, 156 F.3d 1030).  Garlock, however, needed to show that plaintiff was

exposed on a federal enclave.  Since Garlock did not do this, and fails to show any other basis for

federal jurisdiction, plaintiffs' motion to remand is **granted**.

C.     Timeliness of the Removal

For completeness, the Court next considers the timing of Garlock's Notice of Removal

raised in plaintiffs' objection.  Garlock was served with the Summons and Complaint[9] on

March 22, 2007, and dated and filed this Notice of Removal[10] on April 26, 2007 (Docket No. 1,

Notice of Removal ¶ 3).

---

[9]As stated above, the Summons and Complaint were stamped received by Garlock on
March 26, 2007, Docket No. 1, Notice of Removal, Ex. A.

[10]Plaintiffs argue that the Notice was filed on April 27, 2007, Docket No. 20, Pls. Memo.
at 4, but the Court's docket indicates that the Notice was filed the day before.

28

"The notice of removal of a civil action or proceeding shall be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

"If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable,"

28 U.S.C. § 1446(b). If the receipt of the Complaint is used as the start date, the next business day thirty days from March 22, 2007, is Monday, April 23, 2007, see Fed. R. Civ. P. 6(a)(calculating time, if the last day is a Sunday, the period runs to the next business day).

Plaintiffs answered interrogatories on April 2, 2007, disclosing when and where plaintiff was exposed to asbestos dust. On April 23, 2007 (and previously on April 16 and 17, 2007), plaintiff testified that his only asbestos exposure occurred at the air bases (Docket No. 1, Notice of Removal ¶ 7). Plaintiffs argue that Garlock was on notice of possible federal jurisdiction from the Complaint[11] (as admitted by Garlock's counsel, Docket No. 20, Pls. Memo. at 4) and from the Answer of co-defendant Buffalo Pumps (Docket No. 1, Notice of Removal, Ex. E, ¶ 23, Mar. 26, 2007), which asserted a federal government contractor's defense from In re Eastern & Southern District Asbestos Litigation, 897 F.2d 626 (2d Cir. 1990), putting Garlock and the other defendants on notice of possible federal jurisdiction (Docket No. 20, Pls. Memo. at 4-5). Plaintiffs state that they alleged in paragraph 3 of their Complaint the disclaimer of any injury while on a federal enclave to avoid removal of their case to federal court (id. at 4 n.3).

---

[11]Plaintiffs cite to paragraph 3 of the Complaint where they disclaim any action for injuries caused by exposure to asbestos dust that occurred on a federal enclave, see Docket No. 20, Pls. Memo. at 4.

29

Garlock argued in the Notice of Removal that the removal time started later than the service of the Complaint (Docket No. 1, Notice of Removal ¶ 8), apparently referring to receipt of plaintiffs' interrogatory answers from April 2, 2007 (see id. ¶ 6, Ex. C), and subsequent deposition and trial preservation testimony (see id. ¶ 7, Ex. D). In opposing this motion, Garlock expressly states that it first learned of the possible federal claims from plaintiff's interrogatory answers of April 2, 2007 (Docket No. 27, Garlock Atty. Aff. ¶¶ 8-10). The Complaint expressly disclaimed federal enclave (or federal contractor) liability, so when Garlock's counsel received the Complaint she believed that there was no basis for removal (id. ¶¶ 4-7). Plaintiff's subsequent deposition refuted the Complaint's allegation of not claiming exposure on a federal enclave since plaintiff's exposure was only from being on federal bases (id. ¶ 12). Using the April 2, 2007, date, Garlock's April 26, 2007, Notice becomes timely (see id. ¶ 16).

The timeliness of a removal is not jurisdictional, its assertion may be barred by estoppel, Staples v. Joseph Morton Co., 444 F. Supp. 1312, 1313 (E.D.N.Y. 1978). But this timeliness is strictly construed by the courts, Martropico Compania, supra, 428 F. Supp. at 1038, 1036 (remanding action commenced in July 1976 on petition and notice of removal of January 1977); see also Stack v. Strang, 191 F.2d 106, 108 (2d Cir. 1951) (remanding untimely removal after former twenty-day period for filing notice). Section 1446(b) has two different possible starting points for the removal period, either when the defendant receives the Complaint alleging a basis for federal jurisdiction or after service of the Complaint when the defendant receives any pleading, motion, order or other paper that suggests federal jurisdiction. Here, Garlock argues that it learned of possible federal jurisdiction when plaintiff answered interrogatories that he was

exposed to asbestos on a federal enclave, despite the denial in the Complaint that their claims arose from a federal enclave.

Based on Garlock later learning of the possible federal claim from plaintiff's interrogatory answers, Garlock's notice of removal is timely.  As discussed above, due to the absence of federal subject matter jurisdiction in this case, plaintiffs' motion to remand on that basis is **granted**.

As provided in 28 U.S.C. § 1450, "all injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect . . . ."  The Court Clerk shall mail a certified copy of this Order to the Erie County Clerk, the court clerk for New York State Supreme Court, Erie County, see N.Y. Const. art. VI, § 6, subdiv. (e); N.Y. County Law § 525(1).  Pursuant to the conditional transfer order, counsel shall notify the Judicial Panel on Multidistrict Litigation of this Order to remand.

D.    Costs

Plaintiffs also seek recovery of their motion costs in seeking removal of this action (Docket No. 19).  That motion is also **granted**.  Plaintiffs are to submit their costs for their motion within five (5) days of entry of this Order.

## CONCLUSION

For the reasons stated above, plaintiffs' motion to remand this action to New York State Supreme Court (Docket No. 19) is **granted**.  Pursuant to 28 U.S.C. § 1447, the Clerk of Court is directed mail a certified copy of the Order of remand to the Erie County Clerk, the clerk of the New York Supreme Court from which this case was removed.  Counsel are to notify the Judicial

Panel on Multidistrict Litigation of this Order.  Plaintiffs are to submit their costs for making this

motion within five (5) days of entry of this Order.

      So Ordered.


                                     /s/ Hugh B. Scott
                                     Hon. Hugh B. Scott
                          United States Magistrate Judge

Buffalo, New York
June 4, 2007

# Exhibit C

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANN HAUCK,

                 Plaintiff,

-vs-                             Case No.  6:04-cv-1835-Orl-28DAB

BORG WARNER CORP., DAIMLER
CHRYSLER CORPORATION, DANA
CORPORATION, d/b/a Dana Racine
Corporation, f/k/a Spice Manufacturing
Corp., FORD MOTOR COMPANY,
GENERAL MOTORS CORPORATION,
GENUINE PARTS CO., GOODYEAR TIRE
AND RUBBER COMPANY, HONEYWELL
INTERNATIONAL, INC., f/k/a Allied-
Signal, Inc., BENDIX CORPORATION,
MACK TRUCKS, INC., MAREMONT
CORPORATION, NAVISTAR
INTERNATIONAL TRANSPORTATION
CORP., PNEUMO ABEX CORPORATION,
STEEL GRIP, INC., f/k/a Industrial
Gloves, Co., f/k/a Steel Grip Safety
Apparel Co., VELLUMOID, INC.,

                 Defendants.

---

## ORDER

This cause is before the Court on several pending motions following remand by the

Judicial Panel on Multidistrict Litigation.

### I.  Background

This case has a somewhat complicated procedural history.  Plaintiff initially filed suit

alleging claims arising from her asbestos-related disease in the Florida state circuit court in

Dade County, Florida, in July 2004.  (See Compl., Doc. 4).  By agreement of the parties after

the filing of a motion to transfer venue, the case was transferred to the Circuit Court, Eighteenth Judicial Circuit, in and for Brevard County, Florida. (See Agreed Order on Def.'s Mot. to Transfer Venue, entered in Case No. 04-16153 CA 42 in the Eleventh Judicial Circuit Court in and for Dade County, Florida, part of Composite Ex. E to Notice of Removal, see Doc. 24). The case was then removed to this Court on December 16, 2004. (Notice of Removal, Doc. 2). The jurisdiction of this Court was invoked based on diversity of citizenship. (See id. at 2).

Upon removal on December 16, 2004, several motions to dismiss that had been filed in the circuit court in Dade County were docketed in this court as pending. (See Docs. 8, 9, 11, 13, & 14). Although initially assigned to another judge, the case was reassigned to the undersigned district judge on January 5, 2005. (See Doc. 36). Upon receipt of the case and review of the file, and noting that no responses had apparently been filed to the docketed motions to dismiss, the Court granted the motions to dismiss (Docs. 8, 9, 11, 13, & 14) as unopposed. (Order, Doc. 42).

In January 2005, Plaintiff moved to remand the case to state court (Doc. 63) and moved to vacate the Order granting the five motions to dismiss (Doc. 65). This Court held a hearing on these motions on February 17, 2005. (See Mins. of 02/27/05 Hr'g, Doc. 100). However, in March 2005, before this Court had ruled on the motion for remand (Doc. 63) or the motion to vacate (Doc. 65), the Judicial Panel on Multidistrict Litigation ("the MDL panel") entered a Conditional Transfer Order covering this case. (See Doc. 107). The MDL panel entered a Transfer Order in June 2005, transferring this case to the Eastern District of Pennsylvania for consolidated pretrial proceedings (Doc. 127). This Court denied all then-

pending motions – including the motion to remand and the motion to vacate – as moot, "to be refiled, if appropriate, in the Eastern District of Pennsylvania" (Doc. 129, filed July 5, 2005).

