**MDL 875**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR - 1 2008

FILED
CLERK'S OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

WARREN W. SETHER, et al., )
 )
**Plaintiffs,** )
 )
vs. ) CIVIL NO. 07-809-GPM
 )
AGCO CORPORATION, et al., )
 )
**Defendants.** )

# ORDER

**MURPHY, District Judge:**

On October 4, 2007, Plaintiffs Warren W. Sether and Marie L. Sether filed this action in Illinois state court against, inter alia, Defendant General Electric Company ("GE") in connection with mesothelioma that Mr. Sether allegedly contracted due to exposure to asbestos-containing products while serving in the United States Navy ("USN") from 1942 until 1962 and later while an employee of the Electric Boat Company at shipyards in Connecticut from 1962 until 1985. GE has removed the case from state court to this Court, contending that Plaintiffs' claims against it are based on GE's alleged failure to warn of the dangers relating to asbestos used as insulation in marine steam turbines manufactured by GE pursuant to contracts with the USN so that GE is entitled to invoke federal jurisdiction pursuant to 28 U.S.C. § 1442, the so-called "federal officer" removal statute. Plaintiffs in turn have moved for remand of this case to state court for lack of subject matter jurisdiction. The motion for remand has been fully briefed and is ripe for decision. Having reviewed carefully the submissions of the parties, the Court concludes that this case must be remanded to state court for lack of jurisdiction.

Pursuant to 28 U.S.C. § 1442(a), which, as noted, is the basis for removal in this case, federal

MDL- 875
RECOMMENDED ACTION

VAC CTO-299  / action
Approved/Date: ___RN 3/31/08___

Page 1 of 8

**OFFICIAL FILE COPY**
**IMAGED** APR 1 2008

courts have jurisdiction under the following circumstances:

> A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district of the United States for the district and division embracing the place wherein it is pending:
> (1) The United States or any agency thereof or any officer (or any other person acting under that officer) of the United States or of any agency thereof, sued in an official capacity for any act under color of such office[.]

28 U.S.C. § 1442(a)(1). To effect removal as a person acting under a federal officer, GE must prove three elements: (1) it is a "person" within the meaning of the statute; (2) it acted under the direction of a federal officer, meaning that there is a nexus or causal connection between Plaintiffs' claims and the acts GE performed under the direction of a federal officer; and (3) GE has a colorable federal defense to state-law liability. *See Mesa v. California*, 489 U.S. 121, 129 (1989). This statute overcomes the familiar "well-pleaded complaint" rule governing so-called "federal question" jurisdiction by providing a method to remove a case brought in state court against a federal officer, or any person acting under a federal officer, despite the absence of a federal cause of action. *See Jefferson County, Ala. v. Acker*, 527 U.S. 423, 431 (1999). This is because, as the Supreme Court of the United States has noted, one of the central purposes of the federal officer removal statute is to ensure that a federal court will adjudicate the validity of a defendant's official immunity defense. *See Arizona v. Manypenny*, 451 U.S. 232, 242 (1981). Similarly, Section 1442(a) does not require GE to notify or obtain the consent of any other defendant in the action in order to remove the entire case to federal court. *See Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981). Instead, Section 1442(a) creates special ancillary jurisdiction over the state claims, and "the district court may take the entire case, even if it would not have jurisdiction over any of the claims against a codefendant." *Williams v. City of Atlanta*, 794 F.2d 624, 628 (11th Cir. 1986). All of that said, however, "[a] defendant

seeking removal [under Section 1442] bears the burden of establishing federal subject matter jurisdiction," and "[d]oubts concerning removal must be resolved in favor of remand to the state court." *Alsup v. 3-Day Blinds, Inc.*, 435 F. Supp. 2d 838, 841 (S.D. Ill. 2006).

Principally at issue in this case are the requirements of "acting under" under a federal officer and a colorable federal defense. To meet the former requirement, the United States Supreme Court has instructed, "[t]here must be a causal connection between what the [removing defendant] has done under asserted official authority and the state prosecution." *Mesa*, 489 U.S. at 131 (quoting *Maryland v. Soper*, 270 U.S. 9, 33 (1926)). "It must appear that the prosecution of [the removing defendant], for whatever offense, has arisen out of the acts done by him under color of federal authority and in enforcement of federal law, and he must by direct averment exclude the possibility that it was based on acts or conduct of his not justified by his federal duty." *Id.* at 131-32. In the context of a claim of failure to warn such as is asserted against GE in this case, the removing defendant must establish that the government's control over warnings directly interfered with the defendant's ability to fulfill its state law obligation to warn of safety hazards. *See Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F. Supp. 2d 1144, 1155 (D. Colo. 2002) ("What [the defendants] must establish for purpose of . . . § 1442(a)(1) is that the government authority under which they worked required them to act as they did. For purposes of Plaintiffs' failure to warn claims . . . [the defendants] must establish [that the government's] direction and control of their activities directly interfered with their ability to fulfill their state law obligation to warn employees of safety hazards."); *Overly v. Raybestos-Manhattan*, No. C-96-2853 SI, 1996 WL 532150, at *4 (N.D. Cal. Sept. 9, 1996) (holding that a defendant failed to show a causal nexus between actions allegedly taken at the direction of a federal officer and failure to warn claims arising from exposure

