**MDL 875**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 18 2008

FILED
CLERK'S OFFICE

**PLEADING NO. 5422**

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE: Asbestos Production Liability Litigation          MDL No. 875

CTO-304
LAM 3:08-43  Hackler v. P&O Ports Louisiana, Inc., et al

### MOTION TO VACATE CONDITIONAL TRANSFER ORDER 304
### RELATIVE TO CIVIL ACTION LAM 3:08-43

NOW INTO COURT, through undersigned counsel, comes plaintiff, Michael T. Hackler, M.D., who, without in any manner waiving any objection to federal jurisdiction, respectfully urges this court to vacate Conditional Transfer Order 304 insofar as those orders seek to transfer civil action LAM 3:08-43.

Pursuant to Rule 7.4 (d) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, plaintiff is filing this Motion to Vacate Conditional Transfer Order 304, as well as plaintiff's brief in support thereof, within 15 days of the filing of plaintiff's Notice of Opposition.

By attorneys:

Edward J. Walters, Jr. (#13214)
Darrel J. Papillion (#23243)
Julie J. Baxter (#29756)
**MOORE, WALTERS, THOMPSON,
THOMAS, PAPILLION & CULLENS**
6513 Perkins Road
Baton Rouge, LA 70808
Telephone: (225) 766-1100/Fax: (225) 766-1142
Counsel for Michael Hackler

**OFFICIAL FILE COPY**

**IMAGED** APR 18 2008

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 1 8 2008

FILED
CLERK'S OFFICE

## CERTIFICATE

I HEREBY CERTIFY that a copy of the above and foregoing has been mailed, postage prepaid, this date to all known counsel of record:

Stephen W. Glusman
**GLUSMAN, BROYLES & GLUSMAN**
Post Office Box 2711
Baton Rouge, LA 70821
sglusman@bellsouth.com

Patrick E. Costello
**MOULEDOUX, BLAND, LEGRAND**
**& BRACKETT**
Suite 4250, 701 Poydras Street
New Orleans, LA 70139
pcostello@mblb.com

Richard P. Sulzer
**SULZER & WILLIAMS**
201 Holiday Boulevard, Suite 335
Covington, LA 70433
rsulzer@sulzerandwilliams.com

David M. Bienvenu, Jr.
**TAYLOR, PORTER, BROOKS & PHILLIPS**
Post Office Box 2471
Baton Rouge, LA 70821
david.bienvenu@taylorporter.com

Norman C. Sullivan, Jr.
**FOWLER RODRIGUEZ**
400 Poydras Street
30th Floor
New Orleans, LA 70130
nsullivan@frc-law.com

Charles Schmidt
**CHRISTOVICH & KEARNEY**
601 Poydras Street
Suite 2300
New Orleans, LA 70130
cwschmidt@christovich.com

George J. Nalley, Jr.
**NALLEY & DEW**
2121 Ridgelake Drive, Suite 200
Metairie, LA 70001
george@gnalley.com

See attached Panel Service List

Baton Rouge, Louisiana this 17th day of April, 2008.

_____
Darrel J. Papillion

RECEIVED
CLERK'S OFFICE
2008 APR 18 A 10: 09

Marion J. Bergeron
664 Belle River Road
Pierre Part, LA 70339

Jacques P. DeGruy
MOULEDOUX BLAND
LEGRAND & BRACKETT
701 Poydras Street
Suite 4250 One Shell Square
New Orleans, LA 70139-
4250

Ronald L. Motley
MOTLEY RICE LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

Richard C. Binzley
THOMPSON HINE LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Raymond P. Forceno
FORCENO GOGGIN &
KELLER
1528 Walnut Street
Suite 900
Philadelphia, PA 19102

John J. Repcheck
MARKS O'NEILL
O'BRIEN & COURTNEY
PC
Gulf Tower, Suite 2600
707 Grant Street
Pittsburgh, PA 15219

Wilton E. Bland, III
MOULEDOUX BLAND
LEGRAND & BRACKET
650 Poydras Street
Suite 2150
New Orleans, LA 70130

Ellen B. Furman
GOLDFEIN & HOSMER
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Antonio J. Rodriguez
FOWLER RODRIGUEZ
CHALOS
400 Poydras Street
30th Floor
New Orleans, LA 70130

Harold Bourque
209 Palm Street
Port Allen, LA 70767

Susan M. Hansen
BROWNSON & BALLOU
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

John D. Roven
ROVEN-KAPLAN LLP
2190 North Loop West
Suite 410
Houston, TX 77018

Edward J. Cass
GALLAGHER SHARP
FULTON & NORMAN
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Reginald S. Kramer
OLDHAM & DOWLING
195 South Main Street
Suite 300
Akron, OH 44308-1314

Richard D. Schuster
VORYS SATER SEYMOUR
& PEASE
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008

Adam M. Chud
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC 20001

David C. Landin
HUNTON & WILLIAMS
LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Neil Selman
SELMAN BREITMAN &
BURGESS
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

David A. Damico
BURNS WHITE &
HICKTON LLC
Four Northshore Center
106 Isabella Street
Pittsburgh, PA 15212

Gene Locks
LOCKS LAW FIRM LLC
1500 Walnut Street
Philadelphia, PA 19102

Robert N. Spinelli
KELLEY JASONS
MCGUIRE & SPINELLI
LLP
Centre Square West
15th Floor
Philadelphia, PA 19102

Robert E. Swickle
JAQUES ADMIRALTY
LAW FIRM PC
1370 Penobscot Building
645 Griwsold Street
The Maritime Asbestosis
Legal Clinic
Detroit, MI 48226-4192

Andrew J. Trevelise
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Edward J. Walters, Jr.
MOORE WALTERS
THOMPSON THOMAS
PAPILLION & CULLEN
6513 Perkins Road
Baton Rouge, LA 70808-
4259

James K. Weston II
TOM RILEY LAW FIRM
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

Robert E. Williams, IV
SULZER & WILLIAMS
LLC
201 Holiday Blvd.
Suite 335
Covington, LA 70433

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 18 2008

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**IN RE: Asbestos Production Liability Litigation**          **MDL No. 875**

> CTO-304
> LAM 3:08-43  Hackler v. Greater Baton Rouge Port Commission, et al

### PLAINTIFF DR. MICHAEL HACKLER'S BRIEF IN SUPPORT OF
### MOTION TO VACATE CONDITIONAL TRANSFER ORDER 304
### RELATIVE TO CIVIL ACTION LAM 3:08-043

NOW INTO COURT comes Dr. Michael Hackler, plaintiff in civil action LAM 3:08-82, referenced above submits this brief in support of his Motion to Vacate Conditional Transfer Order 304 relative to Civil Action LAM 3:08-43.

### I. PROCEDURAL AND FACTUAL BACKGROUND:

In December 2005, Dr. Michael T. Hackler, a Baton Rouge cardiovascular surgeon, was diagnosed with mesothelioma.  On January 20, 2006, Dr. Hackler filed a lawsuit against a number of defendants in Louisiana's Eighteenth Judicial District Court, alleging that his mesothelioma was caused as a result of his exposure to asbestos while he was working as a longshoreman and warehouseman at the Port of Greater Baton Rouge in the 1960's.   While Dr. Hackler worked as a longshoreman, and some of his claims may be governed by maritime law, many of Dr. Hackler's claims are governed by Louisiana state tort law because he handled raw asbestos on land, in

Page 1

warehouses, and loaded asbestos onto trucks. He sued a number of defendants including the Greater

Baton Rouge Port Commission, Baton Rouge Marine Contractors, various executive officers (who

are subject to suit and have no workers' compensation immunity under Louisiana tort law), and

others.

This is not a class action lawsuit. This lawsuit is not part of some larger action involving

scores of other workers. It is a lone civil action involving a single person who developed

mesothelioma as a result of exposure to asbestos in the 1960's.[1]

On November 29, 2007, defendants Baton Rouge Marine Contractors and P & O Ports, Ltd.

filed third party demands against the International Longshoreman's Association, AFL-CIO; South

Atlantic and Gulf Coast District, ILA, AFL-CIO; and Local 3033, ILA, AFL-CIO (hereinafter "the

union defendants"), and against South African Marine Corporation, Ltd., and the Industrial

Development Corporation of South Africa, Ltd., alleging that if defendants Baton Rouge Marine

Contractors and P & O Ports Louisiana, Inc. owed duties or are liable to plaintiff, then the third party

defendants are liable to Baton Rouge Marine and P & O, under a variety of theories.

On January 22, 2008, the Longshore Union third party defendants removed the third party

demand to the United States District Court for the Middle District of Louisiana, alleging that the

claims in the third party demand "arise under the laws of the United States and raise issues under the

Labor Management Relation Act (LMRA), 29 U.S.C. § 185, *et. seq.*, the National Labor Relations

Act (NLRA), 29 U.S.C. § 151, *et. seq.*, and, further, require interpretation of collective bargaining

agreements and labor organization constitutions and an analysis of the duty of their representation,"

---

[1]    To plaintiffs knowledge, only one other plaintiff, George Landess, has a claim
against the same, or similar parties, resulting from exposure to asbestos, and he is seeking the
vacation of a conditional transfer order in his case.

such that the third party plaintiffs' claims give rise to federal question jurisdiction.

**Removal of the third-party demands caused the technical removal of Dr. Hackler's entire action –** *an action replete with Louisiana factual and legal issues and Louisiana witnesses, that had been pending for roughly two years in Louisiana state court –* **first removing it to federal court in the Middle District, and subsequently as a potential tag along action in multidistrict litigation** *that is not closely* **related to the particular facts of this case (which facts are rooted in various, particular operations at the Port of Baton Rouge), and, further, this multidistrict litigation is** *not* **related to the witnesses who are needed for resolution of this Louisiana case.**

In the wake of first notice of removal of the third-party demand, two additional defendants filed notices of removal in Dr. Hackler's main action, resulting in three separate Louisiana Middle District federal case numbers being assigned to this same civil action in Louisiana's Middle District federal court, including this above-referenced action LAM 3:08-82, that is the subject of Conditional Transfer Order 305.[2]

On Wednesday, February 6, 2008, South African Marine Corporation, Ltd. removed this specific action, LAM 3:08-82, to the United States District Court for the Middle District of Louisiana on grounds that "SAMC is a political subdivision, agency or instrumentality of a foreign state," and that federal jurisdiction exists pursuant to 28 U.S.C. § 1330.

On February 7, 2008, Industrial Development Corporation of South Africa, Limited filed another notice of removal of Dr. Hackler's state court case on the same grounds as South African

---

[2]     This same case, Hackler v. Greater Baton Rouge Port Commission bears civil action nos 3:08-cv-43, 3:08-cv-74 and 3:08-cv-82 in the United States District Court for the Middle District of Louisiana.

Marine.[3]

Plaintiff has filed motions and memoranda seeking to remand this action to state court based on the procedural and substantive deficiencies in the removal notices filed by the third-party defendants, including (but not limited to) the untimely filing of defective removal notices based on purely conclusory allegations that various third-party defendants are foreign entities or agents of foreign entities, or that they somehow otherwise qualified for federal jurisdiction in this case, including attempting to bring under federal jurisdiction the Greater Baton Rouge Port Commission which plaintiff has argued the evidence shows is a political subdivision of the state of Louisiana, and thus merits Eleventh Amendment protection from being sued in federal court. Plaintiff also urged the Louisiana's Middle District federal court to recognize that any third-party demand for contribution is most certainly severable from Dr. Hackler's underlying main demand, and that even if the court were to decide that the third-party demand were somehow removable, that Dr. Hackler's underlying main demand most certainly should return to state court for the sake of efficient and just handling of his underlying tort case.[4]

Importantly, plaintiff notes for the Panel that plaintiff's motions to remand his case to state court, where it has been for more than two years now, were opposed in several memoranda filed by defendants, to which plaintiff filed a substantial global reply brief, *and the Louisiana Middle District Court has not decided whether to remand this action to Louisiana state court.* Plaintiff contends that this makes defendants' Notices of Tag Along Action (filed in two of Dr. Hackler's

_____

[3]     That removal was assigned civil action number 3:08-82, in Louisiana's Middle District and was part of Conditional Transfer Order 304.

