MDL 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY - 9 2008

FILED
CLERK'S OFFICE

PLEADING NO. 5 4 4 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BEFORE THE JUDICIAL PANEL

ON MULTIDISTRICT LITIGATION

IN RE ASBESTOS PRODUCTS
LIABILITY LITIGATION (NO. VI)          MDL DOCKET NO. 875

ROBERT REASER, et al.,                 UNITED STATES DISTRICT COURT
      Plaintiffs,                      CENTRAL DISTRICT OF CALIFORNIA
      v.
ALLIS-CHALMERS CORP. PRODUCT
LIABILITY TRUST, et al.,               CASE NO. CV08-01296
      Defendants.

**RESPONSE TO PLAINTIFFS' MOTION TO VACATE THE CONDITIONAL
TRANSFER ORDER**

      Plaintiffs have filed a Motion for an Order Vacating the Conditional Transfer Order No.

304 in this asbestos case.  General Electric Company ("GE") hereby opposes this motion and

requests that it be denied.

      **I.    FACTUAL BACKGROUND**

      On January 25, 2008, a personal injury and loss of consortium asbestos-related action was

filed in the California Superior Court for the County of Los Angeles -- *Robert Reaser, et al. v.*

OFFICIAL FILE COPY

1   *Allis Chalmers Corporation Product Liability Trust, et al.,* Case No. BC 384385.[1]  In their

2   complaint, Plaintiffs seek to hold GE responsible for actions it took under the authority of

3   officers of the United States Navy within the meaning of 28 U.S.C. section 1442(a)(1) –

4   specifically, Plaintiffs claim that GE is liable to them under a variety of state law-based theories

5   arising from Mr. Reaser's alleged exposure to asbestos from GE marine turbines and other

6   equipment aboard U.S. Navy ships, including the USS Boston, the USS Providence, and the USS

7   Wilkinson.  Based on these claims, and GE's federal defense to them, GE timely and properly

8   joined in defendant Viad's removal of this action to the Central District of California Court on

9   March 7, 2008.  The case was ultimately assigned to Judge Steven Wilson.  At the time of the

10  removal, Viad notified the Judicial Panel on MultiDistrict Litigation ("Panel") of this tag-along

11  asbestos action.

12       GE filed a motion to stay the action in Judge Wilson's courtroom, pending transfer of this

13  case by the Panel to the Eastern District of Pennsylvania for consolidated pretrial proceedings.

14  The hearing on the Motion for Stay is set for May 12, 2008.  Plaintiffs filed a Motion for Remand

15  on April 14, 2008, with a hearing date also set for May 12, 2008.[2]

16                    **II.    DISCUSSION**

17  A.    **Plaintiffs' Motion to Vacate the CTO Should Be Denied, Because This Case –**
        **Like All Other Federal Asbestos Cases – Should Be Transferred to the**
18      **Eastern District of Pennsylvania**

19       In their motion to vacate the CTO, Plaintiffs have not argued that their case somehow

20  does not present common questions of fact with the other asbestos cases previously transferred to

21  the Eastern District.  This is not surprising, since Plaintiffs' claims clearly present common

22  issues of fact and law with the previously transferred cases.  There is nothing unusual about Mr.

23

24       [1] Complaint is attached as Exhibit A to the Declaration of Katherine P. Gardiner ("Gardiner

25  Decl."), filed concurrently herewith.
         [2] Plaintiffs' Motion to Vacate CTO-304 does not include any averments set forth in numbered

26  paragraphs as required under Rule 7.1(a) of the Rules of Procedure of the Judicial Panel on
    Multidistrict Litigation ("JPML").  Consequently, GE's opposition to Plaintiffs' Motion to

27  Vacate CTO-304 does not include any corresponding responses to averments as required under
    JPML Rule of Procedure 7.1(b).

28

---

1    Reaser's work history or alleged disease that would distinguish his case from the other cases now

2    pending before Judge Giles.  This case will present the usual kinds of questions of fact common

3    to pretrial proceedings in all other asbestos personal injury cases — questions relating to

4    Plaintiff's work history, the nature and duration of his alleged exposure to asbestos, the

5    identification of those asbestos products, and the nature and causation of Plaintiff's alleged

6    disease.  Moreover, insofar as GE is concerned, this case will involve the applicability of the

7    government contractor defense, as set forth in *Boyle v. United Technologies Corp.*, (1988) 487

8    U.S. 500, to Plaintiffs' claims against it.  Accordingly, for the reasons set forth in *In re Asbestos*

9    *Products Liability Litigation (No. VI)*, this case should be transferred to the Eastern District of

10   Pennsylvania for coordinated pretrial proceedings before Judge Giles.

> **1.   This Case Should Be Transferred to the Eastern District of Pennsylvania Because It Shares Common Questions of Fact With Other Asbestos Cases Consolidated There**

13         Plaintiffs offer virtually no legal support for their motion grounded in either the statute

14   embodying Congress's desire that federal actions of certain kinds be consolidated in particular

15   federal courts (*see* 28 U.S.C. Section 1407), in this Panel's 1991 decision to consolidate all

16   federal asbestos actions in the Eastern District of Pennsylvania, or in any other statute or case

17   law.  Plaintiffs do not – because they cannot – offer any evidence that this case is not one sharing

18   "common questions of fact" (*see* 28 U.S.C. Section 1407(a)) with other asbestos actions

19   consolidated in that district court.  According to 28 U.S.C. Section 1407(a), civil actions

20   involving "one or more common questions of fact" may be transferred to a particular district for

21   consolidated pretrial proceedings.  Transfers to the appropriate district court "*shall* be made by

22   the judicial panel  . . . upon its determination that transfers for such proceedings will be for the

23   convenience of the parties and witnesses and will promote the just and efficient conduct of such

24   actions."  (*Id.;* emphasis added.)  In its 1991 decision transferring all federal asbestos actions to

25   the Eastern District of Pennsylvania, this Panel noted that the proper forum for resolution of

26   pretrial substantive and procedural issues – such as plaintiffs' Motion for Remand in this case –

27   is "the transferee court."  *See In re Asbestos Products Liability Litigation (No. VI)*, 771 F.Supp.

28   415, 421 (J.P.M.L 1991), *citing* 28 U.S.C. Section 1407(a).  According to the CTO transferring

1  this action, scores of federal asbestos cases have been transferred to the Eastern District of

2  Pennsylvania.  In subsequent asbestos transfer orders, the Panel has stated time and again that "in

3  the Panel's original decision [*In Re Asbestos Products Liability Litigation (No. VI)*], distinctions

4  based on such matters as *the pendency of motions* . . . before the transferor court, the uniqueness

5  of a party's status, the stage of pretrial proceedings, [and] the presence of unique claims . . . were

6  considered and rejected by the Panel as grounds for carving out exceptions to transfer in this

7  extraordinary docket." *Id.*  Plaintiffs offer no argument as to how their case differs in any

8  relevant aspect from the other federal asbestos cases pending in the MDL, nor any reasons why it

9  should be treated differently from them.

10        **2.      The Proper Forum for Plaintiffs' Motion to Remand is the Central
                    District of California**

11

12        Instead of providing any factual or legal argument for vacating the CTO, Plaintiffs

13  dedicate over nine pages of their present motion to a substantive argument in favor of remanding

14  this case to Los Angeles Superior Court.  Plaintiffs are making this argument to the wrong court.

15  Under its governing statute, 28 U.S.C. § 1407, this Court has the power only to transfer cases to

16  federal district courts for "coordinated or consolidated pretrial proceedings," and to ensure cases

17  so transferred are returned to the federal transferor court upon the conclusion of such

18  proceedings.  Plaintiffs' arguments should be made — and, in fact, have been made — in papers

19  filed in the District Court for the Central District of California.  Suffice it to say here that GE has

20  opposed Plaintiffs' Motion for Remand with sufficient evidence and authorities to sustain its

21  removal, both as to the timeliness of the removal and as to the appropriateness of the removal

22  under 28 U.S.C. § 1442(a)(1) (the "federal officer removal" statute).[3]

23  _____

24      [3]   GE has recently defeated similar remand motions made under substantially similar facts,
        as set forth in the Central District of California's orders denying remand in *Oberstar v. CBS*

25  *Corp.,* No. CV08-118 PA (C.D. Cal. Feb 11, 2008), *Lindquist v. Cla-Val Co.,* No. CV08-501 R
        (C.D. Cal. Apr 14, 2008), *Kelemen v. Buffalo Pumps, Inc.,* No. CV08-712 R (C.D. Cal. Apr 14,

26  2008), and *Munn v. Cla-Val Co.,* No. CV08-282 R (C.D. Cal. Apr 14, 2008).  *See* Gardiner
        Decl., ¶ 4 and Exh. C.  *See also Marley v. Elliot Turbomachinery, et al.,* 2008 U.S. Dist. LEXIS

27  33715 (S.D. Florida 2008) *and O'Connell v. Foster Wheeler, et al.,* 2008 U.S. Dist. LEXIS
        27857 (D. Mass 2008), attached as Gardiner Decl. Exh. C.

28

1        Plaintiffs' sole argument for vacating the CTO is their argument that the Central District

2  of California must hear Plaintiffs' Motion to Remand.  Plaintiffs are mistaken.  Plaintiffs wholly

3  misstate the law when they assert that "[j]urisdictional issues… must be resolved before transfer

4  by this Panel."  (Plaintiffs' Motion at p. 2.)  To the contrary, this Panel has made perfectly clear

5  that transferor "courts wishing to address such motions [to remand] have adequate time in which

6  to do so, those courts concluding that such issues should be addressed by the transferee judge

7  need not rule on them, and the process of 1407 transfer in MDL-875 can continue without any

8  unnecessary interruption or delay."  *In re Asbestos Prods. Liab. Litig. v. Int'l Paper Co.* (2001)

9  170 F. Supp. 2d 1348, 1349 fn. 1.  That is precisely the process that is occurring here –

10  Plaintiff's Motion to Remand will be heard on May 12, 2008 by Judge Wilson of the Central

11  District of California.  The pendency of this hearing is no basis for vacating the CTO.[4]

12        **3.**      **Plaintiffs Have Not Demonstrated That They are Entitled To Expedited Trial Setting**

13

14        Plaintiffs' motion states, without any evidentiary support, that they are entitled to a trial in

15  Los Angeles Superior Court within 120 days because of Mr. Reaser's declining health.  However,

16  Plaintiffs have failed to provide this Court or GE with any information at all regarding the

17  current state of Mr. Reaser's health.  Plaintiffs have not presented the Court or GE with any

18  medical records or treating physician's declarations that prove Mr. Reaser is in danger of an

19  imminent death.  To the contrary, Plaintiffs' actions in this case have shown a surprising

20

21        [4] This Panel has similarly made clear that the Eastern District of Pennsylvania is wholly

22  capable of ruling on any Motion to Remand that Plaintiffs may bring:

23        Finally, with respect to any parties that believe the uniqueness of their particular
          situation renders inclusion of their action in MDL-875 unnecessary or inadvisable,

24        we are confident that [the Eastern District of Pennsylvania Judge] will continue to
          promptly review arguments for returning transferred actions or claims to their

25        transferor courts and will take all appropriate steps to assure their speedy return
          whenever he is convinced that retention in the MDL-875 proceedings is no longer

26        needed.

27  *In re Asbestos Prods. Liab. Litig., supra*, 170 F. Supp. 2d at 1350.

28

1    disregard of timeliness and no sense of urgency.  Though Plaintiffs' case was removed to the

2    Central District of California on February 26, 2008, Plaintiffs waited until April 14, over six

3    weeks later, to bring a motion to remand the case to state court.  Similarly, though this Panel

4    issued its Conditional Transfer Order on March 20, 2008, Plaintiffs have again waited over three

5    weeks, until April 18, to move to vacate that order.

6         Furthermore, Plaintiffs have filed and are prosecuting a separate state court action --

7    based upon the same alleged exposure to asbestos at issue in this Federal case -- against

8    approximately fifty named defendants and four-hundred-and fifty Doe defendants.  That case,

9    located in the California Superior Court for the County of Los Angeles, case number BC 384772,

10    was filed on February 1, 2008.[5]  Clearly no real prejudice will result to Plaintiffs should the

11    JPML transfer this case to the Eastern District of Pennsylvania.  However, the convenience of, or

12    hardship to, individual plaintiffs is irrelevant to this Panel's transfer analysis.  In the context of

13    multidistrict litigation, the convenience of the parties and witnesses must be viewed from a

14    comprehensive group perspective rather than from the perspective of any one party or witness.

15    *See In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 333 F. Supp. 299,

16    304 (S.D.N.Y. 1971) (construing 12 U.S.C. § 1404(a), which uses the same language as the

17    multidistrict litigation statute, and stating that, "instead of looking to the individual convenience

18    of *each* party and *each* witness, the court must look to the overall convenience of all parties and

19    witnesses").  This Panel "must weigh the interests of all the plaintiffs and all the defendants, and

20    must consider multiple litigation as a whole in light of the purposes of the law." *In re Nat'l*

21    *Student Mktg. Litig.*, 368 F. Supp. 1311, 1317 (J.P.M.L. 1973) (internal quotation marks

22    omitted).  Because there are "a number of inherent inconveniences in transfers for coordinated or

23    consolidated pretrial" proceedings, the "basic question before the Panel is … whether the

24    objectives of the statute are sufficiently served to justify the necessary inconveniences of transfer

25    and remand." *In re "East of the Rockies" Concrete Pipe Antitrust Cases*, 302 F. Supp. 244, 254-

26    55 (J.P.M.L. 1969) (Weigel, J., concurring).

27

28      [5] The Complaint thereto is attached as Gardiner Decl. Exh. B.

Transfer to the MDL is to "promote the just and efficient conduct" of the actions, and implements the prime objective of the multidistrict litigation statute, which Congress enacted "as a means of conserving judicial resources in situations where multiple cases involving common questions of fact were filed in different districts." *In re Food Lion, Inc., Fair Labor Standards Act "Effective Scheduling" Litig.*, 73 F.3d 528, 531-32 (4th Cir. 1996); *see also In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) ("It is expected that such transfer is to be ordered only where significant economy and efficiency in judicial administration may be obtained.") (*quoting* H.R. Rep. No. 1130 (1968), *reprinted in* 1968 U.S.C.C.A.N. 1898, 1900) (internal quotation marks omitted).

**B.**      **Vacating the CTO Would Waste the Time and Resources of this Court and of the Parties; However, GE Does Not Oppose a Stay of the CTO Until the Central District Rules on Plaintiff's Motion to Remand.**

Plaintiffs' motion is styled as a motion to vacate the CTO. However, Plaintiffs' argument relies only on their belief that the Central District of California should hear and decide their motion for remand. GE does not oppose a stay of the CTO until such time as the Central District of California decides Plaintiffs' motion. GE does, however, oppose Plaintiff's motion to vacate the CTO. Plaintiffs have made no argument, and have produced no evidence, that their case does not present questions of fact similar to those previously transferred to the Eastern District. As discussed above, Plaintiffs' case is typical of the scores of asbestos cases already transferred to the Eastern District for coordinated pretrial proceedings. Plaintiffs' attempt to reopen the general issue of the advantages and disadvantages of coordinated pretrial discovery proceedings for asbestos personal injury cases is belated; that issue has already been decided by this Court in *In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (JPML 1991). Further, Rule 1.5 of this Court provides that the "pendency of a [CTO] does not affect or suspend proceedings in the district court in which the action is pending and does not limit the pretrial jurisdiction of that court." Thus, it would be a waste of the time and resources of this Court and of the parties to vacate the CTO, only to reissue it if the motion to remand is denied.

## III.      CONCLUSION

For all of the reasons discussed above, GE respectfully requests that Plaintiff's Motion To Vacate the Conditional Transfer Order be denied. However, if it is deemed appropriate, GE has

1 no objection to a stay of the CTO until such time as the Central District of California has ruled

2 on Plaintiffs' motion to remand.

3 Dated: May 7, 2008                                   SEDGWICK, DETERT, MORAN & ARNOLD LLP

4

5 By _____

6   Katherine P. Gardiner
    Charles T. Sheldon

7   Sedgwick, Detert, Moran & Arnold LLP
    One Market Plaza, Steuart Tower, 8th Floor

8   San Francisco, CA  94105
    415-781-7900 (phone) / 415-781-2635 (facsimile)

9   Attorneys for Defendant
    GENERAL ELECTRIC COMPANY

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RECEIVED
CLERK'S OFFICE
2008 MAY -8 P 3: 16
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

GE'S RESPONSE TO MOTION TO VACATE CTO NO. 304 -- MDL DOCKET NO. 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY - 9 2008

1 **PROOF OF SERVICE**

FILED
CLERK'S OFFICE

2      I am a resident of the State of California, over the age of eighteen years, and not a party to
the within action.  My business address is Sedgwick, Detert, Moran & Arnold LLP, One Market
3 Plaza, Steuart Tower, 8th Floor, San Francisco, California 94105.  On May 07, 2008, I served the
within document(s):
4
       **RESPONSE TO PLAINTIFFS' MOTION TO VACATE THE**
5      **CONDITONAL TRANSFER ORDER**

6      ☐      FACSIMILE - by transmitting via facsimile the document(s) listed above
to the fax number(s) set forth on the attached Telecommunications Cover Page(s)
7      on this date before 5:00 p.m.

8      ☒      MAIL - by placing the document(s) listed above in a sealed envelope with postage
thereon fully prepaid, in the United States mail at San Francisco, California
9      addressed as set forth below.

10                    **SEE ATTACHED SERVICE LIST**

11

12     ☐      PERSONAL SERVICE - by personally delivering the document(s) listed above to
the person(s) at the address(es) set forth below.

13     ☒      OVERNIGHT COURIER - by placing the document(s) listed above in a sealed
envelope with shipping prepaid, and depositing in a collection box for next day
14     delivery to the person(s) at the address(es) set forth below via CALIFORNIA
OVERNIGHT
15
       **Brian P. Barrow**
16     **Simon Eddins & Greenstone**
       **301 East Ocean Blvd., Suite 1950**
17     **Long Beach, CA 90802**

18

19     I am readily familiar with the firm's practice of collection and processing correspondence
for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same
20 day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on
motion of the party served, service is presumed invalid if postal cancellation date or postage
21 meter date is more than one day after date of deposit for mailing in affidavit.

22     I declare that I am employed in the office of a member of the bar of this court at whose
direction the service was made.
23
       Executed on May 07, 2008, at San Francisco, California.
24

25                    *Nanette R. John*
26                    NANETTE R. JOHNSON

27

28

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

SF/1508473v1

1
2

# SERVICE LIST

3

Brian P. Barrow
Simon Eddins & Greenstone
301 East Ocean Blvd., Suite 1950
Long Beach, CA 90802

Reginald S. Kramer
Oldham & Dowling
195 South Main Street, Suite 300
Akron, OH 44308-1314

4
5

Richard C. Binzley
Thompson Hine LLp
127 Public Square
3900 Key Center
Cleveland, OH 441114

David C. Landin
Hunton & Williams LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

6
7
8

Edward J. Cass
Gallagher Sharp Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

Peter B. Langbord
Foley & Mansfield PLLP
150 S Los Robles Avenue, Suite 400
Pasedena, CA 91101

9
10
11

Adam M. Chud
Goodwin Procter LLP
901 New York Avenue, N.W.
Washington, D.C. 20001

Gene Locks
Locks Law Firm LLC
1500 Walnut Street
Philadelphia, PA 19102

12
13
14

David A. Damico
Burns White & Hickton LLC
Four Northshore Center
106 Isabella Street
Pittsburgh, PA 15212

Ronald L. Motley
Motley Rice LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

15
16
17

Raymond P. Forceno
Forceno Goggin & Keller
1528 Walnut Street, Suite 900
Philadelphia, PA 19102

John S. Murray
Walsworth Franklin Bevins & Mccall
One City Blvd., West 5th Floor
Orange, CA 92868-3604

18
19

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

Glen R. Powell
Gordon & Rees LLP
Embarcadero Center West
275 Batery Street, 20th Floor
San Francisco, CA 94111

20
21
22

Julia A. Gowin
Palmieri Tyler Wiener
Wilhelm & Waldron
East Tower, Suite 1300
2603 Main Street
Irvine, CA 92614

John J. Repcheck
Marks O'Neill O'Brien & Courtney PC
Gulf Tower, Suite 2600
707 Grant Street
Pittsburgh, PA 15219

23
24
25
26
27

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

28

| | |
|---|---|
| Susan M. Hansen | John D. Roven |
| Brownson & Ballou | Roven-Kaplan LLP |
| 225 South Sixth Street, Suite 4800 | 2190 N Loop West |
| Minneapolis, MN 55402 | Suite 410 |
| | Houston, TX 77018 |
| | |
| Edward R. Hugo | Richard D. Schuster |
| Brydon Hugo & Parker | Vorys Sater Seymour & Pease LLP |
| 135 Main Street | 52 East Gay Street |
| 20th Floor | P.O. Box 1008 |
| San Francisco, CA 94105 | Columbus, OH 43216-1008 |
| | |
| Charles H. Kanter | Neil Selman |
| Palmieri Tyler Wiener | Selman Breitman & Burgess |
| Wilhelm & Waldron | 11766 Wilshire Blvd. |
| East Tower, Suite 1300 | Sixth Floor |
| 2603 Main Street | Los Angeles, CA 90025 |
| Irvine, CA 92614-4281 | |
| | |
| Rober tNi. Spinelli | Robert E. Swickle |
| Kelley Jasons McGuire & Spinelli LLP | Jaques Admiralty Law Firm PC |
| Centre Square West | 1370 Penobscot Building |
| 15th Floor | 645 Griwsold Street |
| Philadelphia, PA 19102 | The Maritime Asbestosis Legal Clinic |
| | Detroit, MI 48226-4192 |
| | |
| Andrew J. Trevelise | James K. Weston II |
| Reed Smith LLP | Tom Riley Law Firm |
| 2500 One Liberty Place | 4040 First Avenue, N.E. |
| 1650 Market Street | P.O. Box 998 |
| Philadelphia, PA 19103 | Cedar Rapids, IA 52406 |

SEDGWICK
DETERT, MORAN & ARNOLD LLP

SF/1508473v1

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY - 9 2008

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL

ON MULTIDISTRICT LITIGATION

IN RE ASBESTOS PRODUCTS
LIABILITY LITIGATION (NO. VI)          MDL DOCKET NO. 875

| | |
|---|---|
| ROBERT REASER, et al.,<br>      Plaintiffs,<br>      v.<br>ALLIS-CHALMERS CORP. PRODUCT<br>LIABILITY TRUST, et al.,<br>      Defendants. | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CASE NO. CV08-01296 |

**DECLARATION OF KATHERINE P. GARDINER IN SUPPORT OF DEFENDANT
GENERAL ELECTRIC COMPANY'S RESPONSE TO PLAINTIFFS' MOTION TO
VACATE THE CONDITIONAL TRANSFER ORDER**

I, KATHERINE P. GARDINER, declare as follows:

      1.     I am an associate in the law firm of Sedgwick, Detert, Moran & Arnold,

attorneys of record for defendant General Electric Company ("GE"). I am duly licensed to

practice law before this court, and in all the courts of the State of California. The facts contained

herein are of my own personal knowledge, except those matters specifically stated on

1  information and belief and as to those I believe them to be true.  If called upon to testify, I would

2  and could competently state as follows.

