MDL 875

BEFORE THE JUDICIAL PANEL ON MULIDISTRICT LITIGATION

| | | |
|---|---|---|
| **IN RE: ASBESTOS PRODUCTS** | ) | **MDL DOCKET NO. 875** |
| **LIABILITY LITIGATION (NO. VI)** | ) | |
| | ) | JUDICIAL PANEL ON MULTIDISTRICT LITIGATION |
| | ) | AUG – 7 2008 |
| | ) | FILED CLERK'S OFFICE |

IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA

*Allen Christiansen, et. al. v. CBS Corp. et. al.*, C.D. Cal., C.A. No. 2:08-3133

---

## DEFENDANT VIAD CORP'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER

Defendant Viad Corp (hereafter VIAD) submits this memorandum of law in opposition to Plaintiffs' motion to vacate the conditional transfer order (CTO-310).

## I.   INTRODUCTION.

Plaintiffs' instant motion to vacate the conditional transfer order is premised on two grounds. Plaintiffs argue: (1) there is no federal subject matter jurisdiction over any of the above referenced cases and; (2) since plaintiffs are arguably entitled to seek expedited trial settings under the California *Code of Civil Procedure* the above referenced cases cannot be transferred to the Eastern District of Pennsylvania. Plaintiffs' motion fails on both grounds.

PLEADING NO. 5530

**OFFICIAL FILE COPY**   IMAGED AUG 7 2008

## II.    ARGUMENT.

### A.    Plaintiffs' Motion To Vacate The Conditional Transfer Order Is Moot Because The United States District Court Has Already Denied Plaintiffs' Motion To Remand The Instant Matter

Plaintiffs' motion to remand has been briefed, considered, heard and denied in the instant matter.[1] Plaintiffs argue there is no underlying federal jurisdiction upon which to base a transfer of this case to the Eastern District of Pennsylvania. On the contrary, the United States District Court for the Central District of California has already denied Plaintiffs' motion in this matter, where plaintiffs unsuccessfully argued that VIAD Corp had no basis to remove this case pursuant to 28 U.S.C. § 1442(a)(1), governing federal officer removals.  The Multi-District Litigation Panel should not second-guess the United States District Court for the Central District of California's denial of plaintiffs' motions to remand.

Plaintiffs' instant motion to vacate the CTO again strains to argue that VIAD has not established a "colorable" military contractor defense because it has not produced the contracts its alleged predecessor in interest, Griscom-Russell Company (hereafter "GRC") and the United States Navy entered into. No such burden is placed on VIAD in order for it to justify federal officer removal

---

[1] At the time of the instant response to plaintiffs' motion to vacate, no minute order or written order has been made available to the parties following the August 4, 2008 denial of plaintiffs' motion to remand by the United States District Court for the Central District of California. If necessary, the parties can supplement the record when received. However, it is not expected that plaintiffs will dispute that the motion to remand in this matter was denied.

jurisdiction.

The law does not require VIAD to produce contracts between GRC and the Navy to be entitled to litigate the merits of its military contractor defense in federal court—VIAD has an absolute right to litigate the merits of that defense in federal court where as here the evidence shows it acted under color of a federal officer and has alleged a colorable federal defense. *See, e.g., Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006) ("[W]hen federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal."); *see also Arizona v. Manypenny,* 451 U.S. 232, 242, 101 S. Ct. 1657, 1664 (1981) (federal officer removal jurisdiction should not be frustrated by a narrow, grudging interpretation of section 1442(a)(1)); *Willingham v. Morgan*, 395 U.S. 402, 407, 89 S. Ct. 1813, 1816 (1969) ("the officer need not win his case before he can have it removed"). VIAD need only show it can assert a "colorable" federal defense to satisfy the requirements of the federal officer removal statute. *Durham*, 445 F.3d at 1251 (citing *Jefferson County v. Acker*, 527 U.S. 423, 431, 119 S. Ct. 2069 (1999)).

VIAD has submitted sufficient evidence to establish a colorable military contractor defense. This evidence includes the declarations of Admiral Ben J. Lehman, U.S. Navy, Ret., and Charles R. Cushing that VIAD filed in support of removal and in opposition to Plaintiffs' remand motion in *Christiansen*. Multiple courts throughout the United States have found the declarations of Admiral Lehman and Dr. Cushing sufficient to support a

3

colorable military contractor defense.

