# MDL 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT - 8 2008

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE ASBESTOS PRODUCTS<br>LIABILITY LITIGATION (No. VI) | §<br>§<br>§  MDL DOCKET NO. 875<br>§<br>§ |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JAMES R. YOUNG, et ux.,<br><br>       Plaintiffs,<br><br>v.<br><br>AC & R INSULATION CO, et al.,<br><br>       Defendants. | §<br>§<br>§<br>§<br>§<br>§  CASE NO.: 1:07-CV02200-JFM<br>§<br>§<br>§<br>§ |

PLEADING NO. 5637

## MOTION TO VACATE THE
## CONDITIONAL TRANSFER ORDER

Plaintiffs, pursuant to Rules 5.2, 5.12, , 7.2 and 7.4(d) of the Rules of Procedure of the

Judicial Panel on Multidistrict Litigation, move the Panel to vacate the Conditional Transfer

Order entered on September 19, 2008 in this matter.

1.       The grounds for this Motion are set forth in the accompanying Memorandum in

Support of Motion to Vacate Conditional Transfer Order, and are incorporated herein.

2.       James Rowland Young is dying from malignant mesothelioma.

3.       Plaintiffs brought this suit in state court, asserting solely common law products



OFFICIAL FILE COPY

IMAGED OCT 6 - 2008

liability claims.

4.     One Defendant removed the case, asserting that federal question jurisdiction was justified due to alleged exposures on an alleged federal enclave.

5.     Plaintiffs have timely filed a Motion to Remand raising numerous procedural and jurisdictional bars to federal jurisdiction in this case.

6.     Plaintiffs request that the Panel vacate the conditional transfer order, without prejudice, until the transferor court rules upon the motion to remand.  In practice, MDL-875 does not consider jurisdictional motions before requiring plaintiffs to undergo the procedures of that Court.  As a result, transfer to MDL-875 prior to determination of jurisdiction by the United States District Court for the District of Maryland will result in Plaintiffs being forced to proceed through the maze of the MDL, only to eventually have the case remanded to the transferor court for determination of whether federal jurisdiction exists.  In the interim, Mr. Young, who has now been hospitalized for the third time since his diagnosis in May of 2008, is nearly certain to die. That result is unjust, contrary to the interests of judicial economy, and totally avoidable.

**WHEREFORE**, Plaintiffs request that the Court vacate Conditional Transfer Order 315 as applicable to this case, without prejudice, until the question of federal jurisdiction is resolved by the United States District Court for the District of Maryland.

Respectfully submitted,

Jonathan Ruckdeschel
Federal Bar Number: 25015
Dawn P. O'Croinin
Federal Bar Number:  26902
The Ruckdeschel Law Firm, LLC
5126 Dorsey Hall Drive, Suite 201

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT - 6 2008

FILED
CLERK'S OFFICE

Ellicott City, Maryland 21042
Telephone: 410.884.7825
Facsimile: 443.586.0430
ruck@rucklawfirm.com
dawn@rucklawfirm.com

## REQUEST FOR HEARING

Plaintiffs respectfully request a hearing on this motion.

Dawn P. O'Croinin

## CERTIFICATE OF SERVICE

I hereby certify that on this _2nd_ day of _October_, 2008 a true and correct copy of

this Motion to Vacate the Conditional Transfer Order has been served by U.S. Mail on all counsel

listed in the attached Panel Service List pursuant to Rule 5.2 of the Rules of Procedure of the Judicial

Panel on Multidistrict Litigation, FED.R.CIV.P. 5 and MDL – CTO 315.

Dawn P. O'Croinin

RECEIVED
CLERK'S OFFICE
2008 OCT - 3 P 3: 35
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

**IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)**                                    MDL No. 875

**PANEL SERVICE LIST (Excerpted from CTO-315)**

James Rowland Young, et al. v. AC&R Insulation Co., Inc., et al.,
D. Maryland, C.A. No. 1:08-2200

Richard Damon Albert
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036

Peter G. Angelos
LAW OFFICES OF
PETER G ANGELOS PC
One Charles Center
100 North Charles Street
22nd Floor
Baltimore, MD 21201

Thomas P. Bernier
SEGAL MCCAMBRIDGE SINGER
& MAHONEY LTD
One North Charles Street
Suite 2500
Baltimore, MD 21201

Janet W. Black
WARD BLACK PA
208 West Wendover Avenue
Greensboro, NC 27401-1307

Malcolm S. Brisker
GOODELL DEVRIES LEECH
& DANN LLP
One South Street
Alex Brown Building, 20th Floor
Baltimore, MD 21202

T. Michael Brown
BRADLEY ARANT ROSE & WHITE
1819 Fifth Avenue
Birmingham, FL 35213

Russell W. Budd
BARON & BUDD PC
3102 Oaklawn Avenue
Suite 1100
Dallas, TX 75219

John D. Cooney
COONEY & CONWAY
120 North LaSalle Street
Suite 3000
Chicago, IL 60602-2415

Donna Marcelle Crowe
BRADLEY ARANT ROSE & WHITE
1133 Connecticut Ave., N.W.
Suite 12th Fl.
Washington, DC  20036

Katherine S. Duyer
GAVETT & DATT PC
15850 Crabbs Branch Way
Suite 180
Rockville, MD 20855

Richard L. Flax
LAW OFFICES OF RICHARD L
FLAX
29 West Susquehanna Avenue
Suite 500
Baltimore, MD 21204

Kevin M. Jordan
BAKER BOTTS LLP
910 Louisiana
One Shell Plaza
Houston, TX 77002-4995

Paul Kalish
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595

Jeannie P. Kauffman
BACON THORNTON & PALMER
Capital Office Park
6411 Ivy Lane, Suite 706
Greenbelt, MD 20770-1411

Steven Kazan
KAZAN MCCLAIN ABRAMS
FERNANDEZ ET AL
171 Twelfth Street
Third Floor
Oakland, CA 94607

Peter A. Kraus
WATERS & KRAUS LLP
3219 McKinney Avenue
Suite 3000
Dallas, TX 75204

David C. Landin
HUNTON & WILLIAMS
Riverfront Plaza
East Tower
951 East Byrd Street
Richmond, VA 23219-4074

Roger B. Lane
LANE & GOSSETT
1601 Reynolds Street
Brunswick, GA 31520

Steven Andrew Luxton
MORGAN LEWIS & BOCKIUS
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004

Neil J. MacDonald
HARTEL KANE DESANTIS
MACDONALD & HOWIE LLP
Calverton Office Park
11720 Beltsville Drive
Suite 500
Beltsville, MD 20705-3166

William F. Mahoney
SEGAL MCCAMBRIDGE SINGER
& MAHONEY LTD
233 South Wacker Drive
Suite 5500
Chicago, IL 60606

**MDL No. 875 - Panel Service List (Excerpted from CTO-315) (Continued)**

Robert C. Malaby
MALABY & BRADLEY
150 Broadway
Suite 600
New York, NY 10038

John P. McShea
MCSHEA TECCE PC
Mellon Bank Center
1717 Arch Street
28th Floor
Philadelphia, PA 19103

Philip McWeeny
SCHIFF HARDIN LLP
One Market Plaza
32nd Floor
Spear Street Tower
San Francisco, CA 94105

Charles F. Mitchell
JOHN J KIRLIN INC
515 Dover Road
Suite 2100
Rockville, MD 20850

Joel D. Newport
MOORE & JACKSON LLC
305 Washington Avenue
Suite 401
Baltimore, MD 21204

Michelle Noorani
MILES & STOCKBRIDGE
10 Light Street
Baltimore, MD 21202

Dawn P. O'Croinin
RUCKDESCHEL LAW FIRM LLC
5126 Dorsey Hall Drive
Suite 201
Ellicott City, MD 21042

Thomas A. Packer
GORDON & REES LLP
Embarcadero Center West
275 Battery Street
Suite 2000
San Francisco, CA 94111

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464

Theodore F. Roberts
VENABLE LLP
210 Allegheny Avenue
Towson, MD 21285-5517

Michael P. Thornton
THORNTON & NAUMES LLP
100 Summer Street
30th Floor
Boston, MA 02110

Keith R. Truffer
ROYSTON MUELLER MCLEAN & REID
102 W. Pennsylvania Avenue
Suite 600
Towson, MD 21204

Walter G. Watkins, Jr.
FORMAN PERRY WATKINS KRUTZ & TARDY
P.O. Box 22608
Jackson, MS 39225-2608

Peter Allan Woolson
P.A. WOOLSON, PA
217 E. Redwood Street
Suite 1500
Baltimore, MD 21202



JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT - 6 2008

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

§
IN RE ASBESTOS PRODUCTS          §
LIABILITY LITIGATION (No. VI)    §          MDL DOCKET NO. 875
§
§

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

§
JAMES R. YOUNG, et ux.,          §
§
     Plaintiffs,                §
§
     v.                        §          CASE NO.: 1:08-CV02200-JFM
§
AC & R INSULATION CO, et al.,    §
§
     Defendants.               §
§

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## MOTION TO VACATE CONDITIONAL TRANSFER ORDER
### (Request for Hearing)

Plaintiffs, pursuant to Rules, 5.2, 5.12, 7.2 and 7.4(d) of the Rules of Procedure of the

Judicial Panel on Multidistrict Litigation, file this Memorandum in Support of their Motion to

Vacate the Conditional Transfer Order entered on September 19, 2008 in this matter.  The grounds

for this Motion and Memorandum are as follows:

### I.     INTRODUCTION

1.     James Rowland Young is eighty-four years old and dying of malignant mesothelioma.

2.      Mesothelioma is a rare, "fatal cancer of the lining of the lung or abdominal cavity" that is caused almost exclusively by asbestos. *See, e.g., Norfolk & Western Ry v. Ayers*, 538 U.S. 135, 142 (2003). "Asbestos is the only cause of mesothelioma established thus far, although some instances of the disease are not traceable to asbestos." *Id.* at 142 n.3.   The median time from diagnosis to death ranges from four to eighteen months. Exhibit A, *Roggli, et. al., Pathology of Asbestos-Associated Diseases, p. 149 (2nd ed. 2003).*

3.      Mr. Young was diagnosed with mesothelioma on May 19, 2008. Despite the fact that there is no cure for mesothelioma, Mr. Young has undergone a series of four cycles of toxic chemotherapy in a desperate attempt to prolong his life.  Since beginning his chemotherapy on June 26, 2008, Mr. Young has been hospitalized three times.  While the Youngs remain hopeful that Mr. Young will survive through the holiday season and into next year, there is no realistic chance that Mr. Young will survive long enough to see his case go to trial if it is transferred to MDL-875.

## II.    PROCEDURAL HISTORY

4.      This case was filed on July 24, 2008.  On August 14, 2008, Plaintiffs, through liaison counsel, filed correspondence and a proposed pretrial schedule with the state court requesting that the case be set for the April 13, 2010 mesothelioma trial group, in which counsel for the Youngs has another mesothelioma case set for trial.   On August 21, 2008, Defendant Garlock Sealing Technologies, LLC ("Garlock") removed the case to federal court asserting federal enclave jurisdiction pursuant to 28 U.S.C. § 1331 and 16 U.S.C. § 457.

5.      On September 19, 2008, Plaintiffs timely filed a Motion to Remand the case to State Court. The Motion to Remand raised numerous independently dispositive reasons why removal was improper and why federal jurisdiction was not present.

2

## III.   ARGUMENT

### A.   Transfer to MDL-875 Will Almost Certainly Result In Mr. Young Dying Before He Receives His Day In Court.

6.      There is a serious concern that the United States District Court for the District of Maryland will not rule upon Plaintiffs' Motion to Remand prior to the finalization of the Conditional Transfer Order.   In such circumstance, Mr. Young would be required to undergo settlement negotiations, potential discovery and all of the other procedures related to MDL-875 despite the fact that federal jurisdiction does not exist in this case.  As a practical matter, the resulting delays would almost certainly guarantee that Mr. Young will die before he can have his day in court.

7.      As the Panel is aware, the lengthy delays in MDL-875 have resulted in it being frequently referred to as a "black-hole" from which cases rarely, if ever, emerge.  The fate of cases condemned to the "black hole" of MDL-875 was graphically described by The Honorable Mark Davidson of the District Court of Harris County, Texas, who presides over the Texas intra-state MDL relating to asbestos cases as follows:

> Plaintiffs claimed in argument before the court that if the case is refiled in Maine, it will immediately be removed to Federal Court, and from there transferred to the Federal MDL.  What will happen to the cases there?  Apparently the judge will not give the plaintiff an opportunity to have his case heard before his death.  The judge will attempt to get the case to settle.  When and if the case is remanded, there will have been little, if any, judicial decision making performed that will assist the trial court.  It will sit in this court, if it does not settle, for several years before it is remanded.  The case will then go to the end of the docket in the federal court to which it is assigned.  This isn't just what I have been able to find out from conferring with federal judges around the nation – this is what the Judge D. Brock Hornby, Chief Judge of the Federal Courts of the District of Maine, wrote in *In re Maine Asbestos Cases*, 44 F.Supp.2d 368 (D.Me. 1999). . . . If it is the Federal Court of Pennsylvania, it is certain that Mr. Richards will not be alive to have his day in court, and will die without knowing whether or not his widow will get a recovery from this case.  A system of justice that would mandate such a result has nothing to do with the concept of justice.

Exhibit B, *Decision of Judge Davidson in Austin Richards, et. ux. v. Carver Pump Company et al.*; Case No. 2006-22,116 (September 5, 2006). Judge Davidson then referred to the Federal MDL as it has existed for many years as a "black hole." *Id.*

8.    Lest Removing Defendants attempt to characterize Judge Davidson's "black hole" comment as unfounded hyperbole, the agenda for the 2007 Defense Research Institute (DRI) conference regarding asbestos litigation demonstrates the generally accepted view of the defense bar regarding this issue. Exhibit C, *Agenda for DRI "Asbestos Medicine" Conference, November 8-9, 2007*. The first presentation at this year's convention of asbestos-defense lawyers is entitled:

> **MDL 875: Navigating the Black Hole – Its Future and Ramifications for State Courts:** Hear about the current role of the MDL and its projected impact on existing and future cases.

*Id.* at p. 4. While the possibility of eventual return from MDL-875 exists, there can be no reasonable dispute that the delays in reaching that point will almost certainly result in Mr. Young's death before he has a chance to receive his day in court.

**B.    Under the Circumstances of This Case, it Would Be a Gross Injustice and Violation of Mr. Young's Rights If He is Required to Navigate the Maze of MDL-875 Before Federal Jurisdiction Has Been Established.**

9.    There is no dispute that MDL-875 has resulted in the closure of tens of thousands of cases. Equally, however, there can be no dispute that the massive delays in MDL-875 almost always result in the death of individuals with mesothelioma prior to their receiving a day in court. Such delays may be an unavoidable reality in *cases where federal jurisdiction has been determined to be proper*. However, it is grossly inequitable that Mr. and Mrs. Young might have to wait 1, 2 or even 3 years in MDL-875 only to have the original transferor Court determine that federal jurisdiction

does not exist upon return of the case to the transfer court at the completion of the procedures of MDL-875.

10.     Despite the commendable efforts of the Transferee Court, MDL-875 still contains thousands of unresolved cases to be handled by a single judge.  *See, e.g., Statistical Analysis of Multidistrict Litigation 2007* at 4 (Jud.Pan.Mult.Lit. 2007).  A review of the *Statistical Analysis* demonstrates that forty-seven percent of cases pending nationwide before MDL panels as of September 30, 2007 were actions pending in MDL-875.

11.     In making this Motion, Plaintiffs are cognizant of the past statements of this Panel in rulings such as *In re Asbestos Products Liability Litigation*, 170 F.Supp.2d 1384 (Jud. Pan. Mult. Lit. 2001) that "we are confident that Judge Weiner will continue to promptly review arguments for returning transferred actions or their claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever he is convinced that retention in the MDL-875 proceedings is no longer needed." *Id* at 1350.

12.     Based upon the recent experience of Plaintiffs' counsel discussed in more detail below, the *factual reality* is that MDL-875 does not consider jurisdictional motions and that "speedy return" from MDL-875 is nearly impossible.  While return to the transferor court can, occasionally, be secured, Plaintiffs are required to navigate the maze of MDL-875, including mandatory settlement conference and potential discovery, *prior to any determination regarding whether the federal courts have jurisdiction over the case at all.*  That process is not "speedy" in the context of individuals with mesothelioma, whose expected lifespan is measured in months, rather than years.  *See* Exhibit A.

