MDL 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 16 2008

FILED
CLERK'S OFFICE

JS6

FILED
CLERK, U.S. DISTRICT COURT

OCT - 6 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                         DEPUTY

PLEADING NO. 5654

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ANDREW SCHNABEL and AUDREY SCHNABEL,<br><br>Plaintiffs,<br><br>vs.<br><br>BORGWARNER MORSE TEC (sued individually and as successor-in-interest to BORG-WARNER MORSE TEC, INC. and BORG-WARNER CORPORATION), et al.,<br><br>Defendants. | Case No. CV 08-04714 R (JTLx)<br><br>[~~PROPOSED~~] ORDER GRANTING PLAINTIFFS' MOTION TO REMAND ACTION TO STATE COURT<br><br>Date:       October 6, 2008<br>Time:       10:00 a.m.<br>Courtroom: 8 (Spring Street Courthouse)<br>Judge:      Hon. Manuel L. Real<br><br>Pretrial Dates:    Not Set<br>Trial Date:        Not Set |

Having considered all papers submitted in connection with the motion to remand this action to state court filed by Plaintiff Andrew Schnabel ("Mr. Schnabel") and Plaintiff Audrey Schnabel (collectively, "Plaintiffs"), the Court, pursuant to 28 *United States Code* § 1447(c), hereby GRANTS the motion and orders this entire action REMANDED forthwith to the Superior Court of the State of California for the County of Los Angeles, Central District, the court in which it was originally filed and from which it was removed.

/ / /

/ / / MDL- 875 Vac CTO (1 Action)
RECOMMENDED ACTION

EXHIBIT
A

-1-
[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO REMAND ACTION TO STATE COURT
Approved/Date: MR *15 Oct 08

OFFICIAL FILE COPY

IMAGED OCT 2 0 2008

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

This action arises out of injuries sustained by Mr. Schnabel from his alleged exposure to asbestos. Plaintiffs allege that Mr. Schnabel suffers from mesothelioma caused by exposure to defendants' asbestos and asbestos-containing products. (*See* Compl., ¶¶ 1-20 and Exs. A, B thereto; *see also* McDonnell Douglas Corporation's Notice of Removal of Action Under 28 U.S.C. § 1442(a)(1) (Federal Officer) ("Notice of Removal"), ¶¶ 1-7 at pp. 3-5.)

This action was originally filed on June 11, 2008, in the Superior Court of the State of California for the County of Los Angeles, Central District. On July 18, 2008, defendant McDonnell Douglas Corporation ("MDC") removed the action to this Court. MDC alleges in its Notice of Removal that this Court has subject matter jurisdiction under the federal officer removal statute, 42 *United States Code* § 1442(a)(1) ("Section 1442(a)(1)"), because MDC's acts and omissions, as alleged in the Complaint, were undertaken at the direction of a 'federal officer.' (*See* MDC's Notice of Removal, ¶¶ 3, 7-8, 11-25 at pp. 4-10.)

Plaintiffs filed a motion to remand this action to state court on September 5, 2008. They contend that the removal of this action was improper, and that remand should be ordered, because, contrary to MDC's Notice of Removal, this Court does not have subject matter jurisdiction under the federal officer removal statute. Plaintiffs argue that federal officer jurisdiction is negated by the 'federal officer' disclaimer in their Complaint and, even if that were not the case, MDC has failed to satisfy the requirements for federal officer removal under Section 1442(a)(1). In addition, Plaintiffs argue that, because MDC has been dismissed from this action and no other defendant joined in or consented to its Notice of Removal or filed a separate notice of removal, there is no longer a federal claim upon which to predicate jurisdiction and remand should be ordered because only state law claims remain.

/ / /

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO REMAND ACTION TO STATE COURT

# II.

## DISCUSSION

**A.    PLAINTIFFS' 'FEDERAL OFFICER' DISCLAIMER PRECLUDES JURISDICTION UNDER THE FEDERAL OFFICER REMOVAL STATUTE.**

In *Mesa v. California*, 489 U.S. 121, 109 S. Ct. 959, 103 L. Ed. 2d 99 (1989), the United States Supreme Court set forth a three-part test for determining whether a case is removable on federal officer grounds under Section 1442(a)(1). The Supreme Court held that to qualify for removal, the defendant must (1) demonstrate that it acted under the direction of a federal officer, (2) raise a "colorable federal defense" to the plaintiff's claim, and (3) demonstrate a causal nexus between the plaintiff's claims and the acts the defendant performed under color of federal office. (*Mesa, supra*, 489 U.S. at 124-35, 109 S. Ct. at 962-68; *see also Feidt v. Owens-Corning Fiberglas Corp.*, 153 F. 3d 124, 127 (3d Cir. 1998).)

Plaintiffs' Complaint, in paragraph 4, expressly states: "Plaintiffs also disclaim any cause of action or recovery for any injuries resulting from exposure to asbestos dust caused by any acts or omissions of a Defendant committed at the direction of an officer of the United States Government." (Compl., ¶ 4 at p. 5.) Several California District Courts, including this one, have considered similar language in asbestos cases and have held that such a disclaimer negates jurisdiction under the federal officer removal statute. For example, in *Barrett v. CLA-VAL Co.*, Case No. CV 07-7774 PSG (FFMx), the District Court held that defendant's removal of plaintiffs' asbestos personal injury action under the federal officer removal statute was improper and it granted plaintiffs' motion to remand. Removal was improper because plaintiffs' complaint disclaimed any claim arising out of an act or omission by defendant at the direction of a federal officer and, consequently, defendant could not satisfy the *Mesa* requirements for federal officer removal. Plaintiffs' disclaimer precluded defendant from raising a colorable federal defense to their claims under the government/military contractor defense and from

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO REMAND ACTION TO STATE COURT

1  demonstrating a causal nexus between Plaintiffs' claims and the acts allegedly performed

2  by defendant at the direction of a federal officer.  (Order Granting Plaintiffs' Motion to

3  Remand at 2-4, *Barrett v. CLA-VAL Co.*, Case No. CV 07-7774 PSG (FFMx) (C.D. Cal.

4  Feb. 5, 2008) (Gutierrez, J.).)  As explained by the District Court:

5      [R]emoval is proper under the federal officer removal statute if the moving

6      party: (1) demonstrates that it acted under the direction of a federal officer;

7      (2) raises a colorable federal defense to plaintiff's claims; and (3)

8      demonstrates a causal nexus between the plaintiff's claims and the

9      defendant's acts performed under color of federal officer.

10                      *      *      *

11      By inserting the disclaimer into the Complaint, the Court concludes

12  that Plaintiffs preserved state court jurisdiction by removing the very

13  grounds for removal that [defendant] is now asserting – the military

14  contractor's defense.  This defense simply does not exist if Plaintiffs have

15  waived any claims "for recovery for any injuries resulting from exposure

16  to asbestos dust caused by any acts or omissions of a party Defendant

17  committed at the direction of an officer of the United States government."