On August 14, 2006, the MDL panel remanded all but the punitive and exemplary damages claims to this Court. (Doc. 143). On August 18, 2006, Plaintiff filed a "Notice of Remand from MDL, Notification of Outstanding Motions, Motion for Immediate Status Conference, and Conditional Motion for Expedited Trial" (Doc. 144) noting in part that on July 25, 2005 – shortly after the case had been transferred – she had renewed her motion for remand and her motion to vacate dismissal in the transferee court in the Eastern District of Pennsylvania, but the transferee court did not rule on those motions prior to the MDL panel's remand of her claims to this Court. (Doc. 144 at 2-3). This Court held a status conference on September 1, 2006, during which counsel again made argument regarding the motion for remand and the motion to vacate. (See Mins. of 09/01/2006 Status Conference, Doc. 162). The Court took these motions[1] under advisement and now issues rulings thereon.

## II. Discussion

### A. Motion to Vacate (Doc. 65)

When the case was removed from state court, several motions to dismiss that had

---

[1] As noted in Plaintiff's Notice of Remand (Doc. 144), the motions have not been refiled here; instead, Plaintiff relies on the motions (Docs. 63 & 65) already on file with this Court. As noted in the text, this Court previously denied these motions with leave to refile them (see Doc. 129); the original motions will now be reinstated and then ruled upon.

been filed in the state court in Miami were docketed in this Court as pending. These were motions filed by the following Defendants: Daimler Chrysler Corporation (Doc. 8); Bridgestone/Firestone North American Tire, LLC, Genuine Parts Company, Mack Trucks, Inc., and International Truck & Engine Company (Doc. 9); Honeywell International, Inc. (Doc. 11); Ford Motor Company (Doc. 13); and General Motors Corporation (Doc. 14). Three weeks later, when the case was reassigned to the undersigned district judge, these motions were granted as unopposed[2] because no opposition to the motions had apparently been made. (Order, Doc. 42).

Plaintiff then filed a motion to vacate (Doc. 65) the Order (Doc. 42) granting the motions to dismiss as unopposed. As outlined in the Background section above, when the case was transferred to the Eastern District of Pennsylvania the motion was denied by this Court, subject to being refiled in the Eastern District of Pennsylvania. The motion is now again before this Court for ruling.

In her motion to vacate, Plaintiff makes several arguments in support of her contention that this Court erred in granting the motions to dismiss as unopposed. First, Plaintiff asserts that an Omnibus Case Management Order in the circuit court in Dade County effectively ruled on the motions while they were pending in that Court, before venue was transferred to Brevard County. Second, Plaintiff contends that even if that Omnibus Case Management Order had not disposed of the motions, Plaintiff had noticed an "all open

---

[2]One of the motions (Doc. 9) was denied as moot as to Defendant Bridgestone/Firestone North America Tire, LLC because Plaintiff had voluntarily dismissed that defendant prior to removal. (See Order, Doc. 42; see also Notice of Voluntary Dismissal, Doc. 19).

motions hearing" in Brevard County and had thereby noted her opposition to the motions prior to the time that this matter was removed to this Court; Plaintiff points out that written oppositions are not required in state court. Third, Plaintiff notes that simultaneously with her motion to vacate she filed written responses to the motions to dismiss, and she argues that the delay in submitting a response was minimal and due to a good-faith misunderstanding by her counsel. Finally, Plaintiff contends that her motion for remand of the matter to state court based on defective removal should be resolved prior to the motions to dismiss.

The parties have treated the motion to vacate as one brought under Federal Rule of Civil Procedure 60(b). However, that rule applies only to final orders and judgments. The Order granting the motions to dismiss was not a final order. It merely granted the motions of several of the defendants in this case; no judgment was entered pursuant to that Order. Because the Order did not dispose of all parties and claims in this case, it "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed. R. Civ. P. 54(b); see also Burke v. Warren County Sheriff's Dep't, 916 F. Supp. 181, 183 (N.D.N.Y. 1996) ("Plaintiffs ostensibly bring this motion under Federal Rule of Civil Procedure 60(b). The court observes, however, that this motion is not properly brought under that rule. . . . Interlocutory orders and judgments are not subject to the strictures of Rule 60(b), but remain within 'the complete power of the court rendering them to afford such relief from them as justice requires.'") (quoting Fed. R. Civ. P. 60(b) 1946 amendment advisory committee's note); Gagne v. Carl Bauer Schraubenfabrick, GmbH, 595 F. Supp. 1081, 1083-84 (D. Me. 1984) ("[T]he standards of Rule 60(b) shall not be applied to this motion because the order granting summary judgment

-5-

[which adjudicated the rights of fewer than all parties] . . . is not a final judgment within the meaning of the Federal Rules of Civil Procedure. . . . The order is merely interlocutory and not a final judgment. As such, its revision is not subject to the restrictive provisions of Rule 60(b). . . . The Court retains plenary power to afford such relief as justice requires.") (footnote omitted); Watwood v. Barber, 70 F.R.D. 1, 8 (N.D. Ga. 1976) ("A decision whether to afford relief from an interlocutory order, upon motions for reconsideration filed immediately after the issuance of that order, is 'left subject to the complete power of the court . . . to afford such relief . . . as justice requires.'") (quoting Fed. R. Civ. P. 60(b) advisory committee's note) (alteration in original); cf. Doctor v. Seaboard Coast Line R.R. Co., 540 F.2d 699, 712 (4th Cir. 1976) (concluding that dismissal of complaint against labor union defendants was not subject to appeal but instead was, under Rule 54(b), "'subject to revision at any time before the entry of judgment adjudicating all the claims'") (quoting Fed. R. Civ. P. 54(b)).

The Court finds that justice requires that the Order granting the motions to dismiss be vacated. At the time the motions were granted as unopposed, this Court was not aware of the existence of, or of the parties' disagreement regarding the effect of, Omnibus Orders entered in the state circuit court in Dade County. However, it is clear from the record that the parties were in disagreement about the effect of those Orders. (See, e.g., Def. Honeywell Int'l Inc.'s Resp. to Pl.'s Mot. to Vacate, Doc. 73 at 2 n.1 ("The effect of the Omnibus Order in State Court was disputed, and the parties had differing interpretations of the mechanics of the Order . . . .")). It is also clear from the record that prior to the removal of the case to this Court, Plaintiff had expressed her belief that an Omnibus Order had

disposed of the motions to dismiss. (See Pl.'s Conditional Notice for Trial filed in state court, Ex. B to Doc. 72, at 2 & n.1 (stating that "Plaintiff[] believe[s] that the Motions filed by the Defendants were automatically addressed prior to transfer from Dade County by operation of the Omnibus Order and that, accordingly, the case is at issue" and noting that "[i]n the abundance of caution, Plaintiff has set an 'all open Motions' hearing for January 26, 2005 to address any Motions that the Defendants assert are currently pending and that prevent the case from being at issue"). This Court was not aware at the time of granting the motions to dismiss that Plaintiff had set an "all motions" hearing in Brevard County prior to the removal of this case; the Court has now located that notice in the record. (Notice of Hr'g, filed in Case No. 2004 CA 13357 in the Eighteenth Judicial Circuit Court in and for Brevard County, Florida, part of Composite Ex. E to Notice of Removal, see Doc. 24).

Furthermore, after the entry of this Court's Order granting the motions to dismiss of several of the Defendants as unopposed, and after Plaintiff had moved to vacate that Order, two other Defendants – Pneumo Abex Corporation ("Pneumo Abex") and Borg-Warner Corporation ("Borg-Warner") – moved to be dismissed nunc pro tunc. (Docs. 93 & 96, filed February 11 and February 14, 2005, respectively). The motions by Pneumo Abex and Borg-Warner were based on these defendants' adoption in Dade County circuit court of their "master" motions to dismiss – a practice which had been provided for by a Dade County circuit court Omnibus Order. (See Def. Pneumo Abex Corp's. Notice of Adoption of Master Adoption of Mots. to Dismiss, Mots. to Strike and Other Defense Motions; Burns Int'l Servs.'[3]

---

[3]Burns International Services was apparently formerly known as Borg-Warner Corporation.

Notice of Adoption of Its Master Answer, Affirmative Defenses, Motion to Dismiss and/or Strike All Pls.' Master Married/Single/Wrongful Death Complaints, filed in August 2004 in Case No. 04-16153 CA 42 in the Eleventh Judicial Circuit Court in and for Dade County, Florida, part of Composite Ex. E to Notice of Removal, see Doc. 24). In their nunc pro tunc motions, Pneumo Abex and Borg-Warner sought dismissal "on the same grounds as the other defendants were dismissed by Order dated January 6, 2005," (Doc. 93 at 1) – that is, a lack of opposition thereto by Plaintiff – and these Defendants noted that "[t]he failure to dismiss [them] is due to apparent inadvertence rather than based upon any distinction between the defendants," (id.; see also Doc. 96 at 2 ("It appears this Honorable Court inadvertently failed to dismiss Borg Warner Corporation on January 6, 2005.")). These "adopted master motions" by Pneumo Abex and Borg-Warner were not docketed as pending motions in this Court when the case was removed. The two motions for nunc pro tunc dismissal (Docs. 93 & 96) were denied as moot along with all other then-pending motions when the case was transferred by the MDL Panel. (Order, Doc. 129).