to asbestos because "[t]he government in no way restricted [the defendant's] ability to notify individuals of the presence of asbestos in the work environment."); *Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653, 663 (E.D. Tex. 1999) (holding that the causal nexus requirement of the federal officer removal statute was not satisfied "[b]ecause the federal government provided no direction or control on warnings when using asbestos . . . [and] did not prevent Defendants from taking their own safety precautions heeding state-law standards.").

As to the requirement of a colorable federal defense, GE invokes the so-called "government contractor defense" or "military contractor defense." In *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), the Court held that a private contractor may invoke a federal affirmative defense to potential liability under state law for design defects in products or equipment that it produces for the United States, provided the contractor can show that: (1) the United States approved reasonably precise specifications for the products or equipment; (2) the products or equipment conformed to those specifications; and (3) the contractor warned the United States about any dangers known to the contractor but not to the United States. *See id.* at 512. In the context of a claim of failure to warn, in order to satisfy the first element of the military contractor defense a defendant must show that the government itself dictated or otherwise controlled the content of the warnings meant to accompany the product. *See Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 401 (5th Cir. 1998) (holding that contractors hired to produce the carcinogenic defoliant Agent Orange for use by the military during the Vietnam War established the first element of the *Boyle* standard by showing that they failed to put warnings on the product only because they "were specifically prohibited from placing any warnings on the finished product itself except as allowed by contract."); *Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 586 (9th Cir. 1996) (quoting *Boyle*, 487 U.S. at

512) ("[T]he government contractor's defense . . . is inapplicable to a failure to warn claim in the absence of evidence that in making its decision whether to provide a warning, [the defendant] was . . . acting in compliance with 'reasonably precise specifications' imposed on [it] by the United States."); *In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d 626, 630 (2d Cir. 1990) ("*Boyle*'s requirement of government approval of 'reasonably precise specifications' mandates that the federal duties be *imposed* upon the contractor. The contractor must show that whatever warnings accompanied a product resulted from a determination of a government official, . . . and thus that the Government itself 'dictated' the content of the warnings meant to accompany the product.") (emphasis in original).

Turning then to the issue of whether GE has met its burden of showing a causal nexus sufficient to satisfy the acting under requirement and a colorable federal defense, the Court concludes that it has not. To the extent GE seems to argue that it owed no duty to warn, the Court does not agree. According to GE, it manufactured marine steam turbines without any thermal insulation material on them and shipped the turbines with only a coat of paint on the surface of the metal, so that any thermal insulation material would have been supplied and installed by the shipbuilders at the shipyard. It is well settled, of course, that a manufacturer of a product has a duty to provide those warnings or instructions that are necessary to make its product safe for its intended use. *See* Restatement (Second) of Torts § 402A cmt. h (1965) ("Where . . . [the seller of a product] has reason to anticipate that danger may result from a particular use . . . he may be required to give adequate warning of the danger . . . , and a product sold without such warning is in a defective condition."); *Berkowitz v. A.C. & S., Inc.*, 733 N.Y.S.2d 410, 411-12 (N.Y. App. Div. 2001) (affirming a denial of a motion for summary judgment brought by a manufacturer of pumps used on

USN ships on the grounds that the defendant owed no duty to warn of the dangers of asbestos that it neither manufactured nor installed on its pumps; although the pumps could function without insulation, the governmental purchaser of the pumps had provided certain specifications involving insulation of the pumps, and it was questionable whether the pumps could be operated safely without insulation, which the defendant knew would be made out of asbestos). The Court likewise finds as wanting the evidentiary support GE has submitted in support of its claim of federal officer jurisdiction, specifically, the affidavits of David Hobson and Ben J. Lehman. According to Hobson's affidavit, he is a former GE employee who began his employment with the company in 1969 and over the course of the following twenty-seven years, "had frequent and extensive business dealings on behalf of GE with commissioned officers and civilian employees of the United States Navy in connection with the Navy's purchase and use of Navy turbines manufactured by GE." Doc. 34, Ex. 1 ¶ 3. Lehman is a retired rear admiral in the USN who served as a ship superintendent for repairs at the Brooklyn Navy Yard between 1942 and 1944, in which capacity, according to his affidavit, he "was personally involved with the supervision or oversight of ship alterations and equipment overhauls[.]" *Id.*, Ex. 22 ¶ 6.[1]