[4]     A complete copy of plaintiff's Motion to Remand, Memorandum in Support thereof, and the exhibits thereto are attached as Exhibit A.

three numbered federal cases) to this Panel premature, based on the long line of jurisprudence wherein the Judicial Panel on Multidistrict Litigation has neither the inclination nor the desire to interfere or challenge federal district courts' decisions on remand, whether they be transferor or transferee courts.

For the reasons more fully explained below, plaintiff respectfully and simply requests that this Panel:  a) allow the United States District Court for the Middle District of Louisiana to first rule on the motions to remand that are still pending before it;   b) recognize that this case does not fit the requirements under 28 U.S.C. § 1407(a) to qualify for transfer into the multidistrict litigation; and, alternatively c) if this Panel does wish to transfer this action to the Federal District Court in Pennsylvania presiding over  the multidistrict litigation, that this court sever and transfer only the third-party demand remanding the main action to state court, as this is fully within the purview of this Panel.

## II.  LAW AND ARGUMENT:

A.      *Plaintiff's case does  not fit the requirements under 28 U.S.C. § 1407 – the federal statute governing transfers to multidistrict litigation – to qualify as a case eligible for transfer to the MDL.*

28 U.S.C. § 1407 (a) states:

When civil actions involving one or more **common questions of fact** are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that **transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.**

As this Panel well knows, under this federal statute – in order to transfer a case to a federal court handling multidistrict litigation – the transfer must accomplish two things:

Page 5

a)  **it must serve the *convenience* of the parties and the witnesses; and**

b)  **it must promote the *just and efficient* conduct of the case.**

Transfer by the Judicial Panel on Multidistrict Litigation, to a Pennsylvania federal court, for resolution of a case based on a gentleman's exposure to asbestos at the Port of Greater Baton Rouge and involving a number of Louisiana legal issues and concerning facts largely related to West Baton Rouge Parish and the Port of Baton Rouge within the state of Louisiana – is neither convenient for the parties and witnesses involved in this case nor does it promote any "just" or "efficient" handling of this case, particularly when this case has already proceeded in Louisiana state court for roughly two years, under Louisiana's system which encompasses elements of both common law and the state's own unique Civil Code and related authorities that govern civil actions within Louisiana.  It is hardly promoting judicial efficiency nor any semblance of judicial economy to move the entire case to Pennsylvania to force a court there to begin to digest the factual and legal questions governing this case.

Wright and Miller's *Federal Practice and Procedure* provides:

"Implicit in the common question requirement is the notion that it should be more economical or convenient to conduct pretrial proceedings on the common issues in one forum."

Wright, Miller and Cooper, *Federal Practice and Procedure,* 15 FPP § 3863

This action, involving factual and legal questions surrounding whether Louisiana employer defendants and their successors and others knowingly exposed and/or failed to protect Dr. Hackler from an unsafe work environment, exposed him to the asbestos that would eventually lead to the development of mesothelioma,  is certainly not going to be "more economical or convenient" to either advance in the discovery process or to try in Pennsylvania – 1,300 miles away from where the

events occurred and from where Dr. Hackler's family and most of the witnesses reside.

Further, Moore's *Federal Practice* advises:

"If the degree of commonality among the actions does not rise to a level such that a transfer would serve the overall convenience of the parties and witnesses and promote the just and efficient conduct of the entire litigation, the transfer will be denied."

*Moore's Federal Practice,* 17 Moore's Federal Practice § 112.05 (3d ed. 1997).

Although plaintiff recognizes the highly discretionary powers vested in this Panel regarding whether to transfer an action to the MDL, nevertheless, a long line of federal and multidistrict litigation jurisprudence holds – that *it is the burden of the party moving for the transfer* to show how the requirements of "common questions of fact," "convenience for the parties and witnesses," and "just and efficient" handling of the case are met by transferring a case to the multidistrict litigation.

Defendants have not met that burden here, nor have they even attempted to meet that burden.

**B.** ***It is the burden of the party seeking a transfer to multidistrict litigation to show that the statutory requirements for transfer have been met. Defendants here have not met that burden, and plaintiffs submit this case is not suitable for such transfer.***

*Moore's Federal Practice* provides:

"The party moving for a transfer is required to show that any common questions of fact are so complex, and the accompanying discovery so time-consuming, that the advantages of combining the actions for coordinated or consolidated pretrial proceedings overcomes the inconvenience to some of the litigants and their witnesses in the actions whose transfer is being considered."

*Moore's Federal Practice,* 17 Moore's Federal Practice § 112.05 (3d ed. 1997).

Federal jurisprudence in case after case demonstrates that:

"The moving party as the burden to demonstrate that the transfer of a "tag along" case will further the purposes of Section 1407."

*In re Tobacco/Governmental Health Care Costs Litigation,* 76 F. Supp. 2d 5 (D.C.

Page 7

1999)

> "The moving party is under a heavy burden to show not only that there are common questions of fact, but also that those common questions are sufficiently complex and that the accompanying discovery will be so time-consuming as to justify transfer under Section 1407."

> *In Re 21st Century Productions, Inc. "Thrillsphere" Contract Litigation,* Jud. Pan. Mult. Lit 1978, 448 F. Supp. 271, and citing *In Re Raymond Lee Organization, Inc. Secs. Litigation,* Jud. Pan. Mult. Lit. 1978, 446 F. Supp. 1266, stressing that **the burden is strong when a minimal number of actions are under consideration.**

First of all, defendants in their two Notices of Tag Along Actions in Dr. Hackler's case, did not even attempt to meet their burden of showing how Dr. Hackler's Louisiana tort case with related maritime elements would possibly meet the requirements for transfer to the MDL. They merely assert in a short paragraph that this a "potential tag along action," since the 1991 MDL 875 order transferred all asbestos cases then pending in the federal courts to the Eastern District of Pennsylvania.

Plaintiff avers that  28 U.S.C. § 1407 does *not* provide that the mere involvement of "asbestos" in a claim warrants automatic transfer into multidistrict litigation. Rather, 28 USC § 1407 provides that the principles of common questions of fact, convenience for the parties and witnesses, and just and efficient handling of the case in the transferee forum. Further, plaintiff responds that this case is not yet properly in federal court (which were the only cases affected initially by the MDL 875 transfer order) – at least not without any dispute or questions about whether it actually belongs in federal court in the first place,  because the federal district court to which third-party defendants removed the action (the United States Court for the Middle District of Louisiana) has not yet decided whether it will grant plaintiff's motion to remand this action to state court where the case has been pending for two years.

Secondly, even if defendants were to try to meet their burden, they face an especially stiff burden of proof under the above-cited *In Re Raymond Lee Organization, Inc. Secs. Litigation,* Jud. Pan. Mult. Lit. 1978, 446 F. Supp. 1266, since this case requires that when there are minimal actions involved, the burden on the party moving for the transfer is especially heavy.

In this case, the facts surround one plaintiff – Dr. Michael Hackler – and his employers' and others' actions towards him.  This is not a class action suit, as are many of the cases that have been found suitable for transfer to multidistrict litigation.  Although plaintiff recognizes that there are many workers in this country who have had to wrestle with the issues of asbestos exposure, nevertheless, Dr. Hackler's situation embedded in facts connected to the Port of Baton Rouge and the surrounding employers does not present common discovery questions and convenience for Louisiana witnesses, and parties that would show that judicial efficiency and economy at either the discovery or the trial phases would not be met by sending this case to Pennsylvania to be joined with a host of other unrelated cases involving unrelated entities and issues.

**C.**	***No common nexus of fact exists between plaintiff's case and the cases already in the multidistrict litigation such that the requirements of 28 U.S.C. 1407 are met.***

In *In Re Air Crash at Schenley Golf Course,* 509 F. Supp 252 (Jud. Pan.Mult. Lit. 1979) – a case where the Panel sent several cases to join litigation *at the geographic location where the events took place* (which plaintiff correspondingly in his case urges is *Louisiana*), the Panel also spelled out why it was not going to transfer one particular Utah action to the Western District of Pennsylvania, in that case, where the crash had occurred.  The Panel wrote:

> "Discovery in the Utah action will thus likely involve not only questions concerning the cause or causes of the crash, but equally important, also **questions concerning possibly superseding events occurring over a ten-year period that have little in common with the other actions in this litigation.** Furthermore, Thompson urges

that **its repair facilities, business records, witnesses and potential expert witnesses are all located in the Salt Lake City area.** In light of these circumstances, we cannot conclude that any benefits that would be derived from inclusion of the Utah action in centralized pretrial proceedings in the Western District of Pennsylvania would outweigh the inconvenience transfer would cause the defendant in the Utah action."

*Id.* at 255.

Therefore, the Panel found that "[t]**he nexus between the Utah action and the other actions in this litigation appears to be too tenuous.**" *Id.* at 254.

Plaintiff submits that in this case the "nexus" between Dr. Hacker's case against the Port of Baton Rouge and his employers, and the facts surrounding his employment and exposure there to asbestos, is likewise "tenuous" at best with the host of unrelated entities and geographically remote and individual questions involved in the cases currently being handled under MDL 875 in the Eastern District of Pennsylvania.  Like the Utah action discussed above, discovery in Dr. Hackler's case (discovery plaintiff might add has continued for more than two years in state court) concerns questions about events that took place over a period of years *in Louisiana* and which concern *facilities, business records, witnesses and potential experts* who are based in or are familiar with Louisiana and the events and business practices there related to Dr. Hackler's injuries for which he has made claims under Louisiana state tort law and maritime law.  As the Panel found in the Utah action, plaintiff urges that the "nexus" of fact simply is not there to connect Dr. Hackler's case to a series of class action asbestos cases that do not concern him or his employers against which he has made claims.

Page 10

**D.**      ***With a motion to remand this case to Louisiana state court still pending in federal district court in Louisiana, plaintiff urges that, based on this Panel's precedent, it is premature to transfer a case to the MDL while the issue of remand is still pending before a federal trial court.***

As plaintiff has spelled out above, plaintiff's motion to remand this case to state court is still pending before the United States Court for the Middle District of Louisiana, and has not yet been decided by that Court.

In *In Re Data General Corp. Antitrust Litigation,* 510 F. Supp. 1220 (Jud. Pan. Mult. Lit., 1979), this Panel said without wavering:

> **"The Panel has neither the statutory authority nor the inclination to review decisions of district courts, whether they are transferor or transferee courts."**

*Id.* at 1226, 1227, citing *In re Molinaro/Catanzaro Patent Litigation,* 402 F. Supp. 1404 (Jud. Pan. Mult. Lit. 1975), and *In re. Glenn W. Turner Enterprises Litigation,* 368 F. Supp. 805 (Jud. Pan. Mult. Lit., 1973)

Plaintiff respectfully requests that, in his case, this Panel allow the transferor court – the United States Court for the Middle District of Louisiana – to rule on the issue of whether or not to remand this case to state court where it has proceeded for two years, and where it is most convenient for the bulk of its witnesses and parties to conduct discovery and to try this case. This is most certainly more in harmony with the principles of judicial efficiency, economy and convenience for the parties and witnesses stated in 28 U.S.C. 1407 than ripping a two-year-old case away from its true "nexus" to the facts in this case – i.e. reater Baton Rouge, Louisiana – and trying to combine it with scores of other cases which involve completely unrelated and separate questions of fact as well as legal questions that do not at all parallel the pretrial discovery requirements in Dr. Hackler's case.

Page 11

**E.**     ***Alternatively, should this Panel see reason in this case for a transfer to the MDL, plaintiff requests that the Panel sever the third-party demand filed in this case by the defendants, and remove only the third-party demand to the MDL.***

Without waiving plaintiff's objection to removing this case at all from the state court where it was originally filed and under whose laws Dr. Hackler originally brought his tort claims, plaintiff urges that, should this Panel decide that it does want to transfer parts of this case to the MDL, plaintiff urges that this Panel only exercise jurisdiction over the third-party demand, filed by defendants in this case against third-party defendants which the original defendants then claimed "made this case removable."

It is certainly consistent with this Panel's discretionary latitude demonstrated over decades, as well as the Panel's focus on promoting judicial efficiency and flexibility, that it could order that only the third-party demand, distinct from the main demand, in this case, be transferred to the MDL, and that questions and factual issues in the main demand,  that this court may deem unrelated to the common questions of fact involved in the MDL cases, should remain under consideration in Louisiana where the events giving rise to this lawsuit occurred.