3          2.      Attached hereto as Exhibit A is a true and correct copy of the Complaint

4  and Preliminary Fact Sheet, filed and served on GE, in *Robert Reaser, et al. v. Allis Chalmers*

5  *Corporation Product Liability Trust, et al.,* Case No. BC 384385, now pending before the United

6  States District Court for the Central District of California as Case No. CV08-01296 SVW (SSx).

7          3.      Attached hereto as Exhibit B is a true and correct copy of the Complaint

8  and Preliminary Fact Sheet, filed and served on approximately fifty named defendants and four-

9  hundred-and fifty Doe defendants, in *Robert Reaser, et al. v. AW Chesterton Company, et al.,*

10  Case No. BC 384772, now pending before the Superior Court of California, County of Los

11  Angeles.

12          4.      Attached hereto collectively as Exhibit C are true and correct copies of the

13  Courts' Orders Denying Remand in *Oberstar v. CBS Corp.,* No. CV08-118 PA (C.D. Cal. Feb

14  11, 2008), *Lindquist v. Cla-Val Co.,* No. CV08-501 R (C.D. Cal. Apr 14, 2008), *Kelemen v.*

15  *Buffalo Pumps, Inc.,* No. CV08-712 R (C.D. Cal. Apr 14, 2008), *Munn v. Cla-Val Co.,* No.

16  CV08-282 R (C.D. Cal. Apr 14, 2008), *Marley v. Elliot Turbomachinery, et al.,* 2008 U.S. Dist.

17  LEXIS 33715 (S.D. Florida 2008) and *O'Connell v. Foster Wheeler, et al.,* 2008 U.S. Dist.

18  LEXIS 27857 (D. Mass 2008)

19          I declare under penalty of perjury under the laws of the State of California that the

20  foregoing is true and correct.

21          Executed this 7th day of May, 2008, at San Francisco, California.

22

23          By _____

24                     Katherine P. Gardiner

25

26

27

28

*Exhibit A*

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

*CAHW*

JAN 25 2008

John A. Clarke, Executive Officer/Clerk

BY MARY GARCIA, Deputy

1  RON C. EDDINS, CA Bar No. 243581
   JENNIFER L. BARTLETT, CA Bar No. 183154
2  ETHAN A. HORN, CA Bar No. 190296
   **SIMON, EDDINS & GREENSTONE, LLP**
3  301 E. Ocean Blvd., Ste. 1950
   Long Beach, California 90802
4  Telephone (562) 590-3400
   Facsimile (562) 590-3412
5

6  Attorneys for Plaintiffs

7                                  *1-31*

8            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9               **FOR THE COUNTY OF LOS ANGELES**

10                                      B C 3 8 4 3 8 5

11  **ROBERT REASER** and **CHRISTINE**        ) Case No.
    **REASER**                                 )
12                                             )
                                               ) THIS ACTION CONSTITUTES COMPLEX
13                        Plaintiffs,          ) ASBESTOS LITIGATION – SUBJECT TO THE
                                               ) GENERAL ORDERS CONTAINED IN FILE NO.
14            vs.                              ) C 700000 – DEPT. 59
                                               )
15  **ALLIS CHALMERS CORPORATION**            )
    **PRODUCT LIABILITY TRUST** (sued          ) **COMPLAINT FOR PERSONAL INJURY –**
16  individually and as successor-in-interest to ) **ASBESTOS (NEGLIGENCE; STRICT**
    ALLIS-CHALMERS CORPORATION);              ) **LIABILITY; LOSS OF CONSORTIUM)**
17  **CBS CORPORATION** f/k/a VIACOM,          )
    INC. (sued as successor-by-merger to CBS   )
18  CORPORATION f/k/a WESTINGHOUSE            )
    ELECTRIC CORPORATION and also as          )
19  successor-in-interest to BF                )
    STURTEVANT);                              )
20  **CLA-VAL CO. ;**                          )
    **FOSTER WHEELER ENERGY**                  )
21  **CORPORATION;**                           )
    **GENERAL ELECTRIC COMPANY;**              )
22  **VIAD CORPORATION f/k/a THE**             )
    **DIAL CORPORATION** (sued                 )
23  individually and as successor-in-interest to )
    GRISCOM-RUSSELL COMPANY);                  )
24  and **DOES 1-450** INCLUSIVE,              )
                                               )
25                                             )
                         Defendants.           )
26                                             )
                                               )
27

28

RECEIVED

FEB 0 4 2008

LITIGATION DEPT

                                    1
**COMPLAINT FOR PERSONAL INJURY – ASBESTOS**

## GENERAL ALLEGATIONS

COME NOW Plaintiffs **ROBERT REASER** and **CHRISTINE REASER** (hereinafter "Plaintiffs") and complain and allege as follows:

1. The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of defendants DOES 1 through 450, inclusive, are unknown to Plaintiffs at this time, who therefore sues said defendants by such fictitious names. When the true names and capacities of said defendants have been ascertained, Plaintiffs will amend this complaint accordingly. Plaintiffs are informed and believe, and thereon allege, that each defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the Plaintiffs, as hereinafter alleged.

2. At all times herein mentioned, each of the defendants was the agent, servant, employee and/or joint venture of his co-defendants, and each of them, and at all said times each defendant was acting in the full course and scope of said agency, service, employment and/or joint venture. Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, defendants **ALLIS CHALMERS CORPORATION PRODUCT LIABILITY TRUST** (sued individually and as successor-in-interest to ALLIS-CHALMERS CORPORATION); **CBS CORPORATION** f/k/a VIACOM, INC. (sued as successor-by-merger to CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION and also as successor-in-interest to BF STURTEVANT); **CLA-VAL CO.; FOSTER WHEELER ENERGY CORPORATION; GENERAL ELECTRIC COMPANY;** and **VIAD CORPORATION** f/k/a **THE DIAL CORPORATION** (sued individually and as successor-in-interest to GRISCOM-RUSSELL COMPANY) and DOES 1-450 inclusive, were individuals, corporations, partnerships and/or unincorporated associations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of

2

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1   California, and that said defendants have regularly conducted business in the County of Los Angeles,

2   State of California.

3       3.      Plaintiffs allege herein that Plaintiff ROBERT REASER developed malignant

4   mesothelioma as a result of exposure to asbestos from defendants' asbestos, asbestos-containing

5   products and/or products designed to be used in association with asbestos products ("Defendants'

6   Products"), including: **ALLIS CHALMERS CORPORATION PRODUCT LIABILITY TRUST**

7   (sued individually and as successor-in-interest to ALLIS-CHALMERS CORPORATION) (for Allis

8   Chalmers pumps); **CBS CORPORATION** f/k/a VIACOM, INC. (sued as successor-by-merger to

9   CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION and also as successor-

10  in-interest to BF STURTEVANT) (for BF Sturtevant blowers and high pressure air compressor

11  turbines, and Westinghouse turbines and blowers); **CLA-VAL CO.** (for Cla-Val valves); **FOSTER**

12  **WHEELER ENERGY CORPORATION** (for Foster Wheeler boilers); **GENERAL ELECTRIC**

13  **COMPANY** (for General Electric generators and turbines); **VIAD CORPORATION f/k/a THE**

14  **DIAL CORPORATION** (sued individually and as successor-in-interest to GRISCOM-RUSSELL

15  COMPANY) (for Griscom-Russell distilling plants and fuel oil heaters).

16      4.      Plaintiffs hereby disclaim any cause of action or recovery for any injuries caused by any

17

18  exposure to asbestos dust that occurred in a federal enclave, which expressly excludes U.S. Navy

19  vessels. Plaintiffs also disclaim any cause of action or recovery for any injuries resulting from exposure

20  to asbestos dust caused by any acts or omissions of a party Defendant committed at the direction of an

21  officer of the United States Government.

22

23                          **FIRST CAUSE OF ACTION**

24                              (Negligence)

25      PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-450, THEIR "ALTERNATE
    ENTITIES", AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE
26  ALLEGE AS FOLLOWS:

27      5.      Plaintiffs incorporate herein by reference, as though fully set forth therein, the general

28  allegations set forth above.

                                    3
<u>COMPLAINT FOR PERSONAL INJURY – ASBESTOS</u>

6.      At all times herein mentioned, each of the named defendants and DOES 1 through 450 was the successor, successor in business, successor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising asbestos, and products containing asbestos, including but not limited to, those products identified in paragraph 3 above.  Said entities shall hereinafter collectively be called "alternate entities."  Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, repaired, marketing, warranted, re-branded, manufactured for others and advertised asbestos, products containing asbestos. The following defendants, and each of them, are liable for the acts of each and every "alternate entity", and each of them, in that there has been a virtual destruction of Plaintiffs' remedy against each such "alternate entity"; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; defendants, and each of them, have caused the destruction of Plaintiffs' remedy against each such "alternate entity"; each such defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such defendant enjoys the goodwill originally attached to each such "alternate entity".

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| ALLIS CHALMERS CORPORATION PRODUCT LIABILITY TRUST | ALLIS-CHALMERS CORPORATION THE BUDA COMPANY |
| CBS CORPORATION | VIACOM INC. WESTINGHOUSE ELECTRIC CORPORATION BF STURTEVANT VIACOM INTERNATIONAL, INC. VIACOM PLUS |

4

| | |
|---|---|
| FOSTER WHEELER ENERGY CORPORATION | FOSTER WHEELER BOILER CORPORATION |
| | FOSTER WHEELER CONTRACTORS, INC. |
| | FOSTER WHEELER CORPORATION |
| | FOSTER WHEELER DEVELOPMENT CORP. |
| | FOSTER WHEELER ENERGY RESOURCES INC. |
| | FOSTER WHEELER ENERGY SERVICES, INC. |
| | FOSTER WHEELER ENVIRESPONSE, INC. |
| | FOSTER WHEELER ENVIRONMENTAL CORPORATION |
| | FOSTER WHEELER POWER GROUP, INC. |
| | FOSTER WHEELER POWER SYSTEMS, INC. |
| | FOSTER WHEELER PYROPOWER, INC. |
| | FOSTER WHEELER REALTY SERVICES, INC. |
| | FOSTER WHEELER USA CORPORATION |
| | C.H. WHEELER |
| GENERAL ELECTRIC COMPANY | GENERAL ELECTRIC BROADCASTING COMPANY, INC. |
| | GENERAL ELECTRIC CAPITAL ASSURANCE COMPANY |
| | GENERAL ELECTRIC PROFESSIONAL SERVICES COMPANY |
| | GENERAL ELECTRIC TRADING COMPANY |
| VIAD CORPORATION | THE DIAL CORPORATION |
| | GRISCOM-RUSSELL COMPANY |

7.    At all times herein mentioned, defendants, their "alternate entities", and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, renting, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising asbestos, and/or asbestos products (hereinafter Defendants' Products).

8.    At all times herein mentioned, defendants, their "alternate entities", and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, specified, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, rented offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded,

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

manufactured for others, packaged, and advertised Defendants' Products, including but not limited to those products identified in paragraph 3 above, in that the Defendants' Products were unreasonably dangerous because they released respirable asbestos fibers which resulted in personal injuries to users, consumers, workers, bystanders, and others, including Plaintiff ROBERT REASER herein (hereinafter collectively called "exposed person"). Said products were used at all times in a manner that was reasonably foreseeable to defendants, their "alternate entities," and each of them, thereby rendering said products unsafe and dangerous for use by "exposed person". Plaintiffs herein allege that ROBERT REASER was exposed to asbestos as a result of exposures to Defendants' Products, including but not limited to those products identified in paragraph 3 above (hereinafter referred to as "defendants' products" or "defendants' asbestos and asbestos-containing products"), were a substantial contributing factor in the development of his malignant mesothelioma, and therefore proximately caused Plaintiff ROBERT REASER 's injuries.

9.     Defendants, their "alternate entities," and each of them, had a duty to exercise reasonable care while engaging in the activities mentioned above and each defendants breached said duty of reasonable care in that defendants, and each of them, failed to safely and adequately design, manufacture and/or sell defendants' products; failed to test said products; failed to investigate the hazards of said products; failed to warn "exposed person", including Plaintiff ROBERT REASER, of the health hazards of using defendants' products; failed to disclose the known or knowable dangers of using defendants' products; failed to obtain suitable alternative materials to asbestos when such alternatives were available; and as otherwise stated herein.

10.     The defendants' products were and are hazardous to the health and safety of Plaintiff, and others in Plaintiff's position working with and in close proximity to such products, and since on or before 1930, the hazards and dangerous propensities of the defendants' products were both known and knowable to the defendants, their "alternate entities", and each of them, through the use of medical and/or scientific data and other knowledge available to defendants, their "alternate entities", and each of them at the time of defendants' manufacture, distribution, sale, research, study, fabrication, design, modification, labeling, assembly, leasing, buying, offering for sale, supply, inspection, service, installation, contracting for installation, repair, marketing, warranting, re-branding, re-manufacturing for

6

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

others, packaging and advertising, of those products, which clearly indicated the hazards and dangerous propensities of asbestos presented a substantial danger to users, including Plaintiff, ROBERT REASER, of Defendants' Products through the intended and reasonably foreseeable use of those products.

11.     Defendants, their "alternate entities", and each of them, knew, or reasonably should have known, that Defendants' Products were dangerous and were likely to be dangerous when used in their intended and reasonably foreseeable manner.

12.     Defendants, their "alternate entities", and each of them, knew, or reasonably should have known, that Defendants' Products would be installed, repaired, maintained, overhauled, removed, sawed, chipped, hammered, mixed, scraped, sanded, swept, broken, "ripped out," or otherwise disturbed in their ordinary, intended and foreseeable use, resulting in the release of airborne hazardous and dangerous asbestos fibers, and that through such activity, "exposed person," including Plaintiff ROBERT REASER  herein, would be exposed to said hazardous and dangerous asbestos fibers. Defendants, their "alternate entities", and each of them, knew or reasonably should have known that users, such as Plaintiff ROBERT REASER and others in his position, working with and in close proximity to Defendants' Products would not realize or know the danger.  Defendants, their "alternate entities," and each of them negligently failed to adequately warn or instruct of the dangers of the products. A reasonable designer, manufacturer, distributor, seller, installer, buyer or supplier, under the same or similar circumstances, would have warned of the dangers to avoid exposing others to a foreseeable risk of harm.  The negligent failure of defendants, their "alternate entities," and each of them to warn was a substantial factor in causing harm to Plaintiff ROBERT REASER.

13.     Plaintiff ROBERT REASER  used, handled, or was otherwise exposed to asbestos from Defendants' Products referred to herein in a manner that was reasonably foreseeable to defendants and each of them.  Plaintiff's exposure to Defendants' Products occurred at various locations set forth in **Exhibit "A"**, which is attached hereto and incorporated by reference herein.

14.     As a direct and proximate result of the conduct of the defendants, their "alternate entities", and each of them, as aforesaid, Plaintiff ROBERT REASER's exposure to asbestos from use of Defendants' Products caused severe and permanent injury to the Plaintiff, the nature of which, along with the date of Plaintiff's diagnosis and the date he learned such injuries were attributable to exposure

7

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

to Defendants' Products, are set forth in **Exhibit "B"**, which is attached hereto and incorporated by reference herein.  Plaintiffs are informed and believe, and thereon allege, that progressive lung disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to Defendants' Products over a period of time.

15.   Plaintiff ROBERT REASER suffers from malignant pleural mesothelioma, caused by exposure to asbestos from Defendants' Products and/or from the use of Defendants' Products containing asbestos including those products identified in paragraph 3 above.  Plaintiff ROBERT REASER was not aware at the time of exposure that Defendants' Products presented any risk of injury and/or disease.

16.   As a direct and proximate result of the aforesaid conduct of defendants, their "alternate entities," and each of them, Plaintiff ROBERT REASER  has suffered and will continue to suffer permanent injuries and future injuries to his person, body and health, including, but not limited to, pain, discomfort, loss of weight, loss of appetite, fatigue, somnolence, lethargy, dyspnea, dysphagia, and other physical symptoms, and the mental and emotional distress attendant thereto, as Plaintiff's malignant mesothelioma progresses, all to his general damage in a sum in excess of the jurisdictional limit of a limited civil case.

17.   As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities", and each of them, Plaintiff ROBERT REASER has incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact amount thereof being presently unknown to Plaintiffs, subject to proof at trial.

18.   As a further direct and proximate result of the said conduct of the defendants, their "alternate entities", and each of them, Plaintiffs have incurred, and will incur, loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses, the true and exact amount thereof being presently unknown to Plaintiffs, subject to proof at trial.

19.   Plaintiffs further allege that defendants, their "alternate entities", and each of them, also engaged in the following wrongful acts:

(a)   Defendants, their "alternate entities", and each of them, suppressed from all consumers, including Plaintiff ROBERT REASER, medical and scientific information concerning the health hazards

8

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

associated with inhalation of asbestos, including the substantial risk of injury or death therefrom. Although defendants, and each of them, knew of the substantial risks associated with exposure to asbestos, they willfully and knowingly concealed such information from the users of their asbestos and/or asbestos-containing products in conscious disregard of the rights, safety and welfare of "exposed person", including Plaintiff ROBERT REASER.

(b)     Defendants, their "alternate entities", and each of them, belonged to, participated in, and financially supported industry organizations, including but not limited to the Gypsum Association, Asbestos Information Association, Industrial Hygiene Foundation and others, which, for and on behalf of defendants, their "alternate entities", and each of them, actively promoted the suppression of information about the dangers of asbestos to users of the aforementioned products and materials, thereby misleading Plaintiff ROBERT REASER  as to the safety of their products.  Through their participation and association with such industry organizations, defendants and each of them knowingly and deliberately concealed and suppressed the true information regarding asbestos and its dangers, and propagated misinformation intended to instill in users of Defendants' Products a false security about the safety of their products.  The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust control.  Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers, which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiff ROBERT REASER  at this time;

(c)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, defendants, their "alternate entities", and each of them, knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants, their "alternate entities", and each of them, herein. Between 1942 and 1950, the defendants, their "alternate entities", and each of them, failed to provide this information to consumers;

(d)     Defendants, their "alternate entities", and each of them, failed to warn Plaintiff ROBERT

9

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1   REASER  and others of the nature of said materials which were dangerous when breathed and which

2   could cause pathological effects without noticeable trauma, despite the fact that defendants, their

3   "alternate entities", and each of them, possessed knowledge and were under a duty to disclose that said

4   materials were dangerous and a threat to the health of persons coming into contact therewith;

5         (e)    Defendants, their "alternate entities", and each of them, failed to provide Plaintiff

6   ROBERT REASER  with information concerning adequate protective masks and other equipment

7   devised to be used when applying, mixing, installing and sanding the products of the defendants, their

8   "alternate entities", and each of them, despite knowing that such protective measures were necessary,

9   and that they were under a duty to disclose that such materials were dangerous and would result in injury

10  to Plaintiff ROBERT REASER  and others applying and installing such material;

11        (f)    Defendants, their "alternate entities", and each of them, knew and failed to disclose that

12  Plaintiff ROBERT REASER  and anyone similarly situated, upon inhalation of asbestos would, in time,

13  have a substantial risk of developing irreversible conditions of pneumoconiosis, asbestosis,

14  mesothelioma and/or cancer;

15        (g)    Defendants, their "alternate entities", and each of them, failed to provide information of

16  the true nature of the hazards of asbestos materials and that exposure to these material would cause

17  pathological effects without noticeable trauma to the public, including buyers, users, and physicians

18  employed by Plaintiff ROBERT REASER  so that said physicians could not examine, diagnose, and

19  treat Plaintiff and others who were exposed to asbestos, despite the fact that defendants, their "alternate

20  entities", and each of them, were under a duty to so inform and said failure was misleading.

21        20.    Defendants, their "alternate entities", and each of them, and their officers, directors, and

22  managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of,

23  or should have known of, each of the acts set forth herein. Defendants, their "alternate entities", and

24  each of them, are liable for the oppressive and malicious acts of their "alternate entities", and each of

25  them, and each defendant's officers, directors, and managing agents participated in, authorized,

26  expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of

27  their "alternate entities" as set forth herein.

28        21.    The herein-described conduct of said defendants, their "alternate entities", and each of

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

them, was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed person," including Plaintiff ROBERT REASER, in that defendants, and each of them, continued to manufacture, market and/or sell dangerous products known to cause severe, permanent injuries and death, despite possessing knowledge of the substantial hazards posed by use of their products, in order to continue to profit financially therefrom. Defendants, their "alternate entities", and each of them, engaged in such conduct so despicable, contemptible, base, vile, miserable, wretched and loathsome as to be looked down upon and despised by ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil Code section 3294. Plaintiffs, for the sake of example and by way of punishing said defendants, seek punitive damages according to proof.

22.     Defendants and each of them engaged in conduct which was intended by defendants and each of them to cause injury to the plaintiffs, and despicable conduct which was carried on by the defendant with a willful and conscious disregard of the rights or safety of others, including Plaintiff ROBERT REASER.

23.     Defendants, and each of them, engaged in the despicable conduct described herein that subjected persons, including Plaintiff ROBERT REASER , to cruel and unjust hardship in the form of sever, debilitating and fatal diseases like asbestosis, lung cancer and mesothelioma, in conscious disregard of those persons' rights.