VIAD'S evidence in support of removal satisfies the standards established by the United States Supreme Court and the Ninth Circuit for federal officer removals. As the Supreme Court recognized in *Willingham*, "[o]ne of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court. The officer need not win his case before he can have it removed." *Willingham*, 395 U.S. at 407-08. If removal is allowed only where the removing party has "a clearly sustainable defense," "[t]he suit would be removed only to be dismissed." *Id.*

The issue as to whether VIAD must produce contracts between GRC and the Navy to establish its right to remove this case to federal court was squarely faced and rejected by the court in *Ballenger v. AGCO Corporation*, No. C 06-2271 CW, 2007 WL 1813821 (N.D.Cal. June 22, 2007). In considering plaintiffs' motion to remand following Todd Shipyards' removal of the action to federal court, plaintiffs contended that Todd Shipyards could not show that it acted under the direction of federal officers because it had not produced any actual contractual documentation of the work it allegedly performed on behalf of the Navy. *Id.* at *3. In rejecting this argument, the court held:

> Defendant Todd Shipyards is not required to produce contracts from
> decades past in order to demonstrate that it worked under the direction of
> federal officers; to require such documentation would frustrate the
> purpose of section 1442(a)(1). See, *Durham*, 445 F.3d at 1252. Admiral
> Horne's declaration suffices.

4

*Id.* The court in *Ballenger* ruled defendants were acting under the direction of a federal officer and had a colorable federal defense under *Boyle* without requiring them to produce evidence the Navy "affirmatively prohibited any kind of warning." *Id.; see, O'Connell v. Foster Wheeler Energy Corp.,* 544 F.Supp. 2d 51, n. 12 (D. Mass. April 7, 2008) ("While citations to regulations or contractual provisions barring warnings would certainly be sufficient to state a colorable claim, the weight of the cases suggest that there is no strict requirement that the government 'prohibit' warnings altogether or 'dictate' the contents of the actual warnings incorporated"). (citing *Oliver v. Oshkosh Truck Corp.,* 96 F.3d 992 at 1004, n.8 (1999)); *see also Harris v. Rapid American Corp.,* 532 F. Supp. 2d 1001 at 1004-1005 (N.D. Ill. 2007) (rejecting plaintiff's argument that VIAD had not shown that Griscom-Russell acted under the direction of the Navy because it had not produced any contract or directive sent by the Navy); *Ferguson v. Lorillard Tobacco Company, Inc.* 475 F. Supp. 2d 725 at 729 (N.D. Ohio 2007) ("Given the sixty year lapse in time, Viad, contrary to plaintiff's contention, is not required to produce documents identifying the exact Naval officer who gave orders to Griscom-Russell during World War II").

Similarly, in *Oberstar v. CBS Corp.,* 2008 U.S. Dist. Lexis 14023 (C.D. Cal. Feb. 11, 2008), Judge Percy Anderson of the United States District Court for the Central District of California, rejected the identical argument plaintiffs are making here--that defendants including VIAD could not meet their burden to establish a colorable federal

5

defense because they lacked evidence the Navy prohibited them from placing warnings on their products. *See Oberstar v. CBS Corp.*, 2008 U.S. Dist. Lexis 14023 (C.D. Cal. Feb. 11, 2008).

> According to Plaintiffs, absent evidence of specific facts that defendants were prevented from placing warnings on their products, defendants cannot meet their burden to establish the availability of the military contractor defense.   Contrary to Plaintiffs' assertions, however, defendants' burden at this stage of the proceedings is not so exacting. . . . Although the Lehman Declaration may not establish the absence of a triable issue of fact with respect to the first two prongs of the *Boyle* test, as modified by *Oliver*, for a failure to warn claim, defendants need not prove so much at this preliminary stage of the proceedings. . . . Again, **to establish the propriety of their removal, defendants must only show a 'colorable' federal defense, not a winning one**. *Oberstar*, at pp. 4-5 (emphasis added). (Ex. "A").