13.     Plaintiff urges this Panel to re-consider its policy of approval of conditional transfer orders in cases where jurisdictional motions to remand are pending in the transferor court, at least

5

under the particular factual circumstances of this case. The factual posture of this case, when taken as a whole, is "unique" when compared to the mass of cases currently sequestered in MDL-875:

    a.  Mr. Young has mesothelioma.  His cancer is inoperable and he has been receiving palliative chemotherapy despite there being no chance of recovery from his disease.

    b.  Mr. Young has a chance at obtaining a trial in his lifetime in state court if the case is remanded *now*.  Plaintiffs timely requested to add their case to the April 2010 mesothelioma trial group in Baltimore City, where their counsel has another case set for trial.  Exhibit D, *Request to Add Case to April 2010 Mesothelioma Trial Group.*  Should the case be returned to state court, Plaintiff intends to seek an earlier trial setting, based upon availability of the trial court.

    c.  Numerous substantial jurisdictional and procedural defects to the Removal of the case have been timely and properly raised by the Youngs.  *See* Exhibit E, *Plaintiffs' Motion for Remand.*

In these circumstances, it would be a grave injustice for Mr. Young's case to be transferred to MDL-875 before the United States District Court for the District of Maryland rules upon the jurisdictional arguments raised by Plaintiffs.[1]

    **C.**    **It Is Unfair and Unconstitutional to Allow Transferor Courts to Arbitrarily Choose Whether or Not to Rule on Jurisdictional Objections When Not Ruling Will Require Plaintiffs to Participate in Settlement Conferences, Discovery and Other MDL-875 Procedures**

---

[1] Plaintiffs refer to the Motion to Remand simply to illustrate the jurisdictional arguments raised by Plaintiffs. Accordingly, Plaintiffs attach the Motion only, and not the accompanying Memorandum or Exhibits. Plaintiff will provide these materials to the Panel if requested.

14.     Plaintiffs are cognizant of the Panel's prior statement that transferor courts "wishing to address such motions have adequate time to do so" and that "those courts concluding that such issues should be addressed by the transferee judge need not rule on them...." *In re Asbestos Products Liability Litigation*, 170 F.Supp.2d at 1349, n. 1. Plaintiffs submit that this policy is both unjust and based upon a faulty factual premise.

15.     The policy is unjust because it is grossly unfair for a dying Plaintiff to have his Constitutional right to due process subjected to the arbitrary question of whether the transferor court "wishes" to rule on the Motion to Remand. The Panel's policy does not articulate any standards that would provide any principled basis for the "wish" of the transferor court. The panel's policy does not require the transferor court to exercise discretion and to explain that exercise in a way that would allow for meaningful review.

16.     To the contrary, the Panels' policy allows the transferor court, without exercise of discretion, without analysis or explanation, and without any opportunity for challenge, to choose to not rule on a fundamental jurisdictional motion simply because it does not "wish" to do so. That is unfair and unconstitutional. The United States Supreme Court has made it clear that federal courts must determine their jurisdiction at the very outset of litigation, and that "without jurisdiction the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94, 118 S. Ct. 1003, 1012 (1998) (quoting *Ex parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264(1868)). The Court further stated, "The requirement that jurisdiction be established as a threshold matter spring[s] from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Id.* at 94-95, 118 S.Ct. at 112 (quoting *Mansfield, C. & L.M.R. Co. v. Swan*), 111 U.S. 379, 382, 4 S. Ct. 510, 511 (1884)). Discretion is not unbounded. In

7

exercising discretion, judges must actually consider cases and arguments – individually and on their merits.   The Panel's policy accepts unbounded, arbitrary and unexplained refusals to rule by transferor courts that indisputably result in cases being marooned in federal court for months or years despite the lack of federal jurisdiction.   That is wrong.   Moreover, it is entirely avoidable.[2]

### D.   What Actually Happens to Cases Transferred to MDL-875.

17.     The policy of the Panel to accept the unexplained choice of a transferor courts to not rule upon jurisdictional motions to remand is based upon a faulty factual premise.   In setting the policy, the Panel expressly assumed that the MDL-875 judge would consider and rule upon Motions to Remand.   Specifically, in *In re Asbestos Products Liability Litigation*, the Panel stated "those courts concluding that such issues should be addressed by the transferee judge need not rule on them....".   *In re Asbestos Products Liability Litigation*, 170 F.Supp.2d at 1349 n.1.   In truth, MDL-875 does not rule upon motions to remand.   *See* Exhibits F and G (Affidavits of Jonathan Ruckdeschel, Esq. and Charles Siegel, Esq.).

18.     Contrary to the assumption of the Panel, it has been the practice of MDL-875 to require parties to pursue the settlement and discovery process of MDL-875 irrespective of whether there is a pending jurisdictional Motion to Remand.   Moreover, it has been the practice of MDL-875 to refrain from ruling upon pending Motions to Remand and, instead, to leave such motions pending until the case is returned to the transferor court years after transfer.   The transferor court then ends up ruling on the jurisdictional Motion to Remand that had been pending all along.

19.     This is precisely what occurred in the matter of *Hauck v. Borg Warner, et. al.*, Case

---

[2] In this respect, Plaintiffs do not ascribe any improper or ulterior motive to Courts that have chosen to not rule on such motions.   To the contrary, Plaintiffs believe that these Courts are laboring under the misperception that MDL-875 considers and rules upon jurisdictional motions when, in fact, it does not.

No. 6:04-cv-01835 (M.D. Fla. October 12, 2006), also handled by counsel for Plaintiffs. In *Hauck*, the transferor court chose, without prior explanation, to not rule on the Motion the Remand. *See* Exhibit H, Order Remanding Case To State Court *in Hauck v. Borg Warner, et. al., Case No. 6:04-cv-01835* (M.D. Fla. October 12, 2006) (setting forth facts discussed below). As described below, the *Hauck* case provides a perfect example of the inequity of allowing transferor courts to arbitrarily decide, without explanation and without possibility of review, not to rule on jurisdictional Motions to Remand prior to transfer to MDL-875.

20. On December 16, 2004, the *Hauck* case was removed to federal court on the sole ground of diversity of citizenship, despite the fact that diversity had existed since the case was originally filed on July 21, 2004. In January, 2005, Plaintiff moved to remand the case to state court, asserting that the federal courts lacked jurisdiction over the case. On February 17, 2005, the U.S. District Court for the Middle District of Florida heard oral argument on the Motion to Remand.

21. In June 2005, six months after removal, five months after filing of the motion to remand and over three months after oral argument on the motion, this Panel entered the final transfer order in the *Hauck* case, over Ms. Hauck's objection that the federal courts lacked jurisdiction. Despite having had months to decide the jurisdictional remand motion, the U.S. District Court for the Middle District of Florida refused to rule on the Motion to Remand. No explanation for that refusal was ever provided. Instead, after entry of the transfer order, the U.S. District Court for the Middle District of Florida simply entered a pro-forma Order denying the Motion to Remand without prejudice to the re-filing of the Motion in MDL-875.

22. Plaintiff promptly renewed her jurisdictional Motion to Remand in MDL-875. Despite this, for the fourteen months that the *Hauck* case remained in MDL-875, the court made no

9

attempt to rule upon the motion or to even consider the jurisdictional arguments raised by Ms. Hauck.  To the contrary, MDL-875 required Ms. Hauck to undergo two settlement conferences and informal discovery before Judge Giles eventually recommended "remand" of the case to the Middle District of Florida.  The case returned to the Middle District of Florida – with the fundamental question of federal jurisdiction still pending.

23.     Upon *re-argument* of Plaintiff's Motion to Remand, the *Hauck* court determined that federal jurisdiction did not exist and, accordingly, *had never existed* and ordered remand to the state court system on October 12, 2006 – nearly 22 months after it was removed and nearly 20 months after the transferor court first heard oral argument on the Motion to Remand.

24.     Similarly, in the case of *Shifflett v. A.C.&R. Insulation Co., et al.*, Case No. 1:07-CV02397-WDQ (D. Md. 2008), also handled by Plaintiffs' counsel, the case was removed to federal court on September 7, 2007.  Plaintiffs filed a timely Motion to Remand citing procedural deficiencies and substantive jurisdictional challenges, similar to those at issue in the present matter, on October 4, 2007.  Plaintiffs also filed a Motion for Expedited Consideration on October 11, 2007.  No hearings were held on the motions, and the District Court declined to rule on the jurisdictional issue prior to transfer to MDL-875 on February 29, 2008.

25.     After two unfruitful settlement conferences, the *Shifflett* case was remanded to the U.S. District Court for the District of Maryland on August 11, 2008 when the Clerk for MDL-875 transmitted a certified copy of the Conditional Remand Order to the District Court.  Although the *Shifflett* case was remanded to the transferor court in just under a year, there has been no further action taken by the transferor court.  Despite having filed a Renewed Motion for Remand on August 27, 2008, the question of jurisdiction, which has been pending for nearly a year, remains undecided

10

as of the date of this filing.

26.    In making the Motion herein, the Youngs do not cast any aspersions on the hard work of Judge Weiner during his tenure or Judge Giles since his assumption of MDL-875. Indeed, Plaintiffs do not question the statement of this Panel that "whenever the transferee judge has deemed remand of any claims or actions appropriate, procedures have been utilized to accomplish Section 1407 remand for trial with a minimum of delay." *In re Asbestos Products Liability Litigation*, 170 F.Supp.2d at 1350. The fact remains, however, that the "remand" discussed in that comment is not remand to state court due to determination that the federal courts lack jurisdiction. To the contrary, it refers to remand to the transferor court for trial or further proceedings *after completion of the maze of MDL-875*. There is no way to complete that maze "with a minimum of delay" however.

27.    Nowhere are the famous words of William Gladstone that "justice delayed is justice denied" more fitting than when used in connection with a lawsuit brought by a terminally ill individual seeking justice regarding their disease. It is gravely unjust to require dying plaintiffs like Mr. Young to negotiate MDL-875 before they can obtain a ruling on a jurisdictional motion to remand. Lacking jurisdiction over the case at all, it is unconstitutional to require a plaintiff to suffer the inevitable delays of MDL-875 before *jurisdiction* is determined. As demonstrated by the *Hauck* and *Shifflett* cases, MDL-875 does not consider jurisdictional motions to remand. To the contrary, if a case is transferred to MDL-875 with a pending motion to remand, that motion remains pending while the plaintiff frantically tries to outrace the Reaper though the maze of MDL-875 in the hope that he or she will obtain referral back to the transferor court. Only at that point – one, two, three or even more years later – will the Plaintiff obtain their constitutionally guaranteed ruling upon the Motion to Remand.

11

**E.**   **The Hope of Having a Reasonable Likelihood of Obtaining a Trial During a Plaintiff's Lifetime is a Valuable Right.**

28.     Mesothelioma is asbestos cancer.  People with mesothelioma die from mesothelioma and they almost always die within two years of diagnosis.  There is no escape from this disease.

29.     Nevertheless, courts around the country, such as the courts of the state of Maryland, have developed remarkable procedures to provide persons with mesothelioma with a reasonable likelihood of receiving a trial in their extraordinarily limited lifetime.  Any significant delay in federal court will greatly jeopardize Plaintiffs' ability to have their case heard in the April 2010 mesothelioma trial group in the Circuit Court for Baltimore City where it is currently slotted.  While nobody knows if Mr. Young will survive until April 2010, there can be no reasonable dispute that he has almost no chance of being alive for trial if the CTO is finalized prior to determination of the jurisdictional issues raised in his Motion to Remand.

30.     It is unjust for Mr. Young's case to spend months or years in MDL-875 without a determination that the federal courts have jurisdiction over his case.  If the federal courts have jurisdiction over this matter, Mr. Young understands and accepts that his case will be transferred to MDL-875 and that he will almost certainly die before he can obtain a trial date.  Mr. Young cannot understand and cannot accept, however, that even while federal jurisdiction does not exist, there is a possibility that he may lose his chance for trial during his lifetime, simply because the transferor court might choose not to rule on the Motion to Remand.

31.     Vacating the Conditional Transfer Order  (CTO) in this case until the United States District Court for the District of Maryland rules upon the Motion to Remand will cause no prejudice to any party and will further the interests of judicial economy – the entire point of the MDL process.

If jurisdiction is rejected, the case leaves federal court and will fall into its allotted slot in the April 2010 mesothelioma trial group. If jurisdiction is confirmed, Plaintiffs will not oppose transfer to MDL-875 and completion of the procedures of that Court.

32.     In contrast, finalizing the CTO prior to the ruling on jurisdiction will add yet another substantial case to the already crowded docket of MDL-875. Administrative costs will be incurred and all parties will be forced to expend valuable time and resources participating in MDL-875 procedures despite the lack of confirmation of jurisdiction. Upon completion of those procedures, the case will be sent back to the transferor court – incurring yet more administrative costs and burdens – only to return to the same question pending today – whether the federal courts have jurisdiction over this matter.

### IV.     CONCLUSION

**WHEREFORE**, Plaintiffs request that the Panel vacate the conditional transfer order, without prejudice, pending decision by the United States District Court for the District of Maryland on Plaintiffs' Motion to Remand.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT - 6 2008

FILED
CLERK'S OFFICE

Respectfully submitted,

Jonathan Ruckdeschel
Federal Bar Number: 25015
Dawn P. O'Croinin
Federal Bar Number: 26902
The Ruckdeschel Law Firm, LLC
5126 Dorsey Hall Drive, Suite 201
Ellicott City, Maryland 21042
Telephone: 410.884.7825
Facsimile: 443.586.0430
ruck@rucklawfirm.com
dawn@rucklawfirm.com

## REQUEST FOR HEARING

Plaintiffs respectfully request a hearing on this motion.

Dawn P. O'Croinin

## CERTIFICATE OF SERVICE

I hereby certify that on this _2nd_ day of _October_ 2008 that a true and correct copy of

this Memorandum in Support of Motion to Vacate the Conditional Transfer Order has been served

by U.S. Mail on all counsel listed in the attached Panel Service List pursuant to Rule 5.2 of the Rules

of Procedure of the Judicial Panel on Multidistrict Litigation, FED.R.CIV.P. 5 and MDL – CTO 315.

Dawn P. O'Croinin

2008 OCT -3 P 3:35
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION
RECEIVED
CLERK'S OFFICE

14

Page 1 of 2

**IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)**                                    MDL No. 875

**PANEL SERVICE LIST (Excerpted from CTO-315)**

James Rowland Young, et al. v. AC&R Insulation Co., Inc., et al.,
D. Maryland, C.A. No. 1:08-2200

Richard Damon Albert
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036

Peter G. Angelos
LAW OFFICES OF
PETER G ANGELOS PC
One Charles Center
100 North Charles Street
22nd Floor
Baltimore, MD 21201

Thomas P. Bernier
SEGAL MCCAMBRIDGE SINGER
& MAHONEY LTD
One North Charles Street
Suite 2500
Baltimore, MD 21201

Janet W. Black
WARD BLACK PA
208 West Wendover Avenue
Greensboro, NC 27401-1307

Malcolm S. Brisker
GOODELL DEVRIES LEECH
& DANN LLP
One South Street
Alex Brown Building, 20th Floor
Baltimore, MD 21202

T. Michael Brown
BRADLEY ARANT ROSE & WHITE
1819 Fifth Avenue
Birmingham, FL 35213

Russell W. Budd
BARON & BUDD PC
3102 Oaklawn Avenue
Suite 1100
Dallas, TX 75219

John D. Cooney
COONEY & CONWAY
120 North LaSalle Street
Suite 3000
Chicago, IL 60602-2415

Donna Marcelle Crowe
BRADLEY ARANT ROSE & WHITE
1133 Connecticut Ave., N.W.
Suite 12th Fl.
Washington, DC 20036

Katherine S. Duyer
GAVETT & DATT PC
15850 Crabbs Branch Way
Suite 180
Rockville, MD 20855

Richard L. Flax
LAW OFFICES OF RICHARD L
FLAX
29 West Susquehanna Avenue
Suite 500
Baltimore, MD 21204

Kevin M. Jordan
BAKER BOTTS LLP
910 Louisiana
One Shell Plaza
Houston, TX 77002-4995

Paul Kalish
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595

Jeannie P. Kauffman
BACON THORNTON & PALMER
Capital Office Park
6411 Ivy Lane, Suite 706
Greenbelt, MD 20770-1411

Steven Kazan
KAZAN MCCLAIN ABRAMS
FERNANDEZ ET AL
171 Twelfth Street
Third Floor
Oakland, CA 94607

Peter A. Kraus
WATERS & KRAUS LLP
3219 McKinney Avenue
Suite 3000
Dallas, TX 75204

David C. Landin
HUNTON & WILLIAMS
Riverfront Plaza
East Tower
951 East Byrd Street
Richmond, VA 23219-4074

Roger B. Lane
LANE & GOSSETT
1601 Reynolds Street
Brunswick, GA 31520

Steven Andrew Luxton
MORGAN LEWIS & BOCKIUS
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004

Neil J. MacDonald
HARTEL KANE DESANTIS
MACDONALD & HOWIE LLP
Calverton Office Park
11720 Beltsville Drive
Suite 500
Beltsville, MD 20705-3166