18  Consequently, [defendant] cannot meet § 1442(a)(1)'s causal nexus

19  requirement, since all claims "taken pursuant to a federal officer's

20  directions" have been waived.  Nor can [defendant] meet § 1442(a)(1)'s

21  "colorable federal defense" requirement, since Plaintiffs' waiver prevents

22  the military contractor's defense from being "colorable."  Accordingly,

23  Plaintiffs' waiver justifies remand.

24  (*Id.* at 2-3.)

25      Similarly, in *Scannell v. Asbestos Defendants*, Case No. 3:03-CV-02806, the

26  District Court granted plaintiff's motion to remand his asbestos personal injury action to

27  state court because the removing defendant failed to prove the applicability of the federal

28  officer removal statute under the *Mesa* test, and even if it had done so, plaintiff's waiver

-4-

1  in his complaint of "all claims arising under federal law" negated jurisdiction under the

2  statute. (Order Granting Plaintiff's Motion for Remand, *Scannell v. Asbestos Defendants*,

3  Case No. 3:03-CV-02806 (N.D. Cal. Dec. 30, 2003); *see also Schilz v. A.P. Green Indus.,*

4  *Inc.*, 2002 WL 102608 at *1 (N.D. Cal. Jan. 15, 2002) (granting motion to remand

5  asbestos wrongful death action to state court because, based on plaintiff's waiver of

6  design defect claim, defendant could not "raise a colorable federal defense to plaintiff's

7  claims" for failure to warn and removal was therefore improper under federal office

8  removal statute"); *Westbrook v. Asbestos Defendants (BHC)*, 2001 WL 902642 at *2-3

9  (N.D. Cal. July 31, 2001) (granting motion to remand asbestos personal injury action to

10  state court because removal under federal officer statute was improper based on

11  plaintiffs' written waiver of any claim arising out of acts taken by defendant under

12  direction of a federal officer); *Overly v. Raybestos-Manhattan, Inc.*, 1996 WL 532150 at

13  *2-3 (N.D. Cal. Sept. 9, 1996) (granting motion to remand asbestos personal injury action

14  to state court because removal under federal officer statute was improper based on

15  plaintiffs' agreement to waive all claims that could have given rise to federal officer

16  jurisdiction).)

17      The Supreme Court has long recognized that a plaintiff can preclude federal

18  jurisdiction, and thereby prevent removal, by avoiding the allegation of claims based on

19  federal law.  "Of course, the party who brings a suit is master to decide what law he [or

20  she] will rely upon." (*Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S. Ct. 410,

21  411, 57 L. Ed. 716 (1913); *see also Caterpillar, Inc. v. Williams* (1987) 482 U.S. 386,

22  392 n.7, 107 S. Ct. 2425, 2429 n.7, 96 L. Ed. 2d 318.)  "[T]he plaintiff may by the

23  allegations of his [or her] complaint determine the status with respect to removability of a

24  case." (*Great North R. Co. v. Alexander*, 246 U.S. 276, 282, 38 S. Ct. 237, 239-40, 62 L.

25  Ed. 713 (1918); *see also Caterpillar, supra*, 482 U.S. at 392 n.7, 107 S. Ct. at 2429 n.7.)

26          [T]he plaintiff [is] the master of the claim; he or she may avoid federal

27          jurisdiction by exclusive reliance on state law.

28                              *       *       *

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO REMAND ACTION TO STATE COURT

1       Thus, it is now settled law that a case may *not* be removed to federal court

2       on the basis of a federal defense, including the defense of pre-emption,

3       even if the defense is anticipated in the plaintiff's complaint, and even if

4       both parties concede that the federal defense is the only question truly at

5       issue.

6                    *     *     *

7       [T]he plaintiff may, by eschewing claims based on federal law, choose to

8       have the cause heard in state court. . . . But a *defendant* cannot, merely by

9       injecting a federal question into an action that asserts what is plainly a

10      state-law claim, transform the action into one arising under federal law,

11      thereby selecting the forum in which the claim shall be litigated.  If a

12      defendant could do so, the plaintiff would be master of nothing.

13 (*Caterpillar, supra*, 482 U.S. at 392-93, 398-399, 107 S. Ct. at 2429-30, 2433 (italics in

14 original); *accord California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838-39 (9th

15 Cir. 2005) ("Thus the rule enables the plaintiff, as 'master of the complaint,' to 'choose to

16 have the cause heard in state court' 'by eschewing claims based on federal law.'"); *Abada*

17 *v. Charles Schwab & Co., Inc.*, 300 F. 3d 1112, 1118 (9th Cir. 2002) ("The plaintiff is

18 the 'master of the claim,' and 'may avoid federal jurisdiction by exclusive reliance on

19 state law.'  A plaintiff may also choose to invoke federal jurisdiction by pleading a

20 federal claim.  However, the choice belongs to the plaintiff.  '[A] case may *not* be

21 removed to federal court on the basis of a federal defense, including the defense of

22 preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both

23 parties concede that the federal defense is the only question truly at issue.'") (italics in

24 original) (citations omitted).)

25      Accordingly, based on the 'federal officer' disclaimer in their Complaint, Plaintiffs

26 have negated jurisdiction under the federal officer removal statute and, consequently,

27 MDC's removal thereunder was improper and this action must be remanded to state court

28 because the Court lacks subject matter jurisdiction.

**B.    EVEN    ABSENT    PLAINTIFFS'    'FEDERAL    OFFICER' DISCLAIMER, THE COURT DOES NOT HAVE JURISDICTION UNDER THE FEDERAL OFFICER REMOVAL STATUTE.**

As set forth above, to remove a case under Section 1442(a)(1), the defendant must (1) demonstrate that it acted under the direction of a federal officer, (2) raise a "colorable federal defense" to the plaintiff's claim, and (3) demonstrate a causal nexus between the plaintiff's claims and the acts the defendant performed under color of federal office. (*Mesa, supra*, 489 U.S. at 124-35, 109 S. Ct. at 962-68; *Feidt, supra*, 153 F. 3d at 127.) In its Notice of Removal, MDC alleges that federal officer removal is proper because it was acting under the direction of federal officers from the Navy, Marines and Department of Defense when it manufactured and sold its aircraft with asbestos-containing materials, that it has a colorable federal defense based on the government/military contractor defense, and that there is a causal nexus between its federally-directed conduct and Plaintiffs' claims. (*See* MDC's Notice of Removal, ¶¶ 3, 7-8, 11-25 at pp. 4-10.) MDC's federal officer allegations fail, and remand must be ordered, because the allegations are unsupported and, consequently, the Court lacks jurisdiction under the federal officer removal statute.