In sum, when the motions to dismiss were granted as unopposed this Court was not aware of Omnibus Orders entered in Dade County (or any potential effect thereof), nor was it aware of Omnibus motions filed by at least two of the Defendants. The Court also was not aware that Plaintiff had previously set an "all pending motions" hearing in Brevard County. Although Plaintiff should have filed some sort of opposition to the motions in this Court once the case was removed,[4] had the Court known of the setting of the motions hearing and the

---

[4]Local Rule 4.02(c): "When a case is removed to this Court with pending motions on which briefs or legal memoranda have not been submitted, the moving party shall file and

dispute regarding the effect of the Omnibus Order the Court likely would have given Plaintiff an opportunity to file responses to the motions rather than granting them as unopposed. Additionally, similarly-situated Defendants have been treated differently due to the confusing state of the record. Plaintiff promptly informed the Court of the prior activity in the case and moved to vacate the Order. The convoluted path that this case has taken to this Court, as well as the unusual omnibus proceedings in the Dade County court – with which this Court was previously unfamiliar – have led to rulings which should, and shall, be vacated in the interests of justice.

### B.  Motion for Remand (Doc. 63)

This case was removed on the basis of diversity of citizenship.  See 28 U.S.C. §§ 1332, 1441. It is undisputed that the parties to this case are diverse and that the requisite amount in controversy for diversity jurisdiction has been satisfied.  However, one of the Defendants – Steel Grip, Inc. ("Steel Grip") – did not consent to removal.

The Notice of Removal (Doc. 2) was filed on December 16, 2004 by Defendant Genuine Parts Company ("Genuine Parts").  In that Notice, Genuine Parts noted that all Defendants except Steel Grip consented to removal. However, Genuine Parts also asserted that Steel Grip had been "fraudulently joined in this action for the purpose of preventing the Defendants from removing this action" and that therefore Steel Grip's consent was not required for removal.  (Doc. 2 at 6). Plaintiff, on the other hand, contends that Steel Grip's

serve a supporting brief within ten (10) days after the removal in accordance with Rule 3.01(a) of these rules, and the party or parties opposing the motion shall then comply with Rule 3.01(b) of these rules."

consent was necessary in order for removal to be proper and that this case should be remanded to state court. In her motion for remand (Doc. 63), Plaintiff raises several arguments, including the failure of the Defendants to establish – as is their burden – that Steel Grip was "fraudulently joined." This argument is dispositive and persuasive, and Plaintiff's claims shall be remanded to state court.

"The removing party must show . . . removal is proper. An action removed to Federal court may be remanded to state court pursuant to Section 1447(c) [of Title 28] on the basis of any defect in the removal procedure. When confronted with a motion to remand, the removing party has the burden of establishing the propriety of removal." Telesis Mergers & Acquisitions, Inc. v. Atlis Fed. Servs., Inc., 918 F. Supp. 823, 828 (D.N.J. 1996) (citations and footnote omitted). Moreover, removal statutes – whether jurisdictional or procedural – are strictly construed, with doubts resolved in favor of remand to the state court. See, e.g., Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 32 (2002) ("The right of removal is entirely a creature of statute and a suit commenced in state court must remain there until cause is shown for its transfer under some act of Congress. These statutory procedures for removal are to be strictly construed.") (citations and internal marks omitted); Payne v. Overhead Door Corp., 172 F. Supp. 2d 475, 477 (S.D.N.Y. 2001) ("[E]ven though a defect in removal procedure is not jurisdictional, the removal statute, especially with reference to diversity jurisdiction cases, must be strictly construed.").

It is well settled that in a multiple-defendant case, in order for removal to be proper all defendants generally must consent. See, e.g., Russell Corp. v. Am. Home Assurance Co., 264 F.3d 1040, 1044 (11th Cir. 2001). However, the consent of fraudulently joined or

nominal defendants is not required.  See, e.g., Emrich v. Touche Ross & Co., 846 F.2d

1190, 1193 n.1 (9th Cir. 1988) ("Ordinarily, under 28 U.S.C. § 1446(a), all defendants in a

state action must join in the petition for removal, except for nominal, unknown, or

fraudulently joined parties."); Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d

1006, 1009 n.2 (3d Cir. 1987).

"The burden of establishing fraudulent joinder is a heavy one.  Where a plaintiff states

even a colorable claim against the [allegedly fraudulently-joined] defendant, joinder is proper

and the case should be remanded to state court.  Pacheco De Perez v. AT&T Co., 139 F.3d

1368, 1380 (11th Cir. 1998).  "A claim of fraudulent joinder must be supported by clear and

convincing evidence."  Clingan v. Celtic Life Ins. Co., 244 F. Supp. 2d 1298, 1301 (M.D. Ala.

2003).

"Fraudulent joinder" is generally invoked in diversity cases where one of the named

defendants is not diverse or is an in-state defendant[5]; the diverse or out-of-state

defendant(s) in such cases then contend that the plaintiff has sued the non-diverse or in-

state defendant in the state court case in order to prevent removal to federal court.  See,

e.g., Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998) ("Fraudulent

joinder is a judicially created doctrine that provides an exception to the requirement of

complete diversity.").  However, in this case, the consenting Defendants assert that Steel

Grip – a diverse defendant – has been improperly joined in order for removal to be avoided.

---

[5]A case invoking the federal court's diversity jurisdiction is "removable only if none of
the parties in interest properly joined and served as defendants is a citizen of the State in
which such action is brought."  28 U.S.C. § 1441(b).

Plaintiff contends that the doctrine of fraudulent joinder is not applicable where the parties are diverse, as in this case. Some courts have, however, applied a fraudulent joinder analysis – or the somewhat analogous "nominal party" exception to the unanimity requirement – to federal question cases or cases where diversity is not an issue. See, e.g., Farias v. Bexar County Bd. of Trs., 925 F.2d 866, 871-72 (5th Cir. 1991) ("Since equity is the major concern in the nominal party inquiry, no limitation should be placed on the type of jurisdiction used to remove the action from state to federal court. Similarly, the test for determining a nominal party . . . applies equally whether diversity or federal question jurisdiction is the mode of removal."); In re Pharm. Indus. Average Wholesale Price Litig., 431 F. Supp. 2d 109, 118 (D. Mass. 2006) (noting that "[a]s many courts have held, the rationale for the doctrine of fraudulent joinder applies with equal force in the context of removal based on federal question jurisdiction," and applying fraudulent joinder analysis to federal question case) ; cf. Hernandez v. Seminole County, 334 F.3d 1233 (11th Cir. 2003) (describing, but finding unreviewable, decision of this Court to remand federal question case to state court based on conclusion that non-consenting defendant was not a mere nominal party).

Nevertheless, an allegation of fraudulent joinder of a non-diverse or in-state defendant in a case removed on the basis of diversity, on the one hand, is different in character than an allegation of fraudulent joinder of a diverse defendant or in a federal question case on the other. In the former, the plaintiff's very act of joining the non-diverse or in-state defendant creates an impediment to removal under the plain language of the removal statutes. However, where a diverse or out-of-state defendant is allegedly

fraudulently joined (or where fraudulent joinder is alleged in a federal question case), the impediment to proper removal is not the plaintiff's joinder of that defendant but rather that defendant's lack of consent – a circumstance which is generally beyond the plaintiff's control.[6] Thus, in such cases, an allegation of collusion between the plaintiff and the non-consenting defendant is typically made. See, e.g., In re Pharm. Indus. Average Wholesale Price Litig., 431 F. Supp. 2d at 119.

In the instant case, there are vague allegations of collusion between Plaintiff and Steel Grip but no evidence thereof. On December 27, 2005, Steel Grip filed a "Response" to the Notice of Removal. (Doc. 30). In that Response, Steel Grip stated that it "has legitimate and valid reasons for not consenting to the removal of [asbestos cases] to Federal Court." (Doc. 30 at 2). Steel Grip stated that it prefers to litigate its cases in state court and that it "seeks to resolve the large amounts of pending asbestos cases against it as quickly and efficiently as possible." (Id. at 3). A few weeks later,[7] Plaintiff filed her motion for remand (Doc. 63).

The consenting Defendants assert that Plaintiff's law firm has brought numerous

---

[6] See generally Simpson v. Union Pac. R.R. Co., 282 F. Supp. 2d 1151, 1156 (N.D. Cal. 2003) ("Here the only obstacle to removal – the consent of all defendants – does not lie within the control of the plaintiffs and therefore is not susceptible to manipulation through improper allegations in the complaint. Absent collusion, plaintiffs could not have known in advance that the School District would refuse to join in removal, and so could not have affected the forum by advancing fraudulent claims against that particular defendant.")