According to Hobson's affidavit, during the period that he worked as an engineer for GE from 1969 until 1996,

---

1. GE also has submitted the affidavit of Lawrence Stillwell Betts, a medical doctor and retired USN captain. *See* Doc. 34, Ex. 3. The gist of Betts's testimony, which is supported by extensive documentation, is that the USN's knowledge of the health hazards associated with the use of asbestos aboard USN vessels during the 1940s represented the state of the art and, consequently, GE could not have possessed any information regarding the dangers posed by the use of asbestos-containing products in marine steam turbines that was not already known by the USN. Because the Court concludes that GE has failed to satisfy the first prong of the *Boyle* standard, it need not address whether GE has satisfied the third prong of the standard.

> . . . [T]he Navy . . . exercised extensive control over communications between equipment manufacturers such as GE and Navy personnel. Because of the need for discipline and good order aboard Navy ships, the Navy had in place established chains of communication that GE was required to follow in dealing with Navy sailors or civilian employees working aboard Navy vessels. Similarly, the Navy had precise specifications, practices, and procedures in place that governed the content of any communication affixed to machinery purchased by the Navy . . . . Additionally, the Navy had precise specifications controlling the nature of written materials that it required the manufacturer to deliver with Navy turbines . . . . Based upon my experience, it is my opinion that the Navy, not individual equipment manufacturers like GE, exercised absolute authority to determine precisely what hazards aboard its ships would be subject to warnings and the format and content of any such warnings.

Doc. 34, Ex. 1 ¶¶ 20-23. Lehman's affidavit states, in relevant part:

> In the 1940s, 1950s, and afterward, the Navy had complete control over every aspect of each piece of equipment. Military specifications governed every characteristic of the equipment used on Navy Ships, including the instructions and warnings . . . . This control included the decision of what warnings should or should not be included . . . . The Navy had specifications as to the nature and content of all written material that was delivered with each piece of equipment. The Navy was intimately involved with and had final approval of all . . . safety or hazard information and any other written information that accompanied a piece of equipment. The Navy determined the nature of hazards to be subject to any precautionary labelling and the content of any such labeling. In short, the Navy dictated every aspect of the . . . warnings associated with its ships and did not permit deviation by any of its contractors.

*Id.*, Ex. 22 ¶¶ 9-10. The Court entertains serious doubts that affidavits of either Hobson or Lehman are based upon adequate personal knowledge, a suspicion that is buttressed by the failure of both affiants to support their affidavits with exemplar contracts between the USN and GE or regulations that could confirm their conclusory yet sweeping averments. Most importantly, neither affidavit addresses GE's role and responsibility in developing warnings for the turbines it supplied to the USN. While it may have been the case that, as Hobson and Lehman attest, the USN had ultimate control over the content of the warnings, it could also be the case that GE was responsible for providing a portion of that content. Most importantly, neither affidavit negates the possibility that

the USN's specifications regarding warnings required contractors like GE to provide safety warnings in accordance with state law. In sum, the averments of both affidavits that the USN had precise specifications as to the nature and contents of all written material concerning the turbines furnished to it by GE and that GE would not have been permitted to affix any type of warning or caution to a piece of equipment beyond those expressly specified by the USN do not rule out the possibility that GE was obligated to provide warnings sufficient to satisfy its state-law duties. At this juncture, as noted, the Court is required to resolve all doubts in favor of remand, and to construe the factual record in this case most strongly against removal. *See Weese v. Union Carbide Corp.*, Civil No. 07-581-GPM, 2007 WL 2908014, at *3 (S.D. Ill. Oct. 3, 2007) (quoting *Freiberg*, 245 F. Supp. 2d at 1152 n.6) ("[A]lthough [federal officer removal] jurisdiction is read 'expansively' in suits involving federal officials, it is read narrowly where . . . only the liability of a private company purportedly acting at the direction of a federal officer is at issue."). Plaintiffs' motion for remand of this case to state court (Doc. 28) is **GRANTED** and, pursuant to 28 U.S.C. § 1447(c), this case is **REMANDED** to the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, for lack of federal subject matter jurisdiction.

**IT IS SO ORDERED.**

DATED: March 28, 2008

                            S/ G. Patrick Murphy
                            G. PATRICK MURPHY
                            United States District Judge