Plaintiff further reserves the right here, should this Panel decide in its discretion to transfer plaintiff's entire action to the MDL, that indeed, under the discretion granted by this Panel to both the transferor and the transferee court, that plaintiff would again urge remand to state court in a motion before any future transferee court, which motion would be within their purview to grant, based on federal jurisprudence.

## III.  <u>CONCLUSION</u>:

For the reasons more fully explained above, plaintiff Dr. Michael Hackler respectfully

requests that this court vacate Conditional Transfer Orders 305 relative to civil action LAM 3:08-82.

By attorneys:

_____

Edward J. Walters, Jr. (#13214)
Darrel J. Papillion (#23243)
Julie J. Baxter (#29756)
**MOORE, WALTERS, THOMPSON,**
**THOMAS, PAPILLION & CULLENS**
6513 Perkins Road
Baton Rouge, LA 70808
Telephone: (225) 766-1100/Fax: (225) 766-1142
Counsel for Michael Hackler

RECEIVED
CLERK'S OFFICE
2008 APR 18  A 10: 10

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 18 2008

FILED
CLERK'S OFFICE

## CERTIFICATE

I HEREBY CERTIFY that a copy of the above and foregoing has been mailed, postage prepaid, this date to all known counsel of record:

Stephen W. Glusman
**GLUSMAN, BROYLES & GLUSMAN**
Post Office Box 2711
Baton Rouge, LA 70821
sglusman@bellsouth.com

Patrick E. Costello
**MOULEDOUX, BLAND, LEGRAND & BRACKETT**
Suite 4250, 701 Poydras Street
New Orleans, LA 70139
pcostello@mblb.com

Richard P. Sulzer
**SULZER & WILLIAMS**
201 Holiday Boulevard, Suite 335
Covington, LA 70433
rsulzer@sulzerandwilliams.com

David M. Bienvenu, Jr.
**TAYLOR, PORTER, BROOKS & PHILLIPS**
Post Office Box 2471
Baton Rouge, LA 70821
david.bienvenu@taylorporter.com

Norman C. Sullivan, Jr.
**FOWLER RODRIGUEZ**
400 Poydras Street
30th Floor
New Orleans, LA 70130
nsullivan@frc-law.com

Charles Schmidt
**CHRISTOVICH & KEARNEY**
601 Poydras Street
Suite 2300
New Orleans, LA 70130
cwschmidt@christovich.com

George J. Nalley, Jr.
**NALLEY & DEW**
2121 Ridgelake Drive, Suite 200
Metairie, LA 70001
george@gnalley.com

Baton Rouge, Louisiana this 17th day of April, 2008.

_____
Darrel J. Papillion

RECEIVED CLERK'S OFFICE
2008 APR 18 A 10:10
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

Marion J. Bergeron
664 Belle River Road
Pierre Part, LA 70339

Jacques P. DeGruy
MOULEDOUX BLAND
LEGRAND & BRACKETT
701 Poydras Street
Suite 4250 One Shell Square
New Orleans, LA 70139-
4250

Ronald L. Motley
MOTLEY RICE LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

Richard C. Binzley
THOMPSON HINE LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114

Raymond P. Forceno
FORCENO GOGGIN &
KELLER
1528 Walnut Street
Suite 900
Philadelphia, PA 19102

John J. Repcheck
MARKS O'NEILL
O'BRIEN & COURTNEY
PC
Gulf Tower, Suite 2600
707 Grant Street
Pittsburgh, PA 15219

Wilton E. Bland, III
MOULEDOUX BLAND
LEGRAND & BRACKET
650 Poydras Street
Suite 2150
New Orleans, LA 70130

Ellen B. Furman
GOLDFEIN & HOSMER
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Antonio J. Rodriguez
FOWLER RODRIGUEZ
CHALOS
400 Poydras Street
30th Floor
New Orleans, LA 70130

Harold Bourque
209 Palm Street
Port Allen, LA 70767

Susan M. Hansen
BROWNSON & BALLOU
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402

John D. Roven
ROVEN-KAPLAN LLP
2190 North Loop West
Suite 410
Houston, TX 77018

Edward J. Cass
GALLAGHER SHARP
FULTON & NORMAN
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Reginald S. Kramer
OLDHAM & DOWLING
195 South Main Street
Suite 300
Akron, OH 44308-1314

Richard D. Schuster
VORYS SATER SEYMOUR
& PEASE
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008

Adam M. Chud
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC 20001

David C. Landin
HUNTON & WILLIAMS
LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Neil Selman
SELMAN BREITMAN &
BURGESS
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025

David A. Damico
BURNS WHITE &
HICKTON LLC
Four Northshore Center
106 Isabella Street
Pittsburgh, PA 15212

Gene Locks
LOCKS LAW FIRM LLC
1500 Walnut Street
Philadelphia, PA 19102

Robert N. Spinelli
KELLEY JASONS
MCGUIRE & SPINELLI
LLP
Centre Square West
15th Floor
Philadelphia, PA 19102

Robert E. Swickle
JAQUES ADMIRALTY
LAW FIRM PC
1370 Penobscot Building
645 Griwsold Street
The Maritime Asbestosis
Legal Clinic
Detroit, MI 48226-4192

Andrew J. Trevelise
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Edward J. Walters, Jr.
MOORE WALTERS
THOMPSON THOMAS
PAPILLION & CULLEN
6513 Perkins Road
Baton Rouge, LA 70808-
4259

James K. Weston II
TOM RILEY LAW FIRM
4040 First Avenue, N.E.
P.O. Box 998
Cedar Rapids, IA 52406

Robert E. Williams, IV
SULZER & WILLIAMS
LLC
201 Holiday Blvd.
Suite 335
Covington, LA 70433



**MOORE, WALTERS, THOMPSON,**
**THOMAS, PAPILLION & CULLENS**
A PROFESSIONAL LAW CORPORATION

Charles R. Moore*
Edward J. Walters, Jr.*
Steven C. Thompson
David Abboud Thomas
Darrel J. Papillion
J.E. Cullens, Jr.
S. Layne Lee
Patrick N. Broyles
Denise A. Bostick
Julie J. Baxter

*Of Counsel:*

Charles R. Davoli
Michelle M. Sorrells
Robin L. Krumholt

*Board Certified in Civil Trial Advocacy*
*National Board of Trial Advocacy*

6513 Perkins Road • Baton Rouge, Louisiana 70808
phone 225/66-1100 • fax 225/767-4466
www.mwtlaw.net • email: firm@mwtlaw.net

April 18, 2008

Via Fax @202-502-2888
Jeffery N. Lüthi
Clerk of the Panel
UNITED STATES JUDICIAL PANEL
on MULTIDISTRICT LITIGATION
One Columbus Circle, NE
Thurgood Marshall Federal Judiciary Building
Room G-255, North Lobby
Washington, DC 20002

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 18 2008

FILED
CLERK'S OFFICE

Re:    MDL No. 875 - In RE: Asbestos Products Liability Litigation (No. VI)
     **CTO-304**
     LAM 3:08-43   Hackler v. P&O Ports Louisiana, Inc., et al

Dear Clerk:

Following up on our phone conversation of this morning, this will confirm that I have
supplemented the Panel Service List in the referenced matter with the following names and have
forwarded copies of Plaintiff's Motion and Brief to Vacate Conditional Transfer Order 304:

Daniel L. Avant
AVANT & FALCON
429 Government Street
Baton Rouge, LA 70802

Robert H. Urann
ROBEIN URANN & LURYE
2540 Severn Avenue, Suite 400
P.O. Box 6768
Metairie, LA 70009-6768

Randall G. Wells
Attorney at Law
6541 Sheffield Aveneu
Baton Rouge, LA 70806

Very truly yours,

**MOORE, WALTERS, THOMPSON,**
**THOMAS, PAPILLION & CULLENS**

Darrel J. Papillion
DJP/ds

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

2008 APR 18 A 11: 38

RECEIVED
CLERK'S
OFFICE

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MICHAEL T. HACKLER, M.D. | * | CIVIL ACTION |
| VERSUS | * | NO.  3:08-CV-43 |
| P & O PORTS LOUISIANA, INC., ET AL | * | JUDGE JAMES J. BRADY |
| | | MAG. STEPHEN C. RIEDLINGER |

**and**

| | | |
|---|---|---|
| MICHAEL T. HACKLER, M.D. | * | CIVIL ACTION |
| VERSUS | * | NO.  3:08-CV-74 |
| P & O PORTS LOUISIANA, INC., ET AL | * | JUDGE RALPH E. TYSON |
| | | MAG. CHRISTINE NOLAND |

### PLAINTIFF'S MOTION TO REMAND
### OR ALTERNATIVELY
### MOTION TO SEVER THIRD PARTY DEMAND FROM MAIN DEMAND
### AND REMAND MAIN DEMAND

**NOW INTO COURT,** through undersigned counsel, comes plaintiff, Michael T. Hackler,

M.D., who respectfully moves this Honorable Court for an order remanding this action to

Louisiana's Eighteenth Judicial District Court, or, in the alternative, an order severing the third party

demand brought on behalf of Baton Rouge Marine Contractors, Inc. and P & O Ports Louisiana, Inc.

(hereinafter "Baton Rouge Marine" and "P & O") against the International Longshoreman's

Association, AFL-CIO, South Atlantic & Gulf International Association, AFL-CIO, 3033

Longshoreman's, Inc. (hereinafter "the union third party defendants") and South African Marine

Page 1 of 10

**EXHIBIT**

**A**

Corporation Limited, and Industrial Development Corporation of South Africa Limited.

In support of his motion to remand, and, alternatively, to sever, plaintiff submits an accompanying memorandum, and also avers as follows:

1.

After he developed mesothelioma in late 2005, Michael T. Hackler filed a lawsuit against several defendants as a result of his exposure to asbestos while working as a longshoreman at the Port of Greater Baton Rouge in the 1960's.  He filed a lawsuit in Louisiana's Eighteenth Judicial District Court on January 20, 2006.

2.

Plaintiff's lawsuit has been proceeding against the original defendants and some later-added defendants, and has been in discovery in state court for roughly two years.

3.

On November 20, 2007, Baton Rouge Marine and P & O filed a third party demand, naming as third party defendants, International Longshoreman's Association, AFL-CIO, South Atlantic & Gulf International Association, AFL-CIO, 3033 Longshoreman's, Inc., South African Marine Corporation Limited, and Industrial Development Corporation of South Africa Limited.

4.

On January 22, 2008, the union third party defendants removed the third party demand filed on behalf of Baton Rouge Marine and P & O to the United States District Court for the Middle

Page 2 of 10

District of Louisiana.  The action was assigned to Judge Brady and Magistrate Reidlinger and assigned docket number 3:08-cv-43.

5.

On February 6, 2008, South African Marine Corporation Limited also filed a Notice of Removal, removing the same action.  This removal notice was assigned to Judge Tyson and Magistrate Noland and assigned docket number 3:08-cv-74.

6.

Plaintiff has received a "Notice of Removal" filed in the Eighteenth Judicial District Court suggesting that the Industrial Development Corporation of South Africa may have filed a notice of removal in the Middle District on or about February 8, 2008, but plaintiff has not received a copy of any such removal notice and can find no such removal in the records of the Middle District. While plaintiff still has time to seek remand of any removal filed by the Industrial Development Corporation of South Africa, plaintiff respectfully requests that if a removal notice was filed that the Industrial Development Corporation of South Africa that action be remanded as well.

7.

The Union defendants assert that federal jurisdiction is appropriate under federal question jurisdiction, while South African Marine removed this action pursuant to 28 U.S.C. § 1330 on grounds that it is a political subdivision, agency, or instrumentality of a foreign state.

8.

Plaintiff avers that remand is warranted in this action for a number of reasons and seeks to remand this entire action to Louisiana's Eighteenth Judicial District Court, or, alternatively, plaintiff seeks to have the third party demand brought by Baton Rouge Marine and P & O, severed from plaintiffs' principal action so that the main action can be remanded to state court.

9.