24.     As a direct and proximate result of such intentional conduct by defendants, their "alternate entities" and each of them, Plaintiff ROBERT REASER sustained the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against defendants, their "alternate entities", and each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION

### (Strict Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

25.     Plaintiffs incorporate herein by reference, as though fully set forth therein, each and every one of the general allegations and the allegations contained in the First Cause of Action herein.

11

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

26.     Defendants, their "alternate entities", and each of them, sold the aforementioned Defendants' Products and failed to adequately warn or instruct of the known and knowable dangers and risks of the ordinary, intended, and foreseeable use of their products, which dangers and risks would not have been, and were not, recognized by ordinary consumers of the products, including Plaintiff, ROBERT REASER , and the lack of sufficient instructions and/or warnings was a substantial factor in causing harm to Plaintiff ROBERT REASER  and others in Plaintiff's position working with and in close proximity to such products.

27.     Defendants' Products were defective and unsafe for their intended purpose and foreseeable use in that, when used, handled, installed, repaired, maintained, overhauled, removed, sawed, chipped, hammered, mixed, scraped, sanded, swept, broken, "ripped out," or otherwise disturbed, said products would result in the release, and therefore inhalation of, hazardous and dangerous asbestos fibers by exposed person, including Plaintiff ROBERT REASER .  The defect existed in all of said products when they left the possession of the defendants, their "alternate entities," and each of them.  At the time Defendants' Products were used by Plaintiff, and others in Plaintiff's position working with and in close proximity to such products, the products were substantially the same as when they left the possession of the defendants, their "alternate entities," and each of them and/or any changes made to the products after they left the possession of defendants, their "alternate entities", and each of them were reasonably foreseeable to defendants, their "alternate entities", and each of them.  Defendants' asbestos and asbestos products were used by Plaintiff ROBERT REASER, and others in Plaintiff's position working with and in close proximity to such products, in a way that was reasonably foreseeable to defendants, and each of them.  The defect in said products was a substantial factor in causing harm and personal injuries to Plaintiff ROBERT REASER, including malignant mesothelioma, while being used in a reasonably foreseeable manner, thereby rendering said products defective, unsafe, and unreasonably dangerous for their ordinary and intended use.

28.     As a direct and proximate result of the actions and conduct outlined herein, Defendants' Products failed to perform as safely as an ordinary consumer would have expected in that defendants' products, and each of them, during their ordinary and intended use, and such hazardous exposures lacked any perceptible qualities to the human body, yet they cause severe and fatal diseases, including

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1    asbestosis, lung cancer, mesothelioma and other cancers in humans.   Plaintiffs further allege that

2    "exposed person", including Plaintiff ROBERT REASER, were unaware of the harmful effects of

3    asbestos and further unaware of the harmful exposures to Defendants' Products when such exposures

4    occurred, and thus the failure of defendants' products to perform as safely as Plaintiff ROBERT

5    REASER  had reason to expect was a substantial factor in causing his injuries.

6         29.     As a direct and proximate result of the actions and conduct outlined herein, Plaintiff

7    ROBERT REASER has suffered the injuries and damages alleged herein.

8         30.     Plaintiffs further allege that defendants, their "alternate entities", and each of them, also

9    engaged in the following wrongful acts:

10        (a)     Defendants, their "alternate entities", and each of them, suppressed from all consumers,

11   including Plaintiff ROBERT REASER, medical and scientific information concerning the health hazards

12   associated with inhalation of asbestos, including the substantial risk of injury or death therefrom.

13   Although defendants, and each of them, knew of the substantial risks associated with exposure to

14   asbestos, they willfully and knowingly concealed such information from the users of their asbestos

15   and/or asbestos-containing products in conscious disregard of the rights, safety and welfare of "exposed

16   person", including Plaintiff ROBERT REASER.

17        (b)     Defendants, their "alternate entities", and each of them, belonged to, participated in, and

18   financially supported industry organizations, including but not limited to the Gypsum Association,

19   Asbestos Information Association, Industrial Hygiene Foundation and others, which, for and on behalf

20   of defendants, their "alternate entities", and each of them, actively promoted the suppression of

21   information about the dangers of asbestos to users of the aforementioned products and materials, thereby

22   misleading Plaintiff ROBERT REASER as to the safety of their products.  Through their participation

23   and association with such industry organizations, defendants and each of them knowingly and

24   deliberately concealed and suppressed the true information regarding asbestos and its dangers, and

25   propagated misinformation intended to instill in users of Defendants' Products a false security about the

26   safety of their products.  The Dust Control Committee, which changed its name to the Air Hygiene

27   Committee, of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust

28   control.  Discussions in this committee were held many times regarding the dangers inherent in asbestos

13

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1   and the dangers, which arise from the lack of control of dust, and such information was suppressed from

2   public dissemination from 1946 to a date unknown to Plaintiff ROBERT REASER at this time;

3       (c)    Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford

4   Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and

5   Charleston, South Carolina, defendants, their "alternate entities", and each of them, knew and possessed

6   medical and scientific information of the connection between the inhalation of asbestos fibers and

7   asbestosis, which information was disseminated through the Asbestos Textile Institute and other

8   industry organizations to all other defendants, their "alternate entities", and each of them, herein.

9   Between 1942 and 1950, the defendants, their "alternate entities", and each of them, failed to provide

10  this information to consumers;

11      (d)    Defendants, their "alternate entities", and each of them, failed to warn Plaintiff ROBERT

12  REASER and others of the nature of said materials which were dangerous when breathed and which

13  could cause pathological effects without noticeable trauma, despite the fact that defendants, their

14  "alternate entities", and each of them, possessed knowledge and were under a duty to disclose that said

15  materials were dangerous and a threat to the health of persons coming into contact therewith;

16      (e)    Defendants, their "alternate entities", and each of them, failed to provide Plaintiff

17  ROBERT REASER with information concerning adequate protective masks and other equipment

18  devised to be used when applying, mixing, installing and sanding the products of the defendants, their

19  "alternate entities", and each of them, despite knowing that such protective measures were necessary,

20  and that they were under a duty to disclose that such materials were dangerous and would result in injury

21  to Plaintiff ROBERT REASER and others applying and installing such material;

22      (f)    Defendants, their "alternate entities", and each of them, knew and failed to disclose that

23  Plaintiff ROBERT REASER and anyone similarly situated, upon inhalation of asbestos would, in time,

24  have a substantial risk of developing irreversible conditions of pneumoconiosis, asbestosis,

25  mesothelioma and/or cancer;

26      (g)    Defendants, their "alternate entities", and each of them, failed to provide information of

27  the true nature of the hazards of asbestos materials and that exposure to these material would cause

28  pathological effects without noticeable trauma to the public, including buyers, users, and physicians

14

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

employed by Plaintiff ROBERT REASER  so that said physicians could not examine, diagnose, and treat Plaintiff and others who were exposed to asbestos, despite the fact that defendants, their "alternate entities", and each of them, were under a duty to so inform and said failure was misleading; and

31.     Defendants, their "alternate entities", and each of them, and their officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein. Defendants, their "alternate entities", and each of them, are liable for the oppressive and malicious acts of their "alternate entities", and each of them, and each defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

32.     The herein-described conduct of said defendants, their "alternate entities", and each of them, was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed person," including Plaintiff ROBERT REASER , in that defendants, and each of them, continued to manufacture, market and/or sell dangerous products known to cause severe, permanent injuries and death, despite possessing knowledge of the substantial hazards posed by use of their products, in order to continue to profit financially therefrom.  Defendants, their "alternate entities", and each of them, engaged in such conduct so despicable, contemptible, base, vile, miserable, wretched and loathsome as to be looked down upon and despised by ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil Code section 3294.  Plaintiffs, for the sake of example and by way of punishing said defendants, seek punitive damages according to proof.

33.     Defendants and each of them engaged in conduct which was intended by defendants and each of them to cause injury to the plaintiffs, and despicable conduct which was carried on by the defendant with a willful and conscious disregard of the rights or safety of others, including Plaintiff ROBERT REASER.

34.     Defendants, and each of them, engaged in the despicable conduct described herein that subjected persons, including Plaintiff ROBERT REASER , to cruel and unjust hardship in the form of sever, debilitating and fatal diseases like asbestosis, lung cancer and mesothelioma, in conscious disregard of those persons' rights.

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

35.     As a direct and proximate result of such intentional conduct by defendants, their "alternate entities" and each of them, Plaintiff ROBERT REASER sustained the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against defendants, and their "alternate entities", and each of them, as hereinafter set forth.

## THIRD CAUSE OF ACTION

(Loss of Consortium)

AS AND FOR A FURTHER THIRD SEPARATE, AND DISTINCT CAUSE OF ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF CHRISTINE REASER    COMPLAINS OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

40.     Plaintiff CHRISTINE REASER incorporates by reference, each and every allegation contained in the general allegations and in the First, and Second Causes of Action herein.

41.     Plaintiffs ROBERT REASER and CHRISTINE REASER were married on November 10, 1956, and at all times relevant to this action were, and are now, husband and wife.

42.     Prior to Plaintiff ROBERT REASER's injuries as alleged, he was able and did perform duties as a spouse.  Subsequent to the injuries and as a proximate result thereof, plaintiff ROBERT REASER has been unable to perform the necessary duties as a spouse and the work and services usually performed in the care, maintenance, and management of the family home, and he will be unable to perform such work, service and duties in the future.  As a proximate result thereof, CHRISTINE REASER has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown but which will be proved at the time of trial.

43.     Plaintiff CHRISTINE REASER's discovery of this cause of her loss of consortium, as herein alleged, first occurred within one year of the date this Complaint was filed.

44.     As a direct and proximate result of the acts of defendants, their "alternate entities", and each of them, and the severe injuries caused thereby to plaintiff ROBERT REASER  as set forth in this complaint, plaintiff CHRISTINE REASER has suffered, and for a long period of time will continue to suffer, loss of consortium, including, but not limited, loss of services, marital relations, society, comfort,

16

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

companionship, love and affection of said spouse, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

44.   WHEREFORE, plaintiffs pray for judgment against defendants, their "alternate entities", and each of them, in an amount to be proved at trial in each individual case, as follows:

Plaintiff ROBERT REASER :

1.   For plaintiff's general damages according to proof;

2.   For plaintiff's loss of income, wages, and earning potential according to proof;

3.   For plaintiff's medical and related expenses according to proof;

Plaintiff CHRISTINE REASER:

4.   For plaintiff's damages for loss of consortium and/or society according to proof;

Plaintiffs ROBERT REASER  and CHRISTINE REASER:

5.   For plaintiffs' cost of suit herein;

6.   For exemplary or punitive damages according to proof;

7.   For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest as provided in C.C.P. section 998, C.C.P. section 1032, and related provisions of law.

DATED: January 24, 2008          **SIMON, EDDINS & GREENSTONE, LLP**

By

JENNIFER BARTLETT
ETHAN A. HORN
Attorneys for Plaintiffs

17
COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1

2                            DEMAND FOR JURY TRIAL

3            Plaintiffs hereby demand trial by jury as to all issues so triable.

4

5    DATED: January 24, 2008                    **SIMON, EDDINS & GREENSTONE, LLP**

6

7                                     By: _____
                                           ETHAN A. HORN
8                                          Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        18

1

## EXHIBIT "A"

2
Plaintiff ROBERT REASER's exposure to asbestos and asbestos-containing products occurred at

3
various locations within the States of California, South Carolina, Massachusetts, Florida and Rhode

4
Island including, but not limited to:

5

6

| Employer | Location of Exposure | Job Title | Exposure Date(s) |
|---|---|---|---|
| United States Navy | USS Shea (DM-30)<br>San Diego, CA<br>Charleston, SC | Welder; Pipefitter;<br>Fireman; Seaman<br>Apprentice | 1951-1956 |
| United States Navy | USS Boston (CA-69/CAG-1)<br>Boston Naval Shipyard<br>Boston, MA | Damage Control, Third<br>Class | 1951-1956 |
| United States Navy | USS Providence (CLG-6/CL-<br>82)<br>Providence, RI | Damage Control, Second<br>Class | 1959-1960 |
| United States Navy | USS Wilkinson (DL-5)<br>Long Beach, CA | Damage Control, Second<br>Class | 1960-1964 |
| United States Navy | NAS Cecil Field – *Naval Air Station*<br>Jacksonville, FL | Damage Control, First<br>Class | 1964-1967 |
| F. C. James<br>Construction | Florida | Framer | 1971-1997 |
| Self | Florida | Brake replacement | 1960s and 1970s |

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19

1

## EXHIBIT "B"

2

3            Plaintiff ROBERT REASER's exposure to Defendants' Products caused severe and

4    permanent injury to Plaintiff ROBERT REASER including, but not limited to, mesothelioma.

5    Plaintiff was diagnosed with mesothelioma on or about December 13, 2007.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

Exhibit B

1  RON C. EDDINS, CA Bar No. 243581
   JENNIFER L. BARTLETT, CA Bar No. 183154
2  ETHAN A. HORN, CA Bar No. 190296
   **SIMON, EDDINS & GREENSTONE, LLP**
3  301 E. Ocean Blvd., Ste. 1950
   Long Beach, California 90802
4  Telephone (562) 590-3400
   Facsimile (562) 590-3412
5

6  Attorneys for Plaintiffs

**FILED**
LOS ANGELES SUPERIOR COURT

FEB 01 2008

JOHN A. CLARKE, CLERK
BY D.M. SWAIN, DEPUTY

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                   **FOR THE COUNTY OF LOS ANGELES**

10

11  **ROBERT REASER** and **CHRISTINE**          )  Case No.        BC384772
    **REASER**                                   )
12                                               )
                                                 )  THIS ACTION CONSTITUTES COMPLEX
13                          Plaintiffs,          )  ASBESTOS LITIGATION – SUBJECT TO THE
                                                 )  GENERAL ORDERS CONTAINED IN FILE NO.
14              vs.                              )  C 700000 – DEPT. 59
                                                 )
15  **A.W. CHESTERTON COMPANY;**                 )  **COMPLAINT FOR PERSONAL INJURY –**
    **AFTON PUMPS, INC.;**                       )  **ASBESTOS (NEGLIGENCE; STRICT**
16  **ALFA LAVAL, INC.** (sued individually      )  **LIABILITY; LOSS OF CONSORTIUM)**
    and as successor-in-interest to THE          )
17  DELAVAL SEPARATOR COMPANY);                  )
    **ARMSTRONG INTERNATIONAL,**                 )
18  **INC.;**                                    )
    **ATLAS VALVE COMPANY, INC.;**               )
19  **BLACKMER PUMP COMPANY;**                   )
    **BUFFALO PUMPS, INC.;**                     )
20  **BW/IP INTERNATIONAL, INC.** (sued          )
    individually and as successor-in-interest to )
21  BYRON JACKSON PUMPS);                        )
    **CARRIER CORPORATION;**                     )
22  **CLEAVER-BROOKS, INC.** f/k/a AQUA-         )
    CHEM, INC., d/b/a CLEAVER-BROOKS,            )
23  DIVISION (sued individually and as           )
    successor-in-interest to DAVIS               )
24  ENGINEERING COMPANY);                        )
    **COLTEC INDUSTRIES, INC.** (sued            )
25  individually and as successor-in-interest to )
    FAIRBANKS MORSE ENGINE);                     )
26  **CRANE CO.** (sued individually and as      )
    successor-in-interest to CHAPMAN             )
27  VALVE COMPANY);                              )
28

1    **DAP, INC.;**
2    **DOVER CORPORATION** (sued individually and as successor-in-interest to BLACKMER PUMP COMPANY);
3    **DURABLA MANUFACTURING**
4    **COMPANY;**
5    **ELLIOTT TURBOMACHINERY COMPANY** a/k/a ELLIOTT COMPANY;
6    **FAIRBANKS MORSE PUMP CORPORATION;**
7    **FLOWSERVE US INC.** (sued individually and as successor-in-interest to
8    BYRON JACKSON PUMPS, ALDRICH, and SIER BATH GEAR & PUMP CO.);
9    **FMC CORPORATION** (sued individually and as successor-in-interest to
10   NORTHERN PUMP, CO.);
11   **GARLOCK SEALING TECHNOLOGIES, L.L.C.** (sued individually and as successor-in-interest to
12   GARLOCK, INC.);
13   **GEORGIA-PACIFIC CORPORATION;**
14   **GOULDS PUMPS, INC.;**
    **HILLS BROTHERS CHEMICAL CORPORATION;**
15   **HOPEMAN BROTHERS INC.;**
16   **HOPEMAN BROTHERS MARINE INTERIORS** a/k/a HOPEMAN BROTHERS, INC.;
17   **IMO INDUSTRIES, INC.** (sued individually and as successor-in-interest to
18   DELAVAL TURBINE, INC. and CH WHEELER);
19   **INGERSOLL RAND COMPANY** (sued individually and as successor-in-interest to
20   TERRY STEAM TURBINE COMPANY);
21   **INVENSYS SYSTEMS, INC.** (sued individually and as successor-in-interest to
22   EDWARD VALVE & MANUFACTURING);
23   **J.T. THORPE & SON, INC.;**
24   **JOHN CRANE, INC.;**
    **LESLIE CONTROLS, INC.;**
25   **M. SLAYEN AND ASSOCIATES, INC.;**
    **McNALLY INDUSTRIES, L.L.C.** (sued
26   individually and as successor-in-interest to NORTHERN PUMP COMPANY f/k/a
27   NORTHERN FIRE APPARATUS COMPANY);
28   **MUELLER CO.;**

1  **PARKER-HANNIFIN CORPORATION**
(sued individually and as successor-in-
2  interest to SACOMO SIERRA and
SACOMO MANUFACTURING CO.);
3  **PLANT INSULATION COMPANY;**
**R.T. VANDERBILT COMPANY, INC.;**
4  **SEPCO CORPORATION;**
5  **SPIROL INTERNATIONAL**
**CORPORATION;**
6  **SYD CARPENTER, MARINE**
**CONTRACTOR, INC.;**
7  **TYCO FLOW CONTROL, INC.** (sued
individually and as successor-in-interest to
8  THE LUNKENHEIMER COMPANY and
HANCOCK VALVE);
9  **UNION CARBIDE CORPORATION;**
10  **UNIROYAL HOLDING, INC.;**
**VELAN VALVE CORPORATION;**
11  **VIKING PUMP, INC.;**
**WARREN PUMPS, L.L.C.;**
12  **WEIR VALVES & CONTROLS f/k/a**
**ATWOOD MORRILL;**
13  **THE WILLIAM POWELL COMPANY;**
**YARWAY CORPORATION** (sued
14  individually and as successor-in-interest to
GIMPEL CORPORATION);
15  and **DOES 1-450** INCLUSIVE,

16
                                    Defendants.
17
                        GENERAL ALLEGATIONS
18
19         COME NOW Plaintiffs **ROBERT REASER** and **CHRISTINE REASER** (hereinafter

"Plaintiffs") and complain and allege as follows:
20
21         1.       The true names and capacities, whether individual, corporate, associate, governmental

or otherwise, of defendants DOES 1 through 450, inclusive, are unknown to Plaintiffs at this time, who
22
therefore sues said defendants by such fictitious names.  When the true names and capacities of said
23
defendants have been ascertained, Plaintiffs will amend this complaint accordingly.  Plaintiffs are
24
informed and believe, and thereon allege, that each defendant designated herein as a DOE is
25
responsible, negligently or in some other actionable manner, for the events and happenings hereinafter
26
referred to, and caused injuries and damages proximately thereby to the Plaintiffs, as hereinafter
27
alleged.
28         2.       At all times herein mentioned, each of the defendants was the agent, servant, employee

and/or joint venture of his co-defendants, and each of them, and at all said times each defendant was acting in the full course and scope of said agency, service, employment and/or joint venture. Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, defendants **A.W. CHESTERTON COMPANY; AFTON PUMPS, INC.; ALFA LAVAL, INC.** (sued individually and as successor-in-interest to THE DELAVAL SEPARATOR COMPANY); **ARMSTRONG INTERNATIONAL, INC.; ATLAS VALVE COMPANY, INC.; BLACKMER PUMP COMPANY; BUFFALO PUMPS, INC.; BW/IP INTERNATIONAL, INC.** (sued individually and as successor-in-interest to BYRON JACKSON PUMPS); **CARRIER CORPORATION; CLEAVER-BROOKS, INC.** f/k/a AQUA-CHEM, INC., d/b/a CLEAVER-BROOKS, DIVISION (sued individually and as successor-in-interest to DAVIS ENGINEERING COMPANY); **COLTEC INDUSTRIES, INC.** (sued individually and as successor-in-interest to FAIRBANKS MORSE ENGINE); **CRANE CO.** (sued individually and as successor-in-interest to CHAPMAN VALVE COMPANY); **DAP, INC.; DOVER CORPORATION** (sued individually and as successor-in-interest to BLACKMER PUMP COMPANY); **DURABLA MANUFACTURING COMPANY; ELLIOTT TURBOMACHINERY COMPANY** a/k/a ELLIOTT COMPANY; **FAIRBANKS MORSE PUMP CORPORATION; FLOWSERVE US INC.** (sued individually and as successor-in-interest to BYRON JACKSON PUMPS, ALDRICH, and SIER BATH GEAR & PUMP CO.); **FMC CORPORATION** (sued individually and as successor-in-interest to NORTHERN PUMP, CO.); **GARLOCK SEALING TECHNOLOGIES, L.L.C.** (sued individually and as successor-in-interest to GARLOCK, INC.); **GEORGIA-PACIFIC CORPORATION; GOULDS PUMPS, INC.; HILLS BROTHERS CHEMICAL CORPORATION; HOPEMAN BROTHERS INC.; HOPEMAN BROTHERS MARINE INTERIORS** a/k/a HOPEMAN BROTHERS, INC.; **IMO INDUSTRIES, INC.** (sued individually and as successor-in-interest to DELAVAL TURBINE, INC. and CH WHEELER); **INGERSOLL RAND COMPANY** (sued individually and as successor-in-interest to TERRY STEAM TURBINE COMPANY); **INVENSYS SYSTEMS, INC.** (sued

individually and as successor-in-interest to EDWARD VALVE & MANUFACTURING); **J.T. THORPE & SON, INC.; JOHN CRANE, INC.; LESLIE CONTROLS, INC.; M. SLAYEN AND ASSOCIATES, INC.; McNALLY INDUSTRIES, L.L.C.** (sued individually and as successor-in-interest to NORTHERN PUMP COMPANY f/k/a NORTHERN FIRE APPARATUS COMPANY); **MUELLER CO.; PARKER-HANNIFIN CORPORATION** (sued individually and as successor-in-interest to SACOMO SIERRA and SACOMO MANUFACTURING CO.); **PLANT INSULATION COMPANY; R.T. VANDERBILT COMPANY, INC.; SEPCO CORPORATION; SPIROL INTERNATIONAL CORPORATION; SYD CARPENTER, MARINE CONTRACTOR, INC.; TYCO FLOW CONTROL, INC.** (sued individually and as successor-in-interest to THE LUNKENHEIMER COMPANY and HANCOCK VALVE); **UNION CARBIDE CORPORATION; UNIROYAL HOLDING, INC.; VELAN VALVE CORPORATION; VIKING PUMP, INC.; WARREN PUMPS, L.L.C.; WEIR VALVES & CONTROLS** f/k/a ATWOOD MORRILL; **THE WILLIAM POWELL COMPANY; YARWAY CORPORATION** (sued individually and as successor-in-interest to GIMPEL CORPORATION) and DOES 1-450 inclusive, were individuals, corporations, partnerships and/or unincorporated associations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the County of Los Angeles, State of California.