Plaintiffs' motion to vacate the CTO also argues that removal of this action was improper in the first place as plaintiffs' disclaimed any cause of action or recovery for any injuries resulting from exposure to asbestos dust caused by any acts or omissions of a party defendant committed at the direction of an officer of the United States Government. That argument has been repeatedly rejected by the Ninth Circuit and numerous other courts.   *Ballenger*, at *2.   Subject matter jurisdiction pursuant to 1442(a)(1) is based on a federal defense, regardless of whether plaintiffs' claims rest solely upon state law. *Ibid; See, Machnik v. Buffalo Pumps Inc., et al.,* 506 F.Supp.2d 99, 103 n.1 (D.Conn. 2007).   VIAD'S military

6

contractor defense is clearly at issue since plaintiffs concede they were allegedly exposed to GRC's asbestos-containing products while serving aboard various naval ships.

Plaintiffs' "disclaimer" argument has been specifically addressed by several courts who have found such an argument unavailing. *see, Oberstar v. CBS Corp.*, 2008 U.S. Dist. Lexis 14023 (C.D. Cal. Feb. 11, 2008) (attached as Ex. "A") ("Because removals pursuant to the federal officer removal statute are premised on the existence of a federal defense, rather than a plaintiff's artfully constructed complaint, neither Plaintiffs' disclaimer nor its characterization of their claims are determinative"). (*citing Machnik v. Buffalo Pumps Inc.*, 506 F. Supp. 2d 99, 103 n.1 (D. Conn. 2007). *see also, Marley v. Elliot Turbomachinery Co., Inc.*, 545 F.Supp. 2d 1266 at 1274-1275 (the Court rejects "plaintiffs' argument that the disclaimer of any claim arising from an act or omission compelled by the Navy warrants remand).

**B.** **Plaintiffs Have Provided No Authority To Support Their Proposition That California Code of Civil Procedure Section 36 Dictates That The Conditional Transfer Order Must Be Vacated By A Federal Court.**

Plaintiffs' have provided no support for the proposition that the Judicial Panel on Multi-District Litigation is bound by California's civil procedure section governing preference in trial setting. At the outset it should be noted that plaintiffs have raised this argument previously in their motion to remand, which was denied.

Plaintiffs' motion concedes that "[c]lassifying a law as "substantive" or "procedural" is "sometimes a challenging endeavor." *Gasperini v. Center for Humanities, Inc.* 518 U.S. 415, 426 (1996). Plaintiffs then reason by analogy that as California's laws regarding the right to recover damages involve substantive law, by implication the "right to an expedited trial is clearly substantive" as well. The only support for this proposition is plaintiffs' citation to California case law ruling that collateral source and state damage limits have been held to be "substantive," with no further explanation (Plaintiffs' Motion pp. 5-6).

This panel is not bound by *California Code of Civil Procedure* Section 36 (hereafter CCP 36), in its ruling on the instant conditional transfer order. Plaintiffs can provide no support for the proposition that the existence of California's preference statute is grounds for vacating the instant conditional transfer order. If plaintiffs are concerned about the health of their respective clients they can utilize the mechanism set forth in the Federal Rule of Civil Procedure or applicable district rules. However, the argument that a state court civil **procedure** section provides substantive grounds for vacating a conditional transfer order cannot be persuasive in matters that were removed from state court months before plaintiffs filed and served the instant motion.

//

## II.      <u>CONCLUSION</u>.

Plaintiffs' motion to vacate the conditional transfer order should be denied. The district court has denied Plaintiffs' motion to remand, validating VIAD'S removal of this case to federal court pursuant to 28 U.S.C. § 1442(a)(1).  This case should be transferred to the Eastern District of Pennsylvania.

DATED: August 6, 2008                           FOLEY & MANSFIELD, PLLP

                                    By:    _____
                                           Peter B. Langbord (CA. SBN #144319)
                                           Keith M. Ameele (CA. SBN #221927)
                                           150 S. Los Robles Ave., Suite 400
                                           Pasadena, California 91101
                                           Telephone: (626) 744-9359
                                           Facsimile: (626) 744-9359
                                           **Attorneys for Defendant**
                                           **VIAD CORP**

**Exhibit A**

# PROOF OF SERVICE
[CCP, 1013A(3) CRC Rule 2006(d) - Revised 3/1/92]

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 150 S. Los Robles Ave., Suite 400, Pasadena, California 91101.

On **August 6, 2008,** I served the foregoing documents described as: **DEFENDANT VIAD CORP'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER** on the interested parties in this action by placing a true copy thereof enclosed in sealed envelope(s) addressed as follows:

SEE ATTACHED PANEL SERVICE LIST

☒ *(BY MAIL)* I caused such envelope with postage thereon fully prepaid to be placed in the U.S. mail at Los Angeles, California. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of a party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☐ *(BY ELECTRONIC VERSION)* direct electronic filing, via the internet, of the .pdf document that has been scanned from a paper document.