William F. Mahoney
SEGAL MCCAMBRIDGE SINGER
& MAHONEY LTD
233 South Wacker Drive
Suite 5500
Chicago, IL 60606

**MDL No. 875 - Panel Service List (Excerpted from CTO-315) (Continued)**

Robert C. Malaby
MALABY & BRADLEY
150 Broadway
Suite 600
New York, NY 10038

John P. McShea
MCSHEA TECCE PC
Mellon Bank Center
1717 Arch Street
28th Floor
Philadelphia, PA 19103

Philip McWeeny
SCHIFF HARDIN LLP
One Market Plaza
32nd Floor
Spear Street Tower
San Francisco, CA 94105

Charles F. Mitchell
JOHN J KIRLIN INC
515 Dover Road
Suite 2100
Rockville, MD 20850

Joel D. Newport
MOORE & JACKSON LLC
305 Washington Avenue
Suite 401
Baltimore, MD 21204

Michelle Noorani
MILES & STOCKBRIDGE
10 Light Street
Baltimore, MD 21202

Dawn P. O'Croinin
RUCKDESCHEL LAW FIRM LLC
5126 Dorsey Hall Drive
Suite 201
Ellicott City, MD 21042

Thomas A. Packer
GORDON & REES LLP
Embarcadero Center West
275 Battery Street
Suite 2000
San Francisco, CA 94111

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464

Theodore F. Roberts
VENABLE LLP
210 Allegheny Avenue
Towson, MD 21285-5517

Michael P. Thornton
THORNTON & NAUMES LLP
100 Summer Street
30th Floor
Boston, MA 02110

Keith R. Truffer
ROYSTON MUELLER MCLEAN & REID
102 W. Pennsylvania Avenue
Suite 600
Towson, MD 21204

Walter G. Watkins, Jr.
FORMAN PERRY WATKINS KRUTZ & TARDY
P.O. Box 22608
Jackson, MS 39225-2608

Peter Allan Woolson
P.A. WOOLSON, PA
217 E. Redwood Street
Suite 1500
Baltimore, MD 21202

# Exhibit A

# Pathology of Asbestos-Associated Diseases

**Second Edition**

**Victor L. Roggli, MD**
Professor of Pathology, Duke University and Durham VA Medical
Centers, Durham, North Carolina
**Tim D. Oury, MD, PhD**
Assistant Professor of Pathology, University of Pittsburgh Medical
Center, Pittsburgh, Pennsylvania
**Thomas A. Sporn, MD**
Assistant Professor of Pathology, Duke University Medical Center,
Durham, North Carolina

Editors

**With 130 Illustrations in 191 Parts**

 Springer

Victor L. Roggli, MD
Professor of Pathology
Duke University and Durham
    VA Medical Centers
Durham, NC 27710
USA

Tim D. Oury, MD, PhD
Assistant Professor of Pathology
University of Pittsburgh Medical
    Center
Pittsburgh, PA 15213
USA

Thomas A. Sporn, MD
Assistant Professor of Pathology
Duke University Medical Center
Durham, NC 27710
USA

Library of Congress Cataloging-in-Publication Data
Roggli, Victor L.
    Pathology of asbestos-associated diseases / Victor L. Roggli, Tim D. Oury, Thomas
A. Sporn.—2nd ed.
    p. ; cm.
    Includes bibliographical references and index.
    ISBN 0-387-20090-8 (hard cover : alk. paper)
    1. Asbestosis—Complications—Cytopathology.   2. Asbestosis—Complications—
Cytodiagnosis.   3. Asbestos—Carcinogenicity.   4. Asbestos fibers—Analysis.
I. Oury, Tim D.   II. Sporn, Thomas A.   III. Title.
    [DNLM: 1. Asbestosis—pathology.   2. Asbestos—adverse effects.   3. Lung
Neoplasms—pathology.   4. Mesothelioma—pathology.   5. Pleural Diseases—
pathology. WF 654 R733p 2003]
RC775.A8R64 2003
616.2'44—dc22                                                              2003056816

First edition © 1992 Little, Brown and Company, Boston/Toronto/London.

ISBN 0-387-20090-8              Printed on acid-free paper.

© 2004 Springer Science+Business Media, Inc.
All rights reserved. This work may not be translated or copied in whole or in part without the
written permission of the publisher (Springer Science+Business Media, Inc., 233 Spring Street,
New York, NY 10013, USA), except for brief excerpts in connection with reviews or scholarly
analysis. Use in connection with any form of information storage and retrieval, electronic
adaptation, computer software, or by similar or dissimilar methodology now know or hereafter
developed is forbidden.
The use in this publication of trade names, trademarks, service marks and similar terms, even if
the are not identified as such, is not to be taken as an expression of opinion as to whether or not
they are subject to proprietary rights.

Printed in the United States of America.        (BS/MVY)

9 8 7 6 5 4 3 2

springeronline.com

:tastasize to the
enotype should

i are distinctly
i the literature
These tumors
ly encasing the
y present with
:companied by
onstriction, or
ardiac enlarge-
in anterior pre-
: imaging may
and extent of

has shown a
natoid variants
ultrastructural



encasement by

studies have only rarely been described,[290,291,294] but these tumors appear morphologically identical to their pleural and peritoneal counterparts. Pericardial mesotheliomas must be distinguished from the much more common carcinoma directly extending into or metastatic to the epicardium or pericardium.[295,296] In addition, pleural mesotheliomas may also directly extend into and invade the contiguous pericardium, further complicating the diagnosis of primary pericardial mesothelioma.[19] The so-called mesothelioma of the atrioventricular node is a benign tumor not derived from mesothelium at all, but from endoderm.[2,297–299] An exposure to asbestos has been established in several patients suffering from pericardial mesothelioma.[300–303]

## Treatment and Prognosis

The prognosis of malignant (diffuse) mesothelioma is poor. In most series, a median survival between 4 and 18 months is expected for the pleural forms.[304–311] Death typically results from respiratory failure or infection, but involvement of the heart and transdiaphragmatic involvement of abdominal viscera may also contribute to mortality.[312,313] Physicians experienced in treating mesothelioma will report occasional patients with significantly greater longevity following treatment. Consequently, a limited set of prognostic factors has been derived to predict outcome and to identify those patients most likely to receive benefit from radical treatment regimens. Numerous studies evaluating clinical prognostic factors have been reported over the past 20 years, identifying the importance of age, sex, performance status, weight loss, chest pain and clinical stage.[304] Conflicting data have been reported due in part to variances in disease staging, therapies given, assessment of response, and enrollment eligibility.

The issue of clinical stage as a prognosticator is particularly problematic. Surprisingly, several studies found stage not to be an important prognostic factor.[304] This may be related to the necessity for exploratory and cytoreductive surgery to fulfill all staging descriptors. Such criteria have not been fulfilled for most patients with mesothelioma, even at centers with special expertise in treatment and management of this disease. Thus, most historical staging data are only approximate. The prognostic scoring systems of the Cancer and Leukemia Group (CALGB) and European Organization for the Research and Treatment of Cancer (EORTC) have been applied to large numbers of patients with mesothelioma.[310,311] These distinct scoring systems have identified poor prognostic indicators which include nonepithelial subtype, male gender, poor performance status, and hematologic parameters of low hemoglobin, high leukocyte and platelet counts and high serum lactic dehydrogenase (LDH).[311] In a retrospective review of 121 cases of malignant pleural mesothelioma, univariate analysis demonstrated lower rates of survival in patients with poor performance status and nonepithelial histologic subtypes, and found that any form of treatment beyond supportive care led to longer survival.[314]

# Exhibit B





CHARLES BACARISSE
District Clerk

SEP 0 6 2006

Harris County, Texas
By_____ Deputy

## JUDGE MARK DAVIDSON

201 Caroline, 9th Floor
Houston, Texas  77002

(713) 368-6020
FAX (713) 368-4317

September 5, 2006

Re:   Austin Richards, et ux. v. Carver Pump Company, et al; Cause no. 2006-22,116

Dear Counsel:

The court has carefully considered the Defendants' Motion for Dismissal for Forum Non Conveniens in the above case.  Because this is not the last of these motions I will be asked to determine, I am stating my reasons as a guide to the attorneys representing clients in other asbestos cases.

All counsel are familiar with the fact that shortly after I became the MDL Judge assigned to hear asbestos cases, I issued a ruling in the *Pomeranky* case which bemoaned my inability to dismiss cases on grounds of forum non conveniens based on the language of Section 71.051 of the Civil Practices and Remedies Code.  After that ruling, the language of the statute was amended to significantly broaden the discretion of Texas trial courts.  To my knowledge, this is the first time I have been asked to exercise the powers given trial judges under the amended statute.

The facts in this case are, if anything, more compelling than those in *Pomranky*. There is absolutely no connection between the State of Texas and any element of negligence, causation or damages.  It is apparently undisputed that the Plaintiff spent his entire life, was exposed to asbestos, was diagnosed with mesothelioma and, in all probability, will die in the state of Maine.  All of his co-worker witnesses, treating physicians and family members live in Maine.  Based on these facts, I have struggled with any way any attorney could argue with a straight face that the case belongs in Texas.

Then I reread the language of the new statute.  Section 71.051(b) states:

If a court of this state, on written motion of a party, finds that *in the interest of justice* and for the convenience of the parties a claim or action to which

this section applies would be more properly heard in a forum outside of this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall dismiss the claim or action... (italics added)

Plaintiffs claimed in argument before the court that if the case is refiled in Maine, it will immediately be removed to Federal Court, and from there transferred to the Federal MDL. What will happen to the cases there? Apparently, the judge will not give the plaintiff an opportunity to have his case heard before his death. The judge will attempt to get the case to settle. When and if the case is remanded, there will have been little, if any, judicial decision making performed that will assist the trial court. It will sit in this court, if it does not settle, for several years before it is remanded. The case will then go to the end of the docket in the federal court to which it is assigned. This isn't just what I have been able to find out from conferring with federal judges around the nation – this is what the Judge D. Brock Hornby, Chief Judge of the Federal Courts of the District of Maine, wrote in *In re Maine Asbestos Cases*. 44 F.Supp.2d 368 (D. Me. 1999).

The Federal MDL is located in Pennsylvania. Therefore, my ruling on this motion will not decide whether the case will go to Texas or Maine. If it were, my ruling would be different. This ruling will decide whether Texas or Pennsylvania will be the forum of the case. If it is the Federal Court of Pennsylvania, it is certain that Mr. Richards will not be alive to have his day in court, and will die without knowing whether or not his widow will get a recovery from this case. A system of justice that would mandate such a result has nothing to do with the concept of justice.

My ruling on this motion might well have been different if the Defendants had assured me that no effort would have been made to remove this case to Federal Court. The Defendants were quite forthcoming that they would not waive their removal rights. Since they did not, I am unable to conclude that it is in the interests of justice to decline to accept jurisdiction over this case. I will therefore deny the motion.

I must admit that I did not think this would be the ruling I would make on the first Forum Non Conveniens motion I heard under the new statute. I am aware that under new leadership, the Federal MDL is beginning to try to devise a system that makes it less of a "black hole" than is has been in the past. My ruling on the next such motion I get will be different if the Federal MDL becomes a pre-trial court, as opposed to a settlement court. Even if it does not improve, my next ruling may be different if a waiver of removal to federal court is offered by Defendants.

I will sign an order denying the motion, so that any party wishing may initiate appellate review.

Respectfully submitted,

MARK DAVIDSON

# Exhibit C

# ASBESTOS MEDICINE
# SEMINAR

**DRI**™
The Voice of the Defense Bar



This year's DRI Asbestos Medicine Seminar offers the latest medical and legal developments in the field, taught by an experienced faculty of physicians and attorneys. Medical experts will provide up-to-date information on various types of mesotheliomas, disease detection and diagnosis. A practical analysis of causation, including recent decisions affecting exposure and cause will be covered. Strategies for defending the "other cancers" and the importance of the 2006 Institute of Medicine study will be discussed. Learn more about the potential liability of equipment manufacturers and premises owners. Hear about the latest industrial hygiene technology and its impact on litigation. Strategize with some of the finest, most experienced litigators in this field. Please join us in San Diego and take advantage of this unique networking and learning opportunity.

ALBERT H. PARNELL

*Program Chair and Law Institute*

### What You Will Learn

- Latest developments in asbestos litigation
- Update on MDL 875 and its future impact
- Recent court decisions affecting causation
- Review of disease diagnosis and causation evidence
- Warning issues for premises owners
- Latest methods for defending "low dose" products
- Strategies for defending screened cases
- Defending the "other cancers" on the science

*Asbestos Medicine Seminar*

## WEDNESDAY, NOVEMBER 7, 2007

6:00 p.m.    REGISTRATION AND NETWORKING RECEPTION

## THURSDAY, NOVEMBER 8, 2007

CAPPUCCINO BAR

*Sponsored by*



INTERNET CAFÉ

*Sponsored by*  **McCaffery & Associates, Inc.**
Historical Research

7:30 a.m.    REGISTRATION AND CONTINENTAL BREAKFAST

8:15 a.m.    WELCOME AND INTRODUCTION
ALBERT H. PARNELL, *Hawkins & Parnell LLP*, Atlanta, Georgia

8:25 a.m.    MDL 875: NAVIGATING THE BLACK HOLE — ITS FUTURE AND
RAMIFICATIONS FOR STATE COURTS
Hear about the current role of the MDL and its projected
impact on existing and future cases.
DAVID CRAIG LANDIN, *Hunton & Williams LLP*, Richmond,
Virginia

9:00 a.m.    SPREADING THE WEALTH BY SHARING THE RESPONSIBILITY
Many states now permit the submission of non-parties,
including bankrupt companies and employers, to the jury for
apportionment of responsibility. This section will provide ideas
for broadly spreading responsibility, thereby reducing the
"share" of trial defendants.
T. LYNN WALDEN, *Jenkins & Martin LLP*, Beaumont, Texas

9:40 a.m.    THE CHANGING WORLD OF CAUSATION — RECENT DECISIONS
AND TRENDS AFFECTING EXPOSURE AND CAUSE
Courts around the country are tackling, as though for the first
time, these questions: Is there evidence of sufficient exposure to
asbestos to be the cause of plaintiff's injuries? Do friction
products alone release enough respirable fibers to be the cause
of plaintiff's injury? Is asbestos exposure without asbestosis
sufficient to be a cause of lung cancer in a plaintiff who smoked
cigarettes? How much exposure is required to support the
"substantial factor" standard for causation?
SANDRA F. CLARK, *Mehaffy Weber PC*, Beaumont, Texas

10:15 a.m.   REFRESHMENT BREAK
*Sponsored by* **EXponent®**

*November 8–9, 2007*

**10:35 a.m.**   TEXAS'S ASBESTOS MDL — THE FIRST THREE YEARS AND COMING ATTRACTIONS

The Texas Asbestos MDL is a unique system of administration of cases and is quite different from what its initial proponents and opponents envisioned. Judge Davidson will discuss developments to date and make predictions on upcoming issues.

HONORABLE MARK DAVIDSON, *11th District Court of Texas*, Houston, Texas

**11:15 a.m.**   PERITONEAL MESOTHELIOMA — AN UPDATE

Learn the latest in the field from an experienced medical expert.

VICTOR L. ROGGLI, M.D., *Duke University Medical Center*, Durham, North Carolina

**11:55 a.m.**   LUNCH *(on your own)*

**11:55 a.m.**   WOMEN'S NETWORKING LUNCHEON *(included in registration)*

*Sponsored by* **Segal McCambridge** Segal McCambridge Singer & Mahoney

**1:20 p.m.**   POTENTIAL LIABILITY OF EQUIPMENT MANUFACTURERS FOR POST-SALE APPLICATION OF ASBESTOS-CONTAINING INSULATION AND OTHER PRODUCTS NOT SUPPLIED OR SPECIFIED BY THE EQUIPMENT MANUFACTURER

There is developing case law on product liability, forseeability and duty to warn, most of which, from a defense perspective, is going in the wrong direction. If plaintiffs win on this issue, it eliminates or severely hinders the state of the art, low dose and chrysotile defenses, as equipment manufacturers will be called upon to defend the insulation product.

GEORGE F. FITZPATRICK, JR., *Swanson Martin & Bell*, Chicago, Illinois

**1:55 p.m.**   THE CURRENT STATUS OF THE POTENTIAL LIABILITY OF PREMISES OWNERS AND OTHER WARNING AND NO WARNING ISSUES AND POTENTIAL DEFENSES

The world of the premises owner constantly changes, along with various warning issues. Additionally, equipment manufacturers are now subject to claims for a duty to warn of another manufacturer's products. Mr. Mesher will discuss these topics.