MDC has not presented any evidence, whether in the form of affidavits, declarations, documents or otherwise, demonstrating that any of its alleged acts or omissions were undertaken at the direction of a federal officer, that it has a colorable government contractor defense to Plaintiffs' claims, or that there is a causal nexus between Plaintiffs' claims, specifically their claims for failure to warn, and its alleged conduct at the direction of a federal officer. MDC has not shown that the Navy or the federal government required it to (1) sell any aircraft at all to the Navy, (2) include asbestos in its aircraft, or (3) omit warnings of the dangers of asbestos exposure. In fact, MDC has presented no evidence that the federal government ever approved, specified, or prohibited warnings regarding asbestos in its products. As such, MDC did not act at the direction of a federal officer in any relevant regard, it does not have colorable

-7-

1  government contractor defense to Plaintiffs' claims for failure to warn, and there is no

2  causal nexus between those claims and MDC's federally-directed conduct.

3      The modern standard for the government contractor defense was announced by the

4  United States Supreme Court in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108

5  S. Ct. 2510, 101 L. Ed. 2d 442 (1988). In that case, Marine helicopter pilot David Boyle

6  was killed after his helicopter crashed off the coast of Virginia. Although he survived the

7  impact, Boyle drowned because the helicopter's escape hatch opened outward and he

8  could not overcome the water pressure once the craft was submerged. Boyle's father

9  sued the helicopter manufacturer alleging that it defectively designed the emergency

10  escape system, even though the government contract specified that the hatch must open

11  outward. The Supreme Court granted *certiorari* to consider if and when federal law

12  provides a defense for government contractors to state tort claims, and held that a

13  government contractor is protected from state tort liability for design defects in military

14  equipment when:

15      (1)    the United States approved reasonably precise specifications;

16      (2)    the equipment conformed to those specifications; and

17      (3)    the supplier warned the United States about dangers in the use of the

18              equipment that were known to the supplier but not to the United States.

19  (*Boyle, supra*, 487 U.S. at 512, 108 S. Ct. at 2518-19.)

20      The first two prongs of the *Boyle* test are intended to ensure that a government

21  officer, and not just the contractor, considered the design feature in question. (*Boyle,*

22  *supra*, 487 U.S. at 512, 108 S. Ct. at 2518-19.) In other words, the defense is available to

23  a contractor only when its liability arises from acts or omissions made on the

24  government's behalf. (*Ibid.*) The third prong is designed to discourage contractors from

25  withholding their knowledge of latent risks that might jeopardize the contract. (*Ibid.*)

26  Applying the test, the Supreme Court in *Boyle* held that because the defendant's

27  contractual duty (design of an outward opening escape hatch) was "precisely contrary" to

28  its state law duty of care (design of an inward opening escape hatch), the defendant was

-8-

1    protected from state law liability by the government contractor defense. (487 U.S. at 503,

2    509, 512-14, 108 S. Ct. at 2513-14, 2517-20.)

3        *Boyle* involved a design defect claim, not a claim for failure to warn. Appellate

4    courts that have addressed the *Boyle* government contractor defense in asbestos-related

5    failure to warn cases have concluded that the defense is available only when the

6    applicable federal contract included warning requirements that significantly conflict with

7    those that might be imposed by state law. Thus, in *In re Hawaii Fed. Asbestos Cases*,

8    960 F.2d 806 (9th Cir. 1992), the Ninth Circuit held that the defendant contractor was not

9    entitled to protection under the government contractor defense because it produced no

10   evidence that the government required or prohibited anything with respect to asbestos

11   warnings on its products. (*Id.* at 813.) Similarly, in *Butler v. Ingalls Shipbuilding, Inc.*,

12   89 F.3d 582, 586 (9th Cir. 1996), the Ninth Circuit held that the government contractor

13   defense "is inapplicable to a failure to warn claim in the absence of evidence that in

14   making its decision whether to provide a warning . . . [the contractor] was 'acting in

15   compliance with reasonably precise specifications imposed on [it] by the United States.'"

16   (*Id.* at 586 (internal quotation marks omitted) (citations omitted); *see also Snell v. Bell*

17   *Helicopter Textron, Inc.*, 107 F.3d 744, 749 (9th Cir. 1997) ("Bell has shown neither that

18   'the government considered the appropriate warnings, if any, that should accompany the

19   product,' nor that it 'approved reasonably precise specifications' constraining Bell's

20   ability to comply with whatever duty to warn it may have had.") (citations omitted).)

21        The Second and Eleventh Circuits have likewise held in asbestos cases that state

22   law liability is not precluded by the government contractor defense where there is no

23   evidence that the government contractor could not comply with both its contractual

24   obligations to manufacture asbestos-containing products and its state-prescribed duty to

25   warn of the hazards of asbestos dust. In *In re Joint S. and E. Dist. New York Asbestos*

26   *Litig.*, 897 F.2d 626 (2d Cir. 1992), the Second Circuit held:

27        Stripped to its essentials, the military contractor's defense under

28       *Boyle* is to claim, "The Government made me do it." *Boyle* displaces state

-9-

law only when the Government, making a discretionary, safety-related
military procurement decision contrary to the requirements of state law,
incorporates this decision into a military contractor's contractual
obligations, thereby limiting the contractor's ability to accommodate safety
in a different fashion.

(*Id.* at 632.)  Similarly, in *Dorse v. Eagle-Picher Indus., Inc.*, 898 F.2d 1487 (11th Cir.
1990), the Eleventh Circuit held:

[T]he state-imposed duty of care that is the asserted basis of the
contractor's liability (warning of the danger) is not "precisely contrary" to
the duty imposed by the government contract (the duty of manufacture and
deliver cement containing asbestos).  In fact, the evidence suggests that *no*
conflict exists between the state tort duty and the federal contractual duty.
The defendant's exhibit of Navy Department specifications does not
contain any prohibition against health warnings on the product.  Moreover,
the deposition of [defendant's] Director of Claims indicates that the
defendant could have complied with both its state tort law duty and its
Navy contract.

*        *        *

The evidence in the case does not support the requirements for the
government contractor defense.  "The contractor could comply with both
its contractual obligations and the state-prescribed duty of care."  State law
cannot be displaced in this context.

(*Id.* at 1489-90 (italics in original) (citation omitted) (footnote omitted); *see also Feidt,
supra*, 153 F.3d at 127 ("[R]emoval [under the federal officer removal statute] was
inappropriate because Westinghouse failed to establish the necessary causal connection
between the conduct upon which Feidt's claim of state law liability was based – the
failure to warn – and the conduct Westinghouse allegedly performed under federal
direction – its federal military contract obligations.  In particular, the district court held

1  that Westinghouse did not present evidence that the Navy prohibited it from issuing

2  warnings with respect to the use of asbestos insulation.").)

3      The consensus among circuit courts is not surprising, given that the Supreme Court

4  contemplated this result in *Boyle*.  One fundamental tenet underlying the *Boyle* decision

5  is that state law liability should not be precluded when the state law duty sought to be

6  imposed on a contractor is not contrary to a duty assumed under a government contract.