[7] The docket reflects that Plaintiff initially electronically filed a motion for remand on January 18, 2005; that motion was terminated due to a lack of signature. (See docket entry for Doc. 60). The motion was then refiled on January 19, 2005 (Doc. 63) with the signature problem corrected. The Court rejects the consenting Defendants' assertions that the motion for remand was untimely filed.

asbestos cases and that it only names Steel Grip in cases where no non-diverse or in-state defendant is named – suggesting that Plaintiff does not sue Steel Grip where the case is not removable due to lack of diversity or the presence of an in-state defendant (and therefore Steel Grip's lack of consent is unnecessary to defeat removal). However, the evidence presented on this point is far from compelling and reveals that sometimes Plaintiff's firm sues Steel Grip, and sometimes it does not. The Court has been unable to draw the removing Defendants' suggested inference from the chart provided. (See Chart, "Steel Grip vs. Florida Defendant in Asbestos Cases," Ex. A to Doc. 80). Again, there is no direct evidence of a collusive agreement between Plaintiff and Steel Grip, and no evidence to counter Steel Grip's assertions that it has its own reasons – which it is entitled to have – for not wanting the case removed from state court.

Not only have the consenting Defendants not presented clear and convincing evidence of collusion, but they also have failed to otherwise establish fraudulent joinder of Steel Grip. "Joinder has been deemed fraudulent . . . when there is no possibility that the plaintiff can prove a cause of action against the [nonconsenting] defendant." Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998). "When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. 'If there is even a possibility that a state court would find that the complaint states a cause of action against [the nonconsenting defendant], the federal court must find that joinder was proper and remand the case to state court.'" Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997) (quoting Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983)). "[T]he district court must evaluate the

-14-

factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff. The federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties." Id. (citations omitted).

Plaintiff's claims are based on asbestos exposure beginning in her childhood at an automotive garage operated by her father. Steel Grip is a maker of allegedly asbestos-containing gloves used in welding. The consenting Defendants sought to remove this case to federal court after depositions of Plaintiff, her brother, and her mother had been taken and none of those deponents recalled welding occurring at the garage.

The consenting Defendants have failed to persuade this Court that Steel Grip has been fraudulently joined. As the Eleventh Circuit has instructed:

> For a plaintiff to present an arguable claim against an [allegedly fraudulently joined] defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that . . . defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law *might* impose liability on the facts involved." Because the procedures are similar while the substantive standards are very different, district courts must exercise extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them.
>     In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims. Although we have said that district courts may look beyond the face of the

-15-

> complaint, we emphasize that the district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent.

Crowe, 133 F.3d at 1541-42 (quoting B. Inc., v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. Unit A 1981)) (emphasis in original). The consenting Defendants in this case essentially seek for this Court to undertake a summary judgment inquiry. However, as stated in Crowe, summary judgment is not the appropriate standard here, and the "court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims." Id. Plaintiff's claims against Steel Grip are not "obviously fraudulent or frivolous."

Here, the record does not reflect a Plaintiff frivolously asserting far-fetched claims against a company from whom she could not conceivably recover; instead, it reflects Defendants who, disappointed at that company's refusal to consent, sought removal after discovery revealed potential problems with Plaintiff's proof against that company. However, an ultimate failure of proof is not the equivalent of a failure to state a cause of action. See Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998) ("The fact that the plaintiffs may not ultimately prevail against the individual defendants because of an insufficient causal link between the defendants' actions and the plaintiffs' injuries does not mean that the plaintiffs have not stated a cause of action for purposes of the fraudulent joinder analysis.").

In sum, the consenting Defendants have failed to meet their burden of establishing by clear and convincing evidence that Steel Grip was fraudulently joined. Therefore, the

failure of Steel Grip to consent to removal renders the removal procedurally improper.[8]

Plaintiff's claims shall be remanded to state court.

---

[8]Although the failure of the consenting Defendants to establish fraudulent joinder is dispositive of the motion to remand, one other issue raised by Plaintiff bears mentioning. Plaintiff asserts that the Notice of Removal was untimely filed because it was filed more than thirty days after service of the initial pleading, as required by 28 U.S.C. § 1446(b). The consenting Defendants contend, however, that the Notice was timely under the second paragraph of 28 U.S.C. § 1446(b), which provides that "[i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may be first be ascertained that the case is one which is or has become removable . . . ." (emphasis added). The removing Defendants contend that "the case was not removable when it was initially filed because Defendant Steel Grip refused to consent to removal," (Notice of Removal, Doc. 2 at 6) and that the Notice was filed within thirty days of receipt of "other paper" indicating that Plaintiff would not be able to establish her claims against Steel Grip.

Plaintiff appears to be correct that the Notice was untimely. This case, as stated by the initial pleading, was "removable" because it is a case described in 28 U.S.C. § 1441 – entitled "Actions removable generally"; it was brought in state court and of which this district court had original jurisdiction, see 28 U.S.C. § 1441(a), and because none of the defendants is a Florida citizen, 28 U.S.C. § 1441(b). Thus, the portion of Section 1446(b) upon which the Defendants rely is not applicable.

The fact that not all of the defendants consented to removal does not affect the matter's "removability" for the purposes of complying with 28 U.S.C. § 1446's procedural requirements. Taken to its logical extension, a finding that the consent of defendants affects "removability" would mean that a defendant's change of mind about whether to consent would restart the 30-day clock. Failure of all defendants to consent is a waivable procedural defect rather than a "removability" problem. See generally Hampton Paint Mfg. Co. v. Union Oil Co. of Cal., Civ. A. No. 91-104-NN, 1991 WL 274441, at *4 (E.D. Va. Dec. 16, 1991) ("[A] distinction must be made between the prerequisites identifying a removable case and the procedures that must be followed in removing such a case to federal court. The instant case was removable under 28 U.S.C. § 1441 at its inception, as it fell within the diversity jurisdiction of the federal courts and did not fall into specific, non-procedural exceptions provided for by Congress. In order to take advantage of the opportunity to remove, certain procedural requirements had to be met:  a notice of removal had to be filed within the thirty-day period provided by the statute and all defendants had to join in that notice.") (citations omitted).  But see Parker v. County of Oxford, 224 F. Supp. 2d 292, 294 (D. Me. 2002) (concluding that case was not "removable" initially where some defendants did not consent to removal and that the case "did not become removable until the nonconsenting Defendant was dismissed from the case").

### III.  Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.  The Order (Doc. 129) denying as moot the Motion for Remand (Doc. 63), denying as moot the Motion to Vacate (Doc. 65), and denying as moot the motions for nunc pro tunc dismissal (Doc. 93 & 96) is **VACATED** and those motions (Docs. 63, 65, 93, & 96) are **REINSTATED**.

2.  The Motion to Vacate (Doc. 65) is **GRANTED**, and the Order (Doc. 42) granting the motions to dismiss (Docs. 8, 9, 11, 13, & 14) as unopposed is hereby **VACATED** insofar as it pertains to Defendants Daimler Chrysler Corporation; Genuine Parts Company; Mack Trucks, Inc.; International Truck & Engine Company; Honeywell International, Inc.; Ford Motor Company; and General Motors Company.  The motions to dismiss (Docs. 8, 9, 11, 13, & 14) are hereby **REINSTATED**, except that the motion (Doc. 9) filed by Defendants Bridgestone/Firestone North American Tire, LLC, Genuine Parts Company, Mack Trucks, Inc., and International Truck & Engine Company remains **DENIED as moot** as to Defendant Bridgestone/Firestone North American Tire, LLC in light of the Notice of Voluntary Dismissal without Prejudice of Defendant Bridgestone/Firestone North American Tire, LLC filed by Plaintiff (Doc. 19).  (See also Order, Doc. 42 at 2-3).

3.  The Motion to Adopt (Doc. 150) is **GRANTED**.

4.  The Motion to Expedite (Doc. 144) is **DENIED as moot**.

5.  The Motion to Strike (Doc. 154) is **DENIED**.

6.  The Motion for Remand (Doc. 63) is **GRANTED**.  Plaintiff's claims, with the

exception of the punitive and exemplary damages claims which remain pending in the Easter District of Pennsylvania, are hereby **REMANDED** to the Circuit Court, Eighteenth Judicial Circuit, in and for Brevard County, Florida, Case No. 2004-CA-013357, *Ann Hauck v. Borg-Warner Corporation et al.* The pending motion for summary judgment (Doc. 159) and all other pending motions, including the motions to dismiss (Docs. 8, 9, 11, 13, 14, 93, & 96) are **DENIED without prejudice** to resubmission in the state court.

    7. This case shall be administratively closed while the punitive and exemplary damages claims remain in the district court for the Eastern District of Pennsylvania pursuant to transfer by the Judicial Panel on Multidistrict Litigation.

    **DONE** and **ORDERED** in Orlando, Florida this 12th day of October, 2006.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party

# Exhibit D

- Exhibit D.



F I L E D
CHARLES BACARISSE
District Clerk

SEP 0 6 2006

Harris County, Texas
By _____ 10:00am
Deputy

## JUDGE MARK DAVIDSON
201 Caroline, 9th Floor
Houston, Texas   77002

(713) 368-6020
FAX (713) 368-4317

September 5, 2006

Re:   Austin Richards, et ux. v. Carver Pump Company, et al; Cause no. 2006-
      22,116

Dear Counsel:

The court has carefully considered the Defendants' Motion for Dismissal for
Forum Non Conveniens in the above case.  Because this is not the last of these motions I
will be asked to determine, I am stating my reasons as a guide to the attorneys
representing clients in other asbestos cases.

All counsel are familiar with the fact that shortly after I became the MDL Judge
assigned to hear asbestos cases, I issued a ruling in the *Pomeranty* case which bemoaned
my inability to dismiss cases on grounds of forum non conveniens based on the language
of Section 71.051 of the Civil Practices and Remedies Code.  After that ruling, the
language of the statute was amended to significantly broaden the discretion of Texas trial
courts.  To my knowledge, this is the first time I have been asked to exercise the powers
given trial judges under the amended statute.