The removal notice filed on behalf of the International Longshore Union is procedurally defective in that the Union third party defendants did not seek the permission of any of the other third party defendants, as required by applicable law, before removing the action to federal court.

10.

The removal of South African Marine Corporation Limited is also defective in a number of respects.

11.

South African Marine has failed to demonstrate that it is a foreign entity. Specifically, its notice of removal fails to state, other than in a conclusory form, the nature of its alleged ownership by or affiliation with a foreign entity.

12.

Plaintiff avers that South African Marine Corporation has failed to show that it is a foreign entity, and there is no federal subject matter jurisdiction over this removal. Further, as the party

seeking to invoke federal jurisdiction, South African Marine Corporation has the burden of proving its status as a political subdivision, instrumentality or agency of a foreign state, and, having failed to properly assert any such evidence or proof, its removal notice is deficient and defective and cannot be amended at this point.

13.

In the alternative, plaintiff respectfully avers that authority exists for separating the third party demands brought on behalf of Baton Rouge Marine Contractors from the principal action in this case, and, plaintiff respectfully requests that this court, if it is not inclined to remand the entire action, issue an order severing the third party demand from the main demand, and remand the main action to state court while leaving only the third party demand, brought on behalf of Baton Rouge Marine Contractors and P & O, in federal court.

14.

Indeed, in paragraph 3 of the Notice of Removal filed on behalf of the third party defendants, International Longshoreman's Association, AFL-CIO; South Atlantic and Gulf Coast District, ILA, AFL-CIO; and Local 3033, ILA, AFL-CIO, the removing "union third party defendants" specifically aver that "the claims against the removing parties are separate and independent from plaintiff's main claims against third party plaintiffs in which plaintiff seeks damages for work-related injuries resulting from asbestos exposure. Plaintiff's main claims do not require interpretation of collective bargaining agreements or labor organization constitutions, nor do they pertain to the Labor

Page 5 of 10

Management Relations Act, 29 U.S.C. § 1985, et. seq., or the National Labor Relations Act, 29 U.S.C. § 151, et. seq." Further, insomuch as plaintiff has not brought any claims against the Union third party defendants, these claims, which may or may not involve the federal labor laws, have nothing to do with the claims in plaintiff's principal action. Further, without waiver of any claims good faith investigation and discovery may reveal that plaintiff has against the union parties, plaintiff avers that third party plaintiffs may have fraudulently joined the third party union defendants, and this court, of course, must satisfy itself that it has jurisdiction over these claims before exercising federal jurisdiction.

15.

Severance is proper and permissible under applicable law. Federal courts have discretion to remand to state court the portion of an action that relates to defendants to whom there is no independent subject matter jurisdictional basis. Here, this matter proceeded in state court for roughly two years before being removed to federal court by defendants who were brought in on a third party demand. In this situation, this court has discretion to remand to state court the principal action, leaving only the third party demand in federal court. *See Lie v. The Boeing Co., et al*, 311 F.Supp.2d 725, 727-728 (N.D. Ill. 2004).

16.

Further, removal of this action to federal court violates the protections of the Eleventh Amendment of the United States Constitution relative to the Greater Baton Rouge Port Commission

Page 6 of 10

because the Greater Baton Rouge Port Commission is a political subdivision of the State of Louisiana, and it is entitled to protection under the Eleventh Amendment to the United States Constitution and cannot proceed as a party in a federal action.  In fairness, plaintiff points to *Jacintoport Corp. v. Greater Baton Rouge Port Commission*, 762 F.2d 435 (5th Cir. 1985 ), in which it was held that the Greater Baton Rouge Port Commission was not a political subdivision of the State of Louisiana subject to Eleventh Amendment protection, but plaintiff avers that the decision in that particular case was based upon the record developed in that particular case, and plaintiff avers that the Greater Baton Rouge Port Commission is a political subdivision of the State of Louisiana and is entitled to 11th Amendment protection. See, for example, *Guillory v. Port of Houston Authority*, 845 S.W.2d 812 (Tex. 1993) in which the Port of Houston was determined to be a political subdivision of the State of Texas.

17.

Out of an abundance of caution, and without waiver of plaintiff's federal jurisdictional defenses and without submitting to federal jurisdiction, plaintiff avers that to the extent that the Foreign Sovereign Immunities Act ("FSIA") 28 U.S.C. § 1330, 1602-1611, precludes plaintiff's right to trial by jury, the Act is unconstitutional under the 7th Amendment to the United States Constitution.  Plaintiff specifically alleges this, without waiver of any defense against federal jurisdiction, in the first pleading that plaintiff ever files in federal court to absolutely preserve this constitutional challenge.

Page 7 of 10

18.

Further, as a result of the failure of South African Marine Corporation to affirmatively plead any facts sufficient for this court to determine whether it is indeed a political subdivision, agency or instrumentality of a foreign state, and the lack of development of any record regarding the status of the Port of Greater Baton Rouge as a political subdivision and any explanation as to "cause" for South African Marine Corporation's late removal of this action, it is requested that this entire action be remanded to state court. At a minimum, plaintiff respectfully requests that, without waiver of his jurisdictional defenses, if this court is inclined to retain jurisdiction over the entire action, that plaintiff be given an opportunity, preferably at least 60 to 90 days, within which to conduct discovery on these issues. Plaintiff has filed his remand motion within 30 days of the first removal, thereby complying with the 30 day deadline to seek remand in the event of procedural defects in removal. Plaintiff respectfully avers that if this court is inclined to retain jurisdiction, that plaintiff be given an opportunity to conduct discovery specifically related to the facts and evidence that the removing defendants, who had the burden of proof on removal, did not set forth in their removal documents.

WHEREFORE, for all the foregoing reasons, plaintiff respectfully requests that this entire action be remanded to state court, or, in the alternative, that the court sever the main claim from the third party demands, and remand the main claim.

By attorneys:

_____
Edward J. Walters, Jr. (#13214)
Darrel J. Papillion (#23243)
Julie J. Baxter (#29756)
**MOORE, WALTERS, THOMPSON,**
**THOMAS, PAPILLION & CULLENS**
6513 Perkins Road
Baton Rouge, LA 70808
Telephone: (225) 766-1100
Fax: (225) 766-1142

Page 9 of 10

## CERTIFICATE

I HEREBY CERTIFY that a copy of the above and foregoing has been mailed, postage prepaid, this date to all known counsel of record:

Stephen W. Glusman
**GLUSMAN, BROYLES & GLUSMAN**
Post Office Box 2711
Baton Rouge, LA 70821
sglusman@bellsouth.net

Patrick E. Costello
**MOULEDOUX, BLAND, LEGRAND & BRACKETT**
Suite 4250, 701 Poydras Street
New Orleans, LA 70139
pcostello@mblb.com

Richard P. Sulzer
**SULZER & WILLIAMS**
201 Holiday Boulevard, Suite 335
Covington, LA 70433
rsulzer@sulzerandwilliams.com

David M. Bienvenu, Jr.
**TAYLOR, PORTER, BROOKS & PHILLIPS**
Post Office Box 2471
Baton Rouge, LA 70821
david.bienvenu@taylorporter.com

Norman C. Sullivan, Jr.
Philip C. Brickman
**FOWLER RODRIGUEZ**
400 Poydras Street
30th Floor
New Orleans, LA 70130
nsullivan@frc-law.com
prickman@frc-law.com

Charles Schmidt
**CHRISTOVICH & KEARNEY**
601 Poydras Street
Suite 2300
New Orleans, LA 70130
cwschmidt@christovich.com

George J. Nalley, Jr.
**NALLEY & DEW**
2121 Ridgelake Drive, Suite 200
Metairie, LA 70001
george@gnalley.com

Jennifer M. Morris
DUPLASS ZWAIN BOURGEOIS MORTON PFISTER & WEINSTOCK
29th Floor, Three Lakeway Center
3838 N. Causeway Boulevard
Metairie, LA 70002
jmorris@duplass.com

Baton Rouge, Louisiana this _19th_ day of February, 2008.

_____
Darrel J. Papillion

Page 10 of 10

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

MICHAEL T. HACKLER, M.D.          *    CIVIL ACTION

VERSUS                           *    NO.  3:08-CV-43

P & O PORTS LOUISIANA, INC., ET AL    *    JUDGE JAMES J. BRADY
                                        MAG. STEPHEN C. RIEDLINGER

**and**

MICHAEL T. HACKLER, M.D.          *    CIVIL ACTION

VERSUS                           *    NO.  3:08-CV-74

P & O PORTS LOUISIANA, INC., ET AL    *    JUDGE RALPH E. TYSON
                                        MAG. CHRISTINE NOLAND

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO REMAND OR ALTERNATIVELY MOTION TO SEVER THIRD PARTY DEMAND FROM MAIN DEMAND AND TO REMAND MAIN DEMAND

**NOW INTO COURT,** through undersigned counsel, comes plaintiff, Michael T. Hackler, M.D., who submits this memorandum in support of his Motion to Remand or Alternatively to Sever the Third Party Demand from the Main Demand and Remand the Main Demand to state court.

## I. INTRODUCTION:

This is a motion to remand or alternatively to sever the third party demands from the main demand and remand the main demand to state court. On January 22, 2008, and February 6, 2008, third party defendants International Longshoreman's Association, AFL-CIO, South Atlantic & Gulf

Page 1 of 22

International Association, AFL-CIO, 3033 Longshoreman's, Inc. (hereinafter referred to as "the

union third party defendants") and South African Marine Corporation, Ltd., filed separate Notices

of Removal, seeking to remove this action from Louisiana's Eighteenth Judicial District Court to the

United States District Court for the Middle District of Louisiana.[1] The removal notice filed by the

International Longshoreman's Association, *et. al.* was assigned to United States District Judge

Brady and Magistrate Riedlinger and was given docket number 3:08-cv-43, while the removal notice

filed on behalf of South African Marine Corporation, Ltd. was assigned to United States District

Judge Tyson and United States Magistrate Noland, and was given docket number 3:08-cv-74.

Plaintiff submits this memorandum in support of his motions to remand in connection with both

removals.

Further, even if the removal of the third party demand should remove the entire action,[2]

plaintiff seeks, in the alternative, either the remand of the entire action to state court, or a severance

of the third party demand from the principal demand and remand of the main demand to state court.

## II. <u>FACTUAL BACKGROUND:</u>

---

[1]    Plaintiff has received a "Notice of Removal" filed in the Eighteenth Judicial
District Court suggesting that the Industrial Development Corporation of South Africa may have
filed a notice of removal in the Middle District on or about February 8, 2008, but plaintiff has not
received a copy of any such removal notice and can find no record of this removal in the records
of the Middle District.  While plaintiff still has time to seek remand of any removal filed by the
Industrial Development Corporation of South Africa, plaintiff respectfully requests that if a
removal notice was filed by the Industrial Development Corporation of South Africa that it be
remanded or severed as well, for all the reasons set forth herein.

[2]    *See Nolan v. Boeing*, 919 F.2d 1058 (5th Cir. 1990).

In December 2005, Dr. Michael T. Hackler, a Baton Rouge cardiovascular surgeon, was diagnosed with mesothelioma.  On January 20, 2006, he filed a lawsuit against a number of parties in Louisiana's Eighteenth Judicial District Court, alleging that his mesothelioma was caused as a result of his exposure to asbestos while he was working as a longshoreman at the Port of Greater Baton Rouge in the 1960's.  Dr. Hackler eventually amended his lawsuit to add additional parties, and on November 29, 2007 defendants, Baton Rouge Marine Contractors and P & O Ports, Ltd., filed third party demands against the International Longshoreman's Association, AFL-CIO; South Atlantic and Gulf Coast District, ILA, AFL-CIO; and Local 3033, ILA, AFL-CIO (hereinafter "the union defendants"), and against South African Marine Corporation, Ltd., and the Industrial Development Corporation of South Africa, Ltd., alleging that if defendants Baton Rouge Marine Contractors and P & O Ports Louisiana, Inc. owed duties or are liable to plaintiff, then, the third party defendants are liable to Baton Rouge Marine and P & O, under a variety of theories.