   3. Plaintiffs allege herein that Plaintiff ROBERT REASER developed malignant mesothelioma as a result of exposure to asbestos from defendants' asbestos, asbestos-containing products and/or products designed to be used in association with asbestos products ("Defendants' Products"), including: **A.W. CHESTERTON COMPANY** (A.W. Chesterton gaskets, packing, and rope packing); **AFTON PUMPS, INC.** (for Afton pumps); **ALFA LAVAL, INC.** (sued individually

and as successor-in-interest to THE DELAVAL SEPARATOR COMPANY) (for DeLaval purifiers); **ARMSTRONG INTERNATIONAL, INC.** (for Armstrong steam traps); **ATLAS VALVE COMPANY, INC.** (for Atlas valves); **BLACKMER PUMP COMPANY** (for Blackmer pumps); **BUFFALO PUMPS, INC.** (for Buffalo pumps); **BW/IP INTERNATIONAL, INC.** (sued individually and as successor-in-interest to BYRON JACKSON PUMPS) (for Byron Jackson pumps); **CARRIER CORPORATION** (for Carrier valves); CLEAVER-BROOKS, INC. f/k/a AQUA-CHEM, INC., d/b/a CLEAVER-BROOKS, DIVISION (sued individually and as successor-in-interest to DAVIS ENGINEERING COMPANY) (for Davis heaters and evaporators); **COLTEC INDUSTRIES, INC.** (sued individually and as successor-in-interest to FAIRBANKS MORSE ENGINE) (for Fairbanks Morse diesel engines and valves); **CRANE CO.** (sued individually and as successor-in-interest to CHAPMAN VALVE COMPANY) (for Crane and Chapman valves); **DAP, INC.** (for DAP caulk); **DOVER CORPORATION** (sued individually and as successor-in-interest to BLACKMER PUMP COMPANY) (for Blackmer pumps); **DURABLA MANUFACTURING COMPANY** (for Durabla gaskets); **ELLIOTT TURBOMACHINERY COMPANY** a/k/a ELLIOTT COMPANY (for deaerating feed system); **FAIRBANKS MORSE PUMP CORPORATION** (for Fairbanks Morse valves); **FLOWSERVE US INC.** (sued individually and as successor-in-interest to BYRON JACKSON PUMPS, SIER BATH GEAR & PUMP CO. and EDWARD VALVE & MANUFACTURING) (for Byron Jackson and Sier pumps, Edward valves); **FMC CORPORATION** (sued individually and as successor-in-interest to NORTHERN PUMP, CO.) (for Northern pumps); **GARLOCK SEALING TECHNOLOGIES, L.L.C.** (sued individually and as successor-in-interest to GARLOCK, INC.) (for Garlock gaskets and packing); **GEORGIA-PACIFIC CORPORATION** (for Georgia-Pacific joint compound); GOULDS PUMPS, INC. (for Goulds pumps); **HILLS BROTHERS CHEMICAL CORPORATION** (as a supplier of asbestos-containing fibers and insulation); **HOPEMAN BROTHERS INC.** (for marinite and micarta board); **HOPEMAN BROTHERS MARINE INTERIORS a/k/a HOPEMAN BROTHERS, INC.** (for marinite and

micarta board); **IMO INDUSTRIES, INC.** (sued individually and as successor-in-interest to DELAVAL TURBINE, INC. and CH WHEELER) (for DeLaval turbines & pumps and CH Wheeler air ejectors); **INGERSOLL RAND COMPANY** (sued individually and as successor-in-interest to TERRY STEAM TURBINE COMPANY) (for Ingersoll Rand pumps and compressors and Terry turbines and pumps); **INVENSYS SYSTEMS, INC.** (sued individually and as successor-in-interest to EDWARD VALVE & MANUFACTURING)(for Edward valves); **J.T. THORPE & SON, INC.** (as a boiler contractor and a supplier of asbestos-containing insulation); **JOHN CRANE, INC.** (for John Crane gaskets); **LESLIE CONTROLS, INC.** (for Leslie valves); **M. SLAYEN AND ASSOCIATES, INC.** (as an insulation contractor); **McNALLY INDUSTRIES, L.L.C.** (sued individually and as successor-in-interest to  NORTHERN PUMP COMPANY f/k/a NORTHERN FIRE APPARATUS COMPANY) (for Northern pumps); **MUELLER CO.** (for Mueller valves); **PARKER-HANNIFIN CORPORATION** (sued individually and as successor-in-interest to SACOMO SIERRA and SACOMO MANUFACTURING CO.) (for Sacomo gaskets and packing); **PLANT INSULATION COMPANY** (as an insulation contractor and supplier); **R.T. VANDERBILT COMPANY, INC.** (as a supplier of asbestos-containing talc); **SEPCO CORPORATION** (for Sepco gaskets); **SPIROL INTERNATIONAL CORPORATION** (for UNITED STATES GASKET CO.)(for US Gasket gaskets); **SYD CARPENTER, MARINE CONTRACTOR, INC.** (as an insulation contractor); **TYCO FLOW CONTROL, INC.** (sued individually and as successor-in-interest to THE LUNKENHEIMER COMPANY and HANCOCK VALVE)(for Hancock and Lunkenheimer valves); **UNION CARBIDE CORPORATION** (for as a supplier of asbestos-containing fibers); **UNIROYAL HOLDING, INC.** (for asbestos cloth); **VELAN VALVE CORPORATION** (for Velan valves); **VIKING PUMP, INC.** (for Viking pumps); **WARREN PUMPS, L.L.C.** (for Warren pumps); **THE WILLIAM POWELL COMPANY** (for Powell valves); **WEIR VALVES & CONTROLS** f/k/a ATWOOD MORRILL (for Atwood Morrill valves); **YARWAY CORPORATION** (sued individually and as successor-in-interest to GIMPEL

1   CORPORATION) (for Gimpel valves and Yarway steam traps.

2       4.      Plaintiffs hereby disclaim any cause of action or recovery for any injuries caused by any

3   exposure to asbestos dust that occurred in a federal enclave, which expressly excludes U.S. Navy

4   vessels.  Plaintiffs also disclaim any cause of action or recovery for any injuries resulting from exposure

5   to asbestos dust caused by any acts or omissions of a party Defendant committed at the direction of an

6   officer of the United States Government.

7                                **FIRST CAUSE OF ACTION**

8                                      (Negligence)

9       PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-450, THEIR "ALTERNATE
10   ENTITIES", AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE
11   ALLEGE AS FOLLOWS:

12       5.      Plaintiffs incorporate herein by reference, as though fully set forth therein, the general

13   allegations set forth above.

14       6.      At all times herein mentioned, each of the named defendants and DOES 1 through 450

15   was the successor, successor in business, successor in product line or a portion thereof, parent,

16   subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity

17   researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling,

18   distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing,

19   contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others,

20   packaging and advertising asbestos, and products containing asbestos, including but not limited to,

21   those products identified in paragraph 3 above.  Said entities shall hereinafter collectively be called

22   "alternate entities."  Each of the herein named defendants is liable for the tortious conduct of each

23   successor, successor in business, successor in product line or a portion thereof, assign, predecessor in

24   product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially

25   owned entity, or entity that it was a member of, or funded, that researched, repaired, marketing,

26   warranted, re-branded, manufactured for others and advertised asbestos, products containing asbestos.

27   The following defendants, and each of them, are liable for the acts of each and every "alternate entity",

28   and each of them, in that there has been a virtual destruction of Plaintiffs' remedy against each such

1  "alternate entity"; defendants, and each of them, have acquired the assets, product line, or a portion

2  thereof, of each such "alternate entity"; defendants, and each of them, have caused the destruction of

3  Plaintiffs' remedy against each such "alternate entity"; each such defendant has the ability to assume

4  the risk-spreading role of each such "alternate entity"; and that each such defendant enjoys the

5  goodwill originally attached to each such "alternate entity".

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| ALFA LAVAL, INC. | SHARPLES, INC.<br>ALFA-LAVAL SEPARATION, INC.<br>DE LAVAL SEPARATOR COMPANY |
| BUFFALO PUMPS, INC. | BUFFALO FORGE CO. |
| BW/IP INTERNATIONAL, INC. | BYRON JACKSON PUMPS |
| CARRIER CORPORATION | UNITED TECHNOLOGIES CORPORATION<br>BRYANT HEATING AND AIR<br>  CONDITIONING, INC. |
| CLEAVER-BROOKS, INC. | AQUA-CHEM, INC.<br>CLEAVER-BROOKS COMPANY, INC.<br>DAVIS ENGINEERING |
| COLTEC INDUSTRIES, INC. | FAIRBANKS MORSE ENGINE |
| CRANE CO. | CRANE ENVIRONMENTAL<br>CRANE PUMPS AND SYSTEMS<br>VALVE SERVICES<br>CRANE VALVE GROUP<br>CRANE SUPPLY<br>CHAPMAN VALVE CO.<br>DEMING PUMPS<br>JENKINS VALVES<br>COCHRANE FEED TANKS<br>COCHRANE DIVISION<br>CHEMPUMP |
| DOVER CORPORATION | BLACKMER PUMP CO. |
| ELLIOTT TURBOMACHINERY COMPANY | ELLIOTT COMPANY |
| FLOWSERVE CORPORATION | FLOWSERVE PUMP CORPORATION<br>EDWARD VALVE INC.<br>EDWARD VALVE & MANUFACTURING<br>JOHNSTON PUMP COMPANY |

| | | |
|---|---|---|
| 1 | | BW/IP INTERNATIONAL, INC. (f/k/a BYRON JACKSON PUMP DIVISION) |
| 2 | | BYRON JACKSON PUMP COMPANY PACIFIC PUMPS |
| 3 | | NORDSTROM VALVES, INC. NORDSTROM AUDCO, LLC |
| 4 | | MERCO-NORDSTROM VALVE COMPANY KAMMER VALVES INC. |
| 5 | | KAMMER CONTROL VALVES KAMMER VENTILE |
| 6 | | DURION CASTINGS COMPANY THE DURIRON COMPANY, INC. |
| 7 | | DURCO INTERNATIONAL, INC. ALDRICH |
| 8 | | ALDRICH DARLING VALVE |
| 9 | FMC CORPORATION | PEERLESS PUMP COMPANY McNALLY INDUSTRIES-NORTHERN PUMP |
| 10 | | FMC AGRICULTURAL PRODUCTS FMC BIOPOLYMER |
| 11 | | FMC LITHIUM FMC ALKALI CHEMICALS |
| 12 | | FMC FORET NORTHERN PUMP COMPANY |
| 13 | | |
| 14 | GARLOCK SEALING TECHNOLOGIES, LLC | GARLOCK, INC. GARLOCK SEALING TECHNOLOGIES GULFWESTERN |
| 15 | | GARLOCK FLUIDTEC PRODUCTS GARLOCK HELICOFLEX |
| 16 | | GARLOCK METALLIC GASKETS GARLOCK RUBBER TECHNOLOGIES |
| 17 | | BELMONT PACKING & RUBBER CO. GARLOCK PACKING CO. |
| 18 | | U.S. GASKET CO. |
| 19 | GEORGIA-PACIFIC CORPORATION | BESTWALL GYPSUM COMPANY GEORGIA-PACIFIC RESINS, INC. |
| 20 | | GEORGIA-PACIFIC WEST, INC. |
| 21 | GOULDS PUMPS, INC. | GOULDS PUMPS (TX), LP |
| 22 | | |
| 23 | HOPEMAN BROTHERS MARINE INTERIORS | HOPEMAN BROTHERS, INC. |
| 24 | IMO INDUSTRIES, INC. | DE LAVAL TURBINE INC. WARREN PUMPS, INC. |
| 25 | | COLFAX CORPORATION IMO PUMP |
| 26 | | IMO AB COLFAX PUMP GROUP |
| 27 | | ALLWEILER HOUTTUIN |
| 28 | | C.H. WHEELER |

| # | | |
|---|---|---|
| 1 | INGERSOLL-RAND COMPANY | INGERSOLL-RAND ABG |
| 2 | | DRESSER-RAND<br>POWERWORKS |
| | | THERMOKING |
| 3 | | TERRY STEAM TURBINE COMPANY<br>WHITON MACHINE CO. |
| 4 | | |
| | INVENSYS SYSTEMS, INC. | EDWARD VALVE & MANUFACTURING |
| 5 | | |
| | JOHN CRANE, INC. | JOHN CRANE-HOUDAILLE, INC. |
| 6 | | HOUDAILLE JOHN CRANE, INC. |
| 7 | | |
| 8 | LESLIE CONTROLS, INC. | CIRCOR INTERNATIONAL, INC. |
| 9 | | KIELEY & MUELLER, INC. |
| | MCNALLY INDUSTRIES, INC. | NORTHERN PUMP |
| 10 | | FMC CORPORATION |
| 11 | PARKER-HANNIFIN CORPORATION | SACOMO SIERRA |
| | | SACOMO MANUFACTURING CO. |
| 12 | | BERTEA CORPORATION |
| | | SEITZ INDUSTRIAL PRODUCTS, INC. |
| 13 | | AREMAC ASSOCIATES |
| 14 | SPIROL INTERNATIONAL CORPORATION | UNITED STATES GASKET CO. |
| 15 | TYCO FLOW CONTROL, INC. | THE LUNKENHEIMER COMPANY |
| | | CINCINNATI BRASS WORKS |
| 16 | | LUNKENHEIMER BRASS WORKS |
| | | COMPANY |
| 17 | | GIMPEL VALVES |
| | | HANCOCK VALVES |
| 18 | | CROSBY VALVE & GAGE COMPANY |
| 19 | VIKING PUMP, INC. | IDEX CORPORATION |
| | | ROTO KING PUMP, INC. |
| 20 | | HOUDAILLE VIKING PUMP, INC. |
| 21 | WARREN PUMPS LLC | WARREN PUMPS INC. |
| | | WARREN PUMPS-HOUDAILLE, INC. |
| 22 | | COLFAX PUMP GROUP |
| | | ALWEILER AG |
| 23 | | HOUTTUIN BV |
| | | IMO PUMP |
| 24 | | ZENITH PUMPS |
| | | QUIMBY PUMP CO. |
| 25 | | |
| | WEIR VALVE & CONTROLS USA, INC. | ATWOOD & MORRILL CO.,INC. |
| 26 | | THE WEIR GROUP PLC |
| | | WEIR MINERALS |
| 27 | | WEIR CLEAR LIQUID |
| | | WEIR VALVES & CONTROLS |
| 28 | | WEIR SERVICES |

1                            WEIR TECHNA
                                A & M VALVE

2                            HOPHOLD A & M, INC.

3  YARWAY CORP.                     GIMPEL CORP.
                                ERIE POWER TECHNOLOGIES, INC.

4

5      7.    At all times herein mentioned, defendants, their "alternate entities", and each of them,

6  were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying,

7  labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting,

8  servicing, installing, contracting for installation, repairing, renting, marketing, warranting, re-branding,

9  manufacturing for others, packaging, and advertising asbestos, and/or asbestos products (hereinafter

10  Defendants' Products).

11      8.    At all times herein mentioned, defendants, their "alternate entities", and each of them,

12  singularly and jointly, negligently and carelessly researched, manufactured, fabricated, specified,

13  designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the

14  health hazards, labeled, assembled, distributed, leased, bought, rented offered for sale, supplied, sold,

15  inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded,

16  manufactured for others, packaged, and advertised Defendants' Products, including but not limited to

17  those products identified in paragraph 3 above, in that the Defendants' Products were unreasonably

18  dangerous because they released respirable asbestos fibers which resulted in personal injuries to users,

19  consumers, workers, bystanders, and others, including Plaintiff ROBERT REASER herein (hereinafter

20  collectively called "exposed person").  Said products were used at all times in a manner that was

21  reasonably foreseeable to defendants, their "alternate entities," and each of them, thereby rendering said

22  products unsafe and dangerous for use by "exposed person".  Plaintiffs herein allege that ROBERT

23  REASER was exposed to asbestos as a result of exposures to Defendants' Products, including but not

24  limited to those products identified in paragraph 3 above (hereinafter referred to as "defendants'

25  products" or "defendants' asbestos and asbestos-containing products"), were a substantial contributing

26  factor in the development of his malignant mesothelioma, and therefore proximately caused Plaintiff

27  ROBERT REASER's injuries.

28      9.    Defendants, their "alternate entities," and each of them, had a duty to exercise reasonable

1  care while engaging in the activities mentioned above and each defendants breached said duty of

2  reasonable care in that defendants, and each of them, failed to safely and adequately design, manufacture

3  and/or sell defendants' products; failed to test said products; failed to investigate the hazards of said

4  products; failed to warn "exposed person", including Plaintiff ROBERT REASER, of the health hazards

5  of using defendants' products; failed to disclose the known or knowable dangers of using defendants'

6  products; failed to obtain suitable alternative materials to asbestos when such alternatives were

7  available; and as otherwise stated herein.

8    10.    The defendants' products were and are hazardous to the health and safety of Plaintiff, and

9  others in Plaintiff's position working with and in close proximity to such products, and since on or

10  before 1930, the hazards and dangerous propensities of the defendants' products were both known and

11  knowable to the defendants, their "alternate entities", and each of them, through the use of medical

12  and/or scientific data and other knowledge available to defendants, their "alternate entities", and each of

13  them at the time of defendants' manufacture, distribution, sale, research, study, fabrication, design,

14  modification, labeling, assembly, leasing, buying, offering for sale, supply, inspection, service,

15  installation, contracting for installation, repair, marketing, warranting, re-branding, re-manufacturing for

16  others, packaging and advertising, of those products, which clearly indicated the hazards and dangerous

17  propensities of asbestos presented a substantial danger to users, including Plaintiff, ROBERT REASER,

18  of Defendants' Products through the intended and reasonably foreseeable use of those products.

19    11.    Defendants, their "alternate entities", and each of them, knew, or reasonably should have

20  known, that Defendants' Products were dangerous and were likely to be dangerous when used in their

21  intended and reasonably foreseeable manner.

22    12.    Defendants, their "alternate entities", and each of them, knew, or reasonably should have

23  known, that Defendants' Products would be installed, repaired, maintained, overhauled, removed,

24  sawed, chipped, hammered, mixed, scraped, sanded, swept, broken, "ripped out," or otherwise disturbed

25  in their ordinary, intended and foreseeable use, resulting in the release of airborne hazardous and

26  dangerous asbestos fibers, and that through such activity, "exposed person," including Plaintiff

27  ROBERT REASER  herein, would be exposed to said hazardous and dangerous asbestos fibers.

28  Defendants, their "alternate entities", and each of them, knew or reasonably should have known that

1     users, such as Plaintiff ROBERT REASER and others in his position, working with and in close

2     proximity to Defendants' Products would not realize or know the danger. Defendants, their "alternate

3     entities," and each of them negligently failed to adequately warn or instruct of the dangers of the

4     products. A reasonable designer, manufacturer, distributor, seller, installer, buyer or supplier, under the

5     same or similar circumstances, would have warned of the dangers to avoid exposing others to a

6     foreseeable risk of harm. The negligent failure of defendants, their "alternate entities," and each of them

7     to warn was a substantial factor in causing harm to Plaintiff ROBERT REASER.

8          13.     Plaintiff ROBERT REASER  used, handled, or was otherwise exposed to asbestos from

9     Defendants' Products referred to herein in a manner that was reasonably foreseeable to defendants and

10     each of them.  Plaintiff's exposure to Defendants' Products occurred at various locations set forth in

11     **Exhibit "A"**, which is attached hereto and incorporated by reference herein.

12          14.     As a direct and proximate result of the conduct of the defendants, their "alternate

13     entities", and each of them, as aforesaid, Plaintiff ROBERT REASER's exposure to asbestos from use

14     of Defendants' Products caused severe and permanent injury to the Plaintiff, the nature of which, along

15     with the date of Plaintiff's diagnosis and the date he learned such injuries were attributable to exposure

16     to Defendants' Products, are set forth in **Exhibit "B"**, which is attached hereto and incorporated by

17     reference herein. Plaintiffs are informed and believe, and thereon allege, that progressive lung disease,

18     cancer and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma

19     and that said disease results from exposure to Defendants' Products over a period of time.

20          15.     Plaintiff ROBERT REASER suffers from malignant pleural mesothelioma, caused by

21     exposure to asbestos from Defendants' Products and/or from the use of Defendants' Products containing

22     asbestos including those products identified in paragraph 3 above. Plaintiff ROBERT REASER was not

23     aware at the time of exposure that Defendants' Products presented any risk of injury and/or disease.

24          16.     As a direct and proximate result of the aforesaid conduct of defendants, their "alternate

25     entities," and each of them, Plaintiff ROBERT REASER  has suffered and will continue to suffer

26     permanent injuries and future injuries to his person, body and health, including, but not limited to, pain,

27     discomfort, loss of weight, loss of appetite, fatigue, somnolence, lethargy, dyspnea, dysphagia, and other

28     physical symptoms, and the mental and emotional distress attendant thereto, as Plaintiff's malignant

1    mesothelioma progresses, all to his general damage in a sum in excess of the jurisdictional limit of a

2    limited civil case.