☐ (BY COURT'S CM/ECF SYSTEM) Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF systems, which sent notification of that filing to the persona listed above.

☐ *(BY PERSONAL DELIVERY)* I caused each such envelope to be delivered to a courier with whom we have a direct billing account, who personally delivered each such envelope to the office of the addressee on the date last written below.

☐ *(BY OVERNIGHT DELIVERY)* I caused such envelope(s) to be deposited in a box or other facility regularly maintained by the UPS service carrier.

Executed on **August 6, 2008**, Pasadena, California.

☒ [STATE] I declare under penalty of perjury under the laws of the State of California that the above is true and correct and, that I am employed in the office of a member of the bar of this court at whose direction the service was made.

☒ [FEDERAL] I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Leo Valente

**PANEL SERVICE LIST (Excerpted from CTO-310)**
Allen Christiansen, et al. v. CBS Corp., et al., C.D. California, CA No. 2:08-3133
**MDL No. 875**

| | | |
|---|---|---|
| Jennifer L. Bartlett, Esq.<br>SIMON, EDDINS &<br>GREENSTONE, LLP<br>301 E. Ocean Blvd.<br>Suite 1950<br>Long Beach, CA 90802<br>***Attorney for Plaintiffs*** | Julia A. Gowin, Esq.<br>PALMIERI, TYLER,<br>WIENER, WILHELM &<br>WALDRON, LLP<br>2603 Main Street, East<br>Tower- Suite 1300<br>Irvine, CA 92614<br>Attorneys for Defendant,<br>**CLA-VAL CO.** | Edward R. Hugo, Esq.<br>BRYDON, HUGO &<br>PARKER<br>135 Main Street, 20th Floor<br>San Francisco, CA 94105<br>Attorneys for Defendant<br>**FOSTER WHEELER<br>ENERGY CORP.** |
| Katherine P. Gardiner, Esq.<br>SEDGWICK, DETERT,<br>MORAN & ARNOLD<br>One Market Plaza,<br>Steuart Tower, 8th Floor<br>San Francisco, CA 94105<br>Attorneys for Defendant<br>**GENERAL ELECTRIC<br>COMPANY** | Neil Selman, Esq.<br>Craig R. Maki, Esq.<br>SELMAN BREITMAN, LLP<br>11766 Wilshire Blvd.<br>Sixth Floor<br>Los Angeles, CA 90025<br>Attorneys for Defendant<br>**HENRY<br>TECHNOLOGIES, INC.** | Susan M. Hansen, Esq.<br>BROWNSON & BALLOU<br>225 S. 6th Street<br>Suite 4800<br>Minneapolis, MN 55402 |
| Richard D. Schuster, Esq.<br>VORYS SATER<br>SEMOUR & PEASE, LLP<br>52 East Gay Street<br>P.O. Box 1008<br>Columbus, OH 43216 | Richard C. Binzley, Esq.<br>THOMPSON HINE LLP<br>127 Public Square<br>3900 Key Center<br>Cleveland, OH 44114 | Edward J. Cass, Esq.<br>GALLAGHER SHARP<br>FULTON & NORMAN<br>Bulkley Building, 7th Floor<br>1501 Euclid Ave.<br>Cleveland, OH 44115 |
| Reginald S. Kramer, Esq.<br>OLDHAM & DOWLING<br>195 S. Main Street<br>Suite 300<br>Akron, OH 44308 | Robert N. Spinelli, Esq.<br>KELLEY JASONS<br>MCGUIRE & SPINELLI<br>Centre Square West<br>15th Floor<br>Philadelphia, PA 19102 | Adam M. Chud, Esq.<br>GOODWIN PROCTER LLP<br>901 New York Ave., N.W.<br>Washington, DC 20001 |
| David C. Landin<br>HUNTON & WILLIAMS<br>Riverfront Plaza, East Tower<br>951 East Byrd Street<br>Richmond, VA 23219 | Robert E. Swickle, Esq.<br>JAQUES ADMIRALTY<br>LAW FIRM PC<br>1370 Penobscot Building<br>645 Griwsold Street<br>The Marittime Asbestosis<br>Legal Clinic | David A. Damico<br>BURNS WHITE & HICKTON<br>Fourth Northshore Center<br>106 Isabella Street<br>Pittsburgh, PA 15212 |