BARRY N. MESHER, *Lane Powell PC*, Seattle, Washington

**2:35 p.m.**   A PRACTICAL REVIEW OF DISEASE DIAGNOSIS AND CAUSATION EVIDENCE IN ASBESTOS LITIGATION

The methods and analytical techniques utilized in diagnosing disease and determining potential causative agents will be reviewed. The use of fiber burden studies, new advanced staining techniques, basic pathology analysis and clinical correlation will be discussed. The importance of fully developed medical and occupational history for evaluating and presenting legal challenges to expert opinions will be stressed.

EDWARD M. SLAUGHTER, *Hawkins Parnell & Thackston LLP*, Dallas, Texas

*Asbestos Medicine Seminar*

| | |
|---|---|
| 3:15 p.m. | THE INDUSTRIAL HYGIENE WORLD AND ASBESTOS LITIGATION |
| | Dr. Toca will discuss various aspects of current industrial hygiene technology and its potential impact on modern asbestos litigation. |
| | FREDRICK M. TOCA, PH.D., CIH, CSP, *Atlantic Environmental Inc.*, Atlanta, Georgia |

| | |
|---|---|
| 4:00 p.m. | REFRESHMENT BREAK |
| | *Sponsored by* **EX̽ponent°** |

**BREAKOUT SESSIONS**

*(All breakout sessions are limited to defense lawyers and their clients only. Plaintiffs' lawyers are invited to meet elsewhere on their own.)*

| | |
|---|---|
| 4:20 p.m. | BREAKOUT A: THE LOW DOSE STORY *(1 hour)* |
| | **Moderator** |
| | JOHN J. KUROWSKI, *Kurowski Bailey & Shultz LLC*, Swansea, Illinois |
| | BREAKOUT B: NEW PLAINTIFF AND PRODUCT INVESTIGATION — FOR THE NOVICE, THE EXPERIENCED AND EVERYONE ELSE *(1 hour)* |
| | **Moderator** |
| | EVELYN MCREE FLETCHER, *Hawkins & Parnell LLP*, Atlanta, Georgia |
| | **Panelists** |
| | JOHAN D. FLYNN, *DeHay & Elliston LLP*, Baltimore, Maryland |
| | CATHERINE E. BOYD GOLDHABER, *Segal McCambridge Singer & Mahoney Ltd.*, Chicago, Illinois |
| | MARK K. HSU, *Kasowitz Benson Torres & Friedman LLP*, New York, New York |
| | BREAKOUT C: HISTORICAL PERSPECTIVE — GREAT MOMENTS IN ASBESTOS LITIGATION *(2 hours)* |
| | **Moderators** |
| | JAMES H. CROSBY, *Crosby Saad LLC*, Mobile, Alabama |
| | MICHAEL E. HUTCHINS, *Kasowitz Benson Torres & Friedman LLP*, Atlanta, Georgia |
| | ALBERT H. PARNELL, *Hawkins & Parnell LLP*, Atlanta, Georgia |

| | |
|---|---|
| 5:20 p.m. | BREAKOUT D: HOT TOPICS *(1 hour)* |
| | DAVID CRAIG LANDIN, *Hunton & Williams LLP*, Richmond, Virginia |
| | BREAKOUT E: BEST ASBESTOS JURY SELECTION IDEAS OF THE CENTURY *(1 hour)* |
| | **Moderator** |
| | ANGELA L. ABEL, *DecisionQuest*, Atlanta, Georgia |

| | |
|---|---|
| 6:20 p.m. | ADJOURN |

| | |
|---|---|
| 6:30 p.m. | NETWORKING RECEPTION |
| | *Sponsored by* **HAWKINS & PARNELL, LLP** |
| | *and* **NAVIGANT** CONSULTING |

*November 8–9, 2007*

## FRIDAY, NOVEMBER 9, 2007

CAPPUCCINO BAR

*Sponsored by*



INTERNET CAFÉ

*Sponsored by* **McCaffery & Associates, Inc.**
*Historical Research*

| | |
|---|---|
| 7:30 a.m. | REGISTRATION AND CONTINENTAL BREAKFAST |
| 8:15 a.m. | ANNOUNCEMENTS |
| | ALBERT H. PARNELL, *Hawkins & Parnell LLP*, Atlanta, Georgia |
| | MICHAEL E. HUTCHINS, *Kasowitz Benson Torres & Friedman LLP*, Atlanta, Georgia |
| 8:20 a.m. | YOU BET YOUR (ETHICAL) LIFE |
| | Legal ethics in asbestos litigation will be examined in the context of a series of game show questions, answers and hypotheticals. |
| | DOUGLAS R. ELLIOTT, *Deutsch Kerrigan & Stiles LLP*, New Orleans, Louisiana |
| | JANET L. MacDONELL, *Deutsch Kerrigan & Stiles LLP*, New Orleans, Louisiana |
| 9:20 a.m. | BURNING PLAINTIFFS' STRAW MAN — PREPARING YOUR PMK WITNESS |
| | Learn ways to deal with plaintiffs' strategy of making your corporate rep look bad with collateral "Notice of Asbestos Hazard Document" versus official interrogatory answers on notice. |
| | JOHN M. FITZPATRICK, *Wheeler Trigg Kennedy LLP*, Denver, Colorado |
| 10:00 a.m. | REFRESHMENT BREAK |
| | *Sponsored by* **J&M** Jenkins & Martin, L.L.P. |
| 10:20 a.m. | COMPLEX MEDICAL ANALYSIS — THERE ARE NO 'ROUTINE' CASES |
| | Clinical, radiological, pathological and DNA findings in challenging asbestos cases will be covered. |
| | I. ALLAN FEINGOLD, M.D., FRCP(C), FCCP, *South Miami Hospital*, Miami, Florida |
| 11:20 a.m. | ROUND CELL MESOTHELIOMAS WITH AN EMPHASIS ON DECIDUOID MESOTHELIOMAS |
| | SAMUEL P. HAMMAR, M.D., *Diagnostic Specialties Laboratory*, Bremerton, Washington |
| 12:00 p.m. | LUNCH *(on your own)* |

*Asbestos Medicine Seminar*

| | |
|---|---|
| 1:20 p.m. | SUBSTANTIAL CONTRIBUTING FACTOR AND MESOTHELIOMA — HOW TO DEFEAT PLAINTIFFS' ARGUMENT THAT EVERY EXPOSURE CONTRIBUTES |
| | *Learn ways to defeat plaintiffs' argument that every exposure contributes.* |
| | BRUCE T. BISHOP, *Willcox & Savage PC*, Norfolk, Virginia |
| 2:00 p.m. | THE NEXT STEPS IN DEFENDING SCREENED CASES |
| | Discussion of (1) suspect companies/physicians and how these cases still appear in various jurisdictions, as well as how to conduct discovery and proceed, once a suspect company/physician is identified; (2) Impairment and positive rates in screenings versus literature; and (3) defense strategies to uncover and defend against still active screening processes. |
| | ANDREW L. KALISH, *Socha Perczak Setter & Anderson PC*, Denver, Colorado |
| 2:35 p.m. | THE EPIDEMIOLOGY OF THE "OTHER CANCERS" — A REVIEW OF THE IOM/NIH STUDY |
| | The association and causal connection between asbestos exposure and gastrointestinal, colorectal, esophogeal, laryngeal and pharyngeal malignancies has remained controversial, despite continuing medical and scientific interest in this subject. The vital 2006 IOM study and recent literature on these malignancies will be explored. |
| | JOHN A. LaBOON, *Segal McCambridge Singer & Mahoney Ltd.*, Austin, Texas |
| 3:15 p.m. | REFRESHMENT BREAK |
| | *Sponsored by* **J&M** Jenkins & Martin, L.L.P. |
| 3:35 p.m. | DEFENDING THE "OTHER CANCERS" ON THE SCIENCE |
| | Building on the previous session, this presentation will discuss the tools necessary to defend these cases at pretrial, *Daubert* and *Frye* hearings and at trial, on the medicine and science, using the 2006 IOM/NIH study, recent literature and other trial tactics. |
| | JOHN J. KUROWSKI, *Kurowski Bailey & Shultz LLC*, Swansea, Illinois |
| 4:15 p.m. | TRIAL PANEL—"OTHER CANCERS," LOW DOSE, CROSS EXAMINATION AND EXPERTS |
| | **Moderator** |
| | ALBERT H. PARNELL, *Hawkins & Parnell LLP*, Atlanta, Georgia |
| | **Panelists** |
| | BRUCE T. BISHOP, *Willcox & Savage PC*, Norfolk, Virginia |
| | SANDRA F. CLARK, *Mehaffy Weber PC*, Beaumont, Texas |
| | JOHN M. FITZPATRICK, *Wheeler Trigg Kennedy LLP*, Denver, Colorado |
| | JOHN J. KUROWSKI, *Kurowski Bailey & Shultz LLC*, Swansea, Illinois |
| | T. LYNN WALDEN, *Jenkins & Martin LLP*, Beaumont, Texas |
| 5:00 p.m. | ADJOURN |

*November 8–9, 2007*

## GENERAL INFORMATION

### CLE Accreditation

This seminar has been approved for MCLE credit by the State Bar of California in the amount of **14.5** hours, including **1** hour of ethics credit. Accreditation has been requested from every state with mandatory continuing legal education (CLE) requirements. Certificates of attendance will be provided to each attendee. Attendees are responsible for obtaining CLE credits from their respective states. Credit availability and requirements vary from state to state; please check our website at **www.dri.org** for credit information for your state.

### Registration

The registration fee is **$645** for members and those who join DRI when registering and **$775** for non-members. The registration fee includes CD-ROM course materials, continental breakfasts, women's networking luncheon, refreshment breaks and networking receptions. If you wish to have your name appear on the registration list distributed at the conference and receive the CD-ROM course materials in advance, DRI must receive your registration by **October 19, 2007** *(please allow 10 days for processing)*. Registrations received after **October 19, 2007**, will be processed on-site

### Special Discounts

The first and second registrations from the same firm or company are subject to the fees outlined above. The registration fee for additional registrants from the same firm or company is **$595**, regardless of membership status. All registrations must be received at the same time to receive the discount.

### Refund Policy

The registration fee is fully refundable for cancellations received on or before **October 19, 2007**. Cancellations received after **October 19** and on or before **October 26, 2007**, will receive a refund, less a $50 processing fee. Cancellations made after **October 26** will not receive a refund, but the course materials on CD-ROM and a $100 certificate good for any DRI seminar within the next 12 months will be issued. All cancellations and requests for refunds must be made in writing. Fax to DRI's Accounting Department at 312.795.0747. All refunds will be mailed within four weeks after the date of the conference. Substitutions may be made at any time without charge and must be submitted in writing.

### Course Materials

In order to better serve and satisfy the numerous requests from our membership, DRI will mail the course materials to all registrants in CD-ROM format 12 days in advance of the seminar. You can order additional copies by checking the appropriate box on the registration form on the back of this brochure or ordering online at **www.dri.org**.

*Sponsored by*  **HENJUM GOUCHER**
*Reporting Services*

*Asbestos Medicine Seminar*

## Supplemental Materials

Recommended supplemental material for this seminar is ***Exploring Toxic Tort and Environmental Liability Claims*** from DRI's Defense Library Series. Order your copy by checking the appropriate box on the registration form on the back of this brochure. You can also view the entire list of DRI publications offerings and make purchases online at **www.dri.org**.

## Hotel Accommodations

A limited number of discounted hotel rooms have been made available at the **San Diego Marriott, 33 West Harbor Drive, San Diego, California 92101**. For reservations, **contact the hotel directly at 619.234.1500.** Please mention DRI's Asbestos Medicine Seminar to take advantage of the group rate of **$245 Cityview Single/$265 Bayview Double**. The hotel block is limited and rooms and rates are available on a first-come, first-served basis. You must make reservations by **October 10, 2007**, to be eligible for the group rate. Requests for reservations made after **October 10** are subject to room and rate availability.

## Travel Discounts

DRI offers discounted meeting fares on various major air carriers for **DRI's Asbestos Medicine Seminar** attendees. To receive these discounts, please contact Hobson Travel Ltd., DRI's official travel provider at 800.538.7464. As always, to obtain the lowest available fares, early booking is recommended.

The taping or recording of DRI seminars is prohibited without the written permission of DRI.

Speakers and times may be subject to last-minute changes.

DRI policy provides there will be no group functions sponsored by others in connection with its seminars.

## **.DRI**™

DRI is the international membership organization of all lawyers involved in the defense of civil litigation. As such, DRI wishes to express its strong commitment to the goal of diversity in its membership. Our member attorneys conduct business throughout the United States and around the world, and DRI values highly the perspectives and varied experiences that are found only in a diverse membership. The promotion and retention of a diverse membership is essential to the success of our organization as a whole as well as our respective professional pursuits. Diversity brings to our organization a broader and richer environment, which produces creative thinking and solutions. As such, DRI embraces and encourages diversity in all aspects of its activities. DRI is committed to creating and maintaining a culture that supports and promotes diversity in its organization.

*November 8–9, 2007*

## FACULTY

ANGELA L. ABEL is a vice president at DecisionQuest in its Atlanta office. She specializes in the development of litigation communication strategies. Ms. Abel has experience in more than 800 cases of diverse practice areas including intellectual properties, toxic tort, products liability, construction and personal injury litigation.

BRUCE T. BISHOP is a member of Willcox & Savage PC in Norfolk, Virginia. Since 1977, Mr. Bishop has focused on toxic tort and environmental litigation. He has extensive trial experience in state and federal courts throughout the U.S. in the defense of toxic torts/products liability claims. Mr. Bishop has also developed a nationwide reputation for his work with medical and state-of-the-art issues associated with toxic tort litigation.

SANDRA F. CLARK, a shareholder of MehaffyWeber PC practices out of the firm's Beaumont and Houston offices. She has tried more than 25 major toxic tort cases to verdict and has been involved in the successful defense of many others. Ms. Clark is a member of the Texas Asbestos MDL Liaison Committee, the Houston Chapter of ABOTA, the Advisory Committee for Personal Injury for the Texas Board of Legal Specialization, Texas Bar Foundation, FDCC, Products Liability Advisory Council and the Michelle F. Mehaffy Inn of Court.

JAMES H. CROSBY is a member of Crosby Saad LLC in Mobile, Alabama. His principal areas of practice include corporate law, corporate defense, products liability, toxic torts, litigation limitation, litigation management and insurance coverage.

THE HONORABLE MARK DAVIDSON serves as judge of the 11th District Court of Texas in Houston. He has tried more than 400 jury trials. Named as the first Multi District Litigation Judge in Texas, he was assigned to hear all pre-trial matters in all Texas asbestos cases filed in the state after September 2003. In 2005, his mandate was expanded to include all 58,000 asbestos cases pending in Texas. Judge Davidson has developed procedures that has led to the trial and disposition of many cases and has broken ground in rulings on *Daubert* challenges to scientific evidence.

DOUGLAS R. ELLIOTT is a partner with Deutsch Kerrigan & Stiles LLP in New Orleans. His practice focuses on civil litigation, product liability, insurance defense, mass torts, toxic torts and criminal law.

I. ALLAN FEINGOLD, M.D., FRCP(C), FCCP, is chief of the Division of Pulmonary Medicine of South Miami Hospital in Miami, Florida. Dr. Feingold is a fellow of the Royal College of Physicians (Internal Medicine), board certified in Internal Medicine and Pulmonary Medicine by the American Board of Internal Medicine and a certified NIOSH B Reader.

GEORGE F. FITZPATRICK, JR., is the founding partner of Swanson Martin & Bell in Chicago. For 20 years, Mr. Fitzpatrick has served as national coordinating counsel in asbestos litigation for numerous defendants, including pump, valve and other equipment manufactures, brake manufacturers and users, and premises owners. He has successfully argued two appeals of significance to equipment manufacturer defendants in asbestos litigation. He is a member of DRI and the National Forum for Environmental and Toxic Tort Issues.

*Asbestos Medicine Seminar*

JOHN M. FITZPATRICK, a partner in Wheeler Trigg Kennedy LLP in Denver, handles high exposure cases for national clients, including product defects in asbestos (GE, Foster Wheeler and Velan), aviation (Global Aerospace), equipment (MTD), chemical release (Air Products) and medical devices (LabCorp). His primary focus during the last few years has involved high exposure claims due to product defects or general negligence claims. Mr. Fitzpatrick has tried in excess of 150 cases to verdict in 22 states and obtained defense verdicts in more than 140 cases.

EVELYN MCREE FLETCHER is a partner at Hawkins & Parnell LLP in its Atlanta office. Ms. Fletcher has served as national and local counsel for numerous companies involved in product liability, asbestos and silica litigation. She is a board member of the Atlanta Council of Younger Lawyers and a member of the Atlanta Bar Association, DRI and the Georgia Defense Lawyers Association.