7  (*Boyle*, *supra*, 487 U.S. at 508-09, 108 S. Ct. at 2516-17.)  Thus, as the Supreme Court

8  explained:

9          If . . . the United States contracts for the purchase and installation of an air

10         conditioning-unit, specifying the cooling capacity but not the precise

11         manner of construction, a state law imposing upon the manufacturer of

12         such units a duty of care to include a certain safety feature [*e.g.*, a warning]

13         would not be a duty identical to anything promised the Government, but

14         neither would it be contrary.  The contractor could comply with both its

15         contractual obligations and the state-prescribed duty of care.  No one

16         suggests that state law would generally be pre-empted in this context.

17  (*Ibid* (bracketed language added).)

18      District Courts in the Ninth Circuit, including this Court, have reached the same

19  conclusion in asbestos cases.  For example, in *Barrett v. CLA-VAL Co.*, *supra*, the

20  District Court rejected the removal of a mesothelioma death case on federal officer

21  grounds because the removing defendant did not have a colorable government contractor

22  defense.  Citing *In re Hawaii Fed. Asbestos Cases*, *supra*, the District Court held that

23  while the defendant might have established that the Navy would not have approved

24  warnings on asbestos products, it "failed to submit evidence that the U.S. Navy actually

25  required it to refrain from issuing warnings.  None of the declarations or affidavits cite to

26  any specific military or contractual provisions demonstrating the Navy actually discussed

27  the issue of asbestos warnings on the equipment.  Absent such a showing, Foster Wheeler

28  has no colorable military contractor defense to a failure to warn claim." (Order Granting

1  Plaintiffs' Motion to Remand at 4-5, *Barrett v. CLA-VAL Co.*, Case No. CV 07-7774
2  PSG (FFMx) (C.D. Cal. Feb. 5, 2008).)

3      In *Westbrook v. Asbestos Defendants (BHC)*, *supra*, the plaintiff worked at
4  shipyards operated by defendant.  He sued for damages arising from asbestos exposure
5  sustained at the shipyards.  Defendant removed the action claiming that the government
6  controlled work on Navy ships and, thus, it had acted at the direction of a federal officer.
7  Plaintiff, however, had disclaimed recovery for any asbestos exposure sustained on Navy
8  ships and the Court gave effect to this disclaimer.  Moreover, the District Court explained
9  that even if exposure to asbestos while working on Navy ships were considered, the test
10  for federal officer jurisdiction was still not met:

11          The motion to remand is also appropriate for a second reason.  Even
12      if plaintiffs' claims relate to work done on United States Navy ships, it is
13      not clear that they even implicate the military contractors defense. In terms
14      of the *Mesa* test, prongs (2) or (3) are probably not met.  This is because
15      the cause of action plaintiffs bring, based on premises owner/contractor
16      liability, does not turn simply on [defendant's] use of asbestos.  Rather, the
17      claim appears to turn on a failure to warn about the dangers of asbestos
18      and negligent exercise of retained control.  The defense: "The Navy made
19      me do it," does not apply to either basis of liability.  [Defendant] has
20      shown . . . that the Navy required [it] to use asbestos insulation.  But
21      [defendant] has not shown that the Navy required it to refrain from issuing
22      warnings. Absent such a showing, [defendant] has no colorable military
23      contractor defense to a failure to warn claim.

24                          *      *      *

25      Another way to describe this situation is to say that [defendant] does have
26      a colorable military contractor defense, but it is limited to defending
27      against claims arising only out of the choice to use asbestos, because that
28      is the only action that was directed by the government.  Under this rubric,

1   it is prong three of the *Mesa* test that is not met as there is no causal
2   connection between the acts performed under the government's orders and
3   the claims brought by plaintiffs.    Either way, given the court's
4   understanding of plaintiffs' claims, [defendant] would be unable to
5   demonstrate that removal was appropriate even if plaintiffs had not waived
6   their claims arising out of work at government jobsites and on government
7   vessels.

8   (*Westbrook, supra*, 2001 WL 902642 at *3 (N.D. Cal. July 31, 2001); *see also Schilz v.*
9   *A.P. Green Indus., Inc., supra*, 2002 WL 102608 at *1 (holding that because defendant
10  "failed to submit evidence demonstrating that it was subject to any government
11  specifications with respect to the placement of warnings on its products," defendant could
12  not rely on government contractor defense and removal under federal officer removal
13  statute was improper); *Nguyen v. Allied Signal, Inc.*, 1998 WL 690854 at *4 (N.D. Cal.
14  Sept. 29, 1998) ("The Ninth Circuit's decision in *Hawaii Federal* controls here.   As
15  defendants have made no showing that their contractual obligations to the government
16  specifically prohibited them from placing warnings on their products, they cannot raise
17  the government contractor defense in this failure to warn case. . . . [T]his evidence does
18  not demonstrate that the federal government directed defendants not to place warnings on
19  their products.  Therefore, there is no causal connection between the control exercised by
20  the United States over defendants and plaintiffs' legal theory of failure to warn
21  consumers of the hazards of asbestos."); *Overly v. Raybestos-Manhattan, Inc., supra*,
22  1996 WL 532150 at *4 ("The government in no way restricted Avondale's ability to
23  notify individuals of the presence of asbestos in the work environment.  Thus, there is no
24  causal connection between the control exercised by the United States over Avondale and
25  the legal theory under which plaintiffs seek to hold Avondale liable."); *Cabalic v. Owens-*
26  *Corning Fiberglas Corp.*, 1994 WL 564724 at *3 (N.D. Cal. Oct. 6, 1994) ("The
27  'government contractor' defense is not colorable.  No defendant has produced evidence
28  that it presented specially designed products to the government under federal orders or

-13-

1   specifications that directly conflicted with the state law duty upon which the defendants

2   are now being sued.  Most notably, no defendant produces any evidence whatsoever that

3   the products it designed pursuant to government orders were different from those

4   designed for civilian use in any manner pertinent to state law liability.") (citation

5   omitted).)

6        District Courts in other circuits agree.  (*See Weese v. Union Carbide Corp.*, 2007

7   WL 2908014 at *3-9 (S.D. Ill. Oct. 3, 2007) (granting remand because no causal nexus

8   between defendant's federally-directed conduct and plaintiffs' failure to warn claim and

9   because defendant did not have a colorable military contractor defense); *Epperson v.*

10  *Northrop Grumman Sys.*, 2006 WL 90070 at *3-5 (E.D. Va. Jan. 11, 2006) (same);

11  *Westmiller v. IMO Indus.*, 2005 WL 2850334 at *2-3 (W.D. Wa. Oct. 20, 2005) (granting

12  remand because defendant did not have a colorable military contractor defense); *Green v.*

13  *A.W. Chesterton Co.*, 366 F. Supp. 2d 149, 152-57 (D. Me. 2005) (no causal nexus

14  between defendant's federally-directed conduct and plaintiffs' claims); *Snowdon v. A.W.*

15  *Chesterton Co.*, 366 F. Supp. 2d 157, 162-65 (D. Me. 2005) (same); *Freiberg v.*

16  *Swinerton & Walberg Prop. Serv., Inc.*, 245 F. Supp. 2d 1144, 1155 (D. Colo. 2002)

17  ("What [defendants] must establish for purpose of the § 1442(a)(1) is that the government

18  authority under which they worked required them to act as they did.  For purposes of

19  Plaintiffs' failure to warn claims, for example, they must establish the DOE's direction

20  and control of their activities directly interfered with their ability to fulfill their state law

21  obligation to warn employees of safety hazards.  Nothing in Prout's affidavit or the

22  government contracts produced by Lummus establishes the requisite nexus between their

23  construction and safety practices at Rocky Flats and government direction or control.