The facts in this case are, if anything, more compelling than those in *Pomeranky*.
There is absolutely no connection between the State of Texas and any element of
negligence, causation or damages.  It is apparently undisputed that the Plaintiff spent his
entire life, was exposed to asbestos, was diagnosed with mesothelioma and, in all
probability, will die in the state of Maine.  All of his co-worker witnesses, treating
physicians and family members live in Maine.  Based on these facts, I have struggled
with any way any attorney could argue with a straight face that the case belongs in Texas.

Then I reread the language of the new statute.  Section 71.051(b) states:

If a court of this state, on written motion of a party, finds that *in the
interest of justice* and for the convenience of the parties a claim or action to which

this section applies would be more properly heard in a forum outside of this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall dismiss the claim or action... (italics added)

Plaintiffs claimed in argument before the court that if the case is refiled in Maine, it will immediately be removed to Federal Court, and from there transferred to the Federal MDL. What will happen to the cases there? Apparently, the judge will not give the plaintiff an opportunity to have his case heard before his death. The judge will attempt to get the case to settle. When and if the case is remanded, there will have been little, if any, judicial decision making performed that will assist the trial court. It will sit in this court, if it does not settle, for several years before it is remanded. The case will then go to the end of the docket in the federal court to which it is assigned. This isn't just what I have been able to find out from conferring with federal judges around the nation – this is what the Judge D. Brock Hornby, Chief Judge of the Federal Courts of the District of Maine, wrote in *In re Maine Asbestos Cases*, 44 F.Supp.2d 368 (D. Me. 1999).

The Federal MDL is located in Pennsylvania. Therefore, my ruling on this motion will not decide whether the case will go to Texas or Maine. If it were, my ruling would be different. This ruling will decide whether Texas or Pennsylvania will be the forum of the case. If it is the Federal Court of Pennsylvania, it is certain that Mr. Richards will not be alive to have his day in court, and will die without knowing whether or not his widow will get a recovery from this case. A system of justice that would mandate such a result has nothing to do with the concept of justice.

My ruling on this motion might well have been different if the Defendants had assured me that no effort would have been made to remove this case to Federal Court. The Defendants were quite forthcoming that they would not waive their removal rights. Since they did not, I am unable to conclude that it is in the interests of justice to decline to accept jurisdiction over this case. I will therefore deny the motion.

I must admit that I did not think this would be the ruling I would make on the first Forum Non Conveniens motion I heard under the new statute. I am aware that under new leadership, the Federal MDL is beginning to try to devise a system that makes it less of a "black hole" than is has been in the past. My ruling on the next such motion I get will be different if the Federal MDL becomes a pre-trial court, as opposed to a settlement court. Even if it does not improve, my next ruling may be different if a waiver of removal to federal court is offered by Defendants.

I will sign an order denying the motion, so that any party wishing may initiate appellate review.

Respectfully submitted,

MARK DAVIDSON

# Exhibit E

# ASBESTOS MEDICINE SEMINAR

**DRI**
The Voice of the Defense Bar





This year's DRI Asbestos Medicine Seminar offers the latest medical and legal developments in the field, taught by an experienced faculty of physicians and attorneys. Medical experts will provide up-to-date information on various types of mesotheliomas, disease detection and diagnosis. A practical analysis of causation, including recent decisions affecting exposure and cause will be covered. Strategies for defending the "other cancers" and the importance of the 2006 Institute of Medicine study will be discussed. Learn more about the potential liability of equipment manufacturers and premises owners. Hear about the latest industrial hygiene technology and its impact on litigation. Strategize with some of the finest, most experienced litigators in this field. Please join us in San Diego and take advantage of this unique networking and learning opportunity.

ALBERT H. PARNELL

*Program Chair and Law Institute*

### What You Will Learn

- Latest developments in asbestos litigation
- Update on MDL 875 and its future impact
- Recent court decisions affecting causation
- Review of disease diagnosis and causation evidence
- Warning issues for premises owners
- Latest methods for defending "low dose" products
- Strategies for defending screened cases
- Defending the "other cancers" on the science

*Asbestos Medicine Seminar*

### WEDNESDAY, NOVEMBER 7, 2007

6:00 p.m.   REGISTRATION AND NETWORKING RECEPTION

### THURSDAY, NOVEMBER 8, 2007

CAPPUCCINO BAR

*Sponsored by*


**Pohlman**USA
Court Reporting

INTERNET CAFÉ

*Sponsored by* ♣ **McCaffery & Associates, Inc.**
*Historical Research*

7:30 a.m.   REGISTRATION AND CONTINENTAL BREAKFAST

8:15 a.m.   WELCOME AND INTRODUCTION
ALBERT H. PARNELL, *Hawkins & Parnell LLP*, Atlanta, Georgia

8:25 a.m.   MDL 875: NAVIGATING THE BLACK HOLE—ITS FUTURE AND RAMIFICATIONS FOR STATE COURTS
Hear about the current role of the MDL and its projected impact on existing and future cases.
DAVID CRAIG LANDIN, *Hunton & Williams LLP*, Richmond, Virginia

9:00 a.m.   SPREADING THE WEALTH BY SHARING THE RESPONSIBILITY
Many states now permit the submission of non-parties, including bankrupt companies and employers, to the jury for apportionment of responsibility. This section will provide ideas for broadly spreading responsibility, thereby reducing the "share" of trial defendants.
T. LYNN WALDEN, *Jenkins & Martin LLP*, Beaumont, Texas

9:40 a.m.   THE CHANGING WORLD OF CAUSATION — RECENT DECISIONS AND TRENDS AFFECTING EXPOSURE AND CAUSE
Courts around the country are tackling, as though for the first time, these questions: Is there evidence of sufficient exposure to asbestos to be the cause of plaintiff's injuries? Do friction products alone release enough respirable fibers to be the cause of plaintiff's injury? Is asbestos exposure without asbestosis sufficient to be a cause of lung cancer in a plaintiff who smoked cigarettes? How much exposure is required to support the "substantial factor" standard for causation?
SANDRA F. CLARK, *Mehaffy Weber PC*, Beaumont, Texas

10:15 a.m.   REFRESHMENT BREAK
*Sponsored by* EX**ponent**°

*November 8–9, 2007*

**10:35 a.m.**   TEXAS'S ASBESTOS MDL — THE FIRST THREE YEARS AND COMING ATTRACTIONS

The Texas Asbestos MDL is a unique system of administration of cases and is quite different from what its initial proponents and opponents envisioned. Judge Davidson will discuss developments to date and make predictions on upcoming issues.

HONORABLE MARK DAVIDSON, *11th District Court of Texas*, Houston, Texas

**11:15 a.m.**   PERITONEAL MESOTHELIOMA — AN UPDATE

Learn the latest in the field from an experienced medical expert.

VICTOR L. ROGGLI, M.D., *Duke University Medical Center*, Durham, North Carolina

**11:55 a.m.**   LUNCH *(on your own)*

**11:55 a.m.**   WOMEN'S NETWORKING LUNCHEON *(included in registration)*

*Sponsored by* **Segal McCambridge**
Segal McCambridge Singer & Mahoney

**1:20 p.m.**   POTENTIAL LIABILITY OF EQUIPMENT MANUFACTURERS FOR POST-SALE APPLICATION OF ASBESTOS-CONTAINING INSULATION AND OTHER PRODUCTS NOT SUPPLIED OR SPECIFIED BY THE EQUIPMENT MANUFACTURER

There is developing case law on product liability, forseeability and duty to warn, most of which, from a defense perspective, is going in the wrong direction. If plaintiffs win on this issue, it eliminates or severely hinders the state of the art, low dose and chrysotile defenses, as equipment manufacturers will be called upon to defend the insulation product.

GEORGE F. FITZPATRICK, JR., *Swanson Martin & Bell*, Chicago, Illinois

**1:55 p.m.**   THE CURRENT STATUS OF THE POTENTIAL LIABILITY OF PREMISES OWNERS AND OTHER WARNING AND NO WARNING ISSUES AND POTENTIAL DEFENSES

The world of the premises owner constantly changes, along with various warning issues. Additionally, equipment manufacturers are now subject to claims for a duty to warn of another manufacturer's products. Mr. Mesher will discuss these topics.

BARRY N. MESHER, *Lane Powell PC*, Seattle, Washington

**2:35 p.m.**   A PRACTICAL REVIEW OF DISEASE DIAGNOSIS AND CAUSATION EVIDENCE IN ASBESTOS LITIGATION

The methods and analytical techniques utilized in diagnosing disease and determining potential causative agents will be reviewed. The use of fiber burden studies, new advanced staining techniques, basic pathology analysis and clinical correlation will be discussed. The importance of fully developed medical and occupational history for evaluating and presenting legal challenges to expert opinions will be stressed.