On January 22, 2008, the Union third party defendants removed the third party demand to the United States District Court for the Middle District of Louisiana alleging that the claims in the third party demand "arise under the laws of the United States and raise issues under the Labor Management Relation Act (LMRA), 29 U.S.C. § 185, *et. seq.*, the National Labor Relations Act (NLRA), 29 U.S.C. § 151, *et. seq.*, and, further, require interpretation of collective bargaining agreements and labor organization constitutions and an analysis of the duty of their representation," such that the third party plaintiffs' claims give rise to federal question jurisdiction.

On Wednesday, February 6, 2008, South African Marine Corporation, Ltd. removed this action to the United Stated District Court for the Middle District of Louisiana on grounds that "SAMC is a political subdivision, agency or instrumentality of a foreign state," and this court has federal jurisdiction over it pursuant to 28 U.S.C. § 1330. For all the reasons that follow, plaintiff respectfully avers that this action should be remanded to Louisiana's Eighteenth Judicial District Court because of procedural and substantive deficiencies in the removal notices filed by the union third party defendants and South African Marine. For all the reasons that follow, plaintiff asks that this court remand this action in its entirety to Louisiana's Eighteenth Judicial District Court, or, alternatively, to sever Baton Rouge Marine's third party demand from the principal demand, and remand the main action to state district court while retaining jurisdiction over the third party demands.

### III.  LAW AND ARGUMENT:

As an initial matter, it is important to note that the federal removal statutes are strictly construed. *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32, 123 Sup. Ct. 366, 369 (2002); *Bosky v. Kroger Tex., LP.*, 288 F.3d 208, 211 (5th Cir. 2002). Any doubt about the propriety of removal must be construed against removal. *Diez v. Sheppard*, 85 F.3rd 1502, 1505 (11th Cir. 1996).

A.    *South African Marine Corporation failed to timely remove this action, and has failed to provide any explanation as to why its removal was untimely.*

While the time limits of 28 U.S.C. § 1446 (b) may be extended for cause in the case of the

removal by a defendant that is a foreign entity, there is indeed a requirement that the removing

foreign entity show "cause" why its removal is untimely. The removal filed on behalf of South

African Marine Corporation Limited is untimely, because service upon the first served third party

defendant in this action was on December 26, 2007. *See* Removal Notice of union third party

defendants, indicating that one of the third party defendants was first served on December 26, 2007.

South African Marine Corporation did not remove this action until February 6, 2008, well over 30

days after service on the first served defendant.   Nowhere in the removal notice filed on behalf of

South African Marine Corporation, however, does South African Marine Corporation provide any

explanation or basis as to why its removal was untimely.  Indeed, South African Marine attempts to

gloss over the timeliness issue in its removal notice by claiming that the notice of removal was

"timely because it was filed within 30 days from the date on which one of the third party defendants

was served, January 4, 2008." It does not explain "which" third party defendant or when it was

served.  This is a fatal procedural defect in its removal and demands a remand of this action.

**B.      South African Marine Corporation has failed to provide any basis other than the
         conclusory allegation that it is a political subdivision, agency or instrumentality of a
         foreign state to support its claim of removal.**

While a foreign entity can remove an action against it to United States District Court under

28 U.S.C. § 1330, the removal can only occur if the foreign entity can show that it is predominantly

owned by a foreign sovereign.  Here, South African Marine Corporation, Ltd. has made no such

allegation.  It merely alleges, in a very conclusory fashion, that it is "a foreign political subdivision,

Page 5 of 22

agency, or instrumentality."  It provides no detailed description of its ownership, or how it is

affiliated with the South African, or any other, government, nor does it provide any indication of

when it became such an "agency" or "instrumentality" – during the time of its wrongful conduct or

at the time claims against it were filed.[3]

     The party involving a federal court's removal jurisdiction bears the burden of establishing

subject matter jurisdiction on a motion to remand.  *United Food & Commerical Workers Union,*

*Local 919, AFL-CIO v. Centermark Properties*, 30 F.3d 298 (2ⁿᵈ Cir. 1994), citing *McNutt v. GMAC*,

298 U.S. 178, 189, 56 S. Ct. 780, 785, 80 L. Ed. 1135 (1936).  If the removing party's allegations

of jurisdictional facts are challenged by its adversary in any appropriate manner, the avering party

must support the allegations with competent proof.  *McNutt*, 298 U.S. at 189, 56 S. Ct. At 785.  As

the Firth Circuit stated in *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 458-549, "because the

establishment of a basis for the exercise of subject matter jurisdiction is the *sine qua non* of federal

litigation, we have consistently held that it is the party who urges jurisdiction upon the court who

must always bear the burden of demonstrating that the case is one which is properly before the

federal tribunal."  Removal cannot be based upon conclusory allegations.  *White v. FCI USA, Inc.*,

319 F.3d 672, 675 (5ᵗʰ Cir. 2003).

     Under 28 U.S.C. § 1603, an "agency or instrumentality of a foreign state" means any entity

which is a separate legal person, corporate or otherwise, and which is an organ of a foreign state or

---

[3]    See *Vasura v. Acands*, 84 F.Supp. 2d 531, 533-534 (S.D.N.Y. 2000).

Page 6 of  22

political subdivision thereof, and which is neither a citizen of a state of the United States nor created

under the laws of any third country. See 28. U.S.C. § 1603. Federal courts have analyzed the nature

and character of ownership a foreign government must possess to give rise to federal jurisdiction

under 28 U.S.C. § 1603, see generally *In Re Air Crash Disaster Near Roselawn, Indiana on October*

*31, 1994*, 96 F.3d 932, 936-937 (7th Cir. 1996); *In Re Clearsky Shipping Corp.*, 1999 WL 1921825

(E.D. La. Nov. 8, 1999), but it is clear that the removing party must be a *foreign* state. Here, South

African Marine has not set forth one scintilla of evidence, let alone factual allegations, to support

its conclusory allegation that it is a "political subdivision, agency, or instrumentality of a foreign

state," and because it has failed in this regard, remand of this action to state court is required.

Moreover, inasmuch as the deadline for removal of this action has passed, these third party

defendants should not be allowed leave to amend their defective removal notices. Indeed, South

African Marine has not come forth with any reason or explanation for its late, flawed removal notice,

requiring remand.[4]

**C.**    ***The removal by the Union third party defendants was procedurally defective because the Union third party defendants did not secure consent of all third party defendants.***

The first union defendant was apparently served on December 26, 2007, and it removed this

action on January 22, 2008. When the union defendants removed this action, they failed to secure

the permission of all third party defendants, specifically, they failed to obtain the consent of South

---

[4]    While the time limits of 28 U.S.C. § 1446(b) may be extended for cause, *Tenn. Gas Pipeline Co. v. Continental Cas. Co.*, 814 F. Supp. 1302, 1304 (M.D. La. 1994), this third party defendant has cited no "cause."

African Marine Corporation and Industrial Development Corporation of South Africa, and, failing to obtain that consent, failed to even explain why they could not obtain such consent.[5]

In *Courtney v. Benedetto*, 627 F. Supp. 523 (M.D. La.1986), Judge Polozola explained that a removal notice without all defendants joining or consenting to removal is defective. "Courts have consistently construed 28 U.S.C. §1446 (a) to require that all defendants either join the petition for removal or to consent to such removal."[6]   See *Courtney*, 627 F. Supp. at 525, citing *Northern Illinois Gas Co. v. Airco Industrial Gases*, 676 F. 2d 270, 272 (7th Cir. 1982); *Tri-Cities Newspapers, Inc. v. Tri-Cities P.P. & A. Local 394*, 427 F. 2d 325 (5th Cir. 1970); *Lontheir v. Northwest Insurance Company*, 599 F. Supp. 963 (W.D. La 1985); *Mason v. International Business Machines & RTKL*, 543 F. Supp. 444, 446 (M.D. N.C. 1982) and *Baldwin v. Perdue, Inc.*, 451 F. Supp. 373, 376 (E.D. Va 1973).

The union third party defendants' notice of removal fails to explain why South African Marine Limited and the Industrial Development Corporation of South Africa failed to join in removal.  The lack of the required unanimity of these third party defendants in seeking removal within 30 days of service on the first served defendant renders the union third party defendants'

_____

[5]      While at least one of these entities later removed on its own, this removal, more than 30 days after service upon the first served defendant, does not cure the union third party defendants' defective removal.

[6]      Plaintiffs reserve and do not waive any argument relative to the union third party defendants in particular that these defendants should have obtained permission of <u>all</u> defendants, not only the third party defendants.

Page 8 of 22

removal petition defective on its face.  Judge Polozola in *Courtney* made clear that a removal

petition that fails to allege why a defendant has not joined in removal is defective, rendering the

removal improvident and subject to remand.  See *Courtney*, 629 F. Supp. at 527.

Defendants generally are required under 28 U.S.C. 1446 (a) to consent to removal or join the

removal petition within thirty days of notice or service of process, and the 30-day period begins to

run as soon as the first defendant is served, so long as the case is then removable. *Getty Oil Corp.*

*v. Ins. Co. of North America*, 841 F. 2d 1254 (5th Cir. 1988).

Only three exceptions exist to the general rule that all defendants must join in removal such

that a defective removal petition to be cured:

1)   when the non-joining defendant has not been served with process at the time the removal petition is filed;

2)   when the non-joining defendant is merely a nominal or formal party;

3)   when the removed claim is a separate and independent claim as defined by 28 U.S.C. 1441 (c).

Should a defendant fit one of these exceptions, there follows a further unavoidable

requirement of any defendant seeking removal of a case to federal court: the removal petition must,

under the requirements of 28 U.S.C. 1446 (a),  include an affirmative explanation of why any co-

defendant is absent in joining or consenting to the petition for removal.  Because the union

defendants' removal does not contain any explanation for the failure of all third party defendants to

join in removal, the removal is procedurally defective.

Page 9 of  22

*Mayers v. Connell*, 651 F. Supp. 273 (M.D. La 1986) lays out one of the fatal defects in the Union third party defendants' removal in no uncertain terms:

> "[A] necessary corollary to 1446 (A) which requires the petition for removal contain 'a short and plain statement of the facts which entitle him or them to removal' is that the removal petition must set forth the reason why a defendant named in such action has not joined the petition for removal."
> *Mayers*, 651 F. Supp at 274, citing *Lewis v. Rego Co.*, 757 F. 2d 66 (3rd Cir. 1985); *P.P. Farmers' Elevator Co. v. Farmers Elevator Mutual Ins. Co. & New Amsterdam Casualty* Co., 395 F. 2d 546 (7th Cir. 1968); and *Courtney v. Benedetto*, 627 F. Supp. 523, 525 (M.D. La. 1986).

Judge Polozola further noted:

> "Such a petition filed without a short statement of the facts surrounding the non-joinder of a defendant in the removal petition makes the petition defective."
> *Mayers v. Connell*, 651 F. Supp. at 274, citing Courtney, 627 F. Supp. at 526.

Thus, not only did the union third party defendants proceed without the required consent of all third party defendants needed for removal to be effective in this Court, but, even if these third party defendants were to fall under one of the exceptions allowing a defendant to not consent to removal, the union defendants did not set out the short statement of facts required by applicable law in its removal petition to explain why the union defendants did not have the consent of all third party defendants to removal.

**D.    *Baton Rouge Marine and P & O may have fraudulently joined the Union third party defendants.***

Without waiver of any claim that good faith investigation and discovery may yield in

Page 10 of 22

plaintiff's favor against the union third party defendants, plaintiff contends that Baton Rouge Marine Contractors and P & O Ports may have fraudulently joined the union third party defendants. Solely to test the jurisdiction of this court, which is obligated to satisfy itself that it has jurisdiction before proceeding, plaintiff directs the court to the motion to dismiss filed on behalf of the Union third party defendants. As set forth in the motion to dismiss by the union third party defendants, Baton Rouge Marine Contractors and P & O Ports may have failed to state sufficient facts in their third party complaint to support their conclusion that Dr. Hackler "enjoyed a contractual relationship" with the unions.