3        17.    As a direct and proximate result of the aforesaid conduct of the defendants, their

4    "alternate entities", and each of them, Plaintiff ROBERT REASER has incurred, is presently incurring,

5    and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices,

6    X-rays and other medical treatment, the true and exact amount thereof being presently unknown to

7    Plaintiffs, subject to proof at trial.

8        18.    As a further direct and proximate result of the said conduct of the defendants, their

9    "alternate entities", and each of them, Plaintiffs have incurred, and will incur, loss of income, wages,

10   profits and commissions, a diminishment of earning potential, and other pecuniary losses, the true and

11   exact amount thereof being presently unknown to Plaintiffs, subject to proof at trial.

12       19.    Plaintiffs further allege that defendants, their "alternate entities", and each of them, also

13   engaged in the following wrongful acts:

14       (a)    Defendants, their "alternate entities", and each of them, suppressed from all consumers,

15   including Plaintiff ROBERT REASER, medical and scientific information concerning the health hazards

16   associated with inhalation of asbestos, including the substantial risk of injury or death therefrom.

17   Although defendants, and each of them, knew of the substantial risks associated with exposure to

18   asbestos, they willfully and knowingly concealed such information from the users of their asbestos

19   and/or asbestos-containing products in conscious disregard of the rights, safety and welfare of "exposed

20   person", including Plaintiff ROBERT REASER.

21       (b)    Defendants, their "alternate entities", and each of them, belonged to, participated in, and

22   financially supported industry organizations, including but not limited to the Gypsum Association,

23   Asbestos Information Association, Industrial Hygiene Foundation and others, which, for and on behalf

24   of defendants, their "alternate entities", and each of them, actively promoted the suppression of

25   information about the dangers of asbestos to users of the aforementioned products and materials, thereby

26   misleading Plaintiff ROBERT REASER as to the safety of their products.  Through their participation

27   and association with such industry organizations, defendants and each of them knowingly and

28   deliberately concealed and suppressed the true information regarding asbestos and its dangers, and

1   propagated misinformation intended to instill in users of Defendants' Products a false security about the

2   safety of their products.  The Dust Control Committee, which changed its name to the Air Hygiene

3   Committee, of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust

4   control.  Discussions in this committee were held many times regarding the dangers inherent in asbestos

5   and the dangers, which arise from the lack of control of dust, and such information was suppressed from

6   public dissemination from 1946 to a date unknown to Plaintiff ROBERT REASER  at this time;

7       (c)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford

8   Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and

9   Charleston, South Carolina, defendants, their "alternate entities", and each of them, knew and possessed

10  medical and scientific information of the connection between the inhalation of asbestos fibers and

11  asbestosis, which information was disseminated through the Asbestos Textile Institute and other

12  industry organizations to all other defendants, their "alternate entities", and each of them, herein.

13  Between 1942 and 1950, the defendants, their "alternate entities", and each of them, failed to provide

14  this information to consumers;

15      (d)     Defendants, their "alternate entities", and each of them, failed to warn Plaintiff ROBERT

16  REASER  and others of the nature of said materials which were dangerous when breathed and which

17  could cause pathological effects without noticeable trauma, despite the fact that defendants, their

18  "alternate entities", and each of them, possessed knowledge and were under a duty to disclose that said

19  materials were dangerous and a threat to the health of persons coming into contact therewith;

20      (e)     Defendants, their "alternate entities", and each of them, failed to provide Plaintiff

21  ROBERT REASER  with information concerning adequate protective masks and other equipment

22  devised to be used when applying, mixing, installing and sanding the products of the defendants, their

23  "alternate entities", and each of them, despite knowing that such protective measures were necessary,

24  and that they were under a duty to disclose that such materials were dangerous and would result in injury

25  to Plaintiff ROBERT REASER  and others applying and installing such material;

26      (f)     Defendants, their "alternate entities", and each of them, knew and failed to disclose that

27  Plaintiff ROBERT REASER  and anyone similarly situated, upon inhalation of asbestos would, in time,

28  have  a  substantial  risk  of  developing  irreversible  conditions  of  pneumoconiosis,  asbestosis,

1   mesothelioma and/or cancer;

2       (g)    Defendants, their "alternate entities", and each of them, failed to provide information of

3   the true nature of the hazards of asbestos materials and that exposure to these material would cause

4   pathological effects without noticeable trauma to the public, including buyers, users, and physicians

5   employed by Plaintiff ROBERT REASER  so that said physicians could not examine, diagnose, and

6   treat Plaintiff and others who were exposed to asbestos, despite the fact that defendants, their "alternate

7   entities", and each of them, were under a duty to so inform and said failure was misleading.

8       20.    Defendants, their "alternate entities", and each of them, and their officers, directors, and

9   managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of,

10   or should have known of, each of the acts set forth herein. Defendants, their "alternate entities", and

11   each of them, are liable for the oppressive and malicious acts of their "alternate entities", and each of

12   them, and each defendant's officers, directors, and managing agents participated in, authorized,

13   expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of

14   their "alternate entities" as set forth herein.

15       21.    The herein-described conduct of said defendants, their "alternate entities", and each of

16   them, was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference

17   to the safety and health of "exposed person," including Plaintiff ROBERT REASER, in that defendants,

18   and each of them, continued to manufacture, market and/or sell dangerous products known to cause

19   severe, permanent injuries and death, despite possessing knowledge of the substantial hazards posed by

20   use of their products, in order to continue to profit financially therefrom.  Defendants, their "alternate

21   entities", and each of them, engaged in such conduct so despicable, contemptible, base, vile, miserable,

22   wretched and loathsome as to be looked down upon and despised by ordinary people and justifies an

23   award of punitive and exemplary damages pursuant to Civil Code section 3294.  Plaintiffs, for the sake

24   of example and by way of punishing said defendants, seek punitive damages according to proof.

25       22.    Defendants and each of them engaged in conduct which was intended by defendants and

26   each of them to cause injury to the plaintiffs, and despicable conduct which was carried on by the

27   defendant with a willful and conscious disregard of the rights or safety of others, including Plaintiff

28   ROBERT REASER.

23.     Defendants, and each of them, engaged in the despicable conduct described herein that subjected persons, including Plaintiff ROBERT REASER , to cruel and unjust hardship in the form of sever, debilitating and fatal diseases like asbestosis, lung cancer and mesothelioma, in conscious disregard of those persons' rights.

24.     As a direct and proximate result of such intentional conduct by defendants, their "alternate entities" and each of them, Plaintiff ROBERT REASER sustained the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against defendants, their "alternate entities", and each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION

### (Strict Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

25.     Plaintiffs incorporate herein by reference, as though fully set forth therein, each and every one of the general allegations and the allegations contained in the First Cause of Action herein.

26.     Defendants, their "alternate entities", and each of them, sold the aforementioned Defendants' Products and failed to adequately warn or instruct of the known and knowable dangers and risks of the ordinary, intended, and foreseeable use of their products, which dangers and risks would not have been, and were not, recognized by ordinary consumers of the products, including Plaintiff, ROBERT REASER , and the lack of sufficient instructions and/or warnings was a substantial factor in causing harm to Plaintiff ROBERT REASER  and others in Plaintiff's position working with and in close proximity to such products.

27.     Defendants' Products were defective and unsafe for their intended purpose and foreseeable use in that, when used, handled, installed, repaired, maintained, overhauled, removed, sawed, chipped, hammered, mixed, scraped, sanded, swept, broken, "ripped out," or otherwise disturbed, said products would result in the release, and therefore inhalation of, hazardous and dangerous asbestos fibers by exposed person, including Plaintiff ROBERT REASER . The defect existed in all of said products when they left the possession of the defendants, their "alternate entities," and each of them. At

the time Defendants' Products were used by Plaintiff, and others in Plaintiff's position working with and in close proximity to such products, the products were substantially the same as when they left the possession of the defendants, their "alternate entities," and each of them and/or any changes made to the products after they left the possession of defendants, their "alternate entities", and each of them were reasonably foreseeable to defendants, their "alternate entities", and each of them.  Defendants' asbestos and asbestos products were used by Plaintiff ROBERT REASER, and others in Plaintiff's position working with and in close proximity to such products, in a way that was reasonably foreseeable to defendants, and each of them.  The defect in said products was a substantial factor in causing harm and personal injuries to Plaintiff ROBERT REASER, including malignant mesothelioma, while being used in a reasonably foreseeable manner, thereby rendering said products defective, unsafe, and unreasonably dangerous for their ordinary and intended use.

28.   As a direct and proximate result of the actions and conduct outlined herein, Defendants' Products failed to perform as safely as an ordinary consumer would have expected in that defendants' products, and each of them, during their ordinary and intended use, and such hazardous exposures lacked any perceptible qualities to the human body, yet they cause severe and fatal diseases, including asbestosis, lung cancer, mesothelioma and other cancers in humans.  Plaintiffs further allege that "exposed person", including Plaintiff ROBERT REASER, were unaware of the harmful effects of asbestos and further unaware of the harmful exposures to Defendants' Products when such exposures occurred, and thus the failure of defendants' products to perform as safely as Plaintiff ROBERT REASER had reason to expect was a substantial factor in causing his injuries.

29.   As a direct and proximate result of the actions and conduct outlined herein, Plaintiff ROBERT REASER has suffered the injuries and damages alleged herein.

30.   Plaintiffs further allege that defendants, their "alternate entities", and each of them, also engaged in the following wrongful acts:

(a)   Defendants, their "alternate entities", and each of them, suppressed from all consumers, including Plaintiff ROBERT REASER, medical and scientific information concerning the health hazards associated with inhalation of asbestos, including the substantial risk of injury or death therefrom. Although defendants, and each of them, knew of the substantial risks associated with exposure to

1   asbestos, they willfully and knowingly concealed such information from the users of their asbestos

2   and/or asbestos-containing products in conscious disregard of the rights, safety and welfare of "exposed

3   person", including Plaintiff ROBERT REASER.

4        (b)    Defendants, their "alternate entities", and each of them, belonged to, participated in, and

5   financially supported industry organizations, including but not limited to the Gypsum Association,

6   Asbestos Information Association, Industrial Hygiene Foundation and others, which, for and on behalf

7   of defendants, their "alternate entities", and each of them, actively promoted the suppression of

8   information about the dangers of asbestos to users of the aforementioned products and materials, thereby

9   misleading Plaintiff ROBERT REASER as to the safety of their products.  Through their participation

10  and association with such industry organizations, defendants and each of them knowingly and

11  deliberately concealed and suppressed the true information regarding asbestos and its dangers, and

12  propagated misinformation intended to instill in users of Defendants' Products a false security about the

13  safety of their products.  The Dust Control Committee, which changed its name to the Air Hygiene

14  Committee, of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust

15  control.  Discussions in this committee were held many times regarding the dangers inherent in asbestos

16  and the dangers, which arise from the lack of control of dust, and such information was suppressed from

17  public dissemination from 1946 to a date unknown to Plaintiff ROBERT REASER at this time;

18       (c)    Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford

19  Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and

20  Charleston, South Carolina, defendants, their "alternate entities", and each of them, knew and possessed

21  medical and scientific information of the connection between the inhalation of asbestos fibers and

22  asbestosis, which information was disseminated through the Asbestos Textile Institute and other

23  industry organizations to all other defendants, their "alternate entities", and each of them, herein.

24  Between 1942 and 1950, the defendants, their "alternate entities", and each of them, failed to provide

25  this information to consumers;

26       (d)    Defendants, their "alternate entities", and each of them, failed to warn Plaintiff ROBERT

27  REASER and others of the nature of said materials which were dangerous when breathed and which

28  could cause pathological effects without noticeable trauma, despite the fact that defendants, their

1  "alternate entities", and each of them, possessed knowledge and were under a duty to disclose that said

2  materials were dangerous and a threat to the health of persons coming into contact therewith;

3       (e)    Defendants, their "alternate entities", and each of them, failed to provide Plaintiff

4  ROBERT REASER  with information concerning adequate protective masks and other equipment

5  devised to be used when applying, mixing, installing and sanding the products of the defendants, their

6  "alternate entities", and each of them, despite knowing that such protective measures were necessary,

7  and that they were under a duty to disclose that such materials were dangerous and would result in injury

8  to Plaintiff ROBERT REASER  and others applying and installing such material;

9       (f)    Defendants, their "alternate entities", and each of them, knew and failed to disclose that

10  Plaintiff ROBERT REASER  and anyone similarly situated, upon inhalation of asbestos would, in time,

11  have a substantial risk of developing irreversible conditions of pneumoconiosis, asbestosis,

12  mesothelioma and/or cancer;

13       (g)    Defendants, their "alternate entities", and each of them, failed to provide information of

14  the true nature of the hazards of asbestos materials and that exposure to these material would cause

15  pathological effects without noticeable trauma to the public, including buyers, users, and physicians

16  employed by Plaintiff ROBERT REASER  so that said physicians could not examine, diagnose, and

17  treat Plaintiff and others who were exposed to asbestos, despite the fact that defendants, their "alternate

18  entities", and each of them, were under a duty to so inform and said failure was misleading; and

19       31.    Defendants, their "alternate entities", and each of them, and their officers, directors, and

20  managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of,

21  or should have known of, each of the acts set forth herein. Defendants, their "alternate entities", and

22  each of them, are liable for the oppressive and malicious acts of their "alternate entities", and each of

23  them, and each defendant's officers, directors, and managing agents participated in, authorized,

24  expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of

25  their "alternate entities" as set forth herein.

26       32.    The herein-described conduct of said defendants, their "alternate entities", and each of

27  them, was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference

28  to the safety and health of "exposed person," including Plaintiff ROBERT REASER , in that defendants,

1   and each of them, continued to manufacture, market and/or sell dangerous products known to cause

2   severe, permanent injuries and death, despite possessing knowledge of the substantial hazards posed by

3   use of their products, in order to continue to profit financially therefrom.  Defendants, their "alternate

4   entities", and each of them, engaged in such conduct so despicable, contemptible, base, vile, miserable,

5   wretched and loathsome as to be looked down upon and despised by ordinary people and justifies an

6   award of punitive and exemplary damages pursuant to Civil Code section 3294.  Plaintiffs, for the sake

7   of example and by way of punishing said defendants, seek punitive damages according to proof.

8          33.    Defendants and each of them engaged in conduct which was intended by defendants and

9   each of them to cause injury to the plaintiffs, and despicable conduct which was carried on by the

10  defendant with a willful and conscious disregard of the rights or safety of others, including Plaintiff

11  ROBERT REASER.

12         34.    Defendants, and each of them, engaged in the despicable conduct described herein that

13  subjected persons, including Plaintiff ROBERT REASER , to cruel and unjust hardship in the form of

14  sever, debilitating and fatal diseases like asbestosis, lung cancer and mesothelioma, in conscious

15  disregard of those persons' rights.

16         35.    As a direct and proximate result of such intentional conduct by defendants, their

17  "alternate entities" and each of them, Plaintiff ROBERT REASER sustained the injuries and damages

18  alleged herein.

19         WHEREFORE, Plaintiffs pray for judgment against defendants, and their "alternate entities",

20  and each of them, as hereinafter set forth.

21
                          **THIRD CAUSE OF ACTION**
22
                              (Loss of Consortium)
23
           AS AND FOR A FURTHER THIRD SEPARATE, AND DISTINCT CAUSE OF ACTION
24  FOR LOSS OF CONSORTIUM, PLAINTIFF CHRISTINE REASER     COMPLAINS OF
    DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND
25  ALLEGES AS FOLLOWS:

26         40.    Plaintiff CHRISTINE REASER incorporates by reference, each and every allegation

27  contained in the general allegations and in the First, and Second Causes of Action herein.

28         41.    Plaintiffs ROBERT REASER and CHRISTINE REASER were married on November 10,

1956, and at all times relevant to this action were, and are now, husband and wife.

42.   Prior to Plaintiff ROBERT REASER's injuries as alleged, he was able and did perform duties as a spouse.  Subsequent to the injuries and as a proximate result thereof, plaintiff ROBERT REASER  has been unable to perform the necessary duties as a spouse and the work and services usually performed in the care, maintenance, and management of the family home, and he will be unable to perform such work, service and duties in the future.  As a proximate result thereof, CHRISTINE REASER  has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown but which will be proved at the time of trial.

43.   Plaintiff CHRISTINE REASER's discovery of this cause of her loss of consortium, as herein alleged, first occurred within one year of the date this Complaint was filed.

44.   As a direct and proximate result of the acts of defendants, their "alternate entities", and each of them, and the severe injuries caused thereby to plaintiff ROBERT REASER  as set forth in this complaint, plaintiff CHRISTINE REASER has suffered, and for a long period of time will continue to suffer, loss of consortium, including, but not limited, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

44.   WHEREFORE, plaintiffs pray for judgment against defendants, their "alternate entities", and each of them, in an amount to be proved at trial in each individual case, as follows:

Plaintiff ROBERT REASER:

1.   For plaintiff's general damages according to proof;

2.   For plaintiff's loss of income, wages, and earning potential according to proof;

3.   For plaintiff's medical and related expenses according to proof;

Plaintiff CHRISTINE REASER:

4.   For plaintiff's damages for loss of consortium and/or society according to proof;

Plaintiffs ROBERT REASER  and CHRISTINE REASER:

5.   For plaintiffs' cost of suit herein;

6.   For exemplary or punitive damages according to proof;

1        7.     For such other and further relief as the Court may deem just and proper, including

2  costs and prejudgment interest as provided in C.C.P. section 998, C.C.P. section 1032, and related

3  provisions of law.

4  DATED: February 1, 2008              **SIMON, EDDINS & GREENSTONE, LLP**

5

6                          By: _____

7                              JENNIFER BARTLETT

8                              ETHAN A. HORN
                            Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2 <u>DEMAND FOR JURY TRIAL</u>

3 Plaintiffs hereby demand trial by jury as to all issues so triable.

4

5 DATED: February 1, 2008                    **SIMON, EDDINS & GREENSTONE, LLP**

6

7                                            By: _____

8                                                JENNIFER L. BARTLETT
                                                 ETHAN A. HORN
9                                                Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### EXHIBIT "A"

2      Plaintiff ROBERT REASER's exposure to asbestos and asbestos-containing products occurred at

3  various locations within the States of California, South Carolina, Massachusetts, Florida and Rhode

4  Island including, but not limited to:

5

6

| Employer | Location of Exposure | Job Title | Exposure Date(s) |
|---|---|---|---|
| United States Navy | USS Shea (DM-30)<br>San Diego, CA<br>Charleston, SC | Welder; Pipefitter;<br>Fireman; Seaman<br>Apprentice | 1951-1956 |
| United States Navy | USS Boston (CA-69/CAG-1)<br>Boston Naval Shipyard<br>Boston, MA | Damage Control, Third<br>Class | 1951-1956 |
| United States Navy | USS Providence (CLG-6/CL-82)<br>Providence, RI | Damage Control, Second<br>Class | 1959-1960 |
| United States Navy | USS Wilkinson (DL-5)<br>Long Beach, CA | Damage Control, Second<br>Class | 1960-1964 |
| United States Navy | NAS Cecil Field<br>Jacksonville, FL | Damage Control, First<br>Class | 1964-1967 |
| F. C. James<br>Construction | Florida | Framer | 1971-1997 |
| Self | Florida | Brake replacement | 1960s and 1970s |

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### EXHIBIT "B"

Plaintiff ROBERT REASER's exposure to Defendants' Products caused severe and permanent injury to Plaintiff ROBERT REASER including, but not limited to, mesothelioma. Plaintiff was diagnosed with mesothelioma on or about December 13, 2007.

**Exhibit C**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

**CASE NO.: CV 08-501-R**                                    **Date: April 14, 2008**

**TITLE: LARRY LINDQUIST et al V. CLA-VAL CO., et al.**
========================================================================
**PRESENT:**

### HON. MANUEL L. REAL, JUDGE

| | |
|---|---|
| **William Horrell** | **Sheri Kleeger** |
| **Deputy Clerk** | **Court Reporter** |

**ATTORNEYS PRESENT FOR PLAINTIFFS:**        **ATTORNEYS PRESENT FOR DEFENDANTS:**

    Brian Barrow                                            John Lister
                                                            Peter langbord


**PROCEEDINGS:**    Plaintiff's Motion for Remand to State Court


        **The Court hears arguments of counsel.**

        **The Court DENIES the motion.**


<u>5 min</u>


**MINUTES FORM 90**                            **Initials of Deputy Clerk   WH**
**CIVIL -- GEN**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

**CASE NO.: CV 08-712-R**                                     **Date:** **April 14, 2008**

**TITLE: DAVID KELEMAN et al V. BUFFALO PUMPS INC; CLA-VAL CO., et al.**
=========================================================================
**PRESENT:**

### HON. MANUEL L. REAL, JUDGE

| | |
|---|---|
| **William Horrell** | **Sheri Kleeger** |
| **Deputy Clerk** | **Court Reporter** |

**ATTORNEYS PRESENT FOR PLAINTIFFS:**            **ATTORNEYS PRESENT FOR DEFENDANTS:**

      Brian Barrow                                        John Lister
                                                     Peter langbord

**PROCEEDINGS:**     Plaintiff's Motion for Remand to State Court


          **The Court hears arguments of counsel.**

          **The Court DENIES the motion.**


                                                                                       5 min

**MINUTES FORM 90**                                 **Initials of Deputy Clerk**   **WH**
**CIVIL -- GEN**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

**CASE NO.: CV 08-282-R**                                  Date: **April 14, 2008**

**TITLE: TED MUNN and DONNA MUNN V. CLA-VAL CO., et al.**
=======================================================================
**PRESENT:**

### HON. MANUEL L. REAL, JUDGE

| William Horrell | Sheri Kleeger |
|---|---|
| **Deputy Clerk** | **Court Reporter** |

ATTORNEYS PRESENT FOR PLAINTIFFS:           ATTORNEYS PRESENT FOR DEFENDANTS:

Brian Barrow                                              Thomas Moses
                                                          John Lister
                                                          Peter langbord
                                                          Brian Davis

PROCEEDINGS:    Plaintiff's Motion for Remand to State Court


The Court hears arguments of counsel.

The Court DENIES the motion.