|  | Detroit, MI 48226 |  |
|---|---|---|
| Gene Locks, Esq.<br>LOCKS LAW FIRM LLC<br>1500 Walnut Street<br>Philadelphia, PA 19102 | Andrew J. Trevelise, Esq.<br>REED SMITH LLP<br>2500 One Liberty Place<br>1650 Market Street<br>Philadelphia, PA 19103 | Raymond P. Forceno, Esq.<br>FORCENO GOGGIN &<br>KELLER<br>1528 Walnut Street<br>Suite 900<br>Pittsburgh, PA 19102 |
| James K. Weston II, Esq.<br>TOM RILEY LAW FIRM<br>4040 First Ave., N.E.<br>P.O. Box 998<br>Cedar Rapids, IA 52406 | Ellen B. Furman, Esq.<br>GOLDFEIN & HOSMER<br>1600 Market Street<br>33rd Floor<br>Philadelphia, PA 19103 | Ronald L. Motley, Esq.<br>MOTLEY RICE LLC<br>P.O. Box 1792<br>28 Bridgeside Blvd.<br>Mt. Pleasant, SC 29464 |
| John J. Repcheck, Esq.<br>MARKS O'NEILL O'BRIEN<br>& COURTNEY PC<br>Gulf Tower, Suite 2600<br>707 Grant Street<br>Pittsburgh, PA 15219 | John D. Roven, Esq.<br>ROVEN-KAPLAN LLP<br>2190 North Loop West<br>Suite 410<br>Houston, TX 77018 |  |

# EXHIBIT A

**SEND**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-118 PA (JWJx) | Date | February 11, 2008 |
|---|---|---|---|

| Title | Robert Oberstar, et al. v. CBS Corp., et al. |
|---|---|

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE |
|---|---|

| C. Kevin Reddick | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**          IN CHAMBERS - COURT ORDER

Before the Court is a Motion to Remand filed by plaintiffs Robert and Linda Oberstar ("Plaintiffs") (Docket No. 7). Also before the Court is a Motion to Stay originally filed in case number 08-143 PA (JWJx) by defendant General Electric Co. (Docket No. 5).[1] Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that these matters are appropriate for decision without oral argument. The hearing calendared for February 11, 2008, is vacated, and the matters taken off calendar.

Plaintiffs allege claims for negligence, strict liability, and loss of consortium arising out of Mr. Oberstar's exposure to asbestos-containing products manufactured, fabricated, installed, or otherwise distributed by defendants. Specifically, Plaintiffs' claims assert that defendants violated their obligations imposed under state law to warn Mr. Oberstar of the dangers associated with their asbestos-containing products. Among other places, Plaintiffs allege that Mr. Oberstar was exposed to the asbestos contained in defendants' products while he served aboard the aircraft carrier U.S.S. Midway from 1959 to 1963. Plaintiffs commenced the action in Los Angeles Superior Court on December 3, 2007 and served defendants Viad Corp. ("Viad") and General Electric Co. ("GE") on December 10, 2007. Viad removed the action to this Court on January 8, 2008 and GE filed a Notice of Removal on January 9, 2008. Both Viad and GE based their Notices of Removal on 28 U.S.C. § 1442(a)(1)'s federal officer removal statute. 28 U.S.C. § 1442(a) provides, in relevant part:

> A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the

---

[1] Because defendants General Electric Co. and Viad Corp. filed separate Notices of Removal, there were originally two case numbers assigned to this action. Because both case numbers referred to the same case originally filed by plaintiffs in Los Angeles Superior Court, the Court consolidated the two actions into CV 08-118 PA (JWJx), dismissed CV 08-143 PA (JWJx), and directed that all future filings should reference only CV 08-118 PA (JWJx). Plaintiff also filed a Motion to Remand in CV 08-143 PA (JWJx) (Docket No. 14). That Motion will be addressed in this Order.

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-118 PA (JWJx) | Date | February 11, 2008 |
|---|---|---|---|
| Title | Robert Oberstar, et al. v. CBS Corp., et al. | | |

United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . . .

28 U.S.C. § 1442(a).

Suits against federal officers are an exception to the general rule that a case is removable only if the federal question appears on the face of a properly pleaded complaint. See Jefferson County v. Acker, 527 U.S. 423, 431, 119 S. Ct. 2069, 2075, 144 L. Ed. 2d 408 (1999). "Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." Id. "A party seeking removal under section 1442 must demonstrate that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1251 (9th Cir. 2006) (quoting Jefferson County, 527 U.S. at 431, 119 S. Ct. 2075, 144 L. Ed. 2d 408 and citing Mesa v. California, 489 U.S. 121, 124-25, 131-35, 109 S. Ct. 959, 962, 965-67, 103 L. Ed. 2d 99 (1989)).

In establishing the propriety of removal under the federal officer removal statute, the defendant need not prove a valid federal defense, only a colorable defense:

> In construing the colorable federal defense requirement, we have rejected a "narrow, grudging interpretation" of the statute, recognizing that "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." We therefore do not require the officer virtually to "win his case before he can have it removed."

Jefferson County, 527 U.S. at 431, 119 S. Ct. at 2075, 144 L. Ed. 2d 408 (quoting Willingham v. Morgan, 395 U.S. 402, 407, 89 S. Ct. 1813, 1816, 23 L. Ed. 2d 396 (1969)). Indeed, unlike other removal statutes, which are to be interpreted strictly, "the Supreme Court has mandated a generous interpretation of the federal officer removal statute . . . ." Durham, 445 F.3d at 1252. As the Supreme Court has held, "the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" Arizona v. Manypenny, 451 U.S. 232, 242, 101 S. Ct. 1657, 1664, 68 L. Ed. 2d 58 (1981) (quoting Willingham, 395 U.S. at 407, 89 S. Ct. at 1816, 23 L. Ed. 2d 396); see also Durham, 445 F.3d at 1252 ("We take from this history a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal.").

**SEND**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-118 PA (JWJx) | Date | February 11, 2008 |
|---|---|---|---|

| Title | Robert Oberstar, et al. v. CBS Corp., et al. |
|---|---|

In removing the action pursuant to the federal officer removal statute, defendants claim that they are entitled to assert the "military contractor defense." The military contractor defense shields contractors from liability for state tort law for defects in military equipment supplied to the United States when: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." Boyle v. United Technologies Corp., 487 U.S. 500, 512, 108 S. Ct. 2510, 2518, 101 L. Ed. 2d 442 (1988). Although originally developed in the design defect context, the military contractor defense also applies in cases where a plaintiff alleges that the government contractor breached a state law duty to warn of potential dangers. In actions alleging a failure to warn claim against a military contractor, the supplier cannot be liable when it can show: "(1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; [and] (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government." Oliver v. Oshkosh Truck Corp., 96 F.3d 992, 1003-04 (7th Cir. 1996); see also In re Hawaii Federal Asbestos Cases, 960 F.2d 806, 813 (9th Cir. 1992).

As an initial matter, Plaintiffs argue in their Motions to Remand that they have disclaimed any claim that could allow this Court to exercise jurisdiction pursuant to the federal officer removal statute. Specifically, the Complaint alleges:

> Plaintiffs hereby disclaim any cause of action or recovery for any injuries
> caused by any exposure to asbestos dust that occurred in a federal enclave,
> which expressly excludes U.S. Navy vessels. Plaintiffs disclaim any cause
> of action or recovery for any injuries resulting from exposure to asbestos
> dust caused by any acts or omissions of a party Defendant committed at
> the direction of an officer of the United States Government.

Complaint, ¶ 4. In support of their argument that their waiver of claims prevents defendants from removing this action pursuant to § 1442(a)(1), Plaintiffs principally rely on Westbrook v. Asbestos Defendants (BHC), No. C-01-1661 VRW, 2001 WL 902642 (N.D. Cal. July 31, 2001). In Westbrook, the district court relied upon the plaintiff's disclaimer of "any claims arising out of work done on United States Navy ships" to support its conclusion that federal officer removal was not proper. Unlike in Westbrook, Plaintiffs here have not disclaimed claims against defendants arising out of exposure occurring on Navy vessels. Indeed, despite their purported disclaimer, Plaintiffs specifically seek damages from defendants for exposure to asbestos Mr. Oberstar may have come in contact with while he served on the U.S.S. Midway. Because removals pursuant to the federal officer removal statute are premised on the existence of a federal defense, rather than a plaintiff's artfully constructed complaint, neither Plaintiffs' disclaimer nor its characterization of their claims are determinative. See Machnik v. Buffalo Pumps Inc., 506 F. Supp. 2d 99, 103 n.1 (D. Conn. 2007) ("Machnik's argument that the suit must be remanded because his complaint disclaimed any federal claims is unavailing . . . . Subject matter jurisdiction under § 1442(a)(1) is based upon a federal defense, regardless of whether the