JOHAN D. FLYNN is an attorney in the firm of DeHay & Elliston LLP in Baltimore. His practice focuses on litigation, insurance defense, products liability, asbestos litigation and mass torts.

CATHERINE E. BOYD GOLDHABER is an attorney at Segal McCambridge Singer & Mahoney Ltd. in Chicago. Her areas of concentration include litigation, toxic torts, products liability, child welfare, juvenile law and general liability.

SAMUEL P. HAMMAR, M.D., is the director of Diagnostic Specialties Laboratory in Bremerton, Washington. He is board-certified in anatomic and clinical pathology and specializes in lung disease, cancer and diagnostic techniques used to investigate cancer. For the past 18 years, Dr. Hammar has been primarily interested in asbestos-related disease, especially mesothelioma. He has done extensive research on asbestos-related lung disease in conjunction with Dr. Ronald F. Dodson and sees asbestos-induced lung disease on a regular basis as a pathologist.

MARK K. HSU is special counsel at the New York City office of Kasowitz Benson Torres & Friedman LLP. Mr. Hsu focuses his practice on products liability and commercial litigation.

MICHAEL E. HUTCHINS is a partner at Kasowitz Benson Torres & Friedman LLP in Atlanta. Mr. Hutchins focuses his practice on environmental litigation, products liability, commercial cases and general civil litigation. He has handled asbestos and toxic tort litigation throughout the U.S. for the past 18 years.

ANDREW L. KALISH is an attorney at the law firm of Socha Perczak Setter & Anderson PC in Denver. His practice areas include complex and multi-district litigation, products liability and mass torts.

JOHN J. KUROWSKI is the managing partner of Kurowski Bailey & Shultz LLC in Swansea, Illinois. He specializes in complex civil litigation with an emphasis in asbestos and toxic tort. Mr. Kurowski has defended asbestos litigation for more than 20 years. He serves as national coordinating and trial counsel for several asbestos litigation clients, as well as local counsel for several companies in Madison County, Illinois, and the St. Louis area.

JOHN A. LABOON is a partner at Segal McCambridge Singer & Mahoney Ltd. in Austin, Texas. Since 1993, Mr. LaBoon has focused on tort defense litigation with an emphasis in asbestos and silica litigation involving products liability, contractor liability and premises liability claims. In asbestos and silica cases, he has represented numerous manufacturers, an international premises owner and a major construction contractor. Mr. LaBoon has served on local, regional and national trial teams for defendants in asbestos litigation.

DAVID CRAIG LANDIN is a partner in the Litigation, Intellectual Property and Antitrust team at Hunton & Williams LLP in Richmond, Virginia. Mr. Landin has served as national coordinating and trial counsel in a variety of litigation settings. He is a past president of the Virginia Bar Association.

JANET L. MACDONELL was a partner at Deutsch Kerrigan & Stiles LLP in New Orleans until 2004, when she semi-retired. She works, on a limited basis, coordinating litigation nationwide for a client and assisting in complicated cases upon request. Her expertise is in defense of long-term exposure, latent disease cases, medical device, environmental and products liability claims. Ms. MacDonell has extensive experience working with medical experts.

BARRY N. MESHER is a partner in the law firm of Lane Powell PC in Seattle. He has been involved in multiple toxic tort and environmental litigation cases for more than 25 years and serves as national coordinating counsel, regional coordinating counsel and local counsel for a number of asbestos litigation clients. Mr. Mesher is a member of the firm's London, Insurance and Toxic Tort Practice Groups and a member of DRI, the American College of Law and Medicine and Washington Defense Trial Lawyers Association.

ALBERT H. PARNELL is a trial lawyer and partner in Hawkins & Parnell LLP in Atlanta, Georgia, and Charleston, West Virginia, and a partner in the Dallas office of Hawkins Parnell & Thackston LLP. Mr. Parnell is a founding and current member of DRI's Law Institute and a former member of the DRI Board of Directors. He has tried more than 250 lawsuits to jury verdict in more than 25 states.

VICTOR L. ROGGLI, M.D., is a professor of pathology at the Duke University Medical Center in Durham, North Carolina, and the director of the Electron Microscopy Laboratory at the Durham Veterans Administration Medical Center. His research interests include pneumoconioses, asbestos-related diseases and analytical electron microscopy. Dr. Roggli has published more than 140 articles and 26 chapters in textbooks. He has also written four books, including *Microprobe Analysis in Medicine, Biomedical Applications of Microprobe Analysis,* and *Pathology of Asbestos-Associated Diseases,* 1st and 2nd editions.

EDWARD M. SLAUGHTER, a partner in Hawkins Parnell & Thackston LLP in Dallas, focuses his practice in the areas of product liability and toxic tort litigation. Mr. Slaughter has extensive experience in litigation involving asbestos, paints and solvents, pesticides and other chemicals.

FREDRICK M. TOCA, PH.D., CIH, CSP, is an industrial hygienist for Atlantic Environmental Inc. in Atlanta, Georgia. Dr. Toca has more than 20 years of experience managing programs and acting as the principal technical specialist in industrial hygiene, occupational safety and environmental sciences. He is the former director of Occupational Safety & Health for Hoechst Celanese, the former director of Industrial Hygiene Safety & Compliance for USX Corporation and the former manager of Environmental Protection for General Electric Co., Plastics Division. Dr. Toca is a past president of the AIHA.

T. LYNN WALDEN is a partner at Jenkins & Martin LLP in Beaumont, Texas. Mr. Walden's practice is focused upon asbestos defense, toxic torts, medical malpractice and pharmaceutical litigation. He has extensive jury trial experience from his 16 years of practice. He has served as trial counsel for Bondex International for the last three years. Since 2004, he has been involved in numerous asbestos trials, including representation as lead trial counsel for his clients, resulting in eight verdicts in mesothelioma cases.

*Asbestos Medicine Seminar*

| 2007 DRI SEMINAR SCHEDULE | |
|---|---|
| September 6–7 | STRICTLY AUTOMOTIVE<br>*Hotel del Coronado*, San Diego, CA |
| September 6–7 | CONSTRUCTION LAW<br>*The Westin Kierland*, Scottsdale, AZ |
| September 27–28 | NURSING HOME/ALF LITIGATION<br>*Bellagio*, Las Vegas, NV |
| September 27–29 | PREEMINENT LAWYERS — SUPERSTARS OF TRIAL<br>*The Westin Michigan Avenue*, Chicago, IL |
| October 10–14 | DRI ANNUAL MEETING<br>*Marriott Wardman Park*, Washington, DC |
| November 1–2 | COMPLEX COMMERCIAL LITIGATION<br>*JW Marriott Desert Ridge*, Phoenix, AZ |
| November 1–2 | FIRE AND CASUALTY<br>*The Westin Chicago River North*, Chicago, IL |
| November 8–9 | ASBESTOS MEDICINE<br>*San Diego Marriott*, San Diego, CA |
| December 13–14 | INSURANCE COVERAGE AND PRACTICE<br>*Sheraton New York Hotel and Towers*, New York, NY |

| 2008 DRI SEMINAR SCHEDULE | |
|---|---|
| January 24–25 | CIVIL RIGHTS AND GOVERNMENTAL TORT LIABILITY<br>*Hyatt Regency*, Scottsdale, AZ |
| February 6–8 | PRODUCT LIABILITY CONFERENCE<br>*Arizona Biltmore*, Phoenix, AZ |
| February 28–29 | APPELLATE ADVOCACY<br>*Eden Roc*, Miami Beach, FL |
| February 28–29 | TOXIC TORTS AND ENVIRONMENTAL LAW<br>*The Ritz-Carlton New Orleans*, New Orleans, LA |
| March 12–14 | MEDICAL LIABILITY AND HEALTH CARE LAW<br>*Hotel Inter-Continental*, San Francisco, CA |
| March 27–28 | DAMAGES<br>*Caesars Palace*, Las Vegas, NV |
| April 10–11 | INSURANCE COVERAGE AND CLAIMS<br>*The Drake Hotel*, Chicago, IL |
| April 17–18 | TRUCKING LAW<br>*Pointe Hilton Tapatio Cliffs*, Phoenix, AZ |
| April 23–25 | LIFE, HEALTH, DISABILITY AND ERISA CLAIMS<br>*Hotel Inter-Continental*, San Francisco, CA |
| May 1–2 | DRUG AND MEDICAL DEVICE LITIGATION<br>*Sheraton New Orleans*, New Orleans, LA |
| May 15–16 | ELECTRONIC DISCOVERY<br>*Renaissance Washington, DC Hotel*, Washington, DC |
| May 15–16 | EMPLOYMENT LAW<br>*Renaissance Chicago Hotel*, Chicago, IL |

**Join DRI now and register at the member rate—a $130 savings!**

## DRI™ MEMBERSHIP APPLICATION

*This application/registration form for first-time members only—all other registrants please use reverse side.*

**Member Category**

- ☐ Defense Attorney — $225 USD/year
- ☐ Government Attorney — $160 USD/year
- ☐ Young Lawyer* — $130 USD/year *(admitted to the Bar for 5 years or less)*
- ☐ Law Student — $20 USD/year

☐ Male   ☐ Female

DATE OF BIRTH (MONTH/DAY/YEAR)

NAME

NAME AS YOU WOULD LIKE IT TO APPEAR ON BADGE

COMPANY/FIRM/LAW SCHOOL

ADDRESS

CITY

STATE/PROVINCE                    ZIP/POST CODE

COUNTRY

TELEPHONE                    FAX

E-MAIL

Is this the first time you are attending this DRI seminar?   ☐ Yes   ☐ No

NUMBER OF ATTORNEYS IN YOUR FIRM          PRIMARY AREA OF PRACTICE

Admitted to the Bar in
STATE/PROVINCE          MONTH/YEAR          BAR NUMBER

REFERRED BY

*DRI is committed to the principle of diversity in its membership and leadership. Accordingly, applicants are invited, at their option, to indicate which one of the following may best describe them:*

- ☐ African American    ☐ Asian American    ☐ Hispanic origin
- ☐ Native American     ☐ White             ☐ Other

I am a member of a state or local defense organization.   ☐ Yes   ☐ No

NAME OF ORGANIZATION

*To the extent that I engage in personal injury litigation, I DO NOT, for the most part, represent plaintiffs. I have read the above and hereby make application for individual membership.*

SIGNATURE                    DATE

*All applications must be signed and dated.*

## Registration/Application Fees

Seminar Registration:
- ☐ $645    [Member]
- ☐ $400    [Government DRI Member]
- ☐ $0      [Law Student DRI Member]

Membership (*check one*):
- ☐ $225    [Defense Attorney]
- ☐ $160    [Government Attorney]
- ☐ $130*   [Young Lawyer]
- ☐ $20     [Law Student]

Total: _____

> * Those eligible for Young Lawyer membership will receive a certificate for one free seminar when they join.

## Payment Method

☐ My check for _____ (USD) is enclosed.

☐ Please charge my   ☐ VISA   ☐ MasterCard   ☐ American Express

☐☐☐☐ ☐☐☐☐ ☐☐☐☐ ☐☐☐☐   ☐☐ – ☐☐

CARD NUMBER                    EXPIRATION DATE

SIGNATURE AS IT APPEARS ON CARD

*Please remit payment to:*
DRI, 72225 Eagle Way, Chicago, IL 60678-7252
Phone: 312.795.1101    Fax: 312.795.0747
Website: www.dri.org    E-mail: membership@dri.org

> 3400-0020-21
> Asbestos

2007-0020B

PRSRT STD
U.S. POSTAGE
PAID
DRI

# DRI™
The Voice of the Defense Bar

150 North Michigan Avenue
Suite 300
Chicago, IL 60601

## November 8–9, 2007

Advance Registration Deadline: October 19, 2007
(for inclusion on the pre-registration list and to verify course materials in advance, register by this date.)

NAME _____

NAME AS YOU WOULD LIKE IT TO APPEAR ON BADGE _____

COMPANY/FIRM _____

ADDRESS _____

TELEPHONE _____ FAX _____

E-MAIL _____

---

Are you a first-time attendee at this DRI seminar?  ☐ Yes  ☐ No

How many attorneys are _____
in your firm?

What is your primary _____
area of practice?

**Registration Fees** (includes course materials)
(If joining DRI to get the member rate, complete the form on the reverse side.)
☐ Member: $645   ☐ Non-member: $775   ☐ Government DRI Member: $400
☐ Law Student DRI Member: Free   ☐ Special Discount Price: $595 (See brochure for eligibility)

**Publications for Purchase**
Course Materials (included in registration fee)
☐ Member: $75   ☐ Non-member: $95

**Supplemental Materials**
*Exploring Toxic Torts and Environmental Liability Claims*
CD-ROM ☐ Member: $85    ☐ Non-member: $105
Hard copy ☐ Member: $115   ☐ Non-member: $135
(Illinois residents, please add 9% sales tax. Shipping charges will be added to each order.)

**Payment Method**
My check for $ _____ (USD) is enclosed.
Please charge my
☐ VISA  ☐ MasterCard  ☐ American Express

_____
CARD NUMBER

_____
EXPIRATION DATE

_____
SIGNATURE AS IT APPEARS ON CARD

3400-0020-21
Asbestos

2007-0020B

# Exhibit D



21106403
Aug 18 2008
11:34AM

LAW OFFICES
## PETER G. ANGELOS
A PROFESSIONAL CORPORATION
ONE CHARLES CENTER
100 N. CHARLES STREET
BALTIMORE, MD 21201-3812
410-649-2000    (800) 252-6622

Armand J. Volta, Jr. (MD, DC, NY)
Direct Dial (410) 649-2092
Fax (410) 649-2111
Email - avolta@lawpga.com

August 18, 2008

TO:   All Counsel

FROM: Armand J. Volta, Jr.

### RE: *Proposed Mesothelioma Schedules for 2010*

Gentlemen:

Enclosed please find proposed mesothelioma groups for 2010. Please review these orders and get back to me with any changes or objections at your earliest convenience.  I would like to present these to Judge Glynn for his signature on Wednesday, August 27, 2008.

Very truly yours,

*/s/ Armand J. Volta, Jr.*

Armand J. Volta, Jr.

AJVjr/kms
Enclosures

# The Ruckdeschel Law Firm, LLC

5126 Dorsey Hall Drive, Suite 201
Ellicott City, Maryland 21042
Telephone: (410) 884.7825
Facsimile: (443) 583.0430

July 11, 2008

**Via E-Mail and U.S. Mail**

Armand J. Volta, Jr., Esq.
Law Offices of Peter G. Angelos
One Charles Center
100 N. Charles Street
Baltimore, Maryland 21201-3804

Re:  Joan F. Dixon v. Bondex International, Inc., et al.
Case No.: 24x08000322    Date Filed: **July 1, 2008**

Dear Mr. Volta:

I filed the Dixon case referenced above with the Court and requested that it be removed from the inactive docket. I am writing today to request that the Dixon case be included in the next round of cases set for trial in Baltimore. Pursuant to your previous conversations with Jon Ruckdeschel, I am including the following information regarding the case and a list of the defendants.

Mrs. Dixon is a 67 year old living mesothelioma victim. Mrs. Dixon was employed as a hairdresser from the early 1960's through the 1970's. She and her husband owned and maintained a variety of trucks and farm vehicles from the 1950s through the 1970s, and built a number of homes and a store between 1959 and 1979. The defendants in the Dixon case are:

1. Bondex International, Inc.
2. Chrysler, LLC
3. Ford Motor Company
4. General Motors Corporation
5. Georgia Pacific Corporation
6. Helene Curtis Industries
7. Honeywell International, Inc.
8. Metropolitan Life Insurance Co.
9. Pneumo Abex, LLC
10. Shaffer Ford Sales, Inc.
11. Unilever United States, Inc.
12. Union Carbide Corporation

Please let me know if you require any additional information from me in order to include the Dixon case in the next round of trial settings. I appreciate your time and courtesy in this matter and look forward to working with you in the future.

Sincerely,

Z. Stephen Horvat

**JONATHAN RUCKDESCHEL**
RUCK@RUCKLAWFIRM.COM
CELL PHONE: (443) 286.8858
MD, FL

**Z. STEPHEN HORVAT**
HORVAT@RUCKLAWFIRM.COM
CELL PHONE: (301) 789.8278
DC, MD

**DAWN P. O'CROININ**
DAWN@RUCKLAWFIRM.COM
CELL PHONE: (443) 286.4154
DC, MD

# The Ruckdeschel Law Firm, LLC
5126 Dorsey Hall Drive, Suite 201
Ellicott City, Maryland 21042
Telephone: (410) 884.7825
Facsimile: (443) 583.0430

July 25, 2008

**Via E-Mail and U.S. Mail**

Armand J. Volta, Jr., Esq.
Law Offices of Peter G. Angelos
One Charles Center
100 N. Charles Street
Baltimore, Maryland 21201-3804

Re:  James Rowland Young vs. AC&R Insulation Co. Inc., et al.
Case No.: **24x08000343**     Date Filed: **July 24, 2008**

Dear Mr. Volta:

Yesterday, our firm filed the Young case referenced above with the Court and requested that it be removed from the inactive docket. I am writing today to request that the Young case be included in the next round of cases set for trial in Baltimore.