24  Accordingly, removal jurisdiction is not established.") (citations omitted); *Faulk v.*

25  *Owens-Corning Fiberglas Corp.*, 48 F. Supp. 2d 653, 663 & n.14 (E.D. Tex. 1999)

26  (removal under federal officer removal statute, based on government contractor defense,

27  was improper "[b]ecause the federal government provided no direction or control on

28  warnings when using asbestos; moreover, the federal government did not prevent

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO REMAND ACTION TO STATE COURT

1   Defendants from taking their own safety precautions heeding state-law standards above
2   the minimum standards incorporated in their federal contracts."); *Mouton v. Flexitallic,*
3   *Inc.,* 1999 WL 225438 (E. D. La. Apr. 14, 1999) ("The federal government provided no
4   direction on warnings when using asbestos, and further did not prevent Avondale from
5   taking its own safety precautions above the minimum standards incorporated in the
6   federal contracts.  Thus, the Court finds that Avondale has failed to establish a causal
7   connection between the Navy's direction pursuant to the design contracts and plaintiff's
8   failure to warn claims."); *Megill v. Worthington Pump, Inc.,* 1999 WL 191565 at *4 (D.
9   Del. Mar. 26, 1999) ("Worthington has not established that the U.S. Navy prohibited it
10   from substituting materials or otherwise changing the specifications, so long as protocol
11   was followed.  Likewise, there is no evidence of record that the U.S. Navy prohibited
12   defendant from, or otherwise directed defendant in, issuing warnings or researching and
13   effecting product safety.  Under these circumstances, the court concludes that there is no
14   causal connection between plaintiffs' claims and the conduct performed under color of a
15   federal office; thus, there is no colorable federal [government contractor] defense.")
16   (citation omitted); *Gauthe v. Asbestos Corp.,* No. Civ. A. 96-2454, 1997 WL 3255 at *3
17   (E.D. La. Jan. 2, 1997) ("There is no evidence that the Government restricted or
18   prohibited Avondale's ability to notify individuals of the presence of asbestos in the work
19   environment. Assuming that Avondale built ships under the direct supervision of the
20   federal government, nothing about that supervision prevented Avondale from warning
21   Mr. Gauthe about the dangers. Thus, there is no causal connection between the injury
22   alleged by Mr. Gauthe with respect to Avondale's failure to warn and Avondale working
23   on behalf of the federal government."); *Good v. Armstrong World Indus., Inc.,* 914 F.
24   Supp. 1125, 1128-30 (E.D. Pa. 1996) (granting remand because no causal nexus between
25   defendant's federally-directed conduct and plaintiffs' state law claim).)
26       Recently, the United States District Court for the District of Massachusetts
27   remanded a case that, like here, was removed by MDC (and several other defendants)
28   under the federal officer removal statute on the alleged assertion of a colorable

-15-

1   government contractor defense.  In *Hilbert v. McDonnell Douglas Corp.*, 529 F. Supp. 2d
2   187 (D. Mass. 2008), MDC "claim[ed] that the military specifications, though not
3   explicitly forbidding warnings about asbestos, were so precise that the defendants could
4   not simultaneously warn about asbestos and conform to the specifications." (*Id.* at 199-
5   200.)  In support of this argument, MDC submitted several affidavits, including one that
6   stated: "All warnings placed on military equipment procured from government
7   contractors, and warnings placed in technical manuals for that equipment, were under the
8   exclusive control and required the approval of the United States government." (*Id.* at
9   200.)  The District Court rejected MDC's argument and its supporting affidavits, noting
10  that based on MDC's evidence, "there is simply no basis upon which the Court can
11  conclude that a conflict existed between the federal contracts and the defendants' state-
12  law duty to warn." (*Id.* at 202.)  The District Court noted that MDC had not submitted
13  any non-testimonial evidence of the government's alleged control over the warnings: "the
14  defendants fail to cite any contractual or regulatory language supporting their position, or
15  to provide any military specifications bearing on the substance of the warnings to be
16  provided." (*Ibid.*)  Rather, defendants' "argument . . . boils down to a bald, unsupported
17  assertion that if they had attempted to warn about the hazards of asbestos, the government
18  would have exercised its discretion to bar the warning." (*Ibid.*)  The District Court ruled
19  that this "sort of speculation is not remotely adequate.  It does not come close to
20  demonstrating -- even colorably – that the government exercised its discretion to issue
21  'reasonably precise specification' as to health and safety warnings." (*Id.* at 202-03.)  As
22  such, the District Court held that defendants "failed to assert a colorable federal defense."
23  (*Id.* at 203.)

24      MDC has made even less of a showing here.  It has not provided any evidence in
25  support of its Notice of Removal – whether testimonial or otherwise – to show that the
26  federal government exercised its discretion to issue reasonably precise specifications as
27  to health and safety warnings with regard to its products, which precluded MDC from
28  providing asbestos-related warnings.  MDC has not presented any affidavits, declarations,

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO REMAND ACTION TO STATE COURT

1  or documents, including any relevant government contracts or specifications,

2  demonstrating that it was prohibited from warning about the dangers of asbestos in its

3  products.    Thus, what was true for MDC in *Hilbert*, as well as for the removing

4  defendants in each of the other cases cited above, is true for MDC in this case: it simply

5  cannot show federal control over the acts and omissions for which it is being sued –

6  failure to warn of the hazards of asbestos.  Indeed, even if MDC had provided affidavits

7  like those it provided in *Hilbert*, such evidence would not be enough to raise a colorable

8  government contractor defense justifying removal under the federal officer removal

9  statute for the reasons articulated in *Hilbert*.[1]

10        Accordingly, because MDC has not satisfied the requirements for removal under

11  the federal officer removal statute, this Court does not have jurisdiction under the statute

12  and this action must be remanded to state court.