EDWARD M. SLAUGHTER, *Hawkins Parnell & Thackston LLP*, Dallas, Texas

*Asbestos Medicine Seminar*

---

**3:15 p.m.** THE INDUSTRIAL HYGIENE WORLD AND ASBESTOS LITIGATION
Dr. Toca will discuss various aspects of current industrial hygiene technology and its potential impact on modern asbestos litigation.
FREDRICK M. TOCA, PH.D., CIH, CSP, *Atlantic Environmental Inc.*, Atlanta, Georgia

---

**4:00 p.m.** REFRESHMENT BREAK

*Sponsored by* EXponent®

---

**BREAKOUT SESSIONS**

---

**4:20 p.m.** BREAKOUT A: THE LOW DOSE STORY *(1 hour)*
**Moderator**
JOHN J. KUROWSKI, *Kurowski Bailey & Shultz LLC*, Swansea, Illinois

BREAKOUT B: NEW PLAINTIFF AND PRODUCT INVESTIGATION —
FOR THE NOVICE, THE EXPERIENCED AND EVERYONE ELSE *(1 hour)*
**Moderator**
EVELYN MCREE FLETCHER, *Hawkins & Parnell LLP*, Atlanta, Georgia
**Panelists**
JOHAN D. FLYNN, *DeHay & Elliston LLP*, Baltimore, Maryland
CATHERINE E. BOYD GOLDHABER, *Segal McCambridge Singer & Mahoney Ltd.*, Chicago, Illinois
MARK K. HSU, *Kasowitz Benson Torres & Friedman LLP*, New York, New York

BREAKOUT C: HISTORICAL PERSPECTIVE — GREAT MOMENTS IN ASBESTOS LITIGATION *(2 hours)*
**Moderators**
JAMES H. CROSBY, *Crosby Saad LLC*, Mobile, Alabama
MICHAEL E. HUTCHINS, *Kasowitz Benson Torres & Friedman LLP*, Atlanta, Georgia
ALBERT H. PARNELL, *Hawkins & Parnell LLP*, Atlanta, Georgia

---

**5:20 p.m.** BREAKOUT D: HOT TOPICS *(1 hour)*
DAVID CRAIG LANDIN, *Hunton & Williams LLP*, Richmond, Virginia

BREAKOUT E: BEST ASBESTOS JURY SELECTION IDEAS OF THE CENTURY *(1 hour)*
**Moderator**
ANGELA L. ABEL, *DecisionQuest*, Atlanta, Georgia

---

**6:20 p.m.** ADJOURN

---

**6:30 p.m.** NETWORKING RECEPTION

*Sponsored by* HAWKINS & PARNELL, LLP

*and* NAVIGANT
CONSULTING

6

*November 8–9, 2007*

## FRIDAY, NOVEMBER 9, 2007

CAPPUCCINO BAR

*Sponsored by*

**Pohlman** USA
*Court Reporting*

INTERNET CAFÉ

*Sponsored by* **McCaffery & Associates, Inc.**
*Historical Research*

**7:30 a.m.**    REGISTRATION AND CONTINENTAL BREAKFAST

**8:15 a.m.**    ANNOUNCEMENTS
ALBERT H. PARNELL, *Hawkins & Parnell LLP*, Atlanta, Georgia
MICHAEL E. HUTCHINS, *Kasowitz Benson Torres & Friedman LLP*, Atlanta, Georgia

**8:20 a.m.**    YOU BET YOUR (ETHICAL) LIFE
Legal ethics in asbestos litigation will be examined in the context of a series of game show questions, answers and hypotheticals.
DOUGLAS R. ELLIOTT, *Deutsch Kerrigan & Stiles LLP*, New Orleans, Louisiana
JANET L. MACDONELL, *Deutsch Kerrigan & Stiles LLP*, New Orleans, Louisiana

**9:20 a.m.**    BURNING PLAINTIFFS' STRAW MAN — PREPARING YOUR PMK WITNESS
Learn ways to deal with plaintiffs' strategy of making your corporate rep look bad with collateral "Notice of Asbestos Hazard Document" versus official interrogatory answers on notice.
JOHN M. FITZPATRICK, *Wheeler Trigg Kennedy LLP*, Denver, Colorado

**10:00 a.m.**    REFRESHMENT BREAK
*Sponsored by* **J&M** Jenkins & Martin, LLP.

**10:20 a.m.**    COMPLEX MEDICAL ANALYSIS — THERE ARE NO 'ROUTINE' CASES
Clinical, radiological, pathological and DNA findings in challenging asbestos cases will be covered.
I. ALLAN FEINGOLD, M.D., FRCP(C), FCCP, *South Miami Hospital*, Miami, Florida

**11:20 a.m.**    ROUND CELL MESOTHELIOMAS WITH AN EMPHASIS ON DECIDUOLD MESOTHELIOMAS
SAMUEL P. HAMMAR, M.D., *Diagnostic Specialties Laboratory*, Bremerton, Washington

**12:00 p.m.**    LUNCH *(on your own)*

*Asbestos Medicine Seminar*

| | |
|---|---|
| 1:20 p.m. | SUBSTANTIAL CONTRIBUTING FACTOR AND MESOTHELIOMA— HOW TO DEFEAT PLAINTIFFS' ARGUMENT THAT EVERY EXPOSURE CONTRIBUTES |
| | Learn ways to defeat plaintiffs' argument that every exposure contributes. |
| | BRUCE T. BISHOP, *Willcox & Savage PC*, Norfolk, Virginia |
| 2:00 p.m. | THE NEXT STEPS IN DEFENDING SCREENED CASES |
| | Discussion of (1) suspect companies/physicians and how these cases still appear in various jurisdictions, as well as how to conduct discovery and proceed, once a suspect company/physician is identified; (2) Impairment and positive rates in screenings versus literature; and (3) defense strategies to uncover and defend against still active screening processes. |
| | ANDREW L. KALISH, *Socha Perczak Setter & Anderson PC*, Denver, Colorado |
| 2:35 p.m. | THE EPIDEMIOLOGY OF THE "OTHER CANCERS"— A REVIEW OF THE IOM/NIH STUDY |
| | The association and causal connection between asbestos exposure and gastrointestinal, colorectal, esophageal, laryngeal and pharyngeal malignancies has remained controversial, despite continuing medical and scientific interest in this subject. The vital 2006 IOM study and recent literature on these malignancies will be explored. |
| | JOHN A. LABOON, *Segal McCambridge Singer & Mahoney Ltd.*, Austin, Texas |
| 3:15 p.m. | REFRESHMENT BREAK |
| | Sponsored by J&M Jenkins & Martin, LLP. |
| 3:35 p.m. | DEFENDING THE "OTHER CANCERS" ON THE SCIENCE |
| | Building on the previous session, this presentation will discuss the tools necessary to defend these cases at pretrial, *Daubert* and *Frye* hearings and at trial, on the medicine and science, using the 2006 IOM/NIH study, recent literature and other trial tactics. |
| | JOHN J. KUROWSKI, *Kurowski Bailey & Shultz LLC*, Swansea, Illinois |
| 4:15 p.m. | TRIAL PANEL—"OTHER CANCERS," LOW DOSE, CROSS EXAMINATION AND EXPERTS |
| | **Moderator** |
| | ALBERT H. PARNELL, *Hawkins & Parnell LLP*, Atlanta, Georgia |
| | **Panelists** |
| | BRUCE T. BISHOP, *Willcox & Savage PC*, Norfolk, Virginia |
| | SANDRA F. CLARK, *Mehaffy Weber PC*, Beaumont, Texas |
| | JOHN M. FITZPATRICK, *Wheeler Trigg Kennedy LLP*, Denver, Colorado |
| | JOHN J. KUROWSKI, *Kurowski Bailey & Shultz LLC*, Swansea, Illinois |
| | T. LYNN WALDEN, *Jenkins & Martin LLP*, Beaumont, Texas |
| 5:00 p.m. | ADJOURN |

8

*November 8–9, 2007*

**GENERAL INFORMATION**

## CLE Accreditation

This seminar has been approved for MCLE credit by the State Bar of California in the amount of 14.5 hours, including 1 hour of ethics credit. Accreditation has been requested from every state with mandatory continuing legal education (CLE) requirements. Certificates of attendance will be provided to each attendee. Attendees are responsible for obtaining CLE credits from their respective states. Credit availability and requirements vary from state to state; please check our website at **www.dri.org** for credit information for your state.

## Registration

The registration fee is **$645** for members and those who join DRI when registering and **$775** for non-members. The registration fee includes CD-ROM course materials, continental breakfasts, women's networking luncheon, refreshment breaks and networking receptions. If you wish to have your name appear on the registration list distributed at the conference and receive the CD-ROM course materials in advance, DRI must receive your registration by **October 19, 2007** *(please allow 10 days for processing)*. Registrations received after **October 19, 2007**, will be processed on-site

## Special Discounts

The first and second registrations from the same firm or company are subject to the fees outlined above. The registration fee for additional registrants from the same firm or company is **$595**, regardless of membership status. All registrations must be received at the same time to receive the discount.

## Refund Policy

The registration fee is fully refundable for cancellations received on or before **October 19, 2007**. Cancellations received after **October 19** and on or before **October 26, 2007**, will receive a refund, less a $50 processing fee. Cancellations made after **October 26** will not receive a refund, but the course materials on CD-ROM and a $100 certificate good for any DRI seminar within the next 12 months will be issued. All cancellations and requests for refunds must be made in writing. Fax to DRI's Accounting Department at 312.795.0747. All refunds will be mailed within four weeks after the date of the conference. Substitutions may be made at any time without charge and must be submitted in writing.