This action has been pending in state court for over two years. In November of 2007, two defendants, Baton Rouge Marine and P & O, filed third party demands against entities that, ostensibly, might remove this action to federal court under federal question jurisdiction and under the special removal provisions allowing political subdivisions or foreign governments to remove actions to federal court.[7] Under these circumstances, this court should carefully examine the extent to which Baton Rouge Marine and P & O might actually have viable claims against the third party defendants, particularly with respect to the arguably novel claims against the union third party defendants, whether these defendants have actually been fraudulently joined in an effort to

---

[7]        Plaintiff in no way admits or concedes that South African Marine Corporation is actually a foreign political subdivision. In fact, on the contrary, absolutely no evidence in support of that proposition has been advanced. Further, without waiver of his jurisdictional defenses, plaintiff reserves any claims he might have against these third party defendants under applicable law.

manufacture federal jurisdiction.

**E.    *The Court should, if it is not inclined to remand this action to state court, sever the third party demand from the principal action and remand the principal action to state court.***

While removal of the third party demand may remove the entire action, the district court nonetheless has discretion whether to sever the principal action from the third party demand, and remand the principal action. *See Alifieris v. American Airlines, Inc.*, 523 F.Supp. 1189 (D.C.N.Y. 1981). As Professor Wright explains, "section 1441 (d) goes beyond the traditional construction of the removal statutes by allowing foreign states who are third party defendants to remove claims against them. The removal court then may assert jurisdiction over the entire case, or exercise its discretion to remand the main action to state court." 14 Wright, Federal Practice and Procedure § 3729.1.

The Fifth Circuit recognized in *Nolan v. Boeing*, 919 F.2d 1058 (5th Cir. 1990), that removal of a third party demand removes the entire action,[8] but as the court recognized in *Lie v. Boeing*, 311 F. Supp. 2d 725, (N.D. Ill. 2004), a federal court has discretion to remand the main action and retain jurisdiction over the third party demand in a case such as this.

Indeed, there is a line of authority suggesting that because Section 1441 (d) only authorizes

_____

[8]    While in some respects instructive, the *Nolan v. Boeing* decision appears to demonstrate the Fifth Circuit's need to properly resolve the question of whether litigation arising out of an European air crash that involved no U.S. citizens, and no connection to Louisiana, *Nolan*, more than anything, evidences a need for the federal court to exercise jurisdiction and dismiss on *forum non conveniens* grounds, a lawsuit that should never have been brought in a Louisiana court.

Page 12 of  22

the removal of civil actions brought against foreign states, and, even assuming *arguendo*, South African Marine Corporation Limited is a foreign state, which plaintiff argues has not been shown, only the actions actually brought against the foreign state, i.e. the third party demands, are removable. *Alifieris, supra; see also Lie*, 311 F. Supp. 2d at 727.

Cases from the Fifth Circuit speak of this issue of remand in terms of discretion. For example, in *Nolan v. Boeing Co.*, 919 F.2d 1058 (5th Cir. 1990), the court considered a portion of an appeal arguing that the district court should have remanded certain non-federal claims that were brought to it through removal by a third party defendant.  The court rejected the contention stating: "We simply hold that, in this case, the district court did not abuse its discretion in declining to do so."  919 F.2d at 1070. The same standard was applied in *Delgado v. Shell Oil Company*, 231 F.3d 165 (5th Cir. 2000), where the court approved denial of remand of the original primary state claims to state court, holding: "Lastly, the district court did not abuse its discretion when it denied Plaintiffs' request to sever Defendants' third party claims from the primary claims and to remand those primary claims to state court." 231 F.3d at 182.

In *Birkinshaw v. Armstrong World Ind., Inc.*, 715 F.Supp.126 (E.D.Pa. 1989), the court retained the foreign state case brought to it under §1441(d) and remanded the state court claims removed along with that of the foreign state.

In this case, the Union defendants specifically state in their notice of removal, at paragraph 3, that the "claims against the removing parties are separate and independent from plaintiff's main

Page 13 of 22

claims against the third party plaintiffs in which plaintiff seeks damages from work related injuries

resulting from asbestos exposure.  Plaintiff's main claims do not require interpretation of collective

bargaining agreements or labor organization constitutes, nor do they pertain to the Labor

Management Relations Act, 29 U.S.C. § 185, et. seq., or the National Labor Relations Act, 29 U.S.C.

§ 151 et. seq."

If this court is not inclined to remand the entire action, based upon the serious procedural

infirmities in third party defendants' removal notices, then, in the interest of justice, this court should

sever the principal demand and the third party demands, and remand the principal claim to state court

and, in its discretion, retain jurisdiction over the third party claims.

Further, severing the third party demand from the principal demand and remanding the

principal demand serves an important practical consideration. While this court has discretion to

retain this asbestos-related lawsuit, the possibility exists that it could be made a part of multi-district

asbestos litigation pending in the Eastern District of Pennsylvania.  Here, when an existing state

court claim, which has no connection to federal court, has been brought into federal court, by virtue

of a third party demand, and that third party demand could then cause the entire action to be

transported from Louisiana, where the incidents complained of arose, to Pennsylvania, justice

warrants the remand of this action to the Louisiana state court in which it was originally filed, even

if this court must sever the main action in order to do so.

Further, as outlined in more detail below, a serious jurisdictional question exists over whether

this federal court, or any federal court, can entertain jurisdiction over claims related to a foreign government, ostensibly, South Africa – although South African Marine Corporation has not indicated with which government it is affiliated – and the State of Louisiana. The State of Louisiana, and its political subdivisions, enjoy sovereign immunity and cannot be sued in federal court. Plaintiff submits that a serious question exists, and before this court can proceed with jurisdiction of this action, a determination must be made regarding whether the Greater Baton Rouge Port Commission is a political subdivision of the State of Louisiana that can be sued in federal court. This fact – that plaintiff's claim in the main action involve the sovereign State of Louisiana – warrants the severance of the main demand from the incidental demand and remand of the main demand to state court

**F.      *The Greater Baton Rouge Port Commission, a defendant in the main action, is a political subdivision of the State of Louisiana and is protected from suit in federal court under the Eleventh Amendment of the United States Constitution.***

In fairness, plaintiff references *Jacintoport Corp. v. Greater Baton Rouge Port Comm.*, 762 F.2d 435 (5th Cir.), in which it was determined that the Port of Greater Baton Rouge was not a political subdivision of the State of Louisiana, but plaintiff avers that the decision in that particular case was based upon its specific record. Prior to the removal of the third party demands by the Union defendants and South African Marine, there was no question as to the ability of the Port of Greater Baton Rouge to be sued in Louisiana state court. Now that the third party defendants have removed this action to federal court, the Greater Baton Rouge Port Commission's status as a political subdivision is critical to this court's determination of whether it has jurisdiction over this action

Page 15 of 22

because even if the court may have jurisdiction over the claims of a foreign political subdivision in the third party demand, it should strongly consider remanding the principal action in which a political subdivision of the sovereign State of Louisiana is a party.

The 11th Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Plaintiff submits that under the Eleventh Amendment the Greater Baton Rouge Port Commission is a political subdivision and an "arm of the state" that indeed today merits immunity from suit in federal court.   While the Fifth Circuit Court of Appeals, *purely based on the record before it more than two decades ago,* found that in one instance[9] the Port Commission was not immune from suit under the Eleventh Amendment, plaintiff submits that the record today bears out that by the criteria used by the Fifth Circuit Court of Appeals today in deciding immunity questions, the Greater Baton Rouge Port Commission is clearly an "arm of the state" for purposes of being immune to suit in federal court.

In *Anderson v. Red River Waterway Commission,* 231 F. 3d 211 (C.A. 5 (La.) 2000) the United States Fifth Circuit Court of Appeals again took up this very question of when an *arm of the state* is immune from suit in federal court.  That court found that an entity is *not* immune from suit

---

[9]*Jacintoport Corp., v. Greater Baton Rouge Port Commission,* 762 F. 2d 435 (C.A. 5 1985).

in federal court under the Eleventh Amendment if it is "not an 'arm of the state' and that "'it possesses an identity sufficiently distinct from that of the State of Louisiana to place it beyond that shield,' " citing *Pendergrass v. Greater New Orleans Expressway Comm'n,* 144 F. 3d 342, 344 (5th Cir. 1998) and *Minton v. St. Bernard Parish Sch. Bd.,* 803 F. 2d 129, 131 (5th Cir. 1986).

Plaintiffs urge that the current and updated facts surrounding the composition and operation of the political subdivision of Louisiana that *is* the Greater Baton Rouge Port Commission demonstrate that the Greater Baton Rouge Port Commission is wholly a "Component Unit of The State of Louisiana," as it trumpets on the front cover of its own most recent publicized financial report, (see attached excerpts from the Port's "Comprehensive Annual Financial Report For The Twelve-Month Period Ended December 31, 2006) and that its operation, its employees, its authorized expenditures and fisc are so intertwined and dependent on the State of Louisiana as to be indistinguishable from the State. Plaintiff submits that lack of distinction from the State of Louisiana means under the Fifth Circuit Court of Appeals' analysis that the Greater Baton Rouge Port Commission is indeed an "arm of the state," and as such is immune from suit in federal court.

By the Port Commission's own admission in its "Comprehensive Annual Financial Report For The Twelve-Month Period Ended December 31, 2006" (excerpts attached here as Exhibit A), [10], the Greater Baton Rouge Port Commission was *created* by the state legislature "by virtue of Act 9 of the Regular Session of the 1952 Legislature of Louisiana, adopted as an amendment to the

---

[10]This is the most recent publicized financial report issued by the Greater Baton Rouge Port Commission that plaintiff could obtain.

Constitution of Louisiana as Section 29, Article VI thereof, and was created as an Executive Department (now a political subdivision) of the State of Louisiana." (See p. 6, Letter from Director of Finance and Administration, in excerpts attached here from Report.)

The Greater Baton Rouge Port Commission is audited according to Governmental Accounting Standards Board and the Government Finance Officers Association guidelines because it is in essence an entity of the state. (See p. 3, Letter from Director of Finance and Administration, in excerpts attached here from Report.) The Port Commission initiated "expropriation proceedings" in 2006, as only a governmental body can, in order to acquire property. (See p. 5 of Letter from Director of Finance and Administration in excerpts attached here from Report.)

The Port Commission's government is solely by a board of commissioners that is *directly appointed by the Governor of the State of Louisiana.* That Board of Commissioners, the Port Commission's report cites, has **all** "the power and authority to regulate the commerce and traffic within certain boundaries of the State of Louisiana and has charge of and administers public wharves, docks, sheds, landings and other structures useful for the commerce of the port area," – surely governmental functions there. (See . 6 of Letter from Director, in excerpts attached here from Report.) This is *unlike* the Red River Waterway Commission that the Fifth Circuit, in using its most recent analysis of whether a political subdivision was immune from suit in federal court or not, found was *not* an arm of the state because that Waterway Commission was governed by *locally appointed board members.* One of the factors that the Fifth Circuit looked to in finding whether an

Page 18 of 22

entity was a state entity was how much local control and autonomy the entity enjoys, and whether the entity is concerned with local or statewide issues.  Indeed, controlled completely by the head of the State of Louisiana, audited by State of Louisiana actors, it is an arm of the State of Louisiana

The state legislature controls the amount of indebtedness the Port Commission is allowed to approach, currently set by the legislature at "$100,000,000 evidenced by negotiable bonds or notes," (see p. 7 of Letter from Director, excerpts attached here from Report.)  Further, "existing Louisiana state statutes provide the Greater Baton Rouge Port Commission with legal authority to promulgate and implement reasonable standards for its cash management and investment operations." Every financial operation of this port is defined and overseen by the State of Louisiana. *This is a wholly state- controlled financial operation, and as such merits immunity as a state political subdivision from suit in federal court.*

The Governor-appointed Board of Commissioners approves and adopts the budget, constituting the authority of the Commission to" incur liabilities and authorize projected expenditures from the respective budgeted categories." (See p. 7 of Letter from Director, in excerpts attached here from Report.)

*One hundred percent* of  the Greater Baton Rouge Port Commission's employees' health and life insurance is provided through the State of Louisiana.  (See p. 8 of Letter from Director.) Further, "substantially all employees of the Port Commission are members of the Louisiana State Employees Retirement System....The System is a statewide public employee retirement system

(PERS) for the benefit of state employees...."   (See p. 40 of "Notes to Financial Statements,"

attached here from Report.  State statutes require an annual audit by an audit firm contracted by the

State of Louisiana's  Legislative Auditor.  (See p. 8 of Letter from Director.)