5 min

**MINUTES FORM 90**                            Initials of Deputy Clerk ___WH___
**CIVIL -- GEN**


1 of 1 DOCUMENT

**DAVID A. MARLEY, et al., Plaintiffs, vs. ELLIOT TURBOMACHINERY CO., INC., et al., Defendants.**

**CASE NO. 07-23042-CIV-JORDAN**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, MIAMI DIVISION**

*2008 U.S. Dist. LEXIS 33715*

**March 12, 2008, Decided**
**March 13, 2008, Entered**

**COUNSEL:** [*1] For David Marley, Plaintiff: Case A. Dam, LEAD ATTORNEY, Ferraro Law Firm, Miami, FL; David Aaron Jagolinzer, LEAD ATTORNEY, Ferraro & Associates, Miami, FL.

For Pauline E. Marley his wife, Plaintiff: Case A. Dam, LEAD ATTORNEY, Ferraro Law Firm, Miami, FL; David Aaron Jagolinzer, LEAD ATTORNEY, John Joseph Clark, LEAD ATTORNEY, Ferraro & Associates, Miami, FL.

For Elliott Turbomachinery Co., Inc., Defendant: Edward Joy Briscoe, LEAD ATTORNEY, Helaine S. Goodner, LEAD ATTORNEY, Fowler White Burnett, Miami, FL.

For Viad Corporation f/k/a The Dial Corporation, Defendant: Abigail Morrison Cohen, LEAD ATTORNEY, Conroy Simberg Ganon Krevans & Abel, Hollywood, FL.

For Cleaver Brooks, Defendant: Timothy Clark, LEAD ATTORNEY, Timothy Clark, Plantation, FL.

For Buffalo Pumps Inc., Goodyear Tire & Rubber Company, Velan Valve Corp., Defendants: Kathleen Margaret LaBarge, LEAD ATTORNEY, Bice Cole Law Firm, Coral Gables, FL.

For Warren Pumps LLC, General Electric Company, Defendants: Evelyn Fletcher, LEAD ATTORNEY, Hawkins & Parnell, Atlanta, GA.

For Carrier Corporation, Defendant: David M. Hawthorne, LEAD ATTORNEY, Hugh J. Turner, Jr., LEAD ATTORNEY, Akerman Senterfitt & Eidson, Fort Lauderdale, FL.

For [*2] Crane Co., Defendant: Rebecca Carrie Kibbe, LEAD ATTORNEY, Kirkpatrick & Lockhart Preston Gates Ellis LLP, Miami, FL.

For Ingersoll-Rand Company, Defendant: Steven A. Edelstein, Coral Gables, FL.

For American Optical Corporation, Defendant: Hugh J. Turner, Jr., LEAD ATTORNEY, Akerman Senterfitt & Eidson, Fort Lauderdale, FL.

For Garlock Sealing Technologies LLC, John Crane, Inc., Greene, Tweed & Company, Inc., Foster Wheeler Energy Corp., Defendants: M. Stephen Smith, III, LEAD ATTORNEY, Rumberger Kirk & Caldwell, Miami, FL.

For Alfa Laval Inc., Defendant: Frank Joseph Sioli, Jr, LEAD ATTORNEY, Brown Sims, P.C., Miami, FL.

For Kentile Floors, Inc., Defendant: Lori Anne M. Rovner, LEAD ATTORNEY, Virginia Easley Johnson, LEAD ATTORNEY, Foley & Mansfield, P.L.L.P., Miami, FL.

For General Motors Corporation, Defendant: Henry Salas, LEAD ATTORNEY, Cole, Scott, & Kissane P.A., South Miami, FL.

For E.I. Dupont De Nemours and Company, Defendant: Sergio Edward Pagliery, Shook Hardy & Bacon, Miami, FL.

For Goulds Pumps, Inc., Defendant: Peter Joel Frommer, LEAD ATTORNEY, Hinshaw & Culbertson, Fort Lauderdale, FL.

**JUDGES:** Adalberto Jordan, United States District Judge.

**OPINION BY:** Adalberto Jordan

**OPINION**

**AMENDED ORDER DENYING MOTION** [*3] **TO REMAND**

Elliott Turbomachinery and Viad removed this action to federal court pursuant to *28 U.S.C. § 1442(a)(1)*. Pending is the plaintiffs' motion to remand, arguing that the defendants had not sufficiently shown a federal colorable defense and a nexus between this action and their official duties. For the reasons stated below, the motion to remand [D.E. 2] is DENIED.

**I. FACTUAL BACKGROUND**

This action is in essence a dispute about the defendants' ability, under their contract with the Navy, to warn Mr. Marley that unprotected asbestos exposure could cause mesothelioma and other ailments. The defendants were retained by the Navy in the 1940s to manufacture numerous ship parts and devices for the *U.S.S. Lake Champlain.* The manufactured products contained asbestos but did not have any type of warning about the dangers of unprotected asbestos exposure.

Mr. Marley was a Navy sailor assigned to the *Lake Champlain* from 1959-1983. During his assignment, he was allegedly exposed to the asbestos contained in the defendants' products. As a result of this exposure, he allegedly developed mesothelioma. This suit is brought by Mr. Marley and his wife.

Elliot and Viad removed this action under §1442(a)(1), [*4] invoking federal officer jurisdiction. In support of removal, Elliot filed the affidavits of retired Admiral Ben J. Lehman and retired Admiral Roger B. Horne. [1]

  1  Viad joined Elliot's removal filings.

**A. ADMIRAL LEHMAN**

Admiral Lehman joined the United States Navy in 1942 and remained on active duty until 1946. He served as ship superintendent and dry docking officer at the Brooklyn Navy Yard between 1942 and 1944. In 1950, he was assigned as a ship superintendent at the San Francisco Naval Shipyard. During his Naval service, he was personally responsible for the creation of Navy specifications for the procurement of materials and machinery used on Navy vessels. He is familiar with Navy specifications, equipment manuals, and qualified product lists, which are used in the construction and repair of Navy and commercial ships. *See* Lehman Aff. at PP 1-2.

Admiral Lehman states that in the 1940s and 1950s, "the Navy had complete control over every aspect of each piece of equipment. Military specifications governed every characteristic of the equipment used on Navy ships, including the instructions and warnings ... Thus the Navy controlled the decision making with respect to instructions and warnings [*5] on every piece of equipment." *See id.* at P 7. Admiral Lehman further states that the "Navy had specifications as to the nature and content of all written material that was delivered with each piece of equipment ... The Navy determined the nature of hazards to be subject to any precautionary handling and the content of any such labeling." *See id.* at P 8.

Admiral Lehman's conclusion is (1) that manufacturers and suppliers were prohibited from providing any warning without the consent of the Navy, and (2) that "certain types of warnings would not have been approved by the Navy given the necessary performance needs and capabilities of the shipboard equipment, the ships, and Navy personnel. This would have included, but not been limited to, any potential warnings associated with asbestos including, but not limited to, recommendations regarding respiratory protection and repair and maintenance practices." *See id.* at P 10. According to Admiral Lehman, prior to the mid 1960s, the Nevy relied on its own occupational health program to provide training and prevent the hazards of asbestos to shipyard workers. *See id.* at PP 11, 13 (c).

**B. ADMIRAL HORNE**

Admiral Horne is a retired rear admiral of the [*6] United States Navy. He began his career in 1956. Throughout his Navy career, he concentrated in the areas of ship design, engineering, construction, overhaul, and inspection. He achieved the rank of chief engineer and deputy commander at the Naval Sea Systems Command for Ship Design and Engineering. *See* Horne Aff. at P 2.

According to Admiral Horne, it was common for the Navy to send inspectors to the plants of manufacturers to assure conformance with the Navy specifications and requirements. *See id.* at P 7. He also states that the Navy specifications covered the nature of any communication affixed to products supplied to the Navy by third parties. "Vendors such as Defendants would not have been permitted (either under the specifications or, as a matter of Navy practice) to attach any type of warning or cautionary statement not required and approved by the Navy,

including any statements related to asbestos, without prior discussion, approval and acceptance by the Navy." *Id.* at P 12.

Admiral Horne concludes that any warning affixed by a vendor "would have been rejected as contrary to the Navy protocols for instruction and training relating to use of asbestos materials." *See id.* "The Navy [*7] determined to address the potential hazards of asbestos on Navy ships through training and not through warnings." *See id.* at P 14.

## II. ANALYSIS

I conclude that removal of this action was appropriate under the federal officer removal statute.

A state-court action against any person acting under the direction of an officer of the United States or its agencies can be removed to federal court pursuant to *§ 1442(a)(1)*. The purpose of *§ 1442(a)(1)* is to permit the removal of "those actions commenced in state court that expose a federal official to potential civil liability or criminal penalty for an act performed ... under color of office." *See Magnin v. Teledyne Cont'l Motors, 91 F.3d 1424, 1427 (11th Cir. 1996)*(internal citations omitted). The statute reflects Congress' intent "to provide a federal forum for cases where federal officials must raise defenses arising from their official duties." *See id.* As such, *§ 1442(a)(1)* is an exception to the well-pleaded complaint rule, which generally precludes removal where a federal question is not apparent within the four corners of the complaint. *See Mesa v. California, 489 U.S. 121, 136-37, 109 S. Ct. 959, 103 L. Ed. 2d 99 (1989).*

Removal under *§ 1442(a)(1)* generally depends on the [*8] satisfaction of two separate requirements. First, the defendant must "*advance* a 'colorable defense arising out of [his] duty to enforce federal law.'" *See Magnin, 91 F.3d at 1427* (internal citations omitted, emphasis added). Second, the defendant must establish that the suit is for acts performed "under the color of office." This requirement is satisfied by showing "'a causal connection' between what the officer has done under asserted official authority and the action against the defendants." *See id. See also Jefferson Co. v. Acker, 527 U.S. 423, 431, 119 S. Ct. 2069, 144 L. Ed. 2d 408 (1999)*(internal citations omitted). I find that the defendants have made a sufficient showing on both requirements.

## A. A COLORABLE DEFENSE

The defendants have advanced a colorable federal defense to the plaintiffs' claims. A colorable federal defense is a defense that is "plausible." *See Magnin, 91 F.3d at 1427* (*citing Mesa, 489 U.S. at 129*). In construing the colorable federal defense requirement, the Supreme Court has rejected "a narrow grudging interpretation" of the term,

"recognizing that 'one of the most important reasons for removal is to have the validity' of the defense of official immunity tried in a federal court." *See Jefferson, 527 U.S. at 432* [*9] (internal citations omitted). *See also Willingham v. Morgan, 395 U.S. 402, 407, 89 S. Ct. 1813, 23 L. Ed. 2d 396 (1969)* ("We ... do not require the officer virtually to " win his case before he can have it removed.") Thus, a defense may be colorable even if the court ultimately rejects it. Indeed, no determination of fact is required at the removal stage. All a removing defendant needs to do is to make a showing that his federal defense "is not without foundation and made in good faith." *See Nesbiet v. Gen. Electric, 399 F.Supp.2d 205, 211 n.44 (S.D.N.Y. 2005)* (internal citations omitted).

With this standard in mind, I turn to the federal defense advanced in this case. The defendants have raised a federal contractor defense to the plaintiffs' failure to warn claims. *See* Not. of Removal [D.E. 1] at P 9. The defendants contend that their "alleged failure to warn of the hazards of asbestos resulted from the Navy's prohibition of such warnings." *See id.* at 10.

The Supreme Court recognized the federal contractor defense in *Boyle v. United Techs., Corp., 487 U.S. 500, 108 S. Ct. 2510, 101 L. Ed. 2d 442 (1988). Boyle* involved the crash of a United States Marine helicopter in a training exercise off the Virginia coast. The pilot survived the accident impact, but [*10] he could not open the helicopter's outward escape hatch and drowned. The pilot's estate sued the manufacturer of the helicopter, alleging that the escape hatch should have been designed to open inward to facilitate escape. The manufacturer's defense was that it had designed the helicopter pursuant to government specifications requiring an escape hatch that swung outward. On these facts, the Court held that liability for design defects in military equipment could not be imposed under state law when (1) the government approved reasonably precise specifications, (2) the equipment conformed to those specifications, and (3) the supplier warned the United States about dangers known to the supplier but not known to the United States. *See 487 U.S. at 512.*

The Eleventh Circuit extended the holding of *Boyle* to failure to warn claims in *Dorse v. Eagle-Picher Indus., Inc., 898 F.2d 1487, 1489 (11th Cir. 1990).* [2] Like this case, *Dorse* involved a claim that a manufacturer had failed to warn about the hazards of asbestos. The court noted that the federal contractor defense bars liability when (1) the case concerns an area of uniquely federal interest and (2) there is "a significant conflict" between [*11] an identifiable federal policy or requirement and a state law duty. The defense fails as a matter of law, however, if the contractor can "comply with both its contractual obligations and the state-prescribed duty of care." *See id. at 1489* (internal citation omitted). [3]

2    The *Dorse* panel adopted the reasoning of the district court's order granting summary judgment in favor of the plaintiff on the defendant's government contractor defense.

3    The Eleventh Circuit ultimately concluded that the defendant had failed to produce sufficient evidence indicating that his contractual obligations prevented compliance with the state law duty to warn and entered summary judgment in favor of the plaintiff. *See 898 F.2d at 1489.* The summary judgment standard is obviously significantly higher than the colorable defense standard.

The parties do not dispute that the procurement of Navy vessels (and parts for those vessels) is an area of uniquely federal interest. *See Boyle, 487 U.S. 504-505* (civil liability arising from performance of procurement contracts with government is an area of "uniquely federal interest"); *Dorse, 898 F.2d at 1489* ("procurement of asbestos in World War II for naval ships is undeniably [*12] an area of uniquely federal interest"). The dispute in this case is whether the defendants have shown a "good faith foundation" to argue that there was a conflict between their contractual obligations with the Navy and the state law duty to warn.

To satisfy their burden, the defendants have filed the affidavits of Admiral Lehman and Admiral Horne. According to Admiral Lehman, in the 1940s and the 1950s the Navy dictated every aspect of the warnings associated with its ships and did not permit deviation by any of its contractors. He concludes that the Navy would have rejected any asbestos warning suggested by the defendants as contrary to their policy to deal with the asbestos problem through training and not through warning. *See* Lehman Aff. at P 10. Admiral Horne concurs with Admiral Lehman and states that "any request to include a warning regarding asbestos in an equipment manual would have been rejected as contrary to Navy protocols for instruction and training relating to use of asbestos materials." *See* Horne Aff. at P 15.

The affidavits of Admiral Lehman and Admiral Horne are not unique to this case. Almost identical affidavits have been filed by the defendants in lawsuits all over [*13] the country. District courts, however, are split on whether these are sufficient to "advance" a colorable government contractor defense.

In *Nesbiet,* for example, the court concluded that the affidavits were sufficient to satisfy the removing defendant's burden. The court emphasized that at this stage of the proceedings the defendant had to "demonstrate merely that its claim to the military contractor defense is 'colorable.'" *See 399 F.Supp.2d at 212.* Similarly, in *Harris v. Rapid American Corp.,* the court recently held that

the affidavits, albeit general in nature, were sufficient to support removal. *See 532 F. Supp. 2d 1001 (N.D.Ill. 2007). See also Contois v. Able Indus., Inc., 523 F.Supp.2d 155, 160 (D.Conn. 2007); Ballenger v. Agco Corp., 2007 U.S. Dist. LEXIS 47042, 2007 WL 1813821 (N.D.Call. June 22, 2007).*

On the other hand, several courts have held that these type of affidavits are too general and vague to satisfy the removal burden of proof. *See e.g., Hilbert v. McDonnell Douglas Corp., 529 F. Supp. 2d 187 (D.Mass. 2008); Westmiller v. IMO Indus., Inc., 2005 U.S. Dist. LEXIS 29371, 2005 WL 2850334, *2 (W.D. Wash. Oct. 20, 2005); Schilz v. A.P. Green Indus., Inc., 2002 U.S. Dist. LEXIS 1176, 2002 WL 102608, *1 (N.D.Cal. Jan. 15, 2002).*

After reviewing  [*14] these cases, I conclude that the affidavits of Admirals Lehman and Horne are sufficient to "advance" a colorable federal contractor defense. Without a doubt, the affidavits are lacking on specificity and leave a lot of room for speculation. But at this stage, they do provide a good faith foundation to show (1) that the Navy controlled the warnings to be affixed on parts manufactured by independent contractors, and (2) that the Navy was likely to reject any asbestos warning given its policy to deal with the asbestos problem exclusively through training.

I agree that the Admirals' depositions in other cases suggest that they do not know of any instance when the Navy prohibited a warning proposed by a manufacturer or supplier. I also understand that there is a dispute as to whether the Navy manuals encouraged or prohibited the use of warnings. These arguments undermine the credibility of the Admirals, and raise a number of questions that the defendants will have to answer to ultimately prevail on their defense. But that is a merits question for another day. I do not need to determine credibility or likelihood of success at the removal stage. Factual disputes about the Admirals' testimony  [*15] should be resolved in federal court as long as the defendants have a good faith foundation for their contractor defense. *See Magnin, 91 F.3d at 1427-28.* Because I find that the defendants have satisfied this low standard, removal was proper.

## B. CASUAL NEXUS AND "ACTING UNDER" REQUIREMENTS

Although some courts treat the casual nexus and "acting under" requirements separately, both issues tend to "collapse into a single requirement: that the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct order or to comprehensive detailed regulations." *See In re Methyl Tertiary Butyl Ether Prod., 488 F.3d 112, 125 (2d Cir. 2007).*

*See also Magnin, 91 F.3d at 1429* (analyzing both requirements together). In other words, the defendants need to show that "his relationship to the plaintiff 'derived solely from his official duties.'" *See Magnin, 91 F.3d at 1427-28 (citing Willingham, 395 U.S. at 406).*

It is undisputed at this stage that the defendants manufactured and supplied the asbestos-containing products in the course of their contractual relationship with the Navy. Admiral Lehman's affidavit sufficiently establishes that the defendants were acting [*16] under federal authority when they supplied the asbestos-containing parts without warnings. Admiral Lehman generally states that the Navy has control over "what warnings should or should not be included." *See* Lehman Aff. at P 7. He further states that "the Navy controlled the decision making with respect to instructions and warnings on every piece of equipment." *See id.* Therefore, there is no question that the defendants' relationship with the plaintiff derived solely from the defendants' official duties. This is sufficient to establish a casual nexus under *Magnin. See 91 F.3d at 1429*

The plaintiffs suggest that the defendants need to show that the Navy actually prohibited asbestos warnings to establish a "casual nexus" at the removal stage. I disagree. "Just as requiring a 'clearly sustainable defense' rather than a colorable defense would defeat the purpose of the removal statute ... so would demanding an airtight case on the merits in order to show the required causal connection." *Jefferson County, 527 U.S. at 432-33.* All a defendant needs to do is show a casual nexus is to establish that the plaintiff's claims arise from the defendants' performance of their duties under their contract [*17] with the Navy. *See Magnin, 91 F.3d at 1427-28.* This the defendants have done. [4]

> [4]   The recent Supreme Court decision in *Watson v. Philip Morris Co., 127 S.Ct. 2301, 168 L. Ed. 2d 42 (2007)* is not helpful to the plaintiffs' position. *Watson* stands for the proposition that "a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone." *See 127 S.Ct. at 2308.* As the Court explained the term "acting under" requires "an effort to assist, or to help carry out the duties or tasks of the federal superior." *See id. at 2307.* Here, plaintiffs' own complaint indicate that the defendants were hired by the Navy to manufacture the ship parts and devices that the Navy ultimately installed in the *Lake Champlain. See* Compl. Exposure Sheets. This is sufficient to show that the defendants helped carry out the Navy's duties or tasks.

## C. DISCLAIMER

Finally, I reject the plaintiffs' argument that the disclaimer of any claim arising from an act or omission compelled by the Navy warrants remand. In their complaint, the plaintiffs allege that:

> Every claim arising under the Constitution, treaties, or laws of the United States is expressly disclaimed (including any claim arising from an [*18] act or omission on a federal enclave, or any federal office of the U.S. or agency or person acting under him occurring under color of such office.)

Compl. at P 5.

This disclaimer is circular. Its applicability depends on a determination of the core question in this case: whether the defendants's purported omission - the failure to warn - was required or caused by their contractual relationship with the Navy. If the failure to warn was required by the Navy, the disclaimer applies and the plaintiffs' claims fail as a matter of law. If the failure to warn was not required by the Navy, then the disclaimer does not apply. The problem with this argument is that the defendants have the right to have this question decided in federal court. *See Jefferson, 527 U.S. at 432* (defendants have a right to have "the validity' of the defense of official immunity tried in a federal court").

I understand that a number of courts have found that federal liability disclaimers defeat removal under § 1442(a)(1). *See e.g., Westbrook v. Asbestos Defendants, 2001 U.S. Dist. LEXIS 11575, 2001 WL 902642, *3 (N.D.Cal. July 31, 2001).* The disclaimers in those cases, however, waived any liability arising out of work done on federal premises, irrespective [*19] of whether the work was done under the requirements of a federal agency or not. In contrast, the disclaimer here is more limited and is contingent on the Navy's contractual limitations and specifications. I am reluctant to find that the plaintiffs can defeat a government contractor's right to remove by disclaiming any claim arising from any act or omission compelled by a government agency. Such a circular disclaimer would defeat the purpose § 1442(a)(1) as it would force federal contractors to prove in state court that they were acting under the direction of the government.

## III. CONCLUSION

In sum, while Admiral Lehman's and Admiral Horne's affidavits fall far short from establishing that the defendants were not able to warn Mr. Marley about the danger of unprotected asbestos exposure, they are sufficient to "advance" a colorable government contractor

2008 U.S. Dist. LEXIS 33715, *

defense and establish a nexus between this action and the defendants' official duties. Removal was appropriate. Accordingly, the plaintiffs' motion to remand is denied.

Unless this case is transferred to the Multi-District Litigation Panel before then, the parties shall file the joint scheduling report required by Local Rule 16.1(B)(2) by [*20] March 21, 2008.

DONE and ORDERED in chambers in Miami, Florida, this 12th day of March, 2008.

/s/ Adalberto Jordan

Adalberto Jordan

United States District Judge

1 of 1 DOCUMENT

**WILLIAM A. O'CONNELL v. FOSTER WHEELER ENERGY CORPORATION, A.W. CHESTERTON COMPANY, and BUFFALO PUMPS, INC.**

**CIVIL ACTION NO. 08-10078-RGS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHU-SETTS**

*2008 U.S. Dist. LEXIS 27857*

**April 7, 2008, Decided**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employee claimed that defendant companies were negligent and breached a duty under state law by failing to warn him of the health hazards associated with asbestos. He brought suit in state court. One company filed a notice of removal pursuant to *28 U.S.C.S. § 1442(a)(1)*, the Federal Officer Removal Statute (FORS). The employee filed a motion to remand. Both the employee and the company moved for a hearing.