**SEND**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-118 PA (JWJx) | Date | February 11, 2008 |
|---|---|---|---|

| Title | Robert Oberstar, et al. v. CBS Corp., et al. |
|---|---|

plaintiff's cause of action rests on state law. . . . [O]nce GE meets the threshold showing to assert a federal contractor defense, even artful pleading around any federal claims cannot defeat federal subject matter jurisdiction."); <u>Ballenger v. Agco Corp.</u>, No. C 06-2271 CW, 2007 WL 1813821, at *2 (N.D. Cal. June 22, 2007) (denying motion to remand despite complaint's disclaimer of "any claim arising from any act or omission of the United State, any agency thereof, any officer of the United States, or a claim against any other person or entity that is based on an act that was performed under specific direction of the United States, any agency thereof or any Officer of the United States").

Plaintiffs additionally argue that defendants have not met their burden to establish the existence of a valid federal defense to Plaintiffs' claims. Specifically, while conceding that defendants are "persons" within the meaning of § 1442(a)(1), Plaintiffs contend that defendants have not demonstrated that they can assert either a "colorable federal defense" or a "causal nexus" between their actions taken at the direction of a federal officer and Plaintiffs' claims. <u>Durham</u>, 445 F.3d at 1251. According to Plaintiffs, defendants lack the evidence to establish that federal officers prevented defendants from providing necessary warnings. As a result, according to Plaintiffs, defendants cannot prove either the applicability of the military contractor defense or the requisite causal nexus.

In their Motions to Remand, Plaintiffs state that their "complaint contains causes of action limited to state-based failure to warn claims." Motion to Remand, p. 6, ll. 8-9. Similarly, in their Reply, Plaintiffs state that they "did not necessarily sue GE or Viad for using asbestos, but rather for failing to warn of the hazards associated with it. Both GE and Viad claim they were acting under federal direction when they designed and manufactured their equipment, but such a showing is immaterial for purposes of this lawsuit and motion for remand." Reply, p. 8, ll. 4-8. According to Plaintiffs, absent evidence of specific facts that defendants were prevented from placing warnings on their products, defendants cannot meet their burden to establish the availability of the military contractor defense. Contrary to Plaintiffs' assertions, however, defendants' burden at this stage of the proceedings is not so exacting.

To establish their military contractor defense, defendants rely in large part on the declarations of Ben Lehman and Lawrence Betts. Lehman is a retired Rear Admiral, who joined the Navy in 1942 and served as Ship Superintendent and Dry Docking Officer at the Brooklyn Navy Yard between 1942 and 1944 and as Ship Superintendent at the San Francisco Naval Shipyard from 1952 to 1954. Lehman also worked as an engineer at GE from 1946 to 1948. Betts, a physician, served in the Navy from 1972 until 2001 when he retired with the rank of Captain.

Lehman's declaration indicates that during the period when the U.S.S. Midway was built and continuing during Mr. Oberstar's service in the Navy, "the Navy had complete control over every aspect of each piece of equipment used on Navy ships." Lehman Decl., ¶ 6. According to Lehman:

> Military specifications governed every characteristic of this equipment,
> including instructions and warnings. Drawings for nameplates, texts of
> instruction manuals, and every other document relating to the

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-118 PA (JWJx) | Date | February 11, 2008 |
|---|---|---|---|

| Title | Robert Oberstar, et al. v. CBS Corp., et al. |
|---|---|

construction, maintenance, and operation of the vessel was approved by
the Navy. This control included the decision of what warnings should or
should not be included. Thus, the Navy controlled the decision making
with respect to instructions and warnings on every piece of equipment.

Furthermore, the Navy had specifications as to the nature and content of
all written material that was delivered with each piece of equipment,
including turbines and turbine manuals. The Navy was intimately
involved with and had final approval of all technical and engineering
drawings, operating manuals, safety or hazard information, and any other
written information that accompanied a piece of equipment. The Navy
determined the nature of hazards to be subject to any precautionary
labeling and the content of any such labeling. . . . In short, the Navy
dictated every aspect of the design, manufacture, installation, overhaul,
written documentation, and warnings associated with its ships and did not
permit deviation by any of its contractors.