Mr. Young is an 84 year old living mesothelioma victim. Mr. Young served in the United States Marine Corps during WWII and Korea from approximately 1942 to 1946 and 1950 to 1951. From approximately 1953 through 1980, Mr. Young was employed by the National Institutes of Health as a building engineer. The defendants in the Young case are:

| | |
|---|---|
| 1. AC & R Insulation Co., Inc. | 9. Goodyear Tire and Rubber Company |
| 2. Anchor Packing Company | 10. John Crane, Inc. |
| 3. A W Chesterton Company | 11. Kaiser Gypsum Company, Inc. |
| 4. Bondex International, Inc. | 12. Metropolitan Life Insurance Co. |
| 5. Crane Co. | 13. Owens Illinois, Inc. |
| 6. Crown, Cork & Seal Company | 14. Rapid American Corporation |
| 7. Garlock Sealing Technologies, LLC | 15. The Walter E. Campbell Company |
| 8. Georgia-Pacific Corporation | |

Please let me know if you require any additional information from our firm in order to include the Young case in the next round of trial settings. I appreciate your time and courtesy in this matter and look forward to working with you in the future.

Sincerely,

Z. Stephen Horvat

JONATHAN RUCKDESCHEL
RUCK@RUCKLAWFIRM.COM
CELL PHONE: (443) 286.8858
MD. FL

Z. STEPHEN HORVAT
HORVAT@RUCKLAWFIRM.COM
CELL PHONE: (301) 789.8278
DC. MD

DAWN P. O'CROININ
DAWN@RUCKLAWFIRM.COM
CELL PHONE: (443) 286.4154
DC. MD

EFiled
Sep 12 2008 9:49AMEDT
Transaction ID 21480413

| | | |
|---|---|---|
| IN RE: BALTIMORE CITY | * | APRIL 13, 2010 MESOTHELIOMA |
| ASBESTOS LITIGATION | | TRIAL CLUSTER |
| | * | CONSOLIDATION NO. |

\* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| JOAN F. DIXON, et al., | * | IN THE        24X08000410 |
| Plaintiffs | * | CIRCUIT COURT |
| vs. | * | FOR |
| BONDEX INTERNATIONAL, Inc., | * | BALTIMORE CITY |
| et al., | | |
| | * | (RUCKDESCHEL LAW FIRM) |
| Defendants | | |

\* \* \* \* \* \* \* \* \*

CASES AFFECTED:

*

| | | |
|---|---|---|
| JOAN F. DIXON | | CASE NO. 24X08000322 |
| JAMES ROWLAND YOUNG | * | CASE NO. 24X08000343 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### *CONSOLIDATION ORDER AND PRE-TRIAL SCHEDULE*

It is this __8th__ day of __September__, 2008, by the

Circuit Court for Baltimore City, ORDERED, that the above listed

cases are consolidated for trial and the Pre-Trial Schedule shall

be as follows, subject to further order of the Court.

_____        Cases identified for trial.  Plaintiffs
                identify the defendants they have served
                with process.  Plaintiffs identify the
                parties with whom they have settled.

                *Defendants shall notify Plaintiffs
                within ten (10) days of any case in
                which service is contested.*

6/17/2009       Plaintiffs provide executed answers to
                interrogatories which identify each
                worksite where plaintiff or plaintiff's
                decedent worked, dates at each site, co-
                workers at each site, asbestos-
                containing products (both type and

manufacturer) at each site, and contractors installing asbestos products at each site.  Plaintiffs respond to requests for production of documents and tangible things (including medical records plaintiffs have had possession of).  Plaintiffs produce authorization for records.  Plaintiffs produce Social Security print-out if in Plaintiff's possession.  Defendants must give notice to Plaintiffs of any dispute contesting the adequacy of discovery within seven (7) days of receipt of discovery.

*Defendants must file any motions contesting the adequacy of discovery within fifteen (15) days of receipt of discovery.  Plaintiffs shall respond within five (5) days.  Any request(s) for conference with the Court shall be filed with the motion(s) or response(s).*

| | |
|---|---|
| 7/22/2009 | Direct defendants identify parties against whom contribution/set-off, and indemnity claims will be pursued. Claims against any party not so identified are hereby dismissed. |
| 8/5/2009 | Last day for direct defendants to serve third-party complaints. |
| 8/19/2009 | Cross and third-party defendants identify parties against whom contribution/set-off, and indemnity claims will be pursued.  Claims against any party not so identified are hereby dismissed. |
| 8/31/2009 | Last day for cross-and-third party defendants to serve complaints. |
| | Plaintiffs identify fact witnesses who may testify at trial.  Plaintiffs provide addresses for witnesses who they cannot voluntarily produce for deposition without a subpoena from defendants. |

| | |
|---|---|
| 9/10/2009 | Plaintiffs name expert witnesses, provide Rule 2-402(e)(1) statements, and state available dates for deposition of expert witnesses. Plaintiffs produce imaging and pathology which plaintiffs have had possession of and provide plaintiff-specific reports. |
| 12/9/2009 | Last day for deposition of plaintiffs' fact witnesses who plaintiffs are able to voluntarily produce for deposition without subpoena by defendants. (Product Identification Witnesses) |
| 12/28/2009 | Plaintiffs name their "most likely to use" general product identification fact witnesses from the original fact witness list who have been previously deposed. Plaintiffs may supplement this list with names of any additional witnesses (1) who are specified as being made in substitution for an earlier-named witness who has become unavailable to testify at trial. The substituted witness must come from the original fact witness list or (2) whose testimony concerns job sites newly disclosed in documents or deposition testimony during the remaining time for depositions of fact witnesses. |
| 1/11/2010 | Last day for deposition of plaintiffs' fact witnesses who plaintiffs are unable to voluntarily produce for deposition without a subpoena by defendants. |
| 2/8/2010 | Defendants and third-party defendants name all witnesses who may testify at trial, provide Rule 2-402(e)(1) statements, and state available dates for deposition of expert witnesses. Defendants produce/return imaging and pathology which defendants have had possession of and provide plaintiff- |

specific reports.  Defendants provide addresses of fact witnesses they cannot voluntarily produce for deposition. Defendants provide executed answer to interrogatories which identify each worksite where plaintiff or plaintiff's decedent worked, dates at each site, co-workers at each site, and contractors installing asbestos products at each site.  Defendants respond to requests for production of documents and tangible things (including medical records defendants have had possession of).

*Plaintiffs must file any motions contesting the adequacy of discovery. Defendants shall respond within five (5) days.  Any request(s) for conference with the Court shall be filed with the motion(s) or response(s).*

2/8/2010    Last day for deposition of defense fact witnesses other than witnesses not subject to deposition under Judge Levin's Order dated April 16, 1990.

2/16/2010   Defendants name their "most likely to use," general product identification fact witnesses from the original fact witness list who have been previously deposed.  Defendants may supplement this list with names of any additional witnesses (1) who are specified as being made in substitution for an earlier-named witness who has become unavailable to testify at trial.  The substituted witness must come from the original fact witness list or (2) whose testimony concerns job sites newly disclosed in documents or deposition testimony during the remaining time for depositions of fact witnesses.

2/22/2010   File mandatory pre-trial motions, if any.  Any such motion serve on adversaries by hand, fax or e-filing. Copy provided to Judge's chambers on this date.

| | |
|---|---|
| 3/15/2010 | Respond to pre-trial motions.  Responses served on adversaries by hand, fax, or e-filing.  Copy provided to Judge's chambers on this date. |
| 3/22/2010 | Complete all expert depositions. |
| 3/22/2010 | Pre-trial conference, 9:30.  Pre-trial motions hearing.  File voir dire. |
| 4/13/2010 | Jury selection and trial. |

**SO ORDERED:**

**JOHN M. GLYNN, JUDGE**

**Judge's Signature on Original Document _only_**

Apr13Ruckdeschel2010.wpd

# Exhibit E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION
CASE NO.: 1:08-cv-02200-JFM

JAMES YOUNG, et ux.,                                    (Circuit Court for Baltimore City

                                                        Case No.: 24x08000343)

Plaintiffs,


v.

AC & R INSULATION CO., INC., et al,

            Defendants,

_____/

### PLAINTIFFS' MOTION FOR REMAND

    James and Norma Young, by their undersigned attorneys, pursuant to 28 U.S.C. § 1447(c), file

the following Motion for Remand.  The grounds therefore, which are more fully set forth in the

accompanying Memorandum In Support of Motion for Remand, are as follows:

    1.    On August 21, 2008, Defendant Garlock Sealing Technologies, LLC (hereinafter

"Removing Defendant") filed a Notice of Removal of this case asserting as grounds for removal federal

question jurisdiction under the "federal enclave" doctrine pursuant to 28 U.S.C. § 1331, jurisdiction

conferred pursuant to 16 U.S.C. § 457 and 28 U.S.C. § 1442(a)(1).[1]

---

[1] Garlock references federal officer removal as a concurrent basis for removal pursuant to 42 U.S.C. §1442(a)(1) only once in its Notice of Removal at p. 1-2.  However, as no additional discussion of the alleged grounds under which Garlock seeks removal pursuant to § 1442(a)(1).

2.     The Notice of Removal was signed solely by counsel for Defendant Garlock on behalf of Defendant Garlock.  No other Defendants have filed their own Notices of Removal, nor have any other Defendants filed a Notice of Joinder or Consent with the Court in compliance with FED.R.CIV.P. 11 or Local Rule 102, Civil Rules of the United States District Court of the District of Maryland. Accordingly, the Removing Defendant failed to meet the requirements of the unanimity rule set forth in 28 U.S.C. §1441(a) and remand is required.

a.     Removing Defendant filed with the Notice of Removal a number of unofficial, often hypothetical, form "consent letters," addressed to counsel for the Removing Defendant (and not to the Court) as alleged proof of consent/joinder in the Notice of Removal.  A facial review of the form "consent letters" demonstrates that they were solicited and obtained by counsel for the Removing Defendant prior to the filing of the Notice of Removal, and are nothing more than informal communications between counsel.  Indeed, the insufficiency of these informal "consent letters" is demonstrated by the fact that many of them *deny* the ability to consent based upon incorrect claims of lack of service.  The letters facially fail to comply with 28 U.S.C. 1446(a), FED.R.CIV.P. 11, and Local Rule 102.  Communications between counsel have been held to be insufficient to consent to removal. *See e.g., Anne Arundel County v. United Pacific Life Ins. Co*, 905 F.Supp. 277, 278 (D.Md. 1995)(explaining that "while §1446 does not require 'that all defendants sign the same notice of removal,' it does require 'that each defendant file a notice of removal, either independently or by unambiguously joining in or consenting to another defendant's notice, within the thirty-day period following service of process.')(quoting *Creekmore v. Food Lion, Inc.*, 797 F.Supp. 505, 508 (E.D.Va. 1992)).

b.      As noted above, the Removing Defendant failed to obtain the consent of the following defendants:Bondex International, Inc., John J. Kirlin, LLC, Hampshire Industries, Inc., and Owens-Illinois, Inc.   Removing Defendant further failed to allege or demonstrate *in the Notice of Removal* that the consent of these defendants was excused.  *See e.g., Egle v. Erie Ins. Group*, 981 F.Supp. 932, 934(D.Md. 1997).  This failure alone requires remand.

3.      The Notice of Removal also substantively fails to support removal of this action based upon federal question jurisdiction under the "federal enclave" doctrine.

a.      The Notice of Removal fails to demonstrate that Mr. Young's exposures occurred on portions of NIH that were federal enclaves at times when they were federal enclaves.  Contrary to the glib assertion of the Removing Defendant, NIH is not a monolithic facility with respect to federal jurisdiction.  To the contrary, over 76 acres of the agency's Bethesda campus and the entire nearly 500 acres of the Poolesville animal farm, remain under the jurisdiction of Maryland.  *Inventory Report on Jurisdictional Status of Federal Areas Within the States, General Services Administration* (As of June 30, 1962), at 343-344, and accompanying coding key.

b.      In reliance upon *dicta* from a 1970 voting rights decision, Garlock incorrectly states that NIH's Bethesda campus became an enclave in 1953, when Maryland ceded jurisdiction over portions of the property.  *Evans v. Cornman*, 398 U.S. 419 (1970), referenced at p. 4 of Garlock's Notice of Removal.  Defendant ignores the fact that federal jurisdiction cannot vest over an enclave until the federal government *accepts* jurisdiction over ceded land.  40 U.S.C. § 3112 (formerly 40 U.S.C. §255).  With respect to NIH, jurisdiction over the portions ceded by Maryland to the federal government was not accepted by the federal government until September 25, 1955.  *See Report on Jurisdictional Status*

3

*of Federal Areas Within the States, General Services Administration* (As of June 30, 1962), at 343; 40 U.S.C. § 3112.

        c.      Mr. Young's work and exposures at NIH began in 1953 – before any portion of the agency's facility in Bethesda became a federal enclave.

        d.      Plaintiffs do not dispute that, after 1955, portions of NIH's Bethesda campus became a federal enclave.  It is indisputable, however, that other portions of the Bethesda campus and the entire Poolesville animal farm are not, and have never been federal enclaves where the United States holds exclusive legislative jurisdiction.[2]  Since Mr. Young's exposures before September 25, 1955 and on any portions of NIH that are not enclaves will indisputably be governed by Maryland state law, it is impossible for the Removing Defendant to demonstrate that resolution of his claims will *require* resolution of a question of federal law.  This is particularly true because Maryland state law regarding the continuing duty to warn which attaches upon exposures governed by state law, will continue to apply throughout Mr. Young's entire tenure at NIH irrespective of when it occurs.  Since the jury could find

---

[2]  The *Inventory Report on Jurisdictional Status of Federal Areas Within the States* prepared by the General Services Administration codes the portion of the NIH campus where jurisdiction over the property was accepted by the federal government on September 25, 1955 as having "Exclusive Legislative Jurisdiction."  Throughout the Report, Exclusive Legislative Jurisdiction is coded as a "1".  This is defined as follows:

> This term is applied when the Federal Government possesses, by whichever method acquired, all of the authority of the State, and in which the State concerned has not reserved to itself the right to exercise any of the authority concurrently with the United States except the right to serve civil or criminal process in the area for activities which occurred outside the area.

However, the remainder of the N.I.H. campus in Bethesda, as well as the Poolesville Animal Farm is coded to show that the Federal Government has a "Proprietorial Interest Only."  Throughout the Report, locations in which the Federal Government possesses an Proprietorial Interest Only is coded as a "4".  This is defined as follows:

> This term is applied to those instances wherein the Federal Government has acquired some right or title to an area in a State, but has not obtained any measure of the State's authority over the area.  In applying this definition, recognition should be given to the fact that the United States, by virtue of its functions and authority under various provisions of the Constitution, has many powers and immunities not possessed by ordinary landholders with respect to areas in which it acquires an interest, and of the further fact that all its properties and functions are held or performed in a governmental rather than a proprietary capacity.

for Mr. Young solely upon the state law claims, remand is required.  *See, e.g., Dixon v. Coburg Dairy*, 369 F.3d 811 (4th Cir. 2004).

**WHEREFORE**, Plaintiffs, James and Norma Young, respectfully request that the Court grant their Motion to Remand, and Remand this case to the Circuit Court for Baltimore City for further proceedings.

Respectfully submitted,

*/s/ Jonathan Ruckdeschel*
Jonathan Ruckdeschel, Fed. Bar:  25015
Dawn P. O'Croinin, Fed. Bar: 26902
The Ruckdeschel Law Firm, LLC
5126 Dorsey Hall Drive, Suite 201
Ellicott City, Maryland 21042
Telephone: 410.884.7825
Fascimile: 443.586.0430
ruck@rucklawfirm.com
dawn@rucklawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of September 2008, a copy of Plaintiffs' Motion for Remand and all attachments thereto were served upon all counsel of record in this matter via electronic submission on CM/ECF.

*/s/ Jonathan Ruckdeschel*
Jonathan Ruckdeschel

# Exhibit F

## DECLARATION OF JONATHAN RUCKDESCHEL

I, Jonathan Ruckdeschel, am over the age of eighteen (18) years and competent to testify to the matters contained herein.

1.      I am a partner at The Ruckdeschel Law Firm, LLC. I am licensed to practice law in the States of Maryland and Florida, as well as the United States District Court for the District of Maryland.

2.      I have represented numerous asbestos-injured individuals. Some of my clients have had their cases removed to federal court. A number of these clients have had their cases transferred to MDL-875.