13        **C.        REMAND IS APPROPRIATE BECAUSE THERE IS NO LONGER A**

14                **FEDERAL CLAIM UPON WHICH TO PREDICATE JURISDICTION**

15                **AND ONLY STATE LAW CLAIMS REMAIN.**

16        Even if the Court were to conclude that it had jurisdiction under federal officer

17  removal statute when this action was removed, remand is appropriate because, since

18

19  [1]      In addition to the government contractor defense, MDC claims that it "is entitled to
federal officer removal under 28 U.S.C. § 1442(a)(1) based upon the separate and

20  additional federal defense of derivative sovereign immunity as set forth in *Yearsley v.*
*W.A. Ross Construction Co.*, 309 U.S. 18." (MDC's Notice of Removal, ¶ 25 at pp. 9-

21  10.)  MDC made the exact same argument in *Hilbert* and the District Court rejected it,
holding that *Boyle* is merely an expansion of *Yearsley* and "does not set forth a separate

22  doctrine." (*Hilbert*, *supra*, 529 F. Supp. 2d at 197 n.8.)

23        McDonnell Douglas, at least, claims a separate additional defense of
derivative sovereign immunity, citing *Yearsley v. W.A. Ross Constr. Co.*,

24     309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940).  Its reliance is misplaced:
*Boyle* expands and elaborates *Yearsley*, but does not set forth a separate

25     doctrine.  The *Boyle* Court simply extended immunity from performance
contracts (as in *Yearsley*) to procurement contracts (as in *Boyle*).  *See*

26     *Boyle*, 487 U.S. at 506, 108 S.Ct. 2510 (discussing *Yearsley*); *see also In*
*re World Trade Center Disaster Site Litig.*, 456 F.Supp.2d 520, 561

27     (S.D.N.Y. 2006) (noting that "[t]he purpose and scope of the [*Yearsley* ]
government contractor defense was clarified and expanded in *Boyle*").

28  (*Hilbert*, *supra*, 529 F. Supp. 2d at 197 n.8.)  MDC's reliance on this so-called "separate
and additional federal defense" is unavailing here for the same reason.

MDC has been dismissed from this action, the federal claim upon which jurisdiction was predicated is no longer present and only state law claims remain. In *Carnegie-Mellon Univ. v. Cohill* 484 U.S. 343, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988), the United States Supreme Court held that, "when the federal-law claims [upon which an action has been removed from state court] have dropped out of the lawsuit **in its early stages** and only state-law claims remain, the federal court should decline the exercise of jurisdiction" over the state law claims. (484 U.S. at 350, 108 S. Ct. at 619 (emphasis added).) "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent [now supplemental] jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." (484 U.S. at 350 n.7, 108 S. Ct. at 619 n.7; *see also* 484 U.S. at 351, 108 S. Ct. at 619 ("When the single federal-law claim in the action was eliminated **at an early stage** of the litigation, the District Court had powerful reasons to choose not to continue to exercise jurisdiction.") (emphasis added).)

The Supreme Court also addressed whether, in such a circumstance, a District Court can "relinquish jurisdiction over the case only by dismissing it without prejudice or whether the District Court c[an] relinquish jurisdiction over the case by remanding it to state court as well." (*Carnegie-Mellon, supra*, 484 U.S. at 351, 108 S. Ct. 619.) The Supreme Court held that a District Court does, indeed, have discretion to remand the case, rather than dismiss it without prejudice, and that remand is often the preferable manner of disposition.

This Court's crafting of the pendent jurisdiction doctrine in [*Mine Workers v.*] *Gibbs*[, 383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)] strongly supports the conclusion that when a district court may relinquish jurisdiction over a removed case involving pendent claims, the court has discretion to remand the case to state court. *Gibbs* itself does not directly address this issue; because the plaintiff in *Gibbs* filed his suit in

federal court, remand was not an option in the case, and the Court spoke only of dismissal.  But *Gibbs* establishes that the pendent jurisdiction doctrine is designed to enable courts to handle cases involving state-law claims in the way that will best accommodate the values of economy, convenience, fairness, and comity, and *Gibbs* further establishes that the Judicial Branch is to shape and apply the doctrine in that light.  Because in some circumstances a remand of a removed case involving pendent claims will better accommodate these values than will dismissal of the case, the animating principle behind the pendent jurisdiction doctrine supports giving a district court discretion to remand when the exercise of pendent jurisdiction is inappropriate.

*       *       *

[A] remand may best promote the values of economy, convenience, fairness, and comity.  Both litigants and States have an interest in the prompt and efficient resolution of controversies based on state law.  Any time a district court dismisses, rather than remands, a removed case involving pendent claims, the parties will have to refile their papers in state court, at some expense of time and money.  Moreover, the state court will have to reprocess the case, and this procedure will involve similar costs.  Dismissal of the claim therefore will increase both the expense and the time involved in enforcing state law.  Under the analysis set forth in *Gibbs*, this consequence, even taken alone, provides good reason to grant federal courts wide discretion to remand cases involving pendent claims when the exercise of pendent jurisdiction over such cases would be inappropriate.

*       *       *

The section [28 *United States Code* § 1441(c)], however, clearly manifests a belief that when a court has discretionary jurisdiction over a removed state-law claim and the court chooses not to exercise its jurisdiction,

-19-

1  remand is an appropriate alternative.  Thus, the removal statute, far from

2  precluding district courts from remanding pendent state-law claims,

3  actually supports such authority.

4  (484 U.S. at 351-55, 108 S. Ct. 619-21; *see also*.)

5  MDC filed its Notice of Removal under the federal officer removal statute on July

6  18, 2008.  No other defendant joined in or consented to the Notice of Removal or filed a

7  separate notice of removal on federal officer or any other grounds, and the jurisdictional

8  allegations in MDC's Notice of Removal pertain only to MDC.  That is, there are no

9  allegations in MDC's Notice of Removal that would support the removal of this action on

10  federal officer grounds, or any other basis, by any other defendant.

11  MDC was dismissed from this action on or about August 13, 2008.  (*See* Order,

12  filed Aug. 13, 2008.)  Thus, because the only defendant that attempted to invoke the

13  Court's jurisdiction has been dismissed, there is no longer a federal claim upon which to

14  predicate subject matter jurisdiction, and, in accordance with Supreme Court's

15  admonition in *Carnegie-Mellon*, remand is appropriate because only state law claims

16  remain.  This is particularly true given that this case is "in its early stages."  (*See*

17  *Carnegie-Mellon*, *supra*, 484 U.S. at 350, 108 S. Ct. at 619 ("[W]hen the federal-law

18  claims [upon which an action was removed] have dropped out of the lawsuit **in its early**

19  **stages** and only state-law claims remain, the federal court should decline the exercise of

20  jurisdiction" over the state law claims.") (emphasis added) *see also* 484 U.S. at 351, 108

21  S. Ct. at 619 ("When the single federal-law claim in the action was eliminated at an early

22  stage of the litigation, the District Court had powerful reasons to choose not to continue

23  to exercise jurisdiction.") (emphasis added).)