## Course Materials

In order to better serve and satisfy the numerous requests from our membership, DRI will mail the course materials to all registrants in CD-ROM format 12 days in advance of the seminar. You can order additional copies by checking the appropriate box on the registration form on the back of this brochure or ordering online at **www.dri.org**.

*Sponsored by*  **HENJUM GOUCHER** Reporting Services

*Asbestos Medicine Seminar*

## Supplemental Materials

Recommended supplemental material for this seminar is *Exploring Toxic Tort and Environmental Liability Claims* from DRI's Defense Library Series. Order your copy by checking the appropriate box on the registration form on the back of this brochure. You can also view the entire list of DRI publications offerings and make purchases online at **www.dri.org**.

## Hotel Accommodations

A limited number of discounted hotel rooms have been made available at the **San Diego Marriott, 33 West Harbor Drive, San Diego, California 92101**. For reservations, **contact the hotel directly at 619.234.1500**. Please mention DRI's Asbestos Medicine Seminar to take advantage of the group rate of **$245 Cityview Single/$265 Bayview Double**. The hotel block is limited and rooms and rates are available on a first-come, first-served basis. You must make reservations by **October 10, 2007**, to be eligible for the group rate. Requests for reservations made after **October 10** are subject to room and rate availability.

## Travel Discounts

DRI offers discounted meeting fares on various major air carriers for **DRI's Asbestos Medicine Seminar** attendees. To receive these discounts, please contact Hobson Travel Ltd., DRI's official travel provider at 800.538.7464. As always, to obtain the lowest available fares, early booking is recommended.

The taping or recording of DRI seminars is prohibited without the written permission of DRI.

Speakers and times may be subject to last-minute changes.

DRI policy provides there will be no group functions sponsored by others in connection with its seminars.

**DRI**

*November 8–9, 2007*

## FACULTY

ANGELA L. ABEL is a vice president at DecisionQuest in its Atlanta office. She specializes in the development of litigation communication strategies. Ms. Abel has experience in more than 800 cases of diverse practice areas including intellectual properties, toxic tort, products liability, construction and personal injury litigation.

BRUCE T. BISHOP is a member of Willcox & Savage PC in Norfolk, Virginia. Since 1977, Mr. Bishop has focused on toxic tort and environmental litigation. He has extensive trial experience in state and federal courts throughout the U.S. in the defense of toxic torts/products liability claims. Mr. Bishop has also developed a nationwide reputation for his work with medical and state-of-the-art issues associated with toxic tort litigation.

SANDRA F. CLARK, a shareholder of MehaffyWeber PC practices out of the firm's Beaumont and Houston offices. She has tried more than 25 major toxic tort cases to verdict and has been involved in the successful defense of many others. Ms. Clark is a member of the Texas Asbestos MDL Liaison Committee, the Houston Chapter of ABOTA, the Advisory Committee for Personal Injury for the Texas Board of Legal Specialization, Texas Bar Foundation, FDCC, Products Liability Advisory Council and the Michelle F. Mehaffy Inn of Court.

JAMES H. CROSBY is a member of Crosby Saad LLC in Mobile, Alabama. His principal areas of practice include corporate law, corporate defense, products liability, toxic torts, litigation limitation, litigation management and insurance coverage.

THE HONORABLE MARK DAVIDSON serves as judge of the 11th District Court of Texas in Houston. He has tried more than 400 jury trials. Named as the first Multi District Litigation Judge in Texas, he was assigned to hear all pre-trial matters in all Texas asbestos cases filed in the state after September 2003. In 2005, his mandate was expanded to include all 58,000 asbestos cases pending in Texas. Judge Davidson has developed procedures that has led to the trial and disposition of many cases and has broken ground in rulings on *Daubert* challenges to scientific evidence.

DOUGLAS R. ELLIOTT is a partner with Deutsch Kerrigan & Stiles LLP in New Orleans. His practice focuses on civil litigation, product liability, insurance defense, mass torts, toxic torts and criminal law.

I. ALLAN FEINGOLD, M.D., FRCP(C), FCCP, is chief of the Division of Pulmonary Medicine of South Miami Hospital in Miami, Florida. Dr. Feingold is a fellow of the Royal College of Physicians (Internal Medicine), board certified in Internal Medicine and Pulmonary Medicine by the American Board of Internal Medicine and a certified NIOSH B Reader.

GEORGE F. FITZPATRICK, JR., is the founding partner of Swanson Martin & Bell in Chicago. For 20 years, Mr. Fitzpatrick has served as national coordinating counsel in asbestos litigation for numerous defendants, including pump, valve and other equipment manufactures, brake manufacturers and users, and premises owners. He has successfully argued two appeals of significance to equipment manufacturer defendants in asbestos litigation. He is a member of DRI and the National Forum for Environmental and Toxic Tort Issues.

11

*Asbestos Medicine Seminar*

JOHN M. FITZPATRICK, a partner in Wheeler Trigg Kennedy LLP in Denver, handles high exposure cases for national clients, including product defects in asbestos (GE, Foster Wheeler and Velan), aviation (Global Aerospace), equipment (MTD), chemical release (Air Products) and medical devices (LabCorp). His primary focus during the last few years has involved high exposure claims due to product defects or general negligence claims. Mr. Fitzpatrick has tried in excess of 150 cases to verdict in 22 states and obtained defense verdicts in more than 140 cases.

EVELYN MCREE FLETCHER is a partner at Hawkins & Parnell LLP in its Atlanta office. Ms. Fletcher has served as national and local counsel for numerous companies involved in product liability, asbestos and silica litigation. She is a board member of the Atlanta Council of Younger Lawyers and a member of the Atlanta Bar Association, DRI and the Georgia Defense Lawyers Association.

JOHAN D. FLYNN is an attorney in the firm of DeHay & Elliston LLP in Baltimore. His practice focuses on litigation, insurance defense, products liability, asbestos litigation and mass torts.

CATHERINE E. BOYD GOLDHABER is an attorney at Segal McCambridge Singer & Mahoney Ltd. in Chicago. Her areas of concentration include litigation, toxic torts, products liability, child welfare, juvenile law and general liability.

SAMUEL P. HAMMAR, M.D., is the director of Diagnostic Specialties Laboratory in Bremerton, Washington. He is board-certified in anatomic and clinical pathology and specializes in lung disease, cancer and diagnostic techniques used to investigate cancer. For the past 18 years, Dr. Hammar has been primarily interested in asbestos-related disease, especially mesothelioma. He has done extensive research on asbestos-related lung disease in conjunction with Dr. Ronald F. Dodson and sees asbestos-induced lung disease on a regular basis as a pathologist.

MARK K. HSU is special counsel at the New York City office of Kasowitz Benson Torres & Friedman LLP. Mr. Hsu focuses his practice on products liability and commercial litigation.

MICHAEL E. HUTCHINS is a partner at Kasowitz Benson Torres & Friedman LLP in Atlanta. Mr. Hutchins focuses his practice on environmental litigation, products liability, commercial cases and general civil litigation. He has handled asbestos and toxic tort litigation throughout the U.S. for the past 18 years.

ANDREW L. KALISH is an attorney at the law firm of Socha Perczak Setter & Anderson PC in Denver. His practice areas include complex and multi-district litigation, products liability and mass torts.

JOHN J. KUROWSKI is the managing partner of Kurowski Bailey & Shultz LLC in Swansea, Illinois. He specializes in complex civil litigation with an emphasis in asbestos and toxic tort. Mr. Kurowski has defended asbestos litigation for more than 20 years. He serves as national coordinating and trial counsel for several asbestos litigation clients, as well as local counsel for several companies in Madison County, Illinois, and the St. Louis area.

JOHN A. LABOON is a partner at Segal McCambridge Singer & Mahoney Ltd. in Austin, Texas. Since 1993, Mr. LaBoon has focused on tort defense litigation with an emphasis in asbestos and silica litigation involving products liability, contractor liability and premises liability claims. In asbestos and silica cases, he has represented numerous manufacturers, an international premises owner and a major construction contractor. Mr. LaBoon has served on local, regional and national trial teams for defendants in asbestos litigation.

*November 8–9, 2007*

DAVID CRAIG LANDIN is a partner in the Litigation, Intellectual Property and Antitrust team at Hunton & Williams LLP in Richmond, Virginia. Mr. Landin has served as national coordinating and trial counsel in a variety of litigation settings. He is a past president of the Virginia Bar Association.

JANET L. MACDONELL was a partner at Deutsch Kerrigan & Stiles LLP in New Orleans until 2004, when she semi-retired. She works, on a limited basis, coordinating litigation nationwide for a client and assisting in complicated cases upon request. Her expertise is in defense of long-term exposure, latent disease cases, medical device, environmental and products liability claims. Ms. MacDonell has extensive experience working with medical experts.

BARRY N. MESHER is a partner in the law firm of Lane Powell PC in Seattle. He has been involved in multiple toxic tort and environmental litigation cases for more than 25 years and serves as national coordinating counsel, regional coordinating counsel and local counsel for a number of asbestos litigation clients. Mr. Mesher is a member of the firm's London, Insurance and Toxic Tort Practice Groups and a member of DRI, the American College of Law and Medicine and Washington Defense Trial Lawyers Association.