Plaintiff submits the Greater Baton Rouge Port Commission is wholly indistinguishable in

its financial and employee operations from an "arm of the state" as considered under the criteria used

by the Fifth Circuit in *Anderson,* and as such urges that the Port Commission retains its immunity

under the Eleventh Amendment as an arm of the state so as to bar suit against it in federal court.

**G.**    ***If this court is inclined to retain jurisdiction over both the principal and incidental
demands, plaintiff respectfully requests, without waiver of his jurisdictional defenses, a
right to conduct discovery on issues related to this court's jurisdiction over the claims
against the Greater Baton Rouge Port Commission and the allegedly foreign defendants.***

While plaintiff respectfully submits that he has set forth a compelling case for the remand

of this entire action, based upon the procedural and substantive infirmities of the removal notices that

brought this state court case to federal court, and that, in the alternative, this court should simply

remand the principal action, plaintiff would request an opportunity to conduct discovery and create

a record, if necessary, particularly regarding the status of the Greater Baton Rouge Port Commission

as a political subdivision of the State of Louisiana entitled to sovereign immunity protection so that

it cannot be sued in federal court, and, further, plaintiff would respectfully request, without waiver

of plaintiff's jurisdictional defects, that this court hold the ostensibly foreign defendants to strict

proof of their contentions that they are foreign political subdivisions, agencies or instrumentalities,

and afford plaintiff an opportunity to conduct meaningful discovery on this score before retaining

Page 20 of  22

jurisdiction

***H.***     ***Out of an abundance of caution, and solely to preserve the right, plaintiff, in his first pleading filed in federal court, and without waiver of any jurisdictional defect, avers that any foreign claim that would preclude his right to trial by jury violates the Seventh Amendment to the United States Constitution.***

Plaintiff simply wishes to reserve this argument, and does so without waiving any defense against federal jurisdiction, but, out of an abundance of caution, plaintiff avers that to the extent that claims against foreign entities must proceed without a jury, plaintiff is deprived of his rights under the Seventh Amendment to the United States Constitution. Moreover, the fact that these claims were removed to federal court further warrants severance of the main demand from the incidental demand and remand of the main demand to state court.

WHEREFORE, for all the foregoing reasons, plaintiff respectfully requests that this entire action be remanded to state court, or, in the alternative, that the court sever the main claim from the third party demands, and remand the main claim to state court.

By attorneys:

Edward J. Walters, Jr. (#13214)
Darrel J. Papillion (#23243)
Julie J. Baxter (#29756)
**MOORE, WALTERS, THOMPSON,
THOMAS, PAPILLION & CULLENS**
6513 Perkins Road
Baton Rouge, LA 70808
Telephone: (225) 766-1100

Page 21 of 22

## CERTIFICATE

I HEREBY CERTIFY that a copy of the above and foregoing has been mailed, postage prepaid, this date to all known counsel of record:

Stephen W. Glusman
**GLUSMAN, BROYLES & GLUSMAN**
Post Office Box 2711
Baton Rouge, LA 70821
sglusman@bellsouth.net

Richard P. Sulzer
**SULZER & WILLIAMS**
201 Holiday Boulevard, Suite 335
Covington, LA 70433
rsulzer@sulzerandwilliams.com

Norman C. Sullivan, Jr.
Philip C. Brickman
**FOWLER RODRIGUEZ**
400 Poydras Street
30th Floor
New Orleans, LA 70130
nsullivan@frc-law.com
prickman@frc-law.com

George J. Nalley, Jr.
**NALLEY & DEW**
2121 Ridgelake Drive, Suite 200
Metairie, LA 70001
george@gnalley.com

Patrick E. Costello
**MOULEDOUX, BLAND, LEGRAND & BRACKETT**
Suite 4250, 701 Poydras Street
New Orleans, LA 70139
pcostello@mblb.com

David M. Bienvenu, Jr.
**TAYLOR, PORTER, BROOKS & PHILLIPS**
Post Office Box 2471
Baton Rouge, LA 70821
david.bienvenu@taylorporter.com

Charles Schmidt
**CHRISTOVICH & KEARNEY**
601 Poydras Street
Suite 2300
New Orleans, LA 70130
cwschmidt@christovich.com

Jennifer M. Morris
DUPLASS  ZWAIN  BOURGEOIS  MORTON
PFISTER & WEINSTOCK
29th Floor, Three Lakeway Center
3838 N. Causeway Boulevard
Metairie, LA 70002
jmorris@duplass.com

Baton Rouge, Louisiana this _19th_ day of February, 2008.

_____
Darrel J. Papillion

Page 22 of 22



GREATER BATON ROUGE PORT COMMISSION

*Port of Greater Baton Rouge*

FOR THE TWELVE-MONTH PERIOD
ENDED DECEMBER 31, 2006

# Comprehensive Annual
# Financial Report

PLAINTIFF'S
EXHIBIT
A

A Component Unit of The State of Louisiana



*Greater Baton Rouge Port Commission*

## PORT OF GREATER BATON ROUGE

Post Office Box 380   •   Port Allen, Louisiana 70767-0380   •   Phone (225) 342-1660   •   Fax (225) 342-1666   •   www.portgbr.com

May 9, 2007

The Board of Commissioners
Greater Baton Rouge Port Commission
2425 Ernest Wilson Drive
Port Allen, Louisiana  70767

Dear Board of Commissioners:

There were several significant developments and new projects at the port in 2006, which will have positive impacts in the year ahead and beyond. These changes will influence the port's business model and diversify the revenue and cargo bases handled at the public port facilities. This diversification of the port cargo and revenue streams will sustain the port as a market leader among U.S. Gulf ports well into the future.

Many of the companies located within the port have expanded or have plans to expand which will provide for additional revenue and cargo as we move forward. The port was selected as one of two sites in the United States approved by the London Metal Exchange (LME) for the delivery and storage of plastics traded on the international futures market. The port was selected because of ideal access to multiple transportation options and because of its status as a foreign trade zone. This selection puts Baton Rouge in the same arena as other LME trade sites such as Antwerp, Singapore and Amsterdam. This project has given the port an international address both in the physical and financial markets globally.  This port was pleased to welcome Katoen Natie, Louisiana, L.L.C. as the operator for the packaging facility for the LME Plastics Exchange and as a private partner in this venture.

The port completed an agreement with Shaw Capital in May 2006 to construct two biofuels production facilities on port property. These  projects continue to move forward at a fast pace and have completed the environmental permitting process and are currently  in the design and engineering phase with plans to begin construction in the summer of 2007.  Phase one is projected at a cost of approximately $155 million and is expected to operational by early 2008. The total investment in these two projects has been projected to exceed $1.5 billion. A major benefit of these plants is that the port's existing infrastructure is well suited to handle agricultural products and the biofuels projects will provide new markets and additional demand for Louisiana agricultural commodities.

The port continues to place emphasis and strengthen its security for maritime infrastructure.  In Round 6 of the U.S. Department of Homeland Security, Port Security Grants, the port was awarded over $11 million.  The port continues to work closely with federal, state, local, and regional authorities within the port jurisdiction to insure an integrated approach.

- 1 -

*Greater Baton Rouge Port Commission*

One of the port's core goals is to expand upon its efforts to maintain and construct efficient maritime infrastructure at our port facilities. Through the port's maintenance and rehabilitation projects the maritime infrastructure continues to be in better condition today than it has been in quite sometime. New projects in 2006 include:

- The port entered into a long-term lease with Shaw Capital for the construction of biofuels facilities on port properties.
- The additional warehouse, rail spur and rail canopy was completed at the Inland Rivers Marine Terminal which increased capacity at the IRMT and in November 2006, and the port entered into a lease with Katoen Natie, Louisiana L.L.C. for the port's LME bagging and packaging operation which began operations in November 2006.
- A new lease with South Louisiana Cement for an additional 2.78 acres at IRMT to expand the facilities capabilities and thru-put.
- The port completed and implemented $1.6 million of security enhancements utilizing funds received from the Transportation Security Administration (TSA). These funds were used to enhance port security, lighting, fencing and an emergency response vessel for use in the Mississippi River.
- Piling system rehabilitation of $4.2 million was completed on General Cargo Dock No. 1.

Reviews of the financial statement data for the twelve-month period, the following results were noted. Operating revenues were $5,796,830 as compared to $5,175,440 in 2005, an increase of 12.0% this year. Operating expenses in 2006 increased reporting $6,705,172 as compared to $6,439,870 in 2005, an increase of 4.1% this year. Non-operating revenue of $902,901 was reported, primarily derived from investment income. The income statement indicated a net loss before capital contributions of $396,421 after depreciation, and the balance sheet indicated a $331,625 increase in total net assets.

Our focus at the port will continue being directed at fostering domestic and international trade to create jobs and investment opportunities for industries within the port region. Our Board of Commissioners has been crucial in the port's success as it develops policy and sets a future direction for the organization. Port staff appreciates the substantial support and leadership of the Port Commission. The present is an exciting time for Louisiana's maritime industry and a time of change and opportunity for the port. Together, we will build upon the tradition of success for an even brighter, stronger future for the Port of Greater Baton Rouge and the Baton Rouge region as we move forward.

Sincerely,

*Jay Hardman*

Jay Hardman, P.E.
Executive Director
JH:kks

2

*Greater Baton Rouge Port Commission*



**PORT OF GREATER
BATON ROUGE**

Post Office Box 380  •  Port Allen, Louisiana 70767-0380  •  Phone (225) 342-1660  •  Fax (225) 342-1666  •  www.portgbr.com

May 2, 2007

Board of Commissioners and Executive Director
Greater Baton Rouge Port Commission
Port Allen, Louisiana

The Comprehensive Annual Financial Report of the Greater Baton Rouge Port Commission (the Commission), for the twelve-month period ended December 31, 2006, as prepared by the Finance Department, is hereby submitted for your review. This report was processed under the guidance of the Executive Director by the staffs of the Administration and Finance and Sales and Marketing departments. Responsibility for the completeness, accuracy and fairness of the presentation rests with the Finance Director and support staff.

To the best of our knowledge, all data is accurate with regard to all material aspects and is reported in a manner that is designed to fairly present the financial position of the Commission. Disclosures necessary to enable the reader to understand the Commission's financial activities have been included.

Generally Accepted Accounting Principles also requires a Management's Discussion and Analysis (MD&A) that is designed to complement this letter of transmittal and the basic financial statements. The Port's MD&A can be found in the financial section immediately following the report of the independent auditors.

### ORGANIZATION AND CONTENT

This Comprehensive Annual Financial Report has been prepared in accordance with guidelines recommended by the Governmental Accounting Standards Board and the Government Finance Officers Association. It consists of four sections:

1.  **Introductory Section** - This section includes the Executive Director's message, this letter of transmittal, a copy of the 2005 Government Finance Officers Association Certificate of Achievement Award, an organizational chart and a list of Commissioners and Directors.

2.  **Financial Section** - This section includes the auditor's report, management's discussion and analysis, the audited financial statements, including notes to the statements, and supplementary information.

- 3 -



3.  **Statistical Section** - This section contains a revenue and expense comparison for ten years, information relative to cargo handled at the different facilities over five and ten year periods, with related graphs.

4.  **Compliance Section** – This section includes the auditor's report on compliance and on internal control over financial reporting, based on their audit of the financial statements.

## ECONOMIC OUTLOOK

The year 2006 was a period where future growth and port facility expansion was in focus. While the southern most part of the state continued to deal with hurricane Katrina and Rita recovery issues, areas farther inland, such as the Port of Greater Baton Rouge, were being looked at for relocation and expansion possibilities. The port continued its focus on trying to acquire additional land with waterfront development potential, one of its long term growth needs. A major new initiative which was embraced during the year was the proposed construction of an ethanol plant on all of the remaining green space at the port's main complex. Building this facility will maximize land use at this location, thus confirming the need for additional property on which to grow.