**OVERVIEW:** Under FORS, an action filed in state court could be removed, despite the non-federal cast of the complaint, if: (1) the defendant could demonstrate it was acting under the direction of a federal officer or agency; (2) the defendant had a colorable defense under federal law; and (3) a causal connection existed between the defendant's acts or omissions and the claims asserted. The court considered whether the company could assert a colorable federal defense to the employee's failure to warn claim. The company claimed that it was immune from state tort liability on grounds that it was acting as a military contractor at the time of the employee's alleged asbestos exposure. It argued successfully that the communication of safety and health information about asbestos to workers was a matter exclusively within the Navy's control. Denying remand, the court determined that the Navy issued reasonably precise specifications as to the warnings. the court concluded that the company had satisfied all three elements of the statute and the case was properly removed.

**OUTCOME:** The employee's motion to remand the action to state court was denied. The parties' motions for a hearing were also denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Removal > Basis > Cases Involving Federal Officers*
[HN1] See *28 U.S.C.S. § 1442(a)(1)*.

*Civil Procedure > Removal > Basis > Cases Involving Federal Officers*
[HN2] Under *28 U.S.C.S. § 1442(a)(1)*, the Federal Officer Removal Statute, an action filed in state court may be removed, despite the non-federal cast of the complaint, if: (1) the defendant can demonstrate it was acting under the direction of a federal officer or agency; (2) the defendant has a colorable defense under federal law; and (3) a causal connection exists between the defendant's acts or omissions and the claims asserted by the plaintiff. The defendant bears the burden on all three elements.

*Civil Procedure > Removal > Basis > Cases Involving Federal Officers*
*Governments > Legislation > Interpretation*
*Governments > Legislation > Types of Statutes*
[HN3] Although removal statutes are typically construed narrowly, the purpose of the Federal Officer Removal Statute, *28 U.S.C.S. § 1442(a)(1)*, is to ensure a federal forum for defenses of official immunity. Accordingly, the policy favoring removal should not be frustrated by a narrow, grudging interpretation of *§ 1442(a)(1)*.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*

2008 U.S. Dist. LEXIS 27857, *

Civil Procedure > Removal > General Overview
Civil Procedure > Removal > Elements > Removability

[HN4] The removal statute creates an exception to the well-pleaded complaint rule. Regardless of whether the plaintiff's cause of action rests on state law once the defendant meets the threshold showing to assert a federal contractor defense, even artful pleading around any federal claims cannot defeat federal subject matter jurisdiction.

Civil Procedure > Removal > Basis > Cases Involving Federal Officers
Evidence > Procedural Considerations > Burdens of Proof > Allocation
Torts > Products Liability > Duty to Warn

[HN5] The purpose of the military contractor defense is to shield government contractors from state tort liability for defects in military equipment where there is a "significant conflict" between state law and the "uniquely federal interest" in immunizing the trade-off between greater safety and greater combat effectiveness.    To demonstrate a colorable military contractor defense in a failure to warn context,  the contractor must produce sufficient evidence suggesting a genuine conflict between its federal obligations and a state law imposing liability for the failure to warn. State law will be displaced if the contractor can show that: (1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; and (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government. For removal purposes, the defendant's showing need only be plausible; not necessarily conclusive of the issue.

Torts > Products Liability > Duty to Warn

[HN6] The analyses required by the first and second elements of the Boyle v. United Techs., Corp., defense are closely tied. Under the first prong, a defendant must establish that the United States approved "reasonably precise specifications" for the equipment supplied by the contractor, including the appropriate wording of any warnings regarding a potential hazard. Although the contractor need not show that the government prohibited it from supplementing the warnings with warnings of its own, it must produce evidence that it was acting within the parameters of reasonably precise specifications imposed by the United States. A defendant will meet its burden under the second element of the test if it can demonstrate that any deviation from the government's specifications would likely have resulted in rejection of the equipment.

COUNSEL:  [*1] For Foster Wheeler Energy Corporation, Defendant: Victoria M. Almeida, Mark O. Denehy, LEAD ATTORNEYS, Adler Pollock and Sheehan PC, Providence, RI.

For Buffalo Pumps, Inc., Defendant: David M. Governo, Bryna Rosen Misiura, Michael D. Simons, LEAD ATTORNEYS, Marianne E. Brown, Governo Law Firm LLC, Boston, MA.

For William A. O'Connell, Plaintiff: Edward P. Coady, LEAD ATTORNEY, Coady & Associates, Boston, MA; David W. Fanikos, Coady Law Firm, Boston, MA.

For A.W. Chesterton Company, Defendant: Tracy A.R. Jolly, John B. Manning, Jonathan F Tabasky, LEAD ATTORNEYS, Cooley, Manion & Jones, LLP, Boston, MA.

JUDGES: Richard G. Stearns, UNITED STATES DISTRICT JUDGE.

OPINION BY: Richard G. Stearns

OPINION

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR REMAND

April 7, 2008

STEARNS, D.J.

Plaintiff William A. O'Connell was diagnosed with malignant mesothelioma in July of 2007. O'Connell alleges an exposure to asbestos while working at the Fore River Shipyard (Fore River) in Quincy, Massachusetts, from approximately 1960 to 1961. O'Connell claims that defendants, including Buffalo Pumps, Inc., (Buffalo Pumps),[1] [*2] were negligent and breached a duty under state law by failing to warn him of the health hazards associated with asbestos.

1    Buffalo Pumps manufactured and supplied pumps for United States Navy ships.

O'Connell filed this action in Middlesex Superior Court on November 9, 2007. On January 18, 2008, Buffalo Pumps filed a notice of removal pursuant to 28 U.S.C. § 1442(a)(1), the Federal Officer Removal Statute (FORS).[2] On February 6, 2008, O'Connell filed a motion to remand.[3] Buffalo Pumps filed its opposition on March 11, 2008.[4]

2    Specifically, section 1442(a)(1) provides: [HN1] "A  [*3] civil action or criminal prosecution commenced in a State court against any of

the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue." *28 U.S.C. § 1442(a)(1)*.

3   O'Connell also requests costs and fees incurred as a result of the removal pursuant to *28 U.S.C. § 1447(c)*.

4   No other defendant filed a brief in opposition to the motion to remand.

## DISCUSSION

[HN2] Under FORS, an action filed in state court may be removed, despite the non-federal cast of the complaint, if: (1) the defendant can demonstrate it was acting under the direction of a federal officer or agency; (2) the defendant has a colorable defense under federal law; and (3) a causal connection exists between the defendant's acts or omissions and the claims [*4] asserted by the plaintiff. [5] See *Mesa v. California*, *489 U.S. 121, 132-134, 109 S. Ct. 959, 103 L. Ed. 2d 99 (1989)*; *Hilbert v. McDonnell Douglas Corp.*, *529 F. Supp. 2d 187, 196 (D. Mass. 2008)*; *Nesbiet v. Gen. Elec. Co.*, *399 F. Supp. 2d 205, 210 (S.D.N.Y. 2005)*. The defendant bears the burden on all three elements. See *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers, 132 F.3d 824, 831 (1st Cir. 1997)*. At issue here is whether Buffalo Pumps can assert a colorable federal defense to O'Connell's failure to warn claim. [6]

5   [HN3] Although removal statutes are typically construed narrowly, the purpose of FORS is to ensure a federal forum for defenses of official immunity. See *Willingham v. Morgan, 395 U.S. 402, 407, 89 S. Ct. 1813, 23 L. Ed. 2d 396 (1969)*. Accordingly, the policy favoring removal "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." Id.

6   O'Connell has expressly waived any claim based on defective design and "any cause of action or recovery for any injuries resulting from exposure to asbestos dust caused by any acts or omissions of party committed at the direction of an officer of the United States Government." Complaint at P 4. In O'Connell's view, this disclaimer eliminates federal subject matter [*5] jurisdiction, including any that would attach under FORS This is not the law. [HN4] The removal

statute creates an exception to the well-pleaded complaint rule. See *Jefferson County v. Acker, 527 U.S. 423, 430-431, 119 S. Ct. 2069, 144 L. Ed. 2d 408 (1999)*; *Mesa v. California, 489 U.S. 121, 136, 109 S. Ct. 959, 103 L. Ed. 2d 99 (1989)*. "[R]egardless of whether the plaintiff's cause of action rests on state law . . . once [defendant] meets the threshold showing to assert a federal contractor defense, even artful pleading around any federal claims cannot defeat federal subject matter jurisdiction." *Machnik v. Buffalo Pumps Inc., 506 F. Supp. 2d 99, 103 n.1 (D. Conn. 2007)*. See also *Ballenger v. Agco Corp., No. 06-2271-CW, 2007 U.S. Dist. LEXIS 47042, 2007 WL 1813821, at *2 (N.D. Cal. June 22, 2007)* (denying motion to remand despite the disclaimer of "[e]very claim arising under the Constitution, treaties, or laws of the United States . . . includ[ing] any claim arising from an act on a Federal Enclave as defined by *Article I, section 8, clause 17 of the United States Constitution* . . . any claim arising from any act or omission of the United States, any agency thereof, any officer of the United States, or a claim against any other person or entity that is based on an act that was performed [*6] under specific direction of the United States, any agency thereof or any Officer of the United States.").

### Colorable Federal Defense

Buffalo Pumps asserts that it is immune from state tort liability on grounds that it was acting as a military contractor at the time of O'Connell's alleged asbestos exposure. See *Boyle v. United Techs., Corp., 487 U.S. 500, 506, 108 S. Ct. 2510, 101 L. Ed. 2d 442 (1988)* (analyzing a design defect defense under FORS). [HN5] The purpose of the defense is to shield government contractors from state tort liability for defects in military equipment where there is a "significant conflict" between state law and the "uniquely federal interest" in immunizing the trade-off between greater safety and greater combat effectiveness. Id. at 511-512. To demonstrate a colorable military contractor defense in a failure to warn context, [7] the contractor must produce sufficient evidence suggesting a genuine conflict between its federal obligations and a state law imposing liability for the failure to warn. State law will be displaced if the contractor can show that: "(1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; and (3) [*7] the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government." *Oliver v. Oshkosh Truck Corp., 96 F.3d 992, 1003-1004 (7th Cir. 1996)* (applying the military contractor defense announced in *Boyle, su-*

*pra*, to failure-to-warn claims). For removal purposes, the defendant's showing need only be plausible; not necessarily conclusive of the issue. See *Jefferson County, 527 U.S. at 431.*

       7   Although the First Circuit has yet to address the federal contractor defense in the failure to warn context, the court will follow persuasive opinions in other circuits which have held that the defense should apply. See *Emory v. McDonnell Douglas Corp., 148 F.3d 347, 350 (4th Cir. 1998)* (citing to cases from the Second, Fifth, Sixth, Seventh, and Ninth Circuits).

Buffalo Pumps argues that the communication of safety and health information about asbestos to Fore River workers was a matter exclusively within the Navy's control. Buffalo Pumps offers the affidavits of the following four persons in support of its position: (1) Roger Horne (Horne Affidavit), a retired Rear Admiral of the United States Navy; (2) Dr. Samuel Forman (Forman Affidavit), [*8] the proprietor of an occupational health clinic monitoring asbestos exposure and a student of the Navy's historical awareness of asbestos hazards; (3) David Sargent Jr. (Sargent Affidavit), also a Navy Rear Admiral; and (4) Martin Kraft (Kraft Affidavit), the current production manager for Buffalo Pumps. The affidavits and attached exhibits clearly establish a plausible federal contractor defense.

[HN6] The analysis required by the first and second elements of the Boyle defense are closely tied. Under the first prong, the defendant must establish that the United States approved "reasonably precise specifications" for the equipment supplied by the contractor, including the appropriate wording of any warnings regarding a potential hazard. See *Hilbert, 529 F. Supp. 2d at 198*. Although the contractor need not show that the government prohibited it from supplementing the warnings with warnings of its own, it must produce evidence that it was acting within the parameters of reasonably precise specifications imposed by the United States. Cf. *Oliver, 96 F.3d at 1004* (there must be an element of constraint; while a *dictat* is not required, government oversight must extend beyond the mere "rubber stamping" [*9] of a contractor's unilateral conduct). A defendant will meet its burden under the second element of the test if it can demonstrate that "any deviation from [the government's] specifications would likely have resulted in rejection of the equipment." *Nesbiet, 399 F. Supp. 2d at 212*. See also *Hilbert, 529 F. Supp. 2d at 198 n.11*.

Buffalo-Pumps satisfies the first two elements by virtue of the Horne and Sargent Affidavits. Admiral Horne attests to his work as a naval ship engineer and his personal knowledge of naval ship specifications, including centrifugal pumps and related equipment, during the

time of O'Connell's employment at Fore River. The Sargent Affidavit is relevant to establishing the historical pervasiveness of Navy control overall aspects of shipbuilding contracts. [8] Considered together, the affidavits reasonably establish that the specifications for the pump component supplied to the Navy by Buffalo Pumps were detailed, precise, and under the Navy's pervasive control. They also demonstrate that the Navy insisted on a meticulous review and approval process for written materials accompanying components supplied to its ships. As Admiral Sargent explains:

[t]he Navy also had precise [*10] specifications as to the nature of the written materials to be delivered with equipment supplied to the Navy, which included engineering reference materials to assist the naval operators and maintenance personnel in servicing and maintaining such equipment and to assist the Navy training establishment to develop instructional materials and courses. These written materials are and were generically known as "instruction books" or "technical manuals." Through specifications, the Navy required that certain equipment be supplied with a defined number of copies of one or more instruction books or technical manuals.

Navy personnel participated intimately in the preparation and review of these instruction books and technical manuals in a standardized format used by the Navy. These manuals included safety information to the extent -- and only to the extent -- directed by the Navy. Manufacturers of components and equipment were not permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field, to include any type of warning or caution statement in instruction books or technical manuals, beyond those required and approved by [*11] the Navy without prior discussion and approval by the Navy. The Navy dictated, reviewed and approved the contents of all technical manuals, including any cautionary language or emphasis. The Navy . . . often created lengthy memoranda detailing word-by-word line edits to the content of technical manuals submitted for approval, including the wording of instructional material and warnings.

Sargent Affidavit, at PP 47-48. [9] Admiral Horne gives a similar explanation of the Navy's control over the content of any cautionary materials supplied by its contractors, as well as the reasons for that control:

> [i]n addition to specifications regarding design and manufacturing of the equipment itself, the Navy also had detailed specifications that governed the form and content of written materials to be delivered with equipment, including pumps, supplied to the Navy. These written materials typically consisted of technical or instruction manuals that were designed to assist the Navy engineering staff in servicing and maintaining the equipment. Navy personnel participated in and approved the preparation of this kind of information. The Navy specifications for these manuals contained detailed direction [*12] as to the kinds of information to be included. . . .
>
> The Navy relied on its training and procedures regarding general shipboard safety hazards, such as asbestos. The Navy believed that excessive warnings for common shipboard hazards led to apathy and resulting disregard of hazard. Thus, the Navy would not have permitted (either under the specifications or, as a matter of Navy practice) a vendor such as Buffalo Pumps to attach any type of warning or cautionary statement not required and approved by the Navy, including any statements related to asbestos.

Horne Affidavit, at PP 11, 16. Admiral Sargent further emphasizes that the communication of safety and health information in written materials relating to pumps or other components had to be consistent with the Navy's overall practices and priorities, and the realities of its workplaces:

> [t]he reasons for the Navy's detailed control over and review and approval of all written communication regarding equipment it procured was to ensure consistency of that information with the overall goals and priorities of the Navy in its operations. The Navy employed millions of uniformed and civilian personnel aboard thousands of vessels and at hundreds [*13] of land-based facilities around the world. The information provided with regard to equipment had to be

> consistent with the Navy's overall evaluation of the appropriate types and level of information its personnel required to efficiently perform their job responsibilities under a variety of circumstances. In addition, written communications regarding work practices, including safety precautions and equipment, had to be coordinated with the training of Navy personnel, the physical circumstances in which they performed their work, and the tools, protective devices and equipment and other materials available aboard Navy vessels and at Navy installations.

Sargent Affidavit, at P 49.

8   Although Sargent's duty post-dates O'Connell's employment, he is competent to testify because in his service he was responsible for all "matters relating to both the technical and programmatic details of design, construction, delivery and support of both new and in-service aircraft carriers, expeditionary warfare and auxiliary ships of the Navy." Such "in-service" ships included those that were built as far back as the 1950's. The exhibits to Sargent's affidavit include revisions to a 1959 technical manual for [*14] a submarine pump, which contains specific cautionary (non-asbestos) language demonstrating the depth of the Navy's control over the details of the written materials contractors were required to distribute.

9   Admiral Sargent attaches to his affidavit a 1959 example of the detailed editing undertaken by the Navy of a draft manual submitted by a contractor for review and approval. Attached to the Kraft Affidavit is an additional example, in this case to a draft equipment manual Buffalo Pumps submitted to the Navy in 1966.

The third element of the test requires the contractor to have warned the government about hazards of which it had knowledge, but were unknown to the government. See *Nesbiet, 399 F. Supp. 2d at 212*. The Horne Affidavit satisfies this element. According to Horne, the Navy's knowledge of the dangers of asbestos on board its ships was far more advanced than anything that would have been known to a contractor like Buffalo Pumps. [10] Therefore, the third element is met and Buffalo Pumps has a colorable defense. [11]

10   According to the Horne Affidavit:

[t]he Navy had state of the art knowledge regarding the potential risks associated with exposure to asbestos and asbestos-containing [*15] products. Acting with this knowledge about asbestos-related hazards, the Navy affirmatively addressed the issue of asbestos-related safety precautions. The Navy established its MilSpecs to accounts for the safety precautions it deemed appropriate. In dealing with asbestos, the Navy conducted its own training, adopted its own precautionary measures and procedures and provided its own warnings where such warnings were deemed appropriate.

Horne Affidavit, at P 12.
11   Horne's testimony is further corroborated by Forman's affidavit, who, pursuant to Navy orders, reviewed the Navy's historical knowledge and practices in industrial hygiene in relation to asbestos. Forman cites to several Navy studies verifying that as early as 1922, the Navy recognized and attempted to mitigate the harm of exposure by seamen to asbestos. Foreman Affidavit, P 14. Forman cites to a study appearing in a 1947 issue of the Navy's Safety Review, which noted the potential health hazards resulting from asbestos exposure. Foreman Affidavit, P 32. Further, Forman cites to a 1958 safety handbook for pipefitters which warned of the dangers of asbestos and the need to wear dust respirators. Foreman Affidavit, P 37.

O'Connell [*16] argues that the affidavits submitted by Buffalo Pumps closely track those that were rejected by the district court in Hilbert, [12] and urges this court to follow suit. Hilbert, however, is not persuasive in the disposition of this case because of two essential differences in the showings by defendant. First, although the plaintiff in Hilbert claimed exposure to asbestos while serving in the Navy, the Hilbert defendants failed to produce an affiant with personal knowledge of the Navy's shipbuilding program. See Hilbert, 529 F. Supp. 2d at 200 (finding that the "most important" affiant was deficient because his knowledge was limited to Air Force practices, while the plaintiff was exposed while serving in the Navy). Here, Buffalo Pumps has submitted the affidavits of Admirals Horne and Sargent; both of whom have personal knowledge of the detailed specifications imposed on contractors by the Navy during the period of O'Connell's alleged exposure. Accordingly, the affiants

do not resort to the level of "speculation" that the Hilbert court found objectionable. [13] Second, the Hilbert defendants failed to provide any evidence that the Navy regulated the content, and not just the form, of the [*17] relevant written materials. See id. at 201. Buffalo Pumps, however, has submitted examples of detailed, word-by-word, revisions provided by the Navy upon review of written manuals and instructions. Accordingly, the court does not find the Hilbert decision to be applicable.

12   O'Connell cites Hilbert for the proposition that in order to avail itself of the federal contractor defense a defendant must provide either: (1) non-testimonial evidence that the military affirmatively prohibited warnings (e.g., contracts or regulations); or (2) evidence that the contractor tried to give an asbestos warning, but was stopped by the Navy. The court disagrees with that characterization of the opinion. While citations to regulations or contractual provisions barring warnings would certainly be sufficient to state a colorable claim, the weight of the cases suggest that there is no "strict requirement that the government 'prohibit' warnings altogether or 'dictate' the contents of the warnings actually incorporated." Oliver, 96 F.3d at 1004 n.8. See also Quiles v. Sikorsky Aircraft, 84 F.Supp. 2d 154, 171 n.5 (D. Mass. 1999). Indeed, what concerned the Hilbert court was the complete lack of testimony from [*18] individuals with personal knowledge of the matters at hand. See Hilbert, 529 F. Supp. 2d at 202-203 ("[The defendants'] argument thus boils down to a bald, unsupported assertion that if they had attempted to warn about the hazards of asbestos, the government would have exercised its discretion to bar the warning. At least on this record, that sort of speculation is not remotely adequate. It does not come close to demonstrating -- even colorably -- that the government exercised its discretion to issue 'reasonably precise specification' as to health and safety warnings.").
13   To the extent that O'Connell takes issue with statements in the affidavits regarding general Navy practices, the court notes that his Complaint is not limited to any one ship or employer. O'Connell's allegations are directed towards exposure "during the course of his employment at the Fore River Shipyard" while working on the USS Long Beach and "other ships."

Acting Under and Causal Connection

As a practical matter, this remaining element is closely bound to the determination that Buffalo Pumps has a colorable military contractor defense. Since the

Navy issued reasonably precise specifications as to the warnings, the [*19] court concludes, for purposes of this motion, that: (1) the Navy exercised a substantial degree of control over Buffalo Pumps's provision of warnings; and (2) the Navy's control over these warnings impeded Buffalo Pumps's ability to independently fulfill its state law obligation to warn of the dangers of asbestos (if indeed it knew of these dangers). See *Nesbiet, 399 F. Supp. 2d at 212; Contois v. Able Indus., Inc., 523 F. Supp. 2d 155, 161 (D. Conn. 2007).* Buffalo Pumps has therefore satisfied all three elements of the statute and the case was properly. removed. [14]

14   The court is aware that removal of this case will require transfer to the asbestos multidistrict litigation in the Eastern District of Pennsylvania over plaintiff's objection.