Lehman Decl., ¶¶ 6 & 7. In reviewing a nearly identical declaration submitted by Lehman, the court in
Nesbiet v. General Elec. Co. concluded that Lehman's Declaration raised "the inference that GE did not
provide a warning concerning the dangers of asbestos because the Navy did not permit any such
warning." 399 F. Supp. 2d 205, 208 (S.D.N.Y. 2005). Although the Lehman Declaration may not
establish the absence of a triable issue of fact with respect to the first two prongs of the Boyle test, as
modified by Oliver for a failure to warn claim, defendants need not prove so much at this preliminary
stage of the proceedings. See Oliver, 96 F.3d at 1003 (applying military contractor defense when "(1)
the government exercised its discretion and approved certain warnings; (2) the contractor provided the
warnings required by the government . . . ."). Again, to establish the propriety of their removal,
defendants must only show a "colorable" federal defense, not a winning one.

The third prong of the military contractor defense requires the contractor to have "warned the
government about dangers in the equipment's use that were known to the contractor but not to the
government." Id. at 1004. Defendants rely on the Betts Declaration to meet this third factor of the
Boyle test. Through his training and experience, Betts became familiar with "the history and practice of
the Navy occupational health program from its early days before World War II until the present time."
Betts Decl., ¶ 2. According to Betts, the "Navy's knowledge regarding the applications of asbestos and
the health effects represented the state of the art. During the period from the early 1920s to the late
1960s, there was nothing about the hazards associated with the use of asbestos-containing products on a
marine steam turbine on United States Navy ships known by a turbine manufacturer, like General
Electric Company, that was not known by the United States and the United States Navy." Id., ¶ 30.
Based upon the Betts Declaration, defendants have provided sufficient evidence that there were no
dangers known by them that were not known by the government. See Nesbiet, 399 F. Supp. 2d at 209
("[A]ccording to Betts's affidavit, GE could not have possessed any information regarding the dangers

**SEND**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-118 PA (JWJx) | Date | February 11, 2008 |
|---|---|---|---|
| Title | Robert Oberstar, et al. v. CBS Corp., et al. | | |

posed by the use of asbestos-containing products in marine steam turbines that was not already known by the U.S. Navy.").

The Court therefore concludes that defendants have met their burden, at this stage of the proceedings, to establish a "colorable" military contractor defense for purposes of removal under § 1442(a)(1).[2] The Court also finds that defendants have submitted sufficient evidence of a "causal nexus" between Plaintiffs' claims and the actions defendants took at the direction of a federal officer. As did the court in Nesbiet, this Court finds that defendants' evidence "is sufficient for purposes of section 1442(a) to demonstrate that the Navy's control over warnings directly interfered with GE's duty to warn under state law. Thus, GE [and Viad] ha[ve] satisfied the 'causal nexus' requirement." Id. at 213.

For all of the foregoing reasons, the Court finds that defendants have raised a "colorable" federal defense to the claims alleged in Plaintiffs' Complaint. As a result, defendants' removals pursuant to § 1442(a)(1) were proper. Plaintiffs' Motions to Remand are therefore denied. With respect to the Motion to Stay, GE seeks to stay this action pending the anticipated transfer of this action to the Eastern District of Pennsylvania as a potential "tag-along action" to Multidistrict Litigation Number 875. According to GE, transfer to the MDL is "imminent." Assuming this is true, GE will suffer little if any prejudice between now and the time this case is eventually is transferred to the MDL should no stay be imposed. Accordingly, the Court finds that GE has failed to establish the necessity for a stay. The Court therefore declines to stay these proceedings.

IT IS SO ORDERED.

---

[2]    The Court recognizes that when faced with arguably similar evidence, other courts have reached a different result. See, e.g., Hilbert v. McDonnell Douglas Corp., No. 07CV11900-NG, 2008 WL 53266 (D. Mass. Jan. 3, 2008). The Court declines to follow Hilbert because, in the Court's view, Hilbert places too high a burden on a defendant to prove its military contractor defense at such an early stage in the litigation. Given the liberality with which removals under § 1442 are to be considered, Hilbert's more exacting standard appears to conflict with Ninth Circuit precedent. See Durham, 445 F.3d at 1252 ("We take from this history a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal.").