3.      In a number of the removed cases, I have filed jurisdictional motions to remand to state court. In two cases, the motion to remand was not ruled on by the local federal district court before the case was transferred to MDL-875. After transfer to MDL-875, the motions to remand were not ruled on by Judge Weiner or Judge Giles.

4.      Despite the fact that the federal courts' jurisdiction had not been established, each of the transferred cases was required to complete the forced settlement negotiation process of MDL-875. Eventually both cases were remanded by MDL-875 to the US District Court from which they were transferred, with the jurisdictional motion to remand to state court still pending. The first case was then finally remanded to state court due to lack of subject matter jurisdiction, nearly 2 years after its initial removal. The second case has yet to even have the motion to remand to state court heard despite being removed nearly a year ago.

5.      In my experience jurisdictional motions to remand are not entertained by MDL-875. To the contrary, the sole activity in MDL-875 is lengthy, mandatory settlement discussions. In is my experience, consideration of the jurisdictional motion is left to the local federal district transferor court if and when the case is ultimately returned to the transferor court.

6.      In the case currently just making it back from MDL-875 to the United States District Court for the District of Maryland, my client's health has gravely deteriorated during his year-long delay in federal court, without the jurisdiction of the federal courts ever being established. He will now, almost certainly, die before receiving his day in court.

I declare under the penalties of perjury that the contents of the foregoing paper are true and correct to the best of my knowledge, information and belief.

_____
Jonathan Ruckdeschel

8/9/08
Date

# Exhibit G

## DECLARATION OF CHARLES S. SIEGEL

I, Charles S. Siegel, am over the age of eighteen (18) years and competent to testify to the matters contained herein.

1.      I am a partner at the law firm of Waters & Kraus, LLP.  I am licensed to practice law in the State of Texas, as well as numerous federal courts throughout the country.

2.      In the course of my practice, I have represented numerous asbestos-injured plaintiffs, some of whom have had their cases removed to federal court and transferred to the MDL 875.

3.      In each of the removed cases, I, on behalf of the affected plaintiff(s), filed a motion to remand the case to state court.

4.      In the event that the motion to remand was not ruled on by the local federal district court to which removal was effected, the case then transferred to the MDL 875 where the motions to remand were not ruled on by either Judge Weiner or Judge Giles.

5.      Each of the transferred cases remained in the MDL 875 for several years without ever having the propriety of the federal court's jurisdiction ruled on or established.  One such case is still pending in the MDL, nearly three years after removal, with no ruling on the motion for remand.

6.      It is my experience that no motions to remand are, in fact, entertained by the MDL 875 sitting judge and that these matters are left to the local federal district transferor court if and when the case is ultimately returned – perhaps years later – to the transferor court.

I declare under the penalties of perjury that the contents of the foregoing paper are true and correct to the best of my knowledge, information and belief.

_____          ___8 - 19 - 08___
Charles S. Siegel                                              Date

KATHY DUNLAP
Notary Public, State of Texas
My Commission Expires
July 22, 2009

# Exhibit H

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANN HAUCK,

                Plaintiff,

-vs-                                   Case No.  6:04-cv-1835-Orl-28DAB

BORG WARNER CORP., DAIMLER
CHRYSLER CORPORATION, DANA
CORPORATION, d/b/a Dana Racine
Corporation, f/k/a Spice Manufacturing
Corp., FORD MOTOR COMPANY,
GENERAL MOTORS CORPORATION,
GENUINE PARTS CO., GOODYEAR TIRE
AND RUBBER COMPANY, HONEYWELL
INTERNATIONAL, INC., f/k/a Allied-
Signal, Inc., BENDIX CORPORATION,
MACK TRUCKS, INC., MAREMONT
CORPORATION, NAVISTAR
INTERNATIONAL TRANSPORTATION
CORP., PNEUMO ABEX CORPORATION,
STEEL GRIP, INC., f/k/a Industrial
Gloves, Co., f/k/a Steel Grip Safety
Apparel Co., VELLUMOID, INC.,

                         Defendants.

---

## ORDER

      This cause is before the Court on several pending motions following remand by the

Judicial Panel on Multidistrict Litigation.

### I.  Background

      This case has a somewhat complicated procedural history.  Plaintiff initially filed suit

alleging claims arising from her asbestos-related disease in the Florida state circuit court in

Dade County, Florida, in July 2004.  (See Compl., Doc. 4).  By agreement of the parties after

the filing of a motion to transfer venue, the case was transferred to the Circuit Court, Eighteenth Judicial Circuit, in and for Brevard County, Florida. (See Agreed Order on Def.'s Mot. to Transfer Venue, entered in Case No. 04-16153 CA 42 in the Eleventh Judicial Circuit Court in and for Dade County, Florida, part of Composite Ex. E to Notice of Removal, see Doc. 24). The case was then removed to this Court on December 16, 2004. (Notice of Removal, Doc. 2). The jurisdiction of this Court was invoked based on diversity of citizenship. (See id. at 2).

Upon removal on December 16, 2004, several motions to dismiss that had been filed in the circuit court in Dade County were docketed in this court as pending. (See Docs. 8, 9, 11, 13, & 14). Although initially assigned to another judge, the case was reassigned to the undersigned district judge on January 5, 2005. (See Doc. 36). Upon receipt of the case and review of the file, and noting that no responses had apparently been filed to the docketed motions to dismiss, the Court granted the motions to dismiss (Docs. 8, 9, 11, 13, & 14) as unopposed. (Order, Doc. 42).

In January 2005, Plaintiff moved to remand the case to state court (Doc. 63) and moved to vacate the Order granting the five motions to dismiss (Doc. 65). This Court held a hearing on these motions on February 17, 2005. (See Mins. of 02/27/05 Hr'g, Doc. 100). However, in March 2005, before this Court had ruled on the motion for remand (Doc. 63) or the motion to vacate (Doc. 65), the Judicial Panel on Multidistrict Litigation ("the MDL panel") entered a Conditional Transfer Order covering this case. (See Doc. 107). The MDL panel entered a Transfer Order in June 2005, transferring this case to the Eastern District of Pennsylvania for consolidated pretrial proceedings (Doc. 127). This Court denied all then-

pending motions – including the motion to remand and the motion to vacate – as moot, "to be refiled, if appropriate, in the Eastern District of Pennsylvania" (Doc. 129, filed July 5, 2005).

On August 14, 2006, the MDL panel remanded all but the punitive and exemplary damages claims to this Court. (Doc. 143). On August 18, 2006, Plaintiff filed a "Notice of Remand from MDL, Notification of Outstanding Motions, Motion for Immediate Status Conference, and Conditional Motion for Expedited Trial" (Doc. 144) noting in part that on July 25, 2005 – shortly after the case had been transferred – she had renewed her motion for remand and her motion to vacate dismissal in the transferee court in the Eastern District of Pennsylvania, but the transferee court did not rule on those motions prior to the MDL panel's remand of her claims to this Court. (Doc. 144 at 2-3). This Court held a status conference on September 1, 2006, during which counsel again made argument regarding the motion for remand and the motion to vacate. (See Mins. of 09/01/2006 Status Conference, Doc. 162). The Court took these motions[1] under advisement and now issues rulings thereon.

## II. Discussion

### A. Motion to Vacate (Doc. 65)

When the case was removed from state court, several motions to dismiss that had

---

[1]As noted in Plaintiff's Notice of Remand (Doc. 144), the motions have not been refiled here; instead, Plaintiff relies on the motions (Docs. 63 & 65) already on file with this Court. As noted in the text, this Court previously denied these motions with leave to refile them (see Doc. 129); the original motions will now be reinstated and then ruled upon.

been filed in the state court in Miami were docketed in this Court as pending. These were motions filed by the following Defendants: Daimler Chrysler Corporation (Doc. 8); Bridgestone/Firestone North American Tire, LLC, Genuine Parts Company, Mack Trucks, Inc., and International Truck & Engine Company (Doc. 9); Honeywell International, Inc. (Doc. 11); Ford Motor Company (Doc. 13); and General Motors Corporation (Doc. 14). Three weeks later, when the case was reassigned to the undersigned district judge, these motions were granted as unopposed[2] because no opposition to the motions had apparently been made. (Order, Doc. 42).

Plaintiff then filed a motion to vacate (Doc. 65) the Order (Doc. 42) granting the motions to dismiss as unopposed. As outlined in the Background section above, when the case was transferred to the Eastern District of Pennsylvania the motion was denied by this Court, subject to being refiled in the Eastern District of Pennsylvania. The motion is now again before this Court for ruling.

In her motion to vacate, Plaintiff makes several arguments in support of her contention that this Court erred in granting the motions to dismiss as unopposed. First, Plaintiff asserts that an Omnibus Case Management Order in the circuit court in Dade County effectively ruled on the motions while they were pending in that Court, before venue was transferred to Brevard County. Second, Plaintiff contends that even if that Omnibus Case Management Order had not disposed of the motions, Plaintiff had noticed an "all open

---

[2]One of the motions (Doc. 9) was denied as moot as to Defendant Bridgestone/Firestone North America Tire, LLC because Plaintiff had voluntarily dismissed that defendant prior to removal. (See Order, Doc. 42; see also Notice of Voluntary Dismissal, Doc. 19).

motions hearing" in Brevard County and had thereby noted her opposition to the motions prior to the time that this matter was removed to this Court; Plaintiff points out that written oppositions are not required in state court. Third, Plaintiff notes that simultaneously with her motion to vacate she filed written responses to the motions to dismiss, and she argues that the delay in submitting a response was minimal and due to a good-faith misunderstanding by her counsel. Finally, Plaintiff contends that her motion for remand of the matter to state court based on defective removal should be resolved prior to the motions to dismiss.

The parties have treated the motion to vacate as one brought under Federal Rule of Civil Procedure 60(b). However, that rule applies only to final orders and judgments. The Order granting the motions to dismiss was not a final order. It merely granted the motions of several of the defendants in this case; no judgment was entered pursuant to that Order. Because the Order did not dispose of all parties and claims in this case, it "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed. R. Civ. P. 54(b); see also Burke v. Warren County Sheriff's Dep't, 916 F. Supp. 181, 183 (N.D.N.Y. 1996) ("Plaintiffs ostensibly bring this motion under Federal Rule of Civil Procedure 60(b). The court observes, however, that this motion is not properly brought under that rule. . . . Interlocutory orders and judgments are not subject to the strictures of Rule 60(b), but remain within 'the complete power of the court rendering them to afford such relief from them as justice requires.'") (quoting Fed. R. Civ. P. 60(b) 1946 amendment advisory committee's note); Gagne v. Carl Bauer Schraubenfabrick, GmbH, 595 F. Supp. 1081, 1083-84 (D. Me. 1984) ("[T]he standards of Rule 60(b) shall not be applied to this motion because the order granting summary judgment

[which adjudicated the rights of fewer than all parties] . . . is not a final judgment within the meaning of the Federal Rules of Civil Procedure. . . . The order is merely interlocutory and not a final judgment. As such, its revision is not subject to the restrictive provisions of Rule 60(b). . . . The Court retains plenary power to afford such relief as justice requires.") (footnote omitted); Watwood v. Barber, 70 F.R.D. 1, 8 (N.D. Ga. 1976) ("A decision whether to afford relief from an interlocutory order, upon motions for reconsideration filed immediately after the issuance of that order, is 'left subject to the complete power of the court . . . to afford such relief . . . as justice requires.'") (quoting Fed. R. Civ. P. 60(b) advisory committee's note) (alteration in original); cf. Doctor v. Seaboard Coast Line R.R. Co., 540 F.2d 699, 712 (4th Cir. 1976) (concluding that dismissal of complaint against labor union defendants was not subject to appeal but instead was, under Rule 54(b), "'subject to revision at any time before the entry of judgment adjudicating all the claims'") (quoting Fed. R. Civ. P. 54(b)).

The Court finds that justice requires that the Order granting the motions to dismiss be vacated. At the time the motions were granted as unopposed, this Court was not aware of the existence of, or of the parties' disagreement regarding the effect of, Omnibus Orders entered in the state circuit court in Dade County. However, it is clear from the record that the parties were in disagreement about the effect of those Orders. (See, e.g., Def. Honeywell Int'l Inc.'s Resp. to Pl.'s Mot. to Vacate, Doc. 73 at 2 n.1 ("The effect of the Omnibus Order in State Court was disputed, and the parties had differing interpretations of the mechanics of the Order . . . .")). It is also clear from the record that prior to the removal of the case to this Court, Plaintiff had expressed her belief that an Omnibus Order had

disposed of the motions to dismiss. (See Pl.'s Conditional Notice for Trial filed in state court, Ex. B to Doc. 72, at 2 & n.1 (stating that "Plaintiff[] believe[s] that the Motions filed by the Defendants were automatically addressed prior to transfer from Dade County by operation of the Omnibus Order and that, accordingly, the case is at issue" and noting that "[i]n the abundance of caution, Plaintiff has set an 'all open Motions' hearing for January 26, 2005 to address any Motions that the Defendants assert are currently pending and that prevent the case from being at issue"). This Court was not aware at the time of granting the motions to dismiss that Plaintiff had set an "all motions" hearing in Brevard County prior to the removal of this case; the Court has now located that notice in the record. (Notice of Hr'g, filed in Case No. 2004 CA 13357 in the Eighteenth Judicial Circuit Court in and for Brevard County, Florida, part of Composite Ex. E to Notice of Removal, see Doc. 24).

Furthermore, after the entry of this Court's Order granting the motions to dismiss of several of the Defendants as unopposed, and after Plaintiff had moved to vacate that Order, two other Defendants – Pneumo Abex Corporation ("Pneumo Abex") and Borg-Warner Corporation ("Borg-Warner") – moved to be dismissed nunc pro tunc. (Docs. 93 & 96, filed February 11 and February 14, 2005, respectively). The motions by Pneumo Abex and Borg-Warner were based on these defendants' adoption in Dade County circuit court of their "master" motions to dismiss – a practice which had been provided for by a Dade County circuit court Omnibus Order. (See Def. Pneumo Abex Corp's. Notice of Adoption of Master Adoption of Mots. to Dismiss, Mots. to Strike and Other Defense Motions; Burns Int'l Servs.'[3]

---

[3]Burns International Services was apparently formerly known as Borg-Warner Corporation.

Notice of Adoption of Its Master Answer, Affirmative Defenses, Motion to Dismiss and/or Strike All Pls.' Master Married/Single/Wrongful Death Complaints, filed in August 2004 in Case No. 04-16153 CA 42 in the Eleventh Judicial Circuit Court in and for Dade County, Florida, part of Composite Ex. E to Notice of Removal, see Doc. 24).  In their nunc pro tunc motions, Pneumo Abex and Borg-Warner sought dismissal "on the same grounds as the other defendants were dismissed by Order dated January 6, 2005," (Doc. 93 at 1) – that is, a lack of opposition thereto by Plaintiff – and these Defendants noted that "[t]he failure to dismiss [them] is due to apparent inadvertence rather than based upon any distinction between the defendants," (id.; see also Doc. 96 at 2 ("It appears this Honorable Court inadvertently failed to dismiss Borg Warner Corporation on January 6, 2005.")).  These "adopted master motions" by Pneumo Abex and Borg-Warner were not docketed as pending motions in this Court when the case was removed.  The two motions for nunc pro tunc dismissal (Docs. 93 & 96) were denied as moot along with all other then-pending motions when the case was transferred by the MDL Panel.  (Order, Doc. 129).

In sum, when the motions to dismiss were granted as unopposed this Court was not aware of Omnibus Orders entered in Dade County (or any potential effect thereof), nor was it aware of Omnibus motions filed by at least two of the Defendants.  The Court also was not aware that Plaintiff had previously set an "all pending motions" hearing in Brevard County.  Although Plaintiff should have filed some sort of opposition to the motions in this Court once the case was removed,[4] had the Court known of the setting of the motions hearing and the

_____

[4]Local Rule 4.02(c):  "When a case is removed to this Court with pending motions on which briefs or legal memoranda have not been submitted, the moving party shall file and

dispute regarding the effect of the Omnibus Order the Court likely would have given Plaintiff an opportunity to file responses to the motions rather than granting them as unopposed. Additionally, similarly-situated Defendants have been treated differently due to the confusing state of the record. Plaintiff promptly informed the Court of the prior activity in the case and moved to vacate the Order. The convoluted path that this case has taken to this Court, as well as the unusual omnibus proceedings in the Dade County court – with which this Court was previously unfamiliar – have led to rulings which should, and shall, be vacated in the interests of justice.

### B. Motion for Remand (Doc. 63)

This case was removed on the basis of diversity of citizenship. See 28 U.S.C. §§ 1332, 1441. It is undisputed that the parties to this case are diverse and that the requisite amount in controversy for diversity jurisdiction has been satisfied. However, one of the Defendants – Steel Grip, Inc. ("Steel Grip") – did not consent to removal.