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

IT IS SO ORDERED

Date _____ Oct. 6, 2008

United States District Judge

-20-

IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)                                         MDL No. 875

PANEL SERVICE LIST (Excerpted from CTO-314)

Andrew Schnabel, et al. v. Borg-Warner Morse Tec, Inc., et al.,
C.D. California, C.A. No. 2:08-4714

Peter G. Angelos
LAW OFFICES OF
PETER G ANGELOS PC
One Charles Center
100 North Charles Street, 22nd Floor
Baltimore, MD 21201

Matthew Kenneth Ashby
MCKENNA LONG & ALDRIDGE
444 South Flower Street, 8th Floor
Los Angeles, CA 90071-2901

Janet W. Black
WARD BLACK PA
208 West Wendover Avenue
Greensboro, NC 27401-1307

Robert E. Boone, III
BRYAN CAVE LLP
120 Broadway, Suite 300
Santa Monica, CA 90401

Russell W. Budd
BARON & BUDD PC
3102 Oaklawn Avenue, Suite 1100
Dallas, TX 75219

John D. Cooney
COONEY & CONWAY
120 North LaSalle Street, Suite 3000
Chicago, IL 60602-2415

Adam A. Grable
MENDES & MOUNT
445 South Figueroa Street, 38th Floor
Los Angeles, CA 90071

Kevin M. Jordan
BAKER BOTTS LLP
910 Louisiana
One Shell Plaza
Houston, TX 77002-4995

Paul Kalish
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595

Steven Kazan
KAZAN MCCLAIN ABRAMS
FERNANDEZ ET AL
171 Twelfth Street, Third Floor
Oakland, CA 94607

Peter A. Kraus
WATERS & KRAUS LLP
3219 McKinney Avenue, Suite 3000
Dallas, TX 75204

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074

Roger B. Lane
LANE & GOSSETT
1601 Reynolds Street
Brunswick, GA 31520

William F. Mahoney
SEGAL MCCAMBRIDGE SINGER
& MAHONEY LTD
233 South Wacker Drive, Suite 5500
Chicago, IL 60606

Robert C. Malaby
MALABY & BRADLEY
150 Broadway, Suite 600
New York, NY 10038

Ronald A. McIntire
PERKINS COIE LLP
South Tower
1620 26th Street, 6th Floor
Santa Monica, CA 90404

John P. McShea
MCSHEA TECCE PC
Mellon Bank Center
1717 Arch Street, 28th Floor
Philadelphia, PA 19103

Philip McWeeny
SCHIFF HARDIN LLP
One Market Plaza, 32nd Floor
Spear Street Tower
San Francisco, CA 94105

Dimitri Nichols
WATERS & KRAUS LLP
222 North Sepulveda Blvd.
Suite 1900
El Segundo, CA 90245

Thomas A. Packer
GORDON & REES LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464

Charles S. Siegel
WATERS & KRAUS LLP
3219 McKinney Avenue
Dallas, TX 75204

Michael P. Thornton
THORNTON & NAUMES LLP
100 Summer Street, 30th Floor
Boston, MA 02110

Walter G. Watkins, Jr.
FORMAN PERRY WATKINS KRUTZ
& TARDY PLLC
P.O. Box 22608
Jackson, MS 39225-2608

Andrew Schnabel vs. Borgwarner Morse Tec, Inc. (ind and sil to Borg-Warner Morse TEC, Inc. and Borg-Warner Corporatic

Los Angeles Superior Court BC392554

W&K File No. 08-0146-

Plaintiff's Service List

**Curtiss-Wright Flow Control Corporation**
Guzik, Alan

2950 Birch Street
Brea, CA 92821
Tel:                              Fax:

---

**Rockwell International Corporation**
Whitfield, David

22647 Ventura Blvd., #523
Woodland Hills, CA 91364
Tel:                              Fax:

---

**Burns International Security Services fka Borg Warner Corp aka Borg Wa**
Bailey, Michael H. (Anticipated Counsel)
BAKER, KEENER & NAHRA LLP
633 W. Fifth Street
Suite 5400
Los Angeles, CA 90071
Tel: 213-241-0900              Fax: 213-241-0990

---

**Borgwarner Morse Tec, Inc. (ind and sil to Borg-Warner Morse TEC, Inc. and Borg-Warner Corporation)**
Mitchel, Steven M.
BOOTH, MITCHEL & STRANGE LLP
707 Wilshire Blvd
Suite 445
Los Angeles, CA 90017
Tel: 213-738-0100              Fax: 213-380-3308
CA Speed Dial 62

---

**McDonnell Douglas Corporation (f/k/a Douglas Aircraft Company, Inc.)**
Boone, III, Robert
Johnson, Tyler R.
BRYAN CAVE LLP
120 Broadway
Suite 300
Santa Monica, CA 90401-2386
Tel: 310-576-2100              Fax: 310-576-2200

---

**Honeywell Intern'l, Inc. (sil to Allied Signal, Inc., sil to Bendix Corp)**
CSC - LAWYERS INCORPORATING SERVICE
2730 Gateway Oaks Drive
Suite 100
Sacramento, CA 95833
Tel:                              Fax:

---

**Parker-Hannifin Corporation**
CT CORPORATION
818 West 7th Street
Los Angeles, CA 90017
Tel:                              Fax:

---

**Ford Motor Company**
**General Motors Corporation**
**Rolls-Royce North America, Inc. (ind and sil to Rolls-Royce PLC)**
Brown, Jr., Eugene
Mikselch, Amee A.
FILICE BROWN EASSA & MCLEOD
1999 Harrison Street
18th Floor
Oakland, CA 94612-3541
Tel: 510-444-3131          Fax: 510-839-7940
CA Speed Dial 71

---

**Dexter Hysol Aerospace, LLC (fka Dexter Hysol Aerospace, Inc., suc by merg with Hysol Corp)**
**Henkel Corporation (sil to Dexter Hysol Aerospace, Inc)**
Follis, Samuel O.
Bonesteel, Michael J.
HAIGHT, BROWN & BONESTEEL, LLP
6080 Center Drive
Suite 800
Los Angeles, CA 90045
Tel: 310-215-7100          Fax: 310-215-7300

---

**IMO Industries, Inc. (ind and sil Delaval Steam Turbine Company, Enterprise Engine & Foundry Company**
Rome, Henry D.
Bailey, Bobbie R.
HOWARD, ROME, MARTIN & RIDLEY, LLP
1775 Woodside Rd., Suite 200
Redwood City, CA 94061-3436
Tel: 650-365-7715          Fax: 650-364-5267
CA Speed Dial 08

Andrew Schnabel vs. Borgwarner Morse Tec, Inc. (ind and sii to Borg-Warner Morse TEC, Inc. and Borg-Warner Corporatio

Los Angeles Superior Court BC392554

W&K File No. 08-0146-

Plaintiff's Service List

**Crane Co. (Ind and sil Hydro-Aire, Inc. and Adel Precision Products Corp)**
Stiefel, Grant
**K&L GATES LLP**

10100 Santa Monica Blvd., 7th Floor
Los Angeles, CA 90067
Tel: 310-552-5000                Fax: 310-552-5001
CA Speed Dial 118

**Square D Company**
Gill, Raymond
**K&L GATES LLP**

55 Second Street
Suite 1700
San Francisco, CA 94105
Tel: 415-882-8200                Fax: 415-882-8220
CA Speed Dial 437

**Garlock Sealing Technologies, LLC (sil to Garlock, Inc.)**
Glaspy, David M.
Hartman, James O.
O'Malley, Brian S.
**LAW OFFICES OF GLASPY & GLASPY**

100 Pringle Avenue, Suite 750
Walnut Creek, CA 94596
Tel: 925-947-1300                Fax: 925-947-1594
CA Speed Dial 204

**Cirrus Enterprises, LLC (sil to E.V. Roberts & Assoc., Inc. & Evra, Inc)**
Foley, Patrick J.
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**

221 North Figueroa Street
Suite 1200
Los Angeles, CA 90012
Tel: 213-250-1800                Fax: 213-250-7900

**Hill Brothers Chemical Company**
Segal, Ruth
**LYNBERG & WATKINS**

888 S. Figueroa Street
16th Floor
Los Angeles, CA 90017
Tel: 213-624-8700                Fax: 213-892-2763
CA Speed Dial 10

**Dana Corporation, d/b/a Dana Corporation, a Virginia Corporation**
**Union Carbide Corporation**
Sayers, William
Nicol, Farah
Wyles, Kelvin
Arthur, David
**MCKENNA, LONG & ALDRIDGE LLP**

444 South Flower Street
8th Floor
Los Angeles, CA 90071
Tel: 213-688-1000                Fax: 213-243-6330
CA Speed Dial 52

**Parker-Hannifin Corporation**
McNulty, Suzanne
Grabie, Adam
**MENDES & MOUNT, LLP**

445 South Figueroa Street
38th Floor
Los Angeles, CA 90071-1601
Tel: 213-996-7700                Fax: 213-955-7725

**The Flamemaster Corporation**
Child, Bradford T.
**MILLARD, HOLWEGER, CHILD & MARTON**

700 South Flower Street
Suite 3050
Los Angeles, CA 90017
Tel: 213-627-3113                Fax: 213-623-9237

**Burns International Security Services fka Borg Warner Corp aka Borg Wa**
**NATIONAL REGISTERED AGENTS, INC.**

2030 Main Street
Suite 1030
Irvine, CA 92614
Tel:                                     Fax

**Palmer International, Inc.**
**PALMER INTERNATIONAL, INC.**

Tel:                                     Fax

Andrew Schnabel vs. Borgwarner Morse Tec, Inc. (Ind and sii to Borg-Warner Morse TEC, Inc. and Borg-Warner Corporatic

Los Angeles Superior Court BC392554

W&K File No. 08-0146-

Plaintiff's Service List

**Honeywell Intern'l, Inc. (sii to Allied Signal, Inc., sii to Bendix Corp)**
The Boeing Company (d/b/a Boeing Integrated Defense Systems as sii Rockwell International)
McMahon, Brien F. (Anticipated Counsel)
Kim, Bo W.
McIntire, Ronald A.
PERKINS COIE, LLP

1620 26th Street
6th Floor
Santa Monica, CA 90404
Tel: 310-788-9900
CA Speed Dial 48              Fax: 310-788-3399

**CBS Corporation f/k/a Viacom, Inc., suc by merg w/ CBS Corp. f/k/a Westinghouse Elec. Corp)**
Genuine Parts Company (sii to Nat'l Automotive Parts Assoc a/k/a NAPA)
Pond, Frank
Jamison, Kevin
Graham, Michael A.
POND NORTH LLP

350 S. Grand Avenue
Suite 2850
Los Angeles, CA 90071
Tel: 213-617-6170
CA Speed Dial 146            Fax: 213-623-3594

**Pneumo Abex Corporation (sii to Abex Corporation)**
Crochet, Carla Lynn
PRINDLE, DECKER & AMARO LLP

310 Golden Shore, 4th Floor
Long Beach, CA 90802
Tel: 562-436-3946
CA Speed Dial 29            Fax: 562-495-0564

**Syd Carpenter, Marine Contractor, Inc.**
Prindle, Kenneth B.
PRINDLE, DECKER & AMARO LLP

310 Golden Shore, 4th Floor
Long Beach, CA 90802
Tel: 562-436-3946
CA Speed Dial 29            Fax: 562-495-0564

**General Electric Company**
Sheldon, Charles T.
Brainich, Marc
SEDGWICK DETERT MORAN & ARNOLD
One Market Plaza, Steuart Tower, 8th Floor
San Francisco, CA 94105
Tel: 415-781-7900
CA Speed Dial 33            Fax: 415-781-2635

**Chrysler LLC (aka Chrysler Corp, DaimlerChrysler Corp)**
Gevondyan, Margarita
THELEN, LLP

333 South Hope Street
Los Angeles, CA 90071
Tel: 213-576-8000            Fax: 213-576-8080

**Chrysler LLC (aka Chrysler Corp, DaimlerChrysler Corp)**
Epand, Alexandra
THELEN, LLP

333 S. Hope Street
Suite 2900
Los Angeles, CA 90071
Tel: 213-576-8000            Fax: 213-576-8080

**Rockwell International Corporation**
Thomas, Joseph E. (Anticipated Counsel)
THOMAS WHITELAW & TYLER, LLP

18101 Von Karman Avenue, Suite 230
Irvine, CA 92612-7132
Tel: 949-679-6400            Fax: 949-679-6405

**Parker-Hannifin Corporation**
Tavera, Leonard (Anticipated Counsel)
TOWLE, DENISON, SMITH & TAVERA

10866 Wilshire Boulevard
Suite 600
Los Angeles, CA 90024
Tel: 310-446-5445            Fax: 310-446-5447
CA Speed Dial 454

Andrew Schnabel vs. Borgwarner Morse Tec, Inc. (ind and sil to Borg-Warner Morse TEC, Inc. and Borg-Warner Corporatio

Los Angeles Superior Court BC392554

W&K File No. 08-0146-

Plaintiff's Service List

United Technologies Corporation (sil Pratt & Whitney Engine
Services, Inc.)
Isler, Curtiss L.
TUCKER ELLIS & WEST LLP

515 South Flower Street
42nd Floor
Los Angeles, CA 90071
Tel: 213-430-3400        Fax: 213-430-3409
CA Speed Dial 317

---

Pratt & Whitney Rocketdyne, Inc.
United Technologies Corporation (sil Pratt & Whitney Engine
Services, Inc.)
Newman, Nate
TUCKER ELLIS & WEST LLP

515 South Flower Street
42nd Floor
Los Angeles, CA 90071
Tel: 213-430-3400        Fax: 213-430-3409
CA Speed Dial 317

---

Pratt & Whitney Rocketdyne, Inc.
Wilson, Lance D.
TUCKER ELLIS & WEST LLP

135 Main Street
Suite 700
San Francisco, CA 94105
Tel: 415-617-2400        Fax: 415-617-2409
CA Speed Dial 455

---