ALBERT H. PARNELL is a trial lawyer and partner in Hawkins & Parnell LLP in Atlanta, Georgia, and Charleston, West Virginia, and a partner in the Dallas office of Hawkins Parnell & Thackston LLP. Mr. Parnell is a founding and current member of DRI's Law Institute and a former member of the DRI Board of Directors. He has tried more than 250 lawsuits to jury verdict in more than 25 states.

VICTOR L. ROGGLI, M.D., is a professor of pathology at the Duke University Medical Center in Durham, North Carolina, and the director of the Electron Microscopy Laboratory at the Durham Veterans Administration Medical Center. His research interests include pneumoconioses, asbestos-related diseases and analytical electron microscopy. Dr. Roggli has published more than 140 articles and 26 chapters in textbooks. He has also written four books, including *Microprobe Analysis in Medicine, Biomedical Applications of Microprobe Analysis*, and *Pathology of Asbestos-Associated Diseases*, 1st and 2nd editions.

EDWARD M. SLAUGHTER, a partner in Hawkins Parnell & Thackston LLP in Dallas, focuses his practice in the areas of product liability and toxic tort litigation. Mr. Slaughter has extensive experience in litigation involving asbestos, paints and solvents, pesticides and other chemicals.

FREDRICK M. TOCA, PH.D., CIH, CSP, is an industrial hygienist for Atlantic Environmental Inc. in Atlanta, Georgia. Dr. Toca has more than 20 years of experience managing programs and acting as the principal technical specialist in industrial hygiene, occupational safety and environmental sciences. He is the former director of Occupational Safety & Health for Hoechst Celanese, the former director of Industrial Hygiene Safety & Compliance for USX Corporation and the former manager of Environmental Protection for General Electric Co., Plastics Division. Dr. Toca is a past president of the AIHA.

T. LYNN WALDEN is a partner at Jenkins & Martin LLP in Beaumont, Texas. Mr. Walden's practice is focused upon asbestos defense, toxic torts, medical malpractice and pharmaceutical litigation. He has extensive jury trial experience from his 16 years of practice. He has served as trial counsel for Bondex International for the last three years. Since 2004, he has been involved in numerous asbestos trials, including representation as lead trial counsel for his clients, resulting in eight verdicts in mesothelioma cases.

*Asbestos Medicine Seminar*

## 2007 DRI SEMINAR SCHEDULE

| | |
|---|---|
| September 6–7 | STRICTLY AUTOMOTIVE<br>*Hotel del Coronado*, San Diego, CA |
| September 6–7 | CONSTRUCTION LAW<br>*The Westin Kierland*, Scottsdale, AZ |
| September 27–28 | NURSING HOME/ALF LITIGATION<br>*Bellagio*, Las Vegas, NV |
| September 27–29 | PREEMINENT LAWYERS — SUPERSTARS OF TRIAL<br>*The Westin Michigan Avenue*, Chicago, IL |
| October 10–14 | DRI ANNUAL MEETING<br>*Marriott Wardman Park*, Washington, DC |
| November 1–2 | COMPLEX COMMERCIAL LITIGATION<br>*JW Marriott Desert Ridge*, Phoenix, AZ |
| November 1–2 | FIRE AND CASUALTY<br>*The Westin Chicago River North*, Chicago, IL |
| November 8–9 | ASBESTOS MEDICINE<br>*San Diego Marriott*, San Diego, CA |
| December 13–14 | INSURANCE COVERAGE AND PRACTICE<br>*Sheraton New York Hotel and Towers*, New York, NY |

## 2008 DRI SEMINAR SCHEDULE

| | |
|---|---|
| January 24–25 | CIVIL RIGHTS AND GOVERNMENTAL TORT LIABILITY<br>*Hyatt Regency*, Scottsdale, AZ |
| February 6–8 | PRODUCT LIABILITY CONFERENCE<br>*Arizona Biltmore*, Phoenix, AZ |
| February 28–29 | APPELLATE ADVOCACY<br>*Eden Roc*, Miami Beach, FL |
| February 28–29 | TOXIC TORTS AND ENVIRONMENTAL LAW<br>*The Ritz-Carlton New Orleans*, New Orleans, LA |
| March 12–14 | MEDICAL LIABILITY AND HEALTH CARE LAW<br>*Hotel Inter-Continental*, San Francisco, CA |
| March 27–28 | DAMAGES<br>*Caesars Palace*, Las Vegas, NV |
| April 10–11 | INSURANCE COVERAGE AND CLAIMS<br>*The Drake Hotel*, Chicago, IL |
| April 17–18 | TRUCKING LAW<br>*Pointe Hilton Tapatio Cliffs*, Phoenix, AZ |
| April 23–25 | LIFE, HEALTH, DISABILITY AND ERISA CLAIMS<br>*Hotel Inter-Continental*, San Francisco, CA |
| May 1–2 | DRUG AND MEDICAL DEVICE LITIGATION<br>*Sheraton New Orleans*, New Orleans, LA |
| May 15–16 | ELECTRONIC DISCOVERY<br>*Renaissance Washington, DC Hotel*, Washington, DC |
| May 15–16 | EMPLOYMENT LAW<br>*Renaissance Chicago Hotel*, Chicago, IL |

**Join DRI now and register at the member rate—a $130 savings!**

## DRI MEMBERSHIP APPLICATION

*This application/registration form for first-time members only—all other registrants please use reverse side.*

**Member Category**
- [ ] Defense Attorney — $225 USD/year
- [ ] Government Attorney — $160 USD/year
- [ ] Young Lawyer* — $130 USD/year (admitted to the Bar for 5 years or less)
- [ ] Law Student — $20 USD/year

[ ] Male  [ ] Female

DATE OF BIRTH (MONTH/DAY/YEAR)

NAME

NAME AS YOU WOULD LIKE IT TO APPEAR ON BADGE

COMPANY/FIRM/LAW SCHOOL

ADDRESS

CITY

STATE/PROVINCE          ZIP/POST CODE

COUNTRY

TELEPHONE          FAX

E-MAIL

Is this the first time you are attending this DRI seminar?  [ ] Yes  [ ] No

NUMBER OF ATTORNEYS IN YOUR FIRM          PRIMARY AREA OF PRACTICE

Admitted to the Bar in _____ STATE/PROVINCE   MONTH/YEAR   BAR NUMBER

REFERRED BY

*DRI is committed to the principle of diversity in its membership and leadership. Accordingly, applicants are invited, at their option, to indicate which one of the following may best describe them:*

- [ ] African American
- [ ] Asian American
- [ ] Hispanic origin
- [ ] Native American
- [ ] White
- [ ] Other

I am a member of a state or local defense organization.  [ ] Yes  [ ] No

NAME OF ORGANIZATION

*To the extent that I engage in personal injury litigation, I DO NOT, for the most part, represent plaintiffs. I have read the above and hereby make application for individual membership.*

SIGNATURE          DATE

*All applications must be signed and dated.*

### Registration/Application Fees

Seminar Registration:
- [ ] $645 [Member]
- [ ] $400 [Government DRI Member]
- [ ] $0 [Law Student DRI Member]

Membership (*check one*):
- [ ] $225 [Defense Attorney]
- [ ] $160 [Government Attorney]
- [ ] $130* [Young Lawyer]
- [ ] $20 [Law Student]

Total: _____

> *Those eligible for Young Lawyer membership will receive a certificate for one free seminar when they join.

### Payment Method

[ ] My check for _____ (USD) is enclosed.
[ ] Please charge my  [ ] VISA  [ ] MasterCard  [ ] American Express

CARD NUMBER          EXPIRATION DATE

SIGNATURE AS IT APPEARS ON CARD

*Please remit payments to:*
DRI, 72225 Eagle Way, Chicago, IL 60678-7252
Phone: 312.795.1101   Fax: 312.795.0747
Website: www.dri.org   E-mail: membership@dri.org

3400-0020-21
Asbestos

2007-0020B

PRSRT STD
U.S. POSTAGE
PAID
DRI

# DRI

150 North Michigan Avenue
Suite 300
Chicago, IL 60601

## November 8–9, 2007

State Regional Center, October 19, 2007

**Name**

**NAME AS YOU WOULD LIKE IT TO APPEAR ON BADGE**

**Company/Firm**

**Address**

**Telephone** _____ Fax _____

**E-mail**

Are you a first-time attendee at this DRI seminar?  ☐ Yes  ☐ No

How many attorneys are _____  What is your primary
in your firm? _____  area of practice? _____

**Registration Fees** *(includes course materials)*
*(If joining DRI to get the member rate, complete the form on the reverse side.)*
☐ Member: $645    ☐ Non-member: $775    ☐ Government DRI Member: $400
☐ Law Student DRI Member: Free    ☐ Special Discount Price: $595 *(See brochure for eligibility)*

**Publications for Purchase**
Course Materials *(included in registration fee)*
☐ Member: $75    ☐ Non-member: $95

**Supplemental Materials**
*Exploring Toxic Tort and Environmental Liability Claims*
CD-ROM    ☐ Member: $85    ☐ Non-member: $105
Hard copy  ☐ Member: $115   ☐ Non-member: $135
*(Illinois residents, please add 9% sales tax. Shipping charges will be added to each order.)*

**Payment Method**
My check for $ _____ (USD) is enclosed.
Please charge my
☐ VISA    ☐ MasterCard    ☐ American Express

**Card Number** ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐    **Expiration Date** ☐☐☐☐

**Signature as it appears on card** _____

3400-0020-21
Asbestos

2007-0020B