As we examine the year's financial and statistical data, we find mixed results for the year from an operational standpoint. While operating revenues increased by 12.0% over 2005 due to dockage and rental charges, an examination of tonnage handled at public facilities indicates an overall tonnage decrease of 35.9 %. Fortunately, the largest decrease (approximately 30%) resulted from the tonnage reported at the Burnside bulk handling facility, a facility which the port sold in recent years and for which we are now no longer reporting. Two of seven major facilities indicated tonnage increases over 2005 while the others reported slight to moderate decreases. In that the port is important to the storage and transportation of locally manufactured goods, it is good to know that the overall condition of the state and local economy was positive during the period as the petrochemical manufacturing sector held steady during a continued period of relatively high fuel costs. Natural gas, a principal source of fuel and feed stock for much of the state's industry, experienced a slight decrease in average price during 2006 after reaching a record high in 2005. This cost savings, plus advances in technology, was a benefit to manufacturing sector production which continued to drive a need for the utilization of port storage facilities and related infrastructure.

Once again, we believe that maintaining diversified operations at the port provides real business strength for the present as well as for the future. In following this emphasis, we expect to produce an economic buffer against changes in market conditions that might otherwise produce a severe negative impact on our revenue stream.

As previously mentioned, operating revenue for 2006 was up from 2005. It changed from $5,175,440 in 2005 to $5,796,830 in 2006, up 12.0%. Combined operating and non-operating revenue was recorded at $6,699,731, which was up by $1,231,603 over the same period in 2005. The primary reason for the improvement can be attributed to increases in rentals, dockage and investment income. Net assets increased by $331,625 due to an increase in unrestricted assets

- 4 -

*Greater Baton Rouge Port Commission*

and a decrease in total liabilities from the previous year. **Total net assets** were $62,238,972 at year-end, as compared to $61,907,347 in the previous year.

As is typical within the port industry, factors related to the local, national and international economy continue to play a significant role in our level of success.  Our goal is to continue current efforts to grow the port as opportunities for cargo movement expand and to foster economic development within the port's jurisdiction when possible.  It is expected that changes such as the strengthening or weakening of the dollar against foreign currencies, world energy demand, a focus on the need to be less fossil fuel dependent, and an overall population growth in the southern region of the United States, will all have a significant impact on the future of this port.

As staff continues to focus on diversification **and future** growth, it will work to provide opportunities and incentives so that our business community will have the ability to expand or to entice new business to locate and operate within the port's jurisdiction.  As this is accomplished, there will be opportunities to increase the port's revenue base as well as to stimulate new benefits for our local, state, and national economies.

## MAJOR INITIATIVES

The board continued with it's pursuit of acquiring additional land for future development. After acquiring 188 acres of waterfront property along the Gulf Intracoastal Waterway in 2004, it was decided to seek the purchase an additional 265 acres that is contiguous to the 188 acre site. When negotiating with the current landowners for the sale, a purchase price could not be agreed upon. Expropriation proceedings were then initiated by the port in 2006 for the acquisition of this property with the hope that the land purchase would be completed in 2007.

Expansion of the leased petroleum terminal was almost complete at year end.  This expansion will provide extra storage capacity at this facility which will allow for greater thru-put and increased revenues. The petroleum facility was one of the facilities that reported an increase in tonnage in 2006.

After doubling the size of the Inland Rivers Marine Terminal Warehouse to 42,000 sq. ft. in 2005, this site was leased to Katoen Natie Gulf Coast, Inc. for a plastics packaging operation in 2006.  This operation began as a result of the London Metals Exchange designating the port as a storage site for plastics traded in the international futures market.  This was new initiative that will have a significant impact on the port if the operations are deemed to be viable and demand on an international basis is prevalent.

As part of the national Homeland Security initiative, the port continued with the placement of security equipment and fencing at port operated facilities during the year.  In addition to this, a new federal grant was approved for the installation of boat launch ramps to allow security vessels to access the water at different points on the Mississippi River.  When constructed, these facilities will enhance response time for maritime related emergencies which occur within the port's four parish jurisdiction.

- 5 -

*Greater Baton Rouge Port Commission*

The single most significant project the port has considered in recent years is the lease of property for the construction of a new ethanol plant at the port's main complex in Port Allen, La. This project was initiated in 2006 with the lease of approximately 45 acres of land on which to construct this new $155 million facility. The use of all remaining available space, the potential for substantial new revenue from tonnage generated, and the synergy gained from the purchase of raw materials from existing tenants, all have the potential of providing the largest benefit to the port of any project in recent history. Not only this, the impact will be even greater in future years if the owner expands the capacity of the manufacturing facility as is currently anticipated.

### FINANCIAL CONDITION

As demonstrated by the statements and schedules included in the financial section of this report, the Commission continues to be in sound financial condition.

### REPORTING ENTITY

The Greater Baton Rouge Port Commission was established by virtue of Act 9 of the Regular Session of the 1952 Legislature of Louisiana, adopted as an amendment to the Constitution of Louisiana as Section 29, Article VI thereof, and was created as an Executive Department (now a political subdivision) of the State of Louisiana. The Commission is governed by a board of commissioners and has the power and authority to regulate the commerce and traffic within certain boundaries of the State of Louisiana and has charge of and administers public wharves, docks, sheds, landings and other structures useful for the commerce of the port area.

### FINANCIAL REPORTING

The financial statements of the Commission have been prepared in accordance with generally accepted accounting principles applicable to governments and to the guidelines set forth in the industry audit guide, *Audits of State and Local Governmental Units.* The Greater Baton Rouge Port Commission adopted the provisions of Governmental Accounting Standards Board Statement No. 34, *Basic Financial Statements – and Management's Discussion and Analysis – For State and Local Governments;* Statement No. 37, *Basic Financial Statements – and Management's Discussion and Analysis – For State and Local Governments.*

The Commission is a component unit of the State of Louisiana and includes only the financial information of this component unit.

### FUND DESCRIPTION

The Greater Baton Rouge Port Commission has only one fund to which all accounts are organized and accounted for as a single entity. This fund is operated as an Enterprise Fund. Enterprise Funds are used to account for operations that are financed and operated in a manner similar to private business enterprises, where the intent of the governing body is that costs (expenses, including depreciation) of providing goods or services to the general public be financed or recovered primarily through user charges.

- 6 -

*Greater Baton Rouge Port Commission*

## INTERNAL CONTROLS

The management of the Commission is responsible for establishing and maintaining internal controls over its operations.   In fulfilling this responsibility, estimates and judgments by management are required to assess the expected benefits and related costs of internal control policies and procedures.   The objectives of internal controls are to provide management with reasonable, but not absolute, assurance that assets are safeguarded against loss from unauthorized use or disposition, and that transactions are executed in accordance with management's authorization and recorded properly to permit the preparation of financial statements in accordance with generally accepted accounting principles.   The concept of reasonable assurance recognizes that the costs of a control should not exceed the benefits likely to be derived and that the evaluation of the costs and benefits requires estimates and judgments by management.

## BUDGETARY CONTROL

The Commission staff prepares an annual Operations and Maintenance budget that is based on expected collections and expenditures, for the fiscal year.  The Board of Commissioners approves and adopts the budget, which constitutes the authority of the Commission to incur liabilities and authorize projected expenditures from the respective budgeted categories.

In addition, the Commission approves certain expenses from the general fund account for maintenance of existing facilities and for new construction, on an as needed basis.

Monthly financial statements, which compare actual performance with budget, are presented to the Commission for review of the financial status and to measure the effectiveness of the budgetary controls.

## DEBT ADMINISTRATION

The Commission is authorized by the state legislature to have outstanding indebtedness of up to $100,000,000 evidenced by negotiable bonds or notes.

The Greater Baton Rouge Port Commission has outstanding Bond indebtedness of $6,978,406 through a 1989A and 1999B Series issue.  These bonds mature serially to the year 2019.   The bonds are limited and special obligations payable solely from lawfully available funds and certain funds held by the Trustee pursuant to the Trust Indenture. No other assets are available for payment of the principal or interest on the Bonds.

## CASH MANAGEMENT

Existing Louisiana state statutes provide the Greater Baton Rouge Port Commission with legal authority to promulgate and implement reasonable standards for its cash management and investment operations. Therefore, in 1993 the Commission adopted a Statement of Investment and Cash Management Guidelines and Procedures.

- 7 -

*Greater Baton Rouge Port Commission*

The purpose of this statement is to identify policies and procedures that provide for a prudent and systematic approach to the investment and cash management activities of the Commission, including the active management of the Commission's longer term portfolios, management of cash, projections of cash flow, control of disbursements and cost effective services from bank and financial services institutions.

## RISK MANAGEMENT

The Greater Baton Rouge Port Commission is constantly reviewing its property and liability coverage and is cooperating with its insurance underwriters in a program of risk reduction. The Commission requires its tenants and subcontractors to provide comprehensive coverage for all areas of risk, inclusive of worker's compensation insurance. In addition, the Commission offers employee safety education programs to reduce claims for Worker's Compensation.

Programs for employee health and life insurance are provided through the State of Louisiana. The state provides life and health coverage to its employees, their dependents and retirees. The Commission pays 100% for employees and up to 75% of costs for each eligible retiree who participates in the program. Other supplemental insurances are available to employees. Such coverage's are optional and are paid entirely by the individuals electing to carry them.

## INDEPENDENT AUDIT

State statutes require an annual audit by either an independent certified public accountant or the Legislative Auditor. The Louisiana Legislative Auditor elected to contract this service to the independent CPA firm, Duplantier, Hrapmann, Hogan & Maher, L.L.P., for the audit years 2005-2007. The auditor's report on the component unit financial statements is included in the financial section of this report.

## AWARDS

The Government Finance Officers Association (GFOA) awarded a Certificate of Achievement for Excellence in Financial Reporting to the Port Commission for its comprehensive annual financial report for the year ended December 31, 2005. This was the 12th consecutive year the Port Commission received this prestigious award. To be awarded a Certificate of Achievement, the Port Commission published an easily readable and efficiently organized comprehensive annual financial report. This report satisfied both generally accepted accounting principles and applicable legal requirements.

A Certificate of Achievement is valid for a period of one year only. We believe that our current comprehensive annual financial report continues to meet the Certificate of Achievement Program's requirements, and we are submitting it to the GFOA to determine its eligibility for another certificate.

- 8 -

*Greater Baton Rouge Port Commission*

## ACKNOWLEDGEMENTS

The preparation of this report could not have been accomplished without the efficient and dedicated efforts of the staff of the finance/administration department support of the executive department and the personnel of the firm, Duplantier, Hrapmann, Hogan & Maher, L.L.P.  Special recognition is given to Brad Stueber, Accountant Administrator, and his staff, for their extraordinary efforts.

Respectfully submitted,

*Alfred D. Starns*

Alfred D. Starns
Director Finance and Administration

- 9 -

*Greater Baton Rouge Port Commission*

## GREATER BATON ROUGE PORT COMMISSION
## STATE OF LOUISIANA
## NOTES TO FINANCIAL STATEMENTS
## DECEMBER 31, 2006 AND 2005

9   LEASES:  (Continued)

The following is a schedule by years of future minimum rental payments receivable on non-cancelable long-term leases as of December 31:

| Year Ended<br>December 31 | Future<br>Rental<br>Revenues |
|---|---|
| 2007 | $  1,354,172 |
| 2008 | 1,037,609 |
| 2009 | 767,958 |
| 2010 | 623,418 |
| 2011 | 368,372 |
| Later Years | 292,747 |
| Total Minimum Future Rentals | $  4,444,476 |

For the purpose of these statements, the lease amount as set forth in the original lease agreement or set by the most recent appraisal was used in the determination of the minimum future rentals on long-term leases and thus is subject to change.

10  RETIREMENT SYSTEM:

Substantially all employees of the Port Commission are members of the Louisiana State Employees Retirement System (System), a cost-sharing, multiple-employer defined benefit pension plan.  The System is a statewide public employee retirement system (PERS) for the benefit of state employees, which is administered and controlled by a separate board of trustees

All full-time Port Commission employees are eligible to participate in the System Benefits vest with 10 years of service   At retirement age, employees are entitled to annual benefits equal to $300 plus 2.5% of their highest consecutive 36 months' average salary multiplied by their years of credited service.  Vested employees may retire at (a) any age with 30 years of service, (b) age 55 with 25 years of service, or (c) at age 60 with 10 years of service.  In addition, vested employees have the option of reduced benefits at any age with 20 years of service.  The System also provides death

- 40 -