ORDER

For the foregoing reasons, plaintiff's motion to remand this action to state court is DENIED. The parties' motions for a hearing are also DENIED.

SO ORDERED.

/s/ Richard G. Stearns

UNITED STATES DISTRICT JUDGE

1

## **PROOF OF SERVICE**

2
        I am a resident of the State of California, over the age of eighteen years, and not a party to
the within action.  My business address is Sedgwick, Detert, Moran & Arnold LLP, One Market
3    Plaza, Steuart Tower, 8th Floor, San Francisco, California 94105.  On May 07, 2008, I served the
within document(s):

4

5    **DECLARATION OF KATHERINE P. GARDINER IN SUPPORT OF
     DEFENDANT GENERAL ELECTRIC COMPANY'S RESPONSE TO
     PLAINTIFFS' MOTION TO VACATE THE CONDITIONAL TRANSFER**
6    **ORDER**

7    ☐    FACSIMILE - by transmitting via facsimile the document(s) listed above
             to the fax number(s) set forth on the attached Telecommunications Cover
8            Page(s) on this date before 5:00 p.m.

9    ☒    MAIL - by placing the document(s) listed above in a sealed envelope with postage
             thereon fully prepaid, in the United States mail at San Francisco, California
10           addressed as set forth below.

11                            **SEE ATTACHED SERVICE LIST**

12

13   ☐    PERSONAL SERVICE - by personally delivering the document(s) listed above to
             the person(s) at the address(es) set forth below.

14   ☒    OVERNIGHT COURIER - by placing the document(s) listed above in a sealed
             envelope with shipping prepaid, and depositing in a collection box for next day
15           delivery to the person(s) at the address(es) set forth below via CALIFORNIA
             OVERNIGHT

16

17                            **Brian P. Barrow
                             Simon Eddins & Greenstone
                             301 East Ocean Blvd., Suite 1950**
18                           **Long Beach, CA 90802**

19

20        I am readily familiar with the firm's practice of collection and processing correspondence
for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same
21   day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on
motion of the party served, service is presumed invalid if postal cancellation date or postage
22   meter date is more than one day after date of deposit for mailing in affidavit.

23        I declare that I am employed in the office of a member of the bar of this court at whose
direction the service was made.

24
          Executed on May 07, 2008, at San Francisco, California.
25

26                                        _____
27                                        **NANETTE R. JOHNSON**

28

SF/1508473v1

1

2

# SERVICE LIST

3

Brian P. Barrow
Simmon Eddins & Greenstone
301 East Ocean Blvd., Suite 1950
Long Beach, CA 90802

4

5

Richard C. Binzley
Thompson Hine LLp
127 Public Square
3900 Key Center
Cleveland, OH 441114

6

7

8

Edward J. Cass
Gallagher Sharp Fulton & Norman
Bulkley Building, 7th Floor
1501 Euclid Avenue
Cleveland, OH 44115

9

10

11

Adam M. Chud
Goodwin Procter LLP
901 New York Avenue, N.W.
Washington, D.C. 20001

12

13

14

David A. Damico
Burns White & Hickton LLC
Four Northshore Center
106 Isabella Street
Pittsburgh, PA 15212

15

16

17

Raymond P. Forceno
Forceno Goggin & Keller
1528 Walnut Street, Suite 900
Philadelphia, PA 19102

18

19

Ellen B. Furman
Goldfein & Hosmer
1600 Market Street
33rd Floor
Philadelphia, PA 19103

20

21

22

Julia A. Gowin
Palmieri Tyler Wiener
Wilhelm & Waldron
East Tower, Suite 1300
2603 Main Street
Irvine, CA 92614

23

24

25

Reginald S. Kramer
Oldham & Dowling
195 South Main Street, Suite 300
Akron, OH 44308-1314

David C. Landin
Hunton & Williams LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Peter B. Langbord
Foley & Mansfield PLLP
150 S Los Robles Avenue, Suite 400
Pasedena, CA 91101

Gene Locks
Locks Law Firm LLC
1500 Walnut Street
Philadelphia, PA 19102

Ronald L. Motley
Motley Rice LLC
P.O. Box 1792
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

John S. Murray
Walsworth Franklin Bevins & Mccall
One City Blvd., West 5th Floor
Orange, CA 92868-3604

Glen R. Powell
Gordon & Rees LLP
Embarcadero Center West
275 Batery Street, 20th Floor
San Francisco, CA 94111

John J. Repcheck
Marks O'Neill O'Brien & Courtney PC
Gulf Tower, Suite 2600
707 Grant Street
Pittsburgh, PA 15219

26

27

28

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

1    Susan M. Hansen                   John D. Roven

Brownson & Ballou               Roven-Kaplan LLP

2    225 South Sixth Street, Suite 4800      2190 N Loop West

Minneapolis, MN 55402          Suite 410

3                                           Houston, TX 77018

4    Edward R. Hugo                  Richard D. Schuster

Brydon Hugo & Parker           Vorys Sater Seymour & Pease LLP

5    135 Main Street                  52 East Gay Street

20th Floor                      P.O. Box 1008

6    San Francisco, CA 94105        Columbus, OH 43216-1008

7    Charles H. Kanter              Neil Selman

Palmieri Tyler Wiener          Selman Breitman & Burgess

8    Wilhelm & Waldron           11766 Wilshire Blvd.

East Tower, Suite 1300         Sixth Floor

9    2603 Main Street               Los Angeles, CA 90025

Irvine, CA 92614-4281

10

Rober tNi. Spinelli             Robert E. Swickle

11    Kelley Jasons McGuire & Spinelli LLP    Jaques Admiralty Law Firm PC

Centre Square West            1370 Penobscot Building

12    15th Floor                      645 Griwsold Street

Philadelphia, PA 19102        The Maritime Asbestosis Legal Clinic

13                                         Detroit, MI 48226-4192

14    Andrew J. Trevelise           James K. Weston II

Reed Smith LLP                Tom Riley Law Firm

15    2500 One Liberty Place        4040 First Avenue, N.E.

1650 Market Street            P.O. Box 998

16    Philadelphia, PA 19103        Cedar Rapids, IA 52406

17

18

19

20

21

22

23

24

25

26

27

28

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

SF/1508473v1

**SEND**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 08-118 PA (JWJx) | Date | February 11, 2008 |
| Title | Robert Oberstar, et al. v. CBS Corp., et al. | | |

Present: The Honorable     PERCY ANDERSON, UNITED STATES DISTRICT JUDGE

| C. Kevin Reddick | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     IN CHAMBERS - COURT ORDER

Before the Court is a Motion to Remand filed by plaintiffs Robert and Linda Oberstar ("Plaintiffs") (Docket No. 7). Also before the Court is a Motion to Stay originally filed in case number 08-143 PA (JWJx) by defendant General Electric Co. (Docket No. 5).[1] Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that these matters are appropriate for decision without oral argument. The hearing calendared for February 11, 2008, is vacated, and the matters taken off calendar.

Plaintiffs allege claims for negligence, strict liability, and loss of consortium arising out of Mr. Oberstar's exposure to asbestos-containing products manufactured, fabricated, installed, or otherwise distributed by defendants. Specifically, Plaintiffs' claims assert that defendants violated their obligations imposed under state law to warn Mr. Oberstar of the dangers associated with their asbestos-containing products. Among other places, Plaintiffs allege that Mr. Oberstar was exposed to the asbestos contained in defendants' products while he served aboard the aircraft carrier U.S.S. Midway from 1959 to 1963. Plaintiffs commenced the action in Los Angeles Superior Court on December 3, 2007 and served defendants Viad Corp. ("Viad") and General Electric Co. ("GE") on December 10, 2007. Viad removed the action to this Court on January 8, 2008 and GE filed a Notice of Removal on January 9, 2008. Both Viad and GE based their Notices of Removal on 28 U.S.C. § 1442(a)(1)'s federal officer removal statute. 28 U.S.C. § 1442(a) provides, in relevant part:

> A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the

---

[1]     Because defendants General Electric Co. and Viad Corp. filed separate Notices of Removal, there were originally two case numbers assigned to this action. Because both case numbers referred to the same case originally filed by plaintiffs in Los Angeles Superior Court, the Court consolidated the two actions into CV 08-118 PA (JWJx), dismissed CV 08-143 PA (JWJx), and directed that all future filings should reference only CV 08-118 PA (JWJx). Plaintiff also filed a Motion to Remand in CV 08-143 PA (JWJx) (Docket No. 14). That Motion will be addressed in this Order.

**SEND**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 08-118 PA (JWJx) | Date | February 11, 2008 |
| Title | Robert Oberstar, et al. v. CBS Corp., et al. | | |

> United States for the district and division embracing the place wherein it is
> pending: (1) The United States or any agency thereof or any officer (or
> any person acting under that officer) of the United States or of any agency
> thereof, sued in an official or individual capacity for any act under color of
> such office . . . .

28 U.S.C. § 1442(a).

Suits against federal officers are an exception to the general rule that a case is removable only if
the federal question appears on the face of a properly pleaded complaint. See Jefferson County v.
Acker, 527 U.S. 423, 431, 119 S. Ct. 2069, 2075, 144 L. Ed. 2d 408 (1999). "Under the federal officer
removal statute, suits against federal officers may be removed despite the nonfederal cast of the
complaint; the federal-question element is met if the defense depends on federal law." Id. "A party
seeking removal under section 1442 must demonstrate that (a) it is a 'person' within the meaning of the
statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions,
and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" Durham v. Lockheed Martin
Corp., 445 F.3d 1247, 1251 (9th Cir. 2006) (quoting Jefferson County, 527 U.S. at 431, 119 S. Ct. 2075,
144 L. Ed. 2d 408 and citing Mesa v. California, 489 U.S. 121, 124-25, 131-35, 109 S. Ct. 959, 962,
965-67, 103 L. Ed. 2d 99 (1989)).

In establishing the propriety of removal under the federal officer removal statute, the defendant
need not prove a valid federal defense, only a colorable defense:

> In construing the colorable federal defense requirement, we have rejected
> a "narrow, grudging interpretation" of the statute, recognizing that "one of
> the most important reasons for removal is to have the validity of the
> defense of official immunity tried in a federal court." We therefore do not
> require the officer virtually to "win his case before he can have it
> removed."

Jefferson County, 527 U.S. at 431, 119 S. Ct. at 2075, 144 L. Ed. 2d 408 (quoting Willingham v.
Morgan, 395 U.S. 402, 407, 89 S. Ct. 1813, 1816, 23 L. Ed. 2d 396 (1969)). Indeed, unlike other
removal statutes, which are to be interpreted strictly, "the Supreme Court has mandated a generous
interpretation of the federal officer removal statute . . . ." Durham, 445 F.3d at 1252. As the Supreme
Court has held, "the right of removal is absolute for conduct performed under color of federal office, and
has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging
interpretation of § 1442(a)(1).'" Arizona v. Manypenny, 451 U.S. 232, 242, 101 S. Ct. 1657, 1664, 68
L. Ed. 2d 58 (1981) (quoting Willingham, 395 U.S. at 407, 89 S. Ct. at 1816, 23 L. Ed. 2d 396); see also
Durham, 445 F.3d at 1252 ("We take from this history a clear command from both Congress and the
Supreme Court that when federal officers and their agents are seeking a federal forum, we are to
interpret section 1442 broadly in favor of removal.").

**SEND**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 08-118 PA (JWJx) | Date | February 11, 2008 |

| | |
|---|---|
| Title | Robert Oberstar, et al. v. CBS Corp., et al. |

In removing the action pursuant to the federal officer removal statute, defendants claim that they are entitled to assert the "military contractor defense." The military contractor defense shields contractors from liability for state tort law for defects in military equipment supplied to the United States when: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." Boyle v. United Technologies Corp., 487 U.S. 500, 512, 108 S. Ct. 2510, 2518, 101 L. Ed. 2d 442 (1988). Although originally developed in the design defect context, the military contractor defense also applies in cases where a plaintiff alleges that the government contractor breached a state law duty to warn of potential dangers. In actions alleging a failure to warn claim against a military contractor, the supplier cannot be liable when it can show: "(1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; [and] (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government." Oliver v. Oshkosh Truck Corp., 96 F.3d 992, 1003-04 (7th Cir. 1996); see also In re Hawaii Federal Asbestos Cases, 960 F.2d 806, 813 (9th Cir. 1992).

As an initial matter, Plaintiffs argue in their Motions to Remand that they have disclaimed any claim that could allow this Court to exercise jurisdiction pursuant to the federal officer removal statute. Specifically, the Complaint alleges:

> Plaintiffs hereby disclaim any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave, which expressly excludes U.S. Navy vessels. Plaintiffs disclaim any cause of action or recovery for any injuries resulting from exposure to asbestos dust caused by any acts or omissions of a party Defendant committed at the direction of an officer of the United States Government.

Complaint, ¶ 4. In support of their argument that their waiver of claims prevents defendants from removing this action pursuant to § 1442(a)(1), Plaintiffs principally rely on Westbrook v. Asbestos Defendants (BHC), No. C-01-1661 VRW, 2001 WL 902642 (N.D. Cal. July 31, 2001). In Westbrook, the district court relied upon the plaintiff's disclaimer of "any claims arising out of work done on United States Navy ships" to support its conclusion that federal officer removal was not proper. Unlike in Westbrook, Plaintiffs here have not disclaimed claims against defendants arising out of exposure occurring on Navy vessels. Indeed, despite their purported disclaimer, Plaintiffs specifically seek damages from defendants for exposure to asbestos Mr. Oberstar may have come in contact with while he served on the U.S.S. Midway. Because removals pursuant to the federal officer removal statute are premised on the existence of a federal defense, rather than a plaintiff's artfully constructed complaint, neither Plaintiffs' disclaimer nor its characterization of their claims are determinative. See Machnik v. Buffalo Pumps Inc., 506 F. Supp. 2d 99, 103 n.1 (D. Conn. 2007) ("Machnik's argument that the suit must be remanded because his complaint disclaimed any federal claims is unavailing . . . . Subject matter jurisdiction under § 1442(a)(1) is based upon a federal defense, regardless of whether the

**SEND**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 08-118 PA (JWJx) | Date | February 11, 2008 |

| | |
|---|---|
| Title | Robert Oberstar, et al. v. CBS Corp., et al. |

plaintiff's cause of action rests on state law. . . . [O]nce GE meets the threshold showing to assert a federal contractor defense, even artful pleading around any federal claims cannot defeat federal subject matter jurisdiction."); Ballenger v. Agco Corp., No. C 06-2271 CW, 2007 WL 1813821, at *2 (N.D. Cal. June 22, 2007) (denying motion to remand despite complaint's disclaimer of "any claim arising from any act or omission of the United State, any agency thereof, any officer of the United States, or a claim against any other person or entity that is based on an act that was performed under specific direction of the United States, any agency thereof or any Officer of the United States").

Plaintiffs additionally argue that defendants have not met their burden to establish the existence of a valid federal defense to Plaintiffs' claims. Specifically, while conceding that defendants are "persons" within the meaning of § 1442(a)(1), Plaintiffs contend that defendants have not demonstrated that they can assert either a "colorable federal defense" or a "causal nexus" between their actions taken at the direction of a federal officer and Plaintiffs' claims. Durham, 445 F.3d at 1251. According to Plaintiffs, defendants lack the evidence to establish that federal officers prevented defendants from providing necessary warnings. As a result, according to Plaintiffs, defendants cannot prove either the applicability of the military contractor defense or the requisite causal nexus.

In their Motions to Remand, Plaintiffs state that their "complaint contains causes of action limited to state-based failure to warn claims." Motion to Remand, p. 6, ll. 8-9. Similarly, in their Reply, Plaintiffs state that they "did not necessarily sue GE or Viad for using asbestos, but rather for failing to warn of the hazards associated with it. Both GE and Viad claim they were acting under federal direction when they designed and manufactured their equipment, but such a showing is immaterial for purposes of this lawsuit and motion for remand." Reply, p. 8, ll. 4-8. According to Plaintiffs, absent evidence of specific facts that defendants were prevented from placing warnings on their products, defendants cannot meet their burden to establish the availability of the military contractor defense. Contrary to Plaintiffs' assertions, however, defendants' burden at this stage of the proceedings is not so exacting.

To establish their military contractor defense, defendants rely in large part on the declarations of Ben Lehman and Lawrence Betts. Lehman is a retired Rear Admiral, who joined the Navy in 1942 and served as Ship Superintendent and Dry Docking Officer at the Brooklyn Navy Yard between 1942 and 1944 and as Ship Superintendent at the San Francisco Naval Shipyard from 1952 to 1954. Lehman also worked as an engineer at GE from 1946 to 1948. Betts, a physician, served in the Navy from 1972 until 2001 when he retired with the rank of Captain.

Lehman's declaration indicates that during the period when the U.S.S. Midway was built and continuing during Mr. Oberstar's service in the Navy, "the Navy had complete control over every aspect of each piece of equipment used on Navy ships." Lehman Decl., ¶ 6. According to Lehman:

> Military specifications governed every characteristic of this equipment,
> including instructions and warnings. Drawings for nameplates, texts of
> instruction manuals, and every other document relating to the

**SEND**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 08-118 PA (JWJx) | Date | February 11, 2008 |

| | |
|---|---|
| Title | Robert Oberstar, et al. v. CBS Corp., et al. |

construction, maintenance, and operation of the vessel was approved by
the Navy. This control included the decision of what warnings should or
should not be included. Thus, the Navy controlled the decision making
with respect to instructions and warnings on every piece of equipment.

Furthermore, the Navy had specifications as to the nature and content of
all written material that was delivered with each piece of equipment,
including turbines and turbine manuals. The Navy was intimately
involved with and had final approval of all technical and engineering
drawings, operating manuals, safety or hazard information, and any other
written information that accompanied a piece of equipment. The Navy
determined the nature of hazards to be subject to any precautionary
labeling and the content of any such labeling. . . . In short, the Navy
dictated every aspect of the design, manufacture, installation, overhaul,
written documentation, and warnings associated with its ships and did not
permit deviation by any of its contractors.

Lehman Decl., ¶¶ 6 & 7. In reviewing a nearly identical declaration submitted by Lehman, the court in
Nesbiet v. General Elec. Co. concluded that Lehman's Declaration raised "the inference that GE did not
provide a warning concerning the dangers of asbestos because the Navy did not permit any such
warning." 399 F. Supp. 2d 205, 208 (S.D.N.Y. 2005). Although the Lehman Declaration may not
establish the absence of a triable issue of fact with respect to the first two prongs of the Boyle test, as
modified by Oliver for a failure to warn claim, defendants need not prove so much at this preliminary
stage of the proceedings. See Oliver, 96 F.3d at 1003 (applying military contractor defense when "(1)
the government exercised its discretion and approved certain warnings; (2) the contractor provided the
warnings required by the government . . . ."). Again, to establish the propriety of their removal,
defendants must only show a "colorable" federal defense, not a winning one.

The third prong of the military contractor defense requires the contractor to have "warned the
government about dangers in the equipment's use that were known to the contractor but not to the
government." Id. at 1004. Defendants rely on the Betts Declaration to meet this third factor of the
Boyle test. Through his training and experience, Betts became familiar with "the history and practice of
the Navy occupational health program from its early days before World War II until the present time."
Betts Decl., ¶ 2. According to Betts, the "Navy's knowledge regarding the applications of asbestos and
the health effects represented the state of the art. During the period from the early 1920s to the late
1960s, there was nothing about the hazards associated with the use of asbestos-containing products on a
marine steam turbine on United States Navy ships known by a turbine manufacturer, like General
Electric Company, that was not known by the United States and the United States Navy." Id., ¶ 30.
Based upon the Betts Declaration, defendants have provided sufficient evidence that there were no
dangers known by them that were not known by the government. See Nesbiet, 399 F. Supp. 2d at 209
("[A]ccording to Betts's affidavit, GE could not have possessed any information regarding the dangers

**SEND**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 08-118 PA (JWJx) | Date | February 11, 2008 |

| | |
|---|---|
| Title | Robert Oberstar, et al. v. CBS Corp., et al. |

posed by the use of asbestos-containing products in marine steam turbines that was not already known by the U.S. Navy.").

The Court therefore concludes that defendants have met their burden, at this stage of the proceedings, to establish a "colorable" military contractor defense for purposes of removal under § 1442(a)(1).[2/] The Court also finds that defendants have submitted sufficient evidence of a "causal nexus" between Plaintiffs' claims and the actions defendants took at the direction of a federal officer. As did the court in <u>Nesbiet</u>, this Court finds that defendants' evidence "is sufficient for purposes of section 1442(a) to demonstrate that the Navy's control over warnings directly interfered with GE's duty to warn under state law. Thus, GE [and Viad] ha[ve] satisfied the 'causal nexus' requirement." <u>Id.</u> at 213.

For all of the foregoing reasons, the Court finds that defendants have raised a "colorable" federal defense to the claims alleged in Plaintiffs' Complaint. As a result, defendants' removals pursuant to § 1442(a)(1) were proper. Plaintiffs' Motions to Remand are therefore denied. With respect to the Motion to Stay, GE seeks to stay this action pending the anticipated transfer of this action to the Eastern District of Pennsylvania as a potential "tag-along action" to Multidistrict Litigation Number 875. According to GE, transfer to the MDL is "imminent." Assuming this is true, GE will suffer little if any prejudice between now and the time this case is eventually is transferred to the MDL should no stay be imposed. Accordingly, the Court finds that GE has failed to establish the necessity for a stay. The Court therefore declines to stay these proceedings.

IT IS SO ORDERED.

---

[2/]     The Court recognizes that when faced with arguably similar evidence, other courts have reached a different result. <u>See, e.g.</u>, <u>Hilbert v. McDonnell Douglas Corp.</u>, No. 07CV11900-NG, 2008 WL 53266 (D. Mass. Jan. 3, 2008). The Court declines to follow <u>Hilbert</u> because, in the Court's view, <u>Hilbert</u> places too high a burden on a defendant to prove its military contractor defense at such an early stage in the litigation. Given the liberality with which removals under § 1442 are to be considered, <u>Hilbert</u>'s more exacting standard appears to conflict with Ninth Circuit precedent. <u>See Durham</u>, 445 F.3d at 1252 ("We take from this history a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal.").