The Notice of Removal (Doc. 2) was filed on December 16, 2004 by Defendant Genuine Parts Company ("Genuine Parts"). In that Notice, Genuine Parts noted that all Defendants except Steel Grip consented to removal. However, Genuine Parts also asserted that Steel Grip had been "fraudulently joined in this action for the purpose of preventing the Defendants from removing this action" and that therefore Steel Grip's consent was not required for removal. (Doc. 2 at 6). Plaintiff, on the other hand, contends that Steel Grip's

---

serve a supporting brief within ten (10) days after the removal in accordance with Rule 3.01(a) of these rules, and the party or parties opposing the motion shall then comply with Rule 3.01(b) of these rules."

consent was necessary in order for removal to be proper and that this case should be remanded to state court.  In her motion for remand (Doc. 63), Plaintiff raises several arguments, including the failure of the Defendants to establish – as is their burden – that Steel Grip was "fraudulently joined."  This argument is dispositive and persuasive, and Plaintiff's claims shall be remanded to state court.

"The removing party must show . . . removal is proper.  An action removed to Federal court may be remanded to state court pursuant to Section 1447(c) [of Title 28] on the basis of any defect in the removal procedure.  When confronted with a motion to remand, the removing party has the burden of establishing the propriety of removal." Telesis Mergers & Acquisitions, Inc. v. Atlis Fed. Servs., Inc., 918 F. Supp. 823, 828 (D.N.J. 1996) (citations and footnote omitted).  Moreover, removal statutes – whether jurisdictional or procedural – are strictly construed, with doubts resolved in favor of remand to the state court. See, e.g., Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 32 (2002) ("The right of removal is entirely a creature of statute and a suit commenced in state court must remain there until cause is shown for its transfer under some act of Congress.  These statutory procedures for removal are to be strictly construed.") (citations and internal marks omitted); Payne v. Overhead Door Corp., 172 F. Supp. 2d 475, 477 (S.D.N.Y. 2001) ("[E]ven though a defect in removal procedure is not jurisdictional, the removal statute, especially with reference to diversity jurisdiction cases, must be strictly construed.").

It is well settled that in a multiple-defendant case, in order for removal to be proper all defendants generally must consent. See, e.g., Russell Corp. v. Am. Home Assurance Co., 264 F.3d 1040, 1044 (11th Cir. 2001).  However, the consent of fraudulently joined or

nominal defendants is not required.  See, e.g., Emrich v. Touche Ross & Co., 846 F.2d 1190, 1193 n.1 (9th Cir. 1988) ("Ordinarily, under 28 U.S.C. § 1446(a), all defendants in a state action must join in the petition for removal, except for nominal, unknown, or fraudulently joined parties."); Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1009 n.2 (3d Cir. 1987).

"The burden of establishing fraudulent joinder is a heavy one.  Where a plaintiff states even a colorable claim against the [allegedly fraudulently-joined] defendant, joinder is proper and the case should be remanded to state court.  Pacheco De Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998).  "A claim of fraudulent joinder must be supported by clear and convincing evidence." Clingan v. Celtic Life Ins. Co., 244 F. Supp. 2d 1298, 1301 (M.D. Ala. 2003).

"Fraudulent joinder" is generally invoked in diversity cases where one of the named defendants is not diverse or is an in-state defendant[5]; the diverse or out-of-state defendant(s) in such cases then contend that the plaintiff has sued the non-diverse or in-state defendant in the state court case in order to prevent removal to federal court.  See, e.g., Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998) ("Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity.").  However, in this case, the consenting Defendants assert that Steel Grip – a diverse defendant – has been improperly joined in order for removal to be avoided.

---

[5]A case invoking the federal court's diversity jurisdiction is "removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b).

Plaintiff contends that the doctrine of fraudulent joinder is not applicable where the parties are diverse, as in this case. Some courts have, however, applied a fraudulent joinder analysis – or the somewhat analogous "nominal party" exception to the unanimity requirement – to federal question cases or cases where diversity is not an issue. See, e.g., Farias v. Bexar County Bd. of Trs., 925 F.2d 866, 871-72 (5th Cir. 1991) ("Since equity is the major concern in the nominal party inquiry, no limitation should be placed on the type of jurisdiction used to remove the action from state to federal court. Similarly, the test for determining a nominal party . . . applies equally whether diversity or federal question jurisdiction is the mode of removal."); In re Pharm. Indus. Average Wholesale Price Litig., 431 F. Supp. 2d 109, 118 (D. Mass. 2006) (noting that "[a]s many courts have held, the rationale for the doctrine of fraudulent joinder applies with equal force in the context of removal based on federal question jurisdiction," and applying fraudulent joinder analysis to federal question case) ; cf. Hernandez v. Seminole County, 334 F.3d 1233 (11th Cir. 2003) (describing, but finding unreviewable, decision of this Court to remand federal question case to state court based on conclusion that non-consenting defendant was not a mere nominal party).

Nevertheless, an allegation of fraudulent joinder of a non-diverse or in-state defendant in a case removed on the basis of diversity, on the one hand, is different in character than an allegation of fraudulent joinder of a diverse defendant or in a federal question case on the other. In the former, the plaintiff's very act of joining the non-diverse or in-state defendant creates an impediment to removal under the plain language of the removal statutes. However, where a diverse or out-of-state defendant is allegedly

-12-

fraudulently joined (or where fraudulent joinder is alleged in a federal question case), the impediment to proper removal is not the plaintiff's joinder of that defendant but rather that defendant's lack of consent – a circumstance which is generally beyond the plaintiff's control.[6] Thus, in such cases, an allegation of collusion between the plaintiff and the non-consenting defendant is typically made. See, e.g., In re Pharm. Indus. Average Wholesale Price Litig., 431 F. Supp. 2d at 119.

In the instant case, there are vague allegations of collusion between Plaintiff and Steel Grip but no evidence thereof. On December 27, 2005, Steel Grip filed a "Response" to the Notice of Removal. (Doc. 30). In that Response, Steel Grip stated that it "has legitimate and valid reasons for not consenting to the removal of [asbestos cases] to Federal Court." (Doc. 30 at 2). Steel Grip stated that it prefers to litigate its cases in state court and that it "seeks to resolve the large amounts of pending asbestos cases against it as quickly and efficiently as possible." (Id. at 3). A few weeks later,[7] Plaintiff filed her motion for remand (Doc. 63).

The consenting Defendants assert that Plaintiff's law firm has brought numerous

---

[6]See generally Simpson v. Union Pac. R.R. Co., 282 F. Supp. 2d 1151, 1156 (N.D. Cal. 2003) ("Here the only obstacle to removal – the consent of all defendants – does not lie within the control of the plaintiffs and therefore is not susceptible to manipulation through improper allegations in the complaint. Absent collusion, plaintiffs could not have known in advance that the School District would refuse to join in removal, and so could not have affected the forum by advancing fraudulent claims against that particular defendant.")

[7]The docket reflects that Plaintiff initially electronically filed a motion for remand on January 18, 2005; that motion was terminated due to a lack of signature. (See docket entry for Doc. 60). The motion was then refiled on January 19, 2005 (Doc. 63) with the signature problem corrected. The Court rejects the consenting Defendants' assertions that the motion for remand was untimely filed.

asbestos cases and that it only names Steel Grip in cases where no non-diverse or in-state defendant is named – suggesting that Plaintiff does not sue Steel Grip where the case is not removable due to lack of diversity or the presence of an in-state defendant (and therefore Steel Grip's lack of consent is unnecessary to defeat removal). However, the evidence presented on this point is far from compelling and reveals that sometimes Plaintiff's firm sues Steel Grip, and sometimes it does not. The Court has been unable to draw the removing Defendants' suggested inference from the chart provided. (See Chart, "Steel Grip vs. Florida Defendant in Asbestos Cases," Ex. A to Doc. 80). Again, there is no direct evidence of a collusive agreement between Plaintiff and Steel Grip, and no evidence to counter Steel Grip's assertions that it has its own reasons – which it is entitled to have – for not wanting the case removed from state court.

Not only have the consenting Defendants not presented clear and convincing evidence of collusion, but they also have failed to otherwise establish fraudulent joinder of Steel Grip. "Joinder has been deemed fraudulent . . . when there is no possibility that the plaintiff can prove a cause of action against the [nonconsenting] defendant." Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998). "When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. 'If there is even a possibility that a state court would find that the complaint states a cause of action against [the nonconsenting defendant], the federal court must find that joinder was proper and remand the case to state court.'" Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997) (quoting Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983)). "[T]he district court must evaluate the

factual allegations in the light most favorable to the plaintiff and must resolve any

uncertainties about state substantive law in favor of the plaintiff.  The federal court makes

these determinations based on the plaintiff's pleadings at the time of removal; but the court

may consider affidavits and deposition transcripts submitted by the parties."  Id. (citations

omitted).

Plaintiff's claims are based on asbestos exposure beginning in her childhood at an

automotive garage operated by her father.  Steel Grip is a maker of allegedly asbestos-

containing gloves used in welding. The consenting Defendants sought to remove this case

to federal court after depositions of Plaintiff, her brother, and her mother had been taken and

none of those deponents recalled welding occurring at the garage.

The consenting Defendants have failed to persuade this Court that Steel Grip has

been fraudulently joined.  As the Eleventh Circuit has instructed:

> For a plaintiff to present an arguable claim against an [allegedly
> fraudulently joined] defendant and, therefore, to require a case
> removed to federal court to be remanded to state court, the
> plaintiff need not show that he could survive in the district court
> a motion for summary judgment filed by that . . . defendant. For
> a remand, the plaintiff's burden is much lighter than that: after
> drawing all reasonable inferences from the record in the
> plaintiff's favor and then resolving all contested issues of fact in
> favor of the plaintiff, there need only be "a reasonable basis for
> predicting that the state law *might* impose liability on the facts
> involved."   Because the procedures are similar while the
> substantive standards are very different, district courts must
> exercise extraordinary care to avoid jumbling up motions for
> remand and motions for summary judgment that come before
> them.
>
> In the remand context, the district court's authority to look
> into the ultimate merit of the plaintiff's claims must be limited to
> checking for obviously fraudulent or frivolous claims.  Although
> we have said that district courts may look beyond the face of the

> complaint, we emphasize that the district court is to stop short
> of adjudicating the merits of cases that do not appear readily to
> be frivolous or fraudulent.

Crowe, 133 F.3d at 1541-42 (quoting B. Inc., v. Miller Brewing Co., 663 F.2d 545, 549 (5th

Cir. Unit A 1981)) (emphasis in original). The consenting Defendants in this case essentially

seek for this Court to undertake a summary judgment inquiry. However, as stated in Crowe,

summary judgment is not the appropriate standard here, and the "court's authority to look

into the ultimate merit of the plaintiff's claims must be limited to checking for obviously

fraudulent or frivolous claims." Id. Plaintiff's claims against Steel Grip are not "obviously

fraudulent or frivolous."

Here, the record does not reflect a Plaintiff frivolously asserting far-fetched claims

against a company from whom she could not conceivably recover; instead, it reflects

Defendants who, disappointed at that company's refusal to consent, sought removal after

discovery revealed potential problems with Plaintiff's proof against that company. However,

an ultimate failure of proof is not the equivalent of a failure to state a cause of action. See

Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998) ("The fact that the

plaintiffs may not ultimately prevail against the individual defendants because of an

insufficient causal link between the defendants' actions and the plaintiffs' injuries does not

mean that the plaintiffs have not stated a cause of action for purposes of the fraudulent

joinder analysis.").

In sum, the consenting Defendants have failed to meet their burden of establishing

by clear and convincing evidence that Steel Grip was fraudulently joined. Therefore, the

failure of Steel Grip to consent to removal renders the removal procedurally improper.[8]

Plaintiff's claims shall be remanded to state court.

---

[8]Although the failure of the consenting Defendants to establish fraudulent joinder is dispositive of the motion to remand, one other issue raised by Plaintiff bears mentioning. Plaintiff asserts that the Notice of Removal was untimely filed because it was filed more than thirty days after service of the initial pleading, as required by 28 U.S.C. § 1446(b). The consenting Defendants contend, however, that the Notice was timely under the second paragraph of 28 U.S.C. § 1446(b), which provides that "[i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may be first be ascertained that the case is one which is or has become removable . . . ." (emphasis added). The removing Defendants contend that "the case was not removable when it was initially filed because Defendant Steel Grip refused to consent to removal," (Notice of Removal, Doc. 2 at 6) and that the Notice was filed within thirty days of receipt of "other paper" indicating that Plaintiff would not be able to establish her claims against Steel Grip.

Plaintiff appears to be correct that the Notice was untimely. This case, as stated by the initial pleading, is "removable" because it is a case described in 28 U.S.C. § 1441 – entitled "Actions removable generally"; it was brought in state court and of which this district court had original jurisdiction, see 28 U.S.C. § 1441(a), and because none of the defendants is a Florida citizen, 28 U.S.C. § 1441(b). Thus, the portion of Section 1446(b) upon which the Defendants rely is not applicable.

The fact that not all of the defendants consented to removal does not affect the matter's "removability" for the purposes of complying with 28 U.S.C. § 1446's procedural requirements. Taken to its logical extension, a finding that the consent of defendants affects "removability" would mean that a defendant's change of mind about whether to consent would restart the 30-day clock. Failure of all defendants to consent is a waivable procedural defect rather than a "removability" problem. See generally Hampton Paint Mfg. Co. v. Union Oil Co. of Cal., Civ. A. No. 91-104-NN, 1991 WL 274441, at *4 (E.D. Va. Dec. 16, 1991) ("[A] distinction must be made between the prerequisites identifying a removable case and the procedures that must be followed in removing such a case to federal court. The instant case was removable under 28 U.S.C. § 1441 at its inception, as it fell within the diversity jurisdiction of the federal courts and did not fall into specific, non-procedural exceptions provided for by Congress. In order to take advantage of the opportunity to remove, certain procedural requirements had to be met: a notice of removal had to be filed within the thirty-day period provided by the statute and all defendants had to join in that notice.") (citations omitted). But see Parker v. County of Oxford, 224 F. Supp. 2d 292, 294 (D. Me. 2002) (concluding that case was not "removable" initially where some defendants did not consent to removal and that the case "did not become removable until the nonconsenting Defendant was dismissed from the case").

III. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.  The Order (Doc. 129) denying as moot the Motion for Remand (Doc. 63), denying as moot the Motion to Vacate (Doc. 65), and denying as moot the motions for nunc pro tunc dismissal (Doc. 93 & 96) is **VACATED** and those motions (Docs. 63, 65, 93, & 96) are **REINSTATED**.

2.  The Motion to Vacate (Doc. 65) is **GRANTED**, and the Order (Doc. 42) granting the motions to dismiss (Docs. 8, 9, 11, 13, & 14) as unopposed is hereby **VACATED** insofar as it pertains to Defendants Daimler Chrysler Corporation; Genuine Parts Company; Mack Trucks, Inc.; International Truck & Engine Company; Honeywell International, Inc.; Ford Motor Company; and General Motors Company. The motions to dismiss (Docs. 8, 9, 11, 13, & 14) are hereby **REINSTATED**, except that the motion (Doc. 9) filed by Defendants Bridgestone/Firestone North American Tire, LLC, Genuine Parts Company, Mack Trucks, Inc., and International Truck & Engine Company remains **DENIED as moot** as to Defendant Bridgestone/Firestone North American Tire, LLC in light of the Notice of Voluntary Dismissal without Prejudice of Defendant Bridgestone/Firestone North American Tire, LLC filed by Plaintiff (Doc. 19).  (See also Order, Doc. 42 at 2-3).

3.  The Motion to Adopt (Doc. 150) is **GRANTED**.

4.  The Motion to Expedite (Doc. 144) is **DENIED as moot**.

5.  The Motion to Strike (Doc. 154) is **DENIED**.

6.  The Motion for Remand (Doc. 63) is **GRANTED**.  Plaintiff's claims, with the

exception of the punitive and exemplary damages claims which remain pending in the Easter District of Pennsylvania, are hereby **REMANDED** to the Circuit Court, Eighteenth Judicial Circuit, in and for Brevard County, Florida, Case No. 2004-CA-013357, *Ann Hauck v. Borg-Warner Corporation et al.* The pending motion for summary judgment (Doc. 159) and all other pending motions, including the motions to dismiss (Docs. 8, 9, 11, 13, 14, 93, & 96) are **DENIED without prejudice** to resubmission in the state court.

　　7.   This case shall be administratively closed while the punitive and exemplary damages claims remain in the district court for the Eastern District of Pennsylvania pursuant to transfer by the Judicial Panel on Multidistrict Litigation.

　　**DONE** and **ORDERED** in Orlando, Florida this 12th day of October, 2006.